# Exhibit 1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly-Administered) |
| Debtors. | ) | |

Hearing Date: March 22, 2004 at 12:00 p.m.
Re: Docket Nos. 5027 and 5229

**DEBTORS' REPLY TO THE OBJECTION OF THE OFFICIAL
COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS TO THE
DEBTORS' SIXTH MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §1121(d)
EXTENDING DEBTORS' EXCLUSIVE PERIODS IN WHICH TO FILE A
CHAPTER 11 PLAN AND TO SOLICIT VOTES THEREON**

The Debtors filed these chapter 11 cases in response to an overwhelming morass of asbestos-related lawsuits that were pending and threatened against the Debtors. Those lawsuits stemmed from the Debtors' alleged liability for asbestos-related property-damage and personal-injury claims. From the inception of these cases, the Debtors have sought resolution of the material issues that will determine the magnitude of the Personal Injury Claims[1], which, in turn, will materially affect the structure of a plan of reorganization and ownership of the reorganized Debtors. In May, 2001, one month after the chapter 11 cases were filed, the Debtors filed a case management order outlining the Debtors proposal for approaching and resolving the key issues facing the Debtors. In addition to the challenge of Personal Injury Claims, these key issues included litigation involving the alleged Sealed Air fraudulent conveyance, Zonolite Attic Insulation, Asbestos Property Damage Claims and formidable non-asbestos claims. The

---

[1] Capitalized terms not otherwise defined herein have the meanings given in the Debtors' Sixth Motion for an Order Pursuant to 11 U.S.C. § 1121(d) Extending Debtors' Exclusive Periods in Which to File a Chapter 11 Plan and to Solicit Votes Thereon (the "Motion").

Debtors, with the Court's assistance, have worked diligently to establish a process for resolving all of these issues. But for Personal Injury Claims, each of these key issues has been addressed and either resolved or a process put in place to resolve such issues. However, the key issues relating to Personal Injury Claims remain unresolved, through no fault of the Debtors, and should be resolved before the Debtors can have a "reasonable opportunity" to develop a consensual plan. Therefore, this Court should grant the Motion.

### Facts and Background

1. In May of 2001, the Debtors filed a proposed Case Management Order (the "CMO") with the District Court, which outlined the Debtors' proposal for resolution of all of the various key issues facing the Debtors, including issues relating to Personal Injury Claims. The CMO was fully briefed and set to be tried before District Judge Farnan on November 21, 2001 when the Court of Appeals for the Third Circuit reassigned these cases, along with the asbestos bankruptcy cases of four other debtors, to the Honorable Judge Alfred M. Wolin.

2. Thereafter, Judge Wolin promptly isolated the major issues facing the Debtors' and (i) retained the asbestos-related personal-injury issues and the Sealed Air fraudulent conveyance matters and (ii) referred all other matters to this Court. Judge Wolin ultimately resolved the fraudulent conveyance matters in November of 2002. This Court set a bar date for Asbestos Property Damage Claims, Medical Monitoring Claims and Non-Asbestos Claims and approved a procedure for addressing Zonolite Insulation Claims. However, a myriad of issues in all five asbestos cases pending before Judge Wolin, has prevented Judge Wolin from resolving the Debtors' asbestos-related personal-injury issues as outlined in the CMO and numerous subsequent pleadings.

3. The Debtors have prepared a proposed structure for a reorganization plan (the "Debtor Proposal") based on the going concern value of the Debtors business and various

estimates of the claims asserted against the Debtors estates. In addition to previous consultations, the Debtors, as instructed by the Court, met in September 2003, with the representatives of the three creditors committees and the equity committee to discuss the Debtor Proposal. The asbestos personal injury committee (the "P.I. Committee") flatly rejected the Debtor Proposal and has made no efforts to continue discussions with the Debtors. The Debtors have had further discussions with the other creditor constituencies, including the representatives of the Property Damage Committee and the Zonolite Attic Insulation ("ZAI") Claimants, with respect to their claims.

4.  In October of 2003, certain creditors of *Owens Corning Corporation* moved to have Judge Wolin recused from any further participation in the *Owens Corning* bankruptcy cases. Shortly thereafter, certain creditors of the Debtors' filed a similar motion. On October 30, 2003, the Court of Appeals for the Third Circuit (the "Third Circuit") issued an order that stayed all matters before Judge Wolin in each of the five asbestos cases, including matters pertaining to the Debtors. The cases before Judge Wolin remain stayed pending resolution of the Wolin recusal matters.

## Legal Argument

5.  Determining the magnitude of the asbestos-related litigation liabilities, and then providing for the payment of valid claims on a basis that preserves the Debtors' core business operations, is an extremely complex process, but a prerequisite to concluding these chapter 11 cases. While substantial progress has been made, significant challenges still exist. As a result, grounds exist to once again extend the Debtors' Exclusive Periods.

6.  The most significant issue that must be resolved before a consensual plan can be developed, is the magnitude of the Personal Injury Claims. The Debtors and the P.I. Committee have widely diverging viewpoints on both the magnitude of the claims and the appropriate

3

approach to take in addressing those claims. The P.I. Committee has consistently insisted that the personal injury claims far exceed the value of the Debtors' businesses. Thus, it has indicated it is not interested in discussing any plan of reorganization, unless such plan acknowledges that the value of past and future personal injury claims provides no distribution to equity holders and substantially impairs the distribution to be received by all other creditor constituencies. The Debtors, however, believe that a feasible plan can provide some recovery for equity holders, as well as provide a <u>complete</u> <u>recovery</u> for the uncontested claims of all creditor constituencies. The Debtors filed these chapter 11 cases so that they could address the asbestos-related personal-injury issues in one forum in a logical and methodical manner that would preserve the value of the Debtors' businesses for all parties in interest. Until the issues raised by the asbestos related personal injury claims are addressed and resolved, the Debtors and the P.I. Committee will likely remain at an impasse, and the Debtors' will not have had their "reasonable opportunity" to develop a consensual plan.

I.   **The Debtors Have Shown "Cause" for a Six-Month Extension of the Exclusive Periods**

7.   Despite the Debtors' efforts to develop a reorganization plan which fairly addresses and provides for all constituencies affected by these bankruptcy cases, ancillary matters have deprived the Debtors of a reasonable opportunity to complete a consensual plan. Cause clearly exists to extend the Exclusive Periods.

A.   **The P.I. Committee Incorrectly Suggests that the Debtors' Have not Made Progress Towards the Development of a Consensual Plan**

8.   The P.I. Committee incorrectly argues that the Debtors have "failed to make any progress towards a confirmable plan of reorganization..." P.I. Objection at p. 9, ¶28. The P.I. Committee refuses to acknowledge the Debtors' progress towards a confirmable plan because they incorrectly equate (i) *progress* by the Debtors with (ii) *acquiescing* to the P.I. Committee's

4

unconditional demands with respect to how the Debtors' plan of reorganization should be structured.

9. The Debtors' cases pose numerous unique and challenging issues that have created severe obstacles to reaching a consensual plan of reorganization. In spite of the obstacles, significant progress has been made as outlined in the Debtors' Motion. In fact, the asbestos-related personal-injury issues represent one of the only remaining obstacles to developing a consensual plan which has not even been addressed by the Court.

10. While the Debtors have had briefs on file since May 2001, outlining their position on how to address the personal injury claims, due to matters outside of the Debtors' control, the Court has not addressed the asbestos-related personal-injury issues.

### B. Unresolved Contingencies Exist that Will Materially Affect the Debtors' Plan

11. The asbestos-related personal-injury issues are not simply "any pending litigation," as the P.I. Committee cavalierly suggests. See P.I. Objection at p. 8, ¶26. This litigation is at the very heart of the Debtor's reorganization efforts. The Debtors were driven into bankruptcy by an overwhelming morass of asbestos personal injury lawsuits. Accordingly, the issues pending before Judge Wolin will materially affect the terms of the Debtors' plan and must be addressed before a consensual plan can be developed. While the Debtors have diligently worked towards a swift and successful reorganization, the Debtors simply do not possess the power to control all of the ancillary factors that materially and directly affect the Debtors' reorganization efforts.

### C. The Debtors Have Made Good-Faith Efforts to Negotiate with Every Constituency Affected by These Bankruptcy Cases

12. In spite of what the P.I. Committee may allege in its Objection, the Debtors have attempted to work with each constituency to develop a confirmable plan. Since the Fifth

Exclusive Period Order, the Debtors have engaged in several discussions with the Property Damage Committee and ZAI's special counsel to discuss ways in which to address their claims. However, the P.I. Committee's intransient demands with respect to the impairment of all other creditor constituencies, has made it impossible to have a meaningful discussion with the P.I. Committee with respect to developing a consensual plan.

13.     When this Court entered the Fifth Exclusive Period Order, it directed the Debtors to meet with each constituency in an effort to develop the confines by which a confirmable plan could be developed. The Debtors met with each Committee and presented a plan structure that represented the Debtors' informed and good-faith effort at maximizing the recovery for each constituency based on the estimated value of claims and the going-concern value of the Debtors' businesses.

14.     The P.I. Committee dismissed the Debtor Proposal out-of-hand because it called for the Debtors' shareholders to retain some equity in the reorganized Debtors. The P.I. Committee's conduct is notable for two reasons. First, this conduct serves to refute the P.I. Committee's assertion that the Debtors have not attempted to develop a confirmable plan. Second, the P.I. Committee's conduct supports the Debtors' view that the asbestos-related personal-injury issues must be addressed before the Debtors will have a realistic opportunity to develop a confirmable plan.

15.     The Debtors believe that using the court process to determine key claims issues (including a system for allowing only those claims that represent actual, compensable injury by claimants that can clearly demonstrate significant exposure to asbestos containing products manufactured by the Debtors), will produce the most equitable outcome for all parties affected by these bankruptcy cases. Consistent with this position, the Debtor Proposal (i) gave substantial

equity to the Personal Injury Claimants, (ii) retained equity for the current shareholders and (iii) provided a full recovery to all other creditors with uncontested claims.

16. If the Debtors were willing to blindly give their company to the P.I. Claimants, the Debtors would not have needed to file these chapter 11 cases. Complete acquiescence does not require a time consuming and expensive court process. However, the Debtors believed at the petition date - and continue to believe - that the P.I. Claims do not exceed the value of the Debtors' businesses and it is the Debtors' fiduciary duty to preserve the value of their business for all parties in interest, including current shareholders and all other creditors. The Debtors believe that the resolution of the asbestos-related personal-injury issues pending before Judge Wolin will ultimately prove the Debtors correct. The Court must extend the Exclusive Periods so that the Debtors have the opportunity to do so.

### D. The Length of Time that these Cases Have Been Pending is Reasonable Given the Importance of Ancillary Litigation to the Debtors' Reorganization

17. The P.I. Committee is correct that the Exclusivity Motion will bring the total amount of time in the Exclusive Periods to approximately three years. However, the P.I. Committee incorrectly suggests that this period is unreasonable given the context of these bankruptcy cases. This bankruptcy is not the typical "business failure," for which typical bankruptcy cases would serve as a comparable metric for the appropriate time in which a debtor should be expected to reorganize itself in bankruptcy. The primary focus in typical bankruptcy cases is the sale and restructuring of assets to develop a viable going concern.

18. This case, and the four other asbestos cases being administered by Judge Wolin, present a unique and challenging class of bankruptcy reorganization. The Debtors are viable, profitable companies that filed for bankruptcy for the primary purpose of consolidating their current and prospective asbestos-related litigation in one forum. Therefore, it only makes sense

that the Debtors will not be in a position to file a consensual plan until the core issues raised by asbestos litigation have been addressed.

19. Resolution of the asbestos-related personal-injury issues has progressed at a much slower pace than the Debtors had originally anticipated. However, this slow pace is not because of the Debtors, but rather it is in spite of the Debtors' tireless efforts. Unprecedented matters beyond the Debtors' collective control have significantly delayed the resolution of these cases, as well as the four other jointly-administered asbestos-related bankruptcy cases.

20. The Debtors' progress is consistent with the other major asbestos-related bankruptcy cases pending before Judge Wolin. For example, USG Corporation filed their chapter 11 petition on or about June 25, 2001 and they have yet to file a plan. While plans have been filed in the Owens Corning, Armstrong World Industries, Inc. and Federal-Mogul cases, none of those plans have been confirmed.

## II. The P.I. Committee is Free to Develop a Plan and Work with the Other Constituencies During the Exclusive Periods

21. Nothing precludes the P.I. Committee from attempting to develop a plan, either (i) independently, (ii) in conjunction with the Debtors, or (iii) in conjunction with other constituencies affected by the bankruptcy cases. To the best of the Debtors' knowledge, the P.I. Committee has not made any efforts to work with any of the affected constituents to develop such a plan. In supporting the Debtors' Fifth Exclusive Motion, Lewis Kruger, counsel for the Unsecured Creditors Committee, argued as follows:

> So, I'm not sure that there really is a tie-in, if you will, between exclusivity for the debtor and the absence of a consensual reorganization plan. So I think from the perspective of the unsecured creditors' committee, we would continue to support the debtors' exclusivity.

Transcript from August 2003 Omnibus Hearing at p. 22, lns. 7-12. In granting the Debtor's Fifth Exclusivity Motion, this Court agreed with Mr. Kruger and stated:

8

> I don't see why the Debtors having exclusivity ... in this case is overly burdensome to the creditor's ability to convene among themselves to see whether a consensual plan can come together.

Transcript from August 2003 Omnibus Hearing at p. 24, lns. 4-7.

22. Instead of suggesting a plan or any constructive comments concerning the Debtor Proposal, the P.I. Committee has focused its attention on attacking the Debtors' role as the primary facilitator of a consensual reorganization plan that satisfies each of the constituencies. The P.I. Committee continues to incorrectly assert that the Debtors are not trying to make any progress towards developing a plan. However, what has really happened is that the Debtors have refused to acquiesce to the P.I. Committees demands.

23. The Debtors have a fiduciary duty to protect and provide for the interests of all creditors and parties in interest. Accordingly, prudent judgment calls for extending the Exclusive Periods until the asbestos personal injury issues can be addressed by the Court so that the Debtors are afforded a realistic opportunity to develop a consensual plan. In the meantime, the Debtors will continue their ongoing dialogue with the other constituencies and continue to invite the P.I. Committee to participate in similar discussions. Indeed, the Debtors have clearly communicated to all creditor constituencies, including the P.I. Committee, their willingness to meet at any time to discuss reasonable proposals for structuring a plan of reorganization.

9

WHEREFORE, the Debtors' respectfully request that the Court enter an order: (i) extending the Debtor's exclusive filing period through and including August 1, 2004, (ii) granting an extension of the Debtors' exclusive solicitation period through and including October 1, 2004, (iii) without prejudice to the Debtors' rights to seek additional extensions of their Exclusive Filing Period and the Exclusive Solicitation Period, and (iv) granting such other relief as may be fair and equitable.

Respectfully submitted:

Dated: March 15, 2004

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
James W. Kapp III
Samuel L. Blatnick
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG JONES & WEINTRAUB P.C.

*[signature]*

Laura Davis Jones (Bar No. 2436)
Scotta McFarland (Bar No. 4184)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession