IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

## DEBTORS' STATUS REPORT ON THEIR CLAIMS RECONCILIATION AND OBJECTION PROCESS

The above-captioned debtors and debtors in possession (collectively, the "Debtors") for their Status Report on their Claims Reconciliation and Objection Process ("Status Report") respectfully state as follows:

### I.    Background

On April 2, 2001, the Debtors commenced the above-captioned cases by filing petitions under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code"). These chapter 11 cases were filed primarily as a result of mounting asbestos-related litigation liabilities.

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

On April 22, 2002, this Court entered an order (the "Bar Date Order) setting March 31, 2003 (the "Bar Date") as the deadline for filing pre-petition Asbestos Property Damage Claims, Medical Monitoring Claims, and Non-Asbestos Claims (as defined in the Bar Date Order) (collectively, the "Claims"). No claims bar date has been set for the filing of pre-petition asbestos personal injury claims or Zonolite Attic Insulation claims.

To date, approximately **15,350** Claims have been filed against the Debtors. The Debtors are currently in the process of reviewing the Claims and filing appropriate objections. To date, the Debtors have filed two (2) Omnibus Objections, one asserting substantive objections and the second asserting non-substantive objections, which led to **815** claims being expunged from the record and **51** claims reconciled.

Currently, there are **14,496** Claims to be resolved. At the February 23, 2004 omnibus hearing, the Court inquired as to the status of the Claims reconciliation and objection process. This Status Report addresses the following information as to all Claims filed in the Debtors' bankruptcy cases:[2]

- Number of claims filed by claim type;
- Number of claims resolved as of the filing of this report;
- Proposed course of action the Debtors intend to take with each type of claim; and
- Proposed schedule for dealing with each category of claims.

Attached please find a one-page summary of the number of Claims filed by category, which includes the number of Claims resolved and remaining to be reconciled. See Exhibit A, Summary of Claims, attached hereto and incorporated herein.

---

[2] This Status Report includes all filed claims except those that appear to relate to asbestos personal injury or Zonolite Attic Insulation. While no claims bar date as been set for those claims, a total of 161 asbestos personal injury claims and 32 zonolite claims have been filed.

## II. TYPES OF CLAIMS AND PROPOSED TREATMENT

### A. Claim Type - Asbestos Property Damage

| | |
|---|---|
| Total Claims Filed | 4,286 |
| Claims Expunged | 318 |
| Open Claims | 3,968 |

Asbestos Property Damage Claims were required to be completed on the specialized Proof of Claim Form approved by this Court. Because of the number of Claims filed in this category, the Debtors filed a motion (the "3007-1 Motion") requesting that the Court waive the provisions of Local Rule of Bankruptcy Practice and Procedure 3007-1 that limits to 150 the number of Claims that properly may be subject to a substantive omnibus objection with respect to certain substantive deficiencies (the "Gateway Objections" as outlined in the 3007-1 Motion), and that the Debtors be permitted to file multiple omnibus objections with regard to separate Gateway Objections without waiving any other substantive objections with respect to such claims.

The 3007-1 Motion is set for hearing by this Court on March 22, 2004. Once this Motion has been determined, the Debtors will begin the objection process with respect to this category of Claims.

### B. Claim Type - Contract/Lease

| | |
|---|---|
| Total Claims Filed | 526 |
| Claims Expunged | 48 |
| Open Claims | 478 |

The Claims in this category are allegedly based upon agreements, contracts, leases, and indemnifications and warranties. Many of these Claims are subject to routine objections, which the Debtors will file pursuant to Local Rule 3007-1 as described in more detail in Section IV.

The Debtors have also identified numerous Claims in this category that either relate to litigation that was pending at the time the Debtors' cases were filed or, although not related to pending litigation, assert a cause or causes of action in the Claim. Claims included in this category are as follows:

1. Sealed Air. Approximately 34 Claims have been filed by Sealed Air Corporation, Cryovac, Inc. (on behalf of itself and certain non-US affiliates), Sealed Air Corporation US and 14 other Sealed Air subsidiaries in regards to the March 1998 transaction by which the Debtors' Cryovac packaging business became part of Sealed Air. These claims are allegedly for liabilities under the agreements governing the transaction and can be divided into three (3) general categories: (i) asbestos and tax liability; (ii) unliquidated amounts related to contractual issues; and (iii) reimbursement in connection with the payment by Sealed Air of public debt under a guaranty (see discussion below in Section E - Money Loaned). The Claims filed by Sealed Air are in large part indemnity type claims and can only be addressed once the underlying issues with respect to asbestos personal injury and certain tax litigation is resolved. Thus, these Claims are on hold at the present time.

2. Fresenius. Approximately 210 Claims were filed relating to the 1996 transaction by which the Debtors' National Medical Care business became a part of the Fresenius group. Fresenius National Medical Care, Inc. ("NMC"), Fresenius Medical Care Holdings Inc. ("FMCH") and Fresenius USA Inc. each filed Claims against all 62 of the Debtors, while six (6) direct subsidiaries of NMC filed 12 additional Claims. The Claims are allegedly for liabilities arising under the agreements governing the 1996 transaction, including Claims for the indemnification of NMC and FMCH for liabilities not related to the NMC business. None of the claims are liquidated. These claims are also primarily related to the asbestos personal injury litigation. Thus, like the Sealed Air Claims, these Claims are on hold at this time.

3. Insurance Companies. Two of the Debtors' insurance companies each filed one Claim in each of the Debtors' 62 cases. These Claims allegedly cover any and all liabilities under the insurance policies issued by the Claimant without specifying a liquidated amount. Other insurers and surety bond issuers filed approximately 17 claims for liquidated and/or contingent claims in connection with settlements, policies or amounts outstanding on bonds. All of these Claims will be dealt with in connection with the resolution of the liability of the underlying Claim or as part of the general strategy for addressing the Claims in this category.

4

4. <u>Motions for Relief from the Automatic Stay.</u> The following three Claimants from this category have moved for relief from the automatic stay: (1) Caterpillar Financial Services Corporation ("Caterpillar"); (2) Oldcastle APG Northeast, Inc. d/b/a Foster-Southeastern ("Oldcastle"); and (3) Neutocrete Products, Inc. ("Neutocrete").

    a. **Caterpillar:** Caterpillar filed a Motion to Compel Payment of Administrative Expenses and for Relief from the Automatic Stay or in the Alternative for Adequate Protection. The Debtors and Caterpillar entered into a Stipulation and Agreed Order which fully resolved and deemed satisfied all Claims for amounts due through February 29, 2004.

    b. **Oldcastle:** Oldcastle filed two proofs of Claims against the Debtors totaling $8,200,000, to allegedly preserve all claims which it could assert against the Debtors in a cause of action pending in Massachusetts, including rights of indemnification and contribution. Oldcastle filed a motion for relief from stay by which it sought to file a fifth-party action against the Debtors. Pursuant to a stipulation, the parties have agreed to cooperate in discovery and stay the motion for the present time as set forth in the court - approved stipulation.

    c. **Neutocrete**: Neutocrete recently filed a motion for relief from the stay. Neutocrete and related entities filed three (3) proofs of Claims against the Debtors, which were filed in response to the Debtors' action to collect unpaid invoices in the Superior Court of the State of Connecticut, Judicial District of Litchfield. The Debtors filed an objection to Neutocrete's motion, which is set for hearing on March 22, 2004. The Debtors have withdrawn the collection action and have proposed to address Neutocrete's Claims through the Claims process.

For the Claims in this category with non-routine objections, the Debtors will proceed as set forth in Section III of this Status Report. For the Claims subject to routine omnibus objections, the Debtors will proceed according to the schedule set for in more detail in Section IV of this Status Report.

### C.     Claim Type - Litigation

| | |
|---|---:|
| Total Claims | 242 |
| Claims Expunged | 44 |
| Open Claims | 198 |

Litigation Claims consist of Claims for employment discrimination, indemnification as a result of a lawsuit (as opposed to a specific indemnification agreement), non- asbestos personal injury, product liability and settlements of lawsuits. Many of the Claims in this category are related to asbestos liability. For example, G-I Holdings, Inc., GAF Corporation and their affiliated entities (collectively, "G-I Holdings") filed 62 claims, one against each of the Debtors, with no liquidated amount. G-I Holdings is a co-defendant with various Debtors in litigation relating to asbestos liability. Some of these claims appear to be based upon alleged indemnification, contribution, reimbursement or other payments for all known and unknown asbestos claims, including alleged personal injury claims and alleged property damage claims against G-I Holdings. Other claims are filed pursuant to 11 U.S.C. § 501(b) by G-I Holdings on behalf of individuals who are plaintiffs in litigation where G-I Holdings and the Debtors are co-defendants and such plaintiffs failed to file a claim. In addition, the Debtors have identified eleven other Claims (four Claimants) with specific reference to asbestos litigation. Like the Sealed Air and Fresenius Claims, the resolution of the Claims relating to asbestos personal injury can only be reconciled in connection with the global resolution of asbestos personal injury claims yet to be addressed by the Court. As to the Claims relating to asbestos property damage, the Debtors will follow the procedures set forth in Section II.A. to the extent possible.

The Debtors are reviewing the product liability Claims in preparation for filing objections and recommending settlements, where appropriate. Insurance may be available to cover certain of these Claims and the Debtors are optimistic that settlements will be negotiated in

the coming months as to certain Claims. However, there are numerous other Claims in which the Debtors either dispute the liability or the damages asserted in the Claims and, thus, objections will be filed as described in Section III.

Approximately nine (9) motions for relief from the automatic stay have been filed by Claimants that filed Litigation Claims. These motions for relief relate predominantly to non-asbestos personal injury litigation, but not exclusively. The Debtors have resolved several of the motions and are in various stages of resolution/objection as to others. The Debtors believe that the Claims filed by these Claimants will not be resolved by the routine Claim objection process. For the Claims in this category with non-routine objections, the Debtors will proceed as set forth in Section III of this Status Report.

### D.   Claim Type - Environmental

| | |
|---|---|
| Total Claims | 182 |
| Claims Expunged | 33 |
| Open Claims | 149 |

The United States has filed a proof of Claim on behalf of the United States Environmental Protection Agency ("EPA"), United States Department of Agriculture ("USDA") and United States Army Corps of Engineers ("ACE"). The United States has also filed a separate proof of Claim solely on behalf of the EPA. These Claims are based upon alleged contribution Claims for clean-up and response costs as "potentially responsible parties" for certain identified and potentially contaminated land sites. The Debtors are currently in negotiations with the EPA, USDA, ACE and other parties to enter into a Consent Decree to resolve their differences and settle these Claims and others.

In addition to the Claims described above, 29 other governmental agencies such as state, regional, and city authorities have filed environmental Claims. The Debtors are reviewing these Claims but because of assertions of joint and several liability, many of the

91100-001\DOCS_DE:90757.1

environmental Claims cannot be resolved until the Consent Decree is negotiated and finalized with the EPA. However, the Debtors have identified approximately 28 Claims that they are ready to object to based on both substantive and non-substantive grounds. The Debtors will prepare and file those objections as described more fully in Section IV of this Status Report.

### E.    Claim Type - Goods/Service/Trade

| | |
|---|---:|
| Total Claims | 1,439 |
| Claims Expunged | 141 |
| Reconciled | 51 |
| Open Claims | 1,247 |

The Claims in the Goods/Services/Trade Category are predominantly the Claims of suppliers against the Debtors. The Debtors are reviewing this category of Claims and are preparing to file the necessary objections within the next few months as set forth in Section IV of this Status Report. Many of these claims are for relatively low dollar amounts and the Debtors expect that the majority of Claims in this category will be resolved quickly. In addition, the Debtors have identified approximately 500 Claims that the Debtors' have reconciled internally but are not currently reflected in the number of reconciled/open Claims. As to the remaining Claims, the Debtors will follow the procedures set forth in Section III of this Status Report for any non-routine objections.

Wesconn Co. Inc. ("Wesconn") is a Claimant that has filed a claim asserting products liability damages. Although Wesconn did not file a lawsuit asserting its Claim prior to the filing of the Debtors' Chapter 11 cases, Wesconn seeks comprehensive and substantial discovery from the Debtors on its Claim. The parties have been negotiating as to the breadth of discovery and believe that an oral agreement has been reached with respect thereto. If Wesconn's revised discovery request complies with the agreement, the Debtors intend to respond within 30 days of receipt.

### F. Claim Type - Money Loaned

Total Claims                    127

A total of 127 Claims were filed in the Money Loaned Claim Category. One entity filed 124 of the 127 Claims as agent under two syndicated credit agreements of $250 million each, and it appears that the Claimant filed two (2) claims against each of the 62 Debtors. An issue in these Claims appears to be whether the Claimant will be entitled to post-petition interest, which will turn on a determination of the Debtors' solvency. Thus, these 124 Claims will be addressed closer to the time of the confirmation of the Plan of Reorganization.

As to the three (3) remaining Claims filed in this category, one relates to actual and contingent reimbursement obligations under letters of credit, and one relates to the public debt of one of the Debtors that apparently Sealed Air paid off as guarantor and for which they are seeking reimbursement. The third appears to be an asbestos property damage claim in which the claimant is seeking the payoff of her residential mortgage. The Debtors expect to address the actual money loaned Claims with the next several months, and the other claim as an asbestos property damage claim.

### G. Claim Type - Asbestos Medical Monitoring

| | |
|---|---:|
| Total Claims Filed | 1,085 |
| Claims Expunged | 43 |
| Open Claims | 1,042 |

The Bar Date Order required parties to file a special, court-approved claim form for all Asbestos Medical Monitoring Claims on or before March 31, 2003. These Claims are filed by individuals allegedly exposed to asbestos as a result of the Debtors' conduct, and request medical monitoring for potential asbestos personal injury. Because these Claims are related to the Debtors' asbestos personal injury claims and the Debtors' proposed procedures to address

91100-001\DOCS_DE:90757.1

asbestos personal injury claims have not been ruled on by Judge Wolin, the Debtors are unable to address these Claims at this time.

### H. Claim Type - Taxes

| | |
|---|---|
| Total Claims Filed | 293 |
| Claims Expunged | 151 |
| Open Claims | 142 |

Approximately 40% of the Claims filed in this category were filed by the Internal Revenue Service ("IRS") and the other 60% were filed by state, county, municipal or regional taxing authorities. Most of the Claims filed by the IRS are currently subject to audit and cannot be reconciled at this time. Certain substantial claims by the IRS relating to the Debtors' former Cross Country traveling nurse business and their company owned life insurance program are the subject of settlement discussions. The majority of the remaining Claims are subject either to pending or expected audits and so, cannot be reconciled at this time. However, the Debtors will address the remaining Claims as the audits and assessments become final and, if appropriate, file objections pursuant to Sections III or IV of this Status Report.

### I. Claim Type - Employee: Current and Former

Total Claims Filed        6,888

Many of these claims are "protective" claims filed by both current and former employees for benefits such as: (1) retiree medical and life insurance; (2) benefits under the Debtors' funded, qualified retirement plans; (3) benefits under the Debtors' non-qualified salary/bonus deferred compensation program; (4) future post-employment payments pursuant to individual contracts; (5) benefits under the Supplemental Executive Retirement Plan; and (6) miscellaneous personal injury claims. The Pension Benefit Guaranty Corporation has filed a total of 26 Claims related to the Debtors' qualified retirement plans. Two unions have filed

various Claims for benefits such as vacation pay, grievances and/or benefits under retirement plans.

The Debtors received Court authority to pay many employees and former employees certain payments due pursuant to the terms of various employee programs, and the Debtors are currently paying these amounts. Thus, many of the Claims were filed by the Claimants to protect their interests for amounts they are currently being paid. At this time, the Debtors do not intend to object to any Claims from this category.

### J.     Claim Type - Unknown

| | |
|---|---|
| Total Claims | 50 |
| Claims Expunged | 9 |
| Open Claims | 41 |

Claims were placed in this category because the Debtors cannot determine what type of claim is alleged because the Claimant (1) did not fill out the proof of claim form completely, (2) did not provide supporting documentation or (3) does not appear in the Debtors' books and records. The Debtors are currently prepared to file objections regarding 38 of the remaining 41 Claims in this category and intend to review the remaining three (3) Claims as set forth in Section IV of this Status Report.

### K.     Claim Type - Not a Claim

| | |
|---|---|
| Total Claims Filed | 36 |
| Claims Expunged | 0 |
| Open Claims | 36 |

The "Not a Claim" Category includes documents that were filed but are not "Claims". These documents were mistakenly assigned a Claim number and included on the official Claims registry by the official claims agent. These "Claims" typically fall within two categories: (1) documents submitted by a Claimant as supporting documentation for a Claim that has been filed; or (2) documents that are informational and not a "Claim", such as a notice of a

failure to file a certain tax return. The Debtors have requested the claims agent void these "Claims" from the active claims registry and, where appropriate and if possible, combine the documentation with the appropriate Claim. The Debtors will continue to work with the claims agent to resolve this category.

### L. Claim Type - Shareholder

| | |
|---|---|
| Total Claims Filed | 15 |
| Claims Expunged | 15 |
| Open Claims | 0 |

Fifteen Shareholder Claims were filed by Claimants. This category was generally used by a Claimant to assert a claim for the value of the shares of stock in the Debtor owned by a Claimant. All of these Claims have been expunged from the active claims registry.

### III. PROPOSED NON-ASBESTOS LITIGATION PROTOCOL

Resolving litigation Claims is an ongoing work in progress. During the course of these Chapter 11 cases, several outstanding litigation claims have been resolved by settlement, certain third party litigation and other means. When the Debtors began internal preparations to file their Chapter 11 petitions, they compiled a detailed summary of all pending non-asbestos litigation. As part of the overall claims reconciliation process, the Grace legal team has continued to update the non-asbestos litigation case information and track matters that have affected the litigation. This information is now being reviewed to formulate ongoing strategies for the Claims.

Generally speaking, non-asbestos litigation Claims do not lend themselves to the routine omnibus objection process and require the filing and prosecution of individual objections. A number of non-asbestos litigation Claimants have moved for some form of relief from the automatic stay. In all cases, an efficient and effective system is needed to advance these Claims towards resolution.

12

The Debtors intend to file specific objections to the non-asbestos litigation related Claims in a timely manner in the following months. The Debtors are also evaluating the most efficient way to proceed on those claims thereafter, which could include but not be limited to settlement, seeking to establish a mediation procedure supervised by this Court or simply litigating the Claims before this Court. The Debtors will file a further status report on these Claims in the next 60-90 days wherein the Debtors will specify how each such Claim will be approached, the Court procedure requested and the timing with respect to each such Claim.

### IV. PROPOSED SCHEDULE FOR FILING OMNIBUS OBJECTIONS

The Debtors are in the process of preparing a third omnibus objection to claims which will address non-substantive objections and seek to dispose of approximately 100 Claims. This Third Omnibus Objection will be set for the Court's May Omnibus hearing. Simultaneously, the Debtors are preparing to file omnibus objections to the Unknown Claims and the Goods/Service/Trade Claims. Because of the limitations of Local Rule 3007-1, the Debtors estimate that it will take approximately four (4) months to file all such objections and then time thereafter to resolve the objections

While the Goods/Service/Trade Claims are being processed, the Debtors will continue to process the Environmental, Litigation and Contract/Lease Claims for the filing of objections. The Debtors' various teams of employees have been working and will continue to work concurrently on these different types of Claims to place the Debtors in the best position to file these Claims on an ongoing basis, subject to the constraints of Local Rule 3007-1. The Debtors will continue this approach of processing, filing objections, and reconciling Claims until the Claims have been resolved.

V.  **STATUS ON ASBESTOS PERSONAL INJURY CLAIMS**

As stated above, no bar date has been set for the filing of pre-petition asbestos personal injury claims. However, as set forth above, a significant number of the Claims filed against the Debtors relate to asbestos personal injury litigation, directly or indirectly, even if the Claims are not placed in a category with the name "asbestos" in the title. The Debtors have worked conscientiously and steadily since the filing of the petitions to advance these chapter 11 cases and provide a framework upon which to resolve the asbestos personal injury claims, as well as all other Claims filed against the Debtors. However, until the actual structure is in place and there is a means in which to resolve the asbestos personal injury litigation, the Claims filed related to asbestos personal injury liability cannot be resolved and must be temporarily placed on

[Remainder of page left intentionally blank]

hold. Notwithstanding this situation, the Debtors intend to and are administering and moving forward in the reconciliation process on all other Claims.

March 18, 2004

>Respectfully submitted,
>
>KIRKLAND & ELLIS
>David M. Bernick P.C.
>James H.M. Sprayregen P.C.
>James W. Kapp III
>Janet S. Baer
>200 East Randolph Drive
>Chicago, Illinois 60601
>Tel: (312) 861-2000
>Fax: (312) 861-2200
>
>PACHULSKI, STANG, ZIEHL YOUNG JONES & WEINTRAUB P.C.
>
>*/s/ David W. Carickhoff, Jr.*
>Laura Davis Jones (#2436)
>David W. Carickhoff, Jr. (#3715)
>919 North Market Street, 16th Floor
>P.O. Box 8705
>Wilmington, Delaware 19899-8705
>(Courier 19801)
>Tel: (302) 652-4100
>
>Co-Counsel for the Debtors and Debtors in Possession

**EXHIBIT A**

## WR GRACE CLAIMS SUMMARY

| Claim Type | Total Claims | Active/Reconciled | Expunged | Active/Open |
|---|---|---|---|---|
| Asbestos Property Damage | 4,286 | 0 | 318 | 3,968 |
| Contract/Lease | 526 | 0 | 48 | 478 |
| Litigation | 242 | 0 | 44 | 198 |
| Environmental | 182 | 0 | 33 | 149 |
| Goods/Service/Trade | 1,439 | 51 | 141 | 1,247 |
| Money Loaned | 127 | 0 | 0 | 127 |
| Asbestos Medical Monitoring | 1,085 | 0 | 43 | 1,042 |
| Taxes | 293 | 0 | 151 | 142 |
| Employee | 6,888 | 0 | 0 | 6,888 |
| Unknown | 50 | 0 | 9 | 41 |
| Not A Claim | 36 | 0 | 0 | 36 |
| Shareholder | 15 | 0 | 15 | 0 |
| Asbestos Personal Injury | 161 | 0 | 1 | 160 |
| Asbestos Zonolite | 32 | 0 | 12 | 20 |
| | | | | |
| **Total** | **15,362** | **51** | **815** | **14,496** |