IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

Objection Deadline: April 9, 2004 at 4:00 p.m.
Hearing Date: April 26, 2004 at 12:00 p.m.

## DEBTORS' MOTION REQUESTING THE APPROVAL OF AN ORDER AUTHORIZING THE EXPANSION OF THE SCOPE OF SERVICES PERMITTED TO BE PROVIDED BY DELOITTE & TOUCHE LLP TO THE DEBTORS TO INCLUDE CERTAIN LEASE CONSULTING SERVICES *NUNC PRO TUNC* TO OCTOBER 1, 2003

The above-captioned debtors and debtors in possession (the "Debtors") hereby submit this motion (this "Motion") requesting the approval of an order authorizing the expansion of the scope of services permitted to be provided by Deloitte & Touche LLP ("Deloitte") to the Debtors to include certain lease consulting services (the "Lease Consulting Services"). In support of this Motion, the Debtors state as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1.  The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O). Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is 11 U.S.C. § 327(a) and Fed. R. Bank. P. 2014(a).

## Background

2.  On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") commencing these chapter 11 cases (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

3.  On April 25, 2003, the Debtors submitted the application (the "Application") for an order pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (as amended, the Bankruptcy Code) and Fed R. Bankr. P. 2014(a), 2016 and 5002 authorizing the employment and retention of Deloitte as customs services providers, and tax and compensation advisers to the Debtors *nunc pro tunc* to February 4, 2003. The affidavit of Larry D. Ishol (the "Ishol Affidavit") was filed in support of the Application. On June 17, 2003, the Court entered an order approving the Application (the "Retention Order"). The Application, the Ishol Affidavit and the Retention Order are hereinafter referred to collectively as the "Deloitte Retention Materials."

2

4. As set forth in the Deloitte Retention Materials, Deloitte was authorized to provide the following services (collectively, hereinafter the "Deloitte Services") to the Debtors during these Chapter 11 Cases as of February 4, 2003:

(a) customs procedures review and compliance services, including without limitation, services pertaining to assisting the Debtors with the upcoming Focused Assessment to be conducted by the United States Customs Service;

(b) tax advisory services, including without limitation, services pertaining to assisting the Debtors by consulting on various corporate and sales tax issues, and in reviewing and analyzing the tax implications of various inter-company transactions; and

(c) compensation and benefits services, including without limitation, services pertaining to assisting the Debtors in reviewing and analyzing their current employee retention and incentive programs, and in developing new employee retention and incentive programs.

5. As set forth in the Ishol Affidavit, Deloitte had been authorized as an ordinary course services provider to the Debtors in the Chapter 11 Cases prior to the entry of the Retention Order. As an ordinary course services provider, Deloitte performed certain compensation plan implementation, tax advisory, and SAP environment control services for the Debtors. Because the Debtors requested that Deloitte expand its scope of services beyond those which Deloitte believed were within the scope of Deloitte's ordinary course retention in these Chapter 11 Cases, Deloitte sought approval to provide such expanded scope of services pursuant to the Deloitte Retention Materials.

6. As set forth in the Supplemental Ishol Affidavit, a copy of which is attached hereto, Deloitte also provided Lease Consulting Services to the Debtors on an ordinary course

3

basis prior to the filing of the Retention Application. Deloitte has provided the Lease Consulting Services pursuant to the terms of the engagement letter entered into between the Debtors and Deloitte (the "Lease Consulting Services Engagement Letter").[2] The Lease Consulting Services Engagement Letter was executed in April 2002 while Deloitte was an ordinary course professional for the Debtors. The Lease Consulting Services include (a) review of certain of the Debtors' leases and subleases to identify potential amounts owed to the Debtor by certain of its landlords and leasehold tenants (the "Lease Underpayments"), (b) preparation and delivery to the Debtors of reports on the Lease Underpayments and (c) recovery of the Lease Underpayments for the Debtors. Prior to the entry of the Retention Order, while Deloitte was providing services to the debtors as an ordinary course professional, Deloitte completed the review of the leases and subleases and production of the Lease Underpayment reports and was paid $9,500 in fixed fee compensation pursuant to the terms of the Lease Consulting Services Engagement Letter.

7.  The Lease Consulting Services were inadvertently not included as part of the Deloitte Services for which Deloitte's approval was authorized under the Retention Order. Deloitte, however, continued to provide such services following the entry of the Retention Order. As a result of the efforts of Deloitte on behalf of the Debtors, both before and after the entry of the Retention Order, the Debtors received a payment of approximately $384,200 from a subtenant and expect to receive additional payments in the future. Based on this recovery of a Lease Underpayment and pursuant to the terms of the Lease Consulting Services Engagement Letter, Deloitte has earned a contingency fee in the approximate amount of $134,470 which has not been paid (the "Unpaid Fee"). The Debtors have not paid the Unpaid Fee because the Debtors do not believe that they have authority to do so under the terms of the Retention Order.

---

[2] A copy of the Lease Consulting Services Engagement Letter is attached hereto as Exhibit A and incorporated herein by reference.

## Relief Requested

8. By this Motion, the Debtors seek authority to (a) expand the retention of Deloitte pursuant to sections 327 and 328 of the Bankruptcy Code during the Chapter 11 Cases to include the Lease Consulting Services and (b) pay Deloitte the Unpaid Fee.

9. The Debtors believe that such Lease Consulting Services are necessary to enable the Debtors to maximize the value of their estates and to reorganize successfully. Deloitte has indicated a willingness to act on behalf of the Debtors and to subject itself, for the purposes of the provision of the Lease Consulting Services, to the jurisdiction and supervision of the Court.

10. The Debtors require Deloitte's continued performance of such services in order to assist the Debtor in identifying and recovering additional potential amounts owed to the Debtor by certain of its landlords and leasehold tenants. Accordingly, the Debtors are herein requesting that the scope of the Deloitte Services be expanded to include the Lease Consulting Services in accordance with the terms of the Lease Consulting Services Engagement Letter, *nunc pro tunc* to October 1, 2003, and consistent in all other respects with the Application and Retention Order. Under the terms of the Lease Consulting Engagement Letter, Deloitte was to be compensated on both a fixed and contingent fee basis. All of the fixed fee amounts were paid prior to the filing of the Application consistent with the Debtors compensation of ordinary course professionals.

## Terms of Retention

11. The Lease Consulting Services Engagement Letter provides the Debtors will pay Deloitte (a) $500 per lease or sublease for the review of the leases and subleases and production of the reports (the "Fixed Fee") plus (b) thirty-five percent (35%) of all savings achieved by the Debtors as a result of Deloitte's provision of the Lease Consulting Services (the "Contingent Fee"). The Fixed Fee was paid to Deloitte prior to the submission of the Application pursuant to the terms of the Order Pursuant to 11 U.S.C. §§ 1107(a) and 1108 Authorizing the Debtors to

5

91100-001\DOCS_DE:90510.2

Employ and Compensate Certain Professionals Utilized in the Ordinary Course of the Debtors' Business dated May 3, 2001.

12.     The Debtors request that they be permitted to compensate Deloitte for the Contingent Fee portion of the Lease Consulting Services in an amount equal to thirty-five percent (35%) of all savings achieved by the Debtors as a result of Deloitte's provision of the Lease Consulting Services, consistent with the terms of the Lease Consulting Services Engagement Letter.

13.     The Debtors further request that Deloitte (a) not be required to submit detailed daily time records or expense records as part of any monthly statements, or interim or final fee applications submitted by Deloitte with respect to its provision of the Lease Consulting Services; provided, however, that in lieu of such records, Deloitte shall submit a reasonably detailed summary of such services and the contingent fee compensation earned in connection therewith as part of such monthly statements, or interim or final fee applications, and (b) that Deloitte's contingent fee compensation earned in connection with such services, not be subject to any holdbacks imposed on the compensation of professionals in these Chapter 11 Cases. Time and expense records and holdbacks serve no useful purpose in this instance as the Lease Consulting Services compensation is based entirely on a small fixed fee which was paid pursuant to the fee procedures for ordinary course professionals and the results obtained in the performance of the Lease Consulting Services.

14.     Other than as provided herein, Deloitte will seek compensation and reimbursement of expenses in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedures, the Local Bankruptcy Rules and any orders of this Court, including without limitation, (a) the Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing

91100-001\DOCS_DE:90510.2

Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, dated May 3, 2001, effective as of April 2, 2001 and (b) the Amended Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Revised Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, dated April 17, 2002. Pursuant to section 328(a) of the Bankruptcy Code, however, the Court may not allow Deloitte's compensation on terms different from those described herein unless such compensation "prove[s] to have been improvident in light of developments not capable of being anticipated at the time" that this Motion is originally approved. 11 U.S.C. § 328(a).

### *Nunc Pro Tunc* Retention of Deloitte

15. Because the Debtors required Deloitte's continuous assistance in connection with the performance of certain of the Lease Consulting Services, Deloitte continued performing such services for the Debtors pursuant to Deloitte's prior status as an ordinary course professional. Accordingly, subject to this Court's approval, Deloitte intends to seek compensation for its performance of the Lease Consulting Services, *nunc pro tunc* to October 1, 2003.

### Limitation of Indemnification

16. The Retention Order approved the Debtors' indemnification of Deloitte pursuant to the terms of the applicable retention agreements subject to certain limitations as set forth in the Retention Order. The Debtors request that the Court approve the indemnification provisions set forth in section 6 of the Lease Consulting Services Engagement Letter, subject to the same limitations as provided in the Retention Order, which are as follows:

> (a) subject to the provisions of subparagraph (c) infra, the Debtors are authorized to indemnify, and shall indemnify Deloitte, in accordance with the Lease Consulting Services Engagement Letter for any claim arising from, related to, or in connection with the Lease Consulting Services, but not for any claim arising from, related to, or in connection with Deloitte's postpetition performance

7

of any services, other than the Lease Consulting Services, unless such other postpetition services and indemnification thereof are approved by the Court;

(b) notwithstanding any provisions of the Lease Consulting Services Engagement Letter to the contrary, the Debtors shall have no obligation to indemnify Deloitte, or provide contribution or reimbursement to Deloitte, for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen solely from Deloitte's gross negligence or willful misconduct, or (ii) settled prior to a judicial determination as to Deloitte's gross negligence or willful misconduct, but determined by the Court, after notice and a hearing, to be claim or expense for which Deloitte should not receive indemnity, contribution or reimbursement under terms of the Engagement Letters as modified; and

(c) if, before the earlier of (i) the entry of an order confirming a plan under chapter 11 of the Bankruptcy Code (that Order having become a final order no longer subject to appeal), or (ii) the entry of an order closing this chapter 11 case, Deloitte believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtor's indemnification, contribution and/or reimbursement obligations under the Lease Consulting Services Engagement Letter (as modified by this Order), including without limitation the advancement of defense costs, Deloitte must file an application thereof in this Court, and the Debtors may not pay any such amounts to Deloitte before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Deloitte for indemnification, contribution or reimbursement and is not a provision limiting the duration of the Debtors' obligation to indemnify Deloitte.

17. Given the services to be rendered by Deloitte and level of its experience in providing Lease Consulting Services, the Debtors believe that the risk of indemnification claims against the estates is very low. Furthermore, the indemnification is limited; the Debtors will not be liable for any losses, claims, damages, liabilities, costs or expenses arising primarily from Deloitte's gross negligence or willful misconduct. Accordingly, the Debtors submit that the provision of such limited indemnification is reasonable under the circumstances and reflects a fair balance between the potential risk to Deloitte and the benefit to the estates from Deloitte's services.

8

18. In addition to the foregoing, paragraph 6(a) of Section III ("General") of the Lease Consulting Services Engagement Letter (applicable to the provision of the Lease Consulting Services), which services are not subject to the Debtors' indemnification obligations set forth above) shall be null and void to the extent the claims, liabilities or expenses referred to in such paragraphs arise during the pendency of these Chapter 11 Cases.

## Notice

19. Notice of this Motion has been given to: (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to all official committees appointed by the United States Trustee, and (v) all those parties that requested service and notice of papers in accordance with Fed R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Request

20. No prior motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form attached hereto, (a) authorizing expansion of the scope of services permitted to be provided by Deloitte to include the Lease Consulting Services pursuant to the terms of this Motion, the Supplemental Ishol Affidavit and the Lease Consulting Services Engagement Letters entered into between the Debtors and Deloitte *nunc pro tunc* to October 1, 2003; (b) granting the Debtors authority to pay Deloitte the Unpaid Fee, and (c) granting such further relief as is just and proper.

Dated: March 22, 2004

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
James W. Kapp III
Janet S. Baer
Christian J. Lane
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

*[signature]*

Laura Davis Jones (Bar No. 2436)
Scotta E. McFarland (Bar No. 4184)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

91100-001\DOCS_DE:90510.2