IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**SUPPLEMENTAL AFFIDAVIT OF LARRY D. ISHOL IN SUPPORT OF
THE MOTION REQUESTING THE APPROVAL OF AN ORDER
AUTHORIZING THE EXPANSION OF THE SCOPE OF SERVICES
PERMITTED TO BE PROVIDED BY DELOITTE & TOUCHE LLP
TO THE DEBTORS TO INCLUDE CERTAIN LEASE CONSULTING SERVICES**

Larry D. Ishol, being duly sworn, deposes and says:

1.  I am a member of the firm of Deloitte & Touche LLP ("Deloitte"), which has an office located at 1750 Tysons Boulevard, McLean, Virginia 22102-4219. I have previously submitted an affidavit (the "Ishol Affidavit") in support of the application (the "Application") of the Debtors for entry of an order pursuant to 11 U.S.C. §§ 327(a) and 328(b) and Fed. R. Banker. P. 2014(a), 2016 and 502 authorizing the employment and retention of Deloitte as customs

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

services providers, and tax and compensation advisors to the Debtors <u>nunc</u> <u>pro</u> <u>tunc</u> to February 4, 2003.

2. I make this supplemental affidavit (this "Supplemental Ishol Affidavit") of my personal knowledge based upon inquires made by myself or on my behalf in support of the motion (the "Motion") requesting the approval of an order authorizing the expansion of the scope of services permitted to be provided by Deloitte to the Debtors to include certain lease consulting services (the "Lease Consulting Services"). Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

3. Prior to the entry of the Retention Order, as set forth in the Ishol Affidavit, Deloitte had been authorized as an ordinary course services provider to the Debtors in these Chapter 11 cases.

4. As ordinary course services providers, Deloitte performed certain compensation plan implementation, tax advisory, and SAP environment control services.

5. Because the Debtors requested that Deloitte expand its scope of services beyond those which Deloitte believed were within the scope of Deloitte's ordinary course retention in these Chapter 11 Cases, Deloitte sought approval to provide such expanded scope of services pursuant to the Deloitte Retention Materials.

6. As the partner in charge of Deloitte's retention in these Chapter 11 Cases, I was recently informed that, prior to the entry of the Retention Order, in addition to the foregoing ordinary course services, the Debtors also retained Deloitte to provide the Lease Consulting

Services to the Debtors pursuant to the Lease Consulting Services Engagement Letter as an ordinary course services provider.

7. Although the Lease Consulting Services were not included as part of the Deloitte Services for which Deloitte's approval was authorized under the Retention Order, Deloitte continued to provide such services under the terms applicable to ordinary course professionals in these Chapter 11 Cases.

8. Under the terms of the Lease Consulting Engagement Letter, Deloitte is to be compensated on both a fixed and contingent fee basis.

9. Prior to the entry of the Retention Order, while Deloitte was authorized to provide services to the Debtors as an ordinary course professional, Deloitte was paid $9,500 in fixed fee compensation for its provision of the Lease Consulting Services.

10. Deloitte seeks compensation for its contingent fee portion of the Lease Consulting Services in an amount equal to thirty-five percent (35%) of all savings achieved by the Debtors as a result of Deloitte's provision of the Lease Consulting Services, consistent with the terms of the Lease Consulting Services Engagement Letter.

11. Time and expense records and holdbacks serve no useful purpose in this instance as the Lease Consulting Services compensation is based entirely on a small fixed fee which was paid pursuant to the fee procedures for ordinary course professionals and the results obtained in the performance of the Lease Consulting Services.

12. The Debtors' estate has thus far received approximately $384,200 as a result of Deloitte's efforts in providing the Lease Consulting Services. Deloitte's continued performance

3

of the Lease Consulting Services is needed to identify and recover additional potential amounts owed to the Debtor by certain of its landlords and leasehold tenants.

13. Based on this recovery of Lease Underpayment and pursuant to the terms of the Lease Consulting Services Engagement Letter, Deloitte has earned a contingency fee in the approximate amount of $134,470 which has not been paid.

Dated: March 19, 2004

By: _____
Larry D. Ishol
Partner

Sworn to and subscribed before me, a Notary Public for the State of Virginia County of Fairfax this 19th day of March, 2003.⁴

_____
Notary Public