# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Objection Deadline: April 9, 2004 at 4:00 p.m.**
**Hearing Date: April 26, 2004 at 12:00 p.m.**

## NOTICE OF DEBTORS' MOTION REQUESTING THE APPROVAL OF AN ORDER AUTHORIZING THE EXPANSION OF THE SCOPE OF SERVICES PERMITTED TO BE PROVIDED BY DELOITTE & TOUCHE LLP TO THE DEBTORS TO INCLUDE CERTAIN LEASE CONSULTING SERVICES *NUNC PRO TUNC* TO OCTOBER 1, 2003

TO:    Parties required to receive notice pursuant to Del. Bankr. LR 2002-1.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") filed

the attached *Debtors' Motion Requesting the Approval of an Order Authorizing the Expansion of*

*the Scope of Services Permitted to be Provided by Deloitte & Touche LLP to the Debtors to*

*Include Certain Lease Consulting Services Nunc Pro Tunc to October 1, 2003* (the "Motion")

with the United States Bankruptcy Court for the District of Delaware, 824 Market Street,

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.



DOCKET # 5222

DATE 3|23|2003

Wilmington, Delaware 19801 (the "Bankruptcy Court"). A true and correct copy of the Motion is attached hereto.

Objections or other responses to the relief requested in the Motion, if any, must be in writing and be filed with the Bankruptcy Court no later than 4:00 p.m. (prevailing Eastern time) on **April 9, 2004.**

At the same time, you must also serve a copy of the objections or responses, if any, upon the following: (i) co-counsel for the Debtors, James H.M. Sprayregen, Esquire, Kirkland & Ellis LLP, 200 East Randolph Drive, Chicago, Illinois 60601 (fax number 312-861-2200), and Laura Davis Jones, Esquire, Pachulski, Stang, Ziehl, Young, Jones & Weintraub P.C., 919 North Market Street, Suite 1600, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801) (fax number 302-652-4400); (ii) counsel to the Official Committee of Unsecured Creditors, Lewis Kruger, Esquire, Stroock & Stroock & Lavan, 180 Maiden Lane, New York, New York 10038-4982 (fax number 212-806-6006), and Michael R. Lastowski, Esquire, Duane, Morris & Heckscher, LLP, 1100 N. Market Street, Suite 1200, Wilmington, Delaware 19801-1246 (fax number 302-657-4901); (iii) counsel to the Official Committee of Property Damage Claimants, Scott L. Baena, Esquire, Bilzin, Sumberg, Dunn, Baena, Price & Axelrod, First Union Financial Center, 200 South Biscayne Boulevard, Suite 2500, Miami, Florida 33131 (fax number 305-374-7593), and Michael B. Joseph, Esquire, Ferry & Joseph, P.A., 824 Market Street, Suite 904, P.O. Box 1351, Wilmington, Delaware 19899 (fax number 302-575-1714); (iv) counsel to the Official Committee of Personal Injury Claimants, Elihu Inselbuch, Esquire, Caplin & Drysdale, 399 Park Avenue, 36th Floor, New York, New York 10022 (fax number 212-644-6755), and Mark Hurford, Esquire, Campbell & Levine, LLC, Chase Manhattan Centre, 15th Floor, 1201

2

Market Street, Suite 1500, Wilmington, Delaware 19801 (fax number 302-426-9947); (v)

counsel to the DIP Lenders, J. Douglas Bacon, Esquire, Latham & Watkins, Sears Tower, Suite

5800, Chicago, Illinois 60606 (fax number 312-993-9767), and Steven M. Yoder, Esquire, The

Bayard Firm, 222 Delaware Avenue, Suite 900, P.O. Box 25130, Wilmington, Delaware 19899

(fax number 302-658-6395); (vi) the Office of the United States Trustee, Attn: Frank J. Perch,

Esquire, 844 N. King Street, Wilmington, Delaware 19801 (fax number 302-573-6497); and

(vii) counsel to the Official Committee of Equity Holders, Thomas M. Mayer, Esquire, Kramer

Levin Naftalis & Frankel LLP, 919 Third Avenue, New York, New York 10022 (fax number

212-715-8000), and Teresa K.D. Currier, Esquire, Klett Rooney Lieber & Schorling, 1000 West

Street, Suite 1410, P.O. Box 1397, Wilmington, DE 19899-1397 (fax number 302-552-4220).

IF NO OBJECTIONS ARE TIMELY FILED AND SERVED IN ACCORDANCE

WITH THIS NOTICE, THE BANKRUPTCY COURT MAY GRANT THE RELIEF

REQUESTED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

IN THE EVENT THAT ANY OBJECTION OR RESPONSE IS FILED AND SERVED

IN ACCORDANCE WITH THIS NOTICE, A HEARING ON THE MOTION WILL BE HELD

BEFORE THE HONORABLE JUDITH K. FITZGERALD AT THE BANKRUPTCY COURT,

ON APRIL 26, 2004 AT 12:00 P.M., EASTERN TIME.

Dated: March 22, 2004

KIRKLAND & ELLIS LLP
James H.M. Sprayregen, P.C.
Janet S. Baer
James W. Kapp III
Christian J. Lane
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES
& WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
Scotta McFarland (Bar No. 4184)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

Objection Deadline: April 9, 2004 at 4:00 p.m.
Hearing Date: April 26, 2004 at 12:00 p.m.

## DEBTORS' MOTION REQUESTING THE APPROVAL OF AN ORDER AUTHORIZING THE EXPANSION OF THE SCOPE OF SERVICES PERMITTED TO BE PROVIDED BY DELOITTE & TOUCHE LLP TO THE DEBTORS TO INCLUDE CERTAIN LEASE CONSULTING SERVICES *NUNC PRO TUNC* TO OCTOBER 1, 2003

The above-captioned debtors and debtors in possession (the "Debtors") hereby submit

this motion (this "Motion") requesting the approval of an order authorizing the expansion of the

scope of services permitted to be provided by Deloitte & Touche LLP ("Deloitte") to the Debtors

to include certain lease consulting services (the "Lease Consulting Services"). In support of this

Motion, the Debtors state as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O). Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is 11 U.S.C. § 327(a) and Fed. R. Bank. P. 2014(a).

## Background

2.     On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") commencing these chapter 11 cases (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

3.     On April 25, 2003, the Debtors submitted the application (the "Application") for an order pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (as amended, the Bankruptcy Code) and Fed R. Bankr. P. 2014(a), 2016 and 5002 authorizing the employment and retention of Deloitte as customs services providers, and tax and compensation advisers to the Debtors *nunc pro tunc* to February 4, 2003. The affidavit of Larry D. Ishol (the "Ishol Affidavit") was filed in support of the Application. On June 17, 2003, the Court entered an order approving the Application (the "Retention Order"). The Application, the Ishol Affidavit and the Retention Order are hereinafter referred to collectively as the "Deloitte Retention Materials."

2

4.     As set forth in the Deloitte Retention Materials, Deloitte was authorized to provide the following services (collectively, hereinafter the "Deloitte Services") to the Debtors during these Chapter 11 Cases as of February 4, 2003:

(a)     customs procedures review and compliance services, including without limitation, services pertaining to assisting the Debtors with the upcoming Focused Assessment to be conducted by the United States Customs Service;

(b)     tax advisory services, including without limitation, services pertaining to assisting the Debtors by consulting on various corporate and sales tax issues, and in reviewing and analyzing the tax implications of various inter-company transactions; and

(c)     compensation and benefits services, including without limitation, services pertaining to assisting the Debtors in reviewing and analyzing their current employee retention and incentive programs, and in developing new employee retention and incentive programs.

5.     As set forth in the Ishol Affidavit, Deloitte had been authorized as an ordinary course services provider to the Debtors in the Chapter 11 Cases prior to the entry of the Retention Order.     As an ordinary course services provider, Deloitte performed certain compensation plan implementation, tax advisory, and SAP environment control services for the Debtors. Because the Debtors requested that Deloitte expand its scope of services beyond those which Deloitte believed were within the scope of Deloitte's ordinary course retention in these Chapter 11 Cases, Deloitte sought approval to provide such expanded scope of services pursuant to the Deloitte Retention Materials.

6.     As set forth in the Supplemental Ishol Affidavit, a copy of which is attached hereto, Deloitte also provided Lease Consulting Services to the Debtors on an ordinary course

3

basis prior to the filing of the Retention Application. Deloitte has provided the Lease Consulting Services pursuant to the terms of the engagement letter entered into between the Debtors and Deloitte (the "Lease Consulting Services Engagement Letter").[2] The Lease Consulting Services Engagement Letter was executed in April 2002 while Deloitte was an ordinary course professional for the Debtors. The Lease Consulting Services include (a) review of certain of the Debtors' leases and subleases to identify potential amounts owed to the Debtor by certain of its landlords and leasehold tenants (the "Lease Underpayments"), (b) preparation and delivery to the Debtors of reports on the Lease Underpayments and (c) recovery of the Lease Underpayments for the Debtors. Prior to the entry of the Retention Order, while Deloitte was providing services to the debtors as an ordinary course professional, Deloitte completed the review of the leases and subleases and production of the Lease Underpayment reports and was paid $9,500 in fixed fee compensation pursuant to the terms of the Lease Consulting Services Engagement Letter.

7.    The Lease Consulting Services were inadvertently not included as part of the Deloitte Services for which Deloitte's approval was authorized under the Retention Order. Deloitte, however, continued to provide such services following the entry of the Retention Order. As a result of the efforts of Deloitte on behalf of the Debtors, both before and after the entry of the Retention Order, the Debtors received a payment of approximately $384,200 from a subtenant and expect to receive additional payments in the future. Based on this recovery of a Lease Underpayment and pursuant to the terms of the Lease Consulting Services Engagement Letter, Deloitte has earned a contingency fee in the approximate amount of $134,470 which has not been paid (the "Unpaid Fee"). The Debtors have not paid the Unpaid Fee because the Debtors do not believe that they have authority to do so under the terms of the Retention Order.

---

[2] A copy of the Lease Consulting Services Engagement Letter is attached hereto as Exhibit A and incorporated herein by reference.

## Relief Requested

8.      By this Motion, the Debtors seek authority to (a) expand the retention of Deloitte pursuant to sections 327 and 328 of the Bankruptcy Code during the Chapter 11 Cases to include the Lease Consulting Services and (b) pay Deloitte the Unpaid Fee.

9.      The Debtors believe that such Lease Consulting Services are necessary to enable the Debtors to maximize the value of their estates and to reorganize successfully.  Deloitte has indicated a willingness to act on behalf of the Debtors and to subject itself, for the purposes of the provision of the Lease Consulting Services, to the jurisdiction and supervision of the Court.

10.      The Debtors require Deloitte's continued performance of such services in order to assist the Debtor in identifying and recovering additional potential amounts owed to the Debtor by certain of its landlords and leasehold tenants.  Accordingly, the Debtors are herein requesting that the scope of the Deloitte Services be expanded to include the Lease Consulting Services in accordance with the terms of the Lease Consulting Services Engagement Letter, *nunc pro tunc* to October 1, 2003, and consistent in all other respects with the Application and Retention Order. Under the terms of the Lease Consulting Engagement Letter, Deloitte was to be compensated on both a fixed and contingent fee basis.  All of the fixed fee amounts were paid prior to the filing of the Application consistent with the Debtors compensation of ordinary course professionals.

## Terms of Retention

11.      The Lease Consulting Services Engagement Letter provides the Debtors will pay Deloitte (a) $500 per lease or sublease for the review of the leases and subleases and production of the reports (the "Fixed Fee") plus (b) thirty-five percent (35%) of all savings achieved by the Debtors as a result of Deloitte's provision of the Lease Consulting Services (the "Contingent Fee").  The Fixed Fee was paid to Deloitte prior to the submission of the Application pursuant to the terms of the Order Pursuant to 11 U.S.C. §§ 1107(a) and 1108 Authorizing the Debtors to

5

Employ and Compensate Certain Professionals Utilized in the Ordinary Course of the Debtors' Business dated May 3, 2001.

12.　　The Debtors request that they be permitted to compensate Deloitte for the Contingent Fee portion of the Lease Consulting Services in an amount equal to thirty-five percent (35%) of all savings achieved by the Debtors as a result of Deloitte's provision of the Lease Consulting Services, consistent with the terms of the Lease Consulting Services Engagement Letter.

13.　　The Debtors further request that Deloitte (a) not be required to submit detailed daily time records or expense records as part of any monthly statements, or interim or final fee applications submitted by Deloitte with respect to its provision of the Lease Consulting Services; provided, however, that in lieu of such records, Deloitte shall submit a reasonably detailed summary of such services and the contingent fee compensation earned in connection therewith as part of such monthly statements, or interim or final fee applications, and (b) that Deloitte's contingent fee compensation earned in connection with such services, not be subject to any holdbacks imposed on the compensation of professionals in these Chapter 11 Cases. Time and expense records and holdbacks serve no useful purpose in this instance as the Lease Consulting Services compensation is based entirely on a small fixed fee which was paid pursuant to the fee procedures for ordinary course professionals and the results obtained in the performance of the Lease Consulting Services.

14.　　Other than as provided herein, Deloitte will seek compensation and reimbursement of expenses in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedures, the Local Bankruptcy Rules and any orders of this Court, including without limitation, (a) the Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing

6

Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, dated May 3, 2001, effective as of April 2, 2001 and (b) the Amended Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Revised Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, dated April 17, 2002.    Pursuant to section 328(a) of the Bankruptcy Code, however, the Court may not allow Deloitte's compensation on terms different from those described herein unless such compensation "prove[s] to have been improvident in light of developments not capable of being anticipated at the time" that this Motion is originally approved. 11 U.S.C. § 328(a).

### *Nunc Pro Tunc* Retention of Deloitte

15.    Because the Debtors required Deloitte's continuous assistance in connection with the performance of certain of the Lease Consulting Services, Deloitte continued performing such services for the Debtors pursuant to Deloitte's prior status as an ordinary course professional. Accordingly, subject to this Court's approval, Deloitte intends to seek compensation for its performance of the Lease Consulting Services, *nunc pro tunc* to October 1, 2003.

### Limitation of Indemnification

16.    The Retention Order approved the Debtors' indemnification of Deloitte pursuant to the terms of the applicable retention agreements subject to certain limitations as set forth in the Retention Order. The Debtors request that the Court approve the indemnification provisions set forth in section 6 of the Lease Consulting Services Engagement Letter, subject to the same limitations as provided in the Retention Order, which are as follows:

> (a)    subject to the provisions of subparagraph (c) infra, the Debtors are authorized to indemnify, and shall indemnify Deloitte, in accordance with the Lease Consulting Services Engagement Letter for any claim arising from, related to, or in connection with the Lease Consulting Services, but not for any claim arising from, related to, or in connection with Deloitte's postpetition performance

7

of any services, other than the Lease Consulting Services, unless such other postpetition services and indemnification thereof are approved by the Court;

(b)     notwithstanding any provisions of the Lease Consulting Services Engagement Letter to the contrary, the Debtors shall have no obligation to indemnify Deloitte, or provide contribution or reimbursement to Deloitte, for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen solely from Deloitte's gross negligence or willful misconduct, or (ii) settled prior to a judicial determination as to Deloitte's gross negligence or willful misconduct, but determined by the Court, after notice and a hearing, to be claim or expense for which Deloitte should not receive indemnity, contribution or reimbursement under terms of the Engagement Letters as modified; and

(c)     if, before the earlier of (i) the entry of an order confirming a plan under chapter 11 of the Bankruptcy Code (that Order having become a final order no longer subject to appeal), or (ii) the entry of an order closing this chapter 11 case, Deloitte believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtor's indemnification, contribution and/or reimbursement obligations under the Lease Consulting Services Engagement Letter (as modified by this Order), including without limitation the advancement of defense costs, Deloitte must file an application thereof in this Court, and the Debtors may not pay any such amounts to Deloitte before the entry of an order by this Court approving the payment.  This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Deloitte for indemnification, contribution or reimbursement and is not a provision limiting the duration of the Debtors' obligation to indemnify Deloitte.

17.     Given the services to be rendered by Deloitte and level of its experience in providing Lease Consulting Services, the Debtors believe that the risk of indemnification claims against the estates is very low.  Furthermore, the indemnification is limited; the Debtors will not be liable for any losses, claims, damages, liabilities, costs or expenses arising primarily from Deloitte's gross negligence or willful misconduct.  Accordingly, the Debtors submit that the provision of such limited indemnification is reasonable under the circumstances and reflects a fair balance between the potential risk to Deloitte and the benefit to the estates from Deloitte's services.

18.     In addition to the foregoing, paragraph 6(a) of Section III ("General") of the Lease Consulting Services Engagement Letter (applicable to the provision of the Lease Consulting Services), which services are not subject to the Debtors' indemnification obligations set forth above) shall be null and void to the extent the claims, liabilities or expenses referred to in such paragraphs arise during the pendency of these Chapter 11 Cases.

### Notice

19.     Notice of this Motion has been given to: (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to all official committees appointed by the United States Trustee, and (v) all those parties that requested service and notice of papers in accordance with Fed R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

### No Prior Request

20.     No prior motion for the relief requested herein has been made to this or any other Court.

9

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form attached hereto, (a) authorizing expansion of the scope of services permitted to be provided by Deloitte to include the Lease Consulting Services pursuant to the terms of this Motion, the Supplemental Ishol Affidavit and the Lease Consulting Services Engagement Letters entered into between the Debtors and Deloitte *nunc pro tunc* to October 1, 2003; (b) granting the Debtors authority to pay Deloitte the Unpaid Fee, and (c) granting such further relief as is just and proper.

Dated: March 22, 2004

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
James W. Kapp III
Janet S. Baer
Christian J. Lane
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES &
WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
Scotta E. McFarland (Bar No. 4184)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

10

# Exhibit A

**GRACE**

W. R. Grace & Co. - Conn.
Village Center Drive, Suite 210
Swedesboro, N.J. 08085
Tel: 856/467-2250
FAX: 856/467-4828

# TENANT ENGAGEMENT LETTER

### LEASE CONSULTING SERVICES

This Engagement Letter ("Agreement") dated this 9th day of April 2002, is by and between **W.R. Grace & Co.** (the "Tenant" or the "Company") and **Deloitte & Touche LLP** ("D&T").

### I.   SCOPE OF SERVICES

Tenant hereby engages D&T to perform Lease Consulting Services relating to all of the Tenant's leases, subleases, sub subleases and related amendments (the "Lease") as made available to D&T regarding Tenant's tenancy per the attached Exhibit A.

The purpose of the lease consulting service (also known as lease auditing) is to inspect the Landlord's books and records to determine proper allocation of operating expense and tax pass-throughs charged to the Tenant, or any other relevant charges from lease commencement through the latest escalation year as permitted by Lease and Landlord. D&T shall prepare a preliminary inspection analysis based on reading and abstracting each lease, sublease and sub sublease and analyzing past operating expense trends by line item. In addition, D&T shall analyze the subleases and sub subleases to determine if there may be profit sharing due to Tenant based upon these real estate transactions.

Tenant shall use reasonable efforts to support D&T in gaining access to Landlord's books and records for inspection. D&T shall prepare a lease report indicating exceptions, if any, in operating and property tax accounts, such as utilities, repairs and maintenance, janitorial, security, administrative costs, management fees, common areas, property taxes, gross-ups, etc. Adequate supporting evidence shall be provided to fully document claims with the Landlord. The report shall first be prepared as a draft (the initial final report) for internal Tenant usage. Once approved, the lease report shall be issued to the Tenant for forwarding onto the Landlord. Once the Landlord responds, as necessary, D&T shall prepare an additional counter response under the same drafting procedures.

Upon Tenant's approval, D&T on behalf of the Tenant, shall assist in negotiations with the Landlord to recover any funds that were improperly charged for all relevant retroactive and prospective years throughout the term of the Lease.

In addition, upon Tenant request we will engage a professional lease/space measurement firm to verify the reliability of the Tenant's leased square footage.

These services do not constitute an engagement to provide audit, compilation, review, or attestation services as described in the pronouncements on professional standards issued by the American Institute of Certified Public Accountants.



W. R. Grace & Co. - Conn.
Village Center Drive, Suite 210
Swedesboro, N.J. 08085
Tel: 856/467-2250
FAX: 856/467-4828

**II.   COMPENSATION**

D&T proposes the following compensation package:

| | |
|---|---|
| $500 | (Five hundred dollars) due (per each lease/sublease/sub sublease) when the preliminary inspection analysis report is issued to Tenant. |
| $7,500 | (Seven thousand five hundred dollars) due when the initial draft report is issued to Tenant for forwarding to Landlord plus out-of-pocket travel expenses not to exceed $1,000, plus |
| 35% | (thirty five percent) of all savings actually achieved from the Landlord, subtenants or sub subtenants. Tenant shall be first reimbursed the $7,500 plus the out of pocket travel expenses from the initial gross recoveries prior to D&T being compensated 35% from the balance of the remaining recoveries. Fee shall include savings related to future savings or recoveries to Tenant not to exceed two years. |

All payments are due within 30 days of billing.

**III.   GENERAL**

1.   **Services.** It is understood and agreed that D&T's services may include advice and recommenda-tions, but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by the Company. In connection with its services hereunder, D&T shall be entitled to rely on all decisions and approvals of the Company.

2.   **Payment of Invoices.** Properly submitted invoices upon which payment is not received within thirty (30) days of the invoice date shall accrue a late charge of the lesser of (i) 1½% per month or (ii) the highest rate allowable by law, in each case compounded monthly to the extent allowable by law. Without limiting its rights or remedies, D&T shall have the right to halt or terminate its services entirely if payment is not received within thirty (30) days of the invoice date.

3.   **Term.** Unless terminated sooner in accordance with its terms, this engagement shall terminate on the completion of D&T's services hereunder. This engagement may be terminated by either party at any time by giving written notice to the other party not less than thirty (30) calendar days before the effective date of termination.

2

**GRACE**

W. R. Grace & Co. - Conn.
Village Center Drive, Suite 210
Swedesboro, N.J. 08085
Tel: 856/467-2250
FAX: 856/467-4828

4.    **Ownership.**

a)    D&T Technology. D&T has created, acquired or otherwise has rights in, and may, in connection with the performance of services hereunder, employ, provide, modify, create, acquire or otherwise obtain rights in, various concepts, ideas, methods, methodologies, procedures, processes, know-how, and techniques (including, without limitation, function, process, system and data models); templates; generalized features of the structure, sequence and organization of software, user interfaces and screen designs; general purpose consulting and software tools, utilities and routines; and logic, coherence and methods of operation of systems (collectively, the "D&T Technology").

b)    Ownership of Deliverables. Except as provided below, upon full and final payment to D&T hereunder, the tangible items specified as deliverables or work product in the engagement letter to which these terms are attached (the "Deliverables") shall become the property of the Company. To the extent that any D&T Technology is contained in any of the Deliverables, D&T hereby grants the Company, upon full and final payment to D&T hereunder, a royalty-free, fully paid-up, worldwide, non-exclusive license to use such D&T Technology in connection with the Deliverables.

c)    Ownership of D&T Property. To the extent that D&T utilizes any of its property (including, without limitation, the D&T Technology or any hardware or software of D&T) in connection with the performance of services hereunder, such property shall remain the property of D&T and, except for the license expressly granted in the preceding paragraph, the Company shall acquire no right or interest in such property. Notwithstanding anything herein to the contrary, the parties acknowledge and agree that (a) D&T shall own all right, title, and interest, including, without limitation, all rights under all copyright, patent and other intellectual property laws, in and to the D&T Technology and (b) D&T may employ, modify, disclose, and otherwise exploit the D&T Technology (including, without limitation, providing services or creating programming or materials for other companies). D&T does not agree to any terms that may be construed as precluding or limiting in any way its right to (a) provide consulting or other services of any kind or nature whatsoever to any person or entity as D&T in its sole discretion deems appropriate or (b) develop for itself, or for others, materials that are competitive with those produced as a result of the services provided hereunder, irrespective of their similarity to the Deliverables.

5.    **Limitation on Warranties. THIS IS A SERVICES ENGAGEMENT. D&T WARRANTS THAT IT SHALL PERFORM SERVICES HEREUNDER IN GOOD FAITH. D&T DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.**

6.    **Limitation on Damages and Indemnification.**

a)    The Company agrees that D&T and its personnel shall not be liable to the Company for any claims, liabilities, or expenses relating to this engagement for an aggregate amount in excess of the fees paid by the Company to D&T pursuant to this engagement, except to the extent finally judicially determined to have resulted primarily from the bad faith or intentional misconduct of D&T. In no event shall D&T or its personnel be liable for consequential, special, indirect, incidental, punitive or exemplary loss, damage, or expense relating to this engagement.

**GRACE**

W. R. Grace & Co. - Conn.
Village Center Drive, Suite 210
Swedesboro, N.J. 08085

b)   The Company shall indemnify and hold harmless D&T and the persons from all claims, liabilities, and expenses relating to this engagement, except to the extent finally judicially determined to have resulted primarily from the bad faith or intentional misconduct of D&T.

c)   The provisions of this Paragraph and Paragraph 9 shall apply to the fullest extent of the law, whether in contract, statute, tort (such as negligence), or otherwise. In circumstances where all or any portion of the provisions of this Paragraph are finally judicially determined to be unavailable, D&T's aggregate liability for any claims, liabilities, or expenses relating to this engagement shall not exceed an amount which is proportional to the relative fault that D&T's conduct bears to all other conduct giving rise to such claims, liabilities, or expenses.

7.   **Cooperation.** The Company shall cooperate with D&T in the performance by D&T of its services hereunder, including, without limitation, providing D&T with reasonable facilities and timely access to data, information and personnel of the Company. The Company shall be responsible for the performance of its personnel and agents and for the accuracy and completeness of all data and information provided to D&T for purposes of the performance by D&T of its services hereunder.

8.   **Force Majeure.** D&T shall not be liable for any delays or non-performance resulting from circumstances or causes beyond its reasonable control, including, without limitation, acts or omissions or the failure to cooperate by the Company (including, without limitation, entities or individuals under its control, or any of their respective officers, directors, employees, other personnel and agents), acts or omissions or the failure to cooperate by any third party, fire or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.

9.   **Limitation on Actions.** No action, regardless of form, relating to this engagement, may be brought by either party more than one year after the cause of action has accrued, except that an action for non-payment may be brought by a party not later than one year following the date of the last payment due to such party hereunder.

10.   **Independent Contractor.** It is understood and agreed that each of the parties hereto is an independent contractor and that neither party is, nor shall be considered to be, an agent, distributor, partner, fiduciary or representative of the other. Neither party shall act or represent itself, directly or by implication, in any such capacity in respect of the other or in any manner assume or create any obligation on behalf of, or in the name of, the other.

11.   **Confidentiality and Internal Use.**

a)   The Company agrees that all services hereunder and Deliverables shall be solely for the Company's informational purposes and internal use, and are not intended to be and should not be used by any person or entity other than the Company. The Company further agrees that such services and Deliverables shall be used by the Company solely to assess the effectiveness of its customer service initiatives and customer service training programs, and shall not be circulated, quoted, disclosed, or distributed to, nor shall reference to such services or Deliverables be made to, any person or entity other than the Company.

b)   To the extent that, in connection with this engagement, D&T comes into possession of any proprietary or confidential information of the Company, D&T will not disclose such information to any third party without the Company's consent, except (a) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional

4

**GRACE**

W. R. Grace & Co. - Conn.
Village Center Drive, Suite 210
Swedesboro, N.J. 08085

standards, or in connection with litigation pertaining hereto, or (B) to the extent such information (i) shall have otherwise become publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a disclosure by D&T in breach hereof, (ii) is disclosed by the Company to a third party without substantially the same restrictions as set forth herein, (iii) becomes available to D&T on a nonconfidential basis from a source other than the Company which D&T believes is not prohibited from disclosing such information to D&T by obligation to the Company, (iv) is known by D&T prior to its receipt from the Company without any obligation of confidentiality with respect thereto, or (v) is developed by D&T independently of any disclosures made by the Company to D&T of such information. In addition, the Company acknowledges and agrees that any such information that comes to the attention of D&T in the course of performing this engagement may be considered and used by D&T in the context of responding to its professional obligations as the independent accountants for the Company.

12.    **Survival and Interpretation.**  The agreements and undertakings of the Company contained in the engagement letter to which these terms are attached, together with the provisions of Paragraphs 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 and 16 hereof, shall survive the expiration or termination of this engagement.  For purposes of these terms, "D&T" shall mean Deloitte & Touche LLP, Deloitte Consulting LLC, Deloitte Touche Tohmatsu, the member firms of Deloitte Touche Tohmatsu and their affiliates, all of their partners, principals, members, owners, directors, staff and agents, and in all cases any successor or assignee.

13.    **Assignment.**  Except as provided below, neither party may assign, transfer or delegate any of its rights or obligations hereunder (including, without limitation, interests or claims relating to this engagement) without the prior written consent of the other party.  D&T may assign or subcontract its rights and obligations hereunder to any affiliate or related entity without the consent of the Company.

14.    **Waiver of Jury Trial.**  **D&T AND THE COMPANY HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER IN CONTRACT, STATUTE, TORT (SUCH AS NEGLIGENCE), OR OTHERWISE) RELATING TO THIS ENGAGEMENT.**

15.    **Entire Agreement, Amendment and Notices.**  These terms, and the engagement letter to which these terms are attached, including exhibits, constitute the entire agreement between D&T and the Company with respect to this engagement, supersede all other oral and written representations, understandings or agreements relating to this engagement, and may not be amended except by written agreement signed by the parties.  In the event of any conflict, ambiguity, or inconsistency between these terms and the engagement letter to which these terms are attached, these terms shall govern and control.  All notices hereunder shall be (i) in writing, (ii) delivered to the representatives of the parties at the addresses first set forth above, unless changed by either party by notice to the other party, and (iii) effective upon receipt.

5

**GRACE**

W. R. Grace & Co. - Conn.
Village Center Drive, Suite 210
Swedesboro, N.J. 08085
Tel: 856/467-2250

16.  **Governing Law and Severability.** These terms, the engagement letter to which these terms are attached, including exhibits, and all matters relating to this engagement (whether in contract, statute, tort (such as negligence), or otherwise), shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof). If any provision of such terms or engagement letter is found by a court of competent jurisdiction to be unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the dated indicated above.

W.R. GRACE & CO. – *CONN*                    DELOITTE & TOUCHE LLP

Print Name: _AKOS  L.  NAGY_            Print Name:  Joshua W. Leonard

Signature: _____        Signature: _____

Its: _Director of Real Estate_          Its:  Partner

Date: _April 15, 2002_                  Date: _4/17/02_

Village Center Drive – Suite 210        350 South Grand Avenue
Swedesboro, N.J. 08085                  Los Angeles, California 90071-3462

6

# GRACE

W. R. Grace & Co. - Conn.
Village Center Drive, Suite 210
Swedesboro, N.J. 08085
Tel: 856/467-2250
FAX: 856/467-4828

## EXHIBIT A

| Building Address | Subtenant/ Sub Subtenant Name |
|---|---|
| 41 W. 42nd St. or 1114 Sixth Avenue New York, N.Y. | Coudert Brothers |
| | Victoria's Secret |
| | TrizecHahn |
| | Salant Corp. |
| | Kronish Lieb |
| | Tahari |
| | Weiler Arnow Mgt |
| | Burke & Parsons |
| | Mullin & Assoc. |
| | Winterthur |
| | Garbarini, Scher & Decicco |
| | Norddeutssche Landesbank |
| | Comptroller of the Currency |
| | Cumberland Associates |
| | City University of New York |
| | Caithness Corp. |
| | Lipha Pharmaceuticals |
| | Audax |

The above list of subtenants and sub subtenants is subject to final determination by D&T that there exists no conflict(s) that in D&T's sole judgment would preclude its performance of the contemplated procedures with respect to any one or more of the above subtenants and sub subtenants.

7

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | Re: Docket No. _____ |

## ORDER AUTHORIZING THE EXPANSION OF THE SCOPE OF THE SERVICES PERMITTED TO BE PROVIDED BY DELOITTE & TOUCHE LLP TO THE DEBTORS TO INCLUDE CERTAIN LEASE CONSULTING SERVICES

Upon consideration of the motion (the "Motion")[2] of the above captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order authorizing the expansion of the scope of the services permitted to be provided by Deloitte & Touche LLP to the Debtors to include certain Lease Consulting Services, and upon the supplemental affidavit of Larry D. Ishol (the "Supplemental Ishol Affidavit") filed in support of the Motion; and the Court being satisfied, based on the representations made in the Motion and Supplemental Ishol Affidavit, that Deloitte represents no interest adverse to the Debtors' estates with respect to the matter upon which they are to be engaged, that Deloitte is a "disinterested person" as that term is

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] Capitalized terms not otherwise defined herein will have the meanings ascribed to them in the Motion.

defined under section 104(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and that the expansion of the scope of the Deloitte Services to include the Lease Consulting Services, as requested pursuant to the Motion, is necessary and would be in the best interests of the Debtors, their creditors and the Debtors' estates; and it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. §157(b); and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and after due deliberation and sufficient cause appearing therefore,

IT IS HEREBY ORDERED THAT:

1.      The Motion is granted.

2.      The Debtors are authorized to expand the scope of the Deloitte Services to include Deloitte's provision of the Lease Consulting Services on the terms set forth in the Motion, the Supplemental Ishol Affidavit and the Lease Consulting Services Engagement Letter, *nunc pro tunc* to October 1, 2003.

3.      Deloitte will provide such Lease Consulting Services as Deloitte and the Debtors shall deem appropriate and feasible in order to assist the Debtors in the course of these Chapter 11 Cases as set forth in the Motion, the Supplemental Ishol Affidavit and the Lease Consulting Services Engagement Letter.

4.      The indemnification provisions of the Lease Consulting Services Engagement Letter are approved subject to the following:

(a)      subject to the provisions of subparagraph (c) infra, the Debtors are authorized to indemnify, and shall indemnify Deloitte, in accordance with the Lease Consulting Services Engagement Letter for any claim arising from, related to, or in connection with the Lease Consulting Services, but not for any claim arising from, related to, or in connection with Deloitte's postpetition performance of any services, other than the Lease Consulting Services, unless such other postpetition services and indemnification thereof are approved by the Court;

2

(b)    notwithstanding any provisions of the Lease Consulting Services Engagement Letter to the contrary, the Debtors shall have no obligation to indemnify Deloitte, or provide contribution or reimbursement to Deloitte, for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen solely from Deloitte's gross negligence or willful misconduct, or (ii) settled prior to a judicial determination as to Deloitte's gross negligence or willful misconduct, but determined by the Court, after notice and a hearing, to be claim or expense for which Deloitte should not receive indemnity, contribution or reimbursement under terms of the Engagement Letters as modified; and

(c)    if, before the earlier of (i) the entry of an order confirming a plan under chapter 11 of the Bankruptcy Code (that Order having become a final order no longer subject to appeal), or (ii) the entry of an order closing this chapter 11 case, Deloitte believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtor's indemnification, contribution and/or reimbursement obligations under the Lease Consulting Services Engagement Letter (as modified by this Order), including without limitation the advancement of defense costs, Deloitte must file an application thereof in this Court, and the Debtors may not pay any such amounts to Deloitte before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Deloitte for indemnification, contribution or reimbursement and is not a provision limiting the duration of the Debtors' obligation to indemnify Deloitte; and it is further

5.    Paragraph 6(a) of Section III ("General") of the Lease Consulting Services Engagement Letter (applicable to the provision of the Lease Consulting Services), which services are not subject to the Debtors' indemnification obligations set forth above) shall be null and void to the extent the claims, liabilities or expenses referred to in such paragraphs arise during the pendency of these chapter 11 cases.

6.    Deloitte may render Lease Consulting Services deemed appropriate and necessary by the Debtors and Deloitte to benefit the Debtors' estates.

7.    Deloitte shall be compensated for services its provisions of the Lease Consulting Services and reimbursed for expenses incurred consistent with the terms of the Motion, the Supplemental Ishol Affidavit and the Lease Consulting Services Engagement Letter, and in accordance with the procedures set forth in the Bankruptcy Code, the Federal Rules of

3

Bankruptcy Procedure, the Local Bankruptcy Rules and orders of this Court, including without limitation, (a) the Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, dated May 3, 2001, effective as of April 2, 2001 and (b) the Amended Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Revised Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, dated April 17, 2002 (together, the "Administrative Order").

8.    Notwithstanding anything to the contrary in the Administrative Order, Deloitte (a) not be required to submit detailed daily time records or expense records as part of any monthly statements, or interim or final fee applications submitted by Deloitte with respect to its provision of the Lease Consulting Services; provided, however, that in lieu of such records, Deloitte shall submit a reasonably detailed summary of such services and the contingent fee compensation earned in connection therewith as part of such monthly statements, or interim or final fee applications, and (b) that Deloitte's contingent fee compensation earned in connection with such services, not be subject to any holdbacks imposed on the compensation of professionals in these Chapter 11 Cases

9.    Notwithstanding anything to the contrary herein or in the Motion, the Application, the Affidavit or the Administrative Order, Deloitte's fees shall be subject to the approval of the Court under a reasonableness standard upon proper application by Deloitte in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any applicable orders of this Court, including, without limitation, the Administrative Order.

4

10.     This Court retains jurisdiction with respect to all matters arising from or relating to the implementation of this Order.

Dated:_____, 2004

_____
The Honorable Judith K. Fitzgerald
United States Bankruptcy Judge

91100-001\DOCS_DE:90510.2

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

In re:                                      )     Chapter 11
                                            )
W. R. GRACE & CO., et al.,[1]               )     Case No. 01-01139 (JKF)
                                            )     Jointly Administered
                        Debtors.            )

## SUPPLEMENTAL AFFIDAVIT OF LARRY D. ISHOL IN SUPPORT OF THE MOTION REQUESTING THE APPROVAL OF AN ORDER AUTHORIZING THE EXPANSION OF THE SCOPE OF SERVICES PERMITTED TO BE PROVIDED BY DELOITTE & TOUCHE LLP TO THE DEBTORS TO INCLUDE CERTAIN LEASE CONSULTING SERVICES

Larry D. Ishol, being duly sworn, deposes and says:

1.      I am a member of the firm of Deloitte & Touche LLP ("Deloitte"), which has an

office located at 1750 Tysons Boulevard, McLean, Virginia 22102-4219.  I have previously

submitted an affidavit (the "Ishol Affidavit") in support of the application (the "Application") of

the Debtors for entry of an order pursuant to 11 U.S.C. §§ 327(a) and 328(b) and Fed. R. Banker.

P. 2014(a), 2016 and 502 authorizing the employment and retention of Deloitte as customs

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

services providers, and tax and compensation advisors to the Debtors <u>nunc</u> <u>pro</u> <u>tunc</u> to February 4, 2003.

2.      I make this supplemental affidavit (this "Supplemental Ishol Affidavit") of my personal knowledge based upon inquires made by myself or on my behalf in support of the motion (the "Motion") requesting the approval of an order authorizing the expansion of the scope of services permitted to be provided by Deloitte to the Debtors to include certain lease consulting services (the "Lease Consulting Services"). Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

3.      Prior to the entry of the Retention Order, as set forth in the Ishol Affidavit, Deloitte had been authorized as an ordinary course services provider to the Debtors in these Chapter 11 cases.

4.      As ordinary course services providers, Deloitte performed certain compensation plan implementation, tax advisory, and SAP environment control services.

5.      Because the Debtors requested that Deloitte expand its scope of services beyond those which Deloitte believed were within the scope of Deloitte's ordinary course retention in these Chapter 11 Cases, Deloitte sought approval to provide such expanded scope of services pursuant to the Deloitte Retention Materials.

6.      As the partner in charge of Deloitte's retention in these Chapter 11 Cases, I was recently informed that, prior to the entry of the Retention Order, in addition to the foregoing ordinary course services, the Debtors also retained Deloitte to provide the Lease Consulting

2

Services to the Debtors pursuant to the Lease Consulting Services Engagement Letter as an ordinary course services provider.

7.      Although the Lease Consulting Services were not included as part of the Deloitte Services for which Deloitte's approval was authorized under the Retention Order, Deloitte continued to provide such services under the terms applicable to ordinary course professionals in these Chapter 11 Cases.

8.      Under the terms of the Lease Consulting Engagement Letter, Deloitte is to be compensated on both a fixed and contingent fee basis.

9.      Prior to the entry of the Retention Order, while Deloitte was authorized to provide services to the Debtors as an ordinary course professional, Deloitte was paid $9,500 in fixed fee compensation for its provision of the Lease Consulting Services.

10.     Deloitte seeks compensation for its contingent fee portion of the Lease Consulting Services in an amount equal to thirty-five percent (35%) of all savings achieved by the Debtors as a result of Deloitte's provision of the Lease Consulting Services, consistent with the terms of the Lease Consulting Services Engagement Letter.

11.     Time and expense records and holdbacks serve no useful purpose in this instance as the Lease Consulting Services compensation is based entirely on a small fixed fee which was paid pursuant to the fee procedures for ordinary course professionals and the results obtained in the performance of the Lease Consulting Services.

12.     The Debtors' estate has thus far received approximately $384,200 as a result of Deloitte's efforts in providing the Lease Consulting Services.  Deloitte's continued performance

3

of the Lease Consulting Services is needed to identify and recover additional potential amounts owed to the Debtor by certain of its landlords and leasehold tenants.

13.     Based on this recovery of Lease Underpayment and pursuant to the terms of the Lease Consulting Services Engagement Letter, Deloitte has earned a contingency fee in the approximate amount of $134,470 which has not been paid.

Dated: March *19*, 2004

By: _____
    Larry D. Ishol
    Partner

Sworn to and subscribed before me, a Notary Public for the State of *Virginia* County of *Fairfax* this *19th* day of March, 2004.

_____
Notary Public

4