UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                                    .        Chapter 11
                                          .
W.R. GRACE & CO., <u>et al.</u>,          .        Case No. 01-01139(JKF)
                                          .        Jointly Administered
                                          .
          Debtors.                        .        March 22, 2004 (12 p.m.)
                                          .        (Wilmington)


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.



1          THE COURT:  Hello?  Hello?

2          MR. WESTBROOK  (TELEPHONIC):  Good morning.  This

3    is Ed Westbrook in South Carolina on the line.

4          THE COURT:  Good morning Mr. Westbrook.  I'm just

5    about to call the W.R. Grace case.  Just a minute, please.

6    Is she ready?

7          THE CLERK:  Yes.

8          THE COURT:  This is the matter of W.R. Grace, 01-

9    1139.  There is an agenda that has been filed.  The persons I

10   have appearing by phone are Mr. Westbrook, Ms. Wasser.

11   That's all.  Is there anyone else on the phone?

12          MR. DAVIS (TELEPHONIC):  Michael Davis for National

13   Union on the phone.

14          THE COURT:  Anyone else?  Okay.  Just a second.

15   Okay, good morning.

16          MS. BAER:  Good morning, Your Honor.

17          THE COURT:  Afternoon.  Sorry.

18          MS. BAER:  Good morning, Your Honor.  Janet Baer on

19   behalf of the Debtor.

20          THE COURT:  Ms. Baer?

21          MS. BAER:  Your Honor, the first item on your

22   agenda is actually the debtor's motion to extend the

23   exclusive periods.  Might I suggest we move that to the end

24   of the agenda, as that is a contested matter, and many

25   things, Your Honor, I think we can get rid of pretty quickly.

1          THE COURT:  Sure.  I should tell you, I have had

2    orders entered, but I don't -- I doubt that they're on the

3    docket yet.  With respect to item 2, as to which I had a CNO

4    filed.  Three (a), 3(b), 7(a), and 7(b) that had COCs filed.

5    I believe item eight is an matter under advisement that I

6    have in chambers, and so I think that should leave us with

7    hearings on 1, 4, 5, 6, and 9.

8          MS. BAER:  And I think I can take care of a couple

9    of those, given some developments this morning.

10          THE COURT:  All right.

11          MS. BAER:  Your Honor on -- that takes us to item

12    number 4.  The motion of Yessenia Rodriguez to lift the stay.

13    Your Honor, you may recall, this has been on your agenda for

14    several months.  This is a situation with First Dollar

15    Insurance Coverage.  The insurance carrier is reviewing the

16    claim and negotiating with Ms. Rodriguez's counsel in the

17    hopes that they will settle that matter.  It's a very small

18    matter.  We expect it will settle, and this morning Ms.

19    Rodriguez's counsel agreed with us that we would just

20    continue this one more time in the hopes that they will

21    complete the settlement this month.

22          THE COURT:  All right.

23          MS. BAER:  Your Honor, item number 5, the motion of

24    Neutocrete Products, Inc. to lift the stay, Your Honor, this

25    is a matter where Grace had filed a post-petition collection

action, and the response from Neutocrete was a very

significant products liability counterclaim. Neutocrete has

filed a timely proof of claim for that claim, and W.R. Grace

has since withdrawn its post-petition collection action. So

Neutocrete has agreed to withdraw this motion. That matter

will be dealt with through the claims process.

THE COURT: Is something more to be filed that will

actually withdraw it?

MS. BAER: We actually have an order, Your Honor,

which we can hand up for entry.

THE COURT: All right.

MS. BAER: Your Honor, I've been informed by our

Delaware counsel that he conversed this morning further and

was informed that counsel from Neutocrete is going to file a

motion withdrawing -- or a stipulation withdrawing the

matter.

THE COURT: All right. Just a second, then. Okay.

Thank you.

MS. BAER: Your Honor, that -- the next matter on

your agenda, item number 6, is the debtor's motion for

limited waiver of Bankruptcy Rule 3007-1, for the purpose of

streamlining the objection process. Your Honor, we have

identified several gateway objections, as we've called them,

that we would like waiver of the local rules to file. These,

Your Honor, are ways in which we believe will streamline the

1    process and hopefully get rid of a lot of objections without

2    having to take a lot of time and attention.  Your Honor,

3    there are approximately fifteen thousand claims that have

4    been filed in the case.  Over forty three hundred of those

5    claims are asbestos property damage claims.  In reviewing the

6    claims, we've identified 856 claims that are substantially

7    incomplete claim forms.  We've actually attached, as Exhibit

8    A, to our motion, or -- I'm sorry -- to our reply, one of

9    those claim forms where you can see, Your Honor, that

10   effectively, all that's happened is somebody's filled in

11   their name, their address, maybe the name of the lawyer, and

12   one other piece of information, like where they work.  Your

13   Honor, that's essentially all that's there.  Under the local

14   rules, that would actually be a substantive objection, and we

15   would be limited by the hundred and fifty per filing, two

16   filings a month.  Likewise a -- 1,523 proof of claim forms

17   have been identified that have materially insufficient

18   supporting documentation.  As you may recall, the asbestos

19   property damage proof of claim form here is very detailed.

20   Asks for documentation or an explanation of where the

21   documentation is.  As you can see from Exhibit B to the

22   reply, the kind of information we received in many of these

23   proof of claim forms is essentially nothing.  The material --

24   the documentation that's attached is not documentation.  It

25   is in some instances, an objection to the request for

1    documentation.   It is in some instances, a one line note that

2    says, We will supply documentation at another period in time.

3    Your Honor, these two gateway objections are situations

4    where, from the proof of claim forms that have been filed, we

5    would have to file substantive objections, yet we don't even

6    know really what the claim is for.   If we were required to

7    both adhere to the hundred and fifty per claim limit, as well

8    as adhere to the rule that we have to file all our

9    substantive objections at one time, we really could be

10   materially harmed here, because, frankly, we can't tell from

11   the proof of claim form what our objections might be, other

12   than the fact that the proof of claim form tells us nothing.

13   As we move along, Your Honor, with the other gateway

14   objections, we've identified over twenty eight hundred claim

15   forms that fail to include any product identification

16   information.   Again, Your Honor, here we have no idea if this

17   is a claim against W.R. Grace, because there's not a single

18   clue in the proof of claim form as to how it could be a claim

19   against Grace.   Likewise, Your Honor, we've identified over

20   three thousand three hundred statute of limitations and

21   latches-type objections which can be brought.   Very routine,

22   Your Honor, situations where, based on the information in the

23   proof of claim form, clearly the statute of limitations has

24   run -- run by many, many years.   Finally, Your Honor, we've

25   identified approximately two hundred claims that have been

filed where there's already been a settlement of the claim

involved in the proof of claim that was filed.  Your Honor,

what we would like to do here is simplify this process.

These gateway objections, if filed, can get rid of, or sort

out, a tremendous number of claims so we can then get to what

are the real merits of the claims.  With a waiver of the

hundred and fifty per omnibus objection rule, we can get

these brought in much sooner.  For example, if we had to

adhere to the rule, just on statute of limitations alone, it

would take twenty two separate objections and eleven months

to get through that one gateway.  Now, Your Honor, the

Asbestos Property Damage Committee has objected to this

motion, indicating that this is more burdensome to the

claimants, because theoretically, we could bring them back

time and time again.  That's not our intention, Your Honor.

These gateway objections can, potentially, only have them

come here once, if at all, and get rid of it.  For example,

if we win on statute of limitations, there's nothing else to

talk about.  We don't necessarily say that we're going to

bring six separate gateway objections in all separate.  Some

of these can be combined.  For example, substantially

incomplete claim forms and material insufficient

documentation are two objections that can be combined into

one omnibus objection that can potentially take care of over

two thousand claims.  If those are gone, we will either have

1    eliminated them completely, which happens in the claims

2    objection process, or we will then get into a situation where

3    we can identify what these claims really are.   Then we can

4    review the substance and determine all of our substantive

5    objections to the claims.   Your Honor, these are not

6    situations where we are trying to, and in any way want to

7    hamper, individuals and make them keep coming to court.

8    Asbestos property damage claims in this case, by and large,

9    are building owners, hospitals, large entities.   They're not

10   mom and pop who have a problem with their house.   As you

11   recall, Your Honor, there is no ZAI bar date.   Therefore, the

12   individual claims on property damages, ZAI type claims are

13   not involved here.   In addition, Your Honor, as you know

14   there is no bar date for asbestos personal injury claims.

15   So, while we reserve the right to pursue this kind of a

16   process for asbestos personal injury, if and when we get

17   there, we're not asking for any relief at this time with

18   respect to asbestos personal injury.   Finally, Your Honor,

19   with respect to medical monitoring.   Medical monitoring

20   claims are a little bit of a hybrid, somewhat related to

21   asbestos personal injury claims.   The analysis we have done

22   and the gateway objections that we have identified do not

23   include medical monitoring claims.   And at the present time,

24   we do not anticipate the gateway objections will apply to the

25   medical monitoring claims.   They do apply, however, to the

FORM FED-25   PENGAD · 1-800-631-6989

1   asbestos property damage claims and, in some circumstances,

2   to the non-asbestos unsecured claims. Your Honor, under

3   these circumstances, we would ask for a waiver of local rule

4   3007, so that we could bring these gateway objections without

5   being -- having to fit into the numbers that we would

6   otherwise be required to bring. As well as, without having

7   to bring all substantive objections at one time.

8             THE COURT: Okay. Mr. Baena.

9             MR. BAENA: May it please the Court. Good morning,

10   Your Honor. Scott Baena on behalf of the Official Committee

11   of Asbestos Property Damage Claimants. Your Honor, over the

12   course of this case, we've heard the debtors say, rather

13   unequivocally at times, that the extent of property damage

14   claims in this case are relatively insubstantial. And now,

15   ironically, we hear them say that by virtue of the sheer

16   number of property damage claims that were filed, in excess

17   of four thousand, we need to streamline the manner in which

18   we deal with the objections that they wish to lodge to those

19   claims. Some of which relate, as alluded to by counsel, to

20   installations of Grace product in properties across the

21   United States more than thirty years ago. What's apparent to

22   us is that despite the apparent good intentions, what we are

23   being confronted by, in this instance, again, is just a war

24   of attrition. We started this process with an

25   extraordinarily detailed proof of claim form -- unparalleled

1 in any other asbestos bankruptcy case -- that required a

2 considerable amount of information.  Information, which even

3 Your Honor recognized might not be readily attainable in all

4 instances, and you indicated that you would keep an open mind

5 as we went through this process.  There's a good reason why

6 what they wish to do is prohibited.  But, before I get to

7 that reason, I would like to point out a threshold reason why

8 this motion is inappropriate.  And, in particular, Your

9 Honor, Local Rule 2002-1 would require the debtor to give

10 notice to any person that has rights that are affected

11 adversely by a motion before the Court.  Ironically, the

12 response filed to our objection to this claim, enumerated

13 illustratively, problems with various proofs of claim forms

14 that were filed by property damage claimants.  Yet, based

15 upon the service list that we have been provided by the

16 debtor, the only persons that have been provided with notice

17 of this motion was the Property Damage Committee and its

18 members.  None of the claimants have been provided with any

19 notice of this hearing or of the motion itself.  None of the

20 claimants, whose claims are implicated by this -- this count

21 that's provided for in their response have been apprised of

22 the fact that they might be within one of those baskets, and

23 they might have a reason to be here today, and so, there was

24 improper notice of this hearing.  And for that reason alone,

25 we don't think that the Court can proceed.  But, even if we

1  are to consider the substance of the motion, I think the

2  substance of the motion, too, proves why it's not well taken.

3  Firstly, Judge, the six categories of gateway -- the so-

4  called gateway objections, is so pervasive, particularly by

5  virtue of the inclusion of statute of limitations, statute of

6  repose, and latches objections, that it doesn't lend itself

7  to the kinds of objections that we're talking about the

8  debtor lodging here.  Judge Rolin made it very plain in his

9  standards opinion in the Sealed Air litigation, over the

10  fraudulent transfers that ensued, that there was nothing

11  about bankruptcy that abrogates the application of state law

12  to the determination of when particular asbestos claims

13  arose.  We're not creating federal common law here as to a

14  statute of limitation.  And so, beyond being merely labelled

15  commonly as statute of limitations objections, and statute

16  repose, and latches objections, every objection of that

17  nature will depend upon the application of the state law of

18  the particular jurisdiction whose law controls this dispute.

19  And, in that application of that law will depend, as you well

20  know, upon the particular facts and circumstances of each

21  claim.  So --

22          THE COURT:  But that's always true, Mr. Baena.  I

23  mean, I could compel the debtor to say that if the property

24  is in Florida or the issue is governed by Florida law, to put

25  all the Florida ones in one objection.  But, omnibus

objections always have each claim examined on their own

merits.  It's just that you're looking at the same issue with

respect to the claims.

MR. BAENA:  I understand that.  But, you see Judge,

therein lies, we think, the -- and I don't believe it was an

intentional, but certainly at least an inadvertent mistake.

And that is, in order to bring the gateway objections, in

respect of limitations, repose, and latches, the debtor will

necessarily have had to make detailed examinations in respect

of each of the clients.  They need to know what the product

is, they need to know where it was installed, they need to

know when it was installed, they need to know the nature of

the application of the product.  They need to know everything

they would need to know, we submit, for purposes of bringing

all other objections in respect to that client.  And, so,

it's just a pretense to just drag out and truncate this

process in respect to property damage claims.  And if you can

bring a gateway objection, so to speak, in respect of the

statute of limitations, then I submit you can object to

everything else you find offensive about that particular

proof of claim.  And there is absolutely no logical basis to

then say, Okay, having done all that drilling, to find all

those circumstances, fact and the law that apply to that

claim, having lost the statute of limitations argument, they

can now come back and bring some other argument.  Subjecting

1   a property damage claimant, that's been content up till that

2   point in time to allow a committee to represent its

3   interests, collectively, with it's entire constituency, to

4   come back to this court on several occasions.   It's just --

5          THE COURT:   But there's not --

6          MR. BAENA:   -- inappropriate.

7          THE COURT:   But if there were statute of

8   limitations issues, raised in a substantive objection on the

9   merits, I'd probably bifurcate them out anyway.   Because, why

10  get to the merits if the issue's going to be controlled by a

11  principle of law.

12         MR. BAENA:   Well, you may well wish to bifurcate

13  it, Judge, but that claimant will have had the benefit of

14  knowing all the objections to its claim.

15         THE COURT:   But, what difference is it going to

16  make if the issue is -- if the issue is adjudicated by way of

17  a statute of limitations?   And if it isn't, then what harm is

18  there in letting the folks address the merits later?

19         MR. BAENA:   Well, Judge, not to be flip, but that's

20  exactly the type of due process that that rule was intended

21  to provide.   The claimant is entitled to know all of the

22  objections that are being asserted.

23         THE COURT:   I don't think that was --

24         MR. BAENA:   It's not supposed to be a --

25         THE COURT:   -- a due process --

1          MR. BAENA:  -- slow leak.

2          THE COURT:  The thirty -- the 3007 rule or the

3   notice rule?  What -- which rule are we talking about?

4          MR. BAENA:  Well, the notice rule we already know

5   hasn't been complied with.

6          THE COURT:  Okay.  On the --

7          MR. BAENA:  We're talking about --

8          THE COURT:  The 3007.

9          MR. BAENA:  We're talking about the rule that

10  limits objections to a single objection.

11         THE COURT:  Okay.  I don't think that's a due

12  process issue on behalf of the claimants at all.  I think

13  that's a convenience of the Court issue.  It's difficult to

14  handle a hundred and fifty objections or more in any one set

15  of pleadings.  Particularly in this district, where you have

16  to file the proofs of claim along with everything.  It has

17  nothing to do with due process.  It has to do with Court

18  convenience.

19         MR. BAENA:  Well, Judge, I do believe that the

20  limitation on the number of objections that could be brought

21  at one time, clearly, is a matter that goes to the management

22  of the Court's docket.

23         THE COURT:  Yeah.

24         MR. BAENA:  But, I do believe that there is another

25  sense that one could perceive from that rule, that goes

1  beyond just managing one's docket.  And that is the

2  expectations of a claimant to know all of the objections that

3  are going to be lodged against it, so that there's finality

4  as to the allowance or disallowance of it's claim.

5          THE COURT:  Well, with --

6          MR. BAENA:  By this basis, Judge, it's not until

7  the end of the day that anybody knows anything in respect of

8  their claim.

9          THE COURT:  This case could go on for the next

10  twenty five years if the debtor is forced to bring a claim

11  objection, one at a time, against every -- every claimant.

12  Not just the property damage claims, but every claimant.

13  There is no court, that I know of, that handles mega cases

14  like this, that requires a specific objection for every

15  claim.  They're all handled by omnibus objections.  In fact,

16  Chapter 7s are handled by omnibus objections.  So, I don't

17  see that as the problem.  Now, if there is an issue with

18  respect to the fact that some claimants said they would

19  submit documentation later and hasn't, it seems to me that

20  before I struck that claim, it might be more appropriate to

21  have the debtors send out one more notice saying, You said

22  you were going to submit the documents, you didn't, you've

23  got X number of days to do it, and if you don't, we're going

24  to file an objection based on the fact that there's improper

25  documentation.  Now, I'm willing to provide one more

1    opportunity for claimants who have timely filed claims to do

2    it.  I'm not reopening the bar date.  But, if it's a -- if

3    it's a supplement to the documentation, I may be willing to

4    do something along those lines.  But, I really don't see a

5    reason why we shouldn't be addressing matters that may be

6    able to be defended or prosecuted, one or the other, as

7    matters of law first.  If they can be addressed -- if they

8    can be addressed in that fashion, we never get to the merits

9    issue.  Why incur all that expense on behalf of the claimant?

10            MR. BAENA:  Well, perhaps the claimant ought to

11   have the opportunity, Judge, to decide whether or not to

12   withdraw their claim based upon the totality of the

13   objections that will be lodged against that claimant.

14            THE COURT:  Well, they can always do that.

15            MR. BAENA:  But --

16            THE COURT:  I mean, if the notice goes out that

17   says the Court's approved, you know, a piecemeal objection

18   for the reason of court convenience and making sure that we

19   address the propositions of law first, you know, then they

20   know.  They may be subject to it.  I'll put a -- I think I

21   can impose a limitation on the number of times that the

22   debtor is able to go back to the well for any specific

23   claimant.  But I really don't see why the gateway objections

24   idea isn't a sound one.  It seems me to be a sound method of

25   proceeding.

1    MR. BAENA:  I would like to follow up on an earlier

2  remark you made about unnoticed.  I would point out, in fact,

3  that in U.S. Gypsum, Judge Newsome did just that.  He

4  required the debtor to give a notice and until the notice was

5  given and a response was not provided or an inadequate

6  response was provided, the objection process didn't really

7  start.  And, at the very least, we would encourage the Court

8  to direct that they be required to provide such a notice that

9  they aver that the notice was inadequate or not -- or did not

10  list -- or the response, rather, was inadequate or not given

11  at all before they lodge an objection based upon the

12  insubstantial or incomplete information --

13    THE COURT:  Yeah.  I'm willing --

14    MR. BAENA:  -- they're complaining about.

15    THE COURT:  I'm willing to do that Mr. Baena.  I

16  recognize that in many instances these buildings were built

17  with the product installed many years ago.  Nonetheless, it's

18  still the claimant's burden to prove that there is a claim

19  against this debtor.  So, yes, although I realize that the

20  deadline for objecting -- I'm sorry -- for filing proofs of

21  claim was set, and I did require significant information, it

22  seems to me now those claimants have had -- I'm not sure when

23  the bar date was, but it was several months ago, at least.

24  They've had, certainly, sufficient time to go back into their

25  stacks of paper, or whatever records, and find those

1   documents now, if they exist.

2   MR. BAENA:  Judge, I don't represent a particular

3   claimant, as you well know, but I am unaware of any dialogue,

4   if you will, between the debtor and any particular claimant,

5   asking for that particular information.  We see a couple of

6   proofs of claims, out of four thousand, it's a rather

7   insubstantial number attached to their response, in which the

8   claimant said that they were in the process of preparing

9   information or that they would supplement.  I don't know if

10  that's an epidemic or not.  But, I am unaware, and it

11  certainly isn't stated in any of the pleadings, that they

12  followed up with any of those claims.

13  THE COURT:  Okay.  Well, as I said, I'm content to

14  have I'll call it the one more opportunity to get on the

15  bandwagon notice go out.  But, if that fails, I think at that

16  point in time, I'm going to let the debtor prosecute these

17  types of gateway claims that have been identified.  And I

18  also think that there should be a limitation.  You know, the

19  debtor should not be able to go back to each claimant so

20  often that it's harassing.  So, I think maybe one gateway

21  objection, and then that's it.  The rest of the things have

22  to be on the merits, because I think that's enough.  Two

23  times against any claimant is enough.  But, if there's a

24  statute of limitations issue, I really see no benefit to

25  having a claimant have to go to the expense of attempting to

1  prove up the whole claim, when, in fact, it's going to be

2  discharged essentially because the statute of limitations has

3  expired.

4       MR. BAENA:  Well, Judge, you know, a statute of

5  limitations defense could be virtually a trial on the merits.

6       THE COURT:  Well, maybe.  But, I'm not sure how.

7  It depends -- because of the timing in which the asbestos

8  injury was made known?

9       MR. BAENA:  It -- there are a number of issues that

10  are implicated by the statute of limitations issue that

11  literally go to the heart of the claim.

12       THE COURT:  In the property damage instance, the

13  building owners didn't know that asbestos was installed in

14  their building when the building was made or when the

15  installation took place?

16       MR. BAENA:  Judge, unless you're prepared to issue

17  a ruling that everybody should have known, and very few

18  courts -- I don't know of any courts that have ever issued

19  such a ruling, that proof has to be determined as to each

20  property damage claimant that they serve that defense

21  against.  And --

22       THE COURT:  I think that won't be a difficult

23  thing, because depositions or something else can determine

24  it.  I can't understand how, if you have a product that's

25  installed in your building that says, This contains asbestos,

1    that you didn't know.

2            MR. BAENA:  Oh, Judge, if this were like a pack of

3    cigarettes that had an inscription on it giving everybody

4    full warning, this would be an entirely different landscape

5    that we were walking upon here.

6            THE COURT:  I don't know about the --

7            MR. BAENA:  But that's not what asbestos was like.

8            THE COURT:  It's not about the forewarning, it's

9    the fact that there was asbestos.  So they know that this --

10   that the product is in the building.  Then when they -- when

11   there is an injury likely to happen, that's a different

12   issue.

13           MR. BAENA:  Judge, I ask you to keep an open mind.

14   I don't want to --

15           THE COURT:  I do have an open mind.

16           MR. BAENA:  -- debate that with you.  It's not

17   necessarily the case that somebody knew there was asbestos in

18   the material that they installed on their premises.  It's not

19   necessarily clear, from the product, who's product it was.

20           THE COURT:  Well then, how are they going to prove

21   their claim?

22           MR. BAENA:  Well, my point is, it took time to

23   determine that in respective claims.

24           THE COURT:  Oh.  Okay.  That's fine.

25           MR. BAENA:  All of that is implicated in this, and

the very nature of the harm goes to the statute of

limitations issue, as well, in some jurisdictions.  There's

differences of view as to when the course of action occurs

and accrues under various laws.

THE COURT:  Give me --

MR. BAENA:  This is a --

THE COURT:  -- the outside time limits.

MR. BAENA:  -- major undertaking.

THE COURT:  Six years from the date that you know

is probably the longest statute of limitations for the date

that you find out that you're subject to an injury in the

tort system?

MR. BAENA:  Well, that's not necessarily true

either.

THE COURT:  Well, what is?

MR. BAENA:  Well, Judge, there's nolens tempus in

some states, and there's no statute of limitations

whatsoever.  And, again, there's --

THE COURT:  Well, they won't have a statute of

limitations defense if there's no statute of limitations.

MR. BAENA:  Well, in some --

THE COURT:  So, we won't be hearing those.

MR. BAENA:  In some jurisdictions, the course of

action doesn't accrue until there's contamination.

THE COURT:  Okay.  Then we won't be hearing those,

1  I guess.

2      MR. BAENA:  So, there's a large variety of matter

3  being covered by it, and what I was suggesting earlier is

4  that it's that finite information that -- it goes right to

5  the nature of any other objection that you can conceive of

6  that they might have.  What else could it be?  I mean, you've

7  got a, you know, the statute of limitation argument is going

8  to implicate every other kind of objection that they could

9  raise.

10      THE COURT:  Well, and conversely, it's the first

11  thing that's going to be looked at with respect to every

12  other objection that's raised.  Because, if, in fact, there

13  is, as a legal matter, a defense to the claim based on the

14  statute of limitations, that's the first thing that's going

15  to be addressed.  So, one way or another, I guess we're going

16  to get to that statute of limitations issue.  Why does the

17  debtor need to do the statute of limitations, latches,

18  statutes of repose issues as gateways?  As to the property

19  damage?*

20      MS. BAER:  Well, Your Honor, again, with how many

21  of them, given how many years ago these buildings were built,

22  and how long people have been on notice that asbestos in

23  buildings is an issue, they're extremely obvious.  And in,

24  frankly, the great majority of the asbestos property damage

25  claims that have been filed would be subject to statute of

limitations objections.  And we've done the state by state

analysis.  And we know the rules on accrual.  This is what

W.R. Grace has been doing for years and years.  And these are

so obviously falling within the statute of limitations that

doing it as a gateway will get rid of it.  These claims will

be gone, and we'll get to what the real claims are.

THE COURT:  Well, I don't know.  I think what I'll

do is permit the debtor to make a stab at it.  If it turns

out to be inappropriate, and there are too many other issues

that come up, then I think at some point, I can always

require the debtor to amend the claim to put the whole nine

yards in.  But, I think I'll permit it.  However, not until

the debtor sends out one more notice that attempts to get the

claims that are insufficient, for whatever reason, the timely

filed claims that are insufficient, fixed.  So, why don't you

work with Mr. Baena and see whether you can come up with an

appropriate order and some deadlines by which the claimants

will file whatever it is that's missing from their claims, to

support the claim.  And if they don't, then at that point in

time, I think the objection process against the property

damage claims has to start.

MS. BAER:  Your Honor, I'm sure Mr. Baena and I can

work out the wording of an order.  Couple of questions just

to make sure we don't have any disputes.  Are you also

directing that all of the gateway objections as to a claimant

1  be done at one time so that they don't have to keep coming

2  back?  I know you had talked about it, but you weren't clear

3  about what --

4         THE COURT:  Yeah.  I think -- I think you -- one

5  round of gateway objections, you know, should take care of

6  all the gateway objections that the debtor intends to raise

7  against any specific claimants.  So, it should be one gateway

8  objection, and then, if the claim still survives that

9  process, then it should be one objection for everything else.

10  I don't think anybody should have to come back here more than

11  twice for this.  I appreciate the need to sort of get this

12  winnowed down to the point where it's manageable, and it may

13  not be manageable right now, but nonetheless, I think there

14  is a fairness component to this that has to be attributed to

15  the claimants too.  So I'm comfortable with one gateway

16  process, but then after that process works itself out, I

17  think at that point in time, it should be addressed on the

18  merits.  So, if for example, claim number one is subject to

19  two gateway objections and an objection on the merits, then I

20  think you should make sure that all of your gateway

21  objections for claim number one go -- get filed at the same

22  time so there's only one response date as to all of those

23  gateway objections for claim number one.  Does that --

24         MS. BAER:  I understand --

25         THE COURT:  -- make sense?

1   MS. BAER: Yes. I think it does make sense.

2   THE COURT: All right. So they only have to be

3   here -- for example, if the first hearing is set in May, then

4   they need to either be here or prepare to address the

5   responses in May. And then, that's it for that round of

6   objections. The next round of objections should be on the

7   merits.

8   MS. BAER: Your Honor, one other point of

9   clarification. Given that these omnibus objections could

10   have a thousand claims at one time, what do we do with the

11   rule in terms of submitting proof of claim forms? Do you

12   want us to not submit them? See where we get responses, and

13   then only submit proof of claim forms for those --

14   THE COURT: I don't think I want --

15   MS. BAER: -- with responses?

16   THE COURT: -- the proof of claim forms right now.

17   If we get responses, yes. I definitely want them then.

18   Unless there are responses, though, I think I'll wait and see

19   what the objections the debtor files are -- or, why don't we

20   do this: why don't you just pick ten at random, and just

21   include for every objection ten, so I can see a sample of

22   what it is that the debtor is alleging, but I really don't

23   think I need to see them all, if it goes through by default.

24   If there's a response, then I definitely want the claims.

25   MS. BAER: We will do that, Your Honor. We'll put

1    together an order and work with Mr. Baena.

2            THE COURT:  Okay.

3            MR. BAENA:  Judge, we would ask that we be provided

4    with copies of the notices that they send.

5            THE COURT:  Which notices?

6            MR. BAENA:  The notice of the deficiency in the

7    proof of claim

8            THE COURT:  Oh, sure.  I'm expecting that you're

9    going to work out the terms of that notice, and yes, you can

10   certainly be served with the copies of those notices.  Yes.

11   I expect that service is going to go on to all parties in

12   interest.

13           MR. BAENA:  Okay.  And as I understand it, Judge,

14   by requiring all of the gateway objections to be done at one

15   time and the notice requirement, if somebody is only subject

16   to a statute of limitations defense, that can't be filed yet,

17   either until the notices went out.

18           THE COURT:  That's right.

19           MR. BAENA:  Okay.

20           THE COURT:  Yeah.  The notices have to go out so

21   that whatever supporting documents come in are in.

22           MR. BAENA:  Right.

23           THE COURT:  Before the debtor starts these -- this

24   objection process, because there may be something in the

25   documents that will convince the debtor that maybe a statute

1    of limitations defense isn't appropriate. That they may

2    think is right now. So, I want the notice process to work

3    it's way through, and then the debtor can start. Now, as to

4    the non-property damage claims, though, I think the debtor

5    can get started on those objections. There's no reason to

6    hold up on those, as I understand it. That's not a

7    documentation issue; correct?

8    MS. BAER: I don't think it is in most instances,

9    Your Honor, but we will, in light of what you said, be

10    consistent in terms of the non-property damage claims. If it

11    makes sense for insufficient documentation there, we can do

12    the same thing with the same notice. One question on notice,

13    Your Honor, so again we don't have a dispute and have to come

14    back to you. In terms of timing for response on the notice,

15    Mr. Baena and I could end up having a very different

16    viewpoint on that. Obviously, we think something like a

17    forty-five day period would be appropriate. I don't know

18    what Mr. Baena's viewpoint would be. It might make some

19    sense to just talk about that right now.

20    THE COURT: Mr. Baena?

21    MR. BAENA: Well, just to be contrary, sixty days,

22    Judge, would be nice.

23    THE COURT: Fine. Make it sixty days. I mean, at

24    this point in time, they should have -- they should have the

25    documents together because they've certainly had sufficient

1   notice to be working on it.  So, I'm -- was more sympathetic

2   before, they've had lots of time now, I'm starting to get

3   less sympathetic, so, sixty days ought to be enough.

4               MS. BAER:  Thank you, Your Honor.

5               THE COURT:  Okay.

6               MS. BAER:  We'll provide that.

7               THE COURT:  All right.

8               MR. BAENA:  And just for the record, Judge, you're

9   overruling the notice objection.

10              THE COURT:  To the parties in interest?

11              MR. BAENA:  Yes.

12              THE COURT:  The reason I'm going to overrule that

13  objection, Mr. Baena, is because this notice that I'm

14  requiring the debtor to send out I think will have to advise

15  the parties that this is the process that the Court's

16  approving.  So, if they have some objection to it, it's

17  without prejudice that they're raising whatever objection

18  they're going to have to it, and I'll hear it.

19              MR. BAENA:  Thank you.

20              THE COURT:  So, yes.  I'm raising it for now -- I'm

21  sorry, I'm overruling it for now.

22              MR. BAENA:  Okay.

23              THE COURT:  All right.  So, I'll get an order on

24  number 5.  Actually, I think -- wasn't that 6?

25              MR. BAENA:  Yes, Your Honor.

1               MS. BAER:   That was 6, Your Honor.

2               THE COURT:   Okay.   Thank you.

3               MS. BAER:   Your Honor, item number 7 is the interim

4   fee applications.   I believe you indicated you had entered an

5   order.   Just so you're aware, Your Honor, Mr. Smith is in the

6   courtroom today if you have any questions or would wish to

7   address anything to him.   He happens to be in town today.

8               THE COURT:   I don't unless he has something he

9   wants to tell me.   Mr. Smith?

10              MR. SMITH:   No, Your Honor.   I have nothing to add.

11              THE COURT:   Okay.   Thank you.

12              MR. SMITH:   Short and sweet, Your Honor.   Thank

13  you.

14              MS. BAER:   Your Honor, item number 8 on your agenda

15  is the status conference on the ExxonMobil summary judgment.

16  This was a reminder to Your Honor that this matter is under

17  advisement and has been for some time.

18              THE COURT:   Yes.   I'm glad you pointed it out,

19  because I thought I had assigned this to one of my law

20  clerks, and it turned out that, in fact I hadn't.   So, when I

21  get back to Pittsburgh, I will.   Thank you.

22              MS. BAER:   Thank you, Your Honor.   Your Honor, item

23  number 9 on your calendar is a status report from the debtors

24  on their claims resolution process.   Your Honor, a couple of

25  days ago we submitted to Your Honor a status report.   I don't

1    know if you have received it, we hope you have.

2              THE COURT:  I have it, but I just received it this

3    morning, and I have started to read it, but I haven't

4    finished it yet.

5              MS. BAER:  Your Honor, if you turn to the last

6    page, it's actually the claims summary, and you can see how

7    Grace has approached these claims.  And I'll just -- a quick

8    overview so you know where we're at, and where we hope to be

9    going with this.  Your Honor, the W.R. Grace team, both

10   outside counsel and in-house counsel, has gone through all of

11   the fifteen thousand objections in detail, claim by claim.

12   Organized them by certain logical groupings, and the lawyers

13   at W.R. Grace who were involved in those claims prior to the

14   time of the filing of the bankruptcy are essentially assigned

15   to deal with the claims.  Accounts Receivable will deal with

16   accounts receivable; lawyers who were handling asbestos

17   property damage litigation, handle the claims.  They have

18   gone through and have identified all of the various

19   objections.  We've just spent a lot of time talking about the

20   way in which we're going to start to approach the asbestos

21   property damage claims more than any of the others.  But,

22   Your Honor, with respect to the others, we are preparing and

23   are prepared to go forward with filing omnibus objections.

24   In fact, our third, fourth, and fifth omnibus objections are

25   likely to cross your desk in the next couple of weeks, and

we'll be set for the May omnibus hearing.  I believe one is substantive and two are non-substantive omnibus objections. Your Honor, we have put together and are putting together a schedule so that we can begin the process of having omnibus objections set at each of the omnibus hearings going forward from here on to get through these.  The biggest challenge we will have, Your Honor, has to do with the non-asbestos litigation claims, which were pending at the time Grace filed, as well as the claims that had been filed in the case, like the Westconn claim, which was on your calendar last month, where there is a substantive -- substantive claim for, for example, products liability where there is no pending lawsuit.  And we are going through, trying to figure out the best way to approach the non-asbestos litigation and what is essentially a litigation type claim that's been filed in the case.  Frankly, Your Honor, we think that a bankruptcy mediation process may be the most logical way to approach many of these claims.  What we would like to do, Your Honor, is have the opportunity to go through each and every one of the non-asbestos litigation claims, as well as some of these claims that are essentially like litigation claims.  As you can see on the chart we've put together, we have about two hundred non-asbestos litigation claims.  And there are some other miscellaneous claims that fall in with them where, again, a bankruptcy mediation process, or something like that

1  may make sense.  We also have a number of substantive

2  objections that are not technically litigation claims, where

3  too, we believe a mediation process may make some sense.

4  We'd like the opportunity, in the next sixty to ninety days

5  to submit to the Court a proposal on how we'd like to go

6  forward on all of those claims.  We have gone through,

7  updated all of the litigation since the filing of the

8  bankruptcy case.  In that respect, interestingly, many things

9  have gone away.  Because of other matters that were involved,

10 third party issues and the like, many of the litigation

11 claims have disappeared.  Others of those may be ready for

12 settlement.  Especially after the passage of time.  Things

13 have changed and some of them are much more ripe for

14 settlement.  And, again, others we will simply have to go

15 forward and liquidate somehow in the bankruptcy case.  At the

16 present time, we've done everything we can to get the omnibus

17 objections together, and would ask for permission to submit a

18 report to this Court within sixty to ninety days on how to

19 handle the litigation type claims.

20        THE COURT:  Okay.  Anybody want to be heard on this

21 matter?  That sounds reasonable.  I think at this point, you

22 know, you've got to start getting these things done.  So,

23 that's fine.  If you're going to suggest mediation, though, I

24 think in that report perhaps you better suggest a mediator.

25 See if we can't get somebody appointed for the purpose of

1    getting these resolved.

2            MS. BAER:  Yeah.  We understand, Your Honor, the

3    Delaware mediation system is getting quite crowded, and we

4    will discuss that with our Delaware counsel and figure out

5    what makes sense there.

6            THE COURT:  Okay.

7            MS. BAER:  Your Honor, also on this status, you had

8    asked for a status on the Westconn claim?

9            THE COURT:  Yes.

10            MS. BAER:  Your Honor, we have -- we have received

11    revised discovery requests from Westconn, and we will be

12    answering those within thirty days.  Westconn will then be

13    part of the claims process.  We have already objected to

14    their claim.  The discovery will progress, and this is likely

15    to be one of those claims that will be very ripe for

16    mediation.

17            THE COURT:  All right.

18            MS. BAER:  Your Honor, that brings us to the

19    exclusivity matter.  But, before I go there, one other thing

20    I wanted to bring to the attention of the Court.  The Court

21    has under advisement our motion to extend the preliminary

22    injunction to claims against Montana Vermiculite Company.

23    Last month I filed a notice with the court notifying the

24    Court that there is more litigation out there than we had

25    been aware of.  The law firms that we had been dealing with

on the preliminary injunction have agreed to stay all litigation pending the outcome of your ruling.  However, there is another law firm in Montana who has recently served on us what was eleven -- and I think we're now up to twelve or thirteen -- notices of suits that they have amended to add Montana Vermiculite party as a defendant.  Under those circumstances, Your Honor, we just wanted to bring it to your attention that this matter is under advisement and is of great concern to us.

THE COURT:  All right.

MS. BAER:  Your Honor, that brings us to the debtor's motion to extend the exclusivity period.

MR. SMITH:  Your Honor, excuse me.  If I could be heard.  Could I be excused?

THE COURT:  Yes, sir.

MR. SMITH:  I was in town for another matter this morning, and I thought I'd come here and get an education on this case, but I've seen contested matters before so I think my education is complete.

THE COURT:  Yes, Mr. Smith, thanks.

MR. SMITH:  Thank you.

THE COURT:  Okay.  Item 7?

MS. BAER:  Item -- actually, it's item number 1.

THE COURT:  One.  Okay.  Thank you.

MS. BAER:  Your Honor, this is the debtor's motion

to extend it's exclusive period to file a Chapter 11 plan, and to solicit acceptances thereof. As Your Honor is well aware, we filed this case in April of 2001 because of the overwhelming asbestos related lawsuits that were pending against the company. We started off, frankly, very quickly and immediately tried to use the Chapter 11 process to address the asbestos related personal injury issues. In May of 2001, we filed a case management proposal which included a proposal from the debtor on how to handle asbestos personal injury claims, asbestos property damage, ZAI, the Sealed Air fraudulent conveyance litigation, as well as non-asbestos litigation. That entire proposal was set for hearing before our District Judge Farnan in November of 2001. And, on the day that that hearing was to go forward, Judge Farnan, of course, was removed from the case as the Third Circuit determined that that, as well as four other related cases, would be assigned to Judge Rolin. Your Honor, that slowed us down somewhat and has gone in fits and starts since then. This Court has done everything in its power to move the case along. Your Honor set bar dates for asbestos property damage, bar dates for non-asbestos claims and medical monitoring. The claims have come in, the claims process is moving forward, and today, Your Honor helped that greatly in addressing the 3007 motion so that the process can move forward in a timely and efficient manner. Your Honor also

set a framework after hotly contested issues on ZAI, so that we could approach ZAI. You set bar -- you set dates, the matter was briefed, and the matter would have gone to trial at the end of last year, or at the beginning of this year, however, of course, the parties determined that settlement discussions made some sense, and they continued to have those settlement discussions. The matter is set for status here in May. Your Honor also pushed along various other things in terms of getting us to move forward, and at the same time Judge Rolin took on the Sealed Air litigation, and he took on the asbestos personal injury litigation. We had to re-brief, or substantially re-brief and add to our briefing on the asbestos personal injury approach that we had submitted to Judge Farnan originally, and that matter was set for hearing, but the -- the Sealed Air fraudulent conveyance litigation took precedent, and the year 2002 was essentially used, almost completely, for the fraudulent conveyance litigation. The matter was ultimately resolved, although the settlement has not been approved, and a great deal of time was spent in the Spring of 2003 trying to resolve issues as to the structure of that settlement. Given Judge Rolin's current status, that settlement motion has been filed by the asbestos committees, but has not yet been heard before Judge Rolin. Your Honor, that left open, and left very prime for litigation and resolution, how to handle asbestos personal

injury matters.  Unfortunately for us, that's also been slow
going, not due to the debtor, but due to the fact that now we
don't have a judge again, at least for the time period.  In
the meantime, Your Honor, though, we have moved forward and
tried to do what we can to put together a Chapter 11 plan.
When we were here in September, Your Honor ordered the
debtors to meet with all of the creditor constituencies to
talk about a plan.  We did more than that, Your Honor.  We
didn't just talk about a plan, we actually put together a
financial analysis of what a logical plan would be.  We
presented that financial analysis to all of the creditor
constituencies including the Equity Committee.  That claim,
Your Honor, called for substantial equity and monies to be
provided to asbestos personal injury claims, of course.  It
also provided for full payment of all claims over time,
because it's the debtor's opinion -- it was on day one and is
today -- that, in fact, this company is not insolvent.  And
that there are assets available to pay all claims.  Your
Honor, the Personal Injury Committee completely rejected the
debtors suggestions of plan structure.  They completely
rejected it, Your Honor, frankly, because we're not willing
to do what they want to do.  And, that's why we have not been
able to make progress with them.  We have talked with the
creditor constituencies, we continue to talk with the
asbestos property damage, with the ZAI constituencies about

1  their claims.  But, because we've been unwilling to

2  essentially do what the PI Committee wants us to do, we have

3  not gotten anywhere with the PI Committee.  In fact, Your

4  Honor, the experience of putting together some proposals for

5  the PI Committee proved to us why we very much do need this

6  Court's assistance, or Judge Rolin's assistance, in moving

7  forward to put together a consensual plan.  It would be easy

8  if we wanted to give the company to the Asbestos Personal

9  Injury Committee and their constituency.  That's not why

10  we're in Chapter 11, to take the easy way out.  We don't

11  believe that's appropriate.  We have a fiduciary duty to all

12  creditor constituencies.  The Asbestos Property Damage

13  Committee, the ZAI claimants, the Unsecured Creditors

14  Committee, and the unsecured non-asbestos claimants, and the

15  equity of Grace.  It is Grace's firm belief that there is

16  equity in this company that can be preserved for its

17  shareholders, and it's our duty, if that in fact is the case,

18  to preserve it.  Under these circumstances, Your Honor, cause

19  clearly exists to extend the exclusivity period, once again,

20  to let the debtor complete what is has begun to achieve.  The

21  debtor has made progress, the debtor does have issues still

22  to resolve.  Those issues do need to be resolved, and they

23  need to be addressed in whichever way we can move forward.

24  We have not moved forward as quickly as we wanted to.  We

25  have not moved forward as quickly as we would like to.  We

have run into some interesting issues that certainly weren't

anticipated, including essentially losing our judge twice,

who was supposed to be handling asbestos personal injury.

Your Honor, the Asbestos Personal Injury Committee accuses us

of not having made progress. Progress, yes. Acquiescence,

no. We cannot be in a position to acquiesce. We need to

address these issues and do it in a way that is appropriate

for all creditor constituency. We have had dialogue, we're

continuing to have dialogue. We have, Your Honor, also

internally been working on our plan proposals, working with

our financial consultants to present plan proposals that give

as much as we have to give to the creditor constituency. We

have been moving the ball down the field. Maybe not as fast

as anyone wanted. Clearly, not as fast as the debtor wanted.

We were off and running on day one and got stopped several

times by various issues. But, under these circumstances,

Your Honor, it is not a situation where exclusivity should be

lifted. Exclusivity should remain. The debtor should be

given the opportunity to, in fact, keep moving this ball down

the field, and get to the point where it can file a

confirmable consensual plan. Thank you.

    MR. INSELBUCH: Good afternoon, Your Honor.

    THE COURT: Good afternoon.

    MR. INSELBUCH: Elihu Inselbuch for the Asbestos

Personal Injury Creditors -- or Claimants Committee. First,

let me correct the record about what has taken what amount of time here.  Because it's very easy to blame things on recusal motions and whatever else.  In fact, when Judge Rolin replaced Judge Farnan, in the winter of 2001/2002, Judge Rolin brought on both the USG and the Grace scorched -- scorched earth attempts to resolve their asbestos liabilities for hearing.  And he brought them onto the hearing, if I remember correctly, in July of 2002.  At that hearing, or in a status conference around that hearing, I pointed out to the Court that there was no Futures Representative appointed either in USG or in Grace.  And that estimation, in whatever form it would take, of asbestos liabilities, couldn't go forward in the absence of a Futures Representative.  At the same time, he asked me to present candidates for those roles to the two debtors, which our Committee did.  We presented two candidates, both of whom had been approved by debtors in other asbestos Chapter 11's.  Dean Trafolette (phonetic) and Eric Green.  Dean Trafolette was then serving in the Armstrong case, and Eric Green was then serving in the Babcock and Wilcox case.  And I might say, Eric Green had been nominated for that role, in the Babcock and Wilcox case, by counsel for the debtor in the Grace case or counsel in the B&W case.  We thought both of those gentlemen would be eminently selectable and non-controversial.  We said, didn't matter to our committee which one worked in which case.  It

was up to the debtors.  USG immediately advised us that Dean

Trafolette would be acceptable.  They moved his appointment

by the Court, the Court appointed him and, in fact, the

entire process involving USG's attempts to re-litigate all of

their asbestos liabilities has been going forward in front of

Judge Rolin.  That did come to a halt in October of 2003,

just as it was on the threshold for notice to the various

people in interest.  But much progress had been made on the

problem to that time.  On the other hand, W.R. Grace told us

that -- first, they didn't come back to us.  Then, finally,

when USG had selected Trafolette, they told us, for one

reason or another, without explaining why, that Eric Green

was unacceptable to them.  We said, Well, fine.  Give us

another candidate, and they didn't give us another candidate

for nearly a year.  And that was, of course, heard before

Your Honor, with the suggestion that Judge Hamlin be the

futures representative, and that has, of course, been shot

down.  But, the delay of the year from July of 2002 to

sometime in the fall of 2003 was not the fault of Judge

Rolin, was not the fault of -- certainly not of this Court,

and it was not the fault of the asbestos constituency.  We

wanted to move the case forward.  We litigated actively with

USG, and we have reached a point in that litigation where

that process is probably ready to go forward.  This case is

not going forward, has not gone forward with respect to the

1  asbestos personal injury constituency.  Bear in mind what

2  they're up to.  What the debtor is up to here.  Having filed

3  in Chapter 11, they want to say, We want to stop the world

4  here and re-litigate our asbestos personal injury

5  liabilities.  That's what they want to do, and they want to

6  do that on a spectrum that will take us years to complete.

7  The same spectrum that USG presented in its papers, which

8  were -- which were ruled on and substantially narrowed by

9  Judge Rolin.  The same spectrum that these same lawyers

10 presented in the Babcock and Wilcox case, but which the

11 District Judge finally became exasperated with, and when she

12 became exasperated with their process, she said that it

13 wasn't going to go forward on that basis, and the Bankruptcy

14 Court then said, Well, I'm going to lift exclusivity, and

15 let's see if somebody can do something here.  And in Babcock,

16 that led to the filing of the consensual claim.  Now, you

17 might ask me what good it would do to relieve exclusivity

18 here?  What could be done?  Well, in addition to matters

19 involving Judge Rolin's recusal, there have been, as I'm sure

20 everyone is aware, attempts beginning in the late spring of

21 2003 to enact asbestos legislation in the congress.  The fact

22 of that process, whether it will ever succeed or fail, has in

23 many ways thwarted the ability to have discussions in these

24 cases.  I'm told through the press that Senator Frist is

25 about to bring that matter to the floor, and I believe,

ironically, it's the same date, April 19th, that the Third

Circuit will hear the appeal from Judge Rolin's recusal

motion denial, and that should come to an end as well.  The

issue is not whether or not the Asbestos Committee will agree

to give equity to the W.R. Grace stockholders.  That's not

the issue.  And the issue isn't whether or not we must go

forward, because no one has so ruled on the procedure that

the debtor has proposed here.  There are many different ways

to deal with estimation of asbestos liabilities.  They can be

done as part of a confirmation process.  And what I suggest

the Court should permit us to do, is see whether we can take

the lead here, and whether we can negotiate with the

commercial creditors, and whether we can negotiate with the

property damage claimants.  And if we, all of the debtors

constituencies, creditor constituencies, might be able to

find common ground, then it may be that we'll have to teach

the debtor what the common ground is in the courthouse.  But

there is no reason in the world to just leave us standing in

the corner -- and there certainly is no dialogue going on

between our two constituencies -- leave us in the corner.  We

are the principal reason for this Chapter 11, as the debtor

says.  Our clients are sick and dying.  They're not getting

paid.  We're in the third year of this process.  Let us try

and put a plan together, either with the other creditor

constituencies, or without them and present it and present to

1  the Court a methodology for going through the confirmation.

2  Thank you.

3         THE COURT:  Anyone else want to be heard?  Good

4  afternoon.

5         MR. KRUGER:  Good afternoon.  Lewis Kruger, Your

6  Honor, of Stroock Stroock & Lavan, counsel for the Unsecured

7  Creditors Committee or the Commercial Creditors, as they're

8  sometimes called in these cases.  I've heard what Mr.

9  Inselbuch had to say, but the reality really is that until

10 there is some court directed disposition of the asbestos

11 claims, the chances for a consensual resolution appear to me

12 to be small.  I see no reason to remove exclusivity from the

13 debtor.  Mr. Inselbuch and we speak on some regular basis.

14 If there was indeed a deal to be done between us, we would

15 certainly be prepared to discuss that and go forward with it.

16 But the reality of it is that there -- we are as far apart,

17 perhaps, as we ever were.  The reality is that Mr. Inselbuch

18 and the asbestos litigants would like to have an estimation

19 process that essentially removes the need to deal with all

20 the issues that have been raised either in the Grace case or

21 in the USG case, with respect to the specific individual

22 claims of individuals who claim asbestos disease of one kind

23 or another.  And until those issues are addressed by a court,

24 I think the chances of a resolution are extremely small.

25 Other hand, Mr. Inselbuch has some proposal he wants to make

1    to the commercial creditors or to Grace, obviously we're all

2    here to receive it.   Whether it's a proposal as to how to

3    treat the asbestos claims, or otherwise, he can certainly do

4    that.   It doesn't require the removal of estimation of --

5    pardon me -- the removal of exclusivity from the debtor to

6    accomplish that purpose.   So, on behalf of the Committee, we

7    would urge the Court to retain exclusivity with the debtor.

8              THE COURT:   Good afternoon.

9              MR. BECKER:   Good afternoon, Your Honor.   Gary

10   Becker from Kramer Levin for the Equity Committee.   Your

11   Honor, I believe that Ms. Baer has appropriately outlined the

12   steps that the debtor has taken to try to resolve this case,

13   and the roadblocks that have been run into, through no fault

14   of the debtor.   I believe that Mr. Inselbuch's disposition on

15   the Futures Representative is a red herring.   The debtor's

16   case management proposal, as I recall, dealt with current

17   claimants.   Essentially getting a bar date, forcing people to

18   file proofs of claim, and then going through and weeding them

19   out by various mechanisms.   I don't think that necessarily

20   implicates a Futures Representative.   Ultimately, in a 524(g)

21   case, you will need a Futures Representative, but I don't

22   believe that the -- the delay in selecting a Futures

23   Representative has been harmful to this case, and eventually

24   you will need one, but I don't think that that delay can be

25   laid entirely at the debtor's doorstep, and it hasn't -- I

1  don't think it would have made a difference. Right now we

2  are waiting for Judge Rolin, or whoever the judge may be, to

3  assist us in dealing with asbestos personal injury claims.

4  And until we have a process where that can be done, the

5  debtor should maintain exclusivity.

6           THE COURT:  Anyone else?  Ms. Baer.

7           MS. BAER:  Your Honor, I'd like to address first,

8  the last point that Mr. Inselbuch made, which sounds almost

9  identical to a point that Peter Lockwood made in September,

10 when we were last here on exclusivity.  He argued that the

11 exclusivity should be lifted so that the asbestos PI people

12 can take a shot at meeting with the committees and trying to

13 put together a plan.  And we argued then, and we argue again

14 now, nobody has ever said to the PI Committee don't make a

15 proposal, don't talk to us.  In fact, quite the opposite.

16 We've tried to talk to them.  We've given them numbers.

17 We've given them a framework.  Their response was, absolutely

18 a non-starter, nothing to talk about.  Your Honor, we don't

19 need to lift exclusivity to get them to talk.  They can talk

20 to us at any time, they can talk to Mr. Kruger at any time.

21 The fact of the matter is they haven't talked to anybody.

22 They simply said, Nothing you've said is what we want, and

23 gone away.  Your Honor, we very much here would like to put

24 together a plan.  We have some issues that, frankly, may not

25 be able to be resolved by consensus.  But there are lots of

FORM FED-25  ●  PENGAD · 1-800-631-6989

1    things we can talk about.  We'd welcome any proposal they

2    want to make, any suggestions they want to make in putting

3    together something that will work for this company.  We

4    simply just have not gotten anything from them.  And they do

5    not need -- exclusivity does not need to be lifted so that

6    they can start talking to people.

7            THE COURT:  Well, look.  Is the debtor at this

8    point -- early on in this case, Mr. Bernick (phonetical) used

9    to say that the debtor wasn't sure that it was going to seek

10   a 524(g) injunction.  Is the debtor going to seek one?

11           MS. BAER:  Your Honor, the proposal that we put

12   together called for a 524(g) injunction, and the Sealed Air

13   settlement, as presently structured, calls for a 524(g) plan.

14   However, given where we are with the asbestos personal injury

15   people, nobody knows for sure at the end of the day, whether

16   we will be able to confirm a plan under 524(g).  It would

17   have to be, essentially, consensual, in all likelihood.  So,

18   Your Honor, to this day I can't tell you that it will be a

19   524(g) plan.

20           THE COURT:  Well, if it isn't going to, why don't

21   we have a plan on the table?

22           MS. BAER:  Because, Your Honor --

23           THE COURT:  Because, if it isn't, we're dealing

24   only with current claims.  That's a cram down issue.  Let's

25   get at it.

1         MS. BAER:  Well, again, Your Honor, I think

2 everybody would acknowledge that a 524(g) plan may make --

3 may make sense here.

4         THE COURT:  Then let's get a Futures Rep.  I mean,

5 you can't have it both ways.  We either need the pieces in

6 place to get a 524(g), or else we need a plan that doesn't

7 have one.  Take your pick.  Let's do it.  It's been a long

8 time.  And, frankly, I'm getting to the point where if I

9 don't lift exclusivity, I'm going to appoint a trustee, and

10 that will cause all sorts of problems, I know, for the

11 debtors lending perspective, if nothing else.  But, this has

12 gone on too long, with too little progress.  Now, last

13 September, I thought I provided some marching orders so that

14 people could start talking.  I'm glad to hear that the debtor

15 has taken that to heart and attempted to try to get the

16 constituents together.  But, I still don't see any progress

17 as a result of it, and that was six months ago.

18         MS. BAER:  Well, Your Honor, you don't see progress

19 because you don't have a filed plan before you.  That doesn't

20 mean progress hasn't been made.  Filing the plan is somewhat

21 of a mechanical thing at the end of the day.  It's all of the

22 meat that goes into it, and all of the negotiations that go

23 into it.  We have done the number crunching.  We have put

24 together proposals that we believe will fly.  Again, we have

25 a lot of work to do to try to make that actually happen,

1  especially on a consensual basis.

2        THE COURT:  But, look, if you're not going to seek

3  a 524(g) injunction, I agree, we need an asbestos bar date.

4  We set an asbestos bar date, and if you want to litigate the

5  two hundred thousand asbestos injury -- personal injury

6  claims independently because some of them have symptoms and

7  some don't, fine.  Because if you're not seeking a 524(g)

8  injunction, it comes down to simply a claims allowance, a

9  voting, and possibly a cram down issue, and nothing more.

10  There is no reason for me to lift exclusivity if that's what

11  you want to do.  But there's also no reason for the debtor to

12  be delaying any further.  If you want the 524, then get the

13  constituent parts in place, meaning a Futures Rep, and I

14  expect a motion, one way or the other, telling me what you're

15  going to do set for the next omnibus hearing.  I'm going to

16  continue the debtor's request, and I'll continue exclusivity

17  for one month to let the debtor decide whether it's seeking a

18  524(g) or not, and if so, to have a motion filed before the

19  next omnibus hearing to appoint a Futures Rep.  Then I'll

20  deal with this exclusivity motion next month.  In the

21  meantime, folks, talk to each other.

22        MS. BAER:  I understand, Your Honor.  We will do

23  so.

24        THE COURT:  All right.  Item 1 is continued, but

25  the debtors exclusive period is continued.  I'm not sure when

1   it expires now, frankly.

2          MS. BAER:  Your Honor, it would have expired, but

3   for the tolling that's --

4          THE COURT:  Yes.

5          MS. BAER:  -- permitted by the Delaware statute.

6          THE COURT:  Fine.  Okay.  So, it's continued in

7   effect, pending the next hearing, and then I'll address it

8   further at the next hearing.

9          MS. BAER:  Thank you, Your Honor.

10         THE COURT:  All right.  The debtor is to advise at

11  least, I guess, a week before the hearing, whether it is

12  going to seek a 524(g) injunction.  I guess that's assuming

13  Sealed Air and Yessenia (phonetical) the settlements approve?

14         MS. BAER:  Your Honor, that settlement can't be

15  approved because we don't have a judge right now to approve

16  it.

17         THE COURT:  Well, I know.  But I mean, I take it

18  that the 524(g) issue is contingent on getting that

19  settlement approved; or not?

20         MS. BAER:  The way in which the settlement is

21  structured is it calls for a 524(g) trust unless Sealed Air

22  decides that they don't want a 524(g) trust.  So, the

23  possibility would be out there for the debtor, and in fact,

24  it specifically would permit the debtor to file a non-524(g)

25  plan, but then there would be negotiations with Sealed Air

1   over whether they would go forward on their settlement.

2           THE COURT:  All right.  So that won't stop the

3   debtor from deciding whether or not to do a 524(g) or not,

4   then?

5           MS. BAER:  No, Your Honor.

6           THE COURT:  Okay.  That's fine.  Then a week before

7   the hearing, I either want a motion filed to appoint the

8   Futures Rep -- I realize it won't be heard at the next

9   omnibus, but I want it filed -- if the debtor is seeking a

10  524(g), and if the debtor isn't, then I want that statement

11  indicated in writing, and then we'll deal with time periods

12  within which the debtor is to file a plan at the next hearing

13  after that and possibly a bar date.  If the bar date issue

14  has to go to the District Court, then I'll ask to have a

15  temporary District Court judge assigned.  We're going to get

16  this case moving.

17          MS. BAER:  Thank you, Your Honor.

18          THE COURT:  Mr. Baena.

19          MR. BAENA:  I don't want to get caught up in the

20  brinkmanship of some of the comments that were made, but I

21  want to make it very clear that we worked very hard on that

22  Sealed Air settlement.  And that Sealed Air settlement could

23  evaporate if there isn't a 524(g) injunction.  And that's

24  a -- more than a billion dollars that asbestos claimants, and

25  other claimants, I think, would expect to come into this

1    estate.

2            THE COURT:   Okay.

3            MR. KRUGER:   Your Honor, just to follow up on the

4    Sealed Air settlement.   The Sealed Air settlement has not yet

5    been presented for approval to the Court, because there is

6    not a judge to approve it.   But the Committee, my Committee,

7    if you will, has serious objections to various aspects of

8    that settlement.   So, it's not quite as simple as being

9    presented here today.   And the reality is that I still

10   believe that the debtor has done what it can to try to move

11   these cases forward.   The reality is that absent court

12   decisions about the quality of the claims and voting, it's

13   hard to make a consensual plan in this case.   And I also am

14   concerned that the issue with respect to a future claims

15   representative, that there seems to be a common belief that a

16   future claims representative serving in one case may serve in

17   all cases or other cases.   It seems to me, as I've gotten

18   more and more, and the Committee has gotten more and more

19   involved in these cases, a future claims representative

20   serving in more than one committee -- or, pardon me, on more

21   than one debtor, may indeed have inseparable conflicts of

22   interest.   Because instead of defending the estate for which

23   they are the futures claims representative, and being certain

24   that claims that are made apply only to that estate, what has

25   happened is, indeed, that people seem to believe that a claim

when made, applies against all debtors -- whether this debtor, USG, Owens, whoever it may be -- equally.  It seems to me that that makes future claims representatives incapable of serving more than one master.

THE COURT:  Well --

MR. KRUGER:  So, it may be an issue.

THE COURT:  -- find one who's not appointed.

MR. KRUGER:  It may be --

THE COURT:  If you, you know, if you can find somebody else who's willing to do this job, who is not currently appointed in another case, that's fine.  You know, my view of the asbestos world is that all these cases ought to be aggregated, all the insurance proceeds ought to be put into one pot, all of the debtor's assets ought to be put in, because all the claims are filed in every case.  And there ought to simply be one settlement everywhere to deal with everybody, and then we'd get out of here.  But I suppose that's what legislation's for.  So, meanwhile we'll keep -- we'll keep trudging down the path we're trudging.  Okay.

MS. BAER:  Your Honor, I believe that concludes the agenda.

THE COURT:  Any housekeeping matters?  I have one. The case management order -- it's come to light in another case -- apparently is confusing people with respect to adversaries, and whether or not it applies to motions in

1   adversaries.   I don't think it's come up as confusing in this

2   case, yet.   It obviously can apply to the initial, for

3   instance, a motion to dismiss -- to dismiss a responsive

4   pleading that is filed in lieu of an answer.   And I don't

5   think it can apply to responses to cross-claims and

6   counterclaims, because those are all governed by national

7   rule.   But, it seems to me it could apply to other things.   I

8   guess the question is whether or not it's going to take too

9   long to get items, for example, discovery disputes, on the

10  calendar.   I doubt that it is, because unless the adversary

11  itself is expedited for some reason, then I don't think it

12  should cause a problem.   Why don't you take a look at the

13  case management order -- I'm asking all of the cases -- I

14  want to keep the case management orders consistent from case

15  to case, otherwise I'll go crazy.   And, so, I have asked them

16  in Owens this morning, and I will be asking this afternoon,

17  to take a look at this issue, and see if there's a way that

18  perhaps it can be clarified that it does apply to certain

19  things in the adversaries, or else it simply doesn't.   But,

20  before I enter a proposed order in any case, as I said, I

21  want to keep them all the same.   My inclination is to think

22  that it could apply, except to the initial responses to the

23  initial pleadings in the case.   It could apply, for example,

24  to motions for summary judgment, and partial summary

25  judgment, and whatever, because those are normally set on a

time frame anyway.  It, for the most part, would give you

longer times to answer than the Delaware Local Rules, but it

would key it to getting things into the binder, so that I can

be ready for the hearings.

        MS. BAER:  Thank you --

        THE COURT:  So --

        MS. BAER:  -- Your Honor.  We'll take a look at

that.

        THE COURT:  Okay.  Any others?  All right.  Thank

you.  We're adjourned.

        MS. BAER:  Thank you.

        (Whereupon at 1:10 p.m. the hearing in this matter

was concluded for this date.)

        I, Elaine M. Ryan, approved transcriber for the

United States Courts, certify that the foregoing is a correct

transcript from the electronic sound recording of the

proceedings in the above-entitled matter.

*Elaine M. Ryan*                              3-29-04
_____                    _____
Elaine M. Ryan
2801 Faulkland Road
Wilmington, DE 19808
(302) 683-0221