1

2                    UNITED STATES BANKRUPTCY COURT
                           DISTRICT OF DELAWARE
3

4      IN RE:                    .        Chapter 11
                                 .
5      W.R. Grace & Co., et al., .
                                 .
6            Debtor(s).          .    Bankruptcy #01-01139 (MD)
       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
7
                              Wilmington, DE
8                            February 23, 2004
                                12:30 p.m.
9
                       TRANSCRIPT OF OMNIBUS HEARING
10          BEFORE THE HONORABLE JUDITH K. FITZGERALD
                     UNITED STATES BANKRUPTCY JUDGE
11
       APPEARANCES:
12
       For The Debtor(s):            James W. Kapp, III, Esq.
13                                   Kirkland & Ellis
                                     200 E. Randolph Drive
14                                   Chicago, IL 60601

15                                   David Carickoff, Esq.
                                     Pachulski, Stang, Ziehl,
16                                   Young, Jones & Weintraub
                                     919 North Market Street
17                                   Wilmington, DE 19801

18     For Trade Committee:          Michael Lastowski, Esq.
                                     Duane Morris, LLP
19                                   1100 N. Market St.-Ste. 1200
                                     Wilmington, DE 19801
20
                                     Kenneth Pasquale, Esq.
21                                   Stroock Stroock & Lavan, LLP
                                     180 Maiden Lane
22                                   New York, NY 10038

23     For Asbestos PI Committee:    Marla Eskin, Esq.
                                     Campbell & Levine, LLC
24                                   800 North King Street-Ste. 300
                                     Wilmington, DE 19801
25



| | | |
|---|---|---|
| 1 | For Official Committee of: | Theodore J. Tacconelli, Esq. |
| | Asbestos Property Damage | Ferry, Joseph & Pearce, PA |
| 2 | Claimants | 824 Market Street |
| | | Wilmington, DE 19899 |
| 3 | | |
| | For ZAI Claimants: | William D. Sullivan, Esq. |
| 4 | | Elzufon Austin Reardon |
| | | Tarlov & Mondell, PA |
| 5 | | 300 Delaware Ave-Ste. 1700 |
| | | Wilmington, DE 19899 |
| 6 | | |
| | For Equity Security Holders: | Rhonda P. Thomas, Esq. |
| 7 | Committee | Klett, Rooney, Lieber |
| | | & Schorling |
| 8 | | Two Logan Square-12th Fl. |
| | | Philadelphia, PA 19103 |
| 9 | | |
| | For ACE: | Deborah J. Massaro, Esq. |
| 10 | | White & Williams |
| | | 824 N. Market Street-Ste. 902 |
| 11 | | Wilmington, DE 19801 |
| 12 | For Maryland Casualty: | Jeffrey C. Wisler, Esq. |
| | Company | Connolly, Bove, Lodge |
| 13 | | & Hutz, LLP |
| | | 1220 Market Street-10th Fl. |
| 14 | | Wilmington, DE 19899 |
| 15 | | Edward J. Longosz, II, Esq. |
| | | Echert, Seamans, Cherin |
| 16 | | & Mellott, LLC |
| | | 1250  24th St., N.W. |
| 17 | | Washington, DC 20037 |
| 18 | For Gerard, et al.: | Kerri K, Mumford, Esq. |
| | | Landis Rath & Cobb, LLP |
| 19 | | 919 Market st.-Ste. 600 |
| | | Wilmington, DE 19801 |
| 20 | | |
| | | Daniel C. Cohn, Esq. |
| 21 | | Cohn Khoury Madoff |
| | | & Whitesell, LLP |
| 22 | | 101 Arch St. |
| | | Boston, MA 02110 |
| 23 | | |
| 24 | | |
| 25 | | |

```
1    For Royal Insurance:           Mark Ledwin, Esq.
                                    Wilson Elser Moskowitz
2                                   Edelman & Dicker, LLP
                                    3 Gannett Drive
3                                   White Plains, NY 10604

4    For Exxon Mobile:              William E. Chipman, Jr., Esq.
                                    Greenberg Traurig, LLP
5                                   The Brandywine Bldg.
                                    1000 West Street-Ste. 1540
6                                   Wilmington, DE 19801

7    For London Market Insurers:    Michael Zoeller, Esq.
                                    Baach Robinson & Lewis, PLLC
8                                   1201 F. Street, NW-Ste. 500
                                    Washington, DC 20004
9
     For Caterpillar Financial:     Brett D. Fallon, Esq.
10                                  Morris James Hitchens
                                    & Williams, LLP
11                                  PNC Bank Center
                                    222 Delaware Ave.-10th Fl.
12                                  Wilmington, DE 19899

13   For National Union:            Ricardo Palacio, Esq.
                                    Ashby & Geddes
14                                  222 Delaware ave.-17th Fl.
                                    Wilmington, DE 19899
15
     For Wesconn & FUS:             William W. Erhart, Esq.
16                                  William W. Erhart, PA
                                    800 King st.-Ste. 302
17                                  Wilmington, DE 19899

18   Audio Operator:                Sherry Scaruzzi
     Transcribing Firm:             Writer's Cramp, Inc.
19                                  6 Norton Rd.
                                    Monmouth Jct., NJ 08852
20                                  732-329-0191

21   Proceedings recorded by electronic sound recording, transcript
     produced by transcription service.
22

23

24

25
```

1      THE COURT:  Good afternoon.  Please be seated.

2   (Pause in proceedings)

3      THE COURT:  This is the matter of <u>WR Grace</u>, Bankruptcy

4   #01-1139.  Good afternoon.

5      MR. KAPP:  Good afternoon, Your Honor, James Kapp on

6   behalf of the Debtors.  Your Honor, working off of our amended

7   agenda, we do have a fairly full agenda today with four

8   contested items.  I do think it makes sense to maybe deal with

9   some of the housekeeping issues first, and get them out of the

10  way.

11     THE COURT:  All right.

12     MR. KAPP:  With that said, if I could jump to the end

13  of the agenda on the status, points 12 and 13.  Twelve was set

14  up as a status conference to just advise where the National

15  Union adversary is.  That issue, now, has been fully briefed

16  and currently it is set for argument at the next omnibus

17  hearing in March.

18     THE COURT:  Is there going to be time to do an omnibus

19  hearing and that argument?

20     MR. KAPP:  Well, Your Honor, as I sit here and think

21  about it, that's kind of the question for the Court.  I think

22  we are looking at several other disputed issues for March.  And

23  so if there -- it may make sense to set time aside or it

24  depends on the Court's calendar.

25     THE COURT:  How much time are you going to need for

1  this argument?

2          MR. KAPP:  Your Honor, I would guess it's probably 30

3  minutes, 45 at most, with 3 parties.

4          THE COURT:  How about, I do not think we should do it

5  on a motions day.  I think it will take too long.  Mona, could

6  you call back to Winny in Pittsburgh?  See if you can get me a

7  date, we can do it by phone in Pittsburgh.

8          THE CLERK:  How far down the road?

9          THE COURT:  Well, I guess shortly after the next

10  omnibus, or shortly right before the next omnibus.  But, no

11  more than a couple of days before because I won't have all the

12  pleading and things until then.

13          THE CLERK:  That's about an hour?

14          THE COURT:  An hour?

15          MR. KAPP:  Yes, Your Honor.

16          THE CLERK:  Is that enough?

17          THE COURT:  Is that #12, which --

18          MR. KAPP:  Yes, Your Honor, that's #12.

19          THE COURT:  All right.  I'll give you a date when she

20  gets back.

21          MR. KAPP:  Thank you, Your Honor.  With regards to #13

22  on the Status, that is filed in response to the Notice of

23  Completion of Briefing, filed by Exxon Mobile.  This was an

24  argument -- this was a Motion For Relief from the preliminary

25  injunction that was filed and briefed and argued, I believe,

1  Your Honor, back in 2002.  And then, quite frankly, we lost

2  track of it and thought it was actually completed until Exxon

3  filed their notice.  So I wanted to bring it up for this Court.

4  As I understand it, it has been fully briefed, argued and it

5  was taken under advisement of this Court, wanted to touch base

6  with Your Honor and see if you wanted to set up another hearing

7  to go over it again.

8          THE COURT:  I guess so.  I thought this was finished,

9  too, and I'm not sure why, because it obviously isn't.  I

10  couldn't find anything on the docket that indicated that it

11  was.  But yes, I think at this point it's been so long ago,

12  frankly, I'm not even sure I remember what the issue is at this

13  point.

14          MR. KAPP:  I don't -- I'm in the same boat with you,

15  Your Honor.  Does it make sense to move it to the March omnibus

16  hearing, or should we --

17          THE COURT:  Good afternoon.

18          MR. CHIPMAN:  Good afternoon, Your Honor.  For the

19  record, William Chipman of Greenberg Traurig on behalf of Exxon

20  Mobile.  Mr. Kapp is correct, it was fully briefed, argued and

21  Your Honor did take it under advisement.  It did take -- the

22  argument did take maybe a ½ an hour to 40 minutes for each

23  side.  I don't mind rearguing it.  I believe we did submit to

24  Your Honor, all the pleadings and the test, the transcripts --

25          THE COURT:  The transcripts?

1    MR. CHIPMAN:  -- from the hearing.

2    THE COURT:  Okay.

3    MR. CHIPMAN:  So, I don't know that it needs to be

4  reargued.  I think we could rely on the papers.  I think that

5  the relief requested, you know, was 2 years ago may almost be

6  moot at this point, I'm not sure.  But they do want to proceed

7  with the lawsuit.  And it doesn't involve, this one was

8  different because it did involve the Debtor's.  It was kind of

9  a one step removed, and that's why you took it under

10  advisement.

11    MR. KAPP:  Your Honor, we're happy to do whatever this

12  Court would like.  If the transcript is enough, great.  If we'd

13  like to schedule a hearing, we're fine to do that as well.

14    THE COURT:  Well, is the transcript in?  Did you send

15  me a binder that has the completion of briefing?  I know I got

16  some right before I came here, but I haven't had a chance to

17  look at them yet.

18    MR. CHIPMAN:  Your Honor, we submitted a binder with

19  all the pleadings, and the transcripts from that hearing.

20    THE COURT:  To Pittsburgh?

21    MR. CHIPMAN:  To Pittsburgh.

22    THE COURT:  Okay.

23    MR. CHIPMAN:  So, I don't know if you need oral

24  argument again, or if you could just read the transcript.

25    THE COURT:  No, I can certainly read the transcript.

*Writer's Cramp, Inc.*

*Certified Court Transcribers*

*732-929-0191*

1  If there's something I don't understand or need my recollection

2  refreshed about, I'll ask the Debtor to put it back on.  But,

3  other than that, the pleading should be sufficient.

4          MR. CHIPMAN:  Okay, I believe that.

5          THE COURT:  I'm sorry for losing track of this.  I

6  really thought it was done, too, and I'm not sure why, but --

7          MR. CHIPMAN:  That's all right.  Should we put it on

8  for a status conference of the next month or --

9          THE COURT:  Yes, why don't you do that.

10          MR. CHIPMAN:  That way we can see where Your Honor is,

11  and if we need to schedule argument, we can.

12          THE COURT:  Okay, with Item 13, this is a matter

13  that's under advisement.  Okay, so in that motion they're

14  simply asking for relief to proceed with the suit?

15          MR. CHIPMAN:  Your Honor, there is a lawsuit against a

16  third party which owed a separate contractual -- I guess, owed

17  some indemnification, or was entitled to indemnification from

18  the Debtor.  So it was kind of like a two step indemnification,

19  and that's what the issue is.  Is whether or not I think we

20  brief the issue of whether or not we should be stayed at all,

21  and Your Honor took it under advisement, and that's what we

22  argued.  I think it's a pretty straightforward issue and can be

23  decided on the papers in the transcript.

24          THE COURT:  All right.

25          MR. CHIPMAN:  Your Honor, that's my only matter today.

1    May I be excused?

2          THE COURT:  Yes, sir.

3          MR. KAPP:  Thank you.

4          THE COURT:  Thank you.  Okay, I'll take a look at this

5    one and yes, if there's not an opinion out by next month, then

6    put it on the calendar.

7          MR. KAPP:  We will do so, Your Honor.  One final

8    housekeeping matter that's not on the agenda, Your Honor, is

9    that in late of last year, I believe the December omnibus

10   hearing, it was argued in front of this Court that the Debtor's

11   Motion to Extend the preliminary injunction with regards to

12   Montana vermiculite that was argued and taken under advisement

13   by the Court.

14         THE COURT:  I still, in fact, I wanted to talk about

15   that today, too, but I think that I need to make the decision

16   with respect to one of the matters that's on the agenda for

17   today before I can do that opinion.  Have you resolved that

18   issue?

19         MR. KAPP:  That has not been resolved, Your Honor, and

20   in fact, I was just going to notify the Court that this morning

21   we did file a supplement just to notify this Court that in the

22   meantime, additional actions have been filed.  And so it

23   underscores the urgency of the matter and we appreciate the

24   Court's attention to the matter.

25         THE COURT:  Okay, I think the issue about whether or

1  not Royal can file, at least I thought, Late Proof of Claim, is

2  somehow -- needs to be addressed first.  And so hopefully I

3  will be addressing that today and then maybe I can get to that

4  matter after it.

5          MR. KAPP:  All right, Your Honor --

6          THE COURT:  All right.

7          MR. KAPP:  -- thank you.  That deals with the back of

8  the agenda, so flipping forward, Your Honor, Item 1 is

9  continued.  Two and 3 had both stips to -- no objections or

10  stipulations have been filed and we are just waiting for this

11  Court to review.

12          THE COURT:  Yes, I did not have a chance to enter any

13  of the orders this month, but, anything that did have a

14  Certificate of No Objection, or a COC, I have now, over this

15  past weekend, read all of the information and I will sign the

16  orders that are affiliated with the CNO or the COC, but they

17  have not been entered yet.

18          MR. KAPP:  Your Honor, would you like to do that

19  outside of the hearing or we do have duplicates if you would

20  like to take care of that now.

21          THE COURT:  Do you know whether Rachael took my notes?

22          THE CLERK:  I don't know what the status of the orders

23  are.  I don't know if she sent them to the office or not.

24          THE COURT:  Why don't you give them to me and I'll

25  sign them here.  If they turn out to be duplicates, let me make

1  a note here first.

2          MR. KAPP:  All right, Your Honor.  This is the order

3  for Item #2 with regards to reconstruction of stocks and debts.

4          THE COURT:  And these are the same orders that were in

5  the binders?

6          MR. KAPP:  Yes, Your Honor.

7          THE COURT:  Okay.

8          MR. KAPP:  And if I may approach, Your Honor, next is

9  with regards to #3, the stipulation between the Debtor's and

10  Caterpillar.

11      (Mr. Kapp approaches the Bench)

12          THE COURT:  All right.

13          MR. KAPP:  And this is the same that was filed --

14          THE COURT:  Okay.  This one doesn't have the agenda

15  item number on it?  Please get parties to start doing that

16  appropriately.

17          MR. KAPP:  With regards to item #4, Your Honor, the

18  Debtor's motion for Limited Waiver of Rule 3071, that has been

19  continued until March.  The one -- I just wanted to advise the

20  Court, the one objection was filed by the Property Damage

21  Committee.  The Debtor's are meeting with representatives of

22  that committee in the next couple of weeks.  And this is one of

23  the items on the agenda.  If this is not resolved at that

24  meeting, or in the meantime, it will -- it's set for March.

25          THE COURT:  All right.

1    MR. KAPP:  With regards to item #5, and that is the

2    motion of Rodriguez for relief from the automatic stay, this is

3    a matter, Your Honor, where the insurance company has been

4    brought in.  They are currently examining it to see if there is

5    something they can't do to move things along and make life

6    easier on us and the Rodriguez, so in the meantime the parties

7    are waiting until that review has been completed.  So that

8    matter has been continued to the next omnibus as well.  Item #6

9    pertains to Oldcastle's relief from automatic stay.  An

10   agreement, in principle, has been reached.  The parties are

11   still documenting the stipulations, so the stipulation here

12   reads that -- the agenda reads the stipulation has been filed.

13   It has not been filed yet, but we anticipate doing that

14   shortly.

15        THE COURT:  All right.  It's continued then 'til the

16   next one, just in case it's not filed.

17        MR. KAPP:  Yes, Your Honor.  And then, Your Honor,

18   that moves us then to our first contested motion on today's

19   agenda, and that is the motion of Wesconn to compel discovery.

20   Your Honor, just to remind the Court, in May 2002, Wesconn

21   filed a motion for relief from the automatic stay, seeking to

22   file and prosecute an action against the Debtor's.  Wesconn was

23   a customer of the Debtor's.  They purchased spray-on fire

24   proofing coatings, and Wesconn alleges that a particular batch

25   of the product caused problems with their equipment, clotted

1 the equipment.  Important to know, Wesconn never filed suit

2 against the Debtor's based on this claim, prior to filing these

3 Chapter 11 cases.  In the summer of 2002, this Court did deny

4 the Motion for Relief from automatic stay, however, they

5 ordered -- this Court ordered two things.  One, that Wesconn

6 file any truths of claim they might have by July 30th, 2002,

7 and if such Proof of Claims were filed, the Debtor's had until

8 September 30th, 2002, to file any objections.  Your Honor, it's

9 important to note that's all the order required.  It did not

10 set forth any timeframe requirements for either the

11 adjudication of Wesconn's claim or the resolution of the

12 Debtor's objections.  Wesconn did file two Proofs of Claims,

13 and the Debtor's objected to those claims, both in compliance

14 with this Court's order.  The Debtor's do note, Your Honor,

15 that this is the only substantive of objection to an

16 unliquidated litigation claim that has been filed by the

17 Debtor's that is a non-asbestos litigation claim.  It was filed

18 completely to comply with this Court's Order.  Approximately 9

19 months after the Debtors filed that objection, they received,

20 around June 11th, 2003, they were served with discovery

21 requests from Wesconn purporting to be in response to the

22 Debtor's objections of these claims.  These are very broad

23 discovery requests, Your Honor, that relate completely to

24 Wesconn's underlying litigation claims.  Just for an example,

25 Wesconn requested the Debtors to identify the procedures and

1  practices and documents related thereto utilized by the Debtors

2  concerning business with Wesconn to Produce all documents of

3  communications between the Debtors and Wesconn from 1999

4  through the present, to produce their entire customer list and

5  another example is to "Identify all documents relating to any

6  product line reconfiguration, change or reorganization at the

7  Debtors manufacturing facility including designs, diagrams,

8  article sketches, daily logs, notes and memos," extensive

9  discovery.  Your Honor, it is the Debtors position that it is

10  inappropriate for the Debtors at this time, to be compelled to

11  respond to such discovery.  Indeed, if discovery proceeded now,

12  it would produce the same results as if Wesconn had been

13  allowed to pursue their litigation in the State Court, which

14  this Court has already determined that it's stay order is not

15  appropriate.  However, for the same reasons that this Court

16  found that the automatic stay motion was inappropriate, also

17  seeking to have discovery compelled at this time, is

18  inappropriate.  Primarily, Your Honor, the Debtor's must be

19  allowed to develop a comprehensive approach to deal with all

20  the litigation claims of all similar situated Unsecured

21  Creditors.

22       THE COURT:  Well, I don't disagree with that, but this

23  case is now into it's third year, and the Debtor has had that

24  time.  This Proof of Claim bar date has existed for a long

25  time, and folks, you can't hold this off forever.  So give me a

1   comprehensive plan for the next status conference, and tell me

2   how you're going to deal with them.  And I won't compel you to

3   answer these things in the meantime, but by next month, I want

4   a plan from the Debtor.

5           MR. KAPP:  Well, Your Honor, I might have your plan

6   now, and if it's not -- if it doesn't suffice, then we may have

7   an issue.  I guess we'll deal with it at next hearing.

8           THE COURT:  All right.

9           MR. KAPP:  And it's basically three fold.  1) We're

10  litigating the ZAI claims 2)  We filed procedures with the

11  District Court to deal with personal injury claims but those

12  procedures have not been put up -- been considered yet.  And

13  #3, we filed a 3007 Motion, which is set to be heard for next

14  month, which deals with our plan for dealing with all the

15  thousands of claims that have been filed since the bar date.

16  So that really is how we are proceeding to move forward, Your

17  Honor.

18          THE COURT:  Where does Wesconn fit into this?

19          MR. KAPP:  Well, Wesconn fits in in that Wesconn --

20  it's the Debtors position, Your Honor, that until we know what

21  we're doing with the asbestos litigation claims, we're not in a

22  proper position to determine whether -- what to do with the

23  non-asbestos litigation claims.  And there impact --

24          THE COURT:  Well, why, I mean, are you going to

25  convert the case if you don't get the asbestos claims resolved?

1  I mean, why?  You've got -- the reality is, that unfortunately,

2  you have both the business aspects and the asbestos issues to

3  deal with and this Debtor has held up for three years now.  It

4  just can't keep happening.  The Debtor has to start getting to

5  the point where it's resources are used to look at the business

6  issues that it has to address, and this is one of them.

7       MR. KAPP:  Your Honor, the Debtor's are trying,

8  they're trying to move things along.  But the bottom line is,

9  until -- we need to know what -- assess the claims and the

10  dollar amounts, and know what we're dealing with, to have a

11  determination of the impact on the potential reorganization.

12       THE COURT:  Well, I agree, but you have to liquidate

13  this claim as well, because it's going to be either a very

14  large or a very small, but nonetheless, a claim against this

15  estate.  It has to be liquidated.

16       MR. KAPP:  Your Honor, the other problem we have here

17  is by doing that, instead of focusing on what we're trying to

18  do, which frankly, it is a choice, we're trying to focus on one

19  piece of the pie before we get to the other.  But even if we

20  are forced to focus on this other piece of the pie, the

21  question is, Wesconn has provided absolutely no reason why this

22  has to -- this claim has to be adjudicated now, and their

23  discovery has to be taken up now.  Even if it is adjudicated

24  now, it's not going to facilitate any recovery under a plan any

25  faster.  We don't have a plan.  And, in fact, to focus --

1        THE COURT:  Which is the next issue.

2        MR. KAPP:  -- well, but Your Honor, I agree and it is.

3   But we have to focus somewhere.  I mean, limited -- there's

4   only so much time in the day and I hear you and we agree, but

5   our determination has been to focus on the plan and dealing

6   with the asbestos claims, believing that once that's in place,

7   non-litigation, non-asbestos litigation will fall into place.

8   If we put -- it's almost putting the cart in front of the

9   horse, Your Honor.  We've made a determination, if this Court

10  disagrees with that determination, I know we know how to hear

11  about that.  But that is what we've determined to do.  But in

12  the meantime, while we're focusing on this aspect, to put -- to

13  now focus on discovery here, it makes no sense when what are we

14  doing just to rush along to get to a plan that hasn't been

15  developed and in fact, our time dealing with the discovery

16  takes away from our time dealing with the plan.

17       THE COURT:  When is the Debtor going to file a plan?

18       MR. KAPP:  Your Honor, I can't answer that today.

19       THE COURT:  Well, then, I need some answers.  This

20  case is now 3 years old.  It's time for the Debtor to know what

21  it's business plan is, what it's operational plan is, what it's

22  reorganization plan, in structure.  I don't expect that you've

23  got all the negotiations done.  I understand your need to

24  figure out what the asbestos liabilities are before you can

25  even conclude that piece.  But, I sent you off to talk to all

1  the other constituent groups 2 months ago, and I expect that

2  you're still doing that, so that the basis of a plan can be put

3  together.  It's very long, folks, it's very long, and I'm

4  starting to wonder whether the Debtor-In-Possession, is going

5  to be able to get this done, and if not whether to replace the

6  Debtor.  That's the point I'm at.

7          MR. KAPP:  Well then, Your Honor, I guess what we

8  would propose at this point is, if it's acceptable with the

9  Court, to put this off until the next hearing and then we'll

10  come back with such a plan as to our structure of what we're

11  doing.

12          THE COURT:  I think the Debtor's request to have a

13  structure in place is reasonable.  I don't disagree with the

14  need to focus on the asbestos claims.  I do agree that you need

15  to start somewhere, and that's a big chunk to start with.  With

16  respect to ZAI, while you're on the subject, what is the

17  status.  Is it settling, not settling?

18          MR. KAPP:  Your Honor, as you're aware, the Steveo

19  firm is handling that.  I believe there's talks but I don't

20  know the actual status.

21          THE COURT:  Because in the event that that's settling,

22  then that's a big chunk out of this asbestos issue that can, I

23  think, be taken out of the mix with respect to how else the

24  Debtor wants to treat it's objections to claims.  Good

25  afternoon, why does Wesconn need to go forward with this now.

1          MR. ERHART:  Okay, well, Your Honor --

2          THE COURT:  I'm sorry, enter your appearance please.

3          MR. ERHART:  I'm sorry.  William Erhart for Wesconn

4  and Fus, F-U-S, Incorporated.  Your Honor, you've already --

5  understand how we've been put off numerous times but the

6  advantage to Wesconn for going forward right now is that it has

7  some of it's own internal resources with regard to expertise.

8  And if it gets some of this information now, it can begin to

9  assess it and prepare the expert testimony that is probably

10  going to be necessary in order to ultimately be solved.

11          THE COURT:  The types of discovery request I just

12  heard about, are never going to be approved by this Court.

13  Never, not now, not a year from now, not ever.  So, why don't

14  you start over again and make them reasonable and then we'll

15  start talking about the reality of discovery.

16          MR. ERHART:  Actually, Your Honor, our request are

17  fairly reasonable.  They focus on one product known as MK6,

18  they focus on one manufacturing facility, they focus on one

19  out of the 62 Grace entities, Your Honor, and the relative

20  period of time is very limited as well.

21          THE COURT:  From 1999 to the present, I don't think

22  so.

23          MR. ERHART:  Your Honor, you know, our problems arose

24  the construction season of 2000, so in the context of the

25  discovery, we're looking for those items from 1999 through the

1  end of 2000.

2  THE COURT:  If that's the case, there is absolutely no

3  need to rush this now.  If this problem arose in 2000 and

4  you're now into 2004, although admittedly the original motion

5  was a couple of months ago, I'm not exactly sure when, but it

6  was several months ago, I don't see the need to rush into this

7  now.

8  MR. ERHART:  Okay, well Your Honor, I guess we filed

9  our original discovery of almost a year ago, and we've been put

10  off by the Debtor time, after time, after time.  After we filed

11  our discovery, we were contacted by representatives of Grace

12  who wanted to sit down with us and discuss the matter and make

13  a technical presentation.  The issue for my -- with, we

14  believe, between Grace and Wesconn, is not whether or not

15  Grace's product was defective, although they haven't formally

16  admitted it, in numerous conversations with my client, they've

17  conceded that point, there was the window of time that the

18  product shipped to my client was defective.  Grace asserts

19  because Grace's quality control is so great, that the window is

20  very narrow.  And my client says, "Well we had problems for the

21  5 months of the construction season."  So they certainly have

22  the resources to deal with answering the discovery, but we've

23  been put off by this.  We've been put off because ZAI was

24  supposed to go into mediation, and I don't know how many times

25  I've spoken to Debtor's counsel in Chicago, and they've asked

1  me to pass this one more time.  So, Your Honor, we haven't

2  delayed it, but we've -- if there's any prejudiced to us, or

3  the appearance of prejudice, by the delays because we've tried

4  to cooperate with the Debtor.  The technical issues that need

5  to be answered, we think, are discreet.  They've been discussed

6  with our client a number of times.  In my original motion, I

7  named at least 3 technicians from the particular Grace facility

8  that had knowledge of this matter.  And since we've filed our

9  discovery, Grace has volunteered to meet with us with at least

10  2 of it's technicians and engineers and spend a day making a

11  presentation to us.  A presentation they had made earlier to my

12  client and after some discussion, my client just simply didn't

13  feel that it was worth while to go through that process one

14  more time.  So we think we have the manpower to be able to do

15  this.  We've been put off a lot and this would help my client

16  with regard to cash flow and planning to adjudicate the claim.

17          THE COURT:  All right.  I want a plan from the Debtor,

18  including specifically, when and how it's going to deal with

19  the Wesconn discovery.  These discovery requests appear, at

20  least at first blush, to be very broad.  I suggest that you go

21  back and tailor them to see if, in fact, you can't get

22  something that's a bit more reasonable.  Asking for every

23  product modification, in every line that the Debtor has, is

24  well outside the scope of anything that's involved in this

25  suit.  And if that's, as it was read to me, if that's what

1    you're asking for, it's never going to be approved.

2          MR. ERHART:  I understand, Your Honor.

3          THE COURT:  All right.  Modify the request, if the

4    Debtor cannot satisfy you by the time of the next hearing, if

5    you can't come up with an agreed upon order, about a timeframe

6    within which they'll be addressed at the next hearing, then

7    I'll look at the Debtor's plan and make some rulings about

8    discovery.

9          MR. ERHART:  Very well, Your Honor.

10         MR. KAPP:  And Your Honor, just to make sure that I'm

11    on the same page with you.  When you say plan by next month,

12    you don't mean an actual plan filed, you mean a structure of

13    what our plan is.

14         THE COURT:  Oh yes, no I'm talking about how the

15    Debtor is going to deal with it's objections to claims for

16    claims that have been filed.  I want to know what it's -- I

17    don't mean strategy with respect to each objection to claim,

18    but it's litigation strategy as with respect to when it's going

19    to commence things and how it's going to handle them.

20         MR. KAPP:  And I do believe some of this, Your Honor,

21    and I don't know if Your Honor -- it's on file, but not before

22    you, our motion on 3007 does set a lot of the process on how we

23    expect to go through these.  And so it may answer some of that.

24    I don't know if it answers all of what you're getting at, but

25    some of that has been contemplated in a motion on file.

1       THE COURT:  Okay.

2       MR. KAPP:  And hopefully --

3       THE COURT:  Do you know the docket number?  I'll read

4  it.

5       MR. KAPP:  I do, it is Item 4 on the agenda, so it

6  would be Docket #4853.

7       THE COURT:  Oh, the one that's already on for today?

8       MR. KAPP:  Yes.

9       THE COURT:  Oh, okay, I'm sorry.  I thought you meant

10  something new.

11       MR. KAPP:  No, just that.

12       THE COURT:  Okay.

13       MR. KAPP:  But I do believe that that does set-up the

14  Debtor's structure on how we plan to handle all these claims

15  that have come in in response to the March 2003 bar date.

16       THE COURT:  All right.  Specifically, I want to know

17  about Wesconn because I think they've been out there for a long

18  time.  My understanding when I ordered the Debtor to get the

19  Objection to Claim on file was that there was actually going to

20  be some movement toward trying to get it resolved.  That's what

21  I expect the Debtor's to try to do.  If it doesn't get

22  resolved, fine.  Then get it into a litigation track, but I

23  think you do need to meet and I think, frankly, setting up a

24  meeting with the technical people is not a bad one because it

25  may narrow the scope of where the issues are.

1    MR. KAPP:  All right, Your Honor, thank you.  Moving

2   on would be Item #8, which is the Royal Indemnity Company's

3   Motion for Leave to File a Late Proof of Claim.  If this Court

4   remembers, this was originally argued at the December 15th

5   omnibus hearing.  The question was whether Royal's failure to

6   file a timely Proof of Claim constituted excusable neglect.

7   During the course of the December hearing, the issue arose as

8   to whether their failure to file a timely Proof of Claim

9   resulted from a mistake of law and if so, how does the concept

10  of excusable neglect apply to a mistake of law as opposed to a

11  mistake of fact.  The December hearing was adjourned, Your

12  Honor, to look into that issue.  It's now been fully briefed,

13  and the answer is, the great weight of the legal authority

14  indicates that mistakes of law are not excusable neglect.  In

15  particularly, Your Honor, the 9th Circuit, the 5th Circuit, the

16  2nd Circuit, the 11th Circuit and the D.C. Circuit, have all

17  held that either mistake of law can never be excusable neglect,

18  or that mistake of law can only be excusable neglect and the

19  most unusual and stringent of circumstances, circumstances

20  which haven't been alleged here.  Now, Your Honor, the Debtor's

21  do acknowledge that it does appear as though the 3rd Circuit

22  seems to lien in a different direction from the other circuits.

23  But how the 3rd Circuit would precisely handle this issue, we

24  believe, is unclear and we certainly do not believe it's nearly

25  as clear as Royal would have you believe in their pleadings.

1   The bottom line is it does not appear that 3rd Circuit has

2   specifically addressed how they would handle a mistake of law.

3   The Debtors do, however, concede that it is plausible that the

4   3rd Circuit would look at the totality of circumstances even if

5   there was a mistake of law.  However, the Debtor's believe this

6   Court should consider how other circuits would address this

7   issue, because we believe the better approach is that here,

8   mistakes of law should not be treated the same as mistakes of

9   fact, or if looking at the totality of the circumstances, a

10  mistake of law should be a big factor in that analysis.  And

11  Royal's failure to file a timely Proof of Claim was completely

12  in Royal's control.  And just briefly, Your Honor, I know

13  you've heard a lot of this, but the facts are undisputed.

14  Royal timely received the bar date notice.  It's undisputed

15  that Royal gave such materials to the agent responsible for the

16  Grace matter.  It's undisputed that Royal, that that agent

17  reviewed the bar date materials.  The agent made the erroneous

18  determination that the lien -- the bar date, did not apply to

19  contingent indemnification claims even though the materials

20  clearly and plainly provided otherwise.  Therefore, the agent

21  had a mistaken belief as to the legal consequences of not

22  filing their Proof of Claim, by the bar date.  This is clearly

23  a mistake of law.  And Your Honor, this is not a Maw and Paw

24  situation.  This is a situation where an agent, who, it was

25  their job to monitor the Grace hearing, and was given these

1   materials, looked at it, and put it in a drawer.  And if this
2   Court determines that the fact that a plan has not been
3   developed, excuses that behavior, well then we have a problem
4   with opening up the flood gates and we can expect a bunch of
5   late filed Proof of Claims that, based on the precedence set
6   here, we will be forced to take.  And there the question is,
7   what is the certainty of a bar date?  Why didn't we file the
8   bar date?  So, Your Honor, the Debtors contend that Royal's
9   mistake of law should not be found a constituted excusable
10  neglect and we would request that Royal's motion to have their
11  late claim filed denied.

12           THE COURT:  Well, how do I know what the flood gates
13  are?  I mean, so far, no one has come out of the woodwork
14  except for Royal on this issue.

15           MR. KAPP:  Well, Your Honor, the flood gates would be
16  we've now established, this is a situation where the person has
17  it, they looked at, they made a determination that it doesn't
18  apply, it's a wrong determination.  Well Your Honor, who
19  doesn't that apply to?  I mean, that could apply to anyone
20  that's gotten the bar date and determined not to file.  So
21  that's what we're worried about about opening the flood gates.
22  It could be absolutely anyone, and that's our concern, because
23  that scenario we just discussed, that set of facts, can apply
24  to anyone.

25           THE COURT:  And how is the Debtor prejudiced?

1    MR. KAPP:  Your Honor, the Debtor is prejudiced, we

2  set up a bar date precisely.  We were talking about trying to

3  develop a plan, we are trying.  One of the things we tried to

4  do is to set a bar date to know what -- to get certainty of the

5  amounts of claims out there.  If you're going to ask me to come

6  in and tell you when my plan is to deal with all these, and

7  then change my numbers, that's going to delay.  So we have

8  relied on the that, we have relied on the claims and the

9  numbers.

10    THE COURT:  All right.  Good afternoon.

11    MR. LEDWIN:  Good afternoon, Your Honor, Mark Ledwin

12  of the Wilson Elser firm for Royal Indemnity Company.  Your

13  Honor, there is an additional undisputed fact here, which

14  counsel did not tell the Court, but which the Court is aware of

15  and we focused it on the last hearing.  That is, it's

16  undisputed that Grace, the Debtor, failed to send the bar date

17  notice to Royal's Counsel of Record for the past 18 years,

18  which it knew of as a result of multiple litigations in dealing

19  with asbestos matters with Royal.  The bar date order directed

20  them to send notice of the bar date, not only to known

21  claimants, but to known counsel.  They dropped the ball on

22  that, okay?  That's undisputed.  Had that notice been sent to

23  Royal's Counsel of Record, things would have been different.

24  Counsel badgers about this argument, which is really what it

25  is, that Royal made a mistake of law.  I don't agree with that.

1  I don't know whether Royal necessarily made a mistake of fact,

2  a mistake of law, or something else.  The affidavits we

3  submitted clearly showed that the person responsible for Grace

4  related asbestos matters, missed the one sentence statement, in

5  a 13 page bar date notice, that said, "This bar date applies to

6  indemnification claims."  What do you call that?  Is that a

7  mistake of fact, a mistake of law, I don't know.  In the big

8  scheme of things, it doesn't matter because the 3rd circuit

9  does adopt a totality of circumstances test.  And the 2 factors

10  they look at are prejudiced to the Debtor, and impact on

11  judicial proceedings.  There's absolutely no prejudice to this

12  Debtor by allowing this late filed claim.  There is no plan, no

13  monies gone out the door, and no one's going to get an

14  advantage of here.  There is no impact on judicial proceedings.

15  The Debtor is still in the mason's stages of trying to deal

16  with it's claims.  It's extremely important to know that

17  there's not a single 3rd Circuit case found or cited to this

18  Court, which has adopted this mistake of law, per se, black

19  line, you lose, test.  And that's what _Pioneer_ rejected and

20  that's what the 3rd Circuit has consistently rejected in

21  numerous opinions.  And even the 9th Circuit cases cited by the

22  Debtor are full of conflict.  The 9th Circuit can't even agree

23  within itself.  Every case they cite, there's a dissent or

24  Circuit Judge says, "This is wrong."  You're falling back into

25  the pre-_Pioneer_ days of a per se rule when _Pioneer_ clearly

1    said, "Don't do that; you're creating a conflict."

2    　　　　THE COURT:  Well, there is a dissent, but nonetheless,

3    the majority rule on the 9th Circuit is, that if it's a mistake

4    of law, you're out.  I agree, though, I'm not so sure that this

5    is a mistake of law.  It seems to me that the affidavits

6    substantiates that the person reading it simply didn't see the

7    instruction that said this applies to indemnity claims.  It

8    wasn't -- that's what the affidavits seems to say.  It wasn't

9    that she read it and misunderstood, it's that she didn't read

10    it.

11    　　　　MR. LEDWIN:  She flipped through it, and she missed

12    it, Your Honor.  In any event, the 9th Circuit is wrong and

13    it's never been adopted in the 3rd Circuit.  There is a --

14    　　　　THE COURT:  Well I don't know that the 9th Circuit's

15    wrong.  Every circuit that's looked at it agrees with the 9th

16    Circuit and the 3rd Circuit hasn't looked at it.

17    　　　　MR. LEDWIN:  No, I don't believe that's true, Your

18    Honor.

19    　　　　THE COURT:  Okay.

20    　　　　MR. LEDWIN:  What they will say is, it's a factor

21    which you consider, but it's not a per se bright line test.

22    　　　　THE COURT:  Oh, I see, that's true.

23    　　　　MR. LEDWIN:  Okay?

24    　　　　THE COURT:  Some of the circuits have said that.

25    　　　　MR. LEDWIN:  The 9th Circuit, some of those cases can

1   be construed to say if it's a mistake of law that's a per se

2   bright line test, you lose automatically. You don't look at

3   any other factors. What I'm saying is, fine. If you think

4   that's a factor, look at it or look at all the other factors.

5   And in any event, Your Honor, even the cases they cite

6   invariably, they involve an outside counsel who's misconstruing

7   a rule of procedure, who should have known better. Here,

8   Royal's outside counsel didn't get that chance to make that

9   mistake, because of 2 reasons. Number 1, the in-house person

10  at Royal didn't send it to us, and #2, the Debtor didn't send

11  it to us even though they were directed by the Court to do so.

12  Under those circumstances, taking in all of the totality of the

13  circumstances, and applying an equitable test, there's no

14  prejudice to the Debtor. There's no impact on judicial

15  proceedings, and Royal should be granted leave to file this

16  claim. This is excusable neglect and what you focus on is the

17  excuse, not the neglect.

18          THE COURT: All right.

19          MR. KAPP: You're honor, if I could just address 3

20  points very quickly. The first point I know was mentioned at

21  the last hearing but since it's been brought up again, with

22  regards to the attempts to serve counsel, the Debtor's did try.

23  The address was twice on the list through the counsel. Once I

24  had a 1 instead of a 2, and the other address had an extra 0 in

25  it. That, may be excusable neglect, but nonetheless, the point

1    being that even if that didn't work, Royal still had the
2    control, the absolute control of their own power, the agent who
3    was designated, it was their job, had the notice.
4        THE COURT:  Well, plus isn't the notice filed of
5    record?  I mean, I would think, by now, everybody monitoring
6    this case should find it.  Now, I admit that that is not
7    service, but it some form of notice.
8        MR. KAPP:  Yes, Your Honor, and also as you remember
9    because we went through months of determining publication, it's
10   been all over the place.  Second of all, and speaking about the
11   terms of that notice, which once again, we went through months
12   of getting it approved and vetted in this Court, the clause
13   that counsel refers to is on page 2.  So, you know, it may be
14   13 pages, but we do expect that people do have an obligation to
15   review these things.  Once again, if they don't, I don't know
16   why we're sending them out, when we seem to be giving a free
17   pass just because a person's not a counsel, but the person was
18   designated by Royal to do this.  You would assume they are
19   prepared to do their job.  It's not our responsibility to make
20   sure their person is competent.  And #3, Your Honor, talking --
21   #1, you are correct.  Most of the circuits that have dealt with
22   this either have established the per se rule or only in the
23   most stringent and unusual circumstances, which we believe,
24   even here if you take the totality of the circumstance analysis
25   that this fact, that it's a mistake of law, totally in their

1   control.   Some --

2          THE COURT:   I don't know that it's a mistake of law.

3   I think the affidavits do not support that the witness read the

4   document and misapprehended it.   I think it supports the fact

5   that she didn't read it.   So I don't see that that's a mistake

6   of law.

7          MR. KAPP:   Well, Your Honor, if that list -- assume

8   that that's the case for a minute, what kind of precedent are

9   we establishing, that if we send anything out to someone --

10   it's almost like they shouldn't look at it.   They'd be better

11   off than if they did.   I mean, that can't be the right

12   precedent.

13          THE COURT:   That's sort of what _Pioneer_ does, doesn't

14   it?   I mean, _Pioneer's_ a very odd case.

15          MR. KAPP:   If you look at the circumstances here, I

16   think you have to look into the fact if we're looking totality,

17   that the agent had it, did review it, not clear as to how

18   closely, but she said she reviewed it, put it in a drawer,

19   missed out.   And there's absolutely nothing -- they can't come

20   and tell you that she could -- that they could not have gone to

21   counsel, they could have.   Even though we tried to serve and we

22   didn't.   The point is, they still had it in their complete

23   control to remedy this situation and they didn't.   And that's

24   why we believe this just doesn't constitute excusable neglect

25   in this circumstance.

1    THE COURT:  Okay, well the trouble with this case in
2    looking at the totality of the circumstances from my point of
3    view, is the fact that the Debtor has not yet filed a plan, and
4    the fact that the Debtor did not serve counsel.  Part of the
5    reason that the Debtor had agreed to serve counsel in the case
6    was really, to eliminate some of this, the type of circumstance
7    from happening.  Now, Royal's a big company.  It has a lot of
8    employees and it has it's own counsel.  And yes, it should have
9    known better and it should have made sure that it's agent was
10   properly trained to know what a bar date notice does, if that's
11   the case.  Having said all that, though, I'm still hard pressed
12   to see how, in this one instance, because I do not view this as
13   a flood gate issue, where the Debtor did not serve counsel
14   simply because the addresses were bad.  And yes, that may also
15   be excusable neglect, but it is nonetheless, not service.  Yes,
16   Royal did have an agent in place who looked at this notice and,
17   accepting the Debtor's view, misapprehended it.  Otherwise,
18   accepting Royal's view, simply missed it, and the question then
19   is, is that excusable?  That's not too different from what
20   happened in Pioneer.  I mean, somebody missed diaring
21   something, versus somebody not looking at something, isn't very
22   different.  If the Debtor had an actual plan on the table.  If
23   the Debtor had pieces of this plan fully negotiated, such that
24   there would be really changing the balance of the bargaining
25   position at this point, to allow a late claim, I would in no

1  way consider it.  But the trouble is at this stage of the
2  proceeding, I can't see prejudice and it seems to me that the
3  bottom line, in the 3rd Circuit, in the totality of the
4  circumstance, is prejudice, and I can't find it here.  I don't
5  think the Court is, in any way, impacted by this decision.
6  This case is going to be going on for quite some time with
7  objections to claims being filed.  Permitting the late filed
8  claim, in no way, says that it's an allowable claim, it's
9  simply that it's a claim that the Debtor is going to have to
10  address.  So I think using that totality of the circumstances
11  test, on balance in this case with Royal only, it's permissible
12  to file the Late Proof of Claim.  If the circuit were to adopt
13  the concept that this is a matter of law, I think you're all
14  correct, the circuit probably would still look to the totality
15  of the circumstances.  But in all probability, in a case like
16  this, Royal would lose.  Royal had counsel, it had internal
17  counsel, it had external counsel, it had an agent designated to
18  take a look at this.  The burdens, when you do all of that as a
19  major company, are such, that you expect the people that you've
20  designated to be appropriately trained and not to miss things
21  like this.  So if it's a matter of law, a mistake of law, I
22  think in that instance, it should bar.  This particular, under
23  these facts, Proof of Claim from being filed, but I don't see
24  it as a mistake of law, simply because the affidavit appears to
25  me to establish that it was a mistake of fact in that the

1  witness did not read the entire bar date.  So, I think on

2  balance, Royal should be permitted to file a Late Proof of

3  Claim.  It is not an opening for the flood gate.  It is not

4  precedential, in that, it is a very fact specific determination

5  and unless another entity can come up with the exact facts,

6  i.e. to efforts to serve counsel, both of which failed, an

7  agent designated who simply missed the reading of the document

8  and put it in the drawer without contacting outside counsel,

9  and I don't know why Royal missed it on the dockets, perhaps

10  somebody could explain that to me.  How is it that Royal did

11  not see the notice, the bar date notice, on the dockets?

12          MR. LEDWIN:  I do not have an explanation for you,

13  Your Honor, other than Royal, as a result of the settlement

14  agreement, was not intimately involved in this case other than

15  through the Montana vermiculite litigation.  I am the firms' --

16  one of the firms' bankruptcy counsel and unfortunately, I was

17  not brought in until, you know, the alarm bells went off and a

18  motion for a leave to file Late Proof of Claim was deemed

19  necessary.  I don't have an answer for you.

20          THE COURT:  All right.  Well, that doesn't either

21  further advance or not advance the cause, then, I guess.  In

22  any event, I'm going to permit the late filed Proof of Claim in

23  this instance, but it is subject to everybody's rights and

24  reservations and ability to object to it.  I don't know whether

25  the order -- do I have an appropriate order?  I'm not sure

1   what's in the binder with respect to this.

2          MR. LEDWIN:  There was an order that we lodged, Your

3   Honor, I have not looked at it in quite some time.  I think it

4   was a rather plain vanilla order simply the motion an

5   (indiscern.) was granted.

6          THE COURT:  Does the Debtor want something in the

7   order with respect to the fact that this is, in no way,

8   allowing the claim, it's simply allowing the filing of the

9   claim?

10          MR. LEDWIN:  I don't have a problem with that, Your

11   Honor, and I can't --

12          MR. KAPP:  Your Honor, if we could look at the order

13   and then submit one that both counsel agree to --

14          THE COURT:  That's fine.

15          MR. KAPP:   -- we'll do that promptly.

16          THE COURT:  All right, I'll accept an order on a

17   Certification of Counsel.  When I get it, then I'll sign it.

18   All right, having done that, before he weighs -- I would like

19   to talk about the Montana vermiculite issue, because until this

20   issue was addressed, I'm not sure about the scope of the

21   preliminary injunction that you were asking about earlier.

22   Something in the notes indicated that in the event that Royal

23   was permitted to have a Late Proof of Claim, the Debtor felt

24   that it was absolutely crucial to have that injunction

25   extended, but I didn't -- I have not pulled the transcript.  I

1  was just looking at my hearing notes, and they are wholly

2  unclear about why.  Is there, Mr. Kapp do you know, or is it

3  something I need to go back to?

4            MR. KAPP:  I'm gonna take --

5            THE COURT:  You know why?

6            MR. KAPP:  Do you know Mark?

7            THE COURT:  Okay.

8            MR. LEDWIN:  I think I know why, Your Honor.  The

9  point was that the indemnification, Royal's claim, Proof of

10 Claim, is based upon an indemnification agreement with the

11 Debtor's, and if the Montana vermiculite litigation goes

12 forward, and Royal is brought into that litigation, which the

13 Montana vermiculite Plaintiff's have expressly avowed on the

14 record to do, that would trigger the indemnification, causing

15 the Debtor to go out of pocket to pay us.

16           THE COURT:  So it's a contractual indemnification

17 based on the insurance contract?

18           MR. LEDWIN:  Based upon the settlement of the

19 insurance contract.

20           THE COURT:  On the settlement issue, okay.  All right,

21 I will try to get that issue done between now and March.  I

22 just lost track of what it was and my notes didn't make sense,

23 so, all right, thank you.  Okay, next?

24           MR. KAPP:  Your Honor, the next item on the agenda

25 would be #9, which is the Debtor's motion to find Gerard's

1    counsel in contempt of this Court's orders.  Your Honor, first
2    if I can just briefly acknowledge some of the facts which have
3    not been disputed by Gerard's counsel.  And in particular, it's
4    undisputed that Gerard knew the Debtor's had filed these
5    Chapter 11 cases.  And it's undisputed that they knew that the
6    automatic stay was in place, and barred action against the
7    Debtors.  It's undisputed that this Court entered a preliminary
8    injunction order, which enjoins actions against both Maryland
9    Casualty and CNA.  So it's undisputed that Gerard's counsel was
10   aware of all these things.  There's also no dispute in the
11   pleadings as to whether the preliminary injunction was a valid
12   directive of this Court.  So the only question remaining, to
13   find contempt appropriate in these circumstances, and granted
14   it's a big question, is whether Gerard's actions disobeyed this
15   Court's directives.  And if you can't, Your Honor, I'd like to
16   individually look at their actions with regards to the three
17   parties affected by these actions, being CNA, the Debtor's, and
18   Maryland Casualty.  With regards to CNA, it is undisputed that
19   Gerard's Baltimore litigation which was filed pre-petition
20   against the Debtor's and Maryland Casualty, did not assert any
21   claims against CNA.  They weren't a party to that action.  It
22   was only when Gerard filed their Amended Complaint, did Gerard
23   assert claims against CNA.  This amended complaint was filed on
24   November 21st, 2003, almost 2 years after this Court entered
25   it's preliminary injunction order enjoining actions against

1  CNA.  Gerard also, at the same time, they filed their amended

2  complaint, also filed a scheduling motion, Your Honor, with the

3  State Court, where they seek to establish a new litigation

4  schedule to advance their claims.  As part of that scheduling

5  motion, they informed the Baltimore Court they were free to

6  pursue their case against the parties, including presumably,

7  CNA.  The scheduling motion never addresses the preliminary

8  injunction even though Gerard knew of it and knew that it

9  applied to CNA.  Now, Gerard and their pleadings, attempts to

10  justify their behavior in their disregard of this order, in two

11  respects.  One, they now argue, after the fact, that they will

12  not proceed against CNA until they get a ruling that the

13  preliminary injunction does not apply to their actions against

14  CNA for independent torts.  But the problem with that, Your

15  Honor, is the timing is all screwed up.  They should have

16  sought that determination first.  They know how to do that,

17  they've already done that in this Court with regard to Maryland

18  Casualty.  The problem that they haven't done that, it already

19  violated the preliminary injunction by filing their ammended

20  plan.

21         THE COURT:  Well, the Maryland Casualty, I'm sorry,

22  but refresh my recollection as to this timing of -- in which,

23  those actions came up and how the issue came up.  Was Maryland

24  Casualty in the preliminary injunction at the outset?

25         MR. KAPP:  Yes, Your Honor.

1          THE COURT:   Okay.

2          MR. KAPP:   Both Maryland Casualty and CNA have always

3   been part of the preliminary injunction and to jump out of

4   order to deal with Maryland, just to give a timeline, Gerard's

5   counsel, at one point, did act appropriately when faced with

6   preliminary injunction in front of Maryland Casualty.   They

7   did come forward, and filed a motion in this Court, seeking a

8   motion to clarify the injunction, if you remember, and

9   particularly as to whether they could pursue independent tort

10  claims against Maryland Casualty.   This Court heard that motion

11  to clarify, and denied it.   It was an appeal to the Circuit --

12  to the District Court and then Judge Wolin, subsequently

13  vacated this Court's order, clarifying that motion.   He also

14  then, sent it and remanded it back, for further proceedings in

15  front of this Court pursuant to his directives.   So, it was

16  then after that happened, Gerard never came to this Court

17  pursuant to Judge Wolin's directive and order, but instead went

18  and filed their Ammended Complaint and their scheduling motion,

19  in the State Court in Baltimore, and seeking to add new claims

20  against CNA and to move forward their claims against the

21  parties.   So that's the time limit.   So with regards to CNA,

22  it's clearly the Amended Complaint violates the preliminary

23  injunction with respect to CNA, moreover, it required the

24  Debtor's and CNA to expend time and resources which they should

25  have expended, and particularly with the Debtor's, that's why

1   we set up the preliminary injunction in the first place, to

2   avoid that cost.  Second of all, Your Honor, Gerard tries to

3   claim that the District Court's ruling, with respect to

4   Gerard's Motion to Clarify, which was denied by this Court,

5   they tried to claim that that was somehow unclear and thereby

6   justifies their action that they have violated the preliminary

7   injunction.

8           THE COURT:  It wasn't unclear.  There is no way that

9   that order is unclear.  I don't know what the further

10  proceedings are supposed to have, but nonetheless, the order

11  that sends it back here for them isn't unclear.

12          MR. KAPP:  And we would just -- with that comment

13  made, Your Honor, I'll bridge that part of the argument, but we

14  will note, you know, that it's clearly based upon a factual

15  finding as to Maryland Casualty that Grace does not have a

16  contractual obligation to identify Maryland.  Judge Wolin never

17  made such a finding with regard to CNA, it's nowhere, 'cause it

18  was never part of the equation.

19          THE COURT:  Well, I don't recall having heard

20  evidence, with respect -- or argument with respect to CNA.

21          MR. KAPP:  And Your Honor, you're right.  We actually

22  -- it was never mentioned in the appeal to Judge Wolin, and

23  going back we took a look at the pleadings before Your Honor.

24  CNA is never mentioned in any of those pleadings, and in fact

25  based on a comment that Gerard makes in their response, where

1  they say they argued about CNA in front of this Court, we

2  checked all the transcripts and never saw any reference to CNA.

3  CNA was clearly never part of the equation.  Judge Wolin was

4  faced with an issue as to Maryland Casualty.  He ruled as to

5  Maryland Casualty.  So thereby, by filing that Amended

6  Complaint, and asserting new claims against CNA, Gerard's

7  counsel knowingly violated a preliminary injunction with

8  regards to CNA.

9      Stepping back, Your Honor, with regards to the Gerard's

10  action with respect to the Debtors.  Once again, clear and

11  uncontested that the automatic stay applies to actions against

12  the Debtors.  Now once again, Gerard filed this scheduling

13  motion in the Baltimore litigation seeking to move the case

14  forward against all the parties.  Now, Your Honor, the Debtor's

15  are parties.  Gerard now in their pleading says, "Hey, we

16  didn't mean the Debtors."  Even if that's true, Your Honor,

17  where does it say that in the scheduling motion?  It doesn't.

18  And the undisputed facts are, Your Honor, is that the Debtors

19  are a named party.  The Debtors name is peppered throughout the

20  amended complaint, and it's an undisputed fact that in the

21  general allegations, almost every single allegation refers to

22  the Debtors.  We're all over the place.  And with that said,

23  we're so intertwined in this case, Your Honor, that as a

24  result, Gerard should have gone out of the way to ensure that

25  their scheduling motion did not violate that automatic stay and

1    more importantly, they should have gone out of the way to

2    inform the Baltimore Court of the facts so the Baltimore Court

3    wouldn't unknowingly violate the automatic stay.  They did not

4    do that, and because of that Your Honor, once again, the

5    Debtors were required to take action and expend costs and

6    resources to act as a watch dog.  When the bottom line is,

7    Gerard's counsel and Gerard has an obligation themselves to

8    make sure they're in compliance with this Court's Orders, not

9    the Debtors.  And therefore, because they did not do that, the

10   Debtors are requesting that with regards to the scheduling --

11   with regards to this objection and this motion, that they be

12   reimbursed for their expenses for enforcing the automatic stay.

13   Finally, Your Honor, let's examine Gerard's action with

14   respect to Maryland Casualty.  And we discuss what Gerard did

15   with regards to the clarifying motion, and the appeal, the

16   problem is is where Gerard here has gone astray, is that they

17   haven't complied with Judge Wolin's order.  Instead of coming

18   back before the Court as they were specifically instructed to

19   do, they ignored the directives of this District Court and they

20   went right to the State Court and filed their Amended Complaint

21   and they filed their scheduling motion,  And because -- once

22   again, because they did not come back here, as directed in the

23   order, those actions violate the preliminary injunction.  Now,

24   Gerard has never adequately explained their failure to give

25   this Court the necessary opportunity and to come back here to

1    allow the Court to reconsider the motion.   The best Gerard

2    does, is attempt in their pleadings to dismiss this obligation

3    as a ministerial task, but, Your Honor, this is far from being

4    ministerial.   In particular, this step is absolutely critical,

5    the District Court recognized it, and Gerard's counsel knows

6    it.   And this is clear, in fact, if you look at their Amended

7    Complaint, they amended that complaint that was filed at the

8    State Court after Judge Wolin's order, and they deleted any

9    causes of actions against Maryland, which the Debtors had an

10   obligation to indemnify.   And the reason they did this, Your

11   Honor, is the preliminary injunction still exists with respect

12   to such indemnification claims.   They'd never argue otherwise.

13   Preliminary injunctions still exist.   And therefore, it is

14   absolutely critical that this Court be asked to revise it's

15   order and to look at their order in connection with Judge

16   Wolin's directives, and until they do that, the preliminary

17   injunction is in place and bars the actions that were taken in

18   the State Court.   Now, Your Honor, Gerard cannot claim

19   confusion and they can't claim the stake on this point, because

20   as we set forth in the briefs, this distinction between Judge

21   Wolin's order vacating this Court's order denying the

22   clarification motion, and vacating the preliminary injunction,

23   it's been argued.   He did not vacate the preliminary

24   injunction.

25              THE COURT:   He did not vacate the preliminary

1  injunction.

2          MR. KAPP:  And they know --

3          THE COURT:  What he did --

4          MR. KAPP:  -- it, Your Honor.

5          THE COURT:  -- was vacate my order clarifying it,

6  which as far as I can tell, leaves the preliminary injunction

7  still in place.

8          MR. KAPP:  Your Honor --

9          THE COURT:  Which is why I don't know what I'm

10  supposed to do next.

11          MR. KAPP:  Well, Your Honor, you're making this easy

12  for me.  I'll cut through that, but I would say that with

13  regard to that, it's clear in his order that he does bring

14  things back here for re-examination.  And we believe until that

15  happens, nothing further can go forward.  And, by the way Your

16  Honor, in the scheduling motion filed in the Baltimore Court,

17  Gerard implicitly acknowledges this point.  They don't -- they

18  tell the Court, the State Court, that Judge Wolin vacated this

19  Court's clarification order.  They never say that he vacated

20  the preliminary injunction, as he didn't.

21          And finally, Your Honor, Gerard does attempt to justify

22  their actions by arguing the finality of the District Court's

23  order.  The Debtors aren't challenging the finality of Judge

24  Wolin's order.  What we're challenging, and what we find fault

25  with, was that Gerard did not comply with that order, and come

1    back here before they took action in the Baltimore Court.    And

2    because they failed to do so, they violated this Court's

3    preliminary injunction.    So therefore, Your Honor, as a result

4    of all three of those actions, against the Debtors, CNA, and

5    Maryland, the Debtors request that this Court, find Gerard's

6    counsel in contempt, order that Gerard withdraw their Amended

7    Complaint, and their scheduling motion, from the Baltimore

8    Court, and order that the Debtors be reimbursed for all their

9    costs associated with this motion.    One final point, Your

10   Honor, just housekeeping.    The Debtors do note that they

11   originally saw a stay of the Baltimore litigation until

12   resolution of the appeal of Judge Wolin's order.    The Debtors

13   have subsequently determined that they will not pursue such

14   appeal until further Debtors no longer seek such a stay.

15            THE COURT:  All right.

16            MR. KAPP:  Thank you, Your Honor.

17            THE COURT:  Good afternoon.

18            MR. COHN:  Good afternoon, Your Honor, Daniel Cohn for

19   the Libby Claimant's.    I think the -- we first need to clear up

20   some of the things that may have been unclear from the recital

21   of the procedural posture of this case.    There is absolutely no

22   doubt, that the preliminary injunction remains in effect.    That

23   has never been the issue, it's not the issue.    The preliminary

24   injunction remains in effect as to everything that isn't

25   covered by the District Court's ruling on the clarification

1   motion which is a very narrow, small subset of the entire scope

2   of the preliminary injunction.  But what happened was the

3   preliminary injunction was issued, the Gerard and the other

4   Libby Claimant's came in and they challenged the applicability

5   of that injunction to their independent claims against Maryland

6   Casualty.  That's the subset that we're talking about here.  It

7   was brought before this Court on the clarification motion if

8   there was anything wrong with that method of challenging the

9   scope of the preliminary injunction in lieu, it's validity as

10  it related to independent claims against Maryland Casualty,

11  someone should have said so at the time, and this Court should

12  have ruled on that supposed procedural defect.

13          THE COURT:  Wait, I'm only ruling on what's before me.

14          MR. COHN:  Exactly.

15          THE COURT:  The only thing that was before me was

16  Maryland Casualty, how does an Amended Complaint gets filed

17  against the Debtor and against CNA when neither I, nor Judge

18  Wolin, nor anybody else as far as I know, have ever been asked

19  to lift that preliminary injunction as to the Debtor or the

20  automatic stay as to the Debtor, where the preliminary

21  injunction is to CNA.

22          MR. COHN:  Well let's talk about --

23          THE COURT:  That was not argued, it was not before me,

24  and I don't see anyway -- but, to rule other than -- it's a

25  violation of the preliminary injunction as to CNA and the stay

48

1  as to the Debtor.

2         MR. COHN:  Well, let's start off with the stay as to

3  the Debtor, please, Your Honor.  The sole thing that was done,

4  against the Debtor, is that the Debtor is named in the caption

5  of the Amended Complaint.  That's it.  And that is because,

6  based on the understanding of trial counsel about how you have

7  to proceed in that Court, once the case has been named, you

8  have to proceed on that name in the case.  However, as has been

9  acknowledged, by Mr. Kapp, the complaint was amended.  And it

10 was amended so that, so as to eliminate those claims that were

11 covered by the preliminary injunction in light of Judge Wolin's

12 ruling, and preserved only those claims that Judge Wolin said

13 could go forward.

14        THE COURT:  Well, it did more than that.  It added

15 claims against CNA because neither he nor I addressed it.  And

16 to the extent that I didn't address it, and haven't clarified

17 anything, I couldn't have been reversed or an order couldn't

18 have been vacated because there was no such order.

19        MR. COHN:  Your Honor, I'm talking now about the

20 Debtor.  I will talk about CNA, Your Honor --

21        THE COURT:  So the Amended Complaint doesn't do

22 anything against the Debtor.  The allegations in the original

23 Complaint and the Amended Complaint as to the Debtor, are

24 identical.

25        MR. COHN:  Well, first of all, yes, Your Honor.  And

1   you're allowed to make -- to the extent that there's a factual

2   background which involves the Debtor, but claims are being

3   asserted -- independent claims are being asserted against

4   Maryland Casualty, one is allowed to make those allegations.

5   The whole issue --

6          THE COURT:  Now wait, you don't make allegations

7   against the Debtor that the Debtor can't respond to with

8   respect to the automatic stay.  I mean --

9          MR. COHN:  No, the automatic stay does not protect the

10  Debtor from anything that anybody wants to say, in any

11  litigation anywhere in this country, Your Honor.

12         THE COURT:  Of course, it does.  That's an --

13         MR. COHN:  Unless, excuse me, Your Honor.

14         THE COURT:  -- action against the Debtor.

15         MR. COHN:  Your Honor, it doesn't protect them unless

16  there is relief being sought against Grace in that proceeding.

17  If relief is not being sought against Grace, people can say

18  whatever they want about Grace in the context of suing,

19  Maryland Casualty, or suing anybody else in the whole universe.

20         THE COURT:  How can you make that assertion?  How

21  could the Debtor possibly, having been served with the

22  complaint, see allegations against it, knowing that the stay is

23  in place, and that there could be collateral consequences

24  because of findings that somebody may entertain because of

25  proof that's offered with respect to those allegations that the

1  Debtor has no obligation to defend.  Of course, that's an

2  action against the Debtor --

3           MR. COHN:  No, Your Honor --

4           THE COURT:  -- and the Debtors property.

5           MR. COHN:  Your Honor, that is exactly the issue that

6  was argued on appeal, in front of Judge Wolin, and Judge Wolin

7  has stated that the independent claims against Maryland

8  Casualty can go forward.

9           THE COURT:  That's a different issue.

10          MR. COHN:  That will of necessity --

11          THE COURT:  That's a different issue as to whether

12  there is an -- Judge Wolin disagreed with my findings that

13  there really was not such a thing as an independent claim here.

14  That's the basis for the order that vacated it.  He said, "Yes,

15  there is an independent claim, and to the extent that there is,

16  it's not going to have a direct impact on the Debtor at this

17  stage, so you can go forward with respect to that claim."

18  That's where the difference is.

19          MR. COHN:  And as a --

20          THE COURT:  That doesn't mean you can change the

21  allegations with respect to the Debtor, but you're telling me

22  you haven't changed them.

23          MR. COHN:  Correct, Your Honor --

24          THE COURT:  All right.

25          MR. COHN:  -- it's the Debtors just inherently

1  involved in our independent claims against Maryland Casualty in

2  the sense that the events --

3  THE COURT:  Now wait, I want a yes or no.  Was

4  something changed in the complaint, regardless of how, with

5  respect to the Debtor?

6  MR. COHN:  Not to my knowledge, Your Honor.

7  THE COURT:  All right, fine.  Then it's an academic

8  discussion.

9  MR. COHN:  Right.  So what we have then, Your Honor,

10  is that -- and the first issue which was raised and then really

11  the only important one, is whether the Debtors are trying to

12  achieve something in a -- that they're just simply not allowed

13  to achieve here.  We all understand that Judge Wolin has said

14  that the Maryland Casualty claims can go forward.  That was a

15  substance of his ruling.  It was procedurally -- there was no

16  challenge to the fact that that issue was properly before him.

17  When he reversed -- when he vacated the clarification order,

18  that's what it meant.  I think that that's what you just said a

19  moment ago.

20  THE COURT:  What he did was vacated it and sent it

21  back here.  I haven't seen your smiling face since that order

22  was entered.

23  MR. COHN:  Well, you have actually, on Montana

24  vermiculite --

25  THE COURT:  Yes.

1          MR. COHN:   -- but that's another matter.

2          THE COURT:   Yes, no I'm sorry, on this issue.

3          MR. COHN:   And I try to keep smiling, Your Honor, no

4    matter what.   But, the point about what Judge Wolin did was, he

5    had before him, the order of this Court that dealt with the

6    question of whether claims, independent claims, could go

7    forward against Maryland Casualty.   He couldn't have been

8    clearer in what he did.   He vacated that order.   The remand was

9    clearly only for a ministerial purpose and the reason why that

10   is clear, Your Honor, is that all the parties in effect agreed

11   with that.   Mr. Kapp says, "Well we're not -- the issue is not

12   the finality of the order."   Well the finality of the order, in

13   a sense, is the issue, because when a case is remanded to a

14   judge for findings, for further discretionary determinations,

15   it goes back down to that Court.   And that's the next place

16   that you go.   When --

17          THE COURT:   That's what happened here.

18          MR. COHN:   No --

19          THE COURT:   His order was specific that I was to make

20   some adjustments in light of his opinion.

21          MR. COHN:   But those are not --

22          THE COURT:   That was my obligation, not yours, not Mr.

23   Kapp's, but mine.   The only reason I couldn't do it earlier was

24   because the issue was on appeal to the circuit, and I had no

25   jurisdiction.   That doesn't vest you in Baltimore, that vests

1  you here.

2  MR. COHN:  You can't -- Your Honor, you can't do

3  anything now, because the issue, the appeal is still pending in

4  the Third Circuit.

5  THE COURT:  Fine, then I still can't.  But that

6  doesn't mean you can go forward either until it's over.

7  MR. COHN:  Well then, in effect, what you're doing is

8  you're standing the federal rules of appellate procedure on

9  their head.  Because the federal rules --

10  THE COURT:  No, I'm certainly not.  I'm honoring what

11  Judge Wolin said, which was when the appeals are done, unless

12  the circuit changes it, it's coming back here.  Now what I'm

13  going to do with it, I don't know yet because the circuit, if

14  it does act, if the appeal's withdrawn, it's not going to act,

15  so then I have to look to Judge Wolin's order and figure out

16  what it is from that that I'm to do.  Unless the circuit

17  reverses that, and sends it back somewhere else or tells me no,

18  don't look at it.  It's on my desk and you don't bypass my desk

19  and go to Baltimore.  You come here.

20  MR. COHN:  Your Honor, first to clarify the status of

21  the appeal.  Grace has withdrawn it's appeal.

22  THE COURT:  Fine.

23  MR. COHN:  Maryland Casualty is still appealing.

24  THE COURT:  Okay.

25  MR. COHN:  So the matter will go --

1      THE COURT:  That's fine.

2      MR. COHN:  -- up to the 3rd Circuit.  It is very

3  clear, and the case law is clear on this point, Your Honor,

4  that the finality of the order is not affected by the fact that

5  there's a ministerial remand, and so the issue is whether the

6  remand is really administerial here.

7      THE COURT:  I haven't even --

8      MR. COHN:  And in this case --

9      THE COURT:  -- had a chance to look at that issue yet,

10  and it's not only just your prerogative to look at that issue.

11  It's my obligation to look at it because it was sent back to

12  me.  If it's ministerial, that's fine.  If it's substantive,

13  that's more, but nonetheless, where that issue gets decided, is

14  here, not in Baltimore.  You need to come here.

15      MR. COHN:  But there is nothing unclear about Judge

16  Wolin's directive --

17      THE COURT:  That's right.

18      MR. COHN:  -- Judge Wolin's directive that the

19  Maryland Casualty litigation can proceed.  This Court was

20  beyond it's jurisdiction in enjoining independent claims

21  against Maryland Casualty.

22      THE COURT:  That's fine, but it didn't say anything

23  about CNA and he certainly hasn't in the least said anything

24  about Amended Complaints against the Debtor.

25      MR. COHN:  The Debtor, Your Honor, as I said, was --

1   is -- it's sole rule in that litigation is that it is in the

2   caption.   And obviously of necessity, it's in the background

3   allegations, but there is no prayer for relief against the

4   Debtors that is going forward in that Baltimore litigation.

5   And that is the test as to whether we're violating the

6   automatic stay, Your Honor, it's not the fact that we had to

7   replicate the same captions that existed pre-bankruptcy in

8   order to comply with what our counsel believes to be the

9   procedural requirements of that State Court.

10          THE COURT:   That's true, but normally what happens is

11   that there's an allegation that says the Debtor is only named

12   because, at the moment the Debtor is in bankruptcy and this

13   case cannot go forward.   And that puts everybody on notice,

14   that the reason that you've amended the complaint as to the

15   Debtor is to keep the caption the same.   Even the fact that

16   that wasn't included, has created a cost to this estate that

17   wasn't necessary.

18          MR. COHN:   Your Honor, that cost to the estate, could

19   have been cleared up so easily by Mr. Kapp just giving me a

20   phone call.   The fact of the matter is that would have been --

21          THE COURT:   It could have been cleared up easily by

22   your calling Mr. Kapp before you filed the Amended Complaint,

23   and then I wouldn't be here with 2 hours worth of preparation

24   for a hearing and a half an hour on an argument that I don't --

25   that I should not have had to have because a) the case isn't

1  ripe for adjudication by me, based on the fact that it's still

2  before the circuit, b) you were to come here first, c) CNA was

3  in no way implicated in those prior rulings, and should not

4  have been the subject of a violation of the preliminary

5  injunction.  And to the extent that the Debtor is only named in

6  the caption, I'll accept for the moment, that that's not a

7  violation of the stay, but it could have been clarified to make

8  it clear that it wasn't a violation of the stay.

9        MR. COHN:  And Your Honor, I certainly believe that

10  the Court is owed an apology insofar as there was poor

11  communication within team Libby, so that I didn't hear about

12  this Complaint before it had got filed, and so some of these

13  things that could have just been clarified by a telephone call

14  among counsel, Your Honor, I agree.  You know, that should

15  either have been clarified by something that you said in

16  writing in the complaint, or could have been clarified by some

17  other agreement that was struck between counsel.  I would not

18  have stood on ceremony and not called Mr. Kapp because he

19  should somehow call me.  But I guess I should point out, Your

20  Honor, and I believe it's a legitimate point, that before you

21  go off and expend resources of the estate, and then try to gain

22  a strategic advantage against the Libby Claimant's by requiring

23  their counsel to write a big check for the legal fees of the

24  estate, it would certainly behoove them to call up and see

25  whether they can resolve it in a tenth of an hour, and charge

1  us the tenth of an hour if they want to, but try and resolve it

2  in a way that avoids this type of litigation, because there is

3  absolutely no intention to proceed against Grace.  It's

4  perfectly obvious that Grace is covered by the automatic stay.

5  The only thing that the -- the only reason Grace is mentioned

6  in there is because trial counsel thought that they had to be.

7      THE COURT:  And the scheduling order?  And the

8  scheduling order that says you want to tee it up as to all

9  defendant's?

10      MR. COHN:  Not as to all defendant's, Your Honor, as

11  to Maryland Casualty and as to CNA, which I do need to get to,.

12  but not as to Grace.  There is no --

13      THE COURT:  So the order -- the scheduling order,

14  itself, is limited to CNA and to Maryland Casualty?

15      MR. COHN:  Correct.

16      THE COURT:  Show me the order then, or the motion,

17  because there seems to be a dispute.

18      MR. COHN:  Well, Your Honor, there's no dispute that

19  the -- that it doesn't expressly mention that, but it is also

20  true that the only claims that could go forward, at this point,

21  are those against Maryland Casualty, and will get it and I'll

22  discuss CNA in a moment, but those are the only claims that on

23  which we, and trial counsel intended to push for a trial, in

24  the Baltimore Court.  That's the -- that was their sole

25  intention.  And once again, you know, that's the kind of thing

1 where if there was any lack of clarity about that, we didn't

2 need to hear about that at a Motion for Contempt.

3         THE COURT:  No, that's the obligation of the moving

4 party, to make it clear that there is not some mis-

5 communication or something misleading, whether even

6 inadvertently, in a pleading, that's filed with another Court.

7 And if, in fact, if this request is to go forward as to all

8 Defendant's, and the Debtor is one, then that's a request to go

9 forward as all defendant's.

10         MR. COHN:  Then, Your Honor --

11         THE COURT:  Lawyers know how to accept, from general

12 language, entities that they do not wish to proceed against,

13 and I expect that of counsel.  So let me see it please.

14         MR. COHN:  Well, let's assume, I'm sorry Your Honor, I

15 don't have that with me.

16         MR. KAPP:  Your Honor, I have one but it has my

17 markings if you don't mind.

18         THE COURT:  I'll ignore --

19         MR. COHN:  May I?

20         THE COURT:  -- your markings.

21         MR. COHN:  Well, may I --

22         THE COURT:  Yes.

23         MR. COHN:  -- borrow it for just a second.

24         THE CLERK:  I have a clean one.

25         THE COURT:  Oh fine.

1    MR. KAPP:  Your Honor, I would refer you to paragraph

2   6 and 7 on page 2.  It's not clear one way or the other.

3        (Pause in proceedings)

4        THE COURT:  Thank you.

5        MR. KAPP:  Your welcome, Your Honor.

6        (Pause in proceedings)

7        THE COURT:  Paragraph 7 says Grace and Maryland have

8   filed an appeal to the Court of Appeals for the 3rd Circuit of

9   the order entered by the United States District Court.

10  However, unless and until the order of the United States

11  District Court is vacated, Mr. Gerard is free to pursue the

12  present case.  And that's not true.

13       MR. COHN:  Well, Your Honor, the -- by the present

14  case should have been clarified that it means the claims

15  against Maryland Casualty, but I would submit, Your Honor, that

16  in the context of that order, which remember it had attached to

17  it, the -- Judge Wolin's decision, so that it was -- the Court

18  could see what was going on, could see what was being ruled

19  upon.  That decision by Judge Wolin dealt only with the

20  independent claims against Maryland Casualty.  Those are the

21  claims that counsel, perhaps not artfully --

22       THE COURT:  Not at all, not just not artfully.  It

23  doesn't say is free to proceed against Maryland Casualty.  It

24  says it's free to pursue the present case.

25       MR. COHN:  Your Honor, let me assume, let us --

1    THE COURT: And therefore asks for a scheduling order

2    establishing a new schedule for this case.

3    MR. COHN: Right, and let us assume, Your Honor, let

4    us assume arguendo, that it is exactly correct that that should

5    have been clearer, that it was not expressed well, and that

6    counsel had an affirmative obligation to express it better and

7    more clearly. Once again, Your Honor, could have been resolved

8    by telephone call. Yes, maybe a telephone call that shouldn't

9    have had to have been made, but it's not --

10    THE COURT: Look, let me make it clear.

11    MR. COHN: -- this is not the stuff of which contempt

12    is made.

13    THE COURT: It is a contempt. It is a direct

14    contempt. This is a contempt of the automatic stay, let alone

15    the preliminary injunction as to CNA. And it's also a contempt

16    of Judge Wolin's orders, but he can speak for himself with

17    respect to pursuing contempts of his orders when the parties

18    are specifically directed back here but there's still an appeal

19    pending so that I can't do anything with it. Would you like to

20    talk about CNA?

21    MR. COHN: Yes, Your Honor. In the case of CNA, there

22    was -- counsel had a belief, trial counsel had a belief that

23    there was a potential problem with Statutes of Limitation

24    running as to CNA. And the basis of that belief was, that when

25    Judge Wolin reversed, admittedly, Your Honor, only as to

1   Maryland Casualty.  I do want to make it clear that there is no

2   question, procedurally, that the sole party on appeal was

3   Maryland Casualty, that the only claims that Judge Wolin

4   actually ruled upon were those of Maryland Casualty.  So I

5   don't want to be misunderstood in that regard, but, because

6   Judge Wolin reversed and said that this Court, did not have

7   jurisdiction to enter that injunction, counsel thought that

8   that called into question, whether this Court had jurisdiction

9   to enjoin any independent claims, against any party.

10        THE COURT:  They were enjoined, and there was no

11  Motion for Clarification.  I'm sorry, but that really is making

12  something out of whole cloth.  The only reason that the issue

13  with Maryland Casualty ever came up is because I was

14  essentially asked, not even to lift the injunction, but to

15  clarify the injunction with respect to the scope as to one

16  entity.  That preliminary injunction is still in place as to

17  CNA.  It's a final order of this Court.  It's unappealed, it's

18  just there.

19        MR. COHN:  Well, Your Honor, first of all, I think a

20  preliminary junction is never a final order.  So that's --

21        THE COURT:  It's a final preliminary, it's a final

22  injunction with respect to the proceedings that have been

23  before this Court.  It's as final an order as it's going to get

24  unless and until it's put into final injunction hearing track.

25        MR. COHN:  Unless, and until, there were a motion, a

1  proper motion, and that motion were --

2          THE COURT:  Right.

3          MR. COHN:  -- either allowed or were ultimately

4  determined on appeal to be -- that this Court didn't have

5  jurisdiction to enjoin those claims.  But --

6          THE COURT:  That issue is not before anybody, because

7  the issue of my jurisdiction wasn't raised, it wasn't

8  litigated, and the order was entered 2 years ago.  Now, if you

9  bring a motion to Clarify, that's a horse of a different color.

10  But that's not the horse I'm facing today.

11          MR. COHN:  Correct, Your Honor.

12          THE COURT:  Today, I have a preliminary injunction in

13  place.  I have a complaint filed in clear violation of it, by

14  counsel who's been before this Court on the very same issue,

15  with respect to a different entity.  I don't know a more clear

16  contempt.

17          MR. COHN:  Well, Your Honor, with respect to CNA, it

18  is, it's frankly, the aspect of this thing that I think is --

19  presents the most difficult issue, because it is, I think,

20  reasonably clear that counsel was wrong in it's concern that

21  the reversal by Judge Wolin called into question the ongoing

22  validity of the preliminary injunction against CNA, pending any

23  type of motion to resolve that issue.  And we do, by the way,

24  intend to bring such a motion.  That's the proper way to

25  proceed, as you stated.  And under the circumstances, on that

1   one, I really just have to rely on the fact that counsel was

2   acting in good faith, that the belief that, you know, when you

3   get a reversal on the basis of lack of jurisdiction, it's a

4   very -- it is a subject of great concern, could well have meant

5   that Continental would take the position to Statutes of

6   Limitation, started running right away from the entry of that

7   order.   And by filing this Complaint, and doing nothing else,

8   taking no other steps with respect to CNA, very little burden

9   has been placed on CNA, none on the Debtor --

10   THE COURT:  Well, it's going to be even less, because

11   that Amended Complaint, unless you can work out some tolling

12   agreement, or some requirement, that somehow or other, the

13   statute would be tolled, that Amended Complaint is going to be

14   dismissed, voluntarily by counsel, as to everybody except

15   Maryland Casualty, and clarified, with respect to the Debtor,

16   that the Debtor is only named because of the fact you have to

17   keep the captions the same, and for no other purpose, and that

18   no substance of relief is being sought as to the Debtor, with

19   respect to the amendments or the scheduling order.

20   MR. COHN:  Your Honor, we're --

21   THE COURT:  The scheduling order is also going to be

22   clarified by counsel to make it clear that the Debtor is not

23   party to any request on the scheduling order.

24   MR. COHN:  We shall do so, Your Honor.

25   THE COURT:  With respect to the cost and expenses the

1  Debtors counsel incurred to defend this motion, I'll get a -- I

2  will ask for an itemization of what they are, serve it on

3  counsel, you can put it either on my March or April, whichever

4  you two agree upon, list so that counsel has an adequate

5  opportunity, both to review them, see what portions he may

6  object to and talk to you about some resolution in advance.

7          MR. COHN:  Your Honor, one issue that really the Court

8  raised, was that the motion was filed improperly in the first

9  instance.  And I would --

10         THE COURT:  The motion?

11         MR. COHN:  -- well, in other words, it was first filed

12  as a motion and you said that it needed to be done as an

13  adversary proceeding, and so what then happened was Grace

14  modified the pleadings and the motion was actually denied

15  without prejudiced the first time around, Your Honor.

16         THE COURT:  Yes.

17         MR. COHN:  Right, so, I just would ask that you direct

18  Grace to exclude the incremental cost of doing it a second

19  time, since we obviously had no, are not in any way to blame

20  for the fact that they chose the wrong procedural route, in the

21  first instance.

22         THE COURT:  Mr. Kapp?

23         MR. KAPP:  Your Honor, I think we can talk to counsel

24  about that.  I don't think there's many dollars there.  All we

25  did was file the motion again so I don't think it's a big

1  concern.

2          THE COURT:  All right.  Mr. Wisler?

3          MR. WISLER:  Thank you, Your Honor.  Jeff Wisler, on

4  behalf of Maryland Casualty.  Your Honor, I let Mr. Cohn go

5  first as a courtesy, but I think the Court is now further ahead

6  then I'd like it to be.  As everyone, including the Court, has

7  pointed out, the preliminary injunction is still in effect.

8  And that preliminary injunction always stayed the entire

9  Baltimore litigation.  And it always stayed actions

10  specifically against Maryland Casualty that arise from the

11  alleged exposure to asbestos, indirectly or directly, caused by

12  the Debtors.

13          THE COURT:  Oh, Mr. Wisler, I thought I just ordered

14  the Amended Complaint to be withdrawn?

15          MR. WISLER:  You did, you said, except for --

16          THE COURT:  Oh, except for Maryland --

17          MR. WISLER:  -- as to Maryland Casualty --

18          THE COURT:  I had -- yes.

19          MR. WISLER:  -- and what I was -- my point is, and the

20  point we made in our (indiscern.) was that the -- any action

21  against Maryland Casualty also violates the preliminary

22  injunction.  Your Honor, Mr. Cohn says that the District Court

23  could not have been more clear.  He is assuming that the

24  District Court, had no ability to reverse Your Honor's June 20

25  order.  And the District Court specifically did not reverse, it

1  vacated and remanded as Your Honor pointed out, so the ball is
2  back in your Court.  So, there is no clear holding, as Mr. Cohn
3  would like you to believe.  And what Mr. Cohn, or his client or
4  his co-counsel did, when faced with the situation last time,
5  was they filed a Motion to Clarify.  Why did they file a Motion
6  to Clarify?  They wanted to clarify the preliminary injunction.
7  What did they want to clarify?  They wanted to clarify whether
8  direct tort actions against Maryland Casualty were stated by
9  the preliminary injunction.  Now, as I understand it, Your
10  Honor, Judge Wolin's vacation of the June 20, 2002 order,
11  basically makes that motion -- puts that Motion to Clarify,
12  back as pending before Your Honor, to rule upon consistent
13  with, either Judge Wolin's order or what the 3rd Circuit does.
14  So until further order of this Court, the preliminary
15  injunction still stands.  And the Motion for Clarification, to
16  clarify whether Mr. Cohn's client can bring direct tort actions
17  against Maryland Casualty, is still pending.  And I note, Your
18  Honor, that while that motion was originally pending, that a
19  Gerard case in Baltimore, did not go forward.  Why, because it
20  was stayed by the preliminary injunction and everybody knew
21  that.  And everybody knows now that the preliminary injunction
22  is still in place.  If they're allowed to go forward with the
23  Baltimore litigation now, what exactly is Your Honor supposed
24  to decide on remand?  Nothing, because it's still there, it's
25  still pending.  The Motion to Clarify is still pending, and

1  until Your Honor re-rules on that, the preliminary injunction

2  still stands to expressly protect Maryland Casualty.

3         THE COURT:  Well, I can't do anything as long as the

4  issue is pending on appeal.  I mean, Judge Wolin's order, is

5  that correct?  Maryland Casualty still has that issue on

6  appeal?

7         MR. WISLER:  Yes, that's absolutely right, but, Your

8  Honor, I'm not asking you to do anything new.  I'm saying that

9  Your Honor always had the preliminary injunction in place, it

10  always prohibited any action against Maryland Casualty, and

11  what Gerard did was it came to this Court, really under a

12  motion for your argument, but they called it a motion to

13  clarify, to say, "Wait a minute.  This preliminary injunction

14  stops all actions against Maryland Casualty, it shouldn't stop

15  our theoretical direct tort actions against Maryland Casualty."

16  And let's, for a minute, talk about what those are, by the way.

17  Those are the tort of aiding and abetting Grace.

18         THE COURT:  I know, Mr. Wisler --

19         MR. WISLER:  They are civil conspiracy with Grace.

20         THE COURT:  -- in this case, your preaching to the

21  choir.  I believed you the first time, Judge Wolin didn't.

22  So --

23         MR. WISLER:  Right, yeah but what Judge Wolin did was

24  he made a fact finding that was never litigated in front of

25  this Court.  And that was the basis of his ruling, and that's

1   why we've taken it to the 3rd Circuit, but in any event, Your

2   Honor, the preliminary injunction prevents Gerard from doing

3   what she's doing now, that is, proceeding in the Baltimore

4   litigation.   There is a Motion to Clarify, theoretically,

5   pending before this Court to decide whether should those Court

6   actions be carved out of the preliminary injunction.   That

7   order, that motion has not been ruled upon.   The preliminary

8   injunction is still in place, and the Baltimore litigation

9   cannot go forward without violating that preliminary

10  injunction.   The preliminary injunction is still in this Court,

11  Your Honor still has jurisdiction over it, and to enforce it.

12  And you know, Your Honor, that if you're not clear on this, we

13  will be back here because the last time we were before Your

14  Honor, I pointed this out and here's where we are.   They filed

15  creative, sloppy, whatever you want to call it, pleadings in

16  Baltimore and we have to come back here.   I don't want to have

17  to do that again.   Until the 3rd Circuit has ruled, and until

18  that Motion to Clarify is back in this Court for determination.

19          THE COURT:   All right, it seems to me that the order I

20  should enter, at this point, to be clear, is that the Amended

21  Complaint in Baltimore is to be withdrawn, without prejudice,

22  pending further ruling by this Court assuming that the circuit

23  sends it back to me, or through Judge Wolin to me, or by, the

24  Court of last resort, if it isn't sent back here.   I don't know

25  what the circuit will do, it may decide the issue and there may

1  not be a need for remand, but it seems to me until there is,

2  whatever, either an adjudication by the circuit, or a remand,

3  I'll require the Debtor as soon the Debtor, and Mr. Wisler and

4  Mr. Cohn I'll expect both of you to get in touch with the

5  Debtor, as soon as the circuit decides.  So that it can get put

6  onto the next omnibus calendar thereafter so I know that it's

7  ripe.  I will not get copies of whatever happens at the circuit

8  level.  So I will not know when the circuit has decided.  So,

9  until as far as I can tell, there is another order from me, at

10  this point, under Judge Wolin's opinion, the Amended Complaint

11  in Baltimore, and the request for scheduling order are to be

12  withdrawn without prejudice.  When refiled, the Amended

13  Complaint is to clarify that the Debtor is named only as a

14  party because of the need to keep the case caption the same and

15  that no additional relief is sought against the Debtor, and the

16  Debtor in no way is compelled to address the complaint.  It is,

17  nonetheless, to be served on the Debtor and Debtors counsel, so

18  that they're aware of it.  And any additional scheduling orders

19  are to clarify, that it is not seeking relief against the

20  Debtor.

21       MR. COHN:  So then I remain unclear only as to timing.

22  Once we withdraw the whole thing without prejudice, we're then

23  free to refile so long as we do so in compliance with your

24  directive?

25       THE COURT:  You cannot refile the Amended Complaint

1   until either the Circuit says you can, or you're back here

2   before me and get some order that says, okay, the time is ripe,

3   go file.

4           MR. COHN:  So this is then, it's a contingent

5   directive, basically, on --

6           THE COURT:  Whatever happens --

7           MR. COHN:  -- based on --

8           THE COURT:  -- at the Circuit level, yes.

9           MR. COHN:  Okay.

10          THE COURT:  With the issue on appeal, I don't know

11  whether they're going to decide to remand it or do something

12  else.

13          MR. COHN:  Well, now I understand what the

14  instructions are, I just, in order to have a clear record, I do

15  want to state that as so far as the Libby Claimant's are

16  concerned, they do believe that they are currently free to

17  proceed against Maryland Casualty on the independent claims --

18  should be.  I mean, obviously you just ordered us not to, so

19  we're going to obey that order, but I, just to clarify for

20  purposes of appeal, Your Honor, while we accept that we should

21  clarify that the Debtor is only there because it needs to be in

22  the caption.  We do not accept that the independent claims

23  against Maryland Casualty should be stayed at this point.

24          THE COURT:  Well, okay, I am not attempting to stay

25  those claims.  I am simply saying, at this point, the order is

1 on appeal.  And unless, and until the Circuit acts, the
2 preliminary injunction, itself, is in place.  So I don't know
3 how you can go forward against Maryland Casualty on the
4 preliminary injunction when Judge Wolin's order, at this point,
5 is on appeal.

6         MR. COHN:  Because, Your Honor, the entry of Judge
7 Wolin's order has immediate affect.  There is -- there was no
8 say entered pending appeal of that order.  So that order is now
9 the last word on the issue of whether the injunction applies to
10 independent claims against Maryland Casualty.

11         THE COURT:  All right, well that's why I am unclear as
12 to what I am to do, but it seems to me that the last words here
13 -- because he vacated the order and sent it back, which means
14 that the motion itself now has no order.

15         MR. COHN:  Right, and in light of --
16         THE COURT:  So I have to hear it.
17         MR. COHN:  -- right, and in light of that posture,
18 Your Honor, I would then just really appeal to you that, you
19 know, we're all trying to do our best here, to act within the
20 constraints of a -- what is procedurally admittedly, a very
21 unusual and --
22         THE COURT:  Yes.
23         MR. COHEN:  -- difficult situation.  And I would
24 respectfully submit, that this is not the stuff of which
25 contempt and sanctions for contempt, are made.  And so I would

1  really just appeal to your equitable discretion, Your Honor,

2  that under the circumstances where we are now going to go and

3  do what you have determined in this difficult situation, is the

4  right thing to do, I would ask that co-counsel be relieved from

5  any problem extensions.

6       THE COURT:  As to CNA, I can see no basis on which to

7  say, that this is not a contempt.  And if I permit one law firm

8  to do it, then the preliminary injunction's in all these cases

9  mean nothing.

10      MR. COHN:  Well, Your Honor, I guess I would observe,

11  as you did yourself a few minutes ago when we were talking

12  about the flood gates issue as it related to the Royal

13  Indemnity situation, this is a pretty unique situation, Your

14  Honor.

15      THE COURT:  Oh, it's not the first effort to get

16  around the injunctions in other cases.  It is not the first

17  effort.

18      MR. COHN:  No, I understand, Your Honor.

19      THE COURT:  It's happened numerous times.

20      MR. COHN:  But it occurred in the context of this very

21  unusual procedural situation, Your Honor, and the CNA complaint

22  would not, could not, there was no reason to have -- for it to

23  have been filed, but for the confusing, admittedly to all of

24  us, procedural posture of the case as it related to Maryland

25  Casualty.

1    THE COURT:  Well, I would --

2    MR. COHN:  And that's why it came about, Your Honor.

3  I realize --

4    THE COURT:  I will do this.  I said I was going to put

5  this back on the list for next month or April, whenever, so

6  that you folks can talk about these.  If you can come up with

7  some language, that satisfies the estate to reimburse the cost

8  and expenses that it is incurred for this proceeding, then I

9  may -- may and that's the word, may, in capital letters,

10  underlined, bolded, italicized, however else to stand out on

11  this record, may decide not to make a finding of contempt.  So,

12  talk to counsel and see what you can work out.  And put it back

13  on whichever of those two agendas you can agree upon and I'll

14  hold that issue until then.

15    MR. COHN:  Thank you, Your Honor.

16    THE COURT:  So, 8 is continued until, do you know now

17  which hearing you want?

18    MR. KAPP:  I have a feeling we'll go to April, Your

19  Honor, if there are --

20    THE COURT:  All right, it's continued 'til the April

21  omnibus, but, I do want an order in the meanwhile, that

22  requires the complaint in Baltimore to be withdrawn, without

23  prejudice, as I stated earlier.

24    MR. KAPP:  And is it all right, Your Honor, and I

25  caught all that, just in that order, we'll just notice that

1  this is the fee issue and a finding of contempt that's being

2  set for April.

3       THE COURT:  Yes.

4       MR. KAPP:  And that's what we'll do.

5       THE COURT:  All right.

6       MR. KAPP:  All right?

7       THE COURT:  Yes.

8       MR. KAPP:  Finally, Your Honor, and real quickly, the

9  Debtors, the two last items on claim objections, let me go out

10 of order.  Item 11 is the Debtor's 2nd omnibus objection.  We

11 believe all the objections there have been resolved, and I

12 believe we have an order to be entered.

13      THE COURT:  All right.  Thank you.  Oh, let me give

14 you back, Mr. Kapp, your copy of the Baltimore -- I think it

15 was this young lady's in the corner.

16      MR. KAPP:  And then finally, Your Honor, with regards

17 to the Debtors first substantive objections to claims, all

18 those objections have been resolved, except with regards to

19 Pipeline, which real quickly, Your Honor, we'd like to go

20 forward on.

21      THE COURT:  Which agenda item?

22      MR. KAPP:  Number 10, Your Honor.  And the issue with

23 Pipeline's claim is that they -- in their Proof of Claim, was

24 not against the Debtors but against some other entity in the

25 attachments referred to some other entity.  The Debtors did

1  reach out to Pipeline, way back when, and informed them of this

2  of which -- and that was back in the summer.  We have not had

3  anything filed since then, they said they would look into it

4  and correct it if necessary.  We since made an attempt a couple

5  months ago, to reach out to them again and contact them by

6  phone, their number now has been disconnected.  We have sent

7  them materials by mail.  It has not come back, but we don't

8  know if they've received anything or not.  So we have moved, we

9  are moving, to have that order expunged -- that claim expunged,

10 what we believe happened, Your Honor, is they went back and

11 checked, determined that it wasn't a claim against us and then

12 just haven't done anything, but I do bring that to the Court

13 that we have not, we've tried to get in touch with them since

14 then, we haven't heard anything and that is the sole remaining

15 objection on this item 10.

16         THE COURT:  All right, I think it would be

17 appropriate, in this instance, to expunge the claim, but to

18 give Pipeline 10 days after you make service of that order to

19 file a Motion for Reconsideration, since I don't know what the

20 status is either.  And I -- if they have something that

21 indicates that the claim really should be considered here, I'll

22 give them that 10 days.

23         MR. KAPP:  All right, Your Honor, we will modify the

24 order and we will file that.

25         THE COURT:  All right.

1    MR. KAPP:  And then, Your Honor, that is -- that's it

2  for today's agenda, thank you for your time.

3    THE COURT:  Good afternoon.

4    UNIDENTIFIED SPEAKER:  Oh, not quite.

5    MR. PALACIO:  Good afternoon, Your Honor, Ricardo

6  Palacio of Ashby & Geddes on behalf of National Union.  I rise

7  only to see if Your Honor got a date for our argument --

8    THE COURT:  Oh, I did --

9    MR. PALACIO:  -- argument on the National Union --

10    THE COURT:  -- yes, sir, oh I'm sorry Mr. Palacio, you

11  could have told me I would have done this sooner.

12    MR. PALACIO:  Oh, I didn't want to interrupt, Your

13  Honor.

14    THE COURT:  I apologize.  Yes, March 25th at 10:00 for

15  an hour.

16    MR. CARICKOFF:  Is that going to be a, Your Honor,

17  David Carickoff for the Debtors, is that just going to be a

18  telephonic argument hearing?

19    THE COURT:  Well, I'll be in Pittsburgh.  We're -- if

20  you want to come, you could, but I don't see the need for it

21  for this argument, really, I think by phone is fine.

22    MR. CARICKOFF:  Okay, so the Debtors will then set up

23  a conference call with Your Honor, and circulate it to the

24  parties?

25    MR. PALACIO:  I think we'd be agreeable, I think Mr.

1    Esterman would appreciate that, as well.  Thank you, Your

2    Honor.

3            THE COURT:  All right, so it will be on March 25th at

4    10:00 and I have an hour reserved.  Okay.

5            MR. WISLER:  Thank you, Your Honor.

6            THE COURT:  Thank you.

7            MR. PALACIO:  Thank you.

8            THE COURT:  Any other matters, housekeeping matters to

9    be addressed?

10           ALL:  (No verbal response).

11           THE COURT:  Okay, thank you, we're adjourned.

12       (Court adjourned)

13

14                       CERTIFICATION
     I certify that the foregoing is a correct transcript from the
15   electronic sound recording of the proceedings in the above-
     entitled matter.
16

17   _____          _3-9-04_
     Signature of Transcriber              Date
18

19

20

21

22

23

24

25

*Writer's Cramp, Inc.*

Certified Court Transcribers

732-329-0191