IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Re: Docket No. 5317 |

## DEBTORS' OBJECTION TO THE MOTION OF THE MASSACHUSETTS DEPARTMENT OF ENVIRONMENTAL PROTECTION FOR RELIEF FROM THE AUTOMATIC STAY AND SETOFF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby object to the Motion of the Massachusetts Department of Environmental Protection For Relief from the Automatic Stay and Setoff (the "Motion"). In support of their objection, the Debtors state as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food >N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Preliminary Statement

The Massachusetts Department of Environmental Protection (the "MDEP") is not entitled to setoff its alleged pre-petition claims for response costs and fees against the amounts owed by the Massachusetts Department of Revenue (the "MDOR") to the Debtors for overpayment of corporate excise taxes, as the requirements of section 553 of title 11 of the United States Code (the "Bankruptcy Code") are not satisfied.  Specifically, (i) the MDEP and the MDOR are not the "same creditor" as required to satisfy the mutuality requirement of section 553; (ii) the amounts owed to the Debtors by MDOR are post-petition obligations that cannot be setoff against the Debtors' alleged pre-petition obligations to the MDEP; and (iii) the Debtors' disagree with the substantive merits and amount of MDEP's claims and, accordingly, the MDEP's claims are not liquidated, and they cannot be setoff.  Therefore, the MDEP is not entitled to setoff its alleged pre-petition claims for response costs and fees against the post-petition obligations of the MDOR to the Debtors, and this Court should deny the Motion.

## Facts and Background

1.      On April 2, 2001 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2.      In March 2003, the MDEP filed Proofs of Claim against each the following three debtors: W.R. Grace & Co.-Conn., W.R. Grace & Co., and Grace Energy Corporation[2].  The MDEP claims seek recovery for alleged environmental liabilities owed by the Debtors to the MDEP in connection with certain sites throughout the Commonwealth of

---

[2] The Debtors' claims agent assigned the following Claim Numbers to these claims: 12848, 12849, and 13487.

2

Massachusetts. MDEP based its Claims on federal and state laws, including the Comprehensive

Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9606, et

seq.("CERCLA"), the Massachusetts Oil and Hazardous Material Release Prevention and

Response Act, Mass. G.L. c. 21E, the Massachusetts Contingency Plan "MCP"), 310 C.M.R.

§§ 40.0000, et seq., and the Timely Action Schedule and Fee Provisions, 310 C.M.R. §§ 4.00, et

seq.

       3.      The MDEP's claims assert that the Debtors owe the MDEP a total of

$799,418.84 for unreimbursed or un-repaid, pre-petition environmental-response costs and fees

(the "MDEP Claim"). The Debtors disagree with: (i) the substantive merits of MDEP's claims

and (ii) the amount of costs & fees that MDEP has asserted, and the Debtors plan to object to

MDEP's claims in the near future.

       4.      During tax-year 1986, the Debtors divested a number of subsidiaries. The

Debtors took the position that the gains from such divestments were not related to its core

business and, therefore, were non-business related gains taxable for state income tax purposes

only by the State of New York. The MDOR, however, took the position that the gains were

business-related and assessed a tax in respect of such gains. The Debtors did not believe that this

amount was due. Under Massachusetts law, however, a taxpayer could not dispute an unpaid tax

assessment. Therefore, the Debtors paid the amount assessed and then promptly filed an

abatement application with the MDOR for a refund of that amount (along with accrued interest).

This application was denied in 1996. In December of 1996, Grace filed a petition with the

Massachusetts Appellate Tax Board. This matter had remained unresolved until the MDOR

offered - by letter dated December 1, 2003 - to settle the MDOR Tax Refund.

3

5.    By order dated January 22, 2004, this Court authorized W.R. Grace Co.-Conn. to settle and compromise the Massachusetts corporate excise tax refund claim for the tax year 1986. A final settlement agreement has not yet been signed. The MDOR and the Debtors are currently negotiating the terms of the settlement agreement by which the MDOR will owe the Debtors approximately $1,292,340, consisting of $245, 256 in overpayment and $1,047,084 in accrued interest (the "MDOR Tax Refund").

### Argument

6.    Section 553(a) of the Bankruptcy Code states, "[e]xcept as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset *a mutual debt* owing by such creditor to the debtor that *arose before the commencement of the case* under this title against a claim of such creditor against the debtor that arose before the commencement of the case..." 11 U.S.C. § 553(a) (emphasis added). Accordingly, the Bankruptcy Code does not disrupt a creditor's common-law right to setoff, *provided* that both: (i) the creditor of the debtor is the same party to whom the debtor has an obligation, and (ii) the creditor's claim against the debtor and the debtor's claim against the creditor arose before the debtor went into bankruptcy. See 11 U.S.C. §553(a); University Med. Ctr. v. Sullivan (In re University Med. Ctr.), 973 F.2d 1065, 1079 (3d Cir. 1992). A mutual debt and claim can be the product of different transactions. See 4 Collier on Bankruptcy §553.03, at 553-14 (15th ed. 1992). However, a creditor's pre-petition claims against the debtor cannot be setoff against post-petition debts owed to the debtor. See id. Further, "[t]he application of setoff is permissive and lies within the equitable discretion of the Bankruptcy Court." DuVoisin v. Foster (In re Southern Indus. Banking Corp.), 809 F.2d 329, 332 (6th Cir. 1987); see also Collier

4

on Bankruptcy, §553.02 (15th ed. 1992) ("The right of setoff under section 553 is permissive, not mandatory. Its application, when properly invoked before a court, rests in the discretion of the court, exercised under general principles of equity.")

7.     The requirements of section 553(a) of the Bankruptcy Code are not satisfied in the present instance. First, the Debtors may have a disputed-obligation to the MDEP, but they are owed money by the MDOR. These state agencies are separate entities, and this lack of unity destroys the "mutuality" that is required for setoff under section 553(a). Second, the amounts owed to the Debtors by MDOR are post-petition obligations that can not be setoff against the pre-petition MDEP Claim. Finally, the Debtors have not acknowledged, and do not agree with, the merits or amount of the MDEP Claim. Even if the requirements for setoff were otherwise met, setoff would not be proper until this discrepancy had been resolved.

(a)     **There is no Mutuality as Required by Section 553 of the Bankruptcy Code**

8.     The Debtors allegedly owe monies to the MDEP, and they are owed monies from the MDOR. These are separate *state-agencies* that constitute separate entities under the Bankruptcy Code. Accordingly, there is no mutuality, and the MDEP is not entitled to setoff the MDEP Claim against the MDOR Tax Refund.

9.     The Bankruptcy Code does not define the term "mutual debt." Courts have consistently stated, however, that the mutuality requirement should be strictly construed. See, e.g., In re NTG Industries, Inc., 103 B.R. 195, 197 (Bankr. N.D. Ill 1989). For example, in In re Ingersoll, Case Nos. A-B-87-00391 (Bankr. W.D.N.C. 1987), a creditor sought to offset a debt owed by the debtor to the creditor as an individual against a debt that a corporation that was wholly-owned by the creditor owed to the debtors. The Court held that setoff was *not* proper

5

under section 553 of the Bankruptcy Code because of a lack of mutuality between the parties.

Further, Collier's treatise on bankruptcy law provides, "[t]o be mutual, the debts must be in the

same right and between the same parties standing in the same capacity." 4 <u>Collier on</u>

<u>Bankruptcy</u>, ¶ 553.04[2] (15th ed. 1988); <u>see also</u> <u>In re Rinehart</u>, 76 B.R. 746, 750 (Bankr.

D.S.D. 1987).

          10.     The bravado with which the MDEP asserts that, "a state ... is a single

entity for setoff purposes" is not founded in legal reality.  In fact, there is considerable

disagreement amongst courts concerning the issue of whether separate state agencies are the

same entity for purposes of mutuality in setoff.  <u>See</u> <u>e.g.</u>, <u>In re Doctors Hosp. of Hyde Park, Inc.</u>,

337 F.3d 951 (7th Cir. 2003) (discussing the lack of uniformity on the issue of whether separate

state agencies are "one entity" for purpose of mutuality in setoff).

          11.     For example, in <u>In re Lakeside Community Hosp, Inc.</u>, 139 B.R. 886

(Bankr. N.D. Ill 1992), the Illinois Department of Revenue and the Illinois Department of

Employment Security moved to modify the automatic stay so that they could setoff their tax

claims against amounts due a Chapter 11 debtor hospital operator from Illinois Department of

Public Aid for Medicaid reimbursements. <u>See</u> <u>In re Lakeside Community Hospital</u>, 139 B.R.

886, 889-90 (Bankr. N.D. Ill. 1992), <u>aff'd</u> 151 B.R. 887, 891-93 (N.D. Ill. 1993).  The court held

that mutuality requirement for exercising setoff was missing because the state agencies were

separate entities.

          12.     The court in <u>In re Lakeside Community Hospital</u> based its decision on a

comprehensive analysis of the relevant definitions in the Bankruptcy Code.  The court first

examined the definition of "Creditor," and the court noted that the Bankruptcy Code defines

6

"Creditor" as "(A) *entity* that has a claim against the debtor....." 11 U.S.C. § 101(10). The court

next examined the definition of "Entity," which includes " ... *governmental unit....*" Finally, the

court looked to the definition of "Governmental Unit," which means "agency or instrumentality

of ... a State...." 11 U.S.C. § 101(15), (27) (emphasis added). After analyzing these definitions,

the court stated as follows:

> This case involves three different agencies of the State of Illinois.
> The two agencies seeking a setoff here are "creditors" because
> each is an "entity" (i.e., an "agency or instrumentality of ... a
> State") and each entity has a claim against the Debtor. On the
> other hand, the Debtor does not owe anything to the IDPA. But the
> IDPA is a different agency, and therefore a different "entity," than
> the IDR/IDES. Since the IDPA is a different "entity," it is also a
> different "creditor" than the agencies seeking relief here. On this
> literal reading, the mutuality required by section 553 is therefore
> lacking.

13.    The unambiguous definitions of "Creditor," "Entity," and "Governmental

Unit" in the Bankruptcy Code indicate that the MDEP and the MDOR are not the same entity for

purposes of the Bankruptcy Code. Accordingly, the Motion must be denied.

14.    Some cases have held that separate state agencies can be considered a

single entity in limited circumstances. However, no such circumstances are present in this

matter.

15.    The MDEP cites to In re Bison Heating & Equipment, Inc., 177 B.R. 785

(Bankr. W.D.N.Y. 1995) to support its argument that, "a state, such as the Commonwealth, is a

single entity for setoff purposes." In In re Bison Heating & Equipment, Inc., the Western

District of New York found that the Department of Labor and the Department of Taxation and

Finance were a "single entity" for mutuality purposes. However, in reaching this decision, the

court stated that government agencies should be considered separate entities *unless* the two

7

agencies are both subdivisions that have been divided for operational purposes. The court stated

as follows:

> As used in section 106 of the Bankruptcy Code, "governmental
> unit" may certainly refer to subdivisions that are less
> comprehensive than one of the fifty states. Not every office,
> however, is necessarily so distinctive as to constitute a separate
> unit for purposes of this statute. Characterization as a
> governmental unit depends, therefore, upon the scope of a
> subdivision's power and authority. As creatures of the State of
> New York, the Department of Labor and the Department of
> Taxation and Finance possess structures whose identity is defined
> by the state.

The court in In re Bison ultimately found that the two agencies should be considered a "single

entity." However, its decision was based upon its finding that, "Under New York law, the

Department of Labor and the Department of Taxation and Finance function not as sacrosanct

governmental units, but as divisions of a larger entity organized into sub-units for operational

purposes."

16.    There is no known, similar link between the MDEP and the MDOR. The

MDEP has not presented *any* evidence that these two, seemingly-dissimilar agencies, are

divisions of a larger entity organized into sub-units for operational purposes. Instead, the MDEP

has simply argued that any funds paid by MDOR "will be paid by the Treasurer of the

Commonwealth from the Commonwealth's general fund" and any payments made to the MDEP

will also "be deposited into the Commonwealth's general fund." Motion pg. 3, ¶5. The ultimate

source of funds, however, is not the test for determining unity between state agencies.[3] The

---

[3]    If the "same funds" test had been applied in In re Bison, then the above-referenced analysis would have been
superfluous.

8

proper test as articulated in In re Bison is whether the agencies are subdivisions of the same governmental unit. The MDEP has failed to argue any organizational link between the MDEP and the MDOR. Therefore, the MDEP has failed to meet its burden to show that mutuality exists between the MDEP and MDOR for purposes of setoff under section 553.

        **(b)**        **The MDOR's Obligation to the Debtors Will Arise Post-Petition**

        17.      The MDEP Claim may not be setoff against the MDOR Tax Refund because the Debtor's right to payment for the MDOR Tax Refund will "arise" post-petition (when a final settlement agreement has been reached). The Court of Appeals for the Third Circuit has stated, "[i]t is clear ... that a creditor *may not setoff* its *pre-petition claims against a post-petition obligation*." Cooper-Jarret, Inc. v. Central Transport, Inc., 726 F.2d 93, 96 (3d Cir. 1984) (emphasis added). Instead, setoff is only available when both obligations (the debtor's obligation to the creditor and the creditor's obligation to the debtor) arose pre-petition. See In re Ames, 195 F.3d 177, 183 (3d Cir. 1999) (Finding no right to setoff where city's retirement system sought to setoff amounts owed to the system by a debtor pursuant to a pre-petition loan against payments owed by the city to the debtor for her salary because the city, "has no obligation to pay [the debtor's] salary until she performs the services."). To permit otherwise would violate, "the prime bankruptcy policy of equality of distribution among all creditors of the debtor." In re Hughs, 704 F.2d 820, 822 (5th Cir. 1983), quoting H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 178 (1977), reprinted in, 5 U.S. Code Cong. & Admin. News 5787, 6138 (1978). Further, "a debt must be 'absolutely owing' at the time of the debtor's filing to be considered a pre-petition setoff." In re Hankerson, 133 B.R. 711, 717 (Bankr. E.D. Pa. 1991), quoting 4 Collier on Bankruptcy, ¶ 553.10, at 553-51 (15th ed. 1991).

9

18.     There is a lack of judicial unanimity concerning the issue of whether a debtor's right to a tax refund "arises": (i) at the end of the taxable year for which the amount is due or (ii) when the state authorizes payment of the refund (and related interest). See In re Hankerson, 133 B.R. 711, 717 (Bankr. E.D. Pa. 1991) (discussing this lack of unanimity).

19.     Some courts have held the relevant date to determine when a government agency's obligation "arose" (for setoff purposes under section 553) is the date that the refund is authorized by the respective government agency. See, e.g., In re Hankerson, 133 B.R. 711, 717 (Bankr. E.D. Pa. 1991) ("It is not until a taxing authority authorizes a refund that it should be considered to be, in any sense, 'due'."). Under this test, the MDOR Tax Refund was not authorized, and will not "arise," until the MDOR and the Debtors enter into a settlement agreement concerning the Debtors' right to the MDOR Tax Refund. In fact, under this line of cases, until the Debtors enter into the settlement agreement with the MDOR, the MDOR had no legal obligation to make any payments to the Debtors, and the refund cannot be considered "due."

20.     There is also case-law indicating that a tax refund (for purposes of setoff under section 553) arises at the end of the taxable year to which it relates, regardless of when the government agency actually becomes legally obligated to make payment. See, e.g., In re Conti, 50 B.R. 142 (Bankr. E.D. Va. 1985). Courts adopting this rule have justified their decision on the following two basis: (i) the rule creates a bright-line test which is easily applied; and (ii) the rule also prevents a debtor from transforming his right to a tax refund into a post-petition claim (to defeat setoff) merely by filing his tax return or claim for refund after filing the bankruptcy case. See In re Rozel Industries, Inc., 120 B.R. 944 (Bankr. N.D. Il. 1990).

10

DOCS_DE:91890.2

21.     The Debtors believe that the former rule is more appropriate in this

instance and, therefore, the MDOR Tax Refund will "arise" when the Debtors and the MDOR

enter into a settlement agreement concerning the MDOR Tax Refund.  This is the proper

treatment because the reasons underlying the "end of tax year rule" are inapposite in the present

matter.  First, there is no need for a bright-line test in the present instance, as the facts underlying

this Motion are not disputed.  Second, the Debtors have vigorously sought recovery of these

excise taxes since the original amounts were paid in June of 1996 - almost *five years* prior to the

Petition Date.  Accordingly, the Debtors have been fighting to recover this money since before

the Petition Date, and the Debtors did not manipulate the timing of their efforts to deprive the

MDEP of its potential setoff rights.

### (c)     The Debtors Dispute the Amount of the MDEP Claims

22.     The MDEP has filed claims against the Debtors' bankruptcy estates for a

total of $799,418.84.  However, the Debtors do not agree with: (i) the substantive merits or

(ii) asserted amounts of the MDEP Claim.  Accordingly, the Debtors have not allowed the

MDEP Claims, and the Debtors plan to file an objection to the MDEP Claims in the near future.

Assuming, *arguendo*, that the MDEP had otherwise satisfied the requirements for setoff in

section 553, the MDEP could not exercise its setoff rights until this dispute has been resolved.

The Debtors have reviewed all of the claims that were filed against the Debtors' estates pursuant

to the Debtors' claims bar date, have developed an efficient system for objecting to these claims,

and are proceeding to file objections to claims.  Until the discrepancies with the MDEP Claim

have been resolved, the MDEP is not entitled to setoff.

11

WHEREFORE, the Debtors respectfully request that this Court deny the Motion and grant such other and further relief as is just.

Dated: April 9, 2004

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
James W. Kapp III
Samuel L. Blatnick
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES &
WEINTRAUB P.C.

*David W. Carickhoff with permission*
*RDW*

Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:   (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

DOCS_DE:91890.2