# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | : | Chapter 11 |
| | : | |
| W. R. GRACE & COMPANY, | : | Case No. 01-01139 JJF |
| | : | |
| Debtor. | : | |
| | : | |
| TIMOTHY KANE, | : | |
| | : | Related Docket No. 1034 |
| Movant, | : | |
| | : | |
| v. | : | |
| | : | |
| W.R. GRACE & CO., et al., | : | |
| | : | |
| Respondents. | : | |
| | : | |

# DEBTORS' OPPOSITION TO TIMOTHY KANE'S
# MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Dated: November 15, 2001

KIRKLAND & ELLIS
David Bernick
James H.M. Sprayregen
Reed S. Oslan
Janet S. Baer
Scott A. McMillin
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000

PACHULSKI, STANG, ZIEHL,
    YOUNG & JONES P.C.
Laura Davis Jones (Bar No. 2436)
David Carickhoff (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.      The Automatic Stay Is One Of The Fundamental Protections For The Debtor . . . 2

    II.     No Collateral Litigation Should Be Allowed To Proceed . . . . . . . . . . . . . . . . . . . 3

    III.    The Moving Party Has Failed To Show Sufficient Cause To Lift The Stay . . . . . 4

        A.      Substantial Prejudice Would Be Incurred By The Debtor If The Stay Were Lifted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        B.      The Balance Of Hardships Weighs Significantly In Favor Of The Debtors 6

        C.      Mr. Kane Has Little Chance Of Success On The Merits . . . . . . . . . . . . . 7

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## TABLE OF AUTHORITIES

Cases

A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins & Co., Inc.),
      788 F.2d 994 (4th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Borman v. Raymark Industries, Inc.,
      946 F.2d 1031, 1036 (3rd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Continental Airlines, Inc., 152 B.R. 420 (D. Del. 1993) . . . . . . . . . . . . . . . . . . . . . . 2

In re Curtis, 40 B.R. 795 (Bankr. D. Utah 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

In re Micro Design, Inc., 120 B.R. 363 (E.D. Pa. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 6

In re Penn-Dixie Industries, Inc., 6 B.R. 832 (Bankr. S.D.N.Y. 1980) . . . . . . . . . . . . . . . . 4

Midtlantic Nat. Bank v. New Jersey Dept. of Environmental Protection,
      474 U.S. 494 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## INTRODUCTION

The Debtors oppose this effort by plaintiff in one of the thousands of cases pending against Debtors to create an exception in order to allow him to prosecute his case, notwithstanding the stay that is imposed as a result of Debtors' bankruptcy filings. In his motion, Timothy Kane seeks relief from the automatic stay to pursue his claims against Grace for alleged personal injuries suffered when he slipped and fell from a roof allegedly coated with a product manufactured by Grace. (Kane v. Walt Disney World Co., et al., Case No. CI-00-6803 (Cir. Ct. Orange Cty., Florida) ("Kane Action")).

If the Kane Action were allowed to proceed against Grace, the Debtors would suffer substantial prejudice:

- The case would be an immediate burden and distraction to Grace and its employees who would be forced to prepare for and participate in this lawsuit;

- The significant expenditure of time and resources necessary to adequately defend against the Kane Action would divert the attention of Grace's employees from the administration of these Chapter 11 cases during one of the most critical periods of Debtors' reorganization process;

- Allowing the Kane Action to proceed would require Grace to bear the financial burdens of discovery and a full blown trial; and

- An adverse verdict in this case may lead to more claims of like kind.

This case should not be distinguished from the myriad other claims against Debtors and allowed to proceed. It is critical to Debtors' successful reorganization that collateral litigation against Debtors be shut down. Accordingly, Mr. Kane's motion should be denied.

## BACKGROUND

Mr. Kane alleges that in July of 1999, he was erecting scaffolding for roof repairs at Disney's Grand Floridian resort. While walking on an angled portion of the roof, he slipped and fell off the roof, sustaining injuries. Mr. Kane alleges that a Grace roofing membrane

1

product was used on the roof to protect it against water and ice damage, and that this product was unreasonably slippery when wet. In September of 2000, Mr. Kane filed suit against Disney, the roofing contractor and the roof designer for negligence, and against W.R. Grace & Co. – Conn., a debtor in this bankruptcy case, for negligence and strict liability. Although this lawsuit is over a year old, it is not very far advanced. On August 23, 2001, Mr. Kane filed an Amended Complaint, and is now seeking to commence deposition discovery of Grace's employees.

ARGUMENT

**I.    The Automatic Stay Is One Of The Fundamental Protections For The Debtor.**

The automatic stay is one of the most fundamental protections provided to a Debtor under the Bankruptcy Code. See Midtlantic Nat. Bank v. New Jersey Dept. of Environmental Protection, 474 U.S. 494, 503 (1986). Pursuant to section 362(d) of the Bankruptcy Code, a movant must demonstrate sufficient cause to justify the lifting or modification of the automatic stay. Although the Bankruptcy Code does not define what constitutes cause, "courts generally consider the policies underlying the automatic stay [and] . . . the competing interests of the debtor and the movant." In re Continental Airlines, Inc., 152 B.R. 420, 424 (D. Del. 1993). In particular, Delaware courts consider the following three factors in balancing the competing interests of the parties:

(1)    the prejudice that would be suffered by the debtors should the stay be lifted;

(2)    the balance of the hardships facing the parties if the stay is lifted; and

(3)    the probable success on the merits if the stay is lifted.

Continental, 152 B.R. at 424. Here, Mr. Kane has failed to demonstrate sufficient cause to warrant lifting the automatic stay.

2

## II.    No Collateral Litigation Should Be Allowed To Proceed.

As a threshold matter, no collateral litigation against Debtors should be allowed to take place in this case. This is a bankruptcy that is litigation driven. The whole reason why Debtors were forced into bankruptcy was the morass of asbestos litigation. The main challenge of this bankruptcy is to develop a comprehensive litigation plan to deal with these thousands of cases and to develop a plan of reorganization. Allowing collateral litigation such as the Kane Action to proceed is a distraction that prevents Debtors from focusing on their reorganization plans.

Courts have recognized that in mass tort cases, there is a critical need to shut down all collateral litigation in order to allow the Debtors an opportunity to develop comprehensive litigation and reorganization plans.

> The purpose of this section [362] by its various subsections is to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor.

A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins & Co., Inc.), 788 F.2d 994, 998 (4th Cir. 1986). Here, there are literally thousands of cases currently pending against the Debtors. These cases should not be litigated piecemeal in courts across the country; rather, they should all remain stayed for a period of time while Debtors develop a comprehensive litigation plan to deal with them. Allowing the Kane Action to proceed will simply divert Debtors' attention from the task of developing this plan.

III.    **The Moving Party Has Failed To Show Sufficient Cause To Lift The Stay.**

     A.    **Substantial Prejudice Would Be Incurred By The Debtor If The Stay Were Lifted.**

The most important factor in determining whether to grant relief from the automatic stay to allow litigation to proceed against a debtor in another forum, is the effect of such litigation on the administration of the estate. See In re Curtis, 40 B.R. 795, 806 (Bankr. D. Utah 1984); In re Penn-Dixie Industries, Inc., 6 B.R. 832, 836 (Bankr. S.D.N.Y. 1980). If the automatic stay is lifted to allow the litigation of the Kane Action, the Debtors' ability to administer their estates and these Chapter 11 Cases would be severely impacted.

*First*, modifying the automatic stay to allow the Mr. Kane to litigate the Kane Action against Grace would require the time and commitment of numerous employees, including Peter DiGiovanni and Dr. Robert Jenkins who Mr. Kane seeks to depose, as well as Grace's in-house counsel who supervise and monitor the litigation (the "Employees"). Such Employees would be required not only to divert their attention away from these Chapter 11 Cases to assist counsel in preparation of Grace's defense of the Kane Action, but at least two or more of them would most likely be witnesses in the Kane Action. Moreover, because the Kane Action is relatively new, substantial written and deposition discovery remains to be completed. Completing discovery will require substantial time and effort on Grace's part to search for and produce responsive documents, prepare and defend its employee witnesses, and research and draft discovery responses.

*Second*, allowing the Kane Action to proceed would require Grace to bear the financial burdens of discovery and trial. Grace disputes Mr. Kane's allegations and anticipates the need to mount a vigorous defense and conduct discovery relating thereto. In particular, Grace (i) disputes that its roofing product is defective, (ii) disputes whether Mr. Kane's alleged personal

injuries were caused by Grace's roofing product and alleges that Mr. Kane's injuries were caused by his own negligent actions. Allowing the Kane Action to proceed will require the Debtors to introduce fact and expert witness testimony and other evidence in order to defend against Mr. Kane's claims. Thus, continuation of the Kane Action will result in the unnecessary depletion of the Debtors' already limited assets and resources.

*Third*, if the automatic stay is lifted in this one case, it may open the floodgates of other motions to lift the stay. This one lawsuit relates to a roofing product; however, there are tens of thousands of claims pending against Debtors relating to asbestos exposure. Lifting the stay in the Kane Action may well prompt large numbers of asbestos claimants to seek relief from the stay to pursue their claims against Debtors. Were this to happen, Debtors would be put back into the position they were in prior to filing for bankruptcy. Indeed, it was the pendency of these tens of thousands of claims that necessitated Debtors' bankruptcy filing in the first place. Debtors should be given the breathing room provided for by the automatic stay to allow them to develop their litigation plan for dealing with the morass of asbestos litigation.

In an attempt to mitigate this burden, Mr. Kane argues that Grace has insurance coverage in place which covers any potential damages awarded in this lawsuit. First, Mr. Kane has identified no insurance policies that would cover the purported liability in the Kane Action. Second, to the extent that any such insurance policies exist, Grace's insurance policies have coverage limits that once exhausted leave the insured liable for claims. Third, even if insurance defense counsel is defending this action, Grace's Employees will be required to assist counsel in preparing the defense of the litigation and will likely be called as witnesses at trial. Thus, regardless of whether insurance defense counsel represents Grace, allowing the Kane Action to proceed will still divert the attention of Employees away from Debtors' successful reorganization.

Mr. Kane also attempts to mitigate this burden by arguing that he only seeks relief from the automatic stay to engage in "limited discovery." Clearly, the purpose of this discovery is to attempt to build his case against Grace, and therefore, Grace will still be forced to prepare and defend its witnesses. Moreover, if Mr. Kane only intends to engage in limited discovery, then there is no reason to grant relief from the automatic stay. If he only intends to pursue discovery as a prelude to filing a proof of claim in Debtors' bankruptcy cases, then he has no need for this additional discovery. Only if he intends to seek relief from the stay to pursue a state court judgment against Grace would he need this additional discovery. Accordingly, if he seeks to pursue his lawsuit against Grace, his motion should be denied because it is an unwarranted burden on Debtors and their estates; and if he only seeks limited discovery, his motion should be denied because it serves no useful purpose.

**B.    The Balance Of Hardships Weighs Significantly In Favor Of The Debtors.**

The above-described burdens forced upon the Debtors by the continuation of the Kane Action far outweigh any inconvenience encountered by Mr. Kane. Unsecured creditors, such as Mr. Kane, "bear the heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief as against the hardships to the Debtor in denying relief." In re Micro Design, Inc., 120 B.R. 363, 369 (E.D. Pa. 1990) (automatic stay not lifted where it was appropriate for movant to pursue its claim by filing a proof of claim, and participating in the claim process, in the bankruptcy case).

Mr. Kane should not be granted preferential treatment over other general unsecured creditors of Grace. Unwarranted preferential treatment, however, is exactly what Mr. Kane seeks. Instead of receiving his pro rata share of whatever distribution he would be entitled to receive under a plan of reorganization, Mr. Kane seeks to expend the limited resources of the Debtors to the detriment of the Debtors' estates so that he might potentially obtain a judgment

6

against Grace.  The Debtors, their estates, and the Debtors' unsecured creditors should not be

forced to subsidize Mr. Kane's efforts to augment their potential recovery over other unsecured

creditors.  This is exactly the sort of result that the automatic stay was intended to avoid.  See

Borman v. Raymark Industries, Inc., 946 F.2d 1031, 1036 (3rd Cir. 1991).  Further, Mr. Kane can

still proceed with his negligence claims against Disney, the roofing contractor and the roof

designer, and can still seek to recover his purported damages from these other defendants.

Because the Debtors would suffer great hardship if the automatic stay is lifted, and

Mr. Kane would suffer little, if any, hardship if the Motion is denied, this Court should deny the

motion to lift the stay.  Mr. Kane will still have the opportunity to resolve his alleged claim in the

Bankruptcy Court by filing a proof of claim if relief from the automatic stay is not granted.

## C.    Mr. Kane Has Little Chance Of Success On The Merits.

Mr. Kane's motion for relief from the automatic stay should be denied because he

has little chance of success on the merits.  Grace believes that it has a very good chance of

winning at trial on the issues of whether its roofing product was defective, whether the product

caused Mr. Kane's purported injuries and whether Mr. Kane's negligent conduct was the cause of

his injuries.  Moreover, this is the only case currently pending against Grace alleging injuries

from this roofing product.  Accordingly, Grace believes that Mr. Kane has little chance of

success on the merits.

## CONCLUSION

For these reasons, Mr. Kane's motion for relief from the automatic stay should be

denied.


Dated: November 15, 2001          Respectfully submitted,
KIRKLAND & ELLIS
David Bernick
James H.M. Sprayregen
Janet Baer
Scott A. McMillin
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.


Laura Davis Jones (Bar No. 2436)
David Carickhoff (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facimile:   (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

# EXHIBIT D

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al., | ) | Case No.: 01-1139(JJF) |
| | ) | |
| Debtors. | ) | Jointly Administered |

### RESPONSE OF TIMOTHY KANE TO
### DEBTORS' OBJECTION TO TIMOTHY KANE'S
### MOTION TO LIFT AUTOMATIC STAY FOR CAUSE

Respondent, Timothy Kane (hereinafter "Kane" or "Respondent"), hereby files

his Response to Debtors', W.R. Grace & Co., et al. (hereinafter "Debtors"), Objection

to Timothy Kane's Motion to Lift Automatic Stay (hereinafter "Kane's Response"). In

support of Kane's Response, Respondent states as follows:

### BACKGROUND

1.      On June 18, 2002, Kane filed with this Court his Motion of Timothy Kane

for Relief from the Automatic Stay (hereinafter "Motion for Relief From Stay"). The

Motion for Relief From Stay seeks entry of an order lifting the automatic stay so that

Kane may proceed with his state court personal injury action against Debtors. The

Motion also seeks to limit Kane's recovery to the limit of available liability insurance

coverage.

2.      On August 9, 2002, Debtors filed Debtors' Objection to Kane's Motion

for Relief From Stay (hereinafter "Debtors' Objection"). Paragraph 15 of Debtors'

Objection summarizes Debtors' position vis a vis Kane's Motion for Relief From Stay:

> Kane improperly relies on Debtors' insurance coverage to argue
> that the Debtors will suffer no hardship. Any insurance coverage that
> does exist cannot prevent the real harm to Debtors' ability to effectively
> and efficiently develop comprehensive litigation and reorganization plans.

Because the Debtors would have to defend or provide information to its insurers to defend against the effectiveness of one of the Debtors' products, the existence of insurance coverage cannot be a sufficient basis to lift the stay. The Debtors would suffer significant harm from the *distraction* created by having to actively participate in the defense of an action against one of the Debtors' product (emphasis added).

### Kane's Claims Against Debtors are Unique and Separate from Debtors' Asbestos Litigation

3.      Debtors object to Kane's Motion for Relief despite the availability of $10 million dollars in available insurance coverage provided by RSKCo, Debtors' insurer. Debtors' Objection lacks any support for the proposition that relief from stay should not be granted despite the existence of substantial insurance coverage. Instead, Debtors assert that if Kane's Motion was granted, the "Debtors' ability to administer their estates and these chapter 11 cases would be severely impacted." Debtors' Obj. at pgh. 11.

4.      Debtors admit that they were "forced into bankruptcy" due to a "morass of asbestos litigation". Debtors' Obj. at pgh. 7. Furthermore, Debtors' contend that their primary challenge in these cases is to "develop a comprehensive litigation plan to deal with these thousands of cases." *Supra.*

5.      Kane's claim arises out of the alleged defective nature of a roofing underlayment manufactured by Debtors. Kane's claim in no way relates to the "morass of asbestos litigation" which the parties concede is at the core of these bankruptcy cases. To the contrary, the discovery previously permitted by this Court[1] shows that there are no other existing claims against Debtors alleging defectiveness of the same product, nor

---

[1] This Court previously entered an Order lifting the automatic stay in order to allow Kane to take four depositions of Debtor's employees to discover whether Kane's theories of negligence and strict liability against Debtors had merit. A true and correct copy of the Court's Order granting relief from stay for the purposes of depositions is attached hereto as Exhibit "A".

injuries arising under circumstances substantially similar to those involved in Kane's claim.

6.    Kane's injuries arose when he fell from the roof of a hotel due to the slippery surface created by Debtors' underlayment. Kane's claim is quite distinguishable from the asbestos claims. Debtors should not be permitted to hide behind the automatic stay merely because Kane's claim may be categorized as alleging "defective product." Claims alleging "slippery surface materials" did not precipitate Debtors commencing their bankruptcy cases.

7.    Through their Objection, Debtors' contend that the "thousands of cases currently pending against Debtors" should not be "litigated piecemeal", but instead remain stayed while "Debtors develop a comprehensive litigation plan." Debtors Obj. at pgh. 8.

8.    Debtors fail to identify the "comprehensive litigation plan" for which Kane's claim belongs. This omission is due to Debtors' lack of a plan for non-asbestos claims. Instead, Debtors created a "litigation protocol" for resolving asbestos claims. The protocol makes no room for non-asbestos claimants such as Kane. As Debtors concede in their *Supplemental Brief Regarding Procedures for the Litigation of the Common Personal Injury Liability Issues* (hereinafter "Litigation Procedures Brief"), filed with this Court on June 21, 2002, Debtors' litigation protocol requires "disclosure in the claim form of the basic information needed to resolve threshold common issues relating to product identification, product exposure, and the existence of compensable injury." Lit. Proc. Brief at pp. 25. The protocol relates only to issues concerning asbestos, not the products which led to Kane's injury.

9.     Debtors' litigation protocol is intended to resolve "*very specific issues* appropriate for common resolution and *very specific procedures* for addressing those issues"(emphasis added).  *See Debtors' Consolidated Reply in Support of Their Motion For Entry of a Case Management Order* (hereinafter "Case Management Brief"),  filed with this Court on February 12, 2002.

10.     Debtors' Litigation Procedures and Case Management Briefs illustrate Debtors' lack of intent on creating a "comprehensive litigation plan" for claimants such as Kane.  Clearly,  had Debtors intended to make such a plan,  they would refer to it in their Objection.  Instead,  the absence of a plan supports Kane's Motion for Relief as it constitutes the only equitable and efficient resolution of his claim.

## Ample Cause Exists to Lift the Automatic Stay

11.     Whether cause exists to grant relief from stay is not governed by a "rigid test,"  but instead requires courts to consider the policies underlying the automatic stay, as well as the competing interests between the debtor and movant.  *In re: Continental Airlines, Inc.,* 152 B.R. 420, 424 (D.Del. 1993).  In balancing the competing interests, Courts consider three factors:  (1.) the prejudice suffered by the debtor  if the stay were lifted;  (2.) the balance of hardships between the parties;  and, (3.)  the probable success on the merits should the stay be lifted.  *Supra.*

## No Substantial Prejudice Suffered by Debtors

12.     The only prejudice identified by Debtors should this Court grant relief is the potential to "open the floodgates of other motions to lift the stay" prompting a "large number asbestos claimants to seek relief from the stay."  *Debtors' Obj. at pgh. 12..*

Debtors' argument is tenuous at best.  As already stated, Debtors have proposed litigation procedures which "streamline[] the process of adjudicating [asbestos] claims." *Case Mgmt. Brief, pp. 41.*

13.    Instead of seeking relief from the automatic stay, the asbestos claimants, whose interests are represented by a Personal Injury Committee, seek implementation of a claims estimation process for asbestos claims. *See Debtors' Lit. Proc. Brief, pp. 2.*

14.    "Numerous courts have permitted the stay to be lifted when the movant is simply seeking to establish the fact and amount of the debtor's liability, and ... the movant has stipulated that any recovery will be sought from Debtor's insurer or a codefendant." *In re: Peterson,* 116 B.R. 247, 250 (D.Col. 1990);  citing *In re Wheeler Group, Inc.,* 75 B.R. 200, 200 (S.D. Ohio 1987)(most expeditious way to liquidate claim was to permit foreign action to proceed to conclusion); *In re: Elegant Concepts, Ltd.,* (risk that state judgment may exceed insurance coverage insufficient to justify stay).

15.    Debtors' insurer represented to Kane in correspondence dated May 24, 2000 that should Kane establish liability on the part of Debtors, the insurance policy is payable for the benefit of Kane.  Furthermore, Kane has already requested this Court to limit any judgment entered in favor of Kane and against Debtors in state court to the $10 million in coverage available under the RSKCo policy.

### The Balance of Hardships Weighs in Kane's Favor

16.    Debtors contend that "Kane provides no reason why he should be given preferential treatment over literally thousands of individuals asserting claims against the Debtors ..." Debtors' Obj. at pgh. 14.  Debtors also contend the hardships weigh in their

favor due to their obligation to "defend or provide information to its insurers." Debtors' Obj. at pgh. 15.

17.    Debtors' Case Management Brief and Litigation Procedures Brief both illustrate Debtors' lack of an efficient and fair mechanism for the resolution of non-asbestos claims.  Such pleadings show Debtors' preoccupation with asbestos claimants, to the detriment of Kane.

18.    An increase in litigation expenses, by itself, does not justify denial of a request for relief from stay. *In re: Continental Airlines*, 152 B.R. 420, 425 (D.Del. 1993).  Furthermore, whether Debtors' supply the information to its insurer, or provide the information during the claims proceedings in this Court, the information surrounding Debtors' defense of Kane's claim must at some point be provided.  Given this inevitability, supplying such information does not constitute a legitimate hardship.

19.    Should the stay remain, the hardships to Kane are tremendous.  Including Kane in the claims resolution process with the asbestos claimants adds unnecessary time to a matter which may be efficiently resolved in a different forum.  The Creditors' Committee, in supporting Debtors' Case Management Brief, recognizes the "prospect of waiting years for the resolution of these asbestos issues ..." *See Official Committee of Unsecured Creditors' Memorandum in Support of Debtors' Case Management Plan* at pp. 1.

20.    Kane's attorneys are located in Florida.  Kane's injuries arose in Florida and factual witnesses reside in that state.  When faced with movants with similar circumstances, Courts have ruled that the "added expense of transporting the lawsuit to

Delaware is unnecessary." *In re: Rexene Products Co.,* 141 B.R. 574, 576 (D.Del. 1992).

21.     The court in *Rexene* recognized that "cause" for relief from stay may be "'established by a single factor such as the 'desire to permit an action to proceed ... in another tribunal' or 'lack of any connection with or interference with the pending bankruptcy case.'" *Supra;* citing H.R.Rep. No. 95-595, 95th Cong., 1st Sess., 343-344 (1977) U.S.Code Cong. & Admin.News pp. 5787, 6300.

22.     Like the movant in *Rexene,* forcing Kane to begin litigation in Delaware results in far more hardship to Kane than to the Debtors, and would further constitute a waste of judicial resources. *Supra.*, citing *In re: Murray Indus., Inc.,* 121 B.R. 635, 637 (Bankr. M.D.Fla. 1990).

## Kane Has Established Probability of Success on the Merits

23.     As to this third and final prong of the analysis, Debtors merely state that Kane "has not demonstrated, nor can he, any likelihood of success on the merits." Debtors' Obj at pgh. 17. Debtors state nothing more to support this point.

24.     "Even the slightest probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case." *In re: Continental Airlines,* 152 B.R. 420, 426 (D.Del. 1993). *Accord, In re: Peterson, supra.,* at pp. 249 (all that is required in a "success on the merits" analysis is that the movant make more than a "vague initial showing" that it can establish a prima facie case).

25.     During depositions, Debtors admitted that their product becomes extremely slippery when wet. Debtors further admitted that they had reengineered the slip resistance capabilities of the product on several occasions. These admissions create

factual issues of whether Debtors provided warnings regarding the slipperiness of its product, whether Debtors exercised reasonable care in the design of its product, and whether Debtors product was defective as a result of insufficient slip resistance or a failure to provide warnings.

26.    The prior depositions also revealed that Debtors' responses to Kane's discovery in the state court action were incomplete. Kane has discovered that many additional documents exist relevant to the design and testing of Debtors' product. These documents were not provided to Kane in his initial requests.

### Debtors Fail to Meet Their Burden Under 11 U.S.C. § 362(g)  Showing Why the Stay Should Not be Lifted

27.    Section 362(g) of the Bankruptcy Code is generally interpreted as placing the initial burden on the moving party to establish its prima facie case for relief from stay. *In re: Rexene Products Co.,* 141 B.R. 574, 577 (D.Del. 1992). As shown above, Kane has established its prima facie showing of cause to lift the stay. Having done so, Section 362(g)(2) shifts the burden to Debtors "on all other issues."

28.    Debtors have failed to prove why the stay should not be lifted. Debtors support their opposition to Kane's Motion through vague notions that the requested relief would "open the floodgates." Debtors' Obj. at pgh. 12. Kane asserts that he stands alone at Debtors' purported "floodgates" as there are no other claims against Debtors alleging defectiveness in the same product, nor any claims whereby the injuries arose under similar circumstances.

WHEREFORE, Respondent Timothy Kane respectfully requests this Court to over-rule the Debtors' Objection and grant Respondent's Motion for Relief from the Automatic Stay.

FOX ROTHSCHILD O'BRIEN & FRANKEL, LLP

_____

NEAL J. LEVITSKY, ESQUIRE (No. 2092)
L. JASON CORNELL,  ESQUIRE (No. 3821)
824 N. Market Street,  Suite 810
P.O. Box 2323
Wilmington,  DE 19899-2323
(302) 654-7444

-and-

STUART F.COHEN,  ESQUIRE
CONROY, SIMBERG GANON, KREVANS & ABEL
3400 Hollywood Blvd.,  2nd Floor
Hollywood,  FL 33021
(954) 961-1400

Dated:  8/16/02          Attorneys for Timothy Kane

TAB A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| re: | ) | |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 01-01139 (JJF) |
| Debtors. | ) | (Jointly Administered) |
| | ) | Docket No. 1034 |

## ORDER WITH RESPECT TO TIMOTHY KANE'S MOTION FOR RELIEF FROM AUTOMATIC STAY

This case came on for an Omnibus hearing on January 3, 2002 pursuant to the Amended Notice of Agenda of Matters Scheduled for Hearing (Docket No. 1415) and Timothy Kane's Motion for Relief from the Automatic Stay (Docket No. 1034).

After due deliberation and cause appearing therefore, accordingly:

IT IS HEREBY ORDERED that Timothy Kane's Motion for Relief from the Automatic Stay is granted solely to allow depositions to be taken by Kane in the action entitled Kane v. Walt Disney World Co., et al., Case No. C1-00-6803 (Cir. Ct. Orange City, Florida) (the "Kane action") of four previously designated employees of the Debtor, namely:

 a) Robert Wiercinski, Cambridge, MA
 b) Dr. R. F. Jenkins, Cambridge, MA
 c) Keith Bartlett, Cambridge MA
 d) Pete DiGiovani, Cambridge MA

The remainder of the Motion is denied and the Kane action against the Debtors is stayed.

Dated: January 25, 2002

*Judith K. Fitzgerald*
_____
THE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT E



IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

**Re: Docket No. 2234 and 6/17/03 Agenda Item No. 5**

### STIPULATION AND AGREED ORDER BETWEEN THE DEBTORS AND TIMOTHY KANE ALLOWING PARTIAL RELIEF FROM THE AUTOMATIC STAY FOR CERTAIN DISCOVERY

The above-captioned debtors and debtors in possession (collectively, the "Debtors") and Timothy Kane ("Kane") hereby stipulate and agree as follows:

WHEREAS, in September of 2000, Kane filed the action known as <u>Kane v. Walt Disney World Co., et al.</u>, Case No. CI-00-6803 (Cir. Ct. Orange Cty., Florida) (the "Kane Action") against Disney and W. R. Grace & Co.–Conn., among others. On August 23, 2001, Kane filed an Amended Complaint; and

WHEREAS, by a motion filed with this Court on or about October 26, 2001, Kane sought relief from the automatic stay to pursue the Kane Action. At the hearing before this Court on January 3, 2002, the Court granted Kane partial relief from the automatic stay to depose certain employees of the Debtors. The Court granted this partial relief based on the relative lack of involvement of the particular named employees of the Debtors with the chapter 11 cases and the possibility that the depositions would provide information that would dispose of the Kane Action with respect to the Debtors; and

WHEREAS, on or about June 18, 2002, Kane filed a motion once again seeking relief from the automatic stay to pursue the Kane Action (the "Motion"). On or about August 9, 2002

the Debtors filed an objection to the Motion. At the hearing before this Court on September 23, 2002, the Court continued the hearing on the Motion to May 19, 2003. By agreement of the parties, the hearing was further continued to June 17, 2003.

WHEREAS, the undersigned parties now desire to resolve the Motion on the terms and subject to the conditions of this Stipulation and Order.

NOW THEREFORE, it is hereby stipulated and agreed by and between the parties to the Stipulated Order, through their undersigned Counsel, that:

1.    The Debtors and Kane agree that discovery may proceed in the Kane Action, including as it relates to Debtor and Debtor's product, limited to self-adhering roofing underlayments (which is the subject of Kane's lawsuit), subject to that discovery being calculated to lead to the discovery of admissible evidence solely as to the issues presented by Kane's lawsuit.

2.    Except as set forth in paragraph 1, the automatic stay shall remain in effect as it applies to the Kane Action.

3.    The Debtors and Kane also agree that the Kane Action shall not proceed to trial unless or until either (a) the Debtors and Kane reach agreement with respect to further lifting of the stay or (b) the Court enters an order to lift the automatic stay with respect to the Kane Action.

4.    Nothing contained herein shall affect: (a) the rights of the Debtors to object to Kane's bankruptcy claim on any and all grounds that are not inconsistent with any settlement, judgment, or other disposition of the underlying claims or the Bankruptcy Code; (b) the rights of the parties to prosecute or defend the claims asserted by Kane on any and all grounds; and (c) the

rights of the Debtors to receive contribution or indemnification from any other co-defendants, if any.

5.    This Stipulation and Agreed Order shall not be modified or altered, amended or vacated without written consent of all parties hereto.    Any such modification, alteration, amendment or vacation, in whole or part, shall be subject to approval of this Court.

6.    This Stipulation is subject to the approval of this Court, and the terms and provisions of the agreement contained herein shall be void and of no further force and effect if such approval is not granted.

*[Signatures on Following Page]*

Dated:  June 17, 2003

_____
_____
_____
Telephone: _____

Attorney for Timothy Kane

and

KIRKLAND & ELLIS

_____
Janet S. Baer
200 East Randolph Drive
Chicago, IL 60601
Telephone:    (312) 861-2000
Facsimile:    (312) 861-2200

Attorney for the Debtors

SO ORDERED, this ___17___
day of ___June___, 2003

_____
The Honorable Judith K. Fitzgerald
United States Bankruptcy Judge