# EXHIBIT 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| W.R. GRACE & CO., *et al.*,[1] ) | Case No. 01-1139 (JKF) |
| ) | Jointly Administered |
| ) | |
| Debtors. ) | **Hearing Date: May 18, 2004 at 12:00 p.m.** |
| ) | **Re: Docket Nos. 5317 and 5426** |

### REPLY OF MASSACHUSETTS DEPARTMENT OF ENVIRONMENTAL PROTECTION TO DEBTORS' OBJECTION TO THE MOTION OF THE MASSACHUSETTS DEPARTMENT OF ENVIRONMENTAL PROTECTION FOR RELIEF FROM AUTOMATIC STAY AND SETOFF

Debtors filed an objection to the Massachusetts Department of Environmental Protection's (DEP) motion for relief from the automatic stay and setoff based on abrogated case law and irrelevant facts. The following reply of DEP shows why Debtors' objection fails to show that setoff is not proper.

---

[1] The Debtors consist of the following 62 entities: W.R. Grace & Co. (f/k/a Grace Specialty Chemcials, Inc.), W.R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc, Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.) G C Management Inc. (f/k/a Grace Cocoa Management , Inc.), GEC Management Corporation, CN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace  H-G Inc., Grace H-G II Inc., Grace Hotel Service Corporation, Grace International Holdings, Inc., (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.R. Grace Capital Corporation, W.R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International Inc., Kootenai Development Company, L B Realty, Inc., Litigation Managmenet, Inc. (f/k/a GHSC Holding, Inc., Grace JVH Inc., Asbestos Management Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.) MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc.(f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

1

**INTRODUCTION**

1.     Under Massachusetts common law, the Commonwealth has a right to setoff funds owed to a taxpayer, by and through the Massachusetts Department of Revenue (DOR), against funds the taxpayer owes to a different state agency;[2] and, it has done so in the past in a nonbankruptcy context. *See e.g., Alger v. Ganick, O'Brien & Sarin, et al.*, 35 F.Supp.2d 148, 152-53 (1999) (referring, in dicta, to the fact that DOR offset a portion of the taxpayer's tax refund and transferred such funds to the Massachusetts Higher Education Assistance Corporation to cover amounts allegedly owed to MHEAC by the taxpayer). Section 553 of the Bankruptcy Code neither expands nor constricts the common law right of setoff, but rather preserves "whatever right exists outside bankruptcy." *United States v. Maxwell*, 157 F.3d 1009, 1102 (7th Cir. 1998).

2.     Although DEP implements the environmental laws giving rise to Debtors' prepetition environmental liability at issue in DEP's motion, the actual obligation runs "to the

---

[2]It is well-established that a common law right of setoff exists between mutual debtor-creditors, even if one of them is insolvent at the time the right to the setoff is asserted. *Commissioner of Ins. v. Munich American Reinsurance Co.*, 429 Mass. 140, 142 (1999) and, citing *Greene v. Hatch*, 12 Mass. 195, 198 (1815) ("it would have been exceedingly unjust to compel [the creditor] to pay the whole sum, and then receive a small dividend on the very money he had paid"). Obligations must be mutual; that is, the same parties must be in both claims. *Munich American.*, at 142. "[W]here public funds are to be paid to a delinquent taxpayer it is appropriate and in the public interest that, by a set-off procedure, the taxpayer satisfy his outstanding proportionate obligation (to the extent of the available payment) to fund the operation of the government." *Decota v. Town of Stoughton*, 504 N.E.2d 672, 674, 23 Mass. App. Ct. 618, 621 (1987)(allowing the treasurer to withhold money owed to a taxpayer from a judgment resulting from an eminent domain action in the amount of outstanding real estate taxes on a parcel not subject to the taking based on a statutory right of setoff). Because the Massachusetts common law right of setoff derives in part from principles of equity, *In re Saugus General Hosp.*, 689 F.2d 42, 45 (1st Cir. 1983), it must also be applied to advance public interests by requiring satisfaction of outstanding proportionate obligations owed to the government.

Commonwealth," as opposed to DEP. *See e.g.*, M.G.L. c. 21E, § 5. As such, all payments for such liability go to the Commonwealth's general fund, which is the same fund from which the treasurer pays out any tax refunds owed taxpayers, such as the 1986 tax refund owed to Debtors.

3. Whether to lift the automatic stay for purposes of allowing the Commonwealth to effect the requested setoff is within this Court's discretion; however, provided that the movant has not engaged in wrongdoing or other conduct waiving the right of setoff – which it has not – and provided that the requested setoff is not proscribed by the Bankruptcy Code or other law – which it is not – then such discretion should be exercised in favor of setoff. *See,* 5 *Collier on Bankruptcy*, ¶ 553.02[3] (15th ed. revised 2004); *In re Bennett Funding Group, Inc.*, 146 F.3d 136, 139 (2d Cir. 1998) (requiring "'compelling circumstances' to disregard state sanctioned setoff rights"); *In re Hal, Inc.*, 122 F.3d 851, 852 (9th Cir. 1997) ("If a party is generally entitled to setoff in the non-bankruptcy context, it is entitled to one under the Bankruptcy Code").

4. Debtors object to DEP's motion for setoff on three alleged grounds: (i) that because DEP and DOR are separate state agencies, mutuality is lacking; (ii) that the 1986 tax refund may not be setoff against prepetition amounts Debtors owe to the Commonwealth for environmental liability because, they contend, the 1986 tax refund arises postpetition; and (iii) that debtors intend to dispute the amounts of the Commonwealth's environmental claims against them. The first two each rely on a case that is no longer good law even within its own jurisdiction. The third is irrelevant to whether setoff is proper. As such, Debtors' objections are wholly unsupported by law and fail to establish that the requested setoff is not proper.

**ARGUMENT**

I.  **The Legal Authority upon which Debtors Rely to Argue that Mutuality Does Not Exist is Not Good Law, and, in Fact, Under Prevailing Law, Mutuality Exists.**

5.  In reliance on *In re Lakeside Community Hosp., Inc.*, 139 B.R. 886 (Bankr. N.D. Ill. 1992) – which is no longer good law even within its own jurisdiction – Debtors contend that because DEP and DOR are separate state agencies, mutuality required by Section 553 of the Bankruptcy Code is lacking. Obj. at 5-9. Debtors scoff at the DEP's assertion that a state is a single entity for setoff purposes as being "not founded in legal reality" (Obj. at 6), when, in fact, and as explained below, that is the prevailing law. Further, Debtors' contention that "there is considerable disagreement amongst courts concerning the issue of whether separate state agencies are the same entity for purposes of mutuality in set off" is a blatant overstatement that mischaracterizes the current state of the law on this issue.

6.  There is unanimity among courts of the highest levels – including the Supreme Court and all U.S. Courts of Appeals that have reviewed the issue – that the federal government is considered to be a single entity that is entitled to setoff one federal agency's debt to a party against that party's debt to another federal agency. *See Cherry Cotton Mills Inc. v. United States,* 327 U.S. 536, 539-40 (1946)(nonbankruptcy case establishing "unified creditor" theory for federal government agencies); *United States v. Maxwell*, 157 F.3d 1099, 1102 (7th Cir. 1998)("federal courts of appeals [that have reviewed the issue] have applied the same 'single entity' rule in bankruptcy proceedings"); *In re Hal*, 122 F.3d 851, 853 (9th Cir. 1997)(holding that the United States and its agencies are treated as a single entity for purposes of setoff both outside of bankruptcy and by the Bankruptcy Code); *In re Turner*, 84 F.3d 1294, 1296-97 (10th

4

Cir. 1996)(en banc)(allowing setoff of Agricultural Stabilization and Conservation Service payments owed to debtors against debt owed by them to the Small Business Administration); *In re Chateaugay Corp.*, 94 F.3d 772, 778 (2d Cir. 1996)(permitting setoff of amounts owed to the debtor by the IRS against amounts owed by the debtor to Department of Labor). Thus, "[t]he general rule is that the federal government is considered to be a single 'unitary creditor' for setoff purposes. Under the 'unitary creditor' theory, one governmental agency is permitted to offset its claim against a debt owed to the debtor by a different governmental agency." 5 *Collier on Bankruptcy*, ¶ 553.03[3][b][iii] (15th ed. revised 2004).

7. The widely-accepted unitary creditor rule is based on the Supreme Court's decision in *Cherry Cotton Mills, Inc. v. United States,* 327 U.S. 536 (1946). In that nonbankruptcy case, the Supreme Court upheld a setoff in which the General Accounting Office instructed the Treasury Department to direct a tax refund owed to the petitioner to be paid to the Reconstruction Finance Corporation, a separate federal agency, for amounts petitioner owed on a promissory note.

8. There is a small minority of bankruptcy and federal district courts that have ruled inconsistently with *Cherry Cotton Mills*, including the bankruptcy court for the Northern District of Illinois in the case relied upon by Debtors, *In re Lakeside Community Hosp., Inc.*, 139 B.R. 886 (Bankr. N.D. Ill. 1992). What Debtors failed to point out, however, is that *Lakeside Community Hospital* is no longer good law even within its own jurisdiction. The Northern District of Illinois, *itself*, abandoned *Lakeside Community Hospital* after it observed that, in another case involving the same issue, the Seventh Circuit had rejected the *Lakeside Community*

*Hospital* rationale. *In re Doctors Hosp. of Hyde Park, Inc.*, 272 B.R. 677, 683 (Bankr. N.D. Ill. 2002). That court stated as follows:

> The responding parties initially argued that different state agencies should be treated as separate creditors under the definition of "creditor" in the Bankruptcy Code, relying on In re Lakeside Community Hospital, Inc., 139 B.R. 886 (Bankr. N.D. Ill. 1992). However, the Seventh Circuit has held that federal agencies constitute a single entity for purposes of setoff. See *Maxwell*, 157 F.3d at 1102. The Maxwell court . . . noted that federal courts of appeals have applied the "single entity" rule for government agencies in bankruptcy proceedings. It then permitted setoff of a debt owed by one government agency against an amount owed by the debtor to another government agency. Although Maxwell involved the federal government, there is no basis for a different result with respect to the agencies of the State involved in this case. Therefore, the State satisfies the mutuality element of setoff.

*Doctors Hosp. of Hyde Park*, 272 B.R. at 683. Other courts have also recognized the folly of the discredited, minority position articulated by *Lakeside Community Hospital*. *See e.g., Lopes v. United States Dept Housing and Urban Devel.*, 211 B.R. 443 (D. R.I. 1997) ("to the extent that *Lakeside* did hold that federal agencies are separate and distinct entities in bankruptcy, this is a view that has been discredited, and one with which this Court does not agree").

9. Not only did the bankruptcy court for the Northern District of Illinois in *Doctors Hospital* reject *Lakeside Community Hospital* and apply the single creditor theory, but, it went a step further. It extended it from federal government agencies and applied it, in that case, also to state government agencies. *Doctors Hosp. of Hyde Park*, 272 B.R. at 683[3] ("Although *Maxwell*

---

[3] In a subsequent appeal of this case to the Seventh Circuit, *In re Doctors Hosp. of Hyde Park, Inc.*, 337 F.3d 951 (7th Cir. 2003), the Court did not review the mutuality issue addressed below and did not reach whether the *Maxwell* holding should be applied to state agencies, other than noting that there had not yet been "a definitive ruling concerning the status of Illinois state agencies." The state in that case was relying on a statutory, not common law, right of setoff, that it argued sprang from an implied provision to the state Medicaid contract. Therefore, the appeal instead turned on whether the contract had an implied setoff provision or statutory right of setoff.

involved the federal government, <u>there is no basis for a different result with respect to the agencies of the State</u> involved in this case")(emphasis added).

10. State agencies present a wholly analogous situation, and other courts recognizing this have also extended the unified creditor theory to state agencies. *See, In re the Bennett Co., Inc.*, 118 B.R. 564, 565-66 (Bankr. M.D. Tenn. 1990) (holding that debtor's claim against the State of Tennessee for money owed on a contract with debtor, through the Department of General Services, to perform roof repairs on a facility operated by the Department of Mental Health and Mental Retardation, and the State's claim against debtor for unpaid employment taxes collected by the Department of Employment Security were mutual); *Wallach v. New York (In re Bison Heating & Equipment, Inc.)*, 177 B.R. 785 (Bankr. W.D. N.Y. 1995) (state agencies as creatures of the state are a single entity capable of holding mutual credits and debts).

11. Under the *Cherry Cotton Mills* legal analysis, the notion asserted by Debtors that the dissimilarity of the state agencies is an obstacle to mutuality simply misses the point and cannot stand.

12. Payments made to satisfy environmental liability go to the Commonwealth's general fund, which is the same fund from which the treasurer pays tax refunds. Debtors dismiss these facts as being the wrong "test" for mutuality. Obj. at 8. However, under *Cherry Cotton Mills*, these facts are key. Among the factors that the Supreme Court considered in *Cherry Cotton Mills* were the facts that all of RFC's money came from the government, all of its profits went to the government, and all of its losses were borne by the federal government. *Cherry Cotton Mills*, 327 U.S. at 539. Therefore, the fact that the payments and debts at issue here will

all come in and go out of the Commonwealth's general fund is relevant and supports the proposition that a state is, indeed, a single entity for setoff purposes.

**II.    The Legal Authority upon which Debtors Rely to Argue that the 1986 Tax Refund arose Postpetition is Not Good Law; and, in Fact, under Prevailing Law, the 1986 Tax Refund Arose at the End of the 1986 Tax Year, which makes it a Prepetition Obligation.**

13.    Debtors argue that the 1986 tax refund at issue here is a postpetition obligation in an attempt to shoe-horn the facts of this case into the rule that a creditor may not setoff its pre-petition claims against a post-petition obligation. *See* Obj. at 9. In reliance on *In re Hankerson*, 133 B.R. 711 (Bankr. E.D. Pa. 1991) – which is no longer good law – Debtors' assert that the 1986 tax refund should be deemed to arise not at the end of the relevant taxable year, but rather when payment of the tax refund is authorized. Obj. at 10 (also noting "a lack of judicial unanimity" on this issue).

14.    After being reversed several times on this issue, (*See In re Glenn*, 198 B.R. 106 (Bankr. E.D. Pa. 1996), *rev'd*, 207 B.R. 418 (E.D. Pa. 1997); and *In re Hankerson*, 133 B.R. 711 (Bankr. E.D. Pa. 1991), *rev'd on other ground sub nom. Pettis v. United States Dep't of Education*, 146 B.R. 653 (E.D. Pa. 1992); and *Hankerson v. United States Dep't of Education*, 138 B.R. 473 (E.D. Pa. 1992)), the Eastern District of Pennsylvania abandoned the position it articulated in *Hankerson* – upon which Debtors' rely – stating:

> [T]hese reversals convince us that another ruling in favor of a similarly situated debtor would be unwise . . . .
>
> In both *Glenn I*, . . . and *Hankerson*, . . . we held that the IRS's indebtednesses in connection with the respective refunds arose when the IRS authorized the overassessments representing the refunds. However on appeal, *Glenn II* expressly rejects this reasoning . . . . While acknowledging that we are not bound by *Glenn II* . . . or any of the other above-cited decisions, we are compelled to recognize that the *Glenn II* decision must be accorded 'a considerable degree of deference'

> by us. . . . <u>It appears to us to be injudicious, given our status as a trial court, to cling to a statutory interpretation which the court which reviews our decisions, as well as almost every other court considering the question, has been unable to accept</u>. We therefore decide that we are best advised <u>to abandon our *Hankerson* and *Glenn I* decisions on this point</u>.

*In re Burton*, 1998 Bankr. Lexis 302, *2-8 (Bankr. E.D. Pa. 1998) (citations omitted) (emphasis added). "The general rule is that a tax refund relates back to the year in which the relevant taxes used to calculate the refund were paid, and that the refund constitutes a prepetition debt for setoff purposes if the relevant year in which the taxes were paid is prepetition, regardless of whether the refund was not technically owing until after the commencement of the debtor's case or whether the debtor claims the refund as a credit on its postpetition tax return." 5 *Collier on Bankruptcy*, ¶ 553.03[2][b][i] (15th ed. revised 2004) (footnotes and citations omitted).

15.     Thus, any lack of unanimity has effectively been resolved in favor of the proposition that the indebtedness of the IRS for a tax refund arises at the end of the relevant tax year. *See* 5 *Collier on Bankruptcy*, ¶ 553.03[2][b][i] (15th ed. revised 2004); 15 *Collier on Bankruptcy*, ¶ TX5.08[6][b] & nn.30, 31 (15th ed. revised 2004)("tax refunds accrue as of the end of the taxable year").

### III.    Debtors' Intent to Dispute the Amount of DEP's Claims of Environmental Liability Is Irrelevant to Whether this Court Should Authorize the Right to Effect Setoff.

16.     Debtors assert that because they intend to dispute the amount owed to the Commonwealth for environmental liability that this Court should deny the DEP's Motion. Obj. at 11. However, "[a] claim is not disabled from setoff simply because it is disputed." *See* 5 *Collier on Bankruptcy*, ¶ 553.03[1][e] (15th ed. revised 2004). Rather, it is clear that Section 553 preserves a right of setoff even while a claimed obligation remains unliquidated and contingent.

9

*See* 5 *Collier on Bankruptcy*, ¶¶ 553.03[1][f] and [h] & accompanying nn.(15th ed. revised 2004).

      17.     The DEP seeks a ruling that it is entitled to setoff the prepetition 1986 tax refund it owes Debtors against the prepetition environmental liability that Debtors owe the Commonwealth. The Motion sets out the prepetition environmental liability as documented in the DEP's proofs of claims. The fact that such claims may be subject to an upcoming challenge does not defeat (and, in fact, is irrelevant to) the existence of a right to setoff and this Court's ability to lift the stay so that the Commonwealth may effect such setoff. If and when Debtors successfully challenge such claims, however, then the amount of the setoff may be adjusted accordingly.

      Based on the foregoing, the DEP respectfully requests that the Court grant its motion.

               Respectfully submitted,

               MASSACHUSETTS DEPARTMENT OF
               ENVIRONMENTAL PROTECTION

               By its attorney,

               THOMAS F. REILLY
               ATTORNEY GENERAL

                 /s/ Carol Iancu
               By: Carol Iancu, Mass. BBO # 635626
               Assistant Attorney General
               Massachusetts Office of the Attorney General
               Environmental Protection Division
               200 Portland Street, 3rd Floor
               Boston, MA 02114
               (617) 727-2200, ext. 3363

Date: April 23, 2004