# EXHIBIT 1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**REPLY OF DEBTORS IN FURTHER SUPPORT OF THEIR APPLICATION
PURSUANT TO 11 U.S.C. §§ 105, 327 AND 524(g)(4)(B)(i) FOR THE APPOINTMENT
OF A LEGAL REPRESENTATIVE FOR FUTURE ASBESTOS CLAIMANTS**

The Debtors file this reply in further support of their Application to Appoint a

Futures Representative. *First*, the correct standard for determining whether a candidate is

precluded from serving as the Futures Representative in these bankruptcy cases is if he/she is

"actually interested," as defined in section 101(14) of the Bankruptcy Code, not an "appearance"

of interestedness, as certain parties have suggested. And, even if the correct standard was an

"appearance" of interestedness, each of the proposed candidates satisfies this requirement.

*Second*, certain constituencies have incorrectly asserted that the Office of the United States

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Trustee (the "UST") should be given the authority to nominate and appoint the Futures Representative. This proposal is legally unfounded. The UST lacks the statutory authority to appoint the Futures Representative, and the UST has formally acknowledged this fact. Further, this proposal is not desirable because it: (i) would deprive the Court of its statutory power under section 524(g) to appoint the futures representative; (ii) would deprive the Debtors of their statutory right under section 327(a) to nominate the candidate; (iii) is unprecedented; (iv) would unduly delay these bankruptcy cases; and (v) is inconsistent with this Court's directives during the March omnibus hearing, where the Court directed the *Debtors* to file an application for the appointment of the Futures Representative.

Therefore, this Court should appoint one of the Candidates (as defined herein) to serve as the Futures Representative in these bankruptcy cases. The Debtors believe that all of the Candidates are qualified to serve as Futures Representative and meet the appropriate conflict standard. However, in an effort to address the concerns expressed in the responses, the Debtors believe that David T. Austern is uniquely suited to serve as Futures Representative and, therefore, the Debtors request that this Court enter an order approving his appointment. Mr. Austern possesses the requisite formal education and practical experience to competently serve as an unbiased advocate for the interests of future claimants. He is also the only Candidate that is not presently serving as the futures representative in another, unconfirmed bankruptcy case. Therefore, Mr. Austern has ample time to devote to these bankruptcy cases and, to the extent that concurrently serving as the futures representative in two bankruptcy cases creates an issue, he is the only proposed candidate that does not suffer from this infirmity.

**Facts and Background**

1.      On April 19, 2004, the Debtors filed the Application of Debtors Pursuant
to 11 U.S.C. §§ 105, 327 and 524(g)(4)(B)(i), for the appointment of a Legal Representative for
Future Asbestos Claimants (the "Motion"). The Debtors state in the Motion that: (i) they had
conferred with each of the official committees appointed in these bankruptcy cases and (ii) based
upon such dialogue, it was clear that there was no consensus support for any single applicant.
Accordingly, the Motion requests this Court to appoint one of the following individuals as
Futures Representative in these bankruptcy cases: (i) Mr. David T. Austern, (ii) Professor Eric D.
Green, or (iii) Mr. Dean M. Trafelet (collectively, the "Candidates").

2.      On May 7, 2004 responses were filed to the Motion by six parties: (i) the
Official Committee of Equity Security Holders (the "Equity Committee"), (ii) the Official
Committee of Unsecured Creditors (the "Creditors Committee"), (iii) certain underwriters at
Lloyd's, London and certain London Market Companies (the "London Insurers"), (iv) the
Asbestos Personal Injury Claimants (the "PI Committee"), (v) the Official Committee of
Asbestos Property Damage Claimants (the "PD Committee"), and (vi) Federal Insurance
Company and Royal SunAlliance (the "Certain Insurers") (collectively, the "Responses").

a.      The Equity Committee and the Creditors Committee support the
appointment of David T. Austern because (unlike Professor Green and Mr. Trafelet) he does not
currently serve as the futures representative in any other active chapter 11 case that does not have
a confirmed plan of reorganization.

b.      The London Insurers assert that the Futures Representative is not a
professional under section 327 of the Bankruptcy Code.  They argue that the Futures

Representative is a "legal representative," that must be appointed using prevailing standards for such a role. Applying that standard, the London Insurers support David Austern as Futures Representative.

           c.      The PI Committee expresses its support for the appointment of either Eric D. Green or Dean M. Trafalet.

           d.      That leaves the PD Committee and the Certain Insurers. Rather than supporting one of the Candidates, the PD Committee argues that a candidate should be appointed that is not currently serving, and has never served, as a futures representative in any bankruptcy case. The Certain Insurers argue that (i) the UST should be given responsibility for appointing the Futures Representative and (ii) the appointment of Professor Green would create an "impermissible appearance of impropriety" due to his role in several other active asbestos cases.

           3.      On May 14, 2004, the UST filed a statement of its position regarding the Motion. The UST does not object to the appointment of any of the Candidates suggested by the Debtors as Futures Representative and states affirmatively that all of the Candidates are acceptable to the UST. Further, the UST states that it does not have the statutory authority to appoint the Futures Representative, and it formally declines the invitation to appoint the Futures Representative in these bankruptcy cases.

## Argument

**A.      The Futures Representative Must be "Actually Disinterested" and, In Any Event, There is no Appearance of "Interestedness" On the Part of Any of the Candidates**

4.      In order to obtain a channeling injunction under section 524(g) of the

Bankruptcy Code, the Court must, "appoint a legal representative for the purpose of protecting

the rights of persons that might subsequently assert (asbestos-related) demands of such kind." 11

U.S.C §524(g)(4)(B)(i).  Section 524(g), however, does not articulate a specific process for

appointing a futures representative and, more specifically, it fails to establish standards for

determining who may serve as a futures representative.  Therefore, courts typically rely upon

their equitable powers under section 105(a) to appoint a futures representative as a professional

pursuant to section 327 of the Bankruptcy Code.  In fact, the futures representatives in several

similar cases were appointed pursuant to sections 105, 327 and 524(g)(B)(i).  See, e.g., In re

Owens Corning, et al., Case No. 00-0387 (JKF) (Bankr. D.Del.), In re USG Corporation, el al.,

Case No. 01-2094 (RJN) (Bankr. D.Del.), In re Kaiser Aluminum Corp., Case No. 02-10429

(JKF) (Bankr. D.Del.).[2]

5.      None of the Responses have cited any post-524(g) case-law to support the

assertion that a futures representative is not a "professional" under section 327 of the Bankruptcy

Code.[3]  The standard in section 327 is one of "actual" interestedness.  Specifically, section 327(a)

---

[2]  See In re Owens Corning, et al., Case No. 00-0387 (JKF), Agreed-Upon Order Appointing Legal Representative for Future Claimants (Bankr. D.Del. Sept. 28, 2001) (appointing James J. McMonagle pursuant to sections 105(a), 327, and 524(g) as the representative for future claimants); In re USG Corporation, el al., Case No. 01-2094 (RJN), Order Appointing Dean M. Trafalet as Legal Representative for Future Claimants, Nunc Pro Tunc to June 6, 2002 (Bankr. D.Del. July 7, 2002); In re Kaiser Aluminum Corp., Case No. 02-10429 (JKF), Order Appointing Martin J. Murphy as Legal Representative for Future Claimants, Nunc Pro Tunc to December 19, 2002 (Bankr. D.Del. January 27, 2003)

[3]  For example, the Certain Insurers cite (i) In re Amatex Corp., 755 F.2d 1034 (3d. Cir. 1985), (ii) In re Johns-Manville Corp., 52 B.R. 940 (S.D.N.Y. 1985), and (iii) Eagle-Pitcher Indus., 144 B.R. 69, 71 (Bankr. S.D. Ohio 1992) in support of their

states, "Except as otherwise provided in this section, the trustee,[4] with the court's approval, may

employ one or more attorneys, accountants, appraisers, auctioneers, or other professional

persons, that do not *hold or represent an interest adverse to the estate, and that are disinterested*

*persons*, to represent or assist the trustee in carrying out the trustee's duties under this title." 11

U.S.C. §327(a) (emphasis added).  As the Certain Insurers correctly state in their response, "[t]he

Third Circuit forbids the court to disqualify such professional based on the appearance of

conflict, and thus mandates extensive deference to the choice made by the trustee or debtor-in-

possession.  See In re Pillowtex, Inc., 304 F.3d 246, 251 (3d Cir. 2002); In re Marvel Entm't

Group, Inc., 140 F.3d 463, 476 (3d Cir. 1988)."  The Response of the Certain Insurers at pg. 32.

Section 327 of the Bankruptcy Code does not speak of "perceived interestedness" and, therefore,

the Futures Representative must be *actually disinterested* and not hold an *actual adverse-*

*interest*.

      6.     In other cases, courts have relied solely upon their statutory powers in

section 105(a) and 524(g) to appoint the representative for future claimants.  See, e.g., In re

Armstrong World Indus., Case No. 00-447 (RJN) (Bankr. D.Del.), In re The Babcock & Wilcox

Co., Case No. 00-10992 (E.D. La.), In re Federal-Mogul, Inc., Case No. 01-10578 (Bankr.

D.Del.), In re Combustion Engineering, Inc., Case No. 03-10495 (Bankr. D.Del.).[5]  These courts

---

argument that a futures representative is a "guardian ad litem", and not a section 327 "professional."  See CI Response at pg. 33. However, each of these cases was decided before the enactment of section 524(g) and , in each case, the debtors had specifically moved for the appointment of a "guardian ad litem" under section 105. Therefore, it is not surprising that the respective courts would refer to the futures representatives in these cases in such a manner.

[4] The Debtors are operating as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code. Accordingly, they have the same powers as the trustee.

[5] See In re Armstrong World Indus., Case No. 00-4471 (RJN), Order Appointing Legal Representative for Future Claimants (Bankr. D.Del. March 1, 2002) (appointing Dean Trafelet as the representative for future claimants); In re The Babcock & Wilcox Co., Case No. 00-10992, Order Approving and Authorizing the Appointment of Eric D. Green, Esq. As the Legal

still adopted an "actual disinterestedness" standard as defined in section 101(14) of the Bankruptcy Code.[6] Further, the courts in these cases did not deny the appointment of a candidate for futures representative because the candidate had served (or was serving) as the futures representative in other bankruptcy cases.

7.    Each of the Candidates is "actually disinterested" and qualifies to be appointed as the Futures Representative in these cases under sections 105, 327(a), and 524(g) of the Bankruptcy Code. Further, even if this Court adopts an "appearance of interestedness" standard, each of the Candidates would still satisfy that level of independence.

8.    No one has suggested that any of the Candidates has an actual or apparent interest. All that has been alleged is that each of the Candidates has served, or is serving, as the futures representative in another bankruptcy case.

9.    The fact that a Candidate has served (or is serving) as the futures representative in another bankruptcy case does not create an actual or perceived conflict for any of the Candidates. The Futures Representative will act as the "voice, negotiator and litigant on behalf of [the] future claimants" in these bankruptcy cases. See Mass Tort Litigation and Bankruptcy, 2003 Third Circuit Judicial Conference, November 10, 2003, available at: http://www.ca3.uscourts.gov/conf2003/3rdCircuit.manuscript.pdf. Accordingly, the Futures Representative will be obligated to zealously advocate and pursue the interests of the future

---

Representative for Future Asbestos-Related Claimants (E.D. La. October 4, 2000); In re Federal-Mogul, Inc., Case No. 01-10578 (AMW), Order Appointing Legal Representative for Future Claimants (Bankr. D.Del. February 11, 2001); In re Combustion Engineering, Inc., Case No. 03-10495 (JFK), Order Appointing Interim Future Claimants' Representative (Bankr. D.Del. March 17, 2003).

[6] Section 101(14)(e) of the Bankruptcy Code states, "does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders..."

claimants by trying to enlarge the value of the assets that are contributed by the particular debtor to the 524(g) trust for the benefit of future, unknown claimants of the particular debtor. The fact that a Candidate is serving as the futures representative in another bankruptcy case will not create any disincentive for that Candidate to seek the greatest recovery (on behalf of the future claimants) in these bankruptcy cases. Further, if the presence of potential overlapping-claimants was the standard for determining disinterestedness, then plaintiffs' lawyers would not be able to represent claimants in multiple bankruptcy cases. Such a result is clearly not contemplated by the Bankruptcy Code.

            10.    Similarly, it is improper to believe that the Futures Representative will be biased towards the interests of the party (or parties) who support his/her appointment. First, if this was the case, then the futures representative in every bankruptcy case would be biased towards the interest of the debtors. The Debtors are solely responsible for compensating the futures representative, and if the Futures Representative were to act with an institutional bias, they would be more likely to be biased towards the metaphorical "hand that feeds them" then "the hand that used to feed them." Second, due to the Candidates' respective experience and education, the Candidates are each "repeat players" in the world of asbestos bankruptcies. If the Futures Representative exhibited any such bias or tendencies, then he would not be appointed in subsequent cases because parties in-interest in the subsequent cases would object to the appointment based upon past, biased conduct. Finally, if the Futures Representative did exhibit any such tendencies in these bankruptcy cases, then any party in-interest could seek his removal. Therefore, the Futures Representative has ample incentive to disregard the interests of the party that suggested or supported his/her appointment.

11.     In summary, the proper standard for this Court to apply when determining

whether the Candidates are qualified to serve as Futures Representative is one of "actual

disinterestedness" and not "perceived disinterestedness." All three of the Candidates satisfy this

standard, and Mr. Austern goes even further because he is not currently serving as the futures

representative in any other bankruptcy cases.

**B.**     **It Would be Inappropriate for this Court to Assign the Debtors' Nomination Power
or this Court's Approval Authority to the UST**

12.     The UST does not have the statutory authority to appoint the Futures

Representative. In fact, the UST, has formally declined this invitation because it acknowledges

that it lacks the statutory authority to appoint the Futures Representative. See UST Statement pg.

3, ¶7.

13.     The UST *oversees the administration* of the bankruptcy laws on behalf of

the Attorney General of the United States. See 28 U.S.C. section 586 (attached hereto as Exhibit

A). The UST does not resolve disputes among parties. See id. For example, the UST's

recognized duties include (i) selecting and supervising the panel of case trustees, (ii) monitoring

the progress of chapter 11 reorganization cases, (ii) monitoring applications for compensation,

and (iii) notifying the United States Attorney of suspected bankruptcy crimes. See id. Section

586(a) does not indicate any statutory predicate upon which this Court could base an assignment

of its authority to appoint the Futures Representative to the UST. Nonetheless, Certain Insurers

and the PD Committee have asked this Court to abandon its authority (and obligation) to resolve

this disputed issue and assign such authority to the UST. 28 U.S.C. section 586 was meant to

grant the UST with authority to *ensure* speedy and fair proceedings; the UST does not *conduct* speedy and fair proceedings.

14.     Second, the Bankruptcy Code provides (i) this Court the exclusive right to appoint the Futures Representative pursuant to section 524(g) of the Bankruptcy Code and (ii) the Debtors the exclusive right to nominate professionals pursuant to section 327(a).  If this Court bestowed the UST with the right to independently appoint the Futures Representative, it would (i) abandon its appointment authority and (ii) deprive the Debtors of their statutory nomination-rights.

15.     Further, it is unprecedented for the UST to appoint a 524(g) futures representative.  The constituencies supporting this process have not cited any cases where the court implemented such an approach[7], and the Debtors have not bee able to locate any case where the United States Trustee was entrusted with this role.

16.     This proposal is also inconsistent with this Court's directives during the March omnibus hearing, where the Court directed the Debtors to file a motion requesting appointment of a Futures Representative.

## C.     Mr. Austern is Best-Suited to Serve as Futures Representative

17.     The Futures Representative should possess practical experience serving as the futures representative in similar cases.  While a "fresh face" may have certain benefits, the risks associated with such an appointment are numerous and far exceed any such benefits.

---

[7] For example, the Certain Insurers cites to a law review article to support its article that the UST "should" be the party that appoints futures representatives.  See Response of Certain Insurers at pg. 37.  However enlightened the views expressed in that article may be, they merely represent one commentator's normative opinions.  Those views do not represent the current status of bankruptcy law in the United States.

Therefore, this court should (i) appoint the Futures Representative from among the Candidates; and (ii) appoint Mr. Austern because he is the best-suited Candidate.

18.     It would be more efficient, expeditious, and fair to appoint as the Futures Representative a person with previous experience in such a role. It would take a great deal of time to bring a novice "up to speed" with regards to the substantive laws and medical issues concerning asbestos-related diseases and other matters affecting the future claimant' interests. The Futures Representative must possess such knowledge before he/she can zealously advocate the interests of future asbestos claimants. This Court has indicated that it would like to see quicker progress with the development of a reorganization plan in the chapter 11 cases. Appointing a novice would delay and impede such progress. Second, it will take a great deal of money to educate any novice candidate because the "asbestos field" is highly-technical and involves a combination of both medicine and law. The Debtors will bear the entire burden for compensating the Futures Representative. In the interests of preserving the estate, the Debtors prefer to leverage off of the past experience of the Candidates. Finally, there is an inherent risk that any "new face" will not be a competent futures representative. Each of the candidates have already demonstrated their respective ability to competently serve as a futures representative. Therefore, this Court should pick the Futures Representative from amongst the Candidates.

19.     It is clear from the responses that Mr. Austern is the best-suited candidate in these cases. First, Mr. Austern is the only candidate that is not presently a Futures representative in any of the active asbestos chapter 11 cases pending in this jurisdiction or

11

otherwise.[8] Thus, Mr. Austern may be the most-appropriate Candidate with the most available-time to devote to serving as the Futures Representative. Further, to the extent the Court feels that an issue exists when an individual simultaneously serves as the futures representative in two cases, such a conflict is not present with respect to Mr. Austern. Second, Mr. Austern is the only Candidate that has the support of more than one of the constituencies affected by these bankruptcy cases. The Equity Committee and the Unsecured Creditors Committee each "strongly support" Mr. Austern. The London Insurers also expressed support for Mr. Austern. And, the Debtors support Mr. Austern. The PI Committee has stated no basis for opposing Mr. Austern other than the fact that he is not Professor Green. The PD Committee's objection is that Mr. Austern has served as a futures representative before, which represents a preposterous reason to oppose an otherwise-qualified candidate.

---

[8] Mr. Austern presently serves as the Futures representative in In re Combustion Engineering, Inc. Mr. Austern's role in that case, however, is essentially completed, as the Chapter 11 Plan has been confirmed, and the court has already determined the share of the estate that will be set-aside for future claimants. Mr. Austern is not actively involved in service as a Futures Representative in any other Chapter 11 Cases at the present time.

WHEREFORE, for all of the foregoing reasons, the Debtors submit that

the Court is empowered to appoint the Futures Representative pursuant to sections

105(a), 327(a) and 524(g) of the Bankruptcy Code, and the Debtors request that the Court

enter an order appointing Mr. Austern to serve as the Futures Representative in

accordance with the terms and conditions set forth in the Motion; and grant such further

relief as is just and proper.

Dated:  May 18, 2004

KIRKLAND & ELLIS
David M. Bernick, P.C.
Janet S. Baer
James W. Kapp III
Samuel L. Blatnick
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES
& WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
David Carickhoff (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and Debtors in
Possession

## **Exhibit A**

The Statutory Basis for the UST

**Sec. 586. - Duties; supervision by Attorney General**

(a) Each United States trustee, within the region for which such United States trustee is appointed, shall -

(1) establish, maintain, and supervise a panel of private trustees that are eligible and available to serve as trustees in cases under chapter 7 of title 11;

(2) serve as and perform the duties of a trustee in a case under title 11 when required under title 11 to serve as trustee in such a case;

(3) supervise the administration of cases and trustees in cases under chapter 7, 11, 12 or 13 of title 11 by, whenever the United States trustee considers it to be appropriate -

(A) (i) reviewing, in accordance with procedural guidelines adopted by the Executive Office of the United States Trustee (which guidelines shall be applied uniformly by the United States trustee except when circumstances warrant different treatment), applications filed for compensation and reimbursement under section 330 of title 11; and

(ii) filing with the court comments with respect to such application and, if the United States Trustee considers it to be appropriate, objections to such application.

(B) monitoring plans and disclosure statements filed in cases under chapter 11 of title 11 and filing with the court, in connection with hearings under sections 1125 and 1128 of such title, comments with respect to such plans and disclosure statements;

(C) monitoring plans filed under chapters 12 and 13 of title 11 and filing with the court, in connection with hearings under sections 1224, 1229, 1324, and 1329 of such title, comments with respect to such plans;

(D) taking such action as the United States trustee deems to be appropriate to ensure that all reports, schedules, and fees required to be filed under title 11 and this title by the debtor are properly and timely filed;

(E) monitoring creditors' committees appointed under title 11;

**(F)** notifying the appropriate United States attorney of matters which relate to the occurrence of any action which may constitute a crime under the laws of the United States and, on the request of the United States attorney, assisting the United States attorney in carrying out prosecutions based on such action;

**(G)** monitoring the progress of cases under title 11 and taking such actions as the United States trustee deems to be appropriate to prevent undue delay in such progress; and

**(H)** monitoring applications filed under section 327 of title 11 and, whenever the United States trustee deems it to be appropriate, filing with the court comments with respect to the approval of such applications;

**(4)** deposit or invest under section 345 of title 11 money received as trustee in cases under title 11;

**(5)** perform the duties prescribed for the United States trustee under title 11 and this title, and such duties consistent with title 11 and this title as the Attorney General may prescribe; and

**(6)** make such reports as the Attorney General directs.