IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

Hearing Date: June 21, 2004 at 12:00 p.m.
Responses Due: June 4, 2004 at 4:00 p.m.

### APPLICATION OF THE DEBTORS FOR THE ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C., AS A PROFESSIONAL EMPLOYED BY THE ESTATE FOR THE DEBTORS

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby submit this application (the "Application") for the entry of an order pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (as amended, the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure 2014 and 2016, authorizing and approving the retention of Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. ("Baker") as a

---

[1] The Debtors consist of the following 62 entities: W.R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W.R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food =N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.R. Grace Capital Corporation, W.R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

1

professional employed by the estate for the Debtors and in support thereof, the Debtors respectfully represent as follows:

## Jurisdiction

1. This Court has jurisdiction to entertain this application pursuant to 28 U.S.C. §§ 157 and 1334.

2. The statutory bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016.

## Background

3. On April 2, 2001 each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

## Relief Requested

4. The Debtors respectfully request the entry of an order pursuant to sections 327(a) and 328(a) of the Bankruptcy Code authorizing them to employ and retain Baker as a professional employed by the estate to perform certain lobbying representation the Debtors will require during the course of these Chapter 11 Cases. Specifically, and as more particularly described below, the Debtors seek authorization for Baker, their longtime legislative advisors with respect to matters of current, pending, and future legislation, to advise the Debtors' senior management, corporate counsel, and the Debtors' Board of Directors with respect to the policy

and legislative affairs affecting the Debtors business. A proposed order is attached to this Motion as Exhibit A.

### Basis For Relief Requested

5.    The Debtors have selected Baker as a professional employed by the estate to advise them in connection with all matters relating to legislation affecting the Debtors' business affairs, because of Baker's longstanding representation of the Debtors in such matters. In addition, because of its longstanding representation, Baker has intimate knowledge of the legislative affairs relating to the Debtors' business enterprises in addition to its extensive experience and expertise in the fields of public policy.

6.    Since January 1, 2001, Baker and certain of its policy advisors have rendered legal services to the Debtors in connection with various legislative matters. Further, Baker has assisted the Debtors in responding to legislation with respect to the Debtors' business. James D. Range, one of Baker's senior public policy advisors, has also represented the Debtors since January 1, 2001, on the very matters for which Baker is to be retained herein. [2]

7.    As a consequence of Baker's continued representation of the Debtors, Baker is intimately familiar with the complex legislative affairs that have arisen and are likely to arise.

---

[2] Baker has continuously provided legal services to the Debtors regarding substantive legislative matters prior to and during the administration of the Chapter 11 Cases. Baker files the instant application due to the fact that the aggregate limit on payments to ordinary course professionals has or will exceed the maximum amount allowed under the prior arrangements approved by this Court. Baker seeks approval of its employment in accordance with the guidelines established by this Court requiring that any firm exceeding a certain amount of fees can no longer be considered an "ordinary course" expense unless court approval is obtained.

8. Further, Baker has a national reputation and extensive experience and expertise in legislative affairs and public policy formulation, and the other related areas of practice as to which Baker's continued representation is sought. As such, the Debtors submit that Baker is well qualified and uniquely able to provide the specialized lobbying advice on public policy having an effect on the Debtors during these Chapter 11 Cases. Thus, Baker's retention as a professional employed by the estate is in the best interest of the Debtors and their estates.

## Scope Of Proposed Retention

9. The Debtors currently seek to retain Baker, subject to the oversight and orders of this Court:

    a. to advise the Debtors, their counsel, and their Board of Directors with respect to legislative affairs and current, pending, and future legislative affairs; and

    b. such other related services as the Debtors may deem necessary or desirable.

Baker has indicated its willingness to render the necessary professional services described above as a public policy adviser to the Debtors.

10. The Debtors have obtained authorization to employ and retain the law firms of Kirkland & Ellis LLP and Pachulski, Stang, Ziehl, Young, Jones & Weintraub P.C. to serve as bankruptcy and reorganization counsel to the Debtors. Baker will not serve as general bankruptcy and reorganization counsel to the Debtors. While it is possible that certain aspects of the professional services may involve a combination of Baker, the Debtor's bankruptcy and

reorganization counsel, and/or other professionals employed by the Debtors, the Debtors believe that the services Baker will provide will be complementary rather than duplicative of the services to be performed by such bankruptcy counsel and other professionals. The Debtors are very mindful of the need to avoid the duplication of services, and appropriate procedures will be implemented to ensure that there is minimal duplication of effort as a result of Baker's role.

### No Adverse Interest

11.     To the best of the Debtors' knowledge, and based upon the Affidavit of James D. Range (the "Range Affidavit") filed in support of the Application and attached hereto as <u>Exhibit A</u>, Baker does not represent or hold any interest adverse to the Debtors or their estates with respect to the matters for which Baker is to be employed, except as set forth in the Range Affidavit. Further, to the best of the Debtors' knowledge and based on the Range Affidavit, Baker does not have any connection with any creditors or other parties in interest, or their respective attorneys or accountants, or the United States Trustee or any of its employees, except as set forth in the Range Affidavit.

### Compensation

12.     In accordance with sections 327(a) and 328(a) of the Bankruptcy Code, the Debtors propose to compensate Baker based on a flat rate in the amount of $17,000.00 per month for services rendered, plus reimbursement of actual, necessary expenses incurred by Baker. Baker will be compensated monthly in arrears.

13.     The Debtors seek approval of the terms of compensation pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under

section 327 of the Bankruptcy Code on any reasonable terms and conditions of employment, including a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Courts have held that section 328(a) contemplates the retention of professionals on a monthly fee basis. See, e.g., In re Commercial Financial Servcs., 298 B.R. 733, 750 fn.46 (10th Cir. 2003). Therefore, the Bankruptcy Code permits the Court to approve the terms of compensation outlined herein. Accordingly, the Debtors believe that the rate and compensation terms set forth above are reasonable and should be approved. Baker has always worked for the Debtors in exchange for a pure, monthly flat-fee. Accordingly, Baker does not send the Debtors itemized invoices, and Baker does not intend to file monthly fee applications with the Court.

14. Baker's rates are set at a level designed to compensate Baker fairly for the work of its advisors, attorneys, and paralegals and to cover fixed and routine overhead expenses. It is Baker's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, telecopier toll and other charges, mail and express mail charges, special or hand delivery charges, document processing, photocopying charges, travel expenses, expenses for "working meals," computerized research, messengers, couriers, postage, witness fees and other fees related to trials and hearings, and non-ordinary overhead expenses such as secretarial and other overtime. Baker will charge the Debtor for these expenses in a manner and at rates consistent with charges generally made to Baker's other clients. Baker believes that is fairer to charge these expenses to the client incurring them than to increase the hourly rates and spread the expenses among all clients.

15. Baker will maintain, or cause to be maintained, detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services. Baker will file a monthly cost and expense report with the Court.

## Conclusion

16. For the reasons set forth above and in the Range Affidavit, the Debtors' believe that Baker is well qualified to act on the Debtors' behalf in light of their intimate knowledge of the Debtors' businesses and affairs and their expertise in the field of public policy. The Debtors further believe that the engagement of Baker is essential to the Debtors' successful reorganization and that the retention of Baker is necessary and in the best interest of the Debtors and their estates.

## Notice

17. Notice of this Application has been given to: (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to all official committees appointed by the United States Trustee and (v) all those parties that requested service and notice of papers in accordance with Fed R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Request

18. No prior application for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form attached hereto, authorizing the retention and employment of Baker as a professional employed by the estate for the Debtors and granting such other and further relief as is just and proper.

Dated: May 19, 2004

                                              KIRKLAND & ELLIS LLP
James Sprayragen, P.C.
James W. Kapp III
Janet S. Baer
Samuel L. Blatnick
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000 (Telephone)
(312) 861-2200 (Facsimile)

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

_/s/ Laura Davis Jones_
Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
(302) 652-4100 (Telephone)
(302) 652-4400 (Facsimile)

Co-Counsel for the Debtors and Debtors in Possession