IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JJF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

## APPLICATION OF THE DEBTORS FOR THE ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF LATHAM & WATKINS LLP AS SPECIAL ENVIRONMENTAL COUNSEL FOR THE DEBTORS

The above-captioned debtors and debtors in possession (collectively, the

"Debtors") hereby submit this application (the "Application") for the entry of an order pursuant

to sections 327(e) and 330 of title 11 of the United States Code (as amended, the "Bankruptcy

Code") and Federal Rules of Bankruptcy Procedure 2014 and 2016, authorizing and approving

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food >N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

the retention of Latham & Watkins LLP ("Latham") as special environmental counsel for the

Debtors and in support thereof, the Debtors respectfully represent as follows:

### Jurisdiction

1.     This Court has jurisdiction to entertain this application pursuant to 28

U.S.C. §§ 157 and 1334.

2.     The statutory bases for the relief requested herein are Sections 327(e) and

330 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016.

### Background

3.     On April 2, 2001 each of the Debtors filed a voluntary petition for relief

under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11

Cases have been consolidated for administrative purposes only and, pursuant to sections 1107(a)

and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage

their properties as debtors in possession.

### Relief Requested

4.     The Debtors respectfully request the entry of an order pursuant to sections

327(e) and 330 of the Bankruptcy Code authorizing them to employ and retain Latham as special

environmental counsel to perform certain environmental litigation and strategic legal services

they will require during the course of these Chapter 11 Cases. Specifically, and as more

particularly described below, Latham has been the Debtors' longtime legal advisor with respect

to liability and responsibility for historical environmental contamination at a facility located in

Fords, New Jersey that was formerly owned and operated by W.R. Grace & Co.-Conn. (the

"Site") and with respect to environmental regulatory requirements related to the remediation of

the Site. The Debtors seek authorization for Latham to continue in that role based on its unique

knowledge and qualifications.

### Basis For Relief Requested

5.    The Debtors have selected Latham as special environmental counsel to

advise them in connection with all matters relating to the Debtors' liability and responsibility for

historical environmental contamination at the Site, including the Debtors' liabilities and

responsibilities under a directive issued by the New Jersey Department of Environmental

Protection ("NJDEP") and under a settlement agreement entered into with the current owner and

operator of this Site, Hatco Corporation ("Hatco").

6.    From 1959 until 1978, Grace operated a chemical manufacturing business

in Fords, New Jersey. It produced phthalic anhydride, plasticizers, benzyl chloride, sebacic acid,

capryl alcohol, synthetic lubricants and by-products of these chemicals. In 1978, it sold the

operation to Hatco. Contamination of the property is believed to have occurred prior to and

after Hatco took over the facility. Presently, soils, lagoon and stream sediments, surface water

and groundwater exhibit concentrations of polychlorinated biphenyls ("PCBs") and phthalates,

among other constituents, in excess of applicable remediation criteria. Among the environmental

conditions to be addressed during remediation, plumes of light nonaqueous phase liquids exist

within the production areas.

7.    The NJDEP issued a directive letter to Hatco and Grace on July 22, 1992

directing the parties to perform a Remedial Investigation and Remedial Action of the site

pursuant to the New Jersey Spill Compensation and Control Act (the "Spill Act"), N.J. Stat. Ann.

§§ 58:10-23.11 et seq. NJDEP then entered into an Administrative Consent Order with Hatco in

September 1992. Both the agency actions required the investigation and remediation of the Site. Hatco began operations to clean up the site, and then sued Grace for reimbursement, alleging liability under the Spill Act and the federal Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq. ("CERCLA"). In a nonjury trial, the district court found both Grace and Hatco responsible under the Spill Act and CERCLA. Based on a number of factors, the court allocated cleanup costs between the two companies and entered a $12 million judgment against Grace.

8.      Beginning in 1996, Grace participated in the remediation of the site with Hatco. In response to further litigation between the parties, Grace and Hatco entered a settlement agreement on July 1, 1996. In March 2001, Grace and Hatco certified and submitted to NJDEP a Remedial Action Work Plan ("RAWP") for the site.

9.      In April 2001, Grace filed a Chapter 11 bankruptcy proceeding in the United States Bankruptcy Court in Delaware. Grace continued to fulfill its obligations with respect to the Site until September 2001 when Grace sent a letter advising Hatco that Grace would not continue with remedial work at the property because of the bankruptcy proceeding. On September 21, 2001, Hatco sent a response letter, with a copy sent to NJDEP, stating that Hatco expected Grace to continue with the remedial work. On September 28, 2001, NJDEP issued a letter to Hatco and Grace responding to the RAWP submitted in March 2001. If fully implemented as directed by NJDEP, the cost of the remedial action at the site could approach one hundred million dollars.

10.      In response to the September 28, 2001 letter from NJDEP and the filing of a Proof of Claim by Hatco, the Debtors, with the assistance of Latham, have sought to resolve

Debtors' liability and responsibility in connection with environmental contamination at the Site

in a cost-effective manner through a third-party environmental liability buy-out. Latham has

assisted Debtors to, among other things, identify a liability buy-out contractor, negotiate a

contract with that contractor, negotiate with the NJDEP and United States Environmental

Protection Agency ("EPA") regarding the remedial action requirements, negotiate the insurance

policy backing the liability buy-out, and draft release and settlement documents to effect the buy-

out with the State of New Jersey and Hatco.

11.   Since November 1999, Latham and certain of its partners and associates

have rendered legal services to the Debtors in connection with all aspects regarding the Debtors'

liability in connection with the Site and with respect to the environmental remediation of the

Site, including the liability buy-out. Prior to November 1999, certain partners and associates

currently at Latham rendered legal services with respect to the Site while at another law firm,

which representation dates from 1997.

12.   As a consequence, Latham is intimately familiar with the complex legal

issues that have arisen and are likely to arise in connection with the resolution of the Debtors'

liability and responsibility for environmental contamination at the Site under the directive and

the settlement agreement.

13.   Further, Latham has a national reputation and extensive experience and

expertise in environmental law, and the other related areas of practice as to which Latham's

continued representation is sought. As such, the Debtors submit that Latham is well qualified

and uniquely able to provide the specialized legal advice sought by the Debtors during these

Chapter 11 Cases. Thus, Latham's retention as special environmental counsel is in the best interest of the Debtors and their estates.

### Scope Of Proposed Retention

14.    The Debtors currently seek to retain Latham, subject to the oversight and orders of this Court:

a.    to advise the Debtors, their counsel, and their Board of Directors with respect to environmental issues involved at the Site;

b.    to act as counsel for the Debtors and any related party in litigation involving the Debtors' obligations arising out of environmental matters at the Site or administrative proceedings; and

c.    such other related services as the Debtors may deem necessary or desirable.

Latham has indicated its willingness to render the necessary professional services described above as special environmental counsel to the Debtors.

15.    The Debtors have obtained authorization to employ and retain the law firms of Kirkland & Ellis LLP and Pachulski, Stang, Ziehl, Young, Jones & Weintraub P.C. to serve as bankruptcy and reorganization counsel to the Debtors. Latham will not serve as general bankruptcy and reorganization counsel to the Debtors. While it is possible that certain aspects of the representations will necessarily involve both Latham's and the Debtors' bankruptcy and reorganization counsel, the Debtors believe that the services Latham will provide will be complementary rather than duplicative of the services to be performed by such bankruptcy and

reorganization counsel.  The Debtors are very mindful of the need to avoid the duplication of

services, and appropriate procedures will be implemented to ensure that there is minimal

duplication of effort as a result of Latham's role as special environmental counsel.

## No Adverse Interest

16.     To the best of the Debtors' knowledge, and based upon the Certification of

John McGahren (the "McGahren Certification") filed in support of the Application and attached

hereto as Exhibit A, Latham does not represent or hold any interest adverse to the Debtors or

their estates with respect to the matters for which Latham is to be employed, except as set forth

in the McGahren Certification.  Further, to the best of the Debtors' knowledge and based on the

McGahren Certification, Latham does not have any connection with any creditors or other parties

in interest, or their respective attorneys or accountants, or the United States Trustee or any of its

employees, except as set forth in the McGahren Certification.

## Compensation

17.     In accordance with section 330 of the Bankruptcy Code, the Debtors

propose to compensate Latham on an hourly basis at its customary hourly rates for services

rendered, plus reimbursement of actual, necessary expenses incurred by Latham.  The primary

members of Latham who will be handling the above matters and their current hourly rates

charged for this matter are:

| Attorney | Hourly Rate |
|---|---|
| (a)     John McGahren | $475 per hour |
| (b)     Laurie Droughton Matthews | $455 per hour |
| (c)     Jeffrey LeJava | $360 per hour |

Based on the complexity of the issues involved and the amount of environmental liability at

stake, the Debtors believe that it will necessarily require the services of experienced senior

partners such as Mr. McGahren. Accordingly, the Debtors believe that the staffing and the

hourly rates set forth above are reasonable and should be approved.

      18.    As set forth in the McGahren Affidavit, the hourly rates described above

are subject to periodic adjustment to reflect economic and other conditions. Other attorneys or

paralegals may from time to time serve the Debtors in the matters for which Latham's retention

is sought. Latham's rates are set at a level designed to compensate Latham fairly for the work of

its attorneys and paralegals and to cover fixed and routine overhead expenses. It is Latham's

policy to charge its clients in all areas of practice for all other expenses incurred in connection

with the client's case. The expenses charged to clients include, among other things, telecopier

toll and other charges, mail and express mail charges, special or hand delivery charges,

document processing, photocopying charges, travel expenses, expenses for "working meals,"

computerized research, messengers, couriers, postage, witness fees and other fees related to trials

and hearings, transcription costs, and non-ordinary overhead expenses such as secretarial and

other overtime. Latham will charge the Debtor for these expenses in a manner and at rates

consistent with charges generally made to Latham's other clients. Latham believes that is fairer

to charge these expenses to the client incurring them than to increase the hourly rates and spread

the expenses among all clients.

      19.    Latham will submit interim and final applications for compensation in

accordance with sections 330 and 331 of the Bankruptcy Code and the Federal Rules of

Bankruptcy Procedure, the Local Rules of this Court and such other and further orders of the Court.

## Conclusion

20.    For the reasons set forth above and in the McGahren Affidavit, the Debtors' believe that Latham is well qualified to act on the Debtors' behalf in light of their intimate knowledge of the Debtors' businesses and affairs and their expertise in the field of environmental law. The Debtors further believe that the engagement of Latham is essential to the Debtors' successful reorganization and that the retention of Latham is necessary and in the best interest of the Debtors and their estates.

## Notice

21.    Notice of this Application has been given to: (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to all official committees appointed by the United States Trustee and (v) all those parties that requested service and notice of papers in accordance with Fed R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Request

22.    No prior application for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form attached hereto, authorizing the retention and employment of Latham as special environmental counsel for the Debtors and granting such other and further relief as is just and proper.

Dated: May 19, 2004

KIRKLAND & ELLIS
David M. Bernick, P.C.
Janet S. Baer
James W. Kapp III
Samuel L. Blatnick
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES &
WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
David Carickhoff (Bar No. 3715)
919 North Market Street, 16ᵗʰ Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession