IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

Objection Deadline: July 2, 2004 at 4:00 p.m.
Hearing Date: July 19, 2004 at 12:00 p.m.

# DEBTORS' MOTION PURSUANT TO SECTIONS 105(a), 362, 363, 502 AND 503 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 TO ESTABLISH AN ALTERNATIVE DISPUTE RESOLUTION PROGRAM TO LIQUIDATE CERTAIN PREPETITION CLAIMS

The Debtors hereby move this Court pursuant to 11 U.S.C. §§ 105(a), 362, 363, 502 and 503 and Federal Rule of Bankruptcy Procedure 9019 to establish an alternative dispute resolution program and to permit the Debtors to liquidate certain pre-petition claims (the "Motion"). The Motion should be granted because it establishes a fair, expeditious, and efficient procedure for resolving certain significant claims that are (i) contested and unliquidated and (ii) currently pending against the Debtors' estates.

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 362, 363, 502 and 503 of chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code") and Rules 3007 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Facts and Background

2.  On April 2, 2001 (the "Petition Date"), the Debtors commenced their respective reorganization cases by filing petitions under chapter 11 of the Bankruptcy Code. By operation of law, all pending and prospective judicial proceedings against any of the Debtors were automatically stayed pursuant to 11 U.S.C. § 362(a)(1) (the "Automatic Stay").

3.  By an order dated April 22, 2002 (the "Bar Date Order"), this Court set March 31, 2003 (the "Bar Date") as the last date for filing proofs of claim for all pre-petition claims relating to asbestos property damage, non-asbestos claims (including all governmental claims) and medical monitoring claims (the "Proofs of Claims"). A bar date has yet to be set for asbestos personal injury claims and claims related to Zonolite Attic Insulation.

4.  On March 18, 2004, the Debtors filed their Status Report of their Claims Reconciliation and Objection Process (the "First Status Report"). In the First Status Report, the debtors outlined the status of the claims that had been filed against the Debtors' estates. In particular, the Debtors stated that they were "evaluating the most efficient way to proceed on those (non-asbestos litigation) claims, which could include but not be limited to settlement,

91100-001\DOCS_DE:95266.2

seeking to establish a mediation procedure supervised by this Court or simply litigating the Claims before this Court." First Status Report pg. 13. On May 21, 2004, the Debtors filed their Second Status Report on their Claims Reconciliation and Objection Process and Approach to Litigation Claims (the "Second Status Report"). In the Second Status Report, the Debtors describe and outline in more detail the mediation procedures outlined in this Motion.

5. As outlined in the Second Status Report, to date approximately 15,438 proofs of claim have been filed against the Debtors' estates. The Debtors believe that many of the timely proofs of claim are patently illegitimate, duplicative, or otherwise grossly overstated in amount. The Debtors are currently pursuing a series of omnibus claim objections to deal with many of these proofs of claim.[2] As a result of the Debtors' first, second and third omnibus objections and other matters, 970 claims have been expunged and 566 claims have been reconciled, leaving 13,902 claims to be reconciled. The Debtors anticipate pursuing further omnibus objections in addition to, and simultaneous with, the alternative dispute resolution program outlined in this Motion (the "ADR Program"). The Debtors are also completing an analysis to quantify the number of claims which have been paid or to which they have no objection and will allow the claims.

6. As outlined in the First Status Report, there are over 200 filed, non-asbestos litigation-related claims, and the Debtors are aware of as many as 20 additional non-asbestos litigation claims for which no proof of claim has been filed (collectively, the "Litigation

---

[2] The Debtors filed: (i) Debtors' First Omnibus Objection to Claims (Substantive) on 7/21/2003, (ii) Debtors' Second Omnibus Objection to Claims (Non-Substantive) on 7/21/2003; (iii) Debtors' Third Omnibus Objection to Claims (Non-substantive) on April 14, 2004; (iv) Debtors' Forth Omnibus Objection to Claims (Substantive) on May 5, 2004; and (v) Debtors' Fifth Omnibus Objection to Claims (Substantive) on May 5, 2004.

3

Claims"). The Litigation Claims are primarily pre-petition suits for non-asbestos products liability, breach of contract, personal-injury, contract indemnification, employment-related discrimination and environmental damages.

7. The Debtors also dispute the substantive validity and/or amount of a substantial number of other non-asbestos claims (collectively with the Litigation Claims, the "Disputed Claims"). The resolution of the Disputed Claims turns on an examination of the facts and law underlying the claims and necessarily will require dialogue, mediation, and/or litigation. This Motion seeks Court-approval for the implementation of a program that deploys each of these dispute-resolution methods. The definition of Disputed Claims does not include asbestos property damage or asbestos personal-injury claims, and the ADR Program will not resolve any such claims.

### Relief Requested

8. The Debtors propose to institute the ADR Program to resolve certain Disputed Claims. The ADR Program would afford the Debtors an efficient method for resolving such claims through (i) negotiation and then, if necessary, (ii) through mediation. First, the negotiation phase would provide the Debtors with a cost-effective method for resolving claims through the exchange of written offers between the parties. Second, the mediation phase (if necessary) would afford the Debtors with an additional, efficient form of alternative dispute resolution that would permit the affected parties to utilize a neutral third-party to help achieve a voluntary, mutually beneficial settlement.

9. The Debtors recognize that a process for establishing and liquidating the Disputed Claims is a necessary component of their reorganization. Due to the number and nature of the

4

Disputed Claims, the Debtors believe that liquidating all of the Disputed Claims in this Court would be inefficient. Moreover, resolution of the Disputed Claims through litigation, whether in this Court or in courts scattered throughout the United States, would be a time-consuming process that would be a substantial drain on the time and resources of the Debtors. In addition, pursuant to 28 U.S.C. §157(b)(5), personal injury and wrongful death claims cannot be liquidated for distribution purposes by the Bankruptcy Court under section 502 or any other applicable section of the Bankruptcy Code.[3]

10. Accordingly, this Motion proposes the establishment of procedures that will result in the resolution of certain Disputed Claims through a Court-approved alternative dispute resolution program. The ADR Program is consistent with the jurisdictional limitations imposed upon the Court because participation in the program, and the resulting liquidation of these claims, is substantially based upon the consent of each Disputed Claimant.

---

[3] 28 U.S.C. § 157(b)(5) provides, in pertinent part, that "[t]he district court shall order the personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claims arose as determined by the district court in which the claim arose as determined by the district court in which the bankruptcy case is pending." Nevertheless, bankruptcy courts do have subject matter jurisdiction to make threshold determinations for allowance or disallowance of personal injury tort or wrongful death claims which, for example, have been (a) asserted against the inappropriate defendant or debtor or (b)are barred as a matter of law. See, e.g., In re Best Products Co., Inc., Chapter 11, Case No. 96-35267-DOT (holding that bankruptcy court has jurisdiction to disallow personal injury claim on procedural grounds); In re Chateaugay Corp., 111 B.R. 67, 73-74 (Bankr. S.D.N.Y. 1990) (holding that bankruptcy court has jurisdiction to make threshold determination as to whether debtors are proper defendants against whom to assert claims and whether claims are barred as a matter of law; "[a]llowing or disallowing claims is clearly a separate and distinct function from liquidating and estimating that claim"); see also In re Standard Insulations, Inc., 138 B.R. 947 (Bankr. W.D. Mo. 1992) (same).

## The ADR Program

11. The Debtors have explored and analyzed a variety of alternative dispute resolution procedures designed to protect each Disputed Claimant's due process rights while permitting the Debtors to liquidate the Disputed Claims in an efficient and cost-effective manner. The Debtors believe that the ADR Program represents the best balance of these competing goals. Under the ADR Program, the Debtors will have the right, but not the obligation, to designate certain Disputed Claims as ADR Claims by sending the respective recipients an ADR Notice Package. The ADR Claimants will then each have the option of either: (i) participating in the ADR Program or (ii) awaiting a subsequent liquidation of their respective claim(s) against the Debtors through the claims objection process and related litigation in this Court as outlined herein.

**(a) Notice**

12. After the entry by this Court of an order approving the ADR Program (the "ADR Order"), the Debtors will serve the holders or disputed claims that the Debtors believe can be resolved expeditiously under the ADR Program (the "ADR Claims" and "ADR Claimants") with: (i) a copy of the ADR Order (a proposed order is attached hereto); (ii) a notice of the ADR Program substantially in the form annexed hereto as Exhibit A (the "ADR Notice"), and (iii) a copy of the ADR Procedures substantially in the form annexed hereto as Exhibit B. (collectively, with the ADR Order and the ADR Notice, the "ADR Notice Package").

13. Service of the ADR Notice Package upon the ADR Claimants shall be effectuated: (i) in accordance with Federal Rules of Bankruptcy Procedure 7004 and the Federal Rules of Civil Procedure; (ii) to the extent counsel for an ADR Claimant is not known, by first-class mail, postage prepaid, on the signatory on the respective ADR Claimant's proof of claim or

other representative identified in the proof of claim and any attachment thereto; or (iii) by first-class mail, postage prepaid, on any counsel that has appeared on the respective ADR Claimant's behalf in the Debtors' bankruptcy cases or otherwise.

14. The ADR Notice will direct the ADR Claimant to (i) indicate on the ADR Notice whether they wish to participate in the ADR Program and (ii) return the complete and signed ADR Notice within <u>thirty (30) calendar days</u> after the date of the ADR Notice. The completed and signed ADR Notice must be sent to: Samuel L. Blatnick at Kirkland & Ellis LLP, 200 E. Randolph Drive, Chicago, IL 60601. <u>If an ADR Claimant fails to return a completed and signed ADR Notice within thirty (30) calendar days of the date of the ADR Notice, the ADR Claimant's claim shall be forever discharged, disallowed, waived and expunged</u>.

### (b) Statement of Claim

15. If the ADR Claimant timely returns a completed and signed ADR Notice that expresses the ADR Claimant's desire to participate in the ADR Program, then the Debtors, within a reasonable period of time following receipt of an ADR Claimant's ADR Notice, shall mail to such ADR Claimant a Statement of Claim (the "Statement of Claim", a copy of which is attached hereto as <u>Exhibit C</u>). Within <u>fifteen (15) calendar days</u>, after receipt of the Statement of Claim, those ADR Claimants who still wish to participate in the ADR Program must return a completed Statement of Claim to the Debtors. The Statement of Claim requests information pertinent to resolving the respective ADR Claim including, but not limited to, (i) the ADR Claimant's name and address, (ii) the date and location of the alleged incident, (iii) the name and address of the any attorney representing the ADR Claimant, (iv) the asserted amount of the ADR Claimant's claim, (v) the name and address of the applicable Debtor(s), (vi) a list of witnesses,

7

(vii) any applicable medical reports, (viii) any applicable incident reports, and (ix) a short statement of the ADR Claimant's contentions.

### (c)    Settlement Authority and Procedures

16.    The Debtors request authorization pursuant to Bankruptcy Rule 9019(a)[4] to compromise and settle those ADR Claims for which (i) the respective ADR Claimant has elected to participate in the ADR Program and (ii) a mutual resolution of the ADR Claim has been reached. The Debtors further request that this Court allow the Debtors to utilize a pre-approved stipulation to enter into final settlement agreements for any such ADR Claims (the "ADR Stipulation") (a form of proposed ADR Stipulation is attached hereto as Exhibit D).

17.    If the Debtors were required to file a motion pursuant to Bankruptcy Rule 9019(a) every time they resolved an ADR Claim, the expense to the Debtors' bankruptcy estates and demand on the Court's limited-time would be considerable. Therefore, in order to efficiently and expeditiously resolve the ADR Claims, the Debtors request that they be authorized to compromise and settle any ADR Claim pursuant to Bankruptcy Rule 9019(a), without any further notice to any party or approval by the Court, for: (i) an allowed claim amount that is fifty-percent (50%) or less of the amount of the claim asserted in the ADR Claimant's proof of claim (as amended by any subsequent proofs of claims), or (ii) in the Debtors' sole discretion, any single allowed claim in the amount of $100,000 or less.

---

[4] Federal Rule of Bankruptcy Procedure 9019(a) states as follows: "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct."

18.     Whenever the Debtors compromise and settle a Pre-Approved Settlement (as defined in the ADR Procedures), they will (i) file with the Clerk of the Court and (ii) send to Rust Consulting, Inc., the claims agent for these bankruptcy cases (the "Claims Agent"), an ADR Stipulation signed by the Debtors and the respective ADR Claimant. The ADR Stipulation will be effective and binding on all parties-in-interest upon its filing with the Clerk and will not require the endorsement or approval of the Court. Upon the execution and consummation of a written agreement of settlement for such claims, the respective claims will be binding on the Debtors, the Debtors' estates, the respective ADR Claimants, and all other interested parties without any further action by the Court.

19.     In the event the Debtors and an ADR Claimant compromise and settle an ADR Claim that is not a Pre-Approved Settlement, the Debtors shall seek Court-approval of such settlement on <u>20 (twenty) days negative notice</u> of the ADR Stipulation after service upon the Office of the United States Trustee and the counsel for any official committee then-recognized in these bankruptcy cases. If no objections are timely-filed against a respective ADR Stipulation, then the Debtors will submit an order approving the ADR Stipulation without further notice or hearing. If an objection(s) is timely filed, then the matter will be scheduled for hearing at the next-scheduled omnibus hearing that is at least <u>thirty (30) days</u> following the date of the objection (the "Stipulation Approval Process").

**(d)     Settlement Offers**

20.     Subject to the procedures set forth below, the Debtors seek authority to make a settlement offer to each ADR Claimant who timely submits a completed and signed ADR Notice and Statement of Claim. Any ADR Claimant accepting a settlement offer shall be deemed to have granted a complete release of (i) every Debtor, (ii) the Debtors' applicable insurer(s) (if

9

any), and (iii) the Debtors' and applicable insurers' predecessors, successors-in-interest, and their respective officers, directors, agents, attorneys and employees.

21.     Within <u>forty-five (45) calendar days</u> after receipt of a completed Statement of Claim, the Debtors will serve on the applicable ADR Claimant an initial settlement offer (the "Initial Offer"). Each ADR Claimant will be required to accept or reject the Initial Offer within fifteen <u>(15) calendar days</u> after its mailing.

22.     If an ADR Claimant accepts the Initial Offer, and the Initial Offer is a Pre-Approved Settlement, then the Debtors shall (i) file with the Clerk of the Court an executed ADR Stipulation and (ii) shall immediately mail a copy of the ADR Stipulation to the Claims Agent. If the Initial Offer is not a Pre-Approved Settlement, then the Debtors will follow the Stipulation Approval Process. If the Court does not approve the settlement, then the ADR Stipulation shall not be effective and the Debtors, in their sole discretion, may elect to either (i) continue negotiations with the ADR Claimant or (ii) treat the ADR Claimant as no-longer participating in the ADR Program.

23.     If the ADR Claimant rejects the Initial Offer, then the Debtors will have the option of (i) referring the ADR Claim to mediation as set forth below, (ii) making a second written settlement offer (the "Second Offer) to such Claimant pursuant to the same procedural protocols as the First Order, or (iii) treating such ADR Claimant as having elected to no-longer participate in the ADR Program.

      (e)    **Extension of Settlement Period**

24.     Upon mutual, written-consent, the Debtors and an ADR Claimant may exchange additional settlement offers following rejection by the ADR Claimant of the Debtors' Second

Offer. The amount of timing of any such offers will be governed by the written agreement of the Debtors and the ADR Claimant.

### (f)  Mediation Procedures

25.  After reviewing the results of the settlement-stage, the Debtors may refer disputes between the Debtors and ADR Claimants whose claims (i) have not been settled consensually or (ii) have not been provisionally barred pursuant to the procedures set forth above, to a Court-appointed mediator (the "Mediator") to conduct mandatory, non-binding mediation ("Mediation").

26.  The Debtors are in the process of identifying appropriate candidates to serve as Mediator and intend to shortly file an application for the Appointment of a Mediator (the "Application").

27.  The Mediator's fee will be shared equally by the Debtors and the ADR Claimant. All fees required to be paid by an ADR Claimant must be paid within <u>thirty (30) calendar days</u> after the relevant mediation session. <u>If an ADR Claimant fails to pay all required fees when due, the ADR Claimant's claim shall be forever disallowed, discharged, waived, and expunged in its entirety without further order of the Court.</u>

28.  Pursuant to the ADR Program, the Debtors may submit any ADR Claim to Mediation: (i) if the Debtors do not make a Second Offer, within <u>fifteen (15) calendar days</u> of an ADR Claimant's rejection of the Debtors' initial offer; (ii) if the Debtors make a Second Offer, within <u>fifteen (15) calendar days</u> of an ADR Claimant's rejection of the Second Offer; (iii) if the Debtors and the ADR Claimant agree to exchange additional offers (after the Second Offer), within <u>fifteen (15) calendar days</u> of the ADR Claimant's rejection of the last offer.

11

29. The Debtors shall notify the ADR Claimant in writing of the submission of his or her ADR Claim to Mediation, and the Debtors shall forward to the Mediator (i) all Statements of Claim and other relevant information they have received from the Claimant regarding the ADR Claimant's claim (the "Mediation Materials") and (ii) any other materials the Debtors deem relevant to the respective ADR Claim.. The Mediator shall schedule an initial Mediation conference (the "Initial Conference") to occur within forty-five (45) calendar days of the Mediator's receipt of the Mediation Materials and to be held in (i) the greater Baltimore, MD metropolitan-area or (ii) another location that is agreed-upon by the Debtors, the ADR Claimant, and the Mediator. The Debtors and the ADR Claimant shall each have a person with settlement-authority attend the Initial Conference and any subsequent conferences. The Debtors and the ADR Claimant may be, but are not required to be, represented by counsel.

30. If an ADR Claimant fails to attend a properly-noticed Initial Conference (or subsequent Mediation conference if scheduled pursuant to the requirement outlined below) or fails to materially comply with any of the Mediation procedures, the ADR Claimant's claim shall, without further order to the Court, be forever disallowed, discharged, waived, and expunged against the Debtors, their bankruptcy estates, their successors, their directors, officers and agents.

### i.   After the Conclusion of the Initial Conference:

31. If no consensual agreement is reached for settlement of the ADR Claimant's claim, and the Debtors do not believe that further Mediation is likely to yield such an agreement, the Debtors shall send the ADR Claimant, within fifteen (15) calendar days following the Initial Conference, a statement indicating that they do not believe the ADR Claim can be settled through Mediation (the "Conclusion Statement"). If no consensual agreement is reached after

12

the Initial Conference, and the Debtors believe that further Mediation may yield such an agreement, the Mediator shall schedule a subsequent Mediation conference or conferences. If the Debtors subsequently believe that further Mediation is not likely to yield an agreement, the Debtors shall promptly send the ADR Claimant a Conclusion Statement.

32. If a settlement agreement is reached, the ADR Claimant and the Debtors shall be required to sign an ADR Stipulation. If the agreed-upon settlement is a Pre-Approved Settlement, the Debtors shall file a Stipulation with the Clerk of the Court, and send a copy of the Stipulation to the Claims Agent. The Stipulation will be effective and binding on all parties-in-interest upon its filing with the Clerk and will not require the endorsement or approval of the Court. If the settlement is not a Pre-Approved Settlement, then the Debtors shall follow the Stipulation Approval Process. If the Court does not approve the settlement, then the ADR Stipulation shall not be effective, and the Debtors, in their sole discretion, may (i) elect further Mediation, (ii) deem the Claimant to no longer participate in the ADR Program, or (iii) refer the ADR Claimant's claim to litigation.

### ii. Litigation

33. For those ADR Claimants whose ADR Claims are not resolved through Mediation, the ADR Claimants must send the Debtors, within <u>fifteen (15) days</u> after receipt of the Conclusion Statement, a written notice that they desire to litigate their ADR Claim(s) (the "Litigation Statement"). If the ADR Claimant does not timely serve the Debtors with a Litigation Statement, <u>the ADR Claimant shall be deemed to have elected to no longer participate in the ADR Program, and their ADR Claim shall be forever disallowed, discharged, waived, and expunged against the Debtors and their bankruptcy estates, without any further order by the Court.</u>

34. If the Claimant timely serves the Debtors with a Litigation Statement, then the ADR Claimant's claim shall be litigated in the following manner, depending on whether their respective ADR Claim involves "immature litigation" or "mature litigation." With respect to immature litigation - unresolved ADR Claims where the underlying litigation had not substantially progressed prior to the Petition Date - such ADR Claims shall proceed to litigation in the Bankruptcy Court. To the extent that the Bankruptcy Court does not have the jurisdiction to resolve any such matters, the respective matter shall be resolved in the District Court for the District of Delaware. With respect to mature litigation - unresolved ADR Claims where (i) the litigation had progressed through the discovery stage and was substantially ready for trial or (ii) where judgment was rendered and the matter was on appeal - the Automatic Stay shall be lifted, and the cases shall proceed to trial in the forum where the case was pending when the Automatic Stay went into effect.

(g)     **Satisfaction and Payment of Allowed Claims**

35. To the extent the amount of any resolved ADR Claim that is not insured, such settlement amount shall constitute an allowed claim against the Debtors' estates in its prospective reorganization plan.[5] To the extent that any resolved ADR Claims are covered by **applicable insurance, then the respective insurance companies shall make payments for such ADR Claims, only for any amounts exceeding any applicable deductibles for the relevant policies, as set forth in the relevant policies, and the holder of the settled claim**

---

[5] The Debtors reserve their rights to seek to subordinate any award of punitive damages to all other claims and to assert any applicable limit or "cap" on claims (such as, by way of example, the limitation on allowed amounts of employee claims as set forth in section 502(b)(7) of the Bankruptcy Code).

14

**shall have an allowed pre-petition claim against the Debtors' estates for the deductible amount.**

### (h)     The Automatic Stay and Preliminary Injunction

36.     Upon service by the Debtors of the ADR Notice Package on a ADR Claimant as set forth herein, such ADR Claimant shall be enjoined from, among other things, commencing or continuing any action or proceeding in any manner or any place to establish, liquidate, collect or otherwise enforce their claims against the Debtors or their property other than through the ADR Program, including seeking relief from the Automatic Stay and/or the Preliminary Injunction.[6] Although an ADR Claimant can opt-out of the ADR Program, the Automatic Stay and Preliminary Injunction shall remain in effect, unless the Automatic Stay or Preliminary Injunction, as applicable, has been otherwise terminated or modified by an order of this Court.

### (i)     Holders of ADR Claims Must Have Timely Filed Proofs of Claim

37.     Nothing in the ADR Program alters the requirement that each ADR Claimant (and any other claimant) must have (i) timely filed a proof of claim by the Bar Date or the Additional Bar Date (as defined in the ADR Procedures) or (ii) previously received leave from this Court to file a late claim.

---

[6] On January 22, 2002, this Court entered an Order Granting Modified Preliminary Injunction (the "Preliminary Injunction") in the adversary proceeding entitled W.R. Grace & Co., et al. v. Margaret Chakarian, et al. and John Does 1-1000, Case No A-01-771. In particular, this Court enjoined all "Actions" that had been filed "(a) against Affiliate Entities that arise from alleged exposure to asbestos indirectly or directly allegedly caused by Debtors; or (b) for which there may be coverage under the Insurance Policies; (c) against Affiliated Entities alleging fraudulent transfer or fraudulent conveyance claims; (d) against Insurance Carriers alleging coverage for asbestos-related liabilities..." Preliminary Injunction ¶10 at pp. 3-4. The following Insurance Carriers were listed as Affiliated Entities for purposes of the Preliminary Injunction: (a) Maryland Casualty Company, (b) Continental Casualty Company, (c) Affiliates of Maryland Casualty Co. and Continental Casualty Co., and (d) Other Insurers of the Debtors under the Insurance Policies who have been named as defendants in actions pending in direct action states.

## Legal Authority

38. This Court is authorized to approve the ADR Program pursuant to section 105(a) of the Bankruptcy Code, which provides that, "the Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); see also In re A.H. Robbins Co., 99 B.R. 742, 752 (Bankr. E.D. Va. 1988) (holding that 28 U.S.C. § 1334, section 105 of the Bankruptcy Code, and the equitable power of the Court permitted the Court to approve channeling provisions that included alternative dispute resolution procedures, to assist in the efficient administration of the debtors' estates and ensure an orderly and fair distribution to claimants). Accordingly, to the extent the ADR Program is necessary for the efficient administration of the Debtors' estates and their efforts to successfully emerge from these chapter 11 cases, this Court has the authority to approve and authorize the ADR Program.

39. Similar alternative dispute resolution programs have been implemented in other chapter 11 cases in this District and elsewhere. See, e.g., In re Harnischfeger Indus., Inc., Chapter 11, Case No. 99-2171 (PJW) (Bankr. D. Del. June 30, 2000); In re Harnischfeger Inv. Co. of Delaware Inc., Chapter 11, Case No. 99-2261 (PJW) (Bankr. D. Del., June 9, 2000); In re Loewen Group Int'l, Inc., Chapter 11, Case No. 99-1244 (PJW) (Bankr. D. Del., Feb. 28, 2000); In re Montgomery Ward Holding Group, Chapter 11, Case No. 97-1409 (PJW) (Bankr. D. Del. Dec. 2, 1999); In re US Airways Group, Inc., Chapter 11, Case No. 02-83984 (SSM) (Bankr. E.D. Va. (March 19, 2003); In re AMF Bowling Worldwide, Inc., et al, Chapter 11, Case No. 01-61119 (DHA) (Bankr. E.D. Va., Feb. 27, 2002); In re Motient Corp., et al, Chapter 11, Case No. 02-80125 (RGM) (Bankr. E.D. Va., March 15, 2002); In re Heilig-Meyers Co., el al, Chapter 11, Case No. 00-34533 (DOT) (Bankr. E.D. Va., July 27, 2001); In re Best Products Co., Inc.,

16

Chapter 11, Case No. 96-35267 (DOT) (Bankr. E.D. Va., March 4, 1997); In re Kmart Corp., Chapter 11, Case No. 02-02474 (SPS) (Bankr. N.D. Ill., July 18, 2002).

## Argument

40. The ADR Program should be approved because it is in the best interests of the Debtors' estates and the Debtors' creditors. The ADR Program will provide a framework for the fair, efficient, and expeditious resolution of most, if not all, of the ADR Claims. The ADR Program accomplishes these goals by encouraging discussion and negotiation between the affected parties, rather than relying solely on protracted and geographically dispersed litigation that would otherwise deplete the Debtors' estates. Furthermore, if settlement of an ADR Claim is not reached, the ADR Program ultimately allows the ADR Claimant to litigate their ADR Claim in this Court, the District Court, or (in certain situations) the court of original jurisdiction, as outlined herein.

41. The ADR Program represents an efficient system for resolving the Disputed Claims. In the first instance, the Debtors will seek to resolve the ADR Claims through negotiations and by offering settlements. These methods for resolving claims are usually more efficient than actual litigation. Therefore, the Debtors believe that the ADR Program presents an attractive alternative to litigation, and that a substantial number of ADR Claimants will choose to participate.

42. The ADR Program also provides all affected parties with procedural due process. Claimants that are unwilling to accept the Debtors' Initial and/or Second Offer may have their ADR Claims submitted to non-binding Mediation, except for those Claimants that are deemed to have elected to no longer participate in the ADR Program. It is in the best-interests of the

17

Debtors and ADR Claimants to resolve the ADR Claims through Mediation, because it is widely recognized as the fastest, most-efficient, and least-expensive ADR alternative available.[7] If an ADR Claim is not settled through negotiation or Mediation, the ADR Claimant is entitled to have the amount of their ADR Claim determined through litigation. Therefore, if Mediation is ultimately not a successful avenue for resolving a particular ADR Claim, the ADR Claimant will still be entitled to its respective "day in court."

43.  In sum, the Debtors view the ADR Program as an essential component of their reorganization efforts. The cost and delay involved in litigating all outstanding ADR Claims (in courts across the country) would be prohibitive, and the ADR Program is an attractive alternative for both the Debtors and claimants against the Debtors' estates.

## Notice and Service

44.  Notice of this Motion has been given to: (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to each of the Committees[8], (iv) the Debtors' applicable insurers, and (iv) all those parties that requested service and notice of papers in accordance with Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

---

[7] The rationale underlying the ADR Program is the notion that most Disputed Claims settle prior to trial. The ADR Program will provide a mechanism for the early, cost-effective analysis, resolution and liquidation of the ADR Claims.

[8] To date, four official committees have been established in these bankruptcy cases: an equity committee, a committee of unsecured creditors, a personal-injury committee, and a property-damage committee (collectively, the "Committees").

91100-001\DOCS_DE:95266.2

WHEREFORE, the Debtors respectfully request that this Court (i) approve the ADR Program and ADR Notice Package; (ii) enter an order, substantially in the form of the proposed order attached hereto, granting the relief requested herein; and (iii) and grant such other and further relief as is just or proper.

Respectfully Submitted:

Dated: June 14, 2004

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
James W. Kapp III
Samuel L. Blatnick
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB PC

_____
Laura Davis Jones (#2436)
David W. Carickhoff, Jr. (#3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and
Debtors in Possession

91100-001\DOCS_DE:95266.2