# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| W. R. GRACE & CO., ET AL.,[1] | ) | CASE NO. 01-01139 (JKF) |
| | ) | |
| DEBTORS. | ) | JOINTLY ADMINISTERED |

Objection Deadline: July 2, 2004
Hearing Date: July 19, 2004, 12:00 PM (EST)

## AFFIDAVIT OF GREGORY E. POLING IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO ADVANCE FUNDS TO A NON-DEBTOR SUBSIDIARY TO ACQUIRE ALLTECH INTERNATIONAL HOLDINGS, INC. AND ITS SUBSIDIARIES

I, Gregory E. Poling, being duly sworn, deposes and says:

1. I am the President of Grace Davison Specialty Materials (the "Separations Business"), which is part of W.R. Grace & Co.-Conn., a corporation organized under the laws of the State of Delaware, and one of the above-captioned debtors and debtors in possession (collectively, the "Debtors") in these jointly-administered bankruptcy cases. I offer this affidavit

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

in support of the Debtors' Motion For Entry Of An Order Authorizing The Debtors To Advance Funds To A Non-Debtor Subsidiary to Acquire Alltech International Holdings, Inc. and its subsidiaries (collectively, "Alltech").

2. The proposed acquisition of Alltech represents a continuation of the Debtors' strategy to increase the value of its silica products business by moving the business into the high-growth, high-margin $6.7 billion media-based separations segment.

3. The Debtors have executed this strategy through both an extensive program of research and development and through a series of acquisitions by the Debtors' Separations Business (the "Prior Acquisitions"). The Debtors believe that this strategy will result in a market valuation for its Separations Business that will be considerably higher than the traditional market valuation for specialty chemical companies.

4. Alltech would be the fourth acquisition by the Separations Business, offering an opportunity for the Grace Davison Specialty Materials Group ("The Separations Group" or "TSG") to significantly expand its market share in consumables used in high-performance liquid-chromatography ("HPLC") as well as to enter new silica-based consumable segments such as gas chromatography ("GC") and solid phase extraction ("SPE") technologies. TSG continuously assesses possible product-line extensions into other separations technologies, particularly into segments that offer significant growth potential. Alltech is attractive to TSG in this regard, since SPE is one of the highest growing media-based separations segments, with a market compound-annual growth-rate of 11%. The HPLC, SPE and IC segments have exhibited consistent or above market growth trends from 2000 to 2003, and the media-based separations segment

continues to enjoy strong growth from a number of factors, including the aging of the population, which, in turn, drives research and development investment in new drug development.

5. The Debtors have conducted intensive due diligence of Alltech. Among other matters, the Debtors: (i) reviewed documentation provided by Alltech; (ii) had extensive discussions with Alltech management; (iii) reviewed Alltech's historical audited financial statements and Alltech's 2003 draft audited financial statements and audit work papers; (iv) inspected Alltech's facilities in Illinois, Pennsylvania, Belgium and the U.K. and (v) is completing its evaluation of Alltech's environmental risks. In addition, the Debtors believe that the Stock Purchase Agreement provides contractual protections suitable and customary for a transaction of this nature, including the net worth adjustment and the indemnity escrows.

6. TSG and certain shareholders of Alltech holding over 90% of the outstanding shares of capital stock of Alltech have negotiated Stock Purchase Agreements, by which TSG will purchase all of those shares from the Alltech shareholders.

7. The closing of the stock purchase transaction is expected to be followed by a short-form merger between TSG and Alltech, with Alltech surviving.

8. As a result of the transaction, the merged company will become a wholly-owned subsidiary of W. R. Grace & Co.-Conn. German antitrust premerger approval will be required before the transaction closes. The parties have negotiated a total purchase price of $54.8 million for the combined stock purchase and merger transaction (the "Purchase Price"). The Purchase Price is comprised of $47 million in cash and the assumption or repayment of $7.8 million of outstanding Alltech debt. The Purchase Price is also subject to (a) a post-closing net worth

adjustment and (b) an escrow to secure indemnity obligations under the Stock Purchase Agreements.

9. Each item of Alltech debt outstanding at the time of the Closing will remain outstanding after the Closing or, if so required by a lender, will be discharged by repayment in full by Alltech at or before the Closing. As of December 31, 2003, Alltech's debt (the "Alltech Debt") consisted of:

  (a) a $5.6 million, secured Bank One line of credit that was scheduled to expire on May 31, 2004 if not renewed for one year through May 31, 2005, but the line of credit was recently extended for 30 days to June 30, 2004; the loan bears interest at Bank One's prime rate; $2.5 million was outstanding under that line of credit;

  (b) a $0.2 million Bank One installment loan balance related to equipment financing; the loan bears interest at 9.5%

  (c) a $2.7 million unsecured note payable to the majority shareholder, Richard Dolan; the note bears interest at prime, which is currently 4.0%, and is payable on demand; $2.6 million was outstanding under the note; and

certain foreign mortgages, loans and similar financial obligations of Alltech's foreign subsidiaries, totaling approximately $2.5 million.

10. Alltech has been sued in Federal District Court in California by Dionex Corporation for alleged infringement of 3 Dionex patents in connection with Alltech's sale of certain ion chromatography suppressor devices. The litigation is in the early stages of discovery. Debtors' patent counsel has investigated the litigation and has evaluated Alltech's liability exposure and its prospects in defending the litigation. TSG will require Alltech's controlling shareholder to indemnify against a portion of the liability arising out of the litigation, and a portion of the purchase price will be deposited into escrow to secure that indemnity obligation.

4

11. As part of the transaction, TSG will agree to pay to one high level employee severance equal to 2-times base salary, in the event that the employee is involuntarily terminated by TSG within three years of the closing of the transaction. The agreement will also provide that, in certain other circumstances, the employee may become entitled to severance equal to 1-times salary upon his termination of employment with TSG within 3 years of such closing. In all other cases, employees of Alltech will be covered by the existing Grace severance plan for salaried employees. TSG will also agree to pay each of 4 other high-level key employees "stay bonuses" equal to 20% of base salary, if such employee remains employed after the closing and until at least December 31, 2005.

12. The Debtors intend to fund TSG's purchase of Alltech and its initial cash requirements with a portion of the approximately $84 million the Debtors collected from Grace GmbH and Co. KG in the 2nd Quarter of 2004 as payment of principal on an intercompany loan owed by Grace GmbH and Co. KG to the Debtors. The acquisition of Alltech will be completed with the combination of a loan to TSG (approximately $27 million) and investment in TSG (approximately $20 million).

13. The Debtors have a history of successful "bolt-on" acquisitions of this type. These types of acquisitions are, and will continue to be, integral to the Debtors' growth strategy because they give the Debtors access to product lines, technologies and markets that they cannot economically develop internally. Combined with the Prior Acquisitions, the proposed acquisition of Alltech continues the Debtors' strategy to improve the value of its silica products business by moving into high-growth industry segments with high margin potential. The Alltech acquisition is particularly attractive because it would combine the Debtors' silica material and surface chemistry science expertise with Alltech's expertise in the design, manufacture and sale

of chromatography columns and instruments. The Debtors believe that their strategy will result in a market valuation for their Separations Business that will be considerably higher than the normal valuation for specialty chemical companies.

14. The Debtors' strategy is to grow the Separations Business to become a significant supplier of chromatography instruments and consumables, including columns and media, with sufficient financial, technological, manufacturing and sales capabilities to substantially expand its existing share of chromatography markets and to sustain on its own the investment necessary to become a major industry player. The Alltech acquisition is expected to substantially increase TSG's revenues and would provide an established global infrastructure upon which to build such a business. With 22 sales offices, manufacturing plants, and research facilities around the world, and with a balanced global distribution of experienced sales, technical service and customer service people, Alltech is particularly well-positioned to assist the Debtors in realizing its strategy.

15. To the best of my knowledge and belief, the acquisition of Alltech is an excellent growth opportunity for the Debtors. The acquisition would combine the Debtors' 80 years of silica material expertise with Alltech's proven technology (including numerous patents and patent applications) and demonstrated success in designing and producing chromatography products.

16. At present, TSG sells its chromatography products primarily through distribution. The proposed acquisition would provide TSG with a new channel to directly market chromatography products through an extensive and experienced direct sales force and technical service organization in North America, Europe and Asia. As a result, TSG will not need to

6

develop its own direct sales force or expand its existing technical service capabilities through internal investment over a period of several years. I believe that Alltech's substantial and experienced direct sales force and technical service organization would immediately expand TSG's ability to penetrate chromatography markets on a worldwide basis.

17. TSG's and Alltech's technologies and product offerings complement each other in several respects. TSG continuously seeks to expand its participation in other silica-based separations technologies, particularly into segments that offer significant growth potential. TSG's consumable sales are primarily in the HPLC and low pressure liquid chromatography segments today. The proposed acquisition offers an opportunity for TSG to significantly expand its market share in consumables used in HPLC as well as to enter new silica-based consumable segments such as GC and SPE. As noted above, SPE is one of the highest growing media-based separations segments with a market compound-annual growth-rate of 11%.

18. TSG currently sells primarily consumable chromatography products (e.g., packed columns and bulk media). The proposed acquisition will enable the Debtors to broaden its product portfolio by offering instruments and accessories as well (e.g., HPLC pumps and IC suppressors). In addition, Alltech offers considerable expertise in packing columns with chromatography media. Acquiring this capability will significantly enhance TSG's existing expertise in manufacturing chromatography columns. Finally, Alltech's technical capabilities in HPLC, GC, IC and SPE provide a technology platform that would enable TSG to expand its product offerings on a worldwide basis.

19. The proposed Purchase Price is economically attractive to the Debtors. First, the price-to-sales ratio is comparable to the price-to-sales ratios in comparable transactions.

Alltech's 2003 sales were $46.2 million. Therefore, the proposed transaction represents a price multiple of approximately 1.2 times sales ($54.8 million divided by $46.2 million). The industry-average price-to-sales multiple for comparable companies have recently ranged from 1 to 5 times sales. The Debtors believe that the industry average price-to-sales ratio is a relevant valuation measure for the proposed transaction because Alltech has demonstrated potential for continued future growth, as demonstrated by: (a) the strong global presence and name recognition that has proven successful for the past 30 years, (b) the HPLC, SPE and IC segments have exhibited consistent or above market growth trends from 2000 to 2003 and (c) the media-based separations segment's fundamental growth drivers, including the aging of the population, which drives R&D investment in new drug development. Moreover, the acquisition would enhance the ability of the Separations Business to maintain its competitiveness through achievement of critical mass, efficiency gains and reduced costs. Overall, the Debtors expect that the cost synergies offered by the transaction will translate into increased cash flows and earnings that can be re-invested into additional internal and external expansion of the Separations Business in the future.

20. To the best of my knowledge and belief, continuing Alltech's outstanding debt in-place would be advantageous to the Debtors since the current rates of interest under Alltech's outstanding debt are reasonable for middle-market companies such as The Separations Business. Should, however, Bank One fail to renew Alltech's line of credit facility or should one or more of Alltech's other lenders fail to consent to Alltech's change of control, the Debtors believe that the next-best course of action would be to pay off the existing debt at closing, so that the proposed Alltech acquisition may proceed.

21.     TSG estimates that it may need up to $3.1 million in cash as of the date of the closing to fund any interim cash requirements of Alltech in the event that Alltech cannot pay all of such obligations from its internally-generated cash in the short-term (one year). These interim cash requirements would include Alltech's working capital needs, plus expenses related to the proposed transaction and costs of integrating Alltech's operations into the Separations Business. The Debtors believe that these cash requirements are reasonable.

22.     In total, therefore, the Debtors may be required to pay up to $57.9 million to (i) acquire Alltech ($47. million), (ii) fund Alltech's operations ($3.1 million) and/or (iii) retire all of Alltech's debt ($7.8 million). The Debtors anticipate, however, that Alltech will probably have sufficient internally-generated cash to pay off its debt and continue its operation without any contribution from the Debtors. In addition, it is reasonably likely that Alltech's existing debt may remain in place after the proposed transaction closes. Therefore, the risk that the Debtors would be required to pay the maximum amount for which the Debtors are seeking authorization hereunder is relatively small.

23.     The Debtors and Alltech have negotiated the proposed Stock Purchase Agreements at arm's length and in good faith. The Debtors also believe that the terms of the proposed transaction are fair to the Debtors.

24.     In light of the foregoing, the Debtors have determined in their business judgment that the acquisition of Alltech is fair and reasonable. The Debtors believe that the proposed transaction is in the best interest of their estates; grounded in sound business judgment; and satisfies the "sound business judgment" test for the use of assets outside the ordinary course of business under Section 363(b) of the Bankruptcy Code.

AFFIANT FURTHER SAYETH NOT

Dated this 10th day of June 2004

Gregory E. Poling
President
Grace Davison Specialty Materials

SUBSCRIBED AND SWORN TO BEFORE ME

JUN 10 2004 18:15                    410 531 4280         PAGE.11

*Beverly J Moxley*

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
BEVERLY J. MOXLEY
P. O. BOX 21
CALDWELL, WV 24925
My Commission Expires April 14, 2009