IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

Objection Deadline: July 2, 2004 at 4:00 p.m.
Hearing Date: July 19, 2004 at 12:00 p.m.

## DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. § 365 AUTHORIZING THE DEBTORS TO ASSIGN A LEASE AND SUBLEASE FOR REAL PROPERTY

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby move this Court (the "Motion") for entry of an Order, pursuant to sections 105(a), 363(b)(1), and 365(f)(2) of the title 11 of the United States Code (as amended, the "Bankruptcy Code"), authorizing the Debtors to assign a lease and sublease for real property. The Motion is in the best-interest of the Debtors, their estates, their creditors, and all other parties in interest because it will allow the Debtors to: (i) immediately recover the discounted present value of the net amounts that they are prospectively owed pursuant to the lease and sublease and (ii) relieve

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

themselves of the administrative burdens and risks associated with maintaining the lease and sublease. In support of this Motion, the Debtors respectfully state as follows:

## Jurisdiction

1. This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. The statutory bases for the relief requested herein are sections 105(a), 363(b), and 365(f)(2) of the Bankruptcy Code.

## Background

3. On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4. Pursuant to a lease dated November 8, 1978, as amended pursuant to a written amendment dated March 31, 1983 (the "Prime Lease"), between Douglas W. Maclay, John M. Rife, Jr., and Robert K. Carlin d/b/a MRC Properties, Ft. Myers #1, a joint venture ("MRC Properties") and W.R. Grace Co. - Conn., then known as W.R. Grace & Co. ("Grace"), MRC Properties leased to Grace a certain property having the street address of 5020 S. Cleveland Avenue, Ft. Myers Florida (the "Premises").

2

5. Pursuant to assignments dated December 31, 1984 and December 17, 1988, Jay Peak, LLC ("Jay Peak") became the successor-in-interest to MRC Properties under the Prime Lease.

6. Pursuant to a sublease, dated May 31, 1982, as amended and restated by the Restated Sublease dated November 26, 1986 (the "Internal Grace Sublease"), between Grace and Grace Retail Corporation, Grace subleased the Premises to Grace Retail Corporation.

7. By assignment dated November 25, 1986, Channel Home Centers Realty Corporation ("Channel") became the successor-in-interest to Grace Retail Corporation.

8. By Agreement of Sublease dated May 8, 1990 (the "Sublease") between Channel and Giant Furniture Industries, Inc. ("Giant Furniture"), Channel further subleased the Premises to Giant Furniture.

9. Grace subsequently became the successor-in-interest to Channel, thereby causing the Internal Grace Sublease to be extinguished by the merger of estates. Jay Peak subsequently became the successor-in-interest to Giant Furniture under the Sublease.

10. By order of this Court, dated October 25, 2002, Grace assumed the Prime Lease and Sublease.

11. The ultimate effect of the foregoing Prime Lease and related series of subleases and assignments is that: (i) Jay Peak is the owner and prime landlord of the Premises, (ii) Grace is Jay Peak's tenant, and (iii) Jay Peak, in turn, is Grace's subtenant. The annual rent payable by Grace to Jay Peak under the Prime Lease is $114,670 per annum, and the annual rent payable by

Jay Peak to Grace under the Sublease is presently $135,000 per annum, increasing to $144,000 for each of the applicable renewal options.

12. On April 16, 2004, W.R. Grace & Co.-Conn. and Jay Peak entered into an Assignment and Assumption Agreement (the "Assignment Agreement"), a copy of which is attached hereto as Exhibit A). Pursuant to the Assignment Agreement, (i) Grace agreed to sell and assign to Jay Peak all of Grace's right, title, and interest in the Prime Lease, the Sublease and the Premises; and (ii) Jay Peak promised to purchase such interest for $274,359.17 in cash, accept such assignment, and assume the obligations of Grace under the Prime Lease and Sublease.

13. The $274,359.17 amount represents the net present value, based on a discount factor of just over 5% of the difference between (i) the annual rent payable by Jay Peak to Grace under the Sublease and (ii) the annual amounts payable by Grace to Jay Peak under the Prime Lease.

### Relief Requested

14. Pursuant to sections 105(a), 363(b) and 365(f) of the Bankruptcy Code, the Debtors request authority to assign to Jay Peak all of Grace's rights, title and interest in the Prime Lease, the Sublease, and the Premises.

### Basis for Relief

15. Section 363(b)(1) of the Bankruptcy Code provides that a debtor in possession, "after notice and hearing may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). It is well-established that the decision to assume

and assign an executory contract or lease is a matter within the "business judgment" of the debtor. See In re Taylor, 913 F.2d 36 (3d Cir. 1989).

16.     The Debtors, in their business judgment, believe that the Assignment Agreement is in the best interest of the Debtors' estates. The Debtors do not use the Premises, and the Premises are not necessary for the Debtors reorganization efforts. Instead, the Debtors serve merely as a "middle-man" by (i) leasing the Premises from Jay Peak and simultaneously (ii) subleasing the premises back to Jay Peak. The Assignment Agreement will allow the Debtors to relieve themselves from the administrative burdens and financial risks associated with serving as the "middle-man" in this structure, while recouping the present value of the differential between (i) the amounts they are owed from Jay Peak over the remainder of the Sublease and (ii) the amounts they owe Jay Peak over the remaining term of the Prime Lease.

17.     There are currently no defaults arising under the Prime Lease or Sublease

18.     Section 365(f)(2) of the Bankruptcy Code sets forth the following prerequisites for the assignment of a lease: (i) the lease must be assumed in accordance with section 365 and (ii) the assignee of the lease must provide adequate assurance of future performance. The first requirement has already been satisfied; Grace assumed the Prime Lease and Sublease pursuant to an order by this Court, dated October 25, 2002. The second requirement is also satisfied. In the present situation, the party to whom the obligations under the lease will be assigned (Jay Peak) is the *identical party* to whom such obligations are owed. There is no risk that the assignee will fail to perform under the Prime Lease and Sublease because Jay Peak will be merely taking money from its metaphorical "left pocket" and moving it to its metaphorical "right pocket."

## Conclusion

19. The assignment of the Prime Lease and the Sublease is in the best interest of the Debtors, their creditors and estates. As described above, the assignment of the Prime Lease and Sublease will allow the Debtors to: (i) immediately receive the net present-value of their interest in the Prime Lease and Sublease and (ii) relieve themselves of the administrative burdens and risks associated with maintaining the Prime Lease, Sublease and the Premises.

## Notice

20. Notice of this Motion has been given to: (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to all official committees appointed by the United States Trustee, (v) Jay Peak, (vi) and all those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Relief

21. No previous application for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto approving the assignment of the Prime Lease and Sublease to Jay Peak pursuant to the Assignment Agreement and granting such other and further relief as is just and proper.

Respectfully Submitted:

Dated: June 14, 2004

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
James W. Kapp III
Samuel L. Blatnick
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG JONES
& WEINTRAUB P.C.

Laura Davis Jones (#2436)
David W. Carickhoff, Jr. (#3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

91100-001\DOCS_DE:94909.2