IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------ x
In re:                                                       :    Chapter 11
                                                             :    Case No. 01-01139 (SJB)
                                                             :
W. R. GRACE & CO., et al.,                                   :    Jointly Administered
                                                             :
                            Debtors,                         :
------------------------------------------------------------ x
```

## STATUS REPORT OF OFFICIAL COMMITTEE
## OF EQUITY SECURITY HOLDERS

TO THE HONORABLE RONALD L. BUCKWALTER,
SENIOR UNITED STATES DISTRICT JUDGE:

    The Official Committee of Equity Security Holders (the "Equity Committee"), by its undersigned counsel, submits this Status Report in response to the June 8, 2004 Order of the Court. The Equity Committee will not burden the Court with a recitation of the background and current status of this chapter 11 case, which is ably set forth in the Status Report filed today by the Debtors. The Equity Committee does wish, however, to set forth its views concerning the principal challenges facing the parties and this Court in this case:

    1.  The central challenge now facing the parties and the Court is to fashion appropriate procedures to resolve asbestos personal injury claims. In response to recent developments in the Bankruptcy Court, the Debtors have proposed two alternate approaches to this task, one involving resolution of these claims prior to confirmation of a plan of reorganization and the other involving resolution after confirmation. Common to these two approaches is the establishment of a process for identifying and resolving threshold issues common to large numbers of asbestos personal injury claims. The Equity Committee believes

KL2:2267672.2

that use of a common-issue approach of this sort is essential to a rational, efficient and fair adjudication of asbestos claims. Moreover, the Debtors' proposed procedures are well designed to take advantage of the Court's powers under the Bankruptcy Code to resolve the enormous challenges posed by the asbestos claims.

2. The common-issue approach proposed by the Debtors is necessitated by the inability of our tort system to deal effectively with the asbestos litigation crisis. The tort system's failures in this regard have long been recognized. In 1991, a distinguished panel of judges appointed by Chief Justice Rehnquist to examine this problem characterized the state of asbestos litigation as "a disaster of major proportions to both the victims and the producers of asbestos products, which the courts are ill-equipped to meet effectively":

> [D]ockets in both federal and state courts continue to grow; long delays are routine; trials are too long; the same issues are litigated over and over; transaction costs exceed the victims' recoveries by nearly two to one; exhaustion of assets threatens and distorts the process; and future claimants may lose altogether.

*Report of the Judicial Conference Ad Hoc Committee on Asbestos Litigation* 2-3 (Mar. 1999) ("Judicial Conference Report").

3. Courts and commentators have overwhelmingly echoed the Judicial Conference Report's conclusions. *See, e.g., Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 821 & n.1 (1999) (quoting Judicial Conference Report and concluding that "the elephantine mass of asbestos cases . . . defies customary judicial administration"); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 597-98 (1997) (describing "asbestos-litigation crisis" and quoting Judicial Conference Report's conclusions); *id.* at 631-32, 637 (Breyer, J., concurring in part and dissenting in part) (asbestos litigation suffers from "[d]elays, high costs, and a random pattern of

-2-

noncompensation," which pose a "real and present danger"); Jack B. Weinstein, *Individual Justice in Mass Tort Litigation* 155 (1995) ("If mass tort litigation is allowed to run its course in the tort system, the result will be huge discrepancies in the awards received by similarly situated plaintiffs, backlogged courts, lengthy delays in compensation of victims, and enormous transaction costs"); Deborah R. Hensler & Mark A. Peterson, *Understanding Mass Personal Injury Litigation: A Socio-Legal Analysis*, 59 Brook. L. Rev. 961, 1031 (1993) ("Transaction costs -- chiefly, legal fees -- dwarf the amounts paid to injured claimants, who often wait years to receive compensation. Furthermore, the amounts recovered by similarly situated claimants may vary dramatically, and litigants with no impairment may receive compensation while those with disabling injuries receive little or no financial support").

4.  Because Congress has taken no action to reform the asbestos litigation process, the Bankruptcy Code provides the only effective tools available to the courts to deal with the problem. Unlike any other court in our federal system, a Bankruptcy Court -- or a District Court sitting in bankruptcy -- has the power to centralize the resolution of all claims against a particular defendant in a single court. This unparalleled power gives the Court unparalleled opportunities. Perhaps most significant is the Court's power to rule globally on issues common to large numbers of claimants -- so that these common issues are litigated only once, rather than being litigated repeatedly in different courts, with inconsistent results, lengthy delays, and enormous transaction costs. In the present case, such common issues would likely include the establishment of appropriate diagnostic and evidentiary standards for proof of (i) actual injury, (ii) sufficient occupational exposure, and (iii) in the case of some Grace products, causation.

5. There can be no question that each of these issues is an issue *common* to large numbers of claims, rather than particular to individual claimants. Each of these common issues can readily be resolved through a single summary judgment motion. Such joint proceedings are eminently feasible, and are well within the Court's broad power to consolidate proceedings where appropriate. Moreover, global disposition of threshold common issues is precisely the sort of stringent judicial "gate-keeping" that, as the Fifth Circuit Court of Appeals has urged, is necessary to weed out "weak and frivolous claims" and thereby manage mass tort litigation "in a way that avoids judicial meltdown." *Castano v. American Tobacco Co.*, 84 F.3d 734, 747 n. 24 (5th Cir. 1996).

6. The Court's power to estimate the value of asbestos claims against Grace pursuant to Bankruptcy Code § 502(c) provides no substitute for the need to address threshold common issues on a global basis. If large categories of claims against Grace lack merit as a matter of law -- as Grace and the Equity Committee strongly believe -- these claims should be dismissed, and any estimation should give zero value to these claims. Estimation predicated merely on a statistical extrapolation of claim values from the amounts of Grace's pre-petition settlements would be grossly inappropriate. The avalanche of claims against Grace prior to its bankruptcy, coupled with the absence of any way to consolidate those claims in a single forum, left Grace with no choice but to settle large numbers of claims on an "inventory" basis; this, in turn, required payment of significant sums to resolve many meritless, as well as meritorious, claims. In bankruptcy, by contrast, the claims against Grace are all in a single forum, and the Court therefore has the ability to dispose of meritless claims through common issue adjudication, a far superior result.

7. The Equity Committee agrees with the Debtors that an appropriate litigation protocol, which identifies and resolves issues common to large numbers of asbestos personal injury claims, can properly be implemented either before or after confirmation of a plan of reorganization. Whatever the timing, what is essential is that appropriate procedures of this sort be designed and implemented. Only in this fashion can the long-standing deficiencies of the tort system, which Congress has yet to remedy, be ameliorated rather than perpetuated through the exercise of the powers provided by the Bankruptcy Code.

Dated: June 21, 2004

> Respectfully submitted,
>
> KRAMER LEVIN NAFTALIS & FRANKEL LLP
> Philip Bentley
> Gary M. Becker
> 919 Third Avenue
> New York, New York 10022
> Telephone: (212) 715-9100
> Facsimile: (212) 715-8000
>
> - and -
>
> KLETT ROONEY LIEBER & SCHORLING
>
> By: /s/ Rhonda L. Thomas             .
> Teresa K. D. Currier (Del. No. 3080)
> Rhonda L. Thomas (Del. No. 4053)
> The Brandywine Building
> 1000 West Street, Suite 1410
> Wilmington, Delaware 19801
> Telephone: (302) 552-4200
> Facsimile: (302) 552-4295
>
> Attorneys for the Official Committee of
> Equity Security Holders

KL2:2267672.2