# EXHIBIT 18

1              IN THE UNITED STATES BANKRUPTCY COURT

2                 FOR THE DISTRICT OF DELAWARE

3

4

5

6    IN RE:                              NO. 01-01139 JKF

7        W.R. GRACE & CO., et al.,
                    Debtors.

8                                        COPY

9

10   VIDEOTAPE
     DEPOSITION OF:   THOMAS E. HAMILTON
11
     DATE:            February 25, 2003      VIDEOTAPE
12
     TIME:            10:35 a.m.
13
     LOCATION:        Richardson, Patrick, Westbrook
14                       & Brickman, LLC
                      1037 Chuck Dawley Boulevard
15                    Building A
                      Mount Pleasant, SC
16
     TAKEN BY:        Counsel for the Claimant
17
     REPORTED BY:     PATRICIA L. THOMPSON,
18                    Registered Professional
                      Reporter
19   _____

20   Computer-Aided Transcription By:

21       A. WILLIAM ROBERTS, JR., & ASSOCIATES

22   Charleston, SC
     (843) 722-8414              Greenville, SC
23                               (864) 234-7030

     Columbia, SC
24   (803) 731-5224              Charlotte, NC
                                 (704) 573-3919
25

     A. WILLIAM ROBERTS, JR., & ASSOCIATES (800) 743-DEPO

THOMAS E. HAMILTON - EX. BY MR. TURKEWITZ

1    exposure within acceptable or government regulatory

2    standards that we didn't really focus on

3    reentrainment, although I will say this:  We knew

4    that reentrainment was a major problem in our

5    expander plants.  That's why we had tremendous

6    programs for cleaning.

7              When there was a plant audit, a fiber

8    audit, an occupational exposure audit, planned for

9    an expanded plant, they were would spend upwards of

10   four to five days cleaning the plant, and a lot of

11   this dealt with settled dust that they wanted to

12   vacuum up and clean because of the reentrainment

13   issue.  Although we never talked about it as

14   reentrainment, that essentially was what it was.

15   I mean, if you have dust on the floor, you've got

16   to vacuum that up before you do your audit or

17   you're going to have a high fiber count.

18        Q.    And why would you have a high fiber

19   count?  Would it be from the dust getting

20   disturbed?

21        A.    Yes.  It would be from dust that had

22   settled and then been redistributed just through

23   activities in the plant.

24        Q.    Well, did W.R. Grace ever implement any

25   precautions to avoid exposure to asbestos from

THOMAS E. HAMILTON - EX. BY MR. TURKEWITZ

1    asbestos-settled dust?

2        A.    Yes.   I think there were -- I think

3    that would be a fair statement to say yes, that we

4    did that.   I can give some examples.

5            For example, we banned the use of

6    brooms in the expander plants, and the reason is

7    that once you have settled dust, you don't want to

8    sweep it with a broom.

9            When brooms were found in plants, that

10   was a big deal.   That would go down in the report

11   that there were brooms there, and we would tell the

12   plant managers and the manufacturing managers about

13   the fact that we're finding brooms again.   That

14   would be an issue of settled dust.   Also, to

15   replace a broom we put in vacuum cleaners and

16   vacuum systems, which were HEPA or high efficiency

17   particulate arresting vacuum cleaners, so that

18   during the vacuuming you wouldn't reentrain the

19   dust you were picking up.

20       Q.    While you were in Grace's Health and

21   Safety Department did you conduct any testing

22   involving products?

23            MR. RESTIVO:   By "you" you mean the

24   witness, or do you mean Grace?

25            MR. TURKEWITZ:   I'm asking the witness.

A. WILLIAM ROBERTS, JR., & ASSOCIATES (800) 743-DEPO

THOMAS E. HAMILTON - EX. BY MR. TURKEWITZ

1    an expert witness?  Because I think you're asking

2    for opinion evidence.

3              MR. TURKEWITZ:  Let me rephrase that

4    question.

5    BY MR. TURKEWITZ:

6         Q.   Mr. Hamilton, based on your knowledge

7    and your experience with regard to the simulated

8    and actual attic testing of zonolite attic

9    insulation how would you describe the airborne

10   asbestos levels that resulted?

11             MR. RESTIVO:  I'm going to object

12   because I think you're asking for an opinion

13   evidence, unless you advise us whether or not

14   you're calling Mr. Hamilton as an expert witness.

15   BY MR. TURKEWITZ:

16        Q.   You can answer the question, sir.

17        A.   The original testing that was done by

18   Steve Venuti and me in Cambridge in the small room

19   that we did the original attic testing, the testing

20   of zonolite attic insulation, showed that there was

21   a real potential for exposure for anyone who was

22   disturbing free, loose Libby vermiculite.  Those

23   levels were consistently above one fiber per cc and

24   ranged as high as 28.

25             Testing done by Fred Eaton in the

A. WILLIAM ROBERTS, JR., & ASSOCIATES (800) 743-DEPO

THOMAS E. HAMILTON - EX. BY MR. TURKEWITZ

1   simulated attic tests and in the actual home tests

2   showed that in spite of the best efforts to clean

3   the vermiculite, in spite of the best efforts to

4   amend the vermiculite, that we never -- at Grace we

5   never were successful in finding a way of

6   installing zonolite attic insulation without having

7   exposures above one fiber per cc.  You can make it

8   super clean and it's still above 1.  You can put

9   all the soap you wanted on it and it still wouldn't

10  be below 1.

11          So if you were to sum up all this data,

12  as you asked me to do in my opinion as a certified

13  industrial hygienist who was involved in this on a

14  daily basis and had reviewed and had all these

15  documents on my desk at one time during my

16  employment at Grace, the loose zonolite material

17  from Libby has always -- no matter what we did,

18  always represented an opportunity for an exposure

19  that was going to be high.  Maybe just for a short

20  period of time, but it would be high, and it would

21  be measured in levels above one fiber per cc, and

22  we never did find a way to reduce that.

23          Q.   And based on the results do you have an

24  opinion as to whether zonolite attic insulation can

25  release asbestos fibers and cause contamination in

A. WILLIAM ROBERTS, JR., & ASSOCIATES (800) 743-DEPO

THOMAS E. HAMILTON - EX. BY MR. TURKEWITZ

1   a home after insulation?

2          MR. RESTIVO:   Object to the form of the

3   question unless you're going to call this witness

4   as an expert rather than a fact witness.

5          A.   In my opinion any time loose woody

6   vermiculite, whether it's 1, 2, 3, 4, 5 -- it

7   doesn't matter what size it is.  Any time you have

8   loose Libby vermiculite from an expander plant it

9   will have an opportunity to release fibers into a

10  home, although if it's just sitting in the attic

11  and nobody is touching it, it's not going anywhere,

12  but the moment any movement of that is done, any

13  time there is any maintenance done, any time there

14  is any disturbance of that material, whether it's a

15  renovation or a demolition, there are opportunities

16  for asbestos fiber exposures which exceed OSHA

17  standards.

18          And I want to emphasis one more point.

19  I do not believe that the application of OSHA

20  standards to homeowners and to children has any

21  basis in this study of the zonolite attic

22  insulation.  The application of occupational

23  standards to a homeowner is just not allowable.

24          Q.   Based on your testing at Grace did you

25  form an opinion as to whether Grace should have

*THOMAS E. HAMILTON - EX. BY MR. TURKEWITZ*

1    anyway to this, that there is a duty to inform them

2    and there is at least a very easy quick fix that

3    will not involve them being exposed.

4              This material should be removed from

5    attics appropriately.  This should be done by

6    professionals that know what they're doing.  It

7    could be done in a matter of minutes in most

8    attics.  Vacuuming inside of an attic with a vac

9    truck would take one-hundredth of the time it took

10   to put in, and it could be done safely.  It could

11   be removed in such a way that it would no longer

12   represent an issue except for material that might

13   have fallen down into an interstitial space, but in

14   my opinion people that have this in their homes now

15   should be warned.

16         Q.    And what information should homeowners

17   be told?

18              MR. RESTIVO:  The same objection.

19         A.    I think they should be told the truth;

20   that if they don't disturb it, it won't be a

21   problem.  If they do disturb it, it will be a

22   problem or a potential problem and it could create

23   a high level of exposure over a brief period of

24   time, but that potential is there, and what I call

25   an informed -- an enlightened decision on what to

THOMAS E. HAMILTON - EX. BY MR. TURKEWITZ

1    do with it at least could be made.

2                We have millions of homeowners out

3    there that don't know about this problem.

4            Q.    Mr. Hamilton, do you have zonolite

5    attic insulation in your home?

6            A.    No, I do not.

7            Q.    And based on your testing if you had

8    zonolite attic insulation in your home what action

9    would you take?

10                MR. RESTIVO:    Object to the form.

11            A.    If I had it in my home, I would have it

12    removed.

13            Q.    And why?

14            A.    Because it would be very easy to do, it

15    would not cost that much money to do it, and there

16    are other substitutes for it that are just as good

17    that do not present the asbestos hazard that this

18    material does.

19            Q.    At any point was your involvement with

20    the Construction Products Division interrupted?

21            A.    Yes.

22            Q.    What happened?

23            A.    I was called to give a deposition in a

24    -- specifically there were two events which

25    interrupted my work with Construction Products

A. WILLIAM ROBERTS, JR., & ASSOCIATES (800) 743-DEPO

# EXHIBIT 19

```
 1              IN THE UNITED STATES BANKRUPTCY COURT

 2                 FOR THE DISTRICT OF DELAWARE

 3

 4      ------------------------------x

                                      *

 5      In re:                        *   Chapter 11

                                      *

 6      W. R. GRACE & CO., et al.,    *   Case No. 01-01139(JKF)

                                      *

 7                 Debtors.           *   (Jointly Administered)

                                      *

 8      ------------------------------x

 9

10

11

12         Deposition of MORTON CORN, Ph.D., B.Ch.E., CSP

13                    Linthicum, Maryland

14                   Thursday, May 29, 2003

15                        9:08 a.m.

16

17

18

19

20

21

22

23      Job No.:  1-17366

24      Pages:  1 - 203

25      Reported by:  Marianne R. Hewitt
```

A. WILLIAM ROBERTS, JR., & ASSOCIATES (800) 743-DEPO

Morton Corn, Ph.D.   -   May 29, 2003

Page 113

1          Q.    Fair enough, Doctor.  Let's look at the next

2   point, if you plan to remodel or conduct renovations

3   that would disturb the vermiculite, hire professionals

4   trained and certified to handle asbestos to safely

5   recover the material.

6               Do you agree with that?

7          A.    I agree with that.

8          Q.    Okay.

9          A.    I agree that's the best way to proceed.

10         Q.    Okay.  And next, you should never attempt to

11  remove the insulation yourself, hire professionals

12  trained and certified to safely remove the material.

13         A.    I think that's a good recommendation.

14         Q.    Okay.  Now, let's -- next, what if I

15  occasionally have to go into my attic?

16         A.    All right.  Okay.

17         Q.    All right.  And down to number four, if you

18  need work done in your attic such as installation of

19  cable or utility lines, hire trained and certified

20  professionals who can safely do the work.

21              Would you agree with that?

22         A.    It's probably a good recommendation for the

23  general public, both from the safety point of view and

24  from the public health point of view.

25              From the magnitude of the risk of doing that,

# EXHIBIT 20



**U.S. Environmental Protection Agency**

# Asbestos

Recent Additions | Contact Us | Print Version    Search: [          ] [GO]

EPA Home > Prevention, Pesticides & Toxic Substances > Pollution, Prevention & Toxics
> Asbestos > Vermiculite > Vermiculite Insulation

**Vermiculite**

**Asbestos General Information**

**Asbestos in Your Home**

**Asbestos Ban and Phase Out**

**EPA Regional Contacts**

**Information Resources**

**Laws and Regulations**

**NDAAC Directory**

## Current Best Practices for Vermiculite Attic Insulation - May 2003

The U.S. Environmental Protection Agency (EPA) offices have received a large number of phone calls from citizens concerned about vermiculite insulation in their home that might be contaminated with asbestos. EPA is gathering more information about vermiculite insulation and other products containing vermiculite. If you suspect vermiculite insulation is in your home, the safest thing is to leave the material alone. If you decide to remove or must otherwise disturb the material due to a renovation project, consult with an experienced asbestos contractor. The following information provides a common-sense approach to help you find out what kind of insulation is in your home and decide what to do if you have vermiculite insulation.

**What is vermiculite insulation?**
**Do I have vermiculite insulation?**
**Photo - Different Grades of Vermiculite**
**Photo - Close Up of Vermiculite Insulation in an Attic**
**Photo - Attic Containing Vermiculite Insulation**
**Is vermiculite insulation a problem?**
**How does asbestos cause health problems?**
**What should I do if I have vermiculite attic insulation?**
**What if I occasionally have to go into my attic?**
**What are the next steps?**
**Is my health at risk from previous exposures to the asbestos in the insulation?**
**What if I have work-related exposure to vermiculite?**
**Where can I get more information?**

---

**What is vermiculite insulation?**
Vermiculite is a naturally occurring mineral that has the unusual property of expanding into worm-like accordion shaped pieces when heated. The expanded vermiculite is a light-weight, fire-resistant, absorbent, and odorless material. These properties allow vermiculite to be used to make numerous products, including attic insulation.

**Do I have vermiculite insulation?**
Vermiculite can be purchased in various forms for various uses. Sizes of vermiculite products range from very fine particles to large (coarse) pieces nearly an inch long. Vermiculite attic insulation is a pebble-like, pour-in product and is usually light-brown or gold in color. The pictures below show several samples of vermiculite attic insulation.

**Photo - Different Grades of Vermiculite -**

36.3



**Photo - Close Up of Vermiculite Insulation in an Attic -**



**Photo - Attic Containing Vermiculite Insulation -**



**Is vermiculite insulation a problem?**
Prior to its close in 1990, much of the world's supply of vermiculite came from a mine near Libby, Montana. This mine had a natural deposit of asbestos which resulted in the vermiculite being contaminated with asbestos. Attic insulation produced using vermiculite ore, particularly ore that originated from the Libby mine, may contain asbestos fibers. Today, vermiculite is mined at three U.S. facilities and in other countries which have low levels of contamination in the finished material.

**How does asbestos cause health problems?**
Asbestos can cause health problems when inhaled into the lungs. If products containing asbestos are disturbed, thin, lightweight asbestos fibers are released into the air. Persons breathing the air may breathe in asbestos fibers. Continued exposure increases the amount of fibers that remain in the lung. Fibers embedded in lung tissue over time may result in lung diseases such as asbestosis, lung cancer, or mesothelioma. Smoking increases your risk of developing illness from asbestos exposure.

**What should I do if I have vermiculite attic insulation?**
DO NOT DISTURB IT. Any disturbance has the potential to release asbestos fibers into the air. Limiting the number of trips you make to your attic and shortening the length of those trips can help limit your potential exposure. EPA and ATSDR strongly recommend that:

    • Vermiculite insulation be left undisturbed in your attic. Due to the uncertainties with existing testing techniques, it is best to assume that the material may contain asbestos.

    • You should not store boxes or other items in your attic if retrieving the material will disturb the insulation.

    • Children should not be allowed to play in an attic with open areas of vermiculite insulation.

    • If you plan to remodel or conduct renovations that would disturb the vermiculite, hire professionals trained and certified to handle asbestos to safely remove the material.

    • You should never attempt to remove the insulation yourself. Hire professionals trained and certified to safely remove the material.

**What if I occasionally have to go into my attic?**
EPA and ATSDR strongly recommend that homeowners make every effort not to disturb vermiculite insulation in their attics. If you occasionally have to go into your attic, current best practices state you should:

    1. Make every effort to stay on the floored part of your attic and to not disturb the insulation.

    2. If you must perform activities that may disturb the attic insulation such as moving boxes (or other materials), do so as gently as possible to minimize the disturbance.

    3. Leave the attic immediately after the disturbance.

    4. If you need work done in your attic such as the installation of cable or utility lines, hire trained and certified professionals who can safely do the work.

    5. It is possible that vermiculite attic insulation can sift through cracks in the ceiling, around light fixtures, or around ceiling fans. You can prevent this by sealing the cracks and holes that insulation could pass through.

    6. Common dust masks are not effective against asbestos fibers. For information on the requirements for wearing a respirator mask, visit the following OSHA website: http://www.osha-slc.gov/SLTC/respiratoryprotection/index.html

**What are the next steps?**
The guidance provided in this brochure reflects the current testing technology and knowledge of precautions one may take regarding vermiculite attic insulation. EPA is initiating further studies on vermiculite attic insulation and pursuing other asbestos related issues. Additional information will be provided to the public via the EPA and ATSDR web sites and through additional outreach materials as it becomes available.

**Is my health at risk from previous exposures to the asbestos in the insulation?**
If you removed or disturbed the insulation, it is possible that you inhaled some asbestos fibers. Also the disturbance may have resulted in the fibers being deposited into other areas of the home. Exposure to asbestos increases your risk of developing lung disease. That risk is made worse by smoking. In general, the greater the exposure to asbestos, the greater the chance of developing harmful health effects. Disease symptoms may take several years to develop following exposure. If you are concerned about possible exposure, consult a physician who specializes in lung diseases (pulmonologist). Where can I get information on testing or removal of the insulation? EPA and ATSDR strongly recommend using a trained and certified professional to conduct removal work. Removing the insulation yourself could potentially spread asbestos fibers throughout your home, putting you and your family at risk of inhaling these fibers. For certified asbestos removal professionals in your area, refer to your local Yellow Pages. Your State Environmental Agency can confirm that the company's credentials are current. You can find your State Agency at: http://www.epa.gov/epahome/whereyoulive.htm. Currently, there are specific technical issues involving vermiculite sampling that can complicate testing for the presence of asbestos fibers and interpreting the risk from exposure. EPA and ATSDR are not recommending at this time that homeowners have vermiculite attic insulation tested for asbestos. As testing techniques are refined, EPA and ATSDR will provide information to the public on the benefits of testing that produce more definitive and accurate test results.

**What if I have work-related exposure to vermiculite?**
Workers who have had significant past exposure, or have significant ongoing exposure to asbestos, to vermiculite from Libby, or to other asbestos contaminated materials should consider getting a medical exam from a physician who knows about diseases caused by asbestos. For more information and to obtain a fact sheet concerning occupational exposure to vermiculite, contact the National Institute for Occupational Safety and Health (NIOSH) at: 1-800-35-NIOSH, or http://www.cdc.gov/niosh/homepage.html.

**Where can I get more information?**
Information on the Agency's guidance on asbestos and vermiculite, including insulation and horticultural products, has previously been available on EPA's website. Additional information on vermiculite and asbestos is available from the following sources:

| | |
|---|---|
| **General Information** | EPA's Toxic Substances Control Act (TSCA) Assistance Information Service: Asbestos Line: 1-800-471-7127 |
| | EPA Asbestos Ombudsman: 1-800-368-5888 |
| | EPA's Asbestos Home Page: http://www.epa.gov/asbestos/ |

## What is      iiculite insulation?

Vermiculite i...  .aturally occurring mineral that has the unusual property of expanding into worm-like accordion shaped pieces when heated. The expanded vermiculite is a lightweight, fire-resistant, absorbent, and odorless material. These properties allow vermiculite to be used to make numerous products, including attic insulation.

## Do I have vermiculite insulation?

Vermiculite can be purchased in various forms for various uses. Sizes of vermiculite products range from very fine particles to large (coarse) pieces nearly an inch long. Vermiculite attic insulation is a pebble-like, pour-in product and is usually light-brown or gold in color. The pictures in the center of this pamphlet and on the cover show several samples of vermiculite attic insulation.

## Is vermiculite insulation a problem?

Prior to its close in 1990, much of the world's supply of vermiculite came from a mine near Libby, Montana. This mine had a natural deposit of asbestos which resulted in the vermiculite being contaminated with asbestos. Attic insulation produced using vermiculite ore, particularly ore that originated from the Libby mine, may contain asbestos fibers. Today, vermiculite is mined at three U.S. facilities and in other countries which have low levels of contamination in the finished material.

## How does asbestos cause health problems?

Asbestos can cause health problems when inhaled into the lungs. If products containing asbestos are disturbed, thin, lightweight asbestos fibers are released into the air. Persons breathing the air may breathe in asbestos fibers. Continued exposure increases the amount of fibers that remain in the lung. Fibers embedded in lung tissue over time may result in lung diseases such as asbestosis, lung cancer, or mesothelioma. Smoking increases your risk of developing illness from asbestos exposure.



## What should I do if I have vermiculite attic insulation?

DO NOT DISTURB IT. Any disturbance has the potential to release asbestos fibers into the air. Limiting the number of trips you make to your attic and shortening the length of those trips can help limit your potential exposure.

EPA and ATSDR strongly recommend that:

- Vermiculite insulation be left undisturbed in your attic. Due to the uncertainties with existing testing techniques, it is best to assume that the material may contain asbestos.
- You should not store boxes or other items in your attic if retrieving the material will disturb the insulation.
- Children should not be allowed to play in an attic with open areas of vermiculite insulation.
- If you plan to remodel or conduct renovations that would disturb the vermiculite, hire professionals trained and certified to handle asbestos to safely remove the material. You should never attempt to remove the insulation yourself. Hire professionals trained and certified to safely remove the material.

## What if I occasionally h.      to go into my attic?

EPA and ATSDR strongly recommend that homeowners make every effort not to disturb vermiculite insulation in their attics. If you occasionally have to go into your attic, current best practices state you should:

1. Make every effort to stay on the floored part of your attic and to not disturb the insulation.

2. If you must perform activities that may disturb the attic insulation such as moving boxes (or other materials), do so as gently as possible to minimize the disturbance.

3. Leave the attic immediately after the disturbance.

4. If you need work done in your attic such as the installation of cable or utility lines, hire trained and certified professionals who can safely do the work.

5. It is possible that vermiculite attic insulation can sift through cracks in the ceiling, around light fixtures, or around ceiling fans. You can prevent this by sealing the cracks and holes that insulation could pass through.

6. Common dust masks are not effective against asbestos fibers. For information on the requirements for wearing a respirator mask, visit the following OSHA website: http://www.osha-slc.gov/SLTC/ respiratoryprotection/index.html

## What are the next steps?

The guidance provided in this brochure reflects the current testing technology and knowledge of precautions one may take regarding vermiculite attic insulation. EPA is initiating further studies on vermiculite attic insulation and pursuing other asbestos related issues. Additional information will be provided to the public via the EPA and ATSDR websites and through additional outreach materials as it becomes available.







United States
Environmental Protection
Agency

Agency for Toxic
Substances and
Disease Registry

Current Best Practices for

# Vermiculite Attic Insulation

May 2003

EPA 747-F-03-001

## Is my health at risk from previous exposure to the asbestos in the insulation?

If you removed or disturbed the insulation, it is possible that you inhaled some asbestos fibers. Also the disturbance may have resulted in the fibers being deposited into other areas of the home. Exposure to asbestos increases your risk of developing lung disease. That risk is made worse by smoking. In general, the greater the exposure to asbestos, the greater the chance of developing harmful health effects. Disease symptoms may take several years to develop following exposure. If you are concerned about possible exposure, consult a physician who specializes in lung diseases (pulmonologist).

## Where can I get information on testing or removal of the insulation?

EPA and ATSDR strongly recommend using a trained and certified professional to conduct removal work. Removing the insulation yourself could potentially spread asbestos fibers throughout your home, putting you and your family at risk of inhaling these fibers.

For certified asbestos removal professionals in your area, refer to your local Yellow Pages. Your State Environmental Agency can confirm that the company's credentials are current.
You can find your State Agency at:
http://www.epa.gov/epahome/whereyoulive.htm

Currently, there are specific technical issues involving vermiculite sampling that can complicate testing for the presence of asbestos fibers and interpreting the risk from exposure. EPA and ATSDR are not recommending at this time that homeowners have vermiculite attic insulation tested for asbestos. As testing techniques are refined, EPA and ATSDR will provide information to the public on the benefits of testing that produce more definitive and accurate test results.

## What if I have work related exposure to vermiculite?

Workers who have had significant past exposure, or have significant ongoing exposure to asbestos, to vermiculite from Libby, or to other asbestos-contaminated materials should consider getting a medical exam from a physician who knows about diseases caused by asbestos. For more information and to obtain a fact sheet concerning occupational exposure to vermiculite, contact the National Institute for Occupational Safety and Health (NIOSH) at: 1-800-35-NIOSH, or
http://www.cdc.gov/niosh/homepage.html

## Where can I get more information?

Information on the Agency's guidance on asbestos and vermiculite, including insulation and horticultural products, has previously been available on EPA's website. Additional information on vermiculite and asbestos is available from the following sources:

**General Information**
EPA's Toxic Substances Control Act (TSCA) Assistance Information Service: Asbestos Line:
1-800-471-7127

EPA Asbestos Ombudsman
1-800-368-5888

EPA's Asbestos Home Page
http://www.epa.gov/asbestos/

**Health Information**
Agency for Toxic Substances and Disease Registry (ATSDR) http://www.atsdr.cdc.gov

**Worker Safety**
Occupational Safety and Health Administration (OSHA) http://www.osha.gov

National Institute for Occupational Safety and Health (NIOSH) http://www.cdc.gov/niosh/homepage.html

**Consumer Products**
Consumer Product Safety Commission (CPSC)
http://www.cpsc.gov

**Mineralogy**
United States Geological Survey (USGS)
http://minerals.usgs.gov/minerals/

EXHIBIT 21

FILED

DEC 1 9 2000

THOMAS R. FALLQUIST
SPOKANE COUNTY CLERK

SUPERIOR COURT, STATE OF WASHINGTON, COUNTY OF SPOKANE

MARCO BARBANTI, individually and on
behalf of a class of all others similarly situated,

                     Plaintiff,

    v.

W.R. GRACE & COMPANY-CONN (a
Connecticut corporation); W.R. GRACE &
COMPANY (a Delaware corporation); W.R.
GRACE & CO., a/k/a GRACE, an association of
business entities; SEALED AIR
CORPORATION (a Delaware corporation); and
WILLIAM V. CULVER, resident of the State of
Washington,

                     Defendants.

NO. 00-2-01756-6

CLASS ACTION

ORDER GRANTING PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
PURSUANT TO CR 23(b)(2)

Motion No. 1

1. BASIS

      THIS MATTER came before the Court for hearing on the 21st day of September, 2000, on

Plaintiffs' Motion for Class Certification. All parties were represented by counsel.

      In deciding the Motion, the Court considered the oral argument of counsel together with the

documents identified in the attached Memorandum Decision.

2. FINDINGS

      This Court issued its written Memorandum Decision on this matter on November 28, 2000,

and the Court hereby adopts its findings and ruling issued on that date. The Memorandum

ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION PURSUANT TO CR 23(b)(2): 1
(Motion No. 1)

1  Decision is attached to this Order and fully incorporated herein by reference. In particular, the

2  Court expressly finds:

3      1). That the numerosity requirement has been met based on the evidence presented;

4      2). That named plaintiff's claims present questions of law and fact common to the class;

5      3). That the claims of the above-named plaintiff are typical of the claims of the class he
   seeks to represent;

6      4). That named plaintiff and his counsel can fairly and adequately represent the interests of

7  the class; and

8      5). That the action brought by plaintiff is equitable in character and is properly certified

9  under Civil Rule 23(b)(2).

10

11                              3. <u>ORDER</u>

       THEREFORE, IT IS HEREBY ORDERED that Plaintiffs' Motion is Granted and that this

12 action may be maintained as a class action pursuant to CR 23 and its subdivision CR 23(b)(2) with

13 respect to the claims asserted in the Class Action Complaint against W. R. Grace & Company-

14 Conn., W. R. Grace & Company, W. R. Grace & Co., a/k/a Grace, an association of business

15 entities, Sealed Air Corporation, and William V. Culver. (The Court has not made a finding as to

16 the existence or non-existence of the entity sued as "W.R. Grace & Co. a/k/a Grace, an association

17 of business entities").

       The Class shall be composed of and defined as: All owners or occupiers of real property

18 located in the state of Washington in which Zonolite Attic Insulation has been installed.

19        DONE IN OPEN COURT this _19th_ day of _November_ 2000.

20

21                              _____

22                              KATHLEEN M. O'CONNOR
                                JUDGE

23

24

25

26

ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION PURSUANT TO CR 23(b)(2):  2
(Motion No. 1)

1

2  Presented by:
   LUKINS & ANNIS, P.S.

3

4  By:
5     DARRELL W. SCOTT, WSBA # 20241
      Attorneys for Plaintiff
6  Approved as to Form and Notice
   Of Presentment Waived:
7

8  PERKINS, COIE, LLP

9

10 By:  Approved telephonically by V.L. Woolston 12/19/00
      V. L. Woolston, Jr., WSBA #9453
11    Rocco N. Treppiedi, WSBA #9137
12    Attorneys for Defendants Grace

13

14 PAINE, HAMBLEN, COFFIN, BROOKE & MILLER

15

16 By:  Approved telephonically by David Broom 12/19/00
      Donald G. Stone, WSBA #7547
17    David L. Broom, WSBA #02096
18    Attorneys for Defendants Sealed Air Corporation

19

20

21

22

23

24

25

26
   ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS
   CERTIFICATION PURSUANT TO CR 23(b)(2):  3
   (Motion No. 1)

1

SUPERIOR COURT, STATE OF WASHINGTON, COUNTY OF SPOKANE

2

3  MARCO BARBANTI, ETAL,                    )
                                            )   Case No.: No. 00-2-01756-6
4           Plaintiff,                      )
                                            )
5      vs.                                  )   MEMORANDUM DECISION (MOTION #1)
                                            )
6  W. R. GRACE & CO. ETAL,                  )
                                            )
7           Defendant                       )
                                            )
8  _____)

9       This matter came before the court for oral argument on September 21, 2000, on

10 Plaintiffs' Motion for Class Certification Pursuant to CR 23(b)(2).  The following pleadings were

11 considered by the court:

12 1.  Plaintiffs' Motion for Class Certification Pursuant to CR 23(b)(2)

13 2.  Brief in Support of Class Certification

14 3.  Declaration of Kristy L. Bergland

15 4.  Declaration of Richard S. Lewis

16 5.  Declaration of Allan M. McGarvey

17 6.  Affidavit of Darrell W. Scott

18 7.  Declaration of Fabrice Vincent

19 8.  Declaration of Edward J. Westbrook

20 9.  Plaintiffs' Supplemental Submission in Support of Class Certification

21 10. Declaration of Fabrice N. Vincent and attachments thereto

22 11. Grace Defendants' Brief in Opposition to Plaintiffs' Motion for Class Certification Pursuant

23     to CR 23(b)(2) and 23(b)(3)

24 12. Declaration of Rocco N. Treppiedi and attachments thereto

25

13. Affidavit of Donald J. Hurst (submitted by Plaintiffs in support of the application for

Preliminary Injunction and submitted by Defendants' in support of their opposition to

Plaintiff's Class Certification motion) and attachments thereto

14. Defendant Sealed Air Corporation's Joinder in Grace's Argument and Brief in Opposition to

Plaintiffs' Motion for Class Certification Pursuant to CR 23(b)(2) and 23(b)(3)

15. Plaintiffs' Reply in Support of Motion for Class Certification.

## STATEMENT OF FACTS

Plaintiff Barbanti brings this action on behalf of a purported class of all owners and
occupiers of real property located in the State of Washington in which Zonolite Attic Insulation
has been installed.  Defendants' are alleged to be the manufacturers of this product.  The claims
asserted include product liability claims under the Washington Products Liability Act (WPLA),
RCW 7.72 and violations of the Consumer Protection Act (CPA), RCW 19.86.

Plaintiffs' are seeking injunctive relief as well as compensation for property damage
suffered by class members.  Plaintiffs are not seeking compensatory damages for any illness a
class member may have contracted as a result of exposure to Zonolite Attic Insulation nor are
they seeking to establish a medical-monitoring regime.

## DISCUSSION

In Washington the process of class certification is governed Civil Rule CR 23.  At the
outset the plaintiffs must demonstrate that they meet the four requirements of CR 23(a):

> One or more members of a class may sue or be sued as representative
> parties on behalf of all only if (1) the class is so numerous that joinder
> of all members is impractical; (2) there are questions of law or fact
> common to the class; (3) the claims or defenses of the representative

1    parties are typical of the claims or defenses of the class, and (4) the

2    representative parties will fairly and adequately protect the interests

3    of the class.

4    Subsection one is known as "numerosity". The only evidence presented with respect to

5    this section was plaintiffs' reference to a 1985 EPA publication which estimated Zonolite was

6    installed in 900,000 homes between 1974 and 1984. From that number plaintiffs' estimate at

7    least 18,800 Washington homes may contain this insulation. Plaintiffs' argue this is a

8    conservative number as this product was on the market for many years. The defendants' did not

9    challenge this number. The numerosity requirement has been met.

10    Subsection two is known as "commonality" and requires evidence questions of law or

11    fact common to the class. Plaintiffs' focus on a common course of conduct by the  defendants

12    towards all potential class members i.e., a pattern of alleged misrepresentations in advertising the

13    product, failure to warn, etc. as meeting this requirement.

14    Also, plaintiffs' seek equitable relief for the class as a whole in the areas of  warnings,

15    education, and remediation, not individual relief. Plaintiffs' do acknowledge in their

16    supplemental brief that there maybe some potential class members who are already aware of the

17    alleged problems with Zonolite Attic Insulation and have expended money to remove the

18    insulation. The injunctive relief suggested by the plaintiffs would include a defendant-funded

19    remediation program where, presumably, class members would apply for funds to remove the

20    insulation.

21    However, plaintiffs assert the fact there may be some compensation for remediation does

22    not detract from the nexus of common facts particularly with respect to the liability issues, I

23    agree. The issue of monetary damages is more properly considered in connection with the

24    analysis of whether CR 23(b)(1) or (2) or CR 23(b)(3) applies, not to commonality. The

25    commonality requirement has been met.

1    Subsection three is "typicality". Does the plaintiff's complaint arise from the same

2 conduct on the part of the defendant that other putative class members may have experienced? It

3 does. Are there any unique defenses applicable to the plaintiff which would unduly prolong

4 prosecution of the case from the perspective of putative class members? There does not appear

5 to be. A number of cases have been cited which stand for the proposition that " . . . challenging

6 the same unlawful conduct that affects both the named plaintiff and the rest of the putative class

7 usually satisfies the typicality requirement, despite disparities in individual factual scenarios."

8 *Cullen v. Whitman Med. Corp.*, 188 F.R.D.226, 230 (E.D. Pa. 1999). The typicality requirement

9 has been met.

10    Subsection four is the adequacy of representation and refers to both the class counsel and

11 the class representative(s). Class counsel are very experienced in class action litigation and

12 defendants have not taken issue with plaintiffs' counsels' ability to provide adequate legal

13 representation. Rather the focus is whether Mr. Barbanti, as class representative, can adequately

14 represent the class.

15    Defendants' assert Mr. Barbanti is an inadequate class representative because:  (1)  he has

16 a conflict of interest with putative class members because he alleged only limited statutory

17 claims; (2) he does not have a claim under the CPA; (3) he is engaging in "claim splitting"; (4)

18 he lacks standing to request injunctive relief because he knew Zonolite contained asbestos before

19 he began the lawsuit; and (5) he lacks credibility.

20    Plaintiff responds that a class representative is not required to assert every possible claim

21 and some claims are not suitable for a class action resolution. This is particularly true of

22 personal injury claims. In a class action, the concept of "claim splitting" is less of a concern than

23 it would be in an individual action. It can be more efficient to manage some issues in a class

24 action setting, i.e. liability issues, and this will not preclude individual litigation of other claims,

25 i.e. personal injury claims.

1    With respect to the "standing" argument, this court is not aware of any Washington

2    jurisdictional authority which would prohibit the court from granting plaintiffs' requested relief

3    of a warning to the public simply because Mr. Barbanti knew Zonolite may have contained

4    asbestos.

5    The issue of Mr. Barbanti's credibility was raised in connection with his personal

6    response to the discovery of Zonolite Attic Insulation in some of his properties and his alleged

7    failure to inspect all of his properties or timely warn his tenants. This fact issue has yet to be

8    adjudicated by the court and, if true, has not precluded the plaintiffs from pressing for the

9    hearing of the Motion for Preliminary Injunction.

10    The adequacy of representation has been met.

11    After finding the initial four requirements of CR 23(a) have been met, the court next turns

12    to the applicability of CR 23(b)(1) or (2) and/or CR 23(b)(3). Plaintiffs' assert as they are

13    primarily requesting injunctive relief, CR 23(b)(2) is appropriate. Defendants' allege that the

14    primary purpose of this litigation is monetary, i.e. to compensate persons who remove Zonolite

15    Attic Insulation.

16    Plaintiffs' complaint indicates it is seeking injunctive relief and other equitable remedies

17    including a notification program, development of safety procedures and remediation techniques.

18    In it's Supplemental Submission plaintiffs' characterize as "incidental" requests for damages

19    some class members may make for expenses already incurred to remove Zonolite. It also

20    acknowledges that there may be damage claims if they are successful in obtaining equitable

21    relief.

22    The question is what is the primary purpose of the litigation. This court accepts the

23    plaintiffs' assertion that equitable relief is the primary purpose although monetary damage claims

24    would not be unexpected if plaintiffs prevail. The purpose of class action litigation is to allow

25    individuals, who have common causes of action, to pool their resources and pursue legal relief

MEMORANDUM DECISION (MOT. #1) - 5

1   which would otherwise be unavailable due to the cost of litigation and the individual amount of

2   damages involved.

3         It is also a benefit to both plaintiffs and defendants that putative class members litigate

4   the class issues in one proceeding to avoid inconsistent adjudications.  Defendants have raised

5   the concern that legal actions involving Zonolite are relatively new and there is no "track record"

6   of court decisions as a reason for finding class certification is premature.  That position flies

7   squarely in the face of CR 23(b)(1)(A) which recognizes that in cases affecting substantial

8   numbers of persons, defendants should not be subjected to inconsistent standards of conduct

9   imposed by multiple court decisions.

10        Finally, defendants rightly point out that asbestos is heavily regulated by federal agencies

11   and Zonolite is under review by the EPA.  Arguably, the resources of a federal regulatory agency

12   are greater than a state superior court and this court has considered that fact.  However, federal

13   regulation does not preclude class litigation or preempt the court's ability to take jurisdiction.

14        Therefore, the plaintiff' Motion for Class Certification under CR 26(b)(2) is granted.  Ms.

15   Scott, please prepare the appropriate order, secure lead counsels' signatures and/or note the order

16   for presentment.

17        Dated this 28th day of November, 2000.

18

19

20       KATHLEEN M. O'CONNOR
        SUPERIOR COURT JUDGE

21

22

23

24

25

MEMORANDUM DECISION (MOT. #1) - 6

# EXHIBIT 22

COPY
ORIGINAL FILED

JAN 29 2001

SUPERIOR COURT
SPOKANE COUNTY, WA

SUPERIOR COURT, STATE OF WASHINGTON, COUNTY OF SPOKANE

| | |
|---|---|
| MARCO BARBANTI, individually and on behalf of a class of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>W.R. GRACE & COMPANY-CONN (a Connecticut corporation); W.R. GRACE & COMPANY (a Delaware corporation); W.R. GRACE & CO., a/k/a GRACE, an association of business entities; SEALED AIR CORPORATION (a Delaware corporation); and WILLIAM V. CULVER, resident of the State of Washington,<br><br>        Defendants. | NO. 00-2-01756-6<br><br>CLASS ACTION<br><br>COURT ORDER (1) DENYING MOTION FOR PRELIMINARY INJUNCTION; (2) DENYING MOTION FOR EMERGENCY NOTICE AND (3) DIRECTING THAT THE PARTIES SUBMIT A NEUTRAL CLASS NOTICE PURSUANT TO CR 23(d)(2)<br><br>**Motion No. 2** |

## 1. BASIS

THIS MATTER came before the Court for hearing on the 28th day of November, 2000, on Plaintiffs' Motion for Preliminary Injunction and Emergency Notice to Class Members Pursuant to Rule 65(a) or Alternatively 23(d)(2). All parties were represented by counsel.

In deciding the Motion, the Court considered the oral argument of counsel, together with the following pleadings and exhibits thereto:

COURT ORDER (1) DENYING MOTION FOR PRELIMINARY
INJUNCTION; (2) DENYING MOTION FOR EMERGENCY NOTICE
AND (3) DIRECTING THAT THE PARTIES SUBMIT A NEUTRAL
CLASS NOTICE PURSUANT TO CR 23(d)(2):  1
(Motion No. 2)

**0008.000.000**

SPOKANE, WA 99201-0466
(509) 455-9555

9

| | *Pleading* | *Filed* |
|---|---|---|
| 1. | Plaintiff's Application for Preliminary Injunction and Emergency Notice to Class Members Pursuant to Rule 65(a) or Alternatively 23(d)(2) Memorandum Of Authorities | 06/01/00 |
| 2. | Memorandum of Points and Authorities in Support of Plaintiff's Application for Preliminary Injunction and Emergency Notice to Class Members Pursuant to Rule 65(a) or Alternatively 23(d)(2) | 06/01/00 |
| 3. | Affidavit of Henry A. Anderson, M.D. in Support of Plaintiff's Application for Preliminary Injunction and Emergency Notice to Class Members | 06/01/00 |
| 4. | Affidavit of Ralph Busch in Support of Plaintiff's Application for Preliminary Injunction and Emergency Notice to Class Members | 06/01/00 |
| 5. | Affidavit of Rand Hatch in Support of Plaintiff's Application for Preliminary Injunction and Emergency Notice to Class Members | 06/01/00 |
| 6. | Affidavit of Richard Hatfield in Support of Plaintiff's Application for Preliminary Injunction and Emergency Notice to Class Members | 06/01/00 |
| 7. | Affidavit of Todd B. Hilsee in Support of Plaintiff's Application for Preliminary Injunction and Emergency Notice to Class Members | 06/01/00 |
| 8. | Affidavit of Donald J. Hurst in Support of Plaintiff's Application for Preliminary Injunction and Emergency Notice to Class Members | 06/01/00 |
| 9. | Affidavit of Brendan King in Support of Plaintiff's Application for Preliminary Injunction and Emergency Notice to Class Members | 06/01/00 |
| 10. | Declaration of Darrell W. Scott in Support of Plaintiff's Application for Preliminary Injunction and Emergency Notice to Class Members | 06/01/00 |
| 11. | Declaration of Kristy L. Bergland in Support of Plaintiff's Application for Preliminary Injunction and Emergency Notice to Class Members | 06/01/00 |
| 12. | Declaration of Allan McGarvey in Support of Plaintiff's Application for Preliminary Injunction and Emergency Notice to Class Members | 06/01/00 |
| 13. | Declaration Of Rosemarie Thurman in Support of Plaintiff's Application for Preliminary Injunction and Emergency Notice to Class Members | 06/14/00 |
| 14. | Declaration Of Ernie Matthews in Support of Plaintiff's Application for Preliminary Injunction and Emergency Notice to Class Members | 06/14/00 |
| 15. | Grace Defendants' Memorandum In Opposition To Plaintiff's Motion for Preliminary Injunction (Motion No 2) | 10/6/00 |

COURT ORDER (1) DENYING MOTION FOR PRELIMINARY
INJUNCTION; (2) DENYING MOTION FOR EMERGENCY NOTICE
AND (3) DIRECTING THAT THE PARTIES SUBMIT A NEUTRAL
CLASS NOTICE PURSUANT TO CR 23(d)(2):  2
(Motion No. 2)

LAW OFFICES
**LUKINS & ANNIS**
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE
SPOKANE, WA 99201-0466
(509) 455-9555

\\SPOKANE1\VOL2\DWS\CLIENT.DWS\LIBBY\WA ZONOLITE INSULATION\PLEADINGS\ORDERPRELIMINARYINJUNCTION.DOC 1/26/01

| | | | |
|---|---|---|---|
| 16. | Declaration Of Rocco Treppiedi Re Defendants' Response To Plaintiff's Motion For Preliminary Injunction (Motion No 2) | | 10/6/00 |
| 17. | Sealed Air Corp's Joiner In Grace Defendants' Arguments and Brief Regarding Opposition To Plaintiffs Motion For Preliminary Injunction (Motion No 2) | | 10/6/00 |
| 18. | Errata To Declaration Of Rocco Treppiedi Regarding Defendants' Response To Plaintiff's Motion For Preliminary Injunction (Motion No 2) | | 10/12/00 |
| 19. | Plaintiff's Reply To Defendants' Opposition to Plaintiffs Motion for Preliminary Injunction and Emergency Notice to Class Members Pursuant to CR 65(a) or Alternatively to CR 23(d)(2) (Motion No 2) | | 10/20/00 |
| 20. | Declaration Of Robert Parks In Support Of Plaintiff's Application For Preliminary Injunction And Emergency Notice To Class Members *(filed as Exhibit to Plaintiff's Reply to Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction)* | | 10/20/00 |
| 21. | Supplemental Declaration of Todd B. Hilsee | | 10/20/00 |
| 22. | Affidavit of Darrell W. Scott in Support of Plaintiff's Reply To Defendants' Opposition to Plaintiffs Motion for Preliminary Injunction and Emergency Notice to Class Members Pursuant to CR 65(a) or Alternatively to CR 23(d)(2) (Motion No 2) | | 10/20/00 |
| 23. | Affidavit Of William E Longo Phd (Motion No 2) | | 11/17/00 |
| 24. | Affidavit Of John M Dement (Motion No 2) | | 11/17/00 |
| 25. | Affidavit Of John Prebil | | 11/21/00 |
| 26. | Affidavit Of Paul Price | | 11/21/00 |

The court additionally considered the testimony of Donald Hurst, video from Richard Hatfield, video from Brenden King, testimony of Ralph Busch, testimony of Don Morgan, testimony of Todd Hilsee, testimony of William Hughson, MD, testimony of Dr. Richard Lee and testimony of Dr. Morton Corn and the exhibits referenced in the attached Memorandum Opinion.

COURT ORDER (1) DENYING MOTION FOR PRELIMINARY
INJUNCTION; (2) DENYING MOTION FOR EMERGENCY NOTICE
AND (3) DIRECTING THAT THE PARTIES SUBMIT A NEUTRAL
CLASS NOTICE PURSUANT TO CR 23(d)(2): 3
(Motion No. 2)

LAW OFFICES
**LUKINS & ANNIS**
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA 99201-0466
(509) 455-9555

\\SPOKANE1\VOL2\DWS\CLIENT.DWS\LIBBY\WA ZONOLITE INSULATION\PLEADINGS\ORDERPRELIMINARYINJUNCTION.DOC 1/26/01

1
2

## 2. FINDINGS

This Court issued its written Memorandum Decision on this matter on December 20, 2000,

and the Court hereby adopts its findings and ruling issued on that date.  The Memorandum Opinion

is attached to this Order and fully incorporated herein by reference.  In particular, the Court finds

(1) that plaintiff's motion for a preliminary injunction calls upon the Court to resolve factual

disputes that are meant to be resolved by a trial, not a two-day hearing, and (2) that the plaintiff has

not demonstrated an "emergency" pursuant to CR 65 that would justify the court issuing a notice

that would, in effect, prejudge the case or imply that the court has ruled on the merits of the

plaintiff's claims.  The Court, however, finds that a neutral notice to class members under CR

23(d)(2) is appropriate and that such notice should include the following:

- Identify the subject-matter of the litigation;
- Identify the court, participants in the litigation and lead counsel;
- Identify the criteria for members of the class;
- Identify the implications to the class of certification under CR 23(b)(2);
- Identify how potential class members should contact plaintiffs' counsel;
- Identify how potential class members can find out information about the litigation, i.e. website, newsletter, correspondence, etc.; and
- Identify how potential class members can access other information about the issues in this case, i.e. EPA website, State of Washington Department of Health websites, etc.

A separate hearing should be set to approve the notice form.

## 3. ORDER

THEREFORE, IT IS HEREBY ORDERED that Plaintiff's Motion for Preliminary

Injunction is denied.  A notice to class members pursuant to CR 23(d)(2) is appropriate at this time,

COURT ORDER (1) DENYING MOTION FOR PRELIMINARY
INJUNCTION; (2) DENYING MOTION FOR EMERGENCY NOTICE
AND (3) DIRECTING THAT THE PARTIES SUBMIT A NEUTRAL
CLASS NOTICE PURSUANT TO CR 23(d)(2):  4
(Motion No. 2)

LAW OFFICES
LUKINS & ANNIS
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA  99201-0466
(509) 455-9555

1    provided that it is neutral and does not imply that the court has prejudged the case or ruled on the

2    merits of plaintiff's claims. Each party may submit a suggested notice form that complies with this

3    Court's instructions, for consideration at a separate hearing to be set by the Court.

4        DONE IN OPEN COURT this 29th day of January , 2001. ·

5

6

7                                           KATHLEEN M. O'CONNOR

8                                           _____
                                            KATHLEEN M. O'CONNOR
                                            JUDGE

9    Presented by:
10   LUKINS & ANNIS, P.S.

11

12   By:_____
         DARRELL W. SCOTT, WSBA #20241

13       Attorneys for Plaintiff

14   Approved as to Form and Notice
15   Of Presentment Waived:

16   PERKINS, COIE, LLP

17

18   By: Approved telephonically by V.L. Woolston 1/26/01
19       V. L. Woolston, Jr., WSBA #9453
         Rocco N. Treppiedi, WSBA #9137
20       Attorneys for Defendants Grace

21

22   PAINE, HAMBLEN, COFFIN, BROOKE & MILLER

23

24   By: Approved telephonically by David Broom 1/26/01
25       Donald G. Stone, WSBA #7547
         David L. Broom, WSBA #02096
26       Attorneys for Defendants Sealed Air Corporation

     COURT ORDER (1) DENYING MOTION FOR PRELIMINARY
     INJUNCTION; (2) DENYING MOTION FOR EMERGENCY NOTICE
     AND (3) DIRECTING THAT THE PARTIES SUBMIT A NEUTRAL                    LAW OFFICES
     CLASS NOTICE PURSUANT TO CR 23(d)(2):  5                          **LUKINS & ANNIS**
     (Motion No. 2)                                                A PROFESSIONAL SERVICE CORPORATION
                                                                   1600 WASHINGTON TRUST FINANCIAL CENTER
     \\SPOKANE\VOL2\DWS\CLIENT.DWS\LIBBY\WA ZONOLITE INSULATION\PLEADINGS\ORDERPRELIMINARYINJUNCTION.DOC 1/26/01    717 W SPRAGUE AVE.
                                                                   SPOKANE, WA 99201-0466
                                                                   (509) 455-9555

SUPERIOR COURT, STATE OF WASHINGTON, COUNTY OF SPOKANE DEC 2 0 2000

SUPERIOR COURT
SPOKANE COUNTY WA

| | |
|---|---|
| MARCO BARBANTI, ET AL, | ) Case No.: 00-2-01756-6 |
| Plaintiff, | )<br>) MEMORANDUM OPINION |
| | ) MOTION NO. 2 – PLAINTIFF'S MOTION |
| vs. | ) FOR PRELIMINARY INJUNCTION AND |
| | ) EMERGENCY NOTICE TO CLASS |
| W. R. GRACE & CO., ET AL, | ) MEMBERS |
| | ) |
| Defendant | ) |
| | ) |
| | ) |
| | ) |

Plaintiff's Motion for Preliminary Injunction and Emergency Notice to Class Members came before the court for hearing on November 28, 2000. In addition to the pleadings filed in this matter, the court has considered the testimony of Donald Hurst; videos from Richard Hatfield and Brendon King; the testimony of Ralph Busch, Don Morgan, Todd Hilsee, William Huson, M.D., Dr. Richard J. Lee and Dr. Morton Korn and 73 substantive and 19 illustrative exhibits. The exhibits include affidavits/declarations and/or deposition excerpts from Henry A. Anderson, M.D., Rand Hatch, Brendon King, Rosemarie Thurman, Ernie Matthews, and Bruce Hunter.

Just prior to commencement of the hearing, counsel received a copy of the court's Memorandum Decision certifying a class action under CR 23(b)(2). During opening statements counsel for the plaintiff indicated he would focus primarily on the second part of his original motion, which was filed on June 1, 2000, the necessity of an emergency notice to class members under CR 23(d)(2). After both sides concluded their opening statements, but prior to the testimonial phase of the hearing, I indicated to counsel that it was likely I would require a notice to class members; however, I would hold plaintiff to the standards of Civil Rule CR 65 in determining the contents of that notice.

MEMORANDUM DECISION (MOT. #2) - 1

**STATEMENT OF FACTS**

Counsel for both sides have devoted pages to a description of the "facts" of this case. Briefly, Zonolite Attic Insulation (ZAI) has been manufactured and distributed by the defendants for many years. This is a vermiculite-based product, which contains asbestos. The amount of asbestos is vigorously controverted. The product was marketed as a do-it-yourself insulation product for homeowners that was easy to install. The defendants discontinued sale of the product in the 1980s; however, it continues to function as insulation in many homes in the State of Washington. Prior to commencement of litigation in Washington and several other State Courts and Federal District Courts, in 2000, this product had not been the subject of litigation in an asbestos property damage case.

The plaintiff alleges that ZAI is harmful if disturbed and asbestos fibers become airborne. Due to the age of the product and its use in home construction, it is suggested that many homeowners will be remodeling older homes that are insulated with this product. The airborne fibers, which can result from construction, will be a health hazard to the occupiers of the building as well as any contractors/employees who may work on a project. The plaintiff argues it is appropriate to advise the public of this risk.

**DISCUSSION**

As noted above, I have already indicated a notice to potential class members of the existence of this litigation is appropriate even though not required when a class is certified under Civil Rule CR 23(b)(2). The question is what should the notice contain?

In order to require the notice contain language that there is a statewide hazard, the plaintiff must show:

> (1) that he or she has a clear legal or equitable right, (2) that he or she has a well-grounded fear of immediate invasion of

MEMORANDUM DECISION (MOT. #2) - 2

1    that right, and (3) that the acts complained of are either
2    resulting in or will result in actual and substantial injury to
     him or her.

3    *King v. Riveland,* 125 Wn.2d 500, 515, 886 P.2d 160, 169 (1994)

4

5    Has the plaintiff demonstrated there is a statewide hazard, such that court should issue an

6    emergency notice warning citizens of actual and substantial injury that could occur, before a trial

7    on the merits has been conducted?  At this time I do not believe the plaintiff has demonstrated an

8    "emergency" which would justify the court sanctioning a notice, and in effect, prejudge the case.

9    There are factual disputes about the quantity of asbestos in vermiculite; whether or not there is

10   any threshold level of exposure, which would not be dangerous; the quantity of asbestos fibers

11   found in the air of the homes tested and the testing protocols used.  These are just the type of

12   disputes meant to be resolved by a trial, not a two-day hearing.  Therefore, the notice cannot

13   imply that the court has ruled on the merits of the plaintiff's claims.

14   However, I am also mindful of the ability of the notice to provide information to citizens

15   about governmental efforts to address issues raised in this litigation.  As long as the notice is

16   neutral, references to other sources of information about this product may be included as well.

17   Therefore, the notice to class members should include the following:

18   - Identify the subject-matter of the litigation
     - Identify the court, participants in the litigation and lead counsel
19   - Identify the criteria for members of the class
     - Identify the implications to the class of certification under CR23(b)(2)
20   - Identify how potential class members should contact plaintiffs' counsel
21   - Identify how potential class members can find out information about the
       litigation, i.e. website, newsletter, correspondence etc.
22   - Identify how potential class members can access other information about the
       issues in this case, i.e. EPA website, State of Washington Department of
23     Health websites, etc.

24

25   There are two suggested notices as exhibits in this case.  Neither one is neutral and would

     not be acceptable to the court.  Each party may submit a suggested notice form to the court.

MEMORANDUM DECISION (MOT. #2) - 3

1    Briefly, the issue of primary jurisdiction has been argued in this case. At this time I do

2   not believe my ruling with respect to the request for preliminary injunction and emergency notice

3   requires that I address the issue. Whether that remains my position depends upon the course of

4   the litigation.

5    Mr. Scott, please prepare the appropriate order. I have set this matter for presentment on

6   January 19, 2001. A separate hearing should be set to approve the notice form. Please consult

7   my judicial assistant with respect to that hearing.

8

9

10    Dated this 19th day of December, 2000.

11                                KATHLEEN M. O'CONNOR
                                 SUPERIOR COURT JUDGE
12   _____
13                                Kathleen M. O'Connor
                                 Superior Court Judge
14

15

16

17

18

19

20

21

22

23

24

25

MEMORANDUM DECISION (MOT. #2) - 4