UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          . Case No.  01-1139(JKF)
                                . Adv. No.  01-771(JKF)
                                .
  W.R. GRACE,                   .
                                . 5414 USX Tower Building
                                . Pittsburgh, PA 15219
                  Debtor.       .
                                . July 6, 2004
. . . . . . . . . . . . . . . . . 8:55 a.m.

TRANSCRIPT OF TELEPHONIC HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:             Pachulski, Stang, Ziehl, Young
                              & Jones
                            By:  DAVID CARICKHOFF, JR., ESQ
                            919 N. Market Street
                            16th Floor
                            Wilmington, DE 19899
                            (Telephonically)

                            Kirkland & Ellis
                            By:  SAMUEL BLATNICK, ESQ.
                                 ANDREW RUNNING, ESQ.
                            200 East Randolph Drive
                            Chicago, Ill 60601
                            (Telephonically)

For Chevron U.S.A.,         Morris, Nichols, Arsht & Tunnell
Inc.:                       By:  WILLIAM H. SUDELL, JR., ESQ.
                            1201 N. Market Street
                            P.O. Box 1347
                            Wilmington, DE 19899
                            (Telephonically)

Audio Operator:             Cathy Younker

Proceedings recorded by electronic sound recording, transcript
            produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**

APPEARANCES:  (Cont'd)

| | |
|---|---|
| For David Austern: | Phillips, Goldman & Spence<br>By:  JOHN C. PHILLIPS, JR., ESQ.<br>    BRIAN FARNAN, ESQ.<br>1200 N. Broom Street<br>Wilmington, DE 19806<br>(Telephonically) |
| For the Libby<br>Claimants: | Cohn & Whitesell<br>By:  DANIEL COHN, ESQ.<br>101 Arch Street<br>Boston, MA 02110<br>(Telephonically) |
| For the Allen<br>Plaintiffs: | Smith, Katzenstein & Furlow, LLP<br>By:  KATHLEEN M. MILLER, ESQ.<br>800 Delaware Avenue<br>P.O. Box 410<br>Wilmington, DE 19899<br>(Telephonically) |
| | Stutzman, Bromberg, Esserman<br> & Plifka<br>By:  ROBERT T. BROUSSEAU, ESQ.<br>    SANDER L. ESSERMAN, ESQ.<br>2323 Bryan Street<br>Suite 2200<br>Dallas, TX 75201<br>(Telephonically) |
| For Continental<br>Casualty Co.: | ROBERT FISHMAN, ESQ.<br>ELIZABETH DeCHRISTOFORO, ESQ.<br>(Telephonically) |
| Counsel to the<br>Official Committee of<br>Asbestos Personal<br>Injury Claimants: | Campbell & Levine, LLC<br>By:  MARK T. HURFORD, ESQ.<br>1700 Grant Building<br>310 Grant Street<br>Pittsburgh, PA 15219<br>(Telephonically) |
| For the Scotts<br>Company: | Vorys, Sater, Seymour &<br>  Pease, LLP<br>BY:  TIFFANY S. COBB, ESQ.<br>    ROBERT SIDMAN, ESQ.<br>52 East Gay Street<br>Columbus, Ohio 43215<br>(Telephonically) |

APPEARANCES:  (Cont'd)

For a person on the           STEVE BARRON, ESQ.
ACC:                          (Telephonically)

For Mike Angelitis:           NICK ANGELITIS, ESQ.
                              (Telephonically)

For the Equity Committee:     GARY BECKER, ESQ.
                              (Telephonically)

For a client in               Early, Ludwick & Sweeney, LLC
Connecticut with a            By:  CHRISTOPHER MEISENKOTHEN,
case pending against               ESQ.
Scott:                        New Haven, CT
                              (Telephonically)

For the Lanier Firm:          Fox Rothschild, LLP
                              By:  BERNARD CONAWAY, ESQ.
                              Citizens Bank Center
                              919 North Market Street
                              Suite 1300
                              Wilmington, DE 19899
                              (Telephonically)

                              Haynes and Boone, LLP
                              By:  PATRICK HUGHES, ESQ.
                              1 Houston Center
                              1221 McKinney
                              Suite 2100
                              Houston, TX 77010
                              (Telephonically)

                              The Lanier Law Firm, PC
                              By:  AARON J. DeLUCA, ESQ.
                              6810 FM 1960 West
                              Houston, TX 77069
                              (Telephonically)

For Maryland Casualty         Connolly, Bove, Lodge &
Company:                        Hutz, LLP
                              By:  JEFFREY C. WISLER, ESQ.
                              The Nemours Building
                              1007 North Orange Street
                              P.O. Box 2207
                              Wilmington, DE 19899
                              (Telephonically)

APPEARANCES:   (Cont'd)

For the ACC:                Caplin & Drysdale
                           By:  JULIE DAVIS, ESQ.
                           One Thomas Circle, N.W.
                           Washington, D.C. 20005
                           (Telephonically)

For Reed Smith, LLP:        Reed Smith, LLP
                           By:  JAMES J. RESTIVO, ESQ.
                           435 Sixth Avenue
                           Pittsburgh, PA 15219
                           (Telephonically)

(Listed Participants)       PETER LOCKWOOD, ESQ.
                           (Telephonically)

                           WALTER SLOCUM, ESQ.
                           (Telephonically)

                           ROBERT RUSSO, ESQ.
                           (Telephonically)

                           JOSEPH HARTWIG, ESQ.
                           (Telephonically)

                           MARGE COLEMAN, ESQ.
                           (Telephonically)

                           RICHARD SINK, ESQ.
                           (Telephonically)

                           JUSTICE SCHRADER, ESQ.
                           (Telephonically)

                           ALAN DENZIASON, ESQ.
                           (Telephonically)

1          THE COURT:  Pardon me.  Does somebody have us on

2    hold?

3          MS. SUDELL:  Your Honor, this is William Sudell.

4          THE COURT:  Yes, Mr. Sudell.

5          MR. SUDELL:  Yes.  We are all on here, although I was

6    hearing music just for a second.

7          THE COURT:  Yes.  You're hard to hear because it's

8    the music that I'm hearing.  Are you the host?  We didn't have

9    a dial-in number, so I apologize for being late.  But whoever

10   the host is, can you call and get that music turned off?

11         MR. SUDELL:  Yes.  Let me try, Your Honor.

12         THE COURT:  Thank you.

13                         *  *  *  *  *

14         THE COURT:  Who just joined?  Hello?

15         MR. SIDMAN:  Hello.  This is Bob Sidman, Your Honor.

16   We were trying to get the music shut off and I don't hear it

17   right now.

18         THE COURT:  No.  Somebody just joined the call.  I

19   think they must have had us on hold and that's the reason why

20   there was music playing, I believe.

21         MR. SIDMAN:  Yeah.  I think we're okay now.

22         THE COURT:  Okay.  This is the matter of W.R. Grace.

23   Bankruptcy No. 01-1139.  This is the time set for an argument

24   on the Scott Company's motion to enforce an order dated January

25   22, 2002 at Adversary 01-771.

1          The parties I have listed to participate are:  Robert

2   Sidman, Jeffrey Wisler, Peter Lockwood, Julie Davis, Walter

3   Slocum, Sander Esserman, Robert Russo, Joe Hartwig, Marge

4   Coleman, Michael Angelitis, William Sudell, Aaron DeLuca,

5   Richard Sink, Justice Schrader, James Restivo, Alan Denziason.

6          I think that's all.  Is there anyone else on the

7   phone?

8          MR. RUNNING:  Yes, Your Honor, Andrew Running of

9   Kirkland & Ellis for the debtors.

10          MR. BARRON:  Your Honor, this is Steve Baron.  I

11   represent a person who sits on the ACC.

12          MR. PHILLIPS:  Your Honor, John Phillips and Brian

13   Farnan on behalf of David Austern.

14          MR. ANGELITIS:  Your Honor, this is Nick Angelitis.

15   I'm here on behalf of Mike Angelitis.

16          MR. BECKER:  Your Honor, Gary Becker for the Equity

17   Committee.

18          THE COURT:  Why are you folks not listed on my --

19          Pardon me.  Stop.

20          After Nick Angelitis I missed whoever was next.

21          MR. MEISENKOTHEN:  Your Honor, this is Christopher

22   Meisenkothen from Early, Ludwick & Sweeney in New Haven,

23   Connecticut.

24          THE COURT:  Spell your last name, please.

25          MR. MEISENKOTHEN:  Surely.  M, as in Mary, E-I-S-E-

1  N-K-O-T-H-E-N.

2              THE COURT:  Who are you presenting?

3              We have a client here in Connecticut that has a case

4  pending against Scott.

5              THE COURT:  All right.  Anyone else on the phone?

6              MR. HUGHES:  Good morning, Your Honor.  Patrick

7  Hughes for the Lanier firm clients with Aaron DeLuca and Bernie

8  Conaway also.  H-u-g-h-e-s.

9              THE COURT:  Anyone else?

10             MR. SUDELL:  Your Honor, this is William Sudell back.

11  I was trying to get rid of the music but apparently you were

12  able to do that.

13             MR. CARICKHOFF:  Your Honor, Dave Carickhoff from

14  Pachulski Stang for the debtors.

15             MR. COHN:  Daniel Cohn of Boston, Massachusetts for

16  the Libby claimants.

17             MS. MILLER:  Kathy Miller.  I'm co-counsel -- for the

18  Allen plaintiffs.

19             THE COURT:  Anyone else?

20             MR. FISHMAN:  Good morning, Your Honor.  Robert

21  Fishman appearing for Continental Casualty Company.

22             THE COURT:  Why are you folks not listed on my list?

23             MR. FISHMAN:  I can't answer why I'm not on, Your

24  Honor.  We did file a statement by the deadline.

25             THE COURT:  Okay.  I need somebody from the debtor to

8

1  make sure that I have a current list.  I have more people

2  participating.  Except I did call Mr. DeLuca's name earlier so

3  he was on this list.  But I do not have a list of all of these

4  folks.

5           Is there anyone else?

6           MR. HURFORD:  Yes, Judge.  Mark Hurford from Campbell

7  & Levine.  I was actually the one who asked for Julie Davis and

8  certain other people to be included in the list and my name as

9  well.  I'm not sure why I wasn't --

10           MS. COBB:  Your Honor, this is Tiffany Cobb on behalf

11  of the Scotts Company and we had e-mailed to Rachel and to you

12  actually a two-page list of parties wishing to appear and it

13  sounded as though you read one of the pages, but it was a

14  two-page Word document.

15           THE COURT:  Okay.  I don't have it, I'm sorry.

16           MS. COBB:  Okay.

17           THE COURT:  All right.  Who else?

18           MS. DeCHRISTOFORO:  Your Honor, this is Elizabeth

19  DeChristoforo for Continental Casualty.

20           THE COURT:  Okay.

21           MR. BLATNICK:  Your Honor, Sam Blatnick with Kirkland

22  & Ellis for the debtors.

23           THE COURT:  I'm sorry, Sam who?

24           MR. BLATNICK:  Blatnick, B, as in boy --

25           THE COURT:  Oh, yes.  Thank you.

1              I'm sorry, go ahead.

2              MR. BLATNICK:  B-l-a-t-n-i-c-k.

3              THE COURT:  All right.

4              Anyone else?

5              Okay.  Who is going to do the argument this morning,

6   please?

7              MR. SIDMAN:  Your Honor, on behalf of the Scotts

8   Company, Robert Sidman of the Vorys, Sater, Seymour & Pease law

9   firm.

10             THE COURT:  All right.  Go ahead, sir.

11             Your Honor, I'm advised that Your Honor has seen and

12  will have read all the motion papers and the various responses

13  and objections.  I'm aware of three responses from what I would

14  call objectors and then a supporting response from the debtors.

15  I will make an effort not to repeat our papers verbatim, but

16  will attempt to elaborate on some of the salient points.

17             THE COURT:  Okay.  Pardon me, Mr. Sidman.  Those of

18  you who are not speaking, please put your phones on mute and do

19  not put us on hold.  I do not wish to hear music.  I can't

20  concentrate on the people's voices when there's music in the

21  background.  So, please, if it's necessary for you to

22  disconnect, do so.  But do not put us on hold.  And please put

23  your mute buttons on in the meantime.

24             I apologize, Mr. Sidman.  Go ahead.

25             MR. SIDMAN:  No problem, Your Honor.

1        Your Honor, in terms of briefly background facts,

2   W.R. Grace filed Chapter 11 bankruptcy on April 2nd, 2001.  On

3   January 22nd, 2002, this Court issued a modified injunction

4   order which affirmed and expanded the scope of a

5   previously-issued injunction against lawsuits involving W.R.

6   Grace products and the potential liability of W.R. Grace and

7   its affiliates on various asbestos issues.

8        Numerous post-bankruptcy lawsuits have now been filed

9   naming the Scotts Company as a defendant.  There are usually

10  many other defendants in these lawsuits for reasons not related

11  to W.R. Grace's vermiculite.  However, we are now aware of some

12  76 lawsuits against Scotts involving W.R. Grace vermiculite

13  brought by over 4,000 plaintiffs, although there may be more on

14  the way because we have recently been advised that Scotts has

15  been sued, but not been served in at least one other lawsuit.

16       One change of fact since the papers were filed last

17  week, I understand that the Texas trial, which was the

18  motivating factor for filing these papers and asking for an

19  expedited hearing, has been continued for other reasons, but

20  there are many other lawsuits in line to be tried shortly.

21       So the issues that are raised by the Scotts motions

22  are very much alive.

23       Your Honor, Scotts has been told by plaintiff's

24  counsel, and it has every reason to believe it based on the

25  allegations it has seen in the various complaints, that but for

1 the presence of W.R. Grace vermiculite and Scotts' products,

2 Scotts would not be sued by these plaintiffs.

3        Furthermore, plaintiff's counsel have told Scotts

4 that a trial against Scotts would be conducted the same as a

5 trial against W.R. Grace.  And those facts are confirmed in Mr.

6 Aronowitz' affidavit that's attached to the motion papers.

7        Scotts, having been told this information fairly

8 recently, then researched the W.R. Grace docket to determine

9 whether this Court had previously addressed the issue of

10 ancillary lawsuits against third parties, which in all but name

11 were really lawsuits against W.R. Grace.  That is when Scotts

12 discovered the existence of the January 22nd, 2002 modified

13 preliminary injunction.

14        Your Honor, as I'm sure you're very familiar, the

15 terms of that injunction, the January 22nd injunction, all

16 actions as a defined term in the injunction order for which

17 there may be coverage under the insurance policies, are stayed

18 and enjoined pending further order of the Court.

19        Quite simply, the lawsuits against Scotts falls

20 squarely within the definition of actions defined in the

21 injunction order because, as explained in our papers, Scotts is

22 an additional insured under a number of the W.R. Grace

23 insurance policies that are identified in Exhibit B to the

24 January 22nd, 2002 injunction order.

25        Scotts believes, and I believe W.R. Grace agrees that

1  the proceeds from these insurance policies are vital to the

2  reorganization plan of W.R. Grace and its emergence from

3  bankruptcy.  The lawsuits against Scotts will negatively impact

4  the availability of the proceeds under these insurance policies

5  for the benefit of the W.R. Grace estate, and thus logically

6  this Court has enjoined and should continue to enjoin any

7  actions that may implicate those insurance policies.

8           This Court at this time need not finally determine

9  whether or not Scotts is entitled to coverage under the

10 insurance policies, it merely should preserve the status quo

11 and permit W.R. Grace to propose a plan that includes a

12 procedure for the eventual disposition of the proceeds from the

13 insurance policies among the rightful claimants.

14          W.R. Grace should be permitted to formulate its plan

15 with a static target, that is the insurance policies, not a

16 moving one, that is the depleting insurance policies.

17          Your Honor, Scotts initially relies on the plain

18 language of the January 22nd injunction order, although it does

19 not rely exclusively on this language.  There are many other

20 reasons in addition the shared insurance reason for this Court

21 to enjoin or more precisely continue to enjoin the lawsuits

22 against Scotts.  These reasons include W.R. Grace will

23 necessarily be a material witness in these lawsuits.  The

24 second reason, W.R. Grace will necessarily incur substantial

25 discovery costs in connection with these lawsuits.  And as

1  revealed in the objecting papers, discovery in them is ongoing

2  as we speak.

3           W.R. Grace management will be materially distracted

4  from its reorganization effort by the pre-trial and trial

5  demands made in these lawsuits.

6           W. R. Grace will incur risks concerning evidentiary

7  findings that may be made in these lawsuits.  Findings that

8  will undermine the reorganization plan.  For example, I

9  understand that W.R. Grace is seeking findings and rulings from

10 this Court in a science trial, findings or rulings which may be

11 preempted by earlier rulings in these state actions.

12          Another reason Grace may be estopped from advancing

13 certain legal positions as a result of judgments and/or rulings

14 made in these state actions.

15          And finally, W.R. Grace --

16          THE COURT:  Pardon me.  As to the estoppel argument,

17 pardon me, I don't see that.  If the debtor is not a defendant

18 in those actions, and I'm certainly not going to permit the

19 actions to go forward as against the debtor, I can't see how

20 there is an estoppel.  But otherwise, go ahead.

21          MR. SIDMAN:  All right.  W.R. Grace, Your Honor, will

22 incur new indemnity claims from Scotts under common-law.  These

23 are post-petition claims, Your Honor, which under the 3rd

24 Circuit's rationale in the <u>Frenville</u> case may be a cost of

25 administration.

1          And finally, W.R. Grace may, in fact, rightfully be

2 joined or need or want to be joined in these lawsuits because

3 of the vital interest that W.R. Grace has in their disposition.

4          Your Honor, for all of these reasons, the state

5 actions must be stayed and enjoined as to Scotts.

6          There have been, as I mentioned, Your Honor, four

7 separate responses to the Scotts motion, three of which could

8 be categorized as objections, and one in support from the

9 debtors.  I would like to reserve some time at the end of their

10 presentation on those objections to respond, but I'll let the

11 Court call on them to give you their positions.

12          THE COURT:  All right.  That's fine, thank you.

13          Let's hear from the debtor first, please.

14          MR. RUNNING:  Yes, Your Honor.  This is Andrew

15 Running.

16          We support the motion.  We believe that they have set

17 forth a plausible claim for coverage.  It's set forth beginning

18 on Page 5 of their June 24th memo.  And more importantly from

19 our standpoint, we believe that allowing these cases to go

20 forward against Scotts would invariably implicate Grace, at

21 least through discovery, and that would be a huge distraction

22 as the debtors are working at an intense pace to try to put

23 together a plan of reorganization by October.  So we support

24 the motion.

25          THE COURT:  All right.  Just a second.

1                              (Pause)

2              THE COURT:  All right.  The Committee of Asbestos

3    Plaintiffs, please.  Does the ACC want to be heard?

4              MS. DAVIS:  Yes, Your Honor.  Julie Davis from Caplin

5    & Drysdale for the ACC.

6              We filed -- the Committee filed an objection to the

7    motion for stay on the basis that it had not yet been found

8    definitively that the shared insurance exists.  The motion

9    talks in terms of insurance, shared insurance, that may exist.

10   The original January 2002 injunction spoke of insurance, shared

11   insurance, that might exist.  And in those terms, unless and

12   until it's definitively shown that the shared insurance exists,

13   the Committee supports the plaintiff firms in their opposition

14   to the stay.

15             Having said that, the Committee also is concerned

16   that if there is shared insurance, that insurance must be

17   protected.  And on that basis, the Committee would support any

18   action by the Court to protect the insurance, including a stay

19   or an injunction against any claims against the insurance.

20   But that's a much less drastic step, Your Honor, than staying

21   lawsuits brought by sick and dying plaintiffs against a

22   defendant that is not in bankruptcy, is not related to the

23   debtor, and has not really demonstrated a basis for the

24   injunction.

25             THE COURT:  Well, some of the policy language is

1 quoted is the ACC's position that the policy language is either

2 unclear or insufficient to substantiate that there may be a

3 claim by some of the vendors of the vermiculite product.

4      MS. DAVIS:  Your Honor, the policy language that has

5 been quoted, and we realize the schedules are there, although

6 at least one of the insureds, and there may be more, has

7 weighed in with a response that casts doubt on that insurance

8 liability under those policies for any claim by Scotts.

9      So it's our position that we should sort this out.

10 The trials that had been scheduled that precipitated this

11 motion apparently have been continued for unrelated reasons,

12 although we understood that those plaintiffs were willing to

13 non-suit those trials and enter into a tolling agreement.  It's

14 our position that we ought to take the time to sort out the

15 insurance coverage by some means less drastic than staying

16 trials in state court with respect to a defendant that may or

17 may not be covered.  It's the insurance that's at issue.  It

18 shouldn't be protection of a defendant that's not in bankruptcy

19 that is trying to avail itself of the protection of a

20 third-party's bankruptcy.

21      THE COURT:  All right.  So your view is that a

22 tolling agreement essentially should be imposed or an

23 injunction of some sort issued for some period of time to let

24 the parties look at the insurance policies and determine which,

25 if any, might give Scotts a viable claim to shared insurance?

1          MS. DAVIS:  Yes, Your Honor.  But the injunction, the

2    subject of the injunction, should not be the claimants that are

3    bringing these cases in the state courts against Scotts, the

4    injunction should enjoin any payments under -- pursuant to the

5    policies in issue that would dissipate the proceeds of those

6    policies.  The injunction should be targeted at the insurance,

7    not these lawsuits.

8          THE COURT:  Okay.  All right.  The Allen plaintiffs,

9    please.  Anyone want to be heard on behalf of the Allen

10   plaintiffs' opposition?

11         MR. BROUSSEAU:  Your Honor, I'm sorry.  This is Bob

12   Brousseau on behalf of the Allen plaintiffs.  I'm with

13   Stutzman, Bromberg, Esserman & Plifka.

14         THE COURT:  Go ahead.

15         MR. BROUSSEAU:  We represent the group of Texas

16   plaintiffs that were set for trial in Jefferson County on July

17   12th, 2004.  While we desire that this issue be addressed on

18   the merits, we do not believe that the Scotts motion

19   constitutes...  Friday afternoon we were informed that the

20   Court has --

21         THE COURT:  Mr. Brousseau, I'm sorry.  Are you on a

22   speaker phone?  You're fading in and out and I can't hear half

23   of your words.

24         MR. BROUSSEAU:  Your Honor, I apologize.  I was.

25         Your Honor, we represent the trial group that was set

1  for trial on July 12th.  We desire that this issue be addressed

2  on the merits, and we do not believe that it constitutes an

3  emergency.  First we received notice on Friday afternoon that

4  the trial Judge had continued the matter for unrelated reasons

5  to an indeterminate date.

6         And second, the Allen plaintiffs did, in fact, offer

7  a tolling-in agreement and to dismiss the case during the

8  pendency of obtaining a hearing on the matter that would allow

9  the Allen plaintiffs fully to brief the complicated issues

10  involved and to make a fully-developed presentation for the

11  Court.

12        It is only the refusal of the Scotts Company, a

13  non-debtor to this case, to agree to this reasonable

14  proposition to toll the matter and proceed at a later date that

15  creates the alleged emergency.

16        We have basically three reasons why we believe that

17  the injunction should be denied.  One is under <u>Paycor</u> and

18  <u>Federal Mogul</u>, a Bankruptcy Court does not have subject matter

19  jurisdiction under -- to unrelated matters.  And third-party

20  lawsuits by injured plaintiffs against manufacturers are not

21  related to the bankruptcy estate.

22        The mere possibility of a hypothetical successful

23  indemnity action in the future that might or might not trigger

24  coverage under a policy, is simply not sufficient to warrant

25  this Court's intervention at this time.

1          THE COURT:  Well, the policy language wasn't an

2    indemnity, was it?  Didn't it say that they're direct insured?

3    They're not named, but at least the quoted language indicated

4    that the coverage was for the vendors.  That's not an

5    indemnity, that's an actual claim against the insurance.

6          MR. BROUSSEAU:  Your Honor, I believe, as Ms. Davis

7    pointed out, that at least one of the insurance companies has

8    taken the position that there is no coverage under one of the

9    policies cited.  We believe that there's a long chain of

10   hypothetical causality that would have to be established before

11   this Court's jurisdiction could ever be triggered.  First of

12   all, Scotts would have to suffer a judgment adverse to it.  It

13   would then have to bring an action against Grace and prevail on

14   indemnity, and there is no showing that they're entitled to

15   indemnity.  There would then have to be a lawsuit establishing

16   coverage unless the debtor and the insurance company stipulate

17   to coverage.  And, further, we believe that there are

18   complicated insurance issues because we believe that Scotts

19   might be required to exhaust their own primary insurance for

20   the damages created by their product.

21          As Ms. Davis points out, it is only when it is

22   established that there might be a claim against the insurance

23   policies that the estate is in any way affected.  And that is a

24   long way off from today.

25          THE COURT:  Well, okay.  I apologize.  I apparently

1  did not mark here where that language is quoted.  Does anybody

2  have a reference to a page?  Because it did not seem to me that

3  this was an indemnity, it seemed that it was a direct claim.

4  Now, I'm not making findings that it exists.  I don't need to

5  go there today.  But in looking at the language of the policy,

6  it seemed to say that it covered vendors.  And I didn't see

7  anything in it that, at least the language quoted, that

8  indicated that Scotts had to suffer a judgment, sue the debtor

9  on an indemnity, or go into coverage litigation.  Of course,

10  they'd have to go into coverage litigation if a claimant in the

11  company, the insurance company, denies coverage.  But I didn't

12  see any of that in the quoted language.

13         MR. RUNNING:  Your Honor, this is Andrew Running.  On

14  Page 5 of Scotts' expedited motion, Docket 218 -- or, I'm

15  sorry, 208, it's the first bullet on the page and it's

16  referring to the Maryland Casualty policy.

17         THE COURT:  Okay.

18         MR. RUNNING:  It says both policies extend coverage

19  to "any person or organization herein referred to as vendor as

20  an insured, but only with respect to the distribution or sale

21  in the regular course of the vendor's business of the named

22  insured's products."

23         So I believe that's the key language.

24         THE COURT:  Okay.  Thank you.  I have that reference

25  now.  All right.

1          So I guess the issue is whether or not the vendor is

2     distributing Grace' vermiculite as a Grace product, or whether

3     the vendor is distributing its own product, including some

4     vermiculite in it.  So I guess perhaps there is going to be

5     some dispute by the insurance companies as to what this means.

6          Okay.  Go ahead, Mr. Brousseau.

7          MR. BROUSSEAU:  Your Honor, we believe this is an

8     attempt by a non-debtor defendant to a bankruptcy to stop all

9     litigation against it.  If Scotts' view were correct, the

10    effect of the Court's January 2001 injunction I think would be

11    an unintended stay of all state court litigation in which any

12    defendant could hypothesize a possible subsequent claim against

13    Grace and a call upon its insurance.

14          We concur with the Committee that it's only when the

15    insurance itself is legitimately called upon when there is an

16    active claim subject to possible distribution that this Court's

17    jurisdiction, if at all, would vest and we believe that it is

18    not at all clear that Scotts must not first of all exhaust its

19    own primary insurance.  It has insurance.  And if we're

20    interested in preserving the insurance of the debtors W.R.

21    Grace or creditors or W.R. Grace, the Scotts Company should be

22    made to show why it should not call on its own liability

23    policies for judgments entered against it.

24          Finally, Your Honor, we believe that in terms of due

25    process, the terms of the injunction are such that a party is

1  not reasonably put on notice that a group of plaintiffs such as

2  the Allen plaintiffs, injured tort victims, are not free to sue

3  non-related, unrelated defendants in state court.

4         We would urge that the Court place this on the

5  regular docket of the court to give the parties an opportunity

6  to fully brief and explore the complex insurance issues

7  involved, but to deny the injunction today.

8         THE COURT:  All right.  Thank you.

9         I'm sorry.  Who else filed a response?

10        UNIDENTIFIED ATTORNEY:  The Lanier plaintiffs did

11 also, Your Honor.

12        UNIDENTIFIED ATTORNEY:  It was filed Friday before

13 the deadline I understand.

14        THE COURT:  Friday last week?  I'm sorry, I do not

15 have it.  I have not read it.  It has not been provided to me.

16 So I'm sorry.  Would you tell me, please, what the docket

17 number is?

18        UNIDENTIFIED ATTORNEY:  Bernie, do you have that

19 docket number?

20        MR. CONAWAY:  I'm looking it up as we speak.

21        Your Honor, Bernard Conaway on behalf of the Lanier

22 plaintiffs.

23        We filed our response timely.  It was noted on the

24 agenda as one of the objections that was filed.  And as we

25 speak I'm trying to get the docket number.

1          UNIDENTIFIED ATTORNEY:  Your Honor, it was in the

2   binder that was provided to chambers on Friday, I believe.

3          THE COURT:  Well, I have that binder and I've read

4   everything in it and it's not either on the agenda that was

5   submitted in the binder -- and let me double check to be sure

6   that I read it and somehow or other I'm ignoring the fact that

7   I did.

8          UNIDENTIFIED ATTORNEY:  Your Honor, I believe it is

9   Item C under the responses received.

10          THE COURT:  Ah, you're right.  I'm sorry.  I do have

11   this.  It's just not on my agenda copy.  But I do have it and I

12   have read it.  I'm sorry.  Go ahead.

13          MR. HUGHES:  Your Honor, Patrick Hughes here with

14   Haynes and Boone.  I've been retained by the Lanier Law Firm to

15   work with them as well.

16          Your Honor, this is an action between non-debtors.

17   It does not involve a spinoff situation like you ruled on in

18   the Global Industries case.  There's no evidence of any

19   previous discussions between --

20          THE COURT:  Pardon me.  Folks who are not speaking,

21   put your mute buttons on.  I can hear your conversations and I

22   cannot hear the person who is arguing.  This is a courtesy to

23   permit you to appear by phone for an argument that is as

24   complex as this one.  Please have the courtesy to be kind to

25   the people who have the Court's ear at the moment and put your

1  mute buttons on.

2           I apologize.  Go ahead.

3           MR. HUGHES:  Thank you, Your Honor.

4           This is an action by an independent solvent company

5  that has none of the spinoff implications that Your Honor found

6  initially in the Global Industries case.  There's been no

7  evidence presented in any of the moving papers that there are

8  prior discussions or implications involving the debtor's

9  insurance until the literal filing of this last week.  There's

10 no corporate affiliation involved.  It's not a related to

11 proceeding in the sense reviewed recently by the 3rd Circuit in

12 Federal Mogul or by the 5th Circuit in the Arnold v. Garlo

13 case.  The evidence, as I understand it, is that Scotts has

14 independent liability for incorporating vermiculite into its

15 products and its name.  There's no evidence pertinent to

16 Scotts' papers that indicate the products involved have

17 anything to do with the debtor's insurance and I would note,

18 Your Honor, it would be meaningful to look at Exhibit E to the

19 moving papers which contains excerpts from the policies.  And

20 while there is quoted language regarding the coverage that Your

21 Honor referred to just a moment ago, there is quoted

22 exclusionary language which I think was also picked up by the

23 Continental Casualty response opposing the relief indicating

24 that as Your Honor pointed out that products which are

25 incorporated are not encompassed within the vendor coverage.

1          Scotts undertook independent action that made it

2    liable.  The insurance nexus seems to be too nebulous from the

3    very face of the policy and the absence of any evidence to the

4    contrary.  There are no judgments against Scotts.

5          The shared insurance just seems premature to be a

6    basis for injunctive relief to stop the claims that are now

7    pending and to be filed against Scotts until further

8    proceedings occur before the Court.  And we would submit that

9    the plain language of Your Honor's order does not protect

10   non-debtor independent affiliates with substantial insurance

11   and other assets to protect them from lawsuits between

12   non-debtor companies.

13         Last but not least, we understand there's a real

14   issue and there's discovery ongoing at this time as to whether

15   Scotts exclusively has its source of vermiculite W.R. Grace or

16   whether it had other sources.  At the very least, that type of

17   discovery should be allowed to proceed because the source of

18   the asbestos in the Scotts product and its own name seems to be

19   something that should be looked at to determine whether Grace

20   is implicated at all.

21         THE COURT:  Okay.  Thank you.

22         MR. HUGHES:  I'll go back on mute.

23         THE COURT:  All right, thanks.

24         I'm sorry, who did I miss, Continental?

25         MS. DeCHRISTOFORO:  Good morning, Your Honor.  This

1 is Elizabeth DeChristoforo.

2          We just filed a statement because we're concerned

3 that there are some issues here that couldn't possibly be

4 resolved on a motion like this regarding claims for coverage.

5 We understand that really what we're talking about here is a

6 claim on the policies.  There are going to be numerous issues

7 as Your Honor is well aware as to Grace's coverage for any

8 particular claim and I don't think anything that's been put

9 forth on the record could easily resolve any of these issues,

10 as already has been made clear.

11          That being said, we understand if there is a claim

12 against Grace's policies, we're going to have competing claims

13 and for that reason we think it falls within the preliminary

14 injunction and we did not oppose the injunction.  We just are

15 concerned that Your Honor understands that there is going to be

16 very complex coverage issues as I think has already been made

17 clear.

18          THE COURT:  Okay.  Thank you.

19          Does anybody else wish to address the opposition to

20 this motion?

21          All right.  Then counsel for Scotts, you wanted an

22 opportunity to reply?

23          MR. SIDMAN:  Yes, Your Honor, Bob Sidman.  Very

24 briefly.

25          First of all, it seems to me based upon not only the

1  papers that have been filed, but also the statements made by

2  most of the opposition counsel today that no one seems to

3  dispute that it's the W.R. Grace vermiculite that is at the

4  heart of these state actions, and that's the reason why Scotts

5  feels it is clearly something related to under the <u>Paycor</u>

6  doctrine, the W.R. Grace bankruptcy, and something this Court

7  clearly has jurisdiction to intervene and prevent from

8  happening.

9         Second, as I understood the Committee's objection as

10  verbalized today, they sort of want to take the benefit of

11  potential insurance coverage away from Scotts for the time

12  being and have us fund our own costs of defense and have our

13  own risk of loss when, in fact, if we were not in a bankruptcy

14  setting, we would be going directly to these insurers and

15  asking that we be covered for our defense costs and potential

16  judgment.  So --

17         THE COURT:  And, of course, you'd get a denial.  This

18  language is clearly going to be something that's going to be

19  litigated.  Scotts does not have a clear opportunity to claim

20  coverage under this language with the exclusions in some of

21  these policies.  I have not obviously examined all the

22  policies.  I'm not called on to examine all the policies.  But

23  it's clear that that will be a matter of dispute, whether Grace

24  is in bankruptcy or not.

25         MR. SIDMAN:  I understand that, Your Honor.  And we'd

1 like the chance, of course, to address those issues or resolve

2 them in a global setting with W.R. Grace, which is

3 something --

4          THE COURT:  Well, I think you should have that

5 opportunity, but I don't think it's going to stay the

6 litigation against Scotts.  I don't think that preventing all

7 the trials from going forward against Scotts at this point is

8 the appropriate means to address this issue.  Prohibiting the

9 insurance companies as to which Scotts makes a claim on Grace's

10 insurance from paying those claims until the issue of coverage

11 is litigated in an appropriate forum is appropriate, and I will

12 make that injunction clear.  I think as counsel for Continental

13 pointed out that the order is already clear that that could not

14 take place.  But to the extent that it needs to be clarified,

15 I'm happy to do that.  But this is simply too attenuated.  It's

16 simply not direct enough of a liability that the debtor may

17 have on its shared insurance to Scotts to prohibit the actions

18 from going forward against Scotts.

19          I simply do not think that this preliminary

20 injunction should go so far.  I will, however, prohibit any

21 action against the debtors.  And to the extent that the debtors

22 are necessary parties, either as witnesses or discovery, at

23 this point I'm going to keep the injunction in place and

24 prohibit, unless the debtor voluntarily agrees to go forward on

25 its own, prohibit any action that will involve the debtor until

1 its plan of reorganization is filed with this Court when it's

2 due in October.

3        So I am not going to have the debtor distracted from

4 the plan to do discovery on the vermiculite issues with respect

5 to Scotts' trials.  And so if Scotts chooses to take advantage

6 of the offer to have a tolling agreement or to be dismissed

7 without prejudice, that's up to Scotts.  If it chooses not to

8 do that, it will be out there without the assistance of the

9 debtor until the debtor's plan is filed.

10        I need an order from someone.  I guess I

11 typically --

12        MR. SIDMAN:  Your Honor, can I ask a question on

13 that?  We are faced with a number -- we have at least nine

14 trials set for the remainder of this year.  The only -- the

15 first one, the Texas action, has there been even an offer of

16 the tolling agreement.  The others are set for trial, active in

17 discovery, where we need W.R. Grace's participation, both for

18 fact witnesses, for document discovery, for background on

19 expert testimony, and tests that they've run on their product

20 and on our product.  We can't excise W.R. Grace from these

21 litigations.

22        THE COURT:  Well, it would make sense that you ask

23 the trial Courts for a continuance if that's the case because I

24 am not permitting, until the debtor's plan is filed, the debtor

25 to be involved, except voluntarily, if the debtor chooses to,

1  then I will assume that the debtor has its own plan process

2  under control and can make the appropriate people available to

3  participate in discovery and trial.  Otherwise, I will not

4  permit it until this plan is filed.

5         So I suggest if you don't want tolling agreements or

6  to negotiate some dismissal, you ask the Courts for

7  continuances.  I am not going to permit these actions at this

8  critical time in the debtor's plan process against the debtor.

9  I will not have that distraction in this estate.  That's up to

10 Scotts.  But I am not enjoining the litigation.  That's up to

11 Scotts to figure out how to manage its cases in the state

12 court.

13        MR. SIDMAN:  Well, Your Honor, I think we have to

14 manage our cases by making our -- putting a best evidentiary

15 presentation we can which includes having W.R. Grace involved,

16 you know, not because we want to, because we have to.

17        THE COURT:  Well, I've already indicated my ruling

18 with respect to that.  If the debtor chooses to go forward, as

19 I said, that's up to the debtor.  Otherwise, it's only three

20 months from now and I'm not sure that any of these cases

21 actually will at this point get litigated in that time frame.

22 But until the debtor's plan is filed when it's due in October,

23 I am not going to permit the debtor to entertain these types of

24 distractions for these issues.

25        So the request to extend the preliminary injunction

1  to all lawsuits in which Scotts Company is involved is denied.

2  I need an order to that affect.  Generally I have the debtor

3  prepare orders because the debtor will circulate the order and

4  take a look at this record to make sure that all the parties

5  agree that the order has reflected my rulings.  I'm going to

6  impose that obligation back on the debtor again in this

7  instance.  I recognize that the debtor supported this motion,

8  nonetheless, I don't see any reason to vary that process.

9          So counsel for the debtor, please prepare the order.

10  Circulate it to the parties.  When can I expect to get it?

11          UNIDENTIFIED ATTORNEY:  By the end of the week, Your

12  Honor.

13          THE COURT:  All right, that's fine.  The motion is

14  denied but enforced with respect to any claim against the

15  insurance by Scotts is not to be paid and not to be litigated

16  until relief from this preliminary injunction is granted by

17  this Court.

18          So in the event that there is such a claim made by

19  Scotts against the insurance, I expect to hear from somebody

20  with respect to that matter.

21          Okay.  Anything more?

22          We're adjourned.  Thank you.

23          COUNSEL:  Thank you, Your Honor.

24          THE COURT:  Okay.

25                          * * * * *

## **C E R T I F I C A T I O N**

I, PATRICIA A. KONTURA, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.


_____          July 15, 2004

PATRICIA A. KONTURA                      Date

J&J COURT TRANSCRIBERS, INC.