1        But I am really more concerned at this point about

2   the fact that the debtor has to continually show up to defend

3   itself when it filed bankruptcy for the very purpose of

4   eliminating those needs.  So this sanction is awardable under

5   362 and under 105 and under either of them, independently,

6   jointly and severally.  I am not going to stay it.

7        MR. D. COHN:  All right.  Then thank you, Your Honor.

8   We have your ruling.  Thank you.

9        THE COURT:  Okay.  As modified, I've added one

10   sentence which says:  "For the reasons expressed on the record

11   today and at prior hearings, Gerard counsel is in contempt of

12   court and sanctions are appropriate."  I added that to the end

13   of paragraph 4.

14        MR. BERNICK:  Thank you, Your Honor.

15        THE COURT:  All right.  That deals also with motions

16   eight or -- do I need a separate order on nine?

17        MR. BERNICK:  No.  I think that with respect to nine,

18   I think that we should continue that as Your Honor has

19   suggested.  I think the directions from the Court are very,

20   very clear on that, and I'm assuming that we're not going to

21   have any further problems before next time.  Otherwise, we'll

22   be back asking for more sanctions.

23        But what Your Honor has indicated is that counsel's

24   supposed to come back on a case by case basis and present the

25   motion to take a perpetuation deposition and we'll deal with it

**J&J COURT TRANSCRIBERS, INC.**

102

1 at that time.  So I think that I would hold nine over.

2 Actually, it's their motion for leave to take.  I suppose,

3 really, what Your Honor has directed is that they make that

4 motion on a case by case basis.

5         THE COURT:  Yes.

6         MR. BERNICK:  And in that respect maybe nine

7 technically is moot.  Maybe it's moot because they're

8 presumable going to be coming back on a case by case basis.

9         THE COURT:  Mr. Cohn.

10        MR. D. COHN:  Your Honor, I think maybe deny without

11 prejudice is probably the correct term, because we can then --

12        THE COURT:  All right.  That's fine.  Will you --

13 I'll have Mr. Bernick submit an order, then, that will deal

14 with nine.  I'll deny it without prejudice because I am

15 expecting that as you need depositions I will get that

16 information from you piecemeal.

17        MR. D. COHN:  Correct, Your Honor.  Thank you.

18        THE COURT:  All right.

19        MR. BERNICK:  Your Honor, with respect to the

20 remaining contested matters, that is 10 and 12, and then the

21 omnibus objections, number 14 obviously has already been taken

22 care of.  There's also a National Union matter and the claim

23 status report.  I would respectfully ask the Court for leave to

24 -- for me to catch an airplane that is going to leave, and I'm

25 worried about the weather.  Ms. Baer was the one who was going

1 to address all those matters, anyhow.

2          THE COURT:  That's fine.

3          MR. BERNICK:  With the Court's indulgence, I'll ask

4 her to take that over.

5          THE COURT:  All right.  Anyone else who is planning

6 to leave because of the weather, you're free to go.

7          MR. D. COHN:  Thank you, Your Honor.  I appreciate

8 that.

9          THE COURT:  Thank you.

10     (Pause)

11          THE COURT:  No, I have -- I signed this order, Mona.

12 Thank you.

13          MS. BAER:  Good afternoon, Your Honor.

14          THE COURT:  Good afternoon.

15          MS. BAER:  Your Honor, the next matter on your call

16 is matter number 10, the motion of Unesa (phonetic) Rodriguez.

17 This is one that's been carried on from time to time.  This is

18 zero dollar insurance coverage.  My understanding from CNA's

19 counsel is that they have reached a settlement in principle

20 with the plaintiffs.

21          This was a proof of claim; it never was a complaint.

22 It was just a proof of claim and it would be essentially a

23 claims resolution.  Your Honor, I think it makes sense to just

24 take this off your calendar as it is really going to be mooted,

25 although we do not have -- have not seen a signed settlement

104

1 agreement yet.  I don't think counsel for Rodriguez is on the

2 phone.

3          THE COURT:  Is anyone present for the Rodriguez's?

4 For CNA?  Okay.  Why don't I just say that it's continued for a

5 settlement agreement to be proposed, and you can put it back on

6 when it's appropriate.

7          MS. BAER:  That's fine, Your Honor.  Just, it's been

8 carried for about six months and I didn't want you to have to

9 keep looking at these papers every month.

10          THE COURT:  Okay.  You don't need to put them back in

11 the binders until I have some settlement proposal.

12          MS. BAER:  Your Honor, matter number 11 we've already

13 taken up, and that takes us to matter number 12.  Matter number

14 12, Your Honor, is the motion of the Massachusetts Department

15 of Environmental Protection for relief from the automatic stay

16 to effectuate a setoff.  That's been fully briefed.  I don't

17 know who is on the phone from Massachusetts.

18          MS. IANCU:  Carol Iancu, Assistant Attorney General.

19          THE COURT:  Yes.  Go ahead.

20          MS. IANCU:  Thank you very much, Your Honor.  Yes, we

21 are seeking relief from the stay to setoff the debtor's pre-

22 petition environmental liability owed to the Commonwealth

23 against part of a 1986 state corporate excise tax refund that

24 is owed to the debtor by the Department of Revenue.

25          THE COURT:  Ma'am, are you on a speaker phone?

1        MS. IANCU:  I am.

2        THE COURT:  Could you please pick up?  You're very

3   hard to hear.

4        MS. IANCU:  Okay.  Is that better?

5        THE COURT:  Yes, thank you.

6        MS. IANCU:  Okay.  Thank you.  Section 553 of the

7   Bankruptcy Code -- sorry.  Now, I've -- I feel like I was

8   shouting because I was on the speaker.  I'll try not to shout

9   at you.  The Bankruptcy Code preserves whatever right of setoff

10  already exists.

11       It's clear that it does not affect the right of a

12  creditor to offset mutual debts that are owing as between the

13  creditor and the debtor that arose pre-petition.  And the

14  Commonwealth papers set out that all of these requirements are

15  met.

16       First, under Massachusetts case law it's clear that a

17  state agency has the right to setoff funds that are owed to a

18  taxpayer by and through the Department of Revenue against funds

19  that a taxpayer owes to a different state agency.  And I would

20  just direct the Court to paragraph 1 and note 2, footnote 2 of

21  the reply brief, which are on page 2 of that brief, and in

22  particular, the cases, the <u>Dakota v. Town of Stouton</u>, 504 --

23       THE COURT:  Ma'am, would you mind shouting at me,

24  because I'm having trouble hearing you even though you're on

25  the headset.

1       MS. IANCU:  Okay.

2       THE COURT:  Thank you.

3       MS. IANCU:  All right.  Do I need to repeat what I

4 said?

5       THE COURT:  No.  Go ahead.

6       MS. IANCU:  Okay.  So I won't be labor it, but I

7 think it's clear under Massachusetts case law, and the cases

8 are cited in the reply brief, that the state agency does have

9 the right for setoff under state common law.  This is

10 completely consistent with federal case law as to mutuality,

11 both in non-bankruptcy and bankruptcy contexts.

12      The Supreme Court and every Circuit Court that has

13 looked at this issue has gone along with what the Supreme Court

14 set out in the Cherry Cotton Mills case, what's been termed the

15 unified creditor theory, where federal agencies are deemed to

16 be -- or constitute a single entity for setoff purposes, as

17 long as they're not acting in a private capacity, which is of

18 course the typical situation.

19      And the cases are talked about on my reply brief,

20 paragraph 6, pages 4 to 5.  You can see all the different cases

21 and in which circuits that have gone that way.  Courts have

22 also applied this same principle to state agencies, and of

23 course, it is an analogous situation that state agencies

24 similar to federal, you know, they're set up in a similar

25 fashion so that it's completely analogous and common sense,

107

1 logic dictate that the same would apply.

2      And in fact, several courts that have looked at it,
3 have applied the theory that state agencies also constitute
4 single entities for setoff purposes.  And for example, Illinois
5 state agencies, New York and just very recently, in
6 Connecticut, as well.

7      And I'll give you the cite for that because it came
8 out the day I filed the motion.  So actually, I wasn't aware of
9 it, but it's a Second Circuit case, Charter Oaks -- sorry --
10 Charter Oak Associates, 361 F.3d, 760, and that allows setoff
11 as between Connecticut agencies.

12      The debtors in their objections try to distinguish
13 the New York case, in re Bison, and for the life of me I don't
14 quite get it.  They're -- the distinction they point out is
15 that they say that the Department of Labor, the New York State
16 Department of Labor and the New York Department of Tax and
17 Finances are not sacrosanct government units, but rather,
18 they're a subdivision of a larger entity.

19      They're organized subunits of the larger entity,
20 which would be the State of New York for operational purposes,
21 and they think that that distinguishes the situation in
22 Massachusetts, which of course, it doesn't.  The Massachusetts
23 Department of Revenue and the Massachusetts Department of
24 Environmental Protection were both created by state legislature
25 as part of the executive department.

1       There's statutes for that that establish both of

2 those.  The Massachusetts Constitution gives the governor the

3 power to reorganize such executive agencies, to expand, to

4 contract, to modify as he sees fit, to create such a plan and

5 submit it to the legislature.

6       So just as in Bison, these state agencies are defined

7 by the state.  Their structure, their purpose, their function

8 are all derived from the state, and the distinction that

9 debtors try to create just does not exist.  In fact, I would

10 just note for the Court that to the extent that this unified

11 creditor theory is -- has become the general rule, which

12 debtors concede in the federal cases -- or sorry -- for federal

13 agencies, the Federal Constitution that sets off that structure

14 is actually based on the Massachusetts Constitution.

15      The Massachusetts Constitution came first and was the

16 template for the federal from which these other cases,

17 including the Supreme Court, find.  To the extent that the

18 debtors try and rely on Lakeside, which was a case from the

19 Bankruptcy Court from the Northern District of Illinois, Your

20 Honor, this case is no longer good law.

21      The debtors are correct.  It hasn't been directly

22 overruled, but the same exact court, the Bankruptcy Court for

23 the Northern District of Illinois, seeing what the Seventh

24 Circuit did in a subsequent case, no longer follows what

25 Lakeside did.

1          In the case, Doctors' Hospital I, the first one, 272

2 B.R. 677, that court allowed the setoff between Illinois state

3 agencies.  And while debtors are correct that it did not set

4 out a per se rule that all state agencies should be treated as

5 single entities, it is certainly indicative of the weight that

6 this Court should give to the Lakeside opinion.

7          And there is other opinion cited in my reply that

8 make it clear that Lakeside has been discredited.  It was, you

9 know, the minority view.  And I think the extent to which

10 debtors try to suggest that it represents a valid, persuasive

11 authority is a distortion of what the current case law truly is

12 in the area.

13          To the -- and to the extent that they point to an

14 appeal of the Doctors' Hospital case, I would just point out to

15 the Court that mutuality was not an issue in that case.  To the

16 extent that Judge Pozner spoke to the issue at all, it's

17 completely dicta.

18          That case did not involve a common-law right of

19 setoff, but rather, it involved whether or not two different

20 Illinois statutes, one that purported to give a right of setoff

21 and one that did not, whether those were in conflict.  And the

22 issue was whether or not there was an implied right of setoff

23 in a contract that arose that was at issue there.

24          So I think that it would defy logic and also go

25 against the predominant case law to not go ahead and be

J&J COURT TRANSCRIBERS, INC.

110

1 consistent with what has been the prevailing law that federal

2 agencies, and therefore, the state agencies in this case,

3 specifically the Department of Revenue and the Department of

4 Environmental Protection, would constitute a single entity for

5 setoff purposes here.

6         As to debtor's attempt to say that the pre -- that

7 the tax refund did not arrive until post-petition, again, the

8 reply brief that is before Your Honor sets out that the case

9 upon which debtor relies for that point has been overturned.

10 It's no longer good law.

11         Again, there's not a genuine dispute in the case law

12 on that point, and I think the general rule is very clear that

13 tax refunds arrive at the end of the tax year.  Even if they

14 have not been fully adjudicated at that time, that is the

15 general rule.  And so I really won't spend more time on that

16 unless you have questions.

17         Finally, Your Honor, the third point that debtors try

18 and argue is that they intend to dispute the Commonwealth's

19 claims.  And I would just point out that the Commonwealth

20 believes that not an obstacle to authorizing setoff at this

21 point.  And Collier on Bankruptcy also sets out that, you know,

22 generally, a claim that's not -- a claim is not disabled from

23 setoff simply because it's being disputed.

24         To the extent any adjustments would need to be made,

25 if and when they succeed on a challenge to our claims, that

**J&J COURT TRANSCRIBERS, INC.**

111

1  could be handled at that point.

2          THE COURT:  All right.  Thank you.

3          MS. BAER:  Your Honor, under Section 553 of the
4  Bankruptcy Code you have the discretion to determine whether or
5  not a setoff is appropriate.  Setoff is actually contrary to
6  the general way in which bankruptcy cases run, because it does
7  allow someone who has a pre-petition claim to get paid in 100
8  cent dollars when others may not.

9          Your Honor, in this particular situation I think it's
10 important to look at the two kinds of claims you have, and then
11 the two entities you have making the claims.  Number one,
12 you've got taxes that are owed to the debtor from a 1986
13 divestiture.  From day one the debtor has challenged the
14 payment of those taxes and has sought to get those taxes
15 returned to it.

16         Finally, Your Honor, in December of 2003, the
17 Massachusetts Department of Revenue and the debtors entered
18 into settlement negotiations, and actually came before this
19 Court and received an order on January 22nd, 2004 authorizing
20 the debtors to enter into a settlement agreement with
21 Massachusetts for the return of 1,292,000 some odd dollars.
22 This tax refund they've been attempting to get since 1986.

23         Your Honor, the other claims, the claims that the
24 Department of Environmental Protection has in Massachusetts,
25 are claims for alleged environmental cleanup costs and fees

1  associated with environmental cleanup.  They have filed three
2  proofs of claim in the bankruptcy case for a little under
3  $800,000.

4           Those claims are all contested claims.  Those claims
5  are all the subject of omnibus objections that will be coming
6  up shortly.  Those are the two claims you have by two
7  completely different state agencies.  One is the Department of
8  Revenue.  One is the Department of Environmental Protection.

9           Your Honor, we do not dispute that there is case law
10 from the Supreme Court that has decided that when you're
11 talking about a setoff of federal agencies one can setoff
12 against the other.  That is the federal government.  There's
13 only one federal government.  It is set up pursuant to certain
14 federal statutes.

15          But Your Honor, we have 50 separate sovereigns, 50
16 separate states.  Each has their own rules and regulations.
17 Each government is set up separately.  There is no definitive
18 rule from the Supreme Court or from the Third Circuit on
19 whether or not different state agencies can be permitted to
20 setoff amounts owing to and from other state agencies with the
21 debtor.

22          Your Honor, the case law that's out there is kind of
23 all over the place, but Judge Pozner in the Doctors' Hospital
24 case that counsel was speaking of is kind of the last word,
25 although apparently, there's something in the Second Circuit I

113

1  have not also seen that was referred to on the phone today.

2          Judge Pozner basically said, it's clear with the

3  federal government; it's not clear with the states.  And in the

4  State of Illinois, even there, there's a conflict between the

5  Bankruptcy Courts as to whether or not state agencies are the

6  same for purposes of setoff and for purposes of mutuality under

7  Section 553.  The <u>Bison</u> case that's referred to from the

8  Western District --

9          THE COURT:  Well, even if they are, this is an

10 agreement that was entered into by one of the state agencies.

11 Even if they're treated as one agency, isn't the other agency

12 bound by the agreement of the agency that negotiated it?

13         MS. IANCU:  Your Honor, the settlement agreement has

14 not been entered into.

15         THE COURT:  So what you're doing at this point is

16 objecting to the fact that the taxing body wants to pay back a

17 refund?

18         MS. IANCU:  No.  No.  We're seeking a setoff, which

19 is something to which we are entitled, and to which there is --

20 should be, according to the case law, a preference to see that

21 it happens.

22         THE COURT:  Well, I guess my concern is if there's a

23 negotiation by the taxing authorities to issue a refund check

24 to the debtor and you're all one agency, it seems -- for

25 purposes of setoff and everything else, it would seem that they

114

1  ought to get the consent of the other agencies beforehand, and

2  if they don't, aren't you bound by it?  I don't know how you

3  can be treated as one agency for setoff purposes and not for

4  settlement purposes.

5          MS. IANCU:  Well, I think what we are -- the

6  settlement agreement that the Department of Revenue had been

7  negotiating with the debtors -- and I was not involved in that,

8  but it's my understanding that that settlement negotiation was

9  to resolve the amount that would be due.

10          We are not at this point trying to say that it's not

11  due or to undermine whether or not that amount is, you know,

12  reliability related to that amount.  It's more just that that

13  shouldn't be setoff against the amounts that the debtor owes

14  for its pre-petition environmental liability.

15          And just to note, Your Honor, our proof of claims did

16  just kind of put on the Court's radar screen that there's

17  potential future liability that we set out in our claims of up

18  to $41 million.  This setoff is just as to the pre-petition

19  portion, to be consistent with Section 553.

20          THE COURT:  Okay.  I just don't understand how if

21  it's one agency you're not all involved in the negotiations,

22  because it would seem that if they're agreeing as to what the

23  tax liability was and they're retaining the rest, they have an

24  obligation to refund it.  So I'm not sure --

25          MS. IANCU:  Well, they are two separate state

**J&J COURT TRANSCRIBERS, INC.**

1  agencies organized that way for operational purposes.

2          THE COURT:  Yes, I understand.

3          MS. IANCU:  And clearly, you know, you -- for

4  operational purposes it wouldn't be necessarily feasible for

5  the Department of Environmental Protection to be aware and

6  apprised of every negotiation that's going on in the Department

7  of Revenue.

8          THE COURT:  Well, how do you know about it now?

9          MS. IANCU:  Well, I was alerted to it by a party,

10  another party in this case.  Otherwise, I would not have known

11  about it.  I didn't know about it until another party in this

12  case saw that there had been a judicial approval of the

13  impending settlement, and I was notified of it at that time.

14          THE COURT:  Okay.

15          MS. IANCU:  But just to make a point, it's -- they

16  are separate agencies, subunits of a larger, the exact same as

17  the federal agencies are subunits for functional purposes of

18  the federal government.  And that is -- so as far as them being

19  separate agencies, that's one thing.  The fact that they are

20  deemed a single entity for setoff purposes -- and again, I

21  would go back to Cherry Cotton Mills, the Supreme Court case --

22          THE COURT:  Wait.  Ma'am, I heard your argument.  I

23  was letting the debtor make her argument.

24          MS. IANCU:  Okay.

25          THE COURT:  So I'll give you a chance to rebut.

116

1          MS. IANCU:  Okay.

2          THE COURT:  But you're repeating what you've told me
3 already.

4          MS. IANCU:  Okay.

5          THE COURT:  And I understood it.  I just don't
6 understand --

7          MS. IANCU:  No.  I was going to --

8          THE COURT:  -- how you can be as --

9          MS. IANCU:  -- make a new point, actually, but I'll
10 save it until rebuttal, if you'd like.

11          THE COURT:  All right.  Ms. Baer.

12          MS. BAER:  Your Honor, this conversation is clearly
13 showing you why there's no mutuality here.  You know, the
14 Department of Revenue negotiated a settlement with Grace.
15 Grace came to this Court.  Grace got the approval of this Court
16 to go forward and compromise the amount that is owed to Grace
17 on these very, very old taxes and interest related to those
18 taxes.

19          Now, after the fact when we're going to sign the
20 settlement agreement, which by the way made no mention
21 whatsoever of any other agency being owed something, now we get
22 the Department of Environmental Protection coming in here.
23 These are not mutual at all.

24          These are two separate agencies.  They do two
25 separate things, two separate functions, different sets of

**J&J COURT TRANSCRIBERS, INC.**

117

1 people, completely different circumstances. And Your Honor,

2 not only are the agencies not -- not only are there not

3 agencies mutual for purposes of the setoff, but Your Honor, in

4 addition to that we don't have mutual claims.

5     We got a finally liquidated amount owed for these

6 taxes and we've got three proofs of claim filed by the company

7 that have not been adjudicated, that are contested that could

8 end up being zero or some other number that may not be

9 adjudicated for a period of time; very different from your

10 typical setoff situation.

11     And again, setoff is an equitable relief, and we're

12 asking Your Honor to not permit that equitable relief, because

13 there is not mutuality under Section 553. And in this

14 particular circumstance with these entities and this kind of

15 debt and this kind of obligation owing to the debtor, it is not

16 the kind that is contemplated by 553 and should not be

17 permitted.

18     THE COURT: Okay. All right. Now, go ahead. You

19 had another point you wanted to make?

20     MS. IANCU: Yeah. Cherry Cotton Mills specifically

21 identifies that who bears the losses and gets the profits is

22 something worthy of consideration in terms of determining

23 whether it's a single entity for setoff purposes. I think

24 what's being confused is a single entity for setoff purposes,

25 as opposed to a separate agency for operating the government in

**J&J COURT TRANSCRIBERS, INC.**

1 a realistic way.

2      The Department of Revenue to refund a tax payment,
3 that payment comes from the treasurer, from the general fund.
4 Any environmental liability that is paid to the Commonwealth
5 goes into the general fund.  They come in and out of the same
6 pot.  The Cherry Cotton Mills said that that is precisely
7 relevant.

8      This new case that I mentioned, Charter Oaks, also
9 says precisely that.  It says:  "We believe that in determining
10 whether governmental units should be read as state or agency,
11 the inquiry should focus on the relationship between the
12 agencies and the state treasury.

13      If that relationship reveals that the agencies act in
14 effect as a unitary creditor for non-bankruptcy purposes, the
15 agency should be treated as such in the bankruptcy context, as
16 well."

17      THE COURT:  Okay.  I think the issue here is under
18 553(a)(1), the setoff is not permitted if the creditor's claim
19 against the debtor is disallowed.  And for 553(a)(3)(c), if the
20 debt owed to the debtor by the creditor was incurred by the
21 creditor -- oh, that's not relevant.  I apologize.

22      MS. IANCU:  No.

23      THE COURT:  Just (a)(1), I believe at this point in
24 time is relevant.  And the debtor is telling me at this point
25 they have some objection to claim that's going to be processed

119

1  quickly.  So it seems to me that for now that setoff is not

2  appropriate.  It may be after the claims allowance process

3  works it way through.

4        So I think what I have to do with this issue is

5  simply continue it until the objection to claim process goes

6  forward, because I'll know at that point whether the claim is

7  allowed or is not allowed.  And if it's not allowed, no setoff

8  will be appropriate.

9        And if it is allowed, then a setoff may be.  I think

10  that should give the debtor some incentive to bringing this

11  proof of claim promptly so that we can get this issue

12  adjudicated, because I don't know at this point whether the

13  claim will be allowed or will not be allowed.

14        MS. IANCU:  No.

15        THE COURT:  Is the debtor intending to go forward

16  with the settlement in the event that the setoff -- in the

17  event that I simply postpone this until the objection to claim

18  process?

19        MS. BAER:  Well, Your Honor, I'm troubled because it

20  seems to me that through the process --

21        MS. IANCU:  I'm sorry.  I can't hear her.

22        THE COURT:  She'll go to a microphone.

23        MS. IANCU:  Thank you.

24        MS. BAER:  Your Honor, I'm troubled because it seems

25  just through the process of who holds the checkbook, they're

120

1 not going to pay us the settlement amount.

2          THE COURT:  Well, it appears that based on the amount

3 of the pre-petition claim that at least 400,000 of this ought

4 to be returned to the debtor, because the only thing that is at

5 issue is 800 of the 1.2 million.  So at least 400,000 of it is

6 not appropriate for setoff, because there's no claim at this

7 point that that meets the mutuality requirements.

8          But I get -- my concern is, the debtor indicated that

9 the settlement was because you weren't aware that there was

10 going to be this offset.  Are you going to go forward with the

11 settlement if there is an offset?

12          MS. BAER:  Well, Your Honor, I believe that the

13 settlement is a compromise and I think my client will have to

14 look at whether or not knowing they are not going to get the

15 full amount, if it makes sense to go forward with the

16 settlement.

17          THE COURT:  All right.  I think what I will do is

18 continue this.  How long will it take the debtor to get the

19 objection to claim process teed up?  Are you ready to go with

20 this one?

21          MS. BAER:  Your Honor, we have a great body of

22 environmental claims, and there's also the ramifications of an

23 overall settlement we're negotiating with the regular

24 Environmental Protection Agency.  I don't know these claims

25 well enough to know if there's interplay.  If I could have 60

**J&J COURT TRANSCRIBERS, INC.**

121

1  days I think then I will know.

2         THE COURT:  Why don't you work with counsel for the
3  DEP and simply put this back on the agenda, either teed up with
4  an objection to claim process, or if the debtor decides you're
5  going forward with the settlement anyway, then it seems to me
6  that the appropriate order would say that, but for the amount
7  that is in issue.

8         The balance should be paid over to the debtor
9  forthwith, and I would be content to enter that type of an
10 order and to push the rest of the issue off until the objection
11 to claim process.  I'm not permitting a setoff.  Yes, the
12 debtor won't have all of that refund readily available for
13 operating cash, that's quite true, but it would still have a
14 third of what its settlement proposal is for.

15        So that's I think better than nothing, and when the
16 debtor gets the rest of it, if it gets any of it, could be teed
17 up by the debtor as promptly as the debtor chooses.

18        MS. IANCU:  All right.  There is case law, Your
19 Honor.  It's just, if -- once a payment is made to the extent
20 that that waives a right to setoff.  So I would need to
21 research and look into the issue as to whether or not it would
22 be appropriate or wise to even pay the portion that's not at
23 issue without --

24        THE COURT:  Oh, I think --

25        MS. IANCU:  -- running afoul of potentially risking

122

1 waiving our rights.

2     THE COURT: No. I think the order can clearly say

3 that the balance is being withheld from distribution pending

4 the objection to claim process, and that your right to claim

5 that setoff is not waived.

6     MS. IANCU: Okay.

7     THE COURT: That should not be an issue.

8     MS. IANCU: Okay. Thank you.

9     THE COURT: All right. So why don't I -- do you want

10 60 days to work with counsel to see whether you're going

11 forward with the settlement, or --

12     MS. BAER: Your Honor, why don't we just continue

13 this until the July omnibus hearing, and we'll -- I'll find out

14 from my clients where we are on the claims objections process

15 and then we can talk about where they are in the settlement,

16 because I do understand the settlement agreement had not been

17 signed. So I'll see where that stands.

18     THE COURT: All right. Is that all right with you if

19 this is continued until the July omnibus?

20     MS. IANCU: Yes. Obviously, I'd prefer a positive

21 ruling now, but yes, I can wait until then.

22     THE COURT: All right. If you come to an agreed upon

23 order --

24     MS. IANCU: Yes.

25     THE COURT: -- you can always submit it on a COC.

123

1  But Ms. Baer, make sure Ms. Bello gets a copy, because I --

2  she's normally pretty good at sending me things.  I'm not sure

3  what happened to this one.

4          MS. BAER:  Yes, Your Honor, I will.

5          THE COURT:  If you -- as I said, if you arrange -- if

6  you agree upon an order, then I've already indicated what I am

7  willing to do.  So you can submit that order on a certification

8  of counsel, and then I won't need another hearing on this

9  matter.  It will simply be continued till the claims objection

10 process.  Okay?

11         MS. BAER:  Thank you, Your Honor.

12         THE COURT:  All right.  Thank you.

13         MS. IANCU:  Thank you.

14         MS. BAER:  Your Honor, the next matter on your call

15 is the debtor's third omnibus objections.  Those are

16 nonsubstantive omnibus objections.  We received approximately

17 15 responses.  Of those 15 responses, several have been

18 resolved and I believe we have nine left that are being

19 continued.

20         I have a draft order, Your Honor, with exhibits that

21 shows what's being expunged, what's being withdrawn --

22         THE COURT:  All right.

23         MS. BAER:  -- and what's being continued.

24     (Court and clerk confer)

25         THE COURT:  Are you just continuing the ones that are

**J&J COURT TRANSCRIBERS, INC.**

124

1   objected as to which responses were filed?

2          MS. BAER:  Yes, Your Honor, and not -- and we've even

3   resolved some of those.  We're continuing the ones that are on

4   Exhibits A and Exhibits B.

5          THE COURT:  All right.

6          MS. BAER:  There are nine on Exhibit A.  There are

7   three on Exhibit B.  Those are continued all to the June

8   hearing, and the rest of those are being resolved by being

9   expunged, being withdrawn, being reduced, whatever the relief

10  was being requested.

11         THE COURT:  Okay.  This order is entered.

12         MS. BAER:  Your Honor, the next matter is actually

13  not on your call, but should have been.  It was on the April

14  agenda and for some reason was not put on May.

15         THE COURT:  Yes.

16         MS. BAER:  And that was the status on the National

17  Union matter.

18         THE COURT:  Yes.

19         MS. BAER:  As you recall, we had a contested hearing

20  in this Court.  Your Honor ruled.  We submitted a draft order

21  to the parties and I believe yesterday counsel for Read, Morgan

22  and Quin submitted a revised order, and I believe counsel for

23  both National Union and for Read, Morgan and Quin are on the

24  phone.

25         THE COURT:  Somebody from National Union?

1          MR. DAVIS:  Yes, Your Honor.  Michael Davis.

2          THE COURT:  Yes, Mr. Davis.

3          MR. DAVIS:  I think the short story from there is

4  that Mr. Esserman and I spoke this morning.  We've suggested

5  some changes in his draft.  He's asked me to implement those

6  changes and send it to him for review, and I expect that by the

7  end of the week he and I will have a redraft, which we will

8  circulate appropriately.

9          THE COURT:  Okay.

10          MR. ESSERMAN:  This is Sandy Esserman, Your Honor.  I

11  think that that's correct, and I expect to have an agreed order

12  submitted to the Court.

13          THE COURT:  All right.  With respect to the amount,

14  are you all agreeing to the amount?

15          MR. ESSERMAN:  No.

16          MR. DAVIS:  We haven't agreed to any amount yet.

17  Under your Court's prior ruling, National Union was given the

18  right to go back and look at the unpaid claims and the debtor

19  also was going to have that right.  The agreed order that we're

20  contemplating would implement that process.

21          THE COURT:  All right.  So what I've authorized, I

22  think, is the withholding of $4 million unless I -- is this the

23  same claim?

24          MR. ESSERMAN:  No.  I think you may be confusing it

25  with a different matter.

126

1          THE COURT:  Oh, pardon me.  That might be in Kaiser.

2 Just a minute.  Yes.  Okay.  I see.

3          MR. ESSERMAN:  That's -- that's --

4          THE COURT:  I'm looking at my Kaiser proceeding memo.

5 I apologize.

6          MR. ESSERMAN:  I'm involved in that one, as well,

7 Your Honor, but --

8          THE COURT:  Okay.

9          MS. BAER:  This one, Your Honor, was just procedural,

10 that before any further monies were paid, before National Union

11 had any obligation to pay, these reviews were to be conducted.

12 And this is a procedural order that sets forth the time frames

13 for the reviews.

14          THE COURT:  Okay.  That's fine.  When I get it on a

15 COC I will enter it.  All right.  Thank you.

16          MR. DAVIS:  Thank you, Your Honor.

17          THE COURT:  I'll just continue it generally speaking.

18          MR. DAVIS:  I think we probably need to continue it

19 for status conference at some future date.  We can put it on

20 the docket again.  The agreed order provides for basically a

21 60-day review period and a response period as to the debtors,

22 and we'll see what results that yields.  And we're going to

23 have to put it back on the docket again, and I suspect, argue

24 it again.

25          THE COURT:  All right.  That's fine.  It'll be put

**J&J COURT TRANSCRIBERS, INC.**

1  back on the agenda when you all agree.

2          MS. BAER:  Thank you, Your Honor.

3          MR. DAVIS:  Thank you.

4          THE COURT:  Okay.

5          MR. ESSERMAN:  Thank you.

6          THE COURT:  Anything else?

7          MS. BAER:  Your Honor, I'd just note that earlier in

8  the proceedings Mr. Bernick referred to our nonasbestos

9  litigation procedures.  We did file a status memo with the

10 Court on Friday that updates the Court on where we are on

11 omnibus objections, and suggests a framework for how we intend

12 to go forward with nonlitigation claims.

13          Counsel was served with a copy of that.  We will have

14 further conversations with counsel in the next number of days

15 to talk more about that procedure.  This is again the procedure

16 for nonasbestos litigation.  We anticipate in conjunction with

17 that, filing a motion for mediation.

18          THE COURT:  Okay.  That's fine.

19          MS. BAER:  And that's all I have on the agenda, Your

20 Honor.

21          THE COURT:  Anyone have any housekeeping matters?

22 All right.  We're adjourned.  Thank you.

23          MS. BAER:  Thank you.

24          THE COURT:  We'll take a five-minute recess so we can

25 get set up for the Kaiser case, and then start Kaiser.

128

1          (Whereupon, at 2:37 p.m., the hearing in the above-

2  entitled matter was concluded.)

3                          --oOo--

4                        CERTIFICATE

5          I certify that the foregoing is a correct transcript,

6  to the best of the transcriber's ability, from the official

7  electronic sound recording of the proceedings in the above-

8  entitled matter.

9

10

11  _____          June 7, 2004

12  Elizabeth Reid-Grigsby

13  AAERT CET**00145

14  J&J Court Transcribers, Inc.

**J&J COURT TRANSCRIBERS, INC.**