# Exhibit 1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | Re: Docket No. 5808 and |
| | | 8/23/04 Agenda Item 3 |

## DEBTORS' SUBMISSION IN CLARIFICATION AND REVISION OF THEIR PROPOSED ADR PROGRAM

The Debtors file this Submission to (i) clarify certain aspects of their proposed ADR Program[1] and (ii) request approval of a revised ADR Program that addresses concerns that have been expressed by this Court and certain constituencies in these bankruptcy cases. First, the ADR Program is, and has always been, intended to offer the Debtors and this Court an organized system for resolving the substantive merits of *any* disputed proof of claim, not merely the approximately 200 proofs of claims that relate to pre-petition litigation. The Debtors presently have 7,126 unreconciled, non-asbestos claims pending against them that, if not resolved through simple claims objections, could be submitted to the ADR Program. Second, the Debtors have modified the ADR Program to address concerns that have been expressed by the Court and certain constituencies in these bankruptcy cases. In particular, the revised, proposed ADR Order and ADR Procedures (which are attached hereto as Exhibit A and Exhibit B, respectively, along

---

[1] Capitalized terms not otherwise defined in this Submission have the meanings given in the Debtors' Motion Pursuant to Sections 105(a), 362, 363, 502 and 503 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedures 9019 to Establish an Alternative Dispute Resolution Program to Liquidate Certain Prepetition Claims, which was filed with the Court on June 14, 2004.

with black-lines against the previously filed documents) have modified the ADR Program so that it: (i) requires the Debtors, as an initial step, to file a formal claim objection to any disputed proof of claim and provide the respective claimant with an opportunity to respond to such objection, consistent with Bankruptcy Rule 3007, before the Debtors may submit the claim to the ADR Program, (ii) no longer contains as many opportunities for "foot-faults" that would automatically result in the disallowance of claims; (iii) requires negative notice for certain settlements, and (iv) contains a lower maximum for pre-approved settlements.

## Facts and Background

1.  On April 2, 2001 (the "<u>Petition Date</u>"), the Debtors commenced their respective reorganization cases by filing petitions under chapter 11 of the Bankruptcy Code. By operation of law, all pending and prospective judicial proceedings against any of the Debtors were automatically stayed pursuant to 11 U.S.C. § 362(a)(1).

2.  By an order dated April 22, 2002 (the "<u>Bar Date Order</u>"), this Court set March 31, 2003 (the "<u>Bar Date</u>") as the last date for filing proofs of claims for any pre-petition claims relating to asbestos property damage, non-asbestos claims (including all governmental claims) and medical monitoring claims (the "<u>Proofs of Claims</u>"). To date approximately 15,438 Proofs of Claims have been filed against the Debtors' estates, 7,126 of which are non-asbestos related claims, including approximately 200 claims that relate to non-asbestos litigation. The Debtors are also aware of as many as 20 additional non-asbestos litigation claims for which no Proof of Claim has been filed. The Debtors dispute the substantive validity and/or amount of a substantial number of the Proofs of Claims.

3.  On June 14, 2004, the Debtors filed their Motion Pursuant to Sections 105(a), 362, 363, 502 and 503 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedures 9019

to Establish an Alternative Dispute Resolution Program to Liquidate Certain Prepetition Claims (the "Motion"). The Motion requests the Court's approval of the Debtor's proposed system for utilizing (i) settlement offers and (ii) mediation to resolve the substantive merits and/or amounts of the disputed Proofs of Claims.

4.  In the subsequent weeks, the Debtors' counsel has had several conversations concerning the Motion with several constituencies in these bankruptcy cases. In particular, the Official Committee of Unsecured Creditors (the "OCUC") and the Asbestos Personal Injury Claimants (the "PI Committee") each expressed concerns with certain aspects of the ADR Program.

5.  On June 30, 2004, the Internal Revenue Service filed an objection to the Motion (the "IRS Objection"). The IRS objected to the provisions of the Debtors' proposed ADR Program that would have automatically disallowed the IRS' claims if it failed to return a signed ADR Notice within 30 days of its mailing by the Debtors.

6.  On July 2, 2004, Oldcastle APG Northeast, Inc. ("Oldcastle") filed an objection to the Motion (the "Oldcastle Objection"). Oldcastle objected to the Motion alleging that because the ADR Program could be interpreted as being inconsistent with a stipulation between the Debtors and Oldcastle, and Oldcastle sought to preserve its rights under that prior stipulation.

7.  During the July 19, 2004 omnibus hearing, the Court suggested that it was not inclined to grant the Motion as filed because the Debtors should be required to file objections to disputed claims before submitting them to the ADR Program. Further, the Court suggested that a formal ADR program may not be needed if all the Debtors sought to do was resolve the approximately 200 proofs of claims that relate to pre-petition litigation.

## Discussion

a. **The ADR Program in Intended to Serve as a Vehicle for Resolving Any Disputed Non-Asbestos Claims; not Simply Claims Stemming from Pre-Petition Litigation**

8.     The ADR Program is meant to serve as an efficient system for resolving the substantive merits of any disputed non-asbestos claim, not merely the 200 or so claims that relate to pre-petition litigation. The Debtors intend to utilize the ADR Program to potentially resolve the merits and/or amount of any non-asbestos Proofs of Claims that cannot easily be resolved in omnibus objections. The Debtors cannot ascertain the exact number of claims that they may seek to submit to the ADR Program. However, the Debtors are comfortable that the number of such claims would be far greater than 200.

b. **The Debtors have Modified the Proposed Order to Provide that they Must First Object to any Proof of Claim Before Submitting it to the ADR Program**

9.     The Debtors have modified the proposed ADR Order to require that they must first (i) formally object to a proof of claim and (ii) permit the claimant an opportunity to respond consistent with Bankruptcy Rule 3007 before the Debtors may trigger the ADR Program with respect to the claim. In particular, the revised ADR Order contains the following language:

> Prior to triggering the application of the ADR Program with respect to a Disputed Claim, the Debtors shall first file an objection to such Disputed Claim, and, after the Claimant has responded to the Debtors' objection(s) pursuant to Bankruptcy Rule 3007, the Debtors may then submit the Disputed Claim to the ADR Program;

10.    The ADR Program is meant to augment, not replace, existing procedures for resolving claims. Given the volume of disputed claims, it may not be practical for this Court to address the substantive merits of each disputed claim. Further, the Debtors believe that it will be more efficient to attempt to resolve many of the disputed claims through mediation, rather than

4

in a contested proceeding before the Court. Accordingly, the Debtors will file formal objections and permit the claimant to respond consistent with Bankruptcy Rule 3007 before submitting claims to the ADR Program.

### (a) The Debtors have Modified the Proposed Order and Procedures to Address Concerns Raised by Certain Constituencies in these Bankruptcy Cases

11. The Debtors have modified the ADR Procedures and ADR Notice Package to address concerns that (i) were formally raised in the IRS Objection and Oldcastle Objection and (ii) have been informally communicated to Debtors' counsel during discussions with counsel for the OCUC and PI Committee.

12. In particular, the Debtors have addressed the following concerns:

- Certain constituencies expressed concerns with the provisions in the original, proposed ADR Program that provided for the automatic disallowance of a claim if the respective claimant failed to return a signed ADR Notice within 30 days of its mailing by the Debtors. The Debtors have addressed this concern by adding a "second notice" provision that affords these parties a second opportunity to respond before their claim would be disallowed.

- Certain constituencies expressed concerns with provisions in the original, proposed ADR Program that called for the automatic disallowance of claims when a claimant failed to: (i) act in good faith, (ii) pay ½ of the Mediator's fees, or (iii) submit a substantially completed Statement of Claim. The Debtors have modified the proposed ADR Program, so that any such claims may only be disallowed and expunged by order of the Court.

- The Debtors have also modified the approval requirements for settlements that are made pursuant to the ADR Program. The original, proposed ADR Program provided that: (i) the Debtors needed no approval of settlements that were (a) 50% or less than the proof of claim (as amended by any subsequent proofs of claim) or (b) $100,000 or less; and (ii) all other settlements required 20 days negative notice. The revised, proposed ADR Program includes a $500,000 (per claim) cap for pre-approved settlements that are fifty-percent (50%) or less of the amounts of the claim asserted in the claimant's proof of claim. In addition, the revised, proposed ADR Program provides that the Debtors must give negative notice of any settlement that is less than, or equal to, $5 million, and the Debtors must obtain Court approval of any settlement that exceeds $5 million.

- The Debtors addressed the IRS Objection by adding provisions to the proposed ADR Order and ADR Procedures that exempt the Internal Revenue Services' claims from automatic disallowance if the Internal Revenue Service fails to return a completed ADR Notice or Second Notice before the deadline for returning the Second Notice has lapsed.

- The Debtors addressed the Oldcastle Objection by adding a provision to the proposed ADR Procedures, which expressly states that, to the extent the terms of the ADR Procedures are inconsistent with previous stipulations between the Debtors and ADR Claimants, the terms of the previous stipulation(s) shall be controlling.

These changes and other minor changes are reflected in the revised ADR Procedures and ADR Notice Package that are attached hereto as <u>Exhibit B</u> and <u>Exhibit C</u> (along with black-lines against the original documents).

13.     The Debtors believe that the ADR Program, as modified herein, is the most efficient method for resolving the disputed claims. Further, the Debtors have made several changes to the ADR Program to ensure that all participants are treated fairly and have a reasonable opportunity to resolve their claim within the confines of the ADR Program

WHEREFORE, for the foregoing reasons, the Debtors respectfully request the entry of their revised proposed order approving the Debtors' revised ADR Procedures (a copy of the proposed order is attached hereto as <u>Exhibit A</u>).

Respectfully Submitted:

Dated: August 6, 2004

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
James W. Kapp III
Samuel L. Blatnick
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

<u>and</u>

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

Laura Davis Jones (#2436)
David W. Carickhoff, Jr. (# 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

91100-001\DOCS_DE:98105.1