IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., et al., | ) | Case No. 91-1139 (JFK) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |
| | ) | Hearing Date: August 23, 2004 at 2:00 p.m. |

**OBJECTION OF THE CITY OF CAMBRIDGE, MASSACHUSETTS,
TO THE DEBTORS' MOTION PURSUANT TO SECTIONS 105(a), 362, 363, 502 AND
503 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY
PROCEDURE 9019 TO ESTABLISH AN ALTERNATIVE DISPUTE RESOLUTION
PROGRAM TO LIQUIDATE CERTAIN PREPETITION
[REFER TO DOCKET NO. 5808]**

The City of Cambridge, Massachusetts ("City"), by and through its attorneys, hereby objects to the Debtors' Motion Pursuant To Sections 105(a), 362, 363, 502 and 503 Of The Bankruptcy Code And Federal Rule Of Bankruptcy Procedure 9019 To Establish An Alternative Dispute Resolution Program To Liquidate Certain Prepetition Claims (the "Motion") and Debtors' proposed alternative dispute resolution program, including as recently revised pursuant to Debtors' Submission In Clarification And Revision Of Their Proposed ADR Program (the "ADR Program"). The grounds for the City's objection are as follows:

**Background:**

1.   The City has filed timely proofs of claim in this action related to contamination of real property owned by the City, which is used for public recreation purposes and is known as Russell Field (the "Russell Field Property"). W.R. Grace & Co. – Conn. and/or its predecessors (including Dewey & Almy Chemical Company), successors and affiliated entities (including W.R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.)), the Debtors herein (collectively, "Grace"), have owned and

operated property abutting the Russell Field Property for industrial and/or commercial purposes since at least the early 1900's. On information and belief, during its ownership and operations of property abutting the Russell Field Property, Grace generated, stored, transported, released, disposed of an/or otherwise handled numerous hazardous substances and materials, including, without limitation, asbestos, naphthalene sulfonate, naphthalene, polycyclic aromatic hydrocarbons (PAHs) and metals, which have been identified at elevated levels in soils and/or groundwater at the Grace property and the Russell Field Property.

2. On information and belief, hazardous materials have been released at or from the Grace property to soil and groundwater at the Russell Field Property as a result of direct releases from Grace's operations, migration through soils and/or groundwater, and/or surface water runoff. Such hazardous materials include asbestos, naphthalene sulfonate, napthalene, PAHs and metals. In addition, on information and belief, hazardous materials from Grace's property and operations were actively transported to, stored on and released on and into the Russell Field Property during the construction of the Massachusetts Bay Transportation Authority's ("MBTA") Red Line Extension in the early 1980's, as a result of activities conducted by Grace, the MBTA and their contractors during that project.

3. The City has incurred and continues to incur property damages, economic loss and assessment, containment and removal costs under applicable environmental laws. The City has incurred approximately $1,000,000 in cleanup costs to date, with significantly more costs projected for the future.

4. In 1998, the City commenced the mandatory pre-litigation notice procedure against Grace and other potentially responsible parties pursuant to Massachusetts General Laws Chapter 21E, Section 4A. In 1998, the City also entered into standstill agreements with Grace

and other potentially responsible parties relating to the City's environmental claims.

5. The City supports the Court's establishment of an ADR program. However, the City objects to the ADR Program proposed by the Debtors because (1) the Debtors would unilaterally determine jurisdiction over the City's claims in the event the ADR is unsuccessful and (2) if the City seeks to opt out of the ADR Program, any action by the City, including seeking relief from the Automatic Stay, would purportedly be barred for an indefinite period of time.

**OBJECTIONS:**

**A.    The ADR Program improperly determines the jurisdiction of City's Claims in the event ADR fails.**

6. Paragraph 34 of the Debtors' Motion indicates that an ADR claim that involves "immature litigation" shall proceed to litigation in the Bankruptcy Court. With respect to "mature litigation", unresolved ADR Claims "shall proceed to trial in the form where the case was pending when the Automatic Stay went in to effect".

7. To the extent Debtors attempt to define the City's claims against Debtors as being "immature litigation", the City objects to Debtors attempt to unilaterally determine jurisdiction of the claims.

8. The complex claims brought by the City against Grace, if not resolved through an ADR Program, should not be litigated in the Bankruptcy Court for the following reasons, among others:

> A. The City's claims are grounded in a multitude of state statutory and common law theories of liability;
>
> B. The City's claims involve numerous parties in addition to the Debtors;

C. The City's claims are based on activities that occurred over numerous years at and in the immediate vicinity of the Russell Field Property in Cambridge, Massachusetts;

D. Litigating the City's claims against the Debtors and other defendants will involve multiple experts as to, among other facts, the source, extent, causation and risks of the contamination at Russell Field, numerous likely *Daubert* motions relating to the admissibility of experts, and many days, if not weeks, of scientific expert testimony;

E. To determine whether the City's cleanup costs are recoverable, a trial court must apply Massachusetts statutory and regulatory standards, including those set forth in the Massachusetts Contingency Plan, which involves hundreds of pages of complex environmental regulations governing the clean up of contaminated sites in Massachusetts;

F. Compelling the City to litigate its claims in the Bankruptcy Court would also unfairly prejudice the City because all of the witnesses, records, property, transactions, and events involved in the case are located in Massachusetts; the cost associated with litigating the case in the Delaware Bankruptcy Court will directly impact other City programs; specifically, every dollar the City is forced to pay in prosecuting its claims is a dollar less the City has available to pay for city programs such as education, police and fire fighters.

9. The City's claims are mature. M.G.L. c. 21E, § 4A, sets forth a complex pre-suit process that must be followed in connection with the assertion of environmental claims in Massachusetts. The City has commenced and followed this process and, accordingly, its Claims are

"mature". To the extent that the Debtors have the right under the proposed ADR Program to define the City's claims as being "immature" or "mature" and, therefore, to determine jurisdiction over the City's Claims, the ADR Program is flawed and objectionable.

**B.     The proposed continuation of the Automatic Stay and Preliminary Injunction for parties opting out of the ADR procedures is unfair.**

10.     Paragraph 36 of the Motion indicates that an ADR Claimant can "opt-out of the ADR Program". However, it also provides that "the Automatic Stay and Preliminary Injunction shall remain in effect, unless the Automatic Stay or Preliminary Injunction, as applicable, has been otherwise terminated or modified by an Order of this Court". Paragraph 36 of the Motion is ambiguous as to how a Claimant who opts-out of the ADR Program can seek relief from the Automatic Stay or Preliminary Injunction. Moreover, paragraph 10 of the Proposed Order indicates that Claimants are barred from prosecuting their claim (including seeking relief from the automatic stay) until the earlier of (i) allowance of the subject claim by a settlement agreement, stipulation, or final order of this Court or the District Court, or (ii) the deadline to object to any claims under any confirmed reorganization plan.

11.     In essence, the Debtor seeks to preclude any such Claimant from seeking relief from the Automatic Stay or Preliminary Injunction for an indefinite period of time.

WHEREFORE, the City respectfully objects to the Motion for the reasons set forth above and respectfully requests that this Court deny the Motion to approve the ADR Program.

Dated: August 9, 2004　　　　　　　　　　**MONZACK AND MONACO, P.A.**

　　　　　　　　　　　　　　　　　　　　*/s/ Kevin J. Mangan*
　　　　　　　　　　　　　　　　　　　　Kevin J. Mangan, Esq. (#3810)
　　　　　　　　　　　　　　　　　　　　1201 N. Orange Street, Suite 400
　　　　　　　　　　　　　　　　　　　　Wilmington, DE 19801
　　　　　　　　　　　　　　　　　　　　Tel. No.: (302) 656-8162 ext. 231
　　　　　　　　　　　　　　　　　　　　Fax. No.: (302) 656-2769
　　　　　　　　　　　　　　　　　　　　Email: kmangan@monlaw.com

　　　　　　　　　　　　　　　　　　　　and

　　　　　　　　　　　　　　　　　　　　Stephen D. Anderson, Esquire
　　　　　　　　　　　　　　　　　　　　Jeffrey L. Roelofs, Esquire
　　　　　　　　　　　　　　　　　　　　Anderson & Kreiger, LLP
　　　　　　　　　　　　　　　　　　　　43 Thorndike Street
　　　　　　　　　　　　　　　　　　　　Cambridge, MA 02141
　　　　　　　　　　　　　　　　　　　　(617) 252-6575