## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **W. R. GRACE & CO., et al.** | ) | **Chapter 11** |
| | ) | |
| Debtors. | ) | **Case No. 01-01139 (JKF)** |
| | ) | **(Jointly Administered)** |
| | ) | |
| **W.R. GRACE & CO., et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Adversary No. A-01-771** |
| | ) | |
| **MARGARET CHAKARIAN, et al.,** | ) | |
| **And John Does 1-1000,** | ) | |
| | ) | |
| Defendants. | ) | **Related to Docket No. 87** |

**EXPEDITED MOTION REQUESTING AN ORDER (i) TO SHOW CAUSE WHY
COUNSEL FOR EVANS IS NOT IN CONTEMPT OF COURT FOR REFUSING
TO REFRAIN FROM PROSECUTING A PROHIBITED ACTION AGAINST
DEBTORS' AFFILIATES AND (ii) EXTENDING THE SCOPE OF THE
AUTOMATIC STAY AND THE PRELIMINARY INJUNCTION**

A lawsuit has been filed against members of the Board of Directors and key

employees of W.R. Grace & Co. and/or W.R. Grace & Co.-Conn. (collectively "Grace") that

violates the Modified Preliminary Injunction entered by this Court in January 2002. This suit, a

putative class action alleging ERISA claims in connection with Grace's 401(k) savings plan (the

"Plan"), has now been served on at least four defendants -- at least two members of Grace's

Board of Directors and two financial institutions to whom Grace has indemnity obligations.

Although fully and repeatedly informed of the Preliminary Injunction that has been in place in

Grace's chapter 11 proceeding since 2002, the plaintiffs' counsel in the suit titled <u>Evans v. Akers</u>

et al. has refused to agree not to continue to prosecute that action in violation of the Preliminary

Action. The served defendants' deadlines to respond to the Evans Complaint are approaching

rapidly. Debtors,[1] therefore, are proceeding with this motion to show cause why plaintiffs

should not be held in contempt for refusing to refrain from prosecuting, and to extend the

Preliminary Injunction to certain additional non-debtor defendants to whom the Debtors have

certain indemnification obligations.

Although Grace is not named as a defendant, the Evans plaintiffs' claims could

also have been brought against Grace and, as to the current defendants, will likely be the

---

1 The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty
Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd.,
Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.),
CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex
Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and
Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a
Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa
Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville
Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc.,
Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company,
Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc.,
Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc.
(f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR
Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace
Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace
Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development
Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai
Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding,
Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated,
Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA
Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing
Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc.,
E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc.,
Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country
Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

financial responsibility of Grace. On page one of their Complaint, plaintiffs state their intention

to proceed against Grace "if the bankruptcy stay is modified or lifted to permit further

prosecution of this action against Grace." Exhibit A, Complaint at 1. Indeed, the Complaint

alleges facts that could just as well be prosecuted against Grace as against the currently named

defendants. Moreover, Grace would be heavily involved in the defense of its directors and

employees, and in discovery as to all defendants. And, as is detailed below, because of Grace's

indemnity obligations, claims against the Evans' defendants are really claims against the

Debtors' estate. For all of these reasons, in addition to the fact that the Evans suit violates the

express terms of the Preliminary Injunction, the suit also should be subject to the automatic stay,

and the stay should be expressly extended to cover the claims against the Evans defendants.

Perhaps most importantly, the Evans suit comes at a critical stage in Grace's

reorganization process. Grace's proposed plan must be filed by October 14. In the coming

weeks and months, Grace's directors and the Grace employees who are defendants in the Evans

suit will continue to be heavily involved in formulating Grace's reorganization plan. Diverting

their efforts and attention to the Evans suit at this time would harm Grace's reorganization effort.

Thus, as set forth more fully below, the Evans plaintiffs' failure to agree not to

prosecute their Complaint against Grace's directors and employees and Grace's Investments and

Benefits Committee and Administrative Committee and individual Grace employees is in

contempt of this Court's Preliminary Injunction, and plaintiffs and their counsel should be

sanctioned. Further, due to Grace's indemnity obligations to State Street and Fidelity, the

Preliminary Injunction should be extended to enjoin actions against them, as they are essentially

actions against the Debtor. For all of these reasons, this Court should enter an Order making it

3

clear that plaintiffs' claims against all <u>Evans</u> defendants are stayed and no defendant must respond to plaintiffs' Complaint until further order of this Court.

## **Background**

1.      On April 2, 2001 (the "Petition Date"), the Debtors commenced their respective reorganization cases by filing petitions under chapter 11 of title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code"). By operation of law, all pending and prospective judicial proceedings against any of the Debtors were automatically stayed pursuant to Section 362(a)(1) of the Bankruptcy Code (the "Automatic Stay").

2.      On or about June 17, 2004, a putative Class Action Complaint (the "<u>Evans</u> Complaint" or the "Complaint") was filed in the United States District Court for the District of Massachusetts on behalf of certain participants in and beneficiaries of Grace's Plan, a plan qualified under sections 401(a) and 401(k) of the Internal Revenue Code, asserting violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 301 <u>et seq</u>.

3.      The Complaint names as defendants: (a) seven current members of Grace's Board of Directors (the "Grace Directors");[2] (b) Grace's Investments and Benefits Committee (the "Benefits Committee") and Administrative Committee ("Administrative Committee") (collectively the "Grace Committees");[3] (c) three current and/or former employees

---

[2]  The Complaint specifically names Grace Directors John F. Akers, Ronald C. Cambre, Marye Anne Fox, John J. Murphy, Paul J. Norris, Thomas A. Vanderslice, and H. Furlong Baldwin.

[3]  The Complaint notes that "[t]o the extent that proceeding against 'committees' of Grace, as enumerated herein, will be deemed violative of the bankruptcy proceeding, Plaintiffs will only proceed against the committees' members as set forth herein." Exhibit A at 1.

4

of Grace as well as unnamed "unknown fiduciary defendants" who "may include additional

Grace employees" (collectively the "Grace Employees")[4]; (d) Fidelity Management Trust

Company ("Fidelity"); and (e) State Street Bank & Trust Company ("State Street," with Fidelity,

the "Financial Institutions"). (Exhibit A, Evans Complaint).

        4.      The Complaint, entitled Evans v. Akers et al, Case No. 04-11380 WGY,

alleges that these Grace directors, benefits plan committees, current and former employees, and

non-Debtor Plan service providers violated the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. §§ 1301 et seq. by "caus[ing] ongoing Plan investments to be made in

certain Plan funds consisting, at least in part, of Grace common stock after the investments in

that stock became imprudent as a result of the Company's [asbestos litigation]." (Exhibit A,

Cplt. ¶ 2.) Among other things, the Complaint alleges that defendants were fiduciaries of

Grace's Plan, were obligated to comply with ERISA's fiduciary duties to act prudently and in the

sole interest of the Plan and its participants and beneficiaries, knew or should have known that

Grace stock was an imprudent investment for the Plan, and breached their ERISA fiduciary

duties to the plaintiffs and to the other participants and beneficiaries of the Plan, particularly with

regard to the Plan's Grace stock holdings. (Id. ¶¶ 4-7)

---

4 The named current and former employees are Paul J. Norris (Grace's Chief Executive
  Officer), Brenda Gottlieb (former Chair of Grace's Administrative Committee), W. Brian
  McGowan (Grace's Senior Vice President for Corporate Administration), and Michael
  Piergrossi (Grace's Vice President of Human Resources). Exhibit A at ¶¶ 23-25.

5.    On or about July 23, 2004, the Evans plaintiffs began to serve the Complaint on certain defendants. At least four defendants -- at least two Grace directors and the two financial institutions -- have been served.

6.    On January 22, 2002, this Court entered an Order Granting the Modified Preliminary Injunction (which is attached hereto as Exhibit B) in the adversary proceeding entitled W.R. Grace & Co., et al. v. Margaret Chakarian, et al. and John Does 1-1000, Case No A-01-771. In particular, this Court enjoined the prosecution of new Actions[5] "against current or former officers, directors or employees of Debtors that arise out of such officer's, employee's or director's employment or relationship with Debtors . . . ." Exhibit B ¶ 10. Accordingly, the Preliminary Injunction specifically enjoined actions against the Directors and Committee Members who are defendants in the Evans Complaint.

7.    Although the Debtors have not been formally named as defendants in the Evans Complaint, prosecution of the suit against the defendants may deplete the Debtors' estates and a judgment against the defendants will, in effect, be a judgment against the Debtors. Therefore, Debtors have repeatedly sought assurances from the Evans plaintiffs' counsel that, after filing and serving the Complaint, they will refrain from prosecution. Plaintiffs' counsel has refused to agree not to prosecute.

8.    After learning of the filing of the Evans Complaint, Debtors' counsel promptly contacted plaintiffs' counsel and sought assurances that plaintiffs would not prosecute

---

[5] The Order defines "Actions," in relevant part, as any "pending actions and actions that have not been filed or are not pending as of the date of entry of this Order." Exhibit B, ¶10 at p. 3.

6

their Complaint in violation of the preliminary injunction. By letter dated June 25, 2004, Debtors' counsel advised plaintiffs' counsel that "pursuant to that certain Order Granting Modified Preliminary Injunction entered by the Bankruptcy Court on January 22, 2002, your Complaint constitutes an "Action" which is stayed and enjoined from prosecution 'against current or former officers, directors or employees of Debtors that arise out of such officer's, employee's or director's employment or relationship with Debtors.'" Exhibit C. By letter dated July 1, 2004, plaintiffs' counsel Joseph Meltzer refused to agree to refrain from prosecuting the Complaint, stating that he needed additional time to review the five-and-a-half page Modified Preliminary Injunction. Exhibit D.

9.      By letter dated July 2, Debtors' counsel responded that the Preliminary Injunction is clear on its face and that plaintiffs' counsel at the Gilman Pastor firm had notice of the Chakarian adversary proceeding under which the Modified Preliminary Injunction was issued, because the Gilman Pastor firm represents certain asbestos claimants with claims against Grace. Exhibit E. After additional discussions during which the fourth law firm hired by the Evans plaintiffs indicated that plaintiffs would not agree that the Preliminary Injunction applies to the Evans Complaint, Debtors' counsel followed up with a July 14 letter to plaintiffs' counsel at the Lowenstein Sandler firm confirming that "Grace disagrees with your position and asserts that the Preliminary Injunction clearly and unequivocally enjoins plaintiffs' action. Nothing you said in our conversation yesterday changes Grace's position in that regard. As a result, Grace believes any action the plaintiffs take on the lawsuit will constitute a contempt of the Bankruptcy Court's Order." Exhibit F. Throughout these discussions, the only argument offered by Plaintiffs' counsel is that the Preliminary Injunction somehow applies only to asbestos-related

7

claims against Grace's Directors and Employees -- despite the fact that this is not what the

Injunction says.

          10.     Finally, on July 30, Debtors' counsel wrote to plaintiffs' counsel as

follows:

> I understand that on July 29, 2004 you served Thomas A. Vanderslice, a director of W.R. Grace, with a copy of the above-referenced Complaint. While I do not have confirmation of the service of any other Defendants at this point, I assume you likewise are serving those parties. Service of the Defendants is not inconsistent with the Grace Preliminary Injunction which provides, in part, that "Actions that are filed and served upon Affiliated Entities are, upon completion of service, stayed and enjoined." However, proceeding any further against Defendants is clearly inconsistent with and a violation of the Preliminary Injunction.
>
> By this letter, we hereby request your agreement on behalf of the Plaintiffs to proceed no further with your Complaint against the Defendants after service of the Complaint. If I do not receive your agreement in this regard, in writing, by Monday, August 2, 2004 at 4:00 p.m., eastern, W.R. Grace will immediately seek appropriate relief from Bankruptcy Judge Fitzgerald.

Exhibit G. Plaintiffs' counsel did not respond to this letter.

          11.     Despite Debtors' counsel's efforts to make it very plain that prosecution of

the Complaint would violate the preliminary injunction, plaintiffs' counsel have refused to agree

to stay the Evans Complaint. And, they have yet to offer any credible argument to rebut Grace's

position that the Preliminary Injunction prohibits prosecution of their claims.

          12.     Pursuant to Grace's Certificate of Incorporation and By-Laws, Grace is

required to indemnify its Directors and Employees for attorney's fees and settlements or

judgments as a result of the Evans Complaint.

          13.     As to the Evans plaintiffs' claims against Fidelity (the Plan's trustee) and

State Street (the former investment manager of Grace stock within the Plan), Grace has express

contractual indemnification obligations to Fidelity and State Street. Exhibit H, I and J. State

8

Street has already requested that Grace indemnify State Street for the <u>Evans</u> claim.  Exhibit K.

Although Fidelity has not yet expressly requested indemnification from Grace for the <u>Evans</u> suit,

Grace anticipates that Fidelity will do so.  Because of Grace's indemnity obligations, prosecution

of the <u>Evans</u> Complaint as to Fidelity and State Street would risk potential diminution of the

property of the Debtors' estates.

   14. Since July 1, 1993, Fidelity has acted as the trustee of the Plan.  According

to the terms of the Master Trust Agreement Between Grace and Fidelity, as amended, Grace

agrees to indemnify and hold harmless Fidelity:

> from any and all loss, damage, penalty, liability, cost, and expense, including without
> limitation, reasonable attorneys' fees and disbursements, ("Damages") that are incurred
> by, imposed upon, or asserted against [Fidelity] by reason of any claim, regulatory
> proceeding, or litigation arising from any act done or omitted to be done by any
> individual or person with respect to the Plan or Trust, excepting only any and all
> Damages arising from the Trustee's 'negligence' (as defined below), bad faith or willful
> misconduct.

Exhibit H at p. 25.

   15. On or about November 24, 2003, State Street was appointed as the

investment manager of Grace stock within the Plan.  According to the terms of the Engagement

Agreement by and among State Street, the Benefits Committee, and Grace, Grace is required to

indemnify State Street and hold it harmless for actions taken or omitted to be taken by State

Street under the Engagement Agreement.  Exhibit J at ¶ A.

   16. Specifically, the Engagement Agreement between Grace and State Street

provides that Grace will indemnify State Street "to the fullest extent lawful from and against any

and all losses, claims, damages, liabilities, costs and expenses (or actions in respect thereof) joint

or several, arising out of any actions taken or omitted to be taken by an Indemnified Party in

connection with services performed under the Engagement Agreement.  [Grace] agrees to pay

9

any legal or other expenses incurred by the Indemnified Parties in respect to Covered Losses . . .

paid in connection with, incident to, or in settlement or compromise of any actions, suits or other

legal proceedings . . . " <u>Id</u>.

      17.    By letter dated June 24, 2004, counsel for defendant State Street notified

Grace that State Street had been named as a defendant in the <u>Evans</u> Complaint and requested

indemnification from Grace. <u>See</u> Exhibit K at p. 1.

      18.    Because defendants have been served with the Complaint at various times

commencing on July 23, 2004, some defendants' deadlines to respond to the Complaint are

approaching rapidly. Accordingly, Debtors today have filed a separate motion seeking an

expedited hearing on this Motion which has been filed contemporaneously herewith.

**Relief Requested**

      19.    The <u>Evans</u> plaintiffs' disregard for the Preliminary Injunction has caused

the Debtors to incur legal fees and threatens to disrupt the Debtors' reorganization process and

impact the Debtors' estates. Accordingly, the Debtors request that this Court issue an Order that:

(a) directs plaintiffs' counsel to show cause why they should not be found in contempt of Court

for failing to agree not to prosecute their Complaint; (b) orders plaintiffs and their counsel

immediately to cease prosecution of the <u>Evans</u> Complaint; (c) directs that no defendant is

required to respond to the <u>Evans</u> Complaint until further order of this Court lifting the injunction

as to the <u>Evans</u> Complaint; (d) orders plaintiffs and their counsel to reimburse the Debtors for all

costs and expenses associated with this Motion; and (e) awards the Debtors any additional relief

that this Court deems just and proper.

10

20.    The _Evans_ plaintiffs' claims against the Grace Directors, Employees and Financial Institutions triggers certain indemnities by Grace which could irreparably harm and diminish the worth of the Debtors' estates. Accordingly, the Debtors also request that this Court issue an Order that confirms that the existing Preliminary Injunction covers the claims against the Grace Directors and Grace Employees, and extends the scope of the Preliminary Injunction to include the claims against the Financial Institutions.

## Argument

**I    The _Evans_ Suit Plainly Is Covered By, And Enjoined By, This Court's Preliminary Injunction.**

21.    Pursuant to the automatic stay provisions of Section 362 of the Bankruptcy Code, all pending and prospective judicial proceedings against any of the Debtors were automatically stayed on April 2, 2001.

22.    In addition to the protections of Section 362, Section 105 of the Bankruptcy Code affords courts broad authority to issue "any order" needed to protect a debtor's assets. In 2002, this Court entered just such a Preliminary Injunction, specifically prohibiting the prosecution of actions "against current or former officers, directors or employees of Debtors that arise out of such officer's, employee's or director's employment or relationship with Debtors. . . ." Exhibit B ¶10 at pp. 3-4. The Preliminary Injunction was issued in part to protect the Debtors' estates from just such indemnity obligations to its directors and employees that are triggered by the _Evans_ suit. Indeed, the Preliminary Injunction was modified for the express purpose of broadening its reach to non-asbestos claims against Grace's employees that are essentially claims against the Debtor because of the Debtors' By-Laws.

11

23.    The <u>Evans</u> suit is an action against the Grace Directors and Grace Employees arising out of their employment and relationship with Grace. The Grace Directors and Grace Employees named as defendants in the <u>Evans</u> Complaint are "current or former officers, directors or employees of Debtors." The Complaint specifically alleges ERISA-related violations by these Grace Directors and Employees which arise out of their "employment or relationship with Debtors." <u>See</u> Exhibit A at ¶ 13-25.

24.    The Benefits Committee and the Administrative Committee are committees created by Grace and are wholly comprised of Grace employees and officers, acting solely with respect to Grace benefit plans. Since the Committees are a part of Grace, any judicial proceeding against them is enjoined. The Complaint itself acknowledges as much and specifically notes that "[t]o the extent that proceeding against 'committees' of Grace, as enumerated herein, will be deemed violative of the bankruptcy proceeding, Plaintiffs will only proceed against the committees' members . . . ." Exhibit A, Cplt. at 1-2.

**II    The Automatic Stay Should Be Expanded to Stay The Evans Plaintiffs' <u>Claims Against the Grace Directors and Employees</u>.**

25.    The scope of section 362 is intended to be very broad and is a fundamental debtor protection. <u>See</u> <u>Constitution Bank v. Tubbs</u>, 68 F.3d 685, 691 (3rd Cir. 1995). As Congress noted in the legislative history to section 362, "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment . . . It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." Historical and Statutory Notes to the Bankruptcy Act of 1978.

12

It is for precisely these reasons that the automatic stay should be extended to cover the <u>Evans</u>
plaintiffs' claims against Grace's Directors and Employees.

26.    While the literal language of § 362(a) provides for a stay of actions against
a debtor, courts have expanded the protection of § 362(a) to non-debtor parties in situations
involving an identity of interest between the debtor and the non-debtor party.  The leading case is
<u>A.H. Robins Co. v. Piccinin</u>, 788 F.2d 994, 998 (4th Cir. 1986)("<u>Robins I</u>").  The Fourth Circuit
stayed mass tort suits against non-debtor co-defendants because there was "such identity"
between the debtor and non-debtor that "the debtor may be said to be the real party defendant
and judgment against the third-party defendant will in effect be a judgment or finding against
debtor."  <u>Id</u>. at 999.  Such a judgment would have an "adverse impact" on the debtor's ability to
reorganize.  The Fourth Circuit noted that in this "unusual situation" of "identity of interest," to
refuse application of the stay "would defeat the very purpose and intent of the statute."  <u>Id</u>.

27.    The Third Circuit has also recognized application of the automatic stay in
cases of "identity of interest" between debtor and non-debtor and affirming stay as to non-debtor
where any judgment against non-debtor "would have necessarily impacted upon [the debtor's]
estate."  <u>McCartney v. Integra Nat. Bank North</u>, 106 F.3d 506, 510 (3rd Cir. 1997)(deficiency
judgment "would have necessarily implicated" the debtor's estate, debtor was real party in
interest and any deficiency judgment would have operated as a judgment against the debtor).[6]

---

[6] Other circuits agree.  <u>See</u> <u>In re Zale Corp.</u>, 62 F.3d 746 (5th Cir. 1995)(affirming temporary
injunction as to non-debtors "may be proper under unusual circumstances . . . includ[ing] (i)
when the non-debtor and the debtor enjoy such an identity of interests that the suit against the
non-debtor is essentially a suit against the debtor, and (ii) when the third-party action will
have an adverse impact on the debtor's ability to accomplish reorganization"); <u>see also S.I.</u>
(Continued...)

13

28.    Precisely such an "adverse impact" and "identity of interest" exist here. The automatic stay should apply to the Evans Complaint because it is truly a set of allegations against Grace with respect to its ERISA Plan and the Complaint could have been pled against Grace just as against the currently named defendants. In addition: (1) the Grace Directors and Employees face potential liability which could lead to significant reduction of assets of the Debtors' estates as a result of Grace's indemnification obligations if plaintiffs are permitted to prosecute their Complaint; and, even if Grace's fiduciary liability insurance covers some or all of these obligations, Grace's available insurance coverage will be reduced; (2) prosecution of the Evans Complaint would divert the time and resources of key Grace personnel who are vital to the reorganization effort, which is at a critical stage; and (3) there is a real risk of collateral estoppel and evidentiary prejudice if these claims proceed against the Grace Directors and Employees.

29.    **Potential Impairment of Debtors' Assets**: Grace's Certificate of Incorporation and By-Laws require Grace to indemnify against all expense, liability and loss "each person who . . . is made a party . . . to any action, suit or proceeding . . . by reason of the fact that he or she:

---

Acquisition, Inc. v. Eastway Delivery Services (In re S.I. Acquisition), 817 F.2d 1142, 1143 (5th Cir. 1987) (Section 362(a) stayed creditor's state court action against the debtor and non-debtor defendants based upon the Texas alter ego doctrine); Patton v. Bearden, 8 F.3d 343, 349 (6th Cir. 1993)(stay may be extended to non-bankrupt parties in circumstances including "when the debtor and the non-bankrupt party are closely related or the stay contributes to the debtor's reorganization"); In re Eagle-Picher Indus., Inc., 963 F.2d 855, 860-61 (6th Cir. 1992)(affirming injunction issued by bankruptcy court enjoining the continuation of an action against the debtor's officers due to identity of interest between the debtor and the officers based on the officers' right to an indemnity and the potential impact on the debtor's insurance arrangements).

14

is or was a director or officer of the Corporation or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans maintained or sponsored by the Corporation, whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent or in any other capacity while serving as a director, officer, employee or agent, shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the [general corporation law of Delaware] . . .

Exhibit L, Grace By-Laws at ¶ 6.7(A). This provision requires Grace to indemnify the Grace Directors and Employees for attorney's fees and settlements or judgments as a result of the Evans Complaint.

30.     Pursuant to its agreements with Fidelity and State Street as set forth in paragraphs 13 through 16 above, Grace also is required to indemnify these Financial Institutions.

31.     Grace's employee benefits plan fiduciary liability insurance policies generally are intended to afford coverage for the allegations at issue in the Evans plaintiffs' Complaint. However, Grace's insurers have not yet confirmed coverage, and it is not clear to extent they will do so. It is possible that Grace's insurers may cover some, but not all, of Grace's obligations to the various defendants named in the Complaint. Thus, if litigation is permitted to continue, Grace may be out of pocket for indemnification payments to one or more defendants to the extent such payments are not covered by Grace's insurance.

32.     Even if the policies do afford coverage for Grace's obligations to all of the Evans defendants, the Debtors' estates will lose the availability of those insurance proceeds for other purposes. The policies cover claims and benefits plans in addition to the ones at issue in the Evans Complaint, and thus erosion of the policy limits by payment of defense costs and settlements or judgments would leave Grace's estate exposed and uninsured for any other

15

possible future claims related to employee benefit plans. Thus, the Debtors' fiduciary insurance could be diminished by the Evans claims if plaintiffs' prevail.

33.    Importantly, Grace's fiduciary insurance covers not only claims relating to Grace's Plan and the individuals named in the Evans Complaint but also would cover other employees, including individual members of the Grace Committees who may later be named in the Evans Complaint, and claims relating to other Grace employee benefit plans not at issue in the Evans Complaint. These insurance proceeds must be conserved and used on an equitable basis for all insureds and all potential claims. Such equitable distribution will be impossible if the Evans action is allowed to proceed at this time.

34.    Courts recognize that a debtor's rights under its insurance policies constitute property of the debtor's estate pursuant to the Bankruptcy Code's definition of property of the debtor's estate. See In re Zale Corp., 62 F.3d 746, 758 n.33 (5th Cir. 1995); In re Dow Corning Corp., 86 F.3d 482, 495 (6th Cir. 1996); Tringali v. Hathaway Machinery Co., Inc., 796 F.2d 553, 560 (1st Cir. 1986). Therefore, courts have held that actions against non-debtors that ultimately would be satisfied from the debtors' insurance policies should be stayed. See Robins I, 788 F.2d at 1002 n. 10.

35.    **Diversion of Employees Away From Debtors' Reorganization Process**: The automatic stay applies to non-debtors where, as here, such protection is essential to the debtor's reorganization efforts. See, e.g., In re Steven P. Nelson, 140 B.R. 814, 816-17 (Bankr. M.D. Fla. 1992) (enjoining actions against non-debtor guarantor of debtor corporation's obligations, where guarantor was president of debtor and president's services, expertise and attention were essential to the debtor's reorganization). Where the debtor's key personnel are

16

diverted from the reorganization by the demands of discovery or litigation related to third-party suits, the stay is particularly warranted. See In re Kmart, 285 B.R. 679, 689 (N.D. Ill. 2002).

36.     Grace's reorganization process is at a critical point. Pursuant to this Court's Order, Grace's proposed plan of reorganization must be filed with the Court by October 14. Grace's directors are absolutely critical to the reorganization process. They are actively participating in the formulation of the contours of Grace's proposed plan of reorganization.

37.     In addition to serving as a member of Grace's Board of Directors, defendant Paul Norris is Grace's Chief Executive Officer and thus has extensive management duties as well as key strategy and decision-making duties regarding the reorganization. Defendant Brian McGowan is Grace's Senior Vice President for Corporate Administration and likewise is heavily involved in the day-to-day decision-making regarding the reorganization process. Defendant Mike Piergrossi, as Grace's Vice President of Human Resources, is also involved in the reorganization process. The litigation work caused by the Evans Complaint would divert their time and efforts, impeding Grace's reorganization process. Particularly in these next critical months while Grace's proposed plan is being finalized, if litigation is permitted to proceed against the Grace Directors and the Grace Employees, Grace will suffer.

38.     **Risk of Collateral Estoppel and Evidentiary Prejudice:**  If the Evans suit is permitted to proceed against the non-debtor defendants, the Debtors face a very real risk of being collaterally estopped from later disputing determinations made. Because the claims substantively are against the Debtor, and because plaintiffs have made clear their intention to proceed against the Debtor at some point, this risk is real.

17

39.    Collateral estoppel precludes the relitigation of (i) identical issues that were (ii) decided in a final judgment on the merits, where (iii) the party to be bound by the prior judgment was a party to or in privity with the party in the prior litigation. Allen v. McCurry, 449 U.S. 90, 94 (1980); In re Am. Film Techs., Inc., 175 B.R. 847, 859 (D. Del. 1994). Because any judgment against the non-debtor defendants could be predicated only upon the Debtors' actions and knowledge with respect to its asbestos claims, the Evans plaintiffs would undoubtedly argue that the collateral estoppel requirements are satisfied. Whether or not collateral estoppel would apply is beside the point; the focus is on the *risk* of collateral estoppel implications. Am. Film, 175 B.R. at 855 (action exposed debtor to collateral estoppel prejudice); In re Johns-Manville Corp., 26 B.R. 420, 428 (S.D.N.Y. 1983), rev'd in part on other grounds, 41 B.R. 926 (S.D.N.Y. 1984) (focusing on the *risk* of collateral estoppel); In re Lomas Fin. Corp., 117 B.R. 64, 67-68 (S.D.N.Y. 1990) (same), remanded on other grounds, 932 F.2d 147 (2d Cir. 1991). "To avoid the collateral estoppel effect, [the Debtors] must participate in the defense of the state court case. That requires [the Debtors] to do precisely what the automatic stay is intended to excuse it from doing." Am. Film, 175 B.R. at 859 (granting an injunction); accord In re Eagle-Picher Indus., Inc., 963 F.2d 855, 860 (6th Cir. 1992) (granting an injunction because "the debtor must actively participate in the Texas action in order to protect its interests"); Lomas Fin., 117 B.R. at 67 (granting an injunction, reasoning that "it is not possible for the debtor to be a bystander to a suit which may have a $20 million issue preclusion effect against it.") (brackets omitted); In re Ionosphere Clubs, Inc., 111 B.R. 423, 435 (S.D.N.Y. 1990), aff'd in part, 124 B.R. 35 (S.D.N.Y. 1991) (enjoining suit against debtor's directors, reasoning *inter alia* that a finding of liability as

18

to the directors would collaterally estop the debtor from litigating the issue in subsequent proceedings).

40.     Even if the Debtors were not bound by collateral estoppel, they could be disadvantaged by the evidence used in the suit against, again justifying extension of the automatic stay. "[O]nce a witness has testified to a fact or what sounds like a fact, that witness may be confronted with his prior testimony under oath in a future proceeding directly involving Manville, whether or not Manville was a part to the record on which the initial testimony was taken." In re Johns-Manville Corp., 40 B.R. 219, 225 (S.D.N.Y. 1984); accord In re Lion Capital Group, 44 B.R. 690, 703 (S.D.N.Y. 1984) (enjoining claims where testimony by employees or agents might later be used against the debtor).

41.     For all of these reasons, the Debtors' estates and reorganization efforts would be impacted if the Evans plaintiffs are permitted to prosecute their claims. Debtors are the real party defendants under the Evans Complaint and thus the automatic stay should be extended to all defendants named in the Evans Complaint.

**III     By Refusing to Refrain from Prosecuting The Evans' Complaint Against Grace's Directors and Employees, Plaintiffs Are Knowingly in Contempt of Court.**

42.     Despite repeated communications from Debtors' counsel, plaintiffs' counsel refuses to agree that the Preliminary Injunction prohibits prosecution of the Evans Complaint against Grace's Directors and Employees, even though the Injunction expressly enjoins prosecution of actions "against current or former officers, directors or employees of Debtors that arise out of such officer's, employee's or director's employment or relationship with Debtors . . . ." By refusing to agree to refrain from prosecution, plaintiffs' counsel have set off

19

an obvious and inevitable series of consequences, including concern by Grace's Directors that they will be required to retain counsel and respond to Plaintiffs' Complaint very soon, and the expenditure of funds and effort by Grace on the filing of this Motion. Plaintiffs' counsels' clear disregard for the orders of this Court necessitate a finding of contempt.

43.     This Court has the equitable power to enforce its own lawful orders. <u>See</u> <u>In re Unioil</u>, 948 F.2d 678, 682 (10th Cir. 1991). Indeed, a motion finding contempt of court is an appropriate method to seek enforcement of a bankruptcy court's order. <u>See</u> <u>In re Radco</u> <u>Merchandising Services, Inc.</u>, 111 B.R. 684, 687 (N.D. Ill. 1990).

44.     It is a well-established principle that a lawyer, as well as the law firm with which the lawyer is affiliated, may be held in civil contempt for pursuing claims against a debtor, in violation of the protections afforded to debtors under the Bankruptcy Code. <u>See</u> <u>In re Rhyne</u>, 59 B.R. 276 (Bankr. E.D.Pa. 1986) (finding law firm in contempt of court for pursuing discharged claims where it had received notice of the debtor's discharge).

45.     To prevail on a motion for civil contempt, the movant must prove by clear and convincing evidence that: (1) there was a valid court order; (2) the alleged contemnor had knowledge or notice of the order; and (3) the alleged contemnor disobeyed the order. <u>See</u> <u>Wessley Jessen Corp. v. Bausch & Lomb, Inc.</u>, 256 F.Supp.2d 228 (D. Del. 2003); <u>In re</u> <u>Associated Hobby Mfrs., Inc.</u>, 33 B.R. 959 (Bankr. E.D. Pa. 1983); <u>In re Reed</u>, 11 B.R. 258, 268 (Bankr. Utah 1981) (notice or knowledge of an order); <u>Yates v. United States</u>, 316 F.2d 718, 723 (10th Cir. 1963); <u>Denver-Greeley Valley Water Users Ass'n v. McNeil</u>, 131 F.2d 67, 69 (10th Cir. 1942) (notice or actual knowledge).

46.     Debtors fully understand the serious nature of the requested relief. However, the <u>Evans</u> plaintiffs' counsel has consciously defied the clear directives of the Bankruptcy Code and this Court by refusing to refrain from prosecution of the Complaint in violation of the Automatic Stay and the Preliminary Injunction.

47.     It is clear that plaintiffs' counsel had actual notice of the Preliminary Injunction. Plaintiffs' counsel David Pastor and his firm represent certain Zonolite Attic Insulation claimants that have pending asbestos claims against Grace. In that capacity, Mr. Pastor and his firm had actual notice of the Preliminary Injunction Proceedings. Exhibit E.

48.     In addition, after the filing of the Complaint, on June 25, 2004 Debtors' counsel sent plaintiffs' counsel a letter and a copy of the Preliminary Injunction, followed by letters dated July 2, 14 and 30. Exhibits C, E, F and G. The June 25 letter informs plaintiffs' counsel that the Complaint "constitutes an 'Action' which is stayed and enjoined from prosecution 'against current or former officers, directors or employees of Debtors that arise out of such officer's, employee's or director's employment or relationship with Debtors.'" Exhibit C at 1. Plaintiffs' counsel has taken the position that the Preliminary Injunction applies only to asbestos-related claims against Grace's Directors and Employees -- despite the fact that this is not what the Injunction says. The Injunction is clear on its face, yet plaintiffs refuse to agree to refrain from prosecuting the Complaint. Accordingly, plaintiffs' counsel: (i) knowingly violated the Preliminary Injunction by refusing to refrain from prosecuting claims against the Grace Directors and Employees; and (ii) knew that Grace would "seek an appropriate order form the Bankruptcy Court prohibiting such prosecution." Exhibit F at 2.

21

**IV**    **The Preliminary Injunction Should Be Extended To Enjoin Prosecution of the Evans Plaintiffs' Claims Against Fidelity and State Street.**

49.    The Complaint against Fidelity and State Street triggers certain indemnities between Grace and the Financial Institutions which clearly relate to the bankruptcy and impact the handling and administration of the bankruptcy estate. Thus, the scope of the Preliminary Injunction should be extended to include Fidelity and State Street.

50.    If the Evans Complaint proceeds, Grace will suffer harm because of the burden that will fall on Grace during this period when its efforts must be focused on its proposed plan of reorganization, and because Grace's fiduciary liability insurance does not provide coverage for Grace's indemnification obligations to Fidelity and State Street. Because the Evans' plaintiffs have refused to agree not to prosecute their claims, Fidelity and State Street have already been compelled to hire defense counsel, and State Street has tendered the Evans claim to Grace for indemnification. Because Grace's insurance does not cover Fidelity and State Street's defense costs, or any settlements with or judgments against Fidelity or State Street, Grace's estate faces a significant threat of irreparable harm if claims are permitted to proceed against these Financial Institutions.

**(A)    This Court Has Jurisdiction To Enjoin The Claims Against Fidelity and State Street.**

51.    The Bankruptcy Code grants subject matter jurisdiction to "civil proceedings ... arising in or related to [a] cause under title 11." See 28 U.S.C. § 1334(b). This provision has been interpreted quite broadly. Its breadth is manifest in the statutory term "related to," which the Supreme Court has characterized as not only "deliberately expansive," but

22

"conspicuous for its breadth." Morales v. TWA, Inc., 504 U.S. 374, 384 (1992) (quotations and citations omitted).

> 52.    In Pacor v. Higgins, the Third Circuit established the definitive formulation of "related to" jurisdiction:

> [T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could *conceivably have any effect on the estate being administered in bankruptcy*. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is *related to* the bankruptcy if the outcome could alter the debtor's [1] rights, [2] liabilities, [3] options, or [4] freedom of action (either positively or negatively) and which in *any way impacts* upon the handling and administration of the bankruptcy estate.

743 F.2d 984, 994 (3rd Cir. 1984) (emphasis and brackets added; internal citations omitted); see also Celotex v. Edwards, 514 U.S. 300, 308 n.6 (quoting this test). This test has two significant dimensions. *First*, the test highlights that "related to" jurisdiction encompasses a *range* of relevant effects on the bankruptcy estate, including not only effects on the debtor's liability, but also effects on the debtor's "rights, …options, or freedom of action." Pacor, 743 F.2d at 994. Thus, a claim "need not necessarily be against the debtor or against the debtor's property" to be "related to" the bankruptcy proceeding. Id. *Second*, any such efforts on the bankruptcy estate need not actually be established or even probable; it suffices that they are "*conceivalb[e]*." Id. (emphasis added).

> 53.    It is a settled principle that "contractual indemnity claims can have an effect on a bankruptcy estate and thus provide a basis for the exercise of 'related to' jurisdiction," Belcufine v. Aloe, 112 F.3d 633, 636 (3d Cir. 1997) -- an observation also made in Pacor, see 743 F.2d at 995 (discussing In re Brentano's, Inc., 27 B.R. 90, 92 (Bankr. S.D.N.Y. 1983)). If a non-debtor can seek indemnification from the debtor, then a claim against the non-debtor potentially triggering such indemnification is "related to" the debtor's bankruptcy.

23

54.     Under these holdings, it is clear that "related to" jurisdiction exists with respect to Grace's indemnity obligations to Fidelity and State Street. As described below, specific indemnity agreements between the Financial Institutions and Grace will be triggered if the Evans Complaint is permitted to go forward, requiring Grace to indemnify Fidelity and State Street for any liability and costs of litigation. These indemnity agreements directly "relate to" the handling and administration of the bankruptcy estate in a monetary sense.

55.     In addition, key Grace personnel will be forced to exert substantial amounts of time and resources defending the claims against Fidelity and State Street -- resources which would be better spent working to develop a successful Grace plan of reorganization.

56.     Therefore, without an extension of the Preliminary Injunction to include Fidelity and State Street, Grace's "options" and "freedom of action" within the bankruptcy proceedings will be substantially impacted.

### (B)     Fidelity's and State Street's Indemnity Claims Against Grace Directly  Impact the Bankruptcy Estates.

57.     The Complaint directly impacts the handling and administration of the bankruptcy estates because certain indemnities between Grace, Fidelity and State Street are triggered by the Evans Litigation. As set forth in paragraph 5 above, pursuant to contractual indemnification agreement, Grace must indemnify Fidelity for all defense costs and liabilities resulting from "any litigation arising from any act done or omitted to be done by any individual or person with respect to the Plan or Trust excepting only any and all Damages arising from the Trustee's negligence." Exhibit H at p. 25-26.

58.     The Complaint against State Street also directly impacts the bankruptcy
estates because it triggers indemnity agreements between Grace and State Street. As set forth
above, according to the agreement between Grace and State Street, Grace must indemnify State
Street for all costs and liabilities "arising out of any actions taken or omitted to be taken by an
Indemnified Party in connection with services performed under the Engagement Agreement . . ."
If the Evans action proceeds, Grace will have to indemnify State Street for any and all expenses
associated with the Litigation as the Complaint relates to services performed by State Street
under the Engagement Agreement. Further, the Court-Approved post-petition indemnification
agreement between Grace and State Street requires Grace to indemnify State Street for such costs
as incurred, without further approval from this Court.

59.     The June 24, 2004 letter from the Goodwin Proctor firm, counsel for State
Street to Grace constituted notice pursuant to Paragraph C of the State Street Indemnification
Agreement and requests indemnification for the Evans suit. See Exhibit K at p. 1.

60.     The indemnities with Fidelity and State Street will necessarily impact the
bankruptcy estates. Indeed, the indemnity agreements with Fidelity and State Street are such that
"[w]ithout the injunctive relief sought, the Debtors would suffer the risk of irreparable harm,
including potential diminution of estate property." Exhibit B at 4.

61.     Continued litigation against Fidelity and State Street will also negatively
impact the handling and administration of the bankruptcy estate by diverting the time and
attention of Grace personnel who are critical to the Debtor's restructuring efforts, particularly
those individuals who are named defendants. If the Evans' plaintiffs' claims against Fidelity and
State Street are permitted to proceed, Grace will be heavily involved in the discovery process, as

25

there is no way for plaintiffs to pursue their claims against Grace's Financial Institutions

regarding Grace's 401(k) Plan without Grace's involvement. Grace will bear the brunt of the

discovery obligations, and the claims against Fidelity and State Street will really be claims

against Grace. See Eagle-Picher, 963 F.2d at 860 (proceeding with the litigation against the

non-debtors will "needlessly divert key employees from the debtor's reorganization effort");

Oberg v. Aetna Casualty & Surety Co., (In re A.H.Robins Co., Inc.), 828 F.2d 1023, 1026 (4th

Cir. 1987) (sole reason for sustaining injunction was that the non-debtor litigation would exhaust

the energies of the debtor's key personnel and interfere with its reorganization); In re Sudbury,

Inc., 140 B.R. 461, 463 (Bankr. N.D. Ohio 1992) ("it is clear that the Debtor and its present

personnel will bear the brunt of discovery and of mounting a defense for the individual [non-

debtor] defendants").

62.    The triggering of indemnity agreements and the taxing of key employee

resources during this critical period when Grace must focus on its proposed plan of

reorganization warrant that this Court should extend the scope of the Preliminary Injunction to

include actions against Fidelity and State Street. This Court clearly has the authority to extend

the existing Preliminary Injunction to bar the commencement and/or prosecution of additional

claims against third parties that are, in effect, claims against the Debtors. This bedrock

bankruptcy principle originated with the bankruptcies of A.H. Robins and Johns-Manville. See

A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins & Co., Inc.), 788 F.2d 994, 1008 (4th Cir.

1986); Johns-Manville Corp. v. Asbestos Litig. Group (In re Johns-Manville Corp.), 26 B.R. 420

(Bankr. S.D.N.Y. 1983), aff'd, 40 B.R. 219 (S.D.N.Y.), rev'd in part sub nom. Occidental Chem.

Corp. v. Johns-Manville Corp., (In re Johns-Manville Corp.), 41 B.R 926 (S.D.N.Y. 1984). This

26

principle was adopted by the Third Circuit in <u>McCartney v. Integra Nat. Bank North</u>, 106 F.3d 506, 509 (3rd Cir. 1997).

      WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form of the proposed order attached hereto that: (a) orders the <u>Evans</u> plaintiffs' counsel to show cause for why they are not in contempt of the Preliminary Injunction if they refuse to cease prosecution of the <u>Evans</u> Complaint against Grace's Directors and Employees; (b) affirms that the Evans plaintiffs' claims against Grace's Directors and Employees are stayed pursuant to the Automatic Stay or extends the stay to cover these claims; (c) enjoins prosecution of the <u>Evans</u> Complaint and orders the Evans' plaintiffs' counsel to cease prosecution of the <u>Evans</u> Complaint against all defendants; (d) directs that no defendant is required to respond to the <u>Evans</u> Complaint until further order of this Court lifting the injunction as to the <u>Evans</u> Complaint; (e) orders the <u>Evans</u>' plaintiffs' counsel to reimburse the Debtors for all costs associated with this Motion; and (f) extends the scope of the Preliminary Injunction to explicitly include actions against Fidelity and State Street and, to the extent not already clear in the Preliminary Injunction, to explicitly include the <u>Evans</u> plaintiffs' claims against all of the defendants.

27

Dated: August 9, 2004

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
James W. Kapp III
Janet S. Baer
Lisa G. Esayian
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG
JONES & WEINTRAUB PC

Laura Davis Jones (#2436)
Scotta McFarland (# 4184)
David W. Carickhoff (# 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier
19801)
Telephone: (302) 652-4100
Facsimile:   (302) 652-4400

Co-Counsel for the Debtors and Debtors in
Possession

28

# SUMMARY OF EXHIBITS

**Exhibit A:**   The Class Action Complaint for Violation of the Employee Retirement Income Security Act filed on June 17, 2004 by John F. Akers, et al., in the United States District Court for the District of Massachusetts.

**Exhibit B:**   The Order Granting Modified Preliminary Injunction entered by this Court on January 22, 2002.

**Exhibit C:**   June 25, 2004 letter from Janet S. Baer with Kirkland Ellis LLP, counsel to the Debtors, to David Pastor with Gilman & Pastor, LLP, Thomas J. Hart with Slevin & Hart, P.C., and Joseph H. Meltzer, Edward W. Ciolko and Gerald D. Wells, III with Schiffrin & Barroway, LLP, counsel for the Plaintiffs in the Complaint, which is Exhibit A above, seeking confirmation that Plaintiffs would not prosecute the Complaint.

**Exhibit D:**   July 1, 2004 letter from Joseph H. Meltzer to Janet S. Baer acknowledging receipt of the June 25, 2004 letter and stating that the Plaintiffs were reviewing the Preliminary Injunction Order and related material.

**Exhibit E:**   July 2, 2004 letter from Janet S. Baer to Joseph H. Meltzer stating that July 1, 2004 response was not sufficient.

**Exhibit F:**   July 14, 2004 letter from Janet S. Baer to Michael S. Etkin with Lowenstein Sandler PC, counsel to Plaintiffs in the Complaint attached as Exhibit A, notifying Plaintiffs of Grace position that action by Plaintiffs on the Complaint would violate the Preliminary Injunction and constitute contempt.

**Exhibit G:**   July 30, 2004 letter from Janet S. Baer to Michael S. Etkin requesting Plaintiffs' agreement that they will not proceed on the Complaint after service of same.

**Exhibit H:**   Excerpts from Master Trust Agreement Between W.R. Grace & Co. and Fidelity Management Trust Company regarding section on indemnification of Fidelity.

**Exhibit I:**   Excerpts from Fifteenth Amendment to Trust Agreement Between Fidelity Management Trust Company and W.R. Grace & Co. regarding amending the section on indemnification.

**Exhibit J:**    Engagement Agreement by and among State Street Bank and Trust Company, the Investment and Benefits Committee of W.R. Grace & Co. and W.R. Grace & Co., et al.

**Exhibit K:**    June 24, 2004 letter from John J. Cleary with Goodwin Procter LLP, counsel for State Street Bank and Trust Company, re: Notice of Indemnification Claim.

**Exhibit L:**    The Amended and Restated By-Laws of W.R. Grace & Co., dated March 15, 1999.