# **EXHIBIT H**

Excerpts from Master Trust Agreement Between W.R. Grace & Co. and Fidelity Management Trust Company

Master Trust Agreement

Between

W.R. Grace & Co.

And

Fidelity Management Trust Company

---

W.R. GRACE & CO. SAVINGS PLAN

MASTER TRUST

---

Dated as of July 1, 1993

TRUST AGREEMENT, dated as of the first day of July, 1993, between W.R. GRACE & CO., a New York corporation, having an office at One Town Center Road, Boca Raton, FL 33489 (the "Sponsor"), and FIDELITY MANAGEMENT TRUST COMPANY, a Massachusetts trust company, having an office at 82 Devonshire Street, Boston, Massachusetts 02109 (the "Trustee").

WITNESSETH:

WHEREAS, the Sponsor is the sponsor of the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, the W.R. Grace & Co. Hourly Employees Savings and Investment Plan, the employee stock ownership plans within those plans, and the Grace Energy Corporation Employees Savings and Investment Plan; and

WHEREAS, certain affiliates and subsidiaries of the Sponsor maintain, or may in the future maintain, qualified defined contribution plans for the benefit of their eligible employees; and

WHEREAS, the Sponsor desires to establish a single trust to hold all of the assets of the Plans and of such other tax-qualified defined contribution plans maintained by the Sponsor, or any of its subsidiaries or affiliates, as are designated by the Sponsor as being eligible to participate therein; and

WHEREAS, the Trustee is willing to hold and invest the aforesaid plan assets in trust pursuant to the provisions of this Trust Agreement, which trust shall constitute a continuation, by means of an amendment and restatement, of each of the prior trusts from which plan assets are transferred to the Trustee; and

1

WHEREAS, the Trustee is willing to hold and invest the aforesaid plan assets in trust among several investment options selected by the Investment Committee; and

WHEREAS, the Trustee is willing to perform recordkeeping and administrative services for the Plans if the services are purely ministerial in nature and are provided within a framework of plan provisions, guidelines and interpretations conveyed in writing to the Trustee by the Administrator.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants and agreements set forth below, the Sponsor and the Trustee agree as follows:

Section 1. <u>Definitions</u>. The following terms as used in this Trust Agreement have the meaning indicated unless the context clearly requires otherwise:

(a) "Administrative Committee" shall mean the committee designated by the Sponsor, and as constituted from time to time, which has the responsibility for administering each Plan and shall be deemed for purposes of ERISA to be the plan administrator and the named fiduciary for plan administration.

(b) "Administrator" shall mean the Administrative Committee.

(c) "Agreement" shall mean this Trust Agreement, as the same may be amended and in effect from time to time.

(d) "Code" shall mean the Internal Revenue Code of 1986, as it has been or may be amended from time to time.

(e) "Employer" shall mean the Sponsor and each subsidiary or affiliate of the Sponsor having employees who are Participants in a Plan.

(f) "ERISA" shall mean the Employee Retirement Income Security Act of 1974, as it has been or may be amended from time to time.

2

(c) <u>Directions from Investment Committee</u>. Whenever the Investment Committee provides a direction to the Trustee, the Trustee shall not be liable for any loss arising from the direction (i) if the direction is in writing (or is oral and immediately confirmed in writing) signed by any individual whose name and signature have been submitted (and not withdrawn) in writing to the Trustee by the Investment Committee in the form attached hereto as Schedule "E" and (ii) if the Trustee reasonably believes the signature of the individual to be genuine, unless it is clear that the actions to be taken by the Trustee under the direction would be prohibited by the fiduciary duty rules of section 404(a) of ERISA or would be contrary to the terms of a Plan or this Agreement.

(d) <u>Co-Fiduciary Liability</u>. In any other case, the Trustee shall not be liable for any loss arising from any act or omission of another fiduciary under the Plan except as provided in section 405(a) of ERISA. Without limiting the foregoing, the Trustee shall have no liability for the acts or omissions of any predecessor or successor trustee.

(e) <u>Indemnification</u>. (i) The Sponsor shall indemnify the Trustee against, and hold the Trustee harmless from, any and all loss, damage, penalty, liability, cost, and expense, including without limitation, reasonable attorneys' fees and disbursements, ("Damages") that are incurred by, imposed upon, or asserted against the Trustee by reason of any claim, regulatory proceeding, or litigation arising from any act done or omitted to be done by any individual or person with respect to the Plan or Trust, excepting only any and all Damages arising from the Trustee's "negligence" (as defined below), bad faith or willful misconduct.

(ii) The Trustee shall indemnify the Sponsor, the Investment Committee and the Administrative Committee against and hold the Sponsor, the Investment Committee and the Administrative Committee harmless from any and all Damages that are incurred by, imposed upon, or asserted against any of them resulting from the Trustee's "negligence" (as defined below), bad faith or willful misconduct.

25

(g) "Existing GICs" shall mean each guaranteed investment contract to be held in the Trust that was entered into by the Investment Committee prior to the effective date of this Agreement and specifically identified on Schedule "G" attached hereto.

(h) "FBSI" shall mean Fidelity Brokerage Services, Inc., an affiliate of the Trustee.

(i) "GICs" shall mean guaranteed investment contracts.

(j) "Investment Committee" shall mean the committee, designated by the Sponsor, which has the responsibility (i) for investing the assets of the Plans and, with respect to Plans where Participants have the right to direct the assets allocated to their accounts among investment options, for selecting those investment options, (ii) for assuring that the Plans do not violate any provision of ERISA limiting the acquisition or holding of Sponsor Stock or other property of the Sponsor, (iii) for the appointment and removal of investment advisors, if any, and (iv) for other matters described herein; and the Investment Committee shall be deemed for purposes of ERISA to be the named fiduciary for Plan investments.

(k) "Mutual Fund" shall mean any investment company advised by Fidelity Management & Research Company or any of its affiliates.

(l) "Participant" shall mean, with respect to a Plan, any employee (or former employee) with an account under such Plan, which has not yet been fully distributed and/or forfeited, and shall include the designated beneficiary(ies) with respect to the account of any deceased employee (or deceased former employee) until such account has been fully distributed and/or forfeited.

(m) "Plans" shall mean the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, the W.R. Grace & Co. Hourly Employees Savings and Investment Plan, the employee stock ownership plans within those plans, and the Grace Energy Corporation Employees Savings and Investment Plan, and such other tax-qualified, defined contribution plans which are maintained by the Sponsor or any of its subsidiaries or affiliates for the benefit of their eligible employees and for which the Trust has been designated as the funding medium by the Sponsor in writing to the Trustee, such designation to be in

3

the form of the Plan Designation Form attached hereto as Schedule "I". Each reference to "a Plan" or "the Plan" in this Agreement shall mean and include the Plan or Plans to which the particular provision of this Agreement is being applied or all Plans, as the context may require.

(n) "Reporting Date" shall mean the last day of each calendar quarter during the term of this Agreement, the date as of which the Trustee resigns or is removed pursuant to Section 9 and the date as of which this Agreement terminates pursuant to Section 11.

(o) "Sponsor" shall mean W.R. Grace & Co., a New York corporation, or any successor to all or substantially all of its businesses which, by agreement, operation of law or otherwise, assumes the responsibility of the Sponsor under this Agreement.

(p) "Sponsor Stock" shall mean the common stock of the Sponsor or such other publicly-traded stock of the Sponsor, or any of its affiliates, which meets the requirements of section 407(d)(5) of ERISA with respect to the Plan.

(q) "Trust" shall mean the W.R. Grace & Co. Savings Plan Master Trust, being the trust established by the Sponsor and the Trustee pursuant to the provisions of this Agreement.

(r) "Trustee" shall mean Fidelity Management Trust Company, a Massachusetts trust company and any successor to all or substantially all of its trust business as described in Section 10(c). The term Trustee shall also include any successor trustee appointed pursuant to Section 10 to the extent such successor agrees to serve as Trustee under this Agreement.

Section 2. Trust. The Sponsor hereby establishes the Trust, with the Trustee. The Trust shall consist of an initial contribution of money or other property acceptable to the Trustee in its sole discretion, made by the Sponsor or transferred from a previous trustee under the Plans, such additional sums of money and Sponsor Stock as shall from time to time be delivered to the Trustee under a Plan, all investments made therewith and

4

the laws of the State of New York; except to the extent those laws are superseded under section 514 of ERISA.

(b) **Trust Agreement Controls**. The Trustee is not a party to any Plan, and in the event of any conflict between the provisions of the Plan and the provisions of this Agreement with respect to the activities of the Trustee, the provisions of this Agreement shall control.

Section 17. **Plan Qualification**. The Sponsor shall be responsible for verifying that while any assets of a particular Plan are held in the Trust, the Plan (i) is qualified within the meaning of section 401(a) of the Code; (ii) is permitted by existing or future rulings of the United States Treasury Department to pool its funds in a group trust; and (iii) permits its assets to be commingled for investment purposes with the assets of other such plans by investing such assets in this Trust. If any Plan ceases to be qualified within the meaning of section 401(a) of the Code, the Sponsor shall notify the Trustee as promptly as is reasonable. Upon receipt of such notice, the Trustee shall promptly segregate and withdraw from the Trust, the assets which are allocable to such disqualified Plan, and shall dispose of such assets in the manner directed by the Sponsor.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers as of the day and year first above written.

Attest: _____  W.R. GRACE & CO.
        Secretary                By _____
                                 Vice President

                                 FIDELITY MANAGEMENT TRUST
                                 COMPANY

Attest: _____  By _____   6/30/93
        Assistant Clerk          Senior Vice President

30