IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

Objection Deadline: September 10, 2004
Hearing Date: September 27, 2004 at noon

## MOTION FOR THE ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO PROVIDE ENHANCED SEVERANCE TO CERTAIN NEWLY-HIRED EXECUTIVES

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully move this Court (the "Motion") for the entry of an order authorizing the Debtors to provide certain potential newly-hired executives with enhanced severance benefits. During the pendency of these chapter 11 cases, the Debtors have found it increasingly difficult to attract qualified employees for key executive positions. The Debtors have determined that qualified

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

candidates are reluctant to accept employment with the Debtors because of perceived uncertainty concerning continual employment with the Debtors during, and after, the Debtors' reorganization process.

The Debtors' successful reorganization is dependent, in part, upon attracting and retaining highly talented and qualified executives. As a result, the Debtors seek authority to offer certain potential new executives enhanced severance benefits which would become due in the event that that the Debtors terminate the executive (other than for "cause") any time after the executive commences employment with the Debtors (the "New Executive Severance Arrangement"). The New Executive Severance Arrangement will address the concerns of candidates regarding the candidates' perceived risks associated with the Debtors' current status and, therefore, will allow the Debtors to attract qualified candidates. This, in turn, will (i) allow the Debtors' to preserve the estates' assets and (ii) facilitate a successful reorganization.

## Jurisdiction

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O). Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicate for the relief sought herein is §§ 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code").

## Relief Requested

3. The Debtors request the entry of an order authorizing, but not requiring, them to implement the New Executive Severance Arrangement, which would include offering enhanced severance (the "Enhanced Severance Benefits") to certain newly-hired executives, as described below (the "New Executives").

2

4.  The New Executives for whom Grace seeks to offer the Enhanced Severance Benefits would consist of up to 10 (ten) individuals newly-hired either (i) to fill newly-created management or leadership level positions as outlined herein or (ii) to replace current management or leadership level individuals who may depart from the Debtors in this key period in the Debtors' reorganization process.

5.  Each New Executive would be an employee who would report (i) directly to the Debtors' Chief Executive Officer (the "CEO"), (ii) directly to the Debtors' Chief Operating Officer (the "COO"), or (iii) to an individual who reports to the CEO or COO.

### The New Executives and the Importance of the Enhanced Severance Benefits

6.  The Debtors have determined that hiring New Executives is currently necessary to: (i) provide the CEO and COO with the opportunity to restructure the Debtors' administrative and business organizations (to the extent necessary to improve overall performance); (ii) place into critical roles individuals capable of providing the leadership necessary to continue and accelerate the successful operations of the Debtors' business during the remaining period of the Debtors' chapter 11 cases; and (iii) facilitate succession-planning with respect to the Debtors' current leadership.

7.  The Debtors have interviewed several individuals for New Executive positions and determined that many, qualified candidates are reluctant to accept employment with the Debtors because of perceived uncertainty with respect to the Debtors' future. This situation has impeded the Debtors' ability to attract talented individuals to fill key leadership and management roles.

8. The Debtors have determined, in their business judgment, that the New Executive Severance Arrangement is the most efficient method for overcoming the current hiring challenge. The Debtors have considered other alternatives, including offering larger base-salaries or bonuses. The Debtors have concluded that offering larger base salaries or bonuses is not an efficient way to address the situation because the premium would be paid to the executive, regardless of whether the executive actually experienced any negative impact as a result of the Debtors' future. Further, these options could perpetuate the payment of greater-than-competitive compensation long after the Debtors emerge from chapter 11 (and the perceived uncertainties are no longer present).

## Existing Severance Arrangements

9. The Court in this case has previously approved severance agreements for key employees and general severance programs for salaried employees pursuant to, amongst other things, an Order entered on April 3, 2001 (the "Severance Order"). Pursuant to the Severance Order, the Debtors presently have the following severance arrangements for certain executives:

    a. Each of the Debtors' current corporate officers are eligible for severance payments equal to 3.00 times his or her base annual salary and targeted annual incentive compensation award at the time of termination of employment, under certain circumstances that would be characterized as a "change in control" of the Debtors after emergence from chapter 11, in accordance with individual signed "executive severance agreements." Currently, there are eight individuals who have such agreements with the Debtors (the "Executive CIC Agreements").

    b. Approximately 20 (twenty) members of the Debtors' current leadership team (including each of the eight officers mentioned above) and certain other senior managers

and certain members of the Debtors' legal team managing asbestos and tax issues, have signed agreements with the Debtors that make each of them eligible for severance payments equal to 2 times his or her base annual salary at the time of involuntary termination of employment (the "Leadership Severance Agreements"). Severance benefits under these Agreements are not limited to terminations as a result of the Debtors' reorganization.

   c. The Debtors' salaried workforce is covered by the Grace Severance Plan for Salaried Employees, which generally provides for severance equal to 1.5 times an employee's weekly base salary for each year of service, with a minimum of 4 weeks salary and a maximum of 1 times the employees' base annual salary.

   d. The Debtors have secured Court approval to provide its salaried workforce with increased minimum severance equal to 4 months of base salary, payable to covered employees who are involuntarily terminated as a result of the Debtors' reorganization within 1 year of the Court's approval of a plan of reorganization.

   e. The Debtors' salaried workforce is also covered by a special severance plan that provides severance benefits equal to 4 weeks salary for each year of service, with a minimum of 4 weeks and a maximum of 1 times the employees' base annual salary, under certain circumstances that would be characterized as a "change in control" of the Debtors after emergence from chapter 11, which are the same circumstances as those applicable under the Executive CIC Agreements.

  10. The Debtors have concluded that the above-referenced severance arrangements are not sufficient to recruit highly-qualified candidates for leadership level positions. First, the severance policies that apply to salaried workers, generally, are not even comparable with severance policies typically offered to newly-hired executives by companies operating outside of

bankruptcy, and, therefore, are not adequate to compensate new executives for the perceived risk that they would undertake by accepting employment with the Debtors. Further, the arrangements that apply to leadership level employees, including the Executive CIC Agreeements and the Leadership Severance Agreements, are only applicable to *current* employees. The Court orders approving these agreements do not apply to newly-hired executives.

### The New Executive Severance Arrangement

11. Under the New Executive Severance Arrangement, the Enhanced Severance Benefits would apply to each New Executive for the entire term of the New Executive's employment with the Debtors, including the period of employment after the Debtors emerge from chapter 11.

12. The Enhanced Severance Benefits would be paid and administered in accordance with the Debtor's existing Grace Severance Plan for Salaried Employees (a copy of which is attached as <u>Exhibit A</u>). In that regard, the New Executive Severance Arrangement would generally provide only for the payment of Enhanced Severance Benefits in the event a New Executive is involuntarily terminated, except for "cause," which would include, but would not be limited to, involuntary termination as a result of the Debtors' reorganization.

13. The Debtors seek authority to hire no more than 10 individuals, pursuant to the New Executive Severance Arrangement, during the remaining period of the Debtors' chapter 11 cases. The Debtors anticipate that the base annual salary of the New Executives may range up to $300,000.

14. The Enhanced Severance Benefits would not exceed an amount equal to:

6

1.5 times the New Executive's base annual salary at termination[2]

15.  If any New Executive became entitled to severance under the New Executive Severance Arrangement and any other existing severance plan or arrangement, the Executive would only receive benefits under the single plan or arrangement that provided the greatest benefit.

16.  The New Executive Severance Arrangement would only be offered to individuals upon the approval of the Debtors' Board, CEO or COO. The specific amount of Enhanced Severance Benefits offered to a particular New Executive would be determined, on a case-by-case basis, by the (i) Board, (ii) CEO or (iii) COO. In any event, the Enhanced Severance Benefits would never exceed the amounts described above.

### Basis for Relief

17.  Section 105(a) of the Bankruptcy Code "permits the court to issue any order that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business property of the estate." A court has the statutory authority to authorize a debtor to use property of the estate pursuant to section 363(b)(1) of the Bankruptcy Code when such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. In Re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); In Re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); see also, Fulton State Bank v. Schipper, 993 F.2d 513, 515 (7th Cir.

---

[2] The calculation of this amount will be made without regard to the duration of a New Executives' respective employment by the Debtors.

1991) (a debtor's decision must be supported by "some articulated business justification"); Stephen Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b); In Re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr.D.Del. 1999); In Re Ernst Home Center, Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

18. Under section 363(b) of the Bankruptcy Code, a debtor has the burden to establish that it has a valid business purpose for using estate property outside the ordinary course of business. See Lionel Corp., 722 F.2d at 1070-71. Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest belief that the action was in the debtor's best interest. See In Re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D. N.Y. 1992). A party in interest seeking to challenge the debtor's valid business purpose must "produce some evidence supporting its objections." Montgomery Ward, 242 B.R. at 155.

19. This Court previously recognized the Debtors' need to offer severance compensation to key employees that contribute to the Debtors' restructuring efforts. In particular, the Court approved the Executive CIC Agreements and Leadership Severance Agreements discussed above. Further, similar severance programs have also been approved in other chapter 11 cases to provide the respective debtors with the ability to attract and retain qualified individuals for key management positions. See, e.g., Matter of Interco Inc., 128 B.R. 229 (Bankr. E.D. Mo. 1991) (granting chapter 11 debtor with authority to implement an employee retention program, to pay confirmation benefits to two key-employees, and to assume severance agreement that were entered into prior to the debtor's chapter 11 filing). For example, in In re Levinson Steel Co., 117 B.R. 194 (JKF) (Bankr. W.D. Pa. 1990), the chapter 11 debtor

8

moved for (i) confirmation of its existing severance policy and (ii) for authority to provide a key employee with a new severance arrangement. The court found that the debtor had shown, in its business judgment, the retention arrangement was in the best-inters of the debtor's estates. Therefore, the court authorized the debtor to enter into the severance arrangement with the key employee.

### **The Proposed Severance Enhancements Are Supported by Sound Business Judgment**

20. The New Executive Severance Arrangement is necessary to assist the Debtors in attracting qualified, high-caliber candidates for upper-level leadership and management positions. The Debtors have determined that the continued, and accelerated, success of the Debtors' businesses, and its development and implementation of a successful plan of reorganization, require the hiring of individuals who have significant leadership and management skills. The Debtors are presently competing against other employers who are not saddled with the same degree of uncertainty regarding the future that is applicable to the Debtors' during the pendency of these chapter 11 cases. In order to compete for, and successfully recruit, such individuals, the Debtors must adequately compensate candidates for the perceived risks stemming from the Debtors' reorganization process. The New Executive Severance Arrangement (i) would compensate candidates for this perceived uncertainty and (ii) is the most cost effective manner to offset those uncertainties.

### **Notice**

21. Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the Debtor-In-Possession lenders, (iii) counsel to each Official Committee appointed by the United States Trustee, and (iv) those parties that requested papers under

91100-001\DOCS_DE:98879.1

Fed.R.Bankr.P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

### No Prior Request

22.  No prior Application for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, authorizing the Debtors to hire to up to ten (10) New Executives pursuant to the New Executive Severance Arrangement, and granting such other and further relief as the Court deems just and proper.

Dated:  August 23, 2004

        KIRKLAND & ELLIS LLP
        James H.M. Sprayregen, P.C.
        Janet S. Baer
        James W. Kapp III
        Samuel L. Blatnick
        200 East Randolph Drive
        Chicago, Illinois 60601
        (312) 861-2000

        and

        PACHULSKI, STANG, ZIEHL, YOUNG, JONES &
        WEINTRAUB P.C.

        /s/ *signature*
        Laura Davis Jones (No. 2436)
        David W. Carickhoff, Jr. (No. 3715)
        919 North Market Street, 16th Floor
        P.O. Box 8705
        Wilmington, Delaware 19899-8705 (Courier 19801)
        Telephone:  (302) 652-4100
        Facsimile:   (302) 652-4400

        Co-Counsel for the Debtors and Debtors in Possession