IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**Objection Deadline: September 10, 2004**
**Hearing Date: September 27, 2004 at noon**

## DEBTORS' MOTION FOR AN ORDER APPROVING THE PRIVILEGED AND CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE WITH THE KWELMBS COMPANIES

The above-captioned debtors and debtors in possession (collectively, the

"Debtors") respectfully move this Court (the "Motion") for entry of an order approving the

Privileged and Confidential Settlement Agreement and Mutual Release by and between certain

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

of the Debtors and the KWELMBS Companies[2] (the "KWELMBS Settlement Agreement," a redacted copy of which is attached as Exhibit A).[3]  The KWELMBS Companies issued insurance policies in favor of the Debtors.  The KWELMBS Companies were subsequently adjudicated insolvent.  The Debtors have a $24,097,509 of coverage remaining under these policies, and the Debtors have claims against these policies that exceed this amount.

The KWELMBS Settlement Agreement provides for (i) the allowance of the Debtors' claim, in the KWELMBS Companies' insolvency proceedings, in the aggregate amount of Twenty One Million Seven Hundred Twenty Three-Thousand Seven-Hundred Sixty Seven US Dollars ($21,723,767.00), which represents the full net-present-value of the Debtors' remaining insurance coverage.  Approximately $11 million of this amount would be paid to the Debtors within 90 days after the approval of the KWELMBS Settlement Agreement.

The Debtors have determined that the KWELMBS Settlement Agreement is in the estates' best interests because it will allow the Debtors to receive an immediate cash payment that represents approximately forty-percent of the Debtors' claim against the insolvent insurance

---

[2] As used herein, the "KWELMBS Companies" means the following companies:  KWELM Management Services Limited ("KMS"), as agent for Kingscroft Insurance Company Limited (formerly Dart Insurance Company Limited, Dart and Kraft Insurance Company Limited, and Kraft Insurance Company Limited), Walbrook Insurance Company Limited, El Paso Insurance Company Limited, Lime Street Insurance Company Limited (formerly Louisville Insurance Company Limited), and Mutual Reinsurance Company Limited (collectively, the "KWELM Companies"), The Bermuda Fire & Marine Insurance Company Limited (In Liquidation) (hereinafter referred to as "BFMIC" and, collectively with the KWELM Companies, the "KWELMB Companies"), and Southern American Insurance Company (In Liquidation) ("SAIC").

[3] The allocation of the settled liabilities among the settling parties is set forth on Attachment B to the Settlement Agreement, which has been redacted from the copy of the Settlement Agreement attached as hereto as Exhibit A.

carriers.  In lieu of settlement, the Debtors would be able to file a proof of claim in the insurers'

insolvency proceedings.  However, any payments on proofs of claims filed in the insolvency

proceedings are not expected to be made until 2006.  Further, this process would subject the

Debtors to risk concerning the ultimate amount of recovery.  And, given that the Debtors believe

any such recovery would not be materially greater than the $11 million they will receive

pursuant to the KWELMBS Settlement Agreement, it is in the Debtors' best-interests to enter

into the KWELMBS Settlement Agreement.

### Jurisdiction

1.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of

this Motion is proper under 28 U.S.C. § 1408.

2.       The statutory predicates for this Motion are sections 105 and 363 of title

11 of the United States Code (the "Bankruptcy Code") and Rule 9019 the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules").

### Background

3.       On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary

petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11

Cases").  The Chapter 11 Cases have been consolidated for administrative purposes only, and,

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate

their businesses and manage their properties as debtors in possession.

4.       The KWELMBS Companies subscribed to the H.S. Weavers Underwriting

Agency Limited ("Weavers") Underwriting Stamp which underwrote certain policies of

3

insurance in favor of the Debtors (such policies, excluding those policies not underwritten and

subscribed to by BFMIC and SAIC through Weavers, are collectively referred to as the "Subject

Insurance Policies"). All known Subject Insurance Policies are listed in Attachment A to the

KWELMBS Settlement Agreement.

5.    The KWELMB Companies are insolvent and are bound by (i) Schemes of

Arrangement pursuant to § 425 of the Companies Act 1985 of Great Britain and (ii) in the case

of Mutual Reinsurance Company Limited and BFMIC, § 99 of the Companies Act 1981 of

Bermuda (collectively, the "Schemes of Arrangement"). SAIC is also insolvent and has been

ordered liquidated (the "SAIC Liquidation") by the Third Judicial District Court of Salt Lake

County, Utah (the "SAIC Supervisory Court") pursuant to section 31A-27-323 of the Utah Code.

6.    The United States Bankruptcy Court for the Southern District of New

York has issued Permanent Injunction Orders, pursuant to § 304 of the Bankruptcy Code, that,

among other things, enjoins the commencement or continuation of any judicial action or

proceeding against the KWELMB Companies except in accordance with the provisions of their

respective Schemes of Arrangement (the "KWELMB Injunction Orders").

7.    The SAIC Supervisory Court has issued a permanent injunction order

pursuant to Section 31A-27-336 of the Utah Code, which among other things, enjoins the

commencement or continuation of any judicial action or proceeding against SAIC (hereinafter

referred to as the "SAIC Injunction Order").

8.    On August 19, 1996, certain of the Debtors and KMS (on behalf of the

KWELM Companies) entered into an agreement to settle Asbestos-Related Claims and Non-

Asbestos Products Liability Claims as defined therein (hereinafter referred to as the "Original

4

KWELM Settlement Agreement"), which substantially adopted the terms and conditions of the

Confidential Settlement Agreement dated November 17, 1995 (the "Solvent Insurers Settlement

Agreement"), between certain of the Debtors and certain solvent London Market insurance

companies (a copy of the Original KWELM Settlement Agreement is attached hereto as Exhibit

B). Certain of the Debtors entered into the Original KWELM Settlement Agreement, in part,

because of uncertainty regarding its ability to collect against the insurers under the Subject

Insurance Policies.

        9.     Since the execution of the Original KWELM Settlement Agreement, the

Debtors have submitted additional Asbestos-Related Claims to the KWELMBS Companies. The

KWELMBS Settlement Agreement would settle different categories of claims then the claims

settled pursuant to the Original KWELM Settlement Agreement.

        10.    The latest date on which a claim can be made against the KWELMB

Companies pursuant to their Schemes of Arrangement, or against SAIC pursuant to the order of

the SAIC Supervisory Court dated June 21, 2004 (the "KWELMBS Bar Date"), is September 29,

2004. The KWELMBS Companies have indicated that if the KWELMBS Settlement Agreement

is not executed and approved before the KWELMBS Bar Date, then they will not enter into the

proposed settlement.

        11.    Pursuant to the KWELMBS Settlement Agreement, the Parties seek to

settle and compromise all Asbestos-Related Claims (as defined in the Original KWELM

Settlement Agreement) not previously made under the Original KWELM Settlement Agreement

as part of the Bar Date determination of liability procedures. The Debtors have concluded that

this settlement is fair and reasonable given the circumstances of the KWELMBS Companies.

12.      Pursuant to the KWELMBS Settlement Agreement, the Debtors[4] and the

KWELMBS Companies (the "Parties") intend to adopt, by way of compromise, and without

prejudice to or waiver of their respective positions in other matters, without further trial or

adjudication of any issues of fact or law, and without the KWELMBS Companies' admission of

liability or responsibility under the Subject Insurance Policies, a full and final settlement that

releases and terminates all rights, obligations and liabilities of the Parties under the Subject

Insurance Policies, without prejudice to their respective positions on policy wordings or any

other issues, or any other actions, and further without prejudice to any claim against any person

not a Party to the KWELMBS Settlement Agreement.  The release includes any Non-Asbestos

Product Liability Claims (as defined in the KWELMBS Settlement Agreement) as well as the

Asbestos-Related Claims (as defined in the KWELMBS Settlement Agreement) being settled.

This full release was an integral part of the settlement as proposed by the KWELMBS

Companies, and was accepted by the Debtors because of the imminence of the KWELMBS Bar

Date and the fact that the Debtors are not aware of any Non-Asbestos Product Liability Claims

that could be made under the Subject Insurance Policies.

13.      Without prejudice to, or waiver of any position or right (i) under the

Subject Insurance Policies or (ii) in any other matter, the Debtors and the KWELMBS

Companies have agreed, for purposes of the KWELMBS Settlement Agreement, to allow the

Debtors' claims against the KWELMBS Companies for an aggregate amount of Twenty One

---

[4] Grace-Conn., a Debtors in these chapter 11 cases, is authorized to sign the KWELMBS
Settlement Agreement on behalf of Frensenius, the party to whom coverage was issued, under a
Power of Attorney dated September 27, 1996, a copy of which is attached hereto as Exhibit C.

6

Million Seven Hundred Twenty Three-Thousand Seven Hundred Sixty Seven Dollars in U.S. currency ($21,723,767.00) (the "Agreed Amount"). The Agreed Amount is allocable to several obligations of the individual KWELMBS Companies as set forth on the redacted Attachment B to the KWELMBS Settlement Agreement. Such payments shall be subject to the terms and conditions of the Schemes of Arrangement and the SAIC Liquidation.

14.    The Agreed Amount represents the $24,097,509 remaining payable under the policy limits of the Subject Insurance Policies, discounted to net present value based on (i) discount rates established in the Schemes of Arrangement for all payments to creditors, and (ii) estimated timing of claims payments under the Subject Insurance Policies if they would have been paid in accordance with the policies' terms.

15.    After execution and approval of the KWELMBS Settlement Agreement, the Debtors would be able to recover the percentages of the Agreed Amount allowable by the Schemes of Arrangement or the SAIC Liquidation, as the case may be. The Debtors have been advised by KWELMS Management Services Limited, the agent for the KWELMBS Companies (the "KWELMBS Agent") that, under the Schemes of Arrangement, the Debtors would receive payment of approximately $11 million within 90 days after approval of the KWELMBS Settlement Agreement, and could receive additional payments in the future if the percentages payable under the Schemes of Arrangement are increased. The KWELMBS Agent has also advised the Debtors that in the absence of a settlement, the Debtors could not expect to receive any payment under the Schemes of Arrangement before the first quarter of 2006 at the earliest. The Debtors have also been advised that they are not likely to receive any payments under the SAIC Liquidation, but have concluded that accepting the percentage of the Agreed Amount

7

allocated to SAIC is in the Debtors' best interest because they would not be likely to receive any

greater amount in the absence of a settlement. Therefore, the KWELBS Settlement Agreement

allows the Debtors to presently receive a set amount of funds, rather than file a claim and wait

for prospective payment (which is expected to be no greater than the settlement amount) in the

upcoming years.

**Relief Requested**

16.    The Debtors seek an order approving the KWELMBS Settlement

Agreement, which has been executed by the parties, and, by its terms, will become effective

upon the approval of this Court.

**Statutory Authority**

17.    This Court has statutory authority to authorize and approve the Debtors'

entry into the KWELMBS Settlement Agreement pursuant to sections 105 and 363(b)(1) of the

Bankruptcy Code. A settlement of claims and causes of action by a debtor in possession

constitutes a use of property of the estate. See Northview Motors, Inc. v. Chrysler Motors Corp.,

No. 98-3387, 1999 U.S. App. LEXIS 13403, at *11 (3d Cir. 1999). If a settlement is outside of

the ordinary course of business of the debtor, it requires approval of the bankruptcy court

pursuant to section 363(b) of the Bankruptcy Code. See id.

18.    Bankruptcy Rule 9019 provides that, after notice and a hearing, a court

may approve a proposed settlement or compromise. The decision whether to accept or reject a

compromise lies within the sound discretion of the court. See In re Resorts Int'l, Inc., 145 B.R.

412, 451 (Bankr. D. N.J. 1990); In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (Bankr.

E.D. Pa. 1986).

8

19.    In reviewing this Motion, the Court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." In re Martin, 91 F.3d 389, 393 (3d Cir. 1996).  This requires court consideration of the following criteria:  "(1) the probability of success in litigation, (2) the likely difficulties in collection, (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Id.

20.    Approval of the KWELMBS Settlement Agreement is in the best interests of the Debtors and their estates.  The KWELMBS Settlement Agreement is in the best interests of the Debtors because (a) the Debtors' pre-discount claims are in effect accepted in the full amount unpaid under the policy limits, which eliminates the uncertainty and expense of proving the Debtors' claims under the Schemes of Arrangement and the SAIC Liquidation in amounts up to those limits, (b) the settlement discounts the claims at the same rates as would be applied under the Schemes of Arrangement in the absence of a settlement, (c) settlement will not continue to be an option given the imminence of the Bar Date, and (d) the Debtors would receive payment of approximately $11 million within ninety days after approval of the KWELMBS Settlement Agreement, whereas in the absence of a settlement, it is not expected to receive any payment under the Schemes of Arrangement before the first quarter of 2006, at the earliest. Therefore, the Debtors have determined that a payment of approximately $11 million, with the possibility of additional-payments in the future, is fair and reasonable.

21.    The proposed transaction does not adversely affect the Debtors' creditors. In lieu of certain rights under the Subject Insurance Policies, the Debtors are receiving (i) cash

9

and (ii) the right to potentially receive additional cash in the future. In the absence of the

KWELMBS Settlement Agreement, (i) the amount of the eventual payment on account of the

Subject Insurance Policies would be less certain and (ii) in any event, payment would be delayed

by at least a year.

## Notice

22.     Notice of this Motion has been given to (i) the Office of the United States

Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to each official committee

appointed by the United States Trustee, and (iv) those parties that requested papers under

Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no

further notice is required.

10

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, approving the KWELMBS Settlement Agreement, and granting such other and further relief as the Court deems just and proper.

Dated: August 23, 2004

                      KIRKLAND & ELLIS LLP
                      James H.M. Sprayregen, P.C.
                      Janet S. Baer
                      James W. Kapp III
                      Samuel L. Blatnick
                      200 East Randolph Drive
                      Chicago, Illinois 60601
                      (312) 861-2000

                      and

                      PACHULSKI, STANG, ZIEHL, YOUNG, JONES &
                      WEINTRAUB P.C.

                      Laura Davis Jones (No. 2436)
                      David W. Carickhoff, Jr. (No. 3715)
                      919 North Market Street, 16th Floor
                      P.O. Box 8705
                      Wilmington, Delaware 19899-8705 (Courier 19801)
                      Telephone: (302) 652-4100
                      Facsimile:   (302) 652-4400

                      Co-Counsel for the Debtors and Debtors in Possession