# Exhibit A

# Exhibit A

**EXHIBIT A**

PRIVILEGED AND CONFIDENTIAL
SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into as of this twentieth day of August, 2004, by and between

W. R. Grace & Co. (now known as Fresenius Medical Care Holdings, Inc.), a New York corporation ("Grace New York"), and W. R. Grace & Co.-Conn. ("Grace-Conn.") (hereinafter collectively referred to as "Grace" as further defined herein in Clause 1A),

and

KWELM Management Services Limited (hereinafter referred to as "KMS"), as agent for Kingscroft Insurance Company Limited (formerly Dart Insurance Company Limited, Dart and Kraft Insurance Company Limited, and Kraft Insurance Company Limited), Walbrook Insurance Company Limited, El Paso Insurance Company Limited, Lime Street Insurance Company, Limited, (formerly Louisville Insurance Company Limited) and Mutual Reinsurance Company Limited (hereinafter referred to as "the KWELM Companies") and The Bermuda Fire & Marine Insurance Company Limited, (In Liquidation) (hereinafter referred to as "BFMIC" and collectively with the KWELM Companies, "the KWELMB Companies") and Southern American Insurance Company (in liquidation) (hereinafter referred to as "SAIC" and collectively with the KWELMB Companies as "the KWELMBS Companies").

   **WHEREAS**, The KWELMBS Companies subscribed to the H.S. Weavers Underwriting Agency Limited ("Weavers") Underwriting Stamp which underwrote certain policies of insurance in favor of Grace (the "Subject Insurance Policies" as that term is further defined herein). All such known policies of insurance forming part of this Agreement are listed in Attachment A hereto; and

   **WHEREAS**, The KWELMB Companies are insolvent and are bound by Schemes of Arrangement pursuant to §425 of the Companies Act 1985 of Great Britain and, in the case of Mutual Reinsurance Company Limited and BFMIC, §99 of the Companies Act 1981 of Bermuda; and

   **WHEREAS**, SAIC has been ordered liquidated by the Third Judicial District Court of Salt Lake County, Utah (the "SAIC Supervisory Court"); and

   **WHEREAS**, The United States Bankruptcy Court for the Southern District of New York has issued Permanent Injunction Orders, pursuant to §304 of the United States Bankruptcy Code, which,

among other things, enjoin the commencement or continuation of any judicial action or proceeding against the KWELMB Companies except in accordance with the provisions of their respective Schemes of Arrangement; (hereinafter referred to as the "KWELMB Injunction Order") and

**WHEREAS**, the SAIC Supervisory Court has issued a permanent injunction order pursuant to Section 31A-27-336 of the Utah Code, which among other things, enjoins the commencement or continuation of any judicial action or proceeding against SAIC (hereinafter referred to as the "SAIC Injunction Order"); and

**WHEREAS**, on August 19, 1996, Grace and KMS on behalf of the KWELM Companies entered into an agreement to settle Asbestos-Related Claims and Non-Asbestos Products Liability Claims (hereinafter referred to as the "Original KWELM Settlement Agreement"), which substantially adopted the terms and conditions of the Solvent Insurers Settlement Agreement; and

**WHEREAS**, Grace has submitted additional Asbestos-Related Claims to the KWELMBS Companies; and

**WHEREAS**, by this Agreement, the Parties intend to reach a settlement and compromise of all Asbestos-Related Claims not previously made under the Original KWELM Settlement Agreement as part of the Bar Date determination of liability procedures.

**WHEREAS**, on April 2, 2001, W. R. Grace & Co. (formerly known as Grace Specialty Chemicals, Inc.), a Delaware corporation, Grace-Conn., and 60 of their subsidiaries (the "Grace Debtors") filed their voluntary petitions for relief under chapter 11 of the U.S. Bankruptcy Code (the "Bankruptcy Code") in the U.S. Bankruptcy Court for the District of Delaware (the "Grace Bankruptcy Court'), which are being jointly administered as *In re W. R. Grace & Co.,* et al., Case No. 01-01139 (JKF); and pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Grace Debtors continue to operate their businesses and manage their properties as debtors-in-possession; and

**WHEREAS**, this Agreement is being entered into subject to the approval of the Grace Bankruptcy Court, as more fully set forth in Section 15 hereof;

**NOW THEREFORE**, it is hereby agreed by and between the parties hereto:

**1. Definitions.**

The following definitions will apply to the listed terms wherever those terms appear through the Agreement as well as in any Attachments hereto. Where the listed terms are also defined elsewhere in the body of the Agreement, the definitions listed here nonetheless apply and shall serve to further

2

explain the meaning of those terms. Moreover, each defined term stated in a singular form shall include the plural form, and each defined term stated in a plural form shall include the singular form, and each defined term stated in the masculine form or in the feminine form shall include the other. Unless otherwise stated herein, terms used in this Agreement shall have the same meaning as the definitions expressly set out in the Schemes of Arrangement.

    A.    **Grace Releasors and/or Insured:** "Grace Releasors" and/or "Insured" shall mean:

        (i)    W. R. Grace & Co., a New York corporation (now known as Fresenius Medical Care Holdings, Inc.), and W.R. Grace & Co.-Conn., a Connecticut corporation; and their predecessors; all of their past and present subsidiaries and the predecessors and successors of such subsidiaries; their past and present affiliates and joint ventures and their predecessors and successors; and all their past, present and future assigns; and

        (ii)    any other entity that was in the past or is now affiliated with, related to or associated with Grace including any corporations that have been acquired by, merged into or combined with Grace or its predecessors, or Grace's past and present subsidiaries, affiliates, successors and assigns; and

        (iii)    any and all Persons or entities named as insureds, other insureds, additional insureds, or otherwise insured under the Subject Insurance Policies as defined below in Section 1.C.

        (iv)    any appointed trustee or representative acting on behalf of Grace or the estate of Grace;

provided, however, that "Grace Releasors" shall not include any entity that W. R. Grace & Co.-Conn. does not have the authority to bind to this Agreement.

    B.    **Person:**    shall mean an individual, a corporation, a partnership, an association, a trust, any other entity or organization, and any federal, state or local government or quasi-government body or political subdivision or any agency, department, board or instrumentality thereof.

    C.    **Subject Insurance Policies:**  shall mean the insurance policies listed on Attachment A hereto and all insurance policies subscribed to by the KWELMBS Companies and issued to Grace prior to the date hereof; but with respect to BFMIC and SAIC only, excluding any of the policies not underwritten and subscribed to by BFMIC or SAIC through the H.S. Weavers Underwriting Agency. Grace, the KWELMBS Companies and KMS represent and warrant that they are not aware of any Subject Insurance Policies not listed in Attachment A hereto.

D. **ESL:** shall mean Established Scheme Liability, which term shall have the same meaning and effect as in the Schemes of Arrangement of the KWELMB Companies.

E. **Scheme(s) of Arrangement:** shall mean that procedure, authorized pursuant to §425 of the Companies Act 1985 of Great Britain and §99 of the Companies Act 1981 of Bermuda, and recognized by order of the United States Bankruptcy Court for the Southern District of New York pursuant to §304 of the United States Bankruptcy Code to which the KWELMB Companies are bound and pursuant to which provisions are made for the orderly handling of the business of the KWELMB Companies, and the payment of claims made against the KWELMB Companies.

The Schemes of Arrangement require all Scheme Creditors to submit their final claims of whatever nature (if any) on or before a Bar Date. The process of submission and evaluation of such claims will constitute a determination of liability under those insurance policies giving rise to the claims.

F. **Scheme Administrators:** shall mean the Persons appointed pursuant to the Schemes of Arrangement to manage the run-off of the KWELM Companies.

G. **Joint Liquidators:** shall mean the persons appointed pursuant to the BFMIC Scheme of Arrangement to manage the run-off of BFMIC.

H. **Liquidator and/or Special Deputy Liquidator:** shall mean those persons appointed pursuant to order of the SAIC Supervisory Court and under the Utah Code to manage the run-off and liquidation of SAIC.

I. **KMS:** shall mean KWELM Management Services Limited, the authorised run-off agent of the KWELMB Companies with respect to all their business and SAIC solely in respect of business written by SAIC through the H.S. Weavers Underwriting Agency.

J. **Bar Date:** shall mean the last date on which a claim of any nature whatsoever can be made against the KWELMB Companies pursuant to their Schemes of Arrangement or against SAIC pursuant to the order of the SAIC Supervisory Court dated June 21, 2004. The Bar Date shall terminate at 11.59 pm (Greenwich Mean Time) on 29 September 2004 unless otherwise varied pursuant to the terms of the relevant Scheme of Arrangement or by the SAIC Supervisory Court.

K. **Dividend:** shall mean amounts to be paid to Grace, if any, pursuant to the approval of this Settlement Agreement by the SAIC Supervisory Court in accordance with the terms of the Utah Code Section 31A-27-335.

L. **Asbestos-Related Claims:** shall have the respective meanings given such term in the Original KWELM Settlement Agreement, which meanings shall be applied to SAIC under this Agreement as if it were a settling insurer under the Original KWELM Settlement Agreement.

M. **Original KWELM Settlement Agreement:** shall mean the Agreement dated August 19, 1996, between Grace and the KWELM Companies.

N. **Solvent Insurers Settlement Agreement:** shall mean the Confidential Settlement Agreement dated November 17, 1995, between Grace and certain solvent London Market insurance companies.

O. **Closure Provisions:** shall mean Parts 9 and 8 respectively of the Schemes of Arrangement entitled "Closure Provisions".

2. **Insolvency Requirements.**

The Parties recognise that the KWELMBS Companies are insolvent, and in the case of the KWELMB Companies have entered into and are bound by the Schemes of Arrangement with their creditors for payment of any ESL established pursuant to the Schemes of Arrangement only after account is taken of any security, letter of credit, trust or set-off as required by the Schemes of Arrangement and the SAIC liquidation as controlled by Utah Code Section 31A-27-323. Nothing contained in this Agreement shall be deemed to waive or alter any provision contained within the Schemes of Arrangement, the KWELMB Injunction Order, the Utah Code or the SAIC Injunction Order.

3. **Establishment of Liability.**

Upon execution of this Agreement and in consideration of the full releases, acknowledgements, and warranties given in this Agreement, (a) the KWELMB Companies agree to establish in favour of Grace with respect to all Asbestos-Related Claims against Grace not heretofore made under the Original KWELM Settlement Agreement, ESL in the aggregate amount of Twenty-

5

One Million Six Hundred Sixty Thousand Eight Hundred Ninety U.S Dollars ($21,660,890.00) and (b) SAIC shall apply for confirmation to the SAIC Supervisory Court for approval as an Allowed Claim under the provisions of the Utah Code and issue a corresponding NOD in the amount of Sixty-two Thousand Eight Hundred Seventy-seven U.S. Dollars ($62,877.00) to be paid per the Utah Code. (Such total of Twenty-One Million Seven Hundred Twenty-Three Thousand Seven Hundred Sixty-Seven U.S. Dollars ($21,723,767.00) is referred to herein as the "Agreed Amount". The Parties acknowledge that each of the KWELMB Companies shall be liable for Scheme payments and SAIC shall be liable for any Dividend on its share of the Agreed Amount set against its name in Attachment B; that none of the KWELMBS Companies shall be liable for payment of any other's share of the Agreed Amount; and that this Agreement shall be treated as several agreements as between each of the KWELMBS Companies and Grace. Nothing in this Agreement shall affect the allocable shares of any other insurer. By entering into this Settlement Agreement, Grace waives any rights which it may have had under the Utah Code to object to this settlement with SAIC. The ESL established by the KWELMB Companies in favour of Grace under this Agreement is separate and independent of Grace's prior established ESLs.

For the avoidance of doubt the liability of the KWELMBS Companies for the sums set out in this Agreement (subject to any reduction as the result of security, letter or credit, trust or applicable set-off and establishment as ESLs under the Schemes or Dividends under the SAIC liquidation) is not released by any provision of this Agreement and shall continue until discharged in the course of the Schemes or the liquidation of SAIC or otherwise. In this regard the position is the same as would have prevailed had an agreement been reached pursuant to the Closure Provisions of the Schemes of Arrangement or the SAIC Liquidation. In the event of any inconsistency between this clause and any other provision of this Agreement, this clause shall prevail.

4. **Release of the KWELMBS Companies.**

   A. Each of the KWELMBS Companies which are currently paying claims, shall make its first Scheme payment or Dividend payment no later than thirty (30) days after this Agreement becomes effective. Upon payment of a first Scheme to Grace in respect of the allocable share of the Agreed Amount as indicated in Attachment B, by each of the individual KWELMB Companies, and upon confirmation of approval by the SAIC Supervisory Court of SAIC's settlement herein, Grace and any subsequently appointed trustee or representatives acting for it, hereby remises, releases, covenants not to sue and forever discharges (i) each of the relevant KWELMBS Companies; (ii) each of the relevant KWELMBS Companies' past and present officers, directors, employees, partners, subsidiaries, affiliates, representatives,

attorneys and agents; (iii) each of the relevant Scheme Administrators, Joint Liquidators, Liquidator and/or Special Deputy Liquidator of each of the KWELMBS Companies both in their capacities as such and in their personal capacities as individuals; (iv) respective heirs, executors, successors, assigns and reinsurers (as such) and (v) KMS, its officers, directors, employees, partners, subsidiaries, affiliates, representatives, attorneys and agents, from and against any and all manner of action, causes of action, suits, debts, accounts, promises, warranties, damages (consequential or punitive), agreements, costs, expenses, claims or demands of any nature or value whatsoever, in law or equity, whether presently known or unknown, asserted or unasserted, whether sounding in tort or contract, or arising under the statutes or regulations of any jurisdiction, with respect to any and all past, present or future claims, of any type and nature whatsoever, that Grace ever had, now has, or hereafter may have for insurance coverage, including both defense costs and indemnification claims, with respect to the Subject Insurance Policies . It is the intention of Grace to reserve no rights whatsoever under the Subject Insurance Policies insofar as the KWELMBS Companies are concerned with respect to any past, present or future claims of any type, value or nature whatsoever, and to assure the KWELMBS Companies their peace and freedom from any such claims.

Grace acknowledges that in establishing in its favour the Agreed Amount, as detailed in Clause 3A, and the other ESLs previously established in Grace's favour under the Schemes, the KWELMBS Companies have made a final and irrevocable determination and establishment of liability in respect of the Subject Insurance Policies in accordance with the Scheme of Arrangement and the Bar Date procedures, and any and all rights, duties, responsibilities and obligations of the KWELMBS Companies created by and through the Subject Insurance Policies are hereby forever settled, terminated and extinguished. As of the date set forth above, Grace hereby has no further insurance coverage against the KWELMBS Companies under the Subject Insurance Policies.

The KWELMBS Companies acknowledge that nothing in this release shall affect Grace's rights with respect to claims heretofore made under the Original KWELM Settlement Agreement, which shall be governed by the terms thereof, or with respect to its rights to receive payments in respect of the Agreed Amount as provided in this Agreement.

Nothing in this Agreement shall be construed to release any claims or causes of action related to any insurer that is not a Party to this Agreement.

This Release shall not release the KWELMB Companies and/or KMS from any obligations to make additional Scheme payments for future amounts owing Grace arising from an increase in the Scheme payment percentage that may be declared from time to time by the Scheme Administrators or Joint Liquidators, or any Dividend payments that may be declared by the Liquidator or Special Deputy Liquidator.

    **B.** The Parties releasing claims acknowledge that they have been advised by their attorneys concerning, and are familiar with, the California Civil Code §1542 and each releasing Party expressly waives any and all rights under California Civil Code §1542 and under any other federal or state statute or law of similar effect. The parties releasing claims expressly assume the risk that acts, omissions, matters, causes or things may have occurred which are not known or are not suspected to exist by one or more of them. The parties hereby waive the terms and provisions of any statute, rule or doctrine of common law which either, narrowly construes releases purporting by their terms to release claims in whole or in part based upon, arising from, or related to such acts, omissions, matters, causes or things; or which restricts or prohibits the releasing of such claims. Furthermore no party to this Agreement shall seek to reopen or set aside this Agreement on the grounds that it in the future becomes aware of any mistake of law (including any such mistake arising as a result of a subsequent change of law) or a mistake of fact relating to this Agreement (or any of the Subject Insurance Policies) or upon which this Agreement was entered into.

    **C.** For the avoidance of any doubt, upon entering into this Agreement and agreeing to the releases herein, and upon the approval of this Agreement by the Grace Bankruptcy Court, Grace also warrants and agrees that it will not file any claims whatsoever against the KWELMBS Companies on or before the Bar Date for the KWELMBS Companies. This does not prohibit Grace from seeking enforcement of the terms of this Agreement, or any previous agreement establishing ESLs.

    **D.** The Parties agree that this Agreement does not apply to the BFMIC Direct Insurance Policies which remain in full force and effect as to Grace.

**5. No liability to Scheme Administrators, Joint Liquidators Liquidator or Special Deputy Liquidator.**

For the avoidance of doubt it is hereby agreed that no liability shall attach personally to the Scheme Administrators of the KWELM Companies, the Joint Liquidators of BFMIC, or the Liquidator or

8

Special Deputy Liquidator of SAIC, each of whom contracts, if at all, solely as agent for the relevant company, nor to their respective firms.

6. **Continuing Reporting Requirement.**

Notwithstanding the Schemes of Arrangement, or any other provisions contained herein, Grace solely for the purpose set out at clause 3 above, shall continue to notify claims made, and losses and liabilities ascertained, against it under the Subject Insurance Policies to the KWELMBS Companies in the ordinary course in accordance with the terms of the Subject Insurance Policies.

7. **Waiver of rights in favor of the Financial Services Compensation Scheme.**

Grace hereby acknowledges that they have no claim against the Financial Services Compensation Scheme (as successor to the Policyholders Protection Board) in relation to the liability of the KWELMB Companies under the Subject Insurance Policies and agrees to execute a Deed of Confirmation and Waiver in favor of the Financial Services Compensation Scheme in the form set out in Attachment C.

8. **Confidentiality**

   A. This Agreement and its terms, including but not limited to the Agreed Amount are confidential, and neither the terms of this Agreement nor its negotiation, execution or implementation or communications generated in connection therewith (collectively "Confidential Compromise Material") shall be disclosed to any Person or invoked by the Parties hereto in any proceeding, whether by way of discovery, evidence, offer of proof or otherwise, for any purpose, including but not limited to efforts to prove either the acceptance by any Party hereto of any particular theory of coverage or any obligation that any Party has or may have to anyone.

   B. Notwithstanding the foregoing, Grace and the KWELMBS Companies may disclose the fact of this Agreement (as opposed to its terms) to any Person.

   C. In addition to the confidentiality provisions contained herein and not by way of limitation thereof, this Agreement shall be deemed to fall within the protection afforded compromises and offers to compromise by Rule 408 of the Federal Rules of Evidence and any similar state law or rule of court.

      (i) Further, notwithstanding the foregoing, the KWELMBS Companies may disclose Confidential Compromise Material:

- **(a)** where required by applicable law or regulation, or by any regulatory body or government agency;
- **(b)** upon order of a court of competent jurisdiction, administrative tribunal or arbitral tribunal;
- **(c)** for the purpose of enforcing obligations under this Agreement, including the defence of any third party claim whatsoever;
- **(d)** when presenting a claim under any reinsurance or retrocession;
- **(e)** to their attorneys, accountants, auditors and other professional advisors; or
- **(f)** in connection with reports, statements or other information that the KWELMBS Companies may be required from time to time to file or submit pursuant to the terms of their Schemes of Arrangement or liquidation orders.

**(ii)** Further, notwithstanding the foregoing, Grace may disclose Confidential Compromise Material:

- (a) where required by applicable law or regulation, or any regulatory body or government agency;
- (b) upon order of a court of competent jurisdiction, administrative tribunal or arbitral tribunal;
- (c) for the purpose of enforcing obligations under this Agreement, including the defence of any third party claim whatsoever;
- (d) to their attorneys, accountants, auditors and other professional advisors; and
- (e) in connection with reports, statements or other information that the Grace Debtors may be required from time to time to file or submit in connection with their cases under the Bankruptcy Code; and
- (f) in connection with obtaining the approval of this Agreement by the Grace Bankruptcy Court.

**D.** Nothing contained in this Agreement shall be interpreted to restrict the right of any Party to bring a claim or to introduce evidence, including executed copies of this Agreement, to enforce this Agreement or to make sworn statements as to the fact of settlement and release provided herein in connection therewith,

## 9. Construction of Agreement.

This Agreement is the jointly drafted product of arms-length negotiations between the Parties with the benefit of advice from counsel, and the Parties agree that it shall be so construed. As such, neither Party will claim that any ambiguity in this Agreement shall be construed against the other Party.

10

**10.     No Modification.**

No modification of this Agreement shall be valid unless it is made in writing and signed by the Parties.

**11.     Execution.**

There will be two signed originals of this Agreement. This Agreement may be executed in counterparts, all of which together shall be deemed to constitute one and the same agreement.

**12.     Governing Law.**

This Agreement shall be governed by and shall be construed (i) as respects the KWELM Companies, in accordance with the governing law and jurisdiction provided for at Clause 11.5 of the KWELM Scheme of Arrangement, (ii) as respects BFMIC, in accordance with the governing law and jurisdiction provided for in Clause 10.5 of the BFMIC Scheme of Arrangement, and (iii) as respects SAIC, by the laws of Utah under the auspices of the SAIC Supervisory Court.

**13.     Notice.**

The Parties hereto agree that any notices required to be sent under this Agreement shall be in writing and sent by facsimile (with receipt confirmed), certified mail, hand delivery or reputable overnight delivery service, as follows:

>   If to KMS or any of the KWELMBS Companies:
>> Christopher W. Reichow, Esq.
>> U.S. Legal Counsel
>> KWELM Management Services Limited
>> Suite 1803
>> 599 Lexington Avenue
>> New York, NY 10022-6069
>> Fax No.: 212-838-5999
>
>   or to the relevant registered offices of the KWELMBS Companies
>
>   If to Grace:
>
>   W. R. Grace & Co.-Conn.
>   7500 Grace Drive
>   Columbia, MD 21044
>   ATTN: Corporate Secretary
>   Fax No.: 410-531-4783

11

## 14. Integration.

This Agreement, including Attachments A and C (in their entirety), constitutes the entire Agreement between the KWELMBS Companies and Grace with respect to the subject matter hereof, and supersedes all discussions, agreements and understandings, both written and oral, among the Parties with respect thereto. Attachments A, B and C are identified with particularity within the body of this Agreement.

## 15. Warranty of Signers' Authority.

Grace warrants and represents that subject to approval of the Grace Bankruptcy Court, the Person executing this Agreement on its behalf is fully authorized to do so and that all corporate approvals necessary to bind Grace as defined herein, have been properly; and KMS warrants and represents that the person executing this Agreement on behalf of KMS is authorized to execute same on behalf of KMS, each of the KWELMBS Companies and their respective Scheme Administrators, Joint Liquidators, Liquidator and/or Special Deputy Liquidator and that the Agreement is the valid and binding obligation of such companies.

## 16. Agreement Subject to Bankruptcy Court Approval and Effective Date

The Parties acknowledge and agree that this Agreement is subject to approval of the Grace Bankruptcy Court; and that if such approval is denied, this Agreement shall be deemed void *ab initio*. The effective date of this Agreement shall be the day on which the order of the Bankruptcy Court approving this Agreement becomes effective.

*The remainder of this page purposely left blank.*

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date first written above.

**W. R. GRACE & CO.-CONN.**
**FOR ITSELF AND AS AGENT FOR**
**W. R. GRACE & CO.**


By: _____

Title: _____


**KWELM MANAGEMENT SERVICES, LIMITED,**
**AS AGENT FOR THE KWELMBS COMPANIES**


By: _____

Title: _____

13

Attachment A

THE SUBJECT INSURANCE POLICIES

**Policy Number**

59/2209/2BB760881
59/2209/3/BB760883
59/2209/4/BB760884
59/2209/5/BB760885
66/180390
914-1-02502
914-1-04116
914-1-01110
411-4307
914105953
74DD662C
74DD663C
76DD1594C
76DD1595C
77DD1631C
77DD1632C
77DD1826
78DD1417C
78DD1418C
78DD1419C
78DD1420C
79DD1633C/PY107779
79DD1634C/PY0107879
79DD1635C/PY0107979
79DD1636C/PY108079
79DD1637C/PY111779
79DD1638C/PY111879
80DD1643C/PY107880
80DD1644C/PY107980
80DD1645C/PY108080
80DD1646C/PY111780
80DD1647C/PY111880
PY030181
PY030281
PY030381
KY003382
KY017582
KY017782
KY017882
KY017982
KY048183
KY048283
PY278185
PY284785/5KY10338
PY284885/5KY10329
PY017779

14

**Attachment B**

THE AGREED AMOUNT ALLOCATION

| | |
|---|---|
| Kingscroft Insurance Company Limited | $ |
| Walbrook Insurance Company Limited | |
| El Paso Insurance Company Limited | |
| Lime Street Insurance Company Limited | |
| Mutual Reinsurance Company Limited | |
| Bermuda Fire & Marine Insurance Company (Weavers) | |
| Southern American Insurance Company | |
| **TOTAL** | **$21,723,767.00** |

**Attachment C**

# DEED OF CONFIRMATION OF STATUS AND WAIVER OF CLAIMS AGAINST THE POLICYHOLDERS PROTECTION BOARD (the "PPB") OR THE FINANCIAL SERVICES COMPENSATION SCHEME (the "FSCS") UNDER THE POLICYHOLDERS PROTECTION ACT 1975 (as amended) (the "PPA")
## ON _____, 2004

In conjunction with and for the purpose of facilitating the proposed execution of a Settlement Agreement and Release (the "Settlement Agreement") by, inter alia, Kingscroft Insurance Company Limited, Walbrook Insurance Company Limited, El Paso Insurance Company Limited, Lime Street Insurance Company Limited, Mutual Reinsurance Company Limited (collectively referred to herein as the "KWELM Companies") and The Bermuda Marine & Fire Insurance Company Limited (in liquidation) ("BFMIC") on the one hand, and W. R. Grace & Co. and W.R. Grace & Co.-Conn. both on their own behalf and on behalf of its past and present subsidiaries, affiliates and assigns ("Grace") on the other, and pursuant to clause 2.12.2 of each of the Schemes of Arrangement between the KWELM Companies and Clause 2.12.2 of the BFMIC Scheme of Arrangement (together "the Schemes"):

    **(a)**    Grace hereby confirms that it is not a Protected Policyholder as defined in the Scheme nor is it eligible for protection under the PPA in relation to any liability owed to Grace by the KWELM Companies and BFMIC; and

    **(b)**    for the avoidance of doubt, Grace hereby expressly waives any and all rights or benefits it may have against the PPB and/or FSCS in relation to any liability of any of the KWELM Companies or BFMIC to Grace, whether under the Scheme or the PPA, and Grace hereby further agrees to the discharge of such liability and any and all claims it may have against the PPB and/or FSCS whether under the Scheme or the PPA.

This confirmation, waiver and discharge:

    **(i)**    shall take effect upon the execution of the Settlement Agreement;

    **(ii)**    shall be binding upon each party hereto and its successors and assigns; and

    **(iii)**    shall be governed by and construed in accordance with English law (and, for the avoidance of doubt, Clause 10.5 of the KWELM Scheme and Clause 9.5 of the BFMIC Scheme shall apply to it).

**IN WITNESS WHEREOF** this Confirmation and Waiver has been executed and delivered as a Deed by Grace the day and year first above written.

Signed as a Deed
On behalf of
W. R. Grace & Co.

acting by:                          Officer

                                    ....................................................
                                    Title:

                                    and

                                    Company Secretary


                                    ....................................................

Signed as a Deed
On behalf of
W. R. Grace & Co.-Conn.

acting by:                          Officer

                                    ....................................................
                                    Title:

                                    and

                                    Company Secretary


                                    ....................................................

17