# EXHIBIT 1

# The Settlement Agreement

Contract No.RAM0407.12

# SETTLEMENT AND RELEASE AGREEMENT

## BETWEEN

## W. R. GRACE & CO.-CONN.

## AND

## AKZO NOBEL INC.

This Agreement is entered into by and between Akzo Nobel Inc., (hereinafter AKZO) having offices at 525 West Van Buren Street, Chicago, Illinois 60607, and W. R. Grace & Co-Conn, (acting through its Grace Davison business unit and hereinafter referred to as GRACE), said GRACE having offices at 7500 Grace Drive, Columbia, Maryland, 21044.

WHEREAS, Akzo represents and warrants that it owns or controls (in the sense of having the right to license without accounting to others) AKZO Patent Rights (as hereinafter defined);

WHEREAS, the AKZO Patent Rights concern products or methods relating to the use of hydrotalcite containing materials in combination with catalyst to treat $SO_2$, and/or $SO_2$-containing emissions from hydrocarbon cracking processes;

WHEREAS, the Parties have been engaged in a discourse concerning the presence or absence of hydrotalcite in GRACE DESOX® and SUPER DESOX™ spinel-based additives (hereinafter "Additives");

WHEREAS, as a result of said evaluation, GRACE has concluded that certain of its Additives made during the Critical Period (as hereinafter defined) may have contained hydrotalcite;

WHEREAS, as a result of said evaluation, GRACE has further concluded that, it either had no knowledge of the possible presence of hydrotalcite, or hydrotalcite was not present, in Additives made outside the Critical Period;

WHEREAS, GRACE denies any liability for matters, occurring outside the Critical Period, alleged, or which could have been alleged by AKZO in a patent infringement lawsuit based on the Akzo Patent Rights;

WHEREAS, the Parties desire to enter into this Agreement to avoid the uncertainty and expense of litigation;

WHEREAS, the Parties desire to compromise and settle completely the disputes between them relating to the Akzo Patent Rights upon the terms and in the manner provided for in this Agreement; and

WHEREAS, GRACE filed a voluntary petition for reorganization relief pursuant to Chapter 11 of Title 11, of the United States Code, in the United States Bankruptcy Court for the District of Delaware on April 2, 2001 (the "Filing Date") and has operated its business as a debtor-in-possession since the Filing Date.

NOW, THEREFORE, in consideration for the mutual promises and obligations set forth herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending legally to be bound, do hereby covenant and agree as follows:

Article I
Definitions

The terms set forth below shall have the following respective meanings when used in this Agreement:

1.01 "Agreement" shall mean this Settlement And Release Agreement, as the same may be amended and supplemented from time to time.

1.02 "Akzo Group" shall mean AKZO, its affiliated, subsidiary, parent and related companies, and their predecessors, successors, assignors, assignees, and the officers, directors, shareholders, agents, attorneys, representatives, and employees of all of them.

1.03 "Akzo Patent Rights" shall mean (a) U.S. Patent Nos. 4,866,019; 4,952,382; and/or 4,946,581 (b) any international counterparts thereof; (c) any divisionals, continuations, continuations-in-part (except as provided below), refilings, and extensions of any of the foregoing patents or patent applications; (d) all substitutions, reissues, renewals, reexaminations, patents of addition, and inventors' certificates thereof, patent term extensions; and (e) all patents issuing from any of the foregoing applications. "Akzo Patent Rights" shall also include patents and/or patent applications which are filed or which issue after the Effective Date to the extent any claims thereof cover information disclosed in said patents or patent applications that does not constitute, in whole or in part, new matter in accordance with US Patent Law (35 USC). "Akzo Patent Rights" shall not include any claims in continuation-in-part patent applications (including all divisionals and continuations of these continuations-in-part), patents issuing from

continuations-in-part (including all reissues, reexaminations, and extensions of such patents), and all international counterparts thereof to the extent that such claims are directed to new matter which is not disclosed subject matter of those patents and patent applications listed in Sections 1.03(a) to (e).

1.04   "Bankruptacy Court Approval Date" shall mean the date on which the conditions of Section 5.01(a) have been met.

1.05   "Critical Period" shall mean the period beginning on May 1, 2002 and ending on April 30, 2003.

1.06   "Effective Date" shall mean the date of last signature appearing at the end of this Agreement.

1.07   "Grace Group" shall mean GRACE, its affiliated, subsidiary, parent and related companies, and their predecessors, successors, assignors, assignees, and the officers, directors, shareholders, agents, attorneys, representatives, and employees of all of them.

1.08   "Party(ies)" shall mean AKZO and/or GRACE, as the context in the term is used implies.

1.09   "Prior Confidentiality Agreement" shall mean the confidentiality agreement between Grace Davison and Akzo Nobel Inc., effective February 25, 2004 (Contract No CAC0311.24).

Article II
Release And Settlement

2.01   AKZO hereby
   (a)   covenants not to sue the Grace Group for infringement of the Akzo Patent Rights and any other patent rights owned or controlled (in the sense of having the right to license without accounting to others) by AKZO for claims, liabilities, actions or causes of action of any kind or nature; and
   (b)   releases and forever discharges the Grace Group from any and all claims, liabilities, actions or causes of action of any kind or nature;
   which arise out of the Grace Group's alleged direct or indirect infringing manufacture, use, sale, or importation, of the Additive(s) prior to the end of the Critical Period.

2.02   AKZO further covenants not to sue any direct or indirect customer of the Grace Group, that purchased Additive(s) made prior to the end of the Critical Period, for any infringement of the Akzo Patent Rights arising out of (a)

the use by said customer of said Additive(s), or (b) the sale and/or manufacture of said Additive(s) by the Grace Group.

    2.03  AKZO represents and warrants to, and for the benefit of, the Grace Group that:

- (a) at least one legally valid and binding agreement (hereinafter Third Party License Agreement) granting a license to at least one licensee (hereinafter Licensee) under the Akzo Patent Rights, existed in full force and effect during the Critical Period;
- (b) there were no material defaults by said Licensee under the Third Party License Agreement prior to the Effective Date;
- (c) for the rights granted by AKZO to Licensee under said Third Party License Agreement, the Licensee was required to pay and did pay at all times during the Critical Period and otherwise, a running royalty above 14% and ranging as high as 25% of the net sales, by said Licensee, of products (hereinafter Licensed Product) that would otherwise infringe the Akzo Patent Rights in the absence of said Third Party License Agreement, after deduction for (i) transportation charges or allowances if any; (ii) trade, quantity or cash discounts, and broker's or agent's commissions, if any, allowed or paid; (iii) any duty, tax or other governmental charge levied on the supply, transportation or use of Licensed Product which is absorbed by the Licensee; and (iv) credits or allowances, if any, given or made on account of the return or rejection of Licensed Product previously delivered;
- (d) the Third Party License Agreement was not part of, and did not involve, an exchange of Akzo Patent Rights for any patent rights controlled by the Licensee;
- (e) the royalty rate specified in Section 2.03(c) is not attributable to a Government decree;
- (f) the Third Party License Agreement is not between AKZO and any other member of the Akzo Group; and
- (g) AKZO understands that GRACE is relying on the representation and warranty expressed in this Section 2.03, as a basis for calculating the $1,600,000.00 portion of the settlement agreed to herein at Section 3.01.

Article III<br>Consideration

    3.01  In consideration for the above covenants, release, representations and warrantees of Article 2, GRACE shall pay to AKZO, within thirty days of the

Bankruptcy Court Approval Date, the sum of One Million eight hundred thousand ($1,800,000.00) USD.

Article IV
Dismissal

4.01   AKZO will, within thirty days of the Bankruptcy Court Approval Date, withdraw, with prejudice to AKZO, its claim for patent infringement filed in the United States Bankruptcy Court for the District of Delaware (Case Number 01-01139) on March 27, 2003, and AKZO shall promptly file in said Bankruptcy Court all pleadings and papers necessary to accomplish such dismissal. The parties agree that any other existing or subsequent claims or actions filed by either party arising out of any claim or cause of action that is the subject of this Agreement will also be subject to dismissal with prejudice.

Article V
Bankruptcy Court Approval

5.01 (a)   This Agreement, and the rights and obligations of the parties hereunder, are subject to satisfaction of the following conditions. The U.S. Bankruptcy Court for the District of Delaware on or before November 30, 2004 shall have issued an order approving all of the terms and conditions of this Agreement, and the performance of all of the obligations of the Parties hereunder, including the payment by GRACE to AKZO of the sum specified in Section 3.01.

(b)   In the event that the conditions provided in Section 5.01(a) are not satisfied, either Party may at its election terminate this Agreement by delivering to the other Party written notice thereof, which notice shall specify that such termination is effected under this Section 5.01.

(c)   In the event of termination under Section 5.01(b):
(i)   this Agreement shall be null and void on and after the effective date of the termination;
(ii)   neither party shall be liable to the other Party as a result of such termination; and
(iii)   the following shall apply:
(1)   the confidentiality obligations of the Prior Confidentiality Agreement shall remain in full force and effect,
(2)   the terms of this Agreement shall be treated as part of a settlement discussion;

(3) neither this Agreement nor its contents can or should be used in any litigation for any purpose;

(4) the terms of this Agreement shall be treated as coming under Rule 408, Fed. R. Evidence, and not as an admission that the Akzo Patent Rights are valid or that the Grace Group or customers of the Grace Group directly or indirectly infringe the Akzo Patent Rights.

(d) Either Party may at its election waive the conditions of Section 5.01(a), but only in a writing that is signed by an officer of such Party and that refers expressly to this Section.

## Article VI
## Miscellaneous

6.01  Nothing in this Agreement shall be deemed by implication or otherwise to vest in GRACE any present or future rights in any patents, trade secrets or other property of AKZO, and no license is granted.

6.02  Notwithstanding anything to the contrary in the Prior Confidentiality Agreement, AKZO may provide Albermarle Corporation with information concerning this Agreement, including a copy of this Agreement, provided Albermarle Corporation agrees to confidentiality and restricted use obligations no less stringent then those agreed to by AKZO in the Prior Confidentiality Agreement.

6.03  The validity and interpretation of this Agreement and the legal relations of the parties to it shall be governed by the internal substantive laws of the State of New York, U.S.A., exclusive of its conflict of law provisions.

6.04  This Agreement constitutes the entire understanding and agreement between the parties hereto with respect to the subject matter hereof and there are no representations, understandings, or agreements, oral or written, which are not included herein. This Agreement cannot be modified in any respect except by an instrument in writing executed by a duly authorized representative of the party to be bound thereby.

6.05  Nothing contained in this Agreement shall be construed as creating any obligation to enter any further business relationship with respect to the subject matter of this Agreement.

6.06   This Agreement shall be binding upon all members of the Akzo Group and inure to the benefit of the Parties hereto and the successors to substantially the entire assets and business, to which this Agreement pertains, of the respective Parties hereto.  This agreement shall not otherwise be assignable by either Party without the prior written consent of the other Party.  Any and all assignments of this Agreement or of any interests therein not made in accordance with this paragraph shall be void.

6.07   AKZO enters into this Agreement in behalf of itself and the other members of the Akzo Group, including Akzo Nobel NV, Akzo Nobel Catalysts LLC and Akzo Nobel Catalysts b.v.

IN WITNESS WHEREOF, AKZO, other members of the Akzo Group, and GRACE have caused this Agreement to be executed on their behalf by their duly authorized representatives as of the dates written below.

| **AKZO NOBEL INC.** | **W. R. GRACE & CO.-CONN.** |
|---|---|
| By: | By: _____ |
|  | Alfred E. Festa |
| Title: | Title: President and Chief Operating Officer |
| Date: | Date: July 28, 2004 |
| By: |  |
| Title: |  |
| Date: |  |

6.06 This Agreement shall be binding upon all members of the Akzo Group and inure to the benefit of the Parties hereto and the successors to substantially the entire assets and business, to which this Agreement pertains, of the respective Parties hereto. This agreement shall not otherwise be assignable by either Party without the prior written consent of the other Party. Any and all assignments of this Agreement or of any interests therein not made in accordance with this paragraph shall be void.

6.07 AKZO enters into this Agreement in behalf of itself and the other members of the Akzo Group, including Akzo Nobel NV, Akzo Nobel Catalysts LLC and Akzo Nobel Catalysts b.v.

IN WITNESS WHEREOF, AKZO, other members of the Akzo Group, and GRACE have caused this Agreement to be executed on their behalf by their duly authorized representatives as of the dates written below.

| **AKZO NOBEL INC.** | **W. R. GRACE & CO.-CONN.** |
|---|---|
| By: _[signature]_ | By: _____<br>Alfred E. Festa |
| Title: PRESIDENT | Title: President and Chief Operating Officer |
| Date: July 28, 2004 | Date: _____ |
| By: _[signature]_ | |
| Title: V.P. Tax | |
| Date: July 28, 2004 | |