1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                        .    Chapter 11

W.R. GRACE & CO., <u>et al</u>.,    .    Case No. 01-01139(JKF)
                              .    Jointly Administered
          Debtors.            .
                              .    Aug. 23,  2004 (12:04 p.m.)
                              .    Wilmington

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1    THE COURT:  Good afternoon, please be seated.

2    THE CLERK:  Are the parties on the line for W.R.

3  Grace?

4    UNIDENTIFIED SPEAKER (TELEPHONIC):  Yes, we are.

5    THE CLERK:  One moment for the Judge, please.

6    THE COURT:  Good afternoon.  This is the matter of

7  W.R. Grace, Bankruptcy No. 01-1139.  There is a list of

8  participants by phone.  I'm not going to read the list.  Good

9  afternoon.

10    MS. BAER:  Good afternoon, Your Honor.  Janet Baer

11  on behalf of the debtors.  Your Honor, looking at the amended

12  agenda, item number 1, a certificate of no objection was

13  filed.  That's the removal matter.

14    THE COURT:  I intend to enter orders on  1, 2, and

15  14 if they haven't already been entered on the docket, and on

16  4, 5, and 6 only with respect to the FCR's motion to file a

17  reply.

18    MS. BAER:  Thank you, Your Honor.  Your Honor, I

19  note that item 14 did appear on the agenda as having been

20  entered.  We haven't seen 1 and 2 yet.

21    THE COURT:  Okay.

22    MS. BAER:  Your Honor, I think that brings us to

23  item number 3 which is the debtor's motion to establish an

24  alternative dispute resolution process.

25    THE COURT:  All right.

1        MS. BAER:  Your Honor, there are presently pending

2   approximately 7,126 unreconciled non-asbestos claims.  The

3   omnibus objection process is ongoing, and we hope that the

4   omnibus objection process will take care of a great many of

5   those claims, but the debtor's seeking to establish some sort

6   of an efficient way to address the remaining claims which are

7   contested and need to be dealt with and probably will not

8   simply be dealt with in the omnibus objection process.  They

9   won't fall quickly.  They won't be able to be settled, and

10  therefore, we propose an ADR procedure for all of these

11  claims not just the 200 litigation claims we previously

12  identified to the Court.  Since the filing of our motion and

13  procedures for ADR, I think we've received extreme support

14  from all constituents including those who have objected.  The

15  objections fall into some specific categories of issues that

16  I think are readily easily resolved among the parties or with

17  the Court's assistance.  Since filing the original ADR

18  procedures we have filed an amended order and amended

19  procedures which dealt with some of the outstanding issues.

20  Number one, we have agreed, pursuant to the Court's

21  suggestion, that before we ask for any claim to be sent to

22  the ADR procedures we will file an objection to the claim,

23  and the parties will have the appropriate amount of time to

24  respond pursuant to the bankruptcy rules.  Then, after that,

25  is when we will identify what we believe would be appropriate

1   for ADR and request that those go to the ADR process.

2   Second, Your Honor, we have modified the automatic

3   disallowance provisions.  What we have put in are sort of

4   provisions that suggest that if you do not respond within a

5   certain amount of time, your claim is disallowed.  At the

6   request of the various committees and vis-a-vis some of the

7   objections, we have essentially eliminated all automatic

8   disallowances except for one.  The only automatic

9   disallowance that we have kept in is the very first one,

10  which is when we designate a claim for the ADR process,

11  parties have 30 days to respond whether or not they would

12  agree to ADR or not.  If, in fact, they do not respond at

13  all, we now provide a second notice on 20 days' notice and

14  after that 20 days' notice, then if we still again do not

15  hear with respect to any response to our suggestion to go to

16  ADR then there's an automatic disallowance of the claim.

17  Your Honor, we do still have some objections to that process,

18  but we believe, Your Honor, that having that kind of a

19  process is appropriate.  It's very easy to file a proof of

20  claim, and thousands of thousands of proofs of claim have

21  been filed here.  It's much more difficult when someone is

22  put to the task of actually having to prove up their claim.

23  Our goal here is to try to eliminate as many un-meritorious

24  claims as possible and only take up the Court's time or a

25  mediator's time with those that are meritorious.  As a

result, we thought that this kind of a procedure would help

that process.  Your Honor, in the U.S. Airways case exactly

the same kind of procedure was followed, although their

second notice was only a 10-day notice.  In addition to that,

Your Honor, Judge Newsome earlier approved an exactly

identical process for USG, and again, the difference there

was the automatic disallowance came after a second notice in

10 days.  So, in that respect, Your Honor, we're actually

asking for a less stringent test than approved by those

courts.  Your Honor, moving onto other changes we've made in

the order.  We've also eliminated any automatic disallowance

of claims based on lack of good faith, failure to pay the

mediators' fees, or submit a substantially completed

statement of claim.  Your Honor, those provisions have all

been modified so now before any disallowance, it's subject to

Court order.  The debtor has to come in and ask for the Court

to disallow the claim.  Your Honor, at the various

committees' suggestion we've also changed the settlement

approval process in terms of dollars and cents.  Now, Your

Honor, there's no need for Court approval if the settled

amount of the proof of claim is fifty percent or less of the

filed proof of claim amount with a $500,000 cap.  So,

therefore, really any settlement over $250,000 would be

subject to other provisions.  The negative notice provision

has been set at a cap of $5 million.  So, therefore, if

1  claims are settled for $5 million or less it will go out on

2  negative notice.  If there's no objection, then a stipulation

3  will be submitted to the Court for approval.  The third part

4  of that process, Your Honor, is Court approval is necessary

5  for any settled claims above the $5 million.  No negative

6  notice at all.  It's a regular motion with the Court for

7  approval of the stipulation.

8          THE COURT:  Where the claim is for $5 million not

9  the settlement.

10         MS. BAER:  Where the settlement is for -- I'm

11  sorry, where the claim is for 5 million, that's correct.

12         THE COURT:  All right.

13         MS. BAER:  That's correct.  Your Honor, a third

14  change or another change --

15         THE COURT:  Wait.  The negative notice, you're

16  still filing the motions for settlement or the stipulations

17  of settlement, whatever they are.

18         MS. BAER:  Yes, Your Honor.  After the negative

19  notice period, if there's no objection, we will then file

20  with the Court a stipulation and ask for entry of the

21  stipulation approving the settlement.

22         THE COURT:  All right, well, the problem with the

23  settlement process or any other objection to claim where

24  you're settling for fifty percent or the $500,000 cap is at

25  some point the Court's dockets need to show that that claim

is no longer subject to being open on my docket.  So, even if

those are settled without Court approval, you still need to

file something so I can terminate that claim objection.

MS. BAER:  Understood, Your Honor.  We will modify

it to make that clear.  That makes perfect sense.  We too

want the claims docket to get cleaned up so it makes some

sense when we're trying to pay claims.  Then, Your Honor,

moving on, the Internal Revenue Service filed an objection to

any automatic disallowance provision.  The Internal Revenue

Service is in a little bit of a unique position, and we have

modified the order and procedures to except them from any

automatic disallowance provision.  So actually it's only that

first automatic disallowance after the second notice is filed

that's relevant here, and we've excepted the IRS from that.

Your Honor, we've also clarified the order in a couple of

ways.  Number one, to the extent a previous stipulation has

been entered by the Court with respect to governing claims

like the Oldcastle claim, Oldcastle filed an objection, the

stipulation entered by the Court controls.  The ADR was not

meant to change that in any way.  It's really to take up

matters that haven't been resolved with those kinds of

stipulations.  Furthermore, Your Honor, we have actually a

new order and procedures to submit to the Court which I've

shared with various counsel here today where we made a

further change and that is one that was the subject of

several objections, and that is in addition to stipulations
entered by the court governing, we've modified the injunction
provision of the order and procedures to make it clear that
there is an injunction if a claim is put into the ADR
procedure, but if it is not going forward it will be governed
by the regular omnibus procedures, and parties are not
precluded and may in fact file a motion to modify the
automatic stay or the preliminary injunction if they believe
appropriate.  So we've eliminated, I think, a lot of the
concerns objectors had there that we were prohibiting them
from filing those motions.  Your Honor, with respect to the
objections that were filed, there are a couple of other
matters that were taken up by Oldcastle.  The City of
Cambridge and the Evans plaintiffs both filed late
objections.  The City of Cambridge who was notified on a
timely basis filed an objection about a month after the
original motion was filed.  The Evans plaintiffs, who are
plaintiffs in an ERISA lawsuit brought by current and former
directors and officers of W.R. Grace filed an objection last
week with respect to the ADR procedures.  I believe that the
changes we have made in the paragraph related to the
injunction, the preservation of the rights to modify the
automatic stay, and the preservation of, if you will, the
omnibus claims objection process addresses most of their
objection.  Your Honor, I think with that leaves in terms of

the objectors is Oldcastle has indicated to us that they
still object to the automatic disallowance of claims, which
is after the second notice of the designation of its claim as
a claim for ADR.  The City of Cambridge and the Evans
plaintiffs, to the extent that you're taking that up, also do
still object.  As indicated earlier, Your Honor, we believe
it's appropriate under the various precedents of other cases
and appropriate to have some sort of a burden, if you will,
on the claimants to respond.  One of the biggest problems we
have here, again, is filed proofs of claim where people file
them and then they claim don't respond or when they respond
they give you such minimal information that you really cannot
make any progress.

THE COURT:  But the fault, as I understand it, is
simply that they haven't responded to the request to go to
ADR.  They can either say, Yes, I'm going or No, I don't go.
They still have that right.  It's just that they have to
respond?

MS. BAER:  That's correct, Your Honor.

THE COURT:  Oh, I don't see a problem with that.

MS. BAER:  That's all we're asking for, Your Honor.

THE COURT:  If they don't want to go then discovery
will open, and we'll go forward or if they do want to, then
it will probably save them some money in the long run, but
that will be their choice.

1    MS. BAER: Right. Thank you, Your Honor. One

2    other issue that's been raised by Oldcastle and Cambridge has

3    to do with where the claim is litigated, and this, I think,

4    is maybe a little bit of a misunderstanding of what the ADR

5    does and doesn't do. We are dealing with claims filed

6    against W.R. Grace. To the extent that somebody's filed a

7    proof of claim we're trying to determine the best way to

8    adjudicate that claim. We are not asking that third-party

9    litigation involve other parties that have nothing to do with

10   W.R. Grace to be brought into this Court and be subject to

11   the jurisdiction of this Court. To the extent that we have

12   litigation claims against Grace and parties related to Grace

13   like for example, insurers where there's a clear indemnity,

14   that sort of thing, that's appropriate for this Court to

15   adjudicate. We're asking that they do so, and we're

16   preserving the option, however, if it's mature litigation.

17   For example, a matter that's on appeal that we instead have

18   that go back to the appellate court for adjudication.

19   Oldcastle and Cambridge are in kind of unique positions.

20   Cambridge is an environmental claim, complicated

21   environmental claims, where there are other potentially

22   responsible parties and the like. While, I have not studied

23   the Cambridge claims to stand here and tell you that that is

24   clearly mature litigation, if you will, it's a unique issue,

25   and it probably will be unique to several environmental

1   claims and that's that this Court doesn't have jurisdiction

2   over parties other than the debtor and the parties under 1334

3   to the extent we can prove related-to jurisdiction.   All

4   we're asking here is for the opportunity to decide whether

5   the claim, the clam against W.R. Grace should be adjudicated

6   in this Court, the Federal District Court, if it's not

7   appropriate for this Court, or otherwise be sent back to the

8   court of original jurisdiction.   We're not seeking to force

9   third parties in the Cambridge environmental litigation, for

10   example, to come before this Court.   If we want to do so, I

11   think that removal would be the appropriate way in which to

12   do that, and that would be our intention.   Same thing with

13   Oldcastle, Your Honor.   If you recall, a few months ago,

14   Oldcastle came in on a motion to lift the automatic stay.

15   The stipulation that was entered by the parties permitted

16   Oldcastle to proceed with discovery against Grace.   They had

17   not yet named Grace in any litigation.   I think Oldcastle is

18   something like a fourth party defendant and Grace a fifth

19   party defendant or potential fifth party defendant.   Once

20   again, Your Honor, that's not just a claim against Grace.

21   That's a complicated matter involving many third parties.   If

22   we want this Court to handle that, I think removal is the way

23   we have to go on that one.   We're not asking to change that.

24   Your Honor, with respect to what I believe is the remaining

25   objection and it's an objection lodged by Oldcastle.

1  Oldcastle asks that we make some affirmative disclosures in

2  our initial ADR papers vis-a-vis insurance information.  Two

3  things, Your Honor:  Number one, we believe the debtors are

4  already obligated to do what's appropriate here.  Under § 7.0

5  of the ADR procedures, upon receipt of the substantially

6  completed and signed statement of claim, both parties may

7  direct reasonable and good faith requests to the other party

8  for further information.  In other words, discovery, Your

9  Honor, and the parties have a good faith obligation to

10  respond.  To the extent that requesting insurance information

11  is appropriate, that is the way in which insurance

12  information would be provided.  The Federal Rules of Evidence

13  limit the applicability of insurance information, and we

14  certainly are governed by the Federal Rules of Evidence.

15  Your Honor, I would suggest that a carte blanche requirement

16  that we immediately volunteer insurance information wouldn't

17  be appropriate.  Frankly, in some cases, given how much

18  information we have, we're not even sure if it's an

19  insurance-covered matter at the initial stages.  To the

20  extent it becomes relevant later not only would it be

21  provided, Your Honor, but one of the other changes we made in

22  the order and the procedures, which was submitted late last

23  week to the Court, is CNA Insurance Company and its

24  affiliates contacted us.  They wanted to make it very clear

25  that we are not trying to change their rights in any way,

vis-a-vis the ADR program.   In fact, they're very supportive

of ADR.   They just want to make sure that if we're looking

for them to pay the claim, they have a participation in the

process, and the revised order provides for that, and that

certainly is our intention.   When insurance is involved, it

makes no sense for the insurance carrier not to be involved

if we're looking for them to pay and the revised order

provides for that opportunity.   Under the circumstances, Your

Honor, I believe we really have addressed all of the

objections to the ADR program.   We would ask that the Court

enter an order along the lines that we've submitted, and I

can submit to you both the black-line of the most recent

changes as well as the clean copies of the order and the

procedures.

THE COURT:   I think I'm going to need yet another

copy any way, or another variation of this to make it clear

that you're going to have to file something once the

stipulations are entered or the claim has been settled so

that, as I indicated earlier, the claim's docket can be

clarified.   This new proposed order that you're talking

about, was it the one that was delivered on Thursday evening?

MS. BAER:   Your Honor, the one delivered on

Thursday evening included the new CNA provisions, which are

the last two paragraphs of the order.   It did not include and

we just this morning made the changes to deal with the

preservation of the right to seek a modification of the automatic stay and preliminary injunction.

THE COURT:  Well, I haven't seen the one that was delivered Thursday either because I got a binder that was not tabbed, that had nothing that explained to me what was new, and I was not going to go back through a whole binder to find the couple of things that may have been added to it.  So whatever was filed Thursday, I have not seen.  Your office really does need to give me a list of what it is.  I did later get a black-lined agenda, so I have taken a look at a couple of things this morning when I had an opportunity to do that from the black-lined agenda and the new binder, but I did not go through the whole thing in Pittsburgh.  I didn't have it with me.  I've seen some of the stuff today and not all of it.  So, please if you could, when you're submitting additional documents make sure that they're tabbed for me and that the binder -- or the agenda, pardon me, indicates what they are because I will not take the time to go back through a whole binder to search that stuff out.  I just don't have the time to do it.

MS. BAER:  I understand, Your Honor.  We can proceed in any way that makes sense for you.  I can hand up the black-lines now but I don't have a black-line from the original filing to Thursday to today.  There's two sets. Might I suggest that I submit to you a black-line from the

original filing, which includes Thursday's changes, this morning's changes, and this one further change you're requesting and then submit that to you for entry.

THE COURT:  I think that would make more sense, yes.  Okay, does anyone want to address item 3?

MR. SULLIVAN:  Good afternoon, Your Honor.  Bill Sullivan on behalf of Oldcastle.  Your Honor, I had a discussion with counsel for the debtors last week at Ms. Baer's office, and we did in fact resolve all but one of the issues, and I thought we had resolved all of the issues, pertaining to Oldcastle, and I'm not sure if counsel's informed about those conversations, but I did send over a stipulation and got a response indicating that maybe they weren't going to stand by the agreement.  But, let me just back up for a second, Your Honor.  With respect to Oldcastle, we have no objection.  We did request the insurance information, but we're satisfied that there's a provision in there that will enable us to get insurance information if we need that to make a decision.  We also did get a modification, as was stated on the record, that to the extent that we have a prior stipulation that this Court approved back in March, governing our fifth-party complaint against Grace, that that stipulation controls.  The last issue that we had raised, Your Honor, was this issue of what happens if our claim goes to mediation through this process and is not

1  resolved.  And that's governed by paragraph (10) of the ADR

2  procedures.  And it says that the place that it will get

3  resolved is dependent on whether the litigation is deemed

4  mature litigation or immature litigation and that the debtors

5  have sole discretion with respect to determining whether the

6  litigation is mature or immature.  Your Honor, that's the

7  provision that I objected to on behalf of Oldcastle.  We have

8  a litigation going on in Massachusetts.  We initially sought

9  to file a fifth-party complaint to bring Grace in, then the

10  parties jointly determined it would be better to leave Grace

11  on the sidelines while that litigation progresses, and in

12  fact, it's supposed to go to mediation in Massachusetts in

13  September or early October.  That being said, the parties

14  have communicated and are monitoring those claims in that

15  litigation.  It is inappropriate for the debtors to determine

16  that that litigation could be considered immature.  It's

17  going forward, and to the extent that there's a process

18  contained or a provision in the ADR process that says that

19  the debtors can somehow determine that the litigation's

20  immature, we object to.  I --

21          THE COURT:  Well, how about if that's the case,

22  filing a motion and if you can't agree on what it is, I'll

23  determine where it's going to go.

24          MR. SULLIVAN:  I'm okay to leave it undecided, but

25  I'm not okay to have the debtors decide in advance and to

1    leave it in their sole discretion.  There are a lot of

2    procedural ways that these claims could be resolved, Your

3    Honor, so I am content if the record reflects that there's no

4    binding determination about whether it's mature or immature,

5    and that if we can't agree,  Your Honor will decide it if and

6    when it's appropriate, that's acceptable.

7              THE COURT:  Well, okay, that would apply to

8    Oldcastle.  I'm not sure -- Has anyone else raised that

9    objection?

10             MR. MANGAN:  Good afternoon, Your Honor.  Kevin

11   Mangan on behalf of the City of Cambridge, Massachusetts.

12   That's the gist of our objection as well.  As I spoke to

13   counsel before, we support a mediation ADR process, and we

14   think the time is ripe at this juncture to begin that in this

15   complex environmental litigation and which counsel even

16   admitted it was unique.  What we want to do in the event the

17   mediation or ADR fails, the City doesn't want to be precluded

18   from coming back into court and requesting relief from the

19   automatic stay.  We felt and we do feel that the case is

20   better suited for state court litigation in Massachusetts as

21   opposed to bringing this in front of the Bankruptcy Court.

22   And as I understand the comments made earlier, the automatic

23   stay -- they're not trying to preclude third-party litigation

24   in its claims.  We just want the ability to come back and

25   seek relief from the stay for whatever reason, whether it's

1  third party, the fact that it's complex litigation that

2  should be better suited in Massachusetts.  So I think with

3  that understanding, and as counsel for Oldcastle indicated,

4  the ability -- Well, I don't want to speak for him.  Let me I

5  take that back, Your Honor.  But to the extent that we're not

6  precluded from coming back to the Court and seeking relief

7  from the automatic stay for whatever reason, we have no

8  problem.

9          THE COURT:  Anyone else but Cambridge and Oldcastle

10  raise that issue?  Ms. Baer?

11          MS. BAER:  No, Your Honor, I don't believe so.

12          THE COURT:  Why don't we just put a caveat in for

13  Oldcastle and the City of Cambridge that if the mediation

14  isn't successful, the parties aren't precluded from coming

15  back, you know, before the Court, however you choose to do it

16  for determinations to where litigation should go forward?

17          MS. BAER:  That's just fine, Your Honor.

18          MR. MANGAN:  Thank you, Your Honor.

19          THE COURT:  Does that resolve your issue too for

20  Oldcastle?

21          MR. SULLIVAN:  That's agreeable, Your Honor.

22          THE COURT:  Yes?  Okay.  All right, so having said

23  all that, I think it would be better just to get a new black-

24  lined copy and a new proposed order on a COC.

25          MS. BAER:  I will do that, Your Honor, and I'll, of

course, get copies of it to the City of Cambridge and to

Oldcastle.    Counsel for Evans was the only other party that

submitted an objection.    I believe we've addressed them all

but he's here, and I just want to make sure.

MR. SCHLUNGER:    Thank you, Your Honor.    Bruce

Schlunger, Lowenstein Sandler on behalf of Keri Evans.    It's

pretty much addressed all of our concerns with the exception

of the second ADR notice and the 20 days and if the claimant

doesn't respond within that 20-day period basically the

claims are discharged.    I just wanted to follow up on that,

because the way I was understanding this is the ADR process

is supposed to compliment the normal claims resolution

process rather than replace it or substitute it, and to me it

would seem that failure to respond is not necessarily

indicative that the claim is not meritorious.    Perhaps it

should be limited to foreclosing the participation in the ADR

program rather than participating in the normal claims

resolution process as well.

THE COURT:    Well, you know, it seems to me that the

debtor is proposing something that hopefully will be a more

efficient and cost effective way to resolve claims rather

than going through a wholesale discovery in this Court and

trying the case.    Now, it may not turn out to be that way,

but, you know, it should in all probability turn out that

way.    So once the debtor files an objection to your claim,

1    you've got an obligation to respond to it, to the objection

2    that is, on the merits however you choose to do it, at which

3    point, if the debtor thinks it's appropriate to go to ADR,

4    the debtor's going to ask that it go.  It seems to me that at

5    that point in time, there's no reason why a claimant

6    shouldn't be put to the burden of saying, Yes, we want to or

7    No, we don't.  That doesn't seem to be such an onerous task.

8    If you don't want to go all you have to do is send a letter

9    that says, No, we don't want to go, and instead you'll be

10   here.  And if you do want to to say, Sure, let's go do it.  I

11   can't see how that is such an onerous task that if a client

12   gets a 30-day notice and then another 20-day notice after

13   having received an objection and potentially having responded

14   to it, because otherwise you're going to be defaulted any

15   way, then I can't see why a second default at that stage is

16   inappropriate.

17          MR. SCHLUNGER:  Your Honor, respectfully, why do

18   you say you would be defaulted any way?  What about through

19   the normal claims resolution process?

20          THE COURT:  If you don't file a response to the

21   objection to claim that objection's going to be sustained.

22   So, if you fail to file a response to the debtor's initial

23   objection to claim, there will be a default.  So, now, in

24   order to get into ADR, there has to have been an objection to

25   claim and a response to it filed, at which point the debtor

will initiate the process saying, Do you want to go to ADR?

What's so onerous about making somebody say yes or no?

MR. SCHLUNGER:  So, if an objection is filed and the claimant does not respond to the second request, they're still okay in pursuing the normal claims resolution process.

THE COURT:  No.  It's a two-stage process.  There will be an objection to claim filed with a notice that will say you've got to file a response to it.  If you don't file a response to that objection to claim, there will be a default in all probability.

MR. SCHLUNGER:  Well, let's say the claimant files a response, they just don't respond to the second notice for the ADR participation.

THE COURT:  That's what I'm saying.  What's so onerous about sending out a response saying, Yes, we'll go or No, we won't?

MR. SCHLUNGER:  I understand that, Your Honor, but respectfully, let's say it just falls out that way.  So technically the claimant didn't respond, just hasn't necessarily sent the notice and complied with the notice provisions of the ADR participation, why should they be precluded from participating in the normal claims resolution?

THE COURT:  Because the Court's permitted to control its calendar --

MR. SCHLUNGER:  Okay.

1      THE COURT:  -- and I think it's an effective use of

2  my time to control my calendar in such a fashion that people

3  can actually make a choice, and it should be an informed

4  choice, whether to go to ADR or not.  I mean, not everybody

5  may choose to take advantage of that opportunity for whatever

6  reason, and I think the debtor's entitled to know where

7  discovery is going to go forward in this Court and what's

8  going to go into ADR, and I think this Court's entitled to

9  know.

10      MR. SCHLUNGER:  Fair enough.  Thank you very much,

11  Your Honor.

12      MS. BAER:  Your Honor, then I will submit a black-

13  line order with all the various changes we've discussed.

14      THE COURT:  All right.  Anyone else wish to address

15  this matter?   Okay.

16      MS. BAER:  Your Honor, the fourth item on your

17  agenda is the application of David Austern, the Future

18  Claimants' Representative to employ bankruptcy counsel.  I

19  believe a certificate of counsel was filed.  I'll let the

20  parties address this.

21      THE COURT:  Good afternoon.

22      MR. PHILLIPS:  Good afternoon, Your Honor.  Jack

23  Phillips on behalf of David Austern.  Counsel for debtor is

24  correct.  A certificate was submitted, however, Your Honor

25  mistakenly referred to the original order attached to the

original application for employment.  We filed an amended

certification of counsel this morning that properly reflects

our agreement with the Property Damage Committee that is it

refers to an order that we attached to our reply to the

Property Damage Committee's objection.

THE COURT:  I haven't seen it.

MR. PHILLIPS:  Can I hand it up to the Court --

THE COURT:  Well, yes, but I have some concerns

about this.  I think there's a conflict by this counsel, and

I don't know that it's resolvable.

MR. PHILLIPS:  Well, let's keep one counsel

separate from the other.  We're talking about Swidler Berlin.

THE COURT:  Yes, I am.  I'm talking about Swidler

on agenda item number 4.

MR. PHILLIPS:  Yes.  Nobody objected asserting a

conflict, Your Honor.

THE COURT:  Well, first of all, the motion alleges

that the firm filed a proof of claim against the debtors for

an amount in excess of $32,000 for fees and costs.  It also

says that it would agree to transfer rights in those claims

against debtors to former clients without recourse.  I don't

see any basis in the Third Circuit for that type of activity.

That is an unresolvable conflict unless that claim is waived.

They're not going to represent any party in this case, that's

number one.  Number two, the motion says there were a few

1  instances where partners, employees of the firm have

2  relatives, spouses, and so forth at firms that represent

3  debtors or others in the case.  That also is an irresoluble

4  conflict.  They cannot represent the Futures Rep under these

5  cases.  There is no provision or some sort of an ethics law

6  in the case, so --

7      MR. PHILLIPS:  Your Honor, my out-of-state counsel,

8  Rick Wyron, I believe is on the phone.  I'll ask Rick if he

9  wants to address this with the Court.

10      THE COURT:  Mr. Wyron?

11      MR. WYRON (TELEPHONIC):  Thank you, Your Honor.

12  It's Richard Wyron from Swidler Berlin.  If I might take

13  those separately.  First, Your Honor, with respect to the

14  proof of claim, Swidler represented a former employee of

15  Grace.  That employee was to be indemnified by Grace.

16  Although the proof of claim was filed by Swidler for the fees

17  incurred in that effort, we believe the claim belongs to the

18  employee, the former employee, and that's why we proposed to

19  transfer it to him.

20      THE COURT:  If you're a former employee, I take it

21  at this point has different counsel?

22      MR. WYRON (TELEPHONIC):  If he has counsel at all,

23  Your Honor, we no longer represent him, vis-a-vis Grace.

24      THE COURT:  Well, did he get notice of the claims

25  bar date?

1    MR. WYRON (TELEPHONIC):  I believe he did.  I would
2    have to confirm that, Your Honor, but I believe he did.
3    THE COURT:  Then it seems to me that entity ought
4    to be filing its own claim, but I see no basis in the Third
5    Circuit for a law firm transferring a claim to any other
6    entity as a means to get more money from the debtor on behalf
7    of yourself or your client.  The Third Circuit's pretty
8    clear.  If you have a claim, you waive it.  If you don't
9    waive it, you're not counsel.  End of story.
10    MR. WYRON (TELEPHONIC):  Very well, Your Honor, I
11    understand.  May we defer to permit me to confirm that there
12    was notice of the bar date and how the proof of claim filed
13    or was determined it was filed?
14    THE COURT:  Yes, it may be appropriate in the
15    circumstance for that person to file a late claim or ask
16    leave to file a late claim if there was some reliance on you.
17    I mean I'm not trying to underpin the employee's claim if in
18    fact there is one, but I don't think it's appropriate to do
19    it the way Swidler proposes, and I'm not going to permit it.
20    MR. WYRON (TELEPHONIC):  I understand, Your Honor.
21    The purpose of the transfer was to put the claim in the hands
22    of the person who had it and by not retaining any recourse,
23    we sought to establish that we would not benefit one way or
24    the other whatever the outcome of that proof of claim by the
25    former employee was.

THE COURT:  Well, that may or may not be the case.
I don't know.  In terms of the benefit, obviously you
wouldn't be getting the monetary benefit, but it may be
another claim that the debtor has to reconcile in this case.
So, I'm still not going to permit it in that fashion.  But,
you know, if the employee has grounds to file a late claim,
that's up to the employee to do it.

MR. WYRON (TELEPHONIC):  Very well, Your Honor, I
understand.  With respect to the second matter which is the
spouse of one of our partners who is a lawyer at Kirkland &
Ellis,  I believe that's the matter Your Honor was referring
to.  We have screened our partner from the matter entirely.
I don't know that Kirkland has, but I believe so.  They could
speak to that, and if Your Honor would permit us, if you're
not inclined to approve that procedure, if you would permit
us to at least brief whether that might be appropriate for
the Court to consider, I'd appreciate the opportunity to do
so.

THE COURT:  Well, I will first ask whether Kirkland
& Ellis has done that.

MS. BAER:  Your Honor, I'm sorry, I don't know.
I'll certainly look into it.  I was not involved in . . .
(microphone not recording).

THE COURT:  Ms. Baer is indicating she doesn't know
if that's been done.  I think the first stage is for the two

1   of you to confer to see whether it has, and yes, I'll accept

2   a brief on that issue.  It may be that that's an appropriate

3   resolution, but I will still accept a brief.

4             MR. WYRON (TELEPHONIC):  Thank you, Your Honor.

5             THE COURT:  So, shall I just continue this till

6   next month's hearing?

7             MR. WYRON (TELEPHONIC):  I would appreciate that,

8   Your Honor, and we'll see if we can resolve it prior to that

9   time.

10            THE COURT:  Is that all right, Ms. Baer?  Anybody

11  object?  All right, it's continued till the next omnibus so

12  that the parties may set up an ethics law if not already

13  established and file briefs -- Please, can you limit these to

14  10 pages?  I mean there can't be that much case law on the

15  issue that can take more than 10 pages.  I just can't see if

16  an ethics law is set up that that might not solve the

17  problem.  So, please, briefs limited to 10 pages.

18            MR. WYRON (TELEPHONIC):  That's fine, Your Honor,

19  thank you.

20            THE COURT:  All right.  So I'll just ask the debtor

21  to put it back on the agenda for next month then.

22            MR. PHILLIPS:  Okay.

23            THE COURT:  All right, thank you.

24            MR. PHILLIPS:  Next on the Court's calendar, Your

25  Honor, is item number 5.

1    THE COURT:  Yes.

2    MR. PHILLIPS:  Which is the retention by David

3  Austern of CIBC.  The Property Damage Committee had also

4  filed a limited objection to that application.  That was

5  resolved with the Property Damage Committee.  Unfortunately

6  the certification of counsel attached the wrong order, so an

7  amended certification was filed this morning with the

8  corrected order that the Property Damage Committee is in

9  agreement with, and I have a copy of that if I could hand

10  that up to the Court.

11    THE COURT:  I have some concerns about this one

12  too.

13    MR. PHILLIPS:  All right.

14    THE COURT:  Why is CIBC being paid in advance,

15  $150,000 a month for the fist six months in advance?  And

16  then it says, "Thereafter, the fees to be negotiated", which

17  is fine, "and approved by the Court through the months of the

18  effective date of the plan confirmation."  So, I don't have a

19  problem with the negotiations thereafter, but I'm not clear

20  why it's being paid in advance when nobody else gets paid in

21  advance, and why there isn't some reconciliation through the

22  fee auditor.

23    MR. WYRON (TELEPHONIC):  Your Honor, again, if I

24  might address that.  It's Richard Wyron for Swidler Berlin.

25    THE COURT:  Yes, go ahead.

1    MR. WYRON (TELEPHONIC):  Thank you.  CIBC's task

2  was to get up to speed quickly, to do the due diligence

3  necessary to put Mr. Austern in a position where he catches

4  up with the other professionals in the case who have been in

5  the case for several years.  I believe their fee structure is

6  consistent with the other financial advisers who are being

7  paid a fixed fee on a per month basis.

8    THE COURT:  But in advance?

9    MR. WYRON (TELEPHONIC):  Well, I understand Your

10  Honor's question if the point is if this should be paid at

11  the end of the month on a fixed-fee basis or after submitting

12  a request for fees.  I don't think CIBC would have an

13  objection to that.  We were trying to set it up in a way that

14  was consistent with CIBC's engagement in other cases in

15  similar roles and other professionals such as they were not

16  on an hourly basis but were on the, if you will, investment

17  banker fixed-fee basis.

18    THE COURT:  Well, yes, I've been looking at this

19  investment banker fixed-fee basis in some other cases, and

20  quite frankly I'm not sure I'm going to approve them in cases

21  going forward because it appears that the services that are

22  being provided on a monthly basis vary significantly to the

23  point where in some months, there are essentially no services

24  for a fixed fee.  Then in other months, to be fair, there are

25  services that would exceed that fixed-fee basis but on

1    average it doesn't seem that the services warrant the amounts

2    that are being paid.  Now, that's not to challenge this

3    application, and I agree that in this case there are some

4    fixed-fee bases going forward, but, folks, you are going to

5    be getting orders that tell you that I want an itemization of

6    what they've been doing, and I want a reassessment of those

7    fees.  So, all of you, start talking to your financial

8    advisers to see what they're going to say.  If they may tell

9    you they want more money, I don't know, but I want to know

10   what they're doing and why we're still paying them four years

11   into the case on a monthly basis if we still are.  So, Ms.

12   Baer, please, put that on the agenda for the next month.  I

13   want a report from every one of the financial advisers on a

14   fixed-fee basis in this case indicating why the fees are

15   still appropriate now and what level.  Now, having said that,

16   let me raise my next issue with the CIBC application.  It

17   provides that the agreement with the FCR is that the debtors

18   will indemnify and hold CIBC harmless, and I think we went

19   through this in one of the other cases, but I'm going to

20   raise it again because it seems to me that if the investment

21   banker's representing a party other than the debtor, why is

22   the debtor indemnifying the party.  If this case goes to plan

23   confirmation with a 524(g) trust involved, why isn't the

24   trust that is essentially going to benefit from CIBC services

25   the entity that is giving this type of an indemnity rather

1  than the debtor?

2  MR. WYRON (TELEPHONIC):  Your Honor, I believe we

3  did deal with that in the Combustion Engineering case where

4  CIBC served as financial adviser.  And I believe in that plan

5  that Mr. Austern and his professionals were provided with

6  such an indemnity.  That was in a pre-packaged context where

7  that was, if you will, part of the agreement.  This case,

8  obviously, is at a very different stage.  If we were at the

9  beginning of a case the investment advisers would ask, and I

10  believe for all parties, all professionals would ask the

11  estate to indemnify them in the same fashion.  This was

12  intended to fit into that model.  It was not intended to

13  deviate or expand the indemnification.

14  THE COURT:  Well, I --

15  MR. WYRON (TELEPHONIC):  It was not intended to

16  preclude the indemnification in connection with the plan as

17  Your Honor suggests even in lieu of that by the estate if

18  that's where the plan plans.

19  THE COURT:  Well, I'm a little concerned about the

20  fact that the debtors have to make this indemnity.  I don't

21  even know what resources the debtors will have post-

22  confirmation.  It seems to me that the party that's

23  benefitting from the services, which in this instance are the

24  Futures, ought to provide that indemnity if CIBC wants one.

25  MR. WYRON (TELEPHONIC):  I understand, Your Honor,

1    and that could be done in a confirmed plan.  It simply can't

2    be assured at this point.

3          THE COURT:  Well, nothing can be assured at this

4    point with respect to the debtor's indemnifying it either, I

5    guess.  I mean, is the object that the debtors will indemnify

6    the Futures Rep's advisers if there is no plan?

7          MR. WYRON (TELEPHONIC):  My thought was it would be

8    an administrative claim and the answer would be, Yes, Your

9    Honor, however, that would be adjusted as part of a confirmed

10   plan and that that indemnity may well be assumed by a 524(g)

11   trust.

12         THE COURT:  Well, then I think --

13         MR. WYRON (TELEPHONIC):  The Futures Rep alone does

14   control what that trust undertakes.  So that would be a

15   discussion with the other parties in interest.

16         THE COURT:  Well, maybe it's a discussion you'd

17   better have between now and next month with respect to what

18   happens if there is a plan confirmed that in fact has a trust

19   for the benefit of the Futures.  And the last thing is, there

20   is apparently no -- I may have missed this, and if I did I

21   apologize.  I looked at this pretty quickly, I acknowledge.

22   But it appears that the annex did not exclude

23   indemnifications or contributions for wilful misconduct or

24   gross negligence.

25         MR. WYRON (TELEPHONIC):  I believe the form of

order did, Your Honor.  I apologize, I'm not sure I have it,

but it was our intention to include that in the form of order

if it wasn't in the annex.  We can address that issue.

THE COURT:  All right.  Okay.  This one will be

continued to next month too to see whether or not I can get a

form of order that's acceptable, that works out these

details.  I am not opposed to paying the flat fee in arrears

as with the other professionals.  I am concerned about paying

it in advance because I think that varies the process but I

expect this financial adviser to be under the same strictures

with respect to reporting that the others are.  Okay, number

6.

MR. PHILLIPS:  Number 6, Your Honor, is the

application of the Future Claimants' Representative to employ

my firm, Phillips, Goldman & Spence.  Again, the Property

Damage Committee filed an objection which has been resolved

subject to resolving the U.S. Trustee's objection.  My

partner Steve Spence, who I believe is on the phone and I

spoke to Mr. Perch at length on Friday in an attempt to

resolve the objection, and we were unable to do so, so we are

bringing it before the Court.  It's our position, Your Honor,

that application was made under § 1103 as a committee entity

to retain counsel, and if you look at that you get referred

back to § 327(c) and 328(c).  328(c) in our mind applies to

retention of professionals by the debtor and requires

1   disinterestedness.  327(c) is an exception to that, Your

2   Honor, and requires an actual conflict, and we assert that

3   there is no actual conflict.

4           THE COURT:  Because of the claim?

5           MR. PHILLIPS:  Yes.  Because it just makes us a

6   creditor of the debtor.

7           THE COURT:  That's right, and as a result, you're a

8   creditor and you have a conflict representing a party in

9   interest.  You cannot represent a party who has an interest

10  which is diverse to your own, and the Futures Claims Rep

11  definitely has an interest that is adverse to the current

12  creditors in the estate.  If there's no waiver, I'm not

13  appointing you.  You can take an appeal.  I believe the case

14  law in this Circuit is clear.  I simply am not going to do

15  it.  I think it's inappropriate.  I think there's another

16  problem any way beyond that and that is the fact that in this

17  instance apparently two sons of the Judge who's assigned to

18  the case work for the firm.  Now how you're going to get

19  around that one under any circumstances, I don't know.

20          MR. PHILLIPS:  Your Honor, we will attempt to

21  address it again next month with the Court, and if we cannot

22  we'll abide by the Court's ruling.

23          THE COURT:  Okay.  The . . . (break in taping) in

24  this instance also does not allege -- I'm sorry, does not

25  indicate that whether or not there is some disinterestedness

1    with respect to the debtors.  It does not say that there is

2    no adverse interest to debtors, to creditors, the estate and

3    so forth.  So the affidavit itself or the motion in

4    combination do no contain necessary information for this

5    Court to award this relief that's requested in any event.  So

6    you need to modify this too.

7              MR. PHILLIPS:  I'll do it.  Thank you, Your Honor.

8              THE COURT:  All right, number 6 is also continued

9    to the next hearing.  Okay, Ms. Baer, thank you.

10             MS. BAER:  Your Honor, matters 7 through 10 on your

11   agenda are separate motions by the Libby plaintiffs to take

12   the perpetuation depositions of four individuals.  Your

13   Honor, the debtors have filed an objection.  Basically, we do

14   not object to the concept of taking perpetuation depositions,

15   however, Your Honor, this bankruptcy case was filed because

16   of asbestos litigation out of control that could not be

17   handled by the debtor.  Your Honor, there's an extremely

18   high burden in this case to prove that these perpetuation

19   depositions have to be taken.  In attempts that were done

20   previously, that burden was not met.  The debtor had

21   suggested ways in which the burden could be met, and, Your

22   Honor, these motions still do not do it.  Number one, there

23   is still no independent medical verification of the status of

24   these individuals.  There is medical information provided,

25   Your Honor.  It's provided essentially by Dr. Whitehouse who

has been the doctor for ever single Libby plaintiff who has filed a case against Grace.  Your Honor, there's no provision to provide independent medical examination nor is there a provision to provide an opportunity for someone to get independent medical verification.  In looking at the information provided, we note that one of the individuals does not appear even by the medical information submitted by Dr. Whitehouse to the point where he's hopefully going to be around for a few more years, it does not indicate as though he is near death, although he is clearly ill, who's also very old as all of these individuals.  Number two, Your Honor, the scope of the request remains vague.  All that's really said here is they want to take the depositions as provided by applicable non-bankruptcy law.  They suggest it's to establish a claim against Grace, but under Federal Rule 27(a)(1) the standard's a little higher.  And first of all, Your Honor, I have to point out these are not former Grace employees.  None of the individuals who the deponents seek to depose were employees at all.  They were residents of Libby.  And that also, Your Honor, I think makes the standard even higher because it's not exactly clear what the purpose is here.   They apparently have some sort of a Worker's Compensation claim yet they did not work for W.R. Grace.  I think there are probably other employers that may be involved, but that kind of information is not provided.  In

addition, Your Honor, the substance of the testimony that the Libby plaintiffs seek to elicit was not provided.   Now I will say, Your Honor, that there was a filing late on Thursday from the Libby plaintiffs which did provide additional information which is extremely helpful, and in that respect, Your Honor, we appreciate that and that's the kind of information we were looking for.   In addition, Your Honor, we're troubled about the procedures here.   The procedures suggest that these depositions will be taken 30 days after Your Honor orders them taken if you in fact determine that they should be taken now.   Your Honor, 30 days is not a lot of time considering the fact that they're providing that medical evidence will not be submitted until 15 days prior, and you've got other parties besides Grace who would need to look at this to determine whether or not they would even be participating in the depositions.   You've got the insurers. Again, I suspect that there are other employers involved here.   We're not really told who the other potential people are that would be involved as defendants in these various matters.   We're not even exactly sure what the matters are from the information that's been provided.   Under those circumstances, we were troubled with the 30-day notice provision.     But, you know, the real problem here, Your Honor, is the burden is so high, and it is not clear from the evidence that's been submitted that these people are at the

1  point where if they're not deposed now there will not be an

2  opportunity.  I will, Your Honor, concede, of course,

3  obviously Mr. Erickson died last month.   The evidence that

4  was provided to us showed he was very ill.  He was very old.

5  He was a smoker with lung cancer, and we certainly don't want

6  to make light of the fact that yes, in fact, he did pass

7  away.  He is one of the individuals, however, who was

8  previously deposed in the Worker's Compensation matter.  This

9  is one of the matters that went forward without our knowing

10  and then in retrospect we got the deposition.  We frankly

11  don't know what additional information the parties wanted to

12  elicit when they filed this motion,  It's another problem

13  with the motions.  We don't exactly know what they want to

14  do.  Your Honor, we can't open the door to hundreds of people

15  being deposed, especially where we are right now.  We are

16  ordered by this Court and will be filing a plan and a

17  disclosure statement on October 14th.  That plan and

18  disclosure statement will provide the debtor's attempts to

19  resolve asbestos personal injury claims.  We are talking to

20  all of the constituencies to see if we can have a consensual

21  plan or at least get moving down that road if not completely

22  consensual by then.  We don't know where that will come out

23  right now.  But under those circumstances, the burden is

24  extremely high here and only people who are clearly near

25  death, who clearly are needed to be deposed in order to

preserve their claim against Grace should be even permitted
to be deposed, and from the information provided, Your Honor,
it's simply not clear that these people need to be deposed in
order to preserve their claim.  We don't know quite what the
plaintiffs want to do, and before we put all the burden on
the various defendants to get geared up again to get involved
in depositions, I think we need more.

THE COURT:  Good afternoon.

MR. COHN:  Good afternoon, Your Honor.  Dan Cohn
for the Libby claimants.  I'd like to start off, if I may,
with three observations:  First is, as you've seen from the
papers, Mr. Erickson died.  Before his death we looked over
the medical information that we were able to assemble
concerning Mr. Erickson.  I don't know if there's anyone in
the courtroom who would have been able to say that of those
four people, he was necessarily going to be the one who
passed away first.  The medical reports --

MR. BERNICK (TELEPHONIC):  Excuse me, Your Honor.
This is David Bernick.  Could whoever is speaking just speak
up a little bit louder.  I'm having a hard time hearing him
on the telephone.  I don't know if you're experiencing the
same problem.

THE COURT:  I'll ask, Mr. Bernick, thank you.  I'm
sorry, Mr. Cohn, maybe you can shout.

MR. COHN:  Sure.  I'll do my best.

1       THE COURT:  All right.

2       MR. COHN:  Mr. Bernick, can you hear me?

3       THE COURT:  Mr. Bernick, can you hear Mr. Cohn now?

4       MR. BERNICK:  Yeah, a little bit better, that's

5  fine, thanks.

6       MR. COHN:  All right, I'll do my best.  So Mr.

7  Erickson was described as making headway despite obviously

8  being terribly severely ill, but the directions seemed

9  perhaps even to be getting better at least over the near

10  term, and yet he was the one who passed away first even

11  though what I had the impression from other people out in

12  Montana that maybe Ms. Regjovich-Taylor was more likely to be

13  the person who would pass away first as these proceedings

14  dragged on.  I think what this should teach all of us is just

15  a little bit of humility about these matters.  We can't tell.

16  The doctors can't tell.  We shouldn't blame ourselves as

17  lawyers.  The doctors themselves when a patient enters the

18  terminal stage of a long-term illness, the doctors themselves

19  can't tell us how long the person has to live.

20       THE COURT:  I think that's the problem though.  At

21  least with respect to one of them, it doesn't indicate that

22  the deponent really is in a terminal stage.  It says that the

23  deponent's likely to die within a year or two.  Well -- And I

24  don't mean to be facetious.  I'm not taking the illnesses

25  lightly in this case, but we all may die within a year or

1   two.   That really doesn't give me much of a reason to

2   authorize a deposition of somebody who is in extremis when he

3   may live for two years.

4           MR. COHN:   Well, that's -- I'm not that there's

5   anybody here who would predict that this case will be over,

6   done with and raise in any better position to be doing these

7   depositions with a two-year period at the rate we've been

8   going.   But --

9           THE COURT:   Well, the plan and disclosure statement

10  are due in October, and given the fact that at this point

11  the case is getting pretty old, I don't expect it's going to

12  drag around too long getting through at least the disclosure

13  statement hearing, and if it's not a consensual plan, it's

14  going to go to an evidentiary hearing shortly after that.

15  So, I for one can predict that between now and two years from

16  now at least Grace is going to be not on my docket any longer

17  in terms of plan confirmation.

18          MR. COHN:   Well, Your Honor, that --

19          THE COURT:   Is that a telegraph?   Pardon me.

20  Somebody has a cell phone that's too close to the receiver

21  and we're getting noises that sound like a telegraph.   Please

22  -- Please turn your cell-phones off and put your mute buttons

23  on, please.   I'm sorry, Mr. Cohn, go ahead.

24          MR. COHN:   Right.   That's very encouraging to hear

25  for all sorts of reasons.   Obviously it's only partly within

1    this Court's control.

2         THE COURT:  Yes.

3         MR. COHN:  But what also, Your Honor, when the

4    doctors talk about a person, about their best guess being

5    that a person will expire within the next two years, that's

6    not a prediction that the person will live twenty-four months

7    in deposable health.

8         THE COURT:  That's true.

9         MR. COHN:  And then die obligingly on the second

10   anniversary of the medical prediction.  I mean, you know, we

11   can laugh about it, but it's very serious business.  These

12   people -- you can't -- you know we can't predict when they're

13   going to die.  You also can't predict when you're going to

14   take your turn for the worst and as a practical matter makes

15   them incapable of being deposed.  Now what's happened here,

16   Your Honor, is that because of the procedures that this Court

17   has put in place at Grace's request for these depositions to

18   be taken, it has as a practical matter become so difficult

19   for us to assemble the necessary information to meet the

20   criteria that have been established that in the real world

21   this is going to be one or two depositions a month, and there

22   couldn't be any more than that because --

23        THE COURT:  If there's some evidence that the

24   plaintiffs -- I don't know this, and I am asking a serious

25   question.  Is there some evidence that the plaintiffs are

dying at the rate of one or two per month?  I mean because it seems --

MR. COHN:  No.  There is -- What there is, Your Honor is -- I mean, first of all, by the way if there had been -- Mr. Erickson is not the first Libby claimant to have died.

THE COURT:  Yes.

MR. COHN:  There have been a number of them who have died.  Whether that average is one or two per month, I'm not sure.  The point that I'm making is that at most we're incapable of providing the information and the motions and satisfying the procedural criteria that you've put in place at any greater rate.  For example, Your Honor, this matter has been kicking around now for four months, and you have four motions in front of you.  We have not been able to get sufficient medical information to have any more depositions to be the subject of motions, and therefore, we've missed September, the September omnibus hearing.  At the earliest we could have perhaps another motion or two pending for October, but that assumes that we've been able to get medical information.

THE COURT:  But Grace has asbestos personal injury plaintiffs from all over the country.  Why is it that it's only in the Libby context that these motions are coming up?  Surely, there must be similar circumstances elsewhere which