## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                    Chapter 11

**W.R. Grace & Co., et al.**                  Case No. 01-01139 (JKF)

        Debtors.                    Jointly Administered

---

**THIRTEENTH QUARTERLY FEE APPLICATION OF STROOCK & STROOCK
& LAVAN LLP FOR COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD
FROM APRIL 1, 2004 THROUGH JUNE 30, 2004**

| | |
|---|---|
| Name of Applicant | **Stroock & Stroock & Lavan LLP** |
| Authorized to Provide Professional Services to: | **Official Committee of Unsecured Creditors** |
| Date of Retention: | **April 12, 2001** |
| Period for which compensation and reimbursement is sought | **April 1, 2004 – June 30, 2004** |
| Amount of Compensation sought as actual, reasonable and necessary: | **$353,629.50** |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | **$7,760.42** |
| Fees and Expenses of the Asbestos Issues Expert | **$272,474.16** |

This is an: ☒ interim ☐ final application

This is the thirteenth quarterly application filed.

**Attachment A**

**Monthly Interim Fee Applications**

| | | Payment Requested | | Payment Received | |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| May 30, 2001 D.I.339 | 4/12/01-4/30/01 | $138,926.00 | $1,975.13 | $111,140.80 | $1,975.13 |
| July 2, 2001 D.I.613 | 5/1/01 – 5/31/01 | $139,928.75 | $6,884.73 | $111,943.00 | $6,884.73 |
| July 30, 2001 D.I.772 | 6/1/01 – 6/30/01 | $91,019.00 | $10,458.14 | $72,815.20 | $10,458.14 |
| September 5, 2001 D.I.889 | 7/1/01-7/31/01 | $92,308.00 | $5,144.37 | $73,846.40 | $5,144.37 |
| October 2, 2001 D.I.983 | 8/1/01 8/31/01 | $53,873.50 | $3,069.88 | $43,098.80 | $3,069.88 |
| October 31, 2001 D.I.1058 | 9/1/01 – 9/30/01 | $58,742.00 | $6,801.32 | $46,993.60 | $6,801.32 |
| November 26, 2001 D.I.1239 | 10/1/01 – 10/31/01 | $101,069.00 | $3,562.09 | $80,855.20 | $3,562.09 |
| January 8, 2002 D.I.1470 | 11/1/01 – 11/30/01 | $136,368.50 | $8,847.34 | $109,094.80 | $8,847.34 |
| February 1, 2002 D.I.1608 | 12/01/01 – 12/31/01 | $92,064.50 | $9,471.47 | $73,651.60 | $9,471.47 |
| March 14, 2002 D.I.1812 | 01/01/02 – 01/31/02 | $100,231.50 | $14,675.58 | $80,185.20 | $14,675.58 |
| April 22, 2002 D.I.1951 | 02/01/02 – 02/28/02 | $88,974.50 | $16,863.97 | $71,179.60 | $16,863.97 |
| May 8, 2002 D.I.2029 | 03/01/02 – 03/31/02 | $77,964.25 | $1,190.44 | $62,371.40 | $1,190.44 |
| June 3, 2002 D.I.2156 | 04/01/02-04/30/02 | $97,251.50 | $1,816.40 (Stroock) $9,772.37 (Chambers) | $77,801.20 | $11,588.86 |

| | | | Payment Requested | | Payment Received | |
|---|---|---|---|---|---|---|
| July 2, 2002<br>D.I.2324 | 05/01/02 –<br>05/31/02 | $74,910.75 | $2,9154.43 (Stroock)<br>$43,190.69 (Chambers) | | $59,928.60 | $46,105.12 |
| August 5, 2002<br>D.I.2495 | 06/01/02 –<br>06/30/02 | $73,096.75 | $2,054.05 (Stroock)<br>$114,666.72 (Chambers) | | $58,477.4011 | $116,720.77 |
| September 20, 2002<br>D.I.2720 | 07/01/02 –<br>07/31/02 | $90,903.27 | $1,250.79 (Stroock)<br>$11,996.25 (Chambers) | | $72,722.61 | $13,274.04 |
| October 29, 2002<br>D.I.2898 | 08/01/02 –<br>08/31/02 | $93,151.25 | $11,539.51 (Stroock)<br>$5,046.70 (Chambers) | | $74,521.00 | $16,586.21 |
| November 14, 2002<br>D.I.2981 | 09/01/02 -<br>09/30/02 | $96,613.25 | $15,567.77 (Stroock)<br>$771.50 (Chambers) | | $77,290.60 | $16,339.27 |
| December 10, 2002<br>D.I.3129 | 10/1/02 –<br>10/31/02 | $68,404.00 | $2,956.54 (Stroock)<br>$1,780.75 (Chambers) | | $54,723.20 | $4,737.29 |
| January 28, 2003<br>D.I.3286 | 11/1/02 –<br>11/30/02 | $75,345.50 | $8,712.16 (Stroock) | | $60,276.40 | $8,712.16 |
| February 7, 2003<br>D.I.3349 | 12/1/02 –<br>12/31/02 | $27,683.50 | $13,332.14 (Stroock) | | $22,146.80 | $13,332.14 |
| March 26, 2003<br>D.I.3552 | 1/1/03 –<br>1/31/03 | $88,139.00 | $1,210.11 (Stroock) | | $70,511.20 | $1,210.11 |
| April 7, 2003<br>D.I.3626 | 2/1/03 –<br>2/28/03 | $76,313.00 | $2,022.78 (Stroock)<br>$1,077.80 (Chambers) | | $61,050.40 | $3,100.58 |
| April 29, 2003<br>D.I.3718 | 3/1/03 –<br>3/31/03 | $60,163.50 | $6,191.15 (Stroock) | | $48,130.80 | $6,191.15 |
| June 2, 2003<br>D.I. 3850 | 4/1/03 –<br>4/30/03 | $60,269.00 | $814.02 (Stroock)<br>$2,043.00 (Chambers) | | $48,215.20 | $2,857.02 |
| July 1, 2003<br>D.I. 3983 | 5/1/03 –<br>5/31/03 | $111,990.50 | $691.84 (Stroock)<br>$3,830.50 (Chambers) | | $89,592.40 | $10,522.34 |
| August 5, 2003<br>D.I. 4152 | 6/1/03 –<br>6/30/03 | $43,824.00 | $1,220.42 (Stroock)<br>$61,755.00 (Chambers) | | $35,059.20 | $62,975.42 |
| September 4, 2003<br>D.I. 4381 | 7/1/03 –<br>7/31/03 | $79,090.50 | $2,301.33 (Stroock)<br>$14,274.25 (Chambers) | | $63,272.40 | $16,575.58 |

3

| | | Payment Requested | | Payment Received | |
|---|---|---|---|---|---|
| September 30, 2003 D.I. 4512 | 8/1/03 – 8/31/03 | $69,927.00 | $1,164.19 (Stroock) $12,488.94 (Chambers) | $55,941.60 | $13,653.13 |
| October 29, 2003 D.I. 4625 | 9/1/03 – 9/30/03 | $69,409.50 | $1,076.94 (Stroock) $10,102.00 (Chambers) | $55,527.60 | $11,178.94 |
| December 19, 2002 D.I. 4843 | 10/1/03 – 10/31/03 | $96,980.50 | $3,800.45 (Stroock) $42,881.50 (Chambers) | $77,584.40 | $46,681.95 |
| January 23, 2003 D.I. 4976 | 11/1/03 – 11/30/03 | $66,428.50 | $1,225.38 (Stroock) $30,463.00 (Navigant f/k/a Chambers) | $53,142.80 | $31,688.38 |
| February 4, 2004 D.I. 5056 | 12/1/03 – 12/31/03 | $52,321.50 | $924.99 (Stroock) $27,005.00 (Navigant f/k/a Chambers) | $41,857.20 | $27,929.99 |
| March 17, 2004 D.I. 5309 | 1/1/04 – 1/31/04 | $65,980.50 | $1,917.93 (Stroock) $47,654.57 (Navigant f/k/a Chambers) | $52,784.40 | $49,572.50 |
| April 6, 2004 D.I. 5406 | 2/1/04 – 2/29/04 | $90,421.50 | $3,636.48 (Stroock) $35,492.50 (Navigant f/k/a Chambers) | $72,337.20 | $39,128.98 |
| April 28, 2004 D.I. | 3/1/04 – 3/31/04 | $103,524.00 | $5,567.34 (Stroock) | $82,819.20 | $5,567.34 |
| June 14, 2004 D.I. 5803 | 4/1/04 – 4/30/04 | $99,136.00 | $3,518.96 (Stroock) $1,515.00 (Navigant February) $49,667.00 (Navigant March) $80,307.11 (Navigant April) | $79,308.80 | $135,008.07 |
| July 2, 2004 D.I. 5917 | 5/1/04 – 5/31/04 | $134,324.50 | $2,409.97 (Stroock) $78,360.05 (Navigant May) | | |
| August 2, 2004 D.I. 6105 | 6/1/04 – 6/31/04 | $120,501.00 | $1,831.49 (Stroock) $62,625.00 (Navigant June) | | |

SSL-DOCS1 1485256v2

**Quarterly Fee Applications**

| Date Filed | Period Covered | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| July 30, 2001 D.I.770 (First) | 4/12/01- 6/30/01 | $369,873.75 | $19,318.00 | $369,873.75 | $19,318.75 |
| November 1, 2002 D.I.1068 (Second) | 7/1/01 – 9/31/01 | $204,923.50 | $15,015.57 | $204,923.50 | $15,015.57 |
| February 8, 2002 D.I.1658 (Third) | 10/1/01 – 12/31/01 | $329,842.00 | $21,880.90 $9,918.43* | $329,842.00 | $21,880.90 (Stroock) $9,918.43 (Chambers) |
| May 16, 2002 D.I.2064 (Fourth) | 01/01/02 – 03/31/02 | $267,170.20 | $6,149.76 $36,352.60* | $266,865.70 | $6,144.85 (Stroock) $22,002.76 (Chambers) |
| August 16, 2002 D.I.2557 (Fifth) | 04/01/02 – 06/30/02 | $245,259.00 | $6,784.97 $167,629.78* | $245,259.00 | $6,784.97 (Stroock) $167,629.78 (Chambers |
| November 18, 2002 D.I.3045 (Sixth) | 07/01/02 – 09/30/02 | $280,471.77 | $28,358.07 $17,814.45* | $224,534.21[1] | $28,358.07 (Stroock)[1] $17,814,45 (Chambers)[1] |
| March 25, 2003 D.I.3549 (Seventh) | 10/01/02 – 12/31/03 | $171,108.00 | $25,000.84 $1,780.75* | $136,886.40[2] | $25,000.84 (Stroock)[2] $1,780.75 (Chambers)[2] |
| May 20, 2003 D.I. 3815 (Eighth) | 1/1/03 – 3/31/03 | $224,358.50 | $9,424.04 $1,077.80* | $224,615.50[3] | $9,424.04 (Stroock)[3] $1,077.80 (Chambers)[3] |

1. ————————————

\*    These amounts relate to the Committee's Asbestos Issues Expert.

[1]    Court Order dated March 14, 2003 approved fees in the amount of $276,535.77 and expenses in the amount of $45,477.52.

[2]    Court Order dated July 28, 2003 approved fees in the amount of $171,108.00 and expenses in the amount of $26,412.62.

[3]    Court order dated September 22, 2003 approved fees in the amount of $224,033.50 and expenses in the amount of $10,410.22.

| August 29, 2003 D.I. 4357 (Ninth) | 4/1/03 – 6/30/03 | $215,903.50 | $2,726.28 $67,628.50* | $215,903.50[4] | $2,726.28 (Stroock)[4] $67,628.50 (Chambers)[4] |
|---|---|---|---|---|---|
| December 5, 2003 D.I. 4778 (Tenth) | 7/1/03 – 9/30/03 | $218,222.00 | $4,339.46 $36,865.19* | $218,222.00[5] | $4,339.46 (Stroock)[5] $36,865.19 (Chambers)[5] |
| March 2, 2004 D.I. 5212 (Eleventh) | 10/1/03 – 12/31/03 | $215,718.50 | $5,950.82 $100,349.50* | $215,718.50[6] | $5,922.67 (Stroock)[6] $100,349.50 (Chambers)[6] |
| May 18, 2004 D.I. 5597 (Twelfth) | 1/1/04 – 3/31/04 | $254,857.00 | $9,965.36 $83,147.07* | $254,857.00 | $9,965.36 (Stroock) $83,147.07 (Chambers) |

1.  ————————————

[4]  Amended court order dated December 23, 2003 approved fees in the amount of $215,903.50 and expenses in the amount of $70,354.78.

[5]  Court order dated April 26, 2004 approved fees in the amount of $218,222.00 and expenses in the amount of $41,204.65.

[6]  Court order dated June 16, 2004 approved fees in the amount of $215,718.50 and expenses in the amount of $106,272.17.

6

**WR GRACE & CO**
**ATTACHMENT B**
**APRIL 1, 2004 - JUNE 30, 2004**

| | Hours | Rate | Amount | No. of Years In Position |
|---|---|---|---|---|
| **Partners** | | | | |
| Greenberg, Mayer | 5.2 | $ 575 | $    2,990.00 | 6 |
| Kruger, Lewis | 55.2 | 750 | 41,400.00 | 42 |
| Neidell, Martin | 3.9 | 725 | 2,827.50 | 31 |
| Pasquale, Kenneth | 77.7 | 575 | 44,677.50 | 14 |
| Speiser, Mark | 28.1 | 695 | 19,529.50 | 23 |
| | | | | |
| **Associates** | | | | |
| Bonitatibus, Kara M. | 17.5 | 270 | 4,725.00 | 2 |
| DiBernardo, Ian G. | 26.9 | 480 | 12,912.00 | 5 |
| Guttmann, Robert | 56.2 | 305 | 17,141.00 | 2 |
| Krieger, Arlene | 242.1 | 525 | 127,102.50 | 20 |
| McEachern Mary E | 134.6 | 395 | 53,167.00 | 5 |
| | | | | |
| **Paraprofessionals** | | | | |
| Butt, Samuel L. | 21.4 | 160 | 3,424.00 | N/A |
| Caskadon, Alexandra | 61.9 | 195 | 12,070.50 | 2 |
| Defreitas, Vaughn | 38.8 | 130 | 5,044.00 | 16 |
| Escobar, Miguel | 13.9 | 160 | 2,224.00 | N/A |
| Mariano, Christine | 1.2 | 180 | 216.00 | 8 |
| Mohamed, David | 10.7 | 130 | 1,391.00 | 15 |
| Nissle, Susan | 2.5 | 170 | 425.00 | 6 |
| Tamaroff, Joshua | 1.0 | 75 | 75.00 | N/A |
| Weis, Christina J. | 14.3 | 160 | 2,288.00 | N/A |
| | | | | |
| **TOTAL** | 813.1 | | $ 353,629.50 | |

**WR GRACE & CO**
**COMPENSATION BY PROJECT CATEGORY**
**APRIL 1, 2004 - JUNE 30, 2004**

| MATTER CODE | PROJECT CATEGORY | HOURS | TOTAL FEES |
|---|---|---|---|
| 0003 | Claim Analysis Objection, Resolution & Estimation (Asbestos) | 47.8 | $ 28,745.00 |
| 0008 | Asset Analysis and Recovery | 127.9 | 50,557.00 |
| 0013 | Business Operations | 4.3 | 2,292.50 |
| 0014 | Case Administration | 155.0 | 59,716.00 |
| 0015 | Claims Analysis/Objections/Administration (Non-Asbestos) | 15.6 | 8,532.50 |
| 0017 | Committee, Creditors', Noteholders', or Equity Holders' | 39.2 | 21,745.00 |
| 0018 | Fee Application, Applicant | 64.2 | 17,934.00 |
| 0020 | Fee Application, Others | 4.1 | 865.50 |
| 0034 | Litigation and Litigation Consulting | 3.4 | 1,845.00 |
| 0036 | Plan and Disclosure Statement | 325.8 | 147,309.50 |
| 0037 | Hearings | 11.1 | 6,725.00 |
| 0040 | Employment Applications - Others | 9.3 | 4,267.50 |
| 0041 | Relief from Stay Proceedings | 0.1 | 52.50 |
| 0047 | Tax Issues | 5.3 | 3,042.50 |
|  |  |  |  |
|  | **TOTAL** | **813.1** | **$ 353,629.50** |

**WR GRACE & CO**
**DISBURSEMENT SUMMARY**
**APRIL 1, 2004 - JUNE 30, 2004**

| | |
|---|---:|
| Outside Messenger Service | $ 145.55 |
| Meals | 1,029.27 |
| Local Transportation | 457.76 |
| Long Distance Telephone | 958.42 |
| Duplicating Costs-in House | 363.90 |
| Process Service & Calendar Watch | 373.79 |
| Word Processing | 108.00 |
| In House Messenger Service | 10.75 |
| Lexis/Nexis | 391.25 |
| Facsimile Charges | 57.00 |
| Travel Expenses - Transportation | (595.60) |
| Westlaw | 4,382.33 |
| Word Processing - Logit | 78.00 |
| | |
| **TOTAL** | **$ 7,760.42** |

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **W. R. GRACE & CO., et al.**[1] | ) | **Case No. 01-01139 (JKF)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

**THIRTEENTH QUARTERLY FEE APPLICATION BY STROOCK & STROOCK & LAVAN LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF W. R. GRACE & CO., et al, FOR INTERIM COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM APRIL 1, 2004 THROUGH JUNE 30, 2004**

Stroock & Stroock & Lavan LLP ("Stroock" or "Applicant"), counsel to the Official

Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co. ("Grace") and its

sixty-one domestic subsidiaries and affiliates that are debtors and debtors-in-possession (the

1. ───────────────

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings. Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

"Debtors") in this Court, for its application pursuant to 11 U.S.C. §§ 330 and 331 and in accordance with the Administrative Fee Order (defined below) for interim allowance of compensation for services rendered and for reimbursement of expenses incurred in connection therewith, respectfully represents as follows:

## INTRODUCTION

1.       By this application, Stroock seeks (i) an interim allowance of compensation for the professional services rendered by Stroock as counsel for the Committee for the period from April 1, 2004 through June 30, 2004 (the "Compensation Period") in the aggregate amount of $353,629.50[2] representing 647.4[2] hours of professional services and 165.7[2] hours of paraprofessional services; and (ii) reimbursement of actual and necessary expenses incurred by Stroock during the Compensation Period in connection with the rendition of such professional services and paraprofessional services in the aggregate amount of $7,760.42, as well as the fees and expenses of the asbestos issues expert employed by the Committee pursuant to the Court's June 22, 2001 Order Authorizing the Retention of Experts (the "Asbestos Issues Expert") in respect of services rendered in the months of February, March, April, May and June of 2004 in the aggregate amount of $272,474.16.[3]

1.    _____

[2]       Amount reflects Stroock's voluntary reduction of $932.00 from the total compensation billed during the Compensation Period relating to 2.4 hours of professional and paraprofessional services.

[3]       $1,515.00 of this amount reflects amounts not yet paid due to a billing error which occurred in connection with the February 2004 services rendered by Navigant Consulting. Payment of the rest of the February 2004 bill was sought in Stroock's Thirty-Fifth Monthly Fee Application and in Stroock's Twelfth Quarterly Fee Application.

2

2.      Venue of this proceeding and this application is proper in this district pursuant to

28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are 11 U.S.C.

§§ 330 and 331 and Federal Rules of Bankruptcy Procedure 2002(a) and 2016.

## BACKGROUND

3.      On April 2, 2001 (the "Petition Date"), each of the Debtors filed voluntary

petitions for reorganization under chapter 11 of the Bankruptcy Code and have continued in the

management and operation of their businesses and property pursuant to §§ 1107 and 1108 of the

Bankruptcy Code. Pursuant to an order of the Court, the Debtors' chapter 11 cases have been

procedurally consolidated and are being jointly administered.

4.      The Debtors operate a world-wide specialty chemicals and materials business and

employ approximately 3860 full and part-time employees. On a consolidated basis, for the fiscal

year 2000, Grace reported a net loss of $89.7 million[4] from $1.59 billion in net revenues. The

Debtors' bankruptcy filings report that in fiscal year 2000, on a consolidated basis, Grace's sales

are generated approximately 50% by the Debtors and 50% by the Debtors' non-debtor

subsidiaries and affiliates.

5.      On April 12, 2001, the United States Trustee formed the Committee. During the

first meeting of the Committee on April 12, 2001, the Committee duly selected Stroock as its

counsel to represent the Committee in all matters during the pendency of the Debtors' Chapter

11 cases. The Committee thereafter approved the retention of Duane, Morris & Heckscher LLP

1.  ───────────────────

[4]    The Debtors' pleadings further reported that this net loss resulted in part from a $294.0 million asbestos-related charge to earnings recorded in the fourth quarter of 2000.

3

(n/k/a Duane Morris LLP) ("DM&H") as its local Delaware counsel. During the Compensation Period, on December 3, 2003, a second amended notice of appointment of the Committee was filed by the United States Trustee.

6.      The United States Trustee also appointed two separate official committees to represent the interests of claimants asserting asbestos-related personal injury claims and asbestos-related property damage claims against the Debtors (collectively, the "Asbestos Claim Committees"). On June 18, 2001, the United States Trustee appointed an official committee to represent the interests of equity security holders of the Debtors (the "Equity Committee").

7.      By application dated May 1, 2001, Stroock sought Court approval for its retention as counsel to the Committee nunc pro tunc to April 12, 2001. The Court signed an order approving Stroock's retention as counsel to the Committee on May 30, 2001.

8.      This is the thirteenth quarterly interim application Stroock has filed with the Court for an allowance of compensation and reimbursement of expenses for services rendered to the Committee. This application is submitted pursuant to the terms of the Administrative Order Under §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, approved by the Court on May 3, 2001 as amended by order dated April 19, 2002 (collectively, the "Administrative Fee Order").

9.      In accordance with the procedures established by the Administrative Fee Order, Stroock had, at the time of filing of this application, received payment from the Debtors for 80% of the fees and 100% of Stroock's expenses requested, and not objected to, in the April 2004 fee

4

statement encompassed within this Compensation Period. The Objection Period for the May fee application has expired with no objection having been filed and a Certificate of No Objection has been filed with the Court. The Objection Period for the June fee application has expired with no objection having been filed and a Certificate of No Objection has been filed with the Court. In addition, Stroock has received payment from the Debtors in the amount of $131,489.11, representing the fees and expenses of Navigant Consulting, Inc. formerly known as Chambers Associates, the Asbestos Issues Expert for the Committee, for the months of March and April 2004 and for part of the month of February 2004, but has not received payment in respect of the fees and expenses of the Asbestos Issues Expert for the months of May or June 2004, or for a portion of its fees and expenses for the month of February 2004. Applicant has received no other payments and no promises for payment from any source for services rendered in connection with these cases for the months encompassing this Compensation Period other than as immediately set forth above. There is no agreement or understanding between the Applicant and any other person (other than members of Stroock) for the sharing of compensation to be received for the services rendered in these cases.

10.     As stated in the Affidavit of Kenneth Pasquale, Esq. annexed hereto as Exhibit "A," all of the services for which interim compensation is sought herein were rendered for and on behalf of the Committee solely in connection with these cases.

## SUMMARY OF SERVICES RENDERED

11.     Since being retained by the Committee, Stroock has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the unsecured creditors of the Debtors' estates. The variety and complexity of these

5

cases and the need to act or respond on an expedited basis in furtherance of the Committee's needs have required the expenditure of substantial time by personnel from several legal disciplines, on an as-needed basis, including in certain instances, working into the evening and on weekends.

12.      Stroock maintains written records of the time expended by attorneys and paraprofessionals in the rendition of their professional services to the Committee.  Such time records were made contemporaneously with the rendition of services by the person rendering such services and in the ordinary course of Stroock's practice, and are presented in compliance with Delaware Local Rule 2016-2(d) amended effective as of September 1, 2002.  A compilation showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services during the Compensation Period is annexed hereto as Exhibit "B".  In addition, Exhibit "C" hereto contains a summary of the hours expended by each of the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

13.      Stroock also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are also available for inspection.  A schedule of the categories of expenses and amounts for which payment is requested is annexed hereto as Exhibit "D".

6

14.    Stroock respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and have directly benefited the creditor constituents represented by the Committee and have contributed to the effective administration of these cases.

15.    The following summary of the services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit "B". Rather, it is merely an attempt to highlight certain of these areas in which services were rendered to the Committee, as well as to identify some of the problems and issues to which Stroock was required to direct its attention.

### Claim Analysis Objection, Resolution & Estimation (Asbestos) -- Category 0003

16.    As previously reported in prior quarterly compensation applications, Stroock reported that articles had began to appear with respect to the efforts and proposals being made by certain members of Congress to enact new legislation to globally address asbestos-related claims and lawsuits asserted against businesses both within, and outside of, bankruptcy. During prior compensation periods, numerous articles were published and Navigant Consulting prepared numerous memoranda discussing the legislation, various proposals amending the draft bill, and addressing those aspects of the legislation which are still the subject of disparate viewpoints.

17.    Congressional activity with respect to asbestos reform legislation continued during the Compensation Period with members of the Senate exchanging proposals and comments on revised legislation in efforts to reach an acceptable compromise. During this Compensation Period, Navigant Consulting prepared numerous memoranda discussing the on-

7

going meetings and negotiations, and forwarded other materials. Stroock reviewed these reports and memoranda, as well as related articles which it found, given that these are areas of direct relevance to these chapter 11 cases, and forwarded memoranda to the Committee on the asbestos-reform legislation.

18.     As previously reported in prior quarterly applications, the Debtors had moved for the appointment of C. Judson Hamlin ("Hamlin") as the legal representative for future asbestos claimants in these chapter 11 cases. The Hamlin appointment motion was filed days after two creditors ("OC Creditors") in the Owens Corning chapter 11 cases filed a motion seeking to have Judge Wolin recused from further participation in those cases (the "OC Recusal Motion"). In support of their Recusal Motion, the OC Creditors pointed to material conflicts they saw in the conduct of Hamlin and David Gross in acting as consultants and advisors to the Court in the Owens Corning cases, while being partisan advocates on many of the very same issues on behalf of the interests of future asbestos claimholders in another pending chapter 11 case, G-1 Holdings, Inc.

19.     The Debtors' proposed appointment of Hamlin was objected to by a number of parties in interest. After Judge Fitzgerald denied the Debtors' motion seeking to suspend consideration of the Hamlin appointment motion until the matters raised by the OC Recusal Motion and the subsequent mandamus petition to the Third Circuit filed by the OC Creditors (the "Mandamus Petition") were determined, the Debtors withdrew the Hamlin appointment motion. During the prior compensation period, Stroock began to participate in discussions regarding the consideration of other potential candidates as the futures representative in these cases, and

8

Stroock began to review information relevant to the Committee's evaluation of each such candidate.

20.    During this Compensation Period, the Debtors filed a motion proposing for the Court's consideration three individuals as candidates to be the futures representative in these cases. Stroock discussed the Debtors' candidates with the Committee, and thereafter prepared a response on behalf of the Committee setting forth the Committee's support for one of the proposed candidates, David Austern. Responses and objections to the Debtors' futures representative motion were filed by other parties in these cases including by each of the other appointed official committees, by Federal Insurance Company and Royal Insurance Company (the "Insurance Companies"), and by the United States Trustee. Stroock reviewed each of the responsive pleadings filed. Following a hearing on Debtors' motion at the May omnibus hearings, the Court entered an order appointing David Austern as the futures representative. The order was thereafter appealed by several of the objecting parties. Stroock reviewed the appellate pleadings. In addition, during this Compensation period, Stroock met with David Austern's proposed counsel to discuss issues in these cases.

21.    In addition, during the Compensation Period, Stroock held an extended meeting with Navigant Consulting to discuss the determination of the Debtor's asbestos liabilities. Stroock also reviewed certain pleadings filed in other mass tort liability cases to assess their impact on these chapter cases. Stroock has expended 47.8 hours on this category for a fee of $28,745.00.

9

## Asset Analysis and Recovery – Category 0008

22.    During this Compensation Period, the financial advisors for the Debtors informed Capstone,[5] the Committee's financial advisors, that the Debtors would be promptly seeking authorization from the Court to advance approximately $55.0 million in cash to a wholly-owned non-Debtor subsidiary, so that such non-Debtor entity could acquire, through a stock purchase, Alltech International Holdings, Inc. and subsidiaries (collectively "Alltech"), a company in the silica pharmaceutical separations business.  Stroock discussed this matter with Capstone, reviewed the materials initially forwarded by the Debtors and their representatives, and with Capstone prepared a request for additional information and documentation from the Debtors and their financial advisors in order to fully evaluate the transaction.  Stroock reviewed additional materials received from the Company, including a proposed and then the final form of stock purchase agreement and the related disclosure schedules, exchanged numerous memoranda with Capstone and the Debtors, and actively participated with such parties in numerous extended conference calls.  The information provided by the Debtors reflected, among other matters, that Alltech was the subject of a pending patent infringement suit.  In order to evaluate the merits of the litigation, and the potential monetary and operational impact on Alltech and Grace from the litigation and any adverse judgment that might be rendered therein, among other issues, Stroock

1.    —————————————

[5]    As reflected in the description of the services rendered in matter Category -- 0040 – Employment Applications – Other, the restructuring professionals at FTI who had been rendering services for the Committee left FTI during the prior compensation period and the Committee determined to retain Capstone Corporate Recovery, LLC ("Capstone") as its financial advisors, and to continue to utilize the tax professionals at FTI.  An application was filed on behalf of the Committee seeking to retain Capstone and make the Capstone retention effective, nunc pro tunc, to February 4, 2004.  A consent order approving the Committee's retention of Capstone was entered by the Court during the Compensation Period.  The order also reflects the Committee's continued retention of FTI Consulting, Inc., as financial advisors, in respect of tax related services performed for the Committee.  This Application makes reference to the financial advisory services performed on behalf of the Committee as having been performed by Capstone.

10

reviewed all relevant pleadings from the litigation docket, exchanged numerous memoranda, and had numerous conference calls with Debtors' patent counsel familiar with this matter, and reviewed case law relevant to infringement damages, royalty rates and other issues raised by the litigation. Stroock also reviewed case law relevant to a court's considering the use by a non-debtor of substantial assets of its debtor-affiliate. As is also reflected in the services rendered by Stroock in matter Category 0017 – Creditors' Committee, Stroock prepared several memoranda for the Committee on this transaction and discussed this matter with the Committee following a conference call presentation on the proposed transaction by the Debtors' representatives to the Committee. Stroock has expended 127.9 hours on this category for a fee of $50,557.00.

### Business Operations -- Category 0013

23.     During this Compensation Period, Stroock reviewed the Company's first quarter 2004 operating results and Capstone's draft report to the Committee thereon, discussed with Capstone those reports, and the Debtors' cash position, business performance and projections for the year. In addition, during this Compensation Period, Stroock reviewed the motion filed by the Commonwealth of Massachusetts seeking to setoff alleged environmental liabilities owed by the Debtors against a tax refund to the Debtors, and the Debtors' objection thereto. Stroock has expended 4.3 hours on this category for a fee of $2,292.50.

### Case Administration -- Category 0014

24.     As reported in prior monthly compensation applications, towards the end of the November 2001 compensation period, Stroock was informed that these chapter 11 cases were being reassigned to District Court Judge Alfred Wolin. A number of orders were issued during the month of December 2001 relating to the reassignment of these cases to Judge Wolin and the

11

reference of these cases to Judge Judith Fitzgerald. As discussed below, during this

Compensation Period, Judge Wolin was recused from these cases and the cases were reassigned

to District Court Judge Ronald L. Buckwalter.

25.     During the Compensation Period, Stroock continued to closely monitor the items

on the Court's general chapter 11 docket for these cases, as well as those dockets relating to each

of the adversary proceedings pending in these chapter 11 cases, to ensure that the Committee was

fully informed about all pending motions and adversary proceedings and that Stroock would be

ready to timely respond on behalf of the Committee, as might be applicable. Stroock continued

to engage Debtors' counsel and Capstone on an on-going basis with respect to pending matters

and information requests, reviewed agenda letters prepared for Judge Fitzgerald during the

Compensation Period in respect of the hearings scheduled to be held each month during the

period, reviewed transcripts from hearings already held before the Court, if relevant to matters

currently pending, and responded to inquiries from unsecured creditors with respect to the status

of these cases generally, the Debtors' request to further extend their exclusive periods to file

reorganization plans and the Court's ruling thereon, the Recusal Proceedings and the Third

Circuit's decision thereon, the status of the ZAI science trial litigation and other plan-related

matters.

26.     In addition, as reported in prior compensation periods, a motion to recuse Judge

Wolin from further participation in the Owens Corning cases was filed by two creditors in those

cases, based in part on alleged conflicts held by C. Judson Hamlin and David Gross in acting as

advisors and consultants to Judge Wolin in the Owens Corning cases while acting as partisan

advocates in another pending asbestos-related chapter 11 case. The OC Recusal Motion was

12

quickly followed by the OC Creditors' discovery requests and subpoena's against Grace, among others parties, orders issued by Judge Wolin, which among other matters, withdraw the reference on these matters and stayed further proceedings before him in the Owens Corning Cases, the Grace cases and the three other chapter 11 cases pending before him, the filing by the OC Creditors of the Mandamus Petition to the Third Circuit Court of Appeals, the issuance of several orders by the Third Circuit, and the filing by an ad hoc group of bank debt creditors in the Grace chapter 11 cases (the "Ad Hoc Grace Creditors") of a motion to have Judge Wolin recused from further proceedings in these Grace chapter 11 cases and subsequently, of a mandamus petition to the Third Circuit. (These and all other related motions, petitions, briefs, replies, orders and hearings are hereinafter referred to in this Application collectively as the "Recusal Proceedings"). As reported during the prior compensation period, Judge Wolin had heard argument on the Recusal Proceedings and issued a decision denying the recusal motions.

27.     During the beginning of the Compensation Period, the Third Circuit heard oral argument on the Recusal Proceedings and on May 17, 2004 issued writs of mandamus recusing Judge Wolin from the Grace chapter 11 cases as well as from certain other pending asbestos-related cases. Stroock reviewed the transcript of the argument before the Third Circuit, reviewed the Third Circuit's decision and discussed this matter with the Committee.

28.     Thereafter, during the Compensation Period, the Grace chapter 11 cases were reassigned to Judge Ronald L. Buckwalter. Stroock reviewed biographical information on Judge Buckwalter and decisions issued by the court, and communicated information on Judge Buckwalter to the Committee. During the Compensation Period, Judge Buckwalter issued an order directing each of the official committees appointed in these cases, the Debtors, and other

13

parties, to provide a status report of the major issues in these cases. Stroock prepared a status report on behalf of the Committee and reviewed those filed by other parties. Stroock also expended services during the Compensation Period reviewing other filed pleadings relating to the recusal of Judge Wolin and the arguments asserted in the Recusal Proceedings, given their direct impact or potential impact on these chapter 11 cases including the motion filed by Sealed Air Corporation to set aside the "solvency" decision issued by Judge Wolin in July 2002, in connection with the fraudulent conveyance litigation. Stroock has expended 155.0 hours on this category for a fee of $59,716.00.

### Claims Analysis, Objection and Resolution (Non-Asbestos) -- Category 0015

29.     During the Compensation Period, the Debtors filed a motion seeking to establish an alternative dispute resolution program (the "ADR Motion"). Stroock reviewed the ADR Motion as filed, engaged Debtors' counsel in extended discussions during which it raised concerns with provisions of the ADR program, reviewed Debtors' proposed revised ADR Program, and prepared extensive memoranda commenting on the proposed revised program and continuing issues for the Committee to consider. Stroock also reviewed the omnibus objections to claims filed by the Debtors during the Compensation Period.    Stroock has expended 15.6 hours on this category for a fee of $8,532.50.

### Committee, Creditors' Noteholders' or Equity Holders' -- Category 0017

30.     During the Compensation Period, Stroock communicated with the members of the full Committee through numerous memoranda and telephone conversations, including through several conference call meetings of the Committee, including one where the Committee was joined by representatives of the Debtors. In order to keep the Committee fully informed of all of

14

the pending matters in these cases, and thus enable the Committee to take informed positions on issues, Stroock reviewed and summarized the motions filed by the Debtors and other parties in interest in these cases, raised issues the Committee should be aware of, and made recommendations to the Committee concerning appropriate actions to be taken with regard to the motions, communicated with members of the Committee regarding the positions to be taken, engaged counsel for the Debtors, and other parties and movants, as applicable, with the Committee's questions and concerns, and negotiated whenever and to the extent possible consensual resolutions of outstanding issues and acceptable forms of proposed orders.

31.    The motions, agreements, and other materials Stroock reviewed during the Compensation Period, prepared memoranda to the Committee on and discussed with the Committee, as applicable, included, among other matters, (i) a proposed hypothetical recovery analysis for the Debtors and the plan-related discussions had with the Debtors; (ii) the motion filed by the Debtors seeking approval for their proposed alternative dispute resolution program; (iii) the Debtors' motion for authority to advance funds for the acquisition of Alltech by a non-Debtor subsidiary; (iv) the Debtors' motion to further extend their exclusive periods, the objection filed thereto, and the Court's decision; (v) the Debtors' motion for the appointment of a legal representative for future asbestos claimants in these cases, the Committee's position thereon, the Court's ruling and the appeals taken therefrom; (vi) the argument in respect of the Recusal Proceedings before the Third Circuit, the decision rendered by the Court, and other related pleadings, and (vii) information with respect to Judge Buckwalter.

32.    In addition, Stroock continued to keep the Committee informed with respect to pleadings filed in, and decisions issued by, this and other Courts, in respect of other asbestos-

15

related chapter 11 cases, aside from the Recusal Proceedings, and with respect to articles and reports in respect of the legislative attempts to address the resolution of asbestos claims on a national basis, all of which have particular relevance to these cases.

33.     Through its correspondence and communication with the Committee, Stroock has assisted the Committee in fulfilling its statutory duties to make informed decisions and express the Committee's views regarding the issues which have arisen in these cases. Stroock has expended 39.2 hours on this category for a fee of $21,745.00.

### Fee Application, Applicant -- Category 0018

34.     During the Compensation Period, Stroock prepared its fee statements for the months of February 2004, March 2004, April 2004 and May 2004 and related notices and certifications of no objection. Stroock also prepared its Twelfth Quarterly Fee Application covering the period from January 1, 2004 through March 31, 2004 (the "Prior Compensation Application"), including a narrative section summarizing the services rendered during that period by Stroock and numerous fee and expense schedules, as required by the Administrative Fee Order entered by the Court. Stroock has expended 64.2 hours on this category for a fee of $17,934.00

### Fee Application, Others -- Category 0020

35.     During the Compensation Period, Stroock reviewed and discussed with FTI Consulting such professional's twelfth quarterly fee application and discussed with Capstone its filing of fee statements and applications going forward. Stroock has expended 4.1 hours on this category for a fee of $865.00.

16

## Litigation and Litigation Consulting – Category 0034

36.     As reported in prior compensation applications, the parties had reported a tentative settlement of the fraudulent transfer litigation with Sealed Air Corporation and with Fresenius Medical Care Holdings Inc.  Further, such prior applications reported that while a definitive settlement agreement had been prepared and approved by the Court with respect to Fresenius, the parties had not yet prepared and circulated a final form of settlement agreement with respect to the tentative agreement with Sealed Air.  On July 29, 2002, Judge Wolin issued a solvency standards opinion ruling that asbestos claims filed after the date of the transfer of the assets which are at issue could be considered in determining the Company's solvency.  As already reported in Category – 0003 Claims Analysis Objection, Resolution & Estimation (Asbestos), subsequent to the Third Circuit's decision recusing Judge Wolin from these Chapter 11 cases, Sealed Air filed a motion to vacate the Court's July 2002 opinion.  The Asbestos Committees filed a response to the Sealed Air motion. Stroock reviewed these pleadings. Stroock has expended 3.4 hours on this category for a fee of $1,845.00.

## Plan and Disclosure Statement – Category 0036

37.     This Compensation Period was a period during which Stroock expended substantial time and effort evaluating alternative structures for a plan of reorganization in these cases.  Stroock continued to review and discuss with Capstone a revised hypothetical recovery analysis for these chapter 11 cases that it had begun to discuss during the prior period.  In addition, at the beginning of the period, the Debtors approached Stroock with respect to the preparation of a proposed reorganization plan that could be supported by the Committee.  In connection therewith, Stroock held discussions with the Debtors and their representatives to

17

explore potential plan structures and conducted research on the numerous legal issues which have an impact on a plan's structure and other plan-related matters under the specific circumstances in these cases. Following the May 2004 omnibus hearing, the Court issued an order directing the Debtors to file a plan no later than October 14, 2004. Stroock expects to continue its heightened plan activity into the next compensation period. Stroock expended 325.8 hours on this category for a fee of $147,309.50.

### Hearings – Category 0037

38.     During the Compensation Period three hearings were scheduled and agenda notices were issued. Only one hearing, however, was held during the Compensation Period, during which the Court heard extended argument on, among other matters, the Debtors' motion seeking to extend its exclusive periods, to which the asbestos personal injury committee had objected, and the Debtors' motion for appointment of a futures representative, which as discussed in Category – 0003, the Committee filed a response to and a number of other parties filed responses or objections to. Stroock reviewed all relevant pleadings and documentation in advance of the hearings. Stroock expended 11.1 hours on this category for a fee of $6,725.00.

### Employment Applications – Others – Category 0040

39.     As reported in the prior compensation period application, Stroock was informed that the restructuring professionals at FTI, but not the tax professionals, who had been rendering services for the Committee had left that firm and were now employed by Capstone Corporate Recovery, LLC ("Capstone"). Stroock discussed this matter with the Committee, which determined that it wanted those restructuring professionals now at Capstone to render financial advisory services to the Committee. The motion and related pleadings prepared on behalf of the

18

Committee seeking to retain Capstone as the Committee's financial advisors, and to continue to utilize the services of FTI's tax professionals were filed in the prior compensation period, in February 2004. During this Compensation Period, the United States Trustee filed a limited objection to the application. Stroock discussed the objection with the United States Trustee, discussed the United States Trustee's concerns with Capstone and the Committee, prepared a revised retention order resolving the objection and discussed this matter with Debtors' counsel. An order was entered approving the retention of Capstone in June 2004. Stroock expended 9.3 hours on this category for a fee of $4,267.50.

### Relief from Stay Proceedings -- Category 0041

40.     During the Compensation Period, Stroock reviewed the lift stay motion filed by Baker Hughes Oilfield Operations, Inc. and discussed the motion with Debtors' counsel. Stroock expended 0.1 hours on this category for a fee of $52.50.

### Tax Issues -- Category 0047

41.     The services rendered in this category during the Compensation Period related to a hypothetical valuation analyses for the Debtors and issues in respect of the Debtors' proposed acquisition of Alltech, which is described in matter Category -- 0008. Stroock expended 5.3 hours on this category for a fee of $3,042.50.

## FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

42.     The factors to be considered in awarding attorneys fees have been enumerated in In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), reh'g denied, 547 F.2d 573, cert. denied, 431 U.S. 904; these standards have been adopted by most courts. Stroock

19

respectfully submits that a consideration of these factors should result in this Court's allowance of the full compensation sought.

The Time and Labor Required. The professional services rendered by Stroock on behalf of the Committee have required the expenditure of substantial time and effort, as well as a high degree of professional competence and expertise, in order to deal with the complex issues encountered by the Committee with skill and dispatch. Occasionally, Stroock has been required to perform these services under significant time constraints requiring work late into the evening and on weekends. The services rendered by Stroock were performed efficiently, effectively and economically.

The Novelty and Difficulty of Questions. Novel and complex issues have already arisen in the course of these Chapter 11 cases, and it can be anticipated that other such issues will be encountered. In this case, as in many others in which the firm is involved, Stroock's effective advocacy and creative approach have helped clarify and resolve such issues and will continue to prove beneficial.

The Skill Requisite to Perform the Legal Services Properly. Stroock believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Stroock's practice, and its creative approach to the

20

resolution of issues, are and will continue to contribute to the
maximization of the distributions to the Debtors' unsecured creditors.

<u>The Preclusion of Other Employment by Applicant Due to Acceptance of
the Case</u>. Due to the size of Stroock's insolvency department, Stroock's
representation of the Committee has not precluded its acceptance of new
clients. However, the volume of the matters needing attention on a
continuing basis has required several of the attorneys to commit
significant portions of their time to these cases.

<u>The Customary Fee</u>. The fee sought herein is based upon Stroock's
normal hourly rates for services of this kind. Stroock respectfully submits
that the fee sought herein is not unusual given the magnitude and
complexity of these cases and the time expended in attending to the
representation of the Committee, and is commensurate with fees Stroock
has been awarded in other cases, as well as with fees charged by other
attorneys of comparable experience.

<u>Whether the Fee is Fixed or Contingent</u>. Pursuant to §§ 330 and 331 of
the Bankruptcy Code, all fees sought by professionals employed under
§ 1103 of the Code are contingent pending final approval by this Court,
and are subject to adjustment dependent upon the services rendered and
the results obtained.

21

<u>Time Limitations Imposed by Client or Other Circumstances</u>.  As already indicated, Stroock has attended to the various issues arising in these cases. Occasionally, Stroock has had to perform those services under significant time constraints requiring attorneys assigned to these cases to work evenings and on weekends.

<u>The Amount Involved and Results Obtained</u>.  Through the efforts of Stroock, the Committee has been an active participant in these Chapter 11 cases from the very first days of its formation, and its assistance, as well as constructive criticism, has greatly contributed to the efficient administration of these cases.

<u>The Experience, Reputation and Ability of the Attorneys</u>.  Stroock has one of the largest and most sophisticated insolvency practices in the nation and has played a major role in numerous cases of national import including: <u>Acme Metals, Inc</u>., <u>Hillsborough Holdings Corporation</u>, <u>Laclede Steel Company</u>, <u>Gulf States Steel, Inc. of Alabama</u>, <u>The LTV Corporation</u>, <u>Wheeling-Pittsburgh Steel Corporation</u>, <u>Allis-Chalmers Corporation</u>, <u>The Charter Company</u>, <u>Federated Department Stores</u>, <u>G. Heileman Brewing Company, Inc</u>., <u>Burlington Motor Holdings, Inc</u>., <u>Metallurg, Inc</u>., <u>Forstmann & Company, Inc</u>., <u>Barneys, Inc</u>., <u>Fruehauf Trailer Corporation</u>, <u>Levitz Furniture Incorporated</u>, <u>The Columbia Gas System, Inc</u>., <u>JWP, Inc</u>., <u>Flushing Hospital and Medical Center</u>, <u>Planet Hollywood International</u>, <u>Anchor Glass Container Corporation</u>, <u>Beloit Corporation</u> in the

22

Harnischfeger Industries Chapter 11 Cases, RSI, COM U.S.A. Inc. USG
Corporation, Formica Corp. Galey & Lord, Inc. and DESA Holdings.
Stroock's experience enables it to perform the services described herein
competently and expeditiously. In addition to its expertise in the area of
corporate reorganization, Stroock has already frequently called upon the
expertise of its partners and associates in the litigation, ERISA, tax and
environmental law areas to perform the wide ranging scope of the legal
work necessitated by these cases.

The "Undesirability" of the Case. These cases are not undesirable, but as
already indicated, have required a significant commitment of time from
several of the attorneys assigned hereto.

Nature and Length of Professional Relationship. As described above,
Stroock has been actively rendering services on behalf of the Committee
as necessary and appropriate from April 12, 2001 through to the present.

## ALLOWANCE OF COMPENSATION

43.     The professional services rendered by Stroock required a high degree of
professional competence and expertise so that the numerous issues requiring evaluation and
determination by the Committee could be addressed with skill and dispatch and have, therefore,
required the expenditure of substantial time and effort. It is respectfully submitted that the
services rendered to the Committee were performed efficiently, effectively and economically,
and the results obtained to date have benefited the Debtors' unsecured creditor body as a whole
and the Debtors' estates.

23

44.     With respect to the level of compensation, § 330 of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person (including attorneys for a creditors' committee): "Reasonable compensation for actual necessary services rendered by [such] . . . professional person. 11 U.S.C. § 330. Section 330 further states that the court should take into consideration, inter alia, the nature, extent, and value of services performed, as well as the cost of comparable services other than in a case under this title. Id. The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

45.     The total time spent by Stroock attorneys and paraprofessionals during the Compensation Period for which Stroock seeks payment was 813.1 hours. Such services have a fair market value of $353,629.50. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

46.     As shown by this Application and supporting documents, Applicant spent its time economically and without unnecessary duplication of time. Attached hereto as Exhibit "C" are summaries of the hours expended by the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

47.     In addition, Stroock incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of $7,760.42 for which Stroock respectfully requests reimbursement in full. Charges for Westlaw and Lexis/Nexis in the aggregate amount of $4,773.58 were incurred in substantial part in connection with Stroock's

24

research of plan-related legal issues, and of legal issues relating to the proposed transaction with Alltech, and with Stroock obtaining information on Judge Buckwalter.

48.    The disbursements and expenses have been incurred in accordance with Stroock's normal practice of charging clients for expenses clearly related to and required by particular matters.  Such expenses were often incurred to enable Stroock to devote time beyond normal office hours to matters, which imposed extraordinary time demands.  Stroock has endeavored to minimize these expenses to the fullest extent possible.

49.    Stroock's billing rates do not include charges for photocopying, telephone and telecopier toll charges, computerized research, travel expenses, "working meals", secretarial overtime, postage and certain other office services, because the needs of each client for such services differ.  Stroock believes that it is fairest to charge each client only for the services actually used in performing services for it.  Stroock has endeavored to minimize these expenses to the fullest extent possible.

50.    Stroock charges $.10 per page for in-house photocopying services, with respect to computerized research services Stroock charges the actual cost from the vendor, and $1.00 per page for out-going facsimile transmissions.  Stroock does not charge for incoming facsimiles.

51.    Further, in accordance with the Court's June 22, 2001 Order Authorizing the Retention of Experts, this Application seeks payment for the fees and expenses of Navigant Consulting, the asbestos issues expert engaged by the Committee, in the aggregate amount of $272,474.16, for the services rendered on behalf of the Committee in the months of March, April, May and June 2004 and to correct a billing error with respect to services rendered in

25

February 2004. See footnote 3. No agreement or understanding exists between Stroock and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

52.    Stroock has reviewed the requirements set forth in Delaware Local Rule 2016-2, entitled "Motion for Compensation and Reimbursement of Expenses," and believes that this application for interim compensation and reimbursement of expenses is fully in compliance with the rules set forth therein.

53.    No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period other than as set forth herein.

**WHEREFORE,** Stroock respectfully requests, pursuant to the Administrative Fee Order and the Court's June 22, 2001 Order Authorizing the Retention of Experts:

the allowance of compensation for professional services rendered to the Committee during the period from April 1, 2004 through and including June 30, 2004 in the amount of $353,629.50;

the reimbursement of Stroock's out-of-pocket expenses incurred in connection with the rendering of such services during the period from April 1, 2004 through and including June 30, 2004 in the amount of $7,760.42;

the payment of the fees and expenses of the asbestos issues expert employed by the Committee for the months of March, April, May and June 2004 and, to the extent applicable, February 2004 in the aggregate amount of $272,474.16;

26

authorizing and directing the Debtors to pay to Stroock each of the amounts set

forth in (a) (b) and (c) of this WHEREFORE clause (to the extent not already paid

pursuant to the Administrative Fee Order); and

granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
August **26** 2004

STROOCK & STROOCK & LAVAN LLP


Kenneth Pasquale
A Member of the Firm
180 Maiden Lane
New York, New York 10038-4982
(212) 806-5400

Co-Counsel for the Official Committee of
Unsecured Creditors of W. R. Grace & Co., et al.

27