IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**Hearing Date: October 25, 2004 at 12:00 p.m.**
**Objection Deadline: October 8, 2004 at 4:00 p.m.**

## DEBTORS' OBJECTION TO CERTAIN CLAIMS FILED BY THE MASSACHUSETTS DEPARTMENT OF ENVIRONMENTAL PROTECTION

The Debtors hereby file this objection to certain claims that were filed by the

Massachusetts Department of Environmental Protection (the "MADEP") against the Debtors'

estates (the "Objection"). In support thereof, the Debtors state the following:

---

[1]  The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1.      This Court has jurisdiction over this matter under 28 U.S.C. § 1334.  This

matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A) and (O).

2.      The statutory bases for the relief requested herein are 11 U.S.C. §§ 105(a)

and 502.

## Facts and Background

3.      On April 2, 2001 (the "Petition Date"), each of the Debtors in these

chapter 11 cases filed a voluntary petition for relief under chapter 11 of title 11 of the United

States Code (the "Bankruptcy Code") commencing their respective chapter 11 cases

(collectively, the "Chapter 11 Cases").  The Chapter 11 Cases have been consolidated pursuant

to sections 1107(a) and 1108 of the Bankruptcy Code for administrative purposes only, and the

Debtors continue to operate their businesses and manage their properties as debtors in

possession.

4.      By an order dated April 25, 2002 (the "Bar Date Order"), this Court set

March 31, 2003 as the last date for filing proofs of claim for all claims relating to asbestos

property damage, non-asbestos claims (including all governmental claims), and medical

monitoring claims.

5.      On March 31, 2003, the Massachusetts Department of Environmental

Protection (the "MADEP") filed proofs of claim against each of the following Debtors: (i) W.R.

Grace & Co., (ii) W.R. Grace & Co.-Conn., and (iii) Grace Energy Corporation.  The Debtors'

notice agent has designated these claims as Claim #12848, #12849 and #13487, respectively

(collectively, the "MADEP Claims," copies of which are attached hereto as Exhibit A, Exhibit B,

2

and Exhibit C). The MADEP Claims seek recovery for oversight, contractor, and future-remediation costs that are allegedly owed by the Debtors to the MADEP in connection with the following sites within the Commonwealth of Massachusetts: (i) Former Zonolite Plant Site (Easthampton, MA), (ii) Daramic Plant Site (Acton, MA), (iii) W.R. Grace Plant Superfund Site (Acton, MA), (iv) Cambridge Plant Site (Cambridge, MA), (v) Woburn, MA, Source Area and Central Area, (vi) Blackburn & Union Privileges Site (Walpole, MA), (vii) Parcel 2322 Debris Area off Knox Trail Site (Concord Debris Area), and (viii) the MMR Pipeline Site (Sandwich, MA).

6.      The MADEP Claims are allegedly based upon federal and state laws, including the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9606, et seq.("CERCLA"), the Massachusetts Oil and Hazardous Material Release Prevention and Response Act, Mass. G.L. c. 21E, the Massachusetts Contingency Plan "MCP"), 310 C.M.R. §§ 40.0000, et seq., and the Timely Action Schedule and Fee Provisions, 310 C.M.R. §§ 4.00, et seq.

7.      The MADEP Claims assert $42,134,987.26 total unsecured-claims, including $799,418.84 for allegedly unreimbursed pre-petition response costs and fees.[2] For the reasons discussed below, the Debtors request that this Court: (i) disallow Claim #12848 as

---

[2] On March 19, 2004, the MADEP filed a motion to setoff the MADEP's asserted pre-petition response costs and fees against amounts that will shortly be owed to the Debtors by the Massachusetts Department of Revenue for tax overpayments made by the Debtors for tax-year 1986. The motion was heard during the Debtors' May omnibus hearing, at which time (i) the Debtors indicated that they planned on objecting to the MADEP Claims, and (ii) the Court directed the Debtors to file any such objections.

duplicative, (ii) disallow Claim #13847 as duplicative, and (iii) reduce and, to the extent

applicable, reclassify Claim #12849 to a prepetition non-priority claim in the total amount of

$78,889.34. A summary of the MADEP Claims and the reductions sought in this Objection is

attached hereto as Exhibit D.

## The Objections

a. **General Objections**

    i. **Duplicative Claims**

    8. The Debtors seek the disallowance of Claim #12848 and #13487 because

they are entirely duplicative of Claim #12849. Claim #12848 asserts *exactly the same* claims as

Claim #12849, except that Claim #12848 is asserted against W.R. Grace & Co., and Claim

#12849 is asserted against W.R. Grace & Co.-Conn. Claim #13487 raises *exactly the same*

*claims* that are already asserted in #12849, except that Claim #13487 is asserted against Grace

Energy Corporation, and Claim #12849 is asserted against W.R. Grace & Co.-Conn. The

Debtors believe that the amounts sought in these Claims are properly asserted only against W.R.

Grace & Co-Conn., which is the entity that controls the business of its parent, W.R. Grace & Co,

which is a holding company.

    9. Further, it is highly unlikely that the specific entity named in each of the

MADEP Claims will be relevant for purposes of any potential distribution made on account of

the MADEP Claims pursuant to the Debtors' anticipated chapter 11 reorganization plan (the

"Plan"). The Debtors anticipate that the Plan will provide for the substantive consolidation of all

of the Debtors for purposes of the Plan. Accordingly, all of the Debtors' collective assets will

likely be available to satisfy their collective liabilities. The Debtors anticipate filing their Plan

4

no later than this Court's October 14, 2004 deadline. Given the likelihood that the Debtors'

estates will be substantively consolidated for purposes of their Plan, the Debtors request that the

Court disallow Claims #12848 and #13487. However, in the unlikely event that the Debtors'

estates are not substantively consolidated for purposes of the Plan, the Debtors will agree and

acknowledge that the MADEP reserves its rights to raise certain claims against W.R. Grace &

Co. and Grace Energy Corp., as applicable.

        10.     The disallowance of Claims #12848 and #13487 at this time will allow the

Debtors to more accurately reflect the number of, and potential liability for, outstanding claims

in their claims registry. Further, the disallowance of Claims #12848 and #13487 will not

prejudice the MADEP because (as noted above) the Debtors agree and acknowledge that the

MADEP reserves its right to assert certain claims against each of the respective Debtor entities in

the event the Chapter 11 Cases are converted or the relevant estates are not substantially

consolidated pursuant to a confirmed Plan.

        **ii.**     **Alleged Priority**

        11.     The Debtors object to each of the MADEP Claims to the extent they seek

any sort of administrative or other priority under 11 USC. §507.

        12.     It is unclear whether the MADEP believes it is entitled to administrative or

other priority for any of the amounts sought in the MADEP Claims. The MADEP marked the

"UNSECURED NONPRIORITY CLAIMS" box on the face of each Proof of Claim Form. The

supporting documentation for each of the MADEP Claims, however, states that, "The

Commonwealth is entitled to administrative expense priority, and may file an administrative

expense application at the appropriate time, for the cost of post-petition response action costs it

5

incurs in connection with property of the estate, costs of complying with the Debtor's injunctive

obligations, post-petition Annual Compliance Assurance Fees, and for any post-petition

penalties. The remainder of the Commonwealth's claim is filed as a general unsecured claim."

Paragraph 9 of Exhibit A to each of the MADEP Claims. Therefore, it is unclear what, if any,

portion of the MADEP Claims are being asserted as administrative or other priority claims.

13.     The MADEP is not entitled to administrative or other priority for any of

the amounts sought in the MADEP Claims. First, the MADEP has not provided any information

or documentation that would support the proposition that any portion of the MADEP Claims

constitute, "actual, necessary costs and expenses of preserving the estate, including wages,

salaries, or commissions for services rendered after the commencement of the case" as required

for administrative priority under 11 U.S.C. §503(1)(A). Further, the MADEP could not satisfy

this burden because all of the asserted claims (regardless of whether the underlying amounts

were expended by the MADEP before the Petition Date or after the Petition Date) relate to

Grace's pre-petition conduct and, therefore, such amounts (i) arose before the Petition Date and

(ii) are pre-petition claims. Therefore, to the extent that the MADEP seeks administrative or any

other priority with respect to any of the amounts asserted in the MADEP Claims, they have

failed to adequately assert and/or properly substantiate, such priority.

b.      **Specific Objections**

i.      **Former Zonolite Plant Site (Easthampton, MA)**

14.     Claim #12849 asserts unsecured nonpriority-claims totaling $195,456.60 for Grace's Former Zonolite Plant Site.[3]  In particular, the MADEP seeks: (i) $150,000 for future remediation costs, (ii) $1,300 for post-petition compliance assurance fees, (iii) $42,293.39 for pre-petition oversight costs, and (iv) $1,863.21 for post-petition oversight costs (a spreadsheet summary is attached hereto as Exhibit E).

15.     The Debtors object to the asserted future remediation costs ($150,000) because they are duplicative of claims that have (or could have) been asserted against the Debtors' estates by the current owners of the affected property.  The Debtors do not own this site, and the current owner, Olden Limited Partnership, also filed a claim for this site.  Therefore, the MADEP may never actually expend funds to cleanup this site, and, to the extent the MADEP does expend such funds, they may call upon Olden Limited Partnership for reimbursement.

16.     The Debtors object to the asserted post-petition claims for annual compliance and oversight costs.  These claims related to prepetition liabilities and are no more than prepetition, non-priority, unsecured claims.

---

[3]  In these Specific Objections, the Debtors refer only to Claim #12849.  As noted above, the Debtors seek disallowance of Claims #12848 and #13487.  To the extent the Court does not disallow either of those Claims, the Debtors assert each of the Specific Objections, as applicable, to Claim #12848 and #13487, respectively.

7

17.    Therefore, with respect to the Former Zonolite Plant Site, the Debtors request that this Court (i) reduce Claim #12849 by $151,300 and (ii) allow an unsecured nonpriority claim in the amount of $44,156.60.  See Exhibit D.

      **c.**    **Daramic Plant Site (Acton, MA)**

18.    Claim #12849 asserts unsecured nonpriority claims for the Daramic Plant Site totaling $130,200.  In particular, the MADEP seeks: (i) $125,000 for future remediation costs and (ii) $5,200 for both prepetition and postpetition annual compliance assurance fees (a spreadsheet summary is attached hereto as Exhibit F).

19.    The Debtors object to the future remediation amounts ($125,000) because (i) the Debtors own this site, (ii) they are currently performing remediation at this site, (iii) they are subject to closure requirements under the Massachusetts Contingency Plan obligating them to complete this remedy, and (iv) they are committed to continuing their investigation and remediation at this site.  Therefore, it is highly unlikely that MADEP will ever incur such costs, and Claim #12849 should be reduced by $125,000 with respect to Daramic Plant Site.

20.    The Debtors object to the asserted $3,900 in postpetition annual compliance fees.  The Claim is related to prepetition liability and as such is no more than a prepetition, non-priority unsecured claim.

21.    Therefore, with respect to the Daramic Plant Site, the Debtors request that this Court (i) reduce Claim #12849 by $125,000 and (ii) allow an unsecured nonpriority claim in the total amount of $5,200.  See Exhibit D.

**d.   W.R. Grace Plant Superfund Site (Acton, MA)**

22.    Claim #12849 asserts unsecured nonpriority-claims totaling

$25,741,003.30 for the W.R. Grace Plant Superfund Site in Acton, MA.  In particular, the

MADEP seeks: (i) $25,000,000 for future remediation costs, (ii) $244,542.81 for pre-petition

contractor costs, (iii) $465,099.23 for pre-petition oversight costs, (iv) $18,367.72 for post-

petition contractor costs, and (v) $12,993.54 for post-petition oversight costs (a spreadsheet

summary is attached hereto as Exhibit G).

23.    The Debtors object to the future remediation amounts ($25,000,000)

because (i) the Debtors own the property where the release occurred, (ii) they are currently

performing remediation at this site, and (iii) they are subject to a judicially-approved consent

decree with the EPA and an administrative order issued by the MADEP, both of which require

Grace to perform necessary response actions.  Therefore, it is remote and highly speculative that

the MADEP will ever incur such costs, and Claim #12849 should be reduced by $25,000,000.

24.    The $244,542.81 sought for pre-petition contractor costs should be

disallowed.  First, approximately $208,000 of such claim relates to costs that were allegedly

incurred by the MADEP prior to 1998 and were resolved by the terms of a 1997 Partial Consent

Decree between Grace and the EPA, which settled past response costs through December 31,

1997, including State oversight costs.  Second, to the extent the MADEP seeks contractor

oversight costs incurred between January 1, 1998 and the petition date, the Court should deny

MADEP's claim because the agency has not stated a basis for its right to such recovery and has

previously stated to Debtors that such contractor costs are not recoverable.  The MADEP has

never sought recovery for contractor costs (the asserted costs go as far back at 1986), and, during

9

multiple conversations with the Debtors, the MADEP has repeatedly stated that they did not intend to seek such costs.

25.     The Court should also expunge $461,848.16 of the $465,099.23 claim that the MADEP has asserted for pre-petition oversight costs, which includes: (i) $300,412.42 for master operable unit, (ii) $163,318.58 for operable unit 01, and (iii) $1,368.23 for operable unit 03. The Debtors object to all but $3,251.07 of the amounts sought for the master operable unit for the following reasons. First, almost all of the costs were incurred prior to 1998, and resolved pursuant to the 1997 Partial Consent Decree. Second, the Debtors have already paid for oversight costs incurred during 1998. Specifically, the Debtors paid to EPA, State oversight costs of $29,491.76 that were billed by EPA under the State oversight costs portion of the EPA oversight invoice for 1998. Third, the Debtors disputed the 1999 State oversight costs ($51,406) with the EPA, along with other costs, and posted an escrow for any prospective liability. The EPA subsequently returned the escrowed amount to Grace/Remedium in 2001.

26.     The Debtors also object to the MADEP's pre-petition claims for operable unit 01 ($163, 318.58) and operable unit 03 ($1,368.23) because the Debtors are not liable for any of the amounts sought. These alleged costs relate to the period prior to 1998 and have been resolved pursuant to the 1997 Partial Consent Decree.

27.     The Debtors object to the post-petition contractor costs ($18,367.72) because, as discussed in paragraph 22, the MDEP has not stated a basis for its right to such recovery and has previously stated to Debtors that such contractor costs are not recoverable.

10

28.     Therefore, with respect to the W.R. Grace Plant Superfund Site, the

Debtors request that this Court (i) reduce Claim #12849 by $25,724,758.69 and (ii) allow an

unsecured nonpriority claim in the amount of $16, 244.61.  See Exhibit D.

**e.     Cambridge Plant Site (Cambridge, MA)**

29.     Claim #12849 asserts unsecured nonpriority claims totaling (at least)

$3,900 for the Cambridge, MA Plant Site.  In particular, the MADEP seeks: (i) an unspecified

amount for future remediation costs and (ii) $3,900 for annual compliance assurance fees (a

spreadsheet summary is attached hereto as Exhibit H).

30.     The Debtors object to any future remediation amounts because (i) the

Debtors own this site; (ii) the Debtors are currently performing remediation at this site, and (iii)

the Debtors are committed to continuing their investigation and remediation at this site.

Therefore, the basis for the MADEP's claim for such costs is remote and highly speculative, and

Claim #12849 should be disallowed to the extent it seeks any future remediation costs for the

Cambridge Plant Site.

31.     Therefore, with respect to the Cambridge Plant Site, the Debtors request

that this Court (i) disallow any request for future remediation costs and (ii) allow an unsecured

nonpriority claim in the amount of $3,900 with respect to Claim #12849.  See Exhibit D.

**f.     Woburn, MA, Source Area and Central Area**

32.     Claim #12849 asserts unsecured nonpriority claims totaling

$12,023,787.87 for the Woburn, MA, Source Area and Central Area.  In particular, the MADEP

seeks: (i) $12,000,000 for future remediation costs, (ii) $17,337.25 for pre-petition oversight

costs, and (iii) $6,450.62 for post-petition oversight costs (a spreadsheet summary is attached

11

hereto as Exhibit I). The Debtors believe that the MADEP Claims with respect to this site should be reduced to $1,457.17.

33.     The Debtors object to the future remediation amounts ($12,000,000) because (i) the Debtors own the Source Area property; (ii) the Debtors are currently performing remediation at their Source Area property, and (iii) the Debtors are committed to fulfilling their obligations under a consent decree with EPA for the Woburn site, (which the Debtors anticipate will cover remediation at the Source Area property and the remedial investigation and feasibility study for the Central Area). Therefore, the MADEP's claim for such costs is remote and highly speculative, and Claim #12849 should be reduced by $12,000,000.

34.     The $17,337.25 in asserted pre-petition oversight costs includes (i) $16,553.14 for the Debtors' master operable unit and (ii) $784.11 for the Debtors' operable unit 01 (source control). The Debtors believe that the $16,553.14 in asserted pre-petition oversight costs for the master operable unit should be reduced to $1,457.17. The MADEP's figure includes $15,039.77 for costs that relate to 1996 (or prior years), and any such amounts have been paid previously. In particular, the Debtors paid Source Area/Management of Migration, Central Area, and Wells G&H nonallocable bills for the MADEP's oversight through September 1996. Similarly, the $784.11 in claimed amounts for pre-petition oversight costs for operable unit 01 should also be eliminated because they also relate to the period before September 1996, and, therefore, they are also covered by the previously paid oversight bills.

35.     The $6,450.62 in asserted post-petition oversight costs includes (i) $2,704.40 for the master operable unit and (ii) $3,746.22 for operable unit 03 (Aberjona River). The Debtors are not liable to the MADEP for any of these costs that allegedly relate to the master

12

operable unit because these costs are not validly associated with the Grace source area property. The Debtors also object to the asserted post-petition oversight costs for operable unit 03 (Aberjona River) because the Debtors have no legal liability for costs associated with the Aberjona River Study.

36.     Therefore, with respect to Woburn Source Area and Central Area, the Debtors request that this Court (i) disallow all requests for future remediation costs and post-petition oversight costs and (ii) allow an unsecured nonpriority claim for pre-petition oversight costs in the amount of $1,457.17 with respect to Claim #12849.  See Exhibit D.

### g.     Blackburn & Union Privileges Site (Walpole, MA)

37.     Claim #12849 asserts unsecured nonpriority claims totaling $4,005,980.96 for the Blackburn & Union Privileges Site (Walpole, MA).  In particular, the MADEP seeks: (i) $4,000,000 for future remediation costs and (ii) $5,980.96 for oversight costs (a spreadsheet summary is attached hereto as Exhibit J).

38.     The Debtors object to the MADEP's claim for $4,000,000 in future remediation costs because it is based on speculative and remote improbabilities, not on costs that the MADEP realistically has any potential to incur.  The Debtors do not own this site, which is a federal superfund site at which a different private, potentially responsible person ("PRP"), Tyco Healthcare, is currently undertaking an investigation and remedial action feasibility study.  In the event that either Tyco Healthcare or the property-owner should fail to complete the requisite remedial work, then the EPA - not the MADEP - would ultimately be responsible for any necessary future remediation costs.  Therefore, the MADEP's claim for future remediation costs is unfounded and should be disallowed.

13

39.     Therefore, with respect to the Blackburn & Union Privileges Site, the Debtors request that this Court (i) disallow all requests for future remediation costs and (ii) allow an unsecured nonpriority claim for pre-petition oversight costs in the amount of $5,980.96 with respect to Claim #12849.  See Exhibit D.

**h.     Parcel 2322 Debris Area off Knox Trail Site (Concord Debris Area)**

40.     Claim #12849 asserts an unsecured nonpriority claim totaling at least $1,950.00 for the Knox Trail site.  In particular, the MADEP seeks: (i) an unspecified amount for future remediation costs and (ii) $1,950.00 for post-petition annual compliance assurance fees (a spreadsheet summary is attached hereto as Exhibit K).  The Debtors believe that the MADEP Claims with respect to this site should be limited to simply $1,950.00.

41.     The Debtors object to any future remediation amounts because (i) the Debtors own this site; (ii) the Debtors are currently performing remediation at this site, (iii) the Debtors are subject to closure requirements under the Massachusetts Contingency Plan, which requires them to complete this remedy.  Therefore, it is very unlikely the MADEP will ever incur such costs, and Claim #12849 should be disallowed to the extent it seeks any future remediation costs for the Concord Debris Area.

42.     The Debtors acknowledge the MADEP's claim for $1,950 in oversight costs, and the Debtors agree that the Court may allow an unsecured nonpriority claim for $1,950 with respect to the oversight costs for Concord Debris Area that are asserted in Claim #12849.  See Exhibit D.

14

### i.    MMR Pipeline Site (Sandwich, MA)

43.    Claim #12849 asserts an unsecured prepetition claim totaling at least $32,708.53 for the Sandwich, MA (MMR Pipeline) site. In particular, the MADEP seeks: (i) an unspecified amount for future remediation costs and natural resource damages, (ii) $24,165.20 for pre-petition oversight costs, and (iii) $8,543.22 for post-petition oversight costs (a spreadsheet summary is attached hereto as Exhibit L). The Debtors believe that they have no liability to the MADEP with respect to this site, and, therefore, the Debtors request the Court to disallow all such amounts.

44.    The Debtors are not liable to the MADEP for this site because Samson Hydrocarbons is the party which signed the Tier 1A Permit for investigation and remediation of the site and, therefore, the party from whom the MADEP should seek recovery for such amounts. Further, the Debtors are presently involved in litigation over this site with Kaneb Pipeline Operating Partnership ("KPOP"). A Texas District Court recently held that KPOP owns the pipeline. See Grace Energy Corporation v. Kaneb Pipe Line Operating Partnership, L.P., et al., Docket No 9705135 (N.D. Tex.). Therefore, the MADEP can also seek recovery from KPOP, the site's current owners, and all amounts sought in Claim #12849 with respect to the MMR Pipeline Site should be expunged.

### Reservation

45.    The Debtors hereby reserve the right to object in the future to any of the MADEP Claims on any ground, and to amend, modify and/or supplement this Objection, including, without limitation, to object to any amended or new claims that are filed by, or on behalf of, the MADEP. Separate notice and hearing will be scheduled for any such objection.

46.     Notwithstanding anything contained in this Objection or the attached exhibits, nothing herein shall be construed as a waiver of any rights that the Debtors may have (a) to bring avoidance actions under the applicable sections of the Bankruptcy Code against the MADEP; or (b) to exercise their rights of setoff against the MADEP relating to any such avoidance actions.

## Notice

The Debtors have served a copy of this Objection (with all exhibits) on (i) the Office of the United States Trustee, (ii) the MADEP, (iii) counsel for the Debtors' pre-petition secured lenders; (iv) counsel for the Debtors' post-petition secured lenders; and (v) counsel for each of the official committees and the future claimants' representative appointed in the Chapter 11 Cases. Due to the voluminous nature of the exhibits to the Objection, all other parties that have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure will receive the Objection without the exhibits.

47.     The Debtors submit that notice of this Objection is sufficient under Rule 3007 of the Federal Rules of Bankruptcy Procedure and that no further notice is necessary.

## No Previous Request

48.     No previous request for the specific relief set forth herein has been made to this or any other court.

## Compliance With Local Rule 3007-1

49.     This Objection, and related exhibits attached hereto, complies with Rule 3007-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware,

16

("Local Rule 3007-1"), except as otherwise permitted by this court's waiving the Debtors'

compliance with Local Rule 3007-1 in limited circumstances.

      WHEREFORE, the Debtors respectfully request that the Court enter an order

reducing each of the MADEP Claims as outlined above.


Dated:  August 27, 2004

                    KIRKLAND & ELLIS LLP
                    James H.M. Sprayregen, P.C.
                    James W. Kapp III
                    Janet S. Baer
                    Samuel L. Blatnick
                    200 East Randolph Drive
                    Chicago, IL  60601
                    (312) 861-2000

                    and

                    PACHULSKI, STANG, ZIEHL, YOUNG, JONES
                    & WEINTRAUB, P.C.

                    Laura Davis Jones (Bar No. 2436)
                    David W. Carickhoff, Jr. (Bar No. 4184)
                    919 North Market Street, 16th Floor
                    P.O. Box 8705
                    Wilmington, DE 19899-8705 (Courier 19801)
                    (302) 652-4100

                    Co-Counsel for Debtors and Debtors in Possession