IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| In re: | § Chapter 11 |
| | § |
| W. R. GRACE & CO., et al., | § Case No. 01-01139 (JKF) |
| | § Jointly Administered |
| Debtors. | § |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| THE SCOTTS COMPANY, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § Adv. Pro. No. _____ |
| AMERICAN EMPLOYERS | § |
| INSURANCE COMPANY; BOSTON OLD | § |
| COLONY INSURANCE COMPANY; CONTINENTAL | § |
| CASUALTY COMPANY; EMPLOYERS COMMERCIAL | § |
| UNION N/K/A ONEBEACON AMERICA | § |
| INSURANCE COMPANY; MARYLAND | § |
| CASUALTY COMPANY; UNIGARD | § |
| INSURANCE COMPANY, | § |
| | § |
| – and – | § |
| | § |
| W. R. GRACE & CO., et al., Debtors.[1] | § |
| | § |
| Defendants. | § |
| | § |

## COMPLAINT FOR DECLARATORY AND OTHER RELIEF

---

[1]    The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food >N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Plaintiff The Scotts Company ("Plaintiff' or "Scotts"), by and through its counsel, alleges as follows:

## Introduction

1.      This is an insurance coverage action for declaratory relief, pursuant to United States Bankruptcy Rule 7001.

2.      Plaintiff seeks declaratory and other relief with respect to the liability insurance policies sold to W. R. Grace & Co. (the "Debtors" or "W. R. Grace") by the Insurance Defendants (all defendants except for the Debtors are collectively referred to as the "Insurance Defendants"). The policies obligate the Insurance Defendants to provide coverage to Plaintiff for asbestos-related liabilities that have arisen or may arise in connection with W. R. Grace vermiculite sold by Scotts.

3.      The Insurance Defendants' duties under the policies include the obligations to defend, investigate, and indemnify Plaintiff with respect to asbestos-related bodily injury claims asserted against Plaintiff in multiple jurisdictions (the "BI Actions").

## The Parties

4.      The Scotts Company is an Ohio corporation with its principal place of business in Marysville, Ohio. Scotts is referred to herein as "Plaintiff."

5.      Defendant American Employers Insurance Company ("American Employers") is a Massachusetts corporation with its principal place of business in Boston, Massachusetts.

6.      Defendant Boston Old Colony Insurance Company ("Boston Old") is a Massachusetts corporation with its principal place of business in Chicago, Illinois.

7.      Defendant Continental Casualty Company ("Continental Casualty") is an

Illinois corporation with its principal place of business in Chicago, Illinois.

8.    Defendant Employers Commercial Union n/k/a OneBeacon America Insurance Company ("Employers Commercial") is a Massachusetts corporation with its principal place of business in Boston, Massachusetts.

9.    Defendant Maryland Casualty Company ("Maryland Casualty") is a Swiss corporation with its principal place of business in Schaumburg, Illinois.

10.    Defendant Unigard Insurance Company ("Unigard") is a Washington corporation with its principal place of business in Bellevue, Washington.

11.    Each of the foregoing Insurance Defendants is and, at all time relevant hereto was, engaged in the business of selling liability insurance.

12.    Defendant W. R. Grace & Co., et al. ("W. R. Grace") purchased liability insurance policies from the foregoing Insurance Defendants and has claimed an interest in the proceeds of such policies.

13.    Upon information and belief, W. R. Grace purchased liability insurance policies from other insurers.  To the extent those policies extend coverage to Plaintiff for the BI Actions, Plaintiff will seek leave to join those insurers, once their identity is known.

## Jurisdiction

14.    Jurisdiction over this adversary proceeding is proper pursuant to 28 U.S.C. § 1134 and 28 U.S.C. § 157.

15.    Venue over this adversary proceeding is proper pursuant to 28 U.S.C. § 1409.

16.    This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

**Procedural History**

17.    On April 2, 2001 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have continued to operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

18.    On January 22, 2002, this Court entered an order (the "Injunction Order") that stays and enjoins actions "for which there <u>may</u> be coverage under the Insurance Policies," which Insurance Policies are defined in the Injunction Order as "those insurance policies that may provide coverage for asbestos-related claims asserted against the Debtors."  <u>See</u> Exhibit A, Injunction Order, p. 3 at ¶¶ 9, 10.b. (emphasis added).  The Injunction Order further stays and enjoins actions "against Insurance Carriers alleging coverage for asbestos-related liabilities."  <u>Id.</u>, at ¶ 10.d.

19.    On July 22, 2004, this Court entered an Order Denying the Expedited Motion of the Scotts Company for an Order (I) Enforcing the Debtors' Preliminary Injunction and Automatic Stay to Enjoin Prosecution of Certain Asbestos-Related Actions against The Scotts Company and (II) Finding all such Actions Commenced Post-Petition Void *Ab Initio* (the "July 2004 Order").  <u>See</u> Exhibit B, July 2004 Order.

20.    In its July 2004 Order, this Court prohibited "[t]he Insurance Carriers as to which Scotts makes a claim on shared insurance . . . from paying those claims <u>until the issue of coverage is litigated in an appropriate forum</u>."  <u>Id.</u>, at ¶ 2 (emphasis added).

21.    In response to this Court's July 2004 Order, Plaintiff hereby seeks to litigate the issue of coverage in this forum.

**Nature of Causes of Action**

22.    Many of the Insurance Policies addressed by the Injunction Order extend

coverage to vendors of W. R. Grace's products, including Plaintiff (the "Shared Insurance

Policies"). A list of the Shared Insurance Policies of which Plaintiff is presently aware is

attached to the Injunction Order as Exhibit B.[2]  (See Exhibit A hereto).

23.    The Shared Insurance Policies include, but are not limited to, the

following:

(a)    The Maryland Casualty Company Primary Policies (1967-73).  Maryland Casualty Company issued two, three-year primary-layer policies of comprehensive general liability insurance to W. R. Grace.  The first policy, policy no. 31-278301, covers the period from June 30, 1967 to June 30, 1970.  The second policy, policy no. 31R-911051, covers the period from June 30, 1970 to June 30, 1973.  Both policies extend coverage to "Any person or organization (herein referred to as 'vendor'), as an Insured, but only with respect to the distribution or sale in the regular course of the vendor's business of the named insured's products . . . ."

(b)    The Umbrella Policies above the Maryland Casualty Primary Policies (1967-73).  During the period of the Maryland Casualty Company Primary Policies referenced above, W. R. Grace purchased first-layer umbrella policies from American Employers Insurance Company (policy nos. A16-8220-001 and A16-8220-003) and Employers Commercial Union Insurance Company (policy no. EY-8220-005).  All three umbrella policies afford coverage to "any other person or organization who is an additional Insured under any underlying policy of insurance . . . ."  Plaintiff qualifies as an insured under these umbrella policies, because it is an additional insured under the Maryland Casualty Company Primary Policies.

(c)    The Excess Policies above the Maryland Casualty Primary Policies (1967-73).  Upon information and belief, the upper-layer excess liability policies sold to W. R. Grace for this period contain provisions specifying that those policies "follow form" to the terms of the underlying umbrella policy. Thus, the upper-layer excess policies issued to W. R. Grace likely follow form to the terms of the umbrella policy issued by American Employers or

---

[2]    Because of the voluminous nature of the Shared Insurance Policies, complete copies of those policies have not been attached to this Complaint.  Exhibit B to the Injunction Order contains a list of the Shared Insurance Policies, the policy numbers, and the effective dates of said policies.

Employers Commercial Union. Because Plaintiff qualifies as an insured under the umbrella policies, it also qualifies as an insured under W. R. Grace's upper-layer excess policies.

(d)    The Continental Casualty Insurance Company Primary Policies (1973-79). In addition to the primary policies issued by Maryland Casualty, Continental Casualty Insurance Company sold two, three-year primary policies to W. R. Grace, covering the period from June 30, 1973 to June 30, 1976 (policy no. 902-36-70), and from June 30, 1976 to June 30, 1979 (policy no. 248-3440). Upon information and belief, both Continental Casualty policies contain the identical "additional insured" language found in the Maryland Casualty policies. As a result, Plaintiff is as an additional insured under the Continental Casualty policies as a vendor of W. R. Grace's vermiculite products.

(e)    The Umbrella Policies above the Continental Casualty Primary Policies (1973-79). The first-layer umbrella policies during this period were issued by Employers Commercial Union, Unigard Mutual, and various London-based insurers. The Employers Commercial Union policy is the same policy that was issued during the period of the Maryland Casualty primary policies, and affords coverage to "any other person or organization who is an additional Insured under any underlying policy of insurance . . . ." The Unigard policy, policy no. 1-2517, contains identical language. Upon information and belief, the umbrella policies issued by the London-based insurers contain similar language. To the extent that Plaintiff is as an insured under the primary-layer Continental Casualty policies, it is also an insured under the first-layer umbrella policies.

(f)    The Excess Policies above the Continental Casualty Primary Policies (1973-79). Plaintiff is also an insured under the excess policies purchased by W. R. Grace during this period. For example, Boston Old Colony issued an excess policy of insurance to W. R. Grace, policy no. LX 2 666 569, covering the period from June 30, 1974 to June 30, 1977. The policy is part of a quota share layer of $25 million which attaches at $75 million. An endorsement to the policy states that the "policy is hereby amended to follow all the terms, conditions, definitions and exclusions of the first umbrella policy (Insurer - Unigard Mutual Insurance Company, policy no. 1-2517) and all renewal and replacements thereof." Because Plaintiff qualifies as an insured under the Unigard policy, it likewise qualifies as an insured under the Boston Old Colony policy. Moreover, upon information and belief, all of the other policies sharing this excess layer contain comparable, if not identical, language, as do the other upper-layer excess policies purchased by W. R. Grace from June 30, 1973 to June 30, 1979.

24.    Beginning in approximately 1960 and continuing for some forty years, Plaintiff purchased vermiculite from W. R. Grace for resale to customers. Most of the vermiculite that W. R. Grace sold to Plaintiff from the early 1960s until 1980 came from the W.R. Grace mine at Libby, Montana ("Libby"). It was ultimately determined that some of the Libby vermiculite that W. R. Grace sold to Plaintiff may have contained asbestos.

25.    In the BI Actions, Plaintiff is currently defending asbestos-related bodily injury claims arising out of the W. R. Grace vermiculite Plaintiff sold in the marketplace. Seventy-six of these BI Actions involving approximately 4,192 plaintiffs were filed following the Petition Date.

26.    In connection with the BI Actions, Plaintiff has incurred expenses and will continue to expend substantial amounts of money (the "Defense Expenses") in defense of claims alleging bodily injury to third parties arising out of the W. R. Grace vermiculite sold by Scotts.

27.    Because the allegations against Plaintiff in the BI Actions are premised on the purported asbestos found in the W. R. Grace vermiculite sold by Plaintiff, Plaintiff has a right to coverage under these Shared Insurance Policies.

28.    Plaintiff hereby tenders the BI Actions to the Insurance Defendants for defense and indemnity in accordance with the terms of their respective insurance policies.

## COUNT ONE
### (Declaratory Judgment against all Insurance Defendants)

29.    The averments of paragraphs 1 through 28 hereof are incorporated by reference as if herein set forth at length.

30.    Pursuant to the terms of their respective policies, each Insurance Defendant is obligated, *inter alia*, to defend Plaintiff, to pay Plaintiff's defense costs, including the costs of investigation, and to indemnify Plaintiff in connection with claims by third parties

alleging liability of the Plaintiff for damages because of bodily injury incurred in connection

with W. R. Grace products sold by Plaintiff.

31.    The claimants in the BI Actions allege that such bodily injuries as

hereinabove described occurred during some part of the policy years during which the Shared

Insurance Policies were in effect.

32.    All conditions precedent to recovery under the Shared Insurance Policies

referenced in Exhibit B have been satisfied or waived.

33.    An actual controversy currently exists among Plaintiff and the Insurance

Defendants with respect to their duties and obligations under the Shared Insurance Policies in

that Plaintiff contends:

(a)    Each Insurance Defendant has a duty to provide Plaintiff with a full defense and to pay all defense costs incurred in connection with the BI Actions in which bodily injury potentially occurred during its respective policy period;

(b)    Each Insurance Defendant has a duty to indemnify Plaintiff for all sums that Plaintiff may be obligated to pay as damages in the BI Actions in which bodily injury occurred during its respective policy period; and

(c)    In the event that more than one of the Insurance Defendants owes Plaintiff defense and/or indemnity, Plaintiff is entitled to select the insurance policy and policy years which will be accessed to provide such defense and/or indemnity payments.

34.    Upon information and belief, each Insurance Defendant disputes one or

more of Plaintiff's contentions set forth in the immediately preceding paragraph.

35.    Declaratory relief from this Court will resolve some or all of said disputes

and controversies.

36.    Pursuant to 28 U.S.C. § 2201, Plaintiff is entitled to a declaration by this

Court of its rights and the Insurance Defendants' duties.  A judicial declaration is necessary to

determine Plaintiff's rights and the Insurance Defendants' duties regarding the Shared Insurance Policies and their applicability to the BI Actions.  Pursuant to 28 U.S.C. § 2202, this Court may also grant further necessary or proper relief as it deems appropriate.

WHEREFORE, Plaintiff demands judgment in its favor against the Insurance Defendants:

(1)    requiring each Insurance Defendant to defend and to indemnify Plaintiff against all liability, loss, or expense caused by reason of the claims hereinabove described;

(2)    granting Plaintiff specific performance of the contracts of insurance issued by the Insurance Defendants;

(3)    declaring and adjudging the rights and obligations of the parties under the respective insurance policies issued to W. R. Grace with respect to past and future liabilities of Plaintiff arising from claims allegedly based upon the events hereinabove described;

(4)    for costs of suit;

(5)    for counsel fees; and

(6)    for such other and further relief, including any appropriate equitable relief, as the Court may deem just and proper.

Dated: September 2, 2004

MORRIS, NICHOLS, ARSHT & TUNNELL

William H. Sudell, Jr. (#0463)
Donna L. Culver (#2983)
1201 North Market Street
P. O. Box 1347
Wilmington, DE 19899-1347
Phone:  (302) 658-9200
Facsimile:  (302) 658-3989

and

9

Robert J. Sidman (Ohio Bar #0017390)
William J. Pohlman (Ohio Bar #0040912)
Tiffany Strelow Cobb (Ohio Bar #0067516)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH  43215
Phone:  (614) 464-6400
Facsimile:  (614) 719-4663

Attorneys for Plaintiff
The Scotts Company

425728v3