UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S AMENDED FINAL REPORT REGARDING
TWELFTH INTERIM QUARTERLY FEE APPLICATION OF
<u>CONWAY, DEL GENIO, GRIES & CO., LLC</u>**

  This is the amended final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Twelfth Interim Quarterly Fee Application of Conway, Del Genio, Gries & Co., LLC</u> (the "Application").

## BACKGROUND

  1. Conway, Del Genio, Gries & Co., LLC ("CDG"), was retained as financial advisor to the Official Committee of Asbestos Property Damage Claimants. In the Application, CDG seeks approval of fees totaling $300,000.00 and costs totaling $761.69 for its services from January 1, 2004, through March 31, 2004.

  2. In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time entries included in the exhibits to the Application. We reviewed the Application for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11

U.S.C. § 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.

## DISCUSSION

### Fees

3.     We note that CDG is no longer splitting its fees between the bankruptcy case and the fraudulent conveyance adversary proceeding. This is explained in a footnote to paragraph #20 contained in CDG's Application. That explanation is provided below.

> CDG is currently engaged by the PD Committee at a flat fee of $100,000 per month plus expenses. For the Compensation Period, total fees for services provided are $300,000. Since July 10, 2002, CDG has allocated our fees between the bankruptcy case and the fraudulent conveyance adversary proceeding, based on hours dedicated to performing services related to each. A settlement agreement in the adversary proceeding has been filed with the District Court and is awaiting final judicial approval. Therefore, we do not anticipate performing any additional services related thereto, nor do we expect to file any additional fee applications for fees or expenses related thereto.

4.     We note that CDG recorded a total of 117.6 hours for the three months covering this application period (the "Compensation Period"). CDG was paid $300,000 for the Compensation Period, which calculates to an effective hourly rate of $2,551.02 per hour.

5.     We have reviewed CDG's fee applications since the firm was retained by the PD Committee. In eight reports, covering 12 interim periods, we have calculated and reported to the Court the effective hourly rate for CDG's billings.[1]  A summary of the interims and rates is provided below. The rates have been rounded to the nearest dollar.

---

[1] The first through third interims and the fifth through seventh interims were grouped because CDG did not make timely applications during those periods.

| | | |
|---|---|---|
| 1st - 3rd Interims /April 27, 2001 - December 31, 2001 | Effective hourly rate | $   538 |
| 4th         Interim / January 1, 2002 - March 31, 2002 | Effective hourly rate | $   612 |
| 5th - 7th Interims / April 1, 2002 - December 31, 2002 | Effective hourly rate | $   181 |
| 8th         Interim / January 1, 2003 - March 31, 2003 | Effective hourly rate | $   719[2] |
| 9th         Interim / April 1, 2003 - June 30, 2003 | Effective hourly rate | $   815 |
| 10th       Interim / July 1, 2003 - September 30, 2003 | Effective hourly rate | $1,754 |
| 11th       Interim / October 1, 2003 - December 31, 2003 | Effective hourly rate | $6,224 |
| 12th       Interim / January 1, 2004 - March 31, 2004 | Effective hourly rate | $2,551 |

As is evident from this chart, the effective hourly rate increased dramatically in the last three interim periods.

   6.  In each of the last three interim periods, we contacted counsel for the PD Committee regarding the necessity and the anticipated scope of CDG's services in light of the extraordinarily high effective hourly rates. For the twelfth interim period, PD Committee counsel responded that they would adopt their response for the eleventh interim period, which stated as follows:

> With respect to your inquiry regarding Conway DelGenio & Gries, with the recusal issues concerning Judge Wolin having been decided, the PD Committee anticipates that there will be significantly more movement in these cases. In addition, Debtors' counsel advised the Court during the last omnibus hearing that it intended to move these cases along in a more expedited fashion. Thus, the PD Committee believes that the amount of time that will be spent by Conway on will likewise substantially increase in the near future.

We received a similar response from PD Committee counsel in response to a similar inquiry concerning the tenth period. When we inquired of the PD Committee regarding CDG's services for the tenth interim period, for which we calculated an effective hourly rate of $1,754.39 per hour, PD Committee counsel stated that "we anticipate that CDG's involvement will steadily and

---

[2] We note that of the 240.8 hours billed to the bankruptcy case matter (as opposed to the fraudulent conveyance action matter), 188.7 hours were billed to the project category "Fee Applications, Applicant". If we exclude such time, the effective hourly rate for the eighth interim period would rise to $3,323.49.

**FEE AUDITOR'S AMENDED FINAL REPORT** - Page 3
Amended FR Conway 12int 1-3.04.wpd

meaningfully increase in the very near term." Thus, for the last three interim periods, covering nine months, the PD Committee has believed that CDG's hours would increase very soon. That has not happened. After a third consecutive period in which the effective hourly rate is well beyond the rate that we consider reasonable, we believe it is appropriate to consider the possibility of a reduction in the requested fees.

7. In this regard, our evaluation is guided by the applicable orders of this Court, section 330(a) of the Bankruptcy Code, and relevant case law. The applicable order is the <u>Order Pursuant to Sections 1103(a) and 328(a) of the Bankruptcy Code Authorizing the Retention and Employment of Conway del Genio, Gries & Co., LLC as the Financial Advisor and Investment Banker to the Official Committee of Property Damage Claimants, Nunc pro Tunc to April 27,2001, and Approving Proposed Terms of Employment</u>, dated October 22, 2001 (D.I. 1027) (the "Retention Order"). Among other things, the Retention Order provides that

> [a]ny fees to be paid to CDG pursuant to the terms of the Application (a) shall be subject to the reasonableness standard of review provided in section 330(a) of the Bankruptcy Code and not subject to any other standard of review under section 328(a) of the Bankruptcy Code; (b) the initial monthly advisory fee in the amount of $150,000 shall be paid for a period of six months from the date CDG first commenced providing services to the PD Committee, provided, however that the PD Committee reserves the right to request CDG to make adjustments to its Monthly Fee (as defined in the Engagement Letter) in the event that CDG's activity in connection with its retention decreases significantly during any period commencing six months after the initial date on which it was first engaged.

Significantly, the Retention Order expressly subjects CDG's flat fee to a reasonableness standard under section 330(a). Thus, while the case law may support an argument that the flat fees would remain subject to the reasonableness standard of section 330(a) even without such an express

advance ruling on the point, we need not address such an argument.[3]  Instead, we may proceed directly to an evaluation of the reasonableness of the fees requested for the Application Period under section 330(a), as clarified by relevant case law.

8.      According to the Third Circuit, a bankruptcy court is generally required to award an applicant a fee that is "reasonable" in light of certain factors set out in section 330(a)(1) of the Bankruptcy Code.  *In re Federal Mogul-Global, Inc.*, 348 F.3d 390, 396-97 (3d Cir. 2003).  Although the market rate of compensation is relevant, the Third Circuit's approach is "market driven", not "market-determined".  *In re United Artists Theatre Co. v. Walton (In re United Artists Theatre Co.)*, 315 F.3d 217, 230.  While no Third Circuit opinion addresses the flat-fee issue raised by CDG's Application, the issue has been addressed in the lower courts.

9.      A recent Delaware bankruptcy court opinion (issued on August 18, 2004) applied relevant Third Circuit law to a request for payment of flat monthly fees.  *In re Stations Holding Co., Inc.*, 2004 WL 1857116 (Bankr. D. Del. 2004).  In that case, the unsecured creditors' committee applied to retain Greenhill & Co., LLC ("Greenhill"), as its financial adviser.  The US Trustee objected to the terms of compensation, and the Debtor and Greenhill negotiated a modified fee arrangement whereby Greenhill would receive a flat fee of $1 million for all services provided to the Committee during the case.  The court, however, did not rule on the retention application, as modified, until after a plan of reorganization was confirmed in the case.  Three weeks after confirmation, Greenhill filed its final fee application seeking allowance and

---

[3]Some appellate opinions have interpreted 11 U.S.C. § 328(a) as if the last clause ("if such terms and conditions prove to have been improvident....") were preceded by the word "only".  *See, e.g., In re National Gypsum Co.*, 123 F.3d 861 (5th Cir. 1997); *In re Circle K Corp.*, 272 F.3d 1150 (9th Cir. 2001), *as amended*, 279 F.3d 669, 671 (9th Cir. 2002).

payment of the $1 million flat fee.

10.    After citing *In re Busy Beaver Building Centers, Inc*. [19 F.3d 833, 841 (3d Cir. 1994)], Judge Walrath observed that

> [u]nder section 330, when determining the reasonableness of a fee request it is the responsibility of the court to consider: (i) the nature, extent, and value of the services provided; (ii) the time spent on the services provided; and (iii) the customary compensation for similar services provided.  11 U.S.C. § 330(a)(3).

*Stations Holding Co.*, 2004 WL at *2.  Moreover, as was stated by the Third Circuit in *Busy Beaver*, "'a bankruptcy judge's experience with fee petitions and his or her expert judgment pertaining to appropriate billing practices, founded on an understanding of the legal profession, will be a *starting point* for any analysis.'"  *Stations Holding Co.*, 2004 WL at *2, *quoting Busy Beaver*, 19 F.3d at 854.  (Emphasis added in *Stations Holding Co.* opinion.)

11.    Although Greenhill and the committee had agreed to compensation based on a flat fee, Judge Walrath held that such an arrangement "does not prevent the Court from using an hourly rate to determine the reasonableness of that fee." *Stations Holding Co.*, 2004 WL at *3, *citing In re Commercial Fin. Servs., Inc*., 298 B.R. 733, 749 (Bankr. 10th Cir. 2003).  After disallowing a total of 139 hours consisting of most of the time spent by Greenhill on its retention and fee applications, all time spent before the creation of the committee, and half of the time associated with communication tasks where more than one Greenhill professional participated, Judge Walrath determined that Greenhill had expended 149 hours of allowable time on the matter.  Thus, the $1 million flat fee requested would result in an effective hourly rate of $6,711.49.  Judge Walrath concluded that the requested fee was excessive for the services performed, and reduced Greenhill's fees to just more than 10% of the requested amount:

> [i]t is the opinion of the Court, based on its experience and judgment with respect to billing practices, that a reasonable fee for the services provided by Greenhill would not exceed $700 per hour. Therefore, we will allow Greenhill's fee application in the amount of $104,300.

*Stations Holding Co.*, 2004 WL at *3.

12.  Similarly, in *In re UDC Homes, Inc.*, 203 B.R. 218, 223-25 (Bankr. D. Del. 1996), Judge Balick referred to hourly rates in determining the reasonableness of a flat-fee request. In that case, Judge Balick evaluated the compensation request of Houlihan Lokey Howard & Zukin ("Houlihan") as financial advisers for a committee of preferred equity interest holders. Houlihan sought compensation based on a $75,000 monthly flat fee covering four full months and a portion of a fifth. *Id.* at 223. After agreeing to about $18,000 in reductions based on recommendations of the fee auditor in that case, Houlihan requested $332,499.31 in fees for a period in which its professionals' time sheets reflected a total of 704.7 hours devoted to the bankruptcy case. *Id.* The effective hourly rate was thus $471.83.

13.  Looking to section 330(a)(3)[4], Judge Balick applied three criteria in evaluating the application: (1) whether the services performed were necessary or beneficial, (2) the rates charged for the services, and (3) whether the services performed were commensurate with the complexity, importance, and nature of problem, task, or issue addressed. *Id.* at 223-25. Judge Balick found each of these criteria suggested a reduction was appropriate.

14.  With respect to the first criterion, Judge Balick found that the debtor's financial adviser played the leading role in the case, and not all of Houlihan's activities were necessary or beneficial. With respect to the second criterion, Judge Balick observed that Houlihan

---

[4]The Houlihan retention order had specified that Houlihan would apply for compensation under section 330. *UDC Homes*, 203 B.R. at 221.

infrequently, but occasionally billed on an hourly basis and had assigned rates for the professionals who worked on the *UDC Homes* case. Multiplying those rates by the time worked by each professional, Judge Balick determined that total compensation would be about $235,000 if Houlihan had billed on an hourly basis. *Id.* at 224. That would produce an effective hourly rate of $334.23.[5] With respect to the third criterion, Judge Balick noted that the equity committee's other professionals' fees totaled 12% of the $3 million trust that, according to the equity committee, was a benefit to the estate resulting from the committee's and its professionals' efforts. If Houlihan's fees were allowed in the full amount requested, the professional fees would have totaled over 24% of the amount of the trust. In view of these concerns, Judge Balick concluded that a total fee of $230,000 (for an effective hourly rate of $326.38) was reasonable. *Id.* at 225-26.

15.     Although there is no such thing as "law of the district" [see *Threadgill v. Armstrong World Industries, Inc.*, 928 F.2d 1366 (3rd Cir. 1991)], Judge Farnan, as Chief Judge for the District of Delaware, opined that previous decisions of lower courts evaluating similar circumstances deserve "some deference on the basis of consistency and common sense". *In re AM International, Inc.*, 203 B.R. 898, 905 (D. Del. 1996). We believe that the conclusion that a flat-fee arrangement may be evaluated through the use of an hourly rate is reasonable and consistent with the Third Circuit's opinions in *United Artists*, *Federal Mogul-Global*, *Busy Beaver*, and *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253 (3d Cir. 1995). This conclusion is also consistent with the holdings of courts outside the Third Circuit.

16.     In *In re Commercial Financial Services*, the Bankruptcy Appellate Panel for the

---

[5]The opinion incorrectly states a blended rate of $324.50. *Id.*

Tenth Circuit reviewed the ruling of an Oklahoma bankruptcy court regarding the final fee application of a financial adviser, again Houlihan. Houlihan was retained under two separate flat-fee arrangements: (1) $200,000 per month for the first engagement and (2) $75,000 per month for the first 6.3 months, $50,000 per month for the next three months, $25,000 per month for the next five months, and $0 per month for the final two months for a second engagement. 298 B.R. 733, 742 (Bankr. 10th 2003). The court noted that

> although a professional may be employed pursuant to a market-based fixed fee, "such an appointment is by no means a guarantee that the fees will be awarded in that fashion. The trial court may reject a fee contract in favor of the lodestar approach."

*Id.* at 750, *quoting In re Geneva Steel Co.*, 258 B.R. 799, 801 (Bankr. D. Utah 2001). Like CDG in this case, Houlihan in *Commercial Financial Services* was put on notice that, ultimately, the time spent on the bankruptcy case would be considered relevant to a consideration of the reasonableness of its fee requests, notwithstanding the flat-fee arrangement. 298 B.R. at 751.

17.     The bankruptcy court determined that Houlihan's effective hourly rate was $613.96 for the first engagement, $1,173.99 for the second engagement, and $750.79 overall.[6] *Id.* at 745. The bankruptcy court then compared these rates to the rates of other professionals in the debtors' cases and the effective hourly rates Houlihan had been paid in other bankruptcy cases and concluded that the amount of requested fees ($1,920,967.74) was excessive. *Id.* at 745-46.

18.     To determine the lesser, reasonable compensation Houlihan would be awarded,

---

[6]Houlihan claimed that such a rate was reasonable because it was 44% less than its average for comparable engagements. *Commercial Fin. Servs.*, 298 B.R. at 753 n. 58. Performing the relevant calculations, we conclude that Houlihan contended that its average effective hourly rate in comparable cases was $1,340.70.

the bankruptcy court calculated and applied an hourly rate for each Houlihan professional. *Id.* at

749. These hourly rates were set at the higher end of the range of hourly rates approved in the

case and

> were appropriately influenced by the hourly rates of other professionals employed
> in the case, the education, skill and experience of the Houlihan professionals who
> billed time, and the average equivalent blended hourly rates that Houlihan had
> received in other engagements

*Id.*[7] Using this methodology, the bankruptcy court determined that reasonable compensation for

the services provided by Houlihan was $904,000. *Id.* at 745. Thus, after the reduction, the

effective hourly rate allowed was $353.32 based on 2,558.6 hours of time expended on the case

by Houlihan professionals. The B.A.P. affirmed the bankruptcy court's ruling. *Id.* at 753.

19.     Similarly, in *In re Geneva Steel Co.*, a Utah bankruptcy court considered an

interim fee application of a financial adviser retained under a flat-fee arrangement of $150,000

per month. *Id.* While the hours average expended per month had remained fairly consistent

during the first three quarterly application periods (483.5, 410.8, and 423.2, respectively), the

fourth quarterly application period saw a significant decrease to an average of 238.7 hours per

month. *Id*. at 801. The court calculated that the average monthly hours for the fourth period

equaled just 53.4% of the average monthly hours for the first two application periods, resulting in

an effective hourly rate of $628.40 for the fourth period. Based on the deviation from the

previous activity level, the court reduced the monthly compensation for the fourth period to

$80,100, or 53.4% of $150,000. *Id.* at 802. After this reduction, the effective hourly rate for the

---

[7]On appeal, Houlihan argued that comparison of its rates (as the only investment banker in the case) with those of other professionals in the case was inappropriate. The B.A.P. stated that it might be inclined to "give this argument more weight on a different record", but the record reflected that counsel for Houlihan had invited just such a comparison in the proceedings in the bankruptcy court. *Commercial Fin. Servs.*, 298 B.R. at 749 n. 45.

**FEE AUDITOR'S AMENDED FINAL REPORT** - Page 10
Amended FR Conway 12int 1-3.04.wpd

fourth period dropped to $335.57.

20.     Thus we conclude that the effective hourly rate approach used in *Stations Holding Co.* and *UDC Homes* opinions is consistent with applicable Third Circuit law and persuasive authority from outside the Third Circuit.  Accordingly, in evaluating the fee request of CDG, we conclude that the flat-fee compensation structure does not preclude reference to the effective hourly rate for CDG's services.  *See Stations Holding Co.*, *2004 WL at \*3.*  As is noted above, the effective hourly rate for the periods predating the Application Period is $677.39.  This figure is the result of some periods in which the effective rate was considerably higher and others in which the effective rate was considerably lower.  We believe it is reasonable to include in our calculation periods for which the effective rate varies widely because of unusually high and unusually low activity, thus producing a balancing effect that is fair to both the estate and the applicant.  Looking forward, we have been promised, three times, that CDG's activity level will substantially increase in the near future.  However, that has not happened, and we do not believe that it is necessary that we wait for another application period to pass before recommending an adjustment in the fee.[8]

21.     Consistent with Judge Walrath's analysis in *Stations Holding Co.*, we believe that $677.39 may be toward the high end of the range of reasonableness, but is not an unreasonable fee for the services performed by CDG.  To the extent that the effective hourly rate for the Application Period, however, exceeds that effective rate, we believe the request is unreasonable.

---

[8]We note that the Application is an interim application, and our recommendations and the Court's rulings are subject to reconsideration at the time of the final application.  We acknowledge the possibility that subsequent high levels of activity producing a relatively low effective hourly rate in subsequent application periods may justify a re-evaluation of the recommendations made at the time of the final application, but we believe that fact does not obviate the necessity of an adjustment on an interim basis.

22. Utilizing this reasonable effective hourly rate of $677.39 and CDG's total hours of 117.6 during the Application Period, we believe a fee of $79,661.06 is reasonable. Accordingly, we recommend a reduction of $220,338.94 in fees.

Expenses

23. We have no objections to any of the expenses sought by CDG.

## CONCLUSION

24. Thus, we recommend approval of fees totaling $79,661.06 ($300,000.00 minus $220,338.94) and costs totaling $761.69 for Conway's services from January 1, 2004, through March 31, 2004.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
Warren H. Smith
State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 1275
Dallas, Texas 75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 3rd day of September 2004.

                                             Warren H. Smith

**SERVICE LIST**

**The Applicant**

Stephanie L. Jones
Associate
Conway, Del Genio, Gries & Co., LLC
645 Fifth Avenue, 11th Floor
New York, New York 10022

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801