**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **In re:** | **Bankruptcy Case No.** |
| **Owens Corning** | **00-3837-JKF** |
| **Armstrong World Industries** | **00-4471-JKF** |
| **W.R. Grace & Co.** | **01-1139-JKF** |
| **USG Corporation** | **01-2094-JKF** |
| **United States Mineral Products Company** | **01-2471-JKF** |
| **The Flintkote Company** | **04-11300-JKF** |
| **Flintkote Mines Limited** | **04-12440** |
| **ACandS, Inc.** | **02-12687-JKF** |
| Debtors. | Chapter 11 |

**MOTION OF BARON & BUDD AND SILBER PEARLMAN
PURSUANT TO BANKRUPTCY RULE 9023 TO ALTER OR AMEND
(1) AMENDATORY ORDER REQUIRING FILING OF STATEMENTS
PURSUANT TO FED. R. BANKR. P. 2019,
and (2) ORDER REQUIRING FILING OF STATEMENTS
PURSUANT TO FED. R. BANKR. P. 2019,
<u>OR ALTERNATIVELY, FOR NEW TRIAL</u>**

Baron & Budd, P.C. ("Baron & Budd") and Silber Pearlman, LLP ("Silber Pearlman"), on their own behalf and on behalf of all tort victims they represent in these cases (the "Tort Victims")[1], respectfully move the Court, pursuant to Bankruptcy Rule 9023, to Alter or Amend (1) Amendatory Order Requiring Filing of Statements Pursuant

---

[1] Including, among others, the following persons represented by Baron & Budd: Richard T. Wright (*Owens Corning*), Charles Pete Conn (*WR Grace*), Beverly Ann Suggs, (*USG Corp.*), Holzen Duplessis (*United States Minerals*), Robt.Eldon Cory (*Flintkote* cases), Floyd McDonald Davis (*Armstrong World Industries*), Richard Blume (*ACandS*); and by Silber Pearlman:  Claude LeRoy Jones (*Flintkote* cases) and Bennie Mack Jones (other cases).

- 2 -

to Fed. R. Bankr. P. 2019 (in all cases except *ACandS* and *Armstrong World Industries*), and (2) Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019 (in the *ACandS* and *Armstrong World Industries* cases), or Alternatively, for New Trial.

The orders to which this motion is directed have the following docket numbers:

| | |
|---|---|
| Owens Corning | Docket No. 12563 |
| Armstrong World Industries | Docket No. 7217 |
| W.R. Grace & Co. | Docket No. 6275 |
| USG Corporation | Docket No. 6466 |
| United States Mineral Products Company | Docket No. 2049 |
| The Flintkote Company | Docket No. 219 |
| Flintkote Mines Limited | Docket No. 4 |
| ACandS, Inc. | Docket No. 1461 |

## I.
## INTRODUCTION

1. Mass tort cases call for flexibility in the application of Rule 2019. The purpose and spirit of Rule 2019 can be served by applying the rule flexibly in situations where the possible literal application of the rule would cause unintended harm to already physically injured tort victims. This and other courts have applied the rule pragmatically in other cases to assure that justice is done. The goal of the rule is disclosure, and this goal can be fully realized without excessive burden and with minimal intrusion into the attorney-client relationship.

2. Baron & Budd and Silber Pearlman believe these goals can be achieved with the following amendments and/or clarifications to the orders:

  a) To allow prompt and efficient compliance, the orders should be clarified to allow the use of exemplar copies of the law firms' retention agreements, with a verified statement as to which clients have signed the agreements.
  b) To protect sensitive matters, the retention agreements should be redacted to preserve the confidentiality of any information not required by Rule 2019.
  c) To assure legitimate confidentiality, disclosure of how counsel became involved with the claimant should not be required.

    d)      To protect clients' privacy, Social Security numbers should not be required or, alternatively, only the first four digits should be disclosed.

    e)      Recognizing the nature of mass tort cases, a statement of the amount and time of the acquisition of the claim should not be applied literally.

    f)      To avoid the possible harassment of claimants, the addresses of the claimants should be in care of counsel.

These reasonable modifications to the orders, while reducing the burden on the claimants and reducing the intrusion into attorney-client relationships and personal privacy, will still comply with the provisions of Rule 2019 and will fully provide the disclosure contemplated thereby.

## II.
## PROCEDURAL AND FACTUAL BACKGROUND

3. Baron & Budd and Silber Pearlman are law firms that represent thousands of tort victims asserting personal injury claims against the Debtors (the "Debtors") in these Chapter 11 bankruptcy cases.

4. On August 25, 2004, the Court entered its Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019 (the "Initial 2019 Order") in each of the above-styled cases.

5. On August 27, 2004, in the *ACandS* and *Armstrong World Industries* cases, the Court entered its Order Staying Order of August 25, 2004, Requiring Filing of 2019 Statements (the "Stay Orders").

6. On August 27, 2004, in the other cases, the Court entered its Amendatory Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019 (the "Amendatory 2019 Order") which, among other things, vacated the Initial 2019 Order and substituted new orders under Rule 2019.[2] These orders were entered *sua sponte* and

---

[2] It is believed that, due to the Stay Orders, an amendatory order was not entered in the *ACandS* and *Armstrong World Industries* cases. However, it is movants' belief that the Court intends to enter an

- 3 -

without hearing, although the Court did hold a hearing on 2019 issues in the *Pittsburgh Corning* case which resulted in some modifications of the Initial 2019 Order.

7. The Amendatory 2019 Order requires all counsel representing more than one creditor in these cases to file new statements under Bankruptcy Rule 2019 containing certain information and exhibits. Although it is not clear, it appears that among the items that arguably might be required to be filed by the order are the individual copies of each and every retention agreement or fee agreement between every Tort Victim and the law firms representing the Tort Victims.[3] This would require the filing of thousands of copies of multi-page documents.

8. Baron & Budd and Silber Pearlman generally use standard retention agreements for their clients. These retention agreements contain the agreement between the client and the law firm whereby the law firm is empowered to act on behalf of the client. The agreements also contain privileged and confidential information, including case strategy and the financial terms of the law firms' retention. Because they are standard agreements, the completed and executed agreements vary only by the name of the client and sometimes by the financial terms of the law firms' employment.

9. Although the Amendatory 2019 Order generally tracks the provisions of Rule 2019, in several instances the order requires the disclosure of confidential information relating to the Tort Victims that is not required by Rule 2019, or which

---

amendatory order in the *ACandS* and *Armstrong World Industries* cases as well if the stay imposed by the Stay Orders is lifted in the future. Accordingly, although this motion is made in the *ACandS* and *Armstrong World Industries* cases in order to preserve movants' appellate rights, this motion will only address the terms of the Amendatory 2019 Order and not the Initial 2019 Order.

[3] Fee agreements were originally required in the Initial 2019 Order, but such requirement was not included in the Amendatory 2019 Order.

- 4 -

should not be required based on an overly wooden application of the rule in the context of a mass-tort bankruptcy case.

## III.
## RELIEF REQUESTED

10. Movants respectfully request that the Court alter or amend the Amendatory 2019 Order as specified in the discussion below. In addition, although the Initial 2019 Order has been stayed in the *ACandS* and *Armstrong World Industries* cases, in order to avoid such order becoming final in the those cases, movants ask that the Court enter an amendatory order in the *ACandS* and *Armstrong World Industries* cases which conforms to the Amendatory 2019 Order and which is revised as requested specifically in the discussion below. Alternatively, movants request a new trial be granted as to the Initial 2019 Order (in the *ACandS* and *Armstrong World Industries* cases) and the Amendatory 2019 Order (in the other cases).

## IV.
## DISCUSSION AND AUTHORITIES
## SPECIFIC REQUESTS FOR ALTERATION OF ORDERS

**A. Rule 2019 is intended to be applied flexibly where appropriate.**

11. "The purpose of Rule 2019 is to further the Bankruptcy Code's goal of complete disclosure during the business reorganization process… ." *In re CF Holding Corp.*, 145 B.R. 124, 126 (Bankr. D. Conn. 1992). The rule is not intended to be applied as an arbitrary and burdensome hurdle over which creditors must jump in order to participate in a bankruptcy. "[Rule 2019] is part of the disclosure scheme of the Bankruptcy Code. It is designed to foster the goal of reorganization plans which deal fairly with creditors and which are arrived at openly." *In re Oklahoma P.A.C. First Ltd. P'ship*, 122 B.R. 387, 391 (Bankr. D. Ariz. 1990). Although there has been considerable

deliberation by the courts regarding when the requirements of Rule 2019 are applicable, *see e.g., In re Chateaugay Corp.*, 104 B.R. 626 (Bankr. S.D.N.Y. 1989); *In re Vestra Indus., Inc.,* 82 B.R. 21 (Bankr. D.S.C. 1987); *In re Charter Co.,* 876 F.2d 866 (11th Cir. 1989), there is very little authority concerning what specific information must be disclosed when the rule is applicable. *CF Holding,* 145 B.R. at 126.

12. It is recognized that strict compliance with the literal terms of Rule 2019 is often impractical and can be varied. 9 LAWRENCE P. KING, ET AL., COLLIER ON BANKRUPTCY § 2019.04 (15th ed. 2004). The practical problems of compliance have influenced courts where the strict application of the rule would not serve its purpose and would work to prejudice the creditors to whom the rule would apply. *See e.g., Wilson v. Valley Elec. Membership Corp.,* 141 B. R. 309 (Bankr. D. La. 1992) (attorney representing thousands of class members not required to file 2019 statement).

13. Similar considerations are present in a mass tort case. Baron & Budd, Silber Pearlman and the other firms affected represent thousands of Tort Victims, making literal compliance with Rule 2019 difficult, burdensome and very expensive. Baron & Budd and Silber Pearlman do not, however, seek to be excused from filing a Rule 2019 statement.[4] Instead, they request that the Court amend its orders slightly to ease the difficulty of compliance, while still preserving the intentions of Rule 2019. Specifically, Baron & Budd and Silber Pearlman request that the Amendatory 2019 Order be amended as follows:

---

[4] Indeed, Baron & Budd and Silber Pearlman have already filed detailed Rule 2019 statements in these cases.

**B.     Exemplars of retention agreements may be submitted.**

14.    As stated above, Baron & Budd and Silber Pearlman generally use standard retention agreements for their clients.  Contained within the retention agreements is a power of attorney or other authorization whereby the law firms are empowered to act on behalf of the Tort Victim.  Submitting separate copies of each and every retention agreement would be burdensome and very expensive, and would serve no valid purpose.  Instead, the Court should amend its order to clarify that exemplars of the documents by which the firms are empowered to act on the claimants' behalf may be attached to any 2019 statement, with a verified statement that all Tort Victims have signed a similar agreement.  If materially different authorizing documents were used at different times, exemplars of each form of agreement will be attached.

15.    This Court has employed such procedure in the *Mid Valley* case, allowing the attachment of a sample of the document with an averment that it has been signed by each of the Tort Victims.  *See* April 13, 2004, Transcript of Omnibus Hearing, page 138, *In re Mid-Valley, Inc.* Case No. 03-35592.  The Amendatory 2019 Order is not clear as to whether such procedure will be acceptable in these cases.  It is therefore requested that the order be clarified and/or amended to allow exemplar authorizing documents to be attached.

**C.     The retention agreements or other authorizing documents should be redacted to preserve the confidentiality of any information not required by Rule 2019.**

16.    The retention agreements or other authorizing documents contain privileged communications between attorneys and clients, as well as privileged and confidential information relating to the financial terms of the law firms' retention.

Disclosure of such information, which is not required by Rule 2019, is not only purposeless, but could substantially invade the attorney-client relationships of the Tort Victims and would amount to disclosure of work product of the law firms. Rule 2019 only requires the statement to include "a copy of the instrument, if any, whereby the entity … is empowered to act on behalf of creditors … ." FED. R. BANKR. P. 2019(a). If such "instrument" is contained within another document that contains information not required by Rule 2019, the document should be redacted to exclude the other information that does not relate to creditors' empowerment of the attorney to appear in the bankruptcy case (especially where the other information is privileged and confidential).

**D.** **Rule 2019 does not require a description of how counsel became involved with the claimant.**

17.  The Amendatory 2019 Order requires that the statement include "a description of how counsel became involved with the claimant." Amendatory 2019 Order, p. 3. The Amendatory 2019 Order should be amended to delete this provision, as it is not a requirement of Rule 2019. In addition, that requirement invades the attorney-client relationship unnecessarily. Moreover, in the context of a mass tort case where counsel represents thousands of creditors, a requirement that counsel describe how he/she became involved with every client is impracticable, if not impossible. The rule already includes a requirement that the statement contain "a recital of the pertinent facts and circumstances in connection with the employment of the entity." FED. R. BANKR. P. 2019(a)(3). Compliance with such provision is sufficient to further the disclosure purposes of Rule 2019.

E.  **Social security numbers are not required by Rule 2019.**

18.     The Amendatory 2019 Order also requires that the statement include "the last four digits of the Social Security Number of any such creditor." Amendatory 2019 Order, p. 2.  Rule 2019 does not require such disclosure.  The last four digits of an individual's Social Security number are often used as an identifier in certain credit transactions and their disclosure here would facilitate identity theft and invasion of privacy.  Because disclosure of Social Security numbers is not required by Rule 2019, movants respectfully request that such requirement be deleted from the Amendatory 2019 Order.  Alternatively, movants request that the first four digits of the Social Security number of the Tort Victims be required instead.

F.  **A statement of the amount and time of acquisition of the claim is not proper in a mass tort case.**

19.     The Tort Victims claims are by their nature generally unliquidated.  In a mass tort bankruptcy case the values of the claims are generally determined in the plan process.  Unlike a creditor holding a bond or note, the Tort Victims do not have a liquidated amount readily obtainable that they can recite on a 2019 statement (except in those cases where claimants have liquidated their claims pre-petition through settlement or judgment).  In addition, the Tort Victims can not state with specificity the exact date that they sustained their injury or contracted their disease because it is a continuous process over time.  These requirements of Rule 2019 need not be applied in a literal but inappropriate fashion so as to work an injustice to individual claimants in a mass tort case.  In situations were it is impracticable or impossible to provide information under Rule 2019, the courts have declined to require strict compliance with the rule. *See e.g., Wilson*, 141 B. R. at 309.

**G.      Addresses of the Tort Victims should be in care of counsel.**

20.     Many of the Tort Victims are elderly and/or infirm.  They have entrusted their counsel with the handling of their personal injury cases.  Although Rule 2019 does require the disclosure of the address of the creditor, it does not state whether the address must be the home address, or whether it can be a work or other address where the creditor receives his or her mail.  In the case of the Tort Victims, the address at which they receive all correspondence related to their personal injury claims is their counsel.  Providing the home addresses of thousands of elderly claimants is unnecessary and could provide the means for unnecessary harassment by salesmen or other unscrupulous individuals.  Baron & Budd and Silber Pearlman request that the Amendatory 2019 Order be clarified to allow for the address of the claimants to be in care of counsel.  Amendment of the order in this manner will still allow compliance with the applicable requirement of Rule 2019 and not unnecessarily invade the claimants' privacy.

**V.
CONCLUSION**

21.     The Amendatory 2019 Order requires the disclosure of information neither required by Rule 2019 nor necessary for its purpose.  Courts have been flexible in the application of Rule 2019 where its strict enforcement would be impracticable.  If the purpose of Rule 2019 can be served through procedures that are less expensive or burdensome, they should be employed wherever possible.

19.     The Amendatory 2019 Order should be amended and/or clarified to allow the submission of exemplar authorizing documents with a verified statement disclosing the names of the Tort Victims who executed each such agreement.  The agreements should also be redacted so as to not disclose any confidential or privileged information.

The Amendatory Rule 2019 Order should also be amended to delete the requirement of a description of how counsel became involved with his/her clients, the requirement of the last four digits of the claimants' Social Security numbers and the requirement of the amount and time of acquisition of the claims. Finally, the address of the Tort Victims should be in care of their counsel.

WHEREFORE, for the foregoing reasons, Baron & Budd and Silber Pearlman, on behalf of the Tort Victims, respectfully request that this Court alter and amend the orders as set forth hereinabove, or alternatively, grant a new trial, and grant such other and further relief to which this Court deems movants entitled, including an extension of time to file 2019 statements, as determined by the Court.

| | |
|---|---|
| Dated:  September 7, 2004<br>Wilmington, Delaware | Respectfully submitted,<br><br>*/s/ Daniel K. Hogan*<br>Daniel K. Hogan (De. Bar No. 2814)<br>1701 Shallcross Avenue<br>Suite C<br>Wilmington, Delaware 19806<br>Telephone:  (302) 656-7540<br>Facsimile: (302) 656-7599<br><br>*and*<br><br>**STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, A Professional Corporation**<br>Sander L. Esserman<br>Texas Bar No. 06671500<br>2323 Bryan Street, Suite 2200<br>Dallas, Texas 75201<br>Telephone : (214) 969-4900<br>Facsimile: (214) 969-4999<br><br>**ATTORNEYS  FOR  BARON  &  BUDD, P.C. and SILBER PEARLMAN, LLP**<br><br>*and*<br><br>**BARON & BUDD, P.C.**<br>Alan B. Rich<br>3102 Oak Lawn Ave., Suite 1100<br>Dallas, Texas 75219<br>Telephone: (214) 521-3605<br>Facsimile: (214) 520-1181 |