Hearing Date: September 27, 2004 at 12:00 p.m.<br>
Objection Deadline: September 9 , 2004<br>
(By agreement)

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

**RESPONSE BY MASSACHUSETTS BAY TRANSPORTATION AUTHORITY TO DEBTORS' FIFTH OMNIBUS OBJECTION TO CLAIMS (SUBSTANTIVE)**

The Massachusetts Bay Transportation Authority ("MBTA") hereby responds to the Debtors' Objection to the MBTA's Proof of Claim as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holdings, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company. **For purposes of this Response, the foregoing entities shall be defined as the "Debtor."**

555284_1

## I. BACKGROUND

1. On March 28, 2003, the MBTA filed a Non-Asbestos Proof of Claim in this proceeding against debtor W. R. Grace & Co., - Conn, a copy of which is attached hereto at *Tab A* ("MBTA Claim").[2] The MBTA Claim arises out of the alleged contamination of Russell Field and the liability under Massachusetts General Laws Chapter 21E, the Massachusetts Oil and Hazardous Material Release Prevention Act ("Chapter 21E"), for the damages and cleanup costs occasioned thereby.[3] Russell Field is approximately 9 acres of land located in Cambridge, Massachusetts that is used for public recreation purposes. It is owned by the City of Cambridge ("City"). The MBTA Claim is identified in this proceeding as Claim No. 9693.

2. As more particularly set forth in the MBTA Claim, on June 8, 2001, the City sent a so-called Chapter 21E, Section 4A notification[4] to the MBTA, J.F. White Contracting

---

[2]   For avoidance of doubt, the MBTA also filed an Asbestos Property Damage Proof of Claim (the "MBTA Asbestos Claim"). The Debtor has not objected to the MBTA Asbestos Claim as of this date.

[3]   Chapter 21E establishes the classes of parties that are liable for releases of oil and hazardous materials into the environment. Specifically, Chapter 21E, Section 5 imposes liability upon (a) the current owner and operator of the site from or at which there has been a release of oil or hazardous material; (b) the owner and operator of the site at the time of the release of hazardous material; (c) any person who directly or indirectly arranged for the transport, disposal, storage or treatment of hazardous material to or in a site or vessel from or at which there is or has been a release or threat of release of hazardous material; (d) any person who, directly or indirectly, transported any hazardous material to transport, disposal, storage, or treatment vessels or sites from or at which there is or has been a release or threat of release of such material; and (e) any person who otherwise caused or is legally responsible for a release or threat of release of oil or hazardous material. Chapter 21E's implementing regulations, 310 CMR 40.0000 *et seq.*, govern the process for assessing and remediating the contamination caused by those releases.

[4]   G.L. c. 21E, Section 4A requires any person, such as the City, "who has undertaken, is undertaking, or intends to undertake a necessary and appropriate response action or who is or reasonably believes that he might be liable pursuant to section five [of Chapter 21E]" to notify any other person "he reasonably believes is liable pursuant to section five that the response action has been taken or is being taken or of the notifier's intent to take such response action or to seek contribution, reimbursement or equitable share from other persons, and that the notifier requests the person to whom the notice is being sent either to itself perform or participate in the performance of the response action on an equitable basis or to make contribution or reimbursement or pay its equitable share of the costs of such response action or other liability." G.L. c. 21E, § 4A(a). Within forty-five days of receipt, the recipient must provide a written response to the notice letter and, within sixty days after the notifier has received the response, "the

2

Company, Morrison and Knudsen Corporation, Mergentime Corporation, Modern Continental Construction Co., Inc., Perini Corporation, Sverdrup & Parcel and Associates, Inc. and the Debtor and its affiliates ("Demand Letter"), notifying the recipients that the City was engaged in assessing and remediating the contamination at Russell Field and that the City intended to pursue claims against them to recover the costs of that work.[5]  A copy of the Demand Letter including exhibits is attached hereto at *Tab B.*  The parties are currently involved in the pre-litigation procedures required by Chapter 21E, Section 4A.

       3.      The City alleges that, since at least the early 1900s, the Debtor and its predecessors or affiliates have owned and operated property directly abutting Russell Field and that, in connection with the industrial activities conducted by the Debtor there, the Debtor used, generated and released into the environment oil and hazardous materials.  "On information and belief, oil and hazardous materials generated by W. R. Grace have been released to soil and groundwater at the Russell Field Property as a result of direct releases from W. R. Grace's operations, migration through soils and/or groundwater, and/or surface water runoff."  Demand Letter at Exhibit A, page 2.

---

notifier and responder shall confer in good faith in an effort to resolve all disputes that may exist between them with respect to participation in or funding of the response action or other actual or potential liability in question."  G.L. c. 21E, § 4A(b).  Within seventy-five days after the notifier has received the response, either the notifier or the responder may request that any disputes remaining between them be submitted to alternative dispute resolution.  *Id*.  Only after these procedures have been carried out may the notifier commence a civil action seeking from the recipient "contribution, reimbursement or an equitable share of the costs of such response action or of such actual or potential liability."  *Id*. at § 4A(c).

[5]    The City sent an earlier Chapter 21E, Section 4A notification to the MBTA by letter dated August 4, 1998, which made allegations similar to those contained in the June 8, 2001 letter.  On October 27, 1998, the City served a Chapter 21E, Section 4A notification upon Perini Corporation, Sverdrup & Parcel and Associates, Inc., Modern Continental Construction Co., Inc., J.F. White Contracting Company, Morrison Knudsen Corporation and Mergentime Corporation.  Thereafter, all of these parties, as well as the Debtor, entered into Standstill Agreements with the City.

555284_1

4.      With respect to the MBTA, the City alleges that during construction of a subway extension, the MBTA and its contractors used Russell Field as a staging area for "construction equipment, mills, lay down, storage, backfill and construction personnel" and that, at the conclusion of the project, the MBTA and its contractors reconstructed Russell Field "for public open space purposes." Demand Letter at page 4. The City contends that the soil that was excavated to build the subway extension was contaminated with oil and hazardous materials and that the MBTA and its contractors staged this contaminated excavate on Russell Field during the project. The City also argues that some of the contaminated excavate was used as backfill during the reconstruction activities, resulting in the current contamination of Russell Field. *Id.*

5.      Importantly, the City alleges that the source of this offending soil was the Debtor's property and, as stated above, this soil was contaminated as a result of the Debtor's industrial activities. According to the City, "The MBTA's Red Line Extension was designed to pass through the northern section of the Russell Field Property ***and a portion of W. R. Grace's property, including an area which has been used for many years by W. R. Grace & Company for the disposal of sludge containing organic compounds***." Demand Letter at Exhibit A, page 3 (emphasis added).

6.      The City also alleges that the soil excavated from the Debtor's property was so contaminated it required "solidification" before it could be transported off-site for disposal or reused on Russell Field. The Demand Letter asserts that, in connection with the process undertaken to solidify the Debtor's contaminated soil, "excavated untreated contaminated sludge was loaded onto an unlined area abutting and/or directly on the Russell Field Property prior to be [sic] loaded into the 'charging area'—an area which has now been confirmed to correlate directly

4

with a contamination 'hot spot' on the Russell Field property. In addition, one of the solidified sludge stockpiling locations was directly on the Russell Field Property—again correlating directly with a contamination 'hot spot' on the Russell Field property. Two other solidified sludge stockpiling areas were immediately adjacent to the Russell Field Property." *Id*. at Exhibit A, page 5.

7. The City claims that the Debtor, the MBTA and its contractors are liable to the City under Chapter 21E for the oil and hazardous materials that the City asserts are contaminating the soil at Russell Field. The City seeks to recover a portion of the costs it has incurred and will incur in assessing and remediating Russell Field.[6] The City alleges that, as of June 8, 2001, it had spent approximately $600,000 in response costs and estimated that future response costs could range from approximately $550,000 to over $14.2 million. The City currently alleges that it has spent approximately $1,250,000 in response costs and estimates that additional future response costs will be approximately $1,250,000.

**II.     IT IS THE DEBTOR'S BURDEN TO PRESENT SUBSTANTIAL EVIDENCE TO OVERCOME THE PRIMA FACIE EFFECT OF THE MBTA CLAIM**

8. On May 5, 2004, the Debtor filed a Fifth Omnibus Objection to Claims (Substantive) (the "Objection"). In the Objection, the Debtor objected to the MBTA Claim pursuant to Section 502(b)(1) of the Bankruptcy Code, which section states that a claim shall not be allowed if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." The Debtor asserts that the MBTA Claim is unenforceable for two reasons: (i) the

---

[6]     As the owner of the Russell Field, the City is also liable under Chapter 21E. *See* G.L. c. 21E, § 5(a)(1).

5

Debtor's books and records indicate that the Debtors have no liability for the MBTA Claim, and (ii) the MBTA Claim is unliquidated. The MBTA specifically reserves the right to respond in the future in the event additional objections, other than those set forth in the Objection, are made against the MBTA Claim.

9.  Both of these assertions are without merit. It is well settled that a proof of claim which comports with the requirements of Federal Rule of Bankruptcy Procedure 3001(f) constitutes *prima facie* evidence of the validity and amount of the claim. The interposition of an objection does not deprive the proof of claim of presumptive validity unless the objection is supported by *substantial evidence*. *Norton Bankruptcy Law & Practice*, Bankruptcy Rules at 1974 (2003) (emphasis added); *see also In re Beverages, Int'l, Ltd.*, 50 B.R. 273, 276 (Bankr.D.Mass. 1985). Accordingly, it is the Debtors' burden to present substantial evidence to overcome the *prima facie* effect of the Claim. *In re Mid-American Waste Systems, Inc.*, 284 B.R. 53, 65 (Bankr.D.Del.2002).

**A. THE DEBTOR HAS FAILED TO MEET ITS BURDEN**

**1. THE DEBTOR HAS NOT PROVIDED ANY EVIDENCE THAT IT IS NOT LIABLE FOR THE CONTAMINATION AT RUSSELL FIELD**

10.  The Debtor has utterly failed to meet its burden with respect to its non-liability assertion. The Debtor argues that it has no liability because "Materials placed on Russell Field by MBTA Contractor not Grace and Groundwater Flow is from Russell Field to Grace Property." Objection at Exhibit C, page 4 of 8, at Item 35. As an initial matter, the contention that the contaminated soils were placed on Russell Field by the MBTA's contractors and not by the Debtor is simply incorrect. As stated above, the City alleges that the soil that was excavated

from the Debtor's property was so contaminated it required "solidification" before it could be disposed of or reused, and that the solidification process occurred on or near Russell Field, causing its contamination.  Further, the City alleges that the Debtor actively participated in both the design and the solidification work itself:  "To address the most contaminated areas of the W. R. Grace property in the vicinity of the proposed Red Line Extension, W. R. Grace, the MBTA and their contractors *jointly designed and conducted* a process to excavate and solidify what was believed to be the most contaminated sludge on the Grace property, including sludge from the process sludge waste disposal areas adjacent to the Russell Field Property."  (Emphasis added and citations omitted).

11.     Accordingly, the Debtor is factually incorrect when it argues that it had no role in the disposition of its contaminated soil on Russell Field.  The Debtor's involvement with the sludge solidification process would render it liable under Chapter 21E which imposes liability upon parties "who by contract, agreement, or otherwise, directly or indirectly, arranged for the transport, disposal, storage or treatment of hazardous material to or in a site or vessel from or at which there is or has been a release or threat of release of hazardous material."  G.L. c. 21E, § 5(a)(3).  The Debtor "arranged" for the transport, disposal, storage and/or treatment of its contaminated soil at Russell Field when it participated in the design and implementation of the program whereby its contaminated soil was taken from its property and stored and treated (through the solidification process) at Russell Field.  The Debtor's involvement with that process renders it liable under Chapter 21E for any resulting contamination.  *See Acushnet Co. v. Amoco Oil Co., Inc.*, 1998 WL 1181996 (Mass. 1998).

12.     Moreover, even if the Debtor is correct that it had no role in the sludge solidification process, the City argues other, independent grounds for the Debtor's Chapter 21E liability for the contamination of Russell Field.  Specifically, the City sets forth a wealth of information in the Demand Letter confirming the release of oil and hazardous materials at the Debtor's property over the course of the last century.  As stated by the City, "The release of oil and hazardous materials to soils and groundwater at W. R. Grace's property was confirmed during the subsurface investigations conducted on the property in the 1970s in anticipation of the MBTA's Red Line Extension project.  According to the City, numerous investigations of the Grace property since then have confirmed the release of oil and hazardous materials on and in the vicinity of the Grace property, including among others the release of asbestos, napthalene, PAHs and metals (the contaminants of concern at the Russell Field Property)."  Demand Letter at Exhibit A, page 2.  These contaminants, according to the City, "have been released to soil and groundwater at the Russell Field Property as a result of direct releases from W. R. Grace's operations, migration through soils and/or groundwater, and/or surface water runoff."  *Id*. Indeed, it is the MBTA's understanding that the Debtor is performing an environmental cleanup of asbestos on the Debtor's property adjacent to Russell Field.  The Debtor's contention that it is not liable because groundwater flow is "from Russell Field to Grace Property" misses the mark because, even if true,[7] the City does not contend that only groundwater has been impacted at Russell Field.  Rather, the City contends that the soil at Russell Field is contaminated. Moreover, the City does not limit the migration pathway to groundwater.  Rather, the City alleges that the oil and hazardous materials used, generated and disposed of by the Debtor over

---

[7]     The Debtor has not offered any evidence to support its contention as to the direction of groundwater flow.

8

the years made their way to Russell Field by direct disposal on Russell Field, airborne deposition (particularly relevant for asbestos in soils contamination such as is present here), and migration through soil. The Debtor has therefore done little to disprove that it is liable pursuant to Chapter 21E, as it is the current owner of a site from or at which a release of oil or hazardous materials has occurred.

### B. EVEN IF THE MBTA CLAIM IS UNLIQUIDATED, THE MBTA CLAIM IS ENFORCEABLE.

13. The Debtor also asserts that the MBTA Claim is unenforceable because the MBTA Claim does not contain a sum certain, *i.e.*, the MBTA Claim is "unliquidated." The Debtor's assertion is an incorrect statement of the applicable law. Federal Rule of Bankruptcy Procedure 3001(c) does not require a proof of claim to specify a sum certain. Moreover, the Bankruptcy Code's expansive definition of claim permits allowance of most unliquidated claims. *See* Section 101(5) of the Bankruptcy Code (claim is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent . . ."), and Section 502(c)(1) of the Bankruptcy Code (contingent and unliquidated claims shall be estimated if the fixing or liquidation of the claim would unduly delay the administration of the case). *In Re Stone & Webster, Inc.*, 279 B.R. 748, 809 (Bankr.D.Del. 2002). Therefore, the mere fact that the MBTA claim may be currently unliquidated[8] will not bar allowance of the MBTA Claim. Accordingly, contrary to the Debtor's assertion, the MBTA claim may not be disallowed solely by reason of it being unliquidated.

---

[8] The MBTA does not concede that the MBTA Claim is in fact unliquidated.

9

**WHEREFORE**, the MBTA hereby requests that this Court: (a) deny the Debtors' Objection to the MBTA's Proof of Claim, and (b) grant such other and further relief as is just and proper.

By: /s/ Peter C. Hughes
Peter C. Hughes
Dilworth Paxson LLP
First Federal Plaza - Suite 500
Wilmington, DE 19801
Telephone: (302) 571-9800

David C. Fixler
Rubin and Rudman LLP
50 Rowes Wharf
Boston, MA 02110
Telephone: (617) 330-7000

Counsel to Massachusetts Bay
Transportation Authority

Dated: September 9, 2004

Hearing Date: September 27, 2004 at 12:00 p.m.
Objection Deadline: September 9 , 2004
(By agreement)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

## ORDER

AND NOW, this _____ day of _____, 2004, upon consideration of the Debtor's Fifth Omnibus Objection to Claims (Substantive) (the "Objection") and the Response by Massachusetts Bay Transportation Authority to the Objection, it is hereby ORDERED and DECREED as follows:

1. The Objection is overruled.

_____
United States Bankruptcy Judge

555284_1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**CERTIFICATE OF SERVICE**

I, Peter C. Hughes, do hereby certify that I caused copies of the foregoing response to be served on this date on the parties set forth below via (a) electronic mail; (b) facsimile (without exhibits) and (c) overnight mail:

> Rachel R. Schulman, Esquire
> Kirkland & Ellis LLP
> 200 East Randolph Drive
> Chicago, IL 60601
>
> David W. Carickhoff, Jr., Esquire
> Pachulski, Stang, Ziehl, Young, Jones & Weintraub, P.C.
> 1919 North Market Street – 16th Floor
> Wilmington, DE 19899-8705 (Courier 19801)

Date: September 9, 2004

/s/ Peter C. Hughes
Peter C. Hughes

555284_1