4853-30

# ANDERSON & KREIGER LLP

### Attorneys at Law

STEPHEN D. ANDERSON
Also admitted in CT

ARTHUR P. KREIGER
Also admitted in NY

GEORGE A. HALL, JR.
Also admitted in NH

The Bulfinch Building
47 Thorndike Street
Cambridge, MA  02141
(617) 252-6575
Fax: (617) 252-6899

ACHESON H. CALLAGHAN
Of Counsel

DOUGLAS H. WILKINS
Of Counsel

PETER J. CURA
JEFFREY L. ROELOFS
DAWN M. STOLFI

June 8, 2001

**CERTIFIED MAIL # 7099 3400 0018 4002 5502 RRR**
James H. M. Sprayregen, Esq.
James W. Kapp III, Esq.
Samuel A. Schwartz, Esq.
Roger J. Higgins, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, Illinois 60601

**CERTIFIED MAIL # 7099 3400 0018 4002 5482 RRR**
J.F. White Contracting Company,
Morrison Knudsen Corporation, and
Mergentime Corporation
c/o Barry P. Fogel, Esq.
Keegan, Werlin & Pabian LLP
21 Custom House
Boston, MA 02110

**CERTIFIED MAIL # 7099 3400 0018 4002 5208 RRR**
Modern Continental Construction Co., Inc.
c/o Anton T. Moehrke, Esq.
Moehrke, Mackie & Shea, P.C.
283 Dartmouth Street
Boston, MA 02116

**CERTIFIED MAIL # 7099 3400 0018 4002 5284 RRR**
Massachusetts Bay Transportation Authority
c/o Michael Crossen, Esq.
Rubin & Rudman LLP
50 Rowes Wharf
Boston, MA 02110

**CERTIFIED MAIL # 7099 3400 0018 4002 5499 RRR**
Laura Davis Jones, Esq.
Hamid R. Rafatjoo, Esq.
David W. Carickhoff, Jr., Esq.
Pachulski, Stang, Ziehl, Young & Jones P.C.
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

**CERTIFIED MAIL #7099 3400 0018 4002 5475 RRR**
Perini Corporation
c/o Jeffrey L. Salinger, Esq.
Mintz, Levin, Cohen, Ferris, Glovsky and Popeo, P.C.
1 Financial Center
Boston, MA 02111

**CERTIFIED MAIL # 7099 3400 0018 4002 5277 RRR**
Sverdrup & Parcel and Associates, Inc.
c/o Stanley Martin, Esq.
Gadsby & Hanna LLP
225 Franklin Street
Boston, MA 02110

RE:   Claimant:           City of Cambridge
      Subject Property:   Russell Field
      Notification:       Initial Contamination Release Notification to W.R. Grace and Affiliates and Supplemental Demand To Other Potentially Responsible Parties Listed Above Under Massachusetts General Laws Chapter 21E, Section 4A

♻ Printed on recycled paper

PRP Counsel
June 8, 2001
Page 2

Dear Counsel:

This firm represents the City of Cambridge (the "City") with respect to contamination of real property owned by the City in North Cambridge which is used for public recreation purposes and is known as Russell Field (the "Russell Field Property").[1] This letter constitutes a formal release notification pursuant to M.G.L. c. 21E, § 4A, to bankruptcy counsel for W.R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W.R. Grace & Co.-Conn., and any of their predecessors, successors and affiliated entities having any current or former ownership, operation or other connection to the property abutting the Russell Field Property, including without limitation 36-64 Whittemore Avenue, Cambridge, Massachusetts, and/or the operations conducted thereon (collectively, "W.R. Grace" or "Grace"). This letter also serves as a follow-up to release notification and demand letters previously served, pursuant to Massachusetts General Laws ("M.G.L.") c. 21E, § 4A, on each of the other above-referenced potentially responsible parties ("PRPs").[2]

## W.R. GRACE BANKRUPTCY PROCEEDINGS

The City recognizes that W.R. Grace (including some sixty affiliated entities) has filed for bankruptcy relief under Chapter 11 of the federal Bankruptcy Code (United States Bankruptcy Court for the District of Delaware, Case Nos. 01-1139 through 01-1200). In satisfaction of the pre-litigation notification requirements of M.G.L. 21E, § 4A, the City is sending this letter to W.R.Grace's bankruptcy counsel for notification purposes only to advise bankruptcy counsel that the City may file a proof of claim, petition for relief from stay and/or other appropriate pleadings in the Bankruptcy Court concerning this matter and the basis therefor.

The City also wants to advise bankruptcy counsel that, prior to commencing bankruptcy proceedings, W.R. Grace entered into a Standstill Agreement with the City on June 5, 1998, a copy of which is attached hereto as Exhibit C. The City has kept W.R. Grace, through its local

---

[1]    The Russell Field Property is a City-owned recreational facility located on and in the vicinity of Rindge Avenue, Alewife Brook Parkway, Harvey Street and Clifton Street. The Russell Field Property consists of two baseball fields, a football field, a soccer field, public access walkways, landscaped areas and a parking lot (off Rindge Avenue). It is bordered to the north and west by property owned by W.R. Grace, to the south by Rindge Avenue and a Metropolitan District Commission (MDC) swimming pool, and to the east by Clifton Street residences.

[2]    On August 4, 1998, the City served a release notification and demand letter, pursuant to MGL c. 21E, § 4A, on the MBTA. On October 27, 1998, the City served a release notification and demand letter, pursuant to MGL c. 21E, § 4A, on (1) Perini Corporation, (2) Sverdrup & Parcel and Associates, Inc., (3) Modern Continental Construction Co., Inc., (4) J.F. White Contracting Company, (5) Morrison Knudsen Corporation, and (6) Mergentime Corporation. All of these parties, as well as W.R. Grace, have since entered into Standstill Agreements with the City with respect to contamination at the Russell Field Property.



PRP Counsel
June 8, 2001
Page 3

environmental counsel,[3] informed of the City's investigation of contamination at the Russell Field Property. Accordingly, the City is sending a courtesy copy of this letter to Attorney Cooke, in the event she is still involved in handling this matter for W.R. Grace in any way.

While the City understands that it may need to pursue claims against W.R. Grace through the appropriate bankruptcy procedures, the City is also mindful of the statutory prerequisite to the City's filing in court its claims against W.R. Grace pursuant to M.G.L. c. 21E, § 4A. Therefore, the City respectfully invites W.R. Grace's bankruptcy counsel (and/or, with bankruptcy counsel's permission, its local environmental counsel if she is still involved in this matter) to attend or participate by speaker phone in the proposed conference related to these matters, as described below. If bankruptcy counsel is or is not willing to do so for whatever reason, the City respectfully requests that bankruptcy counsel simply inform the undersigned.

Finally, because the activities of other PRPs in this matter involved the excavation, transportation, storage, disposal and/or release of materials at the Russell Field Property which had allegedly been contaminated by the release of oil and hazardous materials at or from the W.R. Grace property in North Cambridge, MA, and because the other PRPs are strictly, jointly and severally liable under Massachusetts law for such matters, the City's description of its claims against such other PRPs necessarily includes reference to the activities of W.R. Grace. The City intends to pursue its separate and independent claims against the other PRPs in accordance with applicable Massachusetts law.

## PROPOSED CONFERENCE AMONG THE CITY AND THE PRPs

Subject to the foregoing, the City invites representatives of each of the PRPs identified above to attend a meeting on July 27, 2001 at Anderson & Kreiger, LLP, 47 Thorndike Street, Cambridge, Massachusetts, to discuss the status of the City's investigations of the Russell Field Property, the basis for the City's claims against each of the parties, and potential settlement of those claims. The City respectfully requests that you respond to the undersigned by June 29, 2001 as to whether or not you or other representatives of your client(s) will attend. If you or other representatives of your client(s) cannot attend on July 27 but would like to participate in a meeting with the City, please advise as to any dates prior to July 27 that you are available. We will attempt to arrange an alternative meeting(s) with the parties individually or in subgroups if necessary.

## OVERVIEW OF EACH PARTY'S RELATIONSHIP TO RUSSELL FIELD

Since at least the early 1900's, W.R. Grace and it predecessors or affiliates have owned and operated property directly abutting the Russell Field Property. On information and belief, the activities of W.R. Grace and its predecessors or affiliates resulted in the generation,

---

[3]     Susan M. Cooke, P.C., McDermott, Will & Emery, 75 State Street, Boston, MA  02109-5077.



ANDERSON & KREIGER LLP
*Attorneys at Law*
♲ Printed on recycled paper

PRP Counsel
June 8, 2001
Page 4

transport, storage, disposal and release of oil and hazardous materials into the environment, including but not limited to releases of polycyclic aromatic hydrocarbons ("PAHs"), napthalenes, asbestos, metals and other hazardous constituents, which have affected the soils and/or groundwater on and near the W.R. Grace property including, without limitation, the Russell Field Property.

In connection with the construction of the Massachusetts Bay Transportation Authority's ("MBTA") Red Line Extension in the early 1980's, the MBTA and its contractors used and controlled the use of the Russell Field Property for purposes of "construction staging i.e., construction equipment, mills, lay down, storage, backfill, and construction personnel. . . ." (Indemnity Agreement between MBTA and City, Section I.1, DPW00447-455).[4]  At the conclusion of the construction staging activities, the MBTA and its contractors reconstructed the Russell Field Property for public open space purposes. In connection with these activities, the MBTA and its contractors operated various heavy equipment at the Russell Field Property, stored, deposited and disposed of various materials and fill on the Russell Field Property, excavated, bulldozed, and otherwise performed earth work activities at the Russell Field Property, and/or otherwise controlled those and other operations at the Russell Field Property over a period of several years.

On information and belief, Sverdrup & Parcel and Associates, Inc. ("Sverdrup") was the design engineering and architecture firm contracted by the MBTA for the construction of the Red Line Extension pursuant to MBTA Contract Nos. 091-508A and 091-509. On information and belief, Perini Corporation ("Perini") was the general contractor for the construction of the Red Line Extension including the tunnel constructed from Harvey Street to the Alewife Station, pursuant to U.M.T.A. Project Number MA-23-9008, MBTA Contract Nos. 091-508, 091-508A, and 091-601. On information and belief, the Joint Venture of J.F. White Contracting Co., Morrison Knudsen Corporation, and Mergentime Corporation ("White/Morrison/Mergentime") performed work on the Red Line Extension tunnel from Davis Square to Harvey Street pursuant to MBTA Contract No. 91-509. On information and belief, Sverdrup, Perini, and White/Morrison/Mergentime used the Russell Field Property as a staging area for materials excavated as a result of the construction of the Red Line Extension, including without limitation materials contaminated by the release of oil and hazardous materials released at or from the W.R. Grace property.

On information and belief, Modern Continental Construction Co., Inc. ("Modern Continental") was the general contractor for the MBTA on the restoration of the Russell Field Property pursuant to MBTA Contract No. E1CN36. On information and belief, Sverdrup was also the design engineering and architecture firm contracted by the MBTA for the restoration of

---

[4]     The City has made available to the parties a large volume of documents pertaining to this matter. References to those documents by Bates Number are set forth in the text. The City will make copies of any of these documents available at cost to any party that so requests.



ANDERSON & KREIGER LLP
Attorneys at Law
Printed on recycled paper

PRP Counsel
June 8, 2001
Page 5

the Russell Field Property pursuant to MBTA Contract Nos. E1CN36 and 091-512. On information and belief, Modern Continental and Sverdrup reconstructed the Russell Field Property on behalf of the MBTA.

On information and belief, the operations of W.R. Grace, the MBTA, Perini, Modern Continental, Sverdrup, and White/Morrison/Mergentime at and in the vicinity of the Russell Field Property resulted in the release of oil and hazardous materials at the Russell Field Property. The City has incurred and expects to incur in the future significant costs associated with the assessment, containment and removal of the release of such oil and hazardous materials at the Russell Field Property. A more detailed description of W.R. Grace's operations and the activities of the MBTA and its contractors resulting in the the release of such oil and hazardous materials at the Russell Field Property is attached hereto as Exhibit A.

## RESPONSE ACTIONS AT THE SITE

The City has retained various consultants and a Licensed Site Professional ("LSP") to undertake surface and subsurface investigations of the Russell Field Property constituting response actions under M.G.L. c. 21E and the Massachusetts Contingency Plan, 310 CMR 40.000 et seq. ("the MCP"). The investigations conducted to date are described in various reports and documents previously made available to the parties including, without limitation, the following documents (additional copies of which are available at cost on request):

1. Phase I Assessment Report and Tier Classification for the City by Environmental Health & Engineering, Inc. dated July 23, 1999, summarizing previous investigations at the site through Spring 1999;

2. Environmental Site Assessment Subsurface Conditions at the Russell Field Property, Final Report, prepared for the City by Environmental Health & Engineering dated October 22, 1998, indicating that various hazardous constituents in excess of DEP's reportable concentrations have been detected in the soils from beneath the Russell Field Property in areas where each of the parties performed and/or controlled the foregoing operations;

3. Laboratory analytical results of tests for asbestos performed on soil samples collected at the Russell Field Property, indicating that asbestos was detected in subsurface soil samples PS-2, PS-6 and PS-14 at levels ranging from 3% to 11%; and

4. Environmental Health & Engineering's Final Report of Subsurface Asbestos Investigation at the Russell Field Property dated October 7, 1998, also finding asbestos in PS-4, PS-12, PS-14 and the garden area.



ANDERSON *&* KREIGER LLP
*Attorneys at Law*
Printed on recycled paper

PRP Counsel
June 8, 2001
Page 6

Additional investigations are ongoing.

Recently, the City's consultants have prepared a series of draft maps of the Russell Field Property dated May 24, 2001 showing conditions at the field and the distribution of contaminants at the field. These are as follows (copies included as Exhibit F hereto):

1.  "Contour Plot - Topsoil Fill Boundary," depicting the depth to the bottom of the topsoil and top of the fill layer boundary across the Russell Field Property;

2.  "Surface Plan - RCRA Metals By Zone," depicting the concentrations of total metals detected in surficial soil composites (0-6") within various zones at the Russell Field Property;

3.  "Surface Plan - Total PAHs By Zone," depicting the concentrations of total PAHs detected in surficial soil composites (0-6") within various zones at the Russell Field Property;

4.  "Contour Plot - Polynuclear Aromatic Hydrocarbons in soil < 3 feet," depicting concentrations of PAHs detected in soils less than 3 feet below ground surface across the Russell Field Property;

5.  "Contour Plot - Polynuclear Aromatic Hydrocarbons in soil > 3 feet," depicting concentrations of PAHs detected in soils greater than 3 feet below ground surface across the Russell Field Property;

6.  "Contour Plot - Naphthalene in soil < 3 feet," depicting concentrations of naphthalene detected in soils less than 3 feet below ground surface across the Russell Field Property;

7.  "Contour Plot - Naphthalene in soil > 3 feet," depicting concentrations of naphthalene detected in soils greater than 3 feet below ground surface across the Russell Field Property;

8.  "Potential Shallow Soil Remediation Areas (top 3 feet of soil)," depicting those soils in the top 3 feet across the Russell Field Property currently expected to require remediation due to the presence of asbestos, PAHs, and/or Metals; and

9.  "Potential Deep Soil Remediation Areas (~ top 6 feet of soil - to water table)," depicting those soils at depths greater than 3 feet below ground surface across the Russell Field Property currently expected to require remediation due to the presence of asbestos, PAHs, and/or Metals.



ANDERSON & KREIGER LLP
*Attorneys at Law*
♻ Printed on recycled paper

PRP Counsel
June 8, 2001
Page 7

These plans show a series of "hot spots" of contamination at the Russell Field Property which show the following characteristics:

1.    They are below the topsoil layer and therefore not the result of a release which has occurred after the MBTA and its contractors concluded their activities at the Russell Field Property.

2.    They are associated with the fill layer at depths corresponding to the specific operations undertaken by the MBTA and its contractors at the Russell Field Property.

3.    They exist in areas (a) proximate to W.R. Grace's property and its historical waste disposal lagoons and activities and (b) in specific areas where the MBTA and its contractors transported, handled, stockpiled, stored, moved and/or disposed of materials excavated as a result of the construction of the Red Line Extension (including without limitation materials contaminated by the release of oil and hazardous materials released at or from the W.R. Grace property) and materials brought to and moved around the Russell Field Property in connection with its restoration by the MBTA and its contractors.

4.    They are contaminated with chemicals of concern (including PAHs, napthalenes, asbestos, metals and other hazardous constituents) which were generated, transported, disposed of and released by W.R. Grace at or from its property and which were transported, handled, stockpiled, stored, moved and/or disposed of by the MBTA and its contractors during the construction of the Red Line Extension and the restoration of the Russell Field Property.

To date, the City has incurred approximately $600,000 in investigation and related response costs in connection with contamination at the Russell Field Property. Based on current conditions, the City's consultants preliminarily estimate that future response costs necessary to address contamination at the Russell Field Property will fall in one of the following two sets of ranges (based on certain assumptions and based on the current regulatory uncertainty concerning asbestos performance standards):[5]

1.    The first range assumes that the City can arrive at a Response Action Outcome for the Russell Field Property by excavating contaminated soil to a depth of 3 feet,

---

[5]    These estimates include, without limitation, the cost of complying with the City's asbestos ordinance which will require tenting and venting in connection with the removal and management of asbestos-contaminated soils. See Exhibit D hereto. The MCP requires that the City conduct its response actions in compliance with local law (see, 310 CMR Sections 40.0006 (definition of "Response Action Cost"), 40.0018(3), 40.0031 and 40.0170), and, accordingly, these costs are recoverable under the MCP and Chapter 21E.



ANDERSON *&* KREIGER LLP
*Attorneys at Law*
✿ Printed on recycled paper

PRP Counsel
June 8, 2001
Page 8

disposing of it off-site, and placing an Activity and Use Limitation ("AUL") on the property that will remove the need for remediating soils deeper than 3 feet. For this option, the consultants used two alternate sets of assumptions to provide a reasonable range of costs based on what is currently known about the Russell Field Property.[6]  The first assumes that 8 locations (approximately 1000 tons each) will require soil removal. The second assumes that either the tonnage can be reduced or that some locations will be eliminated.  In each case, costs depend heavily on the quantity and disposal characteristics of the soil removed ($70 to $300/ton for disposal).  The preliminary estimates are:

> 8 Locations @ 1000 tons per location:
> Without tent and vent: $653,000 - $2,493,000
> With tent and vent: $878,000 - $2,718,000
>
> 4 Locations @ 1000 tons or 8 locations @ 500 tons per location:
> Without tent and vent: $326,500 - $1,246,500
> With tent and vent: $551,500 - $1,471,500

2.  The second range assumes that the City can arrive at a Response Action Outcome for the Russell Field Property by excavating contaminated soil and disposing of it off-site without an AUL such that deeper soils need to be remediated.  For deeper soil remediation (to a depth of 6 feet or water table) without an AUL, the consultants included all shallow locations and additional deep locations and used two similar sets of assumptions to provide a reasonable range of costs based on what is currently known about the Russell Field Property.  The first assumes that 15 locations (approximately 3000 tons each) will require soil removal.  The second assumes that either the tonnage can be reduced or that some locations will be eliminated.  Again, costs depend heavily on the quantity and disposal characteristics of the soil removed ($70 to $300/ton for disposal).

> 15 Locations @ 3000 tons per location:
> Without tent and vent: $3,379,000 - $13,729,000
> With tent and vent: $3,879,000 - $14,229,000
>
> 8 Locations @ 3000 tons or 15 locations @ 1500 tons per location:
> Without tent and vent: $1,791,000 - $7,276,000
> With tent and vent: $2,056,000 - $7,541,000

The City is planning to conduct additional sampling in the near future.  The sampling

---

[6]    Due to existing drainage problems and floodplain issues, capping is not likely to be a viable option at the Russell Field Property.


ANDERSON & KREIGER LLP
Attorneys at Law
Printed on recycled paper

PRP Counsel
June 8, 2001
Page 9

may identify additional areas requiring remediation, which would increase the anticipated costs of remediation.

## THE CITY'S DEMANDS

Pursuant to Chapter 21E, the MCP, and appropriate public involvement processes, the City renews its demands that the PRPs as appropriate:[7]

1.  Reimburse all of the City's assessment, containment and removal costs incurred to date, with interest through settlement, with respect to any release or threat of release caused by operations of W.R. Grace, MBTA, Perini, Modern Continental, Sverdrup and White/Morrison/Mergentime;

2.  Perform any and all necessary additional investigations of the Russell Field Property to determine the extent to which the Russell Field Property has been affected as a result of activities conducted by W.R. Grace, MBTA, Perini, Modern Continental, Sverdrup and White/Morrison/Mergentime;

3.  Reimburse the City for all future assessment, containment and removal expenses required by Chapter 21E, the MCP and other applicable laws to achieve a class A1 response action outcome with respect to any release or threat of release caused by the operations of W.R. Grace, MBTA, Perini, Modern Continental, Sverdrup and White/Morrison/Mergentime;

4.  Defend, indemnify and hold harmless the City from and against any environmental claims asserted against it by any person or governmental entity with respect to any release or threat of release caused by the operations of W.R. Grace, MBTA, Perini, Modern Continental, Sverdrup and White/Morrison/Mergentime;

5.  Reimburse the City for damage to its real property resulting from any release or threat of release caused by the operations of W.R. Grace, MBTA, Perini, Modern Continental, Sverdrup and White/Morrison/Mergentime;

6.  Undertake and/or reimburse the City for all actions required by any and all DEP audits of the response actions with respect to any release or threat of release caused by the operations of W.R. Grace, MBTA, Perini, Modern Continental, Sverdrup and White/Morrison/Mergentime;

---

[7]     With respect to W.R. Grace, the City is hereby notifying W.R. Grace's bankruptcy counsel of its intent to pursue its claims against W.R. Grace for the legal, equitable and declaratory relief set forth below, as appropriate. The City may file a proof of claim, petition for relief from stay and/or other appropriate pleadings in the Bankruptcy Court concerning this matter as appropriate in connection with its claims against W.R. Grace.



ANDERSON & KREIGER LLP
*Attorneys at Law*
♻ Printed on recycled paper

PRP Counsel
June 8, 2001
Page 10

7.     Restore the Russell Field Property to a condition satisfactory to the City upon
       completion of any required remediation work; and

8.     Reimburse the City for its reasonable attorney's fees and expert's fees in
       connection with this matter.

In the event this matter proceeds to litigation, the City will seek the foregoing legal,
equitable and declaratory relief, and any additional relief to which it is entitled in law or in
equity, jointly and severally.

The City requests that you notify your clients' respective liability insurance carriers of
this demand. The City is willing to give that notice itself if you give me the appropriate names
and addresses promptly.

**SETTLEMENT OFFER**

Pursuant to Chapter 21E, Section 4A, the City makes the following settlement offer with
respect to the foregoing claims:

1.     The City will abide by an "80/20" equitable allocation of the City's assessment,
       containment and removal costs incurred to date, with interest through settlement.
       The City's share of those costs will be 20%. The PRP's (W.R. Grace, MBTA,
       Perini, Modern Continental, Sverdrup and White/Morrison/Mergentime) share of
       the costs will be 80%. The City is amenable to an appropriate sub-allocation of
       the PRPs' 80% share in an equitable manner, as long as the City is not left to
       pursue a disproportionate share against W.R. Grace in the Bankruptcy
       proceedings or otherwise as appropriate. Given joint and several liability under
       Chapter 21E, the City suggests a per capita equitable allocation among the six
       PRPs (W.R. Grace, MBTA, Perini, Modern Continental, Sverdrup and
       White/Morrison/Mergentime) unless the parties otherwise agree.

2.     The City is willing to retain a qualified licensed site professional and
       environmental remediation contractor to perform all additional assessment,
       containment and removal actions required by Chapter 21E, the MCP and other
       applicable law to achieve a response action outcome reflecting a permanent
       solution for the Russell Field Property within the time allowed by law; provided
       that the same "80/20" allocation shall apply as in item 1. The City is willing, if
       reasonably possible, to achieve such a response action outcome supported by an
       Activity and Use Limitation acceptable to the City, provided that the AUL shall
       not limit or restrict any use of the Russell Field Property for public recreation
       purposes, including the uses to which it is currently being put and any reasonably
       foreseeable uses to which it may be put, and specifically including recreation by



ANDERSON & KREIGER LLP
*Attorneys at Law*
Printed on recycled paper

PRP Counsel
June 8, 2001
Page 11

children.

3.    The City is willing to incorporate in the Settlement Agreement an exception to
any mutual releases and a continuing Standstill Agreement preserving the City's
rights against the PRPs and the PRPs' rights against each other and against the
City for defense, indemnity, contribution and other cross-claims and third party
claims in the event any environmental claims are asserted against the City and/or
the PRPs by any third party or governmental entity with respect to any release or
threat of release of oil or hazardous materials at or from the Russell Field
Property.

4.    The City is willing to forego reimbursement for damage to its real property
resulting from any release or threat of release caused by the operations of W.R.
Grace, MBTA, Perini, Modern Continental, Sverdrup and
White/Morrison/Mergentime and by the imposition of the AUL; provided,
however, that the PRPs shall agree to (a) undertake or fund all actions required by
any and all DEP audits of the response actions at the site, (b) restore or fund the
restoration of the Russell Field Property to a condition satisfactory to the City
upon completion of any required remediation work, and (c) in the event of any
future activities at the Russell Field Property triggering actvities under the AUL
(e.g. excavations for a new field house), reimburse the City for any added costs
associated with those activities occasioned by the effect of the AUL and the
presence of the contaminated soil at the site.

## SECTION 4A CONFERENCE

As set forth at the outset of this letter, the City invites each of you or other
representatives of the parties identified above to attend a meeting on July 27, 2001 at 10 a.m. at
Anderson & Kreiger, LLP, 47 Thorndike Street, Cambridge, Massachusetts to discuss the status
of the City's investigations of the Russell Field Property, the basis for the City's claims against
each of the PRPs, and potential settlement of those claims. The City respectfully requests that
you respond to the undersigned by June 29, 2001, as to whether or not you or other
representatives of your client(s) will attend. If you or other representatives of your client(s)
cannot attend on July 27 but would like to participate in a meeting with the City, please advise as



ANDERSON & KREIGER LLP
*Attorneys at Law*
♻ Printed on recycled paper

PRP Counsel
June 8, 2001
Page 12

to any dates prior to July 27 that you are available. We will attempt to arrange an alternative meeting(s) with the parties individually or in subgroups if necessary.

Sincerely,

Stephen D. Anderson
sanderson@andersonkreiger.com

Enclosures

cc:    Robert W. Healy, City Manager
       Nancy E. Glowa, Esq.
       Susanne Rasmussen
       John Bolduc
       Roger J. Ludlam, President (Perini)
       Richard Eugene Beumer, President (Sverdrup)
       Lelio Marino, President (Modern Continental)
       Peter T. White, President (J.F. White Contracting Company)
       Robert Allen Tinstman, President (Morrison Knudsen Corporation)
       C.E. Mergentime, President (Mergentime Corporation)
       Kevin J. Sullivan, Chairman (MBTA)
       Susan Cooke, Esq.

ANDERSON & KREIGER LLP
Attorneys at Law
♻ Printed on recycled paper

# EXHIBITS

Exhibit A:   Summary of Factual Basis for Liability of W.R. Grace, the MBTA and Their Contractors for Contamination at the Russell Field Property

Exhibit B:   Copies of MBTA Photographs (CDD08043-CDD08066)

Exhibit C:   Standstill Agreement between W.R. Grace & Co. and the City of Cambridge

Exhibit D:   City of Cambridge Asbestos Ordinance

Exhibit E:   Draft Figure, dated May 1997, entitled "W.R. Grace Site Historic Site Uses" (CDD08067)

Exhibit F:   Draft Figures, dated May 24, 2001, prepared by Environmental Health & Engineering, Inc.

camb\env\l\PRP Demand Letter.003.wpd