# EXHIBIT "8"

## NOTICE OF INTENT

All parts of this form and the attached Environmental Data Form shall be completed under the pains and penalties of perjury. Incomplete filings may be rejected.

DATE: August 29, 1980

Conservation Commission of (City/Town): Cambridge

1. Notice is hereby given in accordance with the provisions of Massachusetts G.L. c. 131, s. 40 that the proposed activity described herein is within the jurisdiction of

   (City/Town) Cambridge , at Alewife Brook Parkway Street

   Most recent recording at the Registry of Middlesex County , Book 6634 ,

   Page 529 .

   Certificate (if registered) - .

2. The land on which the work is proposed to be done is owned by:

   NAME(s) W. R. Grace & Company      ADDRESS 62 Whittemore Ave., Cambridge, MA 02140

3. The Applicant submitting this Notice is:

   NAME Massachusetts Bay Transportation Authority      ADDRESS 50 High St., Boston, MA 02110

   TELEPHONE -

   (Optional)The following person is hereby designated to represent the applicant in matters arising hereunder:

   Name Charles B. Steward, Environmental Coordinator      Address 50 High St., Boston, MA 02110

   Telephone 722-5005

4. Plans describing and defining the work, included herewith and made a part hereof, are titled and dated:

   Sludge Solidification, Notice of Intent Composite Plan, August 29, 1980.

5. Identical material has been submitted by ~~certified mail~~ hand delivery as follows:

   Original to Conservation Commission    (Date) August 29, 1980

   Three copies to appropriate regional office of the Department of Environmental Quality Engineering (see map for regions and addresses). Date August 29, 1980

   Northeast X      Southeast_____      Central_____      Western_____

CCC00003

6.  Has the required $25.00 filing fee, payable to the city or town, been included with the submission to the Conservation Commission?  __Yes__

7.  Has the Environmental Data Form been completed and submitted with each copy?  __Yes__

8.  Has a locus map (8½" x 11" copy of USGS topographic sheet with the site marked) been included with each copy?  __Yes__

9.
 (A) Have all obtainable permits, variances, and approvals required by local by-law been obtained?  __Yes__

 (B) If they have not been obtained, have they been applied for?  __-__
     If yes, include with this Notice of Intent any information which has been submitted with such applications which is necessary to describe the effect of the proposed activity on the environment.

10.
 (A) Is the site of the proposed work subject to a wetland restriction order recorded pursuant to G.L. c. 131, s. 40A, or G.L. c. 130, s. 105, by the Department of Environmental Management?  Yes_____  No_____  Do not know __X__

 (B) Is the site of the proposed work in, or within 100 feet of:  a coastal dune __No__ ; coastal bank __No__ ; coastal beach __No__ ; salt marsh __No__ ; land under the ocean __No__ ; a salt pond __No__ ; anadromous/catadromous fish run __No__ ; do not know __-__ ?

11.  Signature(s) of owner(s) of the land (if by agent or option holder, written authorization must be attached)  _Charles B. Steward (signature)_
                                           Charles B. Steward, Environmental Coordinator

12.  What is the purpose of the proposed project?
     The route of the subway tunnel being constructed as part of the MBTA's Red Line Extension Northwest passes through an area which has been used for many years by W. R. Grace & Company for the disposal of sludge containing organic compounds. This sludge was a waste product from their chemical manufacturing processes.

     Under this project, the sludge will be excavated and treated by a chemical solidification process which will convert the sludge to an insoluable, clay-like, inert material that is stable and will not revert to its original form. This material will then either (1) be transported to a Department of Environmental Quality Engineering approved site outside the City of Cambridge or (2) remain on Grace property.

13.  I HEREBY CERTIFY UNDER THE PAINS AND PENALTIES OF PERJURY THAT THE FORGOING NOTICE OF INTENT AND ACCOMPANYING ENVIRONMENTAL DATA FORM ARE TRUE AND COMPLETE.

_Charles B. Steward (signature)_                    __August 29, 1980__
Signature of Applicant                                      Date
Charles B. Steward
Environmental Coordinator

CCC00004

DESCRIPTION OF MODIFICATIONS PROPOSED ON THE SITE

The site now contains approximately 10,000 cubic yards of sludge which is a waste product of W. R. Grace & Company's chemical manufacturing process. In a soil and groundwater sampling program, planned in cooperation with state and federal regulatory agencies, the sludge was found to contain large quantities of organic compounds and the groundwater beneath the sludge was found to contain high concentrations of sulfate and to be acidic in nature.

In order to relieve the site of this unsuitable condition, the Massachusetts Bay Transportation Authority and W. R. Grace & Company, in a cooperative effort, will undertake a program to solidify and stabilize this material. The solidification process will involve mixing groundwater and chemicals with the sludge to produce an insoluble solid that is chemically and mechanically stable and will not revert to its original form. The end result of the process will be a clay-like inert material.

The solidification process will involve four steps. First, the sludge will be loaded into a Charging Area, a sixty foot by sixty foot area surrounded by a four foot high earth berm. This will serve as a containment area for the sludge prior to processing. Second, the sludge will be loaded into a hopper and conveyed to the Mixing Area where the chemicals and contaminated groundwater will be blended in with the sludge to achieve solidification. Third, the treated sludge, still in liquid form, will be transported to the Deposit Area, a series of five containment cells formed by earth berms. The sludge will remain in the Deposit Area for approximately 10 days to achieve a clay-like consistency in which it can be easily handled. Fourth, the now dry, solidified sludge will be transported to a temporary storage stockpile prepatory to being either (1) removed from the site or (2) graded on the existing site.

Department of Environmental Quality Engineering letters to the MBTA August 1, 1980 and April 23, 1980 detail their acceptance of the solidification process. These letters are attached. The DEQE has classified "the solidified acid sludge as a special waste subject to 310 CMR 10.16: (1) due to the handling that will be required for the disposal of the waste. This solidified waste can be safely disposed of at a landfill facility, provided that it is not mixed with biodegradeable refuse. As such, it must be isolated in a separate area of the landfill, or on top of closed sections, and covered.

The MBTA is presently negotiating with DEQE recommended landfill sites for acceptance of the solidified waste. However, if the MBTA is unable to find a landfill that will accept the solidified waste, it will remain on the Grace site. A plan showing final grading including effects on wetlands and/or flood storage will be submitted to the Conservation Commmission.

Attached is material prepared by Solid Tek on the solidification process. A letter from DEQE dated April 23, 1980 is also attached.

The approximate time involved for the work will be 90 days. At the completion of the work, the site will become available for use as part of the work area for Massachusetts Bay Transportation Authority Construction Contracts 091-508A and 091-601.

CCC00005

## ENVIRONMENTAL DATA FORM

1. All parts of this form are to be filled out by the applicant or his agent under the provisions of G.L. C. 131 s. 40.

2. Where a section is not relevant to the application in question, the words "Not Applicable" should be entered on the appropriate line.

---

**NAME OF APPLICANT**   Massachusetts Bay Transportation Authority

---

**ADDRESS OF APPLICANT**  50 High Street, Boston, Massachusetts  02110

---

**MUNICIPALITIES WHERE ACTIVITY IS PROPOSED AND NOTICE IS FILED**  Cambridge

---

**DESCRIPTION OF PROPERTY INVOLVED IN APPLICATION** (including the dimensions of any existing buildings, decks, marinas, existing cesspools)

The property involved is a relatively flat, 5 acre open area located between the W. R. Grace Manufacturing facility and Jerry's Pond and to the east of Alewife Brook Parkway.

---

**DESCRIPTION OF MODIFICATIONS PROPOSED ON THE SITE, including grading, dredging, removal of vegetation, etc.**

See following page.

---

A.  **SOILS**

1.  United States Department of Agriculture Soil  Types (show on map)

Area not mapped by USDA.

---

2.  Permeability of soil on the site.  (Dates of testing)  Not Known

---

3.  Rate of percolation of water through the soil.  (Dates of testing)

Not Known

---

B.  **SURFACE WATERS**

1.  Distance of site from nearest surface water  (Date of measurement)

Approximately 60 feet from Jerry's Pond and 30 feet from Parkway Pond (no date)

---

CCC00006

2. Sources of runoff water    Precipitation

3. Rate of runoff from the site    Not Known

4. Destination of runoff water    Jerry's Pond and Parkway Pond

5. Chemical additives to runoff    None
   water on the site

C. GROUND COVER

1. Extent of existing impervious    Small areas of bituminous concrete
   ground cover on the site    paving adjacent to W. R. Grace plant.

2. Extent of proposed impervious    None
   ground cover on the site

3. Extent of existing vegetative
   cover on the site    Some low lying vegetation, minimal
   in extent.

4. Extent of proposed vegetative    Most vegetation will be eliminated
   cover on the site    during solidification operation.

D. TOPOGRAPHY

1. Maximum existing elevation on site    Approximately 120 (MBTA Base) at
   top of sludge pile.

2. Minimum existing elevation on site    Approximately 111 (MBTA Base)

3. Maximum proposed elevation of site    Approximately 115 (MBTA Base)

4. Minimum proposed elevation of site    Approximately 108 (MBTA Base) at
   bottom of sludge excavation.

5. Description of proposed change in topography    See following page.

E. GROUND WATER

1. Minimum depth to water table on site (at time of filing) 8.2' (3-31-78)

2. Maximum depth to water table on site (at time of filing) 10.2' (10-31-78)

3. Seasonal maximum ground water elevation    8.2'    CCC00007

D.  TOPOGRAPHY

5.  If the solidification sludge is removed from the site, the topography
    will be as shown on the Contract 091-601 Contract Plans.  If it is
    to remain on the site, a new grading plan will be developed.

    The Massachusetts Bay Transportation Authority and W. R. Grace and
    Company reserve the right to credit the volume of material removed
    in future calculations required for flood storage volume displacement.

CCC00008

**F.** WATER SUPPLY

    **1.** The source of the water to be provided to the site    Groundwater

    **2.** The expected water requirements (g.p.d.) for the site    Not Known

    **3.** The uses to which water will be put    Mixed with sludge as part of solidification process.

**G.** SEWAGE DISPOSAL

    **1.** Sewage disposal system (description and location on the site, of system)    Not Applicable

    **2.** Expected content of the sewage effluents (human waste, pesticides, detergents, oils, heavy metals, other chemicals)    Not Applicable

    **3.** Expected daily volume of sewage    Not Applicable

**H.** SOLID WASTE

    **1.** Estimated quantity of solid waste to be developed on the site    12,500 cubic yards

    **2.** Method for disposal of solid waste    Burial at a DEQE approved landfill or on site.

    **3.** Plans for recycling of solid waste    None

**I.** BOAT YARDS, DOCKS, MARINAS

    **1.** Capacity of marina (number of boats, running feet)    Not Applicable

    **2.** Description of docks and floats (site, dimensions)    Not Applicable

    **3.** Description of sewage pumpout facilities (type of waste disposal)    Not Applicable

    **4.** Description of fueling facilities and fuel storage tanks    Not Applicable

CCC00009

5. Description of fuel spill prevention measures and equipment

Not Applicable

J. IMPACT OF PROPOSED ACTION APPLIED FOR

1. Effects on plant species (upland and marine)

Most vegetation on the site will be eliminated during the solidi-fication operation.

2. Effects on marine species (shellfish, finfish)   None

3. Effects on drainage and runoff

Existing overland drainage paths will be permanently disrupted.

4. Effects on siltation of surface waters

Short term siltation to Jerry's Pond and Parkway Pond will increase.

5. Effects on groundwater quality

Improved due to removal of acidic and sulfate laden groundwater.

6. Effects on surface water quality   Increased siltation during construction

K. ALTERNATIVES TO PROPOSED ACTION

1. Describe alternatives to the requested action

See following page.

2. Describe the benefits of the requested action over the alternatives

See following page.

CCC00010

K.   ALTERNATIVES TO PROPOSED ACTION

   1.   Describe Alternatives to the Requested Action

   Other than solidification of the sludge as proposed herein, there are two alternative methods of relieving the problem.  The first of these is removal to a hazardous waste disposal facility; the second is encapsulation on site.

   Removal of the material from the site in its present form would necessitate its being handled as a hazardous waste.  This removal would have to be performed by a firm licensed to transport hazardous waste and sealed trucks would have to be used.  Since there are no hazardous waste disposal sites in Massachusetts, the material would have to be taken out of state, the most likely destination being Niagara Falls, New York.

   Encapsulation would imply mounding the material on the site on top of a thick, impervious clay mat and then covering the mounded sludge with more clay to separate it from the environment.  A gas venting system would be provided and the mounds would be loamed and seeded.

   2.   Describe the Benefits of the Requested Action Over the Alternatives.

   The main disadvantage of the two alternate methods of disposal is that they do not permanently eliminate the hazardous nature of the sludge.  They separate the material from the environment but do not render it less harmful as the solidification process does.

   As a matter of practicality, the removal to a hazardous waste disposal facility is an extremely expensive operation.  Moving bulky material such as the sludge a distance of five hundred miles or more in closed trucks would be a prohibitive situation.

   The encapsulation scheme would leave the hazardous material, even though contained, permanently within the urban area where it is now located.

CCC00011

## Attachments

o    Locus Map

o    April 23, 1980              Correspondence from the Department of
                                 Environmental Quality Engineering to
                                 the Massachusetts Bay Transportation
                                 Authority providing conceptual approval
                                 of the solidification process for the
                                 contaminated sludge.

o    April 23, 1980              Correspondence from the Department of
                                 Environmental Quality Engineering to
                                 W. R. Grace and Company stating that
                                 solidification is a viable disposal
                                 method for process wastes, proposing
                                 possible disposal methods for previously
                                 produced wastes now on the site, and
                                 outlining requirements for an encapsulation
                                 scheme.

o    August 1, 1980             Correspondence from the Department of
                                 Environmental Quality Engineering to
                                 the Massachusetts Bay Transportation
                                 Authority classifying the solidified
                                 sludge as a special waste.

o    June 15, 1980              Correspondence from W. R. Grace & Co.
                                 to the Massachusetts Bay Transportation
                                 Authority authorizing the MBTA to file
                                 a Notice of Intent.

CCC00012



Sludge Solidification
# LOCUS MAP

## PROJECT LOCATION

CCC00013

*The Commonwealth of Massachusetts*

*Department of Environmental Quality Engineering*

*Metropolitan Boston - Northeast Region*

*323 New Boston Street, Woburn, MA 01801*

ANTHONY D. CORTESE, Sc.D.
Commissioner
727-5194

April 23, 1980

Mr. Charles Steward
Environmental Coordinator
MBTA
50 High Street
Boston, Massachusetts  02110

RE:  CAMBRIDGE — Solid Waste
     Proposed Handling of Contaminated
     Soil at Alewife

Dear Mr. Steward:

The Metropolitan Boston/Northeast Regional Office of the Department of Environmental Quality Engineering has received your letter of April 7, 1980 relative to the treatment and disposal of sludge, contaminated water, and contaminated soil currently in the path of the proposed MBTA Red Line Extension on W.R. Grace & Company property in Cambridge. Should the MBTA be required to handle the above noted disposal, the following procedures are proposed:

1. Sludge will be removed, solidified in an approved manner and disposed of in an approved sanitary landfill.

2. Any water required for the solidification process will be pumped from contaminated groundwater in the area of the sludge piles. Should further dewatering be required during tunnel construction, it is proposed to adjust the pH of this water with lime and inject it back into the ground in the area of contaminated groundwater.

3. Contaminated soil (as determined by existing EPA leachability tests and classification criteria) will be mixed with clean fill until it can pass the leachability test. It is then proposed to use this material as clean fill.

The Department has recently approved solidification as a means for W.R. Grace to neutralize the sludge that currently exists in their lined lagoon. Conceptual approval was also given for the use of that method in neutralizing the sludge and filter cake process waste that has been disposed of adjacent to the lined lagoon. In view of this, the Department conceptually approves of the solidification scheme proposed by the MBTA subject to the same conditions imposed in the W.R. Grace approval, a copy

CCC00014

RE:   CAMBRIDGE – Solid Waste
      Proposed Handling of Contaminated
      Soil at Alewife

April 23, 1980

-2-

of which is enclosed.

Your proposal to inject neutralized water back into the ground is not a preferred alternative at this time. At the very least, this proposal would require further chemical analyses and groundwater flow data, and probably a discharge permit through the Division of Water Pollution Control. Neutralization and discharge to the MDC sewage system would not require such a discharge permit. Also, the treatment of contaminated soil by dilution, mixing with clean fill, would not result in the classification of the diluted product as a clean fill by this Department. It is the Department's understanding that further chemical analyses of the excavated soil in question is planned in any case. Discussion of further disposal alternatives for this material should be done when all pertinent test results are available. The Department would be willing to consider interim storage as a temporary solution until such time as all test results are available and a suitable disposal plan can be designed and approved.

If you have any questions, please contact Mr. William St. Hilaire, P.E. at the above address or telephone number.

Very truly yours,

For the Commissioner,

*by Bruce K. Maillet*

Thomas F. McLoughlin.
Regional Environmental Engineer
Metropolitan Boston/Northeast Region

TFM/Ewsth/lkw

CC:  Cambridge Board of Health
     City Hall
     Cambridge, Massachusetts  02140

     Conservation Commission
     City Hall
     Cambridge, Massachusetts  02140

CCC00015

*Department of Environmental Engineering*

*Metropolitan Boston - Northeast Region*

*323 New Boston Street, Woburn, MA 01801*

ANTHONY D. CORTESE, Sc.D.
Commissioner
727-5194

Mr. Allen R. Campbell
Assistant Counsel
W.R. Grace & Company
62 Whittmore Avenue
Cambridge, Massachusetts  02140

RE:   CAMBRIDGE-Solid Wastes
W.R. Grace, Proposed Disposal
of On-Site Process Waste

Dear Mr. Campbell,

The Metropolitan Boston-Northeast Regional Office of the Department
of Environmental Quality Engineering has reviewed disposal alternatives
for the sludge and filter cake process wastes that have been disposed
of on-site at the W.R. Grace manufacturing facility in Cambridge.  One
alternative addresses solidification of the wastes which are presently
contained in the existing process lagoon and, the other, a preliminary
proposal for on-site encapsulation for the remaining wastes.  Regarding
the 1st alternative, the effectiveness of solidification in preventing
the formation of toxic leachate was demonstrated by Solid Tek-Solidification
Technology Systems, Inc., of Morrow, Georgia.  The sludge was solidified
and leachate from the product, prepared according to procedures presented
in the December 28, 1978 Federal Register, was analyzed for toxic
parameters by Recra Research, Inc. of Tonawanda, New York.  The results
received by this office on January 30, 1980, indicate that all parameters
identified as toxic are not present in amounts above the limits currently
proposed by the Environmental Protection Agency.  These limits are set
at ten times the interim primary drinking water standards.  Based
on these results, it is concluded that solidification of the sludge
followed by burial in a sanitary landfill is a viable disposal method
that would have no adverse environmental impacts.

The Department is of the opinion that the proposed solidification
process is in conformance with modern sanitary engineering standards
and hereby approves of this proposal subject to the following conditions.

1.   The Department be notified when the solidification process
     begins.

2.   Disposal of the product solid waste be at an approved
     sanitary landfill site.

3.   The name and location of the landfill be provided to the
     Department prior to the commencement of the proposed work.

4.   Quality Control of the solidification and disposal process be

CCC00016

RE:  CAMBRIDGE-Solid Wastes
     W.R. Grace, Proposed Disposal
     of On-Site Process Waste

April 23, 1980                    -2-

          provided again prior to the commencement of work.

     The Department may require specific testing to assure such
quality control.

     The other alternative involves sludge from the lined lagoon and
filter cake from the manufacturing process that has been disposed
of on the ground in two separate areas adjacent to the sludge lagoon. In
one of the areas, the waste is in direct contact with groundwater, which
has lead to degradation of groundwater quality in the area.  It is
through this area that the MBTA proposes to dig a tunnel for the extension
of its Red Line.  The Department has required that the sources of
contamination be removed or contained.  Proper disposal could be
accomplished by utilizing any of the following methods.

     1.  All waste could be removed from the site and disposed of out
         of state at an approved hazardous waste disposal facility.
         This removal would have to be conducted by a firm that is
         licensed to transport hazardous waste.

     2.  All waste could be solidified in the manner approved for the
         sludge in the lined lagoon.  The solidified waste could then be
         disposed of at an approved sanitary landfill.

     3.  The waste could be encapsulated on-site.  Such on-site disposal
         would have to meet all provisions of Section 150 A of Chapter 111
         of the General Laws, the "Regulations for the Disposal of Solid
         Waste by Sanitary Landfill", and the Wetlands Protection Act,
         General Laws Chapter 131, Section 40.

     On March 13, 1980, a meeting was held between officials of
W.R. Grace and engineers from this Department to discuss the proposed
waste encapsulation alternative as a means of disposal.  A preliminary
plan was submitted indicating the proposed location and method of
on-site disposal.  The Department understands that the plan is preliminary,
and offers these comments for your consideration:

     1.  A clear site preparation plan must be submitted showing (a) 1½ foot
         clay liner topped by 1 foot of sand or gravel to ensure liner intergrity
         during construction and operation, (b) 1½ foot thick clay final
         cover over the waste, (c) enough top soil over the clay cover that
         will support vegetation, (d) side slopes no steeper than 3 to 1,
         (e) a minimum of 4 feet vertical between the base of waste and
         seasonal high groundwater elevation, and (f) protection against
         inundation by the 100 year flood.

     2.  Volume calculations for loss of 100 year flood storage
         capacity and possible compensatory storage alternatives must be

CCC00017

RE:  CAMBRIDGE-Solid Waste
     W.R. Grace Proposed Disposal
     of On-Site Process Waste

April 23, 1980                        -3-

included as part of the entire proposal, and submitted to the
Conservation Commission as a Notice of Intent.

3.  Specifications for soils to be used as liner material and final
    cover must be provided.

4.  Due to the high organic content of the waste, adequate provisions
    must be made for the venting of gas.

5.  A detailed schedule of operations must be submitted as part of
    the engineering plan.

6.  An "assignment" pursuant to M.G.L. S. 150 A of C. 111 is not
    required for this clean up operation, and

7.  On-Site encapsulation may require the filing of an Environmental
    Notification Form with the MEPA unit of the Executive Office of
    Environmental Affairs.

Also, please be advised that the above preliminary disposal site
lies within 60 ft. of Jerry's Pond in violation of Regulation 11.5 of 310 CMR
19.00, the Regulations for the Disposal of Solid Wastes by Sanitary Landfill.

If there are any questions, please contact Mr. William St. Hilaire,
P.E. at the above address or telephone number.

Very truly yours,

For the Commissioner,

Bruce F. Mallet

Thomas F. McLoughlin
Regional Environmental Engineer
Metropolitan Boston-Northeast Region

TFM/Eejp/jb

CC:  Cambridge Board of Health
     City Hall
     Cambridge, MA

     Cambridge Conservation Commissione
     City Hall
     Cambridge, MA

CCC00018



*The Commonwealth of Massachusetts*

*Department of Environmental Quality Engineering*

*Metropolitan Boston - Northeast Region*

*323 New Boston Street, Woburn, MA 01801*

August 1, 1980

**ANTHONY D. CORTESE, Sc.D.**
Commissioner
727-5194

Mr. Charles Steward
Environmental Coordinator
MBTA
50 High Street
Boston, MA 02110

RE:  Cambridge, W.R. Grace
     Classification of Solidified
     acid sludge

Dear Mr. Steward:

On July 17, 1980, a meeting attended by representatives of the MBTA, W.R. Grace and Company, Sverdrup and Parcel, Solidtek, SCA Services, Cambridge Conservation Commission, and the Department of Environmental Quality Engineering, was held to discuss alternatives for the disposal of solidified acid sludge wastes which will be generated by the treatment of acid sludge waste now located on the property of W.R. Grace and Company, in Cambridge. Acceptable disposal practices for a particular waste are derived, in part, from the classification of that waste. This letter will serve to notify you as to how this Department is classifying the waste in question.

It is proposed to treat the Grace acid sludge by a solidification process which is designed to stabilize wastes to the point that contaminants will be bound within the resulting solid and prevented from leaching out, even under acidic conditions. Although Solidtek has tested solidified samples of the Grace waste more rigorously than required by the US EPA toxicant extraction procedure, questions remain as to the stability of the solidified waste in a landfill environment. The severe and variable conditions that exist within a landfill, i.e. little or no oxygen, variable heat and pressure, complex chemical and biochemical reactions, and the presence of metals and organics in high concentration, can not be duplicated in a laboratory test. As such, the fate of pollutants that are bound in a solidified waste can not be predicted in cases where these wastes are buried with refuse in a landfill. Based on this conclusion, the Department is classifying the solidified acid sludge as a special waste subject to 310 CMR 19.16: (1) due to the handling that will be required for the disposal of this waste. This solidified waste can be safely disposed of at a landfill facility, provided that it is not mixed with biodegradeable refuse. As such, it must be isolated in a separate area of the landfill, or on top of closed sections, and covered.

You are reminded that before any waste designated as special can be disposed of at a landfill facility, approval of the local Board of Health must be obtained in

CCC00019

August 1, 1980

RE:  Cambridge, W.R. Grace
     Classification of Solidified
     acid sludge

-2-

conformance with the above regulation, 310 CMR 19:16 (1).

If you have any further questions, please contact Mr. William St. Hilaire, P.E., at the above address or telephone number.

Very truly yours,

For the Commissioner,

Thomas F. McLoughlin
Regional Environmental Engineer
Metropolitan Boston/Northeast Region

TFM/Eep/law

CC:  Cambridge Board of Health
     Cambridge Conservation Commission
     W.R. Grace
     DHW

# GRACE

Industrial Chemicals and
Technical Products Groups

W.R. Grace & Co.
62 Whittemore Avenue
Cambridge, Mass. 02140

(617) 876-1400

June 15, 1980

Mr. Charles Steward
Environmental Coordinator
Massachusetts Bay Transportation
        Authority
50 High Street
Boston, Massachusetts   02110

Dear Charlie:

    In reference to our telephone conversation of yesterday,
this will confirm our understanding that the MBTA will make
the necessary and appropriate filings with the Cambridge
Conservation Commission on behalf of both the MBTA and Grace
in connection with the handling and treatment of the con-
taminated soil on the Grace site in Cambridge.  We will, of
course, cooperate with you to the fullest extent in following
through on this filing.  I have also spoken to Bob Salas of
Solid Tek who states that he and his technical people will be
available to aid in any way necessary at the presentation to
the Conservation Commission.  We look forward to working with
you in this aspect of the project.

                                  Very truly yours,

                                  Allan R. Campbell
                                  Assistant Counsel

ARC:sl
cc:  V. T. Boughton/New York



SOLIDIFICATION / CHEMICAL FIXATION

- SYSTEMS
- CHEMICALS
- SERVICES
- PROCESSES
- TECHNOLOGY

· SOLIDTEK, INC. ·

SOLIDIFICATION SURVEY

ACID SLUDGE

W. R. GRACE  PROPERTY

CAMBRIDGE, MASSACHUSETTS

PREPARED BY

SOLIDTEK, INC.

MORROW, GEORGIA

JULY 10, 1980

P. O. BOX 888 · 5371 COOK ROAD · MORROW, GEORGIA 30260 · (404) 361-6181

CCC00022

Overview:  The solidification project survey of the acid sludge deposited
on the W. R. Grace property was instituted at the request of the M.B.T.A.
consultants.  This project was to include looking at the samples of sludge
and contaminated earth to determine rough costs for solidification so the
material could be disposed of at a local landfill.

The areas of consideration are the shaded areas on the "Acid Sludge"
drawing of Contract No. 091 Red Line Extension N.W. Davis to Alewife.
The approximate volume of material is 8,000 to 10,000 cubic yards.  The
material known as acid sludge was deposited on the property as a residue
from a chemical process involving naphthalene.

Samples of the sludge were taken from three locations - East, West, and
the eastern portion in contact with the ground water.  These samples
were shipped to SolidTek in Morrow for solidification testing.  The results
are contained in this survey.

CCC00024

I. Samples: The original sample processed was a sample of the W. R. Grace storage lagoon. This lagoon was used to store the filter cake residual formed as a result of filtering process water used in the manufacturing of a drilling mud additive. This sample was processed in the SolidTek laboratory and returned to W. R. Grace for testing. The results of these tests were acceptable and Grace indicated a further interest in this means of treatment for proper disposal of their lagoon and on-going process wastes.

Because of the problem of the acid sludge located in the construction zone of the M.B.T.A. expansion, it was pointed out that the solidification process could be used on this material also. At the request of SolidTek, additional sampling was done to give a more representative cross section of the material to be solidified. These samples included areas that were in the proposed construction zone. The samples were taken at different points and at different depths. The area covered by the top west sample was labeled Sample "A". The area covered by Sample "B" was the material in contact with the water table in the western portion of the sludge deposit. The material from the top east area was labeled Sample "C".

Fifty-five (55) gallon drums of the material were shipped to Morrow, Georgia for solidification testing. Because of the nature of the material it was necessary to do large scale lab testing and pilot scale work with the waste.

II. Testing: The materials shipped to SolidTek were evaluated for level of difficulty in processing. The material was a semi-solid and it was necessary to dilute the sludge sample in order to provide the proper mixing consistancy for addition of solidification chemicals. The range of dilution was from 15% to 25% by volume. This produced a sticky mass into which the solidification chemicals could be added.

The first sample of lagoon waste was processed at roughly 35% to 40% solids by weight. Each of the drum samples - "A", "B", and "C", were diluted to the same range of solids. These samples were then subjected to solidifi-

CCC00025

cation testing to confirm the original test procedure. A number of
different systems were applied to these samples to best determine the
system to be used in the M.B.T.A. solidification project. Refined testing
was done to optimize the solid and cover all possible configurations to
obtain the best leachate.

All tests done on the resultant solid were performed in accordance with
the U.S. E.P.A. toxicant extraction procedure. Expanding on the T.E.P.*
to give an indication of the rate of leaching, the T.E.P. was run twice
on one sample. This resulted in a decrease in the amount leaching. (See
"Attachment 1"). In an attempt to make the T.E.P. more difficult, a
mineral acid was substituted and the pH reduced to 3 instead of 5. This
resulted in a slight increase in the amount leaching. In all cases, the
amount leaching was below the limits of 100 times the drinking water
standards for Naphthalene.

The pilot scale testing confirmed the lab testing for the physical
properties of the resultant solid. Adding the solidification chemicals
to the diluted mass resulted in a solid that exceeded the one ton per
square foot unconfined compressive strength that was expected. The
unconfined compressive strength of the samples ranged from 2.5 tons per
square foot to greater than 4.5 tons per square foot. (4.5 ton/ft.$^2$ is
the maximum range on the soil test pocket penetrometer.)

III. Design Parameter: The M.B.T.A. solidification project will consist
of three distinct areas. The staging and charging area, the mixing and
blending area, and the deposit and curing area. The first area, the
staging and charging area will consist of a sixty (60) foot by sixty (60)
foot bermed area. The berm to be four (4) feet high to serve as a contain-
ment dike for the stock piling of acid sludge. This area would be adjacent
to the sludge excavation. This stock pile would also be adjacent to the
parking area. (See "Attachment 2"). As the sludge would be excavated by

* U.S. E.P.A. Toxicant Extraction Procedure

the contractor he would place it within the 60'x60' staging area at a rate of 300 cubic yards per day. From within the bermed staging area the sludge would be placed into a hopper and conveyed into the mixing and blending area where the solidification chemicals would be added. From this area it would be taken to the deposit and curing area.

The deposit and curing area would be located next to the mixing and blending area, between the west sludge deposit and the W. R. Grace offices. (See "Attachment 2"). The deposit area will be constructed by the contractor of non-contaminated soil from that area. There will be five cells constructed to accept the processed material in slurry form. The size of each cell will be 20 ft. x 150 ft. x 6 ft. The sides should be 1:1 to 1.5:1 slope to attain maximum volume. The depth of six feet is a workable depth to get the most volume without getting too near the water table and not needing too much borrow to construct the dikes. Each cell will be separated by a 10 ft. roadway to permit easy truck access to both sides of the trench. (See "Attachment 3"). Each trench will hold approximately 600 cubic yards of processed material. This is approximately ten days of operation. At the end of ten days, the first cell should have cured enough to excavate and transport to the landfill. The excavated cell could then be filled for two days and each cell excavated and refilled until the project is completed.

The approximate time for job completion would be sixty calendar days. This would include set-up and removal of the process equipment.

CCC00027



JERRYS POND

DEPOSIT AREA

STAGING AREA

MINING AREA

W R GRACE

CCC00030