# EXHIBIT "22"

# FINAL ASBESTOS SAMPLING PLAN
## W.R. GRACE & CO.-CONN.
## CAMBRIDGE, MASSACHUSETTS

by

Haley & Aldrich, Inc.
Boston, Massachusetts

for

W.R. Grace & Co.-Conn.
Cambridge, Massachusetts

File No. 10063-072

November 1998

HALEY &
ALDRICH

rec'd 11/19/98

CDD06185

# FINAL ASBESTOS SAMPLING PLAN
## W.R. GRACE & CO.-CONN.
### RTN 3-17014
### CAMBRIDGE, MASSACHUSETTS
### 18 November 1998

## INTRODUCTION

This Sampling Plan, prepared for W.R. Grace & Co.-Conn. (Grace) in Cambridge, Massachusetts, documents the objectives, rationale and procedures to be used for characterization of the possible presence of asbestos in soil at the Grace property. A total of 613 additional samples of soil will be collected and analyzed for the presence of asbestos.

## PURPOSE

The primary purpose of the Final Asbestos Sampling Plan (FASP) is to obtain sufficient soil data to allow an assessment of whether there are any current public health risks on the portions of the property not covered by buildings or asphalt. Sampling locations included in the plan in areas currently covered by pavement or buildings were added in response to requests made by interested parties in verbal requests made at the public meeting held by Grace to discuss the asbestos sampling plan, and in written requests received after the meeting. The secondary purpose is to provide data sufficient to evaluate if large or small amounts of asbestos containing soil are encountered when intrusive activities for the construction of the proposed property development are undertaken. Grace will schedule another public meeting to discuss the results of the FASP upon completion of the asbestos sampling program.

The data assembled under this program is considered to be adequate to characterize the property at the Massachusetts Contingency Plan (MCP) Phase I level of Initial Site Characterization. The data obtained will be used to evaluate human health risks associated with direct contact and ingestion of asbestos containing surficial soils by child and adult trespassers. In addition, human health inhalation risk, as defined by the MCP, caused by asbestos present in the surficial soil will be addressed by a supplemental air quality testing program to be completed concurrent to the soil sampling program.

Based on the results of this testing program and final site development plans, supplemental studies may be undertaken to determine the nature and extent of asbestos in soil to be excavated during site development and the possible presence of asbestos in media other than soil, ie groundwater, surface water and sediments, for compliance with the MCP.

The FASP includes revisions made to the plan based on comments received from members of the community, and representatives of the Alewife Study Group (ASG), Alewife Neighbors, Inc. (ANI), the City of Cambridge (COC), and the Massachusetts Department of Environmental Protection (DEP). Comments received and responses are included in Appendix A of this document. The major changes to the plan include:

☐    The overall number of samples to be collected and analyzed for asbestos content has been increased by nearly 50% from 410 samples to 613 samples.



CDD06186            1

- The addition of 58 sampling locations in Zone 1, which will increase the total number of sampling locations in this Zone to 72.

- A decrease in sample grid spacing in Zone 2 from 50 feet on center to 35 feet on center, which increases the total number of samples to be collected in this Zone from 58 to 114.

- The reconfiguration of Zone 3 and 4 such that Zone 4 now extends south of the MBTA head house down the eastern side of Jerry's Pond, adjacent to Russell Field. Zone 4 has sampling locations on a 35-foot grid spacing, which with the new configuration results in a total of 388 samples being collected from this Zone.

- The addition and shifting of borings to include explorations in the nine areas specifically requested by the Alewife Study Group.

- The revision of randomized selection of samples to be analyzed using the transmission electron microscopy (TEM) method. The selection technique ensures that samples analyzed by polarized light microscopy resulting in non-detect levels to the highest percentage of asbestos detected will be included in the analysis by TEM.

## BACKGROUND

The Grace site as it exists today is larger in area than when since Grace initially acquired the Dewey & Almy Chemical Company in the 1950s. Appendix B contains 6 figures depicting a diagrammatic history of the land ownership of Dewey & Almy and then Grace from the 1920s to present.

Since 1985, a number of investigations have been performed to characterize the nature and extent of chemical contamination in soil, groundwater and surface water. Extensive analytical data has been submitted to the DEP to date. This activity has been completed for the Grace Disposal Site under RTN 3-0277. The characterized site consists of an approximately 27-acre irregularly-shaped parcel of land directly east of the Alewife Brook Parkway/Route 2 Interchange in Cambridge, Massachusetts. It is bounded on the north by Whittemore Avenue, on the east by residences and Russell Field Park, and on the south by Rindge Avenue. Wetlands exist on the southwestern portion of the site. Prior usage has been documented to be primarily chemical manufacturing, administrative offices, and shipping and receiving. Parts of the property are paved or covered by structures, and access to the majority of the exposed ground surface is restricted by fencing. Access to some open, recently unrestricted areas, has been controlled by temporary fencing.

The site is currently listed with the DEP as a result of volatile and semi-volatile organics, petroleum products, and metals found to exist in the environment during evaluations of subsurface and hydrogeological conditions for the Alewife Center Master Plan Study conducted in 1984 and 1985. A Notice of Responsibility (NOR) was issued for the site on 9 February 1987. The site has been assigned Release Tracking Number (RTN) 3-0277. RTN 3-0277 is currently a Tier IC disposal site in Phase III of the MCP. Grace is the listed potentially responsible party.

As a result of recent testing of soil samples obtained from selected locations on the property, an additional release notification has been made for the presence of asbestos detected in recovered soil samples at concentrations greater than one percent. This notification has been assigned


HALEY & ALDRICH

CDD06187

2

release tracking number RTN 3-17014 and this sampling plan has been prepared to address MCP compliance obligations for this RTN.

## MAY 1998 EVALUATION FOR ASBESTOS IN SOIL

A targeted asbestos soil sampling program was developed by Haley & Aldrich, Inc (H&A) and agreed upon by the DEP, ANI, and the COC. The May 1998 program was a preliminary investigation designed to assess whether widespread asbestos contamination of soil was present in three selected locations at the site. Correspondence regarding the potential presence of asbestos on the Grace site is included in Appendix C.

Soil samples were prepared for analyses following methods outlined in EPA Region I Protocol for Screening Soil and Sediment Samples for Asbestos Content (revised 5 December 1997), and the presence of asbestos was determined using the EPA Protocol and/or method 600/R-93-116, polarized light microscopy (PLM). The results of the soil analyses are included in Table I. The laboratory reported results of the analyses as "No Visible Asbestos," "Trace" (asbestos fibers present at less than one percent of the sample tested), or an estimated percentage of asbestos contained in the sample tested, to the nearest whole number, beginning at one percent. Based on risk characterization required by the MCP completed to date, ingestion of soil containing asbestos at a level of one percent or less will result in a condition of No Significant Risk.

In summary, asbestos was detected at greater than one percent in 11 of 56 samples. These samples were located in fill to a depth of 4 feet. Quantifiable amounts of asbestos were detected in 8 of 8 borings selected by Grace and completed in the area of former Buildings 11 and 12. Quantifiable amounts of asbestos were detected in 2 of the 6 locations selected by the COC and ANI outside this area. It should be noted that ANI used a different method of determining asbestos content in the split soil samples collected. The method used by ANI does not provide for an estimate of asbestos in the soil sample, but rather, a percentage based on the total number of asbestos fibers counted on a slide as observed through PLM. ANI's method will indicate a higher percentage than that existing in the entire sample.

One boring completed on the western edge of the property (boring AB-11) contained asbestos at trace levels in the 0-2 foot, 2-4 foot, and 4-6 foot sampling intervals. Two soil samples from boring AB-14, in the vicinity of Buildings 1, 2 and 3, contained asbestos greater than trace levels in the uppermost 4 feet of the fill. Asbestos was not detected in soil samples collected from the remaining two borings, AB-12 and AB-13, completed near Buildings 1, 2 and 3 (see Figure 2 for building numbers). Both chrysotile and amosite asbestos were identified using the EPA Protocol and PLM methodologies, however, analyses of the same samples by TEM indicated only chrysotile was present in the soil samples.

The analytical results of the asbestos soil sampling program indicate that the majority of the asbestos detected is present in the soil on the Grace property in the area of former Buildings 11 and 12. The present pavement or vegetative cover prevents possible direct exposure to the asbestos in the soil and guards against the possibility of the asbestos becoming air borne.

## BASIS FOR SAMPLING PROGRAM DEVELOPMENT

In a letter dated 13 January 1998 sent by Grace to Commissioner Struhs of the DEP, Grace agreed to conduct sampling for asbestos at the Cambridge site and indicated they had asked H&A to develop a soil sampling program (a copy of the letter from Grace to Commissioner Struhs can



CDD06188

3

be found in Appendix C of this report). The first sampling program (May 1998) targeted historic use areas based on the results of available records review. The property has been subject to numerous site uses; various building construction episodes; numerous building and facility decommissioning and demolition activities; major soil excavation, waste removal and construction activities associated with subway construction and recent new building construction and associated site development and regrading.

This sampling program has been developed to determine if asbestos exists at the ground surface. It is also designed to evaluate the possible presence of asbestos in soil within the anticipated depth and areas of possible site development excavation. Sample locations have been selected based on a goal of obtaining data at specific locations that may represent an exposure potential and at systematic locations across the property. Where necessary, sample locations and methods have been adjusted to meet known site specific limitations for access.

The property has been divided into five zones, identified as Zone 1 through 5 on Figure 1. The zones were established based on the following information common to the area included in the zone:

> Zone 1 - This area is currently the developed portion of the property controlled by W.R. Grace Construction Products Division and One Alewife Center. It is generally covered by building, pavement and landscaping materials, and there is no risk of exposure to underlying soils. No intrusive activities are planned nor will they occur without the knowledge of Grace or Spaulding & Slye (One Alewife Center management company) personnel thereby limiting possible near-term exposure of the underlying fill materials. Because it is not part of the proposed site development plans and the area is entirely paved or occupied by buildings, the property owned by Grace north of Whittemore Avenue is not included within the boundaries of Zone 1.
>
> Zone 2 - This portion of the property has been occupied by railroad tracks and lumber storage until at least the 1950's. After acquisition by Grace, this area was used as a parking lot and storage area. There has been no filling of this area during the development activities that occurred in the 1980's. However, the area was used for material staging during construction of the Red Line tunnel and was part of property for which the MBTA was granted a construction easement.
>
> Zone 3 - Historically, this portion contained waste sludge materials from the former DAXAD manufacturing operations. When the Redline Extension was constructed by the MBTA, the sludge material was stabilized and removed from the property and the area backfilled with off-site material or natural soils excavated as part of the subway construction. Historic property use information is provided as an overlay in Figure 2.
>
> Zone 4 - This area of the property was once owned by the Dewey & Almy Chemical Company, and later by W.R. Grace & Co., and contained portions of the production facilities of these companies. It also contained facilities in support of the recreational use of Jerry's Pond and waste sludge materials from the former DAXAD operations. The southern boundaries of fill placed during the Dewey & Almy and W.R. Grace operations are marked by the limits of the sludge. The portion north of the MBTA head house has been subject to regrading and reshaping activities associated with the razing of the former structures and the preconstruction site preparation work undertaken in the 1980's.


HALEY & ALDRICH

CDD06189

4

The overlay (Figure 2) provides information on the location of these structures and filling limits as described for Zone 3. In addition, this part of the property contains intrusive excavations as a result of the development of One Alewife Center, the MBTA head house and a DEP-approved historic field demonstration activity to demonstrate the feasibility of remediating petroleum and naphthalene in on-site soil using bioremediation techniques.

Zone 5 - Grace acquired this property in 1988. The existing buildings were razed and the site left in its current configuration. The property has never been part of the Dewey & Almy chemical manufacturing operations or subject to the 1980's preconstruction site grading activities. Site grades are 3 to 6 feet above adjacent Grace property.

## SAMPLE LOCATIONS, PROCEDURES AND RATIONALE

At least 613 samples are proposed to be collected from approximately 310 locations on the Grace site. Surficial and subsurface soil samples will be collected. Where equipment access is possible, a GeoProbe sampler will be used to obtain the subsurface samples. Subsurface soil samples will be collected to a depth of four feet below ground surface, the anticipated maximum depth of excavation. If access with a GeoProbe is not possible, the subsurface sample will be obtained using a hand auger or hand driven split-spoon sampler.

The primary purpose of this sampling plan is to obtain sufficient soil data to allow an assessment of current public health risks as required by the MCP. The secondary purpose is to provide data sufficient to evaluate if large or small amounts of asbestos containing soil will be encountered when intrusive activities for the construction of the proposed property development are undertaken.

The asbestos sampling plan was developed using the *EPA Soil Screening Guidance: Users Guide, Second Edition*, dated July 1996, which outlines recommended methodologies for soil screening, when the goal of the sampling program is to is to calculate risk-based screening levels that are protective of human health. The sampling methodology outlined in this program is not designed to determine if concentrated areas of asbestos are present at the site, but rather to provide the data necessary to evaluate current risk of exposure to surficial soils at the site.

When no contamination pattern exists, there is no information that indicates the advantage of random sample placement over grid sampling. In both random and grid sampling plans, a finite probability exists that areas of contamination might be missed, however, the probability is the same if the same number of samples are collected. According to R.O. Gilbert in *Statistical Methods for Environmental Pollution Monitoring* (1987) if waste clusters are expected to follow a regular pattern, samples should be collected from randomly selected locations, however, for randomly located areas of contamination, a triangular or square grid pattern is more effective. The grid spacing in this program varies based upon historical and known site use and development information that allows for the collection of ample data within a manageable time period. The systematic sampling will be supplemented by specific surficial soil sampling in areas of the property that are considered to potentially represent a current soil exposure not addressed by the systematic sampling program. Additionally, areas of specific concern expressed by the community have been included in the sampling locations either by adding or shifting GeoProbe locations.



CDD06190

5

The locations for sample collection are shown on Figure 3. The targeted areas are depicted by reference name on Figure 1. The sample locations have been selected based on the following criteria:

<u>Zone 1</u> - This Zone is covered by either buildings, blacktop or landscaped areas, and poses no exposure risk to asbestos in soil. However, in response to requests made by the community, the COC and the DEP, sampling locations were added, spaced on a 50-foot grid in the parking areas within Zone 1, and beneath landscape cover in the vicinity of the One Alewife Center building. A total of 63 samples from 58 locations will be collected in this area.

<u>Zone 2</u> - Because this area was used for staging by the MBTA, the proximity of this zone to the neighborhood and to Russell Field, and the possibility that this area may be disturbed as part of future site development activities, surficial and subsurface soil samples will be collected systematically across the area on an approximate 35 feet by 35 feet spacing. A total of 114 samples will be collected from 58 locations and tested for the possible presence of asbestos.

<u>Zone 3</u> - It is possible that future site development could result in intrusive activities in this zone, and therefore, surficial and subsurface soil samples will be collected systematically and from specific locations in Zone 3. The locations shown have been derived using an approximate 50 feet by 50 feet grid approach. An estimated 8 specific and 16 systematic samples will be collected from this zone.

<u>Zone 4</u> - This area represents the majority of the undeveloped portions of the property. A combination of specific and systematic sampling assumptions have been used to derive the locations shown on Figure 3. The specific surficial samples will be collected from the exposed banks of the drainage channels excavated in the retention basin for One Alewife Center, from the embankments of the bioremediation test area and MBTA head house drainage ditches and the banks of Jerry's Pond. It is reported that the drainage channel for One Alewife Center is underlain by a plastic geomembrane.

Because the major development of the site may occur in this area and its proximity to Russell Field, a more intense systematic sampling will be undertaken in this Zone. The systematic sampling locations will include surficial and deep soil samples collected on an approximate 35 feet by 35 feet grid across the area. An estimated 30 specific samples and 358 systematic samples will be collected from 209 locations within this zone. It is very likely that some of the locations will not be accessible with a GeoProbe. If a location is not accessible, a hand auger or hand driven split spoon sampler will be used to collect the deep sample. Those locations requiring this variation will be documented by the sample collector for inclusion in the data report.

<u>Zone 5</u> - Eighteen surficial and subsurface soil samples will be obtained from 9 locations to provide information on soil conditions needed in the event site development occurs in this area in the future. In addition, 6 surficial soil samples will be collected from the former basement depression.

Sample locations depicted on Figure 3 will be surveyed in using permanent site features prior to sampling. A color-coded stake or mark on the pavement will be placed at each sampling point; yellow for targeted sample locations and orange for systematic sampling locations. During the


HALEY & ALDRICH

CDD06191

6

course of the field program, each sampling location completed will be marked with a permanent marker or the original stake and a metal washer placed beneath the ground surface. In the event a boring or a surficial sample cannot be completed at the designated location, the stake and metal washer will be used to identify the location of each sampling point, and the "as-sampled" points will be resurveyed for placement on the Surface and Subsurface Exploration Location Plan which will be presented with the results of this program.

Surficial soil samples will be collected from the upper 6 inches of soil. One large surficial soil sample will be collected from zero to six inches from each surficial sampling location. Enough soil will be collected to allow for Grace to collect 2 samples, a duplicate in addition to a split, and the City and community groups to each collect splits. At the surficial soil sample locations, samples will be collected with a stainless steel scoop and placed in a stainless steel bowl. At GeoProbe locations, the first six inches of soil recovered in the GeoProbe sample will be used as part of the surficial soil sample. The first six inches of recovered soil will be placed in a stainless steel bowl and mixed with additional surficial material from the area surrounding the GeoProbe boring location. The subsurface soil sample will be made up of soil collected at the GeoProbe location between depths of six inches and four feet.

After sample collection and prior to sample mixing, the soil samples will be described and the description recorded on a sample collection or test boring log. The soil will be classified using a modified Burmeister system. Contractors present on behalf of the City of Cambridge and Alewife Neighbors, Inc. will have the opportunity to classify the soil samples using their own method.

Soil samples will be visually inspected for potential asbestos containing material; such as building material with mastic or insulating material. If parties agree suspect material is observed, it will be collected as an additional discrete sample to the surficial and subsurface samples.

Each sample will be moistened and gently mixed in a stainless steel bowl for homogeneity, prior to individual consultants collection of split samples. Haley & Aldrich will collect a sample and a duplicate sample first, and then the remaining material will be provided to consultant representatives for the various interested parties, in no predetermined order. The duplicate sample will be retained for potential asbestos analysis in the future using more sensitive methods, in the event conditions warrant such additional analyses.

Samples for laboratory analysis and duplicate samples will be labeled and stored in separate boxes. The samples designated for analysis will be sent to the laboratory with a chain-of-custody form. The duplicate samples will be transported with a chain-of-custody form and stored at the Haley & Aldrich laboratory in a secured sample storage area in accordance with the appropriate standard operating procedure.

## ANALYTICAL PROCEDURES AND DOCUMENTATION

Soil samples will be prepared for analyses following methods outlined in EPA Region I Protocol for Screening Soil and Sediment Samples for Asbestos Content, latest revision dated 5 December 1997. The presence of asbestos materials will be determined using the EPA Protocol and/or method 600/R-93-116, PLM. An explanation of the applicability of these methods to this program and the methods are included in Appendix D of this document. Asbestos analysis will be conducted by a State of Massachusetts accredited laboratory. The laboratory will report their findings as follows:



CDD06192     7

- ☐ No Visible Asbestos
- ☐ Trace - asbestos fibers present at less than 1% of sample tested
- ☐ Estimated Percentage - percentage of asbestos contained in sample tested, to the nearest whole number, beginning at 1%

Approximately 610 soil samples will be analyzed by the EPA Protocol and PLM methods in the first round of analyses for asbestos in soil. The sample numbers will be placed in order from non-detect to the highest percentage of asbestos detected, based on the percentage result of the first round analyses. The ordered sample numbers will be divided into quarters, and seven or eight samples will be randomly chosen from each quarter, totaling 30 samples, for TEM analysis. This method ensures that samples the chosen for TEM analyses are representative of the range of results obtained through analyses by the EPA Protocol and PLM methods.

The original sample collected by Grace will be divided into two halves, one of which will be reserved for TEM analysis and the other for analysis by the Protocol and/or PLM analyses. When the analyses using the Protocol and/or PLM are complete, the second portion of the sample will be reserved for analysis by TEM, if it is one of the 30 percent randomly selected. Individual labs have standard operating procedures for TEM methodology, which are based on the National Voluntary Laboratory Accreditation Program's Chatfield Method for determining asbestos content using TEM.

A duplicate sample will be collected at each sample location and held in reserve. As sample volume permits, representatives of the City and the neighborhood may receive split samples. Wherever possible, duplicate samples collected by Grace and split samples collected by interested parties will be 1 kilogram in size, or approximately 16 ounces by volume, whichever is greater. No restrictions will be placed on the total number of split samples provided or locations selected.

The collection of soil samples will be documented to create a permanent record of the conditions under which the samples were obtained. Custody of the samples from the time of sampling to the time of analyses will be documented by chain-of-custody records. Custody of the samples will also be documented on a Test Borings Daily Report (an example of this report is included in Appendix D). Upon completion of sample collection, the samples will be labeled and delivered to the analytical laboratory, with a chain-of-custody form.

Soil samples will be collected based on the assumption that they contain asbestos using Health and Safety protocols designed to comply with state regulations. However, it is not considered necessary to have the soil samples collected by persons certified by Massachusetts to sample soil that may contain asbestos. A Health and Safety Plan is included in Appendix E of this plan.

F:\10063\072\FASP3.WPF



**TABLE 1**
SUMMARY OF ASBESTOS SAMPLING DATA
W.R. GRACE & CO. - CONN.
CAMBRIDGE, MASSACHUSETTS

| BORING NO. | SAMPLE NO. | SAMPLE DEPTH (feet bgs) | PERCENT CHRYSOTILE | PERCENT AMOSITE | TOTAL PERCENT ASBESTOS WR GRACE | PERCENT ASBESTOS BY TEM | TEM ANALYSIS ASBESTOS TYPE | TOTAL PERCENT ASBESTOS COC | TOTAL PERCENT ASBESTOS ANI |
|---|---|---|---|---|---|---|---|---|---|
| AB-1 | S1 | 0.0-2.0 | 2.0 | TRACE | 2 | NA | – | NA | NA |
|  | S2 | 2.0-4.0 | TRACE | ND | TRACE | NA | – | NA | NA |
|  | S3 | 4.0-6.0 | NVA | NVA | – | NA | – | NA | NA |
|  | S4 | 6.0-8.0 | NVA | NVA | – | NA | – | NA | NA |
| AB-2 | S1 | 0.0-2.0 | 3.0 | TRACE | 3 | NA | – | NA | NA |
|  | S2 | 2.0-4.0 | NVA | NVA | – | NA | – | NVA | NA |
|  | S3 | 4.0-6.0 | NVA | NVA | – | NA | – | NA | NA |
|  | S4 | 6.0-8.0 | NVA | NVA | – | NA | – | NA | NA |
| AB-3 | S1 | 0.0-2.0 | 5 | 2 | 7 | 0.005 | CHRYSOTILE | NA | NA |
|  | S2 | 2.0-4.0 | 8 | 2 | 10 | 1.44 | CHRYSOTILE | NA | NA |
|  | S3 | 4.0-6.0 | ND | TRACE | TRACE | NA | – | NA | NA |
|  | S4 | 6.0-8.0 | NVA | NVA | – | NA | – | NA | NA |
| AB-4 | S1 | 0.0-2.0 | NVA | NVA | – | NA | – | NA | NA |
|  | S2 | 2.0-4.0 | NVA | NVA | – | NA | – | NA | NA |
|  | S3 | 4.0-6.0 | TRACE | ND | TRACE | NA | – | NA | NA |
|  | S4 | 6.0-8.0 | NVA | NVA | – | NA | – | NA | NA |
| AB-5 | S1 | 0.0-2.0 | TRACE | TRACE | TRACE | NA | – | NA | NVA |
|  | S2 | 2.0-4.0 | 2.0 | TRACE | 2 | NA | – | NA | NA |
|  | S3 | 4.0-6.0 | TRACE | TRACE | TRACE | NA | – | NA | NA |
|  | S4 | 6.0-8.0 | TRACE | TRACE | TRACE | NA | – | NVA | NA |
| AB-6 | S1 | 0.0-2.0 | 3 | 2 | 5 | 0.054 | CHRYSOTILE | NA | NA |
|  | S2 | 2.0-4.0 | TRACE | TRACE | TRACE | NA | – | NA | NA |
|  | S3 | 4.0-6.0 | NVA | NVA | – | NA | – | NA | NA |
|  | S4 | 6.0-8.0 | NVA | NVA | – | NA | – | NA | 20 |
| AB-7 | S1 | 0.0-2.0 | TRACE | ND | TRACE | 1.3 | CHRYSOTILE | NA | NA |
|  | S2 | 2.0-4.0 | 5.0 | TRACE | 5 | NA | – | NA | NVA |
|  | S3 | 4.0-6.0 | TRACE | ND | TRACE | NA | – | NA | NVA |
|  | S4 | 6.0-8.0 | TRACE | ND | TRACE | NA | – | NA | NA |
| AB-8 | S1 | 0.0-2.0 | 10 | 2 | 12 | 4.6 | CHRYSOTILE | NA | NA |
|  | S2 | 2.0-4.0 | 8.0 | TRACE | 8 | 5.2 | CHRYSOTILE | NA | NA |
|  | S3 | 4.0-6.0 | TRACE | ND | TRACE | NA | – | NA | NA |
|  | S4 | 6.0-8.0 | NVA | NVA | – | NA | – | NA | NVA |
| AB-9 | S1 | 0.0-2.0 | NVA | NVA | – | NA | – | NA | NA |
|  | S2 | 2.0-4.0 | NVA | NVA | – | NA | – | NA | NA |
|  | S3 | 4.0-6.0 | NVA | NVA | – | NA | – | NA | NA |
|  | S4 | 6.0-8.0 | NVA | NVA | – | NA | – | NA | NA |
| AB-10 | S1 | 0.0-2.0 | NVA | NVA | – | NA | – | NA | NA |
|  | S2 | 2.0-4.0 | NVA | NVA | – | NA | – | NA | NA |
|  | S3 | 4.0-6.0 | NVA | NVA | – | NA | – | NA | NA |
|  | S4 | 6.0-8.0 | NVA | NVA | – | NA | – | NA | NA |
| AB-11 | S1 | 0.0-2.0 | TRACE | ND | TRACE | NA | – | NA | NA |
|  | S2 | 2.0-4.0 | TRACE | ND | TRACE | NA | – | NA | NA |
|  | S3 | 4.0-6.0 | TRACE | ND | TRACE | NA | – | NA | NA |
|  | S4 | 6.0-8.0 | NVA | NVA | – | NA | – | NA | NA |
| AB-12 | S1 | 0.0-2.0 | NVA | NVA | – | NA | – | NA | NA |
|  | S2 | 2.0-4.0 | NVA | NVA | – | NA | – | NA | NA |
|  | S3 | 4.0-6.0 | NVA | NVA | – | NA | – | NA | NA |
|  | S4 | 6.0-8.0 | NVA | NVA | – | NA | – | NA | NA |
| AB-13 | S1 | 0.0-2.0 | NVA | NVA | – | NA | – | NA | NA |
|  | S2 | 2.0-4.0 | NVA | NVA | – | NA | – | NA | NVA |
|  | S3 | 4.0-6.0 | NVA | NVA | – | NA | – | NA | NA |
|  | S4 | 6.0-8.0 | NVA | NVA | – | NA | – | NA | NA |
| AB-14 | S1 | 0.0-2.0 | 5 | ND | 5 | NVA | – | NA | NA |
|  | S2 | 2.0-4.0 | 3 | ND | 3 | NA | – | NA | NA |
|  | S3 | 4.0-6.0 | NVA | NVA | – | NA | – | NA | NA |
|  | S4 | 6.0-8.0 | NVA | NVA | – | NA | – | NA | NA |

NOTES AND ABBREVIATIONS:
1. The analyses utilized by W.R. Grace and COC to determine Total Percent Asbestos is the Protocol for Determining Asbestos Content in River Sediments and Soil Samples, US EPA Region 1, in conjunction with EPA Method 600/R-93-116, July 1993. ANI used EPA Methods 600/R-93-116 and 600/M4-82-020 (polarized light microscopy only)
2. TEM: Transmission Electron Microscopy.
3. bgs: below ground surface.
4. NVA: no visible asbestos
5. TRACE: less than 1% asbestos
6. NA: not analyzed.
7. COC: City of Cambridge.
8. ANI: Alewife Neighbors Inc.

CDD06194

03-Nov-98

F:\10063\066\ASBESTOS\FASP\ASBCOMPA.WB2





FIGURE 2



Figure 3. Surface and Subsurface Sampling and Exploration Location Plan — Final Asbestos Soil Sampling Program, W. R. Grace & Company – Conn., 62 Whittemore Avenue, Cambridge, Massachusetts. Haley & Aldrich, November 1998.