IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | Re: Docket No. 6151 |

## DEBTORS' OBJECTION TO INTERCAT INC.'S MOTION FOR LEAVE TO FILE A LATE PROOF OF CLAIM

This Court should deny Intercat Inc.'s ("Intercat") Motion for Leave to File a Late Proof

of Claim (the "Intercat Motion"). The Debtors implemented unprecedented procedural

safeguards and invested tremendous resources to insure that Intercat, and all other parties

affected by the Bar Date, were notified of the Bar Date and provided with ample time to file a

claim. In this regard, the Court, the Debtors, and various constituent groups in these bankruptcy

cases coordinated to develop the Bar Date Notice Package. Intercat received *actual notice* of the

---

[1]   The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W.
R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon,
Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc.,
Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC
(f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a
Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC
Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities
Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary
Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe,
Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc.
(f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace
Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.
R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe
Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai
Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH,
Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings
Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA
Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental
Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin &
Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country
Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Bar Date, and, according to the Court-approved Bar Date Order, such service was legally sufficient notice of the Debtors' Bar Date.

While the Court has the authority to accept late claims in *certain, limited instances*, the present situation does not fall within Rule 9006(b)(1)'s exception for the allowance of tardy claims upon a showing of "excusable neglect." Intercat made a *conscious decision* after receiving actual notice of the Bar Date to refrain from filing a proof of claim. Its recent "changes of heart" does not fall within the scope of Rule 9006(b)(1). Further, accepting Intercat's late claim would set a detrimental precedent in this case, as it would: (a) severely discount the value of the resources invested by the Debtors, this Court, and other parties that coordinated to develop the Bar Date Notice Package and Program, and (b) open the floodgates for more prospective, late claims due to "excuseable neglect." The Debtors are particularly sensitive to these risks, as they are working diligently to file a feasible reorganization plan before the Court's October 14, 2004 deadline.

## BACKGROUND

1.      On April 2, 2001 (the "Petition Date"), the Debtors filed for bankruptcy under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to section 362 of the Bankruptcy Code, an automatic stay immediately went into effect, which prohibited the commencement of any actions against the Debtors (the "Automatic Stay").

2.      On June 27, 2001, the Debtors filed their Motion for Entry of Case Management Order, Establishment of a Bar Date, Approval of the Proof of Claim Forms and Approval of the Notice Program (the "Bar Date Motion"). During the course of the following ten months, the Debtors coordinated with *every* creditors' committee, as well as this Court, to craft a Bar Date Notice, Bar Date Package and a comprehensive system of publication of the Bar Date Notice

2

(collectively, the "Bar Date Notice Program") that would ensure (with a high degree of probability) that every affected party was aware of the existence of the Bar Date, the scope of the Bar Date, and the process for filing a proof of claim.

3.      For the following ten months the Debtors, this Court, the Official Committee of Unsecured Creditors, and the Official Committee of Asbestos Property Damage Claimants worked diligently to develop the Bar Date Notice Program.  The Debtors filed several versions of the Bar Date Motion during the course of this lengthy process.  In addition, this Court received multiple responses from all of the Committees in this case.  Each version of the Bar Date Motion and related Bar Date Package reflected the Debtors' attempts to incorporate concerns expressed by this Court and members of the various Committees.  The Bar Date Notice Program and Bar Date Package were also discussed at several omnibus hearings.

4.      By an order dated April 22, 2002 (the "Bar Date Order"), the Court set March 31, 2003 as the last date for filing proofs of claim for all pre-petition claims relating to (i) asbestos property-damage, (ii) non-asbestos claims (including all governmental claims) and (iii) medical monitoring claims (the "Bar Date").  Once the detailed proof of claim forms were approved and the Bar Date Order was entered, Grace spent over $4 million to publish the Bar Date Notice.  In this regard, Grace mailed out at least 201,116 Bar Date Notice Packages.

5.      The Debtors properly served Intercat with a copy of the Bar Date Package.  See Declaration of Service (attached hereto as Exhibit A).  The Intercat Motion does not state that Intercat (i) did not receive a copy of the Bar Date Package or (ii) did not otherwise have knowledge of the Bar Date.

3

6.      On November 11, 2002, Intercat filed a patent infringement action in the Northern

District of Indiana Northern Division (the "Action"), alleging that fluid catalytic-cracking

("FCC") additive-loaders manufactured by Noltec Systems, Inc. ("Noltec") and distributed by

the Debtors infringe upon Intercat's U.S. Patent No. 5,389,236, which relates to, " the method

and apparatus for controlling addition of catalyst into FCC unit in order to maintain a given

concentration of the catalyst in said FCC unit and thereby produce a desired performance from

said FCC unit." See Intercat's Complaint for Patent Infringement (a copy which is attached as

Exhibit B). The Automatic Stay prohibited Intercat from naming any of the Debtors as

defendants in the Action. However, Intercat knew of Grace's involvement with respect to the

loaders that allegedly infringed upon Intercat's patent, as the complaint specifically refers to

loaders made for Grace.

7.      On March 4, 2003, almost a full month *before* the Bar Date had passed, Grace

filed an unopposed motion to intervene in the Action (the "Intervention Motion," a copy of

which is attached as Exhibit C). The Intervention Motion states that Grace's involvement in the

Action arose out of a common nucleus of underlying facts that pertain to both Grace and the

named defendant. In particular, Grace distributed the majority of Noltec catalyst-loading

machines whose initial sales by Noltec were charged in the Action as contributing to or inducing

infringement of Intercat's patent. On May 8, 2003, the court entered an order authorizing

Grace's permissive intervention in the Action.

8.      On August 10, 2004, over a year after the Bar Date had passed, Intercat filed the

Intercat Motion. The Intercat Motion seeks leave from the Bar Date Order to file a late proof of

claim. The Intercat Motion fails to specify the substantive basis upon which such claim would

be based (*i.e.*, indirect infringement) or the anticipated amount of such claim. Instead, it states

4

only that Intercat seeks leave to file a proof of claims as a "precautionary measure to protect its rights in the pending Action." Intercat Motion pg. 4, ¶13.

### Argument

**a.      Intercat Possessed a Potential "Claim" Before the Bar Date had Lapsed**

9.      Section 101(5)(A) of the Bankruptcy Code defines "claim" as, "a right to payment *whether or not* such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A) (emphasis added).  Congress intentionally defined "claim" in the broadest way possible.  See Historical and Statutory Notes to 11 U.S.C. § 101 ("By this broadest possible definition (of claim) and by the use of the term throughout the title 11, especially in subchapter I of chapter 5, the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case.").

10.     Intercat possessed a potential claim before the Bar Date had lapsed.  Intercat initiated the Action in November 2002, and the complaint specifically acknowledges that Grace distributed the Noltec machines that allegedly infringe upon Intercat's patent.  Therefore, Intercat *had a potential claim* because Grace's involvement in the alleged infringement occurred before the Bar Date had lapsed.  Further, Intercat *knew it had a potential claim* because it was aware of Grace's involvement well-before the Bar Date had passed.  Further, Grace filed its Intervention Motion in March of 2003, almost a full month before the Bar Date.  To the extent that Intercat did not previously know that it had a claim against Grace, the Intervention Motion provided Intercat with such notice.

5

**b.      Intercat's Failure to File a Timely Proof of Claim was not the Result of "Excusable Neglect"**

11.      Intercat consciously chose to refrain from filing a claim by the Bar Date because it was allegedly ignorant of the scope and/or value of its claim.  Courts have consistently held that (i) conscious decisions to refrain from filing a proof of claim are not "neglect," and, more specifically, (ii) "[i]gnorance of one's own claim does not constitute excusable neglect." In re Best Prods. Co., Inc., 140 B.R. 353, 359 (Bankr. S.D.N.Y. 1992), cited with approval in In re Trans World Airlines, Inc., 96 F.3d 687, 690 (3d. Cir. 1996).  Therefore, this Court should deny the Intercat Motion because Intercat's failure to file a timely proof of claim was not the product of "excusable neglect."

12.      Bankruptcy Rule 9006(b)(1) grants courts the authority to accept late filings where the movant's failure to comply with the Bar Date "was the result of excusable neglect." The Supreme Court has held that, under this rule, courts are *permitted, where appropriate*, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.  See Pioneer Inv. Services Co. v. Brunswick Ass'n Ltd. Partnership, 113 S.Ct. 1489, 1491 (1993).  The determination of whether such neglect should be excused is determined by the following factors: (1) the danger of the prejudice to the debtor; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.  See id.

13.      The Third Circuit has interpreted Pioneer to require a "totality of circumstances" test to determine whether a movant's failure to file a timely claim was the product of "excusable neglect".  See Manus Corp. v. NRG Energy, Inc., (In re O'Brien Environmental Energy, Inc.),

6

188 F.3d 116, 125 (3d. Cir. 1999). The Third Circuit has recognized that this analysis is fact-intensive and requires subjective judgment on the part of the court. See Chemetron Corp. v. Jones, 72 F.3d 341, 350 (3d Cir. 1995). Accordingly, it has "imposed a duty of explanation on [the court of original jurisdiction] when they conduct 'excusable neglect' analysis." Id. The burden of proving excusable neglect lies solely with the movant. See Jones v. Chemetron Corp., 212 F.3d 199, 204 (3d. Cir. 2000). Therefore, this Court has the power, but not the obligation, to grant the Intercat Motion if it finds that Intercat has established that its failure to file a timely claim was the result of "excusable neglect."

14.    This Court should deny the Intercat Motion because Intercat's failure to file a timely proof of claim was not even the product of *neglect*, let alone *excusable* neglect. See, e.g., In re Waggoner, 157 B.R. 433, 436 (Bankr. E.D. Ark. 1993) (finding that under Pioneer, a conscious informed incorrect decision does not constitute "neglect"). Intercat's only alleged justification for choosing not to file a claim is that "[a]t the time Intercat commenced the Action, it was unaware of the *extent of the [alleged] infringement* involved and the *extent of Grace's role* in the [allegedly] infringing conduct." Intercat Motion pg. 2, ¶6 (emphasis added). Accordingly, Intercat made a *conscious decision* to refrain from filing a proof of claim before the Bar Date. Its failure to file a timely proof of claim was solely the product of Intercat's own alleged ignorance of the scope and value of its claim. Courts have uniformly held that (i) "[i]gnorance of one's own claim does not constitute excusable neglect." In re Best Prods. Co., Inc., 140 B.R. 353, 359 (Bankr. S.D.N.Y. 1992), cited with approval in In re Trans World Airlines, Inc., 96 F.3d 687, 690 (3d. Cir. 1996).

7

### c.    The Debtors Would be Severely Prejudiced if this Court Grants the Intercat Motion

15.    Permitting Intercat to file a late claim would prejudice the Debtors. While the Debtors have not yet submitted a chapter 11 plan, this Court has ordered the Debtors to file such a plan by October 14, 2004. The Debtors are working diligently to satisfy this deadline. In order for the Debtors to develop a comprehensive, viable plan of reorganization, they need complete and accurate information regarding the nature, amount and status of all claims that will be asserted in these chapter 11 cases. Accordingly, the Debtors requested (and this Court granted) March 31, 2003 as the deadline for the filing of certain proofs of claim or interest against the Debtors' estates. The Debtors are diligently reviewing the filed claims in order to determine the scope of their liability for purposes of proposing a feasible plan. That plan and related disclosure statement will contain projections of allowed claims and estimates of how such claims will be paid under the plan. It would thwart the purposes of the Bar Date and detrimentally affect the Debtors' plan projections to now allow Intercat to file a late claim at this stage in the process.

16.    Allowing Intercat's late claim may also open the "flood gates" for similar claims. In order to progress towards a reorganization plan and confirmation, Grace needs a certain degree of certainty with respect to the potential claims that will have to be satisfied by the Debtors' reorganization plan. This is exactly why Grace sought a Bar Date. Granting Intercat's Motion could send a dangerous signal to other parties that the Court will be lenient on parties who disregarded the Bar Date Notice. At that point, the "flood gates" could open, and this Court could be inundated with waves of similar, tardy claims.[2] Accordingly, granting Intercat's

---

[2]    The Debtors made this same argument in the fall of 2003, when they unsuccessfully opposed Royal Indemnity Company's Motion for Leave to File a Late Proof of Claim. The fact that

(Continued...)

91100-001\DOCS_DE:99713.1

Motion would encourage uncertainty and deprive the Debtors of any assurance of the scope of their liabilities, which was the fundamental purpose behind the Bar Date.

**d.      Intercat's Delay has been Substantial and the Reasons for Delay are Solely Within Intercat's Control**

17.      Even if Intercat's delay was the result of "neglect," this Court should still deny the Intercat Motion.  Intercat's delay in bringing the Intercat Motion is substantial and unjustified.  Courts that have considered whether a movant's delay was "excusable" have focused on the reason for the delay, including whether it was within the reasonable control of the movant."  Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 366 (2d Cir. 2003).

18.      In this instance, Intercat was solely responsible for the delay.  Intercat had notice as early at November 2002 that it potentially possessed a claim against the Debtors.  And, to the extent there was any ambiguity about such potential claim, Grace's request to intervene in the Action clearly notified Intercat that it may have a claim against Grace.  Instead of protecting its' rights through the claims process, Intercat waited almost two years before seeking to file a proof of claim.  Intercat's only explanation for this prolonged delay, is that it did not previously know the scope of the alleged infringement or Grace's involvement in the same.  Accordingly, even if Intercat's failure was the result of "neglect," it has failed to show that such neglect was "excusable."  The Debtors should not be penalized for Intercat's conscious disregard of the Bar Date.

---

Intercat has followed Royals' lead may serve as an indication that those floodgates are beginning to open.

9

**e.      The Bar Date was the Product of a Lengthy, Thorough, and Expensive Process that Would be Largely Wasted if this Court Grants the Intercat Motion**

19.      The Debtors invested tremendous resources in the development of a Bar Date Notice Program that would insure adequate notice of the Bar Date to all affected parties. This lengthy and expensive process - during which the Debtors received extensive input from this Court and the Committees concerning the substance of the documents, the scope of the parties that received the Notice, and the publications in which to provide notice - culminated when this Court issued the Bar Date Order. The Bar Date Order states that delivery of the Bar Date Notice Package via first class mail constitutes "good, adequate and sufficient notice". The Debtors mailed a copy of the Notice Package to Intercat and its counsel on June 22, 2002. See Exhibit A. Accordingly, Intercat received legally sufficient notice of the Bar Date and the application of the Bar Date to its respective claim. This Court should not excuse Intercat's conscious disregard of the plain terms of the Bar Date Order.

20.      Further, the Notice Package makes it abundantly clear that the failure to file a claim by the Bar Date will result in a forfeiture of any such claim against the estates of any of the Debtors. The Bar Date Notice states in Section 9, **"EFFECT OF NOT FILING A CLAIM"**:

> ANY HOLDER OF A NON-ASBESTOS CLAIM, ASBESTOS PROPERTY DAMAGE CLAIM OR MEDICAL MONITORING CLAIM WHO IS REQUIRED TO FILE A PROOF OF CLAIM AND USE A COURT APPROVED PROOF OF CLAIM FORM AND WHO FAILS TO FILE A PROOF OF CLAIM ON OR BEFORE THE BAR DATE FOR ANY CLAIMS SUCH CLAIMANT HOLDS AGAINST ANY OF THE DEBTORS OR THEIR PREDECESSORS-IN-INTEREST, INSURANCE CARRIERS OR THE DEBTORS' PROPERTY, **SHALL BE FOREVER BARRED, ESTOPPED AND ENJOINED** FROM ASSERTING ANY SUCH CLAIMS (OR FILING A PROOF OF CLAIM WITH RESPECT TO SUCH CLAIMS) AGAINST ANY OF THE DEBTORS, THEIR PROPERTY OR THEIR ESTATES. IF ANY SUCH CLAIMS ARE SO BARRED, EACH OF THE DEBTORS AND ITS PROPERTY SHALL BE FOREVER DISCHARGED FROM ALL

10

11

INDEBTEDNESS AND LIABILITIES WITH RESPECT TO SUCH CLAIMS
AND THE HOLDERS OF SUCH CLAIMS SHALL NOT BE PERMITTED TO
VOTE ON ANY PLAN OR PLANS OF REORGANIZATION ON ACCOUNT
OF SUCH CLAIMS, OR TO RECEIVE FURTHER NOTICES REGARDING
SUCH CLAIMS OR REGARDING THESE CHAPTER 11 CASES.  Bar Date
Notice ¶9, 7.

21.     This language makes it abundantly clear that the failure to file a timely claim

would result in a complete forfeiture of such claim.   A prudent recipient of the Bar Date Notice

Package would have filed a proof of claim, lest they risked forfeiture of important rights.

Intercat made a conscious decision that it did not wish to preserve such rights, and the Debtors

should not be penalized by Intercat's recent "change of heart."

11

WHEREFORE, for the foregoing reasons, the Debtors respectfully request that this Court

deny the Intercat Motion.

Respectfully Submitted:

Dated: September 10, 2004

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
James W. Kapp III
Samuel L. Blatnick
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES &
WEINTRAUB P.C.

Laura Davis Jones (#2436)
David W. Carickhoff, Jr. (#3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:   (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession