# TAB 1

Bench Filed
on _4/2/01_

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (___) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | |

**APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a) AND FED. R. BANKR. P. 2014(a), 2016 AND 5002 AUTHORIZING THE EMPLOYMENT AND RETENTION OF THE BLACKSTONE GROUP L.P. AS FINANCIAL ADVISOR TO THE DEBTORS AND DEBTORS IN POSSESSION**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

hereby submit this application (the "Application") for an order pursuant to sections 327(a) and

328(a) of title 11 of the United States Code (as amended, the "Bankruptcy Code") and Fed. R. Bankr.

P. 2014(a), 2016 and 5002 authorizing the employment and retention of The Blackstone Group L.P.

---

[1]The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

("Blackstone") as financial advisor to the Debtors. In support of this Application, the Debtors state as follows:[2]

### Introduction

1.     The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and the Application in this District is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 327(a) and 328(a) of the Bankruptcy Code.

### Background

2.     On the date hereof (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). Contemporaneously herewith, the Debtors filed a motion to consolidate, for administrative purposes only, the Chapter 11 Cases. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

### Summary of Operations

3.     The Debtors engage in specialty chemicals and materials businesses, operating on a worldwide basis, with their corporate headquarters located in Columbia, Maryland. The

---

[2] The facts and circumstances supporting this Application are set forth in the *Affidavit of David B. Siegel, Senior Vice President and General Counsel of W. R. Grace & Co.*, in Support of First Day Motions, filed contemporaneously herewith.

Appendix 002

Debtors predominately operate through two business units - Davison Chemicals and Performance

Chemicals. The Debtors' parent company, W. R. Grace & Co. ("Grace"), is a global holding

company that conducts substantially all of its business through a direct, wholly owned subsidiary

W. R. Grace & Co. - Conn. ("Grace-Conn"). Grace-Conn owns substantially all of the assets,

properties and rights of Grace in the United States and has 76 domestic subsidiaries and affiliates,

60 of which are debtors and debtors in possession in the Chapter 11 Cases. A further description of

the Debtors, their businesses and their need for relief under chapter 11 of the Bankruptcy Code can

be found in the Affidavit of David B. Siegel, Senior Vice President and General Counsel of W. R.

Grace & Co., in Support of First Day Motions, filed contemporaneously herewith.

<u>**Relief Requested**</u>

      4.     By this Application, the Debtors seek to employ and retain Blackstone

pursuant to sections 327 and 328 of the Bankruptcy Code as their financial advisor in the Chapter 11

Cases, as more fully described below.

      5.     Blackstone has extensive experience in providing financial advisory services

in reorganization proceedings and has an excellent reputation for the services it has rendered in

chapter 11 cases on behalf of debtors and creditors throughout the United States.

      6.     The Debtors believe that Blackstone is well qualified and able to represent the

Debtors in a cost-effective, efficient, and timely manner. Blackstone has indicated a willingness to

act on behalf of the Debtors and to subject itself to the jurisdiction and supervision of the Court.

3

## Financial Advisor's Disinterestedness

7.      To the best of the Debtors' knowledge, and as disclosed herein and in the

affidavit of Pamela D. Zilly, a Senior Managing Director of Blackstone, a copy of which is attached

hereto as Exhibit A, (a) Blackstone is a "disinterested person" within the meaning of section 101(14)

and as required by section 327(a) and referenced by section 328(c) of the Bankruptcy Code, and

holds no interest adverse to the Debtors and their estates for the matters for which Blackstone is to

be employed and (b) Blackstone has no connection to the Debtors, their creditors or their related

parties herein except as disclosed in the Affidavit.

8.      Blackstone will conduct an ongoing review of its files to ensure that no

conflicts or other disqualifying circumstances exist or arise.  If any new facts or relationships are

discovered, Blackstone will supplement its disclosure to the Court.

## Scope of Services

9.      The parties have entered into an agreement that would govern the relationship

between Blackstone and the Debtors, a copy of which is attached hereto as Exhibit B (the

"Blackstone Agreement"). Blackstone will provide such financial advisory services (the "Financial

Advisory Services") as Blackstone and the Debtors shall deem appropriate and feasible in order to

advise the Debtors in the course of the Chapter 11 Cases, including, but not limited to, the following:

      a.      assisting in the evaluation of the Debtors' businesses and prospects;

      b.      assisting in the development of the Debtors' long-term business plan;

4

c.     analyzing the Debtors' financial liquidity and financing requirements;

d.     assisting in the estimation of asbestos claims including the preparation of an estimation model for payments and costs and the analyses of payment and funding scenarios;

e.     evaluating the Debtors' debt capacity and alternative capital structures;

f.     developing valuation, debt capacity and recovery analyses in connection with developing and negotiating a potential Restructuring (as defined in the Blackstone Agreement);

g.     analyzing various restructuring scenarios and the potential impact of these scenarios on the value of the Debtors and the recoveries of those stakeholders impacted by the restructuring;

h.     developing a negotiation strategy and assisting in negotiations with the Debtors' creditors and other interested parties with respect to plan of reorganization issues;

i.     valuing securities offered by the Debtors in connection with a Restructuring;

j.     making presentations to the Debtors' board of directors, creditor groups and other parties in interest, as appropriate;

k.     providing expert testimony, as requested; and

l.     providing such other advisory services as are customarily provided in connection with the analysis and negotiation of a Restructuring, as requested and mutually agreed upon by the Debtors and Blackstone.

10.    The Financial Advisory Services set forth in the Blackstone Agreement and summarized above do not encompass other investment banking services or transactions that may be undertaken by Blackstone at the request of the Debtors, including the raising of debt or equity capital, the arranging of the sale, merger or other disposition of all or part of the Debtors or any of their assets, the arranging of joint ventures or other similar combinations, any purchase by the Debtors of another entity or any other specific services not set forth in the Blackstone Agreement.

5

The terms and conditions of any such investment banking services, including compensation arrangements, would be set forth in a separate written agreement between the Debtors and Blackstone and would be subject to any necessary Court approval.

11.     The Financial Advisory Services that Blackstone will provide to the Debtors are necessary to enable the Debtors to maximize the value of their estates and to reorganize successfully.   The Debtors believe that the Financial Advisory Services will not duplicate the services that, subject to this Court entering or having entered appropriate orders, other financial advisors, if any, would provide to the Debtors in the Chapter 11 Cases.  Blackstone will carry out unique functions and will use reasonable efforts to coordinate with the Debtors' other retained Professionals to avoid the unnecessary duplication of services.

### Terms of Retention

12.     Blackstone has agreed to represent the Debtors for compensation at the amounts agreed upon between the parties pursuant to the Blackstone Agreement.  As more fully described in the Blackstone Agreement, in consideration of the Financial Advisory Services provided by Blackstone, the Debtors have agreed to pay Blackstone:

a.      a monthly advisory fee (the "Monthly Advisory Fee") in the amount of $175,000 in cash, with the first such Monthly Advisory Fee payable upon execution of the Blackstone Agreement by both parties and additional installments of the Monthly Advisory Fee payable in advance on each monthly anniversary of the Effective Date (as defined in the Blackstone Agreement); and

6

> b.    promptly upon the completion of a Successful Restructuring (as defined below), an additional fee in cash of $5,000,000 (the "Restructuring Fee", together with the Monthly Advisory Fee, the "Fee Structure").

13.    As defined in the Blackstone Agreement, a "Successful Restructuring" shall mean the execution and confirmation of a plan of reorganization pursuant to an order of the Court.

14.    Blackstone will maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services, including receipts for any individual expenditure in excess of $25.

15.    Blackstone will seek compensation and reimbursement of expenses, as specified in the Blackstone Agreement, with the payment of such fees and expenses to be approved in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules and any orders of this Court; provided, however, that Blackstone will maintain detailed time record in half-hour increments.

16.    The Debtors also seeks approval of the Fee Structure pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 of the Bankruptcy Code on any reasonable terms and conditions of employment, including a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Accordingly, section 328(a) of the Bankruptcy Code, therefore, permits the Court to approve the Fee Structure outlined herein.

Appendix 007

The Fee Structure appropriately reflects the nature and scope of the services to be provided by

Blackstone, Blackstone's substantial experience with respect to financial advisory services, and the

fee structures typically utilized by Blackstone and other leading financial advisors, which do not bill

their clients on an hourly basis. Similar fixed and contingency fee arrangements have been approved

and implemented in other large chapter 11 cases in this District and elsewhere. See, e.g., In re Trans

World Airline, Inc., et al., Case No. 01-0056 (PJW) (Bankr. D. Del. Jan. 10, 2001) (order dated

Jan. 26, 2001 approving the retention of Rothschild, Inc. as investment bankers for the debtors,

pursuant to sections 327(a) and 328(a) of the Bankruptcy Code); In re United Artists Theatre

Company, et al., Case No. 03514 (SLR) (Bankr. D. Del. Sept. 7, 2000) (order dated Nov. 14, 2000

approving the retention of Houlihan Lokey Howard & Zukin Capital as investment bankers for the

debtors, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code); In re Harnischfeger

Industries, et al., Case No. 99-02171 (PJW) (Bankr. D. Del. June 7, 1999) (order dated Feb. 8, 2000

approving the retention of Blackstone as financial advisors to the debtors, pursuant to sections 327(a)

and 328(a) of the Bankruptcy Code).

       17.    Notwithstanding the approval of the Fee Structure requested herein, all of

Blackstone's fees and expenses in these cases will be subject to approval of the Court upon proper

application by Blackstone in accordance with sections 330 and 331 of the Bankruptcy Code, Fed.

R. Bankr. P. 2016, the fee and expense guidelines established by the United States Trustee and any

8

Appendix 008

other applicable requirements or orders of the Court. However, pursuant to section 328(a) of the

Bankruptcy Code, the Court may not subsequently allow Blackstone's compensation on terms

different from the approved Fee Structure unless such compensation "prove[s] to have been

improvident in light of developments not capable of being anticipated at the time" the Fee Structure

was originally approved. 11 U.S.C. § 328(a).

## Indemnification Provisions

18.    Blackstone requests that the indemnification provisions of the Blackstone

Agreement, a copy of which are attached as Attachment A to the Blackstone Agreement, be

approved, subject to the following:

a.    subject to the provisions of subparagraph (d), infra, the Debtors are authorized to indemnify, and shall indemnify Blackstone, in accordance with the Blackstone Agreement, for any claim arising from, related to or in connection with Blackstone's prepetition performance of the services described in the Blackstone Agreement;

b.    subject to the provisions of subparagraph (d), infra, the Debtors are authorized to indemnify, and shall indemnify, Blackstone in accordance with the Blackstone Agreement, for any claim arising from, related to or in connection with the Financial Advisory Services but not for any claim arising from related to or in connection with Blackstone's postpetition performance of any services other than the Financial Advisory Services unless such postpetition services and indemnification therefore are approved by the Court;

c.    notwithstanding any provision of the Blackstone Agreement to the contrary, the Debtors shall have no obligation to indemnify Blackstone, or to provide contribution or reimbursement to Blackstone, for any claim or expense to the extent any losses, claims, damages or liabilities (or expenses relating thereto) are judicially determined by a court of competent jurisdiction (the determination

9

having become final) to have primarily resulted from the bad faith, gross negligence or willful misconduct of Blackstone; and

d.    if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing the Chapter 11 Cases, Blackstone believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Blackstone Agreement, including without limitation, the advancement of defense costs, Blackstone must file an application therefor in this Court, and the Debtors may not pay any such amounts to Blackstone before the entry of an order by this Court approving payment. This subparagraph (d) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Blackstone for indemnification, contribution or reimbursement and not to limit the duration of the Debtors' obligation to indemnify Blackstone.

19.    The preceding indemnification procedures are in substantially the same form as the indemnification procedures that were negotiated with the U.S. Trustee and approved by the Court in In re United Artists Theatre Company, et al., Case No. 00-03514 (SLR) (Bankr. D. Del. Sept. 7, 2000); In re Ameriserve Food Distribution, Inc., Case No. 00-0358 (PJW) (Bankr. D. Del. May 9, 2000); In re Planet Hollywood International, Inc., Case No. 99-3612 (JJF) (Bankr. D. Del. Dec. 17, 1999).

<u>Notice</u>

20.    Notice of this Motion has been given to (i) the United States Trustee and (ii) counsel to the proposed debtor in possession lender. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

10

## No Prior Request

21.    No prior Motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form attached hereto, authorizing the employment and retention of Blackstone as financial advisors pursuant to the terms of the Blackstone Agreement; and grant such further relief as is just and proper.

Dated:   April 2, 2001

W. R. GRACE & CO., W. R. GRACE & CO.-CONN., A-1 BIT & TOOL CO., INC., ALEWIFE BOSTON LTD., ALEWIFE LAND CORPORATION, AMICON, INC., CB BIOMEDICAL, INC. (F/K/A CIRCE BIOMEDICAL, INC.), CCHP, INC., COALGRACE, INC., COALGRACE II, INC., CREATIVE FOOD 'N FUN COMPANY, DAREX PUERTO RICO, INC., DEL TACO RESTAURANTS, INC., DEWEY & ALMY, LLC (F/K/A DEWEY AND ALMY COMPANY), ECARG, INC., FIVE ALEWIFE BOSTON LTD., G C LIMITED PARTNERS I, INC. (F/K/A GRACE COCOA LIMITED PARTNERS I, INC.), G C MANAGEMENT, INC. (F/K/A GRACE COCOA MANAGEMENT, INC.), GEC MANAGEMENT CORPORATION, GN HOLDINGS, INC., GPC THOMASVILLE CORP., GLOUCESTER NEW COMMUNITIES COMPANY, INC., GRACE A-B INC., GRACE A-B II INC., GRACE CHEMICAL COMPANY OF CUBA, GRACE CULINARY SYSTEMS, INC., GRACE DRILLING COMPANY, GRACE ENERGY CORPORATION, GRACE ENVIRONMENTAL, INC., GRACE EUROPE, INC., GRACE H-G INC., GRACE H-G II INC., GRACE HOTEL SERVICES CORPORATION, GRACE INTERNATIONAL HOLDINGS, INC. (F/K/A DEARBORN

11

INTERNATIONAL HOLDINGS, INC.), GRACE OFFSHORE COMPANY, GRACE PAR CORPORATION, GRACE PETROLEUM LIBYA INCORPORATED, GRACE TARPON INVESTORS, INC., GRACE VENTURES CORP., GRACE WASHINGTON, INC., W. R. GRACE CAPITAL CORPORATION, W. R. GRACE LAND CORPORATION, GRACOAL, INC., GRACOAL II, INC., GUANICA-CARIBE LAND DEVELOPMENT CORPORATION, HANOVER SQUARE CORPORATION, HOMCO INTERNATIONAL, INC., KOOTENAI DEVELOPMENT COMPANY, L B REALTY, INC., LITIGATION MANAGEMENT, INC. (F/K/A GHSC HOLDING, INC., GRACE JVH, INC., ASBESTOS MANAGEMENT, INC.), MONOLITH ENTERPRISES, INCORPORATED, MONROE STREET, INC., MRA HOLDINGS CORP. (F/K/A NESTOR-BNA HOLDINGS CORPORATION), MRA INTERMEDCO, INC. (F/K/A NESTOR-BNA, INC.), MRA STAFFING SYSTEMS, INC. (F/K/A BRITISH NURSING ASSOCIATION, INC.), REMEDIUM GROUP, INC. (F/K/A ENVIRONMENTAL LIABILITY MANAGEMENT, INC., E&C LIQUIDATING CORP., EMERSON & CUMING, INC.), SOUTHERN OIL, RESIN & FIBERGLASS, INC., WATER STREET CORPORATION, AXIAL BASIN RANCH COMPANY, CC PARTNERS (F/K/A CROSS COUNTRY STAFFING), HAYDEN-GULCH WEST COAL COMPANY, H-G COAL COMPANY.

By: _____
    David B. Siegel, Senior Vice President and
    General Counsel

12

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-0 1139 (___) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

**AFFIDAVIT OF PAMELA D. ZILLY IN SUPPORT OF THE DEBTORS'
APPLICATION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 327(a) AND
328(a) AND FED. R. BANKR. P. 2014(a), 2016 AND 5002 AUTHORIZING THE THE
EMPLOYMENT AND RETENTION OF THE BLACKSTONE GROUP L.P. AS
FINANCIAL ADVISOR TO THE DEBTORS AND DEBTORS IN POSSESSION**

| | | |
|---|---|---|
| STATE OF NEW YORK | ) | |
| | ) | ss. |
| COUNTY OF NEW YORK | ) | |

PAMELA D. ZILLY, being duly sworn, deposes and says:

1.     I am a Senior Managing Director of The Blackstone Group L.P.

("Blackstone"), a private investment banking firm that maintains offices at 345 Park Avenue, New

York, New York 10154, and I make this affidavit on behalf of Blackstone (the "Affidavit"). I submit

this Affidavit in support of the application (the "Application") of the debtors and debtors in

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") for an order authorizing the employment and retention of Blackstone as financial advisor to the Debtors. Except as otherwise noted, I have personal knowledge of the matters set forth herein.

### Blackstone's Qualifications

2.      Blackstone is recognized for its expertise in providing financial advisory services in financially distressed situations, including advising debtors, creditors and other constituents in chapter 11 proceedings and serving as investment bankers in numerous cases.

3.      I have previously worked on many chapter 11 restructurings, advising both debtors and creditors in various cases and have vast experience working on companies in distressed situations. Selected current and previous advisory assignments in which I have participated include: The Babcock & Wilcox Company, Dow Corning Corporation, Altos Hornos de Mexico, APS Holding Corporation, The Caldor Corporation, Lone Star Industries, America West Holdings, Phar-Mor Company, and The Kendall Company.

4.      Since February 1, 2001, Blackstone has rendered financial advisory services to the Debtors in connection with their restructuring efforts. Blackstone has become thoroughly familiar with the Debtors' operations and is well qualified to represent the Debtors as financial advisors in connection with such matters in a cost-effective and efficient manner.

### Disinterestedness of Professionals

5.    Based on the results of the conflict search conducted to date and described more fully below, to the best of my knowledge, neither I, Blackstone, nor any member or employee thereof, insofar as I have been able to ascertain, has any connection with the Debtors, their creditors, other parties-in-interest (as reasonably known to us), their respective attorneys, or the U.S. Trustee or any person employed in the Office of the U.S. Trustee, except as disclosed or otherwise described herein.

6.    To the best of my knowledge, Blackstone is a "disinterested person" as that term is defined in section 101(14) of title 11 of the United States Code (as amended, the "Bankruptcy Code"), as modified by section 1107(b) of the Bankruptcy Code, in that, its members and employees:

a.    are not creditors, equity security holders or insiders of the Debtors;

b.    are not and were not investment bankers for any outstanding security of the Debtors;

c.    have not been, within three years before the date of the filing of the Debtors' chapter 11 petition, (i) investment bankers for a security of the Debtors, or (ii) an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the Debtors; and

d.    were not, within two years before the date of filing of the Debtors' chapter 11 petitions, a director, officer, or employee of the Debtors or of any investment banker as specified in subparagraph (b) or (c) of this paragraph.

3

**Appendix 015**

7.    Prior to the Petition Date, Blackstone performed certain professional services for the Debtors. The Debtors do not owe Blackstone any amount for services performed or expenses incurred prior to the Petition Date.

8.    As part of its diverse practice, Blackstone appears in numerous cases, proceedings and transactions involving many different professionals, including Kirkland & Ellis and other attorneys, accountants, investment bankers and financial consultants, some of which may represent claimants and parties-in-interest in the Chapter 11 Cases. Further, Blackstone has in the past, and may in the future, be represented by several attorneys and law firms in the legal community, some of whom may be involved in these proceedings. In addition, Blackstone has in the past and will likely in the future be working with or against other professionals involved in these cases in matters unrelated to these cases. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these business relations constitute interests materially adverse to the Debtors herein in matters upon which Blackstone is to be employed, and none are in connection with this case.

9.    Blackstone may have in the past represented, may currently represent, and likely in the future will represent, parties-in-interest of the Debtors in connection with matters unrelated to the Debtors and the Chapter 11 Cases (except as described below). A list of the entities Blackstone reviewed for conflicts is attached hereto as Exhibits A-I. In connection therewith, the following specific disclosures are made:

4

a.     American International Group (AIG) is a provider of letters of credit, insurance and surety bonds to certain of the Debtors. AIG owns a 7% passive, non-voting limited partnership interest in Blackstone and its affiliated companies. In addition, AIG has agreed to invest an estimated $1.2 billion as a limited partner in future private equity, real estate, and other funds that Blackstone sponsors.

b.     Blackstone is currently acting as the financial advisor to The Babcock & Wilcox Company in respect of its ongoing chapter 11 reorganization that is currently under the jurisdiction of the United States Bankruptcy Court for the Eastern District of Louisiana.

c.     An affiliate of Blackstone has in the past conducted informal discussions with the Debtors regarding possible transactions, none of which were consummated.

d.     Blackstone has a large and diverse financial advisory practice. Accordingly, Blackstone and certain of its members and employees may have in the past represented, may currently represent, and likely in the future will represent, in matters wholly unrelated to the Debtors' cases, entities that are listed on Exhibits A-I attached to the Affidavit. As a result of its investigations, Blackstone has identified certain entities that Blackstone previously has worked for, or currently is working with, in connection with other transactions unrelated to the Debtors or the Chapter 11 Cases. These parties include Bank of America Illinois, Bank of Nova Scotia, The Chase Manhattan Bank, N.A, Citibank, N. A., Credit Suisse First Boston, and Wachovia Bank &Trust Company, N.A. Blackstone has not represented, does not represent and will not represent any such entity's separate interest in the Chapter 11 Cases nor have any relationship with any such entity which would be adverse to the Debtors as to the matter as on which Blackstone is to be employed. Blackstone does not represent any entity in connection with the Chapter 11 Cases nor does it believe that any relationship it may have with any of the entities listed on Exhibits A-I attached to the Affidavit will interfere with or impair Blackstone's representation of the Debtors in the Chapter 11 Cases.

e.     Affiliates of Blackstone serve as general partners for and manage a number of investment vehicles (collectively, the "Blackstone Funds"). The investors in the Blackstone Funds are principally unrelated third parties but also include affiliates of Blackstone and various of its officers and employees (collectively, the "Employees"), including Employees working on the Chapter 11

5

Cases. In addition, certain of the Employees, including Employees working on the Chapter 11 Cases, are limited partners in the Blackstone Funds. In their capacity as limited partners, these Employees have personal investments in the Blackstone Funds, but have no control over investment decisions or over business decisions made at the Blackstone Funds. Among other things, the Blackstone Funds are (a) active direct investors in a number of portfolio companies and (b) passive investors in other funds (collectively, the "Investment Funds") managed by a number of non-traditional money managers, all of which are similar to investments in mutual funds. As would be the case with respect to a mutual fund investment, neither Blackstone, its affiliates, the Blackstone Funds nor the Employees have any control over the investments made by the Investment Funds in which the Blackstone Funds are invested, including investment purchases, investment divestitures and the timing of such activities. Blackstone maintains a strict separation between its Employees assigned to the Chapter 11 Cases and the Employees assigned to the Blackstone Funds. To avoid any appearance of impropriety where the Blackstone Funds may receive information about such Investment Funds' investing in companies in which Blackstone is acting as an advisor, Blackstone maintains internal procedures designed to preclude the dissemination of such information to the Employees who are providing such advisory services. No Employee working on the Chapter 11 Cases receives information concerning the individual investments of Investment Funds in which the Blackstone Funds are invested. Likewise, in accordance with U.S. securities law, no confidential information concerning the Debtors is permitted to be communicated to the Employees working for the Blackstone Funds. It is possible that companies owned, in whole or in part, by the Blackstone Funds or which may have had discussions regarding a possible investment or transaction in connection with the Blackstone Funds may have a relationship with the Debtors or otherwise appear on the list of entities in Exhibits A to I to the Affidavit. These relationships are unrelated to the Financial Advisory Services Blackstone intends to provide in the Chapter 11 Cases. Blackstone maintains that these relationships are subject to the internal confidentiality procedures outlined immediately above and thus have no meaningful bearing on Blackstone's ability to advise the Debtors.

10.     The entities disclosed herein have been located by Blackstone using its

reasonable efforts. It is Blackstone's intent to update and expand its ongoing conflict search for

additional parties in interest in an expeditious manner and update this information as necessary.

Blackstone is confident that the disclosed representation of such creditors and equity security holders

in unrelated matters will not affect its representation of the Debtors in these proceedings.

11.     To the best of my knowledge, Blackstone has not been retained to assist any

entity or person other than the Debtors on matters relating to, or in connection with, the Chapter 11

Cases. If this Court approves the proposed employment of Blackstone by the Debtors, Blackstone

will not accept any engagement or perform any services for any entity or person other than the

Debtors in this situation. Blackstone will, however, continue to provide professional services to

entities or persons that may be creditors of the Debtors or parties in interest in the Chapter 11 Cases;

provided, however, that such services do not relate to, or have any direct connection with, the

Chapter 11 Cases.

12.     Blackstone will periodically review its files during the pendency of the

Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If

any new relevant facts or relationships are discovered or arise, Blackstone will use reasonable efforts

to identify such further developments and will promptly file a Supplemental Affidavit as

Rule 2014(a) of the Federal Rules of Bankruptcy Procedure requires.

## Professional Services Compensation

13.    The parties have entered into an agreement that would govern the relationship between Blackstone and the Debtors, a copy of which is attached as Exhibit B to the Application (the "Blackstone Agreement"). Blackstone will provide such financial advisory services (the "Financial Advisory Services") as Blackstone and the Debtors shall deem appropriate and feasible in order to advise the Debtors in the course of the Chapter 11 Cases, including, but not limited to, the following:

a.    assisting in the evaluation of the Debtors' businesses and prospects;

b.    assisting in the development of the Debtors' long-term business plan;

c.    analyzing the Debtors' financial liquidity and financing requirements;

d.    assisting in the estimation of asbestos claims including the preparation of an estimation model for payments and costs and the analyses of payment and funding scenarios;

e.    evaluating the Debtors' debt capacity and alternative capital structures;

f.    developing valuation, debt capacity and recovery analyses in connection with developing and negotiating a potential Restructuring (as defined in the Blackstone Agreement);

g.    analyzing various restructuring scenarios and the potential impact of these scenarios on the value of the Debtors and the recoveries of those stakeholders impacted by the restructuring;

h.    developing a negotiation strategy and assisting in negotiations with the Debtors' creditors and other interested parties with respect to plan of reorganization issues;

i.    valuing securities offered by the Debtors in connection with a Restructuring;

8

j.       making presentations to the Debtors' board of directors, creditor groups and other parties in interest, as appropriate;

k.       providing expert testimony, as requested; and

l.       providing such other advisory services as are customarily provided in connection with the analysis and negotiation of a Restructuring, as requested and mutually agreed.

14.    The Financial Advisory Services set forth in the Blackstone Agreement and summarized above do not encompass other investment banking services or transactions that may be undertaken by Blackstone at the request of the Debtors, including the raising of debt or equity capital, the arranging of the sale, merger or other disposition of all or part of the Debtors or any of their assets, the arranging of joint ventures or other similar combinations, any purchase by the Debtors of another entity or any other specific services not set forth in the Blackstone Agreement. The terms and conditions of any such investment banking services, including compensation arrangements, would be set forth in a separate written agreement between the Debtors and Blackstone and would be subject to any necessary Court approval.

15.    The Financial Advisory Services that Blackstone will provide to the Debtors are necessary to enable the Debtors to maximize the value of their estates and to reorganize successfully. The Debtors believe that the Financial Advisory Services will not duplicate the services that, subject to this Court entering or having entered appropriate orders, other financial advisors, if any, would provide to the Debtors in these cases. Blackstone will carry out unique

Appendix 021

functions and will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid the unnecessary duplication of services.

16.    Blackstone has agreed to represent the Debtors for compensation at the amounts agreed upon between the parties pursuant to the Blackstone Agreement. As more fully described in the Blackstone Agreement, in consideration of the Financial Advisory Services provided by Blackstone, the Debtors have agreed to pay Blackstone:

    a.    a monthly advisory fee (the "Monthly Advisory Fee") in the amount of $175,000 in cash, with the first such Monthly Advisory Fee payable upon execution of the Blackstone Agreement by both parties and additional installments of the Monthly Advisory Fee payable in advance on each monthly anniversary of the Effective Date (as defined in the Blackstone Agreement); and

    b.    promptly upon the consummation of a Successful Restructuring (as defined below), an additional fee in each of $5,000,000 (the "Restructuring Fee," together with the Monthly Advisory Fee, the "Fee Structure").

17.    As defined in the Blackstone Agreement, a "Successful Restructuring" shall mean the execution and confirmation of a plan of reorganization pursuant to an order of the Court.

18.    Blackstone will maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services, including receipts for any individual expenditure in excess of $25.

19.    Blackstone will seek compensation and reimbursement of expenses, as specified in the Blackstone Agreement, with the payment of such fees and expenses to be approved in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local

Appendix 022

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct.

Executed on [_March 26_], 2001.

_Pamela D Zilly_

Pamela D. Zilly

Subscribed and Sworn to before me
this [_26_] day of [_March_], 2001

_Holly B. Cohen_

Notary Public

My Commission expires: _March 9, 2002_

HOLLY B. COHEN
NOTARY PUBLIC, State of New York
No. 01CO6003607
Qualified in Bronx County
Commission Expires March 9, 2002

O:\USERS\ZILLY\BLACKST0.WPD

**Appendix 023**

Exhibit A

EXHIBIT A.

**SIGNIFICANT CURRENT VENDORS OF DEBTORS**

[FILED UNDER SEAL]

Exhibit B

Appendix 026

EXHIBIT B.

**SIGNIFICANT CURRENT CUSTOMERS OF DEBTORS**

**[FILED UNDER SEAL]**

**Exhibit  C**

## EXHIBIT C.

### DIRECTORS AND OFFICERS OF DEBTORS

Akos L. Nagy
Alicia Burke
Anthony G. Riddlesperger
D. F. Garvey
David B. Siegel
David M. Cleary
David Nakashige
Dudley L. Bobolts
Elyse Napoli-Filon
Fabio Tegiacchi
Gregory E. Poling
Henry C. Lyons
J. Elder
John F. Akers
John J. Murphy
Kang Hui Shen
Mark A. Shelnitz
Martin Hunter
Marye Anne Fox
Michael A. Miller
Michael N. Piergrossi

O. Mario Favorito
Paul Bettacchi
Paul J. Norris
Paul McMahon
R. H. Locke
Robert A. Maggio
Robert F. Jenkins
Robert J. Bettacchi
Robert J. Medler
Robert M. Tarola
Robert P. Turner
Ronald C. Cambre
Ruth E. Rowan
Susan E. Farnsworth
Susan Eccher
Thomas A. Vanderslice
W. Brian McGowan
William L. Baker
William L. Monroe
William M. Corcoran

Exhibit  D  (1)

## EXHIBIT D(1).

### PLAINTIFFS AND OTHER PARTIES-IN INTEREST TO
### NON-ASBESTOS LITIGATION AGAINST DEBTORS

Abbott, Margaret
Abbott, Eugene
Abner, Travis
Ada Public Library
Adams County Public Library
Akron City School District
Akron-Summit County Public Library
Alexander Local Schools
Alexandria Public Library
Amanda Clearcreek Local School District
Amherst Public Library
Amos Memorial Public Library
Anthony Wayne Local School District
Arcanum Public Library
Ashland Public Library
Ashtabula County District Library
Athens City School District
Austintown Local School District
Avon Lake City School District
Avon Lake Public Library
Baker, Sr., George
Barberton City School District
Barberton Public Library
Barsky, Harry
Bay Village City School District
Beachwood City School District
Beavercreek City School District
Bedford City School District
Bellefontaine City School District
Bellevue Public Library
Bexley Public Library
Birchard Public Library of Sandusky Co.
Bleazard, Erica
Bleazard, Ross
Bleazard, Laura
Bleazard, Laura - David Bleazard
Bliss Memorial Public Library
Bloom Carroll Local School District

Bloomfield-Mespo Local School District
Bluffton-Richland Public Library
Botkins Local School District
Bowen, Gary
Brecksville-Broadview Hts. City Sch. Dst.
Bristol Local School District
Bristol Public Library
Buckeye Valley Local Schools
Buckeye Central Local School District
Buckles-Whitmer, Donna
Bucyrus Public Library
Bullock, Lawrence
Canal Winchester Local School District
Canal Fulton Public Library
Cardington Lincoln Local School District
Carnegie Public Library
Casarino, Peter
Centerville City-School District
Central State University
Champaign County Library
Chardon Local School District
Chase, Adam
Circleville City School District
Clark County Public Library
Claymont School District Public Library
Clermont County Public Library
Cleveland State University
Cleveland Hts.-Univ. Hts. City Sch. Dst.
Cleveland Municipal School District
Cleveland Public Library
Cloverleaf Local School District
Clyde Public Library
Coco, Thomas
Coldwater Public Library
Columbiana Public Library
Columbus Metropolitan Library
Columbus State Community College
Coshocton Public Library

Coshocton City School District
Coventry Local-School District
Crestline Public Library
Crestwood Local School District
Cryovac Sealed Air Corporation
Cuyahoga Falls School District
Cuyahoga Heights Local School District
Cuyahoga County Public Library
Danville Local School District
Dayton and Montgomery County Public Library
Defiance Public Library
Del Pino, Jose Ramon Llaguna
Delaware County District Library
Delphos Public Library
Doss, Iris Rose
Doss, Jr., James
Doss, Iris
Doss, Jesse
Dover Public Library
E. Cleveland City School District
E. Palestine Memorial Public Library
East Clinton Local School District
East Guernsey Local School District
Eastwood Local School District
Ella M. Everhard Public Library
Elmwood Local School District
Elyria Public Library
Euclid Public Library
Evergreen Local School District
ExxonMobil Corporation
Fairfield County District Library
Fairfield Local School District
Fairfield Union Local School District
Fairlawn Local School District
Fairport Public Library
Findlay-Hancock County Public Library
Forest - Jackson Public Library
Four Bear, Charles - Jonathon Little
Four Bear, Charles - Whirlwind
Four Bear, Charles - Joray Four Bear
Four Bear, Charles
Four Bear, Anna

Four Bear, Charles -Charles Four Bear II
Four Bear, Charles-Ava L LittleWhirlwind
Franklin Public Library
Franklin City School District
Fremont City School District
Frontier Local School District
Galion Public Library Association
Garrison, Charline
Geauga County Public Library
Genoa Area Local School District
Gill, James
Gilstrap, Viola
Girard City School District
Girard Free Library
Gnadenhutten Public Library
Grafton-Midview Public Library
Grainger, David
Grainger, Denise
Grainger, Denise - Jay Grandchamp
Grainger, Trivian - Adam Grainger
Grainger, Dawn
Grainger, Trivian - Daniel Grainger
Grainger, Trivian
Grainger, Denise - Tina Kohl
Granville Public Library
Greene County Public Library
Hamilton Local School District
Harbor-Topky Memorial Library
Hardin-Houston Local School District
Harris Elmore Public Library
Harrison, Noel
Hatco Corporation
Helms, Brenda
Herrick Memorial Public Library
Highland Local School District
Highland County District Library
Hilliard City School District
Hillsboro City School District
Hocking Technical College
Holmes County District Public Library
Hubbard Exempted Village School District
Hubbard Public Library
Huron Public Library

Ida Rupp Public Library
Independence Local School District
Jackson Local School District
James Gill, on behalf of Calif. General Public
Jefferson Area Local School District
Jefferson Township Local School District
Johnstown Monroe Local School District
Jones, Richard
Kaneb Pipeline Operating Partnership, L.P.
Kaubisch Memorial Public Library
Kelley, Joan Mary
Kelly, Joan
Kenston Local School District
Kent City School District
Kent Free Library
Kester, Dale
Kettering City School District
Kingsville Public Library
Kinsman Free Public Library
Kirtland Public Library
Lake Local School District
Lakeland Community College
Lakeview Local Schools
Lakewood Public Library
Lane Public Library
Lebanon Public Library
Leetonia Community Public Library
Liberty Center Public Library
Liberty Union Thurston Local Schools
Licking Heights Local School District
Lima Public Library
Little Miami Local School District
Logan Elm Local School District
Logan County District Library
London City School District
London Public Library
Lorain County Community College
Lorain Public Library
Loudonville Public Library
Louisville Public Library
MacKenzie Memorial Public Library
Manning, Willard
Mansfield-Richland County Public Library

Maple Heights City School District
Martell, Rene
Marvin Memorial Library
Marysville Exempted Village School Dst.
Marysville Public Library
Mason Public Library
Massillon Public Library
Maumee City School District
McComb Public Library
McKinley Memorial Library
Medical College of Ohio
Medina County District Library
Mentor Public Library
Mesquita, Richard
Miamisburg City School District
Middletown Public Library
Middletown - Monroe School District
Milton Union Public Library
Minerals Management Service, Inc.
Minerva Public Library
Mohawk Community Library
Montpelier Exempted Village School Dist.
Montpelier Public Library
Napoleon Public Library
Nelson, Geraldine
Nelsonville-York City School District
New Lexington City School District
Newton Falls Exempted Village Sch. Dist.
Newton Falls Public Library
Nordonia Hills School District
North Canton Public Library
North Baltimore Public Library
North Canton City School District
North Olmsted City School District
North Royalton City School District
Northridge Local School District
Northwood Local School District
Oak Harbor Public Library
Oakwood City School District
Oberlin Public Library
Ontario Local School District
Oregon City School District
Orrville Public Library

Ostego Local School District
Overton, Wyatt
Paint Valley Local School District
Parker, Mel
Parker, Lerah
Pataskala Public Library
Patrick Henry Sch. Dist. Public Library
Paulding County Carnegie Library
Pemberville Public Library
Perry Public Library
Perry, Ruppel
Perry School District (Fayetteville, IN)
Perrysburg Exempted Village School Dist.
PETRO Resources, Inc.
Pettisville Local School District
Pickerington Local School District
Pishioneri, James
Plain Local School District
Plain City Library
Poland Local School District
Port Clinton City School District
Portage County District Library
Preble - Shawnee Local School District
Public Library of Cincinnati & Hamilton
Putnam County District Library
R. Mesquita, in behalf of California General
     Public
Reddoor, Abigail
Reddoor, Irma
Reed Memorial Library
Revere Local School District
Reynoldsburg City School District
Ricker, William
Ricker, Jr, George F (Erin Ricker)
Ricker, Helen
Ricker, Sr., George
Ricker, Jr., George
Ritter Public Library
River Valley Local School District
Roberts, John
Rockford Carnegie Library
Rocky River Public Library
Rocky River City School District

Russia Local School District
Salem Public Library
Salem City School District
Sandusky Public Library
Seneca East Public Library
Sinclair Community College
Smith, R. Gene
Solon City School District
Southeastern Local School District
Southern State Community College
Southwest Licking Local School District
Southwest Public Library
Spiker, Pauline
Springfield Local School District
St Paris Public Library
Stark County District Library
State of Ohio (Attorney General)
State of Michigan, Dept. of Corrections
Stow-Munroe Falls Public Library
Support Services Terminal, Inc.
Sylvania City School District
Taco Tico, Inc.
Taco Tico Acquisition Corp.
Taylor Memorial Public Library
Teays Valley Local School District
Tennison, Kathleen
Tennison, Kathleen
Thompson, Harrison
Tiffin-Seneca Public Library
Tipp City Public Library
Toledo City School District
Travis Abner, on behalf of Calif. Gen'l Public
Tri-County North Local Schools
Triad Local School District
Trimble Local School District
Troy City School District
Troy-Miami County Public Library
Tuscarawas County Public Library
Twin Valley Community Local School Dist.
Twinsburg City School District
Twinsburg Public Library
United States Department of Interior
Upper Sandusky Community Library

Upper Sandusky Exempted Village Sch. District
Upper Arlington City School District
Upper Arlington Public Library
Urban, Charles
Valley View Local School District
Versailles Exempted Village Sch. District
Wadsworth City School District
Walker, L. Diane
Walker, Diane
Wapakoneta City School District
Warren-Trumbull County Public Library
Warrensville Heights City School District
Washington State Community College
Washington Court House City Schools
Washington-Centerville Public Library
Waterloo Local School District
Waverly City School District
Way Public Library
Wayne Local School District
Wayne County Public Library
West Geauga Local School District
Westerville City School District
Westerville Public Library
Whitmer, Warren
Willard Memorial Library
Wilmington Public Library of Clinton County
Wolf Creek Local School District
Wood County District Public Library
Woodmore Local School District
Woodridge Local School District
Worthington Public Library
Wright Memorial Public Library
Wright, James
Yellow Springs Ex Village Sch. District
Youngstown/Mahoning County Public Library
Youpee, Josi
Youpee, Sr, Marvin K. - Iris Youpee
Youpee, Sr., Marvin
Youpee, Sr, Marvin K. - Brittany Youpee
Youpee, Cary
Youpee, Dwight
Youpee, Allen

Youpee, Sr, Marvin K. (Marvin Youpee, Jr)
Youpee, Sr, Marvin K. (William Youpee, III)
A. P. Green Services, Inc.
Allegheny Solvens and Chemicals Company
Amchem Products, Inc.
American Trading & Production Corp.
American Petrofina, Inc.
Amoco Corporation
Amoco Shipping Company
Anchor Chemical Company
Andrews Oil Company
Arhtur F. Hazen & Son, Inc.
ASARCO Incorporated
Ashland Oil, Inc.
Atlantic-Richfield Company
B. P. Oil Corporation
Baker & Taylor, Inc.
Basic, Inc.
Bearings and Transmissions, Inc.
Bearings, Inc.
Beaver Alkali Products
Beazer East, Inc.
Berry Bearing Company
Betz Laboratories, Inc.
BetzDearborn, Inc. (f/k/a Grace Dearborn Company)
Bigelow-Liptak Company
Blackhawk Chemical Company
Blackships, Inc.
Boron Oil Company
Bostik, Inc.
Boyer Chemical Laboratory Company
Burrell Corporation
Calgon Corporation
Chas Kurz & Co.
Chevron U.S.A., Inc.
Chevron Products Company
Chevron Shipping Company
Colowyo Coal Company, L.P.
Cosden Pipe Line Co.
Credit Suisse First Boston Corp.
D. A. Stuart Oil Co., Ltd.
DeShazer, Jack

Dextrex Corp.
Didier Taylor Refractories Corp.
Dow Chemical USA
E. F. Houghton & Company
El-Arabi, Mahguib
English China Clays, Inc.
Exxon Co. USA
FINA, Inc.
FINA Oil and Chemical Company
Fiske Bros. Refining. Co.
Fresenius Medical Care, Inc.
Fresenius National Medical Care, Inc.
Fresenius U.S.A., Inc.
G. Whitfield Richards
Gateway Industrial Supply
General Refractores Co.
Gojer, Inc.
Grand Saw & Machine, Inc.
Gulf Oil Corp.
Harbison-Walker Refractories Co.
Harry Miller Corporation
Hazen Petroluem, Inc.
Hess Tankership, Co.
Housley-Kimmich Company
Humble Oil & Refining Co.
Huthnance International, Inc.
Huthnance-Grace Offshore Company
Imperial Oil & Grease Co.
Imperial Metallic Lubricants, Inc.
Industrial Petroleum Chemicals
Jamestown Paint & Varnish Company
Jurgens, Charles
Kaiser Aluminum & Chemical Sales
Kennametal
Keystone Tankership Corp.
L. O. Burrell Coompany
L. P. S. Research Laboratories, Inc.
Laboratory Equipment Co.
Magnaflux Corporation
Management, Inc.
Marathon Oil
Marine Navigation Co., Inc.
Marine Transport Lines

Maurice A. Knight Company
McKesson Chemical Co.
Merrill Lynch, Pierce, Fenner & Smith, Inc.
Mesa Petroleum Co.
Metropolitan Urology, PSC
Mobil Oil Co.
Monsanto Company
Murphy Oil USA, Inc.
Murphy Exploration & Production Co.
N.Y. Hillside, a/k/a NY (Hillside), Inc. &
NY Petro. (Hillside) Inc.
National Chemsearch Corp.
National Tankers Corp.
National Medical Care, Inc.
Never-Seez Compound Corporation
Neville Chemical Company
North American Refractories Co.
O. Y. Sea Freight
Parkin Chemical Company
Pioneer Natural Resources Co.
Pioneer Natural Resources USA, Inc.
Pro-Chem. Inc.
Prudential Lines, Inc.
Quaker Chemical Corporation
Ralph A. Hiller Company
Ray Engineering
Reilly Tar & Chemical Corporation
Robinson Insulation Company
Samson Hydrocarbons Company
Samson Hydrocarbons Company
Saville & Co.
Sealed Air Corporation (US)
Shell Pipeline Corporation
State of Michigan, Department of
Corrections
Stauffer Chemical Co.
Sun Company
Support Terminal Services, Inc.
Support Terminals Operating Partnership,
    L.P.
T. J. Stevenson & Co.
Texaco, Inc.
Texaco Refining and Marketing, Inc.

Texaco Marine Services, Inc.
Texize Chemicals, Inc.
The Steco Corp.
The Filtron Co., Inc.,.
Union Pacific Railroad Company
Union Oil Co. of California
Union Carbide Corporation
United Refining Company
United Fruit Company
United States Steel Corp.
William K. Schmied, M. D.

**Exhibit  D  (2)**

## EXHIBIT D(2).

### ASBESTOS LITIGATION SIGNIFICANT CO-DEFENDANTS

101 California Investors Corp.
A. P. Green Industries, Inc.
A. P. Green Services Inc.
A. O. Smith Water Products Co.
A. W. Chesterton Company
A. C. Product Liability Trust
A BFST Products Co.
A. L. Burbank & Co. Ltd.
Abex Corp.
ACandS, Inc.
Acorn Iron & Supply Co.
Alfred Crane Co.
Allied Signal Inc.
Allied Glove Corp.
Altred Conhagen, Inc.
Amchem Products, Inc.
American Standard, Inc.
American Optical Corp.
American Export Lines, Inc.
Ametek, Inc.
Amoco Corp.
Amoco Oil Co.
Amoco Chemicals Co.
Anaconda Power Cable, Inc.
Anchor Packing Co.
Anco Insulations, Inc.
Appalachian Power Co.
Aqua Chem, Inc.
Arco Petroleum Products Co.
Argo International Corp.
Argo Packing Co.
Aristech Chemical Corp.
Armstrong World Industries
Asarco, Inc.
Asbestos Spray Corp.
Asbestos Product Mfg. Corp.
Asbestos Corp.
Asten Group, Inc.

Asten Canada, Inc.
Atlantic Asbestos Corp.
Atlantic Richfield Co.
Atlas-Turner Co. Ltd.
Auburn Manufacturing Co.
Aurora Pump Co.
B. F. Goodrich Co.
The Babcock & Wilcox Company
Beazer East, Inc.
Bethlehem Steel Corp.
Bigelow-Liptak Corp.
Black & Decker Corp.
BMCE, Inc.
The Boc Group, Inc.
Borg Warner Security Corp.
Boyd Co.
BP of America
Briggs Manufacturing Co.
Brown & Root, Inc.
Brown & Root USA, Inc.
Bryan Steam Corp.
The Budd Company
Burnham Corp.
Burns & Roe Synthetic Fuels, Inc.
C. E. Thurston & Sons, Inc.
Cape Industries, PLC.
CBS Corp.
Central Operating Co.
Certainteed Corp.
Champion International Corp.
Chemseco
Chevron Corp.
Chicago Fire Brick Co.
Cleaver Brooks Company, Inc.
Coffin Pump, Inc.
Collins Packing Co.
Coltec Industries, Inc.
Combustion Engineering, Inc.

Conhagen, Inc.
Consolidated Edison Co.
Consolidated Mines Selection
Continental Wire & Cable Co.
Cooper Industries, Inc.
Corhart Refractories Co.
Courter & Co., Inc.
Crane Co.
Crosby Steam & Valve Co.
Crown Cork & Seal Co., Inc.
D. B. Riley, Inc.
Dana Corp.
Daniel Construction Co.
Darragh Co.
Dover Resources, Inc.
Dow Chemical Co.
Dresser Industries, Inc.
Durabla Manufacturing Co.
Durame Tallic Corp., Inc.
E.G. & G. Sealol, Inc.
E.I. du Pont De Nemours & Co.
E.L. Stebbings, Inc.
Eagle Picher Industries, Inc.
Eagle, Inc.
Eastco Industrial Safety Corp.
Eastern Refractories Corp.
Eaton Corp.
Edison International, Inc.
Elliott Turbomachinery Co.
Elliott Machine Corp.
Empire Ace Asbestos Insulation
Ericsson Radio Systems, Inc.
Ernst Cage Co.
Everlasting Valve Co.
Excelsior, Inc.
F. R. Wright Co. Of Pittsburgh
Federal Mogul Corp.
Felt Products, Inc.
Ferodo America, Inc. (Acf)
Fibreboard Corporation
Figgie International
FKI Industries, Inc.
Flexitallic Gasket, Inc (Acf)

Flexo Products, Inc.
The Flintkote Company
Foote Mineral Co.
Foseco, Inc.
Foster Wheeler Corporation
Fulton Boiler Works, Inc.
GAF Corporation
Garlock Industries
Gasket Holdings, Inc.
Gateway Industrial Supply
Gatke Corp.
General Cable Corp.
General Motors Corp.
General Signal Corp.
General Refractories Co.
General Electric Co.
General Gasket Corp.
Georgia Pacific Corp.
Gibraltar Industrial Services Inc
Glen Alden Corp.
Goodall Rubber Co.
Goodyear Canada, Inc.
Goodyear Tire & Rubber Co.
Gould Pumps, Inc.
Graybar Electric Co.
Greene Tweed & Co.
Griffin Wheel Co.
Guard Line, Inc.
Gulf Coast Marine Supply Co.
Gulf Engineering Co., Inc.
Gulf Oil Corp.
Gulf Belting & Casket Co.
H. B. Fuller Co.
H. H. Robertson
Hajoca Corp.
Hampshire Industries, Inc.
Harbison Walker Refractories
Hel-Pro, Inc.
Henry Vogt Machine Co.
Hersh Packing & Rubber Co.
Hobart Brothers Co.
Holmes Blunt Ltd.
Home Rubber Co.

Hopeman Brothers, Inc.
Houdam John Crane, Inc.
Houghton & Co.
Hunter Sales Corp.
IMO Industries
Imoff's, Inc.
INCO Alloys International, Inc.
Indian Head Industries, Inc.
Indresco, Inc.
Industrial Rubber & Specialty Co.
Industrial Holders Co.
Ingersoll Rand Co.
Ingersoll-Dresser Pump
Insul Co., Inc.
Insulation Corp.
International Freighting Corp.
International Minerals & Chemical
J. H. France Refractories Co., Inc.
J. T. Thorpe & Sons, Inc.
James Walker Manufacturing Co.
Janos Industries Insulation Corp.
John Crane, Inc.
Kaiser Aluminium & Chemical Corp.
Kaiser Aluminum & Insulation Co.
Keasbey & Mattison
Keeler Dorr Oliver Boiler Co.
Kelly-Moore Paint Co., Inc.
Kennecott Energy Company
Kentile Floors, Inc.
Kohler Co.
Komp Equipment Co., Inc.
Koppers Co., Inc.
La Favorite Industries, Inc.
Lake Asbestos of Quebec, Ltd.
Laurel Rubber & Gasket Co.
Leeds & Northrup Co.
Lloyd F. Mitchell, Inc.
Long Island Lighting Corp.
Marathon Oil Co.
Maremont Corp.
Marine Specialty Co., Inc.
Mario & Dibono Plastering Co., Inc.
The Marmon Group, Inc.

McCarty Corp.
McCormack Asbestos Co.
McMaster-Carr Supply Co.
Melrath Gasket Co.
Metropolitan Life Ins. Co.
Minnesota Mining & Mfg.
Mississippi Rubber & Specialty Co.
Mobil Oil Corp.
Monongail-LA Power Co.
Monsanto Chemical Co.
Morse Diesel Construction, Inc.
Mortell Company
National Refractories And Minerals Corp.
National Gypsum Co., n/k/a Asbestos Claims
   Management Corp.
Noland Co.
North American Refractories Co.
North Brothers, Inc.
Norton Co.
Nosroc Corp.
Nuturn Corp.
O'Connor Constructors, Inc.
Oakfabco, Inc.
Occidental Chemical Corp.
Oglebay Norton Co.
Okonite Co.
Owens Illinois, Inc.
Owens Corning Fiberglass
Owens Illinois Glass Co.
Pacific Atlantic Steamship Co.
Panacon Corp.
Patterson Kelly Company
Peerless Heating Co.
Peerless Supply Co.
Peerless Industries, Inc.
Pecora Corp.
Pfizer, Inc.
Philip Carey Manufacturing Co.
Phoenix Specialty Manufacturing
Pittsburgh Plate Glass Industries
Pittsburgh Corning Corp.
Plibrico Company
Pneumo Abex Corp.

Porter, Hayden
PPG Industries, Inc.
Preferred Utilities Manufacturing
Premier Refractories & Chemicals
Proko Industries, Inc.
Puerto Rico Safety Equipment Co.
Quaker Rubber Co.
Quigley Company, Inc.
Rapid American Corp.
Ravenswood Aluminum Corp.
Reilly Benton Co., Inc.
Reynolds Metals Co.
Rhone Poulenc, Inc.
Rhopac, Inc.
Riley Stoker Corp.
Robert A. Keasbey Company
Robertson Ceco Corp.
Rockbestos Co.
Rohm & Haas Co.
Ruberoid Co. (successor is GAF Corp.)
S. B. Decking, Inc.
Safeguard Industrial Equipment
Sager Corp.
Sealol Corp.
Searo Packing Co.
Selby Battersby & Co.
Crouse-Hinds Sepco Corp.
Sequoia Ventures, Inc.
Shell Oil Co.
Sherwin Williams Co.
Shook & Fletcher Insulation Company
Skinner Engine Co., Inc.
South Atlantic Steamship
Standard Refractories Ltd.
Standard Equipment
Steel Grip Safety Apparel Co.
Stone & Webster, Inc.
Struthers Wells Corp.
Studebaker Worthing Co.
The Synkoloid Company of Canada, Ltd.
T & N, Ltd. (f/k/a T&N, PLC).
T & N Industries (ACF)
Taylor Seidenbach, Inc.

Taylored Industries, Inc.
Texaco, Inc.
Texas Vermiculite Co.
Thorpe Insulation Company
Tishman Construction Corp. of Illinois
Tishman Realty & Construction
Titusville Boiler Co.
Treadwell Corp.
Tung Sol Electric, Inc.
Turner Supply Co.
Tweed Greene & Co.
U. C. Realty Corp.
U. S. Navigation
U. S. Gypsum Corp.
Union Asbestos & Rubber Co.
Union Carbide Corp.
Uniroyal Chemical Co., Inc.
Uniroyal, Inc.
Universal Refractories, Inc.
U. S. Rubber Gypsum Co.
U. S. Mineral Products
U. S. Rubber Co.
USX Corp.
Vellumoid Co.
VIAD Corp.
Viking Pumps.
Vogt Machine Co.
Waco Insulation, Inc.
Wagner Electric Corp.
Walworth Co.
Warren Pumps, Inc.
Weil Mclain United Dominion Co.
Westinghouse Electric Corp.
Wire and Cable Division
Worthington Corp.
Worthington Pump Machinery Corp.
York Industries Corp.
Zimmerman Packing & Mfg., Inc.
Zurn Industries, Inc.

**Exhibit  D  (3)**

Appendix 043

## EXHIBIT D(3)

### INVENTORY SETTLEMENT AGREEMENTS WITH LAW FIRMS DISPOSING OF ASBESTOS BODILY INJURY CLAIMS VALUED AT MORE THAN $5 MILLION

| | |
|---|---|
| Weitz & Luxenberg, P.C. | New York, NY |
| Reaud, Morgan & Quinn, Inc. | Beaumont, TX |
| Foster & Sear | Dallas, TX |
| Goldberrg, Persky, Jennings & White, P.C. | Pittsburgh, PA |
| Silber & Pearlman, P.C. | Dallas, TX |
| Law Offices of David Lipman, P.C. | Miami, FL |
| Cooney & Conway | Chicago, IL |
| Campbell, Cherry, Harrison & Dove, L.L.P. | Waco, TX |
| Robles & Gonzales, P.A. | Miami, FL |

**Exhibit E**

# EXHIBIT E.

## TOP 100 EQUITY SECURITY HOLDERS OF DEBTORS

Cede & Co
W. R. Grace & Co Book Entry Memo A/C
Loriot & Co.
Jeanette L Vachon Trust UA
Paul J. Norris
Charles H. Erhart Jr.
Bob Robert Sunness
Wachovia Bank of North Carolina
M. Evelyn Bowman
Phyllis Schriger
John W. Austin Jr. & Patsy W. Austin Trust
    UA
Quentin Alexander
Patricia Stanley
Ellen R. Saxl
Angus W. Mercer
Ronald C. Cambre
Joyce M. Mercer
Wayne T. Smith
Rose M. Johnston
John A. Santillo & Rose Santillo
Edna M. Loos
Joanna M. Foley & Joseph P. Foley
Joseph A. Rightmyer
Simon Atlas
Alanna Forshay Fenske
Fred P. Brandt & Catherine A. Brandt
George R. Perrin
R. Ronald Kleiman
Joanna M. Foley & Joseph P. Foley
Merle Reppert
David B. Siegel
William M. Corcoran
Ann G. Fitzgerald
W. Brian McGowan
Harry S. Rinker Trust
Raymond E. Smiley
Janet L. Farr & Edward S. Farr

Holmes Oil Company
Lack & Lindsay
William A. Maude
William L. Monroe
Gerald W. Halmo
Daisy Salzo Casilla
Fred P. Brandt
Dorothy G. Kleiman
James G. Schaefer
Edmund F. Guaraldi Revocable Trust
John O. Flender
Magdalen Sleeman
Robert Bendheim
Rudolf B. Peest
Robert E. Anderson & Mary F. Anderson
Sylvia M. Erhart
Phyllis Schriger & William D. Roger
Eileen Margaret Grimsditch
Richard J. Schoofs
Noel A. Lee
Betty D. Green
Dorothy F. Sellers
Lawrence M. Pucci
Hilda Salz O
Bonnie Nagai
CMSS as Exchange Agent for
    Unexchanged Holders of
    Chomerics, Inc.
George T. Fukui & Katherine K. Fukui
Lillian Berman
Leonard L. Brown
Johnny P. Forehand Jr.
Kathryn C. Mattingly
Gregory E. Poling
Douglas V. Reynolds
Olaf B. Schubbe
The Smiley BBN Family Partnership
David Lawrence

Thomas Arlen Evans & Dotzie Kay Evans
Freda E. Strahl
Maria O. De Salz
Harold A. Eckmann
The Abraham Family Trust
Barbara Cates Baynard
Willie H. Blanton
Celwyn Company, Inc.
Rae C. Heiple
Burrel Leonard
Mary C. Kodis Trust
Joan McKay Young
Malech 1989 Family Trust
Margaret M. Sokol

Haig Torigian
Quentin L. Thelen
Robert L. Cox Jr.
Louise Loffredo
Elyse B. Napoli
Richard J. Nozemack
Steven S. Paloumbis
Mark A. Shelnitz
Gert H. Teska
Robert H. & Joan P. Beber
Laurey Mercer Rigsbee
George Montgomery
P. S. DeBeaumont

**Exhibit F**

## EXHIBIT F.

### ISSUERS OF THE DEBTORS' OUTSTANDING LETTERS OF CREDIT

ABN AMRO Bank N.V.
Bank of America, N.A.
Citibank, N.A.
J.P. Morgan Chase & Co.
Wachovia Bank & Trust Company, N.A.

**Exhibit  G**

# EXHIBIT G.

## ISSUERS OF THE DEBTORS' OUTSTANDING SURETY BONDS

American International Group, Inc.
The Travelers Insurance Co.
Fireman's Fund Insurance Co.
The Hartford Financial Services Group, Inc.
St. Paul Companies, Inc.

**Exhibit  H**

Appendix 052

# EXHIBIT H.

## BANK CREDITORS OF THE DEBTORS AND AGENTS AND INDENTURE TRUSTEES

The Chase Manhattan Bank (agent)
The Depository Trust Company
Bank of America, N.A.
J.P.Morgan & Chase Co.
First Union Bank
Credit Suisse First Boston Corp.
Dresdner Bank A.G.
Bank of Nova Scotia
ABN Amro Bank N.V.
Bank of New York
Northern Trust Bank
Wachovia Bank and Trust Company, N.A.
Hapoalim
Barclays Bank PLC
Citibank, N.A.
Commerzbank A.G.
Credit Lyonnais
HSBC/MarineMidland
Lloyds Bank, Dubai
CEDE & Co. (indenture trustee)
Deposit Guaranty Corp. (indenture trustee)

**Exhibit I**

# EXHIBIT I.

## PARTIES TO REAL ESTATE LEASES IN WHICH DEBTORS ARE LESSEES

14901 North Scottsdale Road LLC / SM1/Southwestern Management, Inc.
2700 Stemmons
710, Inc.
A. Copeland Enterprises
A. Dong Oriental Grocery and Gift, Inc.
Abnet Realty Co. (Wm. Langfan & Aaron Ziegelman) / B E Holding Corp.
Accomplishments Through People, Inc.
AIP Properties
Alexander Summer, Inc.
Aliferis (UJ's Family Restaurant)
Allstore Realty Group
AMB Property, L.P.
AMCAP/Denver Ltd. Partnership
American Property Investors XI
American United Life Insuranc Co.
APAC Teleservices, Inc.
Appollo Cards, Inc.
Arbor Vitae Company N.V.
ASIC Alliance Corporation
Associates Enterprises of Houston
Atlash Corporation N.V.
Autozone, Inc.
Azteca Restaurants (El Torita-La Fiesta)
B & N Enterprises
Baltivest, N.V.
Baronial Corporation, N.V.
Barrand, Inc.
Baydale, Inc. // AMFAC Merchandising Corp.
Bell Canyon Investments Company N.V.
Berch Corporation N.V.
Besswell Corporation, N.V
Birchwood at Jericho Associates
Bixby Ranch Company
Blakenship Villas of Clovis, Inc.
Boeing Court Partners
Broadway Place I
Bruce & Brent Speckert, Tracey Deatsch, Deborah Frostholm
Buccola Family Trust
Buen Dia Land Company N.V.

Builders Emporium Corp.
Builders Empourium (East), Inc.
Byer Properties
C & S, Inc.
Cabernet Company, N.V.
Caburan Land Company N.V.
Campamar Land Company N.V.
Caringello Investments II
Carlisle Property Co.
Carrow's
Casa Bonita, Inc.
Cassco Land Co., Inc.
Cavil Properties, Inc.
Cedar Square, A Texas General Partnership
CFS
Channel Home Centers
Channel Home Centers Realty Corp.
Channel Lumber Company
Channel of Route 10
Charger Land Company
Chart Towne Partnership
Chattanoooga Food Systems, Inc.
Chi Chi's, Inc.
Child World, Inc.
Citizens and Southern Bank of W. Georgia
City Federal Savings & Loan Association
City/County of San Francisco - Public Utilities Commission
Clayton Dean
Coco's
Community Distributors, Inc.
Craddock Diversified Enterprises
Crested Butte Equities Co.
D & B of Hollywood
DAS Restaurants, Inc.
Dave Christensen, Inc. (successor in-interest - Bellevue Hilton)
Daylin, Inc.
De Nada Restaurants, Inc.
DELCO Development Co. of Gastonia / H. C. Associates
DELCO Development Co. of Tyvola
Delta Acquisitons, Ltd.
Dr/Mrs Robert Schmit
DT Propiedades
Dunn International Corporation

Dunn International of Georgia, Inc.
El Torito
El Toro Properties/Corp & Ludo and  Gloria Bevilacqua
Elaine Power Figures Salons, Inc.
Eminent International Enterprises, Inc.
Evelyn Art Gallery
Fairlane Land Comapy, N.V.
Fast Food Properties
FBL Partners
Fedi, Fedi, Jaworski & Santini
FFCA/IIP
Fidelity Syndications, Inc.
First Harris Associates, Ltd.
First National Bank of Bloomington
Forshaw, Elizabeth
Frank & Marianne Sorci
Frederick J. and Pamela M. Axelberd
Freed Realty Company
Freeport Center Associates
Galahad Real Estate Corp.
Gardner-Smith Associates / Broad River Mall Assoc., L.P. /Hitchner, Witt & Co.
Garec Ltd. Partnership
Gaston Health Care, Inc.
Gene Biggli Properties
General Mills
Goodwill Industries fo Greater New York, Inc.
Green Angel Investments Co., N.V.
Green Pastures, Inc.
Grupe - Squaw Valley Company Ltd.
Handy City Division
Harry & Elise Grimmer
H-B, Inc.
Heathcliff Investment Co., N.V.
Herman's Sporting Goods, Inc.
Hines Interest Limited Partnership
Home Builders Emporium-NY
Homer J. Rader
HQ / Hechinger Property Company
H-T Enterprises V
Hugh M. Tarbutton
Ingram Plaza Company
International Protective Coating Corp. (successor to Pyrotec Industries, Inc.)
Investcal Develop Co.

Investcal Realty
J & J Rentals
J. E. Smith
J.C. Food Corporation
Jack Astor's Leasing
James G., James H. Ayres and Mary Jane Ayres
Jericho Restaurant Associates
Jew, Anthony, MD
John & Susan Youngson
John H. Baker III
John L. Stevenson
Jojo's
Joseph and Inez Foundation
Joyce Alyn
JP Forney Jr, Trustee;  Elinor L. Forney;  James B. Davis and R.C. Bennett, Trustee
Keg Restaurants
Keystone Realty Company
Kravco Company;  Lehigh Valley Associates
Kwo-Tai Richard Sun & Ivy Hsiao-Ming Chen Sun
La Jolla Village Profesional Center Associates
La Mesa Crossroads
Lathampton Corporation
La Salle National Bank - Trust #100609
Laguna Hills Investment Company
Lampeter Joint Venture (Basser and Kaufman)
Larnet N.V.
Leverett Corporation N.V.
Lewis RE Trust, et al.
Life Time Floors, Inc.
Lismore Corporation N.V.
Lister Properties Co.
Listoville, N.V.
Lynda Ward
M.S.B. Properties
M/M John Santopadre
Malibu Land Company N.V.
Mamiye Brothers
Manor Develpoment Co.
Margaret & Mike Conrotto
Mark Hankin and Hanmar Assoc. MLP.
MARS, Inc.
Marshall's of Milford, Connecticut., Inc.
Marshall's of Waterbury, Connecticut., Inc.

Marshall's of Wayne
Marshall's, Inc.
Martinvest, Inc. N.V.
Mattatuck Plaza Associates (successor to Simon Konover)
MCC Group Northglenn, LTD.
MCC Group-Mesquite # Joint Venture
McCutchin Brothers Joint Venture II
Mercury Mall Associates
Merlot Company N.V.
MGSC Corp.
Milford Associates
Missouri Limited Partnership
Mr. Beef Restaurants, Inc.
Myers Corner Development Corporation
New England Mutual Life Ins. Co.
Ninfa's (Rodco, L.C.)
NoHy
Northern Hydraulics, Inc.
Northwest Village Limited
Olive Garden
Ollie's Bargin Outlet, Inc.
Orchard Supply Building Co.
Pacar, Inc.
Pancho's Mexican Buffet
Paragon Steakhouse Restaurants, Inc.
Parkland Realty
Paul Choi & Evelyn Youngrea Choi
Peckman, Peter H. & Nancy M.., c/o Investcal Realty Corp.
Pennsylvania Ltd. Partnership
Pepper Square Venture I
Perrot N.V. and Lowell Corporation
PFRS Dublin Corp.
PH Associates
Phoenix Concepts Corporation
Pier 1 Imports
Pike-Pal Associates
Pinata, Inc.
Plaza Camino Real
Plus Foods Discount, Inc.
Princessa Land Company, N.V.
Principle Life Insurance Co.
PRS Boyle Rd. Corp / Selden Center Associates / Net Realty Holding
Quick Foods, Inc. dba Taco Villa

Quivira 95 Company
Quortrup Petroleum Products, Inc.
Rhodes, Inc.
Richard & Kathryn Rossman
Richard L. Crawford and Geren Crawford Real Estate Investments
Robert V. McKeen & Co.
Robin Roach & Andrew P. Wieland
RREEF USA Fkund-III
Russell J. & Milton F. & Joyce Bruzzone
S. Klein Department Stores, Inc.
S.A.H. Partnership
Safari Realty Co., Inc.
Safeway Stores, Inc.
Safia, Inc.
Savmart of New Jersey, Inc.
Schantz, Schntz & Pernell
Scott William Wood
Serota & Sons
Shapell Industries of No. California, Inc.
Shepler's Inc.
Sheplers of Texas
Silver Shadow Land Company
Snack,Inc.
Soll Trust
Sota Bento Land Company, N.V.
South Plainfield Holding, Inc.
So. Pacific Dev. Co.
Southern Pacific Development
Southview Mexican Ltd. Partnership
Springs Assoc, L.P.
Springs Associates
Stanmel Corp.
Stein Mart, Inc.
Stephen Pontiac - Cadillac, Inc.
Sterling Projects, Inc.
Sylvor, Robert
Tony Roma's a/k/a Romacorp, Inc.
Taaz, L.L.C.
Taco Del Sur, Inc.
Taco Villa, Inc.
Terrin Holding, Co.
T/H Associates
The Fabric Emporium

The Great Atlantic and Pacific Tea Company
The Lincoln National Life Insurance Co.
The Lionel Corporation & Lionel Leisure, Inc.
The Oaks % Key Center
The Pep Boys - Manny, Moe & Jack
The Price Company
The Salvation Army
The Snyder Living Trust
The Voit Companies
Theodore, Judith, Edward & Thelma Bradford
Topps of Totowa
Trammel Crow Co.
Two Forty Associates
Two Guys from Harrison -- New York., Inc.
United Benefit Life Insurance Company
Urban Village Partners
Vess J. Barnes, Joyce A. Barnes, & Terry Smith as Trustees of Barnes Jewelry, Inc. Employees
Profit Sharing Trust
Village Parkway Venture
Vincent & Rose Di Tommaso
Vintage Faire Assocs
Virginia Square Ltd.
Volare Investments Co.
Vornado, Inc.
W. H. C. Realty Corp. (successor to Simon Konover)
Wal-Mart Stores, Inc.
Watson Land Company a/k/a Chomerics, Inc.
Wayne Industries, Inc.
Weingarten Realty Investors
Weingarten Realty, Inc.
Wendy's
West York Associates
Westbar Limited Partnership
Whataburger, Inc.
Whittaker/Valey River Partners
Who Songs & Larry's
Wickes Companies, Inc.
William K. Langfan and Aaron Ziegelman
Winfield Group
Wm. & Grace Garcia
Woodfair Venture, Ltd.
WRG Assoc. Four
WRG Assoc. Seven

WRG Assoc. Six
WRG Associates Five
WRG III, L.P.
Banker's Life of Des Moines, Iowa

**Exhibit B**
**Engagement Letter dated February 15, 2001**
**between W. R. Grace & Co. and The Blackstone Group**

13

Appendix 063

February 15, 2001

Mr. Paul J. Norris
Chairman, President and Chief Executive Officer
W. R. Grace & Co.
7500 Grace Drive
Columbia, Maryland 21044

Dear Mr. Norris:

This letter confirms the understanding and agreement ("Agreement") among The Blackstone Group L.P. ("Blackstone") and W. R. Grace & Co. ("Grace"), together with any subsidiaries, (collectively, the "Company") regarding the retention of Blackstone by the Company effective as of February 1, 2001 (the "Effective Date") as its financial advisor for the purposes set forth herein in connection with a possible restructuring of certain of the financial liabilities of the Company (the "Restructuring"). As used in this Agreement, the term Restructuring shall mean, collectively, any restructuring, reorganization (whether or not pursuant to chapter 11 of the United States Bankruptcy Code) and/or recapitalization of the Company affecting existing and potential debt obligations and other claims including, without limitation, senior debt, junior debt, contract or tort obligations, trade claims, general unsecured claims, etc. (collectively, the "Obligations").

The financial advisory services to be rendered by Blackstone to the Company may include, without limitation, the following:

    (a)    Assist in the evaluation of the Company's businesses and prospects;

    (b)    Assist in the development of the Company's long-term business plan;

    (c)    Analyze the Company's financial liquidity and financing requirements;

    (d)    Advise the Company and negotiate with lenders with respect to potential waivers or amendments of credit facilities;

Mr. Paul J. Norris
February 15, 2001

    (e)    Assist in the estimation of asbestos claims including the preparation of an estimation model for payments and costs and the analyses of payment and funding scenarios;

    (f)    Evaluate the Company's debt capacity and alternative capital structures;

    (g)    Develop valuation, debt capacity and recovery analyses in connection with developing and negotiating a potential Restructuring;

    (h)    Analyze various restructuring scenarios and the potential impact of these scenarios on the value of the Company and the recoveries of those stakeholders impacted by the Restructuring;

    (i)    Develop a negotiating strategy and assist in negotiations with the Company's creditors and other interested parties with respect to a potential Restructuring;

    (j)    Value securities offered by the Company in connection with a Restructuring;

    (k)    Make presentations to the Company's Board of Directors, creditor groups or other interested parties, as appropriate;

    (l)    Provide expert witness testimony, as requested; and,

    (m)    Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a Restructuring, as requested and mutually agreed.

Notwithstanding anything contained in this Agreement to the contrary, Blackstone shall have no responsibility for designing or implementing any initiatives to improve the Company's operating profitability or liquidity. Blackstone makes no representations or warranties about the Company's ability to successfully improve its operations or to maintain sufficient liquidity to operate its business. Blackstone is retained under this Agreement solely to provide financial advice to the Company regarding a Restructuring.

The Company agrees to pay the following fees to Blackstone for its financial advisory services:

    (i)    A monthly advisory fee (the "Monthly Fee") in the amount of $175,000 in cash, with the first such Monthly Fee payable upon the execution of this Agreement by both parties, and additional installments of the Monthly Fee payable in advance on each monthly anniversary of the Effective Date;

    (ii)    If within four months from the Effective Date, (a) Blackstone has assisted the Company in reviewing its strategic alternatives; (b) the Company has obtained any necessary waivers or amendments from the Company's creditors with Blackstone's assistance; (c)

A p p e n d i x  0 6 5

Mr. Paul J. Norris
February 15, 2001

the Company decides to pursue a course of action that does not involve a Restructuring and no Restructuring Fee is payable under this Agreement; and (d) Blackstone has not been retained by the Company for other investment banking services, then the minimum aggregate Monthly Fees payable to Blackstone under this Agreement shall be the Monthly Fees for the months which have elapsed from the Effective Date plus $300,000;

(iii) upon the completion of a Successful Restructuring, an additional fee (the "Restructuring Fee") equal to $5,000,000. Successful Restructuring shall be understood to mean (i) the binding execution of all necessary documentation, including but not limited to waivers, consents, amendments, restructuring or settlement agreements, between the Company and its creditors involving the payment, compromise, or any such other settlement with respect to the Obligations or the conversion of all or part of such Obligations into alternative securities, including equity, in the case of an out-of-court restructuring; or, (ii) the execution and confirmation of a Plan of Reorganization pursuant to an order of the Bankruptcy Court, in the case of an in-court restructuring. The Restructuring Fee will be paid in cash promptly upon the consummation of a Restructuring;

(iv) reimbursement of all necessary and reasonable out-of-pocket expenses incurred during this engagement, including, without limitation, travel and lodging, direct identifiable data processing and communication charges, courier services, meal expenses incurred during meetings, conference calls, and other occasions when Blackstone professionals are engaged in activities related to this Agreement, fees and expenses of Blackstone's outside counsel in connection with the review of this Agreement and in connection with other matters so long as Blackstone has previously advised the Company, and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses; and,

(v) if the Company pursues a chapter 11 filing, the Company will make every reasonable effort including filing the necessary papers with the Bankruptcy Court to effectuate the retention of Blackstone on the same terms and conditions as set forth in this Agreement.

Blackstone agrees that if during any period commencing six months from the Effective Date, its activity in connection with its retention decreases significantly, Blackstone will make such adjustments to its Monthly Fee as are satisfactory to the Company.

The advisory services and compensation arrangement set forth in this Agreement do not encompass other investment banking services or transactions that may be undertaken by Blackstone at the Company's request, including the raising of debt or equity capital, the arranging of the sale, merger or other disposition of the Company or any of its assets, the arranging of joint ventures or other similar combinations, any purchase by the Company of another entity, or any other specific services not set forth in this Agreement. The terms and

1110904.DOC

3

Mr. Paul J. Norris
February 15, 2001

conditions of any such investment banking services, including compensation arrangements, would be set forth in a separate written agreement between the Company and Blackstone.

The Company will furnish or cause to be furnished to Blackstone such information as Blackstone believes appropriate to its assignment (all such information so furnished being the "Information"). The Company recognizes and confirms that Blackstone (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having independently verified the same, (b) does not assume responsibility for the accuracy or completeness of the Information and such other information, (c) is entitled to rely upon the Information without independent verification and (d) will not make an appraisal of any assets in connection with its assignment.

Except as contemplated by the terms hereof or as required by applicable law or legal process, Blackstone shall keep confidential all material non-public information provided to it by or at the request of the Company, and shall not disclose such information, the Company's interest in a Restructuring or the subject mater of this Agreement to any third party or to any of its employees except to those employees, agents, attorneys, accountants and financial advisors who have a need to know such information in connection with Blackstone's performance of its responsibilities hereunder.

In the event that the Information belonging to the Company is stored electronically on Blackstone's computer systems, Blackstone shall not be liable for any damages resulting from unauthorized access, misuse or alteration of such information by persons not acting on its behalf, provided that Blackstone (i) exercises the same degree of care in protecting the confidentiality of, and in preventing unauthorized access to, the Company's information that it exercises with regard to its own most sensitive proprietary information and (ii) has not been grossly negligent or acted with willful misconduct.

The Company acknowledges and agrees that Blackstone has been retained to act solely as financial advisor to the Company. In such capacity, Blackstone shall act as an independent contractor, and any duties of Blackstone arising out of its engagement pursuant to this Agreement shall be owed solely to the Company. Because Blackstone will be acting on the Company's behalf in this capacity, it is customary for Blackstone to receive indemnification. A copy of Blackstone's indemnification agreement is attached to this Agreement as Attachment A.

In the event that Blackstone is requested or authorized by the Company or required by government regulation, subpoena, or other legal process to produce documents, or to make its current or former personnel available as witnesses at deposition or trial, arising as a result of or in connection with Blackstone's engagement for the Company, the Company will, if Blackstone is not a party to the proceeding in which the information is sought, reimburse Blackstone for the reasonable fees and expenses of its counsel incurred in responding to such a request. Nothing in

A p p e n d i x   0 6 7

Mr. Paul J. Norris
February 15, 2001

this paragraph shall affect in any way the Company's obligations pursuant to the separate indemnification agreement attached hereto.

Blackstone's engagement hereunder may be terminated upon 30 days' written notice without cause by either the Company or Blackstone; termination for cause by either party will occur forthwith. Notwithstanding the foregoing, the provisions relating to the payment of fees and expenses accrued through the date of termination, the status of Blackstone as an independent contractor, and the limitation as to whom Blackstone shall owe any duties will survive any such termination, and any such termination shall not affect the Company's obligations under the indemnification agreement attached as Attachment A. Blackstone will be entitled to the Restructuring Fee set forth above in the event that at any time prior to the expiration of twelve (12) months after the termination or expiration of its engagement hereunder a Restructuring is consummated, unless they are terminated for cause.

Blackstone acknowledges and affirms its obligations under (1) the letter agreement dated January 4, 2001 between the Company and Blackstone, and (2) the sixth paragraph on page two of the letter agreement dated March 9, 2000 between the Company and Blackstone, and further agrees that such obligations shall survive during the period of this Agreement and for a period of two years thereafter.

Except as provided in the preceding paragraph, none of the provisions of this Agreement shall in any way limit the activities of the private equity businesses of Blackstone and its affiliates in their businesses distinct from the restructuring advisory business of Blackstone provided that the Information is not shared with representatives of Blackstone and its affiliates who are not involved in the restructuring advisory business of Blackstone and that appropriate "Chinese wall" measures are taken to insure confidentiality.

This Agreement (including the attached indemnification agreement) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect such provision in any other respect, which will remain in full force and effect. No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that state.

The Company hereby agrees that any action or proceeding brought by the Company against Blackstone based hereon or arising out of Blackstone's engagement hereunder, shall be brought and maintained by the Company exclusively in the courts of the State of New York located in the City and County of New York and in the United States District Court for the Southern District of New York. The Company irrevocably submits to the jurisdiction of the courts of the State of New York located in the City and County of New York and the United States District Court for

Appendix 068

Mr. Paul J. Norris
February 15, 2001

the Southern District of New York and appellate courts from any thereof for the purpose of any
action or proceeding based hereon or arising out of Blackstone's engagement hereunder and
irrevocably agrees to be bound by any final judgment rendered thereby in connection with such
action or proceedings.  The Company hereby irrevocably waives, to the fullest extent permitted
by law, any objection it may have or hereafter may have to the laying of venue of any such
action or proceeding brought in any such court referred to above and any claim that such action
or proceeding has been brought in an inconvenient forum and agrees not to plead or claim the
same.

1110904.DOC

6

Mr. Paul J. Norris
February 15, 2001


Please confirm that the foregoing correctly sets forth our agreement by signing and returning to Blackstone the duplicate copy of this Agreement and the indemnification agreement attached hereto as Attachment A.

Very truly yours,

**THE BLACKSTONE GROUP L.P.**


By:_____
    Name:   Pamela D. Zilly
    Title:    Senior Managing Director

Accepted and Agreed
to as of the date first
written above:

**W. R. GRACE & CO.**

By:_____
    Name:
    Title:


*1110904.DOC*

ATTACHMENT A

February 15, 2001

The Blackstone Group L.P.
345 Park Avenue
New York, NY  10154

INDEMNIFICATION AGREEMENT

Gentlemen:

This letter will confirm that we have engaged The Blackstone Group L.P. ("Blackstone") to advise and assist us in connection with the matters referred to in our letter of agreement dated as of February 1, 2001 (the "Engagement Letter"). In consideration of your agreement to act on our behalf in connection with such matters, we agree to indemnify and hold harmless you and your affiliates and your and their respective partners (both general and limited), members, officers, directors, employees and agents and each other person, if any, controlling you or any of your affiliates (you and each such other person being an "Indemnified Party") from and against any losses, claims, damages, expenses and liabilities whatsoever, whether they be joint or several, related to, arising out of or in connection with the engagement (the "Engagement") under the Engagement Letter and will reimburse each Indemnified Party for all expenses (including fees, expenses and disbursements of counsel subject to the provisions of the fourth following paragraph) as they are incurred in connection with investigation, preparing, pursuing, defending or assisting in the defense of any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement or this agreement, whether or not pending or threatened, whether or not any Indemnified Party is a party, whether or not resulting in any liability and whether or not such action, claim, suit, investigation or proceeding is initiated or brought by us. We will not, however, be liable under the foregoing indemnification provision to the extent any losses, claims, damages or liabilities (or expenses relating thereto) are finally judicially determined by a court of competent jurisdiction to have primarily resulted from the bad faith, gross negligence or willful misconduct of Blackstone. We also agree that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to us or our owners, parents, affiliates, security holders or creditors for or in connection with the Engagement except to the extent any such liability for losses, claims, damages or liabilities incurred by us are finally judicially determined by a court of competent jurisdiction to have resulted from the bad faith, gross negligence or willful misconduct of Blackstone.

If the indemnification provided for in the preceding paragraph is for any reason unavailable to an Indemnified Party in respect of any losses, claims, damages or liabilities referred to herein, then, in lieu of indemnifying such Indemnified Party hereunder, we shall contribute to the amount paid or payable by such Indemnified Party as a result of such losses, claims, damages or liabilities (and expenses relating thereto) (i) in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by you, on the one hand, and us, on the other hand, from the Engagement or (ii) if and only if the allocation provided by clause (i) above is for any reason not available, in such proportion as is appropriate to reflect not only the relative benefits referred to in such clause (i) but also the relative fault of each of you and us, as well as any other relevant equitable considerations; provided, however, to the extent permitted by applicable law, in no event shall your aggregate contribution to the amount paid or payable exceed the aggregate amount of fees actually received by you under the Engagement Letter. For the purposes of this agreement, the relative benefits to us and you of the Engagement shall be deemed to be in the same proportion as (a) the total value paid or contemplated to be paid or received or contemplated to be received by us, our security holders and our creditors in the transaction or transactions that are subject to the Engagement, whether or not any such transaction is consummated, bears to (b) the fees paid or to be paid to Blackstone under the Engagement Letter.

Neither party to this agreement will, without the prior written consent of the other party (which consent will not be unreasonably withheld), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification may be sought hereunder (a "Judgment"), whether or not we or any Indemnified Party is an actual or potential party to such claim, action, suit or proceeding. In the event that we seek to settle or compromise or consent to the entry of any Judgment, we agree that such settlement, compromise or consent shall include an unconditional release of Blackstone and each other Indemnified Party hereunder from all liability arising out of such claim, action, suit or proceeding.

Promptly after receipt by an Indemnified Party of notice of any complaint or the commencement of any action or proceeding with respect to which indemnification is being sought hereunder, such person will notify us in writing of such complaint or of the commencement of such action or proceeding, but failure to so notify us will not relieve us from any liability which we may have hereunder or otherwise, except to the extent that such failure materially prejudices our rights. If we so elect or are requested by such Indemnified Party, we will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to Blackstone and the payment of the fees and disbursements of such counsel.

In the event, however, such Indemnified Party reasonably determines in its judgment that having common counsel would present such counsel with a conflict of interest or if we fail to assume the defense of the action or proceeding in a timely manner, then such Indemnified Party may employ separate counsel reasonably satisfactory to us to represent or defend it in any such action or proceeding and we will pay the fees and disbursements of such counsel; provided, however,

A p p e n d i x   0 7 2

that we will not be required to pay the fees and disbursements of more than one separate counsel for all Indemnified Parties in any jurisdiction in any single action or proceeding.  In any action or proceeding the defense of which we assume, the Indemnified Party will have the right to participate in such litigation and to retain its own counsel at such Indemnified Party's own expense.

The foregoing reimbursement, indemnity and contribution obligations of the Company under this agreement shall be in addition to any rights that an Indemnified Party may have at common law or otherwise, and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company and such Indemnified Party.

The provisions of this agreement shall apply to the Engagement, as well as any additional engagement of Blackstone by the Company in connection with the matters which are the subject of the Engagement, and any modification of the Engagement or additional engagement and shall remain in full force and effect regardless of any termination or the completion of your services under the Engagement Letter.

This agreement and the Engagement Letter shall be governed by and construed in accordance with the laws of the state of New York applicable to contracts executed in and to be performed in that state.

Very truly yours,

W. R. GRACE & CO.

By:_____
Name:
Title:

Accepted and Agreed
to as of the date first
written above:

THE BLACKSTONE GROUP L.P.

By: _____
    Pamela D. Zilly
    Senior Managing Director

1110904.DOC

4

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139(___) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

**ORDER PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a)
AND FED. R. BANKR. P. 2014(a), 2016 AND 5002 AUTHORIZING THE
EMPLOYMENT AND RETENTION OF THE BLACKSTONE GROUP L.P.
AS FINANCIAL ADVISOR TO THE DEBTORS AND DEBTORS IN POSSESSION**

Upon consideration of the application (the "Application")[2] of the above-captioned

debtors and debtors in possession (collectively, the "Debtors") for entry of an order authorizing the

Debtors to employ and retain The Blackstone Group L.P. ("Blackstone") as their financial advisor;

and upon consideration of the affidavit of Pamela D. Zilly (the "Affidavit"); and the Court being

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] Capitalized terms not defined herein shall have the same meaning as in the Application.

satisfied, based on the representations made in the Application and Affidavit, that Blackstone

represents no interest adverse to the Debtors' estates with respect to the matters upon which they are

to be engaged, that Blackstone is a "disinterested person" as that term is defined under

section 101(14) of title 11 of the United States Code (as amended, "Bankruptcy Code"), as modified

by section 1107(b) of the Bankruptcy Code; and that the employment of Blackstone is necessary and

would be in the best interests of the Debtors, their creditors and their estates; and sufficient notice

of the Application having been given under the circumstances; and after due deliberation and

sufficient cause appearing therefor, it is hereby

ORDERED that the Application is granted; and it is further

ORDERED that the Debtors are authorized to employ and retain Blackstone as their

financial advisor, on the terms set forth in the Application and the Blackstone Agreement (as that

term is defined in the Application); and it is further

ORDERED that the Debtors shall pay Blackstone in consideration of the Financial

Advisory Services provided by Blackstone:

a.  payment of a Monthly Advisory Fee in the amount of $175,000 in cash, with the first such Monthly Advisory Fee payable upon execution of the Blackstone Agreement by both parties and additional installments of the Monthly Advisory Fee payable in advance on each monthly anniversary of the Effective Date; and

b.  promptly upon the consummation of a Successful Restructuring, payment in cash of a Restructuring Fee of $5,000,000; and it is further

2

ORDERED that Blackstone will provide such financial advisory services as Blackstone and the Debtors shall deem appropriate and feasible in order to advise the Debtors in the course of the Chapter 11 Cases, including, but not limited to, the following:

a.   assisting in the evaluation of the Debtors' businesses and prospects;

b.   assisting in the development of the Debtors' long-term business plan;

c.   analyzing the Debtors' financial liquidity and financing requirements;

d.   assisting in the estimation of asbestos claims including the preparation of an estimation model for payments and costs and the analyses of payment and funding scenarios;

e.   evaluating the Debtors' debt capacity and alternative capital structures;

f.   developing valuation, debt capacity and recovery analyses in connection with developing and negotiating a potential Restructuring (as defined in the Blackstone Agreement);

g.   analyzing various restructuring scenarios and the potential impact of these scenarios on the value of the Debtors and the recoveries of those stakeholders impacted by the restructuring;

h.   developing a negotiation strategy and assisting in negotiations with the Debtors' creditors and other interested parties with respect to plan of reorganization issues;

i.   valuing securities offered by the Debtors in connection with a Restructuring;

j.   making presentations to the Debtors' board of directors, creditor groups and other parties in interest, as appropriate;

k.   providing expert testimony, as requested; and

3

l.      providing such other advisory services as are customarily provided in connection with the analysis and negotiation of a Restructuring, as requested and mutually agreed upon by the Debtors and Blackstone; and it is further

ORDERED that Blackstone shall be compensated and reimbursed for expenses in accordance with the terms of the Blackstone Agreement as set forth in the Application, subject to the procedures set forth in the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules and any orders of this Court; provided, however, that Blackstone shall keep detailed time records in half-hour increments; and it is further

ORDERED the indemnification provisions of the Blackstone Agreement are approved, subject to the following:

a.      subject to the provisions of subparagraph (d), infra, the Debtors are authorized to indemnify, and shall indemnify Blackstone, in accordance with the Blackstone Agreement, for any claim arising from, related to or in connection with Blackstone's prepetition performance of the services described in the Blackstone Agreement;

b.      subject to the provisions of subparagraph (d), infra, the Debtors are authorized to indemnify, and shall indemnify, Blackstone in accordance with the Blackstone Agreement, for any claim arising from, related to or in connection with the Financial Advising Services but not for any claim arising from related to or in connection with Blackstone's postpetition performance of any services other than the Financial Advisory Services unless such postpetition services and indemnification therefore are approved by the Court;

c.      notwithstanding any provision of the Blackstone Agreement to the contrary, the Debtors shall have no obligation to indemnify Blackstone, or to provide contribution or reimbursement to Blackstone, for any claim or expense to the extent any losses, claims, damages or liabilities (or expenses relating thereto) are judicially determined by a court of

4

competent jurisdiction (the determination having become final) to have primarily resulted from the bad faith, gross negligence or willful misconduct of Blackstone; and

d.  if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing the Chapter 11 Cases, Blackstone believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Blackstone Agreement, including without limitation, the advancement of defense costs, Blackstone must file an application therefor in this Court, and the Debtors may not pay any such amounts to Blackstone before the entry of an order by this Court approving payment.  This subparagraph (d) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Blackstone for indemnification, contribution or reimbursement and not to limit the duration of the Debtors' obligation to indemnify Blackstone; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: May 3, 2001

_____

JUDGE

A p p e n d i x   0 7 9