# TAB 3

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Combustion Engineering, Inc., | ) | Case No. 03-_ID495_ (JKF ) |
| | ) | |
| Debtor. | ) | |

**APPLICATION PURSUANT TO SECTIONS 327, 328 AND 1107
OF THE BANKRUPTCY CODE FOR ORDER AUTHORIZING
DEBTOR AND DEBTOR IN POSSESSION TO RETAIN
THE BLACKSTONE GROUP L.P. AS ITS FINANCIAL ADVISOR**

Combustion Engineering, Inc. (the "Debtor") submits this application (the

"Application"), for an order under 11 U.S.C. §§ 327, 328 and 1107, authorizing it to retain and

employ The Blackstone Group L.P. ("Blackstone") as its financial advisor.  In support of this

Application, the Debtor respectfully states as follows:[1]

**Background**

1.     On February 17, 2003 (the "Petition Date"), the Debtor filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.  Pursuant to Sections 1107 and 1108

of the Bankruptcy Code, the Debtor is continuing to operate its business and manage its

properties as a debtor in possession.

2.     The Debtor is a Delaware corporation with its principal place of business

in Norwalk, Connecticut.

3.     The Debtor currently holds title to two parcels of real estate and leases its

real property located in Windsor, Connecticut.  The Debtor has no other on-going business

---

[1] The facts and circumstances supporting this Application are set forth in the Affidavit of John Brett, filed
contemporaneously herewith (the "Brett Affidavit").  Terms used but not otherwise defined herein shall have the
meaning ascribed in the Brett Affidavit.

operations, except its environmental remediation responsibilities from its previous business activities. The Debtor is currently a defendant in numerous asbestos litigations that allege liability for asbestos-related injuries arising out of the Debtor's previous business activities.

## Jurisdiction and Venue

4.      The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334(b). This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2). Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory bases for the relief requested herein are Sections 327, 328 and 1107 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code").

## Relief Requested

6.      By this Application, the Debtor seeks to employ and retain Blackstone pursuant to sections 327 and 328 of the Bankruptcy Code as their financial advisor in this chapter 11 case, as more fully described below.

7.      Blackstone has extensive experience in providing financial advisory services in reorganization proceedings involving substantial asbestos claims and has an excellent reputation for the services it has rendered in chapter 11 cases throughout the United States.

8.      The compensation arrangement provided for in the Blackstone Agreement (defined below) is consistent with and typical of arrangements entered into by Blackstone and

Appendix 087

other financial advisory firms with respect to rendering similar services for clients such as the Debtor.

9.    The Debtor believes that Blackstone is well qualified and able to represent the Debtor in a cost-effective, efficient and timely manner.  Blackstone has indicated a willingness to act on behalf of the Debtor and to subject itself to the jurisdiction and supervision of the Court.

### Financial Advisor's Disinterestedness

10.    To the best of the Debtor's knowledge, and as disclosed herein in the affidavits of Pamela D. Zilly, a Senior Managing Director of Blackstone, and Robert Gentile, the compliance officer at Blackstone, attached hereto as Exhibits A and B, (a) Blackstone is a "disinterested person" within the meaning of Section 101(14) and as required by Section 327(a) and referenced by Section 328(c) of the Bankruptcy Code, and holds no interest adverse to the Debtor for the matters for which Blackstone is to be employed and (b) Blackstone has no connection to the Debtor, its creditors or its related parties herein except as disclosed in the Affidavit.

11.    Prior to the Petition Date, Blackstone performed certain professional services for the Debtor beginning November 12, 2002 and has submitted invoices for $2,750,000 in fees and $4,275.37 in expenses through February 14, 2003.  Prior to the Petition Date, Blackstone was paid $2,754,275.37 in fees and expenses.  The Debtor does not owe Blackstone any amount for services performed or expenses incurred prior to the Petition date.  The pre-petition engagement letter called for Blackstone to receive additional compensation at the

Appendix 088

conclusion of this case. This post-petition application supersedes the Debtor's pre-petition

obligation, and no monies remain due or owing under that letter.

12.    If any new facts or relationships are discovered, Blackstone will

supplement its disclosure.

## Scope of Services

13.    The parties have entered into an agreement that would govern the post-

petition relationship between Blackstone and the Debtor, a copy of which is attached as

Exhibit C (the "Blackstone Agreement"). Blackstone will provide such financial advisory

services (the "Financial Advisory Services") as Blackstone and the Debtor shall deem

appropriate and feasible in order to advise the Debtor in the course of this chapter 11 case,

including, but not limited to, the following:

   a.   assist in the evaluation of the Debtor's business;

   b.   analyze the Debtor's financial liquidity requirements;

   c.   assist in the analysis of the Debtor's historic transactions;

   d.   analyze various restructuring alternatives;

   e.   assist in negotiations with the Debtor's creditors and other interested parties with respect to a potential restructuring;

   f.   value any securities offered by the Debtor in connection with a restructuring;

   g.   make presentations to the Debtor's Board of Directors, creditor groups or other interested parties;

   h.   assist in the due diligence efforts by the Debtor's creditors, other interested parties and their legal and financial advisors;

   i.   assist in the preparation of documents related to the restructuring;

Appendix 089

j.   provide expert testimony, as requested; and

k.   provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a restructuring, as requested and mutually agreed.

14.    The Financial Advisory Services set forth in the Blackstone Agreement and summarized above do not encompass other investment banking services or transactions that may be undertaken by Blackstone at the request of the Debtor, including the raising of debt or equity capital, the arranging of the sale, merger or other disposition of all or part of the Debtor or any of its assets, the arranging of joint ventures or other similar combinations, any purchase by the Debtor of another entity or any other specific services not set forth in the Blackstone Agreement. The terms and conditions of any such investment banking services, including compensation arrangements, would be set forth in a separate written agreement between the Debtor and Blackstone and would be subject to any necessary Court approval.

15.    The Financial Advisory Services that Blackstone will provide to the Debtor are necessary to enable the Debtor to maximize the value of its estates and to reorganize successfully. The Debtor believes that the Financial Advisory Services will not duplicate the services that, subject to this Court entering or having entered appropriate orders, other financial advisors, if any, may provide to the Debtor in this chapter 11 case. Blackstone will carry out unique functions and will use reasonable efforts to coordinate with the Debtor's other retained Professionals to avoid the unnecessary duplication of services.

A p p e n d i x   0 9 0

## Terms of Retention

16.    Blackstone has agreed to represent the Debtor for compensation at the amounts agreed upon between the parties pursuant to the Blackstone Agreement.  As more fully described in the Blackstone Agreement, in consideration of the Financial Advisory Services provided by Blackstone, the Debtor has agreed to pay Blackstone:

    a.    a monthly advisory fee ("Monthly Advisory Fee") in the amount  of $200,000 a month in cash for the first three months of the engagement ( the "Initial Period") or until the filing of a chapter 11 proceeding (the "Filing Date") if the Filing Date is later than the expiration of the Initial Period and $150,000 a month in cash thereafter for the duration of the engagement with the first such Monthly Advisory Fee payable upon execution of the Blackstone Agreement by both parties and additional installments of the Monthly Advisory Fee payable in advance on each monthly anniversary of the Effective Date (as defined in the Blackstone Agreement); and

    b.    in connection with a Successful Restructuring (as defined below), an additional fee (the "Restructuring Fee") equal to $2,000,000. The Restructuring Fee shall be due and payable one day prior to the effective date of the Plan of Reorganization (together with the Monthly Advisory Fee, the "Fee Structure").

17.    As defined in the Blackstone Agreement, a "Successful Restructuring" shall mean the execution and confirmation of a plan of reorganization pursuant to an order of the Bankruptcy Court.

18.    Blackstone will maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services, including receipts for any individual expenditure in excess of $75.

19.    Blackstone will seek compensation and reimbursement of expenses, as specified in the Blackstone Agreement, with the payment of such fees and expenses to be approved in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure,

the Local Bankruptcy Rules and any orders of this Court; provided, however, that Blackstone

will maintain detailed time records in half-hour increments; and provided further, that the

approval of Blackstone's fees and expenses in this chapter 11 case will be subject to the

standards contained in section 328(a) of the Bankruptcy Code.

20.    The Debtor seeks approval of the Fee Structure pursuant to Section 328(a)

of the Bankruptcy Code, which provides, in relevant part, that a debtor "with the court's

approval, may employ or authorize the employment of a professional person under Section 327

on any reasonable terms and conditions of employment, including a retainer, on an hourly basis,

or on a contingent fee basis." 11 U.S.C. § 328(a). Accordingly, Section 328(a) of the

Bankruptcy Code, therefore, permits the Court to approve the Fee Structure outlined herein. The

Fee Structure appropriately reflects the nature and scope of the services to be provided by

Blackstone, Blackstone's substantial experience with respect to financial advisory services, and

the fee structures typically utilized by Blackstone and other leading financial advisors, which do

not bill their clients on an hourly basis. Similar fixed and contingency fee arrangements have

been approved and implemented in other large chapter 11 cases in this District and elsewhere.

See, e.g., In re Trans World Airline, Inc. et al., Case No. 01-0056 (PJW) (Bankr. D. Del. Jan. 10,

2001) (order dated Jan. 26, 2001 approving the retention of Rothschild, Inc. as investment

bankers for the Debtor, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code); In re

United Artists Theatre Company et al., Case No. 03514 (SLR) (Bankr. D. Del. Sept. 7, 2000)

(order dated Nov. 14, 2000 approving the retention of Houlihan Lokey Howard & Zukin Capital

as investment bankers for the Debtor, pursuant to sections 327(a) and 328(a) of the Bankruptcy

Appendix 092

Code); In re Harnischfeger Industries et al., Case No. 99-02171 (PJW) (Bankr. D. Del. June 7,

1999) (order dated Feb. 8, 2000 approving the retention of Blackstone as financial advisors to the

Debtor, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code).

     21.    Notwithstanding the approval of the Fee Structure requested herein, all of

Blackstone's fees and expenses in this case will be subject to approval of the Court upon proper

application by Blackstone in accordance with sections 330 and 331 of the Bankruptcy Code, Fed.

R. Bankr. P. 2016, the fee and expense guidelines established by the United States Trustee and

any other applicable requirements or orders of the Court.  However, pursuant to section 328(a) of

the Bankruptcy Code, the Court may not subsequently allow Blackstone's compensation on

terms different from the approved Fee Structure unless such compensation "prove[s] to have

been improvident in light of developments not capable of being anticipated at the time" the Fee

Structure was originally approved. 11 U.S.C. § 328(a).

### Indemnification Provisions

     22.    Blackstone requests that the indemnification provisions of the Blackstone

Agreement, a copy of which are attached as Attachment A to Exhibit C, be approved, subject to

the following:

        a.  subject to the provisions of subparagraph (d), infra, the Debtor is
            authorized to indemnify, and shall indemnify Blackstone, in
            accordance with the Blackstone Agreement, for any claim arising
            from, related to or in connection with Blackstone's prepetition
            performance of the services described in the Blackstone Agreement;

        b.  subject to the provisions of subparagraph (d), infra, the Debtor is
            authorized to indemnify, and shall indemnify, Blackstone in
            accordance with the Blackstone Agreement, for any claim arising
            from, related  to or in connection with the Financial Advisory Services
            but not for any claim arising from related to or in connection with
            Blackstone's postpetition performance of any services other than the

Appendix 093

Financial Advisory Services unless such postpetition services and indemnification therefore are approved by the Court;

c.   notwithstanding any provision of the Blackstone Agreement to the contrary, the Debtor shall have no obligation to indemnify Blackstone, or to provide contribution or reimbursement to Blackstone, for any claim or expense to the extent any losses, claims, damages or liabilities (or expenses relating thereto) are judicially determined by a court of competent jurisdiction (the determination having become final) to have primarily resulted from the bad faith, gross negligence or willful misconduct of Blackstone; and

d.   if, before the earlier of (i) the effective date of chapter 11 plan, and (ii) the entry of an order closing the Chapter 11 Case, Blackstone believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution and/or reimbursement obligations under the Blackstone Agreement, including without limitation, the advancement of defense costs, Blackstone must file an application therefor in this Court, and the Debtor may not pay any such amounts to Blackstone before the entry of an order by this Court approving payment.  This subparagraph (d) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Blackstone for indemnification, contribution or reimbursement and not to limit the duration of the Debtor's obligation to indemnify Blackstone.

23.   The preceding indemnification procedures are in substantially the same form as the indemnification procedures that were negotiated with the United States Trustee and approved by the Court in In re United Artists Theatre Company, et al., Case No. 00-03514 (SLR) (Bankr. D.Del. Sept. 7, 2000);  In re Ameriserve Food Distribution, Inc., Case No. 00-0358 (PJW) (Bankr. D. Del. May 9, 2000); In re Planet Hollywood International, Inc., Case No. 99-3612 (JJF) (Bankr. D. Del. Dec. 17, 1999).

<u>Notice</u>

24.   Notice of this Application and the relief requested herein has been provided to (i) the Office of the United States Trustee, (ii) the creditors holding the twenty (20)

largest unsecured claims against the Debtor and (iii) attorneys for any statutory committees and the legal representatives for future claimants appointed in this case.

25.    No prior Motion for the relief requested herein has been made to this or any other Court.

[Remainder of Page Intentionally Left Blank]

Appendix 095

WHEREFORE, the Debtor respectfully requests that the Court enter an Order, substantially in the form attached hereto, authorizing the employment and retention of Blackstone as financial advisor pursuant to the terms of the Blackstone Agreement; and grant such further relief as is just and proper.

Dated February 12, 2003

Respectfully submitted,

COMBUSTION ENGINEERING, INC.

By: _____
John Brett
Secretary

9

# **<u>EXHIBIT A</u>**

Appendix 097

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Combustion Engineering, Inc., | ) | Case No. 03-_10455_ (JKF ) |
| | ) | |
| Debtor. | ) | |

**AFFIDAVIT OF PAMELA D. ZILLY IN SUPPORT OF THE DEBTOR'S
APPLICATION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 327(a)
AND 328 AND FED. R. BANKR. P. 2014(a), 2016 AND 5002 AUTHORIZING THE
EMPLOYMENT AND RETENTION OF THE BLACKSTONE GROUP L.P. AS
FINANCIAL ADVISOR TO THE DEBTOR AND DEBTOR IN POSSESSION**

| | | |
|---|---|---|
| STATE OF NEW YORK | ) | |
| | ) | ss. |
| COUNTY OF NEW YORK | ) | |

PAMELA D. ZILLY, being duly sworn, deposes and says:

1.  I am a Senior Managing Director of The Blackstone Group L.P.

("Blackstone"), a private investment banking firm that maintains offices at 345 Park Avenue,

New York, New York 10154, and I make this affidavit on behalf of Blackstone (the "Affidavit").

I submit this Affidavit in support of the application (the "Application") of the debtor and debtor

in possession in the above-captioned chapter 11 case (the "Chapter 11 Case") for an order

authorizing the employment and retention of Blackstone as financial advisor to the Debtor.

Except as otherwise noted, I have personal knowledge of the matters set forth herein.

## Blackstone's Qualifications

2.      Blackstone is recognized for its expertise in providing financial advisory services in financially distressed situations, including advising debtors, creditors and other constituents in chapter 11 proceedings and serving as investment bankers in numerous cases.

3.      I have previously worked on many chapter 11 restructurings, advising both debtors and creditors in various cases and have vast experience working for companies in distressed situations.  Selected current and previous advisory assignments in which I have participated include: the Babcock & Wilcox Company, W.R. Grace & Co., Dow Corning Corporation, APS Holding Corporation, The Caldor Corporation, Lone Star Industries, America West Holdings, Phar-Mor Company, and The Kendall Company.

4.      Since November 12, 2002, Blackstone has rendered Financial Advisory Services (as defined in the Application) to the Debtor in connection with its restructuring efforts. Blackstone has become thoroughly familiar with the Debtor's operations and is well qualified to represent the Debtor as financial advisors in connection with such matters in a cost-effective and efficient manner.

## Disinterestedness of Professionals

5.      Blackstone's compliance officer, Robert Gentile, has submitted an affidavit describing the results of his conflict search.  Based on the results of that search, to the best of my knowledge, neither I, Blackstone, nor any member or employee thereof, insofar as I have been able to ascertain, has any connection with the Debtor, its creditors, other parties-in-interest (as reasonably known to us), its respective attorneys, or the United States Trustee or any

2

person employed in the Office of the United States Trustee, except as disclosed or otherwise described herein.

6.     To the best of my knowledge, Blackstone is a "disinterested person" as that term is defined in Section 101(14) of title 11 of the United States Code (as amended, the "Bankruptcy Code"), as modified by Section 1107(b) of the Bankruptcy Code, in that, its members and employees

     a. are not creditors, equity security holders or insiders of the Debtor;

     b. are not and were not investment bankers for any outstanding security of the Debtor;

     c. have not been, within three years before the date of the filing of the Debtor's chapter 11 petition, (i) investment bankers for a security of the Debtor, or (ii) an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the Debtor; and

     d. were not, within two years before the date of filing of the Debtor's chapter 11 petition, a director, officer, or employee of the Debtor or of any investment banker as specified in subparagraph (b) or (c) of this paragraph.

7.     Prior to the Petition Date, Blackstone performed certain professional services for the Debtors beginning November 12, 2002 and has submitted invoices for $2,750,000 in fees and $4,275.37 in expenses through February 14, 2003. Prior to the Petition Date, Blackstone was paid $2,754,275.37 for its fees and expenses. The Debtor does not owe Blackstone any amount for services performed or expenses incurred prior to the Petition Date. The pre-petition engagement letter called for Blackstone to receive additional compensation at the conclusion of this case. The post-petition terms described herein supersede the Debtor's pre-petition obligations and no monies remain due or owing under the pre-petition letter.

3

8.      As part of its diverse practice, Blackstone appears in numerous cases, proceedings and transactions involving many different professionals, including attorneys, accountants, investment bankers and financial consultants, some of which may represent claimants and parties-in-interest in the Chapter 11 Case.  Further, Blackstone has in the past, and may in the future, be represented by several attorneys and law firms in the legal community, some of whom may be involved in these proceedings.  In addition, Blackstone has in the past and will likely in the future be working with or against other professionals involved in this case in matters unrelated to this case.  Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these business relations constitute interests materially adverse to the Debtor herein in matters upon which Blackstone is to be employed, and none are in connection with this case.  In preparation of this Affidavit and related retention matters, Blackstone has consulted with a member of the law firm of Simpson Thacher & Bartlett ("STB").  STB is also representing certain insurance companies in relation to this case.

9.      Blackstone may have in the past represented, may currently represent, and likely in the future will represent, parties-in-interest of the Debtors in connection with matters unrelated to the Debtor and the chapter 11 case (except as described below).  Blackstone's internal compliance department maintains, for purposes of monitoring and avoiding conflicts of interest, a list (the "Restricted List") of companies with which Blackstone or one of its investment vehicles is doing business, either as an advisor or an investor or with respect to which Blackstone is in possession of material, nonpublic information or has entered into a confidentiality agreement. Blackstone reviewed the list of entities attached hereto to as <u>Exhibit 1</u>

4

(the "Conflict Check") against the Restricted List.  In connection therewith, the following

specific disclosures are made:

a.  Without disclosing the specific identities to me, our internal
    compliance department has indicated to me that six (6) names on the
    Conflict Check appear on Blackstone's Restricted List.  I am relying
    on our internal compliance department for such information.
    Blackstone is subject to confidentiality agreements with respect to
    some of such companies, some of which may be publicly traded or
    owned by companies that may be publicly traded.  In accordance with
    its confidentiality obligation, Blackstone is not in a position to disclose
    such companies' names.  The Court is respectfully directed to the
    Affidavit of Robert Gentile for further disclosure concerning those six
    names.

b.  Blackstone has not represented, does not represent and will not
    represent any entity's interest in the Chapter 11 Case nor have any
    relationship with any such entity which would be adverse to the
    Debtor as to the matter as on which Blackstone is to be employed.
    Blackstone does not believe that any relationship it may have with any
    of the entities listed on Exhibit 1 will interfere with or impair
    Blackstone's representation of the Debtor in the Chapter 11 Case.

c.  Affiliates of Blackstone serve as general partners for and manage a
    number of investment vehicles (collectively, the "Blackstone Funds").
    The investors in the Blackstone Funds are principally unrelated third
    parties but also may include affiliates of Blackstone and various of its
    officers and employees (collectively, the "Employees"), including
    Employees working on the Chapter 11 Case. Parties identified on the
    Conflict Check- predominantly financial institutions - may invest in
    Blackstone Funds, may invest alongside Blackstone Funds in
    particular companies, may extend credit to or provide investment
    banking services to Blackstone, Blackstone Funds or Blackstone
    portfolio companies.  In addition, certain of the Employees, including
    Employees working on the Chapter 11 Case, are limited partners in the
    Blackstone Funds. In their capacity as limited partners, these
    Employees have personal investments in the Blackstone Funds, but
    have no control over investment decisions or over business decisions
    made at the Blackstone Funds. Among other things, the Blackstone
    Funds are (a) active direct investors in a number of portfolio
    companies, real estate, debt instruments, and mezzanine loans
    ("Managed Funds") and (b) passive investors in other funds
    (collectively, the "Investment Funds") managed by a number of non-
    traditional money managers, all of which are similar to investments in
    mutual funds. As would be the case with respect to a mutual fund

5

investment, neither Blackstone, its affiliates, the Blackstone Funds nor the Employees have any control over the investments made by the Investment Funds in which the Blackstone Funds are invested, including investment purchases, investment divestitures and the timing of such activities. Blackstone maintains a strict separation between its Employees assigned to the Chapter 11 Case and the Employees assigned to the Blackstone Funds. To avoid any appearance of impropriety where the Blackstone Funds may receive information about such Investment Funds' investing in companies in which Blackstone is acting as an advisor, Blackstone maintains internal procedures designed to preclude the dissemination of such information to the Employees who are providing such advisory services. No Employee working on the Chapter 11 Case receives information concerning the individual investments of Investment Funds in which the Blackstone Funds are invested. Likewise, in accordance with U.S. securities law, no confidential information concerning the Debtors is permitted to be communicated to the Employees working for the Blackstone Funds. It is possible that companies owned, in whole or in part, by the Blackstone Funds or which may have had discussions regarding a possible investment or transaction in connection with the Blackstone Funds may have a relationship with the Debtor or otherwise appear on the list of entities in Exhibit 1. These relationships are unrelated to the Financial Advisory Services Blackstone intends to provide in the Chapter 11 Case. Blackstone maintains that these relationships are subject to the internal confidentiality procedures outlined immediately above and thus have no meaningful bearing on Blackstone's ability to advise the Debtor.

d.  Some of the Investment Funds may invest in distressed debt and may hold or acquire debt of the Debtor or its affiliates.  To avoid an appearance of impropriety, where the Blackstone Funds may receive information that the Investment Funds are investing in companies in which Blackstone is acting as an advisor, Blackstone maintains internal procedures designed to preclude the dissemination of such information to the Employees who are providing such advisory services.  No employee working on the Debtor's Chapter 11 Case receives information concerning the individual investments of the Investment Funds in which the Blackstone Funds are invested.

e.  Many large financial institutions who may be involved in this Case are investors in the Managed Funds, investors in, or creditors of, companies in which the Managed Funds have investments or provide investment banking services to Blackstone and the Managed Funds on investments.

f.  Through its numerous investment banking activities, Blackstone either directly or through the Blackstone Funds or companies in which they

6

have an interest, has, or will likely have, substantial business relationships with most large financial institutions. These institutions are, have been, or may in the future be, investors in Blackstone, the Blackstone Funds, or investments made by the Blackstone Funds or provide, have provided, or may in the future provide, investment banking, financial advisory or brokerage services to Blackstone, Blackstone Funds, portfolio companies of the Blackstone Funds, or Employees. Blackstone does not believe that any relationship it may have with any of the entities described in this subparagraph will interfere with or impair Blackstone's representation of the Debtor in the Chapter 11 Case.

10.    The entities disclosed herein have been located by Blackstone using its reasonable efforts. Blackstone will periodically review its files during the pendency of the Chapter 11 Case to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Blackstone will use reasonable efforts to identify such further developments and will promptly file a Supplemental Affidavit as Rule 2014(a) of the Federal Rules of Bankruptcy Procedure requires.

### Professional Services Compensation

11.    The parties have entered into an agreement that would govern the relationship between Blackstone and the Debtor, a copy of which is attached as <u>Exhibit C</u> to the Application (the "Blackstone Agreement"). Blackstone will provide such Financial Advisory Services as Blackstone and the Debtor shall deem appropriate and feasible in order to advise the Debtor in the course of the Chapter 11 Case, including, but not limited to, the following:

        a.  assist in the evaluation of the Debtor's businesses;

        b.  analyze the Debtor's financial liquidity requirements;

        c.  assist in the analysis of the Debtor's historic transactions;

        d.  analyze various restructuring alternatives;

e.   assist in negotiations with the Debtor's creditors and other interested parties with respect to a potential Restructuring;

f.   value any securities offered by the Debtor in connection with a Restructuring;

g.   make presentations to the Debtor's Board of Directors, creditor groups or other interested parties;

h.   assist in the due diligence efforts by the Debtor's creditors, other interested parties and their legal and financial advisors;

i.   assist in the preparation of documents related to the Restructuring;

j.   provide expert testimony, as requested; and

k.   provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a Restructuring, as requested and mutually agreed.

12.   The Financial Advisory Services set forth in the Blackstone Agreement and summarized above do not encompass other investment banking services or transactions that may be undertaken by Blackstone at the request of the Debtor, including the raising of debt or equity capital, the arranging of the sale, merger or other disposition of all or part of the Debtor or any of their assets, the arranging of joint ventures or other similar combinations, any purchase by the Debtor of another entity or any other specific services not set forth in the Blackstone Agreement.  The terms and conditions of any such investment banking services, including compensation arrangements, would be set forth in a separate written agreement between the Debtor and Blackstone and would be subject to any necessary Court approval.

13.   The Financial Advisory Services that Blackstone will provide to the Debtor are necessary to enable the Debtor to maximize the value of its estate and to reorganize successfully.  The Debtor believes that the Financial Advisory Services will not duplicate the services that, subject to this Court entering or having entered appropriate orders, other financial

8

A p p e n d i x   1 0 5

advisors, if any, would provide to the Debtor in this case.  Blackstone will carry out unique

functions and will use reasonable efforts to coordinate with the Debtor's other retained

professionals to avoid the unnecessary duplication of services.

14.     Blackstone has agreed to represent the Debtor for compensation at the

amounts agreed upon between the parties pursuant to the Blackstone Agreement.  As more fully

described in the Blackstone Agreement, in consideration of the Financial Advisory Services

provided by Blackstone, the Debtor has agreed to pay Blackstone:

> a.  monthly advisory fee ("Monthly Advisory Fee") in the amount of
> $200,000 a month in cash for the first three months of the engagement
> (the "Initial Period") or until the filing of a chapter 11 proceeding (the
> "Filing Date") if the Filing Date is later than the expiration of the
> Initial Period and $150,000 a month in cash thereafter for the duration
> of the engagement with the first such Monthly Advisory Fee payable
> upon execution of the Blackstone Agreement by both parties and
> additional installments of the Monthly Advisory Fee payable in
> advance on each monthly anniversary of the Effective Date (as defined
> in the Blackstone Agreement);
>
> b.  in connection with a Successful Restructuring (as defined below), an
> additional fee (the "Restructuring Fee") equal to $2,000,000. The
> Restructuring Fee shall be due and payable at such time as a
> Restructuring is completed through a pre-arranged/prepackaged
> chapter 11 proceeding or otherwise within a chapter 11 proceeding,
> and one day prior to the effective date of the Plan of Reorganization
> (together with the Monthly Advisory Fee, the "Fee Structure").

15.     As defined in the Blackstone Agreement, a "Successful Restructuring"

shall mean execution and confirmation of a plan of reorganization pursuant to an order of the

Bankruptcy Court.

15252-001\DOCS_DE:64518.2

16.     Blackstone will maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services, including receipts for any individual expenditure in excess of $75.

17.     Blackstone will seek compensation and reimbursement of expenses, as specified in the Blackstone Agreement, with the payment of such fees and expenses to be approved in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules and any orders of this Court; provided, however, that Blackstone will maintain detailed time records in half-hour increments; and provided further, that the approval of Blackstone's fees and expenses in this Chapter 11 Case will be subject to the standards contained in Section 328(a) of the Bankruptcy Code.

18.     The Debtor also seeks approval of the Fee Structure pursuant to Section 328(a) of the Bankruptcy Code, which provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under Section 327 . . . on any reasonable terms and conditions of employment, including a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. § 328(a).  Accordingly, Section 328(a) of the Bankruptcy Code, therefore, permits the Court to approve the Fee Structure outlined herein.  The Fee Structure appropriately reflects the nature and scope of the services to be provided by Blackstone, Blackstone's substantial experience with respect to financial advisory services, and the fee structures typically utilized by Blackstone and other leading financial advisors, which do not bill their clients on an hourly basis.  Similar fixed and contingency fee arrangements have been approved and implemented in other large chapter 11 cases in this District and elsewhere.

10

See, e.g., In re Trans World Airline, Inc. et al., Case No. 01-0056 (PJW) (Bankr. D. Del. Jan. 10,

2001) (order dated Jan. 26, 2001 approving the retention of Rothschild, Inc. as investment

bankers for the Debtor, pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code); In re

United Artists Theatre Company et al., Case No. 03514 (SLR) (Bankr. D. Del. Sept. 7, 2000)

(order dated Nov. 14, 2000 approving the retention of Houlihan Lokey Howard & Zukin Capital

as investment bankers for the debtors, pursuant to sections 327(a) and 328(a) of the Bankruptcy

Code); In re Harnischfeger Industries et al., Case No. 99-02171 (PJW) (Bankr. D. Del. June 7,

1999) (order dated Feb. 8, 2000 approving the retention of Blackstone as investment bankers to

the debtors, pursuant to Sections 327(2) and 328(a) of the Bankruptcy Code).

　　　　19.　　Notwithstanding the approval of the Fee Structure requested herein, all of

Blackstone's fees and expenses in this case will be subject to approval of the Court upon proper

application by Blackstone in accordance with Sections 330 and 331 of the Bankruptcy Code,

Fed. R. Bank. P. 2016, the fee and expense guidelines established by the United States Trustee

and any other applicable requirements o orders of the Court.  However, pursuant to Section

328(a) of the Bankruptcy Code, the Court may not subsequently allow Blackstone's

compensation on terms different from the approved Fee Structure unless such compensation

"prove[s] to have been improvident in light of developments not capable of being anticipated at

the time" the fee Structure was originally approved.  11 U.S.C. Section 328(a)

　　　　20.　　Based on its experience and independent analysis, Blackstone believes that

the Fee Structure is fair and reasonable. Blackstone believes that the Fee Structure appropriately

reflects the nature and scope of the services to be provided by Blackstone, Blackstone's

Appendix 108

substantial experience with respect to financial advisory services, and the fee structures typically

utilized by Blackstone and other leading financial advisors which do not bill their clients on an

hourly basis.

[Remainder of Page Intentionally Left Blank]

12

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is

true and correct.

Executed on February ___, 2003.

_Pamela D Zilly_
Pamela D. Zilly

Subscribed and Sworn to before me
this __11__ day of __February__, 2003

_Jana E Carlson_
Notary Public

My Commission expires: _2/18/04_

JANA E. CARLSON
Notary Public, State of New York
No. 01CA5073261
Qualified in New York County
Commission Expires February 18, _2004_

**Appendix 110**

## EXHIBIT 1 TO ZILLY AFFIDAVIT

A W CHESTERTON
CHESTERTIB A W
AAF
A A F
A B B
ABB
A T C
ACE SERVICE
ACTION WINDOWS
ADAMS ADAMS BUILD
AIR COMPRESSOR
AIR GAS
AIRGAS
AIRGAS EAST
ALLWASTE
ALL WASTE
ALLIED WASTE
P M. SERV
PM SERV
ALSTROM
AMBIENT
AMERICAN SAW
AMODIO
ARAMARK
ARCH WIRELESS
ATLANTIC DETROIT DEISEL
T L C AUTOMATIC
AUTOMATIC TLC
AYOTTE
BCI
B C I
BERENDSON
BRAMAN CHEMICAL
BUCKLEY ENER
DWYER INSTRUME
EMCOR
FEDERAL EXPERSS
FILTER SALES
FIRE EQUIPMENT
FIRST IMPRESSIONS
FLAGMAN
FLOW TECH
FLOW SERVE
FLOWSERVE

GOLF CART
GRACE FOOD
GRAINGER FOOD
GRAPHIC CONTROL
GRIMSHAW
H P J CONSTRUCTI
HPJ CONSTRUCTI
HARTFORD FIRE EQUIPMEN
HEALTHY BUILDING
HONEYWELL
INDUSTRIAL TIME
INTEGRATED ACCESS
INTEGRATED MOSQUITO
IRONBOUND
IRON BOUND
JA SEXAUER
J A SEXAUER
J R BRAZEL
JR BRAZEL
J A M PLASTIC
JAM PLASTIC
J J KELLAR
JJ KELLAR
KAMAN INSUSTRI
KELLCO
KISSICK
LAMINATION SERVIC
LANDRY COMMUNICATIO
LEPPERT NUTMEG
LIEBERT
LUPACHINO SALVATORE
MAGNA KLEEN
MAGNALKEEN
MAHONY FITTING
MCPHEE ELECTRI
MEDIA MANAGEME
MORSE WATCHMANS
MUTUAL ENGRAV
MYSTIC AIR
NELSON GARY
NEW ENGLAND DOOR
NIRO LANDSCAP
ONE SOURCE
ONESOURCE
OTIS ELEVATOR
PAGENET

PAGE NET
PART TOWER BROKER
PEACH TREE
PEACHTREE
THREE WAY COMMUNICAT
TOWER PERFORMANCE
TOWN WINDSOR
UNI SOURCE WORLD WIDE
VERIZON
VERMONT MECHANIC
WW GRAINGER
W W GRAINGER
WEST HARTFORD LOCK
WESTAFF
WESTERN MASS DOOR
WILLIS COOROON
WILSON PAINT
B K M ENTERPRIS
BKM ENTERPRIS

# **EXHIBIT B**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Combustion Engineering, Inc., | ) | Case No. 03-10495 (JKF) |
| | ) | |
| Debtor. | ) | |

**AFFIDAVIT OF ROBERT J. GENTILE IN SUPPORT OF THE DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 327(a) AND 328 (a) AND FED. R. BANKR. P. 2014(a), 2016 AND 5002 AUTHORIZING THE EMPLOYMENT AND RETENTION OF THE BLACKSTONE GROUP L.P. AS FINANCIAL ADVISOR TO THE DEBTORS IN POSSESSION**

| | | |
|---|---|---|
| STATE OF NEW YORK | ) | |
| | ) | ss. |
| COUNTY OF NEW YORK | ) | |

ROBERT J. GENTILE, being duly sworn, deposes and says:

1.  I am the Compliance Manager of The Blackstone Group L.P. ("Blackstone"), a private investment-banking firm that maintains offices at 345 Park Avenue, New York, New York 10154, and I make this affidavit on behalf of Blackstone (the "Affidavit"). I submit this Affidavit in support of the application (the "Application") of the debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case") for an order authorizing the employment and retention of Blackstone as financial advisor to the Debtor. Except as otherwise noted, I have personal knowledge of the matters set forth herein.

2.  In my capacity as Compliance Manager at Blackstone, I am responsible for, among other things, the compliance function at Blackstone. As part of my job, I maintain, for purposes of monitoring and avoiding conflicts of interest, a list (the "Restricted List") of companies with which Blackstone or one of its investment vehicles is doing business, either as

an advisor or an investor or with respect to which Blackstone is in possession of material,

nonpublic information or has entered into a confidentiality agreement. Immediately before these

cases commenced, my staff and I received a list of companies provided by Debtor, which we

compared against the Restricted List and determined that 6 names provided by the Debtor

appeared on the Restricted List.

3.      Of those 6 company names, Blackstone is not in a position to disclose the

companies' names either because Blackstone is subject to confidentiality agreements or because

they may be publicly traded or owned by companies that may be publicly traded.

4.      Blackstone Debt Advisors L.P. holds or may hold collateralized loans of

two parties in interest. One or more of the Blackstone Funds have or are considering potential

investment transactions with three parties in interest, some subject to confidentiality agreements.

5.      Affiliates of Blackstone serve as general partners for and manage a

number of investment vehicles (collectively, the "Blackstone Funds") of which the investors are

primarily unrelated third parties but also include affiliates of Blackstone and various of its

officers and employees. One of these parties in interest, a financial institution, may have

investments in Blackstone Funds, may have invested alongside Blackstone Funds in particular

companies, may have extended credit to or provided investment banking services to Blackstone,

Blackstone Funds or Blackstone portfolio companies.

A p p e n d i x   1 1 6

3

6.      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the

foregoing is true and correct.

Executed on February 11, 2003.

Robert J. Gentile

Subscribed and Sworn to before me
this 11K  day of February 2003

Notary Public

SONIA S. BOOKER
Notary Public, State of New York
No. 01BO6034988
Qualified in Queens County
Commission Expires December 20  2005

Appendix 117

# **EXHIBIT C**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Combustion Engineering, Inc., | ) | Case No. 03-_10495 (JKF_ ) |
| | ) | |
| Debtor. | ) | |

**ORDER PURSUANT TO SECTIONS 327, 328 AND 1107 OF THE BANKRUPTCY CODE AUTHORIZING DEBTOR AND DEBTOR IN POSSESSION TO RETAIN THE BLACKSTONE GROUP L.P. AS ITS FINANCIAL ADVISOR**

Upon consideration of the Application (the "Application") of Combustion

Engineering, Inc. (the "Debtor") for the entry of an order, pursuant to Sections 327, 328 and

1107 of Title 11 of the United States Code., 11 U.S.C. §§ 101 *et. seq.*, as amended (the

"Bankruptcy Code"), authorizing the Debtor to employ and retain The Blackstone Group L.P.

("Blackstone") as its financial advisor in the above-captioned case (the "Chapter 11 Case"); the

Court being satisfied that: (i) the members and associates of Blackstone who will be engaged in

the Chapter 11 Case do not hold or represent an interest adverse to the Debtor, its creditors, or

estate with respect to the matters for which Blackstone will be engaged; (ii) Blackstone is a

"disinterested person" within the meaning of Section 101(14) of the Bankruptcy Code, as

modified by Section 1107(b) of the Bankruptcy Code, and has disclosed any matter which

Blackstone could bear upon the finding by this Court that Blackstone is such a "disinterested

person;" and (iii) the employment and retention of Blackstone necessary and in the best interests

of the Debtor, its creditors and estate; and it appearing that the notice of the Application was

good and sufficient under the circumstances and that no further notice need be given; and good

and sufficient cause appearing therefor; it is hereby

ORDERED, that pursuant to Sections 327, 328 and 1107 of the Bankruptcy Code, the Debtor shall be, and hereby is, authorized and empowered to employ and retain Blackstone as its financial advisor for matters referred to in the Motion, *nunc pro tunc* to the Petition Date, pursuant to the terms and conditions set forth in this Application and the Blackstone Agreement including, without limitation, the Indemnification Provisions described in paragraph 22 of the Application; and it is further

ORDERED, that the Debtor shall, on or before February ___, 2003 mail notice of the entry of this Order, together with a copy of the Motion, to (i) the Office of the United States Trustee, (ii) the twenty (20) largest unsecured creditors of the Debtor and (iii) attorneys for any statutory committee and the legal representatives appointed in this case.

Dated: _____, 2003

_____
UNITED STATES BANKRUPTCY JUDGE

Appendix 120