# TAB 5

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) |
|  | ) **Chapter 11** |
| **COMBUSTION ENGINEERING, INC.,** | ) **Case No. 03-10495 (JKF)** |
|  | ) |
| Debtor. | ) **Objection Deadline: April 4, 2003 at 12:00 p.m.** |
|  | ) **Hearing Date: April 7, 2003 at 9:00 a.m.** |
|  | ) **in Pittsburgh, PA** |

**APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION AND
EMPLOYMENT OF CIBC WORLD MARKETS CORP. AS
FINANCIAL ADVISOR TO DAVID T. AUSTERN
AS FUTURE CLAIMANTS' REPRESENTATIVE
PURSUANT TO SECTION 1103(a) OF THE BANKRUPTCY CODE**

David T. Austern, Future Claimants' Representative in the above-captioned case (the "Future Claimants' Representative"), hereby submits this application (the "Application") for the entry of an Order, pursuant to section 1103(a) of title 11 of the United States Code (the "Bankruptcy Code"), authorizing and approving the retention and employment of CIBC World Markets Corp. ("CIBC") as financial advisor to the Future Claimants' Representative.[1]  In support of this Application, the Future Claimants' Representative relies upon the Declaration of Joseph J. Radecki, Jr. (the "Declaration"), a Managing Director of CIBC, attached to this Application as Exhibit A.  In further support of this Application, the Future Claimants' Representative respectfully represents as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

---

[1] On February 18, 2003, the Debtor filed an application to appoint me as the Future Claimants' Representative *nunc pro tunc* to the Petition Date.  At a hearing on March 17, 2003, the Court authorized the Debtor to appoint me as the Future Claimants' Representative on an interim basis.

proceeding within the meaning of 28 U.S.C. § 157(b)(2). The statutory basis for the relief requested herein is section 1103(a) of the Bankruptcy Code.

## Background

2.      On February 17, 2003 (the "Petition Date"), Combustion Engineering, Inc. (the "Debtor") filed its petition for relief under Chapter 11 of the Bankruptcy Code. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor is continuing in the management and possession of its properties as a debtor in possession.

3.      The Debtor, a Delaware corporation with its principal place of business in Windsor, Connecticut, currently holds title to two parcels of real estate and leases its real property located in Windsor, Connecticut. The Debtor also has environmental remediation responsibilities from its previous business activities. As of the Petition Date, the Debtor was a defendant in numerous asbestos litigations that allege liability for asbestos-related personal injuries arising out of the Debtor's previous business activities.

4.      Prior to the Petition Date, the Debtor negotiated the terms of its proposed plan of reorganization with various creditors and parties in interest. In this case, the Debtor seeks to have its pre-packaged plan of reorganization confirmed by the Court. In conjunction with the negotiations regarding the treatment to be accorded to future asbestos personal injury claimants in the Debtor's proposed plan of reorganization, the Debtor asked me to serve as the legal representative to protect the interests of individuals who may assert asbestos-related claims in the future against the Debtor. The Debtor filed an application to appoint me as the Future Claimants' Representative in these chapter 11 proceedings. At a hearing on March 17, 2003, the Court authorized the Debtor to appoint me as the Future Claimants' Representative in these chapter 11 proceedings on an interim basis.

2

## Relief Requested

5.     By this Application, the Future Claimants' Representative seeks to retain and employ CIBC as his financial advisor in connection with this chapter 11 case and to provide services described below. The Future Claimants' Representative respectfully requests entry of an order pursuant to section 1103(a) of the Bankruptcy Code authorizing him to so retain and employ CIBC. Given the expedited schedule in this case, the Future Claimants' Representative has asked CIBC to continue the work they began performing pre-petition and respectfully requests that the Court authorize the retention and employment of CIBC effective as of the Petition Date. A copy of an engagement letter between the Future Claimants' Representative and CIBC, effective as of February 17, 2003 (the "Post-Petition Engagement Agreement"), is attached to the Declaration as Exhibit B.

## Basis for the Relief Sought

6.     Beginning in November, 2002, in connection with my serving in the role as the legal representative for the interests of individuals who may assert asbestos related claims in the future against the Debtor, my legal counsel, Swidler Berlin Shereff Friedman, LLP ("SBSF"), retained CIBC to provide financial advisory services to SBSF, in connection with legal advice being provided to me. A copy of an engagement letter between SBSF and CIBC, dated December 5, 2002 (the "Pre-Petition Engagement Agreement"), is attached to the Declaration as Exhibit A. The Future Claimants' Representative, SBSF and CIBC actively conducted due diligence with respect to the Debtor, its parent corporation, their financial affairs, their pre-petition transactions and the Debtor's proposed plan. In particular, CIBC analyzed and advised on the financial condition of ABB Ltd. ("ABB") and the value of certain securities of ABB being offered to the asbestos claims settlement trust to be formed under the Debtor's proposed plan.

3

Appendix 127

As a result of its pre-petition work, CIBC is intimately familiar with ABB's business, operations

and management, and financial affairs, as well as the Debtor's proposed plan of reorganization

and the other plan documents. Accordingly, the Future Claimants' Representative believes that

retaining CIBC with respect to the specific matters described below is important to the Future

Claimants' Representative's role in the case, and that CIBC is well suited to assist the Future

Claimants' Representative as his financial advisor on these matters during the chapter 11 process.

### Services to be Rendered

7.    Subject to the approval of this Court, CIBC will be engaged to render the

following services to the Future Claimants' Representative:

> i.    as ABB operationally restructures itself and completes its major divestiture program, analyze the financial position, cash flow requirements, financial history, operations, competitive environment and assets of ABB and its affiliates;

> ii.    evaluate the financial effect of the implementation of any plan of reorganization upon the operations, assets and securities of ABB and its affiliates including, but not limited to, the liquidity and creditworthiness of ABB, its bank and public bond debt and the common stock of ABB;

> iii.    assist and advise the Future Claimants' Representative in connection with (a) the analysis and negotiation of items remaining outstanding from CIBC's pre-petition work, (b) finalizing the terms of the Debtor's proposed plan of reorganization and related plan documents, and (c) confirmation and implementation of the Debtor's pre-packaged plan; and

> iv.    perform all other necessary professional services that the Future Claimants' Representative requests and as may be appropriate in connection with these chapter 11 proceedings.

8.    The Future Claimants' Representative believes that employing CIBC as financial

advisor as set forth herein will provide the Future Claimants' Representative with advice,

4

assistance and information in a cost effective manner in those areas in which CIBC has particular knowledge and expertise.

9.      The above listed services are necessary and essential to the Future Claimants' Representative. CIBC has indicated a willingness to act on behalf of, and render such services to, the Future Claimants' Representative, upon the terms set forth herein.

## Disclosure Concerning Connections
## Between SBSF and Parties in Interest

10.      To the best of the Future Claimants' Representative's knowledge, except as otherwise set forth herein and in the accompanying Declaration, CIBC does not have any connection with the Future Claimants' Representative, the Debtor, its affiliates, creditors or any other party in interest, or their respective attorneys and accountants, the United States Trustee, or any person employed in the Office of the United States Trustee, and does not hold or represent any interest adverse to the Future Claimants' Representative on the matters upon which CIBC is to be engaged.

## Professional Compensation

11.      CIBC intends to apply for compensation for professional services rendered in connection with this case, and for reimbursement of actual and necessary expenses incurred, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and orders of this Court.

12.      Pursuant to the Post-Petition Engagement Agreement, Joseph J. Radecki, Jr. will be primarily responsible for performing financial advisory services in this case, so long as he continues to be employed by CIBC. CIBC will provide appropriate levels of staffing to complete the engagement in a timely and commercially reasonable manner.

5

13.    Pursuant to the Post-Petition Engagement Agreement, CIBC agreed to perform the requested services for the following compensation, which is in addition to the compensation CIBC received prior to the Petition Date:

  i.  a cash fee of $25,000 for each month beginning with March 2003, until the month of the confirmation of a restructuring plan; and

  ii.  a cash fee of $75,000 for the month of the confirmation of a restructuring plan.[2]

Pursuant to the Post-Petition Engagement Agreement, the Debtor also agreed to reimburse CIBC for its reasonable out-of-pocket expenses incurred in connection with the provision of services. Such expenses include, but are not limited to, travel and lodging, data processing and communications charges, research and courier services, and similar costs. Pursuant to the Post-Petition Engagement Agreement, if the restructuring of the Debtor and implementation of a trust pursuant to section 524(g) of the Bankruptcy Code is not completed by June 30, 2003, the parties agreed that they will seek to mutually agree, if possible, on an alternative compensation arrangement. Such alternative compensation arrangement will not be implemented without approval of this Court.

14.    I understand that it is CIBC's policy to charge its clients for reasonable out-of-pocket expenses incurred in connection with the provision of services, including, but not limited to, travel and lodging, data processing and communication charges, research and courier services, and similar costs. CIBC has agreed to invoice the Future Claimants' Representative for these expenses in a manner and at rates consistent with charges made generally to CIBC's other clients.

---

[2] The increase in compensation for the month of confirmation of a restructuring plan reflects the parties' expectation that CIBC will be required to provide additional services in connection with confirmation and consummation of the plan, and may be required to participate in any confirmation hearing.

15.    CIBC has agreed to accept as compensation such sums as may be allowed by the Court for fees incurred for professional services and for reimbursement of reasonable and necessary expenses.

16.    Pursuant to the Post-Petition Engagement Agreement, CIBC requires that the Debtor agree to indemnify and hold harmless CIBC, its agents, employees, officers and directors, and any person who controlled CIBC within the meaning of Section 15 of Securities Act of 1933 or Section 20 of the Securities Exchange Act of 1934, as amended (each, an "Indemnified Party" and collectively, the "Indemnified Parties"), from and against any and all losses, claims, judgments, damages, liabilities and expenses (including, but not limited to, all reasonable legal expenses, and any and all other expenses incurred in investigating, preparing or defending against any action or proceeding, commenced or threatened, whether or not any Indemnified Party is a named party) to which, jointly or severally, they may become subject, which arise out of or are based upon or in any connection with (i) any transaction contemplated by the Post-Petition Engagement Agreement and/or the Pre-Petition Engagement Agreement, the retention of CIBC under the Post-Petition Engagement Agreement and/or the Pre-Petition Engagement Agreement, the performance of services by CIBC under the Post-Petition Engagement Agreement, the Pre-Petition Engagement Agreement, or any involvement or alleged involvement of CIBC in the Debtor's proposed plan, or (ii) any untrue statement of fact contained in any document furnished or made available by the Debtor, directly by the Debtor or through CIBC or otherwise, or any omission to state therein a material fact required to be stated therein or necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading. However, the Debtor is not required to indemnify any Indemnified Party with respect to any action, suit or proceeding in which a final judgment (after all appeals or the

7

expiration of time to appeal) is entered to the extent based upon his gross negligence or willful malfeasance and any payment or reimbursement made to such Indemnified Party by the Debtor in connection with any such action or proceeding will be repaid by such Indemnified Party to the Debtor.

17.    Other than as set forth above, no arrangement is proposed between the Future Claimants' Representative and CIBC for compensation to be paid in this case.

18    The Future Claimants' Representative has been advised by CIBC that it has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under section 504(b)(1) of the Bankruptcy Code.

19.    For the reasons set forth above, the Future Claimants' Representative believes that the retention of CIBC is necessary and in the best interests of the Future Claimants' Representative, the Debtor, its estate and its creditors.

### No Prior Request

20.    No prior application for the relief requested herein has been made to this or any other Court.

### Notice

21    Notice of the Application and the requested relief has been provided to (i) counsel for the Debtor, (ii) the Office of the United States Trustee, (iii) proposed counsel for the Official Committee of Unsecured Creditors; and (iv) any party who has entered their appearance in this case through March 27, 2003, pursuant to Bankruptcy Rule 2002. Accordingly, the Future Claimants' Representative believes that such a notice of the application is appropriate and sufficient

8

## Conclusion

**WHEREFORE**, the Future Claimants' Representative respectfully requests that the

Court enter an order substantially in the form attached hereto as Exhibit B (1) granting this

Application, (2) authorizing the Future Claimants' Representative to retain and employ CIBC, as

of the Petition Date, as his financial advisor in this chapter 11 case pursuant to section 1103(a) of

the Bankruptcy Code, in accordance with the terms set forth in this application and (3) granting

such other and further relief as is appropriate.

DAVID T. AUSTERN,
FUTURE CLAIMANTS' REPRESENTATIVE

8260 Willow Oaks Corporate Drive, Suite 600
Fairfax, VA  22031
(703) 204-9300

Dated: March 27, 2003

9

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | )<br>)<br>) **Chapter 11** |
| COMBUSTION ENGINEERING, INC., | ) **Case No. 03-10495 (JKF)**<br>) |
| Debtor. | ) **Objection Deadline: April 4, 2003 at 12:00 p.m.**<br>) **Hearing Date:  April 7, 2003 at 9:00 a.m.**<br>)                    in Pittsburgh, PA |

**NOTICE OF APPLICATION FOR AN ORDER AUTHORIZING RETENTION
AND EMPLOYMENT OF CIBC WORLD MARKETS CORP.
AS FINANCIAL ADVISOR TO DAVID T. AUSTERN AS
FUTURE CLAIMANTS' REPRESENTATIVE PURSUANT TO
SECTION 1103(a) OF THE BANKRUPTCY CODE**

David T. Austern, Future Claimants' Representative for the future asbestos claimants in the above-captioned case (the "Future Claimants' Representative") has submitted an Application for an Order Authorizing Retention and Employment of CIBC World Markets Corp. as Financial Advisor to David T. Austern as Future Claimants' Representative pursuant to Section 1103(a) of the Bankruptcy Code (the "Application").

You are required to file a response to the attached Application on or before April 4, 2003, and serve it on the following:

Roger Frankel, Esquire
Richard H. Wyron, Esquire
Matthew W. Cheney, Esquire
Swidler Berlin Shereff Friedman, LLP
3000 K Street, NW, Suite 300
Washington, DC  20007
Proposed Bankruptcy Counsel to David T. Austern
As Future Claimants' Representative

Laura Davis Jones, Esquire
Pachulski Stang Ziehl Young Jones & Weintraub, PC
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
Counsel to the Debtor

Richard L. Schepacarter, Esquire
Office of the United States Trustee
844 N. King Street, 2nd Floor
Wilmington, DE  19801

A p p e n d i x   1 3 4

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED BY THE APPLICATION WITHOUT FURTHER NOTICE OR HEARING.

PHILLIPS, GOLDMAN & SPENCE, P.A.

/S/ JOHN C. PHILLIPS, JR.
JOHN C. PHILLIPS, JR., ESQUIRE (#110)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
(302) 655-4210 (fax)
Proposed Local Bankruptcy Counsel to
David T. Austern as Future Claimants'
Representative

Dated: March 28, 2003

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) |
| COMBUSTION ENGINEERING, INC., | )    **Chapter 11** |
| | )    **Case No. 03-10495 (JKF)** |
| Debtor. | ) |

**DECLARATION OF JOSEPH J. RADECKI, JR. UNDER
FED. R. BANKR. P. 2014 AND 2016(b) IN SUPPORT OF APPLICATION
FOR AN ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF
CIBC WORLD MARKETS CORP. AS FINANCIAL ADVISOR TO
DAVID T. AUSTERN AS FUTURE CLAIMANTS' REPRESENTATIVE
PURSUANT TO SECTION 1103(a) OF THE BANKRUPTCY CODE**

I, Joseph J. Radecki, Jr., state:

1.    I am a Managing Director of CIBC World Markets Corp. ("CIBC"), which

maintains offices at 425 Lexington Avenue, New York, NY 10017. This declaration is submitted

pursuant to Fed. R. Bankr. P. 2014, 2016 and 5002, in support of the Application for an Order

Authorizing the Retention and Employment of CIBC as Financial Advisor to David T. Austern as

Future Claimants' Representative pursuant to 11 U.S.C. Section 1103(a) of the Bankruptcy Code

(the "Application"), filed by David T. Austern, Future Claimants' Representative (the "Future

Claimants' Representative" or "Mr. Austern"), in the above-captioned case.[1]

2.    Except as is otherwise provided below, the facts set forth in this declaration are

based upon my personal knowledge, upon records maintained by CIBC in the ordinary course of

---

[1] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to
them in the Application.

its business, which have been reviewed by me and/or by other employees of CIBC at my
direction, or upon information known by other employees of CIBC and conveyed to me

### CIBC's Qualifications and the Scope of CIBC's Retention

3.    CIBC is a full service investment bank, which offers a comprehensive set of
products and services for its corporate and institutional clients. The Future Claimants'
Representative selected CIBC because of CIBC's extensive experience and knowledge of various
financial matters, especially as it relates to complex corporate and capital structures, such as those
at issue in this chapter 11 case.

4.    CIBC is well qualified to act as the Future Claimants' Representative's financial
advisor. CIBC provides investment banking and financial advisory services from offices located
throughout the United States, Canada, Europe and Asia. CIBC's Financial Restructuring Group
provides a range of financial advisory, investment banking and valuation services to debtors and
debtors-in-possession, creditors' committees, acquirers, future claims representatives and other
parties-in-interest in connection with bankruptcy cases and financially distressed situations.
CIBC's professionals have served or are presently serving as financial advisors to debtors,
creditors and trustees in numerous chapter 11 proceedings, including cases in this district
involving asbestos claims such as USG Corporation.

5.    The professionals assigned by CIBC to this engagement possess the requisite
experience to handle complex bankruptcy matters. Professionals in CIBC's Financial
Restructuring Group have been involved in transactions where in excess of $35 billion of
securities have been affected.

6.    Beginning in November 2002, in connection with Mr. Austern's role as the legal
representative for the interests of individuals who may assert asbestos related claims in the future

2

against Combustion Engineering, Inc. (the "Debtor"), Swidler Berlin Shereff Friedman, LLP

("SBSF"), Mr. Austern's legal counsel, retained CIBC to provide financial advisory services to

SBSF, in connection with legal advice being provided to Mr. Austern. A copy of the engagement

letter between SBSF and CIBC, dated December 5, 2002 (the "Pre-Petition Engagement

Agreement"), is attached hereto as Exhibit A. The Future Claimants' Representative, SBSF and

CIBC actively conducted due diligence with respect to the Debtor, its parent corporation, their

financial affairs, their pre-petition transactions, and the Debtor's proposed plan. In particular,

CIBC analyzed and advised on the financial condition of ABB Ltd. ("ABB") and the value of

certain securities of ABB being offered to the asbestos claims settlement trust to be formed under

the Debtor's proposed plan. As a result of its pre-petition work, CIBC is familiar with ABB's

business, operations and management, and financial affairs, as well as the Debtor's proposed plan

of reorganization and other documents. CIBC also is familiar with the concerns and issues

important to the Future Claimants' Representative and to the asbestos personal injury claimants

who may assert claims or demands in the future.

      7.     The Future Claimants' Representative desires to utilize, in this chapter 11 case, the

experience, expertise, and existing knowledge of CIBC's professionals who have worked on his

behalf pre-petition, particularly in connection with (a) the analysis and negotiation of items

remaining outstanding from CIBC's pre-petition work, (b) finalizing the terms of the Debtor's

proposed plan of reorganization and related plan documents, and (c) confirmation and

implementation of the Debtor's pre-packaged plan. A copy of an engagement letter between the

Future Claimants' Representative and CIBC, effective as of February 17, 2003 (the "Post-Petition

Engagement Agreement"), is attached hereto as Exhibit B.

3

8.    The Future Claimants' Representative has requested that CIBC render the following services in connection with this case:

    i.    as ABB operationally restructures itself and completes its major divestiture program, analyze the financial position, cash flow requirements, financial history, operations, competitive environment and assets of ABB and its affiliates;

    ii.    evaluate the financial effect of the implementation of any plan of reorganization upon the operations, assets and securities of ABB and its affiliates including, but not limited to, the liquidity and creditworthiness of ABB, its bank and public bond debt and the common stock of ABB;

    iii.    assist and advise the Future Claimants' Representative in connection with (a) the analysis and negotiation of items remaining outstanding from CIBC's pre-petition work, (b) finalizing the terms of the Debtor's proposed plan of reorganization and related plan documents, and (c) confirmation and implementation of the Debtor's pre-packaged plan; and

    iv.    perform all other necessary professional services that the Future Claimants' Representative requests and as may be appropriate in connection with these chapter 11 proceedings.

Subject to the Court's approval of the Application, CIBC is willing to serve as financial advisor to the Future Claimants' Representative and to perform services described above.

### Disinterestedness of CIBC

9.    In order to prepare this declaration, CIBC has taken various steps to determine whether any conflict of interest exists that would preclude CIBC from serving as financial advisor to the Future Claimants' Representative. In connection with CIBC's proposed engagement in this case, I reviewed or caused to be reviewed CIBC's business records to determine, among other things, (i) whether CIBC already represents any other client in connection with the proposed new matter, (ii) whether CIBC already represents any other client in a capacity that may be adverse to the proposed client, or where the proposed representation might be adverse to the interests of such

4

other client, and (iii) whether CIBC has any connections with the Debtor, its creditors and other parties identified to me as parties in interest.

10. Once this review process identified a potential connection between CIBC and a listed party in interest, I or employees working under my supervision elicited information to discern the nature and scope of the representation or connection for appropriate disclosure in this Declaration

11. Based upon the review of the business records, as set forth above, and the resulting inquiries, and responses from individual CIBC officers, directors or/and employees, I have identified the following matter:

> Prior to the Petition Date, CIBC provided financial advice to the proposed counsel for the Future Claimants' Representative in his capacity as legal representative for persons who may assert asbestos related claims or demands in the future against the Debtor.

12. The Debtor has or may have other parties in interest, and CIBC may have rendered or may be rendering services to certain of such parties, or may become involved in matters unrelated to this case in which such parties, or attorneys or accountants for such parties, were, are or become, involved. CIBC also may have or represent interests adverse to such creditors or parties in interest in matters unrelated to this case. Based on the information currently available, CIBC believes that no such matter involves representation of any interest adverse to the Future Claimants' Representative on the matters upon which CIBC is to be engaged.

13. In addition to the foregoing, CIBC's officers, directors and employees may have business associations with, professional and social relationships with, or interests adverse to, creditors or parties in interest, or their attorneys, accountants or advisors; as far as I have been able to ascertain, none of these associations, relationships, or interests have any connection with this case. As part of its practice, CIBC provides its services in cases, proceedings and

5

transactions throughout the United States involving many different parties, and works together with many different parties, which may include creditors or parties in interest, or attorneys, accountants or other professional firms or advisors who may represent creditors or parties in interest in this case.

14.    To the best of my knowledge, no officer, director or employee at CIBC is related to any United States District Judge or United States Bankruptcy Judge for the District of Delaware or to the United States Trustee for this district or to any known employee in his office.

15.    None of the representations described above are materially adverse to the interests of the Debtor, its estate, any class of creditors or equity security holders, the future asbestos claimants, or the Future Claimants' Representative. Thus, CIBC is disinterested and may serve as financial advisor to the Future Claimants' Representative notwithstanding its connection to parties in interest in the unrelated matters described above.

16.    As far as I have been able to ascertain to date and to the best of my knowledge, and except as otherwise set forth herein, CIBC (a) does not hold or represent any interest adverse to the Future Claimants' Representative on the matters upon which CIBC is to be engaged and (b) has no connection with the Debtor, creditors, any other party in interest, their respective attorneys and retained professionals, the United States Trustee or any person employed in her office (to the extent identified to CIBC).

## Professional Compensation

17.    According to CIBC's books and records, prior to the Petition Date, CIBC invoiced the Future Claimants' Representative an aggregate sum of $421,462.62 for services rendered and as reimbursement for expenses and disbursement. Pursuant to the Pre-Petition Engagement Agreement, the Debtor paid these fees to CIBC.

6

18.    In connection with the continuance of CIBC's engagement post-petition, CIBC and the Future Claimants' Representative have entered into the Post-Petition Engagement Agreement, pursuant to which CIBC will provide financial advisory services, if authorized by this Court.

19.    CIBC intends to apply for compensation for professional services rendered in connection with this case, and for reimbursement of actual and necessary expenses incurred, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and orders of this Court.

20.    Pursuant to the Post-Petition Engagement Agreement, Joseph J. Radecki, Jr. will be primarily responsible for performing financial advisory services in this case, so long as he continues to be employed by CIBC. CIBC will provide appropriate levels of staffing to complete the engagement in a timely and commercially reasonable manner.

21.    Pursuant to the Post-Petition Engagement Agreement, CIBC agreed to perform the requested services for the following compensation, in addition to the compensation paid prior to the Petition Date:

      i.    a cash fee of $25,000 for each month beginning with March 2003, until the month of the confirmation of a restructuring plan; and

      ii.    a cash fee of $75,000 for the month of the confirmation of a restructuring plan.[2]

Pursuant to the Post-Petition Engagement Agreement, the Debtor also agreed to reimburse CIBC for its reasonable out-of-pocket expenses incurred in connection with the provision of services

---

[2] The increase in compensation for the month of confirmation of a restructuring plan reflects the parties' expectation that CIBC will be required to provide additional services in connection with confirmation and consummation of the plan, and may be required to participate in any confirmation hearing.

7

Such expenses include, but are not limited to, travel and lodging, data processing and communications charges, research and courier services and similar costs. Pursuant to the Post-Petition Engagement Agreement, if the restructuring of the Debtor and implementation of a trust pursuant to section 524(g) of the Bankruptcy Code is not completed by June 30, 2003, the parties agreed that they will seek to mutually agree, if possible, on an alternative compensation arrangement. Such alternative compensation arrangement would not be implemented without approval of this Court.

22.    It is CIBC's policy to charge its clients for reasonable out-of-pocket expenses incurred in connection with the provision of services, including, but not limited to, travel and lodging, data processing and communication charges, research and courier services, and similar costs. CIBC will invoice the Future Claimants' Representative for these expenses in a manner and at rates consistent with charges made generally to CIBC's other clients.

23.    To the best of my knowledge, no promises have been received by CIBC nor any officer, director or employee thereof as to payment or compensation in connection with the above-captioned case other than in accordance with applicable provisions of the Bankruptcy Code. To the best of my knowledge, CIBC has no agreement with any other entity to share with such entity compensation received by CIBC by the Future Claimants' Representative in connection with the Debtor's bankruptcy case, except as permitted by Section 504(b)(1) of the Bankruptcy Code.


[INTENTIONALLY BLANK — SIGNATURE IS ON NEXT PAGE]


8

\* \* \* \* \* \*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on March 24, 2003

_____
Joseph J. Radecki, Jr.

Sworn to before me this
24th day of March, 2003.

_____
NOTARY PUBLIC

**JUDITH CHAITOW**
Notary Public, State of New York
No. 31-4689789
Qualified in New York County
Commission Expires February 28, 2006

9

7126770v1

# EXHIBIT A



CIBC World Markets Corp.
425 Lexington Avenue
New York, NY 10017
Tel: 212-885-4400
Fax: 212-885-4998

December 5, 2002

Swidler Berlin Shereff Friedman, LLP
Washington Harbour
3000 K Street, N.W.
Washington, D.C. 20007

Attention:    Roger Frankel, Esq.

Dear Mr. Frankel:

This letter agreement (the "Agreement") confirms that Swidler Berlin Shereff Friedman, LLP, as legal counsel ("Counsel") for David Austern, the representative for future asbestos-related claimants (the "Futures Representative") to Combustion Engineering, Inc. (the "Company"), retains CIBC World Markets Corp. ("CIBC" or "Financial Advisor") to act as Counsel's financial advisor in connection with a proposed restructuring of the Company and implementation of a trust as contemplated under Section 524(g) of the Bankruptcy Code (the "Transaction") in conjunction with ABB Ltd., the ultimate parent company of the Company and its affiliates (collectively, "ABB"). The Company, subject to the terms and conditions hereof, agrees to compensate CIBC for the services that CIBC renders pursuant to the terms hereof.

1.    Retention. Counsel hereby retains CIBC in connection with the analysis of the financial position, cash flow requirements, financial history, operations, competitive environment, and assets of the Company and ABB to assist Counsel in rendering legal advice to the Futures Representative. Additionally, CIBC will evaluate the financial effect of the implementation of any plan of reorganization upon the assets or securities of the Company and ABB including, but not limited to, the common stock of ABB. CIBC will also assist Counsel in presenting valuation and capital structure options, and in formulating, negotiating and consummating the Transaction.

2.    Staffing. Counsel and CIBC agree that this engagement will be primarily staffed by Joseph J. Radecki, Jr., so long as he continues to be employed by CIBC. CIBC will also provide appropriate levels of staffing to complete the engagement in a timely and commercially reasonable manner.

3    Information on the Company. In connection with the Financial Advisor's activities hereunder, the Company and ABB will furnish us upon request with all

CIBC World Markets Corp

material and information regarding the business and financial condition of the Company (all such information so furnished being the "Information"). It is recognized and confirmed that CIBC: (a) will use and rely primarily on the Information, and on information available from generally recognized public sources in performing the services contemplated by this letter without having independently verified the same; (b) does not assume responsibility for the accuracy or completeness of the Information and such other information; (c) will not make an appraisal of any assets of the Company; and (d) retains the right to continue to perform due diligence during the course of the engagement. The Financial Advisor will consider all work with respect to this matter to be confidential, protected from disclosure by, among other protections, the attorney-client privilege and/or the attorney work product doctrine. The Financial Advisor shall not disclose any such information to any other person or entity, except as expressly permitted pursuant to the separate confidentiality agreement executed contemporaneously herewith.

4    Use of Name  Counsel and the Company agree that any reference to the Financial Advisor in any release or communication or materials distributed is subject to the Financial Advisor's prior written approval, unless such release or communication is required by law or regulation. If the Financial Advisor resigns prior to the dissemination of any such release, communication or material, no reference shall be made therein to the Financial Advisor.

5.    Use of Advice.  No advice rendered by the Financial Advisor in connection with the services performed by the Financial Advisor pursuant to this Agreement will be quoted by Counsel or the Company, nor will any such advice be referred to, in any report, document, release or other communication, whether written or oral, prepared, issued or transmitted by Counsel, the Company or person or corporation controlling, controlled by or under common control with the Company or any director, officer, employee, agent or representative of the Company, without the prior written authorization of the Financial Advisor, except to the extent required by law (in which case the appropriate party shall so advise the other in writing prior to such use and shall consult with the other with respect to the form and timing of disclosure), provided that the foregoing shall not prohibit appropriate internal communication or reference with respect to such advice internally within such parties.

6.    Compensation. In full payment for services rendered and to be rendered hereunder by CIBC, CIBC shall be paid in cash by the Company as follows:

(a)    A cash fee of $150,000 for each of the initial two (2) months, payable monthly in advance starting upon the date of this Agreement

(b)    A cash fee of $100,000 for the third month, payable in advance

CIBC World Markets Corp

(c)   A cash fee of $25,000 for each month thereafter, until the month of the confirmation of a restructuring plan, payable monthly in advance after the third month.

(d)   A cash fee of $75,000 for the month of the confirmation of a restructuring plan, payable upon confirmation.

CIBC and Counsel acknowledge that the compensation proposed has been accepted by all parties based on their understanding of the proposed Transaction. Should such Transaction not be implemented within a reasonable time frame, all parties agree that they will seek to mutually agree, if possible, on an alternative compensation arrangement.

7    Expenses.  Without in any way reducing or affecting the provisions of Exhibit A hereto, the Company shall reimburse CIBC for its reasonable out-of-pocket expenses incurred in connection with the provision of services hereunder. Out-of-pocket expenses shall include, but not be limited to, travel and lodging, data processing and communication charges, and research and courier services.

8    Liability for Fees and Expenses.  The Company shall be solely responsible for the payment of compensation and reimbursement of expenses to CIBC under this Agreement. Neither the Futures Representative nor Counsel shall be liable for the payment of any compensation or reimbursement of any expenses to CIBC hereunder.

9.    Termination Provision.  This Agreement will be effective as of the date set out on the first page hereof. CIBC may resign at any time for cause (including the Company's failure to pay compensation or reimburse expenses as and when due), and Counsel may terminate CIBC's services at any time after the first three (3) months, each by giving 30 days notice to the other. If Counsel terminates CIBC's services for any reason, CIBC shall be entitled to receive all of the amounts due pursuant to Sections 6 and 7 hereof, up to and including the effective date of such termination. If CIBC resigns, CIBC shall be entitled to receive all of the amounts pursuant to Sections 6 and 7 hereof, up to and including the effective date of such resignation.

10.    Representations and Warranties.  The Company represents and warrants to CIBC that this Agreement has been duly authorized, executed and delivered by the Company, and, assuming the due execution by the Financial Advisor, constitutes a legal, valid and binding agreement of the Company, enforceable against the Company, in accordance with its terms.

11.    Indemnification.  The Company agrees to indemnify CIBC in accordance with Schedule A annexed hereto.

CIBC World Markets Corp

12.  Survival of Certain Provisions.  The representations and warranties of the Company contained in Section 10 and the indemnifications provided in Schedule A of this Agreement shall remain operative and in full force and effect regardless of (a) any investigation made by or on behalf of the Financial Advisor, or by or on behalf of any affiliate of the Financial Advisor or any person controlling either, (b) the resignation of the Financial Advisor or any termination of the Financial Advisor's services or (c) any termination of this Agreement, and shall be binding upon, and shall inure to the benefit of, any successors, assigns, heirs and personal representatives of the Company and the Financial Advisor.

13.  Notices.  Notice given pursuant to any of the provisions of this Agreement shall be in writing and shall be mailed or delivered (a) if to Counsel, at the address listed above, Attention:  Roger Frankel; (b) if to CIBC, at the offices of CIBC at 425 Lexington Avenue, 3rd Floor, New York, New York  10017, Attention: Joseph J. Radecki, Jr., Managing Director and (c) if to the Company, at 2000 Day Hill Road, Windsor, Connecticut, 06095.

14.  Counterparts.  This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

15.  Assignment.  This Agreement may not be assigned by any party hereto without the prior written consent of the others, to be given in the sole discretion of the parties from whom such consent is being requested.   Any attempted assignment of this Agreement made without such consent may be void, at the option of the non-assigning parties.

16.  Third Party Beneficiaries.  This Agreement has been and is made solely for the benefit of the parties hereto, and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Agreement.

17.  Construction.  This Agreement incorporates the entire understanding of the parties and supersedes all previous agreements relating to the subject matter hereof (except for a separate confidentiality agreement executed contemporaneously herewith) and shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to principles of conflicts of law.

18.  Headings.  The section headings in this Agreement have been inserted as a matter of convenience of reference and are not part of this Agreement.

19.  Press Announcements.  At any time after the effective date of a Transaction, Counsel, the Company or the Financial Advisor may place an announcement in such newspapers and publications as it may choose.

Appendix 150

CIBC World Markets Corp

20    Amendment. This Agreement may not be modified or amended except in
a writing duly executed by the parties hereto.

CIBC World Markets Corp.

Please sign and return an original and one copy of this letter to the undersigned to indicate your acceptance of the terms set forth herein, whereupon this letter and your acceptance shall constitute a binding agreement between the parties hereto as of the date first above written.

Sincerely,

**CIBC WORLD MARKETS CORP.**

By: _____

Joseph J. Radecki, Jr.
Managing Director

Accepted and Agreed:

**Counsel to the Futures Representative**

Swidler Berlin Shereff Friedman, LLP

By: _____
Roger Frankel

**Combustion Engineering, Inc.**

By: _____

Its: _____

CIBC World Markets Corp.

## SCHEDULE A

Indemnity.  In consideration of CIBC's agreement to act on behalf of Counsel to the Futures Representative, notwithstanding any limitations set forth herein, the Company agrees to indemnify and hold harmless CIBC, its agents, employees, officers and directors, and any person who controls CIBC within the meaning of Section 15 of Securities Act of 1933 ("the Act") or Section 20 of the Securities Exchange Act of 1934, as amended (each, an "Indemnified Party" and collectively, the "Indemnified Parties"), from and against any and all losses, claims, judgements, damages, liabilities and expenses (including, but not limited to, all reasonable legal expenses, any and all other expenses incurred in investigating, preparing or defending against any action or proceeding, commenced or threatened, whether or not any Indemnified Party is a named party) to which, jointly or severally, they may become subject, which arise out of or are based upon or in connection with (i) any transaction contemplated by this Agreement, the retention of CIBC under this Agreement, the performance of services by CIBC hereunder or any involvement or alleged involvement of CIBC in the Transaction, or (ii) any untrue statement of fact contained in any document furnished or made available by the Company, directly by the Company or through CIBC or otherwise, or any omission to state therein a material fact required to be stated therein or necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading.  Notwithstanding the foregoing, no Indemnified Party shall be entitled to indemnification under this Schedule A with respect to any action, suit or proceeding in which a final judgment (after all appeals or the expiration of time to appeal) is entered to the extent based upon his gross negligence or willful malfeasance ("Disabling Conduct") and any payment or reimbursement made to such Indemnified Party by the Company in connection with any such action or proceeding will be repaid by such Indemnified Party to the Company.

If any action or proceeding (including any governmental proceeding) is brought or asserted against an Indemnified Party in respect of which indemnity may be sought against the Company, such Indemnified Party shall promptly notify the Company in writing of the institution of such action or proceeding (with a copy to Counsel for the Futures Representative)  Each Indemnified Party shall give the Company (with a copy to Counsel for the Futures Representative) prompt notice upon becoming aware of any claim for which indemnity or contribution may be sought hereunder; failure to provide such notice will not, however, relieve the Company from any obligation or liability it has hereunder or otherwise, except to the extent such failure causes the Company to forfeit material rights.  The Company, at its option, may assume the defense of any such claim with counsel reasonably satisfactory to CIBC, except if such Indemnified Party has been advised by counsel that, due to a conflict of interest or because there may be legal defenses available to such Indemnified Party that are different from or additional to defenses available to the Company, separate counsel for the Company and such Indemnified Party is advisable, in which case the reasonable fees and expenses of CIBC's counsel shall be at the expense of the Company; provided, that, upon invoking such option the Company shall unconditionally and irrevocably commit in writing to bear all risk with respect to such claim and to keep such Indemnified Party informed of the progress of any such claim

Appendix  153

CIBC World Markets Corp.

The Company agrees that, without the prior written consent of each of the relevant Indemnified Parties, it will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action or proceeding in respect of which indemnification could be sought hereunder (whether or not such Indemnified Parties are actual or potential parties to such claim, action or proceeding), (i) that involves any equitable relief that binds or purports to bind such Indemnified Parties and (ii) unless such settlement, compromise or consent includes an unconditional release for such Indemnified Parties from all liability arising out of such claim, action or proceeding CIBC and each such Indemnified Party shall have the right to employ separate counsel in any such action and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of CIBC or such Indemnified Party unless (a) the Company has agreed to pay such fees and expenses, or (b) the Company shall have failed to assume the defense of such action or proceeding  Unless the Company fails to assume the defense of an action or proceeding, the Company shall not be liable for any settlement of any such action or proceeding effected without its written consent (which shall not be unreasonably withheld or delayed), but if the Company has failed to assume such defense, if such claim is settled with the Company's written consent, or if there be a final judgment for the plaintiff in any such action or proceeding, the Company agrees to indemnify and hold harmless CIBC and any such Indemnified Party from and against any loss, liability damage or expense by reason of such settlement or judgment.

If the indemnification provided for in this Schedule A is unavailable to an Indemnified Party in respect of any losses, claims, damages, liabilities and expenses referred to herein or insufficient to hold an indemnified person harmless (other than by reason of such Person's Disabling Conduct), then the Company agrees that in lieu of indemnifying such Indemnified Party, it shall contribute to the amount paid or payable by such Indemnified Party as a result of such losses, claims, damages, liabilities and expenses (i) in such proportion as is appropriate to reflect the relative benefits received by it on the one hand and the Indemnified Party on the other from the services rendered under this Agreement or (ii) if the allocation provided by clause (i) above is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) above but also the relative fault of the Company on the one hand and of the Indemnified Party on the other in connection with the untrue statements or omissions or other actions (or alleged untrue statements, omissions or other actions) which resulted in such losses, claims, damages, liabilities and expenses, as well as any other relevant equitable considerations  The relative fault of the Company on the one hand and the Indemnified Party on the other shall be determined by reference to, among other things, whether such untrue statements or omissions or other actions (or alleged untrue statements, omissions or other actions) relate to information supplied or action taken by the Company on the one hand or by the Indemnified Party on the other and the relevant persons' relative intent, knowledge, access to information and opportunity to correct or prevent such untrue statements, omissions or actions  The amount paid or payable by a party as a result of the losses, claims, damages, liabilities and expenses referred to above shall be deemed to include any legal or other fees or expenses reasonably incurred by such party in connection with investigating or defending any action or claim   The Company and CIBC agree that it would not be just and equitable if contribution pursuant

CIBC World Markets Corp.

to this Schedule A were determined by pro rata allocation or by any other method of allocation which does not take account of the equitable considerations referred to above.

The aforesaid indemnity and contribution agreements shall apply to any related activities engaged in by any Indemnified Party prior to this date and to any modification of CIBC's engagement hereunder, and shall remain in full force and effect regardless of any investigation made by or on behalf of CIBC or any of its agents, employees, officers, directors or controlling persons and shall survive the termination of this Agreement or the consummation of a Transaction. The Company agrees promptly to notify CIBC of the commencement of any litigation or proceeding against it or any of its directors, officers, agents or employees in connection with the transactions contemplated hereby. The agreements contained in this Schedule A shall remain in full force and effect following the completion or termination of CIBC's engagement hereunder and shall be in addition to any liability that the Company may otherwise have to CIBC and its agents, employees, officers, directors or controlling persons.

The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company, its owners, creditors or security holders for or in connection with advice or services rendered or to be rendered by CIBC pursuant to this Agreement, the Transaction contemplated hereby or any Indemnified Party's actions or inactions in connection with any such advice, services or transactions except for liabilities (and related expenses) of the Company that are determined by a final judgment of a court of competent jurisdiction to have resulted primarily from such Indemnified Party's Disabling Conduct in connection with any such advice, actions, inactions or services.

7121583v2

**Appendix 155**

# EXHIBIT B



CIBC World Markets Corp.
125 Lexington Avenue
New York, NY 10017
Tel: 212-885-4400
Fax: 212-885-4998

March 24, 2003


David T. Austern, Esquire
Claims Resolution Management Corp.
8260 Willow Oaks Corporate Drive, Suite 600
Fairfax, Virginia 22031

Dear Mr. Austern:

As you know, by letter dated December 5, 2002 (the "Pre-Petition Agreement"), Swidler Berlin Shereff Friedman, LLP ("SBSF"), your legal counsel in connection with Combustion Engineering, Inc. (the "Company"), retained CIBC World Markets Corp. ("CIBC" or "Financial Advisor") to act as financial advisor in connection with the legal advice SBSF provides to you. In accordance with the terms of the Pre-Petition Agreement, the Company, among other things, promised to pay CIBC's fees and to provide CIBC with certain indemnification rights. This will confirm that, in connection with your appointment by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") as the future representative for holders of future asbestos related claims and/or demands against the Company (the "Futures Representative"), you desire to retain CIBC, effective as of February 17, 2003, the date the Company filed its bankruptcy case, to continue the work it conducted under the Pre-Petition Agreement on your behalf prior to the Company's bankruptcy filing, on substantially the same terms and conditions as set forth in the Pre-Petition Agreement.

This letter agreement (the "Agreement") confirms that, effective as of February 17, 2003, you, as the Futures Representative to the Company, agree to retain, subject to approval of the Bankruptcy Court, CIBC to act as the Futures Representative's financial advisor in connection with a proposed restructuring of the Company and implementation of a trust as contemplated under Section 524(g) of the Bankruptcy Code (the "Transaction") in conjunction with ABB Ltd., the ultimate parent company of the Company, and its affiliates (collectively, "ABB"). You will undertake to apply to the Bankruptcy Court, which has jurisdiction over the Company's chapter 11 bankruptcy proceeding, for authorization to employ CIBC in accordance with the terms and conditions of this Agreement, with this Agreement attached as an exhibit to such application. Subject to the terms and conditions hereof, CIBC agrees to accept as compensation for the services that CIBC renders pursuant to the terms hereof such sums as may be allowed by the Bankruptcy Court for fees incurred for professional services and for reimbursement of reasonable and necessary expenses.

CIBC World Markets Corp

1.    Retention.    Subject to approval by the Bankruptcy Court, the Futures Representative hereby retains CIBC to continue its pre-petition work in connection with the analysis of the financial position, cash flow requirements, financial history, operations, competitive environment, and assets of the Company and ABB. Additionally, CIBC will evaluate the financial effect of the implementation of any plan of reorganization upon the operations, assets and securities of the Company and ABB including, but not limited to, the liquidity and creditworthiness of ABB, its bank and public bond debt and the common stock of ABB. CIBC will also assist the Futures Representative in the negotiation of items remaining outstanding from CIBC's pre-petition work, finalizing the terms of the Debtor's proposed plan of reorganization and related plan documents, as well as confirmation and implementation of the Debtor's pre-packaged plan.

2.    Staffing.    The Futures Representative and CIBC agree that this engagement will be primarily staffed by Joseph J. Radecki, Jr., so long as he continues to be employed by CIBC. CIBC will also provide appropriate levels of staffing to complete the engagement in a timely and commercially reasonable manner.

3.    Information on the Company.    In connection with the Financial Advisor's activities hereunder, the Company and ABB will furnish to us upon request all material and information regarding the business and financial condition of the Company (all such information so furnished being the "Information"). It is recognized and confirmed that CIBC: (a) will use and rely primarily on the Information, and on information available from generally recognized public sources in performing the services contemplated by this letter without having independently verified the same; (b) does not assume responsibility for the accuracy or completeness of the Information and such other information; (c) will not make an appraisal of any assets of the Company; and (d) retains the right to continue to perform due diligence during the course of the engagement. The Financial Advisor will consider all work with respect to this matter to be confidential, and all work performed under the Pre-Petition Agreement between CIBC and SBSF shall remain protected from disclosure by, among other protections, the attorney-client privilege and/or the attorney work product doctrine. The Financial Advisor shall not disclose any such information to any other person or entity, except as expressly permitted pursuant to the separate confidentiality agreement executed contemporaneously herewith

4.    Use of Name    The Futures Representative and the Company agree that any reference to the Financial Advisor in any release or communication or materials distributed is subject to the Financial Advisor's prior written approval, unless such release or communication is required by law or regulation. If the Financial Advisor resigns prior to the dissemination of any such release, communication or material, no reference shall be made therein to the Financial Advisor.

March 24, 2003
Page 3 of 9

CIBC World Markets Corp.

5.    Use of Advice.  No advice rendered by the Financial Advisor in connection with the services performed by the Financial Advisor pursuant to this Agreement will be quoted by the Futures Representative or the Company, nor will any such advice be referred to, in any report, document, release or other communication, whether written or oral, prepared, issued or transmitted by the Futures Representative, the Company or person or corporation controlling, controlled by or under common control with the Company or any director, officer, employee, agent or representative of the Company, without the prior written authorization of the Financial Advisor, except to the extent required by law (in which case the appropriate party shall so advise the other in writing prior to such use and shall consult with the other with respect to the form and timing of disclosure), provided that the foregoing shall not prohibit appropriate internal communication or reference with respect to such advice internally within such parties.

6.    Compensation   In full payment for services rendered and to be rendered hereunder by CIBC, CIBC shall be paid in cash by the Company as follows, in addition to the payments received by CIBC pursuant to the Pre-Petition Agreement prior to the Company's bankruptcy filing:

(a)    Subject to approval by the Bankruptcy Court, a cash fee of $25,000 for each month beginning with March 2003, until the month of the confirmation of a restructuring plan.

(b)    Subject to approval by the Bankruptcy Court, a cash fee of $75,000 for the month of the confirmation of a restructuring plan.

CIBC and the Futures Representative acknowledge that the compensation proposed has been accepted by all parties based on their understanding of the proposed Transaction. Should such Transaction not be implemented by June 30, 2003, all parties agree that they will seek to mutually agree, if possible, on an alternative compensation arrangement.

7.    Expenses.  Without in any way reducing or affecting the provisions of Exhibit A hereto, subject to approval by the Bankruptcy Court, the Company shall reimburse CIBC for its reasonable out-of-pocket expenses incurred in connection with the provision of services hereunder.  Out-of-pocket expenses shall include, but not be limited to, travel and lodging, data processing and communication charges, and research and courier services.

8    Liability for Fees and Expenses.  Subject to approval by the Bankruptcy Court, the Company shall be solely responsible for the payment of compensation and reimbursement of expenses to CIBC under this Agreement.  The Futures Representative shall not be liable for the payment of any compensation or reimbursement of any expenses to CIBC hereunder

Appendix 159

CIBC World Markets Corp.

9.   Termination Provision.  This Agreement will be effective as of the date set out on the first page hereof.  CIBC may resign at any time for cause (including the Company's failure to pay compensation or reimburse expenses as and when due), and the Futures Representative may terminate CIBC's services at any time after the first three (3) months, each by giving 30 days notice to the other.  If the Futures Representative terminates CIBC's services for any reason, CIBC shall be entitled to receive all of the amounts due pursuant to Sections 6 and 7 hereof, up to and including the effective date of such termination.  If CIBC resigns, CIBC shall be entitled to receive all of the amounts pursuant to Sections 6 and 7 hereof, up to and including the effective date of such resignation.

10.   Indemnification.  Subject to approval by the Bankruptcy Court, the Company agrees to indemnify CIBC in accordance with Schedule A annexed hereto, which confirms and continues the Company's indemnity obligations under the Pre-Petition Agreement.

11   Survival of Certain Provisions.  The indemnifications provided in Schedule A of this Agreement shall remain operative and in full force and effect regardless of (a) any investigation made by or on behalf of the Financial Advisor, or by or on behalf of any affiliate of the Financial Advisor or any person controlling either, (b) the resignation of the Financial Advisor or any termination of the Financial Advisor's services or (c) any termination of this Agreement, and shall be binding upon, and shall inure to the benefit of, any successors, assigns, heirs and personal representatives of the Company and the Financial Advisor.

12   Notices.  Notice given pursuant to any of the provisions of this Agreement shall be in writing and shall be mailed or delivered (a) if to the Futures Representative, at the address listed above; (b) if to CIBC, at the address of CIBC at 425 Lexington Avenue, 3rd Floor, New York, New York 10017, Attention:  Joseph J. Radecki, Jr., Managing Director and (c) if to the Company, at 2000 Day Hill Road, Windsor, Connecticut 06095.

13.   Counterparts.  This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

14   Assignment.  This Agreement may not be assigned by any party hereto without the prior written consent of the others, to be given in the sole discretion of the parties from whom such consent is being requested.  Any attempted assignment of this Agreement made without such consent may be void, at the option of the non-assignment parties.

March 24, 2003
Page 5 of 9

CIBC World Markets Corp

15.    Third Party Beneficiaries.  This Agreement has been and is made solely for the benefit of the parties hereto, and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Agreement.

16.    Construction.  This Agreement incorporates the entire understanding of the parties and supersedes all previous agreements relating to CIBC's post-petition engagement by the Futures Representative (except for obligations with respect to the confidentiality of documents) and shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to principles of conflicts of law.

17.    Headings.  The section headings in this Agreement have been inserted as a matter of convenience of reference and are not part of this Agreement.

18.    Press Announcements.  At any time after the effective date of a Transaction, the Futures Representative, the Company or the Financial Advisor may place an announcement in such newspapers and publication as it may choose.

19.    Amendment.  This Agreement may not be modified or amended except in a writing duly executed by the parties hereto.

Appendix 161

March 24, 2003
Page 6 of 9

CIBC World Markets Corp

Please sign and return an original and one copy of this letter to the undersigned to indicate your acceptance of the terms set forth herein, whereupon this letter and your acceptance shall constitute a binding agreement between the parties hereto as of the date first above written

Sincerely,

CIBC WORLD MARKETS CORP

By: _____
Joseph J. Radecki, Jr.
Managing Director

Accepted and Agreed:

_____
David T. Austern, Futures Representative

Combustion Engineering, Inc.

By: _____

Its: _____

## SCHEDULE A

Indemnity.  In consideration of CIBC's agreement to act on behalf of the Futures Representative, notwithstanding any limitations set forth herein, subject to approval by the Bankruptcy Court, the Company agrees to indemnify and hold harmless CIBC, its agents, employees, officers and directors, and any person who controls CIBC within the meaning of Section 15 of the Securities Act of 1933 (the "Act") or Section 20 of the Securities Exchange Act of 1934, as amended (each, an "Indemnified Party" and collectively, the "Indemnified Parties"), from and against any and all losses, claims, judgments, damages, liabilities and expenses (including, but not limited to, all reasonable legal expenses, and any and all other expenses incurred in investigating, preparing or defending against any action or proceeding, commenced or threatened, whether or not any Indemnified Party is a named party) to which, jointly or severally, they may become subject, which arise out of or are based upon or in connection with (i) any transaction contemplated by this Agreement and/or the Pre-Petition Agreement, the retention of CIBC under this Agreement and/or the Pre-Petition Agreement, the performance of services by CIBC hereunder, under the Pre-Petition Agreement, or any involvement or alleged involvement of CIBC in the Transaction, or (ii) any untrue statement of fact contained in any document furnished or made available by the Company, directly by the Company or through CIBC or otherwise, or any omission to state therein a material fact required to be stated therein or necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading.  Notwithstanding the foregoing, no Indemnified Party shall be entitled to indemnification under this Schedule A with respect to any action, suit or proceeding in which a final judgment (after all appeals or the expiration of time to appeal) is entered to the extent based upon his gross negligence or willful malfeasance ("Disabling Conduct") and any payment or reimbursement made to such Indemnified Party by the Company in connection with any such action or proceeding will be repaid by such Indemnified Party to the Company.

If any action or proceeding (including any governmental proceeding) is brought or asserted against an Indemnified Party in respect of which indemnity may be sought against the Company, such Indemnified Party shall promptly notify the Company in writing of the institution of such action or proceeding (with a copy to the Futures Representative)  Each Indemnified Party shall give the Company (with a copy to the Futures Representative) prompt notice upon becoming aware of any claim for which indemnity or contribution may be sought hereunder; failure to provide such notice will not, however, relieve the Company from any obligation or liability it has hereunder or otherwise, except to the extent such failure causes the Company to forfeit material rights. The Company, at its option, may assume the defense of any such claim with counsel reasonably satisfactory to CIBC, except if such Indemnified Party has been advised by counsel that, due to a conflict of interest or because there may be legal defenses available to such Indemnified Party that are different from or additional to defenses available to the Company, separate counsel for the Company and such Indemnified Party is advisable, in

CIBC World Markets Corp

which case the reasonable fees and expenses of CIBC's counsel shall be at the expense of the Company; provided, that, upon invoking such option the Company shall unconditionally and irrevocably commit in writing to bear all risk with respect to such claim and to keep such Indemnified Party informed of the progress of any such claim.

The Company agrees that, without the prior written consent of each of the relevant Indemnified Parties, it will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action or proceeding in respect of which indemnification could be sought hereunder (whether or not such Indemnified Parties are actual or potential parties to such claim, action or proceeding), (i) that involves any equitable relief that binds or purports to bind such Indemnified Parties and (ii) unless such settlement, compromise or consent includes an unconditional release for such Indemnified Parties from all liability arising out of such claim, action or proceeding. CIBC and each such Indemnified Party shall have the right to employ separate counsel in any such action and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of CIBC or such Indemnified Party unless (a) the Company has agreed to pay such fees and expenses, or (b) the Company shall have failed to assume the defense of such action or proceeding. Unless the Company fails to assume the defense of an action or proceeding, the Company shall not be liable for any settlement of any such action or proceeding effected without its written consent (which shall not be unreasonably withheld or delayed), but if the Company has failed to assume such defense, if such claim is settled with the Company's written consent, or if there be a final judgment for the plaintiff in any such action or proceeding, the Company agrees to indemnify and hold harmless CIBC and any such Indemnified Party from and against any loss, liability, damage or expense by reason of such settlement or judgment.

If the indemnification provided for in this Schedule A is unavailable to an Indemnified Party in respect of any losses, claims, damages, liabilities and expenses referred to herein or insufficient to hold an indemnified person harmless (other than by reason of such Person's Disabling Conduct), then the Company agrees that in lieu of indemnifying such Indemnified Party, it shall contribute to the amount paid or payable by such Indemnified Party as a result of such losses, claims, damages, liabilities and expenses (i) in such proportion as is appropriate to reflect the relative benefits received by it on the one hand and the Indemnified Party on the other from the services rendered under this Agreement or (ii) if the allocation provided by clause (i) above is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) above but also the relative fault of the Company on the one hand and of the Indemnified Party on the other in connection with the untrue statements or omissions or other actions (or alleged untrue statements, omissions or other actions) which resulted in such losses, claims, damages, liabilities and expenses, as well as any other relevant equitable considerations. The relative fault of the Company on the one hand and of the Indemnified Party on the other shall be determined by reference to, among other things, whether such untrue statements or omissions or other actions (or alleged untrue

statements, omissions or other actions) relate to information supplied by action taken by the Company on the one hand or by the Indemnified Party on the other and the relevant persons' relative intent, knowledge, access to information and opportunity to correct or prevent such untrue statements, omissions or actions. The amount paid or payable by a party as a result of the losses, claims, damages, liabilities and expenses referred to above shall be deemed to include any legal or other fees or expenses reasonably incurred by such party in connection with investigating or defending any action or claim. The Company and CIBC agree that it would not be just and equitable if contribution pursuant to this Schedule were determined by pro rata allocation or by any other method of allocation which does not take account of the equitable considerations referred to above.

The aforesaid indemnity and contribution agreements shall apply to any related activities engaged in by an Indemnified Party prior to this date and to any modification of CIBC's engagement hereunder, and shall remain in full force and effect regardless of any investigation made by or on behalf of CIBC or any of its agents, employees, officers, directors or controlling persons and shall survive the termination of this Agreement, the Pre-Petition Agreement, or the consummation of a Transaction. The Company agrees promptly to notify CIBC of the commencement of any litigation or proceeding against it or any of its directors, officers, agents or employees in connection with the transactions contemplated hereby. The agreements contained in this Schedule A shall remain in full force and effect following the completion or termination of CIBC's engagement hereunder and shall be in addition to any liability that the Company may otherwise have to CIBC and its agents, employees, officers, directors or controlling persons.

The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company, its owners, creditors or security holders for or in connection with advice or services rendered or to be rendered by CIBC pursuant to this Agreement, the Pre-Petition Agreement, the Transaction contemplated hereby or any Indemnified Party's actions or inactions in connection with any such advice, services or transactions except for liabilities (and related expenses) of the Company that are determined by a final judgment of a court of competent jurisdiction to have resulted primarily from such Indemnified Party's Disabling Conduct in connection with any such advice, actions, inactions or services.

# EXHIBIT B

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) |
| COMBUSTION ENGINEERING, INC., | ) |
| | ) |
| Debtor. | ) |
| | ) |

Chapter 11
Case No. 03-10495 (JKF)

## ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF CIBC WORLD MARKETS CORP. AS FINANCIAL ADVISOR TO DAVID T. AUSTERN AS FUTURE CLAIMANTS' REPRESENTATIVE PURSUANT TO SECTION 1103(a) OF THE BANKRUPTCY CODE

Upon the application (the "Application") of David T. Austern, Future Claimants' Representative ("Future Claimants' Representative") for the future asbestos claimants in the above-captioned chapter 11 case of Combustion Engineering, Inc. (the "Debtor"), seeking entry of an Order under section 1103(a) of the Bankruptcy Code authorizing the Future Claimants' Representative to employ and retain CIBC World Markets Corp. ("CIBC") as financial advisor to the Future Claimants' Representative; and the Court having reviewed the Application, the Declaration of Joseph J. Radecki, Jr., a Managing Director of CIBC, and the Court being satisfied with the representations made in the Application that CIBC represents no interest adverse to the Future Claimants' Representative on the matters upon which CIBC is to be engaged; and it appearing that the relief requested is in the best interest of the Future Claimants' Representative and the Debtor's estate, its creditors and other parties-in-interest; and it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. § 158(a); and it appearing that notice of the Application was good and sufficient under the particular circumstances and that no other or further notice need be given and upon the record herein; and it appearing that the terms and conditions of CIBC's employment as further described in the Application are reasonable and necessary; it is hereby

*Appendix 167*

**ORDERED, ADJUDGED AND DECREED THAT:**

1    The Application be, and it hereby is, approved;

2.    Pursuant to section 1103(a) of the Bankruptcy Code, the Future Claimants'
Representative be, and he hereby is, authorized to employ and retain CIBC as financial advisor
effective as of February 17, 2003, upon the terms, and to perform the services, set forth in the
Application, the Post-Petition Engagement Agreement (as defined in the Application) and
Declaration;

3.    The indemnification provisions of the Post-Petition Engagement Agreement are
approved, subject to the following:

(a)    subject to the provisions of subparagraph (b) below, the Debtor is
authorized to and shall indemnify, defend and hold any Indemnified Party (as defined in the Post-
Petition Engagement Agreement) harmless from and against any and all losses, claims,
judgments, damages, liabilities and expenses (including, but not limited to, all reasonable legal
expenses, and any and all other expenses incurred in investigating, preparing or defending against
any action or proceeding, commenced or threatened, whether or not any Indemnified Party is
named) which arise out of or are based upon or in any connection with (i) any transaction
contemplated by the Post-Petition Engagement Agreement and/or the Pre-Petition Engagement
Agreement (as defined in the Application), the retention of CIBC under the Post-Petition
Engagement Agreement and/or the Pre-Petition Engagement Agreement, the performance of
services by CIBC under the Post-Petition Engagement Agreement, the Pre-Petition Engagement
Agreement, or any involvement or alleged involvement of CIBC in the Debtor's proposed plan,
or (ii) any untrue statement of fact contained in any document furnished or made available by the
Debtor, directly by the Debtor or through CIBC or otherwise, or any omission to state therein a

2

material fact required to be stated therein or necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading

(b)      notwithstanding any provisions of the Post-Petition Engagement Agreement to the contrary, no Indemnified Party shall have such indemnification rights with respect to any action, suit or proceeding in which a final judgment (after all appeals or the expiration of time to appeal) is entered to the extent based upon his gross negligence or willful malfeasance and any payment or reimbursement made to such Indemnified Party by the Debtor in connection with any such action or proceeding will be repaid by such Indemnified Party to the Debtor;

(c)      if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this case (that order having become a final order and no longer subject to appeal), and (ii) the entry of an order closing this chapter 11 case, an Indemnified Party believes that he, she or it is entitled to payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution and/or reimbursement obligations under this Order, including, without limitation, the advancement of defense costs, such Indemnified Party must file an application for such amounts in this Court, and the Debtor may not pay any such amounts to the Indemnified Party before the entry of an order by this Court approving the payment. The preceding sentence is intended to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by an Indemnified Party for indemnification, contribution or reimbursement, and is not a limitation on the duration of the Debtor's obligation to indemnify any Indemnified Party;

(d)      in the event that a cause of action is asserted against an Indemnified Party arising out of or relating to the performance of his, her or its duties as financial advisor to the Future Claimants' Representative, the Indemnified Party shall have the right to choose his own counsel;

3

4.    CIBC shall be compensated in accordance with the terms of the Post-Petition Engagement Agreement, subject to the procedures set forth in the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules and any orders of this Court; provided, however, that CIBC may submit records in a summary format which shall set forth a description of the work performed by each professional rendering services on behalf of the Future Claimants' Representative and, therefore, the information requirements of Del. Bankr LR 2016-2 are hereby modified and waived, to the extent necessary, with respect to CIBC. Notwithstanding anything to the contrary herein or in the Post-Petition Engagement Agreement, all of CIBC's fees and expenses shall be subject to approval by the Court under a reasonableness standard upon proper application by CIBC; provided, however, that the approval of the reasonableness of CIBC's fees shall not be evaluated on an hourly or length of case based criteria;

5.    The fees and expenses of CIBC allowed by the Court shall be an administrative expense of the Debtor's estate; and

6.    Nothing in this Order authorizes, approves or affects liability for transfers that are made or may be avoidable under 11 U.S.C. §§ 544-550 inclusive.


_____
Judith K. Fitzgerald
United States Bankruptcy Judge


Dated: Wilmington, Delaware
_____, 2003


4

7126765v1