# TAB 7

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
                                        )
In re:                                  )       Chapter 11
                                        )       Case No. 03-10495 (JKF)
COMBUSTION ENGINEERING, INC.,           )
                                        )       Objection Deadline: 7/21/03 at 4:00 p.m.
            Debtor.                     )       Hearing Date: 8/22/03 at 1:00 p.m.
                                        )
```

## APPLICATION FOR AN ORDER AUTHORIZING EXTENSION OF THE RETENTION AND EMPLOYMENT OF CIBC WORLD MARKETS CORP. AS FINANCIAL ADVISOR TO DAVID T. AUSTERN AS FUTURE CLAIMANTS' REPRESENTATIVE PURSUANT TO SECTION 1103(a) OF THE BANKRUPTCY CODE

Pursuant to Section 1103(a) of Title 11 of the United States Code (the "Bankruptcy Code"), David T. Austern, Future Claimants' Representative for the future asbestos claimants in the above-captioned case (the "FCR"), submits this application (the "Application") for the entry of an Order authorizing and approving the extension of the retention and employment of CIBC World Markets Corp. ("CIBC") as financial advisor to the FCR. In support of this Application, the FCR respectfully represents as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this proceeding and with respect to this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      The statutory basis for the relief sought herein is Section 1103(a) of the Bankruptcy Code.

## Background and Status of the Debtor's Case

3.    On February 17, 2003 (the "Petition Date"), Combustion Engineering, Inc. (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4.    On February 19, 2003, the Debtor filed its pre-packaged disclosure statement and plan of reorganization (the "Plan"). In response to the Debtor's request for expedited consideration of its Plan, the Court held the confirmation hearing on the Debtor's Plan over several days in April and May, 2003. As part of the confirmation hearing, the Court heard testimony from Joseph J. Radecki, Jr., a Managing Director of CIBC. The record for the confirmation hearing is closed and the Court recently issued its rulings.

5.    Prior to the Petition Date, in connection with his due diligence and analysis of the Plan and related documents, the FCR retained CIBC to provide financial advisory services with respect to the financial condition of the Debtor's ultimate corporate parent, ABB Ltd. ("ABB"), and the value of certain securities of ABB being offered to the asbestos claims settlement trust to be formed under the Debtor's proposed plan.

6.    On April 22, 2003, the Court authorized the FCR to continue to retain and employ CIBC to provide post-petition financial services in connection with the Debtor's chapter 11 case. The terms and conditions of CIBC's continued employment were mutually agreed upon by letter dated March 24, 2003 (the "Retention Letter") and were approved by the Court in the Order entered on April 22, 2003 (Docket No. 603).

7.    At the time the Retention Letter was signed, all parties expected the Debtor's chapter 11 case and implementation of a trust as contemplated under Section 524(g) of the Bankruptcy Code (the "Transaction") to continue on a fast track. Enumerated paragraph six of the Retention Letter includes a provision that, in the event such Transaction were not

A p p e n d i x  1 7 6

implemented by June 30, 2003, all parties may agree to an alternative compensation agreement. A copy of the Retention Letter is attached hereto as Exhibit A.

8.     Under the Retention Letter, CIBC was to be paid $25,000 each month beginning in March 2003 until the month of the confirmation of a restructuring plan and $75,000 for the month of confirmation. The confirmation process and hearing was more extended than the FCR and the Debtor had anticipated and the Transaction will not be implemented by June 30, 2003. However, CIBC incurred significant time and expense in April and May 2003 in connection with Mr. Radecki's testimony at deposition and at the confirmation hearing before this Court.

9.     The FCR continues to need financial advice during the pendency of the Debtor's chapter 11 proceedings, and CIBC is well suited to provide such advice because of its familiarity with the Debtor's business and financial affairs. Specifically, the FCR anticipates a need for CIBC's services as these proceedings continue, including any confirmation hearing before the United States District Court and preparing for the effective date of the Debtor's plan. Accordingly, the parties seek to extend the terms and conditions of the Retention Letter and to modify the terms of CIBC's compensation. A copy of the amended retention letter between the FCR and CIBC (the "Amended Retention Letter") is attached hereto as Exhibit B.

10.     The Amended Retention Letter sets out a compensation arrangement that is essentially a continuation of the arrangement established in the Retention Letter. The compensation set forth in the Retention Letter for March and April 2003 remains the same. From May 1, 2003 forward, the Amended Retention Letter provides that CIBC shall be paid in cash by the Debtor, as full payment for services rendered and to be rendered, as follows:

    a.    $75,000 for the month of May, 2003—the month in which Mr. Radecki testified at the confirmation hearing;

    b.    $25,000 for each month beginning with June, 2003, except as provided in item (c) below, until the month of the effective date of a Chapter 11 plan of reorganization for the Company; and

3

c.    $75,000 for the month in which a confirmation hearing occurs before the United States District Court.

11.    If the United States District Court confirms the Debtor's plan of reorganization and/or affirms this Court's confirmation order, the FCR anticipates a need for CIBC's services in connection with the closing of the transactions contemplated by the plan. Accordingly, the parties have agreed that CIBC will be entitled to continue to receive compensation of $25,000 for each month after the confirmation date through and including the month in which the effective date of the plan occurs.

12.    If, after the confirmation date and before the effective date under the plan, CIBC's level of activity decreases and the plan and the transactions contemplated by the plan are not consummated (whether as a result of a stay, the parties not waiving conditions to the effective date, or otherwise), the FCR and the Debtor each reserves the right to request that the Court adjust CIBC's monthly compensation prospectively, subject to prior consultation among the parties and CIBC.

### Relief Requested

13.    By this Application, the FCR respectfully requests an order authorizing him, pursuant to Section 1103(a) of the Bankruptcy Code, to extend the retention and employment of CIBC as financial advisor to the FCR. Given that the Transaction will not be implemented by June 30, 2003, the FCR has asked CIBC to continue the work they performed both pre and post-petition. The FCR and CIBC have mutually agreed to extend and modify CIBC's retention as set forth in the Amended Retention Letter, and the Debtor has concurred, subject to the terms of this Application and to the Court's approval.

4

### Basis for the Relief Sought

14.     As a result of its pre and post petition work, CIBC is familiar with ABB's business, operations and management, and financial affairs, as well as the Debtor's proposed plan of reorganization and the other plan documents. Accordingly, the FCR believes the continued retention of and compensation to CIBC is important to the FCR's role in the case, that CIBC is well suited to assist the FCR as his financial advisor during the chapter 11 process, and that the continued retention of CIBC is necessary and in the best interests of the FCR, the Debtor, its estate and its creditors.

### No Prior Request

15.     Except for the original application to employ CIBC, no prior application for the relief sought herein has been made to this or any other Court.

### Notice

16.     Notice of this Motion has been provided to: (1) counsel for the Debtor; (2) the Office of the United States Trustee; (3) counsel for the Official Committee of Unsecured Creditors; and (4) any party who has entered their appearance in this case as of July __, 2003, pursuant to Bankruptcy Rule 2002. Accordingly, the FCR believes that such notice of the Application is appropriate and sufficient.

### Conclusion

WHEREFORE, the FCR respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit C: (1) granting this Application; (2) authorizing the FCR to continue to retain and employ CIBC pursuant to the terms and conditions of the Retention Letter and the Amended Retention Letter as his financial advisor in this chapter 11 case pursuant to Section 1103(a) of the Bankruptcy Code, in accordance with the terms set forth in this Application; and (3) granting such other and further relief as is appropriate.

Respectfully submitted,

PHILLIPS, GOLDMAN & SPENCE, P.A.

By: _____
John C. Phillips, Jr., Esquire (#110)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
(302) 655-4210 (fax)

Roger Frankel, Esquire
Richard H. Wyron, Esquire
SWIDLER BERLIN SHEREFF FRIEDMAN LLP
3000 K Street, NW, Suite 300
Washington, DC  20007
(202) 424-7500

Dated:  July 2, 2003          Bankruptcy Counsel to David T. Austern
                              As Future Claimants' Representative

6

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **COMBUSTION ENGINEERING, INC.,** | ) | **Case No. 03-10495 (JKF)** |
| | ) | |
| Debtor. | ) | Objection Deadline: 7/21/03 at 4:00 p.m. |
| | ) | Hearing Date: 8/22/03 at 1:00 p.m. |

**NOTICE OF APPLICATION FOR AN ORDER AUTHORIZING EXTENSION OF
THE RETENTION AND EMPLOYMENT OF CIBC WORLD MARKETS CORP.
AS FINANCIAL ADVISOR TO DAVID T. AUSTERN AS FUTURE
CLAIMANTS' REPRESENTATIVE, PURSUANT TO SECTION 1103(a)
OF THE BANKRUPTCY CODE**

David T. Austern, as Claimants' Representative for the future asbestos claimants in the above-captioned case (the "Claimants' Representative") has submitted an Application for an Order Authorizing Extension of the Retention and Employment of CIBC World Markets Corp. as Financial Advisor to David T. Austern as Claimants' Representative, pursuant to Section 1103(a) of the Bankruptcy Code (the "Application").

You are required to file a response to the attached Application on or before July 21, 2003, and serve it on the following:

> John C. Phillips, Jr., Esquire
> Phillips, Goldman & Spence, P.A.
> 1200 North Broom Street
> Wilmington, DE 19806
> Local Bankruptcy Counsel to David T. Austern
> As Future Claimants' Representative
>
> Laura Davis Jones, Esquire
> Pachulski Stang Ziehl Young Jones & Weintraub, PC
> 919 North Market Street, 16th Floor
> P.O. Box 8705
> Wilmington, DE  19899-8705
> Counsel to the Debtor
>
> Richard L. Schepacarter, Esquire
> Office of the United States Trustee
> 844 N. King Street, 2nd Floor
> Wilmington, DE  19801

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED BY THE APPLICATION WITHOUT FURTHER NOTICE OR HEARING.

PHILLIPS, GOLDMAN & SPENCE, P.A.

JOHN C. PHILLIPS, JR., ESQUIRE (#110)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
(302) 655-4210 (fax)
Local Bankruptcy Counsel to
David T. Austern as Future Claimants'
Representative

Dated: July 2, 2003

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| **In re:** | ) | |
| | ) | **Chapter 11** |
| **COMBUSTION ENGINEERING, INC.,** | ) | **Case No. 03-10495 (JKF)** |
| | ) | |
| **Debtor.** | ) | |
| | ) | |

## ORDER AUTHORIZING EXTENSION OF THE RETENTION AND EMPLOYMENT OF CIBC WORLD MARKETS CORP. AS FINANCIAL ADVISOR TO DAVID T. AUSTERN AS FUTURE CLAIMANTS' REPRESENTATIVE PURSUANT TO SECTION 1103(a) OF THE BANKRUPTCY CODE

Upon the application (the "Application") of David T. Austern, Future Claimants' Representative (the "FCR") for the future asbestos claimants in the above-captioned chapter 11 case of Combustion Engineering, Inc. (the "Debtor"), seeking entry of an Order under section 1103(a) of the Bankruptcy Code authorizing the FCR to extend the retention and employment of CIBC World Markets Corp. ("CIBC") as financial advisor to the FCR; and the Court having reviewed the Application, and the Court being satisfied with the representations made in the Application; and it appearing that the relief requested is in the best interest of the FCR and the Debtor's estate, its creditors and other parties-in-interest; and it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. § 158(a); and it appearing that notice of the Application was good and sufficient under the particular circumstances and that no other or further notice need be given and upon the record herein; and it appearing that the terms and conditions of CIBC's continued employment as further described in the Application are reasonable and necessary; it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1. The Application be, and it hereby is, approved;

7

2.      Pursuant to Section 1103(a) of the Bankruptcy Code, the FCR be, and he hereby

is, authorized to extend the retention and employment of CIBC as financial advisor through and

including the month of the effective date on the Debtor's plan, upon the terms and conditions set

forth in the Application, the Retention Letter and the Amended Retention Letter (each as defined

in the Application), so long as David T. Austern serves as the legal representative for individuals

who may assert asbestos-related claims and/or demands in the future against the Debtor;

3.      The indemnification provisions of the Retention Letter are approved, subject

during the pendency of the Debtor's bankruptcy case to the following:

(a)      subject to the provisions of subparagraph (b) below, the Debtor is

authorized to and shall indemnify, defend and hold harmless any Indemnified Party (as defined

in the Retention Letter) in accordance with the Retention Letter, provided, however, that

indemnification therefore is approved by the Court;.

(b)      notwithstanding any provisions of the Retention Letter to the contrary, the

Debtor shall have no obligation to indemnify an Indemnified Party or provide contribution or

reimbursement to an Indemnified Party for any claim or expense that is either (i) judicially

determined to have resulted primarily from the willful misconduct, gross negligence, bad faith or

self-dealing of an Indemnified Party, or (ii) settled prior to a judicial determination as to an

Indemnified Party's willful misconduct, gross negligence, bad faith or self-dealing, but

determined by the Court, after notice and a hearing pursuant to paragraph (c) below, to be a

claim or expense for which an Indemnified Party should not receive indemnity, contribution or

reimbursement under the terms of the Retention Letter as modified by this Order;

(c)      if, before the earlier of (i) the entry of an order confirming a chapter 11

plan in this case (that order having become a final order and no longer subject to appeal), and

(ii) the entry of an order closing this chapter 11 case, an Indemnified Party believes that he, she

8

or it is entitled to payment of any amounts by the Debtor on account of the Debtor's

indemnification, contribution and/or reimbursement obligations under this Order, including,

without limitation, the advancement of defense costs, such Indemnified Party must file an

application for such amounts in this Court, and the Debtor may not pay any such amounts to the

Indemnified Party before the entry of an order by this Court approving the payment. The

preceding sentence is intended to specify the period of time under which this Court shall have

jurisdiction over any request for fees and expenses by an Indemnified Party for indemnification,

contribution or reimbursement, and is not a limitation on the duration of the Debtor's obligation

to indemnify any Indemnified Party;

       (d)     in the event that a cause of action is asserted against an Indemnified Party

arising out of or relating to the performance of his, her or its duties as financial advisor to the

FCR, the Indemnified Party shall have the right to choose his own counsel;

     4.    CIBC shall be compensated in accordance with the terms of the Retention Letter

and the Amended Retention Letter, subject to the procedures set forth in the Bankruptcy Code,

the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules and any orders of this

Court, including the administrative order establishing procedures for interim compensation for

professionals (Docket No. 228); provided, however, that CIBC may submit records in a

summary format which shall set forth a description of the work performed by each professional

rendering services on behalf of the FCR and, therefore, the information requirements of Del.

Bankr. LR 2016-2 are hereby modified and waived, to the extent necessary, with respect to

CIBC. Notwithstanding anything to the contrary herein or in the Retention Letter or the

Amended Retention Letter, all of CIBC's fees and expenses shall be subject to approval by the

Court under a reasonableness standard upon proper application by CIBC; provided, however,

that the approval of the reasonableness of CIBC's fees shall not be evaluated on an hourly or

length of case based criteria;

5.    The fees and expenses of CIBC allowed by the Court shall be an administrative

expense of the Debtor's estate;

6.    This Court retains jurisdiction with respect to all matters arising from or related to

the implementation of this Order; and

7.    Nothing in this order authorizes, approves or affects liability for transfers that are

or may be avoidable under 11 U.S.C. §§ 544-550 inclusive.


_____
Judith K. Fitzgerald
United States Bankruptcy Judge


Dated: Wilmington, Delaware
        _____, 2003

**Appendix 186**



CIBC World Markets Corp
125 Lexington Avenue
New York, NY 10017
Tel: 212-885-1400
Fax: 212-885-1998

March 24, 2003

David T Austern, Eesquire
Claims Resolution Management Corp.
8260 Willow Oaks CCorporate Drive, Suite 600
Fairfax, Virginia 22031

Dear Mr. Austern:

As you knoww, by letter dated December 5, 2002 (the "PPre-Petition Agreement"), Swidler Berlin Shereff Frieddman. LLP ("SBSF"), your legal counscel in connection with Combustion Engineering, Inc (thhe "Company"), retained CIBC World Maarkets Corp ("CIBC" or "Financial Advisor") to act as ffinancial advisor in connection with the leegal advice SBSF provides to you In accordance with t the terms of the Pre-Petition Agreement, t the Company, among other things, promised to pay CIB3C's fees and to provide CIBC with certairn indemnification rights. This will confirm that, in connnection with your appointment by the Unitaed States Bankruptcy Court for the District of Delaware: (the "Bankruptcy Court") as the future reepresentative for holders of future asbestos related claimms and/or demands against the Company ((the "Futures Representative"), you desire to retain CIEBC, effective as of February 17, 2003,. the date the Company filed its bankruptcy case, to  continue the work it conducted under thee Pre-Petition Agreement on your behalf prior to the CCompany's bankruptcy filing, on substantiaally the same terms and conditions as set forth in the Prce-Petition Agreement

This letter agreement (the "Agreement") confirms that. , effective as of February 17, 2003. you, as the Futures IRepresentative to the Company, agree to | retain, subject to approval of the Bankruptcy Court, CCIBC to act as the Futures Representative''s financial advisor in connection with a proposed restiructuring of the Company and implemenntation of a trust as contemplated under Section 524(g),) of the Bankruptcy Code (the "Transactioon") in conjunction with ABB Ltd, the ultimate parent ccompany of the Company, and its affiliatess (collectively, "ABB") You will undertake to apply tco the Bankruptcy Court, which has jurisdiiction over the Company's chapter 11 bankruptcy prooceeding, for authorization to employ CIBC  in accordance with the terms and conditions of this Agggreement, with this Agreement attached :as an exhibit to such application Subject to the termss and conditions hereof, CIBC agrees too accept as compensation for the services that CIBC rrenders pursuant to the terms hereof suchh sums us may be allowed by the Bankruptcy Court Ifor fees incurred for professional servvices and for reimbursement of reasonable and necesssaary expenses



**EXHIBIT**

A

CIBC World Markets Corp

1    Retention    Subject to approval by the Bankruptcy Court, the Futures Representative hereby retains CIBC to continue its pre-petition work in connection with the analysis of the financial position, cash flow requirements, financial history, operations, competitive environment, and assets of thee Company and ABB. Additionally, CIBC will evaluate the financial effect of the implementation of any plan of reorganization upon the operations, assets and securities of the Company and ABB including, buut not limited to, the liquidity and creditworthiness of ABB, its bank and public bond debt and the common stock of ABB    CIBC will also assist the Futures Representative in the negotiation of items remaining outstanding from CIBC's pre-petition work, finalizing the terms of the Debtor's proposed plan of reorganization and related plan documents, as well as confirmation and implementation of the Debtor's pre-packaged plan

2.    Staffing    The Futures Representative and CIBC agree that this engagement will be primarily staffed by Joseph J Radecki, Jr, so long as he continues to be employed by CIBC  CIBC will also provide appropriate levels of staffing to complete the engagement in a timely and commercially reasonable manner

3    Information on the Company    In connection with the Financial Advisor's activities hereunder, the Company and ABB will furnish to us upon request all material and information regarding the business and financial condition of the Company (all such information so furnished being the "Information")  It is recognized and confirmed that CIBC: (a) will use and rely primarily on the Information, and on information available from generally recognized public sources in performing the services contemplated by this letter without having independently verified the same; (b) does not assume responsibility for the accuracy or completeness of the Information and such other information; (c) will not make an appraisal of any assets of the Company; and (d) retains the right to continue to perform due diligence during the course of the engagement  The Financial Advisor will consider all work with respect to this matter to be confidential, and all work performed under the Pre-Petition Agreement between CIBC and SBSF shall remain protected from disclosure by, among other protections, the attorney-client privilege and/or the attorney work product doctrine  The Financial Advisor shall not disclose any such information to any other person or entity, except as expressly permitted pursuant to the separate confidentiality agreement executed contemporaneously herewith

4    Use of Name    The Futures Representative and the Company agree that any reference to the Financial Advisor in any release or communication or materials distributed is subject to the Financial Advisor's prior written approval, unless such release or communication is required by law or regulation  If the Financial Advisor resigns prior to the dissemination of any such release communication or material, no reference shall be made therein to the Financial Advisor

CIBC World Markets Corp

5    Use of Advice   No advice rendered by the Financial Advisor in connection with the services performed by the Financial Advisor pursuant to this Agreement will be quoted by the Futures Representative or the Company, nor will any such advice be referred to, in any report, document, release or other communication, whether written or oral, prepared, issued or transmitted by the Futures Representative, the Company or person or corporation controlling, controlled by or under common control with the Company on any director, officer, employee, agent or representative of the Company, without the prior written authorization of the Financial Advisor, except to the extent required by law (in which case the appropriate party shall so advise the other in writing prior to such use and shall consult with the other with respect to the form and timing of disclosure), provided that the foregoing shall not prohibit appropriate internal communication or reference with respect to such advice internally within such parties

6    Compensation   In full payment for services rendered and to be rendered hereunder by CIBC, CIBC shall be paid in cash by the Company as follows, in addition to the payments received by CIBC pursuant to the Pre-Petition Agreement prior to the Company's bankruptcy filing:

   (a)    Subject to approval by the Bankruptcy Court, a cash fee of $25,000 for each month beginning with March 2003, until the month of the confirmation of a restructuring plan.

   (b)    Subject to approval by the Bankruptcy Court, a cash fee of $75,000 for the month of the confirmation of a restructuring plan

CIBC and the Futures Representative acknowledge that the compensation proposed has been accepted by all parties based on their understanding of the proposed Transaction Should such Transaction not be implemented by June 30, 2003, all parties agree that they will seek to mutually agree, if possible, on an alternative compensation arrangement

7    Expenses   Without in any way reducing or affecting the provisions of Exhibit A hereto, subject to approval by the Bankruptcy Court, the Company shall reimburse CIBC for its reasonable out-of-pocket expenses incurred in connection with the provision of services hereunder   Out-of-pocket expenses shall include, but not be limited to, travel and lodging, data processing and communication charges, and research and courier services

8    Liability for Fees and Expenses.   Subject to approval by the Bankruptcy Court, the Company shall be solely responsible for the payment of compensation and reimbursement of expenses to CIBC under this Agreement   The Futures Representative shall not be liable for the payment of any compensation or reimbursement of any expenses to CIBC hereunder

March 24, 2003
Page 4 of 9

CIBC World Markets Corp

9    Termination Provision  This Agreement will the effective as of the date set out on the first page hereof  CIBC may resign at any time f for cause (including the Company's failure to pay compensation or reimburse expenses (as and when due), and the Futures Representatiive may terminate CIBC's services at any time after the first three (3) months, each by giving 30 days notice to the other  If the Futures Representative terminates CIBC's services for any reason, CIBC shall be entitled to receive all of the amounts due pursuant to Sections 6 and 7 hereof, up to and including the effective date of such termination  If CIBC resigns, CIBC shall be entitled to receive all of the amounts pursuant to Sections 6 and 7 hereof, up to and including the effective date of such resignation

10    Indemnification   Subject to approval by thee Bankruptcy Court, the Company agrees to indemnify CIBC in accordance with Sschedule A annexed hereto, which confirms annd continues the Company's indemnity obligations under the Pre-Petition Agreement.

11    Survival of Certain Provisions  The indemnifications provided in Schedule A of this Agreemment shall remain operative and in full force and effect regardless of (a) any investigationn made by or on behalf of the Financial Advisor, or by or on behalf of any affiliate of tthe Financial Advisor or any person controlling either, (b) the resignation of the Financial Advisor or any termination of the Finanncial Advisor's services or (c) any termination of this Agreement, and shall be binding upon, and shall inure to the benefit of, any successors, assigns, heirs and personal representatives of the Company and the Financial Addvisor

12    Notices  Notice given pursuant to any of the  provisions of this Agreement shall be in writinng and shall be mailed or delivered (a) if too the Futures Representative, at the address listed above; (b) if to CIBC, at the address of (CIBC at 425 Lexington Avenue, 3rd Floor, New York, New York 10017, Attention:  Joseph I Radecki, Jr, Managing Director andd (c) if to the Company, at 2000 Day Hill Road, Windsor, Connecticut 06095

13    Counnterparts  This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an originnal, but all of which shall constitute one and the ssame instrument

14    Assignement  This Agreement may not be assigned by any party hereto without the prior wwritten consent of the others, to be given in the sole discretion of the parties from whom such consent is being requested  Aany attempted assignment of this Agreement nmade without such consent may be void, aat the option of the non-assignment parties

March 24, 2003
Page 5 of 9                                                        CIBC World Markets Corp

15    Third Party Beneficiaries.  This Agreement has been and is made solely for the benefit of the parties hereto, and their respective successors and assigns, and no other person shall l acquire or have any right under or by virtue of this Agreement

16    Construction  This Agreement incorporates thoe entire understanding of the parties and supersedes all previous agreements relating to CEIBC's post-petition engagement by the Futures I Representative (except for obligations wiith respect to the confidentiality of documents) ; and shall be governed by, and construed i in accordance with, the laws of the State of Neww York, without regard to priinciples of connflicts of law

17    Headdings  The section headings in this Agreerment have been inserted as a matter of conveniennce of reference and are not part of this Aggreement

18    Presss Announcements  At any time after the ceffective date of a Transaction, the Futures Reppresentative, the Company or the Ffinancial Advisor may place an announcemeent  in  such  newspapers  and  putblication  as  it  may  choose.

19    Amendment  This Agreement may not be imodified or amended except in a writing duly r executed by the parties hereto

March 24, 2003
Page 6 of 9                                                                                  CIBC World Markets Corp

Please sign  and return an original and one copy obf this letter to the undersigned to
indicate youur acceptance of the terms set forth herebin, whereupon this letter and your
acceptance sshall constitute a binding agreement betweeen the parties hereto as of the date
first above wwritten

                                                 Sincerely/,

                                                 CIBC WCORLD MARKETS CORP

                                          By: _____
                                                 Jooseph J. Radeckr, Jr
                                                 Mmanaging Director

Accepted annd Agreed:

_____
David T. Auustern, Futures Representative

Combustion ı Engineering, Inc

By: _____

Its: _____

CIBC World Markets Corp

## SCHEDULE A

Indemnity.    In consideration of CIBC's agreement to act on behalf of the Futures Representative, notwithstanding any limitations set florth herein. subject to approval by the Bankruptcy Court, the Company agrees to indemnify and hold harmless CIBC, its agents, employees, officers and directors. and any peerson who controls CIBC within the meaning of Section 15 of the Securities Act of 1933 (the "Act") or Section 20 of the Securities EExchange Act of 1934, as amended (eeach, an "Indemnified Party" and collectively,, the "Indemnified Parties"), from and aagainst any and all losses, claims, judgments, ddamages, liabilities and expenses (including, but not limited to, all reasonable legal expenses, and any and all other expenses incurred in investigating, preparing or defending against any action or proceeding, commenced or threatened, whether or not any Indemnified Party is a named party) to which. joiintly or severally, they may become subject, whiich arise out of or are based upon or in cconnection with (i) any transaction contemplated by this Agreement and/or the Pre-Pettition Agreement. the retention of CIBC underr this Agreement and/or the Pre-Petition Agreement, the performance of services by ı CIBC hereunder, under the Pre-Petition ، Agreement. or any involvement or alleged involvement of CIBC in the Transaction, onr (ii) any untrue statement of fact contained inı any document furnished or made availaable by the Company, directly by the Company orr through CIBC or otherwise, or any omisssion to state therein a material fact required to ł be stated therein or necessary to make tlhe statements contained therein, in light of the ccircumstances under which they were madde, not misleading. Notwithstanding the foregoinng, no Indemnified Party shall be entitłled to indemnification under this Schedule A ı with respect to any action, suit or proceediing in which a final judgment (after all appeals oor the expiration of time to appeal) is ennieied to the extent based upon his gross negligence or willful malfeasance ('Disablingg Conduct") and any payment or reimbursemeent made to such Indemnified Party by thee Company in connection with any such action cor proceeding will be repaid by such Inderrnnified Party to the Company

If any actioon or proceeding (including any govermmental proceeding) is brought or asserted agaainst an Indemnified Party in respect of I which indemnity may be sought against the ( Company, such Indemnified Party shall   promptly notify the Company in writing of tlhe institution of such action or proceediing (with a copy to the Futures Representatiive)   Each Indemnified Party shall give ı the Company (with a copy to the Futures Reppresentative) prompt notice upon becominng aware of any claim for which indemnity onr contribution may be sought hereunder; ffailure to provide such notice will not, howeverr. relieve the Company from any obligatiion or liability it has hereunder or otherwise, eexcept to the extent such failure causes the ( Company to forfeit material rights The Companny, at its option. may assume the defensse of any such claim with counsel reasonably ssatisfactory to CIBC, except if such Indemnified Party has been advised by counsel that, . due to a conflict of interest or becausee thcere may be legal defenses available to such Indemnified Party that are different fiom or addditional to defenses available to the Company; seppaiate counsel for the Compam and such I Indemnified Party is advisable. in

CIBC World Markets Corp

which case tthe reasonable fees and expenses of CIBC''s counsel shall be at the expense of the Ccompany; provided, that, upon invoking ssuch option the Company shall unconditionaally and irrevocably commit in writing tco bear all risk with respect to such claim and to> keep such Indemnified Party informed off the progress of any such claim

The Company agrees that, without the prior wriitten consent of each of the relevant Indemnified1 Parties, it will not settle, compromisee or consent to the entry of any judgment in1 any pending or threatened claim. action1 or proceeding in respect of which indemnificatttion could be sought hereunder (whether c or not such Indemnified Parties are actual or pootential parties to such claim, action or proceeding), (i) that involves any equitable reblief that binds or purports to bind such IIndemnified Parties and (ii) unless such settlenment, compromise or consent includes c an unconditional release for such Indemnified1 Parties from all liability arising out of ` such claim, action or proceeding CIBC and eaach such Indemnified Party shall have the : right to employ separate counsel in any such acttion and to participate in the defense theereof, but the fees and expenses of such counsebl shall be at the expense of CIBC or succh Indemnified Party unless (a) the Company haas agreed to pay such fees and expenses, odr (b) the Company shall have failed to assume thne defense of such action or proceeding UUnless the Company fails to assume the defense col an action or proceeding, the Company sshall not be liable for any settlement of any such r naction or proceeding effected without its > written consent (which shall not be unreasonablyy withheld or delayed), but if the Conmpany has failed to assume such defense, if ssuch claim is settled with the Company's wwritten consent, or if there be a final judgment fo:or the plaintiff in any such action or piroceeding, the Company agrees to indemnify arnd hold harmless CIBC and any such Indeemnified Party from and against any loss, liabilityy, damage or expense by reason of such setttlement or judgment

If the indemnnification provided for in this Schedule /A is unavailable to an Indemnified Party in respocct of any losses, claims, damages, liabilitities and expenses referred to herein or insufficieent to hold an indemnified person harmldess (other than by reason of such Person's Dissablling Conduct), then the Company agreees that in lieu of indemnifying such Indemnified : Party. it shall contribute to the amount paaid or payable by such Indemnified Party as a reesult of such losses, claims, damages. liiabilities and expenses (i) in such proportion ass is appropriate to reflect the relative beneefits received by it on the one hand and the Indeemnified Party on the other from the serviices rendered under this Agreement or (ii) if the raallocation provided by clause (i) above is i not permitted by applicable law, in such proportiion as is appropriate to reflect not only t the relative benefits referred to in clause (i) aboove but also the relative fault of the Coompany on the one hand and of the Indemnified  Party on the other in connection with the: untrue statements or omissions or other actionss (or alleged untrue statements, omissions : or other actions) which resulted in such losses,  claims, damages, liabilities and expensces, as well as any other relevant equitable coonsiderations  The relative fault of the Conmpany on the one hand and of the Indemnified  Party on the other shall be determined byy reference to, among other things, whether suchh untrue statements or omissions or other auctions (or alleged untrue

CIBC World Markets Corp

statements, comissions or other actions) relate to information supplied by action taken by the Company on the one hand or by the Indemnified Party on the other and the relevant persons' relative intent, knowledge, access to information and opportunity to correct or prevent suchh untrue statements, omissions or actions    The amount paid or payable by a party as a reesult of the losses, claims, damages, liabilities and expenses referred to above shall be deeemed to include any legal or other fees oor expenses reasonably incurred by such party i in connection with investigating or defeending any action or claim    The Company annd CIBC agree that it would not be just annd equitable if contribution pursuant to this Scheedule were determined by pro rata allocation or by any other method of allocation wbhich does not take account of the equitablee considerations referred to above

The aforesaiid indemnity and contribution agreements : shall apply to any related activities engaged in bby an Indemnified Party prior to this date : and to any modification of CIBC's engagement : hereunder, and shall remain in full foorce and effect regardless of any investigationss made by or on behalf of CIBC or any ' of its agents, employees, officers, directors or ccontrolling persons and shall survive the  termination of this Agreement, the Pre-Petition , Agreement, or the consummation of a TTransaction    The Company agrees promptly to i notify CIBC of the commencement oi anyy litigation or proceeding against it or any of itss directors, officers, agents or employeess i in connection with the transactions contemplateed hereby    The agreements contained in tthis Schedule A shall remain in full force  and eeffect following the completion or teirmination of CIBC's engagement hereunder annd shall be in addition to any liability thatt the Company may otherwise have to CIBC andd its agents, employees, officers, directors cor controlling persons

The Companny also agrees that no Indemnified Partyy shall have any liability (whether direct or indilirect, in contract or tort or otherwise) to thee Company, its owners, creditors or security holdders for or in connection with advice or sservices rendered or to be rendered by CIBC poursuant to this Agreement, the Pre-Petiition Agreement, the Transaction contemplateed hereby or any Indemnified Party's actiions or inactions in connection with any such addvice, services or transactions except for liliabilities (and related expenses) of the Company that are determined by a final judgment c of a court of competent jurisdiction to have reessulted primarily from such Indemnificed Party's Disabling Conduct in connection wwith any such advice, actions, inactions or : services



CIBC World Markets Corp.
425 Lexington Avenue
New York, NY 10017
Tel: 212-885-4400
Fax: 212-885-4998

June 12, 2003

David T. Austern, Esquire
Claims Resolution Management Corp.
8260 Willow Oaks Corporate Drive, Suite 600
Fairfax, Virginia 22031

Dear Mr. Austern:

As you know, by letter dated March 24, 2003 (the "Retention Letter"), you, in your capacity as the Futures Representative for holders of future asbestos-related claims and demands against Combustion Engineering, Inc. (the "Company"), retained CIBC World Markets Corp. ("CIBC"), effective as of February 17, 2003, to act as your financial advisor in connection with the Company's Chapter 11 case.[1]  The Retention Letter was a continuation of CIBC's prior retention by your counsel, Swidler Berlin Shereff Friedman, LLP.  In the Retention Letter, the Company, among other things, promised to pay CIBC's fees and to provide CIBC with certain indemnification rights.  CIBC's employment pursuant to the Retention Letter was approved by the Bankruptcy Court by Order entered April 22, 2003.

At the time the Retention Letter was signed, all parties expected the Company's Chapter 11 case and the implementation of a trust as contemplated under Section 524(g) of the Bankruptcy Code (the "Transaction") to continue on a fast track.  The Retention Letter provided that, in the event such Transaction were not implemented by June 30, 2003, all parties may agree to an alternative compensation agreement.  Because the Transaction has not continued as expeditiously as expected, such Transaction will not be implemented by June 30, 2003.  Accordingly, this letter confirms the terms and conditions of a mutually agreeable alternative compensation agreement, and the terms and conditions of paragraph six of the Retention Letter are modified as described herein.

In addition to the payments provided for in the Retention Letter for periods prior to May 1, 2003, as full payment for services rendered and to be rendered hereunder by CIBC from May 1, 2003 forward, CIBC shall be paid in cash by the Company as follows:

a.      $75,000 for the month of May, 2003;

---

[1]      Capitalized terms used but not defined in this letter shall have the same meanings as in the Retention Letter.



EXHIBIT
B

Mr. David T. Austern
June 12, 2003
Page 2 of 3

CIBC World Markets Corp

    b.    $25,000 for each month beginning with June, 2003, except as provided in item (c) below, until the month of the effective date of a Chapter 11 plan of reorganization for the Company; and

    c.    $75,000 for the month in which a confirmation hearing occurs before the United States District Court.

Both we and you acknowledge that the compensation set forth above is based upon our mutual understanding of the proposed Transaction, and is subject to further modification by mutual agreement if a material change occurs in the anticipated level of effort required of CIBC prior to the effective date of a plan of reorganization.

You will undertake to apply to the Bankruptcy Court, which has jurisdiction over the Company's chapter 11 bankruptcy proceeding, for authorization to modify the terms and conditions of CIBC's employment in accordance with the terms and conditions of this letter, with this letter attached as an exhibit to such application. Subject to approval of the terms and conditions hereof, CIBC agrees to accept as compensation for the services that CIBC renders pursuant to the terms hereof such sums as may be allowed by the Bankruptcy Court for fees incurred for professional services and for reimbursement of reasonable and necessary expenses. Except as paragraph six of the Retention Letter is modified by this letter, all provisions of the Retention Letter shall remain operative and in full force and effect.

Please sign and return one copy of this letter to the undersigned to indicate your acceptance of the terms set forth herein, whereupon this letter and your acceptance shall constitute a binding agreement between the parties hereto, subject to approval of the Bankruptcy Court, effective as of May 1, 2003.

Sincerely,

CIBC WORLD MARKETS CORP.

By: _____
Joseph J. Radecki, Jr.
Managing Director

Accepted and Agreed:

_____
David T. Austern, Futures Representative

Mr. David T  Austern
June 12, 2003
Page 3 of 3

Combustion Engineering, Inc.


By:  _____

Its:  _____

Appendix 198

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) |
| | ) |
| COMBUSTION ENGINEERING, INC., | ) |
| | ) |
| Debtor. | ) |

Chapter 11
Case No. 03-10495 (JKF)

### ORDER AUTHORIZING EXTENSION OF THE RETENTION AND EMPLOYMENT OF CIBC WORLD MARKETS CORP. AS FINANCIAL ADVISOR TO DAVID T. AUSTERN AS FUTURE CLAIMANTS' REPRESENTATIVE PURSUANT TO SECTION 1103(a) OF THE BANKRUPTCY CODE

Upon the application (the "Application") of David T. Austern, Future Claimants' Representative (the "FCR") for the future asbestos claimants in the above-captioned chapter 11 case of Combustion Engineering, Inc. (the "Debtor"), seeking entry of an Order under section 1103(a) of the Bankruptcy Code authorizing the FCR to extend the retention and employment of CIBC World Markets Corp. ("CIBC") as financial advisor to the FCR; and the Court having reviewed the Application, and the Court being satisfied with the representations made in the Application; and it appearing that the relief requested is in the best interest of the FCR and the Debtor's estate, its creditors and other parties-in-interest; and it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. § 158(a); and it appearing that notice of the Application was good and sufficient under the particular circumstances and that no other or further notice need be given and upon the record herein; and it appearing that the terms and conditions of CIBC's continued employment as further described in the Application are reasonable and necessary; it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.    The Application be, and it hereby is, approved;



EXHIBIT
C

2.    Pursuant to Section 1103(a) of the Bankruptcy Code, the FCR be, and he hereby

is, authorized to extend the retention and employment of CIBC as financial advisor through and

including the month of the effective date on the Debtor's plan, upon the terms and conditions set

forth in the Application, the Retention Letter and the Amended Retention Letter (each as defined

in the Application), so long as David T. Austern serves as the legal representative for individuals

who may assert asbestos-related claims and/or demands in the future against the Debtor;

3.    The indemnification provisions of the Retention Letter are approved, subject

during the pendency of the Debtor's bankruptcy case to the following:

(a)    subject to the provisions of subparagraph (b) below, the Debtor is

authorized to and shall indemnify, defend and hold harmless any Indemnified Party (as defined

in the Retention Letter) in accordance with the Retention Letter, provided, however, that

indemnification therefore is approved by the Court;.

(b)    notwithstanding any provisions of the Retention Letter to the contrary, the

Debtor shall have no obligation to indemnify an Indemnified Party or provide contribution or

reimbursement to an Indemnified Party for any claim or expense that is either (i) judicially

determined to have resulted primarily from the willful misconduct, gross negligence, bad faith or

self-dealing of an Indemnified Party, or (ii) settled prior to a judicial determination as to an

Indemnified Party's willful misconduct, gross negligence, bad faith or self-dealing, but

determined by the Court, after notice and a hearing pursuant to paragraph (c) below, to be a

claim or expense for which an Indemnified Party should not receive indemnity, contribution or

reimbursement under the terms of the Retention Letter as modified by this Order;

(c)    if, before the earlier of (i) the entry of an order confirming a chapter 11

plan in this case (that order having become a final order and no longer subject to appeal), and

(ii) the entry of an order closing this chapter 11 case, an Indemnified Party believes that he, she

or it is entitled to payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution and/or reimbursement obligations under this Order, including, without limitation, the advancement of defense costs, such Indemnified Party must file an application for such amounts in this Court, and the Debtor may not pay any such amounts to the Indemnified Party before the entry of an order by this Court approving the payment. The preceding sentence is intended to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by an Indemnified Party for indemnification, contribution or reimbursement, and is not a limitation on the duration of the Debtor's obligation to indemnify any Indemnified Party;

(d)    in the event that a cause of action is asserted against an Indemnified Party arising out of or relating to the performance of his, her or its duties as financial advisor to the FCR, the Indemnified Party shall have the right to choose his own counsel;

4.    CIBC shall be compensated in accordance with the terms of the Retention Letter and the Amended Retention Letter, subject to the procedures set forth in the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules and any orders of this Court, including the administrative order establishing procedures for interim compensation for professionals (Docket No. 228); provided, however, that CIBC may submit records in a summary format which shall set forth a description of the work performed by each professional rendering services on behalf of the FCR and, therefore, the information requirements of Del. Bankr. LR 2016-2 are hereby modified and waived, to the extent necessary, with respect to CIBC. Notwithstanding anything to the contrary herein or in the Retention Letter or the Amended Retention Letter, all of CIBC's fees and expenses shall be subject to approval by the Court under a reasonableness standard upon proper application by CIBC; provided, however,

that the approval of the reasonableness of CIBC's fees shall not be evaluated on an hourly or

length of case based criteria;

     5.    The fees and expenses of CIBC allowed by the Court shall be an administrative

expense of the Debtor's estate;

     6.    This Court retains jurisdiction with respect to all matters arising from or related to

the implementation of this Order; and

     7.    Nothing in this order authorizes, approves or affects liability for transfers that are

or may be avoidable under 11 U.S.C. §§ 544-550 inclusive.


                                   _____

                                   Judith K. Fitzgerald
                                   United States Bankruptcy Judge


Dated: Wilmington, Delaware
           _____, 2003