# TAB 9

Saul Ewing LLP
A Delaware Limited Liability Partnership
214 Carnegie Center, Suite 202
Princeton, NJ 08540
(609) 452-3100
DP-1792
JH-5739
Proposed Attorneys for the
Debtors and Debtors-In-Possession

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| CONGOLEUM CORPORATION, et al., | Case No. 03-51524 (KCF) |
| Debtors. | Jointly Administered |

APPLICATION FOR ORDER AUTHORIZING THE RETENTION AND
EMPLOYMENT OF SSG CAPITAL ADVISORS, L.P.
AS FINANCIAL ADVISORS TO THE DEBTORS

Congoleum Corporation, Congoleum Sales, Inc. and Congoleum Fiscal, Inc. (collectively, the "Debtors"), apply to this Court for the entry of an Order, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as amended (the "Bankruptcy Code"), authorizing the employment and retention of SSG Capital Advisors, L.P. ("SSG") as financial advisors to the Debtors. In support of this application, the Debtors respectfully state as follows:

JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

2. The statutory predicates for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code.

489779.6 1/27/04

## INTRODUCTION

3.  On December 31, 2003 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Court"). The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4.  No creditors' committee or trustee has been appointed in the Debtors' chapter 11 cases.

## BACKGROUND

5.  Congoleum is a leading manufacturer of resilient sheet and tile flooring, serving both residential and commercial markets. Its sheet, tile, plank and through-chip inlaid products are used in remodeling, manufactured housing, new residential construction and commercial applications. Congoleum also purchases wood laminates and accessory products for resale.

6.  Congoleum's Class A common stock currently trades on the American Stock Exchange under the symbol "CGM." As of September 30, 2003, there were 4,736,950 shares of Class A common stock outstanding and 4,608,945 shares of Class B common stock outstanding. Congoleum is a subsidiary of American Biltrite Inc., which owns fifty-five (55%) percent of Congoleum and which is not a debtor in these chapter 11 cases.

7.  As of September 30, 2003, Congoleum had assets of approximately $187 million and liabilities of approximately $205 million. For calendar year 2002, Congoleum reported revenue of approximately $237 million. For the nine months ending September 30, 2003, Congoleum reported revenue of approximately $171 million.

8.  Congoleum's executive offices are located at 3500 Quakerbridge Road, Mercerville, New Jersey. Congoleum also leases a warehouse facility in Trenton, New Jersey

and owns and operates four flooring manufacturing plants, two of which are located in Trenton, New Jersey, one of which is located in Marcus Hook, Pennsylvania and the other is located in Finksburg, Maryland. Congoleum currently has approximately 934 employees and is the largest employer in Mercerville.

9. Congoleum is currently a defendant in actions involving over 100,000 known asbestos-related personal injury claims as a result of alleged exposure to asbestos-containing products. During the period in which Congoleum produced asbestos-containing products, Congoleum purchased primary and excess insurance policies providing in excess of $1 billion of coverage. Congoleum's primary insurance has been exhausted and certain of its excess carriers have become insolvent or are currently disputing coverage.

10. As a result of the explosion of asbestos claims and litigation in recent years, disputes concerning applicable insurance coverage and the concomitant increased costs of settlement and defense of asbestos-related claims, Congoleum decided to pursue a consensual resolution of its asbestos liability through a prepackaged plan of reorganization.

11. Prior to the Petition Date, Congoleum solicited votes on its proposed Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of Congoleum Corporation, et al. (the "Plan") from creditors impaired under the Plan and also provided notice of the solicitation process and the proposed Plan to all other known creditors and interest holders. The original deadline for voting on the Plan of December 19, 2003 was extended by the Debtors to December 24, 2003 (the "Voting Deadline"). Based on the votes received as of the Voting Deadline, as well as other indications of support, the Plan is overwhelmingly supported by the Debtors' creditors, including holders of asbestos personal injury claims.

12. The Debtors commenced these chapter 11 cases to protect their ongoing businesses, preserve value for all their constituents and to resolve finally all asbestos-related

claims asserted against the Debtors and to provide a mechanism to address future asbestos-related claims.

## RELIEF REQUESTED AND BASIS THEREFOR

13. Pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, the Debtors request that the Court authorize the retention and employment of SSG as financial advisor to the Debtors to provide financial advisory services during the prosecution of these cases.

14. The Debtors seek to retain SSG because of the firm's extensive experience and reputation. SSG is a leader in providing financial advisory and investment banking services in connection with restructuring matters, with particular expertise relevant to these cases in the area of enterprise valuations and expert testimony.

15. As set forth in the Affidavit of J. Scott Victor (the "Victor Affidavit") attached hereto as Exhibit A, prior to the Petition Date, SSG was retained to prepare an enterprise and liquidation valuation of Congoleum (the "Valuation"). The Valuation ultimately became Exhibit B to the Disclosure Statement for the proposed Plan.

### Services To Be Rendered

16. As set forth in the proposed engagement letter from SSG dated December 31, 2003 (the "Engagement Letter"), SSG's services will include the following responsibilities:

   a. Financial Advisory Services: Financial advisory services provided by SSG will include such reports, opinions and testimony as are requested during the term of SSG's engagement. The scope of such financial advisory services will not include giving tax, legal, regulatory, accounting or other specialist or technical advice or valuation associated services.

   b. Restructuring Services: SSG will assist the Debtors and their counsel in negotiating with various stakeholders, including, but not limited to, the Debtors' pre-petition and post-petition secured lender, any statutory committees, the Futures Representative,

        general unsecured creditors and other creditors and shareholders in 1regard to the restructuring of existing claims and equity.

    c.     <u>Valuation Services</u>: If requested, SSG will provide to the Debtors one or more valuations regarding the enterprise or other value of Congoleum's businesses.

17.     SSG will also provide expert testimony and other services in support of the Valuation and other financial advisory services and any additional services for the Debtors related to the Valuation and other financial advisory services that may be necessary or appropriate in the administration of the Debtors' bankruptcy cases.

18.     The above-listed services are necessary and essential to the Debtors reorganization effort. SSG, for its part, has indicated a willingness to act on behalf of, and to render such services to the Debtors upon the terms set forth herein and in the Engagement Letter.

19.     The Debtors submit further that the retention and employment of SSG is in the best interest of the Debtors, its estates, and creditors.

### Disclosure of Conflicts of Interests

20.     Based upon the Victor Affidavit, the Debtors believe that SSG does not hold or represent any interest adverse to the Debtors and that SSG and each of its directors, officers, consultants, associates, analysts, and other professionals is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

21.     Based upon the Victor Affidavit, the Debtors further believe that SSG's directors, officers, consultants, associates, analysts, and other professionals have no connection with the Debtors, any of the Debtors' subsidiaries or affiliates, any creditors of the Debtors, the United

---

[1]     The Debtors have filed an Application for Order Authorizing the Employment and Retention of Ernst & Young Corporate Finance LLC ("EYCF") as Restructuring Advisor to the Debtors. The scope of EYCF's retention will be to assist the Debtors with various reporting requirements, such as preparation of the Debtors' schedules and statements of financial affairs and monthly operating reports. There will be no overlap of services between those provided by SSG and those provided by EYCF.

489779.6 1/27/04         5

States Trustee for this District, any person employed in the United States Trustee's office, any other party in interest in the Debtors' chapter 11 proceedings, or their respective attorneys and accountants, except as set forth in the Victor Affidavit.

### Professional Compensation

22. SSG's pre-petition services were provided for a flat fee of $175,000. SSG received an initial payment of $100,000 at the inception of its engagement in March, 2003 and received monthly payments of $25,000 in the months of April, May, June and July 2003.

23. Subject to Court approval in accordance with section 330(a) of the Bankruptcy Code, compensation will be payable to SSG on an hourly basis, plus reimbursement of actual, necessary expenses incurred. SSG will bill the Company in tenth of an hour increments at its standard hourly rate for work of this nature as follows:

| | |
|---|---|
| Managing Directors - | $500 |
| Vice Presidents - | $350 |
| Asst. Vice Presidents - | $300 |
| Associates | $250 |
| Analysts | $150 |

These rates are set at a level designed to fairly compensate the firm for the work of its professionals and to cover fixed and routine overhead expenses.

24. The Debtors submit that the terms of SSG's engagement including, without limitation, the terms of the compensation are reasonable and appropriate, and should be approved by the Court.

### NOTICE, PRIOR APPLICATIONS AND WAIVER OF BRIEF

25. Notice of this Application has been provided to: (i) the Office of the United States Trustee; (ii) counsel to the Debtors' pre-petition lenders; (iii) counsel to the Debtors' post-petition lender; (iv) the twenty largest unsecured creditors of the Debtors and (v) the Core and Master

489779.6 1/27/04                                6

Appendix 212

Service Lists. In light of the relief requested herein, the Debtors respectfully submit that no further notice of the Application is required.

26.   No prior request for the relief sought herein has been made to this Court or any other court.

27.   The Debtors submit that the Application presents no novel issues of law requiring the citation to any authority other than that referred to above and, accordingly, no brief is necessary.

WHEREFORE, the Debtors respectfully request that the Court enter an Order: (i) authorizing the Debtors to retain and employ SSG as financial advisors to the Debtors; and (ii) granting such other relief as is just and proper.

Congoleum Corporation

By: *[signature]*
    Howard N. Feist, III
    Chief Financial Officer

Dated: January 23, 2004
       Mercerville, New Jersey

Appendix 214

# EXHIBIT A

Saul Ewing LLP
A Delaware Limited Liability Partnership
214 Carnegie Center, Suite 202
Princeton, NJ 08540
(609) 452-3100
DP-1792
JH-5739
Proposed Attorneys for the
Debtors and Debtors-In-Possession

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| In re: | Chapter 11 |
|---|---|
| CONGOLEUM CORPORATION, et al., | Case No. 03-51524 (KCF) |
| Debtors. | Jointly Administered |

AFFIDAVIT OF J. SCOTT VICTOR IN SUPPORT OF APPLICATION OF THE
DEBTORS FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. § 327(a)
AND 328(a) AUTHORIZING THE EMPLOYMENT AND RETENTION OF
SSG CAPITAL ADVISORS L.P. AS FINANCIAL ADVISORS

| State of Delaware | ) | |
|---|---|---|
| | ) | SS. |
| New Castle County | ) | |

J. SCOTT VICTOR, being duly sworn, deposes and says:

1. I am a Managing Director of SSG Capital Advisors L.P. ("SSG"), a financial services firm with offices located at Five Tower Bridge, 300 Barr Harbor Drive, Suite 420, Conshohocken, Pennsylvania 19428, and I make this Affidavit on behalf of SSG. I submit this Affidavit in support of the application of the debtors in the above-captioned chapter 11 cases (the "Debtors") for an Order authorizing the employment and retention of SSG as financial advisors

489779.6 1/27/04

to the Debtors in these chapter 11 cases. Except as otherwise noted, I have personal knowledge of the matters set forth herein.

2. Prior to the Petition Date, SSG was retained to provide an enterprise and liquidation valuation of the Debtors (the "Valuation"). SSG prepared the Valuation, which was attached as an exhibit to the Disclosure Statement for the Debtors' proposed Plan.

3. As set forth in the proposed engagement letter from SSG dated December 31, 2003 (the "Engagement Letter"), SSG will provide expert testimony and other services in support of the Valuation and other financial advisory services and any additional services for the Debtors related to the Valuation and other financial advisory services that may be necessary or appropriate in the administration of the Debtors' bankruptcy cases. In addition, SSG will also provide the following services:

   a. Financial Advisory Services: Financial advisory services provided by SSG will include such reports, opinions and testimony as are requested during the term of SSG's engagement. The scope of such financial advisory services will not include giving tax, legal, regulatory, accounting or other specialist or technical advice or valuation associated services.

   b. Restructuring Services: SSG will assist the Debtors and their counsel in negotiating with various stakeholders, including, but not limited to, the Debtors' pre-petition and post-petition secured lender, any statutory committees, the Futures Representative, general unsecured creditors and other creditors and shareholders in regard to the restructuring of existing claims and equity.

   c. Valuation Services: If requested, SSG will provide to the Debtors one or more valuations regarding the enterprise or other value of Congoleum's businesses.

4. Based upon the review of a conflict search conducted to date and described more fully below, to the best of my knowledge, neither I, SSG, nor any shareholder or employee thereof, insofar as I have been able to ascertain, has any connection with the Debtors, their creditors, other parties in interest (as reasonably known to us), their respective attorneys, or the

U.S. Trustee or any person employed in the Office of the U.S. Trustee, except as disclosed or otherwise described herein.

5. To the best of my knowledge, SSG does not hold or represent any interests adverse to the estates.

6. To the best of my knowledge, SSG is a disinterested person as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that SSG, its shareholders and employees:

   a. Are not creditors, equity security holders or insiders of the Debtors;
   b. Are not and were not investment bankers for any outstanding security of the Debtors;
   c. Have not been at any time prior to the filing of the Debtors' chapter 11 petitions: (i) an investment banker for a security of the Debtors, or (ii) an attorney for such an investment banker on connection with the offer, sale or issuance of a security in the Debtors; and
   d. Were not at any time before the filing of the Debtors' chapter 11 petitions, a director, officer, or employee of the Debtors or of any investment banker as specified in subparagraph (b) or (c) of this paragraph.

7. SSG's pre-petition services were provided for a flat fee of $175,000. SSG received an initial payment of $100,000 at the inception of its engagement in March, 2003 and received monthly payments of $25,000 in the months of April, May, June and July 2003.

8. Subject to Court approval in accordance with section 330(a) of the Bankruptcy Code, compensation will be payable to SSG on an hourly basis, plus reimbursement of actual, necessary expenses incurred. SSG will bill the Company in tenth of an hour increments at its standard hourly rate for work of this nature as follows:

|  |  |
| --- | --- |
| Managing Directors - | $500 |
| Vice Presidents - | $350 |
| Asst. Vice Presidents - | $300 |
| Associates | $250 |
| Analysts | $150 |

These rates are set at a level designed to fairly compensate the firm for the work of its professionals and to cover fixed and routine overhead expenses.

9. Prior to joining SSG, until February 2000, I was a partner in the Bankruptcy Department of with Saul Ewing LLP ("Saul Ewing"), counsel to the Debtors in these cases. Saul Ewing also represents SSG on general business matters wholly unrelated to these cases. SSG and Saul Ewing have worked as co-professionals in other bankruptcy cases.

10. No commitments have been made or received by SSG, nor any partner or employee thereof, as to compensation or payment in connection with these cases other than in accordance with the provisions of the Bankruptcy Code. Further, SSG has no agreement with any other entity to share with such entity any compensation received by SSG in connection with these chapter 11 cases.

_____
J. Scott Victor

SUBSCRIBED AND SWORN TO BEFORE ME
this 23 day of January, 2004

_____
Notary Public
My Commission Expires:

4

**Appendix 218**

# EXHIBIT 1

# SSG
CAPITAL ADVISORS, L.P.

December 31, 2003

Mr. Roger S. Marcus
Chairman of the Board, Chief Executive Officer
 and President
Congoleum Corporation
3705 Quakerbridge Road, Suite 211
Trenton, NJ 08619

Dear Mr. Marcus:

This agreement ("Engagement Agreement") will serve as the contract between Congoleum Corporation ("Congoleum" and/or the "Company") and SSG Capital Advisors, L.P. ("SSG") in connection with SSG's provision of investment banking, financial advisory and restructuring advisory services to Congoleum. SSG will provide investment-banking, restructuring and financial advisory services to Congoleum, on an exclusive basis, focusing on the restructuring of Congoleum's balance sheet through a plan of reorganization ("Restructuring" and/or "Plan of Reorganization").

A.   **SSG's Role**

   (1)   Financial Advisory Services

   SSG shall provide Congoleum with financial advisory services in connection with the Company's Chapter 11 proceeding and Plan of Reorganization. Such financial advisory services shall include such reports, opinions and testimony as are requested during the Engagement. For the sake of clarity, the scope of such financial advisory services shall not include giving tax, legal, regulatory, accounting or other specialist or technical advice or valuations associated services for which the Company agrees to seek such services from other professional sources.

   (2)   Restructuring Services

   SSG shall assist the Company and its counsel in negotiating with various stakeholders in the Company (the "Existing Stakeholders") including, but not limited to, Congress Financial, Asbestos Claimants' Committee, the Future's Representative, insurance companies, general unsecured creditors and other creditors and shareholders in regard to the restructuring of existing claims and equity.

Five Tower Bridge, Suite 420  •  300 Barr Harbor Drive  •  West Conshohocken, PA 19428
Phone (610) 940-1094  •  Fax (610) 940-3875
www.ssgca.com

Appendix 220

Mr. Roger S. Marcus
December 31, 2003
Page 2

(3) <u>Valuation Services</u>

If requested in writing, SSG will provide to the Company one or more Valuation(s) regarding the enterprise or other value of Congoleum's business.

(4) <u>Due Diligence</u>

In connection with SSG's performance of the services described above, the Company agrees to furnish to SSG such information as SSG reasonably believes appropriate to the execution of its Engagement hereunder (all such information so furnished being the "Information"). The Company represents that, to the best of its knowledge, all Information furnished by it or its agents will be complete and correct in all material respects, and that until the expiration of SSG's Engagement hereunder, the Company will advise SSG immediately of the occurrence of any event or any other change known by the Company or its agents that would cause the Information to cease to be complete and correct in all material respects. The Company recognizes and confirms that in performing the services described herein SSG: (i) will use and rely primarily on the Information and on information available from generally recognized public sources without independently verifying any of the same; (ii) will not assume responsibility for accurateness or completeness of the Information and such other information; and (iii) will not make an appraisal of any of the liabilities of the Company.

B. **SSG's Fees**

SSG's fees for acting as exclusive investment banker and financial advisor in connection with the services outlined above will consist of:

(1) Hourly Fees: SSG will bill the Company in tenth of an hour increments at its standard hourly rate for 2004 as follows:
    Managing Directors -    $500.
    Vice Presidents -    $350.
    Asst. Vice Presidents -    $300.
    Associates    $250.
    Analysts    $150.

The professionals at SSG assigned to this matter are:
    J. Scott Victor    Managing Director
    Michael Goodman    Vice President
    Tim Schaeffer    Associate

(2) In addition to the Fees outlined above, the Company shall throughout the Term or Renewal Term of this Engagement reimburse SSG, on a monthly basis, for all reasonable out-of-pocket expenses incurred by SSG in connection with the conduct of its duties under this Engagement Agreement.

Appendix 221

Mr. Roger S. Marcus
December 31, 2003
Page 3

C. **Indemnification**

The following provisions regarding indemnification, contribution and related matters have been agreed to by the Company and SSG and are subject to Bankruptcy Court approval:

(1) Except as provided in the last sentence of this paragraph, the Bankruptcy Estate shall indemnify and hold harmless SSG, and its partners, officers, agents, employees and affiliates (collectively, "Indemnitees") from and against all losses, claims, judgments, liabilities, costs, damages and expenses, including reasonable attorneys' fees (collectively "Claims"), that SSG may incur and which are based upon, or arise out of, any services that SSG provides to the Company as his agent and financial advisor in connection with the services that SSG provides pursuant to this Engagement Agreement. The Bankruptcy Estate shall defend any Claim asserted against SSG through counsel reasonably satisfactory to SSG, which with SSG's approval may be the Company's counsel. The Bankruptcy Estate shall pay SSG's fees and expenses, including counsel fees, as they are incurred in defending any such Claim, and SSG shall repay the Bankruptcy Estate for any costs and expenses advanced by the Bankruptcy Estate pursuant to the preceding sentence, in a case where it has been determined in a final judgment by a court of competent jurisdiction (not subject to further appeal) that the Claim resulted from the gross negligence or willful misconduct of SSG.

(2) If for any reason the foregoing indemnity is unavailable to the Indemnitees or insufficient to hold them harmless, the Bankruptcy Estate shall contribute to the amount paid or payable by the Indemnitees as a result of the Claim in such proportion as is appropriate to reflect not only the relative benefits received by the Bankruptcy Estate on the one hand and the Indemnitees on the other, but also the relative fault of the Company and the Indemnitees, as well as any relevant equitable considerations. In no event shall the aggregate contribution of the Indemnitees to all Claims exceed the amount of fees actually received by the Indemnitees pursuant to the Engagement Agreement.

(3) SSG shall not have any liability to the Bankruptcy Estate or any other person in connection with the services performed by SSG pursuant to the Engagement Agreement (whether direct or indirect, in contract or tort or otherwise) except for any liability for losses, claims, damages or liabilities that is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted from the gross negligence or willful misconduct of SSG.

(4) The Company shall not settle or compromise, or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification may be sought from the Bankruptcy Estate by SSG or any other of the Indemnitees (whether SSG is any actual or potential party to the claim, action, suit or proceeding) unless such settlement, compromise or consent includes an

Appendix 222

Mr. Roger S. Marcus
December 31, 2003
Page 4

        unconditional release of SSG and all other indemnities from all liability arising out of the claim, action, suit or proceeding.

   (5)   The provisions hereof shall survive any termination or completion of the Engagement set forth in this Engagement Agreement.

D. **Bankruptcy Proceeding**

This Engagement Agreement is subject to the approval of the United States Bankruptcy Court, District of New Jersey.

E. **Miscellaneous**

The Company agrees that SSG has the right to place advertisements in publications and its marketing materials at its own expense describing its services under this Engagement Agreement.

Any amendment, modification or other changes to this Engagement Agreement must be in writing and signed by both parties to be enforceable.

Please indicate your acceptance of the foregoing by executing and returning the enclosed copy of this letter.

**SSG CAPITAL ADVISORS, L.P.**
By:   Chesen, DeMatteo, Karlson, Victor Securities Corporation,
       General Partner

By: _____       _____
     J. Scott Victor                                   Michael Goodman
     Managing Director                         Vice President

ACCEPTED:

**CONGOLEUM CORPORATION**

By: _____       JAN 22, 2004
     Roger S. Marcus                           Date
     Chairman of the Board, Chief
       Executive Officer and President

| UNITED STATES BANKRUPTCY COURT |
| --- |
| DISTRICT OF NEW JERSEY |
| Caption in Compliance with D.N.J. LBR 9004-2(c) |

Saul Ewing LLP
A Delaware Limited Liability Partnership
214 Carnegie Center, Suite 202
Princeton, NJ 08540
(609) 452-3100
DP-1792
JH-5739
Proposed Attorneys for the
Debtors and Debtors-In-Possession

In re:

CONGOLEUM CORPORATION, et al.

Debtors.

Chapter 11

Case No. 03-51524 (KCF)

Jointly Administered

Hearing Date: February 9, 2004

## ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF SSG CAPITAL ADVISORS, L.P. AS FINANCIAL ADVISORS TO THE DEBTORS

The relief set forth on the following pages, numbered two (2) through two (2) is hereby **ORDERED.**

**DATED:**

_____
Judge, United States Bankruptcy Court

489779.6 1/27/04

**(Page 2)**

| | |
|---|---|
| Debtors: | Congoleum Corporation, et al. |
| Case No.: | 03-51524 (KCF) |
| Caption of Order: | ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF SSG CAPITAL ADVISORS, L.P. AS FINANCIAL ADVISORS TO THE DEBTORS [DI #__] |

Upon consideration of the Application for Order Authorizing the Retention and Employment of SSG Capital Advisors, L.P. as Financial Advisors to the Debtors (the "Application"),[1] and good cause appearing therefore, it is hereby

**ORDERED** that the Application is GRANTED; and it is further

**ORDERED** that pursuant to the terms, conditions, and disclosures contained in the Application, the Engagement Letter and the Victor Affidavit, SSG shall be retained as the financial advisors to the Debtors as of the date of this Application; and it is further

**ORDERED** that SSG shall be compensated in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code and such Bankruptcy Rules as may be applicable from time to time, and such procedures as may be fixed by order of this Court.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

489779.6 1/27/04