# TAB 11

Stephen B. Ravin, Esq. (SBR7074)
Bruce J. Wisotsky (BJW2026)
RAVIN GREENBERG PC
101 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 226-1500

Roger Frankel, Esq. (RF5716)
Richard H. Wyron, Esq. (RHW4331)
Jonathan P. Guy, Esq. (JPG0656)
SWIDLER BERLIN SHEREFF FRIEDMAN, LLP
3000 K Street, N.W., Suite 300
Washington, DC 20007-5116
(202) 424-7500

Counsel for the
Future Claimants Representative

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| CONGOLEUM CORPORATION, et al., | Case No. 03-51524 (KCF) (Jointly Administered) |
| Debtors. | |

### APPLICATION OF R. SCOTT WILLIAMS, AS FUTURE CLAIMANTS REPRESENTATIVE, FOR AUTHORIZATION TO EMPLOY CIBC WORLD MARKETS CORP. AS FINANCIAL ADVISOR

TO:    THE HONORABLE KATHRYN C. FERGUSON
       UNITED STATES BANKRUPTCY JUDGE

R. Scott Williams, the legal representative for the holders of future asbestos personal injury claims and demands against the above-captioned Debtors (the "Future Claimants Representative" or "FCR"), respectfully represents as follows:

## Jurisdiction and Venue

1.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## Background

2.      On December 31, 2003 (the "Petition Date"), Congoleum Corporation ("Congoleum"), Congoleum Sales, Inc. and Congoleum Fiscal, Inc. (collectively, the "Debtors") each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Court").  Pursuant to §§ 1107 and 1108 of the Bankruptcy Code, the Debtors are continuing in the management and possession of their properties as debtors in possession.

3.      Congoleum is a manufacturer and distributor of vinyl and tile flooring products. Prior to the Petition Date, Congoleum had been named as a defendant in numerous litigations that allege liability for asbestos-related personal injuries allegedly caused by its vinyl and tile flooring products.

4.      On January 24, 2004, the Debtors filed their Joint Prepackaged Plan of Reorganization under Chapter 11 of the Bankruptcy Code of Congoleum Corporation, et al., dated October 27, 2003 (the "Plan") and the related plan documents.  The Plan was overwhelmingly accepted by creditors who voted in the Debtors' pre-petition solicitation process and the Debtors have asked the Court to confirm the Plan.

5.      On January 13, 2004, the Debtors filed their Motion for Entry of an Order Approving and Authorizing the Appointment of R. Scott Williams as the Legal Representative for Future Asbestos Personal Injury Claimants.  On February 18, 2004, the Court granted the

2

motion and entered its Order Authorizing the Appointment of R. Scott Williams as Futures

Representative (Docket No. 355) (the "Appointment Order").

6.      Various matters will be considered by the Court in these cases which affect the

interests of holders of future asbestos personal injury claims and demands. In order to assist him

in exercising his duties, the FCR respectfully asks the Court to consider and grant this

Application.

## Relief Requested

7.      By this Application, the FCR seeks authorization to employ CIBC World Markets

Corp. ("CIBC") as his financial advisor in these Chapter 11 cases, effective as of February 13,

2004, to provide advice on the matters described below in accordance with the terms of the June

26, 2003 letter agreement (the "Engagement Agreement"), a copy of which is attached hereto as

Exhibit A.[1]

## Basis For The Relief Sought

8.      Since June 2003, CIBC has provided advice to the FCR in connection with the

pre-packaged Plan, in accordance with the terms of the Engagement Agreement. CIBC was

actively involved in conducting due diligence with respect to the Debtors and their financial

affairs. As a result of its pre-petition work, CIBC is familiar with the Debtors' financial affairs

and businesses, as well as their proposed Plan. Accordingly, the FCR believes that continued

retention of CIBC with respect to the specific matters described below is essential to the FCR's

role in these cases, and that CIBC is well suited to assist the FCR as his financial advisor during

these Chapter 11 cases.

---

[1]     The Appointment Order authorizes the FCR to employ professionals consistent with §§ 327
and 1103 of the Bankruptcy Code.

### Services to be Rendered

9.    Under the Engagement Agreement, CIBC was engaged to render the following

services to the FCR:

    i.  analyze and advise on the financial position, cash flow, financial history and
        assets of Congoleum;

    ii.  assist the FCR by (a) presenting general valuation and capital structure options for
        Congoleum, (b) advising on the structure of the promissory note and/or other
        assets provided to the plan trust, and (c) assisting in formulating, negotiating and
        consummating the Debtors' proposed plan of reorganization and related plan
        documents; and

    iii.  provide testimony in connection with the restructuring of Congoleum and the
        implementation of the Debtors' proposed plan of reorganization at the request of
        the FCR.[2]

The FCR believes that employing CIBC as financial advisor as set forth herein to continue their

pre-petition work will provide the FCR with advice, assistance and information in a cost

effective manner in those areas in which CIBC has particular knowledge and expertise.

10.    The above listed services are necessary to the FCR. CIBC has indicated a

willingness to act on behalf of, and render such services to, the FCR, upon the terms set forth in

the Engagement Agreement.

### Professional Compensation

11.    The Engagement Agreement provides for a fixed fee of $150,000.00 for CIBC's

services to be rendered pre-petition to the FCR, as described above, as well as for providing

testimony post-petition. In addition, the Engagement Agreement provides for reimbursement of

reasonable out-of-pocket expenses incurred in connection with the provision of services

thereunder. If the Debtors' proposed Plan is not implemented within a reasonable time frame, or

---

[2]    The FCR has not asked CIBC to testify at any hearings. As discussed below, however,
certain insurers have already served a subpoena upon CIBC to produce documents and to
provide deposition testimony, which is currently scheduled to take place on April 2, 2004.

4

the FCR desires to extend the nature of CIBC's assignment beyond the scope of work described in the Engagement Agreement, the FCR and CIBC will seek to mutually agree, if possible, on an alternative compensation agreement. The FCR would then submit any agreement reached with CIBC to this Court for approval

12.     Upon signing the Engagement Agreement, Congoleum paid CIBC the agreed fixed fee of $150,000.00 in full payment for services to be rendered to the FCR pursuant to the terms of the Engagement Agreement. In addition, consistent with the Engagement Agreement, Congoleum reimbursed CIBC in full for its expenses incurred prior to the Petition Date. Accordingly, CIBC intends to apply at this time only for reimbursement of actual and necessary expenses incurred post-petition in rendering the services set forth in the Engagement Agreement, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and Orders of this Court.

13.     I understand that it is CIBC's policy to charge its clients for reasonable out-of-pocket expenses incurred in connection with the provision of services, including, but not limited to, travel and lodging, data processing and communication charges, photocopying, research and courier services, and similar costs. CIBC has agreed to invoice for these expenses in a manner and at rates consistent with charges made generally to CIBC's other clients, and to apply for reimbursement for such expenses in accordance with the applicable provision of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and Orders of the Court. CIBC has agreed to accept as reimbursement from the Debtors' estates such sums as may be allowed by the Court.

14.     I have been advised by CIBC that it has no agreement with any other entity to share compensation received, nor will any be made, except as permitted under § 504(b)(1) of the Bankruptcy Code.

**A p p e n d i x   2 3 4**

### Disclosure Concerning Connections
### Between CIBC and Parties in Interest

15.    To the best of the FCR's knowledge, except as otherwise set forth in the accompanying Declaration of Joseph Radecki, a Managing Director of CIBC, CIBC (a) does not have any connections with the FCR, the Debtors, their affiliates, creditors or any other party in interest, or their respective attorneys and accountants, the United States Trustee, or any person employed in the Office of the United States Trustee, (b) is disinterested, and (c) does not hold or represent any interest adverse to the FCR on the matters upon which CIBC is to be engaged.

16.    Pursuant to the Engagement Agreement, CIBC required that Congoleum agree, and Congoleum did agree, to indemnify and hold harmless CIBC, its agents, employees, officers and directors, and any person who controls CIBC within the meaning of Section 15 of the Securities Act of 1934, as amended (each, an "Indemnified Party" and collectively, the "Indemnified Parties"), from and against any and all losses, claims, judgments, damages, liabilities and expenses (including, but not limited to, all reasonable legal expenses, any and all other expenses incurred in investigating, preparing or defending against any action or proceeding, commenced or threatened, whether or not the Indemnified Party is a named party) to which, jointly or severally, it may become subject, which arise out of or are based upon or in any connection with (i) any transaction contemplated by the Engagement Agreement, or (ii) any statement of fact contained in any document prepared by the Debtors that is false or misleading or any omission to state therein a material fact required to be stated therein or necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading. However, the Debtors are not required to indemnify the Indemnified Party with respect to any action, suit or proceeding to the extent based upon its willful misconduct, bad faith or gross negligence and any payment or reimbursement made to such Indemnified Party by the

6

Debtors in connection with any such action or proceeding will be repaid by such Indemnified Party to the Debtors.

17.    CIBC has agreed to the following limitation on its right to indemnification, as set forth in the proposed order submitted herewith:

> If any Indemnified Party (as defined in the Order) believes that it is entitled to payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations described above, including, without limitation, the advancement of defense costs, the Indemnified Party must file an application for such amounts with the Court, and the Debtors may not pay any such amounts to the Indemnified Party before the entry of an order by the Court approving the payment; provided, however, that (i) if the Court determines not to exercise jurisdiction over the matter or (ii) the Court has entered an order closing these chapter 11 cases, then the Indemnified party shall file such application (or other pleading) in a court of competent jurisdiction, and the Debtors may not pay any such amounts before the entry of an order by such court. The preceding sentence is intended to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by any Indemnified Party for indemnification, contribution or reimbursement, and is not a limitation on the duration of the Debtors' obligation to indemnify any Indemnified Party. In the event that a cause of action is asserted against any Indemnified Party arising out of or relating to the performance of its duties as financial advisor, such Indemnified Party shall have the right to choose its own counsel.

### Request for Nunc Pro Tunc Authorization

18.    On February 13, 2004, certain insurers served CIBC with a subpoena to produce documents relating to its pre-petition employment as financial advisor to the FCR and to appear for deposition. In order to begin complying with the subpoena and to avoid delaying this proceeding, while at the same time benefiting from the advice and participation of his financial advisor, the FCR asked CIBC to begin work as of February 13, 2004, contingent upon the Court's authorization for the FCR to retain CIBC. Given the need for CIBC to respond to the

7

subpoena, and the FCR's need for CIBC's services, the FCR respectfully asks that CIBC's employment be authorized effective as of February 13, 2004.

19.    For the reasons set forth above, the FCR believes that the retention of CIBC, effective as of February 13, 2004, is necessary and in the best interests of the FCR, the Debtors, their estates and their creditors.

### No Prior Request

20.    No prior application for the relief requested herein has been made to this or any other Court.

### Notice and Waiver of Brief

21.    Notice of the Application and the requested relief has been provided to (i) counsel for the Debtors; (ii) the Office of the United States Trustee; and (iii) all parties listed on the Master Service List filed by the Debtors.  Accordingly, the FCR believes that such notice of the Application is appropriate and sufficient.

22.    The FCR submits that this Application presents no novel issues of law requiring the citation to any authority other than that referred to above and, accordingly, no brief is necessary.

### Conclusion

WHEREFORE, the FCR respectfully prays that the Court enter the attached order authorizing him to employ CIBC World Markets Corp. as financial advisor, and granting such other and further relief as is just and proper.

R. SCOTT WILLIAMS
FUTURE CLAIMANTS REPRESENTATIVE

R. Scott Williams
2001 Park Place North, Suite 1400

8

Birmingham, AL 35203
(205) 251-1000

Dated: _____3/11_____, 2004

9126261v5

**Appendix 238**

# EXHIBIT A

# CIBC WORLD MARKETS

CIBC World Markets Corp
425 Lexington Avenue
New York, NY 10016

Tel: 212 885-4400
Fax: 212 885-4998

June 26, 2003

R. Scott Williams, Esq.
Haskell Slaughter Young & Rediker, LLC
1400 Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203

Dear Mr. Williams:

This letter agreement (the "Agreement") confirms that R. Scott Williams, Esq.,
the representative for future asbestos-related personal injury claimants (the "Futures
Representative") to Congoleum Corporation (the "Company") retains CIBC World
Markets Corp. ("CIBC" or "Financial Advisor") to act as the Futures Representative's
financial advisor in connection with a proposed restructuring of the Company and
implementation of a trust as contemplated under Section 524(g) of the Bankruptcy Code
(the "Transaction"). The Company, subject to the terms and conditions hereof, agrees to
compensate CIBC for the services that CIBC renders pursuant to the terms hereof.

1.    Retention. The Futures Representative hereby retains CIBC in connection
with the analysis of the financial position, cash flow requirements, financial
history, operations, competitive environment, and assets of the Company. CIBC
will assist the Futures Representative by (a) presenting general valuation and
capital structure options for the Company; (b) advising on the structuring of the
Promissory Note (as described in recent preliminary term sheets) and/or other
assets provided to the 524(g) Trust; and (c) generally assisting in formulating,
negotiating and consummating the Transaction. In addition, when necessary,
CIBC professionals will provide testimony in connection with the Transaction.
Together, the aforementioned will constitute the "Initial Scope".

2.    Staffing. The Futures Representative and CIBC agree that this engagement
will be primarily staffed by Joseph J. Radecki, Jr., so long as he continues to be
employed by CIBC. CIBC will also provide appropriate levels of staffing to
complete the engagement in a timely and commercially reasonable manner.

3.    Information on the Company. In connection with the Financial Advisor's
activities hereunder, the Company will furnish us upon request with all material
and information regarding the business and financial condition of the Company

CIBC World Markets Corp.

(all such information so furnished being the "Information"). It is recognized and confirmed that CIBC: (a) will use and rely primarily on the Information, and on information available from generally recognized public sources in performing the services contemplated by this letter without having independently verified the same; (b) does not assume responsibility for the accuracy or completeness of the Information and such other information; (c) will not make an appraisal of any assets of the Company; and (d) retains the right to continue to perform due diligence during the course of the engagement. The Financial Advisor agrees to be bound by that certain Confidentiality Agreement Between Congoleum Corporation and R. Scott Williams as Legal Representative dated June 11, 2003, as provided in paragraph 6 thereof. provided however, that the Financial Advisor is authorized to use and disclose Confidential Information in connection with any testimony (including deposition testimony) given in connection with any litigation or adversary proceeding involving the Company. The Financial Advisor further agrees to keep the Information confidential so long as it is and remains non-public, unless disclosure is required by law or requested by any government, regulatory or self-regulatory agency or body, and the Financial Advisor will not make use thereof, except in connection with our services hereunder for the Futures Representative.

4.    Use of Name.  The Futures Representative and the Company agree that any reference to the Financial Advisor in any release or communication or materials distributed is subject to the Financial Advisor's prior written approval, unless such release or communication is required by law or regulation. If the Financial Advisor resigns prior to the dissemination of any such release, communication or material, no reference shall be made therein to the Financial Advisor. Except as otherwise permitted under paragraph 19 below, the Financial Advisor agrees that any reference to the Company in any release or communication or materials distributed is subject to the Company's prior written approval, and any reference to the Futures Representative in any release or communication or materials distributed is subject to the Futures Representative's prior written approval, unless in either case such release or communication is required by law or regulation.

5.    Use of Advice.  No advice rendered by the Financial Advisor in connection with the services performed by the Financial Advisor pursuant to this Agreement will be quoted by the Futures Representative or the Company, nor will any such advice be referred to, in any report, document, release or other communication, whether written or oral, prepared, issued or transmitted by the Futures Representative, the Company or any person or corporation controlling, controlled by or under common control with the Company or any director, officer, employee, agent or representative of the Company, without the prior written authorization of the Financial Advisor, except to the extent required by law (in which case the appropriate party shall so advise the other in writing prior to such use and shall consult with the other with respect to the form and timing of disclosure), provided that the foregoing shall not prohibit appropriate internal

Appendix 241

AUG 12 2003 10:15 FR SAUL EWING          215 972 7725 TO 1277#16584#82735 P.06/11

CIBC World Markets Corp.

communication or reference with respect to such advice internally within such parties.

6.   Compensation. In full payment for services rendered and to be rendered hereunder by CIBC, CIBC shall be paid in cash by the Company a fee of $150,000.00 payable in advance upon the signing of this Agreement.

CIBC and the Futures Representative acknowledge that the compensation proposed has been accepted by all parties based on their understanding of the proposed Transaction and the Initial Scope. Should such Transaction not be implemented within a reasonable time frame, or the nature of the assignment extend beyond the Initial Scope, all parties agree that they will seek to mutually agree, if possible, on an alternative compensation arrangement.

7.   Expenses. Without in any way reducing or affecting the provisions of Exhibit A hereto, the Company shall reimburse CIBC for its reasonable out-of-pocket expenses incurred in connection with the provision of services hereunder. Out-of-pocket expenses shall include, but not be limited to, travel and lodging, data processing and communication charges, and research and courier services.

8.   Liability for Fees and Expenses. The Company shall be solely responsible for the payment of compensation and reimbursement of expenses to CIBC under this Agreement. The Futures Representative shall not be liable for the payment of any compensation or reimbursement of any expenses to CIBC hereunder.

9.   Termination Provision. This Agreement will be effective as of the date set out on the first page hereof. CIBC may resign at any time for cause (including the Company's failure to pay compensation or reimburse expenses as and when due), and the Futures Representative may terminate CIBC's services at any time, each by giving 30 days notice to the other. If the Futures Representative terminates CIBC's services for any reason, CIBC shall be entitled to receive all of the amounts due pursuant to Sections 6 and 7 hereof, up to and including the effective date of such termination. If CIBC resigns, CIBC shall be entitled to receive all of the amounts pursuant to Sections 6 and 7 hereof, up to and including the effective date of such resignation.

10.   Representations and Warranties. The Company represents and warrants to CIBC that this Agreement has been duly authorized, executed and delivered by the Company, and, assuming the due execution by the Financial Advisor, constitutes a legal, valid and binding agreement of the Company, enforceable against the Company, in accordance with its terms.

11.   Indemnification. The Company agrees to indemnify CIBC in accordance with Schedule A annexed hereto.

**Appendix 242**

CIBC World Markets Corp.

12.   Survival of Certain Provisions.   The representations and warranties of the Company contained in Section 10 and the indemnifications provided in Schedule A of this Agreement shall remain operative and in full force and effect regardless of (a) any investigation made by or on behalf of the Financial Advisor, or by or on behalf of any affiliate of the Financial Advisor or any person controlling either, (b) the resignation of the Financial Advisor or any termination of the Financial Advisor's services or (c) any termination of this Agreement, and shall be binding upon, and shall inure to the benefit of, any successors, assigns, heirs and personal representatives of the Company and the Financial Advisor.

13.   Notices.   Notice given pursuant to any of the provisions of this Agreement shall be in writing and shall be mailed or delivered (a) if to the Futures Representative, at the address listed above, Attention: R. Scott Williams; and (b) if to CIBC, at the offices of CIBC at 425 Lexington Avenue, 3rd Floor, New York, New York 10017, Attention: Joseph J. Radecki, Jr., Managing Director.

14.   Counterparts.   This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

15.   Assignment.   This Agreement may not be assigned by any party hereto without the prior written consent of the others, to be given in the sole discretion of the parties from whom such consent is being requested.   Any attempted assignment of this Agreement made without such consent may be void, at the option of the non-assigning parties.

16.   Third Party Beneficiaries.   This Agreement has been and is made solely for the benefit of the parties hereto, and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Agreement.

17.   Construction.   This Agreement incorporates the entire understanding of the parties and supersedes all previous agreements relating to the subject matter hereof and shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to principles of conflicts of law.

18.   Headings.   The section headings in this Agreement have been inserted as a matter of convenience of reference and are not part of this Agreement.

19.   Press Announcements.   At any time after the effective date of a Transaction, the Company or the Financial Advisor may place an announcement in such newspapers and publications as it may choose.

20.   Amendment.   This Agreement may not be modified or amended except in a writing duly executed by the parties hereto.

**Appendix 243**

CIBC World Markets Corp

Please sign and return an original and one copy of this letter to the undersigned to indicate your acceptance of the terms set forth herein, whereupon this letter and your acceptance shall constitute a binding agreement between the parties hereto as of the date first above written.

Sincerely.

**CIBC WORLD MARKETS CORP.**

By:

Joseph J. Radecki. Jr.
Managing Director

Accepted and Agreed:

**Futures Representative**

By:

R. Scott Williams

**Congoleum Corporation**

By:

Its: CFO

**Appendix 244**

CIBC World Markets Corp.

## SCHEDULE A

**Indemnity.** In consideration of CIBC's agreement to act on behalf of the Futures Representative, notwithstanding any limitations set forth herein, the Company agrees to indemnify and hold harmless CIBC, its agents, employees, officers and directors, and any person who controls CIBC within the meaning of Section 15 of Securities Act of 1933 ("the Act") or Section 20 of the Securities Exchange Act of 1934, as amended (each, an "Indemnified Party" and collectively, the "Indemnified Parties"), from and against any and all losses, claims, judgments, damages, liabilities and expenses (including, but not limited to, all reasonable legal expenses, any and all other expenses incurred in investigating, preparing or defending against any action or proceeding, commenced or threatened, whether or not any Indemnified Party is a named party) to which, jointly or severally, they may become subject, which arise out of or are based upon or in connection with (i) any transaction contemplated by this Agreement, or (ii) any statement of fact contained in any document prepared by the Company that is false or misleading or any omission to state therein a material fact required to be stated therein or necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading. Notwithstanding the foregoing, no Indemnified Party shall be entitled to indemnification under this Schedule A with respect to any action, suit or proceeding to the extent based upon his willful misconduct, bad faith or gross negligence ("Disabling Conduct") and any payment or reimbursement made to such Indemnified Party by the Company in connection with any such action or proceeding will be repaid by such Indemnified Party to the Company.

If any action or proceeding (including any governmental proceeding) is brought or asserted against an Indemnified Party in respect of which indemnity may be sought against the Company, such Indemnified Party shall promptly notify the Company in writing of the institution of such action or proceeding (with a copy to counsel for the Futures Representative). Each Indemnified Party shall give the Company (with a copy to counsel for the Futures Representative) prompt notice upon becoming aware of any claim for which indemnity or contribution may be sought hereunder; failure to provide such notice will not, however, relieve the Company from any obligation or liability it has hereunder or otherwise, except to the extent such failure causes the Company to be prejudiced thereby. The Company, at its option, may assume the defense of any such claim with counsel reasonably satisfactory to CIBC, except if such Indemnified Party has been advised by counsel that, due to a conflict of interest or because there may be legal defenses available to such Indemnified Party that are different from or additional to defenses available to the Company, separate counsel for the Company and such Indemnified Party is advisable, in which case the reasonable fees and expenses of CIBC's counsel shall be at the expense of the Company; provided, that, upon invoking such option the Company shall unconditionally and irrevocably commit in writing to bear all risk with respect to such claim and to keep such Indemnified Party informed of the progress of any such claim.

The Company agrees that, without the prior written consent of each of the relevant Indemnified Parties, it will not settle, compromise or consent to the entry of any judgment in any pending

**Appendix 245**

or threatened claim, action or proceeding in respect of which indemnification could be sought hereunder (whether or not such Indemnified Parties are actual or potential parties to such claim, action or proceeding), (i) that involves any equitable relief that binds or purports to bind such Indemnified Parties and (ii) unless such settlement, compromise or consent includes an unconditional release for such Indemnified Parties from all liability arising out of such claim, action or proceeding. CIBC and each such Indemnified Party shall have the right to employ separate counsel in any such action and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of CIBC or such Indemnified Party unless (a) the Company has agreed to pay such fees and expenses, or (b) the Company shall have failed to assume the defense of such action or proceeding. Unless the Company fails to assume the defense of an action or proceeding, the Company shall not be liable for any settlement of any such action or proceeding effected without its written consent (which shall not be unreasonably withheld or delayed), but if the Company has failed to assume such defense, if such claim is settled with the Company's written consent, or if there be a final judgment for the plaintiff in any such action or proceeding, the Company agrees to indemnify and hold harmless CIBC and any such Indemnified Party from and against any loss, liability damage or expense by reason of such settlement or judgment.

If the indemnification provided for in this Schedule A is unavailable to an Indemnified Party in respect of any losses, claims, damages, liabilities and expenses referred to herein or insufficient to hold an indemnified person harmless (other than by reason of such Person's Disabling Conduct), then the Company agrees that in lieu of indemnifying such Indemnified Party, it shall contribute to the amount paid or payable by such Indemnified Party as a result of such losses, claims, damages, liabilities and expenses (i) in such proportion as is appropriate to reflect the relative benefits received by it on the one hand and the Indemnified Party on the other from the services rendered under this Agreement or (ii) if the allocation provided by clause (i) above is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) above but also the relative fault of the Company on the one hand and of the Indemnified Party on the other in connection with the untrue statements or omissions or other actions (or alleged untrue statements, omissions or other actions) which resulted in such losses, claims, damages, liabilities and expenses, as well as any other relevant equitable considerations. The relative fault of the Company on the one hand and of the Indemnified Party on the other shall be determined by reference to, among other things, whether such untrue statements or omissions or other actions (or alleged untrue statements, omissions or other actions) relate to information supplied or action taken by the Company on the one hand or by the Indemnified Party on the other and the relevant persons' relative intent, knowledge, access to information and opportunity to correct or prevent such untrue statements, omissions or actions. The amount paid or payable by a party as a result of the losses, claims, damages, liabilities and expenses referred to above shall be deemed to include any legal or other fees or expenses reasonably incurred by such party in connection with investigating or defending any action or claim. The Company and CIBC agree that it would not be just and equitable if contribution pursuant to this Schedule A were determined by pro rata allocation or by any other method of allocation which does not take account of the equitable considerations referred to above.

**Appendix 246**

-2-

The aforesaid indemnity and contribution agreements shall apply to any activities engaged in by any Indemnified Party pursuant to this Agreement and to any modification of CIBC's engagement hereunder, and shall remain in full force and effect regardless of any investigation made by or on behalf of CIBC or any of its agents, employees, officers, directors or controlling persons and shall survive the termination of this Agreement or the consummation of a Transaction. The Company agrees promptly to notify CIBC of the commencement of any litigation or proceeding against it or any of its directors, officers, agents or employees in connection with the transactions contemplated hereby. The agreements contained in this Schedule A shall remain in full force and effect following the completion or termination of CIBC's engagement hereunder and shall be in addition to any liability that the Company may otherwise have to CIBC and its agents, employees, officers, directors or controlling persons.

The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company, its owners, creditors or security holders for or in connection with advice or services rendered or to be rendered by CIBC pursuant to this Agreement, the Transaction contemplated hereby or any Indemnified Party's actions or inactions in connection with any such advice, services or transactions except for liabilities (and related expenses) of the Company that are determined to have resulted from such Indemnified Party's Disabling Conduct in connection with any such advice, actions, inactions or services.

-3-

Stephen B. Ravin, Esq. (SBR7074)
Bruce J. Wisotsky, Esq. (BJW2026)
RAVIN GREENBERG PC
101 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 226-1500

Roger Frankel, Esq. (RF5716)
Richard H. Wyron, Esq. (RHW4331)
Jonathan P. Guy, Esq. (JPG0656)
SWIDLER BERLIN SHEREFF FRIEDMAN, LLP
3000 K Street, N.W., Suite 300
Washington, DC 20007-5116
(202) 424-7500

Counsel for the
Future Claimants Representative

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In Re: | : | Chapter 11 |
| CONGOLEUM CORPORATION, et al., | : | Case No. 03-51524(KCF) |
| | | (Jointly Administered) |
| Debtors. | : | |

---

### NOTICE OF APPLICATION OF R. SCOTT WILLIAMS, AS FUTURE
### CLAIMANTS REPRESENTATIVE, FOR AUTHORIZATION TO
### EMPLOY CIBC WORLD MARKETS CORP. AS FINANCIAL ADVISOR

TO:   THE HONORABLE KATHRYN C. FERGUSON
       UNITED STATES BANKRUPTCY JUDGE

       ALL PARTIES ON THE ANNEXED SERVICE LIST

       PLEASE TAKE NOTICE that R. Scott Williams, as Future Claimants Representative

(the "FCR") has filed an Application for authorization to employ CIBC World Markets Corp. as

his financial advisor in the above matter.

PLEASE TAKE FURTHER NOTICE that any objections to the granting of the relief requested shall be filed with the Clerk of Bankruptcy Court and served on the undersigned counsel within five (5) business days of the above date.

PLEASE TAKE FURTHER NOTICE that in the event no objections are timely filed, the Court may enter an Order granting the FCR's Application without further notice or hearing.

RAVIN GREENBERG PC
Co-Counsel for the
Future Claimants Representative


_/s/ Stephen B. Ravin_____
Stephen B. Ravin

Dated: March 12, 2004
P:\Williams, R. Scott\FinancialNOTICE

-2-

Stephen B. Ravin, Esq. (SBR7074)
Bruce J. Wisotsky (BJW2026)
RAVIN GREENBERG PC
101 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 226-1500

Roger Frankel, Esq. (RF5716)
Richard H. Wyron, Esq. (RHW4331)
Jonathan P. Guy, Esq. (JPG0656)
SWIDLER BERLIN SHEREFF FRIEDMAN, LLP
3000 K Street, N.W., Suite 300
Washington, DC 20007-5116
(202) 424-7500

Counsel for the
Future Claimants Representative

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| CONGOLEUM CORPORATION, et al., | Case No. 03-51524 (KCF) (Jointly Administered) |
| Debtors. | |

**DECLARATION OF JOSEPH J. RADECKI, JR. UNDER FED. R. BANKR. P. 2014
AND 2016(b) IN SUPPORT OF THE APPLICATION OF R. SCOTT WILLIAMS,
AS FUTURE CLAIMANTS REPRESENTATIVE, FOR AUTHORIZATION TO
EMPLOY CIBC WORLD MARKETS CORP. AS FINANCIAL ADVISOR
PURSUANT TO SECTION 1103(a) OF THE BANKRUPTCY CODE**

I, Joseph J. Radecki, Jr., state:

1.     I am a Managing Director in the Financial Restructuring Group of CIBC World

Markets Corp. ("CIBC"), which maintains offices at 425 Lexington Avenue, New York, NY

10017. This declaration is submitted pursuant to Fed. R. Bankr. P. 2014, 2016 and 5002, in

support of the Application of R. Scott Williams, as Future Claimants' Representative, for

Authorization to Employ CIBC as Financial Advisor pursuant to 11 U.S.C. § 1103(a) of the

Bankruptcy Code (the "Application"), filed by R. Scott Williams, Future Claimants'

Representative (the "FCR" or "Mr. Williams"), in the above-captioned cases.[1]

2.    Except as otherwise provided below, the facts set forth in this declaration are

based upon my personal knowledge, upon records maintained by CIBC in the ordinary course of

its business, which have been reviewed by me and/or by other employees of CIBC at my

direction, or upon information known by other employees of CIBC and conveyed to me.

### CIBC's Qualifications and the Scope of CIBC's Retention

3.    CIBC is a full service investment bank, which offers a comprehensive set of

products and services for its corporate and institutional clients. The FCR selected CIBC because

of CIBC's extensive experience and knowledge of various financial matters, especially as it

relates to complex corporate and capital structures, such as those at issue in these Chapter 11

cases.

4.    CIBC is well qualified to act as the FCR's financial advisor. CIBC provides

investment banking and financial advisory services from offices located throughout the United

States, Canada, Europe and Asia   CIBC's Financial Restructuring Group provides a range of

financial advisory, investment banking and valuation services to debtors and debtors-in-

possession, creditors' committees, acquirers, future claims representatives and other parties-in-

interest in connection with bankruptcy cases and financially distressed situations. CIBC's

professionals have served or are presently serving as financial advisors to debtors, creditors and

trustees in numerous Chapter 11 proceedings.

---

[1] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to
them in the Application.

Appendix 251

5.     The professionals assigned by CIBC to this engagement possess the requisite experience to handle complex bankruptcy matters. Professionals in CIBC's Financial Restructuring Group have been involved in transactions where in excess of $67 billion of securities have been affected.

6.     Beginning in June 2003, in connection with Mr. Williams' role as the legal representative for the interests of individuals who may assert asbestos related personal injury claims in the future against Congoleum Corporation ("Congoleum" and collectively with Congoleum Fiscal, Inc. and Congoleum Sales, Inc., the "Debtors"), Mr. Williams retained CIBC to provide him with financial advisory services  A copy of the engagement letter between Mr. Williams and CIBC, dated June 26, 2003 (the "Engagement Agreement") is attached hereto as Exhibit A.  The FCR, his legal counsel, Swidler Berlin Shereff Friedman, LLP, and CIBC conducted due diligence with respect to the Debtors, their parent corporation, their financial affairs, their pre-petition transactions, and the Debtors' proposed plan  In particular, CIBC analyzed the financial condition of the Debtors and advised on the structure of the Debtors' proposed plan and related plan documents.  As a result of its pre-petition work, CIBC is familiar with the Debtors' businesses, operations and management, and financial affairs, as well as the Debtors' proposed plan of reorganization and related documents.  CIBC is also familiar with the concerns and issues important to the FCR and to the asbestos personal injury claimants who may assert claims or demands in the future.

7.     The FCR desires to utilize, in these Chapter 11 cases, the experience, expertise, and existing knowledge of CIBC's professionals who have worked on his behalf pre-petition. The FCR believes that continued retention of CIBC with respect to the specific matters described

3

below is essential to the FCR's role in these cases, and that CIBC is well suited to assist the FCR

as his financial advisor during these Chapter 11 cases.

      8.     The FCR requested that CIBC render the following services in connection with

these cases, which services are set forth in the Engagement Agreement:

     a.  analyze and advise on the financial position, cash flow, financial history and
        assets of Congoleum;

     b.  assist the FCR by (a) presenting general valuation and capital structure options for
        Congoleum, (b) advising on the structure of the promissory note and/or other
        assets provided to the plan trust, and (c) assisting in formulating, negotiating and
        consummating the Debtors' proposed plan of reorganization and related plan
        documents; and

     c.  provide testimony in connection with the restructuring of Congoleum and the
        implementation of the Debtors' proposed plan of reorganization at the request of
        the FCR.

Subject to the Court's approval of the Application, CIBC is willing to serve as financial advisor

to the FCR and to perform the services described above.

### Disinterestedness of CIBC

      9.     In order to prepare this declaration, CIBC has taken various steps to determine

whether any conflict of interest exists that would preclude CIBC from serving as financial

advisor to the FCR. In connection with CIBC's proposed engagement in these cases, I reviewed

or caused to be reviewed CIBC's business records to determine, among other things, (i) whether

CIBC already represents any other client in connection with the proposed new matter, (ii)

whether CIBC already represents any other client in a capacity that may be adverse to the

proposed client, or where the proposed representation might be adverse to the interests of such

other client, and (iii) whether CIBC has any connections with the Debtors, their creditors and

other parties identified to me as parties in interest.

10. Once this review process identified a potential connection between CIBC and a listed party in interest, I or employees working under my supervision elicited information to discern the nature and scope of the representation or connection for appropriate disclosure in this declaration.

11. Based upon the review of the business records, as set forth above, and the resulting inquiries, and responses from individual CIBC officers, directors and/or employees, I have identified the following matters:

    a. Prior to the Petition Date, CIBC provided financial advice to the FCR in his capacity as legal representative for persons who may assert asbestos related personal injury claims or demands in the future against Congoleum.

    b. The Commercial Banking division of CIBC World Markets Inc. ("CIBCWM"), a Canadian affiliate of CIBC, has provided commercial banking services to American Biltrite (Canada) Ltd. ("ABI") and certain of its Canadian subsidiaries. Currently, CAD$5.7 million of a CAD$11.0 million line of credit and a CAD$4.125 million senior amortizing term loan are outstanding, as well as CAD$400,000 in forward exchange contracts.

12. Upon identifying a potential conflict or the potential appearance of a conflict, CIBC follows certain procedures in order to ensure that any other representation is not materially adverse to the interests of relevant parties in interest in a particular case so as to compromise CIBC's disinterestedness. Such procedures include considering the nature and extent of the relationship with any party in any other representation, the size of any loans or amount of investment banking activities undertaken for any other party, the closeness of the business group or groups within CIBC transacting with such other party to that of CIBC's Financial Restructuring Group and the implementation of any appropriate safeguards, such as so called "Chinese Walls". Upon learning of the ABI relationship in July 2003, CIBC implemented the appropriate procedures in these cases to ensure CIBC's disinterestedness, including reviewing the relationship with its internal legal department and imposing Chinese Walls. With respect to

Appendix 254

CIBCWM's Commercial Banking Division's banking relationship with ABI, the relationship is maintained by a separate Canadian division of CIBC based in Quebec, Canada whose commercial banking activities never overlap with the investment banking activities provided by CIBC's Financial Restructuring Group. Additionally, the extent of the relationship is relatively minor when comparing less than $12 million of aggregate exposure to ABI to the size of CIBC's and its affiliates' overall business, which has over $8.7 billion in revenues, $209 billion in total balance sheet assets and $105 billion in loans and acceptances, and over a $19 billion market capitalization.

13.    The Debtors have or may have other parties in interest, and CIBC may have rendered or may be rendering services to certain of such parties, or may become involved in matters unrelated to these cases in which such parties, or attorneys or accountants for such parties, were, are or become, involved. CIBC also may have or represent interests adverse to such creditors or parties in interest in matters unrelated to these cases. Based on the information currently available, CIBC believes that no such matter involves representation of any interest adverse to the FCR on the matters upon which CIBC is to be engaged.

14.    In addition to the foregoing, CIBC's officers, directors and employees may have business associations with, professional and social relationships with, or interests adverse to, creditors or parties in interest, or their attorneys, accountants or advisors; as far as I have been able to ascertain, none of these associations, relationships, or interests have any connection with these cases. As part of its practice, CIBC provides its services in cases, proceedings and transactions throughout the United States involving many different parties, and works together with many different parties, which may include creditors or parties in interest, or attorneys,

accountants or other professional firms or advisors who may represent creditors or parties in interest in these cases.

15.     To the best of my knowledge, no officer, director or employee at CIBC is related to any United States District Judge or United States Bankruptcy Judge for the District of New Jersey or to the United States Trustee for this district or to any known employee of his office.

16.     None of the representations described above are materially adverse to the interests of the Debtors, their estates, any class of creditors or equity security holders, the future asbestos personal injury claimants, or the FCR. Thus, CIBC is disinterested and may serve as financial advisor to the FCR notwithstanding its connection to parties in interest in the unrelated matters described above.

17.     As far as I have been able to ascertain to date and to the best of my knowledge, and except as otherwise set forth herein, CIBC (a) does not hold or represent any interest adverse to the FCR on the matters upon which CIBC is to be engaged and (b) has no connection with the Debtors, creditors, any other party in interest, their respective attorneys and retained professionals, the United States Trustee or any person employed in his office (to the extent identified to CIBC).

### Professional Compensation

18.     Upon signing the Engagement Agreement, Congoleum paid CIBC the agreed fixed fee of $150,000.00 in full payment for services rendered pre-petition to the FCR, as described above, as well as for providing testimony post-petition. If the Debtors' proposed Plan is not implemented within a reasonable time frame, or the FCR desires to extend the nature of CIBC's assignment beyond the scope of work described in the Engagement Agreement, the FCR and CIBC will seek to mutually agree, if possible, on an alternative compensation agreement

The FCR would then submit any agreement reached with CIBC to this Court for approval. In addition, consistent with the Engagement Agreement, Congoleum paid CIBC a total of $1,014.41 as full reimbursement for CIBC's expenses incurred prior to the Petition Date. Accordingly, CIBC intends to apply at this time only for reimbursement of actual and necessary expenses incurred post-petition in rendering the services set forth in the Engagement Agreement, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and Orders of this Court.

19.    Pursuant to the Engagement Agreement, Joseph J. Radecki, Jr. will be primarily responsible for performing financial advisory services in these cases, so long as he continues to be employed by CIBC. CIBC will provide appropriate levels of staffing to complete the engagement in a timely and commercially reasonable manner.

20.    Pursuant to the Engagement Agreement, Congoleum agrees to reimburse CIBC for its reasonable out-of-pocket expenses incurred in connection with the provision of services. Such services include, but are not limited to, travel and lodging, data processing and communications charges, research and courier services and similar costs.

21.    It is CIBC's policy to charge its clients for reasonable out-of-pocket expenses incurred in connection with the provision of services, including, but not limited to, travel and lodging, data processing and communication charges, photocopying, research and courier services, and similar costs. CIBC will provide invoices for these expenses in a manner and at rates consistent with charges made generally to CIBC's other clients and will apply for reimbursement for such expenses in accordance with the applicable provision of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and Orders of the Court. CIBC has agreed to accept as reimbursement from the Debtors' estates such sums as may be allowed by the Court.

22.    To the best of my knowledge, no promises have been received by CIBC nor any officer, director or employee thereof as to payment or compensation in connection with the above-captioned cases other than in accordance with applicable provisions of the Bankruptcy Code. To the best of my knowledge, CIBC has no agreement with any other entity to share with such entity compensation received by CIBC in connection with the Debtors' bankruptcy cases, except as permitted by Section 504(b)(1) of the Bankruptcy Code.

\* \* \* \* \* \*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on ___3 – 11___, 2004

_____
Joseph D Radecki, Jr

Sworn to before me this
_11th_ day of _March_ 2004.

_Judith Chaitow_
NOTARY PUBLIC

**JUDITH CHAITOW**
**Notary Public, State of New York**
**No. 31-4689789**
**Qualified in New York County**
**Commission Expires February 28, 2006**

# EXHIBIT A

# CIBC WORLD MARKETS

CIBC World Markets Corp
425 Lexington Avenue
New York, NY 10016

Tel: 212 885-4400
Fax 212 885-4998

June 26, 2003

R. Scott Williams, Esq.
Haskell Slaughter Young & Rediker, LLC
1400 Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203

Dear Mr. Williams:

This letter agreement (the "Agreement") confirms that R. Scott Williams, Esq., the representative for future asbestos-related personal injury claimants (the "Futures Representative") to Congoleum Corporation (the "Company") retains CIBC World Markets Corp. ("CIBC" or "Financial Advisor") to act as the Futures Representative's financial advisor in connection with a proposed restructuring of the Company and implementation of a trust as contemplated under Section 524(g) of the Bankruptcy Code (the "Transaction"). The Company, subject to the terms and conditions hereof, agrees to compensate CIBC for the services that CIBC renders pursuant to the terms hereof.

1.    Retention. The Futures Representative hereby retains CIBC in connection with the analysis of the financial position, cash flow requirements, financial history, operations, competitive environment, and assets of the Company. CIBC will assist the Futures Representative by (a) presenting general valuation and capital structure options for the Company; (b) advising on the structuring of the Promissory Note (as described in recent preliminary term sheets) and/or other assets provided to the 524(g) Trust; and (c) generally assisting in formulating, negotiating and consummating the Transaction. In addition, when necessary, CIBC professionals will provide testimony in connection with the Transaction. Together, the aforementioned will constitute the "Initial Scope".

2.    Staffing. The Futures Representative and CIBC agree that this engagement will be primarily staffed by Joseph J. Radecki, Jr., so long as be continues to be employed by CIBC. CIBC will also provide appropriate levels of staffing to complete the engagement in a timely and commercially reasonable manner.

3.    Information on the Company. In connection with the Financial Advisor's activities hereunder, the Company will furnish us upon request with all material and information regarding the business and financial condition of the Company

Appendix 260

(all such information so furnished being the "Information"). It is recognized and confirmed that CIBC: (a) will use and rely primarily on the Information, and on information available from generally recognized public sources in performing the services contemplated by this letter without having independently verified the same; (b) does not assume responsibility for the accuracy or completeness of the Information and such other information; (c) will not make an appraisal of any assets of the Company; and (d) retains the right to continue to perform due diligence during the course of the engagement. The Financial Advisor agrees to be bound by that certain Confidentiality Agreement Between Congoleum Corporation and R. Scott Williams as Legal Representative dated June 11, 2003, as provided in paragraph 6 thereof, provided however, that the Financial Advisor is authorized to use and disclose Confidential Information in connection with any testimony (including deposition testimony) given in connection with any litigation or adversary proceeding involving the Company. The Financial Advisor further agrees to keep the Information confidential so long as it is and remains non-public, unless disclosure is required by law or requested by any government, regulatory or self-regulatory agency or body, and the Financial Advisor will not make use thereof, except in connection with our services hereunder for the Futures Representative.

4.   Use of Name.  The Futures Representative and the Company agree that any reference to the Financial Advisor in any release or communication or materials distributed is subject to the Financial Advisor's prior written approval, unless such release or communication is required by law or regulation.  If the Financial Advisor resigns prior to the dissemination of any such release, communication or material, no reference shall be made therein to the Financial Advisor. Except as otherwise permitted under paragraph 19 below, the Financial Advisor agrees that any reference to the Company in any release or communication or materials distributed is subject to the Company's prior written approval, and any reference to the Futures Representative in any release or communication or materials distributed is subject to the Futures Representative's prior written approval, unless in either case such release or communication is required by law or regulation.

5.   Use of Advice.  No advice rendered by the Financial Advisor in connection with the services performed by the Financial Advisor pursuant to this Agreement will be quoted by the Futures Representative or the Company, nor will any such advice be referred to, in any report, document, release or other communication, whether written or oral, prepared, issued or transmitted by the Futures Representative, the Company or any person or corporation controlling, controlled by or under common control with the Company or any director, officer, employee, agent or representative of the Company, without the prior written authorization of the Financial Advisor, except to the extent required by law (in which case the appropriate party shall so advise the other in writing prior to such use and shall consult with the other with respect to the form and timing of disclosure), provided that the foregoing shall not prohibit appropriate internal

CIBC World Markets Corp.

communication or reference with respect to such advice internally within such parties.

6. _Compensation._ In full payment for services rendered and to be rendered hereunder by CIBC, CIBC shall be paid in cash by the Company a fee of $150,000.00 payable in advance upon the signing of this Agreement.

CIBC and the Futures Representative acknowledge that the compensation proposed has been accepted by all parties based on their understanding of the proposed Transaction and the Initial Scope. Should such Transaction not be implemented within a reasonable time frame, or the nature of the assignment extend beyond the Initial Scope, all parties agree that they will seek to mutually agree, if possible, on an alternative compensation arrangement.

7. _Expenses._ Without in any way reducing or affecting the provisions of Exhibit A hereto, the Company shall reimburse CIBC for its reasonable out-of-pocket expenses incurred in connection with the provision of services hereunder. Out-of-pocket expenses shall include, but not be limited to, travel and lodging, data processing and communication charges, and research and courier services.

8. _Liability for Fees and Expenses._ The Company shall be solely responsible for the payment of compensation and reimbursement of expenses to CIBC under this Agreement. The Futures Representative shall not be liable for the payment of any compensation or reimbursement of any expenses to CIBC hereunder.

9. _Termination Provision._ This Agreement will be effective as of the date set out on the first page hereof. CIBC may resign at any time for cause (including the Company's failure to pay compensation or reimburse expenses as and when due), and the Futures Representative may terminate CIBC's services at any time, each by giving 30 days notice to the other. If the Futures Representative terminates CIBC's services for any reason, CIBC shall be entitled to receive all of the amounts due pursuant to Sections 6 and 7 hereof, up to and including the effective date of such termination. If CIBC resigns, CIBC shall be entitled to receive all of the amounts pursuant to Sections 6 and 7 hereof, up to and including the effective date of such resignation.

10. _Representations and Warranties._ The Company represents and warrants to CIBC that this Agreement has been duly authorized, executed and delivered by the Company, and, assuming the due execution by the Financial Advisor, constitutes a legal, valid and binding agreement of the Company, enforceable against the Company, in accordance with its terms.

11. _Indemnification._ The Company agrees to indemnify CIBC in accordance with Schedule A annexed hereto.

CIBC World Markets Corp.

12.    Survival of Certain Provisions.  The representations and warranties of the Company contained in Section 10 and the indemnifications provided in Schedule A of this Agreement shall remain operative and in full force and effect regardless of (a) any investigation made by or on behalf of the Financial Advisor, or by or on behalf of any affiliate of the Financial Advisor or any person controlling either, (b) the resignation of the Financial Advisor or any termination of the Financial Advisor's services or (c) any termination of this Agreement, and shall be binding upon, and shall inure to the benefit of, any successors, assigns, heirs and personal representatives of the Company and the Financial Advisor.

13.    Notices.  Notice given pursuant to any of the provisions of this Agreement shall be in writing and shall be mailed or delivered (a) if to the Futures Representative, at the address listed above, Attention: R. Scott Williams; and (b) if to CIBC, at the offices of CIBC at 425 Lexington Avenue, 3rd Floor, New York, New York 10017, Attention: Joseph J. Radecki, Jr., Managing Director.

14.    Counterparts.  This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

15.    Assignment.  This Agreement may not be assigned by any party hereto without the prior written consent of the others, to be given in the sole discretion of the parties from whom such consent is being requested.  Any attempted assignment of this Agreement made without such consent may be void, at the option of the non-assigning parties.

16.    Third Party Beneficiaries.  This Agreement has been and is made solely for the benefit of the parties hereto, and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Agreement.

17.    Construction.  This Agreement incorporates the entire understanding of the parties and supersedes all previous agreements relating to the subject matter hereof and shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to principles of conflicts of law.

18.    Headings.  The section headings in this Agreement have been inserted as a matter of convenience of reference and are not part of this Agreement.

19.    Press Announcements.  At any time after the effective date of a Transaction, the Company or the Financial Advisor may place an announcement in such newspapers and publications as it may choose.

20.    Amendment.  This Agreement may not be modified or amended except in a writing duly executed by the parties hereto.

CIBC World Markets Corp

Please sign and return an original and one copy of this letter to the undersigned to indicate your acceptance of the terms set forth herein, whereupon this letter and your acceptance shall constitute a binding agreement between the parties hereto as of the date first above written.

Sincerely,

**CIBC WORLD MARKETS CORP,**

By: _____

Joseph J. Radecki, Jr.
Managing Director

Accepted and Agreed:

**Futures Representative**

By: _____

R. Scott Williams

**Congoleum Corporation**

By: _____

Its: _____CFO_____

**Appendix 264**

CIBC World Markets Corp.

## SCHEDULE A

Indemnity. In consideration of CIBC's agreement to act on behalf of the Futures Representative, notwithstanding any limitations set forth herein, the Company agrees to indemnify and hold harmless CIBC, its agents, employees, officers and directors, and any person who controls CIBC within the meaning of Section 15 of Securities Act of 1933 ("the Act") or Section 20 of the Securities Exchange Act of 1934, as amended (each, an "Indemnified Party" and collectively, the "Indemnified Parties"), from and against any and all losses, claims. judgments, damages, liabilities and expenses (including, but not limited to, all reasonable legal expenses, any and all other expenses incurred in investigating, preparing or defending against any action or proceeding, commenced or threatened, whether or not any Indemnified Party is a named party) to which, jointly or severally, they may become subject, which arise out of or are based upon or in connection with (i) any transaction contemplated by this Agreement, or (ii) any statement of fact contained in any document prepared by the Company that is false or misleading or any omission to state therein a material fact required to be stated therein or necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading. Notwithstanding the foregoing, no Indemnified Party shall be entitled to indemnification under this Schedule A with respect to any action, suit or proceeding to the extent based upon his willful misconduct, bad faith or gross negligence ("Disabling Conduct") and any payment or reimbursement made to such Indemnified Party by the Company in connection with any such action or proceeding will be repaid by such Indemnified Party to the Company.

If any action or proceeding (including any governmental proceeding) is brought or asserted against an Indemnified Party in respect of which indemnity may be sought against the Company, such Indemnified Party shall promptly notify the Company in writing of the institution of such action or proceeding (with a copy to counsel for the Futures Representative). Each Indemnified Party shall give the Company (with a copy to counsel for the Futures Representative) prompt notice upon becoming aware of any claim for which indemnity or contribution may be sought hereunder; failure to provide such notice will not. however. relieve the Company from any obligation or liability it has hereunder or otherwise, except to the extent such failure causes the Company to be prejudiced thereby. The Company, at its option, may assume the defense of any such claim with counsel reasonably satisfactory to CIBC, except if such Indemnified Party has been advised by counsel that, due to a conflict of interest or because there may be legal defenses available to such Indemnified Party that are different from or additional to defenses available to the Company, separate counsel for the Company and such Indemnified Party is advisable, in which case the reasonable fees and expenses of CIBC's counsel shall be at the expense of the Company; provided, that, upon invoking such option the Company shall unconditionally and irrevocably commit in writing to bear all risk with respect to such claim and to keep such Indemnified Party informed of the progress of any such claim.

The Company agrees that, without the prior written consent of each of the relevant Indemnified Parties, it will not settle. compromise or consent to the entry of any judgment in any pending

**Appendix 265**

AUG 12 2003 10:16 FR SAUL EWING    2024247645    PAGE.08

or threatened claim, action or proceeding in respect of which indemnification could be sought hereunder (whether or not such Indemnified Parties are actual or potential parties to such claim, action or proceeding), (i) that involves any equitable relief that binds or purports to bind such Indemnified Parties and (ii) unless such settlement, compromise or consent includes an unconditional release for such Indemnified Parties from all liability arising out of such claim, action or proceeding. CIBC and each such Indemnified Party shall have the right to employ separate counsel in any such action and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of CIBC or such Indemnified Party unless (a) the Company has agreed to pay such fees and expenses, or (b) the Company shall have failed to assume the defense of such action or proceeding. Unless the Company fails to assume the defense of an action or proceeding, the Company shall not be liable for any settlement of any such action or proceeding effected without its written consent (which shall not be unreasonably withheld or delayed), but if the Company has failed to assume such defense, if such claim is settled with the Company's written consent or if there be a final judgment for the plaintiff in any such action or proceeding, the Company agrees to indemnify and hold harmless CIBC and any such Indemnified Party from and against any loss, liability damage or expense by reason of such settlement or judgment.

If the indemnification provided for in this Schedule A is unavailable to an Indemnified Party in respect of any losses, claims, damages, liabilities and expenses referred to herein or insufficient to hold an indemnified person harmless (other than by reason of such Person's Disabling Conduct), then the Company agrees that in lieu of indemnifying such Indemnified Party, it shall contribute to the amount paid or payable by such Indemnified Party as a result of such losses, claims, damages, liabilities and expenses (i) in such proportion as is appropriate to reflect the relative benefits received by it on the one hand and the Indemnified Party on the other from the services rendered under this Agreement or (ii) if the allocation provided by clause (i) above is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) above but also the relative fault of the Company on the one hand and of the Indemnified Party on the other in connection with the untrue statements or omissions or other actions (or alleged untrue statements, omissions or other actions) which resulted in such losses, claims, damages, liabilities and expenses, as well as any other relevant equitable considerations. The relative fault of the Company on the one hand and of the Indemnified Party on the other shall be determined by reference to, among other things, whether such untrue statements or omissions or other actions (or alleged untrue statements, omissions or other actions) relate to information supplied or action taken by the Company on the one hand or by the Indemnified Party on the other and the relevant persons' relative intent, knowledge, access to information and opportunity to correct or prevent such untrue statements, omissions or actions. The amount paid or payable by a party as a result of the losses, claims, damages, liabilities and expenses referred to above shall be deemed to include any legal or other fees or expenses reasonably incurred by such party in connection with investigating or defending any action or claim. The Company and CIBC agree that it would not be just and equitable if contribution pursuant to this Schedule A were determined by pro rata allocation or by any other method of allocation which does not take account of the equitable considerations referred to above.

-2-

Received    Aug-12-03    10:14am    From-215 972 7725    To-    Page 10

The aforesaid indemnity and contribution agreements shall apply to any activities engaged in by any Indemnified Party pursuant to this Agreement and to any modification of CIBC's engagement hereunder, and shall remain in full force and effect regardless of any investigation made by or on behalf of CIBC or any of its agents, employees, officers, directors or controlling persons and shall survive the termination of this Agreement or the consummation of a Transaction. The Company agrees promptly to notify CIBC of the commencement of any litigation or proceeding against it or any of its directors, officers, agents or employees in connection with the transactions contemplated hereby. The agreements contained in this Schedule A shall remain in full force and effect following the completion or termination of CIBC's engagement hereunder and shall be in addition to any liability that the Company may otherwise have to CIBC and its agents, employees, officers, directors or controlling persons.

The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company, its owners, creditors or security holders for or in connection with advice or services rendered or to be rendered by CIBC pursuant to this Agreement, the Transaction contemplated hereby or any Indemnified Party's actions or inactions in connection with any such advice, services or transactions except for liabilities (and related expenses) of the Company that are determined to have resulted from such Indemnified Party's Disabling Conduct in connection with any such advice, actions, inactions or services.

7135702v2

Stephen B. Ravin, Esq. (SBR7074)
Bruce J. Wisotsky, Esq. (BJW2026)
RAVIN GREENBERG PC
101 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 226-1500

Roger Frankel, Esq. (RF5716)
Richard H. Wyron, Esq. (RHW4331)
Jonathan P. Guy, Esq. (JPG0656)
SWIDLER BERLIN SHEREFF FRIEDMAN, LLP
3000 K Street, N.W., Suite 300
Washington, DC 20007-5116
(202) 424-7500

Counsel for the
Future Claimants Representative

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In Re: | : | Chapter 11 |
| CONGOLEUM CORPORATION, et al., | : | Case No. 03-51524(KCF) |
| | | (Jointly Administered) |
| Debtors. | : | |

_____

### CERTIFICATION OF COMPLIANCE WITH D.N.J. LBR 2014-1(a)

STEPHEN B. RAVIN, hereby certifies as follows:

1.      I am a member of the firm of Ravin Greenberg, PC, co-counsel for the Future Claimants Representative in the above matter.

2.      I hereby certify that I have complied with the requirements of D.N.J. LBR 2014-1(a) with respect to Application of R. Scott Williams, as Future Claimants Representative, for Authorization to Employ CIBC World Markets Corp. as Financial Advisor for the Future Claimants Representative.

　　　　　　　　　　　 /s/ Stephen B. Ravin
　　　　　　　　　　　STEPHEN B. RAVIN

**Appendix 268**

Dated:  March 12, 2004
P:\Williams, R. Scott\FinancialCOMPLY

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
Caption in Compliance with D.N.J. LBR 9004-2(c)

Stephen B. Ravin, Esq. (SBR7074)
Bruce J. Wisotsky, Esq. (BW2026)
**RAVIN GREENBERG** PC
101 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 226-1500

Roger Frankel, Esq. (RF5716)
Richard H. Wyron, Esq. (RHW4331)
Jonathan P. Guy, Esq. (JPG)
**SWIDLER BERLIN SHEREFF FRIEDMAN, LLP**
3000 K Street, N.W., Suite 300
Washington, DC 20007-5116
(201) 424-7500

Counsel for the
Future Claimants Representative

| | |
|---|---|
| In Re:<br><br>CONGOLEUM CORPORATION, et al.,<br><br>          Debtors. | Case No.: 03-51524(KCF)<br><br>Chapter 11 |

### ORDER AUTHORIZING EMPLOYMENT OF CIBC WORLD MARKETS CORP. AS FINANCIAL ADVISOR TO R. SCOTT WILLIAMS, AS FUTURE CLAIMANTS REPRESENTATIVE

The relief set forth on the following page, numbered two (2), is hereby ORDERED.

**Page 2**

Debtors:        Congoleum Corporation, et al.

Case No.:      03-51524(KCF)

Caption:      **ORDER AUTHORIZING EMPLOYMENT OF CIBC WORLD MARKETS CORP. AS FINANCIAL ADVISOR TO R. SCOTT WILLIAMS, AS FUTURE CLAIMANTS REPRESENTATIVE**

---

Upon the Application of R. Scott Williams, as Future Claimants Representative, through his counsel, Ravin Greenberg PC and Swidler Berlin Shereff Friedman, LLP, for the entry of an Order authorizing the retention of CIBC World Markets Corp. as financial advisor to the Future Claimants Representative; and due cause appearing for the entry of the within Order;

**IT IS HEREBY**

**ORDERED,** that the Future Claimants Representative be and same is hereby authorized to retain CIBC World Markets Corp. as financial advisor in this matter, effective as of the February 13, 2004; and it is further

**ORDERED,** that compensation to CIBC World Markets Corp. as financial advisor to the Future Claimants Representative, shall be fixed by further order of this Court, upon submission of an appropriate Application, in accordance with the provisions of the United States Bankruptcy Code, or pursuant to orders entered by the Court in the within matter.

P:\Williams, R. Scott\FinancialORDER