# TAB 13

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OWENS CORNING, et al. | ) | Case No. 00-3837 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Hearing Date:     January 28, 2002 at 1:00 p.m.** |
| | ) | **Objection Deadline: December 19, 2001 at 4:00 p.m.** |

**APPLICATION FOR ORDER AUTHORIZING RETENTION AND
EMPLOYMENT OF PETER J. SOLOMON COMPANY, AS INVESTMENT
BANKER AND FINANCIAL ADVISOR FOR JAMES J. McMONAGLE,
LEGAL REPRESENTATIVE FOR FUTURE CLAIMANTS**

James J. McMonagle (the "Futures Representative"), the Legal Representative for

Future Claimants appointed in the above-captioned bankruptcy proceedings, submits this

application (the "Application"), for entry of an order pursuant to sections 327(a), 328(a) and

1103(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the

"Bankruptcy Code"), authorizing the Futures Representative to retain and employ Peter J.

Solomon Company Limited ("PJSC"), as investment banker and financial advisor for the Futures

Representative, *nunc pro tunc* to November 6, 2001.[1]  In support of this Application, the Futures

Representative submits the Affidavit of Bradley I. Dietz (the "Dietz Affidavit"), a copy of which

is annexed hereto as Exhibit A, and respectfully represents as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this Application pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of the

Debtors' chapter 11 cases and this Application in this district is proper pursuant to 28 U.S.C.

---

[1]     Although approximately one month has expired since, the Futures Representative provided Debtors' counsel
with a draft of the instant Application and corresponding engagement letter for their review on November 14, 2001.

§§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 327(a), 328(a) and 1103(a) of the Bankruptcy Code, as complemented by Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

### A.   The Chapter 11 Filings

2.     On October 5, 2000 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for reorganization under Chapter 11 of the Bankruptcy Code.

3.     Since filing their petitions for relief, the Debtors have continued to manage and operate their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. On October 20, 2000, a general unsecured creditors' committee (the "Creditors' Committee") and an asbestos claimants' committee (the "Asbestos Committee" and, together with the Creditors' Committee, the "Committees") were appointed in these cases by the United States Trustee. By Order dated September 28, 2001, this Court appointed James J. McMonagle as Futures Representative, *nunc pro tunc* to June 12, 2001.

### B.   The Business of the Debtors

4.     The Company is a world leader in the manufacture and sale of building material systems and composites systems. The Company employs over 20,000 persons worldwide and is headquartered in Toledo, Ohio.

5.     The Company produces and sells insulation, roofing systems, exterior systems for the home and glass fiber materials used in composites. The Debtors conduct their manufacturing, distribution and sales operations primarily in the United States, but the Company has operations worldwide.

58518.1001

Appendix 276

6.    The Company had net sales of over $5 billion in 1998 and 1999 and comparable net sales in 2000.  Excluding provision for asbestos litigation claims, Owens Corning has been profitable for years.

7.    The Debtors commenced these Chapter 11 cases to protect the Company's business and value for all of its constituents, and to resolve all claims, including asbestos claims, asserted against it.

**C.    Asbestos Liability of the Debtors**

8.    As the Court is well aware, the high costs of settling and defending asbestos personal injury claims was the major reason for the Debtors' decision to seek the protection of the bankruptcy laws.  The valuation of future asbestos-related claims against Owens Corning and Fibreboard, and the availability of the protection of the section 524(g) injunction will be crucial elements in a successful reorganization of the Debtors.  Accordingly, due to the complexity of these cases, the Futures Representative has determined that the employment and retention of HRA is crucial to his effective representation of the future claimants (the "Future Claimants").

**RELIEF REQUESTED**

9.    By this Application, the Futures Representative respectfully requests that the Court issue and enter an order pursuant to sections 327(a), 328(a) and 1103(a) of the Bankruptcy Code and Rules 2014 and 2016 of the Bankruptcy Rules:

(a)    authorizing the retention and employment of PJSC as his financial advisor and investment banker for the purpose of providing financial advisory, investment banking and other related services in connection with the Debtors' chapter 11 cases in accordance with the terms of the retention letter agreement attached hereto as Exhibit B (the "Letter Agreement").

(b)     approving the proposed fee structure, including the indemnification provisions, set forth in the Letter Agreement;

(c)     approving the entitlement of the compensation and reimbursement payments due under the Letter Agreement to priority as expenses of administration under Sections 503(b)(1)(A) and 507(a)(1) of the Bankruptcy Code and determining that such payments thereunder shall be entitled to the benefits of any "carve outs" for professionals' fees and expenses in effect in these Chapter 11 cases pursuant to one or more financing orders now or hereinafter in effect; and

(d)     granting such other and further relief as this Court deems just and proper.

10.     The Futures Representative requests that PJSC's retention be *nunc pro tunc* to November 6, 2001, which is the date when PJSC commenced post-petition services to the Futures Representative.

## PJSC'S QUALIFICATIONS

11.     The Futures Representative selected PJSC because it is a leading independent investment banking firm that provides financial and strategic advisory services to a select group of institutional clients. Specifically, since the firm was established in 1989, PJSC's restructuring group has represented a diverse group of debtors, bondholders, creditors' committees, single classes of creditors and secured creditors. Indeed, PJSC has served as investment banker and financial advisor in many of the largest bankruptcy cases in the United States. PJSC has extensive and diverse experience, restructuring expertise and an excellent reputation in the restructuring field, as well as an understanding of the complex issues involved in these cases. As a result, the Futures Representative believes that PJSC possesses the necessary resources and is well qualified to provide the investment banking and financial advisory services that will be required in these cases.

12.     Accordingly, the Futures Representative believes that PJSC's retention is in the best interests of the Future Claimants, the Debtors and their estates.

## SERVICES TO BE RENDERED BY PJSC

13.     As set forth in the Letter Agreement, PJSC will provide the following professional services to the Futures Representative:

(a)     valuation of the Company as a going-concern, in whole or in part;

(b)     valuation analyses of the Company's asbestos exposure;

(c)     review of and consultation on the financing options for the Company, including proposed DIP financing;

(d)     review of and consultation on the potential divestiture, acquisition and merger transactions for the Company;

(e)     review of and consultation on the capital structure issues for the reorganized Company, including debt capacity;

(f)     review of and consultation on the financial issues and options concerning potential plans of reorganization, and coordinating negotiations with respect thereto;

(g)     review of and consultation on the Company's operating and business plans, including and analysis of the Company's long term capital needs and changing competitive environment;

(h)     testimony in court on behalf of the Futures Representative, if necessary; and

(i)     any other necessary services as the Futures Representative or the Futures Representative's counsel may request from time to time with respect to the financial, business and economic issues that may arise.

14.     By separate application, the Futures Representative is also seeking to retain Hamilton, Rabinovitz & Alschuler, as his claim evaluation consultant. The Futures Representative and all of his professionals will coordinate to the extent reasonably possible so as to avoid any duplication of effort.

## SALIENT TERMS OF THE LETTER AGREEMENT

15.     The principal terms of the Letter Agreement[2] are as follows:

**Term**: The Letter Agreement has an initial term of three (3) months commencing on the date of the Letter Agreement, and the Futures Representative has the right to continue the engagement on a month-to-month basis thereafter. The Futures Representative has the right to terminate the Letter Agreement after the Initial Period upon thirty (30) days' notice.

**Fees**:  As compensation for its services, PJSC proposes to charge the Futures Representative, a monthly advisory fee ("Advisory Fee") of one hundred and seventy-five thousand ($175,000) dollars, as well as seek periodic reimbursement of reasonable out-of-pocket expenses, including reasonable attorneys' fees.  PJSC is also entitled to seek a "Reorganization Fee" under the Agreement provided there is a plan of reorganization satisfactory to the Futures Representative and approval is granted by this Court.

16.     Additionally, as set forth in Exhibit A to the Letter Agreement, PJSC and certain related persons are entitled to be indemnified from and against certain losses and liabilities arising out of or related to the performance of its services on behalf of the Futures Representative.  The indemnity will not apply to any liability that has been "judicially determined to have resulted from the gross negligence, fraud, lack of good faith, bad faith, willful misfeasance, or reckless disregard of the obligations or duties of PJSC."  A virtually identical indemnity provision was approved by this Court in these very same chapter 11 cases in connection with the Creditors' Committee's retention of Houlihan Lokey Howard & Zukin as its financial advisor.

## APPROVAL OF THE TERMS OF PJSC'S ENGAGEMENT
## PURSUANT TO SECTION 328(a) OF THE BANKRUPTCY CODE

17.     The Futures Representative requests approval of the terms of PJSC's engagement, subject to the standard of review provided in section 328(a) of the Bankruptcy

---

[2]     This is only a summary of certain of the relevant provisions, and the Court and all parties are respectfully referred to Exhibit B for a complete statement of the terms of the Letter Agreement.

58518.1001

Appendix 280

Code.  Section 328(a) of the Bankruptcy Code provides, in part, that a committee "with the

court's approval, may employ or authorize the employment of a professional person under

section . . . 1103 . . . on any reasonable terms and conditions of employment, including a retainer,

on an hourly basis, or on a contingent fee basis." 11 U.S.C. § 328(a).  As recognized by

numerous courts, Congress intended in section 328(a) to enable debtors and committees to retain

professionals pursuant to specific fee arrangements to be determined at the time of the court's

approval of the retention, subject to reversal only if the terms are found to be improvident in light

of "developments not capable of being anticipated at the time of the fixing of such terms and

conditions." 11 U.S.C. § 328(a).  See In re Nat'l Gypsum Co., 123 F.3d 861, 862-63 (5th Cir.

1997) ("If the most competent professionals are to be available for complicated capital

restructuring and the development of successful corporate reorganization, they must know what

they will receive for their expertise and commitment.").

18.    The Futures Representative believes that the fee structure is reasonable

and should be approved under section 328(a) of the Bankruptcy Code.  The fee structure

appropriately reflects (i) the nature of the services to be provided by PJSC, and (ii) the fee

structure is typically utilized by PJSC and other leading financial advisors.  In sum, therefore, the

Futures Representative believes that the fee structure is reasonable in light of (i) industry

practice, (ii) market rates charged for comparable services both in and out of the chapter 11

context, (iii) PJSC's substantial restructuring experience, and (iv) the nature and scope of work

to be performed by PJSC in these chapter 11 cases.

19.    PJSC has informed the Futures Representative that, except as otherwise

stated in the Dietz Affidavit, PJSC (i) has no connection with the Futures Representative,

(ii) PJSC does not hold or represent any interest materially adverse to the Futures Representative,

the Debtors, their creditors, equity security holders or any other parties in interest, or their respective attorneys in the above-captioned chapter 11 cases, and (iii) is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.  Moreover, the employment of PJSC is necessary and in the best interest of the Futures Representative, the Future Claimants, the Debtors and their estates.

20.     Subject to the foregoing, including the standards imposed by section 328(a) of the Bankruptcy Code, awards of compensation and expenses will be sought by PJSC pursuant to applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the *Agreed Amended Administrative Compensation Order, Pursuant to Section 105(a) and 331 of the Bankruptcy Code, Establishing Revised Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, entered by this Court..

## NOTICE

21.     Proper notice of this Application has been given and the Futures Representative submits that no further notice need be given.

## PRIOR REQUEST FOR RELIEF

22.    No previous application for the relief sought in this Application has been made to this or any other court.

WHEREFORE, the Futures Representative respectfully requests the Court issue and enter an order substantially in the form annexed hereto approving the employment and retention of PJSC and grant the Futures Representative such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       December 3, 2001

THE LEGAL REPRESENTATIVE FOR
FUTURE ASBESTOS CLAIMANTS

_____
James J. McMonagle

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OWENS CORNING, et al. | ) | Case No. 00-3837 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Hearing Date:**      January 28, 2002 at 1:00 p.m. |
| | ) | **Objection Deadline:** December 19, 2001 at 4:00 p.m. |

## <u>NOTICE OF APPLICATION</u>

TO:    COUNSEL TO THE COMMITTEES; COUNSEL TO THE DEBTORS; OFFICE OF
THE UNITED STATES TRUSTEE; AND ALL PARTIES REQUESTING NOTICE
PURSUANT TO RULE 2002 OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE

        James J. McMonagle (the "Futures Representative"), the Legal Representative for
Future Claimants appointed in the above-captioned bankruptcy proceedings has filed the
attached **Application for Order Authorizing Retention and Employment of Peter J.
Solomon Company, as Investment Banker and Financial Advisor for James J. McMonagle,
Legal Representative for Future Claimants** (the "Application").

        Responses, if any, to the relief requested in the Application must be filed with the
United States Bankruptcy Court for the District of Delaware, 824 Market Street, 5th Floor,
Wilmington, Delaware 19801 on or before December 19, 2001 at 4:00 p.m.

        At the same time, you must also serve a copy of the response so as to be received
by the following by no later than December 19, 2001 at 4:00 p.m.:

Edwin J. Harron, Esquire
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391

Edmund M. Emrich, Esquire
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022

        A HEARING ON THE APPLICATION WILL BE HELD JANUARY 28, 2002
AT 1:00 P.M.

58518.1001

**Appendix 284**

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED BY THE APPLICATION WITHOUT FURTHER NOTICE OR HEARING.

Dated: Wilmington, Delaware
     December 4, 2001

          YOUNG CONAWAY STARGATT & TAYLOR, LLP

          James L. Patton, Jr. (No. 2202)
          Edwin J. Harron (No. 3396)
          The Brandywine Building
          1000 West Street, 17th Floor
          P.O. Box 391
          Wilmington, DE 19899-0391

                and

          KAYE SCHOLER LLP
          Edmund M. Emrich
          Jane W. Parver
          Michael Braff
          425 Park Avenue
          New York, New York 10022

          Counsel for the Futures Representative

# EXHIBIT A

**[Affidavit]**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re: ) Chapter 11
)
OWENS CORNING, et al. ) Case No. 00-3837 (JKF)
)
Debtors. ) Jointly Administered

**AFFIDAVIT OF BRADLEY I. DIETZ IN SUPPORT OF APPLICATION
FOR ORDER PURSUANT TO SECTIONS 327(a), 328(a) AND 1103(a) OF THE
BANKRUPTCY CODE AND FED. R. BANKR. P. 2014 AND 2016 AUTHORIZING
RETENTION AND EMPLOYMENT OF PETER J. SOLOMON COMPANY AS
FINANCIAL ADVISOR AND INVESTMENT BANKER TO JAMES J. McMONAGLE,
LEGAL REPRESENTATIVE FOR FUTURE CLAIMANTS**

STATE OF NEW YORK )
: ss.:
COUNTY OF NEW YORK )

Bradley I. Dietz, being duly sworn, deposes and says:

1.     I am Managing Director of Peter J. Solomon Company ("PJSC"), which maintains an office at 767 Fifth Avenue, New York, New York 10153. I am authorized to execute this affidavit (the "Affidavit") on behalf of PJSC. This Affidavit is submitted pursuant to sections 327(a), 328(a) and 1103 of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016 in support of the application (the "Application") of James J. McMonagle, Legal Representative for Future Claimants (the "Futures Representative"), for an order authorizing the retention and employment of PJSC as financial advisor and investment banker to the Futures Representative. Unless otherwise stated, I have personal knowledge of the facts set forth herein.

2.     PJSC is a worldwide leader in working with financially troubled companies in complex financial reorganizations, in both chapter 11 cases and out-of-court restructurings. PJSC has served as financial advisor and/or investment banker to an diverse group of debtors, bondholders, official committees, single classes of creditors and secured

creditors and in many large chapter 11 cases. Based upon this experience, I believe that PJSC is well-qualified to perform the financial advisory and investment banking services required by the Futures Representative.

## TERMS OF PJSC'S RETENTION

3.    Pursuant to the letter agreement between the Futures Representative and PJSC, a copy of which is attached as Exhibit B to the Application (the "Letter Agreement"), PJSC will provide the following services:

(a)    valuation analyses of Owens Corning (the "Company") as a going-concern, in whole and part;

(b)    valuation analyses of the Company's asbestos exposure;

(c)    review of and consultation on the financing options available to the Company, including proposed DIP financing;

(d)    review of and consultation on the potential divestiture, acquisition and merger transactions for the Company;

(e)    review of and consultation on the capital structure issues for the reorganized Company, including debt capacity;

(f)    review of and consultation on the financial issues and options concerning potential plans of reorganization, and coordinating negotiations with respect thereto;

(g)    review of and consultation on the Company's operating and business plans, including an analysis of the Company's long term capital needs and changing competitive environment;

(h)    testimony in court on behalf of the Committee, if necessary; and

(i)    any other necessary services as the Committee or the Committee's counsel may request from time to time with respect to the financial, business and economic issues that may arise.

4.    Under the Letter Agreement, as compensation for its services PJSC will be entitled to receive, subject to Court approval under section 328(a) of the Bankruptcy Code, a monthly fee of $175,000 (the "Advisory Fee") for the three (3) month period commencing on the

58518.1001

**Appendix 288**

date of the Letter Agreement. The Futures Representative has the right, but not the obligation, to continue the engagement on a month-to-month basis thereafter at a monthly fee to be negotiated from time to time but not in excess of $175,000. PJSC may apply to the Court for a Reorganization Fee if the circumstance so warrant. The Futures Representative has the right to terminate the Letter Agreement after the initial three (3) month period upon thirty (30) days' notice.

5.     The fees described above are consistent with PJSC's normal billing practices for cases of this size and complexity that require the level and scope of services outlined in the Letter Agreement. I also believe that such fees are consistent with fees charged in comparable engagements in chapter 11 cases and out-of-court workouts.

6.     In addition to any fees payable to PJSC pursuant to the Letter Agreement, whether or not any transaction contemplated by the Letter Agreement is proposed or consummated PJSC shall be reimbursed on a monthly basis for its travel and other reasonable out-of-pocket expenses, as set forth in the Letter Agreement.

7.     Under the Letter Agreement, the Debtors shall indemnity PJSC, and certain related persons also shall be entitled to indemnification in accordance with the provisions set forth in the Letter Agreement. I believe that such provisions are consistent with indemnification provisions in comparable engagements in out-of-court workouts and chapter 11 cases in this District and elsewhere.

8.     I believe that the fee structure and indemnification provisions set forth in the Letter Agreement are reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code. The fee and indemnification provisions appropriately reflect the nature of the services to be provided by PJSC and the fee and

3

indemnification provisions typically utilized by PJSC and other leading financial advisory and investment banking firms, which do not bill their clients on an hourly basis.

## DISCLOSURE CONCERNING CONFLICTS

9.     PJSC has conducted a conflicts check and due inquiry regarding its relations with the Futures Representative, the Debtors, their significant creditors, their equity security holders, the attorneys and accountants for the foregoing, and the Office of the United States Trustee to determine whether it has any conflicts or other relationships that might bear on its retention by the Futures Representative. Among other things, PJSC has researched its client files and records which contain information retained under its normal record retention policies. In connection with this check, PJSC obtained from the Debtors, through the Futures Representative's counsel, a list of the names of individuals or entities that the Debtors believe are among the more significant parties in interest in these chapter 11 cases (collectively, the "Potential Parties in Interest"), a copy of which list is annexed to the Application as Exhibit D. In addition, I caused to be disseminated by electronic mail within PJSC a list of the Potential Parties in Interest, accompanied by a request for information pertaining to any connections between PJSC and such parties. To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after due inquiry, neither I, PJSC, nor any professional employee of PJSC has any connection with the Debtors or any Potential Parties in Interest herein, except as hereinafter set forth:

(a)     PJSC has been retained by Shearman & Sterling to represent certain interests in the Warnaco, Inc. et al. case currently pending in the United States Bankruptcy Court for the Southern District of New York; and

(b)     PJSC has previously represented the Metropolitan Life Insurance Company.

4

Each of the foregoing representations is wholly unrelated to these chapter 11 cases.

10.     In the ordinary course of its activities as a full service firm, PJSC (i) in the past has had, and may in the future have, directly and indirectly, ordinary course relationships with persons who hold debt or equity securities issued by the Debtors on their direct and indirect corporate parents or investors, (ii) as discussed further below in paragraph 11, has in the past provided advice, may currently be providing advice, and may in the future advise certain of the Debtors' creditors or other Potential Parties in Interest herein, or interests adverse to such creditors or parties in interest herein, all, however, in matters unrelated to these chapter 11 cases, and (iii) has working capital financial and operating relationships with various banking institutions which may be Potential Parties in Interest. In addition, PJSC, its directors, officers, employees, counsel and I may have appeared in the past and may appear in the future in cases in which one or more of the Debtors' creditors or other Potential Parties in Interest are involved in matters unrelated to the Debtors.

11.     PJSC has been and currently is engaged in numerous major restructuring transactions. PJSC's general inquiry and review of its records revealed that PJSC has previously advised, currently advises and will likely advise in the future, a substantial number of Potential Parties in Interest or parties adverse thereto. In particular, PJSC has had relationships with the parties listed in Exhibit E, on matters unrelated to these chapter 11 cases. It is possible that there are other parties listed in Exhibit D with whom PJSC previously had, currently has or in the future will have relationships on matters that have not been discovered in our initial review. To the extent that this is discovered later, PJSC will make supplemental disclosure.

12.     As part of its diverse practice, and in the course of the investment activities of its affiliates, PJSC has worked previously, currently works and likely will work in

the future, with a variety of legal and financial institutions, some of which represent Potential Parties in Interest. Based on our current knowledge of the professionals involved, and to the best of our knowledge, none of our business relations constitutes an interest adverse to the Futures Representative herein in matters upon which PJSC is to be employed, and none is in connection with these chapter 11 cases. Furthermore, PJSC has been represented and advised in the past, is represented and advised currently and may be represented and advised in the future, by several law firms and accounting firms, some of which may be involved in these proceedings.

13.    To the best of my knowledge, neither PJSC, nor its officers or employees has been retained to assist any entity or person other than the Futures Representative on matters relating to, or in connection with, these chapter 11 cases. If this Court approves the proposed employment of PJSC by the Futures Representative, PJSC will not accept any engagement or perform any service in these cases for any entity or person other than the Futures Representative; PJSC will, however, continue to provide professional services to, and engage in commercial or professional relationships with, entities or persons that may be creditors of the Debtors or otherwise are Potential Parties in Interest in these chapter 11 cases, provided that such services will not relate to, or have any direct connection with, these chapter 11 cases. PJSC is confident that the representation of such entities in unrelated matters will not affect its representation of the Futures Representative in these cases.

14.    Despite the efforts described above to identify and disclose PJSC's connections with Potential Parties in Interest, because the Debtors are a large enterprise with numerous unidentified creditors and other relationships, PJSC is unable to state with absolute certainty that every relevant client representation or other connection has been disclosed. To the extent PJSC determines that it may be engaged in a matter that gives rise to an interest adverse to

WP3:709234.1

58518.1001

**Appendix 292**

the Futures Representative or the Debtors, PJSC will promptly file a supplemental disclosure with this Court.

15.    To the best of my knowledge, information and belief, neither PJSC nor its officers or employees have or represent any interest materially adverse to the interests of the Futures Representative, the future claimants represented by the Futures Representative, the Debtors or their estates, and has no material connections to the Debtors or Potential Parties in Interest except as noted above. Accordingly, I believe that PJSC is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, in that PJSC, its officers and employees:

(a)    Are not creditors, equity security holders or insiders of the Debtors;

(b)    Are not and were not investment bankers for any outstanding security of the Debtors;

WP3:709234.1

58518.1001

(c)    Have not been within three years before the date of filing of the Debtors chapter 11 petitions (i) investment bankers for a security of the Debtors or (ii) an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the Debtors; and

(d)    Were not, within two years before the date of filing of the Debtors chapter 11 petitions, a director, officer, or employee of the Debtors or of any investment banker as specified in subparagraph (b) or (c) above.

16.    PJSC has not shared or agreed to share any of its compensation from the Futures Representative with any other person, other than a managing director, professional or employee of PJSC, as permitted by section 504 of the Bankruptcy Code.  The proposed engagement of PJSC is not prohibited by Bankruptcy Rule 5002.

_____
Bradley I. Dietz

Sworn to and subscribed before me
this  3rd  day of December, 2001

_____
Notary Public

NICHOLE W. WYNTER
Notary Public, State of New York
No. 01WY6097364
Qualified in Queens County
Commission Expires April 16, 2005

# EXHIBIT B

**[Engagement Letter]**

58518.1001

# PETER J. SOLOMON COMPANY
### LIMITED

767 FIFTH AVENUE
NEW YORK, NEW YORK 10153

BRADLEY I. DIETZ
MANAGING DIRECTOR

October 30, 2001

The Honorable James J. McMonagle
24 Walnut Street
Chagrin Falls, Ohio 44022

Dear Judge McMonagle:

The purpose of this letter is to confirm the understanding and agreement (the "Agreement") among James J. McMonagle in his capacity as Legal Representative for Future Claimants ("JJM") in the Chapter 11 proceedings of Owens Corning and its affiliates (collectively, the "Company") pending in the United States Bankruptcy Court for the District of Delaware, Peter J. Solomon Company Limited ("PJSC"), and the Company related to the scope and terms of advisory services to be provided to JJM as the Future Claimants' Representative ("FCR") in the Company's Chapter 11 cases.

We understand that the work performed by PJSC will be done at the direction of JJM. PJSC's duties hereunder run solely to JJM, and PJSC is not authorized to be, and will not purport to be, an agent of the Company for any purpose. For our services and expenses on JJM's behalf, we agree to be compensated as set forth below. Any payment obligation arising in connection with this retention will be the obligation of the Company, including, but not limited to with respect to any payment obligation under Section 5 hereof, or Exhibit A attached hereto or otherwise under this Agreement.

Section 1.    Services to be Rendered.

PJSC will perform the following services, as JJM may request from time to time, including, but not limited to:

a)  Valuation of the Company as a going concern, in whole or part;

b)  Valuation analyses of the Company's asbestos exposure;

c)  Review of and consultation on the financing options for the Company, including proposed DIP financing;

d)  Review of and consultation on the potential divestiture, acquisition and merger transactions for the Company;

e)  Review of and consultation on the capital structure issues for the reorganized Company, including debt capacity;

f)  Review of and consultation on the financial issues and options concerning potential plans of reorganization, and coordinating negotiations with respect thereto;

g) Review of and consultation on the Company's operating and business plans, including analysis of the Company's long-term capital needs and changing competitive environment;

h) Testimony in court on behalf of JJM, if necessary; and,

i) Any other necessary services as JJM or JJM's counsel may reasonably request from time to time with respect to the financial, business and economic issues that may arise.

Section 2.    Term.  The initial term of this Agreement shall commence from the date hereof for a period of three (3) months (the "First Period"); provided, however, that JJM reserves the right to continue PJSC's retention on a month-to-month basis at the completion of the First Period without additional Bankruptcy Court approval (the "Second Period").  During the Second Period, either JJM or PJSC may terminate this Agreement with thirty (30) days advance notice in writing.  If terminated, PJSC shall be entitled to receive any fees for any monthly period which are due and owing PJSC upon the effective date of the termination, Subject to Bankruptcy Court approval; however, such amounts will be prorated for any incomplete monthly period of service, and PJSC will be entitled to the reimbursement for the out-of-pocket expenses described in Section 4, Subject to Bankruptcy Court approval.  Termination of PJSC's engagement hereunder shall not affect or impair the Company's continuing obligation to indemnify PJSC and certain related persons as provided in Section 5 and Exhibit A and the Company's continuing obligations under Section 6 hereof.

Section 3.    Fees.  In consideration for the services described in Section 1, the Company agrees to pay PJSC in cash pursuant to the procedures for compensation and reimbursement of expenses established by the Bankruptcy Court in accordance with the applicable provisions of the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules for the Bankruptcy Court for the District of Delaware, the final financing order and other applicable orders in these jointly administered cases, including the Agreed Amended Administrative Compensation Order, Pursuant to Sections 105(a) and 331 of the Bankruptcy Code, Established Revised Procedures for Interim Compensation and Reimbursement of Professionals (the "Amended Administrative Compensation Order"):

a) For the First Period, a monthly advisory fee equal to $175,000.00 (the "Monthly Fee"), Subject to Bankruptcy Court approval.

b) For the Second Period, a monthly fee in an amount to which JJM and PJSC shall in good faith agree (but in no event greater than $175,000.00) based on the level of services anticipated to be provided by PJSC during such period including the consideration of the status and requirements of the case, Subject to Bankruptcy Court approval.  JJM and PJSC will meet or confer on a monthly basis during the Second Period to review the anticipated work plan for each upcoming month.

c) Reorganization Fee:  PJSC traditionally and routinely receives a success or reorganization fee for the services contemplated by this engagement.  Both JJM and

2

PJSC recognize that it is difficult to define success at the inception of an engagement. Accordingly, in connection with a plan of reorganization supported by the FCR, pursuant to which a trust is created that satisfies the requirements of the U.S. Bankruptcy Code 524(g), PJSC, as part of this engagement, may seek, upon the consent and support of the FCR and approval of the Bankruptcy Court, a Reorganization Fee. A request for a Reorganization Fee must be made in accordance with the applicable provisions of the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules for the Bankruptcy Court for the District of Delaware, the final financing order and other applicable orders in these jointly administered cases, including the Amended Administrative Compensation Order.

Section 4.    Expenses.    Without in any way reducing or affecting the provisions of Exhibit A hereto, the Company shall reimburse PJSC for its reasonable out-of-pocket expenses incurred in connection with the provision of services hereunder including, without limitation the fees, disbursements and other charges of PJSC's counsel. Retention of counsel by PJSC will be after consultation with JJM and Kaye Scholer LLP whose consent will not be unreasonably withheld. Out-of-pocket expenses also shall include, but not be limited to, travel and lodging, data processing and communication charges, research and courier services.

Section 5.    Indemnity.    The Company agrees to the provisions of Exhibit A hereto which provide for certain indemnification of PJSC and certain related persons. Such indemnification is an integral part of this Agreement, and the terms thereof are incorporated by reference herein. Such indemnification shall survive any termination, expiration or completion of this Agreement.

Section 6.    Miscellaneous.

a) In connection with allowances of compensation and reimbursement of expenses, PJSC shall file appropriate applications for allowance of interim and final compensation and reimbursement of expenses in accordance with Sections 330 and 331 of the United States Bankruptcy Code and applicable rules at such times as directed by the Bankruptcy Court or established by administrative order entered in the bankruptcy cases in accordance with the applicable provisions of the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules for the Bankruptcy Court for the District of Delaware, the final financing order and other applicable orders in these jointly administered cases, including the Amended Administrative Compensation Order The fees detailed in Sections 3(a) and (b) above have been agreed upon with the express expectation that they are subject to review by the Bankruptcy Court as provided by Section 328 of the Bankruptcy Code. Furthermore JJM understands that the hours worked, the results achieved in the reorganization or the ultimate benefit to the estate of the work performed may be variable and JJM has taken this into account in setting the fees detailed in Sections 3(a) and (b) above. In accordance with the guidelines of the Bankruptcy Court, PJSC shall maintain detailed records of time spent working on this assignment, which records shall be available for submission to the Bankruptcy Court subject to appropriate redactions to preserve confidential or sensitive information. Although

3

PJSC is providing such records, it, as an investment bank, does not have hourly rates for its professionals. PJSC will make every effort to coordinate with the other professionals in these bankruptcy cases in order to eliminate unnecessary duplication or overlap of work.

b) Obligations incurred by JJM (solely in his capacity as FCR) and/or the Company under Sections 2 through 6 shall survive termination or expiration of the Agreement.

c) In providing the services hereunder, the PJSC team shall include Peter J. Solomon, Bradley I. Dietz and Alan W. Wilkinson. Each of these individuals shall personally be involved in the delivery of services provided hereunder, except in the event of any such individual's death, incapacity, leave of absence or cessation of employment by PJSC.

d) At the request of JJM, PJSC and its affiliates shall provide a fairness opinion with respect to any of the Chapter 11 proceedings or any transactions contemplated thereby or incidental hereto where such opinion is necessary and appropriate. The terms and compensation of such engagement are not included herein and shall be customary for such service rendered by nationally recognized investment banking firms involved in major Chapter 11 cases at the time of the engagement and shall be subject to separate agreement and Bankruptcy Court approval.

e) PJSC shall under all circumstances have the right to rely on, without independent verification, subject to its obligations to act in good faith, and does not assume responsibility for the accuracy or completeness of, information furnished to PJSC by the Company, its representatives or JJM in connection with PJSC's engagement hereunder.

f) Except as contemplated by the terms hereof or as required by applicable law, and consistent with the Undertaking Regarding Confidentiality entered into as of November 14, 2001, and the Agreement regarding Confidentiality and Privilege entered into as of November 26, 2001, PJSC shall keep confidential all information provided to it by the Company and JJM and his counsel, unless publicly available or otherwise available to PJSC without restriction or breach of any confidentiality agreement, and shall not disclose such information to any third party, other than in confidence to its employees, agents, representatives and advisors, without the Company's and/or prior approval as the case may be.

g) The advice (oral or written) rendered by PJSC pursuant to this Agreement is intended solely for the benefit and use of JJM and his professionals in considering the matters to which this Agreement relates, and JJM agrees that such advice may not be relied upon by any other person, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose without the prior written consent of JJM directs, PJSC shall provide its data, information or determinations to JJM's counsel' and other constituencies in the Chapter 11 cases.

4

h) Upon written consent of JJM, which consent shall not be unreasonably withheld, PJSC shall have the right after completion of this engagement to place advertisements in financial and other newspapers and journals at its own expense describing its services hereunder.

i) This Agreement may not be amended or modified except by a writing executed by each of the parties and this Agreement, including all controversies arising from or relating to performance under this Agreement, shall be governed by and construed in accordance with the laws of the State of New York, without giving effect such state's rules concerning conflicts of law.

j) Any lawsuits with respect to, in connection with or arising out of this Agreement shall be brought in Bankruptcy Court and the parties hereto consent to the jurisdiction and venue of the Bankruptcy Court as the sole and exclusive forum, unless such court is unavailable, for the resolution of claims by the parties arising under or relating to this Agreement.

k) To the extent permitted by applicable law, the parties hereto waive trial by jury in connection with or arising out of this Agreement, or any other claim or dispute relating to the engagement of PJSC arising between the parties hereto. The parties hereto confirm that the foregoing waivers are informed and freely made.

l) The relationship of PJSC to JJM hereunder shall be that of an independent contractor and PJSC shall have no authority to bind, represent or otherwise act as agent for JJM.

\*        \*        \*

If the foregoing correctly sets forth the understanding and Agreement among JJM, the Company and PJSC, please so indicate by signing the enclosed copy of this letter, whereupon it shall become a binding Agreement between the parties hereto as of the date first above written.

Very truly yours,

PETER J. SOLOMON COMPANY LIMITED

By: _____

Bradley I. Dietz
Managing Director

Accepted and Agreed to as of
the day first written above:

THE HONORABLE JAMES J. MCMONAGLE
In His Capacity as Legal Representative for
Future Claimants

By: _____

6

**Exhibit A**

This Exhibit A is part of and incorporated into that certain letter agreement (the "Agreement"), dated October 30, 2001.

   a)   If Peter J. Solomon Company ("PJSC") and its affiliates or any employee, agent, officer, director, attorney, shareholder or any person who controls PJSC (any or all of the foregoing, hereinafter an "Indemnified Person") becomes involved in any legal or administrative action, suit, proceeding, investigation or inquiry, regardless of the legal theory or the allegations made in connection therewith, directly or indirectly in connection with, arising out of, based upon, or in any way related to (i) the Agreement; (ii) the services that are subject of the Agreement; (iii) any document or information, whether verbal or written, referred to herein or supplied to PJSC; (iv) the breach of the representations, warranties or covenants by the Company given pursuant hereto; (v) PJSC's involvement in the Chapter 11 case of the Company (the "Case") or any part thereof; (vi) any filings made by or on behalf of any party with any governmental agency in connection with the Case; (vii) the Case; or (viii) proceedings by or on behalf of any creditors or equity holders of the Company, the Company will on demand, advance or pay promptly, on behalf of each Indemnified Person, reasonable attorney's fees and other expenses and disbursements (including, but not limited to, the cost of any investigation and related preparation) as they are incurred by the Indemnified Person. The Company also indemnifies and holds harmless each Indemnified Person against any and all loses, claims, damages, liabilities, costs and expenses (including, but not limited to, attorney's fees, disbursements and court costs, and cost of investigation and preparation ("Losses")) to which such Indemnified Person may become subject in connection with any such matter.

   b)   If for any reason the foregoing indemnification is determined to be unavailable to any Indemnified Person or insufficient fully to indemnify any such person, then the Company will contribute to the amount paid or payable by such person as a result of any such Losses in such proportion as is appropriate to reflect (i) the relationship between PJSC's fees on the one hand and the aggregate value of the Company on the other hand or (ii) if the allocation provided by clause (i) is not permitted by applicable law, not only such relative benefit but also the relative fault of the other participants in the Case, on the one hand, and PJSC and the Indemnified Persons on the other hand, and any other relevant equitable considerations in connection with the matters as to which such Losses relate.

   c)   If any action or proceeding shall be brought or asserted against PJSC or any other Indemnified Person in respect of which indemnity or contribution may be sought from the Company hereunder, PJSC shall promptly notify the Company in writing, provided that failure to notify the Company shall not relieve it from any liability hereunder except to the extent of any material prejudice resulting therefrom. The Company may, upon notice to PJSC, assume the defense thereof, by retaining counsel reasonably satisfactory to PJSC. Any Indemnified Person shall have the right to employ separate counsel in any such action and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of the Indemnified Person (but not other reasonable defense or investigation expenses incurred by or on behalf of PJSC or any other Indemnified Person) unless (i) the Company has agreed to pay the reasonable fees and expenses of such counsel, (ii) the Company shall have failed to promptly assume the defense of such action or proceeding, or (iii) the named parties to such action or proceeding (including any impleaded parties) include both the Indemnified Person and the Company and the Indemnified Person reasonably believes that the joint representation of the Indemnified Person may result in a conflict of interest (in which case if the Indemnified Person shall notify the Company in writing of the facts underlying the perceived conflict and that it elects to employ separate counsel at the expense of the Company, the Company shall not have the right to assume the defense of such action or proceeding on behalf of the Indemnified Person, provided the fees and expenses of such separate counsel are reasonable).

d) The indemnification obligations hereunder shall not apply to any Losses that are judicially determined to have resulted from the gross negligence, fraud, lack of good faith, bad faith, willful misfeasance, or reckless disregard of the obligations or duties of PJSC. In the event of such judicial determination, the Company shall be entitled to recover from PJSC the costs and expenses paid on behalf of any Indemnified Person pursuant to this indemnification obligation.

e) The Company agrees that it will not settle, compromise or discharge any suit, claim, litigation, threatened litigation or threatened claim arising out of, based upon, or in any way related to the Case and to which PJSC or any Indemnified Person is or may reasonably be expected to be a party, unless and until the Company has obtained a written agreement, approved by PJSC (which shall not be unreasonably withheld) and executed by each party to such proposed settlement, compromise or discharge, releasing PJSC and each Indemnified Person from any and all liability. PJSC agrees that it will not settle, compromise or discharge any such suit, claim, litigation, threatened litigation or threatened claim without the prior written consent of the Company, which will not be unreasonably withheld.

f) The Company further agrees that neither PJSC nor any other Indemnified Person shall have any liability, regardless of the legal theory advanced, to the Company or any other person or entity (including the Company's equity holders and creditors) related to or arising out of PJSC's engagement, except for any liability for losses, claims, damages, liabilities, costs and expenses incurred by the Company which are judicially determined to have resulted from the gross negligence, fraud, lack of good faith, bad faith, willful misfeasance, or reckless disregard of the obligations or duties of PJSC.

g) The Company's obligations under this Exhibit shall be in addition to any liability that the Company or any other person may otherwise have to PJSC or any Indemnified Person. The foregoing provisions shall be enforceable by each Indemnified Person and such person's heirs, representatives and successors, and shall survive any termination of the Agreement or the completion of services hereunder.

**Appendix 303**

# EXHIBIT C

**[Proposed Order]**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OWENS CORNING, et al. | ) | Case No. 00-3837 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |

### ORDER PURSUANT TO SECTIONS 327(a), 328(a) AND 1103(a) OF THE BANKRUPTCY CODE AUTHORIZING THE RETENTION AND EMPLOYMENT OF PETER J. SOLOMON COMPANY AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO JAMES J. McMONAGLE, LEGAL REPRESENTATIVE FOR FUTURE CLAIMANTS

Upon the application (the "Application") of James J. McMonagle, Legal

Representative for Future Claimants (the "Futures Representative") in connection with the

chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the

"Debtors" or the "Company"), seeking entry of an order pursuant to sections 327(a), 328(a) and

1103(a) of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and Rules

2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

authorizing the retention and employment of Peter J. Solomon Company ("PJSC") as financial

advisor and investment banker to the Futures Representative and for the approval of the proposed

terms of such employment set forth in the letter agreement attached as Exhibit B to the

Application (the "Letter Agreement"); and upon the Affidavit of Bradley I. Dietz (the "Dietz

Affidavit") in support of the Application; and due notice of the Application having been given

and appearing that no other or further notice need be given; and after due deliberation and

sufficient cause appearing therefor; it is hereby

**FOUND THAT:**

A.    PJSC does not have or represent any interest materially adverse to the interests of the Futures Representative, the future claimants represented by the Futures Representative, the Debtors or their estates.

B.    PJSC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

C.    The retention and employment of PJSC is necessary and in the best interests of the Futures Representative, the future claimants represented by the Futures Representative, the Debtors and their estates.

D.    The terms of the Letter Agreement are reasonable terms of employment for purposes of section 328(a) of the Bankruptcy Code; and it is hereby.

**ORDERED THAT:**

1.    The Application is granted and approved.

2.    In accordance with sections 327(a), 328(a) and 1103(a) of the Bankruptcy Code, and Rules 2014(a) and 2016 of the Bankruptcy Rules, the Futures Representative is authorized to retain and employ PJSC as its financial advisor and investment banker, *nunc pro tunc* to November 6, 2001, for the purpose of providing financial advisory, investment banking and other related services in connection with the Debtors' chapter 11 cases in accordance with the terms of the Letter Agreement.

3.    The fees to be paid to PJSC pursuant to the terms of the Letter Agreement are approved and shall be subject to the standard review provided in section 328(a) of the

2

58518.1001

**A p p e n d i x   3 0 6**

Bankruptcy Code and, except as provided in the Letter Agreement, are not subject to any other standard of review under section 330 of the Bankruptcy Code.

      4.      The indemnification provisions of the Letter Agreement are approved, subject to the following:

      (a)    Subject to the provisions of subparagraph (c), *infra*, the Debtors are authorized to indemnify, and shall indemnify PJSC in accordance with the Letter Agreement, for any claim arising from, related to, or in connection with the services provided for in the Letter Agreement, but not for any claim arising from, related to, or in connection with PJSC's postpetition performance of any other services unless such postpetition services and indemnification therefor are approved by this Court;

      (b)    Notwithstanding any provisions of the Letter Agreement to the contrary, the Debtors shall have no obligation to indemnify PJSC, or provide contribution or reimbursement to PJSC, for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen solely from PJSC's gross negligence, bad faith or willful misconduct, or (ii) settled prior to a judicial determination as to PJSC's gross negligence or willful misconduct, but determined by this Court, after notice and a hearing, to be a claim or expense for which PJSC should not receive indemnity, contribution or reimbursement under the terms of the Letter Agreement and this Order; and

      (c)    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these chapter 11 cases, PJSC believes it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Letter Agreement (as modified by this Order), including without limitation the advancement of defense costs, PJSC must file an application therefor in this Court, and the Debtors may not pay any such amounts to PJSC before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by PJSC for indemnification, contribution or reimbursement and not a provision limiting the duration of the Debtors' obligation to indemnify PJSC.

3

58518.1001

**A p p e n d i x  307**

5.     The compensation and reimbursement payments due under the Letter

Agreement shall be entitled to priority as expenses of administration under Sections 503(b)(1)(A)

and 507(a)(1) of the Bankruptcy Code and shall be entitled to the benefits of any "carve outs" for

professionals' fees and expenses in effect in these Chapter 11 cases pursuant to one or more

financing orders now or hereinafter in effect.

6.     Subject to the foregoing, awards of compensation and expenses shall be

sought pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, and the

*Agreed Amended Administrative Compensation Order, Pursuant to Section 105(a) and 331 of*

*the Bankruptcy Code, Establishing Revised Procedures for Interim Compensation and*

*Reimbursement of Expenses of Professionals*, entered by this Court..

7.     This Court shall retain exclusive jurisdiction to construe and enforce the

terms of the Application, the Letter Agreement, and this Order.

Dated: Wilmington, Delaware
_____, 200__

_____
UNITED STATES BANKRUPTCY JUDGE

4

58518.1001

**A p p e n d i x  308**

# EXHIBIT D

## POTENTIAL PARTIES IN INTEREST TO THESE CHAPTER 11 CASES

# INTERESTED PARTIES

A.    Debtors:

        Owens Corning
        CDC Corporation
        Engineered Yarns America, Inc.
        Falcon Foam Corporation
        Integrex
        Fibreboard Corporation
        Exterior Systems, Inc.
        Integrex Ventures LLC
        Integrex Professional Services LLC
        Interex Supply Chain Solutions LLC
        Integrex Testing Systems LLC
        HOMExperts LLC
        Jefferson Holdings, Inc.
        Owens-Corning Fiberglas Technology Inc.
        Owens Corning HT, Inc.
        Owens-Corning Overseas Holdings, Inc.
        Owens Corning Remodeling Systems, LLC
        Soltech, Inc.

B.    Debtors' Attorneys (general counsel and special bankruptcy counsel):

        Bingham Dana
        Brobeck, Phiger & Harrison LLP
        Cassels Brock & Blackwell LLP
         Barristers & Solicitors
        Debevoise & Plimpton
        Nathan & Roberts
        Saul Ewing LLC
        Skadden, Arps, Slate, Meagher & Flom, LLP
        Forman, Perry, Watkins, Kurtz & Tardy PLLC
        Robins, Kaplan, Miller & Ciresi, LLP
        Covington & Burling

C.    Debtors' Other Professionals (e.g. investment banker, financial advisor, real estate consultant, etc.) retained in connection with the Chapter 11 proceeding:

        Robert L. Berger & Associates, Inc.
        Frederic W. Cook Corporation
        Kekst and Company
        Lazard Freres & Co. LLC

Price Waterhouse Coopers
The Staubach Company
Insignia/ESG, Inc.
CB Richard Ellis, Inc.
Fischer Company
Anderson & Layman
Cushman & Wakefield
Grubb & Ellis Company
Binswanger
Colliers International
Dillin Corp
Arthur Anderson, LLP
Analysis Research Planning Corporation
Texas Occupational Medicine Institute
International Epidemiology Institution, Ltd.
Kinsella Communications
Ernst & Young
Cap Gemini Ernst & Young US LLC

D.  Debtors' Affiliates (any person or entity directly or indirectly controlling or controlled by or under direct or indirect common control with the Debtor):

CDC Corporation
Commercial Owens Corning Chile Limitada
Crown Manufacturing Inc.
Decillion, LLC
Engineered Pipe Systems, Inc.
Engineered Yarns America Inc.
Eric Company
European Owens-Corning Fiberglas, S.A.
Exterior Systems, Inc.
Falcon Foam Corporation
Fibreboard Corporation
Flowtite AS
Flowtite Eksport AS
Flowtite Eksport Argentina AS
Flowtite Eksport Tuberias
Flowtite Offshore Services Ltd.
Flowtite Pipe & Tanks AS
Flowtite Technology AS
EPS Holding AS
Goodman Ventures, Inc.
HOMExperts LLC
IPM Inc.
Integrex

2

Integrex Professional Services LLC
Integrex Supply Chain Solutions LLC
Integrex Testing Systems LLC
Integrex Ventures LLC
Jefferson Holdings, Inc.
LMP Impianti Srl
Norske EPS Botswana AS
OC (Belgium) Holdings, Inc.
OC Celfortec Inc.
O.C. Funding B.V.
OCW Acquisition Corporation
Owens Corning (Anshan) Fiberglass Co., Ltd.
Owens Corning Argentina Sociedad de Responsabilidad Limitada
Owens Corning Australia Pty Limited
Owens-Corning Britinvest Limited
Owens Corning Building Materials Espana S.A.
Owens Corning Canada Inc.
Owens-Corning Capital Holdings I, Inc.
Owens-Corning Capital Holdings II, Inc.
Owens-Corning Capital L.L.C.
Owens Corning Cayman (China) Holdings
Owens-Corning Cayman Limited
Owens Corning (China) Investment Company, Ltd.
Owens Corning Composites Italia S.r.l.
Owens Corning Composites SPRL
Owens Corning Espana SA
Owens-Corning Fiberglas A.S. Limitada
Owens-Corning Fiberglas Deutschland GmbH
Owens-Corning Fiberglas Espana, S.A.
Owens-Corning Fiberglas France S.A.
Owens-Corning Fiberglas (G.B.) Ltd.
Owens-Corning Fiberglas Norway A/S
Owens-Corning Fiberglas S.A.
Owens-Corning Fiberglas Sweden Inc.
Owens-Corning Fiberglas Technology Inc.
Owens-Corning Fiberglas (U.K.) Pension Plan Ltd.
Owens-Corning FSC, Inc.
Owens-Corning Funding Corporation
Owens-Corning (Guangzhou) Fiberglas Co., Ltd.
Owens-Corning Holdings Limited
Owens Corning HT, Inc.
Owens Corning (Japan) Ltd.
Owens Corning Korea

*Appendix 312*

Owens Corning Mexico, S.A. de C.V.
Owens Corning NRO Inc.
Owens Corning NRO II Inc.
Owens-Corning Overseas Holdings, Inc.
Owens-Corning Real Estate Corporation
Owens Corning Remodeling Systems, LLC
Owens Corning (Shanghai) Fiberglas Co., Ltd.
Owens Corning (Singapore) Pte Ltd.
Owens Corning South Africa (Pty) Ltd
Owens-Corning (Sweden) AB
Owens-Corning Veil Netherlands B.V.
Owens-Corning Veil U.K. Ltd.
Owens Corning VF Holdings, Inc.
Procanpol SP. Z.O.O.
Quest Industries, LLC
Scanglas Ltd.
Soltech, Inc.
Trumbull Asphalt Co. of Delaware
Vytec Corporation
Willcorp, Inc.
Wrexham A.R. Glass Ltd.

Advanced Glassfiber Yarns, LLC (U.S.)
Alcopor Owens Corning Holding AG
Amiantit Fiberglass Industries, Ltd. (Saudi Arabia)
Arabian Fiberglass Insulation Company, Ltd. (Saudi Arabia()
Fiberteq LLC (U.S.)
Flowtite Andercol S.A. (Colombia)
Flowtite Argentina (Argentina)
Flowtite (Botswana) (Proprietary) Limited (Botswana)
Flowtite Iberica, S.A. (Spain)
Owens Corning Energy LLC (U.S.)
Owens Corning (India) Limited (India)
Owens Corning (Nanjing) (China)
Owens Corning Yapi Merkezi Boru Sanayi VeTicaret A.S. (Turkey)
Owens-Corning Eternit Rohre GmbH (Germany)
Siam Fiberglass Co., Ltd. (Thailand)
Stamax LLC (Netherlands)
Stamax NA LLC (U.S.)
Vitro-Fibras, S.A. (Mexico)

E.    Debtors' Affiliates Attorneys:

**None/Unknown**

4

F.    Debtors' Affiliates Other Professionals (e.g. investment banker, financial advisor, real estate consultant, etc.) retained in connection with the Chapter 11 proceeding:

**None/Unknown**

G.    Debtors' Officers, including a crisis manger holding an officer title:

Glen H. Hiner
Rhonda L. Brooks
David T. Brown
Deyonne F. Epperson
David L. Johns
George E. Kiemle
Richard D. Lantz
Edward Mirra, Jr.
Heinz-J. Otto
Maura Abeln Smith
Michael H. Thaman
John Pagano
Richard L. Berry
Jeffrey S.Wilke
Rodney A. Nowland
Steven J. Strobel
Raymong Trost
Jeff Craney
Dave Cox
Christine Harper
John W. Christy
Robert M. Mercola
Elizabeth Reid
Darlene Logsdon
Mark A. Faulkner
Daniel Dietzel
Julia Harp
Bud Stout
Lynn M. Kovalcheck
Jonathan Storie
J. P. Hoyer
William Easton
Wayne Power
Roy Dean
Maurice Lundrigan
Stephen K. Krull

**Appendix 314**

H.    Debtors' Officers Attorneys retained in connection with the Chapter 11 proceeding:

  Williams & Connelly; Friedman, Kaplan, Seiler & Adelman

I.    Debtors' Officers Other Business Affiliations (e.g. service as an officer or director of another entity)

  **None/Unknown**

J.    Debtors' Directors:

  Gaston Caperton
  William W. Coville
  Landon Hilliard
  Glen H. Hiner
  Ann Iverson
  W. Walker Lewis
  Furman C. Moseley, Jr.
  Norman P. Blake, Jr.
  Michael H. Thaman
  Steven J. Strobel
  William F. Dent
  Maura Abeln Smith
  David T. Brown
  Deyonne F. Epperson
  Madhusudan A. Dewan
  Leonard S. Coleman, Jr.
  W. Ann Reynolds

K.    Debtors' Directors Attorneys retained in connection with the Chapter 11 proceeding:

  See H above

L.    Debtor' Directors Other Business Affiliations (e.g. service as an officer or director of another entity):

  See I above

M.    Debtors' Major Shareholders (5% or more):

  AXA Financial, Inc., additionally see Chapter 11 Voluntary Petition

N.    Debtors' Major Shareholders Attorneys retained in connection with the Chapter 11 proceeding:

  **None/Unknown**

6

O.    All Secured Lenders, including DIP lenders:

        Bank of America
        Barclays Bank PLC
        Credit Suisse First Boston
        Chase Manhattan Bank
        CIBC, Inc.
        First Chicago/Bank One
        Bank of New York
        Fleet National Bank
        Mellon Bank
        Kredietbank N.V.
        Dai-Ichi Kangyo Bank Ltd.
        Morgan Guaranty Trust Company of NY
        Sanwa Bank
        Wachovia Bank of Georgia

P.    All Secured Lenders Attorneys retained in connection with the Chapter 11 proceeding:

        The Bayard Firm
        Latham & Watkins
        Richards, Layton & Finger

Q.    All Substantial Unsecured Bondholders or Lenders:

        Bank of America
        Barclays Bank PLC
        Credit Suisse First Boston
        Chase Manhattan Bank
        CIBC, Inc.
        First Chicago/Bank One
        Bank of New York
        Fleet National Bank
        Mellon Bank
        Kredietbank N.V.
        Dai-Ichi Kangyo Bank Ltd.
        Morgan Guaranty Trust Company of NY
        Sanwa Bank
        Wachovia Bank of Georgia
        Johnson Matthey & Co. Inc.
        Minnesota Mining & Mfg. Co. (3M)
        United Refining CO.
        Mid-America/TAPCO
        Ormet Aluminum
        Diamond Shamrock Refining

Appendix 316

Exxon USA
EOTT Energy Operating
Ellison Window & Doors
Kemlite
Jupiter Aluminum
Trinity Contractors Inc.
Werner Enterprises
OCI Chemical Corp.
Bemis Co. Inc.
Transport Clearings
Enron Energy Services
Simonton Window
The Bank of New York
The Bank of New York
The Bank of New York
The Bank of New York
The Bank of New York
The Bank of New York
The Bank of New York
Dresdner Kleinwort Benson
Dresdner Bank Aktiengesellschaft
Courts Bank (Schweiz) AG
Bank One Trust Company, N.A.
Law Offices of Peter G. Angelos
Baron & Budd
Cooney and Conway
Cox and Cox, L.L.P.
Williams & Bailey Law Firm, L.L.P.
Rose, Klein, Marias, L.L.P.
Campbell, Harrison, Dove, Cherry & Davis
Early, Ludwick & Sweeney
Kazan McClain Edises Simon & Abrams P.L.C.
Ness, Motley, Loadholt, Richardson & Poole
Weitz & Luxenberg
Caplin & Drysdale
Bank One Trust Company, N.A.
First Tennessee Bank
Chase Manhattan Trust Co., NA

R.    All Substantial Unsecured Bondholders or Lenders Attorneys retained in connection with
the Chapter 11 proceeding:

Law Offices of Peter G. Angelos
Baron & Budd

8

Cooney and Conway
Cox and Cox, L.L.P.
Williams & Bailey Law Firm, L.L.P.
Rose, Klein, Marias, L.L.P.
Campbell, Harrison, Dove, Cherry & Davis
Early, Ludwick & Sweeney
Kazan McClain Edises Simon & Abrams P.L.C.
Ness, Motley, Loadholt, Richardson & Poole
Weitz & Luxenberg
Campbell & Levine, LLC
Caplin & Drysdale

S.    All Indenture Trustees:

The Bank of New York – Resigned

Bank One – Resigned

Chase Manhattan Trust Co. – Resigned

First Tennessee Bank – Resigned

Sun Trust

Wilmington Trust

HSBC Bank

T.    All Indenture Trustees Attorneys retained in connection with the Chapter 11 proceeding:

**None/Unknown**

U.    Official Statutory Committees members (All Committees):

Barclays Bank PLC
The Chase Manhattan Bank
The Chase Manhattan Bank
Credit Suisse First Boston
Enron Corp.
Enron Energy Services
FleetBoston Financial
Fleet National Bank
John Hancock Life Insurance
Metropolitan Life Insurance Company
Metropolitan Life Insurance Company
Akin, Gump, Strauss, Hauer & Feld, L.L.P.
PPM America
Anderson Kill & Olick
Shearman & Sterling

*Appendix 318*

3M Company
David Fitts
Delores Ramsey
Charles Barett
John Edward Keane
Mary F. Stone
Glenn L. Arnon
Elmer Richardson
Barbara Casey
James Nelson Allen
Margaret Elizabeth Fitzgerald
Yolanda England

V.     Official Statutory Committees Attorneys (for each Official Committee):

Davis Polk & Wardwell
Morris, Nichols, Arsht & Tunnell
Peter Van N. Lockwood
Kramer Levins
William P. Bowden and Mathew G. Zaleski, III
Elihu Inselbuch and Rita Tobin

W.     Official Statutory Committees Other Professionals (e.g. investment banker, financial advisor, real estate consultant, etc.) by each Official Committee:

Houlihan Lokey Howard & Zukin Capital
James McMonagle (Futures rep)
BDO Seidman
Policano Manzo
L. Tersigni Consulting, P.C.

X.     Official Statutory Committees Members Attorneys retained in connection with the Chapter 11 proceeding:

Law Offices of Peter G. Angelos
Baron & Budd
Cooney and Conway
Cox and Cox, L.L.P.
Williams & Bailey Law Firm, L.L.P.
Rose, Klein, Marias, L.L.P.
Campbell, Harrison, Dove, Cherry & Davis
Early, Ludwick & Sweeney
Kazan McClain Edises Simon & Abrams P.L.C.
Ness, Motley, Loadholt, Richardson & Poole
Weitz & Luxenberg
Caplin & Drysdale

10

Brayton & Purcell
Baron & Budd
Weitz & Luxenberg
Kelley & Ferraro, LLP
Hartley & O'Brien
Goldberg, Perskey, Jennings & White, P.C.
Cumbest, Cumbest, Hunter & McCormick P.A.
Cooney & Conway
Glasser & Glasser
Thorton & Naumes, LLP
Kay Scholer LLP
Young, Conway, Watkins & Kurtz
Peter G. Angelos

Y.    Twenty Largest Unsecured Creditors (as of the date of filing)

See response to Q.

Z.    Parties to the Debtors' Significant Executory Contracts and Leases:

**None/Unknown**

AA.    Parties to the Debtors' Significant Executory Contracts and Leases Attorneys (retained in connection with the Chapter 11 proceeding):

**None/Unknown**

AB.    Other Significant Parties-in-Interest (any party that has a substantial economic stake in the debtor; other parties-in-interest include parties in material litigation against The Debtor, public utility commissions of regulated entities, potential parties to M&A or asset transactions with the Debtor, etc.:

**None/Unknown**

AC.    Other Significant Parties-in-Interest Attorneys retained in connection with the Chapter 11 proceeding

**None/Unknown**

# EXHIBIT E

**PARTIES WITH PRIOR RELATIONSHIPS WITH PJSC
ON MATTERS UNRELATED TO THESE CHAPTER 11 CASES:**

     (a)     Shearman & Sterling

     (b)     The Metropolitan Life Insurance Company