# TAB 15

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------- x
IN RE:                                                   :   Chapter 11
                                                         :
USG CORPORATION, et al.,[1]                              :   Case No. 01-2094 (RJN)
                                                         :
          Debtors.                                       :   (Jointly Administered)
                                                         :
                                                         :   **Hearing Date:  October 29, 2002 at 10:00 a.m.**
                                                         :   **Objection Deadline: September 16, 2002 at 4:00 p.m.**
                                                         :
                                                         :   **Docket Ref No.  2670**
--------------------------------------------------------- x   **M.C. No. : YCST - 10**

## AMENDED APPLICATION FOR ORDER PURSUANT TO SECTIONS 327, 524(g) AND 1103 OF THE BANKRUPTCY CODE AND FED. R. BANKR. P. 2014 AUTHORIZING RETENTION AND EMPLOYMENT OF CIBC WORLD MARKETS CORP., AS FINANCIAL ADVISOR AND INVESTMENT BANKER FOR DEAN M. TRAFELET, LEGAL REPRESENTATIVE FOR FUTURE CLAIMANTS, *NUNC PRO TUNC* TO JULY 29, 2002

Dean M. Trafelet, Esq., the legal representative (the "Futures Representative") for

future claimants, appointed in the above-captioned bankruptcy proceedings, submits this

amended application (the "Amended Application"), for entry of an order pursuant to sections 327

and 524(g) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended (the

"Bankruptcy Code"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), authorizing the Futures Representative to retain and employ CIBC World

Markets Corp. ("CIBC"), as investment banker and financial advisor for the Futures

Representative, *nunc pro tunc* to July 29, 2002.  In support of this Amended Application, the

Futures Representative relies on the Amended Affidavit of Joseph J. Radecki, Jr. (the "Amended

---

[1]       The Debtors are the following 11 entities: USG Corporation, United States Gypsum Company, USG
Interiors, Inc., USG Interiors International, Inc., L&W Supply Corporation, Beadex Manufacturing, LLC,
B-R Pipeline Company, La Mirada Products, Co., Inc. USG Industries, Inc., USG Pipeline Company and
Stocking Specialists, Inc.

Radecki Affidavit"), a copy of which is annexed hereto as Exhibit A, and respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Amended Application pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of the Debtors' chapter 11 cases and this Amended Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 327, 524(g) and 1103 of the Bankruptcy Code, as complemented by Rule 2014 of the Bankruptcy Rules.

## BACKGROUND

### A.  The Chapter 11 Filings

2.      On June 25, 2001 (the "Petition Date"), USG Corporation ("USG") and nine of its direct and indirect subsidiaries (collectively, the "Debtors" or the "Company") filed voluntary petitions in this Court for reorganization under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued to manage and operate their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Debtors' chapter 11 cases.

3.      On or about July 13, 2001, pursuant to section 1102(a)(1) of the Bankruptcy Code, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Creditors' Committee"), the Official Committee of Asbestos Personal Injury Claimants (the "Asbestos PI Committee"), the Official Committee of Asbestos Property Damage Claimants (the "Asbestos PD Committee," and, together with the Creditors' Committee and the Asbestos PI Committee, the "Committees").

Appendix 327

4.      On July 14, 2002, Dean M. Trafelet was appointed as the Futures Representative.  The primary charge of the Futures Representative is to protect the rights of individuals who may have been exposed to asbestos or asbestos-containing products but who, prior to confirmation of a plan or plans of reorganization for the Debtors, have not manifested symptoms of asbestos-related diseases resulting from such exposure (the "Future Claimants").

### B.  The Debtors' Businesses

5.      USG is a publicly-traded holding company which directly or indirectly owns each of the other Debtors.  Through its Debtor and non-debtor subsidiaries, USG operates a variety of businesses worldwide that together make USG a leading global manufacturer and distributor of building materials.  The Debtors' wide range of products are used in residential and new construction, repair and remodeling, as well as certain other industrial processes.  The Debtors' leading products include gypsum wallboard, gypsum fiber panels and cement board, as well as ceiling tile and grid systems.

### C.  The Debtors' Asbestos Liabilities

6.      From the 1930's until approximately 1977, the Debtors manufactured, sold and distributed asbestos-containing products, primarily through Debtor United States Gypsum Company ("U.S. Gypsum").  As of the Petition Date, asbestos-related lawsuits involving more than 106,000 prepetition claimants were pending against the Debtors, the vast majority of which allege bodily injuries resulting from exposure to asbestos or asbestos-containing products manufactured or sold by U.S. Gypsum.  The exorbitant cost of settling and defending asbestos personal injury claims was the major reason for the Debtors' decision to seek the protection of the bankruptcy laws.

7.    The Debtors will be subject to additional asbestos-related personal injury claims from the Future Claimants. The valuation of future asbestos-related claims against the Debtors and the establishment of a trust for the benefit of Future Claimants pursuant to section 524(g) of the Bankruptcy Code will be crucial elements in a successful reorganization of the Debtors. Accordingly, the Futures Representative has determined that the employment and retention of a financial advisor and investment banker is crucial to his effective representation of the Future Claimants.

**D. Futures Representative's Prior Application to**
   **Retain CIBC, the Terms thereof and Responses Thereto**

8.    On or about August 29, 2002, the Futures Representative filed his Application Authorizing the Retention and Employment of CIBC World Markets Corp., as Financial Advisor and Investment Banker Nunc Pro Tunc to July 29, 2002 [Docket No. 2670] (the "Retention Application"). The principal terms of the Futures Representative's proposed retention of CIBC were as follows:  (i) an initial term of six (6) months commencing on July 29, 2002, the date on which CIBC began rendering services to the Futures Representative, *i.e.*, the First Period, provided however, that the Futures Representative has the right to continue CIBC's retention on a month-to-month basis at the completion of the First Period without additional Bankruptcy Court Approval; (ii) a monthly fee (the "Monthly Fee") of one hundred and thirty-five thousand ($135,000) commencing July 29, 2002 for a period of twenty four months, and a Monthly Fee of one hundred and twenty-five thousand ($125,000) for the duration of these cases.

9.    On or about September 13, 2002, the Creditors' Committee filed its Objection to the Retention Application [Docket No. 2729] (the "Committee's Objection"). The Committee's Objection raised concerns with respect to, *inter alia*, (i) whether the Futures Representative required an independent financial advisor, (ii) whether he needed such services at

this juncture of the Debtors' cases, and (iii) the amount of CIBC's monthly fee. The Committee suggested that the Futures Representative could share the information of the Asbestos PI Committee's financial advisor.

10.    On or about September 16, 2002, the Debtors filed their Response to the Retention Application [Docket No. 2735] (the "Debtors' Response"). The Debtors' Response raised concerns with respect to, *inter alia*, the duration of the term of CIBC's retention under the proposed engagement letter. Specifically, the Debtors recommended that CIBC's retention be limited to six months from July 29, 2002, with any extension of CIBC's retention requiring Bankruptcy Court Approval.

11.    In light of the concerns raised in the Committee's Objection and the Debtors' Response, and in an effort to avoid any unnecessary expenditures by the estates, the Futures Representative negotiated a revised engagement letter (the "Amended Letter Agreement"), the principal terms of which are outlined below. Due to the posture of these cases and since the constituencies have not yet begun negotiating a plan of reorganization, the Futures Representative believes that it is appropriate to: (i) retain CIBC for an initial six month period; (ii) reduce CIBC's initial monthly fee from $135,000 to $25,000; and (iii) correspondingly limit the scope of the services to be rendered in light of the posture of the cases. However, should the posture of the cases change and the parties move toward plan formulation and negotiations, the Futures Representative reserves his right to amend the terms of CIBC's retention to expand the scope of necessary services, extend the term of their retention and increase CIBC's monthly fee should a change in circumstances warrant such modifications to the terms of the engagement.

## RELIEF REQUESTED

12.     By this Amended Application, the Futures Representative respectfully

requests that the Court issue and enter an order pursuant to sections 327, 524(g) and 1103 of the

Bankruptcy Code and Rules 2014 of the Bankruptcy Rules:

>           (a)     authorizing the retention and employment of CIBC as his financial
> advisor and investment banker for the purpose of providing financial advisory,
> investment banking and other related services in connection with the Debtors'
> chapter 11 cases in accordance with the terms of the retention letter agreement
> attached hereto as Exhibit B (the "Amended Letter Agreement");

>           (b)     approving the proposed fee structure, including the indemnification
> provisions, set forth in the Amended Letter Agreement;

>           (c)     approving the entitlement of the compensation and reimbursement
> payments due under the Amended Letter Agreement to priority as expenses of
> administration under Sections 503(b)(1)(A) and 507(a)(1) of the Bankruptcy
> Code and determining that such payments thereunder shall be entitled to the
> benefits of any "carve outs" for professionals' fees and expenses in effect in
> these Chapter 11 cases pursuant to one or more financing orders now or
> hereinafter in effect;  and

>           (d)     granting such other and further relief as this Court deems just and
> proper.

13.     The Futures Representative requests that CIBC's retention be *nunc pro tunc* to

July 29, 2002, which is the date on which CIBC commenced the performance of services to the

Futures Representative.

## THE ROLE OF THE FUTURES REPRESENTATIVE

14.     The fundamental aim of these chapter 11 cases is to obtain confirmation of a

plan(s) of reorganization pursuant to which, inter alia, (i) a trust will be established to deal with

asbestos claims and demands in accordance with Section 524(g) of the Bankruptcy Code and (ii)

an injunction will be issued under that section channeling all asbestos liabilities to that trust.

Appendix 331

15.    Section 524(g) mandates the appointment of a legal representative as a prerequisite to the issuance of a channeling injunction affecting future claimants.  Without the participation of a legal representative, a debtor in an asbestos-related bankruptcy case would remain subject to future asbestos liability and would be unable to effectively reorganize.  Section 524(g) clearly contemplates that the holders of future asbestos claims and demands will have a meaningful voice in the chapter 11 process and that their interests will be adequately represented by the legal representative.  Indeed, the entire premise of Section 524(g) is that future claimants can be enjoined from suing the debtor post-confirmation because they were afforded due process as a result of the appointment and active participation of a legal representative.  Absent full and vigorous representation by the legal representative, the foundation upon which the injunction is based would fall and would render the injunction suspect, thereby depriving the debtor of an effective reorganization.

16.    No constituency in these chapter 11 cases has a larger or more vital stake in the Debtors' reorganization process than the future claimants.  Indeed, it is likely that a vast number of individuals will ultimately assert future claims aggregating billions of dollars.  Compounding the difficulty in representing these individuals is the fact that, by definition, they are presently unidentifiable.  Since they are not presently aware of their claims, they cannot represent their own interests in these chapter 11 cases, but rather are entirely dependent upon the Futures Representative.  It is the job of the Futures Representative and his retained professionals to participate in the negotiation and formulation of a plan(s) of reorganization and a Section 524(g) trust, which will, inter alia, "provide reasonable assurance that the trust will value, and be in a financial position to pay, present claims and future demands that involve similar claims in

substantially the same manner." 11 U.S.C. § 524(g)(2)(B)(ii)(V).  As discussed below, this

requires that the Futures Representative have access to independent financial advice.

## THE NEED FOR THE FUTURES REPRESENTATIVE'S
## FINANCIAL ADVISOR TO BE INDEPENDENT

17.     The financial advice which the Futures Representative receives must be

independent if the interests of the future claimants are to be effectively represented.  First, the

interests of the future claimants are in many critical respects different from those of other

constituencies in the case.  Fundamentally, each constituency is seeking to maximize its own

recovery from the Debtors' finite asset pool.  Moreover, whereas the other constituencies are

principally interested in short term recoveries and accelerated distributions, the future claimants

(whose claims may not mature for many years) are principally interested in the long-term

funding of the Section 524(g) trust so as to ensure that their distributions are not less than those

made to current claimants.  Thus, in order to develop strategies best suited to the interests of

future claimants, the Futures Representative needs financial advice from advisors who have no

allegiance except to future claimants.

18.     Second, because of their divergent interests, it would not be reasonable to

expect the other constituencies to share with the Futures Representative all of the work product

and confidential advice that their own financial advisors have generated.  Nor would it, based on

the foregoing, be possible for the Futures Representative to prudently and vigorously represent

the interests of the future claimants while relying on the data generated by the financial advisor

of another constituency in these cases.

19.     Third, failure to afford future claimants (through the Futures Representative)

independent financial advice might well raise due process issues which would jeopardize the

efficacy of the Section 524(g) injunction that will be at the heart of the Debtors' reorganization

Appendix 333

effort and would therefore put a cloud over the "fresh start" that the Debtors are attempting to achieve.

20.     Finally, given the magnitude and complexity of these cases, and the fact that other constituencies, such as the Asbestos PI Committee, has its own independent financial advisor(s), there is no reason to single out the future claimants for different treatment. This is particularly true, since the future claimants, in all probability, constitute the largest constituency (in terms of both number and dollar amount) in these chapter 11 cases.

## CIBC'S QUALIFICATIONS

21.     The Futures Representative selected CIBC because it is a leading independent investment banking firm that provides financial and strategic advisory services to a select group of institutional clients. CIBC's restructuring group has represented a diverse group of debtors, bondholders, creditors' committees, single classes of creditors and secured creditors. Indeed, CIBC has served as financial advisor and investment banker in many large bankruptcy cases. CIBC has extensive and diverse experience, restructuring expertise and an excellent reputation in the restructuring field, as well as an understanding of the complex issues involved in these cases. As a result, the Futures Representative believes that CIBC possesses the necessary resources and is well qualified to provide the investment banking and financial advisory services that will be required in these cases.

22.     Accordingly, the Futures Representative believes that CIBC's retention is in the best interests of the Future Claimants, the Debtors and their estates.

## SERVICES TO BE RENDERED BY CIBC

23.     As set forth in the Amended Letter Agreement, CIBC will provide the following professional services to the Futures Representative:

i.    review of and consultation on the financing options for the Debtors;

ii.    review of and consultation on the potential divestiture, acquisition and merger transactions for the Debtors;

iii.    review of and consultation on the capital structure issues for the reorganized Debtors; and

iv.    review of and consultation on the Debtors' operating and business plans, including and analysis of the Debtors' long term capital needs and changing competitive environment.

24.    Also as set forth in the Amended Letter Agreement, upon the request of the Futures Representative, CIBC shall provide the following services (the "Additional Services") to the Futures Representative:

i.    Valuation of the Company as a going concern, in whole or part;

ii.    Valuation analyses of the Company's asbestos exposure;

iii.    Review of and consultation on the Company's debt capacity;

iv.    Review of and consultation on the financial issues and options concerning potential plans of reorganization, and coordinating negotiations with respect thereto;

v.    Provide general advice and consultation regarding the adequacy of the funding of any trust contemplated by Section 524(g) of the Bankruptcy Code;

vi.    Testimony in court on behalf of the Futures Representative, if necessary; and

vii.    Any other necessary services as the Futures Representative or the Future Representative's counsel may reasonably request from time to time with respect to the financial, business and economic issues that may arise.

25.    By Order dated July 14, 2002, the Court approved the retention of Analysis, Research & Planning Corporation as claim evaluation consultant for the Futures Representative. The Futures Representative and all of his professionals will coordinate to the extent reasonably possible so as to avoid any duplication of effort.

## SALIENT TERMS OF THE LETTER AGREEMENT

26.    The principal terms of the Amended Letter Agreement[2] are as follows:

Term:    The Amended Letter Agreement has an initial term commencing from July 29, 2002 for a period of six (6) months (the "First Period"); provided however, that the Futures Representative has the right, subject to Bankruptcy Court approval, to continue CIBC's retention after the conclusion of the First Period pursuant to a subsequent retention application and engagement letter to be negotiated (the "Second Period"). During the Second Period, either the Futures Representative or CIBC may terminate the Amended Letter Agreement with thirty (30) days advance written notice.

Fees:    As compensation for its services to the Futures Representative, CIBC proposes to charge the Debtors' estates a monthly fee (the "Monthly Fee") of twenty-five thousand ($25,000) commencing July 29, 2002 for a period of six months.[3]  If the Futures Representative shall call upon CIBC to provide the Additional Services, such Additional Services shall be provided by CIBC at a different rate (the "Amended Fee"). The Amended Fee shall be mutually agreed upon by the Futures Representative and CIBC and shall be subject to Bankruptcy Court Approval.

Expenses:    The Debtors will be obligated to reimburse CIBC for its reasonable out-of-pocket expenses incurred including, but not limited to, travel and lodging, data processing and communication charges, research, courier services and reasonable attorneys' fees, expenses or other disbursements (including, but not limited to, any investigation or related preparation) incurred by CIBC in connection with any legal or administrative action commenced against any Indemnified Person (as defined in the Amended Letter Agreement).

Key Persons:    The Amended Letter Agreement provides that CIBC shall make available to the Futures Representative the services of Joseph J. Radecki, Jr. and Stan Pillman.  If either ceases to be employed by CIBC, the Futures Representative is entitled to terminate the Agreement.

---

[2]    This is only a summary of certain of the relevant provisions, and the Court and all parties are respectfully referred to Exhibit B for a complete statement of the terms of the Amended Letter Agreement.

[3]    The fees described herein shall be subject to the extension of the term of the Amended Letter Agreement after the First Period and the limitations more fully set forth in Section 2 of the Letter Agreement.

Indemnity:       As set forth in Exhibit A to the Amended Letter Agreement, CIBC and its affiliates or any employee, agent, officer, director, attorney, shareholder or any person who controls CIBC (any and all of the foregoing defined as "Indemnified Person") are entitled to be indemnified from and against certain losses and liabilities arising out of or related to the performance of its services on behalf of the Futures Representative. The indemnity will not apply to any liability that has been "judicially determined to have resulted from the gross negligence, fraud, lack of good faith, bad faith, willful misfeasance, or reckless disregard of the obligations or duties of CIBC." *See* Exhibit A of the Amended Letter Agreement.[4]

27.     The Amended Letter Agreement further provides that neither the Futures Representative nor any of his advisors or counsel shall be liable for the fees payable to CIBC under the Amended Letter Agreement.

## DISCLOSURE CONCERNING CONFLICTS
## AND PREPETITION PAYMENTS

28.     CIBC has informed the Futures Representative that, except as described in the Amended Radecki Affidavit, CIBC (i) does not have or represent any interest materially adverse to the interests of the Debtors or their estates, creditors or equity interest holders, and (ii) is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code. Moreover, the retention and employment of CIBC is necessary and in the best interests of the Futures Representative, the Debtors and their estates and creditors.

29.     As more fully set forth in the Amended Radecki Affidavit, CIBC has not shared or agreed to share any of its compensation with any other person, other than a managing director, professional or employee of CIBC, as permitted by section 504 of the Bankruptcy Code.

---

[4]     A virtually identical indemnity provision was approved by an Order of this Court dated June 26, 2002, entered in *In re Armstrong World Industries, Inc.* et al. (Case No. 00-4471) in connection with the retention of Peter J. Solomon Company, as financial advisor and investment banker to Mr. Trafelet, who is also serving as the Legal Representative for Future Claimants therein.

30.    Subject to the foregoing, CIBC will seek awards of compensation and expenses pursuant to applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the *Administrative Order, Pursuant to 11 U.S.C. §§ 105(a) and 331 and Del. Bankr. LR 2016-2, Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals,* entered by the Court on September 18, 2001 and the *Order Appointing a Fee Auditor and Establishing Related Procedures Concerning the Allowance and Payment of Compensation and Reimbursement of Expenses of Professionals, Members of Official Committees and Consideration of Fee Applications,* entered by the Court on November 21, 2001.

## NOTICE

1.    The Futures Representative has served a copy of the Amended Application upon: (i) Office of the United States Trustee; (ii) Counsel to the Debtors; (iii) the agent for Debtors' prepetition bank lenders; (iv) the agent for the Debtors' postpetition bank lenders; (v) the attorneys for the Committees; (vi) the Core Group List; and (vii) all parties requesting notice pursuant to Bankruptcy Rule 2002.  Based upon the nature of relief sought herein, the Futures Representative respectfully submits that no further notice is required.

## PRIOR REQUESTS FOR RELIEF

31.    No previous application for the relief sought in this Amended Application has been made to this or any other court.

WHEREFORE, the Futures Representative respectfully requests that the Court issue and enter an order substantially in the form annexed hereto approving the employment and retention of CIBC and grant the Futures Representative such other and further relief as this Court may deem just and proper.

Dated: Wilmington, Delaware
      October 18, 2002     YOUNG CONAWAY STARGATT & TAYLOR, LLP

_Sharon M. Zieg_

James L. Patton, Jr. (No. 2202)
Edwin J. Harron (No. 3396)
Sharon M. Zieg (No. 4196)
The Brandywine Building – 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware  19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-AND-

Michael J. Crames, Esq.
Andrew A. Kress, Esq.
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Phone:  (212) 836-8000
Facsimile:  (212) 836-8689

Counsel for Dean M. Trafelet,
Legal Representative for Future Claimants

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| USG CORPORATION, a Delaware | ) | |
| corporation, _et al._, | ) | Case No. 01-2094 (RJN) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date: October 29, 2002 at 11:00 a.m. (ET)** |
| | ) | **Objection Deadline: September 16, 2002 at 4:00 p.m. (ET)** |
| | ) | |
| | ) | **MC No: YCST-10** |

### NOTICE OF AMENDED APPLICATION

**TO:**     **Office of the United States Trustee, Counsel to the Debtors, the agent for Debtors' prepetition bank lenders, the agent for the Debtors' postpetition bank lenders, the attorneys for the Committees, the Core Group List and all parties requesting notice pursuant to Bankruptcy Rule 2002.**

PLEASE TAKE NOTICE that Dean M. Trafelet, Legal Representative for Future Claimants (the "Futures Representative") has filed the attached **Amended Application for Order Pursuant to Sections 327, 524(g) and 1103 of the Bankruptcy Code and Fed. R. Bankr. P. 2014 Authorizing Retention and Employment of CIBC World Markets Corp., as Financial Advisor and Investment Banker for Dean M. Trafelet, Legal Representative for Future Claimants,** _Nunc Pro Tunc_ **to July 29, 2002** (the "Amended Application").

PLEASE TAKE FURTHER NOTICE a hearing on the Amended Application will be held on **October 29, 2002 at 10:00 a.m. (ET)** before the Honorable Randall J. Newsome, United States Bankruptcy Judge at the J. Caleb Boggs Federal Building, 844 King Street, Courtroom 2B, Wilmington, Delaware 19801.

Date Filed _____

Docket No. _____
59945.1001

WP3:821223.1

Appendix 340

Dated: Wilmington, Delaware
October 16, 2002

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Sharon M. Zieg*

James L. Patton, Jr. (No. 2202)
Edwin J. Harron (No. 3396)
Sharon M. Zieg (No. 4196)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

KAYE SCHOLER LLP
Michael J. Crames
425 Park Avenue
New York, New York. 10022
Telephone:  (212) 836-8518
Facsimile:  (212) 836-8689

Counsel for Dean Trafelet, Futures Representative

# EXHIBIT

# A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------- x
IN RE:                                                  :   Chapter 11
                                                        :
USG CORPORATION, et al.,¹                               :   Case No. 01-2094 (RJN)
                                                        :
          Debtors.                                      :   (Jointly Administered)
------------------------------------------------------- x
```

**AMENDED AFFIDAVIT OF JOSEPH J. RADECKI, JR. IN SUPPORT OF
AMENDED APPLICATION FOR ORDER PURSUANT TO SECTIONS 327, 524(g)
AND 1103 OF THE BANKRUPTCY CODE AND FED. R. BANKR. P. 2014
AUTHORIZING RETENTION AND EMPLOYMENT OF CIBC WORLD
MARKETS CORP., AS FINANCIAL ADVISOR AND INVESTMENT
BANKER FOR DEAN M. TRAFELET, LEGAL REPRESENTATIVE
FOR FUTURE CLAIMANTS, _NUNC PRO TUNC_ TO JULY 29, 2002**

```
STATE OF NEW YORK      )
                       ) :ss
COUNTY OF NEW YORK     )
```

JOSEPH J. RADECKI, JR., being duly sworn, deposes and says:

1.        I am a principal of the firm CIBC World Markets Corp. ("CIBC"), an

investment banking firm with offices located at 425 Lexington Avenue, 3rd Floor, New York,

New York 10017, and I make this affidavit on behalf of CIBC.

2.        I submit this affidavit pursuant to sections 327, 524(g) and 1103 of

title 11 of the United States Code, 11 U.S.C. §§ 101 _et seq._, as amended (the "Bankruptcy

Code"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

in support of the amended application (the "Amended Application") of Dean M. Trafelet, Legal

---

¹       The Debtors are the following 11 entities: USG Corporation, United States Gypsum Company, USG
Interiors, Inc., USG Interiors International, Inc., L&W Supply Corporation, Beadex Manufacturing, LLC,
B-R Pipeline Company, La Mirada Products, Co., Inc., USG Industries, Inc., USG Pipeline Company and
Stocking Specialists, Inc.

Representative for Future Claimants (the "Futures Representative"), for an order authorizing the retention and employment of CIBC as financial advisor and investment banker to the Futures Representative. Unless otherwise stated, I have personal knowledge of the facts set forth herein.

3.      CIBC is well qualified to serve as the financial advisor to the Futures Representative. CIBC has considerable experience in working with financially troubled companies in complex financial reorganizations, both within and outside the chapter 11 context, representing such clients as Days Inn, Grove Worldwide, Lazy Days R.V. Center, LTV Steel, Metal Management, Metals USA, Michael Petroleum, National Energy Group, Phar-Mor, RBX Corp., and Stage Stores. Based on this experience, I believe that CIBC is well-qualified to perform the financial advisory and investment banking services required by the Futures Representative.

4.      Pursuant to the amended letter agreement by and among the Futures Representative, the Debtors and CIBC, a copy of which is attached as Exhibit B to the Amended Application (the "Amended Letter Agreement"), CIBC will provide the following services:

(i)     review of and consultation on the financing options for the Company;

(ii)    review of and consultation on the potential divestiture, acquisition and merger transactions for the Company;

(iii)   review of and consultation on the capital structure issues for the reorganized Company; and

(iv)    review of and consultation on the Company's operating and business plans, including and analysis of the Company's long term capital needs and changing competitive environment.

5.      Also as set forth in the Amended Letter Agreement, upon the request of the Futures Representative, CIBC shall provide the following services (the "Additional Services") to the Futures Representative:

(i)     Valuation of the Company as a going concern, in whole or part;

(ii)    Valuation analyses of the Company's asbestos exposure;

(iii)    Review of and consultation on the Company's debt capacity;

(iv)    Review of and consultation on the financial issues and options concerning potential plans of reorganization, and coordinating negotiations with respect thereto;

(v)    Provide general advice and consultation regarding the adequacy of the funding of any trust contemplated by Section 524(g) of the Bankruptcy Code;

(vi)    Testimony in court on behalf of the Futures Representative, if necessary; and

(vii)    Any other necessary services as the Futures Representative or the Futures Representative's counsel may reasonably request from time to time with respect to the financial, business and economic issues that may arise.

6.     Under the Amended Letter Agreement, as compensation for its services CIBC will be entitled to receive, subject to Court approval, a monthly fee (the "Monthly Fee") of $25,000 for the six month period commencing on July 29, 2002. The Amended Letter Agreement may be terminated by either the Futures Representative or CIBC upon thirty days' notice to the other party. If the Futures Representative shall call upon CIBC to provide the Additional Services, such Additional Services shall be provided by CIBC at a different rate (the "Amended Fee"). The Amended Fee shall be mutually agreed upon by the Futures Representative and CIBC and subject to Bankruptcy Court Approval.

7.     The fees described above are consistent with CIBC's normal billing practices for cases of this size and complexity that require the level and scope of services outlined in the Amended Letter Agreement. I also believe that such fees are consistent with fees charged in comparable engagements in chapter 11 cases and out-of-court workouts.

8.       In addition to any fees payable to CIBC pursuant to the Amended Letter Agreement, CIBC shall be reimbursed on a monthly basis for its travel and other reasonable out-of-pocket expenses, as set forth in the Amended Letter Agreement.

9.       Under the Amended Letter Agreement, the Debtors shall indemnify CIBC and certain related persons. I believe that such provisions are consistent with indemnification provisions in comparable engagements in chapter 11 cases and out-of-court workouts in this District and elsewhere.

10.      I believe that the fee structure and indemnification provisions set forth in the Amended Letter Agreement are reasonable terms and conditions of employment and should be approved. The fee and indemnification provisions appropriately reflect the nature of the services to be provided by CIBC and the fee and indemnification provisions typically utilized by CIBC and other leading financial advisory and investment banking firms, which do not bill their clients on an hourly basis.

11.      CIBC has conducted a conflicts check and due inquiry regarding its relations with the Futures Representative, the Debtors, their significant creditors, their equity security holders, the attorneys and accountants for the foregoing, and the Office of the United States Trustee to determine whether it has any conflicts or other relationships that might bear on its retention by the Futures Representative. Among other things, CIBC has researched its client files and records which contain information retained under its normal record retention policies. In connection with this check, CIBC obtained from the Futures Representative's counsel a list of the names of individuals or entities believed to be among the more significant parties in interest in these chapter 11 cases (collectively, the "Potential Parties in Interest"). I caused to be disseminated within CIBC a list of the Potential Parties in Interest, accompanied by a request for

Appendix 346

information pertaining to any connections between CIBC and such parties. To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after due inquiry, neither I, CIBC, nor any professional employee of CIBC has any connection with the Debtors or any Potential Parties in Interest herein, except as hereinafter set forth.

12.    In the ordinary course of its activities as a full service firm, CIBC (i) in the past has had, and may in the future have, directly and indirectly, ordinary course relationships with persons who hold debt or equity securities issued by the Debtors on their direct and indirect corporate parents or investors, (ii) has in the past provided advice and may in the future advise certain of the Debtors' creditors or other Potential Parties in Interest herein, or interests adverse to such creditors or parties in interest herein, all, however, in matters unrelated to these chapter 11 cases, (iii) has working capital financial and operating relationships with various banking institutions which may be Potential Parties in Interest, and (iv) is a participant in syndicated financing arrangements in which some Potential Parties in Interest have been, are or may in the future be participants. In addition, CIBC, its directors, officers, employees, counsel and I may have appeared in the past and may appear in the future in cases in which one or more of the Debtors' creditors or other Potential Parties in Interest are involved in matters unrelated to the Debtors.

13.    CIBC has been and currently is engaged in numerous major restructuring transactions. It is possible that there are Potential Parties in Interest with whom CIBC previously had or in the future will have relationships on matters that can not been discovered in our review. To the extent that such relationships are hereafter discovered, CIBC will make supplemental disclosure.

14.     As part of its diverse practice, and in the course of the investment activities of its affiliates, CIBC has worked previously, currently works and likely will work in the future, with a variety of legal and financial institutions, some of which represent Potential Parties in Interest. Based on our current knowledge of the professionals involved, and to the best of our knowledge, none of our business relations constitute an interest adverse to the Futures Representative herein in matters upon which CIBC is to be employed, and none is in connection with these chapter 11 cases. Furthermore, CIBC has been represented and advised in the past, is represented and advised currently and may be represented and advised in the future, by several law firms and accounting firms, some of which may be involved in these proceedings.

15.     To the best of my knowledge, neither CIBC, nor its officers or employees has been retained to assist any entity or person other than the Futures Representative on matters relating to, or in connection with, these chapter 11 cases. If this Court approves the proposed employment of CIBC by the Futures Representative, CIBC will not accept any engagement or perform any service in these cases for any entity or person other than the Futures Representative; CIBC will, however, continue to provide professional services to, and engage in commercial or professional relationships with, entities or persons that may be creditors of the Debtors or otherwise are Potential Parties in Interest in these chapter 11 cases, provided that such services will not relate to, or have any direct connection with, these chapter 11 cases. CIBC is confident that the representation of such entities in unrelated matters will not affect its representation of the Futures Representative in these cases.

16.     Despite the efforts described above to identify and disclose CIBC's connections with Potential Parties in Interest, because the Debtors are a large enterprise with numerous unidentified creditors and other relationships, CIBC is unable to state with absolute

certainty that every relevant client representation or other connection has been disclosed. To the extent CIBC determines that it may be engaged in a matter that gives rise to an interest adverse to the Futures Representative or the Debtors, CIBC will promptly file a supplemental disclosure with this Court.

17.     To the best of my knowledge, information and belief, neither CIBC nor its officers or employees have or represent any interest materially adverse to the interests of the Futures Representative, the future claimants represented by the Futures Representative, the Debtors or their estates, and has no material connections to the Debtors or Potential Parties in Interest except as noted above. Accordingly, I believe that CIBC is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, in that CIBC, its officers and employees:

> (i)     Are not creditors, equity security holders or insiders of theDebtors;
>
> (ii)    Are not and were not investment bankers for any outstanding security of the Debtors;
>
> (iii)   Have not been within three years before the date of filing of the Debtors chapter 11 petitions (a) investment bankers for a security of the Debtors or (b) an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the Debtors; and
>
> (iv)    Were not, within two years before the date of filing of the Debtors chapter 11 petitions, a director, officer, or employee of the Debtors or of any investment banker as specified in subparagraph (ii) or (iii) above.

18.     CIBC has not shared or agreed to share any of its compensation from the Futures Representative with any other person, other than a managing director, professional or

employee of CIBC, as permitted by section 504 of the Bankruptcy Code. The proposed

engagement of CIBC is not prohibited by Bankruptcy Rule 5002.

Joseph J. Radecki, Jr.

Sworn and subscribed to me
this 17th day of October, 2002

Notary Public

JUDITH CHAITOW
Notary Public, State of New York
No. 31-4689789
Qualified in New York County
Commission Expires February 28, 06

Appendix 350

# EXHIBIT

# B



CIBC World Markets Corp.
425 Lexington Avenue
New York, NY 10017
Tel: 212-885-4400
Fax: 212-885-4998

October 17, 2002

The Honorable Dean M. Trafelet (Ret.)
9130 Wild Lane
Baileys Harbor, WI 54292
Dear Judge Trafelet:

The purpose of this letter is to confirm the understanding and agreement (the "Agreement") among Dean M. Trafelet in his capacity as Legal Representative for Future Claimants ("DMT") in the Chapter 11 proceedings of USG Corporation, together with its subsidiaries and affiliates (collectively, the "Company") pending in the United States Bankruptcy Court for the District of Delaware (the "Court"), CIBC World Markets Corp. ("CIBC"), and the Company related to the scope and terms of advisory services to be provided to DMT as the Future Claimants' Representative ("FCR") in the Company's Chapter 11 cases.

We understand that the work performed by CIBC will be done at the direction of DMT. CIBC's duties hereunder run solely to DMT, and CIBC is not authorized to be, and will not purport to be, an agent of the Company for any purpose. For our services and expenses on DMT's behalf, we agree to be compensated as set forth below. Any payment obligation arising in connection with this retention will be the obligation of the Company, including, but not limited to with respect to any payment obligation under Section 5 hereof, or Exhibit A attached hereto or otherwise under this Agreement.

<u>Section 1.</u>      <u>Services to be Rendered.</u>

CIBC will perform the following services, as DMT may request from time to time, including, but not limited to:

a)   Review of and consultation on the financing options for the Company;

b)   Review of and consultation on the potential divestiture, acquisition and merger transactions for the Company;

c)   Review of and consultation on the capital structure issues for the reorganized Company; and

d) Review of and consultation on the Company's operating and business plans, including analysis of the Company's long-term capital needs and changing competitive environment.

It is anticipated that at a later stage CIBC would be called upon to perform additional services (the "Additional Services") including, but not limited to:

a) Valuation of the Company as a going concern, in whole or part;

b) Valuation analyses of the Company's asbestos exposure;

c) Review of and consultation on the Company's debt capacity;

d) Review of and consultation on the financial issues and options concerning potential plans of reorganization, and coordinating negotiations with respect thereto;

e) Provide general advice and consultation regarding the adequacy of the funding of any trust contemplated by Section 524(g) of the Bankruptcy Code;

f) Testimony in court on behalf of DMT, if necessary; and

g) Any other necessary services as DMT or DMT's counsel may reasonably request from time to time with respect to the financial, business and economic issues that may arise.

Section 2.    Term.  The initial term of this Agreement shall commence from the date hereof for a period of six (6) months (the "First Period"); provided however, that DMT reserves the right, subject to Bankruptcy Court Approval, to continue CIBC's retention at the completion of the First Period pursuant to an engagement letter to be negotiated (the "Second Period"). During the First Period, either DMT or CIBC may terminate this Agreement with thirty (30) days advance notice in writing.  If terminated, CIBC shall be entitled to receive any fees for any monthly period which are due and owing CIBC upon the effective date of the termination; however, such amounts will be prorated for any incomplete monthly period of service, and CIBC will be entitled to the reimbursement for the out-of-pocket expenses described in Section 4, subject to Bankruptcy Court approval. Termination of CIBC's engagement hereunder shall not affect or impair the Company's continuing obligation to indemnify CIBC and certain related persons as provided in Section 5 and Exhibit A and the Company's, continuing obligations under Section 6 hereof.  During the term of this Agreement, CIBC will make available to DMT the services of Joseph J. Radecki, Jr. and Stan Pillman.  If Joseph J. Radecki, Jr. or Stan Pillman shall cease to be employed by CIBC, DMT shall have the right to terminate this Agreement by giving notice to CIBC and shall not be obligated to pay CIBC the fees outlined in Section 3 below under such circumstances.

Section 3.    Fees. In consideration for the services described in Section 1, during the course of this engagement the Company agrees to pay CIBC in cash pursuant to the procedures for compensation and reimbursement of expenses established by the Bankruptcy Court in accordance with the applicable provisions of the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules for the Bankruptcy Court for the District of Delaware, the final financing order and other applicable orders in these jointly administered cases, including the Administrative Order, Pursuant to Sections 105(a) and 331 of the Bankruptcy Code, Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the "Administrative Compensation Order") and the Order Approving Fee Auditor and Establishing Related Procedures Concerning the Allowance and Payment of Compensation and Reimbursement of Expenses of Professionals and Members of Official Committees and Consideration of Fee Applications as follows: a monthly fee (the "Monthly Fee") of $25,000 payable monthly in advance, starting upon the date of this Agreement for a minimum of six (6) months. For the Second Period, the Monthly Fee may be modified to an amount as is mutually acceptable to CIBC and DMT that will reflect the amount of work that remains to be done. Neither DMT or any of his advisors or professionals shall be liable for the fees payable to CIBC hereunder. If DMT shall call upon CIBC to provide the Additional Services, such Additional Services shall be provided by CIBC at a different rate (the "Amended Fee"). The Amended Fee shall be mutually agreed upon by DMT and CIBC and shall be memorialized by a new letter agreement subject to the approval of the Bankruptcy Court.

Section 4.    Expenses. Without in any way reducing or affecting the provisions of Exhibit A hereto, the Company shall reimburse CIBC for its reasonable out-of-pocket expenses incurred in connection with the provision of services hereunder including, without limitation the fees, disbursements and other charges of CIBC's counsel. Outside counsel will be retained by CIBC only with the consent of DMT if counsel to DMT is unable or unwilling to represent CIBC. Out-of-pocket expenses also shall include, but not be limited to, travel and lodging, data processing and communication charges, research and courier services. Neither DMT nor any of his advisors or professionals shall be liable for the expenses to CIBC hereunder.

Section 5.    Indemnity. The Company agrees to the provisions of Exhibit A hereto which provide for certain indemnification of CIBC and certain related persons. Such indemnification is an integral part of this Agreement, and the terms thereof are incorporated by reference herein. Such indemnification shall survive any termination, expiration or completion of this Agreement.

Section 6.    Miscellaneous.

    a) In connection with allowances of compensation and reimbursement of
       expenses, CIBC shall file appropriate applications for allowance of interim

and final compensation and reimbursement of expenses in accordance with Sections 330 and 331 of the United States Bankruptcy Code and applicable rules at such times as directed by the Bankruptcy Court or established by administrative order entered in the bankruptcy cases in accordance with the applicable provisions of the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules for the Bankruptcy Court for the District of Delaware, the final financing order and other applicable orders in these jointly administered cases, including the Administrative Compensation Order. The fees detailed in Section 3 above have been agreed upon with the express expectation that they are subject to review by the Bankruptcy Court as provided by Section 328 of the Bankruptcy Code. Furthermore DMT understands that the hours worked, the results achieved in the reorganization or the ultimate benefit to the estate of the work performed may be variable and DMT has taken this into account in setting the fees detailed in Section 3 above. CIBC will make every effort to coordinate with the other professionals in these bankruptcy cases in order to eliminate unnecessary duplication or overlap of work.

b) Obligations incurred by DMT (solely in his capacity as FCR) and/or the Company under Sections 2 through 6 shall survive termination or expiration of the Agreement.

c) CIBC shall under all circumstances have the right to rely on, without independent verification, subject to its obligations to act in good faith, and does not assume responsibility for the accuracy or completeness of, information furnished to CIBC by the Company, its representatives or DMT in connection with CIBC's engagement hereunder.

d) CIBC shall keep confidential all information provided to it by the Company, which has been designated as confidential information by the Company, and DMT and his counsel, unless publicly available or otherwise available to CIBC without restriction or breach of any confidentiality agreement, and shall not disclose such information to any third party, other than in confidence to its employees, agents, representatives and advisors, without the Company's and/or DMT's prior approval as the case may be.

e) The advice (oral or written) rendered by CIBC pursuant to this Agreement is intended solely for the benefit and use of DMT and his professionals in considering the matters to which this Agreement relates, and DMT agrees that such advice may not be relied upon by any other person, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose without the prior written consent of CIBC. To the extent DMT directs, CIBC shall provide its data, information or

determinations to DMT's counsel and other constituencies in the Chapter 11 cases.

f) DMT agrees that any reference to CIBC in any release or communication or materials distributed, is subject to CIBC's prior written approval, unless such release or communication is required by law or regulation.  If DMT resigns prior to the dissemination of any such release, communication or material, no reference shall be made therein to CIBC.

g) CIBC shall have the right after completion of this engagement to place advertisements in financial and other newspapers and journals at its own expense describing its services hereunder.

h) This Agreement may not be amended or modified except by a writing executed by each of the parties and this Agreement, including all controversies arising from or relating to performance under this Agreement, shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to such state's rules concerning conflicts of law.

i) Any lawsuits with respect to, in connection with or arising out of this Agreement shall be brought in Bankruptcy Court and the parties hereto consent to the jurisdiction and venue of the Bankruptcy Court as the sole and exclusive forum, unless such court is unavailable, for the resolution of claims by the parties arising under or relating to this Agreement.

j) To the extent permitted by applicable law, the parties hereto waive trial by jury in connection with or arising out of this Agreement, or any other claim or dispute relating to the engagement of CIBC arising between the parties hereto. The parties hereto confirm that the foregoing waivers are informed and freely made.

k) The relationship of CIBC to DMT hereunder shall be that of an independent contractor and CIBC shall have no authority to bind, represent or otherwise act as agent for DMT.

l) In providing such services hereunder, the CIBC team shall be headed by Joseph J. Radecki, Jr. who shall personally be involved in the delivery of services provided hereunder, except in the event of death, incapacity, leave of absence or cessation of employment by CIBC.

If the foregoing correctly sets forth the understanding and Agreement among DMT, the Company and CIBC, please so indicate by signing the enclosed copy of this letter, whereupon it shall become a binding Agreement between the parties hereto as of the date first above written.

Sincerely,

**CIBC WORLD MARKETS CORP.**

By: _____

Joseph J. Radecki, Jr.
Managing Director

Accepted and Agreed to as of
the day first written above:

**LEGAL REPRESENTATIVE FOR THE FUTURE CLAIMANTS OF USG CORP.**

By: _____

The Honorable Dean M. Trafelet (Ret.)

**USG CORP.**

By: _____

## Exhibit A

This Exhibit A is part of and incorporated into that certain letter agreement (the "Agreement"), dated October 16, 2002.

a)      If CIBC World Markets Corp. ("CIBC") and its affiliates or any employee, agent, officer, director, attorney, shareholder or any person who controls CIBC (any or all of the foregoing, hereinafter an "Indemnified Person") becomes involved in any capacity in any legal or administrative action, suit, proceeding, investigation or inquiry, regardless of the legal theory or the allegations made in connection therewith, directly or indirectly in connection with, arising out of, based upon, or in any way related to (i) the Agreement; (ii) the services that are subject of the Agreement; (iii) any document or information, whether verbal or written, referred to herein or supplied to CIBC; (iv) the breach of the representations, warranties or covenants by the Company given pursuant hereto; (v) CIBC's involvement in the Chapter 11 case of the Company (the "Case") or any part thereof; (vi) any filings made by or on behalf of any party with any governmental agency in connection with the Case; (vii) the Case; or (viii) proceedings by or on behalf of any creditors or equity holders of the Company, the Company will on demand, advance or pay promptly, on behalf of each Indemnified Person, reasonable attorney's fees and other expenses and disbursements (including, but not limited to, the cost of any investigation and related preparation) as they are incurred by the Indemnified Person.    The Company also indemnifies and holds harmless each Indemnified Person against any and all losses, claims, damages, liabilities, costs and expenses (including, but not limited to, attorney's fees, disbursements and court costs, and cost of investigation and preparation ("Losses")) to which such Indemnified Person may become subject in connection with any such matter.

b)      If for any reason the foregoing indemnification is determined to be unavailable to any Indemnified Person or insufficient fully to indemnify any such person, then the Company will contribute to the amount paid or payable by such person as a result of any such Losses in such proportion as is appropriate to reflect (i) the relationship between CIBC's fees on the one hand and the aggregate value of the Company on the other hand or (ii) if the allocation provided by clause (i) is not permitted by applicable law, not only such relative benefit but also the relative fault of the other participants in the Case, on the one hand, and CIBC and the Indemnified Persons on the other hand, and any other relevant equitable considerations in connection with the matters as to which such Losses relate.

c)      If any action or proceeding shall be brought or asserted against CIBC or any other Indemnified Person in respect of which indemnity or contribution may be sought from the Company hereunder, CIBC shall promptly notify the Company in writing, provided that failure to notify the Company shall not relieve it from any liability hereunder except to the extent of any material prejudice resulting

therefrom. The Company may, upon notice to CIBC, assume the defense thereof by retaining counsel reasonably satisfactory to CIBC. Any Indemnified Person shall have the right to employ separate counsel in any such action and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of the Indemnified Person (but not other reasonable defense or investigation expenses incurred by or on behalf of CIBC or any other Indemnified Person) unless (i) the Company has agreed to pay the reasonable fees and expenses for such counsel; (ii) the Company shall have failed to promptly assume the defense of such action or proceeding; or (iii) the named parties to such action or proceeding (including any impleaded parties) include both the Indemnified Person and the Company and the Indemnified Person reasonably believes that the joint representation of the Indemnified Person may result in a conflict of interest (in which case if the Indemnified Person shall notify the Company in writing of the facts underlying the perceived conflict and that it elects to employ separate counsel at the expense of the Company, the Company shall not have the right to assume the defense of such action or proceeding on behalf of the Indemnified Person, provided the fees and expenses of such separate counsel are reasonable).

d)     The indemnification obligations hereunder shall not apply to any Losses that are judicially determined to have resulted from the gross negligence, fraud, lack of good faith, bad faith, willful misfeasance, or reckless disregard of the obligations or duties of CIBC. In the event of such judicial determination, the Company shall be entitled to recover from CIBC the costs and expenses paid on behalf of any Indemnified Person pursuant to this indemnification obligation. In addition, the Company shall have no obligation to indemnify CIBC, or provide contribution or reimbursement to CIBC, for any claim or expense that is settled prior to a judicial determination as to CIBC's gross negligence or willful misconduct, but determined by the Court, after notice and a hearing, to be a claim or expense for which CIBC should not receive indemnity, contribution or reimbursement under the terms of this Agreement.

e)     The Company agrees that it will not settle, compromise or discharge any suit, claim, litigation, threatened litigation or threatened claim arising out of, based upon, or in any way related to the Case and to which CIBC or any Indemnified Person is or may reasonably be expected to be a party, unless and until the Company has obtained a written agreement, approved by CIBC (which shall not be unreasonably withheld) and executed by each party to such proposed settlement, compromise or discharge, releasing CIBC and each Indemnified Person from any and all liability. CIBC agrees that it will not settle, compromise or discharge any such suit, claim, litigation, threatened litigation or threatened claim without the prior written consent of the Company, which will not be unreasonably withheld.

f)     The Company further agrees that neither CIBC nor any other Indemnified Person shall have any liability, regardless of the legal theory advanced, to the

Company or any other person or entity (including the Company's equity holders and creditors) related to or arising out of CIBC's engagement, except for any liability for losses, claims, damages, liabilities, costs and expenses incurred by the Company which are judicially determined to have resulted from the gross negligence, fraud, lack of good faith, bad faith, willful misfeasance, or reckless disregard of the obligations or duties of CIBC.

g)    The Company's obligations under this Exhibit shall be in addition to any liability that the Company or any other person may otherwise have to CIBC or any Indemnified Person. The foregoing provisions shall be enforceable by each Indemnified Person and such person's heirs, representatives and successors, and shall survive any termination of the Agreement or the completion of services hereunder.

h)    If, before the earlier of (i) the entry of an order confirming a Chapter 11 plan in these cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these Chapter 11 cases, CIBC believes it is entitled to the payment of any amounts by the Company on account of the Company's indemnification, contribution and/or reimbursement obligations under this Agreement, including without limitation the advancement of defense costs, CIBC must file an application therefor in the Court, and the Company may not pay any such amounts to CIBC before the entry of an order by the Court approving the payment. This subparagraph (h) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by CIBC for indemnification, contribution or reimbursement and not a provision limiting the duration of the Company's obligation to indemnify CIBC.

i)    The Company shall indemnify CIBC in accordance with the preceding clauses, for any claim arising from, related to, or in connection with the services provided for in this Agreement, but not for any claim arising from, related to, or in connection with CIBC's postpetition performance of any other services unless such postpetition services and indemnification therefor are approved by the Court.

j)    After approval by the Court of the preceding clauses, the United States Trustee, and only the United States Trustee, shall have the right to object to the indemnification provisions herein if, during the Company's cases, the United States Court of Appeals for the Third Circuit issues a ruling with respect to the appeal from the decision of the United States District Court for the District of Delaware with respect to indemnification rights in <u>United Artists Theatre Company, et al.</u>, Case No. 00-3514 (SLR); provided that the United States Trustee shall be required to file any such objection within 60 days after the date the United States Court of Appeals for the Third Circuit issues such ruling.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
--------------------------------------------------  x
In re:                                              :  Chapter 11
                                                    :
USG CORPORATION, et al.,                            :  Case No. 01-2094 (RJN)
                              Debtors.              :
                                                    :  (Jointly Administered)
                                                    :
                                                    :  Docket Ref No. _____
                                                    :  M.C. No. : YCST - 10
--------------------------------------------------  x
```

## ORDER PURSUANT TO SECTIONS, 327, 524(g) AND 1103 OF THE BANKRUPTCY CODE AUTHORIZING THE RETENTION AND EMPLOYMENT OF CIBC WORLD MARKETS CORP. AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO DEAN M. TRAFELET, LEGAL REPRESENTATIVE FOR FUTURE CLAIMANTS *NUNC PRO TUNC* TO JULY 29, 2002

Upon the amended application (the "Amended Application") of Dean M. Trafelet, Esq., legal representative for future claimants (the "Futures Representative") in connection with the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), seeking entry of an order pursuant to sections 327, 524(g) and 1103 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the retention and employment of CIBC World Markets Corp. ("CIBC") as financial advisor and investment banker to the Futures Representative and for the approval of the proposed terms of such employment set forth in the letter agreement attached as Exhibit B to the Amended Application (the "Amended Letter Agreement"); and upon the Affidavit of Joseph J. Radecki, Jr. (the "Radecki Affidavit") in support of the Amended Application; and the Court being satisfied that except as otherwise set forth in the Radecki Affidavit, (i) CIBC does not have or represent any interest materially

adverse to the interests of the Futures Representative, the Debtors or their estates, creditors or

equity holders; (ii) CIBC is a "disinterested person" as that term is defined in section 101(14) of

the Bankruptcy Code; and (iii) the retention and employment of CIBC are necessary and in the

best interests of the Debtors and their estates, creditors, and equity holders; and due notice of the

Amended Application having been given and appearing that no other or further notice need be

given; and after due deliberation and sufficient cause appearing therefor; it is hereby

   **ORDERED**, that the Amended Application is granted and approved in all

respects, and it is further;

   **ORDERED THAT** in accordance with sections 327, 524(g) and 1103 of

the Bankruptcy Code, and Rule 2014 of the Bankruptcy Rules, the Futures Representative is

authorized to retain and employ CIBC as its financial advisor and investment banker, *nunc pro*

*tunc* to July 29, 2002, for the purpose of providing financial advisory, investment banking and

other related services in connection with the Debtors' chapter 11 cases in accordance with the

terms of the Amended Letter Agreement; and it is further

   **ORDERED THAT** the fees to be paid to CIBC pursuant to the terms of the

Amended Letter Agreement are approved and shall be subject to the standard review provided in

section 328(a) of the Bankruptcy Code and, except as provided in the Amended Letter

Agreement, are not subject to any other standard of review under section 330 of the Bankruptcy

Code; and it is further

   **ORDERED THAT** the indemnification provisions of the Amended Letter

Agreement are approved, subject to the following:

   (a)    Subject to the provisions of subparagraph (c), *infra*, the Debtors
          are authorized to indemnify, and shall indemnify CIBC in
          accordance with the Amended Letter Agreement, for any claim
          arising from, related to, or in connection with the services provided

for in the Amended Letter Agreement, but not for any claim arising from, related to, or in connection with CIBC's postpetition performance of any other services unless such postpetition services and indemnification therefor are approved by this Court;

(b)    Notwithstanding any provisions of the Amended Letter Agreement to the contrary, the Debtors shall have no obligation to indemnify CIBC, or provide contribution or reimbursement to CIBC, for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen solely from CIBC's gross negligence, bad faith or willful misconduct, or (ii) settled prior to a judicial determination as to CIBC's gross negligence or willful misconduct, but determined by this Court, after notice and a hearing, to be a claim or expense for which CIBC should not receive indemnity, contribution or reimbursement under the terms of the Amended Letter Agreement and this Order; and

(c)    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these chapter 11 cases, CIBC believes it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Amended Letter Agreement (as modified by this Order), including without limitation the advancement of defense costs, CIBC must file an application therefor in this Court, and the Debtors may not pay any such amounts to CIBC before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by CIBC for indemnification, contribution or reimbursement and not a provision limiting the duration of the Debtors' obligation to indemnify CIBC; and it is further

**ORDERED THAT** the compensation and reimbursement payments due under the Amended Letter Agreement shall be entitled to priority as expenses of administration under Sections 503(b)(1)(A) and 507(a)(1) of the Bankruptcy Code and shall be entitled to the benefits of any "carve outs" for professionals' fees and expenses in effect in these Chapter 11 cases pursuant to one or more financing orders now or hereinafter in effect; and it is further

**Appendix 363**

**ORDERED THAT** neither the Futures Representative nor any of his advisors or counsel shall be liable for the fees payable to CIBC under the Amended Letter Agreement; and it is further

**ORDERED THAT** CIBC shall be compensated in such amounts as may be allowed by this Court upon the filing of appropriate applications for allowance of interim or final compensation in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules and the *Administrative Order, Pursuant to 11 U.S.C. §§ 105(a) and 331 and Del. Bankr. LR 2016-2, Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, and the *Order Appointing a Fee Auditor and Establishing Related Procedures Concerning the Allowance and Payment of Compensation and Reimbursement of Expenses of Professionals, Members of Official Committees and Consideration of Fee Applications*, entered by this Court; and it is further

**ORDERED THAT** this Court shall retain exclusive jurisdiction to construe and enforce the terms of the Amended Application, the Amended Letter Agreement, and this Order.

Dated: Wilmington, Delaware
_____, 2002


_____
Randall J. Newsome
United States Bankruptcy Judge

Appendix 364