# TAB 16

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------- x
In re:                                         : Chapter 11
                                               :
USG CORPORATION, et al.,                       : Case No. 00-2094 (RJN)
            Debtors.                           :
                                               : (Jointly Administered)
                                               :
                                               : Docket Ref. No. 2845
---------------------------------------------- x M.C. No.: YCST -10

### ORDER PURSUANT TO SECTIONS, 327, 524(g) AND 1103 OF THE BANKRUPTCY CODE AUTHORIZING THE RETENTION AND EMPLOYMENT OF CIBC WORLD MARKETS CORP. AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO DEAN M. TRAFELET, LEGAL REPRESENTATIVE FOR FUTURE CLAIMANTS *NUNC PRO TUNC* TO JULY 29, 2002

Upon the amended application (the "Application") of Dean M. Trafelet, Esq., legal representative for future claimants (the "Futures Representative") in connection with the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), seeking entry of an order pursuant to sections 327, 524(g) and 1103 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the retention and employment of CIBC World Markets Corp. ("CIBC") as financial advisor and investment banker to the Futures Representative and for the approval of the proposed terms of such employment set forth in the letter agreement attached hereto as Exhibit A (the "Letter Agreement"); and upon the Affidavit of Joseph J. Radecki, Jr. (the "Radecki Affidavit") in support of the Application; and the Court being satisfied that except as otherwise set forth in the Radecki Affidavit, (i) CIBC does not have or represent any interest materially adverse to the interests of the Futures Representative, the Debtors or their estates, creditors or equity holders; (ii) CIBC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code; and

WP3:824693.2                                                                59945.1001

(iii) the retention and employment of CIBC are necessary and in the best interests of the Debtors and their estates, creditors, and equity holders; and due notice of the Application having been given and appearing that no other or further notice need be given; and after due deliberation and sufficient cause appearing therefor; it is hereby

        **ORDERED**, that the Application is granted and approved in all respects, and it is further;

        **ORDERED THAT** in accordance with sections 327, 524(g) and 1103 of the Bankruptcy Code, and Rule 2014 of the Bankruptcy Rules, the Futures Representative is authorized to retain and employ CIBC as its financial advisor and investment banker, *nunc pro tunc* to July 29, 2002, for the purpose of providing financial advisory, investment banking and other related services in connection with the Debtors' chapter 11 cases in accordance with the terms of the Letter Agreement; and it is further

        **ORDERED THAT** the fees to be paid to CIBC pursuant to the terms of the Letter Agreement are approved and shall be subject to the standard review provided in section 328(a) of the Bankruptcy Code and, except as provided in the Letter Agreement, are not subject to any other standard of review under section 330 of the Bankruptcy Code; and it is further

        **ORDERED THAT** the indemnification provisions of the Letter Agreement are approved, subject to the following:

        (a)    Subject to the provisions of subparagraphs (c) and (d), *infra*, the Debtors are authorized to indemnify, and shall indemnify CIBC in accordance with the Letter Agreement, for any claim arising from, related to, or in connection with the services provided for in the Letter Agreement, but not for any claim arising from, related to, or in connection with CIBC's postpetition performance of any other services unless such postpetition services and indemnification therefor are approved by this Court;

        (b)    Notwithstanding any provisions of the Letter Agreement to the contrary, the Debtors shall have no obligation to indemnify CIBC,

or provide contribution or reimbursement to CIBC, for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen solely from CIBC's gross negligence, bad faith or willful misconduct, or (ii) settled prior to a judicial determination as to CIBC's gross negligence or willful misconduct, but determined by this Court, after notice and a hearing, to be a claim or expense for which CIBC should not receive indemnity, contribution or reimbursement under the terms of the Letter Agreement and this Order; and

(c)  If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these chapter 11 cases, CIBC believes it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Letter Agreement (as modified by this Order), including without limitation the advancement of defense costs, CIBC must file an application therefor in this Court, and the Debtors may not pay any such amounts to CIBC before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by CIBC for indemnification, contribution or reimbursement and not a provision limiting the duration of the Debtors' obligation to indemnify CIBC;

(d)  Notwithstanding subparagraphs (a) through (c) infra, the United States Trustee, and only the United States Trustee, shall have the right to object to the indemnification provisions approved herein if, during the Debtors' cases, the United States Court of Appeals for the Third Circuit issues a ruling with respect to the appeal from the decision of the United States District Court for the District of Delaware with respect to indemnification rights in United Artists Theatre Company, et al., Case. No. 00-3514 (SLR); provided that the United States Trustee shall be required to file any such objection within 60 days after the date the United States Court of Appeals for the Third Circuit issues such ruling; and it is further

**ORDERED THAT** the compensation and reimbursement payments due under the Letter Agreement shall be entitled to priority as expenses of administration under Sections 503(b)(1)(A) and 507(a)(1) of the Bankruptcy Code and shall be entitled to the benefits of any

WP3:824693.2

59945.1001

"carve outs" for professionals' fees and expenses in effect in these Chapter 11 cases pursuant to one or more financing orders now or hereinafter in effect; and it is further

    **ORDERED THAT** neither the Futures Representative nor any of his advisors or counsel shall be liable for the fees payable to CIBC under the Letter Agreement; and it is further

    **ORDERED THAT** CIBC shall be compensated in such amounts as may be allowed by this Court upon the filing of appropriate applications for allowance of interim or final compensation in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules and the the *Administrative Order, Pursuant to 11 U.S.C. §§ 105(a) and 331 and Del. Bankr. LR 2016-2, Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, and the *Order Appointing a Fee Auditor and Establishing Related Procedures Concerning the Allowance and Payment of Compensation and Reimbursement of Expenses of Professionals, Members of Official Committees and Consideration of Fee Applications*, entered by this Court; and it is further

    **ORDERED THAT** this Court shall retain exclusive jurisdiction to construe and enforce the terms of the Application, the Letter Agreement, and this Order.

Dated: Wilmington, Delaware
    \_\_\_\_\_11/1\_\_\_\_\_, 2002

    */s/ Randall J. Newsome*
    UNITED STATES BANKRUPTCY JUDGE

WP3:824693.2

59945.1001

# Exhibit A



**CIBC World Markets**

CIBC World Markets Corp.
425 Lexington Avenue
New York, NY 10017
Tel. 212-885-4400
Fax: 212-885-4998

October 29, 2002

The Honorable Dean M. Trafelet (Ret.)
9130 Wild Lane
Baileys Harbor, WI 54292

Dear Judge Trafelet:

The purpose of this letter is to confirm the understanding and agreement (the "Agreement") among Dean M. Trafelet in his capacity as Legal Representative for Future Claimants ("DMT") in the Chapter 11 proceedings of USG Corporation, together with its subsidiaries and affiliates (collectively, the "Company") pending in the United States Bankruptcy Court for the District of Delaware (the "Court"), CIBC World Markets Corp. ("CIBC"), and the Company related to the scope and terms of advisory services to be provided to DMT as the Future Claimants' Representative ("FCR") in the Company's Chapter 11 cases.

We understand that the work performed by CIBC will be done at the direction of DMT. CIBC's duties hereunder run solely to DMT, and CIBC is not authorized to be, and will not purport to be, an agent of the Company for any purpose. For our services and expenses on DMT's behalf, we agree to be compensated as set forth below. Any payment obligation arising in connection with this retention will be the obligation of the Company, including, but not limited to with respect to any payment obligation under Section 5 hereof, or Exhibit A attached hereto or otherwise under this Agreement.

Section 1.    Services to be Rendered.

CIBC will perform the following services, as DMT may request from time to time, including, but not limited to:

a) Review of and consultation on the financing options for the Company;

b) Review of and consultation on the potential divestiture, acquisition and merger transactions for the Company;

c) Review of and consultation on the capital structure issues for the reorganized Company; and

CIBC World Markets Corp.

d) Review of and consultation on the Company's operating and business plans, including analysis of the Company's long-term capital needs and changing competitive environment.

It is anticipated that at a later stage CIBC would be called upon to perform additional services (the "Additional Services") including, but not limited to:

a) Valuation of the Company as a going concern, in whole or part;

b) Valuation analyses of the Company's asbestos exposure;

c) Review of and consultation on the Company's debt capacity;

d) Review of and consultation on the financial issues and options concerning potential plans of reorganization, and coordinating negotiations with respect thereto;

e) Provide general advice and consultation regarding the adequacy of the funding of any trust contemplated by Section 524(g) of the Bankruptcy Code;

f) Testimony in court on behalf of DMT, if necessary; and

g) Any other necessary services as DMT or DMT's counsel may reasonably request from time to time with respect to the financial, business and economic issues that may arise.

Section 2.    Term.    The initial term of this Agreement shall commence from the date hereof for a period of six (6) months (the "First Period"); provided however, that DMT reserves the right, subject to Bankruptcy Court Approval, to continue CIBC's retention at the completion of the First Period pursuant to an engagement letter to be negotiated (the "Second Period"). During the First Period, either DMT or CIBC may terminate this Agreement with thirty (30) days advance notice in writing. If terminated, CIBC shall be entitled to receive any fees for any monthly period which are due and owing CIBC upon the effective date of the termination; however, such amounts will be prorated for any incomplete monthly period of service, and CIBC will be entitled to the reimbursement for the out-of-pocket expenses described in Section 4, subject to Bankruptcy Court approval. Termination of CIBC's engagement hereunder shall not affect or impair the Company's continuing obligation to indemnify CIBC and certain related persons as provided in Section 5 and Exhibit A and the Company's, continuing obligations under Section 6 hereof. During the term of this Agreement, CIBC will make available to DMT the services of Joseph J. Radecki, Jr. and Stan Pillman. If Joseph J. Radecki, Jr. or Stan Pillman shall cease to be employed by CIBC, DMT shall have the right to terminate this Agreement by giving notice to CIBC and shall not be obligated to pay CIBC the fees outlined in Section 3 below under such circumstances.

CIBC World Markets Corp.

Section 3.    Fees.  In consideration for the services described in Section 1, during the course of this engagement the Company agrees to pay CIBC in cash pursuant to the procedures for compensation and reimbursement of expenses established by the Bankruptcy Court in accordance with the applicable provisions of the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules for the Bankruptcy Court for the District of Delaware, the final financing order and other applicable orders in these jointly administered cases, including the Administrative Order, Pursuant to Sections 105(a) and 331 of the Bankruptcy Code, Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the "Administrative Compensation Order") and the Order Approving Fee Auditor and Establishing Related Procedures Concerning the Allowance and Payment of Compensation and Reimbursement of Expenses of Professionals and Members of Official Committees and Consideration of Fee Applications as follows: a monthly fee (the "Monthly Fee") of $25,000 payable monthly in advance, starting upon the date of this Agreement for a minimum of six (6) months.  For the Second Period, the Monthly Fee may be modified to an amount as is mutually acceptable to CIBC and DMT that will reflect the amount of work that remains to be done.  Neither DMT or any of his advisors or professionals shall be liable for the fees payable to CIBC hereunder.  If DMT shall call upon CIBC to provide the Additional Services, such Additional Services shall be provided by CIBC at a different rate (the "Amended Fee").  The Amended Fee shall be mutually agreed upon by DMT and CIBC and shall be memorialized by a new letter agreement subject to the approval of the Bankruptcy Court.

Section 4.    Expenses.  Without in any way reducing or affecting the provisions of Exhibit A hereto, the Company shall reimburse CIBC for its reasonable out-of-pocket expenses incurred in connection with the provision of services hereunder.  Out-of-pocket expenses also shall include, but not be limited to, travel and lodging, data processing and communication charges, research and courier services.  Neither DMT nor any of his advisors or professionals shall be liable for the expenses to CIBC hereunder.

Section 5.    Indemnity.  The Company agrees to the provisions of Exhibit A hereto which provide for certain indemnification of CIBC and certain related persons, subject to the modifications contained in the Order Authorizing the Retention and Employment of CIBC World Markets Corp. as Financial Advisor and Investment Banker to Dean M. Trafelet, Legal Representative for Future Claimants *Nunc Pro Tunc* to July 29, 2002 as approved and signed by the Bankruptcy Court.  Such indemnification is an integral part of this Agreement, and the terms thereof are incorporated by reference herein.  Such indemnification shall survive any termination, expiration or completion of this Agreement.

CIBC World Markets Corp.

Section 6.    Miscellaneous.

a) In connection with allowances of compensation and reimbursement of expenses, CIBC shall file appropriate applications for allowance of interim and final compensation and reimbursement of expenses in accordance with Sections 330 and 331 of the United States Bankruptcy Code and applicable rules at such times as directed by the Bankruptcy Court or established by administrative order entered in the bankruptcy cases in accordance with the applicable provisions of the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules for the Bankruptcy Court for the District of Delaware, the final financing order and other applicable orders in these jointly administered cases, including the Administrative Compensation Order. The fees detailed in Section 3 above have been agreed upon with the express expectation that they are subject to review by the Bankruptcy Court as provided by Section 328 of the Bankruptcy Code. Furthermore DMT understands that the hours worked, the results achieved in the reorganization or the ultimate benefit to the estate of the work performed may be variable and DMT has taken this into account in setting the fees detailed in Section 3 above. CIBC will make every effort to coordinate with the other professionals in these bankruptcy cases in order to eliminate unnecessary duplication or overlap of work.

b) Obligations incurred by DMT (solely in his capacity as FCR) and/or the Company under Sections 2 through 6 shall survive termination or expiration of the Agreement.

c) CIBC shall under all circumstances have the right to rely on, without independent verification, subject to its obligations to act in good faith, and does not assume responsibility for the accuracy or completeness of, information furnished to CIBC by the Company, its representatives or DMT in connection with CIBC's engagement hereunder.

d) CIBC shall keep confidential all information provided to it by the Company, which has been designated as confidential information by the Company, and DMT and his counsel, unless publicly available or otherwise available to CIBC without restriction or breach of any confidentiality agreement, and shall not disclose such information to any third party, other than in confidence to its employees, agents, representatives and advisors, without the Company's and/or DMT's prior approval as the case may be.

e) The advice (oral or written) rendered by CIBC pursuant to this Agreement is intended solely for the benefit and use of DMT and his professionals in considering the matters to which this Agreement relates, and DMT agrees that such advice may not be relied upon by any other person, used for any other

CIBC World Markets Corp.

purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose without the prior written consent of CIBC. To the extent DMT directs, CIBC shall provide its data, information or determinations to DMT's counsel and other constituencies in the Chapter 11 cases.

f) DMT agrees that any reference to CIBC in any release or communication or materials distributed, is subject to CIBC's prior written approval, unless such release or communication is required by law or regulation. If DMT resigns prior to the dissemination of any such release, communication or material, no reference shall be made therein to CIBC.

g) CIBC shall have the right after completion of this engagement to place advertisements in financial and other newspapers and journals at its own expense describing its services hereunder.

h) This Agreement may not be amended or modified except by a writing executed by each of the parties and this Agreement, including all controversies arising from or relating to performance under this Agreement, shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to such state's rules concerning conflicts of law.

i) Any lawsuits with respect to, in connection with or arising out of this Agreement shall be brought in Bankruptcy Court and the parties hereto consent to the jurisdiction and venue of the Bankruptcy Court as the sole and exclusive forum, unless such court is unavailable, for the resolution of claims by the parties arising under or relating to this Agreement.

j) To the extent permitted by applicable law, the parties hereto waive trial by jury in connection with or arising out of this Agreement, or any other claim or dispute relating to the engagement of CIBC arising between the parties hereto. The parties hereto confirm that the foregoing waivers are informed and freely made.

k) The relationship of CIBC to DMT hereunder shall be that of an independent contractor and CIBC shall have no authority to bind, represent or otherwise act as agent for DMT.

l) In providing such services hereunder, the CIBC team shall be headed by Joseph J. Radecki, Jr. who shall personally be involved in the delivery of services provided hereunder, except in the event of death, incapacity, leave of absence or cessation of employment by CIBC.

Appendix 374

CIBC World Markets Corp.

If the foregoing correctly sets forth the understanding and Agreement among DMT, the Company and CIBC, please so indicate by signing the enclosed copy of this letter, whereupon it shall become a binding Agreement between the parties hereto as of the date first above written.

Sincerely,

**CIBC WORLD MARKETS CORP.**

By: _____
Steven R. Strom
Managing Director

Accepted and Agreed to as of
the day first written above:

**LEGAL REPRESENTATIVE FOR THE FUTURE CLAIMANTS OF USG CORP.**

By: _____
The Honorable Dean M. Trafelet (Ret.)

**USG CORP.**

By: _____

CIBC World Markets Corp.

## Exhibit A

This Exhibit A is part of and incorporated into that certain letter agreement (the "Agreement"), dated October 16, 2002.

a) If CIBC World Markets Corp. ("CIBC") and its affiliates or any employee, agent, officer, director, attorney, shareholder or any person who controls CIBC (any or all of the foregoing, hereinafter an "Indemnified Person") becomes involved in any capacity in any legal or administrative action, suit, proceeding, investigation or inquiry, regardless of the legal theory or the allegations made in connection therewith, directly or indirectly in connection with, arising out of, based upon, or in any way related to (i) the Agreement; (ii) the services that are subject of the Agreement; (iii) any document or information, whether verbal or written, referred to herein or supplied to CIBC; (iv) the breach of the representations, warranties or covenants by the Company given pursuant hereto; (v) CIBC's involvement in the Chapter 11 case of the Company (the "Case") or any part thereof; (vi) any filings made by or on behalf of any party with any governmental agency in connection with the Case; (vii) the Case; or (viii) proceedings by or on behalf of any creditors or equity holders of the Company, the Company will on demand, advance or pay promptly, on behalf of each Indemnified Person, reasonable attorney's fees and other expenses and disbursements (including, but not limited to, the cost of any investigation and related preparation) as they are incurred by the Indemnified Person. The Company also indemnifies and holds harmless each Indemnified Person against any and all losses, claims, damages, liabilities, costs and expenses (including, but not limited to, attorney's fees, disbursements and court costs, and cost of investigation and preparation ("Losses")) to which such Indemnified Person may become subject in connection with any such matter.

b) If for any reason the foregoing indemnification is determined to be unavailable to any Indemnified Person or insufficient fully to indemnify any such person, then the Company will contribute to the amount paid or payable by such person as a result of any such Losses in such proportion as is appropriate to reflect (i) the relationship between CIBC's fees on the one hand and the aggregate value of the Company on the other hand or (ii) if the allocation provided by clause (i) is not permitted by applicable law, not only such relative benefit but also the relative fault of the other participants in the Case, on the one hand, and CIBC and the Indemnified Persons on the other hand, and any other relevant equitable considerations in connection with the matters as to which such Losses relate.

c) If any action or proceeding shall be brought or asserted against CIBC or any other Indemnified Person in respect of which indemnity or contribution may be sought from the Company hereunder, CIBC shall promptly notify the Company in writing, provided that failure to notify the Company shall not relieve it from any liability hereunder except to the extent of any material prejudice resulting

Appendix 376

CIBC World Markets Corp.

therefrom. The Company may, upon notice to CIBC, assume the defense thereof by retaining counsel reasonably satisfactory to CIBC. Any Indemnified Person shall have the right to employ separate counsel in any such action and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of the Indemnified Person (but not other reasonable defense or investigation expenses incurred by or on behalf of CIBC or any other Indemnified Person) unless (i) the Company has agreed to pay the reasonable fees and expenses for such counsel; (ii) the Company shall have failed to promptly assume the defense of such action or proceeding; or (iii) the named parties to such action or proceeding (including any impleaded parties) include both the Indemnified Person and the Company and the Indemnified Person reasonably believes that the joint representation of the Indemnified Person may result in a conflict of interest (in which case if the Indemnified Person shall notify the Company in writing of the facts underlying the perceived conflict and that it elects to employ separate counsel at the expense of the Company, the Company shall not have the right to assume the defense of such action or proceeding on behalf of the Indemnified Person, provided the fees and expenses of such separate counsel are reasonable).

d)  The indemnification obligations hereunder shall not apply to any Losses that are judicially determined to have resulted from the gross negligence, fraud, lack of good faith, bad faith, willful misfeasance, or reckless disregard of the obligations or duties of CIBC. In the event of such judicial determination, the Company shall be entitled to recover from CIBC the costs and expenses paid on behalf of any Indemnified Person pursuant to this indemnification obligation. In addition, the Company shall have no obligation to indemnify CIBC, or provide contribution or reimbursement to CIBC, for any claim or expense that is settled prior to a judicial determination as to CIBC's gross negligence or willful misconduct, but determined by the Court, after notice and a hearing, to be a claim or expense for which CIBC should not receive indemnity, contribution or reimbursement under the terms of this Agreement.

e)  The Company agrees that it will not settle, compromise or discharge any suit, claim, litigation, threatened litigation or threatened claim arising out of, based upon, or in any way related to the Case and to which CIBC or any Indemnified Person is or may reasonably be expected to be a party, unless and until the Company has obtained a written agreement, approved by CIBC (which shall not be unreasonably withheld) and executed by each party to such proposed settlement, compromise or discharge, releasing CIBC and each Indemnified Person from any and all liability. CIBC agrees that it will not settle, compromise or discharge any such suit, claim, litigation, threatened litigation or threatened claim without the prior written consent of the Company, which will not be unreasonably withheld.

f)  The Company further agrees that neither CIBC nor any other Indemnified Person shall have any liability, regardless of the legal theory advanced, to the

Appendix 377

CIBC World Markets Corp.

Company or any other person or entity (including the Company's equity holders and creditors) related to or arising out of CIBC's engagement, except for any liability for losses, claims, damages, liabilities, costs and expenses incurred by the Company which are judicially determined to have resulted from the gross negligence, fraud, lack of good faith, bad faith, willful misfeasance, or reckless disregard of the obligations or duties of CIBC.

g) The Company's obligations under this Exhibit shall be in addition to any liability that the Company or any other person may otherwise have to CIBC or any Indemnified Person. The foregoing provisions shall be enforceable by each Indemnified Person and such person's heirs, representatives and successors, and shall survive any termination of the Agreement or the completion of services hereunder.

h) If, before the earlier of (i) the entry of an order confirming a Chapter 11 plan in these cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these Chapter 11 cases, CIBC believes it is entitled to the payment of any amounts by the Company on account of the Company's indemnification, contribution and/or reimbursement obligations under this Agreement, including without limitation the advancement of defense costs, CIBC must file an application therefor in the Court, and the Company may not pay any such amounts to CIBC before the entry of an order by the Court approving the payment. This subparagraph (h) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by CIBC for indemnification, contribution or reimbursement and not a provision limiting the duration of the Company's obligation to indemnify CIBC.

i) The Company shall indemnify CIBC in accordance with the preceding clauses, for any claim arising from, related to, or in connection with the services provided for in this Agreement, but not for any claim arising from, related to, or in connection with CIBC's postpetition performance of any other services unless such postpetition services and indemnification therefor are approved by the Court.

j) After approval by the Court of the preceding clauses, the United States Trustee, and only the United States Trustee, shall have the right to object to the indemnification provisions herein if, during the Company's cases, the United States Court of Appeals for the Third Circuit issues a ruling with respect to the appeal from the decision of the United States District Court for the District of Delaware with respect to indemnification rights in United Artists Theatre Company, et al., Case No. 00-3514 (SLR); provided that the United States Trustee shall be required to file any such objection within 60 days after the date the United States Court of Appeals for the Third Circuit issues such ruling.