# TAB 17

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| USG CORPORATION, a Delaware | ) | |
| corporation, _et al._, | ) | Case No. 01-2094 (RJN) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date: April 29, 2003 at 10:00 a.m.** |
| | ) | **Objection Deadline:  April 17, 2003 at 4:00 p.m.** |
| | ) | |
| | ) | MC No: YCST – 56 |

**APPLICATION FOR ORDER PURSUANT TO 11 U.S.C. §§ 327, 524(g) AND 1103
AND FED. R. BANKR. P. 2014 AUTHORIZING DEAN M. TRAFELET, LEGAL
REPRESENTATIVE FOR FUTURE CLAIMANTS, TO MODIFY AND
EXTEND TERMS OF RETENTION AND EMPLOYMENT OF CIBC WORLD
MARKETS CORP., AS HIS FINANCIAL ADVISOR AND INVESTMENT BANKER**

Dean M. Trafelet, Esq., the legal representative (the "Futures Representative") for

future claimants, appointed in the above-captioned bankruptcy proceedings, submits this

application (the "Application"), for entry of an order pursuant to sections 327, 524(g) and 1103

of title 11 of the United States Code, 11 U.S.C. §§ 101 _et seq_., as amended (the "Bankruptcy

Code"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

authorizing the Futures Representative to modify and extend the terms of the retention and

employment of CIBC World Markets Corp. ("CIBC"), as investment banker and financial

advisor for the Futures Representative, previously approved by the Court on November 5, 2002.

In support of this Application, the Futures Representative relies on the Supplemental Affidavit of

Joseph J. Radecki, Jr. (the "Supplemental Radecki Affidavit"), a copy of which is annexed hereto

as Exhibit A, and respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of the Debtors'

chapter 11 cases and this Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and

1409.  The statutory predicates for the relief sought herein are sections 327, 524(g) and 1103 of

the Bankruptcy Code, as complemented by Rule 2014 of the Bankruptcy Rules.

## BACKGROUND

### A.  The Chapter 11 Filings

2.      On June 25, 2001 (the "Petition Date"), USG Corporation ("USG") and nine

of its direct and indirect subsidiaries (collectively, the "Debtors" or the "Company") filed

voluntary petitions in this Court for reorganization under chapter 11 of the Bankruptcy Code.

Since the Petition Date, the Debtors have continued to manage and operate their businesses as

debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.   No

trustee or examiner has been appointed in the Debtors' chapter 11 cases.

3.      On or about July 13, 2001, pursuant to section 1102(a)(1) of the Bankruptcy

Code, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the

Official Committee of Unsecured Creditors, the Official Committee of Asbestos Personal Injury

Claimants, the Official Committee of Asbestos Property Damage Claimants (collectively, the

"Committees").

4.      On July 14, 2002, Dean M. Trafelet was appointed as the Futures

Representative.  The primary charge of the Futures Representative is to protect the rights of

individuals who may have been exposed to asbestos or asbestos-containing products but who,

prior to confirmation of a plan or plans of reorganization for the Debtors, have not manifested symptoms of asbestos-related diseases resulting from such exposure (the "Future Claimants").

## B.  The Debtors' Businesses

5.      USG is a publicly-traded holding company which directly or indirectly owns each of the other Debtors.  Through its Debtor and non-debtor subsidiaries, USG operates a variety of businesses worldwide that together make USG a leading global manufacturer and distributor of building materials.  The Debtors' wide range of products are used in residential and new construction, repair and remodeling, as well as certain other industrial processes.  The Debtors' leading products include gypsum wallboard, gypsum fiber panels and cement board, as well as ceiling tile and grid systems.

## C.  The Debtors' Asbestos Liabilities

6.      From the 1930's until approximately 1977, the Debtors manufactured, sold and distributed asbestos-containing products, primarily through Debtor United States Gypsum Company ("U.S. Gypsum").  As of the Petition Date, asbestos-related lawsuits involving more than 106,000 prepetition claimants were pending against the Debtors, the vast majority of which allege bodily injuries resulting from exposure to asbestos or asbestos-containing products manufactured or sold by U.S. Gypsum.  The exorbitant cost of settling and defending asbestos personal injury claims was the major reason for the Debtors' decision to seek the protection of the bankruptcy laws.

7.      The Debtors will be subject to additional asbestos-related personal injury claims from the Future Claimants.  The valuation of future asbestos-related claims against the Debtors and the establishment of a trust for the benefit of Future Claimants pursuant to section 524(g) of the Bankruptcy Code will be crucial elements in a successful reorganization of the

Debtors.   Accordingly, the Futures Representative has determined that the employment and retention of a financial advisor and investment banker is crucial to his effective representation of the Future Claimants.

**D.  Futures Representative's Prior Applications to
    Retain CIBC, the Terms thereof and Responses Thereto**

8.      On or about August 29, 2002, the Futures Representative filed his Application Authorizing the Retention and Employment of CIBC World Markets Corp., as Financial Advisor and Investment Banker Nunc Pro Tunc to July 29, 2002 [Docket No. 2670] (the "Retention Application").   On or about September 13, 2002, the Creditors' Committee filed its Objection to the Retention Application [Docket No. 2729] (the "Committee's Objection").   On or about September 16, 2002, the Debtors filed their Response to the Retention Application [Docket No. 2735] (the "Debtors' Response").   The Debtors' Response raised concerns with respect to, *inter alia*, the duration of the term of CIBC's retention under the proposed engagement letter. Specifically, the Debtors recommended that CIBC's retention be limited to six months, with any extension of CIBC's retention requiring Bankruptcy Court Approval.

9.      In light of the concerns raised in the Committee's Objection and the Debtors' Response, on or about October 18, 2002, the Futures Representative filed his Amended Application to Employ CIBC World Markets Corp., as Financial Advisor and Investment Banker for Dean M. Trafelet, Legal Representative for Future Claimants, *Nunc Pro Tunc* to July 29, 2002 CIBC World Market Corp. as Financial Advisor and Investment Banker [Docket No. 2845] (the "Retention Application").   On November 1, 2002, the Court entered its order approving the Amended Retention Application [Docket No. 2893] (the "Retention Order").   The Retention Order, *inter alia*, approved the terms of the letter agreement between the Futures Representative and CIBC dated October 29, 2002 (the "Letter Agreement"), and provided that the initial term of

**Appendix 382**

CIBC's retention would expire six (6) months from the date of the Letter Agreement, *i.e.*, April 29, 2003.

## RELIEF REQUESTED

10.     By this Application, the Futures Representative seeks to extend and modify the terms of his retention of CIBC beyond April 29, 2003. Specifically, the Futures Representative respectfully requests that the Court issue and enter an order pursuant to sections 327, 524(g) and 1103 of the Bankruptcy Code and Rules 2014 of the Bankruptcy Rules:

> (a)     authorizing the retention and employment of CIBC as his financial advisor and investment banker for the purpose of providing financial advisory, investment banking and other related services in connection with the Debtors' chapter 11 cases in accordance with the terms of the retention letter agreement, substantially in the form attached hereto as Exhibit B (the "Supplemental Letter Agreement");

> (b)     approving the proposed fee structure, including the indemnification provisions, set forth in the Supplemental Letter Agreement;

> (c)     approving the entitlement of the compensation and reimbursement payments due under the Supplemental Letter Agreement to priority as expenses of administration under Sections 503(b)(1)(A) and 507(a)(1) of the Bankruptcy Code and determining that such payments thereunder shall be entitled to the benefits of any "carve outs" for professionals' fees and expenses in effect in these Chapter 11 cases pursuant to one or more financing orders now or hereinafter in effect;  and

> (d)     granting such other and further relief as this Court deems just and proper.

11.     The Futures Representative requests that CIBC's retention be continued and modified as set forth in the Supplemental Letter Agreement.

## CIBC'S QUALIFICATIONS

12.     The Futures Representative selected CIBC because it is a leading independent investment banking firm that provides financial and strategic advisory services to a select group of institutional clients. CIBC's restructuring group has represented a diverse group of debtors,

bondholders, creditors' committees, single classes of creditors and secured creditors. Indeed, CIBC has served as financial advisor and investment banker in many large bankruptcy cases. CIBC has extensive and diverse experience, restructuring expertise and an excellent reputation in the restructuring field, as well as an understanding of the complex issues involved in these cases. As a result, the Futures Representative believes that CIBC possesses the necessary resources and is well qualified to provide the investment banking and financial advisory services that will be required in these cases.

13.    Accordingly, the Futures Representative believes that CIBC's retention is in the best interests of the Future Claimants, the Debtors and their estates.

## SERVICES TO BE RENDERED BY CIBC

14.    As set forth in the Supplemental Letter Agreement, CIBC will provide the following professional services to the Futures Representative:

i.    review of and consultation on the financing options for the Debtors;

ii.    review of and consultation on the potential divestiture, acquisition and merger transactions for the Debtors;

iii.    review of and consultation on the capital structure issues for the reorganized Debtors; and

iv.    review of and consultation on the Debtors' operating and business plans, including and analysis of the Debtors' long term capital needs and changing competitive environment.

15.    Also as set forth in the Supplemental Letter Agreement, upon the request of the Futures Representative, CIBC shall provide the following services (the "Additional Services") to the Futures Representative:

i.    Valuation of the Company as a going concern, in whole or part;

ii.    Valuation analyses of the Company's asbestos exposure;

iii.   Review of and consultation on the Company's debt capacity;

iv.   Review of and consultation on the financial issues and options concerning potential plans of reorganization, and coordinating negotiations with respect thereto;

v.   Provide general advice and consultation regarding the adequacy of the funding of any trust contemplated by Section 524(g) of the Bankruptcy Code;

vi.   Testimony in court on behalf of the Futures Representative, if necessary; and

vii.   Any other necessary services as the Futures Representative or the Future Representative's counsel may reasonably request from time to time with respect to the financial, business and economic issues that may arise.

16.   By Order dated July 14, 2002, the Court approved the retention of Analysis, Research & Planning Corporation as claims evaluation consultant for the Futures Representative. The Futures Representative and all of his professionals have and will continue to coordinate so as to avoid any unnecessary duplication of effort among the professionals. The Futures Representative and all of his professionals believe that they have been successful in that regard.

## SALIENT TERMS OF THE LETTER AGREEMENT

17.   The principal terms of the Supplemental Letter Agreement[1] are as follows:

Term:   The Supplemental Letter Agreement has an initial term commencing from April 29, 2003 for a period of six (6) months (the "Current Period"); provided however, that the Futures Representative has the right, subject to Bankruptcy Court approval, to continue CIBC's retention after the conclusion of the Current Period pursuant to a subsequent retention application and engagement letter to be negotiated (the "Additional Period"). During the Additional Period, either the Futures Representative or CIBC may terminate the Supplemental Letter Agreement with thirty (30) days advance written notice.

Fees:   As compensation for its services to the Futures Representative, CIBC proposes to continue to charge the Debtors' estates a monthly fee (the

---

[1]   This is only a summary of certain of the relevant provisions, and the Court and all parties are respectfully referred to Exhibit B for a complete statement of the terms of the Supplemental Letter Agreement.

"Monthly Fee") of twenty-five thousand ($25,000) for a period of six months.[2] If the Futures Representative shall call upon CIBC to provide the Additional Services, such Additional Services shall be provided by CIBC at a different rate (the "Amended Fee"). The Amended Fee shall be mutually agreed upon by the Futures Representative and CIBC and shall be subject to Bankruptcy Court Approval.

Expenses:   The Debtors will be obligated to reimburse CIBC for its reasonable out-of-pocket expenses incurred including, but not limited to, travel and lodging, data processing and communication charges, research, courier services and reasonable attorneys' fees, expenses or other disbursements (including, but not limited to, any investigation or related preparation) incurred by CIBC in connection with any legal or administrative action commenced against any Indemnified Person (as defined in the Supplemental Letter Agreement).

Key Persons:   The Supplemental Letter Agreement provides that CIBC shall make available to the Futures Representative the services of Joseph J. Radecki, Jr. If Mr. Radecki ceases to be employed by CIBC, the Futures Representative is entitled to terminate the Agreement.

Indemnity:   As set forth in Exhibit A to the Supplemental Letter Agreement, CIBC and its affiliates or any employee, agent, officer, director, attorney, shareholder or any person who controls CIBC (any and all of the foregoing defined as "Indemnified Person") are entitled to be indemnified from and against certain losses and liabilities arising out of or related to the performance of its services on behalf of the Futures Representative. The indemnity will not apply to any liability that has been "judicially determined to have resulted from the gross negligence, fraud, lack of good faith, bad faith, willful misfeasance, or reckless disregard of the obligations or duties of CIBC." *See* Exhibit A of the Supplemental Letter Agreement.[3]

---

[2]   The fees described herein shall be subject to the extension of the term of the Supplemental Letter Agreement after the Current Period and the limitations more fully set forth in Section 2 of the Letter Agreement.

[3]   This Court's Retention Order previously approved an identical indemnity provision in connection with the Futures Representative's initial retention of CIBC.

18.    The Supplemental Letter Agreement further provides that neither the Futures Representative nor any of his advisors or counsel shall be liable for the fees payable to CIBC under the Supplemental Letter Agreement.

## DISCLOSURE CONCERNING CONFLICTS
## AND PREPETITION PAYMENTS

19.    CIBC has informed the Futures Representative that, except as described in the Supplemental Radecki Affidavit, CIBC (i) does not have or represent any interest materially adverse to the interests of the Debtors or their estates, creditors or equity interest holders, and (ii) is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code. Moreover, the retention and employment of CIBC is necessary and in the best interests of the Futures Representative, the Debtors and their estates and creditors.

20.    As more fully set forth in the Supplemental Radecki Affidavit, CIBC has not shared or agreed to share any of its compensation with any other person, other than a managing director, professional or employee of CIBC, as permitted by section 504 of the Bankruptcy Code.

21.    Subject to the foregoing, CIBC will seek awards of compensation and expenses pursuant to applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the *Administrative Order, Pursuant to 11 U.S.C. §§ 105(a) and 331 and Del. Bankr. LR 2016-2, Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, entered by the Court on September 18, 2001, and the *Order Appointing a Fee Auditor and Establishing Related Procedures Concerning the Allowance and Payment of Compensation and Reimbursement of Expenses of Professionals, Members of Official Committees and Consideration of Fee Applications*, entered by the Court on November 21, 2001.

## NOTICE

22.    Proper notice of this Application has been given and the Futures

Representative submits that no further notice need be given.

### PRIOR REQUESTS FOR RELIEF

23.    No previous application for the relief sought in this Application has been

made to this or any other court.

WHEREFORE, the Futures Representative respectfully requests that the Court issue

and enter an order substantially in the form annexed hereto (i) approving the extension of the

employment, (ii) modifying the terms of CIBC's retention and (iii) and granting the Futures

Representative such other and further relief as this Court may deem just and proper.

Dated:    Wilmington, Delaware
          April 7, 2003                        YOUNG CONAWAY STARGATT & TAYLOR

                                               *Sharon M. Zieg*
                                               James L. Patton, Jr. (No. 2202)
                                               Edwin J. Harron (No. 3396)
                                               Sharon M. Zieg (No. 4196)
                                               The Brandywine Building
                                               1000 West Street, 17th Floor
                                               P.O. Box 391
                                               Wilmington, Delaware  19899-0391
                                               Telephone: (302) 571-6600
                                               Facsimile: (302) 571-1253

                                               -AND-

                                               Michael J. Crames, Esq.
                                               Andrew A. Kress, Esq.
                                               KAYE SCHOLER LLP
                                               425 Park Avenue
                                               New York, NY 10022
                                               Phone:  (212) 836-8000
                                               Facsimile:  (212) 836-8689

                                               Counsel for Dean M. Trafelet,
                                               Legal Representative for Future Claimants

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| USG CORPORATION, a Delaware | ) | |
| corporation, _et al.,_ | ) | Case No. 01-2094 (RJN) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date: April 29, 2003 at 10:00 a.m.** |
| | ) | **Objection Deadline:  April 17, 2003 at 4:00 p.m.** |
| | ) | |
| | ) | **MC No: YCST – 56** |

### NOTICE OF APPLICATION

TO:    Parties required to receive notice pursuant to Local Bankruptcy Rule 2002-1(b), as modified by the Court's Second Revised Order Establishing Case Management Procedures and Hearing Schedule, dated November 1, 2002

PLEASE TAKE NOTICE that Dean M. Trafelet, Legal Representative for Future Claimants (the "Futures Representative") has filed the attached **Application for Order Pursuant to 11 U.S.C. §§ 327, 524(g) and 1103 and Fed. R. Bankr. P. 2014 Authorizing Dean M. Trafelet, Legal Representative for Future Claimants, to Modify and Extend Terms of Retention and Employment of CIBC World Markets Corp., as His Financial Advisor and Investment Banker** (the "Application").

Objections, if any, to the relief requested in the Application must be filed with the United States Bankruptcy Court for the District of Delaware, 5th Floor, 824 Market Street, Wilmington, Delaware 19801 on or before **April 17, 2003 at 4:00 p.m.**

At the same time, you must also serve a copy of the objection so as to be received by the following by no later than **April 17, 2003 at 4:00 p.m.**:

Edwin J. Harron, Esquire
Sharon M. Zieg, Esquire
Young Conaway Stargatt & Taylor, L.L.P.
The Brandywine Building
P.O. Box 391
Wilmington, Delaware 19899-0391

Michael J. Crames, Esquire
Kaye Scholer, L.L.P.
425 Park Avenue
New York, New York 10022

A HEARING ON THE MOTION WILL BE HELD ON APRIL 29, 2003 AT 10:00 A.M. BEFORE THE HONORABLE RANDALL J. NEWSOME, UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 844 KING STREET, WILMINGTON, DELAWARE 19801.  ONLY PARTIES WHO HAVE FILED TIMELY OBJECTIONS WILL BE HEARD AT THE HEARING.

IF YOU FAIL TO OBJECT IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE APPLICATION WITHOUT FURTHER NOTICE OR HEARING.

Dated: Wilmington, Delaware
       April 7, 2003

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Sharon M. Zieg*

James L. Patton, Jr. (No. 2202)
Edwin J. Harron (No. 3396)
Sharon M. Zieg (No. 4196)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

KAYE SCHOLER LLP
Michael J. Crames
425 Park Avenue
New York, New York. 10022
Telephone:  (212) 836-8518
Facsimile:  (212) 836-8689

Counsel for Dean Trafelet, Futures Representative

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------- x

IN RE:                                                    :    Chapter 11
                                                          :
USG CORPORATION, et al.,[1]                               :    Case No. 01-2094 (RJN)
                                                          :
            Debtors.                                      :    (Jointly Administered)
------------------------------------------------------------- :
                                                          x

**SUPPLEMENTAL AFFIDAVIT OF JOSEPH J. RADECKI, JR. IN SUPPORT OF
SUPPLEMENTAL APPLICATION FOR ORDER PURSUANT TO 11 U.S.C. §§ 327,
524(g) AND 1103 AND FED. R. BANKR. P. 2014 AUTHORIZING RETENTION AND
EMPLOYMENT OF CIBC WORLD MARKETS CORP., AS FINANCIAL ADVISOR
AND INVESTMENT BANKER FOR DEAN M. TRAFELET, LEGAL
<u>REPRESENTATIVE FOR FUTURE CLAIMANTS</u>**

STATE OF NEW YORK         )
                          ) :ss
COUNTY OF NEW YORK        )

JOSEPH J. RADECKI, JR., being duly sworn, deposes and says:

    1.      I am a principal of the firm CIBC World Markets Corp. ("CIBC"), an investment banking firm with offices located at 425 Lexington Avenue, 3rd Floor, New York, New York 10017, and I make this affidavit on behalf of CIBC.

    2.      I submit this affidavit pursuant to sections 327, 524(g) and 1103 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*., as amended (the "Bankruptcy Code"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), in support of the supplemental application (the "Supplemental Application") of Dean M. Trafelet, Legal Representative for Future Claimants (the "Futures Representative"), for an order

---

[1] The Debtors are the following 11 entities: USG Corporation, United States Gypsum Company, USG Interiors, Inc., USG Interiors International, Inc., L&W Supply Corporation, Beadex Manufacturing, LLC, B-R Pipeline Company, La Mirada Products, Co., Inc., USG Industries, Inc., USG Pipeline Company and Stocking Specialists, Inc.

authorizing the retention and employment of CIBC as financial advisor and investment banker to the Futures Representative. Unless otherwise stated, I have personal knowledge of the facts set forth herein.

       3.        CIBC is well qualified to serve as the financial advisor to the Futures Representative. CIBC has considerable experience in working with financially troubled companies in complex financial reorganizations, both within and outside the chapter 11 context, representing such clients as Days Inn, Grove Worldwide, Lazy Days R.V. Center, LTV Steel, Metal Management, Metals USA, Michael Petroleum, National Energy Group, Phar-Mor, RBX Corp., and Stage Stores. Based on this experience, I believe that CIBC is well-qualified to perform the financial advisory and investment banking services required by the Futures Representative.

       4.        Pursuant to the supplemental letter agreement by and among the Futures Representative, the Debtors and CIBC, a copy of which is attached as Exhibit B to the Supplemental Application (the "Supplemental Letter Agreement"), CIBC will provide the following services:

        (i)     review of and consultation on the financing options for the Company;

        (ii)    review of and consultation on the potential divestiture, acquisition and merger transactions for the Company;

        (iii)   review of and consultation on the capital structure issues for the reorganized Company; and

        (iv)   review of and consultation on the Company's operating and business plans, including and analysis of the Company's long term capital needs and changing competitive environment.

WP3:876192.1                                       59945.1001

**Appendix 393**

5.      Also as set forth in the Supplemental Letter Agreement, upon the request of the Futures Representative, CIBC shall provide the following services (the "Additional Services") to the Futures Representative:

(i)      Valuation of the Company as a going concern, in whole or part;

(ii)     Valuation analyses of the Company's asbestos exposure;

(iii)    Review of and consultation on the Company's debt capacity;

(iv)     Review of and consultation on the financial issues and options concerning potential plans of reorganization, and coordinating negotiations with respect thereto;

(v)      Provide general advice and consultation regarding the adequacy of the funding of any trust contemplated by Section 524(g) of the Bankruptcy Code;

(vi)     Testimony in court on behalf of the Futures Representative, if necessary; and

(vii)    Any other necessary services as the Futures Representative or the Futures Representative's counsel may reasonably request from time to time with respect to the financial, business and economic issues that may arise.

6.      Under the Supplemental Letter Agreement, as compensation for its services CIBC will be entitled to receive, subject to Court approval, a monthly fee (the "Monthly Fee") of $25,000 for the six month period commencing on April 29, 2003. The Supplemental Letter Agreement may be terminated by either the Futures Representative or CIBC upon thirty days' notice to the other party. If the Futures Representative shall call upon CIBC to provide the Additional Services, such Additional Services shall be provided by CIBC at a different rate (the "Amended Fee"). The Amended Fee shall be mutually agreed upon by the Futures Representative and CIBC and subject to Bankruptcy Court Approval.

7.    The fees described above are consistent with CIBC's normal billing practices for cases of this size and complexity that require the level and scope of services outlined in the Supplemental Letter Agreement. I also believe that such fees are consistent with fees charged in comparable engagements in chapter 11 cases and out-of-court workouts.

8.    In addition to any fees payable to CIBC pursuant to the Supplemental Letter Agreement, CIBC shall be reimbursed on a monthly basis for its travel and other reasonable out-of-pocket expenses, as set forth in the Supplemental Letter Agreement.

9.    Under the Supplemental Letter Agreement, the Debtors shall indemnify CIBC and certain related persons. I believe that such provisions are consistent with indemnification provisions in comparable engagements in chapter 11 cases and out-of-court workouts in this District and elsewhere.

10.    I believe that the fee structure and indemnification provisions set forth in the Supplemental Letter Agreement are reasonable terms and conditions of employment and should be approved. The fee and indemnification provisions appropriately reflect the nature of the services to be provided by CIBC and the fee and indemnification provisions typically utilized by CIBC and other leading financial advisory and investment banking firms, which do not bill their clients on an hourly basis.

11    CIBC has conducted a conflicts check and due inquiry regarding its relations with the Futures Representative, the Debtors, their significant creditors, their equity security holders, the attorneys and accountants for the foregoing, and the Office of the United States Trustee to determine whether it has any conflicts or other relationships that might bear on its retention by the Futures Representative. Among other things, CIBC has researched its client files and records which contain information retained under its normal record retention policies.

WP3:876192.1                                                                            59945.1001

In connection with this check, CIBC obtained from the Futures Representative's counsel a list of the names of individuals or entities believed to be among the more significant parties in interest in these chapter 11 cases (collectively, the "Potential Parties in Interest"). I caused to be disseminated within CIBC a list of the Potential Parties in Interest, accompanied by a request for information pertaining to any connections between CIBC and such parties. To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after due inquiry, neither I, CIBC, nor any professional employee of CIBC has any connection with the Debtors or any Potential Parties in Interest herein, except as hereinafter set forth.

12.     In the ordinary course of its activities as a full service firm, CIBC (i) in the past has had, and may in the future have, directly and indirectly, ordinary course relationships with persons who hold debt or equity securities issued by the Debtors on their direct and indirect corporate parents or investors, (ii) has in the past provided advice and may in the future advise certain of the Debtors' creditors or other Potential Parties in Interest herein, or interests adverse to such creditors or parties in interest herein, all, however, in matters unrelated to these chapter 11 cases, (iii) has working capital financial and operating relationships with various banking institutions which may be Potential Parties in Interest, and (iv) is a participant in syndicated financing arrangements in which some Potential Parties in Interest have been, are or may in the future be participants. In addition, CIBC, its directors, officers, employees, counsel and I may have appeared in the past and may appear in the future in cases in which one or more of the Debtors' creditors or other Potential Parties in Interest are involved in matters unrelated to the Debtors.

13.     CIBC has been and currently is engaged in numerous major restructuring transactions. It is possible that there are Potential Parties in Interest with whom

CIBC previously had or in the future will have relationships on matters that can not be discovered in our review. To the extent that such relationships are hereafter discovered, CIBC will make supplemental disclosure.

14.    As part of its diverse practice, and in the course of the investment activities of its affiliates, CIBC has worked previously, currently works and likely will work in the future, with a variety of legal and financial institutions, some of which represent Potential Parties in Interest. Based on our current knowledge of the professionals involved, and to the best of our knowledge, none of our business relations constitute an interest adverse to the Futures Representative herein in matters upon which CIBC is to be employed, and none is in connection with these chapter 11 cases. Furthermore, CIBC has been represented and advised in the past, is represented and advised currently and may be represented and advised in the future, by several law firms and accounting firms, some of which may be involved in these proceedings.

15.    To the best of my knowledge, neither CIBC, nor its officers or employees has been retained to assist any entity or person other than the Futures Representative on matters relating to, or in connection with, these chapter 11 cases. If this Court approves the proposed extension of CIBC's employment by the Futures Representative, CIBC will not accept any engagement or perform any service in these cases for any entity or person other than the Futures Representative; CIBC will, however, continue to provide professional services to, and engage in commercial or professional relationships with, entities or persons that may be creditors of the Debtors or otherwise are Potential Parties in Interest in these chapter 11 cases, provided that such services will not relate to, or have any direct connection with, these chapter 11 cases. CIBC is confident that the representation of such entities in unrelated matters will not affect its representation of the Futures Representative in these cases.

16.     Despite the efforts described above to identify and disclose CIBC's connections with Potential Parties in Interest, because the Debtors are a large enterprise with numerous unidentified creditors and other relationships, CIBC is unable to state with absolute certainty that every relevant client representation or other connection has been disclosed. To the extent CIBC determines that it may be engaged in a matter that gives rise to an interest adverse to the Futures Representative or the Debtors, CIBC will promptly file a supplemental disclosure with this Court.

17.     To the best of my knowledge, information and belief, neither CIBC nor its officers or employees have or represent any interest materially adverse to the interests of the Futures Representative, the future claimants represented by the Futures Representative, the Debtors or their estates, and has no material connections to the Debtors or Potential Parties in Interest except as noted above. Accordingly, I believe that CIBC is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code because CIBC and its affiliates:

(i)     Are not creditors, equity security holders or insiders of the Debtors;

(ii)     Are not and were not investment bankers for any outstanding security of the Debtors;

(iii)     Have not been within three years before the date of filing of the Debtors chapter 11 petitions (a) investment bankers for a security of the Debtors or (b) an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the Debtors; and

WP3:876192.1                                                59945.1001

Appendix 398

(iv)    Were not, within two years before the date of filing of the

Debtors chapter 11 petitions, a director, officer, or employee of

the Debtors or of any investment banker as specified in

subparagraph (ii) or (iii) above.

8

59945.1001

**Appendix 399**

18.     CIBC has not shared or agreed to share any of its compensation from the Futures Representative with any other person, other than a managing director, professional or employee of CIBC, as permitted by section 504 of the Bankruptcy Code.  The proposed engagement of CIBC is not prohibited by Bankruptcy Rule 5002.

Joseph J. Radecki, Jr.

Sworn and subscribed to me
this ___ day of April, 2003

IVELUSE LABOY BROOK
Notary Public, State of New York
No. 02-4613759
Qualified in Bronx County
Commission Expires Dec. 31, 20___

Notary Public

8

# EXHIBIT B

April 1, 2003

The Honorable Dean M. Trafelet (Ret.)
9130 Wild Lane
Baileys Harbor, WI 54292
Dear Judge Trafelet:

The purpose of this letter is to confirm the understanding and agreement (the "Supplemental Agreement") among Dean M. Trafelet in his capacity as Legal Representative for Future Claimants ("DMT") in the Chapter 11 proceedings of USG Corporation, together with its subsidiaries and affiliates (collectively, the "Company") pending in the United States Bankruptcy Court for the District of Delaware (the "Court"), CIBC World Markets Corp. ("CIBC"), and the Company related to the scope and terms of advisory services to be provided to DMT as the Future Claimants' Representative ("FCR") in the Company's Chapter 11 cases. This Supplemental Agreement amends the original agreement between CIBC and DMT dated October 29, 2002.

We understand that the work performed by CIBC will be done at the direction of DMT. CIBC's duties hereunder run solely to DMT, and CIBC is not authorized to be, and will not purport to be, an agent of the Company for any purpose. For our services and expenses on DMT's behalf, we agree to be compensated as set forth below. Any payment obligation arising in connection with this retention will be the obligation of the Company, including, but not limited to with respect to any payment obligation under Section 5 hereof, or Exhibit A attached hereto or otherwise under this Supplemental Agreement.

Section 1.    Services to be Rendered.

CIBC will perform the following services, as DMT may request from time to time, including, but not limited to:

a) Review of and consultation on the financing options for the Company;

b) Review of and consultation on the potential divestiture, acquisition and merger transactions for the Company;

c) Review of and consultation on the capital structure issues for the reorganized Company; and

**Appendix 402**

d) Review of and consultation on the Company's operating and business plans, including analysis of the Company's long-term capital needs and changing competitive environment.

It is anticipated that at a later stage CIBC would be called upon to perform additional services (the "Additional Services") including, but not limited to:

a) Valuation of the Company as a going concern, in whole or part;

b) Valuation analyses of the Company's asbestos exposure;

c) Review of and consultation on the Company's debt capacity;

d) Review of and consultation on the financial issues and options concerning potential plans of reorganization, and coordinating negotiations with respect thereto;

e) Provide general advice and consultation regarding the adequacy of the funding of any trust contemplated by Section 524(g) of the Bankruptcy Code;

f) Testimony in court on behalf of DMT, if necessary; and

g) Any other necessary services as DMT or DMT's counsel may reasonably request from time to time with respect to the financial, business and economic issues that may arise.

Section 2.    Term. The term of this Supplemental Agreement shall commence from the date hereof for a period of six (6) months (the "Current Period"); provided however, that DMT reserves the right, subject to Bankruptcy Court Approval, to continue CIBC's retention at the completion of the Current Period pursuant to an engagement letter to be negotiated (the "Additional Period"). During the Current Period, either DMT or CIBC may terminate this Supplemental Agreement with thirty (30) days advance notice in writing. If terminated, CIBC shall be entitled to receive any fees for any monthly period which are due and owing CIBC upon the effective date of the termination; however, such amounts will be prorated for any incomplete monthly period of service, and CIBC will be entitled to the reimbursement for the out-of-pocket expenses described in Section 4, subject to Bankruptcy Court approval. Termination of CIBC's engagement hereunder shall not affect or impair the Company's continuing obligation to indemnify CIBC and certain related persons as provided in Section 5 and Exhibit A and the Company's, continuing obligations under Section 6 hereof. During the term of this Supplemental Agreement, CIBC will make available to DMT the services of Joseph J. Radecki, Jr.. If Joseph J. Radecki, Jr. shall cease to be employed by CIBC, DMT shall have the right to terminate this Supplemental Agreement by giving notice to CIBC and shall not be obligated to pay CIBC the fees outlined in Section 3 below under such circumstances.

Section 3.    Fees. In consideration for the services described in Section 1, during the course of this engagement the Company agrees to pay CIBC in cash pursuant to the procedures for compensation and reimbursement of expenses established by the Bankruptcy Court in accordance with the applicable provisions of the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules for the Bankruptcy Court for the District of Delaware, the final financing order and other applicable orders in these jointly administered cases, including the Administrative Order, Pursuant to Sections 105(a) and 331 of the Bankruptcy Code, Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the "Administrative Compensation Order") and the Order Approving Fee Auditor and Establishing Related Procedures Concerning the Allowance and Payment of Compensation and Reimbursement of Expenses of Professionals and Members of Official Committees and Consideration of Fee Applications (together with the Administrative Compensation Order, collectively referred to as the "Compensation Orders") as follows: a monthly fee (the "Monthly Fee") of $25,000 payable in accordance with the terms of the foregoing Compensation Orders, starting upon the date of this Supplemental Agreement for a minimum of six (6) months. For the Additional Period, the Monthly Fee may be modified to an amount as is mutually acceptable to CIBC and DMT that will reflect the amount of work that remains to be done. Neither DMT or any of his advisors or professionals shall be liable for the fees payable to CIBC hereunder. If DMT shall call upon CIBC to provide the Additional Services, such Additional Services shall be provided by CIBC at a different rate (the "Amended Fee"). The Amended Fee shall be mutually agreed upon by DMT and CIBC and shall be memorialized by a new letter agreement subject to the approval of the Bankruptcy Court.

Section 4.    Expenses. Without in any way reducing or affecting the provisions of Exhibit A hereto, the Company shall reimburse CIBC for its reasonable out-of-pocket expenses incurred in connection with the provision of services hereunder including, without limitation the fees, disbursements and other charges of CIBC's counsel. Outside counsel will be retained by CIBC only with the consent of DMT if counsel to DMT is unable or unwilling to represent CIBC. Out-of-pocket expenses also shall include, but not be limited to, travel and lodging, data processing and communication charges, research and courier services. Neither DMT nor any of his advisors or professionals shall be liable for the expenses to CIBC hereunder.

Section 5.    Indemnity. The Company agrees to the provisions of Exhibit A hereto, as modified by the Order Authorizing the Retention and Employment of CIBC World Markets Corp. as Financial Advisor and Investment Banker to Dean M. Trafelet, Legal Representative for Future Claimants entered on November 1, 2002, which provide for certain indemnification of CIBC and certain related persons. Such indemnification is an integral part of this Supplemental Agreement, and the terms thereof are incorporated by reference herein. Such indemnification shall survive any termination, expiration or completion of this Supplemental Agreement.

**Appendix 404**

<u>Section 6.</u>    <u>Miscellaneous.</u>

a)  In connection with allowances of compensation and reimbursement of
    expenses, CIBC shall file appropriate applications for allowance of interim
    and final compensation and reimbursement of expenses in accordance with
    Sections 330 and 331 of the United States Bankruptcy Code and applicable
    rules at such times as directed by the Bankruptcy Court or established by
    administrative order entered in the bankruptcy cases in accordance with the
    applicable provisions of the United States Bankruptcy Code, the Federal Rules
    of Bankruptcy Procedure, the Local Rules for the Bankruptcy Court for the
    District of Delaware, the final financing order and other applicable orders in
    these jointly administered cases, including the Compensation Orders.  The
    fees detailed in Section 3 above have been agreed upon with the express
    expectation that they are subject to review by the Bankruptcy Court as
    provided by Section 328 of the Bankruptcy Code.  Furthermore DMT
    understands that the hours worked, the results achieved in the reorganization
    or the ultimate benefit to the estate of the work performed may be variable and
    DMT has taken this into account in setting the fees detailed in Section 3
    above.  CIBC will make every effort to coordinate with the other professionals
    in these bankruptcy cases in order to eliminate unnecessary duplication or
    overlap of work.

b)  Obligations incurred by DMT (solely in his capacity as FCR) and/or the
    Company under Sections 2 through 6 shall survive termination or expiration
    of the Supplemental Agreement.

c)  CIBC shall under all circumstances have the right to rely on, without
    independent verification, subject to its obligations to act in good faith, and
    does not assume responsibility for the accuracy or completeness of,
    information furnished to CIBC by the Company, its representatives or DMT in
    connection with CIBC's engagement hereunder.

d)  CIBC shall keep confidential all information provided to it by the Company,
    which has been designated as confidential information by the Company, and
    DMT and his counsel, unless publicly available or otherwise available to
    CIBC without restriction or breach of any confidentiality agreement, and shall
    not disclose such information to any third party, other than in confidence to its
    employees, agents, representatives and advisors, without the Company's
    and/or DMT's prior approval as the case may be.

e)  The advice (oral or written) rendered by CIBC pursuant to this Supplemental
    Agreement is intended solely for the benefit and use of DMT and his
    professionals in considering the matters to which this Supplemental
    Agreement relates, and DMT agrees that such advice may not be relied upon

by any other person, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose without the prior written consent of CIBC. To the extent DMT directs, CIBC shall provide its data, information or determinations to DMT's counsel and other constituencies in the Chapter 11 cases.

f) DMT agrees that any reference to CIBC in any release or communication or materials distributed, is subject to CIBC's prior written approval, unless such release or communication is required by law or regulation. If DMT resigns prior to the dissemination of any such release, communication or material, no reference shall be made therein to CIBC.

g) CIBC shall have the right after completion of this engagement to place advertisements in financial and other newspapers and journals at its own expense describing its services hereunder.

h) This Supplemental Agreement may not be amended or modified except by a writing executed by each of the parties and this Supplemental Agreement, including all controversies arising from or relating to performance under this Supplemental Agreement, shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to such state's rules concerning conflicts of law.

i) Any lawsuits with respect to, in connection with or arising out of this Supplemental Agreement shall be brought in Bankruptcy Court and the parties hereto consent to the jurisdiction and venue of the Bankruptcy Court as the sole and exclusive forum, unless such court is unavailable, for the resolution of claims by the parties arising under or relating to this Supplemental Agreement.

j) To the extent permitted by applicable law, the parties hereto waive trial by jury in connection with or arising out of this Supplemental Agreement, or any other claim or dispute relating to the engagement of CIBC arising between the parties hereto. The parties hereto confirm that the foregoing waivers are informed and freely made.

k) The relationship of CIBC to DMT hereunder shall be that of an independent contractor and CIBC shall have no authority to bind, represent or otherwise act as agent for DMT.

l) In providing such services hereunder, the CIBC team shall be headed by Joseph J. Radecki, Jr. who shall personally be involved in the delivery of services provided hereunder, except in the event of death, incapacity, leave of absence or cessation of employment by CIBC.

If the foregoing correctly sets forth the understanding and agreement among DMT, the Company and CIBC, please so indicate by signing the enclosed copy of this letter, whereupon it shall become a binding agreement between the parties hereto as of the date first above written.

Sincerely,

**CIBC WORLD MARKETS CORP.**


By: _____
Joseph J. Radecki, Jr.
Managing Director




Accepted and Agreed to as of
the day first written above:

**LEGAL REPRESENTATIVE FOR THE FUTURE CLAIMANTS OF USG CORP.**


By: _____
The Honorable Dean M. Trafelet (Ret.)

**USG CORP.**


By: _____

54495.1001

## Exhibit A

This Exhibit A is part of and incorporated into the Supplemental Agreement, dated March 27, 2003.

a)    If CIBC World Markets Corp. ("CIBC") and its affiliates or any employee, agent, officer, director, attorney, shareholder or any person who controls CIBC (any or all of the foregoing, hereinafter an "Indemnified Person") becomes involved in any capacity in any legal or administrative action, suit, proceeding, investigation or inquiry, regardless of the legal theory or the allegations made in connection therewith, directly or indirectly in connection with, arising out of, based upon, or in any way related to (i) the Supplemental Agreement; (ii) the services that are subject of the Supplemental Agreement; (iii) any document or information, whether verbal or written, referred to herein or supplied to CIBC; (iv) the breach of the representations, warranties or covenants by the Company given pursuant hereto; (v) CIBC's involvement in the Chapter 11 case of the Company (the "Case") or any part thereof; (vi) any filings made by or on behalf of any party with any governmental agency in connection with the Case; (vii) the Case; or (viii) proceedings by or on behalf of any creditors or equity holders of the Company, the Company will on demand, advance or pay promptly, on behalf of each Indemnified Person, reasonable attorney's fees and other expenses and disbursements (including, but not limited to, the cost of any investigation and related preparation) as they are incurred by the Indemnified Person.    The Company also indemnifies and holds harmless each Indemnified Person against any and all losses, claims, damages, liabilities, costs and expenses (including, but not limited to, attorney's fees, disbursements and court costs, and cost of investigation and preparation ("Losses")) to which such Indemnified Person may become subject in connection with any such matter.

b)    If for any reason the foregoing indemnification is determined to be unavailable to any Indemnified Person or insufficient fully to indemnify any such person, then the Company will contribute to the amount paid or payable by such person as a result of any such Losses in such proportion as is appropriate to reflect (i) the relationship between CIBC's fees on the one hand and the aggregate value of the Company on the other hand or (ii) if the allocation provided by clause (i) is not permitted by applicable law, not only such relative benefit but also the relative fault of the other participants in the Case, on the one hand, and CIBC and the Indemnified Persons on the other hand, and any other relevant equitable considerations in connection with the matters as to which such Losses relate.

c)    If any action or proceeding shall be brought or asserted against CIBC or any other Indemnified Person in respect of which indemnity or contribution may be sought from the Company hereunder, CIBC shall promptly notify the Company in writing, provided that failure to notify the Company shall not relieve it from any

liability hereunder except to the extent of any material prejudice resulting therefrom. The Company may, upon notice to CIBC, assume the defense thereof by retaining counsel reasonably satisfactory to CIBC. Any Indemnified Person shall have the right to employ separate counsel in any such action and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of the Indemnified Person (but not other reasonable defense or investigation expenses incurred by or on behalf of CIBC or any other Indemnified Person) unless (i) the Company has agreed to pay the reasonable fees and expenses for such counsel; (ii) the Company shall have failed to promptly assume the defense of such action or proceeding; or (iii) the named parties to such action or proceeding (including any impleaded parties) include both the Indemnified Person and the Company and the Indemnified Person reasonably believes that the joint representation of the Indemnified Person may result in a conflict of interest (in which case if the Indemnified Person shall notify the Company in writing of the facts underlying the perceived conflict and that it elects to employ separate counsel at the expense of the Company, the Company shall not have the right to assume the defense of such action or proceeding on behalf of the Indemnified Person, provided the fees and expenses of such separate counsel are reasonable).

d)      The indemnification obligations hereunder shall not apply to any Losses that are judicially determined to have resulted from the gross negligence, fraud, lack of good faith, bad faith, willful misfeasance, or reckless disregard of the obligations or duties of CIBC. In the event of such judicial determination, the Company shall be entitled to recover from CIBC the costs and expenses paid on behalf of any Indemnified Person pursuant to this indemnification obligation. In addition, the Company shall have no obligation to indemnify CIBC, or provide contribution or reimbursement to CIBC, for any claim or expense that is settled prior to a judicial determination as to CIBC's gross negligence or willful misconduct, but determined by the Court, after notice and a hearing, to be a claim or expense for which CIBC should not receive indemnity, contribution or reimbursement under the terms of this Supplemental Agreement.

e)      The Company agrees that it will not settle, compromise or discharge any suit, claim, litigation, threatened litigation or threatened claim arising out of, based upon, or in any way related to the Case and to which CIBC or any Indemnified Person is or may reasonably be expected to be a party, unless and until the Company has obtained a written agreement, approved by CIBC (which shall not be unreasonably withheld) and executed by each party to such proposed settlement, compromise or discharge, releasing CIBC and each Indemnified Person from any and all liability. CIBC agrees that it will not settle, compromise or discharge any such suit. claim. litigation, threatened litigation or threatened claim without the prior written consent of the Company, which will not be unreasonably withheld.

f)      The Company further agrees that neither CIBC nor any other Indemnified Person shall have any liability, regardless of the legal theory advanced, to the Company or any other person or entity (including the Company's equity holders and creditors) related to or arising out of CIBC's engagement, except for any liability for losses, claims, damages, liabilities, costs and expenses incurred by the Company which are judicially determined to have resulted from the gross negligence, fraud, lack of good faith, bad faith, willful misfeasance, or reckless disregard of the obligations or duties of CIBC.

g)      The Company's obligations under this Exhibit shall be in addition to any liability that the Company or any other person may otherwise have to CIBC or any Indemnified Person. The foregoing provisions shall be enforceable by each Indemnified Person and such person's heirs, representatives and successors, and shall survive any termination of the Supplemental Agreement or the completion of services hereunder.

h)      If, before the earlier of (i) the entry of an order confirming a Chapter 11 plan in these cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these Chapter 11 cases, CIBC believes it is entitled to the payment of any amounts by the Company on account of the Company's indemnification, contribution and/or reimbursement obligations under this Supplemental Agreement, including without limitation the advancement of defense costs, CIBC must file an application therefor in the Court, and the Company may not pay any such amounts to CIBC before the entry of an order by the Court approving the payment. This subparagraph (h) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by CIBC for indemnification, contribution or reimbursement and not a provision limiting the duration of the Company's obligation to indemnify CIBC.

i)      The Company shall indemnify CIBC in accordance with the preceding clauses, for any claim arising from, related to, or in connection with the services provided for in this Supplemental Agreement, but not for any claim arising from, related to, or in connection with CIBC's postpetition performance of any other services unless such postpetition services and indemnification therefor are approved by the Court.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------- x
In re:                                             :  Chapter 11
                                                   :
USG CORPORATION, et al.,                           :  Case No. 01-2094 (RJN)
                                Debtors.           :  (Jointly Administered)
                                                   :
                                                   :  Docket Ref. No. _____
-------------------------------------------------- x  M.C. No.: YCST - 56
```

**ORDER PURSUANT TO 11 U.S.C. §§ 327, 524(g) AND 1103 AND
FED. R. BANKR. P. 2014 MODIFYING AND EXTENDING THE
RETENTION AND EMPLOYMENT OF CIBC WORLD MARKETS
CORP. AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO
DEAN M. TRAFELET, LEGAL REPRESENTATIVE FOR FUTURE CLAIMANTS**

Upon the supplemental application (the "Supplemental Application") of Dean M. Trafelet, Esq., legal representative for future claimants (the "Futures Representative") in connection with the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), seeking entry of an order pursuant to sections 327, 524(g) and 1103 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the retention and employment of CIBC World Markets Corp. ("CIBC") as financial advisor and investment banker to the Futures Representative and for the approval of the proposed terms of such employment set forth in the letter agreement attached as Exhibit B to the Supplemental Application (the "Supplemental Letter Agreement"); and upon the Affidavit of Joseph J. Radecki, Jr. (the "Radecki Affidavit") in support of the Supplemental Application; and the Court being satisfied that except as otherwise set forth in the Radecki Affidavit, (i) CIBC does not have or represent any interest materially adverse to the interests of the Futures Representative, the Debtors or their estates, creditors or equity holders; (ii) CIBC is a "disinterested person" as that

term is defined in section 101(14) of the Bankruptcy Code; and (iii) the retention and

employment of CIBC are necessary and in the best interests of the Debtors and their estates,

creditors, and equity holders; and due notice of the Supplemental Application having been given

and appearing that no other or further notice need be given; and after due deliberation and

sufficient cause appearing therefor; it is hereby

      **ORDERED**, that the Supplemental Application is granted and approved in all

respects, and it is further;

      **ORDERED,** that in accordance with sections 327, 524(g) and 1103 of

the Bankruptcy Code, and Rule 2014 of the Bankruptcy Rules, the Futures Representative is

authorized to extend and modify the terms of the retention and employment of CIBC as his

financial advisor and investment banker, as of April 29, 2003, for the purpose of providing

financial advisory, investment banking and other related services in connection with the Debtors'

chapter 11 cases in accordance with the terms of the Supplemental Letter Agreement; and it is

further

      **ORDERED,** that the fees to be paid to CIBC pursuant to the terms of the

Supplemental Letter Agreement are approved and shall be subject to the standard review

provided in section 328(a) of the Bankruptcy Code and, except as provided in the Supplemental

Letter Agreement, are not subject to any other standard of review under section 330 of the

Bankruptcy Code; and it is further

      **ORDERED,** that the indemnification provisions of the Supplemental Letter

Agreement are approved, subject to the following:

      (a)     Subject to the provisions of subparagraph (c), *infra*, the Debtors
are authorized to indemnify, and shall indemnify CIBC in
accordance with the Supplemental Letter Agreement, for any claim
arising from, related to, or in connection with the services provided

for in the Supplemental Letter Agreement, but not for any claim arising from, related to, or in connection with CIBC's postpetition performance of any other services unless such postpetition services and indemnification therefor are approved by this Court;

(b)    Notwithstanding any provisions of the Supplemental Letter Agreement to the contrary, the Debtors shall have no obligation to indemnify CIBC, or provide contribution or reimbursement to CIBC, for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen solely from CIBC's gross negligence, bad faith or willful misconduct, or (ii) settled prior to a judicial determination as to CIBC's gross negligence or willful misconduct, but determined by this Court, after notice and a hearing, to be a claim or expense for which CIBC should not receive indemnity, contribution or reimbursement under the terms of the Supplemental Letter Agreement and this Order; and

(c)    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these chapter 11 cases, CIBC believes it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Supplemental Letter Agreement (as modified by this Order), including without limitation the advancement of defense costs, CIBC must file an application therefor in this Court, and the Debtors may not pay any such amounts to CIBC before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by CIBC for indemnification, contribution or reimbursement and not a provision limiting the duration of the Debtors' obligation to indemnify CIBC; and it is further

**ORDERED,** that the compensation and reimbursement payments due under

the Supplemental Letter Agreement shall be entitled to priority as expenses of administration

under sections 503(b)(1)(A) and 507(a)(1) of the Bankruptcy Code and shall be entitled to the

benefits of any "carve outs" for professionals' fees and expenses in effect in these Chapter 11

cases pursuant to one or more financing orders now or hereinafter in effect; and it is further

**ORDERED,** that neither the Futures Representative nor any of his advisors or counsel shall be liable for the fees payable to CIBC under the Supplemental Letter Agreement; and it is further

**ORDERED,** that CIBC shall be compensated in such amounts as may be allowed by this Court upon the filing of appropriate applications for allowance of interim or final compensation in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules and the *Administrative Order, Pursuant to 11 U.S.C. §§ 105(a) and 331 and Del. Bankr. LR 2016-2, Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, and the *Order Appointing a Fee Auditor and Establishing Related Procedures Concerning the Allowance and Payment of Compensation and Reimbursement of Expenses of Professionals, Members of Official Committees and Consideration of Fee Applications,* entered by this Court; and it is further

**ORDERED,** that this Court shall retain exclusive jurisdiction to construe and enforce the terms of the Supplemental Application, the Supplemental Letter Agreement, and this Order.

Dated: Wilmington, Delaware
_____, 2003


_____
RANDALL J. NEWSOME
UNITED STATES BANKRUPTCY JUDGE

**A p p e n d i x  4 1 4**