# TAB 21

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------- x

IN RE:     :    Chapter 11

     :

ARMSTRONG WORLD INDUSTRIES, INC., *et al.*,   :    Case No. 00-4471 (RJN)

     :

Debtors.     :    (Jointly Administered)

     :

-------------------------------------------------------------- x   MC No. YCST - 3

**Hearing Date: May 3, 2001 at 2:00 p.m. (EST)**
**Objection Deadline: April 4, 2002 at 4:00 p.m.(EST)**

**APPLICATION FOR ORDER PURSUANT TO SECTIONS 105(a), 327 AND 524(g)**
**OF THE BANKRUPTCY CODE AND FED. R. BANKR. P. 2014**
**AUTHORIZING RETENTION AND EMPLOYMENT OF PETER J.**
**SOLOMON COMPANY, AS INVESTMENT BANKER AND FINANCIAL**
**ADVISOR FOR DEAN M. TRAFELET, LEGAL REPRESENTATIVE FOR**
**FUTURE CLAIMANTS *NUNC PRO TUNC* TO FEBRUARY 20, 2002**

Dean M. Trafelet, Esq., the legal representative (the "Futures Representative") for

future claimants, appointed in the above-captioned bankruptcy proceedings, submits this

application (the "Application"), for entry of an order pursuant to 105(a), 327 and 524(g) of title

11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended (the "Bankruptcy Code"),

and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

authorizing the Futures Representative to retain and employ Peter J. Solomon Company

("PJSC"), as investment banker and financial advisor for the Futures Representative, *nunc pro*

*tunc* to February 20, 2002. In support of this Application, the Futures Representative relies on

the Affidavit of Bradley I. Dietz (the "Dietz Affidavit"), a copy of which is annexed hereto as

Exhibit A, and respectfully represents as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the Debtors' chapter 11 cases and this Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105(a), 327 and 524(g) of the Bankruptcy Code, as complemented by Rule 2014 of the Bankruptcy Rules.

## BACKGROUND

### A.  The Chapter 11 Filings

2.     On December 6, 2000 (the "Petition Date"), Armstrong World Industries, Inc. ("AWI") and two of its affiliates (collectively, the "Debtors" or the "Company") filed voluntary petitions in this Court for reorganization under chapter 11 of the Bankruptcy Code. Since filing their petitions for relief, the Debtors have continued to manage and operate their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' chapter 11 cases.

3.     On December 18, 2000, pursuant to section 1102(a)(1) of the Bankruptcy Code, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Creditors' Committee") and an asbestos claimants' committee (the "Asbestos PI Committee"). On or about July 19, 2001, the U.S. Trustee appointed the Official Committee of Asbestos-Related Property Damage Claimants (the "Asbestos PD Committee" and, together with the Creditors' Committee and the Asbestos PI Committee, the "Committees"). On March 1, 2002, Dean M. Trafelet was appointed as the legal representative for the purpose of protecting the rights of individuals who may have been exposed to asbestos or asbestos-containing products but who, prior to confirmation of a plan or plans of reorganization for

the Debtors, have not manifested symptoms of asbestos-related diseases resulting from such exposure, whether such individuals are determined to have "claims" under section 101(5) of the Bankruptcy Code or "demands" within the meaning of section 524(g)(5) of the Bankruptcy Code (the "Future Claimants").

## B.  Asbestos Liability of the Debtors

4.      Asbestos containing insulation products were manufactured, installed, or sold by AWI during various points of AWI's history from about 1910 to 1957 (and to a limited extent from 1958 to 1969), and are believed to have been used, installed, or sold by AWI's former subsidiaries Armstrong Contracting and Supply Corporation (later known as "ACandS") from 1958 to 1969 and National Cork Company ("NCC") from 1964 to 1969.  As of the Petition Date, asbestos-related lawsuits involving more than 173,000 prepetition claimants were pending against AWI, the majority of which allege bodily injuries resulting from exposure to asbestos or asbestos-containing products manufactured, installed or sold by AWI or ACandS and NCC.

5.      AWI will be subject to additional asbestos-related personal injury claims from the Future Claimants.  As the Court is aware, the exorbitant cost of settling and defending asbestos personal injury claims was the major reason for the Debtors' decision to seek the protection of the bankruptcy laws.  The valuation of future asbestos-related claims against AWI and the availability of the protection of the section 524(g) injunction will be crucial elements in a successful reorganization of the Debtors.  Accordingly, due to the complexity of these cases and the enormous number of potential asbestos claims and demands, the Futures Representative has determined that the employment and retention of PJSC is crucial to his effective representation of the Future Claimants.

**RELIEF REQUESTED**

6.    By this Application, the Futures Representative respectfully requests that the Court issue and enter an order pursuant to sections 105(a), 327 and 524(g) of the Bankruptcy Code and Rules 2014 of the Bankruptcy Rules:

(a)    authorizing the retention and employment of PJSC as his financial advisor and investment banker for the purpose of providing financial advisory, investment banking and other related services in connection with the Debtors' chapter 11 cases in accordance with the terms of the retention letter agreement attached hereto as Exhibit B (the "Letter Agreement").

(b)    approving the proposed fee structure, including the indemnification provisions, set forth in the Letter Agreement;

(c)    approving the entitlement of the compensation and reimbursement payments due under the Letter Agreement to priority as expenses of administration under Sections 503(b)(1)(A) and 507(a)(1) of the Bankruptcy Code and determining that such payments thereunder shall be entitled to the benefits of any "carve outs" for professionals' fees and expenses in effect in these Chapter 11 cases pursuant to one or more financing orders now or hereinafter in effect;  and

(d)    granting such other and further relief as this Court deems just and proper.

7.    The Futures Representative requests that PJSC's retention be *nunc pro tunc* to February 20, 2002, which is the date when PJSC commenced post-petition services to the Futures Representative.

**PJSC'S QUALIFICATIONS**

8.    The Futures Representative selected PJSC because it is a leading independent investment banking firm that provides financial and strategic advisory services to a select group

of institutional clients. Specifically, since the firm was established in 1989, PJSC's restructuring group has represented a diverse group of debtors, bondholders, creditors' committees, single classes of creditors and secured creditors. Indeed, PJSC has served as investment banker and financial advisor in many of the largest bankruptcy cases in the United States. PJSC has extensive and diverse experience, restructuring expertise and an excellent reputation in the restructuring field, as well as an understanding of the complex issues involved in these cases. Additionally, PJSC is currently serving as the financial advisor and investment banker to James J. McMonagle, the legal representative for future claimants in *In re Owens Corning, Inc., et al.*, Chapter 11 Case No. 00-3837 (JKF) (Bankr. D. Del. October 5, 2000). As a result, the Futures Representative believes that PJSC possesses the necessary resources and is well qualified to provide the investment banking and financial advisory services that will be required in these cases.

9.      Accordingly, the Futures Representative believes that PJSC's retention is in the best interests of the Future Claimants, the Debtors and their estates.

## SERVICES TO BE RENDERED BY PJSC

10.    As set forth in the Letter Agreement, PJSC will provide the following

professional services to the Futures Representative:

i.    valuation of the Company as a going-concern, in whole or in part;

ii.    valuation analyses of the Company's asbestos exposure;

iii.    review of and consultation on the financing options for the Company,
including proposed DIP financing;

iv.    review of and consultation on the potential divestiture, acquisition and merger
transactions for the Company;

v.    review of and consultation on the capital structure issues for the reorganized
Company, including debt capacity;

vi.    review of and consultation on the financial issues and options concerning
potential plans of reorganization, and coordinating negotiations with respect
thereto;

vii.    review of and consultation on the Company's operating and business plans,
including and analysis of the Company's long term capital needs and
changing competitive environment;

viii.    provide general advice and consultation regarding the adequacy of the funding
of any trust contemplated by section 524(g) of the Bankruptcy Code;

ix.    testimony in court on behalf of the Futures Representative, if necessary; and

x.    any other necessary services as the Futures Representative or the Futures
Representative's counsel may request from time to time with respect to the
financial, business and economic issues that may arise.

11.    Contemporaneously herewith and by separate application, the Futures

Representative is also seeking to retain Analysis, Research & Planning Corporation as his claim

evaluation consultant. The Futures Representative and all of his professionals will coordinate to

the extent reasonably possible so as to avoid any duplication of effort.

Appendix 469

## SALIENT TERMS OF THE LETTER AGREEMENT

12.     The principal terms of the Letter Agreement[1] are as follows:

Term:   The Letter Agreement has an initial term of six (6) months commencing on the date of the Letter Agreement (the "First Period"), provided however, that the Futures Representative has the right to continue PJSC's retention on a month-to-month basis at the completion of the First Period without additional Bankruptcy Court Approval (the "Second Period"). During the Second Period, either the Futures Representative or PJSC may terminate the Letter Agreement with thirty (30) days advance written notice.

Fees:   As compensation for its services, PJSC proposes to charge the Futures Representative, a monthly fee (the "Monthly Fee") of one hundred and seventy-five thousand ($175,000) commencing February 20, 2002 for a period of two years, a Monthly Fee of one hundred and fifty thousand ($150,000) for the third year, a Monthly Fee of one hundred and twenty-five thousand ($125,000) for the fourth year, and a Monthly Fee of one hundred thousand ($100,000) for the duration of the case.[2]

Expenses:   The Company shall reimburse PJSC for its reasonable out-of-pocket expenses incurred including, but not limited to, travel and lodging, data processing and communication charges, research, courier services and reasonable attorneys' fees, expenses or other disbursements (including, but not limited to, any investigation or related preparation) incurred by PJSC in connection with any legal or administrative action commenced against any Indemnified Person as hereinafter defined.

Indemnity:   As set forth in Exhibit A to the Letter Agreement, PJSC and its affiliates or any employee, agent, officer, director, attorney, shareholder or any person who controls PJSC (any and all of the foregoing defined as "Indemnified Person") are entitled to be indemnified from and against certain losses and liabilities arising out of or related to the performance of its services on behalf of the Futures Representative. The indemnity will not apply to any liability that has been "judicially determined to have resulted from the gross negligence, fraud, lack of good faith, bad faith, willful misfeasance, or reckless disregard of the obligations or duties of PJSC." *See* Exhibit A of Letter Agreement.[3]

---

[1]     This is only a summary of certain of the relevant provisions, and the Court and all parties are respectfully referred to Exhibit B for a complete statement of the terms of the Letter Agreement.

[2]     The fees described herein shall be subject to the extension of the term of the Letter Agreement after the First Period and the limitations more fully set forth in Section 2 of the Letter Agreement.

[3]     A virtually identical indemnity provision was approved by this Court in these very same chapter 11 cases in connection with the Creditors' Committee's retention of Houlihan Lokey Howard & Zukin, Inc. as its

(continued...)

Appendix 470

13.   The Engagement Letter further provides that neither the Futures Representative nor any of his advisors or counsel shall be liable for the fees payable to PJSC under the Letter Agreement.

## DISCLOSURE CONCERNING CONFLICTS
## AND PREPETITION PAYMENTS

14.   PJSC has informed the Futures Representative that, except as described in the Dietz Affidavit, PJSC (i) does not have or represent any interest materially adverse to the interests of the Debtors or their estates, creditors or equity interest holders, and (ii) is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code. Moreover, the retention and employment of PJSC is necessary and in the best interests of the Futures Representative, the Debtors and their estates and creditors.

15.   As more fully set forth in the Dietz Affidavit, PJSC has not shared or agreed to share any of its compensation with any other person, other than a managing director, professional or employee of PJSC, as permitted by section 504 of the Bankruptcy Code.

16.   Subject to the foregoing, PJSC will seek awards of compensation and expenses pursuant to applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the *Administrative Compensation Order, Pursuant to Sections 105(a) and 331 of the Bankruptcy Code, Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, entered by this Court on January 5, 2001.

## NOTICE

17.   Proper notice of this Application has been given and the Futures Representative submits that no further notice need be given.

---

3      (...continued)
       financial advisor.

Doc #30421589.wpd

8

## PRIOR REQUEST FOR RELIEF

18.    No previous application for the relief sought in this Application has been

made to this or any other court.

WHEREFORE, the Futures Representative respectfully requests that the Court issue

and enter an order substantially in the form annexed hereto approving the employment and

retention of PJSC and grant the Futures Representative such other and further relief as this Court

may deem just and proper.

Dated:    Wilmington, Delaware
          March 12, 2002

James L. Patton, Jr. (No. 2202)
Edwin J. Harron (No. 3396)
YOUNG CONAWAY STARGATT & TAYLOR
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware  19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-AND-

Michael J. Crames, Esq.
Andrew A. Kress, Esq.
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Phone:  (212) 836-8000
Facsimile:  (212) 836-8689

Counsel for Dean M. Trafelet,
Legal Representative for Future Claimants

# EXHIBIT A

**Affidavit**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------- x
```
In re:                                            :    Chapter 11
                                                  :
ARMSTRONG   WORLD   INDUSTRIES,   :    Case No. 00-4471 (RJN)
INC., *et al.*,                                   :
                              Debtors.            :    (Jointly Administered)
```
------------------------------------------------- x
```

**AFFIDAVIT OF BRADLEY I. DIETZ IN SUPPORT OF APPLICATION
FOR ORDER PURSUANT TO SECTIONS 105(a), 327, 524(g) AND 1103
OF THE BANKRUPTCY CODE AND FED. R. BANKR. P. 2014 AUTHORIZING
RETENTION AND EMPLOYMENT OF PETER J. SOLOMON COMPANY
AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO
DEAN M. TRAFELET, LEGAL REPRESENTATIVE FOR
FUTURE CLAIMANTS *NUNC PRO TUNC* TO FEBRUARY 20, 2002**

STATE OF NEW YORK    )
                                        :  ss.:
COUNTY OF NEW YORK   )

Bradley I. Dietz, being duly sworn, deposes and says:

1.      I am a Managing Director of Peter J. Solomon Company ("PJSC"), which

maintains an office at 767 Fifth Avenue, New York, New York 10153. I am authorized to

execute this affidavit (the "Affidavit") on behalf of PJSC. This Affidavit is submitted pursuant

to sections 105(a), 327, 524(g) and 1103 of title 11 of the United States Code, 11 U.S.C. §§ 101

*et seq.*, as amended (the "Bankruptcy Code"), and Rule 2014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), in support of the application (the "Application") of Dean

M. Trafelet, Legal Representative for Future Claimants (the "Futures Representative"), for an

order authorizing the retention and employment of PJSC as financial advisor and investment

banker to the Futures Representative. Unless otherwise stated, I have personal knowledge of the

facts set forth herein.

2.      PJSC is a worldwide leader in working with financially troubled companies in complex financial reorganizations, in both chapter 11 cases and out-of-court restructurings. PJSC has served as financial advisor and/or investment banker to an diverse group of debtors, bondholders, official committees, single classes of creditors and secured creditors and in many large chapter 11 cases. PJSC currently serves as the financial advisor and investment banker to James J. McMonagle, the legal representative for future claimants in *In re Owens Corning, Inc., et al.*, Chapter 11 Case No. 00-3837 (JKF) (Bankr. D. Del. October 5, 2000). Based upon this experience, I believe that PJSC is well-qualified to perform the financial advisory and investment banking services required by the Futures Representative.

## TERMS OF PJSC'S RETENTION

3.      Pursuant to the letter agreement between the Futures Representative and PJSC, a copy of which is attached as Exhibit B to the Application (the "Letter Agreement"), PJSC will provide the following services:

    i.       valuation of the Company as a going-concern, in whole or in part;

    ii.      valuation analyses of the Company's asbestos exposure;

    iii.     review of and consultation on the financing options for the Company, including proposed DIP financing;

    iv.     review of and consultation on the potential divestiture, acquisition and merger transactions for the Company;

    v.      review of and consultation on the capital structure issues for the reorganized Company, including debt capacity;

    vi.     review of and consultation on the financial issues and options concerning potential plans of reorganization, and coordinating negotiations with respect thereto;

    vii.    review of and consultation on the Company's operating and business plans, including and analysis of the Company's long term capital needs and changing competitive environment;

viii.    provide general advice and consultation regarding the adequacy of the funding of any trust contemplated by section 524(g) of the Bankruptcy Code;

ix.    testimony in court on behalf of the Futures Representative, if necessary; and

x.    any other necessary services as the Futures Representative or the Futures Representative's counsel may request from time to time with respect to the financial, business and economic issues that may arise.

4.    The Letter Agreement has an initial term of six months commencing on the date of the Letter Agreement (the "First Period") and the Futures Representative has the right but not the obligation to continue PJSC's retention on a month-to-month basis at the completion of the First Period without additional Bankruptcy Court Approval (the "Second Period"). During the Second Period, either the Futures Representative or PJSC may terminate the Letter Agreement with thirty days advance written notice.

5.    Under the Letter Agreement, as compensation for its services PJSC will be entitled to receive, subject to Court approval, a monthly fee (the "Monthly Fee") of $175,000 for the two-year period commencing on February 20, 2002, a Monthly Fee of $150,000 for the third year, a Monthly Fee of $125,000 for the fourth year, and a Monthly Fee of $100,000 for the duration of the case, subject to the Futures Representative's renewal of the engagement as set forth in paragraph 4 hereof.[4]

6.    The fees described above are consistent with PJSC's normal billing practices for cases of this size and complexity that require the level and scope of services outlined in the

---

[4]    The fees described herein are consistent with the fee structure approved by this Court in these very same chapter 11 cases in connection with the Creditors' Committee's retention of Houlihan Lokey Howard & Zukin, Inc. as its financial advisor.

Letter Agreement. I also believe that such fees are consistent with fees charged in comparable engagements in chapter 11 cases and out-of-court workouts.

7.     In addition to any fees payable to PJSC pursuant to the Letter Agreement, PJSC shall be reimbursed on a monthly basis for its travel and other reasonable out-of-pocket expenses, as set forth in the Letter Agreement.

8.     Under the Letter Agreement, the Debtors shall indemnity PJSC and certain related persons. I believe that such provisions are consistent with indemnification provisions in comparable engagements in chapter 11 cases and out-of-court workouts in this District and elsewhere.

9.     I believe that the fee structure and indemnification provisions set forth in the Letter Agreement are reasonable terms and conditions of employment and should be approved. The fee and indemnification provisions appropriately reflect the nature of the services to be provided by PJSC and the fee and indemnification provisions typically utilized by PJSC and other leading financial advisory and investment banking firms, which do not bill their clients on an hourly basis.

## DISCLOSURE CONCERNING CONFLICTS

10.     PJSC has conducted a conflicts check and due inquiry regarding its relations with the Futures Representative, the Debtors, their significant creditors, their equity security holders, the attorneys and accountants for the foregoing, and the Office of the United States Trustee to determine whether it has any conflicts or other relationships that might bear on its retention by the Futures Representative. Among other things, PJSC has researched its client files and records which contain information retained under its normal record retention policies. In connection with this check, PJSC obtained from the Futures Representative's counsel a list of the

names of individuals or entities believed to be among the more significant parties in interest in these chapter 11 cases (collectively, the "Potential Parties in Interest"). I caused to be disseminated within PJSC a list of the Potential Parties in Interest, accompanied by a request for information pertaining to any connections between PJSC and such parties. To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after due inquiry, neither I, PJSC, nor any professional employee of PJSC has any connection with the Debtors or any Potential Parties in Interest herein, except as hereinafter set forth:

(a)     PJSC was retained in late 2001 to provide expert witness and other advisory services to Weil, Gotshal & Manges LLP on behalf of General Electric Capital Corporation in the Montgomery Ward bankruptcy proceeding pending in Delaware. The assignment is inactive and, although the letter agreement has not been formally terminated, PJSC is not receiving remuneration and does not any expect further activity in respect of this matter.

(b)     Kirkland & Ellis serves as the debtor's counsel in the Quality Stores, Inc. chapter 11 case in the Western District of Michigan. PJSC serves as the debtor's investment banker in such matter and recently completed the sale of the majority of the company's assets.

(c)     PJSC has been retained by Shearman & Sterling on behalf of two agent banks, including Citibank, N.A., in the Warnaco Group chapter 11 case. PJSC's role is to provide advisory services to these two banks, as well as a steering committee of banks with respect to asset values and strategic alternatives to maximize the value of the Warnaco estate. The steering committee includes the following other Potential Parties in Interest: the Bank of America National Trust & Savings Association and JP MorganChase.

(d)     PJSC serves on Fleet National Bank's New York administrative committee, which is not a formal board of directors and is not subject to Regulation "O". The Committee meets quarterly and its purpose is a marketing and advisory tool for the New York market.

(e)    PJSC serves as a special advisor to Fleet Retail Finance in connection with a litigation matter involving a major retail chain.

Each of the foregoing representations is wholly unrelated to these chapter 11 cases.

11.    In the ordinary course of its activities as a full service firm, PJSC (i) in the past has had, and may in the future have, directly and indirectly, ordinary course relationships with persons who hold debt or equity securities issued by the Debtors on their direct and indirect corporate parents or investors, (ii) as discussed further below in paragraph 13, has in the past provided advice, may currently be providing advice, and may in the future advise certain of the Debtors' creditors or other Potential Parties in Interest herein, or interests adverse to such creditors or parties in interest herein, all, however, in matters unrelated to these chapter 11 cases, and (iii) has working capital financial and operating relationships with various banking institutions which may be Potential Parties in Interest.  In addition, PJSC, its directors, officers, employees, counsel and I may have appeared in the past and may appear in the future in cases in which one or more of the Debtors' creditors or other Potential Parties in Interest are involved in matters unrelated to the Debtors.

12.    PJSC has been and currently is engaged in numerous major restructuring transactions.  PJSC's general inquiry and review of its records revealed that PJSC has previously advised, currently advises and will likely advise in the future, a substantial number of Potential Parties in Interest or parties adverse thereto.  In particular, PJSC has had relationships with the parties listed in paragraph 10 above, on matters unrelated to these chapter 11 cases.  It is possible that there are other Potential Parties in Interest with whom PJSC previously had, currently has or in the future will have relationships on matters that have not been discovered in our initial review.  To the extent that such relationships are hereafter discovered, PJSC will make supplemental disclosure.

Doc #30421589.wpd

13.    As part of its diverse practice, and in the course of the investment activities of its affiliates, PJSC has worked previously, currently works and likely will work in the future, with a variety of legal and financial institutions, some of which represent Potential Parties in Interest. Based on our current knowledge of the professionals involved, and to the best of our knowledge, none of our business relations constitute an interest adverse to the Futures Representative herein in matters upon which PJSC is to be employed, and none is in connection with these chapter 11 cases. Furthermore, PJSC has been represented and advised in the past, is represented and advised currently and may be represented and advised in the future, by several law firms and accounting firms, some of which may be involved in these proceedings.

14.    To the best of my knowledge, neither PJSC, nor its officers or employees has been retained to assist any entity or person other than the Futures Representative on matters relating to, or in connection with, these chapter 11 cases. If this Court approves the proposed employment of PJSC by the Futures Representative, PJSC will not accept any engagement or perform any service in these cases for any entity or person other than the Futures Representative; PJSC will, however, continue to provide professional services to, and engage in commercial or professional relationships with, entities or persons that may be creditors of the Debtors or otherwise are Potential Parties in Interest in these chapter 11 cases, provided that such services will not relate to, or have any direct connection with, these chapter 11 cases. PJSC is confident that the representation of such entities in unrelated matters will not affect its representation of the Futures Representative in these cases.

15.    Despite the efforts described above to identify and disclose PJSC's connections with Potential Parties in Interest, because the Debtors are a large enterprise with numerous unidentified creditors and other relationships, PJSC is unable to state with absolute

certainty that every relevant client representation or other connection has been disclosed. To the extent PJSC determines that it may be engaged in a matter that gives rise to an interest adverse to the Futures Representative or the Debtors, PJSC will promptly file a supplemental disclosure with this Court.

16.    To the best of my knowledge, information and belief, neither PJSC nor its officers or employees have or represent any interest materially adverse to the interests of the Futures Representative, the future claimants represented by the Futures Representative, the Debtors or their estates, and has no material connections to the Debtors or Potential Parties in Interest except as noted above. Accordingly, I believe that PJSC is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, in that PJSC, its officers and employees:

(a)    Are not creditors, equity security holders or insiders of the Debtors;

(b)    Are not and were not investment bankers for any outstanding security of the Debtors;

(c)    Have not been within three years before the date of filing of the Debtors chapter 11 petitions (i) investment bankers for a security of the Debtors or (ii) an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the Debtors; and

(d)    Were not, within two years before the date of filing of the Debtors chapter 11 petitions, a director, officer, or employee of the Debtors or of any investment banker as specified in subparagraph (b) or (c) above.

17.    PJSC has not shared or agreed to share any of its compensation from the Futures Representative with any other person, other than a managing director, professional or employee of PJSC, as permitted by section 504 of the Bankruptcy Code. The proposed engagement of PJSC is not prohibited by Bankruptcy Rule 5002.

Bradley I. Dietz

Sworn to and subscribed before me
this 12th day of March, 2002

Notary Public

NICHOLE W. WYNTER
Notary Public, State of New York
No 01WY6057554
Qualified in Queens County
Commission Expires April 16, 2003

Doc #ARMSTRONG AFFIDAVIT 3-12-02.DOC

**A p p e n d i x  482**

# EXHIBIT B

**Engagement Letter**

PETER J. SOLOMON COMPANY
LIMITED

767 FIFTH AVENUE
NEW YORK, NEW YORK 10153

February 20, 2002

The Honorable Dean M. Trafelet
55 West Monroe Street
Chicago, IL 60603

Dear Judge Trafelet:

The purpose of this letter is to confirm the understanding and agreement (the "Agreement") among Dean M. Trafelet in his capacity as Legal Representative for Future Claimants ("DMT") in the Chapter 11 proceedings of Armstrong World Industries, Inc. and its affiliates (collectively, the "Company") pending in the United States Bankruptcy Court for the District of Delaware, Peter J. Solomon Company Limited ("PJSC"), and the Company related to the scope and terms of advisory services to be provided to DMT as the Future Claimants' Representative ("FCR") in the Company's Chapter 11 cases.

We understand that the work performed by PJSC will be done at the direction of DMT. PJSC's duties hereunder run solely to DMT, and PJSC is not authorized to be, and will not purport to be, an agent of the Company for any purpose. For our services and expenses on DMT's behalf, we agree to be compensated as set forth below. Any payment obligation arising in connection with this retention will be the obligation of the Company, including, but not limited to with respect to any payment obligation under Section 5 hereof, or Exhibit A attached hereto or otherwise under this Agreement.

Section 1.    Services to be Rendered.

PJSC will perform the following services, as DMT may request from time to time, including, but not limited to:

a) Valuation of the Company as a going concern, in whole or part;

b) Valuation analyses of the Company's asbestos exposure;

c) Review of and consultation on the financing options for the Company, including proposed DIP financing;

d) Review of and consultation on the potential divestiture, acquisition and merger transactions for the Company;

e) Review of and consultation on the capital structure issues for the reorganized Company, including debt capacity;

TEL: 212-508-1600        FAX: 212-508-1633        E-MAIL: www.pjsolomon.com

Appendix 484

f) Review of and consultation on the financial issues and options concerning potential plans of reorganization, and coordinating negotiations with respect thereto;

g) Review of and consultation on the Company's operating and business plans, including analysis of the Company's long-term capital needs and changing competitive environment;

h) Provide general advice and consultation regarding the adequacy of the funding of any trust contemplated by Section 524(g) of the Bankruptcy Code;

i) Testimony in court on behalf of DMT, if necessary; and,

j) Any other necessary services as DMT or DMT's counsel may reasonably request from time to time with respect to the financial, business and economic issues that may arise.

Section 2.    Term.    The initial term of this Agreement shall commence from the date hereof for a period of six (6) months (the "First Period"); provided however, that DMT reserves the right to continue PJSC's retention on a month-to-month basis at the completion of the First Period without additional Bankruptcy Court approval (the "Second Period"). During the Second Period, either DMT or PJSC may terminate this Agreement with thirty (30) days advance notice in writing. If terminated, PJSC shall be entitled to receive any fees for any monthly period which are due and owing PJSC upon the effective date of the termination; however, such amounts will be prorated for any incomplete monthly period of service, and PJSC will be entitled to the reimbursement for the out-of-pocket expenses described in Section 4, subject to Bankruptcy Court approval. Termination of PJSC's engagement hereunder shall not affect or impair the Company's continuing obligation to indemnify PJSC and certain related persons as provided in Section 5 and Exhibit A and the Company's continuing obligations under Section 6 hereof.

Section 3.    Fees.    In consideration for the services described in Section 1, during the course of this engagement the Company agrees to pay PJSC in cash pursuant to the procedures for compensation and reimbursement of expenses established by the Bankruptcy Court in accordance with the applicable provisions of the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules for the Bankruptcy Court for the District of Delaware, the final financing order and other applicable orders in these jointly administered cases, including the Administrative Order, Pursuant to Sections 105(a) and 331 of the Bankruptcy Code, Established Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the "Administrative Compensation Order") as follows: a monthly fee (the "Monthly Fee") of $175,000 commencing as of February 20, 2002 for a period of two years, a Monthly Fee of $150,000 for the third year, a Monthly Fee of $125,000 for the fourth year, and a Monthly Fee of $100,000 thereafter for the duration of the case subject to the terms of Section 2 above. Neither DMT or any of his advisors or professionals shall be liable for the fees payable to PJSC hereunder.

Section 4.    Expenses.    Without in any way reducing or affecting the provisions of Exhibit A hereto, the Company shall reimburse PJSC for its reasonable out-

2

of-pocket expenses incurred in connection with the provision of services hereunder including, without limitation the fees, disbursements and other charges of PJSC's counsel. Outside counsel will be retained by PJSC only with the consent of DMT if counsel to DMT is unable or unwilling to represent PJSC. Out-of-pocket expenses also shall include, but not be limited to, travel and lodging, data processing and communication charges, research and courier services. Neither DMT nor any of his advisors or professionals shall be liable for the expenses to PJSC hereunder.

 Section 5. Indemnity. The Company agrees to the provisions of Exhibit A hereto which provide for certain indemnification of PJSC and certain related persons. Such indemnification is an integral part of this Agreement, and the terms thereof are incorporated by reference herein. Such indemnification shall survive any termination, expiration or completion of this Agreement.

 Section 6. Miscellaneous.

a) In connection with allowances of compensation and reimbursement of expenses, PJSC shall file appropriate applications for allowance of interim and final compensation and reimbursement of expenses in accordance with Sections 330 and 331 of the United States Bankruptcy Code and applicable rules at such times as directed by the Bankruptcy Court or established by administrative order entered in the bankruptcy cases in accordance with the applicable provisions of the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules for the Bankruptcy Court for the District of Delaware, the final financing order and other applicable orders in these jointly administered cases, including the Administrative Compensation Order. The fees detailed in Section 3 above have been agreed upon with the express expectation that they are subject to review by the Bankruptcy Court as provided by Section 328 of the Bankruptcy Code. Furthermore DMT understands that the hours worked, the results achieved in the reorganization or the ultimate benefit to the estate of the work performed may be variable and DMT has taken this into account in setting the fees detailed in Section 3 above. In accordance with the guidelines of the Bankruptcy Court, PJSC shall maintain detailed records of time spent working on this assignment, which records shall be available for submission to the Bankruptcy Court subject to appropriate redactions to preserve confidential or sensitive information. Although PJSC is providing such records, it, as an investment bank, does not have hourly rates for its professionals. PJSC will make every effort to coordinate with the other professionals in these bankruptcy cases in order to eliminate unnecessary duplication or overlap of work.

b) Obligations incurred by DMT (solely in his capacity as FCR) and/or the Company under Sections 2 through 6 shall survive termination or expiration of the Agreement.

c) At the request of DMT, PJSC and its affiliates shall provide a fairness opinion with respect to any of the Chapter 11 proceedings or any transactions contemplated thereby or incidental hereto where such opinion is necessary and appropriate. The terms and compensation of such engagement are not included herein and shall be customary for such service rendered by nationally recognized investment banking firms involved in

3

major Chapter 11 cases at the time of the engagement and shall be subject to separate agreement and Bankruptcy Court approval.

d) PJSC shall under all circumstances have the right to rely on, without independent verification, subject to its obligations to act in good faith, and does not assume responsibility for the accuracy or completeness of, information furnished to PJSC by the Company, its representatives or DMT in connection with PJSC's engagement hereunder.

e) PJSC shall keep confidential all information provided to it by the Company and DMT and his counsel, unless publicly available or otherwise available to PJSC without restriction or breach of any confidentiality agreement, and shall not disclose such information to any third party, other than in confidence to its employees, agents, representatives and advisors, without the Company's and/or prior approval as the case may be.

f) The advice (oral or written) rendered by PJSC pursuant to this Agreement is intended solely for the benefit and use of DMT and his professionals in considering the matters to which this Agreement relates, and DMT agrees that such advice may not be relied upon by any other person, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose without the prior written consent of PJSC. To the extent DMT directs, PJSC shall provide its data, information or determinations to DMT's counsel and other constituencies in the Chapter 11 cases.

g) If PJSC terminates or is terminated in accordance with Section 2, PJSC shall promptly provide, but in no event later than fifteen (15) days after any such termination, to DMT any computer models, financial analysis or other materials related to the case without additional cost.

h) PJSC shall have the right after completion of this engagement to place advertisements in financial and other newspapers and journals at its own expense describing its services hereunder.

i) This Agreement may not be amended or modified except by a writing executed by each of the parties and this Agreement, including all controversies arising from or relating to performance under this Agreement, shall be governed by and construed in accordance with the laws of the State of New York, without giving effect such state's rules concerning conflicts of law.

j) Any lawsuits with respect to, in connection with or arising out of this Agreement shall be brought in Bankruptcy Court and the parties hereto consent to the jurisdiction and venue of the Bankruptcy Court as the sole and exclusive forum, unless such court is unavailable, for the resolution of claims by the parties arising under or relating to this Agreement.

k) To the extent permitted by applicable law, the parties hereto waive trial by jury in connection with or arising out of this Agreement, or any other claim or dispute

4

relating to the engagement of PJSC arising between the parties hereto. The parties hereto confirm that the foregoing waivers are informed and freely made.

l) The relationship of PJSC to DMT hereunder shall be that of an independent contractor and PJSC shall have no authority to bind, represent or otherwise act as agent for DMT.

m) In providing such services hereunder, the PJSC team shall be headed by Bradley I. Dietz who shall personally be involved in the delivery of services provided hereunder, except in the event of death, incapacity, leave of absence or cessation of employment by PJSC.

*       *       *

If the foregoing correctly sets forth the understanding and Agreement among DMT, the Company and PJSC, please so indicate by signing the enclosed copy of this letter, whereupon it shall become a binding Agreement between the parties hereto as of the date first above written.

Very truly yours,

PETER J. SOLOMON COMPANY LIMITED

By: _____
Bradley I. Dietz
Managing Director

Accepted and Agreed to as of
the day first written above:

THE HONORABLE DEAN M. TRAFELET
In His Capacity as Legal Representative for
Future Claimants

By: _____

5

**Exhibit A**

This Exhibit A is part of and incorporated into that certain letter agreement (the "Agreement"), dated February 20, 2002.

a)  If Peter J. Solomon Company ("PJSC") and its affiliates or any employee, agent, officer, director, attorney, shareholder or any person who controls PJSC (any or all of the foregoing, hereinafter an "Indemnified Person") becomes involved in any capacity in any legal or administrative action, suit, proceeding, investigation or inquiry, regardless of the legal theory or the allegations made in connection therewith, directly or indirectly in connection with, arising out of, based upon, or in any way related to (i) the Agreement; (ii) the services that are subject of the Agreement; (iii) any document or information, whether verbal or written, referred to herein or supplied to PJSC; (iv) the breach of the representations, warranties or covenants by the Company given pursuant hereto; (v) PJSC's involvement in the Chapter 11 case of the Company (the "Case") or any part thereof; (vi) any filings made by or on behalf of any party with any governmental agency in connection with the Case; (vii) the Case; or (viii) proceedings by or on behalf of any creditors or equity holders of the Company, the Company will on demand, advance or pay promptly, on behalf of each Indemnified Person, reasonable attorney's fees and other expenses and disbursements (including, but not limited to, the cost of any investigation and related preparation) as they are incurred by the Indemnified Person. The Company also indemnifies and holds harmless each Indemnified Person against any and all loses, claims, damages, liabilities, costs and expenses (including, but not limited to, attorney's fees, disbursements and court costs, and cost of investigation and preparation ("Losses")) to which such Indemnified Person may become subject in connection with any such matter.

b)  If for any reason the foregoing indemnification is determined to be unavailable to any Indemnified Person or insufficient fully to indemnify any such person, then the Company will contribute to the amount paid or payable by such person as a result of any such Losses in such proportion as is appropriate to reflect (i) the relationship between PJSC's fees on the one hand and the aggregate value of the Company on the other hand or (ii) if the allocation provided by clause (i) is not permitted by applicable law, not only such relative benefit but also the relative fault of the other participants in the Case, on the one hand, and PJSC and the Indemnified Persons on the other hand, and any other relevant equitable considerations in connection with the matters as to which such Losses relate.

c)  If any action or proceeding shall be brought or asserted against PJSC or any other Indemnified Person in respect of which indemnity or contribution may be sought from the Company hereunder, PJSC shall promptly notify the Company in writing, provided that failure to notify the Company shall not relieve it from any liability hereunder except to the extent of any material prejudice resulting therefrom. The Company may, upon notice to PJSC, assume the defense thereof, by retaining counsel reasonably satisfactory to PJSC. Any Indemnified Person shall have the right to employ separate counsel in any such action and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of the Indemnified Person (but not other reasonable defense or investigation expenses incurred by or on behalf of PJSC or any other Indemnified Person) unless (i) the Company has agreed to pay the reasonable fees and expenses for such counsel, (ii) the Company shall have failed to promptly assume the defense of such action or proceeding, or (iii) the named parties to such action or proceeding (including any impleaded parties) include both the Indemnified Person and the Company and the Indemnified Person reasonably believes that the joint representation of the Indemnified Person may result in a conflict of interest (in which case if the Indemnified Person shall notify the Company in writing of the facts underlying the perceived conflict and that it elects to employ separate counsel at the expense of the Company, the Company shall not have the right to assume the defense of such action or proceeding on behalf of the Indemnified Person, provided the fees and expenses of such separate counsel are reasonable).

7

**A p p e n d i x  489**

d)  The indemnification obligations hereunder shall not apply to any Losses that are judicially determined to have resulted from the gross negligence, fraud, lack of good faith, bad faith, willful misfeasance, or reckless disregard of the obligations or duties of PJSC. In the event of such judicial determination, the Company shall be entitled to recover from PJSC the costs and expenses paid on behalf of any Indemnified Person pursuant to this indemnification obligation.

e)  The Company agrees that it will not settle, compromise or discharge any suit, claim, litigation, threatened litigation or threatened claim arising out of, based upon, or in any way related to the Case and to which PJSC or any Indemnified Person is or may reasonably be expected to be a party, unless and until the Company has obtained a written agreement, approved by PJSC (which shall not be unreasonably withheld) and executed by each party to such proposed settlement, compromise or discharge, releasing PJSC and each Indemnified Person from any and all liability. PJSC agrees that it will not settle, compromise or discharge any such suit, claim, litigation, threatened litigation or threatened claim without the prior written consent of the Company, which will not be unreasonably withheld.

f)  The Company further agrees that neither PJSC nor any other Indemnified Person shall have any liability, regardless of the legal theory advanced, to the Company or any other person or entity (including the Company's equity holders and creditors) related to or arising out of PJSC's engagement, except for any liability for losses, claims, damages, liabilities, costs and expenses incurred by the Company which are judicially determined to have resulted from the gross negligence, fraud, lack of good faith, bad faith, willful misfeasance, or reckless disregard of the obligations or duties of PJSC.

g)  The Company's obligations under this Exhibit shall be in addition to any liability that the Company or any other person may otherwise have to PJSC or any Indemnified Person. The foregoing provisions shall be enforceable by each Indemnified Person and such person's heirs, representatives and successors, and shall survive any termination of the Agreement or the completion of services hereunder.

8

# EXHIBIT C

**Proposed Order**

Doc #30421589.wpd

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------- x
In re:                                           : Chapter 11
                                                 :
ARMSTRONG  WORLD  INDUSTRIES,                    : Case No. 00-4471 (RJN)
INC., et al.,                                    :
                          Debtors.               : (Jointly Administered)
------------------------------------------------- x
```

## ORDER PURSUANT TO SECTIONS 105(a), 327 AND 524(g) OF THE BANKRUPTCY CODE AUTHORIZING THE RETENTION AND EMPLOYMENT OF PETER J. SOLOMON COMPANY AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO DEAN M. TRAFELET, LEGAL REPRESENTATIVE FOR FUTURE CLAIMANTS *NUNC PRO TUNC* TO FEBRUARY 20, 2002

Upon the application (the "Application") of Dean M. Trafelet, Esq., legal representative for future claimants (the "Futures Representative") in connection with the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), seeking entry of an order pursuant to sections 105(a), 327 and 524(g) of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Rules 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the retention and employment of Peter J. Solomon Company ("PJSC") as financial advisor and investment banker to the Futures Representative and for the approval of the proposed terms of such employment set forth in the letter agreement attached as Exhibit B to the Application (the "Letter Agreement"); and upon the Affidavit of Bradley I. Dietz (the "Dietz Affidavit") in support of the Application; and the Court being satisfied that except as otherwise set forth in the Dietz Affidavit, (i) PJSC does not have or represent any interest materially adverse to the interests of the Futures Representative, the Debtors or their estates, creditors or equity holders; (ii) PJSC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code; and (iii) the retention and employment of PJSC are necessary and in the best interests of the Debtors and their estates,

creditors, and equity holders; and due notice of the Application having been given and appearing

that no other or further notice need be given; and after due deliberation and sufficient cause

appearing therefor; it is hereby

**ORDERED**, that the Application is granted and approved in all respects, and it is

further;

**ORDERED THAT** in accordance with sections 105(a), 327 and 524(g) of

the Bankruptcy Code, and Rule 2014 of the Bankruptcy Rules, the Futures Representative is

authorized to retain and employ PJSC as its financial advisor and investment banker, *nunc pro*

*tunc* to February 20, 2002, for the purpose of providing financial advisory, investment banking

and other related services in connection with the Debtors' chapter 11 cases in accordance with

the terms of the Letter Agreement; and it is further

**ORDERED THAT** the fees to be paid to PJSC pursuant to the terms of the Letter

Agreement are approved and shall be subject to the standard review provided in section 328(a) of

the Bankruptcy Code and, except as provided in the Letter Agreement, are not subject to any

other standard of review under section 330 of the Bankruptcy Code; and it is further

**ORDERED THAT** the indemnification provisions of the Letter Agreement are

approved, subject to the following:

(a)     Subject to the provisions of subparagraph (c), *infra*, the Debtors are
authorized to indemnify, and shall indemnify PJSC in accordance
with the Letter Agreement, for any claim arising from, related to,
or in connection with the services provided for in the Letter
Agreement, but not for any claim arising from, related to, or in
connection with PJSC's postpetition performance of any other
services unless such postpetition services and indemnification
therefor are approved by this Court;

(b)     Notwithstanding any provisions of the Letter Agreement to the
contrary, the Debtors shall have no obligation to indemnify PJSC,

2

or provide contribution or reimbursement to PJSC, for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen solely from PJSC's gross negligence, bad faith or willful misconduct, or (ii) settled prior to a judicial determination as to PJSC's gross negligence or willful misconduct, but determined by this Court, after notice and a hearing, to be a claim or expense for which PJSC should not receive indemnity, contribution or reimbursement under the terms of the Letter Agreement and this Order; and

(c)    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these chapter 11 cases, PJSC believes it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Letter Agreement (as modified by this Order), including without limitation the advancement of defense costs, PJSC must file an application therefor in this Court, and the Debtors may not pay any such amounts to PJSC before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by PJSC for indemnification, contribution or reimbursement and not a provision limiting the duration of the Debtors' obligation to indemnify PJSC; and it is further

ORDERED THAT the compensation and reimbursement payments due under the Letter Agreement shall be entitled to priority as expenses of administration under Sections 503(b)(1)(A) and 507(a)(1) of the Bankruptcy Code and shall be entitled to the benefits of any "carve outs" for professionals' fees and expenses in effect in these Chapter 11 cases pursuant to one or more financing orders now or hereinafter in effect; and it is further

ORDERED THAT neither the Futures Representative nor any of his advisors or counsel shall be liable for the fees payable to PJSC under the Letter Agreement; and it is further

ORDERED THAT PJSC shall be compensated in such amounts as may be

allowed by this Court upon the filing of appropriate applications for allowance of interim or final

compensation in accordance with the procedures set forth in sections 330 and 331 of the

Bankruptcy Code, the Bankruptcy Rules and the *Administrative Order, Pursuant to Sections*

*105(a) and 331 of the Bankruptcy Code, Establishing Procedures for Interim Compensation and*

*Reimbursement of Expenses of Professionals* entered by this Court on January 5, 2001; and it is

further

      **ORDERED THAT** this Court shall retain exclusive jurisdiction to construe and

enforce the terms of the Application, the Letter Agreement, and this Order.

Dated: Wilmington, Delaware
      _____, 2002


                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| ARMSTRONG WORLD INDUSTRIES, | ) | |
| INC., et al., | ) | Case No. 00-4471 (RJN) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Objection Deadline: April 4, 2002 at 4:00 p.m. (EST)** |
| | ) | **Hearing Date: May 3, 2002 at 2:00 p.m. (EST)** |
| | ) | |
| | ) | **MC No. YCST - 3** |
| | ) | |

### NOTICE OF APPLICATION

TO:     **Office of the United States Trustee, counsel to the Debtors, counsel for the Official Committee of Unsecured Creditors, counsel for the asbestos claimants' committee, counsel for the Official Committee of Asbestos-Related Property Damage Claimants and all parties requesting notice pursuant to Bankruptcy Rule 2002.**

The Legal Representative for Future Claimants (the "Futures Representative") has filed the attached Application for Order Pursuant to Sections 105(a), 327 and 524(g) of the Bankruptcy Code and Fed. R. Bankr. P. 2014 Authorizing Retention and Employment of Peter J. Solomon Company, as Investment Banker and Financial Advisor for Dean M. Trafelet, Legal Representative for Future Claimants *Nunc Pro Tunc* to February 20, 2002 (the "Application").

Objections, if any, to the relief requested in the Application must be filed with the United States Bankruptcy Court for the District of Delaware, 5th Floor, 824 Market Street, Wilmington, Delaware 19801 on or before April 4, 2002 at 4:00p.m. (EST).

At the same time, you must also serve a copy of the objection so as to be received by the following by no later than April 4, 2002 at 4:00 p.m. (EST):

Edwin J. Harron, Esquire
Young Conaway Stargatt & Taylor, L.L.P.
The Brandywine Building
P.O. Box 391
Wilmington, Delaware 19899-0391

Michael J. Crames, Esquire
Kaye Scholer, L.L.P.
425 Park Avenue
New York, New York 10022

A HEARING ON THE APPLICATION WILL BE HELD ON MAY 3, 2002 AT 2:00 P.M. (EST) BEFORE THE HONORABLE RANDALL J. NEWSOME, UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 844 KING STREET, WILMINGTON, DELAWARE 19801. ONLY PARTIES WHO HAVE FILED TIMELY OBJECTIONS WILL BE HEARD AT THE HEARING.

WP3:743578.1

59140.1001

Appendix 496

IF YOU FAIL TO OBJECT IN ACCORDANCE WITH THIS NOTICE, THE
COURT MAY GRANT THE RELIEF REQUESTED IN THE APPLICATION WITHOUT
FURTHER NOTICE OR HEARING.

Dated: March 12, 2002
     Wilmington, Delaware         YOUNG CONAWAY STARGATT & TAYLOR, LLP

                                    *John D. McLaughlin* #4123

James L. Patton, Jr. (No. 2202)
Edwin J. Harron (No. 3396)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

               -and-

KAYE SCHOLER, L.L.P.
Michael J. Crames
Andrew A. Kress
425 Park Avenue
New York, NY 10022-3598
Telephone: (212) 836-8415
Facsimile: (212) 836-8689

Counsel for Dean M. Trafelet,
Futures Representative