## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| **W. R. GRACE & CO., et al.** | ) | **Case No. 01-01139 (JFK)** |
| | ) | **Jointly Administered** |
| **Debtors** | ) | **Hearing Date: September 27, 2004** |

## STATEMENT OF THE BLACKSTONE GROUP L.P., FINANCIAL ADVISOR TO THE DEBTORS, IN SUPPORT OF ITS FEE ARRANGEMENT

In response to the order of the Court to file a Fee Statement, The Blackstone Group L.P. respectfully submits the following:

1.      The Blackstone Group L.P. ("Blackstone") was retained in February, 2001 as financial advisor to the Debtors pursuant to the application by the Debtors and the Order Pursuant to 11 U.S.C. Sections 327 (a) and 328 (a) and Fed. R. Bankr. P. 2014(a) and 2016 Authorizing the Employment and Retention of The Blackstone Group L.P. as Financial Advisor to the Debtors and Debtors in Possession dated June 22, 2001 (the "Retention Order") and attached hereto as Exhibit A.

2.      With respect to compensation provisions, the Retention Order provided that the Debtors shall pay Blackstone (i) a Monthly Advisory Fee in the amount of $175,000 in cash in accordance with the procedures set forth therein; and (ii) a Restructuring Fee in the amount of $5,000,000 in cash, but only upon the consummation of a successful restructuring and an order of the Court approving such Restructuring Fee (the "Fee Arrangement"). The Debtors reserved the right as set forth in the engagement letter between W. R. Grace and Blackstone with respect to this matter (the "Blackstone Agreement") to request Blackstone make adjustments to its Monthly Fee in the event that

- 1 -

Blackstone's activity in connection with its retention decreased significantly during any periods from the Effective Date (as defined in the Blackstone Agreement) of its retention.

3.      The Retention Order ordered Blackstone to file interim and final fee applications and to be compensated and reimbursed for expenses in accordance with the terms of the Blackstone Agreement as set forth in the Application, subject to the procedures set forth in the Bankruptcy Code, the Federal Rules of Bankruptcy Protection, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware and any orders of the Court including without limitation, the Administrative Order under 11 U.S.C. Sections 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members dated May 3, 2001, effective as of April 2, 2001 (the "Administrative Order"); provided however, that Blackstone shall keep time records in half-hour increments. The Debtors are authorized to pay Blackstone's monthly fees and to reimburse Blackstone for its costs and expenses as provided in the Blackstone Agreement upon Blackstone's compliance with the Administrative Order.

4.      The Retention Order further ordered that, notwithstanding anything to the contrary therein or in the Application, the Blackstone Agreement or the Administrative Order, the Restructuring Fee shall be subject to the approval of the Court under a reasonableness standard upon proper application by Blackstone in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules the Local Rules and any applicable orders of the Court, including, without limitation, the Administrative Order.

-2-

5.      Since the commencement of the case, Blackstone has billed the following

Monthly Advisory fees and sought Interim Compensation in the following amounts[1]:

| Interim Period | Time Period Covered | Monthly Fee Billed | Interim Period Fees |
|---|---|---|---|
| First | April 2, 2001-June 30, 2001 | $175,000 | $519,167 |
| Second | July 1, 2001 – September 30, 2001 | $175,000 | $525,000 |
| Third | October 1, 2001- December 31, 2001 | $175,000 | $525,000 |
| Fourth | January 1, 2002 – March 31, 2002 | $175,000 | $525,000 |
| Fifth | April 1, 2002 – June 30, 2002 | $175,000 | $525,000 |
| Sixth | July 1, 2002 – September 30, 2002 | $175,000 | $525,000 |
| Seventh | October 1, 2002 – December 31, 2002 | $175,000 | $525,000 |
| Eighth | January 1, 2003 – March 31, 2003 | -0- | -0- |
| Nine | April 1, 2003 – June 30, 2003 | -0- | -0- |
| Tenth | July 1, 2003 – September 30, 2003 | -0- | -0- |
| Eleventh | October 1, 2003 – December 31, 2003 | $175,000 | $525,000 |
| Twelve | January 1, 2004 – March 31, 2004 | -0- | -0- |
| Thirteenth | April 1, 2004 – June 30, 2004 | $175,000 | $525,000 |

Blackstone did not bill the Debtors its Monthly Fee for (i) each of the nine months

commencing January 1, 2003 and ending September 30, 2003 and (ii) each of the three

months commencing January 1, 2004 and ending March 31, 2004 in recognition of the

decreased activity in connection with the financial advisory services to be provided by

Blackstone pursuant to its retention.  Blackstone will not apply at a later date for approval

of the Monthly Fees not billed.  Blackstone's Monthly Fees are subject to the twenty

percent holdback pursuant to the Administrative Order.

---

[1] For the period January to December 2003, Blackstone filed its Eighth Interim Fee Application covering the Eighth, Ninth, Tenth and Eleventh Interim Periods.  For the period January to June 2004, Blackstone filed its Ninth Interim Fee Application covering the Twelfth and Thirteenth Interim Periods.

6.      From the commencement of the case, Blackstone has maintained contemporaneous time records for each month detailing the services performed and the hours spent by professional, by category of activity, and has provided these time records to the Court in its Monthly or Interim Applications and to the Fee Examiner. Without repeating the details of such time records, in summary, Blackstone's activities in connection with advising and assisting the Debtors have been concentrated in the following areas:

- Preparation of financial forecasts and financial analysis
- Preparation of valuation analyses
- Restructuring of stock and debt interests in certain foreign subsidiaries and the repatriation of cash
- Funding of non-debtor entities
- Securities trading limitations for purposes of preserving the Debtors operating losses
- Taxes considerations, including IRS claims, the settlement with the IRS in connection with interest deductions claimed with respect to corporate owned life insurance, tax attributes and their availability under a plan of reorganization
- Legacy liabilities and liabilities subject to compromise including environmental obligations, retained obligations of divested businesses, and general litigation

- Strategy and parameters of negotiations with the creditor and equity constituencies

- The Sealed Air settlement

- The acquisition of three major businesses and various other smaller acquisitions. W.R. Grace has historically used acquisitions to enhance the value of the company and believe such a strategy should continue to be pursued notwithstanding the chapter 11 proceedings. Blackstone advised the Debtors with respect to the preparation of analyses and documents setting forth the strategy, financial impact, and value of these acquisitions. Blackstone established procedures for efficient and comprehensive review by the Official Unsecured Creditors Committee, the Asbestos Property Damages Committee, the Asbestos Claimants Committee, the Equity Committee (the "Committees") and their financial advisors such that no objections were filed and the acquisitions approved in an expeditious manner.

- The implementation of a retention program, a long-term incentive plan extended and reviewed each year through motions filed with the Court, and three pension funding motions. Blackstone reviewed the motions and underlying analyses with the Committees' advisors, resolved any issues prior to the hearing date such that no objections were filed and the motions approved in an expeditious manner.

- The ongoing review by the Committees and their financial advisors of the Debtors' operating results, acquisitions, employee-related motions,

environmental reserves, cash management, inter-company debt
arrangements, among others.

7.      Beginning in October 2003 and continuing until the present, Blackstone's
activities are concentrated in the development and filing of a plan of reorganization, the
financial analyses related thereto, and strategic assessments of alternatives and
negotiations with the Unsecured Creditors Committee and the presentation of financial
analyses to all the Committees. Specifically, Blackstone is, and expects to continue to:

- Assist the Debtors in the development of current pro forma and financial
  projections for use in evaluating the financial effects of a plan of
  reorganization

- Model and prepare financial analyses incorporating the Company's
  financial projections and restructuring alternatives of its liabilities subject
  to compromise

- Evaluate the Debtors' liabilities subject to compromise and filed claims,
  and the classification and treatment of claims; analyze the financial
  effects of such treatment

- Perform valuation analyses

- Perform debt capacity and pro forma credit ratings analyses

- Analyze the future liquidity needs of the Company

- Structure and value securities to be offered in a plan of reorganization

- Evaluate the availability of net operating loss provisions

- Evaluate the financial impact of insurance proceeds

- Assist in structuring the plan of reorganization and provide financial materials for the disclosure statement

- Assist the Debtors in the preparation of exhibits to the disclosure statement

- Evaluate the advisability of post-reorganization trading restrictions for purposes of preserving net operating losses

- Evaluate the most cost and tax effective debt placement

- Advise the Debtors with respect to corporate governance matters

- Assist the Debtors in securing an exit facility

- Prepare a best interests analysis in accordance with the requirements of the bankruptcy code

- Provide testimony, and expert report, if necessary, in the confirmation process

- Meet with the Committees and their financial advisors to discuss and negotiate plan provisions

- Assist the Debtors and legal counsel in the plan of reorganization confirmation process, including future negotiations and/or litigation

- Advise the Debtors with respect to its ongoing business motions including pension funding, insurance settlements, the purchase and sale of business, among others.

8.    Blackstone respectfully suggests that its services are valuable and necessary to the Debtors and their estates. Blackstone is thoroughly familiar with the Debtors' business operations, their operating results, their reporting systems, their

planning and budgeting methodologies, the type and number of claims filed, their other assets and liabilities including insurance and environmental, the concerns of the creditor and equity constituencies, the outline of a plan of reorganization and its financial effects, and the documentation thereof. Blackstone respectfully suggests that it is well qualified to represent the Debtors as financial advisor based on its knowledge and familiarity with the Debtors' issues and its experience in asbestos-related bankruptcies.

9.      Based on the exigencies of this case at the present time, Blackstone respectfully suggests that the Fee Arrangement approved in the Retention Order should not be modified. Blackstone will not seek any increase in the amount of its Monthly Advisory Fee for the duration of the case.   As it has in the past, Blackstone will continue to monitor the level of its activity in consultation with the Debtors and make appropriate adjustments to its Monthly Fees in the event its activity decreases significantly. Blackstone's Fee Arrangement in this case is commensurate with fee arrangements in other engagements in which Blackstone is currently retained.

10.      Blackstone has kept contemporaneous time records since its retention detailing its activities, and has provided such time records to the Court, the Trustee, the Service List and Fee Examiner. No party in interest has objected to Blackstone's fees during the pendency of the case.

11.      Blackstone is well aware that complex, lengthy cases can result in substantial costs to the estate. Blackstone believes it has rendered its financial advisory services in a diligent and cost effective manner, with a small team of Blackstone professionals that limits duplication of efforts and unnecessary meetings. Blackstone respectfully suggests that it has been disciplined and conscientious in its billing practices.

- 8 -

Blackstone forwent its Monthly Fees for extended periods of time in the last three years

when the activity in the case did not require a high level of Blackstone's services and will

do so again if the situation warrants.

      12.    Blackstone is pleased to provide additional information as requested by

the Court in this matter and respectfully reserves the right to file a response if the Court

raises further issues.


September 17, 2004                  Respectfully submitted,

                                    By:  *Pamela D. Zilly*

                                    Pamela D. Zilly
                                    The Blackstone Group L.P.
                                    345 Park Avenue
                                    New York, New York 10154
                                    Financial Advisor to the Debtors