# Exhibit E

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | Case Nos. 01-1139 through 01-1200 |
| W.R. GRACE & CO., et al., | : | |
| | : | |
| Debtors. | : | |

------------------------

| | | |
|---|---|---|
| OFFICIAL COMMITTEE OF | : | Adv. No. 02-2210 |
| ASBESTOS PERSONAL INJURY | : | [LEAD DOCKET] |
| CLAIMANTS and OFFICIAL | : | |
| COMMITTEE OF ASBESTOS | : | |
| PROPERTY DAMAGE | : | |
| CLAIMANTS OF W.R. GRACE & | : | |
| CO., suing in behalf of | : | |
| the Chapter 11 Bankruptcy | : | |
| Estate of W.R. GRACE & | : | |
| CO., et al., | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| SEALED AIR CORPORATION | : | |
| and CRYOVAC, INC., | : | |
| | : | |
| Defendants. | : | |

------------------------

| | | |
|---|---|---|
| OFFICIAL COMMITTEE OF | : | Adv. No. 02-2211 |
| ASBESTOS PERSONAL INJURY | : | |
| CLAIMANTS and OFFICIAL | : | |
| COMMITTEE OF ASBESTOS | : | |
| PROPERTY DAMAGE | : | |
| CLAIMANTS OF W.R. GRACE & | : | |
| CO., suing in behalf of | : | |
| the Chapter 11 Bankruptcy | : | |
| Estate of W.R. GRACE & | : | |
| CO., et al., | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| FRESENIUS MEDICAL CARE | : | |
| HOLDINGS, INC. and | : | |
| NATIONAL MEDICAL CARE, | : | |
| INC., | : | |
| | : | |
| Defendants. | : | |

ORDER AUTHORIZING, APPROVING AND IMPLEMENTING SETTLEMENT
AGREEMENT BY AND AMONG PLAINTIFFS THE OFFICIAL COMMITTEE OF
ASBESTOS PROPERTY DAMAGE CLAIMANTS AND THE OFFICIAL COMMITTEE
OF ASBESTOS PERSONAL INJURY CLAIMANTS, THE DEBTORS,
AND DEFENDANTS FRESENIUS MEDICAL CARE HOLDINGS, INC. AND
<u>NATIONAL MEDICAL CARE, INC.</u>

On April 15, 2003, the Official Committee of Asbestos

Property Damage Claimants (the "PD Committee") and the Official

Committee of Asbestos Personal Injury Claimants (the "PI

Committee"; collectively, the PI Committee and the PD Committee

are referred to as the "Plaintiffs") of the above-captioned

debtors and debtors in possession (collectively, the "Debtors"),

and the Debtors, filed their motion (the "Motion") pursuant to §§

105(a), 362, and 363 of Title 11, United States Code (the

"Bankruptcy Code") and Rule 9019(a) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") seeking an order

authorizing, approving and implementing the First Amended

Settlement Agreement and Release of Claims (the "Settlement

Agreement") by and among the Plaintiffs, the Debtors, Fresenius

Medical Care Holdings, Inc. ("FMCH") and National Medical Care,

Inc. ("NMC," and collectively with FMCH and certain non-defendant

affiliates of FMCH and NMC further identified in the Settlement

Agreement, the "NMC Defendants"), a copy of which Settlement

Agreement is attached to the Motion as Exhibit A; due, proper,

2

and sufficient notice of the Motion having been given pursuant to
Bankruptcy Rules 2002 and 9019(a) and the Local Rules of this
Court; and the Court having considered the Motion, the files and
records in these cases, the arguments and statements of counsel
offered at a hearing (the "Hearing") on the Motion, the evidence
proffered or adduced at the Hearing, and objections to the
Motion, if any; the Court hereby finds and concludes as follows:[1]

### Jurisdiction and Venue

A.      This Court has jurisdiction to hear and determine
the Motion and to grant the relief requested therein pursuant to
28 U.S.C. §§ 157 and 1334. The Motion gives rise to a core
proceeding pursuant to 28 U.S.C. § 157(b).

B.      Venue of these cases and the Motion is proper in
this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

C.      The predicates for the relief granted by this Order
are Bankruptcy Code §§ 105(a), 362, and 363 and Bankruptcy Rule
9019(a).

---

[1]      The following shall constitute the Court's findings of
fact and conclusions of law as required by Bankruptcy Rule
7052(a). To the extent that findings of fact contain conclusions
of law, such findings shall constitute conclusions of law. To the
extent that conclusions of law contain findings of fact, such
conclusions shall constitute findings of fact.

3

## General Background

D.      On April 2, 2001 (the "Petition Date"), each of the Debtors commenced a voluntary case under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

E.      The Debtors' cases are being jointly administered pursuant to Bankruptcy Rule 1015.

F.      Since the Petition Date, the Debtors continue in possession of their properties and continue to operate their businesses pursuant to Bankruptcy Code §§ 1107(a) and 1108.

G.      No trustee or examiner has been appointed in the Debtors' chapter 11 cases.

H.      On April 12, 2001, the United States Trustee appointed the PD Committee, the PI Committee, and the Official Committee of Unsecured Creditors (the "Creditors' Committee").

## The Adversary Proceedings

**The Debtors' Complaint for Injunction and Motion for TRO.**

I.      On the Petition Date, the Debtors filed their Verified Complaint for Declaratory and Injunctive Relief (the "Complaint for Injunction"), captioned <u>W.R. Grace & Co., et al. v. Margaret</u>

4

Chakarian, et al., Adversary Proceeding No. 01-771.
Contemporaneously with the Complaint for Injunction, the Debtors
also filed their Motion for a Temporary Restraining Order and
Preliminary Injunction Staying All Asbestos-Related and Fraudulent
Transfer Claims Against Affiliated Entities (the "Motion for TRO").

J.    In the Complaint for Injunction and the Motion for TRO,
the Debtors sought, among other things, to enjoin prosecution of
pending and future fraudulent transfer claims
against certain non-debtors, including, without limitation, the NMC
Defendants, Sealed Air Corporation ("Sealed Air"), and Cryovac,
Inc. ("Cryovac," and collectively with Sealed Air, the "Sealed Air
Companies").

K.    On the Petition Date, the Bankruptcy Court entered its
Order Granting Temporary Restraining Order (the "TRO"), which
effectively stayed all entities from filing any asbestos-related
actions against certain non-debtors, including the NMC Defendants
and the Sealed Air Companies.

L.    On April 12, 2001, the Bankruptcy Court entered its Order
Extending the Temporary Restraining Order, which extended the TRO
through and including April 24, 2001.

M.    At a status conference held by the Court on April 18,
2001, the Bankruptcy Court issued a preliminary injunction further

5

staying all entities from filing any asbestos-related actions against the NMC Defendants or the Sealed Air Companies through and including a hearing on the Complaint for Injunction.

N.   On May 3, 2001, the Bankruptcy Court conducted a hearing on the request for a preliminary injunction and entered an Order Granting Preliminary Injunction (the "Preliminary Injunction Order"), which stayed, inter alia, pending actions alleging certain fraudulent transfer claims against the NMC Defendants and the Sealed Air Companies. The Preliminary Injunction Order, however, did not stay future actions against the NMC Defendants and the Sealed Air Companies.

O.   On January 22, 2002, the Bankruptcy Court entered an order modifying the Preliminary Injunction Order. The January 22 order broadened the scope of the preliminary injunction and stayed both pending and future actions against the NMC Defendants and the Sealed Air Companies, other than by the Plaintiffs, as described below.

**Assignment of Causes of Action to the Plaintiffs.**

P.   On June 14, 2001, the PD Committee and the PI Committee filed their Joint Motion for Authority to Prosecute Fraudulent Transfer Claims (the "Motion to Prosecute") seeking authority to prosecute certain fraudulent transfer claims against, among others,

6

the NMC Defendants and the Sealed Air Companies (the "Fraudulent Transfer Actions").

Q.   At an omnibus hearing held before the Bankruptcy Court on January 29, 2002, the Bankruptcy Court informed the parties that this Court granted the Motion to Prosecute and authorized the PD Committee and the PI Committee to investigate and prosecute the Fraudulent Transfer Actions.

R.   On March 12, 2002, this Court entered an order withdrawing the reference with respect to the Fraudulent Transfer Actions and granting the Motion to Prosecute.

On March 12, 2002, this Court entered an order withdrawing the reference with respect to the Fraudulent Transfer Actions and granting the Motion to Prosecute.

**The Adversary Proceedings.**

S.   After an order granting the Motion to Prosecute had been entered, the parties participated in a case management conference to establish discovery and pleading deadlines. After considerable negotiation and discussion, the parties submitted a draft case management order to this Court for approval. On March 12, 2002, this Court entered the first Case Management Order in the above-captioned adversary proceedings.

7

T.     On March 18, 2002, the Plaintiffs filed a complaint against the NMC Defendants alleging, _inter alia_, that the NMC Defendants were liable as successors for the asbestos liability of the Debtors and that the NMC Defendants were recipients of fraudulent transfers in respect of the W.R. Grace entities (the "Fresenius Adversary Proceeding").

U.     On March 18, 2002, the Plaintiffs also filed a complaint against the Sealed Air Companies alleging, _inter alia_, that the Sealed Air Companies were likewise liable as successors for the asbestos liability of the Debtors and that the Sealed Air Companies likewise were recipients of fraudulent transfers in respect of the W.R. Grace entities (the "Sealed Air Adversary Proceeding").

V.     On April 1, 2002, the NMC Defendants filed their answer in the Fresenius Adversary Proceeding.

W.     Thereafter, at a case management conference held by this Court, the Court granted the Plaintiffs' request to stay the Fresenius Adversary Proceeding pending the outcome of the Sealed Air Adversary Proceeding.

## The IRS Tax Audit

X.     The Debtors were members through September 29, 1996, of

8

the Grace New York Group[2] and included in the Grace New York Group's consolidated tax returns together with certain of the NMC Defendants for years ending on or before December 31, 1996. The Sealed Air Companies were also members of the Grace New York Group for certain tax years ending on or before December 31, 1996.

Y.    Each member of the Grace New York Group is severally and thus primarily liable for the income taxes (as well as other taxes) for the tax years during which such corporation was included as a member of the Grace New York Group.

Z.    The Debtors and certain NMC Defendants entered into that certain Tax Sharing and Indemnification Agreement dated September 27, 1996 (the "TSIA"), pursuant to which the Debtors obligated themselves to indemnify such NMC Defendants for certain tax deficiencies asserted by the tax authorities relating to the tax years ending on or before, or including, September 29, 1996 (e.g., the federal consolidated tax return of the Grace New York Group for the tax year ending December 31, 1996).

AA.  In October, 1997, the Internal Revenue Service (the "IRS") commenced an examination of the consolidated tax returns of

---

[2] All capitalized terms used hut not defined in this Order shall have the meanings set forth in the Settlement Agreement. To the extent that the terms of the Settlement Agreement conflict with any provision of this Order, the terms of the Settlement Agreement shall control.

9

the Grace New York Group with respect to the 1993 through 1996 tax periods (the "Tax Audit").

BB.    Under the TSIA, the Debtors have been acting as the agent of the Grace New York Group in dealing with the IRS during the Tax Audit.

CC.    In connection with the Tax Audit, the IRS has proposed certain adjustments to the Debtors.

DD.    The IRS has filed priority tax claims against the Debtors and their bankruptcy estates. Certain state taxing authorities have filed similar priority tax claims in the above-captioned cases. The amounts of these priority tax claims have not yet been adjudicated.

EE.    On September 24, 2002, the Debtors filed with this Court a Motion for the Entry of an Order Authorizing the Debtors to Enter Into a Settlement Agreement with the Internal Revenue Service in Connection with Interest Deductions Claimed with Respect to Corporate Owned Life Insurance (the "COLI Motion") to settle the largest adjustment proposed by the IRS.

FF.    Because the Sealed Air Companies were members of the Debtors' corporate family at the time the Debtors entered into the TSIA, the NMC Defendants have asserted that the Sealed Air Companies are liable to the NMC Defendants for indemnification and contribution with respect to various claims, including any tax

deficiencies arising out of the Tax Audit. Certain litigation among the Sealed Air Companies and the NMC Defendants is referred to in the Settlement Agreement as the "Sealed Air Indemnity Litigation."

### The Settlement Agreement

GG.   On November 27, 2002, at the direction of the Court, the Plaintiffs and the NMC Defendants participated in a lengthy settlement conference, during which the parties were able to successfully negotiate a settlement that addressed three separate areas: (i) settlement of the Fresenius Adversary Proceeding and protection for the NMC Defendants from current and future Grace-Related Claims; (ii) responsibility for the priority taxes arising out of the Tax Audit and for other taxes; and (iii) release of claims against the Sealed Air Companies by the NMC Defendants. This third component, the release of the Sealed Air Companies by the NMC Defendants, was a material part of the Plaintiffs' separate settlement agreement with the Sealed Air Companies, which settlement is expected to provide approximately $900 million of benefits to the Debtors' estates.

HH.   The outlines of the settlement reached at the settlement conference were memorialized in a term sheet executed on November

11

27, 2002. Pursuant to the Term Sheet, the NMC Defendants agreed to pay $15 million as directed by the Court, upon the confirmation of a Plan of Reorganization in respect of the Debtors. In addition, the NMC Defendants agreed to pay the net federal and state income tax liabilities of the Grace New York Group for years ending on or before December 31, 1996, subject to certain control and cooperation agreements. Pursuant to the Term Sheet, the NMC Defendants were to take control over the Tax Audit and all refunds for tax years ending on or before December 31, 1996. By Order dated November 27, 2002, the Court acknowledged the agreement in principle.

II. Shortly after the November 27th settlement conference, representatives of the Plaintiffs, the Debtors, and the NMC Defendants jointly began negotiating and drafting the Settlement Agreement. During the course of this joint drafting of the definitive settlement documents, it became apparent that the design and documentation of the tax control and cooperation features of the settlement would be exceedingly cumbersome and difficult, and had the potential to create conflicts between tax positions taken by the Debtors in the future and positions taken by FMCH in years in which they were responsible for the tax payments under the settlement reflected in the Term Sheet. In addition, it became

12

clear that greater tax efficiencies could be achieved by
restructuring portions of the settlement reflected in the Term
Sheet. As a result, the Plaintiffs, the Debtors, and the NMC
Defendants agreed to modify the terms of the settlement to provide
economically similar benefits for the Debtors' estates without
intricate tax provisions. The Settlement Agreement addresses the
same three subject areas as the original Term Sheet, to wit: (i)
settlement of the Fresenius Adversary Proceeding and protection for
the NMC Defendants from current and future Grace-Related Claims;
(ii) responsibility for the priority taxes arising out of the Tax
Audit and for other taxes; and (iii) release of the claims against
the Sealed Air Companies by the NMC Defendants.

        JJ.   Under the Settlement Agreement, the NMC Defendants have
agreed to make a one-time lump sum payment of $115 million in
exchange for full protection from current and future Grace-Related
Claims, including Asbestos-Related Claims, claims arising out of
the Tax Audit, and other taxes. In addition, the Settlement
Agreement provides that the Debtors will retain control of, and
responsibility to pay (or indemnify the NMC Defendants) for,
Indemnified Taxes. Finally, the Settlement Agreement provides that
the NMC Defendants will release the Sealed Air Companies for all
Grace-Related Claims. As a consequence, the Debtors' estates may

                                13

realize an economic benefit equal to the amount of the settlement

proceeds (i.e., $115 million), reduced only by the amount of

Indemnified Taxes that the Debtors might otherwise have been able

to avoid paying as priority tax claims or as indemnification claims

to the NMC Defendants. In addition, the Debtors' estates are thus

able to settle the Sealed Air Adversary Proceeding without having

to indemnify the Sealed Air Companies for the contribution and

indemnity claims the NMC Defendants would otherwise pursue against

those entities in the Sealed Air Indemnity Litigation.

KK.  As more fully set forth in the Settlement Agreement, in

resolution of all Grace-Related Claims, the Plaintiffs, the

Debtors, and the NMC Defendants have agreed as follows:

(a)  Within five (5) days of the Settlement Effective Date,
the NMC Defendants shall wire transfer $115 million, subject to
certain rights of setoff and recoupment set forth in Section 3.8 of
the Settlement Agreement, as directed by the Court in the Final
Order approving the Plan of Reorganization.

(b)  As conditions precedent to the foregoing payment:

• The Plan of Reorganization shall provide that:
(i) upon the making of the Settlement Payment, the
Asbestos Committees and the Estate Parties will fully,
finally, and forever release, relinquish and discharge
each and every of the NMC Defendants from any and all
Grace-Related Claims that the Asbestos Committees or the
Estate Parties have asserted or could have asserted in
this or any other forum against any of the NMC
Defendants; and (ii) prior to the making of the
Settlement Payment, the Asbestos Committees and the
Estate Parties will deliver to the NMC Defendants the

14

Release that is attached as Appendix B to the Settlement Agreement, which by its terms shall become effective upon the making of the Settlement Payment.

- The Plan of Reorganization shall provide that, in consideration of the Settlement Payment, any Person voting in favor of the Plan or receiving property under the Plan shall thereby be deemed to have fully released each and every of the NMC Defendants from all Grace-Related Claims that such Person has asserted or could have asserted in this or any other forum against any of the NMC Defendants.

- The Plan of Reorganization shall establish a trust or trusts under state law and pursuant to Section 524(g) of the Bankruptcy Code (the "Asbestos Trust"), and shall further provide that, in consideration of the Settlement Payment, any Person that receives property from the Asbestos Trust(s) shall thereby be deemed to have fully released each and every of the NMC Defendants from all Grace-Related Claims that the Person has asserted or could have asserted in this or any other forum against any of the NMC Defendants.

- The Court shall have issued, pursuant to Section 105(a) of the Bankruptcy Code, a Final Order, enforceable upon the making of the Settlement Payment, permanently and forever enjoining, restraining and barring any Person from commencing or continuing any suit, action or other proceeding, or from taking any other action, for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, or with respect to, any Grace-Related Claim against any of the NMC Defendants.

- The Plan of Reorganization shall provide that the NMC Defendants shall receive the full benefits and protections of an injunction entered pursuant to section 524(g) of the Bankruptcy Code, enforceable upon the making of the Settlement Payment, which injunction shall permanently bar any Person from commencing or continuing any suit, action, or other proceeding, or from taking any other action for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, or with respect to, any Asbestos-Related Claim that the Person

15

asserted or could have asserted, against any of the NMC Defendants.

• The Plan of Reorganization shall provide that the Estate Parties, jointly and severally, upon the making of the Settlement Payment, shall indemnify, defend and hold harmless the NMC Defendants for any loss, cost or expense (including attorneys' fees and other costs of defense) arising out of any and all Grace-Related Claims, commenced or continued in this or any other forum against any of the NMC Defendants. Such indemnification specifically shall not apply to the costs and expenses (including attorneys' fees and accountants' fees) incurred by the NMC Defendants in defending the Asbestos Claimant's Adversary Proceeding or any other suit prior to the Settlement Execution Date.

• The actions identified in Section 2.02(G) of the Settlement Agreement shall have been dismissed with prejudice.

• The Plan of Reorganization shall contain a determination by the Court that the Estate Parties have the ability to satisfy all Indemnified Taxes, liabilities under the Settlement Agreement and ordinary course of business obligations as of the Plan Effective Date.

(c)  The NMC Defendants will not seek indemnification from the Estate Parties, Sealed Air, or Cryovac for the Settlement Payment.

(d)  Upon the Settlement Effective Date, the NMC Defendants will execute a release, acceptable in form and substance to the NMC Defendants, that fully releases the Sealed Air Companies from any and all Tax claims or Asbestos-Related Claims (including but not limited to claims for attorneys' fees and the costs of litigation related thereto) that the NMC Defendants have asserted or could have asserted in this or any other forum against the Sealed Air Companies.

(e)  Notwithstanding any other provision of the Settlement Agreement, it shall not be a breach of the Settlement Agreement, act of bad faith, tortious interference with a contractual relationship or any other malfeasance, for the Estate Parties to

16

propose or support a plan of reorganization that does not provide for the establishment of an Asbestos Trust or the issuance of an injunction pursuant to Section 524(g) of the Bankruptcy Code; provided however, the Estate Parties shall use their best efforts to cause all of the preconditions set forth in Section 2.02 of the Settlement Agreement, other than those set forth in subsections 2.02 (C) and (E) to occur. For the avoidance of doubt, if the Plan of Reorganization, as well as the Final Order of confirmation respecting the Plan of Reorganization, do not satisfy the preconditions set forth in such paragraphs, the NMC Defendants may in their sole discretion waive or decline to waive, as set forth in Section 2.02, the failure of those preconditions as conditions precedent to the Settlement Payment.

    (f)   The Plaintiffs shall use their respective best efforts to cause the occurrence of all the preconditions to the obligation of the NMC Defendants to make the Settlement Payment set forth in Section 2.02 of the Settlement Agreement, except to the extent the NMC Defendants may in their sole discretion waive, as set forth in Section 2.02, the failure of those preconditions as conditions precedent to the Settlement Payment.

    (g)   From and after the Settlement Approval Date, the Estate Parties promptly shall pay any Indemnified Taxes as such Taxes become due and payable to tax authorities pursuant to a Final Determination, provided that the Estate Parties have obtained authorization from the Court to pay currently any such Indemnified Taxes. To the extent necessary, the Estate Parties will use best efforts to obtain such authorization and shall defer any Final Determination of any Indemnified Taxes until such time as the Estate Parties have obtained such authorization. Any Tax Refund of the Grace New York Group with respect to tax years ending on or before December 31, 1996, if credited or paid to any member of the Grace New York Group shall, under certain circumstances as more fully described in Section 3.03(C) of the Settlement Agreement, be repaid to the tax authority as a payment of Indemnified Taxes. On February 14, 2003, Fresenius received a wire transfer from the IRS in the amount of $7,203,630, which the Plaintiffs and the Debtors agree is the tentative refund with respect to the 1993 tax period generated in response to the Form 1139 filed by the Debtors in December 2002 (the "1993 Tentative Refund"). The Settlement Agreement requires Fresenius to repay the 1993 Tentative Refund to the IRS as a payment toward the Indemnified Taxes. Pending approval of such repayment by this Court, Fresenius has placed the 1993 Tentative Refund in a segregated interest bearing account (the

17

"Segregated Account"). The Plaintiffs and the Debtors have agreed
that upon approval by the Court, which is requested in the Motion,
Fresenius should repay the funds held in the Segregated Account to
the IRS as a payment of Indemnified Taxes pursuant to the terms of
the Settlement Agreement.

(h)   From the Settlement Execution Date, the terms of the
Settlement Agreement generally supersede the terms of the TSIA.

(i)   Upon approval of the Settlement Agreement by Final Order,
the Estate Parties shall become obligated to, and entitled to the
benefits of, the terms and conditions of the Settlement Agreement.

### Notice of the Motion

LL.   As evidenced by the Certificate of Service of Theodore
Tacconelli, actual written notice of the Motion and the Settlement
Agreement, and a reasonable opportunity to object or be heard with
respect thereto, has been afforded to all parties in interest,
including: (a) the Office of the United States Trustee; (b) counsel
to the Debtors' postpetition Lender; (c) counsel to the Creditors'
Committee; (d) all parties to the Fresenius Adversary Proceeding;
(e) all parties to the Sealed Air Adversary Proceeding; and (f)
those parties requesting notice pursuant to Bankruptcy Rule 2002.

MM.   This Court finds and concludes that such notice satisfies
the requirements of the Bankruptcy Code, the Bankruptcy Rules, due
process, and other applicable law, and no further notice of the
Motion   or   the   Settlement   Agreement   is   required   under   the
circumstances.

18

## Approval of the Settlement Agreement

NN.   The Settlement Agreement is in the best interests of these bankruptcy estates and the creditors thereof.

OO.   The result obtained on behalf of these bankruptcy estates in the Settlement Agreement falls within the reasonable range of litigation possibilities in the Fresenius Adversary Proceeding.

PP.   At best, the likely outcome of the Fresenius Adversary Proceeding is uncertain. The Plaintiffs candidly admit to this Court and the parties that litigation risks abound, including, without limitation, that proof of the Debtors' alleged insolvency and proof of the alleged lack of reasonably equivalent value are especially challenging in respect of the fraudulent transfer claims against the NMC Defendants.

QQ.   The Fresenius Adversary Proceeding indisputably involves complex legal and factual issues.

RR.   Prosecuting the Fresenius Adversary Proceeding would create substantial expenses for these bankruptcy estates and the other parties to the Fresenius Adversary Proceeding. Although the litigants might achieve some economies through litigation of the Sealed Air Adversary Proceeding, the transactions involving the NMC Defendants and the Sealed Air Companies were sufficiently different

19

in time and nature that any savings would be marginal, if any.

SS.  Pursuing the Fresenius Adversary Proceeding would also likely entail the commitment of substantial human resources by key personnel of the Debtors. The commitment of such resources and the duration of the litigation would assuredly result in further delays in developing and confirming a plan of reorganization in the above-captioned cases.

TT.  Approval of the Settlement Agreement furthers the paramount interest of creditors in the above-captioned cases.

UU.  Approval of the Settlement Agreement could potentially increase the funds available to fund a plan of reorganization, both through the funds provided by the NMC Defendants and by facilitating settlement with the Sealed Air Companies.

VV.  Approval of the Settlement Agreement will permit the Plaintiffs and the Debtors to focus their attention on other important matters in the above-captioned cases, including developing and confirming a plan of reorganization.

WW.  Approval of the Settlement Agreement will avoid continued expense in the Fresenius Adversary Proceeding and the Sealed Air Adversary Proceeding, thereby resulting in a net economic benefit to these bankruptcy estates.

XX.  Based on the foregoing, the releases, protections, and

20

other benefits provided to the NMC Defendants are necessary to the reorganization in the above-captioned cases.

YY.   In exchange for the releases, protections, and other benefits provided to the NMC Defendants by the Settlement Agreement, the NMC Defendants are providing a substantial contribution and reasonably equivalent value to these bankruptcy estates and the creditors thereof.

ZZ.   The releases, protections, and other benefits provided to the NMC Defendants by the Settlement Agreement are fair to the Plaintiffs, these bankruptcy estates, and the creditors thereof.

AAA. The NMC Defendants are unwilling to settle the Fresenius Adversary Proceeding and provide the substantial contributions to these bankruptcy estates contemplated by the Settlement Agreement without the releases, protections, and other benefits provided to the NMC Defendants by the Settlement Agreement.

BBB. The Plaintiffs, the Debtors, and the NMC Defendants negotiated and entered into the Settlement Agreement in good faith and at arm's length.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

1.   The Motion is hereby GRANTED in its entirety, and the Settlement Agreement is hereby AUTHORIZED and APPROVED in all

21

respects.

2.    The Plaintiffs, the Debtors, and the NMC Defendants are hereby authorized, empowered, and directed to take all necessary acts to carry out and implement the Settlement Agreement in accordance with its terms without further order of the Court, including, without limitation, (i) FMCH is authorized to repay the 1993 Tentative Refund and the other funds in the Segregated Account to the IRS as a payment of Indemnified Taxes, (ii) the NMC Defendants, the Debtors, and the Estates Parties each are authorized to repay any additional Tax Refunds to the appropriate tax authority, pursuant to and subject to the terms of Section 3.03(C) of the Settlement Agreement; and (iii) pursuant to Section 3.03(B) of the Settlement Agreement, to the extent Grace-Conn. or any other Estate Party voluntarily agrees to the payment, assessment, resolution or other final determination of any Indemnified Taxes, the Debtors and the Estate Parties are authorized to pay promptly and in full any such Indemnified Taxes.

3.    Pursuant to Section 2.09 of the Settlement Agreement, the Plaintiffs are hereby authorized, empowered, and directed to use their best efforts to bring about the Settlement Effective Date and to cause the occurrence of all the preconditions to the obligation of the NMC Defendants to make the Settlement Payment that are set

22

forth in Section 2.02 of the Settlement Agreement, including, without limitation, seeking the injunctions and releases under Bankruptcy Code §§ 105(a) and 524(g) for the NMC Defendants. Pursuant to Section 2.08 of the Settlement Agreement, the Debtors are hereby authorized, empowered, and directed to use their best efforts to bring about the Settlement Effective Date, and to cause the occurrence of all the preconditions to the obligation of the NMC Defendants to make the Settlement Payment that are set forth in Section 2.02 of the Settlement Agreement, other than those set forth in paragraphs (C) and (E) of Section 2.02, including, without limitation, seeking the benefit of injunctions and releases under Bankruptcy Code § 105(a). In addition, if the Debtors and Estate Parties, in their discretion, choose to seek the protections of an injunction under Bankruptcy Code § 524(g), the Debtors and Estate Parties are authorized, empowered, and directed to seek the benefit of injunctions and releases under Bankruptcy Code § 524(g) for the NMC Defendants to the extent such injunctions are allowable under the law and to the extent they seek such injunctions and releases for the Debtors and the Estate Parties.

4.    The terms of the Settlement Agreement shall survive entry of this Order and shall supersede all other agreements relating to these matters, including, without limitation, the TSIA, except as

23

specifically provided otherwise in the Settlement Agreement.

5.    The terms of the Settlement Agreement shall not be
modified by provisions in any plan of reorganization in the above-
captioned cases, or otherwise, without consent of the NMC
Defendants.

6.  The terms of the Settlement Agreement and this Order shall
be binding in all respects on the Debtors, their bankruptcy
estates, all holders of claims and interests in the above-captioned
cases, all parties in interest, and each of their respective
successors and assigns, and upon entry of an order confirming a
plan of reorganization in the above-captioned cases, any additional
parties subject to the injunctions and releases provided through
such a plan.

7.    To the extent necessary, the Plaintiffs and the NMC
Defendants are hereby granted relief from the automatic stay
pursuant to Bankruptcy Code § 362(d) to carry out the provisions of
this Order and the Settlement Agreement.

8.    This Court hereby retains jurisdiction, even after the
closing of these chapter 11 cases, to (i) interpret and enforce the
terms and provisions of this Order and the Settlement Agreement and
to adjudicate, if necessary, any and all disputes relating to the
transactions contemplated by the Settlement Agreement; (ii) enter

24

orders in aid or furtherance of the transactions contemplated in the Settlement Agreement; and (iii) re-open the Debtors' chapter 11 cases to enforce the provisions of this Order.

9.    This Order shall become effective immediately upon entry and there shall not be any automatic stay of this Order pursuant to Bankruptcy Rule 7062 and 6004(g). The provisions of this Order are non-severable and mutually dependant.

Dated: ___JUNE 25___, 2003
       Wilmington, Delaware   VIA
       NEWARK, NEW JERSEY

UNITED STATES DISTRICT JUDGE