IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Objection Deadline: October 8, 2004**
**Hearing Date: October 25, 2004 at Noon**

## MOTION FOR THE ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO ACQUIRE FLEXIA CORPORATION'S SYNTHETIC, ROOF-UNDERLAYMENT BUSINESS

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby submit this motion (the "Motion") for the entry of an order authorizing the Debtors to acquire, or fund an acquisition by a non-debtor, of Flexia Corporation's synthetic roof underlayment business and related intangible assets (collectively, the "Target Business"). In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1.  This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (as amended, the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

3.  On April 2, 2001, the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

4.  The Chapter 11 Cases have been consolidated for administrative purposes only, and pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

## Summary of Operations

5.  The Debtors engage in specialty chemicals and materials businesses, operating on a worldwide basis. The Debtors predominately operate through two business units – Davison Chemicals and Performance Chemicals.

6.  The Debtors' Specialty Building Materials unit ("SBM") is part of Performance Chemicals. SBM sells waterproofing and fireproofing products on a worldwide basis, to both the residential and nonresidential construction industry. For over 30 years, the Debtors, through SBM, have pioneered waterproofing products such as Ice and Water Shield® for sale to

2

residential home-builders and roofing contractors. SBM's domestic business is conducted through W. R. Grace & Co.-Conn. ("Grace"), which is a Debtor in the Chapter 11 Cases.

7. Grace has experienced significant, annual revenue-growth from sales of its Ice and Water Shield® sales in North America. Moreover, the residential waterproofing product line, including Grace's line of Vycor®Tapes (tapes for waterproofing windows and doors), has been a very profitable segment of SBM's business, particularly due to the popularity of products to prevent water infiltration into residential structures. This segment's recent growth and profitability have led the Debtors to pursue additional business opportunities within the business segment.

8. Flexia Corporation ("Flexia"), a Quebec company based in Brantford Ontario, has developed a synthetic, roof-underlayment product-line marketed under the Trademark Tri-Flex 30®. Tri-Flex 30® is rapidly displacing the standard roofing underlayments that have traditionally been used on the parts of residential roofs where Ice and Water Shield are not used. As such, the acquisition of the Tri-Flex® product-line would increase Grace's revenues and serve as a strategic and complementary fit with Grace's current line of residential waterproofing products. Further, since Tri-Flex® is distributed through the same channels as Grace's residential waterproofing products, the acquisition would also provide Grace with channel and brand leverage. Importantly, Tri-Flex® sales have doubled over the last three years, and, because current market penetration is low, double-digit growth rates are anticipated for the foreseeable future. Tri-Flex 30®'s penetration includes "big-box" retailers such as The Home Depot. Most of Tri-Flex ®'s sales are in the United States.

9. Grace or one of its subsidiaries proposes to enter into an asset purchase agreement to acquire the Target Business. Specifically, Grace intends to purchase the formulations, technology, know-how, customer lists, trademarks and goodwill of the Target Business. Once acquired, Grace will use the formulations, technology and know-how to construct a production-line for the manufacture Tri-Flex® products at Grace's Chicago facility. During the associated transition period (expected to be no more than two years), Flexia will continue to manufacture Tri--Flex® products for Grace at Flexia's production facilities in Brantford Ontario, and Langley, British Columbia, under the terms of a contract manufacturing agreement. Grace will also acquire Flexia's established sales network and Grace anticipates offering employment to a key Flexia employee. Grace will not assume any liabilities of the Target Business, other than those associated with the post-closing obligations of the Target Business under certain sales representative contracts to be specifically assumed.

10. The purchase price for the acquisition would be approximately $16.1M CDN (US $12 million). $ 12 million CDN in cash (approximately US $ 9 million), would be paid at closing. If during the 12 month period beginning with the first full month after the closing, Grace's sales of Tri-Flex® products through big box customers (such as Home Depot) meet Flexia's 2005 fiscal forecast, then Grace would be required to pay Flexia an additional $4,100,000 CDN (approximately US $3 million). If sales of Tri-Flex® products, to this channel during such period, are less than $14 million CDN, the price adjustment to Flexia would be less based on a predetermined formula.

11. Grace would not assume any pre-closing liabilities or obligations of Flexia. In this regard, Flexia would agree to indemnify Grace for pre-closing liabilities, including those

4

relating to any potential environmental issues. Grace does not anticipate conducting any prospective manufacturing activities in any former Flexia facilities.

### Relief Requested

12. By this Motion, the Debtors seek authority to (1) acquire (or fund the acquisition by a non-debtor[2]) the Target Business from Flexia Corporation for a purchase price, including post-closing adjustments, of up to $16.1 million CDN (approximately $12 million US) on substantially the same terms as set forth in this Motion (2), enter into a contract manufacturing agreement with Flexia, and (3) construct a Tri-Flex® production line as described in this Motion.

### Basis For Relief

13. Section 363 of the Bankruptcy Code provides that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The Third Circuit Court of Appeals has held that courts should approve a debtor's use of assets, outside the ordinary course of business, if the debtor demonstrates a sound business justification for the proposed transaction. See, e.g., In re Martin, 91 F.3d 389, 396 (3d Cir. 1996) (citing In re Schipper, 933 F.2d 513, 515 (7th Cir. 1991)); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986); In re Delaware & Hudson Ry. Co., 124 B.R. 169 (D. Del. 1991).

---

[2] Any such non-debtor would be owned by a debtor, and, therefore, (i) the Target Business is subject to this Court's jurisdiction and (ii) the value generated by the Target Business will inure to the Debtors in the Chapter 11 Cases.

14. Once the debtor has articulated a sound business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)). The business judgment rule has significance in chapter 11 cases as it shields a debtor's management from judicial second-guessing. See id; Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions").

15. Courts have applied four factors in determining the existence of a sound business justification: (i) whether a sound business reason exists for the proposed transaction; (ii) whether fair and reasonable consideration is provided; (iii) whether the transaction has been proposed and negotiated in good faith; and (iv) whether adequate and reasonable notice is provided. See In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983) (setting forth the "sound business purpose" test); Abbotts Dairies, 788 F.2d at 145-47 (implicitly adopting the articulated business justification test of the Lionel standard and adding the "good faith" requirement); Delaware & Hudson, 124 B.R. at 176 (adopting Lionel in this district). The Debtor's proposed purchase of the Flexia Synthetic Underlayment business meet each of these requirements.

16. *Sound Business Reasons*. Several sound business reasons exist for the proposed acquisition of Flexia's Synthetic Roof Underlayment business and assets by the Debtors. First, the acquisition fits well with the Debtors' existing residential waterproofing business and

6

provides immediate sales growth (and sales growth potential) in the fast-growing segment. Indeed, the Debtors anticipate that SBM's residential business sales will increase nearly 20% after the closing, and the Debtors anticipate further enhancing growth in several segments of the residential building products sector through the synergies provided by the Debtors' manufacturing, technical service and research and development capabilities. In particular, Grace would utilize SBM's existing U.S. residential waterproofing sales force, which consists of more than 20 people.

17. *Fair and Reasonable Consideration*. The $16.1 million CDN purchase price is fair and reasonable consideration for Flexia's Synthetic Roof Underlayment business, and it reflects the result of independent, good-faith negotiation between the Debtors and Flexia. *First*, (i) the price-to-sales ratio of the proposed transaction is 0.7, and (ii) the earning-before-interest-tax-depreciation-amortization (EBITDA) ratio of the proposed transaction is 6.0 (both figures are based on 2005 sales projections). These ratios each compare favorably with similar, recent transactions in the construction chemicals and allied products sectors. *Second*, the Debtors project incremental sales (above the combined sales of the Debtors' residential roofing business and the current Tri-Flex®Flex business) will continue to grow at historical rates by leveraging the combined strengths of each business's products and customer relationships, and immediate cost savings of $0.8 million per year through the consolidation of overhead. Moreover, this cost savings is expected to increase as self-manufacturing begins at Chicago. The Tri-Flex® product, technology, know-how and strong sales, combined with the Debtors' profitable operations, will increase the Debtors' revenues, profits and market presence. *Third*, the Debtors expect that the acquisition will be cash accretive to the Debtors' estates within the second year following the

closing of the transaction, thereby increasing the value of their estates for the benefit of all stakeholders. Accordingly, the Debtors believe that the purchase price is fair and reasonable considering the economic benefit to the Debtors' estates.

18.     *Good Faith*. The Debtors and Flexia have negotiated the proposed sale/purchase of the Business at arm's-length and in good faith. The Debtors also believe that the terms of the proposed transaction are fair to the Debtors.

19.     *Adequate and Sufficient Notice*. In satisfaction of the requirements of rule 2002 of the Bankruptcy Rules, the Debtors intend to serve copies of this Motion to all parties as provided herein.

## Summary of Argument

20.     The Debtors have years of experience in developing, manufacturing and selling residential waterproofing. The Debtors will leverage their extensive research and development, technical service, manufacturing expertise and knowledgeable technical sales force across the line of Tri-Flex® products, and will provide their state-of-the-art technology to continue innovation of the Target Business.

21.     Moreover, the Debtors have a long history of successful "bolt-on" acquisitions of this type. Since December 1999, the Debtors and their non-debtor subsidiaries and affiliates have completed numerous "bolt-on" acquisitions of various business sizes. These types of acquisitions are, and will continue to be, integral to the Debtors' growth strategy, and give the Debtors access to technologies and markets that they could not develop internally.

22. In light of the foregoing, the Debtors have determined in their business judgment that the acquisition of Flexia's synthetic roof underlayment business is fair and reasonable. The Debtors believe that the proposed purchase is in the best interest of their estates, grounded in sound business judgment and satisfies the "sound business judgment" test for the use of assets outside the ordinary course of business under Section 363(b) of the Bankruptcy Code.

### Notice

23. Notice of this Motion has been given to: (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to all official committees appointed by the United States Trustee, (v) counsel for Flexia, and (vi) all those parties that requested service and notice of papers in accordance with Fed R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

### No Prior Request

24. No prior Application for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an Order in substantially the form attached hereto: (i) authorizing the Debtors to acquire, or fund the acquisition by a non-Debtor affiliate, the Target Business for an approximate purchase price of $16.1 million CDN on substantially the same terms as set forth in this Motion; (ii) to enter into a Contract Manufacturing Agreement with Flexia and construct a Tri-Flex® production line as described in this motion; and (iii) granting such other relief as the Court deems just and proper.

Dated: September 20, 2004

Respectfully submitted,

KIRKLAND & ELLIS
James H.M. Sprayregen
Janet S. Baer
Samuel L. Blatnick
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

Laura Davis Jones (#2436)
David W. Carickhoff, Jr. (#3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession

91100-001\DOCS_DE:100111.1