IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Objection Deadline:  October 8, 2004**
**Hearing Date:  October 25, 2004 at Noon**

## DEBTORS' MOTION FOR AN ORDER APPROVING A SETTLEMENT AGREEMENT WITH HONEYWELL INTERNATIONAL, INC.

The above-captioned Debtors and Debtors in possession respectfully move this Court (the

"Motion") for entry of an order approving a settlement agreement between Honeywell

International, Inc. ("Honeywell") and the Debtors (the "Honeywell Settlement").    The

Honeywell Settlement would resolve a highly-contested lawsuit, which has been pending among

the parties for over nine years, and would result in the Debtors' estates: (i) immediately receiving

$62.5 million (cash) from Honeywell and (ii) transferring to Honeywell certain real property that

is the subject of the lawsuit.

---

[1]  The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

The Court should approve the Honeywell Settlement because it was the product of extensive, good-faith and arms' length negotiations, and, given (i) the litigation risks and costs associated with continuing to pursue the underlying litigation and (ii) the legacy liability associated with the property being transferred, the proposed settlement is in the best-interests of (i) the Debtors' estates and (ii) the Debtors' creditors.

## Jurisdiction

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this motion is proper under 28 U.S.C. § 1408.

2.      The statutory predicates for this Motion are sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 the Federal Rules of Bankruptcy Procedure.

## The Route 440 Property and the Adjacent Land

3.      In May of 1995, the Interfaith Community Organization ("ICO") filed a lawsuit, entitled, Interfaith Community Organization et al. v. Honeywell International, Inc. et al., in the United States District Court for the District of New Jersey (the "ICO Lawsuit"). The ICO Lawsuit concerns a 32-acre vacant piece of property located on Route 440 in Jersey City, New Jersey (the "Route 440 Property"), which is currently owned by ECARG, Inc. ("ECARG" or the "Debtor"), a Debtor in these chapter 11 cases. The ICO Lawsuit also involves an adjacent, 2 acre parcel of land that is owned by Roned Realty of New Jersey ("Roned"), an unrelated third-party (the "Roned Property" and, collectively with the Route 440 Property, the "Site").

4.      The Site contains approximately 1.5 million tons of chrome ore processing waste ("COPR"), which was placed on the Route 440 Property by Mutual Chemical Company of America ("Mutual"), who operated a chrome ore processing plant adjacent to the Route 440

Property, during the period from 1895 to 1954. COPR contains hexavalent chromium, which is highly toxic. Honeywell is the successor in interest to Mutual.

5.    In 1954, Mutual sold the Route 440 Property to an unrelated entity that constructed a drive-in movie theater on the rear portion of the Route 440 Property. Later, in or around 1966, a large retail building was built on the front portion of the Route 440 Property.

6.    In July 1981, after a series of other transactions involving the Debtor's former retail subsidiary, Daylin, Inc ("Daylin")[2], the Route 440 Property was purchased in fee by Daylin without any knowledge of the COPR contamination. Shortly thereafter, the Jersey City environmental agency notified Daylin of adverse environmental conditions at the Route 440 Property and requested corrective action. This led to Daylin's discovery - in 1982 - of the massive COPR contamination at the Route 440 Property.

7.    In 1982, W.R. Grace & Co.[3] ("Grace") and Daylin cooperated with the New Jersey Department of Environmental Protection's ("NJDEP") inquiry into the COPR contamination at the Route 440 Property by, among other things, retaining a consultant to undertake a preliminary environmental investigation at the Route 440 Property. Grace and Daylin also conducted an investigation as to who were the prior owners of the Route 440 Property and determined that (i) Mutual had most likely been the source of the COPR contamination and (ii) AlliedSignal, Inc. ("Allied") was the successor to Mutual.[4] Thereafter, Daylin notified NJDEP of Allied's potential responsibility for the COPR at the Route 440 Property. In response, NJDEP focused its demands for further investigation and cleanup of the

---

[2]  In 1986, Daylin (then operating under the name Grace Retail Corporation) transferred the property to ECARG, Inc.

[3]  W.R. Grace & Co. is now known as W.R. Grace & Co.-Conn.

[4]  In December 1999, AlliedSignal, Inc. merged with Honeywell, assuming the Honeywell name.

COPR at the Route 440 Property exclusively on Allied.  At the time ICO filed the ICO Lawsuit, Allied had not (i) completed an environmental investigation of the COPR at the Route 440 Property or (ii) begun a permanent cleanup of the Route 440 Property.

## ICO Lawsuit

8.      The ICO Lawsuit named (i) Honeywell, (ii) Grace, ECARG, Inc., and W.R. Grace Ltd. (collectively, the "Grace Defendants"), and (iii) Roned as defendants, and it sought an injunction under Section 7002(a)(1)(B) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B), which would require Honeywell to remediate the extensive COPR contamination at the Site.  The Grace Defendants were named as defendants in the ICO Lawsuit due to the fact that ECARG, Inc. was (at the time the ICO Lawsuit was filed), and still is, the owner of the Route 440 Property.

9.      In 1999, the Grace Defendants asserted cross-claims against Honeywell, which sought an injunction under RCRA that would require Honeywell to fully-remediate the COPR at the Route 440 Property.   The Grace Defendants also sought (i) recovery of ECARG's environmental response costs at the Route 440 Property pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") and New Jersey Spill Compensation and Control Act ("Spill Act") and (ii) damages for lost rents and injunctive relief under New Jersey common law.

10.      During January and February of 2003, the U.S. District Court for the District of New Jersey (the "District Court") heard the ICO Lawsuit.  The central issues during trial were (1) whether the COPR "may present an imminent and substantial endangerment to health or the environment" within the meaning of RCRA § 7002(a)(1)(B); (2) the nature of the environmental remedy that is required to address the endangerment at the Site; and (3) the Grace Defendants' damages.  On May 21, 2003, U.S. District Judge Dennis Cavanaugh issued an amended opinion

and order[5], which decided the ICO Lawsuit in favor of ICO and the Grace Defendants on their RCRA claims and on all but one of the Grace Defendants' other claims. Specifically, the court held that:

- The Site presents an "imminent and substantial endangerment to health or the environment" within the meaning of RCRA § 7002(a)(1)(B), due to the grave health and environmental threats presented by the hexavalent chromium in the COPR.

- Honeywell is required under RCRA § 7002(a)(1)(B) to excavate and remove all of the COPR from the Site that exceeds 240 ppm hexavalent chromium, treat and dispose of the COPR at an off-site RCRA disposal facility, and backfill the property with clean soil.

- Honeywell is required under RCRA § 7002(a)(1)(B) to fully investigate chromium contamination in the deep groundwater beneath the Site and remediate all chromium-contaminated sediments in the Hackensack River in the vicinity of the Site that exceed 370 ppm total chromium.

- Honeywell is liable to the Grace Defendants, under CERCLA § 107, for all environmental "response costs," in connection with the COPR at the Site, that they (i) have incurred or (ii) may incur in the future.

- Honeywell is liable to the Grace Defendants under the New Jersey Spill Act for all "cleanup and removal costs" they have incurred, or may incur in the future, in connection with the COPR at the Site.

- Honeywell is strictly liable to ECARG under New Jersey common law for all damages it has incurred in connection with the COPR at the Site, including lost rents

---

[5] The original opinion and order were issued on May 15, 2003.

and past real property taxes. The District Court awarded ECARG $8,213,818 in damages plus approximately $500,000/year in future rents real property taxes during the period of COPR remediation.

- Honeywell is required, under a June 1997 access agreement between Allied and ECARG, to excavate and remove the COPR and replace it with clean fill.

- Honeywell is liable to ECARG for contribution and indemnity under New Jersey statute and common law.

- Honeywell is liable to ECARG for attorneys' fees and costs relating to ECARG's RCRA claim.

See ICO v. Honeywell, 263 F.Supp.3d 796.

11.    The District Court also held that none of the Grace Defendants are liable to ICO (under RCRA) or Honeywell (under RCRA, CERCLA or the New Jersey Spill Act) because the Grace Defendants did not dispose of any COPR at the Site.

12.    On June 30, 2003, the District Court entered a final judgment in favor of Plaintiffs and the Grace Defendants.

13.    On July 10, 2003, Honeywell appealed the district court's decision to the United States Court of Appeals for the Third Circuit (the "Third Circuit"). The briefing in the Third Circuit is completed, but the Third Circuit has not scheduled a date for oral arguments.

14.    On August 5, 2003, Honeywell submitted a motion to the District Court for a stay of the RCRA injunction. On October 2, 2003, the District Court denied this motion

15.    In June 2004, Honeywell moved the Third Circuit for a stay of the District Court's injunction which was denied on August 25, 2004.

16.    As part of ECARG's claim, the District Court awarded ECARG attorneys fees and costs of litigation. Pursuant to a schedule issued by the District Court, in July 2003, Grace

submitted a fee petition detailing its RCRA-related fees and expenses (totaling $7,642,385). The parties briefed the RCRA fee petition in October and November 2003, and oral argument was held on May 4, 2004.

17.     On August 26, 2004, the District Court issued a 45 page opinion awarding ECARG $ 7,377,583.27 in RCRA fees and expenses. Additionally, the District Court ordered that ECARG is entitled to recover all reasonable fees and expenses it incurred in preparing and submitting the July 2003 RCRA fee application, and also all reasonable fees and expenses ECARG will incur in the future to monitor Honeywell's performance of the RCRA injunction.

### The Settlement Process

18.     Honeywell and the Debtors have been negotiating a settlement for over a year, and the proposed Honeywell Settlement represents the fruits of those diligent efforts. As noted above, in the summer of 2003, Honeywell filed its appeal of the District Court's June 30, 2003 decision. Shortly thereafter, the Third Circuit directed (i) Honeywell, (ii) ICO and (iii) the Grace Defendants to participate in the Third Circuit's Appellate Mediation Program. Judge Harold A. Ackerman, U.S.D.J., was assigned as the Mediator.

19.     Even before Judge Ackerman scheduled the first mediation session, Honeywell and the Grace Defendants, through their respective outside counsel, commenced settlement discussions. The private settlement discussions between Honeywell and the Grace Defendants during 2003 proved unsuccessful. Judge Ackerman subsequently scheduled a first mediation session for early February 2004. While no progress was made in that session, Judge Ackerman did direct the parties to scheduled private meetings prior to the next court-scheduled mediation session. The Grace Defendants and Honeywell, through their respective outside counsel, engaged in unsuccessful settlement discussions during March 2004. In April 2004 Judge Ackerman scheduled an additional mediation session at which time the Grace Defendants

determined that the parties were too far apart for meaningful discussions to proceed and requested Judge Ackerman to remove the case from mediation and permit appellate briefing to proceed.

20.     During the course of the appellate briefing and motion practice, Honeywell and the Grace Defendants, through their outside counsel, continued to discuss settlement. During July of 2004, the parties agreed that the central components of any settlement would include (i) a transfer of the Route 440 Property to Honeywell, (ii) Honeywell fully indemnifying the Grace Defendants and (iii) Honeywell paying the Grace Defendants a reasonable cash settlement.

21.     During July and August of 2004, Honeywell and the Grace Defendants made progress towards a settlement, but a final agreement was never achieved. In mid August 2004, the parties agreed that senior officers of Honeywell and the Grace Defendants would conduct discussions to see if the pecuniary terms of the settlement could be agreed upon. The proposed Honeywell Settlement is the result of those discussions.

### The Honeywell Settlement

22.     The following is a summary of the Honeywell Settlement (a copy of which is attached as Exhibit A).

- Honeywell will pay the Grace Defendants the sum of $62,500,000.[6]

- The Grace Defendants will transfer title to the Route 440 Property to Honeywell.

---

[6] Pursuant to this Court's Order dated June 22, 2001, and the related application of the Debtors, dated June 4, 2001, to retain Wallace King Marraro & Branson ("WKMB") as counsel in the ICO Lawsuit, WKMB would be entitled to receive a portion of this amount as compensation for its services. Specifically, WKNB would be entitled to receive 20% of the Debtors' net recovery in the ICO Lawsuit. The Court-approved application defines "net recovery" as: the gross recovery obtained in the ICO Lawsuit less the sum of (i) the debtors' expenses and (ii) $1,000,000.

- Honeywell will full-indemnify the Grace Defendants and other Grace entities for all third-party claims relating to the Site and certain other, adjacent property.

- Honeywell and the Grace Defendants will dismiss all claims they have against each other in all pending litigations, including appeals.

- Honeywell will take responsibility for completing, at its costs, the petroleum remediation relating to the underground storage tanks formerly at the portion of the Route 440 Property, known as "NJDEP Site 157."

- Honeywell and the Grace Defendants will mutually release each other from all claims.

- The District Court will have jurisdiction over enforcement of the Settlement Agreement, with the prevailing party paying attorneys' fees and costs.

- Honeywell and the Grace Defendants are permitted to make limited written public statements regarding the settlement.

- The settlement is contingent upon the Court's approval.

### Relief Requested

23.    The Debtors request that the Court enter an order (i) approving the Honeywell Settlement; (ii) authorizing the Debtors to transfer the Route 440 Property pursuant to the Honeywell Settlement; and (ii) granting such other and further relief as the Court deems just and proper. A form of proposed order is attached hereto.

### Basis for Requested Relief

24.    Federal Rule of Bankruptcy Procedure ("FRBP") 9019(a) governs settlements by chapter 11 debtors. Specifically, FRBP 9019(a) provides as follows:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture

trustees as provided in Rule 2002 and to any other entity as the
Court may direct.

25.    Generally, courts encourage settlements and favor compromises both in

bankruptcy (In re Penn Central Transp. Co., 455 F.2d 811, 814, n.6 (3d Cir. 1972)) and complex

cases. Doe v. Delie, 257 F.3d 309, 322 (3d Cir. 2001). The standards by which courts evaluate a

proposed compromise and settlement are well established.    In bankruptcy, a court should

approve a proposed compromise and settlement when it is fair and equitable and in the best

interests of the debtor's estates and its creditors.    See In re Marvel Entm't Group, Inc., 222 B.R.

243, 249 (D. Del 1998); In re Louise's Inc., 211 B.R. 798, 801 (D. Del. 1997); In re Texaco, 84

B.R. 893, 901-02 (Bankr. S.D.N.Y. 1988)[7] The court must "assess and balance the value of the

claim that is being compromised against the value to the estate of the acceptance of the

compromise proposal." In re Martin, 91 F.3d 389, 393 (3d Cir. 1996).

26.    The settlement need not be the best that the estate could have achieved, but rather

the settlement should be approved if it falls "within the reasonable range of litigation

possibilities." In re Penn Central Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979); see also

Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464

U.S. 822 (1983). In determining whether a settlement is within the range of reasonableness, the

Court should consider four criteria:  (a) the probability of success in the litigation; (b) the likely

difficulties in collection; (c) the complexity of the litigation involved, and the expense,

inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors.

See In re Martin, 91 F.3d at 393; Marvel, 222 B.R. at 249; see also In re Pennsylvania Truck

---

[7] See also In re Energy Coop., Inc., 886 F.2d 921, 927 (7th Cir. 1989); LaSalle Nat'l Bank v.
Holland (In re American Reserve Corp.), 841 F.2d 149, 161 (7th Cir. 1987) (a court is not
required to resolve the issues of fact and law compromised by a proposed settlement); Anaconda-
Ericsson, Inc. v. Hessen (In re Teltronics Services, Inc.), 762 F.2d 185, 187-89 (2d Cir. 1985).

Lines, Inc., 150 B.R. 595, 598 (E.D. Pa. 1992), aff'd, 8 F.3d 812 (3d Cir. 1993); In re Grant

Broadcasting of Philadelphia, Inc., 71 B.R. 390, 395 (Bankr. E.D. Pa. 1987).

27.    It is not necessary for the Court to conduct a "mini trial" of the facts or the merits

underlying the dispute.  See Grant Broadcasting, 71 B.R. at 396; See also In re A&C Properties,

784 F.2d 1377, 1384 (9th Cir.), cert. denied, 479 U.S. 854 (1986).  Instead, the Court need only

consider those facts that are necessary and pertinent to enable it to evaluate the settlement and to

make an informed and independent decision concerning the settlement.  See Penn Central, 596

F.2d at 1114.  The debtors' respectfully submit that the Honeywell Settlement favorably falls

within the Martin criteria and, thus, should be approved by the Court.

### The Honeywell Settlement is in the Best Interest of the Debtors' Estates

28.    The Court should enter an order approving the Honeywell Settlement because it

was the product of arms' length, good faith negotiations and, given the (i) litigation risks, (ii)

costs associated with pursuing the underlying litigation, and (iii) liabilities associated with the

Route 440 Property, the proposed settlement is in the best-interest of the Debtors' estates and its

creditors.

29.    The Settlement Agreement would provide the Debtors with a net recovery that

would exceed the specific damages awarded by the District Court ($9,000,000.00 which includes

post judgment interest); the award of attorneys' fees and expenses (approximately

$7,300,000.00); and the value of the Route 440 Property in clean condition (at trial estimated to

be between $20,000,000.00 and $35,000,000.00).  In addition, the Settlement Agreement

provides for the Debtors to transfer the Route 440 Property to Honeywell, which would relieve

the Debtors from potential, subsequent liabilities related to the Route 440 Property.  The

Settlement Agreement also provides the Debtors with a right to indemnification, which is as

broad, if not broader, than the indemnification in the District Court's final judgment.

Furthermore, the settlement will remove any risk attendant to the uncertainty of the pending appeal in the Third Circuit and will relieve the Grace Defendants of the potential for having to expend additional monies in litigation.

a.   **Settlement of the ICO Lawsuit is in the Best Interests of the Debtors' Estates**

30.   The numerous issues raised in Honeywell's appeal of the District Court's decision are both legally and factually complex, and, given the uncertainty surrounding the ultimate resolution of those issues, the proposed settlement amount is reasonable.

31.   In its appeal, Honeywell and the "Industry *Amicus"* Superfund Settlement Project, have strenuously argued that the remedy imposed by the District Court was (i) improper under the law, (ii) not supported by the record and (iii) well beyond the scope of what was required to address the contamination at the Route 440 Property. Moreover, both Honeywell and the Industry *Amicus* have presented policy arguments, as well as legal arguments, asserting that the District Court's injunctive remedy usurps the authority of the NJDEP, which Honeywell and the Industry *Amicus* argue was appropriately overseeing Honeywell's remedial efforts under the terms of a 1993 Administrative Consent Order. In addition to the foregoing, Honeywell argues that the injunctive remedy entered by the District Court is totally inappropriate in view of the fact that the cost of the remedy is more than ten times the value of the Route 440 Property once it has been remediated.

32.   Further, even if the Third Circuit approved the District Court's final judgment, the damages portion of the final judgment would be due and payable (approximately $9,000,000), but the cleanup of the Route 440 Property would proceed for another five (5) years. Therefore, even if the District Court's decision were ultimately affirmed, the Grace Defendants would not have the Route 440 Property available to them as a useable asset for at least five (5) years (and in the case of a remand and potentially another appeal, an even greater time).

33.     The continued litigation of this matter would also impose additional litigation costs and expenses on the Debtors.  These amounts could be substantial if the Third Circuit were to remand the matter back to the District Court.

       **b.**      **Transferring the Route 440 Property is in the Best Interest of the Debtors' Estates**

34.     The Honeywell Settlement allows the Debtors to transfer the Route 440 Property to Honeywell, which, given its current condition, (i) is essentially worthless and (ii) could otherwise be the source of substantial, future liabilities.

35.     The Route 440 Property currently contains approximately of 1.5 million tons of toxic COPR, which has no value and is a substantial environmental liability.  At trial, the real estate experts testified that the Route 440 Property's value in a clean condition was between $20,000,000 (commercial development) and $35,000,000 (residential development).

36.     The governing body of the City of Jersey City authorized a blight study to be conducted with respect to the Site.  The Jersey City Planning Board conducted an initial blight study and, in May 2004, released a proposed redevelopment plan for the Route 440 Property and adjacent properties containing approximately 64 acres, which are not owned by the Grace Defendants.  This redevelopment plan would have adversely impacted the value and the development potential of the Route 440 Property.  The proposed redevelopment plan was put on hold, but it served to notify the Debtors that they might have to either:

       (a)     seek a partner in order to compete with others, including Honeywell, to be selected as the designated developer for the entire 96 acres; or

       (b)     litigate the value of the Route 440 Property in a state court condemnation proceeding in the event that the Grace Defendants are not selected as the developer since in such an event Jersey City would exercise its eminent domain powers to take the Route 440 Property and convey it to the selected developer.

37.    In the case of (a), above, additional monies would be spent with no return for perhaps ten years (five years of cleanup and five ears of build out).  In the case of (b), the Grace Defendants would receive the fair market value for the Route 440 Property (which would be determined in a state -court condemnation-proceeding.

38.    As a result, the Honeywell Settlement is in the best interests of the Debtors' estates, as it provides Debtors with compensation for the Route 440 Property and the Debtors' past costs and fees associated with the Route 440 Property, as well as protection from any ongoing and future liabilities associated with the Route 440 Property and the adjacent land.

## Notice

39.    Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) the Environmental Protection Agency; (iii) counsel to the debtor in possession lenders, (iv) counsel to each official committee appointed by the United States Trustee; and (v) those parties that requested papers under Fed. R. Bankr. P. 2002.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, for all the foregoing reasons, the Debtors respectfully request that the Court enter an order (i) approving the Honeywell Settlement; (ii) authorizing the Debtors to transfer the Route 440 Property pursuant to the Honeywell Settlement; and (iii) granting such other and further relief as the Court deems just and proper.

Dated:  September 20, 2004

Respectfully submitted,

KIRKLAND & ELLIS LLP
James H.M. Sprayregen, P.C.
Janet S. Baer
James W. Kapp III
Samuel L. Blatnick
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES
& WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession