# EXHIBIT C

**GRACE**

EXHIBIT C

W. R. Grace & Co. - Conn.
Village Center Drive, Suite 210
Swedesboro, N.J. 08085
Tel: 856/467-2250
FAX: 856/467-4228

# TENANT ENGAGEMENT LETTER

## LEASE CONSULTING SERVICES

This Engagement Letter ("Agreement") dated this 9th day of April 2002, is by and between W.R. Grace & Co. (the "Tenant" or the "Company") and Deloitte & Touche LLP ("D&T").

I. **SCOPE OF SERVICES**

Tenant hereby engages D&T to perform Lease Consulting Services relating to all of the Tenant's leases, subleases, sub subleases and related amendments (the "Lease") as made available to D&T regarding Tenant's tenancy per the attached Exhibit A.

The purpose of the lease consulting service (also known as lease auditing) is to inspect the Landlord's books and records to determine proper allocation of operating expense and tax pass-throughs charged to the Tenant, or any other relevant charges from lease commencement through the latest escalation year as permitted by Lease and Landlord. D&T shall prepare a preliminary inspection analysis based on reading and abstracting each lease, sublease and sub sublease and analyzing past operating expense trends by line item. In addition, D&T shall analyze the subleases and sub subleases to determine if there may be profit sharing due to Tenant based upon these real estate transactions.

Tenant shall use reasonable efforts to support D&T in gaining access to Landlord's books and records for inspection. D&T shall prepare a lease report indicating exceptions, if any, in operating and property tax accounts, such as utilities, repairs and maintenance, janitorial, security, administrative costs, management fees, common areas, property taxes, gross-ups, etc. Adequate supporting evidence shall be provided to fully document claims with the Landlord. The report shall first be prepared as a draft (the initial final report) for internal Tenant usage. Once approved, the lease report shall be issued to the Tenant for forwarding onto the Landlord. Once the Landlord responds, as necessary, D&T shall prepare an additional counter response under the same drafting procedures.

Upon Tenant's approval, D&T on behalf of the Tenant, shall assist in negotiations with the Landlord to recover any funds that were improperly charged for all relevant retroactive and prospective years throughout the term of the Lease.

In addition, upon Tenant request we will engage a professional lease/space measurement firm to verify the reliability of the Tenant's leased square footage.

These services do not constitute an engagement to provide audit, compilation, review, or attestation services as described in the pronouncements on professional standards issued by the American Institute of Certified Public Accountants.

**GRACE**

W. R. Grace & Co. - Conn.
Village Center Drive, Suite 210
Swedesboro, N.J. 08085
Tel: 856/467-2250
FAX: 856/467-4828

## II. COMPENSATION

D&T proposes the following compensation package:

| | |
|---|---|
| $500 | (Five hundred dollars) due (per each lease/sublease/sub sublease) when the preliminary inspection analysis report is issued to Tenant. |
| $7,500 | (Seven thousand five hundred dollars) due when the initial draft report is issued to Tenant for forwarding to Landlord plus out-of-pocket travel expenses not to exceed $1,000, plus |
| 35% | (thirty five percent) of all savings actually achieved from the Landlord, subtenants or sub subtenants. Tenant shall be first reimbursed the $7,500 plus the out of pocket travel expenses from the initial gross recoveries prior to D&T being compensated 35% from the balance of the remaining recoveries. Fee shall include savings related to future savings or recoveries to Tenant not to exceed two years. |

All payments are due within 30 days of billing.

## III. GENERAL

1. **Services.** It is understood and agreed that D&T's services may include advice and recommendations, but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by the Company. In connection with its services hereunder, D&T shall be entitled to rely on all decisions and approvals of the Company.

2. **Payment of Invoices.** Properly submitted invoices upon which payment is not received within thirty (30) days of the invoice date shall accrue a late charge of the lesser of (i) 1½% per month or (ii) the highest rate allowable by law, in each case compounded monthly to the extent allowable by law. Without limiting its rights or remedies, D&T shall have the right to halt or terminate its services entirely if payment is not received within thirty (30) days of the invoice date.

3. **Term.** Unless terminated sooner in accordance with its terms, this engagement shall terminate on the completion of D&T's services hereunder. This engagement may be terminated by either party at any time by giving written notice to the other party not less than thirty (30) calendar days before the effective date of termination.

**GRACE**

W. R. Grace & Co. - Conn.
Village Center Drive, Suite 210
Swedesboro, N.J. 08085
Tel: 856/467-2250
FAX: 856/467-4828

4. **Ownership.**

a) <u>D&T Technology</u>. D&T has created, acquired or otherwise has rights in, and may, in connection with the performance of services hereunder, employ, provide, modify, create, acquire or otherwise obtain rights in, various concepts, ideas, methods, methodologies, procedures, processes, know-how, and techniques (including, without limitation, function, process, system and data models); templates; generalized features of the structure, sequence and organization of software, user interfaces and screen designs; general purpose consulting and software tools, utilities and routines; and logic, coherence and methods of operation of systems (collectively, the "D&T Technology").

b) <u>Ownership of Deliverables</u>. Except as provided below, upon full and final payment to D&T hereunder, the tangible items specified as deliverables or work product in the engagement letter to which these terms are attached (the "Deliverables") shall become the property of the Company. To the extent that any D&T Technology is contained in any of the Deliverables, D&T hereby grants the Company, upon full and final payment to D&T hereunder, a royalty-free, fully paid-up, worldwide, non-exclusive license to use such D&T Technology in connection with the Deliverables.

c) <u>Ownership of D&T Property</u>. To the extent that D&T utilizes any of its property (including, without limitation, the D&T Technology or any hardware or software of D&T) in connection with the performance of services hereunder, such property shall remain the property of D&T and, except for the license expressly granted in the preceding paragraph, the Company shall acquire no right or interest in such property. Notwithstanding anything herein to the contrary, the parties acknowledge and agree that (a) D&T shall own all right, title, and interest, including, without limitation, all rights under all copyright, patent and other intellectual property laws, in and to the D&T Technology and (b) D&T may employ, modify, disclose, and otherwise exploit the D&T Technology (including, without limitation, providing services or creating programming or materials for other companies). D&T does not agree to any terms that may be construed as precluding or limiting in any way its right to (a) provide consulting or other services of any kind or nature whatsoever to any person or entity as D&T in its sole discretion deems appropriate or (b) develop for itself, or for others, materials that are competitive with those produced as a result of the services provided hereunder, irrespective of their similarity to the Deliverables.

5. **Limitation on Warranties.** THIS IS A SERVICES ENGAGEMENT. D&T WARRANTS THAT IT SHALL PERFORM SERVICES HEREUNDER IN GOOD FAITH. D&T DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

6. **Limitation on Damages and Indemnification.**

a) The Company agrees that D&T and its personnel shall not be liable to the Company for any claims, liabilities, or expenses relating to this engagement for an aggregate amount in excess of the fees paid by the Company to D&T pursuant to this engagement, except to the extent finally judicially determined to have resulted primarily from the bad faith or intentional misconduct of D&T. In no event shall D&T or its personnel be liable for consequential, special, indirect, incidental, punitive or exemplary loss, damage, or expense relating to this engagement.

3

**GRACE**

W. R. Grace & Co. - Conn.
Village Center Drive, Suite 210
Swedesboro, N.J. 08085

b) The Company shall indemnify and hold harmless D&T and its personnel from all claims, liabilities, and expenses relating to this engagement, except to the extent finally judicially determined to have resulted primarily from the bad faith or intentional misconduct of D&T.

c) The provisions of this Paragraph and Paragraph 9 shall apply to the fullest extent of the law, whether in contract, statute, tort (such as negligence), or otherwise. In circumstances where all or any portion of the provisions of this Paragraph are finally judicially determined to be unavailable, D&T's aggregate liability for any claims, liabilities, or expenses relating to this engagement shall not exceed an amount which is proportional to the relative fault that D&T's conduct bears to all other conduct giving rise to such claims, liabilities, or expenses.

7. **Cooperation.** The Company shall cooperate with D&T in the performance by D&T of its services hereunder, including, without limitation, providing D&T with reasonable facilities and timely access to data, information and personnel of the Company. The Company shall be responsible for the performance of its personnel and agents and for the accuracy and completeness of all data and information provided to D&T for purposes of the performance by D&T of its services hereunder.

8. **Force Majeure.** D&T shall not be liable for any delays or non-performance resulting from circumstances or causes beyond its reasonable control, including, without limitation, acts or omissions or the failure to cooperate by the Company (including, without limitation, entities or individuals under its control, or any of their respective officers, directors, employees, other personnel and agents), acts or omissions or the failure to cooperate by any third party, fire or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.

9. **Limitation on Actions.** No action, regardless of form, relating to this engagement, may be brought by either party more than one year after the cause of action has accrued, except that an action for non-payment may be brought by a party not later than one year following the date of the last payment due to such party hereunder.

10. **Independent Contractor.** It is understood and agreed that each of the parties hereto is an independent contractor and that neither party is, nor shall be considered to be, an agent, distributor, partner, fiduciary or representative of the other. Neither party shall act or represent itself, directly or by implication, in any such capacity in respect of the other or in any manner assume or create any obligation on behalf of, or in the name of, the other.

11. **Confidentiality and Internal Use.**

a) The Company agrees that all services hereunder and Deliverables shall be solely for the Company's informational purposes and internal use, and are not intended to be and should not be used by any person or entity other than the Company. The Company further agrees that such services and Deliverables shall be used by the Company solely to assess the effectiveness of its customer service initiatives and customer service training programs, and shall not be circulated, quoted, disclosed, or distributed to, nor shall reference to such services or Deliverables be made to, any person or entity other than the Company.

b) To the extent that, in connection with this engagement, D&T comes into possession of any proprietary or confidential information of the Company, D&T will not disclose such information to any third party without the Company's consent, except (a) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional

4

**GRACE**

W. R. Grace & Co. - Conn.
Village Center Drive, Suite 210
Swedesboro, N.J. 08085

standards, or in connection with litigation pertaining hereto, or (B) to the extent such information (i) shall have otherwise become publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a disclosure by D&T in breach hereof, (ii) is disclosed by the Company to a third party without substantially the same restrictions as set forth herein, (iii) becomes available to D&T on a nonconfidential basis from a source other than the Company which D&T believes is not prohibited from disclosing such information to D&T by obligation to the Company, (iv) is known by D&T prior to its receipt from the Company without any obligation of confidentiality with respect thereto, or (v) is developed by D&T independently of any disclosures made by the Company to D&T of such information. In addition, the Company acknowledges and agrees that any such information that comes to the attention of D&T in the course of performing this engagement may be considered and used by D&T in the context of responding to its professional obligations as the independent accountants for the Company.

12. **Survival and Interpretation.** The agreements and undertakings of the Company contained in the engagement letter to which these terms are attached, together with the provisions of Paragraphs 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 and 16 hereof, shall survive the expiration or termination of this engagement. For purposes of these terms, "D&T" shall mean Deloitte & Touche LLP, Deloitte Consulting LLC, Deloitte Touche Tohmatsu, the member firms of Deloitte Touche Tohmatsu and their affiliates, all of their partners, principals, members, owners, directors, staff and agents, and in all cases any successor or assignee.

13. **Assignment.** Except as provided below, neither party may assign, transfer or delegate any of its rights or obligations hereunder (including, without limitation, interests or claims relating to this engagement) without the prior written consent of the other party. D&T may assign or subcontract its rights and obligations hereunder to any affiliate or related entity without the consent of the Company.

14. **Waiver of Jury Trial.** D&T AND THE COMPANY HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER IN CONTRACT, STATUTE, TORT (SUCH AS NEGLIGENCE), OR OTHERWISE) RELATING TO THIS ENGAGEMENT.

15. **Entire Agreement, Amendment and Notices.** These terms, and the engagement letter to which these terms are attached, including exhibits, constitute the entire agreement between D&T and the Company with respect to this engagement, supersede all other oral and written representations, understandings or agreements relating to this engagement, and may not be amended except by written agreement signed by the parties. In the event of any conflict, ambiguity, or inconsistency between these terms and the engagement letter to which these terms are attached, these terms shall govern and control. All notices hereunder shall be (i) in writing, (ii) delivered to the representatives of the parties at the addresses first set forth above, unless changed by either party by notice to the other party, and (iii) effective upon receipt.

**GRACE**

W. R. Grace & Co. - Conn.
Village Center Drive, Suite 210
Swedesboro, N.J. 08085
Tel: 856/467-2250
Fax: 856/467-4825

16. **Governing Law and Severability.** These terms, the engagement letter to which these terms are attached, including exhibits, and all matters relating to this engagement (whether in contract, statute, tort (such as negligence), or otherwise), shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof). If any provision of such terms or engagement letter is found by a court of competent jurisdiction to be unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the dates indicated above.

| W.R. GRACE & CO. - CONN | DELOITTE & TOUCHE LLP |
|---|---|
| Print Name: AKOS L. NAGY | Print Name: Joshua W. Leonard |
| Signature: *[signed]* | Signature: *[signed]* |
| Its: Director of Real Estate | Its: Partner |
| Date: April 15, 2002 | Date: 4/17/02 |
| Village Center Drive – Suite 210 | 350 South Grand Avenue |
| Swedesboro, N.J. 08085 | Los Angeles, California 90071-3462 |

6



EXHIBIT A

W. R. Grace & Co. - Conn.
Village Center Drive, Suite 210
Swedesboro, N.J. 08085
Tel: 856/467-2250
FAX: 856/467-4828

| Building Address | Subtenant/ Sub Subtenant Name |
|---|---|
| 41 W. 42nd St. or 1114 Sixth Avenue New York, N.Y. | Coudert Brothers |
| | Victoria's Secret |
| | TrizecHahn |
| | Salant Corp. |
| | Kronish Lieb |
| | Tahari |
| | Weiler Arnow Mgt |
| | Burke & Parsons |
| | Mullin & Assoc. |
| | Winterthur |
| | Garbarini, Scher & Decicco |
| | Norddeutsche Landesbank |
| | Comptroller of the Currency |
| | Cumberland Associates |
| | City University of New York |
| | Caithness Corp. |
| | Lipha Pharmaceuticals |
| | Audax |

The above list of subtenants and sub subtenants is subject to final determination by D&T that there exists no conflict(s) that in D&T's sole judgment would preclude its performance of the contemplated procedures with respect to any one or more of the above subtenants and sub subtenants.