IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., *et al.*, | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Hearing Date: October 25, 2004 at 12:00 p.m.** |
| | ) | **Objection Deadline: October 18, 2004 at 4:00 p.m.** |

## TOWN OF ACTON'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND FOR RELATED DETERMINATIONS

The Town of Acton, Massachusetts (the "Town") moves, to the extent necessary, pursuant to 11 U.S.C. §§105(a) and 362(d)(1), and Bankruptcy Rules 4001(a) and 9014, for an order granting the Town relief from stay to assess and bill W.R. Grace & Co. (the "Debtor") for Debtor's share of the final costs arising from construction of a sewer system that benefited Debtor's real property in the Town.[1] The Town's chief argument is that the "right to payment" for the final costs arose post-petition and, accordingly, the stay does not apply here. The Town's request for relief from stay is made in the alternative – and is implicated only if the Town's claim is deemed to have arisen pre-petition.

In support of this motion, the Town states as follows:

### BACKGROUND FACTS AND APPLICABLE STATE LAW

**A.     The Sewer Assessment By-Law**

1.     In April 1988, the Town adopted a Sewer Assessment By-Law ("By-Law") and amended that By-Law in October of 1998 and November of 1999. (A copy of the By-Law, as amended, is attached hereto as <u>Exhibit A</u>.) The By-Law established procedures for

---

[1] According to the Middlesex County (South) Registry of Deeds in Massachusetts, the property that is the subject of this motion is owned by W.R. Grace & Co. W.R. Grace & Co. – Conn. filed a Complaint in Massachusetts Superior Court (Civil Action No. 01-2209) against the Town alleging that W.R. Grace & Co. – Conn. owns the same six parcels. The Town seeks the relief set forth herein against the owners of those parcels.

470.001-5156.DOC

assessment of properties to be served by the new Middle Fort Pond Brook Sewer Project ("Sewer District").[2] The Sewer District was designed to establish and provide sewer service to portions of the Town not previously served by a public sewer. (Affidavit of John Murray, III, attached hereto as Exhibit C, at ¶ 2.)

2. At all times relevant to this motion, Debtor has owned at least six parcels of land located in the Sewer District. (*Id.* at ¶ 3.)

**B.     The Orders for Construction and Estimated Assessments**

3. In January 2001, the Town issued Orders for Construction of the sewer in the Sewer District pursuant to Massachusetts General Laws ("M.G.L."), c. 83.[3] (Exhibit C hereto, at ¶ 4.)

4. To pay for sewer construction, M.G.L. c. 83, § 15B and the By-Law provide for the Town to issue estimated and actual assessments of the real property that benefits from the construction.[4] The estimated assessments may be issued before or during construction, but the actual assessments may be issued only after the final costs of construction have been determined, as follows:

> A . . . town may assess and collect estimated sewer assessments in connection with the construction of water pollution collection, pumping, treatment and disposal facilities. The total amount of such estimated sewer assessments shall not exceed one-half of the municipality's liability under all contracts it has entered into for the construction of such facilities . . . .

---

[2] The By-Law has been upheld by the Massachusetts Superior Court after challenge by Debtor. (Exhibit B hereto.) Debtor's appeal of the trial court's judgment has been argued and is under advisement before the Massachusetts Appeals Court.

[3] One of the orders covers what is called in Massachusetts "registered" land, and the other covers "unregistered" land. The distinction is immaterial for purposes of this motion.

[4] The By-Law states: "The entire cost of laying out, constructing and operating a system for the collection, treatment and disposal of sewage for all or any part of the Town shall be borne by the land benefited by such system . . . ." (Exhibit A hereto, at ¶ 1.)

> When the final costs of construction of the facilities has been determined, the . . . town may assess and collect actual sewer assessments. . . .

M.G.L c. 83, § 15B.

5. Under M.G.L. c. 83, § 27, both the estimated and the actual sewer assessments constitute a lien on the assessed properties from and after the time the Town recorded the Orders for construction with the land registry. That statute provides in pertinent part:

> Whenever . . . the sewer commissioners . . . of a town lay out or determine to construct a sewer . . . in a public way . . . and assessments may be made or charges imposed under this chapter for the construction of such improvement or the use thereof, they shall forthwith cause to be recorded in the registry of deeds of the county or district in which such city or town is situated a statement of their action, which shall specify the ways in which such sewer . . . is located. *All assessments made or charges imposed under this chapter upon land which abuts upon any . . . way in which such sewer . . . is located shall constitute a lien upon such land from the time such statement is recorded* . . . .

*Id.* at § 27 (emphasis added).

6. The Town recorded the Orders approximately six weeks before the commencement of this case. (Exhibit C hereto, at ¶ 5.) The Town recorded the Order affecting four properties owned by Debtor in the Middlesex County (South) Registry of Deeds on February 14, 2001 at Book 32363, page 77 (copy attached hereto at Exhibit D). The Town filed the Order affecting two other properties in the Southern Middlesex Registry District of the Land Court on February 15, 2001, at Document Number 1162908 (copy attached hereto at Exhibit E).

7. Pursuant to the Orders, the Town made estimated assessments on hundreds of parcels in the Sewer District. (Exhibits D and E hereto.) The amount each parcel

was assessed was based on the formula set forth in M.G.L. c. 83, § 15,[5] and the By-Law.[6] Under these requirements, a single-family residence counts for one sewer betterment unit; and other types of properties are converted into sewer betterment units on the basis of "residential equivalents" using the formulas in the By-Law. The Massachusetts Superior Court has upheld the Town's formula for calculating such sewer betterment units over Debtor's challenge.[7] (Exhibit B hereto.)

8.  At the commencement of the sewer construction project, the Town issued estimated betterment assessments for all land in the Sewer District. (Exhibit C hereto, at ¶ 6.) Pursuant to M.G.L. c. 83, § 15B's 50% requirement, the Town issued estimated betterment assessments for the six parcels owned by Debtor. (Id.) In the aggregate, the estimated betterment for this land was $2.249 million. (Id.) (This land consists of 151.84 acres located in the Technology District under the Town's Zoning Bylaw. Debtor is the owner of 302.66 estimated sewer betterment units. (Id.))

9.  The Town offered all owners of property which were assigned estimated betterments, including the Debtor, the opportunity to pay the estimated assessments over 30 years. (Exhibit F hereto.) Debtor accepted this option in March 2001 and, in so doing, expressly

---

[5] Section 15 provides:

[A] uniform unit method shall be based upon sewerage construction costs divided among the total number of existing and potential sewer units to be served, after having proportioned the cost of special and general benefit facilities. Each sewer unit shall be equal to a single family residence. Potential sewer units shall be calculated on the basis of zoning then in effect. Existing and potential multifamily, commercial, industrial and semipublic uses shall be converted into sewer units on the basis of residential equivalents.

[6] Under Section 2 of the By-Law, the Sewer Commissioners "shall establish sewer assessment units" based on specific criteria for land used or zoned for single-family residential use (¶ i), multi-family residential use (¶ ii), business use (¶ iii), industrial use (¶ iv) and other purposes (¶ v). (Exhibit A hereto.)

[7] After commencing its Chapter 11 case in this Court, Debtor initiated a suit to challenge the By-Law in Massachusetts Superior Court. Debtor later attempted to remove its state-court challenge to the United States Bankruptcy Court for the District of Massachusetts. Judge Rosenthal remanded the matter to the Massachusetts Superior Court – Debtor's original choice of forum.

acknowledged that a lien would exist against the property for the unpaid portion of the total estimated assessment.[8] (*Id.*) This lien arises by operation of state law under M.G.L. 83, § 27,[9] which incorporates by reference M.G.L. c. 80, § 12.[10] As of the commencement of this case, Debtor had paid less than $30,000 of the amounts due under those agreements. (Exhibit C hereto, at ¶ 8.)

C.    **The Final Assessments**

10.    During the pendency of these cases, the Town continued and ultimately completed construction of the public sewer in the Sewer District. (*Id.* at ¶ 9.)

11.    In 2004, to arrive at its final construction costs for the sewer project, the Town settled litigation over contractor disputes (which were resolved on or about March 15, 2004), settled litigation over an environmental problem discovered during construction (by an Agreement for Judgment filed with the state court on July 7, 2004), and incurred some final project costs for various required construction activities, engineering costs and the like (the final amounts for which were liquidated by the Town on or about September 13, 2004). (*Id.* at ¶ 10.)

12.    On September 13, 2004, the Board of Selectmen, acting as Sewer Commissioners, voted to determine the amount of the *final* betterments for each of the parcels in the Sewer District, including the six parcels owned by Debtor. (Copies of these votes are

---

[8] While Debtor purported, in these agreements, to reserve the right to "contest the betterment" and that the "betterment was due," Debtor did not claim or reserve the right to argue that the betterment did not give rise to a first priority lien on the property.

[9] Section 27 provides, in relevant part:

> All assessments made or charges imposed under this chapter upon land which abuts upon any such way in which such sewer, drain or sidewalk is located shall constitute a lien upon such land from the time such statement is recorded and all charges authorized by section sixteen shall from the time of assessment constitute a lien upon the land connected with the common sewer. Liens under this section shall continue for the same period and under the same conditions as a lien established under chapter eighty.

[10] Section 12 governs the status and duration of the lien and provides, in part that "[a]ssessments made under this chapter shall constitute a lien upon the land assessed. The lien shall take effect upon the recording of the order stating that betterments are to be assessed for the improvement."

attached hereto as <u>Exhibits G</u> and <u>H</u>.) Under the applicable formula, the Town determined that Debtor's actual final betterment assessment for its six parcels of land in the Sewer District should be $3,691,692.38.[11]

13. Because of the pendency of Debtor's bankruptcy proceeding, the Town calculated these final betterment figures in manner that is specifically contingent upon action by this Court. (<u>Exhibit G</u> and <u>H</u> hereto.)

14. Pending action by this Court, the Town has not recorded the final betterments with the Registry, committed the final betterments to the Board of Assessors, or issued bills for the final assessments to any property owners in the Sewer District.[12] (<u>Exhibit C</u> hereto, at ¶ 13.) The reason for this is that the Sewer District is a self-funded area. (*Id.*) The construction costs (less other receipts referred to in note 11 *supra*) must be paid by the owners of the bettered land in the district on the basis of the applicable sewer betterment units. (*Id.*) Until the Town is certain that the Town can charge Debtor its fair share of these construction costs

---

[11] More specifically, the Town determined that there were 1369.19 sewer betterment units; that the final cost of construction was $25,086,136.21; that $1.336 million of design, planning, and construction costs would be paid by the Town without reimbursement through betterments; that $5.593 million would be paid by the Town and others in lieu of betterments for otherwise exempt public properties in the Sewer District; and that $1.166 million of costs to size the system for future capacity would not be borne by the bettered parties. (<u>Exhibit C</u> hereto, at ¶ 12.) As a result, the adjusted final cost of construction to be assessed is $16,990,347.79 and the charge per sewer betterment unit is $12,409.05 per unit (the adjusted final costs of construction divided by the total number of sewer betterment units). (*Id.*) The Town refined (in Debtor's favor) its number of sewer betterment units (297.5 final versus 302.66 estimated). (*Id.*) Because the final assessment reflects 100% of actual not 50% of estimated project construction costs, Debtor's final betterment amount ($3.692 million) is larger than its estimated amount ($2.249 million) which represented 50% of costs incurred at the date of issuance of the estimated betterments. (*Id.*) Because the Town effectuated a substantial savings in the "per sewer betterment unit charge," however, the actual final betterment assessment is less than twice the estimated assessment. (*Id.*) If Debtor were to disagree with the amount of the assessment, it could, like any other landowner in the Sewer District, seek an abatement. *See* M.G.L. c. 83, § 28 and M.G.L. c. 80, § 5.

[12] M.G.L. c. 80, Section 4, governing collection of betterment assessments provides:

Within a reasonable time after making the assessment the board shall certify to the assessors the list of assessments upon land in each town who shall forthwith commit such assessments with their warrant to the collector of taxes thereof, and he shall forthwith send notice in accordance, except as to the date of notice, with section three of chapter sixty, to the person designated under section one as the owner of each parcel assessed, and any demand for the payment of such assessment shall be made upon such person.

under the statutory and By-Law formula for calculating sewer betterment units, the Town is not in a position to charge other owners in the district either. (*Id.*) Thus, each owner's final assessment is interdependent on each other owner's final assessment. (*Id.*)

15.  While the Town believes that issuance of the final betterments and collection thereof does not violate the automatic stay, the Town, out of an abundance of caution pending further order of this Court, has refrained from certifying the assessments to the Town assessor. (*Id.* at ¶ 14.)

**D.  The Town's Debt Service Obligation**

16.  The Town has an immediate need for a determination as to the permissibility of issuance of the final betterments and the collection of the amounts due thereunder. (*Id.* at ¶ 15.) The reason is simple: The Town bonded the construction of the sewer project and the Town is obligated to pay the debt service on the bonds funded by the betterment proceeds and other receipts referred to in note 11 *supra*. (*Id.*) As noted above, M.G.L. c. 83, § 15B, allowed the Town to assess at most fifty percent of the costs of construction through estimated betterment assessments. (*Id.*) The Town was able to meet its debt service obligations during the construction phase of the project because some property owners prepaid estimated betterments rather than opting to pay them over time. (*Id.*) But these pre-payments are about to be exhausted and the estimated betterments issued by the Town yield an annual average revenue of only approximately $450,000 per year. (*Id.*) The other revenue sources referred to in note 11 *supra* amount to approximately $228,000 per year. (*Id.*) By contrast, the total average construction debt service is approximately $950,000 per year. (*Id.*) Thereby, leaving an annual deficit of approximately $272,000 per year. (*Id.*)

17. The Town's next two sewer construction debt service payments consisting of over $500,000 come due by March 1, 2005. (*Id.* at ¶ 16.)

18. The Town's need to service its bond debt requires immediate issuance to and collection from all members of the Sewer District of the amounts due under the final betterments. (*Id.* at ¶ 17.) Given both the magnitude of Debtor's final betterment assessment and the interdependence of all betterment assessments in the Sewer District, the Town needs to issue the bills to Debtor and all other property owners in the district and receive payment thereof to satisfy its bond obligations. (*Id.*)

19. If the Town is prevented or delayed from issuing these final betterments to Debtor and by extension to other landowners in the district, the Town faces, in a worst case analysis, the possibility of defaulting on its bonds for the Sewer District unless the Town can secure alternate sources of funding to cover the debt service on the bonds in a timely manner. (*Id.* at ¶ 18.) The Town, however, is limited by statute, M.G.L. c. 59, § 21C (known as "Massachusetts Proposition 2-1/2"), in its ability to raise taxes; and the Town has no appropriation in its balanced budget to fund the debt service obligation. (*Id.*)

20. Every landowner in the sewer district, including Debtor, may elect to pay the final betterment assessment over the remaining life of the bonds with interest at the favorable rate of 1.75% per year. (Exhibits G and H hereto.) This rate is calculated to meet the Town's debt service based on apportioned final betterments. (Exhibit C hereto, at ¶ 19.) As a result, every landowner's piece of the final betterment allocation, including Debtor's, is vital to meeting the Town's debt service obligation. (*Id.*)

## ARGUMENT

I. **The Town's assessment of and billing for the final betterments allocable to Debtor will not violate the automatic stay because the right to payment for final betterments arose post-petition, and the assessment could not occur until post-petition.**

A. *The automatic stay does not apply to claims arising post-petition.*

21. "Proceedings or claims arising postpetition are not subject to the automatic stay." *In re M. Frenville, Co.*, 744 F.2d 332, 335. (3d Cir. 1984). While the Code defines the word "claim" broadly, the term is not so broad as to vitiate section 101(5)'s requirement that there be a "right to payment." *Id.* at 336. The *Frenville* court, after noting that the statute "does not define when a right to payment arises," *id.* at 337, concluded that "while federal law controls which claims are cognizable under the Code, *the threshold question of when a right to payment arises*, absent overriding federal law, *is to be determined by reference to state law.*" *Id.* (emphasis added) (internal quotations and citation omitted). In other words, "a 'claim' arises for bankruptcy purposes at the same time the underlying state law cause of action accrues." *Jones v. Chemetron Corp.*, 212 F.3d 199, 206 (3d Cir. 2000) (affirming *Frenville* as "the law of this circuit"). As shown below, under the Massachusetts statute pursuant to which the Town would make the final assessments and bill Debtor, the Town's claim for the final assessments accrued *after* the commencement of Debtor's case.

B. *The Town's right to payment for the final betterments accrued post-petition.*

22. Massachusetts General Laws chapter 83 establishes the procedure by which municipalities may issue estimated and actual assessments of the real property benefiting from the construction of public sewers. Under section 15B of that chapter, estimated assessments may be issued before or during construction, but *actual* assessments may be issued only *after* the final costs of construction have been determined:

> A . . . town may assess and collect estimated sewer assessments in connection with the construction of water pollution collection, pumping, treatment and disposal facilities. The total amount of such estimated sewer assessments shall not exceed one-half of the municipality's liability under all contracts it has entered into for the construction of such facilities . . . .
>
> When the final costs of construction of the facilities has been determined, the . . . town may assess and collect actual sewer assessments. . . .

M.G.L c. 83, § 15B.

23. Critically, then, a town's right to payment for the amount of the actual assessments arises or accrues only *after* "the final costs of construction of the facilities has been determined." *Id.* Here, the final costs of construction of the Sewer District were not known until 2004 (Exhibit C hereto, at ¶ 10), three years *after* the April 2001 commencement of Debtor's bankruptcy case. Thus, the Town's right to payment, and its final assessment and effort to collect that assessment, will be on account of a claim that arose post-petition.

24. This conclusion is buttressed by the nature and timing of the Town's rights under chapter 83. Again, a "claim" must be a "right to payment." *Frenville*, 744 F.2d at 337. And "the plain meaning of a 'right to payment' is nothing more nor less than an enforceable obligation, regardless of the objectives the State seeks to serve in imposing the obligation." *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 559 (1990). Because the Town had not made – and could not have made – an assessment of the actual costs pre-petition, Debtor did not have, and could not have had, a pre-petition obligation to pay what would become the actual assessments. Moreover, if Debtor had sold the six parcels in the Sewer District at any time before the Town made the actual assessments, the subsequent purchaser, not Debtor, would have been responsible to the Town for payment of those assessments. *See Gudanowski v. Town of Northbridge*, 27 Mass. App. Ct. 1179, 1180, 541 N.E.2d 355, 357 (Mass. App. Ct. 1989) (the

assessment of sewer improvements is valid against subsequent purchasers if a town complies with M.G.L. c. 83, § 27); *see also Hester v. Collector of Taxes of Brockton*, 217 Mass. 422, 423, 105 N.E. 631, 631-32 (Mass. 1914) (purchaser who bought land after order for construction of sewer, but before the order for assessment, was liable for the assessment). It follows that because the actual assessments were not determined until 2004 (Exhibit C hereto, at ¶ 10), Debtor's enforceable obligations for those assessments could not have arisen before that date – a date more than three years post-petition.

**II. If the Court concludes that the Town's claim for the actual assessment arose pre-petition, the Court should grant the Town relief from stay to assess and bill the final betterments.**

25. Assuming *arguendo* that the actual assessments constitute a pre-petition claim, the Town is nevertheless entitled to relief from stay, under 11 U.S.C. § 362(d)(1), to assess and bill the final betterments. Relief from stay, according to the Code, shall be granted "for cause." 11 U.S.C. § 362(d)(1). Because this section does not define "cause," courts "consider what constitutes cause based on the totality of the circumstances in each particular case." *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997) (citing *In re Trident Assocs.*, 52 F.3d 127 (6th Cir. 1995)). Once a movant establishes a prima facie showing under section 362(d)(1), the burden of going forward and the ultimate burden of persuasion shifts to the debtor. 11 U.S.C. § 362(g); COLLIER ON BANKRUPTCY ¶ 362.10, at 362-117 (Alan N. Resnick et al. eds., 15th ed. 2004) (citing *In re Sonnax Indus, Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990)).

26. As shown in the next two sections of this motion, the Town is entitled to relief from stay for two reasons. First, the Town's claim for the actual assessment is secured. To the extent the Town is *over*secured, the Town is entitled to statutory interest on its claim – interest that, under state law, begins to run once the Town commits the assessments to the

Town's Collector of Taxes. Second, the Town stands to suffer significant harm if it is not permitted to make the final assessments and bill for them.

### A.  *The Town should be granted relief from stay to assess the final betterments to secure its right to interest thereon.*

*1.  The Town's claim for the final betterments is secured.*

27. "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Integrated Solutions, Inc. v. Serv. Support Specialties, Inc.*, 124 F.3d 487, 492 (3d Cir. 1997) (internal quotations and citation omitted). *See Equibank, N.A. v. Wheeling-Pittsburgh Steel Corp.*, 884 F.2d 80, 84 (3d Cir. 1989) ("The determination whether a property tax has become a lien is determined according to state law.").

28. Massachusetts law provides that "*All* assessments . . . imposed under this chapter [83]. . . upon land . . . shall constitute a lien upon such land from the time such statement is recorded . . . ." M.G.L. c. 83, § 27 (emphasis added).[13] In this case, the Town's lien arose when the Town recorded the Order for Construction with the land registry – an act the Town completed approximately six weeks pre-petition (Exhibit C hereto, at ¶ 5). That lien secures *all* assessments imposed under chapter 83, including the estimated *and* actual assessments under section 15B of that chapter. Because there is no federal interest requiring a different analysis in this case, the Town's pre-petition lien secures all Sewer District assessments.

---

[13] *See also* M.G.L. c. 80, § 12, governing the lien status of assessments and duration of the lien, which provides (emphasis added): "Assessments made under this chapter shall constitute a lien upon the land assessed. The lien shall take effect upon the recording of the order sating that betterments are to be assessed for the improvement.

2. *Under section 506(b), the Town is entitled to interest on its secured claim if it is oversecured.*

29. Under Massachusetts law, the Town is entitled to statutory interest if Debtor does not pay the bill for the sewer assessments within 30 days after the Town commits the assessments to the Town's Collector of Taxes. *See* M.G.L. c. 80, § 13. If Town's claim for the actual assessments is *over*secured, the Town is entitled to post-petition interest under Code section 506(b) on what the Court will have found to have been a pre-petition claim. *See U.S. v. Ron Pair Enterprises*, 489 U.S. 235, 237-38 (1989) (United States entitled to post-petition interest on its nonconsensual tax liens for unpaid withholding and social security taxes).[14] Because the stay does not extinguish or discharge a debt such as the actual assessment, *see Davenport*, 495 U.S. 552, 560 n.3 ("Although the automatic stay protects a debtor from various collection efforts over a specified period, it does not extinguish or discharge any debt."), and the Town's lien rides through bankruptcy absent orders entered in this case modifying that lien, *see Dewsnup v. Timm*, 502 U.S. 410, 416-418 (1992), the stay should not be continued so as to prevent the Town from making the actual assessments, verifying them to the assessor, committing them to the tax collector, or billing them to the Debtor.[15] Indeed, permitting the stay to prevent the accrual of post-petition interest would effectively and wrongly arguably discharge the interest portion of the Town's secured claim to the extent the Town is oversecured. *See Rake v. Wade*, 508 U.S. 464, 471 (1993) (interest is "part of the oversecured claim under § 506(b)").

---

[14] The issue of whether the Town is oversecured or undersecured is not before the Court at this time, and need not be determined to dispose of this motion.

[15] Under M.G.L. c. 80, § 3, assessments "shall bear interest . . . from the thirtieth day after the assessments have been committed to the collector." Accordingly, once the Town makes the assessment and delivers it to the assessor, interest will accrue on the actual assessment regardless of whether the Town completes the formality of sending the bill. M.G.L. c. 80, § 4, provides that within a "reasonable time after making the assessment, the board [of sewer commissioners] shall certify to the assessors the list of assessments . . . who shall forthwith commit such assessments . . . to the collector of taxes thereof. . . ." In turn, the collector "shall forthwith send notice in accordance . . . with section three of chapter sixty, to the person designated under section one as the owner of each parcel assessed, and any demand for payment of such assessment shall be made upon such person."

Thus, the Town should be granted relief from stay for cause to issue the actual assessments and bill Debtor therefor.

B. *The Town stands to suffer significant harm – including the possibility of defaulting on bonds issued to pay for construction of the Sewer District – if the Town is not permitted to assess and bill the final betterments.*

30. The Sewer District, as noted above, is a self-funded area. (Exhibit C hereto, at ¶ 13.) The construction costs must be paid by the owners of the bettered land on the basis of the applicable sewer betterment units. (*Id.*) Up to now, the Town has been making debt service payments on the sewer bonds using estimated betterment payments, including prepayments made by some property owners who opted to pay the estimated betterments up front rather than paying them over time. (*Id.* at ¶ 15.) These prepayments are about to be exhausted and the estimated betterments issued by the Town yield an annual average revenue of only approximately $450,000 per year. (*Id.*) The other revenue sources referred to in note 11 *supra* amount to approximately $228,000 per year. (*Id.*) By contrast, the total average construction debt service is approximately $950,000 per year. (*Id.*) Thereby, leaving an annual deficit of approximately $272,000 per year. (*Id.*)

31. The Town's next debt service payment of over $500,000 is due in March 2005. (*Id.* at ¶ 16.) The Town's need to service its bond debt requires immediate issuance to and collection from all members of the Sewer District of the amounts due under the final betterments. (*Id.* at ¶ 17.) Given both the magnitude of Debtor's final betterment assessment and the interdependence of all betterment assessments in the Sewer District, the Town needs to issue the bills to Debtor and all other property owners in the district and receive payment thereof to satisfy its bond obligations. (*Id.*) If the Town is stayed from assessing and issuing a bill to Debtor, it is, for practical purposes, stayed from assessing and issuing bills to

other members of the Sewer District. (*Id.* at ¶ 18.) This is because the Town will not know the amount for which it will be able to assess Debtor, and thus will not know the amount it should be assessing the other members of the Sewer District. (*Id.* at ¶ 13.)

32. In a worst case analysis, the Town faces the possibility of defaulting on its bonds for the Sewer District unless the Town can secure alternate sources of funding to cover the debt service on the bonds in a timely manner. (*Id.* at ¶ 18.) But the Town is limited by statute in its ability to raise taxes; and the Town has no appropriation in its balanced budget to fund the debt service obligation. (*Id.*) As a result, every landowner's piece of the final betterment allocation, including Debtor's, is important to meeting the debt service obligation. (*Id.* at ¶ 19.)

33. Because the harm to Debtor of making the assessment and issuing the bills is negligible, and the harm to the Town of continuing the stay to prevent same is significant, "cause" exists to grant relief from the stay.

## NOTICE

34. Notice of this motion has been given to the Office of the United States Trustee; counsel to Debtor; counsel to each Official Committee appointed by the United States Trustee; and those parties that requested papers under Bankruptcy Rule 2002. In light of the nature of the relief requested, the movants submit that no other or further notice need be given.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

## REQUEST FOR RELIEF

WHEREFORE, for the forgoing reasons, the Town respectfully asks the Court to enter an order:

(A) Determining that the assessment of the final betterments relating to Debtor's property in the Sewer District, the certification of those assessments to the Town assessors, the commitment of those assessments to the Town tax collector, and the issuance of bills to Debtor in connection with those assessments, are not subject to the automatic stay; and

(B) Granting the Town such other relief as may be appropriate and just.

In the alternative, the Town respectfully asks the Court to enter an order:

(A) Finding that the Town's pre-petition lien on Debtor's property secures both the actual and estimated assessments;

(B) Granting the Town relief from the automatic stay for "cause" to make the actual assessments, to certify them to the assessors, to commit them to the tax collector, and to issue bills to Debtor thereon; and

(C) Granting the Town such other relief as may be appropriate and just.

Dated: October 6, 2004

LANDIS RATH & COBB LLP

*/s/ Adam G. Landis/*

Adam G. Landis (No. 3407)
Megan N. Harper (No. 4103)
919 Market Street, Suite 600
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Fax: (302) 467-4450

-and-

Thomas O. Bean
Eric P. Magnuson
NUTTER, MCCLENNEN & FISH, LLP
World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210-2604
Telephone: (617) 439-2000

Counsel for the Town of Acton, Massachusetts