# EXHIBIT C

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | ) CHAPTER 11 |
| | ) |
| W.R. GRACE & CO., ET AL., | ) CASE NO. 01-01139 (JFK) |
| | ) JOINTLY ADMINISTERED |
| DEBTORS. | ) |
| | ) |

### AFFIDAVIT OF JOHN MURRAY, III

1. I am the Assistant Town Manager, the Treasurer, and the Tax Collector for the Town of Acton, Massachusetts ("Town"). In addition to assisting the Town Manager and the Board of Selectmen, as well as other Town Boards and officials, in the management of the Town's affairs, my responsibilities as Town Treasurer include the sound management of the Town's fiscal affairs in accordance with applicable provisions of the Massachusetts General Laws, and my responsibilities as Tax Collector include the collection of taxes and betterment assessments owed to the Town. In these capacities, I have been personally involved in making sure that the Town has the ability to meet its funding and debt service obligations for the Middle Fort Pond Brook Sewer Project ("Sewer District"). I am familiar with the financing of the Sewer District and make this affidavit upon personal knowledge and records within my official custody and control.

2. In April 1988, the Town adopted a Sewer Assessment By-Law ("By-Law") and amended that By-Law in October of 1998 and November of 1999. The By-Law established procedures for assessment of properties to be served by the new Middle Fort Pond Brook Sewer

Project ("Sewer District"). The Sewer District was designed to establish and provide sewer service to portions of the Town not previously served by a public sewer.

3. Upon information and belief, since before October 1998, W.R. Grace & Co. (the "Debtor") has owned at least six parcels of land located in the Sewer District.

4. In January 2001, the Town issued Orders for Construction of the sewer in the Sewer District ("Orders").

5. The Town recorded the Orders approximately six weeks before the commencement of Debtor's chapter 11 case, filed in the United States Bankruptcy Court for the District of Delaware.

6. At the commencement of the sewer construction project, the Town issued estimated betterment assessments for all land in the Sewer District. The Town issued estimated betterment assessments for the six parcels owned by Debtor. In the aggregate, the estimated betterment for this land was $2.249 million. (This land consists of 151.84 acres located in the Technology District under the Town's Zoning Bylaw. Debtor is the owner of 302.66 estimated sewer betterment units.)

7. The Town offered all owners of property which were assigned estimated betterments, including the Debtor, the opportunity to pay the estimated assessments over thirty years.

8. As of the commencement of Debtor's chapter 11 case, Debtor had paid less than $30,000 of the amounts due under those agreements,

9. During the pendency of Debtor's cases, the Town continued and ultimately completed construction of the public sewer in the Sewer District.

10.     In 2004, to arrive at its final construction costs for the sewer project, the Town settled litigation over contractor disputes (which were resolved on or about March 15, 2004), settled litigation over an environmental problem discovered during construction (by an Agreement for Judgment filed with the state court on July 7, 2004), and incurred some final project costs for various required construction activities, engineering costs and the like (the final amounts for which were liquidated by the Town on or about September 13, 2004).

11.     On September 13, 2004, the Board of Selectmen, acting as Sewer Commissioners, voted to determine the amount of the final betterments for each of the parcels in the Sewer District, including the six parcels owned by Debtor. Under the applicable formula, the Town determined that Debtor's actual final betterment assessment for its six parcels of land in the Sewer District should be $3,691,692.38.

12.     More specifically, the Town determined that there were 1369.19 sewer betterment units; that the final cost of construction was $25,086,136.21; that $1.336 million of design, planning, and construction costs would be paid by the Town without reimbursement through betterments; that $5.593 million would be paid by the Town and others in lieu of betterments for otherwise exempt public properties in the Sewer District; and that $1.166 million of costs to size the system for future capacity would not be borne by the bettered parties. As a result, the adjusted final cost of construction to be assessed is $16,990,347.79 and the charge per sewer betterment unit is $12,409.05 per unit (the adjusted final costs of construction divided by the total number of sewer betterment units). The Town refined (in Debtor's favor) its number of sewer betterment units (297.5 final versus 302.66 estimated). Because the final assessment reflects 100% of actual not 50% of estimated project construction costs, Debtor's final betterment amount ($3.692 million) is larger than its estimated amount ($2.249 million) which

represented 50% of costs incurred at the date of issuance of the estimated betterments. Because the Town effectuated a substantial savings in the "per sewer betterment unit charge," however, the actual final betterment assessment is less than twice the estimated assessment.

13. Pending action by this Court, the Town has not recorded the final betterments with the Registry, committed the final betterments to the Board of Assessors, or issued bills for the final assessments to any property owners in the Sewer District. The reason for this is that the Sewer District is a self-funded area. The construction costs less other receipts noted in paragraph 12 must be paid by the owners of the bettered land in the district on the basis of the applicable sewer betterment units. Until the Town is certain that the Town can charge Debtor its fair share of these construction costs under the statutory and By-Law formula for calculating sewer betterment units, the Town is not in a position to charge other owners in the district either. Thus, each owner's final assessment is interdependent on each other owner's final assessment.

14. While the Town believes that issuance of the final betterments and collection thereof does not violate the automatic stay, the Town, out of an abundance of caution pending further order of this Court, has refrained from certifying the assessments to the Town assessor.

15. The Town has an immediate need for a determination as to the permissibility of issuance of the final betterments and the collection of the amounts due thereunder. The reason is simple: The Town bonded the construction of the sewer project and the Town is obligated to pay the debt service on the bonds funded by the betterment proceeds and other receipts noted in paragraph 12. As noted above, M.G.L. c. 83, § 15B, allowed the Town to assess at most fifty percent of the costs of construction through estimated betterment assessments. The Town was able to meet its debt service obligations during the construction phase of the project because some property owners prepaid estimated betterments rather than opting to pay them over time.

But these pre-payments are about to be exhausted and the estimated betterments issued by the Town yield an annual average revenue of only approximately $450,000 per year. The other revenue sources noted in paragraph 12 amount to approximately $228,000 per year. By contrast, the total average construction debt service is approximately $950,000 per year; thereby, leaving an annual deficit of approximately $272,000 per year.

16. The Town's next two sewer construction debt service payments consisting of over $500,000 come due by March 1, 2005.

17. The Town's need to service its bond debt requires immediate issuance to and collection from all members of the Sewer District of the amounts due under the final betterments. Given both the magnitude of Debtor's final betterment assessment and the interdependence of all betterment assessments in the Sewer District, the Town needs to issue the bills to Debtor and all other property owners in the district and receive payment thereof to satisfy its bond obligations.

18. If the Town is prevented or delayed from issuing these final betterments to Debtor and by extension to other landowners in the district, the Town faces, in a worst case analysis, the possibility of defaulting on its bonds for the Sewer District unless the Town can secure alternate sources of funding to cover the debt service on the bonds in a timely manner. The Town, however, is limited by statute, M.G.L. c. 59, § 21C (known as "Massachusetts Proposition 2-1/2"), in its ability to raise taxes; and the Town has no appropriation in its balanced budget to fund the debt service obligation.

19. Every landowner in the sewer district, including Debtor, may elect to pay the final betterment assessment over the remaining life of the bonds at the favorable interest rate of 1.75 % per year. This rate is calculated to meet the Town's debt service based on apportioned final

betterments. As a result, every landowner's piece of the final betterment allocation, including Debtor's, is vital to meeting the Town's debt service obligation.

SIGNED UNDER PENALTIES OF PERJURY THIS 5TH DAY OF OCTOBER, 2004.

*/s/ John Murray, III*
John Murray, III

**JURAT**

COMMONWEALTH OF MASSACHUSETTS
COUNT OF MIDDLESEX

On this 5 day of October, 2004, before me, the undersigned Notary Public, personally appeared the foregoing John Murray, III, proved to me through satisfactory evidence of identification, which was __known to me__, to be the person whose name is signed on the preceding document, and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of his knowledge and belief.

*/s/ Christene M. Joyce* (official signature and seal of notary)
My commission expires Sept 26, 2008

1367461.1