IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**Objection Deadline: October 29, 2004 at 4 p.m. EST**
**Hearing Date: November 15, 2004 at 12:00 p.m. EST**

## DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN A LEASE AND SUBLEASE FOR CERTAIN REAL PROPERTY IN YORK, PA

The above-captioned debtors and debtors in possession (collectively, the

"Debtors") hereby move this Court (the "Motion") for the entry of an Order authorizing the

Debtors to assume and assign a lease and sublease for real property. The relief requested in this

Motion is in the best-interest of the Debtors, their estates, their creditors, and all other parties in-

interest because it would allow the Debtors to: (i) immediately recover the discounted present

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food >N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

value of the Debtors' interest in the prime lease and sublease, and (ii) relieve themselves of the administrative burdens and risks associated with maintaining the lease and sublease. In support of this Motion, the Debtors respectfully state as follows:

### Jurisdiction

1.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      The statutory basis for the relief requested herein are sections 105(a), 363(b), 365(a), and 365(f)(2) of title 11 of the United States Code (the "Bankruptcy Code").

### Background

3.      On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4.      On May 24, 1979, W.R. Grace & Co. -Conn., a Debtor in the Chapter 11 Cases, entered into a lease with West York Associates (as amended, the "Prime Lease"), by which West York Associates leased W.R. Grace & Co- Conn. (then known as W.R. Grace & Co. and herein referred to as "Grace") certain property having the street address of 1201 Carlisle Road, York, Pennsylvania (the "Premises"). MAF Ventures, LP ("MAF") is the successor-in-interest to West York Associates with respect to the Prime Lease.

5.      On May 24, 1979, pursuant to an agreement and sublease (the "Internal Grace Sublease"), Grace subleased the Premises to Grace Retail Corporation.

2

6.      On November 26, 1986, pursuant to an assignment and assumption of the Internal Grace Sublease, Channel Home Centers Realty Corporation ("Channel") became the successor-in-interest to Grace Retail Corporation.

7.      On August 20, 1990, pursuant to an agreement of sublease (the "Sublease"), between Channel and Ollie's Bargain Outlet, Inc. ("Ollie's"), Channel further subleased the Premises to Ollie's.

8.      Channel subsequently filed for bankruptcy and, pursuant to an order of court dated March 18, 1992, Grace became the successor-in-interest to Channel, thereby causing the Internal Grace Sublease to be extinguished by the merger of estates.

9.      The ultimate effect of the foregoing transactions is that (i) MAF is the owner and prime landlord of the Premises, (ii) Grace is MAF's tenant under the Prime Lease, and (iii) Ollie's is Grace's subtenant under the Sublease.

10.     On September 29, 2004, Grace and MAF entered into the Assignment and Assumption Agreement (a copy of which is attached as Exhibit A), by which: (i) Grace would assign MAF all of Grace's rights and interests related to the Prime Lease and Sublease and (ii) MAF would accept Grace's assignment and would also assume all of Grace's obligations under the Prime Lease and the Sublease.

11.     The consideration payable to the Debtors under the Assignment and Assumption Agreement would be $100,000.00, which represents the net present value of the profit to Grace over the remaining term of the Prime Lease and Sublease, assuming all renewal

3

options were to be exercised.[2] The first renewal option under each of the Prime Lease and the

Sublease was recently exercised, extending the term of each through January 31, 2010. Each

party now has three (3) further renewal options, of five (5) years each, extending the term, if all

were to be exercised, to January 31, 2025.

### Relief Requested

12.     Pursuant to sections 105(a), 363(b), 365(a), and 365(f) of the Bankruptcy

Code, the Debtors request approval to enter into the Assignment and Assumption Agreement, by

which the Debtors would: (i) assume the Prime Lease and the Sublease and (ii) assign all of the

Debtors' rights and obligations under the Prime Lease and Sublease to MAF (collectively, the

"Requested Relief").

### Basis for the Requested Relief

13.     Section 365(a) of the Bankruptcy Code provides that a debtor in

possession, "subject to the court's approval, may ... reject any executory contract or unexpired

lease of the debtor." 11 U.S.C. § 365(a). The "business judgment" standard is applied to

determine whether the rejection or assumption of an executory contract or unexpired lease

should be authorized. See NLRB v. Bildisco & Bildisco, 465 U.S. 513, 524 (1984); see In re

Taylor, 913 F.2d 102 (3d Cir. 1990); Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp. (In re

Sharon Steel Corp.), 872 F.2d 36 (3d. Cir. 1989). Accordingly, assumption or rejection of any

executory contract is appropriate where the assumption or rejection would benefit the estate. Id

at 40. This standard is satisfied when a debtor has made a business determination that

---

[2] Using a discount rate of approximately 10%, which is reasonable given (i) the weak status of
the retail rental-market in the York, PA area (ii) the risk of default by Ollie's.

assumption or rejection would benefit the estate.  See Commercial Fin. Ltd. v. Hawaii

Dimensions, Inc. (In re Hawaii Dimensions, Inc.), 47 B.R. 425, 427 (Bankr. D. Haw. 1985).

14.    Section 363(b)(1) of the Bankruptcy Code provides that a debtor in

possession, "after notice and hearing may use, sell, or lease, other than in the ordinary course of

business, property of the estate."  11 U.S.C. § 363(b)(1).

15.    Section 365(f)(2) of the Bankruptcy Code sets forth the following

prerequisites for the assignment of a lease: (i) the lease must be assumed in accordance with

section 365 and (ii) the assignee of the lease must provide adequate assurance of future

performance.  11 U.S.C. 365(f)(2).  It is also well-established that the decision to assume and

assign an executory contract or lease is also a matter within the "business judgment" of the

debtor.  See In re Taylor, 913 F.2d 36.

16.    Therefore, if the Debtors' business judgment has been reasonably

exercised, and the Debtors can establish adequate assurance of future performance on the part of

MAF, then the Court should grant the Requested Relief.  See, e.g., NLRB v. Bildisco & Bildisco,

465 U.S. at 523; Group of Institutional Investors v. Chicago M. St. P. & P.R.R. Co., 318 U.S.

523 (1943); Sharon Steel Corp., 872 F.2d at 39-40.

### Argument

17.    The Debtors, in their business judgment, have determined that the

Requested Relief is in the best interest of the Debtors' estates.  The Debtors do not use the

Premises, and the Premises are not necessary for the Debtors' reorganization efforts.  Instead, the

Debtors serve merely as a "middle-man" by (i) leasing the Premises from MAF and

simultaneously (ii) subleasing the premises to Ollie's.  The Requested Relief would also allow

the Debtors to relieve themselves from the administrative burdens and financial risks associated

with serving as the "middle-man" in this structure, while recouping the present value of the

differential between (i) the amounts they are owed from Ollie's over the remainder of the

Sublease and (ii) the amounts they owe MAF over the remaining term of the Prime Lease.

18.    The second requirement is also satisfied. If the Court grants the

Requested Relief, then the only affect would be that Grace would no longer serve as an

intermediary between MAF and Ollie's. Since (i) Grace's obligations with respect to Ollie's

only relate to making Premises available and suitable for occupation and (ii) MAF is already

primarily responsible for these same obligations, the Requested Relief would not materially alter

Ollie's interest with respect to the Premises. Further, the Debtors are not aware of any

information that suggests MAF will not be able to subsequently satisfy its obligation under the

Prime Lease or Sublease.

## Conclusion

19.    The Requested Relief is in the best interest of the Debtors, their creditors

and estates. As described above, the assignment of the Prime Lease and Sublease would allow

the Debtors to: (i) immediately receive $100,000, which represents the net present-value of their

interest in the Prime Lease and Sublease, and (ii) relieve themselves of the administrative

burdens and risks associated with maintaining the Prime Lease, Sublease and the Premises.

## Notice

20.    Notice of this Motion has been given to: (i) the United States Trustee,

(ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the

Debtors' prepetition lenders, (iv) counsel to all official committees appointed by the United

States Trustee, (v) Ollie's (vi) MAF, and (vi) and all those parties that requested service and

notice of papers in accordance with Fed. R. Bankr. P. 2002.  In light of the nature of the relief

requested, the Debtors submit that no further notice is required.

## No Prior Relief

      21.    No previous application for the relief sought herein has been made to this

or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, (i) approving the assumption and assignment of the Debtors' rights and obligations under the Lease and Sublease to MAF, pursuant to the terms of the Assignment and Assumption Agreement and (ii) granting such other and further relief as is just and proper.

Dated: October **8**, 2004

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Samuel L. Blatnick
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG JONES
& WEINTRAUB PC

Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and
Debtors in Possession