## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & Co., et al., | ) Case No. 01-1139 (JFK) |
| | ) (Jointly Administered) |
| Debtors. | ) |

## AFFIDAVIT OF ELYSE FILON IN SUPPORT OF THE DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN INTERIM ORDER PURSUANT SECTIONS 105(a), 362(a)(3) AND 541 OF THE BANKRUPTCY CODE (A) LIMITING CERTAIN TRANSFERS OF EQUITY SECURITIES OF THE DEBTORS AND (B) APPROVING RELATED NOTICE PROCEDURES

State of Florida)
                    ss.
County of Palm Beach)

Elyse Filon, being duly sworn, hereby deposes and says:

1.      I am the Vice President Finance for W.R. Grace & Co. ("Grace," and, together with its affiliated debtors, as debtors and debtors in possession, the "Debtors"). In that capacity, I am familiar with the Debtors' businesses and tax affairs. I submit this affidavit in support of the Debtors' Motion, dated October 20, 2004 (the "Motion"), for an order pursuant to section 105(a) and 362 of title 11 of the United States Code (the "Bankruptcy Code") establishing notification procedures and approving restrictions on certain transfers of equity securities of Grace.

2.      Except as otherwise indicated, all facts set forth in this affidavit are based upon personal knowledge, my review of relevant documents, discussions with appropriate personnel, advice of tax counsel, or my opinion based upon experience, knowledge, and information about the operations of the Debtors. If called upon to testify, I would testify competently to the facts set forth in this affidavit on personal knowledge. The facts set forth in

documents would come from business records made in the ordinary course and contemporaneously with the business activity recorded. Unless otherwise indicated, the financial information contained herein is unaudited and provided on a consolidated basis for the Debtors. I have reviewed the Motion and am fully familiar with it.

3.     On their federal income tax return for the period ending December 31, 2003, the Debtors reported consolidated net operating loss ("NOL") carryforwards of approximately $348 million for U.S. federal income tax purposes.[1] The NOL carryforwards would significantly reduce the Debtors' future federal income tax liability, depending on future operating results of the Debtors and on potential asset dispositions, and absent any intervening limitations. Because we do not anticipate any material amount of cancellation of debt income, the Debtors' remaining NOL carryforwards should translate into substantial future tax savings over time both before and after our bankruptcy reorganization. These savings would enhance the Debtors' cash position for the benefit of all parties in interest and significantly contribute to the Debtors' efforts toward a successful reorganization.

4.     Under section 382 of the Internal Revenue Code ("Section 382"), the Debtors' ability to use their NOL carryforwards could be significantly reduced if the Debtors were to undergo an ownership change within the meaning of that section before emergence from chapter 11. Thus, a significant asset of the Debtors would be diminished or lost if the Debtors' NOL carryforwards were subject to limitation under Section 382 in advance of the effective date of a confirmed chapter 11 plan.

---

[1] Approximately one-third of these NOLs are currently subject to challenge by the Internal Revenue Service.

5.      In general, an ownership change of the Debtors would occur for purposes of Section 382 if and when a more than fifty percentage point change in the stock ownership of the Debtors occurs (ignoring trading among less than 5% shareholders) measured over any three-year period. The Debtors estimate that, based on currently available information, as of the date hereof, changes in ownership for purposes of Section 382 in the range of approximately 20% or greater have occurred within the prior three-year period. In addition, the Debtors are aware that one entity holds approximately 16% of the equity securities of Grace. Under Section 382, any sales of Grace's equity securities by this entity would contribute to an ownership change, even if the purchaser acquired less than 5% of the outstanding shares. A sale of all of Grace's equity securities currently held by this entity could cause Grace's level of ownership change to increase to approximately 36%.

6.      The ability of the Debtors to use their NOL carryforwards prior to and following their emergence from chapter 11 will depend, in significant part, on the Debtors' ability to avoid an ownership change under Section 382 during the pendency of the Debtors' Chapter 11 cases.

7.      Accordingly, the Debtors need to preclude certain transfers, and monitor and possibly object to other changes in the ownership of stock to protect of their estates.

3

*Elyse Filon*

Elyse Filon
Vice President Finance
W.R. Grace & Co.

*     *     *     *     *

Signed and sworn before me this __19__ day of __October__ , 2004.

*Marilyn J Narducci*
Notary

Marilyn J. Narducci
MY COMMISSION # DD189605 EXPIRES
May 24, 2007
BONDED THRU TROY FAIN INSURANCE, INC.

4