IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------x
In re:                                  :
                                        :     Chapter 11
W.R. GRACE & CO., et al.,¹              :
                                        :     Case Nos. 01-1139 (JKF)
                                        :     (Jointly Administered)
                                        :
                      Debtors.          :     Related to Docket No. 6641
-------------------------------------------------------x     Hearing Date:  October 25, 2004
```

**OBJECTION OF ELLIOTT INTERNATIONAL, L.P. TO DEBTORS' MOTION
FOR ENTRY OF AN ORDER EXTENDING THE TIME
WITHIN WHICH THE DEBTORS MUST FILE A CHAPTER 11 PLAN**

TO THE HONORABLE JUDITH K. FITZGERALD,
UNITED STATES BANKRUPTCY JUDGE:

        Elliott International, L.P. ("Elliott"), as and for its objection (the "Objection") to the Debtors' Motion for Entry of an Order Extending the Time Within Which the Debtors Must File a Chapter 11 Plan (the "Motion"), which seeks an order

---

[1] The Debtors consist of the following 62 entities:  W.R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food, N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.R. Grace Capital Corporation, W.R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

extending the time for the Debtors to file a chapter 11 plan through and including November 15, 2004, respectfully represents:

## Background

1. Elliott is a significant holder of the Debtors' common stock.

2. On May 27, 2004, Senior Judge Ronald L. Buckwalter was designated and assigned to sit on the United States District Court for the District of Delaware in the W.R. Grace chapter 11 cases, which was previously assigned to Judge Wolin. Accordingly, Judge Buckwalter ordered the Debtors, the Asbestos Personal Injury Creditors Committee (the "ACC"), the Asbestos Property Damage Committee (the "APDC"), the Official Committee of Unsecured Creditors, the Official Committee of Equity Holders, the Zonolite Attic Insulation Claimants, and the Libby Claimants to submit status reports pursuant to an order entered on June 8, 2004 (the "Status Report Order").

3. On June 16, 2004, pursuant to section 1121(d) of title 11, United States Code (the "Bankruptcy Code"), the Court entered an order extending the exclusive period within which the Debtors could file a chapter 11 plan through and including November 24, 2004 (the "Exclusivity Order"). Notwithstanding the foregoing, the Exclusivity Order required the Debtors to file a chapter 11 plan no later than 120 days after the date of the order, which was on or before October 14, 2004.

4. On June 21, 2004, the Debtors filed with the Court a status report (the "Status Report") in accordance with the Status Report Order. This report outlined two options for addressing the asbestos personal injury claims. The first option envisioned a consensual plan that resolved all the critical common issues raised by the pending

personal injury claims preconfirmation. The second option would cram down the asbestos personal injury claimants and provide for the resolution of their claims following plan confirmation pursuant to a personal injury trust. The Status Report indicated the Debtors were prepared to proceed down either path and acknowledged the Exclusivity Order requiring the Debtors to file a chapter 11 plan no later than October 14, 2004.

5. On October 14, 2004, the Debtors filed the Motion seeking an extension of thirty (30) days, through and including November 15, 2004, to file a chapter 11 plan. The Debtors consulted neither the Official Committee of Unsecured Creditors nor the Official Committee of Equity Holders prior to seeking this extension.

### Objection

6. Elliott submits the Motion should be denied and respectfully requests the Court order the Debtors to file their chapter 11 plan and disclosure statement forthwith.

7. A debtor seeking to extend its exclusive period bears the burden of proving there is cause for such extension. *See* 11 U.S.C. § 1121(d) ("On request of a party in interest . . . the court may for cause reduce or increase the 120-day period . . . ."); *In re Curry Corp.,* 148 B.R. 754, 756 (Bankr. S.D.N.Y. 1992) ("The debtor must make a clear showing of 'cause' to support an extension of the exclusivity period."); *In re Nicolet, Inc.,* 80 B.R. 733, 740-41 (Bankr. E.D. Pa. 1987) ("[A]n extension of the time-periods set forth in 11 U.S.C. § 1121(d) is not to be granted unless the debtor moving for such an extension makes a *showing of cause* therefor.") (emphasis in original).

8. The Debtors' basis for relief is a conclusory representation that progress has been made between the ACC, APDC, and the Debtors in connection with negotiating a consensual chapter 11 plan and that requiring the Debtors to file a chapter

11 plan immediately will only hinder the settlement process.  Conspicuously absent is any suggestion that the official committees that represent the interests of commercial creditors and equity holders are satisfied that real progress has been made or feel that the progress, if any, justifies further delay in the filing of the Debtors' plan.

9. It is important that the Debtors file their chapter 11 plan immediately to ensure they maintain the proper leverage in negotiating a consensual plan that allocates value to all creditors on an equitable basis.  Given that the past several months have failed to produce a consensual plan, Elliott submits a deal is more likely to be achieved if the Debtors do what they stated they would do in their Status Report – file a plan that could be confirmed over the objection of the holders of asbestos tort claims.  This step would ensure the individual tort claims are disposed of on an arm's-length basis and enable the Debtors to file objections to such claims immediately.  These actions would not preclude negotiations; on the contrary, they would enhance the likelihood that the tort claimants will be reasonable and thereby facilitate settlement.  At the end of the day, the tort claimants either are or are not willing to settle at an acceptable level.  If they are willing to do so, then surely their willingness will not disappear simply because the Debtors have taken the very action they have said all along they would take if a deal was not reached by October 14 – file a nonconsensual plan.  It simply is not credible that the ACC would "take its marbles home" if the Debtors filed their plan after months of trying unsuccessfully to achieve a deal.

10. At its core, the purpose of exclusivity is to ensure the debtor can file a reorganization plan without creditors filing liquidation plans that can become self-fulfilling prophesies if customers, lenders, and employees start to fear liquidation.  That

concern does not exist here. No one is promoting liquidation, and there's no reason for anyone to do so. Therefore, the best possible scenario to cause the Debtors and the asbestos plaintiffs to agree to a deal fair to other creditors is to allow other creditors and shareholders to propose competing plans that are fair. This case will benefit most from a termination of exclusivity so all plans can be considered simultaneously.

        11.    Filing objections to asbestos tort claims at this point will also provide greater transparency within these chapter 11 cases. There is increasing evidence that asbestos litigation across the United States entails rampant fraud. If the ACC is indeed asserting a grossly inflated estimate of asbestos personal injury claims, it would be almost impossible for this estimate to be challenged in the event the Debtors negotiate a plan with the ACC behind closed doors. Any effort on the part of the ACC to forestall a rigorous, transparent challenge to the tort claims – such as by supporting the Motion – must surely result from its hope that it will be able to do far better with the Debtors behind closed doors than would be appropriate if the Debtors' challenges to the tort claims were out in the open. We respectfully submit that this Court should regard with much suspicion the ACC's attempts to delay the Debtors' challenges when months of negotiations have produced at best modest, 11th hour concessions. The strong inference should be drawn that the ACC is well aware of the infirmities of their position, and are trying very hard to avoid their scrutiny in this case.

12.  Finally, even if a settlement with the ACC is not ultimately reached, the sooner the plan and estimation processes are addressed, the sooner the Debtors can emerge from chapter 11.

WHEREFORE   Elliott respectfully requests that the Court (1) deny the Motion, (2) require the Debtors to file a plan in accordance with the Status Report and the Exclusivity Order, and (3) grant Elliott such other and further relief as is just.

Dated:  October 20, 2004   Respectfully submitted,
SMITH KATZENSTEIN & FURLOW LLP


/s/ Etta R. Wolfe
Etta R. Wolfe (ID No. 4164)
800 Delaware Avenue, P.O. Box 410
Wilmington, Delaware  19899
Phone: (302) 652-8400
Facsimile: (302) 652-8405

WEIL, GOTSHAL & MANGES LLP
Martin J. Bienenstock
John J. Rapisardi
767 Fifth Avenue
New York, NY  10153

Attorneys for Elliot International, L.P.