# Exhibit B

Deloitte & Touche LLP
Suite 350
555 12th Street, N.W.
Washington, DC 20004-1207

Tel (202) 879 5600
Fax (202) 879 5309
www.us.deloitte.com

**Deloitte & Touche**

April 8, 2003

Ms. Elyse Napoli Filon
Vice President – Tax, Risk Management &
Strategic Planning
W.R. Grace & Co.
5400 Broken Sound Boulevard, N.W.
Boca Raton, FL 33487

Dear Elyse:

In accordance with our recent conversation, this letter is to confirm that W.R. Grace & Co. (the "Company" or "Grace" or the "Client") has requested that Deloitte & Touche LLP ("D&T") consult with the Company on tax issues during your calendar year, ended December 31, 2003 including certain transactions that may close subsequent to December 31, 2003. Subject to the following paragraph, the tax professionals of D&T will be available to provide consultation and assistance on federal, foreign, state and local tax matters ("tax assistance") on an as requested by Grace and as agreed to by D&T. Tax assistance is anticipated to include but not be limited to consultation on issues related to taxation of corporate income including advising on transactions such as sales, liquidations, and reorganizations of assets and legal entities as well as general consulting regarding deductibility of expenses, consolidated income tax returns, IRS procedures and other corporate tax matters. In addition, tax assistance is anticipated to include but not limited consulting relating to transactions involving international transactions and Grace's non-U.S. affiliates including subpart F income, foreign tax taxes and utilization of foreign tax credits, withholding taxes, transfer pricing and issues associated with deconsolidation. The purpose of this letter is to establish the terms and conditions that will apply to all tax assistance that is provided pursuant to this engagement.

On April 2, 2002, Grace filed in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. As a result, Grace is now operating as Debtor-in-Possession. Grace has requested that D&T perform the tax consulting services described herein and D&T has agreed to perform such services, subject to the terms and conditions of this engagement letter.

This engagement letter, and D&T's obligations and responsibilities relating to this engagement, shall be effective as of February 4, 2003 subject to obtaining Bankruptcy

Deloitte
Touche
Tohmatsu

Ms. Elyse Napoli Filon
April 1, 2003
Page 2 of 8

Court approval in the matter *In re W.R. Grace & Co., et al.* (the "Case"); provided, however, that, in addition to D&T's other rights or remedies, D&T may, in its sole discretion and without any liability arising therefrom, terminate this engagement in the event that (a) a third party objects or threatens to object, or D&T reasonably believes that a third party may object, in the form of an objection or otherwise, to D&T's retention by Grace in the Case on the terms and conditions set forth in this engagement letter, or (b) a final order authorizing the employment of D&T to provide tax consulting services described herein for Grace is not issued by the Bankruptcy Court in the Case on or before sixty (60) days from the date hereof on the terms and conditions set forth herein or on such other terms and conditions as are satisfactory to D&T, or (c) the application of Grace seeking such order is denied by the Bankruptcy Court in the Case. In such event, Grace hereby agrees to withdraw or amend, promptly upon D&T's request, any application filed or to be filed with the Bankruptcy Court to retain Deloitte's services in the Case.

## Service Terms and Conditions

The Company and D&T agree that the terms of this letter will apply to all tax assistance provided by D&T to the Company during the pendency of the Case, unless such services are the subject of a separate written agreement entered into between D&T and the Company. It is contemplated that all discreet projects will be evidenced by a separate written agreement or memo that will include an estimated budget. D&T will make reasonable efforts to adhere to such estimated budgets, however, the Company acknowledges that, due to added complexity of providing services to entities involved in bankruptcy proceedings, it may be necessary for D&T revise such budgets. Any revisions to such budgets will be communicated to you for an agreed-upon resolution.

Either party may terminate this engagement at any time by giving written notice to the other party not less than thirty (30) calendar days before the effective date of termination. In the event of termination pursuant to this paragraph, D&T agrees to stop performing any new tax consulting projects following receipt of notice of termination and will restrict any future tax consulting work to the completion of existing work to the extent necessary for an orderly transition of the consulting project to the Company. The Company agrees to compensate D&T under the terms of this engagement letter for services performed and expenses incurred through the effective date of termination, consistent with and as allowed per any applicable order of the Bankruptcy Court in connection with the Case.

It is contemplated that the tax assistance that D&T will include oral and written opinions, views, recommendations and other communications rendered in response to specific tax questions posed by the Company. D&T may be asked to analyze facts and circumstances relevant to the requested tax assistance. The Company acknowledges and agrees that any tax assistance provided pursuant to this engagement letter will be based solely upon:

Ms. Elyse Napoli Filon
April 8, 2003
Page 3 of 3

(a) The representations, information, documents and other facts specifically made or submitted to D&T by the Company, its personnel and any representatives thereof;

(b) D&T's assumption (without independent verification) that there will be timely execution, delivery and performance as may be required by any representation or documents submitted by the Company with respect to D&T's tax assistance;

(c) The Company's understanding and agreement that the ultimate responsibility, with respect to the appropriate application and interpretation of any oral or written communications, rests with management of the Company. D&T will not be held liable for any misinterpretations of oral or written communications regarding the application of tax assistance.

(d) The Company's understanding that any tax assistance provided pursuant hereto will be based upon the law, regulations, cases, rulings, and other tax authority in effect at the time specific tax assistance is provided. If there are subsequent changes in or to the foregoing tax authorities (for which D&T shall have no specific responsibility to advise you), the Company acknowledges that such changes may result in that tax assistance being rendered invalid or necessitate (upon the Company's request) a reconsideration of that prior tax assistance;

(e) The Company's understanding and agreement that the results of D&T's tax assistance may be audited and challenged by the IRS and other tax authorities, which may not agree with D&T's positions. In this regard, the Company understands that the result of any tax assistance is not binding on the IRS, or other tax authorities or the courts and should never be considered a representation, warranty, or guarantee that the IRS or the courts will concur with our advice or opinion; and

(f) D&T, as a result of providing such tax assistance, is under no obligation to represent the Company with respect to any such challenge or an administrative or judicial challenge thereof. D&T would generally be available to represent the Company before the appropriate tax authorities, as long as it is proper to do so, for an additional fee that is mutually agreed upon.

The Company and D&T also agree that the advice and opinions provided in accordance with the terms of this letter are not intended to satisfy the "reasonable cause" exception (Code Section 6664(c)) to the imposition of substantial understatement penalties under Code Section 6662. The Company and D&T agree that a separate engagement letter must be executed with respect to any tax opinion letter that the Company intends to rely upon for purposes of Code Section 6664(c) and Section 1.6664-(e)(2) of the regulations thereunder.

Mr. Elyse Napoli Filon
April 8, 2003
Page 5 of 8

## Billing

The professional fees charged for the tax assistance rendered pursuant to this engagement letter are calculated from the actual hours expended in providing the tax assistance multiplied by the hourly billing rates set forth below for the specific personnel involved. In addition, reasonable expenses, including travel, report production, delivery services and other expenses incurred in providing the tax assistance, will be included in the total amount billed.

## Hourly Rates

D&T will charge hourly billing rates in performing services to the Debtors in these Chapter 11 cases. The ranges of hourly billing rates are as follows:

| Staff Classification | Hourly Billing Rate |
|---|---|
| Partner/Principal/Director | $350-$600 per hour |
| Senior Manager | $250-$550 per hour |
| Manager | $180-$430 per hour |
| Senior Accountants/Consultants | $135-$230 per hour |
| Staff Accountants/Consultants | $100-$180 per hour |

The range of hourly billing rates reflects, among other things, differences in experience levels within classifications, geographic differentials and differences between types of services being provided. In the normal course of business, D&T revises its regular hourly billing rates to reflect changes in responsibilities, increased experience, and increased costs of doing business. Accordingly, the aforementioned rates will be revised to the hourly rates that will be in effect from time to time. Changes in regular hourly rates will be noted on the invoices for the first period in which the revised rates become effective.

Invoices will be sent monthly and payment on each invoice is due consistent with and as allowed per any applicable orders entered with the Bankruptcy Court in connection with the Case.

## Confidential Taxpayer Communications

You should be aware that, pursuant to the *Internal Revenue Restructuring and Reform Act of 1998*, certain information discussed with members of D&T who are Federally authorized tax practitioners or their agents for the purpose of obtaining our advice on tax

Mr. Elyse Napoli Filon
April 8, 2003
Page 5 of 8

matters may be privileged from disclosure in any non-criminal tax matters before the IRS and in non-criminal proceedings in Federal court that stem from matters before the IRS, if the United States is a party to the proceedings. The Company agrees that unless otherwise specified, all work is to be performed in a manner that preserves this privilege to the extent allowed under Federal and state law.

This engagement letter, together with the General Business Terms attached hereto, constitutes the entire agreement between the Company and D&T with respect to this engagement, supersede all other oral and written representations, understandings or agreements relating to this engagement, and may not be amended except by the mutual written agreement of the Company and D&T.

Pursuant to paragraph G of the General Business Terms, you are hereby expressly authorized to discuss and disclose the full content of any advice or opinion you receive pursuant to this engagement and every aspect of the transaction with any and all persons without limitations of any kind.

Please indicate your acceptance of this engagement letter by signing in the space provided below and returning a copy of this engagement letter to us.

Very truly yours,

AGREED AND ACCEPTED:

Deloitte & Touche LLP

By: _____

W.R. Grace & Co

By: _____

T. Timothy Tuerff
Partner

Name: Elyse Napoli Filon

Title: Vice President - Taxes

Date: 4/8/03

Mr. Elyse Napoli Filon
April 8, 2003
Page 6 of 8

## TAX GENERAL BUSINESS TERMS

**A.** Services. It is understood and agreed that D&T's services may include advice and recommendations, but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, the Client. In connection with its services hereunder, D&T shall be entitled to rely on all decisions and approvals of the Client.

**B.** Payment of Invoices. Invoices will be sent monthly and payment on such invoices is due consistent with and as allowed per any applicable orders entered with the Bankruptcy Court in connection with the Case.

**C.** Term. Unless terminated sooner in accordance with its terms, this engagement shall terminate on the completion of D&T's services hereunder. This engagement may be terminated by either party at any time by giving written notice to the other party not less than thirty (30) days before the effective date of termination. In the event of termination pursuant to this paragraph, D&T agrees to stop performing any new tax consulting projects following receipt of notice of termination, and will restrict any future tax consulting work to the completion of existing work to the extent necessary for an orderly transition of the consulting project to the Company. The Company agrees to compensate D&T under the terms of the engagement letter to which these terms are appended ("engagement letter") for services performed and expenses incurred through the effective date of termination, consistent with and as allowed per any applicable order of the Bankruptcy Court in connection with the Case.

**D.** Waiver of Jury Trial. D&T AND THE CLIENT HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER IN CONTRACT, STATUTE, TORT (SUCH AS NEGLIGENCE), OR OTHERWISE) RELATING TO THIS ENGAGEMENT.

**E.** Information and Data. D&T shall be entitled to assume, without independent verification, the accuracy of all representations, assumptions, information and data that Client and its representatives provide to D&T. All assumptions, representations, information and data to be supplied by Client and its representatives will be complete and accurate to the best of Client's knowledge. D&T may use information and data furnished by the company or its representatives; however, D&T shall not be responsible for, and D&T shall provide no assurance regarding, the accuracy of any such information or data. Except as specifically agreed to, D&T shall not provide advice regarding the financial accounting treatment of any transaction implemented from these services and will not assume any responsibility for any financial reporting with respect to the services provided hereunder. Client shall be responsible for all financial information and statements provided with respect to any services performed hereunder. D&T shall have no responsibility to address any legal matters or questions of law, other than tax law.

HTK-17-2003 DT GLP DEPT NO LEGAL 212 492 4201 P.24/34

Apr 08 09 04

Ms. Elyse Napoli Filon
April 8, 2003
Page 7 of 8

F. **Third Parties and Internal Use.** D&T hereby acknowledges and agrees that there are no conditions of confidentiality imposed on Client associated with the tax services or transaction(s) described herein. Neither D&T nor any party known to D&T has or claims to have any proprietary interest in the subject transaction. Nothing in this paragraph shall be construed as limiting or restricting disclosure of the transaction or any significant tax feature thereof for purposes of §6111(d) of the Internal Revenue Code. The Client and its employees, representatives or agents may disclose the structure and tax aspects of a transaction, and any and all materials, opinions or tax analyses of any kind, to any and all persons without limitation of any kind. However, all services in connection with this engagement shall be solely for the Client's informational purposes and internal use, and this engagement does not create privity between D&T and any person or party other than Client ("third party"). This engagement is not intended for the express or implied benefit of any third party. Unless otherwise agreed to in writing by D&T, no third party is entitled to rely, in any manner or for any purpose, on the advice, opinions, reports, or other services of D&T. In the event of any unauthorized reliance not caused by D&T, the Client agrees to indemnify and hold harmless D&T and its personnel from all third-party claims, liabilities, costs and expenses. []

G. **Independent Contractor.** It is understood and agreed that each of the parties hereto is an independent contractor and that neither party is, nor shall be considered to be, an agent, distributor, partner, fiduciary or representative of the other. Neither party shall act or represent itself, directly or by implication, in any such capacity in respect of the other or in any manner assume or create any obligation on behalf of, or in the name of, the other.

H. **Survival and Interpretation.** The agreements and understandings of the Client and D&T contained in the engagement letter, to which these terms are attached, together with the provisions of all Paragraphs hereof, (except for the "term" of the engagement) shall survive the expiration or termination of this engagement. For purposes of these terms, "D&T" shall mean Deloitte & Touche LLP and its subsidiaries, to the extent providing services under the engagement letter to which these terms are attached, Deloitte Touche Tohmatsu, its member firms, and the affiliates of Deloitte & Touche LLP, Deloitte Touche Tohmatsu and its member firms; all of their partners, principals, members, owners, directors, staff and agents; and in all cases any successor or assignee.

I. **Governing Law and Severability.** These terms, the engagement letter to which these terms are attached, including exhibits, and all matters relating to this engagement (whether in contract, statute, tort (such as negligence), or otherwise), shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof). If any provision of such terms or engagement letter is found by a court of competent jurisdiction to be unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

Ms. Elyse Napoli Filon
April 8, 2003
Page 8 of 8

J. Indemnification. The Client shall indemnify and hold harmless D&T and its personnel from all claims, liabilities, and expenses relating to this engagement, except to the extent finally judicially determined to have resulted from the gross negligence, bad faith or intentional misconduct of D&T.

K. Confidentiality. To the extent that, in connection with this engagement, D&T comes into possession of any proprietary or confidential information of the Client, D&T will not disclose such information to any third party or use such information without the Client's consent, except (a) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards, or in connection with litigation pertaining hereto, or (b) to the extent such information (i) shall have otherwise become publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a disclosure by D&T in breach hereof, (ii) is disclosed by the Client to a third party without substantially the same restrictions as set forth herein, (iii) becomes available to D&T on a nonconfidential basis from a source other than the Client which D&T believes is not prohibited from disclosing such information to D&T by obligation to the Client, (iv) is known by D&T prior to its receipt from the Client without any obligation of confidentiality with respect thereto, or (v) is developed by D&T independently of any disclosures made by the Client to D&T of such information. In addition, the Client acknowledges and agrees that any such information that comes to the attention of D&T in the course of performing this engagement may be considered and used by D&T in the context of responding to its professional obligations as the independent accountants for the Client.

L. Assignment. Except as provided below, neither party may assign, transfer or delegate any of its rights or obligations hereunder (including, without limitation, interests or claims relating to this engagement) without the prior written consent of the other party. D&T may, without the consent of the Client, assign or subcontract its rights and obligations hereunder to (a) any affiliate or related entity or (b) any entity which acquires all or a substantial part of the assets or business of D&T.

M. Cooperation. The Client shall cooperate with D&T in the performance by D&T of its services hereunder, including, without limitation, providing D&T with reasonable facilities and timely access to data, information and personnel of the Client. The Client shall be responsible for the performance of its personnel and agents and for the accuracy and completeness of all data and information provided to D&T for purposes of the performance by D&T of its services hereunder.

O. Exclusion of Damages. In no event shall D&T or its personnel be liable for consequential, special, indirect, incidental, punitive or exemplary loss, damage, or expense relating to this engagement.

P. Applicability. The provisions of Paragraphs J and O shall apply to the fullest extent of the law, whether in contract, statute, tort (such as negligence), or otherwise. In circumstances where all or any portion of the provisions of such Paragraphs are finally judicially determined to be unavailable, D&T's aggregate liability for any claims, liabilities, or expenses relating to this engagement shall not exceed an amount which is proportional to the relative fault that D&T's conduct bears to all other conduct giving rise to such claims, liabilities, or expenses.