IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: <br><br> W.R. GRACE & CO., *et al.*, <br><br> Debtors. | ) Chapter 11 <br> ) <br> ) Case No. 01-1139 (JFK) <br> ) Jointly Administered <br> ) <br> ) <br> ) |

### **AFFIDAVIT OF JAY NAPARSTEK**

I, Jay Naparstek, declare as follows:

1.  I serve as Acting Deputy Division Director of the Division of Response and Remediation, which is in the Bureau of Waste Site Cleanup, of the Massachusetts Department of Environmental Protection (MADEP). I have held this position for approximately four years.

2.  I joined the Department in 1986 as an Environmental Analyst I, in the Bureau of Waste Site Cleanup. Before being promoted to my current position, I have worked as a Project Manager, Branch Chief, and then Section Chief for approximately seven years, all within the Bureau of Waste Site Cleanup.

3.  In 1983, I obtained a bachelor's degree in geology from the State University of New York in Oneonta, and in 1991, I obtained a master's degree in hazardous materials management from Tufts University. I have also taken substantial graduate level course work in hydrogeology at Boston University.

4.  In my current position, I am responsible for the Federal Sites Program within the Division of Response and Remediation. The Federal Sites Program includes (a) the Department of Defense Federal Facilities Section (including DOD Sites and Formerly Used Defense Sites),

which provides state technical guidance and state regulatory oversight at present DOD facilities, base closings, and Formerly Used Defense Sites (FUDS) in the Commonwealth of Massachusetts; (b) the Federal Superfund Section, which provides technical guidance and regulatory oversight at National Priority List (NPL) Superfund and Brownfield sites in the Commonwealth; and (c) the Leaking Underground Storage Tank Release Prevention Program, which provides guidance to assist owners and operators of petroleum tanks (underground, aboveground, commercial, residential) with issues related to spill prevention, safe product storage, equipment testing and responses to releases.

5. Under the Federal Superfund Program, I am responsible for the MADEP's coordination and work with the United States Environmental Protection Agency at all Sites within the Commonwealth that are on the National Priority List. This involves working with EPA and overseeing all aspects of work by potentially responsible parties to perform and complete investigation and remediation of these Sites. Three of the NPL Sites in Massachusetts are the W.R. Grace Plant Acton Superfund Site, located in Acton and Concord, the Wells G & H Aberjona River Valley Site, located in Woburn, and the Blackburn and Union Privileges Site, located in Walpole. I have been involved in the Acton and Woburn Sites for more than 15 years and the Walpole Site for more than 4 years, and I am very familiar with the contamination and status of investigative and remedial activities at each.

6. My responsibilities also include having primary responsibility for all aspects of each federal grant associated with the various Federal Sites Programs. For example, under the

Federal Superfund Program, I am responsible for obtaining and managing the funds that the MADEP receives from EPA under a Superfund Block Grant or Cooperative Agreement.

7. The MADEP has entered into a Cooperative Agreement with the EPA, pursuant to CERCLA Section 104(c)(3), under which a federal grant provides funding for the MADEP's participation in the Superfund Program. Under the Cooperative Agreement, the federal government provides funds to Massachusetts to reimburse certain, but not all, state response costs. In turn, EPA, at its sole discretion, may seek to recover such funds from responsible parties, such as the Debtors.

8. The MADEP uses a cost tracking system that includes an account number to assist in assuring that costs incurred at various Sites throughout the Commonwealth are assigned to the proper funding source. The account number that MADEP uses to track and assign all state costs that it submits to EPA for reimbursement under the Cooperative Agreement is: 2200-9724.

9. I am familiar with printouts generated from the cost tracking system database that identify outstanding, unpaid state response costs for the Acton, Wells G&H and Blackburn & Union Superfund Sites. I understand these were attached as exhibits to the MADEP's Claims that have been filed in these bankruptcy cases. None of the response costs included in these printouts have been assigned to account number 2200-9724. This means that none of these state response costs have been funded by EPA. The appearance of these response costs in these printouts also means that none of these state response costs have been reimbursed by any other

entity. Based on how the MADEP's cost tracking system database operates, response costs that have been reimbursed would not show up in such printouts of only unreimbused costs.

10. No MADEP personnel has the authority to inform the Debtors that the agency will not seek to recover its response costs from them regarding these Superfund Sites. I am not aware that any such unauthorized statements were ever made by MADEP staff and would strongly dispute the allegation that such statements were made.

11. Regarding the Acton Superfund Site, the EPA has not yet selected a final remedy or issued a Record of Decision for all aspects of the Acton Site. In particular, no ROD as been issued or final remedy selected for the ground water remediation, known as "Operable Unit 3" or OU3. Regarding the Wells G&H Superfund Site, EPA has not yet identified a final remedy or issued a ROD for the Central Area or Aberjona River portions of the Site. At both the Acton and Wells G&H Superfund Sites, contamination from the properties owned by Debtors has migrated and/or is migrating to other areas of the Site not owned by them. Similarly, there is no ROD or final remedy yet selected for the Blackburn & Union Site, which is still in the investigative and feasibility study phase. Because the final remedy for all aspects of each of these Sites does not yet exist, no potentially responsible party has committed to the full performance of the remedy at each Site. Under CERCLA's cost-sharing provisions, if no potentially responsible party performs such work, the Commonwealth will bear a share of the response costs, along with EPA, to perform such activities at the Sites.

I declare under pains and penalties of perjury this ___ day of October, 2004 that the foregoing is true to the best of my knowledge.

_____/s/_____
Jay Naparstek
Acting Deputy Division Director
Division of Response and Remediation
Bureau of Waste Site Cleanup
Massachusetts Department of Environmental Protection