THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., <u>et al.</u>, | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**UNITED STATES' OBJECTIONS TO DEBTORS' OBJECTION TO
CERTAIN CLAIMS FILED BY THE MASSACHUSETTS
DEPARTMENT OF ENVIRONMENTAL PROTECTION
(DOCKET NUMBER 6271)**

The Debtors have objected to numerous environmental claims filed by the Massachusetts Department of Environmental Protection ("MADEP"). The United States takes no position on many of Debtors' objections. However, certain of Debtors' objections are not well founded as a matter of law, and (if sustained) could be taken out of context by Debtors to prejudice unfairly the United States' rights against the Debtors. As a result, the United States objects to Debtors' Objection To Certain Claims Filed by the Massachusetts Department of Environmental Protection ("Debtors' Objection") for the following reasons:

1. Debtors object to the MADEP claims "to the extent they seek any sort of administrative or other priority under 11 U.S.C. § 507." (Debtors' Objection at 5.) Debtors base this objection on the alleged fact that "MADEP has not provided any information or documentation that would support the proposition that any portion of the MADEP Claims constitute 'actual, necessary costs and expenses of preserving the estate . . .' as required for administrative priority. . . ." (Debtors' Objection at 6.) This objection is premature. MADEP has not submitted an application for administrative or other priority for any of its claims. While MADEP has referenced <u>potential</u> administrative expenses in its proof of claim, these references

do not constitute an application for administrative priority. Accordingly, MADEP's presumptive administrative expense claims are not properly before the Court at the present time. All of Debtors objections relating to the applicability of administrative or other priority to MADEP's claims should thus be denied.

2. Debtors also contend that none of MADEP's claims could qualify for administrative treatment "because all of the asserted claims (regardless of whether the underlying amounts were expended by the MADEP before the Petition Date or after the Petition Date) relate to Grace's pre-petition conduct and, therefore, such amounts (i) arose before the Petition Date and (ii) are pre-petition claims." (Debtors' Objection at 6.) However, the Third Circuit has permitted a governmental entity to recover as an administrative expense post-petition cleanup costs related to pre-petition contamination at property of the estate. Commonwealth of Pennsylvania v. Conroy, 24 F.3d 568, 570 (3d Cir. 1994). See also In re CMC Heartland Partners, 966 F.2d 1143, 1147 (7th Cir. 1992) (CERCLA liability of reorganized debtor for pre-petition contamination springs anew post-bankruptcy based on present owner/operator liability). Thus, to the extent the Court reaches the merits of Debtors' objections to MADEP's potential administrative expense claims, Debtors' contention that post-petition cleanup costs for pre-petition contamination do not qualify for administrative expense treatment should be rejected.

3. Debtors object to claims for future remediation at the Former Zonolite Plant Site, the Blackburn and Union Site, and the MMR Pipeline Site because other potentially responsible parties may also be liable for contamination. Debtors therefore contend that MADEP "may call upon" these other entities for reimbursement instead of seeking the cleanup costs from the Debtors. (See, e.g., Debtors' Objection at 7.) However, the two statutes that MADEP's claims

are based upon – the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675, and the Massachusetts Oil and Hazardous Material Release Prevention and Response Act, Mass. Gen. Laws ch. 21E – both provide for joint and several liability.  See United States v. Alcan Aluminum Corp., 964 F.2d 252, 267-71 (3d Cir. 1992); Martignetti v. Haigh-Farr, Inc., 680 N.E.2d 1131, 1145 (Mass. 1997).  As a result, each responsible party is liable for the full amount of the cleanup costs (unless, of course, a responsible party can show that the injury is divisible).  Alcan, 964 F.2d at 268-69.  Debtors' bankruptcy does not change this equation, as "a determination of whether a claim arises in bankruptcy requires an analysis of interest created by non-bankruptcy substantive law."  In re National Gypsum Co., 139 B.R. 397, 414 (N.D. Tex.1992) (citing In re Remington Rand Corp., 836 F.2d 825, 830 (3d Cir. 1988)).  Indeed, the one Court that has addressed CERCLA joint and several liability in the bankruptcy context determined that the debtor was jointly and severally liable for all CERCLA response costs at a site notwithstanding the existence of other potentially liable parties unless it could demonstrate divisibility.  See National Gypsum, 139 B.R. at 414.  Of course, a debtor also could bring an action for contribution under CERCLA to ensure that costs are apportioned equitably.  See 42 U.S.C. § 9613(f).  Here, Debtors do not contend that the environmental contamination at any of the referenced sites is divisible.  As Debtors are jointly and severally liable for the environmental harm at these sites, Debtors objection to claims on the basis of the existence of other responsible parties must be rejected.

  4. Debtors object to MADEP's protective claims for future cleanup costs at certain Debtor-owned sites because Debtors are cleaning up the sites under state and/or federal law, making it "highly unlikely that MADEP will ever incur [cleanup] costs."  (See, e.g., Debtors'

Objection at 8.) The United States agrees that debtors in bankruptcy have an ongoing obligation to comply with environmental laws by cleaning up their contaminated properties. Conroy, 24 F.3d at 569. To the extent a governmental entity cleans up debtors property, the cleanup costs may be entitled to an administrative expense. Id. As such, MADEP's potential cleanup costs at Debtor-owned sites should not be addressed at the present time.

5. MADEP's filed monetary claims for future cleanup costs unrelated to Debtor owned sites may constitute general unsecured claims that are subject to discharge. See In re Insilco Technologies, Inc., 309 B.R. 111, 116 (Bankr. D. Del. 2004). But see In re Torwico Elecs., Inc., 8 F.3d 146, 150-51 (3d Cir. 1993) (certain injunctive obligations of debtors under cleanup orders are not dischargeable monetary claims, including where facility is no longer owned or operated), cert. denied, 511 U.S. 1046 (1994). However, the record before the Court is not sufficient to estimate the amount of MADEP's filed monetary claims. The United States respectfully suggests that the MADEP and Debtors be given the opportunity to resolve the amount of the claim that should be allowed for the sites in this category.

Dated: October 26, 2004

    Respectfully submitted,

    THOMAS L. SANSONETTI
    Assistant Attorney General
    Environment & Natural Resources Div.
    U.S. Department of Justice

/s/ James D. Freeman
JAMES D. FREEMAN
Trial Attorney
U.S. Department of Justice
Environmental Enforcement Section
999 18th Street
Suite 945-North Tower
Denver, Colorado 80202
(303) 312-7376


COLM F. CONNOLLY
United States Attorney
District of Delaware

ELLEN SLIGHTS
Assistant United States Attorney
Office of United States Attorney
1201 Market Street
Suite 1100
P.O. Box 2046
Wilmington, DE 19899-2046

OF COUNSEL:

ANDREA MADIGAN
Enforcement Attorney
U.S. EPA Region 8
999 Eighteenth Street, Suite 700
Denver, Colorado 80202