IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Objection Deadline: November 10, 2004 at noon**
**Hearing Date: November 15, 2004 at noon**

## DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO ADVANCE CERTAIN LEGAL FEES AND EXPENSES FOR CERTAIN OF DEBTORS' CURRENT AND FORMER OFFICERS, DIRECTORS AND EMPLOYEES

The above-captioned debtors and debtors in possession (collectively, the "Debtors") and

seven of the Debtors' current and former officers, directors, and employees have received letters

from the United States Department of Justice, District of Montana, advising them that they are

targets of a pending grand-jury investigation (the "Investigation"). By this Motion, the Debtors

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

request Court approval to advance payments for any reasonable legal expenses (fees and related costs) for legal services provided to the Debtors' current or former officers, directors or employees in connection with the Investigation and/or any action that may arise from, or is related to, the Investigation. For the following the reasons, the Court should enter an order allowing the Debtors to advance such amounts:

- Pursuant to the Certificate of Incorporation and By-laws of the Debtors' parent, W. R. Grace & Co., a Delaware corporation (the "Parent"),[2] the Parent has an *obligation* to indemnify its officers, directors and employees (and certain other persons) to the fullest extent allowed under Delaware law. Such indemnification is permitted by the Delaware General Corporation Law.[3]

- The Debtors have a direct interest in seeing that the individuals receive adequate protection because the Investigation concerns actions that the individuals took while serving as officers, directors and employees of the Debtors. W. R. Grace & Co., itself, has also received a target letter. Therefore, the Debtors' defense in this Investigation is inextricably tied with the defense of each individual, and any adverse factual findings made during the Investigation could adversely affect the Debtors' estates.

- The Investigation has targeted persons in key management positions. It is in the Debtors' best-interest to see that these parties receive adequate legal representation because such treatment will maintain employee moral. This, in turn, will allow the Debtors to attract and maintain well-qualified individuals for such positions; a successful reorganization of the Debtors is dependent upon attracting and retaining such individuals.

---

[2]   Certain of the individuals targeted in the Investigation are or were employees only of W. R. Grace & Co.-Conn., a Connecticut corporation and the principal operating subsidiary of the Parent, which is also a Debtor ("Grace-Conn."). The Grace-Conn. Certificate of Incorporation and By-laws also obligate the company to indemnify current and former officers and permits the company to indemnify current and former employees.

[3]   See Del. Code. Ann. tit. 8 § 145 (indemnification of an officer, director or employee is permitted if the person acted in good faith and in a manner that the person reasonably believed to be in or not opposed to the best interests of the corporation; and, with respect to criminal actions or proceedings, the person must have had no reasonable cause to believe the person's conduct was unlawful) (a copy of which is attached as Exhibit 1).

2

- The relief requested in the Motion is consistent with the first-day relief that was granted in these bankruptcy cases, by which the Court authorized the Debtors, "to pay certain prepetition claims for, among other items, wages, salaries, commissions, bonuses and other compensation..." In re W.R. Grace & Co., Case No 01-01139, Order Authorizing, but not Requiring, the Debtors to Pay Certain Prepetition Wages, Salaries, Compensation and Other Amounts (Bankr.D.Del. April 2, 2001) (a copy of which is attached as Exhibit 2). The expectation of indemnification is part of the individuals' compensation, and, therefore, the rationale underlying that Motion ("to maintain employee morale at this critical time") is equally applicable in the present matter.

- The individuals that have received target letters may not possess the funds required to pay for their respective legal defenses, and, in any event, the *risk* of nonpayment by these parties will make it difficult for them to retain adequate legal representation during the Investigation. Accordingly, these individuals may not be able to retain adequate legal representation unless the Debtors advance funds for such defense.

Therefore, the Debtors request that the Court enter an order, substantially in the form of attached hereto, which allows the Debtors to advance funds to parties that have been (or are subsequently) served with target letters in the Investigation, subject to a potential undertaking that would be held by the Debtors, at the conclusion of the Investigation (or matters stemming from, and related to, the Investigation), in the event that any of the individuals are found to have acted in a manner that would not permit the Debtors to indemnify them under Delaware law (or other applicable law).

## Jurisdiction

1.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M), and (O).

2.      Venue of these cases and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105, 362(a)(6), and 363 of title 11 of the United States Code (the "Bankruptcy Code").

3

## **Facts and Background**

4.      In 1963, the Debtors purchased the assets of the Zonolite Company ("Zonolite")

and merged them with what is now Grace Performance Chemicals.  Zonolite mined, milled and

processed vermiculite from a mine ten miles north of Libby, Montana (the "Libby Mine").

Vermiculite is itself an inert mineral that is non-asbestos and has no known toxic properties.

However, the vermiculite ore in the Libby Mine deposit contained a secondary mineral – fibrous

asbestiform tremolite.[4]  Grace operated the Libby Mine from 1963 until 1990.

5.      On April 2, 2001 (the "Petition Date"), the Debtors commenced their respective

reorganization cases by filing petitions under chapter 11 of the Bankruptcy Code.  The Debtors

filed for bankruptcy so that they could implement an efficient and orderly procedure for dealing

with asbestos-related lawsuits and claims.  By operation of law, the commencement and/or

continuation of all actions that could have been brought against any of the Debtors before the

Petition Date were automatically stayed pursuant to 11 U.S.C. § 362(a)(1) (the "Automatic

Stay").

6.      On or about October 27, 2004, the United States Department of Justice, District of

Montana, sent a letter to counsel for the Debtors.  The letter states that, "a Federal Grand Jury is

currently conducting an investigation into whether your client, W.R. Grace & Co., was involved

in obstructing agency proceedings, violating federal environmental laws, and conspiring with

others to violated federal law."  October 27, 2004 Letter from William W. Mercer, United States

---

[4]    Fibrous asbestiform tremolite impurities in vermiculite are atypical and not characteristic of
most vermiculite deposits.  It is believed that the depth of the ore deposit in Libby is
correlated to the amount of impurities, whereas most vermiculite deposits – such as those at
Grace's Enoree, South Carolina mine – are relatively shallow.

4

Attorney, and Kris A. McLean, Assistant United States Attorney, to Larry Urgenson, counsel for

the Debtors (the "Target Letter," a copy of which is attached as Exhibit 3). The Target Letter

further states that it is informing Debtors' counsel, "of this fact in order to afford your client an

opportunity to inform the Grand Jury of the identity of the substance of the testimony or

witnesses or other evidentiary material you believe is relevant to this investigation at its next

meeting on November 4, 2004." Exhibit 3. The Target Letter apparently concerns alleged

conduct that was taken by the Debtors with respect to their Libby, Montana operations.

7.      Similar letters were also sent to sent to (i) three current officers, directors and/or

employees of the Debtors and (ii) four former officers, directors and/or employees of the Debtors

(collectively, the "Individuals").[5] The Individuals include persons who possess important

management positions with the Debtors' Performance Chemicals Division or who held key

management positions in the Debtors' construction products business or Libby, Montana

operations.

8.      In response to the Target Letter, Debtors' counsel contacted Mr. McLean and

requested additional time for the Debtors and the Individuals (collectively, the "Named Parties")

to respond. Mr. McLean indicated that the federal government was concerned that, if the Named

Parties were afforded additional time to respond, then applicable statutes of limitation could

lapse. Accordingly, Mr. McLean requested that each Named Party execute a tolling agreement

---

[5]     In an attempt to (i) protect the individuals from potential embarrassment and (ii) facilitate
        cooperation between the individuals and the grand jury, the Debtors have not included the
        names of the specific individuals in the Motion. However, the Debtors are prepared to
        disclose this information to the Court (under seal) or to any of the official committees that
        have been appointed in these cases (subject to the terms of applicable confidentiality
        agreements, as well as any other applicable confidentiality obligations).

(the "Tolling Agreement," a form copy of which is attached as Exhibit 4). The Tolling

Agreement tolls any applicable statutes of limitation until December 2, 2004. In exchange for

executing the Tolling Agreement, Mr. McLean offered to extend the Investigation until the grand

jury meets in early December 2004. The Debtors have executed a copy of the Tolling

Agreement. The Debtors also understand that each of the other Named Parties is considering

executing the Tolling Agreement, but they are each seeking to retain counsel to advise them on

the matter.

9.      The Target Letter does not state the date[s] of the alleged conduct that is being

investigated by the federal grand jury. However, based upon conversations between Debtors'

counsel and Mr. McLean, the Debtors believe that most (but perhaps not all) of the alleged

conduct under investigation occurred before the Petition Date.

### Relief Requested

10.      In order to (i) honor their obligations under the Debtors' Certificates of

Incorporation and By-laws; (ii) preserve the Debtors' direct interests with respect to any findings

of fact or law that are made with respect to the Debtors' Libby, Montana operations; (iii)

maintain the morale of all of the Debtors' employees, directors, and officers during the Debtors'

reorganization efforts and ensure that the Debtors are able to attract and retain well-qualified

individuals in key management positions; and (iv) minimize (a) the personal hardship that the

Individuals will suffer and (b) an adverse factual record that could be established, if the

Individuals cannot afford the pay for adequate legal defense costs for the Investigation, the

Debtors request the Court's approval to advance payments for any reasonable legal expenses

(fees and related costs) for legal services provided to the Debtors' current or former officers,

6

directors or employees in connection with the Investigation and/or any action that may arise

from, or is related to, the Investigation

11.    The Debtors reserve their right, however, not to indemnify a respective Individual

if he or she did not act:

> in good faith and in a manner the person reasonably believed to be in or not
> opposed to the best interests of the corporation, and, with respect to any criminal
> action or proceeding, had no reasonable cause to believe the person's conduct was
> unlawful. The termination of any action, suit or proceeding by judgment, order,
> settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall
> not, of itself, create a presumption that the person did not act in good faith and in
> a manner which the person reasonably believed to be in or not opposed to the best
> interests of the corporation, and, with respect to any criminal action or
> proceeding, had reasonable cause to believe that the person's conduct was
> unlawful.

Del. Code. Ann. tit. 8 § 145(a). Therefore, to the extent that the Investigation (or subsequent

prosecution and/or action) concludes with a finding of a lack of good faith or a finding that

would otherwise preclude any of the Individuals from receiving reimbursement under other

applicable law), then the Debtors will hold an undertaking, at which time the Debtors will seek

recovery of any legal fees that are paid pursuant to this Motion.

### Authority for the Relief Requested

**a.    The Court has Equitable Authority to Grant the Relief Requested Pursuant
to Section 105(a)**

12.    The Court's general equitable powers are codified in section 105(a) of the

Bankruptcy Code, which empowers the Court to "issue any order, process, or judgment that is

necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. §

105(a). Courts are empowered to use this equitable authority to promote (i) "the paramount

7

policy and goal of chapter 11 ... the rehabilitation of the debtor,"[6] and (ii) "the fundamental

purpose of reorganization ... to create a flexible mechanism that will permit the greatest

likelihood of survival of the debtor and payment of creditors in full or at least proportionately."

In re Chateaugay Corporation, 80 B.R. 279, 287 (Bankr. S.D.N.Y. 1987); see also, In re

Ionosphere Clubs, Inc., 98 B.R. 174, 177 (Bankr. S.D.N.Y. (1989) ( "[T]he Bankruptcy Court's

equitable power may be used to effectuate the purposes of Chapter 11, which include the

'restructuring of a business' finances to enable it to operate productively, provide jobs for its

employees, pay its creditors and produce a return for its stockholders.") (quoting H.R. Rep. No.

595 95th Cong. 1st Sess. (1977) U.S. Code Cong. & Admin. Code 1978, pp. 5787, 5963, 5977)).

13.    The Court may exercise this equitable power to grant the relief requested in this

Motion. See, e.g., In re Allied Digital Technologies, Corp., 306 B.R. 505 (Bankr. D. Del. 2004)

(allowing officers and directors of a chapter 7 debtor, each of whom had been named as

defendant in cause of action brought by trustee for damages associated with leveraged buyout, to

seek reimbursement of defense and judgment or settlement amounts under the debtor's D&O

policy); In re Boston Regional Medical Center, Inc., 285 B.R. 87 (Bankr. D. Mass. 2002)

(allowing chapter 11 debtors' insurer to pay defense costs under D&O policies, even if such

policies were considered property of the debtor's estate).  For example, in In re Exide

Technologies, et al., Case No. 02-11125 (JCA), the court authorized the chapter 11 debtors to

pay the prepetition legal fees of former officers and directors relating to their defense of a

prepetition criminal investigation, whereby certain of Exide's former officers were ultimately

convicted of fraudulent conduct.  See In re Exide Technologies, et al, Case No. 02-11125 (JCA),

---

[6]    id, citing NLRB v. Bildisco & Bildisco, 465 U.S. 513, 528 (1984)

8

Order Authorizing the Debtors to Pay Employees' Prepetition Legal Fees Arising From their

Cooperation with the Criminal Prosecution of the Debtors' Former Directors and Officers

(Bankr. D. Del. July 30, 2002) (a copy of which is attached as Exhibit 5).

      **b.**      **Payment of Employee Expenses is Commonly Authorized Where Important to Preserve Morale and Loyalty Amongst a Debtors' Employees**

      14.      It is common for courts to authorize payments related to employment.  See In re

Chategaugay Corp., 80 B.R. at 287 (upholding bankruptcy court's authorization for debtor to pay

certain pre-petition wages and salaries, reimbursement expenses, and employees benefits); In re

Columbia Packing Co., 35 B.R. 447, 450 (Bankr. D. Mass. 1983) (authorizing the debtor to

reimburse salespeople for expenses incurred and recognizing "the need for a satisfied sales force

and the salespeople's reliance on reimbursement of their expenses"); In re Primary Health

Systems, Inc., 275 B.R. 709, 710 (Bankr. D. Del. 2002) (authorizing reimbursement of

employees for all business expenses incurred during the pre-petition period).

      15.      Further, the Court has authorized payments related to pre-petition employment in

these chapter 11 cases, as well as numerous other chapter 11 cases.  See Exhibit 2; see also In re

Waccamaw's Homeplace, No. 01-0181 (PJW) (Bankr.D.Del. Jan, 17, 2001); In re Alamac Knit

Fabrics, Inc., No. 00-3746 (MFW) (Bankr.D.Del. Sept. 25, 2000); In re Loewen Group Int'l Inc.,

No. 99-1244 (PJW) Bankr. D. Del. June 2, 1999); In re Montgomery Ward Holding Co., No. 97-

1409 (PJW) (Bankr.D.Del. July 8, 1997).  In particular, the Court has previously authorized a

chapter 11 debtor to pay certain of its employees' legal fees arising from their cooperation with

the criminal prosecution of the debtor's former directors and officers.  See Exhibit 5.

      16.      By this Motion, the Debtors request the Court's authority to honor both their pre

and post-petition obligations to current and former officers, directors, and employees by

9

advancing such individuals funds for legal expenses incurred in connection with the

Investigation.

## **Argument**

17.     The Debtors' Certificates of Incorporation and By-laws specifically state that the

Debtors have an obligation to indemnify their directors, officers, and employees for such costs.

Specifically, the Parent's Certificate of Incorporation and By-laws require the Debtors to

indemnify against all expense, liability and loss "each person who ... is made a party ... to any

action, suit or proceeding ... by reason of the fact that he or she:

> is or was a director of officer of the Corporation or is or was serving at the request
> of the Corporation as a director, officer, employee or agent of another corporation
> or of a joint partnership, joint venture, trust of other enterprise, including service
> with respect to employee benefit plans maintained or sponsored by the
> Corporation, whether the basis of such proceeding is alleged action in an official
> capacity as a director, officer, employee or agent or in any other capacity while
> serving as a director, officer, employee or agent, shall be indemnified and held
> harmless by the Corporation to the fullest extent authorized by the [general
> corporation law of Delaware]...

The Parent's By-Laws at ¶6.7(A). This provision requires the Debtors to indemnify the

Individuals for their expense, liability, and or loss stemming from the Investigation. This

obligation is consistent with Delaware law, which permits such indemnification.

18.     Further, the Debtors are a target in the Investigation, and, therefore, they have a

direct interest in seeing that the Individuals obtain adequate legal representation. The

Investigation concerns the Debtors and their operations in Libby, Montana. In particular, the

Individuals have only been served on account of alleged conduct that occurred during their

respective associations with the Debtors. The conduct underlying the Investigation solely

concerns the Debtors' Libby, Montana operations, and the Individuals possess direct knowledge

of such operations and actions taken by the Debtors. Any findings of law or fact concerning the

10

Debtors, Libby Montana operations would likely have a material effect on the Debtors operations and its reorganization efforts, as the Debtors were driven into bankruptcy by an onslaught of asbestos-related lawsuits. Therefore, the Debtors have a direct interest in seeing that (i) the Individuals are adequately protected, and that they do not prematurely settle any charges brought as a result of the Investigation (because they do not have the funds required to adequately defend themselves, or otherwise). In this respect, the interests of the Individuals are directly aligned with the interests of the Debtors, and the advancement of funds to the Individuals for legal expenses will directly benefit the Debtors, the Debtors' estates, and the Debtors' other creditors. Also, the Debtors are obligated to indemnify the Individuals for damages, costs, fines, and penalties (if not prohibited by law), so the Debtors are the real party-in-interest, and will be directly harmed if the Individuals are not adequately represented in the Investigation.

19.     The requested relief will also promote employee morale, and the success of the Debtors' reorganization is dependant on the commitment and loyalty of their current and former officers, directors and employees. See In re CEI Roofing, Inc., 315 B.R. 50 (Bankr. N.D. Tex. 2004) ("[T]here has evolved a rule for the payment of prepetition wages and benefits which is based on both common sense and the express provisions of the Bankruptcy Code. If employees are not paid, they will leave. If they leave the Debtors' business, the bankruptcy case fails shortly after filing. No one will benefit from the process."). As noted above, the Parent's Certificate of Incorporation and By-laws require the Debtors to indemnify the Individuals to the fullest extent allowed under Delaware law.[7] This promise carries little (or no) weight if the

---

[7]    Delaware law permits indemnification of corporate directors and officers for liability if they acted, "in good faith and in a manner which the person reasonably believed to be in or not opposed to the best interests of the corporation." Del. Code. Ann. tit. 8 § 145(a). The

(Continued...)

11

Debtors are not allowed to honor this obligation now that they are operating as chapter 11

debtors in-possession. Employee-satisfaction with the Debtors has already been weakened by

the current position of the Debtors, and this level of satisfaction could be further weakened if the

Debtors' defense obligations are not honored. In fact, confidence could be damaged to the extent

that certain key employees, who are material to the success of the Debtors' reorganization, might

decide to leave their employment with the Debtors and seek employment elsewhere. Further, the

Debtors would not be able to retain and attract qualified individuals for key positions if they are

not allowed to honor their indemnification and advancement obligations. Companies operating

outside of bankruptcy typically afford such advancement and indemnification for actions taken in

good faith while performing their duties. Therefore, if the Debtors are not allowed to provide

similar protection, then no well-qualified, rational individual would choose an executive position

with the Debtors.

20.    In addition, the relief requested in the Motion is consistent with the first-day relief

that was granted in these bankruptcy cases, by which the Court authorized the Debtors, "to pay

certain prepetition claims for, among other items, wages, salaries, commissions, bonuses and

other compensation..." Exhibit 2. The indemnification of the individuals that have been targeted

in the Investigation is part of the individuals' respective compensation packages, and, therefore,

the rationale underlying that Motion ("to maintain employee morale at this critical time") is

equally applicable in the present matter.

---

statutory obligation to reimbursement for actual and reasonable defense cost arises if the
director or officer is "successful on the merits or otherwise in defense" of an action, and
advancement of such expenses is allowed. See id at §145(c); Advanced Mining Systems v.
Fricke, 623 A.2d 82, 85 (Del.Ch. 1992).

12

21.     Finally, if the Court requires the Individuals to pay for their own legal expense, and subsequently seek indemnification from the Debtors, then the Individuals may not be able to obtain adequate legal representation. And, even if the Individuals are able to obtain such representation, they would still have an incentive to settle the Investigation prematurely, lest they risk incurring legal fess that they cannot afford. Further, the Individuals may not be able to retain qualified legal representation. The costs of defending against the Investigation could become material to the Individuals, and the candidates to serve as the Individuals' legal representatives are acutely aware of this fact. Since the Individuals may not possess the financial means to pay for such services, lawyers have been reluctant to represent the Individuals, and the Individuals would only be able to retain lawyers that are willing to undertake this substantial risk. Therefore, the Individuals may not be able to retain well-qualified legal representation, and, as noted above, the Debtors estates would be harmed if the Individuals are not able to obtain adequate legal representation.

## Notice

22.     No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to each official committee appointed by the United States Trustee, and (iv) those parties that requested papers under Fed. R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Request

23.     No prior request for the relief sought in this Motion has been made to this or any other court.

13

91100-001\DOCS_DE:102203.1

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form of the proposed order attached hereto, (i) authorizing the Debtors to advance payments for any reasonable legal expenses (fees and related costs) for legal services provided to the Debtors' current or former officers, directors or employees in connection with the Investigation and/or any action that may arise from, or is related to, the Investigation, subject to an undertaking, to be held by the Debtors if any Individual is found to have engaged in conduct that would absolve the Debtors of their obligation to indemnify such Individual; and (ii) granting such other and further relief as is just and proper.

Respectfully Submitted:

Dated: November 4, 2004

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
James W. Kapp, III
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG,
JONES & WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Counsel for Debtors and Debtors in
Possession