# EXHIBIT C

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (PJW) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |
| | ) Objection Date: October 25, 2004, at 4:00 p.m. | |
| | ) Hearing Date: Only if Necessary (Negative Notice) | |

### SEVENTEENTH MONTHLY APPLICATION OF DELOITTE & TOUCHE LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES TO THE DEBTORS FOR THE PERIOD FROM JUNE 1, 2004 THROUGH JUNE 30, 2004

<u>Name of Applicant:</u>    Deloitte & Touche LLP  ("Deloitte & Touche").

<u>Authorized to Provide Professional Services to:</u>  The above-captioned debtors and debtors-in-possession.

<u>Date of Retention:</u>  February 4, 2003.

<u>Period for which Compensation and Reimbursement is Sought:</u>  June 1, 2004 through June 30, 2004.
<u>Amount of Compensation Sought as Actual, Reasonable and Necessary for the Provision of Hourly Rate Customs Procedures Review Services, Compensation and Benefits Services, and Tax</u>

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

-1-

Advisory Services:                                                                    $65,749.00

Amount of Compensation Sought as Actual, Reasonable and Necessary
for the Provision of Contingent Fee Lease Consulting Services
(not subject to holdback):                                                       207,957.04

Total Hourly Rate and Contingent Fee Compensation Sought as
Reasonable Actual and Necessary:                                         273,706.04

Less 20% Holdback for Hourly Rate Services:                          (13,149.80)

Amount of Payment Requested Hereunder for the Provision of
Hourly Rate and Contingent Fee Services:                            $260,556.24


Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary:  $1,061


This is a:        xx monthly              _ interim                _ final application.

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (PJW) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) Objection Date: October 25, 2004 at 4:00 p.m. | |
| | ) Hearing Date: Only if Necessary (Negative Notice) | |

### SEVENTEENTH MONTHLY APPLICATION OF DELOITTE & TOUCHE LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES TO THE DEBTORS FOR THE PERIOD FROM JUNE 1, 2004 THROUGH JUNE 30, 2004

This seventeenth monthly application (this "Application") of Deloitte & Touche is for

compensation for services rendered in connection with Deloitte & Touche's provision of customs

procedures review services, compensation and benefits services, tax advisory services and lease

consulting services to the Debtors, and for Deloitte & Touche's preparation hereof, during the

period from June 1, 2004 through June 30, 2004. Attached hereto as Exhibit A is the

Verification of Tim Tuerff.

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

-3-

## BACKGROUND

Deloitte & Touche was approved to provide customs procedures review services, compensation and benefits services, and tax advisory services to the Debtors *nunc pro tunc* to February 4, 2003 on an hourly rate basis (the "Hourly Rate Services") pursuant to an order entered by this Court on June 17, 2003. In addition, pursuant to the Order Authorizing the Expansion of the Scope of the Services Permitted to be Provided by Deloitte & Touche LLP to the Debtors to Include Certain Lease Consulting Services, entered by this Court on July 19, 2004, the Debtors were authorized to retain Deloitte & Touche to provide certain lease consulting services *nunc pro tunc* to October 1, 2003 on a contingent fee basis as more fully described below (the "Lease Consulting Services"), a copy of which is attached hereto as Exhibit B (the "Expansion Order"). Consistent with the Expansion Order, the Lease Consulting Services are provided pursuant to the terms of the engagement letter dated April 9, 2002 entered into between the Debtors and Deloitte & Touche, a copy of which is attached hereto as Exhibit C (the "Lease Consulting Services Engagement Letter").

As set forth in paragraph 9 of the Expansion Order:

(a) Deloitte & Touche is not required to submit detailed daily time records or expense records as part of any monthly statements, or interim or final fee applications submitted by Deloitte & Touche with respect to its provision of the lease consulting services; provided that in lieu of such records, Deloitte & Touche shall submit a reasonably detailed summary of such services and the contingent fee compensation earned by Deloitte & Touche in connection therewith as part of such monthly statements, or interim or final fee applications, and (b) Deloitte & Touche's contingent fee compensation earned in connection with such services shall not be subject to any holdbacks imposed on the compensation of professionals in these Chapter 11 Cases.

In accordance with (a) above, the Lease Consulting Services include, without limitation, (a) review of certain of the Debtors' leases and subleases to identify potential amounts owed to the

-4-

Debtors by certain of its landlords and leasehold tenants (the "Lease Underpayments"), (b)

preparation and delivery to the Debtors of reports on the Lease Underpayments and (c) recovery

of the Lease Underpayments for the Debtors, as more fully described and set forth in the Lease

Consulting Services Engagement Letter.  Further, as set forth in the invoices pertaining to the

provision of the Lease Consulting Services, attached hereto under Exhibit D, the savings realized

by the Debtors' estate as a result of the provision of the lease consulting services is $594,163.00.

Consistent with the terms of the Lease Consulting Services Engagement Letter, and as approved

pursuant to the Expansion Order, Deloitte & Touche is herein seeking approval of a contingent

fee of $207,957.04 (35% of $594,163.00) for the provision of the lease consulting services, the

payment of which is not to be subject to any holdbacks applicable to the compensation of

professionals in these Chapter 11 cases.

## FEE AND EXPENSE REIMBURSEMENT DETAIL

With respect to the Hourly Rate Services, below are the following tables setting

forth the fees and expenses sought by Deloitte & Touche in this Application: (a) a table

containing a summary of compensation sought by professional, reflecting the professional's

name, position, hourly billing rate, total hours billed and total compensation sought and (b)

tables containing a summary of compensation sought for customs procedures review services,

compensation and benefits services, tax advisory services, and the preparation of monthly

statements and fee applications broken into project categories, the total hours expended and the

total compensation sought.  With respect to the Lease Consulting Services, below is a table

setting forth the total benefit to the Debtors' estates of such services, and the contingent fee

sought in connection therewith. Also included below is a table summarizing the expenses sought by Deloitte & Touche hereunder.

In addition to the foregoing tables, attached hereto is Exhibit E, pertaining to the Hourly Rate Services, consisting of (a) a chart summarizing the fees sought by Deloitte & Touche by project category, and (b) schedules reflecting the daily summary of fees sought setting forth the date the services were provided, the professionals providing services, a description of the services, the hours expended providing the services, the professionals' hourly billing rates, and the total fees sought.

## SUMMARY OF HOURLY RATE COMPENSATION SOUGHT BY PROFESSIONAL

| Name of Professional Individual | Position and Service Lines | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Nick Bubnovich | Partner — Human Capital | $625 | 0.5 | $313 |
| Zach Georgeson | Associate — Human Capital | $255 | 4.8 | $1,224 |
| Michelle McGuire | Principal – Customs & International Tax | $600 | 20.0 | $12,000 |
| Melissa Stephanou | Manager — Customs & International Tax | $440 | 3.0 | $1,320 |
| Matthew Frank | Manager — Customs & International Tax | $440 | 7.5 | $3,300 |
| Fred Levitan | Sr. Consultant – Customs & International Tax | $340 | 0.5 | $170 |
| Robin Raley | Associate- Customs & International Tax | $230 | 4.0 | $920 |
| Guillermo Del Nogal | Associate — Customs & International Tax | $230 | 1.0 | $230 |
| Deb Chmielewski | Administrative Assistant — Customs & International Tax | $65 | 1.3 | $85 |
| Bryan Collins | Partner- National Tax | $600 | 21.5 | $12,900 |
| Sarah Mahn | Manager- National Tax | $475 | 36.0 | $17,100 |
| Midori Owaki | Administrative Assistant — National Tax | $75 | 1.7 | $128 |
| Carol L. Washington | Administrative Assistant — National Tax | $75 | 3.5 | $263 |
| Vinita L. Chavis | Administrative Assistant — National Tax | $75 | 11.5 | $863 |
| Jonathan Forrest | Senior Manager — Customs & International Tax | $515 | 29.0 | $14,935 |

Total Fees:    $65,749

-6-

Total Hours:    145.8
Blended Rate:  $450.95

## Customs Procedures Review Services by Project Category

| Project Category | Total Hours | Total Fees Requested |
|---|---|---|
| Customs Audit/FA (Focused Assessment) | 34.3 | $17,335 |
| | | |
| | | |
| TOTAL | | $17,335 |

## Compensation and Benefits Services by Project Category

| Project Category | Total Hours | Total Fees Requested |
|---|---|---|
| Compensation | 0.5 | $313 |
| | | |
| TOTAL | | $313 |

## Tax Advisory Services by Project Category

| Project Category | Total Hours | Total Fees Requested |
|---|---|---|
| Ruling Request | 101.5 | $46,060 |
| International Tax | 0.2 | $15 |
| | | |
| TOTAL | | $46,075 |

## Monthly Statement and Fee Application Preparation

| Project Category | Total Hours | Total Fees Requested |
|---|---|---|
| Fee Application/Billing | 9.3 | $2,027 |
| | | |
| TOTAL | | $2,027 |

## SUMMARY OF CONTINGENT FEE SERVICES

### Lease Consulting Services

| | Total Savings to Debtors' Estate | Total Contingent Fees Requested |
|---|---|---|
| TOTAL | $594,163 | $207,957.04 |

### Expense Summary

| Expense Category | Service Provider (if applicable) | Total Expenses |
|---|---|---|



| | | | |
|---|---|---|---|
| Hotel | | | $173 |
| Travel Expenses | | | $888 |
| | | | |
| TOTAL | | | $1,061 |

DOCS_DE:100744.1

Dated: _October_ 1 2004

DELOITTE & TOUCHE LLP

Tim Tuerff, Partner
555 West 12 Street
Suite 500
Washington, DC 20004-1207
Telephone:  (202) 378-5223
Facsimile:  (202) 661-1934

Customs services providers, and tax and compensation
advisors for Debtors and Debtors in Possession

# EXHIBIT A

## EXHIBIT A

## VERIFICATION

WASHINGTON                          :

DISTRICT OF COLUMBIA       :

Tim Tuerff, after being duly sworn according to law, deposes and says:

a)      I am a partner with the applicant accounting firm of Deloitte & Touche LLP.

b)      I have personal knowledge of Deloitte & Touche's retention as customs services providers, tax and compensation and lease consulting advisors to the Debtors in these Chapter 11 cases.

c)      I have reviewed the foregoing Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief. Moreover, I have reviewed Del.Bankr.LR 2016-2 and the 'Amended Administrative Order Under 11 U.S.C. §§105(a) and 331 Establishing Revised Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members', signed April 17, 2002, and submit that the Application substantially complies with such Rule and Order.

_Tim Tuerff_

Tim Tuerff

SWORN AND SUBSCRIBED
before me this 1st day of October, 2004.

_Deborah S. Bang_
Notary Public
My Commission Expires: 3/14/2005

91100-001\DOCS_DE:79005.1

-10-

# EXHIBIT B

EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | Re: Docket No. 5322 and |
| | ) | 5/24/04 Agenda Item #2 |

## ORDER AUTHORIZING THE EXPANSION OF THE SCOPE OF THE SERVICES PERMITTED TO BE PROVIDED BY DELOITTE & TOUCHE LLP TO THE DEBTORS TO INCLUDE CERTAIN LEASE CONSULTING SERVICES

Upon consideration of the motion (the "Motion")[2] of the above captioned debtors and

debtors in possession (collectively, the "Debtors") for entry of an order (this "Order")

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] Capitalized terms not otherwise described herein will have the meanings ascribed to them in the Motion.

91100-001\DOCS_DE:96476.1

authorizing the expansion of the scope of the services permitted to be provided by Deloitte & Touche LLP to the Debtors to include certain Lease Consulting Services, and upon the supplemental affidavit of Larry D. Ishol (the "Supplemental Ishol Affidavit") filed in support of the Motion; and the Court being satisfied, based on the representations made in the Motion and Supplemental Ishol Affidavit, that Deloitte represents no interest adverse to the Debtors' estates with respect to the matter upon which they are to be engaged, that Deloitte is a "disinterested person" as that term is defined under section 104(14) of title 11 of the United States Code (as amended, the "Bankruptcy Code"), as modified by section 1107(b) of the Bankruptcy Code, and that the expansion of the scope of the Deloitte Services to include the Lease Consulting Services, as requested pursuant to the Motion, is necessary and would be in the best interests of the Debtors, their creditors and the Debtors' estates; and it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. §157(b); and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and after due deliberation and sufficient cause appearing therefore,

IT IS HEREBY ORDERED THAT:

1. The Motion is granted as modified herein.

2. The Debtors are authorized to expand the scope of the Deloitte Services to include Deloitte's provision of the Lease Consulting Services on the terms set forth in the Motion, the Supplemental Ishol Affidavit and the Lease Consulting Services Engagement Letter, *nunc pro tunc* to October 1, 2003.

3. Deloitte will provide such Lease Consulting Services as Deloitte and the Debtors shall deem appropriate and feasible in order to assist the Debtors in the course of these Chapter

2

11 Cases as set forth in the Motion, the Supplemental Ishol Affidavit and the Lease Consulting Services Engagement Letter.

4.      The indemnification provisions of the Lease Consulting Services Engagement Letter are approved subject to the following:

(a)      subject to the provisions of subparagraph (c) infra, the Debtors are authorized to indemnify, and shall indemnify Deloitte, in accordance with the Lease Consulting Services Engagement Letter for any claim arising from, related to, or in connection with the Lease Consulting Services, but not for any claim arising from, related to, or in connection with Deloitte's postpetition performance of any services, other than the Lease Consulting Services, unless such other postpetition services and indemnification thereof are approved by the Court;

(b)      notwithstanding any provisions of the Lease Consulting Services Engagement Letter to the contrary, the Debtors shall have no obligation to indemnify Deloitte, or provide contribution or reimbursement to Deloitte, for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen solely from Deloitte's gross negligence or willful misconduct, or (ii) settled prior to a judicial determination as to Deloitte's gross negligence or willful misconduct, but determined by the Court, after notice and a hearing, to be claim or expense for which Deloitte should not receive indemnity, contribution or reimbursement under terms of the Engagement Letters as modified; and

(c)      if, before the earlier of (i) the entry of an order confirming a plan under chapter 11 of the Bankruptcy Code (that Order having become a final order no longer subject to appeal), or (ii) the entry of an order closing this chapter 11 case, Deloitte believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtor's indemnification, contribution and/or reimbursement obligations under the Lease Consulting Services Engagement Letter (as modified by this Order), including without limitation the advancement of defense costs, Deloitte must file an application thereof in this Court, and the Debtors may not pay any such amounts to Deloitte before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Deloitte for indemnification, contribution or reimbursement and is not a provision limiting the duration of the Debtors' obligation to indemnify Deloitte.

5.      Paragraph 6(a) of Section III ("General") of the Lease Consulting Services Engagement Letter (applicable to the provision of the Lease Consulting Services), which services are not subject to the Debtors' indemnification obligations set forth above) shall be null

3

91[or-enhdocs_pa3a11o.]

and void to the extent the claims, liabilities or expenses referred to in such paragraphs arise during the pendency of these chapter 11 cases.

6.    Deloitte's right to assign or subcontract its rights and obligations to any affiliate or related entity as set forth in paragraph (13) of Section III ("General") of the Lease Consulting Services Engagement Letter- is subject to this Court's approval of the retention of such affiliate or related entity by the Debtors in these Chapter 11 Cases.

7.    Deloitte may render Lease Consulting Services deemed appropriate and necessary by the Debtors and Deloitte to benefit the Debtors' estates.

8.    Deloitte shall be compensated for services its provisions of the Lease Consulting Services and reimbursed for expenses incurred consistent with the terms of the Motion, the Supplemental Ishol Affidavit and the Lease Consulting Services Engagement Letter, and in accordance with the procedures set forth in the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules and orders of this Court, including without limitation, (a) the Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, dated May 3, 2001, effective as of April 2, 2001 and (b) the Amended Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Revised Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, dated April 17, 2002 (together, the "Administrative Order");

9.    Notwithstanding anything to the contrary in the Administrative Order, Deloitte (a) not be required to submit detailed daily time records or expense records as part of any monthly statements, or interim or final fee applications submitted by Deloitte with respect to its provision of the Lease Consulting Services; provided, however, that in lieu of such records, Deloitte shall

91186 001:DOCS_DE:94156.1

submit a reasonably detailed summary of such services and the contingent fee compensation earned in connection therewith as part of such monthly statements, or interim or final fee applications, and (b) that Deloitte's contingent fee compensation earned in connection with such services, not be subject to any holdbacks imposed on the compensation of professionals in these Chapter 11 Cases.

10. Notwithstanding anything to the contrary herein or in the Application, the Affidavit or the Administrative Order, Deloitte's fees shall be subject to the approval of the Court under a reasonableness standard upon proper application by Deloitte in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any applicable orders of this Court, including, without limitation, the Administrative Order.

11. This Court retains jurisdiction with respect to all matters arising from or relating to the implementation of this Order.

Dated: 7/19, 2004

_____
The Honorable Judith K. Fitzgerald
United States Bankruptcy Judge

# EXHIBIT C

EXHIBIT C

**GRACE**

W. R. Grace & Co. - Conn.
Village Center Drive, Suite 210
Swedsboro, N.J. 08085
Tel: 856/467-2290
FAX: 856/467-4820

# TENANT ENGAGEMENT LETTER

## LEASE CONSULTING SERVICES

This Engagement Letter ("Agreement") dated this 9th day of April 2002, is by and between W.R. Grace & Co. (the "Tenant" or the "Company") and Deloitte & Touche LLP ("D&T").

### I.    SCOPE OF SERVICES

Tenant hereby engages D&T to perform Lease Consulting Services relating to all of the Tenant's leases, subleases, sub subleases and related amendments (the "Lease") as made available to D&T regarding Tenant's tenancy per the attached Exhibit A.

The purpose of the lease consulting service (also known as lease auditing) is to inspect the Landlord's books and records to determine proper allocation of operating expense and tax pass-throughs charged to the Tenant, or any other relevant charges from lease commencement through the latest escalation year as permitted by Lease and Landlord. D&T shall prepare a preliminary inspection analysis based on reading and abstracting each lease, sublease and sub sublease and analyzing past operating expense trends by line item. In addition, D&T shall analyze the subleases and sub subleases to determine if there may be profit sharing due to Tenant based upon these real estate transactions.

Tenant shall use reasonable efforts to support D&T in gaining access to Landlord's books and records for inspection. D&T shall prepare a lease report indicating exceptions, if any, in operating and property tax accounts, such as utilities, repairs and maintenance, janitorial, security, administrative costs, management fees, common areas, property taxes, gross-ups, etc. Adequate supporting evidence shall be provided to fully document claims with the Landlord. The report shall first be prepared as a draft (the initial final report) for internal Tenant usage. Once approved, the lease report shall be issued to the Tenant for forwarding onto the Landlord. Once the Landlord responds, as necessary, D&T shall prepare an additional counter response under the same drafting procedures.

Upon Tenant's approval, D&T on behalf of the Tenant, shall assist in negotiations with the Landlord to recover any funds that were improperly charged for all relevant retroactive and prospective years throughout the term of the Lease.

In addition, upon Tenant request we will engage a professional lease/space measurement firm to verify the reliability of the Tenant's leased square footage.

These services do not constitute an engagement to provide audit, compilation, review, or attestation services as described in the pronouncements on professional standards issued by the American Institute of Certified Public Accountants.

# GRACE

W. R. Grace & Co. - Conn.
Village Center Drive, Suite 210
Swedesboro, N.J. 08085
Tel: 856/467-2150
FAX: 856/467-4828

## II.    COMPENSATION

D&T proposes the following compensation package:

| | |
|---|---|
| $500 | (Five hundred dollars) due (per each lease/sublease/sub sublease) when the preliminary inspection analysis report is issued to Tenant. |
| $7,500 | (Seven thousand five hundred dollars) due when the initial draft report is issued to Tenant for forwarding to Landlord plus out-of-pocket travel expenses not to exceed $1,000, plus |
| 35% | (thirty five percent) of all savings actually achieved from the Landlord, subtenants or sub subtenants. Tenant shall be first reimbursed the $7,500 plus the out of pocket travel expenses from the initial gross recoveries prior to D&T being compensated 35% from the balance of the remaining recoveries. Fee shall include savings related to future savings or recoveries to Tenant not to exceed two years. |

All payments are due within 30 days of billing.

## III.    GENERAL

1.    **Services.** It is understood and agreed that D&T's services may include advice and recommendations, but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by the Company. In connection with its services hereunder, D&T shall be entitled to rely on all decisions and approvals of the Company.

2.    **Payment of Invoices.** Properly submitted invoices upon which payment is not received within thirty (30) days of the invoice date shall accrue a late charge of the lesser of (i) 1½% per month or (ii) the highest rate allowable by law, in each case compounded monthly to the extent allowable by law. Without limiting its rights or remedies, D&T shall have the right to halt or terminate its services entirely if payment is not received within thirty (30) days of the invoice date.

3.    **Term.** Unless terminated sooner in accordance with its terms, this engagement shall terminate on the completion of D&T's services hereunder. This engagement may be terminated by either party at any time by giving written notice to the other party not less than thirty (30) calendar days before the effective date of termination.

z

**GRACE**

W. R. Grace & Co. - Conn.
Village Center Drive, Suite 210
Swedesboro, N.J. 08085
Tel: 856/467-3250
FAX: 856/467-4828

4.    Ownership.

a)    <u>D&T Technology</u>. D&T has created, acquired or otherwise has rights in, and may, in connection with the performance of services hereunder, employ, provide, modify, create, acquire or otherwise obtain rights in, various concepts, ideas, methods, methodologies, procedures, processes, know-how, and techniques (including, without limitation, function, process, system and data models); templates; generalized features of the structure, sequence and organization of software, user interfaces and screen designs; general purpose consulting and software tools, utilities and routines; and logic, coherence and methods of operation of systems (collectively, the "D&T Technology").

b)    <u>Ownership of Deliverables</u>. Except as provided below, upon full and final payment to D&T hereunder, the tangible items specified as deliverables or work product in the engagement letter to which these terms are attached (the "Deliverables") shall become the property of the Company. To the extent that any D&T Technology is contained in any of the Deliverables, D&T hereby grants the Company, upon full and final payment to D&T hereunder, a royalty-free, fully paid-up, worldwide, non-exclusive license to use such D&T Technology in connection with the Deliverables.

c)    <u>Ownership of D&T Property</u>. To the extent that D&T utilizes any of its property (including, without limitation, the D&T Technology or any hardware or software of D&T) in connection with the performance of services hereunder, such property shall remain the property of D&T and, except for the license expressly granted in the preceding paragraph, the Company shall acquire no right or interest in such property. Notwithstanding anything herein to the contrary, the parties acknowledge and agree that (a) D&T shall own all right, title, and interest, including, without limitation, all rights under all copyright, patent and other intellectual property laws, in and to the D&T Technology and (b) D&T may employ, modify, disclose, and otherwise exploit the D&T Technology (including, without limitation, providing services or creating programming or materials for other companies). D&T does not agree to any terms that may be construed as precluding or limiting in any way its right to (a) provide consulting or other services of any kind or nature whatsoever to any person or entity as D&T in its sole discretion deems appropriate or (b) develop for itself, or for others, materials that are competitive with those produced as a result of the services provided hereunder, irrespective of their similarity to the Deliverables.

5.    Limitation on Warranties. THIS IS A SERVICES ENGAGEMENT. D&T WARRANTS THAT IT SHALL PERFORM SERVICES HEREUNDER IN GOOD FAITH. D&T DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

6.    Limitation on Damages and Indemnification.

a)    The Company agrees that D&T and its personnel shall not be liable to the Company for any claims, liabilities, or expenses relating to this engagement for an aggregate amount in excess of the fees paid by the Company to D&T pursuant to this engagement, except to the extent finally judicially determined to have resulted primarily from the bad faith or intentional misconduct of D&T. In no event shall D&T or its personnel be liable for consequential, special, indirect, incidental, punitive or exemplary loss, damage, or expense relating to this engagement.

**GRACE**

W. R. Grace & Co. - Conn.
Village Center Drive, Suite 210
Swedesboro, N.J. 08085

b) The Company shall indemnify and hold harmless D&T and its associates from all claims, liabilities, and expenses relating to this engagement, except to the extent finally judicially determined to have resulted primarily from the bad faith or intentional misconduct of D&T.

c) The provisions of this Paragraph and Paragraph 9 shall apply to the fullest extent of the law, whether in contract, statute, tort (such as negligence), or otherwise. In circumstances where all or any portion of the provisions of this Paragraph are finally judicially determined to be unavailable, D&T's aggregate liability for any claims, liabilities, or expenses relating to this engagement shall not exceed an amount which is proportional to the relative fault that D&T's conduct bears to all other conduct giving rise to such claims, liabilities, or expenses.

7. **Cooperation.** The Company shall cooperate with D&T in the performance by D&T of its services hereunder, including, without limitation, providing D&T with reasonable facilities and timely access to data, information and personnel of the Company. The Company shall be responsible for the performance of its personnel and agents and for the accuracy and completeness of all data and information provided to D&T for purposes of the performance by D&T of its services hereunder.

8. **Force Majeure.** D&T shall not be liable for any delays or non-performance resulting from circumstances or causes beyond its reasonable control, including, without limitation, acts or omissions or the failure to cooperate by the Company (including, without limitation, entities or individuals under its control, or any of their respective officers, directors, employees, other personnel and agents), acts or omissions or the failure to cooperate by any third party, fire or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.

9. **Limitation on Actions.** No action, regardless of form, relating to this engagement, may be brought by either party more than one year after the cause of action has accrued, except that an action for non-payment may be brought by a party not later than one year following the date of the last payment due to such party hereunder.

10. **Independent Contractor.** It is understood and agreed that each of the parties hereto is an independent contractor and that neither party is, nor shall be considered to be, an agent, distributor, partner, fiduciary or representative of the other. Neither party shall act or represent itself, directly or by implication, in any such capacity in respect of the other or in any manner assume or create any obligation on behalf of, or in the name of, the other.

11. **Confidentiality and Internal Use.**

a) The Company agrees that all services hereunder and Deliverables shall be solely for the Company's informational purposes and internal use, and are not intended to be and should not be used by any person or entity other than the Company. The Company further agrees that such services and Deliverables shall be used by the Company solely to assess the effectiveness of its customer service initiatives and customer service training programs, and shall not be circulated, quoted, disclosed, or distributed to, nor shall reference to such services or Deliverables be made to, any person or entity other than the Company.

b) To the extent that, in connection with this engagement, D&T comes into possession of any proprietary or confidential information of the Company, D&T will not disclose such information to any third party without the Company's consent, except (a) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional

4

**GRACE**

W. R. Grace & Co. - Conn.
Village Center Drive, Suite 215
Swedesboro, N.J. 08085

standards, or in connection with litigation pertaining hereto, or (B) to the extent such information (i) shall have otherwise become publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a disclosure by D&T in breach hereof, (ii) is disclosed by the Company to a third party without substantially the same restrictions as set forth herein, (iii) becomes available to D&T on a nonconfidential basis from a source other than the Company which D&T believes is not prohibited from disclosing such information to D&T by obligation to the Company, (iv) is known by D&T prior to its receipt from the Company without any obligation of confidentiality with respect thereto, or (v) is developed by D&T independently of any disclosures made by the Company to D&T of such information. In addition, the Company acknowledges and agrees that any such information that comes to the attention of D&T in the course of performing this engagement may be considered and used by D&T in the context of responding to its professional obligations as the independent accountants for the Company.

12.  **Survival and Interpretation.** The agreements and undertakings of the Company contained in the engagement letter to which these terms are attached, together with the provisions of Paragraphs 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 and 16 hereof, shall survive the expiration or termination of this engagement. For purposes of these terms, "D&T" shall mean Deloitte & Touche LLP, Deloitte Consulting LLC, Deloitte Touche Tohmatsu, the member firms of Deloitte Touche Tohmatsu and their affiliates, all of their partners, principals, members, owners, directors, staff and agents, and in all cases any successor or assignee.

13.  **Assignment.** Except as provided below, neither party may assign, transfer or delegate any of its rights or obligations hereunder (including, without limitation, interests or claims relating to this engagement) without the prior written consent of the other party. D&T may assign or subcontract its rights and obligations hereunder to any affiliate or related entity without the consent of the Company.

14.  **Waiver of Jury Trial.** D&T AND THE COMPANY HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER IN CONTRACT, STATUTE, TORT (SUCH AS NEGLIGENCE), OR OTHERWISE) RELATING TO THIS ENGAGEMENT.

15.  **Entire Agreement, Amendment and Notices.** These terms, and the engagement letter to which these terms are attached, including exhibits, constitute the entire agreement between D&T and the Company with respect to this engagement, supersede all other oral and written representations, understandings or agreements relating to this engagement, and may not be amended except by written agreement signed by the parties. In the event of any conflict, ambiguity or inconsistency between these terms and the engagement letter to which these terms are attached, these terms shall govern and control. All notices hereunder shall be (i) in writing, (ii) delivered to the representatives of the parties at the addresses first set forth above, unless changed by either party by notice to the other party, and (iii) effective upon receipt.

**GRACE**

W. R. Grace & Co. - Conn,
Village Center Drive, Suite 210
Swedesboro, N.J. 08085
Tel: 856/467-2250
Fax: 856/464-5

16.   **Governing Law and Severability.** These terms, the engagement letter to which these terms are attached, including exhibits, and all matters relating to this engagement (whether in contract, statute, tort (such as negligence), or otherwise), shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof). If any provision of such terms or engagement letter is found by a court of competent jurisdiction to be unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement on the dated indicated above.

| W.R. GRACE & CO. - CONN | DELOITTE & TOUCHE LLP |
|---|---|
| Print Name:  AKOS  L.  NAGY | Print Name:  Joshua W. Leonard |
| Signature: | Signature: |
| Its:  Director of Real Estate | Its:  Partner |
| Date:  April 15, 2002 | Date:  4/17/02 |
| Village Center Drive – Suite 210 | 350 South Grand Avenue |
| Swedesboro, N.J. 08085 | Los Angeles, California 90071-3462 |

6

**GRACE**

W. R. Grace & Co. - Conn.
Village Center Drive, Suite 210
Swedesboro, N.J. 08085
Tel: 856/467-2250
FAX: 856/467-4828

<u>EXHIBIT A</u>

| Building Address | Subtenant/ Sub Subtenant Name |
|---|---|
| 41 W. 42nd St. or 1114 Sixth Avenue New York, N.Y. | Coudert Brothers |
| | Victoria's Secret |
| | TrizecHahn |
| | Salant Corp. |
| | Kronish Lieb |
| | Tahari |
| | Weller Arnow Mgt |
| | Burke & Parsons |
| | Mullin & Assoc. |
| | Winterthur |
| | Garbarini, Scher & Decicco |
| | Norddeutsche Landesbank |
| | Comptroller of the Currency |
| | Cumberland Associates |
| | City University of New York |
| | Caffiness Corp. |
| | Lipha Pharmaceuticals |
| | Audex |

The above list of subtenants and sub subtenants is subject to final determination by D&T that there exists no conflict(s) that in D&T's sole judgment would preclude its performance of the contemplated procedures with respect to any one or more of the above subtenants and sub subtenants.

# EXHIBIT D

Remittance Address
Deloitte & Touche LLP
File # 52279
Los Angeles, California 90074-2579

Tel: (213) 688-0800
Fax: (213) 688-0100

Taxpayer I.D. No. 13-3891517

**EXHIBIT D**

# Deloitte & Touche

Invoice Number: 08634941

Date: October 16, 2003

Mr. Akos L. Nagy
Director of Real Estate
W. R. Grace & Company
7500 Grace Drive.
Columbia, MD 21044

Progress Billing for Lease Consulting Services rendered with respect to
W. R. Grace & Company's office lease at 1114 Sixth Avenue, New
York, New York. Fees are in accordance with engagement letter dated
April 9, 2002.

| | |
|---|---|
| Savings Achieved from Victoria's Secret Catalogue NY, Inc. | $384,163.00 |
| Deloitte & Touche Contingency Fee | 35% |
| **Total Due and Payable** | **$134,457.04** |

Deloitte & Touche LLP
950 South Grand Avenue
Los Angeles, California 90071-3462

Please Remit to:
File # 52578
Los Angeles, California 90074-2578

Tel: (213) 688-0800
Fax: (213) 688-0100

Taxpayer I.D. No. 13-3891517

# Deloitte & Touche

Invoice Number: 08850352

Date:    May 26, 2004

Mr. Akos L. Nagy
Director of Real Estate
W.R. Grace & Company
7500 Grace Drive
Columbia, Maryland 21044

Amendment to Invoice #08850216, dated 04/30/04
For Internal Accounting Purposes Only

Final Billing for Lease Consulting Services rendered with respect to
W.R. Grace & Company's office lease at 1114 Sixth Avenue, New
York, New York.  Fees are in accordance with engagement letter dated
April 9, 2002.

| | |
|---|---|
| Savings Achieved from Coudert Brothers LLP | $210,000 |
| Deloitte & Touche Contingency Fee | 35% |
| **Total Due and Payable** | **$ 73,500** |

# EXHIBIT E

. Grace & Co.
rs Spent by Each Person
·1 through June 30, 2004

| loyee | Hours | Billing Rate | Total Fees | Expenses |
|---|---|---|---|---|
| Georgeson | 0 | $255 | $0 | 0 |
| Bubnovich | 0.5 | $625 | $313 | 0 |
| l Human Capital Services Fees | 0.5 | | $313 | $0 |
| Tuerff | 0.0 | $600 | $0 | $0 |
| n Collins | 21.5 | $600 | $12,900 | $0 |
| Panitch | 0.0 | $600 | $0 | $0 |
| thain Forrest | 29.0 | $515 | $14,935 | $0 |
| orl Owaki | 0.2 | $75 | $15 | $0 |
| ol L. Washington | 3.5 | $75 | $263 | $0 |
| a L. Chavis | 11.5 | $75 | $863 | $0 |
| Mahn | 36.0 | $475 | $17,100 | $0 |
| al National Tax Services Fees | 101.7 | | $46,076 | $0 |
| nele McGuire | 20.0 | $600 | $12,000 | $1,061 |
| ssa Stephanou | 3.0 | $440 | $1,320 | 0 |
| thew Frank | 7.5 | $440 | $3,300 | 0 |
| l Levitan | 0.5 | $340 | $170 | 0 |
| in Raley | 1.0 | $230 | $230 | 0 |
| llermo Del Nogal | 1.0 | $230 | $230 | 0 |
| Chmielewski | 1.3 | $65 | $85 | 0 |
| al Customs & International Trade Fees | 34.3 | | $17,335 | $1,061 |
| in Raley | 3.0 | $230 | $690 | 0 |
| orl Owaki | 1.5 | $75 | $113 | 0 |
| h Georgeson | 4.8 | $255 | $1,224 | 0 |
| al Monthly Statement & Fee Application Preparation Fees | 9.3 | | $2,027 | $0 |
| TAL FEES DUE | 145.8 | | $65,749 | $1,061 |

## W.R. Grace & Co.

| Date | Person | Project Category | Description | Hours | Billing Rate | Professional Fees | Expenses |
|------|--------|------------------|-------------|-------|--------------|-------------------|----------|
| /1/2004 | BC | Ruling Request | Meet with Jonathan Forrest and Sara Mahn regarding revisions needed for final draft of ruling request regarding the lonely parent exception to | 1.5 | 600 | $900 | $0 |
| /1/2004 | JF | Ruling Request | Meet with Bryan Collins and Sara Mahn regarding revisions needed for final draft of ruling request regarding the lonely parent exception to the SRLY rules including revisions to attachments. | 1.5 | 515 | $773 | $0 |
| /1/2004 | JF | Ruling Request | Begin finalizing entire ruling request including final revisions from Bryan Collins. | 6 | 515 | $3,090 | $0 |
| /1/2004 | VC | Ruling Request | Ruling Request | 0.5 | 75 | 38 | 0 |
| 1/1/2004 | SM | Ruling Request | Meet with Bryan Collins and Jonathan Forrest regarding revisions needed for final draft of ruling request regarding the lonely parent exception to the SRLY rules including revisions to attachments. | 1.5 | 475 | $713 | 0 |
| /1/2004 | SM | Ruling Request | Prepare attachments to ruling request regarding the lonely parent exception to the SRLY rules including revisions to powerpoint slides. | 6.5 | 475 | $3,088 | 0 |
| 3/2/2004 | BC | Ruling Request | Begin final review of entire ruling request regarding the lonely parent exception to the SRLY rules. | 3.5 | 600 | $2,100 | $0 |
| 3/2/2004 | JF | Ruling Request | Continue finalizing entire ruling request including final revisions from Bryan Collins. | 6.5 | 515 | $3,348 | $0 |
| 3/2/2004 | VC | Ruling Request | Coordination with mailroom | 1 | 75 | $75 | 0 |
| 3/2/2004 | SM | Ruling Request | Begin final changes to attachments to ruling request regarding the lonely parent exception to the SRLY rules including working with administrative personnel to supervise assembly and finalization of ruling request. | 10 | 475 | $4,750 | 0 |
| 6/3/2004 | BC | Ruling Request | Continue final review of entire ruling request including attachments. | 8 | 600 | $4,800 | $0 |
| 6/3/2004 | JF | Ruling Request | Make final revisions to ruling request and attachments to ruling request. In addition, prepare some of the attachments for the ruling request including indices. | 9 | 515 | $4,635 | $0 |
| 6/3/2004 | VC | Ruling Request | Ruling Request | 3 | 75 | $225 | 0 |
| 6/3/2004 | CW | Ruling Request | | 1 | 75 | $75 | 0 |
| 6/3/2004 | SM | Ruling Request | Make final changes to attachments to ruling request regarding the lonely parent exception to the SRLY rules including working with administrative personnel to supervise assembly and finalization of ruling request. | 9 | 475 | $4,275 | 0 |
| 6/4/2004 | BC | Ruling Request | Complete final review of entire ruling request regarding the lonely parent exception to the SRLY rules including attachments and provide comments to Jonathan Forrest and Sara Mahn. | 5 | 600 | $3,000 | $0 |
| 6/4/2004 | JF | Ruling Request | Complete final revisions to ruling request and provide comments to Sara Mahn regarding final revisions to attachments to ruling request. | 6 | 515 | $3,090 | $0 |
| 6/4/2004 | VC | Ruling Request | Coordination with mailroom | 2 | 75 | $150 | 0 |
| 6/4/2004 | SM | Ruling Request | Make final changes to attachment to ruling request including working with Jonathan Forrest to make final changes to ruling request and working with administrative personnel to supervise assembly, finalization, and filing of ruling request. | 9 | 475 | $4,275 | 0 |
| 6/4/2004 | MF | FA | Telephone call with Nasos Phillips | 0.5 | $440 | $220 | $0 |
| | | | Calculations and review of duty paid for each | | | $220 | |
| 6/4/2004 | MF | FA | importer number in FY03 | 0.5 | $440 | | $0 |
| 6/4/2004 | DC | Admin | Prepared paperwork to create a billing group | 0.3 | $65 | $20 | $0 |
| 6/7/2004 | VC | Ruling Request | Collating of multiple file copy ruling requests | 3 | 75 | $225 | 0 |
| 6/7/2004 | CW | Ruling Request | | 2.5 | 75 | $188 | 0 |
| 6/8/2004 | VC | Ruling Request | Mailing of client files | 2 | 75 | $150 | 0 |
| 6/9/2004 | RR | Billing | Prepared Grace bill for May | 3 | $230 | $690 | $0 |
| | | FA (Focused | | | | $0 | |
| 6/13/2004 | MM | Assessment) | Travel expenses - airplane tickets | 0 | $600 | | $381 |
| 6/13/2004 | MM | FA | Travel expenses - rental car | 0 | $600 | $0 | $89 |
| 6/13/2004 | MM | FA | Travel expenses - parking | 0 | $600 | $0 | $84 |
| 6/13/2004 | MM | FA | Travel expenses - hotel tax | 0 | $600 | $0 | $19 |

# W.R. Grace & Co.

| Data | Person | Project Category | Description | Hours | Billing Rate | Professional Fees | Expenses |
|------|--------|------------------|-------------|-------|--------------|-------------------|----------|
| /13/2004 | MM | FA | Travel expenses – parking | 0 | $600 | $0 | $27 |
| /13/2004 | MM | FA | Travel expenses – hotel | 0 | $600 | $0 | $154 |
| /14/2004 | ZG | Human Capital | Transitioned work from Allison to myself. Met with Jane Zeis and Allison to discuss the transition process and expected work for the fall Human Capital Group. | 1.5 | 255 | $383 | $0 |
| /14/2004 | MO | Billing | Billing | 0.5 | 75 | 38 | 0 |
| /14/2004 | MM | FA | Preparation for meeting with Grace and Customs | 1 | $600 | $600 | $0 |
| /14/2004 | MM | FA | Meeting with Grace and Customs | 4 | $600 | $2,400 | $0 |
| /14/2004 | MF | FA | Review of NAFTA sample transactions and follow-up issues | 0.5 | $440 | $220 | $0 |
| /15/2004 | ZG | Human Capital | Met with Allison to discuss W.R. Grace billing methodology. She left the firm and passed the billing responsibilities along to myself. | 1.5 | 255 | $383 | $0 |
| /15/2004 | BC | Ruling Request | Telephone call with Carol Finka regarding update from IRS on ruling request filed with the IRS regarding the lonely parent exception to the SRLY rules. | 1 | 600 | $600 | $0 |
| /16/2004 | MF | FA | Phone conversation with Norm McIntosh; Review of NAFTA sample transactions and follow-up issues | 0.5 | $440 | $220 $220 | $0 |
| 3/15/2004 | MF | FA | Phone conversation with Nasos Philips; | 0.5 | $440 | $220 | $0 |
| 3/16/2004 | MF | FA | Review of NAFTA sample transactions and follow-up issues | 0.5 | $440 | $220 | $0 |
| 3/16/2004 | MF | FA | Conference calls with Norm McIntosh and Nasos Philips re NAFTA samples and strategy for Focused Assessment | 1.5 | $440 | $660 | $0 |
| 8/17/2004 | MF | FA | Conf call with Grace re prior disclosure | 1 | $600 | $600 | $0 |
| 8/18/2004 | MM | FA | Worked on May 2004 billing for all service lines. Prepared the billing summary for each group and calculated Human Capital's estimated fees. | 1.5 | 255 | $383 | $0 |
| 8/21/2004 | ZG | Human Capital | Telephone call with IRS personnel regarding the ruling request filed with them regarding the lonely parent exception to the SRLY rules. | 1 | 600 | $600 | $0 |
| 8/21/2004 | BC | Ruling Request | Revised prior disclosure letter | 1.5 | $440 | $660 | $0 |
| 8/21/2004 | MS | FA | Researched and emailed to Michele the requirems | 0.5 | $340 | $170 | |
| 8/21/2004 | FL | FA | Telephone call with IRS personnel regarding the status of the ruling request filed with them regarding the lonely parent exception to the SRLY rules. | 1 | 600 | $600 | $0 |
| 8/22/2004 | BC | Ruling Request | Drafted prior disclosure | 3 | $600 | $1,800 | $0 |
| 8/22/2004 | MM | FA | Performed FOIA data manipulation for port of entry information and entry universe | 1 | $440 | $440 | $0 |
| 8/22/2004 | MS | FA | Conference calls with Nasos Philips; discussion of strategy for NAFTA sample transaction errors | 2 | $440 | $880 | $0 |
| 8/22/2004 | MF | FA | Drafted Grace Prior Disclosure | 1 | $230 | $230 | $0 |
| 8/22/2004 | RR | FA | Set up conference call with Germany | 0.2 | 75 | $15 | |
| 8/23/2004 | MO | International Tax | Work on prior disclosure | 2 | $600 | $1,200 | $0 |
| 8/23/2004 | MM | FA | Review of sample transaction documentation and FOIA data | 0.5 | $440 | $220 | $0 |
| 8/23/2004 | MF | FA | Organized FOIA data using excel | 1 | $230 | $230 | $0 |
| 8/23/2004 | GD | FA | Filled out paperwork to arrange accounts properly | 1 | $85 | $85 | $0 |
| 8/23/2004 | DC | Admin | Estimated April and May 2004 fees for Human Capital per Tony Scoles' request. Sent a quick summary of these two numbers. | 0.3 | 255 | $77 | $0 |
| 8/24/2004 | ZG | Human Capital | Telephone call with an IRS attorney regarding the ruling request filed with the IRS regarding the lonely parent exception to the SRLY rules. | 0.5 | 600 | $300 | $0 |
| 8/24/2004 | BC | Ruling Request | Work on prior disclosure | 2 | $600 | $1,200 | $0 |
| 8/24/2004 | MM | FA | Billing | 1 | 75 | $75 | 0 |
| 8/25/2004 | MO | Billing | Work on prior disclosure | 1 | $600 | $600 | $0 |
| 8/25/2004 | MM | FA | Travel expenses- parking | 0 | $600 | $0 | $30 |
| 8/27/2004 | MM | FA | Travel expenses – airplane tickets | 0 | $600 | $0 | $287 |
| 8/27/2004 | MM | FA | Discuss with Mike P. pay package for new VP of finance who will be replacing Fred. | 0.5 | 625 | $313 | $0 |
| 8/28/2004 | NB | Human Capital | Work on prior disclosure | 1 | $600 | $600 | $0 |
| 8/28/2004 | MM | FA | Working session at grace on implementation plan | 5 | $600 | $3,000 | $0 |
| 8/29/2004 | MM | FA | Worked on CF-28 | 0.5 | $440 | $220 | $0 |
| 8/30/2004 | MS | FA | | | | | $0 |

**W.R. Grace & Co.**

| Date | Person | Project Category | Description | Hours | Billing Rate | Professional Fees | Expenses |
|------|--------|-----------------|-------------|-------|--------------|-------------------|----------|
| | | | | Totals    145.8 | | $65,748 | $1,061 |