# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In Re: | ) | Chapter 11 |
|  | ) |  |
| W.R. Grace & Co., et al., | ) | Case No. 01-01139 (JFK) |
|  | ) | Jointly Administered |
| Debtors. | ) |  |
|  | ) |  |

## TOWN OF ACTON'S REPLY MEMORANDUM
## IN SUPPORT OF ITS MOTION FOR RELIEF FROM THE
## AUTOMATIC STAY AND FOR RELATED DETERMINATIONS

In this reply, the Town of Acton, Massachusetts, identifies fatal defects in Debtors'
Response to the Town's Motion for Relief from the Automatic Stay and for Related
Determinations ("Response").

## I.    The Debtors misapprehend the scope of relief the Town is seeking.

1.    Contrary to the Debtors' assertion, the Town's Motion for Relief from the
Automatic Stay and for Related Determinations (the "Motion") does not seek "payment" of the
final betterments or permission to "record a lien." (Response, ¶ 1.) Instead, the Town seeks, as
the Motion's "Wherefore" clause makes clear, a determination that "assessment of the final
betterments relating to Debtor's property in the Sewer District, the certification of those
assessments to the Town assessors, the commitment of those assessments to the Town tax
collector, and the issuance of bills to Debtor in connection with those assessments, are not
subject to the stay." The Town alternatively seeks relief from the stay to effect the foregoing.
The upshot is this:  the Town wants to take the legal steps required to send the Debtors the final-
assessment bills – not relief to compel payment of those bills or to record a lien. [1]

---

[1]      The Town would, of course, record the final assessment orders with the applicable
registry and land court registration offices. But this recordation does not "create" a lien, or constitute
recording "of a lien." As noted in the motion, the lien securing the final assessment was created

2.    If the Motion is granted, and if the Town takes the steps to send the bills, and if the Debtors' fail or refuse to pay those bills, the Town may seek further relief from this Court to obtain payment, perhaps by filing a motion to compel payment of administrative expenses or for relief from stay to foreclose its lien on the Debtors' property.

## II.    The Debtors' argument that the final assessment only fixes or liquidates the Town's prepetition claim is wrong.

3.    The Debtors theorize that "the final assessment only serves to fix or liquidate the amount of the original claim; it does not give rise to a new, independent claim that can be considered independently from the Town's original right to payment on account of the Estimated Assessment." (Response, ¶ 20.) The Debtors are wrong.

4.    Under Massachusetts law, when a town determines the final costs of sewer construction, it "*may* assess and collect actual sewer assessments." Mass. Gen. Laws. c. 83, § 15B (emphasis added). The word "may" is permissive. The town must choose and make an independent decision to determine and vote actual assessments and thereby impose a new liability on property owners. This is not a mere liquidation, but a sovereign act imposing a *new* obligation upon land in the sewer district. The Debtors admit as much when they concede that the postpetition final assessments "supercede" the prepetition estimated assessments. (Response, ¶ 17.)

5.    Additionally, a particular landowner's liability for actual assessments is not a foregone conclusion simply because it was liable for estimated assessments. As the Debtors admit, the sewer assessments are *in rem*. (Response, ¶ 5 (citing Mass. Gen. Laws. c. 80, § 4).)

---

prepetition when the Town recorded the Orders for Construction. (Motion, ¶¶ 5-6.) Mass. Gen. Laws c. 83, § 27 provides that "*all* assessments made or charges imposed under this chapter upon land which abuts upon any . . . way in which such sewer . . . is located shall constitute a lien upon such land *from the time such statement is recorded . . . .*" *Id.* (emphases added). Thus, the lien created prepetition secures the final assessment.

Thus, if a landowner sells its property between the time of the estimated assessments and the date of the final assessment, the landowner is not liable for the latter. (*See* cases cited at Motion, ¶ 24.) To claim that landowners who are subject to estimated assessments are necessarily liable for the future assessments is akin to arguing that a landowner who is liable for this year's property tax is already liable for next year's even if the owner sells the property in the interim. This is nonsensical.

6.      Moreover, Mass. Gen. Laws. c. 83, § 15B plainly permits the Town to bill estimated sewer assessments for "one-half of the municipality's liability under all contracts it has entered into for the construction of such facilities . . . ." *Id.* This generates revenue at the outset of the project to help defray initial costs, but – particularly through the "one-half" limitation – is *not* an attempt to approximate final assessments subject to later "fixing" or "liquidation." Were the statute intended to impose an estimate for the *total* costs of construction, subject only to later liquidation based on actual costs, it would permit collection of the full construction-contract liability as estimated assessments. But it does not. Section 15B provides that the total amount of the estimated sewer assessment "shall not exceed" one-half of the municipality's liability under the construction contracts. Thus, the Debtors cannot legitimately argue that the so-called "right to payment" based on the estimated assessment includes the newly created right to full (not 50%) payment of all costs (not just initial contract liability) under section 15B.

7.      Finally, the statute does not require the Town to impose "actual" assessments simply because it made estimated assessments; the Town's legislative body[2] retains the right

---

[2]      The Town's legislative body is comprised of an Open Town Meeting, which occurs annually in April and at other times by special petition or call. Any registered voter in the Town can attend and vote at a Town Meeting. There is no quorum requirement, so decisions of the meeting are made by a majority (and in some cases a super-majority) of voters who attend the meeting. (Affidavit of John Murray, III (attached as Exhibit A hereto), ¶9.)

change its policy and bylaws to provide for payment of sewer costs out of, for instance, general revenues, even after imposing estimated assessments.

8.     The foregoing demonstrates that imposition of actual assessments on current owners of land within the sewer district is a claim separate and distinct from the estimated assessments, and not a mere "liquidation of the Town's contingent, unliquidated pre-petition claim for the Estimated Assessments."[3]  (Response, ¶ 20.)

III.   **Because the Town is simply seeking to bill the final assessments, the Debtors' arguments about the propriety of the final assessment are not properly before this Court, and indeed have been rejected by a Massachusetts court.**

9.     The Debtors question the amount and propriety of the final assessments.  For example, the Debtors complain that the Town seeks too much money from the Debtors in light of the capacity of the sewer project that will be available for use by their assessed land.  As noted above, the Motion raises the question:  may the Town send final-betterment bills to the Debtors? Accordingly, the issue of whether the final assessments, and thus those bills, are somehow inaccurate or flawed, is not presently before this Court.

10.    In fact, as set forth more fully in Part IV *infra*, the Debtors have been litigating their challenge to these issues before Massachusetts courts – their chosen forum – for years.  The Debtors have already lost in the trial court and the Appeals Court has their appeal under advisement after oral argument.  (Response, ¶ 16; Motion at Exhibit B.)  Review by this Court of the state court decisions is impermissible.  *See In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997) ("The bankruptcy court is . . . prohibited from reviewing the state court's judgment by the

---

[3]        Although they try to make much of the fact that the Town filed proofs of claim for the estimated assessments, as noted above, the Debtors concede that the final assessment "superseded" those assessments.  (Response, ¶ 17.)  The Debtors' concession is correct.  The Town had, at one point, a prepetition claim against the Debtors, who owned the subject parcels of land, for the *estimated* betterments.  Once the sewer was completed in 2004, a date years postpetition, the Town's claim for the final betterments accrued – one that superseded the estimated-betterment claim when the final assessments are issued.

Rooker-Feldman doctrine, which prohibits lower federal courts from sitting as effective courts of appeal for state court judgments."). While this pending state court litigation may resolve or foreclose the Debtor from seeking further relief, the Debtors claim also to have the right to seek an abatement of the final assessments under Massachusetts law once the Town sends the bills for such assessments.[4] (Response, ¶ 38.) Thus, the Debtors have already had their objections heard by two courts, and contend that they will be able to seek relief through a third vehicle – the abatement process.

IV.    **Even if the Debtors' substantive challenges to the final assessments are assumed to be properly before this Court, their arguments cannot survive scrutiny.**

A.    *The Debtors' no-appreciable-benefit argument fails.*

11.    The Response complains that the Debtors are being charged a betterment for a sewer system "that will likely never confer any appreciable benefit upon the Debtor's estate." (Response, at 2.) In particular, the Debtors make repeated innuendos that they are improperly being charged a substantial betterment for a sewer system adjacent to their "undeveloped" property, a site "that is not developed and may never be developed," and where the "Debtors have no plans for developing their land." (Response, at 2-3 and ¶¶ 14, 35.) In making this

---

[4]    Mass. Gen. Laws c. 80, § 5 provides, in pertinent part: "The owner of any real estate upon which betterments have been assessed may, within six months after notice of such assessment has been sent out by the collector, file with the board a petition for an abatement thereof, and the board shall grant such abatement as may be necessary to make such assessment conform to section one. . . . " Section 1, in turn, provides in pertinent part:

  Whenever a limited and determinable area receives benefit or advantage, other than the general advantage to the community, from a public improvement made by or in accordance with the formal vote or order of a board of officers of the commonwealth or of a county, city, town or district, and such order states that betterments are to be assessed for the improvement, such board shall within six months after the completion of the improvement determine the value of such benefit or advantage to the land within such area and assess upon each parcel thereof a proportionate share of the cost of such improvement, and shall include in such cost all damages awarded therefor under chapter seventy-nine; but no such assessment shall exceed the amount of such adjudged benefit or advantage.

argument, the Debtors fatally ignore the mandate of state law,[5] the Town's Bylaw,[6] the Massachusetts Superior Court decision overruling the Debtors' prior challenge,[7] and established Massachusetts precedent that, under the uniform unit method, the Town *must* impose betterment assessments upon *all* land benefited by the sewer project, which includes not only developed land but also undeveloped land and land not connected to the sewer system.[8]

12.     In fact, the development potential of the Debtors' property is greatly enhanced by the construction of the sewer. As the Debtors acknowledge, their property in the Town is a federally listed superfund site that has been undergoing remediation under the supervision of EPA and DEP for decades. (Response, ¶ 19.) The property is now at the point where EPA is evaluating its reuse options. (Response at Exhibit B.) Whether the property were to become

[5]     M.G.L. c. 83, § 15 ("A uniform unit method shall be based upon sewerage construction costs divided among the total number of existing and potential sewer units to be served, after having proportioned the cost of special and general benefit facilities. Each sewer unit shall be equal to a single family residence. *Potential sewer units shall be calculated on the basis of zoning then in effect. Existing and potential multifamily, commercial, industrial and semipublic uses shall be converted into sewer units on the basis of residential equivalents.*") (emphasis added).

[6]     Under the Bylaw, the Town, acting through its Sewer Commissioners, "shall assess the owners of all land abutting any way in which there is a public sewer line constructed by the Town, by the uniform unit method, as authorized by G.L. c. 83, §15." The Bylaw specifically provides that undeveloped land shall be assessed in accordance with its development potential under zoning then in effect, regardless of whether the land is zoned for single-family residential use (which "shall be assessed on the basis of the maximum number of single family [r]esidences, which may be constructed on such land as of right under the zoning requirements, then in effect, without approval of the further subdivision of such land under the Subdivision Control Law"), multi-family use (which "shall be assessed on the basis of .67 times the maximum number of units which can be constructed as of right under the zoning then in effect, without approval of further subdivision of such land under the Subdivision Control Law"), or business use (which "shall be assessed on the basis of a number of sewer units calculated by multiplying the maximum floor area ratio (FAR) permitted as of right under the zoning requirements then in effect times the lot area and dividing the result by 4000").

[7]     *W.R. Grace & Co. – Conn. v. Town of Acton*, Middlesex (MA) County Superior Court Civil Action No. 01-2209 (Memorandum and Order on Cross Motions for Summary Judgment, July 29, 2003) (copy attached to Motion at Exhibit B)), appeal pending, Appeals Court No. 2003-P-1320 (appeal argued 9/13/04).

[8]     *See Stepan Chemical Co. v. Town of Wilmington*, 8 Mass. App. Ct. 880, 881 (1979) (rescript) (assessments must be imposed upon all who benefit from the sewer project, which includes those who have no buildings on their lots or who do not wish to connect to the sewer).

residences and recreational land (as Grace wants (Response at Exhibit B, at 19)) or put to

technology use (as current zoning allows (Response at Exhibit B, at 9)), any development on the

151.84 acre portion of the site will generate significant quantities of sewage effluent requiring

disposal. As the groundwater aquifers beneath and surrounding the site are contaminated with

the Debtors' hazardous wastes which are being treated by an aquifer restoration system whose

effectiveness after nearly 20 years of operation is still being evaluated by EPA (Response at

Exhibit B, at 16), the Debtors have essentially nowhere to put significant quantities of sewage

flow except into the Town's sewer system. Thus, as compared to its other development options

in the area that lack a public sewer, the presence of the public sewer serving the Debtors'

property directly, substantially, and immediately benefits the property with a development

potential not otherwise realizable in light of the Debtors' self-inflicted environmental problems.

   13. In any event, the Debtors' self-serving assertions on the development potential of

its property are unsupported and misleading. The Debtors point to a draft Reuse Assessment

prepared by a consultant for the Environmental Protection Agency based on interviews with the

Debtors and others. (Response at Exhibit B.) Attached to the draft report is a Memorandum

"prepared by Grace's real estate counsel" asserting that there are development problems

associated with the Debtors' property. By citing this draft report to support its position, the

Debtors are essentially quoting what its lawyers told an EPA consultant – hardly probative

evidence before this Court. (*Compare generally* Affidavit of Roland Bartl (Exhibit B hereto).)

**B.**  ***The Debtors' lack-of-capacity argument fails.***

   14. The Response also contends that the Town's sewer system lacks the capacity to

serve the Debtors' property at the level of the assessment. (Response at 2-3, 8, 17.) The Debtors

made similar arguments – unsuccessfully – in their submissions to the Massachusetts Superior

Court.[9] And they continue to press those arguments to the Massachusetts Appeals Court.[10]

Having opted for the state-court forum to press their claims on these very issues, the Debtors

cannot now successfully complain about the state-court result to this Court.

15.    Beyond that, the Debtors' "plant capacity" challenges are based on

unsubstantiated assertions, speculation, selective perception of incomplete data, and unwarranted

ignoring of other important data. This challenge originated almost two years ago in

Massachusetts state court, where it was wrong even on the facts known at that time. As the

Town argued in state court, the data and projections showed that capacity existed for all of the

development on the Debtors' parcels contemplated in the assessment.[11] Since that time, the

actual performance of the plant confirms those projections. Indeed, experience to date shows

that building out and connecting all of the sewer units in the district -- including all of the

Debtors' sewer units -- will generate only 211,722 gallons per day ("gpd") as compared to the

plant's currently permitted 250,000 gpd capacity. Increases in contributors to the plant from

outside the current sewer betterment district would occur only with approval of the

Massachusetts Department of Environmental Protection, after considering all users currently

entitled to connect to the plant, including the Debtors. The Debtors' assertion of an alleged lack

---

[9]    Grace's Supplemental Response to Defendant's Rule 9A(b)(5) Statement in *W.R. Grace & Co. – Conn. v. Town of Acton*, Middlesex (MA) County Superior Court Civil Action No. 01-2209 (Exhibit C hereto (offered for the limited purpose of showing Grace's argument to the state court and not for the truth of its contents)). The Town refuted this claim in its response in the Massachusetts Superior Court (Exhibit D hereto).

[10]    *See* pp. 42-44 of the Brief for the Plaintiff-Appellant, W.R. Grace & Co., - Conn. in *W.R. Grace & Co. – Conn. v. Town of Acton*, Appeals Court No. 2003-P-1320 (appeal argued 9/13/04) (Exhibit E hereto (offered for the limited purpose of showing Grace's argument to the state court and not for the truth of its contents)). This argument was refuted at pages 37-40 of the Brief for the Defendant/Appellee Town of Acton in *W.R. Grace & Co. – Conn. v. Town of Acton*, Appeals Court No. 2003-P-1320 (Exhibit F hereto).

[11]    Pages 37-40 of the Brief for the Defendant/Appellee Town of Acton in *W.R. Grace & Co. – Conn. v. Town of Acton*, Appeals Court No. 2003-P-1320 (Exhibit F hereto).

of capacity is therefore without support.  (*See generally,* Affidavit of Douglas Halley (Exhibit G

hereto).)

**V.      The Debtors' proposed "solutions" – for example, redistribution of the Debtors'
final-betterment obligations to other landowners – are barred by state law.**

16.     The Debtors cavalierly suggest that if the Court denies the requested relief, "the

Town could simply issue a new set of final betterments that exclude the Debtors from the sewer

district and redistribute the cost amongst the remaining properties." (Response, ¶ 40.)  This

proposal is barred by state law, and would lead to litigation by those over-assessed.  The

Massachusetts Appeals Court – where a town assessed only landowners who wished to use the

sewer – found the town's action "invalid because the statute contemplates assessing those

remotely benefited as well as those immediately benefited by the sewer." *Stepan Chemical Co.*

*v. Town of Wilmington*, 8 Mass. App. Ct. 880, 880, 391 N.E.2d 1247, 1248 (Mass. App. Ct.

1979).  *See Snow v. Fitchburg*, 136 Mass. 183, 183 (1883) ("The tax is not to be assessed

according to the immediate necessity for drainage, but according to the opportunity for drainage

when the owner may require it.").

17.     Similarly, the Debtors' notion that "if the Debtor's property is developed, and the

Debtors or their successor(s) sought to tie into the sewer system, the town could either say 'no'

or charge the Debtors under the provisions of [M.G.L.] c. 83, § 20" (Response, ¶ 40) has already

been rejected.  Such an argument, the Massachusetts Supreme Judicial Court held over a hundred

years ago, is "is founded upon a mistake." *Wright v. City of Boston*, 63 Mass. 233, 239 (1852).

As the state's highest court explained:

> For the tax on all who are remotely as well as immediately benefited by the drain,
> there are several reasons. In the first place, there would necessarily, upon the
> system contended for, be a disproportionately large charge on those who are
> immediately concerned, for the reimbursement of whom no provision is made;
> while, upon the construction which the court have adopted, the tax is as nearly

- 9 -

equal in its pressure as it could be made. And again, the laying of the drain is an immediate benefit, in one sense, to the vacant lots which it is capable of draining, if it increases their value for improvement or sale, as it obviously would; and, for these reasons, buildings are excluded from the assessment, and it is laid only upon the lots. The proportion intended by the statute is the proportion among the lots; and a tax laid upon them is to be made in proportion to their value. This brings the whole transaction within the provisions of the statute, and in this way all are taxed upon the same just and equal principle, with reference to the benefit conferred at the time.

*Id.*

## VI.   Despite the Debtors' claims to the contrary, the Town will suffer significant harm if it is not permitted to bill the final betterments.

18.     As set forth more fully in the Affidavit of John Murray, III (attached as Exhibit A hereto), if the Town does not recover sufficient funds from the beneficiaries of the Sewer District, the Town would have only two options: to default at some point on the bonds issued to build the Sewer District or, if it obtains the approval of Town Meeting, to transfer funds away from essential municipal services such as police, fire, and schools.[12]  Thus, denying the Town the relief it seeks would cause substantial harm to the Town and its residents.

## VII.   The Town is amenable to pursuing non-binding mediation after issuance of the bills for the final assessments.

19.     According to the Response, the Debtors (along with the Court and various other constituencies) have developed an ADR program.  If the Court grants the Motion, the Town will commit to participate in non-binding mediation with the Debtors during the sixty days after the Town issues the bills.  This process will not only maximize the possibility that the Town's sewer betterment claim can be resolved without the need for protracted administrative or judicial

---

[12]     Theoretically, the Town has a third option: seeking amendment of the by-law so that the sewer assessment is paid by all property owners in the Town, not just the property owners who benefit from the Sewer District, followed by a proposition 2 ½ override so that taxes can be raised from all property owners in sufficient amount.  The Town does not believe this option is viable.

proceedings, but also have the salutary effect of promoting communication between the Town and the Debtors – something the EPA sees as essential to the redevelopment of the Debtors' property in Acton.  (Response at Exhibit B, at 30, 31.)

## Conclusion

For the above reasons and those cited in the Motion, the Court should allow the Motion.

Dated:  November 5, 2004

LANDIS RATH & COBB LLP

By: _____
Adam G. Landis (No. 3407)
Megan N. Harper (No. 4103)
919 Market Street, Suite 600
Wilmington, DE 19801
Telephone: (302) 467-4400
Fax:  (302) 467-4450

-and-

NUTTER, MCCLENNEN & FISH, LLP
Thomas O. Bean
Eric P. Magnuson
World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210-2604
Telephone:  (617) 439-2000

Counsel for the Town of Acton, Massachusetts

1376193.3

- 11 -