IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Docket No.: 6829 |
| | ) | |
| | ) | Objection Deadline: November 10, 2004 |
| | ) | Hearing Date: November 15, 2004 |

**OBJECTION OF THE OFFICIAL COMMITTEE OF ASBESTOS
PROPERTY DAMAGE CLAIMANTS TO DEBTORS' MOTION FOR
ENTRY OF AN ORDER AUTHORIZING DEBTORS TO ADVANCE
CERTAIN LEGAL FEES AND EXPENSES FOR CERTAIN OF DEBTORS'
CURRENT AND FORMER OFFICERS, DIRECTORS AND EMPLOYEES**

The Official Committee of Asbestos Property Damage Claimants (the "PD Committee"), by and through undersigned counsel, hereby files this Objection (the "Objection") to the Debtors Motion for Entry of an Order Authorizing Debtors to Advance Certain Legal Fees and Expenses for Certain of Debtors' Current and Former Officers, Directors and Employees (the "Motion"), filed by the above-referenced debtors ("Debtors"). In support hereof, the PD Committee respectfully states as follows:

**Preliminary Statement**

By the Motion, Debtors seek a blank check to advance payments for any reasonable legal expenses, including attorneys' fees and costs, incurred by seven unnamed current and former directors, officers and/or employees (the "Potential Indemnitees")[1] in connection with a pending Federal grand jury investigation (the "Investigation") into whether W.R. Grace & Co. (the

---

[1] According to the Motion, certain of the Potential Indemnitees are or were employees of W.R. Grace & Co-Conn. ("Grace-Conn").

MIAMI 819571.1 7481715537

"Parent") and the Potential Indemnitees obstructed proceedings of the United States Department of Justice; violated federal environmental laws; and/or conspired with others to violate federal law. Debtors should not be granted the unfettered right to advance, as they deem reasonable, the expenses of the Potential Indemnitees with respect to the Investigation (and thereafter).

First, the Motion is devoid of any detail regarding the nature and extent of potential claims subject of the Investigation; expected amounts to be advanced; and the protocol for payment of the advancements, thus prohibiting the PD Committee from analyzing the reasonableness of Debtors' requested relief. Second, neither the Delaware General Corporation Law (the "DGCL") nor the bylaws of the Parent or Grace-Conn authorize the advancement of legal expenses of officers and directors without a prior undertaking by the Potential Indemnitees to repay such advanced expenses if it is ultimately determined that such Indemnitee(s) is not entitled to be indemnified by Debtors under the DGCL.

## Background

1. On April 2, 2001, each Debtor filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. On April 12, 2001, the UST appointed the PD Committee, the Official Committee of Unsecured Creditors and the Official Committee of Asbestos Personal Injury Claimants. Thereafter, the UST appointed the Official Committee of Equity Holders.

3. On or about October 27, 2004, Debtors' counsel received a letter from the United States Department of Justice, District of Montana, informing Debtors that they were subject of

2

the Investigation. See Motion, ¶6. In addition, similar letters were sent to the Potential Indemnitees. Id. at ¶7.

4. On November 4, 2004, Debtors filed the Motion seeking "approval to advance payments for any reasonable legal expenses (fees and related costs) for legal services provided to the Debtors' current or former officers, directors or employees in connection with the Investigation and/or any action that may arise from, or is related to, the Investigation." See Motion, ¶10.

### Argument

**A.   The Motion Fails to Include Adequate Information to Make an Informed Judgment**

5. The description of the Investigation in the Motion is limited to a portion of one paragraph that quotes the target letter from the United States Department of Justice sent to the Parent as follows: "a Federal Grand Jury is currently conducting an investigation into whether your client, W.R. Grace & Co., was involved in obstructing agency proceedings, violating federal environmental laws, and conspiring with other to violate[sic] federal law." See Motion, ¶6. Debtors failure to elaborate at all regarding the nature and extent of the Investigation makes it virtually impossible to properly evaluate, from the onset, whether the Potential Indemnitees are entitled to indemnification under the DGCL, let alone advancement of legal costs.[2]

6. Moreover, assuming arguendo that the Potential Indemnitees are entitled to indemnification for potentially criminal acts, the Motion completely fails to include a forecast of the amount to be advanced on behalf of the Potential Indemnitees. This omission is significant for two reasons. First, Debtors are seeking to advance costs on behalf of seven individuals, each

3

of whom will presumably seek to engage separate counsel, in addition to Debtors paying for their own defense counsel. Presumably the Potential Indemnitees would seek eminently qualified counsel, which, as the Court is well aware, often means a high billing rate. Without the benefit of a budget or forecast, the PD Committee is unable to determine whether the request by Debtors is a *de minimus* amount or a significant amount, although we presume the latter.

7. Second, Debtors request authority to advance legal costs not only through the conclusion of the Investigation, but also in connection with any action that may arise from, or is related to, the Investigation. As a result of the complete failure to describe the risks associated with the Investigation and the potential outcomes, it is impossible to fathom a guess as to the actions that may arise thereafter. The scope of the Investigation based upon the target letters appears to be very broad, which could lead to innumerable criminal actions being filed. If that were to occur, Debtors could be in the position of advancing legal costs for the Potential Indemnitees *ad infinitum*.

8. Lastly, the second decretal paragraph of the proposed Order[3] blithely orders that "[p]ayment of any Defense Payments[4] by the Debtors shall be made in accordance with the procedures enumerated in the existing orders governing compensation of professionals in these bankruptcy cases, as may be subsequently amended," without specifying whether counsel for the Indemnitees would be subject to the ordinary course professionals order, the standing fee order by which retained professionals are compensated or otherwise.

**B.  Advancement of Expenses is Unauthorized by the DGCL and the Bylaws**

---

[2] Pursuant to §145(a) of the DGCL, a corporation shall have the power to indemnify a director, officer and/or employee, subject to important restrictions appropriate in this instance, including in the context of a criminal action or proceeding, if the director, officer and/or employee had reasonable cause to believe the conduct was unlawful.
[3] The proposed Order was attached as an unidentified Exhibit to the Motion.
[4] As defined in the proposed Order.

4

9. Both the Parent's bylaws and Grace-Conn's bylaws provide that directors, officers and employees are entitled to indemnification to the fullest extent of the DGCL. However, a right to indemnification under the DGCL does not include a mandate to advance expenses prior to a determination whether indemnification is permitted. See Advanced Mining Systems v. Fricke, 623 A.2d 82, 84 (Del.Ch. 1992).

10. Notwithstanding that a right to indemnification does not equate to an absolute right to the advancement of legal expenses, a Delaware corporation may advance expenses if certain requirements are met; however, Debtors fail to meet even these basic prerequisites. Pursuant to §145(e) of the DGCL,

> Expenses (including attorneys' fees) incurred by an officer or director in defending any civil, criminal, administrative or investigative action, suit or proceeding <u>may be paid by the corporation in advance</u> of the final disposition of such action, suit or proceeding <u>upon receipt of an undertaking</u> by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified by the corporation as authorized in this section. Such expenses (including attorneys' fees) incurred by former directors and officers and other employees and agents may be so paid upon such terms and conditions, if any, as the corporation deems appropriate.

See Del.Code.Ann. tit. 8, §145(e)(2004)(emphasis added).

11. In order for a corporation to advance the payment of expenses, an undertaking must be made by, or on behalf of, the director or officer receiving such advance to repay such advance in the event that a determination is ultimately made that the director or officer is not entitled to indemnification. See Fricke, 623 A.2d at 84. The protocol sought by Debtors ignores the plain language of the statute and Delaware decisional law. The third decretal paragraph of Debtors' proposed Order completely flips the timing of the undertaking on its head by not seeking an undertaking until <u>after</u> a determination is made that indemnification was improper.

5

12. The timing of the undertaking in this instance is particularly troublesome. Debtors state that one of the grounds supporting the Motion is the inability of certain of the Potential Indemnitees (again, without naming them) to pay for their own legal defense due to the costs involved, thus potentially harming Debtors' estates if the Potential Indemnitees receive inadequate (or incomplete) representation. What remains puzzling, however, is if Debtors are aware today that certain of the Potential Indemnitees are unable to pay their own freight, why would they not seek an undertaking prior to making advance payments to protect the estates against the possibility of not being able to recover the advances?

13. In addition, the Motion fails to describe what undertaking the Potential Indemnitees would be required to make (regardless of when it occurs). The PD Committee submits that if the Court allows Debtors to advance the expenses on behalf of the Potential Indemnitees, the undertaking should be made prior to any such advance being made and that each such Indemnitee be required to submit to the jurisdiction of this Court to enforce its repayment obligation.

14. Moreover, due to the apparent inability of certain of the Potential Indemnitees to fund their own expenses, the Court should Order that if any Indemnitee, on whose behalf Debtors advance expenses, is ultimately determined to not be entitled to indemnification under §145 of the DGCL subsequently files a petition for relief under the Bankruptcy Code, such Indemnitee's obligation to repay the advanced costs shall be a non-dischargeable debt pursuant to section 523(a)(4) of the Bankruptcy Code.[5]

---

[5] 11 U.S.C. §523(a)(4) provides, in pertinent part, that
    (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny...

## Conclusion

On an emergency basis, Debtors are asking this Court for *carte blanche* authority to advance expenses for unnamed current and former employees with merely a scintilla of information regarding the Investigation and absolutely no description regarding the particulars of how much is expected to be paid and the actual protocol to be followed to make such payments. As a result, the Motion should be denied.

However, if the Court allows Debtors to advance the expenses of the Potential Indemnitees, the requested relief must be modified to conform with the requirements of the law. Thus, any Order approving the Motion should be modified to accommodate the objections raised herein, including requiring (i) the undertaking be made prior to any such advances; (ii) the Potential Indemnitees to submit to the jurisdiction of this Court for the limited purposes of enforcing their obligation to repay the advances if it is ultimately determined that such advances should not have been made; and (iii) a budget to be submitted to each official committee appointed in these cases and the United States Trustee, detailing the expected amounts to be advanced through the conclusion of the Investigation, providing each committee the opportunity to object to the proposed budget and, if actions are commenced thereafter, an updated budget forecasting the amounts to be spent defending such actions.

**WHEREFORE**, the PD Committee respectfully requests that the Court sustain this Objection and for such other relief that the Court deems appropriate.

Wilmington, Delaware
Dated:  November 10, 2004

Respectfully submitted,

BILZIN SUMBERG BAENA
   PRICE & AXELROD LLP
200 South Biscayne Boulevard
Suite 2500
Miami, Florida  33131-2336
Telephone:  (305) 374-7580

Scott L. Baena (Admitted Pro Hac Vice)
Jay M. Sakalo (Admitted Pro Hac Vice)

and

FERRY JOSEPH & PEARCE, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, Delaware  19899
Telephone:  (302) 575-1555

By: /s/ Theodore J. Tacconelli
      Theodore J. Tacconelli
      (No. 2678)

CO-COUNSEL FOR THE OFFICIAL
COMMITTEE OF ASBESTOS PROPERTY
DAMAGE CLAIMANTS