# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                              Chapter 11

**W.R. Grace & Co., et al.**                        Case No. 01-01139 (JKF)

                Debtors.                Jointly Administered

---

**FOURTEENTH QUARTERLY FEE APPLICATION OF STROOCK & STROOCK & LAVAN LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD FROM JULY 1, 2004 THROUGH SEPTEMBER 30, 2004**

| | |
|---|---|
| Name of Applicant | **Stroock & Stroock & Lavan LLP** |
| Authorized to Provide Professional Services to: | **Official Committee of Unsecured Creditors** |
| Date of Retention: | **April 12, 2001** |
| Period for which compensation and reimbursement is sought | **July 1, 2004 – September 30, 2004** |
| Amount of Compensation sought as actual, reasonable and necessary: | **$226,702.50** |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | **$6,705.08** |
| Fees and Expenses of the Asbestos Issues Expert | **$67,569.50** |

This is an: ☒ interim ☐ final application

This is the fourteenth quarterly application filed.

SSL-DOCS1 1507846v2

**Attachment A**

## Monthly Interim Fee Applications

| Date Filed | Period Covered | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| May 30, 2001 D.I.339 | 4/12/01-4/30/01 | $138,926.00 | $1,975.13 | $111,140.80 | $1,975.13 |
| July 2, 2001 D.I.613 | 5/1/01 – 5/31/01 | $139,928.75 | $6,884.73 | $111,943.00 | $6,884.73 |
| July 30, 2001 D.I.772 | 6/1/01 – 6/30/01 | $91,019.00 | $10,458.14 | $72,815.20 | $10,458.14 |
| September 5, 2001 D.I.889 | 7/1/01-7/31/01 | $92,308.00 | $5,144.37 | $73,846.40 | $5,144.37 |
| October 2, 2001 D.I.983 | 8/1/01 8/31/01 | $53,873.50 | $3,069.88 | $43,098.80 | $3,069.88 |
| October 31, 2001 D.I.1058 | 9/1/01 – 9/30/01 | $58,742.00 | $6,801.32 | $46,993.60 | $6,801.32 |
| November 26, 2001 D.I.1239 | 10/1/01 – 10/31/01 | $101,069.00 | $3,562.09 | $80,855.20 | $3,562.09 |
| January 8, 2002 D.I.1470 | 11/1/01 – 11/30/01 | $136,368.50 | $8,847.34 | $109,094.80 | $8,847.34 |
| February 1, 2002 D.I.1608 | 12/01/01 – 12/31/01 | $92,064.50 | $9,471.47 | $73,651.60 | $9,471.47 |
| March 14, 2002 D.I.1812 | 01/01/02 – 01/31/02 | $100,231.50 | $14,675.58 | $80,185.20 | $14,675.58 |
| April 22, 2002 D.I.1951 | 02/01/02 – 02/28/02 | $88,974.50 | $16,863.97 | $71,179.60 | $16,863.97 |
| May 8, 2002 D.I.2029 | 03/01/02 – 03/31/02 | $77,964.25 | $1,190.44 | $62,371.40 | $1,190.44 |
| June 3, 2002 D.I.2156 | 04/01/02-04/30/02 | $97,251.50 | $1,816.40 (Stroock) $9,772.37 (Chambers) | $77,801.20 | $11,588.86 |

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| July 2, 2002 D.I.2324 | 05/01/02 – 05/31/02 | $74,910.75 | $2,9154.43 (Stroock) $43,190.69 (Chambers) | $59,928.60 | $46,105.12 |
| August 5, 2002 D.I.2495 | 06/01/02 – 06/30/02 | $73,096.75 | $2,054.05 (Stroock) $114,666.72 (Chambers) | $58,477.4011 | $116,720.77 |
| September 20, 2002 D.I.2720 | 07/01/02 – 07/31/02 | $90,903.27 | $1,250.79 (Stroock) $11,996.25 (Chambers) | $72,722.61 | $13,274.04 |
| October 29, 2002 D.I.2898 | 08/01/02 – 08/31/02 | $93,151.25 | $11,539.51 (Stroock) $5,046.70 (Chambers) | $74,521.00 | $16,586.21 |
| November 14, 2002 D.I.2981 | 09/01/02 - 09/30/02 | $96,613.25 | $15,567.77 (Stroock) $771.50 (Chambers) | $77,290.60 | $16,339.27 |
| December 10, 2002 D.I.3129 | 10/1/02 – 10/31/02 | $68,404.00 | $2,956.54 (Stroock) $1,780.75 (Chambers) | $54,723.20 | $4,737.29 |
| January 28, 2003 D.I.3286 | 11/1/02 – 11/30/02 | $75,345.50 | $8,712.16 (Stroock) | $60,276.40 | $8,712.16 |
| February 7, 2003 D.I.3349 | 12/1/02 – 12/31/02 | $27,683.50 | $13,332.14 (Stroock) | $22,146.80 | $13,332.14 |
| March 26, 2003 D.I.3552 | 1/1/03 – 1/31/03 | $88,139.00 | $1,210.11 (Stroock) | $70,511.20 | $1,210.11 |
| April 7, 2003 D.I.3626 | 2/1/03 – 2/28/03 | $76,313.00 | $2,022.78 (Stroock) $1,077.80 (Chambers) | $61,050.40 | $3,100.58 |
| April 29, 2003 D.I.3718 | 3/1/03 – 3/31/03 | $60,163.50 | $6,191.15 (Stroock) | $48,130.80 | $6,191.15 |
| June 2, 2003 D.I. 3850 | 4/1/03 – 4/30/03 | $60,269.00 | $814.02 (Stroock) $2,043.00 (Chambers) | $48,215.20 | $2,857.02 |
| July 1, 2003 D.I. 3983 | 5/1/03 – 5/31/03 | $111,990.50 | $691.84 (Stroock) $3,830.50 (Chambers) | $89,592.40 | $10,522.34 |
| August 5, 2003 D.I. 4152 | 6/1/03 – 6/30/03 | $43,824.00 | $1,220.42 (Stroock) $61,755.00 (Chambers) | $35,059.20 | $62,975.42 |
| September 4, 2003 D.I. 4381 | 7/1/03 – 7/31/03 | $79,090.50 | $2,301.33 (Stroock) $14,274.25 (Chambers) | $63,272.40 | $16,575.58 |

3

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 30, 2003 D.I. 4512 | 8/1/03 – 8/31/03 | $69,927.00 | $1,164.19 (Stroock) $12,488.94 (Chambers) | $55,941.60 | $13,653.13 |
| October 29, 2003 D.I. 4625 | 9/1/03 – 9/30/03 | $69,409.50 | $1,076.94 (Stroock) $10,102.00 (Chambers) | $55,527.60 | $11,178.94 |
| December 19, 2003 D.I. 4843 | 10/1/03 – 10/31/03 | $96,980.50 | $3,800.45 (Stroock) $42,881.50 (Chambers) | $77,584.40 | $46,681.95 |
| January 23, 2004 D.I. 4976 | 11/1/03 – 11/30/03 | $66,428.50 | $1,225.38 (Stroock) $30,463.00 (Navigant f/k/a Chambers) | $53,142.80 | $31,688.38 |
| February 4, 2004 D.I. 5056 | 12/1/03 – 12/31/03 | $52,321.50 | $924.99 (Stroock) $27,005.00 (Navigant f/k/a Chambers) | $41,857.20 | $27,929.99 |
| March 17, 2004 D.I. 5309 | 1/1/04 – 1/31/04 | $65,980.50 | $1,917.93 (Stroock) $47,654.57 (Navigant f/k/a Chambers) | $52,784.40 | $49,572.50 |
| April 6, 2004 D.I. 5406 | 2/1/04 – 2/29/04 | $90,421.50 | $3,636.48 (Stroock) $35,492.50 (Navigant f/k/a Chambers) | $72,337.20 | $39,128.98 |
| April 28, 2004 D.I. | 3/1/04 – 3/31/04 | $103,524.00 | $5,567.34 (Stroock) | $82,819.20 | $5,567.34 |
| June 14, 2004 D.I. 5803 | 4/1/04 – 4/30/04 | $99,136.00 | $3,518.96 (Stroock) $1,515.00 (Navigant February) $49,667.00 (Navigant March) $80,307.11 (Navigant April) | $79,308.80 | $135,008.07 |
| July 2, 2004 D.I. 5917 | 5/1/04 – 5/31/04 | $134,324.50 | $2,409.97 (Stroock) $78,360.05 (Navigant May) | $107,459.60 | $80,770.02 |
| August 2, 2004 D.I. 6105 | 6/1/04 – 6/31/04 | $120,501.00 | $1,831.49 (Stroock) $62,625.00 (Navigant June) | $96,400.80 | $64,456.49 |

4

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 9, 2004 D.I. 6341 | 7/1/04 – 7/31/04 | $72,394.00 | $3,461.84 (Stroock) $40,427.50 (Navigant July) | $57,915.20 | $43,889.34 |
| September 23, 2004 D.I. 6444 | 8/1/04 – 8/31/04 | $70,457.00 | $1,764.40 (Stroock) | $56,365.60 | $1,764.40 |
| October 14, 2004 D.I 6625 | 9/1/04 – 9/30/04 | $83,903.50 | $1,535.61 (Stroock) $27,142.00 (Navigant August) | $67,122.80 | $28,677.61 |

5

**Quarterly Fee Applications**

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| July 30, 2001 D.I.770 (First) | 4/12/01-6/30/01 | $369,873.75 | $19,318.00 | $369,873.75 | $19,318.75 |
| November 1, 2002 D.I.1068 (Second) | 7/1/01 – 9/31/01 | $204,923.50 | $15,015.57 | $204,923.50 | $15,015.57 |
| February 8, 2002 D.I.1658 (Third) | 10/1/01 – 12/31/01 | $329,842.00 | $21,880.90 $9,918.43* | $329,842.00 | $21,880.90 (Stroock) $9,918.43 (Chambers) |
| May 16, 2002 D.I.2064 (Fourth) | 01/01/02 – 03/31/02 | $267,170.20 | $6,149.76 $36,352.60* | $266,865.70 | $6,144.85 (Stroock) $22,002.76 (Chambers) |
| August 16, 2002 D.I.2557 (Fifth) | 04/01/02 – 06/30/02 | $245,259.00 | $6,784.97 $167,629.78* | $245,259.00 | $6,784.97 (Stroock) $167,629.78 (Chambers |
| November 18, 2002 D.I.3045 (Sixth) | 07/01/02 – 09/30/02 | $280,471.77 | $28,358.07 $17,814.45* | $224,534.21[1] | $28,358.07 (Stroock)[1] $17,814,45 (Chambers)[1] |
| March 25, 2003 D.I.3549 (Seventh) | 10/01/02 – 12/31/03 | $171,108.00 | $25,000.84 $1,780.75* | $136,886.40[2] | $25,000.84 (Stroock)[2] $1,780.75 (Chambers)[2] |
| May 20, 2003 D.I. 3815 (Eighth) | 1/1/03 – 3/31/03 | $224,358.50 | $9,424.04 $1,077.80* | $224,615.50[3] | $9,424.04 (Stroock)[3] $1,077.80 (Chambers)[3] |

---

[*]    These amounts relate to the Committee's Asbestos Issues Expert.

[1]    Court Order dated March 14, 2003 approved fees in the amount of $276,535.77 and expenses in the amount of $45,477.52.

[2]    Court Order dated July 28, 2003 approved fees in the amount of $171,108.00 and expenses in the amount of $26,412.62.

[3]    Court order dated September 22, 2003 approved fees in the amount of $224,033.50 and expenses in the amount of $10,410.22.

SSL-DOCS1 1507846v2

| | | | | | |
|---|---|---|---|---|---|
| August 29, 2003<br>D.I. 4357<br>(Ninth) | 4/1/03 –<br>6/30/03 | $215,903.50 | $2,726.28<br>$67,628.50* | $215,903.50[4] | $2,726.28 (Stroock)[4]<br>$67,628.50 (Chambers)[4] |
| December 5, 2003<br>D.I. 4778<br>(Tenth) | 7/1/03 –<br>9/30/03 | $218,222.00 | $4,339.46<br>$36,865.19* | $218,222.00[5] | $4,339.46 (Stroock)[5]<br>$36,865.19 (Chambers)[5] |
| March 2, 2004<br>D.I. 5212<br>(Eleventh) | 10/1/03 –<br>12/31/03 | $215,718.50 | $5,950.82<br>$100,349.50* | $215,718.50[6] | $5,922.67 (Stroock)[6]<br>$100,349.50 (Chambers)[6] |
| May 18, 2004<br>D.I. 5597<br>(Twelfth) | 1/1/04 –<br>3/31/04 | $254,857.00 | $9,965.36<br>$83,147.07* | $254,857.00[7] | $9,965.36 (Stroock)[7]<br>$83,147.07 (Chambers)[7] |
| August 26, 2004<br>D.I. 6269<br>(Thirteenth) | 4/1/04 –<br>6/30/04 | $353,629.50 | $7,760.42<br>$272,474.16* | | |

---

[4]    Amended court order dated December 23, 2003 approved fees in the amount of $215,903.50 and expenses in the amount of $70,354.78.

[5]    Court order dated April 26, 2004 approved fees in the amount of $218,222.00 and expenses in the amount of $41,204.65.

[6]    Court order dated June 16, 2004 approved fees in the amount of $215,718.50 and expenses in the amount of $106,272.17.

[7]    Court oder dated September 27, 2004 approved fees in the amount of $254,857.00 and expenses in the amount of $93,011.96.

SSL-DOCS1 1507846v2

**WR GRACE & CO**
**ATTACHMENT B**
**JULY 1, 2004 - SEPTEMBER 30, 2004**

| | Hours | Rate | Amount | No. of Years In Position |
|---|---|---|---|---|
| **Partners** | | | | |
| Greenberg, Mayer | 17.1 | $ 575 | $ 9,832.50 | 6 |
| Kruger, Lewis | 31.5 | 750 | $ 23,625.00 | 42 |
| Neidell, Martin | 4.1 | 725 | $ 2,972.50 | 31 |
| Pasquale, Kenneth | 19.4 | 575 | $ 11,155.00 | 14 |
| Speiser, Mark | 24.7 | 695 | $ 17,166.50 | 23 |
| Wintner, Mark | 6.7 | 660 | $ 4,422.00 | 32 |
| | | | | |
| **Associates** | | | | |
| DiBernardo, Ian G. | 1.1 | 480 | $ 528.00 | 5 |
| Eichler, Mark | 21.4 | 480 | $ 10,272.00 | 6 |
| Krieger, Arlene | 241.2 | 525 | $ 126,630.00 | 20 |
| McEachern Mary E | 1.0 | 395 | $ 395.00 | 5 |
| | | | | |
| **Paraprofessionals** | | | | |
| Bowen, Mark | 1.1 | 195 | $ 214.50 | 5 |
| Caskadon, Alexandra | 67.1 | 195 | $ 13,084.50 | 2 |
| Defreitas, Vaughn | 46.5 | 130 | $ 6,045.00 | 16 |
| Mariano, Christine | 2.0 | 180 | $ 360.00 | 8 |
| | | | | |
| **TOTAL** | **484.9** | | **$ 226,702..50** | |

**WR GRACE & CO**
**COMPENSATION BY PROJECT CATEGORY**
**JULY 1, 2004 - SEPTEMBER 30, 2004**

| MATTER CODE | PROJECT CATEGORY | HOURS | TOTAL FEES |
|---|---|---|---|
| 0003 | Claim Analysis Objection, Resolution & Estimation (Asbestos) | 25.8 | $    12,475.00 |
| 0008 | Asset Analysis and Recovery | 5.0 | 2,620.50 |
| 0013 | Business Operations | 3.7 | 1,942.50 |
| 0014 | Case Administration | 74.6 | 21,772.50 |
| 0015 | Claims Analysis/Objections/Administration (Non-Asbestos) | 36.3 | 18,203.00 |
| 0017 | Committee, Creditors', Noteholders', or Equity Holders' | 79.0 | 43,042.50 |
| 0018 | Fee Application, Applicant | 57.8 | 18,267.00 |
| 0019 | Creditor Inquiries | 4.5 | 1,804.50 |
| 0020 | Fee Application, Others | 20.6 | 4,017.00 |
| 0021 | Employee Benefits, Pension | 12.4 | 7,324.50 |
| 0032 | Litigation and Litigation Consulting | 11.0 | 5,935.00 |
| 0036 | Plan and Disclosure Statement | 81.1 | 49,499.00 |
| 0037 | Hearings | 25.9 | 15,127.50 |
| 0040 | Employment Applications – Others | 2.3 | 1,207.50 |
| 0047 | Tax Issues | 44.9 | 23,464.50 |
| | **TOTAL** | **484.9** | **$    226,702.50** |

**WR GRACE & CO**
**DISBURSEMENT SUMMARY**
**JULY 1, 2004 - SEPTEMBER 30, 2004**

| | |
|---|---|
| Outside Messenger Service | $    110.83 |
| Duplicating Costs-in House | 227.10 |
| Facsimile Charges | 68.00 |
| In House Messenger Service | 32.70 |
| Local Transportation | 270.10 |
| Long Distance Telephone | 2,331.57 |
| Meals | 681.49 |
| Outside Messenger Service | 245.54 |
| Postage | 0.60 |
| Process Service & Calendar Watch | 462.89 |
| Travel Expenses - Transportation | (661.70) |
| Westlaw | 199.96 |
| Word Processing | 1,212.00 |
| Word Processing - Logit | 1,524.00 |
| | |
| **Total** | **$ 6,705.08** |

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| W. R. GRACE & CO., et al.[1] | ) | **Case No. 01-01139 (JKF)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

## FOURTEENTH QUARTERLY FEE APPLICATION BY STROOCK & STROOCK & LAVAN LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF W. R. GRACE & CO., et al., FOR INTERIM COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM JULY 1, 2004 THROUGH SEPTEMBER 30, 2004

Stroock & Stroock & Lavan LLP ("Stroock" or "Applicant"), counsel to the Official

Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co. ("Grace") and its

sixty-one domestic subsidiaries and affiliates that are debtors and debtors-in-possession (the

"Debtors") in this Court, for its application pursuant to 11 U.S.C. §§ 330 and 331 and in

---

[1]  The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings. Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc.,  Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

accordance with the Administrative Fee Order (defined below) for interim allowance of

compensation for services rendered and for reimbursement of expenses incurred in connection

therewith, respectfully represents as follows:

## INTRODUCTION

1.      By this application, Stroock seeks (i) an interim allowance of compensation for

the professional services rendered by Stroock as counsel for the Committee for the period from

July 1, 2004 through September 30, 2004 (the "Compensation Period") in the aggregate amount

of $226,702.50[2] representing 368.2[2] hours of professional services and 116.7[2] hours of

paraprofessional services; and (ii) reimbursement of actual and necessary expenses incurred by

Stroock during the Compensation Period in connection with the rendition of such professional

services and paraprofessional services in the aggregate amount of $6,705.08, as well as the fees

and expenses of the asbestos issues expert employed by the Committee pursuant to the Court's

June 22, 2001 Order Authorizing the Retention of Experts (the "Asbestos Issues Expert") in

respect of services rendered in the months of July[3] and August of 2004 in the aggregate amount

of $67,569.50.

2.      Venue of this proceeding and this application is proper in this district pursuant to

28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are 11 U.S.C.

§§ 330 and 331 and Federal Rules of Bankruptcy Procedure 2002(a) and 2016.

---

[2]      Amount reflects Stroock's voluntary reduction of $52.00 from the total compensation billed during the
Compensation Period relating to 0.4 hours of paraprofessional services.

[3]      Stroock's Fortieth Fee Statement erroneously identified these Navigant Consulting charges as being those
for the month of June 2004.

2

## BACKGROUND

3.       On April 2, 2001 (the "Petition Date"), each of the Debtors filed voluntary

petitions for reorganization under chapter 11 of the Bankruptcy Code and have continued in the

management and operation of their businesses and property pursuant to §§ 1107 and 1108 of the

Bankruptcy Code.  Pursuant to an order of the Court, the Debtors' chapter 11 cases have been

procedurally consolidated and are being jointly administered.

4.       The Debtors operate a world-wide specialty chemicals and materials business and

employ approximately 3860 full and part-time employees.  On a consolidated basis, for the fiscal

year 2000, Grace reported a net loss of $89.7 million[4] from $1.59 billion in net revenues.  The

Debtors' bankruptcy filings report that in fiscal year 2000, on a consolidated basis, Grace's sales

are generated approximately 50% by the Debtors and 50% by the Debtors' non-debtor

subsidiaries and affiliates.

5.       On April 12, 2001, the United States Trustee formed the Committee.  During the

first meeting of the Committee on April 12, 2001, the Committee duly selected Stroock as its

counsel to represent the Committee in all matters during the pendency of the Debtors' Chapter

11 cases.  The Committee thereafter approved the retention of Duane, Morris & Heckscher LLP

(n/k/a Duane Morris LLP) ("DM&H") as its local Delaware counsel.  During the Compensation

Period, on December 3, 2003, a second amended notice of appointment of the Committee was

filed by the United States Trustee.

---

[4]      The Debtors' pleadings further reported that this net loss resulted in part from a $294.0 million asbestos-related charge to earnings recorded in the fourth quarter of 2000.

3

6.     The United States Trustee also appointed two separate official committees to represent the interests of claimants asserting asbestos-related personal injury claims and asbestos-related property damage claims against the Debtors (collectively, the "Asbestos Claim Committees"). On June 18, 2001, the United States Trustee appointed an official committee to represent the interests of equity security holders of the Debtors (the "Equity Committee").

7.     By application dated May 1, 2001, Stroock sought Court approval for its retention as counsel to the Committee nunc pro tunc to April 12, 2001. The Court signed an order approving Stroock's retention as counsel to the Committee on May 30, 2001.

8.     This is the fourteenth quarterly interim application Stroock has filed with the Court for an allowance of compensation and reimbursement of expenses for services rendered to the Committee. This application is submitted pursuant to the terms of the Administrative Order Under §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, approved by the Court on May 3, 2001 as amended by order dated April 19, 2002 (collectively, the "Administrative Fee Order").

9.     In accordance with the procedures established by the Administrative Fee Order, Stroock had, at the time of filing of this application, received payment from the Debtors for 80% of the fees and 100% of Stroock's expenses requested, and not objected to, in the July 2004 fee statement encompassed within this Compensation Period. The Objection Period for the August fee statement has expired with no objection having been filed and a Certificate of No Objection has been filed with the Court. The Objection Period for the September fee statement has

4

expired with no objection having been filed and a Certificate of No Objection has been filed with

the Court. In addition, Stroock has received payment from the Debtors in the amount of

$40,427.50, representing the fees and expenses of Navigant Consulting, Inc. formerly known as

Chambers Associates, the Asbestos Issues Expert for the Committee, for the month of July 2004,

but has not received payment in respect of the fees and expenses of the Asbestos Issues Expert

for the month of August 2004. Applicant has received no other payments and no promises for

payment from any source for services rendered in connection with these cases for the months

encompassing this Compensation Period other than as immediately set forth above. There is no

agreement or understanding between the Applicant and any other person (other than members of

Stroock) for the sharing of compensation to be received for the services rendered in these cases.

10.     As stated in the Affidavit of Kenneth Pasquale, Esq. annexed hereto as Exhibit

"A," all of the services for which interim compensation is sought herein were rendered for and

on behalf of the Committee solely in connection with these cases.

## SUMMARY OF SERVICES RENDERED

11.     Since being retained by the Committee, Stroock has rendered professional

services to the Committee as requested and as necessary and appropriate in furtherance of the

interests of the unsecured creditors of the Debtors' estates. The variety and complexity of these

cases and the need to act or respond on an expedited basis in furtherance of the Committee's

needs have required the expenditure of substantial time by personnel from several legal

disciplines, on an as-needed basis, including in certain instances, working into the evening and

on weekends.

5

12. Stroock maintains written records of the time expended by attorneys and paraprofessionals in the rendition of their professional services to the Committee. Such time records were made contemporaneously with the rendition of services by the person rendering such services and in the ordinary course of Stroock's practice, and are presented in compliance with Delaware Local Rule 2016-2(d) amended effective as of September 1, 2002. A compilation showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services during the Compensation Period is annexed hereto as Exhibit "B". In addition, Exhibit "C" hereto contains a summary of the hours expended by each of the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

13. Stroock also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are also available for inspection. A schedule of the categories of expenses and amounts for which payment is requested is annexed hereto as Exhibit "D".

14. Stroock respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and have directly benefited the creditor constituents represented by the Committee and have contributed to the effective administration of these cases.

15. The following summary of the services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit "B". Rather, it is

6

merely an attempt to highlight certain of these areas in which services were rendered to the Committee, as well as to identify some of the problems and issues to which Stroock was required to direct its attention.

### Claim Analysis Objection, Resolution & Estimation (Asbestos) -- Category 0003

16.     As previously reported in prior quarterly compensation applications, Stroock reported that articles had began to appear with respect to the efforts and proposals being made by certain members of Congress to enact new legislation to globally address asbestos-related claims and lawsuits asserted against businesses both within, and outside of, bankruptcy.  During prior compensation periods, numerous articles were published and Navigant Consulting prepared numerous memoranda discussing the legislation, various proposals amending the draft bill, and addressing those aspects of the legislation which are still the subject of disparate viewpoints.

17.     Congressional activity with respect to asbestos reform legislation continued during the Compensation Period with members of the Senate exchanging proposals and comments on revised legislation in efforts to reach an acceptable compromise.  During this Compensation Period, Navigant Consulting prepared numerous memoranda discussing the on-going legislative efforts and forwarded other materials.  Stroock reviewed these materials as well as related articles which it found, given that these are areas of direct relevance to these chapter 11 cases, and forwarded memoranda to the Committee on the asbestos-reform legislation.

18.     As reported in the prior compensation application, the Debtors filed a motion proposing for the Court's consideration three individuals as candidates to be the futures representative in these cases.  Stroock discussed the Debtors' candidates with the Committee,

7

and thereafter prepared a response on behalf of the Committee setting forth the Committee's support for one of the proposed candidates, David Austern. Responses and objections to the Debtors' futures representative motion were filed by other parties in these cases including by each of the other appointed official committees, by Federal Insurance Company and Royal Insurance Company (the "Insurance Companies"), and by the United States Trustee. Following a hearing at the May omnibus hearings, the Court entered an order appointing David Austern as the futures representative. The order was thereafter appealed by several of the objecting parties. During this Compensation Period, Stroock reviewed the appellate brief filed by the Insurance Companies and the asbestos property damage committee, and the subsequent stipulation and order withdrawing the appeal by the asbestos property damage committee.

19.     In addition, during this Compensation Period, Judge Fitzgerald issued an amendatory order directing the filing of statements pursuant to Bankruptcy Rule 2019. Stroock reviewed the Court's order, the pleadings filed by several law firms representing multiple asbestos claimants seeking to have the Court further amend the order, and the opposition filed thereto, relevant case law, and Judge Fitzgerald's comments on this same matter in the Pittsburg Corning hearing heard towards the end of this period. Further, during this Compensation Period, Scotts Company filed a motion seeking to temporarily stay a state court litigation pending against it in Texas which potentially implicates the Debtors' products and certain of the insurance policies insuring the Debtors. Stroock reviewed the stay motion and the related declaratory judgment action filed by Scotts Company in these chapter 11 cases with respect to its assertion that Scotts Company is a covered insured party under certain of the Debtors' insurance policies. Stroock has expended 25.8 hours on this category for a fee of $12,475.00.

8

## Asset Analysis and Recovery – Category 0008

20.     As reported during the prior compensation period, the Debtors sought

authorization from the Court to advance approximately $55.0 million in cash to a wholly-owned

non-Debtor subsidiary, so that such non-Debtor entity could acquire, through a stock purchase,

Alltech International Holdings, Inc. and subsidiaries (collectively "Alltech"), a company in the

silica pharmaceutical separations business.  Stroock discussed this matter with Capstone, and

reviewed the materials obtained from the Debtors and their representatives, in order to fully

evaluate the transaction, including the form of stock purchase agreement and the related

disclosure schedules, exchanged numerous memoranda with Capstone and the Debtors, and

actively participated with such parties in numerous extended conference calls.  The information

provided by the Debtors reflected, among other matters, that Alltech was the subject of a pending

patent infringement suit.  During this Compensation Period, Stroock reviewed and discussed the

proposed order approving the transaction with Debtors' counsel and the transcript of the

Markham hearing on the patent litigation and discussed the hearing with Debtors' in-house

patent counsel.  In addition, during this Compensation Period, the Debtors informed the

Committee's professionals that they would be seeking authorization to acquire the Tri-Flex

business of Flexia Corporation.  Stroock reviewed Capstone's analysis thereof, and the Debtors'

motion and discussed the same with Capstone.  Stroock has expended 5.0 hours on this category

for a fee of $2,620.50.

## Business Operations -- Category 0013

21.     During this Compensation Period, Stroock reviewed the Company's May 2004

and second quarter 2004 operating results and Capstone's draft report to the Committee thereon,

9

and discussed those reports with Capstone.  Stroock has expended 3.7 hours on this category for a fee of $1,942.50.

### Case Administration -- Category 0014

22.     As reported in prior monthly compensation applications, towards the end of the November 2001 compensation period, Stroock was informed that these chapter 11 cases were being reassigned to District Court Judge Alfred Wolin.  A number of orders were issued during the month of December 2001 relating to the reassignment of these cases to Judge Wolin and the reference of these cases to Judge Judith Fitzgerald.  As reported in the prior compensation period Judge Wolin was recused from these cases and the cases were reassigned to District Court Judge Ronald L. Buckwalter.

23.     During the Compensation Period, Stroock continued to closely monitor the items on the Court's general chapter 11 docket for these cases, as well as those dockets relating to each of the adversary proceedings pending in these chapter 11 cases, to ensure that the Committee was fully informed about all pending motions and adversary proceedings and that Stroock would be ready to timely respond on behalf of the Committee, as might be applicable.  Stroock continued to engage Debtors' counsel and Capstone on an on-going basis with respect to pending matters and information requests, reviewed agenda letters prepared for Judge Fitzgerald during the Compensation Period in respect of the hearings scheduled to be held each month during the period, reviewed transcripts from hearings already held before the Court, if relevant to matters currently pending, and responded to inquiries from unsecured creditors with respect to the status of these cases generally, exclusivity and plan negotiations, the status of the ZAI science trial litigation and other plan-related matters.  In addition, during this Compensation Period, Stroock

10

prepared a response to the Fee Auditor's initial report on Stroock's Twelfth Quarterly Fee Application. Stroock has expended 74.6 hours on this category for a fee of $21,772.50.

### Claims Analysis, Objection and Resolution (Non-Asbestos) -- Category 0015

24.     During the prior compensation period, the Debtors filed a motion seeking to establish an alternative dispute resolution program (the "ADR Motion"). Stroock reviewed the ADR Motion as filed, engaged Debtors' counsel in extended discussions during which it raised concerns with provisions of the ADR program, reviewed Debtors' initial proposed revisions to the ADR Program, and prepared extensive memoranda commenting on the proposed revised program and continuing issues for the Committee to consider.

25.     During this Compensation Period, Stroock reviewed each additional iteration of the ADR Program documents, raised additional concerns and provided constructive comments thereto in discussions with Debtors' counsel. In addition during this Compensation Period, Stroock reviewed the Debtors' proposed settlement agreement with a number of insolvent insurance companies referred to collectively as the KWELMBS Companies that had provided insurance coverage to the Debtors for non-asbestos and asbestos liabilities, and the Debtors' proposed settlement of a patent infringement claim asserted by AKZO Nobel, Inc. In each instance, Stroock reviewed the motion, the proposed settlement agreement and other related documents, discussed the proposed settlements and, with respect to the KWELMBS matter, the limited opposition thereto filed by the asbestos committees and the futures representative with Debtors' counsel, and requested and then reviewed additional information, as applicable, in order to evaluate these matters for the Committee. Stroock has expended 36.3 hours on this category for a fee of $18,203.00.

11

**Committee, Creditors' Noteholders' or Equity Holders' -- Category 0017**

26.    During the Compensation Period, Stroock communicated with the members of the full Committee through numerous memoranda and telephone conversations, including through several conference call meetings of the Committee, including one where the Committee was joined by representatives of the Debtors.  In order to keep the Committee fully informed of all of the pending matters in these cases, and thus enable the Committee to take informed positions on issues, Stroock reviewed and summarized the motions filed by the Debtors and other parties in interest in these cases, raised issues the Committee should be aware of, and made recommendations to the Committee concerning appropriate actions to be taken with regard to the motions, communicated with members of the Committee regarding the positions to be taken, engaged counsel for the Debtors, and other parties and movants, as applicable, with the Committee's questions and concerns, and negotiated whenever and to the extent possible consensual resolutions of outstanding issues and acceptable forms of proposed orders.

27.    The motions, agreements, and other materials Stroock reviewed during the Compensation Period, prepared memoranda to the Committee on and discussed with the Committee, as applicable, included, among other matters,  (i) the treatment of unsecured creditors under a plan and the form of consideration to be received, and draft plan documents and analyses; (ii) the Debtors' proposed alternative dispute resolution program as revised; (iii) the Debtors' motion for authority to provide enhanced severance to certain newly hired executives; (iv) the Debtors' motion for authority to acquire the Tri-Flex business from Flexia Corporation, and their motion to sell the Darex Facility; (v) the Debtors' proposal to make further contributions to Grace's defined benefit pension plans; (vi) Debtors' motions to settle insurance

12

claim-related matters with KWELMBS Companies, the limited objections thereto and proposed

settlement thereof, and a patent claim-related matter with AKZO Nobel; (vii) the Debtors'

motion to settle environmental litigation with Honeywell International, and (viii) the Debtors'

motion to settle tax-related issues with the Internal Revenue Service with respect to COLI

policies and the Debtors' proposed termination of certain COLI policies.

28.     In addition, Stroock continued to keep the Committee informed with respect to

pleadings filed in, and decisions issued by, this and other Courts, in respect of other asbestos-

related chapter 11 cases, and with respect to articles and reports in respect of the legislative

attempts to address the resolution of asbestos claims on a national basis, all of which have

particular relevance to these cases.

29.     In addition, during this Compensation Period, Stroock responded to numerous

telephone inquiries from creditors regarding the reorganization plan timetable, the ZAI science

trial and case status with respect to interest in participating in the plan process, and to creditor

inquiries as to the status of each such creditor's filed claims.  Through its correspondence and

communication with the Committee, Stroock has assisted the Committee in fulfilling its statutory

duties to make informed decisions and express the Committee's views regarding the issues

which arise in these cases.  Stroock has expended 79.0 hours on this category for a fee of

$43,042.50.

### Fee Application, Applicant -- Category 0018

30.     During the Compensation Period, Stroock prepared its fee statements for the

months of May 2004, June 2004, July 2004 and August 2004 and related notices and

certifications of no objection.  Stroock also prepared its Thirteenth Quarterly Fee Application

13

covering the period from April 1, 2004 through June 30, 2004 (the "Prior Compensation Application"), including a narrative section summarizing the services rendered during that period by Stroock and numerous fee and expense schedules, as required by the Administrative Fee Order entered by the Court. Stroock has expended 57.8 hours on this category for a fee of $18,267.00.

### Fee Application, Others -- Category 0020

31.    During the Compensation Period, Stroock reviewed and discussed with FTI Consulting such professional's February 2004 and March 2004 fee statements and Thirteenth Quarterly Fee Application, and prepared related notices and certifications of no objection, and reviewed and discussed with Capstone its monthly fee statements for the months from February 2004 through July 2004 and prepared related notices and certifications. Stroock has expended 20.6 hours on this category for a fee of $4,017.00.

### Employee Benefits, Pension – Category 0021

32.    During this Compensation Period, the Debtors' informed the Committee that it would be seeking approval to make contributions for 2004 - 2005 to their defined benefit pension plans. In connection herewith, Stroock reviewed the Debtors' latest proposal, discussed the impact of 2004 pension legislation on the Debtors' pension liabilities with Capstone, discussed issues raised by the proposal with Debtors' representatives and actuary, reviewed additional pension funding materials provided by the Debtors and after discussing this matter with the Committee, communicated the Committee's position to the Debtors. In addition, during this Compensation Period, Stroock rendered services with respect to evaluating the Debtors requested authority to provide enhanced severance benefits to certain newly hired executives before

14

communicating with the Committee on this matter.  Stroock has expended 12.4 hours on this category for a fee of $7,324.50.

### Litigation and Litigation Consulting -- Category 0034

33.    Stroock expended services in this category during this Compensation Period in connection with reviewing the motions filed by the Debtors seeking, among other relief, injunctive relief or an extension of the automatic stay to certain directors and employees of W.R. Grace & Co. named as defendants in a putative class action lawsuit commenced by certain shareholders in June 2004 alleging violations of ERISA in connection with Grace's 401(K) savings and investment plan for employees, and the motion filed by the Debtors seeking to settle environmental litigation which had been pending for many years, and in reviewing all related pleadings and materials.  Stroock has expended 11.0 hours on this category for a fee of $5,935.00.

### Plan and Disclosure Statement -- Category 0036

34.    As reported in the Prior Compensation Application, at the beginning of the period, the Debtors approached Stroock with respect to the preparation of a proposed reorganization plan that could be supported by the Committee.  In connection therewith, Stroock held discussions with the Debtors and their representatives to explore potential plan structures and conducted research on numerous legal issues which have an impact on a plan's structure and other plan-related matters under the specific circumstances in these cases.  Following the May 2004 omnibus hearing, the Court issued an order directing the Debtors to file a plan no later than October 14, 2004.

35.     This Compensation Period was a period during which Stroock expended substantial time in connection with plan-related matters.  At the very beginning of the period, Stroock met with the Debtors' advisors regarding a proposed plan structure and treatment for non-asbestos unsecured creditors.  Stroock attended to issues raised by the plan structure proposed, worked with Capstone to analyze and respond to the plan proposal and held numerous conference calls with the Committee, the Debtors and their representatives.  Stroock expects to continue its heightened plan activity into the next compensation period.  Stroock expended 81.1 hours on this category for a fee of $49,499.00.

### Hearings -- Category 0037

36.     During this Compensation Period Judge Fitzgerald held four hearings, one of which was a telephonic hearing.  Stroock reviewed all relevant pleadings and documentation in advance of the hearings, which as already described in this application addressed a variety of motions and issues, and prepared for the hearings.  Stroock expended 25.9 hours on this category for a fee of $15,127.50.

### Employment Applications – Others – Category 0040

37.     During the August 2004 hearings before Judge Fitzgerald, the Court raised a number of issues with respect to the terms of the proposed retention of CIBC World Markets Corp. as financial advisor to the futures representative, and with respect to whether there existed potential conflicts in connection with the proposed retention of the Phillips, Goldman & Spence firm. Stroock reviewed the retention pleadings and the supplemental brief filed by the futures representative in support of such applications and discussed certain retention terms with Debtors' counsel.  Stroock expended 2.3 hours on this category for a fee of $1,207.50.

16

**Tax Issues -- Category 0047**

38.    The services rendered in this category during this Compensation Period related to issues in respect of the Debtors' proposed plan structure and treatment for unsecured creditors, and in respect of the Debtors' motion seeking approval of a settlement with the Internal Revenue Service with respect to interest deductions for certain COLI policies. Stroock expended 44.9 hours on this category for a fee of $23,464.50.

## FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

39.    The factors to be considered in awarding attorneys fees have been enumerated in In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), reh'g denied, 547 F.2d 573, cert. denied, 431 U.S. 904; these standards have been adopted by most courts. Stroock respectfully submits that a consideration of these factors should result in this Court's allowance of the full compensation sought.

> The Time and Labor Required.  The professional services rendered by Stroock on behalf of the Committee have required the expenditure of substantial time and effort, as well as a high degree of professional competence and expertise, in order to deal with the complex issues encountered by the Committee with skill and dispatch.  Occasionally, Stroock has been required to perform these services under significant time constraints requiring work late into the evening and on weekends.  The services rendered by Stroock were performed efficiently, effectively and economically.

17

The Novelty and Difficulty of Questions. Novel and complex issues have already arisen in the course of these Chapter 11 cases, and it can be anticipated that other such issues will be encountered. In this case, as in many others in which the firm is involved, Stroock's effective advocacy and creative approach have helped clarify and resolve such issues and will continue to prove beneficial.

The Skill Requisite to Perform the Legal Services Properly. Stroock believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Stroock's practice, and its creative approach to the resolution of issues, are and will continue to contribute to the maximization of the distributions to the Debtors' unsecured creditors.

The Preclusion of Other Employment by Applicant Due to Acceptance of the Case. Due to the size of Stroock's insolvency department, Stroock's representation of the Committee has not precluded its acceptance of new clients. However, the volume of the matters needing attention on a continuing basis has required several of the attorneys to commit significant portions of their time to these cases.

The Customary Fee. The fee sought herein is based upon Stroock's normal hourly rates for services of this kind. Stroock respectfully submits that the fee sought herein is not unusual given the magnitude and

18

complexity of these cases and the time expended in attending to the

representation of the Committee, and is commensurate with fees Stroock

has been awarded in other cases, as well as with fees charged by other

attorneys of comparable experience.

Whether the Fee is Fixed or Contingent.  Pursuant to §§ 330 and 331 of

the Bankruptcy Code, all fees sought by professionals employed under

§ 1103 of the Code are contingent pending final approval by this Court,

and are subject to adjustment dependent upon the services rendered and

the results obtained.

Time Limitations Imposed by Client or Other Circumstances.  As already

indicated, Stroock has attended to the various issues arising in these cases.

Occasionally, Stroock has had to perform those services under significant

time constraints requiring attorneys assigned to these cases to work

evenings and on weekends.

The Amount Involved and Results Obtained.  Through the efforts of

Stroock, the Committee has been an active participant in these Chapter 11

cases from the very first days of its formation, and its assistance, as well as

constructive criticism, has greatly contributed to the efficient

administration of these cases.

The Experience, Reputation and Ability of the Attorneys.  Stroock has one

of the largest and most sophisticated insolvency practices in the nation and

19

has played a major role in numerous cases of national import including: Acme Metals, Inc., Hillsborough Holdings Corporation, Laclede Steel Company, Gulf States Steel, Inc. of Alabama, The LTV Corporation, Wheeling-Pittsburgh Steel Corporation, Allis-Chalmers Corporation, The Charter Company, Federated Department Stores, G. Heileman Brewing Company, Inc., Burlington Motor Holdings, Inc., Metallurg, Inc., Forstmann & Company, Inc., Barneys, Inc., Fruehauf Trailer Corporation, Levitz Furniture Incorporated, The Columbia Gas System, Inc., JWP, Inc., Flushing Hospital and Medical Center, Planet Hollywood International, Anchor Glass Container Corporation, Beloit Corporation in the Harnischfeger Industries Chapter 11 Cases, RSL COM U.S.A. Inc, USG Corporation, Formica Corp. Galey & Lord, Inc. and DESA Holdings. Stroock's experience enables it to perform the services described herein competently and expeditiously.  In addition to its expertise in the area of corporate reorganization, Stroock has already frequently called upon the expertise of its partners and associates in the litigation, ERISA, tax and environmental law areas to perform the wide ranging scope of the legal work necessitated by these cases.

The "Undesirability" of the Case.  These cases are not undesirable, but as already indicated, have required a significant commitment of time from several of the attorneys assigned hereto.

20

Nature and Length of Professional Relationship. As described above, Stroock has been actively rendering services on behalf of the Committee as necessary and appropriate from April 12, 2001 through to the present.

## ALLOWANCE OF COMPENSATION

40.     The professional services rendered by Stroock required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort. It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited the Debtors' unsecured creditor body as a whole and the Debtors' estates.

41.     With respect to the level of compensation, § 330 of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person (including attorneys for a creditors' committee): "Reasonable compensation for actual necessary services rendered by [such] . . . professional person. 11 U.S.C. § 330. Section 330 further states that the court should take into consideration, inter alia, the nature, extent, and value of services performed, as well as the cost of comparable services other than in a case under this title. Id. The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

42.     The total time spent by Stroock attorneys and paraprofessionals during the Compensation Period for which Stroock seeks payment was 484.9 hours. Such services have a

21

fair market value of $226,702.50. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

43.     As shown by this Application and supporting documents, Applicant spent its time economically and without unnecessary duplication of time. Attached hereto as Exhibit "C" are summaries of the hours expended by the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

44.     In addition, Stroock incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of $6,705.08 for which Stroock respectfully requests reimbursement in full. Long Distance Telephone charges in the aggregate amount of $2,331.57 were incurred in substantial part in connection with three conference call meetings of the Committee on 6/28/04, 7/06/04 and 8/18/04 and with respect to a conference call meeting of the Committee's professionals in mid-August 2004.

45.     The disbursements and expenses have been incurred in accordance with Stroock's normal practice of charging clients for expenses clearly related to and required by particular matters. Such expenses were often incurred to enable Stroock to devote time beyond normal office hours to matters, which imposed extraordinary time demands. Stroock has endeavored to minimize these expenses to the fullest extent possible.

46.     Stroock's billing rates do not include charges for photocopying, telephone and telecopier toll charges, computerized research, travel expenses, "working meals", secretarial overtime, postage and certain other office services, because the needs of each client for such services differ. Stroock believes that it is fairest to charge each client only for the services

22

actually used in performing services for it.  Stroock has endeavored to minimize these expenses to the fullest extent possible.

47.     Stroock charges $.10 per page for in-house photocopying services, with respect to computerized research services Stroock charges the actual cost from the vendor, and $1.00 per page for out-going facsimile transmissions.  Stroock does not charge for incoming facsimiles.

48.     Further, in accordance with the Court's June 22, 2001 Order Authorizing the Retention of Experts, this Application seeks payment for the fees and expenses of Navigant Consulting, the asbestos issues expert engaged by the Committee, in the aggregate amount of $67,569.50, for the services rendered on behalf of the Committee in the months of July 2004 and August 2004.  The Navigant Consulting expense charges in the aggregate amount of $438.50 all relate to air and ground transportation costs incurred by one person traveling from Washington, D.C. to New York to attend the July 9, 2004 meeting of the Committee with representatives of the Debtors to discuss a proposed plan of reorganization.  No agreement or understanding exists between Stroock and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

49.     Stroock has reviewed the requirements set forth in Delaware Local Rule 2016-2, entitled "Motion for Compensation and Reimbursement of Expenses," and believes that this application for interim compensation and reimbursement of expenses is fully in compliance with the rules set forth therein.

50.     No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period other than as set forth herein.

23

**WHEREFORE**, Stroock respectfully requests, pursuant to the Administrative Fee Order and the Court's June 22, 2001 Order Authorizing the Retention of Experts:

the allowance of compensation for professional services rendered to the Committee during the period from July 1, 2004 through and including September 30, 2004 in the amount of $226,702.50;

the reimbursement of Stroock's out-of-pocket expenses incurred in connection with the rendering of such services during the period from July 1, 2004 through and including September 30, 2004 in the amount of $6,705.08;

the payment of the fees and expenses of the asbestos issues expert employed by the Committee for the months of July 2004 and August 2004 in the aggregate amount of $67,569.50;

24

authorizing and directing the Debtors to pay to Stroock each of the amounts set

forth in (a) (b) and (c) of this WHEREFORE clause (to the extent not already paid

pursuant to the Administrative Fee Order); and

granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
November 4, 2004

STROOCK & STROOCK & LAVAN LLP

Kenneth Pasquale
A Member of the Firm
180 Maiden Lane
New York, New York 10038-4982
(212) 806-5400

Co-Counsel for the Official Committee of
Unsecured Creditors of W. R. Grace & Co., et al.

25