# Exhibit Tab 3

Best Interests Analysis

EXHIBIT 3 TO EXHIBIT BOOK

## BEST INTERESTS ANALYSIS

The following document is the Best Interests Analysis (the "Analysis") of the Debtors. This Analysis assumes the Debtors' estates are substantively consolidated solely for the purposes of actions associated with the confirmation and consummation of the Plan, including, but not limited to, voting, confirmation and Distribution.

The purpose of the Analysis is to provide information in order that the Bankruptcy Court may determine that the Plan is in the best interests of all Classes of Claimants and Equity Interest Holders impaired by the Plan. The Analysis was prepared to assist the Bankruptcy Court in making this determination and it should not be used for any other purpose.

The Analysis assumes that the hypothetical Chapter 7 liquidation is effected via the orderly sale of the businesses of the Debtors and Non-Debtor Affiliates as going concerns. Because the Asbestos Channeling Injunction would not be available in a Chapter 7 liquidation, the value realized from the orderly sale of the businesses in all likelihood would be reduced as a result of a buyer's concern regarding the risk of asbestos liability in the acquisition of the assets. Further, the lack of the Asbestos Channeling Injunction may preclude an orderly sale of the businesses as going concerns, in which case an actual liquidation of assets would be required. In that case, values realized would be further reduced.

Conversion of the Chapter 11 Cases to Chapter 7 would likely result in additional costs to the estates. Costs of liquidation under Chapter 7 of the Bankruptcy Code would include the compensation of a trustee and other professionals retained by the trustee, including attorneys, financial advisors and consultants; asset disposition expenses; litigation costs related to possible fraudulent transfer actions and the resolution of asbestos and other Claims; all unpaid expenses incurred by the Debtors in the Chapter 11 Cases that are allowed in the Chapter 7 case; and Claims arising from the operations of the Debtors during the pendency of the Chapter 11 Cases.

The Analysis presents estimated net proceeds if the Debtors and the Non-Debtor Affiliates were liquidated under the provisions of Chapter 7 of the Bankruptcy Code and the allocation of such proceeds applied in strict priority to satisfy Claims against the Debtors.

The Analysis is limited to presenting information that is the representation of management in good faith based on assumptions believed to be reasonable. The Analysis has <u>not</u> been examined or reviewed by independent accountants in accordance with standards promulgated by the American Institute of Certified Public Accountants. The estimates and assumptions, although considered reasonable by management, are inherently subject to significant uncertainties and contingencies beyond the control of management. Accordingly, there can be no assurance that results shown could be realized if a liquidation occurred and actual results in such case could vary materially from those presented.

All defined terms are as defined in the Glossary unless otherwise noted. The accompanying notes are an integral part of the Analysis.

**COMPARISON OF CHAPTER 7 LIQUIDATION TO CHAPTER 11 REORGANIZATION**
(unaudited, $ in millions)

| | Note | Chapter 7 Liquidation Low | Chapter 7 Liquidation High | Chapter 11 Reorganization Low | Chapter 11 Reorganization High |
|---|---|---|---|---|---|
| **Calculation of estimated net proceeds available for allocation:** | A | | | | |
| Estimated value of Reorganized Debtors and Non-Debtor Affiliates | | $ 2,200 | $ 2,600 | $ 2,200 | $ 2,600 |
| Less: discount factor | | (1,100) | (1,300) | - | - |
| Less: taxes due in foreign jurisdictions | | (68) | (63) | - | - |
| Estimated proceeds from sale of businesses | | $ 1,032 | $ 1,237 | $ 2,200 | $ 2,600 |
| Plus other assets: | B | | | | |
| Cash | | 457 | 457 | 448 | 458 |
| Fresenius Payment | | - | - | 115 | 115 |
| Sealed Air Payment | | - | 827 | 985 | 985 |
| Insurance recovery | | 472 | 500 | 500 | 500 |
| Present value of projected use of tax assets | | - | - | 50 | 70 |
| Estimated net proceeds available for allocation | | $ 1,961 | $ 3,021 | $ 4,298 | $ 4,728 |
| **Allocation of estimated net proceeds to Secured, Administrative and Priority Claims:** | | | | | |
| Costs associated with Chapter 7 liquidation | C | (53) | (37) | - | - |
| Environmental Claims | | (15) | (15) | (15) | (15) |
| Tax Claims | | (84) | (84) | (232) | (232) |
| Other Claims | | (68) | (68) | (59) | (59) |
| Estimated net proceeds available for allocation to General Unsecured Claims and Equity Interests | | $ 1,742 | $ 2,818 | $ 3,992 | $ 4,422 |
| **Allocation of estimated net proceeds to General Unsecured Claims:** | | | | | |
| Bank debt, capital leases, drawn letters of credit | | (517) | (517) | (610) | (610) |
| Unsecured Pass-Through Employee Related Claims | | (191) | (191) | (191) | (191) |
| Environmental Claims | | (323) | (323) | (330) | (330) |
| Litigation Claims | | (10) | (10) | (10) | (10) |
| Trade Claims | | (32) | (32) | (35) | (35) |
| Other Claims | | (150) | (150) | (150) | (150) |
| Fresenius indemnity Claim | | (148) | (148) | - | - |
| PBGC Claim, net | D | (146) | (99) | - | - |
| Assumed asbestos liabilities | E | (1,689) | (1,689) | (1,689) | (1,689) |
| **Excess / (Shortfall)** | | $ (1,464) | $ (342) | $ 977 | $ 1,407 |
| Recovery to Holders of General Unsecured Claims | | 54% | 89% | 100%+ | 100%+ |
| Value to Holders of Equity Interests | | $ - | - | $ 977 | $ 1,407 |

## Footnotes to Best Interests Analysis

A summary of the assumptions used by Blackstone and management of the Debtors and Non-Debtor Affiliates in preparing the Analysis is set forth below.

**Note A.** *Proceeds from orderly sale of businesses*

In a Chapter 7 liquidation, it is assumed the businesses of the Debtors and Non-Debtor Affiliates would be sold as going concerns for cash to more than one buyer in a series of transactions to generate maximum value. The proceeds from these sale transactions are assumed to be equal to the Core Business Value of the Reorganized Debtors and Non-Debtor Affiliates ($2.2 billion to $2.6 billion with a midpoint of $2.4 billion, as further described in Section 2.8 of the Disclosure Statement), less a discount factor. Unlike a Chapter 11 reorganization, Chapter 7 does not provide for the issuance of the Asbestos Channeling Injunction. Notwithstanding a presumed ability to sell assets in a sale under Bankruptcy Code §363 or the availability of an injunction under Bankruptcy Code §105, the discount factor quantifies the probability that the businesses could not be sold for fair value or at all because of the perceived risk that asbestos liability would follow the assets sold.

U.S. taxes due on the gain from the orderly sale of the Debtors' and Non-Debtor Affiliates' businesses are assumed to be offset by existing tax attributes and deductions generated by payments made to Claimants in the Chapter 7 case with the exception of approximately $5 million of state taxes. It is assumed that for tax purposes, the sale of businesses in foreign countries will be structured as stock sales to take advantage of the predominant tax treaty exemptions for the payment of taxes on the gain generated by such sales. Taxes due in foreign jurisdictions represent foreign transfer taxes, withholding taxes, and estimated local taxes attributable to separating the businesses in each foreign subsidiary and taxes due on the gain from the sale of stock in those jurisdictions that do not have a tax treaty exemption.

**Note B.** *Other Assets*

Other assets include: cash assets, payments from third-party fraudulent transfer actions, asbestos insurance assets and tax assets.

Cash assets include Grace's Cash. In addition, in the Chapter 7 liquidation, Cash also includes the cash value of corporate-owned life insurance policies, which are assumed terminated in a liquidation. In the Chapter 11 reorganization, in which residual equity value is projected, Cash includes proceeds from the assumed exercise of in-the-money management and employee stock options. This amount is calculated based on the projected number of shares and fully diluted reorganization equity value per share.

Payments from third-party fraudulent transfer actions reflects the following: Grace was named in a class action suit filed in California state court alleging that Grace's 1996 reorganization transaction with Fresenius and its 1998 reorganization with Sealed Air involved fraudulent transfers and demanding repayment of such transfers. Prior to the filing of the Chapter 11 Cases, two other similar class actions were filed. In November 2002, Fresenius and Sealed Air announced that they had reached an agreement in principle to settle Asbestos Claims and fraudulent transfer Claims related to the respective transactions. Pursuant to the Fresenius Settlement Agreement and the Sealed

Air Settlement Agreement, respectively, and the provisions of the Plan, Fresenius shall make the Fresenius Payment and Sealed Air shall make the Sealed Air Payment. These agreements specifically require the existence of the Asbestos Channeling Injunction. Because the Asbestos Channeling Injunction is not available in a Chapter 7 liquidation, the Analysis assumes these settlement payments would not be made. It is assumed, however, that a Chapter 7 trustee would pursue similar fraudulent transfer actions. Because the outcome of this litigation cannot be known, a range is shown from zero, at the low end, to a level of Sealed Air proceeds equal to the Sealed Air Payment on a present value basis assuming a discount rate of 6% and a three year time period to collect, at the high end. It is assumed in a Chapter 7 liquidation scenario that Fresenius and/or Sealed Air would pay certain priority taxes directly to the IRS and file a General Unsecured Claim against the Debtors for indemnity under tax sharing agreements entered into at the time of the 1996 reorganization.

Asbestos insurance assets are calculated based on the assumed asbestos liability (see Note E). In a Chapter 7 liquidation, the low case reflects the risk that recovering this asset is delayed for one year, assuming a 6% discount rate.

Certain tax assets are projected to be utilized over time in the Chapter 11 reorganization by projected income. In a Chapter 7 liquidation, any excess tax attributes, after offsetting gains resulting from the liquidation, including gains on asset sales and cash repatriation, would expire unused.

**Note C.** *Costs associated with a Chapter 7 liquidation*

Costs associated with a Chapter 7 liquidation are assumed to include fees and costs for professionals retained by the Chapter 7 trustee, including legal, financial and claims processing advisors, estimated at $500,000 per month for eighteen months, for, among other things, pursuing the fraudulent transfer actions described in Note B and resolving Asbestos Claims. In addition, it is assumed the Chapter 7 trustee would receive payments equal to 1.5% of the estimated net proceeds available for allocation. Additional brokerage fees would be necessary for the orderly sale of Grace's businesses and other costs. Brokerage fees are calculated conservatively at 0.50% of gross proceeds, for a range of $6 million to $7 million.

**Note D.** *PBGC*

As of September 30, 2004, the Debtors and Non-Debtor Affiliates had fourteen funded, defined benefit pension plans, each of which is qualified under Section 401(a) of the IRC. In total, these plans were under funded by approximately $202 million. In the event a buyer chose not to assume the obligations of the underfunded defined pension liability, it is assumed that the PBGC would assume that liability. The amount represents the net difference between the assumed increase in a buyer's determination of value from saving future pension costs and the resulting estimated PBGC Claim, which is assumed to be asserted on the basis of termination of the plans.

**Note E.** *Assumed asbestos liabilities*

For purposes of this analysis, asbestos liabilities are assumed to equal the sum of (x) the maximum aggregate amounts that would satisfy the conditions precedent in Section

7.6.1(v) and Section 7.6.1(w) of the Plan; plus (y) an estimate of Previously Settled/Adjudicated Asbestos Claims.