# Exhibit Tab 5

Asbestos Trust Agreement

## THE WRG ASBESTOS TRUST AGREEMENT

This WRG Asbestos Trust Agreement (the "Asbestos Trust Agreement"), effective as of _____, 2005 (the "Effective Date"), is entered into among W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company (collectively referred to herein as the "Debtors" in case number 01-1139 (JKF) in the Bankruptcy Court), as settlors (the "Settlors") and the Future Claimants' Representative, the Trust Advisory Committee and the Trustees identified on the signature page hereof and appointed on the Confirmation Date pursuant to the Debtors' Plan.

## RECITALS

WHEREAS, at the time of the entry of the orders for relief in the Chapter 11 Cases, the Debtors were named as defendants in personal injury actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products; and

WHEREAS, at the time of the entry of the orders for relief in the Chapter 11 Cases, the Debtors were named as defendants in actions seeking recovery on account of Asbestos PD Claims; and

WHEREAS, the Debtors have reorganized under the provisions of Chapter 11 of the Bankruptcy Code in a case pending in the Bankruptcy Court, known as *In re W. R. Grace & Co., et al.*, Case No. 01-1139 (JKF); and

WHEREAS, the Plan filed by the Debtors has been confirmed by the Court; and

WHEREAS, the Plan Documents provide, among other things, for the creation of the Asbestos Trust; and

WHEREAS, pursuant to the Plan, the Asbestos Trust is to use its assets and income to pay Asbestos Claims as and to the extent provided for herein and in the respective TDPs; and

WHEREAS, pursuant to the Plan, the Asbestos Trust is intended to qualify as a QSF; and

WHEREAS, it is the intent of the Settlors, the Trustees, the Future Claimants' Representative and the Trust Advisory Committee that the Asbestos Trust be administered, maintained, and operated at all times as a QSF through mechanisms that provide reasonable assurance that the Asbestos Trust will value, and be in a financial position to pay, all Asbestos Claims that involve similar claims in substantially the same manner in strict compliance with the terms of this Asbestos Trust Agreement, the respective TDPs, the Plan, and the Confirmation Order; and

WHEREAS, the Plan provides, among other things, for the complete treatment of all liabilities and obligations of the Debtors with respect to Asbestos Claims; and

WHEREAS, the District Court has determined that the Asbestos Trust and the Plan satisfy all the prerequisites for the Asbestos Channeling Injunction pursuant to Bankruptcy Code Sections 105(a), 524(g) and/or 1141 or otherwise, as provided for in the Plan, and such Asbestos Channeling Injunction have been entered by the District Court.

NOW, THEREFORE, in consideration of the mutual covenants and understandings contained herein, and subject to and on the terms and conditions herein set forth, the parties hereby agree as follows:

## Article 1.
## DEFINITIONS

**1.1    DEFINITIONS.**

All capitalized terms used herein but not otherwise defined shall have the respective meanings given to such terms in the Glossary of Terms used in the Plan Documents (the "Glossary"), and such definitions are incorporated herein by reference. All capitalized terms not defined herein or in the Glossary, but defined in the Bankruptcy Code or Bankruptcy Rules, shall have the meanings ascribed to them by the Bankruptcy Code and Bankruptcy Rules, and such definitions are incorporated herein by reference.

2

## Article 2.
## AGREEMENT OF TRUST

**2.1** **CREATION AND NAME.** The Settlors hereby create a trust known as the "WRG Asbestos Trust" as a Delaware statutory trust, to be created upon entry of the Confirmation Order, effective as of the Effective Date, pursuant to the Plan. The Trustees of the Asbestos Trust may transact the business and affairs of the Asbestos Trust in the name "WRG Asbestos Trust." Contemporaneously with the execution of this Asbestos Trust Agreement, the Settlors will file a Certificate of Trust for the creation of a statutory trust with the Secretary of State of Delaware.

**2.2** **PURPOSE.** The purposes of the Asbestos Trust are to:

(a) assume the liabilities of the Debtors with respect to all Asbestos Claims (whether now existing or arising at any time hereafter),

(b) process, liquidate, pay and satisfy all Asbestos Claims in accordance with this Asbestos Trust Agreement, the respective TDPs, the Plan, the CMO and the Confirmation Order,

(c) use the Asbestos Trust Assets to pay holders of such Asbestos Claims in accordance with this Asbestos Trust Agreement, the respective TDPs, the Plan, and the Confirmation Order and in such a way that all holders of Asbestos Claims that involve similar claims are treated in substantially the same manner and to otherwise comply in all respects with the requirements of a trust set forth in Section 524(g)(2)(B)(i) of the Bankruptcy Code,

(d) preserve, hold, manage, and maximize the assets of the Asbestos Trust for use in paying and satisfying Allowed Asbestos Claims, and

(e) otherwise carry out the provisions of this Asbestos Trust Agreement and any other agreements into which the Trustees have entered or will enter in connection with the Plan.

**2.3** **TRUST DISTRIBUTION PROCEDURES.**

In furtherance of the purposes of the Asbestos Trust, as set forth above in Section 2.2, the Trustees shall be responsible for supervising and administering the respective TDPs and performing all other purposes of the Asbestos Trust. All Asbestos Claims shall be determined, liquidated, and paid, if Allowed, pursuant to this Asbestos Trust Agreement and the TDPs. All Asbestos PI-AO Claims shall be determined, liquidated, and paid, if Allowed, pursuant to this Asbestos Trust Agreement and the PI-AO Trust Distribution Procedures. All Asbestos PI-SE Claims shall be determined, liquidated, and paid, if Allowed, pursuant to this Asbestos Trust Agreement and the PI-SE Trust Distribution Procedures. All Asbestos PD Claims shall be determined, liquidated, and paid, if Allowed, pursuant to this Asbestos Trust Agreement and the PD Trust Distribution Procedures.

3

**2.4     TRANSFER OF ASSETS.** On the thirty-first (31st) day after the Effective Date, and pursuant to the Plan and the Confirmation Order, the Settlors, and any other party transferring any Asbestos Trust Asset to the Asbestos Trust, will transfer, issue or assign, as appropriate, and deliver to the Asbestos Trust all right, title and interest in and to the Asbestos Trust Assets, free and clear of all Claims, Equity Interests, Encumbrances and other interests of any Entity without any further action of any Entity.   The Settlors, and any other party transferring any Asbestos Trust Asset to the Asbestos Trust, shall execute and deliver, or cause to be executed and delivered, such documents as the Trustees may reasonably request from time to time to reflect the transfer, issuance and assignment, as applicable of the Asbestos Trust Assets to the Asbestos Trust.

**2.5     ACCEPTANCE OF ASSETS AND ASSUMPTION OF LIABILITIES.** In connection with and in furtherance of the purposes of the Asbestos Trust, the Trustees, on behalf of the Asbestos Trust, hereby expressly accept the transfer, issuance and assignment, as applicable, to the Asbestos Trust of the Asbestos Trust Assets at the time and in the manner contemplated by the Plan Documents, and in accordance with the terms of this Asbestos Trust Agreement.

(b)     In furtherance of the purposes of the Asbestos Trust, the Trustees, on behalf of the Asbestos Trust, hereby expressly assume all Asbestos Claims (whether now existing or arising at any time hereafter).   The Asbestos Trust shall have all defenses, cross-claims, offsets, and recoupments, as well as rights of indemnification, contribution, subrogation, and similar rights, regarding Asbestos Claims that the Debtors or any successors of the Debtors have or would have had under applicable law or under any agreement related thereto.

(c)     Nothing in this Asbestos Trust Agreement shall be construed in any way to limit the scope, enforceability, or effectiveness of the Asbestos Channeling Injunction, the Asbestos Insurance Entity Injunction or Released Matters Injunction issued in connection with the Plan or the Asbestos Trust's assumption of the Asbestos Claims as and when provided herein.

**2.6     QUALIFIED SETTLEMENT FUND.**

No provisions herein or in the TDPs shall be construed to mandate distributions on any Asbestos Claims or other actions that would contravene the Asbestos Trust's compliance with the requirements of a QSF.   In the event of any conflict between the requirements of a QSF and the terms of this Asbestos Trust Agreement, the terms of this Asbestos Trust Agreement shall be construed so as to be consistent with such requirements of a QSF.

4

## Article 3.
## POWERS, TRUST ADMINISTRATION & REPORTING

### 3.1   POWERS.

(a)   Each Trustee is and shall act as a fiduciary to the Asbestos Trust in accordance with the provisions of this Asbestos Trust Agreement, the Plan, and Delaware law. The Trustees shall, at all times, administer the Asbestos Trust in accordance with Article 3 of this Asbestos Trust Agreement. Subject to the limitations set forth in this Asbestos Trust Agreement and the TDPs, the Trustees shall have the power to take any and all actions that, in the reasonable judgment of the Trustees, are necessary, proper or convenient to effectuate the purposes of the Asbestos Trust, including, without limitation, each power expressly granted in this Section 3.1, any power reasonably incidental thereto, and any statutory trust power now or hereafter permitted under the laws of the State of Delaware.

(b)   Except as required by applicable law or as otherwise specified herein, the Trustees need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(c)   Without limiting the generality of Section 3.1(a) above, and except as limited herein, the Trustees shall have the power to:

(i)   receive and hold the Asbestos Trust Assets, in the separate accounts described below;

(ii)   invest the monies held from time to time by the Asbestos Trust;

(iii)   sell, transfer, or exchange any or all of the Asbestos Trust Assets at such prices and upon such terms as they may consider proper, consistent with the other terms of this Asbestos Trust Agreement;

(iv)   enter into leasing and financing agreements with third parties to the extent such agreements are reasonably necessary to permit the Asbestos Trust to operate;

(v)   pay liabilities and expenses of the Asbestos Trust, including Asbestos Trust Expenses;

(vi)   establish such funds, reserves and accounts in the name of the Asbestos Trust, as deemed by the Trustees to be useful in carrying out the purposes of the Asbestos Trust;

5

(vii)   sue and be sued and participate, as a party or otherwise, in any judicial, administrative, arbitrative, or other proceeding or legal action;

(viii)  adopt and amend by-laws of the Asbestos Trust not inconsistent with the terms hereof (the "Trust By-Laws");

(ix)    supervise and administer the Asbestos Trust in accordance with the TDPs and the terms hereof;

(x)     administer, amend, supplement, or modify the TDPs, all in accordance with the terms thereof;

(xi)    appoint such officers and hire such employees and engage such legal, financial, accounting, investment, auditing and forecasting, and other consultants or alternative dispute resolution panelists, and agents as the business of the Asbestos Trust requires, and to delegate to such persons such powers and authorities as the fiduciary duties of the Trustees permit and as the Trustees, in their discretion, deem advisable or necessary in order to carry out the terms of the Asbestos Trust;

(xii)   pay employees, legal, financial, accounting, investment, auditing and forecasting, and other consultants, advisors, and agents reasonable compensation, including without limitation, compensation at rates approved by the Trustees for services rendered prior to the execution hereof;

(xiii)  compensate the Trustees, the Future Claimants' Representative, the Trust Advisory Committee and their respective Representatives and reimburse all out of pocket costs and expenses incurred by such Entities in connection with the performance of their duties hereunder, including without limitation costs and expenses incurred prior to the execution hereof;

(xiv)   execute and deliver such instruments as the Trustees consider proper in administering the Asbestos Trust;

(xv)    enter into such other arrangements with third parties as are deemed by the Trustees to be useful in carrying out the purposes of the Asbestos Trust, provided, however, such arrangements do not conflict with any other provision of the Plan, the Confirmation Order, this Asbestos Trust Agreement or the TDPs;

6

(xvi)   indemnify in accordance with Section 3.5, the Entities to be indemnified under Section 3.5 to the fullest extent that a corporation or trust organized under the law of the State of Delaware is from time to time entitled to indemnify and/or insure its Representatives, and purchase insurance for the Asbestos Trust and those Entities for whom the Asbestos Trust has an indemnification obligation hereunder;

(xvii)   delegate any or all of the authority herein conferred with respect to the investment of all or any portion of the Asbestos Trust Assets to any one or more reputable individuals or recognized institutional investment advisors or investment managers without liability for any action taken or omission made because of any such delegation, except as provided in Sections 5.4, 6.8 and 7.9;

(xviii)   consult with Reorganized Debtors or their successors at such times and with respect to such issues relating to the conduct of the Asbestos Trust as the Trustees consider desirable;

(xix)   make, pursue (by litigation or otherwise), collect, compromise or settle, in the name of the Asbestos Trust or the name of Reorganized Debtors or any successor in interest, any claim, right, action or cause of action, included in the Asbestos Trust Assets;

(xx)   object to Asbestos Claims as provided in the Plan;

(xxi)   procure insurance policies and establish claims handling agreements and other arrangements as provided in Section 3.5 and 8.2 of this Asbestos Trust Agreement;

(xxii)   obtain a tax identification number for the Asbestos Trust, communicate with the IRS and state and local taxing authorities on behalf of the Asbestos Trust, make payment of taxes on behalf of the Asbestos Trust, and file all applicable tax returns for the Asbestos Trust; and

(xxiii)   enter into an agreement with the Reorganized Debtors whereby the Asbestos Trust will provide its Asbestos Claims books and records to the Reorganized Debtors so as to fully enable the Reorganized Debtors to recover any amounts available under any Asbestos Insurance Policy as if the Reorganized Debtors were processing, litigating and/or paying the Asbestos Claims directly.

7

(d)    The Trustees shall not have the power to guarantee any debt of any other Entity.

(e)    The Trustees shall give the FCR and the TAC prompt notice of any act performed or taken pursuant to Section 3.1(c)(ii), (iii), (iv), (vi), (vii), (viii), (ix), (x), (xiii), (xv), (xviii), (xix), (xx), (xxi) and Section 3.2(h).

3.2    GENERAL ADMINISTRATION AND OBLIGATIONS OF THE TRUSTEES.

(a)    To the extent not inconsistent with the terms of this Asbestos Trust Agreement, the Trust By-Laws shall govern the affairs of the Asbestos Trust and each Trustee shall act in accordance with the Trust By-Laws. In the event of an inconsistency between the Trust By-Laws and this Asbestos Trust Agreement, this Asbestos Trust Agreement shall govern.

(b)    Tax Returns and Reports.

(i)    The Trustees shall cause to be obtained, at the cost and expense of the Asbestos Trust, a Federal Employer Identification Number ("FEIN"), and relevant state tax identification numbers, for the Asbestos Trust and shall cause such income tax and other returns and statements as are required by the applicable provisions of the IRC and the Treasury Regulations and such other state or local laws and regulations as may be applicable to be timely filed on behalf of the Asbestos Trust on the basis of a December 31 year end. The Trustees shall take all steps necessary to ensure that any tax obligations imposed upon the Asbestos Trust are paid and shall otherwise comply with Section 1.468B-2 of the Treasury Regulations and all other reporting obligations of the Asbestos Trust. The Trustees shall comply with all applicable withholding obligations as required under the applicable provisions of the IRC and such other state and local laws as may be applicable, and the regulations promulgated thereunder.

(ii)    The Trustees shall cause the Asbestos Trust to qualify and maintain qualification as a QSF.

(iii)    Within seventy-five (75) days (or earlier if required by law) after the end of each calendar year, the Asbestos Trust shall cause to be prepared and mailed such information as required by law to enable payees to complete and file each of their respective federal, state and local income and other tax returns. The Trustees also shall provide a copy of any

8

filed tax returns of the Asbestos Trust to the FCR and the TAC when such return is filed.

(c)  Reports.

(i)  The Trustees shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, but, in any event, no later than one hundred twenty (120) days following the end of each fiscal year, an annual report containing financial statements of the Asbestos Trust (including, without limitation, a balance sheet of the Asbestos Trust as of the end of such fiscal year and a statement of operations for such fiscal year) audited by a firm of independent registered public accountants selected by the Trustees and accompanied by an opinion of such firm that such financial statements present fairly in all material respects the financial position of the Asbestos Trust as of such year end and the results of its operations as of the year then ended in conformity with accounting principles generally accepted in the United States. The Trustees shall provide a copy of such reports to the FCR, the TAC and Reorganized Debtors or their successors when such reports are filed with the Bankruptcy Court.

(ii)  Simultaneously with delivery of each set of financial statements referred to in Section 3.2(c)(i), the Trustees shall cause to be prepared and filed with the Bankruptcy Court a report containing a summary regarding the number and type of Asbestos Claims (and the amount paid in respect of each such Asbestos Claim disposed of during the period covered by the financial statements). The Trustees shall provide a copy of such reports to the FCR and the TAC when such reports are filed.

(iii)  All materials required to be filed with the Bankruptcy Court by this Section 3.2(c) shall be available for inspection by the public in accordance with procedures established by the Bankruptcy Court.

(d)  The Trustees, and all parties to this Asbestos Trust Agreement agree to cooperate to the maximum extent reasonably possible in conducting any matters involving taxes, including the preparation of any necessary tax returns or reports, the furnishing of information necessary to prepare tax returns or reports, the administration of any tax audit or review, and the conduct of any tax contest. If it shall become necessary to contest any disputed tax, the party primarily liable for such potential tax liability shall

9

be entitled to control such contest, and the other parties shall cooperate with such controlling party to the maximum extent reasonably possible.

(e)     As provided in Section 7.2.8 of the Plan, on the Effective Date or as soon thereafter as is practicable, the Trustees, on behalf of the Asbestos Trust, shall enter into a cooperation agreement with the Reorganized Debtors pursuant to which:   (a) the Reorganized Debtors shall provide to the Asbestos Trust the non-privileged books and records of the Debtors and the Reorganized Debtors that pertain directly to Asbestos Claims and (b) the Asbestos Trust shall provide to the Reorganized Debtors books and records of the Asbestos Trust that pertain to Asbestos Claims so as to fully enable the Reorganized Debtors to recover any amounts available under any Asbestos Insurance Policy as if the Reorganized Debtors were processing, litigating and/or paying the Asbestos Claims directly.

(f)     The Trustees shall cause to be prepared as soon as practicable prior to the commencement of each fiscal year a budget and cash flow projections covering such fiscal year.  The Trustees shall provide a copy of the budget and cash flow to the FCR and the TAC.

(g)     The Trustees shall consult with the FCR (other than with respect to the PD TDP) and the TAC (i) on the implementation and administration of the TDPs and (ii) on the implementation and administration of the Asbestos Trust.  The Trustees may consult with the FCR and the TAC with respect to any other matter affecting the Asbestos Trust.  The Trustees shall meet with the FCR and the TAC not fewer than four (4) times each calendar year during the first two (2) years following the Effective Date and then two (2) times each calendar year thereafter, which shall be at a regular or special meeting of the Trustees as mutually agreed to by the Trustees, the FCR and the TAC, to discuss general matters regarding the administration of the Asbestos Trust, the review, allowance, and payment of Asbestos Claims, and the condition of the Asbestos Trust Assets.

(h)     In addition to the other provisions contained in this Asbestos Trust Agreement or in the TDPs requiring the consent of the FCR (except as it may affect Asbestos PD Claims) and the TAC, the Trustees shall be required to obtain the consent of the FCR and the consent of the TAC to:

(i)     amend any provision of this Asbestos Trust Agreement;

(ii)    terminate the Asbestos Trust pursuant to Section 8.2 hereof;

10

(iii)    change the number of Trustees to serve hereunder and appoint successor Trustee(s); provided, however, that in no event shall the number of Trustees authorized to serve hereunder exceed five (5);

(iv)    change the compensation of the Trustees (other than mere cost-of-living increases);

(v)    amend or modify the TDPs; or

(vi)    take any action pursuant to Section 3.1(c)(viii) or 3.1(c)(xxi).

(i)    The Trustees, upon notice from the FCR or the TAC requesting consideration of one or more issues, shall at their next regular meeting or, if appropriate, at a specially called meeting, place on their agenda and consider such issues.

**3.3**    **[INTENTIONALLY LEFT BLANK].CLAIMS ADMINISTRATION.**On the Effective Date, the Trustees shall promptly proceed to adopt and implement the TDPs.

**3.5**    **INDEMNIFICATION OF TRUSTEES AND ADDITIONAL INDEMNITEES.**The Asbestos Trust shall indemnify and defend the Trustees and the Asbestos Trust's officers and employees to the fullest extent that a corporation or trust organized under the laws of the State of Delaware is from time to time entitled to indemnify and defend its directors, trustees, officers and employees against any and all liabilities, expenses, claims, damages or losses incurred by them in the performance of their duties hereunder. Additionally, any Entity who was or is a party, or is threatened to be made a party to any threatened or pending judicial, administrative, or arbitrative action, by reason of any act or omission of such Entity with respect to (i) the Chapter 11 Cases and any act or omission undertaken by them prior to the commencement thereof, (ii) the liquidation of any Asbestos Claims, (iii) the administration of the Asbestos Trust and the implementation of TDPs, or (iv) any and all activities in connection with this Asbestos Trust Agreement (an "Additional Indemnitee") shall be indemnified and defended by the Asbestos Trust to the fullest extent that a corporation or trust organized under the laws of the State of Delaware is from time to time entitled to indemnify and defend its officers, directors, trustees, and employees, against reasonable expenses, costs and fees (including reasonable attorneys' fees and costs), judgments, awards, amounts paid in settlement, and liabilities of all kinds incurred by each Additional Indemnitee in connection with or resulting from such action, suit, or proceeding, if he or she acted in good faith and in a manner such Additional Indemnitee reasonably

11

believed to be in, or not opposed to, the best interests of the holders of Asbestos Claims whom the applicable Additional Indemnitee represents. Notwithstanding the foregoing, neither the Trustees nor any officer or employee of the Asbestos Trust, nor the FCR nor any member of the TAC shall be indemnified or defended in any way for any liability, expense, claim, damage, or loss for which they are ultimately liable under Sections 5.4, 6.8 or 7.9, as applicable.

(b)     Reasonable expenses, costs and fees (including reasonable attorneys' fees and costs) incurred by or on behalf of a Trustee or any Additional Indemnitee in connection with any action, suit, or proceeding, whether civil, administrative or arbitrative from which he or she is indemnified by the Asbestos Trust pursuant to Section 3.5(a), shall be paid by the Asbestos Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of such Trustee or Additional Indemnitee, to repay such amount in the event that it shall be determined ultimately by Final Order that such Trustee or any Additional Indemnitee is not entitled to be indemnified by the Asbestos Trust.

(c)     The Trustees shall have the power, generally or in specific cases, to cause the Asbestos Trust to indemnify the agents, advisors, or consultants of the Asbestos Trust to the same extent as provided in this Section 3.5 with respect to the Trustees.

(d)     Any indemnification under Section 3.5(c) of this Asbestos Trust Agreement shall be made by the Asbestos Trust upon a determination by the Trustees that indemnification of such Entity is proper in the circumstances.

(e)     The Trustees may purchase and maintain reasonable amounts and types of insurance on behalf of the Asbestos Trust and pay any individual who is or was a Trustee, officer, employee, agent or representative of the Asbestos Trust or an Additional Indemnitee against liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Trustee, FCR, member of the TAC, officer, employee, agent or other representative.

    **3.6**    ENCUMBRANCE. The Trustees and the Additional Indemnitees shall have an Encumbrance upon the Asbestos Trust Assets which shall be prior to any other Encumbrance thereon, and the Asbestos Trust hereby grants a security interest in the Asbestos Trust Assets, all proceeds thereof and all accounts into which such proceeds or the Asbestos Trust Assets are deposited or maintained to each of the Trustees and the Additional Indemnitees, to secure the payment of any amounts payable to them pursuant to Section 3.5, 5.5, 6.5 or 7.6. The Asbestos Trust shall take such actions as may be necessary or reasonably requested by any of the Trustees,

the FCR, the TAC or any of the other Additional Indemnitees to evidence such Encumbrance (including, without limitation, filing appropriate financing statements).

## Article 4.
## ACCOUNTS, INVESTMENTS, AND PAYMENTS

4.1    ACCOUNTS.The Trustees may, from time to time, establish and maintain such accounts and reserves within the Asbestos Trust estate as they may deem necessary, prudent, or useful in order to provide for the payment of Asbestos Trust Expenses payable hereunder and Asbestos Claims in accordance with the TDPs, and may, with respect to any such account or reserve, restrict the use of monies therein. In addition, the Trustees shall establish, as soon as practicable after the Effective Date, four separate and distinct accounts (maintained in separate banking and/or other accounts) to be designated the "PI-SE Account," the "PI-AO Account," the "PD Account," and the "Trust Expenses Account," respectively, and none of the assets held in the PI-SE Account, the PI-AO Account, the PD Account, or, the Trust Expenses Account, respectively, shall be commingled with assets held by the Asbestos Trust in any other account. In addition, separate books and records shall be kept with respect to each of the PI-SE Account, the PI-AO Account, the PD Account, and the Trust Expenses Account (collectively, the "Asbestos Trust Accounts"). All amounts received by the Asbestos Trust in respect of the Debtors' Payment and the Sealed Air Payment, and all proceeds thereof and earnings thereon, shall be divided and held by the Asbestos Trust in the following way:

(a)    The amount received by the Asbestos Trust in respect of the Debtors' Payment and the Sealed Air Payment equal to the amount of the Asbestos PI-SE Class Fund, as determined by Bankruptcy Court, and all proceeds thereof and earnings thereon, shall be held solely in the PI-SE Account and shall be used to pay Allowed Asbestos PI-SE Claims as and to the extent provided in the PI-SE TDP, and any and all applicable tax obligations of the Asbestos Trust arising out of the assets comprising such Asbestos PI-SE Class Fund.

(b)    The amount received by the Asbestos Trust in respect of the Sealed Air Payment (to the extent any funds remain after first funding the Asbestos PI-SE Class Fund, the Asbestos PD Class Fund and the Asbestos Trust Expenses Fund) and the Debtors' Payment equal to the amount of the Asbestos PI-AO Class Fund, as determined by the Bankruptcy Court, and all proceeds thereof and earnings thereon, shall be held solely in the PI-AO Account and shall be used to pay Allowed Asbestos PI-AO Claims as and to the extent provided by the PI-AO TDP, and any and all applicable tax obligations of the Asbestos Trust arising out of the assets comprising such Asbestos PI-AO Class Fund.

(c)    The amount received by the Asbestos Trust in respect of the Debtors' Payment and the Sealed Air Payment equal to the amount of the Asbestos PD Class Fund, as determined by the Bankruptcy

13

Court, and all proceeds thereof and earnings thereon, shall be held solely in the PD Account and shall be used to pay Allowed Asbestos PD Claims as and to the extent provided in the PD TDP, and any and all applicable tax obligations of the Asbestos Trust arising out of the assets comprising such Asbestos PD Class Fund.

(d)      The amount received by the Asbestos Trust in respect of the Debtors' Payment equal to the amount of the Asbestos Trust Expenses Fund, as determined by the Bankruptcy Court, and all proceeds thereof and earnings thereon, shall be held solely in the Trust Expenses Account and shall be used to pay Asbestos Trust Expenses as and to the extent approved by the Trustees, and any and all applicable tax obligations of the Asbestos Trust arising out of the assets comprising such Asbestos Trust Expenses Fund.

    **4.2      INVESTMENTS.**Investment of monies held in the Asbestos Trust shall be administered in the manner in which individuals of ordinary prudence, discretion, and judgment would act in the management of their own affairs, subject to the following limitations and provisions:

(a)      The Asbestos Trust shall not acquire, directly or indirectly, equity in any Entity or business enterprise if, immediately following such acquisition, the Asbestos Trust would hold more than 5% of the equity in such Entity or business enterprise.  The Asbestos Trust shall not hold, directly or indirectly, more than 10% of the equity in any Entity or business enterprise.

(b)      The Asbestos Trust shall not acquire or hold any long-term debt securities unless (i) such securities are rated "A" or higher by Moody's Investors Services, Inc. ("Moody's") or by Standard & Poor's Corporation ("S&P"), or (ii) such securities have been issued or fully guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof.

(c)      The Asbestos Trust shall not acquire or hold any commercial paper unless such commercial paper is rated "P-1" or higher by Moody's or "A-1" or higher by S&P or has been given an equivalent rating by another nationally recognized statistical rating agency.

(d)      The Asbestos Trust shall not acquire or hold any promissory note of a domestic corporation unless such note is rated "A" or higher by Moody's or S&P.

(e)      The Asbestos Trust shall not acquire or hold any foreign or domestic banker's acceptance, certificate of deposit, time deposit or note, unless that instrument is rated "A" or higher by Moody's or S&P.

14

(f)     The Asbestos Trust may acquire issue which is a direct or indirect obligation of any state, county, city or other qualifying entity. A short term issue may be rated no lower than "M1G 1" or "SP-1"; a long-term issue may be rated no lower than "A" by S&P or Moody's.

(g)     The Asbestos Trust may invest in a money market fund if the fund has minimum net assets of $550 million.

(h)     The Asbestos Trust shall not acquire or hold any common or preferred stock or convertible securities unless such stock or securities are rated "A" or higher by Moody's or "A" or higher by S&P's.

(i)     The Asbestos Trust shall not acquire any securities or other instruments issued by any Entity (other than debt securities or other instruments issued or fully guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof) if, following such acquisition, the aggregate fair market value as determined in good faith by the Trustees of all securities and instruments issued by such Entity held by the Asbestos Trust would exceed 2% of the aggregate value of the Asbestos Trust. The Asbestos Trust shall not hold any securities or other instruments issued by any Entity (other than debt securities or other instruments issued or fully guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof to the extent that the aggregate fair market value as determined in good faith by the Trustees of all securities and instruments issued by such Entity and held by the Asbestos Trust would exceed 5% of the aggregate value of the Asbestos Trust.

(j)     The Asbestos Trust shall not acquire or hold any certificates of deposit unless all publicly-held, long-term debt securities, if any, of the financial institution issuing the certificate of deposit and the holding company, if any, of which such financial institution is a subsidiary, meet the standards set forth in Section 4.2(b).

(k)     The Asbestos Trust shall not acquire or hold any options or derivatives.

(l)     The Asbestos Trust shall not acquire or hold any repurchase obligations unless, in the opinion of the Trustees, they are adequately collateralized.

(m)     Notwithstanding the foregoing, the Asbestos Trust may (A) acquire and hold equity or debt securities or instruments of the

15

type(s) described in clauses (a) through (l) of this Section 4.2 which are issued by the Debtors, Reorganized Debtors, or any of their Affiliates, or successors, (B) may hold the Sealed Air Common Stock (but no other securities issues by Sealed Air), and (C) may acquire and hold any other property or asset included in kind in the Asbestos Trust Assets, in each case without regard to any of the limitations set forth in such clauses (a) through (l).

**4.3    SOURCE OF PAYMENTS.** All Asbestos Trust Expenses and all liabilities with respect to each of the Asbestos Claims, shall be payable by the Asbestos Trust out of the Asbestos Trust Accounts. Neither the Debtors, Reorganized Debtors, their respective Affiliates or subsidiaries, any successor in interest or the present or former stockholders, shareholders or Representatives of the Debtors, Reorganized Debtors, or their Affiliates, nor the Trustees, the FCR, the TAC or any of their Representatives shall be liable for the payment of any Asbestos Claims, Asbestos Trust Expenses or any other liability of the Asbestos Trust. Notwithstanding the above, and as described in Section 7.2.2 of the Plan, after the exhaustion of the Asbestos PI-AO Class Fund in its entirety, all Allowed PI-AO Claims shall be paid in Cash by the Asbestos Trust from funds to be paid to the Asbestos Trust by the Reorganized Debtors, such funds being in addition to the Debtors' Payment.

**4.4    INDEMNIFICATION.**

Any claim for indemnification from the Asbestos Trust and all costs and expenses associated therewith (except for an indemnification claim which is also an Asbestos Claim) shall be satisfied from the Trust Expenses Accounts. Nothing herein is intended to be, nor shall it be construed as, an admission as to the validity or enforceability of any particular claim for indemnification, including any claim for indemnification by any Holder of an Asbestos Claim.

### Article 5.
### TRUSTEES

**5.1    NUMBER.**

The initial number of Trustees shall be three (3); provided, however, that the number of Trustees may be increased or decreased in accordance with Section 3.2(h)(iii) hereof. The initial Trustees shall be nominated by the Debtors on or before the Confirmation Date. The Bankruptcy Court, after notice and opportunity for hearing, shall be asked to appoint the three individuals named by the Debtors to serve as Trustees of the Asbestos Trust effective as of the Effective Date.

**5.2    TERM OF SERVICE.** The initial Trustees shall serve from the Effective Date and each successor Trustee or Trustees named to fill a vacancy shall serve from the date of appointment until the earlier of (i) his or her death, (ii) the end of the calendar year in which he or she reaches age 70, (iii) his or her resignation pursuant to Section

16

5.2(b), (iv) his or her removal pursuant to Section 5.2(c), or (v) the termination of the Asbestos Trust pursuant to Section 8.2.

(b)     Any Trustee may resign at any time by written notice to each of the TAC and the FCR. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)     Any Trustee may be removed in the event that such Trustee becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or for other good cause.   Good cause shall be deemed to include any substantial failure to comply with Section 3.2, a consistent pattern of neglect and/or failure to perform or participate in performing the duties of a trustee hereunder, or repeated non-attendance at scheduled meetings. Such removal shall be made by the mutual decision of the TAC and the FCR, and shall take effect at such time as the TAC and the FCR jointly shall determine.

5.3     **APPOINTMENT OF SUCCESSOR TRUSTEE(S).**In the event of a vacancy in the position of a Trustee, the vacancy shall be filled by the joint consent of the TAC and the FCR. If such vacancy has not been filled within ninety (90) days, the Bankruptcy Court shall be asked to fill the vacancy on application of the FCR or any member of the TAC.

(b)     Immediately upon the appointment of any successor Trustee, all rights, titles, duties, powers and authority of the predecessor Trustee hereunder shall be vested in, and undertaken by, the successor Trustee without any further act. No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee.

5.4     **LIABILITY OF TRUSTEES, OFFICERS AND EMPLOYEES.**No Trustee, officer, or employee of the Asbestos Trust shall be liable to the Asbestos Trust, to any Entity holding an Asbestos Claim, or to any other Entity except for such individual's gross negligence or willful misconduct. Such protection may, in the discretion of the Trustees, be extended to the agents, advisors, or consultants of the Asbestos Trust. No Trustee, officer, or employee of the Asbestos Trust shall be liable for any act or omission of any other officer, employee, agent or consultant of the Asbestos Trust, unless such Trustee, officer, employee or consultant of the Asbestos Trust, respectively, acted with gross negligence or willful misconduct in the selection or retention of such other officer, employee, agent, or consultant of the Asbestos Trust.

5.5     **COMPENSATION AND EXPENSES OF TRUSTEES.**Each Trustee shall receive compensation from the Asbestos Trust for his or her services as a Trustee in the amount of $_____ per annum plus a per diem allowance for meetings or other Asbestos Trust business attended

17

in the amount of $_____. The per annum compensation payable to each Trustee hereunder shall be reviewed every three (3) years and appropriately adjusted with the consent of each of the FCR and the TAC.

(b)     The Asbestos Trust shall promptly reimburse each Trustee on a monthly basis for all reasonable out-of-pocket costs and expenses incurred by each Trustee in connection with the performance of his or her duties hereunder.

(c)     The Asbestos Trust shall include a description of the amounts paid under this Section 5.5 in the report to be filed pursuant to Section 3.2(c)(i) of this Asbestos Trust Agreement.

**5.6     TRUSTEES' EMPLOYMENT OF PROFESSIONALS.**The Trustees may, but shall not be required to, retain and/or consult with counsel, accountants, appraisers, auditors and forecasters, professionals related to the litigation of Asbestos Claims including but not limited to medical professionals, and other Entities deemed by the Trustees to be qualified as experts on the matters submitted to them with the consent of each of the FCR and the TAC, and the opinion of any such Entities on any matters submitted to them by the Trustees shall be full and complete authorization and protection in respect of any action taken or not taken by the Trustees hereunder in good faith and in accordance with the written opinion of any such Entity, in the absence of gross negligence.

**5.7     TRUSTEES' INDEPENDENCE.**No Trustee shall, during the term of his or her service, hold a financial interest in, act as attorney or agent for, or serve as any other professional for the Reorganized Debtors or any of their successors.  No Trustee shall act as an attorney for any Entity who holds an Asbestos Claim.

**5.8     BOND.**The Trustees shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

### Article 6.
### THE FUTURE CLAIMANTS' REPRESENTATIVE

**6.1     DUTIES.**The FCR shall serve in a fiduciary capacity, for the purpose of protecting the rights of persons that might subsequently assert Claims and/or Demands channeled to the Asbestos Trust.  Where provided in this Asbestos Trust Agreement or the TDPs, certain actions of the Trustees are subject to the consent of the FCR.

**6.2     TERM OF OFFICE.**The FCR shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 6.2(b), (iii) his or her removal pursuant to Section 6.2(c) or (iv) the termination of the Asbestos Trust pursuant to Section 8.2.

(b)     The FCR may resign at any time by written notice to the Trustees. Such notice shall specify a date when such resignation shall take

18

effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)     The FCR may be removed in the event he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or for other good cause. Good cause shall be deemed to include a consistent pattern of neglect and failure to perform or to participate in performing the duties of the FCR hereunder and under the TDPs, such as repeated non-attendance at scheduled meetings. Such removal shall be made by decision of the Trustees and the TAC, subject to an order of the Bankruptcy Court approving same, and shall take effect at such time as the Bankruptcy Court's order becomes a Final Order.

**6.3     APPOINTMENT OF SUCCESSOR.**A vacancy caused by resignation shall be filled with an individual designated by the resigning FCR. A vacancy for any other reason, or in the absence of a designation by the former FCR, shall be filled with an individual selected by the Trustees with the consent of the TAC.

**6.4     FUTURE CLAIMANTS' REPRESENTATIVE'S EMPLOYMENT OF PROFESSIONALS.**The FCR may retain and/or consult with counsel, accountants, appraisers, auditors, forecasters, asbestos experts and other Entities deemed by the FCR to be qualified as experts on matters submitted to them, and the opinion of any such Entities on any matters submitted to them shall be full and complete authorization and protection in support of any action taken or not taken by the FCR hereunder in good faith and in accordance with the written opinion of any such Entity, and in the absence of gross negligence. The FCR and his or her experts shall at all times have complete access to the Asbestos Trust's officers, employees and agents, and the accountants, appraisers, auditors, forecasters and other experts retained by the Asbestos Trust as well as to all information generated by them or otherwise available to the Asbestos Trust or the Trustees.

**6.5     COMPENSATION AND EXPENSES OF THE FUTURE CLAIMANTS' REPRESENTATIVE.**The FCR shall receive compensation from the Asbestos Trust for his or her services in the form of the FCR's normal hourly rate for services performed, consistent with the Bankruptcy Court's order approving his appointment, such compensation being subject to an annual review, adjustment, and approval by the Trustees.

(b)     The Asbestos Trust shall promptly reimburse, or pay directly if so instructed, the FCR for all reasonable out-of-pocket costs and expenses, including (i) fees and costs associated with the employment of professionals pursuant to Section 6.4, (ii) reasonable fees and costs incurred in connection with the performance of his or her duties hereunder, and (iii) reasonable fees and costs associated with the procurement and maintenance of insurance incurred by the FCR in connection with the performance of his or her duties hereunder. All such reimbursements or direct

19

payments shall be subject to approval by the Trustees and shall be deemed Asbestos Trust Expenses.

**6.6   PROCEDURE FOR OBTAINING CONSENT OF THE FUTURE CLAIMANTS' REPRESENTATIVE.**In the event the consent of the FCR is required pursuant to the terms of this Asbestos Trust Agreement, the Trustees shall promptly provide the FCR and his or her counsel with notice and with all information regarding the matter in question.

(b)   The FCR must consider in good faith and in a timely fashion any request by the Trustees and may not withhold his or her consent unreasonably. If the FCR does not notify the Trustees of his or her objection to such request within 20 days or such other time period as has been approved by the Bankruptcy Court after receiving notice and information regarding such request, then the FCR's consent shall be deemed to have been affirmatively granted.

**6.7   LACK OF CONSENT OF THE FUTURE CLAIMANTS' REPRESENTATIVE.**In the event the Trustees are unable to obtain the consent of the FCR to any action or decision for which consent is required after following the procedure set forth in Section 6.6 of this Asbestos Trust Agreement, or if the Trustees and the FCR are unable to reach agreement on any matter on which such consent is required, the matter shall be submitted promptly to alternative dispute resolution if mutually agreeable to the Trustees and the FCR.

(b)   If the disagreement is not resolved by alternative dispute resolution or if the Trustees and the FCR do not agree to participate in any such alternative dispute resolution, the Trustees may apply to the Bankruptcy Court on an expedited basis for approval of such action or decision, and only if such approval is given by the Bankruptcy Court by entry of an appropriate order, shall the Trustees have the authority to implement such action or decision without the FCR's consent.

**6.8   LIABILITY OF FUTURE CLAIMANTS' REPRESENTATIVE, OFFICERS AND EMPLOYEES.**The FCR shall not be liable to the Asbestos Trust, to any Entity holding an Asbestos Claim, or to any other Entity except for such individual's own gross negligence or willful misconduct. Such protection may, in the discretion of the Trustees, be extended to the agents, advisors, or consultants of the FCR. Neither the FCR nor any officer or employee of the FCR shall be liable for any act or omission of any other Representative of the Asbestos Trust, unless the FCR, or officer or employee of the FCR, acted with gross negligence or willful misconduct in the selection or retention of such other Representative of the Asbestos Trust.

20

## Article 7.
## TRUST ADVISORY COMMITTEE

     **7.1**    FORMATION AND NUMBER.The TAC shall be formed pursuant to the Plan as of the Effective Date.  The TAC shall be composed of three (3) members.  The initial TAC members shall be appointed by the Bankruptcy Court pursuant to Section 7.2.7 of the Plan and named on the signature page hereof.  The TAC shall have a chairperson who shall act as the TAC's liaison with the Asbestos Trust and the FCR, coordinate and schedule meetings of the TAC, and handle all administrative matters that come before the TAC.

     **7.2**    DUTIES.The TAC and its members shall serve in a fiduciary capacity representing all Holders of Asbestos Trust Claims as of the Effective Date.  Where provided in this Asbestos Trust Agreement or the TDPs, certain actions by the Trustees are subject to the consent of the TAC.

     **7.3**    TERM OF OFFICE.Each member of the TAC shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 7.3(b), (iii) his or her removal pursuant to Section 7.3(c) or (iv) the termination of the Asbestos Trust pursuant to Section 8.2.

     (b)    Any member of the TAC may resign at any time by written notice to each of the remaining members of the TAC.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

     (c)    Any member of the TAC may be removed in the event he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or for other good cause.  Good cause shall be deemed to include a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member hereunder and under the TDPs, such as repeated non-attendance at scheduled meetings.  Such removal shall be made by the majority vote of the Trustees, the FCR and the other members of the TAC, and shall take effect at such time as the Trustees', the FCR and the other members of the TAC jointly determine.

     **7.4**    APPOINTMENT OF SUCCESSORS.A vacancy in the TAC caused by resignation, death, or removal shall be filled with an individual, not a firm, approved by the majority vote of the FCR and all remaining members of the TAC.

     **7.5**    THE TAC'S EMPLOYMENT OF PROFESSIONALS.The TAC may retain and/or consult with counsel, accountants, appraisers, auditors, forecasters, asbestos experts and other Entities deemed by the TAC to be qualified as experts on matters submitted to them, and the opinion of any such Entities on any matters submitted to them shall be full and complete authorization and protection in support of any action taken or not taken by the TAC hereunder in

good faith and in accordance with the written opinion of any such Entity, and in the absence of gross negligence. The TAC and its experts shall at all times have complete access to the Asbestos Trust's officers, employees and agents, and the accountants, appraisers, auditors, forecasters and other experts retained by the Asbestos Trust as well as all information generated by them or otherwise available to the Asbestos Trust or the Trustees.

**7.6   COMPENSATION FOR ATTENDANCE AT MEETINGS AND EXPENSES OF THE TAC.** The members of the TAC shall be compensated for attendance at meetings in the form of a reasonable hourly rate set by the Trustees, such compensation being subject to an annual review, adjustment, and approval by the Trustees. The Asbestos Trust shall promptly reimburse, or pay directly if so instructed, the TAC and each respective TAC member for all reasonable out-of-pocket costs and expenses, including reasonable fees and costs associated with employment of professionals pursuant to Section 7.5 and the procurement and maintenance of insurance incurred by the TAC in connection with the performance of its members' duties hereunder. All such reimbursements or direct payments shall be subject to approval by the Trustees and shall be deemed Asbestos Trust Expenses.

**7.7   PROCEDURE FOR OBTAINING CONSENT OF THE TAC.** In the event the consent of the TAC is required pursuant to the terms of this Asbestos Trust Agreement, the Trustees shall promptly provide the TAC and its counsel with notice and with all information regarding the matter in question.

(b)   The TAC must consider in good faith and in a timely fashion any request by the Trustees and may not withhold its consent unreasonably. If the TAC does not notify the Trustees of its objection to such request within 20 days or such other time period as has been approved by the Bankruptcy Court after receiving notice and information regarding such request, then the TAC's consent shall be deemed to have been affirmatively granted.

(c)   Except where otherwise provided for in this Asbestos Trust Agreement, the TAC shall act in all cases by majority vote.

**7.8   LACK OF CONSENT OF THE TAC.** In the event the Trustees are unable to obtain the consent of the TAC on any action or decision for which consent of the TAC is required, after following the procedure set forth in Section 7.7 of this Asbestos Trust Agreement, or if the Trustees and the TAC are unable to reach agreement on any matter on which the TAC's consent is required, then the matter may be submitted promptly to alternative dispute resolution if mutually agreeable to the Trustees and the TAC.

(b)   If the disagreement is not resolved by alternative dispute resolution, or if the Trustees and the TAC do not agree to participate in any such alternative dispute resolution, the Trustees may apply to the Bankruptcy Court on an expedited basis for

22

approval of such action or decision, and only if such approval is given by the Bankruptcy Court by entry of an appropriate order, shall the Trustees have the authority to implement such action or decision without the TAC's consent.

**7.9    LIABILITY OF THE TAC'S, OFFICERS AND EMPLOYEES.**No member of the TAC shall be liable to the Asbestos Trust, to any Entity holding an Asbestos Claim, or to any other Entity except for such individual's gross negligence or willful misconduct. Such protection may, in the discretion of the Trustees, be extended to the agents, advisors, or consultants of the TAC. No member of the TAC, nor any officer or employee of the TAC, shall be liable for any act or omission of any other officer, employee, agent or consultant of the TAC unless the member of the TAC, or officer or employee of the TAC, acted with gross negligence or willful misconduct in the selection or retention of such other officer, employee, agent, or consultant of the Asbestos Trust.

### Article 8.
### GENERAL PROVISIONS

**8.1    IRREVOCABILITY.**The Asbestos Trust is irrevocable.

**8.2    TERMINATION.**The Asbestos Trust shall automatically terminate on the date ninety (90) days after the first to occur of the following events (the "Termination Date"):

(i)    subject to Section 3.2(h), the Trustees in their discretion decide to terminate the Asbestos Trust because (A) they deem it unlikely that new Asbestos Claims will be filed against the Asbestos Trust, and (B) Asbestos Claims duly filed with the Asbestos Trust have been Allowed and paid to the extent provided in this Asbestos Trust Agreement and the TDPs (and to the extent possible based upon the funds available through the Plan Documents), or Disallowed by a Final Order, and twelve (12) consecutive months have elapsed during which no new Asbestos Claims have been filed with the Asbestos Trust; or

(ii)    if the Trustees have procured and have in place irrevocable insurance policies and have established claims handling agreements and other necessary arrangements with suitable third parties adequate to discharge all expected remaining obligations and expenses of the Asbestos Trust in a manner consistent with this Asbestos Trust Agreement and the TDPs, the date on which the Bankruptcy Court enters an order approving such insurance and other arrangements and such order becomes a Final Order.

23

(b)     On the Termination Date after payment of all the Asbestos Trust's liabilities, after all Demands have been provided for and after liquidation of all properties and other non-cash Asbestos Trust Assets then held by the Asbestos Trust, all monies remaining in the Asbestos Trust estate shall be given to such organization(s) exempt from federal income tax under Section 501(c)(3) of the IRC, which tax-exempt organization(s) shall be selected by the Trustees using their reasonable discretion; provided, however, that (i) if practicable, the tax-exempt organization(s) shall be related to the treatment of, research on, or the relief of suffering of individuals suffering from asbestos-related lung disorders, and (ii) the tax-exempt organization(s) shall not bear any relationship to Reorganized Debtors within the meaning of Section 468B(d)(3) of the IRC. Notwithstanding any other provision of the Plan Documents, this Section 8.2(b) cannot be modified or amended.

**8.3     AMENDMENTS.** The Trustees, after consultation with the FCR and the TAC, and subject to the consent of each of the FCR and the TAC to the extent provided elsewhere in this Asbestos Trust Agreement, may modify or amend this Asbestos Trust Agreement or any document annexed to it, including the TDPs (provided, however, the provisions of the TDPs, if any, regarding any such modification or amendment are also followed). Any modification or amendment made pursuant to this Section 8.3 must be done in writing. Notwithstanding anything contained in this Asbestos Trust Agreement to the contrary, neither this Asbestos Trust Agreement, the TDPs nor any document annexed to the foregoing shall be modified or amended in any way that could jeopardize, impair, or modify the applicability of Section 524(g) of the Bankruptcy Code, the efficacy or enforceability of the Asbestos Channeling Injunction, the Asbestos Insurance Entity Injunction or the Released Matters Injunction set out in the Plan, the Asbestos Trust's QSF status under Section 468B of the IRC or the rights of the Debtors or the Reorganized Debtors under the Plan Documents.

**8.4     MEETINGS.** The FCR, the Trustees, or a TAC member shall be deemed to have attended a meeting described in Section 3.2(g) herein in the event such person spends a substantial portion of the day conferring, by phone or in person, on Asbestos Trust matters with the FCR, the Trustees or a TAC member, as applicable. The Trustees shall have complete discretion to determine whether a meeting, as described herein, occurred for purposes of this Asbestos Trust Agreement.

**8.5     SEVERABILITY.** Should any provision in this Asbestos Trust Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Asbestos Trust Agreement.

**8.6     NOTICES.** Notices to Entities asserting Asbestos Claims shall be given at the address of such Entity, or, where applicable, such Asbestos Trust Entity's representative, in each case as provided on such person's claim form submitted to the Asbestos Trust with respect to his or her or its Asbestos Claim or as otherwise provided to the Asbestos Trust. Any notices or other report required or permitted by this Asbestos Trust Agreement must be in (i) writing and

is deemed given (a) when delivered personally to the recipient, (b) when sent by facsimile before 5:00 p.m. prevailing eastern time on a Business Day with a copy of such facsimile sent on the same day to the recipient by reputable overnight courier service (charges prepaid), (c) five (5) days after deposit in the U.S. mail, mailed by registered or certified mail, return receipt requested, postage prepaid, or (d) one Business Day after being sent to the recipient by reputable overnight courier service (charges prepaid); and (ii) addressed to the other Entities at the addresses set forth below, or at such other address as such Entity now designates from time to time in writing in accordance with this Section 8.6.

To the Asbestos Trust through the Trustees:

_____
_____
_____
Attention: _____
Fax: _____

To the TAC:

_____
_____
_____
Attention: _____
Fax: _____

To the Future Claimants' Representative:

8260 Willow Oaks Corp. Drive
P.O. Box 10415
Fairfax, VA 22031
Attention: David T. Austern
Fax: (703) 205-6249

With a copy to:

Swindler, Berlin, Shereff, Friedman LLP
The Washington Harbour
3000 K Street, NW, Suite 300
Washington, DC 20007
Attention: Roger Frankel
Fax: (202) 424-7643

To Debtors, Settlors or Reorganized Debtors:

W. R. Grace & Co.
7500 Grace Drive

Columbia, MD 21044
Attention: Secretary
Fax: (410) 531-4545

With a copy to:

Kirkland & Ellis LLP
777 South Figueroa Street, 37th Floor
Los Angeles, CA 90017
Attention: Bennett L. Spiegel / Lori Sinanyan
Fax: (213) 680-8500

and

Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601
Attention: Jonathan Friedland / Ryan Bennett
Fax: (312) 861-2200

and

Pachulski, Stang, Ziehl, Young, Jones & Weintraub P.C.
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Attention: Laura Davis Jones / David W. Carickhoff, Jr.
Fax: (302) 652-4400

All such notices and communications, if delivered personally or via overnight courier or if mailed shall be effective when physically delivered at the designated addresses or, if electronically transmitted, when the communication is received at the designated addresses and confirmed by the recipient by return electronic transmission.

91100-001\DOCS_DE:102548.1

**8.7   SUCCESSORS AND ASSIGNS.**The provisions of this Asbestos Trust Agreement shall be binding upon and inure to the benefit of the Debtors, Reorganized Debtors, the Asbestos Trust and the Trustees and their respective successors and assigns, except that neither the Debtors nor the Asbestos Trust nor the Trustees may assign or otherwise transfer any of its, or his or her rights or obligations under this Asbestos Trust Agreement, except, in the case of the Asbestos Trust and the Trustees, as contemplated by Section 3.1 and 8.2.

**8.8   LIMITATION ON CLAIM INTERESTS FOR SECURITIES LAWS PURPOSES.**Asbestos Claims and any interests therein (a) shall not be assigned, conveyed, hypothecated, pledged or otherwise transferred, voluntarily or involuntarily, directly or indirectly, except by will or under the laws of descent and distribution, (b) shall not be evidenced by a certificate or other instrument; (c) shall not possess any voting rights; and (d) shall not be entitled to receive any dividends or interest.

**8.9   ENTIRE AGREEMENT; NO WAIVER.**The entire agreement of the parties relating to the subject matter of this Asbestos Trust Agreement is contained herein and in the documents referred to herein, and this Asbestos Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power or privilege. The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity, except as otherwise provided in the Asbestos Channeling Injunction.

**8.10   HEADINGS.**The headings used in this Asbestos Trust Agreement are inserted for convenience only and neither constitute a portion of this Asbestos Trust Agreement, nor in any manner affect the construction of the provisions of this Asbestos Trust Agreement.

**8.11   GOVERNING LAW.**This Asbestos Trust Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware without regard to Delaware conflict of laws principles.

**8.12   DISPUTE RESOLUTION.**Any disputes that arise under this Asbestos Trust Agreement or under the TDPs or the Trust By-Laws shall be resolved by the Bankruptcy Court pursuant to the Plan, except as otherwise provided herein, or in the TDPs or in the Trust By-Laws. Notwithstanding anything else herein contained, to the extent any provision of this Asbestos Trust Agreement is inconsistent with any provision of the Plan, the Plan shall control.

**8.13   ENFORCEMENT AND ADMINISTRATION.**The provisions of this Asbestos Trust Agreement and the annexes hereto shall be enforced by the Bankruptcy Court pursuant to the Plan. The parties hereby further acknowledge and agree that the Bankruptcy Court shall have exclusive jurisdiction over the settlement of the accounts of the Trustees.

**8.14   EFFECTIVENESS.**This Asbestos Trust Agreement shall not become effective until such time as it has been approved by the Bankruptcy Court and executed and delivered by all the parties hereto, and the Effective Date of the Plan has occurred.

**8.15**    **COUNTERPART SIGNATURES.**This Asbestos Trust Agreement may be executed in any number of counterparts, each of which shall constitute an original, but such counterparts shall together constitute but one and the same instrument.

**8.16**    **NOTICES UNDER PLAN DOCUMENTS.**The Trustees shall deliver to the TAC and the FCR a copy of all written notices that the Asbestos Trust or the Trustees give or receive under any of the Plan Documents (other than the TDPs) promptly after receipt of the same.  Notices to the TAC or the FCR under the TDPs shall be governed by the provisions of the TDPs.

\* \* \* \* \*

[signature page to follow]

IN WITNESS WHEREOF, the parties have executed this WRG Asbestos Trust Agreement this day of _____, 2005.

**SETTLORS:**

By: _____
Name: _____
Title: _____

**TRUSTEES:**

_____
Name:

_____
Name:

_____
Name:

**FUTURE CLAIMANTS' REPRESENTATIVE**

_____
Name:

**TRUST ADVISORY COMMITTEE**

_____
Name:

_____
Name:

_____
Name:

_____