# Exhibit Tab 12

Sealed Air Settlement Agreement

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case Nos. 01-1139 through 01-1200 |
| W.R. GRACE & CO., et al., | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| OFFICIAL COMMITTEE OF | ) | |
| ASBESTOS PERSONAL INJURY | ) | |
| CLAIMANTS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -against- | ) | Adv. No. 02-2210 |
| | ) | [LEAD DOCKET] |
| SEALED AIR CORPORATION | ) | |
| and CRYOVAC, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| OFFICIAL COMMITTEE OF | ) | |
| ASBESTOS PERSONAL INJURY | ) | |
| CLAIMANTS, et al., | ) | |
| | ) | |
| | ) | Adv. No. 02-2211 |
| Plaintiffs, | ) | |
| | ) | |
| -against- | ) | |
| | ) | |
| FRESENIUS MEDICAL CARE, | ) | |
| HOLDINGS, INC., et al., | ) | This Document Pertains to Adv. No. |
| | ) | 02 2210 |
| | ) | |
| Defendants. | ) | |
| | ) | |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release, dated November 10, 2003, is made by and among the Official Committee of Asbestos Personal Injury Claimants, the Official Committee of Asbestos Property Damage Claimants, Sealed Air Corporation, a Delaware corporation, and Cryovac, Inc., a Delaware corporation.

## I.    **Definitions**

As used in this Agreement, the following capitalized terms shall have the following meanings (such meanings to be equally applicable to the singular and plural forms of the terms defined), unless a paragraph or subparagraph of this Agreement expressly provides otherwise:

a.      "Action" means the suit styled <u>Official Committee of Asbestos Personal Injury Claimants and Official Committee of Asbestos Property Damage Claimants of W.R. Grace & Co., suing in behalf of the Chapter 11 Bankruptcy Estate of W.R. Grace & Co., et al. v. Sealed Air Corporation and Cryovac, Inc.</u>, Adv. No. 02-2210 (D. Del.).

b.      "Actually Realized" shall have the meaning set forth in paragraph VI(h) of this Agreement.

c.      "Affiliate" means with respect to any Person, any other Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person.

d.      "Agreement" means this Settlement Agreement and Release and any exhibits, schedules, and annexes thereto, including, without limitation, the Registration Rights Agreement attached hereto as Exhibit 1 (the "Registration Rights Agreement").

e.      "Announcement" means an "Announcement" (including any successor name to an Announcement) published in the Internal Revenue Bulletin (including any successor publication).

f.      "Anti-Dilution" means the provisions set forth in Article III of this Agreement.

2

g.      "Asbestos Claims" means, collectively, Asbestos Personal Injury Claims, Asbestos Property Damage Claims, and any 'demand' related thereto as the term is defined in section 524(g)(5) of the Bankruptcy Code.

h.      "Asbestos Personal Injury Claims" means any and all Claims, Debts, and Damages for death, bodily injury, sickness, disease, medical monitoring, or other personal injuries (whether physical or not) caused or allegedly caused by, based on, arising out of, or attributable to, directly or indirectly, in whole or in part, the presence of or exposure at any time to asbestos or asbestos-containing material or products, mined, processed, consumed, used, stored, manufactured, designed, sold, assembled, distributed, disposed of, or installed by or on behalf of any Debtor or any of its predecessors, successors, or assigns, or any current or former Affiliate of any of the foregoing, including, without limitation, any Claims, Debts, and Damages for reimbursement, indemnification, subrogation, or contribution.

i.      "Asbestos Property Damage Claims" means any and all Claims, Debts, and Damages for or arising out of property damage, including, without limitation, the cost of inspecting, maintaining, encapsulating, abating, repairing, decontaminating, removing, or disposing of asbestos or asbestos containing materials or products in buildings or other structures, or other property caused or allegedly caused by, based on, arising out of, or attributable to, directly or indirectly, in whole or in part, the installation in, presence in, or removal of asbestos or asbestos-containing material or products mined, processed, consumed, used, stored, manufactured, designed, sold, assembled, distributed, disposed of, or installed by or on behalf of any Debtor or any of its predecessors, successors, or assigns, or any current or former Affiliate of any of the foregoing, including, without limitation, any Claims, Debts, or Damages for reimbursement, indemnification, subrogation, or contribution.

3

j.       "Asbestos-Related Claims" means any and all Claims, Debts, or Damages based on or arising from, in whole or in part, directly or indirectly:  (i) Asbestos Claims or (ii) Successor Claims based on or arising from, in whole or in part, directly or indirectly, the Cryovac Transaction.

k.       "Bankruptcy Code" means title 11 of the United States Code as in effect on the date of this Agreement.

l.       "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

m.       "Bankruptcy Termination Event" means, in the case of either of Sealed Air Corporation or Cryovac, Inc., (a) the filing by such entity of a voluntary petition for relief under the Bankruptcy Code or (b) the pendency against such entity of an involuntary petition for relief under the Bankruptcy Code (i) that has not been dismissed within ninety days of the filing or (ii) upon which an order for relief granting the involuntary petition has been entered.

n.       "CFO Annual Statement" shall have the meaning set forth in paragraph VI(j)(ii) of this Agreement.

o.       "Change in Circumstances" means (i) for U.S. federal income tax purposes, (x) any amendment to the Internal Revenue Code or the final or temporary regulations promulgated under the Internal Revenue Code, (y) a decision by any federal court, or (z) a Revenue Ruling, Notice, Revenue Procedure, or Announcement, which amendment is enacted, promulgated, issued, or announced, or which decision, Revenue Ruling, Notice, Revenue Procedure, or Announcement is issued or announced, in each case, after the Execution Date, and (ii) for financial accounting purposes, any amendment to or change in generally accepted accounting principles, which amendment is issued or announced or, which change occurs, in each case, after the Execution Date.

p.       "Chapter 11 Plan" means a confirmed plan or plans of reorganization of the Debtors.

4

q.       "Claims" means any and all claims, whether direct, indirect, derivative or otherwise, including, without limitation, 'claim' as the term is defined in section 101(5) of the Bankruptcy Code (except that a right to an equitable remedy shall also be considered a claim whether or not the breach gives rise to a right to payment), remedies, or causes of actions, liability, Debts, or Damages, known or unknown, now existing or hereafter arising, that have been, could have been, may be, or could be alleged or asserted now or in the future by any Person against the Debtors, their predecessors, successors, assigns, or any current or former Affiliate of any of the foregoing, or the Released Parties, of whatsoever kind or nature, whether alleged or asserted or not, whether founded in law, equity, admiralty, tort, contract, statute, or otherwise, and includes, without limitation, demands, liability, suits, judgments, and all legal or equitable theories of recovery whether arising under the common law or any statute, ordinance, or regulation.  Without limiting the generality of the foregoing, Claims shall include any and all claims, causes of action, Debts, or Damages under or attributable to: (i) chapter 5 of the Bankruptcy Code; (ii) successor liability, piercing the corporate veil, alter ego liability, agency liability, transferee liability, or other similar claims or causes of action seeking to hold a Person liable for the debts or obligations of another Person; (iii) chapter 176 of title 28 of the United States Code or any other similar statutes; (iv) any debtor-creditor, fraudulent transfer or fraudulent conveyance statutes; or (v) any other similar claims or causes of action (all such Claims, causes of action, Debts, or Damages under or attributable to (i) through (v), collectively, "Successor Claims").

r.       "Confirmation Order" means an order or orders confirming the Chapter 11 Plan.

s.       "Contrary Opinion" means (i) a written opinion from a nationally recognized law firm experienced in Tax matters that states that, as a result of a Change in Circumstances, there is no "reasonable basis", as defined under section 6662 of the Internal Revenue Code (or successor

5

provision thereof), for the taking of, or the failure to take, a Defined Action referred to in paragraph II(c)(ix), (x), or (xi), VI(b) or VI(g), of this Agreement, as the case may be, by such Plaintiff, 524(g) Trust, Debtor or Non-Debtor Affiliate, as the case may be, or (ii) a written opinion from nationally recognized accounting firm that states that, as a result of a Change in Circumstances, the taking, or the failure to take, a Defined Action referred to in paragraph II(c)(ix), (x), or (xi), VI(b) or VI(g), of this Agreement, as the case may be, by such Plaintiff, 524(g) Trust, Debtor or Non-Debtor Affiliate, as the case may be, will be inconsistent with generally accepted accounting principles.

t.    "Court" means the court in which the Action is pending or, if no longer pending, the Bankruptcy Court.

u.    "Cryovac Cash Amount" shall have the meaning set forth in paragraph II(a) of this Agreement.

v.    "Cryovac Remaining Amount" means an amount of cash and the number of shares of Sealed Air Common Stock equal to the excess, if any, of (i) the Cryovac Total Amount over (ii) the Cryovac 524(g) Trust Amount.

w.    "Cryovac Total Amount" means the sum of the Cryovac Cash Amount and the Fair Market Value of the Settlement Shares, provided, however, that this sum shall be subject to any setoff or reduction pursuant to paragraph II(j) of this Agreement.

x.    "Cryovac 524(g) Trust Amount" means an amount of cash and the number of shares of Sealed Air Common Stock equal in the aggregate to the lesser of (i) the Cryovac Total Amount and (ii) the 524(g) Trust Total Amount less the Grace Specialty Initial Contribution.

y.    "Cryovac 524(g) Trust" means any 524(g) Trust to which all or a portion of the Cryovac Cash Amount or the Settlement Shares will be directly transferred by Cryovac, Inc. pursuant to paragraph II(a) of this Agreement.

6

z.    "Cryovac Transaction" means the transfers of assets, the distributions of stock, the merger, and all predecessor, related, and ancillary transactions, agreements, transfers, and distributions relating to the transactions described in, referred to, or contemplated by Form S-4 Registration Statement filed by W.R. Grace & Co. with the Securities and Exchange Commission under the Securities Act of 1933, as amended, on or about February 13, 1998, SEC File No. 333-46281, including all attachments, exhibits, and schedules thereto.

aa.    "Damages" means any and all potential elements of recovery or relief, including, without limitation, those that are known, unknown, certain, uncertain, anticipated, or unanticipated, that have been, could have been, may be, or could be alleged or asserted now or in the future against the Released Parties, whether alleged, unalleged, asserted, or unasserted by Plaintiffs or by any other Person under any legal, regulatory, administrative, or equitable theory against the Released Parties, and includes, without limitation, equitable relief, declaratory relief, actual damages (whether for successor liability, fraudulent transfer, fraudulent conveyance, alter ego liability, agency liability, property damage, environmental liability, Tax liability, economic loss, loss of profits, medical expenses, medical monitoring, personal injury, loss of consortium, wrongful death, survivorship, or compensatory, proximate, consequential, general, incidental, or special damages, or any other liability, loss, or injury), statutory or treble, or multiple or penal or punitive or exemplary damages, attorneys' fees, interest, expenses, and costs of court.

bb.    "Debtors" means W.R. Grace & Co., W.R. Grace & Co.-Conn., and related entities that have filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, each of their estates, any trustee or examiner that may be appointed in any of the Debtors' cases under the Bankruptcy Code, and the reorganized Debtors and includes, without limitation, any new corporation or other entity to which the stock or the assets of any of the Debtors,

7

or any combination thereof, are transferred pursuant to the Chapter 11 Plan (other than a 524(g) Trust, or an unrelated third-party that has purchased assets from a Debtor pursuant to section 363 of the Bankruptcy Code).

cc.    "Debts" means any liability or obligation arising from, based on, or attributable to any Claim.

dd.    "Defined Action" means any action, including the filing of any Tax Return, a Protective Claim or other information with respect to Taxes, making any statement in any public or regulatory filing or press release or otherwise, relating to any obligation of a Person set forth or referred to in paragraph II(c)(ix), (x), or (xi), VI(b) or VI(g), of this Agreement, provided, however, that a Defined Action shall not include the making of a statement by any of the Plaintiffs or the Debtors in a court document filed in the Debtors' chapter 11 cases or in an oral statement to the court in the Debtors' chapter 11 cases if, with respect to such Defined Action, such Plaintiff or Debtor has used its best efforts to satisfy its obligations set forth or referred to in paragraphs II(c)(ix), (x), and (xi), VI(b) or VI(g), of this Agreement, and provided, further, that a Defined Action shall not include (x) the preparation and execution of a Grace Protective Claim by the Debtors pursuant to and in accordance with paragraph VI(h) of this Agreement and (y) the pursuit by the Debtors of a Grace Protective Claim pursuant to and in accordance with the third sentence of paragraph VI(i) of this Agreement.

ee.    "Effective Date" means the date that is ten business days after the Confirmation Order becomes a Final Order or, if later, the date by which transfers to the 524(g) Trusts must be made pursuant to the Chapter 11 Plan and Confirmation Order.

8

ff.     "Excluded Fees" means costs and expenses (including lawyer's fees, expert's fees, and accountant's fees) incurred by the Released Parties in defending the Action or any other proceedings or controversies arising out of or based upon Asbestos-Related Claims prior to the Effective Date.

gg.     "Execution Date" means November 10, 2003.

hh.     "Fair Market Value" means (i) with respect to each of the Settlement Shares the last sale price on the New York Stock Exchange of a share of Sealed Air Common Stock, regular way, one business day before the Effective Date, and (ii) with respect to other property, the value assigned to such property in the disclosure statement approved by a Final Order of the Bankruptcy Court pursuant to section 1125(b) of the Bankruptcy Code with respect to the Chapter 11 Plan.

ii.     "Final Determination" means any assessment or resolution of liability for any Tax for any taxable period with respect to a Tax Claim against such Person required to take, or prohibited from taking, a Defined Action pursuant to the provisions set forth or referred to in this Agreement (i) by a decision, decree or other order by a court of competent jurisdiction, which has become final and unappealable or (ii) by any other means (including a closing agreement or accepted offer in compromise under section 7121 or 7122 of the Internal Revenue Code) if Cryovac, Inc. has consented to such other means, which consent shall not be unreasonably withheld or delayed.

jj.     "Final Order" means an order or judgment, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or to seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed, or if filed, remains pending.

kk.     "Fresenius" means Fresenius Medical Care Holdings, Inc., its Affiliates, and any and all of their predecessors, successors, and assigns.

9

ll.     "Fresenius Release" means a duly executed release in the form annexed hereto as Exhibit 5, with appropriate insertions thereto.

mm.     "Fresenius Transaction" means the transfer of assets, the distributions of stock, and the merger and all predecessor related and ancillary transactions, agreements, transfers, and distributions relating to the transactions described in, referred to, or contemplated by Form S-4 Registration Statement filed by W.R. Grace & Co. with the Securities and Exchange Commission under the Securities Act of 1933, as amended, on or about August 2, 1996, SEC File No. 333-09497, including all attachments, exhibits and schedules thereto.

nn.     "Government Plaintiff" means the United States of America, acting for and on behalf of the United States Environmental Protection Agency.

oo.     "Government Release" means a release in the form annexed hereto as Exhibit 2, with appropriate insertions therein.

pp.     "Grace New York" means W.R. Grace & Co., a New York corporation (now known as Fresenius Medical Care Holdings, Inc.) (Taxpayer Identification Number 13-3461988).

qq.     "Grace New York Group" means that group of corporations, including, without limitation, W.R. Grace & Co.-Conn., Cryovac, Inc., and Sealed Air Corporation, that were members through (and including) September 28, 1996 or December 31, 1996, as applicable, of the affiliated group of corporations within the meaning of section 1504 of the Internal Revenue Code, and the Treasury Regulations, of which Grace New York was the common parent, and, with respect to Taxes of other jurisdictions (domestic or foreign), that group of corporations that included Grace New York or one or more members of the Grace New York Group with respect to any combined, consolidated, joint, or similar Tax Return under the laws of any jurisdiction (domestic or foreign).

rr.    "Grace Protective Claim" shall have the meaning set forth in paragraph VI(h) of this Agreement.

ss.    "Grace Specialty" means W.R. Grace & Co. (formerly known as Grace Specialty Chemicals, Inc.) (Taxpayer Identification Number 65-0773649), or its successor.

tt.    "Grace Specialty Initial Contribution" means, with respect to the 524(g) Trusts in the aggregate, the "voting shares of" and "rights" in (as those terms are used in section 524(g)(2)(B)(i)(III) of the Bankruptcy Code) Grace Specialty or one or more other Debtors to be received by such 524(g) Trusts pursuant to section 524(g)(2)(B)(i)(III)(aa), (bb), or (cc), as the case may be, which voting shares and rights, if exercised, would entitle such 524(g) Trusts to own the lesser of (i) 50.1% of the voting shares of such entity or entities or (ii) the percentage of voting shares of such entity or entities that are to be received by the 524(g) Trusts.

uu.    "Grace Taxes" means all Taxes imposed on or with respect to, or related or attributable to, the Grace New York Group or any member thereof for or attributable to any taxable period (or any portion thereof) ending on or before December 31, 1996.

vv.    "Indemnified Taxes" means all Taxes and other amounts that W.R. Grace & Co.-Conn. or any other Debtor is responsible for or required to pay, or is required to indemnify any Released Party for or in respect thereto, pursuant to the 1998 Tax Sharing Agreement and including, without limitation, all Grace Taxes.

ww.    "Internal Revenue Code" means the Internal Revenue Code of 1986.

xx.    "IRS" means the Internal Revenue Service.

yy.    "Material Draft" means each of (i) the first draft of a Trust Document circulated to any Person who is not in an attorney-client relationship with the draftsman, (ii) the first draft of a Trust Document circulated following the draft of such Trust Document that Cryovac, Inc. or its

11

representatives provided comments with respect thereto, pursuant to and in accordance with the last sentence of paragraph VI(a) of this Agreement (such comments, the "Cryovac Language"), (iii) the first draft of a Trust Document that contains the Cryovac Language (or any variation thereof), (iv) any draft of a Trust Document which contains changes to the Cryovac Language (as the same may be amended or modified), or language inconsistent with the Cryovac Language or paragraphs II(c)(ix), (x), and (xi) of this Agreement, (v) the draft of a Trust Document that the Plaintiffs or the Debtors, as the case may be, reasonably believe is the penultimate draft of such document and (vi) the final draft of a Trust Document.

zz.    "Non-Debtor Affiliates" means the Affiliates of the Debtors that are not debtors or debtors in possession under the Bankruptcy Code.

aaa.    "Notice" means a "Notice" (including any successor name to a Notice) published in the Internal Revenue Bulletin (or successor publication).

bbb.    "Paragraph II(a) Proviso" shall have the meaning set forth in paragraph II(a) of this Agreement.

ccc.    "Paragraph VI(f) Issue" shall have the meaning set forth in paragraph VI(f) of this Agreement.

ddd.    "Person" means any individual, corporation, company, partnership, limited liability company, firm, association, joint venture, joint stock company, trust, estate, business trust, unincorporated organization, any other entity, and any 'governmental unit' (as that term is defined in section 101(27) of the Bankruptcy Code).

eee.    "Plaintiffs" means the Official Committee of Asbestos Personal Injury Claimants and the Official Committee of Asbestos Property Damage Claimants of W.R. Grace & Co., suing in behalf of the Chapter 11 Bankruptcy Estate of W.R. Grace & Co.

12

fff.    "Preliminary Injunction" means the preliminary injunction issued by the Bankruptcy Court on May 3, 2001, as modified on January 22, 2002, in W.R. Grace & Co. v. Chakarian, Adversary No. A-01-771 (Bankr. D. Del.), staying all actions arising from alleged exposure to asbestos indirectly or directly allegedly caused by Debtors or alleging fraudulent transfer or fraudulent conveyance claims that were filed or pending against Sealed Air Corporation, Cryovac, Inc., or certain of their Affiliates and staying all such future actions upon filing and service against Sealed Air Corporation, Cryovac, Inc., or certain of their Affiliates.

ggg.    "Protective Claim" means  a Form 1120X (Amended U.S. Corporation Income Tax Return) or similar state or local tax form, which is prominently and clearly labeled on every page thereof with the words "Protective Claim Only" and which clearly and prominently states that the Person filing such form asserts its right to the claimed Tax benefits conditionally or contingently, and only in the event that such Tax benefits are denied in full to Cryovac, Inc. (or the consolidated, combined, unitary or similar group of which Sealed Air Corporation is the common parent) by a decision, decree or other order by a court of competent jurisdiction, which has become final and unappealable, or by a closing agreement or accepted offer in compromise under section 7121 or 7122 of the Internal Revenue Code entered into by Sealed Air Corporation and the Internal Revenue Service.

hhh.    "Qualified Settlement Fund" shall have the meaning set forth in paragraph II(c)(ix) of this Agreement.

iii.    "Release" means a release, in the form annexed hereto as Exhibit 3, with appropriate insertions therein.

jjj.    "Released Parties" means Sealed Air Corporation, Cryovac, Inc., and all of their parent corporations, subsidiary corporations, joint venturers, Affiliates, and sister corporations, and

any and all of their past, present, and future agents, servants, officers, directors, employees, successors, assigns, heirs, executors, administrators, legal representatives, beneficiaries, insurers (but solely to the extent of coverage procured by Sealed Air Corporation (after March 31, 1998) or Cryovac, Inc. (after such date) of any liabilities of Sealed Air Corporation or Cryovac, Inc. for Asbestos-Related Claims), or any of them, including any Person acting on behalf of or at the direction of any of them, but specifically excluding (i) the Debtors, (ii) all Non-Debtor Affiliates, (iii) Fresenius (to the extent of any and all Claims, Damages, or Debts arising out of the Fresenius Transaction), and (iv) any and all insurers of the Debtors or the Non-Debtor Affiliates to the extent that they have provided coverage for Asbestos-Related Claims now or hereafter asserted or which could have been asserted at any time against the Debtors or the Non-Debtor Affiliates.

kkk.    "Relevant Tax Year" shall have the meaning set forth in paragraph VI(h) of this Agreement.

lll.    "Revenue Procedure" means a "Revenue Procedure" (including any successor name to a Revenue Procedure) published in the Internal Revenue Bulletin (or successor publication).

mmm. "Revenue Ruling" means a "Revenue Ruling" (including any successor name to a Revenue Ruling) published in the Internal Revenue Bulletin (or successor publication).

nnn.    "Sealed Air Common Stock" means the voting common stock, par value $0.10 per share, of Sealed Air Corporation.

ooo.    "Sealed Air Opinion" means, with respect to any Contrary Opinion obtained by any Plaintiff, Cryovac 524(g) Trust, Debtor, or Non-Debtor Affiliate, as the case may be, with respect to a Defined Action (i) if such Contrary Opinion is with respect to a Tax issue, a written opinion addressed to such Plaintiff, Cryovac 524(g) Trust, Debtor or Non-Debtor Affiliate, as the case may be, from a nationally recognized law firm experienced in Tax matters that states that there is

14

"substantial authority", as defined under section 6662 of the Internal Revenue Code (or successor provision thereof), for the taking of, or the failure to take, such Defined Action or, (ii) if such Contrary Opinion is with respect to an accounting issue, a written opinion addressed to such Plaintiff, Cryovac 524(g) Trust, Debtor or Non-Debtor Affiliate, as the case may be, from nationally recognized accounting firm that states that the taking, or the failure to take, such Defined Action will not be inconsistent with generally accepted accounting principles.

ppp. "Settlement Shares" shall have the meaning set forth in paragraph II(a) of this Agreement.

qqq. "SOL" shall have the meaning set forth in paragraph VI(h) of this Agreement.

rrr. "Successor Claims" shall have the meaning set forth in the definition of Claims.

sss. "Tax" or "Taxes" means all taxes, customs, duties, levies, fees, tariffs, imports, deficiencies, or other charges or assessments of any kind whatsoever, including all net income, gross income, capital gains, gross receipt, property, franchise, sales, use, excise, withholding, payroll, employment, social security, worker's compensation, unemployment, occupation, severance, capital stock, ad valorem, value added, transfer, gains, profits, net worth, asset, transaction, business consumption or other taxes, and any interest, penalties, fines, additions to tax or additional amounts with respect thereto, imposed by any governmental authority (whether domestic or foreign).

ttt. "Tax Benefit" shall have the meaning set forth in paragraph VI(h) of this Agreement.

uuu. "Tax Benefit Accountant" shall have the meaning set forth in paragraph VI(j) of this Agreement.

vvv. "Tax Benefit Dispute Notice" shall have the meaning set forth in paragraph VI(j) of this Agreement.

www. "Tax Benefit Report" shall have the meaning set forth in paragraph VI(j) of this Agreement.

xxx. "Tax Benefit Start Date" shall have the meaning set forth in paragraph VI(j)(ii) of this Agreement.

yyy. "Tax Benefit Statement" shall have the meaning set forth in paragraph VI(j) of this Agreement.

zzz. "Tax Claim" shall have the meaning set forth in paragraph VI(c) of this Agreement.

aaaa. "Tax Return" means all returns, reports and information (including elections, declarations, disclosures, schedules, estimates and information returns) required to be supplied to a Tax Authority relating to Taxes.

bbbb. "Transfer" shall have the meaning set forth in paragraph VI(h) of this Agreement.

cccc. "Transferor" shall have the meaning set forth in paragraph II(c)(ix) of this Agreement.

dddd. "Treasury Regulations" means the treasury regulations (including temporary regulations) promulgated pursuant to the Internal Revenue Code.

eeee. "Trust Document" means, for each trust to which all or any portion of the Cryovac Cash Amount or the Settlement Shares is directly transferred by Cryovac, Inc. pursuant to paragraph II(a) of this Agreement, each of the plan of reorganization of the Debtors, and any document pursuant to which such trust is organized or created (and any amendments thereto).

ffff. "524(g) Trust" means any trust established pursuant to 11 U.S.C. § 524(g), as provided in the Chapter 11 Plan and the Confirmation Order.

gggg. "524(g) Trust Total Amount" means the sum of the aggregate amount of cash and the Fair Market Value of all property to be contributed to all of the 524(g) Trusts, as provided in the Chapter 11 Plan and the Confirmation Order.

16

hhhh.  "1998 Tax Sharing Agreement" means the Tax Sharing Agreement by and among W.R. Grace & Co., W.R. Grace & Co.-Conn., and Sealed Air Corporation, dated as of March 30, 1998.

## II.    Settlement Agreement and Release of All Claims

a.    On the Effective Date, Cryovac, Inc. shall, subject to paragraph II(j) of this Agreement, transfer in the aggregate (i) the sum of $512.5 million in cash, plus interest thereon from December 21, 2002 until the Effective Date, at a rate of 5.5% per annum compounded annually (the "Cryovac Cash Amount"), and (ii) nine million shares of Sealed Air Common Stock, as adjusted for Anti-Dilution (the "Settlement Shares"). Such transfer shall be made as directed in the Confirmation Order; provided, however, that each of the Plaintiffs shall use its best efforts to require the Chapter 11 Plan (whether confirmed under section 1129(a) or (b) of the Bankruptcy Code) to provide that the Cryovac Cash Amount and the Settlement Shares shall be transferred by Cryovac, Inc. directly to one or more of the 524(g) Trusts for Asbestos Claims, unless the 524(g) Trust Total Amount reduced by the Grace Specialty Initial Contribution is less than the Cryovac Total Amount, in which case, the Chapter 11 Plan shall provide that Cryovac, Inc. shall transfer (x) in the aggregate directly to one or more of the 524(g) Trusts for Asbestos Claims, an amount of cash and shares of Sealed Air Common Stock equal, in the aggregate, to the Cryovac 524(g) Trust Amount, in the same proportion that the Cryovac Cash Amount and the Fair Market Value of the Settlement Shares, respectively, bears to the sum of both, and (y) directly to Grace Specialty, an amount of cash and shares of Sealed Air Common Stock equal, in the aggregate, to the Cryovac Remaining Amount, in such same proportions (this proviso, the "Paragraph II(a) Proviso"). The provisions of paragraph II(b) of this Agreement shall apply first with respect to the Plaintiffs' obligations set forth in the Paragraph II(a) Proviso.  If the Chapter 11 Plan cannot be confirmed in accordance with both the Paragraph II(a)

Proviso and paragraph II(b) of this Agreement, then each of the Plaintiffs shall use its best efforts to require that the Chapter 11 Plan (whether confirmed under section 1129(a) or (b) of the Bankruptcy Code) (x) maximize the initial funding of one or more of the 524(g) Trusts from the Cryovac Cash Amount and the Settlement Shares, and provide for the transfer of such funding by Cryovac Inc. directly to such 524(g) Trusts for Asbestos Claims and (y) provide that such amounts not transferred by Cryovac Inc. directly to such 524(g) Trusts will be transferred by Cryovac Inc. directly to Grace Specialty, and paragraph II(b) of this Agreement shall apply anew to these obligations. If the transfers made pursuant to this paragraph II(a) are directed to more than one 524(g) Trust, then the portion of the entire amount to be transferred to such 524(g) Trusts shall be allocated among each of such 524(g) Trusts pursuant to and in accordance with the Confirmation Order. Under no circumstances shall any fractional shares of Sealed Air Common Stock be transferred pursuant to this Agreement or any Person be the transferee of less than one thousand shares of Sealed Air Common Stock pursuant to this Agreement, provided, however, that in no event shall the Cryovac 524(g) Trusts incur any costs or expenses associated with such one thousand share limitation, nor shall such limitation affect the apportionment, if any, of the Settlement Shares and the Cryovac Cash Amount that may be allocated between the Cryovac 524(g) Trusts, on the one hand, and Grace Specialty, on the other hand. Sealed Air Corporation irrevocably, absolutely and unconditionally guarantees the performance of the obligations of Cryovac, Inc. set forth in this paragraph II(a) and the right of the Plaintiffs to enforce this guaranty shall not require the Plaintiffs first to proceed against Cryovac, Inc.

　　　　b.　　　In furtherance of the Plaintiffs' obligations pursuant to paragraph II(a) of this Agreement, each of the Plaintiffs shall: (i) support the approval of a disclosure statement(s) that relates to a Chapter 11 Plan that satisfies the provisions set forth in paragraph II(a) of this Agreement

18

(such a Chapter 11 Plan, the "Conforming Plan"), as long as the Conforming Plan meets the requirements for confirmation set forth in sections 524 and 1129 of the Bankruptcy Code, regardless of whether confirmation may be obtained under section 1129(a) or (b) of the Bankruptcy Code; (ii) recommend to the creditors and parties in interest the interests of which are represented by it to vote in favor of the confirmation of the Conforming Plan; (iii) oppose the approval of any disclosure statement that relates to a non-Conforming Plan; (iv) recommend to the creditors and parties in interest the interests of which are represented by it to vote against the confirmation of a non-Conforming Plan; (v) not take any action, of whatever kind and nature, to oppose, or designed to prevent confirmation of, the Conforming Plan; and (vi) take any action, of whatever kind and nature, that is necessary, required or appropriate in order to confirm the Conforming Plan, provided, however, that the Plaintiffs shall not be required to support or recommend a Conforming Plan which, in the exercise of Plaintiffs' respective fiduciary obligations, is determined to be unacceptable (other than as to provisions required by the terms of this Agreement), and provided, further, that the Plaintiffs shall not be bound by the provisions of paragraphs II(b)(i) through (vi) of this Agreement if (x) the Bankruptcy Court determines in a Final Order, on a motion brought by a party in interest, and on notice to Sealed Air Corporation and Cryovac, Inc., seeking an order excusing their performance under the provisions contained in paragraphs II(b)(i) through (vi) of this Agreement, that the Conforming Plan cannot meet the confirmation requirements set forth in sections 524 and 1129 of the Bankruptcy Code, or (y) the Bankruptcy Court refuses to confirm the Conforming Plan, except if such refusal relates to issues unrelated to the requirements contained in paragraph II(a) of this Agreement.  The provisions of this paragraph II(b) shall apply as set forth in paragraph II(a) of this Agreement.

c.       As a condition to the obligations of Cryovac, Inc. set forth in paragraph II(a) of this

Agreement, each of the Confirmation Order and the Chapter 11 Plan shall expressly provide that:

(i) each of the Plaintiffs and the Debtors shall execute and deliver the Release, and the Government Plaintiff shall execute and deliver the Government Release;

(ii) in consideration of the transfers made pursuant to paragraph II(a) of this Agreement, each of the Non-Debtor Affiliates irrevocably releases, acquits, and forever discharges the Released Parties from any and all Asbestos-Related Claims, and any and all Claims, Debts, and Damages on the basis of, arising from, or attributable to (in whole or in part, directly or indirectly) the Fresenius Transaction, that have accrued or been asserted or that hereafter might accrue or be asserted against the Released Parties, and that each Non-Debtor Affiliate shall not institute, participate in, maintain, maintain a right to or assert against the Released Parties, either directly or indirectly, on its own behalf, derivatively, or on behalf of any other Person any and all Asbestos-Related Claims, and any and all Claims, Debts, and Damages on the basis of, arising from, or attributable to (in whole or in part, directly or indirectly) the Fresenius Transaction;

(iii) the Action shall be dismissed with prejudice;

(iv) each of the Release and the Government Release is approved;

(v) the Plaintiffs shall deliver the Fresenius Release;

(vi) the Released Parties shall receive the full benefit of an injunction under sections 524(g) and 105(a) of the Bankruptcy Code, which injunction shall be in form and substance reasonably acceptable to Sealed Air Corporation and Cryovac, Inc. and which injunction shall include, without limitation, provisions enjoining any and all Persons from taking any and all legal or other actions (including, without limitation, the continued prosecution of pending 'Actions' or the commencement of future 'Actions' as such term is defined in the Preliminary Injunction) or making any demand (as such term is defined in section 524(g)(5) of the Bankruptcy Code) for the purpose of, directly or indirectly, claiming, collecting, recovering, or receiving any payment, recovery or any other relief whatsoever from any of the Released Parties with respect to any and all Asbestos-Related Claims;

(vii) (A) the Debtors shall, jointly and severally, at their sole expense, indemnify, defend, and hold-harmless the Released Parties from and against (1) any and all Asbestos-Related Claims and all Indemnified Taxes, (2) any and all losses, costs, and expenses incurred as a result of any breach of any of the Debtors' or Non-Debtor Affiliates' obligations, covenants, and agreements set forth or referred to in this Agreement, including, without limitation, any such obligation, covenant, or agreement of any Debtor or Non-Debtor Affiliate set forth in the Chapter 11 Plan or Confirmation Order, (3) if any Non-Debtor Affiliate has not executed and delivered a Release, any and all Asbestos-Related Claims based on, arising out of, or attributable to, directly or indirectly, in whole or in part, such Non-Debtor Affiliate and (4)

any and all attorneys' fees or costs and expenses attributable to any Indemnity Claim, provided, however, that in each case such indemnification shall not apply to Excluded Fees (such indemnity obligations, collectively, the "Debtors' Indemnity Obligation"; any and all Claims, Debts, or Damages that could be asserted by any of the Released Parties under Debtors' Indemnity Obligation, the "Indemnity Claims"), and provided, further, that nothing in this Agreement shall adversely affect any rights of any Person to file and pursue, or object to, a proof of claim for Excluded Fees in the Debtors' chapter 11 cases, (B) each Debtor shall execute and deliver an indemnity agreement in favor of the Released Parties in the form annexed hereto as Exhibit 6 (the "Indemnification Agreement"), (C) the Debtors' Indemnity Obligation (and the obligations, covenants, and agreements of each of the Debtors and Non-Debtor Affiliates set forth or referred to in this Agreement, including, without limitation, any such obligation, covenant, or agreement of any Debtor or Non-Debtor Affiliate set forth in the Chapter 11 Plan or Confirmation Order) shall not be discharged, expunged, estimated, or otherwise adversely affected in the Debtors' bankruptcy cases or by the confirmation of the Chapter 11 Plan, and (D) the Debtors' Indemnity Obligation (and  the obligations, covenants, and agreements of each of the Debtors and Non-Debtor Affiliates set forth or referred to in this Agreement, including, without limitation, any such obligation, covenant, or agreement of any Debtor or Non-Debtor Affiliate set forth in the Chapter 11 Plan or Confirmation Order) shall continue unaffected as a post-confirmation obligation of each of the reorganized Debtors;

(viii) there shall be established under state law the 524(g) Trusts, each of which shall be subject to the continuing jurisdiction of the Bankruptcy Court;

(ix) if one or more Cryovac 524(g) Trusts is established, then each Cryovac 524(g) Trust shall be established to qualify as a "qualified settlement fund" for federal income tax purposes within the meaning of Treasury Regulations section 1.468B (each, a "Qualified Settlement Fund"), and, unless otherwise required by a Final Determination, the Plaintiffs and the Cryovac 524(g) Trusts (A) shall file all Tax Returns required to be filed by such Person, if any, consistent with the provisions of this paragraph II(c)(ix) and shall take all other Defined Actions that are reasonably requested by Sealed Air Corporation and consistent with the provisions of this paragraph II(c)(ix) and (B) shall be prohibited from taking any Defined Action that may result in the disqualification of any Cryovac 524(g) Trust as a Qualified Settlement Fund or be inconsistent with Cryovac, Inc. being treated as a "transferor" (as defined under Treasury Regulations section 1.468B-1(d)) ("Transferor") to each Cryovac 524(g) Trust of the cash and Settlement Shares transferred by Cryovac, Inc. directly to such Cryovac 524(g) Trust or each Cryovac 524(g) Trust constituting a Qualified Settlement Fund, provided, however, that a Person shall not be required to take, or be prohibited from taking, as the case may be, a Defined Action as required pursuant to this paragraph II(c)(ix) if each of the following four requirements has been previously satisfied (I) such Person has fully performed all of its obligations set forth in paragraph VI(f) of this Agreement, (II) such Person has received a Contrary Opinion with respect to such Defined Action required or prohibited pursuant to this paragraph II(c)(ix), (III) such Person has provided a copy of such Contrary Opinion to Sealed Air Corporation, and (IV) within forty-

five days of the receipt by Sealed Air Corporation of such Contrary Opinion, Sealed Air Corporation has not provided such Person with a Sealed Air Opinion;

(x) if one or more Cryovac 524(g) Trusts is established, then unless otherwise required by a Final Determination, the Cryovac 524(g) Trusts shall treat for all Tax purposes any and all payments by Cryovac, Inc. directly to the Cryovac 524(g) Trusts pursuant to paragraph II(a) of this Agreement as a direct payment by Cryovac, Inc. to the Cryovac 524(g) Trusts for Asbestos Claims that constitutes an ordinary and necessary expense of Cryovac, Inc., and the Plaintiffs and the Cryovac 524(g) Trusts (A) shall be prohibited from taking any Defined Action that is inconsistent with the foregoing provisions of this paragraph II(c)(x), and (B) shall take all Defined Actions that are reasonably requested by Sealed Air Corporation and consistent with the provisions of this paragraph II(c)(x); provided, however, that a Person shall not be required to take, or be prohibited from taking, as the case may be, a Defined Action as required pursuant to this paragraph II(c)(x) if each of the following four requirements has been previously satisfied (I) such Person has fully performed all of its obligations set forth in paragraph VI(f) of this Agreement, (II) such Person has received a Contrary Opinion with respect to such Defined Action required or prohibited pursuant to this paragraph II(c)(x), (III) such Person has provided a copy of such Contrary Opinion to Sealed Air Corporation, and (IV) within forty-five days of the receipt by Sealed Air Corporation of such Contrary Opinion, Sealed Air Corporation has not provided such Person with a Sealed Air Opinion;

(xi) if one or more Cryovac 524(g) Trusts is established, then unless otherwise required by a Final Determination, the Cryovac 524(g) Trusts shall treat for all Tax purposes all payments, if any, by Cryovac, Inc. to Grace Specialty pursuant to paragraph II(a) of this Agreement as ordinary income of Grace Specialty, and the Plaintiffs and the Cryovac 524(g) Trusts (A) shall file all Tax Returns required to be filed by such Person, if any, consistent with the provisions of this paragraph II(c)(xi) and shall take all other Defined Actions that are reasonably requested by Sealed Air Corporation and consistent with the provisions of this paragraph II(c)(xi) and (B) shall be prohibited from taking any Defined Action that is inconsistent with the foregoing provisions of this paragraph II(c)(xi) or that is inconsistent with any such payment being treated as an ordinary and necessary expense incurred by Cryovac, Inc.; provided, however, that a Person shall not be required to take, or be prohibited from taking, as the case may be, a Defined Action as required pursuant to this paragraph II(c)(xi) if each of the following four requirements has been previously satisfied (I) such Person has fully performed all of its obligations set forth in paragraph VI(f) of this Agreement, (II) such Person has received a Contrary Opinion with respect to such Defined Action required or prohibited pursuant to this paragraph II(c)(xi), (III) such Person has provided a copy of such Contrary Opinion to Sealed Air Corporation, and (IV) within forty-five days of the receipt by Sealed Air Corporation of such Contrary Opinion, Sealed Air Corporation has not provided such Person with a Sealed Air Opinion; and

(xii) the 1998 Tax Sharing Agreement is an assumed agreement of each of the Debtors (including, without limitation, Grace Specialty and W.R. Grace & Co.-Conn.) pursuant to section 365 of the Bankruptcy Code, and nothing contained in or contemplated by this

22

Agreement, the Chapter 11 Plan, or the Confirmation Order shall adversely affect the rights of Sealed Air Corporation or any of its Affiliates under the 1998 Tax Sharing Agreement.

d.      Simultaneously with and in exchange for the transfers contemplated by paragraph II(a) of this Agreement, the Plaintiffs shall deliver to Cryovac, Inc. and Sealed Air Corporation: (i) the Release duly executed by each of the Plaintiffs and the Debtors; (ii) a copy of the Chapter 11 Plan; (iii) a copy of the Confirmation Order; (iv) a duly executed Stipulation of Dismissal With Prejudice of the Action, in the form annexed hereto as Exhibit 4, denying any other recovery against the Released Parties; and (v) the Registration Rights Agreement, in the form annexed hereto as Exhibit 1, with appropriate insertions therein, duly executed by the Initial Holders.

e.      The Released Parties shall not seek indemnity, contribution, or reimbursement for any payments made under paragraph II(a) of this Agreement from any source, including, without limitation, the insurers of the Debtors (but solely to the extent of coverage procured by the Debtors or any of its predecessors).

f.      The transfers made pursuant to paragraph II(a) of this Agreement shall be made in full compromise and settlement of any and all Asbestos-Related Claims against any and all of the Released Parties.

g.      Any order of the Court approving this Agreement shall provide that the Preliminary Injunction shall remain in full force and effect through and including the Effective Date.

h.      Neither this Agreement nor any of the transactions contemplated hereby is, or shall be construed as, an admission of liability, fault or wrongdoing by the Released Parties, who have denied and continue to deny any liability, fault, or wrongdoing, but, instead, is a compromise settlement of disputed claims, made in order to avoid the further substantial expense, burden, and

23

inconvenience of protracted litigation and appeal that may occur in further proceedings relating to these actions or any future actions, by which the Released Parties have forever bought their peace.

i.      The Plaintiffs do hereby and the Confirmation Order shall expressly provide that the Debtors, the Plaintiffs, and the Non-Debtor Affiliates fully understand and agree that Cryovac, Inc. and Sealed Air Corporation have entered into this Agreement in order to settle, release, extinguish, and terminate fully, finally, and forever any and all further controversy respecting any and all Asbestos-Related Claims against any and all of the Released Parties. The Plaintiffs do hereby and the Confirmation Order shall expressly provide that the Debtors, the Plaintiffs, and the Non-Debtor Affiliates acknowledge and agree that this provision is an essential and material term of this Agreement and the compromise settlement leading to this Agreement, and that, without such provision, neither Cryovac, Inc. nor Sealed Air Corporation would have executed this Agreement and the compromise settlement would not have been accomplished.

j.      Notwithstanding anything in this Agreement to the contrary, Cryovac, Inc., and Sealed Air Corporation as guarantor, shall have a right of setoff or reduction against, the payments and transfers required by paragraph II(a) of this Agreement or otherwise for, and upon the payment by any of the Released Parties of, the amount of any Indemnified Taxes or any obligation of any of the Debtors or the 524(g) Trusts set forth or referred to in this Agreement, including, without limitation, any Indemnity Obligation required to be provided in the Confirmation Order and Chapter 11 Plan that any of the Debtors has failed to pay to the Released Parties.

k.      Each of Sealed Air Corporation, Cryovac, Inc., and the Plaintiffs (upon court approval) represents and warrants, as to itself, that this Agreement has been duly authorized, and executed and delivered, constitutes the valid and binding obligation of such party, enforceable in accordance with its terms, except as the enforcement thereof may be limited by bankruptcy,

24

insolvency (including, without limitation, all laws relating to fraudulent transfers), reorganization, moratorium or other similar laws relating to or affecting enforcement of creditors' rights generally, or by general principles of equity (regardless of whether enforcement is considered in a proceeding in equity).

## III.    <u>Anti-Dilution</u>

a.    In the event Sealed Air Corporation should at any time after the date of this Agreement but prior to the Effective Date fix a record date for (i) the effectuation of a split or subdivision of the outstanding shares of Sealed Air Common Stock, or (ii) the payment of a dividend or making of a distribution on Sealed Air Common Stock in additional shares of Sealed Air Common Stock, then as of such record date, the number of Settlement Shares to be transferred by Cryovac, Inc. on the Effective Date shall be increased in proportion to the increase in the aggregate number of shares of Sealed Air Common Stock outstanding immediately following such action.

b.    If the number of shares of Sealed Air Common Stock outstanding after the date of this Agreement but prior to the Effective Date is decreased by a combination of the outstanding shares of Sealed Air Common Stock or a reverse stock split, then following the record date for such combination or reverse stock split, the number of Settlement Shares transferable by Cryovac, Inc. upon the Effective Date shall be decreased in proportion to the decrease in the aggregate number of shares of Sealed Air Common Stock outstanding immediately following such action.

c.    In the event Sealed Air Corporation, after the date of this Agreement but prior to the Effective Date, declares a distribution payable to all holders of Sealed Air Common Stock in shares of capital stock of Sealed Air Corporation or its subsidiaries (other than Sealed Air Common Stock), or evidences of its indebtedness or other assets (excluding quarterly cash dividends) or options or rights not referred to in paragraph III(a) above, then in each such case, on the Effective Date, holders

25

of Settlement Shares shall be entitled to any such distribution as if the Effective Date had occurred immediately prior to the record date fixed for the determination of the holders of Sealed Air Common Stock entitled to such distribution.

   d.  In case of any reclassification of the Sealed Air Common Stock, any consolidation of Sealed Air Corporation with another entity, or merger of another entity into Sealed Air Corporation (other than a merger that does not result in any reclassification, conversion, exchange, or cancellation of outstanding shares of Sealed Air Common Stock), or Sealed Air Corporation into another entity, any sale or transfer of all or substantially all of the assets of Sealed Air Corporation or any compulsory share exchange pursuant to such share exchange, the Sealed Air Common Stock is converted into other securities, cash, or property, then lawful provision shall be made as part of the terms of such transaction, whereby on the Effective Date, holders of Settlement Shares shall be entitled to receive from Cryovac, Inc. the kind and amount of securities, cash, and other property receivable upon the reclassification, consolidation, merger, sale, transfer, or share exchange as if the Effective Date had occurred immediately prior to the reclassification, consolidation, merger, sale, transfer or exchange. The provisions of this paragraph III(d) shall similarly apply to successive reclassifications, consolidations, mergers, sales, transfers, or share exchanges.

## IV.   <u>Investment Representations</u>

   a.  Each of the Plaintiffs, and the Confirmation Order shall expressly provide that each of the Debtors, acknowledges and agrees with Sealed Air Corporation that the Settlement Shares have not been and, upon delivery as provided in (ii) of the first sentence of paragraph II(a) of this Agreement, will not be registered under the Securities Act of 1933, as amended (the "Securities Act"), and that the certificates for the Settlement Shares will bear a legend to that effect. Each of the Plaintiffs, and the Confirmation Order shall expressly provide that each of the Debtors, also

understands that any transfer of Settlement Shares to the 524(g) Trusts or Grace Specialty is being made pursuant to an exemption from registration contained in the Securities Act, based in part upon their respective representations contained in this Agreement.

b.     The Confirmation Order shall expressly provide that, upon any transfer of the Settlement Shares to the 524(g) Trusts or Grace Specialty, the trustee(s) of each such 524(g) Trust or Grace Specialty, as applicable, shall represent and warrant, and agree on behalf of the 524(g) Trust or Grace Specialty with Sealed Air Corporation, that: (i) the 524(g) Trust or Grace Specialty, as applicable, is acquiring the Settlement Shares for its own account for investment and not with a view toward distribution in a manner which would violate the Securities Act; and (ii) the 524(g) Trust or Grace Specialty, as applicable, and its respective transferees will comply with all filing and other reporting obligations under all applicable laws which shall be applicable to such 524(g) Trust or Grace Specialty with respect to the Settlement Shares.

c.     Upon delivery of the Settlement Shares, Cryovac, Inc. and Sealed Air Corporation shall represent and warrant to the Plaintiffs and the Debtors (and deliver a certification to that effect upon the transfer of the Settlement Shares to the 524(g) Trusts or Grace Specialty) that all adjustments to the Settlement Shares have been made in compliance with the Anti-Dilution provisions of this Agreement.

## V.     Covenant Not to Sue and Tolling

a.     Subject to paragraph V(c) of this Agreement, unless ordered otherwise by this Court, none of the Plaintiffs, and any order of the Court approving this Agreement shall provide that none of the Debtors, shall sue or prosecute, institute or cooperate in the institution, commencement, filing, or prosecution of any suit, administrative proceeding, demand, claim or cause of action, whether asserted individually or derivatively against any of the Released Parties for any Asbestos-Related

Claims, pending confirmation of a Chapter 11 Plan consistent with the terms of this Agreement. The Final Order approving this Agreement shall provide that the Debtors are bound by the terms of this paragraph.

b.      (i) In the event that the payment and transfer obligations of Cryovac, Inc. set forth in paragraph II(a) of this Agreement are not satisfied, the Plaintiffs (but not Sealed Air Corporation or Cryovac, Inc.) shall have the option jointly to terminate this Agreement by providing written notice thereof to Sealed Air Corporation and Cryovac, Inc.  (ii) Upon the occurrence of a Bankruptcy Termination Event, before the payment and transfer obligations of Cryovac, Inc. set forth in paragraph II(a) of this Agreement have been completely performed, the Plaintiffs may seek relief from the automatic stay to reinstitute the Action in the Court and neither Cryovac, Inc. nor Sealed Air Corporation shall (x) object to such relief being granted, or (y) seek to enforce the terms of this Agreement against the Debtors' estate.  (iii) In the event the Plaintiffs' obligations set forth in paragraph II(a) or the provisions of paragraph II(b), (c), or (d), or VI, of this Agreement are not satisfied, Sealed Air Corporation and Cryovac, Inc. shall have the option jointly to terminate this Agreement by providing written notice thereof to the Plaintiffs. (iv) Any termination right exercised pursuant to this Agreement, other than upon the occurrence of a Bankruptcy Termination Event, shall become effective on the date (the "Termination Date") ten days following receipt of a notice of intention to terminate by the party exercising such termination right to the other parties to this Agreement, which notice shall specify the reasons for termination; provided, however, that such notice provided by the Plaintiffs shall not become effective if the payment and transfer obligations of Cryovac, Inc. set forth in  paragraph II(a) of this Agreement shall have been satisfied prior to the Termination Date.

c.      If this Agreement is terminated by any party, then within 120 days from the Termination Date a proper representative of the Debtors' estate may seek to have the Court reinstate the Action on the active docket, it being expressly agreed that the Court is the appropriate venue in all instances, including, without limitation, upon the occurrence of a Bankruptcy Termination Event. For purposes of statutes of limitation, statutes of repose, and any procedural bars to the prosecution of claims, as long as the Court reinstates the Action, all claims, counterclaims, cross-claims and claims for contribution or indemnity will be deemed to have been tolled during the time period between the date of this Agreement and the Termination Date.

## VI.    **Tax Matters**

a.      Each of the Plaintiffs shall use its best efforts to, and shall use its best efforts to cause the Confirmation Order and Chapter 11 Plan expressly to provide that each of the Debtors shall use its best efforts to, (i) cause each of the trusts to which all or any portion of the Cryovac Cash Amount or the Settlement Shares is directly transferred by Cryovac, Inc. pursuant to paragraph II(a) of this Agreement to qualify, and to maintain its status, as a Qualified Settlement Fund, and (ii) structure the transactions contemplated by this Agreement to achieve favorable tax treatment to Cryovac, Inc. and its Affiliates, as set forth in paragraphs II(a) and (b) of this Agreement, provided, however, that nothing herein shall in any way be construed as a representation, warranty, or covenant concerning the treatment for federal income tax purposes of any transfer by Cryovac, Inc. pursuant to paragraph II(a) of this Agreement. Without limiting the foregoing, each of the Plaintiffs shall use its best efforts to, and shall use its best efforts to cause the Confirmation Order and Chapter 11 Plan expressly to provide that each of the Debtors shall use its best efforts to, cause the constitutive document(s) of each of the trusts to which all or any portion of the Cryovac Cash Amount or the Settlement Shares is directly transferred pursuant to paragraph II(a) of this Agreement to contain

provisions, reasonably satisfactory to Cryovac, Inc., qualifying and maintaining its status as a Qualified Settlement Fund, and providing that Cryovac, Inc. or its designee shall be a Transferor to each such trust. Each of the Plaintiffs shall, and shall use its best efforts to cause the Confirmation Order and Chapter 11 Plan expressly to provide that each of the Debtors shall (i) promptly provide to Cryovac, Inc. all Material Drafts of each Trust Document (but excluding or redacting the claims resolution procedures), provided, however, that any Plaintiff or Debtor shall not be required to provide any draft of a Trust Document that such Plaintiff or Debtor, as the case may be, does not have in its possession, custody, or control, and provided, further, that Cryovac, Inc. shall keep any such Material Draft confidential and shall disclose any such Material Draft only to Sealed Air Corporation, and officers, employees, and advisors of Cryovac, Inc., Sealed Air Corporation, or its Affiliates, and only after such Person agrees to keep such Material Draft confidential, and (ii) incorporate promptly (if such party is the party drafting such Trust Document), or if otherwise, urge the party drafting such Trust Document promptly to incorporate, into any such document each provision with respect to the subject matter set forth or referred to in paragraphs II(c)(ix), (x), and (xi), and VI(g), and clauses (i)(A) through (D) of paragraph VI(c), of this Agreement that are reasonably requested by Cryovac, Inc. Notwithstanding anything to the contrary contained in the immediately preceding sentence, Cryovac, Inc. and officers, employees, advisors and other agents of Cryovac, Inc., Sealed Air Corporation, or its Affiliates may disclose to any and all Persons, without limitation of any kind, the tax treatment and any facts that may be relevant to the tax structure of the transactions contemplated by this Agreement.

b.    Each of the Plaintiffs shall, and shall use its best efforts to require the Confirmation Order and Chapter 11 Plan expressly to provide that each of the Debtors and the Non-Debtor Affiliates shall, (i) take all Defined Actions required to be taken pursuant to, or that are reasonably

requested by Sealed Air Corporation and consistent with the provisions of, paragraphs II(c)(ix), (x), or (xi), or VI(g), of this Agreement and (ii) be prohibited from taking any Defined Action prohibited from being taken pursuant to, or that is inconsistent with the provisions of, paragraphs II(c)(ix), (x), or (xi), or VI(g), of this Agreement, provided, however, that a Person shall not be required to take, or be prohibited from taking, as the case may be, a Defined Action as required pursuant to this sentence if each of the following four requirements has been previously satisfied (I) such Person has fully performed all of its obligations set forth in paragraph VI(f) of this Agreement, (II) such Person has received a Contrary Opinion with respect to such Defined Action required or prohibited pursuant to this paragraph VI(b), (III) such Person has provided a copy of such Contrary Opinion to Sealed Air Corporation, and (IV) within forty-five days of the receipt by Sealed Air Corporation of such Contrary Opinion, Sealed Air Corporation has not provided such Person with a Sealed Air Opinion. Each of the Plaintiffs shall use its best efforts, and shall use its best efforts to cause the Confirmation Order and Chapter 11 Plan expressly to provide that each of the Debtors shall use its best efforts, not to make any statement in a court document filed in the Debtors' chapter 11 cases or in any oral statement to the court in the Debtors' chapter 11 cases that is prohibited by, or inconsistent with the provisions of, paragraphs II(c)(ix), (x), or (xi), or VI(g), of this Agreement, provided, however, that a Person shall not be required to take, or be prohibited from taking, as the case may be, a Defined Action as required pursuant to this sentence if each of the following four requirements has been previously satisfied (I) such Person has fully performed all of its obligations set forth in paragraph VI(f) of this Agreement, (II) such Person has received a Contrary Opinion with respect to such Defined Action required or prohibited pursuant to this sentence, (III) such Person has provided a copy of such Contrary Opinion to Sealed Air Corporation, and (IV) within forty-five days of the receipt by Sealed Air Corporation of such Contrary Opinion, Sealed Air Corporation has not

31

provided such Person with a Sealed Air Opinion. Each of the Plaintiffs shall use its best efforts to require the Confirmation Order and Chapter 11 Plan expressly to provide that each of the Debtors shall cause each of the Non-Debtor Affiliates to perform and satisfy fully all obligations, covenants, and agreements of such Non-Debtor Affiliate set forth or referred to in this Agreement, including, without limitation, any such obligation, covenant, or agreement of any Non-Debtor Affiliate set forth in the Chapter 11 Plan or Confirmation Order.

      c.      Each of the Plaintiffs shall use its best efforts to require the Confirmation Order and Chapter 11 Plan expressly to provide that (i) each of the Debtors and their Affiliates shall promptly notify Cryovac, Inc. and Sealed Air Corporation upon receipt by any Debtor or any Affiliate of any Debtor of any notice of any pending or threatened audit or assessment, suit, litigation, proposed adjustment, deficiency, dispute, administrative or judicial proceeding or other similar Claim involving any Debtor or any Affiliate of any Debtor from any Tax authority or any other Person challenging (A) the qualification of any Cryovac 524(g) Trust as a Qualified Settlement Fund, (B) the qualification of Cryovac, Inc. as a Transferor to any Cryovac 524(g) Trust, (C) the payment by Cryovac, Inc. to one or more 524(g) Trusts pursuant to paragraph II(a) of this Agreement as a direct payment by Cryovac, Inc. to such 524(g) Trusts for Asbestos Claims that constitutes an ordinary and necessary expense of Cryovac, Inc., and (D) the payment, if any, by Cryovac, Inc. to Grace Specialty pursuant to paragraph II(a) of this Agreement as an ordinary and necessary expense of Cryovac, Inc. or as income of Grace Specialty (any such audit or assessment, suit, litigation, proposed adjustment, deficiency, dispute, administrative or judicial proceeding or other similar Claim, a "Tax Claim"), (ii) Cryovac, Inc. and Sealed Air Corporation shall be entitled to participate at their expense in the defense or prosecution of any Tax Claim (including to participate in all discussions with the Tax authorities regarding such Tax Claims and to be allowed to provide affirmative suggestions or

32

comments with respect to any written submissions or communications to the Tax authorities regarding such Tax Claims, which comments and suggestions shall be incorporated into such written submissions or communications with the consent of the Debtors, such consent not to be unreasonably withheld), and the Debtors and their Affiliates shall consult with Cryovac, Inc. and Sealed Air Corporation in connection with the defense or prosecution of any such Tax Claim and provide such cooperation and information as Cryovac, Inc. and Sealed Air Corporation shall reasonably request with respect to any such Tax Claim, (iii) each of the Debtors and its Affiliates shall agree to use its best efforts to attempt to sever any Tax Claim from other issues raised in any audit or assessment, suit, litigation, proposed adjustment, deficiency, dispute, administrative or judicial proceeding or other similar Claim, (iv) in furtherance of the obligations of the Debtors set forth in this paragraph VI(d), W.R. Grace & Co.-Conn. and W.R. Grace & Co. shall, and shall instruct their respective Chief Executive Officer, Chief Financial Officer, and Director of Taxes, and shall cause each of their Affiliates, to (A) deliver, promptly after the receipt of any document received from the IRS relating to a Tax Claim, a copy of such document to Cryovac, Inc. and Sealed Air Corporation, (B) deliver to Cryovac, Inc. and Sealed Air Corporation any document delivered to the IRS with respect to a Tax Claim promptly after such document is delivered to the IRS, provided, however, that, if such document was prepared in response to a request by the IRS, then prior to the delivery of such document to the IRS, Cryovac, Inc. and Sealed Air Corporation shall be allowed to provide affirmative suggestions or comments with respect to any such document, as provided in paragraph VI(c)(ii) of this Agreement, (C) provide Cryovac, Inc. and Sealed Air Corporation, at least five days prior to any meeting or conference (whether in person or by teleconference) scheduled with the IRS during which a Tax Claim may be discussed, with written notice of such scheduled meeting or conference, and an opportunity to attend the portions of such meeting or conference during which

any Tax Claim is discussed, and (D) provide Cryovac, Inc. and Sealed Air Corporation with cooperation and information reasonably requested by Cryovac, Inc. or Sealed Air Corporation in connection with any Tax Claim, including, at Cryovac, Inc.'s or Sealed Air Corporation's request, status updates with respect to all Tax Claims, (v) any document to be provided by the Debtors to Cryovac, Inc. or Sealed Air Corporation in furtherance of the obligations set forth in this paragraph VI(c) may be redacted by the Debtors to exclude information not pertinent to the Tax Claim and (vi) unless otherwise required by a Final Determination, none of the Debtors or any of their Affiliates shall settle or otherwise dispose of any Tax Claim.

     d.    The obligations of each Plaintiff contained in paragraphs II(c)(ix), (x), and (xi), and VI(a) and (b) of this Agreement shall survive until such Plaintiff has ceased to exist.

     e.    Each of the Plaintiffs shall use its best efforts to cause the Confirmation Order and Chapter 11 Plan expressly to provide an acknowledgment and agreement of each of the Debtors that (i) to the extent that any of the Debtors are required, pursuant to generally accepted accounting principles, to accrue a liability for asbestos which liabilities are satisfied by Cryovac, Inc. by a transfer made by Cryovac, Inc. directly to the Cryovac 524(g) Trusts pursuant to this Agreement and such Debtor is required pursuant to generally accepted accounting principles to reverse such accrual, to the extent that there is more than one methodology under generally accepted accounting principles pursuant to which the Debtors are allowed to reverse any such accrual, such Debtor shall adopt the methodology, if any, not inconsistent with the provisions of paragraphs VI(b) and VI(g) of this Agreement, (ii) any payment or transfer by Cryovac, Inc. directly to a 524(g) Trust shall not be treated, for financial accounting purposes, as resulting in an expense or deduction of any Debtor or Non-Debtor Affiliate and (iii) to the extent that any payment or transfer by Cryovac, Inc. directly to a Cryovac 524(g) Trust results, for financial accounting purposes, in income to any Debtor, Debtors

34

shall treat such income as income from the cancellation of indebtedness or liabilities of the Debtors. Sealed Air Corporation and Cryovac, Inc. acknowledge and agree that the obligation of the Debtors to reverse any accrual referred to in paragraph VI(e)(i) of this Agreement shall not be a breach of such Debtor's obligations set forth or referred to in this Agreement.

      f.      If any of the Plaintiffs, and each of the Plaintiffs shall use its best efforts to require the Confirmation Order and Chapter 11 Plan expressly to provide that if, any of the Debtors, the Non-Debtor Affiliates, or the Cryovac 524(g) Trusts, has determined that an issue (a "Paragraph VI(f) Issue") may exist with respect to its taking, or the failure to take, a Defined Action as required pursuant to paragraph II(c)(ix), (x), or (xi), or VI(b) or VI(g), of this Agreement, then, prior to delivering a Contrary Opinion to Sealed Air Corporation with respect to such Defined Action in accordance with the provisos set forth in paragraph II(c)(ix), (x), or (xi), VI(b) or VI(g) of this Agreement, as the case may be, (i) such Person shall provide to Sealed Air Corporation, as promptly as practicable, a written notice identifying such Defined Action and describing in detail the Paragraph VI(f) Issue and (ii) such Person shall, and shall cause its advisors (including accountants and tax attorneys, as the case may be) to, and Sealed Air Corporation shall, consult and act in good faith to determine and resolve (A) if such issue relates to a Tax issue, whether, as a result of a Change in Circumstances, there is no "reasonable basis", as defined in section 6662 of the Internal Revenue Code (or successor provision thereof), for the taking of, or the failure to take, such Defined Action by such Person or (B) if such issue relates to an accounting issue, whether, as a result of a Change in Circumstances, the taking, or the failure to take, such Defined Action is inconsistent with generally accepted accounting principles.

      g.      Each of the Plaintiffs shall use its best efforts to require the Confirmation Order and Chapter 11 Plan expressly to provide that:

(i) unless otherwise required by a Final Determination, the Debtors and the Non-Debtor Affiliates (A) shall file all Tax Returns required to be filed by such Person, if any, consistent with the provisions of paragraph II(c)(ix) of this Agreement and shall take all other Defined Actions that are reasonably requested by Sealed Air Corporation and consistent with the provisions of paragraph II(c)(ix) of this Agreement and (B) shall be prohibited from taking any Defined Action that may result in the disqualification of any Cryovac 524(g) Trust as a Qualified Settlement Fund or be inconsistent with Cryovac, Inc. being treated as a Transferor to each Cryovac 524(g) Trust of the cash and Settlement Shares transferred by Cryovac, Inc. directly to such Cryovac 524(g) Trust or each Cryovac 524(g) Trust constituting a Qualified Settlement Fund, provided, however, that a Person shall not be required to take, or be prohibited from taking, as the case may be, a Defined Action as required pursuant to this paragraph VI(g)(i) if each of the following four requirements has been previously satisfied (I) such Person has fully performed all of its obligations set forth in paragraph VI(f) of this Agreement, (II) such Person has received a Contrary Opinion with respect to such Defined Action required or prohibited pursuant to this paragraph VI(g)(i), (III) such Person has provided a copy of such Contrary Opinion to Sealed Air Corporation, and (IV) within forty-five days of the receipt by Sealed Air Corporation of such Contrary Opinion, Sealed Air Corporation has not provided such Person with a Sealed Air Opinion;

(ii) if one or more Cryovac 524(g) Trusts is established, then unless otherwise required by a Final Determination, the Debtors and the Non-Debtor Affiliates shall treat for all Tax purposes any and all payments by Cryovac, Inc. directly to the Cryovac 524(g) Trusts pursuant to paragraph II(a) of this Agreement as a direct payment by Cryovac, Inc. to the Cryovac 524(g) Trusts for Asbestos Claims that constitutes an ordinary and necessary expense of Cryovac, Inc., and the Debtors and Non-Debtor Affiliates (A) for financial accounting or any other regulatory purpose, shall be prohibited from treating any payment by Cryovac, Inc. directly to a Cryovac 524(g) Trust as a payment by Cryovac, Inc. to any of the Debtors or Non-Debtor Affiliates, or as a payment by any Debtor or Non-Debtor Affiliate to any Person (including any 524(g) Trust) (or treating such payment as, or resulting in, an expense or deduction of any Debtor or Non-Debtor Affiliate), (B) for Tax purposes, shall be prohibited from claiming that any payment by Cryovac, Inc. directly to a Cryovac 524(g) Trust results in or gives rise (directly or indirectly) to the accrual or allowance of a deduction or expense, or income to, or any other transfer of any type to, any Debtor or Non-Debtor Affiliate, (C) shall take all Defined Actions that are reasonably requested by Sealed Air Corporation and consistent with the provisions of this paragraph VI(g)(ii), (D) shall not take any position inconsistent with the foregoing on any Tax Return or with any Tax authority, and (E) shall not make any statement in any public or regulatory filing or release or otherwise, or take any other Defined Action, that is inconsistent with the obligations of such Person pursuant to this paragraph VI(g)(ii); provided, however, that a Person shall not be required to take, or be prohibited from taking, as the case may be, a Defined Action as required pursuant to this paragraph VI(g)(ii) if each of the following four requirements has been previously satisfied (I) such Person has fully performed all of its obligations set forth in paragraph VI(f) of this Agreement, (II) such Person has received a Contrary Opinion with respect to such Defined Action required or prohibited pursuant to this paragraph VI(g)(ii), (III) such Person has provided a copy of such Contrary Opinion to Sealed Air Corporation,

and (IV) within forty-five days of the receipt by Sealed Air Corporation of such Contrary Opinion, Sealed Air Corporation has not provided such Person with a Sealed Air Opinion; and

(iii) unless otherwise required by a Final Determination, the Debtors and the Non-Debtor Affiliates shall treat for all Tax purposes all payments, if any, by Cryovac, Inc. to Grace Specialty pursuant to paragraph II(a) of this Agreement as ordinary income of Grace Specialty, and the Debtors and the Non-Debtor Affiliates (A) shall file all Tax Returns required to be filed by such Person, if any, consistent with the provisions of this paragraph VI(g)(iii) and shall take all other Defined Actions that are reasonably requested by Sealed Air Corporation and consistent with the provisions of this paragraph VI(g)(iii) and (B) shall be prohibited from taking any Defined Action that is inconsistent with the foregoing provisions of this paragraph VI(g)(iii) or that is inconsistent with any such payment being treated as an ordinary income and necessary expense incurred by Cryovac, Inc.; provided, however, that a Person shall not be required to take, or be prohibited from taking, as the case may be, a Defined Action as required pursuant to this paragraph VI(g)(iii) if each of the following four requirements has been previously satisfied (I) such Person has fully performed all of its obligations set forth in paragraph VI(f) of this Agreement, (II) such Person has received a Contrary Opinion with respect to such Defined Action required or prohibited pursuant to this paragraph VI(g)(iii), (III) such Person has provided a copy of such Contrary Opinion to Sealed Air Corporation, and (IV) within forty-five days of the receipt by Sealed Air Corporation of such Contrary Opinion, Sealed Air Corporation has not provided such Person with a Sealed Air Opinion.

    h.    The Debtors may prepare and execute (but not file with the IRS or other governmental authority, which filing shall be effected only by Cryovac, Inc. pursuant to and in accordance with this Agreement) a Protective Claim (a "Grace Protective Claim") for the taxable year of the Debtors in which the payments and transfers provided in paragraph II(a) of this Agreement (the "Transfer") are made, or for any other prior (solely with respect to a carryback from the taxable year of the Transfer) or subsequent taxable year in which the Tax Benefits realized as a result of such Transfer may be claimed by the Debtors (any such taxable year, a "Relevant Tax Year"), and require Cryovac, Inc. to file such Grace Protective Claim with the IRS or other governmental authority for and on behalf of the Debtors, provided, however, that a Grace Protective Claim shall not be required to be filed by Cryovac, Inc. at any time prior to 15 days before the expiration (taking into account all extensions thereof) of the applicable statute of limitations for the Debtors to file an amended return ("SOL") for

37

the Relevant Tax Year, and provided, further, that, notwithstanding anything to the contrary set forth in this paragraph VI(h), the Debtors may prepare and execute a Grace Protective Claim, and require Cryovac, Inc. to file such Grace Protective Claim with the IRS or other governmental authority for a Relevant Tax Year, only if each of the following requirements has been previously satisfied:

> (i) (A) the Debtors have granted each extension (and each further extension) to the applicable SOL for such Relevant Tax Year that has been requested by the IRS; (B) at the time of each such request by the IRS referred to in this paragraph VI(h)(i), above, to extend (or further extend) the applicable SOL for such Relevant Tax Year, the Debtors shall have used their best efforts to extend (and cause the IRS to agree to extend) such SOL for a period of two (2) years or longer; (C) in the event that the IRS has not requested the Debtors to extend (or further extend) the applicable SOL for such Relevant Tax Year prior to 180 days prior to the end of such SOL, the Debtors shall have used their best efforts to extend (and cause the IRS to agree to extend) such SOL for a period of two (2) years or longer, and (D) the Debtors shall have provided to Cryovac, Inc. a written statement by their Chief Financial Officer that each of the requirements set forth immediately above in paragraphs VI(h)(i)(A), (B) and (C) of this Agreement has been satisfied in all respects; and

> (ii) each of the Confirmation Order and the Chapter 11 Plan expressly provide the provisions of this paragraph VI(h) in its entirety, the provisions of paragraphs VI(i) through VI(l) set forth below in their entirety, and that: (A) in addition to the obligation of Cryovac, Inc. to file a Grace Protective Claim if required by the Debtors in accordance with and subject to the conditions set forth in this paragraph VI(h), Sealed Air Corporation may file a Grace Protective Claim with the IRS or other taxing authority for a Relevant Tax Year at its election, and in connection therewith, the Debtors shall prepare and execute such Grace Protective Claim; (B) the Debtors shall pay to Cryovac, Inc. in immediately available funds fifty (50) percent of the amount of any Tax Benefit realized as a result of the Transfer no later than ten (10) days after such Tax Benefit has been deemed to have been Actually Realized pursuant to this paragraph VI(h); (C) if requested by Sealed Air Corporation, the Debtors shall use their best efforts to extend (and cause the IRS to agree to extend) the applicable SOL for any Relevant Tax Year; (D) other than any obligation of Cryovac, Inc. expressly set forth in paragraphs VI(h) through VI(l) of this Agreement, no obligations relating to the subject matter set forth in paragraphs VI(h) through (l) shall be undertaken or deemed to be undertaken by Cryovac, Inc. or any of its affiliates pursuant to paragraphs VI(h) through VI(l) of this Agreement or otherwise, and (E) the language to be included in Part II of Form 1120X (or applicable section of any similar state or local tax form) of a Grace Protective Claim shall include the language set forth on Exhibit 7 and only such other language as may be mutually agreed to by the Debtors and Cryovac, Inc.

For purposes of this Agreement, "Tax Benefit" shall mean the amount of any reduction of the actual Tax liability (after giving effect to any alternative minimum or similar Tax) of the Debtors to the

appropriate governmental authority for a taxable year as a result of the Transfer (including, without limitation, as a result of a deduction, loss, credit, or exclusion, whether available in the current taxable year, as an adjustment to the taxable income in any other taxable year or as a carryforward or carryback, as applicable, or as an offset or reduction to any assessment), increased by any interest (on an after-Tax basis) received from such governmental authority relating to such reduction in Tax liability; it being understood that the amount of such reduction of the actual Tax liability of the Debtors to the appropriate governmental authority for a taxable year shall take into account, without duplication, the amount of any correlative increase in Tax liability of the Debtors (including as a result of any correlative inclusion, gain, reduction in a credit, or as an increase to any assessment) for such taxable year as a result of the Transfer. For purposes of this Agreement, a Tax Benefit shall be deemed to have been "Actually Realized" at the time any refund of Taxes is actually received or applied against other Taxes due (including all assessments by any governmental authority), or at the time of the filing of a Tax Return (including any Tax Return relating to estimated Taxes) on which a deduction, loss or other Tax item is applied to reduce the amount of Taxes which would otherwise be payable. The determination of any Tax Benefit Actually Realized as a result of the Transfer shall be deemed to have been utilized based on the order that the deductions, losses, credits, exclusions or other Tax items realized as a result of the Transfer are considered to be utilized by the Debtors pursuant to the ordering rules set forth in the Internal Revenue Code and the Treasury Regulations.

    i.    The Debtors shall withdraw all Grace Protective Claims upon a Cryovac Final Determination that the Transfer results in a Tax Benefit to Cryovac, Inc. (or the affiliated group filing a consolidated Tax Return of which Sealed Air Corporation is the common parent), and the Debtors shall provide a written statement to Cryovac, Inc. signed by the Chief Financial Officer of the Debtors stating that all Grace Protective Claims have been withdrawn. Cryovac, Inc. shall notify the

Debtors to pursue all Grace Protective Claims upon a Cryovac Final Determination that the Transfer results in no Tax Benefit to Cryovac, Inc. (or the affiliated group filing a consolidated Tax Return of which Sealed Air Corporation is the common parent). Upon receipt of such notice referred to in the preceding sentence or if otherwise requested in writing by Cryovac, Inc., the Debtors shall use reasonable best efforts to pursue all Grace Protective Claims, and the Debtors shall keep Cryovac, Inc. fully informed of, and Cryovac, Inc. shall be entitled to participate in, all developments with respect to all such Grace Protective Claims in a manner consistent with the provisions set forth in paragraphs VI(c)(ii) through (vi) of this Agreement. For purposes of this Agreement, "Cryovac Final Determination" means the later of (i) sixty days after the expiration of the statute of limitations (taking into account all extensions thereof) of the Sealed Air Corporation affiliated group filing a consolidated Tax Return for the taxable year in which Cryovac, Inc. makes the Transfer and (ii) if the IRS has challenged the ability of the Sealed Air Corporation affiliated group filing a consolidated Tax Return to claim any deduction or loss as a result of the transactions set forth in or contemplated by this Agreement, sixty days after the final resolution of the last of all such issues by a decision or other order of a court of competent jurisdiction, which has become final and unappealable, or the execution by Sealed Air Corporation of a closing agreement or accepted offer in compromise under section 7121 or 7122 of the Internal Revenue Code.

      j.     For purposes of determining any Tax Benefit that is Actually Realized by the Debtors as a result of the Transfer:

      (i)     No later than ten (10) days after the Debtors shall have Actually Realized a Tax Benefit as a result of the Transfer, the Debtors shall provide Cryovac, Inc. with a detailed statement (the "Tax Benefit Statement") specifying (A) the amount of the Tax Benefit that was Actually Realized by the Debtors and any information relevant to the computation thereof (including

full access to any applicable Tax Return, non-proprietary work papers and other materials and information of the Debtors and their accountants), (B) the date that such Tax Benefit was Actually Realized, (C) the amount of deduction, loss, credit or exclusion initially claimed by the Debtors as a result of the Transfer (the "Initial Tax Benefit Item"), (D) the amount of the Initial Tax Benefit Item that is utilized by the Debtors to create such Tax Benefit Actually Realized (including as a result of all or a portion of the Initial Tax Benefit Item being carried back or forward), and (E) the amount of the Initial Tax Benefit Item not yet utilized by the Debtors (to create a Tax Benefit Actually Realized) that will be carried forward.

(ii)    No later than 30 days after the Debtors have filed their U.S. federal consolidated income Tax Return for each year beginning the year that includes the Tax Benefit Start Date, the Debtors shall deliver to Cryovac, Inc. an annual statement (the "CFO Annual Statement"), signed by their Chief Financial Officer under penalties of perjury, that sets forth (A) the amount of the Tax Benefits Actually Realized, if any, by the Debtors as a result of the Transfer during the preceding taxable year (including, without limitation, as a result of an amended return for any taxable year, a loss or deduction being utilized for such preceding taxable year, a loss or credit carryback from such preceding taxable year, or a loss or credit carryforward to such preceding taxable year), (B) the date (or dates) such Tax Benefits were Actually Realized during such taxable year, (C) the amount of the Initial Tax Benefit Item, (D) the amount of the Initial Tax Benefit Item that is utilized by the Debtors to create such Tax Benefit Actually Realized, and (E) the amount of the Initial Tax Benefit Item not yet utilized by the Debtors (to create a Tax Benefit Actually Realized) that will be carried forward. The Debtors shall also provide Cryovac, Inc. with all information relevant to the computation of such Tax Benefits Actually Realized by the Debtors set forth in paragraph VI(j)(ii)(A) of this Agreement (including full access to any applicable Tax Return, the non-

41

proprietary work papers, and other materials and information of the Debtors and their accountants). For purposes of this Agreement, "Tax Benefit Start Date" means the date on which the Debtors are required to pursue all Protective Claims pursuant to the third sentence of paragraph VI(i) of this Agreement.

(iii)    If Cryovac, Inc. disagrees in any respect with the Debtors' computation of the amount of the Tax Benefit Actually Realized that is set forth on the Tax Benefit Statement or the CFO Annual Statement, Cryovac, Inc. may, on or prior to forty-five (45) days after the receipt of either such statement from the Debtors, deliver a notice to the Debtors setting forth in reasonable detail the basis for Cryovac, Inc.'s disagreement therewith ("Tax Benefit Dispute Notice"). If no Tax Benefit Dispute Notice is received by the Debtors on or prior to the forty-fifth (45th) day after Cryovac, Inc.'s receipt of the Tax Benefit Statement or the CFO Annual Statement, as the case may be, from the Debtors, the Tax Benefit Statement or the CFO Annual Statement, as the case may be, shall be deemed accepted by Cryovac, Inc.

(iv)    Within fifteen (15) days after the Debtors' receipt of a Tax Benefit Dispute Notice, unless the matters in the Tax Benefit Dispute Notice have otherwise been resolved by mutual agreement of the parties, the Debtors and Cryovac, Inc. shall jointly select a nationally-recognized independent certified public accountant (the "Tax Benefit Accountant"); provided, however, if the Debtors and Cryovac, Inc. are unable to agree upon the Tax Benefit Accountant within such fifteen (15) day period, then the Debtors and Cryovac, Inc. shall each select a nationally-recognized independent certified public accountant which shall then jointly choose the Tax Benefit Accountant within fifteen (15) days thereafter. The Tax Benefit Accountant shall conduct such review of the work papers and such other materials and information, and the Tax Benefit Dispute Notice, and any supporting documentation as the Tax Benefit Accountant in its sole discretion deems necessary, and

42

the Tax Benefit Accountant shall conduct such hearings or hear such presentations by the parties or

obtain such other information as the Tax Benefit Accountant in its sole discretion deems necessary.

The Tax Benefit Accountant shall, as promptly as practicable and in no event later than forty-five

(45) days following the date of its retention, deliver to the Debtors and Cryovac, Inc. a report (the

"Tax Benefit Report") in which the Tax Benefit Accountant shall, after reviewing disputed items set

forth in the Tax Benefit Dispute Notice, determine what adjustments, if any, should be made to the

amount of the Tax Benefit Actually Realized. The Tax Benefit Report shall set forth, in reasonable

detail, the Tax Benefit Accountant's determination with respect to the disputed items or amounts

specified in the Tax Benefit Dispute Notice, and the revisions, if any, to be made to the amount of

the Tax Benefit Actually Realized, together with supporting calculations. All fees and expenses

relating to this work of the Tax Benefit Accountant shall be borne equally by the Debtors and

Cryovac, Inc. Absent manifest error, the Tax Benefit Report shall be final and binding upon the

Debtors and Cryovac, Inc., and no party shall seek further recourse to courts, other arbitral tribunals

or otherwise. The Debtors shall pay to Cryovac, Inc. in immediately available funds no later than

five (5) days after delivery of the Tax Benefit Report to the Debtors and Cryovac, Inc. the sum of (x)

the excess, if any, of fifty (50) percent of the amount of the Tax Benefit Actually Realized set forth

in the Tax Benefit Report over the amount previously paid, if any, by the Debtors to Cryovac, Inc.

with respect thereto and (y) interest with respect to any such excess, as provided for in paragraph

VI(k) of this Agreement.

      (v)    If a loss, deduction, credit or exclusion that resulted in Tax Benefit that was

Actually Realized by the Debtors is later denied by a Taxing authority by (x) a decision, decree or

other order by a court of competent jurisdiction, which has become final and unappealable or (y)

any other means (including a closing agreement or accepted offer in compromise under section 7121

or 7122 of the Internal Revenue Code) if Cryovac, Inc. has consented to such other means, which consent shall not be unreasonably withheld or delayed, the Debtors shall provide a written statement, signed under penalties of perjury by the Chief Financial Officer of the Debtors, that states (A) the amount of such loss, deduction, credit or exclusion that was denied, (B) the amount of the Tax Benefits Actually Realized that was initially determined and paid by the Debtors to Cryovac, Inc. for such taxable period, and (C) the revised amount of the Tax Benefit Actually Realized for such taxable period taking into account the denial of such loss, deduction, credit or exclusion. The Debtors shall also provide to Cryovac, Inc. any information relevant to the computation of such initial and revised amount of the Tax Benefits Actually Realized by the Debtors (including full access to any applicable Tax Return, the non-proprietary work papers, and other materials and information of the Debtors and their accountants). If Cryovac, Inc. disagrees in any respect with the Debtors' computation of such revised amount of the Tax Benefit Actually Realized by the Debtors for such taxable period, the principles of the dispute resolution mechanism set forth in paragraphs VI(j)(iii) and VI(j)(iv) shall apply. No later than five (5) days after final resolution of the amount of the revised Tax Benefits Actually Realized for such taxable period, Cryovac, Inc. shall pay to the Debtors in immediately available funds fifty (50) percent of the excess, if any, of the amount of Tax Benefits Actually Realized that was initially determined for such taxable period and paid by the Debtors to Cryovac, Inc. over the amount of the Tax Benefit Actually Realized for such taxable period as revised. Any amount that is not paid within the period set forth in this paragraph VI(j)(v) shall accrue interest in accordance with paragraph VI(k) of this Agreement.

      k.     Notwithstanding anything to the contrary set forth in this Agreement, any amount of Tax Benefit Actually Realized that is required to be paid by the Debtors to Cryovac, Inc. pursuant to this Agreement and that is not paid within the period set forth in paragraph VI(h) of this

Agreement shall accrue interest at the prime rate announced from time to time by Bank of America, N.A., compounded annually.

1.    In the event of a conflict between this Agreement and the 1998 Tax Sharing Agreement, this Agreement shall govern and control.

## VII.    **General Matters and Reservations**

a.    In addition to other conditions set forth in this Agreement, the obligation of the parties to conclude the proposed settlement set forth in this Agreement is subject to and contingent upon the entry of a Final Order by this Court approving this Agreement, pursuant to Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure.

b.    This Agreement (as amended, modified, or supplemented) sets forth the sole and entire agreement among the parties with respect to its subject matter, and may not be waived, amended, modified, or supplemented except by written instrument executed by duly authorized representatives of each of the parties and entitled "Modification of Settlement Agreement and Release." This Agreement supercedes any prior agreement, understanding, or undertaking (written or oral) by and among the parties regarding the subject matter of this Agreement.

c.    All parties agree that the terms of this Agreement were drafted jointly by counsel for the parties following extensive arm's length negotiations. In the event there arises an ambiguity or question of intent or interpretation of this Agreement or any provision thereof, the Agreement (and each of its provisions) shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provision of this Agreement.

d.      The article and section headings contained in this Agreement are solely for the purpose of reference, are not part of the agreement of the parties, and shall not, in any way, define, limit, extend, or otherwise affect the scope, meaning, intent, or interpretation of this Agreement or any provision thereof.

e.      Without affecting any determination as to the law applicable to the Action, this Agreement and the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of the State of Delaware (without giving effect to its provisions on conflict of laws).

f.      Nothing in this Agreement shall preclude any action to enforce any of the terms of this Agreement; provided, however, that any such action shall be brought exclusively in this Court, which shall retain jurisdiction of this matter and of the parties to this Agreement for the purposes of enforcing and implementing the terms and conditions of this Agreement and resolving disputes as to the rights and obligations of the parties under this Agreement; provided, further, that section 524(g)(2) shall govern jurisdiction over any proceeding that involves any injunction issued in accordance with this Agreement under section 524(g) of the Bankruptcy Code. The parties to this Agreement submit to the jurisdiction of this Court for these purposes.

g.      This Agreement may be executed in any number of identical counterparts, any of which may contain the signatures of less than all parties and all of which together shall constitute a single agreement.

h.      All parties to this Agreement shall jointly move this Court within thirty days of its execution for full and complete approval of this Agreement, and as applicable agree to enter into the Registration Rights Agreement, the Release, the Indemnity Agreement, and the ancillary documents when and as contemplated in this Agreement.

i.    This Agreement shall be binding upon and inure to the benefit of each of the Plaintiffs, each of the Released Parties, and any and all of their respective heirs, legal representatives, administrators, successors and assigns, provided that (i) neither this Agreement nor any substantial right or obligation hereunder may be assigned by Sealed Air Corporation or Cryovac, Inc. without the written consent of the other parties that have signed this Agreement, which consent shall not be unreasonably withheld and (ii) none of the Debtors shall transfer or agree to transfer a substantial part of its assets (in one or a series of transactions, whether or not related) to any Person or Persons without a prior determination of the Court by Final Order that at the time of each such transaction such Debtors, collectively with any such successors who will be jointly and severally liable for the obligations of such Debtors, will have the ability to pay and satisfy in the ordinary course of business their respective obligations and liabilities, including, without limitation, all Indemnified Taxes and all obligations set forth or referred to in this Agreement, including, without limitation, all such obligations set forth in the Chapter 11 Plan or Confirmation Order, and provided, further, that paragraph VII(i)(ii) of this Agreement shall not apply at any time when the following two conditions in paragraphs VII(i)(ii)(A) and (B) of this Agreement are both satisfied: (A)(1) as a result of the expiration of the applicable statutes of limitation, assessment against and collection of Indemnified Taxes from each of the Released Parties (including assessment and collection pursuant to section 6901 of the Internal Revenue Code) is barred by such statutes of limitation and (2) all Indemnified Taxes have been paid by the Debtors in accordance with the 1998 Tax Sharing Agreement and the Released Parties have received from the Debtors (or adequate provision satisfactory to the Released Parties has been made for the payment of) all indemnification and other payments claimed by the Released Parties against any of the Debtors in respect of Indemnified Taxes and related matters in accordance with the 1998 Tax Sharing Agreement; and (B) the injunctions required pursuant to

paragraph II(c)(vi) of this Agreement shall be in effect and there shall not be pending any lawsuit, action or other judicial or administrative proceeding (1) alleging an Asbestos-Related Claim and seeking to impose liability on one or more of the Released Parties notwithstanding the existence and continuing operative effect of such injunctions or (2) challenging in any manner the continuance and operative effect of such injunctions in respect of the Released Parties.

      j.    Without prejudice to any rights or remedies otherwise available to any party to this Agreement, each party to this Agreement acknowledges that damages would be an inadequate remedy for any breach of the provisions of this Agreement and agrees that the obligations under this Agreement shall be specifically enforceable.

      k.    All notices and other communication hereunder shall be in writing and shall be deemed to have been duly given upon receipt if: (i) mailed by certified or registered mail, return receipt requested, (ii) sent by Federal Express or other express courier, fee prepaid, (iii) sent via facsimile with receipt confirmed, or (iv) delivered personally, addressed as follows or to such other address or addresses of which the respective party shall have notified the other.

      A.    If to the Plaintiffs, to:

        Official Committee of Asbestos Property Damage Claimants
        c/o Bilzin Sumberg Baena Price & Axelrod LLP
        200 South Biscayne Boulevard
        Suite 2500
        Miami, Florida 33131
        Attention: Scott L. Baena
        Telephone: (305) 350-2403
        Facsimile: (305) 374-7593

        -and-

        Official Committee of Asbestos Personal Injury Claimants
        c/o Caplin & Drysdale, Chartered
        One Thomas Circle, NW
        Washington, D.C. 20005

Attention: Peter V. Lockwood
Telephone: (202) 862-5000
Facsimile:  (202) 429-3301

B.      If to the Released Parties, to:

Sealed Air Corporation/Cryovac, Inc.
Park 80 East
Saddle Brook, New Jersey  07663
Attention:  General Counsel and Secretary
Facsimile: (201) 703-4113

with copies to:

Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York  10036-6522
Attention:  Sheila L. Birnbaum
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date written above.

OFFICIAL COMMITTEE OF ASBESTOS
PERSONAL INJURY CLAIMANTS

By: _____
Print Name: _____
Title: _____


OFFICIAL COMMITTEE OF ASBESTOS
PROPERTY DAMAGE CLAIMANTS

By: _____
Print Name: Daniel A. Speights
Title: Co-Chair


SEALED AIR CORPORATION

By: _____
Print Name: _____
Title: _____


CRYOVAC, INC.

By: _____
Print Name: _____
Title: _____


50

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date written above.

OFFICIAL COMMITTEE OF ASBESTOS
PERSONAL INJURY CLAIMANTS

By: _____
Print Name: _Perry Weitz_____
Title: _Co-Chairman_____

OFFICIAL COMMITTEE OF ASBESTOS
PROPERTY DAMAGE CLAIMANTS

By: _____
Print Name: _____
Title: _____

SEALED AIR CORPORATION

By: _____
Print Name: _____
Title: _____

CRYOVAC, INC.

By: _____
Print Name: _____
Title: _____

50

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date written above.

OFFICIAL COMMITTEE OF ASBESTOS
PERSONAL INJURY CLAIMANTS

By: _____
Print Name: _____
Title: _____

OFFICIAL COMMITTEE OF ASBESTOS
PROPERTY DAMAGE CLAIMANTS

By: _____
Print Name: _____
Title: _____

SEALED AIR CORPORATION
By: _____
Print Name:  David H. Kelsey
Title: Vice President and Chief Financial Officer

CRYOVAC, INC.
By: _____
Print Name: David H. Kelsey
Title: Vice President and Chief Financial Officer

50