IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-1139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

## DEBTORS' MOTION REQUESTING THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE TO REFER JURISDICTION FOR CERTAIN MATTERS TO THE BANKRUPTCY COURT

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Michelle Browdy
Janet S. Baer
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000

PACHULSKI, STANG, ZIEHL,
YOUNG, JONES & WEINTRAUB
P.C.
Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

- Co-Counsel for the Debtors and Debtors in Possession -

Dated: November 24, 2004

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

The Debtors filed their proposed chapter 11 plan of reorganization (the "Plan"), accompanying disclosure statement (the "Disclosure Statement"), and related pleadings with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on November 13, 2004. The United States District Court for the District of Delaware (the "District Court"), however, currently retains jurisdiction over two key-matters that are integral to the Plan. Specifically, these matters are (i) the Debtors' amended motion for entry of a case management order establishing procedures for addressing asbestos personal-injury claims and certain related-pleadings (Docket Nos. 1664, 1666, 1713, 11, 586, 587, 595, 671, 672, 674, 900, 902, 903, 904, 1308, 1388, 2033, 1106, 1504) and (ii) the Asbestos Property Damage Claimants Committee and the Asbestos Personal Injury Claimants Committees' motion to approve a settlement agreement resolving the Sealed Air Corporation fraudulent transfer lawsuit (Adv. Docket No. 597). Because these matters are part-in-parcel to the Plan, they should be resolved in the same forum as the Plan.

The Plan provides for the creation of an asbestos trust under 11 U.S.C. § 524(g), which would be (i) liable for the Debtors' asbestos claims and (ii) funded, in large part, by an approximately $1 billion, cash and stock payment that would be owed by Sealed Air Corporation ("Sealed Air") to the Debtors' estates pursuant to the settlement of a fraudulent transfer lawsuit against Sealed Air. The proposed Sealed Air settlement has not received court approval, and jurisdiction over the motion to approve this agreement currently lies with this District Court. However, given the dependency of the Plan upon the funds that would be owed on account of the proposed Sealed Air settlement agreement, its resolution is a prerequisite to confirmation of the Plan. Further, the Debtors' most-recent motion for a case-management order, which was filed concurrently with the Plan, presents alternative procedures for determining the allowance of

2

asbestos claims (both personal injury and property damage) against the Debtors. This District Court presently has jurisdiction over certain pleadings that the Bankruptcy Court may need to address when considering the recently filed case management motion.[2]

This District Court has not had occasion to consider either of these matters, so there would not be (i) any prejudice to any interested parties or (ii) wasted judicial resources if this District Court refers these matters to the Bankruptcy Court. Given that the Bankruptcy Court (i) is extremely familiar with these chapter 11 cases, (ii) has jurisdiction over the Plan and asbestos property-damage claims, and (iii) has expressed a willingness to address all of the plan-related matters, the interests of judicial efficiency and consistency would be best served if this District Court refers the Bankruptcy Court jurisdiction over (i) the motion to approve the Sealed Air settlement agreement (Adv. Docket No. 597) and (ii) the Debtors' amended motion for entry of a case management order establishing procedures for addressing asbestos personal-injury claims and certain related-pleadings (Docket Nos. 1664, 1666, 1713, 11, 586, 587, 595, 671, 672, 674, 900, 902, 903, 904, 1308, 1388, 2033, 1106, 1504).

### Jurisdiction

1.      This District Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334(a).

2.      The statutory bases for the relief requested herein are 11 U.S.C. § 105(a) and 28 U.S.C. §§ 157(a) and 1334(a).

---

[2] The Debtors New CMO (defined herein) gives the Bankruptcy Court the option of either establishing post-confirmation litigation protocols or, in the alternative, adopting the pre-confirmation procedures that the Debtors' proposed in their Original CMO and Amended Original CMO (both defined herein). To make this determination, the Bankruptcy Court must be able to consider all relevant pleadings.

## Background

(a)     **The History of the Debtors' Original CMO**

3.     On April 2, 2001 (the "Petition Date"), the Debtors commenced their respective reorganization cases (collectively, the "Chapter 11 Cases") by filing petitions for relief under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code").

4.     The Debtors filed a detailed informational brief on the Petition Date, which presented a proposal for defining and resolving their asbestos-related liabilities through common-issues litigation. Shortly thereafter, on June 27, 2001, the Debtors filed a motion for entry of a case management order, establishment of a bar date, approval of proof of claim forms and approval of notice program (as amended, the "Original CMO Motion").[3] The Original CMO Motion also requested, among other things, an order providing for pre-confirmation litigation protocols for resolving the Debtors' asbestos claims (both asbestos personal-injury claims and asbestos property-damage claims).

5.     The Original CMO Motion was filed with District Judge Joseph Farnan, who was the original District Court Judge assigned to the Chapter 11 Cases. The Original CMO Motion was fully-briefed and set to be tried before Judge Farnan on November 21, 2001, but was stayed when the Court of Appeals for the Third Circuit (the "Third Circuit") decided to reassign the Chapter 11 Cases to District Court Judge Alfred M. Wolin.

---

[3]     The Debtors subsequently modified and amended the relief requested in the original June 27, 2001 filing, by filing the following materials: (i) Debtors' Revised Motion As To All Asbestos Personal Injury Claims For Entry Of A Case Management Order, Establishment Of A Bar Date, Approval Of The Proof Of Claim Forms And Of The Notice Program on February 12, 2002 (Docket No. 1664), (ii) the Debtors' Supplemental Brief Regarding Procedures for the Litigation of the Common Personal Injury Liability Issues, filed on June 21, 2002 (Docket No. 2275), and (iii) the Debtors' Reply Brief on Procedures for the Litigation of the Common Personal Injury Liability Issues, filed on August 21, 2002 (Docket No. 2581).

4

6.    On November 29, 2001, pursuant to 28 U.S.C. § 1292(b) and the order of Judge Edward R. Becker, Chief Judge of the Third Circuit, the District Court assigned the Chapter 11 Cases (and the asbestos-related bankruptcy cases of four other companies) to Judge Wolin. See *Order of the United States District Court for the District of Delaware, dated November 29, 2001* (a copy is attached as Exhibit B) (Docket No. 1270).

7.    On December 10, 2001, Judge Wolin entered an order that referred the Chapter 11 Cases to Judge Judith K. Fitzgerald, United States Bankruptcy Judge of the Western District of Pennsylvania, sitting by designation as Bankruptcy Judge in the Bankruptcy Court. See *Order (1) Referring Certain Cases to the Bankruptcy Court and (2) Allocating Responsibilities Between the District Court and the Bankruptcy Court* (the "Referral Order," a copy of which is attached as Exhibit C) (Docket No. 1321). The Referral Order provides, in relevant part, as follows:

- Judge Fitzgerald and the District court shall "cooperate ... in the scheduling of the [Chapter 11 Cases] to facilitate the expeditious administration of the debtors' estates in bankruptcy..."

- "[The District Court] may, *sua sponte*, upon recommendation received from the Bankruptcy Judge, or upon motion, withdraw the references made by this Order with respect to specific proceedings or issues as may be required by law or as may from time to time be advisable by the Court to facilitate the efficient resolution of the several cases and/or to adjudicate common issues among them ..."

- "[T]he withdrawal of the reference is specifically contemplated with respect to asbestos-related claims and issues..."

- At a status conference set for December 20, 2001, the Court will "solicit views from the parties with respect to which specific proceedings, and particularly which asbestos-related proceedings, the references to the Bankruptcy Judges should be withdrawn ..."

8.    On February 12, 2002, the Debtors' filed their *Revised Motion As To All Asbestos Personal Injury Claims For Entry Of Case Management Order, Establishment Of A Bar Date,*

*Approval Of The Proof Of Claim Forms And Of The Notice Program* (the "Amended Original CMO Motion") (Docket No. 1664).

9.      The Amended Original CMO Motion presented a proposal for resolution of issues relating to asbestos personal-injury claims (it did not concern asbestos property damage claims or other aspects of the Chapter 11 Cases).      The Amended Original CMO Motion was substantially similar to the Original CMO Motion with respect to the proposed procedures for addressing asbestos personal-injury claims.

10.      The Amended Original CMO Motion was scheduled to be heard by Judge Fitzgerald during the Debtors' February 25, 2002 omnibus hearing.      However, before that hearing occurred, it was determined that Judge Fitzgerald would transfer the Amended Original CMO Motion to Judge Wolin for resolution in the District Court.

11.      On March 15, 2002, Judge Fitzgerald entered an *Order Transferring Certain Personal Injury Asbestos Claim Matters to the Honorable Alfred M. Wolin, D.N.J.* (the "Fitzgerald Transfer Order", a copy of which is attached as Exhibit D) (Docket No. 1813).    The Fitzgerald Transfer Order transferred the Amended Original CMO Motion (Docket No. 1664), and the following "related pleadings" to Judge Wolin:

> (i)      Debtors' Consolidated Reply in Support of the Amended Original CMO (Docket No. 1666)
>
> (ii)      Supplemental Exhibits (Docket No. 1713),
>
> (iii)      Responses A through H (Docket Nos: 11, 620, 621, 623, 900, 902, 904, 1033, 1106, 1504).

As a result of the Fitzgerald Transfer Order, this District Court currently has jurisdiction to hear the Amended Original CMO Motion (and the other transferred pleadings).

6

12.     On April 5, 2002, the Official Committee of Asbestos Personal Injury Claimants filed a *Motion to Correct the Court's Order Transferring Certain Asbestos Personal Injury Claim Matters to the Honorable Alfred M. Wolin* (the "Correction Motion", a copy of which is attached as Exhibit E) (Docket No. 1902).   The Correction Motion indicated that certain necessary submissions (necessary to considering the Amended Original CMO Motion) were not included in the Fitzgerald Transfer Order and also noted that the docket numbers for two of the transferred Responses were incorrect.

13.     On April 22, 2002, Judge Fitzgerald entered an Order that modified the Fitzgerald Transfer Order with respect to the specific pleadings that were transferred to Judge Wolin (the "Corrected Fitzgerald Transfer Order") (Docket No. 1965).   In particular, the Corrected Fitzgerald Transfer Order added Docket Nos: 586, 587, 595, 903, 1308, and 1388 as relevant to the transferred matter and substituted Docket Nos. 671, 672, and 674 for Docket Nos. 620, 621 and 623.[4]

14.     While the Debtors' CMO proposal with respect to resolving asbestos personal injury claims was extensively briefed in 2001 and 2002, neither this District Court nor the Bankruptcy Court has ever addressed these issues.  When the Chapter 11 Cases were assigned to Judge Wolin in November of 2001, he did not immediately address this issue.  Instead, he had the parties re-brief these issues and put the matter on hold pending resolution of the Sealed Air

---

[4]     The Fitzgerald Transfer Order, as amended by the Corrected Fitzgerald Transfer Order, only transferred jurisdiction over specific pleadings.  It does not contain broader language, such as "any further proceedings." Therefore, the Bankruptcy Court's original reference remains effective, and the Bankruptcy Court has jurisdiction over the New CMO Motion.  However, the New CMO Motion specifically provides that, to the extent the Bankruptcy Court determines that the process outlined in the Amended Original CMO Motion is superior to the process outlined in the New CMO Motion, then it may adopt the process in the Amended Original CMO Motion.

and Fresenius Medical Care A.G. ("Fresenius") fraudulent transfer lawsuits. Judge Wolin never had occasion to resolve the Debtors' CMO proposal before the Third Circuit stayed all of the matters before Judge Wolin pending his eventual removal from these Chapter 11 Cases.

### (b)    The Fraudulent Transfer Adversary Proceedings

15.    An uncertified class action alleging fraudulent transfer claims was pending against certain of the Debtors, Sealed Air, and Fresenius on the Petition Date. This litigation related to certain corporate divesture transactions that took place between (i) certain of the Debtors and Fresenius in 1996 and (ii) certain of the Debtors and Sealed Air in 1998.

16.    On June 14, 2001, the Asbestos Property Damage Claimants Committee ("PD Committee) and the Asbestos Personal Injury Claimants Committees' ("PI Committee") filed a motion for the authorization to prosecute the alleged Fresenius and Sealed Air fraudulent transfers in the context of the Chapter 11 Cases (the "Motion for Authorization") (Docket No. 527).

17.    On March 12, 2002, the District Court entered an *Order re Fraudulent Conveyance Proceedings - (1) Authorization to Prosecute, (2) Appointment of Special Master, and (3) Cases Management Schedule* (the "Fraudulent Conveyance Proceedings Order," a copy of which is attached as Exhibit F) (Docket No. 1789). The Fraudulent Conveyance Proceedings Order (i) granted the Motion for Authorization, (ii) instructed the PD Committee and the PI Committee to file their proposed action as an adversary proceeding in the Chapter 11 Cases (iii) withdrew the reference to the Bankruptcy Court with respect to jurisdiction over the proceeding, and (iv) established a schedule for discovery in the proceeding. See Exhibit F. Specifically, the Fraudulent Conveyance Proceedings Order states as follows:

8

> The reference of this case to the Bankruptcy Court, Judge Judith K. Fitzgerald presiding, is hereby withdrawn with respect to the Motion for Authorization and any further proceedings that may take place concerning the fraudulent transfer claims that are the subject of the Motion for Authorization, including without limitation any adversary proceeding that may be filed hereinafter.

Exhibit F.

18.    Fraudulent transfer adversary proceedings were subsequently initiated against Sealed Air and Fresenius in the adversary proceedings entitled Official Committee of Asbestos Personal Injury Claimants, et al. v. Sealed Air Corp. et al. (Adv. No. 02-2210) and Official Committee of Asbestos Personal Injury Claimants, et al. v. Fresenius Medical Care Holdings, Inc., et al, (Adv. No. 02-2211). Shortly thereafter, Judge Wolin entered an order consolidating the two proceedings into one adversary proceeding, under case no. 02-2210 (the "Consolidated Adversary Proceeding"). See Order, dated March 28, 2002 (attached as Exhibit G) (Docket No. 5). Judge Wolin directed briefing and held hearings in the Consolidated Adversary Proceeding.

19.    In November 2002, the parties to the Consolidated Adversary Proceeding announced that they had reached agreements in principle to settle asbestos and fraudulent conveyance claims related to the respective transactions. Thereafter, negotiations ensued over the terms of the settlement. The Debtors' settlement of the claims against Fresenius was approved by the District Court in July 2003.

20.    On November 26, 2003, the PD Committee and the PI Committee filed their *Motion for an Order Approving, Authorizing, and Implementing [the Sealed Air] Settlement Agreement* (Adv. Docket No. 597) (the "Sealed Air Settlement Motion"), which requested Judge Wolin to approve a proposed settlement agreement (the "Sealed Air Settlement Agreement") pursuant to Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9019. However, due to

9

a stay imposed by the Third Circuit as a result of the proceedings to have Judge Wolin removed from the Chapter 11 Cases, no objection deadline or hearing date has ever been set for the Sealed Air Settlement Motion, and it remains pending before this District Court.

21.    Under the terms of the proposed Sealed Air Settlement Agreement, subject to certain conditions, Sealed Air would make the following payments upon confirmation of the Plan (i) five hundred twelve million dollars ($512,000,000) in cash, plus interest thereon from December 21, 2002 until the Plan's effective date, at a rate of 5.5% per annum compounded annually and (ii) nine million (9,000,000) shares of Sealed Air common stock.

22.    The Debtors largely agree with the proposed Sealed Air Settlement Agreement, but have raised limited issues with respect to a few provisions. These objections are summarized in the Disclosure Statement.

### (c)    The Debtors' Plan of Reorganization and New CMO Motion

23.    On November 13, 2004, the Debtors filed (amongst other documents) the following documents in these Chapter 11 Cases (collectively, the "Plan Materials"): (i) Plan, (ii) Disclosure Statement, (iii) Motion for Entry of an Order Seeking the Estimation of Asbestos Claims and Certain Related Relief (the "Estimation Motion"), (iv) Motion for Entry of a Case Management Order Establishing Protocols for Litigating Asbestos-Related Claims Following Plan Confirmation (the "New CMO Motion"), and (v) Motion for the Entry of an Order Approving Solicitation and Confirmation Procedures and Schedules for the Plan of Reorganization (the "Confirmation Procedures Motion")

24.    The Plan provides for, amongst other things, the creation of an asbestos trust, to which all allowed asbestos property-damage claims and asbestos personal-injury claims would

10

be channeled for recovery. The Plan further provides that a significant portion of the monies to fund this trust would be obtained by payments made pursuant to the Sealed Air Settlement Agreement.

25.    In separate papers that were filed concurrently with the Plan and New CMO Motion, the Debtors have proposed settlement criteria for both asbestos personal-injury claims through certain trust distribution procedures ("TDPs"). The Debtors hope that these TDPs can capture hoped-for settlements of many pending Asbestos PI Claims. Recognizing that not all asbestos claimants will meet the criteria set out in the TDPs and that some qualifying asbestos personal-injury claimants will elect not to participate in these proposed settlements, the Debtors realize that provision must also be made for litigation of non-settling asbestos claims. The New CMO Motion addresses this issue.

26.    By the New CMO Motion, the Debtors seek to institute such litigation protocols by which unsettled asbestos claims (including asbestos personal-injury claims and asbestos property-damage claims) could be effectively and efficiently resolved in the Chapter 11 Cases. In particular, the Debtors request either (a) entry of an order granting the Original CMO Motion, establishing pre-confirmation litigation protocols for the resolution of asbestos claims, or, (b) in the alternative, entry of an order granting the relief requested in the New CMO Motion, establishing post-confirmation litigation protocols to resolve unsettled asbestos claims. As stated in the New CMO Motion, although the process outlined in the New CMO Motion would afford the Debtors the opportunity to obtain timely confirmation of the Plan, the Debtors do not oppose entry of an order granting the Original CMO Motion, should the Bankruptcy Court consider the Original CMO Motion to be the more-appropriate request for relief.

11

27.    The pre-confirmation litigation mechanisms embodied in the Original CMO can

be summarized as follows:

- Pursuant to Bankruptcy Rule 3004, the Debtors would promptly file claims on behalf of all claimants who had lawsuits pending against the Debtors as of the Petition Date;

- The Debtors would also serve a court-approved claim form on counsel for these claimants;

- The claimants would then complete and return the form, which will provide information critical to the litigation that would follow;

- Grace would file omnibus Claims objections, Federal Rule of Civil Procedure 42 consolidation and Bankruptcy Rule 7056 summary judgment motions raising common issues for litigation before this Court;

- The Court could decide at an early stage whether to appoint a Federal Rule of Evidence 706 expert panel to facilitate the resolution of disputes over scientific issues and, in any event, those disputes could be resolved through expert discovery and Daubert proceedings;

- After the Court rules on the motions, the Debtors would then execute a court-approved notice program to advise all other claimants of the court's bar date; A claim form tailored to the court's liability rulings would be used by these new claimants to file their claims, expediting the completion of this last phase of the litigation; and

- A show cause hearing would be held after the bar date to provide these new claimants with the opportunity to challenge or seek modifications to the court's liability rulings.

28.    The New CMO Motion proposes, as an alternative, the following, five-step

process for resolving asbestos claims *after* confirmation of the plan:

(i)    Omnibus Objections and Summary Judgment.    Except in limited situations, the Debtors propose to use the information obtained from court-approved proof of claim forms and asbestos personal injury questionnaires, and initially file omnibus claims objections and, where necessary, move for summary judgment, requesting dismissal of asbestos claims that fail to meet certain threshold requirements for a valid claim, including:

12

- Asbestos claims that fail to comply with the requirements for completing and submitting the court-approved proofs of claim and asbestos personal injury questionnaires;

- Asbestos claims that are based upon unreliable scientific evidence of injury or causation;

- Asbestos claims that are subject to the statute of limitations defense;

- Asbestos claims that fail to allege the requisite exposure to the Debtors' products; and

- Asbestos claims that lack reliable evidence that the Debtors' products or conduct caused the claimed disease or property damage.

(ii)     <u>Rule 42 Trials</u>.  For those asbestos claims that withstand summary judgment scrutiny, but which present common issues capable of resolution on an aggregate basis, the parties would proceed to common issue trials.

(iii)    <u>Application of Common Issue Trial rulings to pending claims</u>.  The Debtors (or the asbestos trust established pursuant to the Plan) would file motions for summary judgment with respect to those individual claims or groups of claims that failed to state a claim under the court's common issue trial rulings.

(iv)     <u>Claims Review and Resolution Process</u>.  Upon resolution of the common issue trials, and any follow-on summary judgment motions, the New CMO Motion would provide for an individualized claims review by the Debtors (or the asbestos trust) for purposes of determining a settlement offer, that, if necessary, would be followed by a settlement procedure, including mandatory, court-supervised mediation.

(v)      <u>Jury Trial</u>.  Those holders of asbestos claims who reject the Debtors' settlement offer and/or for whom the mediation process is unsuccessful, will retain the right to a jury trial in the District Court.

29.     In either case, the Debtors seek the establishment of a process by which their liability for asbestos claims can be resolved in an efficient and effective manner pursuant to certain defined and sequential litigation protocols.

13

**Relief Requested**

30.    As a result of the above-referenced events, this District Court currently has jurisdiction over (i) the Sealed Air Settlement Motion and (ii) the Amended Original CMO Motion (and related pleadings) (collectively, the "Referred Matters"). By this Motion, the Debtors request that this District Court enter an order referring the Referred Matters to the Bankruptcy Court, so that the Referred Matters, which are integral to the Plan, can be considered in the same forum that is presently considering the Plan and the accompanying papers, including the New CMO.

**Argument**

I.    **This District Court has the Authority to Refer the Amended Original CMO and the Motion to Approve the Sealed Air Settlement Agreement to the Bankruptcy Court**

31.    The Bankruptcy Court has the authority to hear the Amended Original CMO Motion and the Sealed Air Settlement Motion because both matters are "core proceedings" that the District Court can refer to the Bankruptcy Court.

32.    In particular, 28 U.S.C. § 157(a) provides that, "[e]ach district court may provide that any or all cases under title 11 and any or all *proceedings arising under title 11 or arising in or related to a case* under title 11 shall be referred to the bankruptcy judges for the district." (emphasis added). In turn, 28 U.S.C. § 157(b)(1) provides as follows;

> [b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. § 157(b)(1).

14

33.     In the Third Circuit, a proceeding is a core proceeding "(1) if it invokes a substantive right provided by title 11 or (2) if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case." In re Integrated Health Services, Inc., 291 B.R. 615 618 (Bankr. D.Del. 2003), quoting Halper v. Halper, 164 F.3d 830, 836 (3d Cir. 1999); see also Beard v. Braunstein, 914 F.2d 434, 444 (3d Cir. 1990). As the Bankruptcy Court has noted, "[s]imply put, if the claim could not have been brought in the absence of a bankruptcy filing, the claim is a core proceeding." In re PSA, Inc., 2003 WL 22938894 (Bankr. D.Del. Dec. 8, 2003) (attached as Exhibit H).

34.     The Sealed Air Settlement Motion and Amended Original CMO Motion are both "core proceedings." The Sealed Air Settlement Motion is a core proceeding under 28 U.S.C. 157(b)(2), which pertains to matters including, among other things, "proceedings to determine, avoid, or recover fraudulent conveyances." This provision grants the Bankruptcy Court core jurisdiction over lawsuits to recover fraudulent transfers. See Granfinanciera, S.A. v. Nordberg, 109 S.Ct. 2782, 2806 (1989); Matter of Total Technical Services, Inc., 142 B.R. 96 (Bankr. D.Del. 1992). This provision also gives the Bankruptcy Court jurisdiction to consider settlement agreements relating to such lawsuits. See Professionals, Inc. v. Berry, 16 F.3d 411 (4th Cir. 1994); In re Nangle, 288 B.R. 213 (8th Cir. 2003).

35.     Similarly, the Amended Original CMO Motion is a core proceeding under 28 U.S.C. 157(b)(2)(B), because the Amended Original CMO Motion concerns "the allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11..." Further, the Bankruptcy Court already had jurisdiction over the Amended Original CMO Motion (it was set for hearing by the Bankruptcy Court during the Debtors' February 25,

15

2002 omnibus hearing), which shows that the Bankruptcy Court believes it has the authority to consider the Amended Original CMO Motion.

36.     Courts have recognized that bankruptcy courts have jurisdiction to adjudicate issues related to personal injury claims up to the point at which such claims must be determined at trial. See In re UAL Corp., 310 B.R. 373, 382-83 (Bankr. N.D. Ill. 2004) (recognizing that the personal injury exception of 28 U.S.C. § 157(b)(2)(B) was not intended to limit the bankruptcy court's "jurisdiction over personal injury claims beyond removing the trial of those claims to the district court," and that bankruptcy courts have the authority to hear and determine gateway issues of liability as to such personal injury claims).    Judge Fitzgerald acknowledged as much during the Debtors' November 15, 2004 omnibus hearing.    See Transcript from Debtors' November 15, 2004 Omnibus Hearing, pg. 34 (relevant portions are attached as Exhibit I) ("You know, it's not atypical that the Bankruptcy Court gets up to the point of the trial.").    Such non-trial adjudicative matters include, among other things, the Litigation Protocols (except jury trial) that are the subject of the New CMO Motion. See  In re Dow Corning Corp., 215 B.R. 346, 359 (Bankr. E.D. Mich. 1997) (finding that the bankruptcy court had jurisdiction to consider a summary judgment motion asserting that an asbestos-related personal injury claim against the estate was legal unenforceable).    Accordingly, upon entry of the proposed Order granting this Motion, the Bankruptcy Court will have full jurisdictional authority to hear the Amended Original CMO Motion as well as the New CMO Motion, including the authority to enter the corresponding order implementing the litigation protocols detailed therein.

II      **This District Court Should Refer the Sealed Air Settlement Motion and the Amended Original CMO Motion (and Related Pleadings) to the Bankruptcy Court**

37.     It is well established that a "district court can refer both core and non-core proceedings to the bankruptcy judge pursuant to § 157(a) and the general order of reference, [but] the bankruptcy court can only issue a final decision in core proceedings." Phar-Mor Inc. v. Coopers & Lybrand, 22 F.3d 1228, 1235 (3d Cir. 1994). When deciding whether to refer a particular matter, this District Court has considered such factors as (i) the bankruptcy court's familiarity with the case, (ii) whether the matter deals primarily with bankruptcy-law issues, (iii) interests of judicial efficiency, and (iv) whether the matter would materially affect the debtor's bankruptcy estate. See, e.g., Kaiser Aluminum & Chemical Corp. v. Monument Select Insurance Corp., 2004 WL 2223297, *2 (D. Del Sep. 30, 2004) (a copy of which is attached as Exhibit J). All of these considerations weigh in favor of this District Court referring the Referred Matters to Bankruptcy Judge Fitzgerald.

(a)     **Resolution of the Sealed Air Settlement is a Prerequisite to Plan Confirmation**

38.     The Plan provides for, among other things, the creation of a post-confirmation trust, under 11 U.S.C. § 524(g), to which all allowed asbestos claims will be channeled for recovery. The Plan proposes that the asbestos trust be funded with an amount of money and securities the court determines pursuant to the Estimation Motion to be sufficient to enable the asbestos trust to pay all Asbestos Claims in full, once they are settled (pursuant to certain trust distribution procedures) or adjudicated on the merits under the New CMO Motion. The Plan specifically contemplates that the post-confirmation trust will be funded with approximately $1 billion that would be owed pursuant to the Sealed Air Settlement Agreement.

17

39.     The Sealed Air Settlement Motion has not been approved, and jurisdiction over the matter currently lies with this District Court. However, given the dependency of the Debtors' Plan upon the funds that would be owed on account of this settlement agreement, its resolution is a prerequisite to confirmation of the Debtors' Plan. Therefore, the Sealed Air Settlement Agreement must be resolved before the Plan is confirmed.

40.     The interests of judicial efficiency and consistency would be best-served if the Sealed Air Settlement Agreement was resolved in the same forum as the Plan. The Bankruptcy Court has jurisdiction over the Plan and is extremely familiar with these Chapter 11 Cases. Further, the Sealed Air Settlement Motion's importance to the Plan warrants its consideration in the same forum. Finally, the Bankruptcy Court has expressed a willingness to address all of the Plan Materials.

####      (b)     Judicial Efficiency Calls for the Referral of the Amended Original CMO Motion

41.     The New CMO Motion requests that the Bankruptcy Court adopt either the procedures proposed in the Amended Original CMO Motion or the New CMO Motion. As described above, these two pleadings present alternative procedures for determining the allowance/disallowance of asbestos claims. The New CMO Motion provides that, should the Bankruptcy Court determine that the procedures in the Amended Original CMO Motion are preferable to the provisions in the New CMO Motion, it may adopt the procedures in the Amended Original CMO Motion.

42.     The Bankruptcy Court, however, does not currently have jurisdiction over the Amended Original CMO Motion. Therefore, to the extent the Bankruptcy Court decides to adopt the procedures proposed by the Debtors in the Amended Original CMO Motion, it should have

18

such jurisdiction before adjudicating the Amended Original CMO Motion and the specific pleadings related thereto that it transferred pursuant to the Fitzgerald Transfer Order and Corrected Fitzgerald Transfer Order.

43.    The Debtors believe that the Bankruptcy Court is the most-appropriate forum to consider all of the Plan Materials as well as the Amended Original CMO Motion.   Judge Fitzgerald already possesses extensive knowledge and familiarity with the Chapter 11 Cases due to her involvement in these cases and various related adversary-proceedings over the course of the past three years.  Therefore, the interests of judicial economy and consistency would be best served if the Court transferred jurisdiction over the development of procedures for addressing asbestos personal injury claims to Bankruptcy Judge Fitzgerald.

44.    Further, the Bankruptcy Court already has jurisdiction over asbestos property damage claims and, but for Judge Wolin's request to receive jurisdiction over the Amended Original CMO Motion, the Bankruptcy Court would likely still have jurisdiction over the procedures for the Amended Original CMO Motion and the other pleadings that the Bankruptcy Court transferred to this District Court.

45.    The Bankruptcy Court has jurisdiction over all of the Plan Materials, including the Plan, Disclosure Statement, Estimation Motion, Confirmation Procedures Motion and New CMO Motion, and has already scheduled objection deadlines with respect to such matters. Given the interdependency of all of the Plan Materials and the relatedness of the Amended Original CMO Motion, the Bankruptcy Court is the most-appropriate forum to consider both the Plan Materials and the Amended Original CMO Motion.

19

46.     Judge Fitzgerald has already indicated a willingness to consider all of the Plan Materials and the Amended Original CMO Motion, as evidenced by (i) her order directing the Debtors to file the Plan and (ii) comments made during the Debtors November 15, 2004 omnibus hearing. See Exhibit I, pps. 27-28.

47.     Finally, there would be no prejudice or wasted judicial resources if the Court enters an order referring the Referred Matters to the Bankruptcy Court. This District Court has not conducted any hearings or requested any briefing with respect to the Referred Matters. Therefore, the requested relief (i) would not affect the existing positions of interested parties and (ii) would not result in any previously invested judicial resources going to waste.

### Notice

48.     No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to each official committee appointed by the United States Trustee and (iv) those parties that requested papers under Fed. R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

### No Prior Request

49.     No prior request for the relief sought in this Motion has been made to this or any other court.

20

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form of the proposed order attached hereto as <u>Exhibit A</u>, (i) referring certain matters to Bankruptcy Judge Judith K. Fitzgerald, and (ii) granting such other and further relief as is just and proper.

Respectfully Submitted:

Dated: November 24, 2004

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Michelle Browdy
Janet S. Baer
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG,
JONES & WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Counsel for Debtors and Debtors in
Possession

DOCS_DE:103015.1