## Exhibit I

Transcript from Debtors' November 15, 2004 Omnibus Hearing

1      1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              . Case No.   01-1139 (JFK)
                                    .
                                    .
  W.R. GRACE & CO.,                 .
                                    . 824 Market Street
                                    . Wilmington, Delaware 19801
                  Debtor.           .
                                    . November 15, 2004
. . . . . . . . . . . . . . . . . . 12:02 p.m.

TRANSCRIPT OF HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:            Pachulski, Stang, Ziehl, Jones &
                            Weintraub, P.C.
                            By:  DAVID CARICKHOFF, ESQ.
                            919 North Market Street, 16th Fl.
                            Wilmington, Delaware  19899

                            Kirkland & Ellis LLP
                            By:  JANET BAER, ESQ.
                            200 East Randolph Drive
                            Chicago, Illinois  60601

                            Kirkland & Ellis LLP
                            By:  DAVID BERNICK, ESQ.
                            200 East Randolph Drive
                            Chicago, Illinois  60601
                            (Telephonic appearance)

Audio Operator:             Sherry Scaruzzi

        Proceedings recorded by electronic sound recording,
                            transcript
            produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**

2      2                          2

J & J Court Transcribers, Inc.

```
3    3                              3
```

APPEARANCES (CONT'D):

For the Debtors:                D'Agostine, Levine Parson &
                                    Neeburn
                                By:  LOUIS LEVINE, ESQ.

For the Equity Committee:       Kramer Levin Naftalis & Frankel,
                                LLP
                                By:  GARY M. BECKER, ESQ.
                                919 Third Avenue
                                New York, New York   10022

For the Equity Committee:       Front Point Finan
                                By:  VINCENT DANIEL

For the Equity Committee:       Neuberger Perman
                                By:  ELLIOTT E. EIMAN

For the Equity Committee:       Ardsly Partners
                                By:  CHARLES ROSE

For the U.S. Trustee:           Office of the U.S. Trustee
                                By:  FRANK PERCH, ESQ.
                                844 King Street, Suite 2207
                                Lock Box 35
                                Wilmington, Delaware   19801

For the P.D. Committee:         Bilzin Sumberg Baena Price &
                                Axelrod LLP
                                By:  JAY SAKALO, ESQ.
                                200 South Biscayne Boulevard
                                Suite 2500
                                Miami, Florida   33131

For the P.D. Committee:         Ferry, Joseph & Pearce, P.A.
                                By:  THEODORE TACCONELLI, ESQ.
                                824 Market Street, Suite 904
                                Wilmington, Delaware   19899

For the Town of Acton:          Nutter, McClennen & Fish
                                By:  THOMAS BEAN, ESQ.
                                World Trade Center West
                                155 Seaport Boulevard
                                Boston, Massachusetts   02210

4      4                         4

APPEARANCES (CONT'D):

For the Town of Acton:          Anderson & Kreiger
                                By:  STEPHEN ANDERSON, ESQ.
                                43 Thorndike Street
                                Cambridge, Massachusetts

For the Futures Rep:            Phillips, Goldman & Spence, P.A.
                                By:  JACK PHILLIPS, ESQ.
                                1200 North Broom Street
                                Wilmington, Delaware  19806

For the ACE:                    Campbell & Levine
                                By:  MARLA ROSOFF ESKIN, ESQ.
                                800 North King Street, Suite 300
                                Wilmington, Delaware  19801

For the Unsecured Committee:    Stroock & Stroock & Lavan
                                By:  LEWIS KRUGER, ESQ.
                                1809 Maiden Lane
                                New York, New York  10038-4982

For Sealed Air Corporation:     Skadden, Arps, Slate, Meagher &
                                Flom LLP
                                By:  MARK CHEHI, ESQ.
                                One Rodney Square
                                Wilmington, Delaware  19801

For the Trade Committee:        Duane Morris
                                By: MICHAEL LASTOWSKI, ESQ.
                                1100 North Market Street
                                Suite 1200
                                Wilmington, Delaware  19801-1241

Financial Advisors to           Blackstone Group
Debtors:                        By:  PAMELA ZILLY
                                (Telephonic appearance)

For the Shareholders:           KR Capital Advisors
                                By:  DAVID PINCUS
                                (Telephonic appearance)

For the Scotts Company:         Vorys, Sater, Seymour and Pease,
                                LLP
                                By:  TIFFANY COBB, ESQ.

                 J & J Court Transcribers, Inc.

5     5                           5

                                  BOB SIDMAN, ESQ.
                                  52 East Gay Street
                                  Columbus, Ohio   43216

APPEARANCES (CONT'D):

For Pernini Corp.:                Loizides & Assoc.
                                  By:  DEBBIE WESTWOOD, ESQ.
                                  (Telephonic appearance)

For Reaud Morgan & Quinn:         Stutzman, Bromberg, Esserman &
                                  Plifka, P.C.
                                  By:  DAVID PARSONS, ESQ.
                                       SANDER ESSERMAN, ESQ.
                                  2323 Bryan Street, Suite 2200
                                  Dallas, Texas   75201
                                  (Telephonic appearance)

For the State of
Massachusetts:                    Massachusetts Attorney General's
                                     Office
                                  By:  CAROL IANCU, ESQ.
                                  One Ashburton Place, Room 1813
                                  Boston, Massachusetts
                                  (Telephonic appearance)

For ERISA Class Action            Lowenstein Sandler
Plaintiffs:                       By:  IRA LEVEE, ESQ.
                                  65 Livingston Avenue
                                  Roseland, New Jersey   07068
                                  (Telephonic appearance)

For Zonolite Attic
Insulation Claimants:             By:  DARRELL SCOTT, ESQ.
                                  (Telephonic appearance)

For ZAI Claimants:                Richardson, Patrick, Westbrook &
                                  Brickman, LLC
                                  By:  ED WESTBROOK, ESQ.
                                  174 East Bay Street
                                  Charleston, South Carolina 29401
                                  (Telephonic appearance)

For Various Plaintiffs in
Scotts Litigation:                By:  ROSS STOMEL, ESQ.
                                  (Telephonic appearance)

For W.R. Grace:                   Kirkland & Ellis
                                  By:  THEODORE FREEDMAN, ESQ.
                                  153 East 53rd Street
                                  New York, New York   10022

6       6                           6

(Telephonic appearance)

7      7                              7

     THE COURT:  Please be seated.  Do we have the plaintiffs on the line yet?  No?  Okay.

                (Pause)

     THE COURT:  Hello?

     UNIDENTIFIED SPEAKER:  Hello.

     THE COURT:  Is this the W.R. Grace matter?

     UNIDENTIFIED SPEAKER:  I hope so.

     THE COURT:  Okay.  Good.  This is Judge Fitzgerald. I had an invalid code before, so I just wanted to double check. This is the matter of W.R. Grace, bankruptcy number 01-1139. Folks on the phone, can you please put your mute buttons on? Folks on the phone, can you please put your mute buttons on? Thank you.  The parties I have participating by phone are Pamela Zilli, David Pinkus, Debbie Westwood, Tiffany Cobb, Bob Sidman, David Parsons, Sandy Esserman, Bruce Levin.  That's all.  I'll take entries of appearance from people in Court please.  Good afternoon.

     MR. BERNICK:  Yes, Your Honor.  This is David Bernick.  I couldn't hear very well, but I'm on the phone.

     THE COURT:  All right, Mr. Bernick.  Thank you.

     MS. IANCU:  This is Carol Iancu from Massachusetts Attorney General's Office.  I didn't hear my name either.

     THE COURT:  I didn't have you listed, ma'am.  I'm sorry.  Would you spell your last name?

     MS. IANCU:  Certainly.  It's I-a-n-c-u.

8    8                              8

                    THE COURT:   Thank you.

                    MR. LEVEE:   Your Honor, this is Ira Levee, L-e-v-e-e,
for the ERISA class action plaintiffs.   I didn't hear my name,
either.

                    THE COURT:   All right.   Thank you.

                    MR. SCOTT:   This is Darrell Scott, Your Honor,
Zonolite claimants.

                    THE COURT:·  I'm sorry, sir.   Who were you -- what was
your name, please?

                    MR. SCOTT:   Darrell Scott.

                    THE COURT:   Scott.   Okay.   For who?

                    MR. SCOTT:   Zonolite attic insulation claimants.

                    THE COURT:   All right.   Thank you.

                    MR. WESTBROOK:   And, Your Honor, Ed Westbrook for the
ZAI claimants.

                    THE COURT:   Okay.   Thanks.   Is that it?

                    MR. STOMEL:   Ross Stomel, S-t-o-m, as in Mary, e-l.

                    THE COURT:   Okay.   Who are you representing?

                    MR. STOMEL:   Various plaintiffs in the Scotts
litigation.

                    THE COURT:   Is that everyone?

                    MR. FREEDMAN:   Theodore Freedman, for Grace.

                    THE COURT:   Okay.   Ms. Baer?

                    MS. BAER:   Good morning, Your Honor.   Janet Baer on


                    J & J Court Transcribers, Inc.

9     9                              9

behalf of W.R. Grace.  Your Honor, before we go to the agenda,
I thought I would address where we stand in the plan of
reorganization.  As I'm sure everybody in the courtroom is
curious if they have not been checking their electronic docket.
On Saturday of this month, October 13th, the debtors filed its
Chapter 11 plan of reorganization, its disclosure statement, an
estimation motion requesting that the Court estimate asbestos-
related claims, a confirmation procedures motion, and a case
management motion asking for the Court to define and resolve
asbestos-related liabilities.

         Your Honor, the plan is an integrated program for
defining and paying all allowed claims in full.  It leaves most
creditors unimpaired.  It is coupled with and in conjunction
with an estimation motion where the debtors propose that this
Court set a notice, a bar date for known asbestos claimants,
those that were pending at the time the Chapter 11 case was
filed, and a questionnaire process which will be used, Your
Honor, to assist the debtors and the Court in determining both
the feasibility of the plan and to cap Grace's liability for
asbestos-related claims other than asymptomatic claims, which
were dealt with under the Chapter 11 plan.

         Your Honor, the revised case management motion is
filed before this Court but also filed in the District Court.
As you may recall the reference was not sent to this Court
vis-a-vis the case management motion before.  The original case

10    10                        10

management motion that we filed at the beginning of this case

addressed a pre-confirmation procedure for dealing with common

issues related to asbestos liabilities.  Now, Your Honor, with

this revised case management motion we are seeking to preserve

the rights of asbestos claimants to litigate their claims in

the post-confirmation process utilizing, again, a common issue

litigation.  With this case management order and case

management procedure, Your Honor, we will be able to move

forward with the Chapter 11 plan and disclosure statement

process without waiting to resolve this so long as the

procedures are set up.  Your Honor, this Chapter 11 plan is not

a consensual plan at this time, but all of the parties continue

to talk.  They talked right up until the moment it was filed,

and they are still in discussions.  Grace is still very

committed to resolving and hoping to achieve consensus with as

many constituencies or all constituencies.  Your Honor, what we

have done is we have set the estimation motion for the Court's

omnibus hearing on December 20th.  That, Your Honor, is a

procedures motion at this point.

        We are asking the Court, on the 20th of December, to

approve the procedures and set a bar date, approve the

questionnaire and approve the procedures for sending out the

questionnaire so the estimation process can begin.  It calls

for discovery and ultimately, then, a hearing on estimation.

        Your Honor, we've also set the confirmation

J & J Court Transcribers, Inc.

11    11                                    11

procedures motion for December 20th at the omnibus hearing.
And, Your Honor, today we have filed, and I will present to the
Court a motion for leave to revise the scheduling order so that
the disclosure statement in this matter can also be heard on
December 20th.  Your Honor --

            THE COURT:  What?  They have a hearing on the
disclosure statement?

            MS. BAER:  Yes, Your Honor.  That is what we're
asking for.

            THE COURT:  I doubt it.

            MS. BAER:  That's why, Your Honor --

            THE COURT:  I seriously doubt it.  In fact, no.  We
need a different date.  I can do a status report, but you know,
if it's not a consensual plan I can't take a disclosure
statement on an omnibus date when I've got 11 other cases that
are set for hearing that day.  I can't do it.

            MS. BAER:  Your Honor, that's exactly why we did not
send out notice of the documents and notice of the disclosure
statement hearing.  That was what we wanted to address with you
today, which is when would you like to hear the disclosure
statement?  And for that matter, whether you want to hear the
estimation procedures motion and the solicitation procedures
motion on the 20th or at a different date?

            THE COURT:  Well, with respect to the solicitation
procedure, I think maybe that's not a bad idea, to try to get

12      12                              12

that process in place.  Is it tied to the estimation motion, or
not?

          MS. BAER:  Your Honor, the estimation and the
disclosure statement solicitation and solicitation of votes
will run hand-in-hand.  They will run simultaneously, where as
the discovery with respect to estimation will occur while we
are soliciting votes on the Chapter 11 plan.  So, in that
respect they're not tied with each other but they do run
together.

          THE COURT:  Well, maybe the best thing to do is set
them all more or less for an objection and response date and
let's have a status conference.  I don't know whether I can get
to any of them.  Are any of them going to require evidentiary
matters?  I guess that's the issue.

          MS. BAER:  Your Honor, with respect to the estimation
motion, because we are asking for approval of a bar date and
approval of a questionnaire, I suppose it is possible that
there would be evidence, or at least some significant
discussion about the questionnaire, somewhat likely had
discussions vis-a-vis our proof of claims before.  Whether it
would actually be evidence I highly doubt, but there could be
some argument on that and on the process itself.

          THE COURT:  All right.  Well, I think, for both the
questionnaire matter, the solicitation process, and the

                    J & J Court Transcribers, Inc.

13     13                              13

estimation procedures motion, they ought to be set for December
20.   I'm not sure we're going to get through them all, but I
think we ought to at least get objections in and then start the
discussion.   I don't -- I doubt that we'll get them finished.
I'm not sure there's much point going forward with the
disclosure statement hearing itself until those matters are
addressed.   Is there?   I haven't seen the document, so I don't
--

          MS. BAER:   Your Honor, the advantage, of course, is
we would like to get objections to the disclosure statement in
so we can narrow where there are issues vis-a-vis, again,
disclosure, whether or not there's adequate information or not.
And I think the sooner we get that done the sooner we can
actually get to the point of having the disclosure statement
approved.

          THE COURT:   Okay.   Parties on the phone, please put
your mute buttons on.   Mona, can you call back to Pittsburgh,
see when we might be able to get a date to do I'd say a one-day
hearing on the disclosure statement?   I'm not sure whether
we'll need evidence or not, but I think we ought to at least
get something in place for a status conference.   Folks on the
phone, please put your mute buttons on.   Does somebody not have
a mute button?   Is someone on the speaker phone?   Okay.   Look,
folks, if I can't get responses I'm simply going to disconnect
and you can either fly here and I'll wait an hour for you to
get here, or you can't participate by phone anymore.   Really.
I'm sorry but this is just rude.   Please take us off the

14    14                              14

speaker phone and put your mute buttons on.

          THE CLERK:  Are we going to --

          THE COURT:  A day.

          THE CLERK:  In January?

          THE COURT:  I think as soon as we can get it in after

the December 20th hearing date would probably be good, because

we need to tie the objection dates to that date, so --

          THE CLERK:  The end of January?

          MS. BAER:  Your Honor, ideally mid-January would be

--

          THE CLERK:  Of January.

          THE COURT:  Okay.  All right.  Let's come back to

this issue after I get a date from Pittsburgh, to see what we

can do.  Yes, sir?

          MR. CHEHI:  Your Honor, if I can just be heard for a

moment on the scheduling issue --

          THE COURT:  Yes.

          MR. CHEHI:  -- as well, if I could?  Mark Chehi of

Skadden, Arps, Slate, Meagher & Flom, for Sealed Air

Corporation, which is a very major, significant creditor in the

case, as well as a member of the creditors' committee.  Your

Honor, I'll be brief, but it's important, I think, in light of

the scheduling issues.  Sealed Air feels compelled, today, to

advise the Court and other parties in interest that the

                 J & J Court Transcribers, Inc.

15    15                          15

reorganization plan that has been filed is not in our view

consistent at all and feasible, and it is non-confirmable

because it is per se inconsistent with the Sealed Air

settlement agreement that was previously filed with the Court.

As Your Honor may recall, the Sealed Air settlement agreement

resolves alleged fraudulent transfer and punitive successor

liability claims --

THE COURT:  I don't honestly know what it resolves.

I didn't hear that matter.  And frankly, I haven't seen the

settlement agreement.  I think I saw an order that was signed

by Judge Wolin that approved it, but frankly I couldn't find it

on the docket, so I don't know what there is.

MR. CHEHI:  It hasn't been approved --

THE COURT:  Oh.

MR. CHEHI:  -- under the plan, Your Honor.  I --

THE COURT:  Then how can it be inconsistent with the

settlement agreement?  How can the plan be inconsistent with an

agreement that's not been approved?

MR. CHEHI:  You're right, Your Honor.  There's been

an agreement that's actually been signed by parties subject to

Court approval, and it is a lynchpin of this proposed plan of

reorganization because under it all the various litigation

claims, alleged litigation claims asserted against our client

would be resolved with a payment of approximately a billion

dollars of value, cash and other property into the asbestos

16      16                              16

trust pursuant to the plan.  But Sealed Air would not, if the
plan goes forward, with the terms of the plan as stated, being
inconsistent with the settlement agreement, not be obligated
to, you know, fund that money.  And in fact, Sealed Air would
object to that plan going forward.  We thought that, at this
early juncture, these --

        MR. BERNICK:  Your Honor, there's somebody that's got
music on the phone here.

        THE COURT:  I know, Mr. Bernick, and I'm really
sorry.  But this is the last phone hearing I'm doing in this
case.  I had this same problem last month, so I apologize to
all counsel who are not being this rude to your colleagues and
to this Court, but this is the last phone participation in this
case, the last one.  I'm sorry, Mr. Chehi, go ahead.

        MR. CHEHI:  That's all right, Your Honor.  Again, and
we just wanted to make this point at this early juncture --

        THE COURT:  Pardon me.  Folks, if the music doesn't
stop I'm disconnecting.  Now, who is it who has music on, or do
you have us on hold so I'm -- this is preaching to the choir?

        MR. BERNICK:  Your Honor, what you might do is just
go through the list and ask for all --

        THE COURT:  Well, I think, Mr. Bernick, the problem
is going to be if somebody has me on hold they're not going to
respond, because we're on hold.

                J & J Court Transcribers, Inc.

MR. BERNICK: That's my point.

THE COURT: Why on earth you would call in and then put somebody on hold is beyond me. But nonetheless, that seems to be the situation that we're faced with, so -- when I find out who it is, Mr. Bernick, I may do a rule to show cause. This is really ridiculous. I apologize, Mr. Chehi. Please go ahead.

MR. CHEHI: No need to apologize, Your Honor. In sum, we just wanted to let all parties in interest know that given the plan documents that have been filed, the disclosure surrounding it, the fact that the plan, you know, intends to be inconsistent with the terms of the Sealed Air settlement as proposed and is signed by the various parties in interest, that Sealed Air will object to that, and the plan is inconsistent with it and we would not be in a position to make the funding of the asbestos trust.

THE COURT: Where is the document that you're saying that the plan is inconsistent with?

MR. CHEHI: It was filed with a motion to approve the Sealed Air settlement agreement.

THE COURT: When and where?

MR. CHEHI: I believe it was November 26th of this past year.

THE COURT: 2003?

MR. CHEHI: Yes.

THE COURT: And it was filed in the District Court?

MR. CHEHI: I believe that's correct.

18    18                              18

        THE COURT:   So, you need a District Court Judge to

approve it?

        MR. CHEHI:   I believe it -- under the debtor's plan

it's contemplated that the issues would be addressed pursuant

to the plan.   The plan provides that the Sealed Air settlement

agreement would be approved as amended in a form acceptable to

the debtors addressing their putative objections, and that

would be the basis for the cash infusion into the asbestos

trust under the plan, which is, you know, obviously the

lynchpin of the plan.   And we wanted to let the Court know, at

this juncture, that we see significant inconsistencies there,

and thought that was important for all parties to know at this

juncture.

        THE COURT:   Okay.   Well, since I haven't seen either

one, thank you for the heads up, but I'm -- at this point I

don't -- I can't make any comments about it.

        MR. CHEHI:   You're welcome, Your Honor.   I didn't

expect any.

        MS. ESKIN:   Good morning, Your Honor.   Marla Eskin

for the asbestos claimants' committee.   In all honesty, I have

not reviewed the pleadings that were filed this weekend, but I

would -- I am sure that the committee is going to need more

time to respond than December 3rd.   I believe that's the

objection deadline.   With the holidays coming up it would be

                J & J Court Transcribers, Inc.

19    19                           19

very difficult to -- to do that.

        THE COURT:  Oh, no.  That's why I'm looking for a
date in January or thereabouts for a disclosure statement
hearing.  Oh, you mean to the other motion?

        MS. ESKIN:  The other motions.  The disclosure
statement -- the other motions, there are several other
motions, an objection deadline.  I think this was -- I don't
think this was filed on shortened notice, but filed right at
the deadline.  If we could have an extension to answer that it
would be quite helpful.

        THE COURT:  Not -- and put them on the December dates
because I can't get ready.  If you file your responses late
then the replies come in late, and then I can't get prepared.
So, the choice is either we don't do it December 20th of I
think I have to stick with the deadline.

        MS. ESKIN:  Well then, I would ask that we wait until
January.  December 3rd, with the -- it's just -- you know,
three weeks away, one of those weeks is the holiday week, a lot
of people are traveling, and that is going to be very, very
difficult.  So, if we cannot extend the date, if it's an issue
with the Court, then we would ask that it not be heard.

        THE COURT:  Well, apparently I have hearing dates
available in Pittsburgh on January 20th, but that's only going
to be the morning.  I don't have the afternoon.  And I have
January 21st, which is a Friday.  Maybe what I can do is move

20    20                              20

my January 21st motions to Thursday and do this January 21st,
which is Friday.

          MS. ESKIN:   That would be fine.

          MR. BERNICK:   Your Honor, this is David Bernick.   I
mean, obviously these are important matters and people should
have an opportunity to respond.   But, you know, we're really at
a very, very critical point in the case, and if Your Honor were
to schedule it on the 21st of January we would then really want
a strong indication from the Court that there's not really
going to be an extension of that date, that that's when we're
going to be having these things heard.

          THE COURT:   Oh, I wouldn't intend to extend it, Mr.
Bernick.   Once I -- you know, reserve a day for these motions I
think that's what they will be.   My concern, though, is I'm
sure there will be some discussion about both of the procedural
motions that have been filed, and that will probably take, a
guess, a couple of hours to resolve.   That doesn't leave much
time for the disclosure statement hearing.   But maybe what we
can do is start addressing some of the objections, if there are
any, to the disclosure statement, and see whether or not there
might be a round of amendments that will go forward before a
formal hearing.

          MR. BERNICK:   Right.

          THE COURT:   If that --

          MR. BERNICK:   It might also help if -- I don't know

                    J & J Court Transcribers, Inc.

how many people, and what constituencies are going to be filing

objections to the -- if there were some effort to -- to have

people, you know, one person speak in part to a given issue,

and if others want to chime in, then, you know, obviously

that's fine.  But it should be limited.  But that way we can --

maybe it will be a little bit more efficient at the hearing.

        THE COURT:  Well, I think the other thing that will

help, and yes, I agree, I mean, to the extent that parties have

the same objection I don't need to hear it more than once.  If

there's a slightly different interest involved than something,

and something needs to be added to the first argument, then I

guess I'll hear it.  But I don't expect to go through

repetitious argument.  I think the thing that would also help

is to have the debtor basically prepare a summary chart of the

particular provision of the -- let's talk for the moment about

the disclosure statement that is objected to, who raised the

objection and what it is, and what the debtor's response -- or,

I'm saying debtor, whoever the plan proponents are.  I don't

even know at this point.  Is it just the debtors?

        MS. BAER:  At this point, Your Honor, it is.  We

would hope that it would be more than that by the time we get

there.

        THE COURT:  Okay.  So, the plan proponent's response

to it, because some of the objections probably can be worked

out without the need for a hearing once the debtor sees what

22    22                            22

they are, and others probably will not be worked out and will
need a hearing.  So, if it's something that you can work out I
think that this affords plenty of time to do that once we set
an objection date that keys into this status conference on the
disclosure statement date.

            MS. BAER:  We'll do that, Your Honor.

            MR. BERNICK:  We'd be happy to prepare that.

            THE COURT:  All right.  So, let's pick some -- when
would the normal response and hearing and objection dates be
for hearings that are set January 21st?

            MS. BAER:  It's usually 14 days prior to the hearing,
which is when the objections would be due.

            THE COURT:  So, that's the seventh of January.  I
think we could shorten that time by a week.

            MR. BERNICK:  Maybe if, in light of the amount of
time and the desirability of being able to -- you know, to
present some summary charts, maybe if we could have the
objection date be at least a little bit earlier than that, it
might help out.  It might help also save the vacations of some
the people that are involved, or at least some portions of
them.

            THE COURT:  Okay.  I think if we set an objection
date of December the let's say 21st, that gives everybody five
weeks after the date that they were filed to get objections

together.  That should surely be enough for everything that the
debtor filed last Friday, whatever those motions are, and the
disclosure statement.  So, objections will be due December 21.
And then, the -- and replies the following week, December 28.

            MR. BERNICK:  Um --

            MS. BAER:  Your Honor, because of the holidays I'm
wondering if maybe it makes sense to go to the beginning of
2005 on that.

            THE COURT:  All right.  That's probably realistic.  I
want the debtor to have time to meet with the parties between
the time that the objection and replies are due.  How about --
I'll say January 4th then.  But then, between the fourth and
the hearing on the 21st, I expect the debtor to get together
with the various parties and see what can be resolved.  So, I
need a date by which the charts are then due.  How about the
13th?  That gives the debtor ten days to see what can be
resolved.

            MR. BERNICK:  Yes.  I think that's fine.

            THE COURT:  Okay.  January 13th.  And the hearing
will be January 21 in Pittsburgh.  Mona, will you let Winnie
know that she has to change motions?  Okay.  Thank you.  At
nine o'clock.  And I'll just reserve the day.  Now, this will
be the two procedure motions and the status -- well, I'm
calling it a status conference.  We'll start running through
the objections to the disclosure statement just to see which
are going to actually survive, which won't, in terms of the
parties' plans, and which may take an evidentiary hearing, if

necessary.  I doubt that there should be much evidence
necessary at the disclosure statement stage, but I'll reserve
that until I see it, and see what the objections are.

          MS. BAER:  Your Honor, in our notice should we
indicate it's a status on the disclosure statement, or that it
is the disclosure statement hearing?

          THE COURT:  No.  I think you better set it for the
disclosure statement hearings so everybody knows that the
objections are due.  And I intend to start running through the
objections.  I'm just not sure we're going to get it finished
that day.

          MS. BAER:  Thank you, Your Honor.  We'll do it that
way.

          THE COURT:  The next week there are Delaware motions,
the 24th, the Monday is Delaware motions.  So, if we don't get
done, depending on what you have on your omnibus date, we might
be able to continue that process that following Monday here in
Delaware, but I won't know that until you know what motions
you're going to have on your omnibus hearing dates.

          MS. BAER:  Right.  Your Honor, what that does not
address is the case management motion, which again, right now
we believe the jurisdiction of that is vis-a-vis the District
Court.

          THE COURT:  Okay.  And why is this?  Because I'm not

25    25                           25

sure what the --

MS. BAER:  Your Honor, when the Third Circuit
appointed Judge Wolin, he referred the reference of all matters
other than personal injury matters to you, and he kept the
personal injury matters and had us separate out the case
management motion.  You handled ZAI, property damage,
non-asbestos, and he kept asbestos personal injury and never
addressed them.  Therefore that is still sitting with the
District Court.  So, our amended motion is addressing asbestos
personal injury, therefore we believe that we're required to
file it before and have it heard by Judge Buckwalter unless he
would then refer the reference to you, which has not yet
occurred.

MR. BERNICK:  And we're happy to have that take
place.  It's just a question of it being a different procedural
--

THE COURT:  Well, is he doing -- I really don't know
what he's doing with respect to this case.

MR. BERNICK:  He asked for a status report fairly
shortly after his appointment.  Those status reports were
furnished, and I don't believe, and I can be corrected on this,
because a lot of time has passed, but I don't believe that
beyond that anything has happened before that Court.

THE COURT:  So, he's not had a conference of any
sort?

MS. BAER:  None whatsoever, Your Honor.

MR. BERNICK:  No.

MS. BAER:  And I do know that another motion --
Sealed Air had filed a motion before him also, and nothing has
happened on that of which we are aware.

THE COURT:  So, currently he has the motion to
approve the Sealed Air settlement pending?

MS. BAER:  That was filed before Judge Wolin and
nothing happened on it, so it is still at the District Court
level also.

MR. BERNICK:  And he would also -- he would also then
also have other motions that were previously pending before
Judge Wolin before his -- including prior case management
motions.  Those have been pending for quite some time.  So,
there's just really not been any activity on that docket, at
least insofar as the personal injury claims are concerned.  I
guess probably for that matter any --

THE COURT:  Okay.  Sealed Air's new motion, does it
have to do with the settlement, or is there some other matter
--

MS. BAER:  No, Your Honor.  Sealed Air filed a new
motion to set aside certain rulings that Judge Wolin had made
having to do with the underlying merits of the fraudulent
conveyance action.  The motion to approve the Sealed Air
settlement agreement was filed while Judge Wolin was still

sitting.  Your Honor, the debtor is not a party to the Sealed
Air settlement agreement.  Both the debtor and the unsecured
creditors' committee indicated to Judge Wolin that when he set
a briefing schedule they would have objections.  Judge Wolin
never seta briefing schedule.  Those objections have not yet
been filed, although we do, in our plan, Your Honor, outline
what our objections are and outline how we would want it to be
resolved.

          THE COURT:  Okay.  Well, it seems to me that if Judge
Buckwalter gets to any of these matters before the disclosure
statement hearing and makes rulings, then we'll all know what
the rulings are.  And if he doesn't then I guess it will come
up in the context of the disclosure statement.  With respect to
the case management order, I have to go back and take a look.
Judge Wolin issued different orders with respect to the
reference in different cases, and frankly it's been so long I
just don't recall what this one was.

          MR. BERNICK:  Well, what he did was to -- what he did
was to, remember, withdraw the reference to himself on all
matters, and then he selectively referred certain matters back
to the Bankruptcy Court.  Personal injury always remained as
the -- the resolution of the scope and liability for personal
injury claims always remained before Judge Wolin.  And at a
certain point, again prior to his recusal, he asked for
motions, all of which I think had been deemed to be withdrawn,
to be re-filed before him.  And those included motions that we
previously had pending before Judge Farnan, then went to Judge

28     28                              28

Wolin.  They were re-filed as case management motions before
Judge Wolin.  And they then sat dormant.  So, he universally, I
believe, kept personal injury issues in all of the cases before
him, and he --

          THE COURT:  No, that's actually not correct, Mr.
Bernick.  In some instances he -- the orders that were issued
said that it was contemplated that he would retain the personal
injury matters, but in fact he never issued orders that did
retain them.  That's why I'm not sure what --

          MR. BERNICK:  Oh.  Okay.

          THE COURT:  -- the difference is with this one.  So,
I think there were different orders in different cases, and I'd
have to review this one.  Obviously, if he hasn't -- if he
withdrew the reference and didn't send something back, then
obviously I can't act on it.  If what he said was it was
contemplated that he was going to withdraw the reference, again
for personal injury matters, then I can go marching forward
until it's withdrawn.  I just don't recall what the language of
this one said.  Does anybody have it here?  Because I don't, so
-- no?  All right.

          MS. BAER:  We don't have it here, Your Honor.

          THE COURT:  But you're sure this one simply says he's
keeping the personal injury matters?

          MS. BAER:  Yes, Your Honor.

                  J & J Court Transcribers, Inc.

29     29                                    29

            MR. BERNICK:  Yes, it --

            MS. BAER:  What he did is he entered an order
directing us to divide our case management order into two
parts, re-file before him personal injury only, and we did
that.  The rest of it was pending before you and you addressed
it and you ruled on it.

            MR. BERNICK:  Right.  We would be happy to take up --
I guess in a sense it may be up to the debtor here to decide
whether to make a formal motion to have the case management
matter referred back down to Your Honor.  We thought that we
would flag the issue, if Your Honor has -- and maybe the best
time to take this up would be on January after Your Honor has
had the opportunity to review the papers that have been filed
to see whether, you know, in Your Honor's view it makes sense
for you to have -- if you will, in fact, refer it back at our
request, would make sense for you to have the case management
order yourself.

            THE COURT:  Well, I mean, I don't really -- from my
point of view I don't care who does it.  I think you need one
just so that the process can get finished.  I -- you know,
whether the District Court rules on a case management order or
I do on a case management order it's a procedural motion that
needs to be addressed somewhere.  So, I don't -- again, I don't
really think it's too significant where it gets done, just so
it gets done, otherwise I'm not sure how, in the context of

30     30                          30

this case if it's not consensual, the plan confirmation process
is going to move ahead.  So, that's my only concern.  You know,
if Judge Buckwalter wants to do the whole thing then he can do
the whole thing.  Obviously he has the ability to determine
that, and whatever he decides is the way it will be.  But I do
think something should be attempted to be --

            MR. BERNICK:  We'll --

            THE COURT:  -- stimulated to get it moved.

            MR. BERNICK:  We'll follow through on that, Your
Honor.

            THE COURT:  Okay.  Ms. Eskin?

            MS. ESKIN:  Marla Eskin for the asbestos claimants'
committee.  Your Honor, in some of these cases I know that the
order said that it was contemplated.

            THE COURT:  Um-hmm.

            MS. ESKIN:  In all honesty I don't recall what it
said in this case, and I certainly don't want to stay silent.
It's not an agreement, but we'll have to take a look at the
order specifically for this case.  I don't have the memory of
that -- of it being this way.  I thought it was contemplated,
but I'll review it.

            THE COURT:  I know he did ask that the case
management orders be divided. .I do recall that in this case,
and that was unusual.  He hadn't done that in all of the cases.
And I think the reason is because in this instance I believe

the debtor has always said they may ask for an estimation
hearing on asbestos claims whereas that hasn't been the case in
all the others.  So, it's just been too long.

         MS. ESKIN:  I agree.

         MR. BERNICK:  There is no question but that all of
the parties in the case don't believe -- acted on the basis
that the personal injury claims in fact did reside before Judge
Wolin.  I don't know what the language of any order might read,
but the entire appeal -- entire prosecution of the recusal
motion's appeal all assumed the factual predicate and was in
the record, that personal injury stayed before Judge Wolin and
that he failed to act on it.  That's one of the bases for the
recusal motion.

         THE COURT:  Yes, sir?

         MR. KRUGER:  Your Honor, Louis Kruger for the
unsecured creditors' committee.  I just wanted to confirm what
Mr. Bernick's view I think is where Judge Wolin was.  But I
wanted to also confirm what Ms. Baer reported, which was that
the committee had not indeed approved the Sealed Air settlement
and waited for Judge Wolin to schedule a briefing schedule, and
of course, never did so, so we still have issues with respect
to the proposed Sealed Air settlement agreement.  With respect
to the reorganization plan that has been filed, it's quite true
that the committee, among others, have been in regular
discussions and negotiations with the debtor and various

32    32                              32

parties.  We thought we had a view, which was that to the
extent that the debtor believes that it is solvent and we
confirm that view, we believe that unsecured creditors are
entitled to post-petition interest on their claims.  To some
extent the reorganization plan and disclosure document reflect
that view, to some extent they don't.  So, we expect to be
working with the debtor in the coming days and weeks to see if
we can't agree on what the treatment is of those unsecured
claims.

            THE COURT:  Okay.  So, on January 21st we will start
with the procedural motions, the two motions.  What else did
the debtor file, or are you filing, that you want heard that
day?

            MS. BAER:  Your Honor, it's the confirmation
procedures, estimation, and disclosure statement.

            THE COURT:  Okay.  Just those three matter?

            MS. BAER:  Those three.

            THE COURT:  All right.  Well, if I can take -- if I
can do anything with respect to the estimation matter, then
I'll do that January 21st.  I think you're all going to have to
take a look at the order and give me your views about whether
you think I do or don't have jurisdiction to do it.  If Judge
Wolin's order clearly retains jurisdiction over that issue,
estimation, then I don't think I can do anything.


                  J & J Court Transcribers, Inc.

33    33                           33

        MS. BAER: Your Honor, just to clarify, there's no
doubt here that you can deal with the estimation motion. We're
asking for estimation for purposes of feasibility under the
plan. We're not asking for you to estimate actual claims for
purposes of allowance.

        THE COURT: Oh. All right.

        MS. BAER: The question is the case management
procedures, the litigation protocol vis-a-vis asbestos-related
claims. That's what Judge Wolin kept. That's what he had us
divide out. And that's what we're questioning as to whether or
not this Court can hear it given that that's where Judge Wolin
had kept it. We have every intention of, and fully believe
that we have no problem with going forward on the estimation
motion before this Court. It's only the case management motion
vis-a-vis litigation protocols and procedures for asbestos
claims. But -- in other words, the procedures for dealing with
the merits of the asbestos claims.

        THE COURT: So, the debtors' disclosure statement and
plan want to deal with the asbestos claims, not through a trust
format but actually in the bankruptcy context?

        MS. BAER: No, Your Honor. There is a trust format.
The estimation motion will set caps on certain of those claims,
not set caps on others. But it will help for feasibility
purposes. The case management motion will set a
post-confirmation litigation protocol and a post-confirmation
procedure for litigating common issues with respect to asbestos
personal injury claims in order to get to the merits of

34    34                                34

allowance of those claims.

        THE COURT:  Litigation is going to be in the District
Court?

            MS. BAER:  Litigation in the District Court.

        THE COURT:  Well, okay.  Then it seems to me if the
litigation is going to be in the District Court, probably the
District Court is going to want to set its own case management
proceedings.  I might be able to get you through some of the
discovery matters.  You know, it's not atypical that the
Bankruptcy Court gets up to the point of the trial.  But I
think that's something you're going to have to address with
Judge Buckwalter if, in fact, Judge Wolin retained the
jurisdiction over that issue.  So, that is one --

        MR. BERNICK:  Your Honor, there's a reference point
which is -- there's a subject matter jurisdiction point and
then there's a question of what Court is going to exercise the
jurisdiction.  We obviously have to take up with Judge
Buckwalter the latter issue.  I believe that under In Re
Shadigay, and we've been through this in other cases, that Your
Honor would have full power to go forward and estimate,
including litigation, estimate personal injury claims on all
matters.  And even when it comes to allowance or disallowance,
under In Re Shadigay, Your Honor can dispose of that so long as
they don't require a jury trial.

                    J & J Court Transcribers, Inc.

THE COURT:  Well, I think that Section 157 of Title
28 makes it clear that the estimation of personal injury claims
is not a core matter, but the Court has jurisdiction to do it.
So --

            MR. BERNICK:  Right.

            THE COURT:  -- I don't think that's the issue.  It's
-- you know, I guess the question is whether the parties really
want to go through that matter as a bankruptcy -- in the
Bankruptcy Court knowing that it's not a core matter that could
be done again by the District Court if the District Court
chose.  So --

            MR. BERNICK:  Yes.  And to be clear, the essence of
our plan really is that when it comes to the personal injury
claims themselves, all that we contemplate taking place prior
to confirmation in connection with the plan is an estimation
for purposes of determining an overall sum of money to set
aside for certain of the personal injury claims, i.e., those
people who have claims who are asymptomatic and, B, had some
significant exposure to Grace products.  We would not seek to
litigate for purposes of determining the validity of any
individual claims as part of this estimation process.  All of
that would take place in the post-bankruptcy trust.  Likewise,
any and all litigations, or allowance, or disallowance purposes
involving asymptomatic people or people who don't have
significant exposure to Grace products, that also would take

36    36 ·                          36

place in the post-confirmation trust.  The only matter that
would actually have to be taken up in order to proceed with
this plan is an estimation for purposes of fixing an overall
amount that would be allocated in the post-bankruptcy trust for
purposes of paying those who are truly sick as a result of
significant exposure to Grace products.

          THE COURT:  All right.  Well, stated that way, Mr.
Bernick, I don't have any trouble saying that, yes, I'd have
jurisdiction to do it.  But I think I'll wait and see what the
other parties have to say about that view when I get the
objections in just to be sure that they all agree that that's
the correct statement of what the plan is going to do, but --

          MR. BERNICK:  That was certainly our intent in
drafting the plan, Your Honor.

          THE COURT:  Okay.  All right.  Well then, on January
21 we'll take up definitely the estimation issue, definitely
the disclosure statement issue, and the case management order
if the parties agree, or Judge Buckwalter makes it clear that I
have jurisdiction to address that.  If he says I don't, then,
you know, obviously I'm not going to take something on that I
don't have jurisdiction to do.  But for scheduling purposes
I'll plan as though I am going to hear it.  But if I don't then
we'll have more time to devote to the other two.

          MS. BAER:  And, Your Honor, there's also the

confirmation procedures motion.

        THE COURT:  Now, that one may be more appropriate to
wait until we get through the others because I think it may be
more likely better -- the time may be better spent on
disclosure statement objections than on this issue until we get
through the disclosure statement process.  Or --

        MS. BAER:  It's dependent upon the disclosure
statement being approved --

        THE COURT:  Right.

        MS. BAER:  -- and these are the ballots, and the
like, going forward.

        THE COURT:  Yes.  So I think it may make more sense
to wait to see if, in fact, you can't get at least some of the
other parties on board from a consensual basis because that may
very well change your balloting process and the procedures.
So, I think I'd prefer to defer that one until we get through
the other two matters.  Why don't you put that one on the
agenda for the January 24th hearing in Delaware?  And we'll see
how far we go with the others.  We can always continue it if
need be.

        MS. BAER:  In terms of the objection deadlines and
the like, should we keep it on the same schedule --

        THE COURT:  Yes.

        MS. BAER:  -- as the others?

        THE COURT:  Yes.  Keep the same schedule, but the
hearing date would be different, because I can't possibly get
through all three of those matters totally on the 21st anyhow.

MS. BAER:  I will do so.

THE COURT:  Okay.  Anything else on the housekeeping
matters that the debtors just raised?  All right.

MS. BAER:  Your Honor, I think, then, we're ready to
proceed to the agenda for today's omnibus hearing.

THE COURT:  Okay.  I have entered orders on agenda
number two, and on agenda number four which, only with respect
to the request for leave to file a reply.  I did sign an order
that will permit the reply to be filed.  With respect to agenda
number ten, you've indicated that that issue is now moot
because apparently the State Court action has been dismissed as
against Scott.  But I need an order that will be submitted that
terminates agenda number ten on my docket.

MS. BAER:  Your Honor, it's our understanding that
Scotts filed a withdrawal of that motion.  I have not seen it,
but that's what we were informed this morning.

THE COURT:  I haven't seen it either.  If something's
been filed I'm not aware of it.

MS. BAER:  Your Honor, I'll follow up with Scotts'
counsel, although I believe Scotts' counsel is on the phone,
and submit the appropriate papers, whether it be an order, or
if they've already submitted something.

THE COURT:  All right.

MR. SIDMAN:  Your Honor, Bob Sidman for Scotts.  We