## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FEDERAL INSURANCE COMPANY      :      CIVIL ACTION NO. 04-844

         Appellant,      :

         and      :

ROYAL INDEMNITY COMPANY      :      CIVIL ACTION NO. 04-845

         Appellant,      :

         v.      :

W.R. GRACE, et. al.      :

         Appellees,      :

         and      :

OFFICIAL COMMITTEE OF ASBESTOS      :
PERSONAL INJURY CLAIMANTS      :

         Appellee.      :



FILED

NOV 2 4 2004

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## <u>MEMORANDUM</u>

BUCKWALTER, S. J.          November 22, 2004

Presently before the Court are Appellants'[1] Motion Appealing the Bankruptcy

Court's Order Appointing David Austern as Future Claimants' Representative, Appellee W.R.

Grace, et. al.'s (collectively "Debtors") Reply, Appellee Official Committee of Asbestos Personal

Injury Claimants' ("P.I. Committee") Reply, Appellants' Reply, Appellants' Motion to Strike the

Brief of P.I. Committee, P.I. Committee's Reply to Appellants' Motion to Strike and Appellants'

---

1. The Appellants are Federal Insurance Company and Royal Indemnity Company (collectively "Certain Insurers").

Reply to P.I. Committee's Reply.[2] For the reasons set forth below, Appellants lack standing to appeal the Bankruptcy Court's Order appointing David Austern to the position of future claimants' representative.

## I. FACTUAL AND PROCEDURAL HISTORY

On April 2, 2001, the Debtors filed for bankruptcy under Chapter 11 of the Bankruptcy Code. The Debtors filed their initial motion asking the Bankruptcy Court to appoint a future claimants' representative pursuant to 11 U.S.C. §§ 105, 327 and 524(g)(4)(B) on October 13, 2003. In this application, debtors sought the appointment of C. Judson Hamlin as future claimants' representative. After objections were filed to the proposed appointment of Hamlin, the Debtors withdrew their application.

The Debtors filed a second motion for appointment of a future claimants' representative on April 19, 2004. In this second motion, entitled Application of Debtors Pursuant to 11 U.S.C. §§ 105, 327 and 524(g)(4)(B)(i) For the Appointment of a Legal Representative for Future Asbestos Claimants (the "Motion"), the Debtors suggested three candidates for the position of future claimants' representative to the Bankruptcy Court. In response to the Debtors' Motion, the Bankruptcy Court accepted responses and objections, including a statement from the United States Trustee for this District. In the United States Trustee's statement to the Bankruptcy Court, she declined the request of certain parties, including Certain Insurers, to appoint the future claimants' representative explaining it was outside of her

2. On September 16, 2004, Certain Insurers filed the Motion to Strike the Brief of P.I. Committee. Pursuant to Local Rule 7.12, the P.I. Committee had the opportunity to reply to Certain Insurers' Motion to Strike until September 30, 2004. P.I. Committee filed a response on October 29, 2004, and Certain Insurers filed their Reply on November 5, 2004. Despite the tardiness of P.I. Committee's Reply, the Court denies the Motion to Strike the Reply Brief of the P.I. Committee as Certain Insurers failed to show a basis for such action.

statutory authority. Further, the Trustee commented on the fitness of the three candidates suggested by Debtors in writing that "[n]othing in the Application or in the objections suggests that any of the candidates are representing interests in this or any other case that conflict with the interests of future claimants." (A.J.D.[3] at 5575).

The Bankruptcy Court held a hearing on the Motion on May 24, 2004. After listening to the arguments of the parties, including Certain Insurers, the Bankruptcy Court found David Austern "actually disinterested" and "no appearance" of conflict attached to him and appointed David Austern to the position of future claimants' representative pursuant to 11 U.S.C. §§ 105, 327 and 524(g)(4)(B). Further, the Bankruptcy Court defined Mr. Austern's constituency as future demand holders claiming exposure to asbestos and refused Certain Insurers' request to delay the appointment of the future claimants' representative until after the resolution of the litigation involving asymptomatics.

In this appeal, the Appellants have stated the issues as follows:

> (1) Whether the Bankruptcy Court erred in relying upon the actual conflict of interest disqualification standard of 11 U.S.C. § 327 in appointing a legal representative for future claimants instead of applying an appearance of impropriety disqualification standard.

> (2) Whether the Bankruptcy Court erred in appointing David Austern as legal representative for future claimants where (a) his "nomination" for the position by constituencies with conflicting interests creates an appearance

---

3.  Amended Joint Designation of Items to be Included in the Record on Appeal and Statement of Issues of Appellants ("A.J.D.").

of impropriety; (b) his repeated employment as a legal representative for future claimants in multiple bankruptcies in a de facto system where conflicting constituencies are permitted to "nominate" their adversary's representative creates an appearance of impropriety.

(3) Whether the Bankruptcy Court erred in appointing a legal representative for future claimants without adequately and correctly instructing him at the outset (a) that his constituency includes, and he is the sole representative of, the potential future interests of asymptomatic individuals as "demand" holders; (b) that asymptomatics do no possess currently compensable "claims," and (c) that asymptomatics accordingly are not "creditors" entitled to vote on plans or reorganization.

## II.  JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction over appeals from final judgments, orders and decrees from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a) and Federal Bankruptcy Rule of Procedure 8001.[4]  The Court reviews the Bankruptcy Court's legal determinations de novo, its factual findings for clear error and its exercise of discretion for abuse thereof.  In re Trans World Airlines, Inc., 145 F.3d 124, 131 (3d Cir. 1998).

---

4.  Because the Court denies this appeal for lack of standing, the Court will make no determination as to whether the Bankruptcy Court's Order is "final."

## III.  DISCUSSION

### A.    STANDING

Appellate standing in bankruptcy has its roots in the Bankruptcy Act of 1898. Under § 39(c) of the Act of 1898, which was repealed in 1978, only a "person aggrieved" was permitted to appeal an order of the bankruptcy court.  Travelers Insurance Co. v. H.K. Porter, Inc., 45 F.3d 737, 741 (3d Cir. 1995).  The current incarnation of the Bankruptcy Code has no explicit restriction on appellate standing; however, courts, including the Third Circuit, have held the "person aggrieved" standard of the 1898 Bankruptcy Act to be applicable under the current Code.  Id. (citing In re Fondiller, 707 F.2d 441, 443 (9th Cir. 1983)).  Courts have retained this standard for prudential reasons as bankruptcy proceedings involve disputes in which numerous persons are interested and, thus, "efficient judicial administration requires that appellate review be limited to those persons whose interests are directly affected."  Id. (quoting Fondiller, 707 F.2d at 443).  Marginal parties, who are not directly affected by a bankruptcy court's order, have been denied standing even though the parties may have been exposed to potential harm related to the order.  Id. (citing Kane v. Johns-Manville Corp., 843 F.2d 636, 642 n. 2 (2d Cir. 1988)).

The Third Circuit adopted the "person aggrieved" standard in the In re Dykes case.  10 F.3d 184 (3d Cir. 1993).  In Dykes, the Third Circuit wrote that "litigants are persons aggrieved if the order diminishes their property, increases their burdens, or impairs their rights." Id. at 187 (quoting Fondiller, 707 F.2d at 443) (internal quotation marks omitted).  As the Third Circuit explained in In re PWS Holding Corp., "only persons whose rights or interests are directly and adversely affected pecuniarily by an order of the bankruptcy court may bring an

5

appeal." PWS, 228 F.3d 224, 228 (3d Cir. 2000)(citing Dykes, 10 F.3d at 187)(internal quotation marks and citations omitted).

In the instant case, Certain Insurers allege that they meet the "person aggrieved" standard because future claimants will attack the trust-injunction of the debtor due to procedural and conflict of interest problems with the Bankruptcy Court's appointment of the future claimants' representative. (Appellants' Reply Br. at 8). Further, Certain Insurers argue that all participants in the bankruptcy process should have standing to raise issues regarding the appropriateness of the appointment. (Appellants' Reply Br. at 9).

As to Certain Insurers' first argument asserting that they meet the "person aggrieved" standard, we refer to Travelers for guidance in applying the appellate standing standard. Travelers involved the bankruptcy of H.K. Porter Company, Inc. ("H.K Porter"). During the bankruptcy, creditors filed asbestos-related property damage claims against H.K. Porter, but after learning of the limited assets in the bankruptcy estate, certain creditors withdrew their claims for financial reasons. When certain creditors later learned of H.K. Porter's insurance coverage, they moved to have their claims reinstated. The bankruptcy court allowed the certain creditors' claims to be reinstated but limited recovery to insurance proceeds. The insurance carrier, Travelers, appealed the order to the district court and then filed an appeal of the district court's decision to the Third Circuit. Travelers, 45 F.3d at 740-741.

The Third Circuit held that Travelers lacked standing to appeal because Travelers' interest in the order of the bankruptcy court was too remote to meet the "person aggrieved" standard. Id. at 741. Explaining why Travelers' interest was too remote, the Third Circuit wrote that "Travelers potential exposure is double removed, turning on both the success of the

6

Claimants in their prosecution of claims against Porter, and on a judicial determination that the policy issued by Travelers covers the claims" Id. at 742. Because the Travelers' exposure was "double removed," the Third Circuit found Travelers' interest in the bankruptcy court's order was "too remote and contingent to satisfy the standing requirement of bankruptcy appeals." Id. at 741.

Under the aforementioned rationale, Certain Insurers lack appellate standing because their interest is too remote and contingent to satisfy the personally aggrieved requirement. Certain Insurers allege that if a lawsuit, which has not been filed, is filed by a future claimant, whom is presently unidentifiable, challenging a trust-injunction, which does not presently exist, and succeeds, which this Court believes is unlikely to happen, Certain Insurers' property would be diminished, their burdens increased and their rights impaired. In Travelers, because Travelers' exposure was "double removed," the Third Circuit ruled that Travelers did not meet the personally aggrieved standard as it was too contingent. Id. at 742. In the instant case, Certain Insurers' aggrievement is at least four times removed. First, a trust-injunction must be approved as part of a confirmation plan, which is not a formality because of the rigid approval requirements and inherent difficulties of the process. Second, a future claimant must experience a manifestation of his injury. Third, the future claimant must challenge the trust-injunction. Fourth, the future claimant must succeed in his lawsuit. As explained, Certain Insurers' exposure is at least four times removed and, therefore, too contingent to allow them appellate standing as neither of them qualify as a "person aggrieved."

Certain Insurers also argue that they have standing because all participants in the bankruptcy process should have the ability to raise issues regarding the appropriateness of the

appointment. (Appellants' Reply Br. at 9).  Certain Insurers' argument seems more applicable to standing in bankruptcy court, a question which involves the term "parties in interest."[5]  As discussed above, the purpose of the appellate court "persons aggrieved" standard is prudential, to enable efficient judicial administration. Id. at 741 (citing Fondiller, 707 F.2d at 443).  Allowing Certain Insurers standing for the reasons they articulated would be contrary to the purposes of the standard.

Finally, Certain Insurers assert third party standing on behalf of the future claimants. (Appellants Reply Br. at 9).  In Storino v. Borough of Point Pleasant Beach, the Third Circuit set forth the following standard for third party standing: (1) the litigant has suffered an injury in fact giving him a sufficiently concrete interest in the outcome of the issue, (2) the litigant has a close relation to the third party, and (3) there exists some hindrance to the third party's ability to protect his own interest.  Storino, 322 F.3d 293, 299 (3d Cir. 2003)(citing Powers v. Ohio, 499 U.S. 400 (1991)).

The Court cannot afford Certain Insurers third party standing because they have not suffered an injury in fact.  An injury in fact is defined as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 484-485 (3d Cir. 1998)(citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992)).  As discussed above, Certain Insurers' argument of alleged injury, the possibility that a future claimant may challenge a future trust-injunction for violations of process, is based on at least

---

5.  Certain Insurers participated in the hearing before the Bankruptcy Court during which the future claimants' representative was appointed.

four contingencies. The injury in fact requirement demands an actual or imminent injury, not an injury as remote and contingent as put forth by Certain Insurers. Therefore, Certain Insurers do not meet the injury in fact requirement and cannot assert third party standing on behalf of future claimants.

In conclusion, for the reasons articulated above, Certain Insurers lack standing to appeal the Order of the Bankruptcy Court.

**B.   APPEAL**

Assuming the Appellants did have standing to appeal the Bankruptcy Court's Order, the Bankruptcy Court's appointment of David Austern would nevertheless be affirmed. A brief discussion of the relevant statutory framework follows.

In 1994, with the enactment of the Bankruptcy Reform Act of 1994, the trust-injunctions and related procedures developed by the courts in the bankruptcies of In re Johns-Manville Corp.[6] and In re UNR Industries, Inc.[7] were codified at 11 U.S.C. § 524(g). This new section, § 524(g), was added to the Code for handling "chapter 11 reorganization proceeding[s] with future personal injury claims against the debtor based on exposure to asbestos-containing products." H.R. REP. NO. 103-835, at 40 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340. In Chapter 11 asbestos cases, § 524(g) authorizes the appointment of a legal representative to "protect the rights of persons that might subsequently assert demands of such kind [future claims]." 11 U.S.C. § 524(g)(4)(B)(i) (2004). With respect to the legislative history of the

---

6. The case of In re Johns-Manville involves a multitude of decisions. The Court cites the following opinions from Johns-Manville in this decision: 36 B.R. 743 (Bank. S.D. N.Y. 1984); 52 B.R. 940 (S.D. N.Y. 1985).

7. Like Johns-Manville, In re UNR Industries, Inc. involves a number of decisions. In this opinion, the Court cites the following: 46 B.R. 671 (Bank. N.D. Ill. 1985); 71 B.R. 467 (Bank. N.D. Ill. 1987).

Bankruptcy Reform Act of 1994, specifically the reasons for the addition of § 524(g) to the

Bankruptcy Code, the House of Representatives Committee on the Judiciary wrote that § 524(g)

was included "to offer similar certitude to other asbestos trust-injunction mechanisms that meet

the same kind of high standards with respect to regard for the rights of claimants, present and

future, as displayed in the two pioneering cases [Johns-Manville and UNR Industries]." H.R.

REP. NO. 103-835, at 40 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340.   The trust-injunctions of

Johns-Manville and UNR were the models for § 524(g), and this Court will review the cases for

guidance in the absence of explicit statutory instruction.

**B(1) The Bankruptcy Court applied the wrong conflict of interest disqualification standard under 11 U.S.C. § 524(g); however, the Bankruptcy Court did find David Austern "disinterested," which is the proper disqualification standard under § 524(g). Therefore, the appointment is affirmed.[8]**

In appointing David Austern to the position of future claimants' representative,

the Bankruptcy Court applied the conflict of interest disqualification standard of 11 U.S.C. § 327

to judge his eligibility.   Certain Insurers argue that the Bankruptcy Court should have applied an

"appearance of impropriety" disqualification standard.   (Appellants' Br. at 9).

Before the Court determines whether the Bankruptcy Court applied the correct

conflict of interest disqualification standard, the Court must first determine the proper

foundational statute, or statutes, for the appointment of the representative as the conflict of

interest disqualification standard is predicated on the foundational statute.   Courts have differed

on what statute, or combination of statutes, constitutes the proper foundation for the

8.   The Appellants frame this issue as "[w]hether the Bankruptcy Court erred in relying upon the actual conflict of interest disqualification standard of 11 U.S.C. § 327 in appointing a legal representative for future claimants instead of applying an appearance of impropriety disqualification standard."   The Court will examine the Bankruptcy Court's application of the conflict of interest standard of § 327 de novo as it involves a legal determination.   The Bankruptcy Court's finding of David Austern as "disinterested" will be reviewed for clear error.

appointment. Some courts have used § 524(g) as the sole basis, while other courts, including the

Bankruptcy Court, have utilized § 327 or § 1103 to facilitate the appointment under § 524(g).[9]

Because the courts have utilized different predicates, the courts have consequently applied

different conflict of interest disqualification standards in their appointments. The reason for this

confusion among the courts is that 11 U.S.C. § 524(g) neither explicitly specifies the process for

appointing a future claimants' representative nor specifically provides standards for determining

who may serve as future claimants' representative. As there is no explicit statutory guidance, we

look to the foundations for § 524(g), the UNR and Johns-Manville cases, for the proper

procedure for appointing the future claimants' representative.

---

9.   In re Armstrong World Industries, Inc., No. 00-4471 (Bank. Del. filed March 2, 2002) (Order Appointing Legal
Representative for Future Claimants)(bankruptcy court appointed legal representative pursuant to sections §§ 105,
524(g)(4)(B)(i) and 1109 of Chapter 11, endowed legal representative with standing under § 1109(b) and the power
and duties of a committee as set forth in § 1103 of the Code, allowed the future representative to employ
professionals consistent with §§ 105, 327, 524(g) and 1103 and authorized compensation of the future representative
pursuant to §§ 105(a) and 331).
      In re Federal-Mogul Global Inc., No. 01-10578 (Bank. Del. filed February 11, 2002) (Order Appointing Legal
Representative for Future Claimants)(bankruptcy court appointed legal representative as described in § 524(g),
afforded standing to future representative pursuant to § 1109(b) and powers and duties of a committee under § 1103,
authorized compensation pursuant to §§ 105(a) and 331 and allowed the future representative to employ
professionals consistent with §§ 105(a), 327 and 1103).
      In re Combustion Engineering, No. 03-10495 (Bank. Del. filed March 17, 2003) (Order Appointing Interim
Future Claimants' Representative)(bankruptcy court appointed representatives for persons described in § 524,
afforded the representative standing under section § 1109(b) and powers and duties of a committee under § 1103 and
authorized the representative to hire professionals consistent with §§ 327 and 1103).
      In re The Babcock & Wilcox Co., No. 00-10992 (Bank. E.D. La. filed October 4, 2000) (Order Authorizing
Employment of Young Conaway Stargatt & Taylor, LLP, as Counsel to the Legal Representative to Future Asbestos-
Related Claimants Nunc Pro Tunc to August 1, 2000 and Authorizing Debtors to Include Young Conaway Stargatt &
Taylor, LLP, in Interim Fee Reimbursement Procedure)(bankruptcy court appointed representative pursuant to §§
105, 327 and/or 1103 of the Bankruptcy Code and authorized compensation pursuant to §§ 105(a) and 331).
      In re Congoleum Corporation, et. al., No. 03-51524 (Bank. N.J. filed February 18, 2004) (Order Authorizing the
Appointment of R. Scott Williams as Future Representative)(bankruptcy court afforded future representative
standing under § 1109(b) and powers and duties of a committee under § 1103, authorized compensation pursuant to
§§ 330 and 331 and allowed future representative to hire professionals consistent with §§ 327 and 1103)((Order of
the bankruptcy court was affirmed by the district court)(In re Congoleum Corporation, et. al., No. 3:04-cv-01517)(D.
N.J. filed August 9, 2004)).

The bankruptcy court in UNR predicated its authority to appoint a legal representative for future claimants on its equitable powers, specifically citing §§ 105(a), 1102(a)(2), 1109(b), 1128(b), and 1129(a) of title 11 of the United States Code. UNR, 46 B.R. at 676. The court went on to delineate the powers of the legal representative explaining that "[w]ithin the restrictions noted above [the legal representative had to seek court approval before involving the future claimants in certain litigation], the Legal Representative shall exercise the powers and responsibilities of an official creditors' committee set forth in section 1103 of the Bankruptcy Code." Id. at 676. In establishing the procedures for selecting a legal representative, the court asked the U.S. Trustee or parties in interest to suggest a "disinterested" party to serve as the legal representative. Id. at 676.

The Johns-Manville case also provides instruction. In the order authorizing the use of a legal representative for future claimants, the court based its authority to appoint a legal representative on the equitable powers of 28 U.S.C. § 1481[10] and 11 U.S.C. § 105(a). Johns-Manville, 36 B.R. at 757. In another decision, which affirmed the bankruptcy court's appointment of the legal representative, the district court declared that the future claimants were parties in interest under § 1109(b) and afforded the representative the right to exercise the powers and duties of § 1103; however, the court cautioned that the representative was not a committee. Johns-Manville, 52 B.R. at 943.

Based on the UNR and Johns-Manville cases, the Court believes that a court should utilize the equitable powers of § 105(a) to facilitate the appointment of a legal representative for future claimants under § 524(g) and, because § 524(g) serves as the main

---

10.  28 U.S.C. § 1481 has been omitted under current law. 28 U.S.C.A. ch. 90 (2004).

predicate, incorporate the conflict of interest disqualification standard utilized by the UNR court. There is no need to employ § 1103(b), § 527 or any other section of the Bankruptcy Code, besides § 105(a), to effectuate § 524(g).

In addition to using the equitable powers of § 105(a), which is discussed below, the UNR and Johns-Manville courts utilized Bankruptcy Code sections such as §§ 1102(a)(2), 1103, 1109(b), 1128(b) and 1129(a) to authorize the appointment or to describe the duties of legal representative. None of these sections are necessary to effectuate § 524(g) as they served an illustrative function or have been incorporated into § 524(g). For example, the courts of UNR and Johns-Manville both compared the legal representative's powers and duties to those of a committee, specifically § 1103. The courts' comparison could lead one to believe that § 1103 should be utilized to effectuate § 524(g) and, therefore, § 1103's "adverse interest" disqualification standard would apply. However, § 1103 cannot be utilized because the Johns-Manville court cautioned that the legal representative was not a committee.

The Bankruptcy Court utilized § 327 to put § 524(g) into effect. The Court believes this action was incorrect for the following reasons. First, the courts of UNR and Johns-Manville neither employed nor mentioned § 327 when appointing their respective legal representatives. Second, because the basic idea of a legal representative for future claimants conflicts with the purposes of § 327, it cannot be used to facilitate the appointment. Section 327 authorizes the appointment of professionals by a trustee. 11 U.S.C. § 327 (2004). Pursuant to this section, a trustee must appoint professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327 (2004). This section cannot be utilized because it invokes the word "trustee." Under § 524, courts must appoint a future

claimants' representative, not a trustee. Further, the section cannot be employed as the conflict of interest standard explicitly disallows appointment of those whom hold an interest adverse to the estate. The future claimants' representative will, because of his constituents, have an inherent interest against the estate. Some may argue that the Court could impose words, such as "court" and "future claimants," to replace the conflicting words, but the Court does not believe such actions are necessary.

Courts should use § 105(a) to effectuate § 524(g). The courts of UNR and Johns-Manville utilized their equitable powers under Bankruptcy Code § 105(a) to facilitate the appointment of the legal representative for future claimants. Under § 105(a), courts may "issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a) (2004). Generally, courts tie their exercise of power under § 105 to another Bankruptcy Code section. 7 Collier on Bankruptcy ¶ 105.01(2)(15th ed. rev. 2003). Section 524(g) was enacted to codify the actions of UNR and Johns-Manville, which some may view as rendering the use of § 105(a) unnecessary. The Court believes that the equitable powers utilized by the UNR and Johns-Manville courts are still necessary to carry out the provisions of § 524(g). The difference lies in that this Court uses §105(a) to effectuate a specific section of the Bankruptcy Code, § 524(g), whereas the UNR and Johns-Manville courts used § 105(a), in addition to the section's injunctive powers, to execute a newfound concept, a legal representative for future claimants.

As we have determined that § 524(g) is the main statutory predicate for appointing the future claimants' representative, we look at the section for guidance on an applicable conflict of interest disqualification standard, which again takes us to UNR. In its order authorizing the

14

use of a legal representative for future claimants, the UNR court asked the trustee or the parties

to suggest "disinterested" candidates. The term "disinterested" is defined in the Bankruptcy

Code at § 101(14).[11] As the UNR court employed this disqualification standard, this Court

believes that courts appointing future claimants' representative should do so as well in order to

maintain the "high standards" of UNR, which were referenced by Congress.

Although the Court finds that the Bankruptcy Court applied the wrong conflict of

interest disqualification standard, the Court is free to affirm the appointment of the future

claimants' representative on any basis which has sufficient support in the record.  See Brown v.

Commonwealth Pa. Dep't of Health Emer. Med. Servs. Training Inst., 318 F.3d 473, 475 (3d Cir.

2002)(citing Bernitsky v. United States, 620 F.2d 948, 950 (3d. Cir. 1980)).  In the Order

appointing David Austern as future claimants' representative, the Bankruptcy Court applied the

conflict of interest disqualification standard of § 327 and found that David T. Austern was

"actually disinterested" and that "no appearance" of conflict attached to him.  Despite the

Bankruptcy Court's application of the wrong section of the Bankruptcy Code, it did find David

Austern to be "disinterested," which is the correct disqualification standard.  Therefore, if this

Court rules that the Bankruptcy Court's finding of David Austern as "disinterested" was correct

11. "disinterested person" means person that—
(A) is not a creditor, an equity security holder, or an insider;
(B) is not and was not an investment banker for any outstanding security of the debtor;
(C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of
the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security
of the debtor;
(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee
of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and
(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity
security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an
investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason. 11 U.S.C. §
101(14)(2004).

under the applicable review standard, the Court's appointment of David Austern will be affirmed.

The Bankruptcy Court's ruling that David Austern was "disinterested" constitutes a finding of fact so the Court will review the Bankruptcy Court's finding for clear error. In Re Morrissey, 717 F.2d 100, 104 (3d Cir. 1983). Clear error is found if the appellate court is "left with the definite and firm conviction that a mistake has been committed" after reviewing the evidence. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1985).

After reviewing the record of the Bankruptcy Court, this Court finds that there was no clear error in finding David Austern "disinterested." Concerning the candidates suggested by the Debtors, the U.S. Trustee commented that "[n]othing in the Application or in the objections suggests that any of the candidates are representing interests in this or in any other case that conflict with the interests of future claimants" and, further, "[n]or do the objectors identify any positions that the candidates have taken in the other cases that would restrict their ability to advocate zealously for the interests of future claimants in this case." (A.J.D. at 5545). Other evidence in the record confirms this finding. Therefore, we affirm the Bankruptcy Court's finding that David Austern was "disinterested."

In conclusion, the Court rules that the Bankruptcy Court did err in applying the conflict of interest disqualification standard of § 327 to its appointment of the future claimants' representative. However, because the Court rules that the Bankruptcy Court correctly found David Austern "disinterested," which is the applicable standard, the Court affirms the Bankruptcy Court's appointment of the future claimants' representative.

16

**(B)(2) The procedure employed by the Bankruptcy Court for appointing the future claimants' representative correctly mirrored the processes developed in <u>Johns-Manville</u> and <u>UNR</u>.[12]**

The Bankruptcy Court's procedures for appointing the future claimants' representative paralleled the processes of <u>Johns-Manville</u> and <u>UNR</u>; thus, it utilized the correct procedures for appointing the future claimants' representative. Certain Insurers assert that the Bankruptcy Court used an improper procedure in appointing the future claimants' representative because the Bankruptcy Court allowed the Debtor to suggest possible candidates and the Bankruptcy Court appointed the future claimants' representative. (Appellants' Br. at 13). Certain Insurers also posit that the system and David Austern are tainted by an appearance of impropriety. (Appellants' Br. at 13).

As referenced in the previous section, the Bankruptcy Code does not explicitly describe the procedure for appointing a legal representative for future claimants, but the <u>UNR</u> and <u>Johns-Manville</u> cases do provide guidance. An examination of the <u>UNR</u> and <u>Johns-Manville</u> cases reveals that those courts contemplated and allowed the participation of parties in interest in the process by asking the parties in interest for proposed future claimants' representatives or allowing the parties in interest to offer the motions for appointment of a legal representative. The court of <u>UNR</u>, 46 B.R. at 676, gave the U.S. Trustee 20 days to suggest a disinterested party

---

12. The Appellants frame this issue as:

> Whether the Bankruptcy Court erred in appointing David Austern as legal representative for future claimants where (a) his "nomination" for the position by constituencies with conflicting interests creates an appearance of impropriety; (b) his repeated employment as a legal representative for future claimants in multiple bankruptcies is a de facto system where conflicting constituencies are permitted to "nominate" their adversary's representative creates an appearance of impropriety.

The Court will examine for an abuse of discretion.

to be appointed as legal representative for future claimants, and if the U.S. Trustee declined to make a suggestion, the court wrote that it would entertain suggestions from the parties in interest and rule after notice and a hearing. UNR, the debtor, offered the motion for appointment of the legal representative. Id. at 672. The court approved UNR's Application for the Appointment of Legal Representative for Unknown Putative-Related Claimants and a legal representative was appointed by the court. UNR, 71 B.R. at 472. As for Johns-Manville, 52 B.R. at 941, a co-defendant of the debtor, Keene, filed the motion for appointment of a legal representative for future claimants.

UNR and Johns-Manville also show that the court should make the appointment of the future representative. In UNR, 71 B.R. at 472, the court appointed the legal representative for future claimants, not the Trustee. Similar to the UNR case, the court appointed the future claimants' representative in Johns-Manville, 52 B.R. at 942.

In this instant case, the Debtor filed a motion for appointment of a future claimants' representative. The U.S. Trustee refused a request by certain parties, including Certain Insurers, to make the appointment of the representative, and she refused to suggest candidates for the position. The Bankruptcy Court, after notice and oral argument, appointed one of the candidates suggested by the Debtors.

The Bankruptcy Court's handling of the appointment of future claimants' representative in the instant case paralleled the procedures of UNR and Johns-Manville. First, in UNR and Johns-Manville, the motion for appointment of a future claimants' representative was brought by the debtor or another party-in-interest, just as in the instant case, where the Debtors brought the motion. Second, in UNR, the court wrote that it would review suggestions from the

18

parties in interest in filling the role of legal representative if the U.S. Trustee failed to offer candidates. In this case, the U.S. Trustee declined to suggest candidates in its statement to the Bankruptcy Court so the Bankruptcy Court reviewed the candidates offered by the Debtors, whom are parties in interest. Third, similar to the instant case, both the UNR and Johns-Manville courts appointed the future claimants' representative. Because the Bankruptcy Court's procedures mirrored the processes for proposing and appointing the legal representative developed in UNR and Johns-Manville, the Bankruptcy Court used the correct procedures.

Certain Insurers also assert that the system and David Austern are tainted by an appearance of impropriety. This argument has no merit. First, as already discussed above, the procedures employed by the Bankruptcy Court in appointing David Austern mirror those of UNR and Johns-Manville, whose "high standards" were the model for § 524(g). See H.R. REP. NO. 103-835, at 40 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340. Second, as shown in the previous section, the "appearance of impropriety" standard does not apply in the appointment of the future claimants' representative.

The procedure employed by the Bankruptcy Court for appointing the future claimants' representative was similar to the processes of Johns-Manville and UNR. Therefore, the Bankruptcy Court's appointment and process for making the appointment were correct.

**B(3) The Bankruptcy Court did not abuse its discretion in refusing to delay the appointment of the future claimants' representative until after the resolution of the litigation involving the asymptomatics' claims.[13]**

---

13.   The Appellants frame this issue as:

> Whether the Bankruptcy Court erred in appointing a legal representative for future
> claimants without adequately and correctly instructing him at the outset (a) that his
> constituency includes, and he is the sole representative of, the potential future interests of
> (continued...)

The Bankruptcy Court did not abuse its discretion in refusing to delay the appointment of the future claimants' representative until after the parties litigated the issues involving asymptomatics. Section 524(g) does not explicitly provide an answer on when the future claimants' representative should be appointed. Based on the procedures adopted in UNR and the necessity of the future claimants' presence in the litigation involving asymptomatics, the Bankruptcy Court was correct in refusing to delay the appointment.

Certain Insurers argue that the Bankruptcy Court should have delayed the appointment of the future claimants' representative until after the litigation involving asymptomatics. (Appellants' Br. at 17). The Court disagrees. The Bankruptcy Court correctly declined to determine whether asymptomatics had compensable claims, among other issues involving the asymptomatics, before making the appointment of the future claimants' representative. In UNR, 46 B.R. 671, 676, the court faced this question and wrote:

> The determination of whether putative asbestos disease victims are creditors of these estates, or whether their interests could represented in these proceedings in a manner analogous to a class action, or whether these parties would be entitled to vote on a plan of reorganization, or whether their claims might be discharged in this bankruptcy proceeding, are all questions which can properly be address *after* putative asbestos disease victims commence actual participation in these cases.

As the UNR court explained, the issues involving asymptomatics should be litigated after a futures claimants representative is appointed. The Bankruptcy Court followed UNR's example.

---

13. (...continued) asymptomatic individuals as "demand" holders; (b) that asymptomatics do no possess currently compensable "claims," and (c) that asymptomatics accordingly are not "creditors" entitled to vote on plans or reorganization.

As this question pertains to judicial discretion, the Court will examine it on abuse of discretion standard.

In addition to correctly following the procedure of UNR in refusing to delay the appointment, the Bankruptcy Court properly denied Certain Insurers request because the future claimants were entitled to representation during the litigation involving asymptomatics as it affected their rights. If the litigation would have progressed without the representation for future claimants, it is likely that the results would not have been binding on the future claimants.

## IV. CONCLUSION

For the foregoing reasons, Appellants' appeal of the Order of the Bankruptcy Court appointing David Austern to the position of future claimants' representative is denied for lack of standing. An appropriate order follows.