UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
IN RE:                          .  Case Nos.: 00-3837JKF,
                                .  01-1139JKF, 01-2094JKF,
    OWENS CORNING, ET ALS,      .  01-2471JKF, 02-10429JKF,
                                .  04-11300JKF, 04-12440JKF
                                .
                  DebtorS.      .  5414 USX Tower Building
                                .  Pittsburgh, PA 15222
                                .
                                .  October 6, 2004
. . . . . . . . . . . . . . ..     12:05 p.m.
```

TRANSCRIPT OF ARGUMENT ON ALL DELAWARE
ASBESTOS CASES REGARDING 2019 ORDER
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Owens Corning            Saul Ewing
                             By:  NORMAN L. PERNICK, ESQ.
                             222 Delaware Avenue
                             Wilmington, DE 19801

                             Weil, Gotshal & Manges, LLP
                             By:  TIMOTHY E. GRAULICH, ESQ.
                             767 Fifth Avenue
                             New York New York 10153

                             Davis Polk & Wardwell
                             By:  JAMES I. McCLAMMY, ESQ.
                             450 Lexington Avenue
                             New York, New York 10017

For Flintkote                Tucker Arensberg, P.C.
                             By:  MICHAEL A. SHINER, ESQ.
                             1500 One PPG Place
                             Pittsburgh, PA 15222

Audio Operator:              Cathy Younker

Proceedings recorded by electronic sound recording, transcript
Produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609)586-2311    Fax No. (609) 587-3599**

<u>APPEARANCES</u> (cont'd)

| | |
|---|---|
| For ACC | Campbell & Levine, LLC<br>By:  PHILIP E. MILCH, ESQ.<br>310 Grant Street<br>Pittsburgh, PA 15219 |
| | Caplin & Drysdale<br>By:  PETER VAN N. LOCKWOOD, ESQ.<br>One Thomas Circle, N.W.<br>Washington, DC 20005 |
| For Grace/USC Committees | Bilzin Sumberg Baena Price &<br>  Axelrod, LLP<br>By:  JAY M. SAKALO, ESQ.<br>Miami, Florida |
| For US Trustee | US Trustee's Office<br>By:  JOE SISCA, ESQ. |
| For London | Coudert Brothers<br>By:  RUSSELL W. ROTEN, ESQ.<br>333 South Hope Street<br>Los Angeles, CA 90071 |
| For Century | O'Melveny & Myers, LLP<br>By:  GARY SVIRSKY<br>400 South Hope Street<br>Los Angeles, CA 90071 |
| For Various Plaintiffs | Stutzman Bromberg Esserman &<br>  Plifka<br>By:  SANDER L. ESSERMAN, ESQ.<br>     ROBERT T. BROUSSEAU, ESQ.<br>2323 Bryan Street<br>Dallas, TX 75201 |
| For the Committee | Anderson, Kill & Olick, P.C.<br>By:  JOHN L. SCOTT, ESQ.<br>1251 Avenue of the Americas<br>New York, New York 10020 |
| For Asbestos Plaintiff<br>  Firms | By:  ROBERT BERNSTEIN, ESQ. |
| For USG & Kaiser Aluminum | Jones Day<br>By: DONALD M. LUND, ESQ.<br>500 Grant Street<br>Pittsburgh, PA 15219 |

3

1          THE COURT:  We're just waiting for the parties to call

2   in to hopefully make sure that this system is working since, as

3   you know, we've had a few problems with the other system.

4          Did you folks get Dave Ziegler's draft of what is

5   circulating with respect to Pittsburgh Corning?

6          UNIDENTIFIED MALE ATTORNEY:  Yes, Your Honor.  In fact,

7   he has a revised draft this morning with some comments.

8          UNIDENTIFIED MALE ATTORNEY:  That's the one you got.

9          THE COURT:  That's the one I have.  Okay.

10          UNIDENTIFIED MALE ATTORNEY:  I have extras, a dozen

11   copies if anybody wants one.

12                              (Pause)

13          THE COURT:  Well, do you think I can call the case and

14   get the entries of appearances for those of you in the courtroom?

15   Because the parties on the phone are not entering appearances

16   anyway.  Isn't that correct?

17          UNIDENTIFIED MALE ATTORNEY:  Correct.

18          THE COURT:  Okay.  Cathy, are you on?

19          CATHY:  Yes.

20          THE COURT:  These are the matters of certain asbestos

21   cases pending in the District of Delaware.  Owens Corning 00-

22   3837; W.R. Grace 01-1139; USG 01-2094; US Minerals 01-2471;

23   Kaiser Aluminum 02-10429; Flintkote 04-11300 and Flintkote Mines

24   04-12440.

25          This is the time set for argument on all of these cases

1  regarding an order and an amendatory order that I issued

2  concerning Rule 2019 of the Federal Rules of Bankruptcy

3  Procedure.  I guess, why don't I just take entries of appearances

4  and you can tell me which parties you're representing.  Because

5  since the issue is the same in all of these cases you can just

6  tell me which cases you're entering appearances in.

7          So, Mr. Sisca, why don't I start with you and we'll

8  just go around.

9          MR. SISCA:  Good afternoon, Your Honor, Joseph Sisca,

10  United States Trustee on behalf of United States Trustee and all

11  cases involved.

12          THE COURT:  Thank you.

13          MR. SHINER:  Good morning, Your Honor, Michael Shiner -

14  -

15          THE CLERK:  Speak into the mike, please.

16          MR. SHINER:  Michael Shiner for certain London Market

17  Insurance Companies in the Flintkote cases.

18          MR. ROTEN:  Good afternoon, Your Honor, Russel Roten

19  representing certain underwriters at Lloyd's London and certain

20  London Market Insurers in the Kaiser case.

21          MR. ESSERMAN:  Good morning, Your Honor, Sander L.

22  Esserman of Stutzman, Bromberg, Esserman & Plifka in Dallas on

23  behalf of British law firms in all the cases except for Kaiser.

24          MR. PERNICK:  Good afternoon, Your Honor, Norman

25  Pernick on behalf of Owens Corning.

5

1          THE COURT:  Okay, just a second, I'm sorry, because I

2  have to type in the cases.  It's taking me a little longer than

3  usual.  Okay.

4          MR. LOCKWOOD:  Your Honor, Peter Lockwood on behalf of

5  the Asbestos Claimants Committees in all the cases except for

6  United States Mineral Products Company.

7          MR. GRAULICH:  Good afternoon, Your Honor, Timothy

8  Graulich of Weil, Gotshal & Manges representing CSFB as agent in

9  the Owens Corning matter.

10          MR. SVIRSKY:  Good afternoon, Your Honor, Gary Svirsky

11  from O'Melveny & Myers representing Century Insurers in the Owens

12  Corning matter.

13          THE COURT:  Thank you.  Anyone else want to --

14          MR. LUND:  Good afternoon, Your Honor, Don Lund of the

15  law firm Jones Day --

16          THE COURT:  I'm sorry?

17          MR. LUND:  Lund, from Jones Day on behalf of debtors

18  USG and Kaiser Aluminum.

19          THE COURT:  All right, thank you.  Anyone else entering

20  appearances?  Okay.  Do we know who's placing the call?

21          THE CLERK:  It's a dial in.

22          THE COURT:  A dial in.  We're dialing in?

23          THE CLERK:  No.  I don't think so, Judge.  I think they

24  were calling in.

25                    (Dialing)

                    **J&J COURT TRANSCRIBERS, INC.**

1          WINNIE:  Hello.

2          THE COURT:  Winnie, are we supposed to dial in?

3          WINNIE:  Yeah, I told Mona that there's a dial in

4     number.  It's apparently on the agenda.

5          THE COURT:  Okay.

6          MONA:  I thought she was calling in, I'm sorry.

7          THE COURT:  Okay, you're going to have to call Kevin.

8     He has to do that.

9                         (Pause)

10          THE COURT:  These are the matters pending in the

11     district of Delaware, all of the asbestos cases in which the 2019

12     order has not been stayed.  The parties who entered appearances

13     in the courtroom were Mr. Sisca for the United States Trustee,

14     Mr. Shiner, Mr. Roten, Mr. Esserman, Mr. Pernick, Mr. Lockwood,

15     Mr. Graulich, Mr. Svirsky and Mr. Lund.  I understand that the

16     parties who are participating by phone will not be entering

17     appearances, but simply will be listening in.  Mr. Esserman, this

18     is your motion.

19          MR. ESSERMAN:  Thank you, Your Honor.  Sandy Esserman

20     on behalf of Baron & Bud firm and several other firms that have

21     joined in.  We've had several hearings on this 2019 issue.

22     Hopefully this is the last.  2019 will be complied with as

23     intended by the rule and as intended by this Court.  And frankly

24     I've heard and learned more about 2019 than I care to, period.

25          2019 is not a discovery tool for insurers or banks or

1 debtors or anybody else to -- people to rattle around plaintiff's

2 firms or impermissibly intrude in their clients -- intrude with

3 their clients.  Several concerns have been raised around the

4 country by various firms to me as well as this -- as well as in

5 this court.  And we've tried to deal with these in prior

6 hearings.

7         And Mr. Ziegler has tendered an order, which although

8 not perfect and which I can say there's several things I don't

9 like about it, I think it's time to end it.  I think that this

10 Court pretty much got it right, at least in my view.  Right

11 enough that I think we ought to just get on with the real

12 business at hand.  The real business is let's get these cases,

13 let's get these companies reorganized.

14         Yesterday we just got a decision by Judge Fulham in the

15 Owens Corning matter.  Your Honor may have seen that.

16         THE COURT:  Yes.

17         MR. ESSERMAN:  But that sort of sets us on the road

18 towards reorganization.  That's the real issue here.  The real

19 issue is not, in my opinion, who represents Mr. Joe Jones one of

20 100,000 of the asbestos claimants in a particular case and

21 whether Mr. X in Texas or in California or in Pennsylvania

22 actually represents them.  The bottom line is there are powers of

23 attorneys, there are authorizations to vote, there are agreements

24 for same.  The voting in these cases as Your Honor has seen is

25 not going to be such that Mr. Jones' vote is going to swing or

8

1  not.  These are 99 to one type votes.  They're not -- the

2  asbestos claimants are not going to vote on a plan that the

3  insurers would like to see this Court confirm.  They're going to

4  stick, as well they should, with their asbestos brethren.

5         We raised several issues before this Court, but I think

6  this Court was sensitive to and dealt with fairly and completely

7  and was incorporating Mr. Ziegler's order.

8         The privacy issue.  The privacy issue is an important

9  issue.  Most of these claimants are, frankly, elderly.  They

10 don't want to be harassed by third parties.  They don't want to

11 be harassed by insurance companies who aren't paying.  They don't

12 want to be harassed by so called investment advisers.  They

13 signed up, not to have their social security numbers and their

14 disease spread around the country to their neighbors or anyone

15 else.  It's not a badge of pride to have mysophilia or cancer or

16 silicosis or any other disease.  For the most part these people

17 are factory workers, worked hard their lives.  There's a certain

18 privacy involved.  I think this Court was sensitive to those

19 concerns.

20        Yet, sensitive to the concerns of the rule.  And I

21 think the requirement of listing a disease is fair.  I have no

22 problem with that.  And that is in the field combined with this

23 Court's view that the 2019 statements will be accessed by motion

24 before this Court and upon by order of this Court or otherwise

25 reside with the debtor.  Because that will insure what really is

1  the tail, and I mean the tip of the tail of the dog in the

2  bankruptcy code which is 2019 in this case.

3         There are a lot of things that I could go and reargue.

4  I'm not going to do that.  I'm not going to talk about the issues

5  that I think the Ziegler order does that I think are not

6  necessarily compliant with Rule 2019 because I think we've got to

7  end this.  And I think this order is something that people can

8  live with and I think that that's the most important point.  Not

9  make this a satellite litigation, not make this an appellate

10 issue.  Just put an end to it.  And I think Mr. Ziegler did a

11 good job of taking the Court's notes.  I think he got it right.

12 He did make some changes today in response to the insurance

13 companies which I think were fine.

14         So, in sum, I think we need to get to the real issues

15 in these cases, the organization issues, the voting issues.  I

16 think I understand the motivation of why this was broad.  I don't

17 think it was pure and I don't care what you're going to hear

18 about it from the other side on that.  I think it was brought up

19 at late stages after voting, after voting procedures had been

20 approved, after ballots had been approved.  Now, look, we are

21 where we are.  I'm willing to get on with it.

22         I think that anything certain parties can do to make

23 other parties jump through as many hoops as they can and whether

24 it's permissible or impermissible, they're going to do it.  But I

25 think Mr. Ziegler got it right.  I think this Court has it right.

1  I think this Court is concerned about the sensitivities.  I think

2  this Court is concerned about the bankruptcy rules that they will

3  be complied with.  And I think we've done it.  And so in sum, I

4  think it's time to move on.  Thank you.

5          THE COURT:  All right.  Does anybody wish to be heard

6  on the same side as Mr. Esserman's client?  Mr. Lockwood.

7          MR. LOCKWOOD:  Your Honor, I would just say that on

8  behalf of the committees we are essentially adopting Mr.

9  Esserman's position on this.  I would just mention there has been

10 some efforts on the part of some of the parties that have filed

11 in response to Your Honor's notice of this hearing who have

12 requested things that go beyond what presently exists in the

13 draft order that Mr. Ziegler has submitted and if those matters

14 are pressed by those persons I'll probably have some additional

15 comments to make on that later.  But for now we're comfortable

16 with where Mr. Esserman has put things.

17         THE COURT:  All right.  Mr. Pernick.

18         MR. PERNICK:  Your Honor, from Owens Corning's

19 standpoint I think we're satisfied with Mr. Esserman's position

20 with one, I hope, minor caveat.  And that is in the amendatory

21 order that Your Honor entered that had a paragraph five that said

22 with reference to the time of the employment of the entity the

23 organization or formation of the committee or the appearance in

24 the case of any indenture trustee and then it had four things

25 that had to be supplied.  The amount of the claim, the time

1    acquired, the amount paid in any sales or dispositions.

2          And in my quick review of this form of order I don't

3    see that in there.  I don't know whether that's inadvertent or

4    not.  If it's not inadvertent I'd ask the Court to consider

5    adding that language back in.  I'm not sure that it's

6    particularly applicable to tort claimants, but it is applicable

7    to commercial creditors at least in the Owens Corning case and is

8    certainly information that is relevant and I think is consistent

9    with Your Honor's positions at hearings on that and whether that

10   should be disclosed.

11         THE COURT:  Well, paragraph 2 of the order says that

12   the spreadsheet is to include, let's see here, E, the amount of

13   the claim of any creditor if liquidated and if unliquidated

14   claims and indications that it is unliquidated.  And F, the date

15   of the acquisition of the creditor's claim unless it was acquired

16   beyond one year prior to, well, this one says April 16th.  It

17   would be the filing date for the specific case of the debtor.  So

18   that's not sufficient?  We're still missing --

19         MR. PERNICK:  That's only part of it because while that

20   gives the amount, and I guess the time acquired, it doesn't say

21   the amount that was paid for it and it doesn't provide for any

22   sales or other dispositions.

23         THE COURT:  I see.  So in order to make this form

24   useful for commercial creditors too we simply need to add two

25   more fields into this spreadsheet.

1         MR. PERNICK:  Correct.

2         THE COURT:  Mr. Esserman, I don't think the asbestos

3 creditors would be affected by this.

4         MR. ESSERMAN:  No, Your Honor, Sandy Esserman, that's

5 fine.

6         THE COURT:  Mr. Lockwood.

7         MR. LOCKWOOD:  Your Honor, that's fine.  The only

8 reason it wasn't in there was that this was drafted in a case

9 where the whole focus was on the tort claimants and I think Mr.

10 Pernick was correct, it was an oversight in that regard.  So

11 that's fine with the asbestos group.

12         THE COURT:  Well, I don't know it was an oversight.  It

13 probably wasn't necessary in that case.  But, Mr. Ziegler, I

14 realize this is a hearing on the Delaware cases and you're hear

15 on Pittsburgh cases nonetheless.  Is there any problem if we add

16 those two fields so that hopefully we can get to a spreadsheet

17 that can be used in all of these cases so that that sheet can be

18 identical.

19         MR. ZIEGLER:  On behalf of the Pittsburgh asbestos

20 debtors, Your Honor, we have no problem.  David Ziegler on behalf

21 of Pittsburgh Corning and NARCO and that would not be a problem

22 in any of those cases.

23         THE COURT:  All right.  Do you mind to undertaking to

24 get -- since you've taken the lead in this work anyway, getting

25 those -- that language in?

1          MR. ZIEGLER:  We'll add those fields.

2          THE COURT:  All right, thank you.

3          UNIDENTIFIED MALE ATTORNEY:  Whoever is typing please -

4 -

5          THE COURT:  I think it's me.  This is Judge Fitzgerald.

6 I'm sorry, there's nothing I can do to stop that sound because if

7 I move the microphone away from my mouth then you can't hear me

8 and when I have it by my mouth you hear my keys.  So I'm sorry.

9          UNIDENTIFIED MALE ATTORNEY:  Sorry, Your Honor, no

10 objection to you.

11          THE COURT:  Okay, thanks.

12                    (Court laughs)

13          THE COURT:  Anybody else on the side of Mr. Esserman

14 with respect to this issue?  Okay, Mr. Sisca, would you like to

15 address anything?

16          MR. SISCA:  Thank you, Your Honor.  I'm not sure that

17 I'm not on anyone's side.  But I have just a few points that I

18 don't think should be extremely controversial, but I wanted to

19 raise them anyway.  In the draft order it refers to the personal

20 address of each such creditor.  I wanted to make sure that that

21 means the actual home address rather than in care of the law

22 firm.

23          THE COURT:  It does.  But somebody may use a post

24 office box address.  I know most of the time now the postal

25 service is asking for a street address.  But there are some

1 communities in which a post office box is used.  But yes, it is

2 intended to be the creditor's address, not in care of a law firm.

3 I think we went over that at length in the last hearing.

4         MR. SISCA:  We thought that the addition of the last

5 four numbers of social security numbers would be -- was a very

6 good idea, would be very helpful and we wanted to argue for

7 retention of that request.  And especially not the first four

8 digits.  We think that would be close to -- unhelpful that it was

9 even proposed.

10         THE COURT:  Well, I agreed with that at the last

11 hearing, Mr. Sisca, if we need to put social security numbers in.

12 And I agree, it should be the last four digits.  Let me explain

13 the reason why I was convinced to take them out.

14         MR. SISCA:  I apologize for not being at the last

15 hearing, Your Honor, but I'm not going to belabor a bunch of

16 issues.

17         THE COURT:  Okay.  I was convinced to take them out

18 simply because I think there is a privacy issue especially when

19 I'm also requiring disease levels and addresses to be put in.  It

20 seems to me that if there is a duplication somewhere, for

21 example, I have John Jones who lives at one address and then I

22 have another John Jones who lives at another address, at that

23 point in to make sure it's not the same John Jones I probably

24 need some further identification and in that instance I think on

25 motion of a party I would require, not could, but would require

1  those digits to be added in that instance.

2       I think, however, that the purpose that's to be served

3  by Rule 2019 which is to make sure that in fact there is

4  authorization by the firm to represent more than one creditor is

5  met without that information provided that we can identify for

6  sure who the creditor in the law firm is.  I am more concerned

7  about the fact, although it can be taken care of in a balloting

8  issue, but for now just looking at 2019 I'm concerned that any

9  one creditor is only represented by any one law firm.  So if

10 there is need for additional identifying information then I

11 thought it was appropriate to add it at that time, but not

12 necessarily to put it in for all purposes at the outset of the

13 case.  So that's the reason why I was convinced to delete it.  As

14 a requirement initially, but reserving the opportunity to put it

15 in to the extent that there's any confusion in the record and

16 some further identification is needed.

17       MR. SISCA:  Our feeling was that perhaps it might aid

18 in the discovery of duplication and instead of just going with

19 the names and addresses.  And we thought that with restrictions

20 on who had access to 2019s to begin with the privacy concerns

21 were diminished.

22       I have just two other points, Your Honor.  It appears

23 that the intention is to serve the 2019s only on the debtors.  I

24 think it would be appropriate to serve them on the official

25 committees, the Unites States Trustee and the notice engaged in

1 as well.

2        THE COURT:  The 2019s in all of these cases all the

3 major parties are electronically filing so once the 2019 is

4 spread on the record it's going to be served automatically on all

5 those parties.  Am I missing the issue?  Because anybody who gets

6 electronic service is going to get notice of the 2019 statements.

7        MR. SISCA:  Will the committees and the United States

8 Trustee get the exhibits, Your Honor?

9        THE COURT:  Oh, no, they would not get the exhibits

10 because those will be filed on a CD with the Court, but they will

11 not be spread on the record.  Our system simply doesn't have the

12 resources to take account of all of this.

13        MR. SISCA:  I would suggest to you that those parties

14 are most in need of that information and should get exhibits with

15 the restriction that they not further divulge private information

16 without leave of Court.

17        THE COURT:  I think the noticing agent, the balloting

18 agent at some point in time definitely will need this information

19 because that's a good way to cross check the ballots that are

20 coming in.  So I agree at some point that may be appropriate.

21 I'm not sure all these cases have noticing agents already in

22 place, but we could take care of that down the road.  I have no

23 problem giving it to the US Trustee.  If you want a copy of the

24 disks understanding that it's going to be kept confidential I

25 don't know whether the committees want this information at this

1    point or not.

2        MR. LOCKWOOD:  Speaking for the asbestos committee we

3    get an adequate supply of paperwork already and absent some issue

4    arising with respect to one or more of these I don't see that the

5    committees have any need or use for them.

6        MR. ESSERMAN:  Your Honor, unless there's -- this is

7    Sandy Esserman for the record.  Unless there's an issue that's

8    been front and center about this I think that the best thing to

9    do is to keep these as tight as you can.  The more you spread

10   them out the more they're going to get out.  And if there's a

11   need shown Your Honor has built into the order a right to come to

12   the Court and show that need.  Other than that I don't think

13   there is a need.  It serves no real purpose other than a

14   representation and verification of that and voting.  So I think

15   the purposes of the rule are such and the information is such

16   that I think a less is more.  Less distribution is better in this

17   case and I don't see any reason that if the committees show a

18   need and file a motion before this Court we can address it.

19       THE COURT:  What about the US Trustee?

20       MR. ESSERMAN:  Well, I'd like to know why the US

21   Trustee feels he needs it.  What is he going to do with the

22   information?  How is he going to use this information?  Is he

23   going to release this information?  I don't see any reason --

24       MR. SISCA:  We're not going to release the information

25   without leave of Court.

1          MR. ESSERMAN:  I just don't see how he's going --

2          MR. SISCA:  I think the burden should be on the party

3   moving to restrict information as opposed to the party who is

4   entitled to the information.  To do whatever due diligence we

5   want to do it would be helpful to have the exhibits, Your Honor.

6          THE COURT:  Well, I'm not opposed to the US Trustee's

7   Office getting the exhibits provided that it's subject to the

8   fact that I will essentially put them under seal and the US

9   Trustee's Office will have to deal with them as though they were

10  sealed documents.  So before they can release it to anybody you

11  need to get court order.

12         MR. SISCA:  Yes.  And that's exactly what we asked for

13  in our objection that we would not disclose anything without

14  further leave of the Court, Your Honor.

15         THE COURT:  Is Mr. Ziegler still here?

16         MR. ZIEGLER:  That's fine, Your Honor.

17         THE COURT:  Can you add a paragraph to that effect,

18  too, Mr. Ziegler then.  I'll authorize the release to the United

19  States Trustee, but subject to that kind of confidentiality.

20         MR. ZIEGLER:  Your Honor, I think the order right now

21  provides that a copy of the exhibits will be served on the debtor

22  and the debtor would maintain those and not release them except

23  by order of Court.  And I think we can probably just add the US

24  Trustee to that same paragraph.

25         THE COURT:  I think that's fine.  Is that acceptable to

1  you, Mr. Sisca?

2            MR. SISCA:  Yes, thank you, Your Honor.

3            THE COURT:  Mr. Esserman?

4            MR. ESSERMAN:  Yes, Your Honor.

5            THE COURT:  All right, that's fine.

6            MR. SISCA:  My final point, Your Honor, was regarding

7  the use of exemplars and we appreciate that you felt that that

8  would alleviate a huge burden.  Our request would be that each

9  exemplar would be an actual document rather than a blank form to

10 give us the comfort that at least the document is one that's

11 actually been used and actually see a document that's actually

12 been used.

13           THE COURT:  Well, that's what I meant by exemplar.  A

14 document that was in use and then it's to have attached the list

15 of the people who actually signed that document.  But I didn't

16 want it -- the issue what was before me was could it be redacted.

17 And I said no, I don't want it redacted I want a complete copy of

18 whatever the form was that was used.  But I don't need to see Joe

19 Smith's signature on that form.  What I need is an affidavit

20 essentially that says Joe Smith signed this form.

21           MR. SISCA:  Thank you, Your Honor.

22           THE COURT:  Okay.  Is that what you're asking for?

23           MR. SISCA:  I think it's close enough, Your Honor.

24           THE COURT:  All right.  With respect to the social

25 security numbers, Mr. Sisca, I think I'm going to stick with what

1  I ruled in the Pittsburgh Corning case.  I think there is -- I am

2  really concerned about the privacy of these individuals.  I

3  understand the rules there and I think I'm going well far and

4  above what any other Court has ever done with respect to

5  requiring compliance with Rule 2019 and I really don't think that

6  I want to have disclosed, especially for people who have some

7  form of disease, on a public record any more identifying

8  information than is necessary.  And social security numbers, even

9  the last four digits are used for so many things that if that

10 information plus a name, plus an address, plus a disease were to

11 get out to someone for any reason I think it really could cause

12 some phone calls and unwanted letters and I just don't see the

13 need for it.  But I do want, as this order provides, the ability

14 to add that requirement for cause.  Which, as I said earlier, if

15 there's some confusion in who the person is or the firm or

16 whatever then I would add it at that time.

17         MR. SISCA:  Thank you, Your Honor.

18         THE COURT:  Okay.

19         MR. ESSERMAN:  Your Honor, may I address one issue that

20 Mr. Sisca raised?

21         THE COURT:  Yes.

22         MR. ESSERMAN:  We discussed exemplars and I do not

23 intend and I'm not going to go back over what we discussed on

24 that or what our view is, but I did want to let Your Honor know

25 that there are some firms that may actually find it easier --

1   that I've talked to that may actually find it easier to attach

2   the actual contract itself.

3          THE COURT:  That's fine.  It's up to them.

4          MR. ESSERMAN:  And that would satisfy especially firms

5   that have, you know, lesser number of claimants rather than more

6   number of claimants.  So this -- in some cases those will be

7   attached.

8          THE COURT:  Yeah, that's fine.  I was only ordering the

9   exemplar clause as a means for those firms that use the same

10  document repetitiously do not have to file or scan in or whatever

11  thousands of pages.

12         MR. ESSERMAN:  And that is what I told them and the

13  explanation -- that is the explanation I gave them and I as well

14  told them that they could attach the actual documents if they

15  wanted to.

16         THE COURT:  Okay, that's fine.

17         MR. ESSERMAN:  Thank you.

18         THE COURT:  Mr. Roten.

19         MR. ROTEN:  Good afternoon, Your Honor.

20         THE COURT:  Good afternoon.

21         MR. ROTEN:  Your Honor, at the conclusion of the PCC

22  hearing Your Honor ordered us to get together with the debtor and

23  try and come up with an order that stated what the Court had

24  ruled in open court and to try to smooth off any edges and so

25  forth that we might have a disagreement about.  We have done

1  that.  We have gone back and forth with Mr. Ziegler over the last

2  few days.  We've done everything we can to compromise our points

3  and we've made a lot of progress.  Your Honor may remember that

4  at the original hearing on this point when I argued our points I

5  tried to concede as many things as I could at that point in order

6  to reach a compromise that would be acceptable to us.  And I

7  think that we've taken a very reasonable position in this and we

8  have tried to do what the Court instructed us to do.

9          For that reason I would like, I think it would be

10 helpful to me and maybe to the Court if we could more or less

11 kind of work off of Mr. Ziegler's proposed order that he sent out

12 this morning.

13          THE COURT:  Sure.

14          MR. ROTEN:  We certainly recognize, Your Honor, that in

15 all the cases Your Honor's in we need in one order whatever it is

16 and whether disagree or agree we have to have one consistent

17 order.  There may be inconsistencies between the various courts

18 on this matter, but certainly in Your Honor's court we need to

19 have the same order in place.

20          So, Your Honor, the first thing -- the first point I

21 would like to make with Mr. Ziegler's order is the second

22 paragraph on Page 1 that says one the later of 60 days.  Do you

23 see that point, Your Honor?

24          THE COURT:  Yes, I do.

25          MR. ROTEN:  If Your Honor will remember Your Honor's

1 original order said ten days from the date of entry of the order

2 they had to file their 2019s.

3        THE COURT:  Yes, it did, but I did check the transcript

4 and I did say 60 days, Mr. Roten.  I looked at that this morning.

5        MR. ROTEN:  Oh, I'm not arguing that point at all.  I

6 acknowledge that the Court did say 60 days.  The Court said 60

7 days from the date of the order.

8        THE COURT:  Right,.

9        MR. ROTEN:  And what they've done here is they've

10 changed that.  This is not what the Court ordered.  What they

11 rendered -- may I just address this, Your Honor?

12        THE COURT:  Well, yes, I understand it isn't, Mr.

13 Roten, except that if counsel hasn't yet entered an appearance or

14 filed a claim or cast a ballot then they're not going to be on

15 any service list to even get a copy of this order.

16        MR. ROTEN:  That's right, Your Honor, but the

17 additional language there I would submit to the Court does not

18 achieve that purpose.  As quick as lawyer gets involved in the

19 case the order is going to apply to that lawyer and that lawyer's

20 got 60 days.

21        THE COURT:  Right.

22        MR. ROTEN:  Whatever that may be with respect to this

23 case.

24        THE COURT:  That's what I agree with that.

25        MR. ROTEN:  The lawyers who are out there and not

1 representing anybody in this lawsuit have no reason to comply

2 with this.  The way this is written, though, Your Honor, the

3 intention to us seems to be that the plaintiff's lawyers want

4 this so that they can wait until they file their master ballots.

5 The very last thing they do in the case even though they're

6 represented by Mr. Lockwood or whoever in this case and are in

7 all these cases and they've filed many over the years.

8          THE COURT:  I have a solution.  Let's just say not

9 later than the day that is 60 days from the date of this order or

10 the date counsel first enters an appearance, files a claim or

11 casts a ballot, whichever comes first.

12          MR. ROTEN:  Okay.

13          THE COURT:  If they're already in the case then they

14 have 60 days.

15          MR. ROTEN:  That's fine, Your Honor.  Your Honor, may I

16 finish my argument?  With all due respect to Mr. Lockwood.

17          MR. LOCKWOOD:  Your Honor, is just making a ruling that

18 I'd like to address.  I mean, Mr. Roten wants to put this in his

19 pocket as though he was part of his argument.

20          MR. ROTEN:  Your Honor, I have studiously respected my

21 colleagues and I do not interrupt them during their argument --

22          THE COURT:  All right, let me explain.  I am not making

23 rulings, I'm making suggestions.  I'm not making any rulings

24 until I hear from everybody.  Go ahead, Mr. Roten.

25          MR. ROTEN:  Your Honor has always allowed every lawyer

1  who's come into Your Honor's court to address all these points.

2  I just want to make my argument and sit down and if I have

3  something else to say I'll ask the Court to regress it.  But

4  counsel's continued objection --

5           THE COURT:  All right, let's go on, Mr. Roten.  You've

6  made your point.

7           MR. ROTEN:  Thank you, Your Honor.  That's the first

8  point.  The second point, Your Honor, is on Page 2.  These

9  findings are not all ordered but do you see item 2 that deals

10  with the Excel spreadsheet?

11           THE COURT:  Yes.

12           MR. ROTEN:  Items A and B I would like to make a

13  suggestion about that.

14           THE COURT:  All right.

15           MR. ROTEN:  On the Excel spreadsheet we thing there

16  should be a separate box on the Excel spreadsheet so that instead

17  of having the name and address the way it's set up now, have the

18  name and address all in one block which is not searchable.

19           THE COURT:  Yeah, that's fine.  I would prefer to have

20  the social security number blocks reserved in any event rather

21  than adding it underneath the creditor because I don't think

22  they're going to be used very often.  So name and address can be

23  in separate fields.  That's fine.  If the spreadsheet permits it.

24  I assume the spreadsheet does.

25           MR. ROTEN:  Yes, Your Honor.  What we would ask is for

1  a separate box for the first name and last name and middle
2  initial and a separate box for the address so that they would
3  have the address and then they would have the state and the zip
4  code.  That way the data base is searchable.  If all of that data
5  is in one block and then you put in street, for example, is what
6  you're searching, you'll get everyone that's got the word street
7  in it and it's unsearchable.
8          THE COURT:  Yes.  I don't know that the creditor's name
9  has to be in separate blocks by first, middle and last though.
10 You can still search within that field.  If the name is Field,
11 for example, and you want to search in field you're going to get
12 all the fields in block 1.
13         MR. ROTEN:  But you'll get every John.
14         THE COURT:  Right.
15         MR. ROTEN:  And you would get every Mary and so forth
16 and it would be --
17         THE COURT:  Yes.  But you wouldn't search on a John or
18 Mary.
19         MR. ROTEN:  But you would only -- well, I mean if
20 someone is named John Smith you would search John Smith and you
21 might get ten million Johns.  Whereas if you got them in separate
22 blocks you would search by both blocks and you would only get
23 John Smith.  You wouldn't get that name every time.
24         THE COURT:  What's the difficulty in those of you who
25 are going to be doing the data entry in putting first name in one

1  field, a last name in another field?  I'm not sure it really

2  matters if you tab over to another field.

3          MR. ESSERMAN:  May I speak, Your Honor?

4          THE COURT:  Yes.

5          MR. ESSERMAN:  I really don't know is the answer.  And

6  frankly if it's doable in an Excel spreadsheet without any

7  significant increase in effort I think it's fine.  If it's not

8  like it was before, the order that we had before this amendatory

9  order on the Excel spreadsheet it's a problem.  And unfortunately

10 I can't tell you.  I don't have enough Excel experience.

11          THE COURT:  Having worked on Excel spreadsheets myself

12 I don't think it should be an issue.  It should be a matter of

13 setting up the codes and tabbing over.  But because of how much

14 data you're putting in, I just don't know.  So, Mr. Roten, this

15 is what I'll do.  I will require somebody to do a test.

16          Mr. Ziegler you're here, I know how you love this.  Mr.

17 Ziegler's office will perform a test to see whether or not it's

18 possible to set the spreadsheet up with separate fields.  If it

19 is that's how it will be.  If not, the first name -- I'm sorry,

20 the whole name will be in one field and the whole address will be

21 in another.  If it's possible to separate it by first name,

22 middle name or initial, last name, so those are three fields, and

23 then street address regardless of how many lines.  Post office

24 box, street address, apartment, whatever, in one field, city in

25 one field, state in one field and then zip code.  Those will all

1 be in separate boxes.  If it's not possible then we'll have two

2 boxes.  One for name and one for address.

3          MR. ESSERMAN:  Your Honor, I do know from some

4 experience that the whole name in one field and the address in

5 another field is very doable and it's not a problem.

6          THE COURT:  Yes, I know.  So at a minimum that's how it

7 is to be.  The name in one and the address in another.  But if we

8 can further refine it it'll be further refined, but I'm going to

9 solely rely on Mr. Ziegler's staff to figure it out and whatever

10 way his staff says this is the easiest way to do it that's what

11 I'll agree to.

12          MR. ROTEN:  Thank you, Your Honor.  The next point is

13 item G on the bottom of Page 2.  And we don't disagree with the

14 concept here at all.  It's the word indication.  It says for

15 personal injury claims and indication of type of disease giving

16 rise to the claim.  I just think indication is kind of vague and

17 I would like to have the word description or diagnoses or

18 something a little more specific.

19          THE COURT:  How about just the type?

20          MR. ROTEN:  That'll be fine.

21          THE COURT:  For personal injury claimants the type of

22 disease.  If it's unknown they'll say unknown.

23          MR. ROTEN:  We don't have any objection to that, Your

24 Honor.

25          THE COURT:  Mr. Ziegler?

1          MR. ZIEGLER:  All right, Your Honor.

2          THE COURT:  All right, that'll be changed.

3          MR. ROTEN:  And Your Honor, this -- we only have one

4   issue left with this order.  It's the same issue we had that we

5   argued before.  And I'm not going to go back and go through all

6   of our arguments again either, but I do object -- this is on Page

7   3, it's the third paragraph from the bottom.

8          THE COURT:  Okay, that the debtor maintains the copies?

9          MR. ROTEN:  We don't have any problem with the debtor

10  keeping copies.  Your Honor, what we have a problem with is not

11  having access to the data.  And we had made that objection

12  before.  We filed a supplementary brief, a very short two or

13  three page brief with this Court this morning or it may have been

14  filed yesterday.

15         THE COURT:  I haven't seen it.

16         MR. ROTEN:  In that brief, Your Honor, we lay out the

17  basis for our objection to this.  And this is the basis, Your

18  Honor.  These -- the Rule 2019 require that these be filed with

19  the Court.  Your Honor has acknowledged that, these are being

20  filed with the clerk and the debtor is keeping a copy.  We don't

21  want to overrun the Court with this any more than Your Honor

22  does.  We don't want to cause the Court any problem.

23         However, Your Honor, these documents are public records

24  and they are open to examination by any entity at reasonable

25  times without charge pursuant to bankruptcy code 107(a).

1          THE COURT:  But reasonable access still nonetheless

2    gives the Court the discretion to protect privacy interests of

3    various people.  And, yes, I think that there is a certain level

4    of public access which can be provided and maybe it's for another

5    day.  Frankly I'd like to get the statements filed first and then

6    worry about how to get access to them, because right now I don't

7    even have them filed.  So I think that ought to be the first

8    step.  And I'll throw this out.  I'm not making a ruling, I'm

9    throwing it out for people to discuss.  To the extent that it's

10   necessary to somehow spread something on the record and I don't

11   know that it is, about who the creditors are, is it possible to

12   do a name of the creditor without any other identifying

13   information on the public record?  Just the name.  Because it

14   seems to me if someone has a challenge to a specific name they

15   can raise it.  And there are a lot of John Smiths in the world.

16   I'm having some difficulty seeing how just putting their name on

17   a public record is violating their privacy.  But without any

18   further information.  I think that gives everybody a very good

19   chance to take a look at a list and say, you know, that Judy

20   Fitzgerald she's got 25 claims filed and 25 cases, I want to do

21   something about that or further look into it and then file

22   whatever motion they think is appropriate.

23          MR. ROTEN:  Well, Your Honor, actually the -- the Rule

24   actually doesn't say reasonable conditions.  It says they are

25   open to examination by any entity at any reasonable time.  It's

1  the time part that's reasonable, Your Honor.

2           THE COURT:  I don't --

3           MR. ROTEN:  107(a), Your Honor.

4           THE COURT:  Yes.  But on 107(b) it says that on request

5  of a party in interest the bankruptcy court shall.  And on the

6  bankruptcy court's own motion may protect an entity or protect a

7  person with respect to scandalous or defamatory matter or other

8  types of information.  I think under 105 although 107 talks in

9  terms of scandalous or defamatory matter 107 was written at a

10 time where the privacy concerns were not as realistic, where

11 identify theft was not the most prevalent crime in the United

12 States.  And it seems to me that 105 gives me sufficient

13 authority under these circumstances to protect privacy of a

14 party, i.e., a creditor as well.

15          So to the extent that 107 might provide for -- or does,

16 in fact, provide for public access I think the Court has the

17 ability to control that access in reasonable ways.  I think if

18 it's necessary to list a creditor's name I might be willing to go

19 that far.  I'm not going to require anything else to be spread on

20 the public docket.

21          MR. ROTEN:  Your Honor, I'd like to -- for the record

22 I'd like to respond to the Court's statement.

23          THE COURT:  Yes.  Sure.

24          MR. ROTEN:  I don't disagree that 107(b) does in fact

25 give the Court basis for limiting access.  In fact we addressed

1  that in the motion -- the supplemental brief we filed with court.

2  However, 107(b), Your Honor, is very narrowly restricted and it

3  does as the Court noted deal with scandalous matters and we're

4  not talking about scandalous matters, but it also specifically

5  protects trade secrets and intellectual property which is a new

6  phenomenon.  And 107(b) is limited to trade secrets and

7  scandalous matters.  Neither of those is at issue in this case.

8  And 107(b), Your Honor, we contend is not a valid basis for

9  withholding this information from us.

10        THE COURT:  Well, I don't know that trade secrets may

11  not be involved to the extent that for example some counsel's

12  pricing mechanism is in fact something that it does and it's

13  trade in business.  So I don't think trade secret in the

14  commercial sense of filing a document that is copyright protected

15  certainly is not the issue.  But I'm not sure that it's not a

16  trade secret in the generic sense of the term.  So even with

17  respect to that issue I'm not sure I agree.  But my primary

18  concern right now is with the privacy rights of all of the

19  creditors at issue.  And frankly, Mr. Roten, I think as I said

20  earlier I am going far and beyond what any Court has ever done

21  with respect to Rule 2019.  I'm willing to do it because I think

22  the Rule requires some reasonableness in application.  But every

23  case that I've been able to find so far indicates that the Court

24  can tailor the requirements of Rule 2019 and I think what I've

25  done is an appropriate compromise.  So for now I'm happy to get

1  the statements filed.  If you want to raise access in a separate

2  motion later frankly, you know, I think I'd prefer to deal with

3  it then.  I don't want to at this point say you have no right to

4  access or that you have a right to access, I just want to get the

5  2019 statements filed of record first and see what we're dealing

6  with because right now I don't know.

7        MR. ROTEN:  I understand Your Honor's thought

8  processes.  I'd like to add a couple of points to that, if I may.

9  I understand that Your Honor's concerned about privacy.  Of

10  course we have concerns and Your Honor must understand the

11  concerns of the litigants in this case.  We contend that we're

12  parties in interest.  Your Honor has heard our argument many

13  times and in many different cases.  I've made it myself

14  repeatedly to Your Honor and Your Honor understands why we thing

15  we're parties in interest in this case.  If we as litigants or as

16  parties in interest can be given access to this data we're happy

17  with that.  If we're going to be denied access to this data we

18  cannot accept that, Your Honor.  And so I understand the Court

19  will rule and we'll get whatever we get.  I understand how it

20  works.  What I'm saying to Your Honor is that this is the one

21  issue with -- we've mentioned a couple of things that Your

22  Honor's already taken care of.  This is the one issue that's

23  outstanding to us from this order that the Court's getting ready

24  to enter.  This is the one issue that is of greatest concern to

25  us.  We're not here to argue that everybody in the world should

1  be given copies of this data.  We, as parties in interest, are

2  entitled to this data.  I think at some point, Your Honor, we

3  need to get a clarification about what the Court is going to do

4  with respect to our access.  Because if there's an appeal by

5  either of the plaintiff's lawyers or by us from the entry of this

6  order or in our case access to the data that appeal might be

7  entirely mooted out and unnecessary if the Court would indicate

8  to us that we could get access to this data for the purposes of

9  this litigation.

10        THE COURT:  Well, I think that it was not just your

11 clients, but anyone who wants access to the date has to file a

12 motion and I'll have a hearing with respect to that access.

13 That's what I intend to do.  So I'm not saying you have or you

14 don't have it.  At this point in time I simply want to get the

15 statements filed of record and then if somebody wants access I

16 think it's appropriate to ask the Court for it because of the

17 privacy concerns I've raised.  I don't think that creates an

18 undue burden especially in these cases where you folks are here

19 every month like clockwork in number of cases.  So I really don't

20 think that's an undue burden on any party in interest in the

21 case.  And that's not making a finding that your clients are

22 parties in interest just that you contend your party's an

23 interest and if you are I think you've got open door access to

24 the Court.  So I think the order as crafted provides that

25 opportunity and that should be sufficient to get the issue raised

1  later in a timely fashion.

2        MR. ROTEN:  Your Honor, I understand your ruling and

3  I'm sympathetic to the objective the Court is trying to achieve.

4  I would just like to make one final point.  And that is that as I

5  indicated at the hearing in the PPC case we're trying to

6  cooperate with everybody else in this court to reach a mutually

7  acceptable order on these 2019s.  I don't want that cooperation

8  to be misunderstood as a waiver of any objection we might have --

9        THE COURT:  Oh, I don't think anybody thinks you're

10  waiving any objections.  I certainly don't.

11        MR. ROTEN:  To any 2019 objection, Your Honor.

12        THE COURT:  Well, I don't know that you have a right to

13  even request 2019 statements, Mr. Roten, but I know you and I may

14  have a difference of opinion and I certainly understand that

15  you're not waiving your rights with respect to it.

16        MR. ROTEN:  That you, Your Honor, that's all I have.

17        THE COURT:  Mr. Bernstein.  Had you entered an

18  appearance?

19        MR. BERNSTEIN:  I had not, Your Honor.  Robert

20  Bernstein on behalf of several asbestos plaintiff firms in the

21  Pittsburgh cases.  A question, a clarification with regard to

22  your statement concerning the splitting up of the fields.  I

23  thought I heard you say that it was really up to Mr. Ziegler to

24  see whether the spreadsheet could handle it.

25        THE COURT:  Right.

1          MR. BERNSTEIN:  I would respectfully suggest that it's

2  more a question of whether the firms providing the information

3  can provide it.  I can tell you from my perspective and Your

4  Honor knows that my firm is fairly technologically advanced, our

5  system could not easily separate the first and last name of the

6  client entries in our database.  It would become a manual

7  process.

8          THE COURT:  Oh, I thought this was going to be a manual

9  process anyway.

10          MR. BERNSTEIN:  No, I think most of the firms expect it

11 to be a computerized process, be able to generate these lists

12 from their existing databases.

13          THE COURT:  All right, well, they're still searchable

14 even if the fields are all combined in one. It's just that it

15 would be more cumbersome to do it.  So I'll still rely on what I

16 said earlier.  I think Mr. Ziegler has accommodated all the

17 parties in interest before and I'm sure he's going to be

18 contacting anybody to try to find out what the issues are and I'm

19 still going to rely on however his staff tells me they can do it.

20 His staff has been very, as you say, technically competent in

21 many ways.  And so if they tell me after consultation with the

22 parties that it's not feasible I'll accept that.  If they tell me

23 it is feasible I'll accept that.  It's still searchable one way

24 or another.

25          MR. BERNSTEIN:  That would be fine, Your Honor.

1          THE COURT:  Is there no way that you can separate even

2     out the name from the address, because frankly that would be

3     helpful.

4          MR. BERNSTEIN:  I think it is more likely that the name

5     could be separated from the address than pieces of the name be

6     separated.

7          THE COURT:  Okay, because if it's possible to separate

8     the name into one field, in the event I determine at some point

9     that I want just the names spread on the public record that would

10    make it a lot easier to do.  So I think it would be advisable to

11    create it now so that we have the names in one field and

12    addresses in another.

13         MR. BERNSTEIN:  I think that makes sense and I know

14    everybody's system, but I think it's more likely that they're

15    kept as separate fields than the name kept as -- than the name

16    separated.  Thank you, Your Honor.

17         THE COURT:  All right, that would be fine.  Mr. Roten.

18         MR. ROTEN:  Could I just address that point, briefly?

19         THE COURT:  Yes.

20         MR. ROTEN:  Your Honor, I may be wrong but I believe we

21    already -- we provided to Mr. Ziegler a spreadsheet that has all

22    that broken down already.  I think we did that.

23         THE COURT:  You may have given him a spreadsheet.  My

24    concern isn't whether the spreadsheet can do it, I know the

25    spreadsheet can.  My concern is whether or not the information

1  that's out there can be put into those fields on the spreadsheet.

2  That's what I'm asking his firm to determine.

3          MR. ROTEN:  Your Honor, we will talk to Mr. Ziegler

4  about this.  We would like to have our input into it.  Thank you.

5          THE COURT:  Okay.  I think at a minimum the names

6  should be in one field and the address should be in another, but

7  I don't think that should be impossible.  If it is impossible

8  then one field will have to do it.  It's still searchable.  And

9  this is not a discovery tool.  Mr. Esserman is quite correct.  So

10  I'm not there to make this easier for creditors or parties in

11  interest to search.  That's not the point for discovery.  That's

12  not the point.  But I do think it may be easier if need be to

13  separate names out at a later date if they're in a separate

14  field.

15          Okay, Mr. Lockwood, you wanted to address the issue.

16          MR. LOCKWOOD:  I didn't know whether there was any

17  other folks on Mr. Roten's side of the room that might want to

18  speak first.

19          THE COURT:  Anyone else?  Yes, sir.

20          MR. GRAULICH:  Good afternoon, Your Honor, Timothy

21  Graulich from Weil, Gotshal & Manges for CSFB in the Owens

22  Corning case.

23          THE COURT:  Yes, sir.

24          MR. GRAULICH:  Yes, I'm sort of like being invited late

25  to the party because I'm probably the only one in the room that

1  hasn't had the opportunity to address 2019 in a different case

2  before Your Honor.  So I apologize in advance if I go over

3  anything that's already been decided.  And also I should say I'll

4  be working off your notes because until this hearing I did not

5  have a copy of the proposed order.

6          THE COURT:  Neither did I, so okay.

7          MR. GRAULICH:  Well, putting that all on the record

8  CSFB's concern in this case, and there's an obvious tension here

9  between disclosure and transparency on the one hand and privacy

10 on the other hand.  And I understand everybody in the room has

11 been struggling with how best to deal with those competing

12 issues.  But obviously from CSFB's perspective we think that the

13 calculus does shift in favor of disclosure as much as possible.

14 And from our perspective we stand in a little bit different

15 position even than some of the insurance companies.  We are

16 clearly a party in interest.  We are probably the largest

17 commercial creditor in the Owens Corning case.  We are the party

18 that will be opposing estimation which is scheduled before Judge

19 Fulham in January and we also already have confidentiality

20 agreements with the debtor where we have access to much of this

21 information already.

22          To the extent that these claims were truly pre-petition

23 claims and that were in the system pre-petition our expert

24 already has access to this information already including social

25 security number, address, disease category and the like.

1          THE COURT:  Well, then, you don't need it from here.

2          MR. GRAULICH:  Well, what this would be would be

3 additive to the extent that people are, you know, we are now four

4 years into the case.  The extent that over the last four years I

5 suspect that many of these firms have signed up new clients who

6 have pre-petition claims, who just came in through happenstance

7 after the case commenced.  And to the extent that this

8 information would be additive and helpful in connection with the

9 process that's going on in the district court and to the extent

10 that CSFB is already party to a confidentiality agreement I think

11 at the bare minimum CSFB should have access to this information.

12         THE COURT:  This order provides that if you want it you

13 file a motion.  That's the last time I'm going to say it.  If you

14 want it file a motion and I'll deal with it in that context.  I'm

15 not going to provide access at this point in time.  All I'm going

16 to do now is require the statements to be filed.  I'll figure out

17 the access rules when you folks properly tee up a motion, not hit

18 me with it cold on this.  That's number one.

19         Number two, with respect to CSFB where have you been

20 for four years?  You know, if anybody is subject to a laches

21 defense it's CSFB int his issue.  So I'm not too much inclined to

22 care about what CSFB wants because you haven't been here on this

23 issue for four years.

24         MR. GRAULICH:  Okay, I believe that the creditors

25 committee for which members of the bank group participate has

1 been raising this issue.  The reason that we are now raising this

2 issue is that the creditors --

3        THE COURT:  Rule 2019, no.  They have not.  The issue

4 came up, as I understand it, because I entered a 2019 order in

5 all of these cases on Mr. Roten's motion in one case.

6        MR. GRAULICH:  That's absolutely right, Your Honor, but

7 in December -- and this even predates my firm's involvement in

8 the case -- I have brought a transcript in December where Mr.

9 Case was quite adamant about asking for 2019 statements in --

10

11        THE COURT:  To the best of my recollection, I may be

12 wrong, there are a lot of cases, I don't recall seeing that

13 motion.  If I'm incorrect and somehow or other I either haven't

14 ruled on it or I ruled inappropriately -- and he hasn't appealed

15 it if I ruled inappropriately -- and if it's still out there tell

16 him to contact Mr. Pernick and get it put back on my agenda,

17 because I don't remember it.

18        MR. GRAULICH:  I think it came up in the context of the

19 voting procedures, Your Honor.

20        THE COURT:  Well, yes, it did.  In the voting

21 procedures motion there were issues which I dealt with in that

22 context.  But in terms of a Rule 2019 motion itself your clients

23 have not appeared before this Court nor has the creditors

24 committee and frankly it's too little and too late at this point.

25 I'm dealing with this in an appropriate context, I'm making

1  people file this information.  If anybody wants access this order

2  simply provides that you file a motion.  So file a motion and

3  I'll deal with it in that context.

4          MR. GRAULICH:  Okay.

5          MR. PERNICK:  Your Honor, just to help the record a

6  little bit, I think that's correct that it came up last December

7  in the context of voting procedures.  It wasn't a 2019 motion.

8  Just so Your Honor might recall, because there were a lot of

9  cases, the debtors actually did file a 2019 motion and then we

10  did not know about your order because it wasn't out yet.  It came

11  out between the time we filed it and the time that the hearing

12  was supposed to be held.  We then withdrew that when we saw that

13  Your Honor had entered the amendatory order and we spoke about it

14  at the last hearing and we withdrew it knowing that this hearing

15  was going to take place.

16          THE COURT:  I thought I was addressing the creditors

17  committee, but okay, thank you.

18          MR. GRAULICH:  Thank you, Judge.  Just a couple of

19  other issues.  The other issue would be timing.  I know Your

20  Honor is concerned about the fact that CSFB perhaps has been

21  untimely in this, but it you look at this the obligation is

22  actually incumbent upon the law firms and the law firms were at

23  least equally untimely and in fact more untimely because they had

24  an obligation for four years to comply.  They've had now 60 days

25  -- almost 60 days from the first amendatory order.  Additionally

1  I understand that most of these same firms probably participate

2  in the Congoleum matter.  Judge Ferguson has ordered compliance

3  with 2019 I think in ten days.  So particularly if what the

4  statements are going to be are computer generated our concern is

5  that an additional 60 days is just going to push this out, you

6  know, in perpetuity so that --

7          THE COURT:  The reason that I picked 60 days at the

8  last hearing was because I want to make sure, number one, that we

9  have a format that is going to be used in all the cases.  I want

10 that format.  I think it will be helpful to everyone who

11 eventually gets access including the Court and the noticing agent

12 if that's going to be appropriate to have the information in the

13 same format.  Because I think we can then key ballots later to

14 that same format so that if it's necessary for the voting agent

15 to run some sort of a comparative search it will be possible

16 within a specific case.  So I think 60 days is appropriate.  I've

17 already decided that in the Pittsburgh Corning case, I'm deciding

18 it now in this case.

19         MR. GRAULICH:  Understood, Your Honor.  Just a few more

20 items.  The social security numbers.  Again, this is a concern

21 about timing.  In fact, we've already discussed this issue with

22 our agent with our expert in estimation.  The names and addresses

23 and even the first four digits of the social security number,

24 even though that's not very additive, would actually solve a lot

25 of the problems according to our expert.  So even if there's a

concern about privacy, and I'm not so sure how powerful the

concern of privacy is if no one's going to be entitled to see

these records anyway without further order of the Court that why

don't we just not put the law firms through doing this twice,

just do it once and put the social security numbers in there.

THE COURT:  I don't have any intention of requiring

social security numbers unless there's cause to require it which

in my view at the moment, I mean, there could be other things

that I obviously haven't thought of, but if there's some

confusion either in which firm represents a specific creditor or

whether or not there is more than one creditor with the same

name, that's the only reason right now that I can think of that I

would require it.  So I don't intend to put the law firms through

it twice.  I don't intend to put them through it once.

MR. GRAULICH:  And so just so I'm clear on the process

this would be done only at what time?  What point would people

realize that there are duplicate of names there?

THE COURT:  When either the voting agent or the debtor

or whoever has access or the person who's filing the document.

In fact, maybe that's what I need to do, put the initial burden

on the person filing the document to add a social security number

if within that document there is some duplication.  Because you

could, for example, have two Joe Smiths living at the same

address.  They might be father and son.  And it would be helpful

to know that they're a different entity.  So maybe that wouldn't

1   be a bad idea.  I don't think that would be unduly burdensome.

2                    MR. GRAULICH:  Okay.

3                    THE COURT:  Pardon me, you folks on the phone, please

4   put your mute buttons on.  I think it's because we have dial in

5   we don't have any control over the speaker pad.  Folks on the

6   phone, we are hearing people talking.  Can someone who does have

7   a mute button on say something on the phone telling those people

8   who do not to please put their mute buttons on.

9                    UNIDENTIFIED MALE ATTORNEY:  Anthony, put your phone

10  one mute.

11                   THE COURT:  Thank you.  Okay.

12                   MR. GRAULICH:  I wasn't sure, this may already be

13  addressed in the order, but just flipping through it quickly

14  right now I didn't see it.  In Your Honor's notes there was an

15  open issue about how the Court would deal with 2019(a)(3).

16                   THE COURT:  Okay.

17                   MR. GRAULICH:  Which is the information regarding the

18  facts and circumstances regarding the employment of the entity.

19                   THE COURT:  Yes.

20                   MR. GRAULICH:  And one issue that has been recently

21  raised in the Congoleum case, and I think Judge Ferguson has

22  ruled just as of yesterday, that fee sharing agreements are

23  appropriate under 2019(a)(3).  And CSFB agrees with that ruling

24  and believed that that would fall within the plain meaning of

25  these words.

1          THE COURT:  If that's how they got employed it is.  If

2  it's not how they got employed I think it's not.

3          MR. GRAULICH:  Well, obviously, Judge, obviously if

4  it's not relevant then it's not relevant.  The other thing that I

5  would like to note and I believe counsel from one of the

6  insurance companies were here yesterday, the other thing that I

7  would just like to just to back track just so that it's on the

8  record with transparency is that I believe that Judge Ferguson

9  has ordered the Congoleum statements to be filed on the public

10  record so that they were freely available to all parties.  And,

11  again, I would just reiterate that we believe that that is the

12  appropriate calculus here, that there are legitimate issues, that

13  parties have -- should have the right to be able to look at these

14  documents, to be able to raise issues to the Court because

15  frankly I'm not so sure how this process is going to play itself

16  out if no party in interest has the ability to review these

17  documents.

18          THE COURT:  Well, I don't know that no party will have

19  the ability to review them.  I just think you need to tell me why

20  you're A) a party in interest, because I'm not sure that people

21  are.  And I do think there are some privacy concerns.  I don't

22  know what Judge Ferguson has ruled.  I haven't seen an opinion or

23  any other information from her so I don't know what she's

24  requiring with respect to 2019 statements.  So I don't know

25  whether this is on a -- what I'm doing is on a parody with what

1  she's doing because I simply don't know.

2       MR. GRAULICH:  It is very similar, but that one

3  significant in our view is that her statements will be on the

4  record and that the same parties in this case that are claiming

5  that they should not have to produce it because -- the statements

6  because it's a private matter, the privacy concern should be less

7  by the fact that they're already in the public domain in that

8  they're being filed in other cases.

9       THE COURT:  Well, I don't know that they're being filed

10 in other cases because I don't know that there is an identity of

11 creditors.  I would assume based on the universe of asbestos

12 plaintiffs that some asbestos plaintiffs may have some

13 duplication, but not everyone, number one.

14       Number two, I still think there's a privacy concern and

15 I think that it's appropriate to do this the way I'm doing it

16 with the right of any party to request access to those documents.

17 And Number three, having one case in which all of this is filed

18 on the public record may not destroy your computer system.

19 Having, I think, seven or eight in Delaware with all of the

20 statements that have to be filed with listing in some cases of

21 upwards of 500,000 creditors will take up every resource the

22 Court has.  And that's not the purpose.  So I think requiring

23 them to come in on a CD rom so that the Court has the disks and

24 in the event the disclosure is authorized and copies of those

25 disks can be provided or some other mechanism can be utilized to

1 provide access I believe is sufficient requirements.  The 2019

2 statement itself obviously will be on the public record, it's

3 just the exhibits that will not.

4          MR. GRAULICH:  Okay, thank you, Your Honor.

5          MR. SVIRSKY:  Good afternoon, Your Honor, Gary Svirsky

6 for O'Melveny & Myers in the Owens Corning case representing

7 Century.  I'm also a little bit late to this party because I

8 haven't had a chance to argue any of these 2019 motions before

9 Your Honor and I apologize if I'm going to cover something that

10 may have been covered in one of the other cases.

11          There was some mention of Judge Ferguson's ruling in

12 the Congoleum matter yesterday and I come primarily to bring

13 tidings of that ruling with which my firm was intimately

14 involved.  And essentially Judge Ferguson entered an order that

15 under Rule 2019 that is very similar to what this Court has

16 entered in many ways.  And a motion was brought under Rule 59 by

17 essentially the very same parties that have brought the motion

18 before Your Honor today.  And Judge Ferguson denied that motion

19 to amend her order and she specifically ruled that the

20 information that -- the creditor information, the names and so

21 forth, the attorneys who represent them, and all the information

22 about which we're talking about now is to be filed on the public

23 -- on the docket in the public record.  And she also went further

24 and we submitted to Your Honor last week taking a position that

25 if you're going to amend your order that we request that co-

1  counsel fee sharing information be also required under this Rule

2  2019 order.  And that is something that Judge Ferguson

3  specifically required.  She has ordered all firms to have fee

4  sharing arrangements to disclose that information.  She ordered

5  that in fact on September 2nd before this Rule 59 motion to amend

6  was entered.  And since that time roughly 60 firms have already

7  made disclosures pursuant to this order.  And some of the

8  information that has surfaced is, to say the very least, puzzling

9  and even disturbing.  There are firms sharing as much as 30, 40,

10  50 percent of their fees with attorneys who are serving on the

11  ACC and another powerful group of lawyers who many of whom are

12  represented in this courtroom today.  And it's yet unclear

13  exactly what the consequences of this are to the reorganization

14  and to the integrity of the Court as a whole.  But if anything

15  these facts that have come to light so far reinforce the need for

16  this sort of disclosure and on Monday Judge Ferguson heard

17  argument about not allowing this disclosure from the movants here

18  and she dismissed that outright.

19          Now, I realize this is not -- this is a sister court

20  and I'm just informing Your Honor of something that has happened

21  in a similar -- very similar mass tort situation.  I'm sure

22  you're aware of that case involving very many of the same players

23  and actually the very same individuals who have made the

24  arguments and Judge Ferguson has ruled on them.

25          THE COURT:  Well, I think I've already ruled, too.

1  That if in fact the fee sharing arrangement is the mechanism by

2  which a firm got involved in the case that's to be set out in

3  Rule H.  That's what a recital of the pertinent facts and

4  circumstances means.

5         MR. SVIRSKY:  And I'm not sure whether Your Honor has

6  ruled already on whether that information will be made available

7  to the litigants or whether --

8         THE COURT:  I'm not making any information available to

9  the litigants absent a court order when I get a motion filed by a

10 party.  I will schedule and have the debtors' counsels schedule

11 all such motions.  I may determine that it's appropriate, I may

12 not, because I don't know.  I haven't been faced with those

13 motions right now.

14        MR. SVIRSKY:  And I apologize if I'm going over it.

15 Since I'm going last I think I'm going over some ground that

16 others have covered.  But absent an opportunity for the

17 litigants, particularly the people on this side of the courtroom

18 to take a look at this information the effect of Rule 2019 its

19 monitoring impact will be rendered --

20        THE COURT:  But I see no monitoring impact.  This is an

21 issue I believe for the Court.  That's what Rule 2019 is there to

22 do.  It's to make sure that in fact the parties that an attorney

23 alleges are clients of that firm in fact have signed the

24 appropriate documents to retain that firm.  And that, I think,

25 there is no duplication to the extent that one party may go to

1 two or three different firms and two or three entities think

2 they're representing that firm then, you know, I think it's an

3 appropriate inquiry for the Court to say, look, you know, who

4 really does represent you in this case?  It may be that a

5 creditor has claims in more than one case and has different law

6 firms in each case.  There's nothing wrong with that.  And absent

7 getting paid through the bankruptcy code there is also nothing

8 wrong with fee sharing arrangements.  The code has a restriction

9 in some circumstances that prohibit it.  So if in fact there's a

10 fee sharing arrangement which is the basis by which somebody got

11 involved in the case it's going to have to be set out.

12          MR. SVIRSKY:  I agree with that, Your Honor, but it

13 just --

14          THE COURT:  It's totally irrelevant to anybody else.

15 What difference does it make to the insurance companies, for

16 example, whether a law firm has a fee sharing arrangement with

17 another firm?  It's none of the insurance company's business.

18          MR. SVIRSKY:  Well, if I may I'd like to respond, Your

19 Honor.  It actually, the fee sharing -- the amounts of the fee

20 sharing and some of the consequences of it go much further than

21 what Your Honor just described.  We know, for example, because

22 Judge Ferguson made her ruling on the basis of a more developed

23 evidentiary record than I believe has been developed in this --

24          THE COURT:  There has been no evidentiary record here.

25          MR. SVIRSKY:  Exactly as I thought.  Judge Ferguson

1 had, I think, a factual basis for her ruling that was fuller than

2 we have here.  And to the extent that -- this is what we've seen

3 so far for example in the Congoleum case.  There's firms in

4 Mississippi who at the time that the pre-packaged plan was being

5 negotiated had filed two or three dozen cases against the

6 eventual debtor, against Congoleum after the agreement was being

7 signed or at the time that it was being signed.  Some of these

8 firms were filing as many as eight or nine thousand claims in a

9 span of a couple of months.  And these are firms that are sharing

10 very sizeable amounts with the attorneys that are the subject of

11 our cross motion here or request -- cross request for amendment.

12 And I think that this affects, at the very least the integrity of

13 the reorganization process where claims are being filed because

14 of some insider information that they are receiving from

15 attorneys who are sharing 50 percent of the fees or 30 percent of

16 the fees or some enormous amount of fees for doing essentially no

17 work on the case.

18         THE COURT:  Look, this case, Owens is four years old.

19 To the extent that somebody is now -- and the stay has been in

20 place and a preliminary injunction has been in place.  I can't

21 see how any firm is filing any claim against Owens in any court

22 but here, now.  In fact, in Owens it hasn't happened very often.

23 And in the other cases every time somebody tries regardless of

24 what the theory is it's objected to by virtually everybody but

25 the moving party.  So I don't think that's a significant issue in

1 a case that's four years old.  None of these cases except

2 Flintkote are new cases.

3          MR. SVIRSKY:  No, this is an increase in the number of

4 claims pre-petition, Your Honor.

5          THE COURT:  Look, just because somebody filed a lawsuit

6 that said 12 plaintiffs, for example, were involved in one

7 specific suit doesn't meant that they didn't have another 8000

8 creditors whose claims could have been filed but just weren't for

9 whatever reason.  There are all sorts of state court case

10 management processes out there that prohibit it.  There's nothing

11 to say that a claim is fraudulent in a bankruptcy court simply

12 because it wasn't commenced pre-petition as a litigation.

13          MR. SVIRSKY:  I agree that there could be innocent

14 explanations for it, but at the same time there may be other

15 motives lurking behind why a firm that had 26 claims on file all

16 of a sudden filed 8,267 claims.

17          THE COURT:  So when in fact there is a bar date and an

18 objection to claim process that's set up then I think that's an

19 appropriate time to hear that.  But I don't have either of those

20 in any of these cases at this point.

21          MR. SVIRSKY:  Right and --

22          THE COURT:  So, you know, the claims are presumptively

23 allowed if they're filed, they haven't been filed here.  I don't

24 have a bar date.  Was there a bar date in Congoleum?

25          MR. LOCKWOOD:  Your Honor, Congoleum was pre-packaged

1  bankruptcy case which is being portrayed as being similar to

2  these cases by Mr. Svirsky and it is totally different.

3          MR. SVIRSKY:  Your Honor, I'd like to finish my

4  submissions before Mr. Lockwood steps up.

5          THE COURT:  Well, look, you need to tell me the

6  relevant facts.  I'm sorry, a pre-package --

7          MR. LOCKWOOD:  Well, I object to him interjecting

8  Congoleum in this case, Your Honor.

9          THE COURT:  All right, gentlemen, sit down.

10          MR. LOCKWOOD:  It's irrelevant, extraneous and

11  prejudicial.

12          THE COURT:  If you're going to talk to me about other

13  cases at least tell me the relevant facts.  A pre-packaged

14  asbestos case has very little, if any, resemblance to a non-pre-

15  packaged asbestos case.  I've done enough of them now to know.

16  So please do not mix the issues for me.

17          MR. SVIRSKY:  Your Honor, I was merely trying to

18  illustrate why the large amounts of fee sharing would be relevant

19  to the --

20          THE COURT:  I don't see the relevance here.  I simply

21  don't see it at this point.  This isn't a pre-packaged case and

22  to the extent that there's some inside information that Owens

23  Corning was going to file bankruptcy, if somebody wants to raise

24  issues about what happened four years ago God knows there are

25  enough issues in this -- pardon me, if people don't believe in

1  God let me pick another name.  Somebody knows that there are

2  enough issues pending in this case that if another one is raised

3  it'll be litigated.  But I'm not going to litigate it here.

4        This order, in my view, does everything and probably

5  more than it needs to do.  It provides for protection of the

6  parties' rights to ask us this information by simply filing a

7  motion with this Court telling me why you want it.  And I don't

8  think that's inappropriate.  The problem that the Courts wrestle

9  with with electronic case filing is just that.  Everything gets

10  spread on the public docket and that is not appropriate.  That's

11  not what the electronic case filing system was intended to do

12  where privacy concerns are involved.  It was intended to make

13  access to relevant information more widely available to parties.

14        I agree, that's part of what the system is all about.

15  But it seems to me that requiring somebody to show me how the

16  information is necessary, relevant, whatever term you wish to

17  choose in a motion is not violating anybody's substantial rights.

18  As I said earlier there isn't one of your clients who hasn't

19  appeared almost every single month in all of these cases.  So I

20  don't think it's an undue burden.

21        MR. SVIRSKY:  Thank you, Your Honor.

22        THE COURT:  Anybody else?

23        MR. LUND:  Good afternoon, Your Honor, it's Don Lund

24  from Jones Day.  I noted up front that I'm appearing on behalf of

25  USGN Kaiser.  These comments are purely on behalf of USG.  And it

1  just goes back to Mr. Ziegler's order.  Your Honor, paragraph 2G

2  talks about identifying type of disease.  And then USG's response

3  was filed on Monday.  USG had suggested that the level of disease

4  be indicated whether it be mesothelioma, lung cancer.  I think

5  that's what this order speaks to, but I just wanted to clarify

6  that.

7          THE COURT:  Yes.  But in terms of level I don't want --

8  for myself I would prefer that it not say Level I.  I want to

9  know what Level I means.  If somebody has mesothelioma I

10  understand that word.  Just put mesothelioma down.

11          MR. LUND:  I just wanted to clarify that.  Thank you.

12          THE COURT:  Anyone else?

13          MR. ROTEN:  Your Honor, this may be completely

14  irrelevant, but if Your Honor is interested I have a copy of

15  Judge Ferguson's order I can hand up.

16          THE COURT:  Oh, sure.  I'd be happy to read it.

17          MR. ROTEN:  There's also a copy of the order denying

18  the amendment request.

19          THE COURT:  All right, thank you.  Okay, Mr. Lockwood.

20          MR. LOCKWOOD:  Your Honor, since you've ruled the way I

21  asked you to or would have asked you to in response to most of

22  the objections that we've heard I'm not going to violate the

23  principle of talking about things that you've already won.

24          I want to address one point which is in the order that

25  Mr. Roten directed your attention to and drew a preliminary

1 response to.  It's the second paragraph on the first page of the

2 order where we talked about on the later of the 60 days or the

3 first day.  And as I heard it Your Honor wanted to -- or proposed

4 or suggested we could add whichever comes earlier.

5         THE COURT:  Yeah, rather than the later I want it the

6 earlier.

7         MR. LOCKWOOD:  Well, let me address that.  The reason

8 that it's the later is that if counsel doesn't enter an

9 appearance, file a claim, cast a ballot or take any other

10 affirmative action to participate in a debtor's bankruptcy case

11 then he doesn't have an obligation to file a 2019 even if he

12 thinks -- even if he represents a lot of tort victims who he

13 thinks may be in the future when a master ballot is sent out he

14 might want to come in and file it.

15         THE COURT:  I agree.

16         MR. LOCKWOOD:  And what I think if you say -- if you

17 add whichever comes earlier then literally read on the passage of

18 60 days from this order even if this counsel hasn't entered an

19 appearance he would have to file a 2019.

20         THE COURT:  Yes, you're right.  That is what it would

21 say and that's not what I intend.  I obviously cannot compel and

22 don't intend to compel somebody to file a 2019 statement who

23 isn't involved in the case.  I mean, that isn't the purpose.  But

24 at the point in time in which a creditor enters an appearance in

25 a case or a law firm enters an appearance for a creditor in a

1  case then this order takes affect.  So they get 60 days from the

2  date they first appeared, somehow in the case, or from the date

3  of this order.  If they're already in the case they get 60 days.

4  If they're not in yet they get 60 days from the date they entered

5  the appearance.  No.

6          MR. LOCKWOOD:  Actually, Your Honor, that's not the way

7  it's written.  If they're in the case now they get 60 days.

8          THE COURT:  Right.

9          MR. LOCKWOOD:  If they're not in the case now on the

10 first date that they enter an appearance they have to file a 2019

11 on that date.

12         THE COURT:  Well, yeah, that's what it says, but is

13 that realistic?  I mean, will they have notice?  Because I know I

14 said earlier, and I agree that everybody has notice of the rules

15 because the rules are out there and everybody is supposed to have

16 notice.  But the practical problem is that not everybody is a

17 bankruptcy lawyer and they don't all have notice of the rules.

18 So it seems to me that there should be some opportunity to get

19 served with this order so they know they have the obligation to

20 do it and the format in which they have the obligation to do it.

21         MR. LOCKWOOD:  Well, we didn't think that was actually

22 necessary for the most part because first, if a firm knows enough

23 about the bankruptcy case to enter an appearance in it or file a

24 motion or something like that the chances are they will

25 familiarize themselves or ask the debtor or somebody what they

have to do to enter an appearance.  If they enter an appearance

and they don't file a 2019 somebody will bring that to the

Court's attention and the Court will direct them to file --

remember what the sanctions are for failing the 2019.  You shall

not be heard.  So in effect the Court can say to any law firm

that makes a motion or asks for a -- on the 2002 list and the

debtor is the one that maintains the 2002.  If there's no 2019

the answer is you can't get on the list until you file a 2019.

       So I don't -- and as for master ballots when we

discussed this before my assumption is that in all the cases now

when we sent out voting procedures and ballots there will be a

statement in the voting procedure send out that says if you want

to vote a master ballot you're going to have to file a 2019

statement when you file the master ballot.  So that will give the

people ample time to determine whether they want to file a master

ballot and a 2019 statement or alternatively whether they just

want to pass the ballots on to their clients and let their

clients vote by themselves.

       So I don't -- the problem with giving a second 60 days

is there's a chicken and an egg because as you said how you give

notice to people but on the other hand --

       THE COURT:  Well, I think that your issue concerning

the information on the master ballot, yes, that's also my

assumption.  From now on in all these cases we're going to have

something on the voting procedures that will provide a copy of

1  this order in a notice that they have to --

2           MR. LOCKWOOD:  I'm sure Mr. Roten will monitor that

3  very carefully to make sure that the rest of us don't forget to

4  do that, Your Honor.

5           THE COURT:  Well, I think the debtors' counsel have an

6  obligation to monitor it to make sure it happens, too.

7           MR. LOCKWOOD:  That was jocular.

8           THE COURT:  Well, I'm not.

9                    (Court laughs)

10          MR. LOCKWOOD:  I'm sorry.

11          THE COURT:  So I think we can take care of the master

12 ballot issue.  Mr. Roten, I'm sorry, I agree with the position

13 that you're advocating, but I think you and Mr. Lockwood and I

14 are really all saying the same thing.  If you're in the case

15 you've got 60 days to get this done.  If you're not in the case

16 you have to do it as soon as you get in the case.  I don't see

17 any other way to make it applicable.  You're obviously not

18 required to follow Rule 2019 until you're in the case.

19          MR. ROTEN:  Your Honor, I don't think I disagree with

20 what the Court just said.  I'm just not sure that this says what

21 the Court just said.  I mean, maybe we can work on the language,

22 but I think I certainly agree with what Your Honor said.  As

23 quick as you get in the case you got to file it.  But until you

24 get in the case you have no obligation to file.

25          THE COURT:  It seems to me if it says something like

1  for all counsel of record not later than 60 days from the date of

2  the order you have to file your 2019 statement if it's applicable

3  to you.  For counsel who enter an appearance, represent a

4  creditor, file a claim on behalf of someone or cast a ballot or

5  take any other affirmative action who's not already in the case

6  you have to do it the day you enter --

7          MR. LOCKWOOD:  Let me raise one question about that

8  that just occurred to me, Your Honor.  What happens if a law firm

9  or a law firm's client are the subject of an adversary proceeding

10 and they've got, you know, a very short -- like an injunction.  I

11 tell you, in a lot of these cases we have people coming in and

12 asking for injunctions with a very short return date.  In effect,

13 if a law firm wanted to contest the entry of the injunction

14 they'd have to file a 2019 statement the same time they entered

15 an appearance on behalf of the defendant in the adversary.  So I

16 mean --

17         THE COURT:  That's why I think that the first date they

18 enter an appearance is a little unrealistic.

19         MR. LOCKWOOD:  I think that is.  I hadn't thought about

20 that part, but I now --

21         THE COURT:  Mr. Esserman seems to think the first date

22 works okay.

23         MR. ESSERMAN:  Well, no, I think the first date doesn't

24 work.  I'm sorry.  I agree with Mr. Lockwood.  I think it ought

25 to be the latter because otherwise --

1          THE COURT:  No, I think what we should say is -- I

2     think it should simply say within ten days after you enter an

3     appearance.  If they have reason to ask for cause to have 2019

4     waived surely ten days is enough time.

5          MR. LOCKWOOD:  Or an extension of time.

6          THE COURT:  That's surely enough time to get it.

7          MR. LOCKWOOD:  For example, they could ask for an

8     extension of time.

9          THE COURT:  Right.  Any problem, Mr. Roten, with

10    instead of saying the first date saying within ten days after?  I

11    really think that's more realistic.  I'm not sure they're going

12    to know about this in all cases anyway.

13         MR. ROTEN:  Your Honor, first of all I have just two or

14    three points here.  No, there's no problem with that.  That would

15    be fine with us.

16         THE COURT:  All right.

17         MR. ROTEN:  The second point I have is that most of

18    these -- I don't know about most, a number of the lawyers who

19    would be covered by this are certainly represented by Mr.

20    Lockwood and Mr. Esserman very ably and that at least is a

21    conduit of information from about this order to these people.

22         THE COURT:  Yes.

23         MR. ROTEN:  The final question I have, Your Honor,

24    would this ruling also cover the members of the ACC?

25         THE COURT:  Yes.  If they represent -- it covers

1 anybody --

2          MR. ROTEN:  Lawyers who --

3          THE COURT:  Oh, wait, the members of the ACC.

4          MR. ROTEN:  ACC members who are lawyers who represent

5 people are covered by that.

6          THE COURT:  If they're going to submit master ballots

7 to represent creditors in the case, sure it does.

8          MR. ROTEN:  And does the ACC itself, the committee

9 members themselves?

10          THE COURT:  Absolutely, all committee -- no, the --

11          MR. LOCKWOOD:  The committee members are not lawyers,

12 Your Honor.

13          THE COURT:  The counsel for the committee have that

14 obligation.  Yes.  Not the committee members.  If they're not

15 lawyers who are representing other creditors in the case.

16          MR. ROTEN:  Understood.

17          THE COURT:  This order applies to everybody including

18 CSFB's of counsel if in fact CSFB is representing more than one

19 or its counsel is representing more than one entity.  It applies

20 to everyone, not just asbestos plaintiffs.

21          MR. ROTEN:  Mr. Esserman has drawn that to the Court's

22 attention on several occasions, Your Honor.

23          THE COURT:  Yes, and I wanted to make it clear.

24          MR. LOCKWOOD:  I think there was some colloquy about

25 counsel to the committee.  Are you saying that my firm has to

1 file a 2019 statement beyond our disclosures that we made when we

2 got represented?  I mean, I don't believe any counsel to any of

3 the committees, commercial, PD, et cetera have believed that they

4 have 2019 obligations.  I think that they assumed that their 327

5 and 328 disclosures and the obligations to file supplemental

6 disclosures --

7          THE COURT:  Okay, I'm sorry.  Rule 2019(a) specifically

8 excludes committees appointed under 1102 or 1114.  So, no.  I

9 thought what I was addressing is if counsel to the committee

10 represents somebody else other than the committee, i.e. more than

11 one creditor then yes, you have to file.  If you have a list of

12 creditors you represent you have an obligation to file that 2019

13 statement.

14          MR. ESSERMAN:  That's correct.

15          THE COURT:  That's what I was trying to get to.

16          MR. LOCKWOOD:  Thank you for the clarification, Your

17 Honor.

18          MR. GRAULICH:  Your Honor, Timothy Graulich from Weil,

19 Gotshal again.  I suspect that clarification also applies to

20 CSFB.  Our client is CSFB.  We don't represent multiple clients.

21 We represent CSFB.  So if Weil Gotshal represents other clients

22 we would be required to file a 2019

23 --

24          THE COURT:  Everyone who represents more than one

25 creditor in any of these cases has to file.  Period, end of

1 story, unless the Rule specifically says otherwise and for

2 purposes of this discussion today excludes committees.

3       MR. GRAULICH:  Thank you, Your Honor.  There's been

4 suggestions before.  CSFB is one client so unless we have

5 additional clients our position is that we represent one client.

6       THE COURT:  Okay, if you only represent CSFB and not

7 Kensington International and not --

8       MR. GRAULICH:  Kensington has their own counsel.

9       THE COURT:  -- members of the committees and, you know,

10 only one client then you're not required to.  I'm not expanding -

11 - believe me, I'm not expanding the rule beyond what it's already

12 intended to cover.

13       MR. GRAULICH:  I appreciate that, Your Honor.  One

14 final thing while I'm just at the microphone.  Because there

15 -- I just want to talk about timing of this order.  We only

16 received it and I think Your Honor only received it earlier

17 today.  Is there going to be an opportunity to comment for people

18 who hadn't seen it before or in a -- I don't think there's going

19 to be anything different --

20       THE COURT:  Mr. Ziegler's phone lines are open to all

21 discussion with respect to this entity.  I don't know how you're

22 going to get compensated in the Delaware cases, Mr. Ziegler.

23 I'll let you figure that out.  But nonetheless it seems to me

24 that yes, just contact Mr. Ziegler if you've got something else.

25 But folks, I'm not having any more hearings.  I'm not considering

1 any more comments.  I'm going to take the order.  If it complies

2 with what I'm ruling I'm entering it.  If it doesn't I'm

3 modifying it on my own.  Today is the end of the hearings on

4 2019.

5           MR. GRAULICH:  Thank you, Your Honor.

6           MR. ESSERMAN:  Just one last comment, Your Honor,

7 addressing the CSFB.  Mr. Graulich, I think, is his name, I'm not

8 sure.  There's no question in my mind they need to file a 2019.

9 CSFB may be one client to them, but CSFB is an agent for other

10 banks and they file not as CSFB on its own name, but as agent for

11 others.  So I think there's no question they need to file with

12 all the details as well as any other person that is required by

13 the rule.

14           THE COURT:  Well, I don't know that it's an issue that

15 I need to take on today, but here's the problem.  If you don't

16 file and somebody says you're not permitted to be heard any more

17 I've already said that's an issue that I will certainly consider.

18 So you may want to think about it very seriously.

19           MR. GRAULICH:  Okay.  But, Your Honor, again, the

20 client is the agent bank.  I have never been in a case where the

21 bank group or the agent bank has been required to file 2019

22 statement.  That is -- there is one client.  We don't necessarily

23 even know who the other members of the bank group are so it would

24 be impossible to comply with a 2019 statement because the bank

25 debt trades.

1          THE COURT:  I have no motion before me, I have not
2  issue before me.  To the extent that you represent one client and
3  you're not covered by 2019 to the extent that you do represent
4  more than one client in case you are end of story.  That's the
5  best I can do today.
6          MR. GRAULICH:  Okay.  Thank you, Your Honor.
7          MR. PERNICK:  Your Honor, just so CSFB is on notice, I
8  mean the debtor's position which I'll put on the record is that
9  they are the agent bank and we expect them to comply with the
10 rule.  And if they don't we will be raising that issue.
11         THE COURT:  As I said, I wouldn't be surprised.
12         MR. SVIRSKY:  Just a question, Your Honor, attorneys
13 who have co-counsel relationships are included in this order and
14 have to comply, is that right?
15         THE COURT:  It's not a co-counsel issue, it's a
16 creditor issue.  Do you represent Indenture Trustees, creditors
17 in the case, or Equity Security Homes?
18         MR. SVIRSKY:  Right.  So if two attorneys are
19 representing one creditor then both of them need to --
20         THE COURT:  Oh, you have an independent obligation to
21 list your other clients.  Yes.
22         MR. SVIRSKY:  Okay.
23         MR. LOCKWOOD:  If you're both representing them in the
24 bankruptcy case.
25         THE COURT:  Yes, if you have more than one client in

1  the bankruptcy the rule applies to you regardless of whether

2  you're co-counsel as to one of those creditors or not.  Mr.

3  Ziegler.

4          MR. ZIEGLER:  Well, I wanted to wait until everybody

5  else was done.  I had one or two points of clarification I wanted

6  --

7          MR. ESSERMAN:  I thought we were done.  I was going to

8  thank the Court.

9                    (Court laughs)

10          MR. ZIEGLER:  Just so I'm clear on the time for filing,

11  is it now the later of 60 days from the date of this order or ten

12  days after counsel first enters appearance?

13          THE COURT:  No.  I think it needs to be broken into two

14  sentences.  The first sentence is if you've already entered an

15  appearance or represent more than one creditor in this case

16  you've got 60 days, end of story.  If you haven't yet entered an

17  appearance then you've got ten days from the date at which the

18  first event that requires Rule 2019 to be complied with applies.

19          MR. ZIEGLER:  Okay.  I just wanted to make sure I

20  understood.

21          MR. ROTEN:  Your Honor, Your Honor, is not limiting to

22  the formality of entering an appearance, is that correct?

23          THE COURT:  No.

24          MR. ZIEGLER:  We'll use the same litany of language

25  that we have.  Entering appearance, files a claim, casts a ballot

1 or takes any other affirmative action to participate in the case.

2          THE COURT:  Whenever 2019 applies all I'm doing --

3          MR. ZIEGLER:  That's about as broad as I could think

4 of.

5          THE COURT:  Yes.  2019 doesn't really set a limitations

6 period.  I'm basically putting one in that's all because I want

7 to make sure that the rule's complied with.  That's all.

8          MR. GRAULICH:  Your Honor, unfortunately based upon the

9 most recent comments I just have to put one more objection on the

10 record.  There was a comment earlier by the debtors about an

11 addition to the 2019 order because I assumed that nobody would

12 challenge the fact that CSFB is just one entity that it would

13 have no impact on this.  But if that language is intended to

14 indicate that members of the bank group are going to have to

15 disclose what they acquired their claims at it's going to be

16 impossible to comply.  So I'm just going to say up front that --

17          THE COURT:  Well, how's it going to be impossible to

18 comply?

19          MR. GRAULICH:  Because we're not going to know -- by

20 the same token we're not going to know when people acquired -- we

21 don't even know -- I can't tell you right now whose in the bank

22 group.

23          THE COURT:  Well, look, how are they going to get paid

24 from whatever the distribution they're entitled to under the

25 plan?

1        MR. GRAULICH:  Well, at some point there'll be a date

2   established under the plan where if -- there'll be a record date

3   established.  And as of the record date, if you're a holder as of

4   the record date you'll be able to participate in whatever

5   recovery.

6        THE COURT:  And Mr. Pernick, since the ruling is now

7   come down with respect to substantive consolidation it's now time

8   for the debtor to get an amended disclosure statement and plan

9   and set a record date.  So I would let -- I know it's going to be

10  too soon for the October hearings, but I think by the November

11  hearings we ought to have all of that in Owens set.  So let's

12  start working on that.

13       MR. PERNICK:  Well, we will, Your Honor.  But if I can

14  suggest Judge Fulham in his opinion and in his order gave us 30

15  days to report back and we are actually in the process of trying

16  to figure out how we can get the parties together.  I mean, the

17  debtor took that as a directive.  If the other parties don't take

18  it upon themselves to talk the debtor is to basically make that

19  happen.  And we're doing that.  I think what I'd rather do is I

20  think the Court knows that we always proceed as quickly as we

21  can.  I'd like to see whether there's any movement and we'll give

22  the Court a status report at the October hearing which is a

23  couple of weeks out and we can take it from there if you'd like.

24  I have no problem filing it, but a lot may happen in the next 30

25  days.

1          THE COURT:  That's fine.  I'll take a status report for

2    now.  But I want the debtor and the plan sponsors to start

3    thinking about amendments because hopefully -- no, not hopefully

4    -- by the end of the year, this year, 2004 calendar year I expect

5    to see an amended disclosure statement of plan on the table.

6    It's either going to be with consent or without.  I don't care.

7    But I want it amended.  We're going to set it for hearing and

8    folks we're moving.

9          MR. PERNICK:  I can actually do a little bit better

10   than that, Your Honor.  When people thought they had the summer

11   to relax we didn't let the clan co-proponents relax and we

12   actually got everybody together and did the amendments that we

13   could do as of that date and made the revisions.  We haven't

14   circulated obviously outside of the planned proponents, but we

15   wanted to be ready in case a ruling came down to have at least

16   advanced the ball some.  So that work's already been done.  I'm

17   very hopeful that will be further changes that need to be done

18   that will reflect against a consensual deal.  But obviously the

19   opinion just came down yesterday, the parties are going to need a

20   little bit of time to digest it, but we anticipate getting people

21   together as quickly as possible and seeing if we can't get things

22   resolved.

23         THE COURT:  Okay.  Back to the Rule 2019 issue.  It

24   says every entity or committee representing more than one

25   creditor or equity security holder, every indenture trustee shall

1 file a verified statement setting forth the name and address of

2 the creditor or equity security holder, the nature and amount of

3 the claim or interest and the time of acquisition unless it's

4 alleged to have been acquired more than one year prior to the

5 filing of the petition in which case this order simply makes that

6 assumption that it was more than one year before. And so forth.

7      And so to the extent that Rule 2019 applies, yeah, you

8 have to comply with it.

9      MR. GRAULICH: I understand that, Your Honor, but it

10 would be our position obviously that CSFB is one client so it

11 wouldn't apply in any event. But even if it were CSFB acquired

12 the claim when the credited facility was entered into in 1997.

13      THE COURT: Okay, well, I don't know enough about it to

14 know whether CSFB is one entity, more than one entity. I just

15 don't know. All I'm saying is if it's one entity you don't

16 comply. If it's more than one entity or you have other creditors

17 in addition to CSFB you do comply. And this order is setting out

18 how.

19      MR. LOCKWOOD: Your Honor, CSFB is clearly an entity,

20 but it is an entity that has entered appearance in the Owens

21 Corning case in its capacity, quote, as agent for a bunch of

22 other banks and bank debt holders.

23      THE COURT: Yes. But that doesn't necessarily mean

24 that counsel for CSFB represents all of those other entities.

25 They may have independent counsel.

1            MR. LOCKWOOD:  No, but it may mean that CSFB represents

2    all those entities.  And it says and entity.

3            THE COURT:  Well, let me see.

4            MR. LOCKWOOD:  It doesn't say a lawyer.  It says an

5    entity.

6            MR. ESSERMAN:  Your Honor, it's no different than an

7    indenture trustee for instance.  An indenture trustee is an

8    entity such as US Trust Company or a bank or Chase Bank.  They

9    are an entity, but they have other holders of the debt.

10           THE COURT:  That's what it says, and entity.  So it's

11   not your firm but it is your client.

12           MR. LOCKWOOD:  It seems to me there's a certain sauce

13   for the goose quality here, Your Honor.

14           THE COURT:  Yes, there is.

15           MR. LOCKWOOD:  These folks have been real aggressive

16   about applying the literal language of this Rule to people who

17   have tens of thousands of claimants for -- clients who it's very

18   difficult to comply with.  So pleas of hardship from a large bank

19   that's getting paid for being an agent seem to me to ring a

20   little hollow.

21           THE COURT:  It applies to CSFB and they have to comply.

22           MR. GRAULICH:  CSFB then, Your Honor, I believe that

23   there are special rules for indenture trustees and if the analogy

24   is that CSFB I don't know if -- there's no way that an indenture

25   trustee would know when individual note holders acquired their

1 claim.  I think would be the same problem.

2        THE COURT:  It says, and every indenture trustee shall

3 file verified statements setting forth that information.  There

4 is no special status.  It applies to CSFB.  If they can't comply

5 then they need to do the best they can and explain why they don't

6 have the necessary information.  After all as the agent they're

7 going to have to figure out who holds their debt and how to pay

8 their share.  So it's a little anomalous to suggest that they

9 don't know who they're going to owe their money to when they get

10 paid through this case.

11        MR. GRAULICH:  There would be certain information --

12 I'm sure CSFB if they were here today could tell you who was in

13 the bank group as of whenever, however often they update their

14 books and records.  But there is information in there regarding

15 what people paid for their claims.  I have no idea if CSFB would

16 have any reason to know that.

17        THE COURT:  Well, I don't know that either, but the

18 rules are the rules so whatever they're filing they have to

19 comply with.  If they can't then they just better simply ask for

20 a waiver which the rule permits be done.

21        MR. GRAULICH:  Okay.

22        THE COURT:  But in terms of your firm I don't know the

23 answer to your firm.  But if CSFB is acting as agent and that's

24 more than one creditor it does apply to entity.  So yes, it

25 applies to them.

1          MR. GRAULICH:  Thank you, Your Honor.

2          MR. ZIEGLER:  In light of that, Your Honor, I will

3     amend the order where we used the term counsel we'll change that

4     to entity.

5          THE COURT:  Yes.  Okay.  Did that clarify everything

6     for you, Mr. Ziegler, since you still have the lion's share of

7     the work?

8          MR. ZIEGLER:  I believe I have a pretty good handle on

9     what we're going to do, Your Honor.

10          THE COURT:  Delaware thanks you.  Okay, anybody else,

11     anything else?

12          MR. SHIRES:  Nothing further, Your Honor.

13          THE COURT:  Okay, we're adjourned.  Thank you.

14          THE ATTORNEYS:  Thank you, Your Honor.

15          THE COURT:  Mr. Zielger, I take it you'll just

16     circulate this to whoever and that at some point in the mere

17     future because since I'm giving 60 days I really do want to get

18     this done.  I will get an order back.

19          MR. ZIEGLER:  Yes, I want to get it done, too.

20          THE COURT:  Okay, thank you.

21                              *  *  *  *  *

22

23

24

25

1          **CERTIFICATION**

2          I, KIMBERLY A. UPSHUR, certify that the foregoing is a

3    correct transcript to the best of my ability, from the electronic

4    sound recording of the proceedings in the above-entitled matter.

5    /S/ Kimberely A. Upshur          DATE:  October 14, 2004

6    KIMBERLY A. UPSHUR

7    J&J COURT TRANSCRIBERS, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25