UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              . Case No.  01-1139 (JFK)
                                    .
                                    .
   W.R. GRACE & CO.,                .
                                    .
                                    . 824 Market Street
                                    . Wilmington, Delaware 19801
                     Debtor.        .
                                    . November 15, 2004
. . . . . . . . . . . . . . . . . . 12:02 p.m.

TRANSCRIPT OF HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtors:                    Pachulski, Stang, Ziehl, Jones &
                                    Weintraub, P.C.
                                    By:  DAVID CARICKHOFF, ESQ.
                                    919 North Market Street, 16th Fl.
                                    Wilmington, Delaware  19899

                                    Kirkland & Ellis LLP
                                    By: JANET BAER, ESQ.
                                    200 East Randolph Drive
                                    Chicago, Illinois  60601

                                    Kirkland & Ellis LLP
                                    By:  DAVID BERNICK, ESQ.
                                    200 East Randolph Drive
                                    Chicago, Illinois  60601
                                    (Telephonic appearance)

Audio Operator:                     Sherry Skaruzzi

Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**



APPEARANCES (CONT'D):

For the Debtors:                    D'Agostine, Levine Parson &
                                    Neeburn
                                    By:  LOUIS LEVINE, ESQ.

For the Equity Committee:           Kramer Levin Naftalis & Frankel,
                                    LLP
                                    By:  GARY M. BECKER, ESQ.
                                    919 Third Avenue
                                    New York, New York  10022

For the Equity Committee:           Front Point Finan
                                    By:  VINCENT DANIEL

For the Equity Committee:           Neuberger Perman
                                    By:  ELLIOTT E. EIMAN

For the Equity Committee:           Ardsly Partners
                                    By:  CHARLES ROSE

For the U.S. Trustee:               Office of the U.S. Trustee
                                    By:  FRANK PERCH, ESQ.
                                    844 King Street, Suite 2207
                                    Lock Box 35
                                    Wilmington, Delaware  19801

For the P.D. Committee:             Bilzin Sumberg Baena Price &
                                    Axelrod LLP
                                    By:  JAY SAKALO, ESQ.
                                    200 South Biscayne Boulevard
                                    Suite 2500
                                    Miami, Florida  33131

For the P.D. Committee:             Ferry, Joseph & Pearce, P.A.
                                    By:  THEODORE TACCONELLI, ESQ.
                                    824 Market Street, Suite 904
                                    Wilmington, Delaware  19899

For the Town of Acton:              Nutter, McClennen & Fish
                                    By:  THOMAS BEAN, ESQ.
                                    World Trade Center West
                                    155 Seaport Boulevard
                                    Boston, Massachusetts  02210

APPEARANCES (CONT'D):

For the Town of Acton:            Anderson & Kreiger
                                  By:  STEPHEN ANDERSON, ESQ.
                                  43 Thorndike Street
                                  Cambridge, Massachusetts

For the Futures Rep:              Phillips, Goldman & Spence, P.A.
                                  By:  JACK PHILLIPS, ESQ.
                                  1200 North Broom Street
                                  Wilmington, Delaware  19806

For the ACE:                      Campbell & Levine
                                  By:  MARLA ROSOFF ESKIN, ESQ.
                                  800 North King Street, Suite 300
                                  Wilmington, Delaware  19801

For the Unsecured Committee:      Stroock & Stroock & Lavan
                                  By:  LEWIS KRUGER, ESQ.
                                  1809 Maiden Lane
                                  New York, New York  10038-4982

For Sealed Air Corporation:       Skadden, Arps, Slate, Meagher &
                                  Flom LLP
                                  By:  MARK CHEHI, ESQ.
                                  One Rodney Square
                                  Wilmington, Delaware  19801

For the Trade Committee:          Duane Morris
                                  By: MICHAEL LASTOWSKI, ESQ.
                                  1100 North Market Street
                                  Suite 1200
                                  Wilmington, Delaware  19801-1241

Financial Advisors to             Blackstone Group
Debtors:                          By:  PAMELA ZILLY
                                  (Telephonic appearance)

For the Shareholders:             KR Capital Advisors
                                  By:  DAVID PINCUS
                                  (Telephonic appearance)

For the Scotts Company:           Vorys, Sater, Seymour and Pease,
                                  LLP
                                  By:  TIFFANY COBB, ESQ.
                                       BOB SIDMAN, ESQ.
                                  52 East Gay Street
                                  Columbus, Ohio  43216

APPEARANCES (CONT'D):

For Pernini Corp.:                    Loizides & Assoc.
                                      By:  DEBBIE WESTWOOD, ESQ.
                                      (Telephonic appearance)

For Reaud Morgan & Quinn:             Stutzman, Bromberg, Esserman &
                                      Plifka, P.C.
                                      By:  DAVID PARSONS, ESQ.
                                           SANDER ESSERMAN, ESQ.
                                      2323 Bryan Street, Suite 2200
                                      Dallas, Texas  75201
                                      (Telephonic appearance)

For the State of
Massachusetts:                        Massachusetts Attorney General's
                                        Office
                                      By:  CAROL IANCU, ESQ.
                                      One Ashburton Place, Room 1813
                                      Boston, Massachusetts
                                      (Telephonic appearance)

For ERISA Class Action                Lowenstein Sandler
Plaintiffs:                           By:  IRA LEVEE, ESQ.
                                      65 Livingston Avenue
                                      Roseland, New Jersey  07068
                                      (Telephonic appearance)

For Zonolite Attic
Insulation Claimants:                 By:  DARRELL SCOTT, ESQ.
                                      (Telephonic appearance)

For ZAI Claimants:                    Richardson, Patrick, Westbrook &
                                      Brickman, LLC
                                      By:  ED WESTBROOK, ESQ.
                                      174 East Bay Street
                                      Charleston, South Carolina 29401
                                      (Telephonic appearance)

For Various Plaintiffs in
Scotts Litigation:                    By:  ROSS STOMEL, ESQ.
                                      (Telephonic appearance)

For W.R. Grace:                       Kirkland & Ellis
                                      By:  THEODORE FREEDMAN, ESQ.
                                      153 East 53rd Street
                                      New York, New York  10022
                                      (Telephonic appearance)

1        THE COURT:  Please be seated.  Do we have the
2   plaintiffs on the line yet?  No?  Okay.
3                        (Pause)
4        THE COURT:  Hello?
5        UNIDENTIFIED SPEAKER:  Hello.
6        THE COURT:  Is this the W.R. Grace matter?
7        UNIDENTIFIED SPEAKER:  I hope so.
8        THE COURT:  Okay.  Good.  This is Judge Fitzgerald.
9   I had an invalid code before, so I just wanted to double check.
10  This is the matter of W.R. Grace, bankruptcy number 01-1139.
11  Folks on the phone, can you please put your mute buttons on?
12  Folks on the phone, can you please put your mute buttons on?
13  Thank you.  The parties I have participating by phone are
14  Pamela Zilli, David Pinkus, Debbie Westwood, Tiffany Cobb, Bob
15  Sidman, David Parsons, Sandy Esserman, Bruce Levin.  That's
16  all.  I'll take entries of appearance from people in Court
17  please.  Good afternoon.
18        MR. BERNICK:  Yes, Your Honor.  This is David
19  Bernick.  I couldn't hear very well, but I'm on the phone.
20        THE COURT:  All right, Mr. Bernick.  Thank you.
21        MS. IANCU:  This is Carol Iancu from Massachusetts
22  Attorney General's Office.  I didn't hear my name either.
23        THE COURT:  I didn't have you listed, ma'am.  I'm
24  sorry.  Would you spell your last name?
25        MS. IANCU:  Certainly.  It's I-a-n-c-u.

                    J&J COURT TRANSCRIBERS, INC.

1          THE COURT:  Thank you.

2          MR. LEVEE:  Your Honor, this is Ira Levee, L-e-v-e-e,

3  for the ERISA class action plaintiffs.  I didn't hear my name,

4  either.

5          THE COURT:  All right.  Thank you.

6          MR. SCOTT:  This is Darrell Scott, Your Honor,

7  Zonolite claimants.

8          THE COURT:  I'm sorry, sir.  Who were you -- what was

9  your name, please?

10          MR. SCOTT:  Darrell Scott.

11          THE COURT:  Scott.  Okay.  For who?

12          MR. SCOTT:  Zonolite attic insulation claimants.

13          THE COURT:  All right.  Thank you.

14          MR. WESTBROOK:  And, Your Honor, Ed Westbrook for the

15  ZAI claimants.

16          THE COURT:  Okay.  Thanks.  Is that it?

17          MR. STOMEL:  Ross Stomel, S-t-o-m, as in Mary, e-l.

18          THE COURT:  Okay.  Who are you representing?

19          MR. STOMEL:  Various plaintiffs in the Scotts

20  litigation.

21          THE COURT:  Is that everyone?

22          MR. FREEDMAN:  Theodore Freedman, for Grace.

23          THE COURT:  Okay.  Ms. Baer?

24          MS. BAER:  Good morning, Your Honor.  Janet Baer on

25  behalf of W.R. Grace.  Your Honor, before we go to the agenda,

1  I thought I would address where we stand in the plan of

2  reorganization.  As I'm sure everybody in the courtroom is

3  curious if they have not been checking their electronic docket.

4  On Saturday of this month, October 13th, the debtors filed its

5  Chapter 11 plan of reorganization, its disclosure statement, an

6  estimation motion requesting that the Court estimate asbestos-

7  related claims, a confirmation procedures motion, and a case

8  management motion asking for the Court to define and resolve

9  asbestos-related liabilities.

10         Your Honor, the plan is an integrated program for

11  defining and paying all allowed claims in full.  It leaves most

12  creditors unimpaired.  It is coupled with and in conjunction

13  with an estimation motion where the debtors propose that this

14  Court set a notice, a bar date for known asbestos claimants,

15  those that were pending at the time the Chapter 11 case was

16  filed, and a questionnaire process which will be used, Your

17  Honor, to assist the debtors and the Court in determining both

18  the feasibility of the plan and to cap Grace's liability for

19  asbestos-related claims other than asymptomatic claims, which

20  were dealt with under the Chapter 11 plan.

21         Your Honor, the revised case management motion is

22  filed before this Court but also filed in the District Court.

23  As you may recall the reference was not sent to this Court vis-

24  a-vis the case management motion before.  The original case

25  management motion that we filed at the beginning of this case

**J&J COURT TRANSCRIBERS, INC.**

1  addressed a pre-confirmation procedure for dealing with common

2  issues related to asbestos liabilities.  Now, Your Honor, with

3  this revised case management motion we are seeking to preserve

4  the rights of asbestos claimants to litigate their claims in

5  the post-confirmation process utilizing, again, a common issue

6  litigation.  With this case management order and case

7  management procedure, Your Honor, we will be able to move

8  forward with the Chapter 11 plan and disclosure statement

9  process without waiting to resolve this so long as the

10 procedures are set up.  Your Honor, this Chapter 11 plan is not

11 a consensual plan at this time, but all of the parties continue

12 to talk.  They talked right up until the moment it was filed,

13 and they are still in discussions.  Grace is still very

14 committed to resolving and hoping to achieve consensus with as

15 many constituencies or all constituencies.  Your Honor, what we

16 have done is we have set the estimation motion for the Court's

17 omnibus hearing on December 20th.  That, Your Honor, is a

18 procedures motion at this point.

19        We are asking the Court, on the 20th of December, to

20 approve the procedures and set a bar date, approve the

21 questionnaire and approve the procedures for sending out the

22 questionnaire so the estimation process can begin.  It calls

23 for discovery and ultimately, then, a hearing on estimation.

24        Your Honor, we've also set the confirmation

25 procedures motion for December 20th at the omnibus hearing.

1  And, Your Honor, today we have filed, and I will present to the

2  Court a motion for leave to revise the scheduling order so that

3  the disclosure statement in this matter can also be heard on

4  December 20th.  Your Honor --

5          THE COURT:  What?  They have a hearing on the

6  disclosure statement?

7          MS. BAER:  Yes, Your Honor.  That is what we're

8  asking for.

9          THE COURT:  I doubt it.

10         MS. BAER:  That's why, Your Honor --

11         THE COURT:  I seriously doubt it.  In fact, no.  We

12 need a different date.  I can do a status report, but you know,

13 if it's not a consensual plan I can't take a disclosure

14 statement on an omnibus date when I've got 11 other cases that

15 are set for hearing that day.  I can't do it.

16         MS. BAER:  Your Honor, that's exactly why we did not

17 send out notice of the documents and notice of the disclosure

18 statement hearing.  That was what we wanted to address with you

19 today, which is when would you like to hear the disclosure

20 statement?  And for that matter, whether you want to hear the

21 estimation procedures motion and the solicitation procedures

22 motion on the 20th or at a different date?

23         THE COURT:  Well, with respect to the solicitation

24 procedure, I think maybe that's not a bad idea, to try to get

25 that process in place.  Is it tied to the estimation motion, or

1 | not?

2 |         MS. BAER:  Your Honor, the estimation and the

3 | disclosure statement solicitation and solicitation of votes

4 | will run hand-in-hand.  They will run simultaneously, where as

5 | the discovery with respect to estimation will occur while we

6 | are soliciting votes on the Chapter 11 plan.  So, in that

7 | respect they're not tied with each other but they do run

8 | together.

9 |         THE COURT:  Well, maybe the best thing to do is set

10 | them all more or less for an objection and response date and

11 | let's have a status conference.  I don't know whether I can get

12 | to any of them.  Are any of them going to require evidentiary

13 | matters?  I guess that's the issue.

14 |         MS. BAER:  Your Honor, with respect to the estimation

15 | motion, because we are asking for approval of a bar date and

16 | approval of a questionnaire, I suppose it is possible that

17 | there would be evidence, or at least some significant

18 | discussion about the questionnaire, somewhat likely had

19 | discussions vis-a-vis our proof of claims before.  Whether it

20 | would actually be evidence I highly doubt, but there could be

21 | some argument on that and on the process itself.

22 |         THE COURT:  All right.  Well, I think, for both the

23 | questionnaire matter, the solicitation process, and the

24 | estimation procedures motion, they ought to be set for December

25 | 20.  I'm not sure we're going to get through them all, but I

1 think we ought to at least get objections in and then start the

2 discussion.  I don't -- I doubt that we'll get them finished.

3 I'm not sure there's much point going forward with the

4 disclosure statement hearing itself until those matters are

5 addressed.  Is there?  I haven't seen the document, so I don't

6 --

7          MS. BAER:  Your Honor, the advantage, of course, is

8 we would like to get objections to the disclosure statement in

9 so we can narrow where there are issues vis-a-vis, again,

10 disclosure, whether or not there's adequate information or not.

11 And I think the sooner we get that done the sooner we can

12 actually get to the point of having the disclosure statement

13 approved.

14          THE COURT:  Okay.  Parties on the phone, please put

15 your mute buttons on.  Mona, can you call back to Pittsburgh,

16 see when we might be able to get a date to do I'd say a one-day

17 hearing on the disclosure statement?  I'm not sure whether

18 we'll need evidence or not, but I think we ought to at least

19 get something in place for a status conference.  Folks on the

20 phone, please put your mute buttons on.  Does somebody not have

21 a mute button?  Is someone on the speaker phone?  Okay.  Look,

22 folks, if I can't get responses I'm simply going to disconnect

23 and you can either fly here and I'll wait an hour for you to

24 get here, or you can't participate by phone anymore.  Really.

25 I'm sorry but this is just rude.  Please take us off the

1 speaker phone and put your mute buttons on.

2        THE CLERK:  Are we going to --

3        THE COURT:  A day.

4        THE CLERK:  In January?

5        THE COURT:  I think as soon as we can get it in after

6 the December 20th hearing date would probably be good, because

7 we need to tie the objection dates to that date, so --

8        THE CLERK:  The end of January?

9        MS. BAER:  Your Honor, ideally mid-January would be

10 --

11        THE CLERK:  Of January.

12        THE COURT:  Okay.  All right.  Let's come back to

13 this issue after I get a date from Pittsburgh, to see what we

14 can do.  Yes, sir?

15        MR. CHEHI:  Your Honor, if I can just be heard for a

16 moment on the scheduling issue --

17        THE COURT:  Yes.

18        MR. CHEHI:  -- as well, if I could?  Mark Chehi of

19 Skadden, Arps, Slate, Meagher & Flom, for Sealed Air

20 Corporation, which is a very major, significant creditor in the

21 case, as well as a member of the creditors' committee.  Your

22 Honor, I'll be brief, but it's important, I think, in light of

23 the scheduling issues.  Sealed Air feels compelled, today, to

24 advise the Court and other parties in interest that the

25 reorganization plan that has been filed is not in our view

1 consistent at all and feasible, and it is non-confirmable
2 because it is per se inconsistent with the Sealed Air
3 settlement agreement that was previously filed with the Court.
4 As Your Honor may recall, the Sealed Air settlement agreement
5 resolves alleged fraudulent transfer and punitive successor
6 liability claims --

7           THE COURT:  I don't honestly know what it resolves.
8 I didn't hear that matter.  And frankly, I haven't seen the
9 settlement agreement.  I think I saw an order that was signed
10 by Judge Wolin that approved it, but frankly I couldn't find it
11 on the docket, so I don't know what there is.

12           MR. CHEHI:  It hasn't been approved --

13           THE COURT:  Oh.

14           MR. CHEHI:  -- under the plan, Your Honor.  I --

15           THE COURT:  Then how can it be inconsistent with the
16 settlement agreement?  How can the plan be inconsistent with an
17 agreement that's not been approved?

18           MR. CHEHI:  You're right, Your Honor.  There's been
19 an agreement that's actually been signed by parties subject to
20 Court approval, and it is a lynchpin of this proposed plan of
21 reorganization because under it all the various litigation
22 claims, alleged litigation claims asserted against our client
23 would be resolved with a payment of approximately a billion
24 dollars of value, cash and other property into the asbestos
25 trust pursuant to the plan.  But Sealed Air would not, if the

1  plan goes forward, with the terms of the plan as stated, being

2  inconsistent with the settlement agreement, not be obligated

3  to, you know, fund that money.  And in fact, Sealed Air would

4  object to that plan going forward.  We thought that, at this

5  early juncture, these --

6          MR. BERNICK:  Your Honor, there's somebody that's got

7  music on the phone here.

8          THE COURT:  I know, Mr. Bernick, and I'm really

9  sorry.  But this is the last phone hearing I'm doing in this

10  case.  I had this same problem last month, so I apologize to

11  all counsel who are not being this rude to your colleagues and

12  to this Court, but this is the last phone participation in this

13  case, the last one.  I'm sorry, Mr. Chehi, go ahead.

14          MR. CHEHI:  That's all right, Your Honor.  Again, and

15  we just wanted to make this point at this early juncture --

16          THE COURT:  Pardon me.  Folks, if the music doesn't

17  stop I'm disconnecting.  Now, who is it who has music on, or do

18  you have us on hold so I'm -- this is preaching to the choir?

19          MR. BERNICK:  Your Honor, what you might do is just

20  go through the list and ask for all --

21          THE COURT:  Well, I think, Mr. Bernick, the problem

22  is going to be if somebody has me on hold they're not going to

23  respond, because we're on hold.

24          MR. BERNICK:  That's my point.

25          THE COURT:  Why on earth you would call in and then

1  put somebody on hold is beyond me.  But nonetheless, that seems
2  to be the situation that we're faced with, so -- when I find
3  out who it is, Mr. Bernick, I may do a rule to show cause.
4  This is really ridiculous.  I apologize, Mr. Chehi.  Please go
5  ahead.

6         MR. CHEHI:  No need to apologize, Your Honor.  In
7  sum, we just wanted to let all parties in interest know that
8  given the plan documents that have been filed, the disclosure
9  surrounding it, the fact that the plan, you know, intends to be
10 inconsistent with the terms of the Sealed Air settlement as
11 proposed and is signed by the various parties in interest, that
12 Sealed Air will object to that, and the plan is inconsistent
13 with it and we would not be in a position to make the funding
14 of the asbestos trust.

15        THE COURT:  Where is the document that you're saying
16 that the plan is inconsistent with?

17        MR. CHEHI:  It was filed with a motion to approve the
18 Sealed Air settlement agreement.

19        THE COURT:  When and where?

20        MR. CHEHI:  I believe it was November 26th of this
21 past year.

22        THE COURT:  2003?

23        MR. CHEHI:  Yes.

24        THE COURT:  And it was filed in the District Court?
25        MR. CHEHI:  I believe that's correct.

1        THE COURT:  So, you need a District Court Judge to

2   approve it?

3        MR. CHEHI:  I believe it -- under the debtor's plan

4   it's contemplated that the issues would be addressed pursuant

5   to the plan.  The plan provides that the Sealed Air settlement

6   agreement would be approved as amended in a form acceptable to

7   the debtors addressing their putative objections, and that

8   would be the basis for the cash infusion into the asbestos

9   trust under the plan, which is, you know, obviously the

10  lynchpin of the plan.  And we wanted to let the Court know, at

11  this juncture, that we see significant inconsistencies there,

12  and thought that was important for all parties to know at this

13  juncture.

14       THE COURT:  Okay.  Well, since I haven't seen either

15  one, thank you for the heads up, but I'm -- at this point I

16  don't -- I can't make any comments about it.

17       MR. CHEHI:  You're welcome, Your Honor.  I didn't

18  expect any.

19       MS. ESKIN:  Good morning, Your Honor.  Marla Eskin

20  for the asbestos claimants' committee.  In all honesty, I have

21  not reviewed the pleadings that were filed this weekend, but I

22  would -- I am sure that the committee is going to need more

23  time to respond than December 3rd.  I believe that's the

24  objection deadline.  With the holidays coming up it would be

25  very difficult to -- to do that.

1          THE COURT:  Oh, no.  That's why I'm looking for a

2    date in January or thereabouts for a disclosure statement

3    hearing.  Oh, you mean to the other motion?

4          MS. ESKIN:  The other motions.  The disclosure

5    statement -- the other motions, there are several other

6    motions, an objection deadline.  I think this was -- I don't

7    think this was filed on shortened notice, but filed right at

8    the deadline.  If we could have an extension to answer that it

9    would be quite helpful.

10          THE COURT:  Not -- and put them on the December dates

11   because I can't get ready.  If you file your responses late

12   then the replies come in late, and then I can't get prepared.

13   So, the choice is either we don't do it December 20th of I

14   think I have to stick with the deadline.

15          MS. ESKIN:  Well then, I would ask that we wait until

16   January.  December 3rd, with the -- it's just -- you know,

17   three weeks away, one of those weeks is the holiday week, a lot

18   of people are traveling, and that is going to be very, very

19   difficult.  So, if we cannot extend the date, if it's an issue

20   with the Court, then we would ask that it not be heard.

21          THE COURT:  Well, apparently I have hearing dates

22   available in Pittsburgh on January 20th, but that's only going

23   to be the morning.  I don't have the afternoon.  And I have

24   January 21st, which is a Friday.  Maybe what I can do is move

25   my January 21st motions to Thursday and do this January 21st,

1  which is Friday.

2          MS. ESKIN:   That would be fine.

3          MR. BERNICK:   Your Honor, this is David Bernick.   I

4  mean, obviously these are important matters and people should

5  have an opportunity to respond.   But, you know, we're really at

6  a very, very critical point in the case, and if Your Honor were

7  to schedule it on the 21st of January we would then really want

8  a strong indication from the Court that there's not really

9  going to be an extension of that date, that that's when we're

10  going to be having these things heard.

11          THE COURT:   Oh, I wouldn't intend to extend it, Mr.

12  Bernick.   Once I -- you know, reserve a day for these motions I

13  think that's what they will be.   My concern, though, is I'm

14  sure there will be some discussion about both of the procedural

15  motions that have been filed, and that will probably take, a

16  guess, a couple of hours to resolve.   That doesn't leave much

17  time for the disclosure statement hearing.   But maybe what we

18  can do is start addressing some of the objections, if there are

19  any, to the disclosure statement, and see whether or not there

20  might be a round of amendments that will go forward before a

21  formal hearing.

22          MR. BERNICK:   Right.

23          THE COURT:   If that --

24          MR. BERNICK:   It might also help if -- I don't know

25  how many people, and what constituencies are going to be filing

1 objections to the -- if there were some effort to -- to have

2 people, you know, one person speak in part to a given issue,

3 and if others want to chime in, then, you know, obviously

4 that's fine.  But it should be limited.  But that way we can --

5 maybe it will be a little bit more efficient at the hearing.

6 　　　　　THE COURT:  Well, I think the other thing that will

7 help, and yes, I agree, I mean, to the extent that parties have

8 the same objection I don't need to hear it more than once.  If

9 there's a slightly different interest involved than something,

10 and something needs to be added to the first argument, then I

11 guess I'll hear it.  But I don't expect to go through

12 repetitious argument.  I think the thing that would also help

13 is to have the debtor basically prepare a summary chart of the

14 particular provision of the -- let's talk for the moment about

15 the disclosure statement that is objected to, who raised the

16 objection and what it is, and what the debtor's response -- or,

17 I'm saying debtor, whoever the plan proponents are.  I don't

18 even know at this point.  Is it just the debtors?

19 　　　　　MS. BAER:  At this point, Your Honor, it is.  We

20 would hope that it would be more than that by the time we get

21 there.

22 　　　　　THE COURT:  Okay.  So, the plan proponent's response

23 to it, because some of the objections probably can be worked

24 out without the need for a hearing once the debtor sees what

25 they are, and others probably will not be worked out and will

1 need a hearing.  So, if it's something that you can work out I
2 think that this affords plenty of time to do that once we set
3 an objection date that keys into this status conference on the
4 disclosure statement date.

5 　　　　　　MS. BAER:  We'll do that, Your Honor.

6 　　　　　　MR. BERNICK:  We'd be happy to prepare that.

7 　　　　　　THE COURT:  All right.  So, let's pick some -- when
8 would the normal response and hearing and objection dates be
9 for hearings that are set January 21st?

10 　　　　　　MS. BAER:  It's usually 14 days prior to the hearing,
11 which is when the objections would be due.

12 　　　　　　THE COURT:  So, that's the seventh of January.  I
13 think we could shorten that time by a week.

14 　　　　　　MR. BERNICK:  Maybe if, in light of the amount of
15 time and the desirability of being able to -- you know, to
16 present some summary charts, maybe if we could have the
17 objection date be at least a little bit earlier than that, it
18 might help out.  It might help also save the vacations of some
19 the people that are involved, or at least some portions of
20 them.

21 　　　　　　THE COURT:  Okay.  I think if we set an objection
22 date of December the let's say 21st, that gives everybody five
23 weeks after the date that they were filed to get objections
24 together.  That should surely be enough for everything that the
25 debtor filed last Friday, whatever those motions are, and the

1 disclosure statement.  So, objections will be due December 21.

2 And then, the -- and replies the following week, December 28.

3          MR. BERNICK:  Um --

4          MS. BAER:  Your Honor, because of the holidays I'm

5 wondering if maybe it makes sense to go to the beginning of

6 2005 on that.

7          THE COURT:  All right.  That's probably realistic.  I

8 want the debtor to have time to meet with the parties between

9 the time that the objection and replies are due.  How about --

10 I'll say January 4th then.  But then, between the fourth and

11 the hearing on the 21st, I expect the debtor to get together

12 with the various parties and see what can be resolved.  So, I

13 need a date by which the charts are then due.  How about the

14 13th?  That gives the debtor ten days to see what can be

15 resolved.

16          MR. BERNICK:  Yes.  I think that's fine.

17          THE COURT:  Okay.  January 13th.  And the hearing

18 will be January 21 in Pittsburgh.  Mona, will you let Winnie

19 know that she has to change motions?  Okay.  Thank you.  At

20 nine o'clock.  And I'll just reserve the day.  Now, this will

21 be the two procedure motions and the status -- well, I'm

22 calling it a status conference.  We'll start running through

23 the objections to the disclosure statement just to see which

24 are going to actually survive, which won't, in terms of the

25 parties' plans, and which may take an evidentiary hearing, if

1 necessary.  I doubt that there should be much evidence

2 necessary at the disclosure statement stage, but I'll reserve

3 that until I see it, and see what the objections are.

4          MS. BAER:  Your Honor, in our notice should we

5 indicate it's a status on the disclosure statement, or that it

6 is the disclosure statement hearing?

7          THE COURT:  No.  I think you better set it for the

8 disclosure statement hearings so everybody knows that the

9 objections are due.  And I intend to start running through the

10 objections.  I'm just not sure we're going to get it finished

11 that day.

12          MS. BAER:  Thank you, Your Honor.  We'll do it that

13 way.

14          THE COURT:  The next week there are Delaware motions,

15 the 24th, the Monday is Delaware motions.  So, if we don't get

16 done, depending on what you have on your omnibus date, we might

17 be able to continue that process that following Monday here in

18 Delaware, but I won't know that until you know what motions

19 you're going to have on your omnibus hearing dates.

20          MS. BAER:  Right.  Your Honor, what that does not

21 address is the case management motion, which again, right now

22 we believe the jurisdiction of that is vis-a-vis the District

23 Court.

24          THE COURT:  Okay.  And why is this?  Because I'm not

25 sure what the --

1          MS. BAER:  Your Honor, when the Third Circuit
2   appointed Judge Wolin, he referred the reference of all matters
3   other than personal injury matters to you, and he kept the
4   personal injury matters and had us separate out the case
5   management motion.  You handled ZAI, property damage, non-
6   asbestos, and he kept asbestos personal injury and never
7   addressed them.  Therefore that is still sitting with the
8   District Court.  So, our amended motion is addressing asbestos
9   personal injury, therefore we believe that we're required to
10  file it before and have it heard by Judge Buckwalter unless he
11  would then refer the reference to you, which has not yet
12  occurred.

13          MR. BERNICK:  And we're happy to have that take
14  place.  It's just a question of it being a different procedural
15  --

16          THE COURT:  Well, is he doing -- I really don't know
17  what he's doing with respect to this case.

18          MR. BERNICK:  He asked for a status report fairly
19  shortly after his appointment.  Those status reports were
20  furnished, and I don't believe, and I can be corrected on this,
21  because a lot of time has passed, but I don't believe that
22  beyond that anything has happened before that Court.

23          THE COURT:  So, he's not had a conference of any
24  sort?

25          MS. BAER:  None whatsoever, Your Honor.

1      MR. BERNICK:  No.

2      MS. BAER:  And I do know that another motion --

3  Sealed Air had filed a motion before him also, and nothing has

4  happened on that of which we are aware.

5      THE COURT:  So, currently he has the motion to

6  approve the Sealed Air settlement pending?

7      MS. BAER:  That was filed before Judge Wolin and

8  nothing happened on it, so it is still at the District Court

9  level also.

10      MR. BERNICK:  And he would also -- he would also then

11  also have other motions that were previously pending before

12  Judge Wolin before his -- including prior case management

13  motions.  Those have been pending for quite some time.  So,

14  there's just really not been any activity on that docket, at

15  least insofar as the personal injury claims are concerned.  I

16  guess probably for that matter any --

17      THE COURT:  Okay.  Sealed Air's new motion, does it

18  have to do with the settlement, or is there some other matter

19  --

20      MS. BAER:  No, Your Honor.  Sealed Air filed a new

21  motion to set aside certain rulings that Judge Wolin had made

22  having to do with the underlying merits of the fraudulent

23  conveyance action.  The motion to approve the Sealed Air

24  settlement agreement was filed while Judge Wolin was still

25  sitting.  Your Honor, the debtor is not a party to the Sealed

1 Air settlement agreement.  Both the debtor and the unsecured
2 creditors' committee indicated to Judge Wolin that when he set
3 a briefing schedule they would have objections.  Judge Wolin
4 never seta briefing schedule.  Those objections have not yet
5 been filed, although we do, in our plan, Your Honor, outline
6 what our objections are and outline how we would want it to be
7 resolved.

8         THE COURT:  Okay.  Well, it seems to me that if Judge
9 Buckwalter gets to any of these matters before the disclosure
10 statement hearing and makes rulings, then we'll all know what
11 the rulings are.  And if he doesn't then I guess it will come
12 up in the context of the disclosure statement.  With respect to
13 the case management order, I have to go back and take a look.
14 Judge Wolin issued different orders with respect to the
15 reference in different cases, and frankly it's been so long I
16 just don't recall what this one was.

17         MR. BERNICK:  Well, what he did was to -- what he did
18 was to, remember, withdraw the reference to himself on all
19 matters, and then he selectively referred certain matters back
20 to the Bankruptcy Court.  Personal injury always remained as
21 the -- the resolution of the scope and liability for personal
22 injury claims always remained before Judge Wolin.  And at a
23 certain point, again prior to his recusal, he asked for
24 motions, all of which I think had been deemed to be withdrawn,
25 to be re-filed before him.  And those included motions that we

1  previously had pending before Judge Farnan, then went to Judge
2  Wolin.   They were re-filed as case management motions before
3  Judge Wolin.   And they then sat dormant.   So, he universally, I
4  believe, kept personal injury issues in all of the cases before
5  him, and he --

6         THE COURT:   No, that's actually not correct, Mr.
7  Bernick.   In some instances he -- the orders that were issued
8  said that it was contemplated that he would retain the personal
9  injury matters, but in fact he never issued orders that did
10 retain them.   That's why I'm not sure what --

11         MR. BERNICK:   Oh.   Okay.

12         THE COURT:   -- the difference is with this one.   So,
13 I think there were different orders in different cases, and I'd
14 have to review this one.   Obviously, if he hasn't -- if he
15 withdrew the reference and didn't send something back, then
16 obviously I can't act on it.   If what he said was it was
17 contemplated that he was going to withdraw the reference, again
18 for personal injury matters, then I can go marching forward
19 until it's withdrawn.   I just don't recall what the language of
20 this one said.   Does anybody have it here?   Because I don't, so
21 -- no?   All right.

22         MS. BAER:   We don't have it here, Your Honor.

23         THE COURT:   But you're sure this one simply says he's
24 keeping the personal injury matters?

25         MS. BAER:   Yes, Your Honor.

1          MR. BERNICK:  Yes, it --

2          MS. BAER:  What he did is he entered an order

3 directing us to divide our case management order into two

4 parts, re-file before him personal injury only, and we did

5 that.  The rest of it was pending before you and you addressed

6 it and you ruled on it.

7          MR. BERNICK:  Right.  We would be happy to take up --

8 I guess in a sense it may be up to the debtor here to decide

9 whether to make a formal motion to have the case management

10 matter referred back down to Your Honor.  We thought that we

11 would flag the issue, if Your Honor has -- and maybe the best

12 time to take this up would be on January after Your Honor has

13 had the opportunity to review the papers that have been filed

14 to see whether, you know, in Your Honor's view it makes sense

15 for you to have -- if you will, in fact, refer it back at our

16 request, would make sense for you to have the case management

17 order yourself.

18          THE COURT:  Well, I mean, I don't really -- from my

19 point of view I don't care who does it.  I think you need one

20 just so that the process can get finished.  I -- you know,

21 whether the District Court rules on a case management order or

22 I do on a case management order it's a procedural motion that

23 needs to be addressed somewhere.  So, I don't -- again, I don't

24 really think it's too significant where it gets done, just so

25 it gets done, otherwise I'm not sure how, in the context of

1 this case if it's not consensual, the plan confirmation process
2 is going to move ahead. So, that's my only concern. You know,
3 if Judge Buckwalter wants to do the whole thing then he can do
4 the whole thing. Obviously he has the ability to determine
5 that, and whatever he decides is the way it will be. But I do
6 think something should be attempted to be --

7           MR. BERNICK: We'll --

8           THE COURT: -- stimulated to get it moved.

9           MR. BERNICK: We'll follow through on that, Your
10 Honor.

11          THE COURT: Okay. Ms. Eskin?

12          MS. ESKIN: Marla Eskin for the asbestos claimants'
13 committee. Your Honor, in some of these cases I know that the
14 order said that it was contemplated.

15          THE COURT: Um-hmm.

16          MS. ESKIN: In all honesty I don't recall what it
17 said in this case, and I certainly don't want to stay silent.
18 It's not an agreement, but we'll have to take a look at the
19 order specifically for this case. I don't have the memory of
20 that -- of it being this way. I thought it was contemplated,
21 but I'll review it.

22          THE COURT: I know he did ask that the case
23 management orders be divided. I do recall that in this case,
24 and that was unusual. He hadn't done that in all of the cases.
25 And I think the reason is because in this instance I believe

1 the debtor has always said they may ask for an estimation

2 hearing on asbestos claims whereas that hasn't been the case in

3 all the others.  So, it's just been too long.

4             MS. ESKIN:  I agree.

5             MR. BERNICK:  There is no question but that all of

6 the parties in the case don't believe -- acted on the basis

7 that the personal injury claims in fact did reside before Judge

8 Wolin.  I don't know what the language of any order might read,

9 but the entire appeal -- entire prosecution of the recusal

10 motion's appeal all assumed the factual predicate and was in

11 the record, that personal injury stayed before Judge Wolin and

12 that he failed to act on it.  That's one of the bases for the

13 recusal motion.

14             THE COURT:  Yes, sir?

15             MR. KRUGER:  Your Honor, Louis Kruger for the

16 unsecured creditors' committee.  I just wanted to confirm what

17 Mr. Bernick's view I think is where Judge Wolin was.  But I

18 wanted to also confirm what Ms. Baer reported, which was that

19 the committee had not indeed approved the Sealed Air settlement

20 and waited for Judge Wolin to schedule a briefing schedule, and

21 of course, never did so, so we still have issues with respect

22 to the proposed Sealed Air settlement agreement.  With respect

23 to the reorganization plan that has been filed, it's quite true

24 that the committee, among others, have been in regular

25 discussions and negotiations with the debtor and various

1  parties.  We thought we had a view, which was that to the
2  extent that the debtor believes that it is solvent and we
3  confirm that view, we believe that unsecured creditors are
4  entitled to post-petition interest on their claims.  To some
5  extent the reorganization plan and disclosure document reflect
6  that view, to some extent they don't.  So, we expect to be
7  working with the debtor in the coming days and weeks to see if
8  we can't agree on what the treatment is of those unsecured
9  claims.

10        THE COURT:  Okay.  So, on January 21st we will start
11 with the procedural motions, the two motions.  What else did
12 the debtor file, or are you filing, that you want heard that
13 day?

14        MS. BAER:  Your Honor, it's the confirmation
15 procedures, estimation, and disclosure statement.

16        THE COURT:  Okay.  Just those three matter?

17        MS. BAER:  Those three.

18        THE COURT:  All right.  Well, if I can take -- if I
19 can do anything with respect to the estimation matter, then
20 I'll do that January 21st.  I think you're all going to have to
21 take a look at the order and give me your views about whether
22 you think I do or don't have jurisdiction to do it.  If Judge
23 Wolin's order clearly retains jurisdiction over that issue,
24 estimation, then I don't think I can do anything.

25        MS. BAER:  Your Honor, just to clarify, there's no

1  doubt here that you can deal with the estimation motion.  We're
2  asking for estimation for purposes of feasibility under the
3  plan.  We're not asking for you to estimate actual claims for
4  purposes of allowance.

5          THE COURT:  Oh.  All right.

6          MS. BAER:  The question is the case management
7  procedures, the litigation protocol vis-a-vis asbestos-related
8  claims.  That's what Judge Wolin kept.  That's what he had us
9  divide out.  And that's what we're questioning as to whether or
10 not this Court can hear it given that that's where Judge Wolin
11 had kept it.  We have every intention of, and fully believe
12 that we have no problem with going forward on the estimation
13 motion before this Court.  It's only the case management motion
14 vis-a-vis litigation protocols and procedures for asbestos
15 claims.  But -- in other words, the procedures for dealing with
16 the merits of the asbestos claims.

17         THE COURT:  So, the debtors' disclosure statement and
18 plan want to deal with the asbestos claims, not through a trust
19 format but actually in the bankruptcy context?

20         MS. BAER:  No, Your Honor.  There is a trust format.
21 The estimation motion will set caps on certain of those claims,
22 not set caps on others.  But it will help for feasibility
23 purposes.  The case management motion will set a post-
24 confirmation litigation protocol and a post-confirmation
25 procedure for litigating common issues with respect to asbestos

1  personal injury claims in order to get to the merits of
2  allowance of those claims.

3          THE COURT:  Litigation is going to be in the District
4  Court?

5          MS. BAER:  Litigation in the District Court.

6          THE COURT:  Well, okay.  Then it seems to me if the
7  litigation is going to be in the District Court, probably the
8  District Court is going to want to set its own case management
9  proceedings.  I might be able to get you through some of the
10  discovery matters.  You know, it's not atypical that the
11  Bankruptcy Court gets up to the point of the trial.  But I
12  think that's something you're going to have to address with
13  Judge Buckwalter if, in fact, Judge Wolin retained the
14  jurisdiction over that issue.  So, that is one --

15          MR. BERNICK:  Your Honor, there's a reference point
16  which is -- there's a subject matter jurisdiction point and
17  then there's a question of what Court is going to exercise the
18  jurisdiction.  We obviously have to take up with Judge
19  Buckwalter the latter issue.  I believe that under In Re
20  Shadigay, and we've been through this in other cases, that Your
21  Honor would have full power to go forward and estimate,
22  including litigation, estimate personal injury claims on all
23  matters.  And even when it comes to allowance or disallowance,
24  under In Re Shadigay, Your Honor can dispose of that so long as
25  they don't require a jury trial.

1          THE COURT:  Well, I think that Section 157 of Title
2   28 makes it clear that the estimation of personal injury claims
3   is not a core matter, but the Court has jurisdiction to do it.
4   So --

5          MR. BERNICK:  Right.

6          THE COURT:  -- I don't think that's the issue.  It's
7   -- you know, I guess the question is whether the parties really
8   want to go through that matter as a bankruptcy -- in the
9   Bankruptcy Court knowing that it's not a core matter that could
10  be done again by the District Court if the District Court
11  chose.  So --

12         MR. BERNICK:  Yes.  And to be clear, the essence of
13  our plan really is that when it comes to the personal injury
14  claims themselves, all that we contemplate taking place prior
15  to confirmation in connection with the plan is an estimation
16  for purposes of determining an overall sum of money to set
17  aside for certain of the personal injury claims, i.e., those
18  people who have claims who are asymptomatic and, B, had some
19  significant exposure to Grace products.  We would not seek to
20  litigate for purposes of determining the validity of any
21  individual claims as part of this estimation process.  All of
22  that would take place in the post-bankruptcy trust.  Likewise,
23  any and all litigations, or allowance, or disallowance purposes
24  involving asymptomatic people or people who don't have
25  significant exposure to Grace products, that also would take

1  place in the post-confirmation trust.  The only matter that
2  would actually have to be taken up in order to proceed with
3  this plan is an estimation for purposes of fixing an overall
4  amount that would be allocated in the post-bankruptcy trust for
5  purposes of paying those who are truly sick as a result of
6  significant exposure to Grace products.

7          THE COURT:  All right.  Well, stated that way, Mr.
8  Bernick, I don't have any trouble saying that, yes, I'd have
9  jurisdiction to do it.  But I think I'll wait and see what the
10 other parties have to say about that view when I get the
11 objections in just to be sure that they all agree that that's
12 the correct statement of what the plan is going to do, but --

13         MR. BERNICK:  That was certainly our intent in
14 drafting the plan, Your Honor.

15         THE COURT:  Okay.  All right.  Well then, on January
16 21 we'll take up definitely the estimation issue, definitely
17 the disclosure statement issue, and the case management order
18 if the parties agree, or Judge Buckwalter makes it clear that I
19 have jurisdiction to address that.  If he says I don't, then,
20 you know, obviously I'm not going to take something on that I
21 don't have jurisdiction to do.  But for scheduling purposes
22 I'll plan as though I am going to hear it.  But if I don't then
23 we'll have more time to devote to the other two.

24         MS. BAER:  And, Your Honor, there's also the
25 confirmation procedures motion.

**J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:   Now, that one may be more appropriate to
2    wait until we get through the others because I think it may be
3    more likely better -- the time may be better spent on
4    disclosure statement objections than on this issue until we get
5    through the disclosure statement process.  Or --

6          MS. BAER:   It's dependent upon the disclosure
7    statement being approved --

8          THE COURT:   Right.

9          MS. BAER:   -- and these are the ballots, and the
10   like, going forward.

11         THE COURT:   Yes.  So I think it may make more sense
12   to wait to see if, in fact, you can't get at least some of the
13   other parties on board from a consensual basis because that may
14   very well change your balloting process and the procedures.
15   So, I think I'd prefer to defer that one until we get through
16   the other two matters.  Why don't you put that one on the
17   agenda for the January 24th hearing in Delaware?  And we'll see
18   how far we go with the others.  We can always continue it if
19   need be.

20         MS. BAER:   In terms of the objection deadlines and
21   the like, should we keep it on the same schedule --

22         THE COURT:   Yes.

23         MS. BAER:   -- as the others?

24         THE COURT:   Yes.  Keep the same schedule, but the
25   hearing date would be different, because I can't possibly get

**J&J COURT TRANSCRIBERS, INC.**

1  through all three of those matters totally on the 21st anyhow.

2         MS. BAER:  I will do so.

3         THE COURT:  Okay.  Anything else on the housekeeping

4  matters that the debtors just raised?  All right.

5         MS. BAER:  Your Honor, I think, then, we're ready to

6  proceed to the agenda for today's omnibus hearing.

7         THE COURT:  Okay.  I have entered orders on agenda

8  number two, and on agenda number four which, only with respect

9  to the request for leave to file a reply.  I did sign an order

10 that will permit the reply to be filed.  With respect to agenda

11 number ten, you've indicated that that issue is now moot

12 because apparently the State Court action has been dismissed as

13 against Scott.  But I need an order that will be submitted that

14 terminates agenda number ten on my docket.

15        MS. BAER:  Your Honor, it's our understanding that

16 Scotts filed a withdrawal of that motion.  I have not seen it,

17 but that's what we were informed this morning.

18        THE COURT:  I haven't seen it either.  If something's

19 been filed I'm not aware of it.

20        MS. BAER:  Your Honor, I'll follow up with Scotts'

21 counsel, although I believe Scotts' counsel is on the phone,

22 and submit the appropriate papers, whether it be an order, or

23 if they've already submitted something.

24        THE COURT:  All right.

25        MR. SIDMAN:  Your Honor, Bob Sidman for Scotts.  We

1  did file the withdrawal, and we'll work with Jan to make sure
2  it's on the docket.

3          THE COURT:  All right.  Thank you.  Let me just make
4  a note.

5                          (Pause)

6          THE COURT:  Okay, Ms. Baer.  Thank you.

7          MS. BAER:  Your Honor, agenda item number one is the
8  adversary complaint that Scotts has filed before this Court
9  with respect to declaratory relief on the various insurance
10 proceeds that -- I'm sorry, the insurance policies.  That
11 matter has been continued to the December 20th hearing and the
12 answer date has currently been continued to December 15th.
13 That takes us, Your Honor, to agenda item number three.  This
14 has to do with the debtor's interim order to limit trading with
15 respect to its stock.  As you will recall, Your Honor, this
16 matter was set for hearing today on entry of a final order.  At
17 the request of the equity committee, as well as one other
18 party, Elliott Associates, a significant shareholder in W.R.
19 Grace stock, the parties have asked that we continue this
20 matter to the December 20th hearing.  That would give them
21 additional time until December 10th to file objections, if any,
22 to the order becoming final.  And we have to submit to Your
23 Honor today a revised interim order that has the new deadlines
24 in it and takes out the notice requirements, because they've
25 already been fulfilled in the interim order.

                    J&J COURT TRANSCRIBERS, INC.

1            THE COURT:  Okay.  The problem I have is, if you file

2  things that late how am I going to get them to review them?  I

3  have a -- I have a case management order in place for a reason,

4  and I really do not like the changes for that reason.  I have

5  no problem putting it off to December 20th if that's what you

6  want to do.  But it seems to me that the deadlines for filing

7  objections or matters that are on the December 20th hearing

8  ought to be complied with, otherwise I'm getting so many things

9  in at the last minute that I can't get prepared.

10           MS. BAER:  Your Honor --

11           THE COURT:  That's the reason for a case management

12  order.

13           MS. BAER:  -- the debtors agreed to it at the request

14  of the equity committee.  Obviously, from our point of view,

15  whatever the Court would like in that respect is fine with us.

16  I do believe, however though, one of the goals is that there

17  will not be an objection.  And this is a complicated tax

18  calculation, and they felt the more time they had the more we

19  could come to a conclusion so that hopefully no objections

20  would be filed.  But counsel for the equity committee is here,

21  and I would suggest he address that with you.

22           THE COURT:  Good afternoon.

23           MR. BECKER:  Good afternoon, Your Honor.  Gary Becker

24  from Kramer, Levin, Naftalis & Frankel for the equity

25  committee.  Your Honor, as Ms. Baer indicated, these are

                    **J&J COURT TRANSCRIBERS, INC.**

1  complicated tax issues that I personally can't pretend to
2  understand.  But the tax lawyers are working on it.  And we
3  suspect that if we have enough time to analyze these issues,
4  that we may arrive at a point where no objection is necessary.
5  We'd rather not take precipitous action by objecting if it's
6  not necessary, which is why we asked for a delayed objection
7  date.

8          THE COURT:  Well, is there some reason why a ruling
9  on this is necessary by the year end?  I mean, if it takes that
10 much time to get the objections ready, why isn't it just put
11 off until the January 24th hearing date?

12         MR. BECKER:  I believe that would be acceptable, Your
13 Honor.

14         THE COURT:  Is there some reason why it has to be
15 heard in December?

16         MS. BAER:  No, Your Honor.  As long as the interim
17 order is in place that's fine from the debtors' perspective.
18 We wanted to accommodate the equity committee's request.

19         THE COURT:  So, is anybody objecting to putting it
20 off until January?  Is it just the equity committee that's now
21 looking at this issue?

22         MS. BAER:  Your Honor, the other party who objected
23 last time we were in Court was Elliott Associates, a
24 significant shareholder of the company.  I don't know if they
25 have counsel either on the phone or in Court today.  They were

1 the other party that equity contacted to make sure they were
2 okay with these deadlines.

3         THE COURT:  Anybody able to speak for Elliott
4 Company?  No one can, so -- well, I think your choice is either
5 do it by the deadlines for the 20th, or put it off until the
6 24th and meet those -- January 24th, and meet those deadlines.
7 I think that would make the most sense.

8         MR. BECKER:  Your Honor, I think January 24th for a
9 hearing would be appropriate.

10        THE COURT:  All right.  Then item three is continued
11 to January 24th in Delaware with whatever the objection
12 deadlines are for that hearing.

13        MS. BAER:  Your Honor, I have a revised interim order
14 that I'd like to hand up, as well as a black line so you can
15 see the changes.  And then I think we could just interlineate
16 the new dates so we can get it entered today and there not be
17 any question.

18        THE COURT:  Okay.  Why don't you make the changes and
19 I'll sign it after the changes are made?

20        MS. BAER:  Thank you, Your Honor.  We'll do that.
21 Your Honor, that takes us to agenda item number four.  Your
22 Honor, agenda item number four is the Town of Acton's motion
23 for relief from the automatic stay and related determinations.
24 Frankly, Your Honor, having now seen the reply from Acton, I'm
25 not sure what they want.  At first blush it looked as if they

1   wanted to not only complete the procedural niceties, if you
2   will, to establish their sewer betterment, but they also wanted
3   to bill and collect from the debtor and the other people that
4   they've assessed what we believe are pre-petition claims for
5   sewer betterment costs.

6         Now, they say in their reply, no, they're not seeking
7   to collect, they're only seeking to issue the final assessment,
8   the final certification, and bill for it.  Your Honor, if
9   they're not seeking to collect a pre-petition claim and they're
10  not seeking to perfect a pre-petition or post-petition lien,
11  they're not seeking to collect a post-petition claim if that's
12  what they believe it is, then we don't have an objection to
13  what they're asking for.  But when you read their papers it's
14  all over the place.  And so, Your Honor, we're not sure at this
15  point what they're requesting.

16        We certainly object to the collection of either a
17  pre-petition or post-petition claim, and we object to the
18  perfection of a pre-petition or a post-petition lien at this
19  point.  And I believe the Town of Acton's counsel is on the
20  phone.

21              MR. BEAN:  I'm right here.

22              MS. BAER:  Oh.  He's right here.  He's in Court.

23              THE COURT:  Good afternoon.

24              MR. BEAN:  Thank you, Your Honor.  Thomas Bean of
25  Nutter, McClennen and Fish for the Town of Acton.  With me here

**J&J COURT TRANSCRIBERS, INC.**

1 also is Steve Anderson, who is outside town counsel who is the
2 expert on the state sewer assessment law.  We think the relief
3 that we have sought in our motion is very, very clear.  In the
4 wherefore clause we want the Court to determine the assessment
5 of the final betterments in the sewer district, and that the
6 commission of those sewer betterments are not subject to the
7 automatic stay, and that we can also bill the debtor for those
8 assessments.

9         What's very, very -- and so all we're really seeking
10 here is the authority to issue the bills to the debtor.  What
11 that does is we think will help the debtor.  The debtor, as the
12 Court can see from its papers, objects to the amount of the --
13 the amount of the assessment.  And the way to start the
14 abatement process, which the debtor acknowledges, or appears
15 that it wants to do, is for us to be able to issue the bills.
16 As soon as we do that they can start the abatement process and
17 the normal abatement process will begin.  We're also amenable
18 to sitting down for 60 days and trying to resolve this if we
19 can.

20         Now, the reason we filed the motion to get some
21 clarity, we don't think the automatic stay applies because we
22 think the final assessments are a post-petition -- something
23 that arose post-petition.  Now, I'm not sure whether I -- I can
24 go on with my presentation, but it may appear that we do not
25 have an objection from the debtor.  The critical issue before

1 the Court, sort of -- this is step one.  Step one is to send
2 out the bills, as, again, we are not seeking to be paid on
3 those bills.  We want to afford the debtor the opportunity to
4 seek an abatement.  And while -- to seek an abatement, under
5 state law, they have to pay a monthly amount to play, if you
6 will.  They have to pay a small portion of $41,000 a quarter,
7 if you will, to go through the abatement process.  We want to
8 give them that opportunity.  We know that if we want to get
9 paid we are going to have to come back before this Court and we
10 think file a motion to compel payment of administrative
11 expenses.  So, what we wanted the Court to do is determine the
12 stay does not apply so that we could get a determination that
13 we are dealing with a post-petition claim, if you will, and
14 that if further relief is necessary what we're seeking is
15 payment of administrative expenses.

16            THE COURT:  Ms. Baer?

17            MS. BAER:  Your Honor, if all the town seeks to do is
18 send out bills, we do not object.  But I'm still a little
19 confused because of one of the last comments the town said is
20 something about and get a determination that it's a pre-
21 petition debt.

22            THE COURT:  Post-petition.

23            MS. BAER:  I'm sorry.  A post-petition debt.  Your
24 Honor, wholeheartedly the debtor believes this is not a post-
25 petition debt, it's a pre-petition debt.  Again, if all they

1  want to do is send out bills, that's fine.  But rest assured,
2  the debtor is not going to pay them.  We believe it's a pre-
3  petition debt.  They would have to establish pretty
4  extraordinary relief to get us to pay a pre-petition debt at
5  this point in time.  Or they'd have to file a motion, or
6  whatever appropriate procedures to compel us to pay an
7  administrative claim.  And, Your Honor, before that happened
8  there would have to be an evidentiary hearing somewhere with
9  respect to whether or not there is any benefit to the estate.
10 They have filed a claim.  We will file a claim objection.  What
11 they seem to be doing by sending out these bills is effectively
12 saying we now want to amend our claim to put in the final
13 betterment numbers.  And if that's what they want to do they
14 can go ahead and do that.  There's nothing precluding them from
15 doing it.  But we want to make it very clear that they don't
16 have any better right now to get us to pay.  In order to get us
17 to pay they've got to come back to this Court.  And number two,
18 they do not have a right to perfect a lien against us.  That
19 would be a violation of the automatic stay.  With that
20 understanding, Your Honor, if they want to send out the bills
21 we do not object.

22        THE COURT:  Well, is the debtor interested in
23 pursuing this abatement issue?

24        MS. BAER:  Yes, Your Honor.  Very much so.  The
25 debtor --

1    THE COURT:  So, if the first step to do that is to
2  get the bills, then it seems to me that whether the stay
3  applies or not I should at least lift the stay to let the bills
4  go out so that the debtor can then pursue the abatement issue,
5  because isn't that the means by which you will resolve the
6  claim, ultimately?

7    MS. BAER:  It is, Your Honor.

8    THE COURT:  So --

9    MS. BAER:  It's the logical means to resolve it.

10    THE COURT:  Yes.  So, it seems to me that whether the
11  stay applies or not, it should be lifted for purposes of, I
12  guess, liquidating that -- the claim through the abatement
13  process.  Then if you still have a characterization issue I
14  think you're going to have to come back here, if you think it's
15  administrative and file an appropriate motion.  I'm not sure if
16  you get it resolved that it will matter, the character --

17    MR. BEAN:  Your Honor, I think that would be fine.  I
18  just have some minor quibble with saying the stay should be
19  lifted because we don't think the stay applies.  I think that's
20  just a word choice.  We want to make it clear that what we can
21  do is send the bills out.  Clearly if it is post-petition we
22  don't need the stay lifted, and that's why we wouldn't want the
23  Court to make any determination that would suggest that the
24  stay does apply and that it's a pre-petition claim.

25    THE COURT:  Well, I'm not prepared on the record

1 right now to determine whether it's pre or post-petition, so
2 how about an order in the alternative?  To the extent it's pre-
3 petition the stay is lifted.  To the extent it's post-petition
4 the stay doesn't apply, and I'll address all of those issues on
5 the merits at an appropriate time.

6          MR. BEAN:  That makes a lot of sense, Your Honor.

7          THE COURT:  Okay.

8          MS. BAER:  That's fine, Your Honor.

9          THE COURT:  All right.  I'll expect to get an order,
10 then, submitted on a certification of counsel from the debtor,
11 and the debtor will run it by you, Mr. Bean, before submitting
12 it to the Court.

13          MR. BEAN:  Very well.  Thank you.

14          THE COURT:  Okay.  Thank you.

15          MR. BEAN:  But just so we're clear, it's in the
16 alternative.  It won't be suggesting either way that it's pre
17 or post.

18          THE COURT:  No.  I'm not prepared to make a ruling
19 either way as to what this is right now.  I don't think I need
20 to in order to get you to -- your -- your client to send the
21 bill out and the debtor to be able to pursue the abatement
22 process.

23          MR. BEAN:  And one thing.  If the debtor does want to
24 pursue the abatement process, and I gather it does, they have
25 to comply with all state laws with respect to that abatement

1  process.

2  THE COURT:  Well, I don't know, because I -- if it's

3  a pre-petition claim I don't think they have to pay, so I don't

4  know what the state law says.

5  MR. BEAN:  Well then maybe we need to get this issue

6  resolved, because one of the things, under state law you have

7  to pay -- make a quarterly payment to proceed through the

8  abatement process.  It's a pay to play process.

9  THE COURT:  Well, is there a problem with the pay to

10  play aspect?

11  MR. BEAN:  It's about $41,000 a quarter.

12  MS. BAER:  Your Honor, at this point in time the

13  debtor is not paying a pre-petition claim.  And if we have to

14  pay a pre-petition claim in order to do something I think we'd

15  have to come back here before we could pay a pre-petition

16  claim.

17  MR. BEAN:  Well, as I said, we don't think it's a

18  pre-petition claim, Your Honor.

19  THE COURT:  Well, we either need to tee it up to

20  litigate that issue first, or else I should simply either do

21  what I said earlier, and let it go forward.  But if it's pre-

22  petition I don't think the debtor can make that payment.

23  Although your plan is proposing to pay 100 percent to pre-

24  petition creditors anyway --

25  MS. BAER:  Yes it is, Your Honor.

**J&J COURT TRANSCRIBERS, INC.**