1          THE COURT:  How about an order that permits the
2   debtor to make the $41,000 per month quarterly payment but
3   subject to disgorgement in the event that it turns out that
4   that payment was inappropriate somehow?

5          MR. BEAN:  No problem with that, Your Honor.

6          MS. BAER:  Your Honor, we're not prepared to, and
7   we're not willing to pay a pre-petition claim at this point in
8   time.

9          THE COURT:  Well, then let's tee it up for
10  litigation.  We'll find out if it's pre or post-petition and
11  see how it goes.  I mean --

12         MR. BEAN:  Your Honor, we -- our motion addresses the
13  issue and the debtor's response does address the issue of
14  whether it's pre-petition or post-petition.  We're here to
15  argue that issue today.

16         THE COURT:  Go right ahead.

17         MR. BEAN:  Thank you, Your Honor.  The parties are
18  agreement on the applicable standard to analyze whether the
19  claim is pre or post-petition.  It's that set forth in the
20  Friendville decision.  And the threshold question is when a
21  right to payment arises absent overriding Federal law is
22  determined by reference to state law.  And the Supreme Court,
23  in Pennsylvania v. Davenport said the critical question is
24  whether or not there's an enforceable obligation.

25         Now, I'd like to walk through the state law process

1  if I can.   The state law process is a two-step -- two
2  independent steps by which sewers get built and then get paid
3  for.   First, the town may make an estimated assessment not in
4  excess of half of the contracts it has let.   And the purpose of
5  the estimated assessments is to generate some revenue to begin
6  paying for the construction of the sewer.   The town made this
7  assessment and recorded a lien.   And as you can see from the
8  state statute the lien arises when the town files the order for
9  construction.   So, we're not seeking to record a lien.   We have
10  a pre-petition lien that's duly perfected.   That lien and the
11  words of the statute secures, quote, all assessments.   Then
12  after completion of the sewer, once all the costs are known,
13  the town, quote, may assess and collect actual sewer
14  assessments.   Between the time of the commencement of the
15  construction of the sewer, in this case the year 2000, and the
16  completion in the year 2004 in this case, the town may decide
17  how to pay for the sewer.   It may issue final assessments, or
18  it may develop some other methods for paying for construction
19  of the sewer.

20          And here's a critical admission that Grace makes.
21  When Grace says that when we do issue the final assessments
22  they supercede the estimated assessments.   So, those estimated
23  assessments are gone.   And if this Court concludes that the
24  final assessments are a post-petition claim, then our proofs of
25  claim are moot.   And this is for an obvious reason, Your Honor.

1  The final assessment is made is against the property.  It is an
2  in rem claim.  And so, the party that has to pay it is the
3  party that owns the property when the assessment is made.  So,
4  for example, if we hd made the -- when we made the estimated
5  assessment, if Grace had sold the property between the time of
6  the estimated assessment and the time of the final assessment,
7  Grace would have no obligation to pay.  So, I'm not sure how
8  Grace can say that it had an obligation to pay when we made the
9  estimated assessment.

10          THE COURT:  Wait.  I'm sorry.  Say that again.

11          MR. BEAN:  Sure.  The party that's obligated to pay
12  the final assessment is the party that owns the property when
13  the assessment is made.

14          THE COURT:  Right.

15          MR. BEAN:  So if Grace had sold the property, and
16  this is why they had no -- there was no right to payment, no
17  obligation, if Grace had sold the property between the time of
18  the estimated assessment and the time of the final assessment,
19  Grace would have no obligation to pay.

20          THE COURT:  Right.  Okay.

21          MR. BEAN:  The party that purchased the property from
22  Grace would have the obligation to pay.  And that's a very
23  critical point to show that there was no right to payment prior
24  to the commencement of this case, because I don't -- it's not
25  factually disputed that the estimated assessment was made pre-

1  petition and the final payment, which Grace concedes superceded

2  that estimated assessment, was made post-petition.

3       THE COURT:  Well, who pays while the estimated

4  assessment is made?

5       MR. BEAN:  The owner of the property pays while the

6  estimated -- based on the estimated assessment.

7       THE COURT:  Okay.  So, Grace did have an obligation

8  to pay because it owned the property at the time of the interim

9  assessment.

10      MR. BEAN:  On the -- on the estimated?  Yes, that's

11  correct.

12      THE COURT:  Right.  And that's a pre-petition claim.

13      MR. BEAN:  That's correct, Your Honor.

14      THE COURT:  Okay.  How did it get converted from pre

15  to post-petition then?

16      MR. BEAN:  Because the final assessment, which can

17  only be made as a matter of state law, once the sewer

18  construction is completed, was made post-petition.  And the

19  debtor has conceded in its papers that the final assessment

20  supersedes the estimated assessment.

21      THE COURT:  Yes.

22      MR. BEAN:  That's how it got converted, because --

23      THE COURT:  But that's as to the amount.  I mean,

24  you're not going to contend, surely, that when you make the

25  final assessment you're pre-petition lien, based on the interim

1 assessment somehow goes away in favor of a new lien on the
2 final one, are you?

3          MR. BEAN:  No, Your Honor.

4          THE COURT:  Well then it's a pre-petition claim.

5          MR. BEAN:  No, I don't think it's that simple, Your
6 Honor.  The final -- what you're suggesting, then, is that all
7 the final assessment does is liquidate the amount.

8          THE COURT:  Yes.

9          MR. BEAN:  That's not what state law provides.

10          THE COURT:  Well then, does you lien go away on the
11 interim assessment?  Because if your lien is retained and your
12 -- and is essentially dated back to the date that the interim
13 assessment or estimated assessment was first made, then it's a
14 pre-petition claim.

15          MR. BEAN:  The statute -- the lien secures all
16 assessments.

17          THE COURT:  Yes.

18          MR. BEAN:  It's in the nature of a drag net, if you
19 will.  Okay?

20          THE COURT:  Um-hmm.

21          MR. BEAN:  And it secures the estimated assessments
22 while the estimated assessments exist, and then it secures the
23 final assessment --

24          THE COURT:  Yes.

25          MR. BEAN:  -- when the final assessment -- it didn't

1  -- it doesn't -- there's nothing to secure, if you will, on

2  that final.  It doesn't exist pre-petition.  And if -- and --

3          THE COURT:  Well, it has to exist.  The foundation

4  for it, in this case, has to have existed pre-petition, because

5  you can't issue a final unless you've issued an estimated.

6          MR. BEAN:  That's -- no, Your Honor.  You can't.

7          THE COURT:  You can't issue a final.

8          MR. BEAN:  Yes, Your Honor.

9          THE COURT:  Okay.  But in this -- the facts of this

10  case, the state didn't issue just a final.  It issued an

11  estimate.

12          MR. BEAN:  It issued the -- the estimated was a

13  discretionary act made by the town.

14          THE COURT:  Well, it's not very discretionary if it

15  starts your lien.

16          MR. BEAN:  Well, it -- the recording of the order for

17  construction starts the lien.

18          THE COURT:  Without regard to --

19          MR. BEAN:  Without regard to the assessment.

20          THE COURT:  -- whether or not there's an estimation?

21          MR. BEAN:  That's exactly right, Your Honor.

22          THE COURT:  All right.

23          MR. BEAN:  Now, if this were indeed simply a

24  liquidation of a pre-petition claim, state law would say that

25  when you estimate the costs of construction you can issue an

1 estimate for the total cost of construction, and then later
2 you'll just liquidate what the final amount. But that's not
3 what state law says. State law says that you can only estimate
4 up to 50 percent of the cost of the contracts that are let at
5 the time. And so, state law, which we need to look to under
6 Friendville, does not contemplate estimating the total cost and
7 then liquidating, if you will, or correcting any error at the
8 end when the final assessments are made. That's not what state
9 law provides. So, you do have an estimated claim which is then
10 superceded by the final assessment. Now, as I said also, state
11 law doesn't require the Town of Acton to issue sewer
12 assessments. It can raise the revenue to pay the sewer through
13 general real estate tax revenues if that's what the town wants
14 to do. And so, the town could have issued the estimated
15 assessment and never issued the final assessment. It could
16 have decided to change its by-law and raise the revenue through
17 general real estate tax revenues. And so, what you have here
18 is a discretionary estimated, and again, the town did not need
19 to issue an estimated, it did. And that estimated is -- excuse
20 me -- is then superceded. And that's why we think it's a post-
21 petition claim. As the debtor -- as I said, it's an in rem
22 claim, not against a person. It's against the property. And
23 the final superceded the estimate.

24              THE COURT:  Okay.

25              MR. BEAN:  Okay?  Now, Grace points out that we did

1  file proofs of claim, and we did.  And the reason is the
2  estimated was pre-petition.  But as I have suggested, the
3  estimated goes away, is superceded when the final is made.
4  Now, all we're seeking, as I said, is the -- an order from the
5  Court to be able to send the bills so we can start the
6  abatement process.  I don't know why the debtor doesn't want to
7  -- it says it wants to abate.  It's litigating these issues in
8  State Court in Massachusetts already.  We've been to the Trial
9  Court where Grace challenged the facial validity of the by-law,
10 and they also challenged the propriety of the amount, something
11 they're asking this Court to review, which the Court cannot do
12 under the Rucker Feldman doctrine.  But what we would like to
13 -- as I said, all we're seeking to do is allow that abatement
14 process to start.  And the reason is, it's only when we send
15 out the bills to all the creditors that the abatement process
16 starts.  And that's why we seek relief from stay if it's a pre-
17 petition claim to send out the bills and allow that abatement
18 process to start.  And the reason is this.  All of the sewer
19 assessment amounts are interdependent upon each other.  We have
20 not issued, and we don't think we can issue, bills to all of
21 the other property owners in the district until we know what
22 Grace is going to pay, or at least what number of sewer
23 betterment units.  And the reason is this.  There is a total
24 cost of construction of the sewer, and then there is a number
25 of sewer betterment units.  And the number of units divided

1 into the cost determines how much each unit owner pays.  And

2 so, if Grace challenges -- if Grace doesn't have to pay, we

3 don't know how many units they're going to have.  And therefore

4 we can't know how much to assess the other property owners.

5 So, all we're seeking to do is bill Grace and let them

6 challenge this through the abatement process.

7        They make numerous complaints about the propriety of

8 the amount of the assessment.  And as I said, Your Honor, the

9 amount of the assessment is really not before this Court.

10 That's something that's gets resolved through the abatement

11 process.  It has already been described by the Massachusetts

12 Trial Court.  Their challenge to it is premature.  And the

13 Trial Court has said, and we've provided the Court with a copy

14 of the opinion, so the proper way to deal with the challenge to

15 the amount is through the abatement process.

16        If the Court does wish to get into the propriety of

17 the amount, just a couple of quick points.  We have to assess

18 them.  They said, leave us out of the assessment process, we're

19 a debtor.  State law doesn't permit that, because that would

20 result in every other property owner in the district being

21 over-assessed.  And state law says everyone has to be assessed

22 proportionally.  They say the land hasn't been benefitted.  We

23 have undeveloped land, Your Honor.  This is land which the

24 parties agree is contaminated and cannot -- you can't put in a

25 septic system.  So, if this property is to be developed, the

J&J COURT TRANSCRIBERS, INC.

57

1  only way to do it is with a sewer.  And so, there is clear
2  benefit to the debtor by having a sewer there because now the
3  property can be developed, or be sold to somebody who wants to
4  develop it.  And without the sewer that wouldn't be there.

5      So, and finally we have an affidavit, Your Honor, and
6  the debtor has submitted no affidavits or evidence on any of
7  these issues challenging the amount.  We have an affidavit that
8  says the sewer has plenty of capacity to service this property.

9      Now, let's look at the harm to the town if we are not
10 granted relief from stay, if this is indeed a pre-petition
11 claim.  The town bonded this sewer assessment.  And we have
12 developed a procedure whereby we're going to repay the bonds
13 based on the revenue derived from the assessed parties.  Each
14 property owner must pay a share so the town has sufficient
15 revenue to pay, otherwise the town has to default on its bonds,
16 or we have to go what's called in Massachusetts an override of
17 the limitation on real estate taxes and get all the property
18 owners in the town, not just the sewer district, to pay the
19 difference.  And so, while the town could probably deal with a
20 failure to pay of a single residential property owner, and take
21 money maybe from essential services such as police, fire, and
22 education, we're dealing with a very large property owner,
23 which, as Grace points out, is being asked to pay -- because it
24 benefits from a significant portion of the sewer improvement.

25     So, that's the harm to the town.  We're left with

1 only three choices here if Grace doesn't pay -- default on the
2 bonds, take money from police, fire, and education to pay
3 Grace's share, or go back to the taxpayers and ask for all the
4 people in the town who said years ago, we shouldn't have to pay
5 for a sewer that only benefits a discrete number of property
6 owners.  Not everyone in the town should pay, just the property
7 owners who benefit should pay.  And under the state law that's
8 a permissible option, and then a State Court has upheld the
9 facial validity of that by-law.

10      So, we think, Your Honor, the stay does not apply
11 because the final assessment was issued post-petition.  There
12 was no obligation to pay it pre-petition.  The debtor, again,
13 it goes to the property.  It's an in rem claim which superceded
14 the pre-petition amount, and for that reason we think it's not
15 subject to the stay.  In the alternative we would seek relief
16 from stay, and I don't think there's any real harm to the
17 debtor.  What's the harm to the debtor?  It's seeking the
18 abatement process and paying $41,000 a quarter to proceed
19 through that abatement process.  So, we ask that the Court
20 determine that the stay does not apply, or in the alternative
21 for relief.  Thank you.

22      THE COURT:  Ms. Baer?

23      MS. BAER:  Your Honor, it's Grace's position that
24 this is a pre-petition claim.  Pre-petition the sewer abatement
25 process began, pre-petition the order was filed that permitted

**J&J COURT TRANSCRIBERS, INC.**

1  the process to begin, pre-petition an assessment was made, and
2  under that assessment all property owners were given options of
3  the ways in which they could pay.  And pre-petition they were
4  in fact required to begin the process of paying.  The town went
5  ahead, knowing full well that Grace was in Chapter 11.  They
6  built the sewer.  The town went ahead, knowing full well that
7  Grace challenged the allocation, if you will, of Grace's
8  responsibility while Grace was in Chapter 11, they went ahead.
9  The town has now completed the sewer betterments.  The town is
10 seeking to issue bills.  Grace is not objecting to the issuance
11 of bills, and we're, in fact, stipulating here, whether it be
12 pre-petition or post-petition, issue the bills.

13        We do have a fundamental dispute, Your Honor, and
14 that is we absolutely believe that this betterment assessment
15 as to Grace is inappropriate, that it will not reap any
16 potential -- any significant benefit on the debtor's estates.
17 And we do intend to challenge that through the abatement
18 process.  Your Honor, we do not agree with counsel for the town
19 that we have to pay the pre-petition claim in order to go
20 forward with our abatement process.  It's our intention to go
21 forward, and we do not need leave of this Court as far as we
22 read the statute and we understand the way in which this
23 abatement process worked, to challenge the abatements, and we
24 have every intention of doing so.

25        The fact that they completed the sewer post-petition

**J&J COURT TRANSCRIBERS, INC.**

1 and now have a firm amount versus an estimated amount does not

2 convert a pre-petition claim into a post-petition claim.    The

3 numbers may be new, the numbers are better.    They're different

4 than the numbers they had pre-petition, but the fact of the

5 matter is it was a pre-petition debt.    It was a pre-petition

6 assessment.    And all they've done by issuing the final

7 betterment is to liquidate the amount of that pre-petition

8 debt.    They've now set the amount.    Grace challenges the

9 amount.    Grace understands that the town may have to go forward

10 and pay contractors and the like.    But the town knew that going

11 in.    They knew Grace was in Chapter 11 very shortly after they

12 began this process.    And we do not have the permission to pay

13 pre-petition claims.    We're not seeking the permission to pay

14 pre-petition claims.    We don't need to do so in order to

15 challenge the betterment and go through the abatement process.

16 And, Your Honor, in order to compel a debtor to pay a pre-

17 petition claim is extraordinary relief.

18         Yes, we filed a Chapter 11 plan.    Yes, under our

19 Chapter 11 plan we will, in fact, be paying, we hope, if it's

20 confirmed, to pay all of our general unsecured creditors in

21 full.    However, Your Honor, we're not there yet.    And again, we

22 don't have to get there today.    And certainly we're not going

23 to pay this claim in full until it is determined what is, in

24 fact, the appropriate amount of that claim.    That will be

25 determined either in the abatement process or could potentially

1 be determined in the claims objection process here.

2       Your Honor, we did not attach evidence to our
3 response because at this point in time it would be
4 inappropriate for this Court to litigate the issue of what, in
5 fact, is the benefit to the debtor's estate.  All of the
6 information that was submitted to the State Court was done in
7 challenging the by-law, not in an abatement process.  And
8 there, in fact, has to be factual information and factual
9 evidence developed that would then be presented to the Court
10 vis-a-vis the abatement or presented to this Court in the
11 claims objection process.  At this point, Your Honor, all
12 they're seeking to do is issue the bills.  Let them issue the
13 bills.  Let them preserve their rights vis-a-vis whether it's a
14 pre-petition or a post-petition claim.  We do not believe that
15 any determination needs to be made by this Court today that it
16 is either a pre or a post-petition claim.  We believe we have
17 the right to go forward with the abatement.  We will do so.

18       THE COURT:  Well, I think if the Massachusetts state
19 law requires the debtor to pay something for going through an
20 appeal process, I'm not sure how the debtor is going to avoid
21 that payment.  I mean, if -- you know, if it's a pay to play
22 process, that has nothing to do with the ultimate amount of the
23 claim, because you simply have to pay and then there's a credit
24 or an adjustment, I'm really not sure how the debtor is going
25 to avoid that process.  Isn't it sort of in the nature, without

1 being a bond, of a supersedeas bond, essentially?

2          MS. BAER:  Again, Your Honor, it's certainly not my

3 field of expertise, but counsel for Grace who is handling this

4 matter in the State Courts is here, and he informs me that

5 we're aware of the procedures.  We do not have to pay the pre-

6 petition claim.  We can move forward with the abatement, and we

7 intend to do so.

8          THE COURT:  I'm not clear, though, whether this

9 41,000 is part of a pre-petition claim, or whether it's -- I'm

10 not sure what it's based on.  Maybe somebody could tell me what

11 it's based on.

12          MS. BAER:  Your Honor, it's my understanding that it

13 would be Grace's quarterly share of the assessment going

14 forward.

15          THE COURT:  Of the --

16          MS. BAER:  Of the sewer betterment --

17          THE COURT:  -- of the estimated --

18          MS. BAER:  Of the --

19          THE COURT:  Of the estimated amount?

20          MS. BAER:  Of the final assessment.  $41,000 per

21 quarter over 30 years.

22          THE COURT:  Well, how is it credited?  I mean, let's

23 assume, for the moment, that the debtor is successful in

24 challenging the amount of the assessment.  Then obviously the

25 41,000 a quarter is overstated.  How is that taken into

63

1 account?

2       MR. BEAN:  The debtor will be repaid the portion
3 that's overstated with interest at six percent.  So, they're
4 getting interest on the amount that is returned to them under
5 Chapter 80, Section 5 of the Massachusetts General Law.

6       THE COURT:  Well, I'm not sure why that's not a post-
7 petition obligation the debtor would have in any event, to
8 challenge the abatement amount.  Even though it may be based on
9 a pre-petition claim, I don't really know that I have to decide
10 that.  I'm still not sure how you get out of paying that 41,000
11 per quarter which is post-petition.

12       MS. BAER:  Well, again, Your Honor, you actually
13 don't have to decide that either.  But we don't believe we have
14 to pay that in order to go forward with the abatement process.
15 If we do then obviously we will have to take that into
16 consideration and we will have to proceed that way.  But for
17 purposes of what you have to decide, Your Honor, all you
18 actually have to decide is that they can issue their bills.  We
19 will take it back to State Court and deal with it in State
20 Court vis-a-vis the assessment process and the abatement
21 process.

22       THE COURT:  Well, it sounds to me as though that
23 really is all I have to decide, that I can preserve the issue
24 as to whether it's pre or post-petition, because you may get it
25 resolved through the abatement process, and if you do, as I

**J&J COURT TRANSCRIBERS, INC.**


said before, I think it's going to be an irrelevancy. If you don't, then you probably need to file a motion --

MR. BEAN: Just so long as the order provides that to the extent they are required under state law to make this quarterly payment, they are required to do so, and nothing in this Court's order would save them from doing that.

THE COURT: I think all I need to say is that to the extent that the automatic stay governs, it's lifted, so that the town can issue the bills and the debtor can pursue the abatement process. I don't think I need to make any conclusions one way or the other with respect to whether the debtor has to pay. It seems to me if it's something post-petition the debtor probably is going to have to pay with a true up at some point in time if the debtor is successful on the abatement issue. But I don't know that I need to make that finding.

MR. BEAN: Well, my concern, Your Honor, is that the debtor seeks the abatement and then says, I'm not paying the $41,000 a month. There's a six-month window on that. I don't want to -- we're all going to be back here on the payment of that $41,000 a month if that's necessary --

THE COURT: Well, you may, or else the debtor will lose. If it's a condition of paying the debtor doesn't pay, then I guess the debtor will lose. So, that is a risk, I guess, the debtor and the other creditors are going to have to

J&J COURT TRANSCRIBERS, INC.

1 take.  I am not interfering with the state law, neither am I
2 finding that the state law says that the debtor has to pay --

3        MR. BEAN:  Understood.

4        THE COURT:  -- at this point.

5        MR. BEAN:  All I'm looking for is that to the extent
6 state law does require the payment --

7        THE COURT:  I'm not saying anything about state law.
8 I'm deciding bankruptcy law, which is that to the extent that
9 the automatic stay applies, it's lifted.

10       MS. BAER:  Thank you, Your Honor.  I think --

11       THE COURT:  I'll take an order.

12       MS. BAER:  -- that's all you're being asked for, and
13 we will submit an order along those lines.

14       THE COURT:  Well, I think that's all I can decide --

15       MS. BAER:  Right.

16       THE COURT:  -- on the record today, so I will take an
17 order to that effect.

18       MS. BAER:  Thank you, Your Honor.

19       THE COURT:  Thank you.

20       MR. BEAN:  Your Honor, I don't mean to belabor the
21 issue, but I'm still not clear on what the next step is, if
22 state law does require the payment to be made to participate in
23 the abatement process and the debtor refuses to pay.

24       THE COURT:  I guess you take that issue into State
25 Court, because to the extent that the debtor wants to pursue

1  the abatement issue I'm granting the State Court jurisdictions
2  to determine that by determining that the automatic stay either
3  doesn't apply or is lifted, whichever is applicable.

4         MR. BEAN:  Okay.  So, nothing in the Code that
5  prevents payment of pre-petition claims without Court approval
6  would prevent the debtor from paying --

7         THE COURT:  Oh, absolutely it will.  If this is a
8  pre-petition claim, the debtor cannot make that payment without
9  approval of this Court.  I tried to get that approval for you
10 so that it can be -- especially if the debtor's plan says that
11 it's going to be paid 100 percent to unsecured creditors anyway
12 subject to a true up at the end.  I'm not really sure how the
13 estate is prejudiced, but I can't, I think, force the debtor to
14 do that absent a plan.

15        MR. BEAN:  Well, I guess I'm not clear on -- I guess
16 I'm not clear -- I guess if the debtor files an abatement
17 application and doesn't pay, then I guess the debtor is left
18 with defaulting on that abatement application.  But I expect
19 the debtor would come back and say, well, Your Honor, we can't
20 pay without Court approval, and we haven't got your approval.
21 And I'm trying -- you know, we're trying to advance the ball
22 here, and I'm just not clear that if the Court doesn't
23 determine that to the extent state law requires it, bankruptcy
24 law doesn't prohibit them from paying the 41,000 a month.

25        THE COURT:  I don't know if it does or not.  If it's

1 a pre-petition claim, I think the bankruptcy law does prohibit

2 the debtor from paying it.  If it's a post-petition claim,

3 clearly it doesn't prohibit the debtor from paying it.

4     MR. BEAN:  I think we're all in agreement on those

5 principles.  The question -- the Court hasn't determined

6 whether it's pre or post, and that's fine.  I'm just afraid

7 we're going to be back here very quickly with a question of

8 whether or not it's pre or post so that the debtor can make

9 this payment --

10     THE COURT:  Well --

11     MR. BEAN:  -- to participate.

12     THE COURT:  I'm not -- I am really not clear why the

13 debtor doesn't want to just make the payment subject to a true

14 up.  What's the issue?

15     MS. BAER:  Because, Your Honor, we don't think we

16 have to.  The debtor believes it can proceed under state law in

17 the abatement process without paying a pre-petition claim.

18     THE COURT:  But you've just agreed that what this is

19 is a percentage of the final assessment issued against the

20 debtor as the owner of the property, that would be the debtor's

21 share for however the next 30 years until the amount is paid.

22 Now, the challenge to the amount may mean that this $41,000 a

23 month payment changes.  It could go down.  It could go up.  It

24 may go away all together.  I don't know what will happen to it.

25 But to the extent that it is lower, ultimately, than the

1 $41,000 per month, if I understood counsel, the town would
2 issue a refund back to the debtor with six percent interest.
3 So, what has the debtor lost by making the payment?

4      MS. BAER:  Your Honor, we don't believe we need to.
5 Obviously, if we had to, we would --

6      THE COURT:  But you need to at some point in time.
7 If it's a pre-petition claim then I guess what you're doing is
8 essentially paying a pre-petition claim in advance.  That will
9 simply mean that since the debtor is telling me it's going to
10 be 100 percent plan it's an irrelevancy whether the debtor pays
11 it now or later.  To the extent that it's a post-petition claim
12 that the debtor owes, you have to make the payment anyway,
13 unless and until the amounts change.  So, I'm at a loss as to
14 how the debtor is prejudiced.

15      MS. BAER:  Your Honor, once again, it's not in the
16 debtor's best interest to pay any pre-petition claim now that
17 it doesn't have to pay now.  And it's the debtor's
18 understanding, under the law, that we do not have to do that.

19      THE COURT:  Well, okay.  The problem is that if the
20 debtor's business judgment is wrong and a Court determines that
21 without paying you lose any possibility of pursuing the
22 abatement, you may have caused considerable jeopardy to this
23 estate as a result of that.  Don't ask for a release in the
24 plan.

25      MS. BAER:  Your Honor, I think you've made it very

1  clear that if it turns out that we have to pay these even
2  though it is a pre-petition claim Your Honor would certainly
3  give us the permission to do so.

4          THE COURT:  Well, I'm assuming that no one is going
5  to object.  I would want to know that.  I mean, right now,
6  today, I didn't hear any objections.  Does anybody have an
7  objection, if this is -- turns out to be a pre-petition claim?
8  All right.  No one has any today.  Whether -- whether there
9  will be some objection on notice if I have to determine whether
10 this is an administrative liability or not, I don't know.  But
11 for today, yes, I give you permission to do it.

12         MS. BAER:  Your Honor, might I suggest I will talk
13 this over with my client.  We can talk it over with the State
14 -- or with the town and see whether or not it makes some sense
15 to provide something in the order so that we don't have to come
16 back here in the event we do, in fact, need to do that?

17         THE COURT:  I think it would make some sense.  But,
18 okay.  That's fine.  The order that I will enter is an order
19 that determines the automatic stay either inapplicable or
20 lifted to the extent it's applicable so that the town can issue
21 the bills and the debtor can pursue the abatement.  That order
22 I will enter when I get it.  If you can resolve the rest of
23 this by payment of some amount, maybe not necessarily 41,000,
24 if that's an issue, then fine.  And I think it can be subject
25 to a true up at the end of the abatement process.

1          MS. BAER:  Thank you, Your Honor.

2          MR. BEAN:  Thank you, Your Honor.

3          THE COURT:  Okay.  Thank you.

4          MS. BAER:  Your Honor, moving on to agenda item

5  number five, this is the debtor's third omnibus objections to

6  claims.  Your Honor, there is one claim remaining under this

7  order.  We have now resolved that claim, I think is what my

8  notes say, and we have an order to submit to Your Honor.

9          THE COURT: All right.  Thank you.  All right.  That

10  order is entered.

11          MS. BAER:  Your Honor, with respect to agenda item

12  number six, the debtor's fourth omnibus objections to claims,

13  we have a stipulation to submit to Your Honor with respect to

14  the Exxon Mobil claim, and then we have two other claims

15  remaining that we're continuing to the December 20th hearing.

16          THE COURT:  All right.

17                    (Pause)

18          THE COURT:  Okay.  I've approved the stipulation with

19  respect to the Exxon unsecured claim.  And the other two

20  matters are continued.

21          MS. BAER:  Your Honor, agenda item number seven, the

22  fifth omnibus objections to claims, one claim is being

23  withdrawn, and all of the rest of the remaining claims under

24  this omnibus objection are being continued to the December 20th

25  hearing.

1          THE COURT:  All right.  That order is entered.

2          MS. BAER:  Thank you, Your Honor.  With respect to

3    agenda item number eight, the debtor's sixth omnibus objections

4    to claims, there is one claim left.  We are in the process of

5    settling it.  We're asking to continue it to the next hearing

6    in hopes that it will be resolved by then.

7          THE COURT:  Okay.  Thank you.  That order is entered.

8          MS. BAER:  Thank you, Your Honor.  That takes us to

9    agenda item number nine, which is the debtor's objection to

10   certain claims filed by the Massachusetts Department of

11   Environmental Protection.  Your Honor, the Massachusetts

12   Department of Environmental Protection filed some very

13   significant claims here to which the debtors objected.  This

14   became an issue because we had had a setoff matter raised a few

15   months ago vis-a-vis a settlement of some tax claims.  Your

16   Honor, the claims were both claims for general unsecured pre-

17   petition claims and also addressed what appeared to be some

18   potential administrative claims or potential on-going claims

19   for environmental clean-up, environmental remediation, or

20   environmental oversee.  What has been clarified by

21   Massachusetts in their response to our objection is that all

22   they are seeking at this point in time is for allowance of

23   their pre-petition general unsecured claim for pre-petition

24   clean-up costs and remediation and oversight costs, which is in

25   the amount of about $799,000, that they're not seeking the

1  allowance and payment of any administrative claims, that
2  they're not seeking the allowance of any claims for on-going
3  future environmental-related liability.

4          Under those circumstances, Your Honor, we actually
5  have spent a great deal of time with Massachusetts talking
6  about what we need in order to verify and come to an
7  understanding as to the allowed amount of their general
8  unsecured claim.  We spoke this morning again and have agreed
9  with Massachusetts that certain contractor invoices and time
10 sheets for DEP personnel that are being billed to the debtors
11 will be provided to the debtors to review and copy, if
12 necessary.  In addition, a summary report with respect to some
13 Superfund block grant expenses will be provided to the debtor.

14          The debtor is going to be going to the Massachusetts
15 Department of Environmental Protection's offices on Thursday to
16 begin the review process.   It is our hopes that we will review
17 the documents and then have a dialogue with them over the
18 allowed amount of their claim.  What we would ask is that this
19 matter be continued for status to the December 20th hearing,
20 and at that time we would hope we will either have resolved or
21 be very close to resolving the allowed amount of their claim,
22 or identify whether we would need an evidentiary hearing with
23 respect to certain aspects of it.

24          THE COURT:  All right.  That's fine.

25          MS. BAER:  Your Honor, that actually takes us to

J&J COURT TRANSCRIBERS, INC.

1  agenda item number 11.  Agenda item number 11 is the debtor's
2  motion for Court approval to advance the payment for legal fees
3  and expenses for seven of the debtor's former and current
4  officers, directors, and employees, who, along with the debtor,
5  Your Honor, have received letters from the United States
6  Department of Justice in Montana advising them that they are
7  targets of a pending grand jury investigation.  Your Honor,
8  pursuant to the debtor's certificate of incorporation and by-
9  laws for both the parent, W.R. Grace and Co., as well as W.R.
10  Grace and Conn., the debtors have either an obligation or are
11  permitted to indemnify their directors, their officers, and
12  their employees with respect to this type of investigation and
13  potential litigation.  And they're permitted, by both Delaware
14  law and Connecticut law, as applicable, to not only indemnify
15  the directors, officers, and employees, but they're also
16  permitted to advance costs for the directors, officers, and
17  employees so long as an undertaking is provided.  Your Honor,
18  there may be a little dispute as to what exactly the motion
19  intended versus what is said in the response, but it is the
20  debtor's intention, if this Court gives it permission to
21  indemnify in advance these payments, to receive from each and
22  every individual, an undertaking which promises that to the
23  extent that after completion of the investigation, grand jury
24  investigation or the like, it is determined that any of these
25  directors, officers, and employees may have committed behavior

1 which is not indemnifiable, and not -- the debtor has not been
2 permitted to advance costs because of their certain behavior
3 that may have taken place that then they would be obligated to
4 return those advances to the debtor.

5          Your Honor, in the objections that have been filed,
6 actually there was one by the personal property damage
7 committee which was joined by the personal injury committee,
8 they had a couple of issues.  Number one, the issue of the
9 undertaking.  And I believe I've clarified, Your Honor, that it
10 is the debtor's intention that it will receive this undertaking
11 from each and every individual for the advancement of these
12 costs.

13          Number two, Your Honor, we can't do better vis-a-vis
14 what this investigation is about, what costs might ultimately
15 be incurred, what we anticipate will be the kind of
16 participation that counsel for the defendants will have to take
17 on.  We simply don't know.  That's one of the reasons that the
18 state statutes provide for the undertaking, is in criminal
19 investigations it's highly confidential.  We are told very
20 little.  The grand jury proceedings are completely confidential
21 and we don't necessarily know what's going on.  We're doing the
22 best we can.  All they've told us at this point in time is what
23 is in the target letters.  Under those circumstances, Your
24 Honor, we really cannot ask counsel for a budget.  We don't
25 know what counsel is going to be asked to do, and whether it's

1 extensive or it's not extensive.  But what we have suggested,
2 Your Honor, is that counsel who are going to be employed for
3 these individuals be subject to this Court's orders with
4 respect to fee applications so that everybody can keep a tab on
5 what fees and expenses are being incurred and have the
6 opportunity, if they believe that there is an issue here, to
7 object to those fees and expenses and review those and come
8 back to this Court if they think that there is an issue in that
9 regard.

10        Under the circumstances, Your Honor, with a criminal
11 investigation, we don't believe we can do any better than that
12 at this point in time because frankly we don't know anything
13 more at this point in time.

14        THE COURT:  What's the nature of this investigation?
15 What has the debtor been told with respect to what the
16 investigation is about?

17        MS. BAER:  Your Honor, all we know is that the
18 investigation relates to, we believe, the Libby Montana
19 operations.

20        THE COURT:  And when did the debtor stop that
21 operation?

22        MS. BAER:  Your Honor, the debtors shut down the mine
23 in, I believe it's 1970, and shut down certain operations
24 related thereto after that time.  But, Your Honor, the United
25 States Attorney has not been able to even tell us whether it

**J&J COURT TRANSCRIBERS, INC.**

1  believes this conduct is pre-petition or post-petition.  They
2  have suggested to us that it may be both, therefore the
3  indemnities we're seeking to provide here, and the costs we're
4  seeking to advance may, in fact, not only be for pre-petition
5  behavior, but actually post-petition behavior.

6           THE COURT:  All right.  The only issue that's before
7  me today is with respect to advancing the costs in the defense.

8           MS. BAER:  Your Honor, I'm sorry.  My client
9  corrected me.  I should have known this.  We shut down the mine
10 in 1990, not 1970.

11          THE COURT:  Well, my curiosity is peaked as to
12 whether this is an end run around the automatic stay, and some
13 restitutionary theory of recovery in terms of looking at fines
14 and costs as opposed to a criminal investigation, based on the
15 fact that this is 2004, nearly 2005.  And unless there is some
16 allegation under a racketeering statute or other conspiracy
17 statute that would bring this up to post-petition conduct this
18 is a very long time past whenever the criminal statutes, for
19 the most part in the Federal system expire.  That's why I'm
20 curious as to what's going on and whether or not this is, in
21 fact, an investigation that is or is not subject to the
22 automatic stay.  Yes?  Good afternoon.

23          MR. SAKALO:  Good afternoon, Your Honor.  Jay Sakalo
24 on behalf of the asbestos property damage committee.  Just
25 going to your last question, the target letter from the

1 Department of Justice indicates that it does -- that there are

2 conspiracy causes of action, potentially.  So, as to whether or

3 not --

4        THE COURT:  For what?

5        MR. SAKALO:  It does not say.  It's a one-paragraph

6 letter.  I'm gratified to hear that -- today that the debtors

7 have said they will have an undertaking prior to advancing the

8 costs if indeed the Court does allow them.  It was curious that

9 their papers didn't require that ahead of time.  We would

10 request, though, that the undertaking be in conformity, and be

11 required to be in conformity with both Delaware and Connecticut

12 law.  Under Connecticut law, according to the debtor's own

13 papers, that undertaking must be in writing and must include an

14 affirmation by the potential indemnitee that they are

15 authorized to receive the advancement of those costs under

16 Connecticut law.  And in so affirming, they are affirming that

17 they don't -- that they are not opted out because of criminal

18 activity that they didn't have reason to believe was unlawful

19 at the time they committed, or did not commit that.

20        THE COURT:  I don't have any problem requiring that

21 it has to be in conformity with Delaware and Connecticut law,

22 you know, but I think the problem is at the moment, since there

23 is absolutely, apparently, no indication as to what the grand

24 jury might be looking at, it's a little difficult to say, you

25 know, I did or didn't take any specific conduct when you don't

 1 know what the conduct is in question.

 2        MR. SAKALO:  Understood.  And I think, in fact,
 3 that's why the debtor should be forced, after the investigation
 4 period, they have defined it, the grand jury investigation, to
 5 come back either to the committees or to this Court for
 6 additional relief to pay further expenses, because at that
 7 point we'll have a better understanding as to what the
 8 parameters of this investigation are about.  The debtors are
 9 asking for relief to pay not only costs for the investigation
10 but any actions that are filed as a result of the
11 investigation.

12        THE COURT:  Well, I mean, if the debtor is, in fact,
13 charged, ultimately, in some criminal conspiracy count with its
14 officers and directors, okay, it would seem to me that in all
15 probability some joint defense is likely, and it would seem
16 that all parties would want the debtor to be advancing those
17 costs and fees.  Conversely, if some individuals are charged
18 and the debtor isn't charged, then it may not be appropriate,
19 that that's what I think Ms. Baer said would require, at that
20 point in time, the individuals to rebate back to the debtor
21 whatever advances have been made.  But I think your request
22 that it conform -- that the undertaking conform to state law is
23 appropriate, and I think before the debtor advances any costs
24 the debtor should have that undertaking in hand from each of
25 the officers and directors who are subject to the grand jury

1    investigation.  More than that at this point I --

2          MR. SAKALO:  But the order that they're asking you to
3    sign, Your Honor, includes an unlimited amount of time that
4    they can indemnify the officers and directors.

5          THE COURT:  Well, do you know how long the grand jury
6    investigation is going to take place?  You know --

7          MR. SAKALO:  We don't.  But if the investigation is
8    concluded and during -- as a result of that investigation we
9    know that the debtors are no longer part of that investigation
10   but just the officers or directors are, I think that we should
11   bifurcate the indemnity.  If the Court is going to allow it,
12   allow it through the term of the investigation, and at that
13   point we an revisit the issue of whether or not these officers
14   and directors are still entitled to further indemnity.

15         THE COURT:  More likely than not I think that the
16   grand jury investigation will still be here when this case is
17   finally closed.  So, returning to this Court for that purpose
18   probably isn't going to be meaningful.  I don't have an
19   opposition, if the debtor wants to say as long as the
20   bankruptcy case is pending if the grand jury investigation
21   concludes before the bankruptcy case does, that further
22   advances after the end of that grand jury investigation should
23   be subject to further Court order.  That's okay.  But, you
24   know, it could be another five years with the investigation
25   going.  Hopefully this case will not still be here five years

1  from now.

2          MR. SAKALO:  A couple other points, Your Honor.  We
3  believe that the undertaking, those officers and directors
4  should submit to the jurisdiction of this Court the repayment
5  of that undertaking.

6          THE COURT:  Well, again, you know, that's --

7          MR. SAKALO:  This --

8          THE COURT:  What you're asking for is something
9  that's so far in the future that requiring those individuals to
10 submit to this Court's jurisdiction for that purpose that this
11 Court may not have jurisdiction over anything else.  Why would
12 they want to come to this Court for that purpose?

13         MR. SAKALO:  If it's limited to the extent that the
14 case is still pending I think that that would be fair.

15         THE COURT:  All right.  I don't have a problem with
16 that.  If the officers and individuals want the advances, it
17 seems to me that they're accountable to the extent that it
18 turns out at some point down the road that, in fact, they
19 weren't entitled to the advances.  But you know, they may be
20 entitled to the advances.

21         MR. SAKALO:  They may be.  Thank you, Your Honor.

22         THE COURT:  Ms. Baer, any problems with those?

23         MR. SAKALO:  Your -- go ahead.

24         MS. ESKIN:  Marla Eskin for the asbestos claimants'
25 committee.  I would ask that we be able to submit a revised

1 order that makes it clear that the undertaking must be complete

2 before advances -- before there's advances.

3           THE COURT:  It has to be signed.  Yes.

4           MS. ESKIN:  Okay.  I don't think the order reads that

5 way at present, so if we can work on that?

6           THE COURT:  All right.

7           MS. BAER:  That was my intention, Your Honor, is to

8 suggest we do need to slightly modify the order to make it very

9 clear that we will receive the undertakings prior to --

10          THE COURT:  Advances.  Yes.

11          MS. BAER:  -- advances occurring.  With respect to

12 this Court's jurisdiction, actually I think the draft order did

13 suggest that this Court would have the jurisdiction to

14 determine whether or not there need to be repayments vis-a-vis

15 the undertaking.  We'll modify it to say to the extent the case

16 is still pending.

17          THE COURT:  All right.  Now, the issue with respect

18 to the attorneys coming before the Court with fee applications,

19 in concept that's probably a good idea because at least it lets

20 everyone know what the advances are.  But the problem I have is

21 much of this will probably be confidential and have to be filed

22 under seal.  So, what is it that's going to be disclosed that

23 makes it worthwhile putting it before this Court's process?

24          MS. BAER:  The numbers.  You know, I -- what they're

25 doing clearly would be an issue, but how much is being spent

1  would be the only thing that would really, I think, be of any
2  usefulness.

3           THE COURT:  All right.  So, perhaps you need some, I
4  don't know, modified category system that will relate only to
5  this issue so that, for example -- I don't know how many
6  categories you have now, let's say 15.  So, it would make this
7  16 grand jury investigations.  And what I would get is who did
8  the work, the number of hours, the time charged, and the
9  amounts.  But the specifics would be then filed under seal and
10  subject -- well, I guess it would have to be filed under seal.
11  I don't know that -- there may be attorney-client issues that
12  the attorney is not going to be willing to reveal even to, for
13  example, the creditors' committee, and certainly not to the
14  U.S. Trustee.

15          MS. BAER:  Well, Your Honor, the other thing is, you
16  know, we have not only the regular fee application procedure,
17  but we also have an ordinary course professionals procedure.
18  If somebody is incurring no more than $50,000 a month, I
19  believe, up to a certain cap, they don't have to file that.
20  All we have to file is an affidavit indicating who they are.
21  So, if, in fact, that's all that's being incurred, it would
22  come under this Court's ordinary course professionals order, in
23  which case we would not have the problem vis-a-vis that's being
24  filed, because that detail wouldn't be filed.  But the real
25  question is, then, do we want this to be under the ordinary

1  course professionals?  Or are we asking for yet really a new

2  procedure?

3          THE COURT:  Well, I don't think it's an ordinary

4  course, because these are not attorneys for the debtor.

5  Correct?  I mean, the debtor is advancing costs, but these are

6  not professionals that the estate is retaining for the estate.

7  You're simply advancing costs for individual counsel for the

8  officers and directors, correct?

9          MS. BAER:  That's correct.

10         THE COURT:  So, I don't think it would fit within the

11 ordinary course process.  And I am very hesitant to have

12 something spread on the record that could cause some jeopardy

13 to the individuals who are targets of a grand jury

14 investigation, certainly not something that should go to the

15 U.S. Trustee, as an arm of the Department of Justice, which is

16 conducting that investigation.  That would be highly improper.

17         MS. BAER:  Right.

18         THE COURT:  So, I'm simply not sure how something

19 other than just a statement that says that this month the

20 debtor reimbursed, you know, $4,000 to "X" law firm

21 representing so-and-so, I don't know what more than that can be

22 put on the record.

23         MS. BAER:  Your Honor, it seems to me that that's

24 about all that can be put on record.  Might I suggest that we

25 talk with counsel for the committees and try to work out an

1  agreeable procedure where they will get the information that we
2  can give them yet it will not, you know, cause all of these
3  various risks.

4         THE COURT:  Okay.  You can certainly talk.  I think
5  it's a good idea to at least have a summary of what the debtor
6  has paid pursuant to this order included somewhere.  Maybe it
7  would be -- maybe what should happen is that the debtor, in the
8  debtor's counsel's -- no, I guess it should be in the monthly
9  operating reports.  That's really where it belongs, because
10 it's not coming through counsel for the estate.  It's coming
11 from the estate, correct?

12        MS. BAER:  Yes.

13        THE COURT:  How about in the monthly operating
14 reports?  The debtor simply adds information that indicates how
15 much has been paid the preceding month to any professional that
16 is being compensated pursuant to the order that you're going to
17 give me, and then if somebody wants additional information I
18 think they can seek it.  I am very concerned about the
19 privilege issues here.

20        MS. BAER:  Yes, Your Honor.  I think that makes
21 perfect sense.  We'll draft the order that way.

22        THE COURT:  All right.  Anyone else want to be heard?
23 Does that, Mr. Sakalo, take care of your concerns?

24        MR. SAKALO:  Yes, Your Honor.  The -- just one other
25 point that may advance the problem of having to look at how

1  much is being paid.  If and to the extent the debtor has

2  received budgets from attorneys representing those individuals,

3  I think they should be shared with the committees.

4        THE COURT:  Oh, that's no problem.  I don't have any

5  problem -- in fact, they can be shared with the U.S. Trustee's

6  Office, as far as that goes, because they won't contain that

7  type of detail.  I'm concerned about the attorney-client

8  privilege more than anything at the moment.  Mr. Perch?

9        MR. PERCH:  Good afternoon, Your Honor.  Frank Perch

10 for the United States Trustee.  First of all I just want to

11 reassure the Court that I have no intention of taking any of

12 the disclosures here and sending it over to the U.S. Attorney

13 for the District of Montana.  And I -- although I am another

14 component of the Department of Justice, I have no more

15 information than anybody else in the courtroom does about this

16 investigation.  I learned about it the same way that everybody

17 else did, which was to read it in the motion.

18       I rise, only, Your Honor, to note that I'm wondering

19 if it's contemplated that the same attorneys would be

20 representing both the debtor and the non-debtor, the individual

21 parties to this investigation, and that while I understand Your

22 Honor's concerns and some of the things that have been

23 discussed about how to deal with the attorneys' fees, that if

24 the firm is representing the debtor the firm has some

25 requirements to either be retained as special counsel for the

86

1  debtor, possibly be an O.C.P., although I'm not sure this

2  really falls into the category of an O.C.P., and to make

3  certain disinterestedness disclosures.

4          THE COURT:  I don't think, in a criminal

5  investigation, the case law that I have seen, which is very

6  limited, and primarily has dealt with Chapter 13's, Mr. Perch,

7  but I think the same principles apply, has all indicated that

8  in fact payments for counsel representing a debtor in a

9  criminal investigation are not payments that come before the

10 Court under Sections 327 through 330.  But, in the Chapter 13

11 context, I think the rationale really was looking at whether or

12 not the payments were being made from property of the estate.

13         MR. PERCH:  Um-hmm.

14         THE COURT:  And, of course, in Chapter 11 you've got

15 essentially the same issue, whether or not it's -- the payments

16 are being made from property of the estate.  The problem here

17 is that we've got the possibility of a 524(g) injunction which

18 pretty much subsumes everything, both pre and post-

19 confirmation.  Or --

20         MR. PERCH:  Exactly, Your Honor.

21         THE COURT:  -- pre and post-petition.  Pardon me.

22 But I am not inclined to think that it would be proper to put

23 on the public record information concerning the substance of a

24 defense of the debtor or of the officers and directors in a

25 criminal investigation.  Now, if they need to be appointed as

1  special counsel because they don't fit within the ordinary

2  course, then I guess we have to go through that route.

3           MR. PERCH:  And I have no interest in putting

4  something on the public record, Your Honor, that should not be

5  on the public record.  I rise only to note that I think that

6  regardless of the subject matter of the representation, that if

7  you have an attorney representing both debtor and non-debtor

8  parties there's some disclosure of that representation that

9  needs to be made.

10          THE COURT:  Oh, I think that's true, too, so I guess

11  I should inquire.  I had assumed from this motion that they

12  were not the same counsel.  But maybe I -- maybe that was an

13  invalid assumption.  So, let me ask.  Ms. Baer?

14          MS. BAER:  Your Honor, Kirkland and Ellis represents

15  the debtors in these criminal proceedings, and the individuals

16  are going to be represented by separate independent counsel.

17          THE COURT:  All right.  Then I think for Kirkland and

18  Ellis's purposes you simply add a new category that says how

19  much time, and who has spent it, and what the charges are for

20  representing the debtor in the grand jury without getting into

21  any further detail.  And if more detail is required, then

22  somebody can ask for it by motion and I'll deal with the

23  privilege issues as they arise.

24          MR. PERCH:  Thank you, Your Honor.

25          THE COURT:  Okay.  Thank you.

J&J COURT TRANSCRIBERS, INC.

88

1      MS. ESKIN:  Your Honor, for -- Marla Eskin.  For all
2  the counsel other than the debtor's counsel, we're going to see
3  the totals in the monthly operating report, and there is no
4  procedure for how to -- in case we have an objection, or
5  inquiries.  If we could -- I think we can probably talk among
6  each other and work that out and put something in the order as
7  to that process.

8      THE COURT:  That's fine.  I think that's something
9  that you should work out.  But I don't want anything more
10 initially filed on the public record.

11     MS. ESKIN:  Thank you.

12     THE COURT:  All right.  So, I'll get an order from
13 you folks on a certification of counsel when you've worked out
14 these details, correct?  And with respect to making sure that
15 the undertakings comply with the state law, Ms. Baer, the
16 debtor is prepared to do that?

17     MS. BAER:  We are, Your Honor, with the provision
18 that you had indicated earlier, which is with respect to
19 Connecticut law.  We cannot have the affirmation, if you will,
20 because we don't know what -- what, in fact, they're being
21 charged with.  So, we can't go that separate step that
22 Connecticut law might otherwise require.

23     MR. SAKALO:  Your Honor, I just -- I'm not a
24 Connecticut lawyer, and I'm not sure how this normally would be
25 -- done in Connecticut.  But it's two requirements.  It

J&J COURT TRANSCRIBERS, INC.

1  requires a written affirmation.  So, I don't know how, under

2  Connecticut law --

3          THE COURT:  What does the affirmation say?

4          MR. SAKALO:  "A written affirmation of the

5  individual's good faith belief that the individual has met the

6  relevant standard of conduct, or that the proceeding involves

7  conduct for which liability has been eliminated under provision

8  of the corporation's certificate of incorporation and the

9  individual's written undertaking to repay any funds advanced.

10 The individual is not entitled to mandatory indemnification

11 under the Connecticut Business Corporation Act, and it is

12 ultimately determined that the individual has not met the

13 relevant standard of conduct required by the corporation's

14 certificate of incorporation or by -- of the Connecticut

15 Business Corporation Act."

16          THE COURT:  See, that almost makes it sound as though

17 it's some civil law proceeding.  I realize it may apply to a

18 criminal proceeding, too, but -- I mean, I guess we could

19 require an affirmation that the officers and directors acted in

20 the good faith belief that they didn't engage in any criminal

21 conduct.  But that's a pretty broad-based assertion.  Ms. Baer?

22          MS. BAER:  Your Honor, I'm sure we can get that.

23 That's as far as we could possibly go at this point.

24          THE COURT:  Yes.  Without knowing what the substance

25 of the investigation is at this point, I don't know how they

1 can meet specific facts.  They don't know what the facts are.

2       MR. SAKALO:  I agree with that, but I think by making

3 that affirmation if they learn of facts during the course of

4 the investigation that might change the calculus of whether or

5 not those costs can be indemnified going forward.

6       THE COURT:  If they come to a good faith belief that

7 in fact they should legitimately be targets of a criminal

8 investigation because in fact they engaged in criminal conduct,

9 yes, I think at that point they probably should come to the

10 debtor and say please don't indemnify me or advance any more

11 costs.  So, all right.  If all you're looking for is an

12 affirmation that it was, you know, good faith, then yes, I

13 think that can be done.  All right.  Ms. Baer?

14       MS. BAER:  Thank you, Your Honor.  We will revise the

15 order and circulate it, and then submit it to Your Honor for

16 signature on a certificate.  Your Honor, one clean up matter.

17 I have the interim order vis-a-vis the tax matter.

18       THE COURT:  All right.  I'll take it.

19       MS. BAER:  We have changed the dates.

20       THE COURT:  Thank you.  All right.  That's entered.

21       MS. BAER:  Thank you, Your Honor.  Your Honor, that

22 concludes the agenda.  I did want to go back to something that

23 occurred at the beginning of the hearing, when we were having

24 the trouble with the telephonic participation.  You had

25 indicated you did not want anymore telephonic participation and

1  I might suggest that perhaps the exception may be the sort of

2  regular participants that are very accustomed to your

3  procedures like sometimes the creditors' committee does

4  participate by telephone.  The asbestos future representative

5  --

6          THE COURT:  Ms. Baer, you should wait until I do a

7  written order before you ask me to reconsider it.  All right.

8  I'll permit the telephonics, but this is the caveat.  I want

9  the debtor in the notice to tell people that the first time I

10 hear music, the first time I cannot get the attention of a

11 party, I am going to disconnect the call, so they're at the

12 mercy of the other participants by phone, essentially, to make

13 sure that they're acting in a collegial fashion, because it's

14 really very disrespectful to everybody who is participating in

15 a Court proceeding to do that, and I have -- I really cannot

16 understand why you connect to a call and then put somebody on

17 hold so they listen to music.

18         MS. BAER:  Your Honor, and what I suggest next time

19 we send out a call-in number we'll make it very, very clear

20 when we send it out the rules of the game.

21         THE COURT:  All right.

22         MR. ESSERMAN:  Your Honor, this is Sandy Esserman,

23 very briefly.  I think most of the people and the attorneys

24 that are on the call understand the rules and the way they are

25 played, and without pointing fingers at anybody, my guess is it

1  is attorneys that are not normally on this call, or more --
2  which is more likely, people like securities analysts, and --
3  and new media people that are not used to being on a Court call
4  that are probably the offenders.

5      THE COURT:  Well, I don't know, Mr. Esserman.  But I
6  -- I still can't emphasize enough that it's difficult when you
7  go through omnibus hearings all day long to pay attention as it
8  is all day.  And as much as I like music I don't want in --
9  during the course of a Court proceeding.

10     MR. ESSERMAN:  No.  I understand that, Your Honor.
11 We just appreciate the ability to appear telephonically.  It's
12 important to us, and it saves our clients a lot of money.

13     THE COURT:  All right.  Well, Ms. Baer will take a
14 stab at seeing whether or not we can enforce collegiality since
15 we can't get it voluntarily in some of these cases.  Okay.
16 Anything else?

17     MR. ESSERMAN:  Thank you, Your Honor.
18     MS. BAER:  No, Your Honor.  Nothing on our agenda.
19     THE COURT:  All right.  We're adjourned.  Thank you.
20     MS. BAER:  Thank you.

21                     *  *  *  *  *

22

23

24

25

93

1

# C E R T I F I C A T I O N

I, TAMMY DeRISI, court approved transcriber, certify
that the foregoing is a correct transcript from the official
electronic sound recording of the proceedings in the above-
entitled matter.

_____    Date:  November 24, 2004

TAMMY DeRISI

J&J COURT TRANSCRIBERS, INC.