IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | Case No. 01-1139 (JKF) |
| W.R. GRACE & CO., *et al.*, ) | Jointly Administered |
| ) | |
| Debtors. ) | **Objection Deadline: December 3, 2004** |
| ) | **Hearing Date: December 20, 2004 @ 12:00 p.m.** |
| ) | **Related Docket No. 6846** |
| ) | |

**OBJECTION OF THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS TO THE APPLICATION OF THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS FOR AN ORDER, *NUNC PRO TUNC* TO OCTOBER 29, 2004, APPROVING AND AUTHORIZING THE RETENTION AND EMPLOYMENT OF LEXECON LLC AS ASBESTOS CLAIMS CONSULTANT TO THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS [D.I. 6846]**

The Official Committee of Asbestos Personal Injury Claimants (the "PI Committee"), by and through its undersigned counsel, respectfully submits this objection ("Objection") to the Application of the Official Committee of Equity Security Holders for an Order, *Nunc Pro Tunc* to October 29, 2004, Approving and Authorizing the Retention and Employment of Lexecon LLC as Asbestos Claims Consultant to the Official Committee of Equity Security Holders (the "Application"). In support of the Objection, the PI Committee states as follows:

**BACKGROUND**

1.  On April 2, 2001 (the "Petition Date"), W.R. Grace & Co. and its affiliated debtors and debtors in possession (collectively, the "Debtors") commenced the instant proceedings by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the Clerk of this Court. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. On the Petition Date, the Court entered an order

{D0031811:1 }

authorizing the joint administration of these cases for procedural purposes. No trustee or examiner has been appointed in these cases.

2. On April 12, 2001, the United States Trustee for the District of Delaware (the "UST") appointed the PI Committee, the Official Committee of Asbestos Property Damage Claimants (the "PD Committee") and the Official Committee of Unsecured Creditors. On June 18, 2001, the UST appointed the Official Committee of Equity Security Holders (the "Equity Committee").

3. On November 13, 2004, the Debtors filed their Plan of Reorganization and several documents relating thereto. These include:

- The Debtors' Plan of Reorganization [D.I. 6895] (the "Plan");

- The Disclosure Statement for Debtors' Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code [D.I. 6896];

- The "Exhibit Book" [D.I. 6897], which contains numerous documents related to the Debtors' Plan of Reorganization and related Disclosure Statement, including an Asbestos Trust Agreement (Exhibit 5), the PI-SE Trust Distribution Procedures (Exhibit 6), the PI-AO Trust Distribution Procedures (Exhibit 7), and the PD Trust Distribution Procedures (Exhibit 8);

- The Debtors' Motion for Entry of a Case Management Order Establishing Protocols for Litigating Asbestos-Related Claims Following Plan Confirmation [D.I. 6898] (the "CMO Motion");

- The Debtors' Motion for Entry of an Order Seeking the Estimation of Asbestos Claims and Certain Related Relief [D.I. 6899] (the "Estimation Motion").

4.      Through the Plan, the Estimation Motion and the CMO Motion, the Debtors seek to establish procedures for the resolution of all asbestos present claims and future demands against the Debtors.  In particular, the Plan divides Asbestos Claims into two categories: (1) Asbestos PI Claims and (2) Asbestos PD Claims.  Asbestos PI Claims are further divided by the Plan into two Classes: (1) Asbestos PI-SE Claims (a/k/a Asbestos Personal Injury Symptomatic/Eligible Claims), and (2) Asbestos PI-AO Claims (a/k/a Asbestos Personal Injury Asymptomatic/Other Claims).

5.      Section 7.6 of the Plan includes several conditions precedent to Confirmation of the Plan.  Of relevance to the Application at issue, Section 7.6.1 includes Findings of Fact and/or Conclusions of Law which shall be set forth in the Confirmation Order.  These include that:

> (v) The Court shall have found that the aggregate of the Asbestos PI-SE Class Fund, the Asbestos PD Class Fund, and the Asbestos Trust Expenses Fund is not greater than one billion, four hundred eighty three million dollars ($1,483,000,000); and
>
> (w) The Court shall have found the Asbestos PI-AO Class Fund is not greater than one hundred thirty million dollars ($130,000,000).

6.      In addition, Section 7.6.2 of the Plan includes the Orders of the Court that must be entered prior to Confirmation of the Plan.  These, in relevant part, include:

> (d) The Court shall have entered the Estimation Order in form and substance acceptable to the Debtors, including the following findings:
>
>> (i) The Asbestos PI-SE Class Fund shall constitute the maximum amount that shall be required to be paid in order to pay in full all Allowed Asbestos PI-SE Claims;
>>
>> (ii) The Asbestos PD Class Fund shall constitute the maximum amount that shall be required to be paid in order to pay all Allowed Asbestos PD Claims; and
>>
>> (iii) The Asbestos Trust Expenses Fund shall constitute the maximum amount that shall be required to be paid in order to pay in full all expenses of the Asbestos Trust.

{D0031811:1 }

7.      Through the Plan, CMO Motion and Estimation Motion, the Debtors contend that claims of the asbestos creditors will be paid in full, based upon a capped estimation of the total asbestos liability.  As a result of the Debtors' position that asbestos claims will be paid in full, the Plan provides that the holders Asbestos PI-SE Claims, Asbestos PI-AO Claims, and Asbestos PD Claims will be deemed unimpaired and unable to vote on the Plan.  The PI Committee disputes that the Plan is confirmable because of these and other provisions.

8.      The Plan designates "Equity Interests in the Parent" as Class 10.  Since this class is impaired, they are entitled to vote on the Plan.  Although the Plan provides that Parent Common Stock will remain outstanding, this class is deemed to be impaired because "existing shareholders will be subject to dilution by, among other things, additional shares of Parent Common Stock issued under the Plan to pay 15% of the Class 9 General Unsecured Claims and possible exercise of the Warrants issued under the Plan." *Disclosure Statement*, § 1.2.4.

9.      In the Application, the Equity Committee acknowledges that the Debtors have, to date, taken the lead in contesting the asbestos claims asserted against the estate.  However, the Equity Committee asserts that the retention of Lexecon as its asbestos valuation expert is necessary at this time due to the Debtors' "recent pronouncements regarding negotiation of a potential consensual plan of reorganization with the asbestos claimants." *Application*, ¶ 5.  The Equity Committee asserts that the retention of Lexecon is necessary for the Equity Committee "to conduct its own evaluation of any proposed settlement, to participate in settlement negotiations, and, if necessary, undertake its own challenge to the allowability and amount of asbestos claims." *Id.*

**OBJECTION**

10. The Application must be denied at this time as being premature and not in the best interests of the Debtors' estates. As noted above, the asserted grounds for the retention of Lexecon is due to the Debtors' pronouncement regarding negotiations with the asbestos claimants and the Equity Committee's desire to evaluate any proposed settlement. However, no such settlement with the asbestos creditors has been reached. In fact, the Debtors have filed what is, in essence, a cram-down plan in which they propose to pay asbestos creditors 100% of the value of their claims based upon a capped estimation of the total asbestos liability. In the absence of a settlement with the asbestos claimants, the Equity Committee has failed to assert any specific facts to show why the Debtors cannot continue to 'take the lead' in contesting the value of the asbestos claims.

11. Under the Plan, the Class 10 Equity Interests in the Parent are unimpaired by the asbestos liabilities, as the Debtors propose to pay the vast bulk of the asbestos liabilities with the Sealed Air Payment (which is comprised of a combination of cash in the amount of $512.5 million, plus interest, and 9 million shares of common stock of Sealed Air). As noted above, the Class 10 Equity Interests in the Parent are only marginally diluted by the issuance of common stock to pay 15% of the Class 9 General Unsecured Claims.

12. Given all of the above, the Equity Committee has failed to provide the Court with the "specific facts showing the necessity for the employment" of Lexecon required by Rule 2014(a) of the Federal Rules of Bankruptcy Procedure. In addition, it is not in the best interests of the Debtors' estates at this time to have two sets of asbestos estimation experts billing the estates to support a plan that preserves equity.

WHEREFORE, for the foregoing reasons, the PI Committee respectfully requests that the Court enter an Order denying the Application of the Official Committee of Equity Security Holders for an Order, *Nunc Pro Tunc* to October 29, 2004, Approving and Authorizing the Retention and Employment of Lexecon LLC as Asbestos Claims Consultant to the Official Committee of Equity Security Holders.

Date:   December 3, 2004

        CAMPBELL & LEVINE, LLC

        /S/ Mark Hurford
        Marla R. Eskin (No. 2989)
        Mark T. Hurford (No. 3299)
        800 King Street, Suite 300
        Wilmington, DE  19801
        (302) 426-1900

        -and-

        CAPLIN & DRYSDALE, CHARTERED
        Elihu Inselbuch
        399 Park Avenue, 27th Floor
        New York, NY  10022-4614
        (212) 319-7125

        -and-

        CAPLIN & DRYSDALE, CHARTERED
        Peter Van N. Lockwood
        Nathan D. Finch
        One Thomas Circle, N.W.
        Washington, D.C.  20005
        (202) 862-5000

        Counsel to the Official Committee of
           Asbestos Personal Injury Claimants

{D0031811:1 }