COPY FOR BK Court

NOT PRECEDENTIAL

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

NO. 03-3453

IN RE:
W.R. GRACE & CO

CAROL GERARD;
ALFRED PENNOCK;
BILLIE SCHULL



FILED

DEC -1 2004

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

v.

W.R. GRACE & CO ET AL
MARYLAND CASUALTY COMPANY

Maryland Casualty Company,
Appellant

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 02-cv-01549)
District Judge: Honorable Alfred M. Wolin

Argued September 27, 2004

Before: RENDELL, FUENTES and SMITH, Circuit Judges.

(Filed October 28, 2004)

Jeffrey C. Wisler [ARGUED]
Connolly, Bove, Lodge & Hutz
1007 North Orange Street
P. O. Box 2207
Wilmington, DC   19899

*Counsel for Appellant*
*Maryland Casualty Company*

Janet S. Baer
James W. Kapp, III
David M. Bernick
Kirkland & Ellis
200 Randolph Drive, Suite 6500
Chicago, IL   60601

Christopher Landau [ARGUED]
Eric B. Wolff
Kirkland & Ellis
655 15th Street, N.W., Suite 1200
Washington, DC  20005

Laura D. Jones
Pachulski, Stang, Ziehl, Young,
Jones & Weintraub
919 North Market Street, 16th Floor
P. O. Box 8705
Wilmington, DE   19801

*Counsel for Appellee*
*W.R. Grace & Co.*

Daniel C. Cohn [ARGUED]
David B. Madoff
Cohn, Kelakos, Khoury,
 Madoff & Whitesell
101 Arch Street
Boston, MA   02110

Adam G. Landis
Landis, Rath & Cobb
919 Market Street, Suite 600
P. O. Box 2087
Wilmington, DE 19899

*Counsel for Appellees*
*Carol Gerard; Alfred Pennock;*
*Billie Schull*

## OPINION OF THE COURT

RENDELL, Circuit Judge.

This appeal comes to us from the District Court's order vacating the Bankruptcy Court's order refusing to modify an injunction entered against the pursuit of state court litigation against Maryland Casualty Company ("MCC"), the worker's compensation carrier of the chapter 11 debtor, W.R. Grace & Co. ("Grace").

As the parties are all too familiar with the factual background, we include only such factual and procedural events as are necessary to our decision. From 1963 until 1990, Grace operated a facility ten miles north of Libby, Montana, where it mined, milled and processed vermiculite. The ore mined there contained tremolite asbestos, which is a particularly carcinogenic type of asbestos. The Grace facility generated substantial amounts of dust containing tremolite, which allegedly caused injury to plant workers, their families and other members of the community.

In December, 2000, Carol Gerard, a former Libby resident, filed suit in Maryland against Grace and MCC, alleging that exposure to the dust in the air generated by the Libby Mine caused her to suffer various asbestos-related health problems. In 2001, Billie Schull, along with other employees of the Libby Mine and their family members, filed suit against MCC and the State of Montana. Finally, in March 2002, Alfred Pennock and other Libby employees and their family members filed suit against MCC, the State of Montana and several other insurance companies. The actions of these three groups of plaintiffs ("Plaintiffs") together comprise what we will refer to as "The Lawsuit." Essentially, the Plaintiffs in The Lawsuit contend that, as Grace's worker's compensation carrier, MCC undertook a duty to the workers, their families and the community of Libby, Montana to exercise reasonable care in relation to the mine safety program and that MCC breached this duty. They further allege that MCC aided and abetted Grace in its dangerously substandard operation and conspired with Grace to conceal the dangers posed by asbestos at the Libby Mine.

In April 2001, after Gerard filed suit, but before the other two suits had commenced, Grace filed for Chapter 11 bankruptcy reorganization in the Bankruptcy Court for the District of Delaware ("Bankruptcy Court"). At that time, Grace also sought temporary restraints and a preliminary injunction of asbestos-related claims against itself and its affiliates. The Bankruptcy Court issued a preliminary injunction enjoining pending actions against Grace's "Affiliated Entities" and its "Insurance Carriers." The

definition of "Insurance Carriers" arguably included MCC, but Grace thereafter applied to the Bankruptcy Court requesting that MCC be added as a party specifically protected by the injunction. This request was based in part on a Settlement Agreement between Grace and MCC dated September 1, 1991, which contained a section in which Grace agreed to release and indemnify MCC against any future asbestos-related claims filed against MCC that arose out of alleged liability on the part of Grace. In May 2001, the Bankruptcy Court granted the preliminary injunction ("Injunction"), specifically enjoining actions against MCC.

A few weeks later, Plaintiffs filed a motion to clarify, or in the alternative, to modify, the scope of the Injunction; that motion was denied by the Bankruptcy Court. Plaintiffs appealed from that order, and the District Court vacated the order and remanded the matter to the Bankruptcy Court for further proceedings.

In its opinion, the District Court took a slight detour from the precise issue that should have been presented on appeal, namely, whether the Bankruptcy Court improperly refused to modify the scope of the Injunction. The District Court, apparently taking its cue from arguments made by Plaintiffs for the first time on appeal, determined instead that the Bankruptcy Court did not have jurisdiction because the state court litigation was not "related to" the bankruptcy proceedings.[1] In so holding, the District Court relied upon

---

[1] The briefs on appeal to the District Court attacked the Bankruptcy Court's jurisdiction and its determination to issue the Injunction, with little mention of the order from which the appeal was taken.

two seminal cases in the area of "related to" bankruptcy court jurisdiction – Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984) and In re Federal-Mogul Global, Inc., 282 B.R. 301 (Bankr. D. Del. 2002) – as authority for its ruling. However, in both Pacor and Federal-Mogul, the issue presented was whether the Bankruptcy Court had jurisdiction to remove *to* the Bankruptcy Court, and thus hear and decide, in the Bankruptcy Court, litigation pending in state court. But, here, the issue before the Bankruptcy Court was not whether it should exercise jurisdiction over suits pending elsewhere, nor even whether it should enjoin such suits, but, rather, whether it should modify an injunction already entered in the Bankruptcy Court in favor of Grace and MCC.

In addition to having been misdirected as to the issue before it, the District Court, in its jurisdictional analysis, was also misled as to the nature of the proceeding before the Bankruptcy Court. Clearly, the ruling on appeal to the District Court resulted from the adversary proceeding seeking injunctive relief initiated by the debtor in its own chapter 11 case. Thus, the proceeding was assuredly "related to" the case, and, further, it definitely "arose under" the bankruptcy proceeding (and was perhaps even a "core" proceeding). Thus, the issue of bankruptcy court jurisdiction to entertain the motion relating to the Injunction was in reality a non-issue. The Injunction was issued pursuant to 11 U.S.C. § 105 in the adversary proceeding initiated by Grace, and the Bankruptcy

Court clearly had jurisdiction to enforce it. We will therefore vacate the District Court's order.[2]

The District Court did not review the Bankruptcy Court's ruling on the merits issue before us, namely, whether the Bankruptcy Court erred in refusing to clarify or modify the Injunction. Our choice is to remand for the District Court to do so, or, given the record before us of proceedings before the Bankruptcy Court, to decide for ourselves whether the Bankruptcy Court's ruling was proper. Given the delay that a remand would entail, as well as the fact that the District Court judge familiar with these proceedings has now retired from the bench, and in view of the fact that we do have a complete record of the proceedings before the Bankruptcy Court, we will review the propriety of the Bankruptcy Court's ruling without the need for remand. See In re Ben Franklin Hotel Assocs., 186 F.3d 301, 306 (3d Cir. 1999) ("Because the record has been sufficiently developed for us to resolve this legal issue, we need not remand to the District Court to consider it in the first instance."); see also Stetson v. Howard D. Wolf & Assocs., 955 F.2d 847, 850-51 (2d Cir. 1992) ("An appellate court has the power to decide cases on appeal if the facts in the record adequately support the proper result.")

---

[2] We note that the Bankruptcy Court, in its analysis of "related to" jurisdiction, engaged in a review and assessment of the indemnity provisions of the Settlement Agreement. It did this to refute the claims of MCC that any recovery against it would become a liability of Grace pursuant to the agreed indemnity. However, the Bankruptcy Court did not rule on this issue and it is apparent to us that the District Court's analysis, and its conclusion were outside the scope of the issues presented to the District Court on appeal.

A decision by a bankruptcy court whether or not to clarify or modify a § 105 injunction is an equitable one, and issues within the equitable discretion of a bankruptcy court should be overturned only for abuse of discretion. See Penn Terra, Ltd. v. Dep't of Envtl. Res., 733 F.2d 267, 274 (3d Cir. 1984); In re Continental Airlines, 91 F.3d 553, 560 (3d Cir. 1996). Therefore, our review is for abuse of discretion.

It is important to note at the outset that the appeal before us is not an appeal from the entry of the Injunction, but, rather, from the Bankruptcy Court's refusal to interpret, alter, or reconsider the Injunction after its entry as Plaintiffs urge. Due to this procedural fact, it was Plaintiffs, as moving parties, who had the burden to demonstrate to the court that the Injunction was somehow improper as to them. This they failed to do.

Before the Bankruptcy Court, Plaintiffs contended that the Injunction should not apply to stay their litigation because, although MCC was a named "Insurance Carrier," suits against whom were stayed, the suit was not for "coverage for asbestos-related liability," so the Injunction should not cover MCC. The Bankruptcy Court had little difficulty rejecting this argument. Notwithstanding Plaintiffs' assertion that the claims against MCC are for its role in working with Grace on a dust control system for the Libby mine, it did so as its worker's compensation carrier, and its liability, if any, would be for injury to Plaintiffs from asbestos. Further, the prospect of indemnification by Grace made inclusion of a stay of suits against MCC appropriate.

Plaintiffs next argued that they should be excepted from the Injunction. They posited several theories.

First, they urged that the debtor would not be disadvantaged by having the matter proceed as against MCC alone. At the hearing on the motion to clarify or modify, counsel for Plaintiffs urged the court that because MCC was acting as an agent, and Grace was its principal, there could be no collateral estoppel effect of findings as against Grace if Grace were not present. Plaintiffs' counsel urged, further, that if the agent were found to be liable based on its actions, it would have to indemnify the principal, not vice versa, so that no liability could be passed on by MCC to Grace under any agreed indemnification.

The Bankruptcy Court properly noted the practical difficulty and inevitable implication on the debtor of findings that might be made in The Lawsuit in view of the fact that, while MCC may have played a role in the design of the system, Grace was the company that constructed it and was responsible for its operation. It noted that the theories of the Complaint included conspiracy of Grace and MCC and aiding and abetting on behalf of MCC, thus clearly targeting Grace. Moreover, the Bankruptcy Court stated:

> How's Maryland Casualty going to defend that action, except to show that in fact it wasn't Maryland Casualty, it's the debtor's conduct. I mean, it seems to me that one way or the other you're implicating something on behalf of the debtor. Either the debtor is going to defend an action by Maryland Casualty, which is kind of the equivalent of the liability over theory, I didn't do it, you did, or I did it but I did It because you told me to do it kind of policy?

At the same time that Plaintiffs asserted that Grace would not be impacted, they acknowledged that they would need discovery from Grace, but not, they maintained, so much that it would "disrupt the reorganization process."[3] Counsel also urged that the balance of harm required the court to allow the litigation to proceed.

We have little difficulty, especially given the constraints of Rule 60(b), in concluding that the Bankruptcy Court did not err in refusing to modify its previous grant of an injunction broad enough in scope to include a stay of The Lawsuit. Just as the debtor previously had the burden of showing in its motion a basis for the stay, it was Plaintiff's burden to somehow discredit or undermine the need for a stay. At the hearing before the Bankruptcy Court, it became apparent that discovery from Grace would be needed if the case proceeded against MCC, and, further, that Grace's absence would disadvantage both MCC and Grace as a practical and legal matter.

Further, Plaintiffs' counsel's theory that under a principal/agent analysis the absence of Grace would protect it from collateral estoppel should not be tested, at Grace's peril. It is more supposition than certainty at this juncture.[4]

---

[3] In the very motion seeking modification of the order Plaintiffs sought an order requiring the production of documents from Grace.

[4] Plaintiffs' counsel urges that collateral estoppel would not be applied to Grace as a result of issues decided in the course of litigating The Lawsuit, but they offer little authority for this sweeping proposition. We think the issue to be at least unclear. See United Nat'l Ins. Co. v. Equip. Ins. Managers, No. 95-CV-0116, 1997 U.S. Dist. LEXIS 6177, at *11-13 (3d Cir. May 6, 1997) (holding that because a corporation who was a debtor in bankruptcy might be "impaired or impeded by proof at trial only of its officers" and could be bound by collateral estoppel as a result of corporate agency principles, suit

Furthermore, the courts have never adopted the absence of collateral estoppel as the test for preventing actions from proceeding against third parties when the debtor is protected by the automatic stay. Rather, courts employ a broader view of the potential impact on the debtor. The standard for the grant of a stay is generally whether the litigation "could interfere with the reorganization of the debtor," In re A.H. Robins Co., 828 F.2d 1023, 1025 (4th Cir. 1987) or "would interfere with, deplete or adversely affect property of [the] estates or which would frustrate the statutory scheme of chapter 11 or diminish [the debtor's] ability to formulate a plan of reorganization," In re Johns-Manville, 26 B.R. 420, 436 (Bankr. D.N.Y., 1983). Accordingly, the plaintiffs had to show that the Bankruptcy Court's ruling to that effect was in error with respect to the possible impact of The Lawsuit. Since they did not do so, we conclude that the

---

against the individual corporate officers should not be allowed to proceed independently of the debtor); In re American Film Technologies, Inc., 175 B.R. 847, 850 (Bankr. D. Del. 1994) (holding that a potential finding of liability against directors of the corporation would be for acts undertaken as agents of the corporation, and thus would expose the corporation to the risk of being collaterally estopped from denying liability for the director's actions). Also, in In re Johns-Manville Corp., 40 B.R. 219, 225 (S.D.N.Y. 1984), the court did comment on the potential effect that witness testimony could have on the debtor. It stated, "once a witness has testified to a fact, or what sounds like a fact, that witness may be confronted with his prior testimony under oath in a future proceeding directly involving Manville, whether or not Manville was a party to the record on which the initial testimony was taken. Once an admission against interest is made, under oath or otherwise, by the agent of a party, that admission stands for all time. No matter what Lake may stipulate, the thousands of other claimants and cross-claimants who are after Manville's assets, would be entitled to use the product of such discovery."

Bankruptcy Court's order was not an abuse of discretion. Accordingly, we will VACATE the District Court's order.