## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 01-1139 (JKF) |
| W.R. GRACE & CO., et al., [1] | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | **Hearing Date: January 21, 2005 at 9:00 a.m.** |
| | ) | **Objection Deadline: December 21, 2004 at 4:00 p.m.** |
| | ) | Re: D.I. 6896 |

### LIMITED OBJECTION OF FRESENIUS MEDICAL CARE HOLDINGS, INC. AND NATIONAL MEDICAL CARE, INC. TO DISCLOSURE STATEMENT FOR DEBTORS' PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

Fresenius Medical Care Holdings, Inc. and National Medical Care, Inc. (collectively with their affiliates, "FMCH"), creditors and parties in interest in the above-captioned cases, hereby submit this limited objection to approval of the Debtors' Disclosure Statement (the "Disclosure Statement") concerning the Debtors' Plan of Reorganization dated November 13, 2004 (the "Plan") because the Disclosure Statement does not contain adequate information as required by Section 1125 of Title 11, United States Code (the "Bankruptcy Code").

---

[1]    The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Summary of Limited Objections

1.      On June 25, 2003, the United States District Court for the District of Delaware (the "District Court") entered its Order Authorizing, Approving and Implementing Settlement Agreement by and among Plaintiffs the Official Committee of Asbestos Property Damage Claimants and the Official Committee of Asbestos Personal Injury Claimants, the Debtors, and Defendants Fresenius Medical Care Holdings, Inc. and National Medical Care, Inc. (the "Fresenius Settlement Order") by which the District Court authorized and approved that certain First Amended Settlement Agreement and Release of Claims dated February 6, 2003 (the "Fresenius Settlement Agreement").[2]

2.      FMCH believes that both the Plan and the Disclosure Statement reflect a good faith effort by the Debtors to implement and describe the rights and obligations of the Debtors and the other Settling Parties under the Fresenius Settlement Agreement and the Fresenius Settlement Order.  In general, FMCH does not object to the Court approving the Disclosure Statement. However, the Debtors' Disclosure Statement fails to provide "adequate information" as required by Section 1125 of the Bankruptcy Code concerning the Plan's proposed treatment of the rights and claims of FMCH and the corresponding obligations of the Debtors and other Settling Parties under the Fresenius Settlement Agreement and the Fresenius Settlement Order.  Specifically, (1) the Disclosure Statement and the Plan are ambiguous regarding the treatment provided to any tax-related claims held by FMCH, including whether the Debtors intend to treat any such tax-related claims held by FMCH in accordance with the proposed treatment of Priority Tax Claims, and the Disclosure Statement fails to adequately inform creditors and other parties in interest relying on the Disclosure Statement that the Plan's proposed treatment of Priority Tax Claims in

---

[2]      Except where otherwise indicated, capitalized terms shall have the meanings assigned to them in the Fresenius Settlement Agreement or the Plan, as appropriate.

Section 2.3 of the Plan may not be consistent with the Debtors' obligations pursuant to the Fresenius Settlement Agreement and Fresenius Settlement Order; (2) the Disclosure Statement and the Plan are ambiguous regarding the issuance and implementation of the injunctions, releases, and indemnifications under Sections 524(g), 105(a), and otherwise provided by the Plan to protect FMCH and its affiliates, and the Disclosure Statement fails to adequately inform creditors and other parties in interest that the Plan's proposed issuance and implementation of various injunctions and releases may not be consistent with the Debtors' obligations pursuant to the Fresenius Settlement Agreement and Fresenius Settlement Order; (3) the Disclosure Statement fails to provide adequate information concerning the dismissal of the actions identified in Section 2.02(G) of the Fresenius Settlement Agreement; and (4) the Disclosure Statement may fail to provide adequate information concerning other material terms of the Fresenius Settlement Agreement and Fresenius Settlement Order. To remedy these problems with the adequacy of the Debtors' disclosures, this Court should require that the Debtors amend their Plan and Disclosure Statement as described below in order to eliminate any ambiguities and provide adequate information regarding the treatment of the Fresenius Settlement Agreement and the Fresenius Settlement Order. Therefore, FMCH respectfully proposes to the Court certain modifications and changes to the Disclosure Statement (and to the extent necessary, the Plan), so that they more accurately and completely reflect the obligations of the Settling Parties under the Fresenius Settlement Agreement.

## **Discussion**

## I.    THE DISCLOSURE STATEMENT FAILS TO PROVIDE ADEQUATE INFORMATION CONCERNING THE TREATMENT OF TAX-RELATED OBLIGATIONS UNDER THE FRESENIUS SETTLEMENT AGREEMENT.

3.    As required by Section 3.03(A) of the Fresenius Settlement Agreement, FMCH has ceded control of "Indemnified Taxes" (as defined in the Fresenius Settlement Agreement) to W.

R. Grace & Co. Conn. ("Grace-Conn.").  Grace-Conn. has exercised that authority to, among other things, pursue a settlement with the Internal Revenue Service (the "IRS") with respect to interest claimed with respect to corporate owned life insurance (the "COLI Settlement"), as approved by this Court by order dated October 13, 2004.  In addition to the COLI Settlement, pursuant to the Fresenius Settlement Agreement Grace-Conn. has exercised control over negotiations with the IRS with respect to other Indemnified Taxes.

4.      The Fresenius Settlement Agreement, and the Fresenius Settlement Order, currently require the Debtors to promptly pay any Indemnified Taxes as such taxes become due and payable, to the extent that any of the Debtors agrees to the payment, assessment, resolution or any other Final Determination of any Indemnified Taxes.  In addition, the definition of "Taxes" under the Fresenius Settlement Agreement, which is incorporated into the term Indemnified Taxes, includes the subject tax "together with any related interest, penalties, and additions to any such tax, or additional amounts imposed by any tax authority (domestic or foreign)…."

5.      Consequently, the Indemnified Taxes that the Debtors have agreed, and are obligated, to promptly pay as such Indemnified Taxes become due is a broader term than the term Allowed Priority Taxes as used in the Disclosure Statement (and the Plan), and such Indemnified Taxes are likely to be payable to the tax authorities earlier than would otherwise be the case in a typical chapter 11 proceeding under the Bankruptcy Code.  For example, the duty to promptly pay such Indemnified Taxes would preclude the Debtors from exercising the right reserved to the Debtors at their option under clause (iii) of Section 2.3 of the Plan, to pay such taxes "in equal quarterly Cash payments on the Initial Distribution Date and, thereafter, on each Quarterly Tax Distribution Date in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at 3.5% per annum, over a period not exceeding six (6) years after

the date of assessment of such Allowed Priority Tax Claim or upon such other terms determined by the Bankruptcy Court...."

6.      It appears to FMCH that the overwhelming amount of the Priority Tax Claims that are subject to the Plan are Indemnified Taxes.  In particular, a significant amount of Indemnified Taxes arise out of the COLI Settlement that has been previously approved by this Court.  Under the Fresenius Settlement Agreement, these Indemnified Taxes, along with other Indemnified Taxes for which a Final Determination already has been agreed to by the Debtors, could at the discretion of the IRS become immediately payable.  As a consequence, it is misleading to creditors and other parties in interest, as repeatedly suggested by the Disclosure Statement and the Plan, that the Debtors have the option to defer payment over a six year period of any significant amount of such Priority Taxes.

7.      Moreover, the Plan is ambiguous concerning, and the Disclosure Statement fails to adequately disclose, the proposed treatment under the Plan of tax-related claims held by FMCH, which would arise in the event the Debtors fail promptly to pay Indemnified Taxes as required under the Fresenius Settlement Agreement and the Fresenius Settlement Order.  Among other things, the Disclosure Statement fails to disclose the extent to which such tax-related claims held by FMCH, including Indemnified Taxes, will be treated as Priority Claims pursuant to the Plan.

8.      To make adequate disclosure to creditors and other parties in interest concerning the treatment under the Plan of Indemnified Taxes, as well as tax-related claims held by FMCH, many detailed revisions to the Disclosure Statement would be required.  Moreover, it is very possible that inconsistencies would remain in documents as lengthy and complex as the Plan, the Disclosure Statement, and the Plan Documents.  FMCH attempts below to spell out revisions to the Disclosure Statement that may make the disclosures concerning these matters more complete,

but FMCH reserves the right to supplement this Limited Objection and these proposed revisions

as other provisions and inconsistencies in the Plan, the Disclosure Statement, and the Plan

Documents come to the attention of FMCH.

9.      As a supplement to these many revisions, and in an effort to streamline the

disclosure process and clarify the disclosures, FMCH asks that the Debtors include in the Plan,

and disclose in the Disclosure Statement, a provision to the effect that the terms of the Fresenius

Settlement Agreement and the Fresenius Settlement Order are binding and superpreemptory,

notwithstanding any other or contrary provisions of the Plan, any of the Plan Documents, or the

Confirmation Order.  Such language might read as follows:

> Notwithstanding anything to the contrary in the Plan, any of the
> Plan Documents, or the Confirmation Order, nothing in this Plan,
> any of the Plan documents, or the Confirmation Order (including
> any other provision that purports to be preemptory or supervening),
> shall in anyway operate to, or have the effect of, impairing or
> limiting the legal, equitable or contractual rights or obligations of
> the Fresenius Indemnified Parties, or the Estate Parties,
> respectively, pursuant to the Fresenius Settlement Agreement or
> the Fresenius Settlement Order.  The rights and obligations of the
> Fresenius Indemnified Parties and the Estate Parties shall be
> determined under the Fresenius Settlement Agreement and the
> Fresenius Settlement Order, as applicable, each of which is
> expressly made a part of the Plan and incorporated by reference.

*Cf. In re Combustion Engineering, Inc.*, Case No. 03-3392, Slip Opinion at 36 (3d Cir. Dec. 2,

2004) (approving of and reinstating similar language crafted by this Court to protect the contract

rights of insurance carriers in the context of a Chapter 11 plan of reorganization).  For the

avoidance of doubt, this Court should also include such language in the Confirmation Order.  By

including the foregoing language in the Plan and the Confirmation Order, and making adequate

disclosure thereof in the Disclosure Statement, all parties can be assured that the Plan will honor

the Fresenius Settlement Agreement and the Fresenius Settlement Order.

**A.      Specific Proposed Changes to Disclosure Statement**

10.    The necessity of a superpreemptory provision is illuminated by reviewing just some of the changes needed to clarify the obligations of the Settling Parties under the Fresenius Settlement Agreement.  The following changes are by way of example only.

11.    **Section 1, Executive Summary, Section 1.2.1:**  The table on page 2, describing Treatment Under the Plan, Priority Tax Claims, should be changed to read (**changes marked in bold and underscored**) as follows:

> "Each Holder of an Allowed Priority Tax Claim shall be paid the Allowed Amount of its Claim, at the option of the Reorganized Debtors, either ….,  equal to such Allowed Priority Tax Claim; **provided, however, that each Holder of a Claim for Indemnified Taxes (as defined in the Fresenius Settlement Agreement) promptly shall be paid in full in Cash as such Indemnified Taxes become due and payable**."

12.    **Section 1, Executive Summary, Section 1.2.1:**  The table on page 5, describing Treatment Under the Plan, General Unsecured Claims, second sentence, should be changed to read as follows:

> "Such payment shall be paid in full, plus post petition interest…, such payment, to be 85% in Cash and 15% in Parent Common Stock, **except that each Holder of a Claim for Indemnified Taxes (as defined in the Fresenius Settlement Agreement) promptly shall be paid in full in Cash as such Indemnified Taxes become due and payable,** such Parent Company Stock …."

13.    **Section 1, Executive Summary, Section 1.2.3:** The text on page 7, describing treatment of liabilities classified as General Unsecured Claims under the Plan should be changed to read as follows:

> "The Plan provides that all Holders of General Unsecured Claims will be paid the value of their Allowed Claims, 85% in Cash and 15% in Parent Common Stock. **However, taxes that are Indemnified Taxes (as defined in the Fresenius Settlement Agreement) will be paid in Cash by the Reorganized Debtors in the ordinary course of their business, in accordance with the Fresenius Settlement Order.**"

14. **Section 2, Description of the Debtors, Section 2.5.3.1:** The text on page 20, describing IRS Proposed 1993-96 Tax Adjustments should be changed to add the following sentence at the end of the first paragraph:

> "**To the extent these IRS and state tax Claims are sustained, and they are Indemnified Taxes, they are tax obligations that the Debtors are obligated under the Fresenius Settlement Agreement promptly to pay in full in Cash when due and payable.**"

15. **Section 2, Description of the Debtors, Section 2.5.3.4:** The text on page 22, describing State Income Tax Claims should be changed to read as follows:

> "However, Grace believes that these Claims can and should be resolved for significantly less than the amounts claimed. **To the extent these state tax Claims are sustained, however, and they are Indemnified Taxes, they are tax obligations that the Debtors are obligated under the Fresenius Settlement Agreement promptly to pay in full in Cash when due and payable.**"

16. **Section 2, Description of the Debtors, Section 2.6.3.2:** The text on page 23, describing Income Taxes should be changed to read as follows:

> "Of this amount, approximately $152 million is expected to be paid in Cash on or before the Effective Date in settlement of assessed or asserted income tax claims, **including claims for Indemnified Taxes that the Debtors are obligated promptly to pay in full in Cash when due and payable under the Fresenius Settlement Agreement.** The remainder will be satisfied as Priority Tax Claims under the Plan or as otherwise agreed with the relevant taxing authorities. **To the extent these tax claims are not paid in full in Cash prior to the Effective Date, and they are Indemnified Taxes, they are tax obligations that the Debtors are obligated under the Fresenius Settlement Agreement promptly to pay in full in Cash when due and payable.**"

17. **Section 2, Description of the Debtors, Section 2.8.2.3**, references the payment of certain Priority Tax Claims paid over time. As noted above, to the extent these Priority Tax Claims are Indemnified Taxes, such a statement is potentially misleading to creditors and other parties in interest.

18. **Section 4, Summary of the Plan, Section 4.2:** The text on page 45, describing Provisions for Payment of Administrative Expenses and Priority Tax Claims should be changed to read as follows:

> "These Claims are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code or upon such other less favorable terms as may be mutually agreed upon between the Holder of such unclassified Claim and the Reorganized Debtors or otherwise established pursuant to an order of the Bankruptcy Court**, including in accordance with the Fresenius Settlement Agreement.**"

In addition, the first paragraph of Section 4.2 on page 46 should be changed to read as follows:

> "The remainder of Article 2 of the Plan delineates in detail the treatment of these unclassified Claims, including treatment of liabilities incurred in the ordinary course of business, fee applications of Professionals and payment of interest to holders of Priority Tax Claims paid out over time**, subject to the requirements of the Fresenius Settlement Agreement.**"

19. **Section 4, Summary of the Plan, Section 4.3.1.9:** Consistent with the comments made above, for clarity and to avoid misleading creditors and other parties in interest, the text on page 49, describing General Unsecured Claims should be changed to add a sentence at the end of the first paragraph thereof:

> **"However, taxes that would otherwise be treated as General Unsecured Claims, including taxes, interest thereon and other amounts due with respect thereto, that are not classified as Priority Tax Claims under the Plan but that are Indemnified Taxes, will be promptly paid in full in Cash by the Reorganized Debtors as such taxes become due and payable in the ordinary course of their business."**

20. **Section 4, Summary of the Plan, Section 4.3.1.9**, describing Plan § 8.6.3, Release of Fresenius Indemnified Parties, on page 65: The last sentence of that paragraph should be changed to read as follows:

> "Upon receipt of the Fresenius Payment**, in addition to the more limited duties of indemnification by the Debtors to the Fresenius Indemnified Parties under Article III of the Fresenius Settlement Agreement,** the Debtors and the Reorganized Debtors shall indemnify,…."

21.   **Section 7, Requirements For Confirmation of the Plan, Section 7.1**, describing

Bankruptcy Code Section 1129 Generally: The text of the second bullet on page 75 should be

changed to read:

> "Except to the extent that the Holder of a particular Claim has agreed to a
> different treatment of such Claim, **and subject to the Fresenius Settlement
> Agreement,** the Plan provides…."

## II.   THE DISCLOSURE STATEMENT FAILS TO PROVIDE ADEQUATE INFORMATION CONCERNING THE ISSUANCE AND IMPLEMENTATION OF INJUNCTIONS, RELEASES, AND INDEMNIFICATIONS TO PROTECT FMCH AND ITS AFFILIATES.

22.   Under Section 2.02 of the Fresenius Settlement Agreement, and as set forth in the

Fresenius Settlement Order, FMCH is not obligated to make the Settlement Payment in the

amount of $115 million (less any setoffs or recoupments pursuant to Section 3.08 of the

Settlement Agreement) unless and until each and every one of the following preconditions shall

have occurred, or have been waived by FMCH:[3]

> •      The Plan of Reorganization shall provide that:  (i) upon the making of the
> Settlement Payment, the Asbestos Committees and the Estate Parties will fully, finally,
> and forever release, relinquish and discharge each and every of the NMC Defendants
> from any and all Grace-Related Claims that the Asbestos Committees or the Estate
> Parties have asserted or could have asserted in this or any other forum against any of the
> NMC Defendants; and (ii) prior to the making of the Settlement Payment, the Asbestos
> Committees and the Estate Parties will deliver to the NMC Defendants the Release that is
> attached as Appendix B to the Settlement Agreement, which by its terms shall become
> effective upon the making of the Settlement Payment.

> •      The Plan of Reorganization shall provide that, in consideration of the
> Settlement Payment, any Person voting in favor of the Plan or receiving property under
> the Plan shall thereby be deemed to have fully released each and every of the NMC
> Defendants from all Grace-Related Claims that such Person has asserted or could have
> asserted in this or any other forum against any of the NMC Defendants.

> •      The Plan of Reorganization shall establish a trust or trusts under state law
> and pursuant to Section 524(g) of the Bankruptcy Code (the "Asbestos Trust"), and shall

---

[3]   This recitation is intended as a summary only and is qualified in every respect by the actual terms of the
Fresenius Settlement Agreement.

further provide that, in consideration of the Settlement Payment, any Person that receives property from the Asbestos Trust(s) shall thereby be deemed to have fully released each and every of the NMC Defendants from all Grace-Related Claims that the Person has asserted or could have asserted in this or any other forum against any of the NMC Defendants.

- The Court shall have issued, pursuant to Section 105(a) of the Bankruptcy Code, a Final Order, enforceable upon the making of the Settlement Payment, permanently and forever enjoining, restraining and barring any Person from commencing or continuing any suit, action or other proceeding, or from taking any other action, for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, or with respect to, any Grace-Related Claim against any of the NMC Defendants.

- The Plan of Reorganization shall provide that the NMC Defendants shall receive the full benefits and protections of an injunction entered pursuant to section 524(g) of the Bankruptcy Code, enforceable upon the making of the Settlement Payment, which injunction shall permanently bar any Person from commencing or continuing any suit, action, or other proceeding, or from taking any other action for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, or with respect to, any Asbestos-Related Claim that the Person asserted or could have asserted, against any of the NMC Defendants.

- The Plan of Reorganization shall provide that the Estate Parties, jointly and severally, upon the making of the Settlement Payment, shall indemnify, defend and hold harmless the NMC Defendants for any loss, cost or expense (including attorneys' fees and other costs of defense) arising out of any and all Grace-Related Claims, commenced or continued in this or any other forum against any of the NMC Defendants. Such indemnification specifically shall not apply to the costs and expenses (including attorneys' fees and accountants' fees) incurred by the NMC Defendants in defending the Asbestos Claimant's Adversary Proceeding or any other suit prior to the Settlement Execution Date.

- The actions identified in Section 2.02(G) shall have been dismissed with prejudice.

- The Plan of Reorganization shall contain a determination by the Court that the Estate Parties have the ability to satisfy all Indemnified Taxes, liabilities under the Settlement Agreement and ordinary course of business obligations as of the Plan Effective Date.

23.    The Plan is ambiguous, and the Disclosure Statement fails to adequately disclose,

the means for issuance and implementation of the various injunctions and releases to be provided

to FMCH, including those protections set forth above, in accordance with the Fresenius

Settlement Agreement and the Fresenius Settlement Order.  For example, Section 8.2 of the Plan

does not affirmatively and unequivocally state that FMCH is protected by the Asbestos Channeling Injunction issued under Section 105(a) and 524(g) of the Bankruptcy Code. Likewise, Section 8.4 of the Plan does not affirmatively and unequivocally state that FMCH is protected by the Released Matters Injunction issued under Section 105(a) of the Bankruptcy Code.

24.    At the same time, Section 8.4.2(c) of the Plan includes a reservation from the Released Matters Injunction such that the injunction "shall not enjoin . . . the rights any of the Reorganized Debtors or the Non-Debtor Affiliates . . . to receive any settlement, award, payment of Cash or other property of any kind whatsoever from any Entity . . . ."  At least when taken out of context, this language could be read to suggest that the Released Matters Injunction does not cover the Estate Parties' alleged right to recover from FMCH, notwithstanding the compromise and settlement of such claims in the Fresenius Settlement Agreement.

25.    To eliminate these and other ambiguities, and to provide adequate information, FMCH respectfully requests that the Plan and the Disclosure Statement be amended to (1) state that the injunctions and releases provided by the Plan under Sections 105(a) and 524(g) of the Bankruptcy Code extend to FMCH; and (2) include a separate section or sections identifying the terms of the Fresenius Settlement Agreement and the Fresenius Settlement Order as binding and superpreemptory, as described in paragraph 9 above, notwithstanding the reservations from the injunctions and releases or any other provision of the Plan.

26.    Additionally, the Plan does not provide in Section 7.6.1 or elsewhere, and the Disclosure Statement does not describe, the requirement that this Court find that the Estate Parties have the ability to satisfy all Indemnified Taxes, liabilities under the Fresenius Settlement Agreement, and ordinary course of business obligations as of the Plan Effective Date.  First, the

Plan should provide for satisfaction of all Indemnified Taxes.  Second, Section 7.6.1 of the Plan

should be amended to state that this Court must find that the Estate Parties have the ability to

satisfy all Indemnified Taxes, liabilities under the Fresenius Settlement Agreement, and ordinary

course of business obligations as of the Plan Effective Date.  Third, the Disclosure Statement

should describe this finding and the basis therefore in sufficient detail to provide creditors and

parties in interest with adequate information.

III.    **THE DISCLOSURE STATEMENT FAILS TO PROVIDE ADEQUATE INFORMATION CONCERNING THE DISMISSAL OF ACTIONS IDENTIFIED IN SECTION 2.02(G) OF THE FRESENIUS SETTLEMENT AGREEMENT.**

27.    Before FMCH is obligated to make the Settlement Payment, each court with

jurisdiction over the following actions shall have dismissed with prejudice by Final Order,

effective upon the making of the Settlement Payment, each of the following actions with

prejudice against FMCH:

- *Mesquita v. W.R. Grace & Co., et al.*, amended as *Abner v. W.R. Grace & Co., et al.*, No. 315465, Superior Court of California, County of San Francisco (since transferred to the District Court as Adversary Proceeding No. 01-8883);

- *Woodward v. Sealed Air Corporation (US), et al.*, No. 01-10547 PBS, U.S. District Court, District of Massachusetts (since transferred to the District Court as Case No. 01-CV-412)

- *Lewis v. W.R. Grace & Co., et al.*, U.S. Bankruptcy Court, District of Delaware, Adversary Proceeding No. 01-8810; and

- *Official Committee of Asbestos Personal Injury Claimants and Official Committee of Property Damage Claimants of W.R. Grace & Co., suing in behalf of the Chapter 11 Bankruptcy Estates of W.R. Grace & Co., et al., Plaintiffs v. Fresenius Medical Care Holdings, Inc. and National Medical Care, Inc.*, Adversary Proceeding No. 02-2211 (which was consolidated with Adversary Proceeding No. 02-2210 by Order dated March 28, 2002).

The Plan is ambiguous, and the Disclosure Statement fails to adequately disclose, the authority

and means by which the foregoing actions will be dismissed with prejudice.  The Plan and the

Disclosure Statement should be amended to provide the authority and describe the means for dismissal with prejudice of the foregoing actions as against FMCH.

**IV.     THE DISCLOSURE STATEMENT FAILS TO PROVIDE ADEQUATE INFORMATION CONCERNING OTHER MATERIAL TERMS OF THE FRESENIUS SETTLEMENT AGREEMENT AND THE FRESENIUS SETTLEMENT ORDER.**

28.     The Fresenius Settlement Agreement was the result of complex, detailed, and lengthy negotiations among the Settling Parties.  Consequently, it contains numerous material terms not adequately disclosed in the Debtors' Disclosure Statement.  Indeed, although the Fresenius Settlement Agreement is attached as Exhibit 13 to the Disclosure Statement, Section 2.5.2 of the Disclosure Statement contains only five brief sentences concerning the Fresenius Settlement Agreement and the litigation leading up to that agreement.

29.     To assure that creditors and other parties balloting on the Debtors' Plan are provided with adequate information concerning the Fresenius Settlement Agreement and the Fresenius Settlement Order, FMCH respectfully requests that:  (1) the Disclosure Statement and the Plan be amended to provide that nothing contained therein is intended or shall be deemed to contradict or override the terms of the Fresenius Settlement Agreement and the Fresenius Settlement Order, as described in paragraph 9 above; and (2) both the Fresenius Settlement Agreement and the Fresenius Settlement Order be attached to the Disclosure Statement and incorporated therein by reference.

[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

## Conclusion

WHEREFORE, FMCH respectfully requests that this Court deny approval of the

Debtors' Disclosure Statement until the Disclosure Statement and Plan are amended to eliminate

any ambiguities and until the Disclosure Statement contains adequate information regarding the

treatment of the Fresenius Settlement Agreement and the Fresenius Settlement Order as required

by Section 1125 of the Bankruptcy Code; and for such other and further relief as the Court

deems just and proper.

Dated: December 20, 2004
         Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL

*/s/ Daniel B. Butz* _ _____
William H. Sudell, Jr. (No. 463)
Daniel B. Butz (No. 4227)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19899-1347
(302) 658-9200

-and-

McDERMOTT WILL & EMERY LLP
David S. Rosenbloom
David C. Christian II
227 West Monroe Street
Chicago, Illinois 60606-5096
Telephone:  312-372-2000
Facsimile:  312-984-7700

-and-

IRELL & MANELLA LLP
Milton B. Hyman
Elliot G. Freier
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
(310) 277-1010

442789

Co-Counsel for Fresenius Medical Care
Holdings, Inc. and National Medical Care, Inc.