**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., *et al.*<br><br>Debtors. | Chapter 11<br><br>Case No. 01-01139 (JKF)<br><br>(Jointly Administered)<br><br>Hearing Date: January 21, 2005 @ 9:00 a.m.<br>Objection Deadline: December 21, 2004 at 4:00 p.m.<br>Re: Document No. 6896 |

**KERI EVANS' OBJECTION TO THE
ADEQUACY OF THE DISCLOSURE STATEMENT
FOR DEBTORS' PLAN OF REORGANIZATION PURSUANT
TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**

Keri Evans, a participant in the W.R. Grace & Co. Savings and Investment Plan (the "S&I Plan"), having filed a complaint (the "ERISA Complaint") entitled *Keri Evans, on behalf of herself and a Class of All Others Similarly Situated v. John Akers, et al.*), in the United States District Court for the District of Massachusetts, Civil Action No. 04-11380 WGY, by and through her undersigned counsel, objects to the adequacy of the Disclosure Statement For Debtors' Plan Of Reorganization Pursuant To Chapter 11 Of The United States Bankruptcy Code, Dated November 13, 2004 (the "Disclosure Statement"), and states as follows:

**BACKGROUND**

1.  On April 2, 2001 (the "Petition Date"), W.R. Grace & Co. (the "Debtor") and its affiliated entities (the "Debtors" (as defined in the Glossary (the "Glossary") of Defined Terms, Exhibit 2 in the Exhibit Book submitted by the Plan proponent)) filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §1101 - §1174.

2.  In or about June 2004, the above-referenced ERISA Complaint was filed in the United States District Court for the District of Massachusetts against certain of the Debtors'

officers and directors and others who served as fiduciaries of the S&I Plan (the "Non-Debtors"), for violations of the Employee Retirement Income Security Act ("ERISA") as a result of the Non-Debtors' breach of their fiduciary obligations under ERISA. The prosecution of the ERISA Complaint has been stayed temporarily until January 1, 2005 by the Bankruptcy Court.

3. Although Evans did not file a proof of claim against the Debtors, Evans' claims in the ERISA Complaint against the Non-Debtors may be impacted by certain provisions of the Debtors' Plan of Reorganization (the "Reorganization Plan").

4. Debtors filed the Disclosure Statement and Reorganization Plan on November 13, 2004. Objections to the adequacy of the Disclosure Statement are due December 21, 2004.

## PRELIMINARY STATEMENT

5. A disclosure statement may be approved as adequate only if it contains information sufficient to allow a "reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a). Plaintiffs submit that the Disclosure Statement does not satisfy this requirement as it does not contain sufficient information to enable a reasonable person to make an "informed judgment about the Plan." The Plan and the Disclosure Statement are ambiguous and/or omit material facts that may mislead or preclude holders of claims or interests from making an informed judgment about the Plan. As a result, the Disclosure Statement does not comply with the requirements of the Bankruptcy Code and should not be approved.

6. As will be shown herein, the Disclosure Statement requires modification to bring the Disclosure Statement into compliance with 11 U.S.C. § 1125 and to make the Plan confirmable under the Bankruptcy Code.

## OBJECTION

7. *To the extent any objection, in whole or in part, contained herein is deemed to be an objection to confirmation of the Plan rather than, or in addition to, an objection to the adequacy of the Disclosure Statement, Plaintiff reserves her rights to assert such objections, as well as any other objection, to confirmation of the Plan.*

**A.    The Treatment Of The Claims In The ERISA Complaint.**

8. Although Evans has not filed a proof of claim against the Debtors, other ERISA claimants may have filed claims against the Debtors based upon violations and/or breaches of ERISA. To that extent, the Reorganization Plan should provide for and the Disclosure Statement should explain the proposed treatment of such ERISA-related claims.

9. The Reorganization Plan and Disclosure Statement currently provide for the treatment of holders of general unsecured claims (Class 9) and holders of equity interest (Class 10). In addition to trade creditors, Class 9 includes holders of claims arising from Other Litigation (*see* Disclosure Statement ("D.S."), §2.5). The ERISA Complaint is not included in the definition of Other Litigation, but is described elsewhere in the Disclosure Statement. *See* D.S., §3.2.8.

10. Holders of Allowed Class 9 claims shall receive cash (equivalent to 85% of their allowed claim) and common stock (equivalent to 15% of their allowed claim). *See* D.S., §4.3.1.9; Reorganization Plan ("R.P.") §3.1.9. Equity interest holders in Class 10 shall retain their stock interests. *See* D.S., §4.3.1.00; R.P. §3.1.10. There is a considerable difference in the treatments of these Classes.

11. Neither the Disclosure Statement nor the Reorganization Plan appear to provide for the treatment of ERISA-related claims (it is unclear whether they are intended to be in Class

Document #: 39371

9 or Class 10, or perhaps even another Class under the Reorganization Plan). In any event, to the extent there is an allowed claim against the Debtors based upon a violation of ERISA, the Reorganization Plan and the Disclosure Statement should specify its proposed treatment. The holder of such a claim should not have to speculate in that regard.

12. Prior to disclosing their treatment and classification, ERISA Claims should be defined in the Plan as:

> any Claim against any Debtor, whether or not the subject of an existing lawsuit, for damages arising from violations of the Employee Retirement Income Security Act of 1974.

13. Evans maintains that ERISA Claims do not fall within, nor can they be treated as, Class 10 claims under the Reorganization Plan. Claims based upon violations of ERISA are neither claims based upon stock ownership nor claims under the federal securities laws, which may be subject to subordination under 11 U.S.C. §510(b). Therefore, ERISA Claims should not be treated like equity interests.

14. Evans maintains that ERISA Claims are general unsecured claims and should be included in Class 9 of the Reorganization Plan. In the event Debtors agree with Evans as to the Class 9 treatment of the ERISA Claims, the Disclosure Statement, as well as the Reorganization Plan, should affirmatively reflect that treatment. If there is a dispute as to such classification and treatment, the dispute should be disclosed and the impact of the treatment of the ERISA Litigation Claims as general unsecured claims should be described.

**B.   ERISA Claims Against Non-Debtors Appear To Be Improperly Released Under The Plan.**

15.   The Reorganization Plan and Disclosure Statement provide for the discharge of all claims against the Debtors. *See* D.S., §4.8.1; R.P., §8.1.1 and 8.1.3.

16.   The Reorganization Plan and Disclosure Statement provide that all Representatives (which includes the Debtors' "past and present directors, officers [or] employees," *see*, Glossary, No. 165), will be released from any pre-Effective Date (as defined in the Plan) claim. *See* D.S., §4.8.6; R.P., §8.6.1.1.

17.   Representatives are further released from any claims by a claim holder or equity interest holder who votes in favor of the Reorganization Plan or retains any property under the Reorganization Plans. *See*, D.S., §4.8.6; R.P., §8.6.14.

18.   These release provisions are extremely broad and may release non-Debtors from any liability to Evans' and other ERISA claimants.

19.   Debtors have excluded some, but not all, ERISA-related claims from the release provisions without any explanation as to the disparate treatment in connection with these provisions.   Specifically, ERISA-related claims held by the Pension Benefit Guaranty Corporation ("PBGC") are expressly excluded from the release provisions by the following language:

> Nothing contained in the Plan, Confirmation Order, the Bankruptcy Code (including Bankruptcy Code §1141), or any document Filed in the Chapter 11 cases shall be construed to discharge, release or relieve the Debtors, or any other party, in any capacity, from any liability or responsibility to the Pension Benefit Guaranty Corporation ("PBGC") with respect to the Pension Plans under any law, governmental policy or regulatory provision. The PBGC shall not be enjoined or precluded from enforcing such liability or responsibility, as a result of the provisions of the Plan (including those provisions providing for the exculpation, satisfaction, release and discharge of Claims), the Confirmation

>Order, the Bankruptcy Code (including Bankruptcy Code §1141),
>or any other document Filed in the Chapter 11 Cases.

D.S. §4.8.1; R.P., §8.1.4.

20. There is no similar provision in the Reorganization Plan or Disclosure Statement addressing the claims in the ERISA Complaint or any claims arising under ERISA for the benefit of a claimant other than the PBGC. The PBGC's ERISA claims should be treated no differently than Evans' ERISA claims with respect to the applicability of the Reorganization Plan's release provisions. Indeed, the exclusion of all but the PBGC ERISA claims in this provision implies, at the very least, that such non-PBGC ERISA-related claims are enjoined, discharged or released as against "any other party, in any capacity." Not only are such releases of non-Debtors improper, but the disparate treatment of substantially similar claims violates the Bankruptcy Code. *See* 11 U.S.C. § 1122(a).

21. If the Debtors intend that Evans' claims against the Non-Debtors; *i.e.*, any other party, are not enjoined or released under the Reorganization Plan, then, in order to satisfy 11 U.S.C. § 1125(a), the Disclosure Statement and the Reorganization Plan should affirmatively disclose that fact. Otherwise, the Reorganization Plan may effectively release the Non-Debtors and other non-Debtors from any and all liabilities for the claims asserted in the ERISA Complaint, despite the fact that Evans is receiving no consideration from the Non-Debtors for such release.

22. The release potentially provided to the Non-Debtors is nonconsensual and the underlying facts here do not even remotely resemble the factual underpinnings for the releases allowed in *SEC v. The Drexel Burnham Lambert Group, Inc. (In re The Drexel Burnham Lambert Group, Inc.)*, 960 F.2d 285 (2d Cir. 1992); *cert. dismissed*, 506 U.S. 1088, 122 L. Ed.2d 497, 1133 S.Ct. 1070 (1993); *Abel v. Shugrue (In re Ionosphere Clubs, Inc.)*, 184 B.R. 648 (S.D.N.Y. 1995); and *Menard-Sanford v. Mabey (In re A.H. Robins Co., Inc.)*, 880 F.2d 694 (4th

Cir. 1989), *cert. denied*, 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989). The Debtors herein fail to provide in either the Reorganization Plan or Disclosure Statement any factual basis to establish the required "unusual circumstances" which justify confirmation of a plan containing such extraordinary relief. *See also Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 211-17 (3rd Cir., 2000)(denying third party releases and related injunctions where there was legal or evidentiary basis to authorize same).

23. The issues in *Drexel* involved class certification, approval of a settlement of class claims against the debtor, and a fixed pool of assets to satisfy the claims. The settlement provided, in part, that future claims of a sub-class against the debtor's officers and directors were enjoined. The Second Circuit found that absent the injunction, the officers and directors would not have settled. The settlement agreement was essential to the ultimate reorganization of the debtor as it resulted in substantial funds to be distributed to individuals providing the release. 960 F.2d at 293. No such facts to support non-Debtor releases have been disclosed by the Debtors herein.

24. If it is the Debtors' intention to release non-Debtor third parties with respect to the claims in the ERISA Complaint, then the Disclosure Statement describes a plan of reorganization that is unconfirmable on its face and, therefore, should not be approved. See, *e.g.*, *In re 266 Washington Associates*, 141 B.R. 275, 288 (Bankr. E.D.N.Y. 1992) ("A disclosure statement will not be approved where, as here, it describes a plan which is fatally flawed and thus incapable of confirmation."), *aff'd*, 147 B.R. 827 (E.D.N.Y. 1992); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988) ("[A]pproval [of a disclosure statement] should not be withheld if ... it is apparent that the plan will not comply with [Bankruptcy] Code §1129(a)..."); *In re Pecht*, 57 B.R. 137, 139 (Bankr. E.D.Va. 1986)("If, on

the face of the plan, the plan could not be confirmed, then the court will not subject the estate to the expense of soliciting votes and seeking confirmation"). This principle applies here. The Reorganization Plan (and Disclosure Statement) - or at least those portions purporting to enjoin claims against non-Debtors without providing adequate justification and consideration - do not satisfy the Bankruptcy Code's confirmation requirements.

25. The Court need not await the resolution of confirmation objections. These facial defects render the Plan unconfirmable as a matter of law and should preclude further consideration of the Disclosure Statement.

26. Evans submits that the most efficient means to overcome this disclosure inadequacy or ambiguity is to provide language that affirmatively and expressly excludes the claims asserted in the ERISA Complaint against the Non-Debtors or any non-Debtors from any release, discharge or injunction such that said ERISA claims are not impacted in any way by the Reorganization Plan or any Order confirming the Reorganization Plan. Until the Disclosure Statement and Reorganization Plan specifically provide that the release provisions have no impact on the rights of Evans and other ERISA claimants or the claims asserted in the ERISA Complaint against the Non-Debtors, or any non-Debtor, *the Disclosure Statement should not be approved.*

27. The Reorganization Plan, in effect, creates a trap for the unwary, potentially imposing an involuntary release of interest holders' (and creditors') claims in favor of numerous non-debtor insiders and agents with no corresponding benefit or consideration. Hence, any ambiguity that creates the impression that such a release is being provided must be clarified through additional disclosure.

28. If the Debtors do intend to release Evans' claims or impact those claims in any way, that intention must be stated, together with a statement that Evan's disputes the validity of such releases. On the other hand, if the Debtors do not seek to release the claims of Evans and other ERISA-related claims against non-Debtors, the Disclosure Statement and Reorganization Plan should state the same in a clear, concise and unambiguous manner. Evans should not be compelled to speculate with respect to this significant and substantial issue.

29. Hence, not only should the provision (¶19, *supra*), describing the exclusion of the PBGC claims arising from violations of ERISA from being released, include Evans' claims in the ERISA Complaint, but the following language should be inserted in the **Disclosure Statement and the Plan**:

> Nothing in the Plan or in any order confirming the Plan shall affect, release, enjoin or impact in any way the prosecution of ERISA Claims asserted, or to be asserted, against the Non-Debtors or any non-Debtor.

## CONCLUSION

30. Based on the foregoing, Evans' respectfully requests that an order be entered (i) denying approval of the Disclosure Statement until the modifications set forth herein are made to the Disclosure Statement and the Reorganization Plan, and (ii) granting such other and further relief as the Court deems just and proper.

Document #: 39371

Dated: December 21, 2004

Respectfully submitted,

MONZACK & MONACO, P.A.

By: _____
Francis A. Monaco (Bar I.D. No. 2078)
1201 N. Orange Street, Suite 400
PO Box 2031
Wilmington, Delaware 19899-2031
(302) 656-8162 (Telephone)
(302) 656-2769 (Facsimile)

LOWENSTEIN SANDLER PC
Michael S. Etkin (ME-0570)
Ira M. Levee (IL-9958)
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2481 (Facsimile)

*Bankruptcy Counsel for Keri Evans*

-and-

GILMAN & PASTOR, LLP
David Pastor, Esq.
999 Broadway, Suite 500
Sagur, Massachusetts 01906
(791) 231-7850 (Telephone)
(781) 231-7840 (Facsimile)

SCHIFFRIN & BARROWAY LLP
Joseph H. Meltzer, Esq.
Katherine Bornstein, Esq.
Three Bala Plaza East
Bala Cynwyd, PA 19004
(610) 667-7706 (Telephone)
(610) 667-7056 (Facsimile)

*Counsel for Keri Evans*

Document #: 39371