IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|   |   |   |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| W.R. GRACE & CO., et al., | ) ) ) | Case No. 01-1139 (JKF) Jointly Administered |
| Debtors. | ) |   |

**OBJECTIONS OF SEALED AIR CORPORATION AND CRYOVAC, INC.
TO THE ADEQUACY OF THE DISCLOSURE STATEMENT
ACCOMPANYING DEBTORS' PROPOSED PLAN OF REORGANIZATION
<u>UNDER CHAPTER 11 OF THE BANKRUPTCY CODE</u>**

Sealed Air Corporation and Cryovac, Inc. (collectively, "the Sealed Air Companies"), by their undersigned counsel, hereby object to the adequacy of the disclosure statement dated and filed November 13, 2004 (the "Disclosure Statement") accompanying the above Debtors' proposed plan of reorganization under Chapter 11 of the Bankruptcy Code, dated November 13, 2004 (the "Proposed Plan"), as follows:

**<u>Successor Liability and Fraudulent Transfer Claims</u>**

1. On April 2, 2001, Debtors commenced their respective reorganization cases (collectively, the "Chapter 11 Cases") by filing petitions for relief under Chapter 11 of Title 11 of the United States Code (as amended, the "Bankruptcy Code").

2. An uncertified class action alleging successor liability and fraudulent transfer claims was then pending against certain Debtors, the Sealed Air Companies, and Fresenius Medical Care A.G. ("Fresenius"). This litigation related to

certain corporate divestiture transactions that took place between (i) certain Debtors and Fresenius in 1996 and (ii) certain Debtors and Sealed Air Corporation in 1998.

3. On June 14, 2001, the Asbestos Property Damage Claimants Committee ("PD Committee") and the Asbestos Personal Injury Claimants Committee ("PI Committee") filed a motion seeking authorization to prosecute in the Chapter 11 Cases the successor liability and fraudulent transfer claims alleged against Fresenius and the Sealed Air Companies (the "Motion for Authorization") (Dkt. No. 527).

4. On March 12, 2002, the District Court entered an order granting the Motion for Authorization (the "Fraudulent Conveyance Proceedings Order") (Dkt. No. 1789). The Fraudulent Conveyance Proceedings Order also (i) instructed the PD Committee and the PI Committee to file their putative claims against the Sealed Air Companies and Fresenius as adversary proceedings in the Chapter 11 Cases, (ii) withdrew the reference to the Bankruptcy Court with respect to jurisdiction over such proceedings, and (iii) established a discovery schedule for the proceedings.

5. Successor liability and fraudulent transfer adversary proceedings were subsequently initiated against the Sealed Air Companies and Fresenius in the adversary proceedings entitled *Official Committee of Asbestos Personal Injury Claimants, et al. v. Sealed Air Corp. et al.* (Adv. No. 02-2210) and *Official Committee of Asbestos Personal Injury Claimants, et al. v. Fresenius Medical Care Holdings, Inc., et al.* (Adv. No. 02-2211). Shortly thereafter, Judge Wolin entered an order consolidating the two proceedings into one adversary proceeding, under Case No. 02-2210 (the "Consolidated Adversary Proceeding"). *See* Order, dated March 28, 2002 (Dkt. No. 5). Judge Wolin thereafter directed briefing and held hearings in the Consolidated Adversary Proceeding.

**Settlement of Claims**

6. On November 27, 2002, the parties to the Consolidated Adversary Proceeding reached agreements in principle to settle the putative successor liability and fraudulent conveyance claims alleged against the Sealed Air Companies and Fresenius. Debtors, however, were not parties to the agreement in principle with the Sealed Air Companies. Thereafter, negotiations among the PI and PD Committees, the Sealed Air Companies, and Debtors ensued over the terms of the settlement between the PI and PD Committees and the Sealed Air Companies.

7. On November 26, 2003, the PI and PD Committees and the Sealed Air Companies in the District Court filed a motion seeking approval of the settlement agreement (the "Sealed Air Settlement Agreement," a copy of which is annexed hereto as Exh. A), pursuant to Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9019 (Adv. Dkt. No. 597) (the "Sealed Air Settlement Motion"). Due to a stay imposed in connection with proceedings seeking to have Judge Wolin removed from the Chapter 11 Cases, no objection deadline or hearing date has ever been set for the Sealed Air Settlement Motion, and it remains pending before the District Court.[1]

8. Although Debtors had participated in negotiations to determine whether they would become parties to the Sealed Air Settlement Agreement, such negotiations were not successful and Debtors are not signatories to that agreement.

---

[1] On November 24, 2004, Debtors filed a motion, which is currently pending before the District Court, seeking the referral of the Sealed Air Settlement Motion to this Court (the "Referral Motion"). The Sealed Air Companies do not object to the Referral Motion.

3

**Terms of the Sealed Air Settlement Agreement**

9. Under the terms of the Sealed Air Settlement Agreement, Cryovac, Inc. would make the following payments – worth approximately $1 billion – upon entry of a final order confirming a Chapter 11 plan in these cases (which plan and confirmation Order must be consistent with the terms of the Sealed Air Settlement Agreement): (i) $512.5 million in cash, plus interest thereon from December 21, 2002 until the Plan's effective date at a rate of 5.5% per annum compounded annually and (ii) 9 million shares of Sealed Air common stock (the "Sealed Air Settlement Payment").

10. Among other things, the Sealed Air Settlement Payment is conditioned upon the happening of a large number of events set forth in paragraph II of the Sealed Air Settlement Agreement. These conditions include, *inter alia*, that:

- the reorganization plan shall provide that the Sealed Air Companies "shall receive the full benefit of an injunction under sections 524(g) and 105(a) of the Bankruptcy Code" (paragraph II(c)(vi));

- the section 524(g) trust or trusts created under the plan shall be prohibited from taking certain actions that are inconsistent with Cryovac, Inc. being treated as a transferor to such trust(s) (paragraph II (c)(ix)) or the Sealed Air Settlement Payment "being treated as an ordinary and necessary expense incurred by Cryovac, Inc." (paragraph II(c)(xi)); and

- a Tax Sharing Agreement by and among W.R. Grace & Co., W.R. Grace & Co. – Conn. and Sealed Air, dated as of March 30, 1998 (the "Sealed Air Tax Agreement") shall be assumed by Debtors pursuant to Section 365 of the Bankruptcy Code (paragraph II(c)(xii)).

11. The Sealed Air Settlement Agreement also requires the PI and PD Committees to use their best efforts to cause any plan of reorganization and plan confirmation order to "structure the transactions contemplated by this [Sealed Air Settlement] Agreement to achieve favorable tax treatment to Cryovac, Inc. and its Affiliates, as set forth in paragraphs II(a) and (b)" (paragraph VI(a)). In furtherance of

this requirement, certain obligations are imposed upon Debtors pursuant to paragraphs VI(h), (i), (j), and (k). The Sealed Air Companies estimate that this favorable tax treatment intended for them is worth in excess of $300 million.

12. In addition to other conditions, the Sealed Air Companies' obligation to conclude the settlement set forth in the Sealed Air Settlement Agreement is contingent upon the entry of a Final Order[2] approving the Sealed Air Settlement Agreement (paragraph VII(a)).

13. As noted above, Debtors have made, and the Sealed Air Companies do not oppose, the Referral Motion, requesting that proceedings to approve the Sealed Air Settlement Agreement be referred from the District Court to this Court.

**Inconsistencies with the Sealed Air Settlement Agreement
Make the Proposed Plan Illusory and Non-Confirmable**

14. On November 13, 2004, Debtors filed the Disclosure Statement (Dkt. No. 6896) and the Proposed Plan (Dkt. No. 6895).

15. As set forth in the Proposed Plan and Disclosure Statement, the Sealed Air Settlement Payment is clearly the cornerstone of the Proposed Plan because it provides for – and relies upon – the Sealed Air Settlement Payment (approximating $1 billion, consisting of cash and Sealed Air stock) into a section 524(g) asbestos trust to fund the Asbestos PI-SE Class Fund, the Asbestos PD Class Fund, and the Asbestos Trust Expenses Fund, all of which are to be established by the Proposed Plan.

---

[2] As set forth in paragraph I(ii) of the Sealed Air Settlement Agreement, a "Final Order" is "an order or judgment, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or to seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed, or if filed, remains pending."

16. Indeed, Debtors' own section 524(g) trust fund payments (the "Debtors' Payment," as defined in the Glossary of Defined Terms) will only be used to the extent that the Sealed Air Settlement Payment is insufficient to fund the various asbestos trust funds. (Plan § 7.2.2)

17. Debtors nevertheless have indicated they have certain "issues" with some provisions of the Sealed Air Settlement Agreement and propose to seek certain modifications thereof. (*See* Referral Motion at ¶ 22; Disclosure Statement at ¶ 2.5.2.) Debtors fail to disclose, however, that most of these "issues" were previously proposed by Debtors and rejected by the Sealed Air Companies when Debtors participated in negotiations leading up to the Sealed Air Settlement Agreement. As noted above, at that time, no agreement was reached with Debtors and, accordingly, they were not parties to the Sealed Air Settlement Agreement. Evidently, Debtors are now attempting to gain through the Proposed Plan what they were previously unable to obtain through negotiation. As set forth below, the Sealed Air Companies do not intend to consent to the modifications to the Sealed Air Settlement Agreement that Debtors seek.

18. In sum, the Proposed Plan is materially inconsistent with the Sealed Air Settlement Agreement because the Proposed Plan includes terms that conflict directly with the Sealed Air Settlement Agreement or ignores obligations of Debtors that are specifically required by the Sealed Air Settlement Agreement.

19. Accordingly, unless the Sealed Air Settlement Agreement is approved in the form presented in the Sealed Air Settlement Motion and unless the conditions in paragraph II and Debtors' obligations in paragraph VI of the Sealed Air Settlement Agreement are incorporated into the Proposed Plan, the Sealed Air Settlement

Payment will not be required to be made – and will not be made.  In these circumstances, the Proposed Plan is illusory, non-confirmable, and not feasible.

**Standards for Approval of Disclosure Statement**

20. A disclosure statement may only be approved if it includes "adequate information."  11 U.S.C. § 1125(b); *In re Forrest Hills Associates, Ltd.*, 18 B.R. 104 (Bankr. D. Del. 1982).  The general purpose of a disclosure statement is to provide "adequate information" to enable "impaired" classes of creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan.  *General Electric Credit Corp. v. Nardulli & Sons, Inc.*, 836 F.2d 184, 188 (3d Cir. 1988); *In re Phoenix Petroleum Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001).  It was the intention of Congress that "precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis."  H.R. Rep. No. 595, 95th Cong., 1st Sess. 408 (1977).  *See* 11 U.S.C. § 1125(a)(1), 1978 Notes.

21. The adequacy of disclosure is dependent upon various factors including (i) the size and complexity of the Chapter 11 case, (ii) the type of plan proposed, (iii) the type of creditors and claims impaired by the proposed plan, and (iv) the access by impaired creditors to relevant information from other sources.  *In re Monroe Well Serv., Inc.*, 80 B.R. 324, 330 (Bankr. E.D. Pa. 1987).

22. It is well accepted that "a court may disapprove of a disclosure statement, even if it provides adequate information about a proposed plan, if the plan could not possibly be confirmed."  *In re Main Street AC, Inc.*, 234 B.R. 771, 775 (Bankr. N.D. Cal. 1999); *In re Curtis Ctr. Ltd. P'ship*, 195 B.R. 631, 638 (Bankr. E.D. Pa. 1996); *In re 266 Washington Assocs.*, 141 B.R. 275, 288 (Bankr. E.D.N.Y.), *aff'd*, 147 B.R. 827

(E.D.N.Y. 1992); *In re Valrico Square Ltd. P'ship*, 113 B.R. 794, 795-796 (Bankr. S.D. Fla. 1990).

23. A disclosure statement that describes a plan that cannot be confirmed should not be approved because undertaking the burden and expense of plan distribution and vote solicitation is unwise and inappropriate. *Phoenix Petroleum*, 278 B.R. at 394; *In re Dakota Rail, Inc.*, 104 B. R. 138, 143 (Bankr. D. Minn. 1989).

**The Disclosure Statement Fails to Disclose
That the Proposed Plan Is Illusory Because It Is
<u>Inconsistent with the Sealed Air Settlement Agreement</u>**

24. The Disclosure Statement is illusory because it fails to disclose the following material inconsistencies between the Sealed Air Settlement Agreement and the Proposed Plan:

(a) <u>Identity of Payor.</u> The payor required by the Sealed Air Settlement Agreement is different than the payor in the Proposed Plan. The Proposed Plan provides at § 7.2.2 that "Sealed Air shall fund the Sealed Air Payment . . . ." Paragraph 170 of the Glossary of Defined Terms defines Sealed Air as "Sealed Air Corporation and Cryovac, Inc." The Sealed Air Settlement Agreement, however, specifically and unambiguously provides that only ***Cryovac, Inc.*** shall make the Sealed Air Settlement Payment and that Sealed Air Corporation shall guarantee the performance of the obligation of Cryovac, Inc. to make such payment (paragraph II(a)). Further, paragraph II(c) of the Sealed Air Settlement Agreement provides that the obligation of ***Cryovac, Inc.*** to make the payment is conditioned upon the happening of all of the events enumerated in that paragraph. The Disclosure Statement does not disclose these

8

significant inconsistencies between the terms of the Proposed Plan and the Sealed Air Settlement Agreement.

(b) <u>Channeling Injunction Relief.</u> The Proposed Plan provides for a channeling injunction that conflicts with the requirements of the Sealed Air Settlement Agreement. Various subparagraphs of paragraph II(c) of the Sealed Air Settlement Agreement require the establishment and continuation of section 524(g) trusts, and the receipt by the Sealed Air Companies of "the full benefit of an injunction under sections 524(g) and 105(a) of the Bankruptcy Code." (Paragraph II(c)(vi); *see also* II(c)(viii), (ix), (x), (xi).) Although the Disclosure Statement appears to describe injunctive relief that comports with the requirements of the Sealed Air Settlement Agreement (*see, e.g.*, Disclosure Statement paragraph 4.8.2), the Debtors' Glossary of Defined Terms, at paragraph 7, defines "Asbestos Channeling Injunction" as the "order(s) entered or affirmed by the District Court, in accordance with and pursuant to Bankruptcy Code §§ 524(g), 105(a) and/*or* 1141 *or otherwise* . . . ." (emphasis added). The definition's use of the disjunctive term "or" creates the possibility that Debtors may seek an Asbestos Channeling Injunction that is not grounded in Bankruptcy Code §§ 524(g) *and* 105(a). The Disclosure Statement does not disclose this significant inconsistency between the Proposed Plan and the Sealed Air Settlement Agreement.

(c) <u>Assumption of Sealed Air Tax Agreement.</u> There is no provision in the Proposed Plan for assumption of the Sealed Air Tax Agreement by Debtors. The Sealed Air Settlement Agreement provides that a condition to the Sealed Air Settlement Payment is the assumption by Debtors of the Sealed Air Tax Agreement. (Paragraph II(c)(xii).) Section 10.2 of the Proposed Plan, however, reserves for Debtors

9

a right for 30 days after the Confirmation Date to reject executory contracts. The Proposed Plan does not provide that the Sealed Air Tax Agreement is not an executory contract, or that it is to be excluded from the list of executory contracts that may be rejected. The Disclosure Statement fails to disclose this inconsistency between the terms of the Proposed Plan and the Sealed Air Settlement Agreement.

(d)  <u>Unilateral Reservation of the Right To Ignore the Terms of the Sealed Air Settlement Agreement.</u>  In the last paragraph of § 11.6 of the Proposed Plan, Debtors and Reorganized Debtors reserve to themselves unilaterally the right to take positions inconsistent with the Sealed Air Settlement Agreement if they "reasonably believe in their professional judgment that the taking of such action or the failure to take an action would expose the Debtors or the Reorganized Debtors to potential civil or criminal liability." Stated otherwise, pursuant to the Proposed Plan, Debtors would not bind themselves to the provisions of paragraphs VI(h), (i), (j), (k), and (l) of the Sealed Air Settlement Agreement. Even if Debtors were to argue that the Proposed Plan somehow provides for an assumption by them of such provisions, any such assumption would be illusory. The Disclosure Statement fails to disclose this blatant inconsistency between the Proposed Plan and the Sealed Air Settlement Agreement.

### The Proposed Plan Is Also Not Feasible Because Debtors Fail to Disclose That Their Consent to Be Bound by the Sealed Air Settlement Agreement Is Subject to Debtors' Unilateral Withdrawal

25. The first paragraph of § 11.6 of the Proposed Plan provides, *inter alia*, that Debtors, Reorganized Debtors, and the Asbestos Trust shall treat the Sealed Air Settlement Payment as an ordinary and necessary expense of the Sealed Air Companies. Section 11.6 further (a) prohibits Debtors, Reorganized Debtors, and the Asbestos Trust

from taking any "Defined Actions" (as that term is defined in paragraph I(dd) of the Sealed Air Settlement Agreement) that are inconsistent with the Sealed Air Settlement Agreement and (b) requires them to take all "Defined Actions" reasonably requested by the Sealed Air Companies, subject to certain conditions. The first paragraph of § 11.6 also provides that tax returns of Debtors, Reorganized Debtors, and the Asbestos Trust are required to be consistent with the Sealed Air Settlement Agreement and Debtors are required to use their best efforts to "structure the transactions contemplated by the Sealed Air Settlement Agreement to achieve favorable tax treatment to . . . Sealed Air."

26. The second paragraph of § 11.6 of the Proposed Plan in substance requires Debtors, Reorganized Debtors, and the Asbestos Trust to notify the Sealed Air Companies promptly of any notice of a threatened or pending challenge by any tax authority to the foregoing tax treatment, and entitles the Sealed Air Companies to participate in any such challenge.

27. The third paragraph of § 11.6 of the Proposed Plan requires Debtors to account in their books and records for the liabilities satisfied by the Sealed Air Settlement Payment and the transfer of such payment to the Asbestos Trust in a manner consistent with the Sealed Air Settlement Agreement.

28. The foregoing provisions, on their face, appear to be consistent with paragraph VI of the Sealed Air Settlement Agreement (*see, e.g.,* paragraphs VI(b) and (g) regarding tax and financial reporting; VI(c) regarding tax controversies; and VI(e) regarding financial reporting).

29. The Disclosure Statement, however, fails to disclose that the foregoing provisions in the Proposed Plan are illusory because, as noted above, in the last

paragraph of § 11.6 of the Proposed Plan, Debtors and Reorganized Debtors give themselves the unilateral right to take positions inconsistent with the Sealed Air Settlement Agreement – the last sentence of § 11.6 being a term that Debtors tried, unsuccessfully, to negotiate into the Sealed Air Settlement Agreement before it was finalized.

30. The Disclosure Statement also fails to disclose that the Sealed Air Settlement Agreement already provides an objective standard for protecting Debtors and Reorganized Debtors if a tax and reporting obligation issue arises in connection with the transactions required by the Sealed Air Settlement Agreement. For example, if Debtors were to notify Sealed Air that they did not agree that the Sealed Air Settlement Payment constituted an ordinary and necessary expense of Cryovac, Inc., then Debtors would not have to treat the Sealed Air Settlement Payment in the manner required in the Sealed Air Settlement Agreement unless Sealed Air delivered a tax opinion, addressed to Debtors from a nationally recognized law firm (or similar writing from a nationally recognized accounting firm, in the case of financial reporting issues), to the effect that there is "substantial authority" for the position that Debtors and Reorganized Debtors are obligated to undertake (or, in the case of a financial reporting matter, "not inconsistent with generally accepted accounting principles").[3] Sealed Air Settlement Agreement, paragraph I(ooo); *see id.*, paragraphs VI(b) (the provisos to the first and second sentences) and VI(g).

---

[3] "Substantial authority" is the standard that generally avoids the imposition of penalties for federal income tax purposes.

31. Additionally, the Disclosure Statement fails to disclose that the Sealed Air Settlement Agreement includes a provision requiring Debtors to raise tax and reporting issues with Sealed Air *prior to* incurring the expense of obtaining a legal opinion or other written advice. *See* Sealed Air Settlement Agreement, paragraph VI(f). In other words, the Sealed Air Settlement Agreement contemplates that Debtors and Sealed Air will consult with each other in order to avoid any unnecessary misunderstandings and to avoid, to the extent possible, the "dueling experts" problem that sometimes arises in these situations.

32. The Disclosure Statement also fails to disclose that "consistency provisions" like those included in the Sealed Air Settlement Agreement are typical in agreements regarding tax and financial reporting treatment. Indeed, the Disclosure Statement fails to disclose that Debtors used similar "consistency" approaches, and undertook similar "consistency" obligations, in their corporate transactions with Fresenius and Sealed Air in 1996 and 1998, respectively. Thus, in Section 2.01 of the Tax Sharing and Indemnification Agreement, dated as of September 27, 1996, by and among W.R. Grace & Co., W.R. Grace & Co.-Conn. and Fresenius AG (the "Fresenius Tax Agreement"), required tax filings were to be consistent with certain specified characterizations of the transactions being engaged in by the parties.

33. Similarly, section 4.04 of the Fresenius Tax Agreement provides that:

> Grace-Conn. shall, and shall cause each Grace-Conn. Group member to, comply with and *take no action inconsistent* with the Grace Representation Letter. Fresenius AG and Grace shall, and shall cause each NMC Group member to, comply with and *take no action inconsistent* with the Grace Representation Letter.

(Emphasis added.)

34. Debtors likewise agreed to provisions requiring consistent treatment and reporting in the Sealed Air Tax Agreement. Moreover, the Sealed Air Tax Agreement (like the Sealed Air Settlement Agreement) contained a dispute resolution provision among the parties with respect to reporting of an item. Section 6.7 of the Sealed Air Tax Agreement provided for resolution of disputes generally by "a Big Six public accounting firm or a law firm or by any other procedure" agreed by the parties.

35. The Sealed Air Settlement Agreement mirrors this approach, using the opinion of a law firm or the advice of a nationally recognized accounting firm – as was done in the Sealed Air Tax Agreement to which Debtors were parties. The only limitation that the Sealed Air Settlement Agreement and the Sealed Air Tax Agreement impose on Debtors – and the one to which Debtors object – is that they cannot change consistency provisions unilaterally.

36. Thus, the Disclosure Statement fails to disclose (a) the illusory nature of Debtors' consent to consistency, (b) that the approach they now proffer was previously rejected by the Sealed Air Companies, (c) that the Sealed Air Settlement Agreement provides a typical and objective standard for releasing Debtors from their obligations under that agreement, and (d) that Debtors' unilateral subjective approach is inconsistent with the Sealed Air Settlement Agreement.

**The Disclosure Statement Fails to Disclose That the
Proposed Plan Must Be Conformed to the Sealed Air
<u>Settlement Agreement to Avoid Inconsistency and Ambiguity</u>**

37. As previously noted herein, if the Proposed Plan is effectuated consistent with the Sealed Air Settlement Agreement, then the Sealed Air Companies, through Cryovac, Inc., will be obligated to fund the section 524(g) asbestos trust funds

with settlement consideration of approximately $1 billion. In return for this consideration, the Sealed Air Companies essentially seek: (1) complete repose and total insulation from all liability arising out of Debtors' manufacture, distribution, or sale of products containing asbestos and its mining and processing of vermiculite; and (2) favorable tax treatment of the Sealed Air Settlement Payment.

38. The Disclosure Statement fails to disclose that the Sealed Air Companies, through Cryovac, Inc., are not required to fund the Sealed Air Settlement Payment because the Proposed Plan is inconsistent with the Sealed Air Settlement Agreement. Accordingly, the Disclosure Statement also fails to disclose that the Proposed Plan is illusory, non-confirmable, and not feasible because of (a) its failure to incorporate certain conditions to the Sealed Air Settlement Payment, (b) ambiguities created by conflicting provisions between various Proposed Plan documents, (c) ambiguities arising out of the difference between Proposed Plan definitions and Sealed Air Settlement Agreement definitions, and (d) outright conflicts between the Proposed Plan or the Disclosure Statement and the Sealed Air Settlement Agreement – all of which place in issue the question whether the Sealed Air Settlement Payment will ever become due, as well as the Sealed Air Companies' rights and obligations once such payment has been made.

### The Disclosure Statement Fails to Disclose That Debtors' Objections to the Sealed Air Settlement Agreement Are Either Wrong or Unexplained

39. The Disclosure Statement fails to explain and disclose certain of Debtors' contentions that concern the Sealed Air Settlement Agreement. In paragraph 2.5.2 of the Disclosure Statement, Debtors state, without explanation, that "the Sealed Air

Settlement Agreement . . . potentially expos[es] the Debtors and non-asbestos Claimants to . . . the obligation to pay Sealed Air approximately $146 million for tax benefits prior to their realization . . . ."  The Sealed Air Companies are at a loss as to the derivation of this contention unless Debtors are claiming that such an obligation arises out of paragraph VI(h) of the Sealed Air Settlement Agreement.  If that is Debtors' position, it is, at best, grossly misleading for the following reasons, thereby rendering the Disclosure Statement inaccurate.

40. Paragraph VI(h) of the Sealed Air Settlement Agreement requires no payment to Cryovac, Inc.[4] unless Debtors have ***actually*** reduced the amount of taxes payable by them as a result of a tax benefit that is the subject of the Sealed Air Settlement Agreement.  In other words, Debtors would never be liable to transfer funds to Cryovac, Inc. unless and until they have already realized tax benefits – no payment is ever required of Debtors in advance of their obtaining such tax benefits.  Moreover, the amount payable by Debtors pursuant to this provision is adjusted (and, thus, may be reduced) to take into consideration correlative adjustments to the taxes payable by Debtors as a result of the tax benefit.  Furthermore, if the amount of the benefit realized by Debtors is reduced as a result of a tax audit or otherwise, Cryovac, Inc. is obligated to return the amount of such reduction to Debtors.

41. In paragraph 2.5.2 of the Disclosure Statement, Debtors also state without any explanation that the Settlement Agreement "potentially expos[es] the Debtors and non-asbestos Claimants to . . . liability for associated taxes, interest and

---

[4] Sealed Air Corporation is neither a payor nor a payee pursuant to the Sealed Air Settlement Agreement.

penalties thereon . . . ." The Sealed Air Companies have no knowledge as to why Debtors believe that the Sealed Air Settlement Agreement exposes them to such liability. Accordingly, the Sealed Air Companies reserve the right to respond to this assertion when and if Debtors provide an explanation.

42.     Also in paragraph 2.5.2 of the Disclosure Statement, Debtors object to the imposition on them of a "best efforts" standard, stating that the Settlement Agreement "fails to define the meaning of 'best efforts' with sufficient clarity to enable the Debtors to effectively manage federal, state and local income tax audits." This objection to the "best efforts" standard is, to say the least, puzzling. Certainly, it is inadequate to give notice in the Disclosure Statement of Debtors' objection.

43.     The only ongoing requirements (*i.e.*, after the Proposed Plan is confirmed) that subject Debtors to a best efforts standard are to (1) sever tax claims arising in an audit or otherwise such that those involving Cryovac, Inc. or Sealed Air Corporation can be dealt with separately from those that do not (Sealed Air Settlement Agreement, paragraph VI(c)(iii)) and (2) extend the statute of limitations prior to filing a protective claim for a deduction of the payment made by Cryovac, Inc. (Sealed Air Settlement Agreement, paragraph VI(h)).

44.     Moreover, the Disclosure Statement fails to disclose that Debtors themselves have used this standard previously. In the Employee Benefits Allocation Agreement, dated as of March 30, 1998, by and among W.R. Grace & Co., W.R. Grace & Co.-Conn., and Grace Specialty Chemicals, Inc., section 4.03 requires the parties to "use best efforts" to avoid certain employee benefit plans from being disqualified under section 401 of the Internal Revenue Code of 1986.

45. Indeed, other agreements effectuating the 1998 distribution of Debtors and subsequent merger with Sealed Air use a "best efforts" standard in imposing obligations on the parties to those agreements. *See, e.g.,* Agreement and Plan of Merger, dated as of August 14, 1997, by and between W.R. Grace & Co., Packo Acquisition Corp. and Sealed Air Corporation (Section 6.3).

46. For all of these reasons, Debtors have failed to disclose that the "best efforts" discussion in the Disclosure Statement is inaccurate.

### The Trust Agreement Fails to Provide for Many Rights and Obligations Required by Paragraph II of the Sealed Air Settlement Agreement

47. The Disclosure Statement fails to disclose that the WRG Asbestos Trust Agreement (Dkt. No. 6097, Exh. 5, the "Asbestos Trust Agreement") does not include any of the provisions required by the Sealed Air Settlement Agreement. In the first instance, Cryovac, Inc. should be named as a settlor to the Asbestos Trust and to obligate the Trust to the conditions to the Sealed Air Settlement Payment (Sealed Air Settlement Agreement, paragraphs II(a) and II(c) (viii) – (xi)). Further, the Asbestos Trust Agreement should also include provisions requiring the Asbestos Trust to take certain actions (and refrain from taking other actions to the extent not) consistent with the characterization of Cryovac, Inc. as a settlor to the Asbestos Trust.

48. Again, the Disclosure Statement fails to disclose that before the Sealed Air Settlement Payment becomes due, the Asbestos Trust Agreement must be modified to conform to the Sealed Air Settlement Agreement.

**Conclusion**

49. Debtors assert that they "largely agree with the proposed Sealed Air Settlement Agreement" and that they only raise "limited issues with respect to a few provisions." (Referral Motion at ¶ 22.) As has been set forth herein, the Sealed Air Companies believe that the Disclosure Statement fails to disclose that the Proposed Plan is inconsistent, or fails to harmonize, with the Sealed Air Settlement Agreement, thereby rendering it illusory, non-confirmable, and not feasible.

50. The Sealed Air Companies adopt, as if fully set forth herein, all objections to the Disclosure Statement asserted by other parties in interest, to the extent such objections are not inconsistent with the Sealed Air Companies' positions.

51. For all of the foregoing reasons, the Disclosure Statement should not be approved.

Dated: December 21, 2004

                                                  Respectfully submitted:

                                                 Skadden, Arps, Slate, Meagher & Flom LLP
Sheila L. Birnbaum
Henry P. Wasserstein
Bert L. Wolff
Four Times Square
New York, New York  10036-6522
(212) 735-3000

/s/ Mark S. Chehi
Skadden, Arps, Slate, Meagher & Flom LLP
Mark S. Chehi (I.D. No. 2855)
One Rodney Square
Wilmington, Delaware  19899-0636
(302) 651-3000
Attorneys for Sealed Air Corporation
and Cryovac, Inc.