# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., *et al.*<br><br>Debtors. | Chapter 11<br><br>Case No. 01-01139 (JKF)<br><br>(Jointly Administered)<br><br>Hearing Date: January 21, 2005 @ 9:00 a.m.<br>Objection Deadline: December 23, 2004 at 4:00 p.m. (By agreement of the parties) |

## OBJECTION OF THE STATE OF MONTANA DEPARTMENT OF ENVIRONMENTAL QUALITY, DEPARTMENT OF PUBLIC HEALTH AND HUMAN SERVICES AND RISK MANAGEMENT AND TORT DEFENSE DIVISION TO APPROVAL OF THE DISCLOSURE STATEMENT FOR DEBTORS' PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE [DOCKET NO. 6896]

The State of Montana Department of Environmental Quality ("MDEQ"), Department of Public Health and Human Services ("MDPHHS") and Risk Management and Tort Defense Division ("MRMTDD") (sometimes collectively referred to as "the State of Montana"), by and through their undersigned counsel, Monzack and Monaco, PA and James J. Screnar, Assistant Attorney General, hereby file this objection to the Disclosure Statement for Debtors' Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Disclosure Statement") and in support thereof state as follows:

1. On April 2, 2001, the ("Petition Date"), the W.R. Grace & Co., et al. (the "Debtors) filed a petition for relief under Chapter 11 of the United States Bankruptcy Code for the District of Delaware.

2. On or about, March 23, 2003 MDEQ timely filed several proofs of claim each totaling $8,510,022.16 for the costs of remediating contamination by tremolite asbestos, a hazardous or deleterious substance, resulting from the mining of asbestos/contaminated vermiculite from Zonolite Mountain, and/or the processing, transportation, and/or disposal of asbestos-contaminated substances in or near Libby, Montana and Troy, Montana.

3. MDPHHS timely filed two proofs of claim against the Debtors on or about March 23, 2003 in the amounts of $11,824,887.00 and $3,817,681.00 respectively for the cost of future and past Medicaid reimbursement. MDPPHS' proofs of claim was based on a federal statute i.e. 42 U.S.C. § 1396 as well as common law claims, civil federal racketeering, negligence, unjust enrichment, civil conspiracy, strict liability and deceptive trade practices as more fully set forth in the proofs of claim.

4. MRMTDD timely filed a proof of claim on or about March 25, 2003 asserting claims against the Debtor for contribution and indemnification as a result of a law suit filed by nine individuals, all of whom were diagnosed with asbestos disease, against the State of Montana and other defendants. An action, which was filed by miners who had worked at the Libby, Montana facility, originally sued Debtors for their failure to provide a safe working environment. However, Debtors' bankruptcy petition stayed any action against them. The Plaintiffs thereafter sued the State of Montana in the Montana State Court (the "District Court") and alleged that the State of Montana negligently failed to warn them of the known dangers to all mine workers and their families associated with working at the mine, and as a result of the State of Montana's negligence, the miners suffered injuries and damages. The District Court granted the

State of Montana's Motion to Dismiss, concluding the State of Montana had no legal right duty to Plaintiff. Plaintiff's appealed this decision to the Montana Supreme Court which issued an opinion on December 14, 2004 reversing and remanding the District Court's grant of the Motion to Dismiss. See Orr. et al. v State of Montana et al. 2004 MT. 354 (Mont.Supr.Ct., December 14, 2004.)

5. All of the State of Montana's claims as described above stem from the Debtors' ownership and/or operation of the Libby, Montana facility.

## ARGUMENT

### DEBTORS' DISCLOSURE STATEMENT DOES NOT PROVIDE ADEQUATE INFORMATION FOR MATERIAL ISSUES

6. A disclosure statement must contain "adequate information," of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan. See 11 U.S.C. § 1125(a)(1); In re River Village Associates, 181 B.R. 795, 804 (E.D. Pa. 1995). "[T]he general purpose of the disclosure statement is to provide 'adequate information' to enable 'impaired' classes of creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan." In re Phoenix Petroleum Co., 278 B.R. 385, 392-93 (Bankr. E.D. Pa. 2001) ("Phoenix"), citing Century Glove, Inc. v. First American Bank of New York, 860 F.2d 94, 100 (3d Cir.1988); Oneida Motor Freight, Inc. v. United Jersey Bank (In re River Village Assoc.),

181 B.R. 795, 804 (E.D. Pa.1995); In re Monroe Well Service, Inc., 80 B.R. 324, 330 (Bankr. E.D. Pa.1987)).

7. Measured against the standard set by the bankruptcy court in Phoenix, the Debtors herein demonstrably fail. Phoenix detailed a non-exclusive list of "normal topics for inclusion": (1) the events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclosure statement; (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a Chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountants' fees; (13) the collectibility of accounts receivable; (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; (15) information relevant to the risks posed to creditors under the plan; (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (17) litigation likely to arise in a nonbankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of the debtor with affiliates. Under the Phoenix criteria the Disclosure Statement is inadequate for a number of reasons.

8. At Section 2 of the Disclosure Statement, Debtors provide a description of the Debtors' business, asbestos liability and ongoing litigation. However, there is no discussion of any of the State of Montana's claims against the Debtors and how they will

be treated under the Plan. Specifically, there is no discussion on the Orr litigation and the Debtors' potential responsibility for damages nor is there any discussion of Debtors' liability for Medicaid reimbursement.

9. The Plan and Disclosure Statement currently provide for the treatment of holders of general unsecured claims (Class 9). Presumably, the State of Montana's claims are included within this class. Holders of Allowed Class 9 claims shall receive cash (equivalent to 85% of their allowed claim) and common stock (equivalent to 15% of their allowed claim). See Disclosure Statement. §4.3.1.9. The Debtors fail to discuss the State of Montana's position that it is prohibited from accepting stock and corporations as payment of a debt and how its claims will be treated under the Plan as a result of this prohibition. See Article VIII, Section §13(1) of the Montana Constitution.

10. The release, discharge, injunction and exculpation language set forth at Section 4.8 of the Disclosure Statement should acknowledge and provide that the State of Montana is not precluded from enforcing any environmental claims and/or consent decrees that it may have with respect to the Debtors. Similarly, the Disclosure Statement should also discuss the Debtors' obligations to comply with all applicable state and federal environmental laws.

11. Moreover, the Disclosure Statement fails to discuss and explain that the provisions in Section 4.8.6, which automatically release creditor claims against non-debtor are inconsistent with Third Circuit law and incorrectly imply that such non-debtors are not subject to potential environmental liabilities. The Debtors fail to disclose how such provisions violate Sections 524(e) of the Bankruptcy Code as well as the law in this

district.[1] Courts within the Third Circuit have held that non-consensual non-debtor releases are not permitted under the Bankruptcy Code. See In re: Continental Airlines, 203 F.3d. 203, 214 n.11 (3d Cir. 2000) (citing In re Zenith Electronics Corp., 241 B.R. 92, 111 (Bankr. D. Del. 1999); In re Arrowmill Dev. Corp., 211 B.R. 497, 506-507 (Bankr. D. N.J. 1997). ("The bankruptcy laws do not operate as a method to relieve a non-debtor from potential liabilities stemming from lawsuits against them". Id. (citing In re Elsinore Shore Assoc. 91 B.R. 238 (Bankr. D. N.J. 1988)). The protection afforded by filing for bankruptcy should be extended only to those who invoke the process, and not third party bystanders. See In re Sybaris Clubs Int'l. Inc., 189 B.R. 152, 156 (Bankr. N.D. Ill. 1995).

12.     It is the State of Montana's understanding that the Debtors intend to amend their Disclosure Statement further and it reserves its right to supplement this Objection with respect to any such amended Disclosure Statement.

WHEREFORE, The State of Montana Department of Environmental Quality, Department of Public Health and Human Services and Risk Management and Tort Defense Division, respectfully that the Disclosure Statement not be approved in its current form and the Court grant such other and further relief as is just and proper.

Dated:  December 22, 2004                     MONZACK AND MONACO, PA

                                                                           Francis A. Monaco, Jr. (#2078)
                                                                           1201 N. Orange Street, Suite 400
                                                                           Wilmington, DE 19801
                                                                           (302) 656-8162

---

[1] Section 524(e) of the Bankruptcy Code provides:
        Except as provided in subsection (a)(3) of this Section, discharge of a debt of the Debtor does not affect the liabilities of any other entity on, or the property of any entity for, such debt.

-and-

James J. Screnar, Asst. Attorney General
State of Montana Department of Justice
1712 Ninth Avenue
P.O. Box 201440
Helena, MT 59620-1449