IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-01139 (JKF) |
|  | ) | Jointly Administered |
| Debtor. | ) |  |
|  | ) |  |
|  | ) | **Related Docket Nos. 6896, 6898, 6899, and 6900** |

## LIBBY CLAIMANTS' OBJECTION TO DISCLOSURE STATEMENT, ESTIMATION MOTION, CASE MANAGEMENT MOTION AND RELATED PLEADINGS

The claimants injured by exposure to tremolite asbestos from the Debtors' operations near Libby, Montana[1] (the "Libby Claimants"), by and through their counsel, Cohn & Whitesell LLP and Landis Rath & Cobb LLP, hereby object to the Disclosure Statement for Debtors' Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code dated November 13, 2004 [Docket No. 6896] (the "Disclosure Statement"); Debtors' Motion for Entry of a Case Management Order Establishing Protocols for Litigating Asbestos-Related Claims Following Plan Confirmation dated November 13, 2004 [Docket No. 6898] (the "Case Management Motion"); Debtors' Motion for Entry of an Order Seeking the Estimation of Asbestos Claims and Certain Related Relief dated November 13, 2004 [Docket No. 6899] (the "Estimation Motion"); and Debtors' Motion for Entry of an Order Approving Solicitation and Confirmation Procedures

---

[1] As identified in the Verified Statement in Connection with the Representation of Creditors as Required by Fed. R. Bankr. P. 2019 dated December 21, 2004 [Docket No. 7287] filed in Case No. 01-01139 (JFK), as it may be amended and supplemented from time to time.

and Schedule dated November 13, 2004 [Docket No. 6900] (the "Solicitation Motion").[2]  In

support of this Objection, the Libby Claimants state:

## I.    The Plan Process

1.    On June 16, 2004, with Grace having been in Chapter 11 more than three years,

this Court allowed Grace's sixth motion to extend exclusivity, but instructed the Debtors to file a

disclosure statement and plan of reorganization by October 14, 2004 [Docket No. 5820].  Based

on the Debtors' representation that meaningful negotiations were underway with the official

committees representing asbestos creditors, this Court granted a further extension of the

exclusivity period until November 15, 2004 [Docket Nos. 6641 and 6734].

2.    On November 13, 2004, the Debtors filed the Debtors' Plan of Reorganization

dated November 13, 2004 (the "Plan"), and the related Disclosure Statement, Case Management

Motion, Estimation Motion, and Solicitation and Confirmation Procedures Motion (collectively,

the "Plan-Related Pleadings").  Review of these pleadings as they relate to the Libby Claimants

indicates that rather than sincerely attempting to address the claims of the Libby Claimants

("Libby Claims"), Grace has devised a mere stratagem designed to disenfranchise and disallow

claims that any objective observer would characterize as legitimate—indeed, from the victims'

standpoint, horrific—personal injury claims.

## II.    The Libby Claimants

3.    Nowhere have the effects of asbestos been so devastating as in Libby, Montana –

a town of about 2,600 residents.  From 1963 to 1990, Grace owned and operated a mining and

---

[2]  In addition to the objections set forth herein, the Libby Claimants also join in the objections to the Disclosure Statement, Case Management Motion, Estimation Motion, and Solicitation Motion filed by the Official Committee of Asbestos Personal Injury Claimants.  Furthermore, given that the Disclosure Statement falls far short of containing adequate information as required by 11 U.S.C. § 1125 and that the Libby Claimants hope and expect to receive other additional information concerning the Plan and Plan-Related Pleadings necessary to fully understand such documents, their affect on the Libby Claimants, and potential grounds for objection thereto, the Libby Claimants reserve their right to assert other and further objections to the Plan and Plan-Related Pleadings.

393.001-6264.doc

manufacturing facility in Libby, at which it produced vermiculite, an ore that was used to create zonolite, an insulation and construction material. But the vermiculite ore also contained dangerous levels of tremolite asbestos.[3]

4.      Before Grace acquired the mine, it was operated by The Zonolite Company, which is now known as Montana Vermiculite Company and is inactive. From the 1920's forward, the operators of the Libby mine knew of the asbestos in the vermiculite ore. In fact, from the 1950's forward the State of Montana, Division of Disease Control, performed industrial hygiene inspections that repeatedly resulted in reports finding asbestos levels far in excess of the standard, and citing medical literature on the hazards of asbestos. The State reports also listed many recommendations on dust control. But the recommendations were not followed and, even after Grace recognized that the asbestos was toxic and fatal, and "a serious hazard," the workers were not told of the inspection reports, or the asbestos hazard. Over the years, as inspections continued, the State repeatedly objected to poor progress on dust control. Such steps as were taken to address the problem were inadequate. The Libby operation remained hazardous to its workers and the community until after it was shut down in 1990.

5.      Tremolite asbestos—the type found at Libby—is far more deadly than the more common chrysotile asbestos. Over 95 percent of the asbestos used in construction materials was chrysotile asbestos. As a result, the vast majority of asbestos disease is due to chrysotile exposure. Chrysotile is a serpentine asbestos; viewed under a microscope, its fibers have a curlicue shape. Tremolite asbestos is amphibole asbestos; the amphiboles are long, sharp spear-like fibers, which migrate more readily through the structure of the lung to the pleura (the lining of the lung), and cause pleural disease. Studies have indicated that tremolite asbestos is roughly

---

[3] Although Grace has manufactured products that contain asbestos as a working ingredient, the asbestos in the Libby Mine was essentially a waste product.

393.001-6264.doc

five to ten times as fibrogenic (asbestosis causing) as chrysotile asbestos, that pleural disease resulting from Libby tremolite asbestos is much more highly progressive (meaning that the victim has a far greater chance of progressing from mild to moderate to severe disease) and that patients can die of tremolite pleural disease without evidence of interstitial disease, which is regarded as the next step after pleural disease in the progressivity of asbestosis and (in the case of chrysotile asbestos) seldom causes death unless the disease develops further or the patient develops cancer.  Tremolite asbestos is ten times as carcinogenic as chrysotile asbestos, and hundreds of times more productive of mesothelioma, the type of lung cancer specific to asbestos.

6.      Hundreds of Libby residents – workers at the Libby mine, their families, and townspeople who had the misfortune to breathe the dust-laden air – have been diagnosed with Libby tremolite asbestos disease ("Libby Tremolite Disease").  Over 200 people have died of Libby Tremolite Disease and others are at or approaching the end stage of the disease.

7.      In addition to the particular severity of Libby Tremolite Disease, the Libby Claimants carry an additional burden not borne by most other asbestos claimants in the Grace bankruptcy case.  Where most asbestos claimants may seek recovery from multiple producers of asbestos products, the Libby Claimants' claims result from exposure to a single source of asbestos, thus limiting the range of potential sources of recovery.

8.      For the Libby Claimants, there is no question concerning exposure to Grace's asbestos or Grace's responsibility for the Libby Claimants' injury.  Grace recently admitted to the Court of Appeals for the Ninth Circuit that "[t]here is no question, and Grace does not deny, that workplace conditions at the Libby mill . . . were dangerous, and tragically caused or contributed to disease and/or death as a result of asbestos exposure."[4]

---

[4]  U.S. v. W.R. Grace & Co., No. 03-35924 (9th Cir.), Appellant's Brief dated April 26, 2004, at 8.  Grace referred to the period through 1974.

9.    For these reasons—the known severity of Libby Tremolite Disease, the Libby Claimants having Grace as their sole source of exposure, and Grace's admitted responsibility for the Libby Claimants' injuries—the proposed treatment of the claims of the Libby Claimants (the "Libby Claims") under the Plan and Plan-Related Pleadings provides a good litmus test as to whether Grace has sincerely attempted to address its asbestos liabilities or is merely paying lip service to the Court's requirement to move forward with the plan process. Although the Plan-Related Pleadings bear some formal resemblance to documents that have been used in consensual-plan asbestos cases, an examination of the Plan-Related Pleadings as they relate to the Libby Claims leaves no doubt that Grace has made no attempt whatsoever to provide a fair or even legally-sufficient proposal.

### III.    Objections

10.    The Plan-Related Pleadings (a) are erroneously premised on the legally incorrect position that the Plan does not impair Libby Claims; (b) are designed to exclude the Libby Claims (as well as other legitimate claims) by fabricating substantive standards and procedural obstacles; (c) depart from the norms established in other asbestos cases by making no attempt to provide compensation based on historical verdicts and settlements, and by making no provision for the fact that Grace represents the Libby Claimants' sole source of exposure; and (d) contain woefully inadequate disclosures.

### A.    The Libby Claimants are Impaired Under the Plan

11.    Section 1124 of the Bankruptcy Code governs the determination of whether a claim or interest is impaired under a plan. 11 U.S.C. § 1124. According to Section 1124, "a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan – (1) leaves unaltered the legal, equitable, and contractual rights to which

5

such claim or interest entitled the holder of such claim or interest . . . ." Id. Under the Plan and

the Plan-Related Pleadings, it is unquestionable that the Libby Claimants' legal rights have been

altered.

12.     By channeling the Asbestos PI-SE claims to the Asbestos Trust, Grace relieves

itself of liability for such claims while shifting from itself to the Holders of Asbestos Claims

(which includes the Libby Claims) the risk of whether the value and cash-generating ability of

the property placed in the Asbestos Trust (Asbestos PI-SE Class Fund) will be sufficient to pay

the claims. This in itself is most definitely a change in the legal, equitable and contractual rights

of the Holders of Asbestos Claims, so they must be allowed to vote on the Plan. The provisions

of the Plan-Related Pleadings described below—whereby Grace has attempted to exclude, under-

value or place roadblocks to recovery of Libby Claims—are, if permissible at all, also a form of

impairment. Moreover, without regard to whether Holders of Asbestos Claims are unimpaired

within the meaning of Section 1124, they must be allowed to vote on the Plan because

establishment of a trust pursuant to Section 524(g) of the Bankruptcy Code, as Grace proposes,

requires the actual vote (not presumed acceptance under Section 1126(f)) of a super-majority of

the claimants affected thereby. 11 U.S.C. § 524(g). The Libby Claimants support the arguments

of the Asbestos PI Committee on these points and will not repeat them here.

### B.     The Plan and Plan-Related Pleadings are Designed to Exclude the Libby Claims and Other Legitimate Claims

13.     The Plan-Related Pleadings aim to unfairly limit Grace's asbestos liability. Under

the guise of a process to determine and pay asbestos claims, Grace has concocted a claims

procedure that will under-allow or totally exclude legitimate claims, including Libby Claims. It

is a fundamental principle of bankruptcy law that (except for express limitations on allowance of

claims such as are found in Section 502(b) of the Bankruptcy Code) the validity of claims is

6

determined under applicable non-bankruptcy law. Butner v. United States, 440 U.S. 48 (1979). Flouting this requirement, the Plan-Related Pleadings impose disease classifications and evidentiary requirements that seem designed—and will inevitably have the effect—of excluding or under-valuing claims permitted under state law and which have historically resulted in substantial verdicts and settlements.

a.  **The Plan and Plan-Related Pleadings fail to recognize the highly progressive and deadly nature of pleural disease in Libby**

14.    Similar to Trust Distribution Procedures utilized in other asbestos cases, under the PI-SE Trust Distribution Procedures (the "TDP") proposed by the Plan, pleural disease falls with the least severe disease category – Asbestosis (Level 1).   However, Libby pleural disease is different than the pleural disease in other asbestos cases, and so requires separate disease categories and criteria.   As noted above, tremolite asbestos is far more carcinogenic and fibrogenic than chrysotile asbestos.   A person diagnosed with Libby Tremolite Disease has approximately a 76 percent likelihood of progressing to severe disease—about three times the progressivity rate for chrysotile asbestos disease.   Victims of advanced Libby Tremolite Disease die of strangulation as their lungs become unable to take in enough oxygen to support life. About half die of asbestos lung cancer.

15.    Not surprisingly, the highly progressive and deadly nature of pleural disease in Libby has resulted in historical verdicts and settlements that are far greater than for pleural disease in other asbestos cases. Libby average settlements for pleural disease have ranged from $212,000 (unimpaired claimant) to $343,000 (impaired claimant).   In contrast, the scheduled value for pleural disease under the proposed TDP is fixed at $4,459 for all claimants.   A similar disparity is apparent in the category of combination pleural/interstitial disease.   The TDP advanced by Grace fails to differentiate between pleural disease resulting from tremolite asbestos

7

and pleural disease resulting from chrysotile asbestos, and to take account of past settlements between Grace and the Libby Claimants for pleural disease victims by providing a scheduled value that is a mere *one to two percent* of average settlements.    Moreover, the TDP fails to provide a severe category for pleural disease.    No matter how severe the pleural disease becomes, the claimant is forever stuck at Disease Level I.

16.    Any Trust Distribution Procedures established in these cases must place pleural disease resulting from tremolite asbestos in a separate category from pleural disease resulting from chrysotile asbestos, with claim amounts reflecting the relative historical verdicts/settlements for these two very different diseases.

### b.    Pathology required on the dead

17.    Of the Libby Claimants who have died, some did not have pulmonary function testing before their death; and autopsies are extremely uncommon in Libby, as elsewhere.    The Plan imposes a requirement of either pathology or pulmonary function tests in order for a claim to be allowed.    This requirement applies even where the Litigation Option is elected. Accordingly, even where there are no grounds to dispute that Grace's asbestos caused a victims death—indeed, even though the death certificate may state "asbestosis" or "asbestos pleural disease"—no claim can be made *unless* Grace expects the deceased Libby Claimant to be exhumed, which would of course be unacceptable and goes beyond any requirement imposed in the tort system.

### c.    X-Ray reading by certified B-reader

18.    In order for an Asbestos PI-SE Claim to be allowed, the Plan-Related Pleadings require x-ray readings by certified B-readers.    None of the Libby Claimants have had x-rays read by a certified B-reader.    There are no certified B-readers in Montana; indeed, there are only

8

seven in Washington. In the tort system, asbestos disease and its degree of severity are routinely established by pulmonary function tests, not by B-reader readings, which in any event have a record of great inconsistency.[5] The requirement is unrealistic and is simply a way to exclude claimants.

### d.   B2 grade requirement

19.     The International Labour Organization (ILO) developed criteria for grading chest x-rays used to identify pleural thickening in the lining of the lungs. Pursuant to the Plan-Related Pleadings, an ILO grade B2 is required for a pleural disease claim. A B2 grade means that the patient has over 25% lung coverage by pleural thickening and minimum thickness of five millimeters. ILO gradings are done by B-readers. Again, none of the Libby Claimants have B-reader readings. A Libby Claimant can have significant disease without 25% coverage, and some Libby Claimants have already died without five millimeters thickness where the lungs are fully encased. The B2 requirement is objectionable on numerous grounds:

- It is recognized that there is great variability in the B-reader readings.

- There is no literature in support of a correlation between a B2 grade and severity of disease.

- There is no marker on the ILO scale between 0 and 5 millimeters, even though (depending on area of coverage) there will be a vast difference in severity of disease.

- The ILO ratings include nothing on sub-pleural interstitial fibrosis.

It is undisputed in the medical literature that severity of disease is best, and most typically, measured by pulmonary function tests. The B2 grade requirement is simply aimed to exclude legitimate claims.

---

[5] In order to comply with this requirement, all of the Libby Claimants' x-rays would have to be sent out to a B-reader. Even if this Court were to permit such a requirement, it is impracticable for the Libby Claimants to obtain them within the time frame that the Plan-Related Pleadings seek to impose.

393.001-6264.doc

e.    **Blunting of Costophrenic Angle and Bilateral Pleural
Disease requirements**

20.    Pursuant to the Plan and Plan-Related Pleadings, in order to qualify for the lowest

Disease Level of the TDP, blunting of one costophrenic angle is required.  (Costophrenic angles

are the angles formed between the inner surface of the ribs and the dome of the diaphragm.)

Blunting of one costophrenic angle does not necessarily occur in pleural disease.  Similarly, the

bilateral pleural disease requirement of the TDP will act to exclude Libby Claimants; a patient

can have severe lung disease in one lung.  These requirements will exclude many legitimate

claims, including those of Libby Claimants.

f.    **Exclusion of Libby Claimants with severe smoking disease**

21.    Yet another overly exclusionary requirement of the Plan and Plan-Related

Pleadings is that FVC (forced vital capacity) be under 80 and that the ratio of FEV1 (forced

expiratory volume in the first second)/FVC be over 65.  This requirement would exclude patients

with severe asbestos disease who also have severe smoking disease as their ratio of FEV1/FVC

will be under 65.  There is no justification for the complete exclusion of such claims, given that

they are legally sufficient and in the tort system result in substantial verdicts, albeit in some cases

lower than would have been likely for a non-smoker.  Also, because there is an obstructive

component to asbestos disease, even some non-smokers with severe asbestos disease may have a

ratio of FEV1/FVC under 65.  A patient can have severe symptoms based upon a reading of

*either* FVC, TLC (total lung capacity), or DLCO (diffusion capacity).  Only one type of reading

should need to be severe in order to establish an allowable claim.

22.    In sum, there is simply no requirement of law that requires these highly

exclusionary evidentiary standards.  Plaintiffs' verdicts in substantial amounts are returned

without such evidence.  It should be noted that the provisions just described having nothing to do

393.001-6264.doc

with Grace's "war on the unimpaired." Rather, these provisions have the effect of excluding legitimate claims of severely ill people. The pervasiveness of these pernicious provisions indicates that the Plan-Related Pleadings do not seriously attempt to resolve Grace's asbestos liability as it actually exists. Rather, Grace has set itself up to be judge, jury and legislature—designing a new and constricting set of standards for allowance of asbestos claims so as to diminish the magnitude of its true asbestos liability. In so doing, Grace has set itself up in defiance of <u>Butner</u> not to mention fundamental fairness and decency.

### C.    The Plan and Plan-Related Pleadings Make No Attempt to Provide Compensation Based on Historical Settlements and Verdicts and Fail to Recognize that the Libby Claimants have just One Exposure Site

23.    While the Libby Claimants do not necessarily oppose the establishment of a trust, Grace's proposal is inadequate because the proposed TDP fails to take account of the unique aspects of Libby Tremolite Disease and the Libby exposure. The TDP should provide a compensation schedule that fairly reflects settlement and verdict history, as already discussed. And the TDP should make provision for the fact that Grace's operation in Libby represents the Libby Claimants' sole source of exposure.

24.    The typical asbestos claimant, a construction or insulation worker, can often collect from many, even dozens of defendants. By contrast, of the more than 500 Libby Claimants represented by the firm of McGarvey, Heberling in Montana, it is estimated that fewer than five percent have any significant asbestos exposure outside of Libby, Montana. For nearly all of the Libby Claimants, Grace is the only exposure source.[6]

---

[6] Cases are pending against other defendants—such as the State of Montana, the railroad, and Maryland Casualty—but such litigation entails far different risks from claims against a producer of asbestos.

393.001-6264.doc

25.    In other asbestos bankruptcy cases, the special situation of claimants for whom the debtor's operations were the sole source of exposure has been recognized by designating them as "Extraordinary Claims" entitled to a multiple of the distribution otherwise available. (Such distributions are calculated with reference to historical verdict and settlement levels based largely on severity of the claimant's injury.) Because there was just one exposure site, fairness requires that the Libby Claimants receive a multiple of the distribution for which they would otherwise qualify.[7]

### D.    The Disclosure Statement Contains Woefully Inadequate Disclosures

26.    Finally, the Disclosure Statement does not make adequate disclosure as is required by the Bankruptcy Code. 11 U.S.C. § 1125. First, this Court should require disclosure of all respects in which the criteria for allowance and the amount of compensation for asbestos claims under the Plan-Related Pleadings will deviate from the standards, procedures and historical results obtained through the tort system. Second, Grace should be required to disclose the basis for the asbestos fund figures and proposed caps; and in light of the unrealistically low scheduled disease values, such figures should be computed on the basis that virtually all asbestos claimants will elect the Litigation Option. Finally, the description of the tragedy of Libby, Montana glosses over the actual history and Grace's admitted wrongdoing. This Court should require Grace to provide an unvarnished description of its own past misconduct.

---

[7]    The Libby Claimants recognize that if the Plan-Related Pleadings truly provided for the payment in full of all asbestos claims based on historical verdicts and settlements, there would be no need for a multiplier based on Grace being the sole source of exposure. But Grace has made no such proposal and, most likely, any such proposal would not be feasible and would lead to cancellation of all existing equity interests. Under any feasible plan, there will be a need to provide Extraordinary Claims treatment for the Libby Claimants.

393.001-6264.doc

## IV.   <u>Conclusion</u>

27.    Based on the foregoing, the Disclosure Statement and Plan-Related Pleadings should be rejected in their entirety.

Respectfully submitted this 22nd day of December, 2004.

Dated:  December 22, 2004

LANDIS RATH & COBB LLP

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE  19801
(302) 467-4400

and

Daniel C. Cohn
COHN & WHITESELL LLP
101 Arch Street
Boston, MA  02110
(617) 951-2505

Counsel to the Libby Claimants

13

393.001-6264.doc