# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) Case No. 01-1139 (JKF) |
| W.R. GRACE & CO., et al. | ) (Jointly Administered) |
|  | ) |
| Debtors. | ) Related Docket Nos. 6896, 6898, 6899, 6900 |
|  | ) Hearing Date: January 21, 2005 |

## FUTURE CLAIMANTS REPRESENTATIVE'S
## CONSOLIDATED OBJECTION TO DISCLOSURE STATEMENT
## AND PLAN RELATED MOTIONS

David T. Austern, the legal representative for future asbestos claimants (the "Future

Claimants Representative") appointed by this Court in the above-captioned Chapter 11 cases, by

counsel, objects[1] to the Disclosure Statement for Debtors' Plan of Reorganization Pursuant to

Chapter 11 of the United States Bankruptcy Code [Doc. No. 6896] (the "Disclosure Statement"),

Debtors' Motion for Entry of an Order Seeking the Estimation of Asbestos Claims and Certain

Related Relief [Doc. No. 6899] (the "Estimation Motion"), Debtors' Motion for the Entry of an

Order Approving Solicitation and Confirmation Procedures and Schedule [Doc. No. 6900] (the

"Confirmation Procedures Motion"), and Debtors' Motion for Entry of a Case Management

Order Establishing Protocols for Litigating Asbestos-Related Claims Following Plan

---

[1] By permission of the Court, the Future Claimants Representative's time to object to the Debtors' Disclosure
Statement and Plan Related Motions was extended until Wednesday, December 22, 2004

Confirmation [Doc. No. 6898][2] (the "New CMO Motion," and together with the Estimation

Motion and the Confirmation Procedures Motion, the "Plan Related Motions").[3]

## PRELIMINARY STATEMENT

A disclosure statement should not be approved if the related plan is patently

unconfirmable. Here, the Disclosure Statement would be used to solicit acceptances of the Plan

(defined below), and the Plan Related Motions seek to implement procedures which are critical

to the Plan and the Plan confirmation process. Because the Plan is patently unconfirmable as a

matter of law, the Disclosure Statement should not be approved, and the Plan Related Motions

should be denied at this time.

First, contrary to the Debtors' position, present Asbestos Claims are impaired under the

Plan and the Plan Related Motions. By channeling the Asbestos Claims to a trust, precluding

recoveries against any other parties, liquidating the claims in a manner other than in the tort

system, and limiting recoveries to a fixed fund, the Plan and Plan Related Motions would alter

the legal and equitable rights of Asbestos Claimants. Thus, Asbestos PI Claimants are impaired

and are entitled to vote on the Plan. Moreover, even if the Court determines that Asbestos

Claims are unimpaired, the deemed acceptance concept of Section 1126(f) does not apply in the

context of a Section 524(g) Plan, and an actual, affirmative vote is required to satisfy Section

524(g).

---

[2] On June 21, 2001, the Debtors filed the "Original CMO Motion" [Doc. No. 586, as modified and amended by Doc Nos. 2275 and 2581], which sought to establish pre-confirmation litigation protocols. The New CMO Motion seeks to establish post-confirmation litigation protocols, and the Debtors leave to the Court whether pre- or post-confirmation protocols would be appropriate. Given that the Original CMO Motion was filed prior to the appointment of the Future Claimants Representatives, he could not object to such motion. To the extent the Court considers the Original CMO Motion in connection with the New CMO Motion, this objection should be construed to include the Original CMO Motion.

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Glossary of Terms Used in Plan Documents, filed by the Debtors on November 13, 2004 [Docket No. 6897].

Second, Section 502(c) is not a proper vehicle for estimating future Asbestos Claims, and Asbestos Claims should not be estimated for distribution purposes without appropriate procedural safeguards. Moreover, nothing in Section 524(g) requires an aggregate cap on the Debtors' liability for Asbestos Claims. The Debtors should not be allowed to use the estimation of Asbestos Claims to back into their positions that Asbestos Claims are unimpaired and that their liability to all Asbestos Claimants should be capped while equity holders retain their interests.

Accordingly, the Future Claimants Representative respectfully requests that the Court find that the Plan is not confirmable as a matter of law, deny approval of the Disclosure Statement, deny the Plan Related Motions, and direct the Debtors to file an amended confirmable plan within ten days.

## I.     BACKGROUND

On April 2, 2001, W.R. Grace & Co. and 61 of its affiliated entities (collectively, the "Debtors") each filed a petition for relief under chapter 11 of the Bankruptcy Code. Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtors are continuing in the management of their respective businesses and possession of their respective properties as debtors in possession.

By Order dated May 24, 2004, the Court appointed the Future Claimants Representative under Section 524(g) of the Bankruptcy Code to serve as the legal representative for future asbestos claimants.

On November 13, 2004, the Debtors filed the Disclosure Statement, Debtors' Plan of Reorganization (the "Plan"), and the Plan Related Motions.

## A.    The Plan

The Plan alters the rights of Asbestos PI Claimants by proposing to channel all Asbestos Claims to the Asbestos Trust, and contemplating the liquidation of Asbestos Claims through a litigation protocol prior to distributions being made by the Asbestos Trust. The plain language of various provisions of the Plan reflects the impairment of Asbestos Claims:

- Section 3.1.6(b)(i): "All Allowed Class 6 [Asbestos PI-SE Claims] shall be paid in full [without interest]." [4]

- Section 3.1.7(b)(i): "All Allowed Class 7 [Asbestos PI-AO Claims] shall be paid in full [without interest]."

- Section 5.3: "The Allowed Amount of Asbestos Claims shall be determined in accordance with the Bankruptcy Code, the Bankruptcy Rules, the applicable trust distribution procedures (the "TDPs" or "TDP") and the CMO. If any Asbestos Claim becomes Allowed, it shall be satisfied from the Asbestos Trust in accordance with the Asbestos Trust Agreement and the applicable TDPs."

- Section 7.2: Provides for, among other things, the creation and funding for the Asbestos Trust in a fixed amount, determined now without regard for the total Asbestos Claims actually allowed against that Trust.

- Section 7.3.1: "Payments to Holders of Allowed Asbestos Claims shall be made by the Asbestos Trust in accordance with the Asbestos Trust Agreement, the respective TDPs and the CMO."

- Section 8.2: The Asbestos Channeling Injunction provides that "the sole recourse of the Holder of an Asbestos Claim on account of such Claim shall be to the Asbestos Trust pursuant to the provisions of the Asbestos Channeling Injunction and the appropriate TDPs and such Holder shall have no right whatsoever at any time to assert its Asbestos Claim against the Debtors . . . ."

Plan §§ 3.1.6(b)(i), 3.1.7(b)(i), 5.3, 7.2, 7.3.1 and 8.2.

## B.    The Estimation Motion

The Estimation Motion seeks the entry of an order, among other things, determining estimates of the aggregate amounts needed to fund the Asbestos Trust to enable the Asbestos Trust to pay "in full" all Allowed Asbestos Claims and Asbestos Trust Expenses. The unstated effect of the Estimation Motion is to estimate Asbestos Claims, apparently including future

---

[4] Unlike the proposed treatment in the Plan for Asbestos Claims, the Plan contemplates payment in full, plus post-

Asbestos Claims,[5] for all purposes, including for purposes of distribution. By seeking an aggregate estimation of Asbestos Claims and then funding the Asbestos Trust in that amount, the Debtors are trying to limit their liability for such claims and manufacture an argument that Asbestos Claims are unimpaired.

### C.    The Confirmation Procedures Motion

In the Confirmation Procedures Motion, the Debtors seek the entry of an order, among other things, establishing procedures for solicitation and tabulation of votes to accept or reject the Plan. Under the proposed solicitation procedures, Asbestos Claims are deemed unimpaired and may not vote. See Confirmation Procedures Motion, Exh. D, p. D-3; see also Plan §§ 3.1 and 6.3 (stating that Asbestos Claims are unimpaired and are not entitled to vote because they are presumed to have accepted the Plan). The proposed order with the Confirmation Procedures Motion does not include any findings of fact or conclusions of law supporting the Debtors' deemed unimpairment of Asbestos Claims. The Debtors' efforts to limit the scope of the solicitation of the Plan should not be considered before the Court determines whether Asbestos Claims (a) are in fact unimpaired and (2) if unimpaired and not entitled to vote under Section 1129, are nonetheless required to cast votes under Section 524(g). See 11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb) (To confirm a plan under Section 524(g), the Court must determine that "a separate class or classes of the claimants whose claims are to be addressed by a trust . . . votes, by at least 75% of those voting, in favor of the plan") (emphasis added).

---

petition interest for Allowed General Unsecured Claims. See Plan § 3.1.9(b)(i).

[5] While the Debtors' pleadings are not precise as to whether they intend for this Court to estimate, and thus limit, future asbestos Demands under Section 502(c), the recently-filed Debtors Suggestion to the Court of Protocol for Proceeding for the January 21, 2005 and January 24, 2005 Hearings Scheduled in These Cases (the "Suggested Protocol"), Docket No. 7190, suggests that the proposed estimation process would only apply to those claims "on file as of the Petition Date." Suggested Protocol at 3.

**D.    The New CMO Motion**

The New CMO Motion seeks the entry of a case management order establishing protocols for litigating Asbestos Claims following plan confirmation. In essence, the Debtors seek to create a procedural framework through which the Debtors' liability for Asbestos Claims may be determined. The Future Claimants Representative appreciates and does not necessarily object to the implementation of efficient procedures for liquidating Asbestos Claims. The Debtors' litigation protocol, however, changes the legal and equitable rights of Asbestos PI Claimants, which cannot be done without the affirmative vote of the present claimants and the consent of the Future Claimants Representative.

For example, the New CMO Motion proposes a five step process for the litigation and allowance of all Asbestos Claims, which alters the rights of Asbestos PI Claimants:[6]

- Based solely on information from the Asbestos PI Proofs of Claim, and the Asbestos PI Questionnaires, the Debtors propose filing omnibus claims objections and moving for summary judgment, requesting dismissal of Asbestos Claims that fail to meet certain threshold requirements.
- The Debtors propose that the Court conduct Rule 42 common issue trials.
- The Debtors propose filing motions for summary judgment based on the Court's rulings from the Rule 42 common issue trials. It appears that the Debtors propose that these rulings would be binding on all present and future Asbestos Claims.
- After the foregoing, the Debtors propose an individualized claims review for purposes of settlement procedures, which include mandatory, court-supervised mediation.
- After settlement/mediation, Asbestos PI Claimants would be entitled to exercise their right to a jury trial.

New CMO Motion, ¶¶ 19-32.

---

[6] The Future Claimants Representative does not object at this time to the substance of the litigation protocols, but simply highlights the changes in the rights of the Holders of Asbestos Claims to show that Asbestos Claims are impaired under the Plan. The Future Claimants Representative reserves all rights, including the right to object, as to the substance of the CMO, the TDPs and the Asbestos Trust Agreement.

## II.    ARGUMENT

The Future Claimants Representative does not address here the substantive contents of the Disclosure Statement.[7]    The purpose of this objection is to address the two central issues which make the Plan patently unconfirmable:

1.    The Debtors' Plan wrongly provides that Asbestos Claims are unimpaired and not entitled to vote.

2.    The Debtors improperly seek to estimate Asbestos Claims (perhaps, including future Demands) for distribution purposes without appropriate procedural safeguards, and in a manner that unfairly caps the Debtors' aggregate asbestos liability, and is neither fair nor equitable to future asbestos claimants.

### A.    The Plan is not confirmable as a matter of law.

If a plan is not confirmable, the related disclosure statement should not be approved. In re Phoenix Petroleum Co., 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001 ("If the disclosure statement describes a plan that is so 'fatally flawed' that confirmation is 'impossible,' the court should exercise its discretion to refuse to consider the adequacy of disclosures."); In re Curtis Center L.P., 195 B.R. 631 (Bankr. E.D. Pa. 1996) (holding that a Chapter 11 debtor's disclosure statement could not be approved because the plan described in the disclosure statement was patently unconfirmable); In re Monroe Well Serv., Inc., 80 B.R. 324, 333 (Bankr. E.D. Pa. 1987) (stating that "it may be appropriate to disapprove of a disclosure statement, even if it properly summarizes and provides adequate information about a proposed plan, when a court is convinced that the plan could not possibly be confirmed").    Because the Debtors' Plan is patently unconfirmable a ny s olicitation o f t he P lan a t t his t ime w ould b e a n u nnecessary w aste o f t he Debtors' resources and the parties' time.

---

[7] Consistent with the Court's ruling at the hearing on December 20, 2004, the Future Claimants Representative believes that the threshold issue—that the Plan is not confirmable as a matter of law—should be addressed first. Thus, this objection does not focus on the language or specific text of the Disclosure Statement. The Future Claimants Representative reserves the right to make substantive objections to the Disclosure Statement and the Plan at a later date.

1.    **The Plan and the Plan Related Motions alter the rights of Asbestos PI Claimants and thus impair their claims.**

The Third Circuit described the doctrine of impairment as follows:

> "Impairment" is a term of art crafted by Congress to determine a creditor's standing in the confirmation phase of bankruptcy plans. Each creditor has a set of legal, equitable, and contractual rights that may or may not be affected by bankruptcy. If the debtor's Chapter 11 reorganization plan does not leave the creditor's rights entirely "unaltered," the creditor's claim will be labeled as impaired under § 1124(1) of the Bankruptcy Code. If the creditor's claim is impaired, the Code provides the creditor with a vote that, depending on the value of the creditor's claim, may be sufficient to defeat confirmation of the bankruptcy plan.

> The Bankruptcy Code creates a presumption of impairment "so as to enable a creditor to vote on acceptance of the plan." Under 11 U.S.C. § 1124(1), the presumption of impairment is overcome only if the plan "leaves unaltered the [creditor's] legal, equitable, and contractual rights." The burden is placed on the debtor to demonstrate the plan leaves the creditor's rights unaltered.

Solow v. PPI Enters. (U.S.), Inc. (In re PPI Enters. (U.S.), Inc.), 324 F.3d 197, 202-03 (3d Cir. 2003) (holding that landlord's statutorily capped damages claim was not impaired). Thus, courts must consider whether a plan leaves the creditors' legal, equitable and contractual rights unaltered.

Simply saying that Asbestos Claims will be paid in full, as the Plan does, does not mean that such claims are unimpaired. The term "impaired" is read in broad terms. See, e.g., In re Barakat, 99 F.3d 1520, 1527 (9th Cir. 1996) ("Congress intended to define impairment broadly, and generally, any alteration of a creditor's legal rights constitutes impairment."). "Impairment" under the Bankruptcy Code is a standard that is easily met. In re American Solar King Corp., 90 B.R. 808, 819 (Bankr. W.D. Tex. 1988) (noting even the smallest impairment entitles a creditor to participate in voting). Thus, the question is whether the provisions of the Plan and Plan Related Motions, if approved, would alter the rights of Asbestos Claimants in any respect. Even

a cursory examination of the Plan and the Plan Related Motions disclose that this is not even a close question, and that the answer is "Yes."

The Plan proposes to channel Asbestos Claims to the Asbestos Trust, to preclude Asbestos PI Claimants from recovering against the Debtors and other parties, to liquidate Asbestos Claims in a particular manner, and to restrict any recovery on Asbestos Claims to the limited fund created under the Asbestos Trust. The CMO, the TDPs, the Asbestos Channeling Injunction and the Asbestos Trust all contain provisions (some of which are set forth above in Sections I.A. and I.D. of this Objection), which change, i.e., impair, the procedural, due process and other rights of Asbestos PI Claimants. See, e.g., In re Distrigas Corp., 66 B.R. 382, 384 (Bankr. D. Mass. 1986) (class was impaired where plan would alter creditor's ability to submit dispute to arbitration).

Changes to procedural and other rights constitute impairment under Section 1124 of the Bankruptcy Code. See, e.g., In re Applied Safety, Inc., 200 B.R. 576, 588 (Bankr. E.D. Pa. 1996) (claim was impaired because plan required creditor to accept payment of claim under a termination agreement, regardless of any valid defenses or causes of action the creditor had to rescind or invalidate that agreement); L&J Anaheim Assocs. v. Kawasaki Leasing Int'l, Inc. (In re L&J Anaheim Assocs.), 995 F.2d 940 (9th Cir. 1993) (plan's curtailment of creditor's foreclosure rights under state law caused impairment); Acequia, Inc. v. Clinton (In re Acequia, Inc.), 787 F.2d 1352 (9th Cir. 1986) (plan required modifications to bylaws, which altered shareholder voting rights, thereby impairing class of equity holders).

Although some litigation protocols or TDPs may be appropriate to adjudicate Asbestos Claims efficiently, the Debtors must acknowledge that any such procedures will necessarily

impair Asbestos Claimants.[8]  See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1024 (9th Cir. 1998)

(finding that there is no class action or consolidation rule, statute or case which allows the

debtors "to exercise class rights en masse, either by making a class-wide objection or by

attempting to effect a group-wide exclusion from an existing class.").  For example, the use of

Rule 42  trials for mass asbestos personal injury cases is particularly susceptible to arguments

about violations of due process and the Seventh Amendment.  See Cimino v. Raymark Indus.,

Inc., 151 F.3d 297, 312 (5th Cir. 1998) ("It is axiomatic that a procedural rule cannot 'abridge,

enlarge, or modify any substantive right.'") (citing State of Alabama v. Blue Bird Body Co., Inc.,

573 F.2d 309, 317-18 (5th Cir. 1978) (citing 28 U.S.C. § 2072)); see also Ortiz v. Fibreboard

Corp., 527 U.S. 815, 845 (1999) (same).  Furthermore, any procedure that would permit verdicts

or summary judgment rulings on a small number of present Asbestos Claims to be categorically

applied to other present or future Asbestos Claims also would impair the rights of Asbestos PI

Claimants.  See Cimino, 151 F.3d at 312 (finding that even full jury trial verdicts could not be

extrapolated to other cases because it would violate due process and Seventh Amendment jury

trial rights); In re Chevron U.S.A., Inc., 109 F.3d 1016, 1020 (5th Cir. 1997) (stating that before a

court can utilize results from a unitary trial for a purpose that extends beyond the individual cases

tried, it must find that the cases are representative of the larger group of cases or claims from

which they are selected).

Second, the Plan does not propose to pay interest on Asbestos Claims.  If the Debtors are

solvent (and presumably they are because Equity Interests in the Debtors are not cancelled and

Section 3.1.9(b)(i) of the Plan proposes to pay interest on Allowed General Unsecured Claims),

all claims should be paid in full with interest on the Effective Date.  See United States v. Ron

---

[8] Any litigation protocol for liquidating Asbestos Claims post-confirmation, if that were held to be appropriate,
should be incorporated into the TDP or otherwise made a part of a plan, and should be considered along with, and

Pair Enters., Inc., 489 U.S. 235, 246 (1989); D.C. Sullivan & Co., Inc., 929 F.2d 1, 3-6 (1st Cir.

1991). Absent the payment of post-petition interest, "'if a plan proposed to pay a class of claims

in cash in the full allowed amount of the claims, the class would be impaired, entitling creditors

to vote for or against the plan of reorganization.'" PPI Enters., 324 F.3d at 206 (quoting H.R.

Rep. No. 103-835, at 47-48 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3356-57);[9] see also In

re New Midland Plaza Assocs., 247 B.R. 877 (Bankr. S.D. Fla. 2000) (if a class of claims is not

paid in full with interest on the effective date of a plan, the class is impaired).[10] Thus, the Plan

and, to the extent any estimation of Asbestos Claims will be made, the Plan Related Motions

should include provisions for paying the full amount of Asbestos Claims actually allowed against

the Trust plus interest allowed under applicable law.

> **2.    Even if the Court determines that Asbestos Claims are unimpaired, Section 524(g) requires an affirmative vote of, and not deemed acceptance by, Asbestos Claimants.**

The Debtors premise their Plan on the presumption that deemed acceptance of

unimpaired creditors under Section 1126(f) satisfies the voting requirements of Section 524(g).[11]

---

not in a vacuum apart from, confirmation of such a plan.

[9] Section 1124 of the Bankruptcy Code used to provide that a class of claims that was paid the allowed amount of its claims in cash on the effective date of a plan was unimpaired. 11 U.S.C. § 1124(3) (1994). However, in 1994, Congress amended Section 1124 by deleting subsection 3. "As a result of this change, if a plan proposed to pay a class of claims in cash in the full allowed amount of the claims, the class would be impaired, entitling creditors to vote for or against the plan of reorganization." H.R. Rep. No. 103-835, at 48 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3356-57. See also In re Coram Healthcare Corp., 315 B.R. 321, 344 (Bankr. D. Del. 2004) (finding that "payment of post-petition interest before any distribution to equity holders in a chapter 11 case is not prohibited by the Code and, in fact, may be required.").

[10] Although the states are not uniform in addressing the issue of prejudgment interest, some states allow prejudgment interest on medical bills, if a claimant incurred out-of-pocket expenses. See, e.g., Alvarado v. Rice, 614 So. 2d 498, 500 (Fla. 1993). Some states even allow prejudgment interest on incurred medical bills and even on pain and suffering from the time of service of the summons and complaint until the judgment is satisfied, but any amounts representing future damages draw interest only from the date of the entry of the judgment. See, e.g., Nevada v. Eaton, 710 P.2d 1370, 1374 (Nev. 1985), overruled on other grounds by, Nevada v. Hill, 963 P.2d 480 (Nev. 1998).

[11] The Court need not address this issue if the Court determines that Asbestos Claims are impaired under the Plan.

On the contrary, Section 524(g) requires that "a separate class or classes of the claimants whose claims are to be addressed by a trust . . . votes, by at least 75% of those voting, in favor of the plan." 11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb) (emphasis added). Thus, by its plain language, Section 524(g) requires an affirmative vote on the Plan by the Asbestos Claimants. At least one court has found the 75% voting requirement to be an indispensable element to confirmation of a Section 524(g) plan. See Walter v. Celotex Corp. (In re Hillsborough Holdings Corp.), 197 B.R. 372, 378-79 (Bankr. M.D. Fla. 1996) (stating that the debtor's contention that the 75% voting requirement is not indispensable is clearly refuted by the legislative history of Sections 524(g) and (h)); see also H.R. No. 103-835, 103d Cong., 2d Sess. (Oct. 4, 1994) ("[I]n order for present claimants to be bound by a trust/injunction, . . . a separate creditor class [must] be established for those with present claims, which must vote by a 75% margin to approve the plan.").

Moreover, well established rules of statutory construction dictate that the deemed acceptance of unimpaired claims under Section 1126(f) does not apply in the context of Section 524(g). As the most recent expression of congressional intent, Section 524(g) should be read to require actual voting. See Barnhart v. Sigmon Coal Co., 534 U.S. 438, 452 (2002) ("[I]t is a general principle of statutory construction that when 'Congress includes particular language in one Section of a statute but omits it in another Section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'") (citations omitted). If Congress wanted to have the presumption of Section 1126(f) apply in the context of Section 524(g), it would have expressed its intent to do so. It is also clear from the introductory phrase of Section 1126(f) – "Notwithstanding any other provision of this Section . . . ." – that subsection (f) is intended to define deemed acceptance of a plan within the

meaning of Section 1126 and not voting rights elsewhere in the Bankruptcy Code. 11 U.S.C. §

1126(f) (emphasis added).[12]

**B.    The Debtors improperly propose to estimate Asbestos Claims in a manner that caps the Debtors' aggregate liability for Asbestos Claims, which has the improper and unstated effect of limiting the recoveries for Asbestos Claims for all purposes, including distribution.**

**1.    Section 502(c) is not a proper procedural vehicle for estimating future Asbestos Claims for distribution purposes.**

Section 502(c) provides for the estimation of "any contingent or unliquidated <u>claim</u>." 11

U.S.C. § 502(c)(1) (emphasis added). Future Asbestos Claims are not "claims," but are

"demands," under the Bankruptcy Code. <u>See</u> 11 U.S.C. §§ 101(5) and 524(g)(5). Neither

Section 502(c) nor any other provision in the Bankruptcy Code authorizes the estimation of

"demands" for distribution purposes. The Supreme Court has stated that when the language of

the Bankruptcy Code is clear and unambiguous, the plain meaning controls issues of statutory

interpretation. <u>See</u> <u>Ron Pair Enters., Inc.</u>, 489 U.S. at 240-41 ("[A]s long as the statutory scheme

is coherent and consistent, there generally is no need for a court to inquire beyond the plain

language of the statute.") (citing <u>Griffin v. Oceanic Contractors, Inc.</u>, 458 U.S. 564, 571 (1982)

("There is, of course, no more persuasive evidence of the purpose of a statute than the words by

which the legislature undertook to give expression to its wishes.")).

The only means in the Bankruptcy Code for addressing future asbestos-related liabilities

is through Section 524(g). <u>See</u> <u>Findley v. Falise (In re E&S Dist. Asbestos Litig.)</u>, 878 F. Supp.

473, 571 (E.D.N.Y. and S.D.N.Y. 1995), *aff'd in part, vacated in part*, 78 F.3d 764 (2d Cir.

1996) (explaining how debtors who seek to resolve future asbestos liability must qualify for an

injunction under Section 524(g)). In the context of a proposed confirmable plan, anticipated

---

[12] Sections 1126 and 1129 of the Bankruptcy Code speak in terms of "acceptance" or "rejection" of a plan, either deemed acceptance/rejection or through a vote. See, e.g., 11 U.S.C. § 1126(a), (f), and (g); 11 U.S.C. § 1129(a)(7),

"demands" would be considered in connection with the "fair and equitable" findings required in order to confirm a plan under Section 524(g).  See Section II.B.3. below.

Thus, even if the Court were to consider estimating present Asbestos Claims under Section 502(c), the Future Claimants Representative respectfully suggests that the Court has no power, and must refuse, to do so for future Asbestos Claims.

> **2.    Section 502(c) should not be used to estimate present Asbestos Claims for distribution purposes without appropriate procedural safeguards.**

Section 502(c), by its express language, authorizes estimation of contingent or unliquidated claims for many purposes, including allowance.  11 U.S.C. § 502(c)(1).  The primary application of the claims estimation process, however, is to estimate claims for voting and feasibility purposes when the fixing of contingent or unliquidated claims would otherwise delay administration of the case.  11 U.S.C. § 502(c); See, e.g., O'Neill v. Continental Airlines, Inc. (In re Continental Airlines, Inc.), 981 F.2d 1450, 1461 (5th Cir. 1993) (for estimation to be applicable, "a claim must be contingent or unliquidated and fixing the claim must entail undue delay in the administration of justice"); In re Nova Real Estate Inv. Trust, 23 B.R. 62, 66 (Bankr. E.D. Va. 1982) ("An estimate necessarily implies no certainty; it is not a finding or a fixing of an exact amount.  It is merely the court's best estimate for the purpose of permitting the case to go forward and thus not unduly delay the matter."); In re MCorp Fin., Inc., 137 B.R. 219, 226 (Bankr. S.D. Tex. 1992), *appeal dismissed and remanded on other grounds*, 139 B.R. 820 (S.D. Tex. 1992) (refusing to permit estimation to be a binding cap for purposes of distribution).

Although Section 502(c) is silent as to the manner in which contingent or unliquidated claims are to be estimated, courts have very broad discretion to use "whatever method is best suited to the particular contingencies at issues." Bittner v. Borne Chem. Co., 691 F.2d 134, 135

_____

(8) and (10).  Section 524(g), on the other hand, speaks in terms of votes.  11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb).

(3d Cir. 1982). As a result, courts use a variety of procedures for estimating claims for purposes of allowance, distribution, voting and feasibility. See, e.g., In re Wallace Bookstores, Inc., No. 01-50545, 2004 Bankr. LEXIS 737, at *11 (Bankr. E.D. Ky. May 25, 2004) (full blown evidentiary hearing); In re Baldwin-United Corp., 55 B.R. 885, 889 (Bankr. S.D. Ohio 1985) (summary jury trial); In re Lane, 68 B.R. 609, 613 (Bankr. D. Haw. 1986) (court reviewed pleadings and briefs and conducted one-day hearing). The Third Circuit has recognized that, in certain cases, "arbitration or even a jury trial on all or some of the issues may be necessary to obtain a reasonably accurate estimation of claims." Kool, Mann, Coffee & Co. v. Coffey, 300 F.3d 340, 357 (3d Cir. 2002) (quoting Bittner, 691 F.2d at 135).

In certain circumstances, courts have found it necessary to estimate claims for allowance and distribution purposes, but only after ensuring that appropriate procedural safeguards inherent in traditional notions of due process were protected. See, e.g., NLRB v. Greyhound Lines, Inc. (In re Eagle Bus Mfg., Inc.), 158 B.R. 421, 437 (S.D. Tex. 1993) (court estimated claims but permitted parties to present seven hours of evidence and testimony and 165 trial exhibits); In re Poole Funeral Chapel, Inc., 63 B.R. 527, 532 (Bankr. N.D. Ala. 1986) (finding that for "counts sounding in tort, the plaintiffs are entitled to jury trials in some court for purposes of distribution. The bankruptcy court has the right and duty only to estimate these claims for the purposes of confirming a plan under Chapter 11, and that is a core proceeding."). In these instances, courts utilize more detailed procedures than used to estimate for purposes of voting or feasibility. See, e.g., In re Wallace Bookstores, Inc., No. 01-50545, 2004 Bankr. LEXIS 737, at *12 (Bankr. E.D. Ky. May 24, 2004) (when estimating for purposes of allowance, court will use a full-blown evidentiary hearing). No such procedural safeguards are proposed in the Estimation Motion.

Further, an estimation procedure should not preclude reconsideration of claims pursuant to Section 502(j). "If a plan proponent could cut off a claimant's right to a § 502(j) reconsideration, Congress' passage of that provision would be meaningless, and the result would be in contravention of the legislative history on the estimation procedure." MCorp, 137 B.R. at 226 (finding that a plan, which proposed a cap on all contested claims, with estimates on such claims subject to downward revision only, could not be confirmed). "The estimation process may fulfill the allowance requirement for purposes of § 1129(a)(9), but will not set the outer limits of a claimants' right to recover. Rather, the ultimate allowance of the claim will set that right." Id. (citing In re MacDonald, 128 B.R. 161, 167-68 (Bankr. W.D. Tex. 1991)).

The Plan would impose an aggregate cap on Asbestos Claims. Thus, on an aggregate basis, the Plan terminates Asbestos Claimants' rights to any upward adjustment on reconsideration under Section 502(j). Even if the Plan were to specifically provide that the holder of a contested Asbestos Claim may seek reconsideration of the amount of that claim, the Plan is not confirmable because no amount would have been placed in reserve to pay any such reconsidered Asbestos Claim at an increased amount. See MCorp, 137 B.R. at 226 (finding that a right of reconsideration would be futile to a claimant because of a cap and lack of a reserve).

> **3.    A determination under Section 524(g) in connection with confirmation that the Plan is fair and equitable does not require, and should not in these cases constitute, a cap on the Debtors' liability for Asbestos Claims.**

Section 524(g) requires that the Court determine, in connection with a channeling injunction and before entering a confirmation order, that the injunction(s) to be issued to protect parties under a plan with respect to demands is fair and equitable with respect to the persons that might subsequently assert such demands, in light of the benefits provided to the plan trust on behalf of the protected parties. 11 U.S.C. § 524(g)(4)(B)(ii). The Court also must find that

pursuit of future Asbestos Claims outside of a Section 524(g) plan is likely to threaten such plan's purpose to deal equitably with claims and future demands.    11 U.S.C. § 524(g)(2)(B)(ii)(III).

There is nothing in Section 524(g) that requires, in connection with such fair and equitable findings, that the Court estimate or cap the Debtors' asbestos-related liability.  On the contrary, to confirm the Plan, the Court must find that the actual amounts, numbers and timing of future demands cannot be determined.  11 U.S.C. § 524(g)(2)(B)(ii)(II).  If the Court finds it necessary to estimate future Asbestos Claims to assist in determining whether the Plan is fair and equitable, such an estimation should not be final for distribution purposes.  This is particularly so where, as here, equity holders are retaining their interests.

The risk of an improper solution to the Debtors' asbestos liability here will largely be borne by the future Asbestos Claimants.    Thus, it is crucial to the Future Claimants Representative that the Plan and any Asbestos Trust be sufficiently funded, and that the Plan and Asbestos Trust incorporate adequate protections to preserve the rights of future Asbestos PI Claimants.    Estimating the Debtors' liability for Asbestos Claims for all purposes – that is, imposing an aggregate cap to limit the Debtors' asbestos liability while permitting equity holders to retain their interests – is improper and prejudices the rights of future Asbestos PI Claimants.

## III.    CONCLUSION

For the foregoing reasons, the Future Claimants Representative respectfully requests that the Court find that the Plan is not confirmable as a matter of law, refuse to approve the Disclosure Statement, deny the Plan Related Motions, and direct the Debtors to file an amended plan within ten days.

Respectfully submitted,

PHILLIPS, GOLDMAN & SPENCE, P.A.

Dated:  December 22, 2004

JOHN C. PHILLIPS, JR., ESQUIRE (#110)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
(302) 655-4210 (facsimile)

SWIDLER BERLIN SHEREFF FRIEDMAN, LLP
ROGER FRANKEL, ESQUIRE
RICHARD H. WYRON, ESQUIRE
MATTHEW W. CHENEY, ESQUIRE
DEBRA L. FELDER, ESQUIRE
3000 K Street, N.W., Suite 300
Washington, D.C. 20007
(202) 424-7500
(202) 424-7643 (facsimile)

Counsel for David T. Austern,
Future Claimants Representative

CERTIFICATE OF SERVICE

I hereby certify that on this 22st day of December, 2004, I caused the foregoing Future Claimants' Representative's Consolidated Objection to Plan Related Motions to be served on the following persons via email (where available via Pacer) and first class mail, postage prepaid:

Janet S. Baer, Esquire
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601
Fax: 312-861-2200
*Counsel for the Debtors*

Bennett L. Spiegel, Esquire
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, CA 90017
Fax: 213-680-8400
*Counsel for the Debtors*

Laura Davis Jones, Esquire
Pachulski, Stang, Ziehl, Young, Jones & Weintraub P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705
Fax: 302-652-4400
*Counsel for the Debtors*

Lewis Kruger, Esquire
Stroock & Stroock & Levan
180 Maiden Lane
New York, NY 10038-4982
Fax: 212-806-6006
*Counsel for the Official Committee of Unsecured Creditors*

Michael R. Lastowski, Esquire
Duane, Morris & Heckscher, LLP
1100 N. Market Street, Suite 1200
Wilmington, DE 19801-1246
Fax: 302-657-4901
*Counsel to the Official Committee of Unsecured Creditors*

Scott L. Baena, Esquire
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Blvd., Suite 2500
Miami, FL 33131
Fax: 305-374-7593
*Counsel to the Official Committee of Property Damage Claimants*

Michael B. Joseph, Esquire
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899
Fax: 302-575-1714
*Counsel to the Official Committee of Property Damage Claimants*

Elihu Inselbuch, Esquire
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022
Fax: 212-644-6755
*Counsel to the Official Committee of Personal Injury Claimants*

Marla Eskin, Esquire
Campbell & Levine, LLC
800 N. King Street, Suite 300
Wilmington, DE 19801
Fax: 302-426-9947
*Counsel to the Official Committee of Personal Injury Claimants*

Thomas M. Mayer, Esquire
Kramer Levin Naftalis & Frankel LLP
919 Third Avenue
New York NY 10022
Fax: 212-715-8000
*Counsel to the Official Committee of Equity Holders*

Teresa K.D. Currier, Esquire
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
P.O. Box 1397
Wilmington, DE 19899-1397
Fax: 302-552-4220
*Counsel to the Official Committee of Equity Holders*

Office of the United States Trustee
Attn: Frank J. Perch
844 N. King Street
Wilmington, DE 19801
Fax: 302-573-6497

_Debra L. Felder_