IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**DEBTORS' RESPONSE TO OBJECTIONS TO
DISCLOSURE STATEMENT**

**Introduction**

The Debtors[1] filed their Plan of Reorganization and Disclosure Statement, and related Estimation, Solicitation and Case Management Motions, on November 13, 2004 in their attempt to move the Chapter 11 Cases down the road to confirmation. The Debtors received several objections to the Disclosure Statement -- some objections relate to threshold confirmation issues to which the Debtors have filed, concurrently herewith, a Brief Regarding Certain Confirmation Issues, and some objections relate to disclosure issues to which the Debtors file this Response.

Objections addressed herein are grouped according to the following issues: (i) fraudulent conveyance adversary proceedings, (ii) insurance, (iii) releases, (iv) general disclosure requests, and (v) plan confirmability. In addition, on January 13, 2005 the Debtors will file a chart describing and addressing each objecting parties' particular objections. For this Court's ease of use, the Debtors will include an Exhibit Book with blacklined pages of the Amended Plan Documents to correspond to each of the Debtors' responses to objections filed.

---

[1] Capitalized terms not defined herein shall have the same meaning as in the Glossary filed on November 13, 2004.

## Discussion

### I. Objections of Parties to Fraudulent Conveyance Proceedings

#### A. The Sealed Air Objection

Under the terms of the Sealed Air Settlement Agreement and subject to certain conditions, Cryovac, Inc. will transfer $512.5 million in Cash (plus interest thereon from December 21, 2002 until the Effective Date compounded annually) and 9 million shares of Sealed Air Common Stock to the Asbestos Trust. This payment constitutes the initial and primary funding under the Plan for the Asbestos Trust. This payment is critically important in order to achieve confirmation of the Plan.

The Debtors are not parties to the Sealed Air Settlement Agreement. The Debtors, Sealed Air, the PI Committee and the PD Committee negotiated for some six months to reach an agreement on an acceptable settlement structure. The great majority of the significant issues were resolved. However, there were certain issues, set forth below, that resulted in the Debtors not becoming a party to the Sealed Air Settlement Agreement.[2]

Sealed Air now objects to the Disclosure Statement, alleging that "it is illusory because it fails to disclose [certain] material inconsistencies between the Sealed Air Settlement Agreement and the Proposed Plan."[3] (Obj. of Sealed Air ¶24) According to Sealed Air, the Debtors, through

---

[2] On November 26, 2003, Sealed Air, the PI Committee and the PD Committee filed a motion seeking approval of the Sealed Air Settlement Agreement (the "Settlement Motion"). Due to a stay imposed in connection with the proceedings to have Judge Wolin removed from the Debtors' cases, among other cases, no objection deadline or hearing date has ever been set on the Settlement Motion and it remains pending with the District Court. On November 24, 2004, the Debtors filed a Motion with District Judge Buckwalter seeking referral of the Settlement Motion to the Bankruptcy Court (the "Referral Motion"). (Docket No. 7036) The Referral Motion is scheduled to be heard before the District Court on January 18, 2005. Sealed Air has indicated it does not object to the Referral Motion. (Obj. of Sealed Air, at 3, n.1)

[3] Sealed Air also objects to certain technical issues, namely the identity of payor, reach of the channeling injunction and assumption of the 1998 Tax Sharing Agreement. (Obj. ¶24(a)-(c)) The Debtors have no issue with these objections and the appropriate revisions will be made to the Disclosure Statement to address these issues.

the Plan, are seeking to renegotiate the Sealed Air Settlement Agreement and seek a unilateral right to take inconsistent positions. (Id. at ¶24(d)) The Debtors do not agree. The Plan and Disclosure Statement are intended to be and the Debtors believe are in fact, consistent with the Sealed Air Settlement Agreement.

In an effort to accelerate the process of obtaining confirmation of the Plan, the Debtors do not intend to object to the Sealed Air Settlement Agreement and are prepared to go forward with that agreement. The Debtors will clarify this position in the Amended Disclosure Statement and Amended Plan they will be filing shortly. However, the Sealed Air Settlement Agreement raises the following issues that the Debtors believe they are required to disclose as part of the Plan confirmation process and which they will include in the Amended Disclosure Statement:

- The Sealed Air Settlement Agreement would impose on the Debtors a requirement to take positions on their financial statements and tax returns that would not be inconsistent with Sealed Air achieving favorable tax treatment for the Sealed Air Payment. While the Debtors generally believe that they can comply with such requirements, the Debtors and their executives are concerned that a conflict could arise between the Debtors' obligations under the Sealed Air Settlement Agreement and their fiduciary duties and legal obligations to governmental authorities, including those imposed by the Sarbanes-Oxley Act of 2002.

- The IRS may assert that the Sealed Air Payment gives rise to taxable income to the Debtors without any offsetting deduction. Grace firmly believes that this characterization would be incorrect under current law. Nonetheless, if the IRS were to successfully raise this issue, the dollar cost would be substantial and would materially adversely affect the Reorganized Debtors. Under the terms of the Sealed Air Settlement Agreement, Grace's rights to defend itself in a tax audit from this IRS assertion may be constrained.

- The Sealed Air Settlement Agreement requires the Debtors, in a number of circumstances, to use their "best efforts" to take certain actions or refrain from taking certain actions in support of Sealed Air's tax position. The Debtors are concerned that "best efforts" is not adequately defined and could lead to a dispute between the parties.

- The Debtors are concerned that, in a case where Grace derives tax benefits from the Sealed Air Payment, which Grace would be required to share with Sealed Air under the Sealed Air Settlement Agreement, Grace may be required to pay Sealed Air for tax benefits prior to their actual realization. Sealed Air indicated in their Objection that Grace does not have to make payment for a tax benefit unless the Debtors have received an actual reduction in the amount of taxes currently payable by them as a result of the tax benefit. If this is Sealed Air's position, Grace is in agreement. However, this result is not stated clearly in the Sealed Air Settlement Agreement.

Given the revisions that the Debtors intend to make to the Plan and Disclosure Statement as outlined above, the Debtors believe that Sealed Air's Objections to the Disclosure Statement have been mooted.

### B. Fresenius' Objection

The Fresenius Settlement Agreement was approved by the District Court on June 25, 2003. (Docket No. 7247) Fresenius acknowledges that the Plan and Disclosure Statement reflect a good faith effort by the Debtors to implement and describe the rights and obligations of the Debtors and the other settling parties under the Fresenius Settlement Agreement and the Fresenius Settlement Order. However, Fresenius filed a limited objection to request further disclosure or clarification of essentially four matters: (1) the description and treatment of the Fresenius Indemnified Taxes under the Fresenius Settlement Agreement; (2) the scope of the injunctions, releases and indemnifications under sections 524(g) and 105(a) of the Bankruptcy Code; (3) dismissal of certain actions identified in the Fresenius Settlement Agreement; and (4) specificity with regards to certain terms of the Fresenius Settlement Agreement and Fresenius Settlement Order. (Obj. of Fresenius ¶2) The Debtors do not object to the requests of Fresenius with respect to clarification or additional disclosure with respect to each of these matters and will revise their Disclosures Statement and Plan accordingly.

## II. Insurance

Three objections to the Disclosure Statement were filed by insurance companies -- American International Group, Inc. (AIG) (Docket No. 7293), Everest Reinsurance Company (Docket No. 7303) and Maryland Casualty Company (Docket No. 7331). Each of the insurance companies requests additional disclosures in and/or clarifications of the Disclosure Statement, all of which will be addressed by the Debtors in the Amended Plan Documents when filed.

Additionally, Maryland Casualty Company has objected to the Debtors' ability to "arbitrarily alter the Asbestos Insurance Entity Injunction" (Obj. ¶3, 1st bullet) and the insurance companies' inability to "enforce the Asbestos Insurance Entity Injunction." (Obj. ¶3, 2nd bullet) But neither Maryland Casualty Company nor any other insurance company has provided any

consideration to the Debtors for the benefits that they are now seeking. Rather Maryland Casualty Company has misconstrued the purpose of the Asbestos Insurance Entity Injunction which is to protect the Debtors and the Debtors' assets, including proceeds from insurance recoveries, from dilution by non-Debtor third parties who file claims directly against the insurance companies. Although the Debtors' Plan does not contemplate assignment of the insurance proceeds to the Asbestos Trust, such insurance proceeds are an integral part of the Debtors' reorganization and will provide working capital for the Reorganized Debtors. As such, the Debtors desire to protect their insurance policies from attack by non-Debtor third parties. To this end, the Debtors have requested that this Court approve the Plan which calls for the issuance of an Asbestos Insurance Entity Injunction protecting the insurance assets of the Debtors and not the Insurance Companies themselves. The Insurance Companies are beneficiaries of the Asbestos Insurance Entity Injunction only to the extent that the Debtors are protecting the Debtors' own assets from dilution.

### III. Releases

Four of the objections to the Disclosure Statement raise issues related to the breadth and scope of the release and related provisions provided for in the Plan -- Keri Evans (Docket No. 7277), State of Montana (Docket No. 7330), the United States Trustee (Docket No. 7342), and the Securities and Exchange Commission (Letter dated December 10, 2004). These parties raise concerns that the release provisions as currently drafted are not appropriate in scope and breadth and therefore cannot be confirmed as part of the Plan in the Third Circuit.

The Debtors disagree with the objections filed and maintain that the release and related provisions are confirmable as is. The Debtors believe that objections related to the release provisions are not appropriately brought at this time but rather should be saved for Plan confirmation. However, the Debtors will revise the Disclosure Statement to include additional disclosure regarding the objections raised and will, in their Amended Plan Documents, address some of the stated issues. Specifically, the Debtors will amend the Plan Documents to (i) disclose that the State of Montana is not precluded from enforcing any environmental and/or

consent decrees it has with the Debtors, (ii) provide for an exception to liability for willful misconduct, (iii) disclose questions over the inclusion of the release provisions, and (iv) provide a ballot that contains a conspicuous statement that a vote in favor of the Plan constitutes a release by a claimant or equity security holder.

## IV.    General Disclosure Requests

The majority of objections to the Disclosure Statement call for more disclosure. The Debtors have reviewed these objections and will address each of the issues raised by including additional or clarified disclosure. The Debtors are in the process of contacting each objecting party to discuss such additional disclosures in an effort to obtain withdrawal of the objections. The following is a list of parties who requested additional or modified disclosure: (i) BMW Constructors (Docket No. 7238), (ii) Town of Acton, Massachusetts (Docket No. 7263), (iii) Keri Evans (Docket No. 7277), (iv) Longacre Master Fund, Ltd. (Docket No. 7323), (v) State of Montana (Docket No. 7330), (vi) Libby Claimants (Docket No. 7335), (vii) US Attorney (Docket No. 7341), (viii) Asbestos PD Committee (Docket No. 7343), (ix) SEC (Letter dated December 10, 2004), and (x) PBGC (Informal e-mail correspondence).

## V.    Libby Claimants (Docket No. 7335)

The Libby Claimants have filed an objection to the Disclosure Statement and related Plan Documents in addition to the objections filed by the Asbestos PI Committee, on which committee the Libby Claimants have representation. In addition to the same threshold confirmation issues also raised by the Asbestos PI Committee, the Libby Claimants assert that the Disclosure Statement fails to explain that the Plan will particularly discriminate against and impair the Libby Claimants. The Libby Claimants base this objection on the unsupported allegation that "Libby pleural disease is different than the pleural disease in other asbestos cases, and so requires separate disease categories and criteria." (Obj. of Libby Claimants ¶14)

This objection is really an objection to the anticipated expert testimony that will be proffered in the estimation hearing with respect to Asbestos PI Claims. It is also essentially a Plan objection as it is an objection to the treatment of Libby Claimants as either holders of

6

Asbestos PI-SE Claims or Asbestos PI-AO Claims. The Debtors stand by their disclosures as written with respect to Libby. The Libby Claimants cannot produce any credible evidence that Libby asbestos diseases are unique so as to justify that the criteria set forth in the Debtors' Plan, Estimation Motion, New CMO Motion and TDPs need to provide a separate category for Libby Claims. Further, the merits of the Libby Claims will be addressed in the post-confirmation CMO process and, ultimately, the holders of legitimate Libby Claims may elect the Litigation Option for their Claims to be litigated against the Asbestos Trust if they are unwilling to settle their claims with the Asbestos Trust. This process protects the Libby Claimants in the same way it protects every other Asbestos PI Claimant.

The Libby Claimants also argue that they "carry an additional burden not borne by most other asbestos claimants" because their Claims result from exposure to a single source of asbestos and thus allow for only a single source of recovery. (Obj. of Libby Claimants ¶7) Libby Claimants are not necessarily unique in their position that there is only one source of recovery. To treat the Libby Claimants differently from other Asbestos Claimants would provide them with an unfair advantage. As such, the Debtors have drawn no distinction between the Libby Claimants and other Asbestos PI Claimants.

## VI. Plan Confirmability

A number of objections that were filed raise Plan confirmability issues -- specifically, impairment, voting and estimation. These objections were filed by the United States Trustee (Docket No. 7342), the Asbestos PD Committee (Docket No. 7343), the Asbestos PI Committee (Docket No. 7313/7315), the Future Claimants' Representative (Docket No. 7340), and the Libby Claimants (Docket No. 7335). Each such objection is addressed more fully in the Brief Regarding Certain Confirmation Issues and the other reply briefs filed concurrently herewith.

## VII. Other

The Estate of R. Rapisardi and the State of Montana have filed objections in which they state that they are not interested in, or are prohibited from, accepting parent common stock as a form of payment on their claims. (Docket Nos. 7329 and 7330 respectively) These are not

proper objections to a disclosure statement and should be brought in connection with Plan confirmation. The executor of the Estate of R. Rapisardi also comments that the original proof of claim he filed must be amended in light of additional costs incurred. Approval of the Amended Disclosure Statement does not affect the ability of a creditor to amend a timely filed proof of claim. Therefore, no response is required by the Debtors at this time.

[Remainder of page intentionally left blank]

## Conclusion

Wherefore, for the reasons stated herein, the Debtors respectfully request that the objections to the Disclosure Statement be overruled in their entirety and the Disclosure Statement, as amended, be approved by this Court.

Dated: January 7, 2005

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Jonathan P. Friedland
200 East Randolph Drive
Chicago, IL 60601
Telephone:   (312) 861-2000
Facsimile:   (312) 861-2200

KIRKLAND & ELLIS LLP
Bennett L. Spiegel
Lori Sinanyan
777 South Figueroa Street
Los Angeles, CA 90017
Telephone:   (213) 680-8400
Facsimile:   (213) 680-8500

-and-

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

_____
Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:   (302) 652-4100
Facsimile:   (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

91100-001\DOCS_DE:104396.2