IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**DEBTORS' REPLY IN SUPPORT OF THEIR
MOTION FOR ENTRY OF A CASE MANAGEMENT ORDER**

**Introduction**

Three and a half years ago, the Debtors[1] filed their Original CMO Motion. (Docket No. 536) The motion called for pre-confirmation common issues litigation and, ultimately, claims liquidation. These proposed litigation protocols, however, have never been ruled upon. The Debtors remain willing to pursue pre-confirmation liquidation of all asbestos claims, despite the concomitant delay that course would cause in confirming any plan of reorganization in these Chapter 11 Cases.

In the context of the currently pending Plan, the Debtors have proposed an alternative approach, set forth in the New CMO Motion, that contemplates liquidating claims primarily on a post-confirmation basis. The New CMO Motion proposes substantially the same litigation protocols as does the Original CMO Motion,[2] which protocols are dictated by the applicable

---

[1] Capitalized terms not defined herein shall have the same meaning as in the Glossary filed on November 13, 2004.

[2] Specifically, the New CMO Motion requests that the Court enter a case management order establishing the following five step process for the litigation and allowance/disallowance of all Asbestos Claims:

    i.    <u>Omnibus Objections and Summary Judgment</u>. The Debtors propose to use the information obtained from Asbestos PI Proofs of Claim, Asbestos PD Proofs of Claim, and Asbestos PI Questionnaires, and initially file omnibus claims objections and, where
(Continued...)

Bankruptcy Rules and the well-established conventions of common issues litigation. But the New CMO, if granted, would work with the other Plan-related Documents[3] to help bring about a speedier resolution of these Chapter 11 Cases, thus allowing the Debtors to emerge as a reorganized company.

---

necessary, move for summary judgment, requesting dismissal of Asbestos Claims that fail to meet certain threshold requirements for a valid Claim, including:

    1) Asbestos Claims that fail to comply with the requirements for completing and submitting the Proofs of Claim and Asbestos PI Questionnaires;

    2) Asbestos Claims that are based upon unreliable scientific evidence of injury or causation;

    3) Asbestos Claims that are subject to the statute of limitations defense;

    4) Asbestos Claims that fail to allege the requisite exposure to the Debtors' products; and

    5) Asbestos Claims that lack reliable evidence that the Debtors' products or conduct caused the claimed disease or property damage.

The omnibus objections and summary judgment motions would be filed with this Court on an aggregate basis, allowing the Court to efficiently resolve these questions on a common issues basis with respect to numerous pending Asbestos Claims.

    ii.    <u>Rule 42 Trials</u>. For those asbestos claims that withstand summary judgment, but which present common issues capable of resolution on an aggregate basis, the parties would proceed to common issues trials.

    iii.    <u>Application of Common Issues Trial rulings to pending claims</u>. The Debtors (or the Asbestos Trust established pursuant to the Plan) would file motions for summary judgment with respect to those individual claims or groups of claims that failed to state a claim under the court's common issues trial rulings.

    iv.    <u>Claims Review and Resolution Process</u>. Upon resolution of the common issues trials, and any follow-on summary judgment motions, the New CMO Motion would provide for an individualized claims review by the Debtors (or the Asbestos Trust) for purposes of determining a settlement offer, that, if necessary, would be followed by a settlement procedure, including mandatory, court-supervised mediation.

    v.    <u>Jury Trial</u>. Those holders of Asbestos PI Claims who reject the Debtors' (or the Asbestos Trust's) settlement offer and/or for whom the mediation process is unsuccessful, will retain any right to a jury trial in the District Court.

[3]  "Plan-related Documents" shall mean the Plan Documents, the Estimation Motion (Docket No. 6899), the New CMO Motion (Docket No. 6898) and the Confirmation Procedures Motion (Docket No. 6900).

2

To be clear, the Debtors have created two options: (i) the pre-confirmation litigation mechanisms that the Debtors previously sought in their Original CMO Motion[4] and (ii) the proposed Plan, predicated upon ultimate implementation of the post-confirmation protocols detailed in the New CMO Motion.

To the extent that the Court's consideration of the New CMO Motion encompasses those confirmability issues identified by the Court at the December 20, 2004 hearing, such issues are addressed in detail in the Debtors' Brief Regarding Certain Confirmation Issues. This Reply responds to the objections that have been filed specifically with respect to the New CMO Motion.

## Discussion

### I. The Court Must Consider the New CMO Motion in Conjunction with the Plan and other Plan-related Documents

The New CMO Motion should be considered concurrently with the remaining Plan-related Documents, as entry of an appropriate case management order is a predicate for the Debtors' Plan.

The Asbestos PD Committee contends that the Court should not consider the New CMO Motion at this time because, under the Debtor's Plan, all asbestos claims are channeled to a § 524(g) trust, which will administer the allowance or disallowance of all asbestos property claims. (Obj. of Asbestos PD Committee, at 45)  Additionally, both the Asbestos PD Committee and the Asbestos PI Committee argue that it is premature to consider the New CMO Motion. (Id., at 44);

---

[4] A comprehensive explanation of the pre-confirmation mechanisms outlined in the Original CMO Motion has already been extensively briefed in these Chapter 11 Cases (Docket Nos. 587, 1106, 1666).

(Obj. of Asbestos PI Committee, at 1). These objections ignore the critical interrelationship between the New CMO Motion and the other Plan-related Documents.

The Plan-related Documents collectively reflect the Debtors' integrated vision for concluding these Chapter 11 Cases within a reasonable period of time against a complicated backdrop in which questions regarding the scope of the Debtors' legal liability have not yet been resolved. The Plan-related Documents, including the New CMO Motion, are meant to achieve the goal that the Debtors have pursued from day one - a unified process for (i) determining which asbestos claims have substantive merit and should be allowed and (ii) paying such claims. All of the Plan-related Documents thus are interdependent and must be considered in context with each other.

This is no accident. The <u>law</u> dictates that the New CMO Motion be inextricably intertwined with the Debtors' Estimation Motion. Both motions focus on the same issue -- the scope of Grace's legal liability -- and both must comply with many of the same bankruptcy rules -- those rules that incorporate federal rules of procedure and evidence. Because both estimation and the CMO are governed by common rules, the methodology proposed by the Debtors for engaging in the estimation process will rest on precisely the same "liability filters" that are sought by the New CMO Motion. Specifically, the New CMO Motion requests that the Court implement litigation protocols that will serve -- post-confirmation -- to "filter out" claims that are without merit. The Estimation Motion, meanwhile, requests that the Court ground its valuations of each asbestos class on an aggregate basis on the legally mandated premise that the asbestos claims will indeed be litigated in accordance with the Bankruptcy Rules, as implemented through the protocols proposed by the New CMO Motion.

## II. The Procedures Previously Proposed for Defining Property Damage Liability Have Not Been Completed

The Asbestos PD Committee contends that many of the proposals made by the Debtors in the Original CMO Motion and again in the New CMO Motion (such as establishment of a bar date and institution of a protocol for "gateway objections") already have been implemented with respect to PD Claims, and that it is unclear what remains to be accomplished on case management and how such proposals would meld with the contours of the Debtors' Plan. (Obj. of Asbestos PD Committee, at 43)

While it is true that progress has been made with respect to PD Claims, as set forth below, key tasks contemplated by both the Original CMO Motion and the New CMO Motion have yet to be completed. The Court already has approved the procedure by which the Debtors may file initial, omnibus objections (the "Gateway Omnibus Objections") to groups of non-ZAI Asbestos PD Claims based on certain "gateway" deficiencies (e.g., insufficient supporting documentation, failure to include any product identification information, running of the statute of limitations, and claims being barred by prior settlements), but the objections have not yet been filed and litigated.[5]

---

[5] Pursuant to the Court's July 19, 2004 order (Docket No. 6009), the Debtors have served written notice on all holders of Claims to which the Debtors intend to object on the basis of materially insufficient supporting information. Those Claimants have until February 7, 2005 to provide any supplemental or additional information supporting their respective Claims. Curiously, on December 20, 2004, the PD Committee, in yet another attempt to avoid having PD Claimants provide information about these Claims, filed a Motion to Strike the Debtors Notice of Intent to Object to Claims on the Basis of Materially Insufficient Supporting Information and Opportunity to Supplement Claims. (Docket No. 7252) The Asbestos PD Committee alleges that the notice does not instruct the PD Claimants with enough specificity what material is not provided. This is especially curious since 2,893 (90%) of the 3,213 Claimants to which the notices were sent are represented by one law firm, which filed essentially identical deficient Claims for such Claimants. Once the time period to file the additional documents passes, the Debtors will assert any Gateway Omnibus Objections that they deem appropriate.

For example, the Debtors anticipate that many claims will be barred by a statute of limitations defense that is grounded on the doctrine of constructive notice. Rule 42 proceedings could be held to resolve the issue, common to many non-ZAI Asbestos PD Claims, of when claimants should be deemed to have been on constructive notice of their claims. The Court could then apply its determinations with respect to these common issues to promptly invalidate those claims that cannot withstand the Debtors' statute of limitations defense.

Other examples of common issues whose resolution could affect the disposition of multiple non-ZAI Asbestos PD Claims are the issues of product defect and causation. The Debtors believe that claimants will not be able to make the threshold showing, required by Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), that there exists reliable scientific evidence demonstrating an unreasonable risk from certain of the Debtors' products. See, e.g., In re Armstrong World Indus., Inc., 285 B.R. 864, 871 (Bankr. D. Del. 2002) (excluding expert opinions and other evidence because there was no valid scientific connection between the methodology upon which such opinions and evidence were based and they failed to address the "pertinent inquiry" regarding the risk of the debtors' products). If the Debtors' New CMO Motion is adopted, the Court could proceed to resolve this issue, and, if the Court rules in the Debtors' favor, many claimants will not be able to establish the existence of a product defect or of causation, and their claims can be disposed of by applying the Court's common issues rulings to such claims.

Other claim-specific but repetitive issues can be quickly resolved through summaries of claim form responses and the Debtors' proposed litigation protocols. These include product identification, assumption of risk, and laches.

91100-001\DOCS_DE:104400.1

The protocols contemplated by both the Original CMO Motion and the New CMO Motion thus may be used to resolve many of the non-ZAI Asbestos PD Claims that withstand, or otherwise are not subject to, the Gateway Omnibus Objections. As shown by the following chart, the Debtors expect that a substantial number of the approximately 4,000 non-ZAI Asbestos PD Claims will be efficiently disposed of through such protocols. Of course, some claims are subject to multiple defenses and, once disallowed, cannot be counted in the total for any other applicable defenses.

| IMPACT OF COMMON ISSUES LITIGATION ON PD CLAIMS[6] | | |
|---|---|---|
| **DEFENSE** | **APPLIES TO** | **ESTIMATED IMPACT** |
| Statute of Limitations | Claims asserted more than X years after Claimants have been on notice of their Claims (exact number varies by state) | 3,360 Claims |
| Product Identification | Claimants who cannot show presence of Debtors' products at property | 2,827 Claims |
| Laches | Claimants who have delayed bringing their Claims | 3,461 Claims |
| Settlement | Claimants whose Claims are barred by prior settlement | 197 Claims |
| Statute of Repose | Claims asserted more than X years after installation of Debtors' products (exact number varies by state) | 3,365 Claims |
| Assumption of Risk | Claimants who understood the risks of asbestos | 2,822 Claims |

---

[6] The chart is not meant to be exhaustive of all defenses upon which the Debtors believe common issues litigation will have an impact. Rather, the chart provides examples of defenses that the Debtors believe will apply to the largest number of non-ZAI Asbestos PD claims.

### III. The Debtors' Position with Respect to Common Issues Litigation is Consistent with Previous Positions

The common issues litigation proposed by the Debtors in the New CMO Motion is not inconsistent, as the Asbestos PD Committee contends (Obj. of Asbestos PD Committee, at 46-49), with the Debtors' position in a number of pre-Petition Date cases in which the Debtors opposed class certification on the basis that individual issues precluded class certification. The Asbestos PD Committee quotes extensively from briefs filed by W. R. Grace in the class action proceedings <u>Dayton Independent School District v. W.R. Grace & Co.</u> and <u>Kirbyville Independent School District v. Asbestospray Corp</u> in alleged support of its argument that the Debtors have previously opposed in the class action litigations what they now propose here. This simply is not true.

As an initial matter, the Asbestos PD Committee's objection confuses the adjudication of claims in a class action, which is what was proposed in the <u>Dayton</u> and <u>Kirbyville</u> cases - with resolving common issues in bankruptcy through Rule 42 proceedings. Critically, no finding of predominance is required under Rule 42. Further, because this is a bankruptcy proceeding, all current claimants will appear before this Court. Thus, instead of allowing a few named plaintiffs to litigate on behalf of all, each claimant can be required to support his or her own claim.

Second, there were and remain good reasons why class certification was inappropriate in the prior cases. In <u>Dayton</u>, for example, Grace opposed a plan to try certain claims commonly for five out of eighty-two public school districts in the proposed class. The <u>Dayton</u> case involved not just a single product but many, many other asbestos defendants were involved, and claims were made not just for replacement but also for contamination.

Additionally, the cases cited by the Asbestos PD Committee are outdated. <u>Daubert</u> had not been decided at the time of those earlier cases, and anticipated defenses such as constructive

8

notice and statute of limitations had not yet ripened. As discussed above, the <u>Daubert</u> doctrine now renders it possible for the Court to address common issues such as whether reliable scientific evidence shows that the Debtors' products posed a demonstrably unreasonable risk. Further, the state of technological advancement has improved markedly in the intervening years, making possible threshold determinations of risk that were not feasible before.

### IV.  Entry of the Case Management Order would Leave Asbestos Claimants Unimpaired under Bankruptcy Code § 1124

The Future Claimants' Representative contends that changes to procedural and other rights under the protocols proposed in the Debtors' New CMO Motion constitute impairment under Bankruptcy Code § 1124 and that any of the proposed litigation protocols would necessarily impair asbestos claimants. (Obj. of FCR, at 9-10) Because the issue of impairment is discussed in the Debtors' Brief Regarding Certain Confirmation Issues in Section I, the Debtors refer the Court to that document for a thorough discussion of the reasons that the Debtors' New CMO Motion, in addition to the other Plan-related Documents, leaves asbestos claimants unimpaired under Bankruptcy Code § 1124.

### Conclusion

The litigation protocols proposed by the Debtors in the New CMO Motion (and, alternatively, in the Original CMO Motion) represent the most efficient and effective mechanisms for the prompt resolution of asbestos claims in these Chapter 11 Cases, whether such resolution occurs pre- or post-confirmation. The proposed protocols reflect a clear road map for resolving issues regarding the Debtors' liability and for ultimately determining the amounts to be distributed by the Asbestos Trust to individual holders of allowed asbestos claims. In turn, the protocols will guide the Court's estimation of the amount to be contributed by the Debtors to the Asbestos Trust for purposes of ultimate payment on account of such allowed

individual claims. Because of the interrelation between the New CMO Motion and the other Plan-related Documents, the Court should address the New CMO Motion in conjunction with the Plan-related Documents. And, because the New CMO Motion, along with the other Plan-related Documents, constitutes the only viable means by which to facilitate the Debtors' prompt emergence from these Chapter 11 cases while still providing for the effective and equitable resolution of non-settling asbestos claims post-confirmation, the Court should enter an order granting the relief requested in the New CMO Motion.

Dated: January 7, 2005

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Jonathan P. Friedland
200 East Randolph Drive
Chicago, IL 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

KIRKLAND & ELLIS LLP
Bennett L. Spiegel
777 South Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 680-8400
Facsimile: (213) 680-8500
-and-

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession