IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

## **DEBTORS' REPLY IN SUPPORT OF THEIR ESTIMATION MOTION**

### **Introduction**

The central issue in these Chapter 11 Cases[1] has always been the extent to which the Debtors are legally liable for asserted and threatened asbestos-related claims. Promptly after filing these Chapter 11 Cases, the Debtors proposed in June 2001 to define the Debtors' asbestos liability using Federal Rule of Civil Procedure 42 common issue litigation before plan confirmation. This proposal was adopted for property claims but -- for almost four years now -- the Debtors' motion effectively has been continued as to personal injury liability. Through the Estimation Motion and the New CMO Motion, the Debtors propose an alternative protocol which calls for an estimation of the Debtors' liability pre-confirmation, with common issue litigation to follow pre- or post-confirmation. The Debtors are prepared to pursue either approach.

There are three principal contexts in which bankruptcy courts have engaged in estimation: (a) pursuant to Bankruptcy Code § 502(c), under which contingent or unliquidated claims are estimated for purposes of allowance if fixing or liquidating the claims would unduly delay the administration of a case; (b) pursuant to Bankruptcy Rule 3018(a), which permits a

---

[1]    Capitalized terms not defined herein shall have the same meaning as the Glossary filed on November 13, 2004.

court to temporarily allow claims subject to objection to vote in chapter 11 cases; and (c) pursuant to Bankruptcy Code §§ 502(c), 1129, and/or 524(g), to determine the size of a debtor's liability to a creditor or class of creditors or a class of future claimants for various purposes including determining plan feasibility. Regardless of which purpose estimation is to serve, <u>any estimation proceeding must comport with clear legal parameters</u>.

**First**, estimation is of the validity and value of claims. The validity and the value of claims are controlled by the applicable substantive law. In virtually every case where estimation has been used to address a disputed liability for any purpose, the courts have been clear that in engaging in estimation:

> The court is bound by the legal rules which may govern the ultimate legal value of the claim. For example, when the claim is based on an alleged breach of contract, the court must estimate its worth in accordance with accepted contract law.

<u>Bittner v. Borne Chem. Co., Inc.</u>, 691 F.2d 134, 135-37 (3rd Cir. 1982) (bankruptcy court affirmed where it "estimated the value of . . . stockholders' claims according to the ultimate merits of their state court action"). <u>See</u> <u>In re Brints Cotton Mktg., Inc.</u>, 737 F.2d 1338, 1340-41 (5th Cir. 1984) (affirming a bankruptcy court's estimation of the value of certain contingent "on-call contracts" for purposes of a liquidation based on applicable principles of bankruptcy law and state law); <u>In re Aspen Limousine Serv., Inc.</u>, 193 B.R. 325, 337 (D. Colo. 1996) (in conducting estimation, "the court is bound by the legal rules governing the ultimate value of the claim"); <u>In re Kaplan</u>, 186 B.R. 871, 874 (Bankr. D.N.J. 1995) (stating that in conducting estimation, "[t]he court is of course bound by 'the legal rules which may govern the ultimate value of the claim'"); <u>In re O.P.M. Leasing Serv., Inc.</u>, 79 B.R. 161, 166 (S.D.N.Y. 1987) (same). <u>See also</u> <u>In re Farley, Inc.</u>, 146 B.R. 748, 753 (Bankr. N.D. Ill. 1992) (the estimation inquiry requires application of "relevant laws" which govern liability).

**Second**, estimation is a process governed by the Bankruptcy Rules, which, in turn, incorporate the Federal Rules of Evidence. <u>See</u> Fed. R. Bankr. P. 9017 ("The Federal Rules of Evidence . . . apply in cases under the Code."). Because evidence of actual liability is a fundamental issue in any estimation proceeding, the prohibition on the use of prior settlements as evidence of actual liability under FRE 408 is of particular importance. <u>See</u> Fed. R. Evid. 408 ("[E]vidence of . . . furnishing valuable consideration in compromising or attempting to compromise a claim . . . is not admissible to prove liability for . . . the claim or its amount.").

**Third**, proceedings involving estimation are conducted as "contested matters" under Bankruptcy Rule 9014, which makes certain of the procedural rules applicable to adversary proceedings in Part VII of the Bankruptcy Rules directly applicable in contested matters. <u>See</u> Fed. R. Bankr. P. 9014. The rules under Part VII of the Bankruptcy Rules, in turn, largely incorporate the Federal Rules of Civil Procedure.

Although no party has objected to the concept of estimation, the Asbestos PI Committee, the Asbestos PD Committee and the Libby Claimants argue, among other things, for an "estimation" methodology based upon an abrogation of the entire concept of legal liability and a flagrant violation of the rules.[2] All of this is in service of their fervent desire to have this case governed, as the Debtors were governed before this case was filed, by the conventions of a one-sided settlement process that (i) has devastated company after company, (ii) deploys the threat of repetitive trials in the most permissive jurisdictions in the United States, and (iii) now has come

---

[2]    Although the Asbestos PD Committee argues that estimation must be conducted on a claim by claim basis, this is an issue regarding methodology. In any event, estimation of classes of claims is authorized for the reasons discussed in the Brief Regarding Certain Confirmation Issues.

back to haunt even the bankruptcy trusts by sapping their ability to pay fair compensation to the small minority of claimants who actually have sustained an injury.

The Debtors' historical settlement of asbestos-related claims has no bearing on their actual legal liability. The settlements are not even permitted evidence of liability. See Fed. R. Evid. 408. And the historical settlements were driven by a litigation process acknowledged by all but the asbestos plaintiffs' lawyers to be broken.

The Objectors present a number of additional arguments that are little more than cloaked attempts to buttress the use of settlement history. For example, the Asbestos PI Committee objects to Bankruptcy Code-sanctioned bar dates and the now conventional use of information questionnaires, attempting again to exclude information beyond settlement history. And the Asbestos PI Committee speciously asserts that the Debtors have not provided sufficient detail as to how claims will be valued. Once more the strategy is clear: prevent access to information in order to preclude any estimation process not based on settlement history.

The Debtors' proposal presents the only path that would provide any real definition to the Debtors' asbestos liability. It is the only path that adheres to the basic rules of evidence and procedure that are adopted in the Bankruptcy Code. No extension of the law is necessary, and none is advocated. The legal difference between the proposals of the Debtors and that of the Objectors could hardly be more pronounced: the Debtors' approach is mandated by – while the Objectors' approach violates – rules of procedure, evidence and the Bankruptcy Code. As discussed below, the Estimation Motion should be granted in its entirety and the Objectors' attempts to eschew the statutory scheme governing estimation should not be countenanced.

**Discussion**

I.    **Estimation of Asbestos PI Claims**

    A.    **Establishment of an Asbestos PI Pre-petition Litigation Bar Date and Questionnaire Return Date are Essential to the Estimation Process**

The first stage in the process of determining the value of submitted asbestos claims is to define the universe of pending claims and objections. No bar date has been set for Asbestos PI Pre-Petition Litigation Claims. Accordingly, the Debtors respectfully requested in the Estimation Motion that this Court: (a) approve the form and use of the Asbestos PI Pre-Petition Litigation Bar Date Notice, the Asbestos PI-Proof of Claim, the Asbestos PI Questionnaire Notice and the Asbestos PI Questionnaire and (b) establish the Asbestos PI-Pre-Petition Litigation Bar Date and the Questionnaire Return Date.

    1.    <u>Asbestos PI Pre-petition Litigation Bar Date</u>

Eschewing well-established law to the contrary, the Asbestos PI Committee objects to even the most routine and preliminary phase of determining the value of asbestos claims -- the establishment of a proof of claim bar date. (Obj. of Asbestos PI Committee, at 28) In an attempt to support this untenable position, the Asbestos PI Committee argues that nothing in the Bankruptcy Code or Rules requires a proof of claim as a prerequisite for having claims considered. (<u>See</u> Obj. of Asbestos PI Committee, at 28 n.6.) The Asbestos PI Committee further asserts that the primary purpose of the bar date/proof of claim process is the achievement of finality in bankruptcy proceedings and is inapplicable in the Debtors' cases because a final resolution of asbestos personal injury claims will occur only after the Plan becomes effective and a trust is established. (<u>See</u> <u>id.</u>)

Contrary to the Asbestos PI Committee's assertions, the establishment of a proof of claim bar date serves the important purpose of "enabl[ing] a debtor and his creditors to know,

reasonably promptly, what parties are making claims against the estate and in what general amounts." In re Kolstad, 928 F.2d 171, 173 (5th Cir. 1991), cert. denied, 502 U.S. 958 (1991). Accordingly, the prompt establishment of a bar date is essential in Chapter 11 cases such as these, involving the resolution of thousands of asserted tort claims. Jones v. Chemetron Corp., 212 F.3d 199, 205 (3d Cir. 2000) (bar date established for toxic tort claims asserted by individuals in vicinity of nuclear waste dump); In re Dow Corning Corp., 142 F.3d 433 (6th Cir. 1998) (bar date set for claimants alleging that breast implants caused disease); In re Babcock & Wilcox Co. (Babcock II), No. 00-10992, 2000 WL 1511175 at *1 (E.D. La. Oct. 6, 2000) (setting bar date for asbestos claims); In re Celotex Corp., 204 B.R. 586, 593 (Bankr. M.D. Fla. 1996) (noting that court established an asbestos personal injury bar date). See, e.g., In re Eagle-Picher Indus., Inc., 137 B.R. 679, 681 (Bankr. S.D. Ohio 1992) (observing that in the context of an asbestos mass-tort bankruptcy setting a prompt bar date "fixing the number and identity of such claimants will lend considerable assistance to the process of arriving at a value of the claims of this class."). Cf. In re Best Prods. Co., 140 B.R. 353, 357 (Bankr. S.D.N.Y. 1992) (noting that personal injury claimants are not entitled to any special dispensation regarding the bar date in Chapter 11 reorganizations).

Although future claimants are not governed by the bar date, no estimate of future liability can be done without an identification of the number, nature and validity of present asbestos-related claims.

### 2.    Questionnaire Return Date

In addition to objecting to a bar date, the Asbestos PI Committee also objects to the use of the Questionnaire and the establishment of a Questionnaire Return Date. (Obj. of Asbestos PI Committee, at 14-15)  First, the Asbestos PI Committee argues that the Debtors provide no detail as to how the Questionnaire information will be quantified and evaluated. (Id. at 14)  Second,

the Asbestos PI Committee argues that the Questionnaire would require claimants to provide "mind-boggling" details that would only be amassed through "full-blown discovery" in the tort system. (See id. at 14, 15) Similarly, the Libby Claimants argue that the Questionnaire requests information not available. (Obj. of Libby Claimants, at 17) Finally, the Asbestos PI Committee summarily asserts that requiring claimants to file a proof of claim and a Questionnaire in order to assert claims against the Debtors somehow "violates basic bankruptcy law principles." (Id. at 28-29) These arguments are simply without merit.

The Asbestos PI Committee's argument that the Debtors provide no details as to how the Questionnaire information will be evaluated is, at best, disingenuous. During the decades of asbestos litigation, certain key issues have become apparent. The Questionnaire has been carefully tailored to obtain information regarding these key issues by merely requesting that claimants who have already initiated suit against the Debtors, and thus have affirmatively put these issues in play, provide critical information relating to their claims. The Asbestos PI Committee is fully aware of both the key issues and the information necessary to address these issues.

Any estimate of the Debtors' liability will be significantly lower if the estimate is only for those claims for which the Debtors have actual liability:

- The Debtors do not have actual liability to those claimants who are unable to demonstrate that they were significantly exposed to the Debtor's asbestos-containing products;

- The Debtors do not have actual liability to those claimants whose medical screening and diagnosis were not done independently and replicated; and

- The Debtors do not have actual liability where the claimants do not have medical impairment.

After the Questionnaires are completed, the Debtors' experts will be able to more accurately estimate those claims for which the claimants are able to demonstrate that they were

exposed to the Debtors' asbestos-containing products, reliably diagnosed, and have been found to be significantly medically impaired. In addition, the completed Questionnaires will allow the Debtors to determine if there are other groups of claimants who can be excluded from the estimate because the Debtors are not legally liable for their claims. Thus, once the Questionnaires are completed by the pending claimants, it is likely that an estimate of the Debtors' actual legal liability would be reduced even further.

Rather than requesting "full-blown discovery" or "mind boggling" details, the Questionnaires merely request claimants to identify the factual basis for their claims. This information is readily obtainable because the Estimation Motion focuses on claimants who have already retained counsel and gathered enough data to file a compliant against the Debtors. Moreover, the mere fact that every claimant may not have the information to answer every question does not render the Questionnaires inappropriate.

Finally, the Asbestos PI Committee's assertion that requiring completion of the Questionnaires somehow violates basic bankruptcy law is precisely backwards. As demonstrated above, disputes regarding the estimation of claims are contested matters governed by the Bankruptcy Rules, which require compliance with the Federal Rules of Evidence and the Federal Rules of Civil Procedure. Because these rules can only be met through evidence-based estimation, the Questionnaires fall squarely within the purview of those rules. Thus, it is not surprising that prior mass-tort bankruptcies have used such specialized proof of claim and questionnaire forms. See, e.g., In re A.H. Robins Co., 862 F.2d 1092 (4th Cir. 1988) (approving required questionnaire accompanying official claim form); In re Babcock & Wilcox Co., Case No. 00-0558 (Bankr. E.D. La.) (October 30, 2000 Order, Docket No. 70) ("The form and content of the Babcock & Wilcox Special Claims Form . . . are authorized by Bankruptcy Rule 3001(a)

and are otherwise fair and reasonable."); In re Celotex Corp., 204 B.R. 586, 593 (Bankr. M.D. Fla. 1996) (discussing court-approved special asbestos proof of claim form); In re Eagle-Picher Indus., Inc., 158 B.R. 713, 716 (Bankr. S.D. Ohio 1993) (referencing court-approved asbestos proof of claim form).  Customized claim documentation requirements have also been used in the process of liquidating asbestos personal injury claims, the most notable example being the Johns-Manville case.  See In re Joint E.&S. Asbestos Litig., 878 F. Supp. 473, 585-87 (S.D.N.Y. 1995).

The court in Robins, for example, required claimants to complete a customized questionnaire as part of the proof of claim before the court considered whether to allow or disallow claims.  See Robins, 862 F.2d 1092 (approving required questionnaire accompanying official claim form).  Among other things, "[t]he court questionnaire was designed to give Robins an opportunity to object to any claim that was facially invalid."  Francis E. McGovern, Resolving Mature Mass Tort Litigation, 69 B.U.L. Rev. 659, 677 (1989).  Consequently, it elicited basic background information, "information of the claimant's use of the Dalkon Shield, the type of injury alleged and the names of physicians or clinics visited by the claimant." Robins, 862 F.2d at 1093.  Completion of the questionnaire, which was "part of the requirement of a 'Proof of Claim'" was an "essential step" in perfection of the claim.  Id. at 1095-96 n.4.

3.    Settlement History Cannot Substitute for Liability Information Received Through the Proofs of Claim and Questionnaires

Objectors' fundamental argument is that the proposed estimation focuses on actual liability rather than settlement history.  Incorrectly assuming that estimation must be based on settlement history, the Objectors question the probative value of the information obtained through the Questionnaires.  As demonstrated below, estimation must be based on the actual

liability of classes of claims and cannot be based on settlement history.   Accordingly, the Questionnaires are essential to estimating the Debtor's asbestos claim liability.

As a threshold matter, Federal Rule of Evidence 408 expressly bars using evidence of a settlement to prove liability.  See Fed. R. Evid. 408 ("Evidence of . . . furnishing or offering or promising to furnish . . . a valuable consideration in compromising or attempting to compromise a claim . . . is not admissible to prove liability for . . . the claim or its amount.") (emphasis added); Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1247 (3d Cir. 1993) (evidence of settlement in two antitrust actions inadmissible under Fed.R.Evid. 408), cert. denied sub nom. Moyer Packing Co. v. Petruzzi's IGA Supermarket, Inc., 510 U.S. 994 (1993); In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238, 275 (3d Cir. 1983) (consent decision in electronics products "dumping" proceeding was not admissible in related civil judicial proceeding), rev'd on other grounds sub nom, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 471 U.S. 1002 (1985).  Thus, as a matter of law, the Debtors' settlement history and estimation based on that history cannot be considered in adjudicating actual legal liability to any group of claimants.  Liability must be proven in the manner proposed in the Estimation Motion: by evidence on each element of a substantive cause of action.

In addition to violating the Federal Rules of Evidence, estimation on the basis of settlement history is contrary to the Bankruptcy Code itself.  The Bankruptcy Code specifically bars recovery for claims that are not enforceable.  See 11 U.S.C. § 502(b)(1).  In implementing these principles, the Bankruptcy Code requires a detailed claims objection process to ensure that only valid claims receive compensation.  First, individuals asserting a claim are required to submit a proof of claim.  See 11 U.S.C. § 501(a).  The debtor is then afforded the opportunity to make objections to any asserted claims.  See 11 U.S.C. § 502(a).  Where there is any dispute

concerning the validity of a claim, that dispute must be resolved.  Pursuant to Section 502, "the court, after notice and a hearing, shall determine the amount of such claim."  See 11 U.S.C. § 502(b).  However, the court must not allow any claim that is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law."  See 11 U.S.C. § 502(b)(1).

Under the plain language of the Bankruptcy Code, these procedures must be employed to eliminate claims for which the debtor is not liable.  See, e.g., In re G.I. Indus., Inc., 204 F.3d 1276, 1281 (9th Cir. 2000) ("[a] claim cannot be allowed [under section 502(b)(1)] if it is unenforceable under nonbankruptcy law."); In re Sanford, 979 F.2d 1511, 1513 (11th Cir. 1992) ("a claim against the bankruptcy estate will not be allowed in a bankruptcy proceeding if the same claim would not be enforceable against the debtor outside of bankruptcy"); In re Buchholz, 224 B.R. 13, 19 (Bankr. D.N.J. 1998) (disallowing claim that was "defective under both Federal and New Jersey State law"); Matter of Nuisance Corp., 17 B.R. 80, 82 (Bankr. D.N.J. 1981) ("If . . . the claim falls within one of the paragraphs of § 502(b), it is simply not allowable . . . . To the extent that applicable law, including state law, provides the debtor a defense to the claim of a creditor, absent bankruptcy, such defense is available . . . in objecting to the claim.").

Thus, Debtors have the ability to contest the validity of claims, yet the Objectors seek estimation of liability without reference to validity of claims.  Statistical extrapolation cannot be used to avoid the requirement of the Bankruptcy Code that only valid claims can be paid, and therefore only valid claims need be provided for in a post-confirmation trust.  Where, as here, liability is disputed, there must be a liability determination before any statistical analysis.

### B.   Objections to Expert Testimony are Premature

The Asbestos PI Committee argues that the testimony of the Debtors' expert will be inadmissible. It is, however, premature to argue about whether potential expert opinions will be admissible. There will be a contested hearing on estimation, and the Asbestos PI Committee and other objecting parties can then contest the methodology of the Debtors' experts.

### II.   Estimation of PD Claims

The Debtors have already gathered substantial information relating to traditional Asbestos PD Claims, and the Debtors have moved this Court for the approval of a ZAI Claims Bar Date and Proof of Claim Form. (Docket No. 7250) The Estimation Motion simply requests that the Court utilize its power under Bankruptcy Code § 502 and elsewhere in the Bankruptcy Code to estimate the value of claims in the aggregate.[3] The result can be used in determining the value of the entire universe of Asbestos PD Claims, determining Plan feasibility, and capping the Debtors' liability on account of such claims.

Despite the Asbestos PD Committee's suggestions to the contrary, estimating such Claims not only is obviously provided for in the Bankruptcy Code, it is far from a novel concept. This methodology allows a debtor to emerge from bankruptcy without waiting for the adjudication of each and every individual claim. The Debtors have been in bankruptcy for almost four years; there is no reason to delay their reorganization.

---

[3]   Depending on the timing of Confirmation, it is possible that the allowance of a number of individual Asbestos PD Claims could also be adjudicated by this Court before the Plan is confirmed. The Debtors would like to move forward with all possible facets of these Chapter 11 Cases and, to the extent that ancillary issues delay Plan Confirmation, the Debtors would seek to move ahead with resolution of specific Asbestos PD Claims.

A.    **The Debtors' Gateway Objections do not Require the Involvement of Every Asbestos PD Claimant**

The PD Committee incorrectly states that it "is <u>axiomatic</u> that each and every one of the identified defenses (the Gateway Objections) are fact specific and not susceptible to group determination" and, therefore, (i) "it will be necessary to consider each defense to Asbestos PD Claims on a claim by claim basis." (Obj. of Asbestos PD Committee, at 53-54)  This statement is certainly not axiomatic and, in fact, it is plain wrong.

The Asbestos PD Committee's argument reflects a fundamental misunderstanding of the purposes of the Estimation Motion.  The Debtors' estimation proposal does not (although it could) ask for the adjudication of individual Asbestos PD Claims during the estimation process. Instead, the Debtors are seeking to engage in common issues litigation for the purpose of resolving certain fundamental-issues that will ultimately affect the allowability and value of groups of Asbestos PD Claims.  Depending on the timing of Plan Confirmation, individual claim adjudication could occur before or after Confirmation.  In any event, it would necessarily follow resolution of the Gateway Objections and estimation process.

The Debtors received approximately 4,200 traditional Asbestos PD Claims pursuant to the March 2003 Bar Date.  As a result of various Court-rulings, there are approximately 4,000 active traditional Asbestos PD Claims.  The Debtors' attorneys and legal assistants have already reviewed the information provided in each of the Asbestos Property Damage Proofs of Claim to determine whether a factual basis exists for the assertion of one or more objections including:

- Statute of Limitations or Repose
- Res Judicata
- Prior Settlement
- Product Identification
- Not a Grace Product
- Assumption of Risk
- Claimants with Notice of Alleged Defect

- Laches
- Duplicate Claim
- Insufficient Documentation
- Wrong Debtor
- Not an Asbestos PD Claim
- Invalid Claim Form

These categories would serve as the first set of "filters" for purposes of estimation. In this respect, the Court has already endorsed a process for allowing the Debtors to engage in this sort of preliminary common-issue filtering. On July 19, 2003, this Court entered the Order Granting Limited Waiver of Del. Bankr. LR 3007-1 for the Purpose of Streamlining Objections to Claims (the "3007-1 Order"). (Docket No. 6009) The 3007-1 order grants the Debtors a limited waiver of Local Rule 3007-1, so that the Debtors' may file omnibus objections, based upon certain "Gateway Objections," against an unlimited number of Claims without forfeiting their rights to raise subsequent, substantive objections with respect to the same Claims. The 3007-1 Order defines "Gateway Objection" as an objection based upon any of the following: (i) Claims with substantially incomplete poof of claim forms; (ii) Claims that contain materially insufficient supporting information; (iii) Claims that fail to include any product identification information; (iv) Claims that are barred by applicable statutes of limitation or repose; (v) Claims that are barred by laches; and (vi) Claims that are barred by prior settlements.[4]

To provide an example of how the filters can work: With respect to Claims that are barred by the applicable statute of limitations, the Debtors would ask the Court to determine the facts that control the date of constructive notice (when Claimants should have known that they

---

[4]   The 3007-1 Order extends to any proof of claim that was submitted pursuant to the March 2003 Bar Date. Its provisions, however, are particularly applicable to Asbestos PD Claims, as many of the Claims that were submitted are substantially incomplete or fail to include the necessary supporting documentation.

had a claim against the Debtors).  Other federal courts have decided this issue.  In *Prudential* Ins.

Co. of America v. U.S. Gypsum Co., 359 F.3d 226 (3d Cir. 2004), the Third Circuit upheld a

district court decision that a lawsuit, which was brought by the owner and operators of buildings

that installed asbestos-containing materials against asbestos manufacturers to recover the costs of

monitoring and remediation, was time-barred because the plaintiffs "knew or should have

known" of their injuries before the relevant date for purposes of the applicable statute of

limitations, based upon their obligations to take "reasonable diligence in discovering or

investigating [their] injuries."  Id. at 238.

In the present instance, such determinations could then be applied to specific Claims

using the applicable statute of limitations for the state whose laws govern the respective Claim.

This process will provide an efficient mechanism for resolving common issues and facts that can

be applied to each, individual claim.  To the extent issues turn on facts that vary, relevant facts

have been gathered through the claim forms and the estimation can proceed using summaries of

the responses made.

Notably, when the Court considered the Debtors' motion for a leave from Local Rule

3007-1 for purposes of streamlining objections to Claims, the Asbestos PD Committee argued

that it would be impossible for the Debtors to ascertain gateway objections with respect to

statutes of limitations.  However, the Court summarily dismissed this line of argument and, in

response, stated as follows:

> This case could go on for the next twenty-five years if the debtor is
> forced to bring a claim objection, one at a time, against every --
> every claimant.  Not just the property damage claims, but every
> claimant.  There is no court, that I know of, that handles mega
> cases like this, that requires specific objections for every claim.
> They're all handled by omnibus objections.  So I don't see that as a
> problem.

(Tr. from March 22, 2004 Omnibus Hearing, at 15, lns. 9-17)

The Debtors have already sent Notices of Intent to Object to approximately 3,100 parties that submitted Asbestos Property Damage Claims that are materially incomplete or substantially lack supporting documentation.  To the extent that the respective parties do not submit the requisite materials within 60 days from the date these notices were sent, the Debtors intend to object to each of such Claims as well as the remaining claims with Gateway deficiencies.  Each of these claims (roughly 2,900 of the 3,100 total deficient-claims) was filed by the same law firm.  Most of the claims submitted by this law firm are substantially similar.  Therefore, to the extent the Court determines that one of these claims lacks sufficient information or supporting documentation, the remainder of claims submitted by the firm would necessarily suffer from the same deficiency.  The disposition of such claims could be determined on a show cause basis.

Completed property damage claim forms submitted by the March 31, 2003 bar date indicate that the vast majority of the property damage claims are barred for a number of reasons, including that:

- Claims did not identify any of the Debtors' asbestos-containing products on the property.  Indeed, some of the claims affirmatively identified only products that did not contain asbestos.  Excluding claims that did not identify the Debtors' asbestos-containing products reduced the number of claims by approximately 70%.

- With respect to statute of limitation determinations, the claimants' responses to the claim form questionnaires and supporting documents were reviewed to determine where possible such facts as: (1) when the claimant knew or should have known of the presence of asbestos in the building at issue, (2) whether and when major renovations were performed that affected or disturbed the asbestos, (3) whether and when abatement of the asbestos occurred, (4) whether the claimant built or purchased the building with actual or presumptive knowledge of the asbestos, and (5) whether and when the claimant previously filed a claim or lawsuit relating to asbestos.  These facts were compared to the limitations period applicable in the state in which the building at issue was located.  Excluding claims to which the statute of limitations defense applies reduces the claims by 85%.

Claims should also be excluded based on other defenses.  For example, the Debtors will exclude claims that are barred by res judicata or that have already been settled.  The Debtors also will

exclude claims barred by the assumption of risk defense. Indeed, many of the claims are subject to multiple defenses. In total, of the approximately 4,000 property damage claims, the Debtors have already determined that they have no legal liability for at least approximately 94% of the claims.

**B.    The Estimation of Asbestos PD Claims Will not Involve Dueling Testimony With Respect to Conclusions of Law**

The Asbestos PD Committee argues that the "most complex of tasks ahead of us" cannot be "simply left to 'experts' or accomplished by the adjudication of 'common issues'" because "the expert testimony of an attorney as to the ultimate issue of domestic law or as to the legal significance of facts is inadmissible." (Obj. of Asbestos PD Committee, at 52)

This argument is entirely irrelevant at this point. The Federal Rules of Evidence, Federal Rules of Civil Procedure, and Bankruptcy Code provide clear rules concerning the presentation and admissibility of evidence in the context of bankruptcy cases. To the extent that the Asbestos PD Committee believes that the Debtors' evidence contravenes these rules, they can certainly challenge this evidence when it is presented. However, it is inappropriate for them to ask this Court to (i) assume that the Debtors' evidence will be inadmissible and (ii) deny the Estimation Motion based upon this assumption.

**C.    The Asbestos Property Damage Proof of Claim Form Provides all Necessary "Data Points" for Estimating Traditional Asbestos PD Claims**

The Debtors do not need additional detailed square-footage information (about amount of asbestos-containing products in the structures for which the Asbestos Property Damage Proof of Claims were filed) in order to estimate traditional Asbestos PD Claims that are not resolved through the Gateway Objections or other summary judgment scrutiny. The Debtors did not request this information in the Asbestos Property Damage Proof of Claim because it would have been redundant. The vast majority of buildings with the Debtors' asbestos-containing products

are either commercial or public buildings. Based upon the Debtors' litigation experience, they anticipated that, by the March 2003 Bar Date, the owners of any such building would have documents--such as AHERA surveys, asbestos building surveys and asbestos abatement documents--that would include one or more estimates concerning the product square-footage. In this respect, the Asbestos Property Damage Proof of Claim requested any supporting documentation that the Claimant possessed. The Debtors anticipated that product square-footage information would be included in this documentation, which was intended to allow the Claimant to support the value of the claims asserted on the face of the form. Further, since the average property owner is not likely to know this information without ancillary investigation, the inclusion of this information in the Asbestos Property Damage Proof of Claim may have dissuaded potential Asbestos PD Claimants from filing Claims. The Debtors -and various other parties in interest in the Chapter 11 Cases - were very careful to develop a proof of claim form that requested the necessary information, without dissuading parties from filing a claim.

In any event, if the Asbestos PD Committee truly felt that the Asbestos Property Proof of Claim needed to request information concerning the amount of asbestos-containing product in the structure, then the appropriate time to contest this issue was during the prolonged hearings and negotiation process that gave rise to the Court-approved Asbestos Property Proof of Claim Form. The form has been approved, and has been distributed to potential Claimants, and the parties wishing to assert claims have submitted their proof of claim forms. The Asbestos PD Committee's objection is highly inappropriate at this point in the process.

The Debtors have not given the Asbestos PD Committee information concerning pre-Petition Date settlements because, to date, (i) the Asbestos PD Committee has not requested this information and (ii) this information has not been relevant and, therefore, discoverable.

However, the Debtors' estimation process will necessarily be governed by applicable rules governing evidence in the context of a bankruptcy case. Therefore, to the extent the Asbestos PD Committee believes this information is relevant and otherwise discoverable, they are free to seek it from the Debtors during the estimation process. It is entirely premature, however, for them to say that this Court cannot approve the estimation process because the Debtors have not provided them with this information.

### III.    Estimation of ZAI Claims

#### A.    The ZAI Bar Date is the Best Way to Address ZAI Claims

The ZAI Bar Date is integral to the Debtors' reorganization efforts. To date, there has been no procedure in these bankruptcy cases that has: (i) provided parties that wish to assert ZAI Claims an opportunity to do so, and (ii) afforded the Court, the Debtors, and other parties-in-interest an opportunity to ascertain the total number and amount of ZAI Claims that actually will be asserted against the Debtors' estates. Only a ZAI Claims Bar Date can provide these benefits. The Court noted that a bar date may be advantageous during the Debtors' December 20, 2004 hearing:

> Well, I think -- I guess the question is if a bar date can be set if in fact -- excuse me -- I'm sorry. If in fact the Zonolite, I'll call it locations for a moment, can be identified in some reasonable fashion so that notice can be given, and I understand some of it's going to be by publication, so that a bar date could in fact be set, I don't know that it's not -- that it's a bad idea to set a bar date. I thought what I was being asked to do was to determine whether there is such an unreasonable risk of harm that some sort of class action type of proof of claim could be filed instead, but, you know, of course we've done it both ways. And frankly, to see what the universe of Zonolite claims is that actually exists may not be a bad thing, because it may lead toward a settlement with the property damage.

(Tr. from December 20, 2004 Hearing, at 81, lns. 7-20)

The Asbestos PD Committee has argued that a ZAI Bar Date is not needed because ZAI sales data would provide the information necessary to estimate the Debtors' liability on account

of such claims.   They are wrong.   Sales data for ZAI is a wholly inaccurate measure of the number and amount of ZAI Claims that will be <u>asserted</u>.   First, the sole fact that the Debtors sold a certain amount of ZAI does not mean that:   (i) all of the product sold was installed as insulation, (ii) all of that product that was installed still remains in the respective structures (i.e. hasn't already been removed), (iii) all of the respective structures still remain (i.e. none of the structures have been destroyed), and (iv) all parties with structures that still contain ZAI want to have it removed.   The use of sales data would grossly and systematically overstate the estimate of ZAI Claims.   There is no reason to use this inaccurate proxy.   The Bankruptcy Code-approved bar date process allows the Debtors to directly ascertain and address the exact universe of asserted ZAI Claims.   Given that the Bankruptcy Code already provides for this reliable mechanism, there is no reason to "fall back" on unreliable, indirect procedures.

The use of sales data also suffers from a second, equally problematic flaw - it would deprive ZAI Claimants of an opportunity to assert the damage(s) that they seek (i.e. removal, diminution in value, or other relief).   The Asbestos PD Committee's objection assumes that all parties who ever purchase ZAI will: (i) file a ZAI Claim and (ii) seek the same relief, namely the cost of removal.   Some parties, however, may seek nothing, and other parties may seek relief in lieu of (or in addition to) the cost of removal.   The proposed ZAI Bar Date and Proof of Claim process affords interested parties the opportunity to assert the specific relief they seek.

The Debtors originally sought the establishment of a ZAI Bar Date when they obtained a claims bar date for non-asbestos claims, asbestos property damage claims and medical monitoring claims.   There was tremendous resistance to the ZAI Bar Date on the grounds that it would be dangerous for parties to disturb the ZAI in their homes for purposes of completing a ZAI proof of claim form.   While the Debtors believe they have proven to the Court that ZAI does

not pose the risk that was alleged by the ZAI claimants' counsel, the Debtors proposed ZAI Proof of Claim Form resolves this non-problem. Rather than seeking detailed information with respect to each asserted ZAI Claim, the ZAI Proof of Claim Form simply seeks general information concerning the Claim. Specifically, the proposed ZAI Proof of Claim only requests (with respect to the building): (i) The address of the building that allegedly contains ZAI; (ii) the approximate date the building was constructed; (iii) the approximate date the ZAI was installed in the building, if known; (iv) the building's use (i.e. residential, commercial, etc.); and (v) the claimant's legal interest in the building. This information should be readily available to all Claimants, who should be able to complete this section (and the entire ZAI Proof of Claim Form) in a minimal amount of time without disturbing any ZAI that may be in their homes.

The Asbestos PD Committee has not proffered an available alternative method for ascertaining the total number and amount of asserted ZAI Claims. The ZAI Bar Date, however, would allow the Debtors to move towards estimation, so that they may establish Plan feasibility and emerge from bankruptcy.

## IV.    Objections of Certain Insurers

Certain insurers (collectively, the "Insurers") object to the Estimation Motion to "ensure that the [Insurers'] rights are in no way affected, altered or prejudiced by the Debtors' [estimation] proposals." (Obj. of Certain Insurers ¶ 1) These Insurers request that this Court enforce the so-called "insurance neutrality" principle in connection with estimation, litigation or liquidation of Asbestos Claims. (Id. at ¶ 2) However, in filing this objection, the Insurers misunderstand a fundamental point -- the Debtors do not seek to bind the Insurers via the estimation order; the Debtors seek to estimate their aggregate liabilities in order to determine the amount of money adequate to fund the Asbestos Aggregate Trust Fund. Any other objection of the Insurers, including whether an estimated amount under a confirmed plan of reorganization

constitutes a "loss" under insurance contracts and a "judgment or settlement" sufficient to overcome a "no action" clause in an insurance contract, (Id. at ¶ 4), is not an objection appropriately brought at this time or to this motion and should be raised at Plan confirmation.

### Conclusion

Wherefore, for the reasons stated herein, the Debtors respectfully request that the Estimation Motion be granted in its entirety.

Dated:    January 7, 2005

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Jonathan P. Friedland
200 East Randolph Drive
Chicago, IL 60601
Telephone:    (312) 861-2000
Facsimile:    (312) 861-2200

KIRKLAND & ELLIS LLP
Bennett L. Spiegel
777 South Figueroa Street
Los Angeles, CA 90017
Telephone:    (213) 680-8400
Facsimile:    (213) 680-8500
-and-

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession