IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | Chapter 11 |
| | ) | |
| In re: | ) | Case No. 01-01139 (JKF) |
| | ) | |
| W. R. GRACE & CO., et al., | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | **Re: Docket No. 7250** |
| | ) | |
| | ) | **Objection Deadline:  January 7, 2004** |
| _____ | ) | |
| | | **Hearing Date:  January 21, 2004** |

**THE OBJECTION OF THE OFFICIAL COMMITTEE OF ASBESTOS PROPERTY
DAMAGE CLAIMANTS TO THE DEBTORS' SUPPLEMENT TO THEIR ESTIMATION
MOTION AND REQUEST FOR RELATED RELIEF**

The Official Committee of Asbestos Property Damage Claimants (the "PD Committee"), by and through undersigned counsel, hereby objects to the Debtors' Supplement to Their Estimation Motion and Request for Related Relief (the "Supplement to Estimation").  For the reasons stated below, the Supplement to Estimation is not ripe for adjudication and, therefore, should be denied.

## INTRODUCTION

This Court previously determined that it must first address the scientific issues surrounding Zonolite Attic Insulation ("ZAI") before deciding the appropriateness of class treatment, the approval of a notice program or the establishment of a bar date for holders of ZAI claims ("ZAI Claimants").  As a result, on November 25, 2002, the Court entered an order commencing what has become commonly known as the "ZAI Science Trial." This order served as a starting point for months of discovery, including scientific testing by numerous experts, and resulted in the filing of multiple motions for summary judgment, supported by detailed expert

witness reports, all involving the expenditure of millions of dollars. The Court held an extensive hearing on cross motions for summary judgment on October 18, 2004, after receiving multiple volumes of evidence and briefs from both sides. The Debtors now cavalierly urge that a ruling by the Court would be superfluous. They have apparently unilaterally concluded that the evidence developed in the course of the ZAI Science Trial demonstrates there is no impediment to a bar date or the use of individual proof of claim forms. The Debtors provide no support for their conclusion, as none exists.

Moreover, the Debtors elected not to file the Supplement to Estimation in accordance with the Local Rules or the Court's Case Management Order, and instead sought *ore tenus* relief to shorten the time to file the Supplement, mindful that this would leave the PD Committee and other parties in interest with only two weeks during the holiday season to respond to the important issues of a ZAI bar date and notice program.[1]

The Debtors' Supplement to Estimation is simply not ripe for adjudication and, therefore, should be denied.

## DISCUSSION

1.      On April 2, 2001, each of the above-captioned Debtors (the "Debtors" or "Grace") filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2.      On April 12, 2001, the Office of the United States Trustee (the "UST") appointed the PD Committee, Official Committee of Asbestos Personal Injury Claimants, and the Official

---

[1] In the event the Court wishes to hear substantive arguments on the Supplement to Estimation, the Debtors failed to provide adequate time for the PD Committee and other parties in interest to address the merits. The proposals require the input of experts, and the time provided to respond did not offer a sufficient opportunity to obtain that consultation in light of the intervention of the holidays. The PD Committee reserves the right to file detailed specific objections to the proposed bar date and notice program once the Court issues its opinion on the Science Trial issues.

Committee of Unsecured Creditors (the "Trade Committee").   On June 18, 2001, the UST appointed the Official Committee of Equity Security Holders (the "Equity Committee").   On May 24, 2004, the Future Claims Representative was appointed thereafter by the Court.

3.     In June 2001, Grace filed a Motion for Entry of Case Management Order, Establishment of a Bar Date, Approval of the Proof of Claim Forms and Approval of the Notice Program ("Initial CMO Motion"), which was intended to apply to, among others, traditional asbestos property damage and ZAI Claimants.

4.     The PD Committee objected to the Initial CMO Motion on multiple grounds, including that the proposed proof of claim forms were excessively burdensome and not designed to elicit the information ordinarily obtained by way of a proof of claim and that the proposed notice program was inadequate.   In its objection, the PD Committee stated that it then estimated that ZAI continues to be in the attics and walls of hundreds of thousands or millions of homes nationwide, and that homeowners remain unaware that ZAI is in their homes or that the product can contaminate their homes with asbestos fibers.  As explained in the objection, a scientifically conducted consumer survey conducted by GMA Research of only homeowners in Washington State demonstrated that only four in every 100 homeowners had received any information, from any source, concerning potential health hazards from ZAI.   For these reasons alone, rushed consideration of a ZAI bar date and notice program should be eschewed by the Court.   Certain ZAI Claimants filed similar objections.

5.     In November 2001, certain ZAI Claimants filed an adversary proceeding in this Court seeking nationwide class certification of ZAI Claims within this bankruptcy.[2]   *See* Adv. Proc. No. 01-8810.  Those ZAI Claimants asserted that without class certification and the ability

---

[2] Prior to the Debtors' bankruptcy, they faced several property damage class actions relating to ZAI, including the *Barbanti* case in Spokane, Washington.

to file a class proof of claim, "homeowners nationwide will remain entirely ignorant of their rights, will never be in a position to file individual proofs of claim and will be unwittingly denied the opportunity to detect and/or avoid further property damage and thereby protect themselves and their families from needless asbestos exposures dooming them to future exposures, injuries and death." *See* Memorandum of Law in Support of Zonolite Plaintiffs' Motion for Class Certification at p. 1 [Adv. No. 01-8810, D.I. 2]. Those ZAI Claimants maintained that due process requirements and the need for efficient administration justified the class treatment.

6.      Soon thereafter, the Initial CMO Motion was postponed due to the reassignment of this bankruptcy to the Honorable Alfred M. Wolin. On December 10, 2001, Judge Wolin entered an order referring this case back to this Court. Judge Wolin further ordered "that withdrawal of the reference is specifically contemplated with respect to asbestos–related claims and issues…." Based on Judge Wolin's contemplated withdrawal of the reference of asbestos personal injury claims, during the January 3, 2002 omnibus hearing, this Court directed the Debtors to re-file their case management motion, but to separate their proposals in respect of personal injury claims from all other claims. Accordingly, in February 2002, the Debtors filed a separate case management motion with respect to personal injury issues and a separate case management motion for the non-asbestos claims, traditional asbestos property damage and ZAI claims ("Property Damage CMO Motion"). The Property Damage CMO Motion sought the establishment of a bar date for non-asbestos claims, traditional asbestos property damage claims and ZAI claims.

7.      The PD Committee continued to object to the Property Damage CMO Motion, as did the ZAI Claimants who objected to the Initial CMO Motion. Indeed, at the Court's invitation, certain ZAI Claimants filed an informational brief and an objection to the Debtors'

proposed proof of claim form and the notice process.  Those ZAI Claimants maintained that class treatment, including the right to file class proofs of claim, would meaningfully advance the goals of bankruptcy, whereas the individual proof of claim process promoted by the Debtors would disenfranchise thousands of ZAI Claimants who were unaware that their homes contained asbestos contaminants and who did not know of the health risks that they faced.  *See* Zonolite Claimants' Informational Brief Re: Class Proofs of Claim [D.I. 1690]; and Objection of the Zonolite Attic Insulation Claimants to Debtors Proposed Zonolite Attic Insulation Proof of Claim Form [D.I. 1781].    In the Informational Brief, it was also noted that the ZAI product was uniformly sold with packaging information that affirmatively represented the handling of the product was risk free and failed to identify that it was an asbestos-containing product.  *See* Informational Brief at p. 5.

8.    Overall, the ZAI Claimants objected to the Property Damage CMO Motion because the proposed process "put the cart before the horse" with respect to ZAI claims by seeking to bar ZAI claims before providing homeowners with adequate notice that they might have ZAI Claims; before homeowners were apprised of the issue concerning the harmfulness of ZAI; and before Grace's liability for ZAI contamination was adjudicated.  *See* Objection at p. 3 [D.I. 1781].  The ZAI Claimants suggested that it would be appropriate for the Court to determine Grace's ZAI liability first, and then establish a class-based procedure thereafter.  *Id.*

9.    On March 12, 2002, the United States of America, filed a separate objection to the proposed ZAI proof of claim form and notice program because, among other reasons, of its

reasonable expectation that homeowners would expose themselves to asbestos-contaminated dust

in taking investigatory action to determine whether ZAI was present in their homes.[3]

10.    The Court conducted a series of hearings between February 2002 and April 2002

on the Property Damage CMO Motion.  At the conclusion of those hearings, the Court entered an

order establishing March 15, 2003 as the bar date for all asbestos property damage claims (other

than ZAI), medical monitoring claims, and general unsecured non-asbestos claims (the "Bar

Date").  Significantly, the Court refrained from setting a ZAI bar date or considering the Debtors'

proposed process as to ZAI claims and concluded that an investigation into the ZAI science

needed to be made prior to addressing other ZAI issues:

* * *

THE COURT: . . . I think it's quite correct, in this issue where there has
been no test of the scientific side by way of an adjudication before this bankruptcy
was filed, the debtor should know whether it is subject to liability on that score,
and so should the creditor.  And I think that piece ought to be determined before
we alarm a lot of potential people who have Zonolite in their attics that there may
or may not be some detriment as it turns out.  I don't know what the answer will
be, but either way, it doesn't make much sense to alarm them until we know that
there is reason to do it.  And right now, as I sit here, there seems to be a big
challenge as to whether there is reason to alarm them.   So, we ought to figure that
piece out.

*And then if there is, we ought to structure a notice program that makes
sense to advise people about what the potential risks are and how they can
minimize the risk and what they need to do in order to finish filing a claim here.*

*At that point, I think we can determine whether it's necessary to do a lot
of individual claims or look at a class certification.  But I think we need to get
to that science first.  I think to do everything else is putting sort of the cart
before the horse and --*

MR. BAENA: So we are not determining individual versus class proof of
claims --

THE COURT:  Right.

---

[3] United States' Objection to Debtors' Revised Motion as to All Asbestos Personal Injury Claims for Entry of Case
Management Order, Establishment of a Bar Date, Approval of the Proof of Claim Forms and of the Notice Program
(Docket Number 1664).

MR. BAENA: -- at this point in time.

THE COURT: *No, I would think we would not need to do that until the science is decided.  Once the science is decided, then we're right back in the seat that we're in today.*[4]

11.     By the foregoing, it is clear that the Court concluded that it would only consider class certification and the notice and bar date issues relating to ZAI <u>after</u> the determination of the ZAI Science Trial.  *Id.* at 54-56; 86-88; *see also* April 22, 2002 Hearing Transcript at 18.

12.     The Court directed the PD Committee to undertake the representation of the ZAI Science Claimants or to propose special counsel to conduct the ZAI Science Trial.  The PD Committee chose to do the latter as it did not believe that it could represent the individual interests of the ZAI Science Claimants. The Court accepted the PD Committee's nominations and appointed special counsel.

13.     Following the Court's November 25, 2002 Order setting a trial schedule, the Debtors and the ZAI Science Claimants conducted extensive fact and expert discovery over several months; filed multiple motions for summary judgment; and presented numerous expert reports. On October 18, 2004, the Court conducted a hearing on the summary judgment motions. The matter is presently under advisement.

14.     On November 13, 2004, Grace filed its proposed Plan of Reorganization (the "<u>Plan</u>") and Disclosure Statement ("<u>Disclosure Statement</u>") and its Motion for Entry of An Order Seeking the Estimation of Asbestos Claims and Certain Related Relief ("<u>Estimation Motion</u>").

15.     On December 15, 2004, just five days before filing its ZAI Supplement to Estimation, Grace filed a suggested protocol for the January 21 and 24, 2005 hearings at which the Court will consider the Debtors' November motions.[5]  In it, Grace stated with respect to ZAI:

---

[4] March 18, 2002 Hearing Transcript, pp. 86-88 (emphasis added), *see also* pp. 54-56.

"While the Court earlier heard a request for class certification, the evidence developed in connection with the ZAI Science Trial has shown clearly that there is no impediment to proceeding with a bar date [*See* Estimation Motion at ¶¶ 92-93.]"[6] (emphasis added).

16.    Grace's sole support for its statement that the ZAI Science Trial evidence showed there was no impediment to a bar date was the reference to "Estimation Motion at ¶¶92-93." But these paragraphs of the Estimation Motion filed on November 13, 2004 expressly contradicted Grace's December 15, 2004 suggested protocol position and recognized that the Science Trial proceedings should first be completed before moving to the POC issue:

"92.    The Debtors propose that the Court set a ZAI Claims Bar Date and approve a ZAI claim form and notice program for any types of ZAI Claims that remain viable *following* the Court's decision on the "ZAI Science Trial" summary judgment motions, and if necessary, *after* the trial of any material disputes of fact identified in this Court's summary judgment ruling. *Since the content of the ZAI claim form and notice program will be tailored to the Court's rulings on the ZAI Science Trial issues, the Debtors will propose the specific claim form and will detail a proposed ZAI notice program promptly after the ZAI Science Trial phase is concluded.*

93.    Following the ZAI claim bar date, the Debtors will submit within two months an expert report estimating their liability, if any, to the present and future ZAI Claimants. The Debtors will be prepared to try this estimation issue promptly after the completion of the depositions of the estimation experts. *Depending on the timing of this Court's summary judgment decision and the scheduling of any ZAI Science Trial, the Debtors expect that the ZAI estimation can be completed within approximately eights months to one year."* (emphasis added).

17.    Having recognized in its November 13, 2004 Estimation Motion that this Court's Science Trial decisions were critical thresholds to determining whether an individual POC would be required, Grace now seeks in its ZAI Supplement to Estimation to ignore the Science Trial proceedings as if they had never happened. Accordingly, while its December 20, 2004

---

[5] "Debtors' Suggestion To The Court Of Protocol For Proceedings For The January 21, 2005 and January 24, 2005 Hearing Scheduled In These Cases.

[6] Debtors' Suggested Protocol at 3.

Supplement to Estimation repeats the precise statement from its December 15, 2004 Suggested Protocol that:

> While the Court earlier heard a request for class certification, the evidence developed in connection with the ZAI Science Trial had shown clearly that there is no impediment to proceeding with a bar date.[7]

. . . Grace simply omits the countervening reference to the Estimation Motion paragraphs. Within the span of five days in December, between the December 15 Suggested Protocol and the December 20 Supplement to Estimation, someone at Grace (perhaps with the encouragement of its newfound allies, the Trade and Equity Committees) decided to try a sleight of hand to make the Science Trial proceedings vanish.

18.    Grace has provided no reason why this Court's carefully conceived protocol for addressing ZAI issues should be discarded.  Having recognized the Science Trial as a necessary prerequisite to the Court's decision on how to handle ZAI claims – either as class claims (requiring no individual proofs of claim), or individual claims (requiring such POCs), Grace now simply tries to walk away from it.

<u>**CONCLUSION**</u>

The Supplement to Estimation is not ripe for adjudication and is Debtors' attempt to will away all that has transpired in the last two years.  The Debtors' recognition in its November 13, 2004 Estimation Motion that the Science Trial proceedings must inform subsequent ZAI efforts was correct.  *See* Estimation Motion at ¶ 92.  There is no benefit to be served by going off half-cocked on a ZAI proof of claim process until the Court issues an opinion on the ZAI Science Trial issues, which will thereafter enable the parties to tailor the treatment of ZAI Claimants in accordance with the Court's determination.

---

[7]  ZAI Supplement at 6.

Wherefore, the PD Committee respectfully requests that the Court enter an order denying the requested relief sought by the Debtors in the Supplement to Estimation and grant such other and further relief as the Court deems just and proper.

Wilmington, Delaware

Dated:  January 7, 2005                              Respectfully submitted,

                                                     BILZIN SUMBERG BAENA
                                                        PRICE & AXELROD LLP
                                                     200 South Biscayne Boulevard
                                                     Suite 2500
                                                     Miami, Florida  33131-2336
                                                     Telephone:  (305) 374-7580

                                                     Scott L. Baena (Admitted Pro Hac Vice)
                                                     Jay M. Sakalo (Admitted Pro Hac Vice)
                                                     Allyn Danzeisen (Admitted Pro Hac Vice)
                                                                    and

                                                     FERRY JOSEPH & PEARCE, P.A.
                                                     824 Market Street, Suite 904
                                                     P.O. Box 1351
                                                     Wilmington, Delaware  19899
                                                     Telephone:  (302) 575-1555

                                                      /s/ Lisa L. Coggins
                                                     Theodore J. Tacconelli (Del. Bar No. 2678)
                                                     Lisa L. Coggins (DE. Bar No. 4234)

                                                     CO-COUNSEL FOR THE OFFICIAL
                                                     COMMITTEE OF ASBESTOS PROPERTY
                                                     DAMAGE CLAIMANTS