IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | | Re: Docket Nos. 7252 and 7104 |

## DEBTORS' RESPONSE TO MOTION TO
## STRIKE NOTICE OF INTENT TO OBJECT TO CLAIMS ON
## THE BASIS OF MATERIALLY INSUFFICIENT SUPPORTING INFORMATION

The PD Committee has argued that the Debtors' Notice of Intent is confusing to

recipients. This argument is without merit given the circumstances of this case. First, the Notice

of Intent was only sent to holders of *patently* deficient claims which deficiency is clear on its

face. Further, of the total of 3,213 claimants to whom it was directed, 2,893 (90%) are

represented by two lawyers with the same law firm. These lawyers are legally sophisticated and

know exactly why their claims are deficient. In fact, the great majority of the claims filed by this

law firm explicitly acknowledge that they are incomplete. With respect to the remaining claims,

195 of them were filed by various attorneys who likewise should easily understand the

deficiencies. Further, to the extent that any claimant or their counsel is confused by the Notice

of Intent, they are free to call the Debtors' counsel and discuss the situation. That is one of the

benefits of sending the Notice of Intent.

The Debtors are disappointed that the PD Committee would waste this Court's time with

the Motion to Strike. The PD Committee is apparently attempting to use the Notice of Intent for

far more than it was designed to do. The Notice of Intent is not an objection to the underlying

claim. Instead, the Notice of Intent was added to the Debtors' gateway objection process - at the

PD Committee's request - as an ancillary prophylactic before the Debtors may object to the materially deficient proofs of claim. The Notice of Intent more than satisfies this objective.

<strong>ARGUMENT</strong>

**(a)      The Notice of Intent is not Confusing**

1.      The Notice of Intent was only sent to parties whose respective Asbestos Property Damage Proof of Claims (the "Claim Forms") are *materially* incomplete, *completely* lack supporting information, and/or *materially* lack supporting information.  A simple review of each of these Claim Forms reveals its respective, obvious deficiency.  The Debtors have attached hereto representative Claim Forms for which the Debtors Sent Notices of Intent. (sample Claim Forms are attached as Exhibits A, B, and C).

2.      A cursory review of the attached Claim Forms reveals that they are *patently* deficient.  For example, the only supporting documentation attached to Claim 4383 is a one-paragraph statement that the claimant "has been unable to conclusively determine the sources of the ACM in its property," and they "reserve the right to amend or withdraw this claim at such time as these determinations are completed."  Exhibit A.  Similarly, Claim 11309 contains no supporting documentation, and its states on the Claim Form that "documents are being prepared for later submission".  Exhibit B.[1]  Claim 11316 also contains a one-page attachment which provides no information other than that the property is vacant and was constructed in 1890.  See Exhibit C.[2]

---

[1]    To date, they have not submitted any such documents.

[2]    These one-page attachments provide no meaningful information, but their existence makes the respective claims unavailable for simple non-substantive omnibus objection under the local rules, because Local Rule 3007-1 provides that an objection to a claim with *any* supporting documentation - no matter how deficient or irrelevant the information on that

(Continued...)

2

3.      These examples were not "cherry-picked." The Notices of Intent were only sent to holders of *patently* deficient Claim Forms that fail to afford the Debtors a meaningful opportunity to evaluate the substantive merits of the underlying claim. As noted above, several of the materially deficient Claim Forms state that documents were being prepared (as of March 31, 2003) for later submission. These parties clearly know how their Claim Form is deficient - they noted as much on the Claim Form itself or an attachment to the Claim Form. The Notice of Intent gives these claimants one last-chance to complete their Claim Forms before the Debtors formally object to their claims.

4.      Out of the total of 3,213 Notices of Intent sent to Claimants, Debtors' attorneys have received approximately seven (7) responses from claimants. Generally, the responses request copies of the respective Claim Forms or state that additional information is forthcoming. See Exhibit D. Thus, the PD Committee's assertion that claimants will be confused by the Notice of Intent appears to be largely baseless and unsubstantiated.

5.      Further, of the total of 3,213 claimants to whom the Notice of Intent was directed, 2,893 are represented by the one law firm (Speights & Runyan) discussed below, and 195 of the remaining 320 claimants are also represented by various counsel. The Notice of Intent gives each of these attorneys a "second bite" at the proverbial apple, providing an additional opportunity to comply with the requirements of the Claim Form, as established by this Court. These sophisticated parties certainly do not need a more detailed claim by claim explanation of the obvious manner in which they failed to comply with the requirements of the Claim Form.

---

documentation may be - is a substantive objection and, therefore, subject to the rule's requirements that (i) the maximum number of objections that may be raised at one time is 150 and (ii) all "substantive" objections to a single claim must be raised in a single objection.

6.      And, to the extent that any claimants (or their respective counsel) have questions concerning the deficiencies the Debtors have raised, they are free to contact the Debtors' counsel and present their questions, comments and/or concerns.  Indeed, that is one of the benefits of sending the Notice of Intent.

7.      The Debtors did not provide for a Notice of Intent in the Gateway Objection Motion, and the Bankruptcy Code does not refer to this sort of "second bite" step in the claims resolution process[3]  This step was added to the process - at the PD Committee's request - as an ancillary prophylactic before the Debtors may object to the materially deficient Claim Forms. The Court noted during the March 22, 2004 hearing on the matter, that the Notice of Intent was intended to serve as "the one more opportunity to get on the bandwagon notice..."  Hearing Transcript pg. 18, lns. 13-15.  Accordingly, the Notice of Intent does not alter the legal rights of the associated claimants, and it is not a "claims objection."  The Notice of Intent merely gives claimants a second opportunity to properly complete their Claim Forms.  The Notice of Intent more than satisfies this objective.

**(b)     The Speights & Runyan Claims Invite the Very Follow-Up Requested in the Notice of Intent**

8.      As outlined above, of the 3,213 Notices of Intent that were filed, 2,893 relate to claimants represented by two lawyers (Daniel A. Speights and Amanda Steinmeyer) who work for the same law-firm (Speights & Runyan).  The great majority of the 2,893 Claim Forms

---

[3]    11 U.S.C. § 502, which governs the claims process, states as follows: "(a) a claim or interest, proof of which is filed under section 502 of this title, is deemed allows, unless a party in interest ... objects. (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that...'

4

submitted by Speights & Runyan are similar, with minor variations here and there. Many of their Claim Forms are completely devoid of any supporting documentation, and a large number of them do not indicate the name of a creditor or property address. These Claim Forms lack the substantive information that is necessary to afford the Debtors an opportunity to adequately consider the substantive merits of each, individual claim. For example, on Claim Forms 11657, 11591, 11133, and 10877 (attached hereto as Exhibits E, F, G, & H), the questions relating to Grace-product identification and abatement are not fully-answered. Further, Claim Nos. 11591, 11133, and 10877 do not provide the approximate square footage of the building. Instead, all four of these Claim Forms contain one-page attachments which indicate that the Debtors are requesting a lot of information and before undertaking this effort "... claimant would like to *work with Grace to understand exactly what it is that Grace is seeking* and whether Claimant can easily accommodate that request."

9.     To date, the Speights & Runyan firm has not contacted Debtors' counsel to "work with Grace" or "obtain clarification" regarding the necessary supporting documentation. Instead, the PD Committee, of which Mr. Speights is a member, has responded by filing the motion to have the Notices of Intent stricken. This action does not exhibit a willingness to "work with" the Debtors -- it suggests that the above-referenced statements, while seemingly amicable, are just another delay tactic so that the claimants do not need to produce information that would substantiate their respective claims.

10.     In fact, from the lack of information on the Claim Forms, it appears as though the Speights & Runyan firm simply attempted to file a Claim Form for each building in which they believed Grace product may have been used, even if they do not actually represent the building's owner. For example, the claimant on Claim No. 11086 is listed as "Zoo Job." See Exhibit I.

5

Besides lacking a claimant, the "Zoo Job" Claim Form also: (i) does not provide a street address for the property, (ii) does not state the property's number of floors or square footage, and (iii) contains the same canned language concerning "working[ing] with Grace" that appears in the other Speights & Runyan Claim Forms.

11.    This concern on the Debtors' part was recently confirmed by a letter sent to Debtors' counsel by Richard Stoper, counsel for the Laborers 310 Union. This letter states that an "unauthorized claim" (Claim No. 11591) was filed on behalf of his client. See Exhibit J. The unauthorized claim, in fact, was submitted by the Speights & Runyan firm on behalf of "Laborer's 310 Union Office Building," and not the building's owner, who apparently had its own counsel (Richard Stoper, who filed an authorized Claim Form, for which no Notice of Intent was sent).[4] The Debtors should not be expected to invest time and resources to point out specific deficiencies in Claim Forms filed by attorneys who acknowledge deficiencies in their Claim Forms and, in some cases, were *not even authorized* to file such Claim Forms.

**(c)    The Debtors Had no Obligation to Consult with Counsel for the PD Committee Before Sending the Notice of Intent to Deficient Claimants**

12.    The Debtors' Notice of Intent complies - both in terms of its substance and spirit - with the Court's directives and the Order pursuant to which it was created. When the Court considered the Debtors' motion to streamline the objection process, counsel for the PD Committee vehemently argued that claimants should be given a proverbial "second bite" before the Debtors were allowed to formally object to such claims. The Court accepted this argument.

---

[4]    The receipt of this letter led Debtors' counsel to request its Claims Reconciliation Consultant to conduct a comparison of the clients listed on the Speights & Runyan 2019 statement (which was recently filed in these cases) against the Claim Forms that they filed. The preliminary results from this comparison show that Speights & Runyan apparently does not represent at least 490 of the parties for whom Speights & Runyan filed Claim Forms.

13.     The Court did not direct the Debtors to provide, in the Notice of Intent, the specific deficiencies in each and every Claim Form.  Indeed, such a process would eliminate the streamlining that was requested in the motion with respect to these patently deficient Claim Forms.

14.     The Motion to Strike suggests that this Court "directed the Debtors to work together with the PD Committee on both the form of the Waiver Order and the Proposed Notice of Intent."  Motion to Strike, pg. 4 ¶10.  In fact, the PD Committee merely asked that it be provided with copies of the Notice of Intent and, in response, the Court directed the Debtors to do so, which they have done.

15.     The Order pursuant to which the Notices of Intent were distributed (Docket No. 6009, a copy of which is attached as Exhibit K) was the product of extensive negotiations between the Debtors and the PD Committee, and it imposes no obligation upon the Debtors to consult with the PD Committee before creating and distributing the Notices of Intent.  The Order provides the following with respect to the Notice of Intent:

> e.     Notwithstanding the foregoing, prior to the assertion of any Gateway Objection to an Asbestos Property Damage Proof of Claim, based on materially insufficient supporting information, the Debtors shall serve on any Claimant as to whom such objection is to be asserted, written notice by first-class United States mail of the Debtors intent to object to the respective Claim on the basis of materially insufficient supporting information.  A copy of this Notice shall also be served on counsel for the Asbestos Property Damage Committee and counsel for the Claimant, if identified in the respective Proof of Claim form.  Each Claimant shall have sixty (60) days (the "Response Period") from the date of such notice in which to provide any supplemental or additional information supporting their respective Claim, and the Debtors shall not assert any Gateway Objections to any such Claim until the last Response Period has ended.  Following the last Response Period, the Debtors may assert any applicable Gateway Objections to the Asbestos Property Damage Proof of Claims.

Exhibit J.

16.    Therefore, the Debtors have fully-complied with this Court's directives, as well as the provisions of the Order.

WHEREFORE, the Debtors respectfully request that the Court enter an Order denying the Motion to Strike. A proposed order is attached as Exhibit K.

Dated:    January 7, 2005

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Jonathan P. Friedland
200 East Randolph Drive
Chicago, IL 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

KIRKLAND & ELLIS LLP
Bennett L. Spiegel
777 South Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

-and-

PACHULSKI, STANG, ZIEHL, YOUNG, JONES &
WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

8

DOCS_DE:104416.1