# TAB 13

### 3.2.8.1 Litigation Related to Grace's Savings and Investment Plan

In June 2004, a purported class action complaint was filed in U.S. District Court for the District of Massachusetts against the Parent's Board of Directors, certain current and former Grace officers and employees, and others, relating to Grace's 401(k) Savings and Investment Plan (the "S&I Plan"). The complaint alleges that the decline in the price of Parent Common Stock from July 1999 through February 2004 resulted in significant losses to S&I Plan participants. The complaint further alleges that the defendants breached their fiduciary duties under the Employee Retirement Income Security Act of 1974, as amended, ("ERISA") by failing to sell or take other appropriate action with regard to Parent Common Stock held by the S&I Plan during that period, and failed to disclose to S&I Plan participants the risk of investing in Parent Common Stock. The complaint seeks compensatory damages for the S&I Plan from the defendants. The Bankruptcy Court ~~has~~ stayed this action with respect to all defendants through and including December 31, 2004.

On October 26, 2004, a purported class-action complaint was filed in the U.S. District Court for the Eastern District of Kentucky, on behalf of present and former participants in the S&I Plan, against W. R. Grace & Co., the W. R. Grace Investment and Benefits Committee, the Parent's Board of Directors, certain current and former Grace officers and employees, and others. The complaint alleges that Grace and its investment advisors breached fiduciary duties under ERISA by selling Parent Common Stock from the S&I Plan at a "distressed price." The complaint further alleges that Grace breached fiduciary duties under ERISA by hiring State Street Bank and Trust Company, the investment manager for the S&I Plan that was retained by the Debtors in December 2003 (pursuant to a Court order authorizing such retention), to "rapidly liquidate" all of the employees' Parent Common Stock investment at an "artificially low" sales price. ~~To date, no party has answered this complaint, and the Debtors expect to seek a stay of the action~~<u>This case was stayed by agreement of the parties through and including December 31, 2004. The Defendants currently have until January 31, 2005 to answer or otherwise plead</u>.

~~Grace likely would have an obligation to indemnify the defendants~~<u>Pursuant to Grace's Certificate of Incorporation and By-Laws, Grace is required to indemnify its directors, officers and employees</u> for any liability arising out of either of these lawsuits.  <u>Grace also has certain contractual indemnity obligations that may be triggered</u>. However, Grace believes that the allegations in both lawsuits are without merit and that any liability arising therefrom would in any event be covered by its fiduciary liability insurance.

~~Under~~<u>Pursuant to Section 8.7 of</u> the Plan, the Debtors propose to (1) provide their current and former directors, officers, and ~~other~~ employees who are defendants in the above-referenced S&I Plan lawsuits, with a full and complete release of all liability associated with any such litigation, and (2) to indemnify such defendants for any costs and/or expenses associated with any such litigation<u>.  However, to the extent that plaintiffs in the lawsuits have valid Claims against the Debtors, their pre-petition Claims will be treated as Class 9 General Unsecured Claims and their post-petition Claims will be treated as Administrative Expense Claims under the Plan.</u>

<u>The named Plaintiff in the Massachusetts lawsuit outlined above has raised an objection to the releases provided by Section 8.7 of the Plan, alleging that they go beyond</u>

the scope of permissible releases under applicable law. The Debtors disagree.  The parties reserve their rights with respect to the release objections until the hearing on confirmation of the Plan.

### 4.8    Injunctions, Releases and Discharge

Section 7.12 and Article 8 of the Plan work together to shield the Debtors and certain other parties from any liability for any Claims dealt with under the Plan.

**Several parties have raised objections to the releases provided by Section 8.7 and 8.4 Released Matters Injunction of the Plan, alleging that they go beyond the scope of permissible releases under applicable law. The Debtors disagree. The parties reserve their rights with respect to the release objections until the hearing on confirmation of the Plan.**

# TAB 14

### 4.8.7.1.1   ~~Plan § 8.6.1.1~~ Release of Representatives of the Debtors

For good and valuable consideration, the receipt and sufficiency of which is acknowledged in the Plan, all Representatives of the Debtors **and any of the Non-Debtor Affiliates** will be released, as of the Effective Date, from any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, that any Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest or other Entity, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date for Claims or liabilities resulting from their services as Representatives of the Debtors or any of the Non-Debtor Affiliates to the extent such Claims or liabilities relate to the business, operations, or management of any of the Debtors **or the Non-Debtor Affiliates** prior to the Effective Date or any of the matters referred to in Section ~~11.8.~~**11.8 so long as, in each case such action, or failure to act, did not constitute willful misconduct. Any act or omission taken with the approval of the Bankruptcy Court will be conclusively deemed not to constitute willful misconduct. This section is not intended to preclude a governmental entity from enforcing its police and regulatory powers.** These releases are conditioned on the released Representatives giving a mutual release, except that such Representatives are not releasing Claims with respect to commercial obligations of the Debtors **and the Non-Debtor Affiliates,** any Claims for indemnification in favor of the released Representatives, or Claims for wages, fees, benefits, commissions and expenses. Further, these releases are not intended to, and shall not, alter in any way the rights of the present and/or former officers and/or directors of the Parent, or of any of the other Debtors or Non-Debtor Affiliates, under the Parent's ~~by~~**By**-laws and/or ~~e~~**C**ertificate of ~~i~~**I**ncorporation, or any of the other Debtors' or Non-Debtor Affiliates' applicable ~~bylaws~~**by-laws** and/or certificates of incorporation, whatever those rights, if any, may be.

# TAB 15

**4.8.7.1.1** ~~*Plan § 8.6.1.1*~~ **Release of Representatives of the Debtors**

For good and valuable consideration, the receipt and sufficiency of which is acknowledged in the Plan, all Representatives of the Debtors **and any of the Non-Debtor Affiliates** will be released, as of the Effective Date, from any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, that any Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest or other Entity, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date for Claims or liabilities resulting from their services as Representatives of the Debtors or any of the Non-Debtor Affiliates to the extent such Claims or liabilities relate to the business, operations, or management of any of the Debtors **or the Non-Debtor Affiliates** prior to the Effective Date or any of the matters referred to in Section ~~11.8.~~**11.8 so long as, in each case such action, or failure to act, did not constitute willful misconduct. Any act or omission taken with the approval of the Bankruptcy Court will be conclusively deemed not to constitute willful misconduct. This section is not intended to preclude a governmental entity from enforcing its police and regulatory powers.** These releases are conditioned on the released Representatives giving a mutual release, except that such Representatives are not releasing Claims with respect to commercial obligations of the Debtors **and the Non-Debtor Affiliates**, any Claims for indemnification in favor of the released Representatives, or Claims for wages, fees, benefits, commissions and expenses. Further, these releases are not intended to, and shall not, alter in any way the rights of the present and/or former officers and/or directors of the Parent, or of any of the other Debtors or Non-Debtor Affiliates, under the Parent's ~~by~~**By**-laws and/or ~~c~~**C**ertificate of ~~i~~**I**ncorporation, or any of the other Debtors' or Non-Debtor Affiliates' applicable ~~bylaws~~**by-laws** and/or certificates of incorporation, whatever those rights, if any, may be.

### 4.8.7.4 ~~Plan § 8.6.4~~ Specific Releases by Holders of Claims or Equity Interests

Without limiting any other provisions of the Plan, each Holder of a Claim or Equity Interest who votes in favor of the Plan or receives or retains any property under the Plan shall be deemed to unconditionally have released the Asbestos Protected Parties, the Asbestos Insurance Entities, the Unsecured Creditors' Committee, the Asbestos PI Committee, the Asbestos PD Committee, the Equity Committee and the FCR, and each party's Representatives, as of the Effective Date from any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively), based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date in any way relating or pertaining to, the Debtors or the Reorganized Debtors, the Chapter 11 Cases, or the negotiation, formulation, and preparation of the Plan or any related agreements, instruments, or other documents., **so long as, in each case, such action or failure to act does not constitute willful misconduct. Any act or omission taken with the approval of the Bankruptcy Court will be conclusively deemed not to constitute willful misconduct. This section is not intended to preclude a governmental entity from enforcing its police and regulatory powers.**

# TAB 16

### 4.8    Injunctions, Releases and Discharge

Section 7.12 and Article 8 of the Plan work together to shield the Debtors and certain other parties from any liability for any Claims dealt with under the Plan.

**Several parties have raised objections to the releases provided by Section 8.7 and 8.4 Released Matters Injunction of the Plan, alleging that they go beyond the scope of permissible releases under applicable law. The Debtors disagree.  The parties reserve their rights with respect to the release objections until the hearing on confirmation of the Plan.**

### 4.8.7.1.1    ~~Plan § 8.6.1.1~~——Release of Representatives of the Debtors

For good and valuable consideration, the receipt and sufficiency of which is acknowledged in the Plan, all Representatives of the Debtors **and any of the Non-Debtor Affiliates** will be released, as of the Effective Date, from any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, that any Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest or other Entity, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date for Claims or liabilities resulting from their services as Representatives of the Debtors or any of the Non-Debtor Affiliates to the extent such Claims or liabilities relate to the business, operations, or management of any of the Debtors **or the Non-Debtor Affiliates** prior to the Effective Date or any of the matters referred to in Section ~~11.8.~~**11.8 so long as, in each case such action, or failure to act, did not constitute willful misconduct. Any act or omission taken with the approval of the Bankruptcy Court will be conclusively deemed not to constitute willful misconduct. This section is not intended to preclude a governmental entity from enforcing its police and regulatory powers.** These releases are conditioned on the released Representatives giving a mutual release, except that such Representatives are not releasing Claims with respect to commercial obligations of the Debtors **and the Non-Debtor Affiliates,** any Claims for indemnification in favor of the released Representatives, or Claims for wages, fees, benefits, commissions and expenses. Further, these releases are not intended to, and shall not, alter in any way the rights of the present and/or former officers and/or directors of the Parent, or of any of the other Debtors or Non-Debtor Affiliates, under the Parent's ~~by~~**By**-laws and/or ~~c~~**C**ertificate of ~~i~~**I**ncorporation, or any of the other Debtors' or Non-Debtor Affiliates' applicable ~~bylaws~~**by-laws** and/or certificates of incorporation, whatever those rights, if any, may be.

### 4.8.7.4 ~~Plan § 8.6.4~~ Specific Releases by Holders of Claims or Equity Interests

Without limiting any other provisions of the Plan, each Holder of a Claim or Equity Interest who votes in favor of the Plan or receives or retains any property under the Plan shall be deemed to unconditionally have released the Asbestos Protected Parties, the Asbestos Insurance Entities, the Unsecured Creditors' Committee, the Asbestos PI Committee, the Asbestos PD Committee, the Equity Committee and the FCR, and each party's Representatives, as of the Effective Date from any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively), based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date in any way relating or pertaining to, the Debtors or the Reorganized Debtors, the Chapter 11 Cases, or the negotiation, formulation, and preparation of the Plan or any related agreements, instruments, or other documents., **so long as, in each case, such action or failure to act does not constitute willful misconduct. Any act or omission taken with the approval of the Bankruptcy Court will be conclusively deemed not to constitute willful misconduct. This section is not intended to preclude a governmental entity from enforcing its police and regulatory powers.**

# TAB 17

### 4.8    Injunctions, Releases and Discharge

Section 7.12 and Article 8 of the Plan work together to shield the Debtors and certain other parties from any liability for any Claims dealt with under the Plan.

**Several parties have raised objections to the releases provided by Section 8.7 and 8.4 Released Matters Injunction of the Plan, alleging that they go beyond the scope of permissible releases under applicable law. The Debtors disagree.  The parties reserve their rights with respect to the release objections until the hearing on confirmation of the Plan.**

# TAB 18

### 4.11    MISCELLANEOUS PROVISIONS

Article 11 of the Plan deals with a variety of miscellaneous matters including:

- authority of the Debtors
- payment of statutory fees
- provisions that must be included in the Plan according to the Fresenius Settlement Agreement and the Sealed Air Settlement Agreement
- dissolution of the Unsecured Creditors' Committee, the Asbestos PI Committee, the Asbestos PD Committee and the Equity Committee
- continued retention of the Future Claimants' Representative
- headings
- governing law
- filing of additional documents
- compliance with tax requirements
- further assurances
- further authorizations

The more significant sections of Article 11 of the Plan are:

~~*Plan § 11.3 — Retained Causes of Action*~~

~~*Plan §*~~**Section** 11.3.1 **of the Plan -** Maintenance of Causes of Action: Nothing in Section 11.3 of the Plan shall be deemed to be a transfer by the Debtors and the Reorganized Debtors of any Claims, causes of action, or defenses relating to assumed executory contracts or otherwise which are required by the Reorganized Debtors to conduct their businesses in the ordinary course subsequent to the Effective Date. Moreover, except as otherwise expressly contemplated by the Plan, the Sealed Air Settlement Agreement, the Fresenius Settlement Agreement or other Plan Documents, from and after the Effective Date, the Reorganized Debtors shall have and retain any and all rights to commence and pursue any and all Claims, causes of action, including the Retained Causes of Action, or defenses against any parties, including Claimants and Holders of Equity Interests, whether such causes of action accrued before or after the Petition Date, including those Retained Causes of Action listed on Exhibit 11 in the Exhibit Book.

The Reorganized Debtors shall retain and may exclusively enforce any and all such Claims, rights or causes of action, including Retained Causes of Action, and commence, pursue and settle the causes of action in accordance with the Plan. The Reorganized Debtors shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such claims, rights, and causes of action, including Retained Causes of Action, without the consent or approval of any third party and without any further order of the Court.

*Plan §*Section 11.3.2 **of the Plan** - Preservation of Causes of Action: The Debtors are currently investigating whether to pursue potential causes of action against any Claimants or Entities. The investigation has not been completed to date, and, under the Plan, the Reorganized Debtors retain the right on behalf of the Debtors to commence and pursue any and all Retained Causes of Action. The potential causes of action currently being investigated by the Debtors, which may, but need not, be pursued by the Debtors before the Effective Date or by the Reorganized Debtors, after the Effective Date are described more fully in this Disclosure Statement. In addition, there may be numerous Unknown Causes of Action. The failure to list any such Unknown Causes of Action in the Plan, or on Exhibit 11 in the Exhibit Book, is not intended to limit the rights of the Reorganized Debtors to pursue any Unknown Cause of Action to the extent the facts underlying such Unknown Cause of Action become fully known to the Debtors.

*Plan §*Section 11.3.3 **of the Plan** - Preservation of All Causes of Action not Expressly Settled or Released: Unless a Claim or cause of action against a Claimant or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, the Debtors expressly reserve such Claim or Retained Cause of Action (including any Unknown Causes of Action) for later adjudication by the Reorganized Debtors, as applicable. Therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Claims or Retained Causes of Action upon or after the Confirmation Date or Effective Date of the Plan based on this Disclosure Statement, the Plan or the Confirmation Order, except where such Claims or Retained Causes of Action have been released in the Plan or other Final Order. In addition, the Debtors, the Reorganized Debtors, and the successor entities under the Plan expressly reserve the right to pursue or adopt any Claim alleged in any lawsuit in which the Debtors are defendants or an interested party, against any Entity, including the plaintiffs or co-defendants in such lawsuits.

Any Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that such obligation, transfer, or transaction may be reviewed by the Debtors or the Reorganized Debtors, and may, if appropriate, be the subject of an action after the Effective Date, whether or not (i) such Entity has filed a proof of Claim against the Debtors in the Chapter 11 Cases; (ii) such Claimant's proof of Claim has been objected to; (iii) such Claimant's Claim was included in the Debtors' Schedules; or (iv) such Claimant's scheduled Claim has been objected to by the Debtors or has been identified by the Debtors as a Disputed Claim, a Contingent Claim, or an Unliquidated Claim.

*Plan §*Section 11.4 **of the Plan** - Third-Party Agreements: The Distributions to the various classes of Claims in the Plan will not affect the right of any Entity to levy, garnish, attach, or employ any other legal process with respect to such Distributions by reason of any claimed subordination rights or otherwise. All of such rights and any agreements relating thereto will remain in full force and effect.

~~Plan §~~**Section 11.8** of the Plan - Exculpation: None of the Reorganized Debtors, the Debtors, the Non-Debtor Affiliates, the Sealed Air Indemnified Parties, the Fresenius Indemnified Parties, the Trustees of the Asbestos Trust, the Asbestos Trust Advisory Committee, the Asbestos PI Committee, the Asbestos PD Committee, the Unsecured Creditors' Committee, the Equity Committee, the FCR, or any of their respective Representatives are to have or incur any liability to any Entity for any **pre- or post-Petition Date** act or omission in connection with, **related to,** or arising out of the negotiation of the Plan or the settlement provided in the Sealed Air Settlement Agreement and the Fresenius Settlement Agreement, the pursuit of confirmation of the Plan, the consummation of the Plan or the settlement provided in the Sealed Air Settlement Agreement or Fresenius Settlement Agreement, or the administration of the Plan or the property to be distributed under the Plan **so long as, in each case such action, or failure to act, did not constitute willful misconduct.** In all respects, they will be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. **Any act or omission taken with the approval of the Bankruptcy Court will be conclusively deemed not to constitute willful misconduct. This section is not intended to preclude a governmental entity from enforcing its police and regulatory powers.**

~~Plan §~~**Section 11.9** of the Plan - Title to Assets; Discharge of Liabilities: Upon the transfer of the Sealed Air Payment into the Asbestos Trust, and the transfer of the Debtors' Payment into the Asbestos Trust, each such transfer shall be vested in the Asbestos Trust free and clear of all Claims, Equity Interests, Encumbrances, and other interests of any Entity. Except as otherwise provided in the Plan and in accordance with Bankruptcy Code § 1123(b)(3), on the Effective Date, title to all of the Debtors' assets and properties and interests in property, including the Retained Causes of Action, shall vest in the Reorganized Debtors free and clear of all Claims, Equity Interests, Encumbrances, and other interests, and the Confirmation Order shall be a judicial determination of discharge of the liabilities of the Debtors.

~~Plan §~~**Section 11.10** of the Plan - Notices: Any notices, statements, requests, and demands required or permitted to be provided under the Plan, in order to be effective, must be: (i) in writing (including by facsimile transmission), and unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made (A) if personally delivered or if delivered by facsimile or courier service, when actually received by the Entity to whom notice is sent, (B) if deposited with the United States Postal Service (but only when actually received), at the close of business on the third business day following the day when placed in the mail, postage prepaid, certified or registered with return receipt requested, or (C) one (1) Business Day after being sent to the recipient by reputable overnight courier service (charges prepaid) (but only when actually received) and (ii) addressed to the appropriate Entity or Entities to whom such notice, statement, request or demand is directed (and, if required, its counsel), at the address of such Entity or Entities set forth in the Plan (or at such other address as such Entity may designate from time to time by written notice to all other Entities listed below in accordance with Section 11.10 of the Plan).

~~Plan §~~**Section 11.15** of the Plan - Exemption from Transfer Taxes: Pursuant to Bankruptcy Code § 1146(c), the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument

of transfer under, in furtherance of, or in connection with the Plan shall be exempt from all taxes as provided in Bankruptcy Code § 1146(c).

## 11.8   EXCULPATION

None of the Reorganized Debtors, the Debtors, the Non-Debtor Affiliates, the Sealed Air Indemnified Parties, the Fresenius Indemnified Parties, the Trustees of the Asbestos Trust, the Asbestos Trust Advisory Committee, the Asbestos PI Committee, the Asbestos PD Committee, the Unsecured Creditors' Committee, the Equity Committee, the FCR, or any of their respective Representatives are to have or incur any liability to any Entity for any **pre- or post-Petition Date** act or omission in connection with**, related to,** or arising out of the negotiation of this Plan or the settlement provided in the Sealed Air Settlement Agreement and the Fresenius Settlement Agreement, the pursuit of confirmation of this Plan, the consummation of this Plan or the settlement provided in the Sealed Air Settlement Agreement or Fresenius Settlement Agreement, or the administration of this Plan or the property to be distributed under this Plan **so long as, in each case such action, or failure to act, did not constitute willful misconduct**. In all respects, they will be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan**.   Any act or omission taken with the approval of the Bankruptcy Court will be conclusively deemed not to constitute willful misconduct.   This section is not intended to preclude a governmental entity from enforcing its police and regulatory powers**.

# TAB 19

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | BALLOT FOR ACCEPTING OR |
| | ) | REJECTING AMENDED JOINT PLAN OF |
| | ) | REORGANIZATION FOR W. R. GRACE. & |
| | ) | CO. AND ITS AFFILIATED DEBTORS |
| | ) | AND DEBTORS-IN-POSSESSION, DATED |
| | ) | JANUARY __, 2005 |

**Class 9**
**General Unsecured Claims**

## BALLOT AND VOTING INSTRUCTIONS FOR HOLDERS OF CLASS 9
## GENERAL UNSECURED CLAIMS

W. R. Grace & Co. and its affiliated debtors and debtors-in-possession (the "Debtors") are soliciting votes with respect to the Amended Joint Plan of Reorganization for W. R. Grace & Co. and its affiliated Debtors and Debtors-in-Possession, dated January __, 2005 (as it may further be amended, the "Plan"), for the Holders of certain claims against the Debtors.

The Ballot included in this packet is to be used for voting by Holders of Class 9 General Unsecured Claims only. In order for your vote to be counted, your Ballot must be properly

---

[1]    The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

completed, signed, and returned by mail, hand delivery or overnight courier to the Debtors' court-approved Voting Agent:

**<u>By U.S. Mail</u>:**

BMC
Attn: W. R. Grace Voting Agent
P.O. Box 913
El Segundo, CA 90245-0913

**<u>By Courier</u>:**

BMC
Attn: W. R. Grace Voting Agent
1330 E. Franklin Avenue
El Segundo, CA 90245

**Your ballot must be RECEIVED by the Voting Agent no later than 4:00 p.m., prevailing Eastern time, on _____ ____, 2005. Facsimiles and electronic submissions will NOT be accepted.**

On [_____, ___], 2005, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") signed an order which establishes certain procedures (the "Voting Procedures") for the solicitation and tabulation of votes to accept or reject the Plan. The Voting Procedures contain important information regarding the balloting process. Please read the Voting Procedures prior to submitting your Ballot. The Voting Procedures are included in the Solicitation Package accompanying this Ballot.

If you have questions about your Ballot, or if you did not receive a copy of the Disclosure Statement, Plan, Exhibit Book or Voting Procedures, you may contact the Voting Agent at (888) 909-0100. Copies of the Plan and related documents are also available on the Debtors' website at http://www.grace.com and at the website maintained by the Voting Agent at http://www.bmccorp.net.

**By signing this Ballot, you make the following certifications:**

- I have been provided with a copy of the Plan, the Disclosure Statement, the Exhibit Book, the Voting Procedures and the exhibits thereto."

- I have the full power and authority to vote and accept or reject the Plan of the Claimant listed on the Ballot.

*The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the Holders of two-thirds in amount and more than one-half in number of claims voting in each class. In the event the requisite acceptances are not obtained, the Bankruptcy Court may nevertheless confirm the Plan if it finds that the Plan accords fair and equitable*

**[Ballot Code 9]**

C-2

*treatment to the class or classes rejecting it and otherwise satisfies the requirements of Section 1129 (a) and (b) of the Bankruptcy Code.*

**As more fully described in Section 8.4.1 of the Plan, pursuant to the Plan, all Entities that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim, Demand, or cause of action, against any Entity released under any provision of the Plan, shall be enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery on account of such released matters.**

**As more fully provided for in § 8.6.4 of the Plan, each Holder of a Claim who votes in favor of the Plan or receives or retains any property under the Plan shall be deemed to have unconditionally released the Asbestos Protected Parties, the Asbestos Insurance Entities, the Unsecured Creditors' Committee, the Asbestos PI Committee, the Asbestos PD Committee, the Equity Committee and the FCR, and each party's Representatives, as of the Effective Date from any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that such Holder would have been legally entitled to assert in its own right, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date in any way relating or pertaining to, the Debtors or the Reorganized Debtors, the Chapter 11 Cases, or the negotiation, formulation, and preparation of the Plan or any related documents, instruments, or other documents.**

This Ballot is for voting purposes only and does not constitute and shall not be deemed to be a proof of claim or interest or an admission by the Debtors of the validity or amount of a claim.

**Please follow these instructions to complete your Ballot:**

1. Review the Instructions for Completing Ballot for Plan of Reorganization for W. R. Grace & Co., et al.
2. (Item 1) This is the amount of your Claim, for voting purposes only.
3. (Item 2) Vote to accept or reject the Plan by marking an "X" in the box that corresponds to your choice.
4. (Item 3) If the mailing address printed on your Ballot is incorrect, mark the address correction box and supply corrected address information.
5. (Item 3) Print telephone number, name of signatory (if different than Claimant) and Title of Agent, if applicable.
6. (Item 3) Read, sign and date the Ballot. Unsigned Ballots WILL NOT BE COUNTED.
7. Return the Ballot in the envelope provided. Do NOT fold the Ballot. The Ballot must be RECEIVED by the Voting Agent by the date specified in the instructions or IT WILL NOT BE COUNTED. Facsimiles and electronic submissions will NOT be accepted.

**Item 1. PRINCIPAL AMOUNT OF GENERAL UNSECURED CLAIM.** The undersigned certifies that as of [_____], 2005 (the *"Voting Record Date"*), the undersigned was the Holder of the General Unsecured Claim in the aggregate unpaid principal amount set forth below (insert amount in box below).

**[Ballot Code 9]**

<table>
<tr><td>$</td></tr>
</table>

**Item 2.**  **VOTE ON THE PLAN.** Holder of the General Unsecured Claim in the amount set forth in Item 1 hereby votes to:

Check one box:　　　　　☐　　Accept the Plan

　　　　　　　　　　　　☐　　Reject the Plan

*The Plan will be accepted by Class 9 if it is accepted by the Holders of two-thirds in amount and more than one-half in number of Claims in Class 9 voting on the Plan. If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Equity Interests in the Debtors (including those Holders who abstain from voting on or reject the Plan and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.*

**Item 3.**  **ACKNOWLEDGEMENTS AND CERTIFICATIONS.** By returning this Ballot, the General Unsecured Creditor acknowledges that it has been provided with a copy of the Plan, the Disclosure Statement, Exhibit Book, the Voting Procedures, and all exhibits thereto. The General Unsecured Creditor certifies that (i) it was the Beneficial Owner of the General Unsecured Claim identified in Item 1 above on the Voting Record Date, and (ii) it has full power and authority to vote and accept or reject the Plan with respect to the General Unsecured Claim identified in Item 1 on the Voting Record Date.

Print or Type Name of Claimant:　　　　　　　_____

Social Security or Federal Tax I.D. No. of Claimant:　_____

Signature:　　　　　　　　　　　　　　　_____

Name of Signatory (if different than Claimant):　　_____

If by Authorized Agent, Title or Agent:　　　　_____

Street Address:　　　　　　　　　　　　　_____

City, State, and Zip Code:　　　　　　　　　_____

Telephone Number:　　　　　　　　　　　_____

Date:　　　　　　　　　　　　　　　　　_____

**[Ballot Code 9]**

C-4

**IF YOU HAVE ANY QUESTIONS REGARDING YOUR BALLOT, OR IF YOU DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT, PLAN, EXHIBIT BOOK OR VOTING PROCEDURES, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE VOTING AGENT, BMC, TOLL-FREE AT (888) 909-0100.**

**COPIES OF THE PLAN, DISCLOSURE STATEMENT, EXHIBIT BOOK AND VOTING PROCEDURES (AND ALL EXHIBITS THERETO) ARE ALSO AVAILABLE ON THE DEBTORS' WEBSITE AT HTTP://WWW.GRACE.COM AND THE WEBSITE MAINTAINED BY THE VOTING AGENT AT HTTP://WWW.BMCCORP.NET.**

[Ballot Code 9]

K&E 10146713.1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | BALLOT FOR ACCEPTING OR |
| | ) | REJECTING AMENDED JOINT PLAN OF |
| | ) | REORGANIZATION FOR W. R. GRACE. & |
| | ) | CO. AND ITS AFFILIATED DEBTORS |
| | ) | AND DEBTORS-IN-POSSESSION, DATED |
| | ) | JANUARY __, 2005 |

**Class 10 Equity Interests in the Parent**

### BALLOT AND VOTING INSTRUCTIONS FOR HOLDERS OF CLASS 10 EQUITY INTERESTS OF W. R. GRACE & CO., et al. (CUSIP #     )

W. R. Grace & Co. and its affiliated debtors and debtors-in-possession (the "Debtors") are soliciting votes with respect to the Amended Joint Plan of Reorganization for W. R. Grace & Co. and its Affiliated Debtors and Debtors-in-Possession, dated January __, 2005 (as it may further be amended, the "Plan"), from the Holders of certain impaired claims and interests against/in the Debtors. If you have any questions on how to complete this Ballot, please call BMC (the "Voting Agent") toll-free at (888) 909-0100.

---

[1]    The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

This Ballot is to be completed by Holders of Class 10 equity interests in W. R. Grace & Co. ("Equity Interests in the Parent") in such Holders' capacity as beneficial Holders of common stock interests in W.R. Grace & Co. (the "Parent Common Stock" ).  Please complete, sign and date this Ballot and promptly return it to the Voting Agent:

**By U.S. Mail:**

BMC
Attn:  W. R. Grace Voting Agent
P.O. Box 913
El Segundo, CA 90245-0913

**By Courier:**

BMC
Attn:  W. R. Grace Voting Agent
1330 E. Franklin Avenue
El Segundo, CA 90245

**In order for your vote to be counted, your Ballot (or the Master Ballot cast on your behalf) must be RECEIVED by the Voting Agent by 4:00 p.m., prevailing Eastern time, on _____ ____, 2005 (the "Voting Deadline").**

**IF THE ENCLOSED RETURN ENVELOPE IS ADDRESSED TO YOUR NOMINEE, BANK, OR BROKER, RETURN YOUR COMPLETED BALLOT TO SUCH PARTY (RATHER THAN TO THE VOTING AGENT) IN ENOUGH TIME FOR THE NOMINEE, BANK, OR BROKER TO RECEIVE YOUR BALLOT AND TRANSMIT YOUR VOTE ON A MASTER BALLOT BEFORE THE VOTING DEADLINE.**

YOU MUST VOTE ALL CLASS 10 INTERESTS THAT YOU BENEFICIALLY HOLD EITHER TO ACCEPT OR REJECT THE PLAN, AND YOU MAY NOT SPLIT YOUR VOTE.

**DO NOT RETURN ANY SECURITIES WITH THIS BALLOT.**

On [_____ __], 2005, the United States Bankruptcy Court of the District Court of Delaware signed an order that establishes certain procedures (the "Voting Procedures") for the solicitation and tabulation of votes to accept or reject the Plan.  The Voting Procedures are included within the Solicitation Package that accompanies this Ballot.  Capitalized terms not defined shall have the meaning ascribed to them in the Voting Procedures and Glossary.

**As more fully described in Section 8.4.1 of the Plan, pursuant to the Plan, all Entities that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim, Demand, or cause of action, against any Entity released under any provision of the Plan, shall be enjoined from taking any action for the purpose of directly**

**[Ballot Code 10-I]**
**[CUSIP # ____]**

or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery on account of such released matters.

As more fully described in § 8.6.4 of the Plan, each Holder of an Equity Interest in the Parent who votes in favor of the Plan or receives or retains any property under the Plan shall be deemed to have unconditionally released the Asbestos Protected Parties, the Asbestos Insurance Entities, the Unsecured Creditors' Committee, the Asbestos PI Committee, the Asbestos PD Committee, the Equity Committee and the FCR, and each party's Representatives, as of the Effective Date from any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that such Holder would have been legally entitled to assert in its own right, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date in any way relating or pertaining to, the Debtors or the Reorganized Debtors, the Chapter 11 Cases, or the negotiation, formulation, and preparation of the Plan or any related documents, instruments, or other documents.

**PLEASE COMPLETE THE FOLLOWING:**

Item 1:    **PRINCIPAL AMOUNT OF EQUITY INTERESTS IN THE PARENT VOTED.** The undersigned certifies that as of [_____], 2005 (the *"Voting Record Date"*), the undersigned was either the beneficial owner, or the nominee of a beneficial owner, of shares of Parent Common Stock in the total number of shares set forth below (insert amount in box below). If your Equity Securities are held by a nominee, bank, or broker on your behalf and you do not know the amount, please contact your nominee, bank, or broker immediately.

> _____ shares of Parent
> Common Stock

Item 2:    **VOTE ON THE PLAN.** The beneficial owner of Parent Common Stock in the number set forth in Item 1 (the "Beneficial Owner") hereby votes to:

Check one box:        ☐    Accept the Plan

                      ☐    Reject the Plan

*The Plan will be accepted by Class 10 if it is accepted by the Holders of two-thirds in amount and more than one-half in number of Interests in Class 10 voting on the Plan. If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Equity Interests in the Debtors (including those Holders who abstain from voting on*

**[Ballot Code 10-I]**
**[CUSIP # ____]**

C-8

*or reject the Plan and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.*

**Item 3:**   **IDENTIFY ALL OTHER CLASS 10 INTERESTS VOTED.** By returning this Ballot, the Beneficial Owner certifies that (a) this Ballot is the only Ballot submitted for the Class 10 Interests held by such Beneficial Owner, except for the Class 10 Interests identified in the following table, and (b) all Ballots for Class 10 Interests submitted by the Beneficial Owner indicate the same vote to accept or reject the Plan that the Beneficial Owner has indicated in Item 2 of this Ballot (please use additional sheets of paper if necessary).

| Account Number | Name of Holder* | Number of Shares of Other Class 10 Interests Voted |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

\*   Insert your name if the other Class 10 Interest is in your name; or, if the other Class 10 Interest is derived from Equity Securities held in street name, insert name of your bank or broker.

**Item 4.**   **ACKNOWLEDGEMENTS AND CERTIFICATIONS.** By returning this Ballot, the Beneficial Owner acknowledges that it has been provided with a copy of the Plan, the Disclosure Statement, Exhibit Book, the Voting Procedures, and all exhibits thereto. The Beneficial Owner certifies that (i) it was the Beneficial Owner of the Equity Securities identified in Item 1 above on the Voting Record Date, and (ii) it has full power and authority to vote to accept or reject the Plan with respect to the Equity Securities identified on Item 1 on the Voting Record Date. If this Ballot has been "prevalidated" by a bank or broker, such bank or broker certifies that it held the Securities identified in Item 1 as the registered or record owner on the Voting Record Date.

Print or Type Name of Interest Holder:   _____

Social Security or Federal Tax I.D. No. of Interest Holder: _____

Signature:   _____

Name of Signatory (if different than Interest Holder):   _____

**[Ballot Code 10-I]**
**[CUSIP # ____]**

K&E 10146713.1

If by Authorized Agent, Title of Agent:  _____

Street Address:  _____

City, State, and Zip Code:  _____

Telephone Number:  _____

Date:  _____

**IF YOU HAVE ANY QUESTIONS REGARDING YOUR BALLOT, OR IF YOU DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT, PLAN, EXHIBIT BOOK OR VOTING PROCEDURES, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE VOTING AGENT, BMC, AT (888) 909-0100.**

**COPIES OF THE PLAN, DISCLOSURE STATEMENT, EXHIBIT BOOK AND VOTING PROCEDURES (AND ALL EXHIBITS THERETO) ARE ALSO AVAILABLE ON THE DEBTORS' WEBSITE AT HTTP://WWW.GRACE.COM AND THE WEBSITE MAINTAINED BY THE VOTING AGENT AT HTTP://WWW.BMCCORP.NET.**

**[Ballot Code 10-I]**
**[CUSIP # ____]**

K&E 10146713.1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | MASTER BALLOT FOR ACCEPTING OR |
| | ) | REJECTING AMENDED JOINT PLAN OF |
| | ) | REORGANIZATION FOR W. R. GRACE. & |
| | ) | CO. AND ITS AFFILIATED DEBTORS |
| | ) | AND DEBTORS-IN-POSSESSION, DATED |
| | ) | JANUARY __, 2005 |

**Class 10 Equity Interests in the Parent**

## MASTER BALLOT AND VOTING INSTRUCTIONS FOR CLASS 10 EQUITY INTERESTS OF W. R. GRACE & CO., et al., (CUSIP #    )

W. R. Grace & Co. and its affiliated debtors and debtors-in-possession (the "Debtors") are soliciting votes with respect to the Amended Joint Plan of Reorganization for W. R. Grace & Co. and its Affiliated Debtors and Debtors-in-Possession, dated January __, 2005 (as it may further be amended, the "Plan"), from the Holders of certain impaired claims and interests against/in the Debtors.

This Master Ballot for the Class 10 equity interests in W. R. Grace & Co. (the "Equity Interests in the Parent") represented by common stock (the "Parent Common Stock") may not be

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

used for any purpose other than for casting votes to accept or reject the Plan. This Master Ballot is to be used by you as a broker, bank or other nominee (each of the foregoing a "Nominee"), or as the proxy Holder of a Nominee or beneficial owner of Equity Securities.

On [_____], 2005, the United States Bankruptcy Court for the District of Delaware signed an order that establishes certain procedures (the *"Voting Procedures"*) for the solicitation and tabulation of votes to accept or reject the Plan. The Voting Procedures are included with the Solicitation Package which accompanies this Ballot. If you have any questions on how to properly complete this Master Ballot, please call BMC (the *"Voting Agent"*) at (888) 909-0100. Capitalized terms not defined herein shall have the meaning ascribed to them in the Voting Procedures and Glossary, which is Exhibit 2 to the Exhibit Book.

**Please read and follow the attached instructions carefully. Complete, sign and date this Master Ballot and promptly return it to the Debtors' court-approved Voting Agent at:**

> **By U.S. Mail:**
>
> **BMC**
> **Attn: W. R. Grace Voting Agent**
> **P.O. Box 913**
> **El Segundo, CA 90245-0913**
>
> **By Courier:**
>
> **BMC**
> **Attn: W. R. Grace Voting Agent**
> **1330 E. Franklin Avenue**
> **El Segundo, CA 90245**

**This Master Ballot must be RECEIVED by the Voting Agent by 4:00 p.m., prevailing Eastern time, on _____, ____, 2005 (the *"Voting Deadline"*). Otherwise, the votes transmitted hereby will not be counted.**

**As more fully described in Section 8.4.1 of the Plan, pursuant to the Plan, all Entities that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim, Demand, or cause of action, against any Entity released under any provision of the Plan, shall be enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery on account of such released matters.**

**As more fully described in § 8.6.4 of the Plan, each Holder of an Equity Interest in the Parent who votes in favor of the Plan or receives or retains any property under the Plan shall be deemed to have unconditionally released the Asbestos Protected Parties, the Asbestos Insurance Entities, the Unsecured Creditors' Committee, the Asbestos PI Committee, the Asbestos PD Committee, the Equity Committee and the FCR, and each party's Representatives, as of the Effective Date from any and all Claims, obligations,**

K&E 10146713.1

rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that such Holder would have been legally entitled to assert in its own right, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date in any way relating or pertaining to, the Debtors or the Reorganized Debtors, the Chapter 11 Cases, or the negotiation, formulation, and preparation of the Plan or any related documents, instruments, or other documents.

**PLEASE COMPLETE THE FOLLOWING:**

Item 1.     **CERTIFICATIONS OF AUTHORITY TO VOTE.** The undersigned certifies that as of the Voting Record Date, the undersigned (please check one box):

☐          Is a broker, bank, or other nominee for the beneficial owners of the aggregate principal amount of Parent Common Stock listed in Item 1 of the beneficial owner's Class 10 Ballot, and is the Holder of such securities, or

☐          Is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a broker, bank, or other nominee that is the registered Holder of the number of securities listed in Item 1 of the beneficial owner's Class 10 Ballot, or

☐          Has been granted a proxy (an original of which is attached hereto) from a broker, bank, or other nominee, or a beneficial owner, that is the registered Holder of the number of securities listed in Item 1 of the beneficial owner's Class 10 Ballot, and accordingly has full power and authority to vote to accept or reject the Plan on behalf of the beneficial owners of the Equity Interests in the Parent listed in Item 1 of the beneficial owner's Class 10 Ballot.

Item 2.     **TABULATION OF VOTES WITH RESPECT TO THE PLAN.** Please note that each beneficial owner of the Parent Common Stock that votes must vote its entire interest to accept or reject the Plan and may not split such vote. Accordingly, for purposes of tabulating the vote, each voting beneficial owner should be deemed to have voted the full amount of its interest as of [_____], 2005 (the "Voting Record Date"), as shown by your records. A Ballot received from a beneficial owner that partially accepts and partially rejects the Plan will not be counted.

The undersigned transmits the following votes of beneficial owners in respect of their Parent Common Stock, and certifies that the following beneficial owners of the Equity Securities, as identified by their respective customer account numbers set forth below, are beneficial owners of such securities as of the Voting Record Date and have delivered to the undersigned, as Nominee, Ballots casting such votes. Indicate in the

F-13

appropriate column the total number of shares voted for each account, or attach such information to this Master Ballot in the form of the following table:

| Your Customer Account Number for Each Beneficial Owner of Voting Parent Common Stock | Principal Number of Parent Common Stock Voted to Accept or Reject the Plan* | |
|---|---|---|
| | ACCEPT | REJECT |
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |
| 6. | | |
| 7. | | |
| 8. | | |
| 9. | | |
| 10. | | |
| TOTALS: | | |

\*       In order to vote on the Plan, the beneficial owner must have checked a box in item 2 to ACCEPT or REJECT the Plan on the Class 10 Ballot (Ballot Code 10).  Accordingly, if the beneficial owner did not check a box in item 2 on the Class 10 Ballot (Ballot Code 10), please do not enter any vote in this column.

**Item 3.       CERTIFICATION AS TO TRANSCRIPTION OF INFORMATION FROM ITEM 3 AS TO PARENT COMMON STOCK VOTED THROUGH OTHER BALLOTS BY BENEFICIAL OWNERS.**  The undersigned certifies that the undersigned has transcribed into the following table the information, if any, provided by the beneficial owners in Item 3 of the Class 10 Ballot (Ballot Code 10-I), identifying any other Class 10 Interests for which such beneficial owners have submitted other Ballots other than to the undersigned.

F-14

| | TRANSCRIBE FROM ITEM 3 OF THE CLASS 10 BALLOT (BALLOT CODE 10-I) | | |
|---|---|---|---|
| Your Customer Account Number For Each Beneficial Owner Who Completed Item 3 of the Class 10 Ballot (Ballot Code 10-I) | Account Number | Name of Holder | Number of Shares of Other Class 10 Claims Voted |
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |

F-15

**Item 4.**    **CERTIFICATIONS.** By signing this Master Ballot, the undersigned certifies as follows:

1)    Each beneficial owner of Parent Common Stock whose vote is being transmitted by this Master Ballot has been provided with a copy of the Plan, the Disclosure Statement and the Voting Procedures, including all exhibits thereto.

2)    A record of the Ballots received from each beneficial owner will remain on file with the undersigned (and be subject to inspection by the Bankruptcy Court) until one year after the Voting Deadline, unless otherwise instructed in writing by the Debtors or otherwise ordered by the Bankruptcy Court.

Name of the Broker, Bank, or other Nominee:    _____

Name of Proxy Holder or Agent for Broker,
Bank, or other Nominee (if applicable):    _____

Signature:    _____

By (Print name of signatory):    _____

Title:    _____

Street Address:    _____

City, State, and Zip Code:    _____

Telephone Number:    _____

Date:    _____

## INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT

**VOTING DEADLINE/VOTING AGENT:**

**The Voting Deadline is 4:00 p.m., prevailing Eastern time, on _____ ___, 2005.**
To have the vote of the beneficial owners for whom you act as Nominee count, you must complete, sign, and return this Master Ballot so that it is received by the Voting Agent before the Voting Deadline. The Voting Agent is:

> BMC
> Attn: W. R. Grace Voting Agent
> 1330 E. Franklin Avenue
> El Segundo, CA 90245
> (888) 909-0100

**HOW TO VOTE:**

If you are both the owner and the beneficial owner of any principal amount of Equity Interests you wish to vote such Equity Interests, you may complete, execute, and return to the Voting Agent <u>either</u> a Class 10 Ballot (Ballot Code 10-I) or this Master Ballot (Ballot Code 10-M).

**If you are transmitting the votes of any beneficial owners of Parent Common Stock other than yourself, you may <u>either</u>:**

Complete and execute the Class 10 Ballot (other than Items 2 and 3) and deliver to the beneficial owner of such "prevalidated" Class 10 Ballot (Ballot Code 10-I), along with the Plan, the Disclosure Statement and the Voting Procedures, return envelopes addressed to the Voting Agent, and other materials requested to be forwarded. The beneficial owner should complete Items 2 and 3 of that Ballot and return the completed Ballot directly to the Voting Agent so that it will be received before the Voting Deadline;

**OR**

For any Class 10 Ballots you do not "prevalidate":

Deliver the Class 10 Ballot (Ballot Code 10-I) to the beneficial owner, along with the Plan, the Disclosure Statement, the Voting Procedures and all exhibits thereto, a postage-paid return envelope addressed to you, and other materials requested to be forwarded, and take the necessary action to enable such beneficial owner to complete and execute such Class 10 Ballot (Ballot Code 10) voting to accept or reject the Plan, and return the completed, executed Ballot to you in sufficient time to enable you to complete the Master Ballot and deliver it to the Voting Agent before the Voting Deadline; and

With respect to all Class 10 Ballots (Ballot Code 10) returned to you, you must properly complete the Master Ballot as follows:

K&E 10146713.1

a.  Check the appropriate box in Item 1 on the Master Ballot;

b.  Indicate the votes to accept or reject the Plan in Item 2 of the Master Ballot, as transmitted to you by the beneficial owners of Parent Common Stock. To identify such beneficial owners without disclosing their names, please use the customer account number assigned by you to each such beneficial owner, or if no such customer account number exists, please assign a number to each account (making sure to retain a separate list of such beneficial owner and the assigned number). **IMPORTANT: EACH BENEFICIAL OWNER MUST VOTE <u>ALL</u> HIS, HER, OR ITS EQUITY INTERESTS IN THE PARENT <u>EITHER</u> TO ACCEPT OR REJECT THE PLAN, AND MAY NOT SPLIT THEIR VOTES. IF ANY BENEFICIAL OWNER HAS ATTEMPTED TO SPLIT HIS/HER/ITS VOTE, PLEASE CONTACT THE VOTING AGENT IMMEDIATELY.** Any Ballot or Master Ballot that is signed, dated, and timely received, but does not indicate acceptance or rejection of the Plan, will not be counted for purposes of voting on the Plan;

c.  Review the certifications in Item 4 of the Master Ballot;

d.  Sign and date the Master Ballot, and provide the remaining information requested;

e.  If additional space is required to respond to any item on the Master Ballot, please use additional sheets of paper clearly marked to indicate the applicable item of the Master Ballot to which you are responding;

f.  Contact the Voting Agent if you need any additional information; and

g.  Return the completed, executed Master Ballot so as to be <u>received</u> by the Voting Agent before the Voting Deadline.

**If you return a Master Ballot, please retain in your files each completed, executed Class 10 Ballot (Ballot Code 10) returned to you by a beneficial owner for one year from the Voting Deadline (or as modified in writing by the Debtors or an order of the Bankruptcy Court).**

**If you elect to "prevalidate" Ballots, please maintain a list of those beneficial owners as of the Voting Record Date to whom Ballots were sent for one year from the Voting Deadline (or as modified in writing by the Debtors or an order of the Bankruptcy Court).**

This Master Ballot is *not* a letter of transmittal and may not be used for any purpose other than to cast votes to accept or reject the Plan. Holders should not surrender, at this time, certificates representing their securities. Neither the Debtors nor the Voting Agent will accept delivery of any such certificates surrendered together with this Master Ballot. *Surrender of securities for exchange may only be made by you and will be accepted pursuant to a letter of transmittal that will be furnished following the confirmation of the Plan by the United States Bankruptcy Court.*

F-18

No Ballot or Master Ballot shall constitute or be deemed a proof of claim or equity interest or an assertion of claim or equity interest.

No fees, commissions, or other remuneration will be payable to any broker, dealer or other person for soliciting votes on the Plan. The Debtors will, however, reimburse you for customary mailing and reasonable handling expenses incurred by you in forwarding the Ballots and other enclosed materials to the beneficial owners of Equity Securities held by you as a nominee or in a fiduciary capacity.

**NOTHING CONTAINED HEREIN OR IN THE ENCLOSED DOCUMENTS SHALL CONSTITUTE AUTHORITY FOR YOU OR ANY OTHER PERSON TO ACT AS THE AGENT OF W. R. GRACE & CO. OR THE VOTING AGENT, OR AUTHORIZE YOU OR ANY PERSON TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF ANY OF THEM WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE ENCLOSED DOCUMENTS.**

**IF YOU HAVE ANY QUESTIONS REGARDING THE MASTER BALLOT, OR IF YOU DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT, PLAN, OR VOTING PROCEDURES, OR IF YOU NEED ADDITIONAL COPIES OF THE MASTER BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE DEBTORS' VOTING AGENT, BMC, AT (888) 909-0100.**

**COPIES OF THE PLAN, DISCLOSURE STATEMENT, EXHIBIT BOOK AND VOTING PROCEDURES (AND ALL EXHIBITS THERETO) ARE ALSO AVAILABLE ON THE DEBTORS' WEBSITE AT HTTP://WWW.GRACE.COM AND THE WEBSITE MAINTAINED BY THE VOTING AGENT AT HTTP://WWW.BMCCORP.NET.**

F-19