IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., et al.,<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 01-01139 (JKF)<br>) (Jointly Administered)<br>)<br>) **Hearing Date:** February 28, 2005 at 12:00 p.m. ET<br>) **Objection Date:** February 11, 2005 at 4:00 p.m. ET |

## PACIFICORP AND THE VANCOTT BAGLEY CORNWALL & MCCARTHY 401(K) PROFIT SHARING PLAN'S MOTION FOR LEAVE TO FILE LATE PROOFS OF CLAIM

PacifiCorp and the VanCott Bagley Cornwall & McCarthy 401(k) Profit Sharing Plan ("the VanCott Plan"), by and through their undersigned counsel, hereby move pursuant to 11 U.S.C. § 105(a) and Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure for entry of the proposed Order attached hereto, granting PacifiCorp and the VanCott Plan (collectively, the "Movants") leave to each file a late proof of claim on grounds of excusable neglect.

### INTRODUCTION

1. Movants' claims are for environmental cleanup costs incurred and to be incurred to cleanup the Vermiculite Intermountain Site and adjoining property (the "Subject Property"), as to which the EPA previously filed a timely proof of claim. PacifiCorp owns a portion of the "Subject Property"; the VanCott Plan is a former owner of the Subject Property. The Subject Property was contaminated with amphibole asbestos from a vermiculite exfoliating plant (the "Vermiculite Intermountain Facility"), which processed vermiculite from the Libby, Montana vermiculite mine. W.R. Grace & Co. and/or various related entities ("Grace" or "Debtors") operated or arranged for the operation of the Vermiculite Intermountain Facility. The processed vermiculite was marketed under various Grace brand names, including the name "Zonolite."

2. The Bar Date may not apply to Movants' claims. The Instructions printed on the Proof of Claim Form state that the Proof of Claim Form only applies to claimants who are "alleging property damage with respect to asbestos in real property owned by a party . . . from a Grace asbestos-containing product or as a result of one of Grace's vermiculite mining, milling, or processing facilities." It is presently unclear to what degree Movants' claims result from a "Grace asbestos-containing product or as a result of one of Grace's vermiculite mining, milling, or processing facilities." To the extent Movants' claims are subject to the Bar Date, however, cause exists to grant Movants, and each of them, leave to file a late proof of claim.

## BACKGROUND

### A. Grace's Chapter 11 Proceedings

3. On April 2, 2001 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Chapter 11 cases have been consolidated, and pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to operate their businesses and manage their properties as debtors-in-possession.

4. In its Statements and Schedules, Grace scheduled a contingent, disputed, unliquidated Environmental Claim for Intermountain Insulation Co., located at 333 W. First Street, Salt Lake City, Utah. See Schedule F, attached hereto as Exhibit G. Grace listed the amount of the 333 W. First Street claim as "unknown." The Vermiculite Intermountain Site, which is included in the Subject Property, is located at that same address: 333 West 100 South in Salt Lake City, Utah. See Administrative Order on Consent ("AOC"), ¶ 7.p, attached hereto as Exhibit B.

5. On April 22, 2002, this Court entered an order setting March 31, 2003 as the last date (the "Bar Date") for filing proofs of claim for all pre-petition claims relating to asbestos property damage, non-asbestos claims, and medical monitoring claims. D.I. 1963.

6. On November 13, 2004, Grace filed a Chapter 11 Plan of Reorganization (the "Plan") (D.I. 6895) and a Disclosure Statement for Debtors' Plan of Reorganization (the "Disclosure Statement") D.I. 6896. A hearing on approval of the Disclosure Statement is set for January 21, 2005. D.I. 6924.

7. Since Grace's plan has not been confirmed, Grace has not made any plan distributions to creditors holding pre-petition general unsecured claims.

8. A bar date has not been set for asbestos personal injury claims and certain claims related to Zonolite Attic Insulation.

### B. The EPA's Proof of Claim and PacifiCorp's Related Claim

9. On March 28, 2003, the Environmental Protection Agency ("EPA") filed a timely proof of claim, claim number 00009634. A copy of the EPA's claim is attached hereto as Exhibit A. EPA's claim has not been resolved. It asserts claims for environmental contamination at 32 specific sites, including the Subject Property. Exhibit A, at 18-19. EPA's Claim asserts that Grace:

> is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Vermiculite Intermountain Site in Salt Lake City. From 1940 through at least the late 1980s, a vermiculite expansion plant was located at the site. There have been releases or threatened releases of a hazardous substance at the site, as soils at the site are contaminated with asbestos. The Debtor is liable to the United States because it was an operator of a facility at the site at the time hazardous substances were disposed of at such facility. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $5,000 as of January 31, 2003. The Debtor also is liable for future cleanup obligations at the site,

487.001-6580.DOC

>which the United States estimates will cost at least $300,000 to
>complete.

*Id.*

10. On July 29, 2004, PacifiCorp entered into an AOC with EPA in which PacifiCorp agreed to perform a removal action on PacifiCorp's portion of the Subject Property, presumably the "future cleanup" of the site described in EPA's claim. Exhibit B, ¶ 8. As recited in the AOC, the Subject Property includes the location of the Vermiculite Intermountain Facility and areas contaminated by asbestos emissions therefrom. *Id.* The plant operated between the 1940's and possibly as late as 1984 and performed various production operations with vermiculite concentrate from the Libby Vermiculite Mine located in Libby, Montana. *Id.* The AOC recites that EPA's records show that the plan received at least 25,000 tons of vermiculite concentrate from the Libby Mine. *Id.* The AOC also recites that PacifiCorp owned the property on which the plant operated from 1944 until 1954, leasing the property to the operator of the exfoliation plant, and that PacifiCorp sold the property in 1954 and reacquired it in 1984. *Id.*

11. PacifiCorp estimates that the cost of its excavation of the contaminated soil will exceed $4 million. PacifiCorp's Proof of Claim, Attachment D.1, attached hereto as Exhibit C.

C. **The VanCott Plan's Claim**

12. The VanCott Plan purchased a portion of the Subject Property in 1979. In 1984, the VanCott Plan sold a portion of the Subject Property to Pacificorp. The VanCott Plan sold the balance of its portion of the Subject Property in 1998.

13. The VanCott Plan has not, to date, incurred cleanup costs or entered into an agreement or order with EPA or any other party with respect to the Subject Property. The VanCott Plan has, however, been notified of potential environmental issues with respect to the Subject Property. By letter dated June 18, 2004, EPA requested information from the VanCott

487.001-6580.DOC

Plan with respect to the Subject Property. PacifiCorp advised the VanCott Plan of potential liability by letter dated September 20, 2004. Copies of the two letters are attached to the concurrently filed Affidavit of Steven Swindle, attached hereto as Exhibit H, as Attachments 1 and 2. Although the VanCott Plan's liability with respect to the Subject Property has not yet been determined or quantified, the VanCott Plan, pursuant to this Motion, seeks authority to file a Proof of Claim in the form attached hereto as Exhibit I.

**D.     Bar Date Notice**

14.     PacifiCorp's environmental personnel who were dealing with issues leading to the AOC were unaware of the Bar Date. Rasmussen Aff., ¶ 4, attached hereto as Exhibit D. The same is true with respect to representatives of the VanCott Plan. Exhibit H, at ¶ 7.

15.     On April 22, 2002, this Court entered an order pursuant to Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure (the "Bar Date Order") establishing a bar date of March 31, 2003 (the "Bar Date") for "All Non-Asbestos Claims, Asbestos Property Damage Claims and Medical Monitoring Claims." D.I. 1963.

16.     On June 4, 2002, an Affidavit/Declaration of Service Regarding (1) Notice to Attorneys, (2) Certification, (3) Claims Bar Date Notice Materials, and (4) W.R. Grace & Co. Asbestos Property Damage Proof of Claim Form was filed with this Court. D.I. 2159. The Notice to Attorneys was sent to 124 attorneys "for individuals or entities who may or might have a current claim against Debtors relating to Asbestos Property Damage . . . ." D.I. 2159. Counsel for PacifiCorp was not listed on the attached service list.

17.     On or about July 9, 2002, a Declaration of Service Regarding: 1) Claims Bar Date Notice Materials, 2) Grace Non-Asbestos Proof of Claim Form was filed with the Court. D.I. 2351. Neither PacifiCorp nor the VanCott Plan were listed on the attached service list.

18. An inquiry was made to Rust Consulting Inc., the Claims Processing Agent in the Grace case, as to whether PacifiCorp was ever served with the Bar Date Notice Package. However, Rust has not provided any evidence to PacifiCorp or counsel for PacifiCorp indicating that PacifiCorp was served with the Notice Package.

19. PacifiCorp has not been able to determine that it received a Bar Date Notice Package prior to the expiration of the Bar Date. Exhibit D, ¶ 3. PacifiCorp has diligently searched, but can find no record of ever having received the Notice Package. Exhibit D, ¶ 3.

20. Utah Power & Light, a name under which PacifiCorp does business, received notice of the Grace chapter 11 filing on May 2, 2001 and filed a routine proof of claim for electric services in this case on May 16, 2001. Davis Aff., ¶ 5, attached hereto as Exhibit E. A copy of Utah Power & Light's Proof of Claim is attached hereto as Exhibit F. The amount of the claim is $1,375.58. Exhibit F. The basis for the claim is electric utility service provided to a location outside of Salt Lake City which is unrelated to the Subject Property. Exhibit F; Exhibit E, ¶ 5. Utah Power & Light's claim was filed by Stacey Davis of Utah Power & Light's Customer Service Division. Exhibit E, ¶ 5.

21. The Customer Service Division had no knowledge of the Bar Date, the contamination on the Subject Property, or Grace's connection to the vermiculite operations on the Subject Property. Exhibit E, ¶ 7.

22. The VanCott Plan did not receive notice of the pendency of the Grace bankruptcy or of the Bar Date Notice. Prior to receipt of the June 18, 2004 letter, the VanCott Plan was not even aware of any potential liability with respect to the Subject Property. Exhibit H, ¶ 5.

6
487.001-6580.DOC

## ARGUMENT

23. Section 501 of the Bankruptcy Code and Rule 3003(c) of the Federal Rules of Bankruptcy Procedure allow a creditor to file a proof of claim within the time fixed by the court.

24. Section 502(b)(9) of the Bankruptcy Code provides that a late filed claim is not allowed, unless the late filed claim is permitted under the Federal Rules of Bankruptcy Procedure.

25. Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure provides that a court may allow a party tardily to file a claim "on motion made after the expiration of the specified period . . . where the failure to act was the result of excusable neglect." The United States Supreme Court has determined that a party's neglect to timely file a proof of claim before a bar date can constitute excusable neglect. *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993). In *Pioneer*, the Supreme Court established a two part test under Rule 9006(b). First, the Court held that the conduct must constitute neglect and not be deliberate. *Id.* at 395. "Neglect" "encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Id.* at 388.

26. Second, the Court held that the conduct must be excusable. *Id.* at 395. The determination of whether neglect is excusable is "at bottom an equitable one, taking into account of all relevant circumstances surrounding the party's omission," including 1) the danger of prejudice to the debtor, 2) the length of the delay and its potential impact on judicial proceedings, 3) the reason for the delay, including whether it was within the reasonable control of the movant, and 4) whether the movant acted in good faith. *Id.* at 395.

27. The Third Circuit and the District of Delaware have applied the *Pioneer* factors and have allowed for the filing of late claims based on excusable neglect in several cases. *See In re Inacom Corp*, No. 00-2426, 2004 WL 2283599 (D. Del. Oct. 4, 2004) (applying *Pioneer* to

7

allow a late filed proof of claim); *Manus Corp. V. NRG Energy, Inc., (In re O'Brien Environmental Energy, Inc.)*, 188 F.3d 116, 125 (3d Cir. 1999) (same); *Chemetron Corp v. Jones*, 72 F.3d 341, 349-50 (3d Cir. 2000); *In re Orthopedic Bone Screw Products Liability Litigation*, 246 F.3d 315, 321-33 (3d Cir. 2001); and *Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litigation)*, 233 F.3d 176, 181-82 (3d Cir. 2002).

28. In addition, this Court has applied the *Pioneer* equitable framework in two instances in the W.R. Grace case. On February 23, 2004, based on *Pioneer*, this Court entered an order granting Royal Indemnity Company's Motion for Leave to File a Late Proof of Claim. D.I. 4667. Royal's claim arose from a 1995 settlement agreement with Grace, in which Grace agreed to indemnify and hold Royal harmless from any asbestos related claim. On October 25, 2004, based on *Pioneer*, this Court denied Intercat, Inc.'s Motion for Leave to File a Late Proof of Claim. Intercat's claim arose from a patent infringement action by Intercat in which Grace had intervened. Both Royal and Intercat received a Bar Date Notice Package.

29. Movants should be authorized to file late claims based upon excusable neglect according to the foregoing factors.

A. **There is No Danger of Prejudice to the Debtor**

30. "[P]rejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence." *O'Brien*, 188 F.3d at 127. Based on *O'Brien* and *Pioneer*, the U.S. District Court for the District of Delaware has held that the following factors should be considered in determining the danger of prejudice to the debtor: (a) "whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated"; (b) "whether the payment of the claim would force the return of amounts already paid out under the confirmed Plan or affect distribution to creditors"; (c) "whether payment of the claim would jeopardize the success of the debtor's reorganization"; (d) "whether allowance

8

of the claim would adversely impact the debtor actually or legally"; and (e) "whether allowance of the claim would open the floodgates to other future claims." *Inacom*, 2004 WL 2283599 at *4; *see also O'Brien*, 188 F.3d at 126-28.

31. Based on the factors set forth in *Inacom*, allowance of Movants' claims does not present any danger of prejudice to Grace.

32. First, Grace has known of its potential and unquantified liability relating to the Vermiculite Intermountain Facility Site, at 333 West 100 South, since June 1, 2001 when Grace filed its Schedules and Statements. Schedule F of Grace's schedules lists an Environmental Claim for the 333 West 100 South site.

33. Moreover, Grace was again apprised of its potential and unquantified liability relating to the Vermiculite Intermountain Facility Site on March 28, 2003, when the EPA filed its proof of claim.

34. Second, there is no danger of prejudice to Grace or its creditors since Movants' claims will not affect plan distributions. As of the date of this Motion, there have not been any plan distributions.

35. Third, there is no danger of prejudice because payment of Movants' claims will not jeopardize the success of Grace's reorganization, nor will allowance of Movants' claims adversely impact Grace. Movants' claims are insubstantial in comparison to the amount of Grace's total liabilities and the amount Grace intends to distribute to Asbestos Property Damage claimants. Movants' claims will not have a material impact on the Debtor's financial condition. Although the final amount has not yet been determined, Movants' claims should be substantially less than $10 million. Grace's most recent monthly operating report, filed on November 2, 2004, reporting for the period of September, 2004, indicates that Grace has estimated total liabilities in

excess of $2.8 billion. D.I. 6086. The proposed Disclosure Statement requires the Court to find that the aggregate of the Asbestos PI-SE Class Fund (Asbestos Personal Injury-Symptomatic Eligible Claim), the Asbestos PD Class Fund, and the Asbestos Trust Expenses Fund is not greater than $1.483 billion, thus setting a cap on the amount Asbestos PD and PI-SE Claimants will receive from the distribution and thus setting a cap on the amount other Grace creditors will "give up." D.I. 6896, at 4.3.1.8. Thus, to the extent, if any, that the possible amount of Movants' claims is a relevant factor, the claims are a tiny fraction of Grace's total liabilities and of the Asbestos PI-SE/PD Class Funds. Such claims will not materially dilute the overall projected distribution percentage to PI-SE/PD creditors or other Grace creditors.

36. Fourth, allowance of Movants' claims will not open the floodgates to other future claims. The circumstances surrounding the claims are discreet and are not necessarily common to other asbestos property damage claimants.

**B. Movants' Delay in Filing Their Claims Was Not Within Movants' Reasonable Control**

37. In considering the reason for a party's delay in filing its claim, courts should consider both the creditor and the debtor's role in the delay. *O'Brien*, 188 F.3d at 128; *Chemetron Corp.* 72 F.2d at 360 (stating that the district court erred in failing to consider the debtor's role in the creditor's delay). Inadequate notice is an excusable reason for delay. *Pioneer*, at 398; *O'Brien*, at 129. In *Pioneer*, the Court held that the debtor's notice was inadequate because the bar date was placed in a notice regarding a creditors' meeting "without any indication of the significance of the bar date." Likewise, in *O'Brien*, the court found that notice in a 12 page application was buried in the middle of the document and did not list the relevant parties' names or claims.

10

38.	PacifiCorp has diligently searched, but can find no record of ever having been served with the Bar Date Notice. Moreover, the Declarations of Service regarding the Claims Bar Date Notice Materials do not indicate that PacifiCorp was ever served. The VanCott Plan did not receive any notices with respect to the pending case.

39.	Neither PacifiCorp's personnel dealing with environmental issues leading up to the AOC nor representatives of the VanCott Plan knew of the Bar Date until after the Bar Date had expired.

## C.     The Length of Delay and Potential Impact on Judicial Proceedings

40.	The Third Circuit has held that the length of delay must be considered in "absolute terms," not merely "the delay's effect on the judicial proceedings." *O'Brien*, 188 F.3d at 130. *See also Inacom*, 2004 WL 2283599 at *6. In *O'Brien*, the Third Circuit explained that

> the delay factor in the excusable neglect inquiry should not be held to turn entirely on the urgency created by the debtor's time line. Such an approach makes the two month delay seem significant, whereas a similar delay, or even a much longer delay in a case where the debtor proceeds more expeditiously to resolve outstanding claims under its contracts, or allows itself more time between confirmation and closing under its plan, would be insignificant..

*Id.*

41.	The facts of *Inacom* illustrate the Third Circuit's statement. In *Inacom*, the court found that a delay of nearly 3 years was insignificant and did not impact judicial proceedings. Inacom, the debtor, filed its objection to Pro-Tec's, a creditor, claim on June 13, 2001. Inacom's plan was confirmed on May 23, 2003 and Pro-Tec did not respond to Inacom's objection until February, 2004 when it did not receive its expected distribution. Pro-Tec filed a motion for reconsideration asking the court to allow its claim on April 2, 2004 – two years and ten months after Inacom's objection and nine months after the plan was confirmed. Even so,

11

Pro-Tec argued, and the court agreed, that the length of the delay had no impact on the implementation of the Plan because Inacom was still litigating claims subject to the Objection and distribution was contingent on the outcome of that litigation.

42.     Here, Movants seek to file their proofs of claim 21 months after the Bar Date. However, this 21 month delay will have no material impact on the judicial proceedings: the delay will not affect the judicial proceedings relating to Asbestos PD Claims, nor will it affect the confirmation or implementation of Grace's plan of reorganization.

43.     The judicial proceedings relating to Asbestos PD Claims are still in their infancy. On the Petition Date, there were approximately eight asbestos property damage lawsuits pending against Grace. D.I. 6896, at 2.4.2. Approximately 4,300 Asbestos PD Claims were submitted prior to the Bar Date. *Id.* While Grace intends to object to and litigate "all or almost all" of these 4,300 claims, *Id.* Grace has not begun negotiations or litigation to resolve such claims. Motion for Entry of An Order Seeking the Estimation of Asbestos Claims and Certain Related Relief (the "Estimation Motion"), D.I. 6899, at p. 34. As stated in the Estimation Motion, Grace has indicated that it does not intend to litigate these claims until after plan confirmation. *Id.* Indeed, the very purpose of seeking an estimate of the amount of asbestos related claims is to postpone the lengthy claims litigation process until after plan confirmation. *Id.* Moreover, In Grace's Motion for Entry of a Case Management Order Establishing Protocols for Litigating Asbestos-Related Claims Following Plan Confirmation, filed November 13, 2004, Grace indicated that it intends to implement a "five step process for the litigation and allowance/disallowance of all Asbestos Claims." D.I. 6898. This "five step process" has not yet been approved or implemented.

12

487.001-6580.DOC

44. Movants' 21 month delay will not materially impact confirmation or implementation of the Debtors' plan. On November 13, 2004, the Debtors filed a proposed Disclosure Statement and Plan with the Court. A hearing on the approval of the Disclosure Statement has been scheduled for January 21, 2004. Delay in filing Movants' claims will in no way prejudice Grace. Grace has indicated that it does not intend to litigate the various asbestos claims until after an Estimation Order is in place and the Plan is confirmed. Movants' claims are only a small fraction of Grace's liabilities to the Asbestos PI-SE and PD Claimants, and allowance of Movants' late claims will not materially affect outcome of the Debtors' Estimation Motion. Once the Estimation Order is in place and the Plan is confirmed, there will be a long process of implementation. The Asbestos Trust must be created and funded, all claims must be transferred to the Asbestos Trust, and the claims must be thoroughly reviewed and litigated.

45. The delay in this case will not impact confirmation/implementation of the Plan since Grace does not intend to complete the claims review process and negotiate/litigate Asbestos PD claims until after Plan confirmation. Similarly, the length of delay will not affect judicial proceedings relating to Asbestos PD claims since Movants' claims are only a tiny fraction of the total amount of Asbestos PD claims and since the claims review process is still in its early stages.

**D.  Good Faith**

46. Movants, and each of them, have filed this Motion in good faith.

**E.  To Avoid an Inequitable Result, This Court Should Allow Movants Leave to File Their Late Claims**

47. Grace has asserted that "the central task in these Chapter 11 cases has always been to define the Debtors' true liability to Asbestos Claimants." Estimation Motion, D.I. 6899, p. 2. Given the central task of these Chapter 11 proceedings and the circumstances surrounding

Movants' claims, as a matter of equity, this Court should allow Movants to each file a late claim. To avoid an inequitable result, this Court should not allow Grace to escape the environmental costs of nearly 30 years of vermiculite processing and at the same time retain the benefits of 30 years of profits. To avoid an inequitable result, this Court should not excuse Grace from the consequences of Grace's action giving rise to the contamination of the Subject Property.

## CONCLUSION

48. WHEREFORE, for the reasons as set forth above, Movants respectfully request that the Court enter the proposed Order attached hereto as Exhibit J, which grants Movants leave to each file a late proof of claim for asbestos property damage costs, together with other relief as this Court deems just and equitable.

Dated: January 14, 2005

LANDIS RATH & COBB LLP

Richard S. Cobb (#3157)
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE 19899
(302) 467-4400

Attorneys for PacifiCorp and the VanCott Bagley Cornwall & McCarthy 401(k) Profit Sharing Plan

-and-

LEBOEUF, LAMB, GREENE & MACRAE
Steven J. McCardell (#2144)
Jared L. Inouye (#9776)
1000 Kearns Building
136 South Main Street
Salt Lake City, UT 84101-1685
(801) 320-6700

Attorneys for PacifiCorp

-and-

487.001-6580.DOC

VANCOTT, BAGLEY, CORNWALL & MCCARTHY
J. Robert Nelson (#4519)
50 South Main Street
Salt Lake City, UT 84144-0450
(801) 237-0270

Attorneys for the VanCott Bagley Cornwall & McCarthy 401(k) Profit Sharing Plan

487.001-6580.DOC