# EXHIBIT A

# WR Grace

SR00000579

### Bankruptcy Form 10
### Index Sheet

Claim Number:   00009634                    Receive Date:   03/28/2003

---

**Multiple Claim Reference**

Claim Number   _____

- [ ] MMPOC   Medical Monitoring Claim Form
- [ ] PDPOC   Property Damage
- [ ] NAPO   Non-Asbestos Claim Form
- [ ]    Amended

Claim Number   _____

- [ ] MMPOC   Medical Monitoring Claim Form
- [ ] PDPOC   Property Damage
- [ ] NAPO   Non-Asbestos Claim Form
- [ ]    Amended

---

**Attorney Information**

Firm Number:   00336                Firm Name:   Us Dept of Justice

Attorney Number:   00212            Attorney Name:   James D Freeman

Zip Code:   80202-2449

Cover Letter Location Number:   SR00000579

| Attachments<br>Medical Monitoring | Attachments<br>Property Damage | Non-Asbestos |
|---|---|---|
| [ ] TBD | [ ] TBD | [x] Other Attachments |
| [ ] TBD | [ ] TBD | |
| [ ] TBD | [ ] TBD | |
| [ ] TBD | [ ] TBD | |
| [ ] TBD | [ ] TBD | |
| | [ ] Other Attachments | |

| Other | | |
|---|---|---|
| | [ ] Non-Standard Form | |
| | [ ] Amended | |
| | [ ] Post-Deadline Postmark Date | |

Box/Batch: WRBF0040/WRBF0158                    Document Number: WRBF007853

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF Delaware | GRACE NON-ASBESTOS PROOF OF CLAIM FORM |
|---|---|

| Name of Debtor:[1] W.R. Grace & Co. - Conn. | Case Number 01-1179 |
|---|---|

**NOTE: Do not use this form to assert an Asbestos Personal Injury Claim, a Settled Asbestos Claim or a Zonolite Attic Insulation Claim. Those claims will be subject to a separate claims submission process. This form should also not be used to file a claim for an Asbestos Property Damage Claim or Medical Monitoring Claim. A specialized proof of claim form for each of these claims should be filed.**

| Name of Creditor (The person or other entity to whom the Debtor owes money or property): United States of America | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☒ Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|---|
| Name and address where notices should be sent:<br>James D. Freeman, Esq.<br>U.S. Dept. of Justice; Env. Enforcement Section<br>999 18th Street, Suite 945, North Tower<br>Denver, Colorado 80202-2449 | | |
| Account or other number by which creditor identifies Debtor:<br>DJ Case No. 90-11-2-07106/5 | Check here ☐ replaces<br>if this claim ☐ amends a previously filed claim, dated:_____ | |

Corporate Name, Common Name, and/or d/b/a name of specific Debtor against whom the claim is asserted:
W.R. Grace & Co. - Conn.

| 1. Basis for Claim<br>☐ Goods sold<br>☐ Services performed<br>☒ Environmental liability<br>☐ Money loaned<br>☐ Non-asbestos personal injury/wrongful death<br>☐ Taxes<br>☐ Other_____ | ☐ Retire benefits as defined in 11 U.S.C. § 1114(a)<br>☐ Wages, salaries, and compensation (fill out below)<br>Your SS #:_____ _____<br>Unpaid compensation for services performed<br>from _____ to _____ (date) |
|---|---|

| 2. Date debt was incurred: See Attached | 3. If court judgment, date obtained: See Attached |
|---|---|
| 4. Total Amount of Claim at Time Case Filed: See Attached<br>If all or part of your claim is secured or entitled to priority, also complete Item 5 below.<br>☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges. | $_____<br>To be provided upon request |

5. Classification of Claim. Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured Nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another. CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.

☐ SECURED CLAIM (check this box if your claim is secured by collateral, including a right of setoff.)

Brief Description of Collateral: See Attached

☐ Real Estate    ☐ Other (Describe briefly)
_____

Amount of arrearage and other charges at time case filed included in secured claim above, if any: $_____

Attach evidence of perfection of security interest

☐ UNSECURED NONPRIORITY CLAIM    See Attached

A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

☐ UNSECURED PRIORITY CLAIM - Specify the priority of the claim.

☐ Wages, salaries, or commissions (up to $4650), earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties of governmental units - 11 U.S.C. § 507(a)(7).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a____).

6. Credits: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

7. Supporting Documents: Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

8. Acknowledgement: Upon receipt and processing of this Proof of Claim, you will receive an acknowledgement card indicating the date of filing and your unique claim number. If you want a file stamped copy of the Proof of Claim form itself, enclose a self-addressed envelope and copy of this proof of claim form.

This Space is for Court Use Only

WR Grace        BF.40.158.7853
SR=579          00009634

| Date<br>03/27/03 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>James D. Freeman _(signature)_<br>James D. Freeman, Esq.<br>Trial Attorney |
|---|---|

REC'D MAR 2 8 2003

[1] See General Instructions and Claims Bar Date Notice and its exhibits for names of all Debtors and "other names" used by the Debtors.

# SPECIFIC INSTRUCTIONS FOR COMPLETING
## GRACE NON-ASBESTOS PROOF OF CLAIM FORMS

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, there may be exceptions to these general rules.*

This Proof of Claim form is for Creditors who have Non-Asbestos Claims against any of the Debtors. Non-Asbestos Claims are any claims against the Debtors as of a time immediately preceding the commencement of the Chapter 11 cases on April 2, 2001 other than Asbestos Personal Injury Claims, Asbestos Property Damage Claims, Zonolite Attic Insulation Claims, Settled Asbestos Claims or Medical Monitoring Claims, as defined on the enclosed General Instructions. More specifically, Non-Asbestos Claims are those claims against one or more of the Debtors, whether in the nature of or sounding in tort, contract, warranty or any other theory of law or equity for, relating to or arising by reason of, directly or indirectly, any injury, damage or economic loss caused or allegedly caused directly or indirectly by any of the Debtors or any products or materials manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors and arising or allegedly arising directly or indirectly, from acts or omissions of one or more of the Debtors, including, but not limited to, all claims, debts, obligations or liabilities for compensatory and punitive damages.

**Administrative Expenses:** Those claims for, among other things, the actual, necessary costs and expenses of preserving the estate as defined in Section 503 of the Bankruptcy Code that arose after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to Section 503 of the Bankruptcy Code. This form should not be used to make a claim for an administrative expense.

**Secured Claim:** A claim is a secured claim to the extent that the creditor has a lien on property of the debtor (collateral) that gives the creditor the right to be paid from that property before creditors who do not have liens on the property. Examples of liens are a mortgage on real estate and a security interest in a car, truck, boat, television set, or other item of property. A lien may have been obtained through a court proceeding before the bankruptcy case began; in some states a court judgment is a lien. In addition, to the extent a creditor also owes money to the debtor (has a right to setoff), the creditor's claim may be a secured claim. (See also Unsecured Claim.)

**Unsecured Claim:** If a claim is not a secured claim, it is an unsecured claim. Unsecured claims are those claims for which a creditor has no lien on the debtor's property or the property on which a creditor has a lien is not worth enough to pay the creditor in full.

**Unsecured Nonpriority Claim:** Certain types of unsecured claims are given priority, so they are to be paid in bankruptcy cases before most other unsecured claims (if there is sufficient money or property available to pay these claims). The most common types of priority claims are listed on the proof of claim form. Unsecured claims that are not specifically given priority status by the bankruptcy laws are classified as Unsecured Nonpriority Claims.

**Information about Creditor:** Complete this section giving the name, address, and telephone number of the creditor to whom the debtor owes money or property, and the debtor's account number, if any. If anyone else has already filed a proof of claim relating to this debt, if you never received notices from the court which sent notice, or if this proof of claim replaces or amends a proof of claim that was already filed, check the appropriate box on the form.

1.   **Basis for Claim:** Check the type of debt for which the proof of claim is being filed. If the type of debt is not listed, check "Other" and briefly describe the type of debt. If you were an employee of the debtor, fill in your social security number and the dates of work for which you were not paid.

2.   **Date Debt Incurred:** Fill in the date the debt was first owed by the debtor.

3.   **Court Judgments:** If you have a court judgment for this debt, state the date the court entered the judgment.

4.   **Amount of Claim:** Insert the amount of claim at the time the case was filed in the appropriate box based on your selected Classification of Claim in item 5. If interest or other charges in addition to the principal amount of the claim are included, check the appropriate place on the form and attach an itemization of the interest and charges.

5.   **Classification of Claim:** Check either Secured, Unsecured Nonpriority or Unsecured Priority as appropriate. (See Definitions above.)

     **Unsecured Priority Claim:** Check the appropriate place if you have an unsecured priority claim, and state the amount entitled to priority. (See Definitions, above.) A claim may be partly priority and partly nonpriority if, for example, the claim is for more than the amount given priority by the law. Check the appropriate place to specify the type of priority claim.

6.   **Credits:** By signing this proof of claim, you are stating under oath that in calculating the amount of your claim, you have given the debtor credit for all payments received from the debtor.

7.   **Supporting Documents:** You must attach to this proof of claim form, copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If documents are not available, you must attach an explanation of why they are not available.

*Be sure to date the claim and place original signature of claimant or person making claim for creditor where indicated at the bottom of the claim form. Please type or print name of individual under the signature. Be sure all items are answered on the claim form. If not applicable, insert "Not Applicable".*

RETURN CLAIM FORM (WITH ATTACHMENTS, IF ANY) TO THE FOLLOWING CLAIMS AGENT FOR THE DEBTORS:

> Claims Processing Agent
> Re: W. R. Grace & Co. Bankruptcy
> P.O. Box 1620
> Faribault, MN 55021-1620

**The Bar Date for filing all NON-ASBESTOS CLAIMS against the Debtors is March 31, 2003 at 4:00 p.m. Eastern Time.**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| W.R. GRACE & CO.- CONN., | ) Case No. 01-1179 (JFK) |
|  | ) |
| Debtor. | ) |

**PROOF OF CLAIM OF THE UNITED STATES ON BEHALF OF
THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, THE UNITED
STATES DEPARTMENT OF AGRICULTURE FOREST SERVICE AND THE ARMY
CORPS OF ENGINEERS**

This Proof of Claim is filed by the Attorney General of the United States at the request of

the United States Environmental Protection Agency ("EPA"), the United States Department of

Agriculture Forest Service (the "Forest Service"), and the Army Corps of Engineers. The

Attorney General is authorized to make this Proof of Claim on behalf of the United States. This

Proof of Claim asserts claims against the Debtor in connection with environmental

contamination at various sites.

1.      Blackburn & Union Privileges Site (Walpole, Massachusetts):  The Debtor is

liable to the United States pursuant to the Comprehensive Environmental Response,

Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601- 9675, and administrative

orders issued pursuant to CERCLA in connection with the cleanup of environmental

contamination at the Blackburn & Union Privileges Superfund Site (also known as the South

Street Site) in Walpole, Massachusetts. Industrial operations have been located at the site for

many years. There have been releases or threatened releases of hazardous substances at the site,

as soils, sediments, and groundwater are contaminated with inorganic chemicals, including

asbestos, lead, arsenic, and nickle, volatile organic compounds ("VOCs") and semi-volatile

organic compounds. The site is on the National Priorities List established pursuant to Section

105 of CERCLA, 42 U.S.C. § 9605 ("NPL"). The Debtor is liable to the United States because

it owned and operated a facility on the site at the time hazardous substances were disposed of.

The Debtor is a party to several administrative orders EPA has issued in connection with the site,

including a September 1999 administrative order on consent in which the Debtor and one other

PRP agreed to perform the remedial investigation/feasibility study ("RI/FS") for the site and to

pay for EPA's oversight of such work. When the Debtor filed for bankruptcy, it stopped

performing work under the RI/FS order. Under the terms of the RI/FS order, the Debtor

established a letter of credit in the amount of $800,000 to pay for EPA's oversight costs. In July

2002, EPA drew on the letter of credit and established a trust account in the amount of $800,000.

In September 2002, EPA withdrew $56,165 from the trust account for the Debtor's share of

outstanding oversight costs due under the RI/FS order. The Debtor is liable for the United

States' future RI/FS oversight costs, which the United States estimates will be at least $1 million.

The Debtor also is liable for future cleanup obligations at the site, including the cost of

conducting the RI/FS as required in the 1999 administrative order, which the United States

estimates will be at least $1.6 million, and the cost of groundwater remediation, which the United

States estimates will be between $10 million and $20 million. The remedial action for the site

also may include the remediation of contaminated soils and/or sediments. The United States'

response actions at the site are not inconsistent with the National Contingency Plan promulgated

pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, and set forth at 40 C.F.R. ¶300, as

amended ("NCP"). Other PRPs along with the Debtor may also be jointly and severally liable to

the United States pursuant to CERCLA with respect to the cleanup of environmental

contamination at the site.

2

2.     Solvents Recovery Service of New England (Southington, Connecticut):  The

Debtor is liable to the United States pursuant to CERCLA and an administrative order issued

under CERCLA in connection with the cleanup of environmental contamination at the Solvents

Recovery Service of New England ("SRSNE") Site located in Southington, Connecticut.  From

at least 1957 through 1991, a hazardous waste treatment, storage and disposal facility was located

at the site.  There have been releases or threatened releases of hazardous substances at the site, as

groundwater is contaminated with VOCs, including isopropyl alcohol, acetone, and toluene and

soil is contaminated with lead, cadmium, polychlorinated biphenyls ("PCBs") and VOCs.  The

SRSNE Site is on the NPL.  The Debtor is liable to the United States because it arranged for the

disposal of hazardous substances at the site.  The Debtor is a party to several administrative

orders EPA has issued in connection with the site, including a 1997 administrative order with

approximately 500 PRPs to expand the groundwater treatment system and to conduct the RI/FS

for the site.  Work required under this order has not yet been completed.  The Debtor is liable for

the United States' unreimbursed response costs relating to the site of at least $11,859,984 as of

March 2001.  The Debtor also is liable for future cleanup obligations at the site, which the United

States estimates will cost at least $18 million to complete.  The United States' response actions at

the site are not inconsistent with the NCP.  Other PRPs along with the Debtor may also be jointly

and severally liable to the United States pursuant to CERCLA with respect to the cleanup of

environmental contamination at the SRSNE site.

3.     Acton Plant Site (Acton, Massachusetts):  The Debtor is liable to the United

States pursuant to CERCLA and a judicially-approved consent decree in connection with the

cleanup of environmental contamination at the Acton Plant Site located in Acton and Concord,

Massachusetts.  Industrial operations have been located at the site for many years.  There have

3

been releases or threatened releases of hazardous substances at the site, as groundwater is contaminated with VOCs and heavy metals, including lead, arsenic, chromium, iron, manganese and nickel; sediments are contaminated with cadmium; and soils and sludges in disposal areas at the site are contaminated primarily with arsenic, VOCs, including vinyl chloride, ethyl benzene, benzene, 1,1 dichlorethylene, and bis(2-ethylhexyl). The Acton Plant Site is on the NPL. The Debtor is liable to the United States because it owned and operated a facility at the site at the time hazardous substances were disposed of and is the current owner and operator of the facility. In 1980, EPA entered into a consent decree whereby the Court ordered the Debtor to undertake ' cleanup of the facility and to ensure restoration of the aquifer to a fully usable condition. Work under this consent decree is on-going. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $1,006,960 as of July 1, 2002. The Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $40 million to complete. The United States' response actions at the site are not inconsistent with the NCP.

4.     Cambridge Plant Site (Cambridge, Massachusetts): The Debtor is liable to the United States pursuant to CERCLA in connection with the assessment of environmental contamination at the Cambridge Plant Site in Cambridge, Massachusetts. Industrial operations have been located at the site for many years. There have been releases or threatened releases of hazardous substances at the site, as surface soils are contaminated with asbestos. The Debtor is liable to the United States because it owned and operated a facility at the site at the time hazardous substances were disposed of and is the current owner and operator of a portion of the site. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $120,000 as of July 1, 2002. The Debtor also is liable for any future cleanup

4

obligations at the site. The United States' response actions at the site are not inconsistent with the NCP.

     5.     <u>Wells G&H (Woburn, Massachusetts)</u>: The Debtor is liable to the United States pursuant to CERCLA and a judicially-approved consent decree in connection with the cleanup of environmental contamination at the Wells G&H Site in Woburn, Massachusetts. The site includes the aquifer and land mass area located within the zone of contribution of two contaminated municipal wells known as Wells G and H. There have been releases or threatened releases of hazardous substances at the site, as groundwater is contaminated with VOCs, including trichloroethylene ("TCE") and tetrachloroethylene ("PCE"); sediments in the Aberjona River are contaminated with polycyclic aromatic hydrocarbons ("PAHs") and heavy metals; and soils are contaminated with PAHs, PCBs, VOCs, and pesticides. The Wells G&H Site is on the NPL. The Debtor is liable to the United States because it owns a facility that is a source of the contamination at the site and operated the same facility at the time hazardous substances were disposed of. In 1991, EPA entered into a consent decree with several entities that owned or operated facilities that contributed to contamination at the site, including the Debtor, whereby each entity agreed to clean up its property and to jointly conduct a study of the contamination in the aquifer in the central area of the site. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $6,314,228 as of June 30, 2002. The Debtor also is liable for future cleanup obligations at the site, including the cleanup and the study that the consent decree requires (which the United States estimates will cost at least $5 million to complete) and the cleanup of the central area of the site (which the United States estimates will cost at least $28 million to complete). The United States' response actions at the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also be jointly and severally

5

liable to the United States pursuant to CERCLA with respect to the cleanup of environmental contamination at the site.

6.    Li Tungsten Site (Glen Cove, New York): The Debtor is liable to the United States pursuant to CERCLA and administrative orders issued under CERCLA in connection with the cleanup of environmental contamination at the Li Tungsten Site in Glen Cove, New York. Industrial operations and an associated landfill have been located at the site for many years. There have been releases or threatened releases of hazardous substances at the site, as the soil is contaminated with low levels of radiation and heavy metals. The site is on the NPL. The Debtor is liable to the United States because it arranged for the disposal of hazardous substances at the site. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $17 million through February 2003. The Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $30 million to complete. The United States' response actions at the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also be jointly and severally liable to the United States pursuant to CERCLA with respect to the facility.

7.    Zonolite/Grace Site (Hamilton Township, New Jersey): The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Zonolite/Grace Site in Hamilton Township, New Jersey. From at least 1950 to 1994, a vermiculite expansion plant was located at the site. There have been releases or threatened releases of a hazardous substance at the site, as surface soils are contaminated with asbestos. The Debtor is liable to the United States because it operated a facility at the site at the time hazardous substances were disposed of at the site. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $44,956.24 as of January 31,

6

2003. The Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $1.9 million to complete. The United States' response actions at the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also be jointly and severally liable to the United States pursuant to CERCLA with respect to the cleanup of environmental contamination at the site.

8.      Central Chemical Site (Hagerstown, Maryland): The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Central Chemical Site in Hagerstown, Maryland. From the early 1930s through the mid-1980s, a chemical plant was located at the site. There have been releases or threatened releases of hazardous substances at the site, as soil, groundwater, surface water, and sediments at the site are contaminated with arsenic, lead, benzene, aldrin, chlordane, DDD, DDE, DDT, dieldrin and methoxychlor. The contamination extends beyond the facility property boundaries onto adjacent property being developed for residential use. The site is on the NPL. The Debtor is liable to the United States because it arranged for the disposal of hazardous substances at the site. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $457,485 as of August 2001. The Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $30 million to complete. The United States' response actions at the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also be jointly and severally liable to the United States pursuant to CERCLA with respect to the cleanup of environmental contamination at the site.

9.      Galaxy/Spectron Site (Elkton, Maryland): The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Galaxy/Spectron Site near Elkton, Maryland. From at least 1961 through 1988, a hazardous

7

waste treatment, storage and disposal facility was located at the site. There have been releases or threatened releases of hazardous substances at the site, as soil, surface water, and groundwater at the site are heavily contaminated with chlorinated organic solvents. The Debtor is liable to the United States because it arranged for the disposal of hazardous substances at a solvent recovery facility at the site. The site is on the NPL. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $1,108,922 as of September 2002. The Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $16 million to complete. The United States' response actions at the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also be jointly and severally liable to the United States pursuant to CERCLA with respect to the cleanup of environmental contamination at the site.

10.     Watson Johnson Landfill Site (Richland Township, Pa): The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Watson Johnson Landfill Site in Richland Township, Pennsylvania. From the 1950s until the early 1970s, an industrial and municipal landfill was located at the site. There have been releases or threatened releases of hazardous substances at the site, as soil is contaminated with VOCs, semi-volatile compounds, PCBs, and metals; groundwater is contaminated with tetrachloromethane and TCE; and sediments are contaminated with metals and PCBs. Moreover, sampling of nearby residential wells has revealed elevated levels of arsenic and TCE in some home wells and mercury has been found in sediments downstream of the site. The site is on the NPL. The Debtor is liable to the United States because it arranged for the disposal of hazardous substances at the site. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $836,012 as of September 2002. The

8

Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $8.75 million to complete. The United States' response actions at the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also be jointly and severally liable to the United States pursuant to CERCLA with respect to the environmental contamination at the site.

11.     Zonolite/Grace Site (Ellwood City, Pa): The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Zonolite/Grace Site in Ellwood City, Pennsylvania. From 1953 through 1969, a vermiculite expansion facility was located at the site. There have been releases or threatened releases of a hazardous substance at the site, as surface soil is contaminated with asbestos. The Debtor is liable to the United States because it owned and operated a facility at the site at the time hazardous substances were disposed of at the site. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $50,953.23 as of October 2002. The Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $200,000 to complete. The United States' response actions at the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also be jointly and severally liable to the United States pursuant to CERCLA with respect to the environmental contamination at the site.

12.     Zonolite/Grace Site (Prince George's County, Md) The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Zonolite/Grace Site, in Beltsville, Maryland. From 1966 through the early 1990s, a vermiculite expansion facility was located at the site. There have been releases or threatened releases of a hazardous substance at the site, as soils at the site are contaminated with

9

Case 01-01139-AMC    Doc 7571-2    Filed 01/14/05    Page 14 of 30

asbestos. The Debtor is liable to the United States because it owned and operated a facility at the site at the time hazardous substances were disposed of. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $54,109.41 as of October 2002. The Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $50,000 to complete. The United States' response actions at the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also be jointly and severally liable to the United States pursuant to CERCLA with respect to the environmental contamination at the facility.

13.    Zonolite/Grace Site (New Castle, Pa): The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Zonolite/Grace Site in New Castle, Pennsylvania. From 1968 through 1992, a vermiculite expansion facility was located at the site. There has been a release or threatened release of a hazardous substance at the site, as soils at the site are contaminated with asbestos. The Debtor is liable to the United States because it owned and operated a facility at the site at the time hazardous substances were disposed of at the facility. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $28,764.86 as of October 2002. The Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $500,000 to complete. The United States' response actions at the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also be jointly and severally liable to the United States pursuant to CERCLA with respect to environmental contamination at the site.

14.    Aqua-Tech Environmental Site (Greer, South Carolina): The Debtor is liable to the United States pursuant to CERCLA and an administrative order issued under CERCLA in

10

connection with the cleanup of environmental contamination at the Aqua-Tech Environmental

Site near Greer, South Carolina. A hazardous waste treatment, storage and disposal facility was

located at the site. There have been releases or threatened releases of hazardous substances at the

site, as soil, surface water and groundwater at the site are contaminated with various VOCs and

metals, including cadmium, chromium, cobalt, lead, mercury, nickel, and zinc. The site is on the

NPL. The Debtor is liable to the United States because it arranged for the disposal of hazardous

substances at the site. In 1995, EPA entered into an administrative order with approximately 90

PRPs, including the Debtor, who agreed to perform the RI/FS for the site and to reimburse EPA

for its oversight costs. Work under this order is not yet complete. The Debtor is liable for the

United States' unreimbursed response costs relating to the site of at least $1,625,813 as of

November 2002. The Debtor also is liable for future cleanup obligations at the site, which the

United States estimates will cost at least $12 million to complete. The United States' response

actions at the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also

be jointly and severally liable to the United States pursuant to CERCLA with respect to the

environmental contamination at the site.

     15.    Green River Disposal Site (Maceo, Kentucy): The Debtor is liable to the United

States pursuant to CERCLA and administrative orders issued under CERCLA in connection with

the cleanup of environmental contamination at the Green River Disposal Site near Owensboro,

Kentucky. From 1970 through 1984, an industrial and municipal landfill was located at the site.

There have been releases or threatened releases of hazardous substances at the site, as

groundwater at the site is contaminated with barium, beryllium, cadmium and manganese. The

site is on the NPL. The Debtor is liable to the United States because it arranged for the disposal

of hazardous substances at the site. The Debtor was a party to two administrative orders issued

11

by EPA in connection with this site. In 1990, EPA issued an order requiring four PRPs,

including the Debtor, to initiate cleanup work at the site. Also in 1990, EPA entered into an

administrative order whereby four PRPs, including the Debtor, agreed to perform the RI/FS for

the site. The Debtor is liable for the United States' unreimbursed response costs relating to the

site of at least $453,315 as of March 2002. The Debtor also is liable for future cleanup

obligations at the site, which the United States estimates will cost at least $3.5 million to

complete. The United States' response actions at the site are not inconsistent with the NCP.

Other PRPs along with the Debtor may also be jointly and severally liable to the United States

pursuant to CERCLA with respect to environmental contamination at the site.

      16.    W.R. Grace Site (Wilder, Kentucky): The Debtor is liable to the United States

pursuant to CERCLA in connection with the cleanup of environmental contamination at the

W.R. Grace Site in Wilder, Kentucky. From 1953 until the mid-1990s a vermiculite expansion

facility was located at the site. There have been releases or threatened releases of a hazardous

substance at the site, as soils at the site are contaminated with asbestos. The Debtor is liable to

the United States because it owned and operated a facility on the site at the time hazardous

substances were disposed of at the site. The Debtor is liable for the United States' unreimbursed

response costs relating to the site of at least $28,343.39 as of July 2002. The Debtor also is liable

for future cleanup obligations at the site, which the United States estimates will cost at least $2.1

million to complete. The United States' response actions at the site are not inconsistent with the

NCP. Other PRPs along with the Debtor may also be jointly and severally liable to the United

States pursuant to CERCLA with respect to environmental contamination at the site.

      17.    Reclamation Oil Site (Detroit, Michigan): The Debtor is liable to the United

States pursuant to CERCLA in connection with the cleanup of environmental contamination at

the Reclamation Oil Site in Detroit, Michigan. The site is an abandoned waste treatment, storage

and disposal facility. There have been releases or threatened releases of hazardous substances at

the site, as (among other things) sampling of abandoned storage containers indicated the presence

of VOCs and semi-VOCs and at least one container had high levels of PCBs. The Debtor is

liable to the United States because it arranged for the disposal of hazardous substances at the site.

The Debtor is liable for the United States' unreimbursed response costs relating to the site of at

least $4,469,704 as of June 2002. The Debtor also is liable for any future cleanup obligations at

the site. The United States' response actions at the site are not inconsistent with the NCP. Other

PRPs along with the Debtor may also be jointly and severally liable to the United States pursuant

to CERCLA with respect to environmental contamination at the site.

      18.    Western Minerals Products Site (Minneapolis, Minnesota): The Debtor is liable

to the United States pursuant to CERCLA in connection with the cleanup of environmental

contamination at the Western Minerals Products Site in Minneapolis, Minnesota. From 1946

through 1989, a vermiculite expansion facility was located at the site. The site includes

residential properties near the vermiculite expansion facility at which asbestos-containing

materials were disposed of. There have been releases or threatened releases of a hazardous

substance at the site, as soil and dust at the site are contaminated with asbestos. The Debtor is

liable to the United States because it owned and operated a facility at the site at the time

hazardous substances were disposed of at the site and arranged for the disposal of asbestos-

contaminated material at portions of the site. The Debtor is liable for the United States'

unreimbursed response costs relating to the site of at least $6,907,445.90 as of January 31, 2003.

The Debtor also is liable for future cleanup obligations at the site, which the United States

estimates will cost at least $1 million to complete. The United States' response actions at the site

are not inconsistent with the NCP. Other PRPs along with the Debtor may also be liable to the

United States pursuant to CERCLA with respect to environmental contamination at portions of

the site.

19.    R&H Oil/Tropicana (San Antonio, Texas): The Debtor is liable to the United

States pursuant to CERCLA in connection with the cleanup of environmental contamination at

the R&H Oil/Tropicana Site in San Antonio, Texas. The site was used as a refinery and gasoline

blending facility, and spent oils were reprocessed on a portion of the site. There have been

releases or threatened releases of hazardous substances at the site, as groundwater at the site is

contaminated with benzene, toluene, ethylbenzene, naphthalene, xylenes, arsenic, barium and

zinc. The site has been proposed for inclusion on the NPL. The Debtor is liable to the United

States because it arranged for the disposal of hazardous substances at the site. The Debtor is

liable for the United States' unreimbursed response costs relating to the site of at least

$1,556,174 as of November 2002. The Debtor also is liable for future cleanup obligations at the

site, which the United States estimates will cost at least $11,640,000 to complete. The United

States' response actions at the site are not inconsistent with the NCP. Other PRPs along with the

Debtor may also be jointly and severally liable to the United States pursuant to CERCLA with

respect to environmental contamination at the site.

20.    Intermountain Insulation Site (Salt Lake City, Utah): The Debtor is liable to the

United States pursuant to CERCLA in connection with the cleanup of environmental

contamination at the Intermountain Insulation Site in Salt Lake City, Utah. From 1984 through

1988, a vermiculite expansion plant was located at the site. There have been releases or

threatened releases of a hazardous substance at the site, as soils at the site are contaminated with

14

asbestos. The Debtor is liable to the United States because it was an operator of a facility at the

site at the time hazardous substances were disposed of at such facility. The Debtor is liable for

the United States' unreimbursed response costs relating to the site of at least $5,000 as of January

31, 2003. The Debtor also is liable for any future cleanup obligations at the site. The United

States' response actions at the site are not inconsistent with the NCP. Other PRPs along with the

Debtor may also be jointly and severally liable to the United States pursuant to CERCLA with

respect to environmental contamination at the site.

    21.    Libby Asbestos Site (Libby, Montana): The Debtor is liable to the United States

pursuant to CERCLA, an administrative order issued pursuant to CERCLA, and a judicial

consent decree in connection with the cleanup of environmental contamination at the Libby

Asbestos Site in and near Libby, Montana. The site includes the Debtor's former vermiculite

mine and processing facilities in Libby and nearby properties on which asbestos-containing

materials were disposed. There have been releases or threatened releases of a hazardous

substance at the site, as soil and dust at the site are contaminated with asbestos. The Debtor is

liable to the United States because it owned and operated a facility at the site at the time

hazardous substances were disposed of at the site and arranged for the disposal of asbestos-

containing material at portions of the site. In addition, in May 2000, EPA issued an

administrative order to the Debtor whereby the Debtor was required to perform cleanup of a

former vermiculite processing facility known as the Export Plant. This work is ongoing. The

Debtor is liable for the United States' (through the EPA) unreimbursed response costs relating to

the site of at least $81,979,000 as of January 31, 2003. The Debtor also is liable for the response

costs that the United States (through the EPA) will incur in the future, which the United States

15

estimates will be at least $46 million. Finally, the Debtor is liable for the response costs that the United States (through the Forest Service) will incur in the future for cleanup of Forest Service roads on and near the Debtor's former vermiculite mine, which the United States estimates will be at least $2.2 million, and for the cleanup of asbestos-contaminated Forest Service property along the Kootenai River, which the United States estimates will be several million dollars. Some or all of the future response costs the United States claims on behalf of the Forest Service regarding the Libby Asbestos Site may overlap the future response costs the United States claims on behalf of EPA for the site. The United States' response actions at the site are not inconsistent with the NCP. The Debtor's liability for response costs incurred by the United States (through EPA) at the Libby Asbestos Site, and the amount of such costs, is the subject of a lawsuit styled United States v. W.R. Grace & Company-Conn., et al., Case No. 01-72-M-DWM (D. Mont.).

     22.     Libby Asbestos Site (Access): The Debtor also is liable to the United States for its unlawful failure to provide EPA with requested access to certain Libby Asbestos Site properties in 2000 to effectuate cleanup activities. The United States' penalty claim related to the Debtor's failure to provide access has been resolved in a consent decree in the lawsuit styled United States v. W.R. Grace & Company et al., Case No. 00-167-M-DWM (D. Mont.), in which the Debtor (along with Debtor Kootenai Development Company) agreed that the United States would be allowed a general unsecured claim in the amount of $71,000 and agreed to perform a supplemental environmental project providing $2,750,000 for a Montana non-profit corporation to establish and administer a program to pay for medical care for certain asbestos related illnesses. The consent decree was approved by both the Montana District Court and the Bankruptcy Court.

16

23. <u>Libby Asbestos Site Material Recipients (Nationwide Investigation)</u>: The Debtor also is liable for the Agency for Toxic Substance and Disease Registry's ("ATSDR") investigations and health consultations at facilities throughout the country that received asbestos-contaminated vermiculite from the Libby mine. With respect to investigations and health consultations at sites that are specifically addressed elsewhere in this Proof of Claim, the costs of these activities are included in the unreimbursed response cost amount for those sites. Nationwide investigatory costs and costs of investigations and health consultations at sites that are not included elsewhere in this Proof of Claim total $1,791,164.

24. <u>RAMP Industries Site (Denver, Colorado)</u>: The Debtor is liable to the United States pursuant to CERCLA and a judicial consent decree in connection with the cleanup of environmental contamination at the RAMP Industries Site in Denver, Colorado. The site was formerly the location of a processing and disposal facility for low level radioactive wastes, mixed wastes (a mixture of hazardous and radioactive waste), various items contaminated with radioactive materials, and medical wastes. There have been releases or threatened releases of hazardous substances at the site, as approximately 5,000 fifty-five gallon drums containing (among other things) trichloroethane, tetrachloroethylene, methylene chloride, acetone, ethyl benzene, toluene, and methanol mixed with radioactive isotopes were abandoned at the site. The Debtor is liable to the United States because it arranged for the disposal of hazardous substances at the site. In a federal district court action styled <u>United States v. AAI Corporation,</u> Case No. 00-N-1909 (D. Colo.), the Debtor (and numerous other entities) executed a consent decree with the United States that was entered by the court on April 4, 2001. Under the terms of this consent decree the Debtor agreed and was ordered by the Court to pay $7,203.73 to the United States.

17

The Debtor has not complied with this order and is therefore liable to the United States for this amount.

25.    Robinson Insulation (Minot, North Dakota): The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Robinson Insulation Site. From 1947 through 1993 a vermiculite expansion plant was located at the site. There have been releases or threatened releases of a hazardous substance at the site, as soils at the site are contaminated with asbestos. The Debtor is liable to the United States because it was an operator of a facility at the site at the time hazardous substances were disposed of at the site. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $1,416,000 as of December 2002. The Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $50,000 to complete. The United States' response actions at the site are not inconsistent with the NCP.

26.    Vermiculite Intermountain Site (Salt Lake City, Utah): The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Vermiculite Intermountain Site in Salt Lake City. From 1940 through at least the late 1980s, a vermiculite expansion plant was located at the site. There have been releases or threatened releases of a hazardous substance at the site, as soils at the site are contaminated with asbestos. The Debtor is liable to the United States because it was an operator of a facility at the site at the time hazardous substances were disposed of at such facility. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $5,000 as of January 31, 2003. The Debtor also is liable for future cleanup obligations at the site,

18

which the United States estimates will cost at least $300,000 to complete. The United States' response actions at the site are not inconsistent with the NCP.

27.    Western Mineral Processing Site (Denver, Colorado): The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Western Mineral Processing Site in Denver, Colorado. From 1967 through 1988, a vermiculate expansion plant was located at the site. There have been releases or threatened releases of a hazardous substance at the site, as soils at the site are contaminated with asbestos. The Debtor is liable to the United States because it owned and operated a facility at the site at the time hazardous substances were disposed of at such facility. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $296,863.07 as of December 2002. The Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $650,000 to complete. The United States' response actions at the site are not inconsistent with the NCP.

28.    Casmalia Resources (Santa Barbara, California): The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Casmalia Resources Site in Santa Barbara County, California. The site is a former hazardous waste disposal facility. There have been releases or threatened releases of hazardous substances at the site, as landfills on the site have been found to contain industrial and commercial wastes including sludges, pesticides, solvents, acids, metals, caustics, cyanide and non-liquid polychlorinated biphenyls. The site is on the NPL. The Debtor is liable to the United States because it arranged for the disposal of hazardous substances at the site. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $38

19

million. The Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $265 million to complete. The United States' response actions at the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also be jointly and severally liable to the United States pursuant to CERCLA with respect to the facility.

29.    Harrington Tools Site (Glendale, Ca): The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Harrington Tools Site in Glendale, California. From at least 1966 through 1976, a vermiculite expansion plant was located at the site. There have been releases or threatened releases of a hazardous substance at the site, as soils at the site are contaminated with asbestos. The Debtor is liable to the United States because it owned and operated a facility at the site at the time hazardous substances were disposed of at the site. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $29,825.82 as of October 2002. The Debtor also is liable for any future cleanup obligations at the site. The United States' response actions at the site are not inconsistent with the NCP.

30.    Operating Industries Inc. Site (Monterey Park, California): The Debtor is liable to the United States pursuant to CERCLA and a judicially-approved consent decree in connection with the cleanup of environmental contamination at the Operating Industries Inc. Site in Monterey Park, California. From 1948 through 1984 a landfill was located at the site. There have been releases or threatened releases of hazardous substances at the site, as groundwater, soil, and leachate at the site are contaminated with various organic and inorganic compounds. The Debtor is liable to the United States because it arranged for the disposal of hazardous substances at the site. The major response actions to date at the site have been performed by

20

PRPs under a series of consent decrees and administrative orders, including the Third Partial

Consent Decree in which the Debtor and other PRPs agreed to participate as work defendants for

the site, which was entered by the District Court in 1992 in a case styled <u>United States v.</u>

<u>Chevron Chemical Company, et al.</u>, Case No. CV 91-6520 MRP (Kx) (C.D. Cal.).  The Debtor is

liable for future cleanup obligations relating to the site, including work required under the Third

Partial Consent Decree.  The Debtor also is liable to the United States for all unreimbursed

response costs incurred and to be incurred by the United States in connection with the site

(except to the extent the covenant not to sue in the Third Partial Consent Decree limits the

Debtor's liability for certain of the costs), which the United States currently estimates at $50

million.  The United States' response actions at the site are not inconsistent with the NCP.  Other

PRPs along with the Debtor may also be jointly and severally liable to the United States pursuant

to CERCLA with respect to the facility.

      31.   <u>Vermiculite Northwest Site (Spokane)</u>:  The Debtor is liable to the United States

pursuant to CERCLA in connection with the cleanup of environmental contamination at the

Vermiculite Northwest Site in Spokane, Washington.  From 1951 through 1974, a vermiculite

expansion facility was located at the site.  There have been releases or threatened releases of a

hazardous substance at the site, as soils at the site are contaminated with asbestos.  The Debtor is

liable to the United States because it owned and operated a facility at the site at the time

hazardous substances were disposed of at such facility.  The Debtor is liable for the United

States' unreimbursed response costs relating to the site of at least $77,285.52 as of March 2003.

The Debtor also is liable for any future cleanup obligations at the site.  The United States'

response actions at the site are not inconsistent with the NCP.

32.    <u>Curtis Bay Site (Baltimore, Maryland)</u>: The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Curtis Bay Site in Baltimore, Maryland. From approximately 1957 through 1960, radioactive materials were processed and disposed of at the site. There have been releases or threatened releases of a hazardous substance at the site, as soils at the site are contaminated with radioactive material (including thorium and uranium compounds). The Debtor is liable to the United States because it owned and operated a facility at the site at the time hazardous substances were disposed of at such facility and is the current owner and operator of the site. The Debtor is liable for the United States' (through the Army Corps of Engineers) unreimbursed response costs relating to the site of approximately $6 million as of November 2002. The Debtor also is liable for the response costs that the United States will incur in the future, which the United States estimates will be between $66 million and $96 million. The United States' response actions at the site are not inconsistent with the NCP.

<u><b>INJUNCTIVE OBLIGATIONS UNDER ENVIRONMENTAL STATUTES</b></u>

33.    The Debtor has injunctive obligations to comply with environmental requirements applicable to its facilities. These obligations include but are not limited to obligations to perform environmental assessment and clean up work under the consent decrees and administrative orders issued pursuant to CERCLA and discussed above in connection with the following sites: the Acton Plant Site, located in Acton, Massachusetts, and the Wells G&H Site, located in Woburn, Massachusetts. Further, the Debtor is obligated to perform environmental assessment and remediation work under other consent decrees and administrative orders issued by the EPA under environmental laws and regulations other than CERCLA, including but not limited to the

22

following facilities: the Hatco Chemical facility in Fords, New Jersey; the W.R. Grace thorium facility, located at 4000 North Hawthorne Street in Chattanooga, Tennessee; the W.R. Grace Agricultural Chemical site in Charleston, South Carolina, and all other orders referenced in the Debtor's response to Question 17 (c) in its Statement of Financial Affairs, as amended. The Debtor may have other injunctive obligations to remedy environmental violations and or releases of hazardous materials at its facilities, including but not limited to the violations and release of hazardous materials at sites owned by the Debtor as listed in its response to Questions 17(a) and 17(b) of its Statement of Financial Affairs, amended.

34.    The Debtor also has injunctive obligations under consent decrees and administrative orders issued pursuant to CERCLA to perform environmental assessment and remediation work at certain sites not owned by Debtor including the following sites:  the Libby Asbestos Site, located in Libby, Montana; the Blackburn & Union Privileges Site in Walpole, Massachusetts; the Solvents Recovery Service of New England Site in Southington, Connecticut; the Li Tungsten Site in Glen Cove, New York; the Aqua-Tech Environmental Site in Greer, South Carolina; and the Operating Industries Inc. Site in Monterey Park, California.  The Debtor is required to perform these obligations.

35.    It is the United States' position that it is not required to file a proof of claim with respect to the Debtor's injunctive obligations to comply with work requirements under consent decrees and administrative orders, and to comply with other environmental requirements imposed by law.  The Debtor and any reorganized debtor(s) must comply with the mandatory injunctive requirements of any consent decrees and administrative orders, and must comply with any other environmental requirements imposed by law.

36.    Court ordered and regulatory obligations are mandatory injunctive obligations
with which the Debtor must comply, and for which proofs of claim need not be filed under the
Bankruptcy Code. Nevertheless, this claim is filed in a protective fashion only for the court
ordered and regulatory obligations identified above to protect the United States' rights with
respect to any such obligations of the Debtor. The United States reserves the right to take future
actions to enforce any such obligations of the Debtor. Nothing in this Proof of Claim constitutes
a waiver of any rights of the United States or an election of remedies.

## ADDITIONAL PROOF OF CLAIM TERMS

37.    This Proof of Claim asserts claims for the known liability of the Debtor to the
United States on behalf of EPA, the Forest Service, and the Army Corps of Engineers. The
United States reserves the right to amend this claim to assert subsequently discovered liabilities,
or to update the amounts of the claims set forth above.

38.    The United States has not perfected any security interest on its claims against the
Debtor, although the United States does reserve all rights to the extent it has a trust interest in
insurance proceeds with respect to any matters covered by this Proof of Claim and to the extent
of any rights provided in provisions of administrative orders or consent decrees issued to or with
the Debtor relating to financial assurance. The United States is entitled to administrative expense
priority, and may file an administrative expense application at the appropriate time, for the cost
of post-petition response actions with respect to property of the estate, the cost of complying with
the Debtor's injunctive obligations, and for any post-petition penalties. The remainder of the
United States' claim is filed as a general unsecured claim.

24

39.     This claim is without prejudice to any right under 11 U.S.C. § 553 to set off, against this claim, debts owed (if any) to the Debtor by the United States or any agency or instrumentality of the United States.

40.     No judgments have been rendered on the claims asserted herein, except that there have been administrative orders and consent decrees issued related to certain of the claims as indicated herein.

41.     No payments to the United States have been made by the Debtor on these claims, except as provided herein.

42.     This Proof of Claim includes claims for all prejudgment interest on all response costs incurred pursuant to CERCLA as allowed by law.

43.     References to actions taken by the Debtor include actions taken by predecessors-in-interest of the Debtor.

Dated this 27th day of March, 2003.

Respectfully submitted,


CATHERINE MCCABE
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice


JAMES FREEMAN
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
999-18th Street, North Tower
Denver, Colorado 80202
(303) 312-7376


25

COLM CONNELLY
United States Attorney
District of Delaware

ELLEN SLIGHTS
Assistant United States Attorney
Office of United States Attorney
1201 Market Street
Suite 1100
P.O. Box 2046
Wilmington, DE 19899-2046

OF COUNSEL

ANDREA MADIGAN
Enforcement Attorney
United States Environmental Protection Agency
999 Eighteenth Street, Suite 300
Denver, Colorado 80202

26