**EXHIBIT H**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>W.R. GRACE & CO., et al.,<br><br>Debtor. | Chapter 11<br><br>Case No. 01-1139 (JKF)<br>(Jointly Administered)<br><br>Hearing Date:   February 28, 2005<br>                          12:00 pm EST<br>Objection Date:  February 11, 2005 |

**AFFIDAVIT OF STEPHEN D. SWINDLE IN SUPPORT OF PACIFICORP
AND THE VANCOTT, BAGLEY, CORNWALL & McCARTHY 401(k)
PROFIT SHARING PLAN'S MOTION FOR LEAVE TO FILE
LATE PROOFS OF CLAIM**

The undersigned, Stephen D. Swindle, hereby declares as follows:

1. I am a member and president of Van Cott, Bagley, Cornwall and McCarthy ("Van Cott"). This Affidavit is based upon information known personally by me to be true and correct.

2. Van Cott is a Salt Lake City, Utah based law firm. Van Cott previously established the Van Cott, Bagley, Cornwall & McCarthy 401(k) Profit Sharing Plan (the "Van Cott Plan"). I am a trustee of the Van Cott Plan.

3. In 1979, the Van Cott Plan purchased a parcel of real property located at 333 West 100 South in Salt Lake City (the "Subject Property"). The previous owner and seller was Utah Lumber Company. While it owned the Subject Property, Utah Lumber operated a vermiculite plant through Vermiculite Intermountain.

635:305008v1

4. In 1984, the Van Cott Plan sold a portion of the Subject Property to PacifiCorp doing business as Utah Power & Light. The Van Cott Plan sold the balance of the Subject Property in 1998 to La Quinta Inns.

5. By letter dated June 18, 2004, the Environmental Protection Agency ("EPA") requested information with respect to the Subject Property. Attached hereto as Attachment 1 is a true and correct copy of that letter. Prior to its receipt of the EPA letter, the Van Cott Plan had no indication whatsoever of any possible problem with respect to the Subject Property.

6. By letter dated September 20, 2004, PacifiCorp, which evidently was in the process of undertaking cleanup with respect to portions of the Subject Property, notified the Van Cott Plan of a potential claim against it with respect to the Property. Attached hereto as Attachment 2 is a true and correct copy of that letter.

7. Until it entered an appearance in December of 2004, the Van Cott Plan never received notices in connection with the pending bankruptcy case of WR Grace. Specifically, the Plan did not receive a 2003 notice of an order setting a bar date for the filing of proofs of claim in connection with the Grace case. Some time after it received the aforementioned letter from the EPA, the Van Cott Plan, learning of the pendency of the Grace case, procured copies of certain pleadings in connection with the establishment of a bar date. That, however, was more than a year after the bar date had been established.

635:305008v1

8. Although, the Van Cott Plan has not to date undertaken cleanup with respect to the Subject Property, the aforementioned letters suggest that the Plan may have liability in that regard, the amount of which has not yet been determined.

_____
Stephen D. Swindle

STATE OF UTAH ) 
 : SS.
COUNTY OF SALT LAKE )

SUBSCRIBED AND SWORN to before me this 12th day of January 2005, by STEPHEN D. SWINDLE.

_____
Notary Signature and Seal

STACEY BRAITHWAITE
NOTARY PUBLIC · STATE OF UTAH
50 SOUTH MAIN STE 1600
SALT LAKE CITY, UT 84144
My Comm. Exp. 07/28/2007

635:305008v1

# ATTACHMENT 1



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
REGION VIII
999 18th STREET - SUITE 500
DENVER, COLORADO 80202-2466

JUN 1 8 2004

Ref: 8ENF-RC

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Trustees for the Van Cott Bagley Cornwall & McCarthy Profit Sharing Trust
Van Cott, Bagley, Cornwall & McCarthy
50 South Main St.
Suite 1600
Salt Lake City, UT 84144

      Re:  First Request For Information
            Pursuant To Section 104 of CERCLA
            For the Vermiculite Intermountain Site
            (#08-GA) in Salt Lake City, UT

Dear Trustees:

     The United States Environmental Protection Agency (EPA) is currently investigating and taking a response action(s) relating to the source, extent, and nature of the release or threatened release of hazardous substances, pollutants or contaminants on or around 333 West 100 South, Salt Lake City, Utah (the Site), hereinafter referred to as "the Site". This investigation requires inquiry into the identification, nature and quantity of materials that have been or are generated, treated, stored or disposed of at, or transported to, the Site.

     Pursuant to the authority of Section 104 of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9604, as amended, you are hereby requested to respond to the Information Request set forth in Enclosure 1, attached hereto.

     Compliance with the Information Request set forth in Enclosure 1 is mandatory. Failure to respond fully and truthfully to the Information Request within thirty (30) days of receipt of this letter, or adequately to justify such failure to respond, can result in enforcement action by EPA pursuant to Section 104(e) of CERCLA, as amended. This statute permits EPA to seek the imposition of penalties up to $32,500 for each day of continued noncompliance. Please be further advised that provision of false, fictitious, or fraudulent statements or representations may subject you to criminal penalties under 18 U.S.C. § 1001.

     This Information Request is not subject to the approval requirements of the Paperwork Reduction Act of 1980, 44 U.S.C. §§ 3501, et seq.

*Printed on Recycled Paper*

2

Your response to this request must be accompanied by a notarized certificate that is signed and dated by the person who is authorized by you to respond to this request. The notarized certificate must state that the response submitted to EPA is complete and contains all documents and information responsive to this request that are known to you following a complete and thorough review of all information and sources available to you. A suggested format for the notarized certificate is included with this request as Enclosure 2.

Your response to this Information Request should be mailed to:

U.S. Environmental Protection Agency
Kelcey Land, Enforcement Specialist
Technical Enforcement Program, 8ENF-RC
999 18th Street, Suite 500
Denver, Colorado 80202-2466

Due to the legal ramifications of your failure to respond properly, EPA strongly encourages you to give this matter your immediate attention and to respond to this Information Request within the time specified above. If you have any legal or technical questions relating to this Information Request, you may consult with EPA prior to the time specified above. Please direct questions to Matthew Cohn, Attorney, Legal Enforcement Program at (303) 312-6853.

Thank you for your cooperation in this matter.

Sincerely,

Sharon Kercher, Director
Technical Enforcement Program,
Office of Enforcement, Compliance
and Environmental Justice

Enclosures

cc: Matthew Cohn, ENF-L
    Floyd Nichols, EPR-PAER
    Kelcey Land, ENF-RC

*Printed on Recycled Paper*

# ENCLOSURE 1
## VERMICULITE INTERMOUNTAIN (#GA)
## FIRST INFORMATION REQUEST

1. Please provide a separate narrative response to each and every Question and subpart of a Question set forth in this Information Request.

2. Precede each answer with the number of the Question to which it corresponds.

3. If information or documents not known or not available to you as of the date of submission of a response to this Information Request should later become known or available to you, you must supplement your response to EPA. Moreover, should you find, at any time after the submission of your response, that any portion of the submitted information is false or misrepresents the truth, you must notify EPA of this fact as soon as possible and provide EPA with a corrected response.

4. For each document produced in response to this Information Request indicate on the document, or in some other reasonable manner, the number of the Question to which it corresponds.

5. The information requested herein must be provided even though the Respondent may contend that it includes possibly confidential information or trade secrets. **You may, if you desire, assert a confidentiality claim covering part or all of the information requested, pursuant to Sections 104(e)(7)(E) and (F) of CERCLA, 42 USC 9604(e)(7)(E) and F, Section 3007(b) of RCRA, 42 USC 6927(b), and 40 CFR 2.203(b), by attaching to such information at the time it is submitted, a cover sheet, stamped or typed legend, or other suitable form of notice employing language such as "trade secret," or "proprietary" or "company confidential." Information covered by such a claim will be disclosed by EPA only to the extent, and only by means of the procedures set forth in 40 CFR Part 2, 41 Fed. Reg. 36,902 (1976) (amended at 43 Fed. Reg. 40,000 (1978), and 50 Fed. Reg 51,661 (1985)). If no such claim accompanies the information when it is received by EPA, it may be made available to the public by EPA without further notice to you. You should read the above cited regulations carefully before asserting a business confidentially claim, since certain categories of information are not properly the subject of such a claim.**

*Printed on Recycled Paper*

2

# ENCLOSURE 1
# VERMICULITE INTERMOUNTAIN (#GA)
# FIRST INFORMATION REQUEST
# DEFINITIONS

The following definitions shall apply to the following words as they appear in this Enclosure 1:

1. The term "you" or "Respondent" shall mean the addressee of this Request, the addressee's officers, managers, employees, contractors, trustees, partners, successors, assigns, agents, subsidiaries, affiliates and predecessors-in-interest.

2. The term "person" shall have the same definition as in Section 101(21) of CERCLA: an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body.

3. The terms "the Site" or "the Facility" for purposes of this Information Request shall, include the Vermiculite Intermountain site at or near 333 West 100 South, Salt Lake City, Utah.

4. The term " hazardous substance" shall have the same definition as that contained in Section 101(14) of CERCLA and includes any mixtures of such hazardous substances with any other substances, including petroleum products.

5. The term "pollutant or contaminant" shall have the same definition as that contained in Section 101(33) of CERCLA, and includes any mixtures of such pollutants and contaminants with any other substances, including petroleum products.

6. The term "hazardous waste" shall have the same definition as that contained in Section 1004(5) of RCRA.

7. The term "solid waste" shall have the same definition as that contained in Section 1004 (27) of RCRA.

8. The term "materials" shall mean all substances that have been generated, treated, stored, or disposed of or otherwise handled at or transported to the Site, including but not limited to all hazardous substances, pollutants and contaminants, hazardous wastes and solid wastes, as defined above.

9. The term "hazardous materials" shall mean all hazardous substances, pollutants or contaminants, and hazardous wastes, as defined above.

*Printed on Recycled Paper*

3

10. The term "identify" means, with respect to a natural person, to set forth the person's name, present or last known business address and business telephone number, present or last known home address and home telephone number, and present or last known job title, position or business.

11. The term "identify" means, with respect to a corporation, partnership, business trust or other association or business entity (including a sole proprietorship) to set forth its full name, address, legal form (e.g., corporation, partnership, etc.), organization, if any and a brief description of its business.

12. The term "identify" means, with respect to a document, to provide its customary business description, its date, its number if any (invoice or purchase order number), and the substance or subject matter.

13. The term "release" has the same definition as that contained in Section 101(22) of CERCLA, 42 U.S.C. 9601 (22), and includes any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment, including the abandonment or discharging of barrels, containers, and other closed receptacles containing any hazardous substances or pollutant or contaminant.

14. The term "document" and "documents" shall mean any writing, recording or stored information including, but not limited to, hard copy and computer document files.

15. The term "arrangement" means every separate contract or other agreement between two or more persons.

16. The term "transaction" or "transact" mean any sale, transfer, giving, delivery, change in ownership, or change in possession.

17. The term "property interest" means any interest in property including an easement or right of way, any interest in the rental of property, any interest in a corporation that owns or rents or owned and rented property, and any interest as either the trustee or beneficiary or trust that owns or rents property.

18. All terms not defined herein shall have their ordinary meaning, unless such terms are defined in CERCLA, 42 U.S.C. §§ 9601 et seq.; RCRA, 42 U.S.C. §§ 6901 et seq.; or their regulations found at 40 CFR Part 300 or 40 CFR Part 260 et seq. respectively, in which case the statutory or regulatory definitions shall apply.

Printed on Recycled Paper

4

# ENCLOSURE 1
## VERMICULITE INTERMOUNTAIN (#GA)
## FIRST INFORMATION REQUEST
## QUESTIONS

1. Identify the person(s) answering these Questions on behalf of Respondent.

2. For each and every Question contained herein, identify all persons consulted in the preparation of the answer.

3. For each and every Question contained herein, identify documents consulted, examined, or referred to in the preparation of the answer or that contain information responsive to the Question and provide accurate copies of all such documents.

4. Provide a list of all relevant property and casualty insurance policies (e.g., Comprehensive General Liability, Environmental Impairment Liability, Director and Officers policies) for the period of 1900 through present. Specify the insurer, policy, effective dates, and state per occurrence policy limits for each policy. Copies of policies may be provided in lieu of a narrative response.

5. Provide copies of financial statements, reports, or projections prepared by, for or on behalf of the Respondent for the past five years, whether audited or unaudited, including, but not limited to, all those filed with the Securities and Exchange Commission, State agencies, and all financial institutions such as banks.

6. Identify all persons who may be responsible for the potential liabilities of Respondent arising from or relating to the release or threatened release of hazardous substances at the Site, including but not limited to predecessors and successors.

7. State the date that you acquired the property/properties in question and identify the person(s) from whom you acquired the property. Please furnish copies of deeds, leases, or other legal documents by which you acquired each property interest.

8. If you shared ownership in any parcel of property at the Site with another person, provide the name, address, and telephone number of that person and describe the nature of their interest in the property.

9. Prior to acquiring the property that you own at the Site, did you conduct or have conducted on your behalf, any physical inspection of the property, such as a Phase I or Phase II audit in accordance with ASTM standards? If so, describe that inspection and provide copies of any and all documents that report the findings of such inspection.

Printed on Recycled Paper

5

10. Describe what you knew about environmental conditions on the property at the time of your purchase, and what you knew about previous uses of the property at the time you acquired it.

11. For all property interests that you identified in the previous question that you have subsequently sold, transferred, or otherwise conveyed:

    a.    Provide the date of each such sale, transfer, or conveyance.

    b.    Describe the property sold.

    c.    Identify the person who acquired the property.

    d.    Provide a copy of any and all documents including deeds and contracts that describe the terms and conditions of the transactions.

12. Was any business activity conducted on the property while you owned it? If so, describe the nature of that business activity, identify the persons that conducted the activity, and state when such activities occurred.

13. Were any changes made to the property while you owned it? Changes for purposes of this question include building structures, walls, access roads, grading, recontouring, landscaping, removing structures, removing rock or soils, adding fill, or similar actions? If yes, please describe the changes made.

14. Describe all steps that you have taken to eliminate or reduce the risks associated with human exposure to hazardous substances on your property.

15. Did you lease any of the property you own at the Site to another person? If so, identify that person, describe their use of the property, and provide the time period covered by the lease. Provide copies of documents, including the leases in question, that identify the parties to the leases and describe the terms and conditions of those leases.

16. Describe how the facilities associated with the vermiculite exfoliation and/or processing facility at the Site (including buildings, flues, and stacks) were demolished.

17. When were those facilities demolished?

18. Identify the persons responsible for the demolition including any and all contractors hired to perform the work and those persons who made arrangements for the demolition.

19. Describe and provide documents describing the results of any studies conducted related to environmental conditions in and around those facilities before they were demolished. The includes any efforts to detect the presence of asbestos at or in those facilities.

*Printed on Recycled Paper*

6

20. Describe all steps taken to prevent the release of hazardous substances during the demolition of those facilities.

21. Describe any air quality monitoring that was conducted at the Site during the demolition of those facilities and provide documents that show the results of that monitoring.

22. Describe how the debris resulting from the demolition was disposed of and identify the location of that disposal.

23. Does the Van Cott, Bagley, Cornwall and McCarthy Profit Sharing Trust that owned property at the Site continue to exist? If yes, identify the current trustees of that trust.

24. If the Van Cott, Bagley, Cornwall and McCarthy Profit Sharing Trust that owned property at the Site no longer exists, describe the circumstances of its termination, describe how the assets of the trust were distributed, and identify any successor trust or entity that was formed to take its place.

25. If you have reason to believe that there may be persons able to provide a more detailed or complete response to any Question contained herein or who may be able to provide additional responsive documents, identify such persons and the additional information or documents that they may have.

Printed on Recycled Paper

# ENCLOSURE 2
## VERMICULITE INTERMOUNTAIN (#GA)
## FIRST INFORMATION REQUEST

### NOTARIZED CERTIFICATE

I, _____, having been duly sworn and being of legal age, hereby state:

1.   I am the person authorized by the Van Cott Bagley Cornwall & McCarthy Profit Sharing Trust to respond to the Environmental Protection Agency's (EPA's) request for information concerning the Vermiculite Intermountain Site near Salt Lake City, Utah.

2.   I have made a complete and thorough review of all documents, information, and sources relevant to the request.

3.   I hereby certify that the attached response to EPA's request is complete and contains all information and documents responsive to the request.

_____
(Signature) (Name, Title)

(SEAL)

Subscribed and sworn to me
this____ day of_____, _____

_____
Notary Public

My Commission Expires_____
My address is_____
_____

*Printed on Recycled Paper*

# ATTACHMENT 2



**PACIFICORP**
**LEGAL DEPARTMENT**

MICHAEL G. JENKINS
Assistant General Counsel
801-220-2233
801-220-3299 (fax)
michael.jenkins@pacifiocorp.com

One Utah Center, 201 South Main, Suite 2200, Salt Lake City, Utah 84140

VIA E-MAIL ONLY

September 20, 2004

Brian W. Burnett
Callister Nebeker & McCullough
Gateway Tower East, Suite 900
10 E. South Temple
Salt Lake City, Utah 84133

Re:    Third West Substation

Dear Brian,

    As I mentioned to you when you picked up a copy of the site history report for the Third West Substation which PacifiCorp has made available to you for copying, I am sending along the attached report briefly describing the status of cleanup activities at PacifiCorp's Third West Substation property.

    As we discussed, the area where the pure vermiculite has been discovered is the location of the historic vermiculite processing facility and is part of the property that your client, the Van Cott, Bagley, Cornwall and McCarthy Profit Sharing Trust (Trust), sold to PacifiCorp on May 9, 1984. At this point, our working assumption is that your client was an owner at the time the vermiculite was released into the environment and will bear responsibility for cleanup costs.

    Also, as we discussed, we still are searching for records in regard to the demolition of the vermiculite processing facility. We also continue to look for information about the fire that reportedly destroyed many of the historic buildings on the block sometime in the mid 1980s, as well as information on the removal of the fire debris and remaining buildings. These records could have some impact on cleanup cost liability as well. Any records you are able to locate in that regard will be appreciated.

Brian W. Burnett
September 20, 2004
Page 2


      As is usually the case with projects like this, our understanding of the site and the site history continues to grow as cleanup activities progress. Although we have done quite a bit of historical research into past activities in this area, we are certainly willing to consider any additional information your clients may have that bears on liability for cleanup costs.

      Please let me know of any questions or concerns you may have.


Sincerely,

Michael G. Jenkins

cc:   David Wilson
       Matt Cohn, EPA

Attach.

Brian W. Burnett
September 20, 2004
Page 3

3rd West Substation
Control House Clean-up and
Excavation Update 9/17/04

<u>Control House</u>

Clean-up of the control house, both the basement storage area and the upstairs control room, is complete. Both areas passed EPA's aggressive air monitoring for clearance. The basement windows and door have been sealed, and the basement is not currently being used. The control room windows remained sealed, and the room itself is maintained under positive pressure. Make-up air is passed through HEPA filters. The crawl space under the control room remains to be cleaned. This area contains LA-laden dust 6 to 8 inches thick.

<u>Excavation</u>

The narrow section of the property at the extreme north has been excavated a second time. Clearance samples were taken after excavating 6 vertical inches in this area. The area did not pass clearance. An additional 6-plus inches has been excavated. A second set of clearance samples were taken from this area today.

Excavation in the main open area of the property, east of the installed electrical equipment, revealed pockets and veins of pure vermiculite. Excavation of these pockets and veins led to a large area of pure vermiculite, beginning at a depth of about 4 to 6 feet and extending to about 10 feet below ground surface. This area, in the southwest quadrant of the main open area, is approximately 100 feet, north to south, by 70 feet, east to west. (See attached photograph.) The excavation has uncovered concrete walls and foundations, a concrete floor at a depth of 10 feet, and large concrete pedestals that were apparently part of a public works facility, circa 1900. The vermiculite was tested and found to contain LA. Due to the amount and configuration of the concrete, excavation has been difficult.

The extreme southern edge of the main open area, from the southern property line to about 30 feet north, has been found to be contaminated only near the surface. This area is being excavated to a depth of 1 foot, and will be ready for clearance sampling Monday, 9/20/04.

Excavation has started in the UTA substation, the triangular area immediately south of the Artistic Printing building. Moderate to heavy levels of vermiculite contamination have been found near the building, along the old rail spur. Wood railroad ties have been found at a depth of about 1 foot. Vermiculite has been found surrounding the wood ties to a depth of about 2 feet.

Excavation has not yet begun in the energized areas of the substation.

Brian W. Burnett
September 20, 2004
Page 4


3rd West Substation 9/16/04

This shows the main open area, the eastern-most portion of the property, looking south from outside the fence at the northern end. The length of the concrete wall on the right is approximately 80 feet; its height is 10 feet. The length of the pit is approximately 100 feet, the width is about 70 feet at the widest point. The concrete pedestals are partially exposed just to the left of the concrete wall. Prior beginning the excavation, only the top of the concrete wall was exposed.