# EXHIBIT I

# W.R. GRACE & CO.
# ASBESTOS PROPERTY DAMAGE
# PROOF OF CLAIM FORM

*The United States Bankruptcy Court for the District of Delaware*
*In re: W.R. Grace & Co., et al., Debtors, Case No. 01-01139 (JKF)*
*(Jointly Administered)*

## SUBMIT COMPLETED CLAIMS TO:

**Claims Processing Agent**
**Re: W.R. Grace & Co. Bankruptcy**
**PO Box 1620**
**Faribault, MN 55021-1620**

For a complete list of the Debtors in this case, please see "The Debtors" section of the General Instructions for Completing Proof of Claim Forms. The Debtors in this case are collectively referred to in this document as "Grace."

If you have a current claim against Grace for property damage allegedly resulting from asbestos from a Grace product (other than Zonolite Attic Insulation), THIS ASBESTOS PROPERTY DAMAGE PROOF OF CLAIM FORM MUST BE RECEIVED ON OR BEFORE 4:00 P.M. EASTERN TIME ON MARCH 31, 2003, or you will be forever barred from asserting or receiving payment for your claim.

**INSTRUCTIONS FOR FILING THE W.R. GRACE & CO. ASBESTOS PROPERTY DAMAGE PROOF OF CLAIM FORM**

## WHO SHOULD USE THIS ASBESTOS PROPERTY DAMAGE PROOF OF CLAIM FORM

1. This Asbestos Damage Proof of Claim Form (referred to in this document as the "Form") applies only to <u>current</u> claims made against Grace by or on behalf of parties who are alleging property damage with respect to asbestos in real property owned by the party (such person is referred to in this document as the "claiming party") from a Grace asbestos-containing product or as a result of one of Grace's vermiculite mining, milling, or processing facilities.

2. The Bar Date does not apply to Asbestos Personal Injury Claims, Settled Asbestos Claims or Zonolite Attic Insulation Claims. Those claims will be subject to a separate claim submission process and should not be filed at this time.

3. This form should not be used for Medical Monitoring Claims or Non-Asbestos Claims. Instead, separate specialized proof of claim forms for these claims should be completed.

4. If you are alleging current claims against Grace with respect to asbestos in more than one (1) real property, the claiming party should complete an Asbestos Property Damage Proof of Claim Form for <u>each</u> property. You may request additional forms by calling the Claims Processing Agent at 1-800-432-1909.

## GENERAL INSTRUCTIONS

1. This form must be signed by the claimant or authorized agent of the claimant. THIS FORM MUST BE RECEIVED ON OR BEFORE 4:00 PM EASTERN TIME ON MARCH 31, 2003, or you forever will be precluded from asserting your claim(s) against or receiving payment from Grace. Return your completed form to the Claims Processing Agent, Re: W.R. Grace & Co. Bankruptcy, P.O. Box 1620, Faribault, MN 55021-1620.
   If you are returning this form by mail, allow sufficient time so that this form is received on or before March 31, 2003. Forms that are postmarked before March 31, 2003 but received after March 31, 2003 will not be accepted. Only original forms will be accepted for filing. Forms transmitted by facsimile will not be accepted for filing.

2. If you cannot fit all information in any particular section or page, please make a copy of that page before filling it out and attach as many additional pages as needed.

3. If you are unable to provide any of the information required by the proof of claim form, please so specify, as well as provide a short statement describing why such information is unavailable. If you are in the process of obtaining such information at the time you file your proof of claim, please so advise and indicate that the same shall be provided when obtained.

4. This form must be filled out completely using BLACK or BLUE ink or may be typewritten.
   • Please print clearly using capital letters only.     • Do not use a felt tip pen.
   • Skip a box between words.     • Do not bend or fold the pages of the form.
   • Do not write outside of the boxes or blocks.

5. Because this form will be read by a machine, please print characters using the examples below. For optimum accuracy, please print in capital letters and avoid contact with the edge of the character boxes.

6. Mark check boxes with an "X" (example at right).  ☒     <u>NAME HERE</u>

7. Be <u>accurate</u> and <u>truthful</u>. A Proof of Claim Form is an official court document that may be used as evidence in any legal proceeding regarding your claim. The penalty for presenting a fraudulent claim is a fine of up to $500,000 or imprisonment for up to five years or both. 18 U.S.C. §§ 152 & 3571.

8. Make a copy of your completed Form to keep for your records. <u>Send</u> only <u>original</u> Forms to the Claims Processing Agent at the following address: Claims Processing Agent, Re: W.R. Grace & Co. Bankruptcy
   PO Box 1620
   Faribault, MN 55021-1620.

9. You will receive written notification of the proof of claim number assigned to this claim once it has been processed.

## PART 1: CLAIMING PARTY INFORMATION

NAME:

| V | A | N | C | O | T | T | | B | A | G | L | E | Y | | 4 | 0 | 1 | K | | P | R | O | F | I | T | | S | H | A | R | I | N | G | | P | L | A | N | | | | |

*Name of individual claimant (first, middle and last name) or business claimant*

SOCIAL SECURITY NUMBER (Individual Claimants):          F.E.I.N. (Business Claimants)

*(last four digits of SSN)*

| 8 | 7 | - | 6 | 1 | 3 | 7 | 2 | 6 | 1 |

Other names by which claiming party has been known (such as maiden name or married name):

*First* ... *MI* ... *Last*

*First* ... *MI* ... *Last*

GENDER: ☐ MALE   ☐ FEMALE

Mailing Address: ■

| C | / | O | | V | A | N | C | O | T | T | | B | A | G | L | E | Y | | C | O | R | N | W | A | L | L | | & | | M | c | C | A | R | T | H | Y | , | | L | L | P |

*Street Address*

| 5 | 0 | | S | O | U | T | H | | M | A | I | N | | S | T | R | E | E | T | | S | U | I | T | E | | 1 | 6 | 0 | 0 |

*City*

State (Province): | U | T |   Zip Code (Postal Code): | 8 | 4 | 1 | 4 | 4 |

| S | A | L | T | | L | A | K | E | | C | I | T | Y |

*Country*

## PART 2: ATTORNEY INFORMATION

The claiming party's attorney, if any (You do not need an attorney to file this form):

Law Firm Name:

| V | A | N | C | O | T | T | | B | A | G | L | E | Y | | C | O | R | N | W | A | L | L | | & | | M | c | C | A | R | T | H | Y |

Name of Attorney:

| R | O | B | E | R | T |     *MI*     | N | E | L | S | O | N |

*First* ... *Last*

Mailing Address:

| 5 | 0 | | S | o | u | t | h | | M | a | i | n | | S | t | r | e | e | t | | S | u | i | t | e | | 1 | 6 | 0 | 0 |

*Street Address*

| S | a | l | t | | L | a | k | e | | C | i | t | y |

*City*

State (Province): | U | T |   Zip Code (Postal Code): | 8 | 4 | 1 | 4 | 4 |

Telephone:

( | 8 | 0 | 1 | ) | 5 | 3 | 2 | - | 3 | 3 | 3 | 3 | ■

*Area Code*

9276101

SERIAL #

## PART 3: PROPERTY INFORMATION

### A. Real Property For Which A Claim Is Being Asserted

1. What is the address of the real property for which a claim is being asserted (referred to herein as "the property")?

   `333 West 100 South`
   *Street Address*

   `Salt Lake City`                  `UT`      `84101`
   *City*                        *State (Province)*   *Zip Code (Postal Code)*

   `USA`
   *Country*

2. Are you completing an Asbestos Property Damage Proof of Claim Form for any other real property other than the one listed at "1" above?

   ☐ Yes   ■ No   ■

3. Do you currently own the property listed in Question 1, above?

   ☐ Yes   ■ No

4. When did you purchase the property?   `08` - `31` - `1979`
   Month   Day   Year

5. What is the property used for (check all that apply)
   - ☐ Owner occupied residence
   - ☐ Residential rental
   - ☐ Commercial
   - ☐ Industrial   Specify: `Vermiculite plant*`
   - ☐ Other   Specify: `                    `

   *Vermiculite plant, operated by previous owner, Vermiculite Intermountain, a subsidiary of Utah Lumber Company, housed in corrugated metal structure.  In addition, site improved with building now occupied by

6. How many floors does the property have?  `    `  Utah Power & Light ("UPL") and by several smaller buildings along 300 West and away from vermiculite operation.

7. What is the approximate square footage of the property?  `          `

8. When was the property built?
   - ■ Before 1969
   - ☐ 1969 - 1973
   - ☐ After 1973

9. What is the structural support of the property?
   - ☐ Wood frame
   - ☐ Structural concrete   ■
   - ☐ Brick
   - ☐ Steel beam/girder
   - ☐ Other   Specify: `                              `

10. Have you or has someone on your behalf completed any interior renovations on the property which affected any asbestos on the property?

    ☐ Yes   ■ No

    9276102                           SERIAL #⌐

## A. Real Property For Which A Claim Is Being Asserted (continued)

If yes, please specify the dates and description of such renovations.

| Year | Description |
| --- | --- |
| ☐☐☐☐ | [                    ] |
| ☐☐☐☐ | [                    ] |
| ☐☐☐☐ | [                    ] |

11. To the best of your knowledge, have any other interior renovations been completed on the property during any other period of time which affected any asbestos on the property?

☐ Yes    ■ No

If yes, please specify the dates and descriptions of such renovations.

| Year | Description |
| --- | --- |
| ☐☐☐☐ | [                    ] |
| ☐☐☐☐ | [                    ] |
| ☐☐☐☐ | [                    ] |

## B. Claim Category

12. For which category are you making a claim on the property?

☐ Category 1:  Allegation with respect to asbestos from a Grace product in the property

■ Category 2:  Allegation with respect to one of Grace's vermiculite mining, milling or processing operations

If you checked Category 1 above, please complete section C.
If you checked Category 2 above, please complete section D.

## C. Category 1 Claim: Allegation With Respect To Asbestos From A Grace Product In The Property

13. For what alleged asbestos-containing product(s) are you making a claim?

☐ Monokote-3 fireproofing insulation

☐ Other    Specify: [                    ]

(For a list of the brand names under which Grace manufactured products that may have contained commercially added asbestos, see Exhibit 2 to the Claims Bar Date Notice provided with this Proof of Claim Form.)

14. When did you or someone on your behalf install the asbestos containing product(s) in the property?

| Year | |
| --- | --- |
| ☐☐☐☐ | ☐ I did not install the product(s) |

15. If you or someone on your behalf did not install the asbestos containing product(s), to the best of your knowledge, when was/were the product(s) installed?

| Year | |
| --- | --- |
| ☐☐☐☐ | ☐ Don't know. |

9276103

SERIAL #

16. Do you have documentation relating to the purchase and/or installation of the product in the property?

☐ Yes      ☐ No

If Yes, attach all such documents. If the documents are too voluminous to attach, attach a summary of the documents indicating the name of each document, date of each document, a brief description of the document, the location of the document, and who has possession and control of the document.

If you provide a summary of documents rather than the documents themselves, you are required to consent to the production and release of those documents to Grace upon Grace's further request.

17. If you do not have any such documents, explain why not and indicate who may have possession or control of such documents with respect to the property.

18. When did you first know of the presence of asbestos in the property of the Grace product for which you are making this claim?

☐☐☐☐
**Year**

Please attach all documents relating or referring to the presence of asbestos in the property for which you are making this claim. If the documents are too voluminous to attach, attach a summary of the documents indicating the name of each document, date of each document, a brief description of the document, the location of the document, and who has possession and control of the document.

If you provide a summary of documents rather than the documents themselves, you are required to consent to the production and release of those documents to Grace upon Grace's further request.

19. How did you first learn of the presence of asbestos in the property of the Grace product for which you are making this claim?

20. When did you first learn that the Grace product for which you are making this claim contained asbestos?

☐☐☐☐
**Year**

21. How did you first learn that the Grace product for which you are making the claim contained asbestos?

22. Have you or someone on your behalf made an effort to remove, contain and/or abate the Grace product for which you are making this claim?

☐ Yes      ☐ No

If Yes, attach all documents relating or referring to such efforts. If the documents are too voluminous to attach, attach a summary of the documents indicating the name of each document, date of each document, a brief description of the document, the location of the document, and who has possession and control of the document.

If you provide a summary of documents rather than the documents themselves, you are required to consent to the production and release of those documents to Grace upon Grace's further request.

23. If you do not have any such documents, explain why not and indicate who may have possession and control of such documents with respect to the property.

24. If you or someone on your behalf did not make an effort to remove, contain and/or abate the Grace product(s) for which you are making a claim, to the best of your knowledge, did anyone else make such an effort?

☐ Yes      ☐ No

**9276104**

**SERIAL #⌋**

25. If you responded Yes to question 22. or 24. and you have not supplied documents, please specify the dates and descriptions of any such efforts.

| | | | | Description | |
|---|---|---|---|---|---|
Year

Description

Year

Description

Year

26. Have you or anyone on your behalf ever conducted any testing or sampling for the presence of asbestos or other particulates in the property?

☐ Yes        ☐ No        IF YES, Attach All Documents Related To Any Testing Of This Property

27. If you responded Yes to question 26., but you have not provided documents, indicate who may have possession or control of such testing documents or where such documents may be located.

28. If you or someone on your behalf did not conduct any testing or sampling for the presence of asbestos or other particulates on the property, to the best of your knowledge, did anyone else conduct such testing or sampling with respect to the property?

☐ Yes        ☐ No

29. If you responded Yes to question 26. or 28. and you have not supplied related documents, please describe when and by whom and the type of testing and/or sampling (e.g. air, bulk and dust sampling).

Year        Company/Individual
            Type of testing:

Year        Company/Individual
            Type of testing:

Year        Company/Individual
            Type of testing:

30. Has the Grace product or products for which you are making this claim ever been modified and/or disturbed?

☐ Yes        ☐ No

31. If yes, specify when and in what manner the Grace product or products was modified and/or disturbed?

Year        Description

Year        Description

Year        Description

9276105

SERIAL #⌐

**D. Category 2 Claim: Allegation With Respect To One of Grace's Vermiculite Mining, Milling Or Processing Operations**

32. What is the business address or location of the Grace operation which has led to your claim?

| W | R |  | G | R | A | C | E |  | & |  | C | O |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |

*Business Name*

*Street Address*

| L | I | B | B | Y |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |

*City*

| M | T |

*State (Province)*

*Zip Code (Postal Code)*

| U | S | A |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |

*Country*

33. If your claim relates to a personal residence, does (or did) anyone living in the household work for Grace?

☐ Yes    ☐ No

34. If yes, specify the following for each such individual:

| **Name of Individual Working at Grace Operation** | **Name of Individual Working at Grace Operation** |
|---|---|
| **Date of Birth** ☐☐ – ☐☐ – ☐☐☐☐ *Month  Day  Year* | **Date of Birth** ☐☐ – ☐☐ – ☐☐☐☐ *Month  Day  Year* |
| **Occupation(s) of Individual** | **Occupation(s) of Individual** |
| **Dates Worked at Operation** From: ☐☐☐☐ To: ☐☐☐☐ *Year          Year* | **Dates Worked at Operation** From: ☐☐☐☐ To: ☐☐☐☐ *Year          Year* |
| **Name of Individual Working at Grace Operation** | **Name of Individual Working at Grace Operation** |
| **Date of Birth** ☐☐ – ☐☐ – ☐☐☐☐ *Month  Day  Year* | **Date of Birth** ☐☐ – ☐☐ – ☐☐☐☐ *Month  Day  Year* |
| **Occupation(s) of Individual** | **Occupation(s) of Individual** |
| **Dates Worked at Operation** From: ☐☐☐☐ To: ☐☐☐☐ *Year          Year* | **Dates Worked at Operation** From: ☐☐☐☐ To: ☐☐☐☐ *Year          Year* |

35. When did you first know of the presence of asbestos on your property? ☐☐☐☐
*Year*

9276106

SERIAL #_

36. How did you first learn of the presence of asbestos on your property?

> Letter from EPA dated June 18, 2004 indicating that EPA considered
> claimant to be involved with respect to Salt Lake site and requesting
> pertinent ownership information (attachment 1)

Attach all documents relating or referring to the presence of asbestos on the property. If the documents are too voluminous to attach, attach a summary of the documents indicating the name of each document, date of each document, a brief description of the document, the location of the document, and who has possession or control of the document.

If you provide a summary of the documents rather than the documents themselves, you are required to consent to the production and release of those documents to Grace upon Grace's further request.

37. If you do not have any documents relating or referring to the presence of asbestos on the property, explain why not and indicate who may have possession or control of any such documents with respect to the property.

38. Have you or anyone on your behalf made an effort to remove, contain and/or abate the asbestos on your property?

☐ Yes    ■ No

If Yes, attach all documents relating or referring to such efforts. If the documents are too voluminous to attach, attach a summary of the documents indicating the name of each document, date of each document, a brief description of the document, the location of the document, and who has possession or control of the document.

If you provide a summary of the documents rather than the documents themselves, you are required to consent to the production and release of those documents to Grace upon Grace's further request.

39. If you do not have any documents relating or referring to the removal, containment and/or abatement of the asbestos on your property, explain why not and indicate who may have possession and control of such documents with respect to the property.

40. If you or someone on your behalf did not make an effort to remove, contain and/or abate the asbestos on your property, to the best of your knowledge, did anyone else make such an effort?

■ Yes    ☐ No

9276107

SERIAL #

41. If you responded Yes to question 38. or question 40. and you have not supplied related documents, please specify the dates and descriptions of any such efforts.

| 2 0 0 4 | Description | Partial remediation undertaken by Utah Power & Light, a subsidiary |
| Year | | of PacifiCorp.  By letter dated September 20, 2004 (attachment 2), |
| | Description | PacifiCorp has asserted a potential claim against claimant.  In |
| Year | | addition, the EPA has conducted testings and removals at the subject |
| | Description | site.  As remediation work has not yet been completed, the precise |
| Year | | amount of the claim with respect to the subject site is still not |
| | | known.  Claimant will amend this claim to state said amount when it is determined. |

42. Have you or anyone on your behalf conducted any other testing or sampling for the presence of asbestos on your property?

☐ Yes    ■ No

If Yes, attach all documents relating or referring to such efforts. If the documents are too voluminous to attach, attach a summary of the documents indicating the name of each document, date of each document, a brief description of the document, the location of the document, and who has possession or control of the document.

If you provide a summary of the documents rather than the documents themselves, you are required to consent to the production and release of those documents to Grace upon Grace's further request.

43. If you do not have any documents relating or referring to any other such testing or sampling for the presence of asbestos on your property, explain why not and indicate who may have possession or control of such documents with respect to the property.

Applicable documents, particularly remediation plans, are voluminous and are
in possession of EPA or PacifiCorp.  PacifiCorp documents may be requested
from PacifiCorp counsel, Steven McCardell, LeBoeuf, Lamb, Greene & MacRae,
136 South Main, Salt Lake City, Utah  84101.

44. If you or someone on your behalf did not conduct any other testing or sampling for the presence of asbestos on your property, to the best of your knowledge, did anyone else conduct such testing or sampling?

■ Yes    ☐ No

45. If you responded Yes to question 42. or question 44. and you have not supplied related documents, please specify the dates and descriptions of any such efforts.

| 2 0 0 4 | Description | Work conducted by PacifiCorp and EPA (see above) |
| Year | | |
| | Description | |
| Year | | |
| | Description | |
| Year | | |

46. Were you aware of the presence of asbestos on your property when you purchased your property?

☐ Yes    ■ No

47. If you have sold the property, were you aware of the presence of asbestos on your property when you sold your property?

☐ Yes    ■ No    ☐ Not Applicable, have not sold the property

## PART 4: ASBESTOS LITIGATION AND CLAIMS

### A. INTRODUCTION

1. Has any asbestos-related property damage lawsuit or claim been filed against Grace on behalf of this claiming party relating to the property for which you are making this claim?

   ■ No
   ☐ Yes – lawsuit
   ☐ Yes – non-lawsuit claim (other than a workers' compensation claim)

2. Has any asbestos-related property damage lawsuit or claim been filed against any other party on behalf of this claiming party relating to the property for which you are making this claim?

   ■ No
   ☐ Yes – lawsuit
   ☐ Yes – non-lawsuit claim (other than a workers' compensation claim)

   *If an asbestos-related property damage lawsuit has been filed by or on behalf of this claiming party relating to the property for which you are making a claim, complete Section B. below.*

   *If an asbestos-related property damage non-lawsuit claim has been made by or on behalf of this claiming party relating to the property for which you are making a claim, complete Section C. on the following page.*

### B. LAWSUITS

1. Please provide the following information about each asbestos-related property damage lawsuit which has been filed relating to the property for which you are making this claim or attach a copy of the face page of each complaint filed.

   a. Caption

   b. Court where suit **originally filed**:
      *County/State*          Docket No.:

   c. Date filed:
      *Month   Day   Year*

   a. Caption

   b. Court where suit **originally filed**:
      *County/State*          Docket No.:

   c. Date filed:
      *Month   Day   Year*

   a. Caption

   b. Court where suit **originally filed**:
      *County/State*          Docket No.:

   c. Date filed:
      *Month   Day   Year*

(Attach additional pages if necessary.)

9276109

SERIAL #

## C. NON-LAWSUIT CLAIMS

1. If the claiming party has made any claims relating to the property for which you are making a claim (including administrative claims) against anyone, that was not filed with a court of law, please provide the following information for each claim:

   a. Description of claim:

   b. Date submitted: ☐☐ – ☐☐ – ☐☐☐☐  ■
   *Month   Day   Year*

   c. Name of entity to whom claim was submitted:
   ☐ Grace
   ☐ Other
   *Name of Entity*

   ---

   a. Description of claim:

   b. Date submitted: ☐☐ – ☐☐ – ☐☐☐☐
   *Month   Day   Year*

   c. Name of entity to whom claim was submitted:              ■
   ☐ Grace
   ☐ Other
   *Name of Entity*

   ---

   a. Description of claim:

   b. Date submitted: ☐☐ – ☐☐ – ☐☐☐☐
   *Month   Day   Year*

   c. Name of entity to whom claim was submitted:
   ☐ Grace
   ☐ Other
   *Name of Entity*

## PART 5 SIGNATURE PAGE

All claims must be signed by the claiming party.

I have reviewed the information submitted on this proof of claim form and all documents submitted in support of my claim. I declare, under penalty of perjury,* that the above statements are true, correct, and not misleading.

CONSENT TO RELEASE OF RECORDS AND INFORMATION: To the extent that I have produced a summary rather than the documents themselves as requested above or indicated who has possession and control of certain documents, I hereby authorize and request that all other parties with custody of any documents or information concerning my property damage or the information contained in this Form, upon the reasonable request of Grace or Grace's representative, with a copy to the claiming party, disclose any and all records to Grace or to Grace's representative.

SIGNATURE OF CLAIMANT          ☐☐ – ☐☐ – ☐☐☐☐
                                *Month   Day   Year*

*The penalty for presenting a fraudulent claim is a fine up to $500,000.00 or imprisonment up to 5 years, or both.
18 U.S.C. §§ 152 & 3571.

9276110

Copyright © 2002 NCS Pearson, Inc. All rights reserved.

SERIAL #⌋

# ATTACHMENT 1



**UNITED ST.    .S ENVIRONMENTAL PROTEC    . AGENCY**
REGION VIII
999 18th STREET - SUITE 500
DENVER, COLORADO 80202-2466

JUN 18 2004

Ref: 8ENF-RC

<u>**CERTIFIED MAIL**</u>
<u>**RETURN RECEIPT REQUESTED**</u>

Trustees for the Van Cott Bagley Cornwall & McCarthy Profit Sharing Trust
Van Cott, Bagley, Cornwall & McCarthy
50 South Main St.
Suite 1600
Salt Lake City, UT 84144

Re:    First Request For Information
       Pursuant To Section 104 of CERCLA
       For the Vermiculite Intermountain Site
       (#08-GA) in Salt Lake City, UT

Dear Trustees:

The United States Environmental Protection Agency (EPA) is currently investigating and taking a response action(s) relating to the source, extent, and nature of the release or threatened release of hazardous substances, pollutants or contaminants on or around 333 West 100 South, Salt Lake City, Utah (the Site), hereinafter referred to as "the Site". This investigation requires inquiry into the identification, nature and quantity of materials that have been or are generated, treated, stored or disposed of at, or transported to, the Site.

Pursuant to the authority of Section 104 of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9604, as amended, you are hereby requested to respond to the Information Request set forth in Enclosure 1, attached hereto.

Compliance with the Information Request set forth in Enclosure 1 is mandatory. Failure to respond fully and truthfully to the Information Request within thirty (30) days of receipt of this letter, or adequately to justify such failure to respond, can result in enforcement action by EPA pursuant to Section 104(e) of CERCLA, as amended. This statute permits EPA to seek the imposition of penalties up to $32,500 for each day of continued noncompliance. Please be further advised that provision of false, fictitious, or fraudulent statements or representations may subject you to criminal penalties under 18 U.S.C. § 1001.

This Information Request is not subject to the approval requirements of the Paperwork Reduction Act of 1980, 44 U.S.C. §§ 3501, <u>et seq.</u>

2

Your response to this request must be accompanied by a notarized certificate that is signed and dated by the person who is authorized by you to respond to this request. The notarized certificate must state that the response submitted to EPA is complete and contains all documents and information responsive to this request that are known to you following a complete and thorough review of all information and sources available to you. A suggested format for the notarized certificate is included with this request as Enclosure 2.

Your response to this Information Request should be mailed to:

U.S. Environmental Protection Agency
Kelcey Land, Enforcement Specialist
Technical Enforcement Program, 8ENF-RC
999 18th Street, Suite 500
Denver, Colorado 80202-2466

Due to the legal ramifications of your failure to respond properly, EPA strongly encourages you to give this matter your immediate attention and to respond to this Information Request within the time specified above. If you have any legal or technical questions relating to this Information Request, you may consult with EPA prior to the time specified above. Please direct questions to Matthew Cohn, Attorney, Legal Enforcement Program at (303) 312-6853.

Thank you for your cooperation in this matter.

Sincerely,

Sharon Kercher, Director
Technical Enforcement Program,
Office of Enforcement, Compliance
and Environmental Justice

Enclosures

cc:    Matthew Cohn, ENF-L
       Floyd Nichols, EPR-PAER
       Kelcey Land, ENF-RC

**ENCLOSURE 1**
**VERMICULITE INTERMOUNTAIN (#GA)**
**FIRST INFORMATION REQUEST**

1.      Please provide a separate narrative response to each and every Question and subpart of a Question set forth in this Information Request.

2.      Precede each answer with the number of the Question to which it corresponds.

3.      If information or documents not known or not available to you as of the date of submission of a response to this Information Request should later become known or available to you, you must supplement your response to EPA. Moreover, should you find, at any time after the submission of your response, that any portion of the submitted information is false or misrepresents the truth, you must notify EPA of this fact as soon as possible and provide EPA with a corrected response.

4.      For each document produced in response to this Information Request indicate on the document, or in some other reasonable manner, the number of the Question to which it corresponds.

5.      The information requested herein must be provided even though the Respondent may contend that it includes possibly confidential information or trade secrets. **You may, if you desire, assert a confidentiality claim covering part or all of the information requested, pursuant to Sections 104(e)(7)(E) and (F) of CERCLA, 42 USC 9604(e)(7)(E) and F, Section 3007(b) of RCRA, 42 USC 6927(b), and 40 CFR 2.203(b), by attaching to such information at the time it is submitted, a cover sheet, stamped or typed legend, or other suitable form of notice employing language such as "trade secret," or "proprietary" or "company confidential." Information covered by such a claim will be disclosed by EPA only to the extent, and only by means of the procedures set forth in 40 CFR Part 2, 41 Fed. Reg. 36,902 (1976) (amended at 43 Fed. Reg. 40,000 (1978), and 50 Fed. Reg 51,661 (1985)). If no such claim accompanies the information when it is received by EPA, it may be made available to the public by EPA without further notice to you. You should read the above cited regulations carefully before asserting a business confidentially claim, since certain categories of information are not properly the subject of such a claim.**

2

**ENCLOSURE 1**
**VERMICULITE INTERMOUNTAIN (#GA)**
**FIRST INFORMATION REQUEST**
**DEFINITIONS**

The following definitions shall apply to the following words as they appear in this Enclosure 1:

1.    The term "you" or "Respondent" shall mean the addressee of this Request, the addressee's officers, managers, employees, contractors, trustees, partners, successors, assigns, agents, subsidiaries, affiliates and predecessors-in-interest.

2.    The term "person" shall have the same definition as in Section 101(21) of CERCLA: an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body.

3.    The terms "the Site" or "the Facility" for purposes of this Information Request shall, include the Vermiculite Intermountain site at or near 333 West 100 South, Salt Lake City, Utah.

4.    The term " hazardous substance" shall have the same definition as that contained in Section 101(14) of CERCLA and includes any mixtures of such hazardous substances with any other substances, including petroleum products.

5.    The term "pollutant or contaminant" shall have the same definition as that contained in Section 101(33) of CERCLA, and includes any mixtures of such pollutants and contaminants with any other substances, including  petroleum products.

6.    The term "hazardous waste" shall have the same definition as that contained in Section 1004(5) of RCRA.

7.    The term "solid waste" shall have the same definition as that contained in Section 1004 (27) of RCRA.

8.    The term "materials" shall mean all substances that have been generated, treated, stored, or disposed of or otherwise handled at or transported to the Site, including but not limited to all hazardous substances, pollutants and contaminants, hazardous wastes and solid wastes, as defined above.

9.    The term "hazardous materials" shall mean all hazardous substances, pollutants or contaminants, and hazardous wastes, as defined above.

3

10.    The term "identify" means, with respect to a natural person, to set forth the person's name, present or last known business address and business telephone number, present or last known home address and home telephone number, and present or last known job title, position or business.

11.    The term "identify" means, with respect to a corporation, partnership, business trust or other association or business entity (including a sole proprietorship) to set forth its full name, address, legal form (e.g., corporation, partnership, etc.), organization, if any and a brief description of its business.

12.    The term "identify" means, with respect to a document, to provide its customary business description, its date, its number if any (invoice or purchase order number), and the substance or subject matter.

13.    The term "release" has the same definition as that contained in Section 101(22) of CERCLA, 42 U.S.C. 9601 (22), and includes any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment, including the abandonment or discharging of barrels, containers, and other closed receptacles containing any hazardous substances or pollutant or contaminant.

14. The term "document" and "documents" shall mean any writing, recording or stored information including, but not limited to, hard copy and computer document files.

15.    The term "arrangement" means every separate contract or other agreement between two or more persons.

16.    The term "transaction" or "transact" mean any sale, transfer, giving, delivery, change in ownership, or change in possession.

17.    The term "property interest" means any interest in property including an easement or right of way, any interest in the rental of property, any interest in a corporation that owns or rents or owned and rented property, and any interest as either the trustee or beneficiary or trust that owns or rents property.

18.    All terms not defined herein shall have their ordinary meaning, unless such terms are defined in CERCLA, 42 U.S.C. §§ 9601 et seq.; RCRA, 42 U.S.C. §§ 6901 et seq.; or their regulations found at 40 CFR Part 300 or 40 CFR Part 260 et seq. respectively, in which case the statutory or regulatory definitions shall apply.

4

## ENCLOSURE 1
## VERMICULITE INTERMOUNTAIN (#GA)
## FIRST INFORMATION REQUEST
## QUESTIONS

1. Identify the person(s) answering these Questions on behalf of Respondent.

2. For each and every Question contained herein, identify all persons consulted in the preparation of the answer.

3. For each and every Question contained herein, identify documents consulted, examined, or referred to in the preparation of the answer or that contain information responsive to the Question and provide accurate copies of all such documents.

4. Provide a list of all relevant property and casualty insurance policies (e.g., Comprehensive General Liability, Environmental Impairment Liability, Director and Officers policies) for the period of 1900 through present. Specify the insurer, policy, effective dates, and state per occurrence policy limits for each policy. Copies of policies may be provided in lieu of a narrative response.

5. Provide copies of financial statements, reports, or projections prepared by, for or on behalf of the Respondent for the past five years, whether audited or unaudited, including, but not limited to, all those filed with the Securities and Exchange Commission, State agencies, and all financial institutions such as banks.

6. Identify all persons who may be responsible for the potential liabilities of Respondent arising from or relating to the release or threatened release of hazardous substances at the Site, including but not limited to predecessors and successors.

7. State the date that you acquired the property/properties in question and identify the person(s) from whom you acquired the property. Please furnish copies of deeds, leases, or other legal documents by which you acquired each property interest.

8. If you shared ownership in any parcel of property at the Site with another person, provide the name, address, and telephone number of that person and describe the nature of their interest in the property.

9. Prior to acquiring the property that you own at the Site, did you conduct or have conducted on your behalf, any physical inspection of the property, such as a Phase I or Phase II audit in accordance with ASTM standards? If so, describe that inspection and provide copies of any and all documents that report the findings of such inspection.

5

10. Describe what you knew about environmental conditions on the property at the time of your purchase, and what you knew about previous uses of the property at the time you acquired it.

11. For all property interests that you identified in the previous question that you have subsequently sold, transferred, or otherwise conveyed:

    a.    Provide the date of each such sale, transfer, or conveyance.

    b.    Describe the property sold.

    c.    Identify the person who acquired the property.

    d.    Provide a copy of any and all documents including deeds and contracts that describe the terms and conditions of the transactions.

12. Was any business activity conducted on the property while you owned it? If so, describe the nature of that business activity, identify the persons that conducted the activity, and state when such activities occurred.

13. Were any changes made to the property while you owned it? Changes for purposes of this question include building structures, walls, access roads, grading, recontouring, landscaping, removing structures, removing rock or soils, adding fill, or similar actions? If yes, please describe the changes made.

14. Describe all steps that you have taken to eliminate or reduce the risks associated with human exposure to hazardous substances on your property.

15. Did you lease any of the property you own at the Site to another person? If so, identify that person, describe their use of the property, and provide the time period covered by the lease. Provide copies of documents, including the leases in question, that identify the parties to the leases and describe the terms and conditions of those leases.

16. Describe how the facilities associated with the vermiculite exfoliation and/or processing facility at the Site (including buildings, flues, and stacks) were demolished.

17. When were those facilities demolished?

18. Identify the persons responsible for the demolition including any and all contractors hired to perform the work and those persons who made arrangements for the demolition.

19. Describe and provide documents describing the results of any studies conducted related to environmental conditions in and around those facilities before they were demolished. The includes any efforts to detect the presence of asbestos at or in those facilities.

 *Printed on Recycled Paper*

6

20. Describe all steps taken to prevent the release of hazardous substances during the demolition of those facilities.

21. Describe any air quality monitoring that was conducted at the Site during the demolition of those facilities and provide documents that show the results of that monitoring.

22. Describe how the debris resulting from the demolition was disposed of and identify the location of that disposal.

23. Does the Van Cott, Bagley, Cornwall and McCarthy Profit Sharing Trust that owned property at the Site continue to exist? If yes, identify the current trustees of that trust.

24. If the Van Cott, Bagley, Cornwall and McCarthy Profit Sharing Trust that owned property at the Site no longer exists, describe the circumstances of its termination, describe how the assets of the trust were distributed, and identify any successor trust or entity that was formed to take its place.

25. If you have reason to believe that there may be persons able to provide a more detailed or complete response to any Question contained herein or who may be able to provide additional responsive documents, identify such persons and the additional information or documents that they may have.

# ENCLOSURE 2
## VERMICULITE INTERMOUNTAIN (#GA)
## FIRST INFORMATION REQUEST

## NOTARIZED CERTIFICATE

I, _____, having been duly sworn and being of legal age, hereby state:

1.     I am the person authorized by the Van Cott Bagley Cornwall & McCarthy Profit Sharing Trust to respond to the Environmental Protection Agency's (EPA's) request for information concerning the Vermiculite Intermountain Site near Salt Lake City, Utah.

2.     I have made a complete and thorough review of all documents, information, and sources relevant to the request.

3.     I hereby certify that the attached response to EPA's request is complete and contains all information and documents responsive to the request.

_____
(Signature) (Name, Title)

(SEAL)

Subscribed and sworn to me
this____ day of_____, _____

_____
Notary Public

My Commission Expires_____
My address is_____
_____

# ATTACHMENT 2



**PACIFICORP**
LEGAL DEPARTMENT

MICHAEL G. JENKINS
Assistant General Counsel
801-220-2233
801-220-3299 (fax)
michael.jenkins@pacifiocorp.com

One Utah Center, 201 South Main, Suite 2200, Salt Lake City, Utah 84140

**VIA E-MAIL ONLY**

September 20, 2004

Brian W. Burnett
Callister Nebeker & McCullough
Gateway Tower East, Suite 900
10 E. South Temple
Salt Lake City, Utah  84133

Re:    Third West Substation

Dear Brian,

As I mentioned to you when you picked up a copy of the site history report for the Third West Substation which PacifiCorp has made available to you for copying, I am sending along the attached report briefly describing the status of cleanup activities at PacifiCorp's Third West Substation property.

As we discussed, the area where the pure vermiculite has been discovered is the location of the historic vermiculite processing facility and is part of the property that your client, the Van Cott, Bagley, Cornwall and McCarthy Profit Sharing Trust (Trust), sold to PacifiCorp on May 9, 1984.  At this point, our working assumption is that your client was an owner at the time the vermiculite was released into the environment and will bear responsibility for cleanup costs.

Also, as we discussed, we still are searching for records in regard to the demolition of the vermiculite processing facility. We also continue to look for information about the fire that reportedly destroyed many of the historic buildings on the block sometime in the mid 1980s, as well as information on the removal of the fire debris and remaining buildings.  These records could have some impact on cleanup cost liability as well.  Any records you are able to locate in that regard will be appreciated.

Brian W. Burnett
September 20, 2004
Page 2

As is usually the case with projects like this, our understanding of the site and the site history continues to grow as cleanup activities progress. Although we have done quite a bit of historical research into past activities in this area, we are certainly willing to consider any additional information your clients may have that bears on liability for cleanup costs.

Please let me know of any questions or concerns you may have.

Sincerely,

Michael G. Jenkins

cc:    David Wilson
       Matt Cohn, EPA

Attach.

Brian W. Burnett
September 20, 2004
Page 3

3rd West Substation
Control House Clean-up and
Excavation Update 9/17/04

<u>Control House</u>

Clean-up of the control house, both the basement storage area and the upstairs control
room, is complete. Both areas passed EPA's aggressive air monitoring for clearance.
The basement windows and door have been sealed, and the basement is not currently
being used. The control room windows remained sealed, and the room itself is
maintained under positive pressure. Make-up air is passed through HEPA filters. The
crawl space under the control room remains to be cleaned. This area contains LA-laden
dust 6 to 8 inches thick.

<u>Excavation</u>

The narrow section of the property at the extreme north has been excavated a second
time. Clearance samples were taken after excavating 6 vertical inches in this area. The
area did not pass clearance. An additional 6-plus inches has been excavated. A second
set of clearance samples were taken from this area today.

Excavation in the main open area of the property, east of the installed electrical
equipment, revealed pockets and veins of pure vermiculite. Excavation of these pockets
and veins led to a large area of pure vermiculite, beginning at a depth of about 4 to 6 feet
and extending to about 10 feet below ground surface. This area, in the southwest
quadrant of the main open area, is approximately 100 feet, north to south, by 70 feet, east
to west. (See attached photograph.) The excavation has uncovered concrete walls and
foundations, a concrete floor at a depth of 10 feet, and large concrete pedestals that were
apparently part of a public works facility, circa 1900. The vermiculite was tested and
found to contain LA. Due to the amount and configuration of the concrete, excavation
has been difficult.

The extreme southern edge of the main open area, from the southern property line to
about 30 feet north, has been found to be contaminated only near the surface. This area is
being excavated to a depth of 1 foot, and will be ready for clearance sampling Monday,
9/20/04.

Excavation has started in the UTA substation, the triangular area immediately south of
the Artistic Printing building. Moderate to heavy levels of vermiculite contamination
have been found near the building, along the old rail spur. Wood railroad ties have been
found at a depth of about 1 foot. Vermiculite has been found surrounding the wood ties
to a depth of about 2 feet.

Excavation has not yet begun in the energized areas of the substation.

Brian W. Burnett
September 20, 2004
Page 4



3rd West Substation 9/16/04

This shows the main open area, the eastern-most portion of the property, looking south from outside the fence at the northern end. The length of the concrete wall on the right is approximately 80 feet; its height is 10 feet. The length of the pit is approximately 100 feet, the width is about 70 feet at the widest point. The concrete pedestals are partially exposed just to the left of the concrete wall. Prior beginning the excavation, only the top of the concrete wall was exposed.