# Exhibit 1



# CIBC WORLD MARKETS

CIBC World Markets Corp
425 Lexington Avenue
New York, NY 10017
Tel: 212-885-4400
Fax: 212-885-4998

June 4, 2004

PERSONAL AND CONFIDENTIAL

David T. Austern
Claims Resolution Management Corporation
3110 Fairview Park Drive, Suite 200
Falls Church, VA 22042-0683

Dear Mr. Austern:

This letter agreement (the "Agreement") confirms our understanding of the engagement subject to Bankruptcy Court approval, of CIBC World Markets Corp. ("CIBC World Markets") by David T. Austern, the Court appointed representative for future asbestos claimants (the "Future Representative") to W.R. Grace & Co. (together with its subsidiaries and affiliates the "Company") to act as exclusive financial advisor to the Future Representative in connection with a proposed restructuring of the Company and implementation of a trust as contemplated under Section 524(g) of the Bankruptcy Code (the "Transaction"). The Future Representative will undertake to apply to the Bankruptcy Court, which has jurisdiction over the Company's chapter 11 bankruptcy proceeding, for authorization to employ CIBC in accordance with the terms and conditions of this Agreement, with this Agreement attached as an exhibit to such application. Subject to the terms and conditions hereof, CIBC agrees to accept as compensation for the services that CIBC renders pursuant to the terms hereof such sums as may be allowed by the Bankruptcy Court for fees incurred for professional services and for reimbursement of reasonable and necessary expenses.

Notwithstanding anything contained in this letter agreement to the contrary: (a) CIBC World Markets makes no representations or warranties about the Company's ability to (i) successfully improve its operations, (ii) maintain sufficient liquidity to operate its business or (iii) successfully complete a Transaction, and (b) CIBC World Markets makes no representation, warranty or commitment to underwrite, place or purchase any securities or provide any form of financing to the Company.

Services. Subject to approval of the Bankruptcy Court, the Future Representative hereby retains CIBC World Markets as the financial advisor to the Future Representative in connection with the Transaction. In connection with this engagement, CIBC World Markets will:

(a) assist the Future Representative in analyzing and reviewing the acts, conduct, assets, liabilities and financial condition of the Company;
(b) familiarize itself to the extent appropriate with the operation of the Company's businesses, advise the Future Representative with respect to the Transaction including analyzing, negotiating and effecting a plan of reorganization or recapitalization for the Company to the extent necessary, performing valuation analyses on the Company and their assets;
(c) evaluate the financial effect of the implementation of any plan of reorganization upon the assets or securities of the Company; and
(d) any other tasks as mutually agreed upon by CIBC World Markets and the Future Representative.

It is expressly understood that CIBC World Markets is working for and will take direction from the Future Representative and will share any work product with the Company only with the permission of the Future Representative.

In rendering its services to the Future Representative hereunder, CIBC World Markets is not assuming any responsibility for the Company's underlying business decision to pursue or not to pursue any business strategy or to effect or not to effect any Transaction.

<u>Compensation</u>. In full payment for services rendered and to be rendered hereunder by CIBC World Markets, the Company shall pay to CIBC World Markets, in cash, subject to approval of the Bankruptcy Court, monthly fees (the "Monthly Fees"), as follows:

(a) for the initial six (6) months of this engagement, starting upon the date of this letter agreement, a fee of $150,000 per month, payable monthly in advance; and

(b) following the initial six (6) month period, a fee to be negotiated that is mutually acceptable to the Future Representative and CIBC World Markets, subject to approval of the Bankruptcy Court, for each month thereafter up through the month of the effective date of a plan of reorganization or termination of this letter agreement, whichever first occurs.

Both CIBC and the Future Representative recognize and acknowledge that the compensation proposed has been accepted by all parties based on their understanding of the proposed Transaction. The Monthly Fee to be paid to CIBC pursuant to the terms of the this letter agreement shall be subject to the standard of review provided in section 328(a) of the Bankruptcy Code and are not subject to any other standard of review, under section 330 of the Bankruptcy Code or otherwise, provided, however, that the Future Representative may, on a monthly basis, confer with CIBC whether any adjustment shall be made in the Monthly Fee based on CIBC's activity level for such month.

<u>Reimbursement of Expenses</u>. Subject to Bankruptcy Court approval, the Company shall periodically reimburse CIBC World Markets promptly when invoiced for all of its reasonable out-of-pocket expenses (including, without limitation, reasonable fees and expenses of its legal counsel, travel and lodging expenses, word processing charges, messenger and duplicating services, facsimile expenses and other customary expenditures) in connection with the performance of its services hereunder, regardless of whether a Transaction occurs. Upon termination of this letter agreement or completion of a Transaction, subject to Bankruptcy Court approval, the Company shall pay promptly in cash any unreimbursed expenses that have accrued as of such date. To the extent officers of CIBC World Markets assist in, or provide testimony in trial or deposition for any action, suit or proceeding relating to a Transaction or our engagement hereunder after the consummation of a Transaction or termination of our engagement hereunder, subject to Bankruptcy Court approval, the Company shall pay CIBC World Markets a per diem charge for the services of such officers in an amount to be mutually agreed upon by the Future Representative and CIBC World Markets prior to such assistance.

<u>Term</u>. This engagement will commence on the date hereof and terminate 30 days from the date on which the Future Representative or CIBC World Markets, as the case may be, receives written notice from the other of termination of this engagement. CIBC World Markets may resign at any time and the Future Representative may terminate CIBC World Markets' services at any time, each by giving written notice to the other. Notwithstanding the foregoing, the Future Representative agrees that the provisions relating to the payment of fees, reimbursement of expenses, indemnification and contribution, and waiver of the right to trial by jury will survive any such termination.

If Joseph J. Radecki, Jr. shall cease to be employed by CIBC, CIBC shall give prompt notice to the Future Representative and the Future Representative shall have the right to terminate this Agreement immediately by giving notice to CIBC and the Company shall not be obligated to pay CIBC the fees outlined above beyond the effective date of such termination under such circumstances. CIBC will also provide appropriate levels of staffing to complete the engagement in a timely and commercially reasonable manner.

3

**Liability for Fees and Expenses.** Subject to approval by the Bankruptcy Court, the Company shall be solely responsible for the payment of compensation and reimbursement of expenses to CIBC under this Agreement. The Future Representative shall not be liable for the payment of any compensation or reimbursement of any expenses to CIBC hereunder.

**Use of Information.** The Future Representative shall use its reasonable best efforts to have the Company furnish to CIBC World Markets such information as CIBC World Markets requests for purposes of performing services under this letter agreement (the "Information"). The Future Representative will use its reasonable best efforts to have the Company agree and represent that all Information relating to the Company furnished to CIBC World Markets will be accurate and complete in all material respects at the time provided, and that, if the Company is aware of any Information becoming materially inaccurate, incomplete or misleading during the engagement hereunder, the Company will promptly advise CIBC World Markets. The Future Representative recognizes and confirms that CIBC World Markets assumes no responsibility for the accuracy and completeness of the Information and will be using and relying upon the Information (and information available from generally recognized public sources) without assuming responsibility for independent verification or independent evaluation of any of the assets or liabilities of the Company.

**Indemnification.** Subject to Bankruptcy Court approval, in addition to the payment of fees and reimbursement of fees and expenses provided for above, and regardless if any Transaction is consummated, the Company shall agree to indemnify CIBC World Markets with regard to the matters contemplated herein, as set forth in Annex A, attached hereto, which is incorporated by reference as if fully set forth herein.

**Governing Law.** This letter agreement will be governed by and construed in accordance with the laws of the State of New York applicable to agreements made and to be fully performed therein.

Each of the Future Representative and CIBC World Markets hereby waives any right it may have to a trial by jury in respect of any claim brought by or on behalf of either party based upon, arising out of or in connection with this letter agreement, our engagement hereunder or the transactions contemplated hereby.

**Confidentiality.** Except as required by law, this Agreement and the services, information and advice to be provided by CIBC World Markets hereunder, is for the confidential use of the Future Representative and shall not be disclosed to third parties without CIBC World Markets' prior written permission.

**Advertisements.** CIBC World Markets shall be permitted, at its own expense, to advertise the services it provided in connection with any transaction subsequent to the consummation thereof.

**Use of Name.** The Future Representative agrees that any reference to CIBC World Markets, as financial advisor in any release or communication or materials distributed, is subject to CIBC World Markets' prior written approval, unless such release or communication is required by law or regulation. If CIBC World Markets resigns prior to the dissemination of any such release, communication or material, no reference shall be made therein to CIBC World Markets.

**Authorization.** The Future Representative represents and warrants that, subject to Bankruptcy Court approval, it has all requisite power and authority, and all necessary authorizations, to enter into and carry out the terms and provisions of this Agreement and the execution, delivery and performance of this Agreement does not breach or conflict with any agreement, document or instrument to which it is a party or bound.

**No Brokers.** The Future Representative represents and warrants to CIBC World Markets that there are no brokers, representatives or other persons which have an interest in compensation due to CIBC World Markets from any transaction contemplated herein or which would otherwise be due any fee, commission or remuneration upon consummation of any Transaction.

4

**Conflicts.** The Future Representative acknowledges that CIBC World Markets and its affiliates shall have no obligation to disclose any information acquired in connection with various investment banking, commercial banking and financial advisory relationships with, or services for, other clients and customers, to the Company or to use such information in connection with any transactions contemplated by this letter agreement.

**Independent Contractor.** The Future Representative acknowledges that CIBC World Markets has been retained solely to provide the services set forth in this letter agreement. The Future Representative acknowledges that in performing its services, CIBC World Markets shall act as an independent contractor, and not as agent or otherwise, and any duties of CIBC World Markets arising out of its engagement hereunder shall be owed solely to the Future Representative and CIBC World Markets shall have no duties or liabilities to the equity holders or other stakeholders of the Company or any third party in connection with its engagement hereunder, all of which are expressly waived. No one other than the Future Representative is authorized to rely upon the engagement of CIBC World Markets hereunder or any statements, advice, opinions or conduct by CIBC World Markets. The Future Representative further acknowledges that CIBC World Markets may perform certain of the services described herein through one or more of its affiliates and any such affiliates shall be entitled to the benefit of this Agreement.

**Anti-Money Laundering.** To help the United States government fight the funding of terrorism and money laundering activities, the federal law of the United States requires all financial institutions to obtain, verify and record information that identifies each person with whom they do business. This means we must ask you for certain identifying information, including a government-issued identification number (e.g., a U.S. taxpayer identification number) and such other information or documents that we consider appropriate to verify your and the Company's identity, such as certified articles of incorporation, a government-issued business license, a partnership agreement or a trust instrument.

**Miscellaneous.** This Agreement constitutes the entire understanding and agreement between the Future Representative and CIBC World Markets with respect to the subject matter hereof and supersedes all prior understanding or agreements between the parties with respect thereto, whether oral or written, express or implied. Any amendments or modifications must be executed in writing by both parties. This Agreement and all rights, liabilities and obligations hereunder shall be binding upon and inure to the benefit of each party's successors but may not be assigned without the prior written approval of the other party. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but such counterparts shall, together, constitute only one instrument. The descriptive headings of the Paragraphs of this Agreement are inserted for convenience only, do not constitute a part of this Agreement and shall not affect in anyway the meaning or interpretation of this Agreement.

5

If the foregoing meets with your approval, please sign the attached duplicate copy of this letter and return it to the undersigned.

Very truly yours

CIBC World Markets Corp.

By: *[signature]*
Joseph J. Radecki, Jr.
Managing Director

Accepted and agreed
to as of the date first
written above:

Future Representative to W.R. Grace & Co.

By: *[signature]*
David T. Austern
Future Representative

6

## ANNEX A: INDEMNIFICATION

(A) In consideration of CIBC World Markets' agreement to act on behalf of the Future Representative, notwithstanding any limitations set forth herein, subject to approval by the Bankruptcy Court, the Company agrees to indemnify and hold harmless CIBC World Markets and its affiliates and their respective present and former directors, officers, employees, agents and controlling persons within the meaning of section 15 of the Securities Act of 1933, as amended (each such person, including CIBC World Markets, an "Indemnified Party" and collectively the "Indemnified Parties") to the fullest extent permitted by law from and against any losses, claims, damages and liabilities, joint or several (collectively, the "Damages"), to which such Indemnified Party may become subject in connection with or otherwise relating to or arising from (i) any transaction or matter in any way relating to or referred to in this letter agreement or arising out of the matters contemplated by this letter agreement or the engagement of or performance of services or any involvement or alleged involvement in a Transaction (as defined in this letter agreement) by CIBC World Markets thereunder or (ii) an untrue statement or an alleged untrue statement of a material fact or the omission or alleged omission to state a material fact necessary in order to make a statement not misleading in light of the circumstances under which it was made, and will reimburse each Indemnified Party for all fees and expenses (including the fees and expenses of counsel) (collectively, "Expenses") as incurred, subject to the provisions of paragraph (D), below, in connection with investigating, preparing, pursuing or defending any threatened or pending claim, action, proceeding or investigation (collectively, the "Proceedings") arising therefrom, whether or not such Indemnified Party is a formal party to such Proceeding; provided, that the Company will not be liable to any such Indemnified Party to the extent that any Damages are found in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from the bad faith, gross negligence or willful malfeasance of the Indemnified Party seeking indemnification hereunder or any breach by CIBC World Markets of this letter agreement. The Company also agrees that no Indemnified Party will have any liability (whether direct or indirect, in contract, tort or otherwise) to the Company or any person asserting claims on behalf of the Company arising out of or in connection with any transactions contemplated by this letter agreement or the engagement of or performance of services by any Indemnified Party thereunder except to the extent that any Damages are found in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from the bad faith, gross negligence or willful malfeasance of the Indemnified Party or any breach by CIBC World Markets of this letter agreement

(B) If for any reason other than in accordance with this letter agreement, the foregoing indemnity is unavailable to an Indemnified Party in respect of any Damages (including all Expenses incurred) referred to herein or insufficient to hold an Indemnified Party harmless, then the Company agrees that in lieu of indemnifying such Indemnified Party, the Company shall contribute to the amount paid or payable by such Indemnified Party as a result of such Damages (including all Expenses incurred) (i) in such proportion as is appropriate to reflect the relative benefits to the Company and/or its stockholders on the one hand, and of the Indemnified Party on the other hand, from the services rendered under this letter agreement or (ii) if the allocation provided by clause (i) above is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) above but also the relative fault of the Company on the one hand and of the Indemnified Party on the other. The Company agrees that for purposes of this paragraph the relative benefits to the Company and/or its stockholders and CIBC World Markets in connection with the matters covered by this letter agreement will be deemed to be in the same proportion that the total value paid or received or to be paid or received by the Company and/or its stockholders in connection with the transactions contemplated by this letter agreement, whether or not consummated, bears to the fees paid to CIBC World Markets under this letter agreement; provided, that in no event will the total contribution of all Indemnified Parties to all such Damages exceed the amount of fees actually received and retained by CIBC World Markets under this letter agreement (excluding any amounts received by CIBC World Markets as reimbursement of expenses). Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any alleged conduct relates to information provided by

7

the Company or other conduct by the Company (or its employees or other agents) on the one hand, or by CIBC World Markets, on the other hand.

(C) The Company agrees not to enter into any waiver, release or settlement of any Proceeding (whether or not CIBC World Markets or any other Indemnified Party is a formal party to such Proceeding) in respect of which indemnification may be sought hereunder without the prior written consent of CIBC World Markets (which consent will not be unreasonably withheld), unless such waiver, release or settlement (i) includes an unconditional release of CIBC World Markets and each Indemnified Party from all liability arising out of such Proceeding and (ii) does not contain any factual or legal admission by or with respect to any Indemnified Party or any adverse statement with respect to the character, professionalism, expertise or reputation of any Indemnified Party or any action or inaction of any Indemnified Party. In the event that a cause of action is asserted against an Indemnified Party arising out of or relating to the performance of his, her or its duties as financial advisor to the Future Representative, the Indemnified Party shall have the right to choose its own counsel.

(D) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Company's chapter 11 bankruptcy cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing the Company's chapter 11 bankruptcy cases, CIBC World Markets believes that it is entitled to the payment of any amounts by the Company on account of the Company's indemnification, contribution and/or reimbursement obligations under this letter agreement or arising out of the matters contemplated by this letter agreement or the engagement of or performance of services by an Indemnified Party thereunder, including without limitation, the advancement of defense costs, CIBC World Markets must file an application therefore with the Bankruptcy Court, and the Company may not pay any such amounts to CIBC before the entry of an order by the Bankruptcy Court approving payment. This paragraph is intended only to specify the period of time under which the Bankruptcy Court shall have jurisdiction over any request for fees and expenses by CIBC World Markets for indemnification, contribution or reimbursement and not to limit the duration of the Company's obligation to indemnify CIBC.

(E) The indemnity, reimbursement and contribution obligations of the Company hereunder will be in addition to any liability which the Company may have at common law or otherwise to any Indemnified Party and will be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company or an Indemnified Party. The provisions of this Annex will survive the modification or termination of this letter agreement.