IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Objection Deadline: February 11, 2005**
**Hearing Date: February 28, 2005 at Noon**

**DEBTORS' MOTION FOR AN ORDER APPROVING A SETTLEMENT AND RELEASE AGREEMENT WITH CONTINENTAL CASUALTY COMPANY**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully move this Court (the "Motion") for entry of an order approving the Confidential Settlement Agreement and Release (the "CCC Settlement Agreement") by and between (i) W. R. Grace & Co.-Conn. ("Grace-Conn."), (ii) W. R. Grace & Co. ("Grace Delaware" and, together

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

with Grace-Conn., "Grace")[2], (iii) W. R. Grace & Co. - NY (now known as Fresenius Medical Care Holdings, Inc. and referred to herein as "Grace-NY"), and (iv) Continental Casualty Company ("CCC").[3]

Pursuant to the CCC Settlement Agreement[4], CCC will pay Grace Nine Million Dollars ($9,000,000.00) (the "Payment"), and in consideration thereof, Grace and Grace-N.Y. will provide CCC certain releases from potential liability stemming from certain insurance policies. The CCC Settlement Agreement will (i) result in an immediate inflow of $9,000,000 to the Debtors' estates and (ii) relieve the Debtors from prospective legal costs and litigation risks associated with the underlying dispute. Therefore, the CCC Settlement Agreement is in the best-interest of the Debtors' estates, and the Court should enter an order approving the CCC Settlement Agreement.

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this motion is proper under 28 U.S.C. § 1408.

2. The statutory predicates for this Motion are sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 the Federal Rules of Bankruptcy Procedure.

---

[2] Grace-Conn. and Grace Delaware are both Debtors in these chapter 11 cases.

[3] The parties to the CCC Settlement Agreement are hereinafter referred to collectively as the "Parties."

[4] The CCC Settlement Agreement is confidential and therefore not attached to this Motion. To the extent the Court determines it is necessary to review the CCC Settlement Agreement, the CCC Settlement Agreement will be submitted to the Court for in-camera inspection.

## BACKGROUND

3. On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases (collectively, the "Chapter 11 Cases") have been consolidated for administrative purposes only. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4. CCC has issued to Grace certain primary policies of insurance (the "Policies") that have stated limits for "gradual pollution" (the "Gradual Pollution Limits").

5. In 1988, Maryland Casualty Co. commenced an action in the U.S. District Court for the Southern District of New York (the "NY Environmental Litigation"), to resolve coverage disputes arising out of numerous environmental claims asserted by Grace, in response to which Grace asserted a cross-claim against CCC for coverage of environmental claims under the Policies, including claims under the Gradual Pollution Limits. In 2000, CCC filed a complaint against Grace in an action in the same court (the "CCC Action"), which seeks a declaration of no coverage for additional claims tendered by Grace. The NY Environmental Litigation and the CCC Action are hereinafter collectively referred to as the "NY Coverage Actions."

6. In connection with an action against Hatco Corp. in the U.S. District Court for the District of New Jersey (the "Hatco Litigation"), the Parties entered into a settlement agreement dated May 30, 1997 (the "Hatco Settlement"), pursuant to which the Gradual Pollution Limits stated in the Policies were exhausted and all claims for indemnity and defense costs for claims which come under the Gradual Pollution Limits were extinguished and released, except for

Grace's claims for defense costs relating to claims under the Gradual Pollution Limits incurred prior to the date of the Hatco Settlement (the "Pre-Hatco Defense Costs").

7. After execution of the Hatco Settlement, the Parties continued to litigate CCC's obligations, including the obligation to pay or reimburse Grace for Pre-Hatco Defense Costs for claims in connection with the sites at issue in the NY Coverage Actions. In 2001, judgment was entered in the NY Environmental Litigation declaring, among other things, that CCC had no obligation to pay or reimburse Grace for gradual pollution claims. In 2003, the U.S. Court of Appeals for the Second Circuit affirmed the judgment for the 1973-83 policies, and remanded the case for further proceedings regarding CCC's obligations under certain of the Policies.

8. The Parties have entered into the CCC Settlement Agreement to reach a resolution of the NY Coverage Actions, with the exception of assertions of coverage for personal injury claims arising from Grace-related business operations in Libby, Montana (the "Libby Related Claims"). The CCC Settlement Agreement provides that in consideration of receipt of the Payment, Grace and Grace-NY release CCC from all liabilities for (a) Pre-Hatco Defense Costs, (b) Property Damage Pollution Claims and Personal Injury Pollution Claims (as defined in the CCC Settlement Agreement), and (c) any alleged wrongdoing by CCC (as described in the CCC Settlement Agreement), subject to the limitations and exclusions set forth herein.

10. The CCC Settlement Agreement is subject to the approval of this Court, and the Payment is being held in escrow pending this Court's ruling. If the CCC Settlement Agreement is not approved by this Court on or before March 15, 2005, then the Payment and accrued interest will be returned to CCC; provided, however, that the Parties may agree in writing to extend the time to obtain approval of the CCC Settlement Agreement from this Court. If this

Court denies approval of the CCC Settlement Agreement, then the Agreement will be void, and the Payment and accrued interest will be returned to CCC. Pitney Hardin LLP may release the Payment and accrued interest to Grace only after either (a) thirty days after the order of this Court approving the CCC Settlement Agreement is entered, provided that no appeals are taken from such order and such order is final, or (b) if an appeal is taken and the Payment is not otherwise returned to CCC, thirty days after the final order approving this Agreement, which order is no longer subject to appellate review or rehearing.

## RELIEF REQUESTED

12. By this Motion, the Debtors seek an order approving the confidential CCC Settlement Agreement. A form of proposed order is attached hereto.

## STATUTORY AUTHORITY AND ARGUMENT

13. This Court has statutory authority to authorize and approve the Debtors' entry into the CCC Settlement Agreement pursuant to sections 105 and 363(b)(1) of the Bankruptcy Code. A settlement of claims and causes of action by a debtor in possession constitutes a use of property of the estate. See Northview Motors, Inc. v. Chrysler Motors Corp., No. 98-3387, 1999 U.S. App. LEXIS 13403, at *11 (3d Cir. 1999). If a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. See id.

14. Under section 363(b) of the Bankruptcy Code, a debtor has the burden to establish that it has a valid business purpose for using estate property outside the ordinary course of business. See In re Lionel Corp., 722 F.2d 1063, 1070-71 (2d Cir. 1983). Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest belief that the action

was in the debtor's best interest. See In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992). A party in interest seeking to challenge the debtor's valid business purpose must "produce some evidence supporting its objections." In re Montgomery Ward Holding Corp., 242 B.R. 147, 155 (Bankr. D. Del. 1999).

15. Further, Bankruptcy Rule 9019 provides that, after notice and a hearing, a court may approve a proposed settlement or compromise. The decision whether to accept or reject a compromise lies within the sound discretion of the court. See In re Resorts Int'l, Inc., 145 B.R. 412, 451 (Bankr. D. N.J. 1990); In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (Bankr. E.D. Pa. 1986).

16. In reviewing this Motion, the Court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." In re Martin, 91 F.3d 389, 393 (3d Cir. 1996). This requires court consideration of the following criteria: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Id.

17. Approval of the CCC Settlement Agreement is in the best interests of the Debtors and their estates. The CCC Settlement Agreement is in the best interests of Grace because (a) the Hatco Settlement and the judgment of the U.S. District Court in the NY Environmental Litigation may substantially limit the recovery available to Grace in the NY Coverage Actions, and (b) Grace will promptly receive a cash payment of $9 million. In the absence of a settlement, however, Grace would be subject to the cost, delay, and uncertainty associated with continuing to litigate the NY Coverage Actions, some aspects of which have been pending since

1988. Therefore, the Debtors have determined, using their business judgment, that a payment of $9 million in consideration of the releases described above, is in the best-interests of the Debtors' estates.

18. The proposed transaction does not adversely affect the Debtors' creditors. In lieu of certain rights under the Policies, Grace is receiving cash. In the absence of the CCC Settlement Agreement, (i) the amount of the eventual payment on account of the Policies would be less certain and (ii) in any event, payment would be delayed until the resolution of the NY Coverage Actions.

## NOTICE

19. Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) the Environmental Protection Agency, (iii) counsel to the debtor in possession lenders, (iv) counsel to each official committee appointed by the United States Trustee, and (v) those parties that requested papers under Fed. R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) approving the CCC Settlement Agreement; (ii) allowing the Debtors to issue the releases provided in the CCC Settlement Agreement; and (iii) granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: January 24, 2005

KIRKLAND & ELLIS LLP
James H.M. Sprayregen, P.C.
Janet S. Baer
James W. Kapp III
Samuel L. Blatnick
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession