# EXHIBIT 1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al., | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | Re: Docket Nos. 7502 and 7506 |

## DEBTORS' REPLY IN FURTHER SUPPORT OF THEIR ESTIMATION SUPPLEMENT REGARDING ZAI BAR DATE

From day one of these chapter 11 cases, the Debtors have pursued a single objective --

establishing a fair and orderly procedure for resolving asbestos liability. To further this

objective, the Debtors sought a ZAI Bar Date. Based, in large part, on unsubstantiated

allegations that completing a detailed ZAI proof of claim would require dangerous exposure to

homeowners, no ZAI bar date was established. Instead, the ZAI Science Trial proceeded. While

the Debtors believe they have established that ZAI is not dangerous, a ruling is not necessary to

proceed with the current bar date request. The current ZAI Proof of Claim Form only requires

basic information that does not call for any disturbance of ZAI.

The Debtors are not asking the Court to "walk away" from the ZAI Science Trial. To the

contrary, the Debtors' request simply pursues a facet that can be resolved *pending* the Court's

ruling in the ZAI Science Trial -- a Bankruptcy Code -- prescribed process to determine the

number of potential ZAI Claims. Then, once the Court issues a ruling in the ZAI Science Trial,

those findings can be promptly used to: *first,* develop a detailed ZAI Questionnaire, if necessary;

*second,* estimate ZAI Claims for purposes of determining plan feasibility; and *third*, determine

the allowability of individual ZAI Claims for plan distribution purposes.

The ZAI Bar Date will also serve another, equally important objective. It may facilitate negotiations between the various constituencies concerning a consensual plan. To date, there have been no procedures established to reliably ascertain the number of ZAI Claims.

**Argument**

**A.    The ZAI Bar Date Does Not Diminish the Importance of the ZAI Science Trial**

1.    The Debtors are not asking the Court to walk away from the ZAI Science Trial. The Debtors are simply attempting to move the ZAI ball forward pending the outcome of that trial. The Court itself recently acknowledged a ZAI Bar Date may be useful:

> Well, I think -- I guess the question is if a bar date can be set if in fact -- excuse me -- I'm sorry. If in fact the Zonolite, I'll call it locations for a moment, can be identified in some reasonable fashion so that notice can be given, and I understand some of it's going to be by publication, so that a bar date could in fact be set, I don't know that it's not -- that it's a bad idea to set a bar date. I thought what I was being asked to do was to determine whether there is such an unreasonable risk of harm that some sort of class action type of proof of claim could be filed instead, but, you know, of course we've done it both ways. And frankly, to see what the *universe of Zonolite claims is that actually exists may not be a bad thing, because it may lead toward a settlement with the property damage.*

(Tr. from December 20, 2004 Hearing, at 81, lns. 7-20) (emphasis added) (relevant portions are attached as Exhibit A).

2.    The Court requested the ZAI Science Trial for two reasons. *First*, to understand the science surrounding ZAI to address the PD Committee's argument that ZAI is unreasonably dangerous, and thus it was dangerous to have parties complete the Debtors' proposed detailed ZAI claim form:

> THE COURT: It seems to me that we ought to get to the scientific side of this promptly. Because, number one, I'm not sure it makes a lot of sense to notify people who may have Zonolite in their homes that they may be exposed to significant risk if, in fact, they're not. Because that could be creating a panic of some sort that's not really justified if the scientific evidence doesn't warrant it. So, I've got that to decide.
>
> By the same token, if the scientific evidence does warrant it and they do need to be made aware of the problems should they disturb the Zonolite in their

2

attics, then we probably ought to know that. And do that form of notice before we require people to file proofs of claim.

So, no matter how you look at it, it makes more sense to litigate the science of this first.

(Tr. from March 18, 2002 Hearing, at 84, lns. 6-20) (attached, in relevant part, as Exhibit B).

3.    *Second,* the Court acknowledged the ZAI Science Trial's relevance to both estimation and the class proof of claim issue:

MR. BAENA: Is the notion, though, that this is part of an estimation process or is this part of a class certification process or --

THE COURT: I think it would be used for both purposes frankly because I think in order to get the class certified, and we have to know that there is likely to be a class that could sustain damage. So, I think it would stand for both of those [propositions].

(Tr. from March 18, 2002 Hearing, at 85, lns. 17-21).

4.    While the Debtors believe they have proven that disturbing ZAI does not pose an unreasonable risk, the Debtors' bare-bones ZAI Proof of Claim Form does not trigger the issue. The current proposed ZAI Proof of Claim Form seeks very general information. It requests (with respect to the building): (i) the address of the building that allegedly contains ZAI; (ii) the approximate date the building was constructed; (iii) the approximate date the ZAI was installed in the building, if known; (iv) the building's use (i.e. residential, commercial, etc.); and (v) the claimant's legal interest in the building. This information should be readily available to all Claimants, who can complete the entire ZAI Proof of Claim Form in a minimal amount of time without disturbing any ZAI that may be in their homes.

5.    Further, to the extent that the Court subsequently determines that a class proof of claim is warranted, the ZAI claims data can be supplemented by the class proof of claim.

3

**B.     The ZAI Bar Date Will Provide Information That is (i) Critical to the Debtors' Plan and (ii) May Facilitate a Consensual Plan of Reorganization**

6.      Much has changed in the last two years.  The ZAI Science Trial matter has been briefed and argued.  The Debtors are now requesting a simple proof of claim rather than a detailed one.  The PD claims process is proceeding.  A plan has been filed and the Debtors are prepared to proceed with estimation of PI claims.

7.      The Bar Date process would afford the Court, the Debtors, and other parties-in-interest an opportunity to ascertain the total number of potential ZAI Claims.  Depending on the result of the ZAI Science Trial, this information will be critical to determining whether the Debtors' proposed Plan, which provides for payments to a 524(g) trust on behalf of all asbestos claims (including ZAI Claims) is feasible.

8.      The ZAI Bar Date will also serve a second, equally-important objective -- it will provide information that may facilitate a consensual plan.  As the Court acknowledged during the Debtors' December 20, 2004 hearing, determining the universe of ZAI claims could "lead toward a settlement" with the PD claimants.  (Tr. from December 20, 2004 Hearing, at 81)

**C.     The Court Should Not Delay Addressing the Merits of the Pending Request**

9.      Despite the Court's explicit directives, the PD Committee in their Response *again* complains that the Debtors' Estimation Supplement "failed to provide adequate time for the PD Committee and other parties in interest to address the merits" because it only provided them "two weeks during the holiday season to respond." PD Objection, pg 2.  This argument is unpersuasive and was already dismissed by the Court. See (Tr. from December 20, 2004 Hearing, at pg. 94, ln. 18- pg. 95, ln. 10).

10.     The Debtors' filed the Estimation Supplement on December 20, 2004.  Pursuant to the Court's ordinary scheduling procedures, the matter would be set for hearing on January 24,

4

2004. However, given (i) that the Debtors already had a hearing on plan-related matters scheduled for January 21, 2005 and (ii) the inseparable link among the plan-related filings (including the Estimation Supplement), the Debtors asked the Court to hear the matter during the January 21, 2005 hearing. The Court agreed.

11.     This scheduling decision only shortened the PD Committee's response period by *two* days. And, on December 20, 2004 when the PD Committee raised concerns about the timing, the Court indicated a month to respond was sufficient. See (Tr. from December 20, 2004 Hearing, at pg. 94, ln. 18- pg. 95, ln. 10).

12.     The PD Committee had its chance to comment on the substance of the Debtors' proposed Proof of Claim and Notice Program. The PD Committee chose not to do so. The Court should thus permit the Debtors to proceed with the Notice Program, without delay.

5

WHEREFORE, the Debtors request that this Court enter an order that (in addition to the relief requested in the Estimation Motion): (i) sets the ZAI Bar Date, (ii) approves the Debtor's proposed ZAI Proof of Claim Form, General Instructions for Completing the ZAI Proof of Claim Form, ZAI Bar Date Notice, and Publication Notice, and (iii) approves the Debtors' proposed ZAI Bar Date Notice Program (a proposed order was submitted as an Exhibit to the Estimation Supplement).

Dated:  January 14, 2005

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Samuel L. Blatnick
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

KIRKLAND & ELLIS LLP
Bennett L. Spiegel
Lori Sinanyan
777 South Figueroa Street
Los Angeles, California 90017
(213) 680-8400

and

PACHULSKI, STANG, ZIEHL, YOUNG,
JONES & WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession

# Exhibit A

Relevant Portions of Transcript From December 20, 2004 Hearing

 1  should be litigated in connection with the disclosure statement
 2  hearing because if the debtor --
 3          MR. BAENA:   We actually perceive other overarching
 4  problems --
 5          THE COURT:   -- may be.
 6          MR. BAENA:   -- with the plan that they've filed, any
 7  one of which would end the prospect for confirmation of the
 8  plan.   And maybe what we need to do, Judge, at this point is
 9  wait for their plan to get filed, give us an opportunity to
10  identify what we consider to be overarching objections to
11  confirmation, don't make us go through this whole plan
12  confirmation process so that we can't argue to you those points
13  until the end of the day.   Let us bring that before you even if
14  it's on a disclosure statement hearing.   Let us bring those
15  overarching objections to you.
16          THE COURT:   Yes, I think the legal issues can be
17  briefed -- and I think those are legal issues -- can be briefed
18  in connection with the disclosure statement.   There is no point
19  going out with a plan that is not confirmable if that can be
20  identified early on.   So I think with respect to legal issues
21  that's probably a good idea, and what we need are some dates.
22  With respect to the Zonolite issue, I'm -- I haven't seen the
23  motion to set a bar date, so I really don't know how it affects
24  what I've got by way of summary judgment.   I was hoping that
25  maybe the motion itself would articulate that, but --

1          MR. BAENA:  Well, according to the motions that were

2   filed, according to the debtor the summary judgment proceeding

3   made it absolutely clear that there's no impediment to sending

4   out proof of claim forms.  Don't know how that happened, don't

5   know what order they got that came to that conclusion, but

6   they're ready to forego your opinion.  We're not.

7          THE COURT:  Well, I think -- I guess the question is

8   if a bar date can be set if in fact -- excuse me -- I'm sorry.

9   If in fact the Zonolite, I'll call it locations for a moment,

10  can be identified in some reasonable fashion so that notice can

11  be given, and I understand some of it's going to be by

12  publication, so that a bar date could in fact be set, I don't

13  know that it's not -- that it's a bad idea to set a bar date.

14  I thought what I was being asked to do was to determine whether

15  there is such an unreasonable risk of harm that some sort of

16  class action type of proof of claim could be filed instead,

17  but, you know, of course we've done it both ways.  And frankly,

18  to see what the universe of Zonolite claims is that actually

19  exists may not be a bad thing, because it may lead toward a

20  settlement with the property damage.

21          MR. BAENA:  Well, Judge, first, I of course don't

22  think that the special counsel for Zonolite expected this

23  argument today because --

24          THE COURT:  Well, I'm not really --

25          MR. BAENA:  -- they didn't expect --

**J&J COURT TRANSCRIBERS, INC.**

1        THE COURT:  -- having an argument.

2        MR. BAENA:  -- a supplemental motion.

3        THE COURT:  Yes.

4        MR. BAENA:  So I wouldn't want us to foreclose the

5   opportunity for them to argue --

6        THE COURT:  Certainly not.

7        MR. BAENA:  -- again about the class proof of claim.

8   In terms of, well, maybe we can have, you know, two columns, if

9   we come down to a conclusion that it's harmful and a class

10  proof of claim form would be appropriate, it's okay that we wen

11  through this other effort.  I would only point out that the

12  debtor has taken a very odd turn in its papers as to what it

13  would entail to have such an undertaking.  The papers that

14  they've filed so far they say, all we have to do is file a

15  notice in the Wall Street Journal and in, I think it was USA

16  Today, of the bar date and we're all set to go.  Well, Judge, I

17  hope we don't have to bring their expert in again to show that

18  they're wrong.  It's a much more ambitious notice program, as

19  you will know, and the program we used for the last bar date

20  was streamlined because we took Zonolite out of it.  That

21  program required television spots and a whole variety of

22  things.

23        So the only point I would make to discourage you from

24  the two columns is that there's enormous expense attendant to a

25  Zonolite bar date under column A.  That program I believe cost

1  three or four million dollars last time.  And to launch that,

2  to get people calling us incessantly about how his applies to

3  them, helping them fill out proof of claim forms, just the

4  overload on resources and the expenditures would seem to me to

5  be improvident unless we've gotten to the point where you've

6  concluded that a class proof of claim can't be used.

7           THE COURT:  Well, I think the issue is whether or not

8  Zonolite presents such an reasonable risk of harm that that

9  kind of specific notice so that a class can be certified goes

10 out.  I don't know that they're inconsistent, Mr. Baena, but

11 again, I haven't seen the motion so maybe I'd better wait to

12 address this until I get the motion and the objection period

13 in.  I'm not sure that they can't go out on parallel tracks,

14 but the expense may be a reason not to do it.  I'm just not

15 totally sure they're exactly one issue.

16          MR. BAENA:  Well, I don't wish to argue it today.  I

17 can -- I can conceive of reasons, Judge, the easiest of which

18 is if you start telling people that there's a bar date you'd

19 better advertise well that maybe they don't have to comply with

20 it or else you're going to have the problem that you were

21 trying to avert occur.  And it just seems to me --

22          THE COURT:  Well, I'm hoping that as soon as the New

23 Year is done Zonolite gets to the top of my list for

24 examination, so maybe it won't take all that long to get it

25 figured out anyway.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. BAENA: Okay. Thank you, Judge.

2          THE COURT: Mr. Lockwood?

3          MR. LOCKWOOD: Your Honor, I must say I find this

4  protocol mind boggling, really. The debtors originally filed

5  these motions. They wanted to have the disclosure statement

6  hearing today. Then they said, when Your Honor -- when we

7  said, gee, that's a little quick, they said, well, okay, we'll

8  put it off till January. We all worked like beavers for a

9  month to get ready to file these pleadings tomorrow.

10 Nonchalantly on Friday the debtors show up and say, well, gee,

11 you know, why don't we put off two of the four things that we

12 had on the agenda for 60 days and we'll just deal with one of

13 them first, and then if we have time maybe we'll get to the

14 second.

15          Well, number one, estimation, we accept the notion

16 that an estimation of the PI claims, I'm not going to speak for

17 Mr. Baena's constituency, but the PI claims is appropriate. We

18 don't think the way the debtor proposes to do it is appropriate

19 but we're prepared to deal with that on January the 21st and

20 we'll file or response to that tomorrow. The suggestion,

21 however, that the case management order is appropriate for

22 January 21st when the disclosure statement hearing is not is

23 just preposterous. I mean, we hadn't -- the draft that we are

24 proposing to file tomorrow on the case management order

25 basically says it's premature because we're -- it's predicated

1 on the notion that the plan of which it is simply a part will

2 be confirmed.

3       THE COURT: Yeah, I agree --

4       MR. LOCKWOOD: And we have disclosure statement

5 objections that we are, unless Your Honor tells us not to,

6 we'll file tomorrow.

7       THE COURT: Well, i think you ought to file them

8 because it seems to me --

9       MR. LOCKWOOD: And it will raise the two issues that

10 Your Honor -- in fact, it will only raise the two issues that

11 Your Honor wants briefed, because we took the position that

12 although we agree with Mr. Baena that the plan and the

13 disclosure statement are full of unconfirmable provisions, the

14 basic notion here -- and they don't -- nothing Ms. Baer has

15 said here indicates that they propose to change the voting

16 provisions, all they're doing is fiddling around with their

17 sisters, the Equity and the Unsecured Creditors Committee --

18 the unsecured I guess are going to get some more interest and,

19 you know, I don't know what the equity are going to get, but

20 I'm sure it'll be good for them, too -- but they're still going

21 forward with a plan that is premised on the notion that they

22 can get both a confirmation under 1129 and a 524(g) injunction

23 with no vote by asbestos PI ans asbestos PD. And that's just

24 poppycock. I mean, the PI claims are impaired, and indeed one

25 of the reasons they're impaired is because of the case

1  management order.  And even if they weren't impaired 1126(f)

2  doesn't apply to 11 -- 524(g).  As far as we can figure out,

3  reading between the lines in their plan, they seem to have the

4  idea that if they say they're unimpaired and therefore they're

5  deemed to, in the language of 1126(f), accepted the plan for

6  1129 purposes, that that's the same thing as voting by 75

7  percent in favor of the plan --

8            THE COURT:  Well, regardless --

9            MR. LOCKWOOD:  -- different terminology in a

10 different section with different legislative history.  Now --

11           THE COURT:  Regardless of that, it seems to me that

12 here's the issue.  If the debtor is going to be filing an

13 amended disclosure statement and plan, if you've got the

14 objections to the disclosure statement now ready to go,

15 frankly, I think you ought to file them, because the debtor can

16 then at least see them, have a little bit of time to consider

17 them, maybe be able to resolve some of them.  They -- maybe not

18 all of the major ones, but some of the minor things may be able

19 to be resolved.

20           MR. LOCKWOOD:  Well, we don't have any minor things.

21 That was what I was -- you had -- you had suggested earlier

22 that we brief the voting issue?

23           THE COURT:  Yes.

24           MR. LOCKWOOD:  That's what our disclosure statement

25 objections are going to tee up.  That's all we've objected to,

1  because remember, if we can't vote we don't really care what's

2  in the -- I mean, the disclosure statement as it's presently

3  written is aimed at the unsecured creditors and the equity.  We

4  don't -- we're sort of out there.  I mean, what's the

5  disclosure statement to us?  Why do we care?  I mean, it's

6  their plan, they, you know, they don't need us.  So --

7           THE COURT:  I wonder what the Wall Street Journal,

8  since I got promoted to District Judge but also learned a

9  lesson from Combustion that the unimpaireds should not vote

10  overwhelmingly about something that the impaireds should do

11  would think about the exact opposite situation when nobody gets

12  to vote?

13           MR. LOCKWOOD:  Well, moreover, they're using

14  unimpaired in the non -- in a medical sense, and here we're

15  using unimpaired in the sense Your Honor mentioned earlier,

16  which is entitled to be paid in full in cash on the effective

17  date or passed through, neither of which this plan does.  But I

18  guess what I'm saying is I believe that we can kill two birds

19  with one stone, if you will, where by we will at least file our

20  disclosure statement objections which -- address the two issues

21  that Your Honor thought would be appropriately briefed.  The

22  debtors can reply, and we can -- we can have that issue argued

23  on the 21st because, I mean --

24           THE COURT:  Well, let me ask, Mr. Lockwood.  Ms.

25  Baer, is the amended disclosure statement and plan going to

1 change this voting issue?  Because if not, I might as well get

2 that teed up now.

3           MS. BAER:  No, Your Honor, it does not change it.

4           THE COURT:  All right.  Then why don't we just file

5 the objections and at least use the 21st of January

6 productively for that purpose?  Mr. Baena?

7           MS. BAER:  Your --

8           MR. BAENA:  -- ask also whether they changed the cap

9 on payments to --

10          MS. BAER:  No, Your Honor.

11          MR. BAENA:  -- asbestos funds?

12          MS. BAER:  No, we have not.

13          MR. LOCKWOOD:  That'd be fine, Your Honor.  I think,

14 though, I think that'll make the January 21st hearing

15 considerably more productive, and we will accept the notion

16 that since they're going to file an amended plan and disclosure

17 statement we may well be back at a future date, but at least we

18 can get these overarching issues out and Your Honor can speak

19 to them, and I think that'll be useful guidance for everybody

20 in the process.

21          THE COURT:  All right.  With respect to the case

22 management order, I also am concerned about how I can actually

23 meaningfully address it until I know what the plan is that's

24 going to be of record.  I don't know what issues will have to

25 be adjudicated post confirmation.  I can take a guess at some

**J&J COURT TRANSCRIBERS, INC.**

1  of them but --

2         MR. LOCKWOOD:  Well, to some extent, Your Honor, our

3  objection on the impairment point addresses the case management

4  order from the perspective of what it does by way of impairing

5  claims.  And my own view of the matter is that when you think

6  about what the case management order is, I mean, normally a

7  case management order is something that Your Honor puts in

8  because it's -- she wants a case management in the case right

9  now that she's going to organize.  This case management order

10 would control proceedings in front of the District Court, not

11 this Court, the District Court, post consummation.  I mean, for

12 the -- I mean, I can understand why Your Honor might say, oh,

13 that's, hey, but I think the District Court might, for example,

14 have some ideas about whether or not based on estimation it

15 wants to have consolidated issue trial of 100,000 claims

16 directed at this trust, for example, but --

17        THE COURT:  Well, that's why I'm not sure that if

18 there's going to be something post confirmation it shouldn't be

19 part of a plan like a protocol that --

20        MR. LOCKWOOD:  In fact, that's what I believe this

21 case management order effectively is.  It is -- it is part of

22 the TDP.  If you look at their plan they've got a trust

23 distribution process which is -- which really is broken into

24 two pieces.  One is what they call the cash option in which you

25 make an election, interestingly enough, back when you file your

1 questionnaire for purposes of estimation, but you make an

2 election as to whether you want to settle under the matrix set

3 forth in the TDP or whether you want to litigate.  If you want

4 to litigate the case management order kicks in.  So there

5 really -- its TPD -- in the normal sense they'd be the same

6 document.  The litigation option and the settlement option

7 would be a single thing, it'd be called trust distribution

8 procedures.  They've split it them in two, put a label called

9 case management order on the second piece, which, as I say,

10 governs in the District Court litigation post consummation, and

11 now want Your Honor to pass on that in some way or another

12 totally divorced from whether the plan that justifies its

13 creation in the first place will ever get confirmed.  And we

14 just think that's preposterously premature at this point, that

15 Your Honor couldn't appropriately consider the issue outside

16 the context of the plan much less outside the context of what

17 the District Court may or may not decide to do with the

18 alternative, because the CMO, as Ms. Baer said, posits two

19 alternatives for you.  One is to approve the post-consummation

20 litigation option.  The other is to approve their pre-

21 confirmation litigation option, which when last seen was

22 sitting in the District Court awaiting the ruling by Judge

23 Woland and which is now presumptively in front of Judge

24 Buckwalter until he says differently.

25          THE COURT:  Well, with respect to the concept that,

1  you know, the District Court -- obviously I can't control the
2  District Court's calendar and schedule, but with respect to the
3  fact that a process can be set up, either through a CMO,
4  through a TDP, whatever you want to call it, but a post-
5  consummation -- confirmation process in the District Court, the
6  District Court, to the extent that there's going to be a 524(g)
7  injunction request, it has to sign off on the order anyway.  So
8  the District Court, even though all I'd be doing is making
9  recommendations, would still be controlling that end process.
10 I can assure you I'm not going to be signing something by way
11 of a final order that purports to tell a District Court Judge
12 how to try a case, so.

13        MR. LOCKWOOD:  Right, and that CMO piece of the TDP
14 would come before --

15        THE COURT:  Right.

16        MR. LOCKWOOD:  -- the District Court once this Court
17 rules on confirmation of the plan, which is a long way down the
18 road, so why are we talking about the CMO which is in effect
19 effectively a part of that now, that --

20        THE COURT:  All right.  So for the 21st think we
21 should go forward with at least these couple of issues on the
22 disclosure statement.  I think the objections maybe should be
23 filed simply so that to the extent they raise legal issues and
24 the amended documents are not changing that concept, then at
25 least we can get past those issues.  I'm willing to hear the

1  ZAI motion, then, too, I haven't seen it, if parties can get

2  that teed up.  I simply don't know at this point what it says

3  or --

4          MS. BAER:  Your Honor, if I might kind of direct this

5  back, the first thing that we think absolutely has to be taken

6  up, and I don't think anybody on that side disagrees, is

7  estimation.  Estimation with respect to PD, estimation with

8  respect to PI and estimation with respect to ZAI, the process,

9  getting the bar dates, approving the claim form, approving the

10 PI questionnaire, that's the first and foremost thing that has

11 to be taken up, no matter what plan we ultimately have in this

12 case.

13         THE COURT:  Okay.  That's fine.

14         MS. BAER:  And that's the first thing we're asking

15 get heard on the 21st.

16         THE COURT:  Anybody object to that?

17         MR. LOCKWOOD:  No, Your Honor, but I would point out

18 that --

19         THE CLERK:  Speak into a mike, please.

20         MR. LOCKWOOD:  -- I would point out that with respect

21 to the PI part of the estimation many of the objections to the

22 process are aimed at issues that are also related to the plan,

23 i.e. what sort of elections you have to make.  But in

24 principle, in terms of teeing up the issue of estimation, we

25 agree with Ms. Baer that we should start on the process.  My

 1 | guess is the Court will determine that the issues are

 2 | sufficiently complex on the 21st that other than sort of moving

 3 | forward with the idea of an estimation and deciding whether you

 4 | versus Judge Buckwalter is the appropriate person to do it, it

 5 | may require some more scheduling discussion but --

 6 |         THE COURT:  Well, I don't expect to do an evidentiary

 7 | -- I'm not starting --

 8 |         MR. LOCKWOOD:  -- but we should --

 9 |         THE COURT:  -- an evidentiary hearing on estimation,

10 | but --

11 |         MR. LOCKWOOD:  -- but right --

12 |         THE COURT:  -- to discuss the process --

13 |         MR. LOCKWOOD:  -- but --

14 |         MS. BAER:  Your Honor, it's just the process.

15 |         THE COURT:  Yes.

16 |         MS. BAER:  You can't.  We're asking for a bar date.

17 | We're asking for a bar date notice to go out.  We're asking for

18 | the kind of publication we want to do to get approved.  On ZAI

19 | it's the same thing, Your Honor.  It's just the process.  We're

20 | asking for a simple bar date, a simple proof of claim form.  We

21 | will have a publication notice program attached to it.  That's

22 | what we're asking for you to consider at the hearing.

23 |         THE COURT:  I'll look at it and see what responses

24 | come in, but that one, until I get through the summary judgment

25 | process and decide whether class proof of claims are actually

**J&J COURT TRANSCRIBERS, INC.**

1  appropriate, I just don't know about. I'm not convinced that
2  they're inconsistent, but --

3         MS. BAER: Your Honor, we don't think they are at
4  all, and we simply are trying to move the process along as
5  quickly as we can, and by getting that bar date and getting
6  that notice out there at least we can get in people who are in
7  fact interested here. Your ruling will be very key with
8  respect to what happens to those claims, the allowability of
9  the claims, the value of the claims, which again is key to
10  estimation, but there's no reason not to get the process
11  started now --

12         THE COURT: All right.

13         MS. BAER: -- and that's what we're going to on that
14  one.

15         THE COURT: Okay. Folks, we've got to move. I'm way
16  behind. So let's go. Let's get rid of this issue. It's
17  enough. It's for January 21st. Mr. Baena?

18         MR. BAENA: Is counsel suggesting that this new
19  motion is going to have a notice program in it? We have to vet
20  that notice program by the 21st?

21         MS. BAER: We will have a notice program in it, Your
22  Honor.

23         MR. BAENA: Judge, I have a notice expert, too, and
24  we haven't spoken to him since the last time we did notice.
25  You know, Judge, today is the 20th.

**J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:  Well, that's a month.

2          MR. BAENA:  And we've got holidays in between.

3          THE COURT:  Mr. Baena, that's a month.  Lawyers work

4 over the holidays all the time.

5          MR. BAENA:  Well, Judge --

6          THE COURT:  They tell me that.  I read their fee .

7 applications

8          MR. BAENA:  But how do I know that my notice expert

9 is working all that month?  I know I'm not --

10          THE COURT:  Because he wants to get paid, too.

11          MR. BAENA:  -- I'm not -- Judge, that's a very

12 ambitious agenda, and I'm not the spokesperson, as you know,

13 for the folks that are involved in the trial before you, so

14 it's particularly difficult for me to sit here and nod

15 affirmatively about this proposal.

16          THE COURT:  Well, I think what we ought to do is get

17 the motions filed, get the response dates and, Mr. Baena, if

18 people haven't had an adequate time because of the holidays

19 then maybe it's just going to have to be pushed off, but let's

20 at least get it on for a status conference, see what objections

21 can come in or what agreements come in, because the process has

22 to start somewhere, and this is as good a place to start as

23 any.

24          MR. BAENA:  I understand, Judge, and I'm not pushing

25 back on anything other than the Zonolite notice program and --

1          THE COURT:  Well, I --

2          MR. BAENA:  -- proof of claim form and --

3          THE COURT:  -- I'll take that third out of the three

4   of the notice programs that we're going to look at and see

5   where it goes.  I don't know, since I haven't seen the motions,

6   what's going to be involved.  Frankly, at this point I'm more

7   interested in getting the disclosure statements, these couple

8   of issues under way, because if this plan's not confirmable I

9   want the debtor to know that up front so that it gets modified

10  in time to have a meaningful plan, and the estimation issues

11  will, I think, take some time longer than amending the

12  disclosure statement.  So we ought to start on the estimation

13  and getting something teed up, and we ought to get the

14  disclosure statement issues set, I think.

15         MR. BAENA:  Judge --

16         MS. BAER:  -- Your Honor, the concern I have is the

17  estimation vis a vis PI/PD/ZAI itself is going to take up the

18  time and the focus in January.  Does it really make sense for

19  everybody to be briefing these issues vis a vis disclosure

20  statement addressing those at the same time?

21         THE COURT:  If they're telling me that they're not

22  going to be prepared because the motions haven't been filed yet

23  to address them in January but they are prepared to address the

24  disclosure statement issues because the disclosure statement

25  has been filed and their objections are ready, I'm going to

**J&J COURT TRANSCRIBERS, INC.**

1 hear the disclosure statement issues and we'll push off the
2 estimation issues.

3        MS. BAER:  Then, Your Honor, what I'd ask for is a
4 little guidance.  We're expected, unless Your Honor extends the
5 deadline, to get a lot of objections to the disclosure
6 statement that do not go to the core issues.  They're the basic
7 disclosure statement objections.  And we're getting constant --
8 bombarded, as you can imagine, by requests from people for
9 additional time, and my response is if Your Honor continues the
10 deadline then I can continue it, otherwise we're in the
11 position of having to respond to all of those by January 4th.

12        THE COURT:  It seems to me they ought to be filed.
13 The objections ought to be filed so that the debtor can see
14 which ones you can resolve in an amended disclosure statement
15 without needing to go forward.  If you're going to amend the
16 disclosure statement anyway there may be numerous objections
17 that you will agree you can correct or add to or whatever
18 without litigation, and then you can do it.  Your response
19 simply can be that, you know, we'll take care of this in an
20 amended disclosure statement.  But with respect to these big
21 issues I really think they ought to be teed up.  We should just
22 get them argued in January.

23        So with respect to the debtor's time to respond to
24 them I am more concerned at this point about getting responses
25 in to the voting issues than I am to anything else.  With

1  respect to smaller things that you think will be corrected in

2  an amended disclosure statement I think it would be

3  satisfactory to say the debtor, you know, hopes to cure this in

4  an amended disclosure statement and let it go at that.  And I

5  don't expect to argue every issue.  I expect to argue the

6  couple of issues I've raised on the record today on January

7  21st.  I'm not going to get into the nitty gritty substance of

8  the disclosure statement when the debtor's telling me you're

9  going to change it.

10          MS. BAER:  -- Your Honor, it was our intention to

11  file an amended plan and disclosure statement just vis a vis

12  the matters that changed because of the Unsecured Creditors

13  Committee, Equity Committee joining us.  None of these other

14  matters will change in the -- in the plan and disclosure

15  statement at all.

16          THE COURT:  Oh, well, then let's just do the

17  objections and get them teed up.  I mean, if that's -- if there

18  is not going to be a significant change in the disclosure

19  statement but you've resolved something with the Equity

20  Committee for its distribution and the unsecured creditors,

21  then I think you can do a supplemental that says, you know,

22  we're going to amend it to say that the Equity Committee's

23  going to get, I'll make this up, a hundred shares of stock, you

24  know, and that unsecured creditors are going to get six percent

25  interest, then life will go on.  We don't need to worry about

1   those issues.   But if there -- there are some structural issues

2   in this disclosure statement and plan that are unlike other

3   cases that I've seen.   I'm sure people want to be heard about

4   them, and I want to hear the arguments about them.   So let's

5   just stick to the deadline the way it's crafted, then.

6          MS. BAER:   And, Your Honor, I believe there are also

7   likewise deadlines on the case management order request and on

8   the solicitation order.   Again, all the deadlines for responses

9   are tomorrow, and I think our reply is the 6th or the 4th, I

10  can't recall.

11         THE COURT:   Well, if you want them -- if you want

12  them even for a status conference on the 21st we ought to stick

13  to those deadlines, although on the case management order I'm

14  really not sure how I'm going to be able to enter anything on

15  that till I know what the plan and disclosure statement are.

16  So it would seem to me that the order ought to be the

17  disclosure statement issues, then the estimation issues.   We

18  could push off the solicitation issues and the case management

19  issues until after there's a ruling on the others, I think,

20  because you need rulings, but I don't think you need them now.

21         MS. BAER:   Well, Your Honor, we've been trying to get

22  a case management order since day one of this case.   It's

23  always been possible to get those procedures going again no

24  matter what the plan and disclosure statement say.   We come

25  back to the same thing today.   Once again we're trying to get

1 case management order -- case management procedures in place,

2 and once again it's being delayed.  It does not have to wait

3 for the disclosure statement and plan to be approved.

4          THE COURT:  But it does because Judge Buckwalter has

5 it.  I can assure you --

6          MS. BAER:  He has the old one.

7          THE COURT:  Well --

8          MS. BAER:  He has the old one.

9          THE COURT:  -- but what can I do when he's got one?

10 You know, get it back here.  I assure you I'll be happy to hear

11 it.  I'd like to get a case management order in place.  Whether

12 it's pre or post confirmation, I don't care.  I just want to

13 get one so that we can move this case along.  So get it back in

14 front of me and I'll run with the ball.  But until it's --

15          MS. BAER:  We're trying.

16          THE COURT:  -- here I don't have a ball to run with.

17          MS. BAER:  We're trying, Your Honor.

18          MR. BAENA:  Judge, may I ask for the Court's

19 indulgence?  Given that we are -- we're actually -- we're here

20 through tomorrow because of US Gypsum and we're meeting with

21 Judge Conte tomorrow, could we have until Wednesday to file

22 this so that I have an opportunity to go back to my office and

23 fix our presentation in accordance with the discussion today?

24          THE COURT:  How much extra time will the debtor need

25 to respond?

# Exhibit B

Relevant Portions of Transcript From December 18, 2002 Hearing

1  know who the members of the class are.  And if the debtor loses

2  on the scientific side, and it turns out to be that big a

3  class, the debtor faces that whether it's in through individual

4  liability claims or whether it's in through a class.

5          MR. BERNICK:  Oh, we won't -- that's the problem with

6  this.  Ultimately -- let's assume that we went forward.  We

7  would never -- we would never go through the process of finding

8  out exhaustively how many of these people there are, it won't

9  happen.  We couldn't conclude the case.

10          Instead, what will happen is that Your Honor and

11  Judge Wolin and everybody else will want to figure out some way

12  to resolve this claim on the basis of the creation of the fund.

13  And at that point, it is purely a question of who's got the

14  leverage, and that's what -- that is what they want.  That is

15  why we are here, is that they would like to go forward, create

16  that class and have it -- that's exactly what the Seventh

17  Circuit decided, just sitting out there and say, come and do

18  business with me.

19          And what really sticks in our craw about that,

20  frankly, is that not only do we think the science is good, and

21  I think Your Honor appreciates that, but you're operating in

22  the context of a Chapter 11 that was filed where the history

23  was that there were zero of those claims.  And effectively in

24  one stroke, we've now taken a Chapter 11 where there was no

25  litigation history in this area, a tremendous amount of

1  litigation history courtesy of Mr. Lockwood, and you've now
2  created a totally different situation where he's no longer the
3  big guy in town because there's an even bigger guy in town.
4           THE COURT:  Ain't it grand what bankruptcy does for
5  you.
6                          (Laughter)
7           MR. BAENA:  Your Honor, if I can make a couple of --
8           MR. BERNICK:  I certainly --
9           MR. BAENA:  If I can make a couple of observations?
10          THE COURT:  Yes.
11          MR. BAENA:  May it please the Court, Scott Baena on
12  behalf of the Property Damage Committee.
13          Your Honor, since September 1, we filed our response
14  to the proposed case management schedule and activities.  We
15  have been saying exactly what Your Honor articulated today, we
16  think the process is upside down as described by the debtor.
17  And I think he's come very close to explaining why it's upside
18  down in their view of the bankruptcy scheme of things.  He
19  calls it leverage, but what I would prefer to characterize
20  their strategy to be is to create a process which is doomed
21  from the outset such that people fail to file proofs of claims
22  and so we minimize the effect of an adverse ruling on science,
23  which is what we fully expect will happen.
24          THE COURT:  Well, I think -- Mr. Baena, I mean I
25  guess I'm playing devil's advocate.  But, frankly, I think it's

1 an issue that's capable of resolution of any number of ways and

2 that's only one.

3        It seems to me that with respect to the debtors'

4 proposal, to do the notice, not necessarily of the proofs of

5 claim, but the notice of the fact that there is an issue as to

6 whether or not Zonolite does create some property damage and

7 puts people to the task of discovery, whether they do or don't

8 have Zonolite so that they can file a proof of claim has merit,

9 too because at some point, this estate needs to know whether,

10 A, there are such people.  And, B, how many of them there are.

11 And, C, what the class is going to be.

12        And despite everything, you and Mr. Lockwood continue

13 argue to me, and you continue to lose this argument, and you're

14 not going to fare any better today, there will be proofs of

15 claim filed in this case somewhere, somehow by somebody.  It's

16 not going to be an issue that's going to be left to a trust to

17 resolve.  We're going to know how many claims there are before

18 this case gets to plan confirmation.

19        MR. BAENA:  We've resigned ourselves to that fact,

20 Judge.  And we're working on that basis.

21        But if I may react, I think that, first of all, there

22 is an entirely different outcome when you have a notice program

23 in the context of a class action and when the notice is

24 directed at allowing claimants to opt out of a class as opposed

25 to a notice program that is intended to facilitate a proof of

1  claim regimen, the effect of which is if you fail to file the
2  proof of claim by the bar date, you're out of the program
3  altogether, as opposed to you just didn't opt out if you didn't
4  comply with whatever it is you're required to do in the context
5  of the class action.

6          So, they are absolutely diametrically opposed notice
7  programs.  What you seek to accomplish in the proof of claim
8  notice program is to eliminate claimants, and that's what
9  they're trying to do.  They're trying to eliminate claimants.

10         In the event that their science position is wrong,
11 which, again, we suspect is wrong, this is their second bite at
12 the apple.  This is their belt and suspenders.  This is how
13 they're going to minimize the effect of that 800-pound gorilla,
14 so to speak.

15         So, it's not simply because we have to get there
16 anyway, Judge.  It's not simply because we're going to spend
17 the money anyway, Judge.  It's a very different purpose which
18 they attempt to serve by getting you to push that notice
19 program on this side of the bar date line.

20         And I think it's also worth observing that the
21 problems we have with the existing notice program, in large
22 part, relate to the Zonolite issues.  The fact is there is the
23 threshold issue of whether you can ever devise a program for a
24 proof of claim purpose that will sufficiently satisfy minimal
25 motions of due process, get the notice to people who are unwary

1  of the situation that they're confronted by both in respect of

2  the product being in their property and, secondly, that because

3  it is, they have to file a proof of claim.

4          So, we have this initial concern that you're not

5  going to be able to develop a notice program that we're all

6  going to necessarily feel real good about when we're finished.

7  And if we move that notice program to the more conventional

8  point in time in the context of a class action, it's an

9  entirely different exercise and we can feel better about that

10 program.

11         In addition, the notification program forces -- in

12 the proof of claim context, forces claimants to do something

13 that some people say they shouldn't be forced to do, and that

14 is to determine whether or not they have this product.  And

15 that determination of itself can cause a dangerous situation to

16 occur.  You saw the objection that was filed by the EPA, I'm

17 sure, which focuses on that one issue.  We'd better tell people

18 that if you go looking to see if you ought to be included in

19 this bankruptcy, you might hurt yourself.  You might cause the

20 product become friable.

21         So, I think the approach that the Court is looking at

22 is a much more logical way to approach this.  It eliminates all

23 the problems we have about the notice program or the context of

24 the proof of claim.

25              THE COURT:  Well, what about the concept of doing it

1  on, I guess, a limited basis.  Rather than setting the bar date

2  for all Zonolite plaintiffs now, to essentially set it for a

3  group of Zonolite claimants now, but not everybody, so that we

4  have -- I'll use the word test case.  So, we have a couple of

5  test cases.

6        So, for example, we set it for the whole State of

7  Washington and, therefore, we already have a class that's been

8  certified, although no notice has gone out, and we use those

9  folks to file a proof of claim as the test case for the

10  scientific issues.

11        Now, I agree, that outcome would not be binding on

12  those entities who have not yet filed proof of claim.  But the

13  fact is that unless the science changes significantly in those

14  couple of months between when some order is issued deciding

15  whether there is or isn't liability and when the next bar date

16  notice would go out for everybody else, the likelihood is that

17  the next outcome is going to be very similar, it's not likely

18  to be changed.  And that probably would be pretty good evidence

19  for everybody else.

20        MR. BAENA:  That might be a sensible approach.  I

21  would suggest that whoever's had a certified class action --

22        THE COURT:  Right.

23        MR. BAENA:  -- in respect to Zonolite ought to be

24  involved in that process so that they can't complain later on.

25        THE COURT:  Well, that makes sense.  Maybe a -- I'll

1  use the word committee loosely, I don't mean an official

2  committee, but maybe a committee put together to decide who the

3  named representatives of -- again, I hate to use the word

4  class, but that entity, that class.

5          MR. BERNICK:  That's the problem is --

6          MR. BAENA:  The litigants.

7          MR. BERNICK:  -- as soon as you would recognize that

8  class in this bankruptcy, it really is no different from what's

9  up on the board.

10         My proposal is that we simply use whoever it is

11  that's filed the claim, i.e. the class representatives, to be

12  our group of individuals who would then fee-up the common

13  issue.  I just want to be clear to the Court that as soon as

14  you go make it a class litigation, you know, it may be only the

15  State of Washington or -- I don't know, I think the South

16  Carolina class actually is nationwide.  But whatever it is,

17  you're now talking about something, that 45 million.  We would

18  be required to preserve our rights, to seek to be certified in

19  that class right away.

20         THE COURT:  But you just made this proposal.

21         MR. BERNICK:  No, I made -- the proposal -- that's

22  what I was going to say.  The proposal that I made was that

23  rather than send out a notice and get all of the individuals to

24  file --

25         THE COURT:  Right.

1        MR. BERNICK:  -- that we would use the individuals

2 who already have filed claims, i.e. in the context of class

3 litigation.  They would be the individuals who would be in

4 court --

5        THE COURT:  You're using the word claim, and I'm

6 thinking of bankruptcy proofs of claim, and you're not talking

7 about bankruptcy claims.

8        MR. BERNICK:  I'm -- I understand.  So, we can take

9 what is their existing lawsuit and use those as the claim.  In

10 point of fact, we would actually have the power under Section

11 147 to actually remove and transfer those claims here.  So, the

12 individual claims, even without a notice, to be brought before

13 the Court as claims and, therefore, used for purposes of this

14 proceeding, the proposal is to use a pre-certified class and

15 bring it in to this case, then we're back into the same world.

16 We don't believe that Rule 23, A, belongs here.  And, B,

17 certainly doesn't belong in the same set of circumstances and

18 that's very clear under American Reserve.  So, we have to go

19 down the road and, again, litigate this -- so, my proposal is

20 avoiding this altogether, proceeding with individual claims,

21 but using the people who already had stepped forward as being

22 the test claimants.

23        THE COURT:  Well, if you use them as individual

24 claims or use them in the limited class, I don't think it's

25 going to make much difference in terms of -- the certification

1  issue is different.  But in terms of getting the scientific

2  trial, I don't think it's going to make much difference.

3          MR. BERNICK:  It makes a difference only if you say

4  that that limited class is not confined just to them, but it's

5  the State of Washington.  That's a pretty significant

6  difference.

7          MR. BAENA:  Judge, it doesn't make any sense for us

8  to find a date within the next week where during this period of

9  time we can confer, see if we can come up with an agreement

10  this way we can contact the class counsel that are out there.

11  And, you know, within the next week.  I'm not trying to

12  postpone this indefinitely.

13          And then come back to the Court with a proposal or

14  counter proposals.

15          MR. BERNICK:  I'm not sure -- I mean I would be happy

16  to take proposals from counsel.  But, frankly, this I think is

17  now the third argument that we've had.  And there is a very

18  bright line, the bright line is are you talking about a class

19  trial, a certified class or not?

20          Because it's not something that we've got any

21  discretion, it is just a huge difference --

22          THE COURT:  Well, I think what Mr. Baena is saying is

23  he needs some time perhaps to see whether they can agree to

24  looking at what you're now calling individual claims, i.e. the

25  people who are members -- who are class representatives in the

1  State of Washington, and use them as the test case for the

2  scientific side, correct?

3        MR. BAENA:   Correct.   I'm in no position to speak for

4  Anderson or those folks, and I'm not trying to delay anything,

5  Judge.   I want to --

6        THE COURT:   It seems to me that we ought to get to

7  the scientific side of this promptly.   Because, number one, I'm

8  not sure it makes a lot of sense to notify people who may have

9  Zonolite in their homes that they may be exposed to significant

10  risk if, in fact, they're not.   Because that could be creating

11  a panic of some sort that's not really justified if the

12  scientific evidence doesn't warrant it.   So, I've got that to

13  decide.

14        By the same token, if the scientific evidence does

15  warrant it and they do need to be made aware of the problems

16  should they disturb the Zonolite in their attics, then we

17  probably ought to know that.   And do that form of notice before

18  we require people to file proofs of claim.

19        So, no matter how you look at it, it makes more sense

20  to litigate the science of this first.

21        MR. BAENA:   Are you going to treat that, Your Honor,

22  just to put a little definition on this, are you going to treat

23  that as a bifurcated issue in the estimation process as opposed

24  to the litigation of the respective claims?   I mean there's all

25  sorts of jury trial issues, I'm sure, that are implicated.

1          MR. BERNICK:  Personal injury cases, there's no jury
2    trial.
3          THE COURT:  Well, the jury trial issue is for people
4    who will file claims here for property damage.
5          MR. BERNICK:  I think that that's a very important --
6          MR. BAENA:  They haven't filed a claim yet.
7          THE COURT:  Well --
8          MR. BAENA:  That -- we haven't gotten to that point
9    yet.
10         THE COURT:  Right.  They haven't filed a claim here,
11   but the debtor can file the claim for them.
12         MR. BAENA:  Okay.  I'm just --
13         THE COURT:  Because the meet's well passed --
14         MR. BAENA:  Is the notion, though, that this is part
15   of an estimation process or is this part of a class
16   certification process or --
17         THE COURT:  I think it would be used for both
18   purposes frankly because I think in order to get the class
19   certified, and we have to know that there is likely to be a
20   class that could sustain damage.  So, I think it would stand
21   for both of those --
22         MR. BAENA:  There is a hearing pending before Your
23   Honor on the 22nd of April, you know that, on the motion to
24   certify the class in Zonolite in the adversary proceeding.
25         MR. BERNICK:  No, it's just a motion to dismiss.

1          UNIDENTIFIED ATTORNEY:  Just a motion to dismiss.

2          MR. BAENA:  No -- well --

3          THE COURT:  I think it's the motion to dismiss, not

4    the motion to certify.

5          MR. BAENA:  I apologize.

6          MR. BERNICK:  Which I -- just on this business of

7    estimation, because it's a property claim, not a personal

8    injury claim, Your Honor is fully empowered to rule on the

9    merits of the claim.  So --

10          THE COURT:  Oh, sure.

11          MR. BERNICK:  So, I don't know what -- for purposes

12   if we have claims that are brought in here, we try those

13   claims.  And I don't know whether -- I suppose you can say

14   maybe, you know, it has some potential use, either on class

15   certification considerations down the line or on estimations.

16   But the process itself liquidates those claims.

17          THE COURT:  Well, the process liquidates the claims.

18   But at this point in time, I wasn't thinking of getting to the

19   damage issue.

20          MR. BAENA:  Right.

21          THE COURT:  Which is something that would both

22   liquidate the claim and go to the estimation.  I'm only looking

23   at the liability side to see whether the debtor is liable at

24   all.

25          I think you've raised, Mr. Bernick, and I think it's

1  quite correct, in this issue where there has been no test of

2  the scientific side by way of an adjudication before this

3  bankruptcy was filed, the debtor should know whether it is

4  subject to liability on that score, and so should the creditor.

5  And I think that piece ought to be determined before we alarm a

6  lot of potential people who have Zonolite in their attics that

7  there may or may not be some detriment as it turns out.  I

8  don't know what the answer will be, but either way, it doesn't

9  make much sense to alarm them until we know that there is

10 reason to do it.  And right now, as I sit here, there seems to

11 be a big challenge as to whether there is reason to alarm them.

12 So, we ought to figure that piece out.

13         And then if there is, we ought to structure a notice

14 program that makes sense to advise people about what the

15 potential risks are and how they can minimize the risk and what

16 they need to do in order to finish filing a claim here.

17         At that point, I think we can determine whether it's

18 necessary to do a lot of individual claims or look at a class

19 certification.  But I think we need to get to that science

20 first.  I think to do everything else is putting sort of the

21 cart before the horse and --

22         MR. BAENA:  So, we are not determining individual

23 versus class proof of claims --

24         THE COURT:  Right.

25         MR. BAENA:  -- at this point in time.

1          THE COURT:  No, I would think we would not need to do

2  that until the science is decided.  Once the science is

3  decided, then we're right back in the seat that we're in today.

4          MR. BAENA:  Do you think you need a class proof of

5  claim though to bring on the scientific issue?

6          THE COURT:  Well, that's what I was suggesting

7  earlier.  I'm not sure we do, though, to the extent that either

8  -- for example, the named plaintiffs in the Washington suit

9  that Barbanti plaintiffs, for example, if we would simply get

10 them to file the proofs of claim and litigate the issue in that

11 context, or have the debtor file the proof of claim for them

12 and then litigate the issue in that context, I think we could

13 get to it in sort of a mini trial.

14         MR. BAENA:  Again, as a class proof of claim?

15         MR. BERNICK:  No --

16         THE COURT:  Well, it's not really a class proof of

17 claim.  It's the consolidated trial as to any of those

18 plaintiffs who have filed proofs of claim.

19         MR. BERNICK:  It is --

20         MR. BAENA:  As to the class representatives then.

21         THE COURT:  Yes.

22         MR. BAENA:  Their proof of claims.

23         THE COURT:  Yes.

24         MR. BERNICK:  But in this practical matter, the only

25 thing that we would really have to do to bring those claims

1  before the Court, as Your Honor has indicated is that those

2  lawsuits have been pending against Grace.  We can simply import

3  to this Court those underlying lawsuits.  There doesn't even

4  have to be a proof of claim.

5        THE COURT:  That's true, too.  And that eliminates

6  somewhat with your issue and Mr. Lockwood's issue at the moment

7  about filing the proofs of claim.

8        MR. LOCKWOOD:  Your Honor, could I interject

9  something here?  I hate to sound like a technical nitpicker,

10 but I'm getting a little bit concerned about the interplay

11 between the bar dates to the class determinations.  First,

12 you've got a motion to dismiss an adversary proceeding,

13 adversary proceedings technically are not the way to present

14 claims.  I think that's probably right.

15       We also have something called a motion for permission

16 to file a class proof of claim.  I don't think we need --

17       FEMALE SPEAKER:  Mr. Lockwood, would you step up to

18 the microphone?

19       MR. LOCKWOOD:  I don't think you need permission to

20 file a proof of claim.  You can file -- anybody can file a

21 proof of claim.  It may get objected to, and it may get thrown

22 out on any one of a number of grounds, but people come in, they

23 file proofs of claims.

24       And, indeed, that's what Judge Newsome determined in

25 connection with the class proof of claim issue in the Armstrong

1  case.

2          THE COURT:  Well, I don't know about in Armstrong, I

3  mean one of these cases, though, he had had a bar date that

4  already passed.

5          MR. LOCKWOOD:  I understand that.  But I think -- but

6  you can file a claim in advance of a bar date and that's one of

7  the things I want to focus on here.  People could file a proof

8  of -- a class proof of claim on a national class, on a state

9  class, whatever here.  The debtors could object to that proof

10 of claim.  The people could file individual proofs of claims.

11         The problem that we've got here is the interplay

12 between the bar date --

13         THE COURT:  Right.

14         MR. LOCKWOOD:  -- and the class proof of claim.

15 Frankly, it seems to me one of the things we might want to

16 consider is whether or not we should essentially suspend the

17 idea of having a bar date on the Zonolite proofs of claim for

18 the time being.  Let somebody file a class proof of claim.

19         The first thing you need to do, by way of an

20 objection, is determine whether or not a class proof of claim

21 is maintainable in a bankruptcy case, if so, what would the

22 class be, that's the certification, if you will, of the class

23 proof of claim.  There's a multiplicity of potential classes

24 that we're talking about here.

25         Mr. Bernick is right, I hate to agree with him about

1    anything, but he's right.  Once one determines that there's a

2    class here, you have to determine which subsection of 7023(b)

3    it's under.  And that determination will have consequences.

4                THE COURT:  Oh, sure.

5                MR. LOCKWOOD:  We can't just sort of say, well, gee,

6    we'll have a class for purposes of assignments trial.  But if

7    we don't like the outcome, we won't have a class anymore.

8                THE COURT:  That's right, which is why the concept of

9    taking a look at -- well, I guess a Rule 42 common issues at

10   trial with respect to a limited number of claimants probably

11   makes sense.  Because to the extent that the science doesn't

12   support it, there's no need to go through that.

13               MR. LOCKWOOD:  Well, I understand, Your Honor.  But

14   then that gets me back to my comment about technical.  Let's

15   assume somehow or another we get some -- we'll call them a test

16   case because that's really what we're talking about here,

17   somehow or another, we identify some group of plaintiffs

18   whether they be putative class representatives in Barbanti or

19   the Boston or South Carolina, whatever, and we have a

20   litigation involving the science and those lawyers.  Certainly

21   from a technical point of view, the results of that litigation

22   are not going to be binding on anybody but those plaintiffs,

23   and that's true of collateral estoppel as well because you

24   couldn't use non-mutual collateral estoppel for a defense win

25   against plaintiffs.

1        So, what we're really betting on if we go that route

2  is that the people who lost that case who presumably are going

3  to want to appeal the loss will be ultimately satisfied that

4  the loss will be definitive and they won't want to come in and

5  demand the opportunity to re-litigate the loss, having seen

6  what happened to them the first time and saying with a group of

7  plaintiffs and a different group of lawyers, well, you know,

8  Mr. Sobol had a bad expert or he didn't have enough experts or

9  --

10        THE COURT:  But that's irrelevant I think because if

11  there is some scientific evidence that shows that Zonolite

12  really is creating some sort of a problem, it's only the

13  liability that will lead to massive numbers of claims.  The

14  real purpose for looking at this is to see, A, what type of

15  notice we're going to bring and, B, what type of class.

16        So, if we get the science decided first, then we know

17  whether either or both of those makes sense and we have a whole

18  lot more information in which to determine the type of

19  certification.

20        MR. LOCKWOOD:  Your Honor, the science is going to be

21  a battle of experts.

22        THE COURT:  Sure.

23        MR. LOCKWOOD:  And the -- who wins and who loses in

24  that battle may depend on who the experts are and who selected

25  the experts and how well they prepared the experts and a

1  different group  --

2          THE COURT:  That's always the case.

3          MR. LOCKWOOD:  Yeah, but a different group of

4  plaintiffs or defendants with -- well, not defendants, we

5  always got the same defendant.  But a different group of

6  plaintiffs as they lose the first go around might decide they

7  can come up with a better group of experts.

8          THE COURT:  They may very well do that.

9          MR. LOCKWOOD:  And how can this Court tell them that

10 they can't do that?

11         THE COURT:  Because in that context, what I may be

12 able to do is say, you might very well be right and we're going

13 to certify a class and we'll do it one more time, but this time

14 we're going to do it with a class-appointed expert, and then we

15 bind everybody.

16         But at least we have an idea as to whether or not

17 it's necessary to go that step.  Because if there is no

18 scientific basis for it, there's no need to, A, do the notices

19 or, B, certify a class.

20         If there is scientific support, then at that point, I

21 think you've got a whole lot more information to determine what

22 the potential scope of that liability is, what kind of

23 scientific damage -- scientific evidence will support what type

24 of damage and what type of class, if any, is appropriate.

25         MR. LOCKWOOD:  Well, remember, it's not just

1  scientific evidence, it's scientific evidence proving by a

2  preponderance that there's a cause of action for --

3          THE COURT:  Well, of course.

4          MR. LOCKWOOD:  -- for property damage which would

5  include whether it needs to be abated or whether it needs to be

6  remediated or whether it needs to be covered up.  That's not

7  just damage, that's part of the underlying determination of

8  whether there's a property damage claim at all, whether there's

9  an injury, if you will.

10         THE COURT:  Well, that may be.  And it may also be --

11 it may also lead to the conclusion -- a hypothetical.  Let's

12 assume we get 500 individual claims that are filed, no class,

13 just 500 individual proofs of claim.  And 250 of them say my

14 damages are $1,000 because I want to put some sort of seal in,

15 and that's what it's going to cost me to seal the Zonolite.

16 And the other 250 say I want $7,000 because I'm going to do

17 renovations to my house and I -- and since this stuff has to be

18 taken out, and that's what it's going to cost.  It may well be

19 that those two shouldn't be in the same either class, for

20 purposes of Rule 23 class, or class for purposes of plan

21 confirmation.

22         MR. BERNICK:  And it could -- just to pick-up on

23 that, and I think the general opinion remains that information

24 will come out of this process that certainly will better inform

25 the proper disposition and procedures surrounding these claims.

1  We may find out that the exposure conditions to begin with were

2  very, very different, depending upon the nature of the

3  application, that the risks are very different.  And that could

4  obviously effect any effort to certify the class.

5          There's also another word that I know will get Mr.

6  Lockwood's goat, at a certain point there's also a <u>Dalbert</u>

7  issue here.  And <u>Dalbert</u> is not confined to any individual

8  claims.

9          MR. LOCKWOOD:  Well, Your Honor, I'm going to turn

10 things over to Mr. Scott, but I just -- the one thing I want to

11 say from my perspective is that before we have any

12 determination by this Court, either that a class proof of claim

13 should be allowed on a class basis and/or that a class should

14 be certified, I do think we need to have a full fledged

15 briefing of that issue, as well as discovery, et cetera.

16          THE COURT:  Oh, yes.

17          MR. LOCKWOOD:  Right now, I mean the way the papers

18 have been teed-up, we're sitting here talking about whether

19 there should be a class claim or not.  And, frankly, we're not

20 ready to have you decide that.

21          THE COURT:  And I'm not ready to decide it by a

22 longshot.  I tried to tell you that this afternoon that I just

23 wanted to have a discussion as to whether or not this actually

24 was a vehicle which got you all to where you need to be, at

25 least, and if it does, you ought to take advantage of that

1  opportunity.  That's how I thought I started this discussions.

2           MR. SCOTT:  That is how you started it, Your Honor.

3  My name is Darrell Scott, I am class counsel in the Washington

4  Zonolite Attic Insulation case, which is Barbanti.

5           I don't have any arguments, I actually just have some

6  information I think might be helpful to the Court, and then I

7  could answer any questions.

8           The Barbanti case, despite the comments made by Mr.

9  Bernick, is a 23(b)(2) class action.  So, not only is there

10 precedent with regard to this process, there is with regard to

11 the very points you're talking about Zonolite.  The comment was

12 made notice hasn't gone out.  23(b)(2) doesn't require notice.

13          The Court in Barbanti elected to have a voluntary

14 notice to alert class members that she had certified a non-opt

15 out class that put class members in the position of monitoring

16 the process and she thought that was helpful.

17          So, they are correct that about eight days before the

18 Court was to pen the final order that would have resulted in a

19 comprehensive notice to class members, including the EPA web

20 sites and the special 1-800 number, about a week or two weeks

21 before the Court penned that order, they filed bankruptcy.

22          I think the Court is correct that it is the certified

23 classes provide a vehicle for expediting resolution of the

24 issue of the science.  And that putting the court in a position

25 where it is making actual determinations of that sort is going

1  to assist the Court and then understanding whether there are
2  legitimate claims out there, what their character is, what the
3  notice needs to be to that community.  So, the question is how
4  did we get there.

5          I heard Mr. Bernick say three times in sort of subtle
6  way that this is fine as long as the only people who show-up
7  are the representatives.  So -- and I -- that simply cannot
8  work as a device.

9          Mr. Barbanti has a claim that's worth a few thousand
10 dollars.  The only way he can economically have me here even
11 for this hearing is because he has been empowered to represent
12 a class.  And I think it is important that that certified class
13 -- and what it means, which has been fully argued by Grace,
14 needs to be present at any determination of the science.  It
15 cannot be Mr. Barbanti on his own because that simply
16 eviscerates the ability of that person to even proceed.

17         I'd also say -- I only make this remark because it
18 might be helpful to the Court, Barbanti's a certified class
19 action.  The Court has entered orders that have -- continue the
20 time period for removal of actions.  A filed claim -- there is
21 an automatic right of removal to the Bankruptcy Court.  And
22 when that happens, it's an adversary proceeding which brings to
23 bear all of the 7000 rules, including certification, which is
24 already done in this case, and the plenary civil rules by which
25 cases are litigated.

1          So, among the devices to actually have meaningful

2     parties before this Court, one potential device is a removal of

3     the Barbanti case or lifting of the stay so that it could be

4     tried in Washington, which would have been done this spring had

5     there not been a bankruptcy, would get us there.  But I -- but

6     only to the extent that it is Mr. Barbanti as the designated

7     representative of homeowners in Washington designated by the

8     Court, empowered in a meaningful way to participate.  If it is

9     just --

10          THE COURT:  Well --

11          MR. SCOTT:  The comment about -- you know, if you go

12    this way we're going to appeal and it will go on forever and

13    you'll never get where you want to be, you know, it's not

14    helpful to make threats, but the reality is if the certified

15    class is not recognized, plaintiff really is in the same

16    position of having to challenge the lack of there being a

17    class.

18          THE COURT:  Well, that could be, but that won't be as

19    deadly as the prosecution of the case and assert as a challenge

20    to the class certification.  That really would stop the plan

21    process in its tracks, I think.  I don't think --

22          MR. SCOTT:  Well, that's --

23          THE COURT:  However, I'm not sure that at least if

24    this process works for the whole Barbanti concept that it's

25    inappropriate necessarily to do that piece of it on a class

1  basis just for that group of people or maybe for the South

2  Carolina, whoever --

3          MR. SCOTT:  Sure.

4          THE COURT:  Whoever the appropriate groups that are

5  already recognized as class groups may be.  I don't know, I

6  don't have a view about it one way or the other.  I'm not

7  trying to make decisions about certifying the class, truly I'm

8  not.  And I don't want this record to sound like I am because

9  I'm not.  I'm not there yet.

10         But it seems to me that if we need more than one

11 individual in order to make this trial feasible, then we ought

12 to have enough people here to make it feasible, and that takes

13 --

14         MR. SCOTT:  Class does that.

15         THE COURT:  -- a class, i.e. the people who are in

16 the Barbanti class to do it, then maybe that's the way that

17 I'll allow it.

18         MR. SCOTT:  And it's B(2), it's non-opt out, no

19 notice is required.  And it puts together a reasonable

20 community of individuals who were actually prepared to try this

21 issue before they filed bankruptcy.

22         MR. BERNICK:  Your Honor, it is not a threat, it's a

23 reality.  If that class proceeds here, that class is

24 incorporated here.  We would have to appeal that.

25         Your Honor could not bring that class in and simply

1  incorporate the certification, we have to approve that

2  certification.   Under Rule 9014, you then have to apply Rule

3  23, Seventh Circuit, <u>American Reserve</u> case specifically says if

4  there's a discretionary analysis that has to be done or Rule 23

5  can be used, you have to determine what the impact on the

6  bankruptcy is going to be.   The impact on that bankruptcy would

7  be unmistakable if we would have to take on that class, and we

8  believe we're perfectly entitled to and that we'd be correct in

9  doing so.

10             THE COURT:   Well, but if you remove the action here -

11  -

12             MR. BERNICK:   Let me address that because there are

13  three points to be made that I think are somewhat technical,

14  but let me respond to them.

15             First of all, he says it's a B2 class, I had thought

16  that they sought certification under both B2 and B3, I'll take

17  his representation it's B2.   It's a State Court B2 class.   And

18  I believe that in point of fact in Washington State, and I

19  think it goes back to a Boeing case that was prosecuted,

20  they're tended to be somewhat broader certifications under B2

21  on the theory that medical monitoring is injunctive relief and

22  things of that nature than I think what you'd find in the

23  federal jurisprudence.

24             The federal jurisprudence has consistently been very

25  clear, you do not get B2 unless you are talking about flat out