UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          .     Case No.  01-01139 (JFK)
                                .
                                .
  W. R. GRACE & CO., et al,     .     5490 USX Tower
                                .     600 Grant Street
                                .     Pittsburgh, PA 15219
              Debtors.          .
                                .     January 24, 2005
. . . . . . . . . . . . . . .         12:06 p.m.

TRANSCRIPT OF AGENDA MATTERS
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:                 Kirkland & Ellis, LLP
                                By:  JANET S. BAER, ESQ.
                                200 Randolph Drive
                                Chicago, IL  60601
                                (Telephonic Appearance)

                                Pachulski, Stang, Ziehl, Young,
                                  Jones, & Weintraub, PC
                                By:  DAVID W. CARICKHOFF, ESQ.
                                919 N. Market Street
                                16th Floor
                                P. O. Box 8705
                                Wilmington, DE  19899-8705
                                (Telephonic Appearance)

For the Official Creditors'     Stroock & Stroock & Lavan, LLP
Committee:                      By:  LEWIS KRUGER, ESQ.
                                     KENNETH PASQUALE, ESQ.
                                180 Maiden Lane
                                New York, NY  10038-4982
                                (Telephonic Appearance)

Audio Operator:                 Janet Kozloski

Proceedings recorded by electronic sound recording, transcript
            produced by transcription service.
_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-Mail:  jjcourt@optonline.net**
**(609) 586-2311  Fax No.  (609) 587-3599**

APPEARANCES (Cont'd.):

| | |
|---|---|
| For Select Asbestos Claimants and the Property Damage Committee: | Bilzin, Sumberg, Baena, Price, & Axelrod, LLP<br>By:  SCOTT L. BAENA, ESQ.<br>200 S. Biscayne Boulevard<br>Suite 2500<br>Miami, FL  33131-5340<br>(Telephonic Appearance) |
| For Unigard and Commercial Union: | Drinker, Biddle, & Reath, LLP<br>By:  MICHAEL F. BROWN, ESQ.<br>One Logan Square<br>18th & Cherry Streets<br>Philadelphia, PA  19103-6996 |
| For the Unofficial Committee of Select Asbestos Claimants: | Montgomery, McCracken, Walker, & Rhoads, LLP<br>By:  NATALIE RAMSEY, ESQ.<br>300 Delaware Avenue<br>Suite 750<br>Wilmington, DE  19801<br>(Telephonic Appearance) |
| For the PD Committee: | Ferry, Joseph, & Pearce, PA<br>By:  THEODORE J. TACCONELLI, ESQ.<br>824 Market Street<br>Suite 904<br>P.O. Box 1351<br>Wilmington, DE  19899<br>(Telephonic Appearance) |
| Co-counsel for the Official Committee of Unsecured Creditors: | Duane Morris LLP<br>By:  MICHAEL R. LASTOWSKI, ESQ.<br>1100 North Market Street<br>Suite 1200<br>Wilmington, DE  19801-1246<br>(Telephonic Appearance) |
| For Scotts: | Vorys, Sater, Seymour & Pease, LLP<br>By:  TIFFANY S. COBB, ESQ.<br>52 E. Gay Street<br>Columbus, OH  43216-1008<br>(Telephonic Appearance) |

APPEARANCES (Cont'd.):

For the United States          Office of United States Trustee
Trustee:                       By:  FRANK J. PERCH, III, ESQ.
                               844 King Street
                               Suite 2207
                               Wilmington, DE  19801
                               (Telephonic Appearance)

For Grace Shareholders:        KR Capital Advisors
                               By:  DAVID PINCUS
                               (Telephonic Appearance)

For Certain Interested         Zeichner, Ellman, & Krause LLP
Parties:                       By:  MICHAEL S. DAVIS, ESQ.
                               575 Lexington Avenue
                               New York, NY  10022
                               (Telephonic Appearance)

                               Swidler, Berlin, Shereff,
                                 Friedman, LLP
                               By:  DEBRA LESSIN FELDER, ESQ.
                               3000 K Street, N.W.
                               Suite 300
                               Washington, DC  20007
                               (Telephonic Appearance)

                               Stutzman, Bromberg, Esserman,
                                 & Plifka, PC
                               By:  SANDER L. ESSERMAN, ESQ.
                               2323 Bryan Street
                               Suite 2200
                               Dallas, TX  75201
                               (Telephonic Appearance)

                               Steptoe & Johnson
                               By:  MARCH D. COLEMAN, ESQ.
                               1330 Connecticut Avenue, N.W.
                               Washington, DC  20036
                               (Telephonic Appearance)

                               Lynberg & Watkins, PC
                               By:  R. JEFF CARLISLE, ESQ.
                               Sixteenth Floor International
                                 Tower Plaza
                               888 South Figueroa Street
                               Los Angeles, CA  90017-5465
                               (Telephonic Appearance)

**J&J COURT TRANSCRIBERS, INC.**

4

APPEARANCES (Cont'd.):

For Certain Interested          Cohn & Whitesell, LLP
Parties:                        By:  DANIEL C. COHN, ESQ.
                                101 Arch Street
                                Boston, MA  02110
                                (Telephonic Appearance)

                                Stroock & Stroock & Lavan, LLP
                                By:  DENISE K. WILDES, ESQ.
                                180 Maiden Lane
                                New York, NY  10038-4982
                                (Telephonic Appearance)

                                King Street Capital
                                By:  MITCH SOCKETT
                                (Telephonic Appearance)

                                Law Offices of Katharine Mayer
                                By:  KATHARINE MAYER, ESQ.
                                (Telephonic Appearance)

                                Magner Law
                                By:  ELIZABETH MAGNER, ESQ.
                                (Telephonic Appearance)

                                Law Offices of Dan Chandra
                                By:  DAN CHANDRA, ESQ.
                                (Telephonic Appearance)

1           THE COURT:  This is the matter of W. R. Grace,

2    Bankruptcy Number 01-1139.

3           I have a partial list of participants by phone.  I do

4    not think I have a full list.  I'll read what I have.

5           David Pincus, Michael Davis, Ted Tacconelli, Tiffany

6    Cobb -- I'm missing a name, I have Michael, but I don't have a

7    last name, Debbie Felder, Sandy Esserman -- I don't have his

8    last name, either, Mark Coleman, Jeff Carlisle, Frank Perch,

9    Dan Cohn, Katharine Mayer, Michael Lastowski -- I suppose this

10   is John Lewis, Kruger -- oh, Lewis Kruger, I'm sorry, Kenneth

11   -- I don't have a last name, Elizabeth Magner, Dan Chandra,

12   Natalie Ramsey, and Mitch Sockett.

13          So, I apologize, but those are all of the names that

14   I have.

15          THE COURT:  Good afternoon, or morning -- afternoon.

16          MR. CARICKHOFF:  Good afternoon, Your Honor.  David

17   Carickhoff, with Pachulski Stang, on behalf of the debtors.

18          If I could just walk Your Honor through the agenda

19   for this afternoon.

20          THE COURT:  Pardon me.  People on the phone, two

21   things.  Number one, put your mute buttons on, please.  Number

22   two, if you speak -- well, actually three things -- identify

23   yourself, for the record, and number three, do not put us on

24   hold.

25          If I'm put on hold and have music playing, I'm

1  disconnecting the call.

2          Okay.  Mr. Carickhoff?

3          MR. CARICKHOFF:  Good afternoon, Your Honor.  If I

4  could just walk Your Honor through the agenda for this

5  afternoon?

6          THE COURT:  Go ahead.

7          MR. CARICKHOFF:  Item Number 1, which was our motion

8  for approval of solicitation and confirmation procedures.  We

9  had indicated at the hearing on Friday that this would be

10 adjourned.

11         THE COURT:  Yes.

12         MR. CARICKHOFF:  Item Number 2 was the debtor's

13 motion for exclusivity extension.  Your Honor had entered that

14 order on Friday, and that is on the docket.

15         That brings us to Item Number 3.  Item Number 3 was

16 the debtor's motion in connection to try and limit certain

17 transfers of equity securities.

18         We had an interim order entered.  We -- we then

19 continued the hearing, to have this order become final.

20         We've had comments from the equity committee, and

21 also from one of the substantial equity holders in this case.

22 We've incorporated those comments into our proposed final order

23 on this.  And that was submitted to Your Honor by certification

24 of counsel.

25         THE COURT:  Mr. Carickhoff, I got it, but it hasn't

1 been entered of record yet.  It will be, as will the orders on

2 Numbers 4 and 5 that were submitted either on CNO's or COC's.

3          MR. CARICKHOFF:  Okay.  Great.  Then we -- if we

4 could just skip ahead then, that would bring us to Agenda Item

5 6, which is the debtor's fourth omnibus objection to claims.

6          All -- all of the claims that have not yet been

7 resolved, and for this one there's only one left, that's going

8 to be continued to the February 28th hearing.

9          THE COURT:  Okay.  Just a second, till I catch up

10 with you.

11          MR. CARICKHOFF:  Sure.

12          THE COURT:  Okay.  Fine.

13          MR. CARICKHOFF:  For Agenda Item 7, which is the

14 fifth omnibus objection, those -- all those claims that have

15 not been resolved are going to be continued to the February

16 28th hearing, as well, Your Honor.

17          THE COURT:  All right.

18          MR. CARICKHOFF:  Item Number 8, this was the debtor's

19 objection to certain claims filed by the Massachusetts

20 Department of Environmental Protection.

21          The debtors have been working with the Massachusetts

22 Department of Environmental Protection to see if they can

23 resolve this.  There was one outstanding issue that the parties

24 had left to resolve.  My understanding is that we have come

25 close to that resolution, if not reached it, and we expect to

1 submit a stipulation to the Court, resolving the claim

2 objection.

3        THE COURT:  So, you want it continued till February,

4 to see if it's resolved?

5        MR. CARICKHOFF:  That's correct.  If -- to the extent

6 that we do not -- if we're not able to submit a stipulation to

7 Your Honor, resolving it before then, we will look at putting

8 it up on the February 28th hearing.

9        THE COURT:  Okay.

10        MR. CARICKHOFF:  Item Number 9 was the motion of the

11 Official Committee of Asbestos Property Damage Claimants, to

12 strike the debtor's notice of intent to object to certain

13 claims.

14        I leave this to the property damage counsel to

15 address.  It's their motion, Your Honor.

16        MR. BAENA:  May it please the Court.  Your Honor,

17 Scott Baena.

18        THE COURT:  Yes, Mr. Baena.  Go ahead.

19        MR. BAENA:  Good morning, Your Honor, and once again,

20 thank you for allowing us to appear and argue, telephonically.

21        Your Honor, to be brief, we alluded to this motion

22 last week, when we were in Pittsburgh.  You will recall that

23 the debtor had proposed that it be allowed to deviate from

24 local rules in two respects.

25        First, so that they could make the so-called gateway

1 objections to property damage claims, without having to assert

2 all substantive objections that they might have to those

3 claims, unless the gateway objections were overruled.  And

4 secondly, to make more than 150 gateway objections, that -- to

5 PD claims, of course, in a single pleading.

6        The Court granted that motion, but required that the

7 debtor give each property damage claimant that would be subject

8 of a gateway objection, notice of the debtor's intention to

9 file those gateway objections and, thereby, permitting the

10 property damage claimants who were implicated by the objections

11 to rectify whatever deficiencies with their proofs of claims

12 that the debtor claimed to exist.

13        The Court ordered that property damage claimants have

14 60 days in respect of that notice, and that after the

15 expiration of the 60-day period, the debtor could first make

16 those gateway objections.

17        We have appended to our motion the transcript of the

18 hearing before Your Honor, when this matter was discussed and

19 heard.  And we direct your attention to Page 26 of that

20 transcript, where a colloquy took place between yourself and

21 myself, and you indicated, very clearly, that the debtor was to

22 work with the PD committee in formulating the notice of

23 intention that was going to launch that 60-day process.

24        The debtor never contacted us, in that regard, and

25 instead, in December of last year, it sent out several thousand

1  notices to property damage claimants, in accordance with the

2  Court's order on gateway objections.

3        In doing so, however, Judge, the debtor collated all

4  of the property damage claims that were implicated by those

5  gateway objections, by the law firms that were representing the

6  property damage claimants, whose -- on whose behalf those

7  claims were filed.

8        And it used a generic form of notice of intent, of

9  their intention to object, setting forth all of the grounds

10 that could be asserted for a gateway objection, as opposed to

11 specifying what, in particular, in respect of each property

12 damage claim that was implicated, the debtor had some claim of

13 insufficiency or another gateway objection, about.

14       And as a result, these omnibus notices were sent to

15 numerous property damage claimants' counsel, appending to it a

16 list of all of their property damage claims, and saying some,

17 but not specifying which of the gateway objections might --

18 might pertain to those property damage claims.

19       We see, by virtue of the joinder that was filed by

20 one law firm, that even when claimants contacted the debtor for

21 more specificity about which gateway objections applied to

22 their claims, the debtor failed and refused to give that

23 information.

24       We are moving, at this time, to strike the notices

25 that were sent and to require the debtor to resend its notices,

1  to each of the property damage claimants' counsels, specifying

2  precisely what it is about the proof of claim forms that were

3  filed, that the debtor finds to be insufficient.

4       And we're asking, as well, that the 60-day period,

5  before which the debtor can file its gateway objections to

6  those claims, not run until the debtor has resent the notice

7  and 60 days has elapsed from the mailing of that notice.

8       MS. BAER:  Your Honor, Janet Baer, on behalf of the

9  debtors.

10      THE COURT:  Yes.  Go ahead.

11      MS. BAER:  Your Honor, I just realized, as Mr. Baena

12 was speaking today, that there seems to be a very fundamental

13 misunderstanding between what the notice was supposed to do,

14 and what must -- Mr. Baena apparently thought it was supposed

15 to do.

16      Your Honor, the order that you entered, very clearly

17 states in Paragraph E, that this additional notice that the

18 debtors were to send, was only with respect to the gateway

19 objection to an asbestos property damage proof of claim, based

20 on materially insufficient reporting information.  That's all

21 the extra notice was to do.

22      The debtor, in its original motion for leave from the

23 local rules, identified a number of gateway objections,

24 including the statute of limitations, failure of product ID,

25 laches, the existence of a prior settlement.  None of those

1   were identified as matters that were supposed to be, and were

2   subject of, the additional notice.

3          The additional notice, as you can see from reviewing

4   the transcript, as well as just looking at the order, was only

5   to give these objectors the opportunity to submit the

6   additional supporting information that had been failed to be

7   attached to the proof of claim form.

8          And Your Honor, that's what the notice said.  The

9   notice informed all of the people who were sent the notice that

10  they did not have appropriate supporting documents, or had no

11  supporting documents, or had failed to answer questions where

12  additional information was required in this respect.  That's

13  what the notice did.  That's the notice we sent out.

14         And, Your Honor, it has to be taken in the context of

15  who it was sent to.  There were 3,213 notices sent.  They were

16  sent to the individual claimants, as well as to counsel for the

17  claimants, where identified.

18         Two thousand eight hundred and ninety-three of those

19  notices related to proofs of claim filed by the Speights and

20  Runyan firm.  That left only 320 non-Speights and Runyan

21  claims.  Of those, 195 were claims filed by other attorneys,

22  and only 125 related to actual individuals who were not

23  represented by a law firm.

24         Your Honor, as we've indicated in our responsive

25  motion, and the documents attached to it, these are materially

1 insufficient -- proofs of claim.

2        Especially with respect to the Speights and Runyan

3 firm, where clearly, the law firm itself acknowledged that it

4 was not producing the information that it needed to produce.

5 In fact, it was suggesting that before it goes through the work

6 of producing the information, it wanted to talk.

7        This notice simply identified that we in fact have

8 their claim, the document is not there, and it needs to be

9 supplied.

10        But, rather than get a telephone call, for example,

11 from the Speights and Runyan firm, what we got was this

12 objection, or this motion to strike our notice, filed by the

13 Asbestos Property Damage Committee, of which Speights and

14 Runyan is a party.

15        With respect to other individuals, we have gotten

16 telephone calls.  We have gotten letters, which is, here's the

17 additional information, or, please, can you supply me my proof

18 of claim, so that I can figure out what's going on.

19        We've responded to those.  The one exception is, with

20 respect to the letter of the joinder here, to this motion, he

21 had a number of claims, asked a number of questions.  Both of

22 the lawyers who were responsible for those claims, and the

23 client who was responsible for the documentation, was out of

24 town.  We did not say, we won't give you the information.

25        What we did is we responded by saying, the people who

1 know this claim are not available, we will get back to you when

2 they are available.  And by the way, if you can't get together

3 with them before the deadline of the 7th of February, we would

4 then give you additional time.

5          This is not an objection to a proof of claim.  This

6 is not a bar date.  This is a, hey, you have insufficient

7 documentation, you have another chance to give it to us, before

8 we go to the process of filing an objection.

9          That was what we were supposed to do.  That is what

10 we did.

11          And it's -- I, frankly, disappointing that we are

12 before you on a motion to strike, instead of having received a

13 telephone call saying, okay, what are we going to do about

14 these, from the law firm that there's the biggest participants

15 in this whole process.

16          Your Honor, under these circumstances, we would ask

17 that the motion simply be denied, and we be able to continue

18 the process that we've put in place here, which is to work with

19 the claimants to get the documentation necessary so that we can

20 then -- file objections to proofs of claim that have some

21 meaning.

22          THE COURT:  Mr. Baena?

23          MR. BAENA:  Yes, Your Honor.

24          THE COURT:  Do you want to respond?

25          MR. BAENA:  Yes, I do.  Several points.  First of

1  all, so there's no misapprehension, immediately after we

2  obtained copies of the notices, I contacted Ms. Baer by e-mail,

3  to discuss -- the very same concerns that we raised by the

4  motion.  And indeed, the last e-mail, making inquiry about

5  those forms, was mine, and it went unanswered.  That's when we

6  filed the motion.

7         Secondly, I point out that the debtor, in -- when the

8  Court ordered that the gateway objections could be undertaken,

9  and that the notice had to be -- had to be furnished, the Court

10 just referred, as counsel just stated, to materially

11 insufficient information.

12        When you go to the notice though, that was actually

13 furnished, the debtor then determined, on its own, without

14 consultation with us, to define what it meant by materially

15 insufficient information.  And in doing so, it included a

16 number of things, including a reference to inadequate answers

17 to proof of claim questions.

18        But, again, it fails to specify, at all, either what

19 documentation it finds to be insufficient.  Even in those cases

20 where documentation was provided by claimants, they've merely

21 given notice that they deem it insufficient and they don't tell

22 anybody how.

23        And then, secondly, it never specifies what questions

24 they deem were insufficiently responded to.  Nobody has a clue

25 as to what the debtor is going to raise, and indeed the way the

1 debtor constructed this notice, it left itself ample

2 opportunity to complain about things that weren't even on its

3 mind when the notice went out.

4        And so, we find it highly offensive.  I don't think

5 this is -- I don't think we created a make weight exercise

6 here, to just send out notices as a precursor to the filing of

7 an objection, but rather it was supposed to be a meaningful

8 process that enabled a dialogue, even if it was a dialogue by

9 the pd claimants saying, I gave you all that.

10       But, this didn't engender any of that.  And so, we

11 find it highly offensive.  We don't think it carried out what

12 you intended and we did try to rectify the problem as quickly

13 as we found out the notices were going out.

14       Bear in mind, Judge, that the gateway objection order

15 was entered by you in December of 2003.  They didn't send these

16 notices out until 2004, December of 2004.  And in that period

17 of time, there was no discussion with us, nor did we have any

18 reason to know when those notices were going to go out.  I'm

19 sorry, it was July of 2004 that the order was entered.  So,

20 that means six months went by before they did anything.

21       THE COURT:  All right.  Well, it seems to me that the

22 debtor should undertake some of the initial burdens to state

23 what it is that's deficient.

24       If, for example, there is no documentation that's

25 attached to a proof of claim, that's pretty easy.  The notice

1  can simply say, you filed a proof of claim, you didn't attach

2  any documents, you have to attach documents that tell us X, Y,

3  Z, and if that's not attached, we're going to object to the

4  claim.

5        That was my intent.  So, that people who think that

6  they're complying -- pardon me, in my view, if you don't attach

7  documents when the proof of claim form tells you to, I have

8  some difficulty understanding how you think you can be in

9  compliance, whether you're an individual, or a law firm

10 representing an individual.

11        However, if you've attached documents and there is

12 some hole in those documents that the debtor thinks is

13 necessary in order to properly evaluate the claim, that was

14 really the purpose for the notice.  To get people an

15 opportunity to cure that deficiency, or to explain why it

16 couldn't be cured, and to, essentially, try to settle these

17 claims before they got into litigation.

18        The notice, I think, is too generic in that sense.

19 It does not advise specific claimants what the problem is.

20        To the extent that the Speights law firm has decided

21 not to attach any documents, then I think the notice is pretty

22 easy.  You haven't attached any documents, that's not good

23 enough, period, end of story.  Whether the Speights firm is on

24 the committee or not, that doesn't comply with my intent any

25 more than the debtor's notice does.

1       And so, if the appropriate documentation isn't

2 supplied, the Speights firm can expect that its clients will

3 not be going forward with proofs of claim.  They don't get an

4 exemption because they're on the committee.

5       The debtor needs to redo these notices to entities

6 from whom it has not received either a followup inquiry, so

7 that you're in negotiation, or whatever.  And -- so, I don't

8 expect, Ms. Baer, that the debtor has to redo them for the

9 entities with whom you're in contact.  Obviously, the process

10 worked as to those.

11       But, for the entities from whom you have had no

12 contact, I want the debtor to take the initial burden of saying

13 what it is that's wrong with the proof of claim form.

14       If the Speights firm has not attached any documents,

15 you do not need to redo that notice to the Speights firm.  Not

16 having any documentation is not in compliance with my order,

17 and that is clearly sufficient notice that the debtor will be

18 filing an objection unless that time frame is met.  So --

19       MS. BAER:  Your Honor?

20       THE COURT:  Yes?

21       MS. BAER:  With respect to documentation, here's the

22 problem with the Speights firm's documents, as well as many of

23 the others, which is why we filed the objection.

24       They attach a one-page appendix.  And the one-page

25 appendix, essentially, says, gee, golly whiz, you've asked for

1 a lot of information and that would really be a lot of work for

2 us, so we're not going to give it to you now, maybe we'll give

3 it to you later.  And it's that kind of a variation on a theme

4 of what is attached.

5    So, it's -- yes, they've attached something, if --

6 they've attached a notice telling us, hey, we know our claim is

7 deficient, we haven't given you the information, now.

8    THE COURT:  That, in my view, if that's what the

9 document is, that is not a documentation of a claim.  That's an

10 excuse why you're not submitting the documentation.  It is not

11 documentation.

12    I expected, when I worked out this proof of claim

13 form, that the documentation that would substantiate the things

14 that are in the proof of claim, which we went over ad nauseam,

15 for at least one, if not two hearings, that lasted a

16 significantly long period of time, were there.

17    I want the documentation as to those items, so that

18 the debtor can know whether or not an objection to the merits

19 of the claim should be filed, and so that the parties can talk

20 settlement.

21    So, the Speights firm, if they're not on the phone,

22 then Mr. Baena, you're on notice to tell them, since they're a

23 member of the committee, that type of documentation, that is a

24 one-page appendix that offers an excuse for why they're not

25 submitting information, is not sufficient.

1        And the notice that it got, that said you haven't

2   substantiated your claim, with documentation, is sufficient,

3   and their 60 days is running.

4        Now --

5        MR. BAENA:  I will do that, Judge.

6        THE COURT:  All right.

7        MR. BAENA:  Judge, I appreciate the Court's ruling

8   and I only have one other point to share.

9        Under the order that was entered, it appears that the

10  debtor is required to provide notice of these gateway

11  objections, or the intent to pursue gateway -- objections, to

12  both counsel and to the claimant.  And that has created some

13  problems and some confusion between counsel and their clients.

14       Indeed, we've heard from many of the clients,

15  wondering whether that affected their relationship with their

16  counsel.

17       We would ask that this new round of notices, only be

18  sent to counsel for the claimants, if counsel has filed the

19  proof of claim on behalf of the claimant.

20       THE COURT:  Well, the problem may be -- I mean, I'm

21  not, in theory, opposed to that under these circumstances, Mr.

22  Baena.  I guess the question is whether or not that counsel is

23  still counsel of record.

24       Sometimes we get proofs of claim filed on behalf of a

25  creditor, in fact sometimes we get two or three, from different

1 firms, filed on behalf of a creditor, and that doesn't really

2 give the debtor any real understanding of who it is with whom

3 they ought to be having some followup discussion.

4          So, that's really the reason for contacting the

5 claimant, as well, to let them know that something's missing

6 and they need to work with their attorney to get it fixed.

7          MR. BAENA:  I do appreciate that.  I would suggest,

8 respectfully, Judge, that those circumstances probably are the

9 exception and not the rule, and I would think that rules

10 governing professional responsibility and the transitioning of

11 withdrawal as counsel, amply protect everybody.

12          And the risk of confusion, by sending it to all the

13 claimants, for the concern you raise, I think, outweighs the

14 concern that you raise.

15          THE COURT:  Ms. Baer, how many notices, roughly, is

16 the debtor -- since I am not requiring that you resend them to

17 the Speights firm, to the extent that what was attached is a

18 one-page attachment that says, we're not giving you information

19 now.  I am not requiring you to resend notices in that

20 instance.

21          But, as far as claimants who have actually submitted

22 something, but there isn't enough information there, for

23 whatever reason, how many notices will the debtor have to redo?

24          MS. BAER:  Your Honor, I can't give you an exact

25 number, but it's real easy to tell you there's the 2,893

1 Speights claims, and then there's 320 others that are

2 non-Speights claims.

3        So, the maximum we would be sending would,

4 essentially be 320, plus whatever Speights claims attach

5 appropriate -- you know, some documentation, which we would

6 exclude from what we have to send a new notice -- or include

7 with what we have to send a new notice for.

8        THE COURT:  All right.  So -- and in addition to

9 that, you've been dealing with some creditors already?

10        MS. BAER:  Yes, we have, Your Honor.  In fact, one

11 counsel represents about 150 claimants and he's contacted us,

12 and wants to meet with us, and we've in fact set up a meeting

13 with the debtor's claim analysis people to do that.

14        THE COURT:  All right.  So, it can't be more than 3

15 or 400 notices, that you'll be resending?

16        MS. BAER:  That's correct, and it's probably far less

17 than that.

18        THE COURT:  All right.  I think, if that's the case,

19 are you able to identify counsel for the claimants, to comply

20 with Mr. Baena's request, or do you have any concerns about Mr.

21 Baena's request?

22        MS. BAER:  Well, I have two concerns.  First of all,

23 it looks to me like about -- of the 300 or so, that are

24 non-Speights claims, 200 are represented by lawyers, and 100

25 are not.  So, obviously in the 100, there's no choice.  On the

1  other 200, we can certainly start with counsel and -- if that's

2  what Mr. Baena's asking.

3       But, I did have a concern, and that's what we found

4  on the Speights claims, is that it's unclear if there actually

5  is a claimant.  He filed claims for buildings.  And we sent

6  them, then, to whatever information we had on the proof of

7  claim form.  Most of that time, that ended up just going back

8  to the Speights and Runyan firm anyway.

9       THE COURT:  Okay.  Well, I think Mr. Baena's concern

10 is just that you start with the attorneys.  I'm not sure how a

11 building is a creditor in a case, but to the extent that the

12 creditor is listed as a building, obviously you have to deal

13 with it through counsel anyway.  Because, at least most

14 buildings, I don't think, sit down and respond to notices, on

15 their own.  Maybe someday we'll have robots who can do that for

16 buildings, but I don't think we do yet.

17      So, I think maybe Mr. Baena's request will work.

18 Start with the counsel.

19      The concern I have, Mr. Baena, is what if counsel

20 don't respond to the debtor, again?

21      MR. BAENA:  Well, Judge, then an objection will be

22 filed and I presume we'll flush out, at that point in time.

23      And we're happy to work with the debtor, when it's

24 preparing to file its proofs of claim objections.  We'll work

25 out with the debtor whether or not there is counsel, that we're

1 aware of, still actively representing the claim.  We're happy

2 to do that.

3        And in the same respect, Judge, we would ask, once

4 again, that before we launch this next round of conceivably

5 several hundred of these notices, that the debtor permit the

6 committee to just take a peek at what they propose to send,

7 before they send it.

8        THE COURT:  Well, the -- I thought that the debtor

9 was going to work with the committee with respect to the

10 notices, simply because it may make it easier if the language

11 chosen is the same.

12        But, it will be, I think, the debtor's objections

13 that are coming, and I'm not sure that the debtor has to

14 consult with the committee before it files objections, Mr.

15 Baena.

16        MR. BAENA:  Well, I'm not asking to consult with

17 them, Judge, about their objections.  They're free to do

18 whatever they wish.

19        But, just so that there's no complaint about the

20 notice being inconsistent with the ruling today, or otherwise

21 ambiguous or vague.  We can avoid that problem if we just have

22 a short period of time to look at what they're proposing to

23 send, after they put it all together, and provide our comments.

24        THE COURT:  All right.  Ms. Baer, provide a draft of

25 the notice that you intend to send, to Mr. Baena, so that he

1  can provide his comments back to you, promptly.  And I'll

2  define that within three business days, Mr. Baena?

3          MR. BAENA:  Yes.  That's perfectly fine, Judge.

4          THE COURT:  All right.  And then, so perhaps if there

5  was any confusion or issue, you can work it out, Ms. Baer.  I

6  have no doubt that you and Mr. Baena will be able to resolve

7  disputes with respect to the specific words to be put on this

8  notice.

9          The followup notice will be required to be sent by

10 the debtor, only to those entities that have attached some

11 documents that are insufficient and that are not in

12 communication with the debtor, already, pursuant to the first

13 notice.

14         And do not include any of the Speights' claimants who

15 filed only the one page attachment that basically says they're

16 not going to produce other documents.  Those folks are on

17 notice that that claim is insufficient.

18         MS. BAER:  Thank you, Your Honor.  And just so I

19 understand.  We have other non-Speights' claimants who did

20 exactly the same thing.  They just attached the one page that

21 says, there probably is documentation, but we're not providing

22 it.  If I understand --

23         THE COURT:  I think with respect to those, if they're

24 not on the committee, because the committee is present in all

25 of these discussion on the record, and understands what I'm

1  saying.

2        If they're not on the committee, Ms. Baer, based on

3  the fact that you've only got 300 or so to send out, I think it

4  would be advisable to err on the side of caution and send it to

5  them.

6        MS. BAER:  Thank you --

7        THE COURT:  Give them a chance to get this fixed.

8        MS. BAER:  I understand.

9        THE COURT:  And with respect to the 60-day notice

10 period, I think that 60-day notice period should send -- start

11 from the day the debtor sends the supplemental notice, as to

12 the entities who are going to get the supplemental notice.

13 Okay.

14        MS. BAER:  That's fine, Your Honor.

15        THE COURT:  All right.  Do I need a written order to

16 confirm this?  If so, Ms. Baer, can you provide one?

17        MS. BAER:  I'll put something together, Your Honor.

18        THE COURT:  All right.  Thank you.

19        MS. BAER:  Thank you.

20        THE COURT:  Ms. --

21        MR. BAENA:  Thank you, very much, Judge.

22        THE COURT:  Is there anything else, Mr. Baena, on

23 this matter?

24        MR. BAENA:  No.  No, Judge.

25        The only thing I feel constrained to tell you Judge

1  is that, as I previewed with you on Friday, there are a variety

2  of different type of claims that get characterized as property

3  damage, including claims like conspiracy.

4         And I would be remiss if I didn't point out that

5  product ID may not be an element of every property damage

6  claim.  I don't hear you saying that a claim is automatically

7  disallowed if there isn't supporting information, and claimants

8  will have that opportunity to explain why it's omitted.  But, I

9  just wanted to preview with that -- that with you.

10         THE COURT:  All right.  If information is omitted, I

11  think claimants have to preview why, but I'm not totally sure

12  how a product identification of some sort isn't going to be the

13  burden of proof of the claimant, at some point in this

14  bankruptcy.

15         I'm not suggesting that there is a total shifting of

16  a burden of proof, but I'm not sure on -- aside from your

17  conspiracy or aiding and abetting theories, how somebody can

18  allege an injury that is a property damage, without also

19  asserting that the debtor's product was the cause of that

20  damage.

21         MR. BAENA:  Well --

22         THE COURT:  So --

23         MR. BAENA:  Judge, I -- that's a matter that is a

24  complex one to argue, in a short period of time.  It's not on

25  the agenda, but I will tell you that since we are constrained,

1 by State law, there are jurisdictions where the burden of proof

2 and the cause of action is different than in other

3 jurisdictions.

4        THE COURT:  Well, sure.

5        MR. BAENA:  And at the appropriate time, I'm sure

6 that's going to be aired with the Court, and I just didn't want

7 to give you the impression that somebody asserting a conspiracy

8 claim, for example, will ever be able to make product ID, or

9 will ever be required to.  But, that is a matter for another

10 day.

11        THE COURT:  Okay.

12        MR. BAENA:  Thank you, so much, Judge.

13        THE COURT:  All right.  Ms. -- I'm sorry.  Who's --

14 next item on the agenda, Mr. Baer, are you doing it, or?

15        MS. BAER:  Your Honor, the next two items, Items 10

16 and 11, relate to the Scotts adversary proceeding and a related

17 motion.

18        With respect to the debtor, Your Honor, Scotts and

19 the debtor have entered into a stipulation, which we will

20 submit to the Court, that puts into effect a temporary stay of

21 the matter, through and including the omnibus hearing on April

22 25.  And at that time, we will review where we are, in terms of

23 the plan process, and determine how is the best way to proceed.

24        In doing that, Your Honor, the debtors have agreed

25 that they do not contest the jurisdiction of the Court over the

1 matter and, therefore, as to the debtors, Scotts' motion for

2 relief from the stay becomes moot.

3          I understand, however, that the other defendants in

4 the complaint have not agreed to this stipulation and I will

5 let counsel for Scotts address where it stands with them.

6          THE COURT:  All right.

7          MS. COBB:  Good afternoon, Your Honor.  Tiffany Cobb,

8 on behalf of the Scotts Company.

9          Ms. Baer accurately summarized the key points that

10 are memorialized in a stipulation that we will file yet today,

11 or as soon as possible, and I believe there are others on the

12 phone, on behalf of the insurance company defendants, with whom

13 Scotts, and in communications with the debtors, have also been

14 involved in possibly working out a similar stipulation.

15          It may well come to fruition, but it did not occur

16 prior to today's status conference.  Accordingly, the Scotts

17 Company did not object to a slight extension in time to respond

18 to Scotts pending motion, and when I say an extension of time,

19 just as to the insurance defendants, to respond to Scotts' now

20 pending motion for relief, to the extent applicable, from the

21 Court's injunction order and or the automatic stay.  And to do

22 that, prior to and in accordance with this Court's order for

23 the -- for hearing at the February omnibus hearing.

24          And that again, would be just as to the insurance

25 defendants.

1          THE COURT:  Okay.  So, what is it that's being

2    continued?  The Scotts' motion for relief from the modified

3    preliminary injunction's being continued till February, and

4    what else?

5          MS. COBB:  As to the insurance defendants, the motion

6    is being continued until February -- until the February omnibus

7    hearing.  And in the interim, the insurance defendants will

8    have an opportunity to respond to Scotts' motion.  As Ms. Baer

9    points out, Scotts' now pending motion has been resolved, by

10   stipulation with the debtors, so the debtors will not be

11   participating in that process in -- come February's hearing.

12         THE COURT:  Okay.  What is the stipulation with the

13   debtor?

14         MS. COBB:  The stipulation with the debtors, as Ms.

15   Baer points out, is to agree -- Scotts and the debtors have

16   agreed that as to the debtors, there will be a temporary stay,

17   subject to Your Honor's approval, of the declaratory judgment

18   action, as to the debtors, until the April 25th omnibus hearing

19   date, at which time we will revisit whether it's appropriate --

20   whether the debtors feel it's appropriate to request a further

21   extension of that stay -- of that temporary stay, to give them

22   an opportunity to focus, in this short period of time between

23   now and April, on the plan process.

24         THE COURT:  All right.  Anyone from the insurance

25   companies wish to be heard?

1          MR. BROWN:  Your Honor, this is Michael Brown, for

2     Unigard.

3          I think that accurately reflects where we stand.  The

4     insurer defendants in the adversary wanted an opportunity to

5     either try to reach a resolution, by way of stipulation, with

6     the Scotts company and Grace.

7          That didn't happen and so, we've simply asked for an

8     extension until February 11th, which is the deadline for filing

9     objections for the February omnibus, until that time.  And if

10    we haven't worked things out by the 11th, then we will be

11    filing responses to the motion.

12         THE COURT:  All right.  Anyone else?  Okay.  That's

13    fine.

14         It's continued then to the February omnibus and I

15    will just take it up then.  And I take it that's both the

16    declaratory judgment action, at Item Number 10 and also Scotts'

17    motion, at Item Number 11?

18         MS. BAER:  That's correct, Your Honor.

19         THE COURT:  Okay.  Thank you.

20         MS. BAER:  Thank you.

21         MR. CARICKHOFF:  Your Honor, I think the only thing

22    left on the agenda is Item Number 12, which was a housekeeping

23    matter.  That is with respect to the new telephonic hearing

24    procedures for Delaware cases.

25         THE COURT:  Yes.

1          MR. CARICKHOFF:  I don't know if Your Honor wants us

2  to begin using the Court Call system, going forward in these

3  cases.  We'd be happy to do that, or if you wanted to continue

4  by having you dial in as we've been doing.

5          THE COURT:  Well, actually, I don't think I have a

6  preference, provided that I get a decent line and can control

7  the fact that people are not going to be speaking and

8  interrupting a call, or putting us on, you know, hold.  That's

9  my concern.

10          I wonder whether -- what the debtor's view is, with

11  respect to both the expense and the ability to know who's on

12  the line.  What the debtor and the other parties view is, with

13  respect to using Court Call or the system that's currently in

14  place?

15          MR. CARICKHOFF:  I think from the debtor's

16  perspective, we have had issues in the past with respect to

17  people just not having general courtesy when they're on the

18  phone for these hearings.

19          I think that we've seen a significant change in the

20  last couple hearings with Your Honor.  There have been lapses

21  here and there, but I think overall, people are aware of Your

22  Honor's concern with the process.  And I, hopefully, I think

23  seeing it addressed.

24          I think from an expense standpoint, most of the time

25  counsel for the debtors and the committees are in the

1  courtroom.  To the extent they're not, then obviously that

2  would be an expense to the estate.

3          I don't -- beyond that, with respect to anybody

4  that's not appointed as an official committee or a futures rep,

5  I don't know that the expense matters to the estate.

6          I haven't done an analysis as to whether Court Call

7  would be cheaper for the debtors, or whether the process we're

8  using now is more efficient, in terms of the costs.

9          THE COURT:  Okay.  Well, you may want to investigate

10  and report back at the next omnibus.

11          My understanding is that the Court Call process is

12  pretty expensive, but not necessarily for the estate, because

13  my understanding -- and I haven't spoken directly, I've just

14  been getting this from some of the other cases, so pardon me if

15  I'm not correct -- but my understanding is that with respect to

16  the Court Call, the party calling in actually bears the

17  expense.

18          You have to make some arrangement, I believe, with

19  Court Call directly, to make -- to pay for your participation,

20  and apparently there are at least two rates.  One for listen

21  only and one for speaking.

22          My concern is -- I don't know at what point that list

23  is put together -- I'm not totally sure that there is ever an

24  accurate list of who's on the phone and I would like an

25  accurate list of who is on the phone.

1        But, my understanding also, is that a Court Call

2  operator remains on the line, so if there are issues that can

3  be addressed, I suppose there is somebody there to handle them.

4        So, if all that's correct, it probably is a lesser

5  expense for the estate to use Court Call, in the long run,

6  since the parties would be making arrangements to call in on

7  their own.

8        Of course, to the extent that people are charging the

9  expenses to --

10        MR. CARICKHOFF:   (Indiscernible) we just lost you.

11        THE COURT:  Yes, I saw the sign.  I'm sorry.  I lost

12  you, too.  Are we back again?

13        MR. CARICKHOFF:  Yes, Your Honor.

14        THE COURT:  Okay.  To the extent that the parties are

15  going to charge their expenses against the estate, like

16  committee members or the committee counsel, for example, then

17  the debtor would bear that expense in any event.  So, I don't

18  know how it's going to come out either.

19        Maybe that's something that you want to try to take a

20  look at between now and next month?

21        MR. CARICKHOFF:  I think I can do that, Your Honor.

22        THE COURT:  All right.  For next month, use the

23  debtor's call-in system, as we have been doing.

24        MR. CARICKHOFF:  And then --

25        THE COURT:  And then next month we'll decide whether

**J&J COURT TRANSCRIBERS, INC.**

1  to change it or not.

2          MR. CARICKHOFF:  One of the problems we have, Your

3  Honor, in trying to put together this list -- obviously for

4  today's hearing, I -- it was somewhat of a short notice for

5  certain parties --

6          THE COURT:  Yes.

7          MR. CARICKHOFF:  -- and you had the weather

8  conditions.  So, the list that Your Honor has, I'm sure is not

9  a complete list of who's on the phone.

10          A lot of times, after we send the list to Your Honor,

11  additional parties call in and ask for the information.  We

12  never deny people that information and always give them the

13  call-in number.  But, at that point, Your Honor already has the

14  list that we've put together.

15          So, if the parties would do us the courtesy of giving

16  us 48 --

17          THE COURT:  I can't hear you.

18          MR. CARICKHOFF:  -- 48 hours, or a few days before

19  the scheduled hearings, of their intent to participate, we

20  could give Your Honor a more complete list.

21          Unfortunately, we're not getting that notice and

22  we're getting it after we've already sent the initial list to

23  Your Honor.

24          So, we can do a better job, but we need the other

25  parties to cooperate with us to --

1          THE COURT:  Okay.

2          MR. CARICKHOFF:  -- give Your Honor that information.

3          THE COURT:  Well, I think the case management order

4 that's in place has a deadline.  And my view is, if they don't

5 make the deadline, then they don't call in, period.

6          I mean, they're lawyers, they know what deadlines

7 are.  We live with them all the time.  So, if they can't make

8 the deadline, then you just tell them no, and they don't call

9 in.

10          Now, today is an exception, because of the weather

11 and the fact that I changed the plans at the last minute.  I

12 think, under these circumstances, anybody who wants to

13 participate should be able to, but this is the exception, not

14 the rule.

15          And, you know, parties are on notice.  The case

16 management order says, do it by a certain date, and if they

17 don't, too bad.  I think they're all adults.

18          MR. CARICKHOFF:  That would definitely make it easier

19 for us, Your Honor.

20          THE COURT:  Well, that's my view.  So, it should be

21 real easy for you.

22          Okay.  Well, use the debtor's system for next month

23 and then we'll put this back on the agenda and decide what to

24 do going forward from there.  Okay.

25          MR. CARICKHOFF:  Sorry.  We just lost you for a

1 second there, Your Honor.

2          THE COURT:  I was just saying -- repeating what I

3 said earlier, use the debtor's system -- for the next month's

4 call, put this back on the agenda, and tell me how you want to

5 proceed from there.

6          MR. CARICKHOFF:  Certainly.  If I could just bring up

7 one other matter?

8          Your Honor has already indicated, on Agenda Item 3,

9 which was submitted by certification of counsel, that Your

10 Honor would enter Agenda Items 3, 4, and 5.

11          THE COURT:  I think --

12          MR. CARICKHOFF:  If there's any way --

13          THE COURT:  Go ahead, I'm sorry.

14          MR. CARICKHOFF:  If there's any way that the Court

15 could enter the order, with respect to Agenda Item 3, on the

16 docket today, the debtor's would greatly appreciate it.

17          We have a public statement that we intend to put out

18 tomorrow, that anticipates this order having been entered.

19          THE COURT:  I don't think I have a clerk in Delaware

20 to be able to do it today.  Hold -- you can do it?

21                         (Pause)

22          THE COURT:  All right.  My law clerk is indicating

23 that she can do that one today, from here.

24          So, we will get Item 3 on the docket today.  But, my

25 Delaware clerk isn't in, so I don't expect that any of the

1  others will be on the docket, today.

2          MR. CARICKHOFF:  That's fine.  Agenda Item 3 was the

3  only one that we're particularly interested in, Your Honor, for

4  entry today.

5          THE COURT:  All right.

6          MR. CARICKHOFF:  I appreciate that.  Thank you.

7          THE COURT:  Do you have a docket number,

8  specifically, for Number 3?

9          MR. CARICKHOFF:  The docket number -- are you looking

10  for what the certification of counsel was?

11          THE COURT:  Yes.

12          MR. CARICKHOFF:  It's 7514, and if that gets pulled

13  up it's -- Exhibit A to that, should be the proposed form of

14  order.

15          THE COURT:  Seven five one four?

16          MR. CARICKHOFF:  Yes.

17          THE COURT:  Okay.  All right.  She'll take care of

18  that.

19          MR. CARICKHOFF:  Thank you.  If she needs a copy to

20  -- she can just e-mail me.  I'd be happy to e-mail her a pdf of

21  that as well.

22          THE COURT:  All right.  Thank you.

23          Anything else?  Anybody have any housekeeping

24  matters?  Okay.  We're adjourned.  Thank you.

25          MR. CARICKHOFF:  Thank you, Your Honor.

1          MS. BAER:  Thank you, Your Honor.

2                    * * * * *

3              C E R T I F I C A T I O N

4          I, MELISSA HYNES, court approved transcriber, certify

5    that the foregoing is a correct transcript from the official

6    electronic sound recording of the proceedings, in the

7    above-entitled matter, to the best of my ability.

8

9    _____

10   MELISSA HYNES

11   J&J COURT TRANSCRIBERS, INC.          DATE:  January 31, 2005

12

13

14

15

16

17

18

19

20

21

22

23

24

25