IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | | Re: Docket No. 7571 |

## DEBTORS' OBJECTION TO PACIFICORP AND THE VANCOTT BAGLEY CORNWALL & MCCARTHY 401(K) PROFIT SHARING PLAN'S MOTION FOR LEAVE TO FILE LATE PROOFS OF CLAIM

This Court should deny *Pacificorp and the Vancott Bagley Cornwall & McCarthy 401(k)*

*Profit Sharing Plan's* ("Vancott" and, together with Pacificorp, the "Late Claimants") *Motion for*

*Leave to File Late Proofs of Claim* (the "Motion").[2] The Late Claimants argue that they are

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] The Late Claimants have filed a joint-motion for leave to file late proofs of claim. As described further herein, the relevant facts concerning notice differ with respect to each of the Late Claimants, and the Late Claimants are not legally-affiliated entities. Therefore, the Court should consider the merits of the Motion separately with respect to each of the Late Claimants.

entitled to file late claims because they did not receive adequate notice. This is not accurate. Both of the Late Claimants were "unknown" creditors and, therefore, the Debtors had no duty to provide them with actual notice of the Bar Date. Instead, the Debtors' Court-approved publication-notice constituted sufficient notice for each of the Late Claimants. Further, despite the Late Claimants' assertion to the contrary, Vancott received *actual notice* of the Bar Date. And, Pacificorp admits that it knew the Debtors were in bankruptcy well before the Bar Date, and it even filed a proof of claim nearly two years before the Bar Date.

Since notice was sufficient with respect to each of the Late Claimants, and the Late Claimants have cited no other reason for allowing their late claims, the Late Claimants have failed to demonstrate that the present situation falls within Rule 9006(b)(1)'s exception for tardy claims. In fact, neither of the Late Claimants have established any *neglect* for their failure to file timely claims, let alone *excusable neglect.* Moreover, courts have cast doubt on whether unknown claimants can ever challenge the merits of constructive notice. Therefore, even if the Late Claimants were to establish some sort of neglect, it would be extremely difficult (if not impossible) for them to prove that such neglect was "excusable."

Further, allowing either of the Late Claimants to file late proofs of claim would set a detrimental precedent in this case, as it would (i) open the floodgates for more prospective, late claims and (ii) tend to render the Debtors' publication notice meaningless. This is a matter of particular concern at the current stage of the Debtors' cases. The Debtors filed their first *Plan of Reorganization* on November 14, 2004 (and their *Amended Joint Plan of Reorganization* on January 13, 2005), and are currently working diligently with the various constituent groups toward confirmation. Therefore, the Debtors request that the Court enter an order denying the Motion and granting any other relief that the Court deems appropriate.

2

## FACTS AND BACKGROUND

1.      From 1940 until about 1984, the Debtors sold vermiculite to Intermountain Insulation Co. ("Intermountain").  Intermountain processed the product at 333 W. First Street, Salt Lake City, UT (the "Site"), and then Intermountain sold the product.  Contrary to what is stated or suggested in the Motion, the Debtors (a) never operated or arranged for the operation of the Site or adjacent land; (b) never owned, leased, or otherwise held any ownership interest in the Site or adjacent land; (c) never owned, leased, or otherwise held any ownership in any business carried on at the Site or adjacent land; and (d) never permitted sale of Site product under the Grace name.[3]

2.      According to the Motion, Pacificorp owned the Site from 1944 until 1954, and repurchased it in 1984.  According to the Motion, Vancott purchased a part of the "Subject Property" in 1979, sold a portion of the "Subject Property" to Pacificorp in 1984, and sold the remainder of its Subject Property in 1998.[4]

3.      On April 2, 2001 (the "Petition Date"), the Debtors filed for bankruptcy under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code").  Pursuant to section 362 of the Bankruptcy Code, the automatic stay immediately prohibited the commencement of any actions against the Debtors.

---

[3] Intermountain did hold licenses from Grace's predecessor for a processing technique and the "Zonolite" name.

[4] The Motion defines "Subject Property" to include both Site property and adjacent property, and it states that Vancott owned a portion of the Subject Property.  It is left unclear in the Motion whether the Subject Property owned by Vancott included all, none, or part of the Site.  See Motion at pg 1.

4.    On May 2, 2001, Pacificorp received notice of the Debtors' chapter 11 filing under its Utah Power & Light trade name.[5] On May 16, 2001, Pacificorp filed a proof of claim under its trade name for utility services.

5.    On June 27, 2001, the Debtors filed their *Motion for Entry of Case Management Order, Establishment of a Bar Date, Approval of the Proof of Claim Forms and Approval of the Notice Program* (the "Bar Date Motion").

6.    During the course of the following ten months, the Debtors worked with every official committee in these cases, as well as this Court, to craft the Bar Date Notice, the Bar Date Notice Package and a comprehensive system of publication of the Bar Date Notice (collectively, the "Bar Date Notice Program") that would ensure (with a high degree of probability) that every affected party was aware of the existence of the Bar Date, the scope of the Bar Date, and the process for filing a proof of claim. The Debtors filed successive versions of the Bar Date Motion during the course of this lengthy process. In addition, this Court received and considered multiple responses from all of the official committees in these bankruptcy cases.

7.    By order dated April 22, 2002 (the "Bar Date Order"), the Court approved the Bar Date Notice Program and set March 31, 2003 (the "Bar Date") as the last date for filing proofs of claim for (i) Non-Asbestos Claims, (ii) Asbestos Property Damage Claims and (iii) Medical Monitoring Claims (each of which is defined in the Bar Date Order). Of particular note, the Bar Date Order states as follows:

> ORDERED that notice of the entry of this Order and of the Bar Date to unknown claimants pursuant to the Debtors' Bar Date Notice Plan for Asbestos Property

---

[5] According to Pacificorp's web site, Pacificorp, "operates ... as Utah Power in Utah and Idaho." Pacificorp Home Page, which is available at http://www.pacificorp.com (a printed version of the Pacificorp Home Page is attached as Exhibit A).

4

> Damage Claims and Other Claims (the "Notice Plan"), as modified, and filed on
> April 12, 2002, shall be deemed good, adequate and sufficient notice of the Bar
> Date ...

Bar Date Order at pg. 5 [Docket No. 1963]. Once the detailed proof of claim forms were

approved and the Bar Date Order was entered, Grace spent *over $4 million* to publish the

Bar Date Notice.

8.        On January 14, 2005, almost two years after the Bar Date had passed, the Late

Claimants filed the Motion. The Motion seeks leave from the Bar Date Order so that each of the

Late Claimants may file late proofs of claim on account of "environmental cleanup costs"

incurred and to be incurred to cleanup the Site and the adjacent Land. For the reasons set forth

herein, the Motion should be denied.

## ARGUMENT

### A.        The Debtors Had no Duty to Provide Actual Notice to Either of the Late Claimants

9.        The Late Claimants were each "unknown" creditors and, therefore, they were not

entitled to receive actual notice. The Supreme Court of the United States has stated that a

"known" creditor is one whose identity is either "known or reasonably ascertainable by the

debtor." Tulsa Professional Collection Serv., Inc. v. Pope, 485 U.S. 478, 490 (1988). An

"unknown" creditor is one whose "interests are either conjectural or future or, although they

could be discovered upon investigation, do not in due course of business come to knowledge [of

the debtor]." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 317 (1950). A

creditor's identity is "reasonably ascertainable" if that creditor can be identified through

"reasonably diligent efforts." Mennonite Bd. Of Missions v. Adams, 462 U.S. 791, 798 n.4

(1983). The U.S. Court of Appeals for the Third Circuit (the "Third Circuit") has held that

"reasonable diligence" does not require "a vast, open-ended investigation. The requisite search

5

instead focuses on the debtor's own books and records. Efforts beyond a careful examination of these documents are generally not required." <u>Chemetron Corp. v. Jones</u>, 72 F.3d 341, 346-47 (3d Cir. 1995) (internal citations and quotes omitted).

10.    Several courts have held that chapter 11 debtors that own (or previously owned) allegedly contaminated property have no obligation to provide adjacent land-owners with actual notice of a claims bar date, because chapter 11 debtors have no obligation to undertake an ancillary investigation to locate such parties. For example, in <u>Chemetron Corp. v. Jones</u>, the Third Circuit found that parties who either resided at or visited addresses in proximity to a nuclear waste-dump maintained by a chapter 11 debtor were not "known creditors," to whom debtor had to provide actual notice of its bankruptcy case and of bar date for filing proofs of claim. <u>Id.</u> Similarly, in <u>In re Texaco Inc.</u>, 182 B.R. 937, 954-55 (Bankr. S.D.N.Y. 1995), the court found that the owner of land adjacent to a chapter 11 debtor was an "unknown" claimant.

11.    Furthermore, courts have also found that chapter 11 debtors have no duty to search out successors-in-interest to property, for purposes of providing them with actual notice of a claims bar date. In <u>In re Bicoastal Corp.</u>, 147 B.R. 807 (Bankr. M.D. Fla. 1992) (attached as <u>Exhibit B</u>), the court held that the claimant, which (i) owned property downstream from property that was formerly owned by the chapter 11 debtors and (ii) claimed that its property was environmentally damaged because of actions of the debtor on debtor's property, failed to establish "excusable neglect" for the allowance of a late proof of claim. The court based this decision upon its determination that the potential claimant was not a "known creditor" of the debtor, because "[d]ue process requirements do not dictate that the Debtor must conduct such an 'impracticable and extended' search for all potential creditors." <u>Id.</u> at 809, <u>citing</u> <u>Mullane</u>, 339 U.S. at 317-18. Instead, the court found that the debtor's publication notice, which was

6

reasonably calculated to provide the claimant with notice of the bar date, was sufficient. See In re Bicoastal Corp., 147 B.R. at 809.

12.     Under these standards, the Late Claimants were each "unknown creditors." The Debtors did not have any dealings with either of the Late Claimants in connection with the Site or adjacent land. Indeed, the Debtors merely sold product to a customer that operated at the Site. A search of the Debtors' books and records would not have uncovered either of the Late Claimants as creditors with respect to the Site or adjacent land. Due process does not require that the Debtors should be compelled to use the estates' resources to identify and serve every entity that owned property (and the property adjacent to) where the Debtors' products were used by independent third-parties. Such an expansive investigation does not constitute "reasonable diligence" and is not required by the applicable caselaw. See Chemetron Corp. v. Jones, 72 F.3d at 346-47.

13.     The Late Claimants' position is even *less-persuasive* than the *losing* arguments raised in the aforementioned cases. *First*, in Chemetron, Texaco, and Bicoastal, the debtors *owned* the property where the alleged contamination occurred. Here, however, the Debtors connection to the Late Claimants is even more attenuated. The Debtors never owned, operated, leased or had any other legal rights in the Site or adjacent land -- they merely sold vermiculite concentrate to the operators of the Site license. *Second*, in Bicoastal, the creditor did not have knowledge of the debtor's bankruptcy case until after the claims bar date. See id. The court, however, still found that the debtor had no duty to provide actual notice and held that the claimants were prohibited from filing a late proof of claim. In this situation, both of the Late Claimants knew of the Debtors' bankruptcy, and Vancott even received actual notice of the Bar Date.

7

14.     The Motion notes that the Debtors scheduled (on Schedule F) a contingent, disputed, unliquidated environmental claim for Intermountain Insulation Co., which is located at the Site.  The Debtors scheduled this claim because the Debtors sold processed vermiculite to Intermountain, and the U.S. Environmental Protection Agency has argued that there were releases or threatened releases of hazardous substances at the Site.  Since the Debtors sold vermiculite to Intermountain, the Debtors knew that Intermountain may possess a claim against the Debtors and, therefore, Intermountain was a "known" claimant.  As a result, the Debtors' gave Intermountain actual notice of the Bar Date.  See Affidavit of Service (attached as Exhibit C).  As previously established, the Debtors, however, had no previous dealings with either of the Late Claimants in connection with the Site or adjacent land, and the Debtors were unaware of the Late Claimants interests in the Site or adjacent land.  Therefore, the Debtors did not list the Late Claimants as potential creditors in the Debtors' records, and the Debtors did not schedule either of the Late Claimants as creditors for the Site or adjacent land.

15.     Under the legal standard established in Mullane and Chemetron, the Debtors had no duty to undertake an ancillary investigation to determine whether either of the Late Claimants may possess claims and, therefore, the Late Claimants were "unknown" creditors that were not entitled to actual notice.  See Chemetron Corp. v. Jones, 72 F.3d at 346-47; Mullane v. Central Hanover Bank & Trust Co., 339 U.S. at 317.

**B.     The Debtors' Publication Notice was Legally Sufficient for Both Late Claimants**

16.     Because the Late Claimants were unknown creditors with respect to the Site and adjacent land, the Debtors' extensive publication notice constituted legally sufficient notice of the Bar Date with respect to each of the Late Claimants.  See Chemetron, 72 F.3d at 348 ("Having held that claimants were 'unknown' creditors, we have little difficulty holding that the notice which Chemetron published in the *New York Times* and the *Wall Street Journal* was

8

sufficient. It is well established that, in providing notice to unknown creditors, constructive

notice of the bar claims date by publication satisfies the requirements of due process").

17.     In <u>Chemetron</u>, the Third Circuit found that Chemetron's publication notice, which

included publication in *New York Times, The Wall Street Journal*, and various local publications,

was legally sufficient. <u>See</u> <u>Chemetron</u> 72 F.3d at 348. The Debtors' publication notice far

exceeded this standard. In particular, the Debtors (i) engaged a specialist to study the

demographic readership of various publications and to assemble a stable of publications; and (ii)

ultimately spent over $4 million dollars to publish the Bar Date Notice in those publications,

which included (by way of example) *People Magazine, Parade Magazine, The New York Times,*

*Playboy,* and *The Wall Street Journal,* so that an estimated 83.8% of Americans saw the Bar

Date Notice. <u>See</u> Excerpts of Transcript from April 22, 2002 Omnibus Hearing before the

Honorable Judith K. Fitzgerald United States Bankruptcy Judge, 94 (attached as <u>Exhibit D</u>). The

Debtors also published the Bar Date Notice locally in Salt Lake City (in *The Tribune & Desert*

*News*).

18.     Further, the Bar Date Order specifically states that the Debtors' publication notice

was legally sufficient with respect to unknown claimants. <u>See</u> Bar Date Order at pg. 5. This

determination resulted from extensive debate between various constituent groups. During the

course of the Debtors' April 2002 omnibus hearing, these parties discussed whether the Debtors

needed to disseminate the Bar Date Notice via television advertisements or other additional

media. Ultimately, this Court determined that the increase in coverage that would be provided

by television spots (from 83.8% of American households to 95% of American households) was

not worth the additional $2.5 million in costs. <u>See</u> <u>Exhibit D</u> at pg. 94. This Court stated, "I

truly don't see, given the reach of the newspapers, the consumer magazines, the business

9

magazines, *The Wall Street Journal*, *The Parade Magazine*, the debtor's website, the other places, the opportunity for people to call in to the debtor's establishment to get information concerning a proof of claim, I don't see the need for a television ad." Id. at 95.

19.     Therefore, the Debtors' publication notice provided each of the Late Claimants with legally sufficient notice of the Bar Date.

**C.     Neither of the Late Claimants have Established Neglect, Much Less Excusable Neglect**

20.     The Late Claimants have failed to satisfy the burden necessary for this Court to approve the Motion.  Bankruptcy Rule 9006(b)(1) grants the Court authority to accept late filings where the movant's failure to comply with the Bar Date "was the result of excusable neglect." The Supreme Court has held that under this rule, courts are *permitted, where appropriate*, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.  See Pioneer Inv. Services Co. v. Brunswick Ass'n Ltd. Partnership, 113 S.Ct. 1489, 1491 (1993) ("Pioneer").

21.     In determining whether to allow late proofs of claim, the Supreme Court has stated that the court's "inquiry is guided by one of the principal purposes of bankruptcy law, to secure within a limited period the prompt and effectual administration and settlement of the debtor's estate." Katchen v. Landy, 382 U.S. 323, 328 (1966).  Indeed, any other approach would severely undermine the fundamental purpose of a claims bar date - to serve as a "federally created statute of limitations, after which the claimant loses all of her right to bring an action against the debtor."  See In re Grand Union Co., 204 B.R. 864, 871 (Bankr. D. Del. 1997), citing In re Trans World Airlines, Inc., 96 F.3d 687, 690 (3d Cir. 1996).

22.     Once neglect has been established, the determination of whether such neglect should be excused is determined by the following factors: (i) the danger of the prejudice to the

debtor; (ii) the length of delay and its potential impact on judicial proceedings; (iii) the reason for

delay, including whether it was within the reasonable control of the movant; and (iv) whether the

movant acted in good faith.  See Pioneer, 113 S.Ct. at 1491.  The burden of proving excusable

neglect lies with the movant.  See Jones v. Chemetron Corp., 212 F.3d 199, 204 (3d. Cir. 2000).

23.    While courts have stopped short of establishing a *per se* rule that "excusable

neglect" cannot apply to "unknown creditors," such courts are loath to find excusable neglect for

unknown creditors given the existence and purpose of publication notice:

> We leave for another day the issue of *whether excusable neglect can ever be a*
> *viable defense in cases where the claimant is only entitled to publication notice.*
> Pioneer involved a situation in which the claimant had received actual notice of
> the bar date, but had nonetheless failed to file a proof of claim.  *It is considerably*
> *more difficult to apply the excusable neglect standard in cases involving*
> *publication notice.*  Recognizing excusable neglect claims based on the failure of
> the claimant to read the published notices would be problematic in either of these
> two categories.  In the former, recognizing claims that arise many years after the
> bankruptcy proceeding would subvert the very purpose of the bar date namely, to
> confer finality upon the proceedings.  Similarly, allowing claimants whose very
> conduct has made the claim speculative to file late proofs of claim would reward
> lack of diligence.  In both cases, permitting parties to file late proofs of claim
> would tend to render publication notice meaningless.

In re Trump Taj Mahal Assoc., 1993 WL 534494 at *6, fn. 7 (D.N.J. 1993) (emphasis added)

(attached as Exhibit E).

24.    Neither of the Late Claimants have satisfied their burden of establishing

excusable neglect.  *First,* as noted by the Court in Taj Mahal, excusable neglect may not be

available in situations involving constructive notice, because such an application would render

publication notice meaningless.  Therefore, since both of the Late Claimants were only entitled

to publication notice with respect to the Site and adjacent land, they may be prohibited, as a

matter of law, from establishing excusable neglect.  See In re Trump Taj Mahal Assoc., 1993

WL 534494 at *6, fn. 7.  *Second*, even if the Late Claimants are not precluded from pursuing

excusable neglect, neither of the Late Claimants have shown that their respective failures to file

11

timely proofs of claim were the product of *any* neglect, let alone *excusable* neglect. Instead, the Late Claimants base their entire argument on the incorrect assertion that they each did not receive proper notice. However, both of the Late Claimants received sufficient constructive notice of the Bar Date -- notice that was approved by this Court. See Bar Date Order at pg. 5. Furthermore, the Late Claimants have not established any other facts that would support a finding of excusable neglect.

25.    Furthermore, with respect to Vancott, despite the Late Claimants' assertion to the contrary, the Debtors properly served Vancott with a copy of the Bar Date Package. See Declaration of Service (attached hereto as Exhibit F). Vancott received actual notice on account of dealings with the Debtors that are unrelated to their asserted claims, and it also received notice of the Debtors' chapter 11 cases. Despite its apparent awareness of the Debtors' chapter 11 cases, and actual receipt of the Bar Date Notice, Vancott has utterly failed to adequately explain its failure to file a timely claim.

26.    It appears that Pacificorp was not served with the Bar Date Notice Package. However, Pacificorp by its own admission did receive notice of the Debtors' chapter 11 cases, and filed a proof of claim under its trade name, Utah Power & Light, nearly two years before the Bar Date. Pacificorp thus (i) knew that the Debtors were in bankruptcy; (ii) knew that the proof of claim process was the appropriate method for asserting any claims against the Debtors; and (iii) could have filed a similar claim for the amounts in question at any time before the Bar Date. Nonetheless, Pacificorp does not offer any explanation for its failure to file a proof of claim with respect to the Site or adjacent land.

27.    Therefore, neither of the Late Claimants have satisfied their burdens of proving excusable neglect.

12

**D.      The Debtors Would be Severely Prejudiced if this Court Grants the Motion**

28.      Permitting the Late Claimants to file late proofs of claim would severely prejudice

the Debtors.  The Debtors submitted their *Plan of Reorganization* on November 14, 2004

[Docket No. 6895] and their Amended Joint Plan of Reorganization on January 13, 2005 [Docket

No. 7560], and the Court held the first hearing concerning plan-related matters on January 21,

2005.  Pursuant to the Court's directives, the Debtors are working diligently to establish viable

case management procedures for estimation of asbestos-related liabilities and pursuing other

plan-related matters.  In order for the Debtors to confirm a comprehensive, viable plan of

reorganization, they need complete and accurate information regarding the nature, amount and

status of all claims that will be asserted in these chapter 11 cases.  Accordingly, the Debtors

requested (and this Court granted) March 31, 2003, as the deadline for the filing of certain proofs

of claim or interest against the Debtors' estates.  The Debtors' plan and related disclosure

statement contain projections of allowed claims and estimates of how such claims will be paid

under the plan.  It would thwart the purposes of the Bar Date and detrimentally affect the

Debtors' plan projections to now allow the Late Claimants to file a late claim at this stage in the

process.

29.      Further, granting the Motion may also open the "flood gates" for similar claims

and render the Debtors' publication notice meaningless.[6]  In order to progress towards plan

confirmation, the Debtors need a certain degree of certainty with respect to the potential claims

that will have to be satisfied by the Debtors' reorganization plan.  This is exactly why the

---

[6] The Debtors note that the Motion is not the first motion to file a late proof of claim that has
been filed in these chapter 11 cases.  Royal Indemnity Company [Docket No. 4667] and Intercat,
Inc. [Docket No. 6151] also filed similar motions.

13

Debtors sought a Bar Date. Granting the Late Claimants' Motion would encourage uncertainty and deprive the Debtors of any assurance of the scope of their liabilities, which was the fundamental purpose behind the Bar Date. It would also render the Debtors' publication notice meaningless, and allow other "unknown" claimants to file late-filed claims in the wake of the Late Claimants' efforts.

**E.    The Bar Date Applies to the Late Claimants' Proposed Claim**

30.    The Late Claimants suggest that the Bar Date "may not apply" to their proposed claims, and they support this proposition by quoting from the definition of an "Asbestos Property Damage Claim." <u>See</u> Motion at pg. 2, ¶2. The Late Claimant may be correct that their proposed claims would not fall within the definition of "Asbestos Property Damage Claims." The scope of the Bar Date, however, was not limited to "Asbestos Property Damage Claims" -- it also covered "Non-Asbestos Claims," which were defined as follows:

> ***"Non-Asbestos Claims"*** are ***any claims*** against the Debtors ***as of the time immediately preceding the commencement of the Chapter 11 cases on April 2, 2001*** other than Asbestos Personal Injury Claims, Asbestos Property Damage Claims, Zonolite Attic Insulation Claims, Settled Asbestos Claims or Medical Monitoring Claims. More specifically, Non-Asbestos Claims are those claims against one or more of the Debtors, whether in the nature of or sounding in tort, contract, warranty or any other theory of law or equity for, relating to or arising by reason of, directly or indirectly, any injury, damage or economic loss caused or allegedly caused directly or indirectly by any of the Debtors or any products or materials manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors and arising or allegedly arising directly or indirectly, from acts or omissions of one or more of the Debtors, including, but not limited to, all claims, debts, obligations or liabilities for compensatory and punitive damages. For purposes of the Bar Dates, the defined term "Non-Asbestos Claim" is not intended to include those claims separately defined herein as (a) Asbestos Personal Injury Claims; (b) Asbestos Property Damage Claims; (c) Zonolite Attic Insulation Claims; (d) Settled Asbestos Claims; or (e) Medical Monitoring Claims.

<u>See</u> *General Instructions for Completing All Proof of Claim Forms* (a copy of which is attached as <u>Exhibit G</u>). The Late Claimants' proposed claims falls squarely within the definition of Non-

14

91100-001\DOCS_DE:105611.1

Asbestos Claims and, therefore, the Late Claimants' suggestion that the Bar Date may not apply to their claim is wholly without merit.

WHEREFORE, for the foregoing reasons, the Debtors respectfully object to the Motion, and request this Court enter an order (substantially in the form attached hereto as <u>Exhibit H</u>) that (i) denies the Motion and (ii) grants such other relief as the Court deems just and proper.

Dated: February 11, 2005

Respectfully submitted,

KIRKLAND & ELLIS LLP
James H.M. Sprayregen, P.C.
Janet S. Baer
James W. Kapp III
Samuel L. Blatnick
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No.3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

91100-001\DOCS_DE:105611.1