**EXHIBIT D**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              . Case No.  01-1139(JFK)
                                    .
                                    .
  W.R. GRACE & CO., et al.,         .
                                    . 5414 USX Tower Building
                                    . Pittsburgh, PA 15222
                      Debtors.      .
                                    . April 22, 2002
. . . . . . . . . . . . . . . . . . 10:05 a.m.

TRANSCRIPT OF HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:                     Kirkland & Ellis
                                    By:  DAVID M. BERNICK, ESQ.
                                         JAMES KAPP, ESQ.
                                         JANET S. BAER, ESQ.
                                    200 East Randolph Dr.
                                    Chicago, IL 60601

For the Environmental               U.S. Department of Justice
Protection Agency:                  Environment and Natural Resources
                                        Division
                                    By:  JAMES D. FREEMAN, ESQ.
                                    (Telephonically)

For Edythe Kellogg:                 Scanlon, Sessums, Parker
                                        & Dallas, P.L.L.C.
                                    By:  PAT H. SCANLON, ESQ.
                                    1650 Mirror Lake Plaza
                                    2829 Lakeland Drive
                                    Jackson, MS 39208
                                    (Telephonically)

Audio Operator:                     Cathy Younker

Proceedings recorded by electronic sound recording, transcript
                 produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
E-mail:  jjcourt@optonline.net

**(609) 586-2311  Fax No.  (609) 587-3599**

T012

93

1  at this point in time, especially since it is the case that

2  we've resolved every other issue amongst ourselves since the

3  last hearing.

4          THE COURT:  What's the cost?  I want a cost benefit

5  analysis.  What happens if we put the TV and the earned media

6  back in?

7          MR. BAENA:  Well, Judge, if we're going to have cost

8  benefit analyses --

9          THE COURT:  Because we may have to do it again.  So I

10 want to know --

11         MR. BAENA:  If we're going to have that, then I'm not

12 going to -- I'm going to put Mr. Bernick on the stand if he's

13 going to testify to it.  I want to take testimony on that.

14         THE COURT:  I want to know what the cost is.

15         MR. BAENA:  I don't know.

16         THE COURT:  Okay.

17         MR. BAENA:  The program as it stands now is estimated

18 to cost approximately $2.9 million.

19         THE COURT:  No, I meant with the TV in, because there

20 were estimates earlier.

21         MR. BAENA:  Well, the -- but the other estimate

22 included additional notices in addition to television, for

23 Zonolite.

24         THE COURT:  Oh, well, yes.

25         MR. BAENA:  So it's not like we're right back to

1 where we started from, it's just the television component of
2 the former program.

3 THE COURT: Well, we're pretty much back where we
4 started if the same market is attempting to be solicited.

5 MR. BAENA: No, they were going to publish different
6 sorts of ads and they had to show product for the Zonolite. It
7 was a different program, Judge.

8 MR. BERNICK: Your Honor, in specific response to
9 your question, the cost of the TV is $2.5 million. And that's
10 set forth in our original revised bar date notice program filed
11 in November. That's the television, not the part of the
12 program now.

13 Non-TV, without the TV reaches 83.8 percent of
14 households already. If you put the TV in, you go from 83 to 95
15 percent. So you're producing a spread from 83 to 95 at a cost
16 of two and a half million dollars. So significant is that,
17 that Mr. Hilsay in his own affidavit filed in March of this
18 year in this case specifically said that U.S. television would
19 be for ZAI and PI, not for property damage. That was his own
20 judgment at the time. So it's not a question of what we'll
21 represent to the Court, it's already a matter of record from
22 their own expert. So what's essentially happening is although
23 Mr. Hilsay hasn't actually submitted something to say it, is
24 that first he didn't want to say anything about property
25 damage, nothing. Then he said, oh, yes, property damage can

1 have a program, does not involve television.  Then we eliminate

2 everything else and now he says well, maybe we want to have

3 television.

4          THE COURT:  I truly don't see, given the reach of the

5 newspapers, the consumer magazines, the business magazines, the

6 *Wall Street Journal*, the *Parade* magazine, the debtor's website,

7 the other places, the opportunity for people to call in to the

8 debtor's establishment and get information concerning a proof

9 of claim, I don't see the need for a television ad.

10          MR. BAENA:  Well, Judge, I don't know that anything

11 you've heard or seen so far permits you to come to that

12 conclusion, respectfully.

13          THE COURT:  I have several affidavits, all of which

14 I've read, are you going to challenge the credibility of those

15 witnesses?

16          MR. BAENA:  No, I'm --

17          THE COURT:  Do I need an evidentiary hearing?

18          MR. BAENA:  Those affidavits do not parse out the

19 program we're talking about now.

20          THE COURT:  Which is what?

21          MR. BAENA:  Which is a program for traditional

22 property damage claimants consisting of both commercial and

23 residential as well as state and other government claimants.

24 And I would add, Judge, that if you look back on Celetex where

25 we had in addition to commercial residential claimants, you