**EXHIBIT E**

Westlaw.

Not Reported in F.Supp.
1993 WL 534494 (D.N.J.)
(Cite as: 1993 WL 534494 (D.N.J.))

Page 1

▷
Only the Westlaw citation is currently available.

United States District Court, D. New Jersey.
In re TRUMP TAJ MAHAL ASSOCIATES,
Trump Taj Mahal, Inc., The Trump Taj Mahal
Corporation, and Trump Taj Mahal Funding, Inc.,
Debtors.
TRUMP TAJ MAHAL ASSOCIATES,
Plaintiffs-Appellees,
v.
Helen O'HARA and Eugene O'Hara
Defendants-Appellants,
and
Ginan ALIBRAHAM, Rashid Alibraham, Cynthia
Smith, Ann Jordan, Marilyn Kunkel,
Robert W. Matthews, Louis J. Picariello, Cynthia
Picariello Rita Newman,
Madelyn Tolerico, Louise Mc Ree and Earl McRee,
Defendants.
Civ. A. No. 93-3571 (JEI) Adv. No. 93-2056.

Dec. 13, 1993.
Schwartz, Tobia & Stanziale, P.C. by Martin L. Borosko, Montclair, NJ, for plaintiffs-appellees.

Carmen R. Faia, P.C. by Carmen R. Faia, Pleasantville, NJ, for defendants-appellants Helen O'Hara and Eugene O'Hara.

MEMORANDUM OPINION AND ORDER
AFFIRMING OPINION AND ORDER OF
BANKRUPTCY COURT

IRENAS, District Judge.

*1 On July 16, 1991, Trump Taj Mahal Associates, Trump Taj Mahal, Inc., Trump Taj Mahal Corporation, and Trump Taj Mahal Funding, Inc. (collectively, the "Taj" or the "debtor") filed petitions under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* Thereafter, pursuant to an order dated July 17, 1991, the bankruptcy court established August 23, 1991, as the deadline for filing proofs of claim against the debtor (the "bar date") and allowed notice of the bar date by publication in several local and national newspapers.

This case comes before the Court on appeal from a decision of Bankruptcy Judge Rosemary Gambardella enjoining a group of personal injury claimants, including the appellants, from filing proofs of claim after the bar date had passed. Applying the "known or reasonably ascertainable" standard set forth in *Tulsa Professional Collection Services v. Pope,* 485 U.S. 478 (1988), Judge Gambardella concluded that appellants' claims resulting from a slip and fall incident at the Trump Taj Mahal were "speculative and conjectural," and that publication notice of the bar date was sufficient to satisfy due process requirements.

We find that the Bankruptcy Court did not commit an abuse of discretion in finding that appellants' claims against the Taj were speculative and conjectural, where appellants had filed a prepetition incident report but failed to respond to a letter from debtor's claim adjuster mailed ten months before the bar date. The order of the bankruptcy court enjoining the appellants from filing a proof of claim will be affirmed.

I. BACKGROUND

A. *Factual Background*

The facts of this case are detailed in the opinion accompanying Judge Gambardella's order, *In re Trump Taj Mahal Associates,* 156 B.R. 928 (Bankr.D.N.J.1993). On August 23, 1990, appellant Helen O'Hara was allegedly injured in a "slip and fall" incident at the Trump Taj Mahal. She and her husband, appellant Eugene O'Hara, filed a report of the incident with a security guard or other Taj representative that same day.

On October 12, 1990, Jay Baver, a Claims Adjuster for the Taj, sent a letter to Mrs. O'Hara in which he acknowledged receipt of the accident report and advised her that the Taj was "willing to consider paying your out-of-pocket medical bills associated

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1993 WL 534494 (D.N.J.)
(Cite as: 1993 WL 534494 (D.N.J.))

Page 2

with this matter as well as additional compensation for distress." Letter from Jay Baver to Helen O'Hara dated Oct. 12, 1990. Baver requested that Mrs. O'Hara forward to him copies of all medical bills, as well as a doctor's evaluation of her injury. The O'Haras apparently failed to reply to this letter. [FN1]

B. *Procedural History*

The debtor petitioned for bankruptcy under Chapter 11 of the Bankruptcy Code on July 16, 1991. By Order dated July 17, 1991, Judge Gambardella (1) established August 23, 1991, as the bar date for filing proofs of claim, [FN2] and (2) allowed notice of the bar date by publication in the *New York Times,* the *Wall Street Journal,* the *Newark Star-Ledger,* the *Atlantic City Press,* and the *Philadelphia Inquirer.* In addition to publication notice, the debtor was required to give actual notice by mail to known creditors.

On August 21, 1992, almost one year to the day after the bar date had passed, the O'Haras filed a complaint in the Superior Court of New Jersey, Law Division--Atlantic County, seeking damages as a result of the injuries allegedly suffered by Mrs. O'Hara at the Taj Mahal. On October 7, 1992, appellants' counsel was advised by Nicholas F. Moles, Senior Vice President of Law at the Taj, that since appellants had not filed a proof of claim before the bar date, "further proceedings in this matter are barred by the provisions of the United States Bankruptcy Code." Letter from Nicholas F. Moles to Carmen Faia dated Oct. 5, 1992. Appellants continued with the litigation, and requested copies of the bankruptcy pleadings thus far submitted so that Mrs. O'Hara could file a proof of claim.

*2 Debtor filed a "Second Order to Show Cause Why Defendants Should not be Enjoined from Prosecuting an Action against Debtors Barred by 11 U.S.C. § 362, the Restraining Order Dated July 17, 1991, the Order of Confirmation Dated August 28, 1991 and 11 U.S.C. § 524(a)(3)" ("Second Order to Show Cause") against appellants and other personal injury claimants who had instituted actions against the Taj after the bar date had passed. On April 4, 1992, Judge Gambardella delivered an oral opinion in which she (1) granted the debtor's Second Order to Show Cause, (2) declared null and void any "complaints concerning prepetition debts filed against the Debtor in the present case after the onset of the automatic stay," 156 B.R. at 935, (3) enjoined the defendants from prosecuting the subject law suits against the debtor, and (4) found that the defendant's actions were for prepetition claims subject to the automatic stay provisions of § 524(a)(3).

A second hearing was held to discuss the "excusable neglect" [FN3] claims of defendants O'Hara and Jordan in light of the Supreme Court decision in *Pioneer Investment Serv. Co. v. Brunswick Assoc.,* 113 S.Ct. 1489 (1993). On July 1, 1993, Judge Gambardella issued a written opinion in which she found that the defendants had failed to establish excusable neglect. On July 14, 1993, an order was issued permanently enjoining Helen O'Hara and Eugene O'Hara, among others, from pursuing their cause of action.

Appellants filed a Notice of Appeal from the order on August 5, 1993. The issues designated for appeal addressed whether (1) the O'Haras could properly be considered "unknown" claimants; (2) publication notice of the bar date claims was adequate to provide due process to the O'Haras; (3) the Bankruptcy Court correctly held that the O'Haras' failure to file a claim did not constitute excusable neglect; and (4) the Bankruptcy Court acted within its discretion in denying the O'Haras request to enlarge the time within which to file a proof of claim.

II. LEGAL DISCUSSION

A. *Standard of Review*

The decision to permit or deny an untimely proof of claim lies within the sound discretion of the bankruptcy court, and the court's decision will only be disturbed upon a showing of an abuse of that discretion. *In re Vertientes, Ltd.,* 845 F.2d 57, 59 (3d Cir.1988). Reviewing courts should give wide deference to a determination whether a claimant in bankruptcy constitutes a known creditor deserving of actual notice. *In the Matter of Chicago, M. St. P. & P. RR. Co.,* 974 F.2d 775, 788 (7th Cir.1992). Assuming that a bankruptcy court has correctly applied proper legal precepts, and that the court's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1993 WL 534494 (D.N.J.)
(Cite as: 1993 WL 534494 (D.N.J.))

Page 3

basic and inferred factual findings are not clearly erroneous, [FN4] the bankruptcy court's ultimate determination should be affirmed absent an abuse of discretion. *In re Dykes,* No. 93-7235, slip op. at 2 (3d Cir. Nov. 30, 1993); *Meridian Bank v. Alten,* 958 F.2d 1226, 1230 n. 2 (3d Cir.1992); *In re Sharon Steel Corp.,* 871 F.2d 1217, 1222 (3d Cir.1989); *see also Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 102-03 (3d Cir.1981).

B. *Notice Requirements under the Due Process Clause*

*3 Appellants contend that their submission of an accident report to the Taj transformed them into "known creditors" entitled to actual notice of the August 23, 1991, bar date and that the failure of the Taj to provide them with such notice rendered their failure to timely file a proof of claim excusable neglect. Appellees respond that the Taj receives thousands of such reports each year, the vast majority of which do not proceed to litigation. Particularly where the putative plaintiff has failed to respond to offers of compensation, the Taj argues that the existence of a claim is too speculative to merit actual notice.

Due process requires notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). However, "impracticable and extended searched are not required in the name of due process." *Id.* at 316-19. Whether a particular method of notice is reasonably calculated to reach interested parties depends upon the particular circumstances of each case. *Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478, 484 (1988).

Bankruptcy law divides creditors into two groups when determining the proper notice to be given of bar dates: known and unknown creditors. The due process standard set forth in *Mullane* requires that the debtor's known creditors be given actual notice of the bankruptcy proceedings and relevant bar dates. *City of New York v. New York, N.H. & H.R. Co.,* 344 U.S. 293, 296 (1953). Unknown creditors, however, are merely entitled to constructive notice of the pendency of a bankruptcy proceeding and of relevant bar dates. *Mullane,* 339 U.S. at 314; *In re GAC Corp.,* 681 F.2d 1295, 1300 (11th Cir.1982). The first task for the bankruptcy court, then, is to determine whether the Taj had knowledge of the appellants' claims.

Unknown creditors are "those whose identities or claims are not reasonably ascertainable *and* those creditors who hold only conceivable, conjectural or speculative claims." *In re Thomson McKinnon Sec., Inc.,* 130 B.R. 717, 720 (Bankr.S.D.N.Y.1991) (citing *In re Charter Crude Oil Co.,* 125 B.R. 650, 655 (M.D.Fla.1991)) (emphasis added); *see also Pope,* 485 U.S. at 490 ("Nor is everyone who may conceivably have a claim properly considered a creditor entitled to actual notice.... [I]t is reasonable to dispense with actual notice to those with mere 'conjectural' claims."); *In re GAC Corp.,* 681 F.2d at 1300 (11th Cir.1982); *In re Hunt,* 146 B.R. 178 (Bankr.N.D.Texas 1992). Debtors are not required to search out every conceivable or possible creditor. It is enough if the debtor has made reasonably diligent efforts to uncover the identities and claims of any creditors.

Courts in other districts, reviewing factual situations similar to that of the instant case, have found the claims alleged to be speculative and conjectural. [FN5] In *In re L.F. Rothschild Holdings, Inc.,* No. 92-1129, 1992 WL 200834 (S.D.N.Y. Aug. 3, 1992), appellant John Barry had been the head of the debtor firm's investment banking division until he resigned in 1989. After his departure, Barry continued to contact executives at the firm, hoping to resolve a dispute over his 1988 bonus. The debtor filed a voluntary Chapter 11 petition in early 1991, and the bankruptcy court established May 1, 1991, as the bar date. Barry did not receive actual notice of the bar date, and sought permission to file a late proof of claim. The district court found that Barry's negotiations with the firm failed to constitute "a dispute ... of which LFR should have been aware." 1992 WL 200834 at *4. It concluded:

*4 [I]t is undisputed that after his resignation in September 1989, Barry gave no notice to LFR that he had any claim against LFR until more than two years later in November 1991.... Barry does not attempt to give any explanation why, despite his failure to notify LFR of his claim during the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1993 WL 534494 (D.N.J.)
(Cite as: 1993 WL 534494 (D.N.J.))

Page 4

two-year period, LFR should nevertheless have known that he had not abandoned any claims he may have had. Failure to remind LFR of the size and existence of his claim in his letter of resignation or to pursue it at any time thereafter seems inconsistent with status as a known creditor as opposed to a conceivable, or conjectural creditor.
*Id.; see also In re Flanigan's Enterprises, Inc.,* 77 B.R. 963 (Bankr.S.D.Fla.1987) (refusing to allow insurance company that had prior contractual relationship with debtor to file late proof of claim, where claimant had delayed in informing debtor of claim).

Similarly, in *In re Charter Company,* 125 B.R. 650 (M.D.Fla.1991), the court found that a dispute between the debtor and one of its oil suppliers was insufficient to render the supplier a "known creditor." Pemex had entered into a sales contract for the sale of oil to the debtor. However, the parties fell into a dispute over the effective date of a price reduction established by Pemex. The parties attempted to reconcile their differences, and the debtor believed the dispute was resolved when Pemex took no further action for several years.

The bankruptcy court held that Pemex was a known creditor entitled to formal, actual notice of the bar date. The district court reversed this determination, finding that Pemex's delinquency in pursuing any disputes it might have had against the debtor rendered it an unknown creditor for the purposes of determining the appropriate standard of notice:

> Even assuming Charter knew there was a possibility of a claim by Pemex, Charter was not required to give actual notice to creditors with merely conceivable, conjectural or speculative claims.... Also, if Charter reasonably believed, or could have believed, that Pemex had abandoned its claim, then even Charter's actual or constructive knowledge of a remote possibility of a claim by Pemex would not raise Pemex to the level of a known creditor deserving of actual notice of the bar date.

125 B.R. at 656 (citing *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791 (1983)); *see also Mullane,* 339 U.S. at 316 (noting that publication notice is sufficient for those creditors whom the debtor can reasonably assume to have abandoned their property interest).

In the instant case, appellants filed an incident report with the Taj in August of 1990 but refrained from further communication until August of 1992, when they filed suit in state court. Significantly, appellants failed to respond to a letter from a Taj Claims Adjuster, submitted to them ten months prior to the bar date, that offered to compensate them for medical and related expenses, as well as pain and suffering. There was nothing in the appellants' conduct that distinguished their case from the many thousands of claims received each year by the Taj that do not progress beyond the filing of an incident report. We cannot say that the bankruptcy judge erred in finding the appellants' claims to be speculative and conjectural. [FN6]

C. *Excusable Neglect*

*5 In the alternative, appellants argued that their failure to timely file proofs of claim is the result of excusable neglect, and that the bankruptcy court should have allowed them to file late pursuant to Rule 9006(b). The Third Circuit has held that Rule 9006(b) and Rule 3003(c)(3) are to be read in conjunction, and that the bankruptcy court may allow the filing of an untimely proof of claim only where the claimant's failure to timely file was due to excusable neglect. *In re Vertientes, Ltd.,* 845 F.2d 57 (3d Cir.1988).

The Supreme Court recently clarified the meaning of "excusable neglect" as the term is used in Rule 9006(b)(1). The Court found that "by empowering the court to accept late filings 'where the failure to act was the result of excusable neglect,' Rule 9006(b)(1), Congress plainly contemplated that the court would be permitted, where appropriate, to accept late filings cause by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Investment Serv. Co. v. Brunswick Assoc. Ltd. Partnership,* 113 S.Ct. 1489, 1495 (1993). The determination of whether neglect is excusable

> is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include ... the danger of prejudice to the debtor, the length of the delay and its impact on the judicial proceedings, the reason for the delay, including whether it was

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1993 WL 534494 (D.N.J.)  
(Cite as: 1993 WL 534494 (D.N.J.))

Page 5

within the reasonable control of the movant, and whether the movant acted in good faith. 113 S.Ct. at 1498. The burden of proving "excusable neglect" is on the creditor seeking to extend the bar date. *In re Nutri*Bevco,* 117 B.R. 771, 781 (Bankr.S.D.N.Y.1990).

In the case at bar, the bankruptcy court found that (1) the Taj would be prejudiced should the untimely claims be allowed, in that the claims would "deny the Debtor the 'fresh start' to which it is entitled," 156 B.R. at 937; (2) the impact of the delay upon the proceedings was significant; (3) appellants' inaction was the source of the delay; and (4) the defendants acted in good faith. In addition, the court noted that the appellants had received adequate notice of the bar date and that the bar date order was not ambiguous. Based on these findings, Judge Gambardella found that the appellants had failed to establish excusable neglect.

The O'Haras cannot claim excusable neglect based on the alleged insufficiency of publication notice, when their own conduct made them unknown creditors entitled only to publication notice. [FN7] The bankruptcy court properly considered and applied the relevant standard for the O'Haras's failure to file their proofs of claim in a timely manner. Given that its findings of fact were not clearly erroneous and its refusal to excuse appellants' dilatory conduct was not an abuse of discretion, the bankruptcy court's order enjoining appellants from filing proofs of claim is affirmed.

For the reasons set forth above,

*6 IT IS on this *13th* day of December, 1993,

ORDERED that the order of the bankruptcy court enjoining appellants from filing proofs of claim after expiration of the bar date be, and hereby is, AFFIRMED.

> FN1. It appears that the first communication from the appellants to the Taj after the filing of the incident report was the service of the summons and complaint in August of 1992.
>
> FN2. Rule 3003(c)(3) of the Rules of Bankruptcy Procedure allows the bankruptcy court to "fix and for cause shown [to] extend the time within which proofs of claim or interest may be filed." Bankr.R. 3003(c)(3).
>
> FN3. Rule 9006(b) allows the Court to extend the period for filing proofs of claim "on motion made after the expiration of the specified period ... where the failure to act was the result of excusable neglect." Bankr.R. 9006(b)(2).
>
> FN4. The Third Circuit distinguishes among three types of facts: basic facts, inferred factual conclusions, and ultimate facts. "Basic facts are the historical and narrative events elicited from the evidence.... Inferred factual conclusions are drawn from basic facts.... No legal precept is implicated in drawing permissible factual inferences." *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 102 (3d Cir.1981). Findings of these two types of facts are subject to the clearly erroneous standard.
> Ultimate facts are expressed in the language of a standard of law. *Id.* When reviewing an ultimate fact, the Court applies a mixed standard of review, "accept[ing] the trial court's findings of historical or narrative facts unless they are clearly erroneous, but exercis[ing] a plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." *In re Sharon Steel Corp.,* 871 F.2d 1217, 1223 (3d Cir.1989) (quoting *Universal Minerals,* 669 F.2d at 103).
>
> FN5. We find this case to be somewhat different from the line of cases involving "truly unknown" claimants, such as employees who develop occupational injuries subsequent to the company's insolvency. *See, e.g., In re Charter Company (Ziegler),* 113 B.R. 725 (M.D.Fl.1990) (discharging wrongful death claims made by claimants who were not aware of claims prior to the bar date); *In re Chicago, Rock Island, and Pac. R.R.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1993 WL 534494 (D.N.J.)  
(Cite as: 1993 WL 534494 (D.N.J.))

Page 6

*Co.,* 90 B.R. 329 (N.D.Ill.1987).

FN6. However, we emphasize that if the debtor had petitioned for bankruptcy shortly after the appellants filed their incident report, we would not find the appellants' claims to be speculative.

FN7. We leave for another day the issue of whether excusable neglect can ever be a viable defense in cases where the claimant is only entitled to publication notice. *Pioneer* involved a situation in which the claimant had received actual notice of the bar date, but had nonetheless failed to file a proof of claim. It is more considerably more difficult to apply the excusable neglect standard in cases involving publication notice.

Claims whose holders are entitled only to publication notice can be classified in one of two ways. The first relates to the nature of the claim and comprises those claims which, because of causational or attributional indeterminacies, are not discovered until after the bar date has passed. The most common example of this category is a claim for occupational exposure (e.g., asbestos), where the medical condition arises years after the exposure or where the cause of the condition is not known to the claimant at the time of the bar date. The second category includes cases in which the conduct of the claimant has rendered an otherwise known claim speculative, such as where a claimant fails to pursue or make known her claim for a protracted period. The instant case is an example of this category.

Recognizing excusable neglect claims based on the failure of the claimant to read the published notices would be problematic in either of these two categories. In the former, recognizing claims that arise many years after the bankruptcy proceeding would subvert the very purpose of the bar date, namely, to confer finality upon the proceedings. Similarly, allowing claimants whose very conduct has made the claim speculative to file late proofs of claim would reward lack of diligence. In both cases, permitting parties to file late proofs of claim would tend to render publication notice meaningless.

1993 WL 534494 (D.N.J.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.