IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |

**Objection Deadline: March 4, 2005**
**Hearing Date: March 21, 2005 at 12:00 p.m.**

# MOTION OF THE DEBTORS FOR AN ORDER AUTHORIZING THE DEBTORS TO ENTER INTO (A) AN EMPLOYMENT AGREEMENT WITH ITS CURRENT CHIEF OPERATING OFFICER UNDER WHICH HE WOULD ASSUME THE POSITION OF CHIEF EXECUTIVE OFFICER OF THE DEBTORS ("CEO") AND (B) A POST-RETIREMENT AGREEMENT WITH THE CURRENT CEO WHEREBY HE WOULD PROVIDE CONSULTING SERVICES RELATED TO DEBTORS' <u>CHAPTER 11 CASES</u>

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby move (the "Motion") this Court for entry of an order authorizing the Debtors to enter into a new employment agreement with Alfred E. Festa in connection with his assuming the position of Chief Executive Officer (the "CEO") of the Debtors; and to enter into a post-retirement

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

agreement with the current CEO for consulting services related to the Debtors' chapter 11 cases and other matters. In support of this Motion, the Debtors respectfully state as follows:

## Jurisdiction

1. This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 363(b) of chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code").

## Background

3. On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"), which have been consolidated for administrative purposes only. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors-in-possession.

4. Currently, the Debtors' management is headed by Paul J. Norris, who holds the position of CEO.[2] Reporting directly to Mr. Norris is Alfred E. Festa, the Chief Operating Officer and President of the Debtors (the "COO").

5. On November 19, 2004, Mr. Norris announced his intention to resign from the position of CEO of the Debtors, effective May 31, 2005.[3]

---

[2] Mr. Norris also holds the position of Chairman of the Board of the Debtors. Upon his retirement as CEO, he will retain the position of Chairman and has agreed to provide consulting services, as described herein.

[3] Mr. Norris' retirement announcement complies with the provisions of his amended CEO agreement with the Company, dated November 6, 2002, which was authorized by the Court on October 24, 2002.

6.  In light of Mr. Norris' intentions, the Debtors' Board of Directors have determined that Mr. Festa (the Debtors' current COO) should be promoted to the CEO position, whereby Mr. Festa would report directly to the Board.

### Mr. Festa's Qualifications

7.  Mr. Festa became the COO of the Debtors in November 2003.[4] At that time, it was anticipated that he would be a candidate to succeed Mr. Norris as CEO, upon Mr. Norris' retirement.

8.  Since Mr. Festa has become COO, each of the Debtors' businesses have reported directly to Mr. Festa, and those businesses have performed well. For the first 9 months of 2004, the Debtors reported sales of $1,670.8 million, a 13.7% increase over 2003. Also, for the same period, pre-tax income from core operations increased almost 50%, from $97.4 million in 2003 to $145.5 million in 2004. Net income through September 2004 was $85.1 million.

9.  The Debtors' Board, in its sound business judgment, believes that Mr. Festa (i) has made significant contributions to the Debtors' business performance since his appointment as COO and (ii) possesses the values, vision and leadership to succeed Mr. Norris as CEO.

### Mr. Festa's CEO Agreement

10. After determining to offer Mr. Festa the position of CEO, the Debtors and their representatives developed a competitive CEO compensation package to present to Mr. Festa. Thereafter, the Debtors and Mr. Festa and their respective counsel negotiated and finalized the terms under which Mr. Festa would agree to assume the position of CEO. Those terms comprise the proposed written agreement that is attached hereto as Exhibit A (the "CEO Agreement").

---

[4] On November 13, 2003, the Court entered an Order authorizing the Debtors to enter into an agreement with Mr. Festa as COO, which is dated November 17, 2003.

The CEO Agreement has been accepted by Mr. Festa and the Board approved the CEO Agreement (subject to Court approval) at its last meeting on January 19, 2005.

11.     The initial term of the CEO Agreement is for four (4) years, commencing on June 1, 2005, Mr. Festa's first day as CEO of the Debtors (and the day after Mr. Norris' retirement on May 31, 2005). The CEO Agreement includes competitive compensation arrangements that are consistent with such arrangements provided to other CEOs in similar positions with corporations similar to the Debtors. (Bubnovich Aff. at ¶ 10.)[5] Specifically, the CEO Agreement provides for an initial base salary of $760,000 and participation in the Debtors' existing annual incentive compensation program, at a targeted award equal to 100% of base salary (the "Annual Bonus Program"). Also, the CEO Agreement provides for participation in each of the Debtors' annual "long-term incentive compensation programs" (the "LTIPs"), with a targeted value under the 2005-2007 LTIP of $1,690,000. However, payments will only be made under the Annual Bonus Program and the LTIPs to the extent that specific financial targets are achieved by the Debtors for the applicable performance period.

12.     The CEO Agreement also provides Mr. Festa with a Chapter 11 emergence bonus of $1,750,000, which will be paid to him at specific times after the Debtors emerge from Chapter 11, provided he is still employed by the Debtors when payments are due under the Agreement.[6]

---

[5] The Affidavit of Nick Bubnovich, the Debtors' compensation consultant, is attached hereto as Exhibit C.

[6] The emergence bonus, as well as pro-rated awards under the Annual Bonus Program and LTIPs, will also be paid to Mr. Festa, if he is terminated by the Company without "cause" or if he terminates his employment as a result of "constructive discharge" after emergence from Chapter 11. In the unlikely event that the Debtors have not emerged from Chapter 11 within 36 months after the filing of a plan of reorganization, Mr. Festa would be paid the emergence bonus commencing at that time, provided he is then still employed by the Debtors.

4

13. The CEO Agreement also provides Mr. Festa with a severance benefit equal to two times 175% of his base salary at the time of termination, in the event he is terminated by the Debtors without "cause" or he terminates his employment with the Debtors as a result of "constructive discharge" (as those terms are defined in the Agreement), during the initial term of the CEO Agreement.

14. In all other respects, the CEO Agreement provides that Mr. Festa will be provided with benefits and prerequisites that are available to other senior officers of the Debtors, the current form of which have previously been approved by the Court.

### Mr. Norris' Post Retirement Consulting Agreement

15. The Debtors are also requesting that the Court authorize and approve an agreement between the Debtors and Mr. Norris, which would take effect immediately upon his retirement from the Debtors, under which Mr. Norris would provide consulting services regarding the Debtors' Chapter 11 Cases and other matters, under terms specified in a letter agreement between Mr. Norris and the Debtors, which is attached hereto as Exhibit B (the "Norris Consulting Agreement").

16. The Norris Consulting Agreement has been accepted by Mr. Norris, and the Board approved the Agreement (subject to Court approval) during its meeting on January 19, 2005.

17. Under the Norris Consulting Agreement, Mr. Norris would continue to provide advice and guidance to the Debtors with respect to the Chapter 11 Cases, as well as to assist the Debtors in other matters. Mr. Norris would perform these services as an independent contractor and would retain no authority to enter into agreements on behalf of the Debtors nor any management or supervisory authority.

18. The Debtors' Board believes, in its sound business judgment, that the Norris Consulting Agreement is in the best interest of the Debtors, as well as the Debtors' stakeholders, because Mr. Norris has been involved in the Chapter 11 Cases as CEO of the Debtors since the commencement of the Cases, and his background and knowledge regarding these Cases, along with his professional skills, will facilitate the Debtor's reorganization. Therefore, the Norris Consulting Agreement will provide for an uninterrupted continuation of the Debtors' efforts to emerge from Chapter 11. In addition, Mr. Norris would also be available to provide the Debtors with other consulting services, including assistance related to the transition from Mr. Norris' term as CEO to Mr. Festa's term.

19. In exchange for those consulting services, Mr. Norris will initially receive a monthly retainer equal to $35,416.67 per month (i.e., $425,000 annually). The Board and Mr. Norris negotiated the amount of the retainer based on the assumption that Mr. Norris' duties under the Norris Consulting Agreement will generally require him to dedicate an amount of time equal to approximately one-half of a regular 40 hour per week work schedule. Mr. Norris and the Board have also agreed that, if the amount of time he must dedicate to these duties is or becomes significantly less than contemplated, then his monthly fee will be similarly adjusted downward. There are no other compensation components under the Norris Consulting Agreement.

20. The Norris Consulting Agreement may be terminated by the Debtors' Board or Mr. Norris at any time upon 30 days' written notice, without the obligation to make any post-termination payments; provided that the Agreement shall in any event terminate no later than 90 days after the Debtors emerge from Chapter 11.

**Relief Requested**

21. The Debtors request that the Court authorize and approve the Debtors' entry into the CEO Agreement and Norris Consulting Agreement pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.

**Basis For Relief**

22. The CEO Agreement and Norris Consulting Agreement each provide a significant benefit to the Debtors' estates by obtaining the services of Mr. Festa as CEO of the Debtors and by obtaining Mr. Norris' consulting services regarding the Chapter 11 Cases and other matters after he retires as CEO of the Debtors. The Debtors in their business judgment believe the CEO Agreement and the Norris Consulting Agreement are each reasonable in light of the circumstances surrounding the Debtors' Chapter 11 Cases. The Debtors, in their reasonable business judgment, believe that, for the reasons discussed herein, that the CEO Agreement and Norris Consulting Agreement are each in the best interests of the Debtors' estates and their creditors, and should be approved.

23. Section 105(a) of the Bankruptcy Code "permits the court to issue any order that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a). Section 363(b) of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may use, ... other than in the ordinary course of business, property of the estate." A court has the statutory authority to authorize a debtor to use property of the estate pursuant to section 363(b)(1) of the Bankruptcy Code when such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); see also, Fulton State Bank v. Schipper, 933 F.2d 513, 515 (7th Cir. 1991) (a debtor's

decision must be supported by "some articulated business justification"); Stephen Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); In re Ernst Home Center, Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

24. Under section 363(b) of the Bankruptcy Code, a debtor has the burden to establish that it has a valid business purpose for using estate property outside the ordinary course of business. See Lionel Corp., 722 F.2d at 1070-71. Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest belief that the action was in the debtor's best interest. See In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992). A party in interest seeking to challenge the debtor's valid business purpose must "produce some evidence supporting its objections." Montgomery Ward, 242 B.R. at 155.

25. Generally, courts authorize debtors to use assets of the estate to employ and compensate executives, including provision for bonus and severance packages. See Montgomery Ward, 242 B.R. at 155 (approving retention bonuses as within debtor's sound business judgment); In re America West Airlines, Inc., 171 BR. 674, 678 (Bankr. D. Ariz. 1994) (approving success bonuses to certain officers and employees as within debtor's sound business judgment); In re Interco Inc., 128 BR. 229, 234 (Bankr. E.D. Mo. 1991) (authorizing the debtor to assume prepetition severance contracts and approving performance based retention program to ensure critical employees remained with the debtor).

26. The Debtors exercised sound business judgment in deciding to enter into the CEO Agreement with Mr. Festa because, as stated above, the CEO Agreement will benefit the

8

Debtors' estates by addressing the Debtors' need to fill the position of CEO, vacated as a result of Mr. Norris' retirement.

27. The Debtors also exercised sound business judgment in entering the Norris Consulting Agreement because, as stated above, the Norris Consulting Agreement will provide the Debtors with a valuable resource for advice with respect to the Chapter 11 Cases, which will promote continuity regarding the Debtors' efforts to emerge from Chapter 11, as well as for advice with respect to other matters related to the affairs of the Debtors.

28. The compensation provisions of the CEO Agreement are reasonable for the position. The Debtors' compensation consultant performed two different analyses to determine if the compensation under the CEO Agreement is within the range of competitive practice. (Bubnovich Aff. at ¶ 4.) As indicated in the Bubnovich Affidavit, the compensation provided for in the CEO Agreement is within the range of applicable competitive practice. (Bubnovich Aff. at ¶ 10.) Mr. Bubnovich also analyzed the severance component of the CEO Agreement and the Chapter 11 emergence bonus and determined that each is within the range of competitive practice with respect to amount and triggering events. (Bubnovich Aff. at ¶¶ 11 to 15.)

29. The compensation terms of the Norris Consulting Agreement are also reasonable, based upon (i) the assumption that the Norris Consulting Agreement will require Mr. Norris to dedicate approximately one-half of a regular 40 hour per week work schedule to his duties thereunder; (ii) the understanding of the parties that the initial consulting fee will be decreased, if warranted; and (iii) each party's ability to terminate the Agreement without incurring any termination costs.

## Notice

30. Notice of this Motion has been given to: (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' pre-petition lenders, (iv) counsel to the official committees, and (v) all those parties that requested service and notice of papers in accordance with Fed.R.Bankr.P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Request

31. No prior motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached hereto, (a) authorizing the Debtors to enter into the CEO Agreement with Mr. Festa, (b) authorizing the Debtors to enter the Norris Consulting Agreement with Mr. Norris, and (c) granting such other and further relief as is just and proper.

Dated: February 11, 2005

Respectfully submitted,

KIRKLAND & ELLIS LLP
James H.M. Sprayregen, P.C.
Janet S. Baer
James W. Kapp III
Samuel L. Blatnick
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

_____
Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession