TAXPAYER:  FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP
TIN:       13-3461988

Page **44** of \_\_\_\_\_

Tax Periods: 199312 199412 199512 199612

### 199612 - SCHEDULE D ADJUSTMENTS

**SCHEDULE D - SHORT TERM:**

| ISSUE NUMBER | SAIN NUMBER | ENTITY | AMOUNT | CATEGORY |
|--------|--------|--------|--------|--------|
| -0104 | 409 | W.R. GRACE & CO.--CONN. | 3,248,244.00 | CAPITAL LOSS CARRYOVER |
| | | | 3,248,244.00 | |

**SCHEDULE D - LONG TERM:**

| ISSUE NUMBER | SAIN NUMBER | ENTITY | AMOUNT | CATEGORY |
|--------|--------|--------|--------|--------|
| -0116 | 410 | GRACE TARPON INVESTORS | 127,228.00 | LT CAPITAL GAIN/LOSS |
| | | | 127,228.00 | |

TAXPAYER:   FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP

TIN:        13-3461988

Page __45__ of ____

Tax Periods: 199312 199412 199512 199612

## 199312 - RECOMPUTATION OF FORM 4797

| FORM 4797 - PART I: | (a) PER RETURN | (b) ADJUSTMENTS | (c) AS CORRECTED |
|---|---|---|---|
| 1. Net gain/loss | (2,630,402.00) | 0.00 | (2,630,402.00 |
| 2. Nonrecaptured net section 1231 losses from prior years | 0.00 | 0.00 | 0.00 |
| 3. Balance (line 1 less line 2, but not less than zero) | 0.00 | | 0.00 |
| 4. Adjustment schedule D long term capital gains | | | 0.00 |
| 5. Adjustment to form 4797 | | | 0.00 |
| | | | 0.00 |

SUMMARY OF UNAPPLIED NONRECAPTURED NET SECTION 1231
LOSSES FROM PRIOR YEARS

| | | | |
|---|---|---|---|
| Nonrecaptured net section 1231 losses from prior years | 0.00 | 0.00 | 0.00 |
| Less:  Section 1231 losses applied against Section 1231 gains | 0.00 | | 0.00 |
| Unapplied nonrecaptured net section 1231 losses | 0.00 | | 0.00 |

| FORM 4797  - PART II: | | | |
|---|---|---|---|
| 6. Ordinary Gain/Loss | 44,495,671.00 | 0.00 | |
| 7. Net adjustments from Form 4797 - Part I above | | 0.00 | |
| 8. Total Ordinary Gain/Loss | | | 44,495,671.00 |
| 9. Adjustment to taxable income | | | 0.00 |

TAXPAYER:  FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP

TIN:       13-3461988

Page __46__ of ____

Tax Periods: 199312 199412 199512 199612

## 199412 - RECOMPUTATION OF FORM 4797

| FORM 4797 - PART I: | (a) PER RETURN | (b) ADJUSTMENTS | (c) AS CORRECTED |
|---|---|---|---|
| 1. Net gain/loss | 12,343,153.00 | (1,711,280.00) | 10,631,873.00 |
| 2. Nonrecaptured net section 1231 losses from prior years | 0.00 | 2,630,402.00 | 2,630,402.00 |
| 3. Balance (line 1 less line 2, but not less than zero) | 12,343,153.00 | | 8,001,471.00 |
| 4. Adjustment schedule D long term capital gains | | | (4,341,682.00) |
| 5. Adjustment to form 4797 | | | 2,630,402.00 |

SUMMARY OF UNAPPLIED NONRECAPTURED NET SECTION 1231
LOSSES FROM PRIOR YEARS

| | | | |
|---|---|---|---|
| Nonrecaptured net section 1231 losses from prior years | 0.00 | 2,630,402.00 | 2,630,402.00 |
| Less:  Section 1231 losses applied against Section 1231 gains | 0.00 | | 2,630,402.00 |
| Unapplied nonrecaptured net section 1231 losses | 0.00 | | 0.00 |

| FORM 4797  - PART II: | | | |
|---|---|---|---|
| 6. Ordinary Gain/Loss | 44,551,191.00 | 0.00 | |
| 7. Net adjustments from Form 4797 - Part I above | | 2,630,402.00 | |
| 8. Total Ordinary Gain/Loss | | | 47,181,593.00 |
| 9. Adjustment to taxable income | | | 2,630,402.00 |

TAXPAYER: FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP

TIN: 13-3461988

Page **47** of ____

Tax Periods: 199312 199412 199512 199612

## 199412 - FORM 4797 ADJUSTMENTS

| ISSUE NUMBER | SAIN NUMBER | ENTITY | AMOUNT | CATEGORY |
|--------|--------|--------|--------|--------|

FORM 4797 - PART I GAIN/LOSS:

| -0164 | 409 | W.R. GRACE & CO.--CONN. | (1,711,280.00) | FORM 4797 - PART I GAIN |

(1,711,280.00)

NONRECAPTURED 1231 LOSS:

| -0157 | 409 | FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP | 2,630,402.00 | NONRECAPTURED 1231 LOSS |

2,630,402.00

TAXPAYER:  FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP

TIN:   13-3461988

Page __48__ of ____

Tax Periods: 199312 199412 199512 199612

## 199512 - RECOMPUTATION OF FORM 4797

| FORM 4797 - PART I: | (a)<br>PER RETURN | (b)<br>ADJUSTMENTS | (c)<br>AS CORRECTED |
|---|---|---|---|
| 1. Net gain/loss | (26,252,333.00) | 0.00 | (26,252,333.00 |
| 2. Nonrecaptured net section 1231 losses from prior years | 0.00 | 0.00 | 0.00 |
| 3. Balance (line 1 less line 2, but not less than zero) | 0.00 | | 0.00 |
| 4. Adjustment schedule D long term capital gains | | | 0.00 |
| 5. Adjustment to form 4797 | | | 0.00 |

SUMMARY OF UNAPPLIED NONRECAPTURED NET SECTION 1231
LOSSES FROM PRIOR YEARS

| | | | |
|---|---|---|---|
| Nonrecaptured net section 1231 losses from prior years<br>Less: Section 1231 losses applied against Section<br>1231 gains | 0.00<br>0.00 | 0.00 | 0.00<br>0.00 |
| Unapplied nonrecaptured net section 1231 losses | 0.00 | | 0.00 |

| FORM 4797 - PART II: | | |
|---|---|---|
| 6. Ordinary Gain/Loss | (21,136,880.00) | 0.00 |
| 7. Net adjustments from Form 4797 - Part I above | | 0.00 |
| 8. Total Ordinary Gain/Loss | | (21,136,880.00) |
| 9. Adjustment to taxable income | | 0.00 |

DATE TAX COMPUTATION GENERATED     01/06/2005

TAXPAYER:  FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP

TIN:        13-3461988

Page **49** of _____

Tax Periods: 199312 199412 199512 199612

## 199612 - RECOMPUTATION OF FORM 4797

| FORM 4797 - PART I: | (a)<br>PER RETURN | (b)<br>ADJUSTMENTS | (c)<br>AS CORRECTED |
|---|---|---|---|
| 1. Net gain/loss | 113,150,451.00 | (26,585.00) | 113,123,866.00 |
| 2. Nonrecaptured net section 1231 losses from prior years | 26,252,333.00 | 0.00 | 26,252,333.00 |
| 3. Balance (line 1 less line 2, but not less than zero) | 86,898,118.00 | | 86,871,533.00 |
| 4. Adjustment schedule D long term capital gains | | | (26,585.00) |
| 5. Adjustment to form 4797 | | | 0.00 |

SUMMARY OF UNAPPLIED NONRECAPTURED NET SECTION 1231
LOSSES FROM PRIOR YEARS

| | | | |
|---|---|---|---|
| Nonrecaptured net section 1231 losses from prior years<br>Less:  Section 1231 losses applied against Section<br>1231 gains | 26,252,333.00<br><br>26,252,333.00 | 0.00 | 26,252,333.00<br><br>26,252,333.00 |
| Unapplied nonrecaptured net section 1231 losses | 0.00 | | 0.00 |

| FORM 4797 - PART II: | | | |
|---|---|---|---|
| 6. Ordinary Gain/Loss | 70,850,113.00 | 0.00 | |
| 7. Net adjustments from Form 4797 - Part I above | | 0.00 | |
| 8. Total Ordinary Gain/Loss | | | 70,850,113.00 |
| 9. Adjustment to taxable income | | | 0.00 |

DATE TAX COMPUTATION GENERATED     01/07/2005

TAXPAYER: FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP

TIN:        13-3461988

Page **50** of _____

Tax Periods: 199312 199412 199512 199612

### 199612 - FORM 4797 ADJUSTMENTS

| ISSUE NUMBER | SAIN NUMBER | ENTITY | AMOUNT | CATEGORY |
|----------|----------|----------|----------|----------|

FORM 4797 - PART I GAIN/LOSS:

| -0116 | 410 | GRACE TARPON INVESTORS | (26,585.00) | FORM 4797 - PART I GAIN |

(26,585.00)

DATE TAX COMPUTATION GENERATED    01/07/2005

TAXPAYER:   FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP
TIN:        13-3461988

Page **SJ** of ____

Tax Periods: 199312 199412 199512 199612

## 199412 - SUMMARY OF CHARITABLE CONTRIBUTIONS

1. Total charitable contributions before limitations

4,771,552.00

2. Less: Total contribution adjustments - (Increase) or decrease

462,000.00
--------------------

3. Total charitable contributions as corrected before limitations

4,309,552.00
====================

4. Taxable income per return

411,692,503.00

5. Add: Income and Expense adjustments other than charitable contributions

(59,070,703.00)
--------------------

6. Taxable income as corrected before charitable contributions

352,621,800.00

7. Add:  Charitable contributions per return
         Special deductions allowed per exam
         Net operating loss carryback to the tax year allowed per exam
         Capital loss carryback to the tax year allowed per exam
         Deductions allowed under sections 249 and 250 allowed per exam

|  |  |
|---|---:|
| Charitable contributions per return | 4,771,552.00 |
| Special deductions allowed per exam | 135,141,259.00 |
| Net operating loss carryback to the tax year allowed per exam | 0.00 |
| Capital loss carryback to the tax year allowed per exam | 0.00 |
| Deductions allowed under sections 249 and 250 allowed per exam | 0.00 |

139,912,811.00
--------------------

8. Taxable income as adjusted

492,534,611.00
x10%
--------------------

9. Maximum allowable deduction for charitable contributions

49,253,461.00
====================

10. Charitable contribution deduction per return

4,771,552.00

11. Less: Allowable deduction for contributions (Lesser of Line 3 or Line 9)

4,309,552.00
--------------------

12. Adjustment - (Increase) or Decrease in charitable contributions

462,000.00
====================

SUMMARY OF UNUSED CHARITABLE CONTRIBUTIONS:

13. Total charitable contributions as corrected (line 3)

4,309,552.00

14. Less: Allowable deduction (Line 11)

4,309,552.00

15. Unused charitable contributions

--------------------
0.00
====================

DATE TAX COMPUTATION GENERATED      01/06/2005

TAXPAYER: FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP

Page **52** of _____

TIN: 13-3461988

Tax Periods: 199312 199412 199512 199612

## 199412 - CONTRIBUTION ADJUSTMENTS

| ISSUE NUMBER | SAIN NUMBER | ENTITY | AMOUNT | CATEGORY |
|----------|----------|--------|--------|----------|
| 101-0101 | 519 | W.R. GRACE & CO.--CONN.<br>CONSTRUCTION PRODUCTS DIVISION | 462,000.00 | TOTAL CONTRIBUTION AMT |
|  |  |  | 462,000.00 |  |

TAXPAYER:   FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP
TIN:        13-3461988

Page **53** of _____

Tax Periods: 199312 199412 199512 199612

## 199612 - SUMMARY OF CHARITABLE CONTRIBUTIONS

1. Total charitable contributions before limitations

913,521.00

2. Less: Total contribution adjustments - (Increase) or decrease

(6,186.00)
--------------------

3. Total charitable contributions as corrected before limitations

919,707.00
====================

4. Taxable income per return

402,923,595.00

5. Add: Income and Expense adjustments other than charitable contributions

28,643,514.00
--------------------

6. Taxable income as corrected before charitable contributions

431,567,109.00

7. Add:  Charitable contributions per return            913,521.00
         Special deductions allowed per exam            80,259.00
         Net operating loss carryback to the tax year allowed per exam        0.00
         Capital loss carryback to the tax year allowed per exam             0.00
         Deductions allowed under sections 249 and 250 allowed per exam      0.00

993,780.00
--------------------

8. Taxable income as adjusted

432,560,889.00
x10%
--------------------

9. Maximum allowable deduction for charitable contributions

43,256,089.00
====================

10. Charitable contribution deduction per return

913,521.00

11. Less: Allowable deduction for contributions (Lesser of Line 3 or Line 9)

919,707.00
--------------------

12. Adjustment - (Increase) or Decrease in charitable contributions

(6,186.00)
====================

SUMMARY OF UNUSED CHARITABLE CONTRIBUTIONS:

13. Total charitable contributions as corrected (line 3)

919,707.00

14. Less: Allowable deduction (Line 11)

919,707.00
--------------------

15. Unused charitable contributions

0.00
====================

DATE TAX COMPUTATION GENERATED        01/07/2005

TAXPAYER: FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP
TIN:        13-3461988

Page **SY** of _____

Tax Periods: 199312 199412 199512 199612

## 199612 - CONTRIBUTION ADJUSTMENTS

| ISSUE NUMBER | SAIN NUMBER | ENTITY | AMOUNT | CATEGORY |
|---|---|---|---|---|
| -0116 | 410 | GRACE TARPON INVESTORS | (6,186.00) | TOTAL CONTRIBUTION AMT |
| | | | (6,186.00) | |

TAXPAYER: FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP

TIN:    13-3461988

Page **55** of ____

Tax Periods: 199312 199412 199512 199612

199312 - SUMMARY OF CREDITS

| DESCRIPTION | (a)<br>AVAILABLE<br>PER RETURN | (b)<br>ADJUSTMENTS | (c)<br>AVAILABLE<br>AS CORRECTED<br>[(a) - (b)] | (d)<br>TOTAL CREDIT<br>ALLOWED | (e)<br>UNUSED CREDITS<br>[(c) - (d)] |
|---|---|---|---|---|---|
| 1. Foreign Tax | 127,744,699.00 | (4,883,931.00) | 132,628,630.00 | 132,628,630.00 | 0.00 |
| 2. Possessions Tax | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 3. Orphan Drug | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 4. Nonconventional Fuel | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 5. Qual. Electric Vehicle | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6. General Business | 15,694,506.00 | 22,896,835.00 | (7,202,329.00) | (7,202,329.00) | 0.00 |
| A. Investment Tax | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| B. Jobs | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| C. Alcohol Fuel | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| D. Increasing Research | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| E. Low-Income Housing | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| F. Enhanced Oil Recovery | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| G. Disabled Access | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| H. Renewable Electricity | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| I. Indian Employment | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| J. Employer SS on Tips | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| K. Contribution to CDC | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Empowerment Zone Employ. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 7. Prior Year Minimum Tax | 26,436,593.00 | 24,399,000.00 | 2,037,593.00 | 2,037,593.00 | 0.00 |
| 8. Qualified Zone Academy | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TOTAL CREDITS | 169,875,798.00 | 42,411,904.00 | 127,463,894.00 | 127,463,894.00 | 0.00 |

INCOME TAX BEFORE CREDITS

161,596,411.00

TAXPAYER: FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP
TIN:       13-3461988

Page **56** of _____

Tax Periods: 199312 199412 199512 199612

199312 - SUMMARY OF CREDITS ADJUSTMENTS

| ISSUE NUMBER | SAIN NUMBER | ENTITY | AMOUNT | CATEGORY |
|---|---|---|---|---|
| -0171 | 601 | W.R. GRACE & CO.--CONN. | 9,157,126.00 | REGULAR ITC |
| -0161 | 604 | FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP | (4,883,931.00) | FOREIGN TAX CR - TOTAL |
| -0156 | 607 | FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP | 17,814,555.00 | PR YR MINIMUM TAX CREDIT |
| -0171 | 601 | W.R. GRACE & CO.--CONN. | 5,232,016.00 | PR YR MINIMUM TAX CREDIT |
| 103-0103 | 604-04 | FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP | 1,352,429.00 | PR YR MINIMUM TAX CREDIT |
| -0114 | 611 | FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP | 2,525,033.00 | RESEARCH CREDIT - TOTAL |
| -0158 | | FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP | 11,214,676.00 | RESEARCH CREDIT - TOTAL |

42,411,904.00

TAXPAYER: FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP
TIN:      13-3461988

Page **57** of \_\_\_\_

Tax Periods: 199312 199412 199512 199612

199312 - GENERAL BUSINESS CREDIT
FORM 3800

1. Tentative General Business Credit

(7,202,329.00)

2. Regular Tax Liability

161,596,411.00

3. less: (A) Foreign Tax Credit Allowed

132,628,630.00

   (B) Possession Tax Credit Allowed

0.00

   (C) Orphan Drug Credit Allowed

0.00

   (D) Nonconventional Fuel Credit Allowed

0.00

   (E) Qualified Electric Vehicle Credit Allowed

0.00          132,628,630.00
-------------------- --------------------

4. Net Regular Tax Liability

28,967,781.00

5. add: Alternative Minimum Tax

0.00

6. Net Income Tax

28,967,781.00

7. less: (A) Tentative Minimum Tax
           or

20,573,775.00

   (B) 25% of excess of Net
       Regular Tax over 25,000

7,235,695.00

   (C) greater of Line 7(A) or 7(B)

20,573,775.00
--------------------

8. Section 38(c)(1) Limitation

8,394,006.00

9. General Business Credit  (lesser of Line 1 or Line 8)

(7,202,329.00)

DATE TAX COMPUTATION GENERATED      01/06/2005

TAXPAYER:  FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP
TIN:       13-3461988

Tax Periods: 199312 1994I2 199512 199612

## 199312 - GENERAL BUSINESS CREDIT
### Schedule A - Form 3800
### Section 38(c)(2) Limitation

| | | |
|---|---|---|
| 10. Regular Investment Tax Credit | | 0.00 |
| 11. Section 38(c)(1) Limitation | 8,394,006.00 | |
| 12. Tentative General Business Credit Excluding Regular Investment Credit | (7,202,329.00) | |
| 13. Line 11 less Line 12  (not less than zero) | 15,596,335.00 | |
| 14. Line 10 less Line 13  (not less than zero) | | 0.00 |
| 15. Alternative Minimum Tax computed without regard to General Business Credit allowed against AMT | 0.00 | |
| 16. Line 4 plus Line 15 | 28,967,781.00 | |
| 17. Line 16 less Line 9 | 36,170,110.00 | |
| 18. Tentative Minimum Tax computed without regard to Alternative Tax NOL | 102,332,509.00 | |
| 19. 10% of Line 18 | 10,233,251.00 | |
| 20. Line 17 less Line 19 (not less than zero) | | 25,936,859.00 |
| 21. 25% of Line 7(A) | | 5,143,444.00 |
| 22. lesser of Line 14, 20, or Line 21 | | 0.00 |
| 23. Line 7(A) less Line 22 | 20,573,775.00 | |
| 24. greater of Line 7(B) or Line 23 | 20,573,775.00 | |
| 25. Line 6 less Line 24 (not greater than Line 10 plus Line 12) | (7,202,329.00) | |
| 26. General Business Credit including Section 38(c)(2) (lesser of Line 4 or Line 25) | | (7,202,329.00) |
| 27. Reduction in Tentative Minimum Tax  (Line 25 less Line 26) | | 0.00 |
| 28. General Business Credit - Section 38(c)(2) (Line 26 less Line 9) | | 0.00 |

TAXPAYER:  FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP

TIN:        13-3461988

Page **55** of _____

Tax Periods: 199312 199412 199512 199612

### 199412 - SUMMARY OF CREDITS

| DESCRIPTION | (a) AVAILABLE PER RETURN | (b) ADJUSTMENTS | (c) AVAILABLE AS CORRECTED [(a) - (b)] | (d) TOTAL CREDIT ALLOWED | (e) UNUSED CREDITS [(c) - (d)] |
|---|---|---|---|---|---|
| 1. Foreign Tax | 51,677,128.00 | 998,290.00 | 50,678,838.00 | 50,678,838.00 | 0.00 |
| 2. Possessions Tax | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 3. Orphan Drug | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 4. Nonconventional Fuel | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 5. Qual. Electric Vehicle | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6. General Business | 3,488,868.00 | 2,875,927.00 | 612,941.00 | 612,941.00 | 0.00 |
| A. Investment Tax | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| B. Jobs | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| C. Alcohol Fuel | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| D. Increasing Research | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| E. Low-Income Housing | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| F. Enhanced Oil Recovery | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| G. Disabled Access | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| H. Renewable Electricity | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| I. Indian Employment | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| J. Employer SS on Tips | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| K. Contribution to CDC | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Empowerment Zone Employ. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 7. Prior Year Minimum Tax | 21,956,834.00 | 32,324,274.00 | (10,367,440.00) | (10,367,440.00) | 0.00 |
| 8. Qualified Zone Academy | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TOTAL CREDITS | 77,122,830.00 | 36,198,491.00 | 40,924,339.00 | 40,924,339.00 | 0.00 |

INCOME TAX BEFORE CREDITS

123,579,330.00

DATE TAX COMPUTATION GENERATED        01/06/2005

TAXPAYER: FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP
TIN:      13-3461988

Page 60 of ____

Tax Periods: 199312 199412 199512 199612

199412 - SUMMARY OF CREDITS ADJUSTMENTS

| ISSUE NUMBER | SAIN NUMBER | ENTITY | AMOUNT | CATEGORY |
|---|---|---|---|---|
| -0161 | 604 | FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP | 998,290.00 | FOREIGN TAX CR - TOTAL |
| -0156 | 607 | FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP | 21,956,834.00 | PR YR MINIMUM TAX CREDIT |
| -0172 | 601 | W.R. GRACE & CO.--CONN. | 10,367,440.00 | PR YR MINIMUM TAX CREDIT |
| -0114 | 611 | FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP | 2,875,927.00 | RESEARCH CREDIT - TOTAL |
| | | | 36,198,491.00 | |

Case 01-01139-AMC    Doc 7779-3    Filed 02/14/05    Page 18 of 100

TAXPAYER: FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP
TIN:      13-3461988

Tax Periods: 199312 199412 199512 199612

199412 - GENERAL BUSINESS CREDIT
FORM 3800

1.  Tentative General Business Credit

                                                                    612,941.00
                                                              --------------------

2.  Regular Tax Liability

                                                                 123,579,330.00

3.  less:  (A) Foreign Tax Credit Allowed              50,678,838.00

           (B) Possession Tax Credit Allowed                    0.00

           (C) Orphan Drug Credit Allowed                       0.00

           (D) Nonconventional Fuel Credit Allowed              0.00

           (E) Qualified Electric Vehicle Credit Allowed        0.00       50,678,838.00
                                                       --------------------    --------------------

4.  Net Regular Tax Liability

                                                                  72,900,492.00

5.  add:  Alternative Minimum Tax

                                                                        0.00

6.  Net Income Tax

                                                                  72,900,492.00

7.  less:  (A) Tentative Minimum Tax            55,557,551.00
               or
           (B) 25% of excess of Net
               Regular Tax over 25,000          18,218,873.00

           (C) greater of Line 7(A) or 7(B)                        55,557,551.00
                                                              --------------------

8.  Section 38(c)(1) Limitation

                                                                  17,342,941.00
                                                              --------------------

9.  General Business Credit  (lesser of Line 1 or Line 8)

                                                                    612,941.00
                                                              --------------------

TAXPAYER: FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP
TIN:      13-3461988

Page **62** of _____

Tax Periods: 199312 199412 199512 199612

199412 - GENERAL BUSINESS CREDIT
Schedule A - Form 3800
Section 38(c)(2) Limitation

| | | |
|---|---|---|
| 10. Regular Investment Tax Credit | | 0.00 |
| | | ==================== |
| 11. Section 38(c)(1) Limitation | 17,342,941.00 | |
| 12. Tentative General Business Credit Excluding Regular Investment Credit | 612,941.00 | |
| | -------------------- | |
| 13. Line 11 less Line 12 (not less than zero) | 16,730,000.00 | |
| 14. Line 10 less Line 13 (not less than zero) | | 0.00 |
| | | ==================== |
| 15. Alternative Minimum Tax computed without regard to General Business Credit allowed against AMT | 0.00 | |
| 16. Line 4 plus Line 15 | 72,900,492.00 | |
| 17. Line 16 less Line 9 | 72,287,551.00 | |
| 18. Tentative Minimum Tax computed without regard to Alternative Tax NOL | 92,759,901.00 | |
| 19. 10% of Line 18 | 9,275,990.00 | |
| 20. Line 17 less Line 19 (not less than zero) | | 63,011,561.00 |
| | | ==================== |
| 21. 25% of Line 7(A) | | 13,889,388.00 |
| 22. lesser of Line 14, 20, or Line 21 | | ==================== |
| | | 0.00 |
| | | ==================== |
| 23. Line 7(A) less Line 22 | 55,557,551.00 | |
| 24. greater of Line 7(B) or Line 23 | 55,557,551.00 | |
| 25. Line 6 less Line 24 (not greater than Line 10 plus Line 12) | 612,941.00 | |
| 26. General Business Credit including Section 38(c)(2) (lesser of Line 4 or Line 25) | | 612,941.00 |
| | | ==================== |
| 27. Reduction in Tentative Minimum Tax (Line 25 less Line 26) | | 0.00 |
| | | ==================== |
| 28. General Business Credit - Section 38(c)(2) (Line 26 less Line 9) | | 0.00 |
| | | ==================== |

TAXPAYER:  FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP

TIN:       13-3461988

Tax Periods: 199312 199412 199512 199612

199512 - SUMMARY OF CREDITS

| DESCRIPTION | (a) AVAILABLE PER RETURN | (b) ADJUSTMENTS | (c) AVAILABLE AS CORRECTED [(a) - (b)] | (d) TOTAL CREDIT ALLOWED | (e) UNUSED CREDITS [(c) - (d)] |
|---|---|---|---|---|---|
| 1. Foreign Tax | 45,566,965.00 | (5,074,987.00) | 50,641,952.00 | 50,641,952.00 | 0.00 |
| 2. Possessions Tax | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 3. Orphan Drug | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 4. Nonconventional Fuel | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 5. Qual. Electric Vehicle | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6. General Business | 2,827,477.00 | 1,613,883.00 | 1,213,594.00 | 1,213,594.00 | 0.00 |
| A. Investment Tax | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| B. Jobs | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| C. Alcohol Fuel | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| D. Increasing Research | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| E. Low-Income Housing | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| F. Enhanced Oil Recovery | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| G. Disabled Access | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| H. Renewable Electricity | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| I. Indian Employment | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| J. Employer SS on Tips | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| K. Contribution to CDC | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Empowerment Zone Employ. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 7. Prior Year Minimum Tax | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 8. Qualified Zone Academy | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TOTAL CREDITS | 48,394,442.00 | (3,461,104.00) | 51,855,546.00 | 51,855,546.00 | 0.00 |

INCOME TAX BEFORE CREDITS                    87,671,187.00

DATE TAX COMPUTATION GENERATED      01/06/2005

TAXPAYER:  FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP

TIN:    13-3461988

Tax Periods: 199312 199412 199512 199612

## 199512 - SUMMARY OF CREDITS ADJUSTMENTS

| ISSUE NUMBER | SAIN NUMBER | ENTITY | AMOUNT | CATEGORY |
|--------|--------|--------|--------|--------|
| -0161 | 604 | FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP | (5,074,987.00) | FOREIGN TAX CR - TOTAL |
| -0114 | 611 | FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP | 1,613,883.00 | RESEARCH CREDIT - TOTAL |
| | | | (3,461,104.00) | |

TAXPAYER: FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP
TIN:    13-3461988

Page **65** of ____

Tax Periods: 199312 199412 199512 199612

199512 - GENERAL BUSINESS CREDIT
FORM 3800

1.  Tentative General Business Credit

1,213,594.00
=====================

2.  Regular Tax Liability

87,671,187.00

3.  less:  (A) Foreign Tax Credit Allowed          50,641,952.00

            (B) Possession Tax Credit Allowed              0.00

            (C) Orphan Drug Credit Allowed                 0.00

            (D) Nonconventional Fuel Credit Allowed        0.00

            (E) Qualified Electric Vehicle Credit Allowed  0.00       50,641,952.00
                                                      --------------------   --------------------

4.  Net Regular Tax Liability

37,029,235.00

5.  add: Alternative Minimum Tax

0.00

6.  Net Income Tax

37,029,235.00

7.  less:  (A) Tentative Minimum Tax            33,554,915.00
                or
            (B) 25% of excess of Net
                Regular Tax over 25,000          9,251,059.00

            (C) greater of Line 7(A) or 7(B)

33,554,915.00
--------------------

8.  Section 38(c)(1) Limitation

3,474,320.00
=====================

9.  General Business Credit  (lesser of Line 1 or Line 8)

1,213,594.00
=====================

·TAXPAYER:  FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP
TIN:       13-3461988

Page __66__ of ____

Tax Periods: 199312 199412 199512 199612

### 199512 - GENERAL BUSINESS CREDIT
#### Schedule A - Form 3800
Section 38(c)(2) Limitation

| | | |
|---|---:|---:|
| 10. Regular Investment Tax Credit | | 0.00 |
| 11. Section 38(c)(1) Limitation | 3,474,320.00 | |
| 12. Tentative General Business Credit Excluding Regular Investment Credit | 1,213,594.00 | |
| 13. Line 11 less Line 12 (not less than zero) | 2,260,726.00 | |
| 14. Line 10 less Line 13 (not less than zero) | | 0.00 |
| 15. Alternative Minimum Tax computed without regard to General Business Credit allowed against AMT | 0.00 | |
| 16. Line 4 plus Line 15 | 37,029,235.00 | |
| 17. Line 16 less Line 9 | 35,815,641.00 | |
| 18. Tentative Minimum Tax computed without regard to Alternative Tax NOL | 61,709,490.00 | |
| 19. 10% of Line 18 | 6,170,949.00 | |
| 20. Line 17 less Line 19 (not less than zero) | | 29,644,692.00 |
| 21. 25% of Line 7(A) | | 8,388,729.00 |
| 22. lesser of Line 14, 20, or Line 21 | | 0.00 |
| 23. Line 7(A) less Line 22 | 33,554,915.00 | |
| 24. greater of Line 7(B) or Line 23 | 33,554,915.00 | |
| 25. Line 6 less Line 24 (not greater than Line 10 plus Line 12) | 1,213,594.00 | |
| 26. General Business Credit including Section 38(c)(2) (lesser of Line 4 or Line 25) | | 1,213,594.00 |
| 27. Reduction in Tentative Minimum Tax (Line 25 less Line 26) | | 0.00 |
| 28. General Business Credit - Section 38(c)(2) (Line 26 less Line 9) | | 0.00 |

TAXPAYER: FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP

TIN:      13-3461988

Page **67** of _____

Tax Periods: 199312 199412 199512 199612

### 199612 - SUMMARY OF CREDITS

| DESCRIPTION | (a) AVAILABLE PER RETURN | (b) ADJUSTMENTS | (c) AVAILABLE AS CORRECTED [(a) - (b)] | (d) TOTAL CREDIT ALLOWED | (e) UNUSED CREDITS [(c) - (d)] |
|---|---|---|---|---|---|
| 1. Foreign Tax | 91,887,132.00 | 3,617,269.00 | 88,269,863.00 | 88,269,863.00 | 0.00 |
| 2. Possessions Tax | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 3. Orphan Drug | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 4. Nonconventional Fuel | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 5. Qual. Electric Vehicle | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6. General Business | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| A. Investment Tax | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| B. Jobs | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| C. Alcohol Fuel | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| D. Increasing Research | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| E. Low-Income Housing | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| F. Enhanced Oil Recovery | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| G. Disabled Access | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| H. Renewable Electricity | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| I. Indian Employment | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| J. Employer SS on Tips | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| K. Contribution to CDC | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Empowerment Zone Employ. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 7. Prior Year Minimum Tax | 1,481,261.00 | (12,125,990.00) | 13,607,251.00 | 13,607,251.00 | 0.00 |
| 8. Qualified Zone Academy | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TOTAL CREDITS | 93,368,393.00 | (8,508,721.00) | 101,877,114.00 | 101,877,114.00 | 0.00 |

INCOME TAX BEFORE CREDITS

151,046,323.00

TAXPAYER: FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP
TIN:        13-3461988

Page **68** of ____

Tax Periods: 199312 199412 199512 199612

199612 - SUMMARY OF CREDITS ADJUSTMENTS

| ISSUE NUMBER | SAIN NUMBER | ENTITY | AMOUNT | CATEGORY |
|---|---|---|---|---|
| -0161 | 604 | FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP | 3,617,269.00 | FOREIGN TAX CR - TOTAL |
| -0156 | 607 | FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP | 1,481,261.00 | PR YR MINIMUM TAX CREDI |
| -0160 | 607 | W.R. GRACE & CO.--CONN. | (13,607,251.00) | PR YR MINIMUM TAX CREDI' |
| | | | (8,508,721.00) | |

TAXPAYER:  FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP
TIN:       13-3461988

Tax Periods: 199312 199412 199512 199612

199612 - GENERAL BUSINESS CREDIT
FORM 3800

| | | |
|---|---:|---:|
| 1.  Tentative General Business Credit | | 0.00 |
| | | ==================== |
| 2.  Regular Tax Liability | | 151,046,323.00 |
| 3.  less:  (A) Foreign Tax Credit Allowed | 88,269,863.00 | |
| (B) Possession Tax Credit Allowed | 0.00 | |
| (C) Orphan Drug Credit Allowed | 0.00 | |
| (D) Nonconventional Fuel Credit Allowed | 0.00 | |
| (E) Qualified Electric Vehicle Credit Allowed | 0.00 | 88,269,863.00 |
| | -------------------- | -------------------- |
| 4.  Net Regular Tax Liability | | 62,776,460.00 |
| 5.  add:  Alternative Minimum Tax | | 0.00 |
| 6.  Net Income Tax | | 62,776,460.00 |
| 7.  less:  (A) Tentative Minimum Tax | 37,910,666.00 | |
| or | | |
| (B) 25% of excess of Net Regular Tax over 25,000 | 15,687,865.00 | |
| (C) greater of Line 7(A) or 7(B) | | 37,910,666.00 |
| | | -------------------- |
| 8.  Section 38(c)(1) Limitation | | 24,865,794.00 |
| | | ==================== |
| 9.  General Business Credit   (lesser of Line 1 or Line 8) | | 0.00 |
| | | ==================== |

TAXPAYER: FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP
TIN:     13-3461988

Tax Periods: 199312 199412 199512 199612

199612 - GENERAL BUSINESS CREDIT
Schedule A - Form 3800
Section 38(c)(2) Limitation

10. Regular Investment Tax Credit
                                                                        0.00

11. Section 38(c)(1) Limitation
                                                    24,865,794.00
12. Tentative General Business Credit Excluding
    Regular Investment Credit
                                                          0.00
                                                    --------------------

13. Line 11 less Line 12  (not less than zero)
                                                    24,865,794.00

14. Line 10 less Line 13  (not less than zero)
                                                                        0.00

15. Alternative Minimum Tax computed without regard to
    General Business Credit allowed against AMT
                                                          0.00

16. Line 4 plus Line 15
                                                    62,776,460.00

17. Line 16 less Line 9
                                                    62,776,460.00

18. Tentative Minimum Tax computed without regard to
    Alternative Tax NOL
                                                    92,400,988.00

19. 10% of Line 18
                                                     9,240,099.00

20. Line 17 less Line 19 (not less than zero)
                                                                  53,536,361.00

21. 25% of Line 7(A)
                                                                   9,477,667.00

22. lesser of Line 14, 20, or Line 21
                                                                        0.00

23. Line 7(A) less Line 22
                                                    37,910,666.00

24. greater of Line 7(B) or Line 23
                                                    37,910,666.00

25. Line 6 less Line 24
    (not greater than Line 10 plus Line 12)
                                                          0.00

26. General Business Credit including Section 38(c)(2)
    (lesser of Line 4 or Line 25)
                                                                        0.00
27. Reduction in Tentative Minimum Tax  (Line 25 less Line 26)
                                                                        0.00

28. General Business Credit - Section 38(c)(2)
    (Line 26 less Line 9)
                                                                        0.00

TAXPAYER:   FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP
TIN:        13-3461988

Tax Periods: 199312 199412 199512 199612

## 199312 - SUMMARY OF OTHER TAXES

| DESCRIPTION | (a) OTHER TAXES PER RETURN | (b) ADJUSTMENTS | (c) OTHER TAXES AS CORRECTED [(a) + (b)] |
|---|---|---|---|
| 1. Personal Holding Company Tax | 0.00 | 0.00 | 0.00 |
| 2. ITC/Recapture Taxes | 0.00 | 0.00 | 0.00 |
| 3. Win Credit Recapture Tax | 0.00 | 0.00 | 0.00 |
| 4. Alternative Minimum Tax | 0.00 | 0.00 | 0.00 |
| 5. Environmental Tax | 584,599.00 | 27,731.00 | 612,330.00 |
| 6. Minimum Tax on Preference Items | 0.00 | 0.00 | 0.00 |
| 7. Accumulated Earnings Tax | | 0.00 | 0.00 |
| TOTAL OTHER TAXES | 584,599.00 | 27,731.00 | 612,330.00 |

TAXPAYER: FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP

Page **72** of ____

TIN:     13-3461988

Tax Periods: 199312 199412 199512 199612

### 199312 - ALTERNATIVE MINIMUM TAX / ENVIRONMENTAL TAX

| | | | |
|---|---|---:|---:|
| 1. | Pre-adjustment AMTI | | 511,662,543.00 |
| 2a. | Adjusted Current Earnings | 508,103,639.00 | |
| 2b. | Subtract Line 1 from Line 2a | (3,558,904.00) | |
| 2c. | Multiply Line 2b by 75% | 2,669,178.00 | |
| 2d. | Net Cumulative Ace Adjustment Limitation | 0.00 | |
| 2e. | Ace Adjustment | | 0.00 |
| 3. | Combine Lines 1 and 2e  (If -0- or less, not subject to Alternative Minimum Tax) | | 511,662,543.00 |
| 4. | Alternative Tax Net Operating Loss and Energy Preference Deductions | | 36,018,154.00 |
| 5. | Alternative Minimum Taxable Income   (Line 3 less Line 4) | | 475,644,389.00 |
| | Members Share Of Controlled Group AMTI | 0.00 | |
| 6. | Tentative Exemption Amount  *      (Section 1561(a)(3) Limitation) | 40,000.00 | |
| 7. | Enter 150,000  *            (Section 55(d)(3) Amount) | 150,000.00 | |
| 8. | Line 5 (Members share if controlled group) less Line 7 (0 if less than 0) | 475,494,389.00 | |
| 9. | Multiply Line 8 by 25% | 118,873,597.00 | |
| 10. | Exemption.  (Line 6 less Line 9, if -0- or less enter -0-) | | 0.00 |
| 11. | Line 5 less Line 10 | | 475,644,389.00 |
| 12. | Multiply Line 11 X 20% | | 95,128,878.00 |
| 13. | Alternative Minimum Tax Foreign Tax Credit | | 74,555,103.00 |
| 14. | Tentative Minimum Tax  (Line 12 less Line 13) | | 20,573,775.00 |
| 15. | Income Tax Before Credits Minus Foreign Tax Credit and Possessions Tax Credit | | 28,967,781.00 |
| 16. | Alternative Minimum Tax (Line 14 less Line 15) | | 0.00 |
| 17. | Reduction Pursuant To Section 38(c)(2) | | 0.00 |
| 18. | Alternative Minimum Tax As Adjusted for Section 38(c)(2) | | 0.00 |

| | | | |
|---|---|---:|---:|
| 19. | Modified Pre-adjustment AMTI | | 512,274,873.00 |
| | (Line 1 Modified for Environmental Tax Deduction) | | |
| 20. | Modified Adjusted Current Earnings                     (1) | 612,330.00 | |
| | (Line 2 modified for Environmental Tax Deduction) | | 508,715,969.00 |
| 21. | Subtract Line 19 from Line 20 (Enter -0- if the result is -0- or less)    (1) | 612,330.00 | |
| 21a. | Multiply Line 21 by 75% | | 0.00 |
| 21b. | ACE Adjustment (Modified for Environmental Tax Deduction) | | 0.00 |
| | | | 0.00 |
| 21c. | Combine Lines 19 AND 21b | | 512,274,873.00 |
| 22. | Environmental Tax Exemption  * | | 2,000,000.00 |
| 23. | Environmental Tax (Line 21c less Line 22 X .12%) | | 612,330.00 |
| | Environmental Tax Deduction Per Return | | ================ |
| | Environmental Tax Deduction Adjustments: | 0.00 | |
| | | 612,330.00 | |
| (1) | Environmental Tax Deduction As Corrected | | ---------------- |
| | | | 612,330.00 |
| | | | ================ |

* Members share if controlled group

TAXPAYER: FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP
TIN: 13-3461988

Tax Periods: 199312 199412 199512 199612

### 199312 - ALTERNATIVE MINIMUM TAX / ENVIRONMENTAL TAX (CONTINUED)

**(1)** PRE-ADJUSTMENT AMTI: (TAXABLE INCOME/LOSS BEFORE NOLD + ADJUSTMENTS + TAX PREFERENCE ITEMS)

| | |
|---|---:|
| Pre-Adjustment AMTI Per Return | 483,961,912.00 |
| Plus: Adjustments To Taxable Income / Loss | (33,993,004.00) |
| Adjustments To AMT Adjustments / Tax Preferences | 0.00 |
| Less: Adjustments To Net Operating Loss Deduction | (61,693,635.00) |
| | ------------------- |
| Pre-Adjustment AMTI As Corrected | 511,662,543.00 |
| | =================== |

**(2)** ADJUSTED CURRENT EARNINGS:

| | | |
|---|---:|---:|
| Adjusted Current Earnings Per Return | | 490,900,918.00 |
| Plus: Excess of - | | |
| Pre-Adjustment AMTI As Corrected | 511,662,543.00 | |
| Over | | |
| Pre-Adjustment AMTI Per Return | 483,961,912.00 | 27,700,631.00 |
| | ------------------- | |
| Adjustments To Adjusted Current Earnings | | (10,497,910.00) |
| | | ------------------- |
| Adjusted Current Earnings As Corrected | | 508,103,639.00 |
| | | =================== |

**(3)** NET CUMULATIVE ACE ADJUSTMENT LIMITATION:

| | |
|---|---:|
| Net Cumulative ACE Adjustment Limitation Per Return | 0.00 |
| Plus: Adjustment To Net Cumulative ACE Adjustment Limit | 0.00 |
| | ------------------- |
| Net Cumulative ACE Adjustment Limitation As Corrected | 0.00 |
| | =================== |

**(4)** ALTERNATIVE TAX NET OPERATING LOSS DEDUCTION AND ENERGY PREFERENCE:

| | |
|---|---:|
| Alternative Tax Energy Preference Deduction -- | |
| Alternative Tax Energy Preference (Before Limitation) Per Return | 0.00 |
| Plus: Adjustment To Alternative Tax Energy Preference | 0.00 |
| | ------------------- |
| Alternative Tax Energy Preference (Before Limitation) As Corrected | 0.00 |
| | =================== |

Limitation On Alternative Tax Energy Preference Deduction:

| | | |
|---|---:|---|
| Pre-Adjustment AMTI As Corrected | 511,662,543.00 | |
| Plus: Adjusted Current Earnings (ACE) Adjustment | 0.00 | |
| | ------------------- | |
| Balance (Not less than -0-) | 511,662,543.00 | |
| | X 40 % | |
| | ------------------- | |
| Limitation On Alternative Tax Energy Preference | 204,665,017.20 | |
| | =================== | |

Case 01-01139-AMC · Doc 7779-3 · Filed 02/14/05 · Page 31 of 100

199312 - ALTERNATIVE MINIMUM TAX / ENVIRONMENTAL TAX (CONTINUED)

(4) ALTERNATIVE TAX NET OPERATING LOSS DEDUCTION AND ENERGY PREFERENCE: (CONTINUED)

Alternative Tax Net Operating Loss Deduction --

| | |
|---|---:|
| Alternative Tax Net Operating Loss Deduction (Before Limitation) Per Return | 0.00 |
| Plus: Adjustment To Alternative Tax Net Operating Loss Deduction | (36,018,154.00) |
| Alternative Tax Net Operating Loss Deduction (Before Limitation) As Corrected | 36,018,154.00 |

Limitation On Alternative Tax Net Operating Loss Deduction (NOLD):

| | |
|---|---:|
| Pre-Adjustment AMTI As Corrected | 511,662,543.00 |
| Plus: Adjusted Current Earnings (ACE) Adjustment | 0.00 |
| Balance (Not less than -0-) | 511,662,543.00 |
| | X 90 % |
| Balance | 460,496,288.70 |
| Less Alternative Tax Energy Preference Deduction | 0.00 |
| Limitation On Alternative Tax NOLD | 460,496,288.70 |

Summary:

| | |
|---|---:|
| Alternative Tax Energy Preference Deduction As Corrected | 0.00 |
| Alternative Tax Net Operating Loss Deduction As Corrected | 36,018,154.00 |
| Alternative Tax Net Operating Loss And Energy Preference Deductions | 36,018,154.00 |

(5) ALTERNATIVE MINIMUM TAX FOREIGN TAX CREDIT:

| | |
|---|---:|
| Tentative Minimum Tax Foreign Tax Credit (Before limitation) Per Return | 73,010,496.00 |
| Plus: Adjustment To Alternative Minimum Tax Foreign Tax Credit | (1,544,607.00) |
| Alternative Minimum Tax Credit As Corrected | 74,555,103.00 |

TAXPAYER:  FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP

TIN:       13-3461988

Page **75** of ____

Tax Periods: 199312 199412 199512 199612

## 199312 - ALTERNATIVE MINIMUM TAX / ENVIRONMENTAL TAX (CONTINUED)

| ISSUE NUMBER | SAIN NUMBER | ENTITY | AMOUNT | CATEGORY |
|---|---|---|---|---|
| AMT ADJUSTMENTS / TAX PREFERENCES: | | | | |
| | | | 0.00 | |
| ADJUSTED NET BOOK INCOME / ADJUSTED CURRENT EARNINGS: | | | | |
| -0155 | 607 | FRESENIUS NATIONAL MEDICAL CARE | (10,497,910.00) | ADJUSTED NBI/ACE - AMT |
| | | | (10,497,910.00) | |
| ALTERNATIVE TAX NET OPERATING LOSS DEDUCTION: | | | | |
| -0171 | 601 | W.R. GRACE & CO.--CONN. | (36,018,154.00) | ALTERNATIVE TAX NOLD-AMT |
| | | | (36,018,154.00) | |
| ALTERNATIVE MINIMUM TAX FOREIGN TAX CREDIT: | | | | |
| -0162 | 604-A | FRESENIUS NATIONAL MEDICAL CARE | (1,544,607.00) | ALT MIN TAX-FTC LIMIT |
| | | | (1,544,607.00) | |

TAXPAYER:   FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP
TIN:        13-3461988

Tax Periods: 199312 199412 199512 199612

199412 - SUMMARY OF OTHER TAXES

| DESCRIPTION | (a) OTHER TAXES PER RETURN | (b) ADJUSTMENTS | (c) OTHER TAXES AS CORRECTED [(a) + (b)] |
|---|---|---|---|
| 1. Personal Holding Company Tax | 0.00 | 0.00 | 0.00 |
| 2. ITC/Recapture Taxes | 0.00 | 0.00 | 0.00 |
| 3. Win Credit Recapture Tax | 0.00 | 0.00 | 0.00 |
| 4. Alternative Minimum Tax | 0.00 | 0.00 | 0.00 |
| 5. Environmental Tax | 518,759.00 | 36,066.00 | 554,825.00 |
| 6. Minimum Tax on Preference Items | 0.00 | 0.00 | 0.00 |
| 7. Accumulated Earnings Tax | | 0.00 | 0.00 |
| TOTAL OTHER TAXES | 518,759.00 | 36,066.00 | 554,825.00 |

DATE TAX COMPUTATION GENERATED    01/06/2005

TAXPAYER: FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP

TIN:      13-3461988

Tax Periods: 199312 199412 199512 199612

199412 - ALTERNATIVE MINIMUM TAX / ENVIRONMENTAL TAX

| | | |
|---|---|---:|
| 1. | Pre-adjustment AMTI | 456,450,679.00 |
| 2a. | Adjusted Current Earnings | 466,249,111.00 |
| 2b. | Subtract Line 1 from Line 2a | 9,798,432.00 |
| 2c. | Multiply Line 2b by 75% | 7,348,824.00 |
| 2d. | Net Cumulative Ace Adjustment Limitation | 65,081,457.00 |
| 2e. | Ace Adjustment | 7,348,824.00 |
| 3. | Combine Lines 1 and 2e (If -0- or less, not subject to Alternative Minimum Tax) | 463,799,503.00 |
| 4. | Alternative Tax Net Operating Loss and Energy Preference Deductions | 62,270,416.00 |
| 5. | Alternative Minimum Taxable Income   (Line 3 less Line 4) | 401,529,087.00 |
| | Members Share Of Controlled Group AMTI | 0.00 |
| 6. | Tentative Exemption Amount  *         (Section 1561(a)(3) Limitation) | 40,000.00 |
| 7. | Enter 150,000  *                       (Section 55(d)(3) Amount) | 150,000.00 |
| 8. | Line 5 (Members share if controlled group) less Line 7 (0 if less than 0) | 401,379,087.00 |
| 9. | Multiply Line 8 by 25% | 100,344,772.00 |
| 10. | Exemption.  (Line 6 less Line 9, if -0- or less enter -0-) | 0.00 |
| 11. | Line 5 less Line 10 | 401,529,087.00 |
| 12. | Multiply Line 11 X 20% | 80,305,817.00 |
| 13. | Alternative Minimum Tax Foreign Tax Credit | 24,748,266.00 |
| 14. | Tentative Minimum Tax·  (Line 12 less Line 13) | 55,557,551.00 |
| 15. | Income Tax Before Credits Minus Foreign Tax Credit and Possessions Tax Credit | 72,900,492.00 |
| 16. | Alternative Minimum Tax (Line 14 less Line 15) | 0.00 |
| 17. | Reduction Pursuant To Section 38(c)(2) / Empowerment Zone Employment Credit | 0.00 |
| 18. | Alternative Minimum Tax As Adjusted for Section 38(c)(2) | 0.00 |

| | | | |
|---|---|---|---:|
| 19. | Modified Pre-adjustment AMTI | | 457,005,504.00 |
| | (Line 1 Modified for Environmental Tax Deduction) | (1) | 554,825.00 |
| 20. | Modified Adjusted Current Earnings | | · · 466,803,936.00 |
| | (Line 2 modified for Environmental Tax Deduction) | (1) | 554,825.00 |
| 21. | Subtract Line 19 from Line 20 (Enter -0- if the result is -0- or less) | | 9,798,432.00 |
| 21a. | Multiply Line 21 by 75% | | 7,348,824.00 |
| 21b. | ACE Adjustment (Modified for Environmental Tax Deduction) | | 7,348,824.00 |
| 21c. | Combine Lines 19 AND 21b | | 464,354,328.00 |
| 22. | Environmental Tax Exemption  * | | 2,000,000.00 |
| 23. | Environmental Tax (Line 21c less Line 22 X .12%) | | 554,825.00 |

|  | |
|---|---:|
| Environmental Tax Deduction Per Return | 545,599.00 |
| Environmental Tax Deduction Adjustments: | 9,226.00 |
| | ------------------ |
| (1)  Environmental Tax Deduction As Corrected | 554,825.00 |

* Members share if controlled group

TAXPAYER:  FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP

TIN:       13-3461988

Tax Periods: 199312 199412 199512 199612

199412 - ALTERNATIVE MINIMUM TAX / ENVIRONMENTAL TAX (CONTINUED)

(1)   PRE-ADJUSTMENT AMTI: (TAXABLE INCOME/LOSS BEFORE NOLD + ADJUSTMENTS + TAX PREFERENCE ITEMS)

|  | |
|---|---:|
| Pre-Adjustment AMTI Per Return | 425,193,741.00 |
| Plus: Adjustments To Taxable Income / Loss | (58,608,703.00) |
| Adjustments To AMT Adjustments / Tax Preferences | 0.00 |
| Less: Adjustments To Net Operating Loss Deduction | (89,865,641.00) |
|  | ------------------ |
| Pre-Adjustment AMTI As Corrected | 456,450,679.00 |
|  | ================ |

(2)   ADJUSTED CURRENT EARNINGS:

| | | |
|---|---:|---:|
| Adjusted Current Earnings Per Return | | 434,667,687.00 |
| Plus: Excess of - | | |
| Pre-Adjustment AMTI As Corrected | 456,450,679.00 | |
| Over | | |
| Pre-Adjustment AMTI Per Return | 425,193,741.00 | 31,256,938.00 |
| | ------------------ | |
| Adjustments To Adjusted Current Earnings | | 324,486.00 |
| | | ------------------ |
| Adjusted Current Earnings As Corrected | | 466,249,111.00 |
| | | ================ |

(3)   NET CUMULATIVE ACE ADJUSTMENT LIMITATION:

| | |
|---|---:|
| Net Cumulative ACE Adjustment Limitation Per Return | 65,081,457.00 |
| Plus: Adjustment To Net Cumulative ACE Adjustment Limit | 0.00 |
| | ------------------ |
| Net Cumulative ACE Adjustment Limitation As Corrected | 65,081,457.00 |
| | ================ |

(4)   ALTERNATIVE TAX NET OPERATING LOSS DEDUCTION AND ENERGY PREFERENCE:

| | |
|---|---:|
| Alternative Tax Energy Preference Deduction -- | |
| Alternative Tax Energy Preference (Before Limitation) Per Return | 0.00 |
| Plus: Adjustment To Alternative Tax Energy Preference | 0.00 |
| | ------------------ |
| Alternative Tax Energy Preference (Before Limitation) As Corrected | 0.00 |
| | ================ |

Limitation On Alternative Tax Energy Preference Deduction:

| | | |
|---|---:|---:|
| Pre-Adjustment AMTI As Corrected | 456,450,679.00 | |
| Plus: Adjusted Current Earnings (ACE) Adjustment | 7,348,824.00 | |
| | ------------------ | |
| Balance (Not less than -0-) | 463,799,503.00 | |
| | X  40 % | |
| | ------------------ | |
| Limitation On Alternative Tax Energy Preference | 185,519,801.20 | |
| | ================ | |

TAXPAYER: FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP

TIN:    13-3461988

Page **79** of ____

Tax Periods: 199312 199412 199512 199612

## 199412 - ALTERNATIVE MINIMUM TAX / ENVIRONMENTAL TAX (CONTINUED)

(4) ALTERNATIVE TAX NET OPERATING LOSS DEDUCTION AND ENERGY PREFERENCE: (CONTINUED)

Alternative Tax Net Operating Loss Deduction --

| | |
|---|---|
| Alternative Tax Net Operating Loss Deduction (Before Limitation) Per Return | 971,020.00 |
| Plus: Adjustment To Alternative Tax Net Operating Loss Deduction | (61,299,396.00) |
| | ----------------- |
| Alternative Tax Net Operating Loss Deduction (Before Limitation) As Corrected | 62,270,416.00 |
| | ================= |

Limitation On Alternative Tax Net Operating Loss Deduction (NOLD):

| | |
|---|---|
| Pre-Adjustment AMTI As Corrected | 456,450,679.00 |
| Plus: Adjusted Current Earnings (ACE) Adjustment | 7,348,824.00 |
| | ----------------- |
| Balance (Not less than -0-) | 463,799,503.00 |
| | X  90 % |
| | ----------------- |
| Balance | 417,419,552.70 |
| Less Alternative Tax Energy Preference Deduction | 0.00 |
| | ----------------- |
| Limitation On Alternative Tax NOLD | 417,419,552.70 |
| | ================= |

Summary:

| | |
|---|---|
| Alternative Tax Energy Preference Deduction As Corrected | 0.00 |
| Alternative Tax Net Operating Loss Deduction As Corrected | 62,270,416.00 |
| | ----------------- |
| Alternative Tax Net Operating Loss And Energy Preference Deductions | 62,270,416.00 |
| | ================= |

(5) ALTERNATIVE MINIMUM TAX FOREIGN TAX CREDIT:

| | |
|---|---|
| Tentative Minimum Tax Foreign Tax Credit (Before limitation) Per Return | 30,382,102.00 |
| Plus: Adjustment To Alternative Minimum Tax Foreign Tax Credit | 5,633,836.00 |
| | ----------------- |
| Alternative Minimum Tax Credit As Corrected | 24,748,266.00 |
| | ================= |

TAXPAYER: FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP
TIN:      13-3461988

Page __80__ of ____

Tax Periods: 199312 199412 199512 199612

199412 - ALTERNATIVE MINIMUM TAX / ENVIRONMENTAL TAX (CONTINUED)

| ISSUE NUMBER | SAIN NUMBER | ENTITY | AMOUNT | CATEGORY |
|--------|--------|--------|--------|--------|

AMT ADJUSTMENTS / TAX PREFERENCES:

|  |  |  | 0.00 |  |

ADJUSTED NET BOOK INCOME / ADJUSTED CURRENT EARNINGS:

| -0155 | 607 | FRESENIUS NATIONAL MEDICAL CARE | 324,486.00 | ADJUSTED NBI/ACE - AMT |
|  |  |  | 324,486.00 |  |

ALTERNATIVE TAX NET OPERATING LOSS DEDUCTION:

| -0159 | 601 | W.R. GRACE & CO.--CONN. | (58,011,075.00) | ALTERNATIVE TAX NOLD-AMT |
| -0172 | 601 | W.R. GRACE & CO.--CONN. | (3,288,321.00) | ALTERNATIVE TAX NOLD-AMT |
|  |  |  | (61,299,396.00) |  |

ALTERNATIVE MINIMUM TAX FOREIGN TAX CREDIT:

| -0162 | 604-A | FRESENIUS NATIONAL MEDICAL CARE | 5,634,549.00 | ALT MIN TAX-FTC LIMIT |
| -0172 | 601 | W.R. GRACE & CO.--CONN. | (713.00) | ALT MIN TAX-FTC LIMIT |
|  |  |  | 5,633,836.00 |  |

DATE TAX COMPUTATION GENERATED    01/06/2005

TAXPAYER:  FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP
TIN:       13-3461988

Tax Periods: 199312 199412 199512 199612

199512 - SUMMARY OF OTHER TAXES

| | (a) | (b) | (c) |
|---|---|---|---|
| DESCRIPTION | OTHER TAXES PER RETURN | ADJUSTMENTS | OTHER TAXES AS CORRECTED [(a) + (b)] |
| 1. Personal Holding Company Tax | 0.00 | 0.00 | 0.00 |
| 2. ITC/Recapture Taxes | 0.00 | 0.00 | 0.00 |
| 3. Win Credit Recapture Tax | 0.00 | 0.00 | 0.00 |
| 4. Alternative Minimum Tax | 1,481,261.00 | (1,481,261.00) | 0.00 |
| 5. Environmental Tax | 262,436.00 | 105,863.00 | 368,299.00 |
| 6. Minimum Tax on Preference Items | 0.00 | 0.00 | 0.00 |
| 7. Accumulated Earnings Tax | | 0.00 | 0.00 |
| TOTAL OTHER TAXES | 1,743,697.00 | (1,375,398.00) | 368,299.00 |

TAXPAYER:  FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP

TIN:       13-3461988

Page **82** of _____

Tax Periods: 199312 199412 199512 199612

## 199512 - ALTERNATIVE MINIMUM TAX / ENVIRONMENTAL TAX

| | | | |
|---|---|---|---|
| 1. | Pre-adjustment AMTI | | 304,329,584.00 |
| 2a. | Adjusted Current Earnings | 309,953,406.00 | |
| 2b. | Subtract Line 1 from Line 2a | 5,623,822.00 | |
| 2c. | Multiply Line 2b by 75% | 4,217,867.00 | |
| 2d. | Net Cumulative Ace Adjustment Limitation | 83,706,374.00 | |
| 2e. | Ace Adjustment | | 4,217,867.00 |
| 3. | Combine Lines 1 and 2e  (If -0- or less, not subject to Alternative Minimum Tax) | | 308,547,451.00 |
| 4. | Alternative Tax Net Operating Loss and Energy Preference Deductions | | 1,025,646.00 |
| 5. | Alternative Minimum Taxable Income   (Line 3 less Line 4) | | 307,521,805.00 |
| | Members Share Of Controlled Group AMTI | | 0.00 |
| 6. | Tentative Exemption Amount  *    (Section 1561(a)(3) Limitation) | 40,000.00 | |
| 7. | Enter 150,000  *                 (Section 55(d)(3) Amount) | 150,000.00 | |
| 8. | Line 5 (Members share if controlled group) less Line 7 (0 if less than 0) | 307,371,805.00 | |
| 9. | Multiply Line 8 by 25% | 76,842,951.00 | |
| 10. | Exemption.  (Line 6 less Line 9, if -0- or less enter -0-) | | 0.00 |
| 11. | Line 5 less Line 10 | | 307,521,805.00 |
| 12. | Multiply Line 11 X 20% | | 61,504,361.00 |
| 13. | Alternative Minimum Tax Foreign Tax Credit | | 27,949,446.00 |
| 14. | Tentative Minimum Tax  (Line 12 less Line 13) | | 33,554,915.00 |
| 15. | Income Tax Before Credits Minus Foreign Tax Credit and Possessions Tax Credit | | 37,029,235.00 |
| 16. | Alternative Minimum Tax (Line 14 less Line 15) | | 0.00 |
| 17. | Reduction Pursuant To Section 38(c)(2) / Empowerment Zone Employment Credit | | 0.00 |
| 18. | Alternative Minimum Tax As Adjusted for Section 38(c)(2) | | 0.00 |

| | | | | |
|---|---|---|---|---|
| 19. | Modified Pre-adjustment AMTI  (Line 1 Modified for Environmental Tax Deduction) | | | 304,697,883.00 |
| 20. | Modified Adjusted Current Earnings  (Line 2 modified for Environmental Tax Deduction) | (1) | 368,299.00 | 310,321,705.00 |
| 21. | Subtract Line 19 from Line 20 (Enter -0- if the result is -0- or less) | (1) | 368,299.00 | 5,623,822.00 |
| 21a. | Multiply Line 21 by 75% | | | 4,217,867.00 |
| 21b. | ACE Adjustment (Modified for Environmental Tax Deduction) | | | 4,217,867.00 |
| 21c. | Combine Lines 19 AND 21b | | | 308,915,750.00 |
| 22. | Environmental Tax Exemption  * | | | 2,000,000.00 |
| 23. | Environmental Tax (Line 21c less Line 22 X .12%) | | | 368,299.00 |

|   | | |
|---|---|---|
| Environmental Tax Deduction Per Return | | ==================== |
| Environmental Tax Deduction Adjustments: | 519,000.00 | |
| | (150,701.00) | |
| (1)  Environmental Tax Deduction As Corrected | ------------------ | |
| | 368,299.00 | |
| | ==================== | |

* Members share if controlled group

TAXPAYER: FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP
TIN:      13-3461988

Page **83** of _____

Tax Periods: 199312 199412 199512 199612

## 199512 - ALTERNATIVE MINIMUM TAX / ENVIRONMENTAL TAX (CONTINUED)

**(1)  PRE-ADJUSTMENT AMTI:** (TAXABLE INCOME/LOSS BEFORE NOLD + ADJUSTMENTS + TAX PREFERENCE ITEMS)

| | | |
|---|---|---|
| Pre-Adjustment AMTI Per Return | | |
| Plus: Adjustments To Taxable Income / Loss | | 229,045,771.00 |
| Adjustments To AMT Adjustments / Tax Preferences | | 74,251,939.00 |
| Less: Adjustments To Net Operating Loss Deduction | | 0.00 |
| | | (1,031,874.00) |
| Pre-Adjustment AMTI As Corrected | | ------------------ |
| | | 304,329,584.00 |
| | | ================= |

**(2)  ADJUSTED CURRENT EARNINGS:**

| | | |
|---|---|---|
| Adjusted Current Earnings Per Return | | 214,555,130.00 |
| Plus: Excess of - | | |
| Pre-Adjustment AMTI As Corrected | 304,329,584.00 | |
| Over | | |
| Pre-Adjustment AMTI Per Return | 229,045,771.00 | 75,283,813.00 |
| | ------------------ | |
| Adjustments To Adjusted Current Earnings | | 20,114,463.00 |
| | | ------------------ |
| Adjusted Current Earnings As Corrected | | 309,953,406.00 |
| | | ================= |

**(3)  NET CUMULATIVE ACE ADJUSTMENT LIMITATION:**

| | | |
|---|---|---|
| Net Cumulative ACE Adjustment Limitation Per Return | | 83,706,374.00 |
| Plus: Adjustment To Net Cumulative ACE Adjustment Limit | | 0.00 |
| | | ------------------ |
| Net Cumulative ACE Adjustment Limitation As Corrected | | 83,706,374.00 |
| | | ================= |

**(4)  ALTERNATIVE TAX NET OPERATING LOSS DEDUCTION AND ENERGY PREFERENCE:**

| | | |
|---|---|---|
| Alternative Tax Energy Preference Deduction -- | | |
| Alternative Tax Energy Preference (Before Limitation) Per Return | | 0.00 |
| Plus: Adjustment To Alternative Tax Energy Preference | | 0.00 |
| | | ------------------ |
| Alternative Tax Energy Preference (Before Limitation) As Corrected | | 0.00 |
| | | ================= |

Limitation On Alternative Tax Energy Preference Deduction:

| | | |
|---|---|---|
| Pre-Adjustment AMTI As Corrected | 304,329,584.00 | |
| Plus: Adjusted Current Earnings (ACE) Adjustment | 4,217,867.00 | |
| | ------------------ | |
| Balance (Not less than -0-) | 308,547,451.00 | |
| | X  40 % | |
| | ------------------ | |
| Limitation On Alternative Tax Energy Preference | 123,418,980.40 | |
| | ================= | |

TAXPAYER: FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP

TIN:     13-3461988

Page **84** of _____

Tax Periods: 199312 199412 199512 199612

199512 - ALTERNATIVE MINIMUM TAX / ENVIRONMENTAL TAX (CONTINUED)

(4)   ALTERNATIVE TAX NET OPERATING LOSS DEDUCTION AND ENERGY PREFERENCE: (CONTINUED)

Alternative Tax Net Operating Loss Deduction --

| | |
|---|---|
| Alternative Tax Net Operating Loss Deduction (Before Limitation) Per Return | 0.00 |
| Plus: Adjustment To Alternative Tax Net Operating Loss Deduction | (1,025,646.00) |
| | ------------------ |
| Alternative Tax Net Operating Loss Deduction (Before Limitation) As Corrected | 1,025,646.00 |
| | ================== |

Limitation On Alternative Tax Net Operating Loss Deduction (NOLD):

| | |
|---|---|
| Pre-Adjustment AMTI As Corrected | 304,329,584.00 |
| Plus: Adjusted Current Earnings (ACE) Adjustment | 4,217,867.00 |
| | ------------------ |
| Balance (Not less than -0-) | 308,547,451.00 |
| | X  90 % |
| | ------------------ |
| Balance | 277,692,705.90 |
| Less Alternative Tax Energy Preference Deduction | 0.00 |
| | ------------------ |
| Limitation On Alternative Tax NOLD | 277,692,705.90 |
| | ================== |

Summary:

| | |
|---|---|
| Alternative Tax Energy Preference Deduction As Corrected | 0.00 |
| Alternative Tax Net Operating Loss Deduction As Corrected | 1,025,646.00 |
| | ------------------ |
| Alternative Tax Net Operating Loss And Energy Preference Deductions | 1,025,646.00 |
| | ================== |

(5)   ALTERNATIVE MINIMUM TAX FOREIGN TAX CREDIT:

| | |
|---|---|
| Tentative Minimum Tax Foreign Tax Credit (Before limitation) Per Return | 26,038,254.00 |
| Plus: Adjustment To Alternative Minimum Tax Foreign Tax Credit | (1,911,192.00) |
| | ------------------ |
| Alternative Minimum Tax Credit As Corrected | 27,949,446.00 |
| | ================== |

TAXPAYER: FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP

TIN:     13-3461988

Page 85 of ____

Tax Periods: 199312 199412 199512 199612

199512 - ALTERNATIVE MINIMUM TAX / ENVIRONMENTAL TAX (CONTINUED)

| ISSUE NUMBER | SAIN NUMBER | ENTITY | AMOUNT | CATEGORY |
|----------|----------|----------|----------|----------|

AMT ADJUSTMENTS / TAX PREFERENCES:

|  |  |  | 0.00 |  |

ADJUSTED NET BOOK INCOME / ADJUSTED CURRENT EARNINGS:

| -0155 | 607 | FRESENIUS NATIONAL MEDICAL CARE | 20,114,463.00 | ADJUSTED NBI/ACE - AMT |
|  |  |  | 20,114,463.00 |  |

ALTERNATIVE TAX NET OPERATING LOSS DEDUCTION:

| -0159 | 601 | W.R. GRACE & CO.--CONN. | (1,025,646.00) | ALTERNATIVE TAX NOLD-AMT |
|  |  |  | (1,025,646.00) |  |

ALTERNATIVE MINIMUM TAX FOREIGN TAX CREDIT:

| -0162 | 604-A | FRESENIUS NATIONAL MEDICAL CARE | (1,911,192.00) | ALT MIN TAX-FTC LIMIT |
|  |  |  | (1,911,192.00) |  |

TAXPAYER:  FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP

TIN:     13-3461988

Page **86** of ____

Tax Periods: 199312 199412 199512 199612

199612 - SUMMARY OF OTHER TAXES

| DESCRIPTION | (a) OTHER TAXES PER RETURN | (b) ADJUSTMENTS | (c) OTHER TAXES AS CORRECTED [(a) + (b)] |
|---|---|---|---|
| 1. Personal Holding Company Tax | 0.00 | 0.00 | 0.00 |
| 2. ITC/Recapture Taxes | 0.00 | 0.00 | 0.00 |
| 3. Win Credit Recapture Tax | 0.00 | 0.00 | 0.00 |
| 4. Alternative Minimum Tax | 0.00 | 0.00 | 0.00 |
| 5. Environmental Tax | 0.00 | 0.00 | 0.00 |
| 6. Minimum Tax on Preference Items | 0.00 | 0.00 | 0.00 |
| 7. Accumulated Earnings Tax | | 0.00 | 0.00 |
| TOTAL OTHER TAXES | 0.00 | 0.00 | 0.00 |

TAXPAYER: FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP

TIN:' 13-3461988

Page **37** of ____

Tax Periods: 199312 199412 199512 199612

199612 - ALTERNATIVE MINIMUM TAX / ENVIRONMENTAL TAX

| | | | |
|---|---|---|---|
| 1. | Pre-adjustment AMTI | | 453,039,699.00 |
| 2a. | Adjusted Current Earnings | | |
| 2b. | Subtract Line 1 from Line 2a | 464,993,351.00 | |
| 2c. | Multiply Line 2b by 75% | 11,953,652.00 | |
| 2d. | Net Cumulative Ace Adjustment Limitation | 8,965,239.00 | |
| 2e. | Ace Adjustment | 106,457,762.00 | |
| 3. | Combine Lines 1 and 2e  (If -0- or less, not subject to Alternative Minimum Tax) | | 8,965,239.00 |
| 4. | Alternative Tax Net Operating Loss and Energy Preference Deductions | | 462,004,938.00 |
| 5. | Alternative Minimum Taxable Income   (Line 3 less Line 4) | | 2,332,057.00 |
| | | | 459,672,881.00 |
| | Members Share Of Controlled Group AMTI | | |
| | | | 0.00 |
| 6. | Tentative Exemption Amount  * | | |
| 7. | Enter 150,000  *   .        (Section 1561(a)(3) Limitation) | 40,000.00 | |
| | (Section 55(d)(3) Amount) | 150,000.00 | |
| 8. | Line 5 (Members share if controlled group) less Line 7 (0 if less than 0) | 459,522,881.00 | |
| 9. | Multiply Line 8 by 25% | | |
| | | 114,880,720.00 | |
| 10. | Exemption.  (Line 6 less Line 9, if -0- or less enter -0-) | | |
| | | | 0.00 |
| 11. | Line 5 less Line 10 | | 459,672,881.00 |
| 12. | Multiply Line 11 X 20% | | 91,934,576.00 |
| 13. | Alternative Minimum Tax Foreign Tax Credit | | 54,023,910.00 |
| 14. | Tentative Minimum Tax  (Line 12 less Line 13) | | 37,910,666.00 |
| 15. | Income Tax Before Credits Minus Foreign Tax Credit and Possessions Tax Credit | | 62,776,460.00 |
| 16. | Alternative Minimum Tax (Line 14 less Line 15) | | 0.00 |
| 17. | Reduction Pursuant To Section 38(c)(2) / Empowerment Zone Employment Credit | | 0.00 |
| 18. | Alternative Minimum Tax As Adjusted for Section 38(c)(2) | | 0.00 |

| | | | | |
|---|---|---|---|---|
| 19. | Modified Pre-adjustment AMTI | | | 453,039,699.00 |
| | (Line 1 Modified for Environmental Tax Deduction) | | | |
| 20. | Modified Adjusted Current Earnings | (1) | 0.00 | |
| | (Line 2 modified for Environmental Tax Deduction) | | | 464,993,351.00 |
| 21. | Subtract Line 19 from Line 20 (Enter -0- if the result is -0- or less) | (1) | 0.00 | |
| 21a. | Multiply Line 21 by 75% | | | 11,953,652.00 |
| 21b. | ACE Adjustment (Modified for Environmental Tax Deduction) | | | 8,965,239.00 |
| 21c. | Combine Lines 19 AND 21b | | | 8,965,239.00 |
| 22. | Environmental Tax Exemption  * | | | 462,004,938.00 |
| | | | | 2,000,000.00 |
| 23. | Environmental Tax (Line 21c less Line 22 X .12%) | | | 0.00 |
| | | | | ------------------- |
| | Environmental Tax Deduction Per Return | | 0.00 | |
| | Environmental Tax Deduction Adjustments: | | 0.00 | |
| (1) | Environmental Tax Deduction As Corrected | | ------------------- | |
| | | | 0.00 | |
| | | | =================== | |

* Members share if controlled group

TAXPAYER:  FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP

Page **88** of _____

TIN:        13-3461988

Tax Periods: 199312 199412 199512 199612

199612 - ALTERNATIVE MINIMUM TAX / ENVIRONMENTAL TAX (CONTINUED)

(1)   PRE-ADJUSTMENT AMTI: (TAXABLE INCOME/LOSS BEFORE NOLD + ADJUSTMENTS + TAX PREFERENCE ITEMS)

Pre-Adjustment AMTI Per Return
Plus: Adjustments To Taxable Income / Loss                              423,512,273.00
      Adjustments To AMT Adjustments / Tax Preferences                   28,637,328.00
Less: Adjustments To Net Operating Loss Deduction                             0.00
                                                                       (890,098.00)
                                                                   ------------------
Pre-Adjustment AMTI As Corrected                                       453,039,699.00
                                                                   ==================

(2)   ADJUSTED CURRENT EARNINGS:

Adjusted Current Earnings Per Return                                    434,047,011.00
Plus: Excess of -
      Pre-Adjustment AMTI As Corrected               453,039,699.00
      Over
      Pre-Adjustment AMTI Per Return                 423,512,273.00    29,527,426.00
                                                 ------------------
      Adjustments To Adjusted Current Earnings                           1,418,914.00
                                                                   ------------------
Adjusted Current Earnings As Corrected                                 464,993,351.00
                                                                   ==================

(3)   NET CUMULATIVE ACE ADJUSTMENT LIMITATION:

Net Cumulative ACE Adjustment Limitation Per Return                     106,457,762.00
Plus: Adjustment To Net Cumulative ACE Adjustment Limit                       0.00
                                                                   ------------------
Net Cumulative ACE Adjustment Limitation As Corrected                  106,457,762.00
                                                                   ==================

(4)   ALTERNATIVE TAX NET OPERATING LOSS DEDUCTION AND ENERGY PREFERENCE:

Alternative Tax Energy Preference Deduction --
      Alternative Tax Energy Preference (Before Limitation) Per Return        0.00
Plus: Adjustment To Alternative Tax Energy Preference                         0.00
                                                                   ------------------
      Alternative Tax Energy Preference (Before Limitation) As Corrected      0.00
                                                                   ==================

Limitation On Alternative Tax Energy Preference Deduction:

      Pre-Adjustment AMTI As Corrected                453,039,699.00
Plus: Adjusted Current Earnings (ACE) Adjustment        8,965,239.00
                                                 ------------------
      Balance (Not less than -0-)                     462,004,938.00
                                                              X  40 %
                                                 ------------------
Limitation On Alternative Tax Energy Preference       184,801,975.20
                                                 ==================

TAXPAYER:  FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP

TIN:        13-3461988

Page **89** of _____

Tax Periods: 199312 199412 199512 199612

199612 - ALTERNATIVE MINIMUM TAX / ENVIRONMENTAL TAX (CONTINUED)

(4)   ALTERNATIVE TAX NET OPERATING LOSS DEDUCTION AND ENERGY PREFERENCE: (CONTINUED)

Alternative Tax Net Operating Loss Deduction --

Alternative Tax Net Operating Loss Deduction (Before Limitation) Per Return

Plus: Adjustment To Alternative Tax Net Operating Loss Deduction

1,447,331.00

(884,726.00)
------------------
Alternative Tax Net Operating Loss Deduction (Before Limitation) As Corrected

2,332,057.00
==================

Limitation On Alternative Tax Net Operating Loss Deduction (NOLD):

Pre-Adjustment AMTI As Corrected

Plus: Adjusted Current Earnings (ACE) Adjustment

453,039,699.00

8,965,239.00
------------------
Balance (Not less than -0-)

462,004,938.00

X  90 %
------------------
Balance

Less Alternative Tax Energy Preference Deduction

415,804,444.20

0.00
------------------
Limitation On Alternative Tax NOLD

415,804,444.20
==================

Summary:

Alternative Tax Energy Preference Deduction As Corrected

Alternative Tax Net Operating Loss Deduction As Corrected

0.00

2,332,057.00
------------------
Alternative Tax Net Operating Loss And Energy Preference Deductions

2,332,057.00
==================

(5)   ALTERNATIVE MINIMUM TAX FOREIGN TAX CREDIT:

Tentative Minimum Tax Foreign Tax Credit (Before limitation) Per Return

Plus: Adjustment To Alternative Minimum Tax Foreign Tax Credit

52,506,958.00

(1,516,952.00)
------------------
Alternative Minimum Tax Credit As Corrected

54,023,910.00
==================

TAXPAYER:   FRESENIUS NATIONAL MEDICAL CARE HOLDINGS, INC. AFFILIATED GROUP
TIN:        13-3461988

Tax Periods: 199312 199412 199512 199612

## 199612 - ALTERNATIVE MINIMUM TAX / ENVIRONMENTAL TAX (CONTINUED)

| ISSUE NUMBER | SAIN NUMBER | ENTITY | AMOUNT | CATEGORY |
|---|---|---|---|---|

**AMT ADJUSTMENTS / TAX PREFERENCES:**

|  |  |  | 0.00 |  |

**ADJUSTED NET BOOK INCOME / ADJUSTED CURRENT EARNINGS:**

| -0155 | 607 | FRESENIUS NATIONAL MEDICAL CARE | 1,418,914.00 | ADJUSTED NBI/ACE - AMT |
|  |  |  | 1,418,914.00 |  |

**ALTERNATIVE TAX NET OPERATING LOSS DEDUCTION:**

| -0159 | 601 | W.R. GRACE & CO.--CONN. | (884,726.00) | ALTERNATIVE TAX NOLD-AMT |
|  |  |  | (884,726.00) |  |

**ALTERNATIVE MINIMUM TAX FOREIGN TAX CREDIT:**

| -0162 | 604-A | FRESENIUS NATIONAL MEDICAL CARE | (1,516,952.00) | ALT MIN TAX-FTC LIMIT |
|  |  |  | (1,516,952.00) |  |

DATE TAX COMPUTATION GENERATED       01/07/2005

# Exhibit B

## COLI Settlement Order

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | Re: Docket No. 6429 |

10/25/04 Agenda Item 3

### ORDER AUTHORIZING THE DEBTORS TO ENTER INTO A SETTLEMENT AGREEMENT WITH THE INTERNAL REVENUE SERVICE IN CONNECTION WITH INTEREST DEDUCTIONS CLAIMED WITH RESPECT TO CORPORATE OWNED LIFE INSURANCE

Upon the motion (the "Motion")[1] of the above captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order authorizing the Debtors to enter a settlement agreement with the Internal Revenue Service ("IRS") in connection with interest deductions claimed with respect to corporate owned life insurance; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been given; and after due deliberation and it appearing that sufficient cause exists for granting the requested relief and that the relief requested under the Motion is in the best interests of the Debtors' estates and creditors; now therefore;

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

IT IS HEREBY ORDERED THAT:

1.      The Motion is granted

2.      Pursuant to the Motion, the Debtors are authorized, but not required, to execute a Final Closing Agreement containing the COLI Settlement terms described herein and providing for termination of the COLI Policies.

3.      Pursuant to the Motion, the Debtors are authorized to pay the COLI Related Taxes when due in accordance with the terms of the Fresenius Agreement.

4.      Pursuant to the Motion, the Debtors are authorized, but not required, to terminate to COLI policies.

5.      The Court shall retain jurisdiction to hear and determine all matters arising from or relating to this Order.

Dated: October 13 , 2004

*Judith K. Fitzgerald*

The Honorable Judith K. Fitzgerald
United States Bankruptcy Judge

2

# Exhibit C

## COLI Closing Agreement

## Closing Agreement on Final Determination

## Covering Specific Matters

Under section 7121 of the Internal Revenue Code, each of

Fresenius Medical Care Holdings, Inc. (f/k/a as W.R. Grace & Co., and after that f/k/a Fresenius National Medical Care Holdings, Inc.), a New York corporation ("Fresenius"), and affiliated corporations (the "Fresenius Affiliated Group") (EIN 13-3461988),

Sealed Air Corporation (f/k/a W.R. Grace & Co. and before that f/k/a Grace Holding, Inc.), a Delaware corporation ("Sealed Air"), and affiliated corporations (the "Sealed Air Affiliated Group") (EIN 65-0654331),

W.R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), a Delaware Corporation ("New Grace"), and affiliated corporations (the "New Grace Affiliated Group") (EIN 65-0773649) and, together with the Fresenius Affiliated Group and the Sealed Air Affiliated Group, (the "Affiliated Groups"),

W.R. Grace & Co.—Conn., a Connecticut corporation ("Grace-Conn.") (EIN 13-5114230), and

The Commissioner of Internal Revenue (the "Commissioner")

make the following Closing Agreement:

WHEREAS on September 28, 1996, Sealed Air and certain directly and indirectly wholly-owned subsidiaries, including Grace-Conn., were spun out of the Fresenius Affiliated Group and, immediately following the spin-off, Sealed Air and Grace-Conn. became members of the Sealed Air Affiliated Group and, on March 31,1998, Grace-Conn. and its new parent, New Grace, were spun out of the Sealed Air Affiliated Group and, immediately following the spin-off, Grace-Conn. became a member of the New Grace Affiliated Group,

WHEREAS, the Fresenius Affiliated Group filed consolidated income tax returns for the taxable years ended December 31, 1989, through December 31, 1996, (the "Fresenius Applicable Periods"),

**Closing Agreement on Final Determination Covering Specific Matters with:**
Fresenius Medical Care Holdings, Inc and affiliated corporations (EIN 13-3461988)
Sealed Air Corporation and affiliated corporations (EIN 65-0654331)
W.R. Grace & Co. and affiliated corporations (EIN 65-0773649)
W.R. Grace & Co.---Conn. (EIN 13-5114230)

WHEREAS, the Sealed Air Affiliated Group filed consolidated income tax returns for the taxable years ended December 31, 1996, (short year) through December 31, 1998, (the "Sealed Air Applicable Periods"),

WHEREAS, the New Grace Affiliated Group filed a consolidated income tax return for the taxable year ended December 31, 1998, (short year) (the "New Grace Applicable Period" and, together with the Fresenius Applicable Periods and the Sealed Air Applicable Periods, the "Applicable Periods") and for taxable years ended December 31, 1999, through December 31, 2001,

WHEREAS, the Fresenius Affiliated Group claimed deductions for interest paid or accrued on loans secured by life insurance contracts owned by Grace-Conn. under Plan Number MBO 38 (COLI V) issued on June 1, 1988, and Plan Number MBO 39 (COLI VIII) issued on February 20, 1990, by Mutual Benefit Life Insurance Company (the relevant business of which was purchased in 1993 by Hartford Life Insurance Company ("Hartford")) (the "Contracts") on federal income tax returns for the Fresenius Applicable Periods,

WHEREAS, the Sealed Air Affiliated Group claimed deductions for interest paid or accrued on loans secured by the Contracts on federal income tax returns for the Sealed Air Applicable Periods,

WHEREAS, the New Grace Affiliated Group claimed deductions for interest paid or accrued on loans secured by the Contracts on federal income tax returns for the New Grace Applicable Period,

WHEREAS, a dispute has arisen between each of the Affiliated Groups, on the one hand, and the Commissioner, on the other hand, regarding whether amounts claimed as deductions for interest on loans secured by the Contracts are deductible on the respective consolidated income tax returns of the Affiliated Groups,

WHEREAS, Grace-Conn. terminated the Contracts, effective on January 20, 2005, by completely surrendering them to Hartford and received approximately $380,644,854 from Hartford in full discharge of Hartford's obligations under the Contracts, approximately $14,837,383 of which was received in cash and approximately $365,807,471 of which was applied to satisfy Grace-Conn.'s obligations on loans from Hartford to Grace-Conn. which are secured by the Contracts,

WHEREAS, of the $380,644,854 in the preceding clause received from Hartford in full discharge of Hartford's obligations under the Contracts,

$193,789,231 represents policy value plus paid up additions for MB038

**Closing Agreement on Final Determination Covering Specific Matters with:**
Fresenius Medical Care Holdings, Inc and affiliated corporations (EIN 13-3461988)
Sealed Air Corporation and affiliated corporations (EIN 65-0654331)
W.R. Grace & Co. and affiliated corporations (EIN 65-0773649)
W.R. Grace & Co.---Conn. (EIN 13-5114230)

$176,287,317 represents policy value for MB039,

$7,154,219 represents mortality contingency reserve dividends for MB038,

$3,059,732 represents mortality contingency reserve dividends for MB039

$177,866 represents post termination DAC based dividends for MB038 and

$176,489 represents post termination dividend DAC based dividends for MB039,

WHEREAS at the time of termination and surrender of the Contracts, Grace-Conn's collective basis (investment in the Contracts) was $126,486,447, which, when the portion of such basis attributable to each policy is applied against the policy value and paid up additions received for each policy, there is total gross income of $248,111,739 for policies where the sum of the policy values and paid up additions exceed the basis. In addition, there are certain policies where the basis of the policies exceeds the sum of the policy values and paid up additions and the amount of such excess in the aggregate is $4,521,638

WHEREAS, the Commissioner and the New Grace Affiliated Group wish to resolve how the amounts received upon surrender of the Contracts by Grace-Conn. should be taxed to the New Grace Affiliated Group,

WHEREAS, a dispute has arisen whether any interest expense paid or accrued on loans secured by the Contracts, if deductible, is directly allocable to the income generated from the Contracts under Treasury Regulations Section 1.861-10T( c) or whether it such interest expense is subject to the general allocation rules of Treasury Regulations Section 1.861-9T,

WHEREAS, the members of the New Grace Affiliated Group are debtors (the "Debtors") in chapter 11 bankruptcy proceedings that commenced on April 2, 2001 under title 11 of the Bankruptcy Code, case numbers 01-1139 through 01-1200, in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and the Bankruptcy Court has authorized the Debtors to enter into a closing agreement in a form substantially similar to this Closing Agreement,

WHEREAS, each of the Fresenius Affiliated Group, the Sealed Air Affiliated Group, the New Grace Affiliated Group, Grace-Conn. and the Commissioner desire to resolve these matters with finality.

**Closing Agreement on Final Determination Covering Specific Matters with:**
Fresenius Medical Care Holdings, Inc and affiliated corporations (EIN 13-3461988)
Sealed Air Corporation and affiliated corporations (EIN 65-0654331)
W.R. Grace & Co. and affiliated corporations (EIN 65-0773649)
W.R. Grace & Co.—Conn. (EIN 13-5114230)

### NOW IT IS HEREBY DETERMINED AND AGREED for Federal income tax purposes that:

1. Except as otherwise provided herein, no deduction is allowable in any year under any provision of the Internal Revenue Code for interest paid or accrued by the Affiliated Groups and Grace-Conn on loans secured by the Contracts during the Applicable Periods.

2. The pending claims for refund of the Fresenius Affiliated Group for tax and interest paid or accrued for the taxable years ending December 31, 1990, December 31, 1991, and December 31, 1992, relating to the disallowance by the Commissioner of deductions claimed by the Fresenius Group for the interest paid or accrued on loans secured by the Contracts are disallowed and will not be reinstated.

3. Schedule A, Part I sets forth (under appropriate headings) the deductions claimed by the Fresenius Affiliated Group and disallowed by the Commissioner for those taxable years for interest paid or accrued on loans secured by the Contracts.

4. Schedule A, Part II sets forth (under appropriate headings) the deductions claimed by the Fresenius Affiliated Group for taxable years ending December 31, 1993, through December 31, 1996, for interest on loans secured by the Contracts and the amounts that shall be allowed and those that shall be disallowed as deductions by the Fresenius Affiliated Group for those taxable years for interest on loans secured by the Contracts.

5. Schedule A, Part III sets forth (under appropriate headings) the deductions claimed by the Sealed Air Affiliated Group for taxable year ending December 31, 1996, (short year) for interest on loans secured by the Contracts and the amounts that shall be allowed and those that shall be disallowed as deductions by the Sealed Air Affiliated Group for that taxable year for interest on loans secured by the Contracts.

6. For interest amounts paid or accrued by the Sealed Air Affiliated Group on or after January 1, 1997, and before January 1, 1999, on loans secured by the Contracts, 20% of the amounts otherwise allowable under the provisions of P.L. 104-191 as amended by P.L. 105-34 shall be allowed as interest deductions by the Sealed Air Affiliated Group for the taxable years ending December 31, 1997, and December 31, 1998. Notwithstanding this Closing Agreement, the Commissioner shall have the right to examine and adjust the Sealed Air Affiliated Group's determinations of Qualified Interest under section 501(c)(2)-(3) of P.L. 104-191 as amended by P.L. 105-34 for any taxable year beginning after December 31, 1996.

7. For interest amounts paid or accrued by the New Grace Affiliated Group on or after January 1, 1997, and before January 1, 1999, on loans secured by the Contracts,

**Closing Agreement on Final Determination Covering Specific Matters with:**
Fresenius Medical Care Holdings, Inc and affiliated corporations (EIN 13-3461988)
Sealed Air Corporation and affiliated corporations (EIN 65-0654331)
W.R. Grace & Co. and affiliated corporations (EIN 65-0773649)
W.R. Grace & Co.---Conn. (EIN 13-5114230)

20% of the amounts otherwise allowable under the provisions of P.L. 104-191 as amended by P.L. 105-34 shall be allowed as interest deductions by the New Grace Affiliated Group for the New Grace Applicable Period. Notwithstanding this Closing Agreement, the Commissioner shall have the right to examine and adjust the New Grace Affiliated Group's determinations of Qualified Interest under section 501(c)(2)-(3) of P.L. 104-191 as amended by P.L. 105-34 for any taxable year beginning after December 31, 1996.

8. No amount disallowed as an interest deduction, whether by reason of this Closing Agreement or any provision of the Internal Revenue Code, shall be allowable as a deduction under any provision of the Internal Revenue Code; nor shall that amount be allowed as an adjustment to Grace-Conn.'s (or any other member of the New Grace Affiliated Group's) or the Affiliated Groups' (or any member of the Affiliated Groups') investment in the Contracts for purposes of section 72 of the Internal Revenue Code; nor shall any portion of the interest or administration fees paid or accrued during the Applicable Periods be allowed as an increase in Grace-Conn.'s basis in the Contracts or in the Affiliated Groups' basis in the Contracts (or in any other asset of Grace-Conn., any other member of the New Grace Affiliated Group, the Affiliated Groups or any member of the Affiliated Groups) for any taxable year under any provision of the Internal Revenue Code.

9. Of the $380,644,854 received by Grace-Conn. from Hartford upon termination and surrender of the Contracts on January 20, 2005 New Grace Affiliated Group shall include in its gross income as ordinary income for the taxable year ending December 31, 2005 the amount of $60,190,654 which consists of:

> $49,622,348 representing 20% of the $248,111,739 gross income realized from the termination and surrender of the Contracts; the $4,521,638 total excess of basis over the sum of the policy values and paid up additions received for policies meeting this condition is not deductible

> $10,213,951 representing 100% of the entire mortality contingency reserve dividend and

> $354,355 representing 100% of the discounted DAC dividends.

10. Any amount paid to or accrued by Grace-Conn. (or any other member of the New Grace Affiliated Group) with respect to the Contracts after they were surrendered by Grace-Conn. is taxable 100% as ordinary income, except that the Federal income tax treatment of amounts paid as death benefits on the lives of individuals who died prior to the surrender of the Contracts shall be determined by the provisions of the Internal Revenue Code in effect at the time of receipt by Grace-Conn.

**Closing Agreement on Final Determination Covering Specific Matters with:**
Fresenius Medical Care Holdings, Inc and affiliated corporations (EIN 13-3461988)
Sealed Air Corporation and affiliated corporations (EIN 65-0654331)
W.R. Grace & Co. and affiliated corporations (EIN 65-0773649)
W.R. Grace & Co.--Conn. (EIN 13-5114230)

11. The Contracts will not be reinstated.

12. To the extent any interest expense paid or accrued on loans secured by the Contracts is allowable as an interest deduction such interest is not directly allocable to the income generated from the Contracts under Treasury Regulation Section 1.861-10T(c).

13. Each of the Affiliated Groups agrees, as to itself, that, if it or any member of its group is under examination at the time this Closing Agreement is executed, it or a member of its group shall notify both the Examination Division Technical Advisor for COLI and either the Examination Division LMSB Team Manager (formerly, the Examination Division Case Manager) or the Examination Division Group Manager, whichever is applicable, of this Closing Agreement and the terms of this Closing Agreement regarding the disallowance or allowance of interest deductions shall apply to all taxable years under examination by the Internal Revenue Service.

14. There has not been an examination, investigation or inspection of the books of account of the New Grace Affiliated Group for the taxable year ending December 31, 2002.

15. Any schedules, exhibits or annexes to this Closing Agreement are hereby incorporated by reference and form part of this Closing Agreement.

16. This closing agreement is being executed in multiple counterparts for ease of execution.

This Closing Agreement is final and conclusive except:

     (1)    the matter to which it relates may be reopened in the event of fraud, malfeasance, or misrepresentation of material fact;

     (2)    it is subject to the Internal Revenue Code sections that expressly provide that effect be given to their provisions (including any stated exception for Code section 7122) notwithstanding any other law or rule of law; and

     (3)    if it relates to a tax period ending after the date of this agreement, it is subject to any law, enacted after the agreement date, that applies to that tax period.

Each of Fresenius, Sealed Air, and New Grace is executing this Closing Agreement solely with respect to matters set forth in this Closing Agreement (including any representations or agreements made hereunder) for those taxable years (or portions

**Closing Agreement on Final Determination Covering Specific Matters with:**
Fresenius Medical Care Holdings, Inc and affiliated corporations (EIN 13-3461988)
Sealed Air Corporation and affiliated corporations (EIN 65-0654331)
W.R. Grace & Co. and affiliated corporations (EIN 65-0773649)
W.R. Grace & Co.—Conn. (EIN 13-5114230)

thereof) for which the respective signatory was the parent corporation of the respective Affiliated Group.

**By signing, the above parties certify that they have read and agreed to the terms of this document**

Fresenius Medical Care Holdings, Inc., on its behalf and on behalf of the Fresenius Affiliated Group

Fresenius Medical Care Holdings, Inc.
95 Hayden Avenue
Lexington, MA 02493

By_____          Date Signed_____
    Name:  Michael Brosnan
    Title:   Chief Financial Officer

Sealed Air Corporation, on its behalf and on behalf of the Sealed Air Affiliated Group
Park 80 East
Saddle Brook, New Jersey 07663-5291

By_____          Date Signed_____
    Name:  David H. Kelsey
    Title:   Vice President and Chief Financial Officer

W.R. Grace & Co., on its behalf and on behalf of the New Grace Affiliated Group
5400 Broken Sound Blvd. NW, Suite 300
Boca Raton, Florida 33486

By_____          Date Signed_____
    Name:  Elyse Filon
    Title:   Vice President Finance

W.R. Grace & Co.-Conn.
5400 Broken Sound Blvd. NW, Suite 300
Boca Raton, Florida 33486

By _Elyn Filo_____          Date Signed _1/20/05_
    Name:  Elyse Filon
    Title:   Vice President Finance

Commissioner of Internal Revenue

By _Joseph J. Phillips Jr._____          Date Signed _1/25/05_
    Name:  Joseph F. Phillips, Jr.
    Title:   Appeals Team Manager

**Closing Agreement on Final Determination Covering Specific Matters with:**
Fresenius Medical Care Holdings, Inc and affiliated corporations (EIN 13-3461988)
Sealed Air Corporation and affiliated corporations (EIN 65-0654331)
W.R. Grace & Co. and affiliated corporations (EIN 65-0773649)
W.R. Grace & Co.—-Conn. (EIN 13-5114230)

## SCHEDULE A

### Part I:  Fresenius Affiliated Group – TY 12/31/89 – 12/31/92

| Taxable Year | Deduction Claimed per IRS adjustments 190 (1989) and 179 (1990-1992) | Deduction Initially Disallowed | Deduction Allowed per this Agreement | Deduction Disallowed per this Agreement |
|---|---|---|---|---|
| 12/31/89 | $13,252,852 | -0- | $2,650,570 | $10,602,282 |
| 12/31/90 | $15,532,143 | $15,532,143 | $- 0 - | $15,532,143 |
| 12/31/91 | $33,523,016 | $33,523,016 | $- 0 - | $33,523,016 |
| 12/31/92 | $32,421,764 | $32,421,764 | $- 0 - | $32,421,764 |

### Part II:  Fresenius Affiliated Group – TY 12/31/93 – 12/31/96

| Taxable Year | Deduction Claimed per IRS adjustment 129 | Deduction Initially Disallowed | Deduction Allowed per this Agreement | Deduction Disallowed per this Agreement |
|---|---|---|---|---|
| 12/31/93 | $30,781,976 | $30,781,976 | $22,451,780 | $8,330,196 |
| 12/31/94 | $26,954,034 | $26,954,034 | $5,390,807 | $21,563,227 |
| 12/31/95 | $32,836,273 | $32,836,273 | $6,567,255 | $26,269,018 |
| 12/31/96 | $19,291,369 | $19,291,369 | $3,858,274 | $15,433,095 |

### Part III:  Sealed Air Affiliated Group – TY 12/31/96 (short year)

| Taxable Year | Deduction Claimed per IRS adjustment G 129 | Deduction Initially Disallowed | Deduction Allowed per this Agreement | Deduction Disallowed per this Agreement |
|---|---|---|---|---|
| 12/31/96 | $6,666,870 | $6,666,870 | $1,333,374 | $5,333,496 |

# Exhibit D

## 2002 COLI Motion

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**Objection Deadline: October 11, 2002 at 4:00 p.m. (EST).**
**Hearing: October 28, 2002 at 12:00 p.m. (EST), only if objections are received.**

### MOTION FOR THE ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO ENTER INTO A SETTLEMENT AGREEMENT WITH THE INTERNAL REVENUE SERVICE IN CONNECTION WITH INTEREST DEDUCTIONS CLAIMED WITH RESPECT TO CORPORATE OWNED LIFE INSURANCE

The above-captioned debtors and debtors in possession (collectively, the

"Debtors"), by their undersigned counsel, respectfully move this Court (the "Motion") for the

entry of an order authorizing the Debtors to enter a settlement agreement with the Internal

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Revenue Service ("IRS") in connection with interest deductions claimed with respect to corporate owned life insurance. In support thereof, the Debtors respectfully submit as follows:

## Jurisdiction

1.      This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this motion is proper under 28 U.S.C. § 1408.

2.      The predicate for the relief requested herein is Fed. R. Bankr. P. 9019.

## Background

3.      On April 2, 2001, the Debtors filed their voluntary petitions for relief (collectively, the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code"). The Chapter 11 Cases have been consolidated for administrative purposes only, and pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

(a)     *The COLI Dispute*

4.      In 1988 and 1990, Grace purchased corporate-owned life insurance ("COLI") policies from Mutual Benefit Life Insurance Company ("MBL") insuring an aggregate of 10,000 employees and former employees.[2] MBL's COLI business, including Grace's COLI

---

[2] The term "Grace" refers to all members of the consolidated groups of corporations (including the Debtors) that filed consolidated tax returns during the taxable years at issue (1989 through December 31, 1998). As discussed more fully in this Motion, Grace included other entities now unrelated to the Debtors, Fresenius National Medical Care Holdings, Inc., (and certain of its subsidiaries) and Sealed Air Corporation (and its subsidiary, Cryovac, Inc.) in most of the taxable years at issue.

policies, was subsequently acquired by Hartford Life Insurance Company. Grace was one of many Fortune 500 companies that acquired broad-based COLI programs created by the insurance industry in the mid-1980s as a vehicle to fund long-term employee post retirement health obligations. The Debtors continue to be the owner and beneficiary of the COLI policies.

5.      Grace has paid in full all premiums for its COLI policies utilizing, in part, loans secured by the COLI policies (the "Policy Loans"). The Policy Loans currently have a remaining loan balance of approximately $350 million, with interest calculated annually based upon a Moody's Corporate Bond Index.

6.      Commencing with the taxable year ending on December 31, 1989, through the taxable year ending December 31, 1998, Grace claimed on the federal consolidated income tax returns for each of those years deductions of the interest accruing on the Policy Loans (the "COLI Interest Deductions"), which totaled approximately $252.4 million for all of the taxable years at issue. Grace did not claim any COLI interest deductions for any taxable years commencing after December 31, 1998, because federal legislation enacted in 1996 prohibited such deductions.

7.      Since the mid-1990s, the IRS has been challenging the right of taxpayers (including Grace) to claim interest deductions on loans secured by COLI policies. In 1997, the IRS disallowed the COLI Interest Deductions (approximately $81.5 million) claimed during the 1990 - 1992 taxable years. This resulted in an assessment of approximately $21.2 million in tax and interest. Grace paid that amount to the IRS in July 2000 and subsequently filed a refund claim for the amount paid. The matter is currently pending before the IRS Office of Appeals.

8.      In July 2002, the IRS challenged approximately $116.5 million of COLI

Interest Deductions claimed with respect to the 1993 - 1996 taxable years.  Grace both protested

this issue and requested that the IRS Office of Appeals consider the COLI Interest Deductions

issue in its entirety for the taxable years 1989 - 1998 (i.e., approximately $252.4 million of

deductions) for possible settlement alternatives.  The IRS Office of Appeals granted this request.

(b)      *The 80/20 Settlement Proposal*

9.      The Debtors have received copies of letters prepared by Ms. Joanne

Miller, the IRS Appeals Officer, and by Mr. Neil S. Regberg, IRS Appeals Coordinator (COLI),

recommending that the Grace COLI Interest Deductions be settled in the following manner:  The

government would concede 20% of the aggregate amount of the COLI Interest Deductions and

Grace would owe an amount of federal income tax and interest on the remaining 80% of the

aggregate COLI Interest Deductions (the "80/20 Settlement Proposal").  A copy of Mr.

Regberg's letter is attached hereto as Exhibit A and a copy of Ms. Miller's letter is attached

hereto as Exhibit B.

10.      Discussions are ongoing between the Debtors and the IRS concerning the

federal income tax consequences of terminating the COLI policies.  Any settlement with respect

to this issue will be the subject of a subsequent motion.

(c)      *Recent Developments in COLI Litigation Create a Risk that the IRS Will Withdraw the*
         *80/20 Settlement Proposal in the Near Future*

11.      The Debtors believe that the terms of the 80/20 Settlement Proposal are in

the best interests of their estates and their creditors.  Although the Debtors continue to believe in

the merits of their case, the IRS has successfully challenged interest deductions claimed by other corporations with respect to broad-based COLI policies in all of the three litigated cases to date. In re CM Holdings, Inc., 254 B.R. 578 (D. Del. 2000), aff'd, -- F.3d --, 2002 WL 1885201 (3rd Cir. 2002); Winn-Dixie Stores, Inc. and Subsidiaries v. Commissioner of Internal Revenue, 113 T.C. 254 (1999), aff'd, 254 F.3d 1313 (11th Cir. 2001); reh'rg en banc denied, 275 F.3d 49 (11th Cir. 2001); writ of cert. denied, 122 S. Ct. 1537 (2002). American Electrical Power, Inc. v. United States, 136 F. Supp. 2d 762 (S.D. Ohio 2001) (currently on appeal to the Court of Appeals for the Sixth Circuit). A fourth case, The Dow Chemical Company v. United States of America, Case No. CV-10331 (BC) (E.D. Mich. September 5, 2000), is currently pending before the United States District Court for the Eastern District of Michigan, Northern Division.

12.    The IRS has informed Grace that it is considering withdrawing settlement offers due to its recent success in the Third Circuit CM Holdings case. Furthermore, the Debtors' special tax counsel, Steptoe & Johnson ("S&J"), has advised them that the risk of withdrawal likely will increase if the IRS succeeds in the Dow Chemical case.

13.    In other, related developments, on July 10, 2002, the IRS Chief Counsel, B. John Williams Jr., issued a statement that IRS COLI settlements currently being offered are "generous in light of the government's court victories". *See Tax Notes Today,* 2002 TNT 132-H. And a recent article in the *Wall Street Journal,* September 17, 2002, (page A-2) criticized the IRS for seeking quick settlements in certain disputed COLI interest deduction cases and suggested that the IRS instead should be getting 100 cents on the dollar.

14.    The potential imposition of penalties and additional interest on the Debtors with respect to the COLI Interest Deductions is also a concern because it would significantly increase the Debtors' potential tax liability.  See e.g., 26 U.S.C. § 6662(a).  Although the IRS has not, to date, asserted any such penalties against the Debtors, S&J has advised them that the IRS has begun to assert such penalties against other taxpayers with similar COLI interest deduction issues.

(d)    *Potential Tax Consequences of the 80/20 Settlement Proposal*

15.    Outlined below is an estimate of the tax impact of the 80/20 Settlement Proposal.  These amounts may be subject to change due to the effect of other IRS adjustments during the relevant taxable years.

| Comparison of Current Estimated Exposure to Federal Income Tax and Interest With and Without the 80/20 Settlement Proposal | | |
|---|---|---|
| ($ Millions) | Without Settlement | With Settlement |
| Federal Income Tax | 74.6 | 62.6[1] |
| Interest | 74.8 | 62.8 |
| Total | 149.4 | 125.4 |
| Tax Payment ('90-'92) | (21.2) | (21.2) |
| Estimated Federal Income Tax and Interest Owed | 128.2 | 104.2[2] |

[1]  Includes impact of settlement on foreign tax credits.

[2]  In addition, the state tax effect is approximated at $20 million (including interest through 12/31/02).  State taxes will be settled over time with each individual taxing entity.  The exposure for state taxes unreduced by the settlement would be approximately $25 million (including interest).

16.     The IRS has advised the Debtors that its demand for payment of the additional amount of tax owed pursuant to the 80/20 Settlement Proposal generally will be made only after all other non-COLI issues relevant to a particular tax period have been resolved. Grace is currently at the IRS Appeals level with respect to the 1993 - 1996 taxable years and a refund claim related to the COLI Interest Deductions for taxable years 1990 - 1992. As there are numerous non-COLI tax issues involved in the 1993 - 1996 audit period, the Debtors do not anticipate that the IRS Office of Appeals review will be completed prior to the end of 2002.

17.     The IRS has not yet initiated its federal income tax audit for the 1997 and 1998 taxable years. Based upon the foregoing, the Debtors will not be able to determine the final tax exposure amount arising from the 80/20 Settlement Proposal for any of the taxable years at issue for a considerable period. Indeed, those amounts may not finally be known for the 1997 and 1998 taxable years for several years.

(c)     *Other Issues*

18.     Treasury regulations permit the IRS to seek payment of federal income tax and interest owed by a consolidated group from any entity that joined in the filing of a consolidated return for the taxable year at issue. See Treas. Reg. § 1.1502-6(a). The IRS may seek payment from the Debtors of federal income tax and interest owed as a result of the 80/20 Settlement Proposal. The IRS has already filed proofs of claim in respect of the taxable years at issue. In addition, the IRS may seek payment of a substantial portion of such tax and interest from Fresenius National Medical Care Holdings, Inc., (or certain of its subsidiaries) (collectively, "Fresenius") and Sealed Air Corporation (or its subsidiary, Cryovac, Inc.)

(collectively, "Sealed Air"), which are unrelated entities, because they were members of the

Debtors' consolidated group for federal income tax purposes during many of the taxable years at

issue. Fresenius and Sealed Air ceased to be members of the Debtors' consolidated group as a

result of two transactions as described below.

19.    For the 1989 taxable year through September 28, 1996, the common

parent of the Grace federal consolidated group was W. R. Grace & Co. (taxpayer identification

number 13-3461988, "Grace Parent #1"). As part of a separation of Grace's worldwide

healthcare business from Grace's other operations ("Reorganization #1"), Grace Parent #1

changed its name to Fresenius National Medical Care Holdings, Inc., as of September 29, 1996,

and ceased to be the common parent corporation of the Grace historical businesses. Therefore,

for taxable years 1989 through the taxable year ending on September 28, 1996, Fresenius is

severally liable with the Debtors for any additional amounts of federal income tax owed.

20.    In Reorganization #1, Fresenius and the Debtors entered into a Tax

Sharing and Indemnification Agreement ("TSIA #1"), dated September 27, 1996. TSIA #1

provides for the allocation between Fresenius and the Debtors of all responsibilities, liabilities

and benefits relating to or affecting Taxes (as defined in TSIA #1) paid or payable by either of

them for all periods, whether beginning before, on or after the date of Reorganization #1. Under

TSIA #1, Fresenius has certain rights to seek indemnification from the Debtors for this matter if

the IRS should seek to recover payment from Fresenius.

21.    From September 29, 1996, through the taxable year ending March 31,

1998, the common parent of the Grace federal tax consolidated group was W. R. Grace & Co.

(taxpayer identification number 65-0654331, "Grace Parent #2"). As part of a separation of

Grace's worldwide packaging business from Grace's other operations ("Reorganization #2"),

Grace Parent #2 changed its name to Sealed Air Corporation as of April 1, 1998, and ceased to

be the common parent corporation of Grace's historical businesses. In addition, Cryovac, Inc., a

Sealed Air subsidiary, was a member of the Grace consolidated group beginning in the early

1980s. Therefore, Sealed Air is severally liable with the Debtors for any additional amounts of

federal income tax owed for all the taxable years at issue through March 31, 1998.

       22.    In Reorganization #2, Sealed Air and the Debtors entered into a Tax

Sharing and Indemnification Agreement ("TSIA #2"), dated as of March 30, 1998. TSIA #2

provides for the allocation between Sealed Air and the Debtors of all responsibilities, liabilities

and benefits relating to or affecting Taxes (as defined in TSIA #2) paid or payable by either of

them for all taxable periods, whether beginning before, on or after the date of Reorganization #2.

Under TSIA #2, Sealed Air has certain rights to seek indemnification from the Debtors for this

matter if the IRS should seek to recover payment from Sealed Air.

       23.    From April 1, 1998, to the present time, the common parent of the

Debtors' federal tax consolidated group is W. R. Grace & Co. (taxpayer identification number

65-0773649), one of the Debtors.

       24.    The Debtors have consulted with both Fresenius and Sealed Air about the

80/20 Settlement Proposal. They both have indicated that they would like to proceed to

implement a final settlement agreement with the IRS that incorporates the 80/20 Settlement

Proposal.

**Relief Requested**

25.     By this Motion, the Debtors seek authority to enter into the 80/20

Settlement Proposal, as defined above, with the IRS.

**Basis for Relief**

26.     The Debtors respectfully submit that entering into the 80/20 Settlement

Proposal is in the best interests of their estates and their creditors and should be approved by the

Bankruptcy Court pursuant to Fed. R. Bankr. P. 9019, which authorizes this Court to approve a

compromise settlement entered into by a debtor.  The decision whether to accept or reject a

compromise lies within the sound discretion of the Bankruptcy Court.  In re Neshaminy Office

Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986).  Approval of a compromise settlement is

appropriate if it is in the "best interests of the estate."  Id.

27.     In determining whether a compromise settlement is in the best interests of

a debtor's estate, courts in the Third Circuit have considered the following four factors:

- the probability of success in the litigation;

- the difficulties, if any, to be encountered in the matter of collection;

- the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and

- the paramount interest of the creditors.

Id.; see also In re Pennsylvania Truck Lines, Inc., 150 B.R. 595, 598 (E.D. Pa. 1992), aff'd, 8

F.3d 812 (3d Cir. 1993); In re Grant Broadcasting of Philadelphia, Inc., 71 B.R. 390, 395 (Bankr.

E.D. Pa. 1987).

28.     The settlement need not be the best that the debtor could have achieved, but only must fall "within the reasonable range of litigation possibilities." In re Penn Central Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979). In making its determination, a court should not substitute its own judgment for that of the debtor. Neshaminy Office, 62 B.R. at 803. Moreover, it is not necessary for the court to conduct a "mini trial" of the facts or the merits underlying the dispute. Grant Broadcasting, 71 B.R. at 396; see also In re A & C Properties, 784 F.2d 1377, 1384 (9th Cir.), cert. denied, 479 U.S. 854 (1986). Rather, the court need only consider those facts that are necessary to enable it to evaluate the settlement and to make an informed and independent judgment about the settlement. Penn Central, 596 F.2d at 1114; see also In re Energy Cooperative, Inc., 886 F.2d 921, 924-25 (7th Cir. 1989).

***The 80/20 Settlement Proposal Should Be Approved***

29.     The Debtors continue to believe in the merits of their case regarding the COLI Interest Deductions tax controversy. Nonetheless, they recognize the potential cost of litigation and the risk of not prevailing in light of recent court decisions involving similarly situated taxpayers. Therefore, the Debtors' management, in consultation with S&J, have determined that entering into the 80/20 Settlement Proposal at this time is in the best interests of their estates and their creditors for several reasons.

30.     First, the 80/20 Settlement Proposal will most likely minimize the amount of any additional federal income tax and interest owed as a result of the challenge by the IRS to the COLI Interest Deductions. Second, entering into the 80/20 Settlement Proposal will help decrease the risk that the IRS will seek to impose penalties and interest thereon. Third, the

Debtors believe that they should enter into the 80/20 Settlement Proposal now because they believe that there is a substantial risk that the 80/20 Settlement Proposal will not be available to them in the future.

31.     If the IRS were to withdraw its settlement offer, the amount of federal income tax owed by Grace for the taxable years at issue could exceed the settlement offer by as much as $24 million. Therefore, in order to avoid this potential risk, the Debtors are filing this Motion now instead of waiting until all tax issues (COLI and non-COLI) relating to the taxable years at issue have been resolved.

### Notice

32.     Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor-in-possession lenders, (iii) counsel to each official committee appointed by the United States Trustee and (iv) those parties that requested papers under Fed. R. Bankr. P. 2002.

### No Prior Request

33.     No prior motion for the relief requested herein has been made to this or any other Court. The Debtors submit that no further notice or a hearing is necessary for this Court to enter an order granting the relief requested by this Motion.

WHEREFORE, the Debtors respectfully request that the Court (i) authorize the

Debtors to enter into the 80/20 Settlement Proposal, as defined above, with the IRS and (ii) grant

such other and further relief as the Court deems just and proper.

Wilmington, Delaware
Dated:  September 23, 2002

> KIRKLAND & ELLIS
> James H.M. Sprayregen
> James W. Kapp III
> Roger J. Higgins
> 200 East Randolph Drive
> Chicago, Illinois 60601
> (312) 861-2000
>
> and
>
> PACHULSKI, STANG, ZIEHL, YOUNG &
> JONES PC
>
> *Scotta E. McFarland*
> Laura Davis Jones (#2436)
> Scotta E. McFarland (#4184)
> 919 North Market Street, 16th Floor
> P.O. Box 8705
> Wilmington, Delaware 19899-8705 (Courier
> 19801)
> (302) 652-4100
>
> Co-Counsel for the Debtors and Debtors in
> Possession

91100-001\DOCS_DE:55283.2

# Exhibit E

## 2004 COLI Motion

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Objection Deadline: October 8, 2004**
**Hearing Date: October 25, 2004 at Noon**

## DEBTORS' MOTION FOR THE ENTRY OF AN ORDER FOR AUTHORIZATION TO (i) ENTER INTO A SETTLEMENT AGREEMENT WITH THE INTERNAL REVENUE SERVICE WITH RESPECT TO INTEREST DEDUCTIONS FOR CERTAIN COLI POLICIES, (ii) PAY AMOUNTS DUE PURSUANT TO THE SETTLEMENT AGREEMENT, AND (iii) TERMINATE THE COLI POLICIES

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by

their undersigned counsel, respectfully move this Court (the "Motion") for the entry of an order

authorizing the Debtors to (i) settle a federal income tax controversy with the Internal Revenue

Service ("IRS") relating to interest deductions claimed by the Debtors with respect to corporate

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

owned life insurance ("COLI") currently insured by Hartford Life Insurance Company ("Hartford") (a copy of the Model Closing Agreement is attached as Exhibit A); (ii) make payment to the IRS and respective state tax authorities of additional taxes and interest attributable to the settlement (collectively referred to herein as the "COLI Related Taxes"); and (iii) terminate the Hartford insured COLI policies (the "COLI Policies"). The Court should grant the Motion because the proposed settlement is in the best interests of the Debtors' estates. Further, payment of these settlement amounts as they become due is appropriate because the taxes at issue are required to be paid in full under agreements to which the Debtors are subject that have been previously approved by this Court. In support thereof, the Debtors respectfully submit as follows:

### Jurisdiction

1.      This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this motion is proper under 28 U.S.C. § 1408.

2.      The predicate for the relief requested herein is Federal Rule of Bankruptcy Procedure 9019.

### Background

3.      On April 2, 2001, the Debtors filed their voluntary petitions for relief (collectively, the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code"). The Chapter 11 Cases have been consolidated for administrative purposes only, and pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

2

### a.    The COLI Dispute

4.    In 1988 and 1990, Grace purchased the COLI Policies from Mutual Benefit Life Insurance Company ("MBL") insuring an aggregate of 10,000 employees and former employees.[2]    MBL's COLI business, including Grace's COLI Policies, was subsequently acquired by Hartford. Grace was one of many Fortune 500 companies that acquired broad-based COLI programs created by the insurance industry in the mid-1980s primarily as a vehicle to fund long-term employee post retirement health obligations. The Debtors continue to be the owner and beneficiary of the COLI Policies.

5.    Grace has paid in full all premiums for its COLI Policies utilizing, in part, loans secured by the COLI Policies (the "Policy Loans"). As of June 30, 2004, the gross value of the COLI Policies was approximately $366.7 million, which secured Policy Loans balances of approximately $ 352.4 million. Interest on the Policy Loan balances is calculated annually based upon a Moody's Corporate Bond Index.

6.    Commencing with the taxable year ending on December 31, 1989, through the taxable year ending December 31, 1998, Grace claimed on its federal consolidated income tax returns for each of those years deductions of the interest accruing on the Policy Loans (the "COLI Interest Deductions"), which totaled approximately $252.4 million for all of the taxable years at issue. Grace did not claim any COLI interest deductions for any taxable years

---

[2] The term "Grace" refers to all members of the consolidated groups of corporations (including the Debtors) that filed consolidated tax returns during the taxable years at issue (1989 through December 31, 1998). As discussed more fully in this Motion, Grace included other entities now unrelated to the Debtors, Fresenius National Medical Care Holdings, Inc., (and certain of its subsidiaries) and Sealed Air Corporation (and its subsidiary, Cryovac, Inc.) in most of the taxable years at issue.

commencing after December 31, 1998, because federal legislation enacted in 1996 prohibited such deductions.

7.      Since the mid-1990s, the IRS has challenged the right of taxpayers (including Grace) to claim interest deductions on loans secured by COLI Policies.  In 1997, the IRS disallowed the COLI Interest Deductions (approximately $81.5 million) claimed during the 1990 - 1992 taxable years.  This resulted in an assessment of approximately $21.2 million in tax and interest.  Grace paid that amount to the IRS in July 2000 and subsequently filed a refund claim for the amount paid.

8.      In July 2002, the IRS challenged approximately $116.5 million of COLI Interest Deductions claimed with respect to the 1993 - 1996 taxable years.  Grace both protested this issue and requested that the IRS Office of Appeals ("IRS Appeals") consider the COLI Interest Deductions issue in its entirety for the taxable years 1989 - 1998 (i.e., approximately $252.4 million of deductions) for possible settlement alternatives.  IRS Appeals granted this request.

**b.      The Court Motion and Order Authorizing Settlement Negotiations**

9.      On September 23, 2002, the Debtors filed a motion (the "Initial COLI Motion") with the Court seeking authority to pursue settlement of the COLI tax controversy along general guidelines issued by the IRS, providing that the government concede 20% of the aggregate COLI Interest Deductions, and the Debtors concede 80% of the aggregate COLI Interest Deductions. (the "80/20 Settlement Proposal").

10.     On October 22, 2002, the Court authorized Debtors to pursue such negotiations, but the Court directed the Debtors to move the Court for approval of the final terms of any COLI related settlement.  The Initial COLI Motion and the Court Order granting the Motion are attached hereto as Exhibits B and C, respectively.

4

**Proposed Settlement Relating to COLI Interest Deductions**

c.    **Consistency with the 80/20 Settlement Proposal.**

11.    The terms of the proposed settlement relating to COLI Interest Deductions (the "COLI Settlement") are consistent with the 80/20 Settlement Proposal and are set forth in the Model Closing Agreement.  Specifically, Debtors are permitted (a) approximately $42.2 million, or 20%, of the approximately $211.2 million in COLI Interest Deductions claimed from 1989 through 1996 and (b) 20% of the COLI Interest Deductions claimed in 1997 and 1998.  The Model Closing Agreement does not specify the exact amount of COLI Interest Deductions permitted for the 1997 and 1998 tax years because the IRS has not yet completed its audit of Debtors' income tax returns for those tax years.  However, the Debtors claimed a total of approximately $41 million in COLI Interest Deductions in the 1997 and 1998 tax years.

d.    **Additional Settlement Terms**

12.    As part of the proposed COLI Settlement, the Debtors also agreed to allocate a portion of the permitted COLI Interest Deductions against Debtors foreign source income for purposes of determining the availability of foreign tax credits in each of the tax years at issue. As a general rule, taxpayers are typically required to allocate a portion of their overall US interest expense against foreign source income based upon a ratio of foreign to worldwide assets as set forth in Treasury Regulations.  This effectively decreases the amount of foreign tax credits that taxpayers may apply to reduce US taxes on foreign source income.  Treasury Regulations provide a limited exemption from the allocation rules for interest incurred on funds borrowed in connection with an "integrated financial transaction," as defined under Treasury Regulations. Under the terms of the COLI Settlement, Debtors would concede that COLI Interest Deductions do not qualify for this or any other exemption from the interest allocation rules (see Model

5

Closing Agreement par. 12).  Consequently, Debtors' utilization of foreign tax credits would be further restricted as a result of the COLI Settlement.

      13.    The chart below illustrates an estimate of the tax impact of the COLI Settlement, including foreign tax credit restrictions.  The actual cash impact of the COLI Settlement may be less than the amounts listed below due to Debtors' other tax attributes, such as business credits, NOL carrybacks, additional prepayments and other credits impacting the years at issue.

| Comparison of Current Estimated Exposure to Income Tax and Interest With and Without the 80/20 Settlement Proposal[1] | | |
|---|---|---|
| ($ Millions) | Without Settlement (Assumes loss of all COLI Interest Deductions) | With Settlement |
| Federal Income Tax | 66.6 | 53.5[2] |
| Interest | 44.0 | 30.2 |
| Total | 110.6 | 83.7 |
| Tax Payments ('90-'92) | (21.2) | (21.2) |
| Tax Payments ('93-'96) | (43.2) | (43.2) |
| Est. Federal Income Tax and Interest Owed | 46.2 | 19.3 |
| Est. State Income Tax and Interest Owned | 9.6 | 7.8 |
| Estimated Total Taxes and Interest | 55.8 | 27.1 |

[1]  This chart was also included in the Initial COLI Motion but the amounts listed have been further refined.  Debtors' assume that the tax prepayments of $43.2 shown in the chart with respect to the 1993-1996 tax years will be applied by the IRS to the COLI Related Taxes for that period.

[2]  Includes impact of settlement on foreign tax credits.

14.     Although the Model Closing Agreement is currently in draft form, the terms of the COLI Settlement, described therein, are not anticipated to change.  The only substantive revisions anticipated to the Model Closing Agreement are to the bracketed information describing the COLI termination provisions.  A description of the proposed termination, Debtors' reasons in support thereof and the financial impact are discussed separately in paragraphs 26-31, herein.

7

e.    **Joint Committee on Taxation Review and Approval**

15.    The IRS submitted the Model Closing Agreement to the Joint Committee on Taxation (the "Joint Committee") for final review and approval. By letter dated April 26, 2004, the IRS notified the Debtors that the Joint Committee had no objection to the document (the IRS letter is attached hereto as Exhibit D). Consequently, the parties are prepared to finalize the COLI termination provisions in the Model Closing Agreement and execute a final closing agreement (the "Final Closing Agreement") upon obtaining this Court's approval.

f.    **Payment of Taxes Under the Settlement Agreement**

16.    Once the Final Closing Agreement is executed, the IRS has the right to either (i) promptly demand payment from Debtors for COLI Related Taxes pertaining to the 1993 - 1996 audit period or (ii) refrain from demanding payment until all tax issues (including non-COLI issues) relevant to the 1993-1996 tax period have been resolved. Debtors estimate that the impact of COLI Related Taxes for the 1993 - 1996 tax period would be approximately $42.6 million, including accrued interest through 2004. As indicated on the chart in paragraph 12, herein, Debtors have already prepaid approximately $43.2 million in taxes for the 1993-1996 tax years. Therefore, the prepaid amounts should be sufficient to offset all additional Federal COLI Related Taxes for the 1993 - 1996 period (additional state taxes are discussed below).

17.    Grace is currently working with the IRS Examination Team to conclude its 1993 – 1996 federal income tax audit. It is anticipated that the Examination Team's review will conclude by the fall of 2004, with any remaining issues subject to review by IRS Appeals. The number of non-COLI issues to be submitted and reviewed by IRS Appeals and the time period for review cannot be determined at this time. Debtors anticipate that the COLI Settlement will be executed prior to the settlement of the overall 1993 - 1996 federal income tax audit and that the entire $43.2 million income tax prepayment will be credited against COLI Related Taxes, but

8

there can be no assurance that the tax prepayments will not be applied by the IRS to other tax liabilities arising from other Final Determinations (as defined in the Fresenius Agreement) in the 1993-1996 federal income tax audit.

18.     The IRS is currently conducting federal income tax audits of all of the remaining tax years in which there is exposure for COLI Related Taxes. Debtors cannot at this time predict when such IRS audits will conclude and therefore Debtors cannot estimate when the remaining COLI Related Taxes will be due.

19.     With respect to state taxes, Debtors estimate that approximately $4.7 million in taxes and interest will be due and owing to various state tax authorities upon execution of the Final Closing Agreement. This amount represents COLI Related Taxes with respect to the 1990-1992 tax years. The remaining estimated $3.1 million of taxes and interest is expected to become due upon the completion of the Federal Tax audit for the 1993-1996 tax period. Additional state taxes attributable to the 1997 and 1998 tax periods are expected to be sheltered by state tax NOLs.

g.     **Fresenius and Sealed Air – Several Liability**

20.     Treasury regulations permit the IRS to seek payment of federal income tax and interest owed by a consolidated group from any entity that joined in the filing of a consolidated return for the taxable year at issue. See Treas. Reg. § 1.1502-6(a). Pursuant to this Treasury Regulation, the IRS may seek payment of a substantial portion of such Taxes from Fresenius National Medical Care Holdings, Inc., (or certain of its subsidiaries, collectively, "Fresenius") and Sealed Air Corporation (or its subsidiary, Cryovac, Inc., collectively, "Sealed Air"), which are currently unrelated entities, but were members of the Debtors' consolidated group for federal income tax purposes during many of the taxable years at issue. Similar rules apply in many states. Fresenius was a member for the 1988 taxable year through September 28, 1996. Sealed

9

Air was a member from the 1988 taxable year through March 31, 1998. This issue is discussed in substantial detail in the Initial COLI Motion (paragraphs 18-24).

21. Sealed Air has reviewed the terms of the Model Closing Agreement and is prepared to execute a final document upon obtaining this Court's authorization. Fresenius has also reviewed the Model Closing Agreement and will execute a final document, provided that Debtors comply with the terms of the Settlement Agreement and Release of Claims dated February 6, 2003 (the "Fresenius Agreement"), which is attached hereto as Exhibit E.

**h.    The Fresenius Agreement**

22. Under the Fresenius Agreement, as will be further explained below, Debtors are required to seek this Courts approval to pay substantially all of the COLI Related Taxes when due.

23. Under the Fresenius Agreement and subject to certain preconditions, Fresenius agreed to pay, within five business days after the Settlement Effective Date (defined below), $115 million as directed by this Court for the benefit of the Debtors' Estates (the "Fresenius Payment"). The "Settlement Effective Date" is the later of (a) the effective date of the Debtors' plan of reorganization or (b) the satisfaction or waiver of all preconditions to the Fresenius Payment. One precondition to the Fresenius Payment is that the Fresenius Group be released from all Grace-Related Claims (as defined in the Fresenius Agreement), including all Indemnified Taxes. "Indemnified Taxes" include all taxes (including accrued interest and penalties thereon) of the Debtors with respect to any tax period ending on or before December 31, 1996.

24. Substantially all of the COLI Related Taxes at issue in this Motion qualify as Indemnified Taxes under the Fresenius Agreement (i.e., attributable to approximately $233.9 million out of approximately $252.4 million in COLI Interest Deductions). In addition to COLI

10

Related Taxes attributable to periods prior to December 31, 1996, Indemnified Taxes also include COLI Related Taxes attributable to approximately $22.5 million in COLI Interest Deductions claimed in 1997, by virtue of a carryback refund claim from the 1997 tax year to the 1988 and subsequent tax years.    Since the Debtors have already received the tax refund, adjustments to the NOL carryback will technically result in an underpayment of taxes for periods prior to December 31, 1996, when Fresenius (then Grace New York as explained in the Initial COLI Motion) was the parent of the W. R. Grace & Co. Consolidated Tax Group. Therefore, the corresponding tax liability is within the definition of Indemnified Taxes. In addition, the entire estimated state cash tax liability would be included in Indemnified Taxes. The only portion of COLI Related Taxes not qualifying as Indemnified Taxes are those taxes attributable to the 1998 full tax year. Debtors claimed approximately $18.5 million in COLI Interest Deductions in 1998 and anticipate a corresponding cash tax liability of approximately $3 million, plus accrued interest.

25.    The Fresenius Agreement gives Grace-Conn. the sole authority to act with respect to Indemnified Taxes. However, under Section 3.03(B) of the Fresenius Agreement, none of the Debtors may voluntarily agree to the payment, assessment or other resolution of any Indemnified Taxes prior to the Settlement Effective Date, unless (a) the Debtors have obtained authorization from this Court to pay in full any such Indemnified Taxes when due pursuant to a Final Determination or (b) Fresenius has consented in writing to such agreement by the Debtors. Further, pursuant to Paragraph 2(iii) of the Order of District Judge Wolin approving the

11

Fresenius Agreement,[3] the Debtors are authorized to make any payment of Indemnified Taxes in connection with any settlement of such Taxes.

26.    In compliance with the terms of the Fresenius Agreement, Debtors seek authorization to pay COLI Related Taxes qualifying as Indemnified Taxes when due.

**Termination of the COLI Policies**

i.    **Consistency with the 80/20 Settlement Proposal.**

27.    In its Initial COLI Motion, Debtors stated that discussions were ongoing with the IRS concerning the federal income tax consequences of terminating the COLI Policies and that any such settlement would be the subject of a subsequent motion. Debtors and the IRS have reached a tentative agreement to terminate the COLI Policies that is consistent with the terms of the 80/20 Settlement Proposal.

28.    As previously stated, under the 80/20 Settlement Proposal, Debtors agree to concede 80% of the COLI Interest Deductions. In recognition of this concession, the IRS is willing to exempt Debtors from 80% of the gain that is typically recognized by taxpayers upon termination of the COLI Policies, provided that such termination occurs in the context of a COLI Settlement Agreement. Generally, when a taxpayer terminates a life insurance policy, any gain realized must be included in taxable income. However, as part of the COLI Settlement, Debtors will be taxed on only 20% of the gain realized on termination. Associated dividends will continue to be fully taxed.

29.    Hartford has provided the Debtors with an estimate of the cash and tax consequences if the COLI Policies had terminated on June 30, 2004. As set forth below, as of

---

[3] A copy of the Order approving the Settlement Agreement is attached hereto as Exhibit F.

12

June 30th, Debtors would have received a cash payment of approximately $22.3 million and would have been required to include approximately $56.6 million in taxable income in the year of termination.  Pursuant to the proposed COLI Settlement terms, Debtors would be entitled to an exemption from taxable income of approximately $194.4 million in termination gain.

| Consequences of a Termination As of June 30, 2004 | |
|---|---|
| ($ Millions) | |
| **Cash** | |
| Total COLI Policy Value | 366.7 |
| Total Loan Balances | (352.4) |
| Remaining Policy Value | 14.3 |
| Dividends/Reserves | 8.0 |
| Cash Payout on Termination | 22.3 |
| **Tax Consequences** | |
| Termination Gain Realized | 243.0 |
| Settlement Exemption from Taxable Income | (194.4) |
| Termination Gain Taxable Income | 48.6 |
| Dividends/Reserves | 8.0 |
| Total Increase in Taxable Income | 56.6 |

30.     The amounts listed in the above referenced chart will differ from the final termination amounts to reflect additional death benefits paid, fluctuations in applicable interest rates, increases in accrued interest on Policy Loans and changes in overall Policy Value.  Further, assuming that termination occurs as part of the COLI Settlement, Debtors anticipate that there will be sufficient net operating losses to offset the increase in taxable income attributable to the termination, although alternative minimum taxes may apply.

### j. '    Additional Rationale for Termination as part of the COLI Settlement

31.     Hartford has provided the Debtors with an actuarial estimate of projected death benefits and cash flow with respect to the COLI Policies.  As of June 30, 2004, the COLI

13

Policies represent "insurance-in-force" of approximately $2,004.3 million in tax-free death benefits and projected cumulative death benefits totaling $1,505 million over an approximately 65-year period.[4]  Although actual experience has and may continue to vary, Hartford forecasts that annual net cash flow derived from the COLI Policies, after factoring in death benefits, loan principal repayment and interest payments will be negative until 2020.  Debtors have explored with Hartford various alternatives to improve upfront cash flows, but this would likely result in a substantial reduction of insurance in force.

32.     COLI has also been the focus of legislative proposals, media attention and policy discussions concerning the tax treatment of both death benefits received from COLI policies and the appreciation in policy value.[5]  Under current law, death benefits are not subject to tax upon receipt and the appreciation in policy value is generally not subject to tax unless a taxpayer terminates its COLI policies.  However, recent federal legislative proposals would require current taxation of death benefits, taxation of the appreciation in value of COLI policies and certain notification requirements.[6]  Although many of the current legislative proposals would

---

[4] This actuarial projection assumes that loan interest is paid when due with no additional borrowing, that there is a 4% crediting rate on unborrowed cash value, that interest rates would continue in future years at current levels and that, to the extent possible, policies would be prevented from lapsing by reducing death benefits on policy anniversaries.  Notwithstanding the foregoing, it is assumed that certain policies will lapse prior to payment of death benefits, creating a discrepancy between "insurance in force" and the projected cumulative death benefits.

[5] Present-Law Federal Tax Treatment, Proposals, and Issues Relating to Company-Owned Life Insurance ("COLI"), prepared by the Staff of the Joint Committee on Taxation, October 14, 2003, JCX-91-03.

[6] See H.R. 414 (introduced January 28, 2003) and H.R. 2127 (introduced May 15, 2003).  An amendment relating to COLI was adopted in the markup in the Senate Committee on Finance of the "National Employee Savings and Trust Equity Guarantee Act" on September 17, 2003.  Two amendments relating to COLI were filed in connection with the markup in the Senate Committee
(Continued...)

14

apply prospectively, there is no assurance that final legislation will adopt a prospective approach. Moreover, as with its challenges to COLI interest deductions, there is no assurance that the IRS might not attempt to apply the principles of such legislation retroactively to challenge the tax-free nature of death benefits derived from broad-based COLI policies.

### k.   Procedural Issues re: Termination

33.   Assuming Debtors terminate the COLI Policies, the following information must be included in the Final Closing Agreement entered into with the IRS: (i) the projected COLI policy termination date, (ii) the anticipated cash payout upon termination and (iii) the projected termination taxable gain in total and after applying the 80% exemption. Further, the termination of the COLI Policies must take place on the same day, immediately before the Final Closing Agreement is executed. The attached Model Closing Agreement contains the above referenced information in brackets, assuming a March 19, 2004 termination date. The chart set forth in paragraph 28, above, updates this information based upon a June 30, 2004 termination date. Assuming Debtors are authorized to accept the COLI Settlement and terminate the COLI Policies, the Final Closing Agreement will state the actual Closing Date and the financial information relating to the termination of the COLI Policies on such date.

### Relief Requested

34.   By this Motion, Debtors seek authority to (i) execute a Final Closing Agreement containing the COLI Settlement terms described herein and providing for termination of the

---

on Finance of the "Jumpstart Our Business Strength (JOBS) Act," with modifications, on October 1, 2003

15

COLI Policies; (ii) pay the COLI Related Taxes when due in accordance with the terms of the Fresenius Agreement; and (iii) terminate the COLI policies.

### Basis For Relief

35.    Federal Rule of Bankruptcy Procedure 9019 authorizes the Court to approve compromises or settlements entered into by the Debtors.  The decision whether to accept or reject a particular compromise lies within the sound discretion of the Court.  In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986).  Approval of a compromise settlement is appropriate if it is in the "best interests of the estate."  Id.

36.    In determining whether a compromise settlement is in the best interests of a debtor's estate, courts in the Third Circuit have considered the following four factors:

- the probability of success in the litigation;

- the difficulties, if any, to be encountered in the matter of collection;

- the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and

- the paramount interest of the creditors.

Id.; see also In re Pennsylvania Truck Lines, Inc., 150 B.R. 595, 598 (E.D. Pa. 1992), aff'd, 8 F.3d 812 (3d Cir. 1993); In re Grant Broadcasting of Philadelphia, Inc., 71 B.R. 390, 395 (Bankr. E.D. Pa. 1987).

37.    The settlement need not be the best that the debtor could have achieved, but only must fall "within the reasonable range of litigation possibilities."  In re Penn Central Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979).  In making its determination, a court should not substitute its own judgment for that of the debtor.  Neshaminy Office, 62 B.R. at 803.  Moreover, it is not necessary for the court to conduct a "mini trial" of the facts or the merits underlying the dispute.  Grant Broadcasting, 71 B.R. at 396; see also In re A & C Properties, 784 F.2d 1377, 1384 (9th

16

Cir.), cert. denied, 479 U.S. 854 (1986). Rather, the court need only consider those facts that are necessary to enable it to evaluate the settlement and to make an informed and independent judgment about the settlement. Penn Central, 596 F.2d at 1114; see also In re Energy Cooperative, Inc., 886 F.2d 921, 924-25 (7th Cir. 1989).

### Argument

38.     The Court should approve the Final Closing Agreement and payment of the COLI Related Taxes because they are in the best interests of (i) the Debtors' estates and (ii) creditors of the Debtors' estates.

39.     Debtors' management has determined that accepting the COLI Settlement and terminating the COLI Policies at this time is in the best interests of their estates and their creditors for several reasons. Although the Debtors continue to believe in the merits of their case regarding the COLI tax controversy, they recognize that there are substantial hazards of litigation given that the IRS has successfully challenged interest deductions claimed by other corporations with respect to broad-based COLI policies in a preponderance of court decisions regarding this matter. See In re CM Holdings, Inc., 254 B.R. 578 (D. Del. 2000), aff'd, 301F.3d 96 (3rd Cir. 2002); Winn-Dixie Stores, Inc. and Subsidiaries v. Commissioner of Internal Revenue, 113 T.C. 254 (1999), aff'd, 254 F.3d 1313 (11th Cir. 2001); reh'rg en banc denied, 275 F.3d 49 (11th Cir. 2001); writ of cert. denied, 122 S. Ct. 1537 (2002). American Electrical Power, Inc. v. United States, 326 F.3d 737 (6th Cir. 2003) affirming 136 F. Supp. 2d 762 (S.D. Ohio 2001) writ of cert. denied, 124 S.Ct.1043 (2004). At present, there is only one case, Dow Chemical Co. v. United States, in which a court ruled in favor of the taxpayer. See, Dow Chemical Co. & Subsidiaries v. U.S., 278 F.Supp.2d 748 (E.D. Mich. 2003), modifying 250 F. Supp. 2d, 844 (E.D. Mich. 2003). Debtors have no certainty that the Dow precedent will prevail for other taxpayers who chose to litigate the COLI controversy. Therefore, consistent with many other taxpayers and in order to

17

avoid the high cost of litigation, Debtors believe that acceptance of the Government settlement guidelines is the most prudent course of action. Indeed, in a letter to the Department of the Treasury dated April 22, 2004, Mark W. Everson, the Commissioner of the IRS, stated that "most taxpayers accepted the settlement and, as a result, just a small number of broad-based post-1985 COLI cases remain unresolved."

40.    If the Debtors' do not accept the COLI Settlement, choose to litigate the controversy, and do not prevail in such litigation, the amount of federal income tax owed by Debtors for the taxable years at issue could exceed the settlement offer by as much as approximately $29 million. In addition, the IRS would likely seek to impose penalties in this matter and the anticipated attorney litigation fees would be substantial.

41.    Terminating the COLI Policies is in the best interest of Debtors estates and creditors because the policies will not produce a positive cash flow on an annual basis in the near future, and there is continuing controversy surrounding the tax treatment of COLI proceeds and the ultimate beneficiaries of such proceeds.

42.    Payment of the COLI Related Taxes, when due, is appropriate because such payment is required under the Fresenius Agreement. The Fresenius Agreement was previously approved by the District Court and will result in the payment of $115 million by Fresenius to the Debtors on the Effective Date of their chapter 11 plan. Therefore, it is appropriate for this Court to authorize the Debtors to pay the COLI Related Taxes when due.

### Notice

43.    Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor-in-possession lenders, (iii) counsel to each official committee appointed by the United States Trustee and (iv) those parties that requested papers under Fed. R. Bankr. P. 2002.

18

**No Prior Request**

44.     No prior motion for the relief requested herein has been made to this or any other Court. The Debtors submit that no further notice or a hearing is necessary for this Court to enter an order granting the relief requested by this Motion.

WHEREFORE, the Debtors respectfully request (i) the Court's authority to (a) execute a Final Closing Agreement containing the COLI Settlement terms described herein, (b) pay the COLI Related Taxes when due in accordance with the terms of the Fresenius Agreement, (c) terminate the COLI policies; and (ii) that the Court grant such other and further relief as the Court deems just and proper.

Dated: September 20, 2004

Respectfully submitted,

KIRKLAND & ELLIS LLP
James H.M. Sprayregen
Janet S. Baer
James W. Kapp III
Samuel L. Blatnick
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES &
WEINTRAUB P.C.

Laura Davis Jones (#2436)
David W. Carickhoff, Jr. (#3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession

19

# Exhibit F

## 2005 Protest

Elyse Filon
Vice President - Finance

W. R. Grace & Co.
5400 Broken Sound Boulevard N.W.
Suite 300
Boca Raton, FL 33487-3508

Tel.:   (561) 362-1302
Fax:   (561) 362-1323
e-mail: elyse.filon@grace.com

**GRACE**

**Certified Mail**
**7002 0460 0000 4094 4871**
**Return Receipt Requested**

February 9, 2005

Internal Revenue Service
Attention: Mr. Fritz Vilma
IRS, Stop 4714, Room 343
7850 SW 6th Court
Plantation, Florida 33434

Re:   **PROTEST**
      Fresenius Medical Care Holdings, Inc. (formerly W. R. Grace & Co.)
      EIN: 13-3461988

Dear Mr. Vilma,

Except with respect to three matters set forth in this letter and subject to the approval of the U.S. Bankruptcy Court, the Fresenius Medical Care Holdings, Inc. Affiliated Group ("Taxpayer") is in agreement with changes proposed by the Internal Revenue Service ("IRS") as set forth in the corrected Revenue Agent's Report (the "CRAR") dated January 10, 2005 on Substitute for Form 4549A with respect to taxable years ending December 31, 1993 through December 31, 1996.

Background

On September 3, 2002 the Taxpayer filed a Protest  (the "2002 Protest") to the various Forms 5701 – Notice of Proposed Adjustments ("NOPAs") identified in

a Revenue Agent's Report ("RAR") dated August 2, 2002 and a corrected RAR dated August 30, 2002 issued to Taxpayer with respect to taxable years ending December 31, 1993 through December 31, 1996.  A copy of the 2002 Protest is attached as Exhibit A.

Fresenius Medical Care Holdings, Inc. (f/k/a as W. R. Grace & Co, and after that Fresenius National Medical Care Holdings, Inc.), a New York corporation ("Fresenius" E.I.N. 13-3461988) is the common parent of Taxpayer for the taxable years ended December 31, 1993 through December 31, 1996.  However, during the periods referred to in this protest, corporate reorganizations occurred that are explained in pages 1-3 of the 2002 Protest resulting in a number of different corporations being named W. R. Grace & Co.  They subsequently changed their names as a result of corporate reorganizations explained in more detail in the 2002 Protest.  These corporations were also the common parent corporations of consolidated groups referred to by the same name.  Sealed Air Corporation (f/k/a W. R. Grace & Co. and before that Grace Holding, Inc.) a Delaware corporation ("Sealed Air" E.I.N. 65-0654331), is the common parent of the Sealed Air Corporation Affiliated Group for the taxable period September 29, 1996 through December 31, 1996.  Please refer to the 2002 Protest for the explanation of the various corporate changes and other issues, some of which arise from the bankruptcy filing of a member of the Taxpayer's affiliated group, W. R. Grace & Co.-Conn. ("Grace-Conn.").

2

Grace-Conn. is severally liable for any assessment of taxes made with respect to both Taxpayer and the Sealed Air Corporation Affiliated Group for the periods referenced above. Both Grace-Conn. and its parent, W. R. Grace & Co. are currently debtors in a bankruptcy action pending in Delaware (Docket No. 01-01140-PJW) and has been informed by its bankruptcy counsel that it will need court approval before it can agree to any proposed settlement.

As discussed more fully below, the Taxpayer disagrees with the following proposed adjustments in the CRAR: (i) the proposed adjustments with respect to certain research credits and research and experimentation expenditures of the Taxpayer; (ii) the proposed complete disallowance of interest deductions related to corporate owned life insurance ("COLI") policies for the taxable years ending December 31, 1993 through December 31, 1996; and (iii) although the Taxpayer is in agreement with the changes proposed by the IRS in the revised NOPA 159 relating to certain net operating loss ("NOL") carrybacks, Taxpayer challenges certain IRS assertions made in the revised NOPA 159.

(i)    Research Credits and Research and Experimentation Expenditures

The first matter with respect to which the Taxpayer is in disagreement concerns research credits and research and experimentation expenditures that were the subject of the 2002 Protest. This letter incorporates the 2002 Protest and constitutes a Protest to the CRAR dated January 10, 2005 issued to Taxpayer with respect to this issue.

3

(ii)   COLI Closing Agreement

The CRAR issued January 10, 2005, proposed complete disallowance of COLI related interest deductions for the taxable years ending December 31, 1993 through December 31, 1996.  On January 20, 2005, Fresenius, Sealed Air Corporation, W. R. Grace & Co. and W. R. Grace & Co.-Conn. entered into a Closing Agreement with the IRS with respect to COLI interest deductions (the "COLI Closing Agreement").  The COLI Closing Agreement is attached as Exhibit B.  In general, the COLI Closing Agreement provides for an 80% disallowance of COLI related interest deductions.  Schedule A to the COLI Closing Agreement specifically sets forth that the amount of allowable interest deductions for each of the taxable years ending December 31, 1993 through December 31, 1996 as follows:

| Taxable Year | Deduction Claimed per IRS NOPA 129 | Deduction Initially Disallowed | Deduction Allowed per this Agreement | Deduction Disallowed per this Agreement |
|---|---|---|---|---|
| 12/31/93 | $30,781,976 | $30,781,976 | $22,451,780[1] | $ 8,330,196 |
| 12/31/94 | $26,954,034 | $26,954,034 | $5,390,807 | $21,563,227 |
| 12/31/95 | $32,836,273 | $32,836,273 | $6,567,255 | $26,269,018 |
| 12/31/96 | $19,291,369 | $19,291,369 | $3,858,274 | $15,433,095 |

Accordingly, the Taxpayer anticipates that the IRS will reissue the CRAR to reflect the implementation of the January 20, 2005 COLI Closing Agreement.

---

[1] The Taxpayer paid the assessments in full for the 1990 and 1992 taxable years and filed for a refund that was denied.  To avoid additional administrative complexity in the implementation of this agreement, the COLI Closing Agreement allocates the aggregate allowed interest deductions for the 1990 through 1992 taxable years to the 1993 taxable year.

4

(iii)  <u>Grace-Conn. Net Operating Loss Carrybacks and Application of the Lonely</u>
       <u>Parent Rule</u>

   The revised NOPA 159 dated January 6, 2005 and the CRAR dated

January 10, 2005 proposes to limit the utilization of certain of Taxpayer's

subsidiaries' NOL carrybacks arising in the short taxable year September 30, 1996

through December 31, 1996 ("Short Period NOLs").  Specifically, in revised NOPA

159, the IRS proposes to disallow the carryback of certain subsidiaries' Short

Period NOLs to taxable years ending December 31, 1994, December 31, 1995

and September 29, 1996.  The revised NOPA 159 does not propose to limit the

NOL carrybacks of Grace-Conn.  Although the Taxpayer will not challenge the

adjustments proposed in the revised NOPA 159, the Taxpayer challenges

assertions made by the IRS in the NOPA relating to the application of the so-

called "Lonely Parent Rule" to the separate return limitation year ("SRLY") rules in

Treasury Regulation §1.1502-21(c).  The issue of whether the Lonely Parent Rule

applies does not arise in this context because the IRS' proposed limitation on loss

utilization is made only with respect to entities that have always been subsidiaries

within the Grace affiliated group.

  Specifically, the Taxpayer does not agree with the IRS' assertion, made in

the Explanation of Items on Form 866-A section 16 ("CRAR Explanation"), that the

Taxpayer conceded that the Lonely Parent Rule did not prevent the application of

the SRLY rules to foreign tax credit ("FTC") carrybacks of Grace-Conn.  At no time

during the July/August 2002 presentations did the Taxpayer agree with this

position. Rather, the Taxpayer demonstrated to the IRS that even if the SRLY rules applied to the carryback of Grace-Conn.'s FTCs, the SRLY limitation would not prevent the Taxpayer from completely utilizing Grace-Conn.'s FTC carrybacks under the facts. For these multiple reasons, the Taxpayer and the IRS agreed that Grace-Conn.'s FTC carrybacks were fully utilized. The CRAR Explanation makes an incorrect assertion concerning Taxpayer's filing of several Forms 1139 Corporate Application for Tentative Refund prepared as recently October 2003. The fact that there was sufficient capacity to absorb a tax attribute carryback on a separate company basis does not concede the issue of whether the Lonely Parent Rule is applicable.

Taxpayer hereby protests the identified adjustments and requests that the research credits and research and experimentation expenditures matter be referred for review by the Appeals Office. Taxpayer also respectfully requests a conference with said Appeals Office. Taxpayer reserves the right to supplement this Protest both before and during such conference. Lastly, Taxpayer anticipates and the IRS has confirmed that it will amend the CRAR to reflect the implementation of the COLI Closing Agreement.