# TAB 17

### 2.4 The Debtors' Asbestos-Related Litigation

The pre-Chapter 11 litigation and Claims against the Debtors alleging asbestos-related injuries and damages ("Asbestos Claims," as defined more fully in the Glossary) are primarily the following: eClaims for personal injury from asbestos exposure; asbestos-related property damage eClaims; and ZAI eClaims.

For many years, the Debtors faced a substantial volume of Asbestos Claims, but were able to resolve such Claims primarily through negotiated settlements. Although the Debtors believed that a high percentage of these Claims were without merit, they agreed to settle most of these Claims rather than incur the significant costs and practical difficulties associated with simultaneously litigating thousands of independent Claims in multiple jurisdictions nationwide.[11] This strategy of negotiated settlements was initially successful, as the amounts and number of Claims were manageable, and the funds required to satisfy such Claims were fairly predictable. However, beginning in the year 2000, the Debtors experienced a precipitous increase in the number of personal injury Claims and the amount of money required to resolve such Claims. This led to the Debtors' bankruptcy filing.

#### 2.4.1 Asbestos Personal Injury Litigation

**Asbestos PI Claims allege adverse health effects from exposure to Grace's asbestos-containing products. On the Petition Date, the Debtors were defendants in lawsuits asserting approximately [118,000] Asbestos PI Claims.[12] In the Debtors' view, only a small portion of the Asbestos PI Claims allege even a *prima facie* case of any functional impairment attributable to exposure to the Debtors' products. The Debtors, therefore, intend to vigorously contest all or most of the Asbestos PI Claims through a number of defenses, as outlined in more detail in their Case Management Motion (which was filed simultaneously with the Plan and Disclosure Statement). Although the Asbestos PI Committee has asserted that the value of the current asbestos personal injury claims, alone, exceed the Debtors' consolidated enterprise value, the Debtors believe that the Asbestos Trust Assets, when administered in a manner consistent with the TDPs, will be sufficient to satisfy all legitimate Asbestos PI Claims.**

---

[11] The Asbestos PI Committee and the Asbestos PD Committee argue that these historical settlements should be used in the estimation process proposed by the Debtors. The Debtors believe that such historical data, including prior settlements, do not provide an appropriate basis to estimate the cost of resolution of such liabilities in the Chapter 11 context. The Debtors further believe that, according to the Bankruptcy Code and the Federal Rules of Evidence, the settlements are not even permitted as evidence of liability in the estimation process.

[12] Prior to the Petition Date, 16,354 asbestos bodily injury lawsuits involving approximately 35,720 claims were dismissed without payment of any damages or settlement amounts (primarily on the basis that Grace products were not involved) and approximately 55,489 lawsuits involving approximately 163,698 claims were disposed of (through settlement and judgments) for a total of $645.6 million.

### 2.4.2   Asbestos Property Damage Litigation

Asbestos PD Claims generally purport to seek payment for the cost of removing or containing asbestos in buildings. On the Petition Date,[13] there were eight asbestos property damage lawsuits (not including the ZAI lawsuits described immediately below) pending against the Debtors.[14] However, approximately 4,300 Asbestos PD Claims were submitted prior to the March 2003 Bar Date. The Debtors have examined these Claims, and intend to object to all or almost all of them on a number of different grounds. Such grounds may include: insufficient or lack of supporting documentation; lack of product identification; statute of limitations, statute of repose, and laches; lack of negligence; inapplicability of strict liability; lack of causation; and improper calculation of damages. Under the Plan, those Asbestos PD Claims not disallowed through the objection process will be channeled to the Asbestos Trust, the assets of which the Debtors believe will be sufficient to satisfy all legitimate Asbestos PD Claims.

---

[13]  Prior to the Petition Date, out of 380 asbestos property damage cases filed, 141 were dismissed without payment of any damages or settlement amounts; judgments were entered in favor of the Debtors in nine cases (excluding cases settled following appeals of judgments in favor of Grace); judgments were entered in favor of the plaintiffs in eight cases (one of which is on appeal) for a total of $86.1 million; and 207 property damage cases were settled for a total of $696.8 million.

[14]  Plaintiffs in these eight lawsuits are seeking damages allegedly arising from the presence of Grace's asbestos-containing acoustical plaster as well as Monokote-3 fireproofing in their buildings. Debtors are aware of approximately 300 buildings involved. Two cases are currently on appeal (Solow -- judgment against Grace of approximately $11.6 million -- and Ohio Hospital -- summary judgment granted for Grace); one case has been stayed since 1990 (Jefferson Parish) and Grace was dismissed at the trial level in another case (District of Columbia -- not a final order). Four cases are pending: Anderson Memorial (motion to certify the class granted as to the other defendants but stayed with respect to Grace as motion was pending as of the Petition Date), Orange County (putative class action served), Pacific Freeholds (case pending against but stayed as to Grace) and Prudential (case pending against but stayed as to Grace). Proofs of Claim were filed with respect to buildings at issue in each of the above actions except District of Columbia.

### 4.7.6    Occurrence of the Confirmation Date

Section 7.6 of the Plan sets forth conditions precedent to confirmation of the Plan. The Court must make all of the findings of fact and/or conclusions of law listed in Section 7.6.1 before confirmation of the Plan. Among other things, these findings of fact and/or conclusions of law relate to: (1) the Court having found that the aggregate of the Asbestos PI-SE Class Fund, the Asbestos PD Class Fund, and the Asbestos Trust Expenses Fund is not greater than one billion, four hundred eighty three million dollars ($1,483,000,000), (2) the Court having found the Asbestos PI-AO Class Fund is not greater than one hundred thirty million dollars ($130,000,000), (3) compliance with all applicable subsections of Bankruptcy Code § 524(g), (4) effectiveness of the Sealed Air Settlement Agreement and the Fresenius Settlement Agreement, (5) <u>a finding that the Reorganized Debtors have the ability to pay and satisfy in the ordinary course of business all of their respective obligations and liabilities as required by the Plan, the Sealed Air Settlement Agreement and the Fresenius Settlement Agreement, (6)</u> the unimpaired status of the classes of Asbestos Claims, (6<u>7</u>) the effectiveness of the various injunctions provided for in the Plan, (7<u>8</u>) insurance matters, and (8<u>9</u>) the lack of preclusive effect of certain asbestos-related litigation.

Section 7.6.2 of the Plan requires certain orders - including the Confirmation Order, the CMO and an order approving the Sealed Air Settlement Agreement - all in form and substance acceptable to the Debtors be entered prior to or in conjunction with Plan confirmation. <u>The Confirmation Order and the Sealed Air Settlement Agreement shall also be in a form and substance acceptable to the other Plan Proponents.</u> In addition, the Court shall have entered the Estimation Order in form and substance acceptable to the ~~Debtors~~<u>Plan Proponents</u>, including the following findings:

- the Asbestos PI-SE Class Fund shall constitute the maximum amount that shall be required to be paid in order to pay in full all Allowed Asbestos PI-SE Claims;

- the Asbestos PD Class Fund shall constitute the maximum amount that shall be required to be paid in order to pay in full all Allowed Asbestos PD Claims; and

- the Asbestos Trust Expenses Fund shall constitute the maximum amount that shall be required to be paid in order to pay in full all expenses of the Asbestos Trust.

<u>Assuming that other conditions precedent under the Plan are fulfilled, the Debtors would be willing to have the Plan confirmed if the Court finds that the aggregate of the Asbestos PI-SE Class Fund, the Asbestos PD Class Fund, and the Asbestos Trust Expenses Fund is not greater than $1,483,000,000, and that the Asbestos PI-AO Class Fund is not greater than $130,000,000. However, such amounts do not represent the Debtors' estimate of their asbestos-related liabilities. In fact, through the use of the estimation process provided for under the Estimation Motion, the Debtors believe their actual asbestos-related liabilities may be significantly lower.</u>