# TAB 18

### 1.2.6 How Will the Plan be Funded?

The Debtors have filed the Estimation Motion which seeks an order, among other things, estimating the total amount that needs to be contributed to the Asbestos Trust to fully satisfy Classes 6, 7, and 8 as well as the expenses of the Asbestos Trust. <u>Through the use of the estimation process, which the Debtors believe is specifically provided for in the Bankruptcy Code, the Debtors seek a determination that the funds they set aside in the Plan for the payment of such Claims will be adequate for that purpose.</u> In the case of Classes 6 and 8 and the expenses of the Asbestos Trust, such estimated amounts will constitute the maximum amount that the Reorganized Debtors will be required to pay (in addition to the Sealed Air Payment) in order to fully satisfy all Allowed Asbestos PI-SE Claims, Allowed Asbestos PD Claims and Asbestos Trust Expenses, respectively.

The Debtors intend to use these estimates in support of the feasibility of the Plan and in support of the other factual findings that must be made to confirm the Plan. The only alternative would be to individually litigate hundreds of thousands of Claims prior to confirmation - an expensive and unwieldy proposition that could delay distributions for years.

Funding of the Asbestos Trust in an amount equal to the estimates obtained under the Estimation Motion will come from several sources, including (1) the Debtors' Payment and (2) the Sealed Air Payment. The Sealed Air Payment -- comprised of a combination of ~~C~~cash in the amount of $512.5 million plus interest and 9 million shares of common stock of Sealed Air -- is an integral part of the Plan. ~~Such payment, however, is dependent on resolution of the Debtors' objections to the Sealed Air Settlement Agreement as further elaborated in Section 2.5.2 herein.~~

The Reorganized Debtors will fund distributions to all other Classes directly, with funds from a number of sources including (1) the Exit Financing, (2) the Fresenius Settlement Agreement, (3) insurance proceeds, (4) cash flow from future operations, and (5) Parent Common Stock.

Specifically, all Asbestos PI-SE Claims whose Holders elect the Litigation Option <u>(or the Canadian Litigation Option, as applicable)</u> shall be (1) litigated by, and at the expense of, the Asbestos Trust in the name of the Asbestos Trust and (2) paid by the Asbestos Trust out of the Asbestos PI-SE Class Fund, which shall be funded solely by the Sealed Air Payment and the Parent Common Stock component of the Debtors' Payment, if necessary. In contrast, all Asbestos PI-AO Claims whose Holders elect the Litigation Option <u>(or the Canadian Litigation Option, as applicable)</u> shall be litigated by the Reorganized Debtors in the name of the Asbestos Trust, initially at the expense of the Asbestos Trust out of the Asbestos PI-AO Class Fund. All Allowed PI-AO Claims shall be paid initially by the Asbestos Trust out of the Asbestos PI-AO Class Fund, which shall be funded by the Sealed Air Payment (to the extent any funds remain after first funding the Asbestos PI-SE Class Fund, the Asbestos PD Class Fund and the Asbestos Trust Expenses Fund) and the Warrants. After the exhaustion of the Asbestos PI-AO Class Fund in its entirety, all Allowed PI-AO Claims shall be paid in ~~C~~cash by the Asbestos Trust from funds to be paid

**to the Asbestos Trust by the Reorganized Debtors, such funds being in addition to the Debtors' Payment.**

### 3.2.15 Estimation Motion

Under the Plan, Grace is requesting that the Bankruptcy Court determine the aggregate dollar amount, on a net present value basis, that must be funded (the "Funding Amount") into the Asbestos Trust to pay all Allowed pending and future Asbestos PI Claims, Asbestos PD Claims and Asbestos Trust Expenses on the later of the Effective Date or when Allowed. To that effect, on November 13, 2004, the Debtors filed the Estimation Motion.

The Estimation Motion requests that the Bankruptcy Court implement a process for determining the Funding Amount, which will be primarily a function of the number of Allowed Asbestos Claims and the amount payable per Asbestos Claim. Using this process, which involves the use of detailed claim forms, questionnaires and expert testimony, the Debtors will seek to demonstrate that the vast majority of Asbestos Claims should not be Allowed because they fail to establish any material property damage, health impairment or significant occupational exposure to asbestos from Grace's operations or products. The Debtors also will seek Bankruptcy Court approval of the Debtors' proposed payouts for Allowed Asbestos PI Claims, which will vary depending upon the type of claim and/or a claimant's medical condition. Conversely, the Asbestos PI Committee, the Asbestos PD Committee and the FCR have objected to the Debtors' proposed estimation process and continue to assert that the Debtors' asbestos-related liabilities are substantially higher than $1,613 million, and are in excess of Grace's business value. Grace is willing to proceed with confirmation of the Plan with a Funding Amount of up to $1,613 million (assuming that other conditions precedent to confirmation of the Plan are satisfied, including the availability of funds from Sealed Air under the Sealed Air Settlement Agreement).