# TAB 23

Case 01-01139-AMC    Doc 7845-24    Filed 02/18/05    Page 1 of 4

### 2.5.2  Fraudulent Transfer Litigation

In September 2000, Grace was named in a class action suit that was filed in California state court. The suit alleged that Grace's (1) 1996 reorganization transaction with Fresenius and (2) 1998 reorganization transaction with Sealed Air involved fraudulent transfers. Two similar class actions were also filed prior to the Petition Date.

<u>On June 14, 2001, the PD Committee and the PI Committee filed their Joint Motion for Authority to Prosecute Fraudulent Transfer Claims (Docket No. 527), seeking authority to prosecute certain fraudulent transfer and successor liability claims against Sealed Air and Fresenius.[15]  Thereafter, the District Court directed the PD Committee and the PI Committee to investigate and ultimately prosecute the claims.  On March 18, 2002 the PD Committee and the PI Committee filed the Fraudulent Conveyance Adversary Proceedings on behalf of the Debtors' estate.</u>

In November 2002, Fresenius and Sealed Air announced that they had reached agreements in principle to settle ~~asbestos and fraudulent conveyance claims related to the respective transactions~~<u>the Fraudulent Conveyance Adversary Proceedings</u>.

In July 2003, the Fresenius Settlement Agreement was approved by the ~~Bankruptcy~~<u>District</u> Court. Subject to certain conditions, Fresenius will pay $115.0 million to the Debtors' estates as directed by the ~~Bankruptcy~~<u>District</u> Court upon confirmation of the Plan.

Under the terms of the ~~proposed~~ Sealed Air Settlement Agreement<u>, and</u> subject to certain conditions, ~~Sealed Air will make the Sealed Air Payment as directed by the Bankruptcy Court upon confirmation of the Plan. The Debtors find certain provisions of the Sealed Air Settlement Agreement objectionable, including the issues outlined below:~~

~~The Sealed Air Settlement Agreement, as proposed, would restrict the ability of the Debtors' management to fulfill their legal obligations to file accurate and complete tax returns and financial statements as required by the IRS and the SEC, respectively, thereby exposing the Debtors to potentially significant penalties and the Debtors' management to potential personal and criminal liability;~~<u>Cryovac, Inc. will transfer $512.5 million in cash (plus interest thereon from December 21, 2002 until the Effective Date compounded annually) and 9 million shares of Sealed Air Common Stock to the Asbestos Trust. This payment constitutes the initial and primary funding under the Plan for the Asbestos Trust. This payment is critically important in order to achieve confirmation of the Plan.</u>

<u>On November 26, 2003, Sealed Air, the PI Committee and the PD Committee filed a motion seeking approval of the Sealed Air Settlement Agreement (the "Settlement Motion"). Due to a stay imposed in connection with the proceedings to have Judge Wolin removed from the Debtors' cases, among other cases, no objection deadline or hearing date</u>

---

[15] <u>All docket numbers refer to Case No. 01-1139 unless otherwise stated.</u>

<u>has ever been set on the Settlement Motion and it remains pending with the District Court. On January 13, 2005, District Judge Buckwalter entered an order referring the Settlement Motion to the Bankruptcy Court (Docket No. 7547).</u>

<u>The Debtors are not parties to the Sealed Air Settlement Agreement. The Debtors, Sealed Air, the PI Committee and the PD Committee negotiated for some six months to reach an agreement on an acceptable settlement structure. The great majority of the significant issues were resolved. However, there were certain issues, set forth below, that resulted in the Debtors not becoming a party the Settlement Agreement.</u>

<u>The Plan and Disclosure Statement are intended to be and the Debtors believe are in fact, consistent with the Sealed Air Settlement Agreement. In an effort to accelerate the process of obtaining confirmation of the Plan, the Debtors do not plan to object to, and are prepared to go forward with, the Sealed Air Settlement Agreement. The Debtors have clarified this position in this Disclosure Statement and the Plan. The Unsecured Creditors' Committee reserves its right to file an objection or other appropriate pleading with respect to the Sealed Air Settlement Agreement.</u>

<u>However, the Sealed Air Settlement Agreement raises the following issues that the Debtors believe they are required to disclose as part of the Plan confirmation process:</u>

- <u>The Sealed Air Settlement Agreement would impose on the Debtors a requirement to take positions on their financial statements and tax returns that would not be inconsistent with Sealed Air achieving favorable tax treatment for the Sealed Air Payment. While the Debtors generally believe that they can comply with such requirements, the Debtors and their executives are concerned that a conflict could arise between the Debtors' obligations under the Sealed Air Settlement Agreement and their fiduciary duties and legal obligations to governmental authorities, including those imposed by the Sarbanes-Oxley Act of 2002.</u>

- <u>The IRS may assert that the Sealed Air Payment gives rise to taxable income to the Debtors without any offsetting deduction. Grace firmly believes that this characterization would be incorrect under current law. Nonetheless, if the IRS were to successfully raise this issue, the dollar cost would be substantial and would materially adversely affect the Reorganized Debtors. Under the terms of the Sealed Air Settlement Agreement, Grace's rights to defend itself in a tax audit from this IRS assertion may be constrained.</u>

- The Sealed Air Settlement Agreement, ~~as proposed, would provide for the transfer of $512.5 million plus accrued interest in Cash and 9 million shares of Sealed Air Common Stock for the benefit of Holders of Asbestos Claims, while potentially exposing the Debtors and non-asbestos Claimants to both (1) liability for associated taxes, interest and penalties thereon and (2) the obligation to pay Sealed Air approximately $146 million for tax benefits prior to their realization; and~~ <u>requires the Debtors, in a number of circumstances, to use their "best efforts" to take certain actions or refrain</u>

<u>from taking certain actions in support of Sealed Air's tax position. The Debtors are concerned that "best efforts" is not adequately defined and could lead to disputes between the parties.</u>

- The ~~Sealed Air Settlement Agreement, as proposed, fails to define the meaning of "best efforts" with sufficient clarity to enable the Debtors to effectively manage federal, state and local income tax audits.~~<u>Debtors are concerned that, in a case where Grace derives tax benefits from the Sealed Air Payment, which Grace would be required to share with Sealed Air under the Sealed Air Settlement Agreement, Grace may be required to pay Sealed Air for tax benefits prior to their actual realization. Sealed Air has indicated that Grace does not have to make payment for a tax benefit unless the Debtors have received an actual reduction in the amount of taxes currently payable by them as a result of the tax benefit. If this is Sealed Air's position, Grace is in agreement. However, this result is not stated clearly in the Sealed Air Settlement Agreement.</u>

~~The Plan assumes that these objections will be addressed by the Bankruptcy Court in an acceptable manner and that the Sealed Air Settlement Agreement, as modified to address the Debtors' objections, will be approved. See Plan §7.7(e). The Plan provides that Sealed Air will pay the settlement proceeds to the Asbestos Trust to fund payments to Asbestos PI-SE Claimants and Asbestos PD Claimants.~~