## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **W.R. Grace & Co., <u>et</u> <u>al.</u>** | Case No. 01-01139 (JKF) |
| Debtors. | Jointly Administered |

**FIFTEENTH QUARTERLY FEE APPLICATION OF STROOCK & STROOCK
& LAVAN LLP FOR COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD
<u>FROM OCTOBER 1, 2004 THROUGH DECEMBER 31, 2004</u>**

| | |
|---|---|
| Name of Applicant | **Stroock & Stroock & Lavan LLP** |
| Authorized to Provide Professional Services to: | **Official Committee of Unsecured Creditors** |
| Date of Retention: | **April 12, 2001** |
| Period for which compensation and reimbursement is sought | **October 1, 2004 – December 31, 2004** |
| Amount of Compensation sought as actual, reasonable and necessary: | **$653,133.20** |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | **$25,830.19** |
| Fees and Expenses of the Asbestos Issues Expert | **$140,422.11** |

This is an: ☒ interim ☐ final application

This is the fifteenth quarterly application filed.

**Attachment A**

**Monthly Interim Fee Applications**

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| May 30, 2001 D.I.339 | 4/12/01-4/30/01 | $138,926.00 | $1,975.13 | $111,140.80 | $1,975.13 |
| July 2, 2001 D.I.613 | 5/1/01 – 5/31/01 | $139,928.75 | $6,884.73 | $111,943.00 | $6,884.73 |
| July 30, 2001 D.I.772 | 6/1/01 – 6/30/01 | $91,019.00 | $10,458.14 | $72,815.20 | $10,458.14 |
| September 5, 2001 D.I.889 | 7/1/01-7/31/01 | $92,308.00 | $5,144.37 | $73,846.40 | $5,144.37 |
| October 2, 2001 D.I.983 | 8/1/01 8/31/01 | $53,873.50 | $3,069.88 | $43,098.80 | $3,069.88 |
| October 31, 2001 D.I.1058 | 9/1/01 – 9/30/01 | $58,742.00 | $6,801.32 | $46,993.60 | $6,801.32 |
| November 26, 2001 D.I.1239 | 10/1/01 – 10/31/01 | $101,069.00 | $3,562.09 | $80,855.20 | $3,562.09 |
| January 8, 2002 D.I.1470 | 11/1/01 – 11/30/01 | $136,368.50 | $8,847.34 | $109,094.80 | $8,847.34 |
| February 1, 2002 D.I.1608 | 12/01/01 – 12/31/01 | $92,064.50 | $9,471.47 | $73,651.60 | $9,471.47 |
| March 14, 2002 D.I.1812 | 01/01/02 – 01/31/02 | $100,231.50 | $14,675.58 | $80,185.20 | $14,675.58 |
| April 22, 2002 D.I.1951 | 02/01/02 – 02/28/02 | $88,974.50 | $16,863.97 | $71,179.60 | $16,863.97 |
| May 8, 2002 D.I.2029 | 03/01/02 – 03/31/02 | $77,964.25 | $1,190.44 | $62,371.40 | $1,190.44 |
| June 3, 2002 D.I.2156 | 04/01/02-04/30/02 | $97,251.50 | $1,816.40 (Stroock) $9,772.37 (Chambers) | $77,801.20 | $11,588.86 |

|  |  | Payment Requested |  | Payment Approved |  |
|---|---|---|---|---|---|
| July 2, 2002<br>D.I.2324 | 05/01/02 –<br>05/31/02 | $74,910.75 | $2,9154.43 (Stroock)<br>$43,190.69 (Chambers) | $59,928.60 | $46,105.12 |
| August 5, 2002<br>D.I.2495 | 06/01/02 –<br>06/30/02 | $73,096.75 | $2,054.05 (Stroock)<br>$114,666.72 (Chambers) | $58,477.4011 | $116,720.77 |
| September 20, 2002<br>D.I.2720 | 07/01/02 –<br>07/31/02 | $90,903.27 | $1,250.79 (Stroock)<br>$11,996.25 (Chambers) | $72,722.61 | $13,274.04 |
| October 29, 2002<br>D.I.2898 | 08/01/02 –<br>08/31/02 | $93,151.25 | $11,539.51 (Stroock)<br>$5,046.70 (Chambers) | $74,521.00 | $16,586.21 |
| November 14, 2002<br>D.I.2981 | 09/01/02 -<br>09/30/02 | $96,613.25 | $15,567.77 (Stroock)<br>$771.50 (Chambers) | $77,290.60 | $16,339.27 |
| December 10, 2002<br>D.I.3129 | 10/1/02 –<br>10/31/02 | $68,404.00 | $2,956.54 (Stroock)<br>$1,780.75 (Chambers) | $54,723.20 | $4,737.29 |
| January 28, 2003<br>D.I.3286 | 11/1/02 –<br>11/30/02 | $75,345.50 | $8,712.16 (Stroock) | $60,276.40 | $8,712.16 |
| February 7, 2003<br>D.I.3349 | 12/1/02 –<br>12/31/02 | $27,683.50 | $13,332.14 (Stroock) | $22,146.80 | $13,332.14 |
| March 26, 2003<br>D.I.3552 | 1/1/03 –<br>1/31/03 | $88,139.00 | $1,210.11 (Stroock) | $70,511.20 | $1,210.11 |
| April 7, 2003<br>D.I.3626 | 2/1/03 –<br>2/28/03 | $76,313.00 | $2,022.78 (Stroock)<br>$1,077.80 (Chambers) | $61,050.40 | $3,100.58 |
| April 29, 2003<br>D.I.3718 | 3/1/03 –<br>3/31/03 | $60,163.50 | $6,191.15 (Stroock) | $48,130.80 | $6,191.15 |
| June 2, 2003<br>D.I. 3850 | 4/1/03 –<br>4/30/03 | $60,269.00 | $814.02 (Stroock)<br>$2,043.00 (Chambers) | $48,215.20 | $2,857.02 |
| July 1, 2003<br>D.I. 3983 | 5/1/03 –<br>5/31/03 | $111,990.50 | $691.84 (Stroock)<br>$3,830.50 (Chambers) | $89,592.40 | $10,522.34 |
| August 5, 2003<br>D.I. 4152 | 6/1/03 –<br>6/30/03 | $43,824.00 | $1,220.42 (Stroock)<br>$61,755.00 (Chambers) | $35,059.20 | $62,975.42 |
| September 4, 2003<br>D.I. 4381 | 7/1/03 –<br>7/31/03 | $79,090.50 | $2,301.33 (Stroock)<br>$14,274.25 (Chambers) | $63,272.40 | $16,575.58 |

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 30, 2003 D.I. 4512 | 8/1/03 – 8/31/03 | $69,927.00 | $1,164.19 (Stroock) $12,488.94 (Chambers) | $55,941.60 | $13,653.13 |
| October 29, 2003 D.I. 4625 | 9/1/03 – 9/30/03 | $69,409.50 | $1,076.94 (Stroock) $10,102.00 (Chambers) | $55,527.60 | $11,178.94 |
| December 19, 2003 D.I. 4843 | 10/1/03 – 10/31/03 | $96,980.50 | $3,800.45 (Stroock) $42,881.50 (Chambers) | $77,584.40 | $46,681.95 |
| January 23, 2004 D.I. 4976 | 11/1/03 – 11/30/03 | $66,428.50 | $1,225.38 (Stroock) $30,463.00 (Navigant f/k/a Chambers) | $53,142.80 | $31,688.38 |
| February 4, 2004 D.I. 5056 | 12/1/03 – 12/31/03 | $52,321.50 | $924.99 (Stroock) $27,005.00 (Navigant f/k/a Chambers) | $41,857.20 | $27,929.99 |
| March 17, 2004 D.I. 5309 | 1/1/04 – 1/31/04 | $65,980.50 | $1,917.93 (Stroock) $47,654.57 (Navigant f/k/a Chambers) | $52,784.40 | $49,572.50 |
| April 6, 2004 D.I. 5406 | 2/1/04 – 2/29/04 | $90,421.50 | $3,636.48 (Stroock) $35,492.50 (Navigant f/k/a Chambers) | $72,337.20 | $39,128.98 |
| April 28, 2004 D.I. | 3/1/04 – 3/31/04 | $103,524.00 | $5,567.34 (Stroock) | $82,819.20 | $5,567.34 |
| June 14, 2004 D.I. 5803 | 4/1/04 – 4/30/04 | $99,136.00 | $3,518.96 (Stroock) $1,515.00 (Navigant February) $49,667.00 (Navigant March) $80,307.11 (Navigant April) | $79,308.80 | $135,008.07 |
| July 2, 2004 D.I. 5917 | 5/1/04 – 5/31/04 | $134,324.50 | $2,409.97 (Stroock) $78,360.05 (Navigant May) | $107,459.60 | $80,770.02 |
| August 2, 2004 D.I. 6105 | 6/1/04 – 6/31/04 | $120,501.00 | $1,831.49 (Stroock) $62,625.00 (Navigant June) | $96,400.80 | $64,456.49 |

4

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 9, 2004 D.I. 6341 | 7/1/04 – 7/31/04 | $72,394.00 | $3,461.84 (Stroock) $40,427.50 (Navigant July) | $57,915.20 | $43,889.34 |
| September 23, 2004 D.I. 6444 | 8/1/04 – 8/31/04 | $70,457.00 | $1,764.40 (Stroock) | $56,365.60 | $1,764.40 |
| October 14, 2004 D.I 6625 | 9/1/04 – 9/30/04 | $83,903.50 | $1,535.61 (Stroock) $27,142.00 (Navigant August) | $67,122.80 | $28,677.61 |
| December 3, 2004 D.I. 7086 | 10/1/04 – 10/31/04 | $200,155.50 | $1,368.18 (Stroock) $ 24,659.00 (Navigant September) | $160,124.40 | $26,027.18 |
| January 7, 2005 D.I. 7481 | 11/1/04 – 11/30/04 | $218,608.50 | $14,019.09 (Stroock) $25,102.80 (Navigant October) $27,972.34 (Navigant November) | $174,886.80 | $67,094.23 |
| February 2, 2005 D.I. 7667 | 12/1/04 – 12/31/04 | $235,503.70 | $10,442.92 (Stroock) $62,687.97 (Navigant December) | | |

SSL-DOCS1 1539743v2

**Quarterly Fee Applications**

| Date Filed | Period Covered | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| July 30, 2001 D.I.770 (First) | 4/12/01- 6/30/01 | $369,873.75 | $19,318.00 | $369,873.75 | $19,318.75 |
| November 1, 2002 D.I.1068 (Second) | 7/1/01 – 9/31/01 | $204,923.50 | $15,015.57 | $204,923.50 | $15,015.57 |
| February 8, 2002 D.I.1658 (Third) | 10/1/01 – 12/31/01 | $329,842.00 | $21,880.90 $9,918.43[*] | $329,842.00 | $21,880.90 (Stroock) $9,918.43 (Chambers) |
| May 16, 2002 D.I.2064 (Fourth) | 01/01/02 – 03/31/02 | $267,170.20 | $6,149.76 $36,352.60[*] | $266,865.70 | $6,144.85 (Stroock) $22,002.76 (Chambers) |
| August 16, 2002 D.I.2557 (Fifth) | 04/01/02 – 06/30/02 | $245,259.00 | $6,784.97 $167,629.78[*] | $245,259.00 | $6,784.97 (Stroock) $167,629.78 (Chambers |
| November 18, 2002 D.I.3045 (Sixth) | 07/01/02 – 09/30/02 | $280,471.77 | $28,358.07 $17,814.45[*] | $224,534.21[1] | $28,358.07 (Stroock)[1] $17,814,45 (Chambers)[1] |
| March 25, 2003 D.I.3549 (Seventh) | 10/01/02 – 12/31/03 | $171,108.00 | $25,000.84 $1,780.75[*] | $136,886.40[2] | $25,000.84 (Stroock)[2] $1,780.75 (Chambers)[2] |
| May 20, 2003 D.I. 3815 (Eighth) | 1/1/03 – 3/31/03 | $224,358.50 | $9,424.04 $1,077.80[*] | $224,615.50[3] | $9,424.04 (Stroock)[3] $1,077.80 (Chambers)[3] |

---

[*]     These amounts relate to the Committee's Asbestos Issues Expert.

[1]     Court Order dated March 14, 2003 approved fees in the amount of $276,535.77 and expenses in the amount of $45,477.52.

[2]     Court Order dated July 28, 2003 approved fees in the amount of $171,108.00 and expenses in the amount of $26,412.62.

[3]     Court order dated September 22, 2003 approved fees in the amount of $224,033.50 and expenses in the amount of $10,410.22.

SSL-DOCS1 1539743v2

| | | | | | |
|---|---|---|---|---|---|
| August 29, 2003 D.I. 4357 (Ninth) | 4/1/03 – 6/30/03 | $215,903.50 | $2,726.28 $67,628.50* | $215,903.50[4] | $2,726.28 (Stroock)[4] $67,628.50 (Chambers)[4] |
| December 5, 2003 D.I. 4778 (Tenth) | 7/1/03 – 9/30/03 | $218,222.00 | $4,339.46 $36,865.19* | $218,222.00[5] | $4,339.46 (Stroock)[5] $36,865.19 (Chambers)[5] |
| March 2, 2004 D.I. 5212 (Eleventh) | 10/1/03 – 12/31/03 | $215,718.50 | $5,950.82 $100,349.50* | $215,718.50[6] | $5,922.67 (Stroock)[6] $100,349.50 (Chambers)[6] |
| May 18, 2004 D.I. 5597 (Twelfth) | 1/1/04 – 3/31/04 | $254,857.00 | $9,965.36 $83,147.07* | $254,857.00[7] | $9,965.36 (Stroock)[7] $83,147.07 (Chambers)[7] |
| August 26, 2004 D.I. 6269 (Thirteenth) | 4/1/04 – 6/30/04 | $353,629.50 | $7,760.42 $272,474.16* | $353,629.50[8] | $7,760.42 (Stroock)[8] $272,474.16 (Chambers)[8] |
| November 10, 2004 D.I. 6871 (Fourteenth) | 7/1/04 – 9/30/04 | $226,702.50 | $6,705.08 $67,569.50* | | |

---

[4]     Amended court order dated December 23, 2003 approved fees in the amount of $215,903.50 and expenses in the amount of $70,354.78.

[5]     Court order dated April 26, 2004 approved fees in the amount of $218,222.00 and expenses in the amount of $41,204.65.

[6]     Court order dated June 16, 2004 approved fees in the amount of $215,718.50 and expenses in the amount of $106,272.17.

[7]     Court oder dated September 27, 2004 approved fees in the amount of $254,857.00 and expenses in the amount of $93,011.96.

[8]     Court order dated January 25, 2005 approved fees in the amount of $353,629.50 and expenses in the amount of $280,234.58.

7

**WR GRACE & CO**
**ATTACHMENT B**
**OCTOBER 1, 2004 - DECEMBER 31, 2004**

| | Hours | Rate | Amount | No. of Years In Position |
|---|---|---|---|---|
| **Partners** | | | | |
| Cohen, Joel | 5.3 | $625 | 3,312.50 | 20 |
| Greenberg, Mayer | 20.6 | $ 575 | 11,845.00 | 7 |
| Kruger, Lewis | 92.5 | 750 | 69,375.00 | 35 |
| Pasquale, Kenneth | 115.9 | 575 | 66,642.50 | 6 |
| Speiser, Mark | 151.4 | 695 | 105,223.00 | 18 |
| Wintner, Mark | 1.0 | 660 | 660.00 | 24 |
| | | | | |
| **Associates** | | | | |
| Berg, Madelaine | 4.1 | 525 | 2,152.50 | 25 |
| Eichler, Mark | 20.6 | 480 | 9,888.00 | 7 |
| Jazayeri, Peter F. | 3.7 | 315 | 1,165.50 | 5 |
| Keller, Robin | 0.2 | 695 | 139.00 | 17 |
| Keppler, Abbey | 1.0 | 525 | 525.00 | 18 |
| Krieger, Arlene | 493.2 | 525 | 258,930.00 | 21 |
| McEachern Mary E | 122.2 | 395 | 48,269.00 | 6 |
| Parra, Rebecca E. | 60.5 | 260 | 15,730.00 | 2 |
| Strauss, Joseph E. | 47.4 | 445 | 21,093.00 | 8 |
| Thomison, Jessamy K. | 99.6 | 260 | 25,896.00 | 2 |
| Wildes, Denise | 0.6 | 525 | 315.00 | 14 |
| | | | | |
| **Paraprofessionals** | | | | |
| Caskadon, Alexandra | 60.7 | 195 | 11,836.50 | 3 |
| Defreitas, Vaughn | 30.1 | 130 | 3,913.00 | 17 |
| Mohamed, David | 1.8 | 130 | 234.00 | 16 |
| | | | | |
| **TOTAL** | **1,332.4** | | **$ 657,144.50** | |
| **LESS 50% TRAVEL** | **(7.1)** | | **(4,011.30)** | |
| **TOTAL** | **1,325.3** | | **$ 653,133.20** | |

**WR GRACE & CO**
**COMPENSATION BY PROJECT CATEGORY**
**OCTOBER 1, 2004 - DECEMBER 31, 2004**

| MATTER CODE | PROJECT CATEGORY | HOURS | TOTAL FEES |
|---|---|---|---|
| 0003 | Claim Analysis Objection, Resolution & Estimation (Asbestos) | 73.7 | $ 36,440.50 |
| 0013 | Business Operations | 1.7 | 907.50 |
| 0014 | Case Administration | 60.8 | 19,220.50 |
| 0015 | Claims Analysis/Objections/Administration (Non-Asbestos) | 8.4 | 2,820.00 |
| 0017 | Committee, Creditors', Noteholders', or Equity Holders' | 229.3 | 104,505.00 |
| 0018 | Fee Application, Applicant | 64.6 | 20,253.00 |
| 0019 | Creditor Inquiries | 13.4 | 7,870.00 |
| 0020 | Fee Application, Others | 8.7 | 1,861.50 |
| 0021 | Employee Benefits, Pension | 2.0 | 1,185.00 |
| 0022 | Environmental Matters/Regulations/Litigation | 7.4 | 3,885.00 |
| 0031 | Investigations | 44.0 | 18,202.00 |
| 0034 | Litigation and Litigation Consulting | 10.7 | 3,332.50 |
| 0035 | Travel - Non Working | 14.1 | 8,022.50 |
| 0036 | Plan and Disclosure Statement | 703.6 | 380,271.50 |
| 0037 | Hearings | 24.9 | 15,813.50 |
| 0040 | Employee Applications - Others | 4.9 | 2,587.50 |
| 0041 | Relief from Stay Proceedings | 11.1 | 4,066.50 |
| 0047 | Tax Issues | 49.1 | 25,900.50 |
| | | | |
| | **TOTAL** | **1,332.4** | **$ 657,144.50** |
| | **LESS 50% TRAVEL** | **(7.1)** | **(4,011.30)** |
| | **TOTAL** | **1,325.3** | **$ 653,133.20** |

**WR GRACE & CO**
**DISBURSEMENT SUMMARY**
**OCTOBER 1, 2004 - DECEMBER 31, 2004**

| | |
|---|---:|
| Outside Messenger Service | $ 386.34 |
| Meals | 386.13 |
| Local Transportation | 1,400.35 |
| Long Distance Telephone | 5,159.12 |
| Duplicating Costs-in House | 857.90 |
| Duplicating Costs-Outside | 15.60 |
| O/S Information Services | 45.62 |
| Miscellaneous | 20.00 |
| In House Messenger Service | 272.66 |
| Lexis/Nexis | 591.18 |
| Facsimile Charges | 20.00 |
| Travel Expenses - Transportation | 1,726.78 |
| Travel Expenses - Lodging | 231.14 |
| Travel Expenses - Meals | 11.83 |
| Word Processing - Logit | 330.00 |
| Westlaw | 14,375.54 |
| | |
| **TOTAL** | **$ 25,830.19** |

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **W. R. GRACE & CO., et al.**[1] | ) | **Case No. 01-01139 (JKF)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

**FIFTEENTH QUARTERLY FEE APPLICATION BY STROOCK & STROOCK & LAVAN LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF W. R. GRACE & CO., et al, FOR INTERIM COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM OCTOBER 1, 2004 THROUGH DECEMBER 31, 2004**

Stroock & Stroock & Lavan LLP ("Stroock" or "Applicant"), counsel to the Official

Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co. ("Grace") and its

sixty-one domestic subsidiaries and affiliates that are debtors and debtors-in-possession (the

"Debtors") in this Court, for its application pursuant to 11 U.S.C. §§ 330 and 331 and in

---

[1]     The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings. Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc.,  Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

accordance with the Administrative Fee Order (defined below) for interim allowance of compensation for services rendered and for reimbursement of expenses incurred in connection therewith, respectfully represents as follows:

## INTRODUCTION

1.      By this application, Stroock seeks (i) an interim allowance of compensation for the professional services rendered by Stroock as counsel for the Committee for the period from October 1, 2004 through December 31, 2004 (the "Compensation Period") in the aggregate amount of $653,133.20[2] representing 1,232.7 hours of professional services and 92.6[2] hours of paraprofessional services; and (ii) reimbursement of actual and necessary expenses incurred by Stroock during the Compensation Period in connection with the rendition of such professional services and paraprofessional services in the aggregate amount of $25,830.19, as well as the fees and expenses of the asbestos issues expert employed by the Committee pursuant to the Court's June 22, 2001 Order Authorizing the Retention of Experts (the "Asbestos Issues Expert") in respect of services rendered in the months of September, October, November and December of 2004 in the aggregate amount of $140,422.11.

2.      Venue of this proceeding and this application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are 11 U.S.C. §§ 330 and 331 and Federal Rules of Bankruptcy Procedure 2002(a) and 2016.

---

[2]      Amount reflects Stroock's voluntary reduction of $559.50 from the total compensation billed during the Compensation Period relating to 3.2 hours of paraprofessional services.

2

## BACKGROUND

3.      On April 2, 2001 (the "Petition Date"), each of the Debtors filed voluntary

petitions for reorganization under chapter 11 of the Bankruptcy Code and have continued in the

management and operation of their businesses and property pursuant to §§ 1107 and 1108 of the

Bankruptcy Code.  Pursuant to an order of the Court, the Debtors' chapter 11 cases have been

procedurally consolidated and are being jointly administered.

4.      The Debtors operate a world-wide specialty chemicals and materials business and

employ approximately 3860 full and part-time employees.  On a consolidated basis, for the fiscal

year 2000, Grace reported a net loss of $89.7 million[3] from $1.59 billion in net revenues.  The

Debtors' bankruptcy filings report that in fiscal year 2000, on a consolidated basis, Grace's sales

are generated approximately 50% by the Debtors and 50% by the Debtors' non-debtor

subsidiaries and affiliates.

5.      On April 12, 2001, the United States Trustee formed the Committee.  During the

first meeting of the Committee on April 12, 2001, the Committee duly selected Stroock as its

counsel to represent the Committee in all matters during the pendency of the Debtors' Chapter

11 cases.  The Committee thereafter approved the retention of Duane, Morris & Heckscher LLP

(n/k/a Duane Morris LLP) ("DM&H") as its local Delaware counsel.  During the Compensation

Period, on December 3, 2003, a second amended notice of appointment of the Committee was

filed by the United States Trustee.

---

[3]      The Debtors' pleadings further reported that this net loss resulted in part from a $294.0 million asbestos-related charge to earnings recorded in the fourth quarter of 2000.

6.      The United States Trustee also appointed two separate official committees to represent the interests of claimants asserting asbestos-related personal injury claims and asbestos-related property damage claims against the Debtors (collectively, the "Asbestos Claim Committees").  On June 18, 2001, the United States Trustee appointed an official committee to represent the interests of equity security holders of the Debtors (the "Equity Committee").

7.      By application dated May 1, 2001, Stroock sought Court approval for its retention as counsel to the Committee nunc pro tunc to April 12, 2001.  The Court signed an order approving Stroock's retention as counsel to the Committee on May 30, 2001.

8.      This is the fifteenth quarterly interim application Stroock has filed with the Court for an allowance of compensation and reimbursement of expenses for services rendered to the Committee.  This application is submitted pursuant to the terms of the Administrative Order Under §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, approved by the Court on May 3, 2001 as amended by order dated April 19, 2002 (collectively, the "Administrative Fee Order").

9.      In accordance with the procedures established by the Administrative Fee Order, Stroock had, at the time of filing of this application, received payment from the Debtors for 80% of the fees and 100% of Stroock's expenses requested, and not objected to, in the October 2004 fee statement encompassed within this Compensation Period.  The Objection Period for the November 2004 fee statement has expired with no objection having been filed and a Certificate of No Objection has been filed with the Court.  The Objection Period for the December fee

4

statement has yet to expire.  In addition, Stroock has received payment from the Debtors in the

amount of $24,659.00, representing the fees and expenses of Navigant Consulting, Inc. formerly

known as Chambers Associates, the Asbestos Issues Expert for the Committee, for the month of

September 2004, but has not received payment in respect of the fees and expenses of the

Asbestos Issues Expert for the month of October, November or December 2004.  Applicant has

received no other payments and no promises for payment from any source for services rendered

in connection with these cases for the months encompassing this Compensation Period other than

as immediately set forth above.  There is no agreement or understanding between the Applicant

and any other person (other than members of Stroock) for the sharing of compensation to be

received for the services rendered in these cases.

10.     As stated in the Affidavit of Kenneth Pasquale, Esq. annexed hereto as Exhibit

"A," all of the services for which interim compensation is sought herein were rendered for and

on behalf of the Committee solely in connection with these cases.

## SUMMARY OF SERVICES RENDERED

11.     Since being retained by the Committee, Stroock has rendered professional

services to the Committee as requested and as necessary and appropriate in furtherance of the

interests of the unsecured creditors of the Debtors' estates.  The variety and complexity of these

cases and the need to act or respond on an expedited basis in furtherance of the Committee's

needs have required the expenditure of substantial time by personnel from several legal

disciplines, on an as-needed basis, including in certain instances, working into the evening and

on weekends.

SSL-DOCS1 1539743v2

12.     Stroock maintains written records of the time expended by attorneys and paraprofessionals in the rendition of their professional services to the Committee.  Such time records were made contemporaneously with the rendition of services by the person rendering such services and in the ordinary course of Stroock's practice, and are presented in compliance with Delaware Local Rule 2016-2(d) amended effective as of September 1, 2002.  A compilation showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services during the Compensation Period is annexed hereto as Exhibit "B".  In addition, Exhibit "C" hereto contains a summary of the hours expended by each of the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

13.     Stroock also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are also available for inspection.  A schedule of the categories of expenses and amounts for which payment is requested is annexed hereto as Exhibit "D".

14.     Stroock respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and have directly benefited the creditor constituents represented by the Committee and have contributed to the effective administration of these cases.

15.     The following summary of the services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit "B".  Rather, it is

6

merely an attempt to highlight certain of these areas in which services were rendered to the Committee, as well as to identify some of the problems and issues to which Stroock was required to direct its attention.

**Claim Analysis Objection, Resolution & Estimation (Asbestos) -- Category 0003**

16.     During this Compensation Period, Judge Fitzgerald heard a full day of argument on the various summary judgment and other-related pre-trial motions filed during the spring and summer of 2003 in connection with the science trial litigation between the Debtors and the Zonolite attic insulation claimants.  In preparation for attending the hearing and properly advising the Committee of what transpired, Stroock reviewed the Debtors and ZAI Claimants' pleadings and memoranda.  After the hearing, Stroock prepared an extensive memorandum for the Committee addressing arguments made by each of the parties and subsequently discussed the hearing with the Committee.

17.     As reported in the prior compensation application, Judge Fitzgerald issued an amendatory order directing the filing of statements pursuant to Bankruptcy Rule 2019.  Stroock reviewed the Court's order, the pleadings filed by several law firms representing multiple asbestos claimants seeking to have the Court further amend the order, and the opposition filed thereto, relevant case law, and Judge Fitzgerald's comments on this same matter in the Pittsburg Corning hearing heard towards the end of the prior compensation period.  During this Compensation Period, Stroock reviewed the additional pleadings filed in connection with this matter, and reviewed the further revised amendatory order issued by the Court.

7

18.     Further, as reported in the prior compensation application, Scotts Company filed a motion seeking to temporarily stay a state court litigation pending against it in Texas (the "Temporary Stay Motion") which potentially implicates the Debtors' products and certain of the insurance policies insuring the Debtors.  Stroock reviewed the stay motion and the related declaratory judgment action filed by Scotts Company in these chapter 11 cases with respect to its assertion that Scotts Company is a covered insured party under certain of the Debtors' insurance policies.  During this Compensation Period, Stroock continued to follow this matter as additional pleadings and orders were filed by Scotts Company in connection with the Temporary Stay Motion.  During this Period, Scotts Company also filed a similar motion relating to another state court litigation pending against it, and a motion for stay relief, so that the Court could hear its declaratory judgment action, and with the Debtors filed a joint motion seeking to have all actions pending against Scotts Company stayed pending the Court's decision with respect to the declaratory judgment action.  Stroock reviewed these additional pleadings and continued to follow the Court's rulings on these matters.

19.     In addition, during this Compensation Period, the Third Circuit issued an opinion dated December 2, 2004 vacating the District Court's order confirming the pre-packaged plan of reorganized for Combustion Engineering, Inc. ("CE") and two non-debtor affiliates, which plan had attempted to resolve such entities' asbestos liabilities by way of channeling such asbestos liabilities to an asbestos trust pursuant to Sections 105 and 524(g) of the Bankruptcy Code.  As the Combustion Engineering case and a number of the plan-related issues raised thereby have relevance to these chapter 11 cases, Stroock reviewed the opinion and the subsequent combined

8

petition for rehearing and rehearing en banc filed prior to the end of the Compensation Period by CE and its parent.

20.     Further, as reflected in the time detail and reported elsewhere in this Compensation Application, this was a period of heightened plan-related activity.  In connection therewith in mid-November 2004, the Debtors a filed reorganization plan and numerous related pleadings including their motion seeking the estimation of asbestos claims and the establishment of a schedule and procedures for carrying out the estimations (the "Estimation Motion") and their motion to establish post-confirmation litigation protocols for liquidating asbestos claims (the "Case Management Motion").  As directed by the Court, responses to the Debtors' Estimation Motion and Case Management Motion were to be filed no later than December 21, 2004.  Prior to the deadline, Stroock prepared and filed on behalf of the Committee responses joining the Debtors in support of those Motions.  Also, during this Compensation Period, in connection with discussions between the Debtors and the Committee with respect to the Committee becoming a co-proponent of an amended plan of reorganization, the Debtors invited Stroock and other of the Committee's professionals to a meeting to discuss the Debtors' position on their asbestos liabilities.  Stroock prepared for and traveled to Chicago to attend this meeting.  Stroock has expended 73.7 hours on this category for a fee of $63,440.50.

### Business Operations -- Category 0013

21.     During this Compensation Period, Stroock reviewed the Company's third quarter 2004 and year to date operating results, Capstone's draft report to the Committee thereon, and discussed the report with Capstone.  Stroock has expended 1.7 hours on this category for a fee of $907.50.

9

**Case Administration -- Category 0014**

22.     As reported in prior monthly compensation applications, towards the end of the November 2001 compensation period, Stroock was informed that these chapter 11 cases were being reassigned to District Court Judge Alfred Wolin.  A number of orders were issued during the month of December 2001 relating to the reassignment of these cases to Judge Wolin and the reference of these cases to Judge Judith Fitzgerald.  As reported in the prior compensation period Judge Wolin was recused from these cases and the cases were reassigned to District Court Judge Ronald L. Buckwalter.

23.     During the Compensation Period, Stroock continued to closely monitor the items on the Court's general chapter 11 docket for these cases, as well as those dockets relating to each of the adversary proceedings pending in these chapter 11 cases, to ensure that the Committee was fully informed about all pending motions and adversary proceedings and that Stroock would be ready to timely respond on behalf of the Committee, as might be applicable.  Stroock continued to engage Debtors' counsel and Capstone on an on-going basis with respect to pending matters and information requests, and reviewed agenda letters prepared for Judge Fitzgerald during the Compensation Period in respect of the hearings scheduled to be held each month during the period.  In addition, during this Compensation Period, Stroock reviewed the Debtors' motion to further extend its exclusive periods to file a plan and solicit acceptances thereto, and prepared a response to the Fee Auditor's initial report on Stroock's Thirteenth Quarterly Fee Application. Stroock has expended 60.8 hours on this category for a fee of $19,220.50.

**Claims Analysis, Objection and Resolution (Non-Asbestos) -- Category 0015**

24.     As reported in prior quarterly compensation applications, the Debtors filed a

motion seeking to establish an alternative dispute resolution program (the "ADR Motion").

Stroock reviewed the ADR Motion as filed, engaged Debtors' counsel in extended discussions

during which it raised concerns with provisions of the ADR program, reviewed Debtors'

proposed revisions to the ADR Program and related documents, and prepared extensive

memoranda commenting on the proposed revised program and continuing issues for the

Committee to consider.  During this Compensation Period, the Debtors filed a motion seeking

the appointment of a mediator in connection with the ADR Program approved by the Court.

Stroock reviewed the proposed terms of employment and raised certain concerns thereon with

Debtors' counsel.


25.     In addition during this Compensation Period, Stroock reviewed the Debtors'

proposed settlement of a damage claim with Cianbro Corp. and raised a number of questions

with respect to the proposed settlement, and the Debtors' objection to the proof of claim filed by

Massachusetts Department of Environmental Energy.  Stroock has expended 8.4 hours on this

category for a fee of $2,820.00.

**Committee, Creditors' Noteholders' or Equity Holders' -- Category 0017**

26.     During the Compensation Period, Stroock communicated with the members of the

full Committee through numerous memoranda and conference call meetings of the Committee,

many of which addressed (i) the terms of the plan of reorganization the Debtors were preparing

and then filed on November 13, 2004 (the "Plan") along with a related Disclosure Statement,

Book of Exhibits and several motions (collectively, the "Plan Documents"), including the

treatment proposed to be provided for general unsecured claims in Class 9, (ii) the many drafts of the Debtors' Plan Documents the Debtors circulated to the Committee, and (iii) discussions over and under what circumstances the Committee would become a co-proponent of the Debtors' Plan.  In connection, with these Plan-related matters, after reviewing the Plan Documents it received and identifying changes to be proposed to Debtors' representatives, Stroock prepared memoranda for the Committee discussing the proposed modifications and communicated to the Committee the discussions Stroock had with Debtors' representatives regarding the Plan Documents and Class 9 treatment.  These plan-related services continued throughout this Compensation Period.

27.    During the November 2004 omnibus hearings before the Court, Judge Fitzgerald established December 21, 2004 as the deadline for filing responses to the adequacy of the Disclosure Statement, as well as to the Debtors' Estimation, Case Management and Solicitation Procedures Motions.  In connection with reviewing and then subsequently preparing objections to the Disclosure Statement, Stroock researched a number of relevant legal issues and prepared an extensive objection for the Committee for filing with the Court.  Stroock also prepared for filing with the Court the Committee's responses to the Estimation and Case Management Motions.  Just prior to the objection deadline, the Committee and the Debtors reached an agreement on the treatment of Class 9 Claims and the Committee determined to become a co-proponent of the Plan, subject to the expected modification of the Plan and other Plan Documents to appropriately address some still open issues.  Accordingly, instead of filing the Disclosure Statement objection, Stroock prepared and filed a statement of the Committee's position regarding the Disclosure Statement and Solicitation Motion.

12

28.     In addition, during this Compensation Period, in order to keep the Committee fully informed of all of the non-plan-related pending matters in these cases, and thus enable the Committee to take informed positions on those issues, Stroock reviewed and summarized the motions filed by the Debtors and other parties in interest in these cases, raised issues the Committee should be aware of, and made recommendations to the Committee concerning appropriate actions to be taken with regard to the motions, communicated with members of the Committee regarding the positions to be taken, engaged counsel for the Debtors, and other parties and movants, as applicable, with the Committee's questions and concerns, and negotiated whenever and to the extent possible consensual resolutions of outstanding issues and acceptable forms of proposed orders.

29.     In addition to those materials already described in this category, the motions, agreements, and other materials Stroock reviewed during the Compensation Period, prepared memoranda to the Committee on and discussed with the Committee, as applicable, included, among other matters,  (i) the Debtors' motion for approval of a settlement with Honeywell International; (ii) the Debtors' motion to restrict certain transfers of stock; (iii) materials relating to the grand jury investigation of Grace and several of its current and former employees, and the Debtors' motion for authority to advance defense costs to those employees; (iv) the Debtors' motion for authority to file their plan of reorganization after the October 2004 filing date previously established by the Court and the objection filed thereto; (v) the Debtors' proposed settlement with Cianbro Corp.; and (vii) the Debtors' motion to settle tax-related issues with the Internal Revenue Service with respect to COLI policies and the Debtors' proposed termination of certain COLI policies.

SSL-DOCS1 1539743v2

30.    In addition, Stroock continued to keep the Committee informed with respect to pleadings filed in, and decisions issued by, this and other Courts, in respect of other asbestos-related chapter 11 cases, which included Judge Fullam's decision in the Owings Corning case and the Third Circuit's decision in the Combustion Engineering case, and with respect to articles and reports in respect of the legislative attempts to address the resolution of asbestos claims on a national basis, all of which have particular relevance to these cases.

31.    In addition in this category, during this Compensation Period, Stroock responded to telephone inquiries from creditors regarding the reorganization plan timetable and to creditor inquiries regarding the status of such creditor's filed claims.  Through its correspondence and communication with the Committee, Stroock has assisted the Committee in fulfilling its statutory duties to make informed decisions and express the Committee's views regarding the issues which arise in these cases and to actively participate in the preparation of a plan providing appropriate treatment for the creditors represented by the Committee and to work towards having a disclosure statement provide adequate information to creditors.  Stroock has expended 229.3 hours on this category for a fee of $104,505.00.

### Fee Application, Applicant -- Category 0018

32.    During the Compensation Period, Stroock prepared its fee statements for the months of September 2004, October 2004 and November 2004 and related notices and certifications of no objection.  Stroock also prepared its Thirteenth Quarterly Fee Application covering the period from April 1, 2004 through June 30, 2004 (the "Prior Compensation Application"), including a narrative section summarizing the services rendered during that period by Stroock and numerous fee and expense schedules, as required by the Administrative Fee

14

Order entered by the Court, and reviewed the Fee Auditors' proposed interim compensation charts and report with respect to the prior Compensation Application.  Stroock has expended 64.6 hours on this category for a fee of $20,253.00.

### Creditor Inquiries -- Category 0019

33.    During this Compensation Period, Stroock responded to numerous inquiries from unsecured creditors with respect to plan negotiations and treatment for unsecured claims and other related plan issues, the status of the ZAI litigation, the grand jury investigation of the Debtors and certain former and current employees in connection with the Libby, Montana operations, and the status and prospects for asbestos legislation.  Stroock has expended 13.4 hours on this category for a fee of $7,870.00.

### Fee Application, Others -- Category 0020

34.    During the Compensation Period, Stroock prepared notices and certifications with respect to Capstone's monthly fee statements for the months from August 2004 through November 2004 and with respect to its quarterly fee application.  Stroock has expended 8.7 hours on this category for a fee of $1,861.50.

### Employee Benefits, Pension – Category 0021

35.    During this Compensation Period, Stroock rendered services in this category in connection with reviewing the Debtors' motion seeking to settle issues with the IRS relating to COLI policies and in reviewing the treatment provided for the Debtors' existing employee-benefit programs in the Debtors' proposed reorganization plan.  Stroock has expended 2.0 hours on this category for a fee of $1,185.00.

SSL-DOCS1 1539743v2

## Environmental Matters/Regulations/Litigation -- Category 0022

36.     In connection with discussions between the Debtors and the Committee with respect to the Committee becoming a co-proponent of an amended reorganization plan for the Debtors, Stroock prepared for and attended a meeting with Debtors' counsel and Debtors' management to discuss the Debtors' view regarding their environmental liabilities.  Stroock has expended 7.4 hours on this category for a fee of $3,885.00.

## Investigations -- Category 0031

37.     During this Compensation Period, Stroock was informed that W. R. Grace and seven current and former employees had received letters from the United States Department of Justice, District of Montana, advising them that they were the targets of a pending grand jury criminal investigation (the "Investigation") concerning the Debtors and their Libby, Montana operations.  In addition, the Debtors filed a motion seeking authorization to advance to those seven individual targets of the Investigation reasonable fees and expenses for legal services provided to such individuals in connection with the Investigation and any related action.  During the Compensation Period, Stroock discussed the matter and the issues it raised for Grace and its reorganization process with Debtors' counsel, discussed these issues with the Committee, and reviewed the subpoenas and target letters issued by the Justice Department, reviewed case law relevant to issues raised by the Investigation and the Debtors' motion, and the PD Committee's objection to the motion and following the hearing on the motion communicated with counsel for the Debtors and PD counsel with respect to the terms of the order to be submitted to the Court approving the motion.  Stroock has expended 44.0 hours on this category for a fee of $18,202.00.

16

**Litigation and Litigation Consulting -- Category 0034**

38.     Stroock expended services in this category during this Compensation Period in connection with reviewing the motion filed by the Debtors seeking to settle environmental litigation with Honeywell International, which proposed a substantial fee award for Debtors' special environmental counsel, and in reviewing all related pleadings and materials.  Stroock has expended 10.7 hours on this category for a fee of $3,332.50.

**Travel – Non Working -- Category 0035**

39.     Stroock's fees in this category during this Compensation Period relate to (i) travel to and from Chicago to attend a meeting with Debtors' representatives to discuss the Debtors' views on their asbestos liabilities and (ii) travel to and from hearings before Judge Fitzgerald in Pittsburgh, Pennsylvania.  Stroock has expended 14.1 hours on this category for a fee of $8,022.50.

**Plan and Disclosure Statement -- Category 0036**

40.     As reported in prior compensation applications, at the beginning of the second quarter of 2004, the Debtors approached Stroock with respect to the preparation of a proposed reorganization plan that could be supported by the Committee.  Following the May 2004 omnibus hearing, the Court issued an order directing the Debtors to file a plan no later than October 14, 2004.  A subsequent order of the Court granted the Debtors' motion filed during this Compensation Period to extend until mid November 2004 the Debtors deadline to file their reorganization plan.

41.     During this Compensation Period, Stroock expended substantial time in connection with plan-related matters.  Stroock reviewed each of the numerous drafts of the

17

Debtors' proposed plan, disclosure statement and related plan documents and motions that the

Debtors' representatives provided, identified legal issues raised by the plan structure and textual

changes that it believed required modifications, researched all of the relevant legal issues, and

through numerous conference calls, memoranda and meetings communicated the Committee's

positions regarding, among other matters,  the treatment the Committee believed was appropriate

for general unsecured creditors and provided constructive comments to Debtors' representatives

on the information contained in the plan documents. In the course of these services, Stroock

worked with Capstone to analyze the various plan proposals and to beable to provide to the

Committee and Debtors' representatives those comments which were more financial than legal in

nature.

42.    The plan of reorganization (the "Plan") and its related documents (collectively,

the "Plan Documents") as filed with the Court in mid November 2004 did not, in the

Committee's view provide appropriate treatment for general unsecured creditors.  After the Plan

Documents were filed, Stroock continued to discuss the points at issue with Debtors'

representatives and with the Committee, attended meetings in New York and Chicago to discuss

the Debtors' positions on their asbestos and environmental liabilities.  Ultimately toward the end

of the Compensation Period, the Committee and the Debtors agreed on modifications to be made

to the treatment of general unsecured claims as provided for in the Plan, and other provisions

therein and in other Plan Documents, and the Committee determined to become a co-proponent

of an amended Plan, subject to the agreed upon modifications being made and the resolution of a

number of other open points.

18

43.     In the last week of this Compensation Period, Stroock reviewed the numerous objections that were filed with the Court raising Plan confirmation issues, as well as issues with respect to the adequacy of the Disclosure Statement, and issues with respect to the Debtors' Estimation and Case Management Motions, and discussed with Debtors' representatives their proposed responses to the objections.  Stroock also began to work on a plan support agreement embodying the terms of the Committee's agreement with the Debtors to be a co-proponent of an amended Plan.  Stroock expended 703.6 hours on this category for a fee of $380,271.50.

### Hearings -- Category 0037

44.     During this Compensation Period Judge Fitzgerald held four hearings, two of which were held in Pittsburgh, including the all-day hearing on the various summary judgment motions and related pre-trial hearings in connection with the ZAI science trial.  Stroock reviewed all relevant pleadings and documentation in advance of the hearings, which as already described in this application addressed a variety of motions and issues, including plan-related issues and processes and prepared for the hearings.  Stroock expended 24.9 hours on this category for a fee of $15,813.50.

### Employment Applications – Others – Category 0040

45.     During this Compensation Period, Stroock reviewed the retention pleadings filed during the Compensation Period including those filed by (i) the Debtors seeking to retain the services of Deloitte Tax LLP, (ii) the futures representative seeking to retain an asbestos consultant, and (iii) the Equity Committee seeking to retain Lexecon LLC as an asbestos claims consultant, the objection filed by the PI Asbestos Committee to the Lexecon retention, and

19

discussed certain of these matters with the Debtors, Equity Committee and Capstone, as applicable. Stroock expended 4.9 hours on this category for a fee of $2,587.50.

### Relief From Stay Proceedings -- Category 0041

46.    Stroock reviewed the motion filed by the Town of Acton, and Debtors' opposition thereto, the statutes and case law cited to by the parties and discussed this matter with the Debtors' counsel. Stroock has expended 11.1 hours on this category for a fee of $4,066.50.

### Tax Issues -- Category 0047

47.    During this Compensation Period, Stroock reviewed additional information from Debtors' representatives in connection with evaluating Debtors' motion seeking approval of a settlement with the Internal Revenue Service with respect to interest deductions for certain COLI policies and the impact of such settlement, discussed this matter further with Debtors' representatives and prepared a memorandum for the Committee discussing this matter. In addition, during this Compensation Period, the Debtors filed an emergency motion seeking authorization to impose restrictions on certain transfers of Grace common stock in order to ensure that the Debtors' ability to use their NOLs to offset future taxable income is not impaired prior to the effective date of a plan. Stroock reviewed the motion, prepared a modification to the order granting relief, and prepared a memorandum for the Committee discussing this matter. Further during this Compensation Period, Stroock rendered tax-related services in this category relating to the numerous plan documents that were circulated and reviewed for critical comment during this period. Stroock expended 49.1 hours on this category for a fee of $25,900.50.

## FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

48.     The factors to be considered in awarding attorneys fees have been enumerated in

In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), reh'g denied, 547

F.2d 573, cert. denied, 431 U.S. 904; these standards have been adopted by most courts.  Stroock

respectfully submits that a consideration of these factors should result in this Court's allowance

of the full compensation sought.

> The Time and Labor Required.  The professional services rendered by
> Stroock on behalf of the Committee have required the expenditure of
> substantial time and effort, as well as a high degree of professional
> competence and expertise, in order to deal with the complex issues
> encountered by the Committee with skill and dispatch.  Occasionally,
> Stroock has been required to perform these services under significant time
> constraints requiring work late into the evening and on weekends.  The
> services rendered by Stroock were performed efficiently, effectively and
> economically.

> The Novelty and Difficulty of Questions.  Novel and complex issues have
> already arisen in the course of these Chapter 11 cases, and it can be
> anticipated that other such issues will be encountered.  In this case, as in
> many others in which the firm is involved, Stroock's effective advocacy
> and creative approach have helped clarify and resolve such issues and will
> continue to prove beneficial.

21

<u>The Skill Requisite to Perform the Legal Services Properly</u>.  Stroock
believes that its recognized expertise in the area of corporate
reorganization, its ability to draw from highly experienced professionals in
other areas of Stroock's practice, and its creative approach to the
resolution of issues, are and will continue to contribute to the
maximization of the distributions to the Debtors' unsecured creditors.

<u>The Preclusion of Other Employment by Applicant Due to Acceptance of
the Case</u>.  Due to the size of Stroock's insolvency department, Stroock's
representation of the Committee has not precluded its acceptance of new
clients.  However, the volume of the matters needing attention on a
continuing basis has required several of the attorneys to commit
significant portions of their time to these cases.

<u>The Customary Fee</u>.  The fee sought herein is based upon Stroock's
normal hourly rates for services of this kind.  Stroock respectfully submits
that the fee sought herein is not unusual given the magnitude and
complexity of these cases and the time expended in attending to the
representation of the Committee, and is commensurate with fees Stroock
has been awarded in other cases, as well as with fees charged by other
attorneys of comparable experience.

<u>Whether the Fee is Fixed or Contingent</u>.  Pursuant to §§ 330 and 331 of
the Bankruptcy Code, all fees sought by professionals employed under

22

§ 1103 of the Code are contingent pending final approval by this Court, and are subject to adjustment dependent upon the services rendered and the results obtained.

Time Limitations Imposed by Client or Other Circumstances.  As already indicated, Stroock has attended to the various issues arising in these cases. Occasionally, Stroock has had to perform those services under significant time constraints requiring attorneys assigned to these cases to work evenings and on weekends.

The Amount Involved and Results Obtained.  Through the efforts of Stroock, the Committee has been an active participant in these Chapter 11 cases from the very first days of its formation, and its assistance, as well as constructive criticism, has greatly contributed to the efficient administration of these cases.

The Experience, Reputation and Ability of the Attorneys.  Stroock has one of the largest and most sophisticated insolvency practices in the nation and has played a major role in numerous cases of national import including: Acme Metals, Inc., Hillsborough Holdings Corporation, Laclede Steel Company, Gulf States Steel, Inc. of Alabama, The LTV Corporation, Wheeling-Pittsburgh Steel Corporation, Allis-Chalmers Corporation, The Charter Company, Federated Department Stores, G. Heileman Brewing Company, Inc., Burlington Motor Holdings, Inc., Metallurg, Inc.,

23

Forstmann & Company, Inc., Barneys, Inc., Fruehauf Trailer Corporation, Levitz Furniture Incorporated, The Columbia Gas System, Inc., JWP, Inc., Flushing Hospital and Medical Center, Planet Hollywood International, Anchor Glass Container Corporation, Beloit Corporation in the Harnischfeger Industries Chapter 11 Cases, RSL COM U.S.A. Inc, USG Corporation, Formica Corp. Galey & Lord, Inc. and DESA Holdings. Stroock's experience enables it to perform the services described herein competently and expeditiously. In addition to its expertise in the area of corporate reorganization, Stroock has already frequently called upon the expertise of its partners and associates in the litigation, ERISA, tax and environmental law areas to perform the wide ranging scope of the legal work necessitated by these cases.

The "Undesirability" of the Case. These cases are not undesirable, but as already indicated, have required a significant commitment of time from several of the attorneys assigned hereto.

Nature and Length of Professional Relationship. As described above, Stroock has been actively rendering services on behalf of the Committee as necessary and appropriate from April 12, 2001 through to the present.

### ALLOWANCE OF COMPENSATION

49.     The professional services rendered by Stroock required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore,

required the expenditure of substantial time and effort.  It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited the Debtors' unsecured creditor body as a whole and the Debtors' estates.

50.    With respect to the level of compensation, § 330 of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person (including attorneys for a creditors' committee): "Reasonable compensation for actual necessary services rendered by [such] . . . professional person.  11 U.S.C. § 330.  Section 330 further states that the court should take into consideration, <u>inter alia</u>, the nature, extent, and value of services performed, as well as the cost of comparable services other than in a case under this title.  <u>Id.</u> The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

51.    The total time spent by Stroock attorneys and paraprofessionals during the Compensation Period for which Stroock seeks payment was 1,325.3 hours.  Such services have a fair market value of $653,133.20.  The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

52.    As shown by this Application and supporting documents, Applicant spent its time economically and without unnecessary duplication of time.  Attached hereto as Exhibit "C" are summaries of the hours expended by the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

SSL-DOCS1 1539743v2

53.     In addition, Stroock incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of $25,830.19 for which Stroock respectfully requests reimbursement in full.  Of the aggregate expenses in the Long Distance Telephone category in the sum of $5,159.12, ten conference call meetings of the Committee account for $4,750.87.  Expenses in the Travel Expenses – Transportation category aggregating to the sum of $1,726.78 include the airfare and related taxi fare charges in respect of one Stroock associate flying to and from Pittsburgh to attend the pre-trial ZAI-related hearings before Judge Fitzgerald and the airfare, train and automobile charges in respect of traveling to and from the Court's omnibus hearings in Pittsburgh and Wilmington.  As is evident from the time detail, during this Compensation Period, the aggregate $14,375.54 Westlaw charge results from Stroock attorneys performing research sessions as required in respect of numerous legal issues relating to the plan structure and treatment of creditors, the solicitation procedures and estimation processes proposed by the Debtors, in connection with preparing responses on behalf of the Committee to the Disclosure Statement and other Plan Documents and in connection with evaluating the various motions considered by the Court during the period.

54.     The disbursements and expenses have been incurred in accordance with Stroock's normal practice of charging clients for expenses clearly related to and required by particular matters.  Such expenses were often incurred to enable Stroock to devote time beyond normal office hours to matters, which imposed extraordinary time demands.  Stroock has endeavored to minimize these expenses to the fullest extent possible.

55.     Stroock's billing rates do not include charges for photocopying, telephone and telecopier toll charges, computerized research, travel expenses, "working meals", secretarial

26

overtime, postage and certain other office services, because the needs of each client for such services differ. Stroock believes that it is fairest to charge each client only for the services actually used in performing services for it. Stroock has endeavored to minimize these expenses to the fullest extent possible.

56.     Stroock charges $.10 per page for in-house photocopying services, with respect to computerized research services Stroock charges the actual cost from the vendor, and $1.00 per page for out-going facsimile transmissions. Stroock does not charge for incoming facsimiles.

57.     Further, in accordance with the Court's June 22, 2001 Order Authorizing the Retention of Experts, this Application seeks payment for the fees and expenses of Navigant Consulting, the asbestos issues expert engaged by the Committee, in the aggregate amount of $140,422.11, for the services rendered on behalf of the Committee in the months of September, October, November and December 2004. No agreement or understanding exists between Stroock and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

58.     Stroock has reviewed the requirements set forth in Delaware Local Rule 2016-2, entitled "Motion for Compensation and Reimbursement of Expenses," and believes that this application for interim compensation and reimbursement of expenses is fully in compliance with the rules set forth therein.

59.     No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period other than as set forth herein.

**WHEREFORE**, Stroock respectfully requests, pursuant to the Administrative Fee Order and the Court's June 22, 2001 Order Authorizing the Retention of Experts:

the allowance of compensation for professional services rendered to the Committee during the period from October 1, 2004 through and including December 31, 2004 in the amount of $653,133.20;

the reimbursement of Stroock's out-of-pocket expenses incurred in connection with the rendering of such services during the period from October 1, 2004 through and including December 31, 2004 in the amount of $25,830.19;

the payment of the fees and expenses of the asbestos issues expert employed by the Committee for the months of September, October, November, and December 2004 in the aggregate amount of $140,422.11;

28

authorizing and directing the Debtors to pay to Stroock each of the amounts set forth in (a) (b) and (c) of this WHEREFORE clause (to the extent not already paid pursuant to the Administrative Fee Order); and

granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
February 18, 2005

STROOCK & STROOCK & LAVAN LLP

Kenneth Pasquale
A Member of the Firm
180 Maiden Lane
New York, New York 10038-4982
(212) 806-5400

Co-Counsel for the Official Committee of
Unsecured Creditors of W. R. Grace & Co., et al.

29