IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**AFFIDAVIT OF KEVIN J. BURKE IN SUPPORT OF
APPLICATION OF THE DEBTORS FOR THE ENTRY OF AN ORDER
AUTHORIZING EMPLOYMENT OF CAHILL GORDON & REINDEL LLP
AS SPECIAL COUNSEL TO THE DEBTORS**

STATE OF NEW YORK    )
                     )  ss:
COUNTY OF NEW YORK   )

KEVIN J. BURKE, being duly sworn, hereby deposes and says:

1. I am an attorney admitted to practice law in the State of New York and before the United States District Court for the Southern District of New York. I am a partner in the law firm of Cahill Gordon & Reindel LLP ("Cahill" or the "Firm"). My office address is 80 Pine Street, New York, New York 10005. I make this declaration in support of the Application of Debtors-in-Possession for Employment of Cahill Gordon & Reindel LLP as Special Counsel to the Debtors Pursuant to 11 U.S.C. § 327(e) (the "Application"), filed by W.R. Grace & Co. and affiliated Debtors (the "Debtors").

## Special Counsel Role in these Proceedings

2. The Debtors currently seek to retain Cahill, subject to the oversight and orders of the Court, as special counsel solely with respect to the specific litigation styled *Solow v. W.R. Grace & Co.–Conn.*, No. 2453/88 (Sup. Ct. N.Y. County), which is currently on appeal to the Appellate Division of the New York Supreme Court, First Department.

3. The *Solow* case was commenced in 1987 and sought recovery for alleged damages to property, specifically a 50-story office building located at 9 West 57th Street in New York City. Plaintiffs claim Grace manufactured and sold a cementitious spray-on fire proofing containing asbestos that was applied to the steel frame of the building during its construction in 1971. Plaintiffs sought damages of over $125 million for removal and replacement of the fireproofing, for alleged lost and reduced rent, and for alleged diminution in value of the building. A jury trial was held on various dates from September 23, 1999 to November 5, 1999, with the jury rendering its verdict on November 5, 1999. The jury found plaintiffs to be 62 percent at fault for any injuries, and judgment was entered against Grace for approximately $12 million plus prejudgment interest. Cahill did not appear at the trial but was involved behind the scenes with Grace and its trial counsel.

4. The case was on appeal at the time of the petition in this case. Cahill, through its then-partner P. Kevin Castel (who has since become a United States District Judge in the Southern District of New York) and associate Ira Dembrow, represented Grace on the appeal and prepared and filed the initial appellate brief. Plaintiffs filed a cross appeal on the issue of its allocated fault. Before the opposition/cross appeal brief was due, the petition was filed and the appeal has been stayed since then.

### Cahill's Pre-Petition Representation of Debtors

5.  Cahill has extensive prior experience working with the Debtors. Cahill has represented the Debtors regarding numerous matters since at least the 1940s. More specifically, Cahill was very involved in the very matter as to which its appointment is sought by this application and wrote the initial appeal brief filed shortly before the filing of the petition. Cahill is well-qualified and uniquely able to provide the specialized appellate representation sought by the Debtors in the application and as more specifically described below.

### Compensation Issues

6.  The Debtors owed the Firm $104,729.46 for services rendered and billed pre-petition. On or about March 14, 2001, prior to the filing of the petition, the Debtors transmitted to this Firm the sum of $125,000. The $125,000 was "an advance payment retainer" to be applied against services rendered or to be rendered. Thus, the Firm applied $104,729.46 of the $125,0000 to the payment of these pre-petition fees. Post-petition, Cahill incurred charges of $4,136.76 in compiling materials for the debtors and their counsel. By letter dated March 30, 2004, Debtors instructed Cahill to deduct those charges from the retainer and remit the balance to the Debtors. The balance of $17,347.36 has been remitted to Debtors.

7.  As compensation for its services as special counsel for Debtors in these proceedings, Cahill will charge Debtors its regular hourly rates applicable to clients in and outside of bankruptcy. Cahill's current hourly rates for its services to Debtors, subject to change from time to time, are $404–668 for members, senior counsel and counsel; $332–628 for associates and senior attorneys; $160–260 for paraprofessionals; $420 for our specialized corporate research paraprofessional in our New York office and $416 for our computerized information

systems director. My currently hourly rate is $668. My partner Floyd Abrams' hourly rate is also $668. The senior associate who has years of experience on this case and who will work on this matter is Ira Dembrow and his hourly rate is $568. An additional more junior associate will be utilized to help prepare materials for the appeal and that person, depending on what year he/she graduated from law school will be in the range of $332–404. The Senior Legal Assistant who has worked on this matter for many years is Robert Turner and his hourly rate is $260.

8.    It is Cahill's policy to charge its clients in all areas of practice for all other expenses incurred in connection with a client's matter. The expenses charged to clients include, among other things, photocopying, travel expenses, certain secretarial and overtimes expenses, filing and recording fees, long distance telephone calls, postage, express mail, messenger charges, computerized legal research charges, expenses for working meals, and facsimile charges. Cahill will charge the Debtors for such expenses in a manner and at rates consistent with charges generally made to its other clients.

9.    With respect to services provided as special counsel, Floyd Abrams will be directly responsible for the appeal. I will assist him as requested and I will make any necessary applications to this court for allowance of compensation.

10.    Mr. Abrams has more than 40 years experience in general litigation and appellate representation in New York and is a nationally–recognized appellate advocate. I have 25 years experience in general and appellate litigation, including asbestos–related property damage litigation for Grace, and bankruptcy court litigation.

## General Statement Regarding Connections to Creditors and Parties in Interest

11. The Firm may have performed services in the past and may perform services in the future, in matters unrelated to these Chapter 11 cases, for persons that are parties-in-interest in the Debtors' Chapter 11 cases. I have reviewed a list of parties in interest provided to me by Kirkland & Ellis, counsel for the Debtors (attached as Exhibit A).

12. The list attached as Exhibit A contains the following entities (or known successors, predecessors or affiliates thereof) which the Firm has (or may have) represented in the recent past or presently represents on matters unrelated to these Chapter 11 proceedings: ABN Amro Bank N.V.; Akzo Coatings, Inc.; American International Group ("AIG"); American Optical; American Standard Inc.; Atofina Chemicals; Babcox & Wilcox Co.; Baltimore Gas & Electric; Bank of America; Bank of Boston; Barclays Bank PLC; Bear Stearns & Co. Inc.; Robert H. & Joan Beber; Brown & Root; CBS Inc.; Citibank NA; Colgate-Palmolive; Consolidated Edison; Corporate Express; CPC International, Inc.; Credit Lyonnais; Credit Suisse First Boston Corp.; Deutsche Bank; Dow Chemical; ELF Atochem S.A.; ELF Atochem North America, Inc.; Engelhard Corporation; Ethyl Corp.; Federal Mogul Corp.; First Union Bank; Floridian; Ford Motor Company; Foseco, Inc.; General Motors Corp.; The Great Atlantic & Pacific Tea Co.; General Electric; General Signal Corp.; GAF Corporation; G-I Holdings; Goodyear Canada, Inc.; Goodyear Tire & Rubber Co.; Honeywell; J.P. Morgan Chase & Co.; Kennemetal; Koopers Co., Inc.; McGraw Hill Companies; Milford Associates; Miles Laboratories; Minnesota Mining and Manufacturing Co. (3M); Merrill, Lynch, Pierce, Fenner & Smith; Murphy Oil USA Inc.; Pacific Life Insurance; Pfizer, Inc.; Public Service Co. of Colorado; Rhone Poulenc, Inc.; Suburban Propane; Travelers; Union Carbide Corp.; Uniroyal Chemical; Wachovia Bank and Trust

Co., N.A.; and Walmart Stores, Inc. There are also many parties on Exhibit A that are co-defendants or opponents of Cahill clients in pending or recent litigation matters.

13. In addition, the Firm, as counsel to bank or underwriting syndicates, from time to time has or does represent all or substantially all of the institutions identified in Exhibit A as Bank Creditors of the Debtors. In its capacity as counsel for such financial institutions, Cahill had direct involvement with various other entities identified on Exhibit A in matters unrelated to Debtors.

14. The Firm has represented and continues to represent various AIG entities on issues relating to reinsurance of claims paid to Debtor; we are aware that AIG is or was a direct insurer of the Debtor but do not and have not represented AIG entities with respect thereto. The Firm is counsel to G-I Holdings in a claim against Baron & Budd, Ness Motley, Loadholt, Richardson & Poole, Weiz & Luxenburg and certain partners of the foregoing firms. Although it does not appear on the schedules, I am aware that the Firm represents or has represented on matters unrelated to these Chapter 11 proceedings the following: (1) present or former affiliates of Prudential Insurance Company of America, a plaintiff in an asbestos-in-buildings claim against the Debtors; and (2) the Estate of J. Peter Grace, individual members of the decedent's family and the Grace Institute. One of our secretaries, Mary Steiner, was employed by W.R. Grace & Co. for about six and a half years beginning in 1970 in the Corporate Risk Management Department.

15. As part of its customary practice, the Firm is retained in cases, proceedings and transactions involving many different parties, some of whom may represent or be employed by the Debtors, claimants and parties-in-interest in these Chapter 11 cases. The Firm

does not perform services for any such person, their attorneys or accountants in connection with these Chapter 11 cases.

16. Neither I, Cahill, nor any partner, counsel, or associate thereof, insofar as I have been able to ascertain, has any connection with the Debtors, their creditors or any other parties-in-interest herein, or their respective attorneys, except as set forth herein. Except for the continuing representation of the Debtors, neither I, nor the Firm, has represented or will represent any other entity in connection with these cases, and neither I, nor the Firm, will accept any fee from any other party or parties in these cases, except the Debtors.

### Search Methods

17. We have utilized the Firm's conflicts database management system (the "System"), which is designed to reveal the potential for conflicts of interest and other connections to existing and former clients. Such results are printed and have been reviewed by me. I have contacted various attorneys of the Firm shown on the System report as having previously submitted relevant connections information to the System. From such attorneys we have obtained information and guidance with regard to the particular connections reflected.

### References to the Debtors

18. The System holds no information that would suggest that the Firm is now or has ever been *adverse* to the Debtors and, in my experience we have never been adverse to the Debtors. The only entries in the System referring to the Debtors reveal that the Debtors have been clients of the Firm.

### Conclusion

19.  In view of the foregoing, I believe that Cahill does not hold or represent an interest adverse to the estates related to the matters as to which Cahill would be employed as special counsel. The Firm recognizes, and takes very seriously, its continuing responsibility to be aware of, and to further disclose, any relationship or connection between it and other parties–in–interest to the Debtors' bankruptcy estates as they appear or become recognized during the cases. Accordingly, we reserve the right to, and shall, supplement this disclosure if necessary as more information becomes available to us. The foregoing constitutes the statement of Cahill pursuant to § 327 of the Bankruptcy Code and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure.

_____
Kevin J. Burke

Sworn to before me this
17th day of February, 2005.

_____
Notary Public

CHARLOTTE EVANS
Notary Public, State of New York
No. 01EV4710990
Qualified in Kings County
Commission Expires Feb. 28, 2007