IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) ) ) ) ) ) ) ) ) ) ) | Chapter 11 |
|  |  | Case No. 01-01139 (JKF) |
| W. R. GRACE & CO., et al., |  | (Jointly Administered) |
| Debtors. |  | Objection Deadline: March 4, 2005 @4:00 p.m.<br>Hearing Date: March 21, 2005 @12:00 p.m. |
|  |  | Re: Docket No. 7753 |

**OBJECTION OF THE OFFICIAL COMMITTEE OF ASBESTOS
PROPERTY DAMAGE CLAIMANTS TO THE MOTION OF THE DEBTORS
FOR AN ORDER AUTHORIZING THE DEBTORS TO ENTER INTO (A) AN
EMPLOYMENT AGREEMENT WITH ITS CURRENT CHIEF OPERATING
OFFICER UNDER WHICH HE WOULD ASSUME THE POSITION OF
CHIEF EXECUTIVE OFFICER OF THE DEBTORS ("CEO") AND (B) A
POST-RETIREMENT AGREEMENT WITH THE CURRENT CEO
WHEREBY HE WOULD PROVIDE CONSULTING SERVICES RELATED
TO DEBTORS' CHAPTER 11 CASES**

The Official Committee of Asbestos Property Damage Claimants (the "PD Committee"), by and through undersigned counsel, hereby objects (the "Objection") to the Motion of the Debtors (the "Debtors") for an Order Authorizing the Debtors to Enter Into (A) an Employment Agreement with its Current Chief Operating Officer Under Which he Would Assume the Position of Chief Executive Officer of the Debtors ("CEO") and (B) a Post-Retirement Agreement with the Current CEO Whereby he Would Provide Consulting Services Related to Debtors' Chapter 11 Cases (the "Motion"). In support of the Objection, the PD Committee respectfully submits as follows:

## INTRODUCTION

By the Motion, the Debtors seek an order authorizing them to promote their existing Chief Operating Officer,[1] Alfred Festa ("Mr. Festa") to the position of CEO and to bestow upon him an overly generous compensation package that dis-incentivizes Mr. Festa to work diligently to get the Debtors to a confirmed plan of reorganization. The Motion and the proposed employment agreement attached to the Motion as Exhibit A (the "Festa Employment Agreement") fail to promote the long over due reorganization of the Debtors and their emergence from chapter 11.

## DISCUSSION

1. On April 2, 2001, each of the Debtors filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. On April 12, 2001, the Office of the United States Trustee (the "UST") appointed the PD Committee, the Official Committee of Asbestos Personal Injury Claimants (the "PI Committee"), and the Official Committee of Unsecured Creditors (the "Unsecured Creditors Committee"). On June 18, 2001, the UST appointed the Official Committee of Equity Security Holders (the "Equity Committee"). On May 24, 2004, the Court appointed Mr. David T. Austern as the representative of future claimants (the "FCR").

3. On or about November 13, 2004, the Debtors filed their initial plan of reorganization in these cases, which was subsequently amended on or about January 13, 2005, to include the Unsecured Creditors Committee and the Equity Committee as co-proponents of the plan (as amended, the "Plan").

4.   As the Court is well aware, although the Court has yet to approve the Disclosure Statement in connection with Plan, the PD Committee, the PI Committee and the FCR each vehemently object to the terms of the Plan on multiple grounds, including that the Plan impermissibly classifies all asbestos claimants as unimpaired under section 1126 of the Bankruptcy Code and that the Plan fails to comply with section 524(g) of the Bankruptcy Code.

5.   On or about February 11, 2005, the Debtors filed the Motion. Pursuant to the terms of the Festa Employment Agreement, Mr. Festa would be entitled to the following compensation, among other benefits, as CEO:

- Annual salary of $760,000 for the first year, subject to periodic reviews thereafter;

- For 2005, annual incentive compensation equal to 100% of his base salary ($760,000). For 2006, the annual incentive compensation will be at least 100% of his base salary, but could be as high as 200% of his base salary, subject to review by the Board of Directors;

- Awards of up to $1,690,000 from 2005-2007 under the Debtors' Long-Term Incentive Plan;

- Severance pay, if terminated without Cause or as a result of Constructive Discharge, equal to two times 175% of his then current annual base salary; and

- An Emergence Bonus in the amount of $1,750,000, that is payable to Mr. Festa even if the Debtors fail to actually emerge from Chapter 11 on his watch.[2]

6.   Not surprisingly, the Debtors rely upon the affidavit of their usual compensation expert, Mr. Bubnovich, to attempt to justify the compensation to be paid to Mr. Festa. Mr. Bubnovich concludes that the compensation package, on an overall basis, is within the range of competitive practice. See *Affidavit of Nick Bubnovich in Support of the Motion*, attached as

---

[1] All capitalized terms used, but not defined herein, shall have the meanings set forth in the Motion.

Exhibit C to the Motion. Although the PD Committee does not agree with Mr. Bubnovich that the overall compensation package is necessarily within the range of competitive practice for CEOs with a similar level of experience that Mr. Festa has in serving as the CEO of a multi-billion dollar publicly traded corporation, the PD Committee's primary concern over the Festa Employment Agreement is the Emergence Bonus component.

7. A closer examination of the terms of the Emergence Bonus is revealing. As set forth on Page 6 of the Festa Employment Agreement,

> [Mr. Festa] will be paid a "Chapter 11 emergence bonus," as specified by this paragraph (your "Emergence Bonus"). The total amount of your Emergence Bonus will be $1,750,000 - - $750,000 of that amount will be paid 6 months after the [Debtors] emerge[s] from Chapter 11, and the remaining $1,000,000 will be paid to you 18 months after such emergence; or, <u>if the Company does not emerge from Chapter 11 within 36 months of it (or another party) filing an initial plan of reorganization with the Bankruptcy Court, you will instead be paid your Emergence Bonus as follows</u>: $750,000 will be paid 36 months after the filing of an initial plan of reorganization with the Court, and $1,000,000 will be paid 48 months after such filing (even if the [Debtors]) emerge[s] from Chapter 11 after such 36 month, but before such 48 month, period). (emphasis added).

8. Essentially, what the Debtors describe as an "emergence bonus" is nothing more than a disguised stay bonus that is payable to Mr. Festa regardless of whether he is actually instrumental in leading the Debtors to successfully emerge from chapter 11. The only requirement that Mr. Festa must meet in order to receive the Emergence Bonus is that he be employed by the Debtors at the time the payments are due. <u>See</u> Festa Employment Agreement, p.6.

9. By structuring the terms of the Emergence Bonus so as to allow Mr. Festa payment of almost $2 million dollars <u>even if the Debtors fail to confirm the Plan</u> (or some other

---

[2] The foregoing is a summary of pages 2-5 of the Festa Employment Agreement, which sets out in detail the conditions upon which each of the foregoing components of Mr. Festa's compensation package will be paid.

iteration of a plan of reorganization) is simply outrageous. As CEO, Mr. Festa should be incentivized to lead the Debtors out of chapter 11, rather than for permitting the Debtors to languish while pursuing a Plan, which is patently unconfirmable on its face. The compensation structure supported by the Debtors in the Festa Employment Agreement eliminates any sense of urgency to move these cases along. To the contrary, Mr. Festa, would actually personally benefit from further significant delays, while creditors' claims remain unpaid.

10. It is simply indefensible for an executive of the chapter 11 Debtors to be paid an extraordinary bonus that escalates with the extended duration of the Debtors' bankruptcy case, simply because a plan of reorganization has been filed --- by anyone no less. The PD Committee submits that Mr. Festa should only be entitled to an "emergence bonus" if the Debtors actually emerge from chapter 11 and, any such bonus should be tied to the time frame in which Mr. Festa successfully achieves that result - - the quicker the emergence, the greater the compensation.

WHEREFORE, the PD Committee respectfully requests that the Court enter an order denying the requested relief sought by the Debtors in the Motion to the extent that it seeks to pay the Emergence Bonus to Mr. Festa in accordance with the terms of the Festa Employment Agreement, and grant such other and further relief as the Court deems just and proper.

Dated: March 4, 2005  
Wilmington, Delaware

Respectfully submitted,

BILZIN SUMBERG BAENA
PRICE & AXELROD LLP
Scott L. Baena (Admitted Pro Hac Vice)
Jay M. Sakalo (Admitted Pro Hac Vice)
Allyn Danzeisen (Admitted Pro Hac Vice)
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131-2336
Telephone: (305) 374-7580

-and-

FERRY JOSEPH & PEARCE, P.A.

/s/ Theodore J. Tacconelli
Theodore J. Tacconelli (No. 2678)
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, Delaware 19899
Telephone: (302) 575-1555

CO-COUNSEL FOR THE OFFICIAL
COMMITTEE OF ASBESTOS PROPERTY
DAMAGE CLAIMANTS