# Exhibit 1

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | Re: Docket Nos. 5527, 5637 & 5685 |

## DEBTORS' REPLY TO RESPONSE AND SUPPLEMENTAL RESPONSE FILED BY PETER PEARSON TO THE FIFTH OMNIBUS OBJECTION TO CLAIMS

The Debtors hereby file this Reply in further support of their objections to the claim of

Peter Pearson ("Claimant"). The Court should expunge Claim #2281 filed by Claimant from the

claims register because the Claimant has not demonstrated any injury for which he is entitled to

compensation from the Debtors.

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Background

1.      On April 2, 2001 (the "Petition Date"), each of the Debtors in these chapter 11 cases filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") commencing their respective chapter 11 cases (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

2.      By an order dated April 25, 2002, this Court set March 31, 2003 as the last date for filing proofs of claim for all pre-petition claims relating to asbestos property damage, non-asbestos claims (including all governmental claims) and medical monitoring claims (the "Bar Date"). A bar date has yet to be set for asbestos personal injury claims and claims related to Zonolite Attic Insulation.

## The Objection And Request For Relief

3.      On May 14, 2004, the Debtors filed their Fifth Omnibus Objection to Claims (Substantive) (the "Fifth Omnibus Objection") [Docket No. 5527], in which the Debtors sought to disallow or reduce, as appropriate, the claims set forth in the exhibits attached thereto (the "Disputed Claims"). Claim #2281 is one of the disputed claims included in the Fifth Omnibus Objection, included on Exhibit C and identified as a "No Liability Claim" (as that term was defined in the Fifth Omnibus Objection).

4.      Claim #2281, which was filed on or about 10/31/2002 in the amount of $741,600, is allegedly based upon the Debtors' "failure to provide safety equipment, information or training with respect to G.R.M. [Grace Roofing Membrane]." A copy of Claim #2281 is attached hereto as Exhibit A.

2

5.    Claimant filed a response to the Fifth Omnibus Objection ("Response") [Docket No. 5637], as well as a supplement to his Response ("Supplement") [Docket No. 5685]. In the Response, the Claimant states that he was an employee of W.R. Grace & Co. in the Grace Specialty Chemicals division from March 1986 to February 1992. He asserts that he worked in the warranty service department for the Grace Roofing Membrane ("GRM") product line out of an office in Phoenix, Arizona. The Claimant alleges that while employed by the Debtors, he was never properly trained as to how to handle the products or chemicals used in the business and was not provided adequate safety equipment to wear while working. In addition, he claims that he was not warned that these materials were potentially hazardous or dangerous or possibly carcinogenics. The Claimant asserts, without any proof or authority except his own affidavit, that he has suffered from acute joint pain in his hands, diminished vision in his eyes, severe head pains, unexplained rashes and numerous skin cancers which were all caused by the GRM materials. He maintains that the Debtors, with malicious intent, caused harm and personal injury to the Claimant and violated his civil and human rights. The Claimant never filed a lawsuit against the Debtors or asserted any cause of action against the Debtors until he filed Claim #2281. Lastly, the Claimant alleges that he is entitled to damages of $741,600.

6.    The Debtors maintain that the Claimant has no legitimate claim against the Debtors. The Debtors argue that the Claim should be expunged and disallowed for the following reasons:

(a)    the Claim is barred by the exclusive remedy provisions of the workers' compensation statute;

(b)    the Claim is barred by the statute of limitations;

3

(c)     the Claimant fails to state a valid cause of action under the Fourteenth
Amendment, and

(d)     the facts simply do not support the Claimant's Claim.

## Argument

### A.     The Claim is Barred by the Exclusive Remedy Provision of the Workers Compensation Statute.

Generally, a state's workers' compensation act displaces common law rights.  The
remedy provided by a workers' compensation act is exclusive of all other statutory or common
law remedies.  Because the majority of work done by the Claimant occurred in Arizona and
Arizona was the state in which he was employed, applicable Arizona's workers compensation
law will apply.[2]

In Arizona, an employee who does not "opt out of the workers' compensation scheme
before being injured accepts workers compensation as his or her sole remedy against the
employer.  Ariz. Const. Art. 18 § 8; A.R.S. §§ 23-906(A) and 23-1022." Aitken v. Industrial
Com'n of Arizona, 173 Ariz. 300, 301, 842 P.2d 1313, 1314 (Ariz.App.Div.2 1992).   In
particular, the Arizona workers' compensation statute provides as follows:

> The right to recover compensation pursuant to this chapter for injuries sustained by an
> employee or for the death of an employee is the *exclusive remedy against the employer* or
> any co-employee acting in the scope of his employment, and against the employer's
> workers' compensation insurance carrier or administrative service representative, ...

A.R.S. § 23-1022(a) (emphasis added).

---

2     Mr. Pearson identified four states in which he performed services for the Debtor during his employment: Arizona,
Texas, California and Nevada.

4

The Claimant did not opt out of the Arizona workers' compensation system. The Claimant had a right to file a workers' compensation claim (which the Debtors maintain would not have been a valid or allowed claim) but, to the Debtors' knowledge, he did not do so. Notwithstanding, the Claimant is not entitled to now file a claim in the Bankruptcy Court against the Debtors for any alleged injury that may have occurred while the Claimant was an employee. The Claimant's right to recover compensation pursuant to the workers' compensation statute was the Claimant's exclusive remedy for injuries that were sustained while employed by the Debtors (if any such injuries were actually sustained). Therefore, Claim #2281 should be expunged and disallowed in its entirety.

**B.     The Claim is Barred by the Statute of Limitations.**

Claim #2281 should be expunged and disallowed as it is barred by the applicable statute of limitations. As set forth above, since the majority of the work done by the Claimant occurred in Arizona and Arizona was the state in which he was employed, the Arizona statute of limitations will apply to this Claim.[3] Therefore, the relevant statute is A.R.S. § 12-542, which prescribes a two (2) year statute of limitations for personal injury actions. This statute governs injuries sustained by an employee during the scope of his employment. Brandler v. Manuel Treviso Hay Co., 740 P.2d 958, 959 (Ariz. Ct. App. 1987).

Under § 12-542, the injured party must bring the claim within two (2) years of the time that the cause of action *accrued*--in Arizona the "discovery rule" is determinative of the time of accrual. Therefore, a cause of action is deemed to have accrued when "the plaintiff knows or, in

---

[3]     As set forth in Footnote 2, Mr. Pearson identified four states in which he performed services for the Debtor during his employment: Arizona, Texas, California and Nevada. However, because Arizona is the location of the vast majority of the work, the Debtors have used Arizona law for this analysis. Moreover, California, Texas and Nevada have a two year statute of limitations for personal injury claims.

5

the exercise of reasonable diligence, should know the facts underlying the cause." <u>Republic Nat.</u> <u>Bank of N. Y. v. Pima County</u>, 25 P.3d 1, 6 (Ariz. Ct. App. 2001).

Although it is unclear exactly when the Claimant "should have known" the facts underlying the cause of his alleged injuries, he claims that he did not actually discover the cause of the injuries until 2002. However, his alleged injuries and most of his damages relate to events that occurred more than ten (10) years prior to the filing of the Claim. Moreover, the Claimant states in the Response that he obtained a letter from Mr. James Nelson, a project manager for one of the jobs the Claimant allegedly worked, which is dated January 1, 1995. <u>See</u> Response, p. 7 and Exhibit A to the Response. Therefore, it is apparent that the Claimant "should have known" and most probably did know that his alleged injuries may have been caused by the Debtor at the latest in 1995.

The Claimant "should have known" of the suspected cause of his alleged injuries prior to the filing of this Claim and at a time sufficient to trigger the statute of limitations. Therefore, Claim #2281 is barred by the statute of limitations and should be disallowed and expunged from the claims register.

## C.    The Claimant Failed to Set Forth a Valid Cause of Action under the Fourteenth Amendment.

The Claimant asserts that the Debtors violated his constitutionally protected rights of due process and equal protection. However, any action arising out of alleged violations of the Fourteenth Amendment must, as a threshold matter, demonstrate state action. <u>Dezell v. Day</u> <u>Island Yacht Club</u>, 796 F.2d 324, 326 (9th Cir. 1986) (equal protection); <u>Shelley v. Kraemer</u>, 334 U.S. 1, 13 (1948) (due process). Private parties can be held to the requirements of the Fourteenth Amendment only if the plaintiff shows that "there is a sufficiently close nexus between the State

and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982).

The Claimant has not alleged state government action in his claim, nor has he alleged that the private conduct of his former employer has any nexus to the state such that the Debtors' conduct could be subject to the Fourteenth Amendment. Claim #2281 fails to meet the "state action" requirement of the Fourteenth Amendment and is therefore improper. Claim #2281 should be disallowed and expunged in its entirety.

**D.      The Facts do not Support the Claimant's Claim**

Notwithstanding the above, the Claimant will not be able to prove any set of facts which will support the assertions set forth in Claim #2281. The Debtors maintain that if the Court conducts a hearing on the merits of Claim #2281, the Debtors' evidence will show the following:

(i)      To the best of Debtors' knowledge, during the term of the Claimant's employment, the Claimant never complained about his working conditions.

(ii)     The Claimant most likely had prior experience as a roofer and, as such, would have been familiar with roofing materials, their use and their hazards, if any. The roofing repair work that the Claimant conducted for the Debtors was essentially no different than that conducted by other roofers. Moreover, the GRM materials are similar to the bithuthene waterproofing materials that the Debtors have manufactured for years and exposure to these materials produce no adverse long term health effects.

(iii)    The Claimant was given training (and may have also conducted training for others) in the use of GRM products.

(iv)     There are a variety of organic solvents used in patching roofs but exposure to these materials involve short term acute effects and produce no long term health effects.

(v)      None of the long term health effects listed by the Claimant are consistent with exposure to materials used to manufacture or apply GRM products.

The Claimant will not be able to prove the assertions set forth in Claim #2281. Therefore, Claim #2281 should be disallowed and expunged from the Debtors' claims register.

7

WHEREFORE, the Debtors respectfully request that the Court enter an order disallowing and expunging Claim #2281.

Dated: March 4, 2005

Respectfully submitted,

KIRKLAND & ELLIS LLP
James H.M. Sprayregen, P.C.
Janet S. Baer
Rachel R. Schulman
200 East Randolph Drive
Chicago, IL 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES
& WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
(302) 652-4100

Co-Counsel for Debtors and Debtors in Possession

8

# EXHIBIT A

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF Delaware | | **GRACE NON-ASBESTOS PROOF OF CLAIM FORM** |
|---|---|---|

Name of Debtor: **W.R. Grace & Co.**

Case Number: **01-01139(JKF)**

**COPY**

NOTE: Do not use this form to assert an Asbestos Personal Injury Claim, a Settled Asbestos Claim or a Zonolite Attic Insulation Claim. Those claims will be subject to a separate claims submission process. This form should also not be used to file a claim for an Asbestos Property Damage Claim or Medical Monitoring Claim. A specialized proof of claim form for each of these claims should be filed.

Name of Creditor (The person or other entity to whom the Debtor owes money or property):

**PETER P. PEARSON, Sr.**

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☒ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

*This Space is for Court Use Only*

Name and address where notices should be sent:

**ASPC-Eyman-Cook**
**P.O. Box 3200 #53430**
**Florence, Arizona. 85232-3200**

Account or other number by which creditor identifies Debtor:

Check here ☐ replaces
if this claim ☐ amends a previously filed claim, dated: _____

Corporate Name, Common Name, and/or d/b/a name of specific Debtor against whom the claim is asserted:

**Grace Specialty Chemicals, Inc.**

**1. Basis for Claim**
☐ Goods sold
☐ Services performed
☐ Environmental liability
☐ Money loaned
☒ Non-asbestos personal injury/wrongful death
☐ Taxes
☒ Other **failure to provide safety equipment, information or training with respect to G.R.M. related materials.  See attached Statement of Claim letter, affidavit.**

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)

Your SS #: **521   68   6091**
Unpaid compensation for services performed
from _____ to _____ (date)

**2. Date debt was incurred: Between 3/1986 to 2/1992**

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ **741600.00**

If all or part of your claim is secured or entitled to priority, also complete Item 5 below.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Classification of Claim.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured Nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another. CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.

☐ SECURED CLAIM (check this box if your claim is secured by collateral, including a right of setoff.)

Brief Description of Collateral:

☐ Real Estate    ☐ Other (Describe briefly)

Amount of arrearage and other charges at time case filed included in secured claim above, if any: $_____

Attach evidence of perfection of security interest.

☒ UNSECURED NONPRIORITY CLAIM

A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

☐ UNSECURED PRIORITY CLAIM - Specify the priority of the claim.

☐ Wages, salaries, or commissions (up to $4650), earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties of governmental units - 11 U.S.C. § 507(a)(7).

☒ Other - Specify applicable paragraph of 11 U.S.C. § 507(a____).

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**7. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Acknowledgement:** Upon receipt and processing of this Proof of Claim, you will receive an acknowledgment card indicating the date of filing and your unique claim number. If you want a file stamped copy of the Proof of Claim form itself, enclose a self addressed envelope and copy of this proof of claim form.

*This Space is for Court Use Only*

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any) |
|---|---|
| **10-23-2002** | |

**REC'D OCT 3 1 2002**

[1] See General Instructions and Claims Bar Date Notice and its exhibits for names of all Debtors and "other names" used by the Debtors

AFFIDAVIT

I, Peter P. Pearson, Sr., swear that the following information is true to the best of my ability, under the penalty of perjury:

1.) I was employed with W.R. Grace and worked out of their plant located at 4220 W. Glenrosa, Phoenix, Arizona, 85019. This employment went from about 2/1986 through 3/1992.

2.) I was hired to supervise a crew to handle the roof repairs to the commercials roof projects that were still under warranty from W.R. Grace. I worked in the Warranty Service Department for the Grace Roofing Membrane (G.R.M.) product that was manufactured by W.R. Grace.

3.) W.R. Grace never provided me training, instruction, or information on how to properly handle the hazardous, dangerous, and toxic chemicals that I was subjected to during my employment.

4.) W.R. Grace never provided me safety equipment to protect myself from the hazardous, dangerous, and toxic chemicals that I was subjected to while repairing the G.R.M. roof under their warranty.

5.) The G.R.M. roof products were different then standard roofing products. The G.R.M. products were made with special chemicals and special repairs were required to comply with their specifications.

6.) During the time of my employment I suffered from sever head pains and skin rashes due to the chemicals that I was exposed to.

7.) I felt threatened that I would lose my job if I questioned my supervisor about the working conditions and safety issues.

8.) I felt that W.R. Grace did not care about my physical well being while I was working for them.

9.) I discovered this year that some of the chemicals I was exposed to while working for W.R. Grace, including xylene and several others will deteriorate the cartilage between the bones if exposed to the skin. These same chemicals are considered carcinogenic.

Nothing Further.

_____
Peter P. Pearson, Sr.

Signed before me this 23 day of October, 2002.

_____
Public Notary

My Commission Expires:



OFFICIAL SEAL
JAMES C. KINSEY
Notary Public - State of Arizona
MARICOPA COUNTY
My Comm. Expires May 7, 2005

Peter P. Pearson, Sr. #53430
ASPC-Eyman-Cook
P.O. Box 3200
Florence, Arizona. 85232-3200

RE: GRACE NON-ASBESTOS PROOF CLAIM ATTACHMENT LETTER
    CASE NUMBER 01-01139 (JKF)

## STATEMENT OF CLAIM
## ATTACHMENT LETTER

I was employed with W.R. Grace & Co. between the dates of March 1986
to February 1992. I worked in the warranty service department for the Grace
Roofing Membrane (G.R.M.) product line. The office I worked out of was;
W.R. Grace & Co. Phoenix Plant, 4220 W. Glenrosa, Phoenix, AZ. 85019.

The G.R.M. product line, which was manufactured under the Grace
Specialty Chemical, Inc. Division, was a self-stick, single-ply roofing and
water proofing material. The roofing product was labeled under G.R.M. 120,
G.R.M. 230, G.R.M. 500 as with several other name types and descriptions.
Grace sold the roofing product with a 10 year manufacture warranty.

Due to product failure caused by delamination of the surface material
from ultra violate (UV) light and excess heat, Grace was faced with the
liability of warranty roof repairs for hundreds of buildings in the Phoenix
area, along with other buildings in other cities in the Southwestern parts
of the United States. As such, in 1986 Grace formed a warranty service
department to address the roof repairs and problems. This was a money saver
for Grace compared to paying a contractor to do the work. It was also about
this time that Grace stopped marketing the G.R.M. roofing products.

I was hired to handle these repairs in the Phoenix area, and later did
completed work in Los Angeles, Las Vegas, El Paso, and other cities. In the
position I had, as a working supervisor, I had between 1 and 3 men working
under me at any one time. My direct supervisors were: Dan Kuball, Product
Specialist, between 1986 and 1988, and Ken Porter, Warranty Service
Department, between 1988 and 1992.

Page 2: STATEMENT OF CLAIM ATTACHMENT LETTER

On a daily basis, during my employment, I handled the G.R.M. product
line of materials, including support materials to complete the warranty
roof repairs needed. I also handled the inventory of these products on a
daily basis. This included using, but not limited to, Xylene as a cleaner
and product solvent, Toluene (Toluene) as a cleaner and product solvent.
I also used several of the G.R.M. roof coatings which consisted of numerous
different types of chemicals. None of these materials were safe for human
contact or environmentally safe. This fact I learned just this year after
studying chemistry.

During my employment with Grace, I was never trained in how to properly
handle the chemicals they provided, I was never given proper safety equipment
to protect my self from these toxic, dangerous, and hazardous materials,
nor was I ever told just how dangerous and carcinogenic these different
materials were.

Several times I can remember breathing these toxic fumes and suffering
headaches for days during the course of working with the G.R.M. materials,
not aware of why I was suffering these headaches. In 1990, when I asked
my direct supervisor for a respirator after we all complained of the fumes,
he actually acted offended and noted that we really did not need one. He
allowed me to get a respirator for me and the other two guys I had working
with me. However, I was not trained on how to get a proper kind of respirator
for the kind of chemicals I was using. The respirators did not seem to work,
they turned out to be made for dust not fumes.

To further support my claim I obtained a letter from Mr. James Nelson,
Project Manager for "Thomas & Mack Center", Las Vegas, Nevada, 89154-0003,
where he complained to my direct supervisor, Ken Porter about the toxic
roofing materials that were not properly handled. As evident by the letter
I had no training in handling the toxic, hazard materials that Grace provided.
(Exhibit "A").

I believe that it was around 1989 I was handed a large loose leaf notebook from my direct supervisor. I was told to keep this book in the truck. I found out later it was "Material Safety Data Sheets" (MSDS) forms. However, I was never trained in how to read these forms or what they specifically meant, or how they pertained to the G.R.M. products.

The G.R.M. products were a unique roofing product. The Grace company spent a lot of time and money producing this product, yet failed at basic considerations for the humans that handled their products on a daily basis.

## CAUSES OF ACTIONS

1.) W.R. Grace, with malicious intent, caused me harm, through acts or omissions, arising by reason of, directly or indirectly, physical, emotional or other personal injuries or other damage caused, or allegedly caused, directly or indirectly, by the exposure to dangerous, hazardous and toxic materials, chemicals and/or products, manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by Grace for their G.R.M. products used in and for the Roof Warranty Service Department.

2.) W.R. Grace, with malicious intent, violated my civil rights and human rights, through acts or omissions, arising by reason of, directly or indirectly, physical, emotional or other personal injuries or other damage caused, or allegedly caused, directly or indirectly, by the exposure to dangerous, hazardous and toxic materials, chemicals, and/or products manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by Grace for their G.R.M. products used in and for the Roof Warranty Service Department.

3.) W.R. Grace, with malicious intent, violated my personal safety and personal well being, through acts or omissions, arising by reason of, directly or indirectly, physical, emotional or other personal injuries or other personal injuries or other damage caused, or allegedly caused, directly or

Page 4: STATEMENT OF CLAIM ATTACHMENT LETTER

indirectly, by the exposure to dangerous, hazardous and toxic materials, chemicals, and/or products manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by Grace for their G.R.M. products used in and for the Roof Warranty Service Department.

### CLAIM ASSESSMENT FACTS

I am asking for four hundred dollars, ($400.00) per day for every work day I was employed with W.R. Grace & Co. in their Roof Warranty Service Department to settle this claim. The following formula I used to determine the cash figure I arrived at:

TOTAL DAYS EMPLOYED: 03/01/1986 to 02/01/1992 = 2163 days.
TOTAL WEEKS WORKED:  2163 days / 7 days in a week = 309 weeks
TOTAL WORK DAYS: 309 weeks * 6 work days a week = 1854 work days with Grace.
TOTAL CLAIM AMOUNT AT TIME CASE FILED:
             1854 work days * $400.00 = $741600.00 Dollars.


SIGNED under the penalty of perjury.

Peter P. Pearson, Sr.

10-22-2002

EXHIBIT "A"

LETTER FROM JAMES NELSON, PROJECT MANAGER
THOMAS & MACK CENTER

# THOMAS & MACK

## It happens here!

November 1, 1995

Peter P. Pearson Sr.
P. O. Box 1170
Bandon, OR. 97411

Dear Peter:

RE:   PROJECT VERIFICATION.

In answer to your letter asking about the dates you worked here for W.R. Grace, I don't have the exact date you started, but this is what I do have.

1.   July 2, 1991, UNLV's Purchasing Department wrote W.R. Grace to start the contract: Warranty Roof Work at the Thomas & Mack Center in Las Vegas, NV.

2.   Work was started by W.R. Grace at the end of July of 1991;

3.   I'm sending a copy of a letter I wrote to Ken Porter of W.R Grace showing that you were on the job on August 11, 1991. It seems that you were working for about six weeks here in Las Vegas, @ UNLV.

4.   W.R. Grace sent a completed invoice# 265257 requesting payment on purchase order# 114773 Warranty Roof Repair at Thomas & Mack Center on October 25, 1991.

Should you have any more questions, please contact me at 895-4817.

Sincerely,

James Nelson
Maintenance/Project Manager
Thomas & Mack Center



THOMAS & MACK CENTER          4505 MARYLAND PARKWAY • LAS VEGAS, NEVADA 89154-0003
                             (702) 739-3761 • FAX (702) 739-1099

August 13, 1991

Mr. Ken Porter
W. R. Grace & Co.
4220 W. Glenrosa Ave.
P.O. Box 14279
Phoenix, AZ 85019

Dear Mr. Porter,

I would like to address the warranty work being done at the Thomas
& Mack Center by W. R. Grace & Co.

Saturday, August 10, 1991, we experienced a heavy thunder storm
here. Your roofing crew had six scupper drains left opened around
the parapet wall. Also four roof drains had been sealed over so
no water could drain out. The result of this caused flooding on
the concourse, arena floor, equipment room, and the air handler
rooms. I had to call in workers Sunday at 3:00 am to clean up the
water. This work amounted to fourteen (14) man hours at thirteen
(13) dollars per hour, which cost a total of $182.00.

Peter came over Sunday to correct the problem with the drains. I
also expressed to Peter my concern about all the black roofing
product that is being trashed all over our building and sidewalks.
At the pump site I have observed toxic roofing material being
washed down the sidewalk into the water drain. If this was known
by UNLV's Hazardous Waste Material Department, they would close
down the roofing project.

We are greatful for the warranty work that is being done, however
I would appreciate you talking to your crew asking them to show.
more concern in helping us keep the Thomas & Mack Center neat and
clean. I would like to see them use more drop clothes, clean up
right when they spill, close doors when they leave the air handler
rooms, and keep used product drums picked up.

Sincerely,

Jim Nelson
Maintenance/Project Manager