## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

## FEE AUDITOR'S FINAL REPORT REGARDING
## INTERIM FEE APPLICATION OF THE BLACKSTONE GROUP L.P.
## <u>FOR THE FOURTEENTH INTERIM PERIOD</u>

This is the final report of Warren H. Smith & Associates, P.C. ("Smith"), acting in its

capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Interim Fee</u>

<u>Application of the Blackstone Group L.P. for the Fourteenth Interim Period</u>  (the "Application").

## BACKGROUND

1.      The Blackstone Group L.P. ("Blackstone") was retained as financial advisers to the

Debtors.  In the Application, Blackstone seeks approval of fees totaling $525,000.00 and costs

totaling $22,158.70 for its services from July 1, 2004, through September 30, 2004.

2.      In conducting this audit and reaching the conclusions and recommendations contained

herein, we reviewed in detail the Application in its entirety, including each of the time and expense

entries included in the exhibits to the Application, for compliance with Local Rule 2016-2 of the

Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective

February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for

Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, Issued January 30,

1996, (the "Guidelines"), as well as for consistency with precedent established in the United States

Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We served on Blackstone an initial report based on our review, and received a response from Blackstone, portions of which response are quoted herein.

## DISCUSSION

3.      While Blackstone was retained pursuant to an engagement agreement providing for Blackstone to be paid a flat monthly fee of $175,000.00, its fees remain subject to the provisions of 11 U.S.C. § 330.  The Order Appointing Fee Auditor in Accordance with the Court's Direction (the "Fee Auditor Order") provides that:

> [t]his order applies to (i) all professionals in these cases employed or to be employed pursuant to sections 327, 328 or 1103 of the Bankruptcy Code; and (ii) any claims for reimbursement of professional fees and expenses under section 503(b) of the Bankruptcy Code to the extent permitted by the Court, except: (a) professionals providing services pursuant to an order that does not require submission of fee applications; and (b) professionals retained pursuant to the Court's Order pursuant to §§ 1107(a) and 1108 Authorizing the Debtors to Employ and Compensate Certain Professionals Utilized in the Ordinary Course of the Debtors Business, dated May 3 2001.

Fee Auditor Order at 2 (internal footnote omitted).  Accordingly, we have reviewed the Application to determine compliance with the requirements of section 330.

4.      In our initial report, we noted that Blackstone professionals spent a total of 870.4 hours for which fees totaling $525,000.00 are sought.  The effective hourly rate is $603.17. Blackstone responded as follows:

> Blackstone respectfully submits that the Fee Auditor's observation concerning the "implied" hourly rate of Blackstone's professionals is not an appropriate factor in the award of Blackstone's monthly compensation.  The Retention Order was entered, to the best of Blackstone's knowledge, after ample notice to the United States Trustee, all official committees in existence at the time and all parties on the service list.  The

Retention Order was later amended from the originally submitted order specifically to address concerns of certain of the Committees, and has not been appealed. The Retention Order provides, in pertinent part, that the Debtors shall pay Blackstone a monthly advisory fee of $175,000 in cash in accordance with the procedures set forth therein. The Debtor's application to retain Blackstone was made under section 328(a) of the Bankruptcy Code, which authorizes the retention of professional persons on a fixed fee basis subject to review only for improvidence. While the Retention Order subjects other compensation to a general test for reasonableness, it does not subject Blackstone's monthly advisory fee to a test for reasonableness; rather the monthly advisory fee is only subject to a test for reasonableness if the Debtors request an adjustment to said fee.

While we offer no specific recommendation at this time regarding Blackstone's fee level, we maintain that the process whereby we affix an effective hourly rate to Blackstone and other flat-fee applicants' services remains a worthwhile tool that allows the Court to easily monitor level of service versus level of fee.

5. We noted six transportation expenses totaling $388.99 that appear excessive. The entries are provided below.

| | | |
|---|---|---|
| Blechman (car home from Blackstone) | 02/24/04 | 137.70 |
| Tollinche (car home from Blackstone) | 06/29/04 | 48.86 |
| Tollinche (car home from Blackstone) | 07/01/04 | 48.86 |
| Tollinche (car home from Blackstone) | 07/12/04 | 48.86 |
| de Almeida (car home from Blackstone) | 08/15/04 | 50.80 |
| Publishing Services - Gitson (car home from Blackstone) | 08/12/04 | 53.91 |

While there are other similar entries in the application, those fall in the $10-$20 range and all seem to be designated as taxi rides. We asked Blackstone to explain the necessity of the private car service indicated by the cited entries and further explain why the cost for these services should not be viewed as excessive. Blackstone responded as follows:

The travel expenses referenced in the Report were incurred for trips taken by Blackstone employees from Blackstone's offices to their homes after working late on matters related to the Debtors' cases. Blackstone's charges for local travel expenses to the Debtors are determined in the same manner as for clients in

non-bankruptcy matters.  Local travel expenses incurred by Blackstone are charged to the client if such travel expenses are incurred for the client or are otherwise necessary in connection with services rendered to the client.  Blackstone has followed its general internal policy with respect to local travel expenses billed to the Debtors. Blackstone's policy permits an employee to take a taxi or car service home if working after 9 p.m.  While an employee is required to take a taxi within Manhattan, the employee can take a car service if the employee's home is outside Manhattan.

Additionally, pursuant to the Engagement Agreement, as approved by the Retention Order, the Debtors agreed to reimburse Blackstone for all necessary and reasonable out-of-pocket expenses incurred during Blackstone's retention as the Debtors' financial advisor, including, without limitation, travel expenses incurred during occasions when Blackstone professionals are engaged in activities related to Debtors' cases.

We appreciate the response and generally concur with the acceptability of occasional after-hours transportation when working on matters directly attributable to the estate.  We therefore will not recommend reductions for the last five transportation expenses cited.  However, in the instance of the $137.70 transportation charge, we maintain that the estate should not be responsible for this level of expense when it involves transportation only to a firm member's home.   Thus we recommend a reduction of $87.70 for this expense.

6.      We noted a meal expense for $55.97 that may be excessive.  The entry is provided below.

Blechman (meal while traveling)                           06/01/04                           55.97

We recommend reasonable ceilings of $15 per person for breakfast, $25 per person for lunch and $50 per person for dinner.   We asked Blackstone for greater detail surrounding this expense.  The firm responded as follows:

The meal expense referenced in the Report was for one working dinner meal.  The meal expense was incurred by David Blechman while in Columbia, MD on matters related to the Debtors' bankruptcy proceedings.

We appreciate the response and recommend a reduction of $5.97 for this expense.

7.     We noted a lodging expense of $311.19 that may be excessive. The entry is provided below.

Shinder (1 day hotel stay in Boston, MA)          06/21/04-06/22/04          311.19

We recommend a reasonable ceiling of $250.00 ($350.00 for New York and San Francisco) per day for hotel stays. We asked Blackstone to explain why the cited lodging entry should not be viewed as excessive. Blackstone responded as follows:

> In the case of Shinder, the Blackstone employee incurred lodging expenses at a hotel which was close to the location of the Debtors' facilities where the meeting was held and whose rates were considered reasonable.

We appreciate the response but suggest lodging within the suggested parameters could have been found. We thus recommend a reduction of $61.19 for this expense.

## CONCLUSION

8.     Thus we recommend approval of fees totaling $525,000.00 and costs totaling $22,003.84 ($22,158.70 minus $154.86) for Blackstone's services from July 1, 2004, through September 30, 2004.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____
          Warren H. Smith
          Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 1275
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

### CERTIFICATE OF SERVICE

        I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 7th day of March, 2005.

_____
                    Warren H. Smith

## SERVICE LIST
Notice Parties

**The Applicant**
Pamela D. Zilly
Senior Managing Director
The Blackstone Group L.P.
345 Park Avenue
New York, NY 10154

**The Debtors**
David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones,
P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of
Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of
Property Damage Claimants**
Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price &
Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of
Personal Injury Claimants**
Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE  19801

**Official Committee of Equity Holders**
Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**<u>United States Trustee</u>**
Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801