**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING**
**FEE APPLICATION OF CAPLIN & DRYSDALE,**
**CHARTERED FOR THE FOURTEENTH INTERIM PERIOD**

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Fee Application of Caplin & Drysdale, Chartered for the Fourteenth Interim Period (the "Application").

**BACKGROUND**

1.  Caplin & Drysdale, Chartered ("Caplin") was retained as national counsel to the Official Committee of Asbestos Personal Injury Claimants. In the Application, Caplin seeks approval of fees totaling $84,288.00 and costs totaling $5,306.98 for its services from July 1, 2004, through September 30, 2004.

2.  In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued

January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on Caplin an initial report based on our review, and received a response from Caplin, portions of which response are quoted herein.

## DISCUSSION

3. In our initial report, we noted a number of expenses all related to a July 19, 2004, meeting in Washington D.C. In each case the expense amount shown appears to be 1/15 (one-fifteenth) of the total billed. The expenses at issue are provided below.

**A.** EI; DC expenses to conduct all day meeting by members of 15 Asbestos Claimants   60.00
to discuss case status & strategy on 7/19 for dinner with P. Weitz, S. Baron, R.Budd,
M. Kelly, D. McCormick, J. Rice (plus one), S. Esserman (plus one), A. Rice, J. Cooney and E

We recommend reasonable ceilings of $15 per person for breakfast, $25 per person for lunch and $50 per person for dinner. The total for the cited dinner computes to $900.00 ($60.00 x 15) or $75.00 per person for the twelve people listed. We asked Caplin to explain why this expense should not be viewed as excessive. Further, since presumably the "plus one" designees are not asbestos claimant representatives, we asked the firm to explain why the estate should be responsible for their meal expenses.

**B**. EI; EI; DC expenses to conduct all day meeting by members of 15 Asbestos Claimants 207.20
to discuss case status & strategy on 7/19 for A.M. and P.M. beverage service at 6.50
per person and lunch at 29.00 per person ( attending members Baron, Budd, Cooney, Ferraro,
Goldberg, Kazan, Kelley, Meyer, Rice, Rich and Weitz)

The total for the cited expense computes to $3,108.00 ($207.20 x 15) or $259.00 per person for the 12 members listed including EI. We asked Caplin to explain the apparent difference between the

figures listed in the narrative and our computed total.

**C.**     EI; EI; DC expenses to conduct all day meeting by members of 15 Asbestos Claimants    77.16
to discuss case status & strategy on 7/19  for taxes for food and set-ups (attending members Baron, Budd, Cooney, Ferraro, Goldberg, Kazan, Kelley, Meyer, Rice, Rich and Weitz)

The total for the cited expense computes to $1,157.40 ($77.16 x 15) or over one-third of the total food expense listed previously. We asked Caplin to document all tax percentages and explain why the tax total is so high for this expense.

**D.**     EI; EI; DC expenses to conduct all day meeting by members of 15 Asbestos Claimants    2.83
to discuss case status & strategy on 7/19 for Maestro breakfast with Mark Peterson

The total for the cited expense computes to $42.45 ($2.83 x 15). In keeping with our recommended ceiling of $15 per person for breakfast, we asked Caplin to explain why this expense should not be viewed as excessive.

**E.**     EI; EI; DC expenses to conduct all day meeting by members of 15 Asbestos Claimants    9.40
to discuss case status & strategy on 7/19 for one night at the Ritz Carlton hotel in Tysons Corner, VA...

We recommend a reasonable ceiling of $250 per night ($350 New York and San Francisco) for hotel stays. The cited entry computes to $324.30 ($9.40 x 15) per night. We asked Caplin to explain why this expense should not be viewed as excessive. Caplin's response is provided as Response Exhibit 1. We appreciate the response. From the accompanying expense detail we now more clearly understand how many cases and how many attendees were involved. For the July 19, 2004 dinner expense, we accept Caplin's reduction of $10. We further accept Caplin's reduction of $12.45 for the July 19 breakfast and the reduction of $4.95 for the hotel charge. Thus we recommend a reduction of $27.40 for these expenses.

      4.      We noted an expense of $77.00 on August 16, 2004 for ground transportation. The

entry is provided below.

| | |
|---|---:|
| Travel Expense - Ground Transportation - cabs to/from airport for PVNL's | 77.00 |
| trip to Chicago on 8/16 (petty cash) | |

We asked Caplin to detail how many other cases this expense may have been divided among.

    5.     We noted a hotel expense of $171.20 for August 16-17, 2004. The entry is provided below.

| | |
|---|---:|
| Travel Expenses - Hotel Charges - Tvl to Chicago on 8/16-8/17 for PVNL to attend settlement meeting | 171.20 |

We asked Caplin to detail whether the stay was one or two nights and what other, if any, cases the expense may have been divided among. With regard to the expenses cited in Paragraphs 4 and 5, we asked the firm to explain the purpose of the trip as it benefitted the bankruptcy estate. Caplin responded as follows:

> In paragraph 4 of the Initial Report, you inquire about Peter Lockwood's cab fare to and from O'Hare airport in Chicago. The $77.00 indicated was not divided among cases and represents the standard fare for a taxi or care service to and from O'Hare an Mr. Lockwood's hotel
> In paragraph 5 of the initial report, you inquire regarding Mr. Lockwood's hotel charge and the purpose of his trip to Chicago. The hotel charge was for one night. The purpose of the trip was to engage in settlement discussions among all parties to this bankruptcy matter regarding a plan of reorganization, and hence to benefit the estate by achieving confirmation.

We appreciate the response and offer no objection to these expenses.

## CONCLUSION

    6.     Thus we recommend approval of fees totaling $84,288.00 and costs totaling $5,279.58 ($5,306.98 minus $27.40) for Caplin's services from July 1, 2004, through September 30, 2004.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
     Warren H. Smith
     Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 4080
Dallas, Texas 75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**


## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 7th day of March, 2005.

_____
     Warren H. Smith

## SERVICE LIST
### Notice Parties

**The Applicant**

Elihu Inselbuck
Peter Van N. Lockwood
CAPLIN & DRYSDALE, CHARTERED
399 Park Avenue
New York, NY 10022

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.

Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 141
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

**FEE AUDITOR'S FINAL REPORT** - Page 6
wrg FR Caplin 14int 7-9.04.wpd

Response Exhibit 1

I.     Committee Meeting on July 19, 2004

You inquire in paragraph 3 regarding a Committee meeting on July 19, 2004 that was attended by 15 people, including three Committee members identified only as "plus one". As you are aware, Committee meetings are generally attended by legal representatives of the Committee members, all of whom are asbestos victims. In this case, however, three committee members attended the meeting along with their representatives. Our responses to your inquiries about certain specific charges are as follows:

A.     Committee Dinner on July 19:     Caplin & Drysdale will accept a voluntary reduction pro-rated for 15 attendees, divided by 15 cases, for this dinner. The total of $900.00 for the dinner, divided by 15 attendees, is $60.00 per person. The $10.00 charge per person over the $50.00 limit that you request, multiplied by 15 attendees and divided by 15 cases is $10.00. We will therefore accept a reduction of $10.00 for this expense.

B     Beverage Service and Lunch:   Once again, there 15, rather than 12 attendees, among whom costs should be distributed. If you divide the total expense by 15 rather than 12, the cost per person is $207.00, as indicated in our expense application.

C.     Food Taxes and Set-Ups: You additionally ask in paragraph 3 that we explain charges for food taxes and set-ups for the July 19 meeting. Two conference rooms were used for this meeting, and taxes were charged separately for each room set-up. We have attached to this Response, invoices showing such tax and food charges.

D.     Elihu Inselbuch Breakfast with Mark Peterson: We will accept a reduction of $12.45 regarding this expense.

E.     Mr. Inselbuch's Hotel Charge: The room charge on July 19 for one night at the Ritz Carleton Hotel in Tysons Corner, Virginia, was $299.00. The remainder of the amount charged was for occupancy and sales taxes. Nonetheless, we will accept a reduction of $4.95 ($74.30/15) regarding this expense.