## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| **Debtors.** | § | |
| | § | |

### FEE AUDITOR'S FINAL REPORT REGARDING
### FEE APPLICATION OF KIRKLAND & ELLIS
### FOR THE FOURTEENTH INTERIM PERIOD

   This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Fee Application of Kirkland & Ellis for the Fourteenth Interim Period</u>.

## BACKGROUND

   1.  Kirkland & Ellis was retained as counsel to the Debtors. In the Application, Kirkland & Ellis seeks approval of fees totaling $2,306,619.50 and costs totaling $106,410.37 for its services from July 1, 2004, through September 30, 2004.

   2.  In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the

United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on K&E an initial report based on our review, and received a response from K&E, portions of which response are quoted herein.

## DISCUSSION

3.    In our initial report, we noted that on July 1, 2004, DMB has a travel-related entry of 9.00 hours for fees of $6,750.00. The entry is provided below.

07/01/04    DMB   9.00            Preparation for, travel and meetings with equity and UCC.

We asked K&E to review the entry and specify what portion of the cited time represents non-working travel and thus should be billed at 50% the normal rate.   K&E responded as follows:

> The Initial Report identifies one instance were travel time was apparently billed at 100%, rather than 50%. Based upon a review of the attorneys' notes, a portion of this entry was apparently inadvertently billed at 100%. Pursuant to Local Rules, the portion of this entry (4.5 hours) that relates to travel should have been billed at 50%, and, therefore, K&E agrees with a reduction of $3,375.00 [$750.00 x 4.5 hours].

We appreciate the response and thus recommend a reduction of $3,375.00 in fees.

4.    We noted that on July1, 2004, DMB, JF and TLF attended a meeting. The total time spent including any preparation and non-working travel time was 24.50 hours for a total fee of $15,707.50. The entries are provided below.

07/01/04    DMB   9.00            Preparation for, travel and meetings with equity and UCC.

07/01/04    JF    7.00            Prepare for and participate in meeting with equity and commercial committees.

07/01/04    TLF   4.50            Prepare for and attend meeting with equity and commercial committees.

07/01/04    JF    4.00            Travel to and from New York (half time)

**FEE AUDITOR'S FINAL REPORT** - Page 2
wrg FR KE 14int 7-9.04.wpd

We asked K&E to explain why this meeting required the attendance of three (3) firm members.

K&E responded as follows:

> This meeting was held shortly after the Bankruptcy Court established a deadline for Grace to file a chapter 11 plan of reorganization, and the purpose of the meeting was to discuss potential approaches to resolving Grace's asbestos liabilities in its plan of reorganization. The ultimate result of this meeting (and others that ensued) was a detailed, visually-oriented plan-outline that sets forth a basic vision for a reorganization plan and a critical path to achieve that vision. At K&E, four attorneys were principally involved in developing this Plan structure: David Bernick, Ted Freedman, Bennett Spiegel, and Jonathan Friedland. Three of these individuals participated in this meeting.

> It was imperative that each of these individuals attend this meeting. David Bernick's participation was necessary because the plan sets forth his overall strategic vision for resolving the case. Ted Freedman, a senior bankruptcy attorney who has worked closely with David Bernick for many years in asbestos-related bankruptcy cases, attended so that he could contribute his mass-tort bankruptcy expertise, and he has continued to provide day to day oversight in the development of the plan structure. Finally, Jon Friedland's attendance was needed because he was the principal draftsperson of the plan outline.

We appreciate the response and offer no objection to these fees.

5.    We noted that on September 27, 2004, JSB, EBW and CL attended a hearing. The total time spent including any preparation and non-working travel time was 66.60 hours for a total fee of $36,048.00. (See Exhibit A) We asked K&E to explain why this hearing required the attendance of three (3) firm members. K&E responded as follows:

> The Initial Report requests greater explanation concerning the need for Janet S. Baer (JSB), Christopher Landau (CL), and Eric B. Wolff (EBW) to prepare for and participate in "a hearing" on September 27, 2004. As a preliminary matter, we note that the Debtors actually had two hearings on September 27, 2004. This may have been less than clear from the time entries.

> The Debtors' September 2004 omnibus hearing was held at noon in Wilmington, DE, and a Third Circuit oral argument with respect to an appeal filed by Maryland Casualty Company against Carol Gerard (the "Gerard Appeal") concerning the scope of the Debtors' modified preliminary injunction was held during the morning in Philadelphia, PA.

Two of Ms. Baer's entries that are identified in Exhibit A to the Initial Report actually relate to the omnibus hearing: (a) 2.00 hours on 9/24/04 to "Review pleadings re injunction motion in preparation for hearing on same (2.0)..." and (b) 2.0 hours on 9/27/04 to "travel from Wilmington back to Chicago after September omnibus hearing."

With respect to the remaining time, each of Ms. Baer, Mr. Landau and Mr. Wolff's respective time entries was necessary to adequately prepare for the Gerard Appeal. The Gerard Appeal concerned an order of the District Court of Delaware, which reversed a Bankruptcy Court ruling that the Debtors' modified preliminary injunction applied to certain lawsuits against specified non-Debtors.  Mr. Landau argued the Gerard Appeal.  Eric B. Wolff was the K&E associate that was principally responsible for drafting the Debtor's brief in the Gerard Appeal (and responding to the Third Circuit's letter-requests for additional briefing, which the Third Circuit issued before the Gerard Appeal hearing).  Therefore, his knowledge and background concerning the facts and law were required for purposes of hearing preparation. Finally, Ms. Baer is the K&E partner that is responsible for the day-to-day case operations and was extensively involved in the pleadings requesting the modified preliminary injunction, as well as the initial pleadings and the appellate briefs that led to the Gerard Appeal.  Therefore, her background and insight were integral for purposes of preparing for the Gerard Appeal.  Ms. Baer also attended the oral argument in the Gerard Appeal (2.0) hours, for purposes of evaluating the Third Circuit's questions concerning the modified preliminary injunction, which will be useful for determining the preliminary injunctions' prospective applicability.  Ms. Baer's attendance also made sense, since she was already in the greater-Philadelphia area for the aforementioned omnibus hearing.

We appreciate the response and offer no objection to these fees.

6.    In our initial report, we noted six (6) conference calls in which multiple firm members participated.  Time billed for these conference calls totals 123.0 hours with resulting fees of $64,325.00.  The calls are grouped as Exhibit B.  For each call, we asked K&E to please explain the necessity of each firm member's presence, including the particular expertise each member brought to the call.  K&E's response is provided as Response Exhibit 1.  We concur that multiple-party participation was necessary and efficient in these calls and offer no objection to these fees.

7.    We noted eight (8) instances in which the time entry does not match the total of the parenthetical entries.  These are provided as Exhibit C.  By our calculations, this resulted in a total

overcharge to the estate of $4,365.50. We asked the firm to examine the entries and to respond as to whether they represent inadvertent oversights and should therefore be deducted from the fee request total. K&E responded as follows:

> The Initial Report identifies eight (8) instances were the summary of hours differs from the parenthetical time entries. Based upon a review of the attorneys' notes, the respective time entries should be reduced as noted in the Initial Report. K&E agrees with the reduction of $4,365.50.

We appreciate the response and thus recommend a reduction of $4,365.50 in fees.

8.      We noted four (4) hotel charges that may be excessive. The entries are provided below:

7/14/2004       371.25 David Bernick P.C., Hotel, Baltimore, MD, 07/14/04, (Board Meeting), Attend Client Board Meeting

7/22/2004       638.30 David Bernick P.C., Hotel, New York, NY, 07/22/04 (Negotiations), Creditors Committee meeting

8/24/2004       326.33 David Bernick P.C., Hotel, Washington, DC, 08/24/04, (Client Meeting), Client Meeting

8/25/2004       326.33 David Bernick P.C., Hotel, Washington, DC, 08/24/04, (Client Meeting), Client Meeting

We recommend a reasonable ceiling of $250.00 per person per night ($350.00 for New York) for hotel stays. We asked K&E to explain why the cited entries should not be viewed as excessive.

K&E responded as follows:

> The Initial Report questions whether four (4) hotel charges may be excessive (for $371.25 in Baltimore, MD for the night of July 14, 2004, $638.30 in New York, NY for the night of July 22, 2004, $326.33 in Washington, DC for the night of August 24, 2004, and $326.33 in Washington, DC for the night of August 25, 2004) and recommends a ceiling of $250.00 per person per night ($350.00 for New York) for hotel stays. Hotel rates can be extremely volatile, especially in New York, Washington, D.C., and other cities where meetings in these bankruptcy cases are typically held. Given the time demands of these bankruptcy cases, it would be

> unrealistic to expect K&E to reschedule meetings for the purpose of satisfying an arbitrary rate-ceiling. Further, the order authorizing K&E's retention (*Order Pursuant to 11 U.S.C. § 327(a) and Fed.R.Bankr.P. 2014(a) Authorizing the Employment and Retention of Kirkland & Ellis,* which is referred to herein as the "<u>Retention Order</u>"] contains no limitation on K&E's hotel rates. Therefore, the Debtors believe that these charges are appropriate and reasonable, and that a ceiling for hotel rates is not appropriate.

We appreciate the response. However, we maintain that the recommended ceilings are both fair and well established. We thus recommend a reduction of $562.21 for these hotel expenses.

9.      We noted two (2) overtime transportation charges that may be excessive. The entries are provided below.

| | | |
|---|---|---|
| 6/18/2004 | 122.85 | Crown Coach - Overtime Transportation, Jonathan Friedland |
| 6/18/2004 | 143.00 | Crown Coach - Overtime Transportation, Audrey P. Johnson |

While there are a number of overtime transportation charges listed in the application, all but these two fall into the $10-$20 range. We asked the firm to detail any extraordinary circumstances surrounding these charges to explain why they should not be viewed as excessive. K&E responded as follows:

> The Initial Report questions whether two (2) overtime transportation charges (Crown Coach charges in the amounts of $122.85 and $143.00 on June 18, 2004 for Jonathan Friedland and Audrey Johnson, respectively) may be excessive. Both of the overtime transportation charges relate to car service transportation home for the respective individuals on June 18, 2004. On the day in question (a Friday) Mr. Friedland billed over 8 hours to Grace, and both he and Ms. Johnson, his secretary, were traveling home after 9 pm in the evening. Pursuant to firm policy, individuals that work past 9 pm are entitled to take a "Crown Car" home. Mr. Friedland and Ms. Johnson each took cars to their respective homes. This is consistent with the Retention Order and the engagement agreement between K&E and the Debtors.

We appreciate the explanation and offer no objection to these expenses.

10.      We noted two (2) travel meals for which costs appear excessive. The entries are provided below.

4/18/2004      137.57 David Bernick P.C., Travel Meal, Washington, DC, 04/18/04, (Court
                     Hearing)

4/19/2004       69.96 David Bernick P.C., Travel Meal, Washington, DC, 04/19/04, (Court
                     Hearing)

We recommend reasonable ceilings of $15 per person for breakfast, $25 for lunch and $50 for

dinner.

We asked K&E to provide greater detail regarding these meal expenses.  K&E responded as follows:

> The Initial Reports questions two (2) travel meals that may be excessive ($137.57
> billed by David Bernick on April 18, 2004 and $69.96 billed by David Bernick on
> April 19, 2004) and suggests implementing ceilings of $15 per person for breakfast,
> $25 for lunch, and $50 for dinner.  Both of these travel dinners are consistent with
> the Retention Order and engagement agreement between K&E and the Debtors, as
> both of these documents do not place limitations on the cost of such meals.  K&E
> does not believe that implementing an arbitrary "ceiling" is appropriate.  K&E
> professionals often are called to work and travel at times when locating food-
> providers is difficult.  Under these circumstances, they are sometimes forced to pay
> (i) a premium for convenience and/or (ii) additional expenses for delivery or room
> service.  It is unreasonable to place arbitrary limitations that may often be less than
> the available meal options.

We appreciate the response but again maintain that the suggested parameters are reasonable.  We

thus recommend a reduction of $107.53 in expenses.

11.    We noted three (3) working group meals for which costs may be excessive.  The

entries are provided below.

8/16/2004      1,202.22        David Bernick P.C., Working Group Meal/ K&E & Others, Chicago,
                              IL,
                              08/16/04, (Negotiations), Negotiation Meeting re Ninth Circuit Libby
                              Appeal

8/25/2004       744.15         FESTIVE FOODS - Working Meals/K&E and Others - Lunch for
                              working meeting with the Asbestos PD Committee on 8/25/04
                              (Approximately 20 people)

9/16/2004       112.79         Janet Baer, Working Group Meal/K&E and Others, Chicago, IL,

09/16/04, (Meeting)

We asked K&E to provide greater detail regarding these expenses.  K&E responded as follows:

> The first meal ($1,202.22, billed by David Bernick, P.C. on August 16, 2004) represents the costs of a negotiation dinner that was held on August 16, 2004 between representatives of the Debtors and the PI Committee in the Ninth Circuit Libby appeal.  First, $520 of this amount went to audio/visual labor, which was needed to assist with presentations given during the course of the meal.  Therefore, only $682.22 of this amount was for food and beverages.  Second, this meal was attended by eight people, including Mr. Bernick, Jonathan Friedland, two Grace representatives, and four consultants and outside counsel that were involved with this matter.  Therefore, the costs of the meal, itself, was only $85.28/person.
>
> The second meal ($744.15 on August 25, 2004) represents the cost for food and beverage service for a negotiation meeting that was held between the Debtors and the Asbestos PD Committee to negotiate a potential settlement of asbestos PD claims.  The meeting was attended by employees of the Debtors, three K&E attorneys, and representatives for the Asbestos PD Committee.  In total, there were approximately 20 people in attendance, which makes the average-cost per-person $37.21, which is very reasonable, given that the cost represents the cost of food, delivery, set-up, and clean-up.
>
> The third meal ($112.70, billed by Janet Baer on September 16, 2004) represents a working meal among Ms. Baer, Mr. Blatnick and Mr. Nacca.  Specifically, the mealtime discussion concerned (i) a summary of the events that had transpired throughout the Grace bankruptcy case, (ii) the status of the case, and (iii) Mr. Nacca's prospective responsibilities in the case.  Ms. Baer and Mr. Blatnick are the partner and associate, respectively, that are primarily responsible for day-to-day Grace bankruptcy matters, so their attendance was necessary.

We appreciate the response.  For the August 16 entry, we recommend a reduction of $282.22.  For the  August 25 entry, we recommend a reduction of $244.15.  For the September 16 entry, we recommend a reduction of $37.70.  Thus for the three entries cited, we recommend a reduction of $564.07 in expenses.

12.    Finally, we noted an overtime meal charge that may be excessive.  The entry is

provided below.

9/21/2004        82.16    Samuel Blatnick, Overtime Meal-Attorney, Chicago, 09/21/04,
                                  (Overtime Meals)

We asked K&E to provide greater detail regarding this expense.  The firm responded as follows:

>   The Initial Reports questions whether an overtime meal ($82.16 meal billed by
>   Samuel Blatnick on September 21, 2004) was excessive.  This expense relates to an
>   overtime dinner for Samuel Blatnick, Tiffany Wood, and Tracy McCollom.
>   Therefore, the average cost for each person was only $27.39.

We appreciate the explanation and offer no objection to this expense.

## CONCLUSION

13.        Thus we recommend approval of fees totaling $2,298,879.00 ($2,306,619.50 minus

$7,740.50) and costs totaling $105,176.56 ($106,410.37 minus $1,233.81) for K&E's services from

July 1, 2004, through September 30, 2004.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
        Warren H. Smith
        Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 1275
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 7th day of March, 2005.

_____
Warren H. Smith

**SERVICE LIST**
<u>Notice Parties</u>

**The Applicant**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

**The Debtors**
David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones,
P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of
Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of
Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price &
Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of
Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE  19801

**Official Committee of Equity Holders**
Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

Exhibit A

| | | | |
|---|---|---|---|
| 09/16/04 | JSB | 2.50 | ..........; attend to various questions re Gerard appeal, Gerard's motions re same and preparation for oral argument (.7);........... |
| 09/16/04 | CL | 6.00 | ............; prepare for oral argument (2.0). |
| 09/17/04 | CL | 0.80 | Review materials in preparation for oral argument in Gerard Appeal. |
| 09/19/04 | CL | 2.50 | Prepare for moot court in preparation for Gerard Appeal. |
| 09/20/04 | EBW | 1.50 | Participate in moot court for Third Circuit Gerard Appeal. |
| 09/20/04 | CL | 8.30 | Prepare for and participate in moot court in preparation for Third Circuit oral argument in Gerard Appeal. |
| 09/21/04 | CL | 8.50 | Prepare for Third Circuit oral argument in Gerard Appeal. |
| 09/22/04 | CL | 4.30 | Prepare for Third Circuit oral argument in Gerard Appeal. |
| 09/23/04 | EBW | 3.00 | Prepare for and participate in moot court for Gerard oral argument. |
| 09/23/04 | CL | 4.30 | Participate in second moot court in preparation for Gerard Third Circuit oral argument (2.3); continue preparation for same (2.0). |
| 09/24/04 | JSB | 2.60 | Review pleadings re injunction motion in preparation for hearing on same (2.0);............... |
| 09/24/04 | EBW | 1.00 | Prepare for oral argument before Third Circuit. |
| 09/24/04 | CL | 7.30 | Prepare for oral argument in Third Circuit Gerard Appeal. |
| 09/26/04 | EBW | 3.50 | Prepare for Third Circuit argument. |
| 09/27/04 | JSB | 2.80 | Attend 3rd circuit oral argument on Gerard appeal (2.0);..... |
| 09/27/04 | EBW | 1.50 | Attend Gerard oral argument before Third Circuit. |
| 09/27/04 | CL | 3.50 | Prepare for and present oral argument for Gerard in Third |

|          |     |      | Circuit (2.0); discuss same with team; return to Washington (1.5). |
|----------|-----|------|---|
| 09/26/04 | JSB | 1.00 | Travel to Philadelphia for 3rd Circuit argument on Gerard appeal and September omnibus hearing (half time). |
| 09/26/04 | CL  | 2.50 | Travel to Philadelphia for Gerard oral argument in Third Circuit (half time). |
| 09/27/04 | JSB | 2.40 | Travel from Philadelphia to Wilmington for September omnibus hearing (.4); travel from Wilmington back to Chicago after September omnibus hearing (2.0) (half time). |
| 09/27/04 | EBW | 1.50 | Travel to Gerard oral argument before Third Circuit (half time). |
| 09/27/04 | CL  | 2.50 | Return travel to Washington from oral argument (half time). |

Exhibit B

On August 4, 2004, ten (10) firm members participated in conference calls  The total time spent including any preparation time was 15.70 hours for a total fee of $7,668.50.

| 08/04/04 | JF | 4.60 | ........; internal telephone conference followed by telephone conference with Client (1.3); telephone conference with Blackstone (2.0);.......... |
|---|---|---|---|
| 08/04/04 | DDB | 2.80 | Participate in various calls re strategic issues re plan filing (2.0);......... |
| 08/04/04 | JSB | 1.00 | ..........; confer with professionals and R. Finke re plan status (.6). |
| 08/04/04 | BLS | 5.30 | ..........; conference call with K&E team, Blackstone and Richard Fisk re same (.4);........... |
| 08/04/04 | RBB | 11.90 | ..........; prepare for and participate in telephone conferences with K&E, Company and Blackstone re plan development and strategy (1.3);............ |
| 08/04/04 | LS | 3.90 | ..........; participate in weekly telephone conference with client and K&E team (.5); telephone conference with Blackstone (2.2);........... |
| 08/04/04 | TJM | 4.60 | Participate in telephone conferences with Grace team and client (1.5);........ |
| 08/04/04 | JCN | 4.70 | ..........; telephone conference with Blackstone and client re same (.4);....... |
| 08/04/04 | SB | 2.50 | Conference call with Grace team re reorganization plan and process (.5);........... |
| 08/04/04 | TLF | 3.00 | Review and conferences on various legal issues and structuring issues in connection with drafting plan. |

On August 11, 2004, nine (9) firm members participated in a conference call  The total time spent including any preparation time was 22.40 hours for a total fee of $11,766.50.

| 08/11/04 | JF | 3.80 | ..........; team telephone conference with Client (2.0). |
|---|---|---|---|

| 08/11/04 | DDB | 2.60 | Participate in telephone conference re plan and disclosure statement issues (2.0);....... |
| 08/11/04 | JSB | 3.60 | Review materials re preparation of plan strategy call (1.6); participate in call re same (2.0). |
| 08/11/04 | BLS | 2.20 | Conference call re plan outline and initial sequence outline with K&E team, Blackstone team and Richard Finke. |
| 08/11/04 | RBB | 8.50 | Telephone conferences with client and other K&E plan team re plan confirmation planning and development (2.5);........ |
| 08/11/04 | LS | 4.90 | ........; telephone conference with client and K&E attorneys re plan (2.0). |
| 08/11/04 | JCN | 2.30 | Prepare for and participate in telephone conference with client, Blackstone and K&E re plan development. |
| 08/11/04 | SB | 4.00 | Prepare for and participate in conference call re strategy for plan, disclosure statement and related pleadings (2.0);........ |
| 08/11/04 | TLF | 3.50 | Calls and review of materials on plan. |

On August 12, 2004, eight (8) firm members participated in a conference call  The total time spent including any preparation time was 23.00 hours for a total fee of $11,511.50.

| 08/12/04 | JF | 6.80 | ..........; including telephone conference with team and Client re plan outline (3.0);......... |
| 08/12/04 | JSB | 2.20 | Confer with R. Finke, Blackstone and debtors' professionals re plan outline. |
| 08/12/04 | BLS | 8.70 | Telephone conference with K&E team, Blackstone team and R. Finke re walk through of draft plan outline (3.0);...... |
| 08/12/04 | RBB | 12.70 | Telephone conferences with client, Blackstone and K&E plan team re plan confirmation issues and planning (2.9);........ |
| 08/12/04 | LS | 6.60 | Telephone conference with K&E and client (2.9);........ |
| 08/12/04 | JCN | 10.60 | Telephone conference with K&E, Client and Blackstone re plan structure (3.0);.......... |

| 08/12/04 | SB | 3.00 | Office conference call re Grace plan and treatment of classes. |
| 08/12/04 | TLF | 3.50 | Additional conference on plan and related materials (3.0);........ |

On August 16, 2004, eight (8) firm members participated in a conference call  The total time spent including any preparation time was 16.50 hours for a total fee of $8,466.00.

| 08/13/04 | JCN | 11.80 | .........; telephone conference with B. Spiegel re questions for 8/16 telephone conference (.3);......... |
| 08/15/04 | BLS | 5.20 | Telephone conference with J. Nuckles and J. Friedland re review most current draft tactical sequence outline in preparation for August 16, 2004 telephone conference re same (1.8);......... |
| 08/16/04 | JF | 9.80 | Telephone conference with D. Bernick and team re sequencing issues (1.5);............ |
| 08/16/04 | BLS | 6.40 | ...........; telephone conference with D. Bernick, plan sub-team, T. Freedman, other K&E team lawyers re tactical sequencing outline issues for plan (1.0);.......... |
| 08/16/04 | RBB | 11.00 | ............; telephone conferences with K&E team re plan development issues (2.9). |
| 08/16/04 | LS | 3.00 | Participate in internal K&E telephone conference with D. Bernick (1.5);.......... |
| 08/16/04 | JCN | 10.20 | Telephone conference re plan and CMO issues (1.5);........ |
| 08/16/04 | SB | 1.50 | Conference call with K&E Grace team to discuss plan. |
| 08/16/04 | TLF | 3.50 | Prepare for and participate in conference call on plan drafting and strategic and legal issues related to plan with B. Spiegel and other parties. |
| 08/16/04 | EL | 1.00 | Participate in team conference call re treatment of asbestos claims in plan. |

On September 14, 2004, seven (7) firm members participated in a conference call  The total time spent including any preparation time was 18.60 hours for a total fee of $10,072.00.

| 09/14/04 | JF | 10.80 | ...........; participate in client's weekly internal call (3.5);........ |
|---|---|---|---|
| 09/14/04 | DDB | 1.80 | .............; participate in telephone conference re status (.7). |
| 09/14/04 | JSB | 4.00 | Participate in Grace call re plan and disclosure statement and detailed comment to same (3.5);................ |
| 09/14/04 | BLS | 7.20 | Telephone conference with client management and Blackstone representatives and K&E plan group re detailed review of first draft of plan (3.7);........ |
| 09/14/04 | LS | 5.90 | Telephone conference with client re plan and comments to same (2.8);............... |
| 09/14/04 | SB | 3.70 | Participate in call with Grace and K&E plan and disclosure statement teams re issues with respect to plan and disclosure statement. |
| 09/14/04 | TLF | 4.00 | Conference call on plan (.7);.............. |

On September 29, 2004, five (5) firm members participated in a conference call  The total time spent including any preparation time was 26.80 hours for a total fee of $14,840.50.

| 09/29/04 | JSB | 7.00 | Participate in call with clients and professionals re comments re plan, disclosure statement and related draft documents. |
|---|---|---|---|
| 09/29/04 | BLS | 8.60 | Telephone conference with client, K&E and Blackstone team re detailed review of Asbestos Trust Agreement and draft plan and proposed revisions to same (6.6);...... |
| 09/29/04 | JHS | 7.20 | .............; participate in telephone conference re revisions to plan and Trust Agreement with client and B. Spiegel, J. Friedland, J. Baer, L. Sinanyan and R. Bennett (5.6);.......... |
| 09/29/04 | RBB | 5.20 | ..........; telephone conference re plan development with Company (2.1). |
| 09/29/04 | LS | 14.10 | Telephone conference with client re comments to plan (5.5);.............. |

Exhibit C

On July 26, 2004, JF has a time entry listed as 9.50 hours for a total fee of $5,035.00.  The parenthetical entries total only 9.00 hours for a fee of $4,770.00.  Difference in fee totals is $265.00.

| | | | |
|---|---|---|---|
| 07/26/04 | JF | 9.50 | Telephone conference with R. Bennett re plan confirmation research (1.0); telephone conference with L. Sinanyan and others re extranet and re term sheet (1.7); review plan precedent (3.5); analyze legal issues related to plan development and confirmation (2.8). |

On July 276, 2004, JF has a time entry listed as 7.10 hours for a total fee of $3,763.00. The parenthetical entries total only 6.50 hours for a total fee of $3,445.00. Difference in fee totals is $318.00.

| | | | |
|---|---|---|---|
| 07/27/04 | JF | 7.10 | Prepare for telephone conference with Client (1.5); telephone conference with T. Freedman re various plan development issues (.3); telephone conference with J. Baer and T. Freedman and others in preparation for telephone conference with Client (.5); review powerpoint presentation re plan structure and implementation (1.7); telephone conference with Client re same (1.7); telephone conference with R. Bennett, T. Freedman, J. Nuckles and L. Sinanyan re revised powerpoint presentation re plan structure and implementation (.8). |

On August 6, 2004, ARR has a time entry listed as 3.40 hours for a total fee of $1,785.00. The parenthetical entries total only 0.70 hours for a total fee of $367.50. Difference in fee totals is $1,417.50.

| | | | |
|---|---|---|---|
| 08/06/04 | ARR | 3.40 | Revise draft response brief in opposition to the appeal of the appointment of D. Austern as futures representatives (.3); participate in internal Kirkland conference to review status of case assignments (.4). |

On August 16, 2004, JF has a time entry listed as 9.80 hours for a total fee of $5,194.00. The parenthetical entries total only 8.80 hours for a total fee of $4,664.00. Difference in fee totals is $530.00.

| | | | |
|---|---|---|---|
| 08/16/04 | JF | 9.80 | Telephone conference with D. Bernick and team re sequencing issues (1.5); telephone conference with B. Spiegel re debrief (.1); revise powerpoint presentation (.5); office conferences with Committees re various plan issues (6.0); telephone conference with B. Spiegel re same (.7). |

On September 19, 2004, JBM has a time entry listed as 7.50 hours for a total fee of $900.00. The parenthetical entries total only 7.00 hours for a total fee of $840.00. Difference in fee totals is $60.00.

| 09/19/04 | JBM | 7.50 | Review retrieved pleadings re Zonolite Attic Insulation litigation and label and index same (2.5); create binder index and revise for attorney review (2.0); review docket re accuracy of index (.5); conform hard copies of pleadings to binder index (.5); prepare original set of pleadings for duplication and distribution (1.5). |

On September 1, 2004, BLS has a time entry listed as 9.20 hours for a total fee of $6,302.00. The parenthetical entries total only 7.20 hours for a total fee of $4,932.00. Difference in fee totals is $1,370.00.

| 09/01/04 | BLS | 9.20 | Review revised memorandum re 1129(b) issues for J. Nuckles and telephone conference with J, Nuckles re same (.4); telephone conferences and emails with R. Bennett re preparation of execution summary re legal issues (.5); conference with L. Sinanyan re drafting of plan (1.1); preparation of 1129(b) memorandum with J. Nuckles (2.2); numerous telephone conferences and emails re same (1.0); telephone conference with J. Friedland re timing and logistics re legal memoranda (.1); draft plan related documents (.7); telephone conference with J. Nuckles re status of legal issues memoranda (.2); telephone conference with J. Nuckles re second memorandum re 1129(b) issues (1.0). |

On September 20, 2004, RBB has a time entry listed as 7.00 hours for a total fee of $2,835.00. The parenthetical entries total only 6.50 hours for a total fee of $2,632.50. Difference in fee totals is $202.50.

| 09/20/04 | RBB | 7.00 | Prepare, edit and revise ballots, master ballots and voting instructions for solicitation of impaired classes (4.4); prepare for and participate n telephone conferences with J. Friedland, L. Sinanyan, J. Nickles and B. Spiegel re plan development (.7); research state law preclusion effect of plan confirmation order related to provisions in charter re securities issuance (.9); research ability to exercise un assumed stock options (.5). |

On September 22, 2004, BLS has a time entry listed as 7.10 hours for a total fee of $4,863.50. The parenthetical entries total only 6.80 hours for a total fee of $4,658.00. Difference in fee totals is $205.50.

| 09/22/04 | BLS | 7.10 | Review Fresenius Settlement Agreement and order approving same (1.0); telephone conference with J. Friedland re report |

on telephone conference with client re substantive consolidation issues (.1); preparation of memo to D. Bernick re notable issues re plan development and T. Freedman comments per same (.2); conference with L. Sinanyan re review of collective comments to draft plan and preparation of further revisions as per same (2.4); review J. Sloan revised draft Trust Agreement (1.0); prepare further comments and proposed revisions (.9); reconcile with updated plan draft (.3); transmit to J, Sloan (.1); review J. Friedland draft highlights to memo to D. Bernick and prepare comments (.2); telephone conference with J. Friedland re same and deliverables to client, schedules re same (.6).

Response Exhibit 1

The Initial Report requests greater explanation concerning time billed for conference calls that were held over the course of six days. Each of these conference calls concerned matters that pertain to the Debtor's plan of reorganization, disclosure statement, motion for estimation of asbestos claims, trust distribution procedures, motion for entry of a case management order, and plan confirmation procedures order (collectively, the "Plan Documents"). Collectively, the Plan Documents address all of the Debtors' liabilities, including asbestos-related liabilities. Due to the expansive scope of this project, various K&E professional were assigned to each task. Further, given the importance of each of the Plan Documents to the Debtors' successful reorganization, K&E invested a great deal of time in researching precedent from other cases and investigated the various plan-models that could be pursued in this bankruptcy case.

Therefore, several steps were necessary before K&E could begin the drafting of any of the Plan Documents. First, an overall strategy had to be developed. This involved the senior management of the Debtors, K&E and the Blackstone Group (Grace's financial advisors) working together to create a detailed, visually-oriented document that set forth a basic vision for a plan and a critical path to achieve that vision. At K&E, four attorneys were principally involved in this process: David Bernick, Ted Freedman, Bennett Spiegel, and Jonathan Friedland.

You are, of course, familiar with David as the quarterback of the Grace team. You may also be somewhat familiar with Ted, as he is one of K&E's resident experts on asbestos-related matters, whose expertise has been drawn upon from time to time throughout this bankruptcy case. Bennett and Jonathan (a senior and junior partner, respectively) were brought in (along with certain junior attorneys) to do as much of the "heavy lifting" as possible in drafting the core bankruptcy documents discussed above. Bennett and Jonathan have worked together closely for nearly a year, and together led the confirmation team in another, recently confirmed chapter 11 case in Delaware.

Once the preliminary vision had been established, several other K&E attorneys and paraprofessionals were brought in to make sure that vision was properly implemented. In particular, Janet Baer, the Partner responsible for managing the day-to-day matters in the Grace bankruptcy case, is charged with responsibility for making sure the Plan Documents are developed in a manner that is consistent with the Debtors' reorganization goals. Ms. Baer is also the partner overseeing and reviewing work on the disclosure statement.

- Deanna Boll, is a senior associate with extensive experience in other reorganization plans that include 524(g) injunctions. She has assisted with the development of the plan and other Plan Documents.

- Ryan Bennett drafted the confirmation procedures motion and order and undertook extensive research concerning 524(g) reorganization plans and related matters.

- Lori Sinanyan is the senior associate principally responsible for drafting the disclosure statement and significant portions of the Plan. Given the shear length of the document,

and the need to respond to a myriad of objections and concerns, she is being assisted by Andrea Johnson, a junior K&E associate.

- Salvatore Bianca is the associate that is principally responsible for issues relating to estimation of the Debtors' asbestos claims; he is being assisted by Joseph Nacca, a junior K&E associate.

- Sam Blatnick, the K&E associate that handles most of the day-to-day matters in Grace, is assisting on a myriad of the aforementioned tasks, on an "as needed" basis.

- Tracy McCollom is the paralegal that was principally responsible for locating and compiling precedent from other asbestos-related bankruptcies which were used to assist in developing the Grace Plan documents.

K&E made the conscious decision that it was more advantageous to have each of the aforementioned parties participate in the various calls, rather than relying upon information to "flow down" after the calls had concluded. The benefits from this approach were two-fold. First, this approach provided greater accuracy and consistency throughout the Plan Documents. Since the Plan Documents reflect a single, unified vision for reorganization, this approach provided assurance that each of the documents is consistent with the remaining Plan Documents and further the Debtors' unified vision for reorganization. Second, given the size and complexity of the tasks, K&E determined that it would be less expensive to have parties participate in these calls, rather than relying upon back-end communications for the information to flow to the appropriate parties.

It was necessary for the various participants to participate in each of the six groups of conference calls identified in paragraph 6 of the Initial Report. On August 4, 2004, August 11, 2004, and August 12, 2004, there were a series of calls between the K&E lawyers (exclusively), the K&E lawyers with Grace representatives (Richard Finke), and the K&E lawyers with both Grace and Blackstone. These calls focused on fundamental plan issues, including the determination of what pleadings needed to be filed, approaches taken in other cases, and the valuation of Grace and its asbestos liabilities. Given the importance of these fundamental issues on the drafting of the plan documents, as well as the legal research that needed to be conducted to ensure that these concepts were accurately reflected within the plan documents, almost every member of the K&E plan team participated in at least a portion of these calls. Accordingly, ten K&E professionals participated in the first call, nine (9) in the second day of calls, and eight (8) in the third. At the conclusion of these conferences, the global collection of necessary pleadings had been determined, and the corresponding assignment of responsibilities had been made. The next phase in the plan-development process focused on pursuing the goals that had been established during the aforementioned (and other) conference calls and meetings. Accordingly, the calls held on August 16, 2004 (and time billed in preparation for these calls) only involved K&E members, and they focused on "tactical sequencing" and "plan development issues." At around this time, a weekly conference call was also implemented, during which time all K&E "plan team" professionals, Grace representatives, and Blackstone professionals would convene to discuss the status of every open item that related to the plan documents. In this respect, 3.5 of the hours billed by K&E professionals for

conference calls on September 14, 2004 relate to one such weekly-conference call.  The length of these weekly conference calls varied dramatically throughout the plan-development process.  This call was particularly lengthy, as it was held one month before Grace's original deadline to file its plan, and there was a greater sense of urgency with respect to "tying up" all open-items.