UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE


IN RE:                          . Case No. 01-01139(JKF)
                                . Chapter 11
                                . Jointly Administered
  W.R. GRACE & CO., et al.,     .
                                . 5414 USX Tower Building
                                . Pittsburgh, PA 15222
                Debtors.  .
                                . February 28, 2005
. . . . . . . . . . . . . . . . 11:57 a.m.


TRANSCRIPT OF MOTION HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtors:            Kirkland & Ellis, LLP
                            By:  JANET S. BAER, ESQ.
                                 DAVID M. BERNICK, ESQ.
                            Aon Center
                            200 East Randolph Drive
                            Chicago, IL  60601
                            (Mr. Bernick Telephonically)


For the Debtors:            Pachulski, Stang, Ziehl, Young,
                             Jones & Weintraub, P.C.
                            By:  DAVID W. CARICKHOFF, JR.,
                                 ESQ.
                            919 Market Street
                            16th Floor
                            P.O. Box 8705
                            Wilmington, DE  19899


Audio Operator:            Cathy Younker


Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**

APPEARANCES (Cont'd.):

| | |
|---|---|
| For Maryland Casualty: | Connolly Bove Lodge & Hutz LLP<br>By:  JEFFREY C. WISLER, ESQ.<br>The Nemours Building<br>1007 North Orange Street<br>Wilmington, DE  19801 |
| For Continental Casualty: | Ford Marrin Esposito Witmeyer<br> & Gleser, L.L.P.<br>By: ELIZABETH DECHRISTOFARO, ESQ.<br>Wall Street Plaza<br>New York, NY  10005 |
| For Sealed Air Corporation: | Skadden, Arps, Slate, Meagher<br> & Flom, LLP<br>By:  MARK S. CHEHI, ESQ.<br>One Rodney Square<br>P.O. Box 636<br>Wilmington, DE  19899 |
| For OneBeacon and Seton: | Drinker Biddle & Reath LLP<br>By:  ANDREA L. D'AMBRA, ESQ.<br>One Logan Square<br>18th & Cherry Streets<br>Philadelphia, PA  19103 |
| For OneBeacon and Seton: | Drinker Biddle & Reath LLP<br>By:  DAVID P. PRIMACK, ESQ.<br>1100 N. Market Street<br>Suite 1000<br>Wilmington, DE 19801 |
| For Unsecured Creditors'<br>Committee: | Stroock & Stroock & Lavan, LLP<br>By:  KENNETH PASQUALE, ESQ.<br>180 Maiden Lane<br>New York, NY  10038 |
| For the Equity Committee: | Kramer, Levin, Naftalis &<br> Frankel, LLP<br>By:  GARY BECKER, ESQ.<br>      PHILLIP BENTLEY, ESQ.<br>919 Third Avenue<br>New York, NY  10022<br>(Mr. Bentley Telephonically) |
| For the Equity Committee: | Klett Rooney Lieber & Schorling<br>By:  TERESA K.D. CURRIER, ESQ.<br>The Brandywine Building<br>1000 West Street<br>Suite 1410<br>Wilmington, DE  18901 |

APPEARANCES (Cont'd.):

For the State of Montana:        Monzack and Monaco, P.A.
                                 By:  FRANCIS A. MONACO, JR., ESQ.
                                 400 Commerce Center
                                 Twelfth & Orange Streets
                                 Wilmington, DE  19899

For the Future Claimants         Swidler Berlin
Representative:                  By:  RICHARD WYRON, ESQ.
                                 The Washington Harbour
                                 3000 K Street, NW, Suite 300
                                 Washington, D.C. 20007

For the personal injury          Caplin & Drysdale, Chartered
claimants' committee:            By:  KIMBERLY N. BROWN, ESQ.
                                 One Thomas Circle, N.W.
                                 Washington, DC  20005

For the Van Cott 401(k) Plan     Landis Rath & Cobb, LLP
and PacifiCorp:                  By:  RICHARD S. COBB, ESQ.
                                 919 Market Street
                                 Wilmington, DE  19801

For the Asbestos Personal        Campbell & Levine, LLC
Injury Committee:                By:  MARK T. HURFORD, ESQ.
                                 800 N. King Street
                                 Suite 300
                                 Wilmington, DE  19801

For the U.S. Trustee:            Office of the U.S. Trustee
                                 By: FRANK PERCH, III, ESQ.
                                 601 Walnut Street, Room 950W
                                 Philadelphia, PA  19106
                                 (Telephonic Appearance)

For the Asbestos Property        Ferry, Joseph & Pearce, P.A.
Damage Committee:                By:  Theodore J. TACCONELLI, ESQ.
                                 824 Market Street
                                 Suite 904
                                 P.O. Box 1351
                                 Wilmington, DE  19899

For the Asbestos Property        Bilzin Sumberg Baena Price
Damage Committee:                 & Axelrod LLP
                                 By:  JAY M. SAKALO, ESQ.
                                     SCOTT L. BAENA, ESQ.
                                 Wachovia Financial Center
                                 200 South Biscayne Boulevard
                                 Suite 2500
                                 Miami, FL  33131
                                 (Telephonic Appearances)

**J&J COURT TRANSCRIBERS, INC.**

APPEARANCES (Cont'd.):

For London Market Insurers:    Linklaters
                               By:  MARY K. WARREN, ESQ.
                                    BRENDA DILUIGI, ESQ.
                               1345 Avenue of the Americas
                               19th Floor
                               New York, NY 10105

For David Austern:             Swidler Berlin, LLP
                               By:  MONIQUE D. ALMY, ESQ.
                               The Washington Harbour
                               3000 K Street, NW, Suite 300
                               Washington, DC 20007
                               (Telephonic Appearance)

For David Austern:             Swidler Berlin, LLP
                               By:  JOSEPH RADECKI, ESQ.
                                    JONATHAN BROWNSTEIN, ESQ.
                               The Chrysler Building
                               405 Lexington Avenue
                               New York, NY 10174
                               (Telephonic Appearance)

For Spaulding & Slye:          Bernkopf Goodman LLP
                               By:  BRUCE D. LEVIN, ESQ.
                               125 Summer Street
                               Boston, MA   02110
                               (Telephonic Appearance)

For Keri Evans:                Lowenstein Sandler, PC
                               By:  IRA M. LEVEE, ESQ.
                               65 Livingston Avenue
                               Roseland, NJ 07068
                               (Telephonic Appearance)

For Reaud, Morgan & Quinn:     Stutzman, Bromberg, Esserman,
                                & Plifka, PC
                               By:  DAVID J. PARSONS, ESQ.
                               2323 Bryan Street
                               Suite 2200
                               Dallas, TX  75201
                               (Telephonic Appearance)

For Royal Sun Alliance:        Wilson, Elser, Moskowitz, Edelman
                                & Dicker, LLP
                               By:  SARAH EDWARDS, ESQ.
                               3 Gannett Drive
                               White Plains, NY  10604
                               (Telephonic Appearance)

APPEARANCES (Cont'd):

For Unsecured Creditors'          Stroock & Stroock & Lavan, LLP
Committee:                        By:  ARLENE G. KRIEGER, ESQ.
                                  180 Maiden Lane
                                  New York, NY  10038
                                  (Telephonic Appearance)

For Everst Reinsurance Co.        Marks, O'Neill, O'Brien &
and McKinley Ins. Co.:             Courtney, P.C.
                                  By:  BRIAN L. KASPRZAK, ESQ.
                                  Suite 800
                                  913 North Market Street
                                  Wilmington, DE  19801
                                  (Telephonic Appearance)

For Everst Reinsurance Co.        Crowell & Moring LLP
and McKinley Ins. Co.:            By:  LESLIE A. EPLEY, ESQ.
                                  1001 Pennsylvania Avenue, N.W.
                                  Washington, DC  20004
                                  (Telephonic Appearance)

For Scotts:                       Vorys, Sater, Seymour and Pease
                                   LLP
                                  By:  ROBERT J. SIDMAN, ESQ.
                                       TIFFANY STRELOW COBB, ESQ.
                                  52 East Gay Street
                                  P.O. Box 1008
                                  Columbus, OH  43216
                                  (Telephonic Appearance)

For ZAI Additional               By:  Lukins & Annis, P.S.
Specialists Counsel:             By:  DARRELL SCOTT, ESQ.
                                  1600 Washington Trust
                                   Financial Center
                                  West 717 Sprague Avenue
                                  Spokane, WA  99201
                                  (Telephonic Appearance)

For CNA:                          Goodwin & Procter, LLP
                                  By:  DANIEL M. GLOSBAND, ESQ.
                                  Exchange Place
                                  Boston, MA  02109
                                  (Telephonic Appearance)

For Libby Claimants:              Cohn &  Whitesell LLP
                                  By:  CHRISTOPHER M. CANDON, ESQ.
                                  101 Arch Street
                                  Boston, MA  02110
                                  (Telephonic Appearance)

**J&J COURT TRANSCRIBERS, INC.**

APPEARANCES (Cont'd):

For Firemans Fund:                White and Williams LLP
                                  By:  LEONARD P. GOLDBERGER, ESQ.
                                  1800 One Liberty Place
                                  Philadelphia, PA  19103
                                  (Telephonic Appearance)

1          THE COURT:  Good afternoon.  This is the matter of W.

2  R. Grace, Bankruptcy Number 01-1139.  The list of participants

3  I have by phone is:  Kenneth Thomas, Monique Almy, Bruce Levin,

4  Ira Levee, Joseph Radecki, Jonathan Brownstein, David Parsons,

5  Sarah Edwards, Arlene Krieger, Brian Kaspzak, Leslie Epley,

6  Robert Sidman, Darrel Scott, Brenda Diluigi, Daniel Glosband,

7  Philip Bentley, Christopher Candon, and Leonard Goldberger.

8  I'll take entries of appearances of those of you in court,

9  please.

10          MR. WISLER:  Good morning, Your Honor.  Jeff Wisler

11  on behalf of Maryland Casualty Company.

12          MS. DeCRISTOFARO:  Good morning, Your Honor.

13  Elizabeth DeCristofaro on behalf of Continental Casualty --

14          THE COURT:  I'm sorry, but Mr. Wisler has the

15  microphone covered up.  I can't hear you.  That little silver

16  disk is the microphone.  So don't put anything on it, please.

17  Okay, say your name again.

18          MS. DeCRISTAFARO:  Elizabeth DiChristafaro for

19  Continental Casualty.

20          THE COURT:  Thank you.

21          MS. BAEHR:  Good morning, Your Honor.  Janet Behr on

22  behalf of the debtors.

23          MR. CHEHI:  Good morning, Your Honor.  Mark Chehi

24  from Skadden Arps, on behalf of Sealed Air Corporation.

25          MR. DOMBRA:  Good morning, Your Honor.  Andrea Dombra

1 on behalf of OneBeacon and Seton.

2          MR. PRIMACK:  Good morning, Your Honor.  David

3 Primack on behalf of OneBeacon and Seton.

4          MR. PASQUALE:  Ken Pasquale, Stroock & Stroock &

5 Lavan for the unsecured creditors' committee.

6          MR. BECKER:  Good morning, Your Honor.  Gary Becker,

7 Kramer, Levin, Naftalis & Frankel, on behalf of the equity

8 committee.

9          MR. CURRIER:  Good morning, Your Honor.  Teri Currier

10 from Klett Rooney also on behalf of the equity committee.

11          MR. MONACO:  Frank Monaco for the State of Montana.

12          MR. WYRON:  Good morning, Your Honor.  Richard Wyron

13 for the future claimants rep.

14          MS. BROWN:  Good morning, Your Honor.  Kimberly Brown

15 for the ACC.

16          MR. COBB:  Good morning, Your Honor.  Richard Cobb on

17 behalf of the Van Cott 401(k) plan, as well as PacifiCorp.

18          MR. HURFORD:  Good morning, Your Honor.  Mark Hurford

19 of Campbell & Levine on behalf of the asbestos personal injury

20 committee.

21          MR. PERCH:  Good morning, Your Honor.  Frank Perch

22 for the United States Trustee.

23          MR. TACCONELLI:  Good morning, Your Honor.  Theodore

24 Tacconelli, local counsel for the asbestos property damage

25 committee.  Your Honor, I believe that Scott Baena and Jay

**J&J COURT TRANSCRIBERS, INC.**

1  Sakalo are also on the phone this morning.

2          UNIDENTIFIED ATTORNEY:  That is correct, Your Honor.

3  Good morning.

4          MR. TACCONELLI: And that information --

5          THE COURT:  All right, good morning.

6          UNIDENTIFIED SPEAKER:  Yes, David Bernick is also on

7  the phone this morning.

8          THE COURT:  Thank you.

9          MR. WARREN:  Good morning, Your Honor.  Mary Warren

10 of Linklaters for London Market Insurers.

11         MR. CARICKHOFF:  Good morning, Your Honor.  David

12 Carickhoff from Pachulski, Stang for the debtors.

13         THE COURT:  Ms. Baer, Good morning.

14         MS. BAER:  Good morning, Your Honor.  Your Honor, the

15 first matter on the agenda today is the CitiCorp/Dell lease,

16 order to compel the debtors to assume or reject a lease.

17         THE COURT:  Okay.  Ms. Baer, could I address two

18 housekeeping matters before we get there, because I don't want

19 to forget to do them.  One is relating to Adversaries 02-2210

20 and 02-2211.  Judge Wolin had entered an order telling parties

21 to file things at Adversary 02-2210.  It appears that people

22 are still filing things at Adversary 02-2211, even though that

23 adversary has been closed.  Now, I'm not sure that it should

24 have been.  Were they supposed to have been consolidated?  I'm

25 not clear about the specific status of those two adversaries,

1  but I do know that people are improperly filing things in a

2  closed adversary, including things like applications for fees.

3  So we need to get this fixed somehow, but I'm not sure what the

4  fix is because I don't know what the problem is.

5          MS. BAER:  Yes, Your Honor, I'm assuming that's the

6  seal.  They are litigation.

7          THE COURT:  Yes.

8          MS. BAER:  The adversary complaint.  And I know that

9  we did in fact -- we have outstanding issues with respect to

10  the settlement agreement.  We have outstanding issues with

11  respect to the fee issue.  Your Honor, we can certainly work

12  with the clerk's office and try to figure out the best way to

13  do it.  As I stand here, unless you had told me, I wouldn't

14  know which one was the open one and which one was the closed

15  one.  So perhaps we can figure it out and send out some sort of

16  an order to people directing them which adversary to file them

17  in.  The Forzinius matter, of course, was resolved and that

18  should be the one that's closed, although it was a consolidated

19  adversary, so I don't know how that works.

20          THE COURT:  Okay.  Well, if it was consolidated

21  substantively it's probably going to have to be unconsolidated,

22  whatever the right word is, to void the consolidation at this

23  point if Sealed Air still has issues, but Forzinius is

24  resolved.  But I'm -- I think, Ms. Baer, if you could contact

25  the clerk's office and get that fixed, it would be a good idea,

1  but I am concerned that things may be being put on the wrong

2  docket and, therefore, notices and things may not be going out

3  properly.  So, I think somebody in your office better take a

4  look at the whole docket in both of those cases and figure out

5  whether things are in the right case.  If they are, then 2211

6  probably has to be reopened.  Otherwise, since it's closed, I

7  don't think I should be getting things filed at that adversary.

8  So  --

9          MS. BAER:  We'll look into --

10         THE COURT:  I'm sorry.

11         MS. BAER:  We'll look into it.  We'll look into it

12 and we'll take care of it and make sure that everything that's

13 been filed is put in the right place.  There are a couple of

14 important outstanding issues.  One, the approval the Sealed Air

15 settlement agreement and, two, the approval of the outstanding

16 fee applications that have now been pending for several years.

17         THE COURT:  Okay.  The second matter that I wanted to

18 raise had to do with a stipulation that came in the mail in

19 hard copy just recently, dated December 2nd of 2004 that

20 purports to resolve Claim Number 3210, which apparently has

21 never been docketed.  It's the settlement between the debtor

22 and Longacre Master Fund, which is the successor in interest to

23 Claim Number 3210.  I'm not sure why I got the original, which

24 I have, because I have original signatures.  There is no place

25 on it for court action.  It doesn't ask for any court order.

1 It's simply a stipulation resolving that claim, but it has not

2 been docketed, and I have the original.  So, why and what do

3 you want me to do with it?

4 　　　　MS. BAER:  I have no idea why you have it, so let me

5 find out.

6 　　　　THE COURT:  All right.  If you could simply let Ms.

7 Baker in my office know whether this should simply be put on

8 the docket.  If it was intended to go to the clerk for

9 docketing, I can have it docketed.  Otherwise, let me know what

10 you want me to do with this, please.

11 　　　　MS. BAER:  Thank you.  I will, Your Honor.

12 　　　　THE COURT:  All right.  And give me one second.

13 Okay.  I am going to have orders entered on Items 3 and 5.  I

14 have a question about seven.  Seven has different fees stated

15 in the motion and in the order.  So, I haven't signed the order

16 on seven because, frankly, I'm not sure what it is that the

17 debtors are asking to pay Baker Donelson as the result of these

18 expanded services.

19 　　　　MS. BAER:  Your Honor, I don't have it in front of

20 me, but my recollection is the affidavit didn't agree with

21 something, but I think the amount of money was $35,000 per

22 month.

23 　　　　THE COURT:  The -- one of them says 35; the other

24 says 25.

25 　　　　MS. BAER:  And 35 was, in fact, the correct amount.

1        THE COURT:  Okay.  I don't have the order in front of

2   me either, Ms. Baer, but I'll check it to see -- oh, wait,

3   maybe I do.  Pardon me just a second.

4        MS. BAER:  I think -- I think we do too.  I'm pulling

5   it out now.

6                          (Pause)

7        THE COURT:  No, I have the certificate of no

8   objection here, but I don't have the order.  So I'm not sure

9   what the order says with respect to fees.

10       MS. BAER:  Your Honor, the order does not have the

11  amount of fees.  It refers back to the motion, and the motion

12  did say $35,000.  It was the affidavit that had an error that

13  said 25,000, and then I believe an amended affidavit was filed,

14  correcting that amount to 35,000.

15       THE COURT:  Okay.  Well, if it was, it wasn't

16  transmitted to me.  I haven't seen it.

17       MS. BAER:  Your Honor, would you like us to get you

18  the amended affidavit with the order so that you can know that

19  it was filed, on some sort of certificate of counsel?

20       THE COURT:  Well, I think what may help is to get a

21  certification of counsel with a different order that says

22  specifically that the fee is being approved at the rate of

23  35,000 pre month.

24       MS. BAER:  We will do that, Your Honor.

25       THE COURT:  All right.  Okay.  Now it's your turn.

1  Thank you.

2        MS. BAER:  Your Honor, turning then to items Number 1

3  and 2 on the agenda, these are the CitiCorp leasing matters.

4  This was both a motion to lift the stay and a motion for

5  payment of rent.  Your Honor, we have resolved this with a

6  stipulation.  We will be paying the post-petition rent that was

7  due and owing.  That resolves the entire matter.  It resolves

8  the CitiCorp claim, and as part of that stipulation they are

9  withdrawing their proof of claim and withdrawing both of the

10 motions.

11       THE COURT:  All right.  Are you going to file

12 something with respect to that?

13       MS. BAER:  We have a stipulation to file, Your Honor.

14 Would you also like an order or would the stipulation suffice

15 to --

16       THE COURT:  I think an order would be advisable even

17 if it's just a "so ordered" line on the stipulation, so that I

18 can get these motions closed out of my system.  Otherwise, the

19 pop up on my reports periodically.

20       MS. BAER:  We'll do that, Your Honor.

21       THE COURT:  All right.  Thank you.  And this will

22 resolve one and two then, correct?

23       MS. BAER:  Yes, it will.

24       THE COURT:  Okay.  Thank you.

25       MS. BAER:  Your Honor, having entered item Number 3,

1 that takes us to item Number 4, and item Number 4, the official

2 committee of asbestos property damage claimants withdrew that

3 motion.

4          THE COURT:  Was it withdrawn on the docket?

5          MS. BAER:  It was, Your Honor.  I know that the

6 withdrawal was filed.

7          THE COURT:  Okay.

8          MS. BAER:  In fact, it's noted on the agenda as

9 Docket Item 7616 is the withdrawal.

10          THE COURT:  Okay.  Thank you.

11          MS. BAER:  Your Honor, you've entered item Number 5.

12 That takes us to item Number 6, which is the Continental

13 Casualty settlement.  Your Honor, there was one objection to

14 that.  It was filed by the asbestos personal injury committee.

15          THE COURT:  Ms. Baer, I lost your voice.

16          MS. BAER:  I'm sorry, am I still there?

17          THE COURT:  Yes, okay.  You're back again.  Thank

18 you.

19          MS. BAER:  Okay.  Your Honor, with respect to the

20 Continental Casualty motion, there was one objection.  It was

21 filed by the asbestos personal injury committee.  The asbestos

22 personal injury committee today filed a withdrawal of that

23 objection.  So there are now no objections to the motion.  Your

24 Honor, this was a settlement agreement which we did not attach

25 to the motion.  We subsequently got permission from CNA.  We

1  got signed confidentiality agreements.  We supplied information

2  to the unsecured creditors' committee, the asbestos personal

3  injury committee, the futures representative, and the Libby

4  plaintiffs.  We had conferences with all of those parties, and

5  based on that nobody other than the PI committee filed an

6  objection and that, of course, objection has now been resolved,

7  so we would ask for entry of the order.

8          THE COURT:  Why don't you file one on a COC so that

9  it's clear on the record that, in fact, the parties who were

10 served have agreed.

11         MS. BAER:  We'll do so, Your Honor.

12         THE COURT:  All right.  Thank you.

13         MS. BAER:  Your Honor, we've also -- already talked

14 about item Number 7 and we'll file a COC with that.  That takes

15 us to item Number 8.  Item Number 8, Your Honor, is the motion

16 of PacifiCorp and Van Cott Bagley Cornwall for leave to file

17 late proofs of claim.  Counsel for the plaintiffs is here.

18         MR. COBB:  Good morning, Your Honor.  Richard Cobb on

19 behalf of the movants.  Your Honor, from an administrative

20 perspective, we were trying desperately to comply with the

21 court administrative procedures.  We contacted Rachel, and she

22 advised us that the Court would like to hear brief legal

23 argument.

24         Your Honor, as the Court is aware, on a motion to

25 late file claim, and particularly in this context with respect

1 to timing and notice and what the claimants believe should have

2 been done by the debtors, we believe this is a very

3 fact-specific inquiry that will -- justice will be served in

4 other words, Your Honor, by having a full evidentiary hearing

5 after the facts have been fully developed, the parties have had

6 an opportunity to exchange their versions of the facts and

7 perhaps come up with at least some stipulated facts to present

8 to the Court.  I know --

9        THE COURT:  Well, what's the nature of the this

10 claim?  Because the debtor seems to think the debtor doesn't

11 have an obligation to list PacifiCorp at all, that there is no

12 direct claim against the debtor, so what is the nature of the

13 claim?

14        MR. COBB:  Your Honor, the nature of the claim is

15 with respect to property damage that occurred at a specific

16 piece of real estate in Salt Lake City, Utah.  PacifiCorp was

17 an owner at various times of that property.  The property  --

18 on the property, Intermountain operated a vermiculite

19 processing facility and the debtor has scheduled a claim with

20 respect to that -- this particular real estate address.  It's

21 PacifiCorp's position that it was a known creditor and,

22 therefore, deserved to receive actual notice of the bar date.

23 And that process whereby we would have -- the debtor should

24 have determined that we were a known creditor is very -- is

25 fact specific.

1          With respect to the Van Cott plan, likewise, it

2    believes it was a known creditor.  Van Cott disputes that it

3    ever received actual notice.  Your Honor may recall that in the

4    debtor's response the debtor claims that Van Cott did receive

5    actual notice of the bar date.  We're prepared to present

6    testimony that Van Cott did not receive that actual notice

7    because of a faulty address location, as well as a faulty

8    addressee, that is the bar date notice was sent to the Van Cott

9    law firm and not to the Van Cott 401(k) plan trustee.

10          And so, Your Honor, there are a number of facts here

11   that will drive the legal analysis.  Your Honor is aware, of

12   course, of the Chemtron case and the other cases that are cited

13   both by the movants and by the debtors in response, and they

14   all turn on, it seems to me, Your Honor, the Court taking a

15   look at all the factual evidence and then making a very case

16   specific determination as to whether or not the claim should be

17   permitted to be late filed.  And so I would suggest, Your

18   Honor, that the parties meet and confer.  When we're prepared

19   to request a hearing date from the Court, we'll contact Rachel.

20   We'll get that date.  And I think it's also appropriate perhaps

21   that we put in some sort of scheduling order so that this will

22   proceed forward in a structured fashion and make the most

23   efficient use of the Court's limited time.

24          THE COURT:  All right.  Well, it seems to me that

25   most of the facts ought to be able to be stipulated to.  I

1  mean, I'm not sure --

2          MR. COBB:  Well --

3          THE COURT:  At some point, you may need some

4  discovery, but I'm not sure who's going to appear to do what in

5  the case.  I mean, if your affidavits are going to say you

6  didn't get the information and discovery doesn't show that you

7  did, why do I need a witness?  File an affidavit.

8          MR. COBB:  Well, Your Honor, affidavits are hearsay,

9  and unless the debtors concede those facts, which I sincerely

10 doubt they won't, an affidavit won't be sufficient, and so we'd

11 need to bring a witness in order to present --

12         THE COURT:  Well, that's fine.

13         MR. COBB:  -- their version.

14         THE COURT:  I'm talking about -- I'm sorry, I

15 misspoke I guess.  I'm talking about with respect to your

16 direct case, and then if there's a challenge the witness can be

17 available for cross examination if that's necessary.  But I'm

18 not even sure if you're doing appropriate discovery what type

19 of cross examination there is going to be.

20         MR. COBB:  But --

21         THE COURT:  What are you going to say?  We didn't get

22 it.  Okay.

23         MR. COBB:  I understand, Your Honor.  But we --

24 specifically with respect to PacifiCorp, PacifiCorp maintains

25 the position that with a simple inquiry it would have taken

1 several minutes at no cost to the debtors.  The debtors could

2 have determined that PacifiCorp was the present owner of the

3 property at or about the time that the bar date motion should

4 have been served on the owner of that property.

5          THE COURT:  Well, I don't --

6          MR. COBB:  And that would --

7          THE COURT:  Okay.  If that's the issue, I have not

8 dealt with that issue of what inquiry notice the debtor has to

9 make, as opposed to listing the claims that the debtor had as

10 of the date that the case was filed.  It seems to me that when

11 claims are transferred it's the creditor's obligation to make

12 sure that the appropriate notices are filed with the Court, not

13 the debtor's obligation to go seek out an issue as to whether

14 or not a creditor transferred a claim that it held

15 pre-petition.  So, if I'm incorrect, give me some cases that

16 show me that.  Otherwise, I don't know that the debtor has that

17 inquiry notice.  If you've got cases that tell you -- tell me,

18 then, please, give me a brief.  I have not had to look at that

19 issue.

20          MR. COBB:  Your Honor, we would be -- we'd be pleased

21 to present the Court with briefing on this.  Your Honor, this

22 is not a claim transfer situation.  PacifiCorp believes it did

23 hold this claim, that there was no transferring among creditors

24 for pecuniary interests or otherwise of this claim.  However,

25 and I won't belabor the point, Your Honor, but we do believe

1 that the cases instruct the Court that beyond the debtor's

2 books and records may be appropriate under certain

3 circumstances.  And I do appreciate hearing the Court's

4 leanings in that respect, but we do believe --

5          THE COURT:  I don't have any leanings.  I'm asking a

6 question.

7          MR. COBB:  I understand, Your Honor.  Your Honor,

8 well, then I'll provide you the answer the movants would like

9 you to hear, and that is we do believe that in certain

10 circumstances, based upon the facts of a particular case in

11 dispute that the debtors have an obligation to go beyond the

12 mere papers, the mere books and records that they have before

13 them, and this is just that sort of case.  But that will turn

14 on, again, either the debtors accepting that it would have been

15 at virtually no cost if not -- zero cost to the debtors' estate

16 to simply place a phone call to a local abstract company in

17 Salt Lake City, based on a property address where they had

18 scheduled a claim, to determine the present owner.  So, we

19 could have that --

20          THE COURT:  Okay.  Yes, I do definitely want a brief,

21 because it seems to me that unless that present owner was the

22 same owner pre-petition that it's the creditor, i.e. the

23 owner's burden to make sure that the interest is transferred of

24 record on the Bankruptcy Court dockets.  And it's -- a proof of

25 interest is the same as a proof of claim in that regard.  So I

1  don't think the debtor has that inquiry notice, particularly

2  when there are something like 450,000 creditors involved in a

3  case.  So -- but if I'm wrong and if there in fact is case law

4  to show me that, then please set it out.  I haven't had to look

5  at that issue.

6       MR. COBB:  Thank you, Your Honor.  We would suggest

7  it's not several hundred thousand here.  There are certain

8  limited sites that the debtor would have perhaps had to make

9  this sort of inquiry, at minimal cost and minimal time.  But,

10  Your Honor --

11       THE COURT:  Maybe, but it seems to me that that's

12  splitting hairs because as soon as I require it for the debtor

13  for one property or one creditor, then why don't they have it

14  for everybody else?  And I believe that the Code specifically

15  imposes on the creditors and the interest holders the burden to

16  transfer -- to file the notices of those transfers.  So I think

17  you're not going to win on that score.  But like I said, I

18  haven't seen cases to the contrary, so if they're out there

19  give them to me.  I want to read them and analyze them.

20       MR. COBB:  Thank you, Your Honor.  We will certainly

21  do our best to persuade you in the papers.  And we will contact

22  chambers when it's appropriate to seek an evidentiary hearing.

23  Is that --

24       THE COURT:  Well, I think what I would like is to get

25  -- first of all, to hear from the debtor.  If the debtor agrees

1 that some discovery is necessary, then I'd like a schedule for

2 discovery.  I'd like a pretrial conference that will be set at

3 which the issues will be identified first, because before I set

4 an evidentiary hearing I want to find out what is agreed, what

5 isn't agreed, how much time it's going to take.  I definitely

6 will ask that you present your cases in chief by affidavit and

7 have witnesses available for cross examination.  So, let's lay

8 out that process first.  Ms. Baer?

9        MS. BAER:  Your Honor, I'm actually a little

10 surprised that Mr. Cobb thinks we need the kind of evidentiary

11 hearing he's suggesting.  I thought this was a little more

12 straightforward than that.  Your Honor, this is apparently a

13 potential environmental claim that the owners of some property

14 have against W.R. Grace.  Your Honor, Grace never owned this

15 property.  Grace never owned the operating facility on the

16 property.  Grace never owned the adjacent land.  Grace supplied

17 vermiculite to Intermountain Insulation Company, and

18 Intermountain Insulation Company was its only contact with

19 respect to this property.  Grace did schedule Intermountain

20 Insulation Company as a creditor, did give them notice of the

21 bar date.  We did not know of PacifiCorp nor did we know of Van

22 Cott Bagley and did not, therefore, list them with respect to

23 being a creditor related to anything to do with the

24 Intermountain liability.

25        We did, however, again give actual notice to

1 Intermountain.  We did give actual notice to the EPA.  The EPA

2 had, in fact, identified a site in Salt Lake City area as being

3 a site under which they were investigating.  And, Your Honor,

4 we actually did give actual notice to the Van Cott firm, as

5 indicted by Mr. Cobb, and we gave notice of the Chapter 11 case

6 to PacifiCorp, not related to the site, but in general, because

7 PacifiCorp's doing business as Utah Power & Light was, in fact,

8 a creditor of Grace and did get notice.

9        Under these circumstances, Your Honor, Grace does not

10 believe that PacifiCorp and Van Cott were known creditors

11 entitled to actual notice.  Grace, however, Your Honor, did

12 spend $4 million to do publication notice.  They published in

13 People Magazine, Parade, Newsweek, Times, The Wall Street

14 Journal, USA Today, and the local Salt Lake City papers.  Your

15 Honor, this is exactly why we did publication notice, to notify

16 unknown claimants to Grace that Grace was in Chapter 11, that a

17 bar date had been set.  And Your Honor entered a bar date order

18 finding that with respect to unknown claimants the publication

19 notice was good, adequate, and sufficient notice of the bar

20 date.  PacifiCorp and Van Cott did not file proofs of claim by

21 the bar date.  They knew they owned the property; we did not.

22 They knew that there was vermiculite that was processed on the

23 property.  We didn't know of their existence.  We knew our

24 customer and only our customer.  They also, Your Honor, knew

25 that the EPA was investigating.  The EPA listed this in the

1  EPA's proof of claim as a site that they were looking into.

2         Your Honor, I think the case law that we've cited in

3  our brief makes it very clear, under Chemtron we do not have a

4  duty to provide adjacent landowners or a duty to provide people

5  who are nearby the vicinity of a -- of even the site that Grace

6  owns with actual notice of a bar date.  And we certainly don't

7  have the obligation under the Bicoastal Authority to search out

8  successors in interest, and under Mullane v. Central Hanover

9  Bank, Your Honor, we do not have to conduct an impractical and

10 extended search to find all potential creditors of Grace.  We

11 just have to notify those that are reasonably ascertainable,

12 and in that respect we notified our customer.  That's who we

13 know may have a claim against us.

14         Your Honor, under this case law we believe the notice

15 was adequate and that the bar date order very clearly provides

16 that these kinds of unknown claimants are barred by the

17 publication notice.  Your Honor, the standard for them is

18 excusable neglect, and they have not said anything in their

19 papers vis-a-vis excusable neglect.  What they've said is we

20 should have given them actual notice.  Obviously our position

21 is that they were not entitled to actual notice.  We don't have

22 an obligation under the case law to do that, and we have

23 already cited that case law in our responsive brief.

24         In addition, Your Honor, they did actually have

25 actual notice that Grace was in Chapter 11.  They had actual

1  notice of the bar date, for different reasons, for different

2  claims, not these.  But they certainly were on notice.  And you

3  add that to the $4 million that we spent to publish notice to

4  the world, and we believe, Your Honor, that the bar date order

5  is very clear and that they're barred.

6          Your Honor, again, their standard is to prove that we

7  won't be prejudiced.  That's not case here, Your Honor.  This

8  really puts at issue our publication notice.  It puts at issue

9  the validity of publication notices and spending this kind of

10 money to do this extended kind of a program to let the world

11 know and bring unknown claimants forward to file their proof of

12 claim by the bar date.  We complied with the Court's rules and

13 under the Court's order, their claim should be barred.

14         I don't quite understand why the kind of discovery

15 that's being requested here is necessary.  They knew they owned

16 the property.  We didn't know that.  We knew that we sold

17 vermiculite to our customer.  We notified our customer, and we

18 published notice to everybody else telling them if they think

19 they have a claim against Grace, step forward and file that

20 claim by the bar date.

21         This isn't the first time you've had to deal with a

22 late proof of claim, Your Honor, and there's nothing that

23 particularly unique about this the circumstances.  For the same

24 reasons that you've denied late proofs of claim before here, we

25 believe you have sufficient evidence right now to deny the

1  filing of the late proof of claim.

2        THE COURT:  Well, I'm still not clear how there is

3  even a claim against this estate by these entities.  What

4  you're telling me is that the debtor had a relationship with

5  Intermountain by which it supplied Intermountain vermiculite.

6  Intermountain was actually the entity that had possession of

7  the property that's owned by Pacific, not the debtor.

8        MS. BAER:  That's exactly correct, Your Honor.

9        THE COURT:  Well --

10       MS. BAER:  We don't know -- we don't know either, and

11 now they want the right to file something.  That's our

12 position, that they're barred.

13       THE COURT:  Mr. Cobb, I don't see -- number one, I'm

14 not sure I see a claim, but even if I do, I don't see how the

15 debtor has any duty to search out your client under these

16 circumstances.

17       MR. COBB:  Your Honor, Richard Cobb again.  Well,

18 Your Honor, let's start with the simple fact that we're not

19 dealing with adjacent property, like the cases that are cited

20 by the debtors, and we're not dealing with personal injury

21 claimants.  We're dealing with property, the identical

22 property, that was owned by PacifiCorp and the Van Cott plan.

23       THE COURT:  But they debtor wasn't in possession of

24 it.

25       MR. COBB:  But the debtor --

1          THE COURT:  The debtor's customer was in possession

2  of it.

3          MR. COBB:  That's correct, Your Honor, but the debtor

4  put into the marketplace and the debtor knowingly shipped to

5  that location products which ended up, we allege, contaminating

6  that soil, which has resulted in significant monetary claims

7  being asserted by --

8          THE COURT:  No, that's too attenuated.  I'm sorry.

9  It's just too attenuated.  If anything, as the owner of that

10 property your client certainly had the duty to make sure that

11 it was aware of the bar date.  If it knew that Intermountain

12 was getting vermiculite from some source other than the

13 property itself, then it had a duty to seek that out and

14 determine whether or not it should file a claim here.  So, as

15 to that one, I see no basis.  I'm not permitting discovery.

16 I'm simply going to deny the late proof of claim.  This debtor

17 is well on the road toward trying to get a confirmable plan

18 together.  Having late filed claims at this point in time will

19 jeopardize that process.  It will certainly change

20 distributions to other creditors within certain classes.  The

21 claim itself seems to be highly attenuated.  I'm not even sure

22 there is an allowable claim against the estate, but I don't

23 need to go there at this point in time because obviously that's

24 not at issue today.  The only question today is whether the

25 claim should be permitted to be filed at all.  But I don't see

1  a basis for it.

2          MR. COBB:  Your Honor, I would respectfully request

3  that we be given an opportunity to present the factual evidence

4  to the Court.  The case law directly states, Your Honor, that

5  the Court is to make a factual investigation of the nature of

6  the reason why the claims were not filed timely.  Your Honor,

7  you -- Your Honor, the Van Cott plan did not have notice of the

8  bar date.  Your Honor, Van Cott plan did not even have a claim

9  that it knew that it could lodge against this debtor until well

10 after the bar date.  The Van Cott is a little different

11 factually.  With respect to PacifiCorp, PacifiCorp, under its

12 trade name, Utah Power & Light, filed something like a fifteen

13 hundred dollar claim relating to electricity, as I understand

14 it.

15         THE COURT:  That's enough isn't it?

16         MR. COBB:  Your Honor, due process requires that my

17 client had been given notice of the bar date --

18         THE COURT:  No, it doesn't.  Due process --

19         MR. COBB:  -- not general notice of the bankruptcy.

20         THE COURT:  No, due process requires that if your

21 client was a creditor known to the debtor that it had -- that

22 it get actual notice, but your client, at this point in time,

23 I'm not even convinced -- I'm talking about Pacific at the

24 moment.

25         MR. COBB:  Correct.

1          THE COURT:  I'm not convinced is a creditor of the

2  debtor, number one.  Number two, the debtor had no direct

3  relationship with Pacific.  It wasn't leasing property from

4  Pacific.  It wasn't dealing with Pacific in any kind of

5  customer capacity.  You've already said this isn't a personal

6  injury action.  Therefore, how is the debtor ever to know that

7  it has -- I mean, under that theory, everybody in the world

8  could potentially have a claim against the debtor, and the

9  debtor would have to notify every single person, entity,

10 company in the entire world that it may have a claim based on

11 some third-party transaction.  That's too much.  That's not

12 what the Code requires.  That's what the publication notice is

13 all about.  Under these circumstances, Grace did widespread

14 publication.  This is an -- if it's a creditor at all, it's a

15 clearly unknown creditor.  That publication notice as to

16 Pacific is sufficient, and I don't need any further factual

17 investigation on that score.  So that claim -- the motion as to

18 that is denied.  Now, what's the difference between Pacific and

19 Van Cott?

20         MR. COBB:  Your Honor, with respect to Van Cott, Van

21 Cott did not even know that it had a claim against the debtors

22 until well after the bar date, number one.  Number two, Van

23 Cott would provide evidence that it never received notice of

24 the bar date.  In fact, I believe Van Cott had knowledge of the

25 bankruptcy, but it may have.  I can't sit here today, Your

1  Honor, and provide testimony as a lawyer in that respect.  But

2  I can tell you that they would be prepared to testify they

3  never received notice of the bar date, so they never had actual

4  notice in that respect.

5        THE COURT:  Okay.  And the debtor's affidavits

6  indicate that, in fact, they were served, that actual notice

7  was provided --

8        MR. COBB:  The debtor's affidavits indicate, Your

9  Honor, that Van Cott, the law firm, was served at a certain

10  address, an incorrect address, and therefore they claim they

11  received actual notice.  And Van Cott would claim in response,

12  would respond by saying that the address was incorrect, it did

13  not contain the suite number of the law firm, that it should

14  have been addressed to the plan trustee, the 401(k) plan

15  trustee, because that is the claimant here, and therefore --

16  and following on that, they never received actual notice.

17        THE COURT:  All right.  Ms. Baer?

18        MS. BAER:  Your Honor, with respect to the last

19  point, our certificate of service shows that Van Cott Bagley

20  Cornwall was served at 50 South Main Street, Salt Lake City,

21  Utah.  The claimant here who filed this motion, Van Cott

22  Bagley, Cornwall, McCarthy, is located at 50 South Main Street,

23  Salt Lake City, Utah.  That law firm who filed this motion got

24  served with the bar date notice.  But, Your Honor, I'm not --

25  we didn't even have to serve them.  They are in exactly the

1 same position as PacifiCorp.  Van Cott 401(k) plan apparently

2 was also in the title of ownership of this site at one time.

3 For the same reason we didn't have to serve PacifiCorp, we

4 didn't have to serve Van Cott.  They're another unknown owner

5 who apparently is somewhere in the chain of title with respect

6 to this real property.  For the same reasons we didn't have to

7 serve PacifiCorp, we didn't have to serve them.  They were an

8 unknown owner, an unknown claimant, and just -- the publication

9 to them is just as applicable as the publication notice to

10 PacifiCorp.

11         THE COURT:  Okay.  Mr. Cobb?

12         MR. COBB:  Your Honor, I applaud counsel's acumen to

13 stand up and simply say it's the same argument.  She's right.

14 I mean, if the Court has made a finding today before we've had

15 an opportunity to present all of our factual evidence that we

16 are not entitled -- that the debtor did not have any inquiry

17 obligation outside of simply listing in its schedule the claim

18 with respect to its known customer then, if that's the Court's

19 ruling, then assuming that Van Cott was entitled to receive

20 actual notice then its claim also cannot be filed late.  And,

21 Your Honor, I have to say again I believe that all of the facts

22 should be put before the Court with respect to what type of

23 inquiry and what type of investigation and then notice the

24 debtor should have given.  Forget the publication notice --

25         THE COURT:  Why don't you give me a brief first on

1  the -- on whether or not the debtor has to do this type of

2  inquiry at all, because I still have some -- and even if the

3  debtor does, how the creditor can get around showing prejudice

4  even if the debtor doesn't do it when the creditor or interest

5  holder has an obligation under the Bankruptcy Code to file

6  transfers of interest.

7       MR. COBB:  I understand that, Your Honor.  We'd be

8  glad to do that, and I'll confer with counsel with respect to

9  timing on that.

10      THE COURT:  No --

11      MR. COBB:  It should not be a lengthy period of time.

12      THE COURT:  All right.  Then what I will do is take

13  an order that requires a brief on a certification of counsel

14  that sets out a briefing schedule on the issue of debtor's

15  inquiry notice obligation to find a current owner of a property

16  which debtor does not lease and does not use versus the

17  creditor or interest holder, whichever you choose, obligation

18  to file the transfer of claim or proof of the claim timely.  I

19  will take a look at whatever cases you've given me.  If there

20  are no cases that tell me that the debtor has this inquiry

21  notice, you already know my rulings.  I find that this is

22  prejudicial.  It's too little too late.  I don't see any

23  excusable neglect.  Number one, I'm not even sure excusable

24  neglect has been laid out.  Maybe I should clarify.  You don't

25  seem to be basing the argument on excusable neglect.  You seem

34

1  to be basing the argument on the fact that these two entities

2  have the right to actual notice, whereas all they had was

3  constructive notice, in your view.

4         MR. COBB:  Your Honor, first of all, we dispute that

5  they ever had constructive notice of the bar date --

6         THE COURT:  Well the --

7         MR. COBB:  -- number one.

8         THE COURT:  Certainly that's difficult to dispute

9  with all the publication almost worldwide in the case.  Surely

10  they had constructive notice.

11         MR. COBB:  Your Honor, we believe the law is clear

12  that if they're entitled to actual notice they're entitled to

13  actual notice.

14         THE COURT:  Okay.

15         MR. COBB:  In this instance, Your Honor, the failure

16  to provide actual notice allows the relief that we are

17  requesting.  And whether that's described as --

18         THE COURT:  That's what I'm saying.

19         MR. COBB:  Your Honor, whether that's described as

20  excusable neglect, we -- our neglect for -- our failure to file

21  is excusable because we didn't receive actual notice or it's

22  described as a due process issue we believe that, Your Honor,

23  we are entitled to the relief.  And so, Your Honor, we're happy

24  to brief this and provide the Court with whatever case law we

25  can that supports our position --

1            THE COURT:  All right.  That's fine.

2            MR. COBB:  -- and we'll do so relatively quickly.

3            THE COURT:  I'll take the brief.  Ms. Baer, is the

4   debtor going to respond?

5            MS. BAER:  Yes, Your Honor, we will take the

6   opportunity to respond.

7            THE COURT:  Okay.  I will take this matter under

8   advisement.  I do not think I need an argument.  I understand

9   the issue.  I just want to take a look at whatever cases you've

10  got, so I will take it -- no brief is to exceed 20 pages.

11           MR. COBB:  Thank you, Your Honor.

12           MS. BAER:  Thank you, Your Honor.

13           THE COURT:  And you'll submit an order that will set

14  out the schedule on a COC?

15           MS. BAER:  We will, Your Honor.

16           THE COURT:  All right.

17           MS. BAER:  I'll talk with Mr. Cobb and we'll work

18  that out.

19           THE COURT:  Thank you.

20           MS. BAER:  Your Honor, that takes us to the various

21  claims objections.  With respect to item Number 9, the fourth

22  omnibus claims objections, we have another order that simply

23  continues the few remaining contested matters.

24           THE COURT:  I'm sorry, what agenda number are you up

25  to?

1          MS. BAER:  Agenda item Number 9.

2          THE COURT:  Nine, okay.  Thank you.  All right.

3          MS. BAER:  Your Honor, we will submit all those

4     orders to you obviously.  We have them here in Delaware.

5          THE COURT:  All right.

6          MS. BAER:  So we will get them to you.  With respect

7     to agenda item Number 10, Your Honor, debtors' fifth omnibus

8     objection to claims, there was one outstanding matter.  It was

9     New England Construction Company.  Your Honor, we have entered

10    into a stipulation with New England Construction Company

11    settling their claim for $7,000.  We are filing that

12    stipulation with the court, and we will submit an order to Your

13    Honor with respect to the remainder of the matters on the fifth

14    omnibus objection.

15         THE COURT:  All right.

16         MS. BAER:  Your Honor, with respect to item Number

17    11, Massachusetts Department of Environmental Protection, we

18    are negotiating a stipulation with the Massachusetts DEP with

19    respect to their -- with respect to their liquidated

20    pre-petition claim.  And we have come to an agreement with them

21    on the allowed amount of that claim; however, we're still

22    negotiating language with them with respect to reserving rights

23    regarding contingent unliquidated claims.

24         The other thing that we are still talking to them

25    about is setoff.  And you may recall, Your Honor, probably

1  about four or five months ago, this matter came before you

2  because we were seeking to enter into an agreement with

3  Massachusetts to settle a tax matter.  Massachusetts sought to

4  set off its environmental claims against the amount it owed us

5  on the tax matter.  We never resolved that.  Instead, Your

6  Honor ordered us to see what was going on with the claims, how

7  much the claims were at, and you suggested at a minimum they

8  should pay us the difference between what they're trying to set

9  off and what they would otherwise owe us.  However, you did not

10 rule on the issue that we took up with you as to whether or not

11 they could set any of the amounts off, because we believe they

12 were not appropriate obligations to be set off because one was

13 a tax obligation from one entity; one was an environmental

14 obligation from another entity.  You never ruled on that issue,

15 Your Honor.  Massachusetts is seeking in its stipulation to be

16 permitted to exercise setoff.  The debtor is not in agreement,

17 and I would suggest perhaps this be put over to March to

18 reargue the issue, unless you would just like to take it under

19 advisement.

20         THE COURT:  No, I think on that issue I would like to

21 have it reargued.  Specifically, I think what I need to know

22 from Massachusetts is whether the tax entity and the

23 environmental entity are the same for purposes of their state

24 law.  If they are, I'm not sure why the setoff is not

25 appropriate.  If they're not, then there may be some reason why

1  the setoff isn't appropriate.  But I think from both your

2  position and Massachusetts, I need to know something about the

3  structure of the agencies.

4          MS. BAER:  Your Honor, my recollection is we did

5  brief those issues, but it's been so long I think it makes

6  sense for us to pull back out our briefs.  We'll take up the

7  issue with them.  We'll talk with them about it, and then we'll

8  plan on arguing it in March.

9          THE COURT:  All right.  That's fine.  Thank you.

10          MS. BAER:  Your Honor, we will submit an order on

11 agenda item Number 12, which is the debtors' seventh omnibus

12 objection to claims.  Most if not all of those have been

13 resolved.

14          THE COURT:  All right.

15          MS. BAER:  Your Honor, with respect to agenda item

16 Number 13, our eighth omnibus objection to claims, we had a

17 number of responses filed.  We will be continuing the matters

18 on which responses were filed and our order will seek entry of

19 judgment, if you will, resolving the objections were no

20 responses were filed.

21          THE COURT:  Okay.

22          MS. BAER:  Your Honor, that moves us along to agenda

23 item Number 14, which is status on the debtors' amended

24 disclosure statement.  Your Honor, when I was last before you

25 we had certain unresolved objections.  We have made good

1 progress since we were last before you.  We still are working.

2 We do not have all non-core related issues -- core plan related

3 issues resolved, but we're very close.  Your Honor, I'd like to

4 give you a status at this point and then suggest how to

5 proceed.

6 　　　　　With respect to unresolved objection Number 1, Sealed

7 Air matter, Your Honor, we amended the disclosure statement to

8 address the Sealed Air matter and indicated in there that the

9 debtors were not going to be opposing the Sealed Air settlement

10 agreement.  Sealed Air has indicated they are still not content

11 with the language that we have put into the disclosure

12 statement disclosing the status of the circumstances.

13 　　　　　From the debtors' perspective, Your Honor, we believe

14 we've made it very clear what our position is.  The unsecured

15 creditors' committee, however, have reserved their rights to

16 continue to object to the Sealed Air settlement agreement.

17 Your Honor, it seems to me that at this point we have a couple

18 of choices.  Number one, we could move forward and have the

19 Court hear the motion to approve the Sealed Air settlement

20 agreement.  You have jurisdiction over it.  It was transferred

21 to you by Judge Buckwalter.  And if you hear that matter, I

22 believe the issues can get resolved that way and then there

23 would no longer be a question mark, vis-a-vis the disclosure

24 statement.

25 　　　　　Your Honor, alternatively I know the unsecured

1   creditors' position is that they do not believe the Sealed Air

2   settlement agreement should be heard other than in the context

3   of confirmation of the plan because depending upon the way in

4   which unsecured creditors are treated, they may or may not have

5   an objection to the Sealed Air settlement monies going into the

6   asbestos trust.  The debtors can go either way, Your Honor.

7   And at this point in time, not knowing how they're going to

8   proceed, I don't really know what to write into the disclosure

9   statement.

10          THE COURT:  Okay.  Well, I don't have a preference.

11  I mean, I have to hear it at one point in time or another.  If

12  I do hear it, however, it would certainly be as the first leg

13  of getting the plan confirmed.  In fact, it's not customary to

14  have an evidentiary hearing with respect to a disclosure

15  statement, but simply so that we can get appropriate

16  information into the disclosure statement any ruling that I

17  made I would certainly not make final until part of the

18  confirmation order, but I think the debtor does need to know

19  what to put in.  So, I don't have a preference.  However you

20  want to do it is all right with me.

21          MS. BAER:  Your Honor, I think Sealed Air and the

22  creditors' committee both have a position.

23          THE COURT:  Mona?  We're going to keep going.

24          MR. PASQUALE:  Good afternoon, Your Honor.  Ken

25  Pasquale for the unsecured creditors' committee.  Ms. Baer

1  stated our position accurately, but let me just clarify that

2  with respect to the plan that is now being proposed, of which

3  the committee is a plan proponent, we do not have an objection

4  to the approval of the Sealed Air settlement agreement.  But

5  it's with that sole caveat that it's -- with respect to this

6  plan.  There are a number of issues that our committee has with

7  the agreement, some of which are set out in the disclosure

8  statement; others are not.  But -- and I don't want to argument

9  the settlement motion now, Your Honor.  It's not appropriate.

10 But no one would argue with the fact that the settlement is

11 contingent on confirmation of a plan that, among other things,

12 provides for 524(g) relief to the Sealed Air entity.  And, in

13 fact, the consideration to be paid is not to be paid until the

14 effective date.  So, the committee's position is that approval

15 of the settlement really can't be taken out of context of a

16 plan of reorganization.  So, with respect to the plan that's on

17 the table we would not object, but we certainly would reserve

18 the right to assert objections to the settlement as it would

19 apply to any other plan of reorganization that might appear in

20 the case.

21         THE COURT:  Well, can't the disclosure statement

22 simply say that?

23         MR. PASQUALE:  That would be fine with us, Your

24 Honor.  I don't -- Sealed Air should speak to that.  Let me

25 step aside --

1          THE COURT:  All right.

2          MR. CHEHI:  Your Honor, Mark Chehi from Skadden Arps

3  for Sealed Air.  A number of points.  One is at our last

4  disclosure statement hearing, or last hearing on the disclosure

5  statement matter, debtors' counsel represented that they would

6  be having dialogue with Sealed Air in an attempt to iron out

7  whatever wrinkles might be ironed out before we were here

8  today, and we received absolutely no communications from the

9  debtors about any of this.

10          Secondly, the plan terms themselves, Your Honor, you

11 know, refer to the Sealed Air settlement, but defines it as

12 "The agreement as amended to address the debtors' objections

13 thereto or otherwise."  And the real concern here, Your Honor,

14 is that moving forward with the plan process, the disclosure

15 statement process, incorporating plan terms that refer to plan

16 terms that have not been agreed to by Sealed Air when the

17 settlement consideration, approximately a billion dollars worth

18 of value, Your Honor, which is the lynchpin of the 524(g)

19 mechanism, is predicated on Sealed Air's agreement, it seemed a

20 bit premature to go forward with the disclosure statement

21 process, the solicitation process, without ironing out these

22 inconsistencies between the plan terms themselves as written

23 and the Sealed Air settlement terms.  And Your Honor has our

24 objection which touches upon a variety of inconsistencies, but,

25 you know, the fundamental inconsistency is that both the

1 debtors, through their own disclosure statement statements
2 about their position on the Sealed Air settlement, and the
3 committee, which has expressed reservation of rights, are
4 leaving open the possibility of asserting objections or finding
5 issues with the settlement agreement as written.  That has to
6 be resolved, you know, sooner rather than later, through either
7 discussions with the parties, so there's agreeable language in
8 the plan and the disclosure statement as it pertains to the
9 Sealed Air settlement agreement, or, you know, I guess then we
10 would have to come in on some sort of approval of the motion
11 and deal with that on the merits.

12         We were hopeful and thought that there would be a
13 path to resolving our issues prior to the disclosure statement
14 hearing today or whenever it gets concluded, but we have not
15 had that dialogue.  But these issues are very large.  They do
16 have to be addressed.  Sealed Air does not want to be, I guess,
17 a football here for the various parties.  It is very happy to
18 live with the agreement that's been struck and expects indeed
19 that it would be approved as written.  If, however, everyone is
20 sort of hedging their bets and looking to re-trade that
21 settlement agreement in some context, whether it be in this
22 current plan process, or, if the plan process changes, in some
23 other plan scenario, Sealed Air does not feel as though it
24 should be in that position of being held hostage to what are
25 really larger dynamics between the major players in the cases,

1 the various creditor constituencies, asbestos constituencies,

2 and the debtor and its equity holders.  We're --

3         THE COURT:  Well then, if that's the case, then maybe

4 I should just hear the settlement agreement, but nonetheless it

5 seems to me that final approval of that settlement agreement

6 will still be part of the plan.  Maybe I misunderstand, Mr.

7 Chehi.  I thought that the Sealed Air agreement was essentially

8 part of the 524(g) negotiation between -- I shouldn't say

9 between the debtor and Sealed Air, because I recognize that the

10 debtor wasn't party to the settlement agreement -- but

11 nonetheless Sealed Air, in order to benefit from the 524(g)

12 injunction, has to make some contribution.  This is the

13 settlement agreement that would provide that contribution in

14 exchange for the injunction, correct?  And so the relevant

15 parties to this really are the creditors who will get the

16 proceeds of this agreement.

17         MR. CHEHI:  Correct.  Correct, Your Honor.  The

18 property damage claimants' committee and the personal injury

19 asbestos claimants' committees are party, along with Sealed

20 Air, to the settlement agreement that's been before the Court

21 and is before this Court now and that clearly everybody there

22 is in sync with the program.  The debtors, however, have been

23 somewhat wavering in their support for the settlement over

24 time, and notwithstanding the statement on the record today,

25 the language of the documents, including the definition of the

1  Sealed Air settlement agreement in the plan, does not create

2  certainty about what exactly the terms are that would be part

3  of the plan, and the committee itself has reserved its rights

4  to object.  We just want to have some certainty about this

5  before we start marching down through the plan process and have

6  the dynamics there upset our settlement.

7          THE COURT:  All right.  Well, with respect to the

8  debtor, it seems to me the debtor has to take a position one

9  way or the other.  With respect to the creditors' committee, it

10 doesn't seem unrealistic that they -- that the creditors'

11 committee may support the settlement for this plan, but that if

12 the plan changes materially, may not be comfortable with all of

13 the proceeds going into the asbestos trust, I mean -- or maybe

14 even to the numbers.  I don't know.  So, I mean, the settlement

15 agreement I thought was part and parcel of this plan process.

16 If the plan changes, then I suppose parties could reserve the

17 -- at least the creditors' committee could reserve its right to

18 object.  I'm not sure how the debtor can.  It seems to me the

19 debtor, if it's going to offer a 524(g) in exchange for the

20 proceeds, has to either say, yes, I'll take it, or, no, I

21 won't.  And, in fact, so does the creditor's committee if it's

22 a co-proponent of the plan.

23          MR. CHEHI:  That's the point, Your Honor.  The

24 committee has chosen to get onboard with the debtor and be a

25 co-proponent.  Either they are coming into court and saying

1  this settlement agreement with Sealed Air is meritorious, and

2  it's meritorious today and it's really meritorious generally

3  then and should have approval or not, and, of course, people

4  seem to be saying, yes, it should be approved, although there's

5  questions about what the exact terms are to be.  They are what

6  they are.  And if everybody wants to move forward, then it

7  should be approved.  But it can't be approved as being in the

8  best interests of resolving the issues that are posed today and

9  then for I'm not sure what reasons later on in the future it

10  all of a sudden becomes a settlement that lacks merit.  Those

11  are issues that go to, you know, I think the dynamics of the

12  negotiation process between the various creditor

13  constituencies, but, you know, we're there for that settlement

14  on these terms, Your Honor.  It should be approved, and the

15  parties have to sort of live with that.  They can't have their

16  cake and eat it too.

17          THE COURT:  Well, I suppose that's true.  I think the

18  thing to do is tee up the settlement agreement for approval

19  process, and it'll either be approved or not, and then the

20  debtor will know what to put into the disclosure statement

21  about it, and so will the creditors' committee.  But I do

22  agree.  If it's in the best interest of the estate, then it is.

23  If it isn't in the best interest of the estate, it's not.  And

24  so it's a little difficult to see how it can be sometimes, but

25  not other ways.

1          MR. CHEHI:  And, Your Honor, we are happy to have

2    further discussions with the committee and with the debtor

3    about, you know, trying to resolve these things in an orderly

4    manner that would allow you to approve the settlement as

5    written in the context of a confirmation process, or we can,

6    you know, perhaps find ourselves having to go forward as you

7    suggested, in advance.

8          THE COURT:  All right.  Well --

9          MR. CHEHI:  But we just need to --

10          THE COURT:  -- I'm ordering --

11          MR. CHEHI:  -- make sure there's not any --

12          THE COURT:  I'm ordering that you get together, you,

13    the debtor's counsel, the creditors' committee counsel, to see

14    whether or not the issues about the disclosure statement and

15    plan language can be resolved, but I still think it's better to

16    tee up the settlement agreement.  So I'll tell the debtor to

17    get it on to the appropriate agenda, either next month or the

18    month after.

19          MR. CHEHI:  Thank you, Your Honor.

20          MS. BAER:  Your Honor, just a couple of points.  In

21    terms of procedure, it's not the debtor's motion.  We're happy

22    to put the motion on the agenda.  And if the -- if Sealed Air

23    and the asbestos committees are in agreement for us to do that,

24    we're happy to do that.  And with respect to Mr. Chehi's

25    comments about the settlement agreement being defined as

1  amended, that I believe was changed in plan and disclosure

2  statement, and if it was not changed in every place it should

3  be.  The debtor is in agreement, and it has indicated in the

4  disclosure statement in several places that it will not object

5  to the settlement agreement, that it will comply with the

6  settlement agreement, and it intends to do so, as written.

7            THE COURT:  Okay.  Well, I think the issue really is

8  the creditors' committee.  I think it's a plan proponent issue,

9  not just a debtor issue.  So, if it takes getting the

10  settlement agreement teed up for hearing in order to determine

11  that, then I think that's the way it has to go.  I don't think

12  one plan proponent can say we agree, and another plan proponent

13  can say we don't agree.  You either or you don't agree.

14            MR. BAENA:  Your Honor --

15            MS. BAER:  Your Honor, I -- I'm sorry, somebody --

16            THE COURT:  Who's speaking.

17            MR. BAENA:  This is Scott Baena.

18            THE COURT:  Yes, go ahead.

19            MR. BAENA:  Your Honor, if I may.  On behalf of the

20  property damage committee, we wholeheartedly concur with Sealed

21  Air's counsel and do believe that the approval of the

22  settlement agreement with Sealed Air is an entirely different

23  process than the implementation of that settlement agreement

24  under any plan of reorganization that may come before the

25  Court.  We're, therefore, gratified that you seem to be

1 prepared to treat the approval of the agreement separate and

2 apart by way of separate hearing.  I would only point out that

3 because there appeared to be the prospects that some will

4 object to approval of the settlement, that process may take on

5 the proportions of a contested hearing requiring evidence, and

6 I know that you don't ordinarily take evidence at omnibus

7 hearings.

8          THE COURT:  I never take evidence at omnibus

9 hearings.  So what I'll do is ask to get it on for a status

10 conference.  I want to -- I think what would be appropriate,

11 Mr. Baena, is to send it out on notice.  Let's get the

12 objections filed.  We'll do a status conference with respect to

13 the objections.  If people need discovery, I'll go through that

14 colloquy.  If it's just going to be a matter of an argument,

15 then I'll set it.  But nonetheless at least it should get teed

16 up so I know who is objecting is why.  And then we can

17 determine at a status conference what the next step should be.

18          MR. BAENA:  Thank you, Judge.

19          MR. PASQUALE:  Your Honor, Ken Pasquale for the

20 committee, just briefly.  I just wanted to mention that, in

21 light of Your Honor's comments, there is no inconsistency as to

22 this plan and the committee's role as plan proponent between

23 the debtors and the committee.  We have no objection to the

24 Sealed Air settlement as to this plan.  It's fine if Sealed Air

25 and the asbestos committee is going to tee up that motion, and,

1 you know, my committee will file it's objections and we will

2 have that decided by the Court.  But as to our position as plan

3 proponent, I don't believe there is an inconsistency with where

4 the debtors are and where we are.

5        THE COURT:  Okay.  Well, I don't understand because I

6 haven't looked at the settlement agreement as -- in connection

7 with the plan process.  So, you folks all know what you're

8 talking about, but really I don't.  I understand that you don't

9 object to this -- the implementation for this plan, but I think

10 the first issue is, is there an objection such that the

11 settlement agreement should not be approved at all.  And if

12 it's approvable then how you deal with it in the plan is an

13 entirely separate issue.  I agree with Mr. Baena.

14        MR. PASQUALE:  And I do, too.  I don't disagree with

15 that at all, Your Honor.  In fact, I think Your Honor does

16 understand quite well because you mentioned it earlier, one of

17 the problems our committee has is that all of the proceeds of

18 this settlement go into the trust to fund the asbestos

19 claimants' recovery, so -- but we'll deal with that in our

20 objections.  Thank you.

21        THE COURT:  All right.  Okay, so I'll still have --

22 Ms. Baer, since the debtor takes the lead in these, I

23 understand it's not the debtor's motion, but whatever it takes

24 to work with Sealed Air's and the committees' counsel to get

25 this teed up, either next month or the month after, whichever

1  is appropriate.  I don't know where you stand in the objection

2  process.  But not for argument, for a status conference, so I

3  can determine what to do after the objections and the responses

4  are filed.  I do want briefs, however, so that -- the briefs

5  are to be filed with the responses and then Sealed Air, if it's

6  the proponent, may file a reply, or the committees may file

7  reply briefs.

8          MS. BAER:  Your Honor, Sealed Air and the two

9  committees sent out the motion to approve the settlement

10  agreement a very long time ago.  Nobody has ever filed

11  responses.  We were all waiting, and that's when Judge Wolin's

12  recusal became an issue and nothing was ever set.  So what

13  actually needs to be done is a briefing schedule needs to be

14  set.  And it seems to me that we should be able to do that

15  right now.

16          THE COURT:  All right.  Let's do it.

17          MS. BAER:  I guess my first question would be whether

18  or not the movants on the motion want the opportunity to look

19  at their very old motion now and update it before we move

20  forward with response deadlines.

21          THE COURT:  Okay.  Who has filed the motion?  Is it

22  Sealed Air and the committees?

23          MS. BAER:  Yes.

24          THE COURT:  Okay.  Is the motion still appropriate as

25  it was when it was filed, or does it need to be updated?

1      MR. BAENA:  Judge, this is Scott Baena.  We filed

2  that motion.  It's been more than a year since I did so, and I

3  haven't looked at it recently to be honest with you.  I'd like

4  to take a look at it, to answer the Court's inquiry.

5      THE COURT:  All right.  Someone --

6      MR. CHEHI:  Your Honor, Mark Chehi for Sealed Air.  I

7  think it would be appropriate to give the movants, and there

8  are at least three of them here, the two committees and Sealed

9  Air, an opportunity to look at the motion that was filed and

10  perhaps re-circulate or re-serve a renewed motion that will

11  pick up some of the important issues from the point of view of

12  approving the motion in this context at this time, and then set

13  an objection deadline of some sort for third parties or other

14  parties in interest who object to the renewed motion so that we

15  get everybody at the table, and then we can go forward with the

16  briefing of the objections and responses.

17      THE COURT:  Okay.  Why don't you submit an order on a

18  certification of counsel that's attached to wherever the Sealed

19  Air settlement motion is filed.  I can't tell you that docket

20  number.  I don't know.  But that should at least get this off

21  dead center and we'll start taking a look at the settlement

22  process.  What I want the order to make clear, though, for the

23  briefing is that I'm not having argument until after I have a

24  status conference.  I want to find out what the issues are.  At

25  this point, I'm really largely in the dark.  So, I don't want

53

1  an argument set on an omnibus date in this instance.  I'm going

2  to give you a separate date for it, but I want a status report

3  first on whatever the omnibus hearing is that it's coming up

4  at, to determine what is appropriate to do next.

5          MR. CHEHI:  In other words, Your Honor, have the

6  status report first, a conference first, before setting any of

7  the deadlines?

8          THE COURT:  No, no.  I'm happy having you set the

9  deadlines.  It's just that I don't want an argument set until

10  after I have a status conference --

11         MR. CHEHI:  Understood --

12         THE COURT:  -- because I'm not sure if you're going

13  to take four hours or whether you'll need an evidentiary

14  hearing.  I just don't know.  And since I haven't even seen the

15  motion, I'm talking blind.  So, I'm happy -- you folks, I'm

16  sure, can come up with appropriate deadlines.  I'm happy to

17  have an order go out that sets an objection deadline -- or that

18  has a renewed motion filed, sets an objection deadline and a

19  briefing schedule.  But before an argument, I want a status

20  conference, and I'd like that either on the next agenda or the

21  one after this.

22         MR. CHEHI:  Understood, Your Honor.

23         THE COURT:  Okay.

24         MR. CHEHI:  Thank you.

25         THE COURT:  All right.  Thanks.

1          MS. BAER:  Your Honor, that takes care of the first

2   unresolved objection.  The rest of them are easy.  Your Honor,

3   the second objection that's completely unresolved, or that's

4   not resolved, is the personal injury objection.  They did not

5   -- the personal injury committee did not object to other items

6   in the disclosure statement.  It's only the core confirmation

7   issues that we're going to be addressing, vis-a-vis the

8   estimation process.

9          The third objection, Your Honor, the estate of

10  Rosario Rosperatti, that was a handwritten letter, Your Honor.

11  The claimant, or the objector, had two comments.  Number one,

12  they didn't want to get stock for their claim.  And number two,

13  they wanted the opportunity to amend their claim.  It's really

14  not a disclosure statement objection, and I'd ask that that

15  simply be overruled and their objection vis-a-vis taking stock

16  would be preserved as a confirmation issue.

17         THE COURT:  That's fine.

18         MS. BAER:  Your Honor, the next objection was that of

19  Maryland Casualty Company.  We had provided some language to

20  resolve all but one issue.  Maryland just early last week gave

21  us an additional little bit of language.  We understand the

22  concept, but we don't think the language is necessarily in the

23  right spot, and we continue to discuss that with Maryland.

24         Your Honor, with respect to the Libby claimants, they

25  wanted to provide us some additional information for the

1 disclosure statement.  They provided that to us Thursday.  My

2 client has looked at it.  We will have some comments to it, and

3 I would anticipate getting back to them this week with our

4 comments on their language.  I'm pretty confident we can come

5 to a resolution there.

6          Your Honor, with respect to the United States

7 Trustee, we had essentially three issues.  One related to, I

8 believe, a 502(e) issue, and last, I think it was yesterday, we

9 talked about some potential language to resolve that.  The

10 other two issues related to the release and to the exculpation.

11 We have provided some language in the amended -- amendment to

12 the disclosure statement that we submitted to the Court.  That

13 deals with the release issue.  I talked with Mr. Perch today

14 about trying to provide certain language like that, vis-a-vis

15 the exculpation and the gross negligence exception, and

16 suggested that we provide in the disclosure statement what the

17 issues are and preserve the right to deal with those, vis-a-vis

18 confirmation, where it really becomes an issue if we cannot

19 resolve them.

20          The next objection, Your Honor, was that of the

21 asbestos property damage claimants.  The parties have worked

22 very, very hard to resolve all but a couple objections to the

23 disclosure statement that are non-core confirmation issues.

24 What we would suggest is we continue to have the dialogue and

25 to the extent that we need rulings from the Court on the couple

1 of remaining issues, we can take that up at the March hearing

2 or frankly at sometime in the future, because we're not seeking

3 approval of the disclosure statement at this time, given that

4 we are going through the estimation process.

5        And that, Your Honor, is the list of the unresolved

6 objections.

7        THE COURT:  All right.  Does anyone wish to be heard

8 with respect to the objections and the debtor has requested

9 just simply, I guess, continue this matter for some additional

10 negotiations to take place?  I guess no one wants to be heard,

11 Ms. Baer.  So that's fine.  Just put it back on next month's

12 agenda for another status report them.

13        MS. BAER:  Thank you, Your Honor.  Your Honor, that

14 takes us to agenda item Number 15, which is the motion of the

15 Scotts Company to modify the preliminary injunction entered by

16 this Court on January 22, 2002, in order to proceed with their

17 adversary proceeding with respect to insurance.  Your Honor, on

18 this one --

19        MS. COBB:  Your Honor?

20        THE COURT:  I'm sorry.

21        MS. COBB:  I'm sorry.  This is Tiffany Cobb on behalf

22 of the Scotts Company.  I'm sorry, Jan.  Go ahead.

23        MS. BAER:  I was just going to say, Your Honor, that

24 the debtor has not filed a response here and was going to turn

25 the microphone over to Tiffany.

1          MS. COBB:  Your Honor, this is Tiffany Cobb on behalf

2   of the Scotts Company.  And first I very much appreciate your

3   flexibility in permitting me to attend by phone last minute,

4   given the unexpected weather and its impact on travel.  Scotts

5   has filed and served in this court an adversary proceeding

6   seeking a declaratory judgment as to whether Scotts is an

7   insured entitled to claim coverage under certain insurance

8   policies under which the debtors are also insureds.  And in our

9   papers we do refer to this as the "shared insurance policies,"

10  understanding of course that that's an issue to be litigated.

11          Currently before this Court, as Jan has pointed out,

12  is Scotts' motion for relief from the Court's modified

13  preliminary injunction order, and/or the automatic stay to the

14  extent applicable, and wanted to first go back in time a little

15  bit to late last summer when Scotts was before the Court on a

16  different motion, and during this Court's July hearing Your

17  Honor had recognized that Scotts should have the opportunity to

18  address these coverage issues, and consequently Scotts then

19  filed and served in the court the adversary proceeding.

20          In connection with Scotts' currently pending motion

21  and why we are here today, Scotts and the debtors have entered

22  into and signed a stipulation pursuant to which the debtors

23  have agreed that they do not objection to Scotts' motion.  The

24  stipulation, though, is subject to a further agreement that --

25  first that the debtors do not contest that the Court has

1  subject matter jurisdiction.  The adversary proceeding is also

2  between the parties, the debtors and Scotts.  We've agreed to

3  further stay the adversary proceeding until April 25th, at

4  which time, at this Court's next hearing in April, we will

5  revisit whether or not that temporary stay should be further

6  extended.  So, in essence, subject to the Court's approval of

7  course, the debtors and Scotts have agreed to replace, if you

8  will, the injunction order with this temporary stay, again to

9  be revisited at the April omnibus hearing.

10          The insurance defendants did not agree to join in

11  this stipulation and instead have filed certain objections and

12  responses to our motion.  I'd like to first say that Scotts

13  maintains that it is an insured under these shared insurance

14  policies, and the extent and amount of coverage to which the

15  debtors are entitled under these shared insurance policies must

16  be resolved for the debtors to effectively reorganize.  And

17  without a resolution at this time --

18          THE COURT:  Ms. Cobb?  Ms. Cobb, excuse me, would

19  everybody but Ms. Cobb please put your mute buttons on?  We're

20  getting some awful feedback.  I'm sorry, Ms. Cobb.  Okay.

21  Scotts says that it is an insured, and then I cut you off.

22          MS. COBB:  Okay.  Is the phone okay now?  Is it my

23  phone reception or -- can you hear me okay?

24          THE COURT:  I can hear you fine, but there is

25  terrible feedback, and I don't think it's coming from you.

1  Hold --

2          MS. COBB:  Okay.

3          THE COURT:  Just --

4          UNIDENTIFIED SPEAKER:  -- mics on the counsel tables.

5  Whatever paper moves or whatever -- it picks up, whispers,

6  anything.

7          THE COURT:  Okay.  It may be the -- I don't think

8  there are microphones on counsel table.  I think the only one

9  is at the podium.

10          MS. COBB:  Okay.  It's Scotts' position that without

11  a resolution at this time, Scotts would be deprived of any

12  meaningful opportunity to litigate the coverage issue, an

13  opportunity that the Court has previously acknowledged Scott

14  should have.

15          I'd like to turn briefly to the points raised in the

16  various objections and responses and will refer to them

17  collectively, although different insurance defendants will

18  certainly -- are there today to further address which

19  objections go with whom.  But collectively, the principal

20  objections include the argument that the action interferes with

21  debtors' reorganization would be a burden on the debtors, et

22  cetera, and really given the debtors' agreement with Scotts

23  that the action will be temporarily stayed as to debtors at

24  least until April really renders that argument disingenuous

25  because any impact on the debtors is currently stayed.

1        Another issue that has come up in the papers of the

2   insurance defendants is that the vendor coverage issue raised

3   in Scotts' declaratory judgment action is without merit, and

4   certainly we are not here today to argue the merits.  If Your

5   Honor would like us to address the merits we can certainly do

6   that.  Another issued raised is that some of the insurance

7   defendants do not necessarily concede that the Court has

8   jurisdiction, and certain of the insurance defendants reserve

9   the right to either seek a withdrawal of reference and/or

10  reserve the right to a jury trial.  And finally there is some

11  reference to certain policies that may or may not have been

12  exhausted.

13       With respect to the jurisdiction and/or forum issues,

14  this is precisely why Scotts believes that Your Honor should

15  lift the automatic stay and/or injunction order as to the

16  insurance defendants to give us time to resolve those issues

17  while the action is stayed as to the debtors.  The debtors,

18  again, have already indicated that they believe that this Court

19  is the appropriate forum, and consequently when the stay is

20  lifted as to the debtors we won't be proceeding with those

21  types of issues.

22       With respect to whether or not certain policies have

23  been exhausted, there again lifting the injunction as to the

24  insurance defendants will permit us to resolve those issues.

25  Scotts needs to have an opportunity to proceed with the

1 litigation to have an understanding as to whether or not

2 certain defendants should be dismissed or added.

3         So, you know, again to reiterate, the issue of

4 whether or not Scotts is an insured under these policies is a

5 critical issue that needs to be resolved, and it's -- you know,

6 it ultimately is an issue of -- a 541 issue of that being

7 property of the estate and the extent to which the assured

8 insurance policies -- the extent to which Grace has an interest

9 in these insurance policies.

10         THE COURT:  Okay.  Anything further?

11         MS. COBB:  Thank you, Your Honor.  No.

12         THE COURT:  All right.  Mr. Wisler?

13         MS. BAER:  Your Honor, Janet Baer on behalf of the

14 debtors.  The insurance companies have all turned to the

15 debtors and said, what is your position?  So I think maybe I

16 should make that clear to the Court.  Your Honor, we entered

17 into the stipulation with Scotts.  We do not contest the

18 jurisdiction of this Court.  To the extent that this matter

19 does go forward, we do not contest this Court taking

20 jurisdiction over the matter.  However, Your Honor, we do not

21 believe Scotts will ultimately be successful.  We do not

22 believe they are entitled to shared insurance.  And we also,

23 Your Honor, do not believe the matter should go forward at this

24 time.  When we negotiated the matter with Scotts back in

25 November, it was with the understanding that this would be

1  delayed and be taken up again at the April omnibus hearing.  In

2  that respect, Your Honor, we agree with the insurance carriers

3  that this is not the time in this Chapter 11 case to take up

4  the Scotts adversary proceeding.  And we anticipate asking Your

5  Honor at the April omnibus hearing to further extend the stay

6  of the proceedings, and I have indicated that to Scotts.  Had

7  we been in a different posture with respect to the Chapter 11

8  plan and had we had a disclosure statement approved and then

9  moving forward to confirmation it may have been a more

10 opportune time to take up the merits of those issues.  But

11 under the circumstances of the present case, we do not believe

12 the matter should be taken up at this time.

13         THE COURT:  All right.

14         MR. WISLER:  Good afternoon, Your Honor.  Jeff Wisler

15 on behalf of Maryland Casualty Company.  Your Honor, forum and

16 jurisdiction are not issues for today.  Our position that

17 Scotts is not a shared insured is not an issue for today.  But

18 it is important to know, Your Honor, that Scotts' adversary

19 proceeding relates to the policies that Maryland settled long

20 ago with Grace when its policy limits were exhausted, and the

21 settlement agreements that Your Honor has dealt with throughout

22 this bankruptcy relating to the Libby claimants was entered

23 into and those settlement agreements do implicate indemnity

24 rights that are owed from Grace to Maryland Casualty.

25         We object to the Scotts' motion, Your Honor, because

1 it does clearly violate the preliminary injunction, not its

2 initiation, but any prosecution of that action violates the

3 preliminary injunction.  The preliminary injunction in the

4 context of this matter expressly prohibits actions Maryland

5 Casualty, number one, arising from alleged exposure to

6 asbestos, directly or indirectly, caused by the debtors.

7 Clearly, that's what Scotts' complaint involves.  Number two,

8 the preliminary injunction expressly prohibits actions against

9 Maryland Casualty for which there may be coverage under the

10 insurance policies, and these are insurance policies as defined

11 by the preliminary injunction.  Number three, the preliminary

12 injunction expressly prohibits actions against Maryland

13 Casualty alleging coverage for asbestos-related liabilities.

14 There can be no dispute that that's exactly what Scotts seeks

15 here, is the determination about alleged coverage for

16 asbestos-related liabilities.

17         Your Honor, because the preliminary injunction

18 clearly applies, it's Scotts' burden to show exceptional

19 circumstances that warrant relief under Rule 60(b).  As I

20 understand it, their position is that without the relief they

21 will not have a meaningful opportunity to litigate this issue.

22 I'm not sure what the basis of that is, Your Honor, but under

23 the case law they need to show extreme and undue hardship to

24 get relief from the existing preliminary injunction.  They have

25 simply not met that burden.  They have not shown that somehow

1  this relief is necessary for the debtor to go forward with its

2  plan of reorganization.  In fact, the debtor has already said

3  that, in fact, this is the wrong time for this matter to go

4  forward, and it is not necessary for -- this is not an issue

5  that must be resolved for the debtors to go forward with the

6  reorganization.

7          Scotts' position is no different than many, many

8  other litigants in this case.  They have a dispute that they

9  want to have resolved, and they want to have it resolved now,

10  but those two elements are not -- are not -- do not warrant

11  relief from the preliminary injunction.  The preliminary

12  injunction was intended to stop litigation like this.  It's

13  intended to stop litigation that will implicate indemnity

14  rights owed by Grace to Maryland Casualty, and if this

15  litigation goes forward those indemnity rights will be

16  triggered.

17          Agin, Your Honor, just going back to the hearing that

18  Your Honor had last year telephonically, while Your Honor did

19  say that this is an issue that will have to be resolved

20  someday, Your Honor did not say when, but more importantly Your

21  Honor expressly said at that time that you were not modifying

22  the preliminary injunction and you were not modifying the

23  automatic stay with regard to this issue, and this issue does

24  not need to go forward now and should not go forward now under

25  the preliminary injunction.

1         THE COURT:  All right.  Thank you.  Anyone else on

2  behalf of the insurance companies?  Good afternoon.

3         MS. DECHRISTOFARO:  Good afternoon, Your Honor.

4  Elizabeth Dechristofaro for Continental Casualty.  We would

5  just add two more points on the basic point of how this may

6  impede or hinder or distract from the reorganization process.

7  Ms. Scott (sic) characterized our objections as going to the

8  merits of their claim under the vendor's endorsement.  That is

9  not what our objection went to.  Our objection went to that in

10 order to -- for Scotts to make the argument that they fall

11 within that vendor's endorsement, they have to, as recited in

12 their own paper, show that the debtor's product was at fault.

13 That is the burden that they assume to meet the vendor's

14 endorsement.

15        Now, we think the vendor's endorsement claim has

16 absolutely no merit.  We included in our objection a photo of

17 the product and showed how it absolutely falls outside the

18 scope of the endorsement.  But nonetheless our point is in

19 order to do that they are putting the debtor's conduct right at

20 issue, and that is the heart of that coverage issue, and that's

21 how the Court has a basis to deny their motion to lift the stay

22 at this time because it definitely will distract from

23 reorganization process.

24        And the other point that we would add to those

25 already made is that the Scotts coverage issues cannot be

1  litigated in a vacuum.  Yet it remains to be seen how the

2  debtor's coverage issues will unfold in this bankruptcy.  The

3  proposed plan does not implicate the insurance at this point.

4  The debtor has reserved the right to collect that

5  post-petition.  All those things have yet to play out.  This is

6  putting the cart before the horse.  We don't yet know how those

7  issues, which will impact the debtor, are going to play out,

8  and therefore it would be inappropriate to proceed with Scotts'

9  claim in isolation.  Thank you, Your Honor.

10       THE COURT:  Thank you.  Anyone else?

11       MS. D'AMBRA:  Yes, Your Honor.  Your Honor, I'm

12  Andrea D'Ambra.  I represent OneBeacon and Seton who are -- I'm

13  sorry, Commercial Union, the successors in interest to

14  Commercial Union and Unigard.  And, Your Honor, we feel that

15  the Scotts adversary proceeding actually should go forward now,

16  and we support that at this point.  Although we do believe that

17  Scotts' contention that they are covered under the vendor

18  policy, or the vendor provision in the policy, is wholly

19  without merit.  We think that it's a relatively simple issue

20  that could be addressed in relatively forthwith manner and that

21  if we don't do that it may actually potentially impact plan

22  confirmation issues.  Specifically, OneBeacon and Seton, along

23  with Maryland Casualty and CNA, have all -- have settlement

24  agreements that have indemnity provisions, and these indemnity

25  provisions give Grace responsibility for covering claims that

1  are brought after the time of the settlement.  Therefore, there

2  are millions, if not hundreds of millions, of dollars that

3  could come out of any case that -- given the fact that -- or

4  given the -- or given the fact that the Scotts -- if the

5  Scotts' contention that they have vendor coverage gains any

6  traction.  And so it would, in fact, implicate Grace, if not

7  the debtors, and therefore, in fact, would cause problems for

8  plan confirmation.

9            THE COURT:  Okay.  Thank you.  Anyone else?

10           MS. D'AMBRA:  Thank you.  Anyone on the phone, other

11  than Ms. Cobb, wish to address this?  Okay, Ms. Cobb.

12           MS. COBB:  Your Honor, thank you.  I would just

13  reiterate that by stipulation between the debtors and Scotts,

14  Scotts has already agreed to continue a stay as to the debtors

15  at least until April, and, as Ms. Baer points out, we will

16  revisit at that time with Your Honor whether it's appropriate

17  to further extend that.  So, I come back to the point that

18  currently, with that agreement in place, there can be no burden

19  on the estate by definition, because we've agreed to stay the

20  action by agreement and essentially replace the injunction

21  order by agreement with this temporary stay.  Scotts doesn't

22  see why the issues of jurisdiction and fora which, as Mr.

23  Wisler points out, are not currently before the Court, but

24  these insurance defendants in their papers have indicated that

25  they are reserving these issues.  Why not address them now, and

1  -- so that when they're -- when it is appropriate to lift this

2  temporary stay as to the debtors we could proceed on the

3  merits.  There's no burden to the debtors in having the

4  insurance defendants argue whatever jurisdictional or fora

5  issues they want to address now so that, again, when we come

6  back in April, or if it's appropriate to continue the stay

7  further, which we will address at that time, then we will be

8  prepared to fully address the merits.

9         And, you know, I do find it interesting that, you

10 know, one of the insurance defendants says they're not going to

11 the merits and yet they put pictures of Scotts' product in

12 their papers.  I mean, this is not an evidentiary hearing.  I

13 reiterate that we are certainly receptive to briefing the issue

14 of the vendor endorsement issue, if Your Honor would care to do

15 that, but it's premature, and so any argument that the -- that

16 Scotts' position is without merit is really -- it's not the

17 proper time or place to do that.

18         THE COURT:  Anything else, Ms. Cobb?

19         MS. COBB:  That's it, Your Honor.  Thank you very

20 much.

21         THE COURT:  All right, with respect to the issue of

22 addressing anything on the merits, I agree a hundred percent

23 this is not the time.  It's clearly premature.  However, the

24 purpose of the preliminary injunction was not just to protect

25 the debtor, but also to protect the debtor's indemnity

1 agreements that it may have with any settling insurers, and the

2 settling insurers may have settled either pre or post-petition

3 in favor of that indemnity agreement so that not just for

4 asbestos victims, but also for I guess entities who used,

5 allegedly used, asbestos products of the debtors, the same

6 analysis applies.  The whole purpose of entering the

7 preliminary injunction was to provide this breathing space so

8 that the parties could start to negotiate a settlement, rather

9 than to continue litigation in a variety of places which would

10 lead to a race to the courthouse.  I really don't see at this

11 point that it's appropriate to lift the stay for Scotts.  I do

12 think Scotts, at some point, is going to have to get this issue

13 litigated, but I don't know that today is the day, and I think

14 at this point in the reorganization process it would be

15 inadvisable to permit that to proceed now against the other

16 insurance companies.

17          One thing I think, when -- if and when the stay or

18 preliminary injunction are lifted that will have to be

19 addressed is the issue of whether or not the policies have, in

20 fact, been exhausted, because I do agree, Ms. Cobb, that to the

21 extent they have been exhausted your client is undoubtedly

22 going to wish to take a look at who should be appropriately

23 named as defendants.  But nonetheless, I don't think this is

24 the time for that exercise to go forward.

25          So I don't see a basis for granting relief from stay

1  or relief from the preliminary injunction now.  What I'm going

2  to do is ask the debtor to put this issue back on the April

3  agenda, and I will revisit it then in connection with the

4  debtor's request for a further extension.  If the debtor's

5  request for a further extension is not granted, it may be

6  appropriate to let this action go forward at that time, but

7  I'll consider it in that context.  So, for now I'm denying the

8  motion, but I'm having it re-calendared for the April agenda.

9           MS. COBB:  Your Honor, if I may ask a clarifying

10  question, is there any reason why, with respect to the -- any

11  insurance defendant who does not assert back an indemnification

12  claim against the debtors, why those insurance carriers are not

13  capable of raising their jurisdictional or fora issues at this

14  time?  And the reason I ask that question is that certainly to

15  the extent this falls back to the debtors we already know that

16  their position is that they believe that this forum is

17  appropriate.  By contrast, some of the insurance defendants in

18  their papers have indicated otherwise, and it would not be any

19  distraction to the debtors' reorganization efforts to have

20  these non-debtor entities raise those issues now.

21           THE COURT:  Well, Ms. Cobb, if I lift the stay or

22  lift the preliminary injunction so that I require answers to

23  the complaint, then I think at that point in time they're going

24  to have to raise those issues.  But I don't see the benefit to

25  anybody, at this stage in the debtor's reorganization potential

1 where I am trying to get the debtor to resolve issues, to

2 undertake yet another issue with respect to their insurance

3 carrier.  So, I don't see the benefit to piecemealing it.  I

4 think it's more appropriate to simply defer this to the April

5 issue and let's see what happens with respect to the debtor's

6 request for a further extension.  If it's not granted, then,

7 you know, this may be appropriate, and at that point in time

8 they can raise their defenses.  But I think it's -- it makes

9 more sense to consider this at the time that the existing

10 agreement to stay the claims as to the debtor is set for

11 hearing in April, so I'm simply going to continue this issue

12 till the April calendar.

13          MS. COBB:  All right.  Thank you, Your Honor.

14          THE COURT:  Okay.  Ms. Baer?

15          MS. BAER:  Your Honor, that brings us to the end of

16 the agenda, but one last item to report on, probably the most

17 significant item of the day, and that is where we stand with

18 respect to case management orders on asbestos property damage

19 and asbestos personal injury estimation.  If my colleague David

20 Bernick is still on the line, I assume he's going to want to

21 address this, otherwise I will do so.

22          THE COURT:  Mr. Bernick?

23          MR. BERNICK:  I am still here.  Good afternoon, Your

24 Honor.  We have had negotiations involving the debtor and the

25 property damage committee and negotiations involving the debtor

1  and the personal injury committee, as well as the futures'

2  representative.  More specifically, during the course of this

3  last week we prepared and circulated draft case management

4  orders as well as a draft questionnaire/claim form relating to

5  the personal injury claims.  The meetings that took place last

6  week were I think productive.  I know Mr. Baena is on the

7  phone, and others who represent the personal injury folks are

8  on the phone as well, so obviously they can comment.

9        I think where we are with respect to the property

10  damage committee is that they have made some suggestions

11  regarding both the sequence and timing of the major events that

12  drive the proposed case management schedule.  We promised to

13  get a redraft back to them this week.  If there are any

14  remaining problems, they are to be discussed this coming

15  Friday.  But I think, I anticipate at least, that we will reach

16  agreement with respect to the case management order on the

17  property damage claims.  Your Honor, I would not that this

18  obviously excepts the ZAI issues.  This only pertains to the

19  so-called traditional property damage claims.

20        With respect to the personal injury discussion,

21  again, very specific, as I've indicated, we've shared some

22  drafts in advance, there I think we've got more progress to

23  make.  We did make a commitment to circulate a new draft this

24  week that I think will accommodate the scheduling concerns that

25  the personal injury committee had.  We will also retool the

1 proposed claim form, but essentially my prediction with respect

2 to the personal injury case management order is that we're

3 likely to reach agreement concerning the order itself; however,

4 I believe that the committee will still have what we call kind

5 of disagreements in principle with the idea of having a bar

6 date and having a questionnaire perhaps with respect to some of

7 the elements of -- some of the other elements of the litigation

8 or estimation process.  So our goal is to reach agreement with

9 respect to a schedule, but I suspect that they'll still want to

10 lodge the objections that they have raised historically to

11 having a bar date in the claim form at all.  Now, we think that

12 Your Honor has essentially ruled on that and -- or if not

13 ruled, provided strong guidance, but I think in fairness they

14 do intend to prosecute those kinds of objections.

15        With respect to the questionnaire, I think that

16 probably the same thing holds.  We're trying to get a

17 questionnaire/claim form that is agreeable in all respects, but

18 we do anticipate that there will be some remaining issues.  So,

19 again the goal is to get as much agreed as we can and then be

20 able to present any remaining issues to the Court during April.

21        So, that's where we stand.  I think the case

22 management is going to be largely agreed to, but there will be

23 some residual issues on the personal injury side, and we'd

24 obviously like to get those resolved as soon as we can.  I

25 suppose it probably makes sense to have a separate setting to

1  deal with any remaining issues concerning the personal injury

2  estimation process.

3          THE COURT:  I'm sorry, it makes sense to do what?

4          MR. BERNICK:  It makes sense to have a separate

5  setting --

6          THE COURT:  Oh.

7          MR. BERNICK:  -- to deal with any remaining issues

8  concerning the personal injury case management order and claim

9  form.

10          THE COURT:  That's probably correct.  Why don't you

11  just put it on the agenda for April and -- as I guess a status

12  report so I can see what the objections are, and at that point

13  in time we can probably figure out how much time and when to

14  schedule it.  But I don't expect to be able to use an omnibus

15  hearing date to go through lots of objections.  I don't think

16  there will be sufficient time.

17          MR. BERNICK:  Well, what I -- what I was hopeful,

18  we've got an omnibus setting on, what is it, the 21st of March,

19  and maybe we could use that date to set the separate date

20  because my concern is just the passage of time, and I think

21  that, at least the discussions that we had last week, I think

22  with a conversion on the -- be able to report to the Court on

23  where we stood on the 21st of March.  So I don't know that we

24  need to wait.  My hope was to actually have any hearing that

25  would be necessary by April and be able, therefore, to set that

1 hearing and give Your Honor a firmer indication of what the

2 issues are --

3          THE COURT:  Okay, that's fine.

4          MR. BERNICK:  -- on the 21st of March.

5          THE COURT:  That's fine.  I'll just --

6          MS. BROWN:  Your Honor -- you're done?

7          THE COURT:  Yes.

8          MS. BROWN:  Kimberly Brown on behalf of the personal

9 injury claimants' committee.  I just wanted to state that I

10 think Mr. Bernick accurately represented what -- our meetings

11 last week, except one caveat, and that is to the extent to

12 which the case management order is contingent on the

13 questionnaire, I'm not sure we're going to reach full agreement

14 on that.  We're trying to resolve all issues as much as

15 possible.  And then secondly, to the extent to which there's

16 going to be a merits hearing in April, we would assume that

17 debtors would file something, some kind of motion, by the

18 filing date beforehand, because right now there is actually

19 nothing pending for the Court to consider and for us to object

20 to.

21          MR. BERNICK:  Well, I -- that's fair, and I think

22 that what we would intend to do is to -- I think we're going to

23 know pretty much by the end of this week, if not then, then

24 early next week, exactly where we are on both PD and personal

25 injury.  We would file a status report with the Court in time

1  for the March 21 omnibus, but then we would file a motion in a

2  timely fashion to tee up the matter by whatever date it is that

3  the Court decides to actually hear these issues.  Obviously,

4  we're not going to simply proceed without a motion.

5        THE COURT:  Yes, I think that makes sense.  At least

6  that way in the meantime you folks can all talk about how long

7  you think this is going to take and what the objections are,

8  and then obviously the debtor is going to have to start the

9  process and the committee is going to have to file responses.

10 Before I can have a hearing, I need to know what the hearing is

11 -- or even an argument, I need to know what the issues will be.

12       MR. BERNICK:  Right.

13       THE COURT:  Okay.  Well, let's at least get a status

14 report in March, but whether or not I'm going to get to a

15 hearing in April, if you haven't filed a motion and I don't

16 have any responses before a March hearing date, Mr. Bernick, is

17 questionable.

18       MR. BERNICK:  Yes, well, let's just see what we can

19 do, and we're certainly going to make the effort to try to get

20 it heard in April.

21       THE COURT:  Okay.  Ms. Baer?

22       MS. BAER:  Your Honor, that brings us to the end of

23 the agenda, unless Your Honor has anything to take up.  We do

24 have the various orders I referred to, and we're wondering if

25 we can hand them to Ms. Bellow --

1        THE COURT:  I would actually prefer that you just

2  file them on COCs so that I can get them electronically.  I'll

3  get them faster that way than if you hand them up to her.

4        MS. BAER:  Okay.  We will do so.

5        THE COURT:  Any housekeeping matters by anyone?

6  Okay.  We're adjourned.  Thank you.

7                    * * * * *

8              **C E R T I F I C A T I O N**

9        I, DENISE M. O'DONNELL, court approved transcriber,

10  certify that the foregoing is a correct transcript from the

11  official electronic sound recording of the proceedings in the

12  above-entitled matter, to the best of my ability.

13  _____

14  DENISE M. O'DONNELL

15  J&J COURT TRANSCRIBERS, INC.      Date: March 9, 2005

16

17

18

19

20

21

22

23

24

25