# Exhibit 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | Re: Docket Nos. 7753, 7959, 7962 & 7963 |

**DEBTORS' REPLY IN SUPPORT OF THE MOTION OF THE DEBTORS FOR AN ORDER AUTHORIZING THE DEBTORS TO ENTER INTO (A) AN EMPLOYMENT AGREEMENT WITH ITS CURRENT CHIEF OPERATING OFFICER ("COO") UNDER WHICH HE WOULD ASSUME THE POSITION OF CHIEF EXECUTIVE OFFICER ("CEO") OF THE DEBTORS AND (B) A POST-RETIREMENT AGREEMENT WITH THE CURRENT CEO WHEREBY HE WOULD PROVIDE CONSULTING SERVICES RELATED TO THE DEBTORS' CHAPTER 11 CASES**

The Court should approve the CEO Motion (as defined below) because the Debtors' board of directors has determined, in its reasonable business judgment (i) that Alfred E. Festa is the most-qualified candidate to succeed Paul J. Norris as CEO of the Debtors, and (ii) that, after consultation with its compensation consultant, Mr. Festa's total proposed compensation is

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

reasonable (a) in light of the responsibilities and challenges that Mr. Festa will assume as CEO of the Debtors and (b) when compared to the compensation received by CEOs of similar organizations.

Several parties have taken issue with the "Emergence Bonus" component of Mr. Festa's compensation package. In particular, such parties contend that the "Emergence Bonus" does not provide Mr. Festa an economic incentive to encourage a timely emergence from chapter 11. In fact, the "Emergence Bonus" was specifically designed as a retention bonus with an emergence component. Specifically, Mr. Festa receives full payment of the bonus four years after the date on which the Debtors' initial plan of reorganization was filed. This bonus, however, also provides Mr. Festa with an economic incentive for the Debtors to emerge from bankruptcy, because the entirety of the bonus would be payable eighteen months following emergence from chapter 11. As a result, the "Emergence Bonus" incentivizes both (i) the retention of Mr. Festa during these challenging circumstances and (ii) Mr. Festa's efforts to assist the Debtors' efforts to emerge from chapter 11.

Mr. Festa's total compensation package, including the "Emergence Bonus," is within the range of competitive practice and is reasonable. In particular, the Debtors present additional data in this Reply and in the accompanying affidavits that Mr. Festa's *entire* compensation package is comparable to the compensation packages of similarly-situated CEOs.

The Debtors have satisfied their burden of showing that Mr. Festa's compensation is reasonable and there is a "valid business purpose" for entering into the proposed employment agreement with Mr. Festa. The burden therefore shifts to the objecting parties to offer evidence that demonstrates why the Debtors are not entitled to their requested relief. The objecting parties offer no such evidence, only unsupported allegations. As a result, and for the reasons set forth

herein, the objections should be denied, and the Court should grant the CEO Motion in its entirety.

## Facts and Background

1. On November 13, 2003, the Court entered an order authorizing the Debtors to enter into an employment agreement with Alfred E. Festa, pursuant to which Mr. Festa became the Debtors' President and COO. Before joining the Debtors, Mr. Festa served as a vice-president and general manager of a business unit with a multi-billion dollar, international industrial-conglomerate. At the time of Mr. Festa's hiring, the Debtors' board of directors (the "Board") identified Mr. Festa as a potential successor to Mr. Norris as CEO of the Debtors. See Affidavit of Thomas A. Vanderslice, dated March 11, 2005 (the "Vanderslice Affidavit" at pg. 2, ¶4 (a copy of which is attached as Exhibit A). Specifically, the Debtors hired Mr. Festa to "add a high-level executive who would be focused primarily on managing the overall operations of the Debtors' business, in an effort to improve the current financial performance of those businesses..." *Motion of the Debtors for an Order Authorizing the Debtors to Enter into an Employment Agreement with the Prospective President and Chief Operating Officer of the Debtors,* at pg. 3, ¶7 (the "COO Motion").

2. For the past 16 months, including all of calendar year 2004, each of the Debtors' businesses have reported directly to Mr. Festa, and during 2004, the Debtors' businesses experienced significant increases in both revenues (14%) and pre-tax income from core operations (21%).

3. On November 19, 2004, Mr. Norris announced his intention to resign as CEO of the Debtors, effective May 31, 2005. Shortly thereafter, the Board determined that, based upon his success as COO and President, Mr. Festa was the most-qualified candidate to succeed Mr.

3

Norris as CEO. See Vanderslice Affidavit at pg. 2, ¶5. While negotiating Mr. Festa's compensation package, the Board relied upon information from their compensation consultant, Nick Bubnovich (of Watson Wyatt Worldwide), with respect to the "market rate" for CEOs in similar positions. See Vanderslice Affidavit at pg. 2, ¶6. The proposed employment agreement with Mr. Festa is the product of this diligence and negotiation. See id.

4. On February 11, 2005, the Debtors filed their *Motion for an Order Authorizing the Debtors to Enter into (A) an Employment Agreement with its Current Chief Operating Officer Under Which He Would Assume the Position of Chief Executive Officer of the Debtors ("CEO") and (B) a Post-Retirement Agreement With the Current CEO Whereby He Would Provide Consulting Services Related to the Debtors' Chapter 11 Cases* (Docket No. 7753) (the "CEO Motion").[2] The Affidavit of Nick Bubnovich, dated January 20, 2005 (the "Original Affidavit"), was filed in support of the CEO Motion. The Original Affidavit demonstrates that Mr. Festa's total compensation is comparable with the compensation received by the CEOs of similar companies.

5. The proposed employment agreement provides that Mr. Festa's compensation consists of: (i) a base salary, (ii) participation in the Debtors' annual incentive compensation program, (iii) participation in the Debtors' long-term incentive compensation program, (iv) a retention/emergence bonus, which is entitled the "Emergence Bonus," and (v) a severance benefit. See Exhibit A to the CEO Motion. In particular, the "Emergence Bonus" provides as follows:

---

[2] The CEO Motion also requests authority to enter into a post-retirement consulting agreement with Mr. Norris. No party has objected to this aspect of the CEO Motion. As a result, the Debtors renew their request that the Court authorize the post-retirement agreement with Mr. Norris.

91100-001\DOCS_DE:106414.1

> [Mr Festa] will be paid a "Chapter 11 Emergence Bonus," as specified by this paragraph (your "Emergence Bonus"). The total amount of your Emergence Bonus will be $1,750,000 -- $750,000 of that amount will be paid 6 months after the [Debtors] emerge from Chapter 11, and the remaining $1,000,000 will be paid to you 18 months after such emergence; or, if the Company does not emerge from Chapter 11 within 36 months of it (or another party) filing an initial plan of reorganization with the Bankruptcy Court, you will instead be paid your Emergence Bonus as follows: $750,000 will be paid 36 months after the filing of any initial plan of reorganization with the Court, and $1,000,000 will be paid 48 months after such filing (even if the Debtors emerge from Chapter 11 after such 36 months, but before such 48 month, period).

See Exhibit A to the CEO Motion, pg. 6.

6. On March 4, 2005, the Asbestos Property Damage Committee, the Asbestos Personal Injury Committee (the "PI Committee"), and the Legal Representative for Future Claimants, each filed objections to the CEO Motion (Docket Nos. 7959, 7963, and 7962, respectively) (collectively, the "Objections"). For the reasons set forth herein, the Objections should be denied, and the Court should approve Mr. Festa's total compensation package as set forth in the proposed employment agreement, including, without limitation, the "Emergence Bonus."

### Argument

7. The Court should approve Mr. Festa's proposed compensation because (i) he is qualified to serve as CEO of the Debtors, (ii) he should be paid as a CEO, (iii) the "Emergence Bonus" is reasonable and provides appropriate incentives, and (iv) his total compensation package as CEO is consistent with market practice and is reasonable.

    **a.    Mr. Festa is Eminently Qualified to Serve as CEO of the Debtors**

8. Mr. Festa is well qualified to succeed Mr. Norris as CEO of the Debtors. For the past 16 months, including all of calendar year 2004, each of the Debtors' businesses have

reported directly to Mr. Festa, and during 2004, the Debtors' businesses experienced significant increases in both revenues (14%) and pre-tax income from core operations (21%). Mr. Festa has introduced cost-cutting initiatives, streamlined the management of the business units, and set forth a growth plan for the Debtors. The Board has been extremely impressed with Mr. Festa's performance and considers him the logical and best choice to succeed Mr. Norris as CEO. See Vanderslice Affidavit at pg. 2, ¶5.

9. Despite the PI Committee's suggestions to the contrary, the fact that Mr. Festa has never served as the CEO of a similar organization does not diminish his qualifications to serve as the Debtors' CEO. CEOs rarely make lateral moves to assume similar positions with competing companies. Indeed, when a company wishes to find a successor, they typically have to either (i) groom an individual from within the company or (ii) recruit an executive from another company, with the mutual expectation that the individual will succeed the current CEO. See Supplemental Affidavit of Nick Bubnovich, dated March 11, 2005 (the "Supplemental Affidavit"), at pg. 2, ¶ 3 (a copy of which is attached hereto as Exhibit A). The PI Committee has produced no evidence to the contrary or any evidence that the process by which Mr. Festa has been identified and retained is in any way atypical.

10. It is likewise incorrect to suggest that Mr. Festa should not be compensated in a manner commensurate with similar CEOs, just because he has not previously held a similar role. The Debtors are asking Mr. Festa to assume the responsibilities and challenges associated with the CEO position. Therefore, it stands to reason that Mr. Festa would be compensated as such. Mr. Festa has been identified by the Board as the most-qualified candidate to succeed Mr. Norris as the Debtors' CEO, and has proven his abilities during his tenure as COO and President of the

91100-001\DOCS_DE:106414.1

Debtors. Mr. Festa should be compensated in a manner consistent with the CEOs of similar organizations.

      **b.**      **The "Emergence Bonus" Is Essentially a Retention Bonus with an Emergence Incentive-Component and, as Such, Provides Appropriate Incentives**

11.      The Objections each took issue with Mr. Festa's "Emergence Bonus." In practice, the "Emergence Bonus" is a *retention* bonus with payments that are accelerated upon the Debtors' successful emergence from chapter 11. See Supplemental Affidavit at pg. 2, ¶4.

12.      The "Emergence Bonus" was designed by the Board to provide Mr. Festa with an incentive to remain as CEO of the Debtors during the bankruptcy and after the Debtors' emergence from chapter 11. This benefits the Debtors by providing stability, focused leadership, and consistency in execution during these difficult times. Nevertheless, because the Board realized that the Debtors' emergence is of paramount importance, the Board and Mr. Festa negotiated a bonus component that rewards Mr. Festa if he is able to lead the Debtors through bankruptcy, but also rewards his long-term loyalty and service.

13.      The "Emergence Bonus" satisfies both of these objectives. Specifically, the "Emergence Bonus" provides that Mr. Festa receives full payment of the bonus four years after the date on which the Debtors' initial plan of reorganization was filed, independent of whether the Debtors have emerged from bankruptcy. See Supplemental Affidavit at pg. 2, ¶4. Retention bonuses of this type are frequently provided to the CEOs of similar companies. See id. The "Emergence Bonus," however, also provides Mr. Festa with an economic incentive to pursue emergence from bankruptcy, because the entirety of the bonus is payable eighteen months following emergence from chapter 11. See Exhibit A to the CEO Motion, pg. 6. Therefore, to

7

the extent the Debtors do emerge from chapter 11 in less than 30 months, Mr. Festa would receive the full bonus payment sooner. <u>See</u> <u>Supplemental Affidavit</u> at pg. 2, ¶4. [3]

14.  The "Emergence Bonus" also compensates Mr. Festa for the inherent risks and managerial limitations that are inherent with taking control of a chapter 11 debtor (e.g., uncertainties surrounding future ownership and the need to obtain Court-approval before pursuing strategic initiatives). Courts have explicitly recognized that chapter 11 debtors must compensate their officers for the risks and challenges associated with taking a leadership role with a chapter 11 debtor. <u>See</u> <u>In re America West Airlines, Inc.</u>, 171 BR. 674, 678 (Bankr. D. Ariz. 1994).

15.  Therefore, regardless of what it is called, the "Emergence Bonus" is appropriate and was reasonably designed by the Board to promote both the prolonged retention of Mr. Festa, as well as the emergence of the Debtors from chapter 11.

    **c.**    **The Court Should Approve Mr. Festa's Proposed Compensation**

        **i.**    **Mr. Festa's Total Proposed Compensation Package is Reasonable**

16.  In considering the Motion, the Court should examine Mr. Festa's *entire* compensation package - not just one, isolated facet of his compensation. <u>See In re Montgomery Ward Holding Corp.</u>, 242 B.R. 147, 155 (Bankr. D. Del. 1999); <u>In re America West Airlines, Inc.</u>, 171 BR. 674, 678 (Bankr. D. Ariz. 1994); <u>In re Interco Inc.</u>, 128 BR. 229, 234 (Bankr. E.D.

---

[3] None of the objecting parties take issue with the concept of offering Mr. Festa a bonus. Instead, they merely note that such bonus can be paid to Mr. Festa regardless of whether the Debtors have emerged from chapter 11. As discussed herein, such component of the "Emergence Bonus" was fully intended by the Board to encourage Mr. Festa's prolonged tenure under challenging circumstances, and at the same, incentivize Mr. Festa to reorganize the Debtors as soon as reasonably possible.

Mo. 1991). Mr. Festa's entire compensation package, including the "Emergence Bonus," is reasonable and consistent with the compensation given to CEOs for similar organizations.

17. On the assumption that the "Emergence Bonus" would be earned as an *emergence* incentive, the Original Affidavit apportioned the "Emergence Bonus" over two years, for purposes of evaluating Mr. Festa's Total Direct Compensation ("TDC"). That analysis shows that Mr. Festa's compensation is reasonable. See Original Affidavit at pg. 5, ¶15. The Objections focus on the *retention* aspect of the "Emergence Bonus," and the PI Committee apportions the "Emergence Bonus" over three years.[4] This assumes that the Debtors would emerge from bankruptcy in May 2006. This assumption is incorrect for purposes of evaluating the *retention* aspect of the Emergence Bonus. If the "Emergence Bonus" ends up being earned as a retention payment, then the final payment will be made after four years.[5] Therefore, to address the issue of whether the retention aspect is reasonable, the appropriate period for apportioning the "Emergence Bonus" is 4 years.

18. The Supplemental Affidavit apportions the "Emergence Bonus" to Mr. Festa's TDC over four years, and demonstrates that Mr. Festa's TDC remains within the range of competitive practice.[6] See Supplemental Affidavit at pps. 3-4, ¶7. In particular, the results

---

[4] The PI Committee's results for a three-year apportionment are incorrect. The PI Committee argues that, assuming a three-year apportionment, Mr. Festa's TDC is 32% greater than the median Survey Group TDC. This is apparently a typographical error, as the correct result would be 22%.

[5] The PI Committee has not argued that Mr. Festa is not entitled to a bonus at all, and the PI Committee has not objected to the proposed size of such bonus. In fact, they acknowledge that a bonus is appropriate, but assert that it *should* be tied *solely* to emergence from chapter 11 and not tied at all to retention. See PI Objection at pg. 6, ¶13.

[6] This result is not surprising, as the apportionment of the "Emergence Bonus" over four years would obviously yield results that are lower than the Original Affidavit, since the Original Affidavit apportioned the "Emergence Bonus" over only two years.

9

demonstrate that Mr. Festa's TDC would be: (i) 12.1 % below the Industry Peer Group[7] median; and (ii) 18.4% above the Survey Group median and 24% below the Survey Group 75th percentile. See id. Accordingly, even if the "Emergence Bonus" is added to Mr. Festa's TDC, his TDC is still below the median for the Industry Peer Group. See id. While his TDC is above the median for the Survey Group, it is still well below the 75th percentile for the Survey Group. See id. When the Debtors and similar companies wish to attract well-qualified candidates for executive positions, they often will have to offer compensation packages that place such candidates' respective TDCs between the median and the 75th percentile (of the appropriate peer group). See id. Therefore, no matter how the data is analyzed, and whether benchmarked against the Industry Peer Group or Survey Group, Mr. Festa's proposed TDC is within the range of competitive practice and is reasonable.

### ii.   The PI Committee's Additional Criticism Lacks Merit

19.   The PI Committee questions the inclusion of Dow Chemical Co., PPG Industries, Inc., and EI Dupont de Nemours (the "Three Companies") in the Industry Peer Group because these companies have larger revenues than the Debtors. These companies are properly included (as were each of the companies that have revenues less than the Debtors) because they are industry peers of the Debtors and, therefore, are sensitive to the same economic factors as the Debtors. See Original Affidavit at pg 2, ¶6; Supplemental Affidavit at pg. 4, ¶8. Further, the PI Committee has focused on these three companies, without also pointing out that the Industry Peer Group includes companies that are smaller than the Debtors. See id. In this respect, the

---

[7] Capitalized terms not otherwise defined in this Reply shall have the meanings given in the Motion or Original Affidavit, as applicable.

Debtors' own management considers these companies for purposes of evaluating business growth and success.

20. Also, the inclusion of companies that are both smaller and larger than the Debtors is appropriate to create an overall sample to compare to the Debtors. The Industry Peer Group achieves such a mix, as the ranking of Mr. Festa's TDC (with respect to the Industry Peer Group) is roughly in-line with the ranking of the Debtors' revenue.[8] Finally, Mr. Bubnovich has previously used the Three Companies in comparative groups for purposes of evaluating executive compensation, including in support of Mr. Festa's compensation as COO and President. See COO Motion, at Exhibit C, pg. 5. None of the objecting parties, including the PI Committee, previously expressed any concerns with the inclusion of the Three Companies in those comparative groupings.

### d. The Objectors Fail to Overcome the Presumption in Favor of the Debtors' Business Judgment

21. The objecting parties fail to present sufficient evidence to overcome the presumption in favor of the Debtors' reasonable business judgment with respect to the Debtors' determination that hiring Mr. Festa under the proposed compensation package is in the best interests of the Debtors and their estates.

22. Under section 363(b) of the Bankruptcy Code, a debtor has the initial burden to establish that it has a valid business purpose for using estate property outside the ordinary course of business. See In re Lionel Corp., 722 F.2d 1063, 1070-71 (2d Cir. 1983); see also, Fulton

---

[8] Specifically, Mr. Festa's TDC would be approximately 20% below the median compensation of CEOs at the Industry Peer Group, and Debtors' revenue of $2.3 billion is approximately 18% below the median revenue of the Industry Peer Group. See Supplemental Affidavit at pg. 4, ¶8.

11

State Bank v. Schipper, 933 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by "some articulated business justification"). Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest belief that the action was in the debtor's best interest. See In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992). A party in interest seeking to challenge the debtor's valid business purpose must "produce some evidence supporting its objections." In re Montgomery Ward Holding Corp., 242 B.R. 147, 155 (Bankr. D. Del. 1999).

23. Courts considering whether to approve executive compensation agreements have utilized this standard of review. See In re Montgomery Ward Holding Corp., 242 B.R. 147, 155 (Bankr. D. Del. 1999) (approving retention bonuses as within Debtor's sound business judgment); In re Aerovox, Inc., 269 B.R. 74, 80 (Bankr. D. Mass. 2001) ("Bankruptcy courts will approve key employees retention programs if the Debtor has used proper business judgment in formulating the program and the court finds the program to be 'fair and reasonable'...).

24. The Debtors have satisfied their burden of showing that Mr. Festa's proposed retention (i) has sound business justification and (ii) is fair and reasonable. Hiring Mr. Festa as CEO of the Debtors has business justification because (i) the Debtors initially hired Mr. Festa as COO with the expectation that he was being groomed to replace Mr. Norris; (ii) Mr. Festa has performed exceptionally well in his current role, and (iii) the Board convened and discussed this information in arriving at its decision to extend Mr. Festa an offer to serve as CEO. See Vanderslice Affidavit at p. 2, ¶¶ 4-6. The Original Bubnovich Affidavit and Supplemental Affidavit establish that Mr. Festa's proposed total compensation is fair and reasonable, when compared with the compensation of the CEOs of similar companies.

25. The objecting parties have failed to present any evidence to overcome the presumption in favor of the Debtors' sound business judgment. Instead, the objecting parties each attack the label given to Mr. Festa's "Emergence Bonus," without showing why the *substance* of the bonus is not appropriate in the context of these bankruptcy cases. The PI Committee has also attacked the Debtors' compensation expert's conclusions. However, the PI Committee fails to present any evidence to support its position and, as shown above, its analysis and the assumptions underlying its argument are each incorrect. Therefore, the objecting parties have failed to overcome the presumption in favor of the Debtors' business judgment, and the Court should grant the CEO Motion, in its entirety.

91100-001\DOCS_DE:106414.1

WHEREFORE, for the reasons set forth herein and in the CEO Motion, the Debtors request that the Court enter an order (i) authorizing the Debtors to employ Mr. Festa and Mr. Norris pursuant to the terms outlined in the CEO Motion, including, without limitation, Mr. Festa's entitlement to receive the "Emergence Bonus," and (ii) granting the Debtors such other and further relief as is just and proper.

Dated: March 11, 2005

KIRKLAND & ELLIS LLP
James H.M. Sprayregen, P.C.
James W. Kapp III
Janet S. Baer
Samuel L. Blatnick
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

_____
Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and
Debtors in Possession