# Exhibit B

Supplemental Bubnovich Affidavit

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |

**SUPPLEMENTAL AFFIDAVIT OF NICK BUBNOVICH IN FURTHER SUPPORT OF THE MOTION OF THE DEBTORS FOR AN ORDER AUTHORIZING THE DEBTORS TO ENTER INTO (A) AN EMPLOYMENT AGREEMENT WITH ITS CURRENT CHIEF OPERATING OFFICER ("COO") UNDER WHICH HE WOULD ASSUME THE POSITION OF CHIEF EXECUTIVE OFFICER ("CEO") OF THE DEBTORS AND (B) A POST-RETIREMENT AGREEMENT WITH THE CURRENT CEO WHEREBY HE WOULD PROVIDE CONSULTING SERVICES RELATED TO THE DEBTORS' <u>CHAPTER 11 CASES</u>**

I, Nick Bubnovich, being duly sworn, deposes and says:

1. I am a senior consultant in Watson Wyatt Worldwide's human capital consulting practice. I have over 25 years of experience in the field of compensation and benefits consulting, but I primarily focus on executive compensation. While I have special expertise with compensation programs for companies that have commenced bankruptcy cases under chapter 11 of Title 11 of the United States Code, or are otherwise financially distressed, I also assist both chapter 11 and non chapter 11 client companies in the design and evaluation of short and long-term incentive programs, as well as employment contracts and severance contracts and programs.

2. On January 20, 2005, I executed an affidavit (the "Original Affidavit") in support of *The Motion of the Debtors for an Order Authorizing the Debtors to Enter into (A) an Employment Agreement with its Current Chief Operating Officer Under Which He Would Assume the Position of Chief Executive Officer of the Debtors ("CEO") and (B) a Post-Retirement Agreement With the Current CEO Whereby He Would Provide Consulting Services*

K&E 10220204.3

*Related to the Debtors' Chapter 11 Cases* (the "Motion"). I submit this supplemental affidavit in further support of the Motion.

3. In my experience, when a company wishes to find a new CEO, it would typically have to either groom an individual from within the company or recruit an executive from a similar-sized or larger company, with the mutual expectation that the individual will succeed the current CEO. Therefore, Mr. Festa's promotion to CEO is not an atypical occurrence.

4. The "Emergence Bonus" serves the dual purpose of both: (i) motivating Mr. Festa to secure as quickly as possible an emergence of the Debtors from chapter 11; and (ii) providing him with a sufficient and competitive stay bonus with the Debtors as CEO for the next four years, if in fact emergence does not occur before May 2007. Specifically, the "Emergence Bonus" provides that Mr. Festa receives full payment of the bonus four years after the date on which the Debtors' initial plan of reorganization was filed, independent of whether the Debtors have emerged from bankruptcy. Therefore, the "Emergence Bonus" compensates him for his continued loyalty and service throughout the Debtors' reorganization process. Retention bonuses of this type are frequently provided to the CEOs of similar companies. The "Emergence Bonus" also provides Mr. Festa with an economic incentive to pursue emergence from bankruptcy, because the entirety of the bonus is payable eighteen months following emergence from chapter 11. Therefore, to the extent the Debtors do emerge from chapter 11 before May 2007, Mr. Festa would receive a quicker payment of the bonus.

5. Total Direct Compensation ("TDC") is the sum of base salary, annual incentive opportunity, and long term incentive opportunity. TDC is the most-appropriate benchmark to measure Mr. Festa's compensation. This is because the various components of TDC are not equally proportionate for all companies, as a particular company may rely on one component

K&E 10220204.8

rather than another to compensate its employees. TDC removes the distortions that may result from focusing on individual components. In my experience, companies (and their boards of directors) and other compensation consultants do not rely on the individual TDC components or Total Cash Compensation ("TCC") (i.e. the sum of salary and annual bonus opportunity) when comparing pay packages.

6. For purposes of comparing Mr. Festa's proposed compensation to the compensation packages given to the CEOs of similar companies, I have added the four-year average of the Emergence Bonus ($437,500, which represents $1,750,000/4) to Mr. Festa's proposed TDC. The results of this analysis are that Mr. Festa's TDC is: (i) 12.1 % below the Industry Peer Group (as defined in the Original Motion) median; and (ii) 18.4% above the Survey Group (as defined in the Original Motion) median and 24% below the Survey Group 75th percentile. Accordingly, even if the Emergence Bonus is added to Mr. Festa's TDC, his TDC is still below the median for the Industry Peer Group. In addition, while his TDC is above the median for the Survey Group, it is still well below the 75th percentile for the Survey Group. When the Debtors and similar companies wish to attract well-qualified candidates for executive positions, they will often have to offer compensation packages that place such candidates' respective TDCs between the median and the 75th percentile (of the appropriate peer group). Accordingly, no matter how the data is analyzed, and whether benchmarked against the Industry Peer Group or Survey Group, Mr. Festa's proposed TDC is within the range of competitive practice.

7. Dow Chemical Co., PPG Industries, Inc., and EI Dupont de Nemours should each be included in the Industry Peer Group - as were each of the companies that have revenues less than the Debtors - because they are industry peers of the Debtors and, therefore, sensitive to the

3.

K&E 10220204.8

same economic factors as the Debtors. Further, the inclusion of companies that are both smaller and larger than the Debtors is necessary to provide a mix of data that creates an overall sample that is comparable to the Debtors. In this respect, the ranking of Mr. Festa's TDC (with respect to the Industry Peer Group) is roughly in-line with the Debtors revenue rank among these companies. Specifically, Mr. Festa's TDC (excluding the "Emergence Bonus") would be approximately 20% below the median compensation of CEOs at the Industry Peer Group, and Debtors' revenue of $2.3 billion is approximately 18% below the median revenue of the Industry Peer Group.

*Nick Bubnovich*
Nick Bubnovich

SWORN to and SUBSCRIBED
before me this 11 day
of March, 2005.

*John C Shiray*
Notary Public

Official Seal
John C Shiray
Notary Public State of Illinois
My Commission Expires 09/06/06

My Commission Expires: 9-6-06

4

K&E 10220204.3