## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., *et al.*, | Case No. 01-01139 (JFK) |
| Debtors. | (Jointly Administered) |

## REPLY BRIEF TO W.R. GRACE'S OBJECTION TO PACIFICORP AND THE VANCOTT BAGLEY CORNWALL & MCCARTHY 401(K) PROFIT SHARING PLAN'S MOTION FOR LEAVE TO FILE LATE PROOFS OF CLAIM

Richard S. Cobb (I.D. No. 3157)
Megan N. Harper (I.D. No. 4103)
LANDIS RATH & COBB LLP
919 Market Street, Suite 600
Wilmington, DE 19801

-and –

Steven J. McCardell
Jared L. Inouye
MABEY & MURRAY LC
1000 Kearns Building
136 South Main Street
Salt Lake City, UT 84101-1685
(801) 320-6700

-and-

J. Robert Nelson
VANCOTT, BAGLEY, CORNWALL &
MCCARTHY
50 South Main Street
Salt Lake City, UT 84144-0450
(801) 237-0270

Counsel to PacifiCorp and the VanCott Bagley
Cornwall & McCarthy 401(k) Profit Sharing Plan

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................... 1

SUMMARY OF ARGUMENT ............................................................................... 1

ADDITIONAL FACTS ........................................................................................ 2

ARGUMENT ....................................................................................................... 5

A.    PacifiCorp Has a Claim Against Grace Under CERCLA ............................... 6

B.    The Debtor Had a Duty to Provide Actual Notice of The Bar Date
      to PacifiCorp, a Known Creditor.................................................................. 8

      1.    *Under Supreme Court Precedent, PacifiCorp*
            *Was Reasonably Ascertainable*............................................................ 9

      2.    *PacifiCorp Was Reasonably Ascertainable Even If*
            *PacifiCorp Was Not Readily Identifiable Through*
            *The Debtor's Books and Records* ...................................................... 10

C.    Given Grace's Knowledge of Its Environmental Liability Arising From
      Vermiculite Intermountain's Operations, It Was Reasonable For Grace
      To Perform A Simple Title Search.............................................................. 13

D.    PacifiCorp Was Entitled to Receive Actual Notice of the Bar Date Even
      Though It Knew of Grace's Bankruptcy Proceedings................................... 15

E.    The VanCott Plan Also Holds A Claim Against Grace ................................ 16

F.    The VanCott Plan Was A Known Creditor of Grace and Entitled to
      Actual Notice of the Bar Date ................................................................... 16

G.    VanCott Failed to Receive Actual Notice .................................................. 18

CONCLUSION.................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Chemetron Corp. v. Jones,*
72 F.3d 341 (3d Cir. 1995)............................................................. 8, 9, 10, 13, 14, 15

*City of New York v. New York, N.H. & H.R. Co.,*
344 U.S. 293 (1953)................................................................................ 8, 15

*Concrete Sales and Services, Inc. v. Blue Bird Body Co.,*
211 F.3d 1333 (11th Cir. 2000) ...................................................................... 8

*In re Argonaut Fin. Serv., Inc.,*
164 B.R. 107 (N.D. Cal. 1994) ..................................................................... 11

*In re Bicoastal Corp.,*
147 B.R. 807 (Bankr. M.D. Fla. 1992) ........................................................ 14, 15

*In re Eagle Bus. Mfg., Inc.,*
62 F.3d 730 (5th Cir. 1995) ......................................................................... 18

*In re Longardner & Associates, Inc.,*
855 F.2d 455 (7th Cir. 1988) ....................................................................... 19

*Jones-Hamilton v. Beazer Materials,*
972 F.2d 688 (9th Cir. 1992) ......................................................................... 7

*Mennonite Bd. of Missions v. Adams,*
462 U.S. 791 (1983).............................................................................. 8, 9, 10

*Morton Int'l, Inc. v. A.E. Staley Mfg. Co.,*
343 F.3d 669 (3d Cir. 2003)........................................................................... 8

*Mullane v. Central Hanover Bank & Trust Co.,*
339 U.S. 306 (1950)....................................................................................... 9

*Schroeder v. City of New York,*
371 U.S. 208 (1962).............................................................................. 9, 10, 11

*Solow Building Co., LLC v. ATC Associates, Inc.,*
175 F. Supp. 2d 465 (E.D.N.Y. 2001) ....................................................... 12, 13

*Spring Valley Farms, Inc. v. Crow (In re Spring Valley Farms),*
863 F.2d 832 (11th Cir. 1989) ..................................................................... 16

*Sylvester Brothers Development,*
133 B.R. 648 (D. Minn. 1991) ................................................................................. 13

*Texaco Inc. v. Sanders (In re Texaco Inc.),*
182 B.R. 937 (Bankr. S.D.N.Y. 1995) ............................................................ 13-14, 15

*Tulsa Professional Collection Serv., Inc. v. Pope,*
485 U.S. 478 (1988) ................................................................................................. 10

*United States v. Aceto Agric. Chem. Corp.,*
872 F.2d 1373 (8th Cir. 1989) .................................................................................... 7

*U.S. v. Hercules,*
247 F.3d 706 (8th Cir. 2001) ................................................................................... 7-8

*United States v. Northeastern Pharm. & Chem. Co.,*
810 F.2d 726 (8th Cir. 1986) ..................................................................................... 7

*U.S. v. Shell Oil Co.,*
294 F.3d 1045 (9th Cir. 2002) .................................................................................... 7

*Walker v. City of Hutchinson,*
352 U.S. 112 (1952) ................................................................................................... 9

*Waterville Industries, Inc. v. First Hartford Corporation,*
124 B.R. 411 (D. Maine 1991) ...................................................................... 12, 13, 17

## STATUTES AND RULES

11 U.S.C. § 101(5) ................................................................................................... 16

42 U.S.C. § 9607(a) ................................................................................................... 6

42 U.S.C. § 9607(a)(3) ............................................................................................... 7

42 U.S.C. § 9613(f)(1) ............................................................................................... 6

CERCLA Section 107(a) ............................................................................................ 6

CERCLA Section 107(a)(3) ........................................................................................ 7

CERCLA Section 113(f)(3)(b) .................................................................................... 6

Federal Rules of Bankruptcy Procedure Rule 9006(e) .............................................. 18

## PRELIMINARY STATEMENT

A hearing on the PacifiCorp and the VanCott Bagley Cornwall & McCarthy 401(K) Profit Sharing Plan's Motion For Leave to File Late Proofs of Claim (the "Motion")[1] and Debtors' Objection thereto was held on February 28, 2005 (the "Hearing"). At the Hearing, the Court ordered the parties to submit additional briefing on the issues of (1) whether PacifiCorp and the VanCott Plan have a claim against the Debtor, and (2) whether the Debtor had a duty to provide PacifiCorp and the VanCott Plan with actual notice of the bankruptcy claims bar date. PacifiCorp and the VanCott Plan hereby submit this Reply Brief in support of the Motion.

## SUMMARY OF ARGUMENT

Under CERCLA, Grace is liable to PacifiCorp and the VanCott Plan and PacifiCorp and the VanCott Plan have a right to contribution against Grace. Grace licensed its patented vermiculite exfoliation process to Vermiculite Intermountain. Grace licensed Vermiculite Intermountain to process and distribute various vermiculite-based products under various Grace trademarks. Pursuant to these licenses, Grace processed Vermiculite Intermountain vermiculite ore containing harmful asbestos, and Grace, for many years, received a royalty for every bag of processed vermiculite sold by Vermiculite Intermountain. The arrangements between Grace and Vermiculite Intermountain resulted in the release of asbestos and the contamination of land currently owned by PacifiCorp and formerly owned by the VanCott Plan. Under CERCLA, Grace is an "arranger" and therefore is a potentially responsible party ("PRP") since Grace arranged for the disposal of a hazardous substance at the Vermiculite Intermountain Site.

The Debtor had a duty to provide actual notice to PacifiCorp and VanCott since both are known creditors. Grace knew that it had contributed to contaminating certain property located at "333 West First Street" and accordingly scheduled an environmental claim for that site. Grace

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

knew that it was subject to environmental liability arising from Vermiculite Intermountain's operations. Under relevant case law, Grace had a duty to provide actual notice to claimants, such as PacifiCorp and the VanCott Plan, to whom Grace reasonably knew it was liable.

## ADDITIONAL FACTS

Intermountain Insulation is the immediate predecessor company of Vermiculite Intermountain. See Certificate of Amendment to Intermountain Insulation Company's Articles of Incorporation, attached hereto as Exhibit 1.

Vermiculite Intermountain conducted its operations at 333 West First South in Salt Lake City, Utah. See Corporation Annual Report, attached hereto as Exhibit 2; and Map of North Half of Block 66 (created by PacifiCorp from publicly available sources), Salt Lake City, Utah, attached hereto as Exhibit 3.

Grace scheduled a claim for "Intermountain Insulation" at "333 West First Street" in Salt Lake City, Utah. See Schedule F, attached to Motion as Exhibit G.

"333 West First Street" is located on Block 66 in downtown Salt Lake City. See Affidavit of Tina M. Perkins, attached hereto as Exhibit 4, ¶ 6.

PacifiCorp is one of the current owners of Block 66. Exhibit 4, ¶ 7. In 1984, PacifiCorp's predecessor in interest, Utah Power & Light Company, purchased from the VanCott Plan,[2] a parcel of property in Block 66 previously owned and operated by Intermountain Insulation and Vermiculite Intermountain. See Administrative Order on Consent, attached to Motion as Exhibit B, ¶ 8; Affidavit of Stephen D. Swindle, attached to Motion as Exhibit H.

A title company would have been able to identify the current owners of Block 66 within a matter of minutes. Exhibit 4, ¶ 9, 11. The cost of such a search is nominal, if there is any cost at all. Exhibit 4, ¶ 10-11.

---

[2] PacifiCorp's environmental claim against Grace has never been transferred.

Grace owned the patented vermiculite exfoliation process and licensed Vermiculite Intermountain to use the process. See unsigned Patent License Agreement between Vermiculite Intermountain and W.R. Grace effective July 1, 1972, attached hereto as Exhibit 5, pp. 1-3; Letter from Grace to Vermiculite Intermountain dated October 10, 1975, attached hereto as Exhibit 6; Patent License Agreement between Robinson Insulation Company and W.R. Grace dated September 1974, attached hereto as Exhibit 7, pp. 1-3.

Grace owned various trademarks under which Vermiculite Intermountain marketed and distributed various vermiculite-based products. See Sales and Trademark Licensing Agreement between W.R. Grace and Southwest Vermiculite Company dated June 1975, attached hereto as Exhibit 8, pp. 1, 9-11; Letter from Grace to Southwest Vermiculite Co. dated October 10, 1975, attached hereto as Exhibit 9; Exhibit 6; and Agreement between Zonolite Company and Robinson Insulation Company dated June 1957, attached hereto as Exhibit 10, pp. 1-2.

Grace, through its subsidiary Construction Products Division and its predecessors, entered into certain agreements with Vermiculite Intermountain, as well as other similarly situated "processing distributors" that exfoliated and marketed the Libby vermiculite. In the agreements, Grace agreed: (i) to supply Vermiculite Intermountain with vermiculite ore from the Libby mine; (ii) to license Vermiculite Intermountain to market the exfoliated ore under one of several other Grace trade names, including the Zonolite and Monokote brand names;[3] and (iii) to provide technical assistance on the use, manufacture and marketing of the various products. Exhibit 10, pp. 1-2; Exhibit 7, pp. 1-3; and Exhibit 8, pp. 1-3, 9-11.

---

[3] Exhibit 8 includes an attachment that lists all of the Vermiculite Intermountain Licensed Products at that time.

Prior to 1975, Grace received a royalty from Vermiculite Intermountain for every bag of "licensed product" sold by Vermiculite Intermountain. See Exhibit 5, p. 5; Exhibit 7, pp. 3-4; and Exhibit 10, p. 3.

Grace provided detailed specifications to the processing distributors on the various products. See Memorandum from J.A. Behan to "Dallas and Zono Licensees" dated Feb 27, 1976 attached hereto as Exhibit 11; Exhibit 6; Exhibit 10, Schedule A. One purpose for doing so was to allow Grace to "exercise control over the quality of vermiculite which is offered to the fertilizer trade [and] provide some royalty income." Letter from Brown, Jackson, Boettcher & Dienner to Harry Dresser of the Zonolite Company dated June 1954, attached hereto as Exhibit 12.

In 1976, Grace notified the processing distributors regarding OSHA standards relating to the "'tramp' mineral found in vermiculite deposits ... tremolite."[4] Memorandum from Grace Construction Products Division dated March 17, 1976, attached hereto as Exhibit 13, p. 1. Also Grace stated, "[a]lthough we remove a great deal of tremolite during processing, it is not now possible to provide our ore customers with a totally tremolite-free product . . . . **Significant amounts of the tremolite are removed during the expansion process.**" Exhibit 13, p. 2 (emphasis added).

In the course of pursuing its Libby environmental claims against Grace, EPA has sent Grace at least two Requests for Information Regarding the Libby Asbestos Site. See Excerpt from W.R. Grace & Co. – Conn. Response to the Second Request for Information Regarding the Libby Asbestos Site, attached hereto as Exhibit 14.

---

[4] Tremolite is the harmful substance in asbestos.

In response to EPA's inquiry as to when Grace found tremolite in the Libby vermiculite ore, Grace responded in 2000 that it was aware of the presence of tremolite in the ore when it purchased the Zonolite company in 1963. Exhibit 14, pp. 13-14.

In response to EPA's request to provide a list of non-Grace controlled companies that purchased Libby vermiculite, Grace provided a list of 36 licensees, one of which was "Verm. – Intermountain, Inc." Exhibit 14, p. 17, Attachment A. Grace also listed 129 "industrial" entities that purchased Libby Vermiculite. Exhibit 14, Attachment A.

Grace knew it had arranged for and profited from the contamination of the Vermiculite Intermountain site on Block 66 in downtown Salt Lake City. Exhibit 14. Grace filed bankruptcy on April 2, 2001 primarily to escape liability from this kind of contamination.

On March 28, 2003, EPA filed a timely proof of claim, claim number 00009634, asserting claims for environmental contamination at the Vermiculite Intermountain Site. See EPA's Claim, attached to Motion as Exhibit A.

## ARGUMENT

Under CERCLA, both PacifiCorp and the VanCott Plan have a direct statutory claim against Grace. Both PacifiCorp and the VanCott Plan should be allowed to file a late claim because they were "known" creditors, entitled to actual notice of the Bar Date, and Grace failed to provide PacifiCorp or the VanCott Plan with such notice. Moreover, given that Grace knew of its environmental liability at the Vermiculite Intermountain Site, that Grace scheduled a claim for Intermountain Insulation, and that EPA filed a timely proof of claim for the Vermiculite Intermountain Site, Grace cannot now claim that it will be prejudiced if PacifiCorp and the VanCott Plan are allowed to file their claims for the same site.

**A. PacifiCorp Has a Claim Against Grace Under CERCLA.**

PacifiCorp is entitled to statutory contribution from Grace for costs it has incurred in the

remediation of the Vermiculite Intermountain CERCLIS Site.  Section 113(f)(3)(b) of the

Comprehensive Environmental Response Compensation and Liability Act ("CERCLA")

provides that "[a] person who has resolved its liability to the United States for some or all of a

response action or for some or all of the costs of such action in an administrative or judicially

approved settlement may seek contribution from any person who is not party to a settlement [and

who has not entered into a similar agreement with the United States]."  42 U.S.C. § 9613(f)(1).

PacifiCorp entered into an Administrative Order on Consent ("AOC") with EPA in August of

2004 for the Vermiculite Intermountain Site, which contained a covenant not to sue from EPA.

See AOC attached to Motion as Exhibit B.  Thus, PacifiCorp has a valid CERCLA contribution

claim against Grace so long as (1) Grace has not entered into an administrative or judicial

settlement with EPA, and (2) Grace is a PRP for the Vermiculite Intermountain Site.  Each of

these facts is undisputed.

Section 107(a) of CERCLA imposes liability for response costs on four classes of

"potentially responsible parties."  These four categories are:  (1) current owners and operators of

the site; (2) owners and operators of the site at the time of "disposal of any hazardous

substance"; (3) "any person who by contract, agreement, or otherwise arranged for disposal or

treatment"; and (4) "any person who accepts or accepted any hazardous substances for transport

to disposal."  42 U.S.C. § 9607(a).

Grace's objection to PacifiCorp's claim focuses on the first two categories of liability

under section 107(a) by asserting that it was never an owner or operator of the Vermiculite

Intermountain Site.  However, Grace fails to recognize its liability under the third category, as an

arranger for the disposal or treatment of asbestos-contaminated vermiculite at the Site.

Grace arranged for Vermiculite Intermountain to remove "[s]ignificant amounts of the tremolite" from the Grace products "during the expansion process." Exhibit 13, p. 2.

Arranger liability falls upon companies, like Grace, that enter into processing agreements with other companies for the manufacture of a product when the manufacturing process itself results in significant contamination to the processor's property. United States v. Aceto Agric. Chem.Corp., 872 F.2d 1373 (8th Cir. 1989). In Aceto, the court rejected a chemical company's characterization of its processing contract as a mere service contract and recognized the chemical company's potential arranger status. Id. at 1381-82. Similarly, in Jones-Hamilton v. Beazer Materials, Beazer supplied raw materials to a contract chemical formulator to produce wood preservation compounds. 972 F.2d 688, 690 (9th Cir. 1992). The court found Beazer liable because the agreement between Beazer and the chemical formulator indicated that Beazer retained ownership of the materials supplied and contemplated two-percent spillage of the materials. See id. at 694-95.

CERCLA case law establishes that "parties who did not literally own or physically possess hazardous waste at the time it was disposed of or released" may be liable as CERCLA arrangers. U.S. v. Shell Oil Co., 294 F.3d 1045, 1058 (9th Cir. 2002) (citing United States v. Northeastern Pharm. & Chem. Co., 810 F.2d 726, 743-744 (8th Cir. 1986) ("We believe requiring proof of personal ownership or actual physical possession of hazardous substances as a precondition for liability under CERCLA § 107(a)(3), 42 U.S.C. § 9607(a)(3), would be inconsistent with the broad remedial purposes of CERCLA."). Furthermore, some courts have held entities liable as arrangers even when the parties characterize the relationship as a "sale" of a hazardous substance rather than an arrangement for disposal. See, e.g., U.S. v. Hercules, 247

F.3d 706 (8th Cir. 2001) (imposing indirect arranger liability, even without clear evidence of retained ownership throughout the transaction).

The critical elements of arranger liability are present.  Grace knew of the asbestos content of the vermiculite ore; Grace knew that its licensed process released the asbestos from the ore and would result in the disposal of the asbestos; Grace made the decision to place the ore in the hands of its licensee, Vermiculite Intermountain, to process, and remove asbestos from the ore to make Grace's licensed product, Zonolite; Grace retained an interest in its vermiculite ore (and its asbestos) by virtue of its licensing arrangements and retained a royalty in the ultimate licensed product.  See Morton Int'l, Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669, 677 (3d Cir. 2003); Concrete Sales and Services, Inc. v. Blue Bird Body Co., 211 F.3d 1333, 1336-37 (11th Cir. 2000).

Accordingly, under CERCLA and applicable case law, Grace is an arranger and a PRP.  Moreover, under CERCLA, PacifiCorp has a contribution claim against Grace.

**B.  The Debtor Had a Duty to Provide Actual Notice of the Bar Date to PacifiCorp, a Known Creditor**

PacifiCorp was a known creditor and therefore was entitled to actual notice of the bar claims date.  Due Process requires that "known" creditors must be provided with "actual written notice" of a debtor's bar claims date.  Chemetron Corp. v. Jones, 72 F.3d 341, 346 (3d Cir. 1995); City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 296 (1953).  A "'known' creditor is one whose identity is either known or 'reasonably ascertainable by the debtor.'"  Chemetron, 73 F.3d at 346.  "A creditor's identity is 'reasonably ascertainable' if that creditor can be identified through 'reasonably diligent efforts.'"  Id. (quoting Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798 n.4 (1983)).

**1.      *Under Supreme Court Precedent, PacifiCorp Was Reasonably Ascertainable***

The Third Circuit, in <u>Chemetron</u>, held that <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 317 (1950), "set the standard for notice required under the Due Process Clause in Chapter 11 bar date cases." <u>Chemetron</u>, 73 F.3d at 346 n.1. In <u>Mullane</u>, the Supreme Court held that trust beneficiaries whose names and addresses were known were entitled to actual notice of an action to settle the accounts of the trust. 339 U.S. at 318. The Supreme Court has applied <u>Mullane</u> in several cases, holding that a person whose name is reasonably ascertainable from public records is entitled to actual notice. <u>Mennonite</u>, 462 U.S. at 798; <u>Schroeder v. City of New York</u>, 371 U.S. 208, 212-13 (1962); <u>Walker v. City of Hutchinson</u>, 352 U.S. 112, 116 (1952).

<u>Schroeder</u> involved a statute allowing the city to condemn property after publication notice to affected landowners. The statute violated the due process clause because "a [landowner] whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question" is entitled to actual notice. <u>Schroeder</u>, 371 U.S. at 212-13. The landowner's "name and address were readily ascertainable from both deed records and tax rolls." <u>Id.</u> Similarly, in <u>Mennonite</u>, the Court held that a mortgagee identified in a publicly recorded mortgage is "reasonably identifiable" and entitled to actual notice of a proceeding to sell the mortgaged property for nonpayment of taxes. <u>Mennonite</u>, 462 U.S. at 798. This was true even though the mortgage on file only identified the mortgagee by name and did not list an address. The Court stated, "[w]e assume that the mortgagee's address could have been ascertained by reasonably diligent efforts." <u>Id.</u> at 798 n.4.

Under Supreme Court precedent, it is clear that PacifiCorp was reasonably ascertainable and entitled to actual notice. First, Grace knew of its environmental liability relating to the

Vermiculite Intermountain Site, located at 333 West First Street on Block 66 in downtown Salt Lake City. Grace knew it had sold Libby asbestos to Vermiculite Intermountain/Intermountain Insulation's exfoliation facility at 333 W. First Street over many years. See Grace Objection at ¶ 3, n.3. Grace knew that it had licensed Vermiculite Intermountain to use its patented vermiculite processing techniques and trademarked product names. Grace knew that it received royalty payments on a host of Grace products manufactured and sold by Vermiculite Intermountain. Grace knew that environmental and health hazards were directly linked to the exfoliation of Libby asbestos and told the EPA that the Vermiculite Insulation Site was an exfoliation site. Grace scheduled an environmental claim relating to Intermountain Insulation at "333 W. First Street." Indeed, Grace is currently in bankruptcy due to the litigation stemming from Libby asbestos.

Second, like the landowners in Schroeder and Mennonite, PacifiCorp's identity was in the public records as the current owner of certain property located on Block 66 on which Vermiculite Intermountain conducted its exfoliation operations. Thus, under Schroeder and Mennonite, because PacifiCorp's name was listed in the public records, PacifiCorp's identity and location could have been ascertained by reasonably diligent efforts.

### 2. *PacifiCorp Was Reasonably Ascertainable Even If PacifiCorp Was Not Readily Identifiable Through The Debtor's Books and Records*

The Third Circuit has held that while a debtor's duty of reasonable diligence does not require "a vast, open-ended investigation," the debtor has at least a duty to review its "own books and records." Chemetron, 73 F.3d at 346-47. In addition, the Third Circuit has acknowledged that "[s]ituations may arise when creditors are 'reasonably ascertainable,' although not identifiable through the debtor's books and records." Id. at 347 n.2 (citing Tulsa Professional Collection Serv., Inc. v. Pope, 485 U.S. 478, 491 (1988)). See also Mennonite, 462 U.S. at 798

(as discussed above); and <u>Schroeder v. City of New York</u>, 371 U.S. at 212-13 (1962) (as discussed above).

As noted, the Supreme Court has repeatedly held that due process requires actual notice to a claimant who is identifiable in public records. This rule applies in bankruptcy. In <u>In re Argonaut Fin. Serv., Inc.</u>, 164 B.R. 107, 112 (N.D. Cal. 1994), the court concluded that Argonaut, a co-debtor, was "aware of certain facts as to alert a reasonable debtor that [claimants] might have a claim against it" and "should have known of the possibility of such claims" where (1) Argonaut knew that the claimants were assignees of a certain promissory note and a certain deed of trust, and (2) "it would have been easy for Argonaut to have learned of the assignment and gotten the list of assignees." <u>In re Argonaut Fin. Serv., Inc.</u>, 164 B.R. at 112. The court noted that the assignment was recorded in official county records. <u>Id.</u>

The facts of this case are stronger and much more compelling than the facts of <u>Argonaut</u>. In <u>Argonaut</u>, the court found that the debtor's knowledge of the **possibility** of liability was sufficient to make the claimant a known creditor. <u>In re Argonaut Fin. Serv., Inc.</u>, 164 B.R. at 112. Here, however, as discussed above, Grace had **concrete** knowledge that it was subject to environmental liability at and around Block 66.

Given Grace's knowledge that it was subject to environmental liabilities at and around Block 66, it would have been "easy" for Grace to identify and notify the parties to whom Grace would be liable. <u>See Argonaut</u>, 164 B.R. at 112. With minimum effort and nominal cost, it would have been an "easy" task for Grace to identify the current owners of Block 66.

Cases in which courts have refused to discharge a debtor's environmental obligations for failure to provide actual notice hold that a debtor has a duty to provide actual notice if the debtor has facts which would alert a reasonable debtor that a claimant might have a claim against it. In

Waterville Industries, Inc. v. First Hartford Corporation, the court held that the debtor did not

give proper notice to Waterville, since the debtor "knew of certain specific environmental claims

and knew of a class of claimants – subsequent titleholders . . . that it could have listed." 124

B.R. 411, 413 (D. Maine 1991). The court found that the debtor knew that environmental

agencies were pursuing specific environmental problems on the Waterville property, which the

debtor had previously owned. Id. "As a result, **it was on notice that successors in title to the**

**Waterville real estate . . . could be ultimately obliged to incur cleanup costs . . . giving them**

**a right to recovery against [the debtor]**." Id. (emphasis added).

In Solow Building Co., LLC v. ATC Associates, Inc., 175 F. Supp. 2d 465, 473

(E.D.N.Y. 2001), the court held that "[c]ase law seems to suggest that courts dispense with the

requirement of actual notice only in cases where a bankruptcy petitioner does not have in its

possession any information sufficient to alert the petitioner to the existence of a problem

underlying a claim in issue." The court determined that the debtor, an asbestos remediation

company, had a duty to provide actual notice to Solow because the debtor knew of its potential

liability to Solow. Id. The debtor knew that it had released asbestos into the environment while

performing the abatement; Solow sent letters addressed to the debtor informing the debtor about

the problem and that plaintiffs would hold the debtor liable; and the debtor was well aware of the

litigation between Solow and Solow's lessee over the condition of the property. Id. The court

held that the debtor's obligation to Solow was not discharged and allowed Solow to file a late

claim. Id.

PacifiCorp was therefore entitled to actual notice. In both Waterville Industries and

Solow, the debtors knew of specific parcels of real property, which posed known environmental

liabilities to such debtors. In Waterville Industries, the debtor knew that environmental agencies

were pursuing environmental problems on the property, 124 B.R. at 413; in Solow, the debtor

knew that its abatement action had resulted in asbestos contamination, 175 F. Supp. 2d at 473.

Here, there is no question that Grace knew of a specific parcel of property – "333 West First

Street" – that its processes had actually contaminated.

Like the debtor in Waterville, which knew of environmental liabilities and therefore "was

on notice that successors in title to the Waterville real estate . . . could be ultimately obliged to

incur cleanup costs," Grace was on notice that successors in title to Vermiculite Intermountain's

property could ultimately be obliged to incur cleanup costs.  Waterville Indus., 124 B.R. at 413.

Grace could easily have identified PacifiCorp.  A title searcher could have ascertained that

PacifiCorp owned property on Block 66 within a matter of minutes and for little or no cost.

The fact that Grace did not actually own the Subject Property does not distinguish cases

like Waterville Industries from the case at hand since liability under statutory obligations under

CERCLA extend beyond mere owners and operators of land.  For example, in Sylvester Brothers

Development, 133 B.R. 648 (D. Minn. 1991), the debtor did not own the contaminated land, but

was a PRP.  As a PRP, the court found that the debtor was required to give actual notice to the

owner of the contaminated land.  Grace holds the same CERCLA status as the debtors in

Sylvester Brothers Development and Waterville Industries – a PRP.  As discussed above,

"owners and operators" and "arrangers" are all PRPs.  Furthermore, the requirements of due

process apply to Grace, whether or not it owned the Subject Property.

C.      **Given Grace's Knowledge of Its Environmental Liability Arising From Vermiculite Intermountain's Operations, It was Reasonable For Grace To Perform a Simple Title Search**

The difficulties discussed in Chemetron, which made a title search impossible under the

circumstances of that case are simply not present under the facts of this case.  In cases like

Chemetron, 72 F.3d at 347; Texaco Inc. v. Sanders (In re Texaco Inc.), 182 B.R. 937, 955

(Bankr. S.D.N.Y. 1995), or In re Bicoastal Corp., 147 B.R. 807, 809 (Bankr. M.D. Fla. 1992), (1) it was difficult to determine the area in which title searches were to be undertaken, and (2) the debtors would have been required to perform a large number of searches.

While Grace may argue that a simple current owner search would have been unreasonable, the nature of this case completely undermines that argument: (1) the core issue in Grace's bankruptcy is contamination caused by Grace's products; (2) Grace knew its products were processed at an identified expansion plant in Salt Lake City, knew of the potential claims, and knew an address from which PacifiCorp could have been identified with reasonable diligence; (3) Grace would not have had to incur much effort to determine this as to expansion plant sites – (i) EPA's proof of claim lists 30 environmental sites in 18 states total, of which only 13 are vermiculite expansion plants (located in the following 11 states – NJ, MD, PA (two sites), KY, MN, MT, UT (two sites), ND, CO, CA, WA), (ii) Grace knew that it had licensed its patented vermiculite exfoliation process and trademarks to 36 licensees; and (4) hiring title searchers to determine current owners for such sites is not an unreasonable burden, especially given that Grace paid approximately $4 million for its publication notice. This case does not involve scattered tort claimants or users of products in unknown locations, as in the cases cited by Grace. This case involves a known parcel of real property Grace's products contaminated, and a claim by the current owner.

Accordingly, the cases Grace relies on in its Objection – Chemetron, Texaco, and Bicoastal – are properly distinguished: all involve claimants who were not identifiable through a diligent search, and therefore were not "reasonably ascertainable." Chemetron, 72 F.3d at 347; Texaco, 182 B.R. at 955; Bicoastal Corp., 147 B.R. at 809.

In Chemetron, for example, of the twenty-one personal injury claimants asserting

exposure to chemicals, only two had actually occupied properties in the vicinity of the landfill.

And these two did not occupy the properties when the debtor filed for bankruptcy.  The Third

Circuit observed that "[w]e are hard-pressed to conceive of any way the debtor could identify,

locate, and provide actual notice to these claimants." Chemetron, 72 F.3d at 347.  The case at

hand is far different.  It does not involve speculative injuries to roving people.  It involves known

contamination to a discrete parcel of real property, the address of which was known to Grace.

In Texaco and Bicoastal, contamination from the debtors' property migrated to the

claimants' land.  In both cases, the courts determined that the debtors could not have known or

reasonably ascertained the extent of the toxic plumes emanating from the debtors' property.  The

courts further determined that the debtors did not know that the claimants' property had been

affected and that the debtors could not have undertaken a search for possible claimants since the

geographic area affected by the toxic plumes was unknown and very large.  Texaco, 182 B.R. at

955; Bicoastal, 147 B.R. at 809.  Here, however, Grace knew that Libby vermiculite had been

exfoliated on a specific portion of real property; Grace had the physical address of the property.

**D.     PacifiCorp Was Entitled to Receive Actual Notice of the Bar Date Even Though It
Knew of Grace's Bankruptcy Proceedings**

The fact that the customer service division of Utah Power & Light, a name under which

PacifiCorp does business, had a general knowledge of Grace's bankruptcy case and filed a

$1,375.58 proof of claim for electric service provided in a another city does not negate

PacifiCorp's constitutional right to actual notice of the Bar Date.  The Supreme Court has held

that actual knowledge of the bankruptcy case does not negate constitutionally required notice of

the claims bar date.  City of New York v. New York, N.H. & H.R. Co., 344 U.S. at 297.  Even

creditors who know about a bankruptcy case can assume that they will receive the reasonable

statutory notice.  Id.; Spring Valley Farms, Inc. v. Crow (In re Spring Valley Farms), 863 F.2d

832, 835 (11th Cir. 1989) (due process required the debtor to give actual notice of the bar date,

even though "the creditor had actual knowledge of the general existence of the bankruptcy

proceedings").

**E.      The VanCott Plan Also Holds a Claim Against Grace**

The foregoing arguments, it is submitted, apply equally to the VanCott Plan and compel

the conclusions that (a) the Plan holds a valid claim against Grace and (b) the Plan was a known

creditor of Grace entitled to actual notice of the fixing of a bar date for filing claims

As to the first point, the VanCott Plan, for nearly 20 years, owned a substantial part of

Block 66, including property occupied or owned by Grace's licensee Vermiculite Intermountain.

Indeed, it was only in 1998 that the Plan sold its last remaining portion of its Block 66 property

to La Quinta Inns.  Although the VanCott Plan has not yet expended sums in connection with

clean up of Block 66, as a longtime property owner, the Plan is considered and being treated both

by EPA and PacifiCorp as a PRP under CERCLA.  For the reasons set forth above with respect

to PacifiCorp, under CERCLA the VanCott Plan also holds a contribution claim against Grace.

Although that claim, at this stage, is contingent and unliquidated, it nonetheless qualifies as a

claim for bankruptcy purposes under 11 U.S.C. § 101(5).

**F.      The VanCott Plan Was a Known Creditor of Grace and Entitled to Actual Notice of
         the Bar Date**

As to the second point, the authorities cited above in Section B with respect to PacifiCorp

equally support the conclusion that, for purposes of notice of the bar date, the VanCott Plan must

be treated as a known creditor.  Those cases support the conclusion cited above in section B that

known creditors include not only those creditors known in fact, but those who would be

discovered through exercise of reasonable diligence.

PacifiCorp has pointed to Grace's familiarity with Block 66 and operations conducted thereon, its interest in those operations, its clear knowledge of the environmental problems associated with the property and the ease with which Grace could have determined current owners of Block 66 in support of its position that PacifiCorp was a known creditor of Grace for purposes of notice of the bar date.

In terms of this issue, the applicable facts with respect to the VanCott Plan are virtually identical. The same property is involved, Block 66. There is no difference in Grace's connection with the property or in its knowledge of the environmental implications. The only factual difference is that PacifiCorp is a current owner and the VanCott Plan a former owner of the property. That, however, is a difference without significance. For nearly twenty years, the VanCott Plan owned, as a matter of record, substantial portions of Block 66 that were formerly owned or occupied by Grace's licensee Vermiculite Intermountain. A quick and inexpensive search of local real estate records would have disclosed that long term ownership interest. The above-cited case of Waterville Industries, Inc. v. First Hartford Corporation, 124 B.R. 411, 414 (D. Maine 1991) found that, in identifying creditors for purposes of notice, it was reasonable to require the debtor, the former owner of a property with environmental problems, to determine and notify not only current, but also successor owners. It is equally reasonable in this case for Grace to have undertaken a simple date-down search to determine owners of Block 66 during the period that it was occupied by Grace's licensee. Such a search would have disclosed the VanCott Plan as an owner and PRP. As such, the VanCott Plan qualifies as a known creditor for purposes of service of the bar date notice.

## G.    VanCott Failed to Receive Actual Notice

In terms of notice, there is another factor which distinguishes the two movants. The notice of bar date was not served on PacifiCorp. In contrast, the relevant proof of service indicates that it was mailed to VanCott, Bagley Cornwall & McCarthy, LLP. On that basis, Grace contends that, under applicable law, the VanCott Plan in fact did receive actual notice of the bar date. The debtor is mistaken in that regard.

The fact that VanCott appeared on Grace's mailing list is not dispositive of proper service of the bar date notice. Grace's "actual notice" argument rests on the "presumption of receipt" that arises under both Rule 9006(e) of the Federal Rules of Bankruptcy Procedure and common law with respect to mailed pleadings. While there unquestionably is a presumption, it arises only with respect to pleadings that are properly mailed. In that regard, the court, in In re Eagle Bus. Mfg., Inc., 62 F.3d 730 (5th Cir. 1995) noted, "[t]o determine if a mailing was accomplished the courts may consider whether the notice was correctly addressed, whether proper postage was affixed, whether it was properly mailed, and whether a proper certificate of service was filed." Eagle involved a bar date notice which was served on a creditor at her last known address. The creditor, who had moved but failed to notify the debtor of her new address, contended that she had not in fact received the bar date notice. The Fifth Circuit held that "[m]ailing a notice by First Class U.S. Mail to Rogers' last known address was reasonably calculated to inform her of the bar date for filing proofs of claim. Therefore, we conclude that Rogers' due process rights were not violated." Id.

In this case, the VanCott Plan rests its argument of inadequate service on substantially more than a mere denial of receipt. The Supplemental Affidavit of Stephen D. Swindle, President of VanCott and a Trustee of the VanCott Plan, attached hereto as Exhibit 15, not only

denies that the notice of the bar date was received by VanCott, it goes on to identify three distinct problems with the alleged notice. In that regard, the deficiencies are clearly more significant than as addressed in <u>In re Longardner & Associates, Inc.</u>, 855 F.2d 455 (7th Cir. 1988) in which the only mailing error, failure to include a zip code, was found to weaken but not entirely overcome the presumption of notice.

The first of the problems was that the alleged notice was sent to the wrong party. The proof of service lists VanCott, the firm, but makes no mention of the Plan. Service never was effected on the potential claimant.

Next, even as to VanCott, the proof of service reflects mistakes in the address that was used. Like <u>Longardner</u>, the wrong zip code was used. More importantly, the indicated address failed to include a suite number. As indicated in the Supplemental Swindle Affidavit, based on experience, failure to include a suite number was material because, in the past, the oversight had resulted in non-delivery of other mail to the firm.

In view of the foregoing, the VanCott Plan submits that the presumption of actual notice based on mailing has been overcome and that the Plan cannot be deemed to have received actual notice of the bar date.

## CONCLUSION

For the foregoing reasons, the Motion should be granted.

Dated: April 4, 2005

**LANDIS RATH & COBB LLP**

By: _____
Richard S. Cobb (I.D. No. 3157)
Megan N. Harper (I.D. No. 4103)
919 Market Street, Suite 600
Wilmington, DE 19801
(302) 467-4400

-and-

Steven J. McCardell
Jared L. Inouye
MABEY & MURRAY LC
1000 Kearns Building
136 South Main Street
Salt Lake City, UT 84101-1685
(801) 320-6700

-and-

J. Robert Nelson
VANCOTT, BAGLEY, CORNWALL &
MCCARTHY
50 South Main Street
Salt Lake City, UT 84144-0450
(801) 237-0270

Counsel to PacifiCorp and the VanCott Bagley
Cornwall & McCarthy 401(k) Profit Sharing
Plan