# EXHIBIT 8

## SALES AND TRADEMARK LICENSING AGREEMENT

THIS AGREEMENT made as of the _17_ day of _June_,
1975 by and between W. R. GRACE & CO., a Connecticut corpora-
tion, acting through its Construction Products Division with
a place of business at 62 Whittemore Avenue, Cambridge,
Massachusetts ("Grace") and SOUTHWEST VERMICULITE COMPANY, a New
Mexico corporation with a place of business at 5119 Edith Boulevard,
N.E., Albuquerque, New Mexico ("Company").

### W I T N E S S E T H:

WHEREAS, Grace produces vermiculite ore; and

WHEREAS, the Company is in the business of expanding
vermiculite ore and desires to purchase vermiculite ore from
Grace; and

WHEREAS, Grace owns a number of valuable trademarks and
has acquired considerable good will in said trademarks; and

WHEREAS, Company would like to sell certain products
under certain trademarks of Grace; and

WHEREAS, Grace is willing to sell vermiculite ore and to
license said trademarks to Company subject to the terms and
conditions hereinafter specified.

NOW THEREFORE, in consideration of the mutual promises,
undertakings and covenants herein set forth the parties have
agreed as follows:

1. _Definitions_ As used in this Agreement, the following
terms shall have the meanings indicated.

WRG05424453

S8020118617

(a)  "Vermiculite ore" means concentrates of
unexpanded vermiculite ore in the various sizes produced at
Grace's mines from time to time meeting the specifications set
forth in Schedule A.

(b)  "Ton" means short ton.

(c)  "Contract year" means a continuous period of
twelve calendar months commencing on the 1st day of January in
each calendar year in which this Agreement is in effect and
ending on the 31st day of December in the same calendar year.

(d)  "Trademarks" mean those trademarks (or any
portion thereof) enumerated in the attached Schedule B.

(e)  "Licensed Products" means products containing
vermiculite ore supplied by Grace and specifically identified
in the attached Schedule B.

(f)  "Confidential Information" means any and all
information, data, specifications, techniques, formulae and
manufacturing processes concerning Licensed Products and any
other information or knowhow of any nature disclosed by Grace
to Company whether disclosed orally, visually or in writing
and whether or not patentable relating to the processing of
vermiculite ore or the use of vermiculite (expanded or
unexpanded) alone or in combination with other matter or in
any process provided that confidential information shall not
include any information which (i) was already known to
Company at the time of receipt thereof from Grace (as
evidenced by written records of Company) or (ii) was known
to the general public at the time of receipt from Grace or
(iii) subsequently becomes known to the general public through

- 2 -

WRG05424454

S8020118618

no fault or omission on the part of Company.

(g)  "Territory" means the <u>State of New Mexico</u> and
all counties in Texas west of and including the following
counties: <u>Lipscomb, Hemphill, Wheeler, Collingsworth, Childress,
Cattle, King Stonewall, Scurry, Mitchell, Sterling, Irion,
Crockett, Terrell.</u>

2.  <u>Purchase and Sale of Ore</u>

(a)  Upon reasonable advance notice, Grace agrees
to sell to Company all the vermiculite ore which the Company
requires for expansion in the plant now operated by Company
at Albuquerque, New Mexico, PROVIDED THAT during the term hereof
Grace shall not be required to furnish more than 4000 tons of
vermiculite ore in any full contract year.

If Grace is <u>for any reason unable to supply</u> the
quantity of any size of vermiculite ore ordered by Company
during any contract year, then Grace may at its election offer
other available sizes of vermiculite ore in lieu of the sizes
ordered by Company.  If Company is not willing to accept the
sizes offered by Grace by way of substitution, then Company may
purchase the sizes of ore ordered from another supplier, but
no rights are granted herein for the use of Trademarks in
connection with products made or manufactured from such ore.

- 3 -

WRG05424455

S8020118619

(b) If the Company should in any contract year require ore in an amount in excess of the maximum amount of ore which Grace is obligated to sell to Buyer hereunder during that contract year, Grace, to the extent consistent with its other commitments and its own consumption, shall endeavor (but shall not be obligated) to supply such excess.

3. Prices

(a) Company shall pay for the various sizes of vermiculite ore purchased hereunder at prices set from time to time. Grace may by written notice increase or decrease said prices for any size of vermiculite ore, such revised price to become effective on the date stated in such notice but in no event sooner than sixty (60) days from the date of the giving of such notice. Such increased or decreased prices shall be effective in respect of all vermiculite ore shipped by Grace to Company on or after the effective date of such price change. Such changed prices shall remain in effect until again decreased or increased as aforesaid.

(b) If Grace is prevented from revising prices or from continuing any price already in effect by any action of government or by reason of compliance with any request of government, Grace may terminate this Agreement without liability to Company upon not less than ninety (90) days prior written notice to Company.

WRG05424456

58020118620

(c)   All prices shall be f.o.b. Grace's plant.

4.   Payment

Invoices are payable at the offices of Grace, at 62 Whittemore Avenue, Cambridge, Massachusetts, directed to the Accounts Receivable Department, (or to such other place as Grace may from time to time direct) net thirty days from date of invoice. Demurrage charges that may be involved in connection with shipments hereunder shall be payable by Company as shall be charges for delivery of vermiculite ore other than in bulk. If Company shall fail to fulfill the terms of payment, Grace may, at its option and without pre-judice to any other lawful remedy, defer further shipments hereunder until such default is made good, treat such default as a breach of this entire Agreement or terminate this Agreement.

5.   Shipments, Weights, and Risk of Loss

(a)   Grace's invoices, weights, volumes, sizes, and tares shall be deemed prima facie correct except that weights of a common carrier shall be deemed conclusive. Vermiculite ore shall be shipped in bulk unless otherwise agreed.

(b)   Grace shall not be liable for any delay in transportation, however occasioned.

(c)   Title to and all risk of loss of vermiculite ore sold hereunder shall pass to Company upon delivery thereof f.o.b. Grace's plant.

6.   Examination, Suitability and Claims

Company shall examine and test each shipment of vermiculite ore promptly upon delivery to Company and before

- 5 -

WRG05424457

S8020118621

any part of the vermiculite ore has been changed from its original condition and Company hereby waives all claims for any cause after any part of the vermiculite ore has been treated, processed or changed in any manner (except for reasonable test quantities). Company assumes sole responsibility for determining whether the vermiculite ore is suitable for its contemplated use (whether or not such use is known to Grace). Company waives all claims of which Grace is not notified in writing within sixty (60) days after delivery of the vermiculite ore or in respect of vermiculite ore disposed of or returned without Grace's consent.

7. <u>Warranties, Remedies, and Limitations</u>

(a)  Grace warrants to Company that at the time of delivery the vermiculite ore sold hereunder will conform substantially to the specifications herein set forth. Grace's liability and Company's remedy under this warranty are limited in Grace's discretion to replacement of vermiculite ore returned to Grace which is shown to Grace's reasonable satisfaction to have been nonconforming or to refund of the purchase price. Transportation charges for the return of nonconforming vermiculite ore to Grace and the risk of loss thereof will be borne by Grace but only if returned in accordance with written instructions from Grace.

(b)  Grace makes no warranty against patent infringement resulting from the manufacture, processing, use or sale of the vermiculite ore or from use of the vermiculite ore in combination with other matter or in the operation of any

- 6 -

WRG05424458

S8020118622

process, and if a claim, suit, or action is based thereon, Company shall defend, indemnify, and save harmless Grace therefrom.

(c) Grace warrants to Company that it will convey good title to the vermiculite ore sold hereunder. Grace's liability and Company's remedy under this warranty are limited to the removal of any title defect or, at the election of Grace, to the replacement of the vermiculite ore or any part thereof which is defective in title.

THE FOREGOING WARRANTIES ARE EXCLUSIVE AND ARE GIVEN AND ACCEPTED IN LIEU OF ANY AND ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTY OF MERCHANTABILITY. THE REMEDIES OF COMPANY FOR ANY BREACH OF WARRANTY SHALL BE LIMITED TO THOSE PROVIDED HEREIN, AND FOR DELAY OR NONDELIVERY WHICH IS NOT EXCUSABLE, TO THE PURCHASE PRICE OF THE VERMICULITE ORE IN RESPECT OF WHICH THE DELAY OR NONDELIVERY IS CLAIMED, TO THE EXCLUSION OF ANY AND ALL OTHER REMEDIES INCLUDING, WITHOUT LIMITATION, INCIDENTAL OR CONSEQUENTIAL DAMAGES. NO AGREEMENT VARYING OR EXTENDING THE FOREGOING WARRANTIES, REMEDIES, OR THIS LIMITATION WILL BE BINDING UPON GRACE UNLESS IN WRITING, SIGNED BY DULY AUTHORIZED OFFICER OF GRACE.

8. <u>Taxes, Duties, and Excises</u>

In the absence of satisfactory evidence of exemption supplied to Grace by Company, Company shall pay in addition to the price of the vermiculite ore all taxes, duties, excises or other charges for which Grace may be responsible for collection

- 7 -

WRG05424459

S8020118623

or payment to any government (national, state, or local) upon, measured by or relating to the importation, exportation, production, or any phase or part of the production, storage, sale, transportation, and/or use of the vermiculite ore supplied hereunder.

9. Company's Obligations

Company acknowledges that Grace is relying on Company to help service the market for Licensed Products in the Territory. Accordingly, during the term of this Agreement Company shall:

(a) maintain at its present plant location in the Territory and identified in paragraph 2(a) hereof adequate facilities for the proper expansion of vermiculite ore, and the production of and sale of Licensed Products;

(b) use its best efforts to promote, maintain, and increase in the Territory the sale and use of Licensed Products;

(c) take no action which will adversely affect or detract from the promotion, maintenance and increase in the Territory of the sale and use of Licensed Products, or its ability adequately to service the demand for Licensed Products within the Territory;

(d) at all times carry an adequate inventory of expanded vermiculite and Licensed Products at its place or places of business in the Territory;

(e) promote the good will of Grace and use the Trademarks strictly in accordance with the manner herein provided;

- 8 -

WRG05424460

S8020118624

(f)   manufacture Licensed Products in accordance with Grace's standards, specifications and instructions from time to time in effect.

(g)   observe all the provisions of this Agreement on its part to be observed.

10.   <u>License Grant</u>

Grace hereby grants to Company a non-transferable, exclusive right and license (without the right to sublicense except as provided in Paragraph 16 hereof) <u>to use the Trademarks in the Territory</u>, but solely in connection with the sale of the Licensed Products.  No express or implied license is granted under any Patent of W. R. Grace & Co. which may be pertinent or related to any product embraced by the trademarks licensed hereunder.

11.   <u>Trade Names</u>

The Company will not at any time, either during or after the termination of this Agreement, claim any right, title, or interest in or to, or the right to use, the Trademarks except to the extent and in the manner herein authorized by Grace.  Grace shall have the right at any time to withdraw Company's right to use any such Trademark by giving written notice thereof to Company but any such notice (except in case of default) shall not become effective sooner than one hundred and eighty (180) days from the date of the giving of such notice.

12.   <u>Quality Control</u>

(a)   Grace shall have the sole right to specify the uses to which the Trademarks may at any time be put, the kinds and quality of products to which they shall be applied, the

- 9 -

WRG05424461

S8020118625

specific products to which the Trademarks shall be applied
and the manner in which the Trademarks may be used.  Grace
shall fully, entirely, and exclusively govern the control
and use of the Trademarks by Company and in this connection
Company agrees not to use any of the Trademarks in connection
with any material, product, or in any fashion or at any time
not specifically sanctioned and agreed to by Grace in writing.

(b)   Company agrees to furnish Grace from time to
time at Grace's request with a sample of each and every
product which it is authorized to market or sell under any
of the Trademarks.

(c)   Company agrees that Grace representatives may
at any time or times during the regular business day upon
reasonable notice visit the manufacturing, warehouse, or
other facilities of Company for the purpose of inspecting
Company's products sold under the Trademarks and/or obtaining
modest samples of any such products.

13.   Labeling

(a)   Any and all bags, packages, containers and
advertising of Company which bear or refer to any of the
Trademarks shall be plainly marked with any such Trademarks
and such Trademark, where appropriate, shall be followed by
a capital "R" within a circle.  Such Trademarks shall always
be followed by a short descriptive statement indicating the
class of material to which the Trademarks are applied viz.,
"Zonolite Vermiculite Insulating Fill".  Labels on any bags,
packages, or containers sold by Company under the Trademarks
shall also bear the legends "_____is a vermiculite

- 10 -

WRG05424462

S8020118626

processing distributor of the Construction Products Division,
W. R. Grace & Co." and "_____ is a U. S. Reg. TM
of W. R. Grace & Co.

(b)  The format, design, and content of any labels,
bags, packages, literature, or advertising material which
bear or refer to any of the Trademarks shall all be approved
in writing by Grace prior to their use in connection with
any commercial sale or advertising, PROVIDED THAT Grace shall
not by reason of any such approval be deemed to have warranted
or agreed with any representations made as to any product
sold by Company.

14.  Rights in General

(a)  Company hereby concedes, recognizes and
acknowledges the validity of the Trademarks and agrees not to
challenge the validity thereof at any time or in any way.

(b)  Use by the Company of the Trademarks shall at
all times be only on the basis of rights granted to Company
pursuant to this Agreement, and any such use shall inure to
the benefit of Grace.  Company shall neither have nor acquire
any rights in, under, or to the Trademarks by reason of
Company's use thereof except as specifically set forth herein.

15.  Confidential Information  and Patents

(a)  From time to time during the term of this
Agreement Grace in its discretion may make available in
writing or otherwise disclose and identify to Company Confidential
Information which Company acknowledges is a vital commercial
asset of Grace.  Company hereby agrees that without the prior
express written consent of Grace it will not use Confidential

- 11 -

WRG05424463

S8020118627

Information for any purpose, other than to carry out the
Company's obligations as provided in this Agreement, or
disclose the same to third parties.  Company will insure
that within its own organization it will restrict dissemina-
tion of Confidential Information to the minimum number of
employees who reasonably need to have access to the same
for the purposes permitted by Grace.  Company will further
insure that all of its employees who shall have to be given
access to Confidential Information as aforesaid are informed
of the terms and conditions of this Agreement in respect
thereof and will take such steps as are necessary to insure
that each such employee agrees to be bound by them.

(b)  Use of Confidential Information by Company is
at Grace's sole discretion and Grace shall have the right at
any time to withdraw Company's right to use Confidential Infor-
mation by giving written notice thereof to Company but any
such notice (except in case of default) shall not become
effective sooner than one hundred and eighty (180) days from
the date of the giving of such notice.

(c)  Neither the receipt of Confidential Information
hereunder nor the purchase of vermiculite ore from Grace con-
fers any right or license of any kind, express or implied under
any patents or patent applications owned or controlled by Grace;
such rights, if any, as are to be conferred under said patents
or patent applications, are to be at Grace's sole discretion
pursuant to separate written agreement or agreements containing
such terms deemed appropriate or necessary by each party.

- 12 -

WRG05424464

S8020118628

16.  Right to Sublicense Applicators

(a)  Grace hereby grants to Company the right to
sublicense, in the Territory, the use of the Trademark
"Zonolite" solely in connection with the appointment of
approved applicators for the Licensed Product "Zonolite
Roof Decks", (hereinafter "Roof Decks") provided that such
sublicensing is accomplished by means of a written agreement
between Company the applicator in the form attached hereto
as Schedule C.  It is understood and agreed that Grace shall
have no obligation to supply Licensed Products or vermiculite
ore to any applicator appointed by Company.

(b)  Company agrees to use its best efforts to
police the use of any Trademarks sublicensed to applicators to
ensure that any such use by applicators is consistent with the
manner of use and application to products of Trademarks as
specified and sanctioned by Grace.  Company further agrees to
use its best efforts to ensure that the quality of the Roof
Decks as applied by applicators conforms to Grace's specifications
for Roof Decks from time to time in effect.

(c)  Company agrees that any agreement entered into
between Company and an applicator for Roof Decks which does
not conform to the form of agreement in Schedule C hereof shall
be subject to the prior written approval of Grace.  It is
understood that Grace assumes no responsibility for selection
of applicators by Company, and appointment of any applicator
by Company shall not be deemed an approval of such applicator
by Grace.

- 13 -

WRG05424465

S8020118629

(d) Company agrees to indemnify, defend, and hold harmless Grace, its officers, employees, representatives, successors, and assigns from any and all claims, damages, losses, liabilities and expenses of every nature, including attorneys fees, judgments, demands, and causes of action whatsoever or however occasioned, arising out of or in connection with the application of a Roof Deck by an applicator appointed by the Company.

17. Termination and Suspension of Performance

(a) Grace may terminate this Agreement by written notice to the Company at any time if:

(i) The Company shall fail to observe or perform any of the terms or conditions of this Agreement on Company's part to be observed or performed; provided however, that if the default alleged to exist on the part of the Company shall be an act other than non-payment for ore purchased, then Grace will give the Company written notice specifying the existing default and the Company shall have thirty (30) days after such notice to cure any such default.

(ii) The Company shall attempt to assign this Contract without Grace's prior written consent.

(iii) A receiver or trustee shall be appointed for Company or for any substantial amount of Company's property, or Company shall become insolvent or unable to pay its debts as they mature or shall cease to pay its debts in the ordinary course of business or Company shall make an assignment for the benefit of creditors, or any proceedings shall be commenced

- 14 -

WRG05424466

S8020118630

by or against Company under the provisions of any bankruptcy,
insolvency or debtor's relief law; provided however, that
anything contained herein to the contrary notwithstanding,
no right, legal, and/or equitable to contest any debt, shall
be taken from the Company;

(b)  If Company shall fail to fulfill the terms of
payment to Grace for any amount lawfully due to Grace under
any contract between Company and Grace, Grace may, without
liability and without prejudice to any other lawful remedy,
defer further shipments of vermiculite ore hereunder until
such default is made good.

18.  Force Majeure

(a)    Company acknowledges that delivery dates are
based on the assumption that there will be no delay due to
causes beyond the reasonable control of Grace.

(b)  Grace shall not be charged with any liability
for delay or nondelivery or failure to perform hereunder
when such delays, nondelivery, or failure to perform is due
to delays of suppliers, production  problems, acts of God, or
the public enemy, compliance with any applicable foreign or
domestic court order or governmental regulation, order or
request whether or not it proves to be invalid, fires, riots,
labor disputes, unusually severe weather, or any other cause
beyond the reasonable control of Grace.  During the period when
deliveries are affected by the matters identified in this par-
agraph, Grace may omit delivery during the period of continuance
of such circumstances and the maximum quantities deliverable

- 15 -

WRG05424467

S8020118631

hereunder shall be reduced by the quantity so omitted, but
this Agreement shall remain otherwise in effect.  Grace shall
endeavor to allocate any available vermiculite ore among all
buyers including its own divisions, departments, and affiliates
in such manner as it considers fair.

(c)  Grace shall have the right at any time to
cease or suspend the operation of any facility where it is
producing any quantities of vermiculite ore deliverable here-
under.  In such case Grace shall have the right to terminate
this Agreement in its entirety by written notice to Company if
said facility is the only facility at which Grace is then
producing vermiculite ore to be sold hereunder.  If said
facility is not the only facility at which Grace is then pro-
ducing vermiculite ore deliverable hereunder and Grace is
unable to supply Company's total demands of vermiculite ore
hereunder Grace shall have the right to allocate the avail-
able supply of said vermiculite ore among all buyers, including
its own divisions, departments and affiliates in such manner
as it considers fair.  In no event shall Grace be obligated
to purchase vermiculite ore from others in order to enable it
to deliver vermiculite ore to Company hereunder.

19.  Compliance with Fair Labor Standards Act

Grace hereby certifies that all goods sold hereunder
which are produced or manufactured in the United States of
America are produced in compliance with Sections 6, 7, or 12 of
the Fair Labor Standards Act of 1938, as amended (29 U.S. Code
201-219), or of any order of the administrator issued under

- 16 -

WRG05424468

S8020118632

Section 14 of said Act.  All requirements as to the certificate
contemplated in the October 26, 1949 Amendment to the Fair
Labor Standards Act of 1938 shall be considered as satisfied by
this certification.

    20.  Assignment

       The rights and privileges granted hereunder are
personal in character and cannot be assigned in whole or in
part by the Company without the prior written consent of
Grace.

    21.  Waiver

       No delay or failure on Grace's part to enforce any
term, provision, or condition hereunder shall constitute a
waiver on Grace's part of such term, provision, or condition.
Any waiver by Grace of any term, provision, or condition hereof
or of any default hereunder in any one or more instances shall
not be deemed to be a further or continuing waiver of such term,
provision or condition or of any subsequent default hereunder.

    22.  Severability

       Any provision or condition appearing in this contract
which is found to be unenforcable or in violation of any
valid law or regulation of the United States or of any state
shall be deemed severable and shall be deleted from this
Agreement without affecting or impairing the enforceability
and validity of the remaining provisions and conditions of
this Agreement.

    23.  Accrued Obligations

       No termination of this Agreement shall relieve either
party of the obligation to pay to the other party any amounts

- 17 -

WRG05424469

S8020118633

due the other party at the time of termination, regardless of
whether these amounts are then or thereafter payable.   No
termination of this Agreement shall relieve Company of its
obligations with respect to confidential information as
provided under Article 15.

24.   Cancellation of Previous Agreements

The Sales Agreement dated September 14, 1967 (effective
January 1, 1966) and the Trademark Licensing Agreement dated
September 14, 1967 (effective January 1, 1966) between W. R. Grace &
Co. and Southwest Vermiculite Company are hereby cancelled and
superseded without, however, cancelling any amounts for which
either party may now be indebted to the other.

25.   Duration

This Agreement shall become effective January 1, 1975
and unless sooner terminated as otherwise provided herein,
shall continue in effect unless and until terminated by either
party giving to the other party written notice of termination
provided that (except in case of default) no such termination
shall be effective sooner than one hundred and eighty (180)
days from the date of the giving of such notice.

26.   Notices, Demands, and Communications

Notices, demands, and communications hereunder, to
Company or Grace, must be given or sent and shall be deemed
to have been given if mailed, postage prepaid, by registered mail,

(a)   if intended for Company, addressed to Southwest
Vermiculite Company, 5119 Edith Boulevard, N.E., Albuquerque,
New Mexico, attention of J. B. Lyall, Jr., or

(b)   if intended for Grace, addressed to Grace at

- 18 -

WRG05424470

S8020118634

62 Whittemore Avenue, Cambridge, Massachusetts 02140, attention of B. R. Williams.

Either party may designate, by notice in writing, a new address to which any notice, demand, or communication may hereafter be so given or sent.

27.   Entire Contract and Interpretation

The terms and conditions herein contained constitute the entire agreement between the parties hereto in respect of the subject matter hereof and shall supersede all previous communications, representations, or agreements, either oral or written, between the parties hereto with respect to the subject matter hereof, and no agreement or understanding varying or extending the same will be binding upon either party hereto unless in writing, signed by a duly authorized officer or representative thereof specifically referring to this Agreement.

All deliveries of vermiculite ore to Company during the term of this Agreement shall be subject to the terms and conditions contained herein and Company's orders and Grace's invoices shall be in verification of quantity, prices, and shipping dates only.

This Agreement shall be construed in accordance with the laws of the Commonwealth of Massachusetts.   Captions are for convenience of reference only and shall not be used for interpreting the text of the paragraph in which they appear.

WRG05424471

S8020118635

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed in duplicate (each of which duplicates shall be deemed to be an original), as of the day and year first above written.

W. R. GRACE & CO.
Construction Products Division

By _B. Williams_

SOUTHWEST VERMICULITE COMPANY

By _J. B. Lyall_

- 20 -

WRG05424472

S8020118636