# EXHIBIT 12

05010118

# BROWN, JACKSON, BOETTCHER & DIENNER

### ATTORNEYS AND COUNSELORS

### PATENT AND TRADEMARK LAW

1550 MONADNOCK BLOCK

53 W. JACKSON BLVD.

CHICAGO 4

June 16, 1954

ARTHUR H. BOETTCHER
JOHN A. DIENNER
CHARLES V. HILDEBRECHT
CAMERON A. WHITSETT
HENRY H. BABCOCK
EDWARD C. GRELLE
ARTHUR C. JOHNSON
JOHN A. DIENNER, JR.
C. LYMAN EHRICH, JR.
BRUNO J. VERBECK

WILLIAM A. FURHNER
KEITH K. NICOLLS
ARTHUR J. WAGNER
THOMAS R. JUETTNER
DON R. WILSON
RAYMOND G. NORDHAUS
JOHN M. HANN

CHARLES A. BROWN 1880-1938
JOHN L. JACKSON    1892-1948

TELEPHONE · HARRISON 7-0787
CABLE ADDRESS · PATMARK, CHICAGO

WASHINGTON OFFICE
900 F STREET N. W.

JUN 17 1954

Harry Dresser
Zonolite Company
135 S. LaSalle Street
Chicago 3, Illinois

Dear Mr. Dresser:

At our conference last Thursday June 10 in connection
with Dresser Patent No. 2,669,510 the advisability and prac-
ticality of licensing expanders of vermiculite under the
foregoing patent was brought up.  The advantages of licensing
the expanders of vermiculite instead of the fertilizer producers
themselves includes, first of all, simplicity since there are
only a few expanders to deal with, as contrasted to a great
many commercial fertilizer manufacturers; that is to say, the
"mechanics" of licensing would be relatively simple since only
two or three parties - expanders - would be involved.  Another
advantage would be that a standard of quality could be more
readily maintained, referring to the grade or quality of
vermiculite used in the Dresser process.

We have accordingly drawn up a proposed draft of a
license agreement which would involve primarily expanders
of vermiculite who wish to sell such expanded vermiculite to

S8020140587

WRG05519832

BROWN, JACKSON, BOETTCHER & DIENNER

05010119

Harry Dresser                    -2-                    June 16, 1954

fertilizer manufacturers for practicing the Dresser Patent
Method.  The draft agreement is simple and would involve
direct license negotiations only with those expanders of
vermiculite of your choosing.  Such a license agreement would
permit you, as above mentioned, to exercise control over the
quality of vermiculite which is offered to the fertilizer
trade, provide some royalty income, and would proclaim to
the trade that the Zonolite owned Dresser Patent is based on
research and experimental work done over a period of years
by the Zonolite Company.

    If the proposed agreement is of interest then the
matter can be pursued further after Mr. Bishop and other
interested persons have considered it.

                                    Yours truly,

Enclosure

cc/Dr. George Ziegler
cc/John A. Bishop, Esq.

WRG05519833

8020140588

05010120

# LICENSE AGREEMENT

THIS AGREEMENT, entered into at _____ this _____ day of _____, 1954, by and between ZONOLITE COMPANY, a Montana Corporation, having its principal place of business at Chicago, Illinois, hereinafter referred to as "LICENSOR", and MUNN AND STEEL, a _____ _____, having its principal place of business at Boston, Massachusetts, hereinafter referred to as "LICENSEE":

WHEREAS LICENSOR represents that it owns United States Letters Patent No. 2,669,510, claiming, among other things, a method for producing a free-flowing fertilizer, and LICENSEE desires to sell exfoliated vermiculite for use with that method.

NOW, THEREFORE, it is AGREED:

1. LICENSOR authorizes LICENSEE to extend to purchasers of exfoliated vermiculite sold by LICENSEE, a non-exclusive license under the foregoing Patent to produce free-flowing fertilizer with such exfoliated vermiculite and to sell the fertilizer so produced.

2. All containers in which LICENSEE sells exfoliated vermiculite which is to be used in accordance with the patented method, shall bear a prominent notation reading as follows:

-1-

WRG05519834

S8020140589

05010121

"The use of the contents as practice the method of ........ a free-flowing fertilizer according to the claims of U.S. Patent No. 2,669,510 is hereby licensed."

3.    LICENSEE will pay LICENSOR in return a royalty on account of its aggregate net sales of exfoliated vermiculite which is sold for use in practicing the patented method.    The royalty shall be equal to _____ percent ( ____%) of such sales on the first _____ thereof, and shall be equal to _____ percent ( ____%) of such sales thereafter. "Net sales" are gross sales less discounts, returns and allowances on account of such sales.

4.    LICENSEE will advise LICENSOR, at 135 South La Salle Street, Chicago, Illinois, in writing, not later than thirty (30) days after the end of each calendar quarter whether or not it sold any such exfoliated vermiculite during the quarter, and if it did, will accompany its advice with payment of any amount shown by the report to be due.

5.    LICENSEE will keep a full and accurate record of its gross sales of exfoliated vermiculite which is sold for use with the patented method, and will permit reputable certified public accountants selected by LICENSOR, at reasonable intervals during the term of this agreement and for one (1) year thereafter, to inspect this record and such of LICENSEE's other records as they may consider

-2-

WRG05519835

S8020140590

05010122

necessary to enable them to verify the accuracy of said record and whether all royalties due have been properly accounted for.

6. If LICENSOR hereafter during the term of this agreement grants to a competitor of LICENSEE authority to sell its exfoliated vermiculite for use in producing a free-flowing fertilizer according to the method of the foregoing patent, then LICENSEE shall from and after the date of such grant, be entitled, while such grant is in effect, to any more favorable royalty rate contained in it to the extent that the difference does not represent only the fair value of rights, patents or other considerations received in return for granting the more favorable royalty rate.

7. LICENSOR may terminate this agreement by written notice to LICENSEE:

(a) if any of LICENSEE'S exfoliated vermiculite offered for use in producing fertilizer according to the patented method does not conform to such reasonable standards of quality and performance (not higher than those adhered to by LICENSOR) as LICENSEE from time to time established.

(b) if royalties payable for any calendar year after the first are less than _____ Dollars ($_____), and LICENSEE does not make up the difference within _____ ( ) days after the end of the year,

-3-

S8020140591

05010123

(c)   If LICENSEE fails to cure a default within fifteen (15) days after it is given written notice thereof.

(d)   If LICENSEE becomes insolvent or commits any act of bankruptcy.

Waiver of a default in any instance is a waiver for that instance only.

8.   LICENSEE may terminate this agreement by written notice to LICENSOR if the foregoing patent is declared invalid by a decree of a United States Court from whose decision no appeal is taken or no appeal or other proceeding for review can be taken, providing that LICENSEE was not a party to the proceedings, and that it did not voluntarily aid or abet them directly or indirectly.

9.   Upon any termination of this agreement, all accrued royalties shall forthwith become payable, and the termination shall be without prejudice to LICENSOR'S right to recover them.

10.   This agreement shall continue during the life of the licensed patent unless sooner terminated as provided in Sections 7 or 8.

IN WITNESS WHEREOF, the parties hereto have executed this agreement as of the place and date first above written.

SONOLITE COMPANY

By_____

President

Attest:

_____
Secretary

NUNN AND STEEL

By_____

President

Attest:

_____
Secretary

-4-

WRG05519837

S8020140592