IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **W.R. Grace & Co., et al.,** | ) | **Case No. 01-01139 (JKF)** |
| | ) | **(Jointly Administered)** |
| | ) | |
| **Debtors.** | ) | **Objection Deadline: April 8, 2005** |
| | ) | **Hearing Date: April 25, 2005 @ 12:00 p.m.** |
| | ) | |
| | ) | **Related D.I. 7775, 7776** |

**RESPONSE OF SHELDON H. SOLOW, SOLOW DEVELOPMENT CORPORATION, SOLOVIEFF REALTY COMPANY, LLC AND SOLOW BUILDING COMPANY, LLC ["SOLOW"] TO: (1) DEBTORS' MOTION FOR APPROVAL OF THE JOINT STIPULATION AND CONSENT ORDER OF THE DEBTORS AND THE ST. PAUL COMPANIES, INC. CONCERNING THE CLASSIFICATION AND TREATMENT OF ST. PAUL'S CLAIM WITH RESPECT TO THE SOLOW APPEAL BOND AND FOR MODIFICATION OF THE AUTOMATIC STAY (D.I. 7775); AND (2) THE APPLICATION OF THE DEBTORS FOR THE ENTRY OF AN ORDER AUTHORIZING EMPLOYMENT OF CAHILL, GORDON & REINDEL AS SPECIAL COUNSEL TO THE DEBTORS (D.I. 7776)**

Sheldon H. Solow, Solow Development Corporation, Solovieff Realty Company, LLC and Solow Building Company, LLC (hereinafter "Solow") hereby submit this Objection to *Debtors' Motion for Approval of the Joint Stipulation and Consent Order of the Debtors and the St. Paul Companies, Inc., Concerning the Classification and Treatment of St. Paul's Claim with Respect to the Solow Appeal Bond and for Modification of the Automatic Stay* (D.I. 7775) and the *Application of the Debtors for the Entry of an Order Authorizing Employment of Cahill, Gordon & Reindel as Special Counsel to the Debtors* (D.I. 7776). In Support of this Objection, Solow states as follows:

## Background

1.      At the January 21, 2005 hearing on Grace's proposed reorganization plan, the Court expressed concerns with Grace's proposal and ordered Grace to take steps to try to move

this bankruptcy to resolution. Specifically, the Court ordered Grace to meet with the Asbestos PD Committee to negotiate a case management order for estimation of asbestos property damage claims, with the obvious hope that getting the parties together would facilitate discussions leading to a consensual resolution.[1]  Such a resolution would save the estate significant resources that will otherwise be dissipated in litigating asbestos property damage claims, and would hasten arrival of that so-far elusive day when Grace can reorganize.

2.     Three weeks after that hearing, and before the court-ordered negotiation session had taken place, Grace filed the present motion seeking to pursue a costly and likely unsuccessful appeal involving one of its 4,200 asbestos property damage claims. Grace seeks to have the automatic stay lifted so that it may begin to pursue the appeal of the adverse judgment against it in Sheldon H. Solow, et al v. W.R. Grace & Co., No. 2453/88 (N.Y. Sup. Ct.). After 12 years of pre-trial proceedings, the Solow case went to trial for 6 weeks in 1999. Grace's principal trial counsel was the Reed Smith law firm, the same firm already appointed as Grace's special asbestos counsel here. Solow received a $25.8 million judgment against Grace. Both Grace and Solow filed extensive post-trial motions that were denied. Grace then appealed the judgment seeking reversal. Solow cross-appealed seeking to increase the damage award to over $76 million (plus millions more in post-judgment interest) - the amount Solow claimed as its asbestos-related damages. Shortly thereafter, in April 2001, Grace filed for bankruptcy.

3.     Grace now seeks to retain yet another law firm as a special asbestos counsel to prosecute an appeal that promises to be long and costly. Grace offers little explanation why it is seeking to lift the stay now, having sat on the appeal for four years. Nor does Grace explain why

---

[1] "That's another reason why I hope you will go back to the good offices that you started many years ago, at this point, and see if you can't get this resolved while I'm deciding the issue. Because, I still think that's the best way to try to do this." [1/21/05 Tr. at 192]  "You are always permitted to have dialogue ... In fact, you are encouraged to have dialogue." [Id. at 211]

it needs additional special counsel when the Reed Smith firm's asbestos abilities are well known to this Court. Launching this expensive tangent for one of 4,200 claims flies in the face of the Court's desire in ordering the estimation negotiations that, "you are encouraged to have dialogue." [1/21/05 Tr. at 211.] It is ironic that rather than focusing on the primary task at hand – estimation of the 4,200 unlitigated property damage claims, Grace wants to divert resources to the one claim already valued in the tort system after twelve years of litigation.

### Objection

I.     **Pursuit of the Solow Appeal is likely to be a waste of the Estate's resources.**

4.     As an initial matter, Grace can have no undue optimism about its chances on appeal. Grace has lost virtually every one of its appeals of adverse jury verdicts in asbestos property damage cases. In fact, in the entire history of asbestos property damage litigation, Grace has reversed only one plaintiffs' liability verdict. See City of Greenville v. W.R. Grace & Co., 827 F.2d 975 (4th Cir. 1987), *rehearing denied* 840 F.2d 219 (4th Cir. 1988) [affirming multi-million dollar judgment]; Clayton Center Assoc. v. W.R. Grace & Co., 861 S.W.2d 686 (Mo. Ct. App. 1993) [affirming multi-million dollar verdict]; State Farm Mut. Auto. Ins. Co. v. W.R. Grace & Co., 24 F.3d 955 (7th Cir. 1994) [affirming multi-million dollar verdict]; W.R. Grace & Co. – Conn. v. Seventh-Day Adventists, No. 1298 (Md. Ct. Spec. App. June 1, 1994) [affirming multi-million dollar verdict]; T.H.S. Northstar Assoc. v. W.R. Grace & Co., 66 F.3d 173 (8th Cir. 1995) [affirming multi-million dollar liability verdict, remanding for recalculation of actual damage amount]; Bunker Hill Towers Condo. Ass'n v. W.R. Grace & Co., No. B072642 (Cal. Ct. App. March 15, 1995) [affirming multi-million dollar verdict, offsetting prior co-defendant settlement]; Northridge Co. v. W.R. Grace & Co., 556 N.W.2d 345 (Wis. Ct. App. 1996) [affirming multi-million dollar verdict]; compare Corporation of Mercer University v.

National Gypsum Co., 877 F.2d 35 (11th Cir. 1989) [reversing Plaintiff's verdict]. With the issues in the Solow case having been exhaustingly analyzed over 12 years, there is little reason to suspect lightning will strike here for Grace.

5.      Nor is there reason to believe that this appeal can be decided expeditiously. The already busy New York courts must now address litigation resulting from the September 11 tragedy as well as their usual dockets. Moreover, the appeal Grace seeks to pursue is only the first step of a two-step New York appellate process. Grace has not explained how launching this appeal through a multi-year odyssey in the New York appellate courts will aid its reorganization effort. Unless the Court intends to delay reorganization for several more years - a proposition that all familiar with this bankruptcy doubt - the Solow appeal would still be winding its way through the courts when this reorganization concludes. If the successful reorganization includes a settlement of all property damage claims, the fees expended pursuing the Solow appeal will further waste estate assets.

6.      There is certainly no immediate benefit to the estate in proceeding with this appeal. On the contrary, the estate admits that it plans to incur substantial additional legal fees to pay a new firm, Cahill Gordon, "its customary hourly rate in effect from time to time to reimburse Cahill Gordon for expenses in accordance with Cahill Gordon's customary reimbursement policies."[2] Grace's application will unnecessarily increase its litigation expenses by bringing in yet another firm (Cahill Gordon) to handle the Solow matter when Grace's lead defense counsel in the Solow trial has already been approved by this Court as Grace's special

---

[2] Application of the Debtors for the Entry of an Order Authorizing Employment of Cahill, Gordon & Reindel as Special Counsel to the Debtors at 6, ¶16.

4

asbestos counsel.[3]  In addition to the immediate, adverse financial impact on the estate from substantial legal fees,[4] prosecuting the appeal will also result in immediate detriment to Solow by forcing it to spend roughly equivalent sums in defending the appeal and prosecuting its cross-appeal.

## II.    Grace's application for stay relief is devoid of any legal analysis justifying such a result.

7.    In deciding whether to lift the stay, this Court is authorized to consider the prejudice that would be suffered should the stay be lifted, the balance of hardships facing the parties, and the probability of success on the merits if the stay is lifted.  See In re Continental Airlines, Inc., 152 B.R. 420 (Bankr. D. Del. 1993).  Having expended enormous sums to bring its case through 12 years of pretrial, a 6-week trial, and extensive post-trial motions, Solow is understandably wary of spending additional large sums to begin an appeal that has little prospect of being resolved by the New York courts in any reasonable timeframe for reorganization.  As the only current Grace property damage claimant whose claim has already been judicially valued in the tort system, Solow feels especially prejudiced by Grace's attempt to put it through years of additional work to preserve its claim.

8.    Grace's motion does not discuss any issues of prejudice, balancing of hardships, or probable success on the merits.  Grace simply states, "If the Debtors are successful with this appeal, then this could potentially result in the elimination of a significant, pre-petition claim

---

[3] Cahill Gordon was co-counsel with Reed Smith at the Solow trial, but Reed Smith counsel handled the bulk of the trial including opening, closing and most witnesses.  And while Cahill Gordon is a New York-based firm, Reed Smith also has a significant New York office with over 80 lawyers familiar with New York law.

[4] If Grace's counsel spends 1,000 hours on this appeal, i.e. 2 weeks a month for the next year – a not unreasonable estimate considering the size of the record and the multi-year history of the case – that alone would cost the estate over $600,000 at the usual billing rates Grace seeks to pay.  See Application of the Debtors for the Entry of an Order Authorizing Employment of Cahill, Gordon & Reindel as Special Counsel to the Debtors at 5, ¶15.

against the Debtors' estates."[5]   While this could "potentially" be the case - in the sense that anything is possible - Grace's appellate track record counsels caution in putting too much credence in its hope.  Grace's position also ignores the fact that Solow cross-appealed, seeking to have the judgment increased by new trial or judgment to the $76 million that Solow contends represents its asbestos damages.  Thus, the appellate process could also "potentially" result in the Solow case being remanded for a new trial on damages that could leave Grace worse off.

### III.   The Solow Appeal does not merit special "attention."

9.     Grace's second statement to support lifting the stay is, "In any event, the Debtors' appeal has been stayed for nearly four years, and it is time to get the matter resolved."[6]   Grace does not explain why it has waited four years to make this motion, nor how moving ahead with the appeal now advances its reorganization efforts in light of the appellate realities discussed above.  Solow respectfully suggests that Grace would achieve more benefit by focusing its energies on the multi-billion dollar elephant that has been sitting around for four years – the reorganization – rather than this comparative gnat.

10.    Nor does Grace explain why it should be permitted to spend additional large sums on this one case when it has thousands of other asbestos property damage claims that never reached trial to receive the scrutiny this claim has already undergone.  Solow believes it has spent enough in proving its claims and would like to see this matter resolved without having to spend substantially more.  Solow respectfully suggests that the Court consider exploring other

---

[5] Debtors' Motion for Approval of the Joint Stipulation and Consent Order of the Debtors and the St. Paul Companies, Inc. Concerning the Classification and Treatment of St. Paul's Claim With Respect to the Solow Appeal Bond and for Modification of the Automatic Stay at 8, ¶19 ["Motion to Lift Stay"].

[6] Id.

avenues to get this matter resolved that do not involve both sides spending more money on a case already extensively litigated.

**IV.    Resolution of St. Paul's Plan Objection does not justify stay relief.**

11.    Grace's final reason for lifting the stay is that "St. Paul will withdraw the objections it has raised to the Debtors' Plan and Disclosure statement. This is advantageous to the Debtors' estates because it eliminates one of the current impediments to confirmation."[7] But, this "advantage" to the estate is more illusory than real. St. Paul will receive a dollar-for-dollar claim against Grace for any amounts paid pursuant to the appeal bond. This appears to be a straightforward resolution of a pre-petition indemnification/contribution claim. Moreover, having St. Paul withdraw objections to a reorganization plan currently on life support, if not already dead, seems a small benefit when balanced against the cost to Grace and Solow to resurrect their cross-appeals. The parties' energies could be more usefully focused on a consensual reorganization that would address not only Solow, but the thousands of other asbestos property damage claims waiting in the wings.

## CONCLUSION

Lifting the stay is a matter committed to this Court's discretion with consideration of the factors discussed above. While the Solow claim is not insignificant, it pales in comparison to the multi-billion dollar issues surrounding this reorganization. The parties should be focusing their efforts on reorganization, not tangents. A consensual reorganization could moot the need for both sides to spend enormous sums to prosecute this appeal. If not, a reorganization plan could potentially provide for the cross-appeals to be prosecuted thereafter. But it is putting the cart before the horse to launch the parties on a multi-year appellate route that has virtually no hope of being completed in time to give any guidance to a reorganization plan. Lifting the stay to permit

---

[7] Id.

this appeal would certainly keep lawyers employed, including an additional law firm if Grace has

its way.  But this additional expense to both the estate and Solow promises little benefit in the

overall scheme of things.

For these reasons, Solow respectfully requests that that the Motion to Lift the Stay be

denied, at least until Grace has concluded its negotiations with the Asbestos PD Committee (and

Solow counsel where appropriate) concerning the handling and potential resolution of asbestos

property damage claims.

Dated:    April 8       , 2005
          Wilmington, Delaware

William D. Sullivan (No. 2820)
Buchanan Ingersoll, PC
The Nemours Building
1007 North Orange Street, Suite 1100
Wilmington, DE  19801
Phone: (302) 428-5500

-and-

Andrew W. Hayes, Esquire
Boies, Schiller & Flexner, LLP
333 Main Street
Armonk, NY 10504
Phone:  (914) 749-8200

-and-

Edward J. Westbrook, Esq.
Richardson Patrick Westbrook
 & Brickman
1037 Chuck Dawley Blvd., Building A
Mount Pleasant, SC  29464
Phone: (843) 727-6513

Attorneys    for    Sheldon    H.    Solow,    Solow
Development    Corporation,    Solovieff    Realty
Company, LCC and Solow Building Company,
LLC