IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) ) ) | Chapter 11 |
|  |  | Case No. 01-01139 (JKF) |
| W. R. GRACE & CO., et al., | ) ) | (Jointly Administered) |
| Debtors. | ) ) | Re: Docket No.: 7775 |
|  | ) ) | **Objection Deadline: April 8, 2005** |
| _____ | ) | **(by agreement)** |

**Hearing Date: April 25, 2005**

**OBJECTION OF THE OFFICIAL COMMITTEE OF ASBESTOS PROPERTY DAMAGE CLAIMANTS TO THE DEBTORS' MOTION FOR APPROVAL OF THE JOINT STIPULATION AND CONSENT ORDER OF THE DEBTORS AND THE ST. PAUL COMPANIES, INC. CONCERNING THE CLASSIFCATION AND TREATMENT OF ST. PAUL'S CLAIM WITH RESPECT TO THE SOLOW APPEAL BOND AND FOR MODIFICATION OF THE AUTOMATIC STAY**

The Official Committee of Asbestos Property Damage Claimants (the "PD Committee"), by and through undersigned counsel, hereby objects (the "Objection") to the Debtors' Motion for Approval of the Joint Stipulation and Consent Order of the Debtors and the St. Paul Companies, Inc. Concerning the Classification and Treatment of St. Paul's Claim with Respect to the Solow Appeal Bond and for Modification of the Automatic Stay (the "Motion"). In support of the Objection, the PD Committee respectfully submits as follows:

**INTRODUCTION**

By the Motion, the Debtors seek the approval of a joint stipulation and consent order (the "Stipulation") between the Debtors and the St. Paul Companies, Inc. ("St. Paul") that would improperly reclassify the surety appeal bond claim of St. Paul (the "St. Paul Claim") from an

Asbestos PD Claim to a General Unsecured Claim[1] and, thereby, would impermissibly allow for better treatment of the St. Paul Claim under the Debtors' proposed Plan of Reorganization than the claim that was satisfied by St. Paul. The Stipulation contravenes the well-established principle, as codified in Bankruptcy Code section 502(e), that a surety's claim is not entitled to superior status or treatment than the underlying claim in respect of which surety was provided. Because there is no basis for St. Paul's assertion that it is entitled to be reclassified as a General Unsecured Claim, its objection lacks merit and the Stipulation lacks the requisite reasonableness for its approval under Federal Bankruptcy Rule 9019, especially given that the terms of Stipulation will cause significant financial and time expenditures on the part of the Debtors and has the potential of exposing the estate to increased liabilities if the proposed state court litigation goes forward. The Stipulation lacks adequate consideration, is not in the best interests of the estate, and should not be approved.

The Debtors also ask the Court to modify the automatic stay to allow them to proceed with an appeal of the Asbestos PD Claim that underlies the St. Paul Claim (the "Solow Claim") solely to fulfill their obligations under the Stipulation. However, the Debtors have not demonstrated adequate cause for the stay to be modified, especially given that the effect of the request would be the unnecessary waste of significant estate funds, the potential of exposure to increased liabilities, and the inevitable distraction for the Debtors of the state court litigation in respect of the Solow Claim even though a proposed plan of reorganization already exists that the Debtors assert would resolve all Asbestos PD Claims. It is in the best interest of the estate and its creditors for the automatic stay to remain in place under the circumstances presented by the Debtors in the Motion and the request to modify the stay should be denied.

---

[1] Unless otherwise provided herein, capitalized terms shall have the same meanings as provided in the original Plan and Disclosure Statement filed on November 13, 2004, and as amended on or about January 13, 2005.

**BACKGROUND**

1. On April 2, 2001, each of the Debtors filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. On April 12, 2001, the Office of the United States Trustee appointed the PD Committee, the Official Committee of Asbestos Personal Injury Claimants, and the Official Committee of Unsecured Creditors. On June 18, 2001, the UST appointed the Official Committee of Equity Security Holders. On May 24, 2004, the Court appointed Mr. David T. Austern as the representative of future claimants.

3. On or about November 13, 2004, the Debtors filed their initial plan of reorganization in these cases, which was subsequently amended on or about January 13, 2005, to include, inter alia, the Unsecured Creditors Committee and the Equity Committee as co-proponents of the plan (as amended, the "Plan").

4. Several years prior to filing of the Debtors' bankruptcy, Sheldon H. Solow, Solow Development Corporation, Solow Solovieff Realty Co. LLC and Solow Building Company LLC (collectively "Solow Group") sued W.R. Grace & Co.-Conn (individually referred to as "Grace" herein) for asbestos property damage that had resulted in Solow Group building. A New York state court held a jury trial on the Solow Claim in 2000, and based upon the resulting jury verdict against Grace, the court entered a judgment against Grace in excess of $25 million.

5. Grace sought an appeal of the Solow Group judgment and, in order to meet the appeal bond requirements, obtained an "Undertaking on Appeal" from St. Paul that assured the Solow

3

Claim for the sum of $25,650,742, plus interest from the judgment date (the "St. Paul Surety Bond").  Grace immediately appealed.

6.   Although not mentioned in the Debtors' Motion, the Solow Group cross appealed claiming an error in the damage apportionment and calculation and asked for a new trial or the entry of an increased judgment.[2]  By the cross appeal, the Solow Group asserted its damages exceeded $70 million dollars.  The substantive issues on the Solow Appeal had yet to be briefed at the time of the Debtors' bankruptcy.

7.   Since seeking chapter 11 protection, the Debtors have not seen a need to proceed with the Solow Appeal and allowed the matter to go unprosecuted for four years, even though both the Solow Group and St. Paul filed claims against the Debtors based on the Solow Claim and the St. Paul Claim, respectively.

8.   Under the Plan, General Unsecured Claimants will receive distinct and arguably better treatment than Asbestos PD Claimants.[3]

9.   As defined by the Debtors' Plan, the Solow Claim would fall under the definition of Asbestos PD Claim as would the St. Paul Claim.[4]

---

[2] The appeal and cross-appeal are jointly referred to as the "Solow Appeal."

[3] For example, the General Unsecured Claimants will receive post-petition interest for their allowed claims whereas no similar allocation is provided for the Asbestos PD Claimants.

[4] **"Asbestos PD Claim"** shall mean: (i) a Claim, Demand, or remedy, including all related claims, debts, obligations, or liabilities for compensatory (including general, special, and consequential damages) and punitive damages, (ii) a cross-claim, contribution claim, subrogation claim, reimbursement claim or indemnity claim, or (iii) any debt, liability, or obligation of one or more of the Debtors or any other Asbestos Protected Party (whether or not such Claim, Demand, remedy, debt, liability, or obligation is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; whether or not the facts of or legal bases therefor are known or unknown; and whether in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement or indemnity, or any other theory of law, equity, or admiralty);

   (a)   arising directly from acts or omissions of one or more of the Debtors (or any of their respective past or present Affiliates, any of the predecessors of any of the Debtors or any of their respective past or present Affiliates, or any other Entity for whose products or operations any of the Debtors allegedly has liability or is otherwise liable); and

4

10. In exchange for its support of the Plan, St. Paul has now apparently prevailed upon the Debtors to treat the St. Paul Surety Claim as a General Unsecured Claim instead of an Asbestos PD Claim. On February 14, 2005, St. Paul and the Debtors signed the Stipulation agreeing to reclassification of the St. Paul Claim. The Debtors acknowledge that they entered into the Stipulation solely to avoid the St. Paul objection to its Plan. See Motion at ¶8, Stipulation at p. 5.

11. The Motion fails to identify any new or changed circumstance that would warrant proceeding against but one Asbestos PD Claim outside of this bankruptcy, especially given that the Plan purportedly includes a process that will effectively and fairly resolve all Asbestos PD Claims. Importantly, the Solow Appeal potentially exposes the Debtors to liabilities in excess of $70 million, a sum almost three times the St. Paul Surety Bond.

---

    (b)    for, relating to, or arising out of, resulting from, or attributable to, directly or indirectly, the cost of removal, abatement, diminution of property value, environmental damage, or economic loss caused or allegedly caused:

        (i)    by asbestos in products or materials manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors (or any of their respective past or present Affiliates, any of the predecessors of any of the Debtors or any of their respective past or present Affiliates, or any other Entity for whose products or operations any of the Debtors allegedly has liability or is otherwise liable); or

        (ii)    from vermiculite mined, milled, or processed by the Debtors (or any of their respective past or present Affiliates, any of the predecessors of any of the Debtors or any of their respective past or present Affiliates, or any other Entity for whose products or operations any of the Debtors allegedly has liability or is otherwise liable).

Notwithstanding anything to the contrary, Previously Settled/Adjudicated Asbestos Claims are not included within the Class of Asbestos PD Claims. ZAI Claims are included within the Class of Asbestos PD Claims.

## DISCUSSION

### A. *The Joint Stipulation Lacks the Requisite Reasonableness And Should Not Be Approved*

12. Pursuant to Federal Bankruptcy Rule 9019, the Court has authority to approve a settlement if the proposed agreement engenders a reasonable compromise of a debtor's rights or obligations in respect thereof. While the judgment of a bankruptcy fiduciary to enter into an agreement may be given some deference, "a court cannot simply approve a settlement because the trustee or debtor so moves." *See In re Nationwide Sports Distributors*, 227 BR 455, 460 (Bankr. E.D. Pa. 1998). In this circumstance, it is the obligation of the Debtors to demonstrate that the Stipulation is appropriate and in the best interests of the estate. *Id*. The ultimate inquiry for a court's approval of an agreement under Rule 9019 is whether "the compromise is fair, reasonable and in the interest of the estate." *See In re Marvel Ent. Group, Inc*., 222 B.R. 243, 249 (D. Del. 1998); *In re Louise's, Inc.,* 211 B.R. 798, 801 (D. Del. 1997).

13. The Supreme Court has directed that, in determining whether a compromise is fair and equitable, a bankruptcy court must appraise itself "of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). The factors to be considered in making such a determination include: 1) the probability of success in litigation, 2) the likely difficulties in collection, 3) the complexity of the litigation involved, and the expense, inconvenience, delay necessarily attending to it, 4) the paramount interest of the creditors, and 5) all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. *Id.* at 424-25; *see also In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *In re Marvel*, 222 B.R. at 249. Under the circumstances presented by the

Motion, the factors weigh heavily against the reasonableness of the Stipulation, and it should not be approved.

14.     It is clear that by the Motion, the St. Paul Claim would be afforded different and arguably better treatment than the Solow Claim which it supersedes.   Yet, the law is clear that, under Bankruptcy Code section 502(e), the St. Paul Claim is not entitled to any better treatment, higher status or increased value than that of the Solow Claim. Significantly, the Joint Stipulation contravenes both Bankruptcy Code section 502(e) and explicit Congressional policy underlying section 502(e).  Section 502(e) states, in relevant part, that

> (1)     ....the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that –
>
> (A)     such creditor's claim against the estate is disallowed;
> (B)     such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution; or
> (C)     such entity asserts a right of subrogation to the rights of such creditor under section 509 of this title.
>
> (2)     A claim for reimbursement or contribution of such an entity that becomes fixed after the commencement of the case shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) of this section, the same as if such claim had become fixed before the date of filing of the petition.

15.     The legislative history of section 502(e) unambiguously states "that a surety's claim for reimbursement or contribution is entitled to no better status than the claim of the creditor assured by such surety."  124 Cong. Rec. H11, 094 (daily ed. Sept. 28, 1978); S17,410 (Oct. 6, 1978). Based upon this explicit Congressional policy, courts routinely reject a co-debtor or surety's attempt to better their status as compared to the underlying creditor's claim.  For instance, in *In re Regal Cinemas, Inc.*, 393 F.3d 647 (6th Cir. 2004), the Sixth Circuit affirmed two lower court

7

rulings disallowing a guarantor's proof of claim against a debtor. There, the debtor failed to make lease payments to a lessor. The guarantor was required to satisfy any of the debtor's unpaid lease obligations to the lessor. Subsequent to the debtor's bankruptcy filing, the landlord filed a lease-termination damages claim. The debtor ultimately satisfied the claim in full without the guarantor being required to make any payment to the lessor. The guarantor nevertheless filed a claim against the debtor in connection with its indemnification obligations in excess of the amount the lessor sought and received from the debtor, based upon the guarantor's incurrence of maintenance costs, taxes and attorneys' fees.

16. Relying on the legislative history of section 502(e), the Sixth Circuit ruled that "[the guarantor's] claim for reimbursement must be disallowed when the claim of the underlying creditor – here, the landlord – is disallowed." *Id.* at 651. "These restrictions on claims made by co-liable parties work to prevent co-debtors from achieving more favorable terms than the underlying creditor...." *Id.* at 650. Because the lessor could not assert a claim greater than the amount it asserted and received payment on, the guarantor likewise could not seek more than the guarantor was entitled to recover. *Id.* Indeed, given that the debtor satisfied all amounts due and owing to the landlord, the court was required to disallow the guarantor's indemnification claim in full.

17. Similarly, in *Chase Manhattan Bank v. Francini*, No. 91 Civ. 2515 (MBM), 1991 WL 161359 (S.D.N.Y. Aug. 16, 1991), the district court underscored the legislative history of section 502(e) in denying a guarantor's request to transfer venue of the litigation to the debtor's Connecticut bankruptcy case. There, plaintiff sought to recover on defendants' guaranty of the debtor's unsatisfied obligations to plaintiff. The defendants argued, in part, that unless the court granted a change of venue, they could be prejudiced to the extent they were found liable in the

8

district court action to plaintiff but the bankruptcy court disallowed plaintiff's claim against the debtor. The court rejected defendants' argument, opining that "the prejudice results from § 502(e)(1)(A) itself which, as the legislative history indicates, reflects 'a policy that a surety's claim for reimbursement or contribution is entitled to no better status than the claim of the creditor assured by such surety.'" *Id.* at * 16145 (quoting 124 Cong. Rec. H11,094 (Sep. 28, 1978); S17,410 (Oct. 6, 1978)); s*ee also*, *In re Fox*, 64 B.R. 148, 151 (Bankr. N.D. Ohio 1986) ("The impact of [section 502(e)'s legislative history] is both fair and equitable. The co-debtor will receive both the benefits and burdens of the creditor's claim."); *In re Baldwin-United Corp.*, 55 B.R. 885, 894 (Bankr. S.D. Ohio 1985) (where creditor does not possess valid claim against debtor, surety's claim must be disallowed as well).

18. Also, given that the St. Paul Claim may forever remain contingent, the Debtors are simply wasting precious estate resources. It is axiomatic that until a surety makes a payment on behalf of a debtor, the surety's claim is contingent. Furthermore, if the surety's claim remains contingent during the course of a debtor's bankruptcy proceeding, the surety's claim must be disallowed. *See* 11 U.S.C. § 502(e)(1)(B); *see also In re Microwave Prods. of Am., Inc.*, 118 B.R. 566, 574 (Bankr. W.D. Tenn. 1990) ("Until payment is made, the surety's claim is contingent."). Here, the Debtors have put the cart before the horse – spending much time and effort in attempting to reclassify or recharacterize a claim *prior* to the claim shedding its contingency.

19. Based on the foregoing, St. Paul's objection that its claim should be classified differently than the Solow Claim is without merit. If the Solow Appeal were permitted to proceed at this time as required by the Stipulation, significant estate resources and funds would be expended in

the appeal, and, if the Solow Group is correct, the Debtors' estates may become liable for increased monetary damages in excess of $70 million.

20. In light of the lack of merit of the St. Paul objection, the significant waste of resources that will occur, the long delay that would result from the handling of the appeal and a retrial of the Solow Claim, and the potential of exposure to increased liabilities, the Stipulation fails to establish the reasonableness requisite to its approval.

### B. The Debtors Fail to Demonstrate Cause for Modification of the Automatic Stay

21. Although Bankruptcy Code section 362(d) does permit the Court to grant relief from an automatic stay upon a showing of cause, it is the movant's burden to demonstrate that cause for such relief actually exists. *See In re Moore*, 267 B.R. 111, 115 n. 12 (Bankr. E.D. Pa. 2001).

22. Courts within the Third Circuit consider the totality of the circumstances in determining whether cause exists for relief from the automatic stay. *Id.; see also In re Mid-Atlantic Handling Sys. LLC*, 304 B.R. 111, 130 (Bankr. D. N.J. 2003): *In re Jones*, 284 B.R. 92, 98 (Bankr. E.D. Pa. 2002).

23. In determining whether relief from an a stay is appropriate to allow a party to proceed with the prosecution of a claim in another forum, a court may consider various factors including whether the proposed litigation in the other court prejudices the interests of creditors, promotes judicial economy, or results in the expeditious and economical resolution of the litigation. *See Mid-Atlantic*, 304 B.R. at 130 (listing twelve factors that may be considered); *In re Ice Cream Liquidation, Inc.,* 281 B.R. 154, 165 (Bankr. D. Conn. 2002) (same).

24. Here, the Debtors have failed to demonstrate cause for the requested relief or even to explain why the prosecution of one Asbestos PD Claim must go forward outside of this bankruptcy forum when all other Asbestos PD Claims currently remain before this Court. The

prosecution of the Solow Claim in state court will require the expenditure of significant time and resources of the estate and will distract the Debtors.

25.     Furthermore, creditors may well be dramatically impacted by the resolution of the Solow Appeal as the Solow Group cross appealed and claims entitlement to damages in excess of $70,000,000, a sum that will dwarf the St. Paul Claim.

26.     The Debtors have failed to show any basis for cause for modification of the automatic stay and the factors weigh heavily against the requested relief.  The sole "benefit" derived by the settlement is the promised support of St. Paul for the Plan which is likely not confirmable in any event.

WHEREFORE, the PD Committee respectfully requests that the Court deny approval of the Stipulation and, enter an order denying the Motion and the requested modification of stay and grant such other and further relief as the Court deems just and proper.

Wilmington, Delaware

Dated:  April 8, 2005                                Respectfully submitted,

BILZIN SUMBERG BAENA
   PRICE & AXELROD LLP
200 South Biscayne Boulevard
Suite 2500
Miami, Florida  33131-2336
Telephone:  (305) 374-7580

Scott L. Baena (Admitted Pro Hac Vice)
Jay M. Sakalo (Admitted Pro Hac Vice)
Allyn Danzeisen (Admitted Pro Hac Vice)

-And-

FERRY JOSEPH & PEARCE, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, Delaware  19899
Telephone:  (302) 575-1555

By:  /s/ Lisa L. Coggins
Theodore J. Tacconelli (Del. Bar No. 2678)
Lisa L. Coggins (Del. Bar No. 4234)

CO-COUNSEL FOR THE OFFICIAL
COMMITTEE OF ASBESTOS PROPERTY
DAMAGE CLAIMANTS