IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | Re: Docket No. 8077 |

## DEBTORS' LIMITED OPPOSITION TO APPLICATION AUTHORIZING THE EMPLOYMENT OF ANDERSON KILL & OLICK, P.C. AS SPECIAL INSURANCE COUNSEL FOR THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS

The Debtors do not, in principal, oppose the employment of Anderson Kill & Olick, P.C. as special insurance counsel for the Official Committee of Asbestos Personal Injury Claimants.[1] The Debtors however, do have a number of legitimate concerns and reservations regarding the timing and scope of such employment.

The application to employ Anderson Kill & Olick, P.C. ("Anderson Kill") as special insurance counsel (the "Employment Application") is premature and not appropriate since insurance proceeds are not being contributed to the Asbestos Trust from which the asbestos creditors will be paid. And, even if the employment of special insurance counsel for personal injury claimants is appropriate, other similarly situated creditors should be equally entitled to representation. Therefore, if the employment is allowed, Anderson Kill should represent a larger constituency. Most importantly, parameters should be set on the scope of any employment of Anderson Kill and a budget mechanism established.

---

[1] The Debtors have waived any potential firm conflicts as referenced in paragraph 13 of the Employment Application and do not oppose the employment of Anderson Kill based on firm qualifications.

*Insurance Proceeds are not part of the Asbestos Trust*

As a preliminary matter, the Debtors are unclear as to why the Official Committee of Asbestos Personal Injury Claimants ("PI Committee") needs to employ special insurance counsel at all. On January 13, 2005, the Debtors filed their Amended Joint Plan of Reorganization [Docket No. 7560] (the "Plan"). The Plan and accompanying Disclosure Statement [Docket No. 7559] (the "Disclosure Statement") provide that any insurance proceeds that the Debtors may receive are not included as part of the assets of the Asbestos Trust established for the benefit of the asbestos creditors -- a subset of which creditors are the PI Committee's constituents. See Disclosure Statement, Section 1.2.6. Since insurance proceeds are not part of the Asbestos Trust, the PI Committee should have no particular concern regarding resolution of insurance-related matters.

*Special Insurance Counsel Should Not Only Represent the PI Committee*

The PI Committee's only legitimate interest in the resolution of insurance-related matters, could stem from the fact that the Asbestos Trust called for in the current Plan has an equity component. Thus, any insurance proceeds received by the Debtors indirectly, would have an effect on the value of the Asbestos Trust's equity component in the company. However, following the logic of that argument -- an argument which the PI Committee has not even articulated -- the Property Damage Committee, the Future Claimants' Representative, the Equity Security Holders Committee, and the Unsecured Creditors Committee, each of whom have equity components granted to their constituents under the existing Plan, should equally be entitled to special insurance counsel. Therefore, if Anderson Kill is appointed as special insurance counsel, the Debtors suggest Anderson Kill represent the interests of all of above-

referenced committees, not just the PI Committee, to avoid even greater expense and duplication of efforts.

*Employment Application Too Broad in Scope*

The Debtors' most important concern relates to the scope of the Employment Application. The Debtors would be agreeable to the employment of Anderson Kill for the limited purpose of analyzing certain insurance settlements on a go-forward basis. But, the Employment Application reaches much further. The Employment Application: (a) draws no distinction between fully-resolved, partially-resolved, and unresolved insurance settlements and allows Anderson Kill to review *all* insurance settlements; (b) permits Anderson Kill to review not only asbestos-related and silica-related insurance issues but *all* toxic tort exposure claims; (c) potentially allows Anderson Kill to review *any* insurance matters of *any* kind; and (d) places no budget or cost limitations on Anderson Kill's employment. The Debtors have been involved in extensive insurance litigation and settlements for over the past 20 years and are therefore leery that Anderson Kill would be reinventing the wheel in many instances on an unguided expedition.

Paragraph 16(b) of the Employment Application provides that Anderson Kill may review, analyze, and advise the PI Committee on potential settlements between the Debtors and the Debtors' insurance carriers. Since the Employment Application draws no distinction between fully-resolved, partially-resolved, and unresolved insurance settlements, Anderson Kill may review *all* insurance settlements. Such review would not only be an inefficient use of time, it would be a waste of money. The Debtors have always been represented by sophisticated insurance counsel and have pursued, and will continue to aggressively pursue, insurance settlements. Reviewing matters that the Debtors already settled years ago will produce zero gain but will result in significant expense. Instead, the Debtors would be willing to provide Anderson

3

Kill with a detailed explanation regarding which coverages are fully resolved and why they are so, to avoid unnecessary duplication of efforts and waste of resources. In fact, special insurance counsel has been retained in several other chapter 11 cases similar to this one, and in some instances such counsel has incurred very substantial fees looking at debtors' various past settlements.

The Employment Application permits Anderson Kill to review not only asbestos-related and silica-related insurance issues but extends even further to permit review of all toxic tort exposure claims. This is unnecessary. Grace has no historical exposure related to silica or other toxic torts and no such broad claims analysis is therefore necessary.

The Employment Application potentially allows Anderson Kill to review any insurance matters of any kind. Again, such broad authority invites a waste of time and significant fees with no corresponding benefit.

Furthermore, the Employment Application places no budgetary limitations on Anderson Kill's employment. Under the proposed Employment Application, Anderson Kill is free to engage in a broad and unnecessary expedition at a considerable expense to the Debtors and the Debtors' estates. While the Debtors would be free to object to the fees and costs incurred by Anderson Kill at the time Anderson Kill submits its fee application, such after-the-fact objection may prove too little, too late. The preferable course would be to set the parameters of the investigation and analysis up front, imposing budgetary restrictions on Anderson Kill before it begins its review so that it can be most efficient in maximizing the time and money allocated to it.

Finally, much of the work that Anderson Kill is likely to perform has already been performed by the Debtors themselves. The Debtors have been resolving insurance related

matters for over 20 years with the aid of sophisticated counsel. Many insurance coverages have long been settled. There is no need to rehash settlements from which there can be no gain. Therefore, the Debtors believe that this Court must impose certain consultation obligations and other restrictions on Anderson Kill to avoid unnecessary and costly duplication of effort.

*Debtors' Suggested Parameters and Limitations*

If the Court is going to permit the employment of Anderson Kill at this time, the Debtors propose certain limitations and restrictions be imposed on such employment, as follows:

1. Anderson Kill should be employed to represent all of the Debtors' Committees and the Future Claims Representative (not just the PI Committee);

2. The scope of Anderson Kill's employment should be limited to:

   o reviewing matters regarding the Debtors' insurance coverage available for payment of asbestos-related claims (and not silica-related or "other toxic exposure claims"); and

   o reviewing potential settlements between the Debtors and the Debtors' insurance carriers on a go-forward basis (and not probing into coverage that is fully resolved).

3. Anderson Kill should be required to consult with the Debtors and their insurance counsel prior to engaging in any analysis so as to prevent an inefficient and costly duplication of efforts.

4. Anderson Kill should submit periodic budgets to the Debtors and the Committees for their work and be required to adhere to agreed-upon budgets (and not be allowed potentially unlimited fees).

WHEREFORE, the Debtors respectfully request that if the Court determines that the Employment Application should be granted at this time, that the Court limit the Employment Application of Anderson Kill as suggested herein.

Dated: April 8, 2005

Respectfully submitted,

KIRKLAND & ELLIS LLP
James H.M. Sprayregen, P.C.
Janet S. Baer
Lori Sinanyan
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession