IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Objection Deadline: April 29, 2005**
**Hearing Date: May 16, 2005 at Noon**

## MOTION OF DEBTORS FOR ENTRY OF AN ORDER APPROVING A SETTLEMENT AGREEMENT AND A REMEDIATION AGREEMENT CONCERNING THE HATCO SITE AND APPROVING AN ASSOCIATED PROFESSIONAL SERVICE AGREEMENT AND AUTHORIZING TRANSACTIONS THEREUNDER

W.R. Grace & Co., W.R. Grace & Co.-Conn. ("Grace"), and Remedium Group, Inc.

("Remedium" and together with W.R. Grace & Co. and Grace, the "Settling Debtors"), debtors

and debtors-in-possession in the above-captioned chapter 11 cases, by and through their

undersigned counsel, respectfully move this Court (the "Motion") for the entry of an Order

approving the attached Settlement Agreement and Remediation Agreement and authorizing

transactions thereunder and approving the attached professional service agreement with Marsh

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

USA Inc. ("Marsh") and authorizing transactions thereunder, pursuant to sections 105 and 363 of

title 11 of the United States Code (as amended, the "Bankruptcy Code") and Rules 2002, 6004,

and 9019 of the Federal Rules of Bankruptcy Procedure, and in support thereof, state the

following:

### Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this

Court under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for this Motion are sections 105 and 363 of the

Bankruptcy Code and Fed. R. Bankr. P. 2002, 6004, and 9019.

### Background

3.      On April 2, 2001 (the "Petition Date"), all of the above-captioned debtors and

debtors-in-possession (collectively, the "Debtors") filed their voluntary petitions for relief under

chapter 11 of the Bankruptcy Code, commencing their respective chapter 11 cases (collectively,

the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative

purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors

continue to operate their businesses and manage their properties as debtors in possession.

4.      Prior to the filing of the Chapter 11 Cases, from the years 1959 through 1978,

Grace owned and operated a specialty chemicals manufacturing facility located at 1020 King

Georges Post Road, Fords, New Jersey, then known as the Hatco Chemical Division of Grace

("Hatco Facility").

5.      Hatco Corporation ("Hatco")[2] purchased the real property and operations of the Hatco Chemical Division on August 21, 1978. Hatco continues to own and operate the Hatco Facility.

6.      On July 22, 1992, the State of New Jersey (the "State"), through the New Jersey Department of Environmental Protection ("NJDEP"), issued a Directive and Notice to Insurers to Grace and Hatco asserting that such parties are responsible for the discharge of hazardous substances at the Hatco Facility pursuant to the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 *et seq.*, and demanding that Grace and Hatco conduct a remedial investigation and remedial action of hazardous substances.

7.      Hatco entered into an administrative consent order with the NJDEP in September 1992 for the investigation and remediation of hazardous substances on or emanating from the Hatco Facility (the "Site"). Thereafter, Hatco initiated litigation against Grace.

8.      After extensive litigation in the federal and state courts, Grace and Hatco entered into a settlement agreement dated July 1, 1996, that, among other things, provided for Grace and Hatco to remediate the Site cooperatively and to participate jointly in the resolution of future costs and expenses in connection with such remediation, in accordance with the terms of the settlement agreement. Grace and Hatco have worked cooperatively to address contamination at the Site since entering the settlement agreement, and, until the Petition Date, resolved

---

[2]  The Farben and Fuss Corporations purchased the Hatco Facility from Grace. The Fuss Corporation purchased the chemical realty of the Hatco Chemical Division. The Farben Corporation purchased the chemical assets other than the chemical realty of the Hatco Chemical Division. On September 1, 1978, the Farben Corporation changed its name to Hatco Chemical Corporation. On September 30, 1978, the Fuss Corporation merged into Hatco Chemical Corporation. On October 28, 1986, Hatco Chemical Corporation was renamed Hatco Corporation.

remediation costs and expenses consistently with the settlement agreement. Grace has not sought to reject the settlement agreement under the Bankruptcy Code.

9.      By letter dated September 12, 2001, the Settling Debtors advised the State and Hatco of the Settling Debtors' bankruptcy filing and that the Settling Debtors would be unable to participate further in the environmental remedial activities at the Site due to the filing, and, by letter dated September 21, 2001, Hatco disputed the position of the Settling Debtors and asserted Grace has a continuing obligation to perform the remediation of the Site pursuant to the 1996 settlement agreement.

10.     The State believes that it has a non-dischargeable claim against Grace for the remediation of the Site.

11.     On or about March 28, 2003, Hatco filed its proof of claim numbered 9569 (the "Proof of Claim") for $34 million against Grace relating to the obligations and liabilities of Grace arising from environmental contamination at the Site.

12.     To avoid protracted litigation and resolve their liability in connection with the Site, the Settling Debtors and Hatco have developed a liability transfer program to achieve remediation of the Site at minimum risk and cost to the Settling Debtors. The transfer is structured such that, in exchange for a one-time payment, a third-party environmental contractor will assume, in perpetuity, the Settling Debtors' and Hatco's environmental remediation and environmental legal liability in connection with the Site. In short, under agreements with the State and with the Settling Debtors and Hatco, the third-party will be responsible to complete the environmental remediation of the Site and maintain the remedy in perpetuity, and, under an agreement with the Settling Debtors and Hatco, will defend and pay other claims related to environmental conditions at the Site. The third-party's obligations will be backed by an

environmental insurance policy providing remediation cost cap insurance in addition to pollution legal liability insurance.

13.    To develop and implement this liability transfer structure, the Settling Debtors entered into a professional service agreement with Marsh to gain Marsh's advice and assistance with regard to the structure and details of the liability buy-out (the "Letter Agreement"). Marsh has specialized knowledge with respect to environmental insurance programs and risk transfer. Among other things, Marsh evaluated the environmental clean-up risks at the Site, structured a program to address the risks, identified potential liability buy-out candidates and insurance providers, assisted to interview and negotiate with the candidates and providers, and supported the evaluation of bids received.

14.    With Marsh's assistance, the Settling Debtors and Hatco solicited competitive bids from experienced environmental contractors. After a rigorous selection process, the Settling Debtors and Hatco selected Weston Solutions, Inc. ("Weston") as the third party liability buy-out contractor. Weston has chosen ACE American Insurance Company ("ACE") as its insurer. ACE will issue a Remediation Expense Containment and Premises Pollution Liability Insurance Policy (the "Policy") to insure Weston's obligations under the liability transfer.

### Settlement

15.    To formalize this liability transfer, a set of five documents have been developed: two are before this court for approval; two additional documents, to which the Settling Debtors are not formal parties, and one additional document, pursuant to which the Settling Debtors are not required to make payment, are also contingent on the Court granting this motion. These documents, described further below, are: (a) the Settlement Agreement amongst the Settling Debtors, NJDEP, Hatco, Weston, and ACE; (b) the Remediation Agreement amongst the Settling

Debtors, Hatco, and Weston; (c) the Policy to be issued by ACE; (d) the Administrative Consent Order agreed to amongst NJDEP, Weston, and ACE; and (e) the Natural Resource Damages Settlement Agreement agreed to amongst the Settling Debtors, NJDEP, Hatco, and Weston.

16.     Grace, Remedium, NJDEP, Hatco, Weston, and ACE have executed a Settlement Agreement, attached hereto as Exhibit 1, under which, subject to approval by this Court, (a) Grace and Remedium will pay $21,353,794 in settlement of all liabilities with respect to environmental conditions at the Site, (b) Hatco will pay $3,768,316 in settlement of all liabilities with respect to environmental conditions at the Site related to releases from the Site commencing prior to November 4, 2002, (c) Grace and Remedium will exchange mutual releases of claims and covenants not to sue with Hatco; (d) NJDEP will grant Grace and Remedium a covenant not to sue relating to environmental contamination resulting from discharges from the Site; (e) NJDEP will grant Hatco a conditional promise not to sue relating to environmental contamination resulting from discharges from the Site commencing prior to November 4, 2002; (f) Hatco and NJDEP will be precluded from seeking other relief against Grace and Remedium related to the Site; (g) Hatco's Proof of Claim and claims under the 1996 settlement agreement will be extinguished; (h) Weston will be responsible for its commitments under the Settlement Agreement, Remediation Agreement, the Policy, and the Administrative Consent Order; and (i) ACE will be required to issue the Policy and provide financial assurance on behalf of Weston for the remediation to the limits of, and for so long as, the Policy is effective.

17.     Grace, Remedium, Hatco, and Weston have executed a Remediation Agreement, attached to the Settlement Agreement as Exhibit A, under which, subject to the Court's approval, Weston will accept responsibility for historical environmental liabilities in connection with the Site and the Debtors and Hatco will fund the remediation of the Site and the purchase of

insurance and an annuity, in a total amount equal to $25,122,110. In particular, Weston will

become responsible (a) for all activities necessary to investigate and remediate pollution

conditions caused by operations or conditions existing prior to November 4, 2002 whether at,

under, or migrated or migrating from the Site; (b) to sign as the generator for all remediation

waste disposed from the Site; and (c) for the legal obligations of Grace, Remedium, or Hatco for

risks resulting from such pollution conditions, including third-party bodily injury, property

damage, and natural resources damages claims. Weston's activities will be funded and insured

through the Policy for the first thirty years; thereafter, any long-term operation and maintenance

of the remedy will be financed through a pre-funded annuity.

      18.     The Policy has been negotiated among Grace, Remedium, Hatco, Weston, and

ACE and is Exhibit B to the Settlement Agreement. The Policy will fund the remedial action,

cover any cost overruns associated with implementing the remedial plan or resulting from

unknown pre-existing conditions or regulatory re-openers, satisfy natural resource damages

claims to a maximum of $5 million, and provide defense and coverage for third-party claims for

clean-up costs, property damage, and bodily injury associated with conditions related to the Site

whether on-site, off-site, associated with transportation of Site-related waste, or disposal of such

wastes at non-owned disposal sites.

      19.     Under Settlement Agreement and Remediation Agreement, Weston will become

liable to the State for cleanup pursuant to a new Administrative Consent Order, attached as

Exhibit C to the Settlement Agreement, that has been fully negotiated, executed by Weston and

ACE, and, pursuant to the terms of the Settlement Agreement, will be executed by NJDEP within

fourteen (14) days of receipt of the Order being sought from this Court by this Motion. ACE has

executed the Administrative Consent Order for the limited purpose of providing financial

assurance of the remedy through a self-guarantee to the State of New Jersey. Under the

Settlement Agreement and Remediation Agreement, natural resource damage claims related to

environmental conditions at the Site existing as of the date of the Natural Resource Damages

Settlement Agreement will be fully settled pursuant to the Natural Resource Damages Settlement

Agreement, attached hereto as Exhibit 2. The Natural Resource Damages Settlement Agreement

has been executed by the Settling Debtors, NJDEP, Hatco, and Weston. The actions required by

the Natural Resource Damages Settlement Agreement will be funded through the Policy. The

Settling Debtors will receive a full release and covenant not to sue and contribution protection

for natural resource damages existing prior to the date of the Natural Resource Damages

Settlement Agreement.

### Relief Requested

20.     By this Motion, the Settling Debtors respectfully seek the entry of an order (i)

approving the Settling Debtors' execution of the Settlement Agreement; (ii) approving the

Settling Debtors' execution of the Remediation Agreement; (iii) granting the Settling Debtors

authority to consummate the transactions contemplated by the Settlement Agreement and

Remediation Agreement, including the payment of $21,353,794 to Weston as set forth in the

Settlement Agreement and Remediation Agreement; (iv) approving Debtors' execution of the

Letter Agreement; and (v) granting the Settling Debtors authority to remit to Marsh the Success

Fee in the amount of $330,000 as required by the Letter Agreement.

### Statutory Authority

21.     This Court has statutory authority to authorize and approve the Settlement

Agreement and Remediation Agreement and the transactions contemplated therein and the Letter

Agreement and the transaction contemplated therein. 11 U.S.C. §§ 105 and 363 (b)(1). A

settlement of claims and causes of action by a debtor in possession constitutes a use of the property of the estate. See Northview Motors, Inc. v. Chrysler Motors Corp., 186 F.3d 346, 350 (3d Cir. 1999). If a settlement is outside the ordinary course of business of the debtor, it requires the approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. Id.

22.     Bankruptcy Rule 9019 provides that, after notice and a hearing, the court may approve a proposed compromise or settlement. Settlements and compromises are "a normal part of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939)). Indeed, compromises are favored in bankruptcy. In re Martin, 91 F.3d 389, 393 (3d Cir. 1996). The decision whether to accept or reject a compromise lies within the sound discretion of the court. In re Resorts Int'l, Inc., 145 B.R. 412, 451 (Bankr. D. N.J. 1990): In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (Bankr. E.D. Pa. 1986).

23.     In reviewing a motion for approval of a settlement, bankruptcy courts must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." In re Martin, 91 F.3d at 393. This requires court consideration of the following criteria: "(1) the probability of success in litigation, (2) the likely difficulties in collection, (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it, and (4) the paramount interest of the creditors." Id.

24.     In determining whether to approve a proposed settlement, a bankruptcy court need not decide the numerous issues of law and fact raised by the settlement, but rather should "canvass the issues to see whether the settlement fall[s] below the lowest point in the range of reasonableness." In re Neshaminy Office Bldg. Assocs., 62 B.R. at 803.

25.     Approval of the Settlement Agreement, Remediation Agreement and Letter Agreement is in the best interests of the Settling Debtors and their estates and serves a public interest. The Settling Debtors will avoid certain, protracted, and expensive litigation, will cost-effectively resolve a considerable environmental liability, will receive covenants not to sue from NJDEP and Hatco concerning the Site, will receive a covenant not to sue from Hatco for obligations and liabilities under the 1996 Settlement Agreement, and will be indemnified from all potential future liability through the Remediation Agreement. Furthermore, significant environmental contamination will be promptly remediated.

26.     Approval of the settlement will extinguish Hatco's contract and environmental contribution claims. In litigation enduring more than six years in the United States District Court for the District of New Jersey, Hatco established Grace's contribution liability for environmental conditions at the Site, Hatco Corp. v. W.R. Grace & Co.-Conn., 836 F. Supp. 1049, 1086 (D.N.J. 1993); Hatco Corp. v. W.R. Grace & Co.-Conn., 801 F. Supp. 1309, 1329 (D.N.J. 1992). The 1996 settlement agreement resolved this litigation and establishes the respective liabilities of Grace and Hatco for the Site. Hatco has filed its Proof of Claim to enforce that settlement agreement. The Court's approval of the Settlement Agreement and Remediation Agreement will resolve Hatco's Proof of Claim without forcing litigation. Allowing the settlement to proceed will eliminate Hatco's claims in the amount of approximately $34 million against the Settling Debtors' estates for the payment of only $21,353,794. Furthermore, this settlement allows the Settling Debtors to avoid additional obligations of the 1996 settlement agreement, such as payment for costs associated with facility expansion projects and certain aspects of Hatco's wastewater discharge. The settlement agreement requires Grace to pay costs for facility expansion projects up to $3 million and for wastewater discharge projects with no limit. Thus,

granting this motion and allowing the settlement to proceed will eliminate assured transaction costs, address risk of increased costs, and expedite resolution of this significant liability.

27.     Approval of the settlement will result in the remediation of the Site and satisfaction of the State's environmental statutes and regulations. While the State has not filed a proof of claim against the Settling Debtors, NJDEP may still assert that an order to conduct remediation issued pursuant to federal or state environmental law is not a claim dischargeable in bankruptcy, but rather is the State's exercise of its regulatory and police powers pursuant to In re Torwico Elec., Inc., 8 F.3d 146 (3d Cir. 1993). NJDEP would almost certainly pursue the Settling Debtors as the Settling Debtors' liability already has been established and Hatco is not financially capable of funding the required remediation. The Site is a high profile environmental site for NJDEP which has been the subject of recent press attention, particularly with respect to its proximity to the Raritan River. NJDEP can be expected to vigorously pursue the Settling Debtors, and any litigation with the State is sure to be lengthy, complex, and costly. Furthermore, should the Settling Debtors be required to conduct the remediation, the Settling Debtors would bear the risks inherent in environmental remediation, namely: cost overruns associated with unknowns, changes in regulations, and significant transaction costs. In addition, the settlement grants a complete release and covenant not to sue and contribution protection for all natural resource damage claims associated with environmental conditions at the Site as of the date of the Natural Resource Damage Settlement Agreement. As stated, the Site is located near the Raritan River. The State has announced several initiatives with respect to natural resource damage claims. First, the State intends to aggressively pursue natural resource damages at all sites. Second, the State has targeted sites impacting the environmental condition of various water bodies, including the Raritan River. The Settling Debtors have been advised that the Site

has not been included in the Raritan River initiative because of this pending settlement. If the settlement is not approved, the State can be expected to maintain that natural resource damage claims are not dischargeable in bankruptcy, and certain lengthy, complex, and costly litigation would result.

28.    The settlement will preclude any future claim concerning the Settling Debtors' responsibility regarding remediation or other liability with respect to the Site and will constitute a final resolution of the Settling Debtors' liability relating thereto. The settlement addresses future claims of the State and Hatco, through their covenants not to sue in the Settlement Agreement and the Natural Resource Damages Settlement Agreement, as well as potential claims of third parties through Weston's indemnifications and obligations in the Remediation Agreement and the contribution protection in the Natural Resource Damages Settlement Agreement. Such future claims include not only those requiring the conduct of the planned remediation, but also those regarding the conduct of remediation of any unknown contamination, future natural resource damages, and any property damage or bodily injury claims associated with the Site. The settlement benefits the Settling Debtors and their estates by resolving all environmental liability (remediation and otherwise) associated with Site in perpetuity, providing complete, cost-effective resolution of a significant liability.

29.    Further, should the settlement not be approved, the Settling Debtors may face repercussions from the United States Environmental Protection Agency (the "USEPA") in connection with its regulatory and enforcement role pursuant to the Toxic Substances Control Act, 15 U.S.C. §§ 2601, *et seq.* The USEPA's involvement would likely result in protracted and expensive litigation and a more costly and time consuming remediation of the Site by the Settling Debtors.

30.     Finally, approval of the settlement benefits the public. The Site has been the subject of environmental interest since 1979, and remedial actions essentially have been inactive since the Petition Date. Clearly, prompt remediation of a significantly contaminated site and resolution of natural resource damage claims serve the public interest.

31.     The settlement described herein was the product of a rigorous bid and negotiation process, conducted with the specialized assistance of Marsh to ensure appropriate structure and competitive pricing. The settlement precludes the incurrence of significant transaction costs, cost-effectively resolves a significant environmental liability of the Settling Debtors for a sum certain, and will result in the remediation of the Site without future risk to the Settling Debtors of additional or increased claims. The settlement provides assurance to the creditors that liabilities associated with the Site are fully addressed. Thus, the proposed settlement is fair, reasonable, and in the best interest of the Settling Debtors' estates.

32.     With regard to consummating the Settlement Agreement, Remediation Agreement and Letter Agreement, to the extent the Settling Debtors require authority under section 363 of the Bankruptcy Code, the Debtors, by this Motion, request such authority.

## Conclusion

33.     The proposed Settlement Agreement and Remediation Agreement are fair and equitable and are in the paramount interests of the Settling Debtors, their estates, and their creditors. The consummation of the relief granted in the Settlement Agreement and Remediation Agreement is also in the public interest. The Letter Agreement provided for professional services that were necessary to develop the settlement, and, in accordance with the terms of the Letter Agreement, the payment required thereby must be made if the settlement is approved. In addition, the Settling Debtors reasonably believe that the relief requested in this Motion will aid

in the expeditious resolution of the Chapter 11 Cases. Accordingly, the Settling Debtors have demonstrated a sound business justification and public interest for the execution and consummation of the Settlement Agreement, Remediation Agreement, and the Letter Agreement.

## Notice

34.     Notice of this Motion has been given to: (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to each of the official committees appointed in the Chapter 11 Cases, and (v) all those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Request

35.     No prior motion or application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Settling Debtors respectfully request that the Court enter an Order (i) approving the execution of the Settlement Agreement attached as Exhibit 1 hereto by the Settling Debtors, (ii) approving the execution of the Remediation Agreement attached as Exhibit A to the Settlement Agreement by the Settling Debtors, (iii) authorizing the Settling Debtors to consummate the transactions contemplated thereby, (iv) approving the execution of the Letter Agreement attached as Exhibit 3 hereto by the Settling Debtors, (v) authorizing the Debtors to consummate the transactions contemplated by the Letter Agreement, and (vi) granting such other relief as may be just or proper.

Dated: April 11, 2005

> KIRKLAND & ELLIS LLP
> James H.M. Sprayregen, P.C.
> Janet S. Baer
> Samuel L. Blatnick
> 200 East Randolph Drive
> Chicago, Illinois 60601
> (312) 861-2000
>
> and
>
> PACHULSKI, STANG, ZIEHL, YOUNG, JONES &
> WEINTRAUB P.C.
>
> Laura Davis Jones (Bar No. 2436)
> David W. Carickhoff, Jr. (Bar No. 3715)
> 919 North Market Street, 16th Floor
> P.O. Box 8705
> Wilmington, DE 19899-8705 (Courier 19801)
> Telephone: (302) 652-4100
> Facsimile: (302) 652-4400
>
> Co-Counsel for the Debtors and Debtors in Possession