# LIST OF EXHIBITS

Exhibit 1    Settlement Agreement, including
                      A.    Remediation Agreement
                      B.    ACE Policy
                      C.    Administrative Consent Order

Exhibit 2    Natural Resource Damages Settlement Agreement

Exhibit 3    Letter Agreement with Marsh USA Inc.

# EXHIBIT 1

## SETTLEMENT AGREEMENT

Record and Return to:
Anthony J. Reitano, Esq.
Herold and Haines, P.A.
25 Independence Boulevard
Warren, New Jersey 07059

Prepared by:

_____

Anthony J. Reitano, Esq.

## SETTLEMENT AGREEMENT
## BETWEEN HATCO, DEBTORS, NJDEP, WESTON, AND ACE

This Settlement Agreement is entered into by and among Hatco, Debtors, NJDEP, Weston, and ACE, all as defined herein and collectively referred to as the "Parties," this 8th day of April 2005.

WHEREAS, Hatco Corporation ("Hatco") is the current owner and operator of the Hatco Facility (as defined herein) that was formerly owned and operated by W. R. Grace & Co.–Conn. ("Grace") (together with W. R. Grace & Co. and Remedium Group, Inc., a subsidiary of W. R. Grace & Co., referred to herein as the "Debtors");

WHEREAS, NJDEP issued a Directive and Notice to Insurers to Hatco and Grace, dated July 22, 1992, asserting that those parties discharged hazardous substances at and from the Hatco Facility and, therefore, are liable pursuant to the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 et seq., and demanding that Hatco and Grace conduct a remediation to address hazardous substances at and from the Hatco Facility (the "Directive");

WHEREAS, Hatco entered into an Administrative Consent Order with NJDEP, effective September 9, 1992 (the "Hatco ACO");

WHEREAS, the environmental conditions at, or emanating from, the Hatco Facility may give rise to additional liabilities of Debtors and Hatco;

WHEREAS, Hatco initiated litigation against Grace to determine their respective legal and equitable obligations with respect to costs, damages and liability arising out of environmental conditions at, or emanating from, the Hatco Facility;

WHEREAS, after extensive litigation in the federal and state courts, Grace and Hatco settled their litigation in a settlement agreement dated July 1, 1996 (the "1996 Settlement Agreement") that, among other things, provided for Grace and Hatco to remediate the Site, as defined herein, cooperatively and to participate jointly in the resolution of future costs and expenses in connection with such remediation in accordance with the terms of the 1996 Settlement Agreement;

WHEREAS, Grace and Hatco assert that they have worked cooperatively to address contamination at the Site since entering into the 1996 Settlement Agreement;

WHEREAS, on April 2, 2001, the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, as defined hereinafter, in the Bankruptcy Court, as defined hereinafter; the Chapter 11 cases have been consolidated for administrative purposes only under Case No. 01-1139; and pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the

Debtors continue to operate their businesses and manage their properties as debtors in possession;

WHEREAS, on or about March 28, 2003, Hatco filed a Proof of Claim numbered 9569 for $34 million against Grace relating to the obligations and liabilities of Grace for environmental conditions at the Site;

WHEREAS, when filing the Hatco Claim, Hatco expressly reserved all rights, whether statutory, regulatory, arising by common law, equity or otherwise, against Grace, its estate, and third parties, none of which were waived or relinquished by the filing of the Hatco Claim;

WHEREAS, NJDEP has been advised that, in the absence of this Settlement Agreement, the Debtors would have objected to certain allegations in the Hatco Claim, and Hatco would have defended against the Debtors' objections;

WHEREAS, the Debtors, NJDEP and Hatco seek to avoid litigation concerning existing or potential claims, rights, and causes of action arising from environmental conditions at the Site;

WHEREAS, the Debtors seek to obtain protection through the consensual and voluntary resolution of their responsibilities for the Site as set forth herein and in the documents executed in connection herewith, from and against all claims, rights, causes of action, responsibilities and obligations that now exist or have been or may in the future be asserted by NJDEP and Hatco, or arise relating to environmental conditions at the Site resulting from discharges at or emanating or emanated from the Hatco Facility, as well as from and against all claims, rights, causes of action, responsibilities and obligations to NJDEP and Hatco arising under the 1996 Settlement Agreement;

WHEREAS, Debtors, Hatco and Weston Solutions, Inc. ("Weston") have executed a Remediation Agreement (the "Remediation Agreement") (an executed copy of which is attached hereto and incorporated herein as Exhibit "A"), whereby Weston will accept certain responsibilities as described in the Remediation Agreement;

WHEREAS, Debtors, Hatco and Weston have negotiated a Remediation Expense Containment and Premises Pollution Liability Insurance Policy (the "Policy") with ACE American Insurance Company ("ACE") (a copy of which is attached hereto and incorporated herein as Exhibit "B"), which, subject to the satisfaction of the conditions herein, will be issued by ACE;

WHEREAS, Weston, ACE and NJDEP will enter into a new Administrative Consent Order (the "Weston Administrative Consent Order") (a copy of which, already executed by Weston and ACE, is attached hereto and incorporated herein as Exhibit "C" and which will be executed by NJDEP as provided herein);

WHEREAS, Grace, Hatco, and Weston have already entered into a settlement agreement with NJDEP's Office of Natural Resources Restoration dated April 7, 2005 (the "NRD Settlement Agreement"); and

WHEREAS, the Parties believe that the settlement of matters governed by this Settlement Agreement is in the public interest and is an appropriate means of resolving these matters to address environmental concerns and in an attempt to avoid the costs and uncertainties of litigation involved.

NOW, THEREFORE, in consideration of the mutual promises contained herein, and for other good and valuable consideration, receipt of which is hereby acknowledged, and intending to be legally bound:

IT IS HEREBY STIPULATED and agreed to by and among the Parties, subject to the approval by the Bankruptcy Court, as follows:

## DEFINITIONS

1.      In this Settlement Agreement, the following terms shall have the following meanings:

A.      "1996 Settlement Agreement" shall have the meaning given thereto in the recitals.

B.      "ACE" shall have the meaning given thereto in the recitals.

C.      "Applicable Law" shall mean any federal, state or local statute, law, ordinance, regulation, directive, order, judicial decision or other enforceable requirement of any Governmental Authority, now in effect or enacted in the future, pertaining to the Investigation and Remediation or protection of human health and/or the environment. Such Applicable Law shall include, but shall not be limited to: the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 *et seq.*, the Solid Waste Management Act, N.J.S.A. 13:1E-1 *et seq.*, the Water Pollution Control Act, N.J.S.A. 58:10A-1 *et seq.* and the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 *et seq.*, the Solid Waste Disposal Act and the Resource Conservation and Recovery Act ("SWDA" and "RCRA"), 42 U.S.C. §§6901 *et seq.*, the Clean Air Act, 42 U.S.C. §§ 7401 *et seq.*, the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*, and the Toxic Substances Control Act, 15 U.S.C. §§ 2601 *et seq.*

D.      "Bankruptcy Case" shall mean In re W.R. Grace & Co., et al., Case No. 01-1139 (Jointly Administered).

E.      "Bankruptcy Code" shall mean Title 11 of the United States Code as now in effect or hereafter amended and the Federal Rules of Bankruptcy Procedure.

F.      "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Delaware.

G.      "Claims" shall have the meaning provided in Section 101(5) of the Bankruptcy Code.

H.    "Contamination" or "Contaminant" shall mean any discharged hazardous substance as defined pursuant to N.J.S.A. 58:10-23.11b, hazardous waste as defined pursuant to N.J.S.A.13:1E-38, or pollutant as defined pursuant to N.J.S.A. 58:10A-3; .

I.    "Contract Price" shall mean the amount to be paid by Debtors and Hatco pursuant to the Remediation Agreement.

J.    "Debtors" shall have the meaning given thereto in the recitals.

K.    "Directive" shall have the meaning given thereto in the recitals.

L.    "EPA" shall mean the United States Environmental Protection Agency.

M.    "Executed Documents" shall mean this Settlement Agreement and the Weston Administrative Consent Order.

N.    "Final Effective Date" shall mean the point in time when the following have all been accomplished: (1) the Bankruptcy Court issues an Order approving this Settlement Agreement and the Remediation Agreement; (2) Debtors and Hatco have paid the Contract Price; (3) ACE has issued the Policy; (4) NJDEP has executed the Weston Administrative Consent Order; and (5) NJDEP has approved ACE's providing, on behalf of Weston, a self-guarantee as the initial remediation funding source the Policy and ACE's self-guarantee application.

O.    "Final Order" shall mean an order of the Bankruptcy Court as to which the time to appeal, petition for *certiorari*, or move for reargument or rehearing has expired, and to which no appeal, petition for *certiorari*, or proceedings for reargument or rehearing shall then be pending, or as to which any right to appeal, petition for *certiorari*, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtors, or, in the event an appeal, writ of *certiorari*, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari*, reargument or rehearing shall have been denied, and the time to take any further appeal, petition for *certiorari* or move for reargument or rehearing shall have expired.

P.    "Governmental Authority" shall mean any federal, state or local governmental regulatory or administrative agency, commission, department, board, or other governmental subdivision, court, tribunal, arbitral body or other governmental authority or other subdivision, department or branch of any of the foregoing.

Q.    "Grace" shall have the meaning given thereto in the recitals.

R.    "Hatco" shall have the meaning given thereto in the recitals.

S.    "Hatco ACO" shall have the meaning given thereto in the recitals.

T.    "Hatco Claim" shall mean Proof of Claim number 9569 filed by Hatco on or about March 28, 2003 in the Bankruptcy Case, including all riders and exhibits thereto.

U.     "Hatco Facility" shall mean all property (real and otherwise) located at 1020 King Georges Post Road, Fords, New Jersey (designated as Blocks 60 and 67, Lots 100A and 1B1 on the Woodbridge Township municipal tax maps, located between Industrial Avenue and King Georges Post Road).

V.     "Investigation and Remediation" shall mean all activities necessary to investigate and remediate Pre-Existing Pollution Conditions at, under, or migrated or migrating from the Hatco Facility to comply with Applicable Law and the requirements of Governmental Authorities, including the RAWP, the Weston Administrative Consent Order, the risk-based PCB remedy approval letter issued by the EPA, and as further defined in the Remediation Agreement, with the understanding that the term remediation as used in the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 *et seq.*, includes investigation.

W.     "Investigation and Remediation Liability" shall mean the obligation of Debtors and Hatco to perform Investigation and Remediation, with the understanding that the term remediation as used in the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 *et seq.*, includes investigation.

X.     "NJDEP" shall mean the New Jersey Department of Environmental Protection or any legal successor thereto.

Y.     "Order" means an order of the Bankruptcy Court that has been duly entered in the Bankruptcy Case and that has not been stayed, reversed, or vacated by a court of competent jurisdiction, without regard to whether it is a Final Order.

Z.     "Parties" shall have the meaning given thereto in the recitals.

AA.    "Plan of Reorganization" or "Plan" shall mean any Chapter 11 plan of reorganization that is confirmed and becomes effective in the Bankruptcy Case.

BB.    "Policy" shall have the meaning given thereto in the recitals.

CC.    "Policy Issuance Conditions" shall have the meaning given thereto in Paragraph 26(e) herein.

DD.    "Pollutant" for purposes of this document shall mean any substance, material or waste which is defined as or contains Contamination, hazardous waste, hazardous material, hazardous substance, extremely hazardous waste, restricted hazardous waste, pollutant, solid waste, fill, toxic waste, or toxic substance under any Applicable Law. The term Pollutant shall include, but not be limited to, petroleum; petroleum products; asbestos-containing material except where installed or applied in, on or to any building or any structure; radioactive materials; polychlorinated biphenyls; and all substances defined as Hazardous Substances, Oils, Pollutants or Contaminants in the National Oil and Hazardous Substances Pollution Contingency Plan, 40 C.F.R. § 300.5, and comparable state regulations.

**EE.** "Pollution Conditions" shall mean the discharge, dispersal, release, presence or escape of any Pollutant, directly or indirectly, into or upon land, the atmosphere or any watercourse or body of water, including groundwater at or emanating from the Site.

**FF.** "Pollution Liability" shall mean the obligation of Debtors and Hatco for risks resulting from any Pre-existing Pollution Condition at, under, or migrated or migrating from the Site, including, but not limited to, third-party bodily injury, property damage and natural resources damage, but excluding liability to employees of Debtors and/or Hatco, or members of the employees' families, arising out of workplace exposure to Pre-existing Pollution Conditions except to the extent caused by or arising from the acts or omissions of Weston.

**GG.** "Pre-existing Pollution Conditions" shall mean Pollution Conditions at the Site caused by operations or conditions existing prior to November 4, 2002, including without limitation, the effects of continuing discharges of Pollutants from discharges commencing prior to November 4, 2002.

**HH.** "Premium" shall mean the premium for the Policy.

**II.** "RAWP" shall mean the Remedial Action Work Plan as approved by NJDEP on February 17, 2005, incorporating a certain "Draft Remedial Action Work Plan" for the Site dated March 29, 2001, prepared by URS, as amended by addendum letters dated March 27, 2002, and November 15, 2004, and any subsequent modifications to be approved in writing by NJDEP, including any modification required to incorporate the requirements of the risk-based PCB remedy approval letter issued by the United States Environmental Protection Agency on March 30, 2005.

**JJ.** "Remediation Agreement" shall have the meaning given thereto in the recitals.

**KK.** "Settlement Agreement" shall have the meaning given thereto in the recitals.

**LL.** "Site" shall mean the Hatco Facility and all property (real or otherwise) to which Pollutants therefrom have emanated, are emanating, or will emanate.

**MM.** "Weston" shall have the meaning given thereto in the recitals.

**NN.** "Weston Administrative Consent Order" shall have the meaning given thereto in the recitals.

## PARTIES BOUND; SUCCESSION AND ASSIGNMENT

2.    This Settlement Agreement applies to, is binding upon, and shall inure to the benefit of NJDEP, Hatco, Hatco's legal successors and assigns (which shall include but not be

limited to purchasers of the Hatco Facility), Weston, Weston's legal successors and assigns, ACE, ACE's legal successors and assigns, the Debtors, the Debtors' bankruptcy estate, their creditors and parties in interest in the Bankruptcy Case, the Debtors' legal successors and assigns, and any trustee, examiner or receiver appointed in the Bankruptcy Case. Further, the access described in Paragraph 24 of this Settlement Agreement is intended as a covenant running with the land. NJDEP is entering this Settlement Agreement pursuant to its authority granted under N.J.S.A. 13:1D-9.

## EFFECTIVE DATE

3.      Except for Paragraphs 26 through 29 of this Settlement Agreement, which shall become effective upon execution of this Settlement Agreement by the Parties, and subject to Paragraph 27 hereof, this Settlement Agreement shall become effective as of the date that this Settlement Agreement and the Remediation Agreement are approved by Order of the Bankruptcy Court. The Parties note that the Final Effective Date is defined in Paragraph 1.N of this Settlement Agreement.

## SETTLEMENT OF CLAIMS

4.      In part to participate in the remediation of the Site, the Debtors consent to pay the Debtors' share of the Contract Price in settlement and satisfaction of any and all claims, rights and causes of action that NJDEP may have against Debtors, whether legal, equitable, civil or administrative, for all past, present and future claims with respect to Contamination at the Site, whether known or unknown, for which such a claim could be asserted against the Debtors by NJDEP. The Debtors consent to pay the Debtors' share of the Contract Price in settlement and satisfaction of any and all claims, rights and causes of action, including the Hatco Claim, that Hatco may have against Debtors, whether legal, equitable, or civil, for all past, present and future claims with respect to Investigation and Remediation Liability and Pollution Liability, and any and all liability arising under the 1996 Settlement Agreement, whether known or unknown, for which such a claim could be asserted against the Debtors by Hatco.

5.      In part to participate in the remediation of the Site, Hatco consents to pay Hatco's share of the Contract Price in settlement and satisfaction of any and all claims, rights and causes of action NJDEP may have against Hatco, whether legal, equitable, civil or administrative, for all past, present and future claims rights, and causes of action with respect to Contamination at the Site, whether known or unknown, for which such a claim could be asserted against Hatco by NJDEP. Hatco consents to pay Hatco's share of the Contract Price in settlement and satisfaction of any and all claims, rights and causes of action Debtors may have against Hatco, whether legal, equitable, or civil, for all past, present and future claims with respect to Investigation and Remediation Liability and Pollution Liability, and any and all liability arising under the 1996 Settlement Agreement, whether known or unknown, for which such a claim could be asserted against Hatco by Debtors.

6.      The terms of this Settlement Agreement shall satisfy in full the Hatco Claim and any Claims, rights, and causes of action Hatco may have with respect to the Debtors' liabilities and obligations for Investigation and Remediation under Applicable Law. Upon the Final Effective Date, Hatco shall have no further right to a distribution from the Debtors in the

Bankruptcy Case, or otherwise, with respect to the Debtors' liabilities and obligations for the Site under Applicable Law or the 1996 Settlement Agreement other than as set forth in this Settlement Agreement. The terms of this Settlement Agreement shall satisfy in full any Claims, rights, and causes of action NJDEP may have with respect to the Debtors' responsibilities and obligations for Contamination at or emanating or emanated from the Site. NJDEP, in reliance upon the Weston ACO, agrees not to seek distribution from Debtors.

## COVENANTS NOT TO SUE

7.    Hatco releases and discharges Debtors and all affiliated, related, parent and subsidiary entities, all present and former officers, employees, agents, and successors and assigns of and from any and all actions, causes of actions, suits, claims, complaints, liabilities, obligations, promises, agreements, controversies, damages, judgments, remedies, rights, demands, costs, losses, debts and expenses of any nature whatsoever, known or unknown, whether in law or in equity, which Hatco had, now has, or in the future may have against Debtors arising from the 1996 Settlement Agreement or related to the Site, including natural resource damages, resulting from Pollutants at or emanating or emanated from the Hatco Facility including, but not limited to, those set forth in the Hatco Claim and, further, Hatco covenants not to file a civil suit or take other action against Debtors, their employees or representatives, with respect to the Site. This release and covenant not to sue shall take effect upon the Final Effective Date.

8.    Debtors release and discharge Hatco and all affiliated, related, parent and subsidiary entities, all present and former officers, employees, agents, and successors and assigns of and from any and all actions, causes of actions, suits, claims, complaints, liabilities, obligations, promises, agreements, controversies, damages, judgments, remedies, rights, demands, costs, losses, debts and expenses of any nature whatsoever, known or unknown, whether in law or in equity, which Debtors had, now have, or in the future may have against Hatco arising from the 1996 Settlement Agreement or related to the Site, including natural resource damages, resulting from Pollutants at or emanating or emanated from the Hatco Facility commencing prior to November 4, 2002. Debtors covenant not to file a civil suit or to take other action against Hatco, its employees or representatives, with respect to the Site. This release and covenant not to sue shall take effect upon the Final Effective Date.

9.    In reliance upon Weston's agreement to conduct the Investigation and Remediation of the Site, NJDEP covenants not to file a civil suit or take any administrative or other action related to the Site for past environmental contamination resulting from Contamination at the Site against Debtors and all present and former officers, employees, agents, and successors and assigns, including but not limited to any action to enforce the Directive. This covenant not to sue shall take effect upon the Final Effective Date.

10.    Debtors and all of their present and former officers, employees, agents, and successors and assigns covenant not to file a civil suit or take other action against NJDEP, its employees or representatives, related to the Site for past environmental contamination resulting from Contamination at the Site, including but not limited to, any direct or indirect claim for reimbursement from the Spill Fund pursuant to N.J.S.A. 58:10-23.11 *et seq.*, or any other provision of law.

11.    NJDEP promises that so long as one of the conditions at the end of this paragraph are met, in its enforcement discretion, it will seek performance of the Investigation and Remediation by Weston or a replacement contractor, and will not file a civil suit or take any administrative or other action related to the Site for past environmental contamination resulting from Contamination at the Site commencing prior to November 4, 2002 against Hatco and all their present and former officers, employees, agents, and successors and assigns including but not limited to any action to enforce the Directive or the Hatco ACO. NJDEP's promise to do so shall take effect upon the Final Effective Date, and shall be effective for so long as any one of the following conditions are met: (a) the Policy remains in effect and its limits are not exhausted; (b) Weston or a replacement contractor are performing Investigation and Remediation of the Site, or (c) a No Further Action letter is issued, regardless of (a) or (b) above.

12.    Provided the promise from NJDEP granted in Paragraph 11 remains in effect, Hatco promises not to file a civil suit or take other action against NJDEP, its employees or representatives, related to the Site for past environmental contamination resulting from Contamination at the Site commencing before November 4, 2002, including, but not limited to, any direct or indirect claim for reimbursement from the Spill Fund pursuant to N.J.S.A. 58:10-23.11 *et seq.*, or any other provision of law.

13.    As of the Final Effective Date, this Settlement Agreement shall supercede the 1996 Settlement Agreement; the 1996 Settlement Agreement shall be null and void; and the parties thereto shall no longer be bound thereunder.

14.    This Settlement Agreement in no way impairs the scope and effect of the Debtors' discharge under Section 1141 of the Bankruptcy Code as to any third parties or as to any Claims that are not addressed by this Settlement Agreement.

15.    As described in the Remediation Agreement, Weston shall determine whether or not Contamination at the Site is a Pre-Existing Pollution Condition, and, upon written request by NJDEP or any other party, Weston will demonstrate whether a discharge occurred before, on or after November 4, 2002.

16.    Notwithstanding the foregoing, the covenants not to sue contained in this Settlement Agreement shall not apply to actions to enforce the terms of this Settlement Agreement.

### RESERVATION OF RIGHTS

17.    Nothing in this Settlement Agreement shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Settlement Agreement. NJDEP, Hatco, Debtors, Weston and ACE expressly reserve all claims, rights, demands, and causes of action, either judicial or administrative, past, present or future, in law or in equity, which NJDEP, Hatco, Debtors, Weston or ACE may have against all other persons, firms, corporations, or entities for any matter arising at or relating to the Site.

18.    NJDEP, Hatco and Debtors reserve their respective rights, if any, and this Settlement Agreement is without prejudice to matters arising at or from any site other than this

9

Site. NJDEP and Hatco reserve their respective rights, if any, and this Settlement Agreement is without prejudice to matters arising from any discharge at the Hatco Facility commencing on or after November 4, 2002.

19.    Nothing in this Settlement Agreement shall be construed to limit NJDEP's rights to collect from Weston any and all unpaid oversight costs, or in the case of Hatco, any and all unpaid oversight costs incurred by NJDEP prior to the Final Effective Date. NJDEP may seek recourse against any remediation funding source in accordance with N.J.S.A. 58:10B-3 and N.J.A.C. 7:26C, Subchapter 7, as in effect on the date first set forth above, provided, however, that this sentence in no way modifies or expands the terms and conditions of the Policy, the Weston Administrative Consent Order or ACE's rights and obligations thereunder or hereunder.

20.    With the sole exceptions of ACE's duty to issue the Policy within five business days of its receipt of the Premium pursuant to Paragraph 26 (which duty is expressly conditioned on the timely satisfaction of the Policy Issuance Conditions) and its duty to submit annual self-guarantee applications pursuant to Paragraph 26, notwithstanding anything else to the contrary in the Executed Documents, ACE is not assuming any liability, obligation or duty, express or implied, outside the terms and limits of the Policy, and nothing in the Executed Documents shall be deemed to modify in any respect the terms, conditions, duration or limits of the Policy. Payment of the Policy's aggregate limit of liability will end ACE's obligation under the Policy and the Executed Documents. It is acknowledged (i) that ACE is not and will not be deemed, by virtue of the Policy, the Executed Documents or its issuance or execution thereof, to be an owner, operator, arranger, responsible party or contractor with respect to the Site under any Applicable Law; and (ii) if there are any inconsistencies between any Executed Document or any attachments or documents referenced therein (other than the Policy), on the one hand, and the Policy, on the other hand, the terms, conditions, duration and limits of the Policy will control the rights, duties, liabilities and obligations of ACE with respect to the Site, Weston, Hatco and Debtors, and NJDEP.

21.    Notwithstanding anything contrary in the Executed Documents, Weston is not assuming any liability, obligation, or duty, express or implied, outside the limits of the Remediation Agreement, and nothing in the Executed Documents shall be deemed to modify in any respect the terms, conditions, duration, or limits of the Remediation Agreement. It is acknowledged (i) that Weston is not and will not be deemed, by virtue of its remediation activities, to be an owner or operator with respect to the Site; and (ii) if there are any inconsistencies between the Executed Documents and any attachments or documents referenced therein (other than the Remediation Agreement), on the one hand, and the Remediation Agreement, on the other hand, the terms, conditions, duration and limits of the Remediation Agreement will control the rights, duties, liabilities and obligations of Weston with respect to the Site, Hatco, and the Debtors, and NJDEP.

22.    Pursuant to N.J.A.C. 7:26C-7.7, NJDEP has agreed to accept ACE's providing, on behalf of Weston, a self-guarantee as the initial remediation funding source to be posted under the Weston Administrative Consent Order. NJDEP has agreed that ACE may, through submission of an annual self-guarantee application pursuant to Paragraph 26 of this Settlement Agreement, continue to serve as the self guarantor on behalf of Weston under the Weston

Administrative Consent Order, provided ACE satisfies the financial criteria set forth at N.J.A.C. 7:26C-7.7, until the Policy is cancelled or expires or its limits are exhausted.

23.     Notwithstanding anything to the contrary in the Executed Documents, (i) Weston shall provide a new, additional or supplemental remediation funding source, as the case may be, if the remaining limits of the Policy are not equal to or greater than the estimated cost of implementing the remediation, including estimated cost of maintaining engineering and institutional controls, as applicable, or if the Policy is cancelled or expires or its limits are exhausted, or if ACE no longer satisfies the financial criteria set forth at N.J.A.C. 7:26C-7.7 to provide, on behalf of Weston, the self-guarantee; and (ii) under no circumstances shall ACE be required to provide any new, additional or supplemental remediation funding source.

24.     Hatco hereby grants access to Weston and NJDEP to the Hatco Facility for the purposes of performing their obligations and exercising their rights pursuant to the Remediation Agreement and the Weston Administrative Consent Order. Weston's access shall be as set forth and limited in the Remediation Agreement. This access agreement shall apply as set forth in Paragraph 2 of this Settlement Agreement. Hatco shall include in any lease of all or a portion of the Hatco Facility a requirement that such lessee provide similar access to NJDEP and Weston as set forth above.

25.     By entering into this agreement, NJDEP is not intending to create any binding precedent whatsoever.

## IMPLEMENTATION

26.     The Parties to this Settlement Agreement will perform the following actions:

(a) Within five (5) days after this Settlement Agreement is fully executed by the Parties, and annually thereafter until the Policy is cancelled or expires, ACE shall submit to NJDEP a completed self-guarantee application in accordance with N.J.A.C. 7:26C- 7.7; provided, however, that: (i) ACE may include such additions to and notations on any application form it submits as ACE deems in its sole discretion to be necessary or appropriate to define ACE's limited role, as described in this Settlement Agreement, the Policy or the Executed Documents; (ii) in the case of annual submissions required under this Paragraph, Weston provides ACE written notice of the requirement contained in this Paragraph at least 30 days and not more than 60 days in advance of the date on which such filing is required; and (iii) ACE's obligations under the Executed Documents shall at no time require that ACE or any of its affiliates agree to assume, undertake, or otherwise subject itself to, any liability, potential liability, obligation, or potential obligation beyond or in addition to the terms, conditions and limits of liability contained elsewhere in the Policy (including but not limited to the posting of collateral or other security), or incur any out of pocket costs or expenses, other than nominal costs required for execution and delivery of the required submittals.

(b) As soon as practicable after this Settlement Agreement is fully executed by the Parties, the Debtors shall seek an Order approving this Settlement Agreement and the Remediation Agreement, under Bankruptcy Rule 9019.

(c) NJDEP agrees that within fourteen (14) calendar days of its receipt of the Order approving this Settlement Agreement and the Remediation Agreement, NJDEP will execute the Weston Administrative Consent Order and approve the initial remediation funding source.

(d) Subsequent to the issuance of the Order approving this Settlement Agreement and the Remediation Agreement and subsequent to NJDEP executing the Weston Administrative Consent Order and approving the initial remediation funding source, Debtors and Hatco will pay the Contract Price as described in the Remediation Agreement and Weston will pay ACE the Premium. The amount of the Premium and the initial notional experience credit figure under the Policy were specified in writing by ACE on April 4, 2005. If the Policy Issuance Conditions are not satisfied by May 9, 2005, the amount of the Premium and the initial notional experience credit figure will be reset by ACE to amounts determined by ACE on the date Weston pays the Premium based on interest rate market conditions on such date and premium tax adjustments.

(e) Provided that by June 24, 2005 (or a later date(s) agreed to in writing by all the Parties) (i) an Order approving this Settlement Agreement and the Remediation Agreement is issued (and has not been appealed, vacated or reversed within five (5) business days of ACE's receipt of the Premium) and (ii) ACE receives the Premium by wire transfer to an account designated in writing by it (collectively, the "Policy Issuance Conditions"), the satisfaction of both are a condition precedent to ACE's obligation to issue the Policy, ACE will issue the final Policy within five (5) business days of its receipt of the Premium.

(f) Within five (5) business days of its receipt of the issued Policy, Weston will provide a true and correct copy of the Policy to NJDEP to be attached as Exhibit "A" to the Weston Administrative Consent Order.

(g) Within thirty (30) calendar days of the Final Effective Date, Hatco will record a recordable copy of this Agreement with the County Clerk, Middlesex County, State of New Jersey.

(h) Promptly after Weston's receipt of a letter from EPA approving the proposed risk based PCB disposal remedy for the Site, Weston shall provide EPA any and all notifications and take any and all other actions in order to make the EPA approval effective.

27.    If by June 24, 2005 (or a later date(s) agreed to in writing by all the Parties) the Policy Issuance Conditions are not satisfied: (a) this Settlement Agreement, the Remediation Agreement, the Policy, and the Weston Administrative Consent Order shall be null and void and the Parties shall not be bound thereunder or hereunder, or under any document executed in connection therewith or herewith; (b) the Parties shall have no liability or obligation to one another arising out of or in connection with this Settlement Agreement, the Remediation Agreement, the Policy, or the Weston Administrative Consent Order or under any document executed in connection therewith; (c) the 1996 Settlement Agreement and the Hatco Claim shall

remain in full force and effect; (d) neither this Settlement Agreement, the Remediation Agreement, the Policy, the Weston Administrative Consent Order nor any document executed in connection herewith or therewith shall have any residual or probative effect or value, and it shall be as if they had never been executed; (e) neither this Settlement Agreement, the Remediation Agreement, the Policy, the Weston Administrative Consent Order, nor any statements made in connection with settlement discussions and any documents prepared in connection herewith or therewith, may be used as evidence in any litigation between or among the Parties; and (f) the Hatco ACO and the Directive will not be affected.    In the event an Order approving this Settlement Agreement and the Remediation Agreement is stayed prior to any of the required dates for action set forth in Paragraph 26, the Parties shall be put into the position as if the Order had not been issued, and, further, Debtors shall seek to dissolve the stay.

## AMENDMENTS/INTEGRATION AND COUNTERPARTS

28.    This  Settlement  Agreement,  the  Remediation  Agreement,  the  Weston Administrative Consent Order, the Policy, and the NRD Settlement Agreement shall constitute the sole and complete agreement of the Parties hereto with respect to the matters addressed herein and therein. This Settlement Agreement may not be amended except by a writing signed by the Parties.

29.    This Settlement Agreement may be executed in counterparts each of which shall constitute an original and all of which when taken together shall constitute one and the same agreement.

## RETENTION OF JURISDICTION

30.    Except with respect to the Weston Administrative Consent Order which will be addressed by NJDEP as NJDEP sees fit in accordance with applicable state statutes and regulations, and the interpretation and enforcement of the Policy, from and after the entry of an Order approving this Settlement Agreement, the Bankruptcy Court shall retain jurisdiction over the remainder of the subject matter of this  Settlement Agreement and the Parties hereto for the duration of the performance of the terms and provisions of this  Settlement Agreement for the purpose of enabling any of the Parties to apply to the Bankruptcy Court at any time for such further order, direction and relief as may be necessary consistent with this Settlement Agreement; provided, however, that the retention of jurisdiction established herein shall not extend to controversies that are solely between or among Parties other than any of the Debtors.

## NOTICES AND SUBMISSIONS

31.    Whenever, under the terms of this Settlement Agreement, any document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below via U.S. first class mail or overnight courier, unless those individuals or their successors give notice of a change of address to the other Parties in writing. All notices and submissions shall be considered effective upon receipt, unless otherwise provided.

As to NJDEP:

> Joseph J. Seebode, Assistant Commissioner
> Site Remediation and Waste Management
> New Jersey Department of Environmental Protection
> 401 East State Street, 6th Floor
> Trenton, NJ 08625-0401

> With a copy to:
> Section Chief
> Cost Recovery & Natural Resource Damages Section
> Richard J. Hughes Justice Complex
> 25 Market Street
> P.O. Box 093
> Trenton, NJ 08625-0093

As to Hatco Corporation:

> David J. Mason, Vice President, Regulatory Affairs
> Hatco Corporation
> 1020 King George Post Road,
> Fords, Middlesex County, NJ

> With a copy to:
> Anthony Reitano, Esq.
> Herold and Haines, P.A.
> 25 Independence Boulevard
> Warren, New Jersey 07059

As to the Debtors:

W. R. Grace & Co.
> Corporate Secretary
> W. R. Grace & Co.
> 7500 Grace Drive
> Columbia, MD 21044

Remedium Group, Inc.
> Robert J. Medler, Director
> Remedium Group, Inc.
> 6401 Poplar Avenue Suite 301
> Memphis TN 38119-4840

W. R. Grace & Co.–Conn.
    Corporate Secretary
    W. R. Grace & Co.–Conn.
    7500 Grace Drive
    Columbia, MD 21044

As to Weston:
    Daniel Kopcow
    Weston Solutions, Inc.
    205 Campus Drive
    Edison, NJ 08837

As to ACE:
    Suresh Krishnan
    Senior Vice President and General Counsel
    ACE Financial Solutions, Inc.
    1133 Avenue of the Americas
    New York, NY 10036

## SETTLEMENT AGREEMENT
## BETWEEN HATCO, DEBTORS, NJDEP, WESTON, AND ACE

THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT

FOR THE STATE OF NEW JERSEY:

By: _____

       Joseph J Seebode
       Assistant Commissioner, Site Remediation and Waste Management
       New Jersey Department of Environmental Protection

STATE OF NEW JERSEY    )
                      : SS.
COUNTY OF           )

    I CERTIFY that on April 7 , 2005, JOSEPH J. SEEBODE, personally appeared before me, and stated under oath, to my satisfaction, that this person (or if more than one, each person) is named in and personally executed the attached instrument as his or her own act.

_____
Notary Public

VANNESSA CRYSTELL QUANT
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES FEB. 26, 2008

## SETTLEMENT AGREEMENT
## BETWEEN HATCO, DEBTORS, NJDEP, WESTON, AND ACE

THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT

FOR WESTON SOLUTIONS, INC:

By: _____

      Patrick G. McCann
      President and CEO


STATE OF ~~NEW JERSEY~~ Pennsylvania )

                         : SS.

COUNTY OF Chester )

    I CERTIFY that on April 7___, 2005, PATRICK  G.  McCANN, personally

appeared  before me, and stated under oath, to my satisfaction, that this person (or if more than

one, each person) is named in and personally executed the attached instrument as his or her own

act.


                             Michelle Walker _____
                             Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Michelle Walker, Notary Public
West Whiteland Twp., Chester County
My Commission Expires Apr. 17, 2008
Member, Pennsylvania Association Of Notaries

## SETTLEMENT AGREEMENT
### BETWEEN HATCO, DEBTORS, NJDEP, WESTON, AND ACE

THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT

FOR ACE AMERICAN INSURANCE COMPANY:

By: _____

Matthew G. Merna
Attorney-in-Fact

STATE OF ~~NEW JERSEY~~ *NEW YORK*   )
                                                                   : SS.
COUNTY OF *New York*   )

    I CERTIFY that on *April 7*, 2005, MATTHEW G. MERNA, personally

appeared before me, and stated under oath, to my satisfaction, that this person (or if more than

one, each person) is named in and personally executed the attached instrument as his or her own

act.

_____
Notary Public

SURESH KRISHNAN
Notary Public, State of New York
No. 02KR5089157
Qualified in New York County
Commission Expires Dec. 8, 2005

18

## SETTLEMENT AGREEMENT
## BETWEEN HATCO, DEBTORS, NJDEP, WESTON, AND ACE

THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT

FOR HATCO CORPORATION:

By: _____
    William J. Buccine
    Senior V.P. and CFO


STATE OF NEW JERSEY  )
                  : SS.
COUNTY OF        )

    I CERTIFY that on April 7, 2005, WILLIAM J. BUCCINE, personally appeared before me, and stated under oath, to my satisfaction, that this person (or if more than one, each person) is named in and personally executed the attached instrument as his or her own act.

_____
Notary Public

                DIANA E. DeBRIZZI
          NOTARY PUBLIC OF NEW JERSEY
       MY COMMISSION EXPIRES AUGUST 19, 2007

## SETTLEMENT AGREEMENT
### BETWEEN HATCO, DEBTORS, NJDEP, WESTON, AND ACE

THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT

FOR THE DEBTORS:

W.R. GRACE & CO.

By: _____
William M. Corcoran
Vice President, Public & Regulatory Affairs


STATE OF ~~NEW JERSEY~~ Maryland )
                                  : SS.
COUNTY OF Howard )

    I CERTIFY that on ___4/8/___, 2005, WILLIAM M. CORCORAN, personally

appeared before me, and stated under oath, to my satisfaction, that this person (or if more than

one, each person) is named in and personally executed the attached instrument as his or her own

act.

_____
Notary Public
My commission expires: 9/1/06



## SETTLEMENT AGREEMENT
### BETWEEN HATCO, DEBTORS, NJDEP, WESTON, AND ACE

THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT

FOR THE DEBTORS:

W.R. GRACE & CO.–CONN.

By: _____
    William M. Corcoran
    Vice President, Public & Regulatory Affairs

STATE OF ~~NEW JERSEY~~ MARYLAND )
                                  : SS.
COUNTY OF Howard                 )

I CERTIFY that on __4/8/__ , 2005, WILLIAM M. CORCORAN, personally

appeared before me, and stated under oath, to my satisfaction, that this person (or if more than

one, each person) is named in and personally executed the attached instrument as his or her own

act.

_____
Notary Public
my commission expires: 9/1/06



21

## SETTLEMENT AGREEMENT
## BETWEEN HATCO, DEBTORS, NJDEP, WESTON, AND ACE

THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT

FOR THE DEBTORS:

REMEDIUM GROUP, INC.

By: _Robert J Medler_

Robert J. Medler
Director

STATE OF ~~NEW JERSEY~~ Tennessee )
                              : SS.
COUNTY OF Shelby )

I CERTIFY that on __4|8__, 2005, ROBERT J. MEDLER, personally appeared

before me, and stated under oath, to my satisfaction, that this person (or if more than one, each

person) is named in and personally executed the attached instrument as his or her own act.

_Marclota G Harbe_
Notary Public