# EXHIBIT 1C

# ADMINISTRATIVE CONSENT ORDER



### State of New Jersey
Department of Environmental Protection

Richard J. Codey
*Acting Governor*

Bradley M. Campbell
Commissioner

| | |
|---|---|
| IN THE MATTER OF THE | : |
| | : |
| HATCO SITE | : |
| | : |
| AND | : |
| | : |
| WESTON SOLUTIONS, INC. AND | |
| ACE AMERICAN INSURANCE COMPANY: | |
| | : |

**ADMINISTRATIVE CONSENT**

**ORDER**

PROGRAM INTEREST NUMBER:  G000003943

This Administrative Consent Order is issued pursuant to the authority vested in the Commissioner of the New Jersey Department of Environmental Protection (hereinafter "the Department" or "DEP") by N.J.S.A. 13:1D-1 through -19, the Solid Waste Management Act, N.J.S.A. 13:1E-1 through - 91, the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 et seq., and the Water Pollution Control Act, N.J.S.A. 58:10A-1 et seq., and duly delegated to the Assistant Director, Division of Remediation Support, Oversight Resources Allocation Element, pursuant to N.J.S.A. 13:1B-4.

### FINDINGS

1. The Hatco site, located at 1020 King Georges Post Road, Fords, Woodbridge Township, Middlesex County, New Jersey, identified as Blocks 60 and 67, Lots 100A and 1B1 on the Tax Map of the Township of Woodbridge, (the "Site"), is the subject of the Administrative Consent Order.

2. The full names and mailing addresses of each party executing this Administrative Consent Order are as follows:

Weston Solutions, Inc. ("Weston")
1400 Weston Way
West Chester, Pennsylvania  19380

ACE American Insurance Company ("ACE")
1601 Chestnut Street
Philadelphia, Pennsylvania  19103

3. From 1959 until 1978, W.R. Grace & Co. – Conn. ("Grace") owned and operated an organic chemical manufacturing facility at the Site as the Hatco Chemical Division of Grace. In 1978, Hatco Corporation ("Hatco") purchased the facility and the Site from Grace. Hatco continues to own and operate the facility.

4. The operational, regulatory and enforcement history of the Site, as well as the results of remedial investigations performed by Hatco through 1992, are provided in a prior Administrative Consent Order between the Department and Hatco, dated September 9, 1992, which history is incorporated herein by reference.

5. Investigations of soils, groundwater, surface water and sediments have been conducted at the Site since 1992. These investigations have revealed the presence of polychlorinated biphenyls ("PCBs") and phthalates, as well as lesser contamination by other semi-volatile organic compounds, volatile organics compounds ("VOCs") and metals, in soils, sediments, groundwater and light nonaqueous phase liquids ("LNAPL").

6. A draft Remedial Action Work Plan was submitted to the Department in March 2001 to address the remediation of media contaminated with PCBs and phthalates, as well as other compounds at this Site. The Department provided comments on the draft Remedial Action Work Plan by letter dated September 28, 2001. Among these comments was the requirement that Grace and Hatco pursue the risk-based remedy approval process of the United States Environmental Protection Agency ("USEPA").

7. An Addendum Letter to the March 2001 Remedial Action Workplan was submitted to the Department on November 15, 2004 adopting a modified remedial approach. On February 17, 2005, the Department conditionally approved the Remedial Action Work Plan as modified by Addendum Letters dated March 27, 2002 and November 15, 2004 ("RA Work Plan"). The RA Work Plan incorporates the requirements of the USEPA approval of the risk-based remedy.

8. On April 2, 2001, Grace filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The bankruptcy remains pending before the Bankruptcy Court.

9. Grace and Hatco have entered an agreement with Weston, dated April 8, 2005, (the "Remediation Agreement"), Grace, Hatco, and Weston have already entered into a settlement agreement with the Department's Office of Natural Resources Restoration, dated April 7, 2005, (the "NRD Settlement Agreement"), and the Department, Grace, Hatco, ACE American Insurance Company ("ACE") and Weston have entered an agreement, dated April 8, 2005 (the "Settlement Agreement"), which is incorporated herein, whereby Weston will become responsible for environmental contamination resulting from discharges at or from the Site occurring prior to November 4, 2002 and will purchase a Remediation Expense Containment and Premises Pollution Liability Insurance Policy to be issued by ACE, attached hereto as Exhibit "A" (the "Policy").

10. By entering this Administrative Consent Order, neither Weston nor ACE admits to any fact, fault or liability under any statute or regulation concerning the condition of the Site

nor waives any rights or defenses with regard to the Site except as specifically provided in this Administrative Consent Order.

11. The scope of the investigation and remediation required by this Administrative Consent Order will include all contaminants at the above-referenced Site, and all contaminants which are emanating from or which have emanated from the Site.

## ORDER

I.    Remedial Action

12. Weston agrees to implement the approved Remedial Action Work Plan in accordance with the schedule to be submitted August 23, 2005.

13. Weston agrees to submit to the Department a Remedial Action Report (hereinafter "RA Report") in accordance with the Technical Requirements for Site Remediation, N.J.A.C. 7:26E, the RA Work Plan and the schedule submitted pursuant to Paragraph 12 herein.

14. If upon review of the RA Report the Department determines that additional remediation is required, Weston agrees to conduct additional remediation as directed by the Department and agrees to submit subsequent Remedial Investigation Reports and RA Reports, as applicable.

15. Within 60 calendar days after receipt of the Department's written comments on the RA Report, or longer as authorized by the Department, Weston agrees to modify the RA Report to conform to the Department's comments and agrees to submit the modified RA Report to the Department. The determination as to whether or not the modified RA Report, as resubmitted, conforms to the Technical Requirements for Site Remediation, N.J.A.C. 7:26E, and the Department's written comments and is otherwise acceptable to the Department shall be made solely by the Department in writing.

II.   Additional Remedial Investigation and Remedial Action

16. If at any time that this Administrative Consent Order is in effect the Department determines that the prevailing standards in N.J.A.C. 7:26E are not being achieved or that additional remediation is required to protect the public health and safety and the environment, Weston agrees to conduct such additional remediation as the Department directs.

III.  Progress Reports

17. Weston agrees to submit quarterly progress reports which detail the status of Weston's compliance with this Administrative Consent Order to the Department in accordance with N.J.A.C. 7:26E-6.6(b). Weston agrees to submit the first progress report on or before the last calendar day of the fourth calendar month following the Effective Date of this Administrative Consent Order. Weston agrees to submit a progress report thereafter on or before the last calendar day of the month following the next three calendar months

being reported. Weston may request that the Department allow progress reports be submitted semi-annually or annually.

IV.    Project Coordination

18. Weston agrees to submit to the Department all documents required by this Administrative Consent Order, including correspondence relating to force majeure issues, by delivery with an acknowledgement of receipt from the Department. The date that the Department executes the acknowledgement will be the date the Department uses to determine Weston's compliance with the requirements of this Administrative Consent Order and the applicability of penalties and any other remedies available to the Department.

19. Within seven (7) calendar days after the Effective Date of this Administrative Consent Order, Weston agrees to submit to the Department the name, title, address and telephone number of the individual who shall be Weston's technical contact for the Department for all matters concerning this Administrative Consent Order and Weston agrees that the person listed below is Weston's agent for the purpose of service for all matters concerning this Administrative Consent Order. In the event the Department determines that a meeting concerning the remediation of the Site is necessary, the Department will provide notification to this agent of the date, time and place of such meeting. Weston agrees to ensure that the agent (or his designee or replacement) is available for and participates in such meeting.

> Daniel Kopcow
> Weston Solutions, Inc.
> 205 Campus Drive
> Edison, NJ 08837
> (732) 417-5834

20. Within seven (7) days after the Effective Date of this Administrative Consent Order the Department will identify the individual who will be the Department's contact for all matters concerning this Administrative Consent Order. Unless the Department otherwise directs in writing, Weston agrees to submit all payments and two (2) copies of all documents required by this Administrative Consent Order to the Department's contact.

21. Weston agrees to notify, both verbally and in writing, the Department's contact person identified pursuant to the preceding paragraph at least fourteen (14) calendar days prior to the initiation of any field activities at the Site which are related to remediation, development or redevelopment.

22. The Department will consider a written request for an extension of time to perform any requirement in this Administrative Consent Order, provided that Weston submits any extension request to the Department two weeks prior to any applicable deadline to which the extension request refers.

V.    Remediation Funding Source and Remediation Funding Source Surcharge

23. Weston agrees to establish and maintain for the duration of this Administrative Consent Order a remediation funding source in an amount equal to the Department-approved estimate of the remediation costs related to compliance with this Administrative Consent Order, including all operation, maintenance and monitoring costs of all engineering and institutional controls, pursuant to N.J.A.C. 7:26E-8, used to remediate the Site, pursuant to N.J.A.C. 7:26C-7. Weston agrees that the initial remediation funding source amount is $13.2 million. Pursuant to N.J.A.C. 7:26C-7.7, the Department has agreed to allow ACE to provide, on behalf of Weston, a self-guarantee as set forth in and as subject to Paragraphs 20, 22, 23, 26 and 27 of the Settlement Agreement. ACE is a party hereto solely for the limited purpose of providing, on behalf of Weston, a self-guarantee as the initial remediation funding source subject to Paragraphs 20, 22, 23, 26 and 27 of the Settlement Agreement. As further set forth in Paragraphs 20, 22 and 23 of the Settlement Agreement, ACE's obligations under this Administrative Consent Order are limited to the terms of the Policy.

24. Weston and ACE are not responsible for or obligated to pay a remediation funding source surcharge.

VI.    Project Cost Review

25. Beginning three hundred sixty-five (365) calendar days after the Effective Date of this Administrative Consent Order, and annually thereafter on the same calendar day, Weston agrees to submit to the Department a detailed review of all remediation costs expended by Weston to comply with this Administrative Consent Order, including:

(a) A detailed summary of all monies spent to date pursuant to this Administrative Consent Order;

(b) The detailed estimated remediation costs required to comply with this Administrative Consent Order, including all operation, maintenance and monitoring costs; and

(c) The reason for any changes from the previously submitted cost review.

26. At any time after Weston submits the first cost review pursuant to the preceding paragraph, Weston may request the Department's approval to reduce the amount of the remediation funding source to reflect the remaining remediation costs necessary to comply with obligations under this Administrative Consent Order. If the Department grants written approval to such a request, Weston may amend the amount of the then existing remediation funding source consistent with that approval.

27. If the estimated costs of meeting Weston's obligations in this Administrative Consent Order at any time increase to an amount greater than the remediation funding source, Weston agrees to within thirty (30) calendar days after receipt of written notice of the Department's determination, increase the amount of the then existing remediation funding source or provide an additional remediation funding source such that the total amount equals the Department's approved estimated cost.

28. If Weston implements a remedial action at the site that includes institutional and engineering controls pursuant to N.J.A.C. 7:26E-8, Weston agrees to maintain a remediation funding source, pursuant to N.J.A.C. 7:26C-7, in an amount necessary to pay for the operation, maintenance and monitoring of the engineering and institutional controls.

VII.    Oversight Cost Reimbursement

29. Within thirty (30) calendar days after receipt from the Department of a written summary of the Department's oversight costs, including all accrued interest incurred pursuant to paragraph 31, determined pursuant to N.J.A.C. 7:26C-9.3, Weston agrees to submit to the Department a cashier's or certified check payable to the "Treasurer, State of New Jersey" and submitted with DEP Form 062A, for the full amount of the Department's oversight costs, for the period being charged.

30. Weston agrees that its agreement here to pay the Department's oversight costs will continue after the Department's termination of this Administrative Consent Order as provided herein for those oversight costs that have accrued prior to that termination.

31. Weston also agrees to pay interest on the unpaid balance of oversight costs, beginning at the end of the thirty (30) calendar day period established in Paragraph 29, at the rate established by Rule 4:42 of the current edition of the Rules Governing the Courts of the State of New Jersey.

VIII.   Reservation of Rights

32. The Department reserves the right to unilaterally terminate this Administrative Consent Order in the event that the Department determines that Weston has violated the terms of this Administrative Consent Order. Before the Department unilaterally terminates this Administrative Consent Order, the Department shall notify Weston in writing of the obligation(s) which it has not performed, and Weston shall have thirty (30) calendar days after receipt of such notice to perform such obligation(s).

33. Nothing in this Administrative Consent Order precludes the Department from seeking civil or civil administrative penalties or any other legal or equitable relief against Weston for violations of this Administrative Consent Order. In any such action brought by the Department under this Administrative Consent Order for injunctive relief, civil, or civil administrative penalties, Weston may raise, among other defenses, a defense that Weston failed to comply with a decision of the Department, made pursuant to this Administrative Consent Order, on the basis that the Department's decision was arbitrary, capricious or unreasonable. If Weston is successful in establishing such a defense based on the administrative record, Weston shall not be liable for penalties for failure to comply with that particular requirement of the Administrative Consent Order. Although Weston may raise such defenses in any action initiated by the Department for injunctive relief, Weston hereby agrees not to otherwise seek review of any decision made or to be made by the Department pursuant to this Administrative Consent Order and under no circumstances

shall Weston initiate any action or proceeding challenging any decision made or to be made by the Department pursuant to this Administrative Consent Order.

34. This Administrative Consent Order shall not be construed to affect or waive the claims of federal or State natural resources trustees against any person for damages or injury to, destruction of, or loss of natural resources, unless expressly provided herein, and then only to the extent expressly provided herein.

35. Except as otherwise stated in this Administrative Consent Order, nothing herein shall be construed as limiting any legal, equitable or administrative remedies which Weston may have under any applicable law or regulation. In any enforcement action the Department initiates pursuant to this Administrative Consent Order, Weston reserves any defenses which the Spill Compensation and Control Act, Matter of Kimber Petroleum Corp., 110 N.J. 69 (1988) or their amendments, supplements and progeny allow.

36. Except as otherwise set forth herein, by the execution of this Administrative Consent Order, the Department does not release Weston from any liabilities or obligations Weston may have pursuant to any other authority, nor does the Department waive any of its rights or remedies pursuant thereto.

IX.    Force Majeure

37. If any event specified in the following paragraph occurs which Weston believes or should believe will or may cause delay in the compliance or cause non-compliance with any provision of this Administrative Consent Order, Weston agrees to notify the Department in writing within seven (7) calendar days of the start of delay or knowledge of the anticipated delay, as appropriate, referencing this paragraph and describing the anticipated length of the delay, the precise cause or causes of the delay, any measure taken or to be taken to minimize the delay, and the time required to take any such measures to minimize the delay. Weston agrees to take all necessary action to prevent or minimize any such delay.

38. The Department will extend in writing the time for performance for a period no longer than the delay resulting from such circumstances as determined by the Department only if:

    (a) Weston has complied with the notice requirements of the preceding paragraph;

    (b) Any delay or anticipated delay has been or will be caused by fire, flood, riot, strike or other circumstances beyond the control of Weston; and

    (c) Weston has taken all necessary action to prevent or minimize any such delay.

39. The burden of proving that any delay is caused by circumstances beyond the control of Weston and the length of any such delay attributable to those circumstances shall rest with Weston.

40. "Force Majeure" shall not include the following:

(a) Delay in an interim requirement with respect to the attainment of subsequent requirement;

(b) Increases in the cost or expenses incurred by Weston in fulfilling the requirements of this Administrative Consent Order;

(c) Contractor's breach, unless Weston demonstrates that such breach falls within the above paragraphs; and

(d) Failure to obtain access required to implement this Administrative Consent Order, unless denied by a court of competent jurisdiction.

X.    Penalties

41. Weston agrees to pay penalties for its violations of this Administrative Consent Order, or for its violations of a deed notice or declaration of environmental restriction that is part of a remedial action implemented pursuant to the order, according to the amounts and conditions in this section.

42. Weston agrees:

(a) That each violation of any requirement, condition or deadline in this Administrative Consent Order constitutes an additional, separate, and distinct violation to which penalties apply;

(b) That each day that a violation continues constitutes an additional, separate, and distinct violation to which penalties apply;

(c) To pay interest, at the rate set forth in the New Jersey Court Rules, R. 4:42-11(a)i, on any unpaid penalty pursuant to this Administrative Consent Order commencing on the first day after it has agreed to pay a penalty pursuant to this Administrative Consent Order;

(d) That nothing in this Administrative Consent Order shall prevent the simultaneous accrual of separate penalties for separate violations of this Administrative Consent Order;

(e) That its payment of a penalty pursuant to this Administrative Consent Order does not alter Weston's responsibility to complete any requirement of this Administrative Consent Order; and

(f) To regard payments of penalties pursuant to this Administrative Consent Order as payments of civil or civil administrative penalties pursuant to the Spill Compensation And Control Act, N.J.S.A. 58:10-23.11 through 23.14.

43. Weston agrees to pay a penalty for all violations of this Administrative Consent Order beginning on the first calendar day following the day the noncompliance begins and

continually thereafter until the final day of correction of the noncompliance, in the following amounts:

| Calendar Days After Due Date | Penalty |
|---|---|
| 1 - 7 days | $500 per calendar day |
| 8 – 14 days | $1,000 per calendar day |
| 15 days and over | $2,500 per calendar day |

44. The Department will provide Weston with written notice of each violation, including a description of the conditions of this Administrative Consent Order that Weston has violated, the date that Weston was to have completed each task, the duration of the violation, and the amount of the penalty that is due and owing pursuant to the preceding paragraph.

45. Weston agrees to pay each penalty required by this Administrative Consent Order by cashier's check or certified check payable to the "Treasurer, State of New Jersey," accompanied by DEP Form 062A and a letter referencing this Administrative Consent Order and the violations for which Weston is submitting the payment within 30 calendar days after its receipt of a penalty payment demand from the Department pursuant to the preceding paragraph.

46. Weston agrees that nothing herein shall limit the Department's ability, upon Weston's failure to pay a penalty pursuant to this Administrative Consent Order, to pursue civil or civil administrative penalties or take any other enforcement action for any violations of this Administrative Consent Order.

47. Weston agrees to pay a penalty in the amount of the economic benefit (in dollars) which Weston has realized as a result of not complying, or by delaying compliance, with the requirements of this Administrative Consent Order, including the following:

   (a) The amount of savings realized from avoided capital or noncapital costs resulting from the violation;

   (b) The return earned or that may be earned on the amount of the avoided costs;

   (c) All benefits accruing to the violator as a result of a competitive market advantage enjoyed by reason of the violation; and

   (d) All other benefits resulting from the violation.

48. Weston agrees that the Department will consider the following factors in determining a penalty for economic benefit:

   (a) The amount of capital investments required, and whether they are one-time or recurring;

   (b) The amount of one-time nondepreciable expenditures;

(c) The amount of annual expenses;

(d) The useful life of capital;

(e) Applicable tax, inflation and discount rates;

(f) The amount of low interest financing, the low interest rate, and the corporate debt rate; and

(g) Any other factors relevant to economic benefit.

49. If the total economic benefit was derived from more than one violation, Weston agrees that the Department may apportion the total economic benefit amount among the violations from which it was derived so as to increase each civil administrative penalty assessment to an amount no greater than $50,000 per violation.

XI.   Dispute Resolution

50. In the event a conflict arises between Weston and the Department, Weston may institute the Department's dispute resolution process at N.J.A.C. 7:26C-1.4.

XII.   General Provisions

51. In addition to the Department's statutory and regulatory rights to enter and inspect, Weston agrees to allow the Department and its authorized representatives access to all areas of the Site Weston has access to, at all times, for the purpose of monitoring Weston's compliance with this Administrative Consent Order and/or to perform any remedial activities Weston fails to perform as required by this Administrative Consent Order. Weston agrees that its agreement here to provide the Department with access will continue after the Department's termination of this Administrative Consent Order pursuant to Paragraph 32, above.

52. Weston agrees to not construe any informal advice, guidance, suggestions, or comments by the Department, or by persons acting on behalf of the Department, as relieving Weston of its obligation to obtain written approvals as required herein.

53. Weston agrees to provide a copy of this Administrative Consent Order to each contractor and subcontractor retained to perform the work required by this Administrative Consent Order and agrees to condition all contracts and subcontracts entered for the performance of such work upon compliance with the terms and conditions of this Administrative Consent Order. Weston agrees to be responsible to the Department for ensuring that its contractors and subcontractors perform the work herein in accordance with this Administrative Consent Order.

54. Nothing in this Administrative Consent Order relieves Weston from complying with all other applicable laws and regulations. Compliance with the terms of this Administrative Consent Order shall not excuse Weston from obtaining and complying with any applicable federal, state or local permits, statutes, regulations and/or orders while

carrying out the obligations imposed by this Administrative Consent Order. This Administrative Consent Order shall not preclude the Department from requiring that Weston obtain and comply with any permits, and/or orders issued by the Department under the authority of the Water Pollution Control Act, N.J.S.A. 58:10A-1 et seq., the Solid Waste Management Act, N.J.S.A. 13:1 E-1 et seq., and the Spill Compensation and Control Act, N.J.S.A. 58:10:23.11 et seq., for the matters covered herein. The terms and conditions of any such permit shall not be preempted by the terms and conditions of this Administrative Consent Order if the terms and conditions of any such permit are more stringent than the terms and conditions of this Administrative Consent Order. Should any of the measures to be taken by Weston during the remediation of any ground water and surface water pollution result in a new or modified discharge as defined in the New Jersey Pollutant Discharge Elimination System ("NJPDES") regulations, N.J.A.C. 7:14A-1 et seq., then Weston agrees to obtain a NJPDES permit or permit modification from the Department prior to commencement of the activity.

55. All work plans, schedules, and other documents required by this Administrative Consent Order and approved in writing by the Department are incorporated herein and made a part hereof.

56. Upon the receipt of a written request from the Department, Weston agrees to submit to the Department all data and information, including technical records and contractual documents, concerning contamination at the Site, including raw sampling and monitoring data, whether or not such data and information, including technical records and contractual documents, were developed pursuant to this Administrative Consent Order. Weston reserves its right to assert a privilege regarding such documents, but agrees not to assert any confidentiality or privilege claim with respect to any data related to Site conditions, sampling or monitoring.

57. Weston agrees to comply with this Administrative Consent Order, which shall be fully enforceable as an Order in the New Jersey Superior Court pursuant to the Department's statutory authority.

58. No modification or waiver of this Administrative Consent Order shall be valid except by written amendment to this Administrative Consent Order duly executed by Weston, ACE and the Department. Any amendment to this Order shall be executed by the Department, Weston and ACE. The Department reserves the right to require the resolution of any outstanding violations of the rules of this Order prior to executing any such amendment.

59. Weston and ACE waive their rights to an administrative hearing concerning the entry of this Administrative Consent Order.

60. This Administrative Consent Order shall be governed and interpreted under the laws of the State of New Jersey.

61. If any provision of this Administrative Consent Order or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Administrative Consent Order or the application of such provision to persons or

circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each provision of this Administrative Consent Order shall be valid and enforced to the fullest extent permitted by law. Notwithstanding the foregoing, under no circumstance shall ACE's obligations under this Administrative Consent Order be expanded or modified to any extent as a result of the invalidity or unenforceability of any provision of this Administrative Consent Order, including this paragraph.

62. This Administrative Consent Order represents the entire integrated agreement between the Department and Weston and ACE concerning the Site subject to this Administrative Consent Order and supersedes all prior negotiations, representations or agreements, either written or oral, unless otherwise specifically provided herein.

63. Within thirty (30) calendar days after the Effective Date of this Administrative Consent Order, Weston agrees to record a copy of this Administrative Consent Order with the County Clerk, Middlesex County, State of New Jersey, and agrees to provide the Department with written verification of compliance with this paragraph, which shall include a copy of this Administrative Consent Order stamped "Filed" by the County Clerk.

64. This Administrative Consent Order shall be binding on Weston and ACE and their successors, assignees and any trustee in bankruptcy or receiver appointed pursuant to a proceeding in law or equity. No change in the ownership or corporate status of Weston or ACE or the facility or the Site shall alter Weston's or ACE's responsibilities under this Administrative Consent Order.

65. Weston agrees to preserve, during the pendency of this Administrative Consent Order and for a minimum of ten (10) years after its termination, all data and information, including technical records, potential evidentiary documentation and contractual documents, in its possession or in the possession of Weston's divisions, employees, agents, accountants, contractors, or attorneys that relate in any way to the contamination at the Site, despite any document retention policy to the contrary. After this ten year period, Weston may make a written request to the Department to discard any such documents. Such a request shall be accompanied by a description of the documents involved, including the name of each document, date, name and title of the sender and receiver and a statement of contents. Upon receipt of written approval by the Department, Weston may discard only those documents that the Department does not require to be preserved for a longer period. Upon receipt of a written request by the Department, Weston agrees to submit to the Department all data and information, including technical records and contractual documents or copies of the same. Weston reserves whatever rights it may have, if any, to assert any privilege regarding such data or information, however, Weston agrees not to assert any privilege or confidentiality claims with respect to any data related to site conditions, sampling, or monitoring.

66. Weston agrees to provide to the Department written notice of the dissolution of its corporate or partnership identity, the liquidation of the majority of its assets or the closure, termination or transfer of operations in accordance with the schedule set forth at N.J.A.C. 7:26B-3.2 prior to such action. Upon such notice, Weston agrees to submit a

cost review pursuant to this Administrative Consent Order to the Department. Weston agrees to also provide written notice to the Department of a filing of a petition for bankruptcy no later than the first business day after such filing. These requirements shall be in addition to any other statutory requirements arising from the dissolution of corporate or partnership identity, the liquidation of the majority of assets, or the closure, termination or transfer of operations. Upon receipt of notice of dissolution of corporate identity, liquidation of assets or filing of a petition for bankruptcy, the Department may request and, within fourteen (14) days of the Department's written request, Weston agrees to obtain and submit to the Department additional financial assurance pursuant to this Administrative Consent Order.

67. If Weston implements a remedial action at the Site that includes     institutional and engineering controls pursuant to N.J.A.C. 7:26E-8, this Administrative Consent Order shall remain in full force and effect including the requirements to maintain a remediation funding source. This Administrative Consent Order shall otherwise be terminated pursuant to the following paragraph.

68. If Weston remediates contaminated soil at the Site to the Department's unrestricted use soil standard and any other contaminated media to the applicable remediation standard, the requirements of this Administrative Consent Order shall be deemed satisfied upon the receipt by Weston of written notice from the Department stating that Weston has completed the remediation required by this Administrative Consent Order in accordance with N.J.A.C. 7:26E and has satisfied all financial obligations imposed by this Administrative Consent Order and therefore Weston does not need to continue to maintain a remediation funding source and that no further action is necessary at the Site. The written notice shall also state that the Administrative Consent Order is thereby terminated. Such written notice shall not relieve Weston from the obligation to conduct future investigation or remediation activities pursuant to Federal, State or local laws for matters not addressed by this Administrative Consent Order.

69. Weston may assert a claim of confidentiality for any information submitted by Weston pursuant to this Administrative Consent Order, by following the Department's procedures in N.J.A.C. 7:26B-7.

70. Weston and ACE agree to submit to the Department, along with four original copies of the executed original Administrative Consent Order, signed by Weston or ACE, documentary evidence, such as a corporate resolution or a certification by a corporate officer, that the signatory has the authority to bind Weston or ACE to the terms of this Administrative Consent Order, and proof that the remediation funding source has been established pursuant to N.J.A.C. 7:26C-7.

71. The Effective Date of this Administrative Consent Order shall be the point in time when the following have all been accomplished: (i) the bankruptcy court having jurisdiction over the Grace bankruptcy proceedings issues an order approving the Settlement Agreement and the Remediation Agreement; (ii) the Department, Weston, and ACE have executed this Administrative Consent Order; (iii) the Department has approved ACE's providing, on behalf of Weston, a self-guarantee as the initial remediation funding source

and ACE's self-guarantee application; (iv) the Department, Grace, Hatco, and Weston have executed the NRD Settlement Agreement, (v) Grace and Hatco have paid the contract price pursuant to the Remediation Agreement; and (vi) ACE has issued the Policy.    This Administrative Consent Order shall be of no force and effect until the Effective Date.

## NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION

Date: _____        BY: _____
                                  Ronald T. Corcory, Assistant Director
                                  Oversight Resources Allocation Element

## WESTON SOLUTIONS, INC.

Date: _____        BY: _____
                                       Signature

                                 _____
                                 Print Full Name Signed Above

                                 _____
                                           Title

## ACE AMERICAN INSURANCE COMPANY

Date: 4/7/05             BY: _____
                                       Signature

                                 _____
                                 Print Full Name Signed Above

                                 _____
                                           Title

and ACE's self-guarantee application; (iv) the Department, Grace, Hatco, and Weston have executed the NRD Settlement Agreement, (v) Grace and Hatco have paid the contract price pursuant to the Remediation Agreement; and (vi) ACE has issued the Policy.   This Administrative Consent Order shall be of no force and effect until the Effective Date.

**NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION**

Date: _____         BY: _____
                                       Ronald T. Corcory, Assistant Director
                                       Oversight Resources Allocation Element

**WESTON SOLUTIONS, INC.**

Date: 4/7/05                   BY: _____
                                       Signature

                                   _____
                                       Patrick G. McCann
                                       Print Full Name Signed Above

                                   _____
                                       President and CEO
                                       Title

**ACE AMERICAN INSURANCE COMPANY**

Date: _____         BY: _____
                                       Signature

                                   _____
                                       Print Full Name Signed Above

                                   _____
                                       Title