# EXHIBIT 2

# NATURAL RESOURCE DAMAGES

# SETTLEMENT AGREEMENT

IN THE MATTER OF
THE HATCO SITE
PROGRAM INTEREST NO. G000003943
AND HATCO CORPORATION; W.R.
GRACE & CO; W.R. GRACE & CO.-
CONN.; REMEDIUM GROUP, INC.; and
WESTON SOLUTIONS, INC.

**NATURAL RESOURCE DAMAGES
SETTLEMENT AGREEMENT**

The New Jersey Department of Environmental Protection and the Administrator of the Spill Compensation Fund (jointly, the "Department") enter into this NRD Settlement Agreement pursuant to the authority vested in the Commissioner of the New Jersey Department of Environmental Protection by N.J.S.A. 13:1D-1 through -19 and the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 through 23.24, and duly delegated to the Assistant Commissioner, Natural and Historic Resources pursuant to N.J.S.A. 13:1B-4.

## FINDINGS

1.      The site that is the subject of this NRD Settlement Agreement is presently owned by Hatco Corporation, is located at 1020 King Georges Post Road, Fords, New Jersey and is designated as Blocks 60 and 67, Lots 100A and 1B1 on the Tax Map of the Township of Woodbridge, Middlesex County, New Jersey. For purposes of this NRD Settlement Agreement, the site shall include all other areas where any hazardous substance discharged there has become located (collectively, "the Site").

2.      Hatco Corporation ("Hatco"), incorporated in the State of New Jersey, with its principal offices at 1020 King Georges Post Road, Fords, New Jersey, has agreed to enter into this NRD Settlement Agreement.

3.      W.R. Grace & Co.-Conn., incorporated in the State of Connecticut, with its principal offices at 7500 Grace Drive, Columbia, Maryland, has agreed to enter into this NRD Settlement Agreement.

4.      W.R. Grace & Co., incorporated in the State of Delaware, with its principal offices at 7500 Grace Drive, Columbia, Maryland, has agreed to enter into this NRD Settlement Agreement.

5.      Remedium Group, Inc., a subsidiary of W.R. Grace & Co., (together with W.R. Grace & Co.-Conn. and W.R. Grace & Co., "Grace"), incorporated in the State of Delaware, with its principal offices at 6401 Poplar Avenue, Suite 301, Memphis, Tennessee, has agreed to enter into this NRD Settlement Agreement.

6.      Weston Solutions, Inc. ("Weston"), incorporated in the Commonwealth of Pennsylvania, with its principal offices at 1400 Weston Way, West Chester, Pennsylvania, has agreed to enter into this NRD Settlement Agreement.

7.    Weston is to conduct the cleanup and removal of discharges at the Site pursuant to an administrative consent order to be executed by Weston and ACE American Insurance Company (the "ACO").

8.    Hatco and Grace have conducted a baseline ecological evaluation of the Site and reported the results of that evaluation to the Department in a report titled Remedial Action Workplan, Hatco Corporation Site, Fords, New Jersey, Volume 4 of 21, Appendix H, which Hatco and Grace submitted to the Department on March 29, 2001. Hatco and Grace concluded that an ecological risk assessment was not necessary at the Site because all three prongs of the baseline ecological evaluation were not present.

9.    Hatco and Grace have completed a remedial investigation of contaminated ground water at the Site and reported the results of that assessment to the Department in a report titled Remedial Action Workplan, Hatco Corporation Site, Fords, New Jersey, Volumes 2 and 3 of 21, Appendix D, which Hatco and Grace submitted to the Department on March 21, 2001.

10.    Hatco and Grace have reported to the Department the contaminants of ecological concern that have been discharged at the Site in the Remedial Action Workplan, Hatco Corporation Site, Fords, New Jersey, submitted to the Department on March 21, 2001.

11.    As the trustee of all of the natural resources within the jurisdiction of New Jersey for the benefit of its citizens, the Department of Environmental Protection alleges that the discharge of hazardous substances at the Site has injured and continues to injure natural resources and the economic and ecologic services that they provide. These injured natural resources include: ground water, surface water, soil, and wetlands.

12.    By entering into this NRD Settlement Agreement, Hatco, Grace, or Weston neither admits nor denies any of the findings of the Department. This NRD Settlement Agreement shall not constitute, or be interpreted or used as an admission of fault, liability, law or fact, nor shall it be admissible in any proceeding as such, except only to the limited extent necessary to enforce the provisions of this NRD Settlement Agreement.


## ORDER

### I. Settlement of Natural Resource Damages

13.    In settlement of the Department's claim for natural resource damages resulting from discharges that occurred at the Site prior to the date of this NRD Settlement Agreement, Weston, on behalf of itself, Grace and Hatco, agrees to pay $607,668.44 to Conservation Resources Inc. ("CRI") to fund the purchase of real property, as described below, for open space in accordance with the agreement between and among CRI, Grace, Hatco and Weston dated April 7, 2005. The real property is located within the Raritan River watershed on Fairview Road, Montgomery Township, also known as Block 2001, Lot 15, on the tax map of Montgomery Township, and is featured in CRI's Western Piedmont/Sourlands Geographic Fund. In addition, Weston, on behalf of itself, Grace and Hatco, agrees to pay NJDEP administrative costs in the amount of $5,000 related to the negotiation and execution of this NRD

settlement. Provided the Department does not withdraw its execution of this NRD Settlement Agreement pursuant to Paragraph 20 herein, the payments to CRI and NJDEP will be made within 10 calendar days of the Effective Date of the ACO.

## II. Release

14. "Natural resource damages," as used in this NRD Settlement Agreement, includes any and all claims and causes of action, arising from discharges of hazardous substances that occurred at the Site prior to the date of this NRD Settlement Agreement, for lost use or value of, injury to, or destruction of natural resources including but not limited to claims for assessments, penalties, attorney's, consultant's or expert fees, interest, or any other expenses or compensation, injunctive relief, punitive damages and administrative remedies, recoverable as natural resource damages under the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., the Clean Water Act, 33 U.S.C. §§ 1251 et seq., the Spill Compensation and Control Act, N.J.S.A. 58:10-23.24, or any other state or federal common law, statute, or regulation; provided, however, that natural resource damages shall not include either: (i) compliance, during the cleanup of such discharge, with any statutory or regulatory requirement that is not within this definition of natural resource damages, for example, without limitation, the mitigation of freshwater wetlands as required by N.J.A.C. 7:7A, or (ii) the restoration or other compensation for injury to natural resources caused after the date of this NRD Settlement Agreement by implementation of any remedial action, including a compensatory restoration remedial action, for the Site.

15. "Natural resources" includes all land, fish, shellfish, wildlife, biota, air, waters and other such resources owned, managed, held in trust or otherwise controlled by the State of New Jersey.

16. Within 10 calendar days after receipt of notice from Weston or CRI that the payment required by Paragraph 13 of this NRD Settlement Agreement has been made, the New Jersey Department of Environmental Protection and the Administrator of the Spill Compensation Fund shall issue the attached Release to Hatco, Grace, and Weston, consistent with this NRD Settlement Agreement, that fully and forever releases, and covenants not to sue or otherwise take administrative action against, Hatco, Grace, and Weston and their past and present subsidiaries and predecessors and their officers, directors, employees, and agents (collectively, the "Releasees"), for any and all of the Department's claims and causes of action for natural resource damages as a result of the known discharges at the Site prior to the date of this NRD Settlement Agreement. This release shall not extend, however, to any officer, director, employee, or agent that has liability for natural resource damages as a result of discharges at the Site other than in that person's relationship as an officer, director, or employee of, or agent to, Hatco, Grace, or Weston as described in this Paragraph.

## III. Contribution Protection

17. It is the intent of the Department and Hatco, Grace, and Weston that this NRD Settlement Agreement constitutes an administratively approved settlement within the meaning of 42 U.S.C. § 9613(f)2 and for the purpose of providing protection from contribution actions or claims for natural resource damages as a result of a discharge at the Site.

18. It is the further intent of the Department and Hatco, Grace, and Weston that by entering into this NRD Settlement Agreement, the Releasees shall be protected to the greatest extent possible

from any contribution claim a third party may assert to the extent the claim arises from any judgment entered in favor of the Department in any civil or administrative action the Department brings to recover for damages or injuries to natural resources at the Site. The Department further agrees that the obligation described in Paragraph 13, above, satisfies the Releasees' full and fair share of any claim or cause of action the Department has for natural resource damages. The Department further agrees that the release in this NRD Settlement Agreement does not discharge any other potentially liable persons, but such NRD Settlement Agreement does reduce the potential liability of the others by the amount of the payments. Further, the Department agrees that it will not oppose any motion or application by the Releasees in any subsequent action in which the Releasees seek the contribution protection that this NRD Settlement Agreement is intended to provide. The Department agrees that it will require, in any future settlement that it reaches with any other person or entity regarding natural resource damages as a result of the discharges at the Site, a provision that such person or entity will not seek and thereby waives all rights of contribution from the Releasees for the natural resource damage liability settled thereunder.

19.    Within 20 calendar days after the effective date of this NRD Settlement Agreement, Weston agrees to publish legal notices in three newspapers of general circulation in the area of the Site for a period of not less than three days and the Department agrees to arrange for the publication of a notice in the New Jersey Register, each giving notice to the public that the New Jersey Department of Environmental Protection, the Administrator of the Spill Compensation Fund and Hatco, Grace, and Weston have entered into this NRD Settlement Agreement, that a copy of this NRD Settlement Agreement is available for inspection via the Internet at Woodbridge Public Library, Fords Branch, 211 Ford Avenue, Fords, NJ or the main office of the Department in Trenton, New Jersey, and on the Department's Internet site at www.nj.gov/dep/onrr/settlements, and that objections to, or comments on, the entry of this NRD Settlement Agreement should be submitted to the Department within 30 calendar days after the date of the first publication in any of these notices.

20.    The Department reserves the right to withdraw its execution of this NRD Settlement Agreement if the comments or objections regarding the NRD Settlement Agreement disclose facts or considerations that indicate to the Department, in its sole discretion, that the NRD Settlement Agreement is inappropriate, improper, or inadequate; provided, however, that the Department will, if it deems appropriate, exercise its right to withdraw its execution of this NRD Settlement Agreement no later than four calendar days after the end of the comment period described in the preceding Paragraph. Hatco, Grace, and Weston consent to the entry of this NRD Settlement Agreement without further notice. In the event the Department withdraws from this NRD Settlement Agreement pursuant to this Paragraph, this NRD Settlement Agreement shall be null and void, and all obligations herein shall be extinguished.

## IV. General Provisions

21.    If Hatco, Grace, or Weston fails to fulfill the obligation described in Paragraph 13, above, the Department reserves it right to terminate this NRD Settlement Agreement, withdraw its offer to settle the natural resource damages in this case, and pursue other enforcement actions.

22.    Nothing in this NRD Settlement Agreement, including the Department's issuance of a covenant not to sue as described in Paragraph 16, above, shall impact Weston's obligation to remediate the discharges at the Site pursuant to the Technical Requirements for Site

Remediation, N.J.A.C. 7:26E. The Department expressly reserves the right to require remediation of all discharges at the Site.

23.     Hatco, Grace, and Weston agree to comply with this NRD Settlement Agreement, which shall be fully enforceable as an Order in the New Jersey Superior Court pursuant to the Department's statutory authority.

24.     No modification or waiver of this NRD Settlement Agreement shall be valid except by written amendment to this NRD Settlement Agreement duly executed by Hatco, Grace, Weston, and the Department.

25.     Hatco, Grace, and Weston waive their rights to an administrative hearing concerning the entry of this NRD Settlement Agreement.

26.     This NRD Settlement Agreement shall be governed and interpreted under the laws of the State of New Jersey.

27.     This NRD Settlement Agreement shall be effective upon the execution of this Settlement Agreement by the Department and Hatco, Grace, and Weston.


Date:                                   By:

                                        John S. Watson Jr.
                                        Assistant Commissioner, Natural and Historic Resources
                                        New Jersey Department of Environmental Protection


Date:                                   By: _____

                                        Leonard Romino
                                        Spill Fund Administrator


Date:                                   By: _____

                                        Patrick G. McCann
                                        President and Chief Executive Officer
                                        Weston Solutions, Inc.


Date:                                   By: _____

                                        William J. Buccine
                                        Senior Vice President and Chief Financial Officer
                                        Hatco Corporation

Remediation, N.J.A.C. 7:26E. The Department expressly reserves the right to require remediation of all discharges at the Site.

23.     Hatco, Grace, and Weston agree to comply with this NRD Settlement Agreement, which shall be fully enforceable as an Order in the New Jersey Superior Court pursuant to the Department's statutory authority.

24.     No modification or waiver of this NRD Settlement Agreement shall be valid except by written amendment to this NRD Settlement Agreement duly executed by Hatco, Grace, Weston, and the Department.

25.     Hatco, Grace, and Weston waive their rights to an administrative hearing concerning the entry of this NRD Settlement Agreement.

26.     This NRD Settlement Agreement shall be governed and interpreted under the laws of the State of New Jersey.

27.     This NRD Settlement Agreement shall be effective upon the execution of this Settlement Agreement by the Department and Hatco, Grace, and Weston.


Date: _____        By: _____

John S. Watson
Assistant Commissioner, Natural and Historic Resources
New Jersey Department of Environmental Protection


Date: _____        By: _____

Leonard Romino
Spill Fund Administrator


Date: _____        By: _____

Patrick G. McCann
President and Chief Executive Officer
Weston Solutions, Inc.


Date: _____        By: _____

William J. Buccine
Senior Vice President and Chief Financial Officer
Hatco Corporation

Remediation, N.J.A.C. 7:26E. The Department expressly reserves the right to require remediation of all discharges at the Site.

23.    Hatco, Grace, and Weston agree to comply with this NRD Settlement Agreement, which shall be fully enforceable as an Order in the New Jersey Superior Court pursuant to the Department's statutory authority.

24.    No modification or waiver of this NRD Settlement Agreement shall be valid except by written amendment to this NRD Settlement Agreement duly executed by Hatco, Grace, Weston, and the Department.

25.    Hatco, Grace, and Weston waive their rights to an administrative hearing concerning the entry of this NRD Settlement Agreement.

26.    This NRD Settlement Agreement shall be governed and interpreted under the laws of the State of New Jersey.

27.    This NRD Settlement Agreement shall be effective upon the execution of this Settlement Agreement by the Department and Hatco, Grace, and Weston.

Date:                         By:    _____
                                     John S. Watson
                                     Assistant Commissioner, Natural and Historic Resources
                                     New Jersey Department of Environmental Protection

Date:                         By:    _____
                                     Leonard Romino
                                     Spill Fund Administrator

Date:                         By:    _____
                                     Patrick G. McCann
                                     President and Chief Executive Officer
                                     Weston Solutions, Inc.

Date:                         By:    _____
                                     William J. Buccine
                                     Senior Vice President and Chief Financial Officer
                                     Hatco Corporation

5

Remediation, N.J.A.C. 7:26E. The Department expressly reserves the right to require remediation of all discharges at the Site.

23.    Hatco, Grace, and Weston agree to comply with this NRD Settlement Agreement, which shall be fully enforceable as an Order in the New Jersey Superior Court pursuant to the Department's statutory authority.

24.    No modification or waiver of this NRD Settlement Agreement shall be valid except by written amendment to this NRD Settlement Agreement duly executed by Hatco, Grace, Weston, and the Department.

25.    Hatco, Grace, and Weston waive their rights to an administrative hearing concerning the entry of this NRD Settlement Agreement.

26.    This NRD Settlement Agreement shall be governed and interpreted under the laws of the State of New Jersey.

27.    This NRD Settlement Agreement shall be effective upon the execution of this Settlement Agreement by the Department and Hatco, Grace, and Weston.


Date: _____        By: _____

John S. Watson
Assistant Commissioner, Natural and Historic Resources
New Jersey Department of Environmental Protection


Date: _____        By: _____

Leonard Romino
Spill Fund Administrator


Date: _____        By: _____

Patrick G. McCann
President and Chief Executive Officer
Weston Solutions, Inc.


Date: _____        By: _____

William J. Buccine
Senior Vice President and Chief Financial Officer
Hatco Corporation

Date:    4/8/05        By:    _____

William M. Corcoran
Vice President, Public & Regulatory Affairs
W.R. Grace & Co.

Date:    4/8/05        By:    _____

William M. Corcoran
Vice President, Public & Regulatory Affairs
W.R. Grace & Co.-Conn.

Date:              By:    _____

Robert J. Medler
Director
Remedium Group, Inc.

6

Date:                         By:    _____
                                     William M. Corcoran
                                     Vice President, Public & Regulatory Affairs
                                     W.R. Grace & Co.


Date:                         By:    _____
                                     William M. Corcoran
                                     Vice President, Public & Regulatory Affairs
                                     W.R. Grace & Co.-Conn.


Date: 4/8/05                  By:    *Robert G. Medler*
                                     Robert J. Medler
                                     Director
                                     Remedium Group, Inc.

# *Conservation Resources Inc.*
## *Regulatory Contribution Agreement*

This Agreement is entered into on the 7th of April, 2005 by and between Weston Solutions, Inc., a Pennsylvania corporation with an address at 1400 Weston Way, West Chester, Pennsylvania ("Weston"); Hatco Corporation, a New Jersey corporation with an address at 1020 King George Post Road, Fords, NJ 08863; W.R Grace & Co., a Delaware corporation with an address at 7500 Grace Drive, Columbia, Maryland; W.R. Grace & Co.-Conn., a Connecticut corporation with an address at 7500 Grace Drive, Columbia, Maryland; Remedium Group, Inc., a Delaware Corporation with an address at 6401 Poplar Avenue, Suite 301, Memphis, Tennessee    (hereinafter all of the above with Weston referred to as the "Contributors"); and  Conservation Resources Inc., a not-for-profit organized pursuant to the laws of the State of New Jersey, whose address is 100 North Road, Suite Two, P.O. Box 594, Chester, New Jersey 07930 ("CRI"). Contributors agree to make a financial contribution to CRI in order to provide funding for a non-profit land acquisition project which has been featured in one of CRI's geographic funds, all as hereinafter provided.

> WHEREAS, CRI, whose mission is to increase the capacity, expertise and technical and financial resources available to private and public conservation organizations in order to maximize the preservation of open space and farmland in the Garden State, has established a series of geographic funds which cover the entire state of New Jersey;

> WHEREAS, each geographic fund features a number of exemplary land acquisition, stewardship, restoration or related capital projects being undertaken by a variety of non-profit conservation organizations which have been screened and pre-approved by CRI to insure that strict eligibility criteria are met;

> WHEREAS, the Contributors seek to provide funding for a specific project in connection with a settlement of natural resources damages with the State of New Jersey Department of Environmental Protection and the Administrator of the Spill Compensation Fund (jointly, "NJDEP") pursuant to a Natural Resource Damages Settlement Agreement, attached hereto, to be entered into with NJDEP ("NRD Settlement");

> WHEREAS, CRI has identified and screened a specific project which satisfies all of the relevant project requirements which the Contributors require for this regulatory contribution and which has been accepted by NJDEP;

> NOW, THEREFORE, in consideration of the services which have been and which shall be provided by CRI in connection with this project, as well as the regulatory contribution to be made by the Contributors, intending to be legally bound, and the parties hereto agree as follows:

1. **Contribution.**

   Weston agrees to pay on behalf of itself and the other Contributors the amount of $607,668.44 to fund the acquisition of the real property as open space in perpetuity located on Fairview Road, Montgomery Township, also known as Block 2001, Lot 15 on the tax map of Montgomery Township (the "Project"), which is featured in CRI's Western Piedmont/Sourlands Geographic Fund, in accordance with the NRD Settlement. CRI acknowledges that this amount represents the total cost of the Project, as detailed in Exhibit A, which is attached hereto and made a part of this Agreement and that, upon full payment of this amount, the Contributors shall have no further obligations to CRI.

   In the event the NRD Settlement is not executed by the parties thereto or NJDEP withdraws its execution of the NRD Settlement after the close of the public comment period, this Agreement shall be null and void and the parties hereto shall have no obligations to each other.

2. **Use of Contribution.**

   CRI agrees to utilize this contribution only for the purposes of providing funding to the non-profit sponsor of the Project for the costs detailed in Exhibit A, and to offset CRI's operating expenses in providing the services listed in Paragraph 3 of this Agreement. In the event that circumstances beyond the control of CRI preclude the completion of the Project, CRI agrees to identify a substitute project acceptable to the Contributors and to all relevant regulatory agencies, and to use the contribution to fund such substitute project and to offset CRI's operating expenses in connection with that substitute project.

3. **Services to Be Provided by CRI.**

   In addition to the previous identification and screening by CRI of the Project, CRI agrees that it will provide the following services in connection with the Project. In particular, CRI will:
   - Acknowledge the receipt of this contribution to the Contributor and all relevant regulatory agencies;
   - Accept the contribution, deposit it in a secure account, and manage this funding in a manner which insures that it will be available for the purposes of this Agreement;
   - Disburse the funds in accordance with a Project schedule developed for this purpose;
   - Provide oversight for the Project by:
     - Developing and monitoring a Project schedule;
     - Conducting compliance assurance with respect to the use of contributed funds;
     - Preparing and submitting quarterly interim reports on the status of the Project to the Contributor and all relevant regulatory agencies; and

- Preparing and submitting a final report to the Contributors and all relevant regulatory agencies upon completion of the Project;
- Provide technical assistance to insure Project completion to the non-profit sponsor of the Project, which may include one or more of the following, as appropriate:
  - Negotiation assistance;
  - Partnership facilitation for projects involving more than one private and/or public conservation partners;
  - Assistance with selecting and/or supervising contractors (e.g. appraisers, surveyors, and other vendors);
- Require appraisals and a Phase I environmental assessment for the Project, and review these appraisals and assessment;

  Note: CRI requires that non-profit recipients of funds obtain appraisals by Green Acres-certified appraisers. For projects where land acquisition costs exceed $250,000, two such appraisals must be obtained. If the value determined by the higher of two appraisals is within 10% of the value determined by the lower of the two appraisals, the average of the two appraised values will be considered to be fair market value of the land to be acquired. In the event that the values determined by two appraisals vary by more than 10%, CRI will engage a third Green Acres-certified appraiser to review both appraisals and determine fair market value of the land to be acquired. The cost of this third appraisal, as needed, shall be added to the total cost of the project to be paid by the Contributor. The parties agree that the appraisal costs have been included in the contribution set forth in Section 1 above.
- Provide an annual independent audit of CRI's financial statements, which audit shall include all moneys held in and disbursed from its geographic funds; and
- Provide an Annual Report for CRI's geographic funds.

## 4. CRI's Management Fees.

The parties also agree that a one-time non-refundable management fee consisting of 1.5% of the total project costs and a $5,000.00 per project charge have been included in the contribution set forth in Section 1 above. This management fee shall be used by CRI to help cover its costs in providing the services outlined in Paragraph 3 above. In addition, all interest earned on this contribution prior to disbursement of funds for project expenses shall be also retained by CRI to help cover these costs.

## 5. Potential Deductibility of Contributions to CRI.

CRI is a tax-exempt, non-profit conservation organization recognized by the Internal Revenue Service under section 501 (c) (3) of the Internal Revenue Code, as are the intended non-profit recipient organizations of contributions to CRI's geographic funds. As such, charitable contributions to CRI's geographic funds, or to CRI directly, are deductible for federal income tax purposes to the full extent provided by law.

Individuals, partnerships and corporations may also make contributions to CRI's geographic funds in connection with various regulatory matters, including but not limited to: mitigation requirements for permit conditions; penalty settlements; natural resource damage claims; and supplemental environmental projects. Regulatory contributions, however, may not be deductible for federal income tax purposes, especially if these contributions are required as part of a permit, settlement or other regulatory matter. Accordingly, CRI makes no representation whatsoever concerning the tax implications of this contribution, and all regulatory contributors to CRI's geographic funds are strongly advised to consult their own legal and tax advisors concerning the potential deductibility of these contributions.

5. **Notification.**

All notices required by or provided pursuant to this Agreement shall be transmitted to the following individuals and addresses listed below. Notices may be sent by telecopy, regular mail, express mail, courier or delivery service. Notices shall be deemed received only upon actual receipt of a written notice.

As to CRI:

Michael Catania, President
Conservation Resources Inc.
100 North Road, Suite Two
P.O. Box 594
Chester, New Jersey 07930
Fax (908) 879-7942

As to Contributors:

Peter Ceribelli, Senior V.P.
Weston Solutions, Inc.
1400 Weston Way,
West Chester, Pennsylvania 19380
Fax (610) 701-3100

David Mason, V.P. E.H.&S.
Hatco Corporation
1020 King George Post Road
Fords, New Jersey 08863
Fax (732) 738-3944

Corporate Secretary
W.R Grace & Co.
W.R. Grace & Co. – Conn.
7500 Grace Drive,
Columbia, Maryland 21044
Fax (410) 531-4233

6. **Entire Agreement.**

This Agreement constitutes the entire agreement of the parties and supersedes any and all prior or contemporaneous written or oral negotiations, correspondence, understandings and agreements between the parties respecting the subject matter hereof. No supplement, modification or amendment to this Agreement shall be binding unless executed in writing by both parties.

7. **Assignment.**

This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective successors. Further, neither CRI nor the Contributors shall be entitled to assign any of their respective rights or obligations hereunder.

9. **Governing Law.**

This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey applicable to contracts made and to be performed in the State of New Jersey.

AGREED and ACCEPTED:

Weston Solutions Inc.                     Conservation Resources Inc.

By: Patrick G. McCann                     By: Michael Catania
Its: President/CEO                        Its: President
Date: 4/7/05                              Date: _____


Hatco Corporation                         W. R. Grace & Co.


By: William Buccini                       By: _____
Its: Treasurer                            Its: _____
Date: _____                     Date: _____


W. R. Grace & Co. – Conn.


By: _____
Its: _____
Date: _____

the subject matter hereof. No supplement, modification or amendment to this Agreement shall be binding unless executed in writing by both parties.

7. **Assignment.**

This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective successors. Further, neither CRI nor the Contributors shall be entitled to assign any of their respective rights or obligations hereunder.

9. **Governing Law.**

This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey applicable to contracts made and to be performed in the State of New Jersey.

AGREED and ACCEPTED:

Weston Solutions Inc.                    Conservation Resources Inc.

By: Patrick G. McCann                    By: Michael Catania
Title: President/CEO                     Title: President
Date: _____                  Date: _____


Hatco Corporation                        W. R. Grace & Co.

By: William Buccine                      By: _____
Title: Treasurer                         Title:
Date: 7 APRiL 2005                       Date: _____


W. R. Grace & Co. – Conn.

By: _____

Date: _____

This Agreement constitutes the entire agreement of the parties and supersedes any and all prior or contemporaneous written or oral negotiations, correspondence, understandings and agreements between the parties respecting the subject matter hereof. No supplement, modification or amendment to this Agreement shall be binding unless executed in writing by both parties.

7. **Assignment.**

This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective successors. Further, neither CRI nor the Contributors shall be entitled to assign any of their respective rights or obligations hereunder.

9. **Governing Law.**

This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey applicable to contracts made and to be performed in the State of New Jersey.

AGREED and ACCEPTED:

Weston Solutions Inc.                          Conservation Resources Inc.

By:  Patrick G. McCann                         By: Michael Catania
Its:  President/CEO                            Its: President
Date: _____                          Date: _____


Hatco Corporation                              W. R. Grace  & Co.

By:  William Buccini                           By:
Its:  Treasurer                                Its:
Date: _____                          Date:  4/8/05


W. R. Grace & Co. -- Conn.

By:
Its:
Date:  4/8/05

the subject matter hereof.  No supplement, modification or amendment to this Agreement shall be binding unless executed in writing by both parties.

7. **Assignment.**

This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective successors.  Further, neither CRI nor the Contributors shall be entitled to assign any of their respective rights or obligations hereunder.

9. **Governing Law.**

This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey applicable to contracts made and to be performed in the State of New Jersey.

AGREED and ACCEPTED:

Weston Solutions Inc.

Conservation Resources Inc.

By:  Patrick G. McCann
Title: President/CEO
Date: _____

By:  Michael Catania
Title: President
Date: 4/07/05

Hatco Corporation

W. R. Grace & Co.

By:  William Buccini
Title: Treasurer
Date: _____

By: _____
Title: _____
Date: _____

W. R. Grace & Co. – Conn.

By: _____

Date: _____



www.conservationresourceinc.org

Michael Catania, President
(908) 879-7942 (telephone)
(908) 879-7943 (fax)

100 North Road, Suite Two
PO Box 594
**Chester, NJ 07930**

March 29, 2005

# INVOICE for PROJECT EXPENSES
## For the D&R Greenway/ Rock Creek Preserve Project

1.  **Purchase Price**
    Curini appraisal      -      $741,400.00
    Rodriguez appraisal      -      $716,700.00
    **Average Appraised Value**    -      $729,050.00
    **Contract Purchase Price**
    **(80% Bargain Sale)**      -      $583,240.00

2.  **Appraisal Costs**
    Curini appraisal      -      $   2,468.00
    Rodriguez appraisal      -      $   2,600.00
    **Total Appraisal cost**      -      $   5,068.00
    **Purchaser's share**
    **(Seller pays 50%)**      -      $   2,534.00

3.  **Survey Costs**
    **Heritage Consulting**      -      $   6,750.00
    **Purchaser's share**
    **(Seller pays 50%)**      -      $   3,375.00

4.  **Title Search and Title Policy**
    **General Land Abstract**    -      $   2, 027.63
    **Purchaser's share**
    **(Seller pays 50%)**      -      $   1,013.82

5.  **Phase I and II**
    **Keating Environmental**    -      $   2,100.00 *

6.  **Closing Costs**
    **Legal Fees**      -      $   1, 000.00
    **Other closing expenses**    -      $     500.00
    **Total Closing Expenses**    -      $   1, 500.00

7. Subtotal Project Expenses  -        $ 593,762.00

8. Management Fee for
   Conservation Resources
   (a) 1.5 % of project costs    -      $    8,906.44
   (b) Per project fee           -      $    5,000.00
   Total Management Fee          -      $  13,906.44

9. Total Project Expense         -      $607, 668.44

**Amount to be Paid to Conservation Resources:     $607,668.44**

* assumes that no additional expense will be required for UST removal