# EXHIBIT 3

## LETTER AGREEMENT WITH

## MARSH USA INC.

~~Daniel R. Lavoie~~ Reinartz
~~Senior~~ Vice President

Marsh USA Inc.
1166 Avenue of the Americas
New York, NY 10036-2774
212/345-~~4800:3078~~ Fax: 212/345-~~4804~~4303
~~Daniel.Lavoie~~Ronald.h.reinartz@marsh.com

# MARSH
An MMC Company

~~April 5, 2002~~ June 2, 2004 ?

W.R. Grace & Co.
[Address]

Mr. Jeffrey M. Posner
J. M. Posner Inc.
2333 North State Road 7
Suite B
Margate, FLA 33063

Subject: WR Grace / Hatco - Environmental Engagement

Dear ~~Mr. Posner~~ Sirs:

This letter agreement (the "Agreement") is to confirm that Marsh USA Inc ("Marsh") is hereby engaged to advise and assist W.R. Grace (the "Company") with regard to the design and placement of the Program (as defined below).

1   Services.   Marsh shall perform the following services for the Company (the "Services"), as more particularly described in Appendix A:

Work with the Company to assess the environmental risks at the Hatco Facility in Fords, New Jersey (together, the "Risks").

Design and develop one or more Programs for the purpose of addressing the Risks. As used in this Agreement, "Program" means any type of insurance, reinsurance or financing structure that is intended to address the Risks, whether such structure takes the form of an insurance policy, financial guarantee contract or any other financial arrangement;

Identify and negotiate on the Company's behalf with potential Providers of Programs. Marsh shall be authorized for purposes of this Agreement to represent and assist the Company in all discussions and transactions with all Providers concerning any Program, provided that Marsh shall not be authorized to place the Program on behalf of the Company or commit the Company with respect to the Program unless so authorized by the Company. As used in this Agreement, "Provider" means any insurance or reinsurance company, including financial guarantee insurers, as well as any bank or non-bank financial institution that Marsh determines may be a potential provider for a Program.

Assist with documentation and other steps to obtain commitments for and implement the Program upon the Company's instructions, it being understood that Marsh will not independently verify or authenticate information provided by the Company necessary to prepare underwriting submissions and other documents relied upon by Providers, and the Company shall be solely responsible for the accuracy and completeness of such information and other documents furnished to Marsh and/or Providers and shall sign any application for the Program;

Use its best efforts to place the Program, if so instructed by the Company; and

Page 2
June 29, 2004~~June 24, 2004~~~~June 21, 2004~~~~May 11, 2004~~~~April 8, 2003~~
Mr. Jeffrey M. Posner

    Perform such other reasonable and customary professional services as the Company and Marsh mutually agree are appropriate.

Marsh does not guarantee or make any representation or warranty that a Program can be implemented on terms acceptable to the Company. It is understood and agreed that Marsh's services hereunder shall not extend to or include the analysis, submission, management, negotiation or collection of claims made under any Program.

During the term of this Agreement, the Company will not negotiate, discuss or consummate a Program with any Provider or potential Provider, other than through Marsh.

2.    <u>Fees</u>. In consideration of Marsh performing the Services for the Company hereunder:

Marsh will deliver the Services outlined in this Agreement for a flat fee of $~~300,000~~330,000 (the "Success Fee"), payable within 30 days of binding the Program, and only if a such a Program is ultimately bound <u>by Marsh</u> on the Company's behalf. ~~This compensation does not include any payments that Marsh may receive, in accordance with the custom in its industry, under agreements with certain insurers that provide for payments based upon such factors as the overall book of business placed by Marsh and its affiliates, the performance of that book or the aggregate commissions paid for that book. At your request, Marsh will provide additional information in this regard.~~

<u>If, during the term of this Agreement, or within eighteen months after termination hereof, the Company implements or purchases a Program other than through Marsh and either (i) Marsh played a significant role in the design, placement or structuring of the Program or (ii) the Program is based substantially on concepts or designs introduced by Marsh, the Success Fee shall be payable to Marsh and be fully earned upon the implementation or purchase, whichever is earlier.</u>

<u>With respect to insurance placed by Marsh on the Company's behalf, Marsh will disclose to the Company any commissions received by Marsh and credit them against the Success Fee. In the event such commissions exceed the Success Fee, then excess commissions will be returned to the Company if and to the extent permitted by law. Such commissions do not include: wholesale brokerage fees or commissions; administrative fees and similar items; or payments that Marsh may receive, in accordance with the custom in its industry, under agreements with certain insurers that provide for payments based upon such factors as the overall book of business placed by Marsh and its affiliates, the performance of that book or the aggregate commissions paid for that book. At the Company's request, Marsh will provide additional information in this regard.</u>

3.    Term; Termination.

This Agreement shall terminate ~~one (1) year~~ after the date of execution of this Agreement (the "Term"). The Term may be extended by mutual written agreement of the parties.

Notwithstanding the foregoing, (i) Marsh may terminate this Agreement at any time with or without cause by giving to the Company at least thirty days prior written notice of such termination; or (ii) the Company may terminate this Agreement at any time with or without cause by giving to Marsh at least thirty (30) days prior written notice of such termination.

Page 3
June 29, 2004~~June 24, 2004~~~~June 21, 2004~~~~May 11, 2004~~~~April 8, 2002~~
Mr. Jeffrey M. Posner

The obligation of Marsh and its affiliates to render services pursuant to Section 1 hereof shall terminate immediately upon termination of this Agreement for any reason. Rights and obligations accrued prior to termination and the parties' respective rights and obligations under Sections 2, 5, 8 and 9 shall survive the termination of this Agreement for any reason.

4.  **Variation.** Where the Company seeks any variation in the Services, whether by way of addition, deletion, substitution, or otherwise, the Company shall submit its proposal of variations in writing as soon as practicable to Marsh. Marsh shall not be obligated to accept such variation in the Services unless the Company agrees to pay any additional sum or sums reasonably specified by Marsh and to extend any period agreed for provision of the Services by any additional period reasonably specified by Marsh.

~~5~~6.  **Relationship to Provider.** Marsh does not speak for any Provider, is not bound to utilize any particular Provider, and does not have the authority to make binding commitments on behalf of any Provider.

~~6~~7.  **Insurer Solvency.** Marsh does not have or assume any responsibility for the solvency or ability to pay claims of any Provider. In the absence of contrary written instructions from the Company prior to placement, Providers with whom the Company's risks are placed will be deemed acceptable to the Company.

~~7~~8.  **Limit of Liability.** Marsh shall have no liability to the Company relating to or arising out of this Agreement or the services rendered by Marsh under this Agreement except to the extent arising out of the gross negligence or willful misconduct of Marsh in providing services hereunder. In no event shall Marsh have any liability for consequential, special, indirect or incidental damages.

~~8~~9.  **Taxes and Other Fees.** The Program Marsh may place on the Company's behalf may require the payment of surplus lines taxes and/or other fees and taxes to state regulators, boards, associations, governmental entities or other similar parties. Such taxes and/or fees will be paid the Company and will be identified on invoices covering those placements.

~~9~~10.  **Miscellaneous.** This Agreement contains the entire understanding of the parties with respect to the subject matter contained herein, superseding all prior agreements, understandings and negotiations with respect to such matters. This Agreement may be modified or otherwise amended and the observance of any term of this Agreement may be waived, only if such modification, amendment or waiver is in writing and signed by the party to be charged with same. This Agreement shall be binding upon and inure to the benefit of the parties' respective successors. Neither party shall have any liability for any failure or delay in performance of its obligations under this Agreement because of circumstances beyond its reasonable control, including without limitation, acts of God, fires, floods, earthquakes, acts of war or terrorism, civil disturbances, sabotage, accidents, unusually severe weather, governmental actions, power failures, computer/network viruses that are not preventable through generally available retail products, catastrophic hardware failures or attacks on its server.

~~11~~10.  **Notices.** Except as otherwise expressly provided in this Agreement, whenever notice is required by the provisions of this Agreement to be given (i) to the Company, such notice shall be in writing to Mr. Jeffrey M. Posner, 2333 North State Road 7 Suite B, Margate, FLA 33063, and (ii) to Marsh, such notice shall be in writing addressed to Marsh attention to ~~Daniel R. Lavelle~~Peter Mayraganis, 1166 Avenue of the Americas, New York, NY 10036.

Received Fax :           FEB 04 2005 3:37PM       Fax Station :   JM POSNER INC.              p . 5
FEB-04-2005   14:55          MARSH
                                                                                          P.05

Page 4
June 29, 2004~~June 24, 2004~~~~June 21, 2004~~~~May 11, 2004~~~~April 8, 2003~~
Mr. Jeffrey M. Posner

11.    Confidentiality of Documents and Information.

Marsh hereby acknowledges that ~~Grace~~ the Company may disclose certain Confidential Information to Marsh for purposes of placing a Program, and Marsh hereby agrees that it shall not use such Confidential Information for any purpose other than placing a Program. Marsh further agrees that, except as permitted by this~~e following paragraph~~ Section 11, Marsh shall not disclose Confidential Information to any person other than its personnel or ~~an authorized~~ representatives of ~~a~~ Provider~~s~~ or potential Providers. Marsh shall take all reasonably necessary and appropriate measures to ensure that Confidential Information is not disclosed by it to third parties except as permitted hereby and is used only by its personnel or authorized ~~representatives of a Provider~~ for the purpose of placing a Program. The transmission of Confidential Information via electronic data transmission networks which provide for the security of users' data shall be deemed consistent with Marsh's obligations hereunder unless such use is contrary to the Company's express instructions.

~~12.~~ The restrictions and agreements set forth in this Section 11 shall not apply to any Confidential Information: (a) which at the time disclosed to or obtained by Marsh is in the public domain; (b) which becomes part of the public domain through no act, omission or fault of Marsh; or (c) which Marsh's records demonstrate was developed independently by Marsh or was received by Marsh from a third party which Marsh had no reason to believe had any confidentiality or fiduciary obligation to the Company with respect to such information.

If Marsh is required to disclose Confidential Information by law, including, without limitation, pursuant to the terms of a subpoena, court order, administrative order, or other similar process or document, Marsh shall use reasonable efforts to give prior timely notice of such disclosure to the Company to allow the Company to seek a protective order, and Marsh ~~Insurance~~ shall provide reasonable cooperation to the Company~~, at the Company's expense~~ in connection with such efforts, and, absent the entry of such protective order, Marsh may and shall disclose only such Confidential Information that Marsh is advised by its counsel must be disclosed by law.

As between Marsh and the Company, Confidential Information shall be the sole and exclusive property of the Company. The provisions of this ~~Paragraph~~ Section 11~~2~~ shall survive the Termination of this Agreement.

~~12.    Work Product. All works of authorship, including but not limited to designs, plans, specifications, programs, computer output, policy forms and provisions, reports, data, memoranda, findings and recommendations of every description, methods, analysis, data and memorandum of every description, and every innovation, conception, improvement, discovery or invention, and any intellectual property rights associated therewith (collectively, "Work Product") which are created, utilized or developed by Marsh in conjunction with this engagement is and remain the property of Marsh; provided however, that the Company shall have and is hereby granted a perpetual, worldwide, non-transferable, non-exclusive license to use and exploit solely for purposes of a Program placed by Marsh, any Work Product delivered to the Company by Marsh in connection with this engagement. Notwithstanding the foregoing, Marsh shall acquire no rights of ownership in intellectual property rights subsisting in any material provided by the Company to Marsh in connection with this Agreement.~~

[illegible file path footer]

Page 5
June 29, 2004June 24, 2004June 21, 2004May 11, 2004April 8, 2002
Mr. Jeffrey M. Posner

Please indicate your agreement to the above terms and conditions by signing the enclosed copy of the Agreement and returning it to my attention. The second copy enclosed is for your records. ~~By signing below, you represent and warrant that, subject to any required Bankruptcy Court action with respect to the fees set forth in Section 2, this Agreement represents the valid and binding obligation of the Company enforceable against the Company in accordance with its terms.~~ Marsh acknowledges that the Program cannot be bound nor the fee paid without bankruptcy court approval.

We look forward to working with you.

Very truly yours,

MARSH USA INC.

By: ~~Daniel K. Lovsie~~ Ronald H. Reinartz
Title: ~~Senior~~ Vice President

10/6/04

Accepted and agreed this 5th day of Oct., 2004

——————————————— W.R. GRACE & CO.

By: Elyse Filon
Title: Vice President, Finance

Received Fax :      FEB 04 2005 3:37PM    Fax Station :    JM POSNER, INC.           p. 8
FEB-04-2005 14:56          MARSH
                                                                                    P.08

Page 7
June 29, 2004~~June 24, 2004~~~~June 21, 2004~~~~May 11, 2004~~~~April 8, 2002~~
Mr. Jeffrey M. Posner

- Prepare a summary of the indications received and present same to the Company;

Continue negotiations based on instructions from the Company until satisfactory binding indications have been received from potential Providers.

Marsh does not guarantee or make any representation or warranty that a Program can be implemented on terms acceptable to the Company or that non-binding or binding indications will be obtained from Providers.

At the end of this phase, Marsh will provide the Company with a synopsis of the indications and such other decision support as would be usual and customary.

**Phase III:**     **Implementation**

**Time required:**     2 – 3 weeks

Upon the Company's instructions, Marsh will use its best efforts to finalize the placement of the Program. Marsh will:

- Negotiate with Providers and seek to finalize policy or agreement wordings in conjunction with the Company and its counsel;
- Deliver binders confirming coverage Marsh has placed at the Company's direction
- Review policies and endorsements for accuracy and conformity to specifications and negotiated coverages
- Provide the Company with detailed invoices, including any applicable surplus lines taxes and fees

The Company should anticipate the need for legal representation during the policy-drafting phase, as Marsh is not in a position to offer legal services.

Page 6
June 29, 2004~~June 24, 2004June 21, 2004May 11, 2004April 8, 2002~~
Mr. Jeffrey M. Posner

**Appendix A**

*Project Scope*

The Services will be provided in three phases, as outlined below. Actual timing will depend in large part on factors outside of Marsh's control, e.g., delivery and quality of information by the Company and response times of Providers. For each phase below we indicate the range of time for completion. Certain activity in each phase can overlap with the next phase.

| **Phase I:** | **Due Diligence** |
|---|---|
| Time required: | 2 - 3 weeks (from receipt of data requested) |

Phase I involves a review of the pertinent data provided by the Company. This will allow Marsh to assess the Risks and develop a strategy for successfully structuring a Program. The purpose of this Phase is also to understand the potential exposure, available monetary resources to apply to the Risks, and to help Marsh articulate the level of coverage required and the merits of the Risks to Providers.
Marsh will:
- Conduct a review of the Hatco Facility's Remedial Action Plan and other data pertinent to the scope of this engagement as needed.
- Interview and correspond with Company's legal, environmental and risk management staff and outside counsel as needed.
- Seek to identify data-gaps and recommend remedy.
- Prepare, if requested, a strategic plan for presentation to appropriate decision-makers at Company.

| **Phase II:** | **Underwriting Presentation, Negotiation and Indications** |
|---|---|
| Time required: | 3 - 4 weeks |

Upon the Company's instruction, Marsh will use its best efforts to structure a Program. Marsh will:
- Pre-screen potential Providers to determine interest level and underwriting capacity;
- Seek to obtain signed confidentiality agreements from potential Providers, if requested by the Company;
- Prepare an underwriting précis suitable for Provider pre-screening;
- Report its findings to the Company;
- Assist in preparation of an underwriting data set and, based upon such data, prepare an underwriting model;
- Prepare a structuring memorandum outlining the proposed Program in terms of limit of liability, amount of risk to be retained by the Company, and anticipated pricing;
- Prepare, in conjunction with the Company and the Company's counsel, suggested policy wording;
- Provide the Company with a copy of the proposed underwriting package for its approval prior to release of the document to potential Providers;
- Meet with potential Providers and the Company to present Marsh's findings, the underwriting presentation, and the Company's objectives;
- Manage the underwriting information process;
- Negotiate with potential Providers until non-binding indications of likely pricing, capacity, and policy conditions are received from Providers;

C:\Documents and Settings\crosmvn\Local Settings\Temporary Internet Files\...
[illegible file path footer]