IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) ) ) | Chapter 11 |
|  |  | Case No. 01-01139 (JKF) |
| W. R. GRACE & CO., et al., | ) ) | (Jointly Administered) |
| Debtors. | ) ) ) ) ) | Related Docket No.: 7753 |
|  |  | **Objection Deadline:  April 18, 2005** |
| _____ |  | **Hearing Date:  April 25, 2005** |

**SUPPLEMENTAL OBJECTION OF THE OFFICIAL COMMITTEE OF ASBESTOS PROPERTY DAMAGE CLAIMANTS AND OFFICIAL COMMITTE OF ASBESTOS PERSONAL INJURY CLAIMANTS TO THE MOTION OF THE DEBTORS FOR AN ORDER AUTHORIZING THE DEBTORS TO ENTER INTO (A) AN EMPLOYMENT AGREEMENT WITH ITS CURRENT CHIEF OPERATING OFFICER UNDER WHICH HE WOULD ASSUME THE POSITION OF CHIEF EXECUTIVE OFFICER OF THE DEBTORS ("CEO") AND (B) A POST-RETIREMENT AGREEMENT WITH THE CURRENT CEO WHEREBY HE WOULD PROVIDE CONSULTING SERVICES RELATED TO DEBTORS' CHAPTER 11 CASES**

The Official Committee of Asbestos Property Damage Claimants (the "PD Committee") and the Official Committee of Asbestos Personal Injury Claimants (the "PI Committee"; and together with the PD Committee, the "Asbestos Committees"), by and through undersigned counsel, hereby file this Supplemental Objection (the "Supplemental Objection") to the Motion of the Debtors (the "Debtors") for an Order Authorizing the Debtors to Enter Into (A) an Employment Agreement with its Current Chief Operating Officer Under Which he Would Assume the Position of Chief Executive Officer of the Debtors ("CEO") and (B) a Post-Retirement Agreement with the Current CEO Whereby he Would Provide Consulting Services Related to Debtors' Chapter 11 Cases (the "Motion").  In support of the Supplemental Objection, the Asbestos Committees respectfully submit as follows:

{D0041270:1 }MIAMI 875851.3 7481715537
4/18/05 4:01 PM

## INTRODUCTION

Each of the Asbestos Committees filed its original objection (collectively, the "Original Objections") to the Motion primarily on the ground that the "Emergence Bonus" component of Mr. Festa's proposed CEO Agreement actually dis-incentivized Mr. Festa from working diligently towards confirmation of a plan of reorganization. Two days prior to the hearing on the Motion, in response to the Original Objections, the Debtors filed a reply in support of the Motion, wherein they argued for the first time that the "Emergence Bonus" compensated Mr. Festa both for leading the Debtors out of chapter 11 and for remaining CEO during the chapter 11.

As a result of the Debtors' sudden about-face, the Court granted the PD Committee's request to depose Nick Bubnovich, the Debtors' executive compensation expert, and Thomas A. Vanderslice, the Lead Independent Director of the Board of Directors of the Debtors. The results of the discovery are illuminating in many ways and heavily weigh in favor of denial of the Motion.

First, it is clear from the testimony of the Debtors' own expert that whether the controversial bonus is characterized as "emergence" or "retention," Mr. Festa's compensation package is well within the range of competitive practice without regard for the bonus. Second, the emergence/retention bonus structure is so unique and unprecedented that Mr. Bubnovich has never encountered a similar bonus structure in his 20 years of experience - - a fact by itself that seriously calls into question the business judgment exercised by the Debtors in determining to pay such bonus to Mr. Festa.

The Court is well aware that these cases have languished for over four years now and that the Debtors only filed their proposed plan of reorganization because the Court ordered them do

{D0041270:1 } 2

so. During this time, unsecured creditors have not received one dollar in respect of their pre-petition claims. The Debtors, on the other hand, have used the excuse of their bankruptcy to benefit their management. The Motion is yet another attempt to do the same.

## BACKGROUND

1. On April 2, 2001, each of the Debtors filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. On April 12, 2001, the Office of the United States Trustee (the "UST") appointed the PD Committee, the PI Committee, and the Official Committee of Unsecured Creditors (the "Unsecured Creditors Committee"). On June 18, 2001, the UST appointed the Official Committee of Equity Security Holders (the "Equity Committee"). On May 24, 2004, the Court appointed Mr. David T. Austern as the representative of future claimants (the "FCR").

3. On or about November 13, 2004, the Debtors filed their initial plan of reorganization in these cases, which was subsequently amended on or about January 13, 2005, to include the Unsecured Creditors Committee and the Equity Committee as co-proponents of the plan (as amended, the "Plan").

4. As the Court is well aware, although the Court has yet to approve the Disclosure Statement in connection with Plan, the PD Committee, the PI Committee and the FCR each vehemently object to the terms of the Plan on multiple grounds, including that the Plan impermissibly classifies all asbestos claimants as unimpaired under section 1126 of the Bankruptcy Code and that the Plan fails to comply with section 524(g) of the Bankruptcy Code.[1]

---

[1] Indeed, in response to his own counsel's question, Mr. Vanderslice recognized the preliminary nature of the Plan and the Debtors' ready, fire, aim approach to filing the Plan. He testified as follows:

## DISCUSSION

5.     The proposed compensation package for Mr. Festa includes the following components: (i) base salary; (ii) annual incentive awards; (iii) long-term incentive awards; and (iv) emergence/retention bonus. In his affidavits filed in support of the Motion, Mr. Bubnovich, the Debtors' compensation expert, stated that Total Direct Compensation ("<u>TDC</u>") was "the most appropriate measure" of analyzing an executive's compensation. Upon deposition, Mr. Bubnovich testified, "I concluded that [Mr. Festa's] total direct compensation or TDC, which is the sum of salary, annual incentive opportunity and the long term incentive opportunity, was within the range of competitive practice." <u>See</u> *Transcript of Deposition of Nick Bubnovich, dated April 13, 2005*, page 20-21.[2] Importantly, Mr. Bubnovich's conclusion <u>excluded</u> any consideration of the emergence/retention bonus.

6.     Mr. Bubnovich apparently justifies the better than competitive treatment of Mr. Festa on the basis that the Debtors are not typical chapter 11 debtors:

> Q:     Is it your opinion that excluding the emergence bonus or retention bonus, excluding the $1.75 million to that the pay package that's proposed to be paid to Mr. Festa is within the competitive range that you've described, the median to the 75th percentile?

---

Q:     (Mr. Weitzel) There was one question that was asked you about had you read the plan of reorganization. I just thought the record should be clear. Did you or the board review in any way the plan of reorganization before it was filed?

A:     Well, we had glorified Power Point presentations. I think we spent a couple of days on it one time I remember. In general we were engaged. But, you know, to read these big boilerplate things we get from K&E by the pound. So if your truthful you don't really - - now, if we had a final plan of reorganization where we closer to agreement I would expect I would spend a lot more time on it. I didn't want to do one of these read-but-not-understand kind of looks. So I think we did - - I believe we did the proper thing and so forth.

<u>See</u> *Deposition Transcript of Thomas A. Vanderslice dated April 14, 2005,* pages 72-73. Attached hereto as Exhibit A are the portions of the transcript from Mr. Vanderslices's deposition that are referred to in this Supplemental Objection.

[2] Attached hereto as Exhibit B are the portions of the transcript from Mr. Bubnovich's deposition that are referred to in this Supplemental Objection.

> A: I've answered that question.
>
> Q: Your answer is yes?
>
> A: That's correct. Although I didn't say it was between the median and the 75th percentile.
>
> Q: Within the competitive range?
>
> A: I said it was within the competitive range.
>
> Q: And it's your view, though, that because these are asbestos debtors, as opposed to debtors who are suffering operational difficulties, we should look at these slightly different?
>
> A: There is no doubt that the management of these companies received richer pay packages than those managers at company [sic] that are in Chapter 11 because of operational or financial difficulties.[3]

See *Bubnovich Transcript*, pages 114.

7. As the Court made abundantly clear at the initial hearing on the Motion, caution must be exercised to prevent an unjustifiable precedent. There is simply no justification to allow management in these cases to be compensated at a greater level because the Debtors' bankruptcy was related to their asbestos liabilities.

8. Moreover, the expressed justifications for the emergence/retention bonus, as advanced by the Debtors, are unfounded.[4] First, although the Debtors argue that Mr. Festa should be economically incentivized to lead them out of bankruptcy, see *Vanderslice Transcript,* page 46, the Debtors also point to Mr. Norris, the current CEO for the Debtors, as the person responsible for leading the Debtors reorganization efforts. See *Vanderslice Transcript,* page 11-12; Motion, ¶18. Indeed, Mr. Norris has been principally responsible for that role to date and the

---

[3] In each of the other asbestos cases that Mr. Bubnovich reviewed and believed are proper analogs - - *Armstrong, Federal-Mogul, USG and Owens-Corning* - - the retention bonuses that were paid, if at all, were all paid to executives who had been with the Company for a substantial period of time prior to the filing of their respective bankruptcy petitions. It is also worth mentioning that with the exception of *Owens-Corning*, Mr. Bubnovich served as the expert consultant for each of the debtors at the time their applicable bonus programs were put in place.

[4] It is noteworthy to mention that despite the Court's statements regarding the true nature of the bonus, the Debtors have not sought to change the terms or structure of the bonus. They have merely changed the title of the bonus from "Chapter 11 Emergence Bonus" to "Chapter 11 Retention Bonus." In another example of the Debtors' rigidity with respect to Mr. Festa's compensation, despite the Court's acknowledgement that 36 months is the appropriate timeframe to analyze the effect of the bonus on overall compensation, Mr. Bubnovich continued to maintain that 48 months is the proper benchmark. See *Bubnovich Transcript,* pages 86-90.

Court has already approved annual compensation for Mr. Norris of $425,000 per year for his continuing services in this regard.

9. Second, the notion that Mr. Festa should be compensated by way of a retention bonus for his service as CEO for the 48 months from the filing of the Plan is make-weight. See *Vanderslice Transcript,* page 46-47. As the Court well knows, a retention program is generally put in place at the beginning of a chapter 11 case to avert the flight of critical employees or to ameliorate the loss in value of a debtor's capital stock that was paid to or conferred upon management pre-petition. See *Bubnovich Transcript,* pages 46-49, 82-83.

10. Mr. Festa joined the Debtors knowing full well that they were chapter 11 debtors attempting to resolve their asbestos liabilities. In fact, one of the primary purposes of hiring Mr. Festa as the COO was to allow Mr. Norris to focus on the resolution of asbestos issues. See *Vanderslice Transcript*, page 16-18. Moreover, Mr. Festa was not an employee of the Debtors at the time they filed for bankruptcy and, accordingly, did not suffer a loss in the value of any prepetition equity holdings in the Debtors - - which, by the way, was a primary thrust of the Debtors' arguments in favor of their key employee retention program that was put in place at the onset of these cases.

11. In addition, at the time he was hired as COO, the Debtors regarded Mr. Festa as a "great candidate to be the potential COO and even the CEO at the time." See *Vanderslice Transcript*, page 68-69. It is telling, however, that when the Debtors originally employed Mr. Festa as the COO of the Debtors, they did not offer him participation in their existing key employee retention program, nor did they offer him a "one-man" retention program as they are seeking to do now despite their views about his exemplary qualifications. Moreover, Mr. Festa did not demand such perquisites as a condition of his employment.

## **CONCLUSION**

It is clear from the testimony of the Debtors' expert and Lead Independent Member of the Board of Directors that the emergence/retention bonus component of the CEO Agreement should not be approved. Mr. Festa's proposed compensation, exclusive of the emergence/retention bonus, is indisputably within the range of competitive practice. The proposed additional bonus renders the overall compensation too rich for Mr. Festa and the structure has no precedent in the market place. The fact that these Debtors are "asbestos debtors" does not warrant such excess being paid, especially considering the period of time that these case have languished.

WHEREFORE, the Asbestos Committees respectfully request that the Court enter an order denying the Motion to the extent that it seeks to pay the Emergence Bonus to Mr. Festa in accordance with the terms of the Festa Employment Agreement, sustaining the Original Objections and Supplemental Objection and granting such other and further relief as the Court deems just and proper.

Dated: April 18, 2005                    Respectfully submitted,

FERRY JOSEPH & PEARCE, P.A.

/S/ Theodore Tacconelli
Theodore J. Tacconelli
(Del. Bar No. 2678)
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, Delaware 19899
Telephone: (302) 575-1555

-and-

BILZIN SUMBERG BAENA
   PRICE & AXELROD LLP
Scott L. Baena (Admitted Pro Hac Vice)
Jay M. Sakalo (Admitted Pro Hac Vice)
Allyn Danzeisen (Admitted Pro Hac Vice)
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131-2336
Telephone: (305) 374-7580

CO-COUNSEL FOR THE OFFICIAL
COMMITTEE OF ASBESTOS PROPERTY
DAMAGE CLAIMANTS

-and-

CAMPBELL & LEVINE, LLC


/S/ Marla Rosoff Eskin
Marla R. Eskin (I.D. No. 2989)
Mark T. Hurford (I.D. No. 3299)
800 North King Street, Suite 300
Wilmington, DE 19801
(302) 426-1900

–and–

CAPLIN & DRYSDALE, CHARTERED
Elihu Inselbuch
399 Park Avenue
New York, NY 10022–4614
(212) 319-7125

–and–

CAPLIN & DRYSDALE, CHARTERED
Peter Van N. Lockwood
One Thomas Circle, N.W.
Washington, D.C. 20005
(202) 862-5000

Counsel to the Official Committee of
   Asbestos Personal Injury Claimants