# EXHIBIT B

{D0007919:1 }

```
                                                                    1

  1              IN THE UNITED STATES BANKRUPTCY COURT

  2                 FOR THE DISTRICT OF DELAWARE

  3      - - - - - - - - - - - - - -

  4     In re:                    )    Chapter 11

  5     W. R. GRACE & CO., et al., )   Case No. 01-01139 (JKF)

  6              Debtors.          )   (Jointly Administered)

  7      - - - - - - - - - - - - - -

  8                                    Wednesday, April 13, 2005

  9                                    1:00 p.m.

 10

 11         Deposition of NICK BUBNOVICH, held at the law

 12     offices of Kirkland & Ellis, 655 Fifteenth Street, N.W.,

 13     Suite 1200, Washington, D.C. 20005, before Jonathan

 14     Wonnell, a Registered Professional Court Reporter and

 15     Notary Public of the District of Columbia.

 16

 17

 18

 19

 20

 21

 22
```

CERTIFIED COPY

```
                                                        20
 1      Q.     Are you aware of what it is now under
 2   this contract?
 3      A.     It is 350 percent of his salary.
 4      Q.     Okay.  For some reason it's written
 5   oddly.  Two times 175 percent.  I was wondering
 6   about why that was and I figured it was something
 7   peculiar to the industry.  Is he entitled to
 8   anything else under the agreement?  And again,
 9   leave aside for now the emergence bonus.
10      A.     He's entitled to the same sort of
11   benefits is perquisites that other members of
12   senior management at Grace are entitled to.  For
13   example, participation in the 401(k) plan.
14   Essentially standard benefits and perks.
15      Q.     Nothing distinguishable for hill role as
16   CEO?
17      A.     No.  Nothing that I can recall.
18      Q.     Okay.  Based on the foregoing components
19   of his compensation, what conclusions did you reach
20   about the proposed compensation to be paid to
21   Mr. Festa?
22      A.     I concluded that his total direct
```

21

1  compensation or TDC, which is the sum of salary,
2  annual incentive opportunity and the long term
3  incentive opportunity, was within the range of
4  competitive practice.
5       Q.   What does the range of competitive
6  practice mean?
7       A.   Across different industries, and for
8  that matter across corporate America in general,
9  there are various amounts that are paid to
10 incumbents in particular positions.  In this case
11 we're obviously talking about the CEO position.
12 And when I say within the range of competitive
13 practice I refer to an amount that is consistent
14 with that paid to the CEOs of similar-sized
15 corporations or similar corporations within the
16 company's industry.
17           If you think of it in terms of
18 distribution, there would be a cluster around
19 certain points.  If we thought about all the pay of
20 all the CEOs who were CEO at companies between $1
21 and $3 billion in revenue, most of them would be
22 clustered in the center, think of a Bell curve, and

                                                                       46

1     Q.    And it's those payment prongs that make
2   it special?
3     A.    Yes.
4     Q.    I think you testified earlier that you
5   haven't advised any other debtors that have had an
6   emergence bonus that has this retention component
7   as well.  Is that correct?
8     A.    I don't think I said that.  But --
9     Q.    Okay.  Let me -- of the five to ten
10  debtors that you have advised that have emergence
11  bonuses for their executives, are there any other
12  than Mr. Festa's agreement that have this payment
13  provision that allows the executive to be paid upon
14  emergence, or if no emergence for staying for a
15  certain amount of time after the plan of
16  reorganization has been filed?
17    A.    No, I don't think so.
18    Q.    So this is out of the ordinary in your
19  experience?
20    A.    A retention bonus is not out of the
21  ordinary.
22    Q.    Is a bonus that provides for a payment