IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |

**Objection Deadline: June 10, 2005**
**Hearing Date: June 27, 2005 at 12:00 p.m.**

**MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO ENTER INTO A POST-RETIREMENT CONSULTING AGREEMENT WITH ITS FORMER GENERAL COUNSEL AND CHIEF RESTRUCTURING OFFICER TO PROVIDE CONSULTING SERVICES RELATED TO THE DEBTORS' PENDING LITIGATION AND CHAPTER 11 CASES**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby move this Court for entry of an order authorizing the Debtors to enter into a post-retirement agreement with their former General Counsel and Chief Restructuring Officer, David B. Siegel, for consulting services related to the Debtor's pending litigation and chapter 11 cases (the "Motion"). In support of this Motion, the Debtors respectfully state as follows:

[1]The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

**Jurisdiction**

1. This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 363(b) of chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code").

**Background**

3. On April 2, 2001, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing their respective chapter 11 cases (collectively, the "Chapter 11 Cases"), which have been consolidated for administrative purposes only. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors-in-possession.

**Mr. Siegel's Employment With the Debtors**

4. On September 1, 1998, Mr. Siegel was elected Senior Vice President and General Counsel of the Debtors. Prior to his election as General Counsel, Mr. Siegel served as a corporate counsel for the Debtors from 1977 until 1993; and from 1993 until 1998, he served as Vice President and Deputy General Counsel of the Debtors. As General Counsel, since 1998, Mr. Siegel has been heavily involved in managing the Debtors' major pending litigation and is therefore intimately familiar with all aspects of that litigation.

5. In April 2001, soon after the commencement of the Chapter 11 Cases, Mr. Siegel was also elected Chief Restructuring Officer ("CRO") of the Debtors. In that position, Mr. Siegel has overseen most aspects of the Chapter 11 Cases for the Debtors, including development and filing of the Debtors' proposed plan of reorganization, the filing of litigation-

related motions, and negotiating with members of the official committees in the Chapter 11 Cases. Specifically, for example, Mr. Siegel was the Debtors' lead representative in their efforts to negotiate a consensual plan of reorganization; and, if the Court approves this Motion, the Debtors intend to continue Mr. Siegel's participation in future negotiations regarding a consensual plan.

6. On April 26, 2005, after more than 28 years of service with the Debtors, Mr. Siegel retired, and therefore ceased performing the duties of General Counsel and CRO of the Debtors.[2]

7. The Debtors have determined that the Debtors' pending litigation and the Chapter 11 Cases could be more efficiently managed if the Debtors were able to continue to benefit from Mr. Siegel's experience, advice and guidance regarding those matters, which, in turn, would promote the Debtors' efforts to emerge from bankruptcy. Conversely, losing Mr. Siegel's services in this regard would unduly delay and complicate the continued progress towards resolving pending litigation and advancing the Debtors' reorganization.

**Mr. Siegel's Post-Retirement Consulting Agreement**

8. The Debtors are requesting that the Court authorize and approve an agreement between the Debtors and Mr. Siegel, which would take effect as of May 1, 2005 (i.e., essentially, as of his retirement date), under which Mr. Siegel would provide consulting services regarding

[2] In response to Mr. Siegel's retirement, the Debtors have elected a new General Counsel, Mark Shelnitz, who was promoted from his prior position as Associate General Counsel. At this time, the Debtors do not intend to name a new CRO; rather, Mr. Siegel will assist the General Counsel and CEO in managing the Chapter 11 Cases and pending litigation.

the Chapter 11 Cases and pending litigation[3], under terms specified in the letter agreement attached hereto as Exhibit A (the "Siegel Consulting Agreement").

9. The Siegel Consulting Agreement has been accepted by Mr. Siegel, and the Board approved the Siegel Consulting Agreement (subject to Court approval) at its meeting on April 27, 2005.

10. Under the Siegel Consulting Agreement, Mr. Siegel would continue to monitor and analyze developments regarding the Debtors' pending litigation and the Chapter 11 Cases and continue to provide advice and guidance to the Debtors with respect thereto. It is anticipated that Mr. Siegel would perform those services for approximately 20 hours per week, for 45 weeks (for a total of approximately 900 hours), during each twelve month period during the term of the Agreement. This represents a work schedule that is approximately one-half Mr. Siegel's pre-retirement regularly scheduled 40 hour work week. Mr. Siegel would perform these services as an independent contractor and would retain no authority to enter into agreements on the Debtors' behalf, nor any management or supervisory authority.

11. As compensation for those consulting services, Mr. Siegel would receive a base monthly retainer equal to $37,500 per month (i.e., $450,000 annually), plus $500.00 for each hour that Mr. Siegel provides such services in excess of 900 hours during any twelve month term of the Agreement. The base monthly retainer is slightly less than one-half of the amount of Mr.

---

[3] In addition, the Siegel Consulting Agreement provides that Mr. Siegel could also be asked to provide additional consulting services related to his other former responsibilities with the Debtors. During Mr. Siegel's employment with the Debtors, he has provided legal advice with regard to several significant transactions and events, in addition to his involvement with all significant pending litigation. Thus, the Debtors anticipate that continued access to Mr. Siegel's prior experience and his legal advice regarding those transactions and events will be beneficial to the Debtors to the extent that issues related thereto must be addressed by the Debtors after Mr. Siegel's retirement.

Siegel's pre-retirement targeted annual compensation (which includes base salary, targeted annual incentive compensation and targeted annual long-term incentive compensation). There are no other compensation components to the Siegel Consulting Agreement.

12. The Siegel Consulting Agreement may be terminated by the Debtors or Mr. Siegel at any time upon 60 days' written notice, without the obligation to make any post-termination payments.

13. The Debtors believe, in their sound business judgment, that the Siegel Consulting Agreement is in the best interest of the Debtors, as well as the Debtors' stakeholders. Mr. Siegel has been involved in the Chapter 11 Cases since the commencement of the Cases and has therefore developed an overall perspective of the issues faced by the Debtors that will be useful in promoting the resolution of the Cases. Mr. Siegel's background and knowledge regarding these Cases, along with his professional skills, will facilitate the Debtors' efforts to emerge from bankruptcy.

14. In addition, prior to the commencement of the Chapter 11 Cases, and continuing thereafter until his retirement, Mr. Siegel has been involved with the Debtors' significant pending litigation matters. Therefore, the Siegel Consulting Agreement will also provide for an uninterrupted continuation of the Debtors' efforts to manage those matters.

**Relief Requested**

15. The Debtors request that the Court authorize and approve the Debtors' entry into the Siegel Consulting Agreement pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.

**Basis For Relief**

16. The Siegel Consulting Agreement provides significant benefits to the Debtors' estates by obtaining Mr. Siegel's consulting services regarding the Chapter 11 Cases and the Debtors' pending litigation. The Debtors in their business judgment believe the Siegel Consulting Agreement is reasonable in light of the circumstances surrounding the Debtors' Chapter 11 Cases and its pending litigation and is in the best interests of the Debtors' estates and their creditors, and should be approved.

17. Section 105(a) of the Bankruptcy Code "permits the court to issue any order that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a). Section 363(b) of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may use, ... other than in the ordinary course of business, property of the estate." A court has the statutory authority to authorize a debtor to use property of the estate pursuant to section 363(b)(1) of the Bankruptcy Code when such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); see also, Fulton State Bank v. Schipper, 933 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by "some articulated business justification"); Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); In re Ernst Home Center, Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

18. Under section 363(b) of the Bankruptcy Code, a debtor has the burden to establish that it has a valid business purpose for using estate property outside the ordinary course of

business. See Lionel Corp., 722 F.2d at 1070-71 (2d Cir. 1983). Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest belief that the action was in the debtor's best interest. See In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992). A party in interest seeking to challenge the debtor's valid business purpose must "produce some evidence supporting its objections." Montgomery Ward, 242 B.R. at 155.

19. Generally, courts authorize debtors to use assets of the estate to employ and compensate executives, including provisions for bonus and severance packages. See Montgomery Ward, 242 B.R. at 155 (approving retention bonuses as within debtor's sound business judgment); In re America West Airlines, Inc., 171 BR. 674, 678 (Bankr. D. Ariz. 1994) (approving success bonuses to certain officers and employees as within debtor's sound business judgment); In re Interco Inc., 128 BR. 229, 234 (Bankr. E.D. Mo. 1991) (authorizing the debtor to assume prepetition severance contracts and approving performance based retention program to ensure critical employees remained with the debtor).

20. The Debtors exercised sound business judgment in entering the Siegel Consulting Agreement because, as stated above, that agreement will provide the Debtors with a valuable resource with respect to the Chapter 11 Cases and the Debtors' pending litigation, as well as promoting continuity regarding the Debtors' efforts to emerge from chapter 11.

21. The compensation terms of the Siegel Consulting Agreement are also reasonable, based upon (a) the assumption that the Siegel Consulting Agreement will require Mr. Siegel to dedicate approximately one-half of a regular 40 hour work week to his duties thereunder and (b) each party's ability to terminate the Siegel Consulting Agreement without incurring any termination costs.

**Notice**

22. Notice of this Motion has been given to: (a) the United States Trustee, (b) counsel to the DIP Lender, (c) counsel to The Chase Manhattan Bank as agent for the Debtors' pre-petition lenders, (d) counsel to the Committees, and (e) all those parties that requested service and notice of papers in accordance with Fed.R.Bankr.P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

**No Prior Request**

23. No prior motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request entry of an order authorizing the Debtors to enter the Siegel Consulting Agreement with Mr. Siegel, and granting such other and further relief as is just and proper.

Dated: May 23, 2005

Respectfully submitted,
KIRKLAND & ELLIS
David M. Bernick, P.C.
James H.M. Sprayregen, P.C.
Janet Baer
James W. Kapp III
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession