## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |

**Objection Deadline: June 10, 2005, at 4:00 p.m.**
**Hearing Date: June 27, 2005 at 12:00 p.m.**

### DEBTORS' EIGHTH MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 1121(d) EXTENDING DEBTORS' EXCLUSIVE PERIODS IN WHICH TO FILE A CHAPTER 11 PLAN AND TO SOLICIT VOTES THEREON

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors")
hereby move the Court (the "Motion") for entry of an order, pursuant to section 1121(d) of title
11 of United States Code (as amended, the "Bankruptcy Code"), (a) extending the period under
section 1121(b) of the Bankruptcy Code during which the Debtors have the exclusive right to file
a chapter 11 plan of reorganization (the "Exclusive Filing Period") through and including

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

November 23, 2005, and (b) extending the period under section 1121(c)(3) of the Bankruptcy Code during which the Debtors have the exclusive right to solicit acceptances thereof (the "Exclusive Solicitation Period" and, together with the Exclusive Filing Period, the "Exclusive Periods") through and including January 23, 2006.

The Court should grant the Motion because the Debtors continue to make progress in their development of a confirmable chapter 11 plan of reorganization in these chapter 11 cases, and the requested relief will allow the Debtors to continue moving forward with those aspects of the chapter 11 cases which need resolution before a plan can be confirmed. The Debtors filed their Disclosure Statement and Plan of Reorganization on November 13, 2004, and their First Amended Disclosure Statement and Joint Plan of Reorganization (the "Amended Plan") on January 13, 2005. The Official Committee of Unsecured Creditors and the Equity Committee are joint proponents of the Amended Plan. The Asbestos Committees and the Future Claimants Representative do not currently support the Plan. At a hearing on January 21, 2005, this Court directed the Debtors to work with the Asbestos Committees and the Future Claimants Representative to develop case management procedures for estimating the value of asbestos-related claims, and the estimation process has since been set in motion. Discovery with respect to Asbestos Property Damage Claims is progressing, and a hearing is set for August 17, 2005, with respect to the Asbestos Personal Injury Proof of Claim/Questionnaire and Case Management Order. The requested relief would allow the Debtors to continue moving toward the ultimate estimation of asbestos-related claims, and therefore toward confirmation of a plan of reorganization, without the distraction of addressing competing plans.

2

## Background

1.    On November 23, 2004, the Debtors filed their Seventh Motion for an Order Pursuant to 11 U.S.C. § 1121(d) Extending Debtors' Exclusive Periods In Which to File a Chapter 11 Plan and to Solicit Votes Thereon (the "Seventh Motion").

2.    The Seventh Motion was heard during the Debtors' January omnibus hearing, and on January 21, 2005, the Bankruptcy Court entered an Order Pursuant to 11 U.S.C. § 1121(d) Further Extending Debtors' Exclusive Periods in Which to File a Chapter 11 Plan and to Solicit Votes Thereon (the "Seventh Exclusivity Order"). The Seventh Exclusivity Order (a) extended the Debtors' exclusive period to file a reorganization plan (or plans) through and including May 24, 2005, and (b) extended the Debtors' exclusive solicitation period through and including July 24, 2005.

3.    Also on January 21, 2005, the Court instructed the Debtors and the Asbestos Property Damage Committee to negotiate a case management order to govern the estimation of property damage liabilities. The Court further instructed the Debtors to work with the Asbestos Personal Injury Committee and the Future Claimants Representative to negotiate a case management order pertaining to the estimation of the Debtors' asbestos personal injury liabilities.

4.    Pursuant to the Court's instructions to the Debtors and the Asbestos Property Damage Committee, the parties are negotiating a case management order to govern the estimation of asbestos property damage liabilities (the "PD CMO"), and discovery is progressing. The PD CMO will set forth a schedule for discovery and pre-trial briefing in connection with the estimation of asbestos property damage liabilities. The schedule currently being discussed extends through at least February 15, 2006.

3

5.    Following unsuccessful negotiations among the Debtors, the Asbestos Personal Injury Committee, and the Future Claimants Representative, the Court on April 24, 2005, entered an Order Setting Briefing Schedule and Hearing Regarding Case Management Order and Proof of Claim/Questionnaire for the Estimation of Asbestos Personal Injury Liabilities (the "PI CMO Order"). The PI CMO Order provides a schedule according to which the Debtors and other parties in interest may submit briefing regarding the issues of entering a case management order and whether to approve a questionnaire soliciting information from Asbestos Personal Injury Claimants for the purposes of estimating the Debtors' liability to such Claimants. Pursuant to the PI CMO Order, the Debtors have already submitted briefing on these issues and await the response by any parties in interest. A hearing on the PI CMO is set for August 17, 2005.

### Relief Requested

6.    By this Motion, the Debtors seek to extend the Exclusive Filing Period six months through and including November 23, 2005. The Debtors also seek to extend the Exclusive Solicitation Period six months, through and including January 23, 2006. The Debtors further request that such an order be without prejudice to the Debtors' rights to seek additional extensions of the Exclusive Filing Period and the Exclusive Solicitation Period.

### Basis for Relief

7.    Section 1121(d) of the Bankruptcy Code grants this Court authority to extend the Exclusive Periods "for cause" after notice and a hearing. Although the term "cause" is not defined by the Bankruptcy Code, the legislative history indicates that it is to be viewed flexibly "in order to allow the debtor to reach an agreement." H.R. Rep. No. 95, 95th Cong., 1st Sess. 232 (1997); see also, In re McLean Indus., Inc., 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987) (quoting H.R. Rep. No. 595, 95th Cong., 2d Sess. 231 (1978), reprinted in 1978, U.S.C.C.A.N.

4

5963, 6190); and In re Public Serv. Co. of New Hampshire, 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("legislative intent . . . [is] to promote maximum flexibility").

8.    To facilitate this legislative intent, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and nonfinancial information concerning the ramifications of any proposed plan for disclosure to creditors. See, e.g., McLean Indus., 87 B.R. at 833-34; In re Texaco Inc., 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987). The decision to extend a debtor's Exclusive Periods is committed to the sound discretion of the bankruptcy court based upon the facts and circumstances of each particular case. See, e.g., First American Bank of New York v. Southwest Gloves and Safety Equip., Inc., 64 B.R. 963, 965 (D. Del. 1986).

9.    Courts have relied on a variety of factors to determine whether cause exists to extend the Exclusive Periods, each of which may provide sufficient grounds for such an extension. These factors include (a) the size and complexity of the case, (b) the necessity of sufficient time to negotiate and prepare adequate information, (c) the existence of good faith progress toward reorganization, (d) whether the debtor is paying its debts as they come due, (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan, (f) whether the debtor has made progress in negotiating with creditors, (g) the length of time the case has been pending, (h) whether the debtor is seeking the extension to pressure creditors and (i) whether unresolved contingencies exist. See In re Express One International, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (finding cause to extend the Exclusive Periods where the debtor has been diligent in its attempts to reorganize and the extension was not sought for an indefinite period); see also, In re Gibson & Cushman Dredging Corp., 101 B.R. 405, 409-10 (E.D.N.Y. 1989) (listing some of the above-referenced factors); In re Grand Traverse Development Co. Ltd.

5

Partnership, 147 B.R. 418, 420 (Bankr. W.D. Mich. 1992) (same); In re General Bearing Corp.,

136 B.R. 361, 367 (Bankr. S.D.N.Y. 1992) (same); and In re Southwest Oil Co. of Jourdanton,

84 B.R. 448, 451-54 (Bankr. W.D. Tex. 1987) (same).

**Argument**

10.    The Debtors submit that each of the above-described factors supports extending

the Exclusive Filing Period and the Exclusive Solicitation Period.  These chapter 11 cases were

filed as a result of mounting asbestos-related litigation liabilities.  Defining these liabilities and

then providing for the payment of valid claims on a basis that preserves the Debtors' core

business operations is a complex process that is central to resolving these chapter 11 cases.  This

process is now firmly under way, as the Debtors are fully engaged in discovery with the

Asbestos Property Damage Committee.  Additionally, the Court has entered a briefing schedule

with respect to the issues of entering a case management order for estimation of asbestos

personal injury liabilities and whether to approve a questionnaire soliciting information from

Asbestos Personal Injury Claimants for the purposes of estimating the Debtors' liability.

11.    Regardless of the means chosen by the Court to estimate the Debtors' asbestos-

related liabilities, the process will almost certainly be a time-consuming and complex one toward

which the Debtors and the Asbestos Parties must devote a tremendous amount of time and a

large number of resources.  As the Debtors remain focused on such estimation process, the relief

requested herein would afford the Debtors an opportunity to continue to work toward estimation

without the ancillary distraction of addressing potential, competing plans.  Further, the Debtors

and certain of the Asbestos Parties continue to engage in discussions concerning a consensual

plan.  The requested relief would allow the Debtors to continue to utilize their resources in a

manner that will most effectively and expediently further the estimation process while also

6

providing the opportunity for the Debtors to continue discussions with other constituents regarding amendments that could result in a consensual plan.

12.    Further, at all times during the course of these chapter 11 cases, the Debtors have acted in good faith and have continued to pay their post-petition obligations.  In light of these circumstances, the Debtors clearly are not seeking a further extension in order to unduly pressure creditors, nor will such an extension harm the Debtors' creditors or other parties in interest.

13.    Instead, the Debtors seek an extension so that they may, in accordance with the instructions of this Court, continue to pursue a resolution to Asbestos-Related Claims that will be fair and equitable to both the Debtors and Asbestos Claimants.  Terminating the Exclusive Periods would defeat the primary purpose of section 1121 of the Bankruptcy Code, which is to afford the Debtors a meaningful and reasonable opportunity to negotiate with their creditors and to then propose and confirm a consensual plan of reorganization.

14.    Further, in light of the size and complexity of these chapter 11 cases and in light of the current time frame for resolving the Asbestos-Related Claim issues, which will be a critical component of the Debtors' ultimate plan of reorganization, the Debtors' request for an extension of six months is reasonable.  Given the complex circumstances of this case and the unusual length of time required to properly estimate the asbestos-related claims and determine how such claims should be valued in the Debtors' plan of reorganization, the Debtors' request is not beyond the range of extensions granted by this and other courts in large reorganization cases, which did not involve such complexities in their administration.  See, e.g., In re Loewen Group Int'l, Inc., Case No. 99-1244 (PJW) (Bankr. D. Del. June 1, 1999) (Exclusive Periods extended for 25 months because ongoing litigation complicated the resolution of the chapter 11 case). Indeed, even when no complex litigation was key to resolving chapter 11 cases, courts have

7

routinely granted Exclusive Period extensions covering several years. <u>See, e.g.</u>, <u>In re Phar-Mor, Inc.</u>, Case No. 92-41599 (Bankr. N.D. Ohio) (Exclusive Periods extended approximately three years).

15.    Accordingly, extending the Exclusive Periods a further six months as requested by the Debtors is reasonable and appropriate under the circumstances.

<u>Notice</u>

16.    Notice of this Motion has been given to (a) the Office of the United States Trustee, (b) counsel to the debtor-in-possession lenders, (c) counsel to the committees appointed by the United States Trustee, and (d) those parties that requested papers under Fed. R. Bankr. P. 2002.

WHEREFORE, the Debtors respectfully request that the Court enter an order: (a) extending the Debtors' Exclusive Filing Period through and including November 23, 2005; (b) extending the Debtors' Exclusive Solicitation Period through and including January 23, 2006; (c) without prejudice to the Debtors' rights to seek additional extensions of the Exclusive Filing Period and the Exclusive Solicitation Period, and (d) granting such other relief as may be fair and equitable.

Dated: May 23, 2005

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Joseph S. Nacca
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession