## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

## FEE AUDITOR'S FINAL REPORT REGARDING
## FEE APPLICATION OF KIRKLAND & ELLIS
## FOR THE FIFTEENTH INTERIM PERIOD

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Fee Application of Kirkland & Ellis for the Fifteenth Interim Period</u>.

## BACKGROUND

1.      Kirkland & Ellis was retained as counsel to the Debtors.  In the Application, Kirkland & Ellis seeks approval of fees totaling $2,286,400.00 and costs totaling $112,633.42 for its services from October 1, 2004, through December 31, 2004.

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the

United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on K&E an initial report based on our review, and received a response from K&E, portions of which response are quoted herein.

## DISCUSSION

3.      In our initial report, we noted four hearings or meetings attended by multiple professionals. (See Exhibit A.) We asked K&E to examine the exhibit and in each instance explain the need for each professional's presence and the particular area of expertise each brought to the hearing or meeting. K&E's response is provided as Response Exhibit 1. We appreciate the response and offer no objection to these fees.

4.      We noted six conference calls in which three or more professionals participated. (See Exhibit B.) We asked K&E to examine the exhibit and in each instance explain the need for each professional's presence and the particular area of expertise each brought to the conference call. K&E's response is provided as Response Exhibit 2. We appreciate the response and offer no objection to these fees.

5.      We noted that during the Application period, RL ($210), SAP ($210), TDS ($175), AMB ($145), TJW ($130), SK ($130) and TJM ($130) spent a total of 86.10 hours for fees of $13,572.00 on file maintenance, document printing and distribution and other seemingly ministerial tasks. (See Exhibit C.) We asked the firm to explain why these tasks should not be viewed as generally ministerial and therefore part of normal firm overhead. K&E responded as follows:

> The Initial Report requests further explanation as to why a number of the tasks performed by K&E legal assistants should not be viewed as generally ministerial and therefore part of normal firm overhead.

> Because of the extraordinary complexity of the W. R. Grace
> bankruptcy cases, the matter continues to generate an uncommonly
> voluminous amount of documentation related not only to typical
> bankruptcy issues, but also to matters dealing with the myriad of
> asbestos-liability issues and other litigation issues. It is essential that
> the files, records, and research materials generated in this case be
> retrieved, organized, and distributed by K&E legal assistants in such
> a manner as to allow K&E attorneys to react expediently and
> efficiently to any matters that arise, particularly those involving
> asbestos liability. Additionally, K&E legal assistants are often asked
> to assist attorneys with review of these materials in order to organize
> them in a fashion that will most effectively assist the K&E attorneys
> working on the Grace bankruptcy. As such, K&E believes that
> performing the tasks referenced on <u>Exhibit C</u> to the Initial Report
> requires work of a far more demanding nature than would the merely
> ministerial functions that constitute K&E's normal firm overhead.

While we appreciate the complexity of the case as noted in the response, we would maintain that

most of the cited tasks (printing, filing, distribution) are ministerial, or, at least could have been

accomplished by professionals billing at much lower rates. On the issue of adjusting rates

downward for certain tasks, the Third Circuit seems fond, in the bankruptcy context, of quoting its

opinion in <u>Ursic v. Bethlehem Mines</u>, 719 F.2d 670, 677 (3d Cir. 1983)that "[r]outine tasks, if

performed by senior partners in large firms, should not be billed at their usual rates. A Michelangelo

should not charge Sistine Chapel rates for painting a farmer's barn." <u>See</u> <u>Zolfo, Cooper & Co.v.

Sunbeam-Oster Co., Inc</u>., 50 F.3d 253, 260 (3rd Cir. 1995). While we realize that these timekeepers

are not presented as senior partners nor billed as such, we believe the spirit of the Court's opinion

would still apply in this instance. We thus recommend a reduction of $6,786.00, which represents

one-half of the cited fees.

      6.     We note four instances in which the time entries do not match the totals of the

parenthetical entries. (See Exhibit D.) The total difference in stated fees is $605.50. We asked

K&E to examine the exhibit and state whether these instances represent inadvertent miscalculations and should therefore be deducted from the fee total.  K&E's response is provided below.

> The Initial Report identifies four instances in which the summary of hours differs from the totals of the parenthetical time entries.  K&E agrees that the respective time entries should be reduced as noted in the Initial Report.  K&E agrees with the reduction of $605.50.

We appreciate the response and recommend a reduction of $605.50 in fees.

7.      We noted two airfares totaling $3,924.80 that may be excessive.  The entries are provided below.

| | | |
|---|---|---|
| 11/17/2004 | 1,962.40 | Laurence Urgenson, Airfare, Missoula, Montana, 11/17/04 to 11/18/04, (Client Meeting) |
| 11/17/2004 | 1,962.40 | Tyler Mace, Airfare, Missoula, Montana, 11/17/04 to 11/18/04, (Meeting) |

We asked K&E for more detail regarding these airfares.  K&E responded as follows:

> The Initial Report identifies two airfares for which it requests documentation that the fares were booked at coach rate.  The K&E attorneys who billed those airfares have confirmed that the flights were booked at coach rate.  Due to the limited flights to Missoula, Montana and the lack of prior advanced notice that the flights needed to be booked, the rates were unusually high.

We appreciate the response and offer no objection to these expenses.

8.      We noted two hotel expenses totaling $1,137.98 that appear to be excessive.  The entries are provided below.

| | |
|---|---|
| 12/7/2004 | 568.99 Lori Sinanyan, Hotel, New York,NY, 12/07/04, (Client Meeting) |
| 12/7/2004 | 568.99 Bennett Spiegel, Hotel, New York,NY, 12/07/04, (Client Meeting) |

We recommend a reasonable ceiling of $250 per night ($350 for New York) for hotel stay.  We asked K&E to explain  why these expenses should not be viewed as excessive.  The firm

responded as follows:

> The Initial Report notes two hotel expenses that exceed the recommended ceiling of $350 per night for a hotel stay in New York City. These charges were for $568.99 each for Bennett Spiegel and Lori Sinanyan, who attended the meeting discussed in paragraph 1(d), above. Based on a review of the attorneys' notes, the Debtors believe that these charges should be stricken from K&E's bill. K&E will, therefore, reduce the bill by $1,137.98.

We appreciate the response and recommend a reduction of $1,137.98 for these expenses.

9.      We noted 10 working meal entries totaling $3,215.47 that may be excessive. The entries are provided as Exhibit E. We recommend reasonable ceilings of $15 per person for breakfast, $25 per person for lunch and $50 per person for dinner. We asked K&E to provide greater detail regarding these meal expenses. K&E's response is provided as Response Exhibit 3. We appreciate the response and concur with all of the voluntary reductions. These total $771.05. Based on the response, for the November 17, 2004, entry of $987.80, we calculate a reasonable total of $500.00 for this meal entry (20 people multiplied by $25 each). We thus recommend a reduction of $487.80 for this entry. Therefore, we recommend a total reduction of $1,258.85 for these working meal expenses.

10.      We noted seven overtime meal entries totaling $924.09 that may be excessive. The entries are provided as Exhibit F. We asked K&E to provide greater detail regarding these expenses. K&E's response is provided as Response Exhibit 4. We appreciate the response and offer no objection to these expenses.

11.      We noted a travel meal entry of $85.95 that may be excessive. The entry is provided below.

12/30/2004      85.95   Deanna Boll, Travel Meal, Chicago, IL, 12/30/04, (Client Meeting), Dinner

We asked K&E to provide greater detail regarding this expense.  K&E responded as follows:

> The Initial Report questions whether a travel meal ($85.95, billed by Deanna Boll on December 30, 2004) was excessive.  Deanna Boll is a senior associate in K&E's New York office with extensive experience in handling reorganization plans that include 524(g) injunctions.  She assisted with the development of the plan and other Plan Documents and traveled to the Chicago office to assist with preparation for the January 21, 2005 hearing related to estimation and other issues bearing on the confirmability of Grace's Plan of Reorganization. This expense relates to a dinner ordered by Ms. Boll while she was working in Chicago. Because the recommended ceiling for dinners is $50/person, K&E agrees that its bill should be reduced by $35.95.

We appreciate the response and recommend a reduction of $35.95 in expenses.

12.    We noted two cellular phone entries totaling $209.97 that appear to represent monthly service charges.  The entries are provided below.

11/29/2004    112.48 Jonathan Friedland, Cellular Service, T Mobile, 10/28/04-11/27/04, 11/29/04,  (Telephone Charges)

12/29/2004    97.49  Jonathan Friedland, Cellular Service, T Mobile, 11/28/04-12/27/04, 12/29/04,  (Telephone Charges)

We asked K&E to provide more detail regarding these expenses.  K&E's response is provided as Response Exhibit 5.  We appreciate the response and offer no objection to these expenses.

## CONCLUSION

13.    Thus we recommend approval of fees totaling $2,279,008.50 ($2,286,400.00 minus $7,391.50) and costs totaling $110,200.64 ($112,633.42 minus $2,432.78) for K&E's services from October 1, 2004, through December 31, 2004.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____

       Warren H. Smith
       Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 1275
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**


**CERTIFICATE OF SERVICE**

     I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 6th day of June, 2005.


_____
       Warren H. Smith

**SERVICE LIST**
Notice Parties

**The Applicant**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

**The Debtors**
David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**
Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**
Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE  19801

**Official Committee of Equity Holders**
Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 141
Wilmington, DE 19801

**United States Trustee**
Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

Exhibit A

1.    On October 25, 2004, JSB, TFM and GWG attended a hearing.  The total time spent including any preparation and non-working travel time was 17.10 hours for a total fee of $11,218.00.

| 10/20/04 | JSB | 0.40 | Review all pending matters for October omnibus hearing and confer with W. Sparks re same. |
| 10/21/04 | JSB | 0.30 | Review amended hearing agenda for October omnibus hearing and attend to issues re same. |
| 10/22/04 | JSB | 4.30 | Attend to various issues re matters set for hearing at October omnibus hearing (.5); confer with D. Bernick re plan motion and objection to same (.3); confer with T. Maynes re issues re NOL motion and anticipated issues re same (.4); review pleadings re same (.7); review materials needed for omnibus hearing (.4); review all pleadings and prepare outline re same for hearing (2.0). |
| 10/25/04 | JSB | 4.00 | Review materials in preparation for October omnibus hearing and confer with Delaware counsel re same (1.5); conduct October omnibus hearing and confer with clients and counsel re same and outcome of same (2.5). |
| 10/25/04 | TFM | 2.00 | Attend omnibus hearing re trading restrictions. |
| 10/25/04 | GWG | 1.50 | Participate in Bankruptcy Court hearing approving NOL order (1.2); prepare for same (.3). |
| 10/24/04 | JSB | 2.30 | Travel to Delaware for October omnibus hearing (billed at half-time). |
| 10/25/04 | JSB | 2.30 | Travel from Wilmington, DE back to Chicago after October omnibus hearing (billed at half-time). |

2.    On November 16, 2004, CCC, MEG and LAU attended a meeting.  The total time spent including any preparation time was 27.40 hours for a total fee of $12,247.50.

| 11/16/04 | CCC | 14.40 | Review agenda, issues, and documents in preparation for joint defense meeting with L. Urgenson, T. Mace, Grace counsel, and counsel for individuals who received target letters (.8); attend same (8.5);.............. |
| 11/26/04 | MEG | 7.60 | Review Libby target summary and emails re status in preparation for meeting with defense counsel (1.7); attend meeting of defense counsel (5.9). |
| 11/16/04 | LAU | 10.50 | Review documents and outlines (1.0); moderate JDA meeting with individual and corporate counsel (8,5); confer with client re case status and strategy (1.0). |

3.      On December 20, 2004, five (5) firm members attended a hearing.  The total time spent including any preparation and non-working travel time was 19.80 hours for a total fee of $10,201.50.

| 12/17/04 | JSB | 0.80 | Review materials in preparation for December omnibus hearing (.5); confer with Delaware counsel re same (.3). |
| 12/19/04 | JSB | 1.00 | Review materials in preparation for December omnibus hearing. |
| 12/20/04 | JSB | 5.50 | Review materials and prepare for December omnibus hearing (1.0); prepare for and conduct December omnibus hearing (4.5). |
| 12/20/04 | SB | 3.50 | Prepare for and participate in Grace omnibus hearing. |
| 12/20/04 | LS | 5.10 | Attend omnibus hearing via telephone conference (2.6);..... |
| 12/20/04 | ALJ | 3.40 | Prepare for and attend telephonic Grace Omnibus Hearing (2.6);......... |
| 12/20/04 | MHB | 4.20 | ..........; participate telephonically in part of status conference (1.0);.......... |
| 12/19/04 | JSB | 1.30 | Travel to Pittsburgh for December omnibus hearing (billed at half-time) |

| 12/20/04 | JSB | 1.50 | Travel from Pittsburgh back to Chicago after December omnibus hearing (billed at half-time). |

       4.      On December 8, 2004, JSB, BLS and LS attended a meeting.  The total time spent including any preparation time was 11.30 hours for a total fee of $6,812.00.

| 12/08/04 | JSB | 5.00 | Attend meeting with unsecured creditors and follow up meeting with client and counsel re same (4.0);........... |

| 12/08/04 | BLS | 5.10 | Meeting at K&E New York office with Blackstone, R. Tarola, J. Baer, L. Sinanyan and Creditor Committee counsel and financial advisor re proposed revisions to plan and disclosure statement (4.0);.......... |

| 12/08/04 | LS | 5.10 | Attend meeting with Unsecured Creditors' Committee, Capstone, Blackstone, J. Baer, and B. Spiegel on Grace in New York (3.3);............... |

Exhibit B

1.      On October 7, 2004, six (6) firm members participated in a conference call  The total time spent including any preparation time was 13.40 hours for a total fee of $6,739.00.

| 10/07/04 | JF | 15.00 | Telephone conference re plan, etc. comments with K&E Internal Team, Client and Blackstone (2.4);......... |
| 10/07/04 | BLS | 9.80 | Telephone conference with client representatives, Blackstone, K&E team re comments on plan documents (2.4);......... |
| 10/07/04 | LS | 10.00 | ...........; telephone conference with client, B. Spiegel, J. Friedland, S. Blatnick and D. Blechman re plan and plan documents (2.4);.......... |
| 10/07/04 | JCN | 6.40 | ............; telephone conference with client re plan and disclosure statement (1.5). |
| 10/07/04 | SB | 2.70 | Prepare for and attend conference call with internal K&E plan team and Grace representatives to discuss plan, disclosure statement and related documents. |
| 10/07/04 | TLF | 3.50 | Conference with client re plan (2.0);.......... |

2.      On October 11, 2004, seven (7) firm members participated in a conference call  The total time spent including any preparation time was 16.90 hours for a total fee of $8,084.50.

| 10/11/04 | JF | 19.30 | ............; telephone conference with Client and various K&E attorneys re plan, motions, and TDPs (2.8);.......... |
| 10/11/04 | JSB | 6.00 | Confer with Grace and Blackstone representatives re comments to all plan related documents (1.4);......; confer with various professionals re comments to plan and disclosure statement (1.0);......... |
| 10/11/04 | BLS | 9.30 | ..............; conference call with client team, K&E team and Blackstone re comments on draft plan motions, TDP (2.7);.......... |
| 10/11/04 | JHS | 1.40 | Participate in telephone conference with D. Siegel, J. Hughes, |

|  |  |  | J. Friedland, J. Baer, A. Running, M. Browdy, and B. Spiegel re revisions to plan and estimation motion. |
| --- | --- | --- | --- |
| 10/11/04 | RBB | 8.90 | .....................; conferences and telephone conferences with J. Nuckles, J. Friedland and company re confirmation objections and plan development (3.6);.......... |
| 10/11/04 | JCN | 1.50 | Telephone conference with client and other K&E attorneys re plan-related documents. |
| 10/11/04 | SB | 12.70 | .................; conference call re all plan documents (2.5);........ |

     3.      On October 13, 2004, seven (7) firm members participated in a conference call  The

total time spent including any preparation time was 12.00 hours for a total fee of $6,137.50.

| 10/13/04 | JSB | 3.50 | Confer with numerous counsel re status of plan, disclosure statement and disclosure statement exhibit book (5); confer with client re comments to current versions of plan, disclosure statement and exhibits to same (1.0);.......... |
| --- | --- | --- | --- |
| 10/13/04 | BLS | 15.00 | .................; telephone conference with K&E team, client, and Blackstone re comments on and changes to 10/14/04 plan documents and related motions to be filed (2.0). |
| 10/13/04 | RBB | 15.80 | .............; telephone conferences with K&E team and Grace re plan development strategy and document revisions (1.2);........ |
| 10/13/04 | LS | 15.80 | .................; telephone conference with client, Blackstone and all at K&E on plan team for tomorrow's filing (2.0);.......... |
| 10/13/04 | TJM | 7.00 | Participate in team telephone conference with client tr plan documents revisions (2.0);.......... |
| 10/13/04 | JCN | 16.20 | Telephone conference with client, Blackstone and K&E attorneys re documents to be filed on 10/14 (1.1);.......... |
| 10/13/04 | SB | 5.40 | Prepare for and team conference call to discuss plan documents (2.2);........ |

     4.      On November 5, 2004, four (4) firm members participated in a conference call.  The

total time spent including any preparation time was 2.80 hours for a total fee of $1,446.50.

| 11/05/04 | JSB | 2.40 | .........; participate in call with clients re new ERISA suit (.8);......... |
| 11/05/04 | SB | 3.40 | ..........; conference call re strategy for dealing with Bunch suit (1.0);............. |
| 11/05/04 | MHB | 0.80 | ............; conference call on same and follow up (.5). |
| 11/05/04 | VVH | 1.00 | ...........; conference call with client re same (.5). |

5.     On November 11, 2004, five (5) firm members participated in a conference call. The total time spent including any preparation time was 15.50 hours for a total fee of $7,024.00.

| 11/11/04 | JF | 10.70 | Long telephone conference with Client re comments to plan documents (3.0);............. |
| 11/11/04 | BLS | 6.00 | ...........; telephone conference with client management, Blackstone team, J. Friedland, L. Sinanyan, and D. Carickhoff re further revisions to plan documents (3.0);........ |
| 11/11/04 | LS | 17.30 | Telephone conference with client re comments to all plan documents (3.2);.......... |
| 11/11/04 | ALJ | 5.40 | Prepare for and attend telephone conference with client, J. Friedland, B. Spiegel, and L. Sinanyan (3.3);....... |
| 11/11/04 | SB | 3.00 | Conference call re plan documents. |

6.     On December 2, 2004, six (6) firm members participated in a conference call. The total time spent including any preparation time was 27.20 hours for a total fee of $10,071.00.

| 12/02/04 | JDS | 6.00 | ..........; attend telephone conference/conference with client and K&E team (3.0);......... |
| 12/02/04 | TDM | 11.30 | ................; prepare for telephone conference with R. Senftleben (3.2);............; conference with C. Chiou (1.0); conference call with client (1.0);........ |
| 12/02/04 | BHM | 6.50 | Participated in client conference call and complete preliminary follow up research. |

| | | | |
|---|---|---|---|
| 12/02/04 | CCC | 6.90 | ............; telephone conference with L. Urgenson, T. Mace, M. Grummer, and Grace counsel re joint defense issues and preparation for potential presentation (3.5);...........; prepare outline re details of facts and issues within target summary to be discussed with Grace counsel in telephone conference (2.6). |
| 12/02/04 | MEG | 3.60 | Prepare for and participate in meeting re status of preparations for response to government's cases (3.4);....... |
| 12/02/04 | LAU | 4.80 | ...........; prepare for and participate in conference with co-counsel re DOJ claims (3.0). |

Exhibit C

| 11/01/04 | TJW | 2.50 | Review newly filed pleadings and update central files re same (1.0);............ |
|---|---|---|---|
| 11/01/04 | SK | 1.00 | Review, catalog and organize pleadings for Concordance Litigation Support System |
| 11/02/04 | RL | 4.50 | ........; review pleadings re incorporation into central file (1.0);................. |
| 11/02/04 | TJW | 4.00 | ............; review newly filed ERISA case and prepare file re same (.5);.........; review hearing transcripts and update central files re same (1.0). |
| 11/02/04 | SK | 0.50 | Review, catalog and organize pleadings for Concordance Litigation Support System |
| 11/03/04 | TJW | 8.00 | ............; review briefs in District Court appeal and update central files re same (1.0);......... |
| 11/04/04 | TJM | 4.10 | Duplicate and distribute first day pleadings and entered orders (.6);.............. |
| 11/05/04 | TJW | 7.00 | ............; review newly filed pleadings and update central files re same (1.0);................ |
| 11/06/04 | SAP | 4.80 | Review docket for newly filed pleadings and download same (3.0); review and organize pleadings for litigation support system (1.8). |
| 11/08/04 | TDS | 5.50 | Organize case files re deposition transcripts. |
| 11/08/04 | SK | 5.50 | Review, catalog and organize pleadings for Concordance Litigation Support System |
| 11/08/04 | SAP | 0.50 | Locate, review and analyze documents for attorney use. |
| 11/09/04 | RL | 6.50 | ........; review pleadings re incorporation into central file (1.5);................... |
| 11/09/04 | SK | 3.00 | Review, catalog and organize pleadings for Concordance Litigation Support System |

| | | | |
|---|---|---|---|
| 11/10/04 | TJW | 7.00 | .............; review newly filed pleadings and update central files re same (2.0). |
| 11/10/04 | SK | 0.50 | Review, catalog and organize pleadings for Concordance Litigation Support System |
| 11/14/04 | SK | 3.00 | Review, catalog and organize pleadings for Concordance Litigation Support System |
| 11/16/04 | TJW | 7.00 | ............; print and distribute various pleadings for attorney review (1.2);............. |
| 11/17/04 | TJW | 5.00 | .............; print and distribute various pleadings for attorney review (1.0). |
| 11/18/04 | TJW | 10.00 | .............; retrieve, print and distribute final fee auditor report (.6);.............; review and analyze new correspondence and update central files re same (1.4). |
| 11/22/04 | TJW | 4.50 | Retrieve fee application and distribute for attorney review (.8);................ |
| 11/22/04 | SK | 1.00 | Review, catalog and organize pleadings for Concordance Litigation Support System |
| 11/22/04 | SAP | 1.50 | Review docket for newly filed pleadings and download same. |
| 11/23/04 | SK | 2.50 | Review, catalog and organize pleadings for Concordance Litigation Support System |
| 11/24/04 | TJW | 3.00 | ..........; retrieve hearing transcript and update central files re same (.8);..........; review newly filed pleadings and update central files re same (.5). |
| 11/24/04 | SK | 2.00 | Review, catalog and organize pleadings for Concordance Litigation Support System |
| 11/30/04 | TJW | 7.00 | ...............; retrieve scheduling order and distribute same for attorney review (.6); review newly filed pleadings and update central files re same (2.0);.........; retrieve and distribute various pleadings for attorney review (.8);......... |
| 11/15/04 | TDS | 7.50 | Organize case files (4.0); organize deposition transcripts re |

|          |     |      | previous litigations (3.5). |
|----------|-----|------|------------------------------|
| 11/16/04 | AMB | 7.00 | Prepare conference room and materials for meeting with individual counsel. |
| 11/16/04 | TDS | 7.50 | Organize deposition transcript from previous litigations |
| 11/22/04 | TDS | 6.30 | Prepare personnel files for individual target counsel (2.0); organize case files (2.0);.............. |
| 11/24/04 | TDS | 4.00 | Update case files (1.5);..............; update key documents (2.0). |
| 11/30/04 | TDS | 7.00 | Organize Grace files (4.0); prepare key documents for team (2.0);............... |

Exhibit D

1.      On November 21, 2004, BLS has a time entry listed as 0.80 hours for a total fee of $548.00.  The parenthetical entries total only 0.60 hours for a fee of $411.00.  Difference in fee total is $137.00.

| 11/21/04 | BLS | 0.80 | Review J. Friedland mark-up of draft motion requesting district court to refer certain matters to bankruptcy court (.3); review emails re same (.1); telephone conference with J. Friedland re staffing (.3). |

2.      On November 11, 2004, JSB has a time entry listed as 4.50 hours for a total fee of $2,947.50.  The parenthetical entries total only 4.40 hours for a fee of $2,882.00.  Difference in fee total is $65.50.

| 11/11/04 | JSB | 4.50 | Review revised disclosure statement (1.7); review certain comments re same (.2); review revised court transmittal letter with plan documents (.5); review revised plan (.6); review revised glossary (.1); follow up re status of plan and related filings and confer re same (.5); confer re comments to disclosure statement and plan (.5); confer re court letter and estimation motion (.3). |

3.      On November 24, 2004, BLS has a time entry listed as 6.20 hours for a total fee of $4,247.00.  The parenthetical entries total only 6.00 hours for a fee of $4,110.00.  Difference in fee total is $137.00.

| 11/24/04 | BLS | 6.20 | Review research memoranda in preparation for anticipated plan and disclosure statement objections (1.0); conference with L. Sinanyan re same (.2); review motion re referral to district court as finalized and files (.2); collect materials re post-petition interest (3.8); review transcript of 11/18 proceedings before Judge Fitzgerald (.6); telephone conference with J. Baer re report on 11/24 telephone conference with D. Bernick re revised strategy re next steps (.2) |

4.      On November 10, 2004, TFM has a time entry listed as 2.50 hours for a total fee of $1,662.50.  The parenthetical entries total only 2.10 hours for a fee of $1,396.50.  Difference in fee total is $266.00.

| 11/10/04 | TFM | 2.50 | Revisions to disclosure statement (1.0); telephone calls and e- |

mails re stock trading restrictions (.6); telephone calls with Ardsley group (.5).

Exhibit E

10/9/2004      426.80 FESTIVE FOODS - Working Meals/K&E and Others LUNCH IN12SW ON
               10/8/04 W/D. BERNICK

10/9/2004      171.60 FESTIVE FOODS - Working Meals/K&E and Others CONTINENTAL
               BREAKFAST IN12SW ON 10/8/04 W/D. BERNICK

10/13/2004     61.17  Kelly Frazier, Working Group Meal/K&E Only, Los Angeles, CA, 10/13/04,
               (Overtime Meals)

10/14/2004     106.75 Jonathan Friedland, Working Group meal/K&E Only, Chicago, IL., 10/14/04,
               (Prepare for Filing), teleconference with client during lunch period

10/22/2004     473.00 FESTIVE FOODS - Working Meals/K&E and Others LUNCH IN12SW ON
               10/14/04 W/D. BERNICK

11/17/2004     764.50 FESTIVE FOODS - Working Meals/K&E and Others BREAKFAST
               IN12SW W/L. URGENSON ON 11/16/2004

11/17/2004     987.80 FESTIVE FOODS - Working Meals/K&E and Others

11/17/2004     103.40 FESTIVE FOODS - Working Meals/K&E and Others

12/17/2004     68.14  Jonathan Friedland, Working Group Meal/K&E Only, Chicago, IL, 12/17/04,
               (Trial Preparation)

12/22/2004     52.31  SEAMLESSWEB PROFESSIONAL SOLUTIONS, INC - WORKING
               MEALS/K&E ONLY - 12/14/04

Exhibit F

10/11/2004    68.31    Ryan Bennett, Overtime Meal -Attorney, Chicago, IL 10/11/04, (Overtime Meals)

10/12/2004    320.20    Samuel Blatnick, Overtime Meal -Attorney, Chicago, IL 10/12/04, (Overtime Meals)

10/13/2004    139.07    Jonathan Friedland, Overtime Meal -Attorney, Chicago, IL 10/13/04, (Prepare for Filing)

10/13/2004    77.73    Rhonda Lopera, Overtime Meal - Legal Assistant, Chicago, IL 10/13/04, (Overtime Meals)

11/4/2004    146.83    Jonathan Friedland, Overtime Meal -Attorney, Chicago, IL 11/04/04, (Overtime Meals), Dinner

10/02/2004    58.30    Jonathan Friedland, Overtime Meal -Attorney, Chicago, IL 10/02/04, (Overtime Meals), Dinner

12/27/2004    113.65    Andrea Johnson, Overtime Meal -Attorney, Chicago, IL 12/27/04, (Meeting)

Response Exhibit 1

Attendance at Hearings and Meetings (¶ 3).

The Initial Report requests greater explanation concerning attendance at (a) an October 25, 2004, hearing; (b) a November 16, 2004, meeting; (c) a December 20, 2004, hearing; and (d) a December 8, 2004, meeting.

October 25, 2004, Hearing

The October 25, 2004, hearing was the hearing at which the Court took up the Debtors' motion regarding restricting trading of the Debtors' stock in order to preserve their net operating losses (the "NOL Motion"). The three K&E attorneys who attended the hearing (one in person and two via telephone) were all intimately involved with the NOL Motion, and the participation of each at the hearing was necessary. I (JSB) am the K&E partner who oversees the Debtors' cases, and I was at the hearing to represent Grace not only with respect to the NOL Motion, but also with respect to the other various matters that were scheduled to be heard that day. Todd Maynes (TFM) is the K&E tax partner responsible for the NOL Motion. He is an expert in such matters, and he both developed the NOL Motion conceptually and supervised its drafting. His participation was necessary because he was the K&E attorney best equipped to respond to any tax-specific issues that required expertise in the area of tax law. Greg Gallagher (GWG) is the K&E tax associate who principally drafted the NOL Motion, and his participation at the hearing was necessary to assist with any detail-oriented issues or questions that arose regarding the NOL Motion.

November 16, 2004, Meeting

The November 16, 2004, meeting was the first joint defense meeting among K&E attorneys, Grace, and other defense attorneys involved with the potential indictment of the Debtors and certain of the Debtors' officers related to the Debtors' activities in Libby, Montana. The purpose of the meeting was to begin discussing how to prepare the defense of Grace and the individual targets of the indictment and to determine the overall direction of the case. Laurence Urgenson (LAU) is the primary K&E partner responsible for overseeing K&E's work related to this matter, rendering his participation at the meeting critical. Mark Grummer (MEG) is an environmental partner at K&E whose participation was required for purposes of discussing environmental issues related to the indictments. Christopher Chiou (CCC) is a junior associate at K&E who is primarily responsible for document review and factual development to support the K&E partners handling the matter. His presence was necessary to learn the contours of the defenses being planned to assist him in performing his tasks.

December 20, 2004, Hearing

The December 20, 2004, hearing was critical to the Debtors' overall efforts to confirm a plan of reorganization. The Debtors filed their initial Plan and Disclosure Statement on November 15, and it was necessary that the principal K&E attorneys who developed those documents (and would be responsible for any future changes and/or revisions to the documents) attend this hearing, at which Plan-related issues were heard by the Court. As indicated in 1(a), above, I am the K&E partner who oversees these Chapter 11 Cases, generally, and my participation at the hearing was necessary to present the Debtors' position on both Plan- and other-related matters. Sam Blatnick (SB), who attended the hearing via telephone, was the K&E associate responsible for assisting me in handling most of the day-to-day matters in the case and for assisting with any issues that arose on an "as needed" basis. Lori Sinanyan (LS) and Andrea Johnson (ALJ) are both K&E associates who were heavily involved in drafting the Plan and Disclosure Statement. Their attendance at the hearing via telephone was necessary to keep them apprised of any issues related to the Plan and Disclosure Statement that were dealt with by the Court during the hearing. Finally, Michelle Browdy (MHB) is a K&E litigation partner who was involved in handling two ERISA suits that were filed against Grace and certain of its officers and board members. This matter was also addressed at the December 20, 2004 hearing, and thus Ms. Browdy's participation via telephone was required.

December 8, 2004, Meeting

On December 8, 2004, various members of K&E met in New York City to discuss Plan-related matters with the Unsecured Creditors' Committee appointed to serve in these Chapter 11 cases. My participation at this meeting was necessary due to my responsibilities as the primary attorney responsible for K&E's representation of the Debtors in these cases. Additionally, I have established a relationship with Committee counsel and certain of its members through my dealings with them throughout the course of these Chapter 11 cases, and I have consistently been responsible for communications and negotiations with the Committee. Bennett Spiegel (BLS) is one of the K&E partners who was principally involved in developing the structure of the Debtors' Plan, and Lori Sinanyan is a K&E associate who had an extensive role in drafting the Plan and Disclosure Statement. Mr. Spiegel's and Ms. Sinanyan's attendance at the meeting was necessary to assist with the negotiation of terms and other issues related to a possible consensual plan of reorganization, to which the Debtors and Creditors' Committee were ultimately successful in agreeing.

Response Exhibit 2

Conference Calls (¶ 4).

The Initial Report requests greater explanation concerning time billed for conference calls that took place on October 7, October 11, October 13, November 5, November 11, and December 2, respectively.  Four of these conference calls (Oct. 7, Oct. 11, Oct. 13, Nov. 11) concerned matters that pertained to the Debtors' plan of reorganization, disclosure statement, and related documents (collectively, the "Plan Documents").  Initially, the Debtors were required to file the Plan Documents on October 25, 2004.  Therefore, the weeks leading up to that date, in which the first three of the referenced conference calls took place, constituted a critical stage in these Chapter 11 Cases and required extensive coordination among the K&E attorneys working on the Grace matter.  Then, on the eve of the filing of the Plan Documents, at the request of the Asbestos Committees, the Debtors sought and were granted an extension through November 15, 2004, to permit the parties to negotiate a consensual plan.  Thus, this critical period leading up to the filing of the Plan Documents, a period of constant negotiation and multiple revisions to the Plan Documents, was extended into November.

As you may recall from K&E's letter in response to the Fee Auditor's Initial Report Regarding the Interim Application of K&E for the Fourteenth Interim Period ("Response to Fourteenth Fee Report"), during which period K&E was in the process of researching and drafting the Plan Documents, K&E made the conscious decision that it was more advantageous to have those attorneys involved in the researching and drafting processes participate in a number of conference calls, in which the Plan Documents and issues related thereto were discussed in detail, rather than relying on information to "flow down" after the calls had concluded.  This approach provided greater accuracy and consistency throughout the Plan Documents and saved the Debtors the costs of relying on back-end communications for information to flow to the appropriate parties following a call among fewer parties.

Similarly, K&E made the decision that in the weeks leading up to the filing of the Plan Documents, the most cost-effective way to coordinate among the principal K&E attorneys responsible for completing the Plan Documents was for such attorneys to participate in a series of conference calls, thereby eliminating the inefficiency and expense of individual attorneys trying to coordinate with numerous other attorneys in piecemeal fashion while attempting to develop a set of documents that would reflect a single, unified vision of reorganization.  Each of the participants in the four conference calls related to the Plan Documents was an important member of the K&E team responsible for drafting the Plan Documents, and therefore each person's participation on these calls was necessary.

The following describes the roles of various K&E attorneys about whose participation in the four Plan Document-related conference calls you have inquired:

As discussed above, I am the K&E partner responsible for managing the day-to-day matters in these cases, and as such I was charged with the responsibility of ensuring that the Plan Documents

were consistent with the Debtors' goals.  I was also involved in overseeing and reviewing work on the Disclosure Statement.

As detailed in K&E's Response to the Fourteenth Fee Report, Bennett Spiegel and Jonathan Friedland (JF) joined K&E's Grace team to help develop and draft the Plan Documents.  As the partners coordinating a great deal of such drafting, the participation of one or both of Mr. Spiegel and Mr. Friedland was necessary to help lead these calls.

Ryan Bennett (RBB) is an associate who was involved with drafting the plan confirmation procedures motion and order, and he was also the attorney who had performed extensive research pertaining to 524(g) reorganization plans and related matters.  His input on these matters was critical to development of the Plan.

Lori Sinanyan and Andrea Johnson, as noted above, undertook a substantial role in drafting the Plan Documents, and thus they were needed on certain of the conference calls to provide input and receive comments related to the Plan Documents.

As noted above, Sam Blatnick assisted with the day-to-day matters in the case, and his participation on these conference calls was required for that reason.  Mr. Blatnick also provided substantial assistance in drafting the Disclosure Statement.    Additionally, Mr. Blatnick's participation was necessary in the event that his additional assistance was needed with respect to any discreet Plan or Disclosure Statement-related issues.

Jacqueline H. Sloan was a K&E bankruptcy associate who had performed extensive research and drafted memoranda pertaining to claims estimation and impairment issues.  Her participation on the October 11, 2004, conference call was necessary to address any questions that other participants might have had regarding those issues generally, or Ms. Sloan's memoranda in particular.

Ted Freedman (TLF) is one of the K&E partners who was principally involved in developing the Plan structure.  As detailed in the Response to the Fourteenth Fee Report, Mr. Freedman has worked for many years on asbestos-related bankruptcy cases, and his participation on the October 7, 2004, conference call allowed him to contribute his expertise in mass-tort bankruptcy issues.

Jon Nuckles (JCN) is an attorney who worked with Jonathan Friedland in drafting the Plan Documents.  His participation on the three October conference calls was necessary for him to provide information regarding those Plan Documents as well as to receive comments regarding suggested revisions.

Tracy McCollom (TJM) was the paralegal who was principally responsible for locating and compiling precedent from other asbestos-related bankruptcies, which were used to assist in developing the Plan Documents.  Her participation was necessary on the October 13, 2004, conference call in the event that it was necessary to retrieve any such precedent or to locate any additional precedent.

The November 5, 2004, conference call related to the ERISA matter discussed in paragraph 1(c), above.  My attendance on this call was required as part of my responsibility for generally overseeing the Grace bankruptcy.  Likewise, Sam Blatnick's attendance was necessary as part of his responsibility for assisting me in handling the day-to-day matters related to the case.  Mr. Blatnick also prepared certain pleadings with respect to the ERISA cases.  As discussed above, Michelle Browdy is the K&E litigation partner who was assisting in handling the two ERISA actions to which this conference call related. Vicki Hood (VVH) is the K&E partner in charge of the firm's employee benefits group, and she was needed on the call to assist with specific ERISA related matters.

The December 2, 2004, conference call was among K&E attorneys and certain individuals at Grace regarding the criminal indictment matter.  This was an important conference, as Grace's attorneys (1) provided K&E's attorneys with information regarding the manner in which they anticipated that the Government planned to proceed, and (2) shared with K&E's attorneys their initial responses to the pending indictment.  The K&E attorneys on this call were all necessary participants, as the conference represented an opportunity for them to learn about the Government's case so that they could each fulfill their discreet tasks.  As stated above, Laurence Urgenson is the primary K&E partner responsible for overseeing K&E's work related to this matter, and as such his participation on the call was essential.  Likewise, as the environmental partner at K&E primarily responsible for handling the environmental issues related to the indictments, Mark Grummer needed to attend the conference.  Jane Stiegman (JDS) is a K&E associate working with Mr. Grummer on these environmental issues.  Thus, her participation was also required on the call.  Tyler Mace (TDM) is the principle litigation associate working with Mr. Urgenson in handling the day-to-day affairs related to this matter.  In addition to being necessary to fulfill his role generally, Mr. Mace's attendance was required to lead the discussion, as much of the conference focused on discussion of a memorandum prepared by Mr. Mace regarding the Government's case against the individual targets.

Brett McGurk is a K&E associate who was the principle drafter of an appeal before the Ninth Circuit Court of Appeals regarding certain of the issues related to the indictment, and he therefore had an established understanding of those issues.  His participation on the conference call was necessary to contribute his knowledge of the facts of the case that he had acquired in his prior capacity.  Christopher Chiou, as discussed above, is the junior associate at K&E who is primarily responsible for document review and factual development to support the K&E partners handling the matter.  Attendance on the conference call facilitated his performance of these tasks.

Response Exhibit 3

The Initial Report questions whether the costs of ten (10) working meals were excessive and requests further detail for each of the entries.

The first meal ($426.80, billed on October 9, 2004) represents the cost of a working lunch in Washington, D.C., on October 8, 2004, for twelve people.  The cost of the meal was $35.57/person.  Because the recommended ceiling for lunches is $25/person, K&E agrees that $126.80 should be stricken from its bill.

The second meal ($171.60, billed on October 9, 2004) represents the cost of a working breakfast ordered for twelve people on October 8, 2004, in Washington, D.C.  The cost of the meal was $14.30/person.

The third meal ($61.17, billed by Kelly Frazier on October 13, 2004) represents the cost of an overtime working meal ordered by Ms. Frazier for herself, Lori Sinanyan, Bennett Spiegel, and Sandra Holstein (a K&E secretary).  The cost of the meal was $15.29/person.

The fourth meal ($106.75, billed by Jonathan Friedland on October 14, 2004) represents the costs of a meal on the original date that the Debtors' Disclosure Statement and Plan of Reorganization was going to be filed.  This meal occurred at lunch, while the following four K&E attorneys, for whom the meal was ordered, participated in a teleconference with Grace during the lunch period:  Me, Jonathan Friedland, Ryan Bennett, and Jon Nuckles.  The cost of the meal, then, was $26.69/person.  In accordance with the recommended ceiling of $25/person for lunches, K&E agrees that $6.75 should be stricken from its bill.

The fifth meal ($473.00, billed on October 22, 2004) represents the cost of a working lunch on October 14, 2004, for twelve people.  The cost of the meal was $39.42/person.  Because the recommended ceiling for lunches is $25/person, K&E agrees that $173.00 should be stricken from its bill.

The sixth meal ($764.50, billed on November 17, 2004) represents the cost of a working breakfast in Washington, D.C., on November 16, 2004, for twenty people.  The meal related to the November 16, 2004, meeting referenced in paragraph 1(b), above.  The cost of the meal was $38.23/person.  Because the recommended ceiling for breakfasts is $15/person, K&E agrees that $464.50 should be stricken from its bill.

The seventh and eighth meal charges ($987.80 and $103.40, respectively, billed by the K&E conference center coordinator in D.C. on November 17, 2004), represent the cost of lunch and refreshments during the course of the day related to the November 16, 2004, meeting referenced in paragraph 1(b), above.  Although K&E does not have available the exact number of people who participated in the meeting, the firm estimates that at least twenty people participated.

The ninth meal ($68.14, billed by Jonathan Friedland on December 17, 2004) represents the cost of a working meal while Jonathan Friedland and two K&E associates, Joseph Nacca and

Salvatore Bianca, prepared for a hearing regarding the Debtors' Plan, Disclosure Statement, and estimation of the Debtors' asbestos-related liabilities and other issues bearing on the confirmability of the Debtors' Plan of Reorganization.  The cost of the meal was $22.71/person.

The tenth meal charge ($52.31, billed by Tyler Mace on December 22, 2004) represents the cost of working meals for both Tyler Mace and Chris Chiou on December 14, 2004.  The cost of the meal was $26.15/person.

Response Exhibit 4

The Initial Report questions whether the costs of seven (7) overtime meals were excessive and asks that K&E provide further detail with respect to such meals.

The first meal ($68.31, billed by Ryan Bennett on October 11, 2004) was a dinner ordered by Ryan Bennett. This meal was ordered for two K&E attorneys, and thus the cost of the meal was $34.16/person.

The second meal ($320.20, billed by Sam Blatnick on October 12, 2004) was a dinner ordered by Sam Blatnick for seven people. This meal occurred on October 12, 2004, just two days prior to the initial date upon which the Debtors were required to file their Disclosure Statement and Plan of Reorganization. The cost of the meal was $45.74/person.

The third meal ($139.07, billed by Jonathan Friedland on October 13, 2004) was a dinner ordered by Jonathan Friedland for four K&E attorneys (Me, Jonathan Friedland, Ryan Bennett, and Jon Nuckles) and two K&E paralegal staffers (Tiffany Wood and Tracy McCollum). The cost of the meal was $23.18/person.

The fourth meal ($77.73, billed by Rhonda Lopera, a K&E legal assistant assigned to the Grace matter, on October 13, 2004) was a dinner ordered by Rhonda Lopera for Tiffany Wood and Tracy McCollum. The cost of the meal was $38.87/person.

The fifth meal ($146.83, billed by Jonathan Friedland on November 4, 2004) was a dinner ordered by Jonathan Friedland for two K&E attorneys (Jonathan Friedland and Andrea Johnson) and two K&E paralegal staffers (Tiffany Wood and Tracy McCollum). The cost of the meal was $36.71/person.

The sixth meal ($58.30, billed by Jonathan Friedland on October 2, 2004) was a dinner ordered by Jonathan Friedland for at least two people.

The seventh meal ($113.65, billed by Andrea Johnson on December 27, 2004) was a dinner ordered by Andrea Johnson for Ms. Johnson, Jonathan Friedland, Sal Bianca, and Deanna Boll. The cost of the meal was $28.41/person.

Response Exhibit 5

The Initial Report questions certain cellular telephone expenses and asks for greater specificity regarding these charges.

The first charge ($112.48, billed by Jonathan Friedland on November 29, 2004), is for expenses beginning October 28, 2004, through November 27, 2004.  The second charge ($97.49, billed by Jonathan Friedland on December 29, 2004), is for expenses beginning November 28, 2004, through December 27, 2004.

To clarify, these charges are not inclusive of the entirety of Mr. Friedland's monthly telephone service charges.  Rather, these amounts represent Mr. Friedland's good faith estimate regarding his cell phone usage during the time periods listed above as such usage related to the Grace matter.  To log each and every telephone call over the course of a month for billing purposes would be an inefficient use of time, and thus Mr. Friedland instead simply prorated his cellular charges to reflect the percentage of time each month that he spent working on the Grace matter.  The amounts billed to Grace reflect the result of this estimate.