**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING**
**FEE APPLICATION OF BILZIN SUMBERG DUNN BAENA**
**PRICE & AXELROD LLP FOR THE FIFTEENTH INTERIM PERIOD**

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Fee Application of Bilzin Sumberg Dunn Baena Price & Axelrod LLP for the Fifteenth Interim Period.

**BACKGROUND**

1.      Bilzin Sumberg Dunn Baena Price & Axelrod LLP ("Bilzin") was retained as counsel to the Official Committee of Asbestos Property Damage Claimants. In the Application, Bilzin seeks approval of fees totaling $266,590.00 and costs totaling $19,938.53 for its services from October 1, 2004, through December 31, 2004.

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued

January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on Bilzin an initial report based on our review, and received a response from Bilzin, portions of which response are quoted herein.

## DISCUSSION

3. In our initial report, we noted that during the Application period, AK ($110), WV ($110), CB ($110), and BAB ($110) spent a total of 38.40 hours and fees of $4,224.00 on document printing, downloading, creating labels and other seemingly ministerial tasks. See Exhibit A. We asked Bilzin to explain why these tasks should not be viewed as generally ministerial and therefore part of normal firm overhead. Bilzin's response is provided below.

> The Report requests additional information regarding certain tasks performed by project assistants. The tasks performed go well beyond general ministerial tasks and are not part of "normal firm overhead." First, each of the project assistants is well informed about the status of this case and each of the issues affecting the PD Committee. As a result, each project assistant is well-informed about which of the voluminous pleadings filed in this case (and occasionally others) the attorneys working on case (primarily Mr. Sakalo and Ms. Danzeisen) would need to access promptly. Second, each project assistant has been specially trained to use a document management system setup specifically for this case. Their knowledge of such system and the support they provide far exceed ministerial tasks and are not considered part of Bilzin's "normal overhead."

We appreciate the response and are sensitive to the many administrative tasks required for the case. However, none of the tasks described in Exhibit A appear to require specialized knowledge or training but rather reflect day-to-day ministerial work common to all applicants in the case. Thus we recommend a reduction of $4,224.00 in fees.

4. We noted several time entries, the pertinent parts of which total 7.10 hours and $1,951.00 in fees, that appear to be for time spent regarding other cases. The time entries are provided below.

| Date | Atty | Hours | Fees | Description |
|---|---|---|---|---|
| 10/18/04 | ASD | 1.10 | 319.00 | Review of dockets in asbestos cases (.3)... |
| 10/18/04 | ASD | 3.60 | 1,044.00 | Review pleadings and expert reports in OC regarding estimation 3.6 [split with USG] |
| 10/22/04 | ASD | 0.30 | 87.00 | Review dockets in asbestos bankruptcies (.3). |
| 10/22/04 | JMS | 1.40 | 406.00 | Review email traffic regarding developments in other bankruptcies (.7)....... |
| 10/26/04 | ASD | 0.50 | 145.00 | Review asbestos dockets (.3);....... |
| 10/05/04 | JMS | 1.30 | 377.00 | Review Owens Corning brief regarding x-rays (½ time with USG) |
| 12/22/04 | BAB | 0.60 | 66.00 | Revise statues of limitations for Allyn Danzeisen re: Owen's Corning (.6). |

We note that during the March 21, 2005, hearing in the USG Corporation bankruptcy case[1], this Court stated, ". . .I am concerned about general monitoring of other cases. It seems to me if you have an issue that is coming up, in research, in doing that issue, you ought to be able to find those cases and certainly you'd want to know what those rulings are, but just generally monitoring a case for purposes of seeing what's going on is not compensable in this estate. . ." pp. 9-14. We asked Bilzin to provide direct correlation that the aforementioned time entries represent time spent with regard to the W.R. Grace matter and not a different engagement and, if appropriate, explain the relevant issue that required review of the other matters. Bilzin's response is provided below.

> The Report requests additional information that correlates certain time entries in this case and confirmation that the entries did not relate to other engagements. Bilzin has reviewed each of the entries and confirms they all directly relate to this case.
>
> One of the foremost pressing issues in this case is the estimation of the Debtors' asbestos property damage and personal injury liabilities. Each of the time entries in

---

[1] Bankruptcy Case number 01-2094.

**FEE AUDITOR'S FINAL REPORT** - Page 3
wrg FR Bilzin 15int 10-12.04.wpd

>question during October 2004 directly relate to the asbestos estimation issues in this case. One of the most critical aspects of an estimation is the work performed by statisticians/empiricists. The experts utilized in the Owens-Corning bankruptcy are substantially identical to the experts being used (or likely to be used) in this case. As a result, and because Bilzin is not involved in the Owens-Corning bankruptcy, it is absolutely necessary for Bilzin to be fully apprised of the most recent positions taken in respect of asbestos estimation in order to properly advise its constituency in this case. Bilzin's entries are certainly not "general monitoring" but, rather, specific research issues that would have been undertaken whether by reviewing the Owens-Corning reports or by other research methods. In fact, having the benefit of the reports amalgamated in the Owens-Corning bankruptcy reduced the amount of time necessary to conduct the research.

We appreciate the response. The Court stated that in order to be compensated for reviewing other cases, applicants will have to identify the issue or issues for which they are doing the review, and not just a general perusal of the pleadings filed. Bilzin does specifically identify issues regarding the time entries concerning Owens Corning, and for those entries we offer no objection. However, the explanation is not satisfactory for the four general entries that do not reference Owens Corning, and thus we recommend a reduction of $464.00 in fees.

5. We noted that professionals ASD ($290) and SLB ($550) spent 1.70 hours and $571.00 in fees addressing matters of legislation. The time entries are provided below.

| Date | Prof | Hours | Amount | Description |
|---|---|---|---|---|
| 10/19/04 | ASD | 1.00 | 319.00 | .....; research regarding status of asbestos legislation (.8). |
| 11/10/04 | SLB | 0.80 | 440.00 | .....; email from and to M. Dies regarding national legislation (.3). |
| 12/30/04 | ASD | 0.60 | 174.00 | Research regarding asbestos legislation status and provide summary of editorial regarding asbestos legislation. |

We note that during the March 21, 2005, hearing in the USG Corporation bankruptcy case[2], this Court stated, ". . . I'm having some difficulty understanding how any one estate ought to be charged

---

[2]Bankruptcy Case number 01-2094.

**FEE AUDITOR'S FINAL REPORT** - Page 4
wrg FR Bilzin 15int 10-12.04.wpd

with paying for legislative efforts . . . if USG wants to volunteer its services and help Senator Specter's team to try to get something fixed, that's fine. I'm happy to do that, but in terms of having this estate pay for it, I think I do want an analysis of why that's appropriate . . ." pp. 6-9. In light of the Court's position, we asked Bilzin to explain why the estate should be liable for the above referenced time. Bilzin responded as follows:

> The Report questions three time entries that relate to the pending national asbestos legislation. While each of the entries do relate to researching the status of the legislation and communication with a Committee member thereon, the work at issue is not the pursuit of "legislative efforts." Bilzin has a fiduciary obligation to advise its constituency concerning the potential impact of the legislation if it is passed. As a result, it is necessary to be apprised of the current status of the bill. Bilzin's entries are not in any way related to pursuit (or non-pursuit) of the legislation. The entries only relate to fulfilling its obligation to be fully informed of the status of the legislation.

We appreciate the response and offer no objection to these research fees at this time. However, we would suggest that while these entries may not reflect the specific pursuit of legislation, this research seems closely akin to the issue of the general monitoring of other cases as raised in Paragraph 4. The Court's position is clear on the general monitoring issue, and we will continue to raise the question of compensable value with regard to legislation research.

     6.     We noted the following time entries which may be duplicates.

| Date | | | | |
|---|---|---|---|---|
| 12/14/04 | ASD | 0.40 | 116.00 | Review recently file Pope documents (.4). |
| 12/14/04 | ASD | 0.40 | 116.00 | Review recently file Pope documents (.4). |

We asked Bilzin to review these time entries and explain whether any duplication occurred and whether a reduction of $116.00 is appropriate. Bilzin responded as follows:

> The Fee Auditor asked whether two time entries on 12/14/04 for 0.40 were duplicates. We have reviewed the questioned entries, found that a duplication had occurred and, therefore, agree one entry for .40 representing $116.00 should be reduced from the fee application.

We appreciate the response and thus recommend a reduction of $116.00 in fees.

      7.      We noted the following airfares which appear excessive.

| | | |
|---|---|---|
| 10/07/04 | AirfareTravel to Washington, DC - VENDOR: Continental Travel; INVOICE #: 321555; DATE: 10/7/2004 - Client | 1,479.20 |
| 10/08/04 | AirfareTravel to Washington, DC - VENDOR: SCOTT L. BAENA; INVOICE:: SLB-10/08/04; DATE: 10/8/2004 - Client - 15537 | 1,479.20 |

We asked Bilzin to provide assurances that the fares cited above were booked in coach class. Bilzin responded as follows:

> The Fee Auditor requested additional information regarding whether the two airfares for travel to Washington D.C. were booked in coach class. The backup documents have been reviewed and confirm that the airfares were each purchased at the going economy rate. Bilzin makes every effort to purchase flights in as far advance as notice gives.

We appreciate the response and offer no objection to these expenses.

      8.      We noted several meal expenses that require greater explanation. The entries are provided below.

| | | |
|---|---|---|
| 10/07/04 | MealsTravel to Washington, DC - VENDOR: SCOTT L. BAENA INVOICE:; SLB - 10/08/04; DATE:10/08/2004 - Client - 15537 | 142.45 |
| 10/08/04 | MealsTravel to Washington, DC - VENDOR: SCOTT L. BAENA; INVOICE:; SLB - 10/08/04; DATE:10/08/2004 - Client - 15537 | 77.54 |

We asked Bilzin to separate and document each meal. Bilzin responded as follows:

> The Fee Auditor sought greater explanation for certain meal charges. The meal charge on 10/7/04 for $142.45 represents (i) an $11.45 lunch for Messrs. Baena and Sakalo; and (ii) a $130.99 dinner meeting for five people, including Messrs. Baena and Sakalo, two committee members and one committee professional. The $77.54 meal charge on 10/8/04 is for a breakfast meeting attended by the same five gentlemen.

We appreciate the response and offer no objection to these expenses.

      9.      We noted lodging expense charges that require greater explanation. The entries are

provided below.

| | | |
|---|---|---|
| 10/08/04 | LodgingTravel to Washington, DC - VENDOR: SCOTT L. BAENA; | 372.13 |
| | INVOICE#: SLB-10/08/04; DATE: 10/8/2004 - Client - 15537 | |
| 10/08/04 | LodgingTravel to Washington, DC - VENDOR: JAY M. SAKALO; | 372.13 |
| | INVOICE#: JMS-10/08/04; DATE: 10/8/2004 - Client - 15537 | |
| 10/19/04 | LodgingTravel to Pittsburgh - VENDOR: JAY M. SAKASO; | 362.93 |
| | INVOICE#: JMS-10/29/04; date: 10/19/2004 - Client - 17906 | |

We asked Bilzin to provide greater detail for each of the cited entries. Bilzin responded as follows:

> The Fee Auditor asked for greater explanation of lodging charges. The two lodging charges for Messrs. Baena and Sakalo on 10/8/04 each represent a one-night hotel stay at the rate of $325.00 and local tax charges of $47.13. The lodging charge on 10/19/04 is for a two-night hotel stay totaling $342.00 and a $20.93 breakfast charge for Mr. Sakalo.

We suggest a reasonable ceiling of $250.00 per night for lodging ($350.00 for New York and selected other cities). Thus for the two entries of October 8, 2004, we recommend a total reduction of $244.26 in expenses.

10. We noted that Bilzin Sumberg seeks reimbursement for the following publication.

| | | |
|---|---|---|
| 12/10/04 | Miscellaneous Costs VENDOR: MEALEY PUBLICATIONS, INC.; | 426.93 |
| | INVOICE#: 1251695; date: 12/10/2004 - Client #15537 | |

Paragraph II.E.7. of the Guidelines states in part, "....[o]verhead includes word processing, proofreading, secretarial and other clerical services, rent, utilities, office equipment and furnishings, insurance, taxes, local telephone and monthly car phone charges, lighting, heating and cooling, and library and publications charges." In light of the cited guideline, we asked Bilzin to explain why it should be reimbursed for this publication. The firm responded as follows:

> The Fee Auditor inquired as to an expense paid to Mealey Publication, Inc. We

reviewed the entry and agree to deduct the $426.93 charge.

We appreciate the response and recommend a reduction of $426.93 in expenses.

    11.    We noted that the October invoice contains the following expense entry:

| | | |
|---|---|---|
| 10/18/04 | AirfareTravel Pittsburgh/Miami (canceled ticket will be refunded by Agency) - VENDOR: Continental Travel; INVOICE#: 321944 DATE: 10/12/2004 - Client - 15537 | 715.20 |

Although this entry refers to a refund by the travel agency, we can find no such refund mentioned in the subsequent monthly invoices contained in the Application. We asked Bilzin to explain whether a refund was forthcoming. Bilzin responded as follows:

> The Fee Auditor noted a refund of $715.20 was to be forthcoming for a canceled airfare and inquired as to its status. We have looked into the matter and the refund has now been received. Therefore, we agree that the sum of $715.20 should be reduced from our expenses.

We appreciate the response and recommend a reduction of $715.20 in expenses.

## CONCLUSION

    12.    Thus we recommend approval of fees totaling $261,786.00 ($266,590.00 minus $4,804.00) and costs totaling $18,552.14 ($19,938.53 minus $1,386.39) for Bilzin's services from October 1, 2004, through December 31, 2004.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
     Warren H. Smith
     Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 1275
Dallas, Texas 75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 8th day of June, 2005.

_____
     Warren H. Smith

**SERVICE LIST**
Notice Parties

**The Applicant**
Scott L. Baena
Jay M. Sakalo
BILZIN SUMBERG DUNN BAENA PRICE & AXELROD LLP
2500 First Union Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2385

**The Debtors**
David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**
Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**
Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**
Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**
Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

Exhibit A.

| Date | Tkpr | Hours | Amount | Description |
|---|---|---|---|---|
| 10/01/04 | AJ | 0.20 | 22.00 | Printout of docket for A. Danzeisen & J. Sakalo |
| 10/04/04 | AJ | 0.30 | 33.00 | Printout of docket for A. Danzeisen & J. Sakalo (.2); Printout of requested pleadings (.1) |
| 10/05/04 | AJ | 1.30 | 143.00 | Printout of docket for A. Danzeisen & J. Sakalo (.2) Printout of requested pleadings (.2);......... |
| 10/06/04 | AJ | 0.20 | 22.00 | Printout of docket for A. Danzeisen & J. Sakalo |
| 10/07/04 | AJ | 0.20 | 22.00 | Printout of docket for A. Danzeisen & J. Sakalo |
| 10/08/04 | AJ | 0.20 | 22.00 | Printout of docket for A. Danzeisen & J. Sakalo |
| 10/11/04 | AJ | 0.40 | 44.00 | Printout of docket for A. Danzeisen & J. Sakalo (.2) Printout of requested pleadings (.2) |
| 10/12/04 | AJ | 0.30 | 33.00 | Printout of docket for A. Danzeisen & J. Sakalo (.2) Printout of requested pleadings (.1) |
| 10/13/04 | AJ | 0.50 | 55.00 | Printout of docket for A. Danzeisen & J. Sakalo (.2) Printout of requested pleadings (.3) |
| 10/14/04 | AJ | 0.20 | 22.00 | Printout of docket for A. Danzeisen & J. Sakalo (.2) |
| 10/15/04 | AJ | 0.90 | 99.00 | Printout of docket for A. Danzeisen & J. Sakalo (.2) Printout of requested pleadings (.7) |
| 10/18/04 | AJ | 2.90 | 319.00 | Printout of docket for A. Danzeisen & J. Sakalo (.2) Printout of requested pleadings (.4) |
| 10/19/04 | AJ | 0.40 | 44.00 | Printout of docket for A. Danzeisen & J. Sakalo (.2) Printout of requested pleadings (.2) |
| 10/20/04 | AJ | 0.70 | 77.00 | Printout of docket for A. Danzeisen & J. Sakalo (.2); Printout of requested pleadings (.5) |
| 10/21/04 | AJ | 1.50 | 165.00 | Printout of docket for A. Danzeisen & J. Sakalo (.2); Printout of requested pleadings (.2)..... |
| 10/22/04 | AJ | 1.10 | 121.00 | Printout of docket for A. Danzeisen & J. Sakalo (.2); Printout of requested pleadings (.4)..... |
| 11/02/04 | AJ | 0.20 | 22.00 | Printout of docket for A. Danzeisen & J. Sakalo |
| 11/03/04 | AJ | 0.40 | 44.00 | Printout of docket for A. Danzeisen & J. Sakalo (.2); Printout of requested pleadings for A. Danzeisen & J. Sakalo (.2) |
| 11/04/04 | AJ | 0.30 | 33.00 | Printout of docket for A. Danzeisen & J. Sakalo (.2) Printout of requested pleadings for A. Danzeisen & J. Sakalo (.1) |
| 11/05/04 | AJ | 0.40 | 44.00 | Printout of docket for A. Danzeisen & J. Sakalo (.2) Printout of requested pleadings for A. Danseisen & J. Sakalo (.2) |
| 11/06/04 | AJ | 1.60 | 176.00 | Printout of docket for A. Danzeisen & J. Sakalo (10/25=.3) (10/26=.5) (10/27=.2) (10/28=.4) (10/29=.2) |
| 11/08/04 | AJ | 0.40 | 44.00 | Printout of docket for A. Danzeisen & J. Sakalo (.2); |

| Date | Initials | Hours | Amount | Description |
|---|---|---|---|---|
| | | | | Printout of requested pleadings for A. Danseisen & J. Sakalo (.2) |
| 11/09/04 | AJ | 0.40 | 44.00 | Printout of docket for A. Danzeisen & J. Sakalo (.2) Printout of requested pleadings for A. Danseisen & J. Sakalo (.2) |
| 11/10/04 | AJ | 0.40 | 44.00 | Printout of docket for A. Danzeisen & J. Sakalo (.2) Printout of requested pleadings for A. Danseisen & J. Sakalo (.2) |
| 11/11/04 | AJ | 0.40 | 44.00 | Printout of docket for A. Danzeisen & J. Sakalo (.2) Printout of requested pleadings for A. Danseisen & J. Sakalo (.2) |
| 11/12/04 | AJ | 0.40 | 44.00 | Printout of docket for A. Danzeisen & J. Sakalo (.2) Printout of requested pleadings for A. Danseisen & J. Sakalo (.2) |
| 11/22/04 | WV | 1.00 | 110.00 | Pull dockets and print out documents from pacer. |
| 11/24/04 | WV | 1.20 | 121.00 | Pull dockets and print out documents from pacer. |
| 10/30/04 | WV | 2.00 | 110.00 | Pull dockets and print out documents from pacer. |
| 12/02/04 | WV | 1.80 | 198.00 | Pull dockets and print out documents from pacer. |
| 12/03/04 | WV | 1.50 | 165.00 | Pull dockets and print out documents from pacer. |
| 12/06/04 | WV | 1.50 | 165.00 | Pull dockets and print out documents from pacer. |
| 12/08/04 | WV | 1.80 | 198.00 | Pull dockets and print out documents from pacer. |
| 12/10/04 | CB | 1.50 | 165.00 | Retrieve dockets from Pacer and print out documents. |
| 12/14/04 | CB | 1.00 | 110.00 | Retrieve dockets from Pacer and print out documents. |
| 12/16/04 | CB | 1.60 | 176.00 | Retrieve daily dockets from Pacer and print out documents. |
| 12/120/04 | CB | 1.00 | 110.00 | Retrieve daily dockets from Pacer and print out documents. |
| 12/30/04 | CB | 1.00 | 110.00 | Retrieve daily dockets from Pacer and print out documents. |
| 12/17/04 | BAB | 1.90 | 209.00 | Download and print pleadings for hearing (.9); create labels for folders and redwell to insert pleadings into (.6); and create shipping label and send via fedex (.3);.......... |
| 12/20/04 | BAB | 3.50 | 385.00 | Download and print "Initial Objections" regarding Owens Corning (1.0); download and print caselaw (1.5); and download and print pleadings (1.0) |
| 12/20/04 | CB | 1.00 | 110.00 | Print out docket and retrieve documents on Pacer re claims. |
| 12/21/04 | BAB | 0.50 | 55.00 | Download and print caselaw pertaining to Owen's Corning "Initial Responses" (.5); |
| 12/22/04 | CB | 1.00 | 110.00 | Print out docket and retrieve documents on Pacer re claims. |