## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., *et al*.<br><br>Debtors. | Chapter 11<br><br>Case No. 01-01139 (JKF)<br><br>(Jointly Administered)<br><br>Objection Deadline: June 28, 2005 @ 4:00 p.m.<br>Hearing Date: July 18, 2005 @ 12:00 noon |

## MOTION OF STATE OF MONTANA FOR
## RELIEF FROM THE AUTOMATIC STAY

The State of Montana ("Montana" or "Movant"), by and through its undersigned counsel, hereby moves this Court and entry of an Order pursuant to 11 U.S.C. § 362(d)(1) and Bankruptcy Rule 4001, granting Montana relief from the automatic stay in order that it may join Debtors, W.R. Grace & Co and W.R. Grace & Co.-Conn., (hereinafter collectively "W.R. Grace") as Third-Party Defendants in eighty-three (83) cases currently pending against the State of Montana in various Montana state courts ("State Court Actions"), and in support thereof states as follows:

### JURISDICTION AND VENUE

1.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is section 362(d) of the Bankruptcy Code.

Document #41750

**PROCEDURAL BACKGROUND**

2.     On April 2, 2001 ("Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Code"). Debtors continue in the possession of their property and the management of their businesses as debtor-in-possession pursuant to sections 1107 and 1108 of the Code.

**FACTUAL BACKGROUND**

3.     The State of Montana has been named as Defendant in various State Court Actions currently pending in Lincoln County, Cascade County and Lewis and Clark County, Montana. Attached hereto as Exhibit A is a chart of pending State Court Actions and their status.

4.     Many of the Plaintiffs in the State Court Actions ("Plaintiffs") allege periods of employment with W.R. Grace and/or its predecessors ranging from 1947 through 1993.

5.     The various State Court Actions relate to claims arising from the mining and processing of vermiculite containing asbestos within the state of Montana. The various Plaintiffs in the State Court Actions include former employees of W.R. Grace as well as their family members.

6.     Pursuant to the Agreement and Plan of Reorganization between W.R. Grace & Co. and Zonolite Company, dated January 17, 1963, W.R. Grace acquired substantially all of the properties and assets of Zonolite, including mining properties in Montana, and assumed all debts and liabilities of Zonolite.

7. Debtor, W.R. Grace & Co., is liable for the conduct of the predecessor and subsidiary companies, including W.R. Grace & Co. – Conn. and Zonolite Company with respect to the claims as set forth in the State Court Actions.

8. The State of Montana denies that it is in any manner responsible for the events giving rise to the various Plaintiffs' claims for relief set forth in the State Court Actions, or for injuries and damages allegedly sustained by those Plaintiffs. If, however, liability is imposed on the State of Montana as a result of the matters alleged in the various State Court Actions, such liability could only be remote and derivative from, or concurrent with, the acts and liabilities of W.R. Grace because W.R. Grace had a duty to:

(a) furnish a place of employment that was safe for employees, including the Plaintiffs in the State Court Actions;

(b) furnish and require the use of safety devices and safeguards, such as respiratory protective devices, by employees, including the Plaintiffs in the State Court Actions; and

(c) adopt and use such methods, processes, practices, means, and operations as reasonably adequate to render the place of employment safe, and to do every other thing reasonably necessary to protect the life and safety of employees, including the Plaintiffs in the State Court Actions.

9. The State of Montana alleges that the W.R. Grace negligently and intentionally breached the aforementioned duties, and that the breach was the proximate cause of the alleged injuries and damages of the Plaintiffs in the State Court Actions.

10. W. R. Grace actively concealed from the Plaintiffs and the State of Montana the harm and injury caused by dust containing asbestos. Moreover, W.R. Grace knew that dust containing asbestos could cause fatal diseases, including, but not limited to, asbestosis, lung cancer, and mesothelioma.

11. W.R. Grace knew that that safety devices and safeguards, such as respiratory protective devices and ventilation systems in the workplace, were not used or maintained in a manner sufficient to prevent injury from asbestos dust.

12. W.R. Grace controlled the methods, processes, practices, means, and operations in the place of employment, but intentionally created harm to Plaintiffs and other employees by failing to take reasonably adequate measures to render the place of employment safe, and to do every other thing reasonably necessary to protect the life and safety of employees.

13. W. R. Grace informed the State of Montana of policies it had implemented concerning the use of respiratory protective devices by employees, but W.R. Grace knowingly failed to enforce its policies in a manner reasonably necessary to protect the life and safety of employees from injury caused by asbestos dust.

14. W.R. Grace had knowledge of facts or intentionally disregarded facts that created a high probability of harm to Plaintiffs in the State Court Actions and deliberately proceeded to act with either conscious disregard or indifference to the high probability of injury to the Plaintiffs.

15. The acts and omissions of the W.R. Grace were the direct and primary causes of the failure to provide a safe place of employment for the Plaintiffs in the State

Court Actions, and other employees, proximately caused the injuries and damages allegedly sustained by those Plaintiffs.

16. On February 7, 2005, a criminal indictment was issued against W.R. Grace and other defendants in the United States District Court for the District of Montana (Missoula), captioned as *United States of America vs. W.R. Grace, Alan R. Stringer, Henry A. Eschenbach, Jack W. Wolter, William J. McCaig, Robert J. Bettacchi, O. Mario Favorito and Robert C. Walsh, Criminal Docket # 05-CR-7-1 (*hereinafter "Indictment"). The Indictment raises counts against W.R. Grace and its employees for conspiracy; Clear Air Act violations; wire fraud; and obstruction of justice. A copy of the Indictment is attached hereto as Exhibit B.[1]

17. Attached hereto and marked as Exhibit C is a proposed Third-Party Complaint in an action currently pending in Montana First Judicial District Court Lewis and Clark County, captioned as <u>Herbert R. Orr and Sandra G. Orr v. State of Montana</u>, Cause No. BDV-2001-423 ("Proposed Third-Party Complaint"). It is anticipated that this Proposed Third-Party Complaint would be utilized in all of the State Court Actions identified in Exhibit A attached hereto.

## **RELIEF REQUESTED**

18. Pursuant to section 362(d) of the Code, the State of Montana requests relief from the stay in order to name and liquidate claims against Debtors, W.R. Grace & Co. and W.R. Grace Co.-Conn., as third-party defendants in the various State Court Actions currently pending in Montana. To the extent a judgment is entered against the State of Montana in any of the pending State Court Actions identifed in Exhibit A, the

---

[1] Due to the voluminous nature of the Indictment and proposed Third-Party Complaint, Exhibits B and C are being served on counsel for Debtors and electronically filed only. Any party wishing to obtain a copy of Exhibits B and C may contact counsel for the Movant.

State of Montana seeks indemnification from W.R. Grace for any sum that may be adjudged by Plaintiffs against the State of Montana. Moreover, to the extent the State of Montana is found liable for the damages alleged in the State Court Actions, the State of Montana seeks contribution from W.R. Grace, and apportioning the liability of the State of Montana and W.R. Grace on the basis of their comparative fault.

## BASIS FOR RELIEF

### A. Cause Exists to Lift the Automatic Stay

19. Bankruptcy Code section 362(d)(1) provides that a "court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay - (1) for cause." 11 U.S.C. § 362(d)(1).

20. There is no definition of "cause" in the Bankruptcy Code. Therefore, "cause" must be determined on a case-by-case basis. International Business Machines v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.), 938 F.2d 731, 735 (7th Cir. 1991) (citing In re Tuscon Estates, 912 F.2d 1162, 1166 (9th Cir. 1990)); Izzarelli v. Rexene Products Co. (In re Rexene Products Co.), 141 B.R. 574, 576 (Bankr. D. Del. 1992).

21. In determining whether "cause" exists to lift the stay to permit a party to continue litigating an action in a non-bankruptcy court, courts in the Third Circuit apply the following three factor test:

>   (1) Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit;
>
>   (2) Whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and
>
>   (3) The probability of the creditor prevailing on the merits.

Rexene Products, 141 B.R. at 576; see also American Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.), 152 B.R. 420, 424 (D. Del. 1993); Levitz

Furniture Inc. v. T. Rowe Price Recovery Fund, L.P. (In re Levitz Furniture Inc.), 2000 Bankr. LEXIS 1322, *15 (Bankr. D. Del. 2000); Save Power Limited v. Pursuit Athletic Footwear, Inc. (In re Pursuit Athletic Footwear, Inc.), 193 B.R. 713, 718 (Bankr. D. Del. 1996).

22. Further, courts are directed to consider the following legislative history:

> It will often be more appropriate to permit proceedings to continue in their place of origin, where no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

Rexene Products, 141 B.R. at 576; In re Wilson, 85 B.R. 722, 728-29 (Bankr. E.D. Pa. 1988) (citing S. Rep. No. 989, 95th Cong., 2d. Sess. 50, reprinted in [1978] U.S. Code Cong. & Ad. News 5836).

23. The legislative history to section 362 indicates that cause may be established by a single factor such as "a desire to permit an action to proceed . . . in another tribunal," or "lack of any connection with or interference with the pending bankruptcy case." H.R. Rep. No. 95-595, 95th Cong., 1st Sess., 343-344 (1977) U.S. Code Cong. & Admin. News pp. 5787, 6300. See also In re Rexene, 141 B.R. at 576 ("cause" for relief was found in order to allow civil plaintiffs to proceed with a class action against the debtor because discovery was nearly complete, both parties were nearly ready for trial prior to the bankruptcy filing, trial of claim in bankruptcy court would be burdensome to plaintiffs and risk unnecessary, duplicative litigation, and plaintiffs had at least some probability of success on merits of suit); See also In re Drexel Burnham Lambert Group, Inc., 113 B.R. 830, 838 n. 8 (Bankr. S.D.N.Y. 1990) (citing various findings of section 362(d)(1) "cause" to permit litigation in another forum such as liquidation of a personal injury, arbitration or specialized jurisdiction claim).

24. The legislative history to § 362(d)(1) makes it clear that relief from the automatic stay is particularly appropriate in circumstances such as these where there are claims pending in another jurisdiction or before another tribunal. "[I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere." H.R. Rep. No. 595, 95th Cong., 1st Sess., 341 (1977); see also Save Power Limited v. Pursuit Athletic Footwear (In re Pursuit Athletic Footwear, Inc.), 193 B.R.713, 718 (Bankr.D.Del.1992); In re Rexene, 141 B.R. at 576; American Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.), 152 B.R. 420, 424 (D. Del. 1993) (setting forth the criteria that courts should consider in determining whether "cause" exists to lift the stay to allow parties to litigate their dispute in a nonbankruptcy forum).

25. This Court, in the Continental Airlines decision referred to above, set forth the following framework for analyzing motions for relief from the automatic stay:

> "There is no rigid test for determining whether sufficient cause exists to modify an automatic stay. Rather, in resolving motions for relief for "cause" from the automatic stay courts generally consider the policies underlying the automatic stay in addition to the competing interests of the debtor and the movant. In balancing the competing interests of the debtor and the movant, Courts consider three factors: (1) the prejudice that would be suffered should the stay be lifted; (2) the balance of the hardships facing the parties; and (3) the probable success on the merits if the stay is lifted. See Int'l Business Machines v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.) 938 F. 2d 731. 734-37 (7th Cir. 1991)."

Id. at 424.

**<u>1. The Debtors Will Not Suffer Prejudice if the Stay is Lifted</u>**

26.  In determining whether a debtor will endure prejudice if the automatic stay is lifted and litigation is allowed to continue, courts examine the status of the underlying non-bankruptcy court action.

27.  The cause of action is based upon both federal and Montana law; all parties will either consent to jurisdiction and/or reside or do business in Montana; and most of the material witnesses work and reside in Montana. Although not known for sure, it is almost certain that no witnesses are located in Delaware. Thus, not only the State of Montana, but all parties would incur the added expense if Movant's claims were determined in Delaware.

28.  Administration of the estate will not be delayed by granting this Motion. Any inconvenience to the Debtors by the continuation of the pending State Court Actions is outweighed considerably by the hardship to the State of Montana resulting from its inability to seek contribution and indemnity from Debtors' State Court Actions. In fact, granting this Motion will facilitate Debtors' reorganization by reducing Movant's unliquidated claims to finality.

29.  The State of Montana is not seeking to collect on any judgment but rather to liquidate its claims. Pursuant to the proposed Amended Disclosure Statement For the Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code ("Disclosure Statement"), the State of Montana's claims for contribution and indemnity, if allowed, would be treated as a General Unsecured Claim. See section 2.5.1.1.3 of the Disclosure Statement. The claims would not be part of the Asbestos Trust.

30. This bankruptcy case is over four years old. The critical time for reorganization has passed. Indeed, a disclosure statement and plan of reorganization have been filed. Debtors will not be prejudiced by the continuation of the State Court Actions.

31. Upon information and belief, Debtors may be covered by liability insurance for this matter. Nevertheless, even if the Debtors are not covered by insurance, as a personal injury action, this case must be liquidated in the State Court Action. The critical time devoted to reorganization process and fixing certain business problems is past in this bankruptcy case in that it is over four years old.

32. Accordingly, Debtor will not suffer great prejudice if the stay is lifted and the Movant is permitted to file Third-Party Complaints against the Debtors in the State Court Actions and continue with the State Court Actions. By lifting the stay, the Court will allow the Movant to liquidate its claims against the Debtors in the courts that has presided over these actions and continue to preside over these actions.

## 2. The Balance of Hardships Favor the State of Montana

33. Various State Court Actions are pending against the State of Montana as set forth in Exhibit A attached hereto, in which Montana is forced to defend.

34. In *Orr v. State*, 2004 MT 354, 324 Mont. 391, 106 P.3d 100, the Montana Supreme Court found that the State of Montana had a duty to disseminate results of workplace inspections to workers at the W.R. Grace mine near Libby, Montana ("Libby Mine.") The Court held that although it concluded the State of Montana had a duty to miners and their families, the miners and their families still must show the State of Montana breached that duty. The Court further held that even if it was found that the State of Montana had breached that, the miners and their families still must show that the

breach caused their alleged injuries.     W.R. Grace was responsible for any damage or injuries caused to the miners and their families.

35.     Therefore, continuing the stay would inflict much greater hardship on the Movant than the hardship that would be placed on the Debtors by lifting the stay.

36.     Currently, there are at least 83 actions pending against the Movant for which the stay should be lifted.  The cases in which Movant has been served are listed on the attached Exhibit A.  These cases are moving forward.  Scheduling conferences have been held and scheduling orders have been issued, which set deadlines for discovery, witness and exhibit lists, motions, deadlines for adding parties and amending pleadings, and final pre-trial conferences or trial dates, in a number of these cases.  Scheduling conferences are being calendared in additional cases for the purpose of setting pre-trial schedules.  Discovery, including depositions, is underway.

**3. The Third Factor Favors the State of Montana as its Claims are not Frivolous**

37.     The third prong of the Fernstrom test analyzes the Movant's probability of success on the underlying action. As stated by the bankruptcy court in Rexene Products, "the required showing is very slight."  Rexene Products, 141 B.R at 578; see also Continental Airlines, 152 B.R. at 420 ("The third factor the Court must consider in assessing the propriety of lifting the automatic stay is whether the Movant has some probability of success on the merits in the proposed litigation."); Levitz Furniture, 2000 Bankr. LEXIS at *17 (holding that Movant only need to show "that their claim is not frivolous" to satisfy the third prong).

38.     The Movant has satisfied the third part of the Rexene test.  The contribution and indemnity claims against the Debtors are likely to succeed in the State Court Actions.    By statute, Montana authorizes contribution among joint tortfeasors.

Mont. Code Ann. § 27-1-703.  If tortfeasors are not in *pari delicto*, the less culpable party is entitled to indemnification from the active wrongdoer.  <u>Great Northern Ry. v. United States</u>, 187 F. Supp. 690, 693 (D. Mont. 1960).  The Montana Supreme Court has approved <u>Great Northern</u> as the "definitive statement of the law of indemnity . . . ." <u>Fletcher v. City of Helena</u>, 163 Mont. 337, 341, 517 P.2d 365, 368 (1973).  At all relevant times, Montana law imposed the duty to ensure workplace safety on the employer.  <u>E.g.</u>, Mont. Code Ann. § 50-71-201 (1978-present); RCM § 41-1710 (1969-78); RCM § 41-1702(a) (1951-69).  The State of Montana warned the Debtors of hazardous dust conditions, but the Debtors failed to fulfill their duty and eliminate the hazard.  The Debtors, not the State of Montana, were affirmatively negligent.  Therefore, the State is likely to succeed on an indemnity claim under Montana law.

39.    Hence, because the State of Montana has established more than a slight probability of success on the Third-Party Complaints in the State Court Actions, the third prong of the <u>Rexene</u> test is satisfied in the present case.

## **CONCLUSION**

**WHEREFORE,** based on the foregoing reasons, the State of Montana prays for the entry of an Order terminating the automatic stay of 11 U.S. C. §362(a) to allow it to go forward with the State Court Actions as identified in Exhibit A attached hereto in

order to liquidate its claims for contribution and indemnity, and for such other and further relief as this Court deems equitable.

Dated: June __, 2005                              **MONZACK AND MONACO, P.A.**

                                                  __/s/ Francis A. Monaco, Jr._____
Francis A. Monaco, Jr. (#2078)
Kevin J. Mangan (#3810)
1201 Orange Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 656-8162
Facsimile: (302) 656-2769