IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

In re: ) Chapter 11
 )
W.R. Grace & Co., et al., ) Case No. 01-1139 (JKF)
 ) (Jointly Administered)

Response to 11th Omnibus (Non-Asbestos Gateway) Objection by WR Grace & Co., et al.
Sierra Capital, Transferor: Computer Task Group Inc., Claim No. 649

from: Sierra Capital; Transferor: Computer Task Group, Claim Number 649, 2699 White Road, Ste. 255, Irvine, CA 92614, (949) 660-1144, ext. 17, fax: 949-660-0632, saugust@sierrafunds.com

to: Office of the Clerk of the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, DE 19801

Kirkland & Ellis LLP, 200 E. Randolph Drive, Chicago, Illinois 60601, Attn: Rachel Reagler Schulman

Pachulski, Stang, Ziehl, Young, Jones & Weintraub P.C., 919 North Market Street, 16th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: David W. Carickhoff, Jr.

re: Sierra Capital, Transferor: Computer Task Group, Claim Number 649

date: Thursday, June 02, 2005

We have received a claims objection requesting that the above claim in the amount of $4,380.00 be disallowed and expunged in its entirety. We Object to this Objection.

1. Please find attached sufficient documentation supporting the filed Proof of Claim in the amount of $4,380.00. We regret that these invoices and supporting documentation were not included with the original proof of claim. Unfortunately, at the time, we were unaware that such documentation was required to be included with the proof of claim.

2. Upon review of the included claim support documentation, we dutifully request that Debtors and the Court allow Claim # 649 for the full filed amount of $4,380.00 as liquidated and undisputed.

3. To expedite this matter, we suggest a Stipulation Agreement be prepared for the amount of $4,380.00 and sent to our attention for signature.

4. Copies of the following have been enclosed with this response: The transfer agreement executed between Sierra Capital (Assignee/Transferee) and Computer Task Group (Assignor/Transferor), Proof of Claim # 649 filed by Sierra Capital, and the supporting documentation requested for claim #649 evidencing the amount of $4,380.00 owed on Claim # 649 filed by Sierra Capital; Transferor: Computer Task Group.

Please contact either of the following at your earliest convenience.

Sierra Capital

Scott August
949-660-1144, ext. 17
saugust@sierrafunds.com

Tammy Garza
949-660-1144 ext. 22
tgarza@sierrafunds.com

Jim Riley
949-660-1144 ext. 16
jriley@sierrafunds.com

FORM B10 (Official Form 10) (4/01)

| UNITED STATES BANKRUPTCY COURT _____ DISTRICT OF Delaware | PROOF OF CLAIM |
|---|---|

| Name of Debtor<br>WR Grace & Co., et al. | Case Number<br>01-01139 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):

Computer Task Group, Inc.

Name and address where notices should be sent:
Sierra Capital
2699 White Rd. Ste. 255
Irvine, CA 92614

Telephone number: 949-660-1144 x17

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☒ Check box if you have never received any notices from the bankruptcy court in this case.

☒ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor:

Check here if this claim ☐ replaces   a previously filed claim, dated:_____
                        ☐ amends

1. **Basis for Claim**
   ☐ Goods sold
   ☐ Services performed
   ☐ Money loaned
   ☐ Personal injury/wrongful death
   ☐ Taxes
   ☐ Other _____

   ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
   ☐ Wages, salaries, and compensation (fill out below)
   Your SS #: _____
   Unpaid compensation for services performed
   from _____ to _____
        (date)      (date)

2. Date debt was incurred:

3. If court judgment, date obtained:

4. **Total Amount of Claim at Time Case Filed:** $ _____$4,380.00_____
   If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

5. **Secured Claim.**
   ☐ Check this box if your claim is secured by collateral (including a right of setoff).
   Brief Description of Collateral:
   ☐ Real Estate   ☐ Motor Vehicle
   ☐ Other _____
   Value of Collateral: $_____
   Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

6. **Unsecured Priority Claim.**
   ☐ Check this box if you have an unsecured priority claim
   Amount entitled to priority $_____
   Specify the priority of the claim:
   ☐ Wages, salaries, or commissions (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
   ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
   ☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
   ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
   ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
   *Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

7. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

8. **Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

9. **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

RECEIVED JAN 31 2002

| Date<br>1/23/02 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Joseph Lind |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

CN 00000649

INVOICE

```
========================================================================================
CTG                                 Invoice No:   2252594           444478 CM
(219)756-6360/ (800)214-2820        Invoice Date: 02/07/01              140BAL
Tax ID: 16-0912632                  Contract No:  10080172
                                    Terms:        NET 45 DAYS



       Customer No: 1003150         P.O. Number:

B                                   R
I    Greg Covington                 E
L    Grace Davison                  M   Computer Task Group, Inc.
L    7500 Grace Drive               I   P.O. Box 711778
     Columbia, MD 21044             T   Cincinnati, OH
T                                       45271-1778
O                                   T
                                    O
========================================================================================

              We appreciate the opportunity to be of service to you.

              To ensure proper handling of your payment, please include
              the invoice number and amount paid on your remittance notice.


========================================================================================
                        From 01/01/01 Thru 01/31/01
PERIOD    *--- S E R V I C E S ---*  *---------------- E X P E N S E S ---------------*
          RATE    UNITS    AMOUNT    TOTAL    MLGE    AIR    ROOM    MEALS    MISC
----------------------------------------------------------------------------------------

Project 10080172   Grace Davison - Server Applic.
                   4500258866

  QAMAR, ALAA E.
01/05/01   60.00    5.00    300.00
01/12/01   60.00   21.00   1260.00
01/19/01   60.00   17.00   1020.00
01/26/01   60.00   12.00    720.00
01/31/01   60.00   10.00    600.00
                          ----------
Total Services             3900.00

Tax @  .00 %                   .00

Invoice Totals     65.00   3900.00

****************************************************************************************
                              TOTAL DUE    $ 3,900.00
****************************************************************************************
```

its services which failed to meet the standard of care set forth in Section 5.1 above. Grace must make any claim for breach of this warranty by written notice to Computer Task Group, Incorporated within sixty (60) days of performance of such services.

5.3 EXCEPT FOR THE EXPRESS WARRANTY SET FORTH IN SUBSECTION 5.1 ABOVE, AETEA DISCLAIMS ALL EXPRESS AND IMPLIED WARRANTIES ON ITS SERVICES PROVIDED UNDER THIS AGREEMENT, INCLUDING, BUT NOT LIMITED TO, ANY AND ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

6. INTELLECTUAL PROPERTY.

6.1 Grace warrants that the use by Computer Task Group, Incorporated and/or any Personnel of any and all materials furnished by Grace to Computer Task Group, Incorporated under this Agreement will not violate or conflict with any United States intellectual property rights of any third parties including, but not limited to, copyrights, patents and trademarks. If Personnel perform code renovation services hereunder, Grace warrants that it is authorized to permit Computer Task Group, Incorporated and Personnel to use all relevant code for the purposes of performing services hereunder.

6.2 Grace agrees to indemnify and hold harmless Computer Task Group, Incorporated, its directors, officers, agents, contractors and employees, including Personnel, against any and all claims, demands or causes of action and all related costs, losses, liabilities, expenses and judgements incurred, including reasonable attorneys' fees and court costs, resulting from Grace's breach of warranty as set forth in Section 6.1 above; provided, however, that Grace's obligation shall not extend to the negligence or fault of Computer Task Group, Incorporated. Further, Grace shall have the exclusive right to control the defense of any claim, demand or cause of action arising from Grace's alleged breach of warranty in Section 6.1 above.

6.3 The provisions of this Section 6 shall survive the termination of this Agreement for a period of one (1) year.

7. INDEMNIFICATION FOR THIRD PARTY CLAIMS.

7.1 Computer Task Group, Incorporated agrees to indemnify and hold harmless Grace, its directors, officers, agents, contractors and employees, against any and all claims, demands or causes of action, and all related costs, losses, liabilities, expenses and judgements incurred, including reasonable attorneys' fees and court costs, brought by a third party, including employees, resulting from negligence, willful conduct and/or breach of this Agreement of or by Computer Task Group, Incorporated. The parties agree that this indemnity does indemnify Grace against any liability caused by or resulting from the joint and combined negligence of Grace and Computer Task Group, Incorporated and its Personnel. This provision is not intended to and does not indemnify Grace against any liability caused by or resulting from the sole negligence of Grace.

7.2 Computer Task Group, Incorporated and Grace agree that the obligations of this Section 7 shall not apply to third party claims that are the subject of Section 6.2 of this Agreement and further shall be limited by the provisions of Section 8 below.

8. LIMITATIONS OF LIABILITY. Computer Task Group, Incorporated and Grace agree that neither shall be entitled to recover from the other for any incidental, indirect, special or consequential damages sustained resulting from the action or inaction of the other under this Agreement, whether the cause of action against the other is in contract, breach of warranty, tort, gross negligence or otherwise, including, but not limited to lost profits, lost opportunities and/or delay damages, even if the other party was advised of or was aware of the potential for such damages.

9. CONFIDENTIAL INFORMATION.

9.1 "Confidential Information" as used herein shall mean with respect to each of Computer Task Group, Incorporated and Grace information that: (a) is disclosed or obtained by the other during the course of services being provided under this Agreement; and (b) includes any non-public information that either party indicates as being proprietary and/or confidential, such as know-how, trade secrets, tools, methods, techniques, designs, computer source code, employee information, pricing information, financial information and business strategies. Confidential information with respect to each of the parties shall not include information that was rightfully in the possession of the other prior to disclosure, information in the public domain, information received from a third party not under any obligation of confidentiality or information independently developed by the other party.

9.2 Computer Task Group, Incorporated and Grace agree to hold all Confidential Information of the other in trust and confidence, not to disclose Confidential Information of the other except to those of its respective employees, consultants and legal counsel as may be required to carry out or enforce the terms and conditions of this Agreement, and not to use Confidential Information except in connection with the services provided hereunder. Computer Task Group, Incorporated and Grace agree to make diligent efforts to maintain the secrecy of all Confidential Information of the other with at least the same degree of care that it uses with respect to its own.

9.3 Grace agrees that the compensation arrangements between Computer Task Group, Incorporated and Personnel and the financial terms of this Agreement constitute Confidential Information of Computer Task Group, Incorporated. Grace agrees not to request that any Personnel disclose such Confidential Information to it and Grace further agrees not to disclose any such Confidential Information to any third parties.

9.4 The parties agree that disclosure or use of Confidential Information in breach of this Section 9 may give rise to irreparable harm to the injured party and acknowledge that remedies other than injunctive relief may not be adequate. Accordingly, each party has the right to seek equitable and injunctive relief to prevent the unauthorized disclosure or use of any of its Confidential Information, as well as to seek appropriate monetary damages.

9.5 The provisions of this Section 9 shall survive the termination of this Agreement for a period of three (3) years.

10. SOLICITATION AND HIRING. Computer Task Group, Incorporated and Grace agree during the term of this Agreement and for a period of one hundred eighty (180) days after its termination not to knowingly solicit or hire as an employee or consultant any employee or consultant of the other who was involved in providing, supervising, monitoring or administering the services provided under this Agreement during the six (6) month period prior to the solicitation or hiring.

11. INSURANCE.

11.1 Computer Task Group, Incorporated agrees to carry and maintain in force at all times during the term of this Agreement the lines of insurance coverage with minimum policy limits as follows:

11.1.1 Workers' Compensation – Statutory with limits as prescribed by applicable state law and Employer's Liability with limits of $1,000,000.00 per accident, per employee and in the aggregate;

11.1.2 Commercial General Liability, with contractual liability coverage, – Limits of $1,000,000.00, combined single limit bodily injury and property damage, per occurrence and in the aggregate; and

- 4 -

11.1.3 Business Automobile Liability – Limits of $1,000,000.00, combined single limit, each accident.

11.2 Computer Task Group, Incorporated agrees to name Grace as an additional insured on each policy.

11.3 Computer Task Group, Incorporated agrees to provide to Grace certificates of insurance evidencing these coverages and limits and its additional insured status within thirty (30) days of the date of this Agreement and from time to time during the term of this Agreement upon Grace's reasonable request.

12. TERM AND TERMINATION.

12.1 The term of this Agreement shall be for a period of three (3) years, commencing on the date first set forth above, unless terminated earlier pursuant to this Section 12. This Agreement may be renewed or the term extended by the written agreement of the parties.

12.2 Computer Task Group, Incorporated or Grace may terminate this Agreement or any Purchase Order issued hereunder upon at least thirty (30) days prior written notice to the other in the event that the other has breached any of the terms or conditions hereof and such breach has not been cured within such thirty (30) day period.

12.3 Computer Task Group, Incorporated or Grace may terminate this Agreement or any Purchase Order issued hereunder upon at least thirty (30) days prior written notice to the other.

12.4 Grace agrees to pay Computer Task Group, Incorporated for all undisputed fees and expenses incurred for services provided hereunder through the effective date of termination.

13. DISPUTE RESOLUTION. Computer Task Group, Incorporated and Grace agree that any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be submitted to binding arbitration under the rules of the American Arbitration Association. The arbitrators shall be bound by any limitations of liability as set forth in this Agreement and shall in no event award either party any amount representing incidental, indirect, special or consequential or punitive damages. Any award properly made hereunder may be entered in any court having competent jurisdiction.

14. FORCE MAJEURE. Neither Computer Task Group, Incorporated nor Grace shall be considered in breach of this Agreement for its failure to perform or its delay in the performance of any obligation hereunder, except for Grace's obligations to pay under Section 4 above, if the performance of such obligation is prevented or delayed by fire, flood, explosion, strike, war, insurrection, embargo, governmental actions or requirements, military authority, act of God or any other event beyond the reasonable control of that party. Computer Task Group, Incorporated and Grace agree to take reasonable actions to minimize the effects of any such event or circumstances.

15. GENERAL.

15.1 All notices required to be given under this Agreement shall be in writing and shall be deemed to be received the following day if delivered by overnight courier, or five (5) days after deposit in the U.S. mail, registered, return receipt requested, if addressed to the parties as set forth on the first page of this Agreement. A party may change its notice address by written notice to the other party.

15.2 This Agreement may not be assigned by Computer Task Group, Incorporated without the prior written consent of Grace.

15.3 The parties shall at all times be independent parties. Neither party is an employee, joint venturer, agent or partner of the other; neither party is authorized to assume or create any obligations or liabilities, express or implied, on behalf of or in the name of the other.

15.4 If any term of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of this Agreement shall remain in full force and effect and shall in no way be invalidated.

15.5 A delay or failure in enforcing any right or remedy afforded hereunder or by law shall not prejudice or operate to waive that right or remedy or any other right or remedy for a future breach of this Agreement; whether of a like or different character.

15.6 The headings used in this Agreement are intended for convenience only. They are not a part of the written understanding of the parties. They shall not affect the construction or interpretation of this Agreement.

15.7 This Agreement may be executed in counterparts, each of which shall be considered an original hereof but all of which together shall constitute one agreement.

15.8 This Agreement shall be interpreted and construed under the laws of the State of Maryland and shall be binding and inure to the benefit of the permitted assigns of the parties.

15.9 This Agreement and any Purchase Orders executed hereunder sets forth the entire agreement between the parties and supersedes all contracts, proposals or agreements, whether oral or in writing, and all negotiations, discussions and conversations, between the parties with respect to the subject matter contained in this Agreement. This Agreement may not be altered, amended or modified or any of its provisions waived except in a written document signed by both parties.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representative on the date first above written.

| Computer Task Group, Incorporated. | Grace Davison, a business unit of W. R. Grace & Co.-Conn. |
|---|---|
| By: *(signature)* | By: *(signature)* |
| Type/Print: Linda Merryman | Type/Print: George Bollock |
| Title: Delivery Director | Title: Director of Information Services |
| Date: 11/9/99 | Date: 11/09/99 |

- 6 -

## PURCHASE ORDER - Exhibit A

In accordance with the Agreement signed between Computer Task Group, Incorporated and Grace Davison, W. R. Grace & Co.-Conn. ("Grace") on _____, 1999 it is agreed as follows:

1. This Purchase Order ("PO") incorporates by reference all of the terms and conditions of the Agreement.

2. The services to be performed under this PO shall be as follows:

Computer Task Group, Incorporated's personnel assigned: __Alaa Qamar__

Start Date: __11/10/99__

Approximate End Date: __2/10/99__

Authorized Funds: [CHOOSE OPTION(S)]

    ___ NUMBER OF HOURS AUTHORIZED: _____
    ✓ DOLLARS AUTHORIZED: $ __30,000__

Hourly Billing Rate: __60.00__ Per Hour*

Special Billing Rates/Terms (Overtime, Etc.): _____

Additional reimbursed expenses: _____

Project/Services Description __Programming/Development__

Issued by:
Computer Task Group, Incorporated.
Title: __Account Executive__
Date: __11/9/99__

Grace Davison, W. R. Grace & Co.-Conn.
Title: __George Bollock__
       __Director, Information Services__
Date: __11/05/99__

- 7 -

## AMENDMENT

The Computer Technical Services Agreement ("Agreement") between Grace Davison, a business unit of W.R. Grace & Co.-Conn. ("Grace") and Computer Task Group, Incorporated dated November 9, 1999 is hereby amended as follows:

Section 5.3, Limited Warranty
- "AETEA" is deleted and replaced with "COMPUTER TASK GROUP, INC." in the second line.

Section 7.1, Indemnification for Third Party Claims
- Insert "to the extent" before "resulting" in the fourth line.
- The last two sentences of the section are deleted.

Section 8, Limitations of Liability – The following is added to the end of this section: "Except for personal injury or property damage, Grace agrees that Computer Task Group, Inc.'s total liability to Grace shall be limited to the amount of compensation paid to Computer Task Group, Inc. under this Agreement."

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed by their duly authorized representatives, as to the date set forth below.

Grace Davison, a business unit
Of W.R. Grace & Co. – Conn.

By: _George Bollock_ (signature)
Name: George Bollock
Title: Director of Information Services
Date: 11/05/99

Computer Task Group, Incorporated

By: _Linda M___ (signature)
Name: Linda Merchman
Title: Delivery Director
Date: 11/9/99

**Sierra Asset Management, LLC**

2699 White Road, Suite 255; Irvine, CA 92614
949-660-1144 extension 17; Fax: 949-660-0632

FILED

2002 JAN 23 AM

US BANKRUPTCY COURT
DISTRICT OF DELAWARE

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

W.R. GRACE & CO., *et al.*,

Debtor

Chapter 11
Jointly Administered Under
Case No. 01-01139

**NOTICE OF TRANSFER OF CLAIM OTHER THAN FOR SECURITY AND WAIVER OF NOTICE**

Rule 3001(e)

PLEASE TAKE NOTICE that the unsecured claim of **Computer Task Group, Inc.** (the "Transferor") against the Debtor in the amount of **$4,380.00** and all Proofs of Claim relating thereto, have been transferred and assigned other than for security to Sierra Asset Management, LLC and any of its affiliates (the "Transferee"). The Transferee extended an offer to purchase the claim in the bankruptcy case. To evidence acceptance of the Transferee's offer, the Transferor negotiated the Transferee's offer tendered in consideration of the claim.

The undersigned hereby submits this as evidence of the transfer pursuant to Rule 3001 (e) of the Federal Rules of Bankruptcy Procedure, of all rights, title, and interest in and to the pre-petition claim originally held by the Transferor to Sierra Asset Management, LLC and any of its affiliates. The Clerk of the Court is authorized to change the address on the claim filed by transferor to that of the transferee listed below, following notice to the transferor.

**Transferor:**
**Computer Task Group, Inc.**
**800 Delaware Ave.**
**Buffalo, NY 14209**

**Transferee:**
**Sierra Asset Management, LLC and any of its affiliates**

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed on 1/18/02 at Irvine, California.

Joseph Lind


POSTED

# Transfer of Claim
## W.R. Grace & Co., et al.

This agreement (the "Agreement") is entered into between _Computer Task Group, Inc._ ("Assignor") and Sierra Asset Management, LLC, or assignee ("Assignee") with regard to the following matters:

Assignor in consideration of the sum of **25% (Twenty Five Percent) of the current amount outstanding on the Assignor's trade claim** (the "Purchase Price"), does hereby transfer to Assignee all of the Assignor's right, title and interest in and to the claim or claims of Assignor (the "Claim") against W.R. Grace & Co., et al. and certain of its affiliates, a debtor in proceedings for reorganization (the Proceedings") in the United States Bankruptcy Court of Northern California (San Jose) (the "Debtor") in the current amount of not less than _$4,380.00_ [insert the amount due, which shall be defined as "the Claim Amount"], and all rights and benefits of the Assignor relating to the Claim including, without limitation, Assignor's rights to receive interest, penalties and fees, if any, which may be paid with respect to the Claim, and all cash, securities, instruments, and other property which may be paid or issued by the Debtor in satisfaction of the Claim. The Claim is based on amounts owed to Assignor by Debtor as set forth below and this assignment is an absolute and unconditional assignment of ownership of the Claim, and shall not be deemed to create a security interest.

Assignee shall be entitled to all distributions made by the Debtor on account of the Claim, even distributions made and attributable to the Claim being allowed in the Debtor's case, in an amount in excess of the Claim Amount.

Assignor represents and warrants that the amount of the Claim is not less than the Claim Amount, that this amount is the true and correct amount owed by the Debtor to the Assignor, and that no valid defense or right of set-off to the Claim exists.

Assignor further represents and warrants that no payment has been received by Assignor or by any third party claiming through Assignor, in full or partial satisfaction of the Claim, that Assignor has not previously assigned, sold or pledged the Claim, in whole or in part, to any third party, that Assignor owns and has title to the Claim free and clear of any and all liens, security interests or encumbrances of any kind or nature whatsoever, and that there are no offsets or defenses that have been or may be asserted by or on behalf of Debtor or any other party to reduce the amount of the Claim or to impair its value.

Unless otherwise agreed to in writing, Assignor warrants and represents it shall file a Proof of Claim in the Debtor's bankruptcy case on account of the Claim. Should it be determined that any transfer by the Debtor to the Assignor is or could have been avoided as a preferential payment, Assignor shall repay such transfer to the Debtor in a timely manner. Should Assignor fail to repay such transfer to the Debtor, then Assignee, solely at its own option, shall be entitled to make said payment on account of the avoided transfer, and the Assignor shall indemnify the Assignee for any amounts paid to the Debtor.

Assignor is aware that the Purchase Price may differ from the amount ultimately distributed in the Proceedings with respect to the Claim and that such amount may not be absolutely determined until entry of a final order confirming a plan or reorganization. Assignor acknowledges that, except as set forth in this agreement, neither Assignee nor any agent or representative of Assignee has made any representation whatsoever to Assignor regarding the status of the Proceedings, the condition of the Debtor (financial or otherwise), any other matter relating to the proceedings, the Debtor, or the likelihood of recovery of the Claim. Assignor represents that it has adequate information concerning the business and financial condition of Debtor and the status of the Proceedings to make an informed decision regarding its purchase of the Claim, and that it has independently and without reliance on Assignee, and based on such information as Assignor has deemed appropriate (including information available from the files of the Court of the Proceedings), made its own analysis and decision with regard to entering into this Agreement.

In the event that the Claim is disallowed, reduced, subordinated, or impaired for any reason whatsoever, Assignor agrees to immediately refund and pay to Assignee, a pro-rata share of the Purchase Price equal to the ratio of the amount of the Claim disallowed divided by the Claim. The Assignee, as set forth below, shall have no obligation to otherwise defend the Claim, and the refund obligation of the Assignor pursuant to this section shall be absolutely payable to Assignee without regard to whether Assignee defends the Claim. Assignor shall have no obligation to expend any resources for defending the Claim. Assignee shall have the right to defend the claim, only at its own expense and shall not look to Assignor for any reimbursement for legal expenses.

To the extent that it may be required by applicable law, Assignor hereby irrevocably appoints Assignee as its true and lawful attorney and authorizes Assignee to act in Assignor's stead, to demand, sue for, compromise and recover all such amounts as now are, or may hereafter become, due and payable for or on account of the Claim. Assignor grants unto Assignee full authority to do all things necessary to enforce the Claim and Assignor's rights thereunder. Assignor agrees that the powers granted by this paragraph are discretionary in nature and that the Assignee may exercise or decline to exercise such powers at Assignee's sole option. Assignee shall have no obligation to take any action to prove or defend the Claim's validity or

amount in the Proceedings or in any other dispute arising out of or relating to the Claim, whether or not suit or other proceedings are commenced, and whether in mediation, arbitration, at trial, on appeal, or in administrative proceedings. Assignor agrees to take such reasonable further action, as may be necessary or desirable to effect the Assignment of the Claim and any payments or distributions on account of the Claim to Assignee including, without limitation, the execution of appropriate transfer powers, corporate resolutions and consents.

Assignor shall forward to Assignee all notices received from Debtor, the court or any third party with respect to the Claim, including any ballot with regard to voting the Claim in the Proceeding, and shall take such action with respect to the Claim in the proceedings, as Assignee may from time to time request. Assignor acknowledges that any distribution received by Assignor on account of the Claim from any source, whether in form of cash, securities, instrument or any other property or right, is the property of and absolutely owned by the Assignee, that Assignor holds and will hold such property in trust for the benefit of Assignee and will, at its own expense, promptly deliver to Assignee any such property in the same form received, together with any endorsements or documents necessary to transfer such property to Assignee.

In the event of any dispute arising out of or relating to this Agreement, whether or not suit or other proceedings is commenced, and whether in mediation, arbitration, at trial, on appeal, in administrative proceedings, or in bankruptcy (including, without limitation, any adversary proceeding or contested matter in any bankruptcy case filed on account of the Assignor), the prevailing party shall be entitled to its costs and expenses incurred, including reasonable attorney fees.

The terms of this Agreement shall be binding upon, and shall inure to the benefit of Assignor, Assignee and their respective successors and assigns.

Assignor hereby acknowledges that Assignee may at any time further assign the Claim together with all rights, title and interests of Assignee under this Agreement. All representations and warranties of the Assignor made herein shall survive the execution and delivery of this Agreement. This Agreement may be executed in counterparts and all such counterparts taken together shall deemed to constitute a single agreement.

This contract is not valid and enforceable without acceptance of this Agreement with all necessary supporting documents by the Transferee, as evidenced by a countersignature of this Agreement.

This Agreement shall be governed by a construed in accordance with the laws of the State of California. Any action arising under or relating to this Agreement may be brought in any state or federal court located in the California, and Assignor consents to and confer personal jurisdiction over Assignor by such court or courts and agrees that service of process may be upon Assignor by mailing a copy of said process to Assignor at the address set forth in this Agreement, and in any action hereunder, Assignor and Assignee waives any right to demand a trial by jury.

*Assignee shall remit Purchase Price to Assignor, at the address below, within fifteen (15) days of this Agreement*

### CONSENT AND WAIVER

Assignor hereby acknowledges and consents to all of the terms set forth in this Agreement and hereby waives its right to raise any objection thereto and its right to receive notice pursuant to rule 3001 of the rules of the Bankruptcy procedure.

IN WITNESS WHEREOF, the undersigned Assignor hereto sets his hand this 4th day of JANUARY, 2002.

ATTEST

By: [signature]
Signature

Mark Stuhlmiller, Associate General Counsel
[Print Name and Title]

716-887-7225
Phone Number

716-881-3000

Sierra Asset Mgmt, LLC; 2699 White Rd, Ste 255, Irvine, CA 92614
949-660-1144x10; fax: 949-660-0632 jlind@sierrafunds.com

Computer Task Group, Inc.
Name of Company

800 Delaware Avenue
Street Address

Buffalo, NY 14209
City, State & Zip

(716) 887 7370
Fax Number

[signature]
Agreed and Acknowledged,
Sierra Asset Management, LLC

amount in the Proceedings or in any other dispute arising out of or relating to the Claim, whether or not suit or other proceedings are commenced, and whether in mediation, arbitration, at trial, on appeal, or in administrative proceedings. Assignor agrees to take such reasonable further action, as may be necessary or desirable to effect the Assignment of the Claim and any payments or distributions on account of the Claim to Assignee including, without limitation, the execution of appropriate transfer powers, corporate resolutions and consents.

Assignor shall forward to Assignee all notices received from Debtor, the court or any third party with respect to the Claim, including any ballot with regard to voting the Claim in the Proceeding, and shall take such action with respect to the Claim in the proceedings, as Assignee may from time to time request. Assignor acknowledges that any distribution received by Assignor on account of the Claim from any source, whether in form of cash, securities, instrument or any other property or right, is the property of and absolutely owned by the Assignee, that Assignor holds and will hold such property in trust for the benefit of Assignee and will, at its own expense, promptly deliver to Assignee any such property in the same form received, together with any endorsements or documents necessary to transfer such property to Assignee.

In the event of any dispute arising out of or relating to this Agreement, whether or not suit or other proceedings is commenced, and whether in mediation, arbitration, at trial, on appeal, in administrative proceedings, or in bankruptcy (including, without limitation, any adversary proceeding or contested matter in any bankruptcy case filed on account of the Assignor), the prevailing party shall be entitled to its costs and expenses incurred, including reasonable attorney fees.

The terms of this Agreement shall be binding upon, and shall inure to the benefit of Assignor, Assignee and their respective successors and assigns.

Assignor hereby acknowledges that Assignee may at any time further assign the Claim together with all rights, title and interests of Assignee under this Agreement. All representations and warranties of the Assignor made herein shall survive the execution and delivery of this Agreement. This Agreement may be executed in counterparts and all such counterparts taken together shall deemed to constitute a single agreement.

This contract is not valid and enforceable without acceptance of this Agreement with all necessary supporting documents by the Transferee, as evidenced by a countersignature of this Agreement.

This Agreement shall be governed by a construed in accordance with the laws of the State of California. Any action arising under or relating to this Agreement may be brought in any state or federal court located in the California, and Assignor consents to and confer personal jurisdiction over Assignor by such court or courts and agrees that service of process may be upon Assignor by mailing a copy of said process to Assignor at the address set forth in this Agreement, and in any action hereunder, Assignor and Assignee waives any right to demand a trial by jury.

*Assignee shall remit Purchase Price to Assignor, at the address below, within fifteen (15) days of this Agreement*

### CONSENT AND WAIVER

Assignor hereby acknowledges and consents to all of the terms set forth in this Agreement and hereby waives its right to raise any objection thereto and its right to receive notice pursuant to rule 3001 of the rules of the Bankruptcy procedure.

IN WITNESS WHEREOF, the undersigned Assignor hereto sets his hand this 4th day of JANUARY, 2002.

ATTEST

By: [signature]
Signature

Mark Stuhlmiller, Associate General Counsel
[Print Name and Title]

716-887-7225
Phone Number

Computer Task Group, Inc.
Name of Company

800 Delaware Avenue
Street Address

Buffalo, NY  14209
City, State & Zip

(716) 887-7370
Fax Number

[signature]
Agreed and Acknowledged,
Sierra Asset Management, LLC

Sierra Asset Mgmt, LLC; 2699 White Rd, Ste 255, Irvine, CA 92614
949-660-1144x10; fax: 949-660-0632 jlind@sierrafunds.com