IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-1139 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | **Hearing Date: June 27, 2005 @ Noon** |
| | ) | **Related to Docket No. 8486** |
| | ) | |

**OBJECTION OF THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL
INJURY CLAIMANTS TO THE DEBTORS' SIXTH MOTION FOR AN
ORDER PURSUANT TO 11 U.S.C. §1121(d) EXTENDING DEBTORS'
EXCLUSIVE PERIODS IN WHICH TO FILE A CHAPTER 11 PLAN
AND TO SOLICIT VOTES THEREON [DI 8486]**

The Official Committee of Asbestos Personal Injury Claimants (the "PI Committee"), by and through its undersigned counsel, respectfully submits its objection to the motion of W. R. Grace & Co., et al. ("Debtors") for the entry of an order pursuant to 11 U.S.C. §1121(d) further extending the exclusive periods during which the Debtors have the exclusive right to file a Chapter 11 plan through November 23, 2005 and solicit acceptances thereto through January 23, 2006 (the "Motion"). In support of its objection, the PI Committee states as follows:

**INTRODUCTION**

1.      On May 23, 2005, over four (4) years after the Debtors commenced these proceedings, the Debtors filed their eighth motion to extend the periods within which the Debtors have the exclusive right to file a plan of reorganization and solicit acceptances thereto.

2.      The Debtors' request must be denied as the Debtors have failed to demonstrate that any cause exists for the extension of exclusivity and furthermore, the Debtors have failed

{D0044685:1 }                                            1

to make good faith progress towards a plan of reorganization. Given the facts of this case, the Debtors' latest attempt to delay the resolution of these cases must be denied.

## BACKGROUND

3. On April 2, 2001 (the "Petition Date"), in the face of 'overwhelming asbestos-related lawsuits,' the Debtors commenced the instant proceedings by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the Clerk of this Court. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. On the Petition Date, the Court entered an order authorizing the joint administration of these cases for procedural purposes.

4. No trustee or examiner has been appointed in these cases. On April 12, 2001, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the PI Committee, the Official Committee of Asbestos Property Damage Claimants (the "PD Committee") and the Official Committee of Unsecured Creditors (the "General Creditors' Committee"). On June 18, 2001, the U.S. Trustee appointed the Official Committee of Equity Security Holders (the "Equity Committee"). On May 24, 2004, this Court signed an Order appointing David T. Austern as the Legal Representative for Future Asbestos Claimants (the "Futures Representative").

5. Prior to the instant request for extension of the exclusivity periods, Debtors requested, and were granted, seven (7) extensions. Thus far, the exclusivity periods have been extended for almost four years. The instant Motion seeks to extend both the Exclusive Filing Period and the Exclusive Solicitation Period for an additional six months.

**OBJECTION**

6. The Debtors have been given ample opportunity, in connection with the granting of the Debtors' previous motions to extend exclusivity, to progress towards a consensual plan of reorganization. During this time, this Court has been compelled to direct the Debtors to move this case forward on multiple occasions. Indeed, what minimal progress has been made toward a resolution of these cases has come as a direct result of this Court's expressions of concern and frustration, as well as this Court's specific directions to the Debtors' to move these cases forward. For instance, at the hearing on February 23, 2004, after an exchange with Debtors' counsel concerning when the Debtors would be filing a plan, this Court expressed concern with the Debtors' lack of progress. After Debtors' counsel stated that he could not advise the Court when a plan would be filed, this Court stated:

> Well, then, I need some answers. This case is now 3 years old. It's time for the Debtor to know what it's business plan is, what it's operational plan is, what it's reorganization plan, in structure. I don't expect that you've got all the negotiations done. I understand your need to figure out what the asbestos liabilities are before you can even conclude that piece. But, I sent you off to talk to all the other constituent groups 2 months ago[1], and I expect that you're still doing that, so that the basis of a plan can be put together. It's very long, folks, it's very long, and I'm starting to wonder whether the Debtor-in Possession, is going to be able to get this done, and if not whether to replace the Debtors. That's the point I'm at.

*See*, Transcript of Hearing of February 2, 2004, *In re W.R. Grace & Co. Inc.,* Case No. 01-1139 (JKF), Tr. 17 - 18, annexed as Exhibit A.

7. Thereafter, this Court held a hearing on the Debtors' Sixth Motion to Extend Exclusivity ("Sixth Exclusivity Motion"), following the PI Committee's objection thereto.

---

[1] At the September 2003 Omnibus Hearing, in connection with the Debtors' Fifth Motion to Extend Exclusivity, this Court ordered the Debtors to meet with all of the creditor constituencies to negotiate a plan of reorganization.

{D0044685:1 }                          3

Elihu Inselbuch argued the position of the PI Committee at that hearing and discussed the Debtors' inactivity in the many months leading up to thereto. For example, Mr. Inselbuch pointed out that in approximately July of 2002, during a status conference with Judge Wolin involving certain asbestos-related bankruptcies, Mr. Inselbuch raised the issue that there was no Futures representative appointed in either this case or USG. At Judge Wolin's request, the PI Committee suggested two candidates for the role of Futures representative. One of those individuals was selected by USG and ultimately appointed in that case. The Grace Debtors, on the other hand, rejected without explanation the other candidate proposed by the PI Committee. At that time, the PI Committee asked the Debtors to suggest an acceptable candidate. The Debtors waiter for over one year to respond. In the fall of 2003, the Debtors finally proposed to appoint Judge Hamlin as Futures representative. Although the Debtors' application did not result in the appointment of a Futures representative, the delay in the appointment of any Futures representative for well over a year was the result of the Debtors' inability, or unwillingness, to move these cases forward.

8.      During the argument on the Sixth Exclusivity Motion, this Court asked counsel for the Debtors whether the Debtors intended to seek a 524(g) injunction. In response, counsel for the Debtors stated "Your Honor, to this day, I can't tell you that it will be a 524(g) plan." Transcript of Hearing of March 22, 2004, *In re W.R. Grace & Co. Inc.,* Case No. 01-1139 (JKF), Tr. 47, annexed as Exhibit B. At that time, these cases were almost three years old and the Debtors were unable to make an unequivocal representation to the Court as to whether they would even be seeking a Section 524(g) injunction. This is despite the fact that they have repeatedly asserted to this Court that these cases were filed due to "overwhelming asbestos-related lawsuits against the Company."

9.      Following additional colloquy between this Court and Debtors' counsel, this Court stated:

> It's been a long time. And, frankly, I'm getting to the point where if I don't lift exclusivity, I'm going to appoint a trustee, and that will cause all sorts of problems, I know, for the debtors lending perspective, if nothing else. But, this has gone on too long, with too little progress. Now, last September, I thought I provided some marching orders so that people could start talking. I'm glad to hear that the debtor has taken that to heart and attempted to try to get the constituents together. But, I still don't see any progress as a result of it, and that was six months ago.

Transcript of Hearing of March 22, 2004, *In re W.R. Grace & Co. Inc.,* Case No. 01-1139 (JKF), Tr. 48, annexed as Exhibit B.

10.     Later in the hearing, this Court stated:

> There is no reason for me to lift exclusivity if [you are not seeking a 524(g) injunction]. But there's also no reason for the debtor to be delaying any further. If you want 524, then get the constituent parts in place, meaning a Futures Rep, and I expect a motion, one way or the other, telling me what you're going to do set for the next omnibus hearing.

Transcript of Hearing of March 22, 2004, *In re W.R. Grace & Co. Inc.,* Case No. 01-1139 (JKF), Tr. 49, annexed as Exhibit B.

11.     The argument on the Debtors' Sixth Exclusivity Motion was continued to the May 24, 2004 Hearing. At that hearing, and clearly in response to this Court's previous comments, counsel to the Debtors proposed that they would be prepared to file a plan of reorganization within 90 to 120 days that they "hope will be one that reflects consent and agreement for all of the constituencies, all of the constituencies except the bodily injury constituency." Transcript of Hearing of May 24, 2004, *In re W.R. Grace & Co. Inc.,* Case No. 01-1139 (JKF), Tr. 52, annexed as Exhibit C. Near the conclusion of that argument, this Court stated:

> Well, I'm not inclined to deny it [the Debtors' Sixth Motion to Extend Exclusivity] right now, Mr. Lockwood, but I am, like you, getting a little frustrated with the fact that I don't have a plan on the table. So I think I am going to give the debtor a last

period of exclusivity, and that's what it's going to be, a last period of exclusivity to get this done.

Transcript of Hearing of May 24, 2004, *In re W.R. Grace & Co. Inc.,* Case No. 01-1139 (JKF), Tr. 68, annexed as Exhibit C. At that hearing, this Court gave the Debtors a deadline to file a plan of reorganization and stated "[b]ut if I don't have a plan that's on track and headed toward the confirmation arena, if nothing else, I don't think there will be another extension." *Id.*, at 70.

12. Six months later, on November 13, 2004, the Debtors' Plan of Reorganization (the "Plan") and Disclosure Statement *were filed without the support of any other constituency*. On January 13, 2005, the Debtors, Official Committee of Unsecured Creditors, and the Official Committee of Equity Security Holders ("Plan Proponents") filed the Amended Joint Plan of Reorganization ("Amended Plan") and Amended Disclosure Statement. The Amended Plan does not have the support of the Futures Representative, the PD Committee, or the PI Committee. More importantly, the Amended Plan has such serious deficiencies that the Amended Plan is unconfirmable as a matter of law.[2] These deficiencies, include, but are not limited to, the legally unsupportable position that the two proposed classes of asbestos personal injury claims "shall be paid in full," and are therefore "unimpaired." As a result, the Amended Plan asserts, asbestos creditors shall be conclusively presumed to have accepted the plan under 11 U.S.C. § 1126(f), and, accordingly, they have no right to vote. *See*, Amended Plan §§ 3.1 & 6.3.

### STANDARD FOR EXTENSION OF EXCLUSIVITY PERIODS

13. Section 1121(d) of the Bankruptcy Code provides that the Court may reduce or increase the 120-day or 180-day exclusive periods for a debtor to file and solicit acceptances of

---

[2] *See*, Objection of the Official Committee of Asbestos Personal Injury Claimants to the Debtors' Proposed Disclosure Statement [DI 7313].

{D0044685:1 }  6

its reorganization plan if "cause" exists. Debtors, in this instance, allege sufficient "cause" exists to extend the exclusivity period for an additional six months, bringing the total extension to approximately four years. In seeking the extension, Debtors seek to retain total control over the plan process, unencumbered by any input from, and without any regard to, the interest of its creditors. Such a result is improper under Section 1121(d).

14. Requests to extend or reduce a period of exclusivity should "be granted neither routinely nor cavalierly." *In re Lehigh Valley Professional Sports Club, Inc.,* 2000 WL 290187, at *3 (Bankr. E.D. Pa. 2000); *Matter of All Seasons Indus. Inc.,* 121 B.R. 1002, 1003 (Bankr. N.D. Ind. 1990); *In re Curry Corp.,* 148 B.R. 754, 756 (Bankr. S.D.N.Y. 1992) ("The court will not routinely extend the exclusivity period absent a showing of 'cause' when creditors object to such requests for extensions"); *In re Pine Run Trust Inc.,* 67 B.R. 432, 434 (Bankr. E.D.Pa. 1986) ("Furthermore, both the language and the purpose of this section require that an extension not be granted routinely"); *In re Nicolet, Inc.,* 80 B.R. 733, 740-741 (Bankr. E.D. Pa. 1988).

15. In enacting Section 1121(d), Congress explicitly sought to achieve two goals: (1) grant the debtor a reasonable time to confirm a plan without the threat of a competing plan; and (2) at the same time, ensure that a debtor would not use Chapter 11 as a mechanism through which to operate indefinitely without attempting to reorganize. *See In re Clamp-All Corp.,* 233 B.R. 198, 207 (Bankr. D. Mass. 1999) *citing Matter of Mother Hubbard, Inc.,* 152 B.R. 189, 195 (Bankr. W.D. Mich. 1993); *In re River Bend-Oxford Assocs.,* 114 B.R. 111, 114 (Bankr. D. Md. 1990); *In re Geriatrics Nursing Home, Inc.,* 187 B.R. 128, 131-132 (D.N.J. 1995).

16. Legislative history reveals Section 1121(d) is an attempt to create a balance between the rights of debtors and creditors by allowing debtors *sufficient time to negotiate a settlement*, while at the same time avoiding undue delay for creditors. H. R. REP. NO. 595, 95th

Cong., 1st Sess. 231-32 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6190-92. Long and numerous extensions of the exclusivity period upset that balance and should not be encouraged. *In re Timbers of Inwood Forest Assoc.,* 808 F.2d 363, 372 (5th Cir. 1987), *aff'd*, 484 U.S. 365 (1988).

17.    In virtually every case where an extension has been granted, the debtor has shown substantial progress in formulating a plan during the first 120 days. *Southwest Oil Co. of Jourdanton,* 84 B.R. 488, 451 (Bankr. W.D. Tex. 1987).

18.    The burden is on the party seeking an extension of the exclusive periods to file a plan and solicit acceptances thereof to demonstrate the existence of good cause warranting the extensions. *Matter of Newark Airport/Hotel LP*, 156 B.R. 444, 451 (Bankr. D.N.J.) *aff'd* 155 B.R. 93 (D.N.J. 1993).

19.    Cause for extension of a debtor's exclusive periods does not exist where the debtor had made no showing that it can successfully reorganize if the exclusive periods are extended. *Matter of American Fed'n of Television and Radio Artists*, 30 B.R. 772, 774 (Bankr. S.D.N.Y. 1983). *See Curry Corp.,* 148 B.R. at 756 (denying an extension where "[t]he debtor has not even demonstrated that a plan of reorganization might be forthcoming"); *Southwest Oil Co. of Jourdanton,* 84 B.R. at 451; *Pine Run Trust*, 67 B.R. at 435. Some promise of probable success in formulating a plan of reorganization is an element of cause for an extension of the exclusive periods. *Id.*; *Matter of Newark Airport/Hotel LP*, 156 B.R. 444, 451 (Bankr. D.N.J.) *aff'd* 155 B.R. 93 (D.N.J. 1993).

## **ARGUMENT**

20.    This court should not extend Debtors' Exclusivity Periods and thereby allow Debtors to retain total control over the plan process for over four (4) years. Previously, the

Debtors asserted that a "meaningful opportunity" was needed to negotiate a consensual plan. *See*, Transcript of Hearing of August 25, 2003, *In re W.R. Grace & Co., Inc.,* Case No. 01-1139 (JKF), Tr. 15, annexed as Exhibit D.  This Court has allowed the Debtors this opportunity through seven motions to extend exclusivity, providing the Debtors with over 50 months to take advantage of this "meaningful opportunity."  Despite this extended period of time, the Debtors have only progressed to the point of filing the utterly unconfirmable Amended Plan and certain related filings which seek to embark on a course of litigation which will require years to resolve.

21.     In support of the Motion, the Debtors cite to a variety of factors which courts consider to determine whether cause exists to extend the Exclusive Periods.  These factors include (a) the size and complexity of the case, (b) the necessity of sufficient time to negotiate and prepare adequate information, (c) the existence of good faith progress toward reorganization, (d) whether the debtor is paying its debts as they come due, (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan, (f) whether the debtor has made progress in negotiating with creditors, (g) the length of time the case has been pending, (h) whether the debtor is seeking the extension to pressure creditors, and (i) whether unresolved contingencies exist.

22.     As in the previous seven motions, much of the Debtors' Motion relies on the size and complexity of these cases as a basis to extend exclusivity.  However, the size and complexity alone do not provide cause for extension of the exclusivity periods.  *In re Public Service Co. of New Hampshire*, 88 B.R. 521, 537 (Bankr. D.N.H. 1988); *Curry Corp.,* 148 B.R. at 755; *In re Sharon Steel Corp.*, 78 B.R. 762 (Bankr. W.D. Pa. 1987).  Section 1121(d)'s "for cause" language requires the presence of factors in addition to timing, size, and complexity that are specific to the particular debtor and its reorganization to justify an extension of exclusivity.

*Public Service,* 88 B.R. at 537. If size and complexity alone were sufficient to find cause then debtors in complex cases would have an unlimited right to exclusivity and Section 1121(d) would be rendered meaningless in complex cases.

23.　　The Debtors fail to meet their burden that cause exists for the extension of exclusivity in that they have failed to demonstrate reasonable prospects for filing a viable plan. These cases are nearly four years old. For the first three and a half (3 ½) years of these Chapter 11 cases, there was minimal, meaningful effort made by the Debtors to reorganize with a consensual plan and emerge. When the Debtors finally filed a plan of reorganization, after being ordered to do so by the Court, they proposed a completely unconfirmable plan[3].

24.　　Grace entered Chapter 11 for the avowed purpose of resolving its crushing asbestos liabilities. According to the Disclosure Statement, the Debtors were defendants in lawsuits asserting approximately 118,000 Asbestos PI Claims as of the Petition Date. Despite the passage of four years since the Petition Date, the Debtors continue to push for a structure, in the Amended Plan and related documents, of litigation that will require years to resolve. Indeed, the structure proposed by the Amended Plan and related filings is predicated on substantially the same elements that were contained in the Debtors' original asbestos-related case management order filed in 2001. Setting the Debtors' desire for seemingly endless litigation aside, the Amended Plan, and its contention that asbestos claimants are "unimpaired" and therefore conclusively presumed to accept the Amended Plan is legally unsupportable. As more fully discussed in the PI Committee's Objection to the Debtors' Proposed Disclosure Statement [DI 7313], this contention is wrong for two distinct reasons.

---

[3] See Objection of the Official Committee of Asbestos Personal Injury Claimants to the Debtors' Proposed Disclosure Statement [D.I. 7313].

{D0044685:1 }　　　　　　　　　　　　　　10

First, the classes of Asbestos PI Claimants would clearly be "impaired" under the Amended Plan, and their acceptance of the Amended Plan must be solicited under Sections 1125 and 1126(c) of the Bankruptcy Code. Second, and whether or not the Asbestos PI Claimants are afforded the right to vote under Section 1126(c) of the Bankruptcy Code, their vote is affirmatively required under Section 524(g) of the Bankruptcy Code, compliance with which the Amended Plan requires as a condition precedent to confirmation. As a result, and after four years of maintaining exclusivity, the Debtors have failed to demonstrate reasonable prospects for filing a viable plan.

25. As noted above, when this Court granted the Debtors' fifth motion to extend exclusivity, it ordered the parties to confer. On September 5, 2003, the Debtors and the PI Committee conferred, as ordered by the Court. The proposal made by the Debtors could not be regarded as a serious, good faith, attempt to reach a consensual plan. Other than that instance, the only other 'negotiations' that have taken place with the PI Committee took place following the entry of this Court's Order requiring the Debtors to file a plan. Although the Debtors assert in their Motion that they are continue to engage in discussions concerning a consensual plan with certain of the Asbestos Parties[4], they are not engaging in discussions with the PI Committee. *See* Debtors' Motion, ¶ 11. In any event, the Debtors' assertion that they "continue to engage in discussions," without more, does not satisfy the factors for the extension of exclusivity, including a showing of progress in negotiating with creditors or good faith progress toward reorganization.

26. The Debtors assert in their Motion that pending litigation regarding claims justifies a further extension of time. Pending litigation does not automatically justify an

---

[4] It is not clear to the PI Committee who the "Asbestos Parties" are since the Debtors have failed to define the term in the Motion.

{D0044685:1}                                                11

extension of time. *In re Scott*, 37 B.R. 184, 185 (Bankr. W.D. Ky. 1984). Denial of an extension is appropriate even where the debtor contends waiting for the outcome of pending litigation is necessary or that the litigation is distracting. *All Seasons*, 121 B.R. at 1005-06. *See In re Parker Street Florist & Garden Center, Inc.,* 31 B.R. 206, 208 (Bankr. D. Mass. 1983); *Southwest Oil Co.,* 84 B.R. at 452; *Scott*, 37 B.R. at 186; *American Fed'n*, 30 B.R. at 774.

27. Where the need to conclude litigation does not appear to be critical to the debtor's efforts to propose a plan, the debtor should be able to "propose its plan taking into consideration the possible results of that action." *All Seasons*, 121 B.R. at 1005; *Parker,* 31 B.R. at 208. While it may be more convenient to know the results of the litigation, it is not necessary for this Chapter 11 proceeding to be placed in limbo until that time. *Id.*

28. The Debtors must not be permitted to embark on this track of years of litigation, while continuing to maintain exclusivity. If pending litigation was the test for extending exclusivity, then such relief would be granted routinely in every case for great lengths of time. Moreover, the Debtors have had ample time to make a good faith effort to resolve their issues with the PI Committee.

29. Denial of Debtors' Motion will not end their chances for reorganization. "Denying such a motion only affords creditors their right to file the plan; there is no negative effect upon the debtor's co-existing right to file its plan." *All Seasons*, 121 B.R. at 1005. *citing Parker*, 31. B.R. at 207; *See also In re Groosinger's Assocs.*, 116 B.R. 34, 36 (Bankr. S.D.N.Y. 1990) ("A loss of plan exclusivity does not mean the debtor is foreclosed from promulgating a meaningful plan of reorganization; only that the right to propose a Chapter 11 plan will not be exclusive with the debtor"). "The risk is, of course, that while it is developing its plan, another party in interest will file a plan. However, that is as Congress intended." *In re Tony Downs*

*Foods Co.,* 34 B.R. 405, 408 (Bankr. D. Minn. 1983). *See also Southwest Oil Co.,* 84 B.R. at 455. In keeping with the purpose of Section 1121(d), the creditors in this case should have the opportunity to present a viable plan of reorganization, as the Debtors have failed to do so.

30. While it is true that no alternative, viable plan has been agreed upon by the creditor constituencies, it is also true that there is almost no incentive for the creditor constituencies to try to negotiate such a plan with the PI Committee as long as the Debtors maintain total control through exclusivity. This is particularly the case where the Amended Plan seeks to pay general, unsecured, non-asbestos creditors in full with post-petition interest.

31. The Debtors have had plenty of time thus far and have failed to make any progress towards a confirmable plan of reorganization that would justify an extension for the eighth time. This Court has acknowledged the Debtors lack of progress on several occasions. The Debtors have not conferred with the PI Committee in a good faith attempt to reach a consensual plan. Simply put, the Debtors' prior conduct does not give reason to believe that any progress toward a consensual, confirmable plan will be made in the next six months.

## CONCLUSION

32. The Debtors have failed to demonstrate that they have progressed toward the confirmation arena, since this Court gave them the opportunity to do so over one year ago. Furthermore, the Debtors have made no showing that they are capable of successfully reorganizing. In light of these facts, the Court must allow other creditors the opportunity to present a plan of reorganization so that this case may be resolved in a timely manner.

WHEREFORE, for the foregoing reasons, the PI Committee respectfully requests that the Court deny Debtors' Eighth Motion for an Order Extending Debtors' Exclusive Periods in which to File a Chapter 11 Plan and to Solicit Votes Thereon.

Date: <u>June 10, 2005</u>

        CAMPBELL & LEVINE, LLC

        <u>/S/ Mark Hurford</u>
        Marla R. Eskin (No. 2989)
        Mark T. Hurford (No. 3299)
        800 King Street, Suite 300
        Wilmington, DE  19801
        (302) 426-1900

        -and-

        CAPLIN & DRYSDALE, CHARTERED
        Elihu Inselbuch
        399 Park Avenue, 27th Floor
        New York, NY  10022-4614
        (212) 319-7125

        -and-

        CAPLIN & DRYSDALE, CHARTERED
        Peter Van N. Lockwood
        One Thomas Circle, N.W.
        Washington, D.C.  20005
        (202) 862-5000

        Counsel to the Official Committee of
           Asbestos Personal Injury Claimants