## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| | ) |
| **In re:** | ) **Chapter 11** |
| | ) **Case No. 01-1139 (JKF)** |
| **W.R. GRACE & CO., et al.,** | ) **(Jointly Administered)** |
| | ) |
| **Debtors.** | ) **Related Docket Nos. 8486** |
| | ) **Hearing Date: June 27, 2005 at 12:00pm** |

## FUTURE CLAIMANTS REPRESENTATIVE'S OBJECTION TO DEBTORS' EIGHTH MOTION FOR ORDER FURTHER EXTENDING EXCLUSIVE PERIODS FOR FILING A PLAN AND SOLICITING VOTES THEREON

David T. Austern, the legal representative for future asbestos claimants (the "Future Claimants Representative") appointed by this Court in the above-captioned Chapter 11 cases, by counsel, objects to the Eighth Motion for an Order Pursuant to 11 U.S.C. § 1121(d) Extending Debtors' Exclusive Periods in Which to File A Chapter 11 Plan and to Solicit Votes Thereon (the "Motion") [Docket No. 8486], filed by W.R. Grace & Co. and 61 of its affiliates (collectively, the "Debtors"), and in support thereof states:[1]

### PRELIMINARY STATEMENT

Since their filing in 2001, the Debtors' chapter 11 cases have made little progress. After four and a half years, the Debtors have neither formulated a consensual chapter 11 plan of reorganization nor filed a confirmable plan. Despite receiving seven extensions of their exclusive periods, the Debtors are no closer to a confirmable plan than they were at the start of their cases.

On November 13, 2004, the Debtors filed their disclosure statement and plan, as amended on January 13, 2005, without the consent of the asbestos constituencies, including the Future

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Glossary of Terms Used in Plan Documents, filed by the Debtors on January 13, 2005 [Docket No. 7561].

Claimants Representative. The filing of a non-consensual plan, after four years in Chapter 11, is bad enough, but the Debtors' plan is so patently unconfirmable that it provides no basis for meaningful further discussions. Ironically, the Debtors acknowledge that their current plan is unconfirmable but claim that they are entitled to an extension of the exclusive periods because they "continue to make progress in their development of a *confirmable* chapter 11 plan . . . and the requested relief will allow the Debtors to continue moving forward . . . ." Motion at p. 2 (emphasis added). But this claim is based only on the Debtors' illusion of progress, not actual good faith progress.

At a hearing on January 21, 2005, this Court instructed the Debtors to work with the asbestos committees and Future Claimants Representative to develop case management procedures for estimating the value of asbestos-related claims. But the Debtors' recent Motion to Approve PI CMO and Questionnaire [Docket Nos. 8394, 8395 and 8396] (the "PI CMO Motion") proposes an unorthodox and impractical methodology, which is contrary to the methodology employed in other large asbestos bankruptcies to estimate asbestos personal injury claims and is inconsistent with well-established standards for estimating mass tort liabilities. As a result, it should be clear to the objective observer that the Debtors are clinging to exclusivity as leverage in negotiations over the terms of a real plan in these cases and are merely paying lip service to the Court's directive to move forward with the plan process.

Moreover, under the PI CMO Motion, any estimation hearing will not likely occur before late 2006 or early 2007. The PI CMO Motion contemplates extensive discovery, which will be expensive and time consuming. Although estimation of present and future claims against the Debtors may require extensive litigation, the results of estimation should naturally lead to plan confirmation. This can only happen if the Debtors' plan is substantially modified or the asbestos

constituencies are permitted to file a competing plan. Thus, because the Debtors have failed to propose a confirmable plan, the time has come to create a level playing field among the parties-in-interest by denying the Debtors continued exclusivity and permitting the filing of one or more alternative plans. Further, estimation pursuant to the case management order should be closely followed by confirmation hearings. Confirmation of a plan should not be dependent on this Court determining that asbestos claims are below a fixed amount.

Accordingly, the Future Claimants Representative respectfully requests that the Debtors' Motion be denied.

## BACKGROUND

### A. The Debtors' Chapter 11 Cases and Proposed Plan of Reorganization

1.    On April 2, 2001, the Debtors each filed a petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

2.    On October 14, 2004, the deadline set by the Court for the Debtors to file their long-awaited plan, they sought and received an extension to November 15, 2004 to do so. The Debtors premised the need for such an extension on the fact that there had been various discussions with various parties, and in the Debtors' view, "sufficient progress was made for the parties to conclude that additional negotiations could lead to a consensual chapter 11 plan."[2] While that may have been true in mid-October 2004, it was no longer true by November 13, 2004, when the Debtors filed their Disclosure Statement [Docket No. 6896] and Plan of Reorganization [Docket No. 6895] (the "Plan"), without the consent of the asbestos constituencies, including the Future Claimants Representative.

---

[2] Debtors' Motion for Entry of an Order Extending the Time Within Which the Debtors Must File a Chapter 11 Plan, dated October 14, 2004, p. 3 [Docket No. 6641] (the "Motion to Extend").

3.    On January 13, 2005, the Debtors filed their Amended Disclosure Statement [Docket No. 7559] and Amended Plan of Reorganization [Docket No. 7560] (the "Amended Plan"), again without the consent of the asbestos constituencies. In fact, in negotiating the Amended Plan, the Debtors failed to reach out to the Future Claimants Representative and the other asbestos constituencies. Instead, the Debtors focused their energies on the unsecured creditors, winning their consent to the Amended Plan by agreeing to pay their claims at 100 cents on the dollar plus interest.

4.    The same day the Debtors filed their Plan, they also filed several plan related motions (the "Plan Related Motions") [Docket Nos. 6898, 6899 and 6900]. More than twenty objections to the Disclosure Statement and Plan Related Motions have been filed by various parties-in-interest, including a consolidated objection filed by the Future Claimants Representative [Docket No. 7340], which establish, inter alia, that the Disclosure Statement should not be approved because the Plan is patently unconfirmable.

5.    Specifically, the Amended Plan improperly seeks to estimate property damage and personal injury asbestos claims (including future demands) for distribution purposes without appropriate procedural safeguards, and in a manner that unfairly caps the Debtors' aggregate asbestos liability at $1.7 billion. The Amended Plan does not provide for any alternative in the likely event that the Debtors' aggregate asbestos liability is estimated at an amount exceeding $1.7 billion. Further, the Amended Plan wrongly provides that asbestos claims are unimpaired and not entitled to vote.

### B. The Debtors' PI CMO Motion

6.    At a hearing on January 21, 2005, the Court directed the Debtors to work with the asbestos committees and the Future Claimants Representative to develop case management

procedures for estimating the value of asbestos-related claims. But the Debtors did not negotiate the terms of their proposed estimation procedures with the asbestos personal injury committee and the Future Claimants Representative. Although there were discussions among the parties, there was no real give and take. Instead, the Debtors ignored the suggestions of the Future Claimants Representative and the committee (even some that would have corrected obvious clerical errors).

7.      On May 10, 2005, the Debtors filed their PI CMO Motion, which departs from the norms established in other asbestos cases for estimating asbestos-related claims and makes no attempt to provide compensation based on historical verdicts or settlements. By seeking an aggregate estimation of all asbestos claims – property and personal injury, present and future – and then funding the Asbestos PI Trust in that amount, the Debtors are trying to cap their liability for such claims and manufacture an argument that holders of asbestos claims are unimpaired. Further, under the PI CMO Motion, any estimation hearing is not likely to occur until late 2006, at the earliest. The Future Claimants Representative intends to object to the PI CMO Motion.[3] A hearing on the PI CMO Motion is currently scheduled for August 17, 2005 but is likely to be continued to the end of August 2005.

### C. The Debtors' Motions for Extension of Exclusive Periods

8.      On July 25, 2001, the Debtors filed their first motion seeking to extend their exclusive periods to file a plan and to solicit acceptances. That motion was granted; since that time, the Debtors have sought and obtained six further extensions of their exclusive periods.

9.      On November 23, 2004, the Debtors filed their Seventh Motion seeking an order extending their exclusive periods for an additional six months. [Docket No. 7017]. Despite the

---

[3] The Debtors have granted the Future Claimants Representative and Asbestos PI Committee an extension until June

fact that they had already filed a plan (albeit an unconfirmable one), the Debtors sought to extend their time to file a plan to and including May 24, 2005. The Debtors also sought to extend their time for soliciting acceptances to and including July 24, 2005. The motion was granted on January 21, 2005 [Docket No. 7609]. The Seventh Exclusivity Order brought the Debtors' total period of exclusivity to more than four years.

10.     As they have done seven times before, on May 23, 2005, with their unconfirmable Amended Plan already on file, the Debtors filed this Motion seeking to further extend their time to file a plan to and including November 23, 2005. The Debtors also seek to further extend their time for soliciting acceptances to and including January 23, 2006.

### ARGUMENT

11.     Section 1121(d) of the Bankruptcy Code provides that the Court may reduce or increase the 120-day or 180-day exclusive periods for a debtor to file and solicit acceptances of its reorganization plan if "cause" exists. 11 U.S.C. § 1121(d).[4]

12.     Requests to extend or reduce a period of exclusivity should "be granted neither routinely nor cavalierly." In re McLean Indus., Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987); In re Curry Corp., 148 B.R. 754, 756 (Bankr. S.D.N.Y. 1992) ("This court will not routinely extend the exclusivity period absent a showing of 'cause' when creditors object to such requests for extensions."); In re Pine Run Trust, Inc., 67 B.R. 432, 434 (Bankr. E.D. Pa. 1986) ("Furthermore, both the language and purpose of this statutory provision require that an extension not be granted routinely.").

---

30, 2005 to file their objections.

[4] Although not applicable here, President Bush recently signed into law the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Interestingly, the new Act amends Section 1121(d) of the Bankruptcy Code and provides that a debtor's 120-day exclusive period to file a plan and 180-day exclusive period to solicit acceptances may not be extended beyond 18 months and 20 months, respectively.

13.    The burden is on the Debtors to demonstrate the existence of good cause warranting extensions.  In re Newark Airport/Hotel LP, 156 B.R. 444, 451 (Bankr. D. N.J.), aff'd, FGH Realty Credit Corp. v. New Airport/Hotel LP, 155 B.R. 93 (D. N.J. 1993).  The Debtors have failed to meet this burden at this time.  Rather, the Debtors provide only a cursory argument for the requested relief, which argument is, not by coincidence, almost identical to that presented in the Debtors' seventh motion for an extension of exclusivity.

14.    Courts consider a series of factors in determining whether section 1121(d)'s "for cause" language has been satisfied.[5]  When these factors are considered in light of the length of time that has elapsed in these cases, the Debtors' pending Amended Plan, and the recently filed PI CMO Motion, they do not weigh in favor of an eighth extension of the exclusive periods.

15.    The Debtors have put forth only superficial arguments for why they are entitled to an extension of the exclusive periods.  The Debtors claim that they "continue to make progress in their development of a *confirmable* chapter 11 plan . . . and that the requested relief will allow the Debtors to continue moving forward . . . ."  Motion at p. 2 (emphasis added).  They further claim that defining their asbestos-related "liabilities and then providing for the payment of valid claims on a basis that preserves the Debtors' core business operations is a complex process that is central to resolving these chapter 11 cases," and that the Debtors are making progress.  Motion ¶¶ 10-11.

16.    The Debtors cannot demonstrate at this time that cause for yet another extension exists, because they have not made good faith progress toward filing a confirmable plan, yet

---

[5] Courts usually consider (1) the size and complexity of the case; (2) the necessity of sufficient time to negotiate and prepare adequate information; (3)the existence of good faith progress; (4) whether the debtor is paying its debts as they become due; (5) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (6) whether the debtor has made progress negotiating with creditors; (7) the length of time a case has been pending; (8) whether the debtor is seeking an extension to pressure creditors; and (9) whether or not unresolved contingencies exist.  In re Central Jersey Airport Servs., LLC, 282 B.R. 176, 184 (Bankr. D. N.J. 2002); McLean Indus., Inc., 87 B.R. at 834.

alone a consensual plan. Despite the passage of years during which the Debtors could have negotiated with their asbestos constituencies, even while various motions were pending, it was only last November, when the Court set a firm deadline, that the Debtors filed any plan, and the plan they chose to file is so fatally flawed as to be unconfirmable on its face. That hardly shows sufficient progress to warrant an eighth extension. See In re Am. Fed'n of Television and Radio Artists, 30 B.R. 772, 774 (Bankr. S.D.N.Y. 1983) (cause for extension of a debtor's exclusive periods does not exist where the debtor has made no showing that it can successfully reorganize if the exclusive periods are extended).

17.    Specifically, the Amended Plan improperly seeks to estimate all asbestos claims (including future demands) for distribution purposes without appropriate procedural safeguards, and in a manner that unfairly caps the Debtors' aggregate asbestos liability at $1.7 billion. Even more troubling is that the Amended Plan is destined to fail because it does not provide for any alternative in the likely event that the Debtors' aggregate asbestos liability is estimated at an amount exceeding $1.7 billion.[6] There is nothing in Section 524(g) that requires that the Court estimate or cap the Debtors' asbestos-related liability. On the contrary, to confirm a plan, the Court must find that the actual amounts, numbers and timing of future demands cannot be determined. 11 U.S.C. § 524(g)(2)(B)(ii)(II). When the Court estimates future asbestos claims to determine whether the Amended Plan is fair and equitable, such an estimation should not be final for distribution purposes. This is particularly so where, as here, equity holders are retaining substantial interests.

---

[6] In fact, if the Debtors were serious about exiting chapter 11, they could have filed a plan that provided for a greater share of the equity to be paid to the asbestos claimants if the Debtors' aggregate asbestos liability was estimated to be higher than $1.7 billion.

18.    Further, the Amended Plan wrongly provides that asbestos claims are unimpaired and not entitled to vote. Simply saying that asbestos claims will be paid in full, as the Amended Plan does, does not mean that such claims are unimpaired. The term "impaired" is read in broad terms. See, e.g., In re Barakat, 99 F.3d 1520, 1527 (9th Cir. 1996) ("Congress intended to define impairment broadly, and generally, any alteration of a creditor's legal rights constitutes impairment."). "Impairment" under the Bankruptcy Code is a standard that is easily met. In re American Solar King Corp., 90 B.R. 808, 819 (Bankr. W.D. Tex. 1988) (noting even the smallest impairment entitles a creditor to participate in voting). Thus, the question is whether the provisions of the Amended Plan, if approved, would alter the rights of asbestos claimants in any respect. Even a cursory examination of the Amended Plan shows that this is not even a close question, and that the answer is "Yes." The Debtors should not be allowed to use the estimation of asbestos claims to back into their positions that asbestos claims are unimpaired and that their liability to all asbestos claimants should be capped while equity holders retain substantial interests.

19.    The Debtors further claim that the requested extension is necessary because the estimation process will be "time-consuming and complex" and that they should remain focused on it without the distraction of competing plans. Motion ¶ 11. But the Debtors' recent PI CMO Motion indicates that rather than sincerely attempting to begin to estimate the asbestos-related personal injury claims, the Debtors have merely devised a strategy to disenfranchise and disallow claims. The current process advocated by the Debtors suggests that they are not sincere in wanting to devise a strategy to address and estimate asbestos-related claims and to move their cases forward. Instead, the estimation process should be immediately followed by the

confirmation process. We can be assured that this will happen if there is a plan on file which is confirmable regardless of the results of estimation.

20.    The Debtors also argue that cause exists because the cases are large and complex. Motion ¶ 14. However, the size and complexity of the Debtors' cases alone do not provide cause for an extension of the exclusive periods. In re Public Serv. Co. of New Hampshire, 88 B.R. 521, 537 (Bankr. D. N.H. 1988); Curry Corp., 148 B.R. at 756. If size and complexity alone were sufficient to find cause, then debtors in complex cases would have an unlimited right to exclusivity and Section 1121(d) would be rendered meaningless in complex cases.

21.    The Debtors know well the issues separating the parties, and are merely using exclusivity, their unconfirmable Amended Plan and their latest round of motions as leverage in their negotiations with the asbestos constituencies. There is no reason to believe that the Debtors, after four and a half years, will now begin meaningful discussions as long as no other party has the authority to file a competing plan.[7] In fact, because the Debtors' companies and stock are flourishing in bankruptcy, they have no real incentive to emerge from chapter 11. Further, the Debtors have not set up emergence bonuses or other incentives for their management or key employees to encourage a speedy chapter 11 exit strategy.

22.    Permitting the filing of competing plans, including, for example, one or more plans filed by various asbestos constituencies, will create a meaningful discourse among the

---

[7] On April 14, 2005, in connection with discovery on the Debtors' Motion for an Order Authorizing the Debtors to Enter Into (A) An Employment Agreement With Its Current Chief Operating Officer Under Which He Would Assume the Position of Chief Executive Officer of the Debtors ("CEO") and (B) A Post-Retirement Agreement with the Current CEO Whereby He Would Provide Consulting Services Related to Debtors' Chapter 11 Cases [Docket No. 7753], counsel for the Official Committee of Asbestos Property Damage Claimants deposed Thomas A. Vanderslice, the Lead Independent Director of the Debtors' board. When asked about the Debtors' Plan, Mr. Vanderslice stated: "Well, I think in my opinion it's going to be difficult for all the various creditors to get together. You're all trying to screw each other in the process. You know how it goes. So it's going to be difficult. I think in my opinion the company has put together some reasonable proposals. But greed is a tough thing in these negotiations." Vanderslice Depo Tr. at p. 73, lines 16-22 and p. 74, line 1.

various parties-in-interest, which should weed out unfavorable plans and lead to the best possible result for all concerned parties. <u>In re Geriatrics Nursing Home, Inc.</u>, 187 B.R. 128, 133 (D. N.J. 1995) (affirming bankruptcy court's denial of debtors' motion to extend exclusive period). The Future Claimants Representative is not asking the Debtors to withdraw their Amended Plan. Instead, the time has come for the Court to permit other parties-in-interest to submit competing plans that may have a greater likelihood of confirmation.

23.    Denial of the Debtors' Motion will not end their chances for reorganization. <u>See, e.g.</u>, <u>In re All Seasons Indus., Inc.</u>, 121 B.R. 1002, 1005 (Bankr. N.D. Ind. 1990) ("Denying such a motion only affords creditors their right to file the plan; there is no negative effect upon the debtor's co-existing right to file its plan."); <u>In re Grossinger's Assocs.</u>, 116 B.R. 34, 36 (Bankr. S.D.N.Y. 1990) ("loss of plan exclusivity does not mean the debtor is foreclosed from promulgating a meaningful plan of reorganization; only that the right to propose a Chapter 11 plan will not be exclusive with the debtor"). Rather, denying the Motion at this time will level the playing field and permit others to file competing plans. <u>See, e.g.</u>, <u>Curry Corp.</u>, 148 B.R. at 756 (denying debtors' motion to extend exclusive periods, noting that extensions "should not be employed as a tactical devise to put pressure on creditors to yield to a plan that they might consider unsatisfactory"). The Future Claimants Representative suggests that authorizing constituencies in addition to the Debtors to file a plan is the best way, at this time in these cases, to facilitate meaningful negotiations among the parties-in-interest.

## CONCLUSION

For the foregoing reasons, the Future Claimants Representative respectfully requests that the Court deny the Motion.

Dated:  June 10, 2005          Respectfully submitted,

PHILLIPS, GOLDMAN & SPENCE, P.A.


JOHN C. PHILLIPS, JR., ESQUIRE (#110)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
(302) 655-4210 (facsimile)

Roger Frankel, Esquire
Richard H. Wyron, Esquire
Monique D. Almy, Esquire
Swidler Berlin LLP
3000 K Street, N.W., Suite 300
Washington, D.C. 20007
(202) 424-7500
(202) 424-7643 (facsimile)

Counsel for David T. Austern,
Future Claimants Representative

CERTIFICATE OF SERVICE

I, CELESTE A. HARTMAN, Senior Paralegal, do hereby certify that I am over the age of 18, and that on June 10, 2005, I caused the foregoing Future Claimants Representative's Objection to Debtors' Eighth Motion for Order Further Extending Exclusive Periods for Filing a Plan and Soliciting Votes Thereon to be served on the following persons via email (where available via Pacer) and first class mail, postage prepaid:

David M. Bernick, P.C.
Janet S. Baer, Esquire
Jonathan P. Friedland, Esquire
Samuel L. Blatnick, Esquire
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601
Fax:  312-861-2200
*Counsel for the Debtors*

Bennett L. Spiegel, Esquire
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, CA 90017
Fax: 213-680-8400
*Counsel for the Debtors*

Laura Davis Jones, Esquire
Pachulski, Stang, Ziehl, Young, Jones & Weintraub P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705
Fax: 302-652-4400
*Counsel for the Debtors*

Lewis Kruger, Esquire
Stroock & Stroock & Levan
180 Maiden Lane
New York, NY 10038-4982
Fax: 212-806-6006
*Counsel for the Official Committee of Unsecured Creditors*

Michael R. Lastowski, Esquire
Duane, Morris & Heckscher, LLP
1100 N. Market Street, Suite 1200
Wilmington, DE 19801-1246
Fax: 302-657-4901
*Counsel to the Official Committee of Unsecured Creditors*

Scott L. Baena, Esquire
Jay M. Sakalo, Esquire
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Blvd., Suite 2500
Miami, FL 33131
Fax: 305-374-7593
*Counsel to the Official Committee of Property Damage Claimants*

Michael B. Joseph, Esquire
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899
Fax: 302-575-1714
*Counsel to the Official Committee of Property Damage Claimants*

Elihu Inselbuch, Esquire
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022
Fax: 212-644-6755
*Counsel to the Official Committee of Personal Injury Claimants*

Peter Van N. Lockwood, Esq.
Caplin & Drysdale
One Thomas Circle, NW
Washington, DC  20005
*Counsel to the Official Committee of Personal Injury Claimants*

Mark Hurford, Esquire
Marla Eskin, Esquire
Campbell & Levine, LLC
800 North King Street, Suite 300
Wilmington, DE 19801
Fax: 302-426-9947
*Counsel to the Official Committee of Personal Injury Claimants*

J. Douglas Bacon, Esquire
Latham & Watkins
Sears Tower
Suite 5800
Chicago, IL 60606
*Counsel to the DIP Lenders*

Steven M. Yoder, Esquire
The Bayard Firm
222 Delaware Avenue
Suite 900
P.O. Box 25130
Wilmington, DE 19899
*Counsel to the DIP Lenders*

Gary Becker, Esquire
Kramer Levin Naftalis & Frankel LLP
919 Third Avenue
New York NY 10022
Fax: 212-715-8000
*Counsel to the Official Committee of Equity Holders*

Teresa K.D. Currier, Esquire
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
P.O. Box 1397
Wilmington, DE 19899-1397
Fax: 302-552-4220
*Counsel to the Official Committee of Equity Holders*

Office of the United States Trustee
Attn: David Klauder, Esquire
844 N. King Street
Wilmington, DE 19801
Fax: 302-573-6497

CELESTE A. HARTMAN