# EXHIBIT 1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | Re: Docket No. 8486 |

**DEBTORS' REPLY TO OBJECTIONS TO EXTENSION OF PLAN EXCLUSIVITY**

The central issue in these Chapter 11 Cases is the *valuation* of claims. Each constituency, as explained below, has its own view as to the value of its claims and as to the value of the claims of each other constituency. Consequently, *any* plan -- at least any plan that does not involve pre-confirmation liquidation of all claims (as was originally proposed by Debtors nearly four years ago) -- requires an estimation.

The delay in these cases is not the product of Debtor inaction or inability to propose a confirmable plan. In fact, in the past several months, Debtors and all constituencies have been going down a productive path toward estimation, as directed by this Court at the January Disclosure Statement hearing. Terminating exclusivity now may result in five or more separate plans being filed. This would distract attention away from estimation, and would cause great expense and delay.

The practical thing to do is to keep the parties marching in the direction this Court previously ordered. Moreover, this Court has already engaged in substantial work that is likely to move these cases along significantly, even before estimation is completed. For example, (i) a ruling on the ZAI Science Trial will provide the parties with a much firmer basis on which to negotiate; and (ii) Debtors are preparing hundreds, if not thousands, of Gateway Objections which, again, once ruled on will provide the parties with a much better perspective on where they stand, thus, encouraging settlement.

## The Original CMO

Debtors filed their Original Case Management (CMO) Motion nearly four years ago.[1] The Original CMO Motion, which requested protocols for pre-confirmation common issues litigation and claims liquidation, presented a path for confirming a plan with reasonable speed. Judge Wolin never ruled upon the Original CMO Motion.

Debtors have tried repeatedly to reach settlement with their various constituencies while waiting for rulings, but were unable to do so. The problem was, and remains, that there is a fundamental disagreement among the parties over the value of the various claims in these cases. All the constituencies disagree significantly over the claims asserted by the other parties. The ZAI claimants believe their claims significantly dwarf those of the other PD Committee members; the PD Committee believes their claims are comparable to the PI claims; the PI Committee believes their claims eclipse those of the PD claimants; and the Unsecured Creditors' Committee and the Equity Committee believe all the tort claims are overvalued. Ultimately, each constituency would like to see the others with a smaller piece of the pie.

## The Proposed Plan

This Court moved the cases along tremendously when it ordered Debtors to file a plan by October 14, 2004.[2] Debtors not only complied with the Court's order, but also filed a Disclosure Statement and related Estimation Motion, Solicitation Motion and New CMO Motion, thus offering the Court an alternative path to the Original CMO for confirmation.[3]

---

[1] See Docket No. 586.

[2] As the Court will recall, this date was extended by agreement of the various creditor constituencies -- indeed by urging of the FCR, the PI Committee and the PD Committee -- to November 15, 2004.

[3] See Plan (Docket No. 6895); Disclosure Statement (Docket No. 6896); Estimation Motion (Docket No. 6899); Solicitation Motion (Docket No. 6900) and New CMO Motion (Docket No. 6898). On January 13, 2005, Debtors filed an amended Plan and Disclosure Statement whereby Debtors resolved most of the non-asbestos objections received to the Disclosure Statement and secured the support of the Unsecured Creditors' Committee and the Equity Committee. In the context of the currently pending Plan, Debtors have proposed the New CMO Motion which contemplates liquidating claims primarily on a post-confirmation basis utilizing substantially the same litigation protocols as the Original CMO Motion.

The Objectors objected to these pleadings, arguing that the Plan is patently unconfirmable. The Court deferred the issue until the conclusion of the estimation hearing.[4]

## Estimation

This Court recognized that, in order to confirm any plan which does not involve the pre-confirmation liquidation of all claims, it is necessary to conduct the estimation hearing and determine the aggregate amount of asbestos claims. It is exactly this path that the Court set us on at the January 21, 2005 hearing set for approval of the Disclosure Statement and the other Plan-related documents. The Court itself acknowledged, in discussing the status of the ZAI matter under advisement, that this would be at least a one-year process by stating that:

> You folks are going to be busy enough, with the discovery plans that I'm going to be giving you on the personal injury and property damage, that by the time you get done with that . . . . that gives me a year.[5]

The FCR also acknowledged that the process would take some time. He immediately withdrew his then-filed opposition to exclusivity near the conclusion of the January 21 hearing. "In light of the rulings today . . . and the process that we're going to embark upon, we're prepared to withdraw the objection to exclusivity."[6]

For the past several months, Debtors -- and indeed all the parties -- have been proceeding down the path this Court laid out. Debtors negotiated (with varying degrees of success) with each of the relevant constituencies over the terms of (a) a case management order to govern the estimation of asbestos personal injury claims (the "PI CMO") and the asbestos property damage claims (the "PD CMO")[7] and (b) the form of Debtors' proposed proof of claim/questionnaire for

---

[4]  Specifically, the Court said: "Well, I don't know where we stand on the issue of the right to vote. I think what we're doing is looking at an estimation hearing, and the outcome of that estimation hearing will probably govern whether there is or is not impairment in the financial sense..." Transcript of Hearing of January 21, 2005, In re W.R. Grace & Co. Inc., Case No. 01-1139 (JKF), Tr. Page 169, lines 12-16.

[5]  Transcript of Hearing of January 21, 2005, In re W.R. Grace & Co. Inc., Case No. 01-1139 (JKF), Tr. Page 193, lines 18-25; Page 194 line 1.

[6]  Transcript of Hearing of January 21, 2005, In re W.R. Grace & Co. Inc., Case No. 01-1139 (JKF), Tr. Page 212, lines 13-15.

[7]  The PD Committee has also complained about the delay in progress in these Chapter 11 Cases. However, after negotiating a PD CMO acceptable to both parties and presenting it to this Court, at the April omnibus hearing, the PD Committee itself asked for an extension of time as they claimed they did not have sufficient time to respond to the hazard defense asserted by Debtors. This defense has been asserted in every property damage case as a valid defense and

(Continued...)

asbestos personal injury pre-petition litigation claims (the "PI Questionnaire").[8] Arguments that the process is taking too long are disingenuous.

### Estimation Will Resolve the Biggest Impediment to Confirmation of Any Plan

The objectors disagree with each other, and Debtors disagree with each of them, on certain fundamental issues, such as: (a) the permissibility of using settlement data under the Federal Rules of Evidence, (b) whether product identification is a necessary component for a prima facie case, and (c) whether evidence of disease needs to pass *Daubert*.

Allowing estimation to proceed will resolve these issues. For better and worse (for some it will be better, for others it will be worse), all parties will *know* what the Court's view is as to the value of the various types of asbestos claims against Grace. With this knowledge, the parties will be in a much better position to negotiate or otherwise confirm a plan.

### Much of What the Objectors Say is False

Without refuting each and every half truth contained in the objections filed in opposition to Debtors' Motion to Extend Exclusivity, Debtors would like to remind this Court and the objecting parties that Debtors have stood ready to estimate or liquidate the asbestos claims since the very early days of these Chapter 11 Cases.

Additionally, Debtors have attempted to negotiate in good faith at every turn -- for example, in October 2004, Debtors held several meetings with the asbestos creditors to try to formulate a consensual plan, ultimately asking the Court for a one-month extension to negotiate a deal. Even after filing the Plan, Debtors have made every effort to negotiate mutually agreeable case management procedures and scheduling. Furthermore, Debtors have held multiple meetings with various interests among the asbestos committees during the last several months in their attempt to bring together the very divergent and diverse interests among the asbestos committees.

---

Debtors themselves have been successful in asserting this defense previously. Thus, the PD CMO as yet remains unentered because the PD Committee reneged on a previously agreed to schedule.

[8] Since the January 21 hearing, Debtors have been working with the PI Committee and the FCR and had agreed to a briefing schedule and hearing date regarding the PI CMO and PI Questionnaire which was submitted to this Court on March 24, 2005. Subsequently, the Court entered a new scheduling order allowing Debtors through May 9, 2005 to file the PI CMO. On June 7, 2005, the Court entered an order extending the response deadlines.

The PD Committee also complains that while progress has been slow in the Chapter 11 Cases, Debtors' management has been profiting at the expense of the creditors. What they fail to acknowledge is that management has grown this company while in bankruptcy, including making 22 strategic acquisitions during the Chapter 11 Cases, resulting in a growth in revenue from $1.8 billion to $2.3 billion.

Most important, Debtors have never conceded that the Plan is unconfirmable. The Court, also, has not decided this issue -- rather the Court has deferred ruling on impairment, estimation and section 524(g) issues until after the estimation process is concluded.

WHEREFORE, exclusivity should ultimately be extended until at least the estimation hearing is concluded. At the present time, however, Debtors respectfully request that the objections to the Motion be overruled; that the Exclusive Filing Period be extended by six months through and including November 23, 2005; and the Exclusive Solicitation Period be extended by six months through and including January 23, 2006, without prejudice to Debtors' rights to seek additional extensions of the Exclusive Filing Period and Exclusive Solicitation Period.

Dated: June 17, 2005

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Jonathan P. Friedland
200 East Randolph Drive
Chicago, IL 60601
Telephone:    (312) 861-2000

-and-

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

_____
Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:    (302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession