IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | Re: Docket No. 8582 |
| | ) | Hearing Date: July 19, 2005 at 9:00 a.m. |

## OPPOSITION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE MOTION OF THE STATE OF MONTANA FOR RELIEF FROM THE AUTOMATIC STAY

The Official Committee of Unsecured Creditors of W. R. Grace & Co., et al. (the "Creditors Committee"), by and through its undersigned counsel, submits this opposition to the Motion of the State of Montana For Relief From the Automatic Stay (Docket No. 8582, the "Motion"), which motion seeks to modify the automatic stay so that W. R. Grace & Co. and W. R. Grace-Conn. (collectively, "Grace") may be joined as third-party defendants in 97[1] actions currently pending against the State of Montana ("Montana") before various Montana state courts (the "State Court Actions"). In support of this Opposition, the Creditors Committee respectfully states as follows:

---

[1] Montana's motion, as filed sought relief with respect to 83 pending State Court Actions. On June 23, 2005, Montana filed a Supplement to Exhibit A to its Motion seeking to add an additional 14 actions reportedly served since April 13, 2005 to the relief it seeks

WLM\209443 1

## Introduction

1. By its Motion, Montana argues that it should be granted relief from the automatic stay so that Grace can be impleaded into at least 97 State Court Actions in which the Plaintiffs allege personal injuries caused by exposure to asbestos, presumably relating to the mining and processing of vermiculite in Libby, Montana.[2] Although not set forth in the Motion, the Plaintiffs in those State Court Actions apparently allege that Montana is independently liable to the Plaintiffs for their asbestos-related injuries because Montana failed to protect and warn the Plaintiffs of dangers related to the Libby mine, which was inspected multiple times by Montana.[3]

2. Montana denies any responsibility for the injuries to and damages allegedly sustained by the Plaintiffs, contending that Grace is responsible for those alleged injuries and that whatever liability Montana may be found to have is derivative in nature. This simply means, of course, that Montana asserts contingent indemnification and contribution claims against Grace; indeed, Montana filed a proof of claim in these chapter 11 cases asserting those claims against the Debtors. By filing its proof of claim, Montana acted to protect its rights against Grace should Montana be held liable in any of the State Court Actions. In these bankruptcy cases – which were

---

[2] The Creditors' Committee has not received the complaints filed in each of the State Court Actions, and therefore has no independent knowledge of the specific allegations made by the plaintiffs in each of the State Court Actions.

[3] In the decision rendered by the Supreme Court of Montana in Orr v. Montana, 106 P.3d 100 (Mont. 2004), one of the State Court Actions in which Montana seeks to add Grace, it is explained that the Orr plaintiffs and their families "sued the State of Montana for negligence claiming that the State knew of the asbestos danger associated with working in the Libby vermiculite mine but failed to warn them, or protect them by requiring the mine owners to correct the unhealthful conditions." Id. at 103. In Orr, the trial court granted Montana's motion to dismiss, finding that Montana owed no duty to the plaintiffs. On appeal, the Montana Supreme Court reversed and remanded the action back to the trial court for the Orr plaintiffs to establish that Montana breached its duty to them and, in doing so, caused the plaintiffs' injuries.

commenced exclusively to resolve Grace's asbestos liabilities, including those raised in the State Court Actions -- that is all the protection that Montana is entitled to receive. The Motion should be denied in its entirety.

## ARGUMENT

### Montana Has Not Sufficiently Demonstrated That Cause Exists to Modify the Automatic Stay

3. Montana argues in its motion that cause exists to lift the automatic stay pursuant to 11 U.S.C. §362(d)(1), which provides that: "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay...(1) for cause..." Montana relies heavily on the three-prong test to determine whether "cause" exists to lift the automatic stay, as articulated by the court in Izzarelli v. Rexene Products Co. (In re Rexene Products Co.), 141 B.R. 574, 576 (Bankr. D. Del. 1992) and In re Continental Airlines, Inc., 152 B.R. 420 (D. Del. 1993), by which the Court is to consider: (1) the prejudice suffered by the debtor and debtor's estate if the stay is lifted to allow the continuation of a civil law suit; (2) the balancing of hardship between the parties; and (3) the probable success on the merits if the stay is lifted. See also In re Unidigital, Inc., 2000 WL 33712306 (Bankr. D. Del., Dec. 8, 2000); In re Integrated Health Services, Inc., 2000 WL 33712483 (Bankr. D. Del., Aug. 11, 2000). In determining whether cause exists to lift the stay, bankruptcy courts generally consider the policies underlying the automatic stay, balancing the interests of the debtor with those of the creditor seeking to lift the automatic stay. See Continental Airlines, Inc., 152 B.R. at 424.

WLM\209443.1

4. Although Montana has correctly referred to the governing standards in this Circuit, it has failed to demonstrate, through application of the <u>Continental</u> test, that modifying the automatic stay is appropriate in the circumstances of the Debtors' chapter 11 cases. Indeed, application of those factors demonstrates just the opposite, and the Motion should accordingly be denied, with prejudice.

**The Debtor' Estates Will Suffer Substantial<br>Prejudice If the Stay is Modified**

5. It is obvious that the Debtors and their estates will suffer substantial prejudice if Montana's Motion is granted and the automatic stay is modified. These bankruptcy cases were filed by the Debtors as a means to address their asbestos liabilities in a single forum, under uniform rules. Montana's Motion seeks to circumvent that very purpose by allowing the State Court Actions to proceed against Grace, thereby requiring Grace to defend against asbestos claims in state court. There is no distinguishing between the State Court Actions that are the subject of Montana's Motion and all other state court personal injury actions in which Grace was a defendant on its Petition Date, and it follows that granting Montana's Motion would seemingly mean that cause exists to lift the stay with respect to all pre-petition asbestos claims against the Debtors. That result is absurd and would render Section 362 meaningless. There is nothing unique about Montana's claims which warrants relief from the stay.

6. Were Montana's Motion to be granted, Grace would be required to now litigate the asbestos-related liabilities at the very core of these chapter 11 cases in various Montana state courts, apart from the thousands of individual asbestos-related claims against the Debtors that will be resolved in these bankruptcy cases. Permitting

such piecemeal litigation will not only necessarily duplicate the Debtors' efforts and force them to expend resources of their estates to defend the same asbestos issues in at least 97 separate actions, but may also result in the Plaintiffs in each State Court Action receiving treatment which differs from each other, and from the treatment other claimants with asbestos claims against the Debtors receive through the comprehensive asbestos liquidation program that will ultimately be put into place through a confirmed plan in these cases.

7. Montana is thus decidedly wrong when it argues that modifying the stay will not delay the administration of these cases, and that the "critical time devoted to [the] reorganization process ... is past in this bankruptcy case in that it is over four years old." (Motion at ¶31). The Debtors' reorganization efforts have now entered a critical period. Determining the magnitude of the Debtors' current and future asbestos liabilities has been and continues to be the critical issue in these chapter 11 cases. No plan of reorganization can be confirmed by this Court without first having determined the magnitude of the Debtors' asbestos liabilities. After four years in bankruptcy, case management procedures are now being established to enable the Court to hear testimony and render decisions estimating the Debtors' asbestos liabilities and the amount needed to fund a Section 524(g) trust, for ultimate distribution to asbestos claimants holding valid claims. The Debtors' attention is properly focused on the estimation and plan process. There is no legitimate reason that the Debtors should now have to also focus on defending the State Court Actions, where the underlying issues in those actions will be determined, as to Grace, in these bankruptcy cases. Diverting the

Debtors' energies by modifying the stay at this juncture would disrupt the process that will, we all expect, ultimately lead to the conclusion of these reorganization cases.

8. Grace's participation in the State Court Actions will necessarily involve the time and commitment of a number of individuals in its management who are active in the Debtors' reorganization process. Grace's defense will entail the loss of time, resources and personnel which will, as a matter of course, negatively impact Grace's reorganization efforts, contrary to the purposes of the automatic stay. See A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 988 (4th Cir. 1986), cert. denied, 479 U.S. 876 (1986) (describing one of the purposes of §362 of the Bankruptcy Code as giving debtor and its executives a respite from litigation in order to formulate plan of reorganization); see also Penn-Dixie, 6 B.R at 836 (describing impact of litigation on debtors' time and resources as one criteria for stay of litigation).

**The Balance of the Hardships Will Clearly  
Weigh More Heavily Against The Debtors  
Were the Automatic Stay To Be Modified**

9. The single most important factor in balancing the equities to determine whether the automatic stay should be lifted is the effect that lifting the stay would have on the debtor and the administration of the bankruptcy estate. See In re Curtis, 40 B.R. 795, 806 (Bankr. D. Utah 1984); In re Penn-Dixie Industries, 6 B.R. 832, 836 (Bankr. S.D.N.Y. 1980). As reflected above, the harm to the Debtors (and their creditors) would be substantial were this Court to grant Montana's Motion to modify the automatic stay and the Debtors forced to defend themselves in the State Court Actions. The non-asbestos unsecured creditors represented by the Creditors Committee (and, indeed, all constituencies in these bankruptcy cases) are entitled to a resolution of these

WLM\209443 1

cases through a plan process (including claims estimation) unimpeded by the pendency of state court litigation involving the Debtors.

10. Montana, in contrast, has failed to demonstrate that it will suffer a great hardship if the stay remains in place, let alone hardship that is greater than that to be suffered by the Debtors and their estates were the stay modified. As Montana acknowledges, the Montana Supreme Court held in Orr v. Montana, 106 P.3d 100 (Mont. 2004) that Montana not only had an independent duty to warn the Plaintiffs of known dangers in their workplace, but that in order to establish liability on the part of Montana, the Orr plaintiffs (and consequently each of the State Court Action Plaintiffs) would have to establish that Montana breached its duty to the Plaintiffs and, in doing so, caused the plaintiffs' injuries. Consequently, at the present time, Montana has only contingent claims for indemnification and contribution against the Debtors arising from the State Court Actions. To the extent Montana is not found liable to some or all of the Plaintiffs, Montana would not have indemnification and contribution claims arising out of that action against the Debtors. On the other hand, to the extent Montana is ultimately found to have breached its separate duty and caused injury to Plaintiffs in some or all of the State Court Actions, Montana's ability to pursue its indemnification and contribution claims against the Debtors in the claims objection process in these cases is preserved, through the proof of claim it filed against the Debtors. There is no prejudice to Montana from having to pursue its claim in these bankruptcy cases.

**Success On the Merits Has Not Been Demonstrated By Montana**

WLM\209443.1

11.  As set forth above, it is currently unknown whether Montana will be held liable for injuries allegedly sustained by the respective Plaintiffs. Accordingly, it can not be known at this time whether Montana will actually have any indemnification and contribution claims against these estates, and whether Montana will likely succeed on any such claims it may ultimately have. Montana therefore cannot currently demonstrate that it will succeed on the merits of its alleged indemnification and contribution claims against the Debtors. Montana's conclusory statements that its liability is solely derivative of Grace's liability is unproven and should be determined only in the context of these bankruptcy cases, under the auspices of this Court, and only after Montana is first found liable to any of the Plaintiffs.

## CONCLUSION

12.  For the reasons set forth herein (as well as those set forth in the Debtors' Objection to Montana's Motion), the Creditors Committee respectfully requests that this Court deny the Motion, with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
       June 28, 2005

                              Respectfully submitted:

                              **STROOCK & STROOCK & LAVAN LLP**
                              Lewis Kruger
                              Kenneth Pasquale
                              (Members of the Firm)
                              180 Maiden Lane
                              New York, New York  10038-4982
                              Tel: (212) 806-5400
                              Fax: (212) 806-6006

                              and

WLM\209443 1

DUANE MORRIS LLP

By: /s/ _____

Michael R. Lastowski (DE I.D. No. 3892)
Richard W. Riley (DE I.D. No. 4052)
William S. Katchen
1100 North Market Street
Suite 1200
Wilmington, Delaware 19801
Tel: (973) 424-2000
Fax: (973) 424-2001

Counsel for the Official Committee
of Unsecured Creditors