## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

|                              |   |                                                                                        |
|------------------------------|---|----------------------------------------------------------------------------------------|
|                              | ) | Chapter 11                                                                             |
|                              | ) |                                                                                        |
| In re:                       | ) | Case No. 01-01139 (JKF)                                                                 |
|                              | ) |                                                                                        |
| W. R. GRACE & CO., et al.,   | ) | (Jointly Administered)                                                                 |
|                              | ) |                                                                                        |
| Debtors.                     | ) | **Objection Deadline: June 28, 2005**                                                  |
|                              | ) | **Hearing Date: July 18, 2005 at 12:00 p.m.**                                          |
|                              | ) |                                                                                        |
|                              | ) | **Re: Docket No. 8582**                                                                |

### OBJECTION OF THE OFFICIAL COMMITTEE OF ASBESTOS PROPERTY DAMAGE CLAIMANTS TO THE MOTION OF THE STATE OF MONTANA FOR RELIEF FROM THE AUTOMATIC STAY

The Official Committee of Asbestos Property Damage Claimants (the "PD Committee"),

by and through undersigned counsel, hereby objects (the "Objection") to the Motion of the State

of Montana for Relief from the Automatic Stay (the "Motion"). In support of the Objection, the

PD Committee respectfully submits as follows:

### INTRODUCTION

By the Motion, the State of Montana ("Montana" or the "State") seeks relief from the

automatic stay to allow the State to not only name W.R. Grace and W.R. Grace & Co.-Conn (the

"Debtors")[1] as third-party defendants, but also to proceed against these Debtors in an effort to

liquidate an undisclosed number of asbestos personal injury claims in some 97 distinct lawsuits

pending in Montana state courts.[2]   Even if these Debtors are found responsible for Montana's

failure to disclose the Libby Mine asbestos hazards, which Montana's own Supreme Court

---

[1] Although there are 62 debtor entities subject to the above-captioned cases, Montana has only sought relief from the stay with respect to these two Debtors.

[2] Although the Motion indicated that 83 lawsuits were pending, Montana has since supplemented its filing to add an additional 14 cases. Nowhere in the Motion did Montana identify how many actual plaintiffs are parties to these actions.

recognized the State knew of as early as 1956 and chose not to share with its residents,[3] Montana is entitled to no better position or treatment than any other unsecured creditor within this bankruptcy. At best, if Montana's assertions are true, the State will have unsecured asbestos-related claims, just like thousands of other claimants in this bankruptcy. Montana has not demonstrated requisite cause to lift the automatic stay and to allow these personal injury claims to proceed, while all other asbestos claims remain subject to the stay.

If granted, the relief sought by the Motion will (1) result in an extraordinary waste of estate funds, (2) distract the Debtors as they will be required to provide a defense in 97 separate state court actions, (3) allow plaintiffs in the state court actions to circumvent the stay to reach the Debtors, and (4) expose the Debtors to potentially significant increased liabilities. It is in the best interest of the estate and its creditors for the automatic stay to remain in place under the circumstances presented by Montana in the Motion, and the request for relief from the stay should be denied.

## BACKGROUND

### W.R. Grace Bankruptcy

1. On April 2, 2001, each of the Debtors filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. On April 12, 2001, the Office of the United States Trustee appointed the PD Committee, the Official Committee of Asbestos Personal Injury Claimants, and the Official Committee of Unsecured Creditors. On June 18, 2001, the UST appointed the Official Committee of Equity

---

[3] *Orr v. State of Montana*, 106 P.3d 100, 109-10 (Mt. 2004).

Security Holders. On May 24, 2004, the Court appointed Mr. David T. Austern as the representative of future claimants.

3.       On or about November 13, 2004, the Debtors filed their initial plan of reorganization in these cases, which was subsequently amended on or about January 13, 2005, to include, <u>inter</u> <u>alia</u>, the Unsecured Creditors Committee and the Equity Committee as co-proponents of the plan (as amended, the "<u>Plan</u>").

**Montana Lawsuits**

4.       According to the *Orr* decision by the Supreme Court of Montana, the State inspected the Debtors' Libby, Montana vermiculite mine (the "Libby Mine") on a regular basis from 1956 onward. *Orr v. State of Montana*, 106 P.3d 100, 104 (Mt. 2004). "During each State inspection between 1956 and 1974 State inspectors found unsanitary and unhealthy conditions" and actually notified the Debtors of the asbestos hazards and explained "the seriousness of asbestosis and its likely fatal outcome, but did not inform the Mine workers...of the dangers." *Id.*

5.       Initially, the Libby Mine workers only brought actions against the Debtors; however, after the Debtors sought chapter 11 protection, several plaintiffs commenced actions against Montana based upon the State's statutory and common law duties to warn of hazards and to protect the workers and Montana residents from the asbestos dangers at the Libby Mine (collectively the "Montana Lawsuits").[4] *Id.* After being named as a defendant, the State sought and obtained dismissal of at least one of the Montana Lawsuits, *Orr v. State of Montana*, on the basis that the State did not owe a duty to the plaintiffs. *Id.* The *Orr* plaintiffs appealed, and in December of 2004, the Supreme Court of Montana reversed the lower court's dismissal

---

[4] The Supreme Court of Montana confirms that the nine plaintiffs in the *Orr* appeal had originally sued Grace and only named the State after Grace sought bankruptcy protection. *Id.* The *Orr* lawsuit is one of the actions for which the State seeks to lift the stay. See Exhibit "A" of the Motion. From the case numbers identified in Exhibit A of the Motion, it appears that all the Montana Lawsuits were filed within the year the Debtors filed bankruptcy or in the years thereafter.

3

concluding that the State did have a legal duty to the Libby Mine workers to disseminate information about industrial dangers. *Id.* at 109-18. Thus, the Montana Lawsuits continue to be prosecuted based on the State's independent duties to warn and to disseminate information about the dangers to the Libby Mine workers.

6.      By the Motion, the State asserts that the Debtors actively concealed the harm and injury caused by the dust containing asbestos, but fails to disclose to this Court that the Supreme Court of Montana, and the lower court as well, concluded that the State knew since 1956 of the dangerous asbestos conditions at the Libby Mine and "the State *knew* as a result of its inspections that the Mine's owner was doing nothing to protect the workers from the toxins in their midst." *Orr*, 106 P.3d at 104-110 (emphasis in original opinion).

7.      Despite these material omissions, Montana asserts that it will be entitled to indemnification and contribution from the Debtors to the extent judgments are entered against the State in the Montana Lawsuits. By way of the Motion, the State is asking this Court to lift the stay so that Montana can deflect the any liability for its own inactions to the Debtors.

## **DISCUSSION**

### *Montana Fails to Show the Requisite Cause for Relief from the Automatic Stay*

8.      The movant has the burden to demonstrate that cause actually exists for relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code. *See In re Moore*, 267 B.R. 111, 115 n. 12 (Bankr. E.D. Pa. 2001). Bankruptcy Code section 362(d) does not provide a definition of "cause". Thus, courts within the Third Circuit consider the totality of the circumstances in determining whether cause exists for relief from the automatic stay. *See In re Wilson*, 116 F.3d 87, 90 (3rd Cir. 1997); *In re Moore*, 267 B.R. at 115 n. 12; *see also In re Mid-*

4

*Atlantic Handling Sys. LLC*, 304 B.R. 111, 130 (Bankr. D. N.J. 2003); *In re Jones*, 284 B.R. 92,

98 (Bankr. E.D. Pa. 2002).

9.     In determining whether relief from a stay is appropriate to allow a party to proceed with

the prosecution of a claim in another forum, a court may consider various factors, and not just

the three conveniently relief upon by Montana in the Motion. *See Mid-Atlantic*, 304 B.R. at 130

(listing twelve factors that may be considered); *In re Ice Cream Liquidation, Inc.,* 281 B.R. 154,

165 (Bankr. D. Conn. 2002) (same).     These factors include:

> 1) whether relief would result in a partial or complete resolution of the issues; 2)
> lack of any connection with or interference with the bankruptcy case; 3) whether
> the other proceeding involves the debtors as a fiduciary; 4) whether a specialized
> tribunal with the necessary expertise has been established to hear the cause of
> action; 5) whether the debtor's insurer has assumed full responsibility for
> defending it; 6) whether the action primarily involves third parties; 6) whether
> litigation in another forum would prejudice the interests of other creditors; 8)
> whether the judgment claim arising from the other action is subject to equitable
> subordination; 9) whether the moving party's success in the other proceeding
> would result in a judicial lien avoidable by the debtor; 10) the interests of judicial
> economy and the expeditious and economical resolution of litigation; 11) whether
> the parties are ready for trial in the other proceeding; and 12) impact of the stay
> on the parties and the balance of the harms.

*Mid-Atlantic*, 304 B.R. at 130.

10.     Here, all factors weigh heavily against Montana.  The State has failed to demonstrate how

it is in any different position than any other asbestos creditor that has been injured by the

Debtors.  Allowing Montana to liquidate its claims involving asbestos personal injury claims in

its own state courts while thousands of asbestos claims remain subject to the stay and resolution

within this Court would result in unfair and inequitable treatment to creditors that are on equal, if

not superior, footing to the State.    While the arguments raised by the State as to prejudice and

resulting hardship are moving, all asbestos creditors face similar hardship and prejudice from the

5

automatic stay. There is simply no valid reason to permit the State to jump to the front of the line.

11. Additionally, the prosecution of some 97 separate lawsuits within Montana, which are all in nascent stages, will require the expenditure of significant time and resources of the estate and will clearly distract the Debtors, who will be required to defend the actions.

12. Furthermore, creditors may well be dramatically impacted by the determination and liquidation of the Montana Lawsuits if the State's assertions regarding the Debtors' concealment and right to indemnification are true. Within the Montana Lawsuits, hundreds of plaintiffs are seeking undisclosed amounts in damages for their various asbestos-related injuries. While the Montana Lawsuits are determined and liquidated in a plaintiff-friendly venue, the remaining asbestos claimants must wait for estimation and a likely determination in a currently undefined claims process within this bankruptcy.

13. As recognized by the Montana Supreme Court, the Montana Lawsuits were only brought against the State after the Debtors filed bankruptcy. Permitting these claimants, who had pursued Grace before the bankruptcy, to now reach the Debtors would result in a circumvention of the automatic stay by these individuals and would immediately open the floodgates to other asbestos plaintiffs who will attempt to do the same by naming state entities throughout the country as a means of back door relief against the Debtors.

14. Accordingly, the State has failed to show an adequate basis for cause to lift the automatic stay, and the potential harms to the Debtors and its creditors weigh heavily against the requested relief.

WHEREFORE, the PD Committee respectfully requests that the Court deny the Motion

for Relief from the Automatic Stay and grant such other and further relief as the Court deems

just and proper.

Dated: June 28, 2005                    Respectfully submitted,
Wilmington, Delaware

BILZIN SUMBERG BAENA
    PRICE & AXELROD LLP
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131-2336
Telephone: (305) 374-7580

Scott L. Baena (Admitted Pro Hac Vice)
Jay M. Sakalo (Admitted Pro Hac Vice)
Allyn Danzeisen (Admitted Pro Hac Vice)

-and-

FERRY JOSEPH & PEARCE, P.A.

/s/ Theodore J. Tacconelli
Theodore J. Tacconelli (No. 2678)
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, Delaware  19899
Telephone: (302) 575-1555

CO-COUNSEL FOR THE OFFICIAL
COMMITTEE OF ASBESTOS PROPERTY
DAMAGE CLAIMANTS