IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | Re: Docket No. 8582 |

Response Deadline: June 28, 2005
Hearing Date: July 18, 2005 at 12:00 noon

## DEBTORS' OBJECTION TO THE MOTION OF STATE OF MONTANA FOR RELIEF FROM THE AUTOMATIC STAY

The Debtors object to the Motion of State of Montana for Relief from the Automatic Stay (the "Motion") and request that the Motion be denied. These chapter 11 cases were filed as a result of mounting asbestos-related cases that made it impossible for the Debtors to continue to function without bankruptcy protection.

On the first day of the chapter 11 cases, the Debtors sought and obtained an injunction protecting against actions being pursued against affiliates of the Debtors and certain third parties with respect to matters arising out of the Debtors' asbestos-related businesses.

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Since the entry of the injunction, various parties in the state of Montana have attempted end runs around the Debtors and the injunctions. As the Court may recall:

- The various parties in Montana attempted to pursue the Debtors' insurer, Maryland Casualty Company, directly. The Court denied that attempt and the Third Circuit affirmed the Court's decision.

- The Montana plaintiffs then tried to take extensive discovery of various potential parties related to the Grace Montana operations. The Montana plaintiffs claimed that the discovery had to be taken or the testimony would be lost due to the advanced asbestos related illnesses of the potential deponents. After the Court required the Montana plaintiffs to provide evidence of the actual imminent health conditions of the potential deponents, not another word was heard from the Montana plaintiffs on the need for such imminent discovery.

- The Montana plaintiffs then tried to pursue Montana Vermiculite Company, the predecessor owner of the Debtors' Montana operations. The Court denied that attempt.

The State of Montana ("State") has no more right than the Montana plaintiffs to be accorded preferential treatment in pursing the Debtors. For the very same reasons the Court refused to permit the Montana plaintiffs to pursue Maryland Casualty Company, Montana Vermiculite Company, and any of the other numerous affiliates and third parties protected by the injunction, the Court must deny the State's Motion.

For the reasons discussed below, the State has no basis for alleging entitlement to alternative and preferential treatment from the multitude of similarly situated claimants. At the same time, permitting the State to proceed would be extremely prejudicial to the Debtors at this critical juncture in the chapter 11 cases because it would:

- impair the Debtors' ability to successfully reorganize by diverting the Debtors' and other key parties' attention and efforts,

- force the Debtors to needlessly duplicate their efforts to adjudicate like asbestos claims in these chapter 11 cases, and

- open the floodgates for thousands of other asbestos plaintiffs to seek relief from the automatic stay to initiate or pursue their own litigation outside of

2

these chapter 11 cases, thus defeating the very reason why the Debtors filed these chapter 11 cases in the first instance.

As a result thereof, the State's Motion for relief from the automatic stay must be denied.

## BACKGROUND

### A. The Injunction.

1. On April 2, 2001 (the "Petition Date"), the Debtors filed an adversary complaint seeking to stay asbestos-related litigation against various affiliates of the Debtors and third parties (the "Affiliates") whose purported asbestos liability was solely derivative of the Debtors' liability. A temporary restraining order was entered on April 2, 2001 enjoining the commencement or prosecution of asbestos actions against the Affiliates. On May 3, 2001, the Court granted the Debtors' motion for preliminary injunction and issued a preliminary injunction barring the prosecution of currently pending asbestos-related actions and fraudulent transfer actions against the Affiliates.[2] On January 22, 2002, the Court entered an order modifying the preliminary injunction to expand the scope of the preliminary injunction and reinstate the bar against the commencement of new actions against Affiliates as such claims arising from alleged exposure to asbestos whether indirectly or directly caused by Debtors (the "Injunction").[3]

2. On February 4, 2002, certain Montana plaintiffs filed a motion to clarify the Injunction so that they could pursue an alleged direct cause of action against Maryland Casualty Company ("MCC"), the Debtors' insurer, arising out of the Debtors' Libby Montana mining operations. MCC was one of the Affiliates protected by the Injunction. The Court denied the Montana plaintiffs' motion to clarify and subsequent motion for reconsideration.[4] The Montana

---

2  See Case No. 01-ap-00771-JKF at Docket No. 36.

3  See Case No. 01-ap-00771-JKF at Docket No. 87.

4  See Case No. 01-ap-00771-JKF at Docket Nos. 109 and 133.

3

Error! Unknown document property name.

plaintiff's appealed and, ultimately, the Third Circuit upheld this Court's denial of the attempt to pursue MCC.

3.  Thereafter, between October 2003 and May 2004, certain Montana plaintiffs attempted to take discovery of various potential parties with respect to the Debtors' Montana mining operations. The Montana plaintiffs claimed that the discovery had to be taken or the testimony would be lost due to the advanced asbestos related illnesses of the potential deponents. The Court concluded that the Montana plaintiffs would have to provide evidence of the actual imminent health conditions of the potential deponents before it would permit the discovery to be taken. In the course of this process, the Montana plaintiff's counsel was sanctioned for taking certain actions in violation of the Debtors' automatic stay and the Injunction.[5] After the Court required the appropriate evidence of the dire medical condition alleged by the Montana plaintiffs, not another word was heard from the Montana plaintiffs on the need for such "imminent" discovery.

4.  Thereafter, the Montana plaintiffs attempted to pursue their asbestos personal injury claims against the Debtors by commencing suit against Montana Vermiculite Company ("MVC"). MVC was the former owner of the Debtors' Montana mining operations. On February 25, 2005, the Court amended the Injunction to stay actions against MVC.[6]

**B.  The Montana Plaintiffs and the Montana Actions.**

5.  The Debtors now understand that, since the Petition Date, the State has been named as a defendant in 97 separate actions in the state of Montana (the "Montana Actions") by various Montana plaintiffs. At least 21 of the 97 Montana Actions were first brought separately

---

[5]  See Case No. 01-ap-00771-JKF at Docket No. 204.

[6]  See Case No. 01-ap-00771-JKF at Docket No. 358.

4

against the Debtors. After the filing of the Debtors' chapter 11 cases, the Montana plaintiffs expanded such actions to include the State. The remainder of the Montana Actions, while not originally filed against the Debtors, were filed against the State after the Debtors' chapter 11 cases were filed and the Montana plaintiffs were precluded by the automatic stay from asserting such litigation directly against the Debtors. Moreover, the Montana plaintiffs assert the same cause of action against both the Debtors and the State – negligence in failing to take sufficient action to protect and to warn the plaintiffs about alleged asbestos hazards.

6. The State, reminiscent of the arguments extremely familiar to this Court made by MCC in opposing the Montana plaintiffs' attempts to modify the Injunction, denies any responsibility for the events giving rise to the Montana Actions and asserts that, if anyone is liable for the damages allegedly sustained by the Montana plaintiffs, it is the Debtors. See Motion at ¶¶ 8-14.

7. The State, also just like MCC, alleges that if liability is imposed upon the State, that liability could only be remote and derivative of the Debtors because it is the Debtors that had the duties to the Montana plaintiffs. See Motion at ¶ 8. As a result, and pursuant to its Motion, the State is seeking relief from the automatic stay to bring the Debtors into the Montana Actions. In addition, the State has filed a proof of claim (the "State Proof of Claim") in the Debtors' chapter 11 cases asserting such indemnification and/or contribution claims, again just like MCC, and, in fact, MVC. This indemnification/contribution claim, of course, was a significant reason why the Court entered the Injunction in the first place enjoining actions against MCC and the other Affiliates and later modifying the Injunction to include MVC.

8. The State, herein, has even drafted a proposed Third-Party Complaint against the Debtors, which is attached as Exhibit C to the Motion. The Third-Party Complaint alleges that

5

Error! Unknown document property name.

the Debtors negligently and intentionally breached their duties by knowing of certain hazards and concealing them, which directly and proximately caused the harm to the Montana plaintiffs. See Third-Party Complaint at ¶¶ 9-17, 21-22. The State further asserts that the Debtors informed the State of certain policies the Debtors were implementing to protect the employees but that the Debtors knowingly failed to enforce these policies. See Third-Party Complaint at ¶ 19. The State alleges further that the Debtors failed to warn the employees and members of their households of the hazards of exposure to asbestos dust. See Third-Party Complaint at ¶ 20. It is this allegation of negligence in the failure to warn that is the heart of the Montana plaintiffs' cases against both the State and the Debtors.

## ARGUMENT

### I. THE STATE HAS FAILED TO SHOW SUFFICIENT CAUSE TO MODIFY THE AUTOMATIC STAY.

9. For the reasons set forth herein, the State should not be allowed to proceed against the Debtors and the Motion should be denied.

10. The automatic stay is one of the most fundamental protections provided to a debtor under the Bankruptcy Code. See Midatlantic Nat. Bank v. New Jersey Dept. of Envtl. Protection, 474 U.S. 494, 503 (1986). In particular, the Third Circuit has held that the purpose of the automatic stay is to:

> prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtors' assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor.

Borman v. Raymark Industries, Inc., 946 F.2d 1031, 1036 (3rd Cir. 1991); In re Rexene Products Co., 141 B.R. 574, 576 (Bankr. D. Del. 1992).

11. Pursuant to section 362(d) of the Bankruptcy Code, a movant must demonstrate sufficient cause to justify the lifting or modification of the automatic stay. Although the

6

Error! Unknown document property name.

Bankruptcy Code does not define what constitutes cause, "courts generally consider the policies underlying the automatic stay [and] . . . the competing interests of the debtor and the movant." In re Continental Airlines, Inc., 152 B.R. 420, 424 (D. Del. 1993). In particular, Delaware courts consider the following three factors in balancing the competing interests of the parties:

> (a) the prejudice that would be suffered by the debtors should the stay be lifted;
>
> (b) the balance of the hardships facing the parties if the stay is lifted; and
>
> (c) the probable success on the merits if the stay is lifted.

Continental, 152 B.R. at 424. The State has not demonstrated sufficient cause to warrant the lifting or modification of the automatic stay.

## A.    Substantial Prejudice Would Be Incurred By The Debtor If The Automatic Stay Were Modified.

12.    Courts have recognized that in mass tort cases, there is a critical need to stay all collateral litigation in order to allow debtors an opportunity to develop comprehensive litigation and reorganization plans.

> The purpose of this section [362] by its various subsections is to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor.

A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins & Co., Inc.), 788 F.2d 994, 998 (4th Cir. 1986). Indeed, "the automatic stay is designed to preclude the rush to the courthouse." See In re Flores, 291 B.R. 44 (Bankr. S.D.N.Y. 2003).

13.    The most important factor in determining whether to grant relief from the automatic stay to allow litigation to proceed against a debtor in another forum is the effect of such litigation on the administration of the estate. See In re Curtis, 40 B.R. 795, 806 (Bankr. D.

7

Utah 1984); In re Penn-Dixie Industries, Inc., 6 B.R. 832, 836 (Bankr. S.D.N.Y. 1980). The State suggests that granting the Motion will actually facilitate the administration of these chapter 11 cases and the Debtors' reorganization by reducing unliquidated claims to finality. See Motion ¶ 28. In fact, quite the opposite is true as the Debtors' ability to administer their estates and these chapter 11 cases will be adversely impacted.

14.     The Debtors seek to estimate and adjudicate their asbestos liabilities in this chapter 11 process. Indeed, it is the very reason why the Debtors filed the chapter 11 cases in the first place and why they are spending their time and resources on preparing for estimation hearings with respect to such liabilities and ultimately seeking to confirm a chapter 11 plan to address those liabilities. If forced to defend piecemeal litigation outside of these chapter 11 cases, the Debtors will have no choice but to duplicate efforts and expend unnecessary estate resources that otherwise could be avoided if the automatic stay was preserved. See In re A.H. Robins Co., Inc., 63 B.R. 986 (Bankr. E.D. Va. 1986) ("What the automatic stay provides is 'the essential breathing room for a Chapter 11 debtor to restructure its affairs[.]'")

15.     Further, the Debtors' defense of the 97 separate Montana Actions would inevitably slow down and delay the administration of the chapter 11 cases. Indeed, the claims at issue in the Montana Actions are hotly contested by the Debtors, and pose the critical question of liability upon which the Debtors' estimation process and restructuring is focused. As a result thereof, the Debtors' defense of the Montana Actions would require the time and commitment of individuals intimately involved in the chapter 11 cases.

16.     In particular, litigation of the Montana Actions would involve, at a minimum, several of the Debtors' key personnel (collectively, the "Key Employees"), most of whom are crucial to the Debtors' reorganization process. The Key Employees would likely include Mark

8

Error! Unknown document property name.

Shelnitz -- General Counsel; Jay Hughes, Richard Finke and William Sparks -- each Senior Litigation Counsel; and Fred Festa -- CEO; and could involve Paul Norris -- current Chairman of the Board and ex-CEO, and David Siegel -- ex-General Counsel and now a consultant for the Debtors. These Key Employees all play an integral role in the current estimation proceedings, negotiations with the asbestos claimants, and management of the chapter 11 cases. Such Key Employees, however, would be required to assist counsel in preparation of the Debtors' defense in the Montana Actions. As a result, they would be forced to incur the additional burden of supporting trial counsel as well as being uprooted to spend what could be a considerable period of time in Montana.

17.  Requiring the Debtors to defend the Montana Actions now would also unnecessarily duplicate expenses for the Debtors. In particular, the Debtors would be required to bear the financial burdens of discovery and 97 full-blown trials. The Debtors would also be required to introduce fact and expert witness testimony and other evidence in connection with their defense. Thus, the Debtors' defense of the Montana Actions would result in the unnecessary depletion of the Debtors' already limited assets and resources. See Borman, 946 F.2d at 1036 (concerns as to the depletion of the debtor's assets are implicated whenever an action is instituted against a debtor).

18.  Furthermore, if the Motion was granted, the risk is created that the outcomes reached in each of the Montana Actions could differ from the treatment like asbestos claimants may receive in these chapter 11 cases. Such a result would run contrary to one of the principal tenets of the Bankruptcy Code -- that similarly situated creditors should be treated similarly. See, e.g., In re Combustion Engineering, Inc., 391 F.3d 190, 239 (3d Cir. 2004) (the Bankruptcy Code requires similar treatment for similarly situated claims). In contrast, if the State and the

9

Error! Unknown document property name.

Montana plaintiffs are required to pursue their claims in these chapter 11 cases, all similarly situated creditors will be guaranteed equal treatment. Moreover, by applying the same procedures to the State and the Montana plaintiffs in these chapter 11 cases, the Debtors' estates will avoid the additional expense and efforts of having to reconcile inconsistent treatments that could result from the Montana Actions.

19. Finally, if the automatic stay was lifted with respect to the Montana Actions, it could open the floodgates of other motions to lift the stay. There are thousands of asbestos cases in hundreds of jurisdictions pending against the Debtors. Lifting the automatic stay in the Montana Actions may well prompt large numbers of asbestos claimants to seek relief from the stay to pursue their claims against the Debtors. Were this to happen, the Debtors would be put back into the position they were in prior to filing these chapter 11 cases. The Debtors should be given the breathing room provided for by the automatic stay to continue to effectively manage the massive number of asbestos-related cases and successfully reorganize under chapter 11.

20. The Motion should be denied by this Court and the claims of the State and the Montana plaintiffs should be resolved in these chapter 11 cases.

## B. The Balance Of Hardships Weighs Significantly In Favor Of The Debtors.

21. The above-described burdens forced upon the Debtors by the prosecution of the Montana Actions far outweigh any inconvenience encountered by the State. Most importantly, the State is not harmed because it has filed the State Proof of Claim. Therefore, the State's indemnification/contribution claims are preserved as against the Debtors and will be resolved in due course in the chapter 11 cases.

22. Essentially, the State's contention that it will be harmed if the Motion is denied boils down to the State's desire to have its claims adjudicated immediately. This is a desire,

Error! Unknown document property name.

however, that the Debtors suspect is not uncommon among all of the Debtors' asbestos claimants. The State utterly fails to produce any valid reason as to why its claims should be given preferential treatment over other similarly situated creditors or why estate assets should be preferentially allocated to the defense of the Montana Actions. See Matter of Fletcher, 176 B.R. 445, 453 (Bankr. W.D. Mich. 1995) (allocating assets equitably among a debtor's creditors is a goal of the Bankruptcy Code). The State has further failed to show, and cannot show, any cause for the Debtors and this Court to abandon the goal of developing a plan to deal with all asbestos personal injury claims in a uniform manner.

23.     Moreover, approving the Motion may not even achieve the State's goal of promptly adjudicating the indemnification/contribution claims. Indeed, given the status of the Montana Actions, there can be no assurance that each of the 97 Montana Actions will be resolved any faster than if such claims were resolved in these chapter 11 cases.

24.     The burden to show harm is on the State. It is the State that "bear[s] the heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief as against the hardships to the debtor in denying relief." In re Micro Design, Inc., 120 B.R. 363, 369 (E.D. Pa. 1990) (automatic stay not lifted where it was appropriate for movant to pursue its claim by filing a proof of claim, and participating in the claim process, in the bankruptcy case). The State, utterly fails in its burden to demonstrate sufficient harm worthy of modifying the automatic stay. As a result, the Motion should be denied.

## C.     The State Has Demonstrated No Likelihood of Success on the Merits.

25.     Finally, the Motion should be denied because the State has not demonstrated, nor can it demonstrate, any likelihood of success on the merits. In the Motion and in the State Proof

Error! Unknown document property name.

of Claim, the State alleges certain indemnification and/or contribution claims against the Debtors based upon Montana state and common law. The Debtors do not concede that the State has a valid indemnification and/or contribution claim against them. The State also fails to demonstrate that it has a valid indemnification/contribution claim under applicable state law. Therefore, the State has not met the burden of showing that it is likely to succeed on the merits of its alleged claims.

## CONCLUSION

This Motion is just another attempt by a party to do an end run around the Debtors and the bankruptcy process. For the very same reasons the Court has denied similar attempts in the past, the Court must deny the States' Motion.

Dated: June 28, 2005

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
James W. Kapp III
Lori Sinanyan
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession