IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W. R. GRACE & CO., et al.<br><br>    Debtors. | Chapter 11<br><br>Case No. 01-01139 (JKF)<br>(Jointly Administered)<br>RE: Docket No. 8394<br>Hearing Date: August 17, 2005 at 9:00 a.m.<br>Pittsburgh, PA |

## RESPONSE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN SUPPORT OF THE DEBTORS' MOTION TO APPROVE PI CMO AND QUESTIONAIRE

The Official Committee of Unsecured Creditors of W. R. Grace & Co., et al. (the "Creditors' Committee"), by its undersigned counsel, submits this response in support of the Debtors' Motion to Approve PI CMO and Questionnaire, dated May 10, 2005 [Docket No. 8394], and states as follows:

1.  The Creditors' Committee continues to support the Debtors' case management proposal as a reasonable means to determine "the true scope of Grace's liability to asbestos claimants and then provide for the payment of valid claims on a basis that preserves Grace's still strong core business operations." Status Report of W. R. Grace and Proposal of Priorities for Litigation in this Court, dated December 14, 2001, at 1. Such a determination is of paramount interest to the Creditors' Committee because it represents all non-asbestos unsecured creditor interests, with claims well in excess of $500 million, a constituency that will share recoveries from the estate *pari passu* with the asbestos claimants.

2.  As the Creditors' Committee's counsel, Mr. Kruger, discussed with this

Court at the hearing held on January 21, 2005 concerning the Debtors' proposed estimation procedures and questionnaire,[1] the commercial creditors have the right to compel the asbestos personal injury claimants to "demonstrate why they believe they have a claim compensable by W.R. Grace." Ex. A at 152. Although the Court did not believe that a bar date was required (at this time) with respect to asbestos personal injury claims, the Court agreed that asbestos personal injury claimants, as a group, would be required to provide information to establish its claims:

> It seems to me that we can work out some kind of compromise that still provides the information that you are requesting, which I think is legitimate, i.e., who are the tort claims, who – or at least in global terms, who are the tort claimants, who will be coming forward at a level that the debtor is going to have to recognize in the trust, and what does that do to the underlying unsecured creditor distribution.

Ex. A. at 153. Just prior to stating that "the questionnaire's [sic] a good idea," the Court further noted its agreement with the Creditors' Committee's position:

> But, I agree with your ultimate conclusion, which is creditors have the right to determine whether the distributions are fair and reasonable with – coming either from the – that the debtor would put into the trust, on the one hand, versus what the debtor would be paying to other creditors whose claims don't go into the trust, on the other.

Ex. A at 155.

        3.      Notwithstanding this Court's clear statements at the January 21 hearing that a questionnaire would be necessary and appropriate as a means of obtaining discovery from the asbestos claimants, the ACC and the Futures Representative unreasonably continue to oppose such discovery. The Debtors' proposed discovery questionnaire, as this Court previously recognized, is required to allow the Debtors and their Plan Proponents to develop evidence

---

[1] Relevant excerpts from the transcript of the January 21, 2005 hearing are annexed hereto as Exhibit A.

concerning the issues that will impact the estimation process. The information obtained through the questionnaire will be the basis for the Debtors and their Plan Proponents to argue, among other things, that (1) an actual injury must be based on scientifically reliable and admissible evidence, pursuant to reliable diagnostic methods; (2) a claimant must demonstrate an occupational history involving actual exposure to the Debtors' products; and (3) a claimant must demonstrate that exposure to the Debtors' product substantially contributed to the claimed asbestos- related injury. This Court has already advised all parties that a questionnaire is "a good idea," and no basis exists for this Court to hold differently now.

4.    The Creditors' Committee therefore supports the Debtors' Motion to Approve the PI CMO and Questionnaire, for the reasons set forth above, in the Debtors' submissions, and in the Joinder of the Official Committee of Unsecured Creditors To Debtors' (1) Motion for Entry of an Order Seeking Estimation of Asbestos Claims and Certain Related Relief and (2) Motion for Entry of a Case Management Order Establishing Protocols for Litigating Asbestos-Related Claims Following Plan Confirmation [Docket No. 7265], a copy of which is attached as Exhibit B and is incorporated by reference as if fully set forth herein.

Dated: Wilmington, Delaware
       June 30, 2005

                        Respectfully submitted:

                        **STROOCK & STROOCK & LAVAN LLP**
                        Lewis Kruger
                        Kenneth Pasquale
                        (Members of the Firm)
                        180 Maiden Lane
                        New York, New York 10038-4982
                        Tel: (212) 806-5400
                        Fax: (212) 806-6006

                        and

                        **DUANE MORRIS LLP**

                        */s/ Michael R. Lastowski*
                        Michael R. Lastowski (DE I.D. 3892)
                        Richard W. Riley (DE I.D. 4052)
                        William S. Katchen
                        1100 North Market Street, Suite 1200
                        Wilmington, Delaware 19801
                        Tel: (973) 424-2000
                        Fax: (973) 424-2001

                        Counsel for the Official Committee
                        of Unsecured Creditors

# EXHIBIT A

```
                  UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF DELAWARE

IN RE:                            .    Case No.  01-01139
                                  .
                                  .
  W. R. GRACE & CO., et al,       .    5490 USX Tower
                                  .    600 Grant Street
                                  .    Pittsburgh, PA 15219
           Debtors.               .
                                  .    January 21, 2005
. . . . . . . . . . . . . . .     .    9:00 a.m.

                 TRANSCRIPT OF AGENDA MATTERS
            BEFORE HONORABLE JUDITH K. FITZGERALD
              UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:            Kirkland & Ellis, LLP
                           By:  DAVID M. BERNICK, ESQ.
                                THEODORE L. FREEDMAN, ESQ.
                                JANET S. BAER, ESQ.
                           200 Randolph Drive
                           Chicago, IL  60601

                           Pachulski, Stang, Ziehl, Young,
                             Jones, & Weintraub, PC
                           By:  DAVID W. CARICKHOFF, ESQ.
                           919 N. Market Street
                           16th Floor
                           P. O. Box 8705
                           Wilmington, DE  19899-8705

For the Official Committee Kramer, Levin, Naftalis,
of Equity Security Holders:  & Frankel, LLP
                           By:  PHILIP BENTLEY, ESQ.
                           919 Third Avenue
                           New York, NY  10022


Audio Operator:            Janet Kozloski

Proceedings recorded by electronic sound recording, transcript
           produced by transcription service.
```

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-Mail: jjcourt@optonline.net
(609) 586-2311    Fax No.  (609) 587-3599

151

1  that's what you want to do. But, I really do think it would be
2  a good idea for me to let you folks out early, although I
3  understand they're now saying that this four to eight inches
4  here, and twelve in Philadelphia, may not start until early in
5  the morning. But, it seems to be a moving --
6          MR. BERNICK: Well, I think we still want to get out
7  --
8                          (Laughter)
9          MR. BERNICK: We still want to get out of here.
10                         (Laughter)
11         THE COURT: You don't want to stay and see the
12 Steeler game here?
13         MR. BERNICK: I didn't listen to the weather.
14                         (Laughter)
15         THE COURT: That's what I mean.
16         MR. BERNICK: But, let's -- on this -- there's some
17 options. I think we just have to stay on course and I think
18 that if we can focus on those two groups of people, that would
19 be terrific.
20         THE COURT: All right. Mr. Kruger?
21         MR. KRUGER: Lewis Kruger, for the Official Unsecured
22 Creditor's Committee. Your Honor, while this morning Mr.
23 Bernick and Mr. Lockwood appeared to dominate the conversation
24 about bar dates, and questionnaires, and the like, the reality
25 of it is that our clients, our commercial creditors are the

152

1  ones who'll be most impacted by what may be the end result of
2  an estimation process here.
3       We find that we're obliged to file proofs of claim in
4  this Court. We have to demonstrate that W. R. Grace owes us
5  money, either for money loaned, for goods and services pursuant
6  to contracts, or otherwise. We need to identify why they owe
7  us that money, how much they owe us, and the like.
8       It doesn't strike me as inappropriate for there to be
9  a bar date for those who claim any claim against W. R. Grace,
10 and it doesn't strike me as inappropriate for them, to me, to
11 demonstrate why they believe they have a claim compensable by
12 W. R. Grace.
13      That's not to say that ultimately the Court will
14 determine what is indeed an appropriate level of information
15 for them to provide, or whether or not the claims they assert
16 are indeed compensable. But, it seems to me, as a threshold
17 matter, particularly since all creditors are entitled to object
18 to other creditor claims, that we have a standard to maintain,
19 which is that there ought to be a bar date, there ought to be
20 information provided, there ought to be questionnaires.
21      People should not really be able to -- sort of lie
22 back in the weeds and say, some estimation process will take
23 care of me.
24      We're entitled to know who are the creditors, who are
25 the claimants, what is the nature of their claim, and why they

153

1  believe that they have some compensable injury which needs to
2  be compensated by W. R. Grace.
3          THE COURT: Okay. Well, I appreciate that view
4  point. It does seem to me, however, that 524 really does not
5  require proofs of claim to be filed by tort claimants. And I
6  think there is some reason for that.
7          Number one, not everyone knows that they have an
8  existing claim, at the time. That's why they can be put into a
9  future demand category. And number two, it doesn't necessarily
10 make sense to look at an estimation process for purposes of
11 allowance of the claim, in the pre-confirmation phase, at least
12 if there's a consensual plan.
13         It seems to me that we can work out some kind of
14 compromise that still provides the information that you are
15 requesting, which I think is legitimate, i.e. who are the tort
16 claims, who -- or at least in global terms, who are the tort
17 claimants, who will be coming forward at a level that the
18 debtor is going to have to recognize in the trust, and what
19 does that do to the underlying unsecured creditor distribution.
20         I think, at this stage, to get a plan on the table,
21 that's really all I need. Now, to get through confirmation, I
22 don't know, maybe something more will be needed. But, I think
23 at this stage, if we can at least estimate those numbers, we'll
24 get a lot closer toward a consensual plan from all groups. So
25 --

J&J COURT TRANSCRIBERS, INC.

1           MR. KRUGER:  Maybe.

2           THE COURT:  -- I want to move forward on the
3  estimation side.  I'm not saying that at some point I don't
4  think a bar date might be appropriate, I'm just not sure we
5  need it here, now.

6           MR. KRUGER:  But, for those who certainly believe
7  they had claims prior to the commencement of the Grace
8  proceeding, now more than three years ago, since that, I don't
9  understand any reason why they should not be obliged to file
10 claims.

11          THE COURT:  Well --

12          MR. KRUGER:  They did assert a claim.  Why are they
13 not entitled to file a claim, like everybody else does?

14          And I don't know that it makes a difference that
15 you're a tort claimant.  There's nothing special about being a
16 tort claimant.  You're just another kind of creditor of this
17 estate.  And other creditors are entitled to look at your
18 claim, and have a view as to whether or not that claim is an
19 appropriate one to be compensated by Grace.

20          THE COURT:  Well, I'm not sure that's the case,
21 because of the fact that the claims are channeled to the trust
22 and once the trust is --

23          MR. KRUGER:  Futures may be.

24          THE COURT:  Well, the -- the presents can be too.

25          MR. KRUGER:  Possibly.

155

1    THE COURT: And to the extent that the presents are
2 channeled to the trust, they essentially waive the claim
3 against the debtor's estate, in favor of what the trust is
4 going to pay them.
5    MR. KRUGER: Well, but that -- but, Your Honor,
6 that's an illusion. Those funds come from the debtor's estate,
7 so therefore creditors -- other creditors are entitled to look
8 to see --
9    THE COURT: I don't --
10   MR. KRUGER: -- whether the funds that are going into
11 that trust are appropriate.
12   THE COURT: I don't think the Court's view that as an
13 illusion. I think they view it as a statutory requirement
14 under 524.
15   But, I agree with you with your ultimate conclusion,
16 which is creditors have the right to determine whether the
17 distributions are fair and reasonable with -- coming either
18 from the -- that the debtor would put into the trust, on the
19 one hand, versus what the debtor would be paying to other
20 creditors whose claims don't go into the trust, on the other.
21   But, I think the first piece of that is the
22 estimation process.
23   MR. KRUGER: And a questionnaire of some kind.
24   THE COURT: Well, yes. I'm -- I think the
25 questionnaire's a good idea, but it's not going to be 50 pages.

1           MR. KRUGER: Okay. That may be.
2           THE COURT: In fact, it's probably not going to be
3  ten pages, so --
4                          (Laughter)
5           UNIDENTIFIED MALE ATTORNEY: How long was Mr. Baena's
6  questionnaire?
7           THE COURT: I don't know.
8           MR. BAENA: How long was my question?
9           UNIDENTIFIED MALE ATTORNEY: Yes.
10          UNIDENTIFIED MALE ATTORNEY: Your questionnaire.
11          UNIDENTIFIED MALE ATTORNEY: Your questionnaire.
12          UNIDENTIFIED MALE ATTORNEY: How many pages?
13          MR. BAENA: It was very long.
14                         (Laughter)
15          MR. BAENA: And most of it was unnecessary.
16                         (Laughter)
17          THE COURT: Okay. You --
18          MR. BAENA: I think it was six or seven pages.
19          THE COURT: But, does anybody -- before I turn to the
20 issue of the property damage and the ZAI, does anybody else
21 wish to be heard on the nature of the personal injury
22 estimation hearing? Mr. Baena?
23          MR. BAENA: Judge, the only thing I would say in that
24 regard is, and I think Mr. Kruger alluded to it in respect to
25 his constituency -- forgive me, Scott Baena, on behalf of the

157

1  Property Damage Committee -- is that, for at least two reasons,
2  we believe we need to be involved in this process that defines
3  the contours of the estimation.
4      The first is, I think it's always amusing to be in
5  the same room with Mr. Lockwood and Mr. Bernick, particularly
6  when there's no Judge imposing any form of good conduct upon
7  them --
8      UNIDENTIFIED MALE ATTORNEY:  I'm going to delegate
9  that job to somebody else in my firm.
10                     (Laughter)
11     MR. BAENA:  And secondly, of course, as Mr. Kruger
12 alludes to, the value of those claims has a profound affect --
13     THE COURT:  Yes.
14     MR. BAENA:  -- on every constituency, and we're all
15 going to be involved in -- on one side or the other, of that
16 process.
17     So, I'm not asking to be locked in the same room, but
18 I am asking that we have a point of entry --
19     THE COURT:  Oh, sure.
20     MR. BAENA:  -- before the hearing, so it's not a
21 fete accompli.
22     THE COURT:  Oh, I didn't mean to suggest that it
23 wouldn't be circulated to everybody else for comments, Mr.
24 Baena.
25     But, I think that the two critical groups who will --

J&J COURT TRANSCRIBERS, INC.

1  who will likely be presenting evidence, I mean, maybe others
2  will too, but the likely two groups that will be presenting
3  evidence -- or three, possibly, will be the debtor, the
4  asbestos committee, and the futures rep.
5       And yes, if anybody else who's a recognized
6  committee, you know, has some issue, you're entitled to be
7  heard, and I'd certainly hear it, and, yes, I would agree that
8  your -- you have to participate at some level in the process,
9  setting up that estimation process.
10      But, I think the lion's share of the work should come
11 from Mr. Bernick, Mr. Lockwood, and somebody representing the
12 futures rep, because I think they will be taking the lead.
13      Am I incorrect?  Does somebody else expect, at this
14 point, to be presenting major substantive evidence, at the
15 estimation hearing, on the personal injury tort liability and
16 numbers.  Okay.
17      So, yes, I expect the three of -- I didn't address
18 the futures rep, because they've been over there very silent,
19 but actually, I do include the futures rep in that process.  I
20 think the three of them need to take that -- to start that,
21 getting an order together, and then circulate it to everyone,
22 before it's presented to me.
23      If there are areas of disagreement, I'll hear those
24 areas of disagreement.  In all probability there aren't likely
25 to be.  Okay.  Yes.  Good afternoon.

# EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Re: Docket Nos. 6898 & 6899 |
| | ) | |
| | ) | Objection Deadline: December 21, 2004 at 4:00 p.m. |
| | ) | Hearing Date: January 21, 2005 at 9:00 a.m. |
| | ) | |

## JOINDER OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' (1) MOTION FOR ENTRY OF AN ORDER SEEKING ESTIMATION OF ASBESTOS CLAIMS AND CERTAIN RELATED RELIEF AND (2) MOTION FOR ENTRY OF A CASE MANAGEMENT ORDER ESTABLISHING PROTOCOLS FOR LITIGATING ASBESTOS-RELATED CLAIMS FOLLOWING PLAN CONFIRMATION

The Official Committee of Unsecured Creditors of W. R. Grace & Co., et al. (the "Creditors' Committee"), by its undersigned counsel, submits this Joinder to the Debtors' (1) Motion For Entry Of An Order Seeking The Estimation Of Asbestos Claims And Certain Related Relief ("Estimation Motion") and (2) Motion For Entry Of A Case Management Order Establishing Protocols For Litigating Asbestos-Related Claims Following Plan Confirmation ("New CMO Motion"), and respectfully states as follows:

1. As stated on the record of the Court hearing held on December 20, 2004, the Creditors' Committee has determined (subject to the expected resolution of some open issues) to be a co-proponent of the plan of reorganization initially proposed by the Debtors. The Creditors' Committee thus joins in and fully supports the Debtors' attempts to define and resolve their asbestos liability -- personal injury, property damage and ZAI alike -- in an efficient and effective manner through the Estimation Motion and the New CMO Motion. With respect to the asbestos personal injury claims, such a process will properly result in payments from the trust to

WLM\203692.1

only those claims brought by persons with cognizable injuries caused by exposure to a Grace product.

2. Debtors' original motion for a case management order (the "Original CMO Motion"), filed shortly after the inception of these Chapter 11 cases, attempted to resolve the Debtors' actual liability to asbestos personal injury claimants through, in sum, detailed proof of claim forms to be filed by asbestos personal injury claimants, to be followed by objections by the Debtors to those proofs of claims to be resolved through pre-confirmation common issue litigation under Fed. R. Civ. P. 42 and Fed. R. Evid. 702. By those objections, the Debtors' various defenses to the asbestos claims could be adjudicated. However, no case management order was ever issued, no claims bar date was set and no order was issued with regard to a resolution of the issues underlying the asbestos claims. Thus, three and one-half years after the filing of the Original CMO Motion, the Debtors' asbestos liability remains unresolved

3. The Creditors' Committee concurs with the Debtors' willingness to proceed with the procedures set forth in the Original CMO Motion should the Court so determine. However, in light of the significant passage of time and the recent filing of the plan by the Debtors on November 13, 2004, the relief requested in the Estimation Motion and New CMO Motion is warranted, which propose, inter alia, an estimation of the Debtors' liability pre-confirmation and litigation protocols for the post-confirmation resolution of non-settling asbestos claims. Debtors' proposed process for the litigation and allowance/disallowance of all asbestos claims still depends for its administration and efficacy upon the filing of detailed proof of claim forms designed to resolve, on an aggregate basis, critical threshold issues -- including product identification, causation and impairment -- but from only those claimants who commenced litigation against the Debtors pre-petition. The proposed estimation procedures are critical for

whatever protocol is ultimately adopted by the Court because they can be used to determine the feasibility of the Plan, the establishment of the asbestos trust, and be used to determine Debtors' liability for all classes of asbestos claims (other than the Asbestos PI-AO Claims). Alternatively, they can used to define Debtors' liability through the litigation process proposed in the Original CMO Motion. The procedures should be adopted by the Court.

4   Debtors' New CMO Motion is predicated upon certain litigation protocols designed to resolve Debtors' liability in an efficient, effective and just manner, following confirmation of the Plan. The submission of Court-approved Proofs of Claim and PI Questionnaires will be utilized to obtain certain information essential to resolving common issues through omnibus objections to claims and summary judgment proceedings designed to litigate certain threshold liability issues, including (1) whether an alleged injury is based on scientifically reliable and admissible evidence, including reliable diagnostic methods; (2) whether claimants can demonstrate an occupational history involving actual exposure to the Debtors' products; and (3) whether claimants can demonstrate that exposure to the Debtors' product substantially contributed to the claimed asbestos- related injury. Submissions that fail to meet the minimum requisites for establishing a valid Asbestos Claim would be disallowed.

5   The Debtors are entitled to a determination, based on evidence that conforms with the Daubert requirements, of issues such as those listed in Debtors' New CMO Motion at 18-29 regarding the medical criteria to be applied to claims in order to ensure that the threshold requirements of harm and causation are met. These criteria should require a showing based on reliable diagnostic procedures that the claimant either has a malignant illness or has a non-malignant illness that has caused impairment – *i.e.*, actual harm – and that the illness is caused by exposure to asbestos. Asbestos claimants should also be able to show that they

3

worked in an occupation or workplace where they would have been exposed to the Debtors' asbestos products – otherwise, it should go without saying, the Debtors have no liability whatsoever to the claimant.

6.  Thus, Debtors' proposal to estimate Debtors' asbestos liability pre-confirmation, with common issues litigation to follow post-confirmation, is eminently sensible. Likewise, the procedures set forth in the Estimation Motion are critical to the appropriate funding of the Asbestos Trust. First, the establishment of the Asbestos PI Pre-Petition Litigation Bar Date and Questionnaire Return Date is a crucial first step in the process of defining the magnitude and types of claims to be evaluated in these Chapter 11 cases. Second, the direct notice campaign, as described in the Estimation Motion, will be sufficient to capture the entire universe of affected pre-petition claimants because all such claimants are already known to the Debtors. Third, as noted, the customized short-form proof of claim and questionnaire forms for Asbestos PI Pre-Petition Litigation claimants elicits necessary information, thereby enabling the parties and the Court to properly evaluate and resolve threshold liability issues against the Debtors' estates. Fourth, after the completion of expert discovery as to the amount of Asbestos Claim liability and aggregate trust expenses, the parties and the Court will be in the best position to (1) determine the amount of funding and allocations for each of the respective asbestos claimants' funds; and (2) cap the maximum distribution to Asbestos PI-SE and Asbestos-PD Claims, as set forth in the Plan.

7.  These cases have been pending for well over three years, and to date little substantive progress has been made in determining the extent of the Debtors' asbestos liabilities. The proposed plan of reorganization, in conjunction with the Estimation Motion and New CMO Motion, represent progress and a process for finally determining those liabilities. The Creditors'

4

Committee respectfully requests that the Court grant the Estimation Motion and the CMO Motion so that the issues necessary to confirm a plan of reorganization in these cases can finally be determined.

## CONCLUSION

8. For the reasons set forth above and those set forth in the Debtors' Estimation Motion and New CMO Motion, and accompanying submissions, it is respectfully submitted that this Court grant the Debtors' motions.

Dated: December 21, 2004

        Respectfully submitted:

        **STROOCK & STROOCK & LAVAN LLP**
        Lewis Kruger, Esquire
        Kenneth Pasquale, Esquire
        (Members of the Firm)
        180 Maiden Lane
        New York, New York 10038-4982
        Tel: (212) 806-5400
        Fax: (212) 806-6006

        and

        **DUANE MORRIS LLP**

        */s/ Michael R. Lastowski*
        Michael R. Lastowski, Esquire (DE I.D. No. 3892)
        William S. Katchen, Esquire
        1100 North Market Street, Suite 1200
        Wilmington, Delaware 19801
        Tel: (302) 657-4900
        Fax: (302) 657-4901

        Co-Counsel for the Official Committee
        of Unsecured Creditors