# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: <br><br> W. R. GRACE & CO., et al., <br><br> Debtors. | ) Chapter 11 <br> ) <br> ) Case No. 01-1139 (JKF) <br> ) <br> ) (Jointly Administered) <br> ) <br> ) Objection Deadline: June 30, 2005 <br> ) Hearing Date: August 17, 2005 <br> ) <br> ) Re: Docket Nos. 8394-8396 |

### OBJECTION OF THE OFFICIAL COMMITTEE OF ASBESTOS PROPERTY DAMAGE CLAIMANTS TO DEBTORS' MOTION TO APPROVE PI CMO AND QUESTIONNAIRE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

The Official Committee of Asbestos Property Damage Claimants (the "PD Committee"), by and through undersigned counsel, hereby files this Objection (the "Objection") to the above-captioned debtors' (collectively, the "Debtors") Motion (the "Motion") to Approve PI CMO and Questionnaire and Memorandum of Points and Authorities In Support of Motion. In support of its Objection, the PD Committee respectfully represents as follows:

### PRELIMINARY STATEMENT

The PD Committee regards evidence of the Debtors' asbestos property damage settlement history as a critical data point in the estimation of asbestos property damage claims (the "PD Estimation").[1] As a result, the PD Committee is compelled to object to

---

[1] The PD Committee and the Debtors are attempting to reach consensus on a case management order to govern the PD Estimation. To date, however, no consensus has been reached due, in large part, to the Debtors' insistence on turning the PD Estimation into a science trial. In short, the Debtors seek to use the PD Estimation as a platform to argue against the harmfulness of each of Grace's 20 asbestos containing products that were installed in buildings across the country over many decades. The Debtors' approach to the PD Estimation is anathema to the straightforward purpose of estimation enunciated by Judge Fullam in

the portion of the Motion that seeks, pursuant to FED. R. EVID. 408 ("Rule 408"), to exclude all evidence of the Debtors' settlement history from the estimation of asbestos personal injury claims (the "PI Estimation," and together with the PD Estimation, the "Estimations"). Three principal reasons exist why Rule 408 does not limit in any fashion the admissibility of settlement history in the Estimations.

First, the Court has already opined that Rule 408 does not bar the admissibility of pre-petition asbestos settlement history in estimating asbestos claims during the January 21, 2005 hearing (the "Hearing") on the Debtors' (a) Disclosure Statement for the Debtors' proposed Plan of Reorganization (the "Plan") (Docket No. 6896), (b) Motion for Case Management Order (Docket No. 6898), and (c) Motion for Estimation of Asbestos Claims (Docket No. 6895).[2] Rather, the Court recognized that experts customarily utilize a debtor's pre-petition settlement history in asbestos bankruptcy cases,[3] and that the Debtors' settlement history is likewise relevant to the Estimations. The Motion offers no reason why the Court should reconsider its prior ruling.

Second, pre-petition asbestos settlement history will not be utilized in the Estimations to prove liability with respect to settled asbestos claims; rather, pre-petition asbestos settlement history will be utilized by experts to determine plan feasibility, to wit, the amount required to fund an 11 U.S.C. § 524(g) trust to satisfy all current and future asbestos claims. Accordingly, Rule 408 is simply not implicated in the Estimations.

---

Owens Corning– figuring out "what would have been a fair resolution of the claims in the absence of bankruptcy." See Owens Corning v. Credit Suisse First Boston, 322 B.R. 719, 722 (D. Del. 2005). To answer this question, the Court need not accept the Debtors' invitation to create new asbestos caselaw, but rather the Court must extrapolate from the Debtors' pre-petition litigation history.

[2]   See January 21, 2005 transcript ("Tr.") at 169. The Court reaffirmed the relevance of settlement history to the Estimations most recently at the June 27, 2005, hearing on the Debtors' motion to extend exclusivity.

Indeed, in order to determine the amount required to fund a § 524(g) trust, the Court must ascertain what would have been a fair resolution of present and future asbestos claims in the absence of bankruptcy. Courts customarily admit into evidence, in one form or another, a debtor's asbestos settlement history to allow experts to extrapolate from pre-petition settlement data to estimate a debtor's aggregate asbestos liability. Incredulously, the Debtors omit any reference to In re Babcock & Wilcox Co., 274 B.R. 230 (Bankr. E.D. La. 2002), a case in which a court rejected the very argument espoused here by the Debtors to prohibit the use of pre-petition asbestos settlement history under Rule 408. It cannot be gainsaid that the Debtors are represented by the same lead bankruptcy counsel who represent the Babcock & Wilcox ("B&W") debtors.

Third, the Court has already observed that the Estimations will largely be a "battle of the experts."[4] Accordingly, evidentiary rules governing experts will apply to the Estimations. One such rule, FED. R. EVID. 703 ("Rule 703"), provides that an expert may base an opinion or report on inadmissible evidence so long as the expert's peers likewise rely on such evidence. No doubt exists that experts on all sides of contested estimations customarily rely on debtors' settlement histories to estimate asbestos liability. Thus, even if the Court construes as inadmissible the Debtors' pre-petition asbestos settlement history under Rule 408, an expert opinion or report that relies on such settlement history would be admissible. For each of the foregoing reasons, the PD Committee respectfully requests that the Court (a) deny the portion of the Motion that seeks to exclude pre-petition settlement history from the PI Estimation and (b) reaffirm that the Debtors' pre-petition settlement history is admissible in the PD Estimation.

---

[3] Id. at 116, 119, 124, 128.
[4] Tr. at 134.

## BACKGROUND

1. On April 2, 2001, each of the Debtors filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. On April 12, 2001, the Office of the United States Trustee appointed the PD Committee, the Official Committee of Asbestos Personal Injury Claimants, and the Official Committee of Unsecured Creditors. On June 18, 2001, the United States Trustee appointed the Official Committee of Equity Security Holders. On May 24, 2004, the Court appointed Mr. David T. Austern as the representative of future claimants.

3. On or about November 13, 2004, the Debtors filed their initial Plan, which was subsequently amended on or about January 13, 2005, to include, inter alia, the Unsecured Creditors Committee and the Equity Committee as co-proponents of the Plan.

## OBJECTION

### I. PRE-PETITION ASBESTOS SETTLEMENTS ARE ADMISSIBLE AND RELEVANT TO THE ESTIMATIONS

#### A. The Court Has Already Ruled That the Debtors' Settlement History is Admissible and Relevant to the Estimations

4. The Debtors initially argued at the Hearing that pre-petition asbestos settlements are inadmissible under Rule 408.[5] During the Hearing, the Court rebuffed the Debtors' on this exact point:

---

[5] See Tr. at 34 (Mr. Bernick: "What does the Federal Rules of Evidence say about settlement evidence? It doesn't come in. It's just not part of the equation.")

> Mr. Bernick: The only way to be able to extrapolate to the future is to have a baseline from which you extrapolate.
>
> The Court: You do have a baseline. You've got a 20-year history.
>
> Mr. Bernick: No, no. But, the – you've got a baseline, but the baseline includes a lot of stuff that's not useable in this Court, for purposes of the projection....
>
> The Court: You know the reason I think it may be useful, Mr. Bernick? It has nothing to do with the rules of evidence, it has to do with the practicality of a plan confirmation process. The reality is that some of these people will have claims – in the tort system, will have claims that will sustain a judgment. I mean, it's happened in the past....So, it likely will happen in the future, if you ever get back into the tort system....And so the settlement numbers that the debtor, in it's business judgment, whether it views that it was extorted into that process or not, set some parameters within which people who have similar claims in the future may realize that they're not going to be able to get much higher of a distribution through the trust, because that's all the debtor was willing to pay before the bankruptcy hit.

Tr. at 128-129.

5. Further, in response to the Court's statements regarding the admissibility of settlement history, the Debtors' lead bankruptcy counsel, Mr. Bernick, <u>agreed</u> with the Court that settlement history is relevant to the Estimations:

> Mr. Bernick: I completely agree with that. I mean, that's why the sequence is, I think, is exactly as I indicated. The issue is not whether there's any – it's not whether there's no relevance to this. There is some relevance.

<u>Id.</u> at 129.

6. The Debtors fail to provide any reason for the Court to depart from its prior statements regarding the relevance and admissibility of the Debtor's settlement history. Additionally, the Debtors fail to explain their retreat from Mr. Bernick's prior statements acknowledging the relevance of settlement history to the Estimations. The PD

Committee respectfully requests that the Court reaffirm its ruling that the Debtors' settlement history is admissible in the Estimations.[6]

## B. Rule 408 Does Not Prohibit the Admissibility of Settlement History

7. Notwithstanding the Court's prior statements regarding the admissibility of the Debtors' settlement history, out of an abundance of caution the PD Committee has set forth several bases in support of the admissibility of settlement history to determine the Debtors' aggregate asbestos liability. The plain language of Rule 408, set forth below, permits the admissibility of settlement history into evidence:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

FED. R. EVID. 408 (emphasis added).

8. Rule 408 only bars the admissibility of settlements offered "to prove the validity or invalidity of the claim that was the subject of the compromise." 23 Wright and Graham, FEDERAL PRACTICE AND PROCEDURE § 5306 (1980). Settlements are admissible, however, where "the settlement negotiations and terms explain and are part of another dispute, [such that] they must often be admitted if the trier is to understand the case." 2 Weinstein, FEDERAL EVIDENCE § 408.08[5] (2d ed. 1997);

---

[6] The PD Committee is not opining as to the weight the Court should or should not accord to the Debtors' asbestos personal injury settlement history. The PD Committee reserves the right to take any

Broadmount Capital Corp. v. Summa Med. Corp., 972 F.2d 1183, 1194 (10th Cir. 1992)(evidence from prior settlement discussions admissible because those discussions related to an entirely different claim from the claim that was the subject of negotiations).

9. The Debtors ignore an expansive body of caselaw holding that Rule 408 permits the admissibility of settlement history when utilized for purposes other than to prove liability with respect to claims covered by the settlement. See Starter Corp. v. Converse, Inc., 170 F.3d 286, 293-94 (2d Cir. 1999)(admitting evidence of prior settlement because it was not offered to prove or disprove validity of claims encompassed by settlement agreement); Trebor Sportswear Co. v. Limited Stores, Inc., 865 F.2d 506, 510 (2d Cir. 1999)(offers of compromise can fall outside Rule 408 rule if offered "for a purpose other than to prove or disprove the validity of the claims that the offers were meant to settle"); Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758, 770 (10th Cir 1997)("Rule 408 does not require the exclusion of evidence regarding the settlement of a claim different from the one litigated. . ."); Broadcort Capital Corp. v. Summa Med. Corp., 972 F.2d 1183, 1194 (10th Cir. 1992)(evidence of settlement discussions admissible since not offered to prove validity or amount of claim under negotiation); Vulcan Hart Corp. v. NLRB, 718 F.2d 269, 277 (8th Cir. 1983)(holding that Rule 408 excludes evidence of settlement offers only if such evidence is offered to prove liability for or invalidity of the claim under negotiation); Herman v. City of Allentown, 985 F.Supp. 569, 577 (E.D. Pa. 1997)(settlement agreement allowed into evidence since it was not offered to prove validity of settled claim but rather to prove unrelated issue of defendant's discriminatory intent); Seafarers Int'l Union of N. A. v. Thomas, 42

---

position with respect to the weight accorded to the Debtors' personal injury settlement history in the PI Estimation.

F.Supp.2d 547, 559 (D. Virgin Islands 1999)("The traditional case for which the rule was designed is where, for example, a plaintiff is barred from presenting evidence at trial that the defendant previously offered the plaintiff $10,000 to settle the claim.").

10. Here, as with most estimations, the asbestos committees will be utilizing the Debtors' settlement history to determine plan feasibility and not "to prove liability for" the settled asbestos claims. See, e.g., Kool, Mann, Coffee & Co. v. Coffey, 300 F.3d 340, 347 (3d Cir. 2002)("The object of [an estimation] proceeding is to establish the estimated value of a creditor's claim for purposes of formulating a reorganization plan."); Owens Corning, 322 B.R. at 722 ("The overall task at this point in the [estimation] litigation is to determine what each class of creditors has at stake in the reorganization."); In re Farley, 146 B.R. 748, 753 (Bankr. N.D. Ill. 1992)(court estimated group of personal injury claims for purposes of voting on plan and determining plan feasibility). Because the asbestos committees will utilize settlement history as a data point to determine plan feasibility and not to revisit whether the Debtors are liable on settled claims, Rule 408 permits the admissibility of settlement history.

11. The Debtors disingenuously argue that "Rule 408 is not typically invoked in other Chapter 11 cases because other cases appear to involve estimations in which settlement history is used with the consent of the debtors." Motion at 7. The Debtors fail, however, to mention that their lead bankruptcy counsel made and lost the exact same argument in relation to an estimation analysis in Babcock & Wilcox. In that case, the debtor B&W argued, in the context of a solvency proceeding, that the plaintiff's reliance on B&W's settlement history in their expert's report was a violation of Rule 408. The

court found the B&W debtor's argument to be "flawed." In re Babcock & Wilcox Co., 274 B.R. 230, 255 (Bankr.E.D.La. 2002). Specifically, the Court held:

> Finally, defendants' argument that Rule 408 of the Federal Rules of Evidence prevents the court from considering B&W's prior settlement history and protocol is also without merit. Rule 408 prohibits use in trial of evidence of a settlement "to prove liability for or invalidity of the claim or its amount." Rule 408 applies to the use of evidence of compromise to prove the validity or invalidity of the claim that is the subject of the compromise. Thus, a particular plaintiff in a tort case against a particular defendant cannot establish liability in that case by using evidence of attempts to settle that case, or evidence of verdicts that other plaintiffs have won against the defendant in other cases. When settlement negotiations and terms explain and are part of another dispute, however, they are often admitted to allow the trier of fact to "understand the case."
>
> Consequently, the court, in determining whether B&W's future estimation of tort liabilities was reasonable, can consider both settlements by B&W and other case histories against other asbestos defendants as part of the grounds for its decision. To do otherwise would close one's eyes to the realities that existed in 1998.

Id. at 256-57.

12.  Courts estimating mass tort and asbestos claims have customarily relied on estimates based on the debtor's pre-petition claims experience in the state court tort system. See, e.g., In re Eagle-Picher Indus., Inc., 189 B.R. 681, 686 (Bankr. S.D. Ohio 1995) (estimating claims based upon the debtor's pre-petition claims history); Owens Corning, 322 B.R. at 725 (rejecting opinion of expert because it "cannot be accepted without totally disregarding the historical experience in asbestos litigation."); In re A.H. Robins Co., 88 B.R. 742 (E.D. Va. 1988), aff'd, 880 F.2d 694, 699-700 (4th Cir.), cert. denied, 493 U.S. 959 (1989) (Dalkon Shield case).

13.  The cases cited by the Debtors for the proposition that Rule 408 prohibits past settlement history are inapposite. For instance, in Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1223, 1247 (3d Cir. 1993), cert. denied, 510 U.S. 994

(1993), a restraint of trade action, the plaintiff never sought to introduce prior settlements but rather prior antitrust actions brought against the defendants to prove the defendants' motive and economic incentive to participate in a conspiracy. Hudspeth v. Comm'r of IRS, 914 F.2d 1207, 1213-14 (9th Cir. 1990), is similarly off-point. There, a party to a dispute attempted to introduce into evidence a settlement between a tax commissioner and a third party in an effort to prove the party's tax liability. The Ninth Circuit ruled, as a matter of policy, that the settlement was inadmissible because otherwise the tax collector would be required to review whether a settlement could be binding in subsequent cases. No similar policy concern exists in these cases to exclude settlement history from the Estimations. The other cases cited by the Debtors are likewise non-germane. See Belton v. Fibreboard Corp., 724 F.2d 500, 505 (5th Cir. 1984)(judge violated Rule 408 by impermissibly coaching jury as to appropriate verdict amount by disclosing settlement amounts between plaintiffs and former co-defendants); In re Dow Corning Corp., 250 B.R. 298, 341 (Bankr. E.D. Mich. 2000)(case stands for the unremarkable rule that the existence of a settlement agreement does not prove tortious activity of party thereto); New Jersey Turnpike Auth. v. PPG Indus., Inc., 16 F.Supp. 2d 460, 473 (D.N.J. 1998)(same); Playboy Enters., Inc. v. Chuckleberry Publ'g, Inc., 486 F.Supp. 414, 423 (S.D.N.Y. 1980)(in trademark infringement action, court disallowed introduction of settlement of "dubious propriety and significance" to matter at hand).

### C. Experts May Rely Upon The Debtors' Settlement History Even If the Settlements Themselves Are Inadmissible

14. The Court unequivocally stated at the Hearing that the Estimations will constitute a "battle of experts" over the aggregate amount of asbestos liabilities.

Accordingly, evidentiary rules governing expert opinion testimony will apply to the Estimations. One such evidentiary rule, Rule 703,[7] states the following:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. <u>If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted</u>. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

FED. R. EVID. 703 (emphasis added).

15. Whether or not Rule 408 excludes settlement history is a red herring because Rule 703 allows experts to rely upon inadmissible data so long as the information is of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject. See Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 417 (3d Cir. 2002)("If the data underlying the expert's opinion are so unreliable that no reasonable expert could base on opinion on them, the opinion resting on that data must be excluded."); In re Custom Distribution Servs., 224 F.3d 235 n.8 (3d Cir. 2000)(under Rule 703 real estate appraiser appropriately relied on report and letters even though report and letters were not introduced into evidence because experts in field rely on such information).

16. Experts on all sides of asbestos estimations extrapolate, in one form or another, from a debtor's pre-petition litigation history, including settlement data, to derive an estimation of a debtor's total present and future asbestos liability. Therefore, even if the Debtors' settlement history is inadmissible under Rule 408 (which it is not), an expert

---

[7] FED R. EVID. 403, 702 and 705 are likewise applicable to expert opinion testimony.

opinion or report based upon the Debtor's settlement history would be admissible under Rule 703.

## CONCLUSION

17.    The purpose of estimating the Debtors' asbestos liabilities should be to put these chapter 11 cases, in the first instance, on a course toward confirmation of a plan of reorganization. Such a plan requires a reasonable approximation of the value of the pending and anticipated asbestos claims so that this value can be compared to the entitlements of other stakeholders, a necessary step in determining voting power with respect to any plan and allocating the value of the Debtors' estates among the different constituencies. The Debtors' attempt to exclude their asbestos settlement history from the Estimations will only further frustrate any confirmation process.

[continued on the next page]

WHEREFORE, based upon all of the foregoing, the PD Committee respectfully requests that the Court (a) deny the portion of the Motion that seeks to exclude the Debtors' pre-petition asbestos settlement history from the PI Estimation; (b) reaffirm its ruling that the Debtors' pre-petition asbestos settlement history may be utilized during the PD Estimation; and (c) grant such other and further relief as the Court deems appropriate and necessary.

Wilmington, Delaware
Dated: June 30, 2005

BILZIN SUMBERG BAENA
  PRICE & AXELROD LLP
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131-2336
Telephone: (305) 374-7580

Scott L. Baena (Admitted Pro Hac Vice)
Jay M. Sakalo (Admitted Pro Hac Vice)
Matthew I Kramer (Pro Hac Vice Pending)

-and-

FERRY JOSEPH & PEARCE, P.A.

/s/ Theodore J. Tacconelli
Theodore J. Tacconelli (No. 2678)
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, Delaware 19899
Telephone: (302) 575-1555

CO-COUNSEL FOR THE OFFICIAL
COMMITTEE OF ASBESTOS
PROPERTY DAMAGE CLAIMANTS