# EXHIBIT "B"



# FORM 10-K

## W R GRACE &CO - GRA

**Filed: March 07, 2005 (period: December 31, 2004)**

Annual report which provides a comprehensive overview of the company for the past year

million for pre-Chapter 11 contractual settlements and judgments, brings the total recorded asbestos-related liability as of December 31, 2004 to $1,700 million. Any differences between the Plan as filed and as approved for confirmation could fundamentally change the accounting measurement of Grace's asbestos-related liability and that change could be material.

Grace previously purchased insurance policies under which Grace claims coverage for its asbestos-related lawsuits and claims. Grace has settled with and has been paid by all but one of its primary insurance carriers with respect to both property damage and personal injury cases and claims. Grace has also settled with its excess insurance carriers that wrote policies available for property damage cases; those settlements involve amounts paid and to be paid to Grace. Grace believes that certain of these settlements may cover ZAI claims as well as other property damage claims. In addition, Grace believes that additional coverage for ZAI claims may exist under excess insurance policies not subject to settlement agreements. Grace has settled with excess insurance carriers that wrote policies available for personal injury claims in layers of insurance that Grace believes may be reached based on its current estimates. Insurance coverage for asbestos-related liabilities has not been commercially available since 1985.

Pursuant to settlements with primary-level and excess-level insurance carriers with respect to asbestos-related claims, Grace received payments totaling $10.8 million in 2002, $13.2 million in 2003, and $18.7 million in 2004. Grace estimates that, assuming an ultimate payout of asbestos-related claims equal to the recorded liability of $1,700 million, it should be entitled to approximately $500.0 million, on a net present value basis, of insurance recovery. Such recovery, however, would occur only as claims are paid by the asbestos trust, absent an alternative payment arrangement with Grace's insurers.

See Item 1 of this Report and Notes 2 and 3 to the Consolidated Financial Statements and "Management's Discussion and Analysis of Results of Operations and Financial Condition" in the Financial Supplement for additional information.

3. Environmental Proceedings. a. Libby, Montana and Vermiculite-Related Proceedings. From the 1920's until 1992, Grace (beginning in 1963) and previous owners conducted vermiculite mining and related activities near Libby, Montana. The mined vermiculite ore contained varying amounts of asbestos as an impurity, almost all of which was removed during processing. Expanded vermiculite was used in products such as fireproofing, insulation and potting soil.

In November 1999, Region 8 of the U.S. Environmental Protection Agency ("EPA") began an investigation into alleged excessive levels of asbestos-related disease in the Libby population related to these former mining activities. This investigation led the EPA to undertake additional investigative activity and to carry out response actions in and around Libby. On March 30, 2001, the EPA filed a lawsuit in U.S. District Court for the District of Montana, Missoula Division (United States v. W. R. Grace & Company et al.) under the Comprehensive Environmental Response, Compensation and Liability Act for the recovery of costs allegedly incurred by the United States in response to the release or threatened release of asbestos in the Libby, Montana area relating to such former mining activities. These costs include cleaning and/or demolition of alleged contaminated buildings, excavation and removal of alleged contaminated soil, health screening of Libby residents and former mine workers, and investigation and monitoring costs. In this action, the EPA also sought a declaration of Grace's liability that would be binding in future actions to recover further response costs.

In connection with its defense, Grace conducted its own investigation to determine whether the EPA's actions and cost claims were justified and reasonable. However, in December 2002, the District Court granted the United States' motion for partial summary judgment on a number of issues that limited Grace's ability to challenge the EPA's response actions. In January 2003, a trial was held on the remainder of the issues, which primarily involved the reasonableness and adequacy of documentation of the EPA's cost

16