# EXHIBIT 1

1

1        UNITED STATES DISTRICT COURT

2        EASTERN DISTRICT OF LOUISIANA

3

4

5    IN RE:                          *    Docket 00-CV-558-R
                                     *
6    THE BABCOCK & WILCOX COMPANY    *    January 25, 2002
                                     *    10:00 a.m.
7    * * * * * * * * * * * * * * *    *

8

9            TRANSCRIPT OF PROCEEDINGS BEFORE THE
                 HONORABLE SARAH S. VANCE
10               UNITED STATES DISTRICT JUDGE

11
     APPEARANCES:
12

13   For the Debtors:              Kirkland & Ellis
                                   BY:  DAVID M. BERNICK, ESQ.
14                                 200 E. Randolph Drive
                                   Chicago, Illinois 60601
15

16   For the Asbestos             Caplin & Drysdale
       Claimants Committee:       BY:  ELIHU INSELBUCH, ESQ.
17                                 399 Park Avenue, 27th Floor
                                   New York, New York 10022
18

19   Official Court Reporter:     Toni Doyle Tusa, CCR
                                   501 Magazine Street, Room 406
20                                 New Orleans, Louisiana 70130
                                   (504) 589-7778
21

22

23

24
     Proceedings recorded by mechanical stenography, transcript
25   produced by computer.

1    APPEARANCES, (Continued):

2

3    For the Unofficial          ELIZABETH W. MAGNER, ESQ.
       Committee of Select        228 St. Charles Avenue
       Claimants:                 Suite 1110
4                                 New Orleans, Louisiana 70130

5

6    For the Futures             Young, Conaway, Stargatt
       Representative:              & Taylor
                                  BY:  JAMES L. PATTON, JR., ESQ.
7                                 1000 West Street, 17th Floor
                                  Wilmington, Delaware 19801

8

9    For the Futures             Session, Fishman & Nathan
       Representative:           BY:  J. DAVID FORSYTH, ESQ.
10                                201 St. Charles Avenue, 35th Floor
                                  New Orleans, Louisiana 70170

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2                                         Page      Line

3        David M. Bernick, Esq.             4        10

4        Elihu Inselbuch, Esq.            36        20

5        J. David Forsyth, Esq.           50         1

6        James L. Patton, Esq.            50         9

7        Elizabeth W. Magner, Esq.        58         9

8        David M. Bernick, Esq.           60        14

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   only about 22,000 of them are arguably viable?

2          MR. BERNICK:  22,000, I take it Your Honor has gone

3   through and kind of marked out categories that we put numbers

4   on and done the subtraction?

5          THE COURT:  Right.

6          MR. BERNICK:  I'm not sure that's correct because

7   there's overlap between some of those categories.

8          THE COURT:  Well, what I looked at was you had these

9   categories that you say are claims that are nonviable.  There

10  were like 22,000 left that are arguably viable, to which you

11  say you have other defenses as to the 22,000.

12         MR. BERNICK:  I don't know what exactly the math was

13  that Your Honor followed.  As I indicated, some of these

14  categories that we put numbers on are overlapping, so you would

15  have to see how they net out.

16         THE COURT:  I think I was following what you put in

17  your surreply brief because the original brief that you

18  submitted didn't do that.  Your supplemental brief basically

19  listed that there were:  50,000 claims that were challengeable

20  on the basis of duplication, that were paid already, they were

21  employees, or they lacked some sort of documentation; another

22  160,000 had no exposure; 40,000 that had arguable exposure, had

23  no impairment; and that there were 22,000 left after.

24         MR. BERNICK:  That's fair enough.

25         THE COURT:  If what you are saying is true, that

1   still would mean that before we got to the 22,000 that are

2   arguably viable I would have to make 200,000 discrete

3   determinations that these claims were not sufficient to

4   proceed, is that right?

5           MR. BERNICK:  You would have to make a determination

6   with regard to those claims.  The word "discrete" suggests it

7   would be individualized.

8           THE COURT:  How else?

9           MR. BERNICK:  That's the whole purpose of Rule 42.

10  It enables the Court to aggregate claims for purposes of

11  addressing a common issue.

12          THE COURT:  But the issues are still individual

13  issues.  If you are going to lump them all together and say,

14  okay, these 160,000 may have an issue involving exposure --

15  each one of those people has an issue as to exposure that has

16  to be determined.  Simply putting them together for Rule 42

17  doesn't make the individual issue go away.

18          MR. BERNICK:  It depends upon the nature of the issue

19  and the nature of the proof.  Obviously, in order to make a

20  determination binding with regard to an individual claimant,

21  that claimant's particular claim has to be before the Court.

22  But in the same fashion, if you were to say we had 100,000

23  people all of whom got a certain disease from exposure to a

24  pharmaceutical drug --

25          THE COURT:  That doesn't have anything to do with

1   this.   You are saying that you have 160,000 people who weren't

2   exposed to your boilers.

3          MR. BERNICK:   Right.

4          THE COURT:   Now, how can I do that except one at a

5   time?

6          MR. BERNICK:   Because you take the proof of claim

7   forms, and where they say by their own proof of claim forms

8   they were exposed to Babcock & Wilcox asbestos, it's right in

9   their claim forms.   You compare what their claim forms say was

10  the site of that exposure to the Babcock & Wilcox boiler sites

11  which are documented and recorded.   A boiler is not something

12  that floats in and out.   They are huge facilities.   You see if

13  there's an overlap between those 95,000 --

14         THE COURT:   That's not the end of the story.   We

15  don't know the validity of your data.   There has to be a

16  determination.   The fact they say, "I was exposed to a boiler

17  at X, Y, Z location," and you say, "No, you weren't," is not

18  the end of the story.

19         MR. BERNICK:   I could see there might be a necessity

20  of some discovery to verify the accuracy of our documentation,

21  and that verification I believe would be fairly

22  straightforward.   We would establish it was a business practice

23  to create files for each and every boiler that was manufactured

24  and supplied, that they had been kept in the ordinary course of

25  business, they had been maintained and what work done on those

1    boilers recorded, these are the boiler files, and they are what

2    they are.

3              Now, if somebody is going to say, "No, it turns

4    out that you really had another boiler that you didn't even

5    know about that's not in your files, not in your records,

6    nobody ever heard about it, but I swear it was a Babcock &

7    Wilcox boiler," then you could argue there's an issue of fact.

8    The question is whether it's a credible issue of fact given

9    what the proofs would be.

10             THE COURT:  Well, we would have to get into 160,000

11   of those possibilities.

12             MR. BERNICK:  There's that possibility, or the Court

13   could determine based upon the evidence that's been provided

14   about how these boilers were set up, how they were certified,

15   how they were tracked, and how they were logged.  That oral

16   testimony saying, "I saw what I thought to be a Babcock &

17   Wilcox boiler," does not present a reasonable issue of fact.

18   It is not an issue of fact in which reasonable minds could

19   differ and shouldn't go to the jury.

20             THE COURT:  We still would have to get to that as to

21   each one.

22             MR. BERNICK:  I would disagree with that, Your Honor.

23   You get to that on the basis of the nature of the proof that's

24   offered by the company about what the documentation means.  So,

25   in other words, we say if the documentation is solid, reliable

1    documentation that's been properly kept, had to be kept, and

2    that all that's on the other side, therefore, is somebody who

3    says, "I was there and I saw a different thing," you don't have

4    to make that determination 160,000 times.  The question is

5    whether the oral testimony in some fashion has enough

6    credibility as against the documented history of record-keeping

7    to create a reasonable issue of fact.  It's the whole question

8    of the summary judgment standard of proof.  It's not just a

9    disagreement between two people saying something.

10            THE COURT:  It's your contention there are 160,000

11   people who have said they were exposed to your boilers who were

12   not at any place where there was --

13            MR. BERNICK:  There are 93,000 people who already in

14   their claim forms say, "I was exposed to Babcock & Wilcox

15   asbestos," and they fill in the blank with the site where there

16   was never a Babcock & Wilcox boiler.  There are 95,000 of those

17   people.  There are an additional 65,000 where we think that's

18   what they have done, but we are not quite sure, so we create a

19   45-day window, or thereabouts, for them to clarify what was the

20   particular site where they say a boiler existed.  These can be

21   done on an aggregated basis.

22            It's really a question of whether summary

23   judgment means anything.  If all that it takes to defeat

24   summary judgment is somebody to say, "I disagree.  I saw it,"

25   then we won't have summary judgment, but that's not the

1    standard.   The standard is it has to be sufficient evidence to

2    clear a directed verdict motion.   It must be evidence

3    sufficient to give rise to a reasonable difference of view

4    about what the facts were.

5             THE COURT:  All right.  Let me ask you something

6    else.   Even if you lose on these 200,000, before we get to the

7    22,000 there are additional grounds you can challenge any one

8    of those people in the first 200,000.   There are multiple

9    grounds that you could keep coming back.  If you lost, say, on

10    the boiler issue, you would come back later on a sophisticated

11    user or some other motion later, right?

12             MR. BERNICK:  Right.  Well, in the case of the boiler

13    issue, if the boiler wasn't there, it's going to be difficult

14    for us --

15             THE COURT:  Suppose there's an issue of fact and you

16    lose that summary judgment motion.   That's not the end of it

17    because you have a backup summary judgment motion down the road

18    because you have about 644,000 possible objections that could

19    be made to these claims if I add all this stuff up.

20             MR. BERNICK:  I understand what you say.  If we lose

21    on summary judgment as to whether the boiler is there, will we

22    have other backup defenses, and the answer is there are medical

23    defenses.   Some of the other defenses are not really backup

24    defenses because you have to know what the boiler was and when

25    it was put in place to make them.   For example, the statute of

12

1   repose assumes that you can identify a boiler and know when it

2   was finished, so that's a defense that can't be a backup

3   defense.  By contrast, the defense that says that there's a

4   medical condition that has not been proven by reliable

5   evidence, yes, that would be a second wave of defenses not

6   focused on our conduct or on product identification, that are

7   focused on the medicine, and the reason we put them second is

8   because we believe they are going to be a little more difficult

9   to deal with because they will require some expert testimony.

10          THE COURT:  How long do you envision this process

11   taking?

12          MR. BERNICK:  I think this process is really almost

13   purely a question of paperwork, with some limited discovery.  I

14   think the first wave of this process could be before Your Honor

15   in a matter of months.

16          THE COURT:  I'm talking about the total lifetime of

17   this process.

18          MR. BERNICK:  The total lifetime?

19          THE COURT:  Getting it before me -- I'm not a claims

20   adjustor.  I was trained as a lawyer and as a judge, and if I

21   get motions it takes me time to look at things.  It's not going

22   to be months for me to decide 200,000 discrete questions.  I

23   know that.  It takes months to get your arms around the 200,000

24   that you even have in the Court.

25          MR. BERNICK:  I think realistically what Your Honor

1  would get is a brief from us -- let's take the boilers as an

2  example.  We would take the 93,000 and we would file an omnibus

3  objection and move for summary judgment, and we would attach to

4  the motion for summary judgment affidavits of documentation of

5  where our boilers were.

6          That is one of the most perverse issues, that

7  somehow there's a big boiler there and nobody really knew about

8  it except this person saw it.  So we would submit that

9  documentation.  They would be entitled to conduct some

10 discovery, obviously, to verify what the accuracy of that

11 documentation is.

12          THE COURT:  You would give them 30 days to do that?

13          MR. BERNICK:  I would give them 30 days on the

14 discovery, probably, yes.  It's really relatively simple

15 discovery.  All it is is taking the depositions of the people

16 who maintained the records and finding out what records they

17 have.  This is not rocket science.  It's not that complex.  We

18 take the discovery, then --

19          THE COURT:  You don't want to depose them?  You don't

20 want to depose the plaintiffs on that issue?

21          MR. BERNICK:  Well, on the issue of what they saw,

22 no.  I think that, in fact, the claim form is probably enough

23 for us to pose the issue; that is, that we would rest upon the

24 reliability of our documentation in order to establish, in

25 fact, the boiler was not there.

1          THE COURT:  If the plaintiff came in and said, "I saw

2     something different," you would be content not to cross-examine

3     the plaintiff?

4          MR. BERNICK:  It might be interesting to take a few

5     depositions and develop some feel for the Court on what kind of

6     testimony is offered, but we are not going to sit there and

7     take 95,000 depositions.

8          THE COURT:  Tell me how long this first 95,000 is

9     going to take to dispose of.

10          MR. BERNICK:  That, I think, could be done in three

11     months.  Again, because --

12          THE COURT:  Who is doing what?  Your part or my part?

13          MR. BERNICK:  It depends on how fast you read the

14     papers.  Your Honor I think is justifiably and

15     understandably -- I'll use the word I think it's --

16          THE COURT:  Try awe-struck.

17          MR. BERNICK:  Awe-struck, intimidated, disconcerted

18     by the numbers, but the numbers are not what drive the

19     equation.  What's going to drive the equation is our ability to

20     pick out common predicate facts that can be adjudicated, and it

21     has to be a small number of common predicate facts.  If we

22     can't do that, it will take a very long time, and that's not

23     our concept.  Our concept is to pick out what counts and put it

24     before Your Honor, what counts here.  What counts here is the

25     accuracy of our records in convincing you that there was a

1   that case.  That was a big part of the case.

2         MR. BERNICK:  That is not presented here.  The

3   statute of limitations is actually very straightforward.  It's

4   designed to be a mechanistic issue.  Once the facility is done,

5   when did the claim arise, period, absolutely period, end of

6   statement.

7         THE COURT:  So how long do you envision this whole

8   litigation process to take?

9         MR. BERNICK:  I think the first wave, that is, the

10   wave that deals with facial defects, the absence of boilers --

11   we focused on two basic defenses, Your Honor.  I had this done

12   up for today for this purpose.  These are the issues that we

13   think ought to be focused on, and we will furnish this to the

14   Court.  The facially defective claims --

15         THE COURT:  What do you mean by that?

16         MR. BERNICK:  Just what it says, they failed to

17   comply with Your Honor's instructions.

18         THE COURT:  I'm suppose to say, "Get out of here"?

19         MR. BERNICK:  Absolutely.  If people fail to follow

20   the Court's instructions on what should be on the claim form,

21   their claims are not valid claims.  Does that mean there are no

22   circumstances under which they can come back and ask for leave

23   to amend?

24         THE COURT:  So we litigate all of the issues of

25   whether they get to change the claim form, because if you are

1    is reasonable.

2            MR. BERNICK:   There are two huge restrictions that

3    absolutely foreclose those.   It would be clearly erroneous.

4    Restriction No. 1, the Fifth Circuit's decision in the Cimino

5    case, you can't extrapolate and, therefore, deprive a litigant

6    of a right to have an individual claim litigated and decided

7    and their business is --

8            THE COURT:   I think you want to totally undo the

9    bankruptcy process, and I just don't agree with your

10   interpretation of how that works, that you can't have an

11   estimation process that considers past history of how claims

12   were settled, to make an estimation that you have to have an

13   individualized determination of every single claim.

14           MR. BERNICK:   You have to have an individualized

15   determination.   Even when you extrapolate, all you are doing is

16   considering only a certain aspect of the claim, is what it got

17   settled for.   You are still using all the individual data.   You

18   take a lot of individual data and are analyzing it

19   statistically and making a projection.   You can go ahead and do

20   that, but it can't decide liability.   When liability is

21   disputed, you can't use estimation or extrapolation to resolve

22   liability.

23           THE COURT:   I'm just saying that it could determine

24   the potential size of the universe for the purposes of voting.

25   I think --

1          THE COURT:  Stop right there.  Isn't there a

2    limitation on the -- you said that you would estimate those

3    values to determine the distributions to creditors of certain

4    classes?

5          MR. PATTON:  Yes.

6          THE COURT:  Isn't there some limitation on the

7    bankruptcy court doing that?

8          MR. PATTON:  All it does is it establishes what's

9    available to that class, not to what each individual claimant

10   gets.

11         THE COURT:  Is there some authority on this?  I'm

12   perplexed by what Mr. Bernick is telling me and what you're

13   telling me and what I understood the way the bankruptcy process

14   works -- and not that I don't trust all of you intensely, but I

15   would really like to see some briefs on the issue of what is

16   estimation, what purposes does it serve, who can do it, and

17   what do you have at the end of the day from a bankruptcy law

18   authority on this, because he's telling me this can't be done

19   and you are telling me it is done all the time.  Somebody is

20   right and somebody is wrong.

21         MR. PATTON:  I would be delighted to.

22   Mr. Inselbuch's suggestion we bring before Your Honor a motion

23   to withdraw the reference, the question of terminating

24   exclusivity, and a request for estimation is perhaps a perfect

25   vehicle to address that.

1  how much the debtor is liable for by extrapolating from prior

2  settlements" -- and if I had time I would take you back through

3  what Mr. Inselbuch showed you and show you how it's disavowed

4  by his own witnesses as a basis for actually resolving claims.

5  But if you are going to use that prior settlement history in

6  place of a determination of our liability, then we would most

7  definitely have problems, and the reason we have problems is

8  that it is flatly contradicted by the rules --

9         THE COURT:  That is what I'm telling you to brief.

10        MR. BERNICK:  Rule 9017 --

11        THE COURT:  What he explained to me the way

12  estimation in bankruptcy works is more akin to what I had

13  understood before I started listening to you today, and it

14  wasn't based on anything he told me.  It was based on my own

15  reading of case studies and cases and that sort of thing, so

16  I'm not basing it on what I have been told by the asbestos

17  claimants.  I'm basing it on what I read.  I don't want you

18  just throwing one rule at me out of context.  I want to see a

19  brief that gives me case law that substantiates your

20  interpretation of the way the bankruptcy process works.

21        MR. BERNICK:  Sure.

22        THE COURT:  Two weeks in response to their brief.  If

23  you have any modifications to your proposal at that time, I'll

24  be happy to listen to it.  If you have any hybrid proposals or

25  anything that might be a little more manageable than what is

1    currently proposed, I'll be willing to listen to that, too.

2           MR. BERNICK:  Okay.

3           THE COURT:  Thank you.

4           MR. BERNICK:  Thank you.

5           THE DEPUTY CLERK:  All rise.

6           (WHEREUPON, the Court was in recess.)

7                        *  *  *

8                      CERTIFICATE

9           I, Toni Doyle Tusa, CCR, Official Court Reporter,

10   United States District Court, Eastern District of Louisiana, do

11   hereby certify that the foregoing is a true and correct

12   transcript, to the best of my ability and understanding, from

13   the record of the proceedings in the above-entitled and

14   numbered matter.

15

16

17                        _Toni Doyle Tusa_
                         Toni Doyle Tusa, CCR
18                       Official Court Reporter

19

20

21

22

23   

24

25