# EXHIBIT 6

{D0007918:1 }

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **IN RE:** | **Chapter 11** |
| **OWENS CORNING, et al., Debtors.** | **Case No.: 00-3837 to 3854 (JKF)** **(Jointly Administered)** |
| | **The Honorable John P. Fullam Has Withdrawn The Reference With Respect To This Matter [See Docket. No. 12520]** |
| | **Related to D.I. No. 12850** |

**BRIEF IN SUPPORT OF MOTION OF CSFB, AS AGENT, TO ESTABLISH PROCEDURES TO OBTAIN A SAMPLE OF MEDICAL RECORDS, INCLUDING X-RAYS, FROM ASBESTOS PERSONAL INJURY CLAIMANTS ASSERTING NONMALIGNANT CLAIMS AGAINST THE DEBTORS <u>AND TO MODIFY THE COURT'S AUGUST 19, 2004 SCHEDULING ORDER</u>**

LANDIS RATH & COBB LLP
Richard S. Cobb (I.D. No. 3157)
Rebecca L. Butcher (I.D. No. 3816)
919 Market Street, Suite 600
Wilmington, DE 19810
-and-
WEIL, GOTSHAL & MANGES LLP
Martin J. Bienenstock
Richard A. Rothman
767 Fifth Avenue
New York, NY 10153
-and-
Ralph I. Miller
100 Crescent Court, Suite 1300
Dallas, TX 75201-6950
-and-
David A. Hickerson
Peter M. Friedman
1501 K Street, N.W., Suite 100
Washington, D.C. 20005
-and-

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
919 Third Avenue
New York, New York 10022

ATTORNEYS FOR CREDIT SUISSE FIRST BOSTON, AS AGENT FOR THE BANK GROUP

Dated: October 4, 2004

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ..... 1

II. STATEMENT OF FACTS ..... 8

1. The Debtors Delayed Estimation Proceedings and Concealed Their Internal Valuation Reports Until Now ..... 8
2. The Vasquez and Mayer Reports ..... 10
3. The Friedman Report ..... 12
4. The Debtors' Concealed the Vasquez Report, the Mayer Report and the Friedman Report in Their Disclosure Statement ..... 17
5. The Johns Hopkins Study ..... 18
6. History Of Asbestos Litigation Relevant To This Motion ..... 20
7. The Debtors Are Aware that Owens Corning's Own Settlement History is Rife With Fraudulent Claims ..... 26
8. The Plan Proponents' Estimation Method Improperly Relies on the Debtors' Past Claims Payment History to Estimate Non-Malignant Claims ..... 27

III. ARGUMENT ..... 29

A. THE COURT SHOULD ESTABLISH PROCEDURES TO OBTAIN A RANDOM SAMPLE OF MEDICAL RECORDS, INCLUDING X-RAYS, SUFFICIENT TO CONDUCT A STUDY OF ASBESTOS PERSONAL INJURY CLAIMANTS FOR PURPOSES OF THIS ESTIMATION PROCEEDING ..... 29

B. THE COURT SHOULD MODIFY ITS AUGUST 19 ORDER ..... 34

IV. CONCLUSION ..... 36

# TABLE OF AUTHORITIES

Page

## CASES

*Allison v. McGhan Medical Corp.*, 184 F.3d 1311 (11th Cir. 1999) ....................33

*In re Asbestos Prod. Liab. Litig.* (No. VI), MDL 875, Admin. Order No. 8 (E.D. Pa. Jan. 14, 2002) ....................22

*In re Baldwin-United Corp.*, 55 B.R. 885 (Bankr. S.D. Ohio 1985) ....................7

*In re Certain Asbestos Cases,* 112 F.R.D. 427 (N.D.Tex. 1986) ....................33

*In re Dow Corning Corp.*, 211 B.R. 545, 596-598 (Bankr. E.D. Mich 1997) ....................7

*In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702 (Bankr. S.D.N.Y. 1991) ....................33

*In re Enron Corp.*, 281 B.R. 836 (Bankr. S.D.N.Y. 2002) ....................33

*Hall v. Baxter Healthcare Corp.*, 947 F. Supp. 1387 (9th Cir. 2000) ....................33

*In re Joint E. & S. Districts Asbestos Litigation*, 982 F.2d 721 (2d Cir. 1992) ....................33

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) ....................7

*Pepper v. Litton*, 308 U.S. 295 (1939) ....................7, 32

*In re Valley Forge Plaza Associate*, 109 B.R. 669 (Bankr. E.D.Pa. 1990) ....................32

## STATUTES AND RULES

*11 U.S.C. § 524(g)* ....................29

*Health Insurance Portability and Accountability Act of 1996 (HIPAA)* 42 U.S.C. §§1320d-1329d-8 ....................30

*Fed. R. Civ. P. 26* ....................32

*Fed. R. Evid. 706* ....................33

## LEGISLATIVE HISTORY AND HEARINGS

*S. Rep. No. 108-118 at 79, 84 (2003)* ....................21

## TABLE OF AUTHORITIES
## (continued)

**Page**

*Asbestos Litigation Crisis: Hearing on S. Hrg. 108-141 Before the Senate Comm. on the Judiciary.* 108th Cong. 96 (2003) ........................................25

### TREATISES

6-26 MOORE'S FEDERAL PRACTICE CIVIL § 26.06 ........................................32

### SECONDARY AUTHORITY

American Bar Ass'n Commission on Asbestos Litig. (Feb. 2003) ........................................20-21

Bell, Griffin B., *Asbestos Litigation and Judicial Leadership: The Courts' Duty to Help Solve the Asbestos Litigation Crisis*, NLCPI, Vol. 6 (June 2002)........................................25

Bell, Griffin B., *Asbestos Litigation & Tort Law: Trends, Ethics & Solutions: Asbestos & the Sleeping Constitution,* 31 Pepp. L. Rev. 1 (2003)........................................21

Biggs, Jennifer et al., *Overview of Asbestos Issues and Trends* 3 (Dec. 2001) (http://www.actuary.org/mono.htm) ........................................21

Brehm, Alison J., David N. Copas, Jr., and Colleen Kotyk Vossler, *To Be, or Not to Be: The Undiscovered Country of Claims Estimation in Bankruptcy*, 8 J. Bankr. L. & Prac. 197, 255 (1999)........................................32

Carroll, Stephen J., et al., Rand Institute for Civil Justice, *Asbestos Litigation Costs and Compensation: An Interim Report* 40 (2002) ........................................21

Curran, Eddie, *Diagnosing for Dollars*, Mobile Register, Apr. 4, 2004........................................24

Egilman, David, *Asbestos Screenings*, 42 Am. J. Indus. Med. 163 (2002) ........................................24

Gitlin, Joseph N., M.D., et al., *Comparison of "B" Readers Interpretations of Chest Radiographs For Asbestos Related Changes*, 11 J. Acad. Radiol. 843 n.8 (2004)........................................18

Janower, Murray L. and Berlin, Leonard, *"B" Readers' Radiographic Interpretations in Asbestos Litigation: Is Something Rotten in the Courtroom ?*, 11 J. Acad. *Radiol. 841 n.8 (2004)* ........................................19, 20

Kazan, Steven, Testimony before the U. S. Sen. Comm. on the Judiciary (Mar. 2, 2003) (avail.at:http://judiciary.senate.gov/testimony.cfm?id=617&wit_id=1678) ..............22

Kim, Quenna Sook, *Asbestos Trust Says Assets are Reduced as the Medically Unimpaired File Claims*, Wall St. J., Dec. 14, 2001, at B6........................................22

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Reger, R.B. et al., *Cases of Alleged Asbestos-Related Disease: A Radiologic Re-Evaluation*, 32 J. Occup. Med. 1088 n.11 (1990)....................18

Rubin, Hon. Carl B. and Laura Ringenbach, *The Use of Court Experts in Asbestos Litigation*, 137 F.R.D. 35, (1997)....................33

Setter, David et al., *Why We Have to Defend Against Screened Cases -- Now is the Time For A Change,* 18-20 Mealey's Litig. Rep.: Asbestos 23 at 2 (2003)....................15, 24

## I. PRELIMINARY STATEMENT

CSFB, as Agent for the prepetition institution lenders to Owens Corning and certain of its affiliates (the "Banks") files this brief in support of its motion (the "Motion") seeking an expedited procedure to obtain a random sampling of already-existing Medical Records (as hereinafter defined), including X-rays, of asbestos personal injury Claimants who have asserted nonmalignant claims against Owens Corning.[1] As the Court knows, Owens Corning and certain of its subsidiaries as debtors and debtors-in-possession (collectively the "Debtors") have joined forces with the Official Committee of Asbestos Claimants (the "ACC") and the Legal Representative for Future Claimants (the "Futures Representative," and together with the Debtors and ACC, the "Plan Proponents") to propose a nonconsensual chapter 11 plan of reorganization (the "Plan") that is conditioned upon a finding that the Debtors' liability for asbestos-related claims be estimated at no less than $16 billion – including approximately $10.7 billion for Owens Corning alone. The Plan Proponents contend that the quantification of the Debtors' asbestos personal injury liability may be arrived at by extrapolating from the Debtors' prepetition claims settlement history.

In its August 19, 2004 Order, the Court indicated that it had preliminarily determined that "the data now available -- the Debtors' claims history, the experience in other cases, etc. -- viewed in light of the expert testimony at the scheduled hearing, should probably suffice for claims estimation purposes." (Order Upon Claims Estimation Issues, dated Aug. 19, 2004.) As the Banks previously have argued to the Court, however, the Debtors' settlement history cannot be relied upon for a number of reasons, but especially because so many individual claims lacked

---

[1] In this context, references to Owens Corning refer only to the parent company of all the Debtors, the only company which has asbestos liability other than Fibreboard.

as a basis for estimation, it must be cleansed of the improprieties that permeated it.[19] That is what this Motion seeks to do by proposing precisely the kind of statistically significant randomly generated sample urged by the Debtors' own expert, Dr. Friedman, who stated that the "single greatest factor which may determine the future number of impaired nonmalignant claims rests largely on the willingness of all parties to provide for ongoing review of the claims and underlying data including X-rays and PFTs." Friedman Report at 35.

To implement Dr. Friedman's suggestions, CSFB respectfully requests the Court order that:

1. Within three business days of the decision of this motion, NERA Economic Consulting ("NERA" (the Banks' retained consultant)) generate a random sample of Owens Corning claimants from Owens Corning's claims database (the "Random Sample"). CSFB will serve the random sample on all parties. The Random Sample will be large enough to generate the Medical Records (including X-rays) of 1000 current claimants even assuming that not all claimants respond or provide X-rays. Any party objecting to the Random Sample shall file and serve such objections within three (3) business days of the service of the Random Sample.

2. CSFB will establish a depository for the X-rays and other Medical Records. The depository will maintain the chain of custody, physical condition and confidentiality of the X-rays and other Medical Records consistent with the Health Insurance Portability and Accountability Act of 1996 (HIPAA), 42 U.S.C. § § 1320d-1329d-8.

---

[19] This study will have two additional benefits: First, showing how many claims filed against Owens Corning lack a medical basis puts in context the Plan Proponents' argument that anyone who submitted a prepetition claim should be entitled to vote on the Debtors plan of reorganization. Second, the study will be an important aid in devising appropriately rigorous procedures to govern any trust established pursuant to 11 U.S.C. § 524(g).