# EXHIBIT 16

{D0007918:1 }

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>USG CORPORATION, a Delaware Corporation, et al.,<br><br>  Debtors. | Chapter 11<br>Case No. 01-2094 (RJN)<br>Jointly Administered<br>Hearing Date: Not Yet Set |

## AFFIDAVIT OF MARK A. PETERSON, Ph.D.

A.  **Professional Background and Experience**

1.  I have a Ph.D. from UCLA in psychology, a JD from Harvard and an undergraduate degree from the University of Minnesota. I have been a visiting professor at UCLA Law School, where I taught courses in Mass Torts and in Law and Social Sciences, and have also taught courses on law and policy research at the RAND Graduate School and UCLA. My vita is attached as Exhibit 1.

2.  I have worked at the RAND Corporation since 1976 as a member of the research staff, a consultant and an independent contractor conducting empirical and policy research on matters of civil and criminal justice. I have been the directing, principal researcher on many studies including studies of mass tort litigation and of workplace injuries and workers compensation. I have many publications on these studies, including monographs on mass tort litigation.

3.  Since 1983 I have been president of Legal Analysis Systems, Inc. (LAS), a consulting company that conducts empirical and statistical analyses of mass tort claims for courts and litigants. LAS's work has involved various types of mass tort cases, including breast implant

litigation, Dalkon Shield inter-uterine devices and tobacco, but the substantial majority of its work has been in many cases involving asbestos litigation.

4. I have participated in asbestos litigation since the early 1980s working as an expert and special master for courts, insurance companies, asbestos settlement trusts, defendants and asbestos claimants creditors committees in bankruptcy. I was the Special Advisor to U.S. District Court Judge Jack B. Weinstein and Bankruptcy Court Judge Burton Lifland in the *Findley v. Falise* class action litigation to restructure the Manville Trust. I have been an expert for the court on matters of asbestos litigation for U.S. District Courts in Texas and Ohio. I am an expert for the following asbestos trusts: Manville, UNR, Eagle-Picher, National Gypsum, Keene, H.K. Porter, Fibreboard, Fuller-Austin and for the Futures Representative for the Celotex Trust. I currently serve as an expert for asbestos claimants committees in 12 pending bankruptcies, and I previously have served as an expert for asbestos claimants committees in the following completed bankruptcies: Eagle-Picher, National Gypsum, Keene, H.K. Porter, Celotex, Hillsborough Holding Company, Raymark, Raytech, Wallace & Gale and Fuller-Austin. I have testified as an expert in all of these cases except H.K. Porter and Fuller-Austin where my testimony was entered by affidavit. I have been an expert for E.J. Bartells and other asbestos defendants, as well as a consultant to various businesses on matters of asbestos liabilities. I have been an expert or consultant to the following insurance companies on matters of estimation of asbestos claims and liabilities: Continental (CNA), Chubb, Zurich International (Bermuda), and Price Waterhouse/Coopers involving matters of insolvent London insurers. I testified in the *Ahearn v. Fibreboard* class action as an expert for Continental and Chubb.

5. I am a trustee of the Fuller-Austin Settlement Trust, created in the bankruptcy of Fuller-Austin Insulation Company, an asbestos insulation contractor and distributor.

- 3 -

6. I was an expert on matters of estimation and collection of data about Dalkon Shield claims for U.S. District Court Judge Robert R. Merhige, Jr. in the bankruptcy of A.H. Robins Company.

Redacted

Redacted

E.  Geographic Dispersal of Favorable and Adverse Judgments

35.  To examine the contention that trial courts do not apply tort law even-handedly as between asbestos claimants and defendants, I examined the outcomes of trials against W.R. Grace & Co. (I currently have no data available on trials involving USG.) Grace provided a

list of 80 "Asbestos Bodily Injury Cases with a Judgment Settlement" showing that plaintiffs received money in 26 of the 80 cases, or 32.5% of all judgments.

36. These 26 judgments for plaintiffs occurred in the seven states listed in Table 4 below. Eighteen of these judgments occurred in three states — Texas, Pennsylvania and Florida. However, in none of those states did plaintiffs win a majority of the cases tried against Grace. Rather, across the three states, plaintiffs won judgments in only 39% of the cases. These results provide no evidence that the trial process in these three states should be regarded as biased against Grace.

37. The only states in which Grace failed to win a single lawsuit were three northern prairie states — Montana, Minnesota and South Dakota. In these three states, Grace was totally unsuccessful at trial, losing all six judgments. Despite Grace's lack of success, none of these prairie states is reputed to be especially unfair to defendants in tort litigation.

| Table 4 States Where Plaintiffs Won Verdicts Against W.R. Grace & Co. | | | |
|---|---|---|---|
| State | Number Plaintiffs Verdicts | Number Defense Verdicts | % Won By Plaintiffs |
| Texas | 11 | 11% | 50% |
| Pennsylvania | 4 | 11% | 27% |
| Florida | 6 | 33% | 67% |
| Montana | 3 | 0% | 100% |
| Missouri | 2 | 1% | 67% |
| Minnesota | 2 | 0% | 100% |
| South Dakota | 1 | 0% | 100% |

Redacted

Redacted

G. **Historical Pattern of Asbestos Claims**

47. I disagree with the Debtors' presentation concerning the growth pattern in filings of asbestos bodily injury claims. Throughout the 1990s into this decade, for every defendant, claims filings have increased greatly for both cancer and nonmalignant claims. Cancer claims have been increasing for two reasons. First, the primary epidemiological study of the incidence of asbestos-related cancers by Dr. William Nicholson (with Drs. Selikoff and Parkel of Mt. Sinai Hospital) forecast that the incidence of such cancers would increase during the 1990s, particularly for construction workers who dominate claim filings against USG and Grace. Nicholson's forecasts have been confirmed by the SEER cancer registry maintained by the National Cancer Institute. Second, the propensities to sue for cancer increased during the 1990s.

I, Mark Peterson, do solemnly swear, under penalty of perjury, that the contents of this Affidavit are known to me and that the matters and things therein set forth are true.

_____
Mark A. Peterson
Date: July 19, 2002