# EXHIBIT "A"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- )
In re                                                            ) Chapter 11
                                                                 )
W. R. GRACE & CO., et al.,                                       ) Case No. 01-01139 (JJF)
                                                                 ) (Jointly Administered)
                                                                 )
           Debtors.                                              )
                                                                 )
---------------------------------------------------------------- )

### AFFIDAVIT OF GREGORY S. BOYER IN SUPPORT OF THE OFFICIAL COMMITTEE OF PROPERTY DAMAGE CLAIMANTS' RESPONSE TO THE DEBTORS' REPORT ON BUSINESS EFFECTS OF TERMINATING EXCLUSIVITY

STATE OF NEW YORK     )
                      :   ss.:
COUNTY OF NEW YORK    )

Gregory S. Boyer, being duly sworn, deposes and says:

1. I am a managing director of Conway, Del Genio, Gries & Co., LLC ("CDG"), which maintains an office at 645 Fifth Avenue, New York, New York, telephone: (212) 813-1300 fax: (212) 813-0580.

2. This affidavit is being submitted in support of the Official Committee of Property Damage Claimants' (the "PD Committee") Response (the "Response") to the Debtors' Report on Business Effects of Terminating Exclusivity (the "Report").

3. Except as otherwise noted, I have personal knowledge of the facts stated herein and, if called as a witness, could competently testify thereto.

4. Pursuant to the Court's Order, CDG was retained as the financial advisor to the PD Committee *nunc pro tunc* to April 27, 2001, and continues to serve the PD Committee in that capacity.

5. CDG is a financial advisory firm, providing services focused on the

restructuring of under-performing companies, mergers and acquisitions, and valuation services. CDG is made up of over thirty professionals possessing experience in a wide range of industries. Moreover, CDG members have assisted and advised numerous chapter 11 debtors and creditors in the development of plans of reorganization and are experienced in analyzing and testifying regarding debt restructuring and related chapter 11 issues.

6. In addition to the general expertise of CDG, I have specific expertise in the areas of corporate restructurings that predates my involvement with CDG. For example, I was a Manager with Ernst & Young LLP's Restructuring and Reorganization Group and a Vice President with Gordian Group, L.P., an investment banking boutique focusing on restructurings. Moreover, I have a B.S. in Accounting from The Ohio State University, an M.B.A from Columbia Graduate School of Business and I am a Certified Public Accountant. Accordingly, I am competent and fully qualified to render an opinion regarding the effect of the termination of exclusivity on the Debtors' businesses.

7. As of May 31, 2005, the Debtors held $399.9 million in cash and cash equivalents (per May 31, 2005 Monthly Operating Report), which calls into question the necessity of even continuing the DIP Facility on its current terms and conditions. Over the past twelve months, with the exception of certain letters of credit, the Debtors have had no outstanding borrowings under the DIP Facility at the end of any month.

8. The Debtors have frequently represented that Davison's products, in many instances, are unique products that would be difficult for customers to source from other suppliers and, in other instances, are designed specifically to meet the particular customer's needs and could not be sourced through the Debtors' competitors without

significant lead time and substantial cost.

9. In reviewing the performance of the Debtors, it is informative to review how the Debtors' common stock has traded during the course of the bankruptcy proceeding. From April 2, 2001 through April 30, 2003, the Debtors' stock price fluctuated between $0.99 per share and $3.75 per share. During this period, fluctuations in the Debtors' stock price appears to have been impacted by various factors, including general market dynamics, speculation on settlement trends in asbestos companies, events relating to the Sealed Air fraudulent conveyance action and disclosure on various environmental issues related to the Debtors.

10. From May 1, 2003 through June 30, 2005, the Debtors had significant fluctuations in their stock price ranging from $2.34 to $14.95. Fluctuations in the stock price during this period appear to have been impacted by (a) speculation and market notification of events relating to plan of reorganization discussions and negotiations; (b) events relating to potential legislative measures that would affect asbestos litigation; and (c) the federal indictment issued against Grace and certain current and former officers of Grace.

11. There appears to have been limited impact upon the Debtors' stock price as a result of general chapter 11 events, but, rather, the Debtors' stock appears to have been significantly impacted by (a) plan of reorganization discussions; (b) market speculation on such discussions and trends in Federal legislation related to a proposed national asbestos trust fund; and (c) the issues surrounding the federal indictment. Such movements likely reflect the market's interpretation of the impact such events would have on the potential recoveries to the Debtors' equity holders under a plan of reorganization.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 12th day of July, 2005.

_____
Gregory S. Boyer

Sworn to and subscribed before me
this /2th day of July, 2005

_____
Notary Public
State of New York

JOHN W. WEISS
Notary Public, State of New York
No. 02WE6113201
Qualified in New York County
Commission Expires July 26, 2006