# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| KIRBYVILLE INDEPENDENT SCHOOL | § | |
| DISTRICT, Individually, and on Behalf of | § | |
| All Political Subdivisions of the State | § | CIVIL ACTION NO. |
| of Texas, | § | 1:94CV412 |
|      Plaintiffs | § | |
| | § | |
| VS. | § | JUDGE FISHER |
| | § | |
| ASBESTOSPRAY CORPORATION, | § | |
| W. R. GRACE & CO.-CONN., and | § | JURY DEMANDED |
| UNITED STATES GYPSUM COMPANY, | § | |
|      Defendants | § | |

## DEFENDANT W.R. GRACE & CO.-CONN.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Defendant W. R. Grace & Co.-Conn. ("Grace") opposes Plaintiffs' motion for class

certification as follows:

### INTRODUCTION

Plaintiff Kirbyville Independent School District commenced this action on July 6, 1994,

as a single-plaintiff case against a single defendant, Asbestospray Corporation. On August 8,

1994, Kirbyville amended its complaint to add United States Gypsum Company ("USG") and

Grace as defendants and to assert claims on behalf of a purported class consisting of "all Public

Building Owners and Political Subdivisions of the State of Texas . . . that own or operate

buildings that contain or contained asbestos-containing surface treatment material." On August

18, 1994 – before Grace and USG had appeared in the case – The City of Liberty, The County

of Liberty and Tyler Independent School District were allowed to intervene as plaintiffs to assert

identical claims on behalf of the same purported class.

On November 30, 1994, Kirbyville ISD, Tyler ISD, The City of Liberty, The County of Liberty and The County of Hardin,[1] together with approximately 82 individually named "proposed class members," filed a motion for class certification. The motion seeks certification of a class consisting of "cities, counties, community colleges, hospital districts, ports, public school districts that opted out of the proceeding styled *In re: School Asbestos Litigation*, Master File No. 83-0268 (E.D. Pa.), and universities . . . that own, operate or use building facilities which contain or contained asbestos-containing acoustical, decorative, texture, or fireproofing surface treatment materials manufactured by Defendants." The proposed order submitted with the motion seeks certification of a class consisting of all "Political Subdivisions of the State of Texas."

Since the motion for class certification was filed, Kirbyville Independent School District - - the only plaintiff in this case -- has apparently decided to dismiss its claims and to abandon the purported class action that it commenced. The City and County of Liberty and Tyler ISD have also decided to dismiss any claims they may have asserted against Asbestospray Corporation. As a result, both the original plaintiff and the original defendant are soon to be dismissed from the case.

Class certification is inappropriate in these circumstances. First, the court lacks subject-matter jurisdiction because there was no pending case or controversy against Grace when the only parties who have any claims against Grace were allowed to intervene in the case. Second, given the scope of the class proposed by plaintiff and intervenors and the presence of the State

---

[1]The County of Hardin is not named as a plaintiff or a class representative in the First Amended Class Action Complaint or the Original Class Action Complaint in Intervention. Nevertheless, it is named as a "class representative" in the motion for class certification.

2

of Texas as a named party, the court lacks subject-matter jurisdiction over this action. Third, plaintiff and intervenors have not, and cannot, demonstrate that the claims of each member of the proposed class exceed the $50,000 amount-in-controversy requirement. Fourth, the class proposed by plaintiff and intervenors is duplicative, to a large extent, of a class that has already been certified in another federal district court. Fifth, a major component of the class proposed by plaintiff and intervenors consists of entities who have already opted out of yet a third class action, and it is inappropriate to certify a class consisting of opt-outs from another class. Sixth, Grace has to date been denied relevant discovery, making any determination as to class certification premature at this point. Finally, plaintiff and intervenors have not demonstrated, nor could they, the existence of the prerequisites to class certification under Rule 23 of the Federal Rules of Civil Procedure.

## THE COURT LACKS SUBJECT-MATTER JURISDICTION: THE ONLY PARTIES WITH CLAIMS AGAINST GRACE WERE ALLOWED TO INTERVENE WHEN THERE WAS NO PENDING CASE OR CONTROVERSY AGAINST GRACE

This case is before the court in an unusual procedural context, to say the least. As discussed above, the original plaintiff and the original defendant in what started out as a simple, individual action are soon to be dismissed and the court will be left with a purported class action on behalf of a diverse and unwieldy conglomeration of various public entities. While one can only speculate as to the motives for the various procedural machinations that have occurred, the end result is that the court lacks subject-matter jurisdiction over this case.

None of the buildings owned or operated by Kirbyville ISD, the original plaintiff, has asbestos-containing materials manufactured by either Grace or USG. It is thus not surprising that Kirbyville ISD did not assert any claims against Grace or USG in its original complaint,

3

which was filed on July 6, 1994. It is surprising, however, that Kirbyville ISD amended its complaint on August 8, 1994, to assert claims on behalf of a purported class and added as defendants Grace and USG, two entities against whom Kirbyville ISD has no claim. If the case had remained in that posture, class certification would certainly have been denied because "a nominal plaintiff may not maintain an action on behalf of a class against a specific defendant if the plaintiff is unable to assert an individual cause of action against that defendant." *Haas v. Pittsburgh National Bank*, 526 F.2d 1083, 1096 n.18 (3d Cir. 1975). Indeed, if a class representative does not itself have a claim against a particular defendant, there is no case or controversy as to that defendant sufficient to invoke Article III jurisdiction; certification of a class would be not only improper in those circumstances, but also unconstitutional. *Blum v. Yaretsky*, 457 U.S. 991, 1001 & n.13 (1982).

The City and County of Liberty and Tyler ISD do claim to have asbestos-containing materials manufactured by Grace or USG in at least some of their buildings. However, when they filed their motion to intervene on August 18, 1994, this case was a purported class action over which the court lacked Article III jurisdiction because the only named class representative had no claims against Grace or USG. The intervention by parties who do have claims against Grace and USG cannot have cured retroactively this fundamental defect because it is axiomatic that jurisdiction must exist when the case is filed and cannot be supplied, after the fact, by post-filing events. *See, e.g., McClune v. Shamah*, 593 F.2d 482, 486 (3d Cir. 1979).

If intervenors had waited to file their motion for leave to intervene until Grace had appeared in the case, Grace could have demonstrated that there was no jurisdiction over the

4

purported class claims and that leave to intervene was thus inappropriate.[2]   Intervenors,
however, filed their motion for leave before Grace and USG had appeared in the case and did
not advise the court of the jurisdictional defect in the proceedings, thereby depriving the court
of an adequate record on which to assess whether to allow intervention.

It now appears that Kirbyville ISD filed this action solely to provide the procedural
vehicle into which the City and County of Liberty and Tyler ISD could intervene. Now that the
intervention has been accomplished, Kirbyville ISD has announced its intention to dismiss all
of its claims in this case and to abandon the class action that it started. The intervenors,
moreover, are apparently abandoning their claims against Asbestospray, so that both the original
plaintiff and the original defendant will soon be out of this case altogether. (*See* Exh. A hereto.)

These procedural maneuverings are particularly suspect when considered in light of what
has been revealed so far in discovery in this case. Counsel for plaintiff and intervenors
commenced work on this proposed class action as early as April 1993, over one year before the
case was actually filed. At that point, counsel contacted John Krog, who has been designated
as an expert in this case, and retained him to begin the process of inspecting, measuring and
taking samples from buildings owned by all members of the proposed class.[3]  The City Council
of the City of Liberty, moreover, authorized the City's participation in "the Class Action on

---

[2]The City and County of Liberty and Tyler ISD would of course have been free at that point
to institute a separate action against Grace and USG. However, all of the procedures applicable
to the commencement of a new action would then have been applicable — procedures that, for
whatever reason, intervenors have improperly tried to circumvent.

[3]John Krog testified to that effect at his deposition on January 26, 1995. That deposition
has not yet been transcribed, but the relevant pages will be filed with the court as soon as they
are available.

5

Behalf of Texas Political Subdivisions" on March 8, 1994, four months before this suit was filed
and five months before the City intervened. *(See Exh. B hereto.)* Commissioners' Court of the
County of Liberty approved a motion "to join in the [asbestos] litigation with the Law Offices
of Martin Dies" as early as March 14, 1994, again several months before this case was filed.
*(See Exh. C hereto.)* In addition, product manufactured by Grace and USG had been identified
by intervenors' experts in buildings of Tyler ISD and the City and County of Liberty as early
as September 1993. *(See Exh. D hereto.)* Thus, when this case was filed on July 6, 1994, the
entities who now claim to be class representatives and their counsel already intended for this
case to be a class action against Grace and USG, with the City and County of Liberty and Tyler
ISD as class representatives. Why then was the case initially filed as an individual suit by a
single plaintiff against a single defendant, and why have both the original plaintiff and the
original defendant now been removed from the case?

Whatever the answer to these questions, it is clear that Kirbyville ISD's machinations
have allowed a manipulation of the normal procedures for the commencement and assignment
of cases and have resulted in the City and County of Liberty and Tyler ISD having been allowed
to intervene in a case over which the court lacked jurisdiction. Because the appearance of the
City and County of Liberty and Tyler ISD cannot cure the jurisdictional defect that existed at
the point of intervention, no class can be certified, and the case should instead be dismissed for
lack of jurisdiction.

6

## THE COURT LACKS SUBJECT-MATTER JURISDICTION: THIS IS NOT AN ACTION BETWEEN CITIZENS OF DIFFERENT STATES

There is another, equally fatal, jurisdictional defect in this case. Plaintiff and intervenors base subject-matter jurisdiction solely on diversity of citizenship. Diversity, of course, exists only if the action is between "citizens of different States." 28 U.S.C. § 1332(a)(1). A state obviously is not a citizen of a state. Diversity jurisdiction, therefore, does not exist if one of the parties is a state or an entity that is, in effect, the alter ego of the state. *See, e.g., Moor v. County of Almeda*, 411 U.S. 693, 717 (1973); *State Highway Comm'n of Wyo. v. Utah Constr. Co.*, 278 U.S. 194, 199 (1928).

In apparent recognition of these fundamental principles of jurisdiction, plaintiff and intervenors have used the term "Political Subdivisions of the State of Texas" to describe the members of the proposed class. A political subdivision of a state is not the alter ego of the state and can therefore invoke diversity jurisdiction. *See, e.g., Moor*, 411 U.S. at 718. The problem, however, is that not all of the entities within the proposed class are in fact political subdivisions of the State of Texas. For example, both the First Amended Class Action Complaint and the Original Class Action Complaint in Intervention purport to include among the class members all "college districts, and state supported colleges and universities" of the State of Texas. As discussed below, these entities are not political subdivisions of the state, but are in effect the state itself.

Under Texas law, state-supported colleges and universities have no "existence independent of the State," and a suit by or against such a college or university is by definition a suit by or against the state itself. *Walsh v. University of Texas*, 169 S.W.2d 993 (Tex. Civ. App. --El Paso 1942, writ ref'd); *see also Martine v. Board of Regents, State Senior Colleges*

7

*of Texas*, 578 S.W.2d 465, 468-70 (Tex. Civ. App. -- Tyler 1979, no writ); *Texas Technological College v. Fry*, 278 S.W.2d 480, 481 (Tex. Civ. App. --Amarillo 1954, no writ). The test under federal law for determining whether an entity is the alter ego of the state for diversity purposes is essentially the same test used to determine whether the entity is entitled to sovereign immunity under the Eleventh Amendment. *See, e.g., University of Rhode Island v. A.W. Chesterton Co.*, 2 F.3d 1200, 1203 n.4 (1st Cir. 1993). State-supported colleges and universities in the State of Texas are entitled to Eleventh Amendment immunity,[4] and are thus treated as the state itself for purposes of determining the existence of diversity.

It is thus clear that federal jurisdiction does not exist if any of the claims in this case are being asserted by state-supported colleges and universities. Although no specific state-supported colleges and universities are named in the First Amended Class Action Complaint or the Original Class Action Complaint in Intervention, approximately 82 individually named entities made an appearance in this case by joining in the motion for class certification. Among them are approximately 31 state-supported colleges and universities, each of which is deemed to be the state itself for diversity purposes. (*See* Footnote 4, below.) These entities appeared as "proposed class members," and apparently disclaim that they are class representatives. However, the only mechanism that exists for a member of a proposed class to appear in a

---

[4]*See, e.g., Wilson v. UT Health Center*, 973 F.2d 1263, 1271 (5th Cir. 1992), *cert. denied*, 113 S.Ct. 1644 (1993); *Lewis v. Midwestern State University*, 837 F.2d 197, 198-99 (5th Cir.), *cert. denied*, 488 U.S. 849 (1988); *Gay Student Services v. Texas A&M University*, 737 F.2d 1317, 1333-34 (5th Cir. 1984), *cert. denied*, 471 U.S. 1001 (1985); *United Carolina Bank v. Board of Regents of Stephen F. Austin State University*, 665 F.2d 553, 557-59 (5th Cir. 1982); *Schweitzer v. University of Texas Heath Center at Tyler*, 688 F. Supp. 278, 280-81 (E.D. Tex. 1988); *Student Services for Lesbians/Gays & Friends v. Texas Tech University*, 635 F. Supp. 776 (N.D. Tex. 1986); *LaVerne v. University of Texas System*, 611 F. Supp. 66, 68 (S.D. Tex. 1985); *Hart v. University of Texas at Houston*, 474 F. Supp. 465 (S.D. Tex. 1979).

capacity other than that of a class representative is found in Rule 23(c)(2)(C) of the Federal Rules of Civil Procedure, which provides that members of the class may make "an appearance through counsel" *after certification and notice*. Because no class has yet been certified, the appearance of the state-supported colleges and universities in this case cannot have been made under the authority of Rule 23(c)(2)(C). Thus, the only basis on which the colleges and universities could have appeared in this case is as class representatives. When the state-supported colleges and universities named in the motion for class certification are properly treated as class representatives, it is clear that this court does not have subject-matter jurisdiction over this case.[5]

Even if the colleges and universities that have appeared in this case are not treated as class representatives for jurisdictional purposes, there is still a jurisdictional impediment to this purported class action. Normally, a court in a class action looks only to the citizenship of the class representatives in determining whether diversity exists. *See, e.g.*, 1 Moore's Federal Practice ¶ 0.74 [6.-10] (2d ed. 1985). In other words, a named class representative from Texas can bring a diversity-based class action against a defendant from New York, even though the proposed class includes citizens of New York. This case, however, presents a different

---

[5] Treating the colleges and universities named in the motion for class certification as class representatives would be particularly appropriate in the unique circumstances of this case. Although counsel for plaintiff and intervenors are proposing a class comprised, in part, of all state-supported colleges and universities, they were careful not to have any of their college or university clients join by name in the amended complaint or the complaint in intervention. However, absent at least one class representative who is a college or university, there is no entity in this case who could adequately represent the interests of the portion of the proposed class that comprises colleges and universities. This undoubtedly explains why several colleges and universities have now appeared in the case. Counsel should not be allowed to circumvent the limited jurisdiction of the federal courts through the artifice of having an essential party added to the case by joining a "motion" as opposed to a "complaint."

9

question: can a diversity-based class action be maintained on behalf of a subclass of entities who could *never* themselves sue in federal court based on diversity, regardless of the citizenship of the defendants?

Although Grace has not found any case law that directly answers this question, it is clearly improper to allow such a class action to proceed. The constitutional basis for diversity jurisdiction is Article III, Section 2, Clause 2 of the United States Constitution, which provides that "the judicial Power shall extend . . . to Controversies . . . between Citizens of different States." The statutes through which Congress has authorized the exercise of this judicial power have been construed to require *complete* diversity. *Strawbridge v. Curtiss*, 3 Cranch 267, 2 L.Ed. 435 (1806). Complete diversity, however, is not a constitutional requirement; rather, it is based on judicial interpretations of the statutes enacted by Congress to implement the judicial power authorized by Article III. *See, e.g., Ed & Fred, Inc. v. Puritan Marine Ins. Underwriters Corp.*, 506 F.2d 757, 758 (5th Cir. 1975). The general question of whether diversity in a class action is to be judged by the citizenship of just the named class representatives or also by the citizenship of the absent class members thus requires only an analysis of this legislatively imposed rule of complete diversity, but is not of constitutional significance.

By contrast, the rule that a state cannot invoke diversity jurisdiction is constitutionally mandated. The constitutional authority for the exercise of diversity jurisdiction requires that the action be between "Citizens of different States." In this context, the judicial power of a district court, as granted by the Constitution, does not extend to an action between citizens of a state and the state itself. *See* 1 Moore's Federal Practice ¶ 0.74 [6.-11] (2d ed. 1985) ("a state is not a 'citizen' within the meaning of the *constitutional* and statutory grants of diversity jurisdiction")

10

(emphasis added). It may be possible, as a matter of statutory construction, to circumvent the complete-diversity requirement by ensuring that all named class representatives are diverse, even if some class members are not. It does not follow, however, that the constitutional limitation on diversity found in Article III, Section 2, Clause 2 of the Constitution can be circumvented by asserting class-action claims on behalf of a state without naming the state itself as a class representative. Simply put, the constitutional basis for diversity jurisdiction does not extend the judicial power of the United States courts to actions between citizens of a state and the state itself. The rule that a court should look only to the citizenship of the named class representatives is thus irrelevant when a state is a member of the proposed class. Because the constitutional grant of judicial power does not extend far enough, an action by a state cannot be adjudicated in a federal district court on diversity grounds, whether the state is a named class representative or is instead only a member of the proposed class.

Based on the foregoing, the court does not have jurisdiction to certify the class proposed by plaintiff and intervenors, whether state-supported colleges and universities are considered class representatives or merely members of the proposed class. As a result, this entire case must be dismissed for lack of subject-matter jurisdiction or, at a minimum, state-supported colleges and universities (and any other entities that do not have a legal existence separate and apart from the State of Texas) must be excluded from any class that is certified.

## THE COURT LACKS SUBJECT-MATTER JURISDICTION: PLAINTIFFS HAVE NOT SATISFIED THE AMOUNT-IN-CONTROVERSY REQUIREMENT

In class actions based on diversity of citizenship, each member of the proposed class must satisfy the $50,000 amount-in-controversy requirement. *See, e.g.*, *Zahn v. International Paper Co.*, 414 U.S. 291 (1973). In this case, plaintiff and intervenors allege that each of their claims

11

exceeds $50,000, but no allegation is made as to the amount claimed by the absent class members. The jurisdictional allegations of plaintiff and intervenors are thus insufficient to support the certification of the proposed class.

This is not a purely technical pleading defect. Based on the limited discovery conducted to date, there is substantial reason to believe that many of the proposed class members may ultimately be unable to establish that their claims exceed $50,000. Many of the proposed members of the class are small, rural cities and counties that are likely to own only a single building with asbestos-containing surface-treatment materials. For example, the County of Liberty, one of the named class representatives, owns only one building -- the Henley Building -- that is alleged to have asbestos-containing materials manufactured by the defendants in this case. The Henley Building is relatively small, and all of the allegedly asbestos-containing materials in the building have already been encapsulated at a total cost of $11,366. (See Exh. E hereto.) It is difficult to imagine how the County of Liberty (or the many other small counties and cities throughout Texas that are within the proposed class) can satisfy the amount-in-controversy requirement.[6]

---

[6]This problem cannot be cured by defining the class to include only those entities with damage claims in excess of $50,000. To be properly certified, a class must be capable of "concise and exact" definition. *Metcalf v. Edelman*, 64 F.R.D. 407, 409 (N.D. Ill. 1974). The definition must be such that it is "administratively feasible for the Court to determine whether a particular individual is a member." *Ladd v. Dairyland County Mut. Ins. Co.*, 96 F.R.D. 335, 338 (N.D.Tex. 1982) (citations omitted). If it would be impossible to determine whether an individual is a member of the proposed class without first adjudicating that individual's claim, the class definition is not sufficiently definite, and certification is inappropriate. *Winokur v. Bell Federal Savings & Loan Ass'n*, 58 F.R.D. 178, 181 (N.D. Ill. 1972); *George v. United Federal Savings & Loan Ass'n*, 63 F.R.D. 631, 635 n.1 (N.D. Ga. 1974).

## AS TO COLLEGES AND UNIVERSITIES, THIS ACTION IS DUPLICATIVE OF A PREVIOUSLY FILED SUIT; IT SHOULD BE DISMISSED OR ABATED UNDER THE "FIRST-FILED" RULE

As discussed above, a significant portion of the proposed class consists of public colleges and universities in the State of Texas. Assuming it is somehow determined that this court has subject-matter jurisdiction over the claims of such colleges and universities, they nevertheless cannot be included in any class certified in this case because they are already members of a certified class pending in another forum.

In 1992, the United States District Court for the District of South Carolina certified a class consisting of all "colleges and universities in the nation" with buildings containing friable asbestos. *Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. 628, 630 (D.S.C. 1992). The order of certification was affirmed on appeal in 1993. *Central Wesleyan v. W.R. Grace & Co.*, 6 F.3d 177 (4th Cir. 1993). Because the *Central Wesleyan* court has not yet issued notice, the members of the class have not yet been given the opportunity to opt out.

There can be no doubt that the colleges and universities that are proposed to be included in this case are already members of the *Central Wesleyan* class and will remain members of that class unless and until they exercise their right to opt out. *See* Rule 23(c)(2), Fed. R. Civ. P. As to colleges and universities, therefore, the *Central Wesleyan* case and this case are parallel federal proceedings involving the same subject matter. The Fifth Circuit has traditionally applied the "first-filed" rule to determine which court should proceed in such circumstances. *See, e.g., West Gulf Maritime Association v. ILA Deep Sea Local 24*, 751 F.2d 721, 730 (5th Cir. 1985). "In the absence of compelling circumstances the court initially seized of a

13

controversy should be the one to decide whether it will try the case." *Mann Manufacturing, Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971) (citations omitted).

There is no "compelling" reason why the first-filed rule should not apply simply because the parallel proceedings in this case are class actions. One of the purposes of the class-action procedure is to conserve scarce judicial resources, and "the extent and nature of any litigation concerning the controversy already commenced by or among members of the class" is one of the factors that must be considered under Rule 23. Other courts, moreover, have denied class certification because of the pendency of a previously filed class action raising similar issues. *See, e.g., Barcia v. Sitkin*, 89 F.R.D. 382, 384 (S.D.N.Y. 1981).

Grace opposed certification of the class in *Central Wesleyan* and believes that the order certifying the class was improperly entered. Nevertheless, the order exists and -- whether proper or not -- it precludes certification of a duplicative class in this case. Under the first-filed rule and the general principles governing the certification of class actions, the court should not certify a class that includes any colleges or universities; as to colleges and universities, this case should be either dismissed or abated.

## AS TO PUBLIC SCHOOL DISTRICTS, THIS ACTION IS DUPLICATIVE OF A PREVIOUSLY FILED SUIT AND SHOULD BE DISMISSED

A significant portion of the proposed class in this case consists of public school districts in the State of Texas. As to this segment of the proposed class, this action is duplicative of yet another pending case. In *In re Asbestos School Litigation*, 104 F.R.D. 422, 424 (E.D. Pa. 1984), the District Court for the Eastern District of Pennsylvania certified a class consisting of "essentially all public school districts and private schools in the nation." The Third Circuit affirmed the district court's order to the extent it certified an opt-out class on compensatory

14

damages. *In re School Asbestos Litigation*, 789 F.2d 996, 1011 (3d Cir.), *cert. denied*, 479 U.S. 352 (1986).

The public school districts included in the proposed class in this case were clearly a part of the class certified in *In re School Asbestos Litigation*. In that case, notice has already been provided to the class and the time period for class members to opt out has already expired. For that reason, the proposed class in this case, as to school districts, is limited to "public school districts that opted out of the proceeding styled *In re School Asbestos Litigation*, Master File No. 83-0268, in the United States District Court of the Eastern District of Pennsylvania."

As to school districts, then, plaintiff and intervenors are seeking certification of a class consisting of opt outs from another class action. The concept of certifying a class comprised of entities who have already rejected the opportunity to participate in a class runs directly contrary to Rule 23 and the purposes it was designed to achieve. Allowing a competing class action comprised of opt outs from an earlier class clearly defeats the goal of judicial economy that presumably motivated the first court's decision to certify the earlier class and would result in duplicative and inefficient proceedings. For this reason, it has been held that a court may properly deny certification of a class proposed by a plaintiff who has declined to participate in a previously filed class action involving the same issues. *Becker v. Schenley Industries, Inc.*, 557 F.2d 346, 348 (2d Cir. 1977).

Tyler ISD and the school districts that are proposed members of the class in this case have had the opportunity to participate in a class-wide resolution of their claims, but decided not to do so. Having already determined that a class action is not the appropriate way to resolve

15

these cases, public school districts who opted out of *In re School Asbestos Litigation* should not be included in any class that is certified in this case.

## CLASS CERTIFICATION MUST BE DENIED BECAUSE GRACE HAS BEEN DENIED RELEVANT DISCOVERY

Any decision on class certification must be made on the basis of a fully developed record. *See, e.g., Bradford v. Sears, Roebuck & Co.*, 673 F.2d 792, 797 (5th Cir. 1982). The trial court has a *"special responsibility* to withhold its decision on class certification until an adequate record has been developed." *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1037 (5th Cir. 1981)(emphasis added). In this case, Grace has sought the discovery necessary to develop such a record, but has been thwarted by objections asserted by counsel for plaintiff and intervenors.

As will be discussed more fully below, the issues critical to a determination of class certification include (a) whether the claims of the class representatives are typical of the claims of other class members; (b) whether the class representatives can adequately represent the interests of the absent class members; and (c) whether there are questions of law or fact common to the class and, if so, whether such questions predominate. These questions cannot be answered in a vacuum, but instead require an analysis of the specific claims of *both* the class representatives *and* at least a certain number of the proposed class members.

In addition to Kirbyville ISD, Tyler ISD, and the City and County of Liberty, 82 entities have made an appearance in this case. They are listed in the motion for class certification as "proposed class members"[7] and are represented in that capacity by Martin Dies and Richard

---

[7]As discussed above, there is no procedural mechanism for these entities to appear in this action at this time in any capacity other than that of class representatives. They should,

16

Hile, the same lawyers who represent the originally named class representatives. Grace sought discovery from these "proposed class members" for purposes of developing an adequate record on which to assess the questions of typicality, commonality and adequacy of representation that are so critical to the issue of class certification. Discovery is also necessary from these entities to assess jurisdictional questions, such as whether their claims satisfy the amount-in-controversy requirement and whether they are in fact "political subdivisions" of the state or are instead the alter ego of the state. Counsel for plaintiff and intervenors and the "proposed class members" have refused to provide that discovery. The issue is now pending before the court in the form of Plaintiffs' Objections to Defendant W.R. Grace & Co.--Conn.'s First Set of Interrogatories and Request for Production of Documents to Plaintiffs and W.R. Grace's Motion to Compel and Response to Plaintiffs' Objections to W.R. Grace's Discovery Requests and Motion for Uniform Discovery. Any decision on class certification should be denied until this discovery dispute has been resolved and Grace has been provided discovery from the members of the proposed class who have made themselves parties to this case.[8]

## CLASS CERTIFICATION MUST BE DENIED BECAUSE THE RULE 23 PREREQUISITES HAVE NOT BEEN MET

Rule 23 establishes the requirements necessary for class certification. The rule sets forth in subsection (a) four elements that are prerequisites to a class action, including (1) that the class

---

therefore, be considered class representatives for both diversity and discovery purposes. However, even if they are not considered class representatives as such, they still have voluntarily appeared in this action and are subject to discovery to the same extent as any other party.

[8]It is important to note that Grace has not sought discovery generally from absent class members, but has limited its discovery requests to only those proposed class members who have already made a voluntary appearance in this case.

17

is so numerous that joinder of all members is impracticable, (2) that there are questions of law or fact common to the class, (3) that the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) that the representative parties will fairly and adequately protect the interest of the class. Each of these prerequisites must be satisfied for an action to be properly brought as a class action.

Assuming satisfaction of the prerequisites of subsection (a), it must then be shown that one of three alternative bases for maintaining a class action exists under subsection (b) of Rule 23. Plaintiff and intervenors seek to maintain this class action under Rule 23(b)(3), which provides that a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

The party moving for class certification bears the burden of proving that all Rule 23 prerequisites have been satisfied. *See, e.g., Fleming v. Travenol Laboratories, Inc.*, 707 F.2d 829, 832 (5th Cir. 1983). Review of a motion for class certification requires a "rigorous analysis," *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982), and a plaintiff cannot satisfy its burden simply by restating the requirements of Rule 23 and asserting that they are satisfied. *Fleming*, 707 F.2d at 832-33.

The motion for class certification in this case does little more than restate the requirements of Rule 23 and assert generally that they have been met. The only evidence submitted with the motion is the affidavit of Martin Dies, counsel for plaintiff and intervenors. If anything, Mr. Dies' affidavit highlights that asbestos property-damage suits are *not* susceptible

18

of resolution on a class-action basis. For example, Mr. Dies' affidavit discusses in detail two previous asbestos property-damage cases that have pended in this court: (1) *Dayton Independent School District v. W.R. Grace & Co.*, No. B-81-277-CA (consolidated with No. B-81-293-CA) (*"Dayton I"*) and (2) *Dayton Independent School District v. U.S. Mineral Products Co.*, B-87-507 (*"Dayton II"*). Neither of these cases was a class action, but each of them involved the claims of a number of public entities (over 80 in *Dayton I* and over 60 in *Dayton II*). As Mr. Dies' affidavit makes clear, these cases were *not* concluded by resolving any so-called "common" issues, but instead required discovery and analysis on a building-by-building basis.[9] It is precisely for this reason, among others, that class certification is inappropriate in this case, just as it was in *Dayton I* and *Dayton II*.

Because the motion for class certification so plainly fails to discharge plaintiff's burden, Grace can only assume that plaintiff intends to offer evidence at the hearing on class certification with respect to the Rule 23 factors. Grace, therefore, reserves the right to supplement this opposition after the hearing and after Grace has been provided with the discovery that so far has been withheld. In any event, even without having adequate discovery or knowing what evidence plaintiff will offer at the hearing on class certification, it is already clear that the class proposed here is totally unprecedented in scope, even in the arena of asbestos litigation, where courts have sometimes attempted novel and creative procedures.[10] Based on the limited discovery received

---

[9]Mr. Dies notes that in *Dayton I* over 225 buildings were inspected and 3000 samples were taken from 700 buildings; depositions of over 500 people were taken about building-specific information. In *Dayton II*, 300 buildings were inspected and massive discovery was produced from each Plaintiff concerning each of the specific buildings at issue.

[10]In the only two federal asbestos property-damage cases ever certified, the classes consisted of entities of the same type. *Central Wesleyan*, 6 F.3d at 177 (colleges and universities);*In re*

to date, Grace can provide the following preliminary discussion of the inappropriateness of certifying a class under the Rule 23 factors.

### The Proposed Class is not so Numerous as to make Joinder Impracticable

Under the first prerequisite in Rule 23, the proposed class must be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). The burden of proving that joinder of all members is impracticable rests with the party seeking class certification. *Gilchrist v. Bolger*, 733 F.2d 1551, 1556 (11th Cir. 1984). Plaintiff's only effort to meet this burden is its conclusory statement that approximately 500 members of the proposed class exist. In their interrogatory answers, plaintiffs have revised their estimate and now claim that there are only "approximately 250-400" class members. (*See* Exh. F hereto.) The numerosity requirement, however, entails more than counting up the members of the proposed class. The focus of the inquiry is whether joinder is impracticable, a question that depends largely on the particular facts of each case. *In re Anthracite Coal Antitrust Litigation*, 78 F.R.D. 709, 715 (M.D. Pa. 1978). The total number of class members is not controlling; a relatively small class may be certified if joinder is in fact impracticable, but the converse is also true for large classes when joinder is feasible. *Daigle v. Shell Oil Co.*, 133 F.R.D. 600, 603 (D. Colo. 1990).

In determining whether joinder is impracticable, courts consider the size of the class, the geographical dispersion of its members, whether the members' identities are easily ascertainable, and, in some cases, whether individual suits would make economic sense. *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980), *cert. denied*, 449 U.S. 1113 (1981); *In re Anthracite Coal*

---

*School Asbestos Litigation*, 789 F.2d at 996 (schools). The proposed class in this case consists of no fewer than 12 different types of entities, each of which is subject to different regulatory schemes and puts its buildings to widely varying uses.

*Antitrust Litigation*, 78 F.R.D. at 715. Analysis of these factors here results in the conclusion that joinder is practicable. First, all members of the proposed class are within Texas and are not geographically dispersed. Joinder of numerous public entities all located in one state has been found not impracticable because "[i]nformal coordination of their efforts would not be difficult." *In re Anthracite Coal Litigation*, 78 F.R.D. at 715. Similarly, the proposed class members in this case are public entities all located in one state, and informal coordination of their efforts would not be difficult. Public entities of this type have a long history in Texas of joining together in asbestos lawsuits, as demonstrated by the experience in *Dayton I* and *Dayton II*, and there is no reason to believe that such joinder has recently become impracticable.

The names of the members of the proposed class are likewise readily ascertainable, as demonstrated by the fact that plaintiff has listed most of them by name in the answers to Grace's interrogatories. (*See* Exh. F hereto.) Thus, identifying and providing notice to proposed class members provides no barrier to their actual joinder in the suit, and certification of a class is not necessary. *See Daigle*, 133 F.R.D. at 603 (precise geographic boundaries defining proposed class and ease of ascertaining names of potential class members militates against certification).

In addition, there is no financial disincentive to the pursuit of individual suits. The device of a class action was designed in part to provide a mechanism for individuals with small claims to obtain redress, where it would be financially difficult or impossible for class members to bring individual actions. *In re Anthracite Coal Antitrust Litigation*, 78 F.R.D. at 715; Wright & Miller, *Federal Practice and Procedure* §1762 (1986). The experiences in both *Dayton I* and *Dayton II*, as outlined in Mr. Dies' affidavit, demonstrate that there are no economic impediments to individual suits in asbestos property-damage cases of this type.

21

Finally, discovery conducted to date has revealed that counsel for plaintiff and intervenors plan to contact *every* member of the proposed class and to inspect the buildings of *every* class member. A team assembled by plaintiff's expert John Krog has already contacted hundreds of proposed class members and has identified and inspected over 1,000 of their buildings. Obviously, if these entities can be identified and contacted for purposes of conducting building inspections, joinder is *not* impracticable. As a result, plaintiff and intervenors cannot satisfy the numerosity requirement.

### There are no Questions of Law or Fact that are Common to the Class

In their motion for class certification, plaintiff and intervenors list nine questions that they contend are common to each member of the proposed class.[11] What they fail to recognize, however, is that *none* of these questions is actually common to *all* class members. The named class representatives and the various members of the proposed class own different structures that contain different types of asbestos-containing products manufactured and supplied by different entities. (*See* Exh. G hereto.) Thus, the questions concerning the manufacturer's state of knowledge, the adequacy of testing, the defendants' duty of care, and the particular traits of particular products will vary from class member to class member, depending on which defendant

---

[11]According to the motion for class certification, the common questions include: "a. Whether Defendants knew or had reason to know of the health hazards of asbestos; b. whether [Defendants' products] are friable or are capable of becoming friable . . .; c. whether Defendants' asbestos products can release asbestos fibers in the course of foreseeable use, including maintenance, renovation, and demolition; d. whether Defendants participated in conspiratorial activities, either industry-wide, or within segments of the industry; e. whether Defendants failed adequately to test their products for fiber release potential; f. whether Defendants failed to warn users of the potential hazards of their products; g. whether Defendants breached a duty of due care in selling friable asbestos products for use in public buildings; h. whether Defendants' conduct justifies the imposition of punitive damages; and i. whether Plaintiffs' claims are barred by any applicable statute of limitations or repose."

is alleged to have manufactured the product present in each class member's buildings.  Even as among the proposed class representatives, there is a great deal of variation and an absence of common questions of law or fact.  For example, Kirbyville ISD is alleged to have product manufactured only by Asbestospray Corporation, while the City and County of Liberty are alleged to have Grace product in their buildings.  Questions regarding Grace's products, testing and conduct may bear on the claims of the City and County of Liberty, but are totally irrelevant to the claims of Kirbyville ISD.

Moreover, the statute-of-limitations issue that plaintiffs and intervenors contend is a common question is most certainly an individual one that must be answered from the unique perspective of each individual class member.   Individual questions, such as the date of installation of asbestos-containing products and the date on which each class member learned or should have learned of the purported hazards of asbestos, will be central to a determination of the limitations question.  Section 16.061 of the Texas Civil Practice & Remedies Code cannot transform the limitations issue into a common question because that statute does *not* cover all members of the proposed class.  *See Monsanto Company v. Cornerstones Municipal Utility Dist.*, 865 S.W.2d 937, 940 (Tex. 1993).

### The Claims of the Representative Parties are not Typical of the Class

The typicality prerequisite of Rule 23 requires that the claims of the representative stem from a single factual situation or that they be based on the same legal or remedial theory.  *In re Anthracite Coal Antitrust Litigation*, 78 F.R.D. at 716.  Typicality cannot be shown where the legal and factual positions of the class representatives are markedly different from the other members of the proposed class.  Wright & Miller, *Federal Practice and Procedure* § 1762.  The

23

class representative's claims must be sufficiently coextensive with those of the class such that the court is satisfied that the class members' causes of action will be fully, fairly and vigorously prosecuted. *In re Asbestos School Litigation*, 104 F.R.D. at 429. In this case, because plaintiff and intervenors have proposed a class consisting of such a wide diversity of members with disparate claims, it is impossible to show typicality.

For example, some of the class representatives have buildings that do not contain product manufactured by some of the defendants. Obviously, a class representative such as Kirbyville ISD, which only has claims against Asbestospray Corporation, cannot show that its claims are typical of the claims of class members who only have product manufactured by Grace or USG. In addition, there are numerous differences among the class representatives and the proposed class members on issues such as whether the asbestos-containing materials have been abated, have been painted or encapsulated or are still in their original condition. For example, the County of Liberty has only one building with asbestos-containing materials and those materials have already been encapsulated, but not removed. Its claims, therefore, are not typical of the many class members who have material that has not been encapsulated or that has already been abated or removed. As another example, the City and County of Liberty and Tyler ISD each has at least one building where asbestos-containing materials are still present and may therefore be sampled for product-identification purposes. Their claims are obviously not typical in this regard of members of the proposed class who have already abated or removed their asbestos-containing materials and will therefore be forced to rely solely on historical documentation for product-identification purposes.

24

Typicality concerns are also created by plaintiff's attempt to lump into one class buildings owned by a divergent group of entities ranging from school districts to hospitals to port authorities to veterinary clinics. Obviously, these entities put their buildings to very different uses; the ceilings in the offices of Liberty City Hall are not likely to face the same damage as the ceilings of the classrooms and gymnasiums located in the buildings of the various school districts in the proposed class. Likewise, Liberty County's Henley Building, which serves as a health clinic, is certainly not going to experience the same treatment as the City of Liberty Fire Station, where trucks and heavy equipment are routinely parked. The City of Harlingen's water treatment plant certainly has markedly different uses and maintenance needs from the City of Richardson public library.

The various types of entities in the proposed class are also subject to varying regulatory schemes. For example, Tyler ISD is subject to the unique regulatory framework of the Asbestos Hazard Emergency Response Act of 1986 ("AHERA"). AHERA, however, only applies to schools and would have no impact on non-school members of the proposed class, such as the Texas Forestry Service. Even class representatives recognize that AHERA renders the claims of school districts unique from, and not typical of, the claims of other members of the proposed class. As Mr. Newton, the designated representative of Tyler ISD, has testified:

Q:     Certainly from a regulatory standpoint you wouldn't feel competent to
       deal with asbestos issues for these other [non-school] types of entities.

A:     I wouldn't even want to try, no.

There are also serious typicality concerns raised by the fact that some, but not all, of the proposed class members are covered by Section 16.061 of the Texas Civil Practice & Remedies Code, while others are not. *See Monsanto,* 865 S.W.2d at 940.

25

The typicality concerns discussed above are not merely theoretical. The typicality requirement is designed to ensure that the class representatives will fully, fairly and vigorously prosecute the claims on behalf of *all* class members. There are certainly reasons to question whether Kirbyville ISD, which only has product manufactured by Asbestospray, will have the incentive to expend the litigation resources necessary to pursue claims against Grace and USG. As another example, class representatives who have product available for sampling might well have no incentive to expend the time and effort to research historical documentation for purposes of proving claims on behalf of entities whose asbestos has already been abated and who therefore cannot prove product identification through the testing of product samples. Tyler ISD, which arguably can rely on Section 16.061 of the Texas Civil Practice & Remedies Code to avoid a limitations defense, may well resist the vigorous pursuit of claims on behalf of political subdivisions who cannot rely on Section 16.061, for fear that the limitations defense applicable to some class members may prejudice the claims of all class members. The City and County of Liberty, which are not subject to AHERA, have no incentive to expend the litigation resources necessary to quantify and recover the cost of AHERA compliance, since they would receive no benefit from the recovery of such costs.

The above are just a few of the problems inherent in maintaining a class with such widely divergent claims. Because of the numerous differences among the claims of the members of the proposed class, plaintiff and intervenors cannot show typicality.

### The Representative Parties are Unable to Protect Fairly and Adequately the Interests of the Class

Courts have identified two factors on which the adequacy of representation depends: (1) class counsel must be qualified, experienced, and generally able to conduct the proposed

26

litigation, and (2) the named plaintiff must not have interests antagonistic to those of the class. *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 449 (3d Cir. 1977), *cert. denied*, 434 U.S. 1086 (1978). Here, at least two significant issues arise in connection with the ability of class counsel to pursue this litigation. First, while the attorneys for plaintiff and intervenors undoubtedly have experience in asbestos litigation, they are not authorized to bring suit on behalf of state agencies. Second, class counsel currently represent individual plaintiffs (some of whom are members of the proposed class and some of whom are not) in other asbestos property-damage litigation, which presents a conflict with their efforts to represent the class in this case.

As discussed above, several members of the proposed class are agencies of the state. The State Attorney General's office is the only entity authorized to bring suit on behalf of state agencies. Tex. Gov't Code Ann. § 402.021 (West 1990). Any use of outside lawyers to represent state agencies must be undertaken only with the express approval of the Attorney General and under his or her direction. *Bullock v. Texas Skating Ass'n*, 583 S.W.2d 888, 894 (Tex. Civ. App.--Austin 1979, writ ref'd n.r.e.) ("In matters of litigation the Attorney General is the officer authorized by law to protect the interests of the State, and even in matters of bringing suit the Attorney General 'must exercise judgment and discretion, which will not be controlled by other authorities.'"). "[T]he attorney general enjoys an exclusive right to represent state agencies, and if the services of other lawyers are to be had it must be with his permission and 'in subordination' to his authority." *United States v. State of Texas*, 680 F.2d 356, 368 n.16 (5th Cir. 1982). Regardless of the skill and experience of proposed class counsel, a claim for damages brought on behalf of the State of Texas and its agencies must be initiated and controlled by the Attorney General, not a private attorney chosen by other named plaintiffs. Class counsel

27

has not demonstrated that their representation of the proposed class has been authorized by the Attorney General, and this alone is a sufficient basis on which to deny class certification in this case.

Not only are counsel for the proposed class unqualified under Texas law to bring suit on behalf of agencies of the State of Texas, their representation of the proposed class raises potential conflicts of interest sufficient to defeat class certification. Class counsel currently represent individual building owners in other asbestos property-damage actions brought against the defendants named in this action, as well as other defendants.[12] Several courts have recognized the potential for conflict when the same attorney represents both a class and individual plaintiffs in parallel suits regarding the same subject matter. *See, e.g.*, *Sullivan v. Chase Investment Servs. of Boston Inc.*, 79 F.R.D. 246, 258 (1978). The conflict may arise whether the individual plaintiffs would otherwise be members of the class or not. For example, in *Sullivan*, the court held that an attorney could not represent a purported class of investors in a previously-filed fraud action without first withdrawing from the representation of a plaintiff in a securities fraud case against the same defendant. The court noted the possibility that the defendant's assets and insurance may not be sufficient to satisfy the liability to both the class and the individual plaintiff, and that the diminution in the defendant's assets resulting from payment

---

[12]Counsel has identified in interrogatory answers the following proceedings, each of which is still pending: *Kirbyville Independent School District, et al v. National Gypsum Co.*, No. 12,301, Jasper County, Texas, 1st Judicial District Court; *The County of Orange, et al, Individually and on Behalf of the State of Texas and Other Similarly Situated Potential Subdivisions v. National Gysum Company*, No. D-890803-C, Orange County, Texas, 260th Judicial District Court; *Jefferson Parish School Board, et al v. W. R. Grace & Co., et al.*, No. 88-3844 (E.D. La.); *State of Utah, et al v. W. R. Grace & Co., et al.*, No. 940906356P1) (3d Jud. Dist. Ct. Utah); *State of Hawaii v. W. R. Grace & Co.-Conn., et al*, No. 93-4161-10 (1st Cir. Ct. Hawaii).

28

in accordance with any judgment rendered in the individual action would affect the interests of the class. *Id.* at 258.

The other aspect of the adequacy requirement -- whether the class representatives have interests antagonistic to the class -- also supports the denial of class certification. As discussed above in connection with the typicality requirement, there is a substantial risk of antagonism among the class representatives and the proposed class members that has been created by the attempt to include in one class claims of such a widely divergent nature. In addition, the named class representatives in this case have chosen to sue only three defendants, even though there are many other manufacturers of asbestos-containing surface-treatment materials and even though product made by these other manufacturers has already been identified by John Krog in buildings of other class members. The decision of the named class representatives to pursue only a fraction of the potentially responsible parties may well create antagonism, especially on the part of proposed class members whose buildings contain mostly product manufactured by companies that the named class representatives have elected not to sue.

### Any Common Questions of Law or Fact do not Predominate Over Individual Questions

Plaintiff and intervenors seek class certification under Rule 23(b)(3), which requires a finding, among others, that "the questions of law or fact common to the class predominate over any questions affecting only individual members." This subdivision "encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Advisory Committee Notes to the 1966 Amendment to Rule 23, subdivision (b)(3). Certification under this section is only appropriate

29

when "the actual interests of the parties can be served best by settling their differences in a single action." 7A Wright & Miller, *Federal Practice and Procedure* § 1777 at 516. Here, it is clear that the parties' interests would not be better served by proceeding as a class action.

As discussed above, none of the questions that plaintiff and intervenors identify as common is truly an issue common to the class as a whole. There can be no question, moreover, that the issues that arise from plaintiff's affirmative claims are predominately individual in character. In assessing whether common issues predominate, most courts have adopted a pragmatic approach that looks to how efficient class treatment will be, the significance of the common questions, and whether class certification would result in a serious distortion of the lawsuit. *In re Asbestos School Litigation*, 104 F.R.D. at 431. As a general principle, courts have been reluctant to certify classes in mass tort actions, especially those alleging negligence by one or more defendants over extended periods, usually on the ground that common questions of law or fact do not predominate. *In re Northern District of California, Dalkon Shield IUD Products Liability Litigation*, 693 F.2d 847, 852 (9th Cir. 1982), *cert. denied*, 459 U.S. 1171 (1983).

The widespread reluctance to certify plaintiffs' classes in mass tort cases is partly based on the advisory committee note to the 1966 Revision of Rule 23(b)(3), which states in part that a "'mass accident' resulting in injuries to numerous persons is ordinarily not appropriate for a class action" because most questions would be individual questions rather than common ones. Advisory Committee Notes to the 1966 Amendment of Rule 23(b)(3).

Although courts are hesitant to certify classes of plaintiffs in mass accident cases, their reluctance is even more pronounced in product-liability actions, where "[n]o single happening

30

or accident occurs to cause similar types of physical harm or property damage. No one set of operative facts establishes liability. No single proximate cause applies equally to each potential class member and each defendant." *In re Dalkon Shield*, 693 F.2d at 853. In fact, some courts have recognized that complex toxic tort cases are especially troublesome candidates for certification. The court in *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988), recognized the difficulties raised by class certification in a toxic tort case, stating that in such cases, "where no one set of operative facts establishes liability, no single proximate cause equally applies to each potential class member and each defendant, and individual issues outnumber common issues," the court should question the appropriateness of certifying a class. *Id.*[13]

Applying similar logic, in *Caruso v. Celcius Insulation Resources, Inc.*, 101 F.R.D. 530 (M.D. Pa. 1984), the district court denied the plaintiffs' motion for class certification in a case involving allegations of product liability arising from urea formaldehyde foam insulation. *Id.* at 532. The court found that examples of individual questions not susceptible of common treatment included varying property damage, varying levels of formaldehyde, varying representations that were made, varying times at which the injuries were discovered and the existence of intervening or superseding causes. *Id.* at 535. The court held that the plaintiffs'

---

[13] Although the court affirmed the class certification in *Sterling*, which was an action brought by residents of the area near a toxic waste site, it did so on the ground, not present here, that "[a]lmost identical evidence would be required to establish the level and duration of chemical contamination, the causal connection, if any, between the plaintiffs' consumption of the contaminated water and the type of injuries allegedly suffered, and the defendant's liability." *Id.* In contrast, on the facts here, highly differentiated evidence concerning the type and duration of asbestos-containing materials present in the plaintiffs' buildings, and the causal connection between a particular defendant's activities and the harm produced will be essential to a finding of liability.

31

causes of action, which included strict liability, negligence and breach of warranty all raised predominately individual issues such as causation, reliance, notice, and damages, rather than common issues. *Id.* at 537; *see also Delaney v. Borden, Inc.*, 99 F.R.D. 44 (E.D. Pa. 1983) (denying motion for class certification against urea formaldehyde insulation manufacturer on ground that common questions did not predominate).

      Likewise, in *Cleveland Board of Education v. Armstrong World Industries*, 476 N.E.2d 397 (Ohio Com. Pl. 1985), a public school district brought suit against various manufacturers and installers of asbestos-containing products, and other schools sought leave to intervene and to certify the cause as a class action. *Id.* at 399. In denying the class certification, the court found that common questions did not predominate. *Id.* at 404. The court held that "[i]dentical applications of an asbestos-containing product may be legally defective in one building but not in another. Also, one defendant's product, because of its use or location, may become friable in one room of a building, but remain without hazardous defect in another area of the same structure." *Id.* (footnote omitted). Thus, the court concluded that certification of a class would be improper because a legally compensable damage to one asbestos-containing building does not prove nor disprove such damage to another building, and common issues did not predominate. *Id.* at 406; *see also Sisters of St. Mary v. AAER Sprayed Insulation*, 445 N.W.2d 723 (Wis. Ct. App.), *review denied*, 449 N.W.2d 275 (Wis. 1989).

      The courts' analyses in these cases are instructive in analyzing plaintiff's motion for class certification in the present case. Here, individual issues of law and fact raised by plaintiff's affirmative claims far overshadow any common issues of law or fact. To start with, each member of the proposed class will be required to show that one of the defendants manufactured

32

the products in its buildings to establish causation, which, of course is a required element of every cause of action plaintiffs have brought. That is, to recover, each plaintiff must prove which, if any, of the defendants supplied the product that caused the injury. *In re Fibreboard Corp.*, 893 F.2d 706, 711 (5th Cir. 1990). This holds true even with regard to the plaintiffs' conspiracy claim, in that each individual plaintiff will be required to prove that the products in its buildings were supplied by an entity that was a conspirator. *Marshall v. Celotex Corp.*, 660 F. Supp. 772 (E. D. Mich. 1987).

Once the individual members of the putative class have identified the products contained in their buildings, to recover damages, they will also have to show how much of that product is present, where it is located, the condition of the product and the potential hazards posed by that product as installed in that particular building, including the friability of the asbestos as installed, and the asbestos level in the air of each building. Whether asbestos-containing materials installed in buildings are hazardous cannot be answered in the abstract or in a vacuum. *See, e.g., Gideon v. Johns-Manville Sales Corp.*, 761 F.2d 1129 (5th Cir. 1985). Rather, determining whether defendants' products pose any hazard -- which is obviously an essential element of plaintiff's case -- requires a site-specific, building-by-building analysis. This fact is recognized by the Environmental Protection Agency; by Congress in AHERA, among other legislation; by representatives of the class representatives in this case, who have testified that a building-by-building analysis must be performed; and by plaintiff's expert, John Krog, who has testified that a building-by-building analysis is required and that existing regulations do *not* require the abatement or encapsulation of all asbestos-containing materials.

33

Further, individual issues obviously arise in connection with any award of damages. The cost of abatement may differ in the extreme from one building to another. Some members of the proposed class will have previously removed some of the asbestos-containing materials from some of their buildings during the course of ordinary maintenance or refurbishing. Moreover, the cost to remove the asbestos that is in place will vary dramatically from building to building. Those costs will depend upon the type of product involved in each building, the building itself, the condition of the asbestos, and the location and accessibility of the asbestos within the building. Courts have frequently acknowledged that the adjudication of damages allegedly suffered by members of the class is a highly individualized inquiry not subject to class treatment. *See, e.g., Sterling*, 855 F.2d at 1197. While the need for individualized treatment of damages claims is ordinarily not by itself a sufficient basis on which to deny class certification, *see, e.g., Arthur Young & Co. v. United States District Court for the Northern District of California*, 549 F.2d 686, 696 (9th Cir.), *cert. denied*, 434 U.S. 829 (1977), it is certainly an appropriate consideration when engaging in the Rule 23(b)(3) preponderance analysis. Here, the individual character of the damage claims alleged by each member of the proposed class serves simply to confirm the inescapable conclusion that class certification would be improper.

In some cases, the defenses to liability raised by the defendant have been held to raise a common issue of sufficient importance to provide a basis for class certification. *See, e.g., In re Agent Orange Product Liability Litigation*, 818 F.2d 145, 166 (2d Cir. 1987), *cert. denied*, 484 U.S. 1004 (1988) (the applicability of the military contractor defense to the plaintiffs' claims raised common issues of fact and law sufficient by themselves to form a basis for class certification). However, in the present case, no defense raises an issue common to the class as

34

a whole. A variety of defenses will be available to certain of the defendants in response to certain of the plaintiffs' claims, and in each case, the particular defense will depend on the particular individual facts applicable to the specific parties involved. For example, as to all plaintiffs, many claims may be reduced or eliminated by virtue of an analysis of comparative fault or intervening cause. Each individual member of the proposed class is likely to have had different levels of knowledge concerning asbestos that each acquired at different times. Further, in many cases, engineers and architects participated in the decisions to install asbestos-containing materials and decided what type of asbestos-containing product to use, and in what quantities, in the various buildings belonging to members of the proposed class. Those sophisticated agents may well be partially responsible for the damages, if any, that plaintiffs allegedly suffered.

Issues of timing that are relevant to statutes of limitations and repose defenses are also individual in character and incapable of being decided on a class-wide basis. The date of installation of the asbestos will differ from plaintiff to plaintiff and even from building to building. Thus, the availability of the statute of repose as a defense to plaintiffs' claims will have to be decided on an individual basis. With regard to the statute of limitations, some of the individual class members may be protected by Section 16.061 of the Texas Civil Practice and Remedies Code, which provides that the claims of certain public entities will not be barred by statutes of limitations, while others cannot rely on Section 16.061. Thus, the applicability of the statute of limitations raises individual issues of both fact and law.

The "state of the art" defense is also not a predominant common question here. The precise outlines of the "state of the art" will differ from defendant to defendant depending on the state of knowledge of each defendant and the time period during which asbestos-containing

35

materials were installed in particular buildings. It is clear that the "state of the art" defense will thus be highly dependent on individual facts.

Thus, the issues that arise in relation to plaintiff's claims are predominantly individual ones that cannot appropriately be determined on a class-wide basis. This is perhaps best demonstrated by the fact that, although they seek certification of a class, counsel for the proposed class has already determined that it will be necessary in this case to individually inspect *every* building of *every* class member and to present individualized evidence concerning those buildings at trial. The process of inspecting these buildings has already begun; to date, a team of experts retained by plaintiff has already inspected over 1000 buildings and is continuing the inspections on an ongoing basis. Common questions clearly do not predominate on the facts here, as they must for the proper certification of a class. This court should therefore deny class certification.

## Class Action is Not Superior to Other Methods of Adjudicating This Controversy

Rule 23(b)(3) also requires for certification a finding that class treatment is superior to alternative methods for adjudication of the controversy. Various factors the courts may consider in making the superiority determination are enumerated in the rule, but the rule does not provide an exhaustive list of all potentially relevant factors, and a court may consider whatever other factors it deems relevant. Fed. R. Civ. P. 23(b)(3); 7A Wright & Miller, *Federal Practice & Procedure* § 1777 at 520. The factors enumerated in the rule are: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the

36

claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." At least three of these four factors, on the facts presented here, clearly demonstrate that class certification would be improper.

> ### The individual class members have a strong interest in controlling the prosecution of separate actions.

The first question a court must ask in determining the superiority of class treatment is the interest individual members of the proposed class may have in prosecuting their own claims independently. One of the primary means the courts employ to determine the proposed class members' individual interest in controlling the prosecution of their own separate actions is to look at the value of the individual claims. Of course, the lower the dollar value of each claim, the less likely an individual will take an interest in separate prosecution of the action. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974). However, the converse is also true. For example, in *Causey v. Pan Amer. World Airways, Inc.*, 66 F.R.D. 392, 399 (E.D. Va. 1975), the court found that the high value of the individual claims meant those claims were more important to the claimants, and the claimants were more likely to want to exercise independent control over the prosecution of the suit.

As noted above, no class can be certified in this case unless the court is satisfied that each individual member of the class has claims that are worth at least $50,000. *See* 28 U.S.C. § 1332; *Zahn v. International Paper Co.*, 414 U.S. 291 (1973). Claims of this size are clearly adequate to support independent litigation. *See Stoudt v. E.F. Hutton & Co.*, 121 F.R.D. 36, 38 (S.D.N.Y. 1988) (finding that claims allegedly worth $60,000 each were adequate to support independent litigation). In fact, the court in *Stoudt* found that the size of the individual claims alone precluded certification of a class, because Rule 23 "was not designed to permit large

claimants, who are fully capable of proceeding on their own, to strengthen their bargaining position by threatening their adversaries with the prospect of class-wide relief and large attorney fee awards." *Id.* Similarly, there is no justification for certifying a class when the individual members of the proposed class have such a strong interest in bringing individual suits on their own.

> **Extensive litigation, including other pending class actions, was previously brought.**

The second factor that the court should look to in determining whether class treatment is superior to other methods of resolving this litigation is one of the most important considerations presented here. That factor asks "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class." Fed. R. Civ. P. 23(b)(3)(B). This factor is intended to ensure that judicial economy is achieved and to reduce the possibility of multiple lawsuits. 7A Wright & Miller, *Federal Practice & Procedure* § 1780 at 569. In the present case, as discussed above, numerous individual suits and class actions that directly involve members of the proposed class have been filed involving precisely the same claims as those brought here. The existence and the extent of this other litigation make clear that class action treatment in this forum is not superior to other methods of resolving this dispute.

The existence of these prior cases, involving not just the same parties, but in many instances the same counsel, makes clear that class certification is inappropriate here. There is no justification for certifying a class in which some of the members are also members of another, previously certified class before they have even had an opportunity to opt out of the class. Even as to the members of this proposed class that are not also currently members of

38

another certified class, the advantages of class treatment in terms of judicial efficiency or economies of a single litigation are no longer available. It is clear that class certification is not a superior method of resolving the issues raised by plaintiff's claims, and this court should deny plaintiff's motion.

**The Class action mechanism raises serious issues of manageability on the facts presented here.**

As set forth in detail above, none of the factors essential to class certification is present here. In the absence of a predominance of common issues of law or fact, it is readily apparent that management of this case as a class action would prove extremely problematic. Even if it determined to resolve some issues on a class-wide basis, the court would still have to conduct countless mini-trials on the critical issue of product identification, which must be resolved on a building-by-building, product-by-product basis. Again, even if some issues were tried on a class-wide basis, ultimately inquiry would have to be made into the particular conditions existing in each building within the class. The defense to these cases is centered in large part on an analysis of the actual condition of products as installed in plaintiff's buildings. Defendants cannot be denied the opportunity to present evidence of building-specific factors, such as the type of product involved, the type and amount of asbestos in the product, the condition and location of the product as installed, whether and to what extent the product has released fibers, and whether the fibers in the building are any greater than those in the ambient air. *See, e.g., Perlmutter v. United States Gypsum Co.*, 4 F.3d 864 (10th Cir. 1993); *Adams-Arapahoe Sch. Dist. v. GAF Corp.*, 959 F.2d 868 (10th Cir. 1992). Further, some, but not all, of the members of the proposed class are protected from the bar of limitations by state statute. Those that are

39

not protected by statute will be subject to individual inquiry into the limitations defense, which will add yet another layer to an already complex problem of litigation management.

As set forth above, the putative class is not too numerous to make joinder impracticable. In fact, joinder is clearly a superior method of adjudicating the plaintiff's claims here. Joinder would resolve all of the problems that arise from the absence of common questions and the difficulty in defining the class. Because class treatment is not a superior method of adjudicating the issues raised by plaintiff's claims, this court should reject plaintiff's motion for class certification.

## CLASS CERTIFICATION MUST BE DENIED BECAUSE PLAINTIFF'S DEFINITION OF THE CLASS IS OVERBROAD, VAGUE AND AMBIGUOUS

Assuming that plaintiff and intervenors can somehow overcome all of the obstacles to class certification outlined above, the order of certification they have proposed is overbroad, vague and ambiguous and, at a minimum, requires clarification. First, the order defines the class, in part, as all political subdivisions that "own, operate, or use" buildings with certain asbestos-containing surface-treatment materials. The inclusion of buildings that are only "operated" or "used" by political subdivisions renders the proposed order overbroad on its face.[14] Neither the proposed order nor the motion for class certification provides any guidance as to what level and nature of "use" or "operation" justifies inclusion in the class. Absent such information, the proposed order is obviously improper.

---

[14] The First Amended Class Action Complaint and the Original Class Action Complaint in Intervention refer only to entities that "own" or "operate" buildings.

40

Plaintiff and intervenors, moreover, have now submitted no fewer than four separate definitions of the proposed class, each of which is different. The following chart summarizes the varying definitions presented:

| Amended Complaint and Complaint in Intervention | Motion for Class Certification | Proposed Order Certifying Class | Answers to Grace's Interrogatories |
|---|---|---|---|
| "all Public Building Owners and Political Subdivisions of the State of Texas, including": <br><br>• cities <br>• counties <br>• municipalities <br>• hospitals <br>• hospital districts <br>• ports <br>• trade districts <br>• public school districts <br>• junior colleges | • cities <br>• counties <br>• community colleges <br>• hospital districts <br>• ports <br>• public school districts <br>• universities <br><br>[The motion, moreover, lists a number of entities as "proposed class members" who do *not* fit into these categories, such as: <br><br>• Texas Agricultural Experiment Station <br>• Texas Agricultural Extension Service <br>• Texas Animal Damage Control Service <br>• Texas Engineering | "All Political Subdivisions of the State of Texas as set forth in said Motion" | "Political Subdivisions of the State of Texas," including: <br><br>• public entities identified as prospective class members in motion <br>• counties <br>• incorporated cities with populations in excess of 5,000 <br>• public hospitals <br>• public community colleges <br>• public universities or colleges <br>• public school districts |

| | | | |
|---|---|---|---|
| • state supported colleges and universities | Experiment Station<br>• Texas Engineering Extension Service<br>• Texas Forest Service<br>• Texas Transportation Institute<br>• Texas Veterinary Medical Diagnostic Laboratory] | | |

Obviously, no class can be certified until plaintiff and intervenors clarify whom they intend to include within it. Specifically, plaintiff and intervenors must clarify, among other things, whether they use the term "Political Subdivisions" as a defined term to describe only those entities or types of entities that have been specifically listed in the motion or whether it is instead intended to include all entities that meet the legal definition of "political subdivision," whether or not such entities have been described in the motion.

## CONCLUSION

Plaintiff and intervenors have not demonstrated that the elements essential to proper certification of a class action are present here. Their barebones motion does not even come close to providing the necessary basis in law or in fact for class certification. Because it is clear that the court lacks jurisdiction and that common issues of fact or law are not the predominant questions raised by this case, and because class treatment will not be the most fair or efficient method of adjudicating the issues raised here, this court should deny the motion for class certification.

42

Respectfully submitted,

By _Thomas M. Farrell_

Thomas M. Farrell
State Bar No. 06839250
700 Louisiana, Suite 1900
Houston, Texas 77002
713-225-7121
713-225-7047 Fax

ATTORNEY IN CHARGE FOR DEFENDANT
W. R. GRACE & CO.-CONN.

OF COUNSEL:

MAYOR, DAY, CALDWELL & KEETON, L.L.P.
Dillon J. Ferguson
Solace H. Kirkland
700 Louisiana, Suite 1900
Houston, Texas 77002
(713) 225-7000
(713) 225-7047 Fax

WELLS, PEYTON, BEARD, GREENBERG
  HUNT & CRAWFORD, L.L.P.
Walter J. Crawford
6th Floor, 550 Fannin Street
P. O. Box 3708
Beaumont, Texas 77704-3708
(409) 838-2644
(409) 838-4713 Fax

43