IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ·In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date: August 29, 2005 at 12:00 p.m.** |
| | ) | **Responses Due: August 12, 2005** |

**MOTION OF DEBTORS FOR LIMITED WAIVER OF DEL. BANKR. L. R. 3007-1 TO PERMIT FILING OMNIBUS OBJECTION TO 2,938 UNAUTHORIZED CLAIMS FILED BY THE LAW FIRM OF SPEIGHTS & RUNYAN**

The Debtors hereby move for an order waiving, certain requirements and restrictions imposed by Delaware Bankruptcy Local Rule 3007-1 so that Debtors may file their Thirteenth Omnibus Objection to 2,938 Unauthorized Claims filed by the law firm of Speights & Runyan, attached as Exhibit 1 (the "Speights Objection"). While the Speights Objection is technically a substantive objection as contemplated by the Local Rule 3007, the Speights Objection only addresses one procedural issue. The Speights Objection relates to the sole issue of Speights' lack of authorization to file the 2,938 proofs of claim it signed and filed in these Chapter 11 cases (the "Speights Claims").

With even the most limited discovery to date, the Debtors have uncovered evidence that the Speights & Runyan firm ("Speights") has filed numerous unauthorized proofs of claim in these cases on behalf of claimants Speights does not represent. As just a few examples, attached as Exhibits to the accompanying Speights Objection:

- The American Medical Association Building: Counsel for The American Medical Association (the "AMA") has testified that "I spoke with various representatives of the law firm of Speights & Runyan ("Speights") in late 2002 and early 2003. The subject of discussion was whether Speights would represent the AMA in this bankruptcy proceeding. *I informed Speights that the AMA did not wish Speights to represent it in this proceeding.*" *Compare* (7/6/05 affidavit from AMA counsel, emphasis added) *with*

(3/27/03 Claim No. 6661 for American Medical Association Building, submitted by Speights and signed by attorney Amanda Steinmeyer of that firm)

- Harvard Vanguard Medical Associates: A representative for Harvard sent a letter and affidavit confirming Harvard *"did not authorize Speights & Runyan to represent it and file a proof of claim on its behalf* in the Grace bankruptcy." *Compare* (7/7/05 Harvard letter and affidavit) *with* (3/27/05 Claim No. 6726 for Harvard Public Health/Harvard Vanguard Med. Asso., submitted by Speights and signed by Steinmeyer)

- Maryland Casualty Company: Maryland Casualty ("MCC") has written to "confirm that (i) MCC has never retained the law firm of Speights & Runyan to represent MCC in the Grace Bankruptcy Cases; and (ii) *MCC never authorized the law firm of Speights & Runyan to file a proof of claim on MCC's behalf* in the Grace Bankruptcy Cases." *Compare* (7/1/05 MCC letter) *with* (3/27/05 Claim No. 6721 for Maryland Casualty Co., submitted by Speights and signed by Steinmeyer).

The extent of Speights' improper filings runs both broad and deep. From June 29, 2005 through July 5, 2005, for example, obviously anticipating this Court's scrutiny, Speights "withdrew" 180 asbestos property damage claims -- including the claims described above -- in a transparent effort to avoid judicial review of Speights' claims-filing practices. *See* Docket Nos. 8710-8936. Oddly, more than 45 of those purportedly "withdrawn" claims were for buildings *for which Speights had never filed a claim in the first place. See* Exhibit G to the Objection (identifying 46 docket entries of "withdrawal" of claims for which the Debtors have no evidence a claim was on file). The Debtors have further learned that to date, nearly 2000 Speights-filed claims have been withdrawn en masse in other asbestos bankruptcies after challenges were made to their validity, including 1,228 in *Federal Mogul,* 328 in *Owens Corning* and 131 in *U.S. Mineral.* There can be no explanation for such practices *except* that those claims were improper from the start.

The impact of Speights' improper claims filing on the Debtors' reorganization efforts cannot be overstated. At the time these Chapter 11 cases were filed, fewer than 10 traditional asbestos property damage cases were pending against Grace. In response to the March 2003 bar date order, the Debtors were inundated by over 4000 claims -- and *nearly 75% of those claims*

2

*were filed by Speights.* It appears that *every single one* of the 2,938 traditional asbestos property damage claims filed by Speights was signed by either attorney Daniel Speights or attorney Amanda Steinmeyer of the Speights firm; not a single Speights proof of claim was signed by an individual claimant.

Pursuant to the Speights Objection, the Debtors request that each and every claim filed by Speights — a total of 2,938 claims — be disallowed on the grounds that Speights lacked proper authority to file those claims.[1]

The categories of Speights Claims to which the Debtors object are briefly outlined below. All are based on Speights' lack of authority to bring the claims. Some claims fall into multiple categories:

- No 2019 Statement: 208 Claims signed and filed by Speights in 2003 were never listed in Speights' December 2004 Verified 2019 Statement. These claims plainly fail on the ground of lack of authority. A list of these claims is attached as Exhibit H to the Speights Objection;

- Buildings and Job Sites: 358 Claims were signed and filed by Speights on behalf of "Buildings" and "Job Sites." "Buildings" and "job sites" have no legal standing to file claims and Speights had no authority to bring claims on their behalf. A list of these claims is attached as Exhibit I to the Speights Objection;

- Anderson Memorial 1992 Original Complaint: 787 Claims signed and filed by Speights cite to a 1992, superseded complaint in the *Anderson Memorial* case as the basis for Speights' representation. As described in the Objection in more detail, in *Anderson Memorial*, filed in Speights' home state of South Carolina, Speights initially sought certification of a nationwide class of building owners to bring asbestos property damage claims. In 1994, the South Carolina court struck from the original complaint the claims of non-residents on the grounds that claims arising outside of South Carolina were prohibited by South Carolina's door closing statute; in 1996, the same court denied reconsideration and adopted in full the 1994 order striking non-resident claims. A second amended *Anderson Memorial* complaint, limited to South Carolina claims, was filed in

---

[1]    Consistent with the Debtors' proposed PD Objections CMO, filed with this Court on July 13, 2005, the Debtors reserve all other objections on these Speights Claims. As set out in the PD Objections CMO, the Debtors expect to make all other substantive objections to all claims, including Speights Claims, by September 1, 2005.

3

1996 and is currently pending. Nearly 800, non-South Carolina PD claims signed and filed by Speights cite to the 1992 rejected and superseded *Anderson Memorial* complaint as the basis for Speights' representation of those claims. This outdated complaint does not provide Speights with authority to file these claims. A list of these claims is attached as Exhibit J to the Speights Objection;

- Anderson Memorial 2001 Orders: 59 Claims signed and filed by Speights are brought on behalf of South Carolina entities for which Speights' authority to file is allegedly based on 3 South Carolina pleadings from 2001, including 2 that were entered by the South Carolina court *after* the automatic stay went into effect. As described further in the Objection, as the basis for Speights' supposed representation of these claimants, Speights' Verified 2019 Statement cites to (1) a February 9, 2001, ex parte, "emergency" conditional class certification (in a 10 year old case!) of asbestos property damage claims for South Carolina buildings, entered by Speights' South Carolina home state court at Speights' request in response to concerns that Grace might file Chapter 11; and (2) Orders entered by the same South Carolina state court in June and July 2001, more than three months after Grace had filed Chapter 11 and provided notification to the South Carolina court of the automatic stay. These South Carolina orders are null and void, have no legal effect, and do not provide Speights with authority to file these claims. A list of these claims is attached as Exhibit K to the Speights Objection;

- Building Questionnaires: 15 Claims signed and filed by Speights cite as authority for filing exemplar "building questionnaires" that do not reflect any signature by any client. Speights has shown no authority to bring these claims. A list of these claims is attached as Exhibit L to the Speights Objection;

- Undefined Symbol "E": 22 Claims signed and filed by Speights cite the undefined symbol "E" as the basis for authority to file. Speights' Verified 2019 Statement supports no finding that Speights has authority to bring these claims. A list of these claims is attached as Exhibit M to the Speights Objection;

- Supply Stores: 31 Claims were signed and filed by Speights on behalf of construction companies, supply stores or contractors. These entities were more likely to have bought Grace product for use on other job sites than to have used any product in a manner giving rise to a proper PD claim in this matter. Further, Speights does not even provide street addresses for some of these purported claimants. The Debtors object to all of these claims on the ground that Speights did not have authority to file them. A list of these claims is attached as Exhibit N to the Speights Objection;

- Exemplar Contracts: 1,690 Claims signed and filed by Speights cite as authority to file one of ten "exemplar" contracts identified on the Verified 2019 Statement as K-1 through K-10. These 'exemplar' contracts appear deeply flawed; the Debtors object to Speights' authority to bring these claims. A list of these claims is attached as Exhibit O to the Speights Objection.

- All 2,938 Claims Signed By Attorneys Daniel Speights and Amanda Steinmeyer: All 2,938 claims submitted by Speights were signed by one of two attorneys from that firm.

4

While under Bankruptcy Rule 9010(c) there is a presumption of authority when an attorney signs a proof of claim on behalf of a client, this presumption must fail for claims signed by these two attorneys given the factual record of these attorneys' claims-filing practices. A list of these claims is attached as Exhibit P to the Speights Objection.

While, as outlined above, there are multiple grounds for asserting that Speights had no authority to file the Speights Claims, the Speights Objection relates solely to one issue: Speights' lack of authority to file the claims. Thus, it is very focused and essentially procedural. It should be considered a non-substantive objection. However, to the extent Local Rule 3007 applies to the Speights Objection, the Debtors request that this Court waive: (i) the limitations concerning the number of claims that may be subject to a substantive omnibus objection and (ii) the requirement that the Debtors file all substantive objections to a particular Claim in a single objection. Rather than raising all substantive objections with respect to the Speights Claims in the first instance, the Debtors have focused the Speights Objection on this procedural deficiency in an effort to eliminate hundreds if not thousands of claims, prior to the Court having to adjudicate the merits of any legitimate claims.

### Background

1.      By an Order dated April 25, 2002 (the "Bar Date Order"), this Court set March 31, 2003 as the last date for filing proofs of claim for all pre-petition claims relating to asbestos property damage (the "Bar Date). The Bar Date Order also approved a specialized proof of claim form for asbestos property damage claims (the "Asbestos PD Proof of Claim Form"). The Asbestos PD Proof of Claim Form and related documents were the subject of months of negotiations among the Debtors and the Asbestos Property Damage Creditors' Committee and hours of hearings before the Court.

2.      At the time these chapter 11 cases were commenced, there were fewer than 10 asbestos property damage cases pending against the Debtors. Despite this fact, 4319 Asbestos

PD Proofs of Claim were filed. Speights signed and filed 2,938 of these Asbestos Proofs of Claim. This constitutes 75% of all Asbestos PD Proofs of Claim filed against the Debtors' estates. The Debtors believe these claims were filed without appropriate authorization and thus contain dispositive, procedural deficiencies which can be disposed of by the Court promptly and the claims disallowed and expunged.

**The Debtors' Request for Leave to Streamline the Objections to the Unauthorized Claims**

3.    The deficiencies in the Speights Claims outlined in the Speights Objection set the Speights Claims apart from the remainder of the Asbestos PD Claims.

4.    Further, while investigation continues, the Debtors are beginning to learn that Speights has similarly filed -- and withdrawn when challenged -- massive volumes of asbestos property damage claims in other pending asbestos bankruptcies. Based on the simple volume alone, one can only assume that those claims never had merit when filed in the first place. Notably, as in this case, Speights' practice has apparently been to try to negotiate and withdraw those claims before discovery can proceed or his practices subjected to judicial scrutiny. As examples:

- In *Federal Mogul,* Speights filed 2,915 asbestos property-damage claims constituting 78.5% of all such claims that were filed. Through two omnibus objections, *Federal Mogul* objected to all Speights Claims; many of the deficiencies cited appear to be identical to flaws in the claims Speights filed in this case. Apparently through negotiation, the parties in *Federal Mogul* eventually entered into a stipulation by which Speights agreed to withdraw, with prejudice, 1,228 of those claims. *See, e.g.* Order Approving Stipulation Withdrawing (i) Certain Claims Filed by the Law Firm of Speights & Runyan and (ii) the Debtors' Procedural Objections to Other Claims, In re Federal-Mogul Global Inc., et al., Case No. 01-10578 (AMW) (Bankr. D. Del., March 8, 2005) (Docket No. 7097).

- In *Armstrong World Industries,* Speights filed 415 asbestos property damage claims on behalf of 330 claimants, constituting 71% of the total asbestos property damage claims received by the Debtor. Apparently, each of the Speights Claims in that case was

6

similarly signed by Amanda Steinmeyer of the Speights firm, with no accompanying power of attorney provided. *Armstrong* filed a Motion of the Debtors to Compel Compliance by Speights & Runyan and Bilzen Sumberg Dunn Baena Price & Axelrod LLP with Bankruptcy Rule 2019, or, Alternatively, to Strike their Appearance on Behalf of Certain Creditors, In re Armstrong World Indus., Case No. 00-04471 (RJN) (Bankr. D. Del. Aug. 2, 2002) (Docket No. 2920). Once again, the parties ultimately seem to have negotiated these claims privately, eventually settling all of them for $2 million in cash payments. *See* Agreed Motion of Armstrong World Industries, Inc. for Order Approving and Authorizing Settlement and Compromise, In re Armstrong (April 4, 2003) (Docket Nos. 4033, 4429).

- In *Owens Corning*, the record reflects that once again the Debtors objected to 366 Speights Claims and, two months later, by agreed stipulation of the parties Speights voluntarily withdrew 328 of those claims and agreed to mediate the rest. *See* Thirteen Omnibus (Substantive) Objection to Certain Asbestos-Related Property Damage Claims, In re Owens Corning, et al., Case No. 00-3837 (JKF) (Bankr. D. Del. Sept. 10, 2003) (Docket No. 9441); Stipulation and Order Regarding Thirteenth Omnibus (Substantive) Objection to Asbestos-Related Property Damage Claims Filed by Speights & Runyan, In re Owens Corning (Nov. 18, 2003) (Docket No. 10314).

- In *U.S. Mineral*, on April 7, 2005, the Futures' Representative filed two omnibus objections to 300 asbestos property damage claims filed by Speights. Apparently, within two weeks, Speights withdrew 132 of those claims and, in turn, the omnibus objections were withdrawn. *See* (First) Omnibus Objection to Claims Filed Against the Debtor (Substantive) Filed by Walter J. Taggart; (Second) Omnibus Objection to Claims Filed Against the Debtor (Substantive) Filed by Walter J. Taggart; *see generally* In re United States Mineral Prod., Case No. 01-2471 (JKF) (Bankr. D. Del. Apr. 7, 2005) (Docket Nos. 2612, 2613, 2615 - 2746, 2897 -98).

    5.    The Debtors have not yet determined what, if any, discovery went forward in these other bankruptcy matters into the issue of Speights' authority to file in the first place the nearly 2000 claims he later agreed to withdraw by stipulation.[2]

---

[2]    The Debtors are now aware that on May 3, 2002, well before the above record had been developed, Daniel Speights testified in open court as to why Speights had filed 415 Proofs of Claim late in the Armstrong case. It does not appear from the transcript that the parties had taken discovery on this issue before Mr. Speights took the stand. In light of the development of recent facts, Mr. Speights' responses to the Court's questions are quite curious. E.g. In re Armstrong, 5/3/02 Tr. at 50 (Court: "Let me rephrase the question. For the purposes of filing a proof of claim or otherwise representing these particular clients in this bankruptcy, what was the most recent date on which you were contacted, or retained, or hired? A: And the answer is I don't know, but an amount -- a matter of years. Q: A matter of years? A: Yes.").

7

6.    As a result, the Debtors have determined that filing an Omnibus Objection to the Speights Claims on solely this procedural deficiency will streamline the claims review and objection process and potentially save the Debtors and the Court significant time in adjudicating the claims.

7.    Local Rule 3007-1, however, technically defines an objection based on lack of authority as substantive.  As a result, without relief from the Local Rule, Debtors would not be permitted to file objections to all 2,938 claims in one Omnibus Objection (it would actually have to file 20 separate Omnibus Objections of 150 claims each) and would require the Debtors to assert all substantive objections it may have to the Speights Claims, not just the lack of authority objection.

8.    Given the true procedural nature of the Speights Objection, proceeding in compliance with Local Rule 3007-1 makes no practical sense.  The Speights Objection is much more in the nature of the type of objection contemplated by the Local Rules as being "non-substantive."

9.    If the Speights Objection is sustained, neither the Debtors nor the Court will be required to spend any more time on claims which are deficient on their face.  This, in turn, will free up the Debtors and the Court to devote more time to the orderly disposition of the remaining legitimate claims and the other significant issues remaining in these chapter 11 cases.

**Relief Requested**

10.   Pursuant to Del. Bankr. L R 1001-1(c), the Debtors seek a limited waiver of the requirements and restrictions of Local Rule 3007-1 to file the Speights Objection with respect to (i) the limit on the number of claims that may be subject to a substantive omnibus claims

8

objection; and (ii) the requirement that debtors assert all substantive objections to a particular claim in a single omnibus objection.

11.     For the reasons indicated above, the Debtors believe that the relief requested is in the best interest of the estates, all creditors, and other parties in interest.

### Notice

12.     Notice of this Motion has been given to (i) the Office of the United States Trustee (with exhibits), (ii) counsel to the debtor in possession lenders (with exhibits), (iii) counsel to each official committee appointed by the United States Trustee (with exhibits), (iv) those parties that requested papers under Fed. R. Bankr. P. 2002 (exhibits available upon request), (v) counsel to the Future Claimants' Representative (with exhibits), and (vi) Speights & Runyan (with exhibits). In light of the nature of the relief requested, the Debtors submit that no further notice is required.

### No Prior Request

13.     No prior request for the relief sought in this Motion has been made to this or any court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form of the proposed order attached hereto as Exhibit 2, (i) waiving certain requirements and restrictions imposed by Local Rule 3007-1; and (ii) granting such other and further relief as is just and proper.

Dated: July 18, 2005

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Michelle H. Browdy
Janet S. Baer
Jonathan P. Friedland
Andrea L. Johnson
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG
JONES & WEINTRAUB PC

Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
Scotta E. McFarland (Bar No. 4184)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier
19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and Debtors in
Possession