THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**Objection Deadline: August 12, 2005 at 4:00 p.m.**
**Hearing Date: August 29, 2005 at 12:00 p.m.**

## DEBTORS' MOTION FOR AN ORDER AUTHORIZING THEIR ENTRANCE INTO SETTLEMENT AGREEMENTS WITH CERTAIN TAX AUTHORITIES AND DIRECTING DEBTORS TO PAY RELATED TAX CLAIMS OR RECEIVE TAX REFUND

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by

their undersigned counsel, respectfully move this Court (the "Motion") for the entry of an order

authorizing the Debtors to enter into settlement agreements with certain state and local tax

authorities (collectively, the "Settlement Agreements") and directing the Debtors to

(i) immediately pay an aggregate amount of approximately $1.39 million in taxes and interest;

(ii) receive approximately $2.51 million in refunds of tax and interest; and (iii) agree to an

unsecured tax claim in the amount of approximately $1.79 million in taxes and interest that will

be paid upon the Debtors' emergence from bankruptcy in accordance with the bankruptcy

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

procedures applying to general unsecured claims. As will be explained more fully herein, approval of this Motion will yield an immediate net refund of approximately $1.11 million and an overall tax settlement at approximately 15% of the total amounts assessed. In support thereof, the Debtors respectfully submit as follows:

### Jurisdiction

1.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory basis for the relief requested herein is section 105(a) of title 11 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code") and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Background

3.      On April 2, 2001, the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). These Chapter 11 Cases have been consolidated for administrative purposes only and pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4.      The Settlement Agreements concern tax years of the Debtors beginning in January 1, 1988 through December 31, 1996 and relate to the following state or local taxes: Massachusetts Corporation Excise Tax, Wisconsin Corporation Franchise Tax and the New York City General Corporation Business Tax, all described in detail below.

### Massachusetts Corporation Excise Tax

5.      The Massachusetts General Law Act imposes an annual corporation excise tax on every foreign corporation authorized to do business in the Commonwealth of Massachusetts.

2

Mass. Gen. Laws ch. 63, § 39. Corporations must file an annual corporation excise tax return and may file on a combined basis. The tax is imposed at a rate of 9.5% for the years at issue and is administered by the Massachusetts Department of Revenue ("MDR").

6.     In 1998, the MDR issued assessments against W.R. Grace & Co.-Conn. ("Grace-Conn.") aggregating $823,871 in additional tax plus interest for the 1988 through 1990 tax years. The assessments related to the taxation of capital gains and stock sales in 1988 and investment income, which was primarily received from an 80% owned subsidiary of Grace-Conn. during this period. Grace-Conn. allocated these items of passive income to New York State,[2] which was the commercial domicile of the Debtors during these tax periods, and took the position that such nonbusiness income was not subject to tax by Massachusetts.

7.     Under Massachusetts' law at that time a taxpayer could not dispute an unpaid tax assessment. Accordingly, Grace-Conn. paid the assessments of tax plus interest and filed abatement claims on February 17, 2000, for the entire tax assessment even though all assessed issues were not subsequently contested. After years of negotiations culminating in several meetings with the MDR, on April 11, 2005, the state offered to settle the dispute. Under the settlement, Grace-Conn. would be entitled to a refund of $567,979, plus accrued interest through June 30, 2005 of $1,941,092, for a total refund of $2,509,071 (the "Proposed Tax Refund").

8.     With respect to the Proposed Tax Refund, the Debtors do not believe that further negotiations with MDR will elicit a better settlement offer. If no negotiated settlement is reached, then the claims will be argued before the Appellate Tax Board. There is no certainty that the Appellate Tax Board's conclusion will be more favorable than the Proposed Tax Refund.

---

[2] New York State did not tax these items of income.

3

## Wisconsin Corporation Franchise Tax

9.      The State of Wisconsin ("Wisconsin") imposes a franchise tax ("WFT") on foreign corporations for the privilege of doing business in the state. The tax is imposed at the rate of 7.9% of Wisconsin net income. The Wisconsin Department of Revenue ("WDR") administers the corporation franchise tax. There are three different sets of WFT assessments relating to the tax periods of two different taxpayers: Grace-Conn. and WRG (Delaware) Inc., a wholly owned subsidiary of Grace-Conn, during the tax periods in dispute. However, because on September 23, 1996, WRG (Delaware) Inc. was merged into Grace-Conn., Grace-Conn. is a successor-in-interest to the assets and liabilities of WRG (Delaware) Inc. and, therefore, responsible for the WFT assessments against the Debtors.

10.     An assessment was made against WRG (Delaware) Inc. on March 15, 2000, for the 1993 through September 1996 tax years totaling $14,737,541 tax and interest and represents a general unsecured claim against the Debtors' estates. Assessments were made against Grace-Conn. on August 22, 2000 for the 1988 - 1996 tax years aggregating $5,638,054 and constitute priority claims against the Debtors' estates. Accordingly, assessments aggregating $20,375,595 were issued for the '88 through '96 tax years. The primary issues on audit were the taxation of investment income and capital gains plus the computation of related expenses.

11.     Wisconsin has agreed to a global settlement ("Proposed WI Settlement Agreement") whereby (i) the assessments aggregating $14,737,541 against WRG (Delaware) Inc. constituting general unsecured claims will be settled for an agreed claim of $1,794,231 and (ii) the assessments aggregating $5,638,054 against Grace-Conn. constituting priority claims will be resolved for an immediate payment of $1,267,854. The Proposed WI Settlement Agreement represents a concession by the WDR of approximately 85% of the original aggregate assessments.

4

**W. R. Grace & Co.-Conn.**
**Wisconsin Franchise Tax -Years 1988 – 1996 (Priority Claims)**

|  |  | Initial Assessment | Revised Assessment | Total Concessions |
|---|---|---|---|---|
| Yrs. 1988-91 | Tax | 1,202,153 | 518,355 | 683,798 |
|  | Interest | 2,237,609 | 749,499[3] | 1,488,110 |
| Yrs. 1992-96 | Tax | 957,062 | - 0 - | 957,062 |
|  | Interest | 1,241,230 | - 0 - | 1,241,230 |
|  | Total (Immediate Payment) | 5,638,054 | 1,267,854 | 4,370,200 |

**WRG (Delaware) Inc.**
**(W. R. Grace & Co.-Conn. is a Successor-in-Interest)**
**Wisconsin Franchise Tax Assessment - Periods: 12/93 - 9/96 (Unsecured Claim)**

|  | Initial Assessment | Revised Assessment | Total Concessions |
|---|---|---|---|
| Tax | 6,811,811 | 1,087,000 | 5,724,811 |
| Interest | 7,925,730 | 707,231[3] | 7,218,499 |
| Total (Agreed Claim) | 14,737,541 | 1,794,231 | 12,943,310 |
| **Total – Wisconsin Claims** | **20,375,595** | **3,062,085** | **17,313,510** |

12.    The Proposed WI Settlement Agreement is particularly favorable to the Debtors in that it resolves all of the Wisconsin tax disputes for 15% of the contested amounts and requires an immediate payment with respect to approximately 6% of the aggregate contested amounts. If this settlement is not approved, the Debtors will likely incur substantial legal fees and expenses litigating the assessments to final judgment, with no assurance of a more favorable resolution. Further, interest would likely begin to accrue on the contested amounts in excess of the interest rate charged under Debtors' Debtor-in-Possession ("DIP") facility or earned by the

[3] Interest stopped accruing as of April 2, 2001, the date the Debtors filed the Chapter 11 Cases.

91100-001\DOCS_DE:110203.1

Debtors on their cash deposits. Accordingly, the Debtors have concluded that the Proposed WI Settlement Agreement is the most favorable resolution of this matter.

## New York City General Corporation Business Tax

13.    The New York City General Corporation Business Tax ("NYCGCBT") is imposed on every corporation if it is doing business, employing capital, or owning or leasing property in the city in a corporate capacity. The NYCGCBT is imposed at whichever of the following rates will produce the greatest tax: (i) 8.85% of allocated entire net income; (ii) 1.5 mills for each dollar of the taxpayer's total business and investment capital allocated within New York City, subject to a maximum tax of $350,000; (iii) 8.85% of the allocated income-plus-compensation base; or (iv) $300. The New York City Commissioner of Finance administers the NYCGCBT.

14.    For the 1991-1994 tax years, the New York City Commissioner of Finance issued assessments on July 29, 2004, that currently aggregate $423,083 in tax, interest and penalties against W. R. Grace & Co. W. R. Grace & Co. was a New York corporation and the parent of the Debtors' federal consolidated group from May 25, 1988, until September 29, 1996, at which time it ceased to be a member of the Debtors' federal consolidated group and changed its name to Fresenius Medical Care Holdings, Inc. ("Fresenius").[4]

---

[4]    As of September 29, 1996 as part of the separation of Grace's worldwide healthcare business from the Debtors' other operations ("Reorganization #1"), Grace-NY changed its name to Fresenius National Medical Care Holdings, Inc. and ceased to be the common parent corporation of the Debtors' historical businesses. As a result of Reorganization #1, from September 29, 1996, through the taxable year ending March 31, 1998, the common parent of the Debtors' federal tax consolidated group was W. R. Grace & Co. (federal taxpayer identification number 65-0654331, "Grace Delaware #1").

On April 1, 1998, as part of the separation of the Debtors' worldwide packaging business from the Debtors' other operations ("Reorganization #2"), Grace Delaware #1 changed its name to Sealed Air Corporation and ceased to be a common parent corporation of the Debtors' historical businesses. Accordingly, from April 1, 1998, to the present time, the common parent of the Debtors' federal tax consolidated group is W. R. Grace & Co. (federal tax identification number 65-0773649, "Grace Delaware #2").

6

15.    The primary issues on audit were the fair market value of investments in subsidiaries, the imposition of penalties and other issues. The New York City Commissioner of Finance has tentatively agreed as follows (the "Proposed NYC Settlement Agreement").

|  | NYC Initial Assessment | NYC Revised Assessments | NYC Concessions |
|---|---|---|---|
| Tax on Capital | 143,388 | 43,981 | 99,407 |
| Interest[5] | 233,249 | 73,550 | 159,699 |
| Penalty | 37,074 | - | 37,074 |
| Sub-total | 413,711 | 117,531 | 296,180 |
| Income Tax | 9,372 | 9,372 | - |
| **Total** | **423,083** | **126,903** | **296,180** |

16.    On February 6, 2003, the Debtors entered into a Settlement Agreement and Release of Claims with Fresenius (the "Fresenius Agreement"). Under the Fresenius Agreement, the Fresenius Group agreed to make certain payments (the "Fresenius Payment") if certain preconditions are met. One of the preconditions for the Fresenius Payment is that Fresenius be released from all Indemnified Taxes, as such term is defined in the Fresenius Agreement. The NYCGCBT assessments are Indemnified Taxes under the Fresenius Agreement.

17.    The Fresenius Agreement gives Grace-Conn. the sole authority to act with respect to Indemnified Taxes. However, under the Fresenius Agreement, none of the Debtors may voluntarily agree to the payment, assessment or other resolution of any Indemnified Taxes unless (a) the Debtors have obtained authorization from this Court to pay in full any such Indemnified Taxes pursuant to a final determination or (b) Fresenius has consented in writing to such agreement by the Debtors.

18.    Therefore, in accordance with the Fresenius Agreement, the Debtors request this Court to direct them to immediately pay the Indemnified Taxes to the NYCGCBT. The Debtors

---

[5]  Interest is currently accruing at 8% and is calculated through June 30, 2005.

submit that directing them to immediately pay such Indemnified Taxes is in the best interests of their estates and their creditors for several reasons. First, payment of such Indemnified Taxes complies with the Fresenius Agreement that was approved by this Court. Second, such payment will reduce interest expense with respect to such Indemnified Taxes. Indeed, interest is currently accruing on the NYC tax liability at the rate of 8% that is in excess of the rate charged under the Debtors' DIP facility and in excess of the amounts earned by the Debtors on cash deposits. Third, resolution of this tax dispute by an immediate payment of $126,903 will obtain release for the Debtors from $296,180 of assessed taxes, interest and penalties representing a concession by the New York City Commissioner of Finance of approximately 70% of the contested amounts.

### Relief Requested

19.     By this Motion, the Debtors seek an order authorizing the Debtors to enter into the Settlement Agreements and directing the Debtors to (i) make immediate payments aggregating approximately $1,394,757 pursuant to such Settlement Agreements and (ii) agree to a general unsecured claim of approximately $1,794,231 with the Wisconsin Department of Revenue to be paid upon the Debtors' emergence from bankruptcy in accordance with the bankruptcy procedures applying to general unsecured claims. Further, the Debtors seek an order directing the Massachusetts Department of Revenue to immediately pay to the Debtors the Proposed Tax Refund of approximately $2,509,071, pursuant to its Settlement Agreement with the Debtors.

### Basis for Relief

20.     The Court's general equitable powers are codified in section 105(a) of the Bankruptcy Code. Section 105(a) empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a).

8

21.     The Debtors respectfully submit that entering into the Settlement Agreements is in the best interests of their estates and their creditors and should be approved by the Court pursuant to Fed. R. Bankr. P. 9019, which authorizes this Court to approve a compromise settlement entered into by a debtor. The decision whether to accept or reject a compromise lies within the sound discretion of the bankruptcy court. In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986). Approval of a compromise settlement is appropriate if it is in the "best interests of the estate." Id.

22.     The settlement need not be the best that the debtor could have achieved, but only must fall "within the reasonable range of litigation possibilities." In re Penn Central Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979). In making its determination, a court should not substitute its own judgment for that of the debtor. Neshaminy Office, 62 B.R. at 803. Moreover, it is not necessary to conduct a "mini trial" of the facts or the merits underlying the dispute. In re Grant Broadcasting, 71 B.R. 390, 396 (E.D. Pa. 1987); see also In re A & C Properties, 784 F.2d 1377, 1384 (9th Cir.), cert. denied, 479 U.S. 854 (1986). Rather, the court need only consider those facts that are necessary to enable it to evaluate the settlement and to make an informed and independent judgment about the settlement. Penn Central, 596 F.2d at 1114; see also In re Energy Cooperative, Inc., 886 F.2d 921, 924-25 (7th Cir. 1989).

23.     For the reasons set forth herein, the Settlement Agreements are in the best interests of the Debtors' estates and their creditors.

24.     With respect to the Proposed Tax Refund, the Debtors do not believe that further negotiations with MDR will elicit a better settlement offer. The Proposed Tax Refund represents a concession by the MDR of approximately 69% of the tax contested. If no negotiated settlement is reached, then the claims will be argued before the Appellate Tax Board and there is

9

no certainty that the Appellate Tax Board's conclusion will be more favorable than the Proposed Tax Refund.

25.    With respect to the Proposed WI Settlement Agreement, and the Proposed NYCGCBT Settlement Agreement, each taxing authority is conceding 85% and 70% of the respective aggregate assessments.  If the Debtors do not resolve these tax disputes through the aforementioned Settlement Agreements, interest will continue to accrue on the outstanding tax disputes in excess of the amounts the Debtors are charged under the DIP facility or amounts currently earned on cash deposits.  In the absence of a settlement, the Debtors will likely be forced to incur substantial legal fees and expenses to litigate the various assessments to final judgment and a more favorable outcome is highly uncertain.

26.    Based on the foregoing, the Debtors have concluded that the Settlement Agreements and Proposed Tax Refund represent the best settlements attainable, are in the estates' best interest and, therefore, the order should be granted.

## Notice

27.    Notice of this Motion has been given to:  (i) the United States Trustee, (ii) counsel to the DIP lender, (iii) counsel to all official committees appointed by the United States Trustee, and (iv) all those parties that requested service and notice of papers in accordance with Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

## No Prior Request

28.    No prior application for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an Order (a) authorizing the Debtors to enter into the Settlement Agreements; (b) directing the Debtors to agree that the assessments against WRG (Delaware) Inc. constituting general unsecured claims will be an agreed claim subject to the Debtors' bankruptcy proceedings;  (c) directing the Debtors to immediately pay taxes owing under the Proposed WI Settlement Agreement and the Proposed NYC Settlement Agreement; (d) directing the Massachusetts Department of Revenue to immediately pay to the Debtors the Proposed Tax Refund as set forth in the Proposed MA Settlement Agreement and (e) granting such other relief as the Court deems just and proper.

Dated: July 21, 2005

Respectfully submitted,

KIRKLAND & ELLIS
James H.M. Sprayregen, P.C.
Janet S. Baer
Lori Sinanyan
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES &
WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession

91100-001\DOCS_DE:110203.1