THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

Objection Deadline: August 12, 2005 at 4:00 p.m.
Hearing Date: August 29, 2005 at 12:00 p.m.

## DEBTORS' MOTION FOR AN ORDER APPROVING THEIR PARTICIPATION IN SETTLEMENT FUND ESTABLISHED BY MARSH AND MCLENNAN COMPANIES, INC. UNDER SETTLEMENT AGREEMENT WITH NEW YORK ATTORNEY GENERAL AND SUPERINTENDENT OF INSURANCE

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully move this Court (the "Motion") for entry of an order approving the Debtors' participation in the settlement fund (the "Settlement Fund") established by Marsh & McClennan Companies, Inc. ("MMC") under the Agreement between the Attorney General of the State of New York (the "Attorney General") and the Superintendent of Insurance of the State of New York (the "Superintendent"), and MMC and Marsh Inc. and their subsidiaries and affiliates (collectively, "Marsh") dated January 30, 2005 (the "Settlement Agreement," a copy of which is attached as Exhibit A).

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Pursuant to the Settlement Agreement, the Debtors have received two offer letters from MMC dated May 20, 2005 (the "Offer Letters," copies of which are attached as <u>Exhibit B</u>) setting forth the amounts that the Debtors are eligible to receive from the Settlement Fund, and the related terms and conditions of the settlement offer. The first Offer Letter received related to insurance policies as to which Marsh had acted as the Debtors' broker. The second Offer Letter, which was received several months after the first, related to surety bonds as to which Marsh had acted as the Debtors' broker. Except for the amounts involved, the terms and conditions of each Offer Letter were substantially identical. The amounts that the Debtors are eligible to receive under the Offer Letters total One Million Three Hundred Eighty Five Thousand Three Hundred Six Dollars and Eighty Eight Cents ($1,385,306.88) to be paid in four annual installments beginning on November 1, 2005. The deadline for electing to participate in the Settlement Fund is September 20, 2005. The Debtors have determined that it is in the Debtors' and the estates' best interest to accept the settlement offers contained in the Offer Letters, or in any other offer letter that the Debtors may receive offering additional settlement amounts under the Settlement Agreement, and participate in the Settlement Fund. In support of this Motion, the Debtors respectfully state as follows:

### **Jurisdiction**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this motion is proper under 28 U.S.C. § 1408.

2. The statutory predicates for this Motion are sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

91100-001\DOCS_DE:110268.1

## Background

3.  On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4.  During the years 2001, 2002, 2003 and 2004, the Debtors purchased certain policies of insurance from various insurance carriers for which Marsh acted as the Debtors' broker. A list of these policies is attached to the first Offer Letter that the Debtors received. According to the attachments to the first Offer Letter, the Debtors paid on these policies an aggregate of $48,605,602.03 in premiums and/or consulting fees; and Marsh recorded attributed contingent commissions or overrides of $2,680,607.99.

5.  During the years 2001, 2002 and 2003, the Debtors purchased certain surety bonds from various surety companies for which Marsh acted as the Debtors' broker. A list of these bonds is attached to the second Offer Letter that the Debtors received. According to the attachments to the second Offer Letter, the Debtors paid on these bonds an aggregate of $109,027.00 in premiums; and Marsh recorded attributed contingent commissions or overrides of $7,644.16.

6.  The premium amounts stated in the Offer Letters are substantially consistent with the Debtors' own records.

7.  The Debtors have no information regarding the recorded contingent commissions and overrides, which related to payments from insurance carriers and surety companies to Marsh.

8.  As outlined in the Settlement Agreement, on October 14, 2004, the Attorney General commenced an action against MMC and Marsh Inc. (the "Complaint"); and the

91100-001\DOCS_DE:110268.1

Superintendent issued a citation dated October 21, 2004, and an amended citation dated October 25, 2004 (collectively, the "Amended Citation"), against MMC and certain of its subsidiaries. The Attorney General and the Superintendent conducted related investigations, and alleged that Marsh unlawfully deceived its clients by (a) steering clients' insurance business to favored insurance companies, and (b) soliciting fictitious bids in order to assure that insurance policies were placed to benefit favored insurers.

9. The Settlement Agreement further states that Marsh entered into the Settlement Agreement without admitting or denying any claim in the Complaint or the assertions in the Amended Citation, prior to any court making any findings of fact or conclusions of law pursuant to any allegations by the Attorney General or the Superintendent.

10. The Settlement Agreement provides that Marsh shall pay Eight Hundred Fifty Million Dollars ($850,000,000) into the Settlement Fund over the next four years in four annual payments to be paid to policyholder clients who retained Marsh to place, renew, consult on or service insurance where such placement resulted in contingent commissions or overrides. All the money paid into the Settlement Fund and any interest earned thereon shall be paid to such policyholder clients pursuant to the Settlement Agreement.

11. The Settlement Agreement further provides that Marsh shall (a) by April 30, 2005, calculate, in accordance with a formula approved by the Attorney General, the amount of money entitled to be received by each of the US policyholder clients who retained Marsh to place, renew, consult on or service insurance with inception of renewal dates between January 1, 2002, through December 31, 2004 (the "Relevant Period"), and thereafter (b) file a certified report with the Attorney General and the Superintendent setting forth each client's name and address, information respecting the relevant policies and the amount of premiums or consulting

4

fees, amount of contingent commission or override revenue recorded by Marsh during the Relevant Period attributable to each policy, and the amount of contingent commission or override revenue each client is eligible to receive for each such policy and in the aggregate for all such policies pursuant to the Settlement Agreement; and (c) by May 20, 2005, send a notice, subject to the approval of the Attorney General and the Superintendent, to each client eligible to be paid from the Settlement Fund, setting forth the information described in clause (b) above and stating that the amount paid may increase if there is less than full participation by eligible clients in the Settlement Fund.

12.     Under the Settlement Agreement, clients eligible to receive a distribution from the Settlement Fund shall have until September 20, 2005, to request a distribution; and those who elect to receive a cash distribution (the "Participating Policyholders") shall tender a release in the form attached as Exhibit 2 to the Settlement Agreement (the "Release").

13.     The payments into the Settlement Fund shall be as follows: $255 million into the Settlement Fund on or before June 1, 2005, $255 million on or before June 1, 2006, $170 million on or before June 1, 2007, and $170 million on or before June 1, 2008. On November 1, 2005, June 30, 2006, June 30, 2007, and June 30, 2008, Marsh shall pay proportionally to each Participating Policyholder as much of that participating Policyholder's aggregate share of the Settlement Fund as possible with the funds then available in the Fund pursuant to a calculation approved by the Attorney General and the Superintendent. Within forty-five (45) days after each payment from the Settlement Fund, Marsh shall file a certified report with the Attorney General and the Superintendent listing all amounts paid from the Settlement Fund.

14.     If any eligible client elects not to participate in the Settlement Fund or otherwise does not respond to the Offer Letters (the "Non-Participating Policyholders"), that client's

allocated share of the Settlement Fund may be used by Marsh to satisfy any pending or other claims asserted by policyholders relating to these matters. In no event shall a distribution from the Settlement Fund be made to any Non-Participating Policyholder until all Participating Policyholders have been paid their full aggregate amount due as calculated under the Settlement Agreement; nor shall total payments from the Settlement Fund to any Non-Participating Policyholder exceed 80% of that Non-Participating Policyholder's original allocated share. If any funds remain in the Settlement Fund as of June 20, 2008, such funds shall be distributed on a pro rata basis to the Participating Policyholders. In no event shall any of the funds in the Settlement Fund be used to pay attorney fees.

15. Each Release included with the Offer Letters defines "RELEASOR" to refer to W. R. Grace & Co., W. R. Grace & Co.-Conn. and any of their affiliates, subsidiaries, associates, general or limited partners or partnerships, predecessors, successors, or assigns, including without limitation any of their respective present or former officer, directors, trustees, employees, agents, attorneys, representatives and shareholders, affiliates, associated, general or limited partners or partnerships, heirs, executors, administrators, predecessors, successors, assigns or insurers acting on behalf of RELEASOR; and defines "RELEASEE" to refer to MMC and any of its subsidiaries, affiliates, associates, general or limited partners or partnership, predecessors, successors, or assigns, including without limitation any of their respective present or former officer, directors, trustees, employees, agents, attorneys, representatives and shareholders, affiliates, associated, general or limited partners or partnerships, heirs, executors, administrators, predecessors, successors, assigns or insurers.

16. Each Release provides that in consideration of the total payment set froth in the Release in accordance with the terms of the Settlement Agreement, RELEASOR does fully

release, waive and forever discharge RELEASEE from any and all claims, demands, debts, right, causes of action or liabilities whatsoever, including known and unknown clams, now existing of hereafter arising, in law, equity or otherwise, whether under state, federal or foreign statutory or common law, and whether possessed or asserted directly, indirectly, derivatively, representatively or in any other capacity (collectively, "claims"), to the extent any such claims are based upon, arise out of or related to, in whole or in part, any of the allegations, acts, omission, transactions, events, types of conduct or matters that are the subject of the Complaint, the Amended Citation, except for claims which are based upon, arise out of or relate to the purchase or sale of RELEASEE securities.

17. However, each Release further provides that if the total payment set forth in the Release is not made for any reason, then the Release shall be deemed null and void, provided that any payment received by RELEASOR shall be credited to RELEASEE in connection with any claims that RELEASOR may assert against Marsh, or that are asserted on behalf of RELEASOR, or by a class of which RELEASOR is a member, against RELEASEE.

### Relief Requested

18. By this Motion, the Debtors seek an order approving the Debtors' participation in the Settlement Fund, including without limitation its execution of the Releases, in accordance with the terms of the Settlement Agreement and the Offer Letters, and also in accordance with the terms of any other offer letter that the Debtors receive providing for any additional settlement amounts under the Settlement Agreement.

### Statutory Authority

19. This Court has statutory authority to authorize and approve the Debtors' participation in the Settlement Fund pursuant to sections 105 and 363(b)(1) of the Bankruptcy Code. A settlement of claims and causes of action by a debtor in possession constitutes a use of

property of the estate. See <u>Northview Motors, Inc. v. Chrysler Motors Corp.</u>, No. 98-3387, 1999 U.S. App. LEXIS 13403, at *11 (3d Cir. 1999). If a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. See id.

20. Bankruptcy Rule 9019 provides that, after notice and a hearing, a court may approve a proposed settlement or compromise. The decision whether to accept or reject a compromise lies within the sound discretion of the court. See <u>In re Resorts Int'l, Inc.</u>, 145 B.R. 412, 451 (Bankr. D. N.J. 1990); <u>In re Neshaminy Office Bldg. Assocs.</u>, 62 B.R. 798, 803 (Bankr. E.D. Pa. 1986).

21. In reviewing this Motion, the Court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." <u>In re Martin</u>, 91 F.3d 389, 393 (3d Cir. 1996). This requires court consideration of the following criteria: "(1) the probability of success in litigation, (2) the likely difficulties in collection, (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." <u>Id</u>.

22. Approval of the Debtors' participation in the Settlement Fund is in the best interests of the Debtors and their estates.

23. As the Offer Letters state, if the Debtors elect not to receive a distribution from the Settlement Fund, they will retain any rights to pursue an individual or class action against Marsh, including by participation in a putative class action against Marsh and other companies that is currently pending in the U.S. District court for the District of New Jersey entitled <u>In Re:</u>

Insurance Brokerage Antitrust Litigation, Civil No.04-5184 (FSH), MDL No. 1663 (the "New Jersey Class Action"), or any other pending actions.

24. Because the Complaint and the Amended Citation were settled without findings of fact or conclusions of law against Marsh, the Debtors have little if any information by which they can determine whether or not they have a claim against Marsh, much less by which they can estimate the amount of such claim. Furthermore, any investigation to obtain the necessary information would be a costly process, and entirely speculative as to its results. Therefore, the Debtors in all likelihood would not undertake such an investigation even in the absence of the opportunity to participate in the Settlement Fund.

25. Participation in the New Jersey Class Action would not involve the same burdens as pursuing an individual action. However, the consolidated complaint in the action has not yet been filed, and the class has not been certified. Any reasonable estimate of the prospects of this litigation cannot be obtained until long after the September 20, 2005 deadline for participation in the Settlement Fund.

26. By contrast to either bringing an individual action or participating in the New Jersey Class Action, participation in the Settlement Fund provides a specified settlement amount for the Debtors without any obligation to demonstrate that they suffered any actual harm or injury. The availability of the funds for the Settlement Fund is of course subject to the creditworthiness of Marsh, but the risks of this situation appear to the Debtors to be much lower than those of participating in a consolidated class action currently in its preliminary stages. In addition, if the full settlement amounts are not paid to the Debtors, the Releases are null and void, and the Debtors may pursue individual or class actions if they choose, subject only to the

deduction from their recoveries in such actions of any amounts that they receive from the Settlement Fund.

27. Basing the Debtors' participation in the Settlement Fund on the amount of contingent commission revenue ties the Debtors' recovery to the benefit to Marsh of the practices that gave rise to the Complaint and the Amended Citation, and to the amount of revenues attributable to the Debtors' policies and surety bonds. Under the circumstances, the Debtors consider this methodology fair and reasonable.

28. The proposed transaction does not adversely affect the Debtors' creditors. In lieu of possible claims that are very speculative in validity and amount, the Debtors are entitled to annual cash payments dependent only on Marsh's creditworthiness. The possibility of obtaining any funds from litigation, much less more funds than under the Settlement Fund, would be far less certain and subject to substantial delay. In addition, if the full settlement amounts are not paid to the Debtors, the Releases are null and void, and the Debtors may pursue litigation against Marsh for any damages in excess of the amounts that the Debtors receive from the Settlement Fund.

## Notice

29. Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to each official committee appointed by the United States Trustee, and (iv) those parties that requested papers under Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) approving the Debtors' participation in the Settlement Fund, including without limitation their execution of the Release, in accordance with the terms of the Settlement Agreement and the Offer Letters, and also in accordance with the terms of any other offer letter that the Debtors may receive providing for any additional settlement amounts under the Settlement Agreement; and (ii) granting such other and further relief as the Court deems just and proper.

Dated: July 25, 2005

Respectfully submitted,

KIRKLAND & ELLIS LLP
James H.M. Sprayregen, P.C.
Janet S. Baer
James W. Kapp III
Lori Sinanyan
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

_____
Laura Davis Jones (Bar No. 2436)
David Carickhoff (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession