IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

Objection Deadline: August 12, 2005 at 4:00 p.m.
Hearing Date: August 29, 2005 at 12:00 p.m.

## MOTION PURSUANT TO SECTIONS 105(A) AND 363 OF THE BANKRUPTCY CODE FOR THE ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO ACQUIRE CERTAIN ASSETS OF SINGLE-SITE CATALYSTS, LLC

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby submit this motion (the "Motion") for the entry of an order authorizing the Debtors to acquire the technology and certain assets of Single-Site Catalysts, LLC of Chester, Pennsylvania ("SSCL") for a $1.5 million cash payment at closing plus earnout payments estimated to equal $2.8 million (collectively, "Purchase Price") on a discounted basis over ten years.

In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this Motion is proper under 28 U.S.C. § 1408.

2.  The statutory predicates for this Motion are sections 105(a) and 363(b) of title 11 of the United States Code (as amended, the "Bankruptcy Code") and Rule 9019 the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background and Description of the Proposed Transaction

3.  On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4.  The acquisition would be made by the Debtors' Grace Davison business unit ("Davison"), which among other products, sells polymerization catalysts to polyolefin producers.

5.  One aspect of Davison's strategy is to increase the value of its business by expanding into those segments of the polyolefin catalyst market that are experiencing high growth. For example, Davison has entered into: (1) joint research and development projects with technology owners in next generation single site metallocene resins; (2) agreements to supply catalysts made in accordance with the recipes of customers for linear low density polyethylene; and (3) the acquisition of the polyolefin and polypropylene manufacturing assets of Borealis in 2002.

6.  The Debtors expect sales of Davison's existing portfolio of olefin polymerization catalysts, which includes chrome and Ziegler-Natta polymerization catalysts, to grow 5 to 8%

per year over the next five years. SSCL sells single site (metallocene) polymerization catalysts ("Metallocene Catalysts"), another type of olefin polymerization catalyst that is used in high performance polymers for such applications as high strength and high clarity food packaging. This segment is expected to grow between 15 to 20% per year, and the market for these catalysts is projected to be $140 million in 2010 and to exceed $270 million in 2015.

7. SSCL owns primarily Metallocene Catalyst intellectual property and has limited research and development assets. The technology was developed over a ten-year period and relates to the synthesis and manufacture of Metallocene Catalysts and their components. Accordingly, its products are supplied through contract manufacture by an affiliate, Norquay Technology, Inc. ("Norquay"), and its research is performed by independent consultants. Sales of SSCL in 2004 were $2.3 million and are projected to be $3.8 million in 2005.

8. Under the terms of the Letter of Intent which the Debtors have signed with SSCL, the Debtors will purchase all of SSCL's technology for Metallocene Catalysts and components, related trademarks, inventory (with an estimated value of $400,000), and customer contracts for $1.5 million to be paid at closing (the "Fixed Price"), and a ten-year earnout, payable quarterly, equal to 3% of net sales of products manufactured using the acquired technology below $5 million, 8% of net sales between $5 million and $10 million, and 5.5% of net sales exceeding $10 million (the "Contingent Payments"). The total discounted estimated Contingent Payments is $2.8 million. The Debtors would not purchase any cash and accounts receivable or real property from SSCL and would not assume any of SSCL's liabilities or contractual obligations other than those in the customer contracts.

9.   Closing of the transaction will be subject to Debtors' receipt, among other requirements, of a satisfactory supply agreement with SSCL's contract manufacturer, Norquay, and a service agreement with SSCL for development of new and existing products.

### Basis for Relief

10.   Section 105(a) of the Bankruptcy Code "permits the court to issue any order that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." A court has the statutory authority to authorize a debtor to use property of the estate pursuant to section 363(b)(1) of the Bankruptcy Code when such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. In re Delaware & Hudson Ry. Co., 124 B.R. 169 (D. Del. 1991); see also In re Bethlehem Steel Corp., 2003 WL 21738964 (S.D.N.Y. 2003) (requiring "a good business reason"); Fulton State Bank v. Schipper, 933 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by an articulated business justification"); Stephen Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); In re Ernst Home Center, Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

11.   Under section 363(b) of the Bankruptcy Code, a debtor must establish that it has a valid business purpose for using the estate's property outside the ordinary course of business. See In re Montgomery Ward Holding Corp., 242 B.R. at 153, see also In re Delaware & Hudson Ry. Co., 124 B.R. 169 (D. Del. 1991), In re Lionel Corp., 722 F.2d 1063, 1070-71 (2d Cir. 1983). Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest

belief that the action was in the debtor's best interest. See In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992). A party in interest seeking to challenge the debtor's valid business purpose must "produce some evidence supporting its objections." Montgomery Ward, 242 B.R. at 155.

12. Courts have applied four factors in determining whether a sound business justification exists: (i) whether a sound business reason exists for the proposed transaction; (ii) whether fair and reasonable consideration is provided; (iii) whether the transaction has been proposed and negotiated in good faith; and (iv) whether adequate and reasonable notice is provided. See Lionel Corp., 722 F.2d at 1071 (setting forth the "sound business purpose" test); Abbotts Dairies, 788 F.2d at 145-47 (implicitly adopting the articulated business justification test of the Lionel standard and adding the "good faith" requirement); Delaware & Hudson, 124 B.R. at 176 (adopting Lionel in this district). The acquisition of SSCL meets each of these requirements.

13. *Sound Business Reasons*. The Debtors have a history of successful "bolt-on" acquisitions of this sort. These types of acquisitions are, and will continue to be, integral to the Debtors' growth strategy, and will give the Debtors access to product lines, technologies and markets that they cannot economically develop internally. Combined with its other initiatives and acquisitions, the proposed acquisition of SSCL continues the Debtors' strategy to improve the value of Davison by participating in those markets which are growing most rapidly. The SSCL acquisition is particularly attractive because it would allow the Debtors to combine their silica material and catalyst science expertise with metallocene components in the design, manufacture and sale of polyolefin catalysts.

91100-001\DOCS_DE:110289.1

14. The SSCL acquisition will provide access to the technology for manufacture and sale of Metallocene Catalysts, a market in which Debtors currently participate only through manufacture of silica supports and catalyst supportation services. The demand for high performance catalysts is expected to grow rapidly, driven by worldwide demand for specialty polymer resins for applications such as food packaging with low taste and odor, soft and flexible fibers for diapers and fabrics, and for clear, durable containers.

15. The proposed acquisition will not only provide access to Metallocene Catalyst technology, but will enable Davison to become involved at an earlier stage of the development by its customers of new catalysts. This will enable Davison to optimize its silica supports with metallocene components, thereby offering additional value to customers and providing opportunities for enhanced margins.

16. In summary, the acquisition of SSCL is an excellent growth opportunity for the Debtors. The acquisition would combine the Debtors' 80 years of silica and 60 years of catalysis expertise with SSCL's proven technology and demonstrated success in producing Metallocene Catalysts.

17. *Fair and Reasonable Consideration.* The proposed Purchase Price is economically attractive to the Debtors. Debtors prepared a discounted cashflow analysis to value the transaction that generated a favorable net present value and rate of return consistent with the Debtors' investment criteria.

18. *Good Faith.* The Debtors and SSCL have negotiated the terms of the proposed acquisition at arm's-length and in good faith. As outlined above, the Debtors believe that the terms of the proposed transaction are fair to the Debtors.

19. *Adequate and Sufficient Notice*. In satisfaction of the requirements of Rule 2002 of the Bankruptcy Rules, the Debtors intend to serve copies of this Motion in accordance with the process described in the "Notice" section below.

20. *Conclusion*. In light of the foregoing, the Debtors have determined in their business judgment that the acquisition of certain assets of SSCL is fair and reasonable. The Debtors believe that the proposed transaction is in the best interest of their estates, grounded in sound business judgment and satisfies the "sound business judgment" test for the use of assets outside the ordinary course of business under section 363(b) of the Bankruptcy Code.

## Notice

21. Notice of this Motion has been given to: (i) the United States Trustee, (ii) counsel to the DIP lender, (iii) counsel to all official committees appointed by the United States Trustee, (iv) counsel for SSCL, and (v) all those parties that requested service and notice of papers in accordance with Bankruptcy Rule 2002. In light of the nature of the requested relief, the Debtors submit that no further notice is required. The Debtors respectfully request that the Court enter an Order authorizing the Debtors to acquire certain assets of SSCL on substantially the terms and conditions described in this Motion.

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form attached hereto, (i) authorizing the Debtors to acquire the technology and certain assets of SSCL on substantially the terms and conditions described in this Motion and (ii) granting such other and further relief as the Court deems just and proper.

Dated:  July 25, 2005

Respectfully submitted,

KIRKLAND & ELLIS LLP
James H.M. Sprayregen, P.C.
Janet S. Baer
Lori Sinanyan
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession