IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**Objection Deadline: August 12, 2005 at 4:00 p.m.**
**Hearing Date: August 29, 2005 at 12:00 p.m.**

## MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN A LEASE AND SUBLEASE FOR CERTAIN REAL PROPERTY IN PHILADELPHIA, PA

The above-captioned debtors and debtors in possession (collectively, the "Debtors") submit this motion (the "Motion") for entry of an Order authorizing the Debtors to assume and assign a lease and sublease for real property in Philadelphia, PA. The relief requested in the Motion is in the best-interest of the Debtors, their estates, their creditors, and all other parties in-interest because it would allow the Debtors to: (i) immediately recover from the prime landlord a substantial portion of the Debtors' rights to consulting fees otherwise payable over the next five

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

years and (ii) relieve themselves of the administrative burdens and risks associated with maintaining the lease and sublease. In support of this Motion, the Debtors respectfully state as follows:

## Jurisdiction

1.  This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.  The statutory basis for the relief requested herein are sections 105(a), 363(b), 365(a), and 365(f)(2) of title 11 of the United States Code (the "Bankruptcy Code").

## Background

3.  On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4.  By Agreement of Lease dated November 8, 1978, as amended by letters dated November 8, 1978 and September 19, 1979 (collectively the "Prime Lease"), between Rising Sun Plaza Associates, L.P. (the "Prime Landlord") and Grace, the Prime Landlord leased to Grace that certain property located at 5675 Rising Sun Avenue, Philadelphia, Pennsylvania (the "Premises").

5.  By Restated Agreement of Sublease dated November 25, 1986 (the "Sublease"), between Grace and Grace Retail Corporation, a Delaware corporation, Grace subleased the Premises to Grace Retail Corporation. Pursuant to an Assignment and Assumption of Sublease dated November 26, 1986, Grace Retail Corporation assigned its subleasehold interest to Channel Home Centers Realty Corporation, a Delaware corporation ("Channel"). Pursuant to

2

Assignment of Sublease dated October 13, 1989, Channel assigned its subleasehold interest to OW Office Warehouse, Inc. ("Office Max").

6. The Sublease was amended by Amendment to Sublease dated as of October 13, 1989, and by Consent and Agreement dated as of October 13, 1989, among Grace, Prime Landlord, Channel, Channel Home Centers, Inc., and Office Max.

7. Prime Landlord and Channel entered into a Consulting Agreement dated July 24, 1989 (the "Consulting Agreement") pursuant to which a "Consulting Fee" (as defined in the Consulting Agreement) became payable annually by the Prime Landlord to Channel. The term of the Consulting Agreement extends until January 31, 2010.

8. By (1) Order dated March 18, 1992 of the United States Bankruptcy Court for the District of New Jersey, in the Matter of Channel Home Centers, Inc., Channel Home Centers Realty Corporation and Channel Acquisition Company, Case No. 91-20161, and (2) Sale and Assignment Agreement dated as of April 1, 1992 between Channel and Grace, Grace succeeded to the interests of Channel under both the Sublease and Consulting Agreement.

9. The effect of all of the foregoing transactions is that the Prime Landlord is the owner and prime landlord of the Premises, Grace is the Prime Landlord's tenant under the Prime Lease, Office Max is Grace's subtenant under the Sublease, and Grace and Prime Landlord are parties with each other under the Consulting Agreement.

10. Grace (i) now desires to transfer and assign to Rising Sun Plaza Associates II, L.P. ("RSPA II")[2] all of Grace's right, title and interest in and to the Prime Lease and the Sublease, and RSPA II desires to acquire such interest, accept such assignment and assume the

---

[2] RSPA II is an affiliate of the Prime Landlord. The two entities are identically comprised.

3

obligations of Grace thereunder, and (ii) Grace, the Prime Landlord and RSPA II now desire to liquidate the amounts payable by Prime Landlord to Grace under the Consulting Agreement for the remainder of the term thereof, and terminate same.

11. On June 27, 2005, Grace, the Prime Landlord and RSPA II entered into the Assignment and Assumption Agreement (a copy of which is attached as <u>Exhibit A</u>), by which: (i) Grace would assign RSPA II all of Grace's rights and interests related to the Prime Lease and Sublease and (ii) RSPA II would accept Grace's assignment and would also assume all of Grace's obligations under the Prime Lease and the Sublease.

12. In exchange for such assignment and a release from all exposure and administrative burdens associated with the Primary Lease and Sublease, the consideration payable to the Debtors under the Assignment and Assumption Agreement would be $50,000.00. This represents a substantial portion of the consulting fee owed to Grace under the Consulting Agreement over the remaining term of the Prime Lease and Sublease. The Consulting Agreement shall then be terminated as of the Effective Date.

### Relief Requested

13. Pursuant to sections 105(a), 363(b), 365(a), and 365(f) of the Bankruptcy Code, the Debtors request approval to enter into the Assignment and Assumption Agreement, by which the Debtors would: (i) assume the Prime Lease and the Sublease, (ii) assign all of the Debtors' rights and obligations under the Prime Lease and Sublease to RSPA II and (iii) be paid a $50,000 consulting fee (collectively, the "Requested Relief").

### Basis for the Requested Relief

14. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may … reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The "business judgment" standard is applied to determine whether

4

the rejection or assumption of an executory contract or unexpired lease should be authorized. See NLRB v. Bildisco & Bildisco, 465 U.S. 513, 524 (1984); see In re Taylor, 913 F.2d 102 (3d Cir. 1990); Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.), 872 F.2d 36 (3d. Cir. 1989). Accordingly, assumption or rejection of any executory contract is appropriate where the assumption or rejection would benefit the estate. Sharon Steel Corp., 872 F.2d at 40. This standard is satisfied when a debtor has made a business determination that rejection would benefit the estate. See Commercial Fin. Ltd. v. Hawaii Dimensions, Inc. (In re Hawaii Dimensions, Inc.), 47 B.R. 425, 427 (Bankr. D. Haw. 1985).

15. Section 363(b)(1) of the Bankruptcy Code provides that a debtor in possession, "after notice and hearing may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

16. Section 365(f)(2) of the Bankruptcy Code sets forth the following prerequisites for the assignment of a lease: (i) the lease must be assumed in accordance with section 365 and (ii) the assignee of the lease must provide adequate assurance of future performance. 11 U.S.C. 365(f)(2). It is also well-established that the decision to assume and assign an executory contract or lease is also a matter within the "business judgment" of the debtor. See In re Taylor, 913 F.2d 36 (3d Cir. 1989).

17. Therefore, if the Debtors' business judgment has been reasonably exercised, and the Debtors can establish adequate assurance of future performance on the part of RSPA II, then the Court should grant the Requested Relief. See, e.g., NLRB v. Bildisco & Bildisco, 465 U.S. at 523; Group of Institutional Investors v. Chicago M. St. P. & P.R.R. Co., 318 U.S. 523 (1943); Sharon Steel Corp., 872 F.2d at 39-40.

91100-001\DOCS_DE:110276.1

## Argument

18.     The Debtors, in their business judgment, have determined that the Requested Relief is in the best interest of the Debtors' estates. The Debtors do not use the Premises, and the Premises are not necessary for the Debtors reorganization efforts. Instead, the Debtors serve merely as a "middle-man" by (i) leasing the Premises from the Prime Landlord and (ii) simultaneously subleasing the premises to Office Max. The Requested Relief would also allow the Debtors to relieve themselves of the administrative burdens and financial risks associated with serving as the "middle-man" in this structure, while recouping a substantial portion of the remaining consulting fees.

19.     The second requirement is also satisfied. If the Court grants the Requested Relief, then the only affect would be that Grace would no longer serve as an intermediary between the Prime Landlord and Office Max. Since (i) Grace's obligations with respect to Office Max only relate to making Premises available and suitable for occupation and (ii) RSPA II is already primarily responsible for these same obligations, the Requested Relief would not materially alter Office Max's interest with respect to the Premises. Further, the Debtors are not aware of any information that suggests RSPA II will not be able to subsequently satisfy its obligation under the Prime Lease or Sublease.

## Conclusion

20.     The Requested Relief is in the best interest of the Debtors, their creditors and estates. As described above, the assignment of the Prime Lease and Sublease would allow the Debtors to: (i) immediately receive $50,000, which represents a substantial portion of the remaining consulting fees and (ii) relieve themselves of the administrative burdens and risks associated with maintaining the Prime Lease, Sublease and the Premises.

## Notice

21.     Notice of this Motion has been given to: (i) the United States Trustee, (ii) counsel

to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors'

prepetition lenders, (iv) counsel to all official committees appointed by the United States

Trustee, (v) Office Max (vi) RSPA II, (vii) the Prime Landlord; and (viii) and all those parties

that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002.  In light of

the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Relief

22.     No previous application for the relief sought herein has been made to this or any

other Court.

91100-001\DOCS_DE:110276.1

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, (i) approving the assumption and assignment of the Debtors' rights and obligations under the Lease and Sublease to RSPA II, pursuant to the terms of the Assignment and Assumption Agreement and (ii) granting such other and further relief as is just and proper.

Dated: July 25, 2005

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Lori Sinanyan
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

8