IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

Objection Deadline: August 12, 2005 at 4:00 p.m.
Hearing Date: August 29, 2005 at 12:00 p.m.

## DEBTORS' MOTION FOR AN ORDER APPROVING THE SETTLEMENT AGREEMENT WITH INTERCAT, INC.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully move this Court (the "Motion") for entry of an order approving the confidential settlement (the "Intercat Settlement") by and between W. R. Grace & Co.-Conn. ("Grace") and Intercat, Inc. ("Intercat").[2]

Pursuant to the Intercat Settlement, certain patent infringement litigation among the parties (the "Litigation"), which affects certain Grace customers, will be resolved and Grace will pay Intercat Nine Million Dollars ($9,000,000.00) (the "Payment") structured as credits against

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] The parties to the Intercat Settlement are hereinafter referred to collectively as the "Parties."

certain payments owed by Intercat to Grace as a result of certain prior litigation. The Payment extends over the remaining life of the Intercat payments to Grace, through March 2012. In consideration thereof, Intercat will provide Grace and its customers with (i) a complete release from all alleged past infringement on the use of all previously shipped loaders which were the subject of the Litigation, and (ii) a royalty-bearing license under the '236 Patent for loaders that incorporate "corrective action," as defined in the Intercat Settlement, installed in the future by Grace or its affiliates to be used by refinery customers. A safe harbor for a class of loaders, which do not have any such "corrective action," will also be defined so that Grace or its affiliates can supply to refinery customers royalty-free and without controversy. These provisions are embodied in a "Settlement Agreement". The definition of "corrective action" and the consequent definition of loaders within the safe harbor, which will affect royalty payments by Grace going forward, have not yet been finalized but are the subject of current negotiation.

In addition, Intercat and Grace will each be granted an option (expressed in an Option Agreement) by the other Party to obtain a license (the major terms of which are expressed in a Model License Agreement which will be attached to the Option Agreement) under that party's patents covering loader-related inventions developed prior to June 7, 2010. The Option Agreement and the Model License Agreement are also not yet finalized and are subject to current negotiations. The Settlement Agreement, the Option Agreement, and the Model License Agreement are considered to constitute a single agreement expressed in 3 separate documents and collectively constitute the "Intercat Settlement." To the extent there are any disputes between Grace and Intercat in finalizing the documents of the Settlement, the Magistrate, Judge Boylan, is the final arbitrator without the possibility of appeal.

2

Grace expects that the agreements embodying the Intercat Settlement (the "Intercat Settlement Agreement") will be finalized prior to the date of the hearing on this Motion but in the event that negotiations on such Intercat Settlement Agreement have not been completed, we will advise the Court regarding the status of such negotiations.[3]

The contemplated Intercat Settlement will relieve the Debtors from prospective legal costs and litigation risks associated with the underlying dispute, preserve key Grace customer relationships, ensure continuity of key suppliers, and establish mechanisms to prevent further litigation on other loader issues. Therefore, the contemplated Intercat Settlement is believed to be in the best interest of the Debtors' estates, and the Debtors respectfully request that the Court enter an order approving the Intercat Settlement.

### Jurisdiction

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this motion is proper under 28 U.S.C. § 1408.

2.  The statutory predicates for this Motion are sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Background

3.  On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to

---

[3] The Intercat Settlement Agreement is confidential and is not attached to this Motion. To the extent the Court determines it is necessary to review the Intercat Settlement Agreement, the Intercat Settlement Agreement will be submitted to the Court for in-camera inspection.

3

91100-001\DOCS_DE:110286.1

sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

A.  *Current Litigation*

4.  On October 18, 2002, Nol-Tec Systems, Inc. ("Nol-Tec"), was sued by David B. Bartholic and Intercat for infringement of a certain patent (the "236 Patent"). In the complaint, the plaintiffs alleged that Nol-Tec was inducing infringement and/or contributing to the infringement of certain claims by making, using or selling a catalyst loader that was used by the refiner to directly infringe the 236 Patent.

5.  Nol-Tec is Grace's manufacturer of certain loaders, as described below, used to inject additives into fluid catalytic cracking ("FCC") units. On March 4, 2003, Grace filed a motion to intervene in the Litigation in order to protect its supply of loaders, which are an important component of its catalyst-additive business. On May 8, 2003, the District Court in Minnesota where the Litigation was pending granted the motion to intervene.

6.  The 236 Patent covers a particular method for injecting additives into FCC units, which includes, among other steps: establishing certain desired operating criteria for the unit; determining a particular injection schedule for the additive (amount per injection and interval between injections) to effect those pre-established criteria; injecting additive into the unit through several interval cycles while monitoring the actual weight of additive injected; and correcting subsequent injections to account for any discrepancy between the amount scheduled to be injected and the amount actually injected in the previous cycles. The 236 Patent discloses that certain kinds of loading equipment known as loaders are useful in the claimed method to make the additive injections. In particular, the patent discloses loaders that include a hopper that carries an inventory of the additive to be injected and that is situated on weigh cells. According to the claimed method, the inventory in the hopper is weighed both before and after each

4

injection to determine whether the amount scheduled to be injected was actually injected into the FCC unit from the hopper.

7. Thus, the 236 Patent does not cover loaders per se, but only particular methods of injecting additives. Over the course of the Litigation, Intercat has taken Rule 30(b)(6) depositions of 20 refineries who have used the accused Nol-Tec loaders. It has always been Grace's position that those refineries do not pre-establish the operating criteria required by the patent claim or use any such criteria or data to set an injection schedule, and Grace believes that the depositions have borne out that position. Grace therefore believes that neither the refineries nor Grace nor Nol-Tec infringe the 236 Patent.

8. Nevertheless, Intercat has taken a contrary position on what acts fall within the various method steps of the claim and the sequence in which those steps must be performed. A *Markman* hearing was conducted and a January 7, 2005 decision was rendered by the court on claim construction issues. This decision did not materially alter Intercat's theory of infringement or Grace's defense against the same. Subsequently, each party filed a Motion for Summary Judgment in March of 2005. To date, no decision has been rendered on either Party's motion. The Litigation was set to go to trial in August 2005.

B. *Prior Litigation Won By Grace*

9. In 1997, Intercat was found to have willfully infringed Grace's patents covering SOx additives, resulting in a damage award (including counsel fees) of over $22 million. (W. R. Grace & Co.-Conn. v. Intercat et al., 60 F. Supp. 2d 316 (D. Del. 1999). Intercat filed its own chapter 11 bankruptcy case after that judgment was entered. A Chapter 11 Plan, which Grace voted to accept, was confirmed in the Intercat Chapter 11 case in 2002. The confirmed Intercat Plan provided for the payment of 105% of the amount of general unsecured claims, including the claim based upon the Grace judgment, without interest, over a period of years through 2011.

5

91100-001\DOCS_DE:110286.1

Intercat still owes Grace about $16 million of the original judgment, which it is currently paying at a rate of about $2.3 million per year.

C.  *The Intercat Settlement*

10. On June 7, 2005, Intercat and Grace attended settlement negotiations compelled by the Court as a precondition for going to trial in August 2005. Since the Parties could not reach agreement on what acts by the refiner would constitute direct infringement, they agreed to focus on the functionality of the loader and fashioned a settlement around that issue.

11. In addition, Grace insisted on reaching a global solution under other patents owned by the parties to avoid the distraction and expense of a potential series of litigations.

12. Accordingly, the parties have reached a settlement that has three components:

   (i) a payment of $9 Million by Grace to Intercat, structured as quarterly credits against the quarterly payments owed by Intercat to Grace as a result of the prior litigation. This payment will act as consideration for a release for Grace and its customers of all alleged past infringement on the use of all previously shipped loaders;

   (ii) a license under loaders that incorporated corrective action, installed in the future by Grace or its affiliates to be used by refinery customers; and

   (iii) an option by each Party to obtain a license under the other Party's patents covering loader related inventions developed prior to June 7, 2010.

13. The Intercat Settlement is subject to the approval of this Court.

## Relief Requested

14. By this Motion, the Debtors seek an order approving the confidential Intercat Settlement. A form of proposed order is attached hereto.

## Statutory Authority and Argument

15. This Court has statutory authority to authorize and approve the Debtors' entry into the Intercat Settlement Agreement pursuant to sections 105 and 363(b)(1) of the Bankruptcy Code. A settlement of claims and causes of action by a debtor in possession constitutes a use of

6

property of the estate. See Northview Motors, Inc. v. Chrysler Motors Corp., No. 98-3387, 1999 U.S. App. LEXIS 13403, at *11 (3d Cir. 1999). If a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. See id.

16.     Under section 363(b) of the Bankruptcy Code, a debtor has the burden to establish that it has a valid business purpose for using estate property outside the ordinary course of business. See In re Lionel Corp., 722 F.2d 1063, 1070-71 (2d Cir. 1983). Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest belief that the action was in the debtor's best interest. See In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992). A party in interest seeking to challenge the debtor's valid business purpose must "produce some evidence supporting its objections." In re Montgomery Ward Holding Corp., 242 B.R. 147, 155 (Bankr. D. Del. 1999).

17.     Further, Bankruptcy Rule 9019 provides that, after notice and a hearing, a court may approve a proposed settlement or compromise. The decision whether to accept or reject a compromise lies within the sound discretion of the court. See In re Resorts Int'l, Inc., 145 B.R. 412, 451 (Bankr. D. N.J. 1990); In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (Bankr. E.D. Pa. 1986).

18.     In reviewing this Motion, the Court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." In re Martin, 91 F.3d 389, 393 (3d Cir. 1996). This requires court consideration of the following criteria: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense,

inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. Id.

19. Approval of the Intercat Settlement is in the best interests of the Debtors and their estates. The Intercat Settlement is in the best interests of Grace because (a) it ends the substantial ongoing legal expenses and uncertainty of the Litigation's outcome related to the 236 Patent; (b) it helps to preserve customer relationships; (c) it ensures Grace continuity of a key supplier; and (d) it establishes mechanisms to prevent further litigation on other loader issues. In the absence of a settlement, Grace would be subject to the cost, delay, and uncertainty associated with the continuing Litigation and trial and the potential damages that could result from a negative outcome of the Litigation; Intercat was seeking damages of up to $17 million on sales occurring after April 2, 2001, before interest and before potential trebling. Therefore, the Debtors have determined, using their business judgment, that a payment of $9 million, structured as quarterly credits against the amounts Intercat owes Grace, in consideration of the releases and other consideration described above, is in the best-interests of the Debtors' estates. The present value of the credits is substantially less than $9 million (approximately $6.2 million).

## Notice

20. Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to each official committee appointed by the United States Trustee, (iv) counsel to Nol-tec and Intercat and (v) those parties that requested papers under Fed. R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

8

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) approving the Intercat Settlement; (ii) allowing the Debtors to make the Payment to Intercat by permitting Intercat quarterly credits against the quarterly payments owed by Intercat to Grace as a result of the prior litigation; and (ii) granting such other and further relief as the Court deems just and proper.

Dated: July 25, 2005

Respectfully submitted,

KIRKLAND & ELLIS LLP
James H.M. Sprayregen, P.C.
Janet S. Baer
Lori Sinanyan
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

_____
Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

9