*Chart 5*

| Remedium Group, Inc. Status of Postpetition Taxes MOR-4 June 30, 2005 | Beginning Tax Liability | Amount Withheld or Accrued | Amount Paid | Ending Tax Liability |
|---|---|---|---|---|
| **Federal** | | | | |
| Withholding | $ - | $ 13,474 | $ (13,474) | $ - |
| FICA - Employee | - | 4,959 | (4,959) | - |
| FICA and payroll- Employer | - | 4,961 | (4,961) | - |
| Unemployment | - | - | - | - |
| Other | - | - | - | - |
| Total Federal Taxes | $ - | $ 23,394 | $ (23,394) | $ - |
| **State and Local** | | | | |
| Withholding | $ - | $ 629 | $ (629) | $ - |
| Sales & Use | - | | | - |
| Property Taxes | - | | - | - |
| Other | - | | - | - |
| Total State and Local | $ - | $ 629 | $ (629) | $ - |
| Total Taxes | $ - | $ 24,023 | $ (24,023) | $ - |

**Note #4**
Grace's information systems do not provide the detailed nature of invoices in Accounts Payable. See Debtor Questionnaire (Chart 7, MOR – 5) for attestation related to accounts payable and tax obligations.

*Chart 5*

| Grace Washington, Inc.<br>Status of Postpetition Taxes<br>MOR-4<br>June 30, 2005 | Beginning Tax Liability | Amount Withholding Accrued | Amount Paid | Ending Tax Liability |
|---|---|---|---|---|
| **Federal** | | | | |
| Withholding | $        - | $       4,585 | $    (4,585) | $        - |
| FICA - Employee | - | 246 | (246) | - |
| FICA and payroll- Employer | - | 246 | (246) | - |
| Unemployment | - | - | - | - |
| Other | - | - | - | - |
| Total Federal Taxes | $        - | $    5,077 | $    (5,077) | $        - |
| **State and Local** | | | | |
| Withholding | $        - | $       938 | $    (938) | $        - |
| Sales & Use | - | - | - | - |
| Property Taxes | - | - | - | - |
| Other | - | - | - | - |
| Total State and Local | $        - | $    938 | $    (938) | $        - |
| Total Taxes | $        - | $    6,015 | $    (6,015) | $        - |

---

**Note #4**

Grace's information systems do not provide the detailed nature of invoices in Accounts Payable. See Debtor Questionnaire (Chart 7, MOR – 5) for attestation related to accounts payable and tax obligations.

*Chart 5*

| L B Realty, Inc.<br>Status of Postpetition Taxes<br>MOR-4<br>June 30, 2005 | | | | |
|---|---|---|---|---|
| | Beginning Tax Liability | Amount Withheld or Accrued | Amount Paid | Ending Tax Liability |
| **Federal** | | | | |
| Withholding | $          - | $ | $          - | $          - |
| FICA - Employee | - | | - | - |
| FICA and payroll- Employer | - | | - | - |
| Unemployment | - | | - | - |
| Other | - | | - | - |
| Total Federal Taxes | $          - | $          - | $          - | $          - |
| **State and Local** | | | | |
| Withholding | $          - | $ | $          - | $          - |
| Sales & Use | | | - | - |
| Property Taxes | - | | - | - |
| Other | - | | - | - |
| Total State and Local | $          - | $          - | $          - | $          - |
| Total Taxes | $          - | $          - | $          - | $          - |

---

**Note #4**

Grace's information systems do not provide the detailed nature of invoices in Accounts Payable. See Debtor Questionnaire (Chart 7, MOR – 5) for attestation related to accounts payable and tax obligations.

Chart 5

| Darex Puerto Rico, Inc.<br>Status of Postpetition Taxes<br>MOR-4<br>June 30, 2005 | | | | |
|---|---|---|---|---|
| | Beginning Tax Liability | Amount Withheld or Accrued | Amount Paid | Ending Tax Liability |
| **Federal** | | | | |
| Withholding | $ - | $ | $ - | $ - |
| FICA - Employee | (1,650) | 581 | (581) | (1,650) |
| FICA and payroll- Employer | 1,865 | 581 | (213) | 2,233 |
| Unemployment | - | | - | - |
| Other | - | | - | - |
| Total Federal Taxes | $ 215 | $ 1,162 | $ (794) | $ 583 |
| **State and Local** | | | | |
| Withholding | $ 1,364 | $ 929 | $ (929) | $ 1,364 |
| Sales & Use | | | | - |
| Property Taxes | 352,727 | 4,064 | | 356,791 |
| Other | - | | - | - |
| Total State and Local | $ 354,091 | $ 4,993 | $ (929) | $ 358,155 |
| Total Taxes | $ 354,306 | $ 6,155 | $ (1,723) | $ 358,738 |

**Note #4**

Grace's information systems do not provide the detailed nature of invoices in Accounts Payable. See Debtor Questionnaire (Chart 7, MOR – 5) for attestation related to accounts payable and tax obligations.

Chart 6

| W. R. Grace & Co. - Conn<br>Accounts Receivable Reconciliation and Aging<br>MOR-5<br>June 2005 | |
|---|---|
| **Trade Accounts Receivable Reconciliation** | |
| Trade accounts receivable, beginning of month, gross | $ 115,946,651 |
| Amounts billed during the period | 87,910,937 |
| Amounts collected during the period | (87,010,217) |
| Other | 6,286,942 |
| Trade accounts receivable at the end of month, gross | $ 123,134,313 |
| **Trade Accounts Receivable Aging** | |
| Current | $   95,483,019 |
| 1-30 days past due | 18,825,284 |
| 31-60 days past due | 7,488,144 |
| +61 days past due | 1,337,866 |
| Trade accounts receivable, gross | 123,134,313 |
| Allowance for doubtful accounts | (1,352,185) |
| Trade accounts receivable, net | $ 121,782,128 |

| **Notes and Accounts Receivable Reconciliation** | |
|---|---|
| Trade accounts receivable, net | $ 121,782,128 |
| Customer notes and drafts receivable | 592,225 |
| Pending customer credit notes | 8,753 |
| Advances and deposits | 4,604,098 |
| Nontrade receivables, net | 1,115,157 |
| Total notes and accounts receivable, net | $ 128,102,361 |

*Chart 6*

| Remedium Group, Inc.<br>Accounts Receivable Reconciliation and Aging<br>MOR-5<br>June 2005 | |
|---|---|
| **Trade Accounts Receivable Reconciliation** | |
| Trade accounts receivable, beginning of month, gross | $  - |
| Amounts billed during the period | - |
| Amounts collected during the period | - |
| Other | - |
| Trade accounts receivable at the end of month, gross | $  - |
| **Trade Accounts Receivable Aging** | |
| Current | $  - |
| 1-30 days past due | - |
| 31-60 days past due | - |
| +61 days past due | - |
| Trade accounts receivable, gross | - |
| Allowance for doubtful accounts | - |
| Trade accounts receivable, net | $  - |

| **Notes and Accounts Receivable Reconciliation** | |
|---|---|
| Trade accounts receivable, net | $  - |
| Customer notes and drafts receivable | - |
| Pending customer credit notes | - |
| Advances and deposits | - |
| Nontrade receivables, net | - |
| Total notes and accounts receivable, net | $  - |

Chart 6

## Darex Puerto Rico, Inc.
### Accounts Receivable Reconciliation and Aging
### MOR-5
### June 2005

**Trade Accounts Receivable Reconciliation**

| | | |
|---|---|---|
| Trade accounts receivable, beginning of month, gross | $ | 2,580,353 |
| Amounts billed during the period | | 808,747 |
| Amounts collected during the period | | (441,134) |
| Other | | 2,691 |
| Trade accounts receivable at the end of month, gross | $ | 2,950,657 |

**Trade Accounts Receivable Aging**

| | | |
|---|---|---|
| Current | $ | 2,174,706 |
| 1-30 days past due | | 535,675 |
| 31-60 days past due | | 209,223 |
| +61 days past due | | 31,053 |
| Trade accounts receivable, gross | | 2,950,657 |
| Allowance for doubtful accounts | | (6,490) |
| Trade accounts receivable, net | $ | 2,944,167 |

**Notes and Accounts Receivable Reconciliation**

| | | |
|---|---|---|
| Trade accounts receivable, net | $ | 2,944,167 |
| Customer notes and drafts receivable | | - |
| Pending customer credit notes | | (194) |
| Advances and deposits | | - |
| Nontrade receivables, net | | - |
| Total notes and accounts receivable, net | $ | 2,943,972 |

*Chart 6*

| Grace Europe, Inc.<br>Accounts Receivable Reconciliation and Aging<br>MOR-5<br>June 2005 | |
|---|---|
| **Trade Accounts Receivable Reconciliation** | |
| Trade accounts receivable, beginning of month, gross | $ - |
| Amounts billed during the period | - |
| Amounts collected during the period | - |
| Other | - |
| Trade accounts receivable at the end of month, gross | $ - |
| **Trade Accounts Receivable Aging** | |
| Current | $ - |
| 1-30 days past due | - |
| 31-60 days past due | - |
| +61 days past due | - |
| Trade accounts receivable, gross | - |
| Allowance for doubtful accounts | - |
| Trade accounts receivable, net | $ - |

| **Notes and Accounts Receivable Reconciliation** | |
|---|---|
| Trade accounts receivable, net | $ - |
| Customer notes and drafts receivable | - |
| Pending customer credit notes | - |
| Advances and deposits | - |
| Nontrade receivables, net | 92,012 |
| Total notes and accounts receivable, net | $ 92,012 |

Chart 7

| W.R. Grace & Co., et al<br>Debtor Questionnaire<br>MOR - 5<br>June 2005 | Yes | No |
|---|---|---|
| 1. Have any assets been sold or transferred outside the normal course of business this reporting period?  If yes, provide an explanation below. | | X |
| 2. Have any funds been disbursed from any account other than a debtor in possession account for this reporting period?  If yes, provide an explanation below. | | See Note #5 below |
| 3. Have all postpetition tax returns been timely filed?<br>If no, provide an explanation below. | X | |
| 4. Are workers compensation, general liability and other necessary insurance coverages in affect?  If no, provide and explanation below. | X | |
| 5. Are post-petition accounts payable and tax obligations current and paid to date?<br>If no, provide an explanation. | X<br>(unless disputed in normal course of business) | |

**Note #5**
As part of the first day orders submitted to the court on April 2, 2001, an application for the Debtors to (a) continue and maintain their consolidated cash management system, (b) continue and maintain their existing bank accounts and (c) continue to use existing business forms and granting related relief was included.  The Debtors have continued to use their existing bank accounts and no new debtor in possession accounts have been established.

| List assets sold/transferred outside the normal course of business over $25,000:<br>Description of Asset | Sale Date | Proceeds |
|---|---|---|
| | | |

# Combined Chapter 11 Filing Entity Statements

Chart 8

## W. R. Grace & Co. - Chapter 11 Filing Entities
### Combined Statement of Operations

| | | | | |
|---|---|---|---|---|
| Net sales to third parties | $ 88.7 | $ 79.1 | $ 471.3 | $ 433.8 |
| Net sales to non-filing entities | 30.3 | 23.6 | 167.0 | 131.4 |
| Interest and royalties from non-filing entities | 7.1 | 2.1 | 24.6 | 16.5 |
| | 126.1 | 104.8 | 662.9 | 581.7 |
| Cost of goods sold to third parties | 57.8 | 50.9 | 305.7 | 290.8 |
| Cost of goods sold to non-filing entities | 24.4 | 19.6 | 133.6 | 109.2 |
| Selling, general and administrative expenses | 25.0 | 23.2 | 136.5 | 129.8 |
| Depreciation and amortization | 6.0 | 4.4 | 30.5 | 28.4 |
| Research and development expenses | 3.3 | 2.9 | 19.2 | 17.4 |
| Net pension expense | 5.0 | 5.6 | 26.7 | 23.1 |
| Interest expense | 4.3 | 1.2 | 27.5 | 7.5 |
| Other (income) expense | (12.2) | (1.4) | (24.0) | 6.8 |
| Provision for asbestos-related litigation, net of estimated insurance recovery | - | - | - | - |
| Provision for environmental remediation | - | - | - | - |
| | 113.6 | 106.4 | 655.7 | 613.0 |
| Income (loss) before Chapter 11 expenses, income taxes and equity in net income of non-filing entities | 12.5 | (1.6) | 7.2 | (31.3) |
| Chapter 11 expenses, net | (1.1) | (0.6) | (10.4) | (7.5) |
| Benefit from (provision for) income taxes | (0.7) | (4.0) | (8.7) | (2.9) |
| Income (loss) before equity in net income of non-filing entities | 10.7 | (6.2) | (11.9) | (41.7) |
| Equity in net income of non-filing entities | 2.9 | 17.1 | 47.7 | 78.8 |

The Notes to Combined Financial Statements are an integral part of these statements.

**Chart 9**

## W. R. Grace & Co. - Chapter 11 Filing Entities
### Combined Functional Basis Statement of Cash Flows

| (in millions) | Month Ended Jun 30, 2005 | Six Months Ended Jun 30, 2005 |
|---|---|---|
| **Core operations cash flow** | | |
| Pre-tax income from core operations | $ 7.9 | $ 29.9 |
| Depreciation and amortization | 6.0 | 30.5 |
| | 13.9 | 60.4 |
| Payments to fund defined benefit pension arrangements | (0.5) | (8.3) |
| Change in Non-Filing entity operating loans and Investment | 11.2 | 8.4 |
| Changes in all core assets/liabilities and other | (3.1) | (71.7) |
| Net increase in accounts receivable from Non-Filing entities due to transfer price adjustments | - | - |
| | 21.5 | (11.2) |
| Capital expenditures | (3.9) | (19.6) |
| | 17.6 | (30.8) |
| **Charges against core reserves** | | |
| Pension liabilities | - | - |
| Deferred compensation | - | (0.3) |
| Self insurance | (0.2) | (0.4) |
| **Total Spending Against Core Reserves** | (0.2) | (0.7) |
| | 17.4 | (31.5) |
| **Noncore cash flow** | | |
| Proceeds from asset sales | 0.1 | 0.6 |
| Benefit proceeds under life insurance policies | 0.1 | 2.4 |
| Other noncore pretax cash flow | 9.8 | 10.4 |
| | 10.0 | 13.4 |
| **Charges against noncore reserves** | | |
| Environmental remediation | (0.8) | (3.0) |
| Retained obligations and other | (0.2) | (0.5) |
| Postretirement benefits | (0.8) | (5.1) |
| **Total Spending Against Noncore Reserves** | (1.8) | (8.6) |
| | 8.2 | 4.8 |
| | 25.6 | (26.7) |
| Cash paid for taxes, net of refunds | 1.7 | (3.5) |
| Cash paid for interest, net | - | (0.7) |
| Cash paid to settle chapter 11 contingencies | (21.4) | (119.7) |
| Chapter 11 expenses paid | (0.2) | (9.0) |
| | 5.7 | (159.6) |
| **Strategic Investments** | | |
| Cash paid for businesses acquired | - | - |
| Dividends received from Germany | - | 38.7 |
| Proceeds from exercise of stock options | - | 3.0 |
| **Cash used for Strategic Investments** | - | 41.7 |
| | 5.7 | (117.9) |
| Borrowings under the debtor-in-possession facility, net of fees | (0.2) | (1.1) |
| Net (investing)/financing activities under life insurance policies | - | 14.2 |
| **Net Cash Flow** | $ 5.5 | $ (104.8) |

The Notes to Combined Financial Statements are an integral part of these statements.

Chart 10

## W. R. Grace & Co. - Chapter 11 Filing Entities
## Combined Balance Sheet

| | NOV. 30 2005 | DECEMBER 31 2004 | APRIL 2 2001 |
|---|---|---|---|
| **ASSETS** | | | |
| **Current Assets** | | | |
| Cash and cash equivalents | $ 235.2 | $ 340.0 | $ 8.6 |
| Trade accounts receivable, less allowance of $1.4 (2004 - $1.0, Filing Date - $0.7) | 125.3 | 111.6 | 32.3 |
| Receivables from non-filing entities, net | 61.8 | 37.8 | 51.2 |
| Inventories | 83.8 | 76.9 | 80.6 |
| Deferred income taxes | 12.8 | 6.6 | 80.9 |
| Asbestos-related insurance expected to be realized within one year | - | - | 17.0 |
| Other current assets | 20.5 | 31.5 | 33.4 |
| **Total Current Assets** | 539.4 | 604.4 | 304.0 |
| | | | |
| Properties and equipment, net | 345.6 | 359.9 | 400.4 |
| Goodwill | 18.9 | 18.9 | 13.6 |
| Cash value of life insurance policies, net of policy loans | 81.3 | 96.0 | 64.1 |
| Deferred income taxes | 673.2 | 666.2 | 401.0 |
| Asbestos-related insurance expected to be realized after one year | 500.0 | 500.0 | 323.4 |
| Loans receivable from non-filing entities, net | 330.4 | 358.6 | 387.5 |
| Investment in non-filing entities | 470.6 | 468.4 | 121.0 |
| Other assets | 88.2 | 82.8 | 308.5 |
| **Total Assets** | $ 3,047.6 | $ 3,155.2 | $ 2,323.5 |
| | | | |
| **LIABILITIES AND SHAREHOLDERS' EQUITY (DEFICIT)** | | | |
| **Liabilities Not Subject to Compromise** | | | |
| **Current Liabilities** | | | |
| Debt payable within one year | $ - | $ - | $ - |
| Accounts payable | 62.1 | 57.2 | - |
| Income taxes payable | 5.0 | 5.0 | - |
| Other current liabilities | 98.1 | 125.3 | - |
| **Total Current Liabilities** | 165.2 | 187.5 | - |
| | | | |
| Debt payable after one year | - | - | - |
| Other liabilities | 377.3 | 381.8 | 31.8 |
| **Total Liabilities Not Subject to Compromise** | 542.5 | 569.3 | 31.8 |
| | | | |
| **Liabilities Subject to Compromise** | | | |
| Debt, pre-petition plus accrued interest | 664.8 | 645.8 | 511.5 |
| Accounts payable | 31.3 | 31.3 | 43.0 |
| Income taxes payable | 143.2 | 210.4 | 240.1 |
| Asbestos-related liability | 1,700.0 | 1,700.0 | 1,002.8 |
| Other liabilities | 571.1 | 620.2 | 568.6 |
| **Total Liabilities Subject to Compromise** | 3,110.4 | 3,207.7 | 2,366.0 |
| **Total Liabilities** | 3,652.9 | 3,777.0 | 2,397.8 |
| | | | |
| **Shareholders' Equity (Deficit)** | | | |
| Common stock | 0.8 | 0.8 | 0.8 |
| Paid in capital | 423.4 | 426.5 | 432.6 |
| Accumulated deficit | (537.4) | (573.2) | (201.8) |
| Treasury stock, at cost | (119.7) | (125.9) | (136.4) |
| Accumulated other comprehensive loss | (372.4) | (350.0) | (169.5) |
| **Total Shareholders' Equity (Deficit)** | (605.3) | (621.8) | (74.3) |
| **Total Liabilities and Shareholders' Equity (Deficit)** | $ 3,047.6 | $ 3,155.2 | $ 2,323.5 |

The Notes to Combined Financial Statements are an integral part of these statements.

## 1. Basis of Presentation and Summary of Significant Accounting and Financial Reporting Policies

W. R. Grace & Co., through its subsidiaries, is engaged in specialty chemicals and specialty materials businesses on a worldwide basis through two business segments: "Davison Chemicals," which includes two product groups – refining technologies and specialty materials; and "Performance Chemicals," which includes three product groups – specialty construction chemicals, building materials, and sealants and coatings.

W. R. Grace & Co. conducts substantially all of its business through a direct, wholly owned subsidiary, W. R. Grace & Co.-Conn. ("Grace-Conn."). Grace-Conn. owns substantially all of the assets, properties and rights of W. R. Grace & Co. on a consolidated basis, either directly or through subsidiaries.

As used in these notes, the term "Company" refers to W. R. Grace & Co. The term "Grace" refers to the Company and/or one or more of its subsidiaries and, in certain cases, their respective predecessors.

***Voluntary Bankruptcy Filing*** – During 2000 and the first quarter of 2001, Grace experienced several adverse developments in its asbestos-related litigation, including: a significant increase in personal injury claims, higher than expected costs to resolve personal injury and certain property damage claims, and class action lawsuits alleging damages from Zonolite Attic Insulation, or ZAI, a former Grace attic insulation product.

After a thorough review of these developments, the Board of Directors concluded that a federal court-supervised bankruptcy process provided the best forum available to achieve fairness in resolving these claims and on April 2, 2001 (the "Filing Date"), Grace and 61 of its United States subsidiaries and affiliates, including Grace-Conn. (collectively, the "Debtors"), filed voluntary petitions for reorganization (the "Filing") under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The cases were consolidated and are being jointly administered under case number 01-01139 (the "Chapter 11 Cases"). Grace's

non-U.S. subsidiaries and certain of its U.S. subsidiaries were not included in the Filing.

Under Chapter 11, the Debtors have continued to operate their businesses as debtors-in-possession under court protection from creditors and claimants, while using the Chapter 11 process to develop and implement a plan for addressing the asbestos-related claims. Since the Filing, all motions necessary to conduct normal business activities have been approved by the Bankruptcy Court. (See Note 2 for Chapter 11 Related Information.)

***Basis of Presentation*** – The interim Consolidated Financial Statements presented herein are unaudited and should be read in conjunction with the Consolidated Financial Statements presented in the Company's 2004 Annual Report on Form 10-K. Such interim Consolidated Financial Statements reflect all adjustments that, in the opinion of management, are necessary for a fair presentation of the results of the interim periods presented; all such adjustments are of a normal recurring nature. Potential accounting adjustments discovered during normal reporting and accounting processes are evaluated on the basis of materiality, both individually and in the aggregate, and are recorded in the accounting period discovered, unless a restatement of a prior period is necessary. All significant intercompany accounts and transactions have been eliminated.

The results of operations for the six-month interim period ended June 30, 2005 are not necessarily indicative of the results of operations for the year ending December 31, 2005.

***Reclassifications*** – Certain amounts in prior years' Consolidated Financial Statements have been reclassified to conform to the 2005 presentation.

***Use of Estimates*** – The preparation of financial statements in conformity with U.S. generally accepted accounting principles requires that management make estimates and assumptions affecting the assets and liabilities reported at the date of the Consolidated Financial Statements, and the revenues and expenses reported for the periods presented. Actual amounts could differ from those estimates. Changes in estimates are recorded in the period identified. Grace's accounting measurements

that are most affected by management's estimates of future events are:

- Contingent liabilities such as asbestos-related matters, environmental remediation, income taxes, and litigation related to retained obligations of divested businesses and discontinued operations.
- Pension and postretirement liabilities that depend on assumptions regarding discount rates and/or total returns on invested funds.
- Depreciation and amortization periods for long-lived assets, including property and equipment, intangible, and other assets.
- Realization values of various assets such as net deferred tax assets, trade receivables, inventories, insurance receivables, and goodwill.

The accuracy of these and other estimates may also be materially affected by the uncertainties arising under Grace's Chapter 11 proceeding.

*Financial Instruments* – Grace periodically enters into interest rate swap agreements and foreign exchange forward and option contracts to manage exposure to fluctuations in interest and foreign currency exchange rates. Grace does not hold or issue derivative financial instruments for trading purposes. At June 30, 2005, Grace did not hold and had not issued any derivative financial instruments.

*Effect of New Accounting Standards* – In March 2005, the Financial Accounting Standards Board ("FASB") issued FIN 47, "Accounting for Conditional Asset Retirement Obligations—an interpretation of FASB Statement No. 143," to provide clarification that the term *conditional asset retirement obligation*, refers to a legal obligation to perform an asset retirement activity in which the timing and/or method of settlement are conditional on a future event that may or may not be within the control of the entity. This Interpretation clarifies that an entity is required to recognize a liability for the fair value of a conditional asset retirement obligation when incurred if the liability's fair value can be reasonably estimated. This Interpretation is effective no later than the end of fiscal years ending after December 31, 2005. Grace believes that this Interpretation will not have a material impact on the Consolidated Financial Statements.

In December 2004, the FASB revised Statement of Financial Accounting Standards ("SFAS") No. 123, "Share-Based Payment," to require companies to measure and recognize in operations the cost of employee services received in exchange for an award of equity instruments based on the grant-date fair value. The provisions of this standard are effective as of the beginning of the first annual reporting period that begins after June 15, 2005. Grace believes that this standard will not have a material impact on the Consolidated Financial Statements.

In November 2004, the FASB issued SFAS No. 151, "Inventory Costs – an Amendment of ARB No. 43, Chapter 4," to provide clarification that abnormal amounts of idle facility expense, freight, handling costs, and wasted material be recognized as current-period charges. In addition, this standard requires that allocation of fixed production overheads to the costs of conversion be based on the normal capacity of the production facilities. The provisions of this standard are effective for inventory costs incurred during fiscal years beginning after June 15, 2005. Grace is currently evaluating the impact the standard will have on the Consolidated Financial Statements.

## 2. Chapter 11 Related Information

*Plan of Reorganization* – On November 13, 2004 Grace filed a plan of reorganization, as well as several associated documents, including a disclosure statement, with the Bankruptcy Court. On January 13, 2005, Grace filed an amended plan of reorganization (the "Plan") and related documents to address certain objections of creditors and other interested parties. The Plan is supported by committees representing general unsecured creditors and equity holders, but is not supported by committees representing asbestos personal injury claimants and asbestos property damage claimants.

Under the terms of the Plan, a trust would be established under Section 524(g) of the Bankruptcy Code to which all pending and future asbestos-related claims would be channeled for resolution. Grace has requested that the Bankruptcy Court conduct an estimation hearing to determine the

amount that would need to be paid into the trust on the effective date of the Plan to satisfy the estimated liability for each class of asbestos claimants and trust administration costs and expenses over time. The Plan provides that Grace's asbestos-related liabilities would be satisfied using cash and securities from Grace and third parties. Payments under a settlement agreement with Sealed Air Corporation ("Sealed Air") and its subsidiary, Cryovac, Inc. ("Cryovac"), will be paid by Cryovac directly to the asbestos trust. The Sealed Air settlement agreement has been approved by the Bankruptcy Court but remains subject to the fulfillment of specified conditions. (See "Litigation Proceedings in Bankruptcy Court" below for a description of the Sealed Air settlement agreement).

The Plan will become effective only after a vote of eligible creditors and with the approval of the Bankruptcy Court and the U.S. District Court for the District of Delaware. Votes on the Plan may not be solicited until the Bankruptcy Court approves the disclosure statement. The Debtors have received an extension of their exclusive right to propose a plan of reorganization through August 29, 2005.

Under the terms of the Plan, claims will be would satisfied under the Chapter 11 cases as follows:

Asbestos-Related Claims and Costs
A trust would be established under Section 524(g) of the Bankruptcy Code to which all pending and future asbestos-related claims would be channeled for resolution. The asbestos trust would be funded by both Grace and Cryovac directly. The trust would utilize specified trust distribution procedures to satisfy the following allowed asbestos-related claims and costs:

1. *Personal injury claims that meet specified exposure and medical criteria (Personal Injury-Symptomatic Eligible or "PI-SE" Claims)* – In order to qualify for this class, claimants would have to prove that their health is impaired from meaningful exposure to asbestos-containing products formerly manufactured by Grace.

2. *Personal injury claims that do not meet the exposure and medical criteria necessary to qualify as PI-SE Claims (Personal Injury-*

*Asymptomatic and Other or "PI-AO" Claims)* – This class would contain all asbestos-related personal injury claims against Grace that do not meet the specific requirements to be PI-SE Claims, but do meet certain other specified exposure and medical criteria.

3. *Property damage claims, including claims related to ZAI ("PD Claims")* – In order to qualify for this class, claimants would have to prove Grace liability for loss of property value or remediation costs related to asbestos-containing products formerly manufactured by Grace.

4. *Trust administration costs and legal expenses.*

The claims arising from such proceedings would be subject to this classification process as part of the Plan.

Grace has requested that the Bankruptcy Court conduct estimation hearings to determine the amounts that would need to be paid into the trust on the effective date of the Plan to satisfy the estimated liability for each class of asbestos claimants and trust administration costs and expenses over time. The amounts to fund PI-SE Claims, PD Claims and the expense of trust administration would be capped at the amount determined through the estimation hearing; therefore, after initial funding of the asbestos trust by Grace and Cryovac, Grace would have no further obligation for these claims and costs. Amounts required to fund PI-AO Claims would not be capped, so if the amount funded in respect thereof later proved to be inadequate, Grace would be responsible for contributing additional funds into the asbestos trust to satisfy PI-AO Claims. The Bankruptcy Court has indicated that it will enter case management orders for estimating liability for personal injury claims and property damage claims, excluding ZAI claims. Grace does not expect the estimation process to be completed before mid-2006.

Asbestos personal injury claimants would have the option either to litigate their claims against the trust in federal court in Delaware or, if they meet specified eligibility criteria, accept a settlement

amount based on the severity of their condition. Asbestos property damage claimants would be required to litigate their claims against the trust in federal court in Delaware. The Plan provides that, as a condition precedent to confirmation, the maximum estimated aggregate funding amount for all asbestos-related liabilities (PI-SE, PI-AO and PD including ZAI) and trust administration costs and expenses as determined by the Bankruptcy Court cannot exceed $1,613 million, which Grace believes would fund over $2 billion in claims, costs and expenses over time.

The PI-SE Claims, the PD Claims and the related trust administration costs and expenses would be funded with (1) a payment of $512.5 million in cash (plus interest at 5.5% compounded annually from December 21, 2002) and nine million shares of common stock of Sealed Air to be made directly by Cryovac to the asbestos trust pursuant to the terms of a settlement agreement resolving asbestos-related, successor liability and fraudulent transfer claims against Sealed Air and Cryovac, and (2) Grace common stock. The amount of Grace common stock required to satisfy these claims will depend on the liability measures approved by the Bankruptcy Court and the value of the Sealed Air settlement, which changes daily with the accrual of interest and the trading value of Sealed Air common stock. The Sealed Air settlement agreement has been approved by the Bankruptcy Court, but remains subject to the fulfillment of specified conditions.

The PI-AO Claims would be funded with warrants exercisable for that number of shares of Grace common stock which, when added to the shares issued directly to the trust on the effective date of the Plan, would represent 50.1% of Grace's voting securities. If the common stock issuable upon exercise of the warrants is insufficient to pay all PI-AO Claims (the liability for which is uncapped under the Plan), then Grace would pay any additional liabilities in cash.

## Other Claims
The Plan provides that all allowed claims other than those covered under the asbestos trust would be paid 100% in cash (if such claims qualify as administrative or priority claims) or 85% in cash and 15% in Grace common stock (if such claims

qualify as general unsecured claims). Grace estimates that claims with a recorded value of approximately $1,164 million, including interest accrued through June 30, 2005, would be satisfied in this manner at the effective date of the Plan. Grace would finance these payments with cash on hand, cash from Fresenius Medical Care Holdings, Inc. ("Fresenius") paid in settlement of asbestos and other Grace-related claims, new Grace debt, and Grace common stock. Grace would satisfy other non-asbestos related liabilities and claims (primarily certain environmental, tax, pension and retirement medical obligations) as they become due and payable over time. Proceeds from available product liability insurance applicable to asbestos-related claims would supplement operating cash flow to service new debt and liabilities not paid on the effective date of the Plan.

## Effect on Grace Common Stock
The Plan provides that Grace common stock will remain outstanding at the effective date of the Plan, but that the interests of existing shareholders would be subject to dilution by additional shares of common stock issued under the Plan. In addition, in order to preserve significant tax benefits from net operating loss carryforwards ("NOLs"), which are subject to elimination or limitation in the event of a change in control (as defined by the Internal Revenue Code) of Grace, the Plan places restrictions on the purchase of Grace common stock. The restrictions would prohibit (without the consent of Grace), for a period of three years, a person or entity from acquiring more than 4.75% of the outstanding Grace common stock or, for those persons already holding more than 4.75%, prohibit them from increasing their holdings. The Bankruptcy Court has also approved the trading restrictions described above until the effective date of the Plan.

Grace intends to address all pending and future asbestos-related claims and all other pre-petition claims as outlined in the Plan. However, Grace may not be successful in obtaining approval of the Plan by the Bankruptcy Court and other interested parties. Instead, a materially different plan of reorganization may ultimately be approved and, under the ultimate plan of reorganization, the interests of the Company's shareholders could be substantially diluted or cancelled. The value of Grace common stock following a plan of

4

reorganization, and the extent of any recovery by non-asbestos-related creditors, will depend principally on the allowed value of Grace's asbestos-related claims as determined by the Bankruptcy Court.

***Official Parties to Grace's Chapter 11 Proceedings*** - Three creditors' committees, two representing asbestos claimants and the third representing other unsecured creditors, and a committee representing shareholders have been appointed in the Chapter 11 Cases. These committees, and a legal representative of future asbestos claimants, have the right to be heard on all matters that come before the Bankruptcy Court and are likely to play important roles in the Chapter 11 Cases. The Debtors are required to bear certain costs and expenses of the committees and of the future asbestos claimants' representative, including those of their counsel and financial advisors.

***Claims Filings*** – The Bankruptcy Court established a bar date of March 31, 2003 for claims of general unsecured creditors, asbestos-related property damage claims and medical monitoring claims related to asbestos. The bar date did not apply to asbestos-related personal injury claims or claims related to ZAI, which will be dealt with separately.

Approximately 14,900 proofs of claim were filed by the bar date. Of these claims, approximately 9,400 were non-asbestos related, approximately 4,300 were for asbestos-related property damage, and approximately 1,000 were for medical monitoring. The medical monitoring claims were made by individuals who allege exposure to asbestos through Grace's products or operations. These claims, if sustained, would require Grace to fund ongoing health monitoring costs for qualified claimants. In addition, approximately 500 proofs of claim were filed after the bar date.

Approximately 7,000 of the non-asbestos related claims involve claims by employees or former employees for future retirement benefits such as pension and retiree medical coverage. Grace views most of these claims as contingent and has proposed a plan of reorganization that would retain such benefits. The other non-asbestos related claims include claims for payment of goods and services, taxes, product warranties, principal and interest

under pre-petition credit facilities, amounts due under leases and other contracts, leases and other executory contracts rejected in the Bankruptcy Court, environmental remediation, indemnification or contribution to actual or potential co-defendants in asbestos-related and other litigation, pending non-asbestos-related litigation, and non-asbestos-related personal injury.

The Debtors' have analyzed the claims as filed and have found that many are duplicates, represent the same claim filed against more than one of the Debtors, lack any supporting documentation, or provide insufficient supporting documentation. As of June 30, 2005, the Debtors had filed with the Bankruptcy Court objections to 1,490 claims. Most of these objections were non-substantive (duplicates, no supporting documentation, late filed claims, etc.). Of such claims, 1,198 have been expunged, 215 have been resolved, 34 have been withdrawn, and the remainder will be addressed through the claims objection process and the dispute resolution procedures approved by the Bankruptcy Court. The Debtors expect to file objections to a substantial number of additional claims.

Grace believes that its recorded liabilities for claims subject to the bar date represent a reasonable estimate of the ultimate allowable amount for claims that are not in dispute or have been submitted with sufficient information to both evaluate merit and estimate the value of the claim. The asbestos-related claims are considered as part of Grace's overall asbestos liability and are being accounted for in accordance with the conditions precedent under the Plan, as described in "Accounting Impact" below. As claims are resolved, or where better information becomes available and is evaluated, Grace will make adjustments to the liabilities recorded on its financial statements as appropriate. Any such adjustments could be material to its consolidated financial position and results of operations.

***Litigation Proceedings in Bankruptcy Court*** – In September 2000, Grace was named in a purported class action lawsuit filed in California Superior Court for the County of San Francisco, alleging that the 1996 reorganization involving a predecessor of Grace and Fresenius and the 1998 reorganization involving a predecessor of Grace and Sealed Air

were fraudulent transfers. The Bankruptcy Court authorized the Official Committee of Asbestos Personal Injury Claimants and the Official Committee of Asbestos Property Damage Claimants to proceed with claims against Fresenius and Sealed Air and Cryovac on behalf of the Debtors' bankruptcy estate.

On November 29, 2002, Sealed Air (and Cryovac) and Fresenius each announced that they had reached agreements in principle with such Committees to settle asbestos, successor liability and fraudulent transfer claims related to such transactions (the "litigation settlement agreements"). Under the terms of the Fresenius settlement, subject to certain conditions, Fresenius would contribute $115.0 million to the Debtors' estate as directed by the Bankruptcy Court upon confirmation of the Debtors' plan of reorganization, subject to the fulfillment of specified conditions. In July 2003, the Fresenius settlement was approved by the Bankruptcy Court. Under the terms of the proposed Sealed Air settlement, subject to certain conditions, Cryovac would make a payment of $512.5 million (plus interest at 5.5% compounded annually, commencing on December 21, 2002) and nine million shares of Sealed Air common stock (collectively valued at $1,034.8 million as of June 30, 2005), as directed by the Bankruptcy Court upon confirmation of the Debtors' plan of reorganization. In June 2005, the Sealed Air settlement was approved by the Bankruptcy Court, subject to the fulfillment of specified conditions.

**Debt Capital** – All of the Debtors' pre-petition debt is in default due to the Filing. The accompanying Consolidated Balance Sheets reflect the classification of the Debtors' pre-petition debt within "liabilities subject to compromise."

The Debtors have entered into a debtor-in-possession post-petition loan and security agreement with Bank of America, N.A. (the "DIP facility") in the aggregate amount of $250 million. The term of the DIP facility expires on April 1, 2006.

**Accounting Impact** – The accompanying Consolidated Financial Statements have been prepared in accordance with Statement of Position 90-7 ("SOP 90-7"), "Financial Reporting by Entities in Reorganization Under the Bankruptcy Code,"

promulgated by the American Institute of Certified Public Accountants. SOP 90-7 requires that financial statements of debtors-in-possession be prepared on a going concern basis, which contemplates continuity of operations, realization of assets and liquidation of liabilities in the ordinary course of business. However, as a result of the Filing, the realization of certain of the Debtors' assets and the liquidation of certain of the Debtors' liabilities are subject to significant uncertainty. While operating as debtors-in-possession, the Debtors may sell or otherwise dispose of assets and liquidate or settle liabilities for amounts other than those reflected in the Consolidated Financial Statements. Further, the ultimate plan of reorganization could materially change the amounts and classifications reported in the Consolidated Financial Statements.

Pursuant to SOP 90-7, Grace's pre-petition liabilities that are subject to compromise are required to be reported separately on the balance sheet at an estimate of the amount that will ultimately be allowed by the Bankruptcy Court. As of June 30, 2005, such pre-petition liabilities include fixed obligations (such as debt and contractual commitments), as well as estimates of costs related to contingent liabilities (such as asbestos-related litigation, environmental remediation, and other claims). Obligations of Grace subsidiaries not covered by the Filing continue to be classified on the Consolidated Balance Sheets based upon maturity dates or the expected dates of payment. SOP 90-7 also requires separate reporting of certain expenses, realized gains and losses, and provisions for losses related to the Filing as reorganization items.

Grace has not recorded the benefit of any assets that may be available to fund asbestos-related and other liabilities under the litigation settlements with Sealed Air and Fresenius, as such agreements are subject to conditions which, although expected to be met, have not been satisfied and approved by the Bankruptcy Court. The value available under these litigation settlement agreements as measured at June 30, 2005, was $1,149.8 million comprised of $115.0 million in cash from Fresenius and $1,034.8 million in cash and stock from Cryovac. Payments under the Sealed Air settlement will be paid directly to the asbestos trust by Cryovac, and will be accounted for as a

satisfaction of a portion of Grace's recorded asbestos-related liability and a credit to shareholder's equity.

Grace's Consolidated Balance Sheets separately identify the liabilities that are "subject to compromise" as a result of the Chapter 11 proceedings. In Grace's case, "liabilities subject to compromise" represent pre-petition liabilities as determined under U.S. generally accepted accounting principles. Changes to the recorded amount of such liabilities will be based on developments in the Chapter 11 Cases and management's assessment of the claim amounts that will ultimately be allowed by the Bankruptcy Court. Changes to pre-petition liabilities subsequent to the Filing Date reflect: 1) cash payments under approved court orders; 2) the terms of Grace's proposed plan of reorganization, as discussed above, including the accrual of interest on pre-petition debt and the adjustment to Grace's recorded asbestos-related liability; 3) accruals for employee-related programs; and 4) changes in estimates related to other pre-petition contingent liabilities.

***Change in Liabilities Subject to Compromise -*** Following is a reconciliation of the changes in pre-filing date liability balances for the period from the Filing Date through June 30, 2005.

| (In millions) | Current Month | Cumulative Since Filing |
|---|---|---|
| Balance, beginning of period ........... | $ 3,132.3 | $ 2,366.0 |
| Cash disbursements and/or reclassifications under Bankruptcy Court orders: | | |
| Freight and distribution order ....... | -- | (5.7) |
| Trade accounts payable order ....... | -- | (9.1) |
| Settlements of Chapter 11 contingencies.................... | (21.4) | (119.7) |
| Other court orders including employee wages and benefits, sales and use tax and customer programs................................. | (0.6) | (278.8) |
| Expense/(income) items: | | |
| Interest on pre-petition liabilities.. | 4.0 | 178.4 |
| Employee-related accruals............. | 0.7 | 22.4 |
| Change in estimate of asbestos-related contingencies............... | -- | 744.8 |
| Change in estimate of environmental contingencies.... | -- | 240.6 |
| Change in estimate of income tax contingencies.......................... | (4.6) | (2.8) |
| Balance sheet reclassifications ......... | -- | (25.7) |
| Balance, end of period..................... | $ 3,110.4 | $ 3,110.4 |

Additional liabilities subject to compromise may arise due to the rejection of executory contracts or unexpired leases, or as a result of the allowance of contingent or disputed claims.

## 3. Other Balance Sheet Accounts

| (In millions) | June 30, 2005 | | Filing Date | |
|---|---|---|---|---|
| **Inventories** | | | | |
| Raw materials | $ | 20.2 | $ | 20.3 |
| In process | | 21.2 | | 16.2 |
| Finished products | | 73.3 | | 63.8 |
| General merchandise | | 13.1 | | 9.6 |
| Less: Adjustment of certain inventories to a last-in/first-out (LIFO) basis | | (44.0) | | (29.3) |
| | $ | 83.8 | $ | 80.6 |
| **Other Assets** | | | | |
| Deferred pension costs | $ | 2.9 | $ | 227.9 |
| Deferred charges | | 41.7 | | 40.4 |
| Long-term receivables | | 7.4 | | 1.9 |
| Long-term investments | | -- | | 2.1 |
| Patents, licenses and other intangible assets, net | | 20.9 | | 25.2 |
| Pension – unamortized prior service cost | | 15.3 | | 8.1 |
| Other assets | | -- | | 2.9 |
| | $ | 88.2 | $ | 308.5 |
| **Other Current Liabilities** | | | | |
| Accrued compensation | $ | 32.1 | $ | -- |
| Accrued commissions | | 3.9 | | -- |
| Customer programs | | 12.8 | | -- |
| Accrued utilities | | 0.2 | | -- |
| Accrued freight | | 3.8 | | -- |
| Accrued reorganization fees | | 12.9 | | -- |
| Other accrued liabilities | | 32.4 | | -- |
| | $ | 98.1 | $ | -- |
| **Other Liabilities** | | | | |
| Deferred royalty income – non-filing entities | $ | -- | $ | 31.8 |
| Pension – underfunded plans | | 334.7 | | -- |
| Other accrued liabilities | | 42.6 | | -- |
| | $ | 377.3 | $ | 31.8 |
| **Other Liabilities Subject to Compromise** | | | | |
| Other postretirement benefits | $ | 111.1 | $ | 185.4 |
| Environmental remediation | | 320.6 | | 164.8 |
| Retained obligations of divested businesses | | 15.6 | | 45.5 |
| Special pension arrangements | | 74.2 | | 70.8 |
| Deferred compensation | | 4.2 | | 8.2 |
| Self insurance reserve | | 11.6 | | 11.8 |
| Accrued interest on pre-petition liabilities | | 30.4 | | -- |
| Other accrued liabilities | | 3.4 | | 82.1 |
| | $ | 571.1 | $ | 568.6 |

## 4. Life Insurance

Grace is the beneficiary of life insurance policies on certain current and former employees with a net cash surrender value of $81.3 million at June 30, 2005. The policies were acquired to fund various employee benefit programs and other long-term liabilities and are structured to provide cash flow (primarily tax-free) over an extended number of years.

The following table summarizes the components of net cash value at June 30, 2005 and Filing Date:

| Components of Net Cash Value (In millions) | June 30, 2005 | | Filing Date | |
|---|---|---|---|---|
| Gross cash value | $ | 105.3 | $ | 453.7 |
| Principal – policy loans | | (22.7) | | (390.3) |
| Accrued interest – policy loans | | (1.3) | | 0.7 |
| Net cash value | $ | 81.3 | $ | 64.1 |
| Insurance benefits in force | $ | 193.7 | | $2,286.0 |

Grace's financial statements display income statement activity and balance sheet amounts on a net basis, reflecting the contractual interdependency of policy assets and liabilities.

In January 2005, Grace surrendered and terminated most of these life insurance policies and received $14.8 million of net cash value from the termination. As a result of the termination, gross cash value of the policies was reduced by approximately $381 million and policy loans of approximately $365 million were satisfied. Grace's insurance benefits in force were reduced by approximately $2 billion.

## 5. Debt

On June 30, 2005, and Filing Date, Grace's debt was as follows:

| Components of Debt (In millions) | June 30, 2005 | Filing Date |
|---|---|---|
| **Debt payable within one year** | | |
| DIP facility ................................. | $ -- | $ -- |
| Other short-term borrowings ...... | -- | -- |
| | $ -- | $ -- |
| **Debt payable after one year** | | |
| DIP facility .................................. | $ -- | $ -- |
| Other long-term borrowings........ | -- | -- |
| | $ -- | $ -- |
| **Debt Subject to Compromise** | | |
| Bank borrowings ........................ | $ 500.0 | $ 500.0 |
| 8.0% Notes Due 2004 ................. | -- | 5.7 |
| 7.75% Notes Due 2002 ............... | -- | 2.0 |
| Other borrowings ........................ | 14.5 | 1.2 |
| Accrued interest .......................... | 150.3 | 2.6 |
| | $ 664.8 | $ 511.5 |

In April 2001, the Debtors entered into the DIP facility for a two-year term in the aggregate amount of $250 million. The DIP facility is secured by a priority lien on substantially all assets of the Debtors, and bears interest based on LIBOR. The Debtors have extended the term of the DIP facility through April 1, 2006. Grace had no outstanding borrowings under the DIP facility as of June 30, 2005; however, $29.0 million of standby letters of credit were issued and outstanding under the facility. The letters of credit, which reduce available funds under the facility, were issued primarily for trade-related matters such as performance bonds, and certain insurance and environmental matters.

# Bank Statements

JPMorganChase       **Statement of Account**

JPMorgan Chase Bank, N.A.

TS

W R GRACE & CO
C/O CORPORATE ACCOUNTING
7500 GRACE DRIVE
COLUMBIA  MD  21044-4098

In US Dollars
Account No: 910-1-013572
Statement Start Date: 30 APR 2005
Statement End Date: 31 MAY 2005
Statement Code: 000-USA-21
Statement No: 005
Page 1 of 4

| | Credits | Debits | Checks |
|---|---|---|---|
| Total Credits | | | 0 |
| Total Debits (excl checks) | | 46,482.41 | 0 |
| Total Checks Paid | | 46,482.41 | 0 |

**LEDGER BALANCES**

| Date | Balance |
|---|---|
| 02MAY | 62,078.42 |
| 03MAY | 47,632.37 |
| 04MAY | 138,451.74 |
| 05MAY | 127,938.01 |
| 06MAY | 118,092.92 |
| 09MAY | 109,401.93 |
| 10MAY | 96,284.48 |
| 11MAY | 88,506.37 |
| 12MAY | 71,795.52 |
| 13MAY | 63,858.98 |
| 16MAY | 52,012.43 |
| 17MAY | 41,754.56 |
| 18MAY | 128,493.70 |
| 19MAY | 113,693.28 |
| 20MAY | 106,163.27 |
| 23MAY | 100,676.63 |
| 24MAY | 86,762.77 |
| 25MAY | 78,596.07 |
| 26MAY | 66,646.30 |
| 27MAY | 53,582.54 |
| 31MAY | 46,482.41 |

**COLLECTED BALANCES**

| Date | Balance |
|---|---|
| 02MAY | 62,078.42 |
| 03MAY | 47,632.37 |
| 04MAY | 138,451.74 |
| 05MAY | 127,938.01 |
| 06MAY | 118,092.92 |
| 09MAY | 109,401.93 |

FT CODE:
USD - SAME DAY FUNDS
USN - NEXT DAY FUNDS
US1 - ONE DAY FLOAT
US2 - TWO DAY FLOAT
US3 - THREE DAY FLOAT
US4 - FOUR DAY FLOAT
US5 - FIVE DAY FLOAT
USM - MIXED FLOAT

PLEASE EXAMINE THIS STATEMENT OF ACCOUNT AT ONCE. THE MAINTENANCE OF THIS ACCOUNT IS SUBJECT TO THE PROVISIONS OF THE NEW YORK UNIFORM COMMERCIAL CODE AND THE BANK'S TERMS AND CONDITIONS FOR ACCOUNTS AND DEPOSITS. THE BANK DISCLAIMS RESPONSIBILITY FOR ANY ERROR IN OR IMPROPER CHARGE TO THE ACCOUNT AS REFLECTED ON THE STATEMENT UNLESS YOU INFORM THE BANK OF THE ERROR OR CHARGE WITHIN SIXTY DAYS OF THE DELIVERY, MAILING OR AVAILABILITY OF THE STATEMENT AND CONCERNING CHECKS PAID BY US ALSO AS TO THE INSTRUCTIONS ON THE REVERSE SIDE OF THIS STATEMENT IN ORDER TO DIRECT YOUR INQUIRIES TO THE PROPER DEPARTMENT FOR PROMPT ACTION

JPMorgan Chase Bank. N.A.

# JPMorganChase

## Statement of Account

TS

W R GRACE & CO
C/O CORPORATE ACCOUNTING
7500 GRACE DRIVE
COLUMBIA   MD  21044-4098

| | In US Dollars |
|---|---|
| Account No: | 910-1-013572 |
| Statement Start Date: | 30 APR 2005 |
| Statement End Date: | 31 MAY 2005 |
| Statement Code: | 000-USA-21 |
| Statement No: | 005 |
| | Page  2  of  4 |

| | | | In US Dollars |
|---|---|---|---|
| 10MAY | | | 96,294.48 |
| 11MAY | | | 88,506.37 |
| 12MAY | | | 71,799.52 |
| 13MAY | | | 63,858.98 |
| 16MAY | | | 52,012.43 |
| 17MAY | | | 41,754.56 |
| 18MAY | | | 128,493.70 |
| 19MAY | | | 113,693.28 |
| 20MAY | | | 108,163.27 |
| 23MAY | | | 100,676.83 |
| 24MAY | | | 86,762.77 |
| 25MAY | | | 78,596.07 |
| 26MAY | | | 66,646.30 |
| 27MAY | | | 53,582.54 |
| 31MAY | | | 46,482.41 |

| 04MAY 04MAY | | USD OUR: 0512 | GOVERNMENT ALLOTMENT DEBIT COVERING DRAFTS TO A/C NO. 012-2-416598 FOR WORK OF 05/04/05 W R GRACE & CO C/O CORPORATE ACCOUNTING 7500 GRACE DRIVE COLUMBIA MD 21044-4098 | 18,567.07 |
| 05MAY 05MAY | | USD OUR: 0513248B892WA | GOVERNMENT ALLOTMENT DEBIT COVERING DRAFTS TO A/C NO. 012-2-416598 FOR WORK OF 05/05/05 W R GRACE & CO C/O CORPORATE ACCOUNTING 7500 GRACE DRIVE COLUMBIA MD 21044-4098 | 9,845.09 |
| 06MAY 06MAY | | USD OUR: 0512908B892WA | GOVERNMENT ALLOTMENT DEBIT COVERING DRAFTS TO A/C NO. 012-2-416598 FOR WORK OF 05/06/05 W R GRACE & CO C/O CORPORATE ACCOUNTING 7500 GRACE DRIVE COLUMBIA MD 21044-4098 | 8,690.99 |
| 09MAY 09MAY | | USD OUR: 0513888891WA | GOVERNMENT ALLOTMENT DEBIT COVERING DRAFTS TO A/C NO. 012-2-416598 FOR WORK OF 05/09/05 W R GRACE & CO C/O CORPORATE ACCOUNTING 7500 GRACE DRIVE COLUMBIA MD 21044-4098 | 13,107.45 |
| 10MAY 10MAY | | USD OUR: 0513108B89WA | GOVERNMENT ALLOTMENT DEBIT COVERING DRAFTS TO A/C NO. 012-2-416598 FOR WORK OF 05/10/05 W R GRACE & CO C/O CORPORATE ACCOUNTING 7500 GRACE DRIVE COLUMBIA MD 21044-4098 | 7,788.11 |
| 11MAY 11MAY | | USD OUR: 0513268B89WA | GOVERNMENT ALLOTMENT DEBIT COVERING DRAFTS TO A/C NO. 012-2-416598 FOR WORK OF 05/11/05 W R GRACE & CO C/O CORPORATE ACCOUNTING 7500 GRACE DRIVE COLUMBIA MD 21044-4098 | 16,710.85 |
| 12MAY 12MAY | | USD OUR: 0513336B89WA | GOVERNMENT ALLOTMENT DEBIT COVERING DRAFTS TO A/C NO. 012-2-416598 FOR WORK OF 05/12/05 W R GRACE & CO C/O CORPORATE ACCOUNTING 7500 GRACE DRIVE COLUMBIA MD 21044-4098 | 7,936.54 |
| 13MAY 13MAY | | USD OUR: 0513466B89WA | GOVERNMENT ALLOTMENT DEBIT COVERING DRAFTS TO A/C NO. | 11,846.55 |