IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

Objection Deadline: August 5, 2005 at 4:00 p.m.
Hearing Date: August 29, 2005 at 2:00 p.m.

### DEBTORS' OPPOSITION TO SPEIGHTS & RUNYAN'S MOTION TO QUASH (Docket No. 9002) AND SUPPLEMENTAL MOTION TO QUASH (Docket No. 9070) SUBPOENA

With even the most limited discovery to date, the Debtors have uncovered overwhelming evidence that Speights & Runyan ("Speights") has signed and filed asbestos PD claims on behalf of claimants Speights does not represent. *See, e.g.*, Exhibit 1 (Debtors' Thirteenth Omnibus Objection to 2,938 Unauthorized Claims Filed By The Law Firm Speights & Runyan).[1] There is no longer any question as to *whether* Speights filed unauthorized claims; the only question remaining is *how many* unauthorized claims Speights filed. The discovery Speights now seeks to quash is aimed solely -- and squarely -- at determining the extent of Speights' improper claims-filing practices in the Debtors' Chapter 11 cases.

One thing is plain: Speights cannot be permitted both to pursue claims in these cases on behalf of claimants Speights does not represent and at the same time block the very discovery that would prove Speights did not have authority to sign and file those claims in the

---

[1] This Thirteenth Omnibus Objection was filed with this Court on July 18, 2005 as Exhibit 1 to Docket No. 9008, a motion seeking limited waiver of Delaware Local Rule 3007-1 for the purpose of filing an Omnibus Objection which addresses more than 150 substantive claims at once. This motion is set to be heard on August 29, 2005.

first place. If this Court is prepared to sustain the Debtors' Thirteenth Omnibus Objection, aimed at disallowing and expunging *all* claims filed by Speights, based on the factual record the Debtors have been able to muster to date, then Speights' pending Motions to Quash are moot. Alternatively, if the Court has any doubt about sustaining the Debtors' Thirteenth Omnibus Objection, then the Motions to Quash must be denied and the Debtors' discovery must be permitted to proceed. In further support of this opposition, the Debtors incorporate by reference their Thirteenth Omnibus Objection and further state as follows:

## BACKGROUND[2]

1.  On June 17, 2005, the Debtors initially filed objections to 10 Speights claims through their Twelfth Omnibus Objection. (Docket No. 8640.) This small and admittedly unscientific random sampling was selected simply as an initial means of getting a handle on the nature of the pending 2,938 claims signed and filed by Speights attorneys in these Chapter 11 cases. Once the Twelfth Omnibus Objection was filed, the Debtors sought to take discovery of a handful of these claimants to test whether Speights did indeed represent them or whether Speights had filed claims on behalf of claimants Speights did not represent. The response was remarkable:

- **American Medical Association Building**, Claim No. 6661. Counsel for the AMA submitted an affidavit stating "I spoke with various representatives of the law firm of Speights & Runyan ("S&R") in late 2002 and early 2003 . . . *I informed S&R that the AMA did not wish S&R to represent it in this proceeding.*"

- **Harvard Public Health**, Claim No. 6726. Harvard submitted a letter and affidavit confirming that it "did not authorize Speights & Runyan to represent it and file a proof of claim on its behalf in the Grace bankruptcy."

---

[2] The facts, set out briefly in this Section, are discussed in more detail in Section I of the Thirteenth Omnibus Objection attached as Exhibit 1. The voluminous exhibits to the Thirteenth Omnibus objection itself can be found as attachments at Docket No. 9008.

2

- **Employers Mutual Job**, Claim No. 6672. Employers Insurance Company of Wausau stated in a letter: "Based on the response to my inquiries, Wausau has *no record of ever having retained the law firm of Speights & Runyan and has no record of authorizing the firm to file a proof of claim on Wausau's behalf*."

- **McCormick Place**, Claim No. 6736. The McCormick Place, which is owned and operated by the Metropolitan Pier and Exposition Authority ("MPEA"), stated in a letter that "(i) MPEA has never retained the law firm of Speights & Runyan to represent MPEA or McCormick Place in the Grace Bankruptcy Cases; and (ii) *MPEA has never authorized the law firm of Speights & Runyan to file a Proof of Claim on behalf of MPEA or McCormick Place in the Grace Bankruptcy Cases*."

- **Maryland Casualty Company**, Claim No. 6721. Maryland Casualty Company ("MCC") submitted a letter to "confirm that (i) MCC has never retained the law firm of Speights & Runyan to represent MCC in the Grace Bankruptcy Cases; and (ii) *MCC never authorized the law firm of Speights & Runyan to file a proof of claim on MCC's behalf in the Grace Bankruptcy Cases*."

- **Northwest Community Hospital**, Claim No. 6734. Northwest Community Hospital provided a letter stating that it "*has no knowledge of a firm named Speights & Runyan regarding any matter*."

- **Pilot Life Insurance Company**, Claim No. 6701. Counsel for Jefferson-Pilot submitted a letter stating that "to the best of my knowledge, *neither Jefferson-Pilot nor any of its subsidiaries retained the law firm of Speights & Runyan to represent it or file a proof of claim on its behalf*" in the Grace bankruptcy.

- **Building Laborers Local 310**, Claim No. 11591. For this claim, the Debtors had received a letter sent in December 2004 by counsel for Building Laborers Local 310 in Cleveland, Ohio, stating that Speights-filed Claim No. 11591 "had been *filed on behalf of my client without authorization*."

- **Byars Machine Company**, Claim No. 10873. Speights admitted in a signed stipulation that it "*had no communication with this claimant before filing this claim in Grace's Chapter 11*."

2.      These examples (some of which are attached as exhibits A, C, E, Q, S, T and U to the Thirteenth Omnibus Objection at Docket No. 9008) are attached to this Opposition as group Exhibit 2. These responses also led the Debtors to file the pending Thirteenth Omnibus Objection aimed at disallowing *all* 2,938 claims signed and filed by the Speights firm.

3

3. As another means of testing Speights' authority to file proofs of claim in these Chapter 11 cases, the Debtors served discovery in July 2005 on the Speights firm itself. Specifically, the Debtors sought documentary evidence and testimony to determine whether Speights had the authority to file PD claims in certain express categories spelled out in the Rider attached to the Speights subpoena. Exhibit 3. These categories, not surprisingly, are the same categories of claims the Debtors seek to disallow in the Thirteenth Omnibus Objection on the basis that Speights has not provided proper proof of authority to bring those claims. The discovery sought documents and testimony from the Speights firm itself, plus deposition testimony from Daniel Speights and Amanda Steinmeyer, the two attorneys at the Speights firm who between them personally signed every one of the 2,938 claims filed by Speights.

4. Speights' Motion to Quash (Docket No. 9002) is aimed at preventing the Debtors from obtaining the documents requested in the subpoena. Speights' Supplemental Motion to Quash (Docket No. 9070) is aimed at preventing the depositions from going forward.

5. Notably, Speights' two Motions to Quash are merely the latest in a series of stumbling blocks laid out by that firm, each expressly and transparently designed to prevent judicial review of Speights' claims filing practices. Other attempts by Speights to avoid judicial scrutiny of these claims include:

- *First*, in June and July 2005, Speights sought to prevent the Debtors from taking depositions of the handful of claimants identified in the Twelfth Omnibus Objection discussed above. *See* Exhibit 1 at Section I.F; Docket No. 8947. Fortunately, Speights' attempts became moot when the Debtors were flooded with the letters and affidavits from claimants attached hereto at Exhibit 2, all denying that Speights had authority to file claims on their behalf;

- *Second*, beginning on June 29, 2005 and in violation of Rule 3006 (which requires hearing and a Court Order to withdraw claims to which an objection has been filed),

4

Speights attempted to withdraw 8 of the 10 claims described above that were the subject of the Debtors' Twelfth Omnibus Objection, including "withdrawing" claims on behalf of claimants Speights did not represent. *See* Exhibit 1 at Section I.H;

- *Third*, Speights' pending opposition to the Debtors' Twelfth Omnibus Objection, set for hearing on August 29, 2005, pointedly ignores the evidentiary record above demonstrating Speights' lack of authority to file these claims and seeks to avoid judicial review by arguing that the issue was mooted by its "withdrawal" of these claims[3];

- *Fourth*, as described in Exhibit 1 at Section I.H, from June 29, 2005 through July 5, 2005, Speights also attempted to withdraw more than 170 additional PD claims, including 46 phantom claims *on behalf of buildings for which Speights had never filed a proof of claim in the first place. See generally* Docket Nos. 8710 through 8936. Plainly this step was taken to avoid review of yet more improper claims signed and filed by Speights.

- *Fifth*, the Debtors have learned that Speights has a practice of abruptly withdrawing huge quantities of property damage claims when their validity is challenged, including 1,128 in *Federal Mogul*, 328 in *Owens Corning* and 131 in *U.S. Mineral*. *See* Exhibit 1 at Section I.I. There can be no explanation for this behavior *except* that those claims had no validity when filed.

6. The impact of Speights' improper claims filing on the Debtors' reorganization efforts cannot be overstated. At the time these Chapter 11 cases were filed, fewer than 10 traditional asbestos property damage claims were pending against the Debtors. In response to the March 2003 bar date, the Debtors were inundated by over 4,000 claims -- and nearly 75% of those claims were filed by Speights and signed by one of two attorneys at the Speights firm. Either the Debtors must be given the opportunity through discovery to test Speights' authority to bring these claims, or all of these claims should be summarily disallowed and expunged.

---

[3] Additional significant problems in Speights' opposition to the Debtors' Twelfth Omnibus Objection will be set out in Reply papers still to be filed by the Debtors in advance of the August 29 hearing, including Speights' representation that those papers were filed by Speights' firm acting as "class counsel" for a class that does not exist.

## ARGUMENT

7.  In its Motion to Quash and Supplemental Motion to Quash, Speights makes five arguments in an attempt to block the Debtors' discovery. Speights wrongly: (1) claims that the discovery cannot proceed because there is no "contested matter," (2) asserts that the subpoenas were issued by the incorrect court, (3) invokes the attorney-client and work-product privileges to block all discovery, (4) suggests that the several document indices it offered to Debtors obviate the need for discovery, and (5) tries to avoid discovery based on the timing of when the subpoenas were served. None of these arguments has merit.

8.  *First*, Speights' contention that there is no "contested matter" with respect to the claims at issue is false. Grace's November 2004 motion to estimate PD claims gave rise to a contested matter for all PD claims. *See In re Hoffinger Indus., Inc.*, 307 B.R. 112 (Bankr. E.D. Akr. 2004) ("A request for estimation of a claim or right to payment is a contested matter that is subject to Federal Rule of Bankruptcy Procedure 9014.") Moreover, in its June 17, 2005 Twelfth Omnibus Objection to 10 Speights claims, Grace made clear that "[t]he Unauthorized Claims which are the subject of this objection are but a tiny sample of the type of claim S&R filed in this case" and that, on information and belief, "S&R filed hundreds of similarly unauthorized claims against the Debtors." Docket No. 8640 at p. 1. Further, if there were previously any doubt as to whether there is a contested matter with respect to the discovery at issue, that has been made moot by the Thirteenth Omnibus Objection (Docket No. 9008), which is the Debtors' pending request to disallow all 2,938 Speights claims. As described above, the discovery at issue is on all fours with the categories of claims the Debtors' Thirteenth Omnibus Objection seeks to disallow and expunge.

6

9.  ***Second***, Speights' assertion that the subpoenas should have been issued by the District Court of South Carolina, rather than the Bankruptcy Court, is also wrong. Pursuant to 28 U.S.C. § 157(a), the District Court of South Carolina adopted an automatic referral rule, which states that "the Court hereby refers to the Bankruptcy Judges for this District all cases under Title 11 and all proceedings arising under Title 11 or arising in or related to a case under Title 11." Local Civil Rule 83.IX.01 DSC; *see also In re D.T. Indus., Inc.*, 70 B.R. 235, 237 (Bankr. S.D. Fla. 1987) (finding that it was proper to issue a deposition subpoena from the United States Bankruptcy Court for the Southern District of Florida relating to an adversary proceeding pending in the United States Bankruptcy Court for the Southern District of New York). The Debtors issued the subpoenas from the proper court.

10.  ***Third***, Speights cannot use the attorney-client privilege and work-product doctrine to shield itself from all discovery. *See, e.g., In re Application for Subpoena to Kroll*, 224 F.R.D. 326, 329 (E.D. N.Y. 2004) ("Kroll's blanket statement that all 12 requests in the subpoena seek privileged information is insufficient to prove the essential elements of the attorney-client privilege. Accordingly, Kroll's motion to quash the subpoena is denied and Kroll is directed to comply with the subpoena."). Speights' attempt invoke attorney-client privilege is especially ironic, for the question here is whether an attorney-client relationship really exists. *See In re Colton*, 201 F. Supp. 13, 16 (S.D. N.Y. 1961) ("It is usually held that the privilege does not extend to the fact of retention, or to a retainer agreement as evidence of the retention, since such information is required to enable the court to determine that the relation of attorney and client exists."); *In re Grand Jury Subpoena for Attorney Representing Criminal Defendant Reyes-Requena*, 926 F.2d 1423, 1431 (5th Cir. 1991) ("As a general rule, client identity and fee

7

arrangements are not protected as privileged."). Speights cannot avoid discovery merely because some requested documents may potentially fall within the ambit of a privilege. The proper procedure in this situation is to prepare a privilege log. *See Kroll*, 224 F.R.D. at 329.

11. ***Fourth***, Speights' late-filed supplemental document indices in no way obviate the need for discovery. In the Supplemental Motion to Quash, Speights claims that it "has offered the Debtor an index specifically stating the authority which Speights & Runyan relies upon for each of its roughly 2900 claims." What Speights refers to by this comment is unclear. Assuming this reference is to four batches of supplemental document indices Speights has given to the Debtors, however, these indices in no way provide the information the Debtors need.

12. As set out in footnote 18 to the Debtors' Thirteenth Omnibus Objection, and again in a recent exchange of letters between Kirkland & Ellis and the Speights firm, the Speights indices are virtually useless: Speights & Runyan's initial supplement consisted of more than 1,600 pages of a paper index; no documents were supplied and no searchable electronic index was provided. Since that submission was made, Speights provided second and third supplements consisting of enormous paper indices even larger than the first, along with an indication stating that all of these various supplemental indices *may or may not* overlap, with no accompanying explanation as to how the various pieces fit together. Speights recently provided yet a fourth supplement.

13. Without access to the underlying documents or an electronic index, Grace has been unable to do little more than attempt to review these massive paper indices by hand to

try to gain insight as to what is contained in these "supplements." Yet Grace's initial review of samples from these indices indicates that this purportedly "supplemental" material is nothing more than a rehash of material Speights & Runyan previously produced. Grace believes that more than 60% of the entries on the "supplement" are documents that Speights already provided to the Debtors as attachments to the small subset of claims for which that firm submitted putative supporting documentation initially. Further, much of the "supplemental" material on the index does little more than to increase volume and create confusion, such as breaking a 15 chapter document into 15 separate entries on the index by logging each chapter individually.

14.     Moreover, to date Speights has refused to provide the Debtors with either a single set of the actual *new documents* implicated by these supplemental indices or to provide dates or accommodations for the Debtors to review the documents in South Carolina.[4]

15.     *Fifth*, Speights cannot avoid discovery based on the timing of when the subpoenas were served. On June 28, 2005 the Debtors sent Dan Speights a near-final version of the discovery at issue via e-mail and then discussed that discovery with Mr. Speights in a June 29, 2005 meet and confer. Shortly thereafter, the subpoenas were issued on July 1, even though service was not effected in Hampton, South Carolina until July 11.[5] The Speights & Runyan

---

[4] The Debtors have made clear to Speights that if the Debtors are forced to go to South Carolina to attempt to review Speights' problematic and duplicative document dump, the Debtors will ask this Court to order that Speights be charged all of the estate's associated costs and fees.

[5] The process server was informed that Amanda Steinmeyer has left the Speights firm. Speights did not provide a forwarding address for Ms. Steinmeyer, and the Debtors have not been able to serve discovery on her. The Debtors are willing to defer the decision as to whether to proceed with Ms. Steinmeyer's deposition until after discovery of the Speights firm and Mr. Speights has been completed.

subpoena called for document production on July 15 and 30(b)(6) deposition testimony on July 25, and the Speights subpoena called for deposition testimony on July 27.

16.   Given that Speights and his firm knew the content of the subpoenas since late June, they could not avoid discovery based on the service date.  In any event, the notion of any prejudice to Speights from the timing of this discovery is moot at this point, since it is now August:  Speights has been on notice that this deposition and document discovery has been sought for well more than a month; the Court should permit this discovery to go forward immediately.  Rather than quash the subpoenas, the Court is free to modify them to allow Speights a reasonable amount of time to respond.  *See* Fed. R. Civ. Pro. 45(c)(3)(A).

## CONCLUSION

For the reasons stated above, the Debtors respectfully request the Court deny Speights' Motion and Supplemental Motion to Quash the Debtors' subpoenas and allow the requested discovery to go forward. Alternatively, if the Court agrees that based on the record of facts gathered to date all 2,938 Speights-filed claims can be disallowed and expunged, Speights' Motions to Quash can be denied as moot.

Dated: August 5, 2005

        KIRKLAND & ELLIS LLP
        David M. Bernick, P.C.
        Michelle H. Browdy
        Janet Baer
        Michael T. Dierkes
        200 East Randolph Drive
        Chicago, Illinois 60601
        (312) 861-2000

        and

        PACHULSKI, STANG, ZIEHL,
        YOUNG, JONES & WEINTRAUB, PC

        /s/ Scotta McFarland
        Laura Davis Jones (Bar No. 2436)
        David W. Carickoff, Jr. (Bar No.3715)
        Scotta E. McFarland (Bar No. 4184)
        919 North Market Street, 16th Floor
        P.O. Box 8705
        Wilmington, DE 19899-8705
        (302) 652-4100

        Co-Counsel for the Debtors and Debtors
        in Possession