**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **W.R. Grace & Co., et al.,** | ) | **Case No. 01-01139 (JKF)** |
| | ) | |
| | ) | **Jointly Administered** |
| Debtors. | ) | |
| | ) | Re: Docket No. 9062 |

**OBJECTION OF THE OFFICIAL COMMITTEE OF**
**UNSECURED CREDITORS TO THE DEBTORS' MOTION FOR AN**
**ORDER APPROVING THE SETTLEMENT AGREEMENT WITH INTERCAT, INC.**

The Official Committee of Unsecured Creditors of W. R. Grace & Co., et al. (the "Committee"), by and through its undersigned counsel, submits this objection to Debtors' Motion for an Order Approving the Settlement Agreement with Intercat, Inc. In support of its Objection, the Committee respectfully states as follows:

**PRELIMINARY STATEMENT**

The Debtors seek this Court's approval for a not-yet-consummated settlement with Intercat, Inc. ("Intercat"), which Debtors represent would: (1) resolve the patent infringement litigation currently pending against the Debtors in the District Court of Minnesota involving Intercat's 236 Patent and a certain Grace piece of equipment for injecting additives into fluid catalytic cracking units (each, a "Loader") already supplied or sold to Grace's refinery customers, (2) provide for a complete release for Grace and its refinery customers from all alleged past infringement with respect to Loaders, (3) establish mechanisms to avoid future infringement claims over the Loaders and the 236 Patent, as well as other Loader-related issues and (4) establish a mechanism for Intercat and Grace to grant each other an option for a five year period of time to elect to pay royalties and obtain world-wide licenses under patents covering Loader-related inventions each party develops during such time period.

WLM\210602.1

This settlement is to be embodied in three agreements: (i) a settlement agreement, (ii) an Option Agreement and (iii) a Model License Agreement, which the Motion states are to constitute a single comprehensive agreement (collectively referred to herein as the "Settlement Agreement").

However, as of the date of this Objection, the specific terms of the documents comprising the Settlement Agreement have not been agreed to by the parties. It is evident from the Motion that the final form of the Settlement Agreement must embody certain material substantive provisions in order for the Debtors and their estates to achieve the benefits the Debtors represent in the Motion will result from the proposed settlement. But, because there is not yet a Settlement Agreement reflecting the fully negotiated and memorialized terms of the parties' proposed agreement, the Debtors' Motion must be denied as premature. Although, on the surface, the proposed settlement may appear to be reasonable, the Committee submits that until the Settlement Agreement is in final form neither the Committee nor this Court can definitively evaluate the reasonableness to the Debtors' estates of the contemplated settlement.

Consequently, although the Court could at this time authorize the Debtors to engage in negotiations with Intercat toward reaching an agreement along the lines contemplated by the Motion, the Court should refrain from considering approval of the proposed settlement until after the final form of the Settlement Agreement is submitted to the Court, and the Committee has had a full and fair opportunity to review the actual Settlement Agreement to determine whether the Committee believes the terms are fair and reasonable (and thus whether to assent or object to its approval). Accordingly, the Debtors' Motion is premature and must be denied, without prejudice to the Debtors' refiling or resubmitting the motion along with the final form of the Settlement Agreement on sufficient notice to the Committee and other parties in interest.

## BACKGROUND

In October 2002, Nol-Tec Systems, Inc. ("Nol-Tec"), Grace's manufacturer of certain Loaders, was sued by Intercat and an individual plaintiff, David Bartholic, for infringing Intercat's 236 Patent in the United States District Court for the District of Minnesota (the "Minnesota District Court") (the "Litigation"). In 2003, Grace sought and then obtained from this Court authority to intervene in the Litigation. Discovery has been completed in the Litigation, including the depositions of twenty refineries that have used the alleged infringing Loaders, and Grace and Intercat have filed summary judgment motions. The Minnesota District Court has not yet ruled on the summary judgment motions, and the trial date for the Litigation was approaching. A proposed settlement was agreed upon in principle during a court-directed settlement conference before a magistrate. The Debtors admit in their Motion that the parties are still negotiating the terms of the Settlement Agreement and state that, to the extent the parties are unable to agree on the documentation memorializing the terms of the proposed settlement, the magistrate "is the final arbitrator without the possibility of appeal."

## ARGUMENT

**A.    Although the Intercat Settlement Contemplates a Complete Resolution of Allegations of Past Infringement of Intercat's 236 Patent, As Well As the Establishment of Clear Guidelines to Ensure that Grace Will Not be the Subject of Future Infringement Claims, the Latest Draft of the Settlement Agreement Does Not Demonstrate the Parties' Agreement to these Provisions**

The Motion represents that in consideration for the payment of $9.0 million to be made by Grace to Intercat[1], the Settlement will provide (i) for Intercat to provide Grace and its customers with complete releases from all allegations of past infringement of the 236 Patent with respect to all Loaders which are the subject of the Litigation (the "Release"), (ii) for a clear definition describing those Loaders which do not fall within the 236 Patent, consequently permitting Grace and its affiliates to supply or sell those Loaders to their refinery customers without having to pay a royalty to Intercat and without being subject to infringement claims from Intercat (the "Safe Harbor") and (iii) with respect to other Loaders not falling within the Safe Harbor, for Grace and its affiliates to receive from Intercat upon payment of an agreed upon royalty, a prospective license so that Grace and its affiliates can supply or sell such Loaders to their refinery customers without being subject to future 236 Patent infringement claims (the "Prospective License").  Another integral component of the proposed settlement is the option that Grace and Intercat would grant to each other, whereby each party could elect, with the payment of a royalty to be determined at the time of election, to obtain a world-wide license under one or more of their respective patents covering Loader-related inventions.

The Committee has reviewed the initial draft of the settlement documents prepared by Grace, and Intercat's mark-up reflecting substantial revisions to those documents.  It is evident

---

[1]    The settlement provides for Grace to make the $9.0 million payment in the form of quarterly credits against payments Intercat is required to make to Grace as a result of a $22.0 million judgment Grace obtained against Intercat in 1997 in an unrelated patent infringement suit.

-4-

from the last drafts of the settlement documents that the Settlement Agreement is not in final form, and the Committee is informed that the parties' negotiations over material terms of the agreement are continuing. The Committee's review of drafts of the settlement documents reveal that terms still unresolved, and potential issues that the Committee believes have not been addressed, include, but are not limited to, the following:

**The Release**

Although the settlement provides for Intercat to release "Grace and its customers" from all claims based on the 236 Patent with regard to Loaders, the current language does not provide for the release of Grace's customers from liability. As a result, Intercat could subsequently sue Grace's customers for an infringing use of the Loaders. Such action would adversely impact Grace's relationship with its customers and impair Grace's additives business. In addition, Grace has indicated to the Committee that Grace has contractual obligations to indemnify its customers. As a result, the real party in any such litigation would be Grace. Further, although the Committee has been informed that Mr. Bartholic, the other plaintiff in the Litigation, assigned his rights to Intercat, the settlement documents under negotiation do not contain a representation by Intercat that it is the exclusive owner of all rights in the 236 Patent, including the right to sue for patent infringement. In furtherance of Intercat's agreement to provide a _complete_ release to Grace and its customers from _all_ past claims, this representation would remove the possibility of claims against any or all of such entities by the former co-plaintiff to the Litigation.

**The Safe Harbor and Prospective License**

The proposed settlement is to provide definitions to clearly delineate (a) those Loaders which fall outside of the scope of the 236 Patent and consequently relieve Grace and its affiliates

-5-

through such "safe harbor" from being subject to infringement claims by Intercat for prospectively supplying or selling such Loaders to their refinery customers without first obtaining a license from Intercat, from (b) those Loaders for which Grace and its affiliates are required to pay an agreed upon royalty in order to obtain a prospective license so that they can supply or sell such Loaders to their refinery customers without being subject to future 236 Patent infringement claims.  The inclusion of these bright line definitions in the final Settlement Agreement and the actual terms of these definitions are of critical importance to Grace's prospective fluid catalyst additives business.  The most recent draft of the settlement documents reflect that these definitions remain the subject of negotiation.

Although the settlement documents contain aspects of the prospective, royalty-bearing license Grace and its affiliates will be required to pay for in respect of those Loaders not having the benefit of the Safe Harbor, these documents also reflect that a number of potential issues with respect to this component of the settlement remain to be addressed.  These include the existing draft's limitations of the license grant to a particular field of use and to only specific Grace customers, and the uncertainty of whether the license grant applies to the 236 Patent solely or extends to US patents and any foreign patents related to the 236 Patent.

**The Option**

The proposed settlement provides an option grant by each party to the other for a royalty-bearing license for such other party and its customers for Loaders under any of its existing and new US patents and foreign patents that issue prior to June 7, 2010.  It is apparent from the draft settlement documents that the time period within which each party may exercise the option with regard to patents existing as of June 7, 2005 is still under negotiation, as is whether the license will cover all Grace customers.  The Committee has other concerns with respect to the potential

risk of future litigation that appear to it to remain to be addressed by the terms of the current drafts of the settlement documents.

**B.     Whether the Settlement is in the Best Interests of
These Estates Cannot be Determined In the Absence of a
<u>Fully Negotiated Agreement</u>**

As amply demonstrated above, many material terms of the settlement need to be fully negotiated and consenually agreed upon by Grace and Intercat.  These remaining issues have potentially substantial effects on Grace's additives business and the Debtors' exposure to future Loader-related litigation . Although the Debtors' position may ultimately be proven correct that the settlement is in the best interests of these estates, and that the $9.0 million payment to Intercat is a valid use of the estates' assets, neither the Committee, nor, it is respectfully submitted, this Court, can conduct the analysis necessary to reach that conclusion in the absence of a definitive Settlement Agreement.  The Debtors' Motion is premature, and must be denied in the absence of a final Settlement Agreement.

The fact that Magistrate Boylan, the magistrate who conducted the parties' pre-trial settlement conference "is the final arbiter without the possibility of appeal of disputes between the parties" in finalizing the documents, brings additional uncertainty as to what terms and provisions will be in the final form of the Settlement Agreement.  This is yet an additional reason for this Court to withhold consideration of the proposed settlement until after the final form of the Settlement Agreement is submitted to the Court.  Only then will the Committee have a full and fair opportunity to review the Settlement Agreement and determine its position.  The Debtors' Motion should be denied, without prejudice to the Debtors' refiling the Motion as modified to include the final form of the Settlement Agreement for approval on notice.

## RESERVATION OF RIGHTS

The Committee reserves its rights to amend or supplement this Objection at any time and in any manner it believes appropriate, as well as to file supplemental pleadings with the Court as may be applicable in connection with this matter.

## CONCLUSION

For the reasons set forth herein, the Committee respectfully requests that this Court deny the Motion without prejudice, and grant such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
       August 16, 2005

Respectfully submitted,

**STROOCK & STROOCK & LAVAN LLP**
Lewis Kruger
Kenneth Pasquale
(Members of the Firm)
180 Maiden Lane
New York, New York 10038-4982
Tel:   (212) 806-5400
Fax:  (212) 806-6006

-and-

**DUANE MORRIS LLP**

/s/ Michael R. Lastowski
Michael R. Lastowski (DE I.D. 3892)
Richard W. Riley (DE I.D. 4052)
William S. Katchen
1100 North Market Street, Suite 1200
Wilmington, Delaware 19801
Tel:   (973) 424-2000
Fax:  (973) 424-2001

Counsel for the Official Committee of Unsecured Creditors