# Exhibit 1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | | Re: Docket Nos. 8640 and 9106 |
| | | Hearing Date: August 29, 2005 at 12:00 p.m. |

**DEBTORS' REPLY IN SUPPORT OF THEIR TWELFTH OMNIBUS OBJECTION TO CERTAIN CLAIMS FILED BY THE LAW FIRM SPEIGHTS & RUNYAN**

The Speights & Runyan firm ("Speights") has signed and filed claims on behalf of claimants it does not represent; has attempted to withdraw claims on behalf of claimants it does not represent; has attempted to withdraw nonexistent claims on behalf of phantom claimants that never had proofs of claim on file in these bankruptcy cases; has violated Bankruptcy Rule 3006 by attempting to withdraw objected-to claims without Court order or a hearing; and in its Response paper has represented to this Court that it is acting as class counsel for a class that does not exist. Speights' Response (Docket No. 9106) should be denied and the Debtors' Twelfth Omnibus Objection (Docket No. 8640) should be sustained.

What has discovery shown regarding the 10 traditional asbestos PD claims which are the subject of the Debtors' Twelfth Omnibus Objection at issue? Examples include:

- <u>The American Medical Association Building, Claim No. 6661</u>: Counsel for the AMA testified that "I spoke with various representatives of the law firm of Speights & Runyan ("S&R") in late 2002 and early 2003. The subject of discussion was whether S&R would represent the AMA in this bankruptcy proceeding. *I informed S&R that the AMA did not wish S&R to represent it in this proceeding.*"

- <u>Harvard Vanguard Medical Associates, Claim No. 6726</u>: A representative for Harvard sent a letter and affidavit confirming Harvard "*did not authorize Speights & Runyan to represent it and file a proof of claim on its behalf* in the Grace bankruptcy."

- <u>Maryland Casualty Company, Claim No. 6721</u>: Maryland Casualty ("MCC") has written to "confirm that (i) MCC has never retained the law firm of Speights & Runyan to represent MCC in the Grace Bankruptcy Cases; and (ii) *MCC never authorized the law*

*firm of Speights & Runyan to file a proof of claim on MCC's behalf* in the Grace Bankruptcy Cases."[1]

Speights' Response, specifically addressed to these and 7 other claims, does not even mention to this Court -- let alone explain -- the fact that these claimants have *expressly disavowed* the notion that Speights ever had authority to file claims on their behalf.[2] And the 10 claims that are the subject of the Twelfth Omnibus Objection are merely the tip of the iceberg. On July 18, 2005, the Debtors filed a Motion to permit the filing of the Debtors' Thirteenth Omnibus Objection to all 2,938 Speights claims. *See* Docket No. 9008 at Exhibit 1.

Further, as alluded to in Speights' Response, from June 29, 2005 through July 5, 2005, Speights "withdrew" 180 asbestos property damage claims -- including claims which are the subject of the Twelfth Omnibus Objection -- in a transparent effort to avoid this Court's review of Speights' claims-filing practices. *See* Docket Nos. 8710-8936.[3] After a significant expenditure of effort, the Debtors determined that more than 45 of those purportedly "withdrawn" claims were for buildings *for which Speights had never filed a claim in the first place. See* Docket No. 9008 at Ex. G. And, of course, Speights' attempted withdrawal of claims that are the subject of the pending Twelfth Omnibus Objection -- including withdrawal of claims on behalf of claimants Speights *does not represent* -- violates Rule 3006 which requires hearing and an order of the Court in order to withdraw claims to which an objection has been filed.

The Response's repeated implication that Speights has authority to represent the 10 claimants at issue as "class counsel" under *Anderson Memorial* is also demonstrably false, as set out at length in the Thirteenth Omnibus Objection at Sections II.C-D. *First, Anderson*

---

[1] Exhibit 2 to Docket 9141, the accompanying Debtors' Opposition to Speights' Motions to Quash, contains a collection of these and other responses gathered, denying Speights' authority to file claims.

[2] Oddly, what Speights' Response 'cites' to instead is a supposed "Stipulation" between the parties that *was never reached.* Resp. at 2. Not surprisingly, Speights does not -- and cannot -- attach any signed documentation of this supposed "Stipulation," because there was no such agreement.

[3] In addition, nearly 2000 Speights-filed claims have been withdrawn en masse in other asbestos bankruptcies after challenges were made to their validity, including 1,228 in Federal Mogul, 328 in Owens Corning and 131 in U.S. Mineral. *See* Debtors' Thirteenth Omnibus Objection at Section I.I.

2

*Memorial* provides no authority for Speights to file any papers on behalf of the 9 of 10 building owners outside of South Carolina (8 of whose claims Speights has since "withdrawn"). There is not and never has been any such class of building owners:

- In 1992, Speights filed a complaint in *Anderson Memorial Hospital v. W.R. Grace*, No. 92-CP-25-279 (South Carolina Ct. Common Pleas, Dec. 23, 1992) seeking certification of a *nationwide* class of building owners to bring asbestos property damage claims;

- In 1994, nationwide class certification *was denied* in that case and out of state claims were *stricken*. Exhibit V to Docket No. 9008;

- In 1996, the *Anderson Memorial* Court denied reconsideration of the August 1994 order and adopted it again in full. Exhibit W to Docket No. 9008;

- In 1996, Speights filed a second amended complaint in *Anderson Memorial* limited to buildings in South Carolina. It is the *second amended complaint* -- limited to South Carolina buildings -- that is operative in the *Anderson Memorial* case, not the outdated 1992 original complaint which included out-of-state buildings;

- In 2003, in a case in which Speights represented the respondents, the South Carolina Supreme Court confirmed that South Carolina's door-closing statute prohibits nonresidents from participating in a class action against a foreign corporation. *Farmer v. Monsanto Corp.*, 579 S.E.2d 325 (South Carolina 2003);

- As set out above, the evidence now establishes that Speights took steps to contact certain out-of-state building owners like the AMA and expressly sought permission (which was denied) to file claims on their behalf in the Grace Chapter 11 cases. Speights' attempt to solicit permission is an admission that Speights knew it did *not* have authority to represent building owners based on *Anderson Memorial*; and

- If *Anderson Memorial* truly provided the legal basis for Speights to represent the 9 non-South Carolina building owners at issue here, by what authority did Speights withdraw 8 of their claims -- and those of another 30 of the 757 out-of-state claims purportedly filed based on *Anderson Memorial* -- between June 29 and July 5, 2005 (while not withdrawing other supposed *Anderson Memorial* claims)? *See* Exhibit X to Docket No. 9008.

Interestingly, in an August 12, 2005 pleading (which now *concedes* that, for yet another 1000+ claims, Speights had no authorization from a client to file), Speights has finally begun to refer to this portion of the *Anderson Memorial* case as a "putative" class. (Docket No. 9186 at 8.) More apt descriptors would include a "rejected" class, a "denied" class, or a "non-existent" class.

*Second, Anderson Memorial* did not give Speights authority to file a claim for Byars Machinery, the 1 South Carolina claimant at issue in the Twelfth Omnibus Objection. Orders entered in that case in 2001 purportedly certifying a South Carolina class of building owners violated this Court's automatic stay and are null and void. Specifically:

- No class certification was granted in the *Anderson Memorial* case, even for South Carolina buildings, while the matter pended from 1992 to 2001;

- In February 2001, Speights sought and obtained an emergency, *ex parte* conditional class certification order *expressly to avoid an anticipated automatic stay from this Bankruptcy Court*. Exhibit Y to Docket No. 9008; 2/9/01 *Anderson Memorial* Order. To achieve that result, Daniel Speights testified: "Absent conditional certification prior to bankruptcy filing, a bankruptcy court may not grant the South Carolina building owners the preferential class treatment this Court may determine they deserve." Exhibit Y at Ex. A, p. 3.

- In violation of the automatic stay in these Chapter 11 cases, in June and July 2001, the South Carolina court superseded the February 2001 conditional certification with final orders certifying a class of South Carolina building owners. Orders entered in violation of a debtor's automatic stay are void *ab initio* and thus have no legal effect as to Grace. *Raymark Indus. v. Lai*, 973 F.2d 1125 (3d Cir. 1992); *Maritime Elec. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir. 1991); *In re Ward*, 837 F.2d 124, 126 (3d Cir. 1988).

- Even the void July 2001 order recognized that an *Anderson Memorial* class would be an opt-out class, and *no notice or opportunity to opt out was ever provided* to supposed class members. July 2001 Order at 6, 20 and n.8. Indeed, for the 1 claim now at issue from South Carolina, Speights conceded "Speights & Runyan had no communication with this claimant before filing this claim in Grace's Chapter 11." Exhibit S to Docket No. 9008 at ¶ 5.

- It is well established that "consent to being a member of a class in one piece of litigation is not tantamount to a blanket consent to any litigation the class counsel may wish to pursue," including filing bankruptcy proofs of claim in a Chapter 11. *E.g. In re Baldwin-United Corp.*, 52 B.R. 146, 148-49 (Bankr. S.D. Ohio 1985); *Reid v. White Motor*, 886 F.2d 1462, 1471-72 (6th Cir. 1989); *In re Ross* 37 B.R. 656, 658 (9th Cir. 1984). And here, because no notice or opt-out opportunity was provided, there was never *consent* for participation in *Anderson Memorial* by any "class member" in the first instance.

- Further, if *Anderson Memorial* truly provided authority for Speights to file proofs of claim on behalf of South Carolina building owners, by what authority did Speights *withdraw* 4 of those claims on June 29, 2005 -- and *not* withdraw other South Carolina buildings? *See* Docket Nos. 8722, 8725, 8729 and 8732 (withdrawing claims that had purportedly been filed on the authority of the *Anderson Memorial* orders).

4

Finally, Speights has established no credible authority for filing the 1 Fort Wayne claim in 2003 based on "express written authority," either. Resp. at 3. To the contrary, Speights has asserted continuously shifting positions as to this claim. *First*, in Speights' Verified 2019 Statement, filed in December 2004, Speights contended that it had authority to file this claim based on a *written* building questionnaire. *Second*, in a July 2005 Stipulation, Speights averred that it had *oral* authority before filing this claim, and that "it has now obtained written authority from this claimant and will *provide written evidence of this authority to Grace*." Exhibit S to Docket No. 9008. *Third*, in its current Response paper, Speights now states "This authority was ratified in writing by the agent for the Chamber of Commerce *in June of 2005*. Speights & Runyan is prepared to present the documents establishing this express authority for *the Court's 'in camera inspection*.'" Resp. at 3. And, of course, Speights has refused to provide any proof of its authority to file claims in response to the Debtors' discovery seeking documents and testimony on this very point. *E.g.* Speights Motions to Quash, Docket Nos. 9002 and 9070. It is black letter law that Speights cannot use discovery as a sword and a shield: Speights cannot prevent the Debtors from testing its authority to file claims through discovery and then present this Court with newly created, never-seen documents purportedly supporting claims filed more than two years ago. *See also* Docket No. 9141, Debtors' Opposition to Speights' Motions to Quash.

WHEREFORE, for the reasons stated above, the Debtors respectfully request that its Twelfth Omnibus Objection be sustained and that all ten claims identified in it be disallowed and expunged. Further, in light of Speights' misconduct in filing these claims, the Debtors ask that the Court require Speights to pay the Debtors' costs and fees for all efforts associated with this Twelfth Omnibus Objection, including but not limited to all fees and costs required for (1) filing the Objection and this Reply; (2) all fact investigation of the ten claims at issue; and (3) all efforts required to investigate the 180 claims "withdrawn" from June 29-July 5, 2005.

Dated: August 19, 2005

                        Respectfully submitted,

                        KIRKLAND & ELLIS LLP
                        David M. Bernick, P.C.
                        Michelle H. Browdy
                        Janet S. Baer
                        Michael Dierkes
                        Samuel Blatnick
                        200 East Randolph Drive
                        Chicago, Illinois 60601
                        (312) 861-2000

                        <u>and</u>

                        PACHULSKI, STANG, ZIEHL, YOUNG, JONES
                        & WEINTRAUB P.C.

                        _____
                        Laura Davis Jones (Bar No. 2436)
                        David W. Carickoff, Jr. (Bar No. 3715)
                        919 North Market Street, 16th Floor
                        P.O. Box 8705
                        Wilmington, DE 19899-8705 (Courier 19801)
                        (302) 652-4100

                        Co-Counsel for the Debtors and Debtors in Possession