# Exhibit 1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | | Re: Docket Nos. 9008 and 9186 |
| | | Hearing Date: August 29, 2005 at 12:00 p.m. |

**DEBTORS' REPLY IN SUPPORT OF THEIR MOTION FOR LIMITED WAIVER OF DEL. BANKR. L.R. 3007-1 TO PERMIT FILING OF OMNIBUS OBJECTION TO 2,938 CLAIMS FILED BY THE LAW FIRM OF SPEIGHTS & RUNYAN**

Speights & Runyan -- home, according to its Response, of one of the most accomplished asbestos property damage lawyers in the United States -- cannot muster a single paragraph, a single sentence, or even a lowly footnote, explaining to this Court why and how it came to sign and file numerous claims on behalf of claimants it does not represent -- including at least one for a claimant that *expressly told Speights the firm was not authorized to file a claim on its behalf.* Speights' response? Apparently, no explanation is possible in the face of letters and affidavits attesting to the absence of authority. *Cf.* Resp. at 2.

In fact, of the 10 claims selected randomly as an initial means of gaining insight into the 2,938 Speights-filed claims, 8 claimants responded with letters and/or affidavits expressly denying Speights had any authority to file proofs of claim on their behalf; Speights has conceded it had no communication with a 9th before filing its claim; and a 10th has been the subject of no fewer than 3 flip-flops by Speights as the firm grasps for *some* authority that might conceivably provide the basis for having signed that claim back in 2003.[1] At that rate, we can expect that

---

[1] The Debtors' Opposition to Speights' Motions to Quash Discovery, Docket No. 9141 at Ex. 2, contains a collection of responses denying Speights' representation from the American Medical Association, Harvard Public Health, Employers Insurance Company of Wausau, McCormick Place, Maryland Casualty, Northwest Community Hospital, Jefferson Pilot Life Insurance and Building Laborers Local 310, as well as Speights' July 2005 fact stipulation. Speights' continuously changing position as to the 10th building, Fort Wayne, is discussed in the Debtors' Reply in support of its Twelfth Omnibus Objection also filed this date.

*thousands* of Speights' claims were filed without authority. In its Response, Speights begins to admit as much: For more than 1000 claimants, Speights now concedes that at least 657 *never provided it with authorization* to file claims and another 396 Speights could not even *locate*, let alone receive authorization to file their claims. Resp. at 8. And *every single one* of these claims was signed more than two years ago by either Daniel Speights or his colleague Amanda Steinmeyer, under penalty of perjury and "subject to a fine of $500,000.00 or imprisonment up to 5 years, or both. 18 U.S.C. § § 152 & 3571."[2]

And what about the nearly 2000 claims suddenly withdrawn by Speights when challenged in other asbestos bankruptcies? Or the 180 claims abruptly withdrawn by Speights in these Chapter 11 cases between June 29 and July 5, 2005? Or the 46 "phantom" claims withdrawn from these cases by Speights last month on behalf of claimants that do not exist? Silence.

Instead, Speights' Response mocks both the Debtors and this Court. How best to handle the Speights claims going forward? Speights presents several recipes for delay and obfuscation. *First*, preclude any "simultaneous substantive objections," thus further delaying resolution of the Debtors' Chapter 11 cases in which nearly 75% of the pending asbestos PD claims were filed by this one firm, many quite possibly falsely. Resp. at 2 and 9. *Second*, begin the objections process by spending estate and judicial resources to address a newly-proposed category consisting of a grand total of *one* claim. Resp. at 7. One cannot help but wonder -- is that Speights' only real client, thrown up as a façade to conceal 2,937 unauthorized claim forms? *Third*, realign all challenged claims into un-testable categories that are inconsistent with the information provided in Speights' Verified 2019 Statement. *See, e.g.* Resp. at 7-8 (Speights' proposed new categories b, c, e, f and g).[3] *Fourth*, request a discovery schedule to address Speights' authority to file claims -- while at the same time moving to quash the discovery the

---

[2] *See* Grace asbestos PD claim form at p. 9; examples are attached to Docket 9008 as Exhibits B, D and F.

[3] *Compare, e.g.* Speights Response tab b at p. 138 (purporting to represent several Texas Coca Cola Enterprises on the basis of "written representation") *with* Speights' Verified 2019 Statement (*no* entries for these buildings).

2

Debtors have been seeking from Speights since June, aimed at determining this very issue. *Compare* Resp. at 8 *with* Docket No. 9002 (Speights' Motion to Quash) *and* Docket No. 9070 (Speights' Supplemental Motion to Quash). And finally, ask "co-counsel" to suddenly appear at the eleventh hour and threaten the Debtors with Rule 11 sanctions -- for the apparent offense of bringing Speights' disturbing claims-filing practices to this Court's attention.[4]

Of all these proposals, Speights' attempt to drag out the Debtors' Chapter 11 cases by avoiding merits-based assessment of its claims is perhaps the most troubling. This effort actually makes the Debtors' case that the substantive objection process must go forward. At Speights' tab b, for example, Speights' own filing demonstrates that more than 2 years after lodging these claims, Speights cannot even provide an address for hundreds of buildings -- for supposed *property* damage. Other entries at tab b are, quite simply, absurd on their face, including claims for Sheep Shelters (Claim Nos. 10289-93), a Beef Feed Lot (10396), a Horse Central Barn (10338), an Onion Shed (10100), Boar Shelters (10383), a Dairy Milking Barn (10365), a Poultry Unit (10304), a Fish Hatchery (12079) and a Swine Growing Barn (10276). Other claims are plainly barred by prior lawsuits or statutes of limitations. Hundreds if not thousands of these claims provide no supporting documentation whatsoever or proof of product identification -- not surprising, perhaps, if Speights does not actually represent the claimants on whose behalf the firm signed and filed claims. And the Debtors should now be precluded from raising these types of objections to extract themselves out from under Chapter 11 and the weight of these claims?

There can be no other conclusion: Speights' claims must be addressed and quickly. The Debtors' Chapter 11 cases cannot be resolved unless and until these claims are adjudicated. Even Speights' Response concedes that the Motion for Limited Waiver of 3007-1 should be granted.

---

[4] Resp. at 7, n.4; *see also* <u>Exhibit A</u> (8/10/05 Brandi letter) *and* <u>Exhibit B</u> (8/11/05 response to Brandi letter).

In light of the startling new admissions in Speights' Response, the Debtors request the following relief:

- 1. The Debtors' Motion for Limited Waiver of Del. Bankr. L.R. 3007-1 To Permit Filing Of Omnibus Objection to 2,938 Claims Filed By The Law Firm Of Speights & Runyan should be granted. Immediately thereafter, the Debtors will file their Thirteenth Omnibus Objection to these claims, currently attached as Exhibit 1 to Docket No. 9008;

- 2. The 1,053 claims that Speights now admits it had no authority to file, listed at Speights' Response Category f and g, should be immediately disallowed and expunged. There is no need to waste either assets of the estate or judicial resources with further briefing or argument on such outrageous filings;

- 3. The 180 claims that Speights "withdrew" between June 29 and July 5, 2005 -- or at least, the 180 claims less the 46 imaginary claims -- should also be immediately disallowed and expunged.

- 4. The Debtors' substantive objection process must continue to proceed as quickly as possible. As we told this Court in July, the Debtors are attempting to lodge all substantive objections to PD claims by September 1, 2005, as one part of a larger effort to achieve efficient and final resolution of these Chapter 11 cases.

- 5. Speights' Motion to Quash (Docket No. 9002) and Supplemental Motion to Quash (Docket No. 9070), addressed in separate briefing also set for hearing on August 29, 2005, must be denied so that discovery into Speights' authority to file claims can proceed immediately.

- 6. Speights should reimburse the estate for all costs and fees incurred in investigating Speights' improper claims, including a pro rata share of all costs incurred to date in preparing the September 1, 2005 Omnibus Objection (substantive) for the claims described above in paragraphs 2 and 3, as well as any others ultimately disallowed by this Court on the basis that Speights had no authority to file those claims.

- 7. The Debtors should resubmit Exhibits H-P to the Thirteenth Omnibus Objection, identifying the categories of Speights claims challenged on the basis of lack of authority, after removing the claims identified in paragraphs 2 and 3 above which should now be disallowed and expunged on their face, and the Court should set categories of claims H-P for hearing, beginning with the September 26, 2005 omnibus hearing.

WHEREFORE, for the reasons stated above and in its Motion for Limited Waiver (Docket No. 9008), the Debtors respectfully request that the Court grant the Motion for Limited Waiver along with the relief set out above in Paragraphs 1-7 and whatever additional relief this Court may deem proper.

Dated: August 19, 2005

                        Respectfully submitted,

                        KIRKLAND & ELLIS LLP
                        David M. Bernick, P.C.
                        Michelle H. Browdy
                        Janet S. Baer
                        Michael Dierkes
                        Samuel Blatnick
                        200 East Randolph Drive
                        Chicago, Illinois 60601
                        (312) 861-2000

                        <u>and</u>

                        PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

                        _____
                        Laura Davis Jones (Bar No. 2436)
                        David W. Carickhoff, Jr. (Bar No. 3715)
                        919 North Market Street, 16th Floor
                        P.O. Box 8705
                        Wilmington, DE 19899-8705 (Courier 19801)
                        (302) 652-4100

                        Co-Counsel for the Debtors and Debtors in Possession

5

# Exhibit A

# The Brandi Law Firm

44 Montgomery Street, Suite 1050
San Francisco, California 94104
Telephone: (415) 989-1800
Facsimile: (415) 989-1801
tjb@brandilaw.com

August 10, 2005

David M. Bernick
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Via Facsimile (312) 861-2200
and Federal Express

Scotta McFarland
Pachulski, Stang, Ziehl,
  Young, Jones & Weintraub
919 North Market Street, 17th Floor
Wilmington, DE 19899-8705

Via Facsimile (310) 201-0760, (302) 652-4400
and Federal Express

Re: Fed. R. Civ. P. 11 Issues Raised by Your Filing "Debtors Thirteenth Omnibus Objection to 2,938 Unauthorized Claims Filed by the Law Firm Speights & Runyan"

WR Grace Bankruptcy – Delaware Bankruptcy Court #01-01139(JKF)
Our File Reference: 21816

Dear Mr. Bernick and Ms. McFarland:

I am writing in response to the recent documents you have signed and caused to be filed in the Grace Bankruptcy action seeking dismissal of all claims filed by Speights & Runyan (the Speights objection). As you know, this office and the undersigned are co-counsel with Speights & Runyan with respect to approximately 1,280 claims filed by The Regents of the University of California, The State Universities of California, and the owners of 100 Pine Street, Pacific Freeholds (collectively "California Claims"). You make the blanket assertion that "Speights lacked proper authority to file those claims." Since you are well aware of these claims and the fact that these parties are unquestionably represented by this firm and the Speights firm, your representation to the Court that these claims are unauthorized appears to be intentionally deceptive.

This letter is limited to the California Claims involving this office.

---

Thomas J. Brandi   ✢   John W. Hornbeck   ✢   Terence D. Edwards   ✢   Casey A. Kaufman

Bernick and McFarland
August 10, 2005
Page 2

### Pacific Freeholds- 100 Pine Street - Claim Number 10930

On July 5, 1988, Pacific Freeholds (owner of 100 Pine Street) entered into a tolling agreement with W.R. Grace which, through annual extensions, remained in effect through August 1, 1998. On June 11, 1998, Pacific Freeholds provided written notice to Grace of its intention to file a lawsuit and the matter proceeded in United States District Court in San Francisco. The parties took over 20 depositions and filed and argued numerous motions regarding discovery, summary adjudication, and other matters. When Grace filed bankruptcy, a trial date was upcoming. During all of these events, the claimant was represented by this firm and Speights & Runyan so there is no possible merit or justification for asserting that Speights & Runyan was not authorized to file a bankruptcy claim on behalf of this claimant.

Similarly, there is no question about product identity. Long prior to bankruptcy, Grace's experts visited the building, took samples, and verified the product was WR Grace Monokote. Moreover, Grace and its experts reviewed the extensive documentation verifying over $30 million in costs incurred due to remediation of contamination of the building from the Grace product.

All of this information is undisputed and known to you on the date you filed your motion.

### University of California Buildings[1] and State University Buildings[2]

This office also was retained and authorized to file claims against W.R. Grace in the appropriate forum, including in bankruptcy, on behalf of the buildings in the UC system (approximately 278) and the State University system (approximately 1002). You have reviewed the contract retaining this firm and authorizing us to act along with Speights & Runyan. Extensive investigation was undertaken and appropriate documents were presented in the bankruptcy process.

To manufacture support for your assertion that these claims were not authorized, you seize on language in our fee agreement that permits the filing of all viable claims and baldly assert since these claims are not viable, they are not authorized. First, there is an obvious difference between the question of whether one is authorized to assert claims and the question of whether those claims are viable. Neither this letter, nor your motion, is the appropriate place to argue the timeliness of these claims, so I will merely note that under California law, as stated in

---

[1] Claim Numbers 9840; 9841; 9843-9887; 9891-9893; 9895-9897; 9909; 9910; 10589; 12015-12034; 12085-12094; 12099-12132; 12134-12290; and 12364.

[2] Claim Numbers 9838; 9839; 9842; 9889; 9924; 9926; 9927; 9929-9969; 9971-9987; 9989-9992; 9994-10017; 10021-10052; 10054-10057; 10059-10077; 10079-10159; 10161-10207; 10209-10228; 10231-10236; 10238-10302; 10304-10318; 10320-10508; 10592-10596; 10598-10620; 10622-10630; 11736-11744; 11746-11799; 11801; 11803-11816; 11818; 11821-11865; 11867-11875; 11877-11917; 11919-11956; 11958-11961; 11963-12004; 12005-12014; 12035-12084; 12095-12098; 12605-12615; 12617-12634; 12637-12644; 14399; and 15470-15503.

Bernick and McFarland
August 10, 2005
Page 3

*SFUSD v. W.R. Grace and Company*, 37 Cal. App. 4th 1318 (1995), the statute of limitations does not begin to accrue until there is contamination:

> We hold that in an asbestos-in-building case, the mere presence of asbestos constitutes only a threat of future harm. Contamination by friable asbestos is the physical injury and the actual, appreciable harm that must exist before a property owner's strict liability or tort cause of action against an asbestos manufacturer accrues and the limitation period commences. *Id.* at 1335.

This is a factual issue and an affirmative defense on which Grace bears the burden of proof. Grace has repeatedly argued against this standard and lost at every turn.

Your motion fails to state any factual information regarding the dates on which you allege that contamination occurred in <u>any</u> of the 1,200 plus buildings. Thus, your assertion that the statute of limitations for these claims has passed is an unsupported misrepresentation.

**FRCP Rule 11 Issues.**

Federal Rule of Civil Procedure 11 provides as follows:

**(b) Representations to Court.**

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

**(c) Sanctions.**

> If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

Bernick and McFarland
August 10, 2005
Page 4

Numerous cases set forth the duty of counsel with respect to Fed. R. Civ. P. 11. I am certain that you are familiar with the requirements. Fed. R. Civ. P. 11 "imposes on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad admonition to stop, look, and listen." *Balthazar v. Atlantic City Medical Center*, 279 F. Supp. 2d 574, 593 (D.N.J. 2003) (internal quotations and citations omitted). To comply with Fed. R. Civ. P. 11, counsel is required to conduct "a reasonable inquiry into both the facts and the law supporting a particular pleading." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 187 n.7 (3d Cir. 2002).

It is our position that your request to dismiss these California Claims violated Fed. R. Civ. P. 11(b). We request that you immediately withdraw any motion or attempt to dismiss these California Claims as you know there is no basis to do so. Any reasonable inquiry would have revealed that no evidentiary or legal basis exists on which to assert that the California Claims were not authorized.

Your failure to promptly remedy your improper filing will subject you to sanctions. Your representations about 100 Pine are clearly false and "sanctions are warranted when the claimant exhibits a deliberate indifference to obvious facts..." *Footman v. Cheung*, 341 F. Supp. 2d 1218, 1224 (M.D. Fla. 2004).

Your representation that the other California Claims are untimely misrepresents facts to the Court. "Rule 11 reinforces counsel's duty of candor to the Court by subjecting litigants to potential sanctions for making representations to the court for an improper purpose." *Id*. At the very minimum, "[t]he lawyer should not knowingly misstate, distort, or improperly exaggerate any fact or opinion and should not improperly permit the lawyer's silence or inaction to mislead anyone." *Id.* at 1225 (internal quotations omitted).

"The test is whether an attorney's conduct was 'objectively reasonable at the time he or she signed the pleading, motion, or other paper.'" *Greenburg v. Chrust*, 297 F. Supp. 2d 699, 703 (S.D.N.Y. 2004) (quoting *Mopaz Diamonds, Inc. v. Institute of London Underwriters*, 822 F. Supp. 1053, 1057 (S.D.N.Y. 1993). At the time you caused the subject motion to be filed, you knew that Speights was, in fact, authorized to file claims on behalf of the California Claimants.

Even if your acts were the result of carelessness and failure to investigate the facts of this matter, that is no refuge. "[A] pleading, motion or paper violates Rule 11 if it is frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith." *Wechsler v. Hunt Health Systems, Ltd.*, 216 F. Supp. 2d 347, 356 (S.D.N.Y. 2002).

Similarly, your contention that the statute of limitations bars the claims, thereby rendering them invalid/unauthorized, and requiring dismissal for lack of authority to bring them are frivolous arguments under Fed. R. Civ. P. 11(b)(2).

Filing these claims was appropriate and valid under California and federal law and asserting there is no authority to do so is clearly designed to harass and is being presented for an improper purpose. Grace has had years of opportunity to investigate and substantiate any lack of

Bernick and McFarland<br>
August 10, 2005<br>
Page 5

authority for these California Claims and you have presented none. Based on this record, no reasonable attorney could argue that the claims for 100 Pine and the claims of the UC and State University system should be dismissed on the basis you have stated in your motion.

    Please immediately confirm in writing that you are withdrawing all requests to dismiss these California Claims from your proposed motion and promptly notify the Court and appropriate counsel of your withdrawal. If you do not do so immediately, this office will seek the appropriate remedies, including sanctions.

Very truly yours,<br>
<br>
THOMAS J. BRANDI

# Exhibit B

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Michelle H. Browdy
To Call Writer Directly:
312 861-2460
mbrowdy@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200
Dir. Fax: 312 861-2200

August 11, 2005

**VIA FACSIMILE**

Thomas J. Brandi
The Brandi Law Firm
44 Montgomery Street
Suite 1050
San Francisco, California 94104

Dear Mr. Brandi:

      I am writing in response to your August 10, 2005 letter to David Bernick and Scotta McFarland. As you are no doubt well aware, the Speights & Runyan firm ("Speights") has signed and filed thousands of asbestos property damage claims in the W.R. Grace bankruptcy, including claims signed and filed on behalf of claimants that Speights does not represent. *See, e.g.* Docket No. 9008 at Exhibit 1 (Debtors' Thirteenth Omnibus Objection to 2,938 Unauthorized Claims Filed By The Law Firm Speights & Runyan). Among those thousands of claims are numerous claims from California for which you now contend you are co-counsel.

      As spelled out in the Debtors' Thirteenth Omnibus Objection, before filing those papers the Debtors made repeated inquiries of the Speights firm, going back at least to February 2005, to determine whether or not Speights had authority to file claims in this bankruptcy. *See* Thirteenth Omnibus Objection at Section I.D. As documented in the Objection, from February through May of this year, Speights repeatedly ignored the Debtors' requests to provide additional supporting documentation proving that he represented the claimants on whose behalf Speights signed and filed claims, or in the alternative to withdraw those claims. *Id.*

      In June 2005, we sent Speights a courtesy copy of discovery we intended to serve on the Speights firm specifically designed to determine whether or not Speights had authority to file claims in this case, including the California claims that are the subject of your letter. *Id.* at Sections I.E, I.F and Exhibit R. Not only did the Speights firm ignore this informal discovery, but when we served the subpoenas formally on Mr. Speights and the Speights firm, Speights moved to quash the discovery. Docket Nos. 9002 and 9070. Speights' Motions to Quash are pending and will be heard by the Court on August 29, 2005.

      In the meantime, the Debtors learned that Speights has filed -- and withdrawn when challenged -- nearly 2000 claims in various asbestos bankruptcy cases including 1,228 in Federal Mogul, 328 in Owens Corning and 132 in U.S. Mineral. *Id.* at I.I. Speights' massive, repeated and abrupt withdrawal of this quantity of claims can leave no doubt but

London    Los Angeles    Munich    New York    San Francisco    Washington, D.C.

**KIRKLAND & ELLIS LLP**

Thomas J. Brandi
August 11, 2005
Page 2

that the claims had no merit when filed in the first place. *See also Id.* at I.H (Speights' attempt to jettison 180 claims from the Grace bankruptcy between June 29 and July 5, 2005).

In addition, when we served even minimal discovery on a handful of purported Speights "claimants" in June 2005, the Debtors were flooded with responses stating unequivocally that Speights had no authority to file bankruptcy claims on their behalf. *Id.* at I.G.

Given the egregious pattern of Speights' claim-filing practices in this and other asbestos bankruptcies, along with Speights' steadfast refusal to *prove* that he indeed represents the 2,938 claimants at issue in the Thirteenth Omnibus Objection, the Debtors had no choice but to object to all claims signed and filed by that firm as part of our responsibility to preserve the assets of the estate. As we indicated in the Thirteenth Omnibus objection specifically with respect to the California claims of which you now write: "These claims and their accompanying exemplar contracts are overwhelmingly problematic. The Debtors have no choice but to object to these claims as a whole and require Speights to provide further proof that the filing of *each* of these 1690 claims has been authorized in these Chapter 11 cases." Speights *still* refuses to provide proof that he represents the claimants at issue.

Now, at the same time Speights refuses to respond to our discovery requests about the California claims, we have received your letter claiming that it is instead your firm that has authority to represent the claimants at issue. Yet we find no record of a Verified 2019 Statement filed by you or your firm in this bankruptcy. And of course it was Speights attorneys, not the Brandi firm, who signed and filed the claims themselves.

Quite simply, Speights cannot use discovery as a sword and a shield, refusing to respond to the Debtors' request for discovery to prove whether or not Speights had authority to file claims and at the same time seeking the assistance from "co-counsel" to try to build up support for those claims. Further, the Debtors should not be forced to waste even more assets of the estate by being required to interact regarding the same claims with multiple law firms, including a firm with no Verified 2019 Statement on file in this case. Thus, if you take issue with the pending motion to file the Debtors' Thirteenth Omnibus Objection (addressing Speights' lack of authority to file 2,938 claims), we ask that you coordinate with the Speights firm and jointly lodge a single response, which is due to the bankruptcy court on August 12. If need be, we will raise this coordination issue with the Court at the August 29, 2005 hearing. Further, if in light of your letter, you believe that the discovery that we have been directing to the Speights firm to test Speights' authority to file claims in this case should have been addressed to your law firm, you and Speights should coordinate and let us know. Certainly none of the bald statements or threats in your letter, however, suffice to address the very real concerns with the Speights claims that we have raised with the Court in the Thirteenth Omnibus Objection.

The Debtors indeed take the issue of Rule 11 sanctions seriously. We tried to work with the Speights firm for nearly 6 months to get to the bottom of Speights' claims-filing practices before filing the Thirteenth Omnibus Objection. We have undertaken fact

**KIRKLAND & ELLIS LLP**

Thomas J. Brandi
August 11, 2005
Page 3

investigation, sought informal discovery, served subpoenas on purported Speights "claimants," and finally served subpoenas on Daniel Speights and the Speights firm seeking documents and testimony relating to Speights' authority to file those claims. Despite all these efforts, there is *still* no evidentiary basis by which the Debtors or the Court could conclude that Speights had authority to file 2,938 claims. And now, at the eleventh hour, we hear from your firm for the first time regarding these claims, of which we have been making inquiry for *months*. If you and Speights believe that your firm can provide some of that evidentiary support for the California claims, we would be happy to review it; we will also want to know, however, exactly how long you have been aware of the Debtors' inquiries *without* providing any of this information.

Sincerely,

Michelle H. Browdy

MHB/mrs