## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| W. R. Grace & Co. et al.[1]; | ) | Case No. 01-01139(JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | **Hearing Date:  December 19, 2005 at 12:00 p.m.** |
| | | **Objection Deadline: December 12, 2005 at 4:00 p.m.** |

## NOTICE OF FILING OF QUARTERLY FEE APPLICATION

To:  (1) The Debtors; (2) Counsel to the Debtors; (3) The Office of the United States Trustee; (4) Counsel to the Official Committee of Asbestos Personal Injury Claimants; (5) Counsel to the Official Committee of Asbestos Property Damage Claimants; (6) Counsel to the Official Committee of Equity Holders; and (7) Counsel to the Debtors-in-Possession Lenders; and (8) the Fee Auditor:

Stroock & Stroock & Lavan LLP ("Stroock"), counsel to the Official Committee of

Unsecured Creditors (the "Committee") of the above captioned debtor and debtors in possession

in the above-captioned chapter 11 cases, filed and served the Seventeenth Quarterly Fee

Application of Stroock & Stroock & Lavan LLP for Interim Compensation and for

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Reimbursement of Expenses for the services rendered during the period April 1, 2005 through

June 30, 2005, seeking compensation in the amount of $ 340,821.25 and reimbursement for

actual and necessary expenses in the amount of $9,261.40 and payment of the fees and expenses

of the Asbestos Issues Expert employed by the Committee in the amount of $54,204.34 (the

"Quarterly Fee Application").

Objections or responses to the Quarterly Fee Application, if any, must be made in writing

and filed with the United States Bankruptcy Court for the District of Delaware, Marine Midland

Plaza, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801, on or before

**December 12, 2005 at 4:00 p.m.**

At the same time you must also serve a copy of the objections or

responses, if any, upon the Affected Professional and each of the following:  (i) co-counsel for

the Debtors, James H.M. Sprayregen, Esquire, Kirkland & Ellis, 200 East Randolph Drive,

Chicago, Illinois 60601 (fax number 312-861-2200), and Laura Davis Jones, Esquire, Pachulski,

Stang, Ziehl, Young & Jones P.C., 919 North Market Street, Suite 1600, P.O. Box 8705,

Wilmington, DE 19899-8705 (Courier 19801) (fax number 302-652-4400); (ii) co-counsel to the

Official Committee of Unsecured Creditors, Lewis Kruger, Esquire, Stroock & Stroock & Lavan

LLP, 180 Maiden Lane, New York, New York 10038-4982 (fax number 212-806-6006), and

Michael R. Lastowski, Esquire, Duane Morris LLP, 1100 N. Market Street, Suite 1200,

Wilmington, Delaware 19801-1246 (fax number 302-657-4901); (iii) co-counsel to the Official

Committee of Asbestos Property Damage Claimants, Scott L. Baena, Esquire, Blizin, Sumberg,

Dunn, Baena, Price & Axelrod, First Union Financial Center, 200 South Biscayne Boulevard,

Suite 2500, Miami, Florida 33131 (fax number 305-374-7593), and Michael B. Joseph, Esquire,

Ferry & Joseph, P.A., 824 Market Street, Suite 904, P.O. Box 1351, Wilmington, Delaware 19899 (fax number 302-575-1714); (iv) co-counsel to the Official Committee of Asbestos Personal Injury Claimants, Elihu Inselbuch, Esquire, Caplin & Drysdale, 399 Park Avenue, 36th Floor, New York, New York 10022 (fax number 212-644-6755), and Mark Hurford, Esquire, Campbell & Levine, LLC, Chase Manhattan Centre, 15th Floor, 1201 Market Street, Suite 1500, Wilmington, Delaware 19801 (fax number 302-426-9947); (v) co-counsel to the DIP Lender, J. Douglas Bacon, Esquire, Latham & Watkins , Sears Tower, Suite 5800, Chicago, Illinois 60606 (fax number 312-993-9767), and Steven M. Yoder, Esquire, The Bayard Firm, 222 Delaware Avenue, Suite 900, P.O. 25130, Wilmington, Delaware 19899 (fax number 302-658-6395); (vi) counsel to the Official Committee of Equity Holders, Thomas Moers Mayer, Esquire, Kramer Levin Naftalis & Frankel LLP, 919 Third Avenue, New York, New York 10022 (fax number 212-715-8000); and (vii) the Office of the United States Trustee, Attn: David Klauder, Esquire, 844 N. King Street, Wilmington, Delaware 19801 (fax number 302-573-6497); and (viii) the Fee Auditor, to Stephen L. Bossay, Warren H. Smith and Associates, Republic Center, 325 N. St. Paul, Suite 1275, Dallas, TX 75201.

PURSUANT TO THE OMNIBUS HEARING ORDER DATED NOVEMBER 5, 2004, A HEARING ON THE QUARTERLY FEE APPLICATION WILL BE HELD BEFORE THE HONORABLE JUDITH K. FITZGERALD ON **DECEMBER 19, 2005 AT 12:00PM.**

IF YOU FAIL TO RESPOND OR OBJECT IN ACCORDANCE WITH THIS
NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE QUARTERLY
FEE APPLICATION WITHOUT FURTHER NOTICE OR HEARING.

Dated: Wilmington, DE
      August 19, 2005

**RESPECTFULLY SUBMITTED,**
    /s/Michael R. Lastowski
Michael R. Lastowski, Esq. (DE I.D. No. 3892)
DUANE MORRIS LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone:    (302) 657-4900
Facsimile:    (302) 657-4901
E-mail:    mlastowski@duanemorris.com


William S. Katchen, Esquire (Admitted in NJ Only)
DUANE MORRIS LLP
744 Broad Street, Suite 1200
Newark, New Jersey 07102-3889
Telephone:    (973) 424-2000
Facsimile:    (973) 424-2001
E-mail:    wskatchen@duanemorris.com


And

Lewis Kruger, Esquire
Kenneth Pasquale, Esquire
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York 10038-4982
Telephone:    (212) 806-5400
Facsimile:    (212) 806-6006
E-mail:    lkruger@Stroock.com
                kpasquale@Stroock.com


Co-Counsel for the Official Committee of Unsecured Creditors of
W. R. Grace & Co., et al.

SSL-DOCS1 1598824v2

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                   Chapter 11

**W.R. Grace & Co., et al.**             Case No. 01-01139 (JKF)

           Debtors.              Jointly Administered


**SEVENTEENTH QUARTERLY FEE APPLICATION OF STROOCK & STROOCK & LAVAN LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD FROM APRIL 1, 2005 THROUGH JUNE 30, 2005**


| | |
|---|---|
| Name of Applicant | **Stroock & Stroock & Lavan LLP** |
| Authorized to Provide Professional Services to: | **Official Committee of Unsecured Creditors** |
| Date of Retention: | **April 12, 2001** |
| Period for which compensation and reimbursement is sought | **April 1, 2005 – June 30, 2005** |
| Amount of Compensation sought as actual, reasonable and necessary: | **$ 340,821.25** |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | **$ 9,261.40** |
| Fees and Expenses of the Asbestos Issues Expert | **$54,204.34** |

This is an: ☒ interim ☐ final application

This is the seventeenth quarterly application filed.

**Attachment A**

**Monthly Interim Fee Applications**

| Date Filed | Period Covered | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| May 30, 2001 D.I.339 | 4/12/01-4/30/01 | $138,926.00 | $1,975.13 | $111,140.80 | $1,975.13 |
| July 2, 2001 D.I.613 | 5/1/01 – 5/31/01 | $139,928.75 | $6,884.73 | $111,943.00 | $6,884.73 |
| July 30, 2001 D.I.772 | 6/1/01 – 6/30/01 | $91,019.00 | $10,458.14 | $72,815.20 | $10,458.14 |
| September 5, 2001 D.I.889 | 7/1/01-7/31/01 | $92,308.00 | $5,144.37 | $73,846.40 | $5,144.37 |
| October 2, 2001 D.I.983 | 8/1/01 8/31/01 | $53,873.50 | $3,069.88 | $43,098.80 | $3,069.88 |
| October 31, 2001 D.I.1058 | 9/1/01 – 9/30/01 | $58,742.00 | $6,801.32 | $46,993.60 | $6,801.32 |
| November 26, 2001 D.I.1239 | 10/1/01 – 10/31/01 | $101,069.00 | $3,562.09 | $80,855.20 | $3,562.09 |
| January 8, 2002 D.I.1470 | 11/1/01 – 11/30/01 | $136,368.50 | $8,847.34 | $109,094.80 | $8,847.34 |
| February 1, 2002 D.I.1608 | 12/01/01 – 12/31/01 | $92,064.50 | $9,471.47 | $73,651.60 | $9,471.47 |
| March 14, 2002 D.I.1812 | 01/01/02 – 01/31/02 | $100,231.50 | $14,675.58 | $80,185.20 | $14,675.58 |
| April 22, 2002 D.I.1951 | 02/01/02 – 02/28/02 | $88,974.50 | $16,863.97 | $71,179.60 | $16,863.97 |
| May 8, 2002 D.I.2029 | 03/01/02 – 03/31/02 | $77,964.25 | $1,190.44 | $62,371.40 | $1,190.44 |
| June 3, 2002 D.I.2156 | 04/01/02-04/30/02 | $97,251.50 | $1,816.40 (Stroock) $9,772.37 (Chambers) | $77,801.20 | $11,588.86 |

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| July 2, 2002<br>D.I.2324 | 05/01/02 – 05/31/02 | $74,910.75 | $2,9154.43 (Stroock)<br>$43,190.69 (Chambers) | $59,928.60 | $46,105.12 |
| August 5, 2002<br>D.I.2495 | 06/01/02 – 06/30/02 | $73,096.75 | $2,054.05 (Stroock)<br>$114,666.72 (Chambers) | $58,477.4011 | $116,720.77 |
| September 20, 2002<br>D.I.2720 | 07/01/02 – 07/31/02 | $90,903.27 | $1,250.79 (Stroock)<br>$11,996.25 (Chambers) | $72,722.61 | $13,274.04 |
| October 29, 2002<br>D.I.2898 | 08/01/02 – 08/31/02 | $93,151.25 | $11,539.51 (Stroock)<br>$5,046.70 (Chambers) | $74,521.00 | $16,586.21 |
| November 14, 2002<br>D.I.2981 | 09/01/02 - 09/30/02 | $96,613.25 | $15,567.77 (Stroock)<br>$771.50 (Chambers) | $77,290.60 | $16,339.27 |
| December 10, 2002<br>D.I.3129 | 10/1/02 – 10/31/02 | $68,404.00 | $2,956.54 (Stroock)<br>$1,780.75 (Chambers) | $54,723.20 | $4,737.29 |
| January 28, 2003<br>D.I.3286 | 11/1/02 – 11/30/02 | $75,345.50 | $8,712.16 (Stroock) | $60,276.40 | $8,712.16 |
| February 7, 2003<br>D.I.3349 | 12/1/02 – 12/31/02 | $27,683.50 | $13,332.14 (Stroock) | $22,146.80 | $13,332.14 |
| March 26, 2003<br>D.I.3552 | 1/1/03 – 1/31/03 | $88,139.00 | $1,210.11 (Stroock) | $70,511.20 | $1,210.11 |
| April 7, 2003<br>D.I.3626 | 2/1/03 – 2/28/03 | $76,313.00 | $2,022.78 (Stroock)<br>$1,077.80 (Chambers) | $61,050.40 | $3,100.58 |
| April 29, 2003<br>D.I.3718 | 3/1/03 – 3/31/03 | $60,163.50 | $6,191.15 (Stroock) | $48,130.80 | $6,191.15 |
| June 2, 2003<br>D.I. 3850 | 4/1/03 – 4/30/03 | $60,269.00 | $814.02 (Stroock)<br>$2,043.00 (Chambers) | $48,215.20 | $2,857.02 |
| July 1, 2003<br>D.I. 3983 | 5/1/03 – 5/31/03 | $111,990.50 | $691.84 (Stroock)<br>$3,830.50 (Chambers) | $89,592.40 | $10,522.34 |
| August 5, 2003<br>D.I. 4152 | 6/1/03 – 6/30/03 | $43,824.00 | $1,220.42 (Stroock)<br>$61,755.00 (Chambers) | $35,059.20 | $62,975.42 |
| September 4, 2003<br>D.I. 4381 | 7/1/03 – 7/31/03 | $79,090.50 | $2,301.33 (Stroock)<br>$14,274.25 (Chambers) | $63,272.40 | $16,575.58 |

2

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 30, 2003 D.I. 4512 | 8/1/03 – 8/31/03 | $69,927.00 | $1,164.19 (Stroock) $12,488.94 (Chambers) | $55,941.60 | $13,653.13 |
| October 29, 2003 D.I. 4625 | 9/1/03 – 9/30/03 | $69,409.50 | $1,076.94 (Stroock) $10,102.00 (Chambers) | $55,527.60 | $11,178.94 |
| December 19, 2003 D.I. 4843 | 10/1/03 – 10/31/03 | $96,980.50 | $3,800.45 (Stroock) $42,881.50 (Chambers) | $77,584.40 | $46,681.95 |
| January 23, 2004 D.I. 4976 | 11/1/03 – 11/30/03 | $66,428.50 | $1,225.38 (Stroock) $30,463.00 (Navigant f/k/a Chambers) | $53,142.80 | $31,688.38 |
| February 4, 2004 D.I. 5056 | 12/1/03 – 12/31/03 | $52,321.50 | $924.99 (Stroock) $27,005.00 (Navigant f/k/a Chambers) | $41,857.20 | $27,929.99 |
| March 17, 2004 D.I. 5309 | 1/1/04 – 1/31/04 | $65,980.50 | $1,917.93 (Stroock) $47,654.57 (Navigant f/k/a Chambers) | $52,784.40 | $49,572.50 |
| April 6, 2004 D.I. 5406 | 2/1/04 – 2/29/04 | $90,421.50 | $3,636.48 (Stroock) $35,492.50 (Navigant f/k/a Chambers) | $72,337.20 | $39,128.98 |
| April 28, 2004 D.I. | 3/1/04 – 3/31/04 | $103,524.00 | $5,567.34 (Stroock) | $82,819.20 | $5,567.34 |
| June 14, 2004 D.I. 5803 | 4/1/04 – 4/30/04 | $99,136.00 | $3,518.96 (Stroock) $1,515.00 (Navigant February) $49,667.00 (Navigant March) $80,307.11 (Navigant April) | $79,308.80 | $135,008.07 |
| July 2, 2004 D.I. 5917 | 5/1/04 – 5/31/04 | $134,324.50 | $2,409.97 (Stroock) $78,360.05 (Navigant May) | $107,459.60 | $80,770.02 |
| August 2, 2004 D.I. 6105 | 6/1/04 – 6/31/04 | $120,501.00 | $1,831.49 (Stroock) $62,625.00 (Navigant June) | $96,400.80 | $64,456.49 |

3

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 9, 2004 D.I. 6341 | 7/1/04 – 7/31/04 | $72,394.00 | $3,461.84 (Stroock) $40,427.50 (Navigant July) | $57,915.20 | $43,889.34 |
| September 23, 2004 D.I. 6444 | 8/1/04 – 8/31/04 | $70,457.00 | $1,764.40 (Stroock) | $56,365.60 | $1,764.40 |
| October 14, 2004 D.I 6625 | 9/1/04 – 9/30/04 | $83,903.50 | $1,535.61 (Stroock) $27,142.00 (Navigant August) | $67,122.80 | $28,677.61 |
| December 3, 2004 D.I. 7086 | 10/1/04 – 10/31/04 | $200,155.50 | $1,368.18 (Stroock) $ 24,659.00 (Navigant September) | $160,124.40 | $26,027.18 |
| January 7, 2005 D.I. 7481 | 11/1/04 – 11/30/04 | $218,608.50 | $14,019.09 (Stroock) $25,102.80 (Navigant October) $27,972.34 (Navigant November) | $174,886.80 | $67,094.23 |
| February 2, 2005 D.I. 7667 | 12/1/04 – 12/31/04 | $235,503.70 | $10,442.92 (Stroock) $62,687.97 (Navigant December) | $188,402.96 | $73,130.89 |
| March 15, 2005 D.I. 8026 | 1/1/05 – 1/31/05 | $187,168.00 | $4,411.55 (Stroock) $15,686.00 (Navigant January) | $149,734.40 | $20,097.55 |
| April 1, 2005 D.I. 8155 | 2/1/05 – 2/28/05 | $108,180.25 | $8,102.85 (Stroock) $18,303.37 (Navigant February) | $86,544.20 | $26,406.22 |
| April 29, 2005 D.I. 8305 | 3/1/05~ – 3/31/05 | $56,941.25 | $287.23 (Stroock) $6,114.86 (Navigant March) | $45,553.00 | $6,402.09 |
| June 6, 2005 D.I. 8562 | 4/1/05- 4/30/05 | $127,695.00 | $3,531.45 (Stroock) $20,129.06 (Navigant April) | $102,156.00 | $23,660.51 |
| June 28, 2005 D.I. 8704 | 5/1/05- 5/31/05 | $98,569.00 | $4,871.74 (Stroock) | $78,855.20 | $858.21 |

4

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| August 3, 2005<br>D.I. 9135 | 6/1/05-<br>6/30/05 | $114,903.75 | $4,871.74 (Stroock)<br>$34,075.28 (Navigant<br>June) | | |

5

**Quarterly Fee Applications**

| Date Filed | Period Covered | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| July 30, 2001 D.I.770 (First) | 4/12/01-6/30/01 | $369,873.75 | $19,318.00 | $369,873.75 | $19,318.75 |
| November 1, 2002 D.I.1068 (Second) | 7/1/01 – 9/31/01 | $204,923.50 | $15,015.57 | $204,923.50 | $15,015.57 |
| February 8, 2002 D.I.1658 (Third) | 10/1/01 – 12/31/01 | $329,842.00 | $21,880.90 $9,918.43* | $329,842.00 | $21,880.90 (Stroock) $9,918.43 (Chambers) |
| May 16, 2002 D.I.2064 (Fourth) | 01/01/02 – 03/31/02 | $267,170.20 | $6,149.76 $36,352.60* | $266,865.70 | $6,144.85 (Stroock) $22,002.76 (Chambers) |
| August 16, 2002 D.I.2557 (Fifth) | 04/01/02 – 06/30/02 | $245,259.00 | $6,784.97 $167,629.78* | $245,259.00 | $6,784.97 (Stroock) $167,629.78 (Chambers |
| November 18, 2002 D.I.3045 (Sixth) | 07/01/02 – 09/30/02 | $280,471.77 | $28,358.07 $17,814.45* | $224,534.21[1] | $28,358.07 (Stroock)[1] $17,814,45 (Chambers)[1] |
| March 25, 2003 D.I.3549 (Seventh) | 10/01/02 – 12/31/03 | $171,108.00 | $25,000.84 $1,780.75* | $136,886.40[2] | $25,000.84 (Stroock)[2] $1,780.75 (Chambers)[2] |

---

[*]    These amounts relate to the Committee's Asbestos Issues Expert.

[1]    Court Order dated March 14, 2003 approved fees in the amount of $276,535.77 and expenses in the amount of $45,477.52.

[2]    Court Order dated July 28, 2003 approved fees in the amount of $171,108.00 and expenses in the amount of $26,412.62.

6

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| May 20, 2003<br>D.I. 3815<br>(Eighth) | 1/1/03 –<br>3/31/03 | $224,358.50 | $9,424.04<br>$1,077.80* | $224,615.50[3] | $9,424.04<br>(Stroock)[3]<br>$1,077.80<br>(Chambers)[3] |
| August 29, 2003<br>D.I. 4357<br>(Ninth) | 4/1/03 –<br>6/30/03 | $215,903.50 | $2,726.28<br>$67,628.50* | $215,903.50[4] | $2,726.28<br>(Stroock)[4]<br>$67,628.50<br>(Chambers)[4] |
| December 5, 2003<br>D.I. 4778<br>(Tenth) | 7/1/03 –<br>9/30/03 | $218,222.00 | $4,339.46<br>$36,865.19* | $218,222.00[5] | $4,339.46<br>(Stroock)[5]<br>$36,865.19<br>(Chambers)[5] |
| March 2, 2004<br>D.I. 5212<br>(Eleventh) | 10/1/03 –<br>12/31/03 | $215,718.50 | $5,950.82<br>$100,349.50* | $215,718.50[6] | $5,922.67<br>(Stroock)[6]<br>$100,349.50<br>(Chambers)[6] |
| May 18, 2004<br>D.I. 5597<br>(Twelfth) | 1/1/04 –<br>3/31/04 | $254,857.00 | $9,965.36<br>$83,147.07* | $254,857.00[7] | $9,965.36<br>(Stroock)[7]<br>$83,147.07<br>(Navigant)[7] |
| August 26, 2004<br>D.I. 6269<br>(Thirteenth) | 4/1/04 –<br>6/30/04 | $353,629.50 | $7,760.42<br>$272,474.16* | $353,629.50[8] | $7,760.42<br>(Stroock)[8]<br>$272,474.16<br>(Navigant)[8] |

---

[3]  Court Order dated September 22, 2003 approved fees in the amount of $224,033.50 and expenses in the amount of $10,410.22.

[4]  Amended Court Order dated December 23, 2003 approved fees in the amount of $215,903.50 and expenses in the amount of $70,354.78.

[5]  Court Order dated April 26, 2004 approved fees in the amount of $218,222.00 and expenses in the amount of $41,204.65.

[6]  Court Order dated June 16, 2004 approved fees in the amount of $215,718.50 and expenses in the amount of $106,272.17.

[7]  Court Order dated September 27, 2004 approved fees in the amount of $254,857.00 and expenses in the amount of $93,011.96.

[8]  Court Order dated January 25, 2005 approved fees in the amount of $353,629.50 and expenses in the amount of $280,234.58.

SSL-DOCS1 1598824v2

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| November 10, 2004 D.I. 6871 (Fourteenth) | 7/1/04 – 9/30/04 | $226,702.50 | $6,705.08 $67,569.50* | $226,702.50[9] | $6,705.08 (Stroock)[9] $67,569.50 (Navigant)[9] |
| February 22, 2005 D.I. 7851 (Fifteenth) | 10/1/04 – 12/31/04 | $653,133.20 | $25,830.19 $140,422.11* | $648,355.70[10] | $25,830.19 (Stroock)[10] $140,422.11 (Navigant)[10] |
| May 16, 2005 D.I. 8468 (Sixteenth) | 1/1/05- 3/31/05 | $352,289.50 | $12,746.23 $40,104.23* | | |

---

[9]   Court Order dated March 22, 2005 approved fees in the amount of $226,702.50 and expenses in the amount of $74,274.58.

[10]   Court Order dated June 29, 2005 approved fees in the amount of $648,335.70 and expenses in the amount of $166,252.30.

8

**WR GRACE & CO**
**ATTACHMENT B**
**APRIL 1, 2005 - JUNE 30, 2005**

| | Hours | Rate | Amount | No. of Years In Position |
|---|---|---|---|---|
| **Partners** | | | | |
| Greenberg, Mayer | 12.3 | $ 635 | $ 7,810.50 | 7 |
| Kruger, Lewis | 30.8 | 795 | 24,486.00 | 35 |
| Pasquale, Kenneth | 105.1 | 605 | 63,585.50 | 6 |
| Speiser, Mark A. | 12.3 | 735 | 9,040.50 | 18 |
| Wintner, Mark | 9.4 | 695 | 6,533.00 | 24 |
| | | | | |
| **Associates** | | | | |
| Berg, Madelaine | 25.9 | 550 | 14,245.00 | 25 |
| Eichler, Mark | 8.2 | 515 | 4,223.00 | 7 |
| Keppler, Abbey | 3.0 | 540 | 1,620.00 | 18 |
| Krieger, Arlene | 331.2 | 550 | 182,160.00 | 21 |
| Thomison, Jessamy K. | 39.7 | 320 | 12,704.00 | 2 |
| | | | | |
| **Paraprofessionals** | | | | |
| Caskadon, Alexandra | 56.9 | 210 | 11,949.00 | 3 |
| Mohamed, David | 34.3 | 130 | 4,459.00 | 16 |
| Peters, Angelina | 3.7 | 130 | 481.00 | 1 |
| Serrette, Rosemarie | 9.1 | 210 | 1,911.00 | 17 |
| | | | | |
| **TOTAL** | **681.9** | | **$ 345,207.50** | |
| **LESS 50% TRAVEL** | **(7.3)** | | **(4,386.25)** | |
| **TOTAL** | **674.6** | | **$ 340,821.25** | |

**WR GRACE & CO**
**COMPENSATION BY PROJECT CATEGORY**
**APRIL 1, 2005 - JUNE 30, 2005**

| MATTER CODE | PROJECT CATEGORY | HOURS | TOTAL FEES |
|---|---|---|---|
| 0003 | Claim Analysis Objection, Resolution & Estimation (Asbestos) | 57.7 | $   34,334.00 |
| 0008 | Asset Analysis and Recovery | 2.7 | 1,485.00 |
| 0013 | Business Operations | 23.9 | 13,512.50 |
| 0014 | Case Administration | 87.3 | 26,712.00 |
| 0015 | Claims Analysis/Objections/Administration (Non-Asbestos) | 4.4 | 2,420.00 |
| 0017 | Committee, Creditors', Noteholders', or Equity Holders' | 165.9 | 91,344.00 |
| 0018 | Fee Application, Applicant | 58.4 | 18,728.00 |
| 0019 | Creditor Inquiries | 8.4 | 5,116.00 |
| 0020 | Fee Application, Others | 3.4 | 662.00 |
| 0021 | Employee Benefits, Pension | 24.6 | 14,386.50 |
| 0022 | Environmental Matters/Regulations/Litigation | 88.4 | 49,545.00 |
| 0031 | Investigations | 0.1 | 55.00 |
| 0032 | Litigation (Non-Bankruptcy/General) | 17.7 | 10,631.50 |
| 0034 | Litigation/Fraudulent Conveyance | 17.4 | 10,477.50 |
| 0035 | Travel - Non Working | 14.5 | 8,772.50 |
| 0036 | Plan and Disclosure Statement | 23.8 | 14,335.00 |
| 0037 | Hearings | 17.4 | 10,203.50 |
| 0040 | Employee Applications - Others | 1.6 | 880.00 |
| 0041 | Relief from Stay Proceedings | 41.3 | 18,199.00 |
| 0047 | Tax Issues | 23.0 | 13,408.50 |
| | | | |
| | **SUB TOTAL** | **681.9** | **$ 345,207.50** |
| | **LESS 50% TRAVEL** | **(7.3)** | **(4,386.25)** |
| | **TOTAL** | **674.6** | **$ 340,821.25** |

SSL-DOCS1 1598824v2

**WR GRACE & CO**
**DISBURSEMENT SUMMARY**
**APRIL 1, 2005 - JUNE 30, 2005**

| | |
|---|---:|
| Outside Messenger Service | $      346.82 |
| Meals | 1,064.89 |
| Local Transportation | 426.89 |
| Long Distance Telephone | 866.85 |
| Duplicating Costs-in House | 586.10 |
| Postage | 7.96 |
| In House Messenger Service | 58.82 |
| Court Reporting Services | 932.75 |
| O/S Information Services | 133.12 |
| Miscellaneous | 527.50 |
| Facsimile Charges | 20.00 |
| Travel Expenses - Transportation | 1,009.23 |
| Travel Expenses - Lodging | 285.96 |
| Westlaw | 2,880.51 |
| Word Processing - Logit | 114.00 |
| | |
| **TOTAL** | $  9,261.40 |

3

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **W. R. GRACE & CO., et al.**[1] | ) | **Case No. 01-01139 (JKF)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

## SEVENTEENTH QUARTERLY FEE APPLICATION BY STROOCK & STROOCK & LAVAN LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF W. R. GRACE & CO., et al., FOR INTERIM COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM APRIL 1, 2005 THROUGH JUNE 30, 2005

Stroock & Stroock & Lavan LLP ("Stroock" or "Applicant"), counsel to the Official

Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co. ("Grace") and its

sixty-one domestic subsidiaries and affiliates that are debtors and debtors-in-possession (the

"Debtors") in this Court, for its application pursuant to 11 U.S.C. §§ 330 and 331 and in

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

accordance with the Administrative Fee Order (defined below) for interim allowance of compensation for services rendered and for reimbursement of expenses incurred in connection therewith, respectfully represents as follows:

## INTRODUCTION

1.      By this application (the "Application"), Stroock seeks (i) an interim allowance of compensation for the professional services rendered by Stroock as counsel for the Committee for the period from April 1, 2005 through June 30, 2005 (the "Compensation Period") in the aggregate amount of $340,821.25 representing 577.9 hours of professional services and 104 hours of paraprofessional services; and (ii) reimbursement of actual and necessary expenses incurred by Stroock during the Compensation Period in connection with the rendition of such professional services and paraprofessional services in the aggregate amount of $9,261.40, as well as the fees and expenses of the asbestos issues expert employed by the Committee pursuant to the Court's June 22, 2001 Order Authorizing the Retention of Experts (the "Asbestos Issues Expert") in respect of services rendered in the months of April and June of 2005 in the aggregate amount of $54,204.34.

2.      Venue of this proceeding and this application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 330 and 331 and Federal Rules of Bankruptcy Procedure 2002(a) and 2016.

## BACKGROUND

3.      On April 2, 2001 (the "Petition Date"), each of the Debtors filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code and have continued in the management and operation of their businesses and property pursuant to §§ 1107 and 1108 of the

2

Bankruptcy Code. Pursuant to an order of the Court, the Debtors' chapter 11 cases have been procedurally consolidated and are being jointly administered.

4.      The Debtors operate a world-wide specialty chemicals and materials business and employ approximately 3860 full and part-time employees. On a consolidated basis, for the fiscal year 2000, Grace reported a net loss of $89.7 million[2] from $1.59 billion in net revenues. The Debtors' bankruptcy filings report that in fiscal year 2000, on a consolidated basis, Grace's sales are generated approximately 50% by the Debtors and 50% by the Debtors' non-debtor subsidiaries and affiliates.

5.      On April 12, 2001, the United States Trustee formed the Committee. During the first meeting of the Committee on April 12, 2001, the Committee duly selected Stroock as its counsel to represent the Committee in all matters during the pendency of the Debtors' Chapter 11 cases. The Committee thereafter approved the retention of Duane, Morris & Heckscher LLP (n/k/a Duane Morris LLP) ("DM&H") as its local Delaware counsel. During the Compensation Period, on December 3, 2003, a second amended notice of appointment of the Committee was filed by the United States Trustee.

6.      The United States Trustee also appointed two separate official committees to represent the interests of claimants asserting asbestos-related personal injury claims and asbestos-related property damage claims against the Debtors (collectively, the "Asbestos Claim Committees"). On June 18, 2001, the United States Trustee appointed an official committee to represent the interests of equity security holders of the Debtors (the "Equity Committee").

---

[2]      The Debtors' pleadings further reported that this net loss resulted in part from a $294.0 million asbestos-related charge to earnings recorded in the fourth quarter of 2000.

7.      By order dated May 24, 2004, the Court authorized the appointment of a legal representative for future asbestos claimants (the "Futures Representative").

8.      By application dated May 1, 2001, Stroock sought Court approval for its retention as counsel to the Committee nunc pro tunc to April 12, 2001.  The Court signed an order approving Stroock's retention as counsel to the Committee on May 30, 2001.

9.      This is the seventeenth quarterly interim application Stroock has filed with the Court for an allowance of compensation and reimbursement of expenses for services rendered to the Committee.  This Application is submitted pursuant to the terms of the Administrative Order Under §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, approved by the Court on May 3, 2001 as amended by order dated April 19, 2002 (collectively, the "Administrative Fee Order").

10.     In accordance with the procedures established by the Administrative Fee Order, Stroock had, at the time of filing of this Application, received payment from the Debtors for 80% of the fees and 100% of Stroock's expenses requested, and not objected to, in the April 2005 and May 2005 fee statements encompassed within this Compensation Period.  The Objection Period for the June 2005 fee statement has yet to expire.  In addition, Stroock has received payment from the Debtors in the amount of $20,129.06, representing the fees and expenses of Navigant Consulting, Inc. ("Navigant") formerly known as Chambers Associates, the Asbestos Issues Expert for the Committee, for the month of Apriil 2005, but has not received payment in respect of the fees and expenses of the Asbestos Issues Expert for the months of June 2005.  Applicant has received no other payments and no promises for payment from any source for services

4

rendered in connection with these cases for the months encompassing this Compensation Period other than as immediately set forth above. There is no agreement or understanding between the Applicant and any other person (other than members of Stroock) for the sharing of compensation to be received for the services rendered in these cases.

11.     As stated in the Affidavit of Kenneth Pasquale, Esq. annexed hereto as Exhibit "A," all of the services for which interim compensation is sought herein were rendered for and on behalf of the Committee solely in connection with these cases.

## SUMMARY OF SERVICES RENDERED

12.     Since being retained by the Committee, Stroock has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the unsecured creditors of the Debtors' estates. The variety and complexity of these cases and the need to act or respond on an expedited basis in furtherance of the Committee's needs have required the expenditure of substantial time by personnel from several legal disciplines, on an as-needed basis, including in certain instances, working into the evening and on weekends.

13.     Stroock maintains written records of the time expended by attorneys and paraprofessionals in the rendition of their professional services to the Committee. Such time records were made contemporaneously with the rendition of services by the person rendering such services and in the ordinary course of Stroock's practice, and are presented in compliance with Delaware Local Rule 2016-2(d) amended effective as of September 1, 2002. A compilation showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the

services during the Compensation Period is annexed hereto as Exhibit "B". In addition, Exhibit "C" hereto contains a summary of the hours expended by each of the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

14.    Stroock also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are also available for inspection. A schedule of the categories of expenses and amounts for which payment is requested is annexed hereto as Exhibit "D".

15.    Stroock respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and have directly benefited the creditor constituents represented by the Committee and have contributed to the effective administration of these cases.

16.    The following summary of the services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit "B". Rather, it is merely an attempt to highlight certain of these areas in which services were rendered to the Committee, as well as to identify some of the problems and issues to which Stroock was required to direct its attention.

### Claim Analysis Objection, Resolution & Estimation (Asbestos) -- Category 0003

17.    As reflected in prior compensation applications, in mid-November 2004, the Debtors filed a reorganization plan and numerous related pleadings including their motion seeking the estimation of asbestos claims and the establishment of a schedule and procedures for

carrying out the estimations (the "Estimation Motion") and their motion to establish post-confirmation litigation protocols for liquidating asbestos claims (the "Case Management Motion"). Stroock prepared and filed on behalf of the Committee responses joining the Debtors in support of those Motions. Objections to the Debtors' Estimation Motion and Case Management Motion were filed by the Asbestos Claim Committees. The Court held a hearing on the Estimation Motion on January 21, 2005 during which the Court directed the Debtors and each of the Asbestos Claim Committees to work together to prepare case management orders to govern the estimation of asbestos property damage and asbestos personal injury claims (the "Estimation CMOs") and to agree on a proposed form of Debtors' questionnaire for asbestos personal injury clamants who had commenced pre-petition litigation against the Debtors (the "Questionnaire").

18.     After being unable to obtain the agreement of the PI Committee and the Futures Representative to the Debtors' proposed Estimation CMO for PI Claims (the "PI CMO") and to a form of Questionnaire to be used, the Debtors, during this Compensation Period, filed a motion and accompanying brief seeking the Court's approval for the Debtors' proposed form of PI CMO and Questionnaire. Stroock reviewed the Debtors' pleadings and then prepared on behalf of the Committee and filed a response in support of the Debtors' PI CMO and Questionnaire Motion. Also during this Compensation Period, Stroock reviewed the other responses and objections filed to Debtors PI CMO/Questionnaire Motion, and reviewed the recently issued Rand Report on asbestos liabilities, the Protective Order approved by the Court during the May 16, 2005 hearing in respect of the PD Estimation CMO and the various drafts of the proposed Estimation CMOs that were circulated, providing comment on them to Debtors' counsel where appropriate.

7

19.     As reported in prior quarterly compensation applications, certain members of Congress have been expending efforts towards enacting new legislation to globally address asbestos-related claims and lawsuits asserted against businesses both within and outside of, bankruptcy.  During this Compensation Period, Senator Specter circulated a new draft bill within the Senate Judiciary Committee.  and he and other Senators and interested groups expressed their respective positions on the new draft bill and continued their efforts to reach acceptable compromises on key aspects of the legislation on which substantial disagreement still exists. Navigant forwarded numerous articles to Stroock addressing the numerous amendments that were proposed for the draft bill, the differing positions of Senator Specter, other Senators and of interested groups on the bill and the projections for the bill to get to the Senate floor for condideration by the full Senate.  Stroock reviewed each of those articles, as well as related articles that it found, given that this is an area of direct relevance to these chapter 11 cases, and forwarded numerous memoranda to the Committee on asbestos-reform legislation.

20.     In addition, during this Compensation Period, the District Court held hearings in the Federal Mogul (T&N) cases with respect to estimating those debtors' liability for personal injury claims in which a principal of Navigant was providing expert testimony for one of the parties.  Given the potential relevance of the issues raised by the estimation hearing and the testimony given by Navigant to these cases, Stroock attended those portions of the Federal Mogul estimation hearings during which the expert from Navigant testified and attended to certain issues raised.  Further, during this Compensation Period, the District Court in the Owens Corning case issued its opinion on estimation of that debtors' asbestos personal injury liabilities, which Stroock read and discussed with the Committee.  Stroock has expended 57.7 hours on this category for a fee of $ 34,334.00.

8

### Asset Analysis and Recovery -- Category 0008

21.     During the Compensation Period, Stroock and Capstone were informed of the

Company's decision to (i) shut down the Debtors' Specialty Polymers business in Owensboro

Kentucky and (ii) seek Court approval to expend up to $20.0 million of the estates' property to

establish an additional manufacturing facility for their Specialty Building Materials business (the

"SMB Business").  Stroock discussed these matters with Capstone and reviewed and provided

comment to Capstone on its proposed memoranda to the Committee discussing these matters.

Stroock also attended to the Debtors' motion seeking to expand the SBM Business, and

discussed the motion with Debtors' counsel.   Stroock has expended 2.7 hours on this category

for a fee of $1,485.00.

### Business Operations -- Category 0013

22.     During this Compensation Period, Stroock reviewed the Company's first quarter

2005 operating results and April 2005 financial package, Capstone's report on the Company's

first quarter 2005 operating results and Capstone's report on the Company's 2004 operations and

2005 business plan review and discussed these reports with Capstone.

23.     As discussed in the Prior Compensation Application, the Debtors had filed a

motion seeking authorization to enter into an employment agreement with Fred Festa as the new

CEO for the Company following Paul Norris' retirement on May 31, 2005 and a post-retirement

consulting agreement with Paul Norris (the "CEO Employment Motion").  Stroock reviewed the

CEO Employment Motion, discussed with Capstone the terms of the proposed agreements and

Capstone's analysis comparing the compensation package proposed to be provided to Mr. Festa

with that provided to CEO's of other comparable, competitor companies and prepared a

memorandum for the Committee on this matter.  Objections were filed to the CEO Employment

9

Motion by the Asbestos Claim Committees. Stroock reviewed and then discussed the points raised by the objections and Debtors' reply in further support of the Festa employment agreement with Capstone and the subsequent analysis Capstone prepared on the issues and prepared further memoranda to the Committee.

24.    As reflected in this and other categories of services rendered during this Compensation Period, Stroock reviewed the supplemental analyses and information provided in further support of the Festa employment agreement, the supplemental pleadings filed in opposition to Festa's proposed compensation package and additional analyses Capstone prepared on the issues raised. In addition, Stroock participated in the depositions taken of Nick Bubnovich, the Debtors' compensation consultant, and Thomas Vanderslice, the Lead Independent Director of the Grace Board of Directors, and prepared for the April 25, 2005 hearing on this Motion.

25.    Also during this Compensation Period, the Debtors provided notice of a proposed series of intercompany transactions involving the intercompany movement and restructuring of assets and use of the Debtors' NOLs (the "Grom Transaction"). As reflected in this and other categories of services rendered during this Compensation Period, Stroock reviewed the proposed transaction, with Capstone prepared a request for additional information from the Debtors' representatives, prepared a memorandum for the Committee discussing the Transaction, and advised the Debtors of the Committee's position on this matter. Stroock has expended 23.9 hours on this category for a fee of $13,512.50.

10

## Case Administration -- Category 0014

26.     As reported in prior monthly compensation applications, towards the end of the November 2001 compensation period, Stroock was informed that these chapter 11 cases were being reassigned to District Court Judge Alfred Wolin.  A number of orders were issued during the month of December 2001 relating to the reassignment of these cases to Judge Wolin and the reference of these cases to Judge Judith Fitzgerald.  As reported in the prior compensation period Judge Wolin was recused from these cases and the cases were reassigned to District Court Judge Ronald L. Buckwalter.

27.     During the Compensation Period, Stroock continued to closely monitor the items on the Court's general chapter 11 docket for these cases, as well as those dockets relating to each of the adversary proceedings pending in these chapter 11 cases, to ensure that the Committee was fully informed about all pending motions and adversary proceedings and that Stroock would be ready to timely respond on behalf of the Committee, as might be applicable.  Stroock continued to engage Debtors' counsel and Capstone on an on-going basis with respect to pending matters and information requests, and reviewed agenda notices prepared for Judge Fitzgerald during the Compensation Period in respect of the hearings scheduled to be held each month during the period.  In addition, during this Compensation Period, Stroock discussed a number of upcoming matters with the Company's general counsel, attended to the agenda for the Committee's May 26, 2005 meeting with Debtors' management and discussed the proposed scheduling of and agenda for a meeting on July 8, 2005 at Debtors' counsel's office in Washington, D.C.  Also during this Compensation Period, Stroock prepared a response to the Fee Auditor's initial report on Stroock's Fifteenth Quarterly Fee Application.  Stroock has expended 87.3 hours on this category for a fee of $ 26,712.00.

11

## Claims Analysis, Objection and Resolution (Non-Asbestos) -- Category 0015

28.     During this Compensation Period, Stroock reviewed and communicated with the

Debtors, as applicable, with respect to the Debtors' settlement notice and proposed stipulation

with Sciences International, their proposed stipulation with the United Steelworkers' Union, and

the Debtors' proposed stipulation with Spaulding & Slye and the omnibus objection to claims

filed during the period. Stroock has expended 4.4 hours on this category for a fee of $2,420.00.

## Committee, Creditors' Noteholders' or Equity Holders' -- Category 0017

29.     During the Compensation Period, Stroock communicated with the members of the

full Committee through numerous memoranda, several conference call meetings of the

Committee, and an extended meeting with Debtors' management and representatives during

which the Debtors' 2005 business plan, the Committee's proposed plan support agreement, plan-

related matters and Debtors' retiree benefits were addressed.

30.     In addition, during this Compensation Period, in order to keep the Committee

fully informed of all of the pending matters in these cases, and thus enable the Committee to take

informed positions on those issues, Stroock reviewed and summarized the motions and notices

filed by the Debtors and other parties in interest in these cases and the responses filed, raised

issues the Committee should be aware of, and made recommendations to the Committee

concerning appropriate actions to be taken with regard to the motions, communicated with

members of the Committee regarding the positions to be taken, engaged counsel for the Debtors,

and other parties and movants, as applicable, with the Committee's questions and concerns,

negotiated whenever and to the extent possible consensual resolutions of outstanding issues and

acceptable forms of proposed orders and advised the Committee of the Court's rulings.

31.     The motions, agreements, and other materials Stroock reviewed during the Compensation Period, prepared memoranda to the Committee on and discussed with the Committee, as applicable, included, among other matters, (i) the Debtors' motion for approval of a settlement and release agreement and the creation of a trust with Cytec Industries and other parties; (ii) the Debtors' motion for approval of a multi agreement settlement of environmental liabilities with Hatco Corporation, certain of which had the NJDEP as a party: (iii) materials relating to the civil action commenced by the Attorney General in New Jersey against Grace and two of its current and former employees; (iv) the Debtors' motions seeking authority to expend up to $20.0 million to expand a facility; (v) the Debtors' motions for authority to contribute approximately $60.0 million to certain of their defined benefit pension plans; (vi) the State of Montana's motion seeking stay relief to join the Debtors as third party defendants in asbestos claim-related state court litigation; and (vii) Debtors' motion seeking to further extend their exclusive periods, the objections filed to that relief and the Debtors' reply..

32.     As reflected in the Prior Compensation Application, following the Debtors' agreement to a letter agreement setting forth the conditions under which the Committee could withdraw as a co-proponent of the Amended Plan and the filing of the Amended Plan Documents Stroock prepared a form of plan support agreement embodying the parties' agreement. Certain of the services rendered in this category during this Compensation Period included addressing the Debtors' proposed modifications to the Committee's form of plan support agreement for the Amended Plan and the preparation of a memorandum to the Committee discussing such modifications.

33.     In addition, Stroock continued to keep the Committee informed with respect to articles and reports in respect of the legislative attempts to address the resolution of asbestos

13

claims on a national basis, all of which have particular relevance to these cases. Through its correspondence and communication with the Committee, Stroock has assisted the Committee in fulfilling its statutory duties to make informed decisions and express the Committee's views regarding the issues which arise in these cases and to actively participate in the preparation of a plan providing appropriate treatment for the creditors represented by the Committee and to support the establishment of appropriate processes for the estimation of the Debtors' asbestos liabilities. Stroock has expended 165.9 hours on this category for a fee of $91,344.00.

### Fee Application, Applicant -- Category 0018

34.    During this Compensation Period, Stroock prepared its fee statements for the months of March 2005, April 2005 and May 2005, and related notices and certifications of no objection. Stroock also prepared its Sixteenth Quarterly Fee Application covering the period from January 1, 2005 through March 30, 2005 (the "Prior Compensation Application"), including a narrative section summarizing the services rendered during that period by Stroock and numerous fee and expense schedules, as required by the Administrative Fee Order entered by the Court, and reviewed the Fee Auditors' proposed interim compensation charts and report with respect to a prior compensation period. Stroock has expended 58.4 hours on this category for a fee of $18,728.00.

### Creditor Inquiries -- Category 0019

35.    During this Compensation Period, Stroock responded to numerous inquiries from unsecured creditors with respect to the status of the Debtors' Amended Plan, the proposed processes for estimating asbestos liabilities and related issues, the renewed motion for approval of the Sealed Air Settlement Agreement, the status and prospects for asbestos legislation and the

14

impact of the proposed legislation on the Debtors' Amended Plan and chapter 11 cases. Stroock has expended 8.4 hours on this category for a fee of $5,116.00.

### Fee Application, Others -- Category 0020

36.     During the Compensation Period, Stroock prepared notices and certifications with respect to Capstone's monthly fee statements for the month of April 2005 and with respect to Capstone's fifth quarterly fee application. Stroock has expended 3.4 hours on this category for a fee of $662.00.

### Employee Benefits, Pension – Category 0021

37.     During this Compensation Period, the Debtors sought authorization to (i) make minimum funding contributions to their fourteen defined benefit pension plans required by ERISA during the 12 month period from July 15, 2005 through July 15, 2006 in the aggregate amount of approximately $51.5 million and (ii) make additional contributions in the aggregate estimated amount of $8.4 million no later than September 15, 2005 to two of the Debtors' union pension plans, in order to implement increased pension benefits the Debtors agreed to in connection with their recent negotiations over collective bargaining agreements at their Lake Charles and Chattanooga facilities (collectively, the "Pension Contribution Motions"). Stroock reviewed the drafts of the motions forwarded by the Debtors, prepared a request with Capstone for further information and documentation for the Company, engaged the Debtors in discussions over the relief sought in the Pension Contribution Motions, reviewed the additional materials received from the Company, prepared several memoranda to the Committee and discussed the Committee's positions on these matters with the Debtors. The forms of the motions filed with the Court reflected a compromise between the Committee and the Debtors on these matters.

15

38.    In addition, during this Compensation Period, the Debtors filed a motion seeking an order extending for the 2005 - 2007 period the terms of the Company's on-going, long-term, performance-based incentive program for certain employees  Stroock has expended 24.6 hours on this category for a fee of $14,386.50.

## Environmental Matters/Regulations/Litigation -- Category 0022

39.    During this Compensation Period, the Debtors filed a motion seeking the Court's approval for a settlement involving five integrally-related agreements (the "Hatco Settlement"), pursuant to which certain Debtors would (i) transfer all of their obligations and liabilities arising from environmental contamination at a site previously owned by Grace in New Jersey (the "Site") to an unrelated third party that would be responsible to complete the environmental remediation of the Site and maintain the Site in perpetuity and (ii) pay approximately $21.6 million of the estates' property, most of which to such third party, and the rest to an entity that assisted the Debtors in putting this transaction together.  The Hatco Settlement provided for the third party's obligations to be backed for a period of time by an insurance policy and thereafter by a pre-funded annuity.  The New Jersey Department of Environmental Protection ("NJDEP") was a party to several of the agreements comprising the Hatco Settlement.  In connection with analyzing this matter for the Committee, Stroock reviewed all of the agreements and related policies and documentation, held numerous discussions with Navigant and Capstone, prepared information requests to the Debtors' representatives, had a number of extended conference calls with Navigant, Capstone and representatives for the Debtors, and reviewed relevant Third Circuit case law.  Thereafter, Stroock worked with Navigant and Capstone to prepare an extensive detailed memorandum to the Committee on this matter.

16

40.     The Debtors also filed a motion seeking approval for a settlement agreement (the "Cytec Settlement") with Cytec Industries, Inc., and other parties (the "Cytec Parties") during this Compensation Period.  Under the Cytec Settlement, which sought to resolve the Cytec Parties' liability to Grace for environmental remediation of surface contamination to property formerly owned by a predecessor of one of the parties, Cytec agreed to pay the aggregate amount of $5.25 million into a trust for Grace's benefit.  In connection with evaluating this proposed settlement for the Committee, Stroock reviewed the motion and the Settlement and Release Agreement and Trust Agreement, with Navigant and Capstone forwarded an extensive list of questions to Debtors' representatives, had an extended conference call with Debtors' representatives and prepared an extensive memorandum on this matter for the Committee.

41.     In addition, during this Compensation Period, the NJDEP commenced a civil action in the Superior Court of New Jersey against W.R. Grace, W.R. Grace-Conn. and one former and one current employee in connection with the operations and environmental compliance activities at Grace's former vermiculite processing plant in Hamilton, N.J. (the "Hamilton Action").  The Complaint commencing the Action seeks substantial civil penalties against Grace and the individual defendants.  Stroock reviewed the Complaint, discussed this matter with Debtors' representatives, reviewed case law relevant to issues raised by the Hamilton Action and informed the Committee about this matter.  Stroock has expended 88.4 hours on this category for a fee of $49,545.00.

### Investigations -- Category 0031

42.     As reported in prior compensation applications, a federal criminal indictment was issued against W. R. Grace and seven current and former employees concerning the Debtors' operations in Libby, Montana (the "Criminal Indictment").  During this Compensation Period,

17

Stroock reviewed an article that appeared discussing the Criminal Indictment. Stroock has expended 0.1 hours on this category for a fee of $55.00.

## Litigation and Litigation Consulting -- Category 0032

43.    Certain of the services Stroock rendered during this Compensation Period in connection with the Festa Employment Motion are reflected in this category including attending to the discovery produced by the Company to the Asbestos Claim Committees, preparing for the Bubnovich Deposition and Vanderslice Deposition and actively representing the Committee at those Depositions. Stroock has expended 17.7 hours on this category for a fee of $10,631.50.

## Litigation/Fraudulent Conveyance – Category 0034

44.    At the very beginning of this Compensation Period, the Sealed Air Corporation and the Asbestos Claim Committees filed a renewed motion with the Court seeking an order approving and implementing the Sealed Air Settlement Agreement executed by those parties in November 2003. Stroock reviewed the renewed motion and the Settlement Agreement, began to draft an objection on behalf of the Committee to the renewed motion and conducted related research, prepared a detailed memorandum to the Committee discussing the potential objections to the Court's approval of the settlement and the potential impact of the Committee's objection. Stroock has expended 17.4 hours on this category for a fee of $10,477.50.

## Travel – Non Working -- Category 0035

45.    Stroock's fees in this category during this Compensation Period relate to travel (i) to and from Washington, DC in April 2005 to represent the Committee at the Bubnovich and Vanderslice Depositions, (ii) to Wilmington, Delaware for hearings before Judge Fitzgerald in April 2005 and June 2005, and (iii) to Camden, New Jersey in June 2005 in order to attend the

18

Federal Mogul (T&N) estimation hearings on those two days when a principal of Navigant, Committee's asbestos issues consultant, testified as an expert witness. Stroock has expended 14.5 hours on this category for a fee of $8,772.50.

### Plan and Disclosure Statement -- Category 0036

46.    As reported in prior compensation applications, the plan of reorganization (the "Plan") and its related documents (collectively, the "Plan Documents") as filed with the Court in mid November 2004 did not, in the Committee's view provide appropriate treatment for general unsecured creditors. After the Plan Documents were filed Stroock discussed the points at issue with Debtors' representatives and ultimately, the Committee and the Debtors agreed on modifications to be made to the treatment of general unsecured claims as provided for in the Plan, and other provisions in the Plan Documents. An amended Plan with the Committee as a co-proponent (the "Amended Plan"), and a corresponding amended Disclosure Statement (collectively, the Amended Plan Documents") were filed with the Court on January 13, 2005.

47.    During this Compensation Period, the Debtors' filed a motion seeking a further extension of their exclusive periods to file and solicit acceptances on a plan and following separate objections filed in response to the motion by each of the Asbestos Claim Committees and the Futures Representative, the Debtors filed a reply. As reflected in this and other categories of services rendered during this Compensation Period, Stroock reviewed each of these pleadings, and communicated with the Committee about this matter. Also reflected in this category are the services Strrock rendered with respect to discussing with Debtors' counsel the renewed motion for approval of the Sealed Air Settlement Agreement and the meeting directed by the Court to be held to address outstanding issues in respect of the personal injury and

19

property damage case management orders for asbestos estimation proceedings and other plan-related matters.

48.     As reflected in the Prior Compensation Application, Stroock prepared a plan support agreement embodying the terms of the Committee's agreement with the Debtors to be a co-proponent of the Amended Plan.  Stroock rendered certain services in this category during this Compensation Period with respect to reviewing the comments it received from Debtors' counsel to the plan support agreement and in discussing such comments with the Committee. Stroock expended 23.8 hours on this category for a fee of $14,335.00.

### Hearings -- Category 0037

49.     During this Compensation Period Judge Fitzgerald held three omnibus hearings; two hearings in Wilmington, Delaware and the third in Pittsburgh, Pennsylvania.  Stroock reviewed all relevant pleadings, orders, stipulations and other documentation in advance of the hearings, which as already described in this Application addressed a variety of motions and issues, including litigation over the CEO Employment Motion, the differing proposed processes for estimating asbestos claims and other plan-related matters, prepared for the hearings and advocated the Committee's positions.  Stroock expended 17.4 hours on this category for a fee of $10,203.50.

### Employment Applications – Others -- Category 0040

50.     During this Compensation Period, Stroock reviewed the retention pleadings filed by  the Debtors seeking to retain the services of Beveridge and Diamond as special counsel, and by the PD Asbestos Committee to retain LECG, LLC as a consultant, the limited opposition filed by the Debtors to the  the PI Asbestos Committee's motion seeking to employ Anderson Kill as

20

special insurance counsel and the PI Committee's reply to the Debtors' objection. Also during

this Compensation Period, Stroock reviewed and discussed with Capstone, its analysis of the

Debtors' proposed consulting agreement with David Siegel, their former gneral counsel. Stroock

expended 1.6 hours on this category for a fee of $880.00.

### Relief from Stay Proceedings – Category 0041

51.    During this Compensation Period, the State of Montana filed a motion seeking

relief from the stay so that W. R. Grace and W. R. Grace – Conn. could be joined as third party

defendants in nearly 100 actions currently pending against Montana before various Montana

state courts, in which the plaintiffs allege personal injuries caused by exposure to asbestos

presumably relating to the Debtors' Libby, Montana operations. Stroock reviewed the motion,

the decisions cited to in the motion, other related pleadings and decisions and portions of

transcripts of earlier hearings in these cases discussing Libby-related matters, discussed this

matter with Debtors' counsel, reviewed relevant case law, prepared memoranda for the

Committee and prepared an objection to the motion on behalf of the Committee. Stroock also

reviewed the objections filed by the Debtors and other parties-in-interest in these cases to the

motion. Stroock expended 41.3 hours on this category for a fee of $18,199.00.

### Tax Issues -- Category 0047

52.    Stroock rendered tax-related services during this Compensation Period in

connection with the Committtee's potential objections to the renewed motion for approval of the

Sealed Air Settlement Agreement and the Committee's evaluation thereof and in connection with

evaluating the Grom Transaction described above, including discussing the Transaction with

Debtors' in-house tax personnel and preparing a memorandum for the Committee. Stroock

expended 23.0 hours on this category for a fee of $13,408.50.

21

## FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

53.     The factors to be considered in awarding attorneys fees have been enumerated in

In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), reh'g denied, 547

F.2d 573, cert. denied, 431 U.S. 904; these standards have been adopted by most courts.  Stroock

respectfully submits that a consideration of these factors should result in this Court's allowance

of the full compensation sought.

The Time and Labor Required.  The professional services rendered by

Stroock on behalf of the Committee have required the expenditure of

substantial time and effort, as well as a high degree of professional

competence and expertise, in order to deal with the complex issues

encountered by the Committee with skill and dispatch.  Occasionally,

Stroock has been required to perform these services under significant time

constraints requiring work late into the evening and on weekends.  The

services rendered by Stroock were performed efficiently, effectively and

economically.

The Novelty and Difficulty of Questions.  Novel and complex issues have

already arisen in the course of these Chapter 11 cases, and it can be

anticipated that other such issues will be encountered.  In this case, as in

many others in which the firm is involved, Stroock's effective advocacy

and creative approach have helped clarify and resolve such issues and will

continue to prove beneficial.

22

The Skill Requisite to Perform the Legal Services Properly. Stroock believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Stroock's practice, and its creative approach to the resolution of issues, are and will continue to contribute to the maximization of the distributions to the Debtors' unsecured creditors.

The Preclusion of Other Employment by Applicant Due to Acceptance of the Case. Due to the size of Stroock's insolvency department, Stroock's representation of the Committee has not precluded its acceptance of new clients. However, the volume of the matters needing attention on a continuing basis has required several of the attorneys to commit significant portions of their time to these cases.

The Customary Fee. The fee sought herein is based upon Stroock's normal hourly rates for services of this kind. Stroock respectfully submits that the fee sought herein is not unusual given the magnitude and complexity of these cases and the time expended in attending to the representation of the Committee, and is commensurate with fees Stroock has been awarded in other cases, as well as with fees charged by other attorneys of comparable experience.

Whether the Fee is Fixed or Contingent. Pursuant to §§ 330 and 331 of the Bankruptcy Code, all fees sought by professionals employed under § 1103 of the Code are contingent pending final approval by this Court,

23

and are subject to adjustment dependent upon the services rendered and the results obtained.

Time Limitations Imposed by Client or Other Circumstances.  As already indicated, Stroock has attended to the various issues arising in these cases. Occasionally, Stroock has had to perform those services under significant time constraints requiring attorneys assigned to these cases to work evenings and on weekends.

The Amount Involved and Results Obtained.  Through the efforts of Stroock, the Committee has been an active participant in these Chapter 11 cases from the very first days of its formation, and its assistance, as well as constructive criticism, has greatly contributed to the efficient administration of these cases.

The Experience, Reputation and Ability of the Attorneys.  Stroock has one of the largest and most sophisticated insolvency practices in the nation and has played a major role in numerous cases of national import including: Acme Metals, Inc., Hillsborough Holdings Corporation, Laclede Steel Company, Gulf States Steel, Inc. of Alabama, The LTV Corporation, Wheeling-Pittsburgh Steel Corporation, Allis-Chalmers Corporation, The Charter Company, Federated Department Stores, G. Heileman Brewing Company, Inc., Burlington Motor Holdings, Inc., Metallurg, Inc., Forstmann & Company, Inc., Barneys, Inc., Fruehauf Trailer Corporation, Levitz Furniture Incorporated, The Columbia Gas System, Inc., JWP, Inc.,

24

<u>Flushing Hospital and Medical Center</u>, <u>Planet Hollywood International,</u>
<u>Anchor Glass Container Corporation, Beloit Corporation in the</u>
<u>Harnischfeger Industries Chapter 11 Cases, RSL COM U.S.A. Inc, USG</u>
<u>Corporation, Formica Corp. Galey & Lord, Inc. and DESA Holdings</u>.
Stroock's experience enables it to perform the services described herein
competently and expeditiously.  In addition to its expertise in the area of
corporate reorganization, Stroock has already frequently called upon the
expertise of its partners and associates in the litigation, ERISA, tax,
environmental and intellectual property law areas to perform the wide
ranging scope of the legal work necessitated by these cases.

<u>The "Undesirability" of the Case</u>.  These cases are not undesirable, but as
already indicated, have required a significant commitment of time from
several of the attorneys assigned hereto.

<u>Nature and Length of Professional Relationship</u>.  As described above,
Stroock has been actively rendering services on behalf of the Committee
as necessary and appropriate from April 12, 2001 through to the present.

## ALLOWANCE OF COMPENSATION

54.     The professional services rendered by Stroock required a high degree of
professional competence and expertise so that the numerous issues requiring evaluation and
determination by the Committee could be addressed with skill and dispatch and have, therefore,
required the expenditure of substantial time and effort.  It is respectfully submitted that the
services rendered to the Committee were performed efficiently, effectively and economically,

25

and the results obtained to date have benefited the Debtors' unsecured creditor body as a whole and the Debtors' estates.

55.     With respect to the level of compensation, § 330 of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person (including attorneys for a creditors' committee): "Reasonable compensation for actual necessary services rendered by [such] . . . professional person. 11 U.S.C. § 330. Section 330 further states that the court should take into consideration, inter alia, the nature, extent, and value of services performed, as well as the cost of comparable services other than in a case under this title. Id. The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

56.     The total time spent by Stroock attorneys and paraprofessionals during the Compensation Period for which Stroock seeks payment was 674.6 hours. Such services have a fair market value of $340,821.25. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

57.     As shown by this Application and supporting documents, Applicant spent its time economically and without unnecessary duplication of time. Attached hereto as Exhibit "C" are summaries of the hours expended by the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

58.     In addition, Stroock incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of $9,261.40 for which Stroock respectfully requests reimbursement in full. Of the aggregate expenses in (i) the Long

26

Distance Telephone category in the sum of $866.85, two conference call meetings of the

Committee account for $695.25 of the expenses, (ii) the Travel Expenses – Transportation

category in the sum of $1,009.23 the airfare, train fare, taxi fare and parking-related charges in

respect of Stroock counsel (a) traveling to and from Washington DC for the Bubnovich and

Vanderslice Depositions in April 2005, (b) traveling to the Federal Mogul estimation hearing in

Camden, New Jersey in June 2005, and (c) traveling to the omnibus hearings before Judge

Fitzgerald account for those charges, (iii) the Meals Category in the sum of $1,064.89, the cost

for breakfast and lunch for the Committee's extended meeting on May 26, 2005 accounts for

$776.75 of the charge and (iv) Court Reporting Services Categorey in the sum of $932.75 relate

to the transcription costs for the Bubnovich and Vanderslice Depositions.  As is evident from the

time detail, during this Compensation Period, the aggregate $2,880.51 Westlaw charge results

from Stroock attorneys performing research sessions as required in respect of numerous legal

issues relating to the estimation of asbestos liabilites, the Hamilton Action and evaluating various

motions filed during the Compensation Period.

59.     The disbursements and expenses have been incurred in accordance with Stroock's

normal practice of charging clients for expenses clearly related to and required by particular

matters.  Such expenses were often incurred to enable Stroock to devote time beyond normal

office hours to matters, which imposed extraordinary time demands.  Stroock has endeavored to

minimize these expenses to the fullest extent possible.

60.     Stroock's billing rates do not include charges for photocopying, telephone and

telecopier toll charges, computerized research, travel expenses, "working meals", secretarial

overtime, postage and certain other office services, because the needs of each client for such

services differ.  Stroock believes that it is fairest to charge each client only for the services

27

actually used in performing services for it. Stroock has endeavored to minimize these expenses to the fullest extent possible.

61.     Stroock charges $.10 per page for in-house photocopying services, with respect to computerized research services Stroock charges the actual cost from the vendor, and $1.00 per page for out-going facsimile transmissions. Stroock does not charge for incoming facsimiles.

62.     Further, in accordance with the Court's June 22, 2001 Order Authorizing the Retention of Experts, this Application seeks payment for the fees and expenses of Navigant, the asbestos issues expert engaged by the Committee, in the aggregate amount of $54,204.34, for the services rendered on behalf of the Committee in the months of April and June of 2005. No agreement or understanding exists between Stroock and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

63.     Stroock has reviewed the requirements set forth in Delaware Local Rule 2016-2, entitled "Motion for Compensation and Reimbursement of Expenses," and believes that this application for interim compensation and reimbursement of expenses is fully in compliance with the rules set forth therein.

64.     No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period other than as set forth herein.

**WHEREFORE**, Stroock respectfully requests, pursuant to the Administrative Fee Order and the Court's June 22, 2001 Order Authorizing the Retention of Experts:

SSL-DOCS1 1598824v2

the allowance of compensation for professional services rendered to the Committee during the period from April 1, 2005 through and including June 30, 2005 in the amount of $340,821.25;

the reimbursement of Stroock's out-of-pocket expenses incurred in connection with the rendering of such services during the period from April 1, 2005 through and including June 30, 2005 in the amount of $9,261.40;

the payment of the fees and expenses of the asbestos issues expert employed by the Committee for the months of April and June of 2005 in the aggregate amount of $54,204.34;

*(the remainder of this page has been intentionally left blank)*

SSL-DOCS1 1598824v2

authorizing and directing the Debtors to pay to Stroock each of the amounts set

forth in (a) (b) and (c) of this WHEREFORE clause (to the extent not already paid

pursuant to the Administrative Fee Order); and

granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
August 19, 2005

STROOCK & STROOCK & LAVAN LLP

Lewis Kruger
Kenneth Pasquale
A Member of the Firm
180 Maiden Lane
New York, New York 10038-4982
(212) 806-5400

Co-Counsel for the Official Committee of
Unsecured Creditors of W. R. Grace & Co., et al.

30

# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **W.R. GRACE & CO., et al.** | ) | **Case No. 01-01139 (JKF)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

## <u>AFFIDAVIT</u>

STATE OF NEW YORK     )
                    ) ss:
COUNTY OF NEW YORK   )

      KENNETH PASQUALE, being duly sworn, deposes and says:

      1.      I am a member of the firm of Stroock & Stroock & Lavan LLP ("Stroock"), which firm maintains offices for the practice of law at 180 Maiden Lane, New York, New York 10038-4982. Stroock has acted as counsel to and has rendered professional services on behalf of the Official Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co., and sixty-one of its domestic subsidiaries and affiliates which are debtors and debtors-in-possession before this Court.

      2.      This affidavit is submitted pursuant to Bankruptcy Rule 2016(a) in support of Stroock's seventeenth quarterly application for an interim allowance of compensation and for the reimbursement of expenses for services rendered during the period from April 1, 2005 through and including June 30, 2005 in the aggregate amount of $350,082.65 and, pursuant to the Court's June 22, 2001 Order Authorizing the Retention of Experts, in the aggregate amount of $54,204.34 for the fees and costs of the asbestos issues expert employed by the Committee during the months of April and June of 2005.

3.      All of the professional services performed by Stroock for which compensation is requested were performed for and on behalf of the Committee from April 1, 2005 through and including June 30, 2005 and not on behalf of any other person.

4.      In accordance with Title 18 U.S.C. Section 155, neither I nor any member or associate of my firm has entered into any agreement, express or implied, with any other party-in-interest for the purpose of fixing the amount of any of the fees or other compensation to be allowed out of or paid from the Debtors' assets.

5.      In accordance with Section 504 of the Bankruptcy Code, no agreement or understanding exists between me, my firm, or any member or associate thereof, on the one hand, and any other person, on the other hand, for division of such compensation as my firm may receive for services rendered in connection with these cases, nor will any division of fees prohibited by Section 504 of the Bankruptcy Code be made by me or any partner or associate of my firm.

_____
KENNETH PASQUALE

Sworn to before me this
19th day of August, 2005

_____
Notary Public, State of New York

MICHAEL MAGZAMEN
Notary Public, State of New York
No. 01MA6055692
Qualified in Nassau County
Certificate Filed in New York County
Commission Expires March 5, 2021