# EXHIBIT 4

{D0015845:1 }

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEW JERSEY

FILED
JAMES J. WALDRON, CLERK
OCT 1 3 2004
U.S. BANKRUPTCY COURT
TRENTON, N.J.
BY _____ DEPUTY

| | |
|---|---|
| IN RE: | Chapter 11 |
| FEDERAL MOGUL GLOBAL INC., T&N LIMITED, et al., | Case No. 01-10578 (RTL) (Jointly Administered) |
| | Related Docket No. 4571 |
| Debtors. | October 7, 2004 |

TRANSCRIPT OF HEARING
BEFORE HONORABLE RAYMOND T. LYONS, JR.
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

| | |
|---|---|
| For Debtors: | PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB, P.C.<br>BY: JAMES E. O'NEILL, ESQ.<br>919 North Market Street, 16th Flr<br>Wilmington, DE |
| Counsel for the Plan Proponents | THE BAYARD FIRM<br>BY: CHARLENE D. DAVIS, ESQ.<br>222 Delaware Avenue, Suite 900<br>Wilmington, DE |
| Co-Counsel for Debtors | SIDLEY AUSTIN BROWN & WOOD, LLP<br>BY: KEN KANSA, ESQ.<br>JAMES CONLAN, ESQ.<br>KEVIN T. LANTRY, ESQ.<br>555 W. 5th Street<br>Los Angeles, CA |

Operator:                                                Betty Akin

TERRY GRIBBEN'S TRANSCRIPTION SERVICE
27 Beach Road, Unit 4
Monmouth Beach, NJ   07750
(732) 263-0044      Fax No. 732-263-0075

1  trust, are getting 75 cents on a dollar or even a hundred cents
2  on the dollar.
3      No one has any recourse at that time, to come back to
4  this court and say, Judge, they were completely wrong. They
5  completely over estimated this thing. And the evidence that
6  they presented at the confirmation hearing based on empirical
7  evidence and other cases and all the rest of it, was totally
8  wrong.
9      And had we had the information that the confirmation
10 hearing which is now coming into the trust a year or two later.
11 We would have been able to prove it at that time. It's too
12 late. We can't do it at that time.
13     So we submit that's why we're entitled, that's why
14 the rules require a bar date so that the information is there
15 and available for you, for us and for everyone else to test
16 their case at confirmation.
17     THE COURT: Okay. I'm going to deny the motion by
18 the property damage committee for the Court to set a bar date
19 at this late date. The case is just past its third
20 anniversary. The debtors filed a plan and a disclosure
21 statement, which has been approved by the Court for several
22 months now. What was it, back in June, I think the disclosure
23 statement was approved. Actually, a plan was floating around
24 for years before there was the final hearing on the disclosure
25 statement.

1  So the constituency of the property damage committee
2  has been involved in this case for a number of years. Property
3  damage committee itself is about 11 months old, I think. So
4  the timeliness, is, it's inappropriate at this point in time to
5  try to set a bar date for personal injury asbestos claims,
6  which the movants suggest would take three months to do.
7  Well, it may take three months to notify everybody
8  and get a fair notice for due process purposes, but then the
9  question comes up, what do you do with the information? And
10 assuming no one disputes that, there are estimated to be
11 hundreds of thousands of existing personal injury asbestos
12 claimants against the debtors in this case.
13 What would one do with that information? It would
14 then be subjected to objections to a substantial portion of
15 those claims and embark upon the process to try and allow or
16 disallow those claims, which would make this whole bankruptcy
17 process counter productive.
18 The reason these companies ended up in bankruptcy was
19 that the attempt to resolve personal injury claims outside of
20 bankruptcy had become oppressive and uneconomic.
21 At the beginning of the case, there were other
22 constituencies besides the asbestos property damage committees
23 that did assert that perhaps the universe of personal injury
24 claimants is less than estimated. One of them is the equity
25 committee and that's mentioned in the Third Circuit's decision

1  in the Federal Mogul case that the equity committee was taking
2  the position that it was value in equity.
3          And that could only be if the universe of personal
4  injury claims was a lot smaller then people had estimated or
5  that the value of the going concern businesses was a lot higher
6  than people had estimated.
7          But certainly that large number of liability factored
8  crucially in the insertion by the equity holders that there was
9  value in this company that should be preserved by them.  They
10 didn't seek the imposition of a bar date for personal injury
11 claims.
12         And then the commercial creditors who are represented
13 by the official committee of unsecured creditors and
14 substantial institutional lenders all had an interest in
15 demonstrating that the universe of personal injury asbestos
16 claims was small and that their unsecured claims should be paid
17 in full.
18         After all, if there was money for equity, there
19 should have been enough to pay creditors in full.  Those
20 parties didn't seek the imposition of a bar date and of course,
21 although, I guess the property damage creditors may not have
22 been active in the beginning of the case, and some or all of
23 them may not have even been listed as creditors on the debtors'
24 schedules, they did know about the bankruptcy filing and
25 eventually got organized and were able to convince the United

1  States trustee that they were entitled to a separate committee.

2  And yet, almost a year has gone by and they haven't sought a

3  bar date.

4           And as I said, in that intervening time, a plan that

5  been proposed.  The plan has been modified.  And a disclosure

6  statement was finally approved nearly, I guess, two years and

7  nine months into this case.  To come forward now two months

8  prior to confirmation and embark upon a bar date process, it's

9  really too late to do that.

10          And the question is really is it useful?  It reminds

11 me of the debate over the census where the professionals

12 involved in census say that the more accurate census would be

13 done by people who were using data and estimating then a one by

14 one household by household count of population.  And I guess it

15 was the US Supreme Court decided that the Constitution requires

16 a house by house count despite the fact that the scientific

17 community said we can do a better job.

18          I don't see why the global universe of personal

19 injury claims can't be estimated by professionals who do this

20 for a living just as the people who make up the census figures

21 can do that.  And this type of estimation, it seems to me is

22 relied upon in the business community and primarily in the

23 insurance community for all kinds of reasons.

24          So I don't know that taking a head count necessarily

25 provides better information or even assists the professionals

1  in doing their job of estimating it; that's why I asked Mr.
2  Kessler where is the PD committee's expert who says that he or
3  she can't do the job without this bar date information and I
4  haven't heard from anybody.
5         Now, it's true that the rules say the Court shall
6  establish a bar date and it's with great reluctance that I
7  would ever do anything that seems contrary to a mandatory
8  provision.
9         But because of the untimeliness here and because of
10 the, what I perceive as the lack of usefulness of the
11 information, and if the claims process were to proceed as it
12 does in most other cases, that it would destroy the whole
13 purpose for this bankruptcy case and for 524(g) that we would
14 have an unending claims objection process.
15        I'm going to deny the motion for the setting of a bar
16 date for the asbestos personal injury claims.  All right, now
17 we also had Mr. Kessler, a motion having to do with the J.H.
18 Cohn?
19        MR. KESSLER:  Yes, Your Honor.
20        THE COURT:  Are you going to address that?
21        MR. KESSLER:  Yes.  Your Honor, J.H. Cohn has been
22 appointed by the Court as the financial advisor to the property
23 damage committee.  And in the retention order, there's a
24 limitation on their fees to the amount of $30,000 per month.
25 However, the original retention order specifically provides