## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Case No. 01-1139 (JKF) |
| W.R. GRACE & CO., *et al.* | : | (Jointly Administered) |
| | : | |
| | : | **Hearing Date:  August 29, 2005 at 12:00 p.m.** |
| Debtors. | : | **Agenda Item No. 18** |
| | : | |
| | : | **Related Doc. Nos. 8394, 8395, 8396, 8827** |

## LIMITED OBJECTION OF LONDON MARKET INSURERS WITH RESPECT TO DEBTORS' PROPOSED CASE MANAGEMENT ORDER FOR THE ESTIMATION OF ASBESTOS PERSONAL INJURY CLAIMS

Certain Underwriters at Lloyd's, London and Certain London Market Companies (collectively, the "London Market Insurers") by and through their undersigned counsel, hereby submit this Limited Objection to Debtors' Proposed Case Management Order for the Estimation of Asbestos Personal Injury Liabilities (the "PI CMO").[1]

1.      London Market Insurers generally support the Debtors' strategy to focus the resources of the proposed Trust on paying meritorious Asbestos Claims, including Debtors' PI Questionnaires and a prompt and efficient estimation process.  In particular, London Market Insurers generally endorse the timely schedule that the Debtors propose in their draft PI CMO rather than the protracted delay proposed by the ACC.

2.      However, in light of the Court's instruction at the July 19, 2005 omnibus hearing that all potentially interested parties shall participate in the asbestos personal injury

---

[1]      As of this filing, the Debtors had not submitted to the Court a revised PI CMO; however, it is London Market Insurers' understanding that the Debtors intend to seek approval of their proposed PI CMO at the August 29, 2005 omnibus hearing.  London Market Insurers received a draft of the PI CMO on August 25, 2005, annexed hereto as Exhibit A, which forms the basis for their current objections.  To the extent that the Debtors seek approval of a different PI CMO, London Market Insurers reserve their rights to raise additional objections as appropriate.

claim estimation proceedings ("PI Estimation Proceedings") to protect their interests, as well as the Court's unwillingness to entertain insurance neutrality language in connection with PI Estimation Proceedings, the procedures set forth in the PI CMO must adequately provide for full participation by insurers. As currently proposed, the Debtors' PI CMO prejudices London Market Insurers in that it impairs their ability to participate to the same extent as the Debtors, Asbestos PI Committee, FCR, and/or other interested parties. Therefore, to the extent that this Court is willing to entertain any extension of the schedule in the Debtors' proposed PI CMO, the modifications that London Market Insurers seek in this pleading will facilitate their full participation in these proceedings, and will neither compromise the Debtors' goals in seeking PI Estimation nor unduly delay the schedule.

       3.     In addition, this pleading asserts London Market Insurers' continuing reservation of rights: to the extent that London Market Insurers participate in any aspect of the estimation proceedings contemplated by the PI CMO (the "PI Estimation Proceedings"), such participation is subject to an express reservation, without waiver, of: (i) any and all rights under London Market Insurers' various insurance contracts with the Debtors, including, but not limited to, their rights to control or associate in the defense and settlement of claims, in connection with any estimation, liquidation or litigation of Asbestos Claims[2]; (ii) London Market Insurers' rights to seek so-called "insurance neutrality" in connection with any motions and/or proceedings in the Debtors' bankruptcy case, including, without limitation, any estimation or plan confirmation proceedings; and (iii) London Market Insurers' right to have any disputed matters bearing on their insurance coverage obligations or state law contract issues resolved by means of a full trial on the merits, including a jury trial.

---

[2]     Unless otherwise noted, capitalized terms are used herein as they are defined in the Glossary of Defined Terms filed by the Debtors on November 13, 2004.

I.     **The Proposed PI CMO Does Not Afford London Market Insurers Full Participation in the PI Estimation Proceedings.**

4.     While London Market Insurers agree with most aspects of the proposed PI CMO, efficiency cannot be had at the cost of fairness to all parties entitled to participate in these proceedings. As currently proposed, the PI CMO fails in this regard.[3]

5.     First, the proposed schedule with respect to fact and expert discovery fails to account for the fact that, unlike certain other interested parties, London Market Insurers (as well as many of the Debtors' other insurers) to date have had no access to any discovery relating to specific asbestos claims – historical, current, or otherwise – that have been or may be asserted against the Debtors. For example, it is London Market Insurers' understanding that long before the Debtors even filed their proposed plan of reorganization, the Asbestos PI Committee was provided with access to a database and/or copies of files containing certain historical claims information, including information relating to the *Sealed Air* adversary proceeding.

6.     Similarly, London Market Insurers do not yet have access to the confidential Asbestos PI Claims information provided to the Debtors in connection with the

---

[3]     Based on discussions with Debtors' counsel, London Market Insurers understand that the Debtors may argue that, in not having previously raised specific objections with respect to the particular provisions contained in the CMO that London Market Insurers have waived any such objections. This argument fails for two main reasons. First, as the Court is aware, London Market Insurers have requested that the Court impose insurance neutrality in connection with PI Estimation Proceedings for the purpose of allowing them to "opt out" of the PI Estimation process, without the concern that those proceedings will later be used in a way that adversely impacts their rights. Accordingly, London Market Insurers have focused their objections on issues relating to insurance neutrality. In light of the Court's comments at the July 19, 2005 hearing, London Market Insurers (and other insurers of the Debtors) timely raised specific issues with Debtors' counsel after the draft PI CMO was circulated following the hearing. Second, notwithstanding requests for insurance neutrality, through the Certain Insurers' prior submissions on the PI Estimation Proceedings, London Market Insurers have reserved the right to full participation in those proceedings, including access to discovery provided to any other parties in interest. *See e.g.,* Certain Insurers June 30, 2005 Response to Motion to Approve PI CMO and Questionnaire (Dkt. No. 8827) at 6. Accordingly, each of London Market Insurers' objections set forth herein has been adequately preserved.

various statements under Bankruptcy Rule 2019 filed by Asbestos PI Claimants' counsel

pursuant to Court's October 22, 2004 Order.  *See* 10/22/04 Revised Order Requiring Filing of

Statements Pursuant to Fed. R. Bankr. P. 2019, Dkt. No. 6715 at 3 (providing that "each entity

filing a 2019 Statement shall serve a copy of the 2019 Statement that includes all exhibits on

CD's on the Debtor . . . .").

7.      At a minimum, the London Market Insurers should be permitted sufficient

time to review and analyze the available material in order to be on an equal footing with other

participants in these PI Estimation Proceedings.  Under the proposed PI CMO, however, London

Market Insurers will be expected by November 2005 – a mere three months from now – to parse

through that information (assuming it is made available by then) and decide which "categories"

of expert witnesses they intend to use at the PI Estimation hearing, and (by December 2005) to

decide which fact and expert witnesses they intend to use.  *See* Exhibit A, PI CMO at ¶¶ 5-7.

Accordingly, the proposed PI CMO puts London Market Insurers at a palpable disadvantage at

the outset of these proceedings.[4]

8.      Second, the deadlines for submitting initial expert reports as to the value

of the Debtors' Asbestos PI Claims are unreasonable under the circumstances.  Were it not

enough that the proposed PI CMO requires that such reports be produced and served on April 13,

2006 – a mere month after the Debtors are required to produce the "navigable database"

containing the information extracted from the Questionnaires, *see* Exhibit A, PI CMO ¶¶ 3.D, 8 –

the London Market Insurers will have the considerable additional burden of bringing their

experts up to speed on discovery materials that have been in the possession and/or control of

---

[4]      Although London Market Insurers have engaged in discussions with the Debtors and
others regarding insurer access to the relevant discovery material, at this time London Market
Insurers do not know exactly what information was previously supplied to other parties in
interest, and when the Debtors will provide that information to London Market Insurers.

other parties in interest for several months or even years. Particularly when coupled with all of

the additional discovery that London Market Insurers and their experts and advisors will need to

review and analyze in the compressed time frame, requiring the London Market Insurers to

adhere to the April 13, 2006 deadline would be unfair and impracticable. London Market

Insurers therefore submit that the PI CMO should be amended to provide for an additional

month's time for producing such expert reports, with a corresponding extension for

supplementation.

9.      Third, the proposed PI CMO omits to provide for any submission of

rebuttal expert testimony. Rather, the proposed PI CMO merely provides for the opportunity for

a party to "supplement" a previously-submitted expert report, which cannot appropriately

substitute for rebuttal testimony in the PI Estimation Proceedings.

10.     Pursuant to Fed. R. Civ. P. 26, made applicable to these proceedings by

Fed. R. Bankr. P. 7026, rebuttal expert testimony is permitted "to contradict or rebut" other

expert testimony. *See* Fed. R. Civ. P. 26(a)(2)(C). Permitting rebuttal expert testimony is

critical to avoiding unnecessary duplication of effort in the use of experts in these proceedings.[5]

For example, were the option of presenting rebuttal expert testimony available, there are

conceivably a number of interested parties (and potentially certain of the Debtors' insurers,

including London Market Insurers) that might simply dispense with the need to submit a full-

blown expert report on all issues, on the theory that they would be entitled to submit, if

necessary, expert testimony tailored to rebut specific points addressed in other parties' expert

reports. In addition to conserving valuable resources and time, incorporating a provision for

---

[5]      Rebuttal testimony is also necessary because, to the extent that opinions expressed in one
or more interested parties' initial expert reports are outside the knowledge or expertise of other
interested parties' experts, the latter should not be precluded from retaining a different expert
specifically to rebut or contradict such testimony.

rebuttal reports would also likely address certain of the London Market Insurers' other concerns – namely regarding the sufficiency (or lack thereof) of time to review discovery materials for purposes of selecting fact and expert witnesses, as such experts would be identified later in the process. Accordingly, the PI CMO should be modified to permit rebuttal expert reports and testimony.

11.     These minor modifications to the proposed PI CMO – which would likely result in only a few weeks' change to the Debtors' proposed schedule – will result in fairer administration of the proceedings for insurers who, through no fault of their own, have not been afforded the information and documents that other interested parties have had the benefit of for a period of years.

## II.     London Market Insurers Reserve Their Rights Regarding Insurance Neutrality and Jurisdiction in Connection with Estimation and All Aspects of Debtors' Chapter 11 Proceedings.

12.     As noted in prior filings, a principal concern of London Market Insurers is to avoid any purported adjudication of their coverage obligations in these proceedings. Specifically, London Market Insurers seek to protect against a "*UNR*-type" situation, *i.e.*, any assertion that their obligation to indemnify any insured/debtor is triggered by the outcome of an estimation proceeding, by the confirmation of a plan of reorganization involving a Section 524(g) trust and/or by the funding of such a trust – instead of upon the liquidation and payment of actual asbestos personal injury claims by such a trust in a manner that comports with the terms and conditions of the insurance policies, any settlements, and London Market Insurers' contractual rights.

13.     This Court has previously acknowledged that the Debtors' bankruptcy cases, and in particular the proposed PI Estimation proceedings, are not proper fora for the

litigation or adjudication of any insurance coverage disputes.[6] (*See* 1/21/05 Hearing Tr., Dkt.

No. 7680 at 165:8-9) ("There aren't going to be any coverage issues in the estimation hearing.")

London Market Insurers therefore believe it is appropriate to include "insurance neutrality"

language in any estimation order making clear that any estimation of Asbestos PI Claims will

have no effect on any of the rights and obligations of the London Market Insurers or any Debtor

under any policy of insurance or settlement agreement and/or upon the resolution of any

coverage disputes between the Debtors and their insurers.

          14.     Specific insurance neutrality language is warranted not because this Court

has stated an intention to determine insurance coverage issues, but because the Debtors continue

willfully to ignore the Court's intention not to do so. Certain of the Debtors' insurers, including

London Market Insurers, have requested at various hearings in these proceedings that the Court

consider the inclusion of insurance neutrality language in connection with any estimation of

claims. The Court has denied the requests on the grounds that the PI CMO was intended to be

merely a "procedural," not substantive, order. (*See* 7/19/05 Hearing Tr., Dkt. No. 9105 at 203:2-

6) ("Look, I'm in a procedural order, which is what a case management order is. I'm not making

substantive findings. All I'm doing is setting up a process. I'm not going to give anybody

releases or indemnities or assignments or anything else in a case management order. It's just a

process.") The Court further instructed that to the extent the insurers (or any other potentially

interested parties) believed their interests might be at stake with respect to the PI Estimation

Proceedings, they should participate. (*See id.* at 202-203.)

---

[6]     While London Market Insurers maintain that this Court lacks jurisdiction over any insurance coverage disputes, or alternatively would be obligated to abstain from the exercise of any such jurisdiction, even if this Court could properly exercise jurisdiction over any insurance coverage dispute, any such dispute could only properly be litigated in the context of a duly-commenced adversary action. *See Conxus Fin. Corp. v. Motorola, Inc., (In re Conxus Comms., Inc.)*, 262 B.R. 893, 899 (D. Del. 2001).

15.    The Court has also stated that the PI Estimation proceedings would be used solely for purposes of determining the amount of funding necessary under the Plan, and that the PI Estimation process is not intended to, and will not, result in the allowance of any Asbestos PI Claims or distributions to holders of alleged Asbestos PI Claims. (*See e.g.*, 7/19/05 Hearing Tr., Dkt. No. 9105 at 166:15-20; 168:9-14; 203:7-12).[7]

16.    The Debtors have also represented in numerous filings and appearances before this Court that they do not seek an estimation of PI Claims for purposes of allowing or disallowing claims. (*See e.g.,* 7/19/05 Hearing Tr., Dkt. No. 9105 at 116:9-13 ("I'll state it here in black and red.  We are not seeking . . . to disallow claims when it comes to the estimation that applies to personal injury claims."); Debtors' Motion for Entry of an Order Seeking the Estimation of Asbestos Claims and Certain Related Relief, Dkt. No. 6899 at 10 ("Pursuant to this Estimation Motion, the Debtors ask this Court to estimate the aggregate amount of certain classes of personal injury asbestos-related claims.  These estimates are to be used in conjunction with determining confirmation of the Debtors' plan, not for distribution purposes."); Memorandum of Points and Authorities in Support of W.R. Grace & Co.'s Motion to Approve PI CMO and Questionnaire, Dkt. No. 8395, at 1 (representing that Debtors "intend to use [the Court's]estimates in support of feasibility and other findings necessary to achieve confirmation of their Plan").[8]

---

[7]    The Court's rulings in this regard are in accord with the proscription under 28 U.S.C. §§ 157(b)(2)(B) and 157(b)(5) prohibiting Bankruptcy Courts from estimating personal injury claims for distribution purposes.

[8]    Moreover, in their 2004 Form10-K report filed with the SEC, Debtors have publicly conceded that they are not entitled to and do not envision a "*UNR*-type" result in this case.  W. R. Grace represented that any recovery from its insurers "would occur only as claims are paid by the asbestos trust, absent an alternative payment arrangement with Grace's insurers."  (*See* Excerpt of W.R. Grace's 2004 10-K, Attached as Ex. B to Certain Insurers' Response to May 10, 2005 CMO Motion (Dkt. No. 8827)).  In an exhibit to their Disclosure Statement, Debtors made

17.    Yet the Debtors appear determined to ignore the Court's instruction and their own representations in refusing to agree to insurance neutrality language. They have even labeled their Proposed Case Management Order as one for the estimation of "Asbestos Personal Injury *Liabilities*" instead of claims. The Debtors wish unfairly to exploit the possibility that once an estimation is performed in these proceedings, the amount or fact of estimation may be argued to have an unintended effect, absent language in the Court's estimation order that protects insurers. Based on the Debtors' comments at the January 21, 2005 hearing, (*see* 1/21/05 Hearing Tr., Dkt. No. 7680 at 165-66), as well as the Debtors' persistent refusal to entertain neutrality language in the context of these proceedings, it is apparent that the Debtors intend to reserve their rights to change course and argue for a so-called "*UNR*-result."

18.    Accordingly, regardless of whether London Market Insurers participate in the PI Estimation Proceedings, they do not waive their position that insurance neutrality should be enforced by, at the least, using the same language approved by the Third Circuit in *Combustion Engineering.* To the contrary, London Market Insurers expressly reserve the right to revisit the issue as appropriate to protect their bargained-rights under their insurance contracts with the Debtors, including, but not limited to, their rights to control or associate in the defense and settlement of claims, in connection with any estimation, liquidation or litigation of Asbestos Claims. London Market Insurers dispute any contention that this Court has jurisdiction to determine state law insurance contract issues. Likewise, London Market Insurers' participation, if any, in the PI Estimation Proceedings in no way affects their right to have any determinations

---

the same representation to their creditors and stakeholders in this case: "Insurance reimbursements are collectible as the liabilities are satisfied by the asbestos trust." (*See* W.R. Grace & Co. and Subsidiaries Historical, Pro Forma and Prospective Financial Information (Dkt. No. 6897, Ex. Tab 4) at 10.

with respect to their insurance coverage obligations – all matters of state insurance law –
resolved in a full-blown trial on the merits, not via the Debtors' Chapter 11 proceedings.

## **CONCLUSION**

For the reasons stated herein, London Market Insurers respectfully request that the
proposed PI CMO be modified to allow for their full participation in the PI Estimation
Proceedings; such request is made under express reservation, of all of London Market Insurers'
rights with respect to insurance neutrality or under its insurance contracts with the Debtors.

Respectfully submitted,

Dated:   August 26, 2005
         Wilmington, Delaware

ZUCKERMAN SPAEDER LLP

By:     *Elizabeth D. Power*

Thomas G. Macauley  (DE Bar. No. 3411)
Elizabeth D. Power  (DE Bar No. 4135)
919 Market Street, Suite 990
P.O. Box 1028
Wilmington, Delaware  19899-1028
Telephone:  (302) 427-0400
Facsimile:  (302) 427-8242

James Sottile
1201 Connecticut Avenue, NW
Washington, DC  20036-2638
Telephone:  (202) 778-1800
Facsimile:  (202) 822-8106

Mary K. Warren
Brenda D. DiLuigi
LINKLATERS
1345 Avenue of the Americas
New York, New York  10105
Telephone:  (212) 424-9000
Facsimile:  (212) 424-9100

Attorneys for Certain Underwriters at
Lloyd's, London and Certain London
Market Companies