## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **W. R. GRACE & CO., *et al.*,** | ) | **Case No. 01-1139 (JKF)** |
| | ) | **(Jointly Administered)** |
| **Debtors.** | ) | |

## DEBTORS' REPORT TO COURT
## PURSUANT TO JULY 19, 2005 RULINGS REGARDING
## PERSONAL INJURY CLAIMS AND ESTIMATION PROCEEDINGS

KIRKLAND & ELLIS LLP

David M. Bernick
Jonathan Friedland
Salvatore Bianca
200 East Randolph Drive
Chicago, IL 60601
Telephone:    (312) 861-2000
Facsimile:    (312) 861-2200

KIRKLAND & ELLIS LLP

Barbara Harding
Brian T. Stansbury
Amanda C. Basta (admission *pro hac vice* pending)
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:    (202) 879-5000
Facsimile:    (202) 879-5200

Dated: August 26, 2005

PACHULSKI, STANG, ZIEHL, YOUNG,
JONES & WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715 )
919 North Market Street, 16th Flr.
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400

Co-Counsel for the Debtors and
Debtors in Possession

Pursuant to the Court's rulings on July 19, 2005, the Debtors report to the Court on the following matters:

(1)    the selection of a discovery mediator;

(2)    the claimant Questionnaire;

(3)    the PI Claims Estimation CMO; and

(4)    the Debtors' intent to seek discovery of claimant attorneys.

## I.    THE SELECTION OF A MEDIATOR

The Debtors and the Asbestos Personal Injury Committee jointly nominate Judge Roger M. Whelan to serve as mediator to facilitate the settlement of any discovery disputes that may arise in the asbestos personal injury estimation and objection to claims process.  Pursuant to the Court's Order on July 20, 2005, a Certification of Counsel reflecting this agreement has been filed, and a copy is attached as Exhibit A.

## II.    THE PI CLAIMANT QUESTIONNAIRE

On July 19, 2005, after hearing argument from all interested parties and a line by line analysis of the Questionnaire, the Court ruled from the bench as to the content of the Questionnaire.  Pursuant to the Court's instructions, the Debtors revised the Questionnaire to reflect the Court's rulings and on August 10, 2005, the Debtors presented the revised Questionnaire to the PI Committee and other interested parties.  On August 22, 2005, the Debtors, the PI Committee, and all other interested parties participated in a telephonic conference to discuss the revised Questionnaire during which various parties requested additional changes to the Questionnaire.  The Debtors subsequently revised the Questionnaire and CMO to reflect several of the modifications requested by the PI Committee, the Future Claimants Committee ("FCR") and the insurers.  The Debtors conferred with the PI Committee,

the FCR and the insurers for a second time on Thursday August, 24, 2005. At that time, the Debtors confirmed that the PI Committee and FCR, the Debtors and other interested parties have reached agreement that the Questionnaire, as revised by the Debtors, accurately reflects the July 19, 2005 rulings made by the Court, with the exception of four provisions requested by the PI Committee, which are discussed below. A copy of the revised Questionnaire has been attached as Exhibit B.

While the Debtors have agreed to accept many of the PI Committee's proposed changes to the Questionnaire, four disputes concerning the content of the Questionnaire remain. The Debtors have not agreed with respect to these four matters because the PI Committee's proposed changes disregard the Court's clear instructions and rulings that were given at the July 19, 2005 hearing and, critically, the proposed changes threaten to undermine the effectiveness of the Questionnaire as a discovery tool. The Debtors have listed each of the disputed proposed changes to the Questionnaire in the table below. The table also lists the Court's ruling or rulings that demonstrate that the requested modification was neither ordered by the Court nor comports with the intent of the Court's rulings. Indeed, the proposed modifications can only be construed as an illegitimate attempt by the PI Committee to persuade the Court to disregard or reconsider its prior rulings.

2

## Proposed Changes to Questionnaire

| PI Committee's Proposal | Debtor's Response |
|---|---|
| **1. Additional Questionnaire "Instructions"**<br><br>The PI Committee has proposed adding the following language to the instructions to the Questionnaire (p. i of Instructions to Questionnaire): | |
| a. *While authorized by the Court, this Questionnaire is solely a means for W.R. Grace to seek information. The Court's authority extends only to permitting Grace to seek it in this manner. The Court will not directly use the completed Questionnaire to estimate liability. Rather, this information will be analyzed by the parties and experts to the Grace bankruptcy proceedings and these analyses will be presented to the Court as part of an adversary process as each party deems fit.* | a. Rather than providing language necessary for claimants to complete the Questionnaire, the PI Committee's proposed additions are nothing more than an attempt to include the PI Committee's arguments in the Questionnaire. The Court's previous rulings that the Debtors could not include position statements in the Questionnaire similarly precludes position statements by the PI Committee. Tr. of Hr'g. at p. 215 (Jul. 19, 2005). Indeed, the Court's rulings on the issue were the result of the PI Committee's objections to such statements being included by the Debtors in the Questionnaire. Tr. of Hr'g at 210-11, 212-13 (Jul. 19, 2005). |
| b. *The form is unrelated to individual claims allowance and any sanction or failure to complete the form will not include disallowance or result in any other prejudice to your claim.* | b. The proposed addition by the PI Committee is overly vague and inconsistent with the Court's rulings that the questionnaire is part of the discovery process. Tr. of Hr'g at p. 175 (Jul. 19, 2005) (Court: "My bottom line position is I think a questionnaire, to the extent that the debtor or other parties want to do discovery is fine. I've said that before. You could do it by interrogatories. You could do it by questionnaires. There is really not much difference."). Although the Court clearly has the power to sanction parties that fail to comply with discovery requests like this Questionnaire, the PI Committee's proposed language impermissibly would strip such authority from the Court.<br><br>Additionally, the language in the revised Questionnaire closely tracks what was proposed by the Future Claimants Representative, who also sought, like the Debtors and the Court, to ensure that there would be an incentive to respond to the Questionnaire, and some consequence for failure to complete the Questionnaire: |

3

| PI Committee's Proposal | Debtor's Response |
|---|---|
| | For example, if a party fails or refuses to answer interrogatories, the Court has the authority to, among other things, prohibit that party from introducing matters in evidence, strike out pleadings, or render judgment by default against the disobedient party, i.e., to disallow a subsequent claim filed by a claimant who fails or refuses to timely submit a Questionnaire. *See* Fed. R. Civ. P. 37(b)(2)(B) and (C), and 37(d). Rule 37 also gives the Court other means of requiring a claimant to timely file a Questionnaire. *See, e.g.*, Fed. R. Civ. P. 37(a)(4) (authority to impose sanctions)<br><br>Brief in Support of the Future Claimants Representative's Form of Questionnaire and CMO; *see also* Tr. at p. 184 ("The other side of it is a stick, and there … would be the same kind of sanctions that would occur in a discovery dispute."). The proposed language from the PI Committee provides no incentive to a claimant to timely complete and return the Questionnaire, and thus directly contradicts the Court's rulings and intent on this issue. Tr. of Hr'g at pp. 175, 208. |
| c. *Although you are required by the Court to complete this Questionnaire to the best of your ability, you are not required to provide any information that you do not know or remember or that is not in your or your agent's custody and control. You are not required to gather information not already in your or your agent's custody or control, nor should you make guesses or estimates in answering any question. You are not required to gather information from outside sources in order to complete the Questionnaire.* | c.   The proposed instruction disregards the Court's instructions that claimants are required to obtain all relevant medical documents, including those in the custody of their doctors and other agents. Tr. of Hr'g, at p. 274 (Jul. 19, 2005) ("It could be something like this.  Documents that you, your counsel, or your doctors have, period.");*id.* at pp. 230-31 ("Well, it seems to me that if it's the doctor's office, the doctor is an agent of the patient in this instance just like the attorney is.  That's clearly within the patient's custody or control, if not custody.").<br><br>The PI Committee's proposed addition also ignores the Court's instruction that the claimants' obligations to complete the Questionnaire are defined by the Federal Rules of Civil Procedure and that the duty to provide information is a continuing duty. Tr. of Hr'g at 230, 233 (Jul. 19, 2005).  The PI Committee's proposed addition is an impermissible attempt to raise new substantive issues and to reargue issues on which the Court already has ruled against it. |

4

| PI Committee's Proposal | Debtor's Response |
|---|---|
| **2.  Pulmonary Function Test Tracings**<br><br>The Instructions for Part II of the Questionnaire include the following language:<br><br>*Pulmonary Function Tests: Please attach all pulmonary function test results, including the actual raw data and all spirometric tracings, on which the results are base*<br><br>Questionnaire, p. ii.  The PI Committee objects this language in the instructions of the questionnaire, arguing that the Court was ambiguous as to whether it required the production of the actual tracings and that most claimants will not have copies of their PFT tracings. | The Court's rulings on this issue were not ambiguous.  The Court clearly stated that claimants must produce their PFT tracings.  Tr. of Hr'g at p. 221 (Jul. 19, 2005) ("I understand that the tracings are necessary.  That's probably the thing you want the most.");. *id.* at p. 222 (Jul. 19, 2005) ("[I]f a claimant is filing a claim against Grace … based on a pulmonary function test, they're going to have to produce it at some point.  They can produce it now."); *id.* (Court: "If [the claimants] have had a pulmonary function test, and their answer to the question is yes, I did, then I want a copy of the document attached."). |
| **3.  Adding additional text boxes for each condition alleged in Part II of the Questionnaire.**<br><br>The PI Committee has proposed adding the following text boxes to the criteria for diagnosing each condition alleged in Part II of the Questionnaire:<br><br>*diagnosis and documentation supporting exposure to asbestos or asbestos containing products as having a causal role in the development of the disease or condition.*<br><br>*other (please specify)* _____ | The Court did not rule that such language was required for this section nor was such language even proposed at the July 19, 2005 hearing.  The Court ruled that Grace should transform its stated disease "definitions" into questions, and that is precisely what the Debtors have done.  Tr. of Hr'g at p. 215 (Jul. 19, 2005).<br><br>Furthermore, the PI Committee's proposed additions are an improper attempt to obtain its own discovery through the Debtors' Questionnaire, which this Court has specifically rejected:<br><br>This is the debtor's questionnaire, Mr. Lockwood.  It's not being used to for discovery by the other side.  You can do your own questionnaire.  If you want to come up with one, or you want to go through yours, the one you've submitted in lieu of the debtors, if that's what you want by way of evidence, we'll go through it.  If there's a different one you want, propose a different one.  This is the debtor's discovery. Overruled.<br><br>Tr. of Hr'g at p. 240-41 (Jul. 19, 2005).<br><br>Additionally, this request is improper given that the PI Committee never argued at the hearing that claimants do not have to establish *Grace* products as having a causal role. |

| PI Committee's Proposal | Debtor's Response |
|---|---|
| **4. Sites of Exposure to Non-Grace Asbestos Products.**<br><br>The PI Committee objects to Part V of the Questionnaire insofar as it seeks information about more than one of the sites where Claimant was exposed to non-Grace asbestos products. The PI Committee contends that this inquiry should be limited to exposure from <u>one</u> site:<br><br>*Page 9 should be modified so that it seeks information about "Primary site of exposure to other defendant product."* | The PI Committee is, again, impermissibly seeking to reargue and have this Court reconsider issues previously ruled upon. The Court specifically ruled that, with regards to Part V of the Questionnaire, the Debtors are entitled to one page per defendant. Tr. of Hr'g at p. 261 (Jul. 19, 2005) (Court: "That's fine … have one separate page for every non-Grace entity that you have either sued or filed a claim against."). Additionally, the Court indicated that Debtors have latitude to construct that page as the Debtors see fit.: Tr. of Hr'g at p. 264 (Jul. 19, 2005) ("The Court: One page on exposure that tells the person to list the place where they were exposed, the dates where they were exposed, the product, *whatever you want on one page.*") (emphasis added). |

The Debtors have made a good faith effort to accurately reflect the Court's July 19, 2005 rulings concerning the Questionnaire's content. Accordingly, the Debtors' request that the Court approve the content of the Questionnaire. *See* Proposed Order (attached as Exhibit C).

## III.    THE PI CMO

With respect to the PI CMO, the parties are in agreement with the exception of two provisions.[1] The first disagreement relates to paragraph 12 of the PI CMO, which currently provides that:

> 12.    ORDERED that depositions of expert and non-expert witnesses may commence at any time but must be concluded by July 28, 2006.

The PI Committee has requested inclusion of a provision restricting expert depositions to one deposition per expert, to be conducted only after the date for filing supplemental expert reports. The Debtors' disagree with this proposed provision for several reasons. First, the

---

[1]    At this time, the Debtors believe that a single insurer may have an objection to the CMO with respect to certain timing issues.

Committee's proposed revision was not part of the agreed PI CMO presented to the Court at the July 19, 2005 hearing. This is a brand new request that comes after the parties agreed to the CMO at the July 8, 2005 meeting, and after all the parties agreed to the PI CMO at the July 19, 2005 hearing. *See* Tr. of Hr'g at 200-204. Further, the proposed revision dangerously pushes expert discovery back to the very end of the schedule, making it likely that the parties will be forced to seek an extension of time under the current schedule to complete the estimation expert depositions. In an attempt to accommodate the PI Committee's request, however, the Debtors have offered to agree to the proposed modification provided that (1) the PI Committee agrees that its experts and the experts of the FCR will be deposed first, (2) a party may receive additional time to depose an expert upon good cause shown, and (3) the parties be provided an additional 15-30 days to complete the depositions of the estimation experts.

The second area of disagreement relates to paragraph 14 of the PI CMO which provides that:

> 14.    ORDERED that any pre-trial motions, including *motions in limine*, *Daubert*, and summary judgment motions, shall be filed not later than August 1, 2006. Responses to such motions shall be filed not later than 21 days after filing of any such motion. Replies shall be filed not later than 7 days after the filing of the response to the motion. A hearing on such motions will be at the Court's direction; and it is further

The PI Committee does not believe that reply briefs should be allowed to any pre-trial motions including *motions in limine*, *Daubert* motions, and summary judgment motions. It has been this Court's practice throughout this entire proceeding to allow parties to respond to a substantive pleading with a five-page reply brief. The PI Committee's recommendation to prevent any party from submitting a reply brief, with respect to the most important substantive motions that will be filed in these proceedings, abandons this Court's established practices. The issues that will be presented in the motions in limine, *Daubert* motions, and motions for

7

summary judgment will greatly impact the Court's ultimate estimation of asbestos PI liability. Prohibiting reply briefs will prevent the parties from fully developing these highly relevant issues. Most importantly, the PI Committee did not object to this provision at the July 19, 2005 hearing.

Accordingly, the Debtors request that the Court enter the PI Claims Estimation CMO, attached as Exhibit D. Alternatively, the Debtors request that the Court enter the PI Claims Estimation CMO, with any modifications ordered by the Court at the August 29, 2005 hearing.

## IV.    DISCOVERY OF THE CLAIMANTS' ATTORNEYS

During the last hearing, as part of the Asbestos PI Claimants' Questionnaire, the Debtors sought information relating to the direct and indirect financial relationships among the claimants' attorneys, doctors and screening companies. Information regarding such relationships is relevant to the reliability of the medical data underlying the claimants' claims and to determining whether, as the evidence suggests, many of the asbestos claims against Grace suffer from the same problems, including unreliability and possibly fraud, that plagued the Texas Silica MDL claims. Moreover, this information is critical if the Court is to base its estimation on the most accurate available data. Such data is important not only to the estimation of present claims but also to the estimation of future claims, as claims based on unreliable and potentially fraudulent medical data should be entitled to little or no value. The Court previously has recognized the interest the Debtors have in obtaining this type of information. *See* Tr. of Hr'g. at 191 (Jul. 19, 2005). And, the Court previously has recognized the potential relevance and importance of this information to the ultimate estimation of the personal injury claims. Tr. of Hr'g. at 80 (Jun. 27, 2005) ("The debtor has a right to know what the current claims are, and that will be a much better basis for estimation of current claims and possibly future claims than anything else.").

8

At the July 19, 2005 hearing, however, the Court ruled that the claimant questionnaire was not the appropriate vehicle for obtaining this important information. Tr. of Hr'g. at 289 (Jul. 15, 2005). Instead, the Court suggested that the claimants' attorneys are uniquely in possession of this relevant information and therefore are the best and most appropriate target for the discovery sought by the Debtors. Tr. of Hr'g at 191, 251 (Jul. 19, 2005). Thus, the Debtors have given considerable thought to and are prepared to discuss with the Court how best to obtain this information through the most efficient and least intrusive means.

## V.    CONCLUSION

- The Debtors request that the Court approve the parties' nomination of Judge Roger M. Whelan to serve as mediator to facilitate the settlement of any discovery disputes that may arise in the asbestos personal injury estimation and objection to claims process.

- The Debtors request that the Court approve the revised Questionnaire. The revised Questionnaire accurately reflects the Court's rulings from the bench at the July 19, 2005 hearing. The PI Committee's limited objections are merely an improper attempt to re-argue this Court's previous rulings.

- The Debtors request that the Court approve the revised PI Claims Estimation CMO. Like the revised Questionnaire, the revised PI Estimation CMO also reflects the Court's rulings and understandings reached by the parties at the July 19, 2005 hearing.

- The Debtors seek to raise with the Court the issue of how best to obtain relevant discovery of information from the claimants' attorneys.

Dated:    August 26, 2005

Respectfully submitted,

KIRKLAND & ELLIS LLP

David M. Bernick
Jonathan Friedland
Salvatore Bianca
200 East Randolph Drive
Chicago, IL 60601
Telephone:    (312) 861-2000
Facsimile:    (312) 861-2200

KIRKLAND & ELLIS LLP

Barbara Harding
Brian T. Stansbury
Amanda C. Basta (admission *pro hac vice* pending)
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:     (202) 879-5000
Facsimile:     (202) 879-5200

-and-

PACHULSKI, STANG, ZIEHL, YOUNG,
JONES & WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:     (302) 652-4100
Facsimile:     (302) 652-4400

Co-Counsel to the Debtors and Debtors in Possession