```
24              MS. BAER:  Your Honor, I can't give you an exact
25   number, but it's real easy to tell you there's the 2,893
 1   Speights claims, and then there's 320 others that are
 2   non-Speights claims.
 3              So, the maximum we would be sending would,
 4   essentially be 320, plus whatever Speights claims attach
 5   appropriate -- you know, some documentation, which would
 6   exclude from what we have to send a new notice -- or include
 7   with what we have to send a new notice for.
 8              THE COURT:  All right.  So -- and in addition to
 9   that, you've been dealing with some creditors already?
 0              MS. BAER:  Yes, we have, Your Honor.  In fact, one
 1   counsel represents about 150 claimants and he's contacted us,
 2   and wants to meet with us, and we've in fact set up a meeting
 3   with the debtor's claim analysis people to do that.
 4              THE COURT:  All right.  So, it can't be more than 3
 5   or 400 notices, that you'll be resending?
 6              MS. BAER:  That's correct, and it's probably far less
 7   than that.
```

Page 21-22

whole and require Speights to provide further proof that the filing of *each* of these 1690 claims has been authorized in these Chapter 11 cases. Some examples are described below.

98.  *California Universities.* 1281 of the 1690 claims listed in Exhibit O cite as authority for filing one of two exemplar contracts: K-4, signed by The Regents of the University of California in December 2002, and K-10, signed for the California State University on March 31, 2003. These contracts do not give Speights authority to file any claims, no matter how baseless, against the Debtors at will. The contractual language expressly limits authority to, for example, pursue claims against manufacturers "against whom an action is presently viable. K-10. Yet by all indications, Speights has done nothing more than execute two signed contracts and then dump in claims for more than 1200 buildings with apparently no investigation whatsoever. As examples:

(a)  Nearly 1200 of these 1281 claims, when filed, contained *no supporting documentation* whatsoever.[18] *Cf. supra* Section I.B and Exhibits B, D and F.

(b)  Like the Speights claims attached as Exhibits B, D and F, the claim forms filed in 2003 for nearly 1200 of these buildings provided no information other than generic non-

---

[18] In summer 2005, in response to the Debtors' Notice of Intent to Object, Speights purported to "supplement" some of these facially barren claims. The supplement is a mess. As examples: The initial 1600+ page supplement is only a paper index; no documents were supplied and no searchable electronic index was provided. Speights has since supplemented his initial supplement with at least two more enormous paper indices even longer than the first, indicating these various supplements may or may not overlap, with no explanation as to how they fit together. The Debtors were given an "invitation" to come to Hampton, South Carolina to inspect and copy the underlying documents, but Speights has ignored the Debtors' request to supply dates for this review. A random analysis of the paper indices thus far suggests that more than 60% of the entries on this "supplement" may be of documents that Speights *already provided* as attachments to the small subset of claims for which he submitted putative supporting documentation. Other items listed on the index do little more than increase volume and create confusion, such as breaking a 15 chapter document into 15 separate entries on the index by logging each chapter individually. Other documents identified correspond to claims that Speights supposedly withdrew in June and July 2005. The only clear thing that emerges from the mark of Speights' supplementation is that if the Debtors are forced to go to South Carolina to review the actual back up documents, it should be at Speights' cost, not the estates'.

---

30

dates for this review. A random analysis of the paper indices thus far suggests that more than *60%* of the entries on this "supplement" may be of documents that Speight *already provided* as attachments to the small subset of claims for which he submitted putative supporting documentation. Other items listed on the index do little more

## SUMMARY OF SPEIGHTS - FINKE EMAILS

**February 18, 2005 - E-mail from Finke to Speights**
You may recall our discussion on Wednesday when I advised you that I am aware of at least two situations where Speights & Runyan filed asbestos property damage claims for properties that are also the subject of claims filed by the owners of the properties . . . . Grace requests that Speights & Runyan withdraw those claims. Thank you for your consideration of this request.

**February 23, 2005 - E-mail from Speights to Finke**
We will withdraw those claims. They were already on our list to withdraw as well.

**February 24, 2005 - E-mail from Finke to Speights**
During our February 16 meeting, I indicated that Grace had identified a number of claims that were filed by your firm on behalf of claimants it did not appear to represent. Attached find a list of 168 claims filed in Grace's Ch. 11 Proceedings by Speights & Runyan on behalf of claimants that are not included in your firm's 2019 Statement. . . .
Grace therefore requests that, as part of the proposed Stipulation we discussed on February 16, Speights & Runyan agreed to withdraw claims on the attached list to the extent they were not authorized by the claimants named therein. . . .

**February 24, 2005 - E-mail from Speights to Finke**
I will be glad to discuss this matter with you, as I was prepared to do in Florida (I had all my lists with me). However, at Mr. Beber's suggestion, after we discussed several issues, including this one, we decided to first deal with the Stipulation regarding non-PID claims as a stand alone item.

If you now want to deal with this issue, I think it needs to be face to face. I am going to be in Miami in early March and would be willing to do it then. Alternatively, we can meet in South Carolina.

In the meantime, there is no basis to delay entering into the Stipulation we agree to.

**March 4, 2005 - E-mail from Finke to Speights cc Beber**
Attached for your review is a proposed Stipulation that I believe sets forth the terms we discussed at our meeting on February 16. After you have had an opportunity to review the Stipulation, please advise whether it is acceptable to you in its present form or whether you wish to make any revisions.

**March 7, 2005 - E-mail from Finke to Speights cc Beber, Stegel**
As we discussed generally last Monday, I am forwarding for your consideration the attached list of 374 claims filed by your firm. The Debtors in Grace's Ch. 11 proceedings hereby request that Speights & Runyan withdraw each of the 374 claims on the grounds they lack certain fundamental prerequisites of asbestos property damage claims in this bankruptcy.

* * *

By providing the attached list at this time, I do not believe there is a need for us to meet in Miami on Wednesday, as we had discussed. Let me know if you disagree.

**March 8, 2005 - E-mail from Speights to Finke cc Beber**
Your message arrived yesterday afternoon after I left for Florida. . . . I am perfectly happy to meet tomorrow, but it is impossible for me to take your chart and compare and contrast it with my data from the road. I think we can do this by e-mail, at least see which ones we can agree on and then meet, but that is your call. I am not going to be in the position of K&E suggesting that I canceled the meeting. Again, I am perfectly willing to meet.

**March 17, 2005 - E-mail from Speights to Finke**
We have made progress on the withdrawals, but it will be a few more days. We agree on some, disagree on others, and actually have a few to withdraw that were not on your list.

**March 17, 2005 - E-mail from Speights to Finke**
Attached hereto is revised Stipulation re claims being put on the shelf. Please advise.

**April 7, 2005 - E-mail from Speights to Finke**
I just want to confirm that the ball is in your court.

**February 18, 2005 – E-mail from Finke to Speights**

You may recall our discussion on Wednesday when I advised you that I am aware of at least two situations where Speights & Runyan filed asbestos property damage claims for properties that are also the subject of claims filed by the owners of the properties . . . Grace requests that Speights & Runyan withdraw those claims. Thank you for your consideration of this request.

**February 23, 2005 – E-mail from Speights to Finke**

We will withdraw those claims. They were already on our list to withdraw as well.

### February 24, 2005 - E-mail from Finke to Speights

During our February 16 meeting, I indicated that Grace had identified a number of claims that were filed by your firm on behalf of claimants it did not appear to represent. Attached find a list of 168 claims filed in Grace's Ch. 11 Proceedings by Speights & Runyan on behalf of claimants that are not included in your firm's 2019 Statement. . . . .

Grace therefore requests that, as part of the proposed Stipulation we discussed on February 16, Speights & Runyan agreed to withdraw claims on the attached list to the extent they were not authorized by the claimants named therein. . . . .

## February 24, 2005 - E-mail from Speights to Finke

I will be glad to discuss this matter with you, as I was prepared to do in Florida (I had all my lists with me). However, at Mr. Beber's suggestion, after we discussed several issues, including this one, we decided to first deal with the Stipulation regarding non-PID claims as a stand alone item.

If you now want to deal with this issue, I think it needs to be face to face. I am going to be in Miami in early March and would be willing to do it then. Alternatively, we can meet in South Carolina.

In the meantime, there is no basis to delay entering into the Stipulation we agree to.

March 7, 2005 - E-mail from Finke to Speights cc Beber, Siegel

As we discussed generally last Monday, I am forwarding for your consideration the attached list of 374 claims filed by your firm. The Debtors in Grace's Ch. 11 proceedings hereby request that Speights & Runyan withdraw each of the 374 claims on the grounds they lack certain fundamental prerequisites of asbestos property damage claims in this bankruptcy

\* \* \*

By providing the attached list at this time, I do not believe there is a need for us to meet in Miami on Wednesday, as we had discussed. Let me know if you disagree.

### March 8, 2005 – E-mail from Speights to Finke-ee Beber

Your message arrived yesterday afternoon after I left for Florida. I am perfectly happy to meet tomorrow, but it is impossible for me to take your chart and compare and contrast it with my data from the road. I think we can do this by e-mail, at least see which ones we can agree on <u>and then meet</u>, but that is your call. I am not going to be in the position of K&E suggesting that I cancel the meeting. Again, I am perfectly willing to meet.

March 17, 2005 - E-mail from Speights to Finke

We have made progress on the withdrawals, but it will be a few more days. We agree on some, disagree on others, and actually have a few to withdraw that were not on your list.