# EXHIBIT Y

**<u>Anderson Memorial</u> Emergency Petition**

**for a Rule to Show Cause Why**

**A Conditional Class Should Not be Certified**

**Against WR Grace & Co. and WR Grace & Co. – Conn.**

STATE OF SOUTH CAROLINA        )
                               )    IN THE COURT OF COMMON PLEAS
COUNTY OF HAMPTON              )
                               )
Anderson Memorial Hospital, on behalf )    Civil Action No.92-CP-25-279
of itself and others similarly situated )
                               )
            Plaintiffs,        )
                               )
    v.                         )
                               )
W. R. Grace & Company; W.R. Grace & )
Company-Connecticut; United States )
Mineral Products Company; T&N, plc., )
formally Turner & Newall, PLC and Turner )
& Newall, LTD; United States Gypsum )
Company; Asbestos Products Manufacturing )
Corporation; Asbestospray Corporation; )
H&A Construction Company,       )
                               )
            Defendants.         )
_____)

## EMERGENCY PETITION FOR A RULE TO SHOW CAUSE WHY A CONDITIONAL CLASS SHOULD NOT BE CERTIFIED AGAINST W.R. GRACE & CO. AND W.R. GRACE & CO.-CONN.

Grace disclosed last week that it "may [be] force[d] to file for bankruptcy protection," and had "'to seriously consider reorganization under Chapter 11, because it gives a place to go where you can negotiate an ultimate resolution'" of Grace's asbestos liabilities. Ex. A (Speights Verification) at ¶ 6. "Obviously, we would rather conclude this sooner rather than later," Grace's CEO added. Id. Grace's disclosure came on the heels of a drastic and sustained drop in the price of its stock: Grace's price per share has plummeted to less than $2.00 from $6.50-$8.00 at the time of the evidentiary hearing and $80.00 at the time the Plaintiff moved for class certification on the merits. Id. at ¶ 5.

Immediate certification of a conditional class is necessary to avoid irreparable harm to the class. Once Grace files for bankruptcy, this Court may be deprived of jurisdiction to do

anything against Grace - including issuing a certification order on the merits. See Ex Parte Reichlyn, 310 S.C. 495, 427 S.E.2d 661, 663-664 (1993) (describing the automatic stay under 11 U.S.C. § 362).[1]  This will severely prejudice South Carolina building owners during the bankruptcy proceedings.  Bankruptcy courts treat previously certified class claims much more favorably than other claims and, absent prior certification, a bankruptcy court may view Anderson's South Carolina class as individual claimants on par with the multitude of individual claimants from across the country.  Ex. A (Speights Verification) at ¶ 8.  This is true even though this action has undergone extensive class certification briefing on the merits, and a two day evidentiary hearing on class certification.  Ex. A (Speights Verification) at ¶¶ 2-4, 7.

Immediate certification of a conditional class is authorized.  Rule 23(d)(1), SCRCP, allows "conditional" class certification which "may be altered or amended before the decision on the merits."  Rule 23(d)(2), explicitly provides that the Court may "at any time" issue "appropriate orders" which "impose such terms as shall fairly and adequately protect the interest of the persons on whose behalf the action is brought or defended."

A rule to show cause is also necessary.  As with certification on the merits, a bankruptcy filing may deprive the Court of jurisdiction to even enter the conditional order requested. Ex Parte Reichlyn, 427 S.E.2d at 663-664.  Indeed, a motion made in the normal course could prompt the very bankruptcy filing that might end this Court's ability to protect the class.

Finally, Grace will not be prejudiced if the class is conditionally certified now.  The final in the series of opposition briefs filed on the merits is due today and the Plaintiff's final Reply

---

[1]At the evidentiary hearing, Grace's bankruptcy expert described 11 U.S.C. § 362 as a "statutory injunction" which "operates to stay, to stop, to suspend just about anything a creditor would want to do to collect a claim from a debtor in the pendency of the bankruptcy case."  Ex. A (Speights Verification) at ¶ 4.

is due in fifteen days. Ex.A (Speights Verification) at ¶ 7. The conditional certification will be unnecessary once this Court resolves certification on its merits and even earlier if Grace can show cause why the conditional order should be lifted.

To conclude, the Court should immediately certify a conditional class against W.R. Grace & Company and W.R. Grace & Company-Connecticut to protect the rights of class members should Grace declare bankruptcy before the Court issues its final order.

Respectfully submitted,

C. Alan Runyan
Daniel A. Speights
Marion C. Fairey, Jr.
Robert N. Hill
SPEIGHTS & RUNYAN
200 Jackson Avenue East
Post Office Box 685
Hampton, SC 29924
(803) 943-4444

By: _____

ATTORNEYS FOR THE PLAINTIFF

Hampton South Carolina
February 8, 2001

3

# A

STATE OF SOUTH CAROLINA )

)   IN THE COURT OF COMMON PLEAS

COUNTY OF HAMPTON )

Anderson Memorial Hospital, on behalf )   Civil Action No.92-CP-25-279
of itself and others similarly situated )

)

Plaintiffs, )

v.                      )

)

W. R. Grace & Company; W.R. Grace &    )   **VERIFICATION**
Company-Connecticut; United States )
Mineral Products Company; T&N, plc, )
formally Turner & Newall, PLC and Turner )
& Newall, LTD; United States Gypsum )
Company; Asbestos Products Manufacturing )
Corporation; Asbestospray Corporation; )
H&A Construction Company, )

)

Defendants. )

_____)

Daniel A. Speights, being duly sworn, verifies the following:

1.    I am a counsel of record for Anderson Memorial Hospital in the above captioned case. This verification is made on my personal knowledge and in support of Anderson Memorial Hospital's Emergency Petition for a Rule to Show Cause.

2.    On January 2, 1998, the Plaintiff moved for class certification. The Defendants responded on March 3, 1998; Plaintiff filed a Reply on April 17, 1998; and the various Defendants filed a Response to Plaintiff's Reply Brief on May 12, 1998 and again on May 22, 1998.

3.    After the Court scheduled an evidentiary hearing on Grace and certain other Defendants' challenge to the adequacy of the class representative and class counsel, the Plaintiff filed a Pre-Hearing Memorandum on April 19, 2000 and Grace and certain other Defendants responded on May 3, 2000.

4.    On September 5 and 6, 2000, the Court held a two day evidentiary hearing on Grace

and the certain other Defendants' challenge to the adequacy of the class representative and class counsel. During that hearing, Grace's bankruptcy expert described 11 U.S.C. § 362 as a "statutory injunction" which is entitled to the respect due a judicial order and which "operates to stay, to stop, to suspend just about anything a creditor would want to do to collect a claim from a debtor in the pendency of the bankruptcy case." Ex. 5 (Hearing Tr. at 125). At the end of that hearing, the Court granted the Defendants' various requests to file additional memoranda. Exhibit 5 (Hearing Tr. at 230-231).

5.       Historical charts reflect that Grace's stock price was approximately $80.00 a share when the plaintiff moved to certify a class in January 1998; had dropped to $6.50-$8.00 a share during the month of the evidentiary hearing; and now trades at less than $2.00 a share. See Ex. 4 (charts).

6.       On January 30, 2001, Grace disclosed to the Associated Press, the Wall Street Journal, and Reuters that Grace was seriously considering bankruptcy.  The Associated Press reported that Grace stated it "may [be] force[d] to file for bankruptcy protection" and the Wall Street Journal quoted Grace's Chief Executive Officer as stating that Grace had "'to seriously consider reorganization under Chapter 11, because it gives a place to go where you can negotiate an ultimate resolution'" of Grace's asbestos liabilities. Reuters further quoted Grace's Chief Executive Officer as stating, "Obviously we would rather conclude this sooner rather than later . . ." The Associated Press, Wall Street Journal, and Reuters reports are attached to this verification as Exhibits 1-3.

7.       On October 23, 2000, the various Defendants filed three separate oppositions on issues other than Grace's and certain other Defendants' challenge to the adequacy of the class representative and class counsel.  Grace and certain other defendants' final opposition brief on adequacy is due today.  Ex. 6 (Runyan Letter).  Plaintiff has fifteen days to file its final Reply.

2

Exhibit 5 (Hearing Tr. at 230-231).

8.      The South Carolina building owners in Anderson's class will be severely prejudiced if Grace files for bankruptcy before the Court can rule on the merits of certification. As of December 31, 2000, Grace is reportedly facing a total of seven asbestos property damage suits, nine attic asbestos insulation class actions, and 124,907 asbestos bodily injury claims. Ex. 3. None of these class actions are certified. Based on my experience representing asbestos property damage claimants in bankruptcies filed by Johns-Manville, National Gypsum, and Celotex, bankruptcy courts treat previously certified class claims much more favorably than other claims. Absent conditional certification prior to bankruptcy filing, a bankruptcy court may not grant the South Carolina building owners the preferential class treatment this Court may determine they deserve.

9.      I have personally reviewed the attached Emergency Petition for a Rule to Show Cause and know of my own personal knowledge that the facts contained in the motion and in this verification are true.

                                            _____
                                            Daniel A. Speights, Esq.

Subscribed and sworn to before me this

8th day of February, 2001.

_Rhonda L. Bowers_ (L.S.)
Notary Public for South Carolina
My Commission Expires: __3/5/09__

3

1

AP | top news | u.s. | world | business | sports | sci | tech | arts | weather | politics | search

*JANUARY 30, 17:36 EST*

# W.R. Grace 4Q Earnings Fall

COLUMBIA, Md. (AP) — Chemical maker W.R. Grace and Co. said the high cost of defending asbestos litigation dragged down fourth-quarter earnings and may force the company to file for bankruptcy protection.

Shares of W.R. Grace fell nearly 29 percent Tuesday on the news, which the company disclosed as it reported a fourth quarter loss after the markets closed Monday. On Tuesday, the company's stock fell 80 cents to close at $2 on the New York Stock Exchange.

The company posted a quarterly loss of $107.6 million, or $1.65 a share, due mostly to a spike in asbestos-related claims in 2000. Higher natural gas costs and a weak euro also contributed to the drop, the company said. In the year-ago quarter, the company earned $48.2 million, or 66 cents per share.

The results included a $135.2 million charge, or $2.07 a share, to increase reserves for asbestos litigation, which spiked in the fourth quarter.

More than 48,000 bodily injury claims were filed against Grace last year, 81 percent more than in 1999, the company said. In all, more than 124,000 claims have been filed against the company.

``The asbestos-related litigation environment has worsened and become more unpredictable,'' said Paul J. Norris, W.R. Grace's chairman, president and chief executive.

``If we are going to put through a reorganization plan, that's a process that takes time, so it would be prudent for us to consider it carefully,'' Norris said of a possible Chapter 11 filing.

The company may not have long to ponder its next move. Company officials warned that their 364-day bank credit facility may not be renewed in May because of uncertainties over the future of asbestos suits.

But Grace does have $300 million on hand to fund operations, which should see it through the year, said Robert M. Tarola, senior vice president and chief financial officer.

European operations, which represent 29 percent of Grace's business, were hurt by a weak euro, Norris said. Rising natural gas and oil prices also cut into profits, he said.

Those factors contributed to a $14.7 million loss for the year, compared with a net income of $135.9 million in 1999.

Grace has tried unsuccessfully to encourage federal legislation to settle asbestos suits, which company officials said would brighten their outlook for 2001.

``If we saw legislation on the horizon, that would certainly change our view because it would be a way of providing a global resolution to the issue,'' Norris said.

Former asbestos maker Owens Corning filed for bankruptcy protection in October to help it cope with asbestos-related lawsuits. The supplier of building and industrial materials has paid or agreed to pay $5 billion in asbestos claims and faces about $2 billion more in asbestos payouts.

2

▶ Company Background      ▶ Company News
▶ Financial Overview      ▶ Press Releases
▶ Stock Charts            ▶ Quote Details
▶ Earnings Estimates

**COMPANY BRIEFING BOOK**

**WSJ.com**  ▶ TABLE OF CONTENTS

## The Wall Street Journal Interactive Edition — January 30, 2001

# Grace Considers Chapter 11 Filing Amid Rising Asbestos Litigation

**By SUSAN WARREN**
Staff Reporter of THE WALL STREET JOURNAL

W.R. Grace & Co. said it is considering seeking bankruptcy protection to gain control over escalating asbestos litigation.

The Columbia, Md., chemicals company, citing an 81% increase in asbestos-related injury claims filed in 2000 over 1999, said it will review whether it should manage the growing pile of suits through the courts, or seek a more concrete resolution through a Chapter 11 reorganization.

"It is important for us to look at all the options, which means you have to seriously consider reorganization under Chapter 11, because it gives a place to go where you can negotiate an ultimate resolution," said Grace Chief Executive Paul Norris.

▶ Energy Costs Hurt 4th-Quarter Results at Union Carbide, Lyondell Chemical

Although Grace so far has resisted such a decision, the news didn't surprise Wall Street, which has expected Grace to join a growing list of firms that have buckled under the weight of numerous asbestos lawsuits. In the past year, five companies, including Owens Corning, Armstrong World Industries Inc. and G-I Holdings Inc., (formerly GAF Corp.), have sought bankruptcy protection from creditors.

Grace also recorded a $135.2 million charge for the fourth quarter to increase its reserves for resolving asbestos litigation. With the addition, the company said it could make $1.11 billion in liability-related payments over 40 years, including insurance proceeds and tax benefits.

Grace reported a net loss of $107.6 million, or $1.65 a diluted share, compared with net income of $48.2 million, or 66 cents a share, in the year-earlier quarter. Before charges, Grace earned 42 cents a share, down from 46 cents a share a year earlier, reflecting a weak economy and higher energy costs. The company warned last week that earnings would be lower than analysts expected. Sales fell 2.7% to $384.4 million from $395.2 million.

Despite the woes, Mr. Norris projects Grace's core business earnings will grow by 5% to 10% this year.

But asbestos litigation has cast a dark cloud. As other companies have filed for bankruptcy protection, plaintiffs have increased their settlement demands along with the number of claims. As a result, Grace said its growing asbestos liability may put its $250 million bank credit facility, which matures in May, in jeopardy. If the facility isn't renewed, $150 million of debt will be due, and the remaining $100 million in credit will lapse. Grace said its continued access to credit may require a restructuring of its existing facilities, or finding other sources of long-term capital.

Grace shares fell 14 cents to $2.80 as of 4 p.m. New York Stock Exchange composite trading Monday.

Write to Susan Warren at susan.warren@wsj.com


**Dow Jones Publications Library**
Search the world's top publications.

Headlines are free. Additional charges for articles viewed.

More about GRA:

From leading business publications

From The Wall Street Journal

 | HELP | MARKETS DATA CENTER | PERSONAL FINANCE CENTER | QUOTES | BRIEFING BOOKS | SEARCH | GLOSSARY | YOUR ACCOUNT | BARRON'S ONLINE |

Copyright © 2001 Dow Jones & Company, Inc. All Rights Reserved.
Copyright and reprint information.

3

**MSN Home  Hotmail  Web Search  Shopping  Money  People & Chat**    Passport

 **interesting tours**  just a click away

# MoneyCentral Investor

February 7, 2001

Investor        Portfolio   Markets   Stocks   Funds   Insight   Brokers        | Help

Welcome
Quotes
Snapshot
Charts
Recent News
Company Report
SEC Filings
Advisor FYI
Analyst Info
Financial Results
Insider Trading

Research Wizard

Stock Screener

Community

Print Report

Back to Recent News




Track your stocks
Use the web's best
portfolio manager

**REUTERS**

## UPDATE 1- W.R. Grace shares drop as it studies Chapter 11
January 30, 2001 4:26:00 PM ET

(Adds closing price)

NEW YORK, Jan 30 (Reuters) - W.R. Grace & Co. (GRA) shares fell nearly 30 percent on Tuesday after the chemical company said it was considering filing for Chapter 11 bankruptcy protection because of a rising number of asbestos-related injury suits.

Noting a sharp jump in the number of asbestos-related claims against it last year, Grace said the company would consider all options, including bankruptcy, to resolve the financial strain resulting from the litigation.

"There are a lot of advantages and disadvantages to filing for Chapter 11," Chairman and Chief Executive Paul Norris said in a conference call on Tuesday.

"Obviously, we would rather conclude this sooner rather than later," he said, but added that the Columbia, Md., company has no timetable for a decision.

Grace shares dropped 80 cents, or 28.57 percent, to $2.00 on the New York Exchange following the conference call, which came a day after the company first said it would consider bankruptcy protection and announced it had taken a $132.5 million fourth-quarter charge to increase its reserves for resolving asbestos cases.

The extra money means that over the next 40 years, Grace can now make $1.11 billion in liability payments, including insurance proceeds and tax benefits.

The company said asbestos-related claims rose 81 percent in 2000, leaving it with a total of seven property damage lawsuits, nine attic insulations class action lawsuits, and 124,907 bodily injury claims pending as of Dec. 31.

And because of the concerns about asbestos litigation, Grace may now face trouble renewing a $250 million credit line that expires in May. If it isn't renewed, $150 million of the debt will be due.

Grace could become the latest company to be forced to file for Chapter 11 bankruptcy because of the asbestos cases. Since early October, two such companies, building materials maker Owen Corning (OWC) and a unit of floor and ceiling products maker Armstrong Holdings Inc. (ACK), have filed for protection.

Symptoms from asbestos exposure can take 40 years to surface.

Grace's Norris said he didn't expect to sell any significant assets in an effort to raise money for the litigation.

"We're going to take prudent action for the best interest of the company," he said.

© 2001 Reuters

Back to Recent News

©2001 Microsoft Corporation. All rights reserved. Terms of Use    Advertise    TRUSTe Approved Privacy Statement

**4**



MSN Home   Hotmail   Web Search   Shopping   Money   People & Chat   Passport

## MoneyCentral Investor

February 8, 2001

**Investor**   Portfolio   Markets   Stocks   Funds   Insight   Brokers    | Help

Welcome
Quotes
Snapshot
Charts
  Historical
  Real-Time Intraday
Recent News
Company Report
SEC Filings
Advisor FYI
Analyst Info
Financial Results
Insider Trading
Research Wizard
Stock Screener
Community
Print Report

Name or Symbol: gra        Find Symbol

Customize Chart                    Upgrade now! Charts show your buys and sells

Price History - GRA (2/1/2001-2/7/2001)    ■ Grace (WR) & Co

**Customize Chart**
Select your options, then click Refresh Chart

⊟ Date Range

  ○ Predefined Date Range:
    [Year ▾]

  ● Custom Date Range:

    From  [February ▾] Year: 2001

    To    [February ▾] Year: 2001

    Show detail in [Days ▾]

⊟ Comparisons

  Index:
    ☐ Dow (DJIA)  ☐ S&P 500   ☐ NASDAQ   ☐ AMEX

  Moving average:

FEB. 9.2001  11:02AM    OGLETREE LAW& RUNYAN                    80NO.1799    P.221/30



**MSN Home**  **Hotmail**  **Web Search**  **Shopping**  **Money**  **People & Chat**  Passport

Ameritrade
Special Offer When
You Open an Account

E*TRADE
Get 25 Free Trades
Learn How!

DATEK
Sign up today for a
Datek account

E*TRADE BANK
E*TRADE Bank
Click Here

## MoneyCentral Investor

February 9, 2001

Investor        Portfolio   Markets   Stocks   Funds   Insight   Brokers                | Help

Welcome
Quotes
Snapshot
Charts
  Historical
  Real-Time Intraday
Recent News
Company Report
SEC Filings
Advisor FYI
Analyst Info
Financial Results
Insider Trading
Research Wizard
Stock Screener
Community
Print Report

Name or Symbol: |gra|        ▢ Find Symbol

Customize Chart                    Supercharge your charts! Upgrade to Deluxe



Price History · GRA (9/1/2000 - 10/2/2000)

**Customize Chart**
Select your options, then click Refresh Chart

☐ Date Range
  ○ Predefined Date Range:
    |Year       ▾|
  ◉ Custom Date Range:
    From  |September ▾| Year: |2000|
    To    |September ▾| Year: |2000|
    Show detail in |Days ▾|

☐ Comparisons
  Index:
  ☐ Dow (DJIA)  ☐ S&P 500  ☐ NASDAQ  ☐ AMEX

  Moving average:

FEB. 9.2001  11:02AM    OGLETREE LAW    NO. 1799    P. 23/30
FEB-09-2001  10:42    SPELLING & RUNYAN    803



**MSN Home**  **Hotmail**  **Web Search**  **Shopping**  Money  **People & Chat**    Passport sign in

E*TRADE BANK / E*TRADE Bank  Click Here    Ameritrade  Special Offer When You Open an Account    E*TRADE  Get 25 Free Trades  Learn How!    DATEK  Sign up today for a Datek account

# MoneyCentral Investor

February 8, 2001

Investor        Portfolio  Markets  Stocks  Funds  Insight  Brokers                | Help

- Welcome
- Quotes
- Snapshot
- Charts
  - Historical
  - Real-Time Intraday
- Recent News
- Company Report
- SEC Filings
- Advisor FYI
- Analyst Info
- Financial Results
- Insider Trading
- Research Wizard
- Stock Screener
- Community
- Print Report

Name or Symbol: gra              Find Symbol

Customize Chart                  Need technical analysis tools? Upgrade to Dalwel

Price History - GRA (1/1/1998-2/7/2001)        ■ Grace (W.R.) & Co.

Customize Chart
Select your options, then click Refresh Chart

⊟ Date Range
    ○ Predefined Date Range:
      [Year ▾]

    ⦿ Custom Date Range:
      From [January ▾] Year: [1998]
      To [February ▾] Year: [2001]
      Show detail in [Weeks ▾]

⊟ Comparisons
    Index:
     ☐ Dow (DJIA)  ☐ S&P 500  ☐ NASDAQ  ☐ AMEX

    Moving average:

5

| | |
|---|---|
| STATE OF SOUTH CAROLILNA | ) COURT OF COMMON PLEAS |
| COUNTY OF YORK | ) SIXTEENTH JUDICIAL CIRCUIT |
| ANDERSON MEMORIAL HOSPITAL, | ) |
| PLAINTIFF, | ) TRANSCRIPT OF RECORD |
| VERSUS | ) 92-CP-25-279 |
| | VOLUME II |
| W. R. GRACE AND OTHERS, | ) |
| | SEPTEMBER 6, 2000 |
| DEFENDANTS. | ) YORK, SOUTH CAROLINA |

BEFORE:  THE HONORABLE JOHN C. HAYES III, JUDGE

APPEARANCES:

SPEIGHTS AND RUNYAN
ATTORNEYS FOR PLAINTIFF
BY:  DANIEL A. SPEIGHTS, ESQ.
   ALAN RUNYAN, ESQ.
   MARION C. FAIREY, ESQ.

OGLETREE, DEAKINS, NASH, SMOAK AND STEWART
BY:  DONALD A. COCKRILL, ESQ.
   KEVIN CASTEL, ESQ.

TURNER, PADGETT, GRAHAM AND LANEY
ATTORNEYS FOR U. S. GYPSUM COMPANY
BY:  STEVEN W. OUZTS, ESQ.

BARNWELL, WHALEY, PATTERSON & HELMS
ATTORNEYS FOR U. S. MINERAL PRODUCTS COMPANY
BY:  BRUCE E. MILLER, ESQ.

LEATH, BOUCH & CRAWFORD
ATTORNEYS FOR T&N, PLC
BY;  TIMOTHY W. BOUCH, ESQ.


PHYLLIS S. BARRETT, CIRCUIT COURT REPORTER

JOHN AYER-DIRECT EXAMINATION BY MR. CASTEL

1        SECTION 362.  WHAT IS THAT?

2    A.        THE CONSTITUTION GIVES CONGRESS THE POWER TO PASS

3    BANKRUPTCY LAWS, AND SECTION 362 IS PART OF THE

4    BANKRUPTCY CODE THAT CONGRESS PASSED TO IMPLEMENT THAT

5    POWER.  AND SECTION 362, INSOFAR AS RELEVANCE TODAY,

6    OPERATES TO STAY, TO STOP, TO SUSPEND JUST ABOUT ANYTHING

7    A CREDITOR WOULD WANT TO DO TO COLLECT A CLAIM FROM A

8    DEBTOR IN THE PENDENCY OF A BANKRUPTCY CASE.

9    Q         NOW, IS IT A FORM OF INJUNCTION, STATUTORY

10   INJUNCTION?

11   A         WELL, IT'S COMMONLY CALLED A STATUTORY INJUNCTION,

12   YES.

13   Q         AND WHAT ARE THE REMEDIES THAT A DEBTOR, FOR

14   EXAMPLE, COULD PURSUE IF SOMEONE VIOLATED THE 362 STAY?

15   A         WELL, IT MIGHT BE THE DEBTOR OR THE TRUSTEE OR

16   THE DEBTOR ACTING WITH POWERS OF TRUSTEE, OR IT MIGHT

17   BE THE COURT ON ITS OWN INITIATIVE.  THE INTERESTED PARTY

18   MIGHT SEEK TO HAVE THE CLAIM, THE ACTION OF THE VIOLATION

19   OF THE STAY DECLARED A NULLITY.  OR IT MIGHT RULE FOR

20   DAMAGES IN LIEU OF THE CIRCUMSTANCES.  AND A GOOD MANY

21   PARTIES, A GOOD MANY LAWYERS HAVE BEEN FOUND TO BE IN

22   CONTEMPT OF THE BANKRUPTCY COURT FOR VIOLATING OF 362.

23   Q         SO, IT'S TREATED AS A JUDICIAL ORDER IN THAT RESPECT

24   AND ENTITLED TO THAT RESPECT?

25   A         I THINK THAT'S RIGHT.

1       AND AFFIDAVIT IS THERE.  I MEAN, -- IT'S JUST -- I

2       UNDERSTAND YOU WANT TO GIVE EVERYBODY NINETY DAYS.  BUT I

3       AM CONCERNED AND ESPECIALLY BECAUSE THEY KEEP RAISING

4       TIME ELEMENTS ALL THE TIME.

5             MR. MILLER:  I'LL SAY THIS, YOU KNOW, MY FOLKS, MY

6       QUESTION ON ADEQUACY OF ANDERSON HOSPITAL AS THE CLASS

7       REPRESENTATIVE.  SO I REALLY WOULD LIKE TO GET THE

8       TRANSCRIPT BACK, EVEN THOUGH MY PORTION IS SMALL.  SO,

9       THAT'S MY POSITION.

10            MR. COCKRILL:  WELL, WE HAVE THE SAME POSITION.

11      MY POSITION IS THE ADEQUACY.

12            THE COURT:  WELL, LET'S HAVE FORTY-FIVE DAYS ON

13      THAT.  AND THIS MAY NOT END UP ON THE ADEQUACY.  IT MAY

14      NOT BE NINETY DAYS, BECAUSE SHE MAY BE ABLE TO GET IT

15      QUICKER.

16            MR. COCKRILL:  I'LL MAKE A FORMAL REQUEST.  AND

17      SO ADEQUACY, BOTH AS TO THE HOSPITAL AND COUNSEL, WE'RE

18      TALKING THIRTY DAYS FROM DELIVERY OF THE TRANSCRIPT.

19      IS THAT WHAT I UNDERSTAND?

20            THE COURT:  AND FORTY-FIVE DAYS FROM NOW UNTIL

21      ON THE OTHER ISSUES.

22            MR. COCKRILL:  ON NUMEROSITY AND TYPICALITY?

23            THE COURT:  YEAH.

24            MR. MILLER:  AND ON COMMONALITY.

25            THE COURT:  COMMONALITY.  AND THIRTY DAYS, DO YOU

1    NEED THIRTY DAYS TO RESPOND TO THOSE?

2         MR. RUNYAN:  YES SIR.

3         MR. COCKRILL:  WELL, SHOULDN'T WE ALL SERVE THE

4    SAME TIME.  I MEAN, THE BURDEN'S ON THEM.  IF YOU RECALL

5    YOU RULED THAT THEY HAVE THE BURDEN TO ESTABLISH IT.  ARE

6    YOU SAYING--  I DON'T KNOW.  WHAT ORDER DO YOU WANT IT

7    IN?

8         THE COURT:  ALL RIGHT.  WELL, LET'S BACK UP, THEN.

9    DOES THE PLAINTIFF HAVE ANY FURTHER SUBMISSIONS TO MAKE

10   ON EITHER OF THOSE ISSUES?

11        MR. FAIREY:  NO, YOUR HONOR.  WE HAVE NO FURTHER

12   AFFIRMATIVE SUBMISSIONS TO MAKE.  AND I WOULD ANTICIPATE

13   ANYTHING IN THE FILE, WE COULD DO IN FIFTEEN DAYS OR

14   LESS AFTER WE GET THEIR BRIEF.

15        THE COURT:  ALL RIGHT, WE'LL APPLY A TIME OF FIFTEEN

16   DAYS.

17        MR. COCKRILL:  ALL RIGHT.

18        THE COURT:  NOW, ONE ISSUE I KNOW THAT MR. MILLER'S

19   GOING TO WANT TO BRIEF, BECAUSE HE RAISED IT, THAT I

20   HAVEN'T THOUGHT ABOUT.  AND AGAIN, I'M LIKE--  WELL, I

21   DON'T WANT TO COMPARE MYSELF TO JUDGE SANDERS; PLEASE

22   DON'T SAY I DID THAT.

23        BUT I HAVE ONLY BEEN IN ONE CLASS ACTION AND NEVER

24   GOT THIS FAR.  SO, I'M HAVING TO LEARN FROM GOOD TEACHERS

25   OUT THERE.

FEB. 9.2001  11:03AM    OGLETREE LAW RUNYAN                    NO.179   P.29
FEB-09-2001  10:43      OGLETREE J.C RUNYAN                    NO.179   P.29

6

FEB. 9.2001  11:03AM   OGLETREE LAW & RUNYAN                    NO. 17599  P.29/30

## SPEIGHTS & RUNYAN
### ATTORNEYS AT LAW
200 JACKSON AVENUE, EAST
POST OFFICE BOX 685
HAMPTON, SOUTH CAROLINA 29924
(803) 943-4444

TELECOPIER
(803) 943-4599

C. ALAN RUNYAN

February 8, 2001

*By Facsimile & U.S. Mail*
Donald A. Cockrill, Esquire
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Post Office Box 2757
Greenville, SC 29602

Re: *Anderson Memorial Hospital v. W.R. Grace & Co.-Conn., et al.*

Dear Don:

This will confirm our conversation on Tuesday that it's your understanding, based upon your review of the transcript, that your brief is to be filed today and that we have fifteen days thereafter to respond.

Sincerely,

C. Alan Runyan

CAR:keb

FEB. 9.2001 11:03AM    OGLETREE LAW
FEB-09-2001 18:43    SPEIGHTS & RUNYAN    803NO.1799    P.31/38

STATE OF SOUTH CAROLINA          )
                                 )          AFFIDAVIT OF SERVICE
COUNTY OF HAMPTON                )

        Re:    Anderson Memorial Hospital, etc. v. W.R. Grace
               & Company, et al. (Case No. 92-CP-25-279)

---

        PERSONALLY APPEARED before me Rhonda L. Bowers, who being duly sworn, deposes

and says:  that she is employed in the office of Speights & Runyan, attorney for the Plaintiff in the above-

referenced action; that she served the foregoing Order and Verified Petition this 9th day of February, 2001,

by personally telefaxing a copy of the same and depositing in a United States Postal Service mail box a copy

of the same, postage prepaid, addressed to the attorney(s) as indicated below:.

P. Kevin Castel, Esquire
Allen S. Joslyn, Esquire
CAHILL GORDON & REINDEL
80 Pine Street
New York, New York  10005-1702
212-269-5420 (fax)

Donald A. Cockrill, Esquire
L. Gray Geddie, Jr., Esquire
Phillip A. Kilgore, Esquire
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
The Ogletree Building
300 North Main St., PO Box 2757
Greenville, SC  29602
864-235-4754 (fax)

                                        *Rhonda L. Bowers*
                                        RHONDA L. BOWERS

SWORN TO before me this

9th day of February, 2001

*Katina Capers*          (L.S.)
Notary Public for South Carolina
My Commission Expires: *May 20, 2009*