## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Case No. 01-1139 (JKF) |
| W.R. GRACE & CO., *et al.* | : | (Jointly Administered) |
| | : | |
| Debtors. | : | Hearing Date:   9/26/2005 at 12:00 p.m. |
| | : | Objection Date: 9/16/2005 at 4:00 p.m. |

## CERTAIN INSURERS' MOTION FOR ACCESS
## TO EXHIBITS TO 2019 STATEMENTS

Certain Insurers,[1] by and through their undersigned counsel, hereby move the Court for the entry of an Order directing the Clerk of Court (or alternatively, the Debtors) to provide to Certain Insurers copies of exhibits to Rule 2019 statements ("2019 Exhibits") filed pursuant to the Court's October 22, 2004 Revised Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019 (Dkt. No. 6715, the "2019 Order"). This motion is filed upon shortened notice, pursuant to permission of the Court granted at the August 29, 2005 omnibus hearing. Debtors' counsel advises that the Debtors have no objection to Certain Insurers obtaining the relief sought herein.

To the extent that the Court suggested that all potentially interested parties participate in the estimation of asbestos personal injury claims against the Debtors and/or the Asbestos Trust[2] ("Asbestos PI Claims"), Certain Insurers are entitled to access to all materials relating to estimation that have been made available to the Debtors and any other interested parties in these proceedings. To that end, Certain Insurers require prompt access to all such materials, including the 2019 Exhibits, in order to comply with the

---

[1]    Certain Insurers are Federal Insurance Company, Continental Casualty Company and Continental Insurance Company, Zurich Insurance Company and Zurich International Limited, Allstate Insurance Company, solely as successor-in-interest to Northbrook Excess and Surplus Insurance Company, formerly Northbrook Insurance Company, Certain Underwriters at Lloyd's, London and Certain London Market Companies, Travelers Casualty & Surety Company, and Royal & SunAlliance.

[2]    Unless otherwise defined, all capitalized terms used herein shall have the meanings ascribed to them in the Glossary of Defined Terms filed by the Debtors on November 13, 2004

deadlines set forth in the Case Management Order for Estimation of Asbestos Personal Injury Liabilities entered on August 31, 2005 (Dkt. No. 9301, the "PI CMO").

The 2019 Exhibits, assuming that they comply with the requirements of Fed. R. Bankr. P. 2019 and the 2019 Order, contain basic claim and disease information that is critical to Certain Insurers' ability to evaluate and present evidence with respect to estimation of Asbestos PI Claims should they determine to do so. Accordingly, Certain Insurers request that such materials be made available to them without delay.

## Background of the 2019 Order

1. On October 22, 2004, the Court entered the 2019 Order.

2. The 2019 Order provides that any entity "representing more than one creditor . . . in the Debtor's bankruptcy case in any way shall file with the Clerk a statement (a "2019 Statement") . . . ."

3. Entities filing 2019 Statements were required to submit exhibits. The required exhibits include an exemplar or an actual copy of each form of agreement authorizing such entity to act on behalf of creditors in this case.

4. The Court required such entities to submit as an additional exhibit "[a]n Excel spreadsheet in electronic format" containing, *inter alia*,

    a.    The name of each creditor represented by the filing entity;

    b.    The personal address of each such creditor;

    c.    Identification of the exemplar agreement form executed by each creditor represented by the filing entity;

    d.    The amount of the claim of any creditor if liquidated or an indication that such claims are unliquidated;

    e.    For personal injury claimants, the type of disease giving rise to the claim; and

    f.    A recital of the pertinent facts and circumstances in connection with the employment of the entity, the name or names of the entity or entities at whose

instance directly or indirectly the employment was arranged by the creditor, and the date such agreement was executed.

5.  The 2019 Order directed that each entity filing a 2019 Statement supply one set of exhibits to the Clerk of Court who was ordered not to put them on the electronic database.  Such entities were also required to serve a copy of their 2019 Statement including all 2019 Exhibits on CDs upon the Debtors and the United States Trustee, who were ordered to keep such exhibits confidential and not to release the exhibits to any party without further order by the Court.  The Court further ordered that "the Debtor shall maintain copies of the 2019 Statements and shall make them available for inspection and copying as directed by the Court from time to time."

6.  Prior to entering the 2019 Order, the Court held a hearing in all of the Delaware cases pending before Judge Fitzgerald on October 6, 2004.  *See* Transcript of Argument on All Delaware Asbestos Cases Regarding 2019 Order Before Honorable Judith K. Fitzgerald United States Bankruptcy Judge, filed in *In re: Owens Corning, et al.*, Case Nos. 00-3837-54, at Dkt. No. 12968 ("Transcript").  There, the Court explained that it had restricted public access to the 2019 Exhibits to allay privacy concerns with respect to individual claimants (including, among other things, the potential for identity theft), and the concern that potentially voluminous filings might overwhelm the Court's electronic docketing system.  *Id.* at 31-33, 47-48.

7.  At the same time, however, the Court made clear that it was not foreclosing any party's right of access to the 2019 Exhibits:

> [A]nyone who wants access to the data has to file a motion and I'll have a hearing with respect to that access. . . . [I]f somebody wants access I think it's appropriate to ask the Court for it because of the privacy concerns I've raised. . . . So I think the order as crafted provides that opportunity and that should be sufficient to get the issue raised later in a timely fashion.

*Id.* at 34-35.

8. The Court thus recognized "the parties' rights to ask [to use] this information by simply filing a motion with this Court" explaining why such information was being requested. *Id.* at 55.

### Background of the Request for Relief

9. On August 31, 2005, the Court entered the PI CMO setting forth deadlines and procedures for purposes of estimating PI Asbestos Claims. As part of the PI CMO, the Court approved a form of questionnaire to be completed by all holders of Asbestos PI Pre-Petition Litigation Claims (the "Questionnaire"). PI CMO, Ex. A.

10. Certain Insurers have requested, at various hearings in these proceedings, that the Court consider the inclusion of insurance neutrality language in connection with any estimation of claims. The Court has denied the requests on the grounds that the PI CMO was intended to be merely a "procedural," not substantive, order. (*See* 7/19/05 Tr., Dkt. No. 9105 at 200-03). The Court further instructed that to the extent the insurers (or any other potentially interested parties) believed their interests might be at stake with respect to the PI Estimation Proceedings, they should participate. (*See id.* at 202-203.)

11. In light of the Court's suggestion, and without waiver of Certain Insurers' position that the estimation of Asbestos PI Claims can have no effect on the insurers' rights and defenses under their respective insurance policies, any settlement agreements and applicable law with respect to, among other things: (1) their duty to indemnify the Debtors or any third party; and (2) any future coverage dispute with the Debtors or any third parties, Certain Insurers must preserve their ability to participate in the PI Estimation Proceedings. To do so, Certain Insurers require access to the same information concerning Asbestos PI Claims against the Debtors and/or the Asbestos Trust that is available to any other party in interest in these proceedings. Given the extremely compact schedule set forth in the PI CMO – and given that the 2019 Exhibits and other claims data has been available to the Debtors and other interested parties for months and

4

even years – time is of the essence with respect to the discovery that Certain Insurers require.

**Relief Requested**

12. By way of this Motion, Certain Insurers respectfully request access to the 2019 Exhibits to preserve their ability to participate in the PI Estimation Proceedings. Specifically, Certain Insurers ask that the Clerk of Court, or alternatively the Debtors,[3] provide to Certain Insurers copies (or permit Certain Insurers to copy) the disks containing the 2019 Exhibits.

13. Access to the 2019 Exhibits is appropriate for a variety of reasons. First, the 2019 Exhibits will provide, among other things, information about a significant portion of the claims asserted against the Debtors – a matter clearly relevant to the estimation proceedings. For example, substantially all individuals who are holders of Asbestos PI Claims are presumably represented by law firms representing multiple claimants against Debtors and therefore would be identified in 2019 Exhibits by their names, addresses, and alleged disease categories. In addition, the 2019 Exhibits will supply information not readily available from other sources. Whereas the Questionnaires seek discovery as to claims pending in litigation against Debtors as of April 2, 2001, the 2019 Exhibits will provide information with respect to claims against Debtors that were not in litigation as of the Chapter 11 petition date. Knowing the number, locations and disease categories of holders of Asbestos PI Claims and of these additional claimants will be germane to estimating current and future Asbestos PI Claims against Debtors.

14. Moreover, pursuant to the PI CMO, the Questionnaire data is not required to become available until March 2006 – approximately four months *after* the parties will be

---

[3]    Debtors' counsel advises that Debtors have no objection to Certain Insurers obtaining the exhibits to the 2019 Statements, but have requested that such access be obtained through the Clerk of Court. Although the 2019 Order seems to contemplate the Debtors' providing access to the exhibits to other entities upon further order of the Court, Certain Insurers have no objection to obtaining copies from either source.

required to designate categories of expert testimony and three months after fact and expert witnesses are designated. *See* PI CMO at ¶¶ 3.D., 5-7. Because such designations will be made without the benefit of Questionnaire data, the 2019 Exhibits – which have long been in the Debtors' possession and will presumably inform the Debtors' decisions on these matters – are critical to Certain Insurers' ability to comply with the schedule set forth in the PI CMO.

15. The PI CMO mandates that much of the same information contained in the 2019 Exhibits, and additional claimant information, be shared with Certain Insurers and others who may participate in the PI Estimation Proceedings via the "navigable database" of Questionnaire information. *See* PI CMO at ¶ 3.D. Accordingly, permitting Certain Insurers to obtain the information contained in the 2019 Exhibits at this stage of the proceedings will not prejudice any individual claimant.

16. Simply stated, Certain Insurers ask for no more than what is already available to other participants in the PI Estimation Proceedings. Debtors have had the 2019 Exhibits in their possession for many months with no restriction upon their ability to use the data. Certain Insurers should be afforded equal access to this information.

17. Finally, the 2019 Exhibits are public records pursuant to 11 U.S.C. § 107(a) – a factor that weighs heavily in favor of their disclosure. Likewise, as part of the Court's files, these exhibits constitute "judicial records" subject to the right of access doctrine. *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157 (3d Cir. 1993). Both under § 107(a) and the right of access doctrine, there is a strong presumption of free public access to all documents filed in connection with a bankruptcy case. Moreover, by filing the 2019 Statements (and thereby asserting the right to appear on behalf of creditors of the Debtors), counsel representing the claimants identified in the 2019 Statements have put their clients' illness and medical condition at issue. Courts traditionally provide access to such information when a party makes a claim based upon it.

For all of the foregoing reasons, Certain Insurers respectfully request the entry of an Order in the form annexed granting them access to the 2019 Statement Exhibits.

Respectfully submitted,

Dated: September 6, 2005

COZEN O'CONNOR

John A. Carroll, III  (DE No. 4060)
1201 N. Market Street, Suite 1400
Wilmington, DE  19801
(302) 295-2028 Telephone
(302) 295-2013 Facsimile

- and –

William P. Shelley (PA ID 40875)
Jacob C. Cohn (PA ID 54139)
David J. Liebman (PA ID 89919)
1900 Market Street
Philadelphia, PA  19103
(215) 665-2000 Telephone
(215) 665-2013 Facsimile

Attorneys for Federal Insurance
Company

-and-

Elizabeth M. DeCristofaro
Charles A. Booth
FORD MARRIN ESPOSITO
WHITMEYER & GLESER
Wall Street Plaza
New York, NY 10005-1875

-and-

Michael S. Giannotto
Goodwin Procter LLP
901 New York Avenue, N.W.
Washington, DC 20001
(202) 346-4124
Fax (202) 346-4444

Daniel M. Glosband
Goodwin Procter LLP
Exchange Place,
53 State Street,
Boston, MA. 02109
(617) 570-1000
Fax (617) 570-1231

-and-

Kevin Gross, Esquire
Rosenthal, Monhait, Gross &
Goddess, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE  19899
Telephone (302) 656-4433
Counsel for Continental Casualty
Co. and Continental Insurance Co.

-and-

Thomas G. Macauley
Elizabeth D. Power
Zuckerman Spaeder LLP
919 Market Street, Suite 990
P.O. Box 1028
Wilmington, Delaware  19899-1028
Telephone (302) 427-0400
Fax (302) 427-8242

James Sottile
Zuckerman Spaeder LLP
1201 Connecticut Avenue, NW
Washington, DC  20036-2638
Telephone  (202) 778-1800
Fax  (202) 822-8106

-and-

Mary K. Warren
Brenda D. DiLuigi
Linklaters
1345 Avenue of the Americas
New York, New York  10105
Telephone  (212) 424-9000
Fax  (212) 424-9100

Attorneys for Certain Underwriters
at Lloyd's, London and Certain
London Market Companies

-and-

Robert J. Dehney (#3578)
Michael G. Busenkell (#3933)
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, Delaware 19899
Telephone (302) 658-9200

-and-

Mary Beth Forshaw
Elisa Alcabes
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, New York  10017-3954
Telephone (212) 455-2000
Fax  (212) 455-2502

Counsel for Travelers Casualty &
Surety Company

-and-

Jeffrey C. Wisler (No 2795)
Marc J. Phillips (No. 4445)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
Wilmington, DE  19899
Telephone (302) 658-9141
Fax (302) 658-5614

-and-

Richard A. Ifft
Wiley Rein & Fieldling LLP
1776 K Street, N.W.
Washington, D.C. 20006
Telephone  (202) 719-7000
Fax  (202) 719-7049

Attorneys for Zurich Insurance
Company and Zurich International
Limited

and

James Yoder, Esq.
WHITE & WILLIAMS, LLP
824 North Market Street Suite 902
PO Box 709
Wilmington, DE 19899

and

Andrew Craig, Esq.
CUYLER BURK, LLP
4 Century Drive
Parsippany, NJ 07054

Attorneys for Allstate Insurance
Company, solely as successor in
interest
to Northbrook Excess and Surplus
Insurance Company, formerly
Northbrook
Insurance Company

-and-

Ian Connor Bifferato, Esq. (#3273)
BIFFERATO, BIFFERATO &
GENTILOLTTI
1308 Delaware Avenue
The Buckner Building
PO Box 2165
Wilmington, Delaware 19899-2165
(302) 429-1900

-and-

Carl J. Pernicone, Esq.
Wilson, Elser, Moskowitz,
Edelman & Dicker, LLP
150 East 42nd St.
New York New York 10017-5639
(212) 490-3000

Counsel for Royal & SunAlliance