## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| **Debtors.** | § | |
| | § | |

### FEE AUDITOR'S FINAL REPORT REGARDING
### FEE APPLICATION OF KIRKLAND & ELLIS
### FOR THE SIXTEENTH INTERIM PERIOD

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Fee Application of Kirkland & Ellis for the Sixteenth Interim Period</u>.

### BACKGROUND

1.      Kirkland & Ellis ("K&E") was retained as counsel to the Debtors.  In the Application, K&E seeks approval of fees totaling $2,848,868.50 and costs totaling $162,848.11 for its services from January 1, 2005, through March 31, 2005.

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the

United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We served on K&E an initial report based on our review, and received a response from K&E, portions of which response are quoted herein.

## DISCUSSION

3.    In our initial report, we noted four hearings, meetings or conferences attended by multiple professionals.  (See Exhibit A.)  We asked K&E to examine the exhibit and in each instance explain the need for each professional's presence and the particular area of expertise each brought to the meeting.  K&E's response is provided as Response Exhibit 1.  We appreciate the response and generally concur with it.  However, for the March 3, 2005, conference, we do not believe the explanation sufficiently supports the necessity of both Mr. Chiou's ($245 per hour) and Mr. Mace's ($285 per hour) participation.  They spent a combined total of 3.3 hours in the conference for a combined billing of $852.50.  We therefore suggest a reduction of one-half that billing amount for a recommended reduction of $426.25 in fees.

4.    We noted three conference calls in which three or more professionals participated.  (See Exhibit B.)  We asked K&E to examine the exhibit and in each instance to explain the need for each professional's presence and the particular area of expertise each brought to the conference call.  K&E's response is offered as Response Exhibit 2.  We appreciate the response and have no objection to these fees.

5.    We noted that during the Application period,  TDS ($175), EAA($215), TJW ($140) and KKP ($180) spent a total of 113.40 hours for fees of $18,878.50 on file maintenance, document printing and distribution and other seemingly ministerial tasks.  (See Exhibit C.)  We asked the firm

to explain why these tasks should not be viewed as generally ministerial and therefore part of normal firm overhead.  K&E's response is provided as Response Exhibit 3.  While we appreciate the complexity of the case and the burden of documentation as noted in the response, we would maintain that most of the cited tasks (review of pleadings for filing, general organization and distribution, printing) are ministerial, or, at least could have been accomplished by professionals billing at much lower rates.   On the issue of adjusting rates downward for certain tasks, the Third Circuit seems fond, in the bankruptcy context, of quoting its opinion in Ursic v. Bethlehem Mines, 719 F.2d 670, 677 (3d Cir. 1983)that "[r]outine tasks, if performed by senior partners in large firms, should not be billed at their usual rates.  A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn."  See Zolfo, Cooper & Co.v. Sunbeam-Oster Co., Inc., 50 F.3d 253, 260 (3rd Cir. 1995).  While we realize that these timekeepers are not presented as senior partners nor billed as such, we believe the spirit of the Court's opinion would still apply in this instance. We thus recommend a reduction of $9,439.25, which represents one-half of the cited fees.

      6.      We noted six instances in which the time entries do not match the totals of the parenthetical entries.  (See Exhibit D.)  The total difference in stated fees is $9,148.50.  We asked the firm to examine the exhibit and to state whether these instances represent inadvertent miscalculations and should therefore be deducted from the fee total.  K&E's response is provided as Response Exhibit 4.  Upon review of the response, we concur with the suggested reductions and thus recommend a total reduction of $5,437.00 in fees for these entries.

      7.      We noted five meal entries totaling $1,235.90 that may be excessive.  The entries are provided as Exhibit E.  We recommend reasonable ceilings of $15 per person for breakfast, $25 per person for lunch and $50 per person for dinner.  We asked K&E to provide greater detail for each

entry. K&E's response is offered as Response Exhibit 5.   We appreciate the response and concur with the suggested reduction of $365.90 for these expenses.

8.      We noted two transportation charges which may be excessive.   The entries are provided below.

1/6/2005        54.05   Crown Coach - Local Transportation, Andrea L. Johnson

1/18/2005       140.80 Crown Coach - Overtime Transportation, Audrey P. Johnson

For the January 6 charge, we asked K&E to explain the purpose of the expense and how it directly relates to the estate.   For the January 18 charge, we asked the firm to explain why some less expensive means of transportation was not available.    K&E's response is provided as Response Exhibit 6.  We appreciate the response and offer no objection to these expenses.

## CONCLUSION

9.      Thus we recommend approval of fees totaling $2,833,566.00 ($2,848,868.50 minus $15,302.50) and costs totaling $162,482.21 ($162,848.11 minus $365.90) for K&E's services from January 1, 2005, through March 31, 2005.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____
          Warren H. Smith
          Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 1275
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 9th day of September, 2005.

_____
          Warren H. Smith

**SERVICE LIST**
<u>Notice Parties</u>

**The Applicant**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

**The Debtors**
David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**
Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**
Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**
Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 141
Wilmington, DE 19801

**United States Trustee**
Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

Exhibit A

1.    On January 21, 2005, nine (9) firm members attended a hearing.  The total time spent including any preparation and non-working travel time was 380.00 hours for a total fee of $202,309.50.   The entries are provided below.

| 01/10/05 | JSB | 4.50 | ..........; confer re trial preparation and related matters (.5); attend to issues re same (.4);.......... |
|----------|-----|------|------|
| 01/10/05 | BLS | 1.00 | Telephone conference with J. Friedland re status of hearing preparation and overall strategy discussions re contingency plans (.8);............. |
| 01/10/05 | JN | 2.60 | Conferences with J. Friedland re preparation for January hearings (2.5);............. |
| 01/11/05 | JF | 2.60 | .........; review and respond to numerous emails and voicemails, telephone conferences with associates re hearing preparation (1.2). |
| 01/11/05 | JSB | 4.20 | .........; participate in meeting with plan team re trial preparation (1.0);.......... |
| 01/11/05 | BLS | 1.40 | ............; telephone conference with bankruptcy team, D. Bernick, T. Freedman re preparation for 1/21 and 1/24 hearings (.8); follow-up telephone conference with T. Freedman re same (.2). |
| 01/11/05 | JN | 1.00 | Attend conference with team re January hearing preparations. |
| 01/11/05 | LS | 12.70 | .........; telephone conference with D. Bernick and team including follow-up with T. Freedman re preparation for January 21 hearing (1.1);............ |
| 01/11/05 | SFB | 1.50 | Telephone conference with Grace team re hearing preparation (.9); review hearing slides and presentation materials (.6). |
| 01/11/05 | ALJ | 7.70 | Prepare for and attend office conference with K&E team and D, Bernick re hearing preparation (1.0);........... |
| 01/11/05 | DMB | 2.00 | Conduct team telephone conference meeting (1.0);.......... |
| 01/11/05 | TLF | 1.00 | Conference call on hearing preparation. |

| 01/12/05 | JSB | 6.30 | Follow up re various outstanding issues for disclosure statement hearing (.7);............; organize materials and confer re preparation for 1/21 and 1/24 hearings (.8);......... |
| 01/12/05 | BLS | 2.10 | ........; telephone conference with J. Friedland re preparation of hearing binders for 1/21/05 hearing (.2);............ |
| 01/12/05 | JN | 5.90 | Conferences with J. Friedland, R. Bennett, and S. Bianca re preparation for January hearings (1.1);............; review cases re hearing preparation materials, prepare binder of cases cited organized by pleading and subject matter (2.5); review precedent for possible materials to be used at January hearings (.6). |
| 01/12/05 | SFB | 4.70 | Review and comment on slides for hearing (2.0); office conferences with J. Friedland, J. Nacca, and R. Bennett re same (2.7). |
| 01/13/05 | JF | 5.50 | ............; review and comment on D. Bernick hearing preparation materials (1.0);review cases in preparation for hearing (2.0); office conference with associates re same (1.0). |
| 01/13/05 | LS | 6.70 | ...........; assist in preparing hearing binders (.4). |
| 01/13/05 | ALJ | 9.00 | Review and revise disclosure statement objection charts and appendix binder. |
| 01/13/05 | DMB | 2.50 | Prepare for 1/21 hearing. |
| 01/14/05 | JF | 2.30 | Attention to hearing preparation, including hard material preparation. |
| 01/14/05 | JSB | 4.10 | ...........; confer re logistics re 1/21 hearing (.5). |
| 01/14/05 | BLS | 1.80 | Telephone conference with J. Nacca re authorities in preparation for 1/21 hearing (.3);...........; review binder of possible slides for 1/21/05 hearing before Judge Fitxgerald re plan and estimation issues (1.3). |
| 01/14/05 | JN | 15.50 | Review and highlight cases cited in pleadings re January hearings, prepare comprehensive binders re same, and prepare same for delivery to T. Freedman, D. Bernick, B. Spiegel, and J. Friedland (11.8); review cases cited in pleadings and |

|        |     |       | prepare binder of critical cases for D. Bernick (3.7). |
|--------|-----|-------|--------------------------------------------------------|
| 01/14/05 | TLF | 4.50 | Prepare for 1/21 hearing. |
| 01/15/05 | JF | 4.50 | Review cases in preparation for disclosure statement hearing. |
| 01/15/05 | JN | 4.20 | Review cases cited in pleadings and prepare critical cases binder for D. Bernick for disclosure statement hearing. |
| 01/16/05 | DMB | 5.00 | Prepare for 1/21 hearing. |
| 01/17/05 | JSB | 4.70 | Confer with plan team re hearing preparation (1.5); further confer with team re same (1.0); organize and review materials for hearing on disclosure statement (.5); confer re release and class claim issues and research for hearing (.5); confer with Pittsburgh counsel re preparation for hearing and follow up re same (.4); review meeting notes re hearing preparation and revise same (.5); review and revise hearing task list (.3). |
| 01/17/05 | BLS | 4.10 | ...........; telephone conference with D. Bernick, T. Freedman and plan team re preparation for 1/21 and 1/24 hearings before Judge Fitzgerald (.8);............. |
| 01/17/05 | JN | 9.50 | Attend team conference re January hearing preparation (.5); research re hearing preparation in response to follow-up questions of D. Bernick (5.5); conferences with R. Bennett and J. Friedland re preparation of slides for January hearings (.5); conference with team re hearing preparation (1.3);review notes from same and conference with A. Johnson re same (.3); prepare global index of cases cited in all pleadings re January hearings (1.2); conferences with A. Arundel and A. Johnson re index of key cases for January hearings (.2). |
| 01/17/05 | LS | 10.90 | Telephone conference with D. Bernick and team in preparation for Friday's disclosure statement hearing (.8); follow-up telephone conference with group (.6);............. |
| 01/17/05 | ALJ | 6.70 | Prepare for and attend office conference with D. Bernick and K&E team re hearing preparation (.8); prepare for and attend office conference with K&E team re same (.7); draft notes for circulation to team re both office conferences (3.2);........... |
| 01/17/05 | DMB | 8.50 | Team meeting (1.0); preparation for hearing (6.0);........... |

| | | | |
|---|---|---|---|
| 01/17/05 | TLF | 2.00 | Prepare for 1/21 hearing. |
| 01/18/05 | JSB | 5.80 | ...........; attend to matters in preparation for disclosure statement hearing (3.5). |
| 01/18/05 | BLS | 4.30 | Telephone conference with J. Friedland re status of various projects and deliverables re hearing preparation (.5);...........; review emails re further follow up re preparation for 1/21 hearing (.2);............. |
| 01/18/05 | JN | 16.70 | Research and draft inserts re hearing preparation memorandum (4.5); prepare slides for use at January hearings, conference with J. Friedland re same, and research and draft inserts re hearing preparation memorandum (7.5);...........; coordinate and review global index of cases cited in all pleadings re January hearings (.7). |
| 01/18/05 | DMB | 3.00 | Preparation for 1/21 hearing. |
| 01/18/05 | TLF | 2.50 | Conference on hearing preparation and insurance issues. |
| 01/19/05 | JF | 17.00 | Review presentation for disclosure statement hearing (1.5); comment on same (.5); office conference with J.Nacca and S. Bianca re hearing preparation (1.0); prepare for hearing (14.0). |
| 01/19/05 | JSB | 3.50 | Attend to matters re disclosure statement hearing (1.0); organize materials for disclosure statement hearing (2.0);........... |
| 01/19/05 | BLS | 6.50 | Prepare for hearings on 1/21 and 1/24 including review draft memorandum to D. Bernick re various questions (2.3); prepare revisions (1.0); telephone conference with J. Friedland and S. Bianca re same (1.5);............ |
| 01/19/05 | LS | 12.60 | ...........; telephone conference re hearing preparation (.8); preparation of discharge of disclosure outline for hearing (1.2); preparation of Insurance outline for hearing (2.1). |
| 01/19/05 | SFB | 14.90 | Research and draft memorandum re follow-up hearing preparation issues (13.6); various telephone conferences with J. Friedland, B. Spiegel and J. Nacca re same (1.3). |

| | | | |
|---|---|---|---|
| 01/19/05 | DMB | 6.00 | Preparation for 1/21/ hearing |
| 01/19/05 | TLF | 6.50 | Prepare for 1/21 hearing. |
| 01/20/05 | JF | 16.00 | Review and comment on slide presentation for disclosure statement hearing (3.0); prepare for same (13.0). |
| 01/20/05 | JSB | 6.50 | .........; review disclosure statement outline and objections in preparation for hearing on same (2.0); review and revise materials in preparation for disclosure statement hearing (4.0). |
| 01/20/05 | BLS | 10.30 | Prepare for 1/21/04 hearing re plan, disclosure statement and related motions, including conference with L. Sinanyan re negotiations with objecting parties (1.8); review materials en route to Pittsburgh (4.0); meeting and materials preparation with plan team in Pittsburgh (4.5). |
| 01/20/05 | JN | 9.50 | Draft memorandum re final hearing preparation issues and perform other work in preparation for hearing. |
| 01/20/05 | LS | 8.20 | .........; prepare for hearing (4.0); research miscellaneous issues in preparation for hearing (3.0). |
| 01/20/05 | SFB | 10.00 | Prepare for disclosure statement hearing |
| 01/20/05 | ALJ | 9.00 | Numerous office conferences, telephone conferences, and e-mail correspondence re hearing preparation (4.0);..........; research standards for addressing confirmation issues at the disclosure statement hearing (1.5). |
| 01/20/05 | DMB | 12.00 | Prepare for 1/21 hearing. |
| 01/20/05 | TLF | 7.50 | Prepare for and attend disclosure statement hearing. |
| 01/21/05 | JF | 8.50 | Preparation for and attend disclosure statement hearing. |
| 01/21/05 | JSB | 8.00 | Prepare for and attend disclosure statement hearing |
| 01/21/05 | BLS | 8.30 | Prepare for and appear at disclosure statement hearing. |
| 01/21/05 | JN | 7.50 | Prepare for and attend disclosure statement hearing. |
| 01/21/05 | LS | 8.50 | Meet and confer in preparation for hearing (1.5); attend |

|  |  |  | disclosure statement hearing (6.3); follow-up meeting after conclusion of hearing (.7). |
| --- | --- | --- | --- |
| 01/21/05 | SFB | 7.50 | Prepare for and attend disclosure statement hearing. |
| 01/21/05 | ALJ | 8.00 | Prepare for and attend hearing re certain confirmation issues, estimation, and disclosure statement approval (7.5);........... |
| 01/21/05 | DMB | 11.00 | Prepare for and attend disclosure statement hearing. |
| 01/21/05 | TLF | 8.50 | Prepare for and participate in disclosure statement hearing. |
| 01/19/05 | DMB | 1.50 | Travel to Pittsburgh, PA for disclosure statement hearing (billed at half-time) |
| 01/20/05 | JF | 2.00 | Travel to Pittsburgh, PA for disclosure statement hearing (billed at half-time) |
| 01/20/05 | JSB | 2.00 | Travel to Pittsburgh for hearing on disclosure statement and related issues (billed at half-time) |
| 01/20/05 | BLS | 2.00 | Travel to Pittsburgh for 1/20/05 hearing (billed at half-time) |
| 01/20/05 | JN | 2.50 | Travel to Pittsburgh, Pennsylvania for disclosure statement hearing (billed at half-time) |
| 01/20/05 | LS | 4.00 | Travel to Pittsburgh for disclosure statement hearing (billed at half-time) |
| 01/21/05 | JF | 2.50 | Travel from Pittsburgh, PA (billed at half-time) to Chicago for disclosure statement hearing. |
| 01/21/05 | JSB | 2.50 | Travel from Pittsburgh back to Chicago after disclosure statement hearing (billed at half-time). |
| 01/21/05 | BLS | 4.00 | Return travel from Pittsburgh to Los Angeles (billed at half-time). |
| 01/21/05 | JN | 2.50 | Travel from Pittsburgh, Pennsylvania in return from disclosure statement hearing (billed at half-time). |
| 01/21/05 | LS | 4.00 | Travel from Pittsburgh, PA after hearing (billed at half-time). |

| | | | |
|---|---|---|---|
| 01/21/05 | SFB | 2.50 | Return travel from disclosure statement hearing in Pittsburgh., PA (billed at half-time). |
| 01/21/05 | DMB | 1.50 | Return travel from disclosure statement hearing in Pittsburgh (billed at half-time). |

2.  On February 25, 2005, six (6) firm members (five partners and one associate) attended a meeting. The total time spent including any preparation and non-working travel time was 51.80 hours for a total fee of $31,283.50.  The entries are provided below.

| | | | |
|---|---|---|---|
| 02/24/05 | JF | 5.10 | ..............; office conference with D. Bernick, J. Donley, and B. Harding re preparation for 2/25/05 meeting (2.0); prepare for meeting, including CMO and Questionnaire review, transcript review, and review D. Bernick's voicemails (2.5). |
| 02/24/05 | JSB | 1.00 | Confer re upcoming PD and PI CMO meetings and issues re same (.5);........... |
| 02/24/05 | DMB | 1.00 | Conduct meeting with J. Friedland, J. Donley and B. Harding re preparation for PD and PI meeting on 2/25/05. |
| 02/24/05 | JD | 5.90 | Working travel to DC including review of briefs, transcripts, and Questionnaire materials in preparation for PD and PI meeting. |
| 02/24/05 | BMH | 3.00 | Attend meeting with D. Bernick, J. Donley and J, Friedland to discuss personal injury claims (1.5); review Grace bankruptcy documents re preparation for meeting with committee (1.5). |
| 02/25/05 | JF | 4.90 | Confer with J. Baer in preparation for meeting (.7); meeting with PD and PI committees (4.2). |
| 02/25/05 | JSB | 5.20 | Confer with counsel for PD claimants re PD CMO and related issues (1.5); follow up conference re same (.5); confer with counsel for PI committee and futures rep re PI CMO and Questionnaire (2.0);........... |
| 02/25/05 | ALJ | 2.80 | Prepare for and attend office conference with J. Baer, D. Bernick, J. Friedland, B. Harding, R. Finke and J. Sakalo re asbestos property damage estimation case management order (1.1);................... |

| 02/25/05 | DMB | 7.50 | Preparation for and conduct meetings with Committee counsel re case management orders. |

| 02/25/05 | JD | 7.40 | Prepare for conference with PD Committee (.7); conference with PD Committee counsel, S. Baena and K&E team (D. Bernick, J. Baer, J. Friedland) (1.2);conferences with K&E team (D. Bernick, B. Harding, J, Baer, J. Friedland) re CMO issues (.4); review documents in preparation for PI Committee meeting (.5); conference with P. Lockwood, R. Frankel, et al. re PI CMO and Questionnaire issues (1.6); return travel to Chicago reviewing miscellaneous case documents en route (3.0). |

| 02/25/05 | BMH | 5.20 | Preparation for meeting re Grace PD and PI issues (1.5); meetings re PD and PI case management orders with J, Hughes, D. Bernick, J. Donley, J. Baer, and J. Friedland (2.0);.......... |

| 02/24/05 | JF | 2.00 | Travel to Washington, DC for CMO meetings (billed at half-time). |

| 02/24/05 | JSB | 2.00 | Travel to Washington, DC for meetings with PI and PD committee re CMO's for estimation (billed at half-time). |

| 02/25/05 | JF | 2.50 | Return travel to Chicago from meetings (billed at half-time). |

| 02/25/05 | JSB | 2.00 | Travel from Washington, DC back to Chicago after PI and PD meetings (billed at half-time). |

3.  On March 14, 2005, JF, JSB and JD (all partners) attended a meeting in Boca Raton, FL.  The total time spent including any preparation and non-working travel time was 22.40 hours for a total fee of $13,401.00.  The entries are provided below.

| 03/13/05 | JF | 6.00 | ..............; prepare for PD meeting in Boca Raton, FL (2.0). |

| 03/13/05 | JD | 2.20 | Prepare for client meeting re PD protocol, reviewing various PD documents. |

| 03/14/05 | JF | 6.80 | ...........; conference with R. Finke re PD claims (2.5);.............. |

| 03/14/05 | JSB | 5.60 | ...........; participate in meeting at Grace re PD claims (3.0);.......... |

| 03/14/05 | JD | 6.00 | ...........; conference with R. Finke and team re PD issues and strategy (3.0). |
| 03/14/05 | JF | 1.70 | Travel to Florida for PD meeting (billed at one-half time). |
| 03/14/05 | JSB | 4.50 | Travel from Chicago to Florida for meeting with Grace staff re PD objections (1.5); (billed at one half time); travel from Boca Raton back to Chicago after PD meeting (long flight delays)(billed at one half time) (3.0). |
| 03/14/05 | JD | 3.50 | Travel to/from Boca Raton for client meeting (billed at one-half time). |

4.   On March 3, 2005, four (4) firm members (two partners and two associates) attended a conference.  The total time spent including any preparation time was 5.70 hours for a total fee of $2,108.50.  The entries are provided below.

| 03/03/05 | TDM | 5.50 | ..............; conference with W. Jacobson (1.1);........... |
| 03/03/05 | CCC | 6.90 | ...........; conference with W. Jacobson, T. Mace, and counsel for three of the individual defendants re preparation for March 9, 2005 scheduling conference (2.2);........... |
| 03/03/05 | WBJ | 4.00 | ...........; conference with counsel for two individual targets and others re same (1.3);............. |
| 03/03/05 | LAU | 6.50 | ..........; conferences with counsel for individual target re status; work on discovery requests (1.1);............ |

Exhibit B

1.  On January 31, 2005, four (4) firm members participated in a conference call.  The total time spent including any preparation time was 4.10 hours for a total fee of $1,691.50.  The entries are provided below.

| 01/31/05 | JF | 3.00 | ..............; telephone conference with R. Finke, J. Baer, A. Johnson, and J. Nacca re PD work plan (1.0). |
|---|---|---|---|
| 01/31/05 | JSB | 1.30 | .......; confer with R. Finke re PD claims approach (.7). |
| 01/31/05 | JN | 4.30 | ..........; conference with J. Friedland, J. Baer, R. Finke, and A. Johnson re property damage claims process going forward (1.3). |
| 01/31/05 | ALJ | 1.50 | ..........; prepare for and attend office and telephone conference with R. Finke, J. Baer, J. Friedland, S. Blatnick, S. Bianca and J. Nacca re PD estimation hearing (1.1) |

2.  On January 6, 2005, six (6) firm members participated in a conference call.  The total time spent including any preparation time was 6.90 hours for a total fee of $3,234.50.  The entries are provided below.

| 01/06/05 | JSB | 9.70 | ...........; participate in meeting with Committees re all plan related documents and briefs (1.0);......... |
|---|---|---|---|
| 01/06/05 | BLS | 6.50 | ..........; review emails with edits of draft brief and reply documents in preparation for telephone conference with Equity Committee and GUC Committee counsel and client for collection of comments and feedbacks (.5); prepare for and participate in telephonic conference re same (1.0). |
| 01/06/05 | JN | 16.60 | .........; attend team conference re pleadings for January hearings (1.1). |
| 01/06/05 | LS | 13.80 | .........; telephone conference with General Unsecured and Equity Committees and client (.8). |
| 01/06/05 | ALJ | 14.60 | .............; prepare for and attend office conference with K&E team re briefs (1.0). |
| 01/06/05 | SB | 7.20 | Conference call with client and creditors' committee re plan documents (1.5);............ |

3.  On February 18, 2005, five (5) firm members (four partners and one associate) participated in a conference call.  The total time spent including any preparation time was 8.30 hours for a total fee of $4,346.00.  The entries are provided below.

| | | | |
|---|---|---|---|
| 02/18/05 | JF | 3.20 | Telephone conference with Client, A. Blackman, J. Donley, S. Bianca and J. Baer re PI Questionnaire and notice (1.4); prepare for telephone conference (.5);........... |
| 02/18/05 | JSB | 4.00 | ...........; review PI proof of claim and related materials and participate in call with Grace, consultants and counsel re comments re same (1.7);.............. |
| 02/18/05 | SFB | 6.60 | ............; telephone conference with J. Hughes, R. Finke, A. Brockman, J. Friedland, J. Baer, J. Donley, and E. Leibenstein re PI Questionnaire, Notice of Questionnaire, PI estimation case management order (1.7); prepare for same (.3);.............. |
| 02/18/05 | JD | 2.10 | ............; conference call with client, J. Baer, E. Leibenstein and team re Questionnaire and CMO (.7). |
| 02/18/05 | EL | 2.00 | Prepare for and participate in telephone conference re questionnaire. |

Exhibit C

January

| 01/03/05 | TJW | 6.20 | .........; review newly filed pleadings and update central files re same (1.5);........... |
| 01/06/05 | TJW | 3.00 | .........; review newly filed pleadings and update central files re same (1.5). |
| 01/0/05 | TJW | 4.50 | ...........; review 2019 statements and update files re same (2.0);............ |
| 01/12/05 | TJW | 8.00 | .........; review newly filed pleadings and update central files re same (.5). |
| 01/20/05 | TJW | 4.00 | .........; review newly filed pleadings and update central files re same (1.0);........... |
| 01/21/05 | TJW | 2.50 | .........; review newly filed pleadings and update central files re same (.5). |
| 01/28/05 | TJW | 3.00 | Review newly filed pleadings and update central files re same (1.0);................. |
| 01/19/05 | KKP | 5.50 | Organize hearing supplies for team (.5); prepare and organize hearing materials (5.0). |

February

| 02/02/05 | TJW | 4.00 | .........; review newly filed pleadings and update central files re same (.5). |
| 02/07/05 | TJW | 6.00 | .........; review newly filed pleadings and update central files re same (1.5). |
| 02/09005 | TJW | 4.00 | ...........; review newly filed pleadings and update central files re same (1.0). |
| 02/11/05 | TJW | 3.00 | .........; review newly filed pleadings and update central files re same (1.0). |
| 02/16/05 | TJW | 5.00 | .........; review newly filed pleadings and update central files |

| | | | re same (1.5);........... |
|---|---|---|---|
| 02/21/05 | TJW | 6.00 | ........; review newly filed pleadings and update central files re same (1.5);............. |
| 02/24/05 | TJW | 3.00 | Review newly filed pleadings and update central files re same (1.0);................ |
| 02/04/05 | TDS | 3.50 | Update case files (1.5);............... |
| 02/07/05 | TDS | 2.00 | Update case files (.7); organize indictment coverage articles (1.3). |
| 02/08/05 | TDS | 2.00 | Update case files (.5); update key documents in CaseMap (1.5). |
| 02/09/05 | TDS | 2.00 | Update case files and player's list (1.0); prepare case files for W. Jacobson (1.0). |
| 02/14/05 | TDS | 6.50 | Prepare documents in chronology per C. Chiou. |
| 02/15/05 | TDS | 7.50 | Prepare documents for chronology per C. Chiou. |
| 02/16/05 | TDS | 7.50 | Prepare documents cited in Chiou chronology (4.5);.............. |
| 02/17/05 | TDS | 6.00 | Prepare documents in grand jury indictment (2.5); prepare documents cited in Wood debriefing memo (2.0); update case files (1.5). |
| 02/18/05 | TDS | 7.50 | Prepare documents cited in grand jury indictment per T. Mace (5.5);................ |

March

| | | | |
|---|---|---|---|
| 03/14/05 | EAA | 1.40 | Review and organize pleadings and correspondence for incorporation into the Grace files. |
| 03/02/05 | TJW | 5.50 | ........; review and analyze newly filed pleadings and update central files re same (1.5);.............. |
| 03/07/05 | KKP | 0.50 | Search, retrieve, and organize pleadings. |

| | | | |
|---|---|---|---|
| 03/07/05 | TJW | 6.00 | .........; analyze and file attorney work product re disclosure statement hearing (3.5);............. |
| 03/08/05 | TJW | 7.00 | Review and analyze newly filed pleadings and update central files re same (1.5);............... |
| 03/09/05 | KKP | 3.00 | Search, retrieve, and organize pleadings (1.0);.............. |
| 03/11/05 | TJW | 1.50 | .........; review and analyze newly filed pleadings and update central files re same (1.0). |
| 03/14/05 | TJW | 4.00 | .........; review newly filed pleadings and update central files re same (1.5);........... |
| 03/16/05 | TJW | 6.50 | .........; review newly filed pleadings and update central files re same (.5). |
| 03/17/05 | TJW | 3.00 | ............; review newly filed pleadings and update central files re same (.5). |
| 03/22/05 | KKP | 2.00 | ...............; search, retrieve, and organize hearing transcripts and property damage pleadings (1.0). |
| 03/22/05 | TJW | 5.00 | Review newly filed pleadings and update central files re same (1.5);............... |
| 03/25/05 | TJW | 3.00 | ............; review newly filed pleadings and update central files re same (1.0);............... |
| 03/29/05 | TJW | 5.00 | ............; review omnibus status chart and update central files re same (1.0);............... |
| 03/30/05 | TJW | 4.00 | ............; review newly filed pleadings and update central files re same (1.0);............... |
| 03/31/05 | KKP | 1.00 | Search, retrieve, and organize Owens Corning pleadings. |
| 03/09/05 | TDS | 6.80 | Prepare documents re all defendants' target summary documents (4.8); update case files (2.0). |
| 03/15/05 | TDS | 7.50 | Update case files (3.0); prepare defendants' master target summery documents (4.5). |

| 03/16/05 | TDS | 6.50 | Prepare defendants' master target summary documents. |
| 03/18/05 | TDS | 7.50 | ...........; prepare documents for client per T. Mace (2.0). |
| 03/24/05 | TDS | 6.00 | ..........; prepare relevant documents for joint defense counsel (2.5); prepare additional depositions for imaging (1.7). |
| 03/28/05 | TDS | 4.00 | Update case files (2.0);............ |
| 03/30/05 | TDS | 7.00 | ...........; organize case files (2.5). |

Exhibit D

1.  On January 11, 2005, SFB has a time entry listed as 5.60 hours for a total fee of $2,352.00.  The points only total to 2.00 hours for a total fee of $840.00.  Difference in fee total is $1,512.00.

| 01/11/05 | SFB | 5.60 | Review claims estimation case law (.4); review objections to estimation motion (1.6). |

2.  On January 19, 2005, ALJ has a time entry listed as 9.80 hours for a total fee of $2,744.00.  The points only total to 9.60 hours for a total fee of $2,688.00.  Difference in fee total is $56.00.

| 01/19/05 | ALJ | 9.80 | Prepare for and attend numerous office conferences, telephone conferences, and e-mail correspondence re hearing preparation (2.8); draft, review and revise trust fund charts for hearing (1.5); review disclosure statement objection withdrawal binder (.5); research testimony on asbestos claims before Congress, estimation of aggregate claims and caps in asbestos cases and non-asbestos cases (4.8). |

3.  On January 6, 2005, JSB has a time entry listed as 9.70 hours for a total fee of $6,644.50.  The points only total to 7.70 hours for a total fee of $5,274.50.  Difference in fee total is $1,370.00.

| 01/06/05 | JSB | 9.70 | Review all draft reply briefs and revised disclosure statement and attend to issues re same (4.0); participate in meeting with Committees re all plan related documents and briefs (1.0); review numerous correspondence re Sealed Air issue and attend to matters re same (1.0); conference with Canadian counsel re amendments to documents re Canadian issues (1.0); participate in call with clients re Sealed Air issues (.5); confer re creditor committee issues (.5); confer with Committees re same (.4); revise disclosure statement and plan (1.5); confer re filing issues re all documents and related issues (.8). |

4.  On January 12, 2005, RBB has a time entry listed as 12.80 hours for a total fee of $5,376.00.  The points only total to 4.70 hours for a total fee of $1,974.00.  Difference in fee total is $3,402.00.

| 01/12/05 | RBB | 12.80 | Continue reviewing, revising and editing hearing preparation materials (.9); including multiple conferences with J. Friedman re same (3.8). |

5.  On January 14, 2005, RBB has a time entry listed as 9.20 hours for a total fee of $3,864.00.  The points only total to 2.90 hours for a total fee of $1,218.00.  Difference in fee total is $2,646.00.

| | | | |
|---|---|---|---|
| 01/14/05 | RBB | 9.20 | Continue review, edit and revise hearing preparation materials re estimation and case management (.7); office conference and telephone conferences with J. Friedland re same (2.2). |

6.  On January 20, 2005, TDM has a time entry listed as 8.50 hours for a total fee of $2,422.50.  The points only total to 8.00 hours for a total fee of $2,280.00.  Difference in fee total is $162.50.

| | | | |
|---|---|---|---|
| 01/20/05 | TDM | 8.50 | Draft and revise appeal submission (7.0); telephone conference with L. Urgenson re same (.5); telephone conferences with M. Grummer re same (.5). |

Exhibit E

| 1. | 1/12/2005 | 239.00 | Ryan Bennett, Working Group Meal/K&E Only, Chicago, IL, 01/12/05, (Meeting), conference lunch meeting for 6 |
| 2. | 1/4/2005 | 345.30 | Samuel Blatnick, Working Group Meal/K&E Only, Chicago, IL, 01/04/05, (Meeting for 8) |
| 3. | 1/25/05 | 240.00 | FESTIVE FOODS - Working Meals/K&E and Others LUNCH FOR 8 PEOPLE WITH LARRY URGENSON IN 12NW. MEETING HELD ON 1/21/05 |
| 4. | 1/25/05 | 171.60 | FESTIVE FOODS - Working Meals/K&E and Others BREAKFAST FOR 8 PEOPLE W/LARRY URGENSON ON 1/21/05 MEETING HELD IN 12NW |
| 5. | 2/12/05 | 240.00 | FESTIVE FOODS - Working Meals/K&E and Others LUNCH FOR 8 PEOPLE W/TYLER MACE IN 12NW. MEETING HELD ON 2/10/05. |

Response Exhibit 1

The Initial Report requests greater explanation concerning attendance at (a) a January 21, 2005 hearing; (b) a February 25, 2005 meeting; (c) a March 14, 2005 meeting; and (d) a March 3, 2005 conference.

(1)    January 21, 2005 Hearing

The January 21, 2005 hearing was the culmination of the Debtors' initial overall efforts to confirm a plan of reorganization. The Debtors filed their amended Plan and Disclosure Statement on January 13, 2005. In addition to filing the amended Plan and Disclosure Statement, the Debtors filed several related documents, including motions for estimation of asbestos liabilities, motions for case management orders regarding asbestos liabilities and responses to objections filed to the Disclosure Statement and Plan (the "Plan Documents"). All of these matters were set to be heard at the January 21, 2005 hearing. Therefore, it was necessary that the principal K&E attorneys who developed the Plan Documents (and would be responsible for any future changes and/or revisions to or inquiries about the Plan Documents) prepare for and attend this hearing.

I (JSB) am the K&E restructuring partner who oversees these Chapter 11 cases generally and my participation at the hearing was necessary to address the Debtors' overall position on the Plan Documents, as well as other matters that were up for hearing. David M. Bernick (DMB), the lead litigation partner in the cases, presented and argued the substantive merits of the Plan Documents, addressing all objections thereto. Bennett L. Spiegel (BLS), Theodore L. Freedman (TLF) and Jonathan Friedland (JF) are three restructuring partners that were intimately involved in various aspects of the preparation of the Plan Documents. They each supervised distinct aspects and collectively, their expertise and participation were necessary at the January hearing to assure all aspect of the Plan Documents were adequately addressed. Specifically, Bennett L. Spiegel (BLS) and Jonathan Friedland (JF) helped develop and draft the Plan itself. As the partners coordinating a great deal of such drafting, the participation of one or both of Mr. Spiegel and Mr. Friedland was necessary at the hearing. Additionally, Theodore L. Freedman (TLF) was involved in developing the Plan structure and addressing objections thereto. As detailed in the Response to the Fourteenth Fee Report, Mr. Freedman has worked for many years on asbestos-related bankruptcy cases, and his contribution at the hearing involved his vast expertise in mass-tort bankruptcy issues.

Lori Sinanyan (LS) and Andrea L. Johnson (ALJ) are both K&E associates who were heavily involved in drafting the Plan Documents. Their attendance at the hearing was necessary to address any specific legal and follow-up issues related to the Plan Documents. Salvatore F. Bianca (SFB) and Joseph Nacca (JN), along with Andrea L. Johnson (ALJ), are K&E associates who were heavily involved in drafting the responses to objections to the Plan Documents. Their attendance at the hearing was necessary to address issues related to the objections. Because of the complexity of the issues involved and the short time period in which the Debtors had to respond and file all the necessary documents, it was crucial that each of the above-named attorneys, working collectively, be involved and each handled their own distinctive portions related to the Plan Documents.

(2)    February 25, 2005 Meeting

At the January 21, 2005 hearing, the Bankruptcy Court ordered that the Debtors meet and work with the Property Damage (PD) Committee and the Personal Injury (PI) Committee to negotiate and agree upon relevant case management orders (CMO) and the PI questionnaire. An in-person meeting in this regard took place on February 25, 2005. The time inquiries in question in the Initial Report related to preparation time on February 24 and the meeting itself on February 25. My attendance at the meeting was necessary because, as indicated in A(1) above, I am in charge of the overall management of these Chapter 11 cases. Furthermore, I have established a relationship with PD and PI Committee counsel and certain of their members through my dealings with them throughout the course of these Chapter 11 cases, and I have consistently been responsible for communications and negotiations with the PD and PI Committees. David M. Bernick (DMB) was required to attend the meeting at the behest of the Bankruptcy Court as he is the lead litigation attorney in these cases and responsible for the Plan Documents overall. The three other partners that were in attendance at the meeting also were necessary as each played their own crucial and distinct role. Jonathan Friedland (JF) is a restructuring partner in charge of preparing and negotiating the PI Questionnaire; Barbara M. Harding (BMH) is a litigation partner in charge of the litigation aspects of the PI Estimation, including preparing and negotiating the PI CMO; and John Donley (JD) is a litigation partner in charge of the litigation aspects of the PD Estimation, including preparing and negotiating the PD CMO. Additionally, Andrea L. Johnson (ALJ), a bankruptcy associate, assisted with the research and drafting of the PD and PI CMO, and preparation for the meeting. The PI CMO, the PD CMO, and the PI Questionnaire are critical components of the Debtors' estimation process and overall Plan and Disclosure Statement.

(3)    March 14, 2005 Meeting

The March 14, 2005 meeting was an in-person meeting necessary to coordinate efforts between the Debtors and the K&E attorneys working in these Chapter 11 cases. Specifically, in-house counsel and other individuals working for the Debtors in Boca Raton, FL had previously worked on and analyzed the PD claims filed in these Chapter 11 cases. In order to negotiate and then execute upon the PD CMO, to discuss how to approach the PD claims, and to exchange and coordinate views and approaches, the K&E attorneys responsible for those matters met with the Debtors' in-house counsel and other employees. I was in attendance as I am the attorney in charge of the overall day-to-day management of these Chapter 11 cases and, because of my lengthy involvement in these cases, I have a working relationship with the Debtors' in-house legal team. John Donley (JD) was in attendance as the litigation partner in charge of preparing and executing upon the PD CMO. Jonathan Friedland (JF) was in attendance because he took on the role of working with and supervising BMC, our claims consultant, in the actual data review and database analysis of the PD claims filed in these Chapter 11 cases. This data review includes review and analysis of each PD claim filed, along with data coding each such PD claim for objections which K&E intends to file on behalf of the Debtors.

(4)    March 3, 2005 Conference

The March 3, 2005 conference related to a meeting among K&E attorneys involved with the defense of the Debtors and certain of the Debtors' officers related to the indictment in Libby, Montana.  The purpose of the meeting was to coordinate the defense of Grace and the individual targets of the indictment in advance of an upcoming meeting with the US Attorney who brought the suit.  K&E has been charged with coordinating these efforts on behalf of all the defendants involved. Laurence A. Urgenson (LAU) is the primary K&E partner responsible for overseeing K&E's work related to this matter, rendering his participation at the conference critical.  William B. Jacobson (WBJ) is a litigation partner experienced in criminal matters who is in charge of day-to-day management and coordination of the defense efforts, including preparing various filings and working with the associates on the matter.  Christopher Chiou (CCC) is the junior associate at K&E who is primarily responsible for drafting pleadings, as well as document review and factual development, to support the K&E partners handling the matter.  Tyler D. Mace is the principle litigation association working with Mr. Urgenson in handling the day-to-day affairs related to this matter, as well as working on document review and factual development.

Response Exhibit 2

The Initial Report requests greater explanation concerning time billed for conference calls that took place on January 31, January 6, and February 28, 2005, respectively.

      (1)     January 31, 2005 conference call

As stated in A(3) above, Jonathan Friedland (JF) took on the role of working with and supervising BMC in the actual data review and database analysis of the PD claims filed in these Chapter 11 cases so that K&E may prepare objections to the PD claims. As part of this responsibility, Jonathan Friedland (JF) was also responsible for coordinating and reviewing all the legal research performed in connection to each objection to the PD claims and the defenses anticipated. Andrea L. Johnson (ALJ) and Joseph Nacca (JN) were the bankruptcy associates who actually completed all of the research. I, as stated above, am in charge of the overall day-to-day management of these Chapter 11 cases. Therefore, it was necessary that we meet as a group to discuss overall issues related to preparing these objections and coordinating our efforts with respect to the same.

      (2)     January 6, 2005 conference call

The January 6, 2005 conference call concerned matters that pertained to the Debtors' Plan Documents as described in 1(A) above. The Debtors filed their amended Plan and Disclosure Statement on January 13, 2005. At the time of this conference call, K&E was at a critical stage in the preparation of the Plan Documents, requiring extensive coordination among the attorneys working on the Plan Documents. Additionally, the General Unsecured Creditors (GUC) Committee and the Equity Committee agreed to become proponents of the amended Plan and K&E was coordinating comments, drafts and other matters prior to the January 13, 2005 filing.

K&E made the decision that, in the weeks leading up to the filing of the Plan Documents, the most cost-effective way to coordinate among the principal K&E attorneys responsible for completing the Plan Documents was for such attorneys to participate in a series of conference calls, thereby eliminating the inefficiency and expense of individual attorneys trying to coordinate with numerous other attorneys in piecemeal fashion while attempting to develop a set of documents that would reflect a single, unified vision of reorganization. Each of the participants in the January 6, 2005 conference call related to the Plan Documents was an important member of the K&E team responsible for drafting the Plan Documents, and therefore each person's participation on the call was necessary. The roles of the various K&E attorneys about whose participation in the conference call you have inquired is described in A(1) above.

   (3)  February 25, 2005 conference call

  As stated in A(2) and A(3) above, Jonathan Friedland (JF) is a restructuring partner in charge of preparing and negotiating the PI Questionnaire and the day-to-day data review of the PD claims in preparation for objections thereto. John Donley (JD) is a litigation partner in charge of litigating PD related issues including preparing and negotiating the PD CMO. I am the partner in charge of the overall day-to-day management of these Chapter 11 cases. We each participated in part of a conference call with the Grace in-house legal team to coordinate efforts on these documents. In addition, Salvatore F. Bianca (SFB) participated on this conference call because he performed all the research with respect to PI related matters and was the associate coordinating K&E's efforts with respect to the PI Questionnaire and CMO. Finally, Elli Liebenstein's participation was important as he is the K&E litigation partner who is the resident expert with respect to estimation, particularly including having worked with experts in other bankruptcies on the subject. His background and knowledge, as well as continued participation with our experts in these Chapter 11 cases, is crucial to the overall estimation and Plan put forth by the Debtors.

Response Exhibit 3

The Initial Report requests further explanation as to why a number of the tasks performed by K&E legal assistants should not be viewed as generally ministerial and therefore part of normal firm overhead.  Because of the extraordinary complexity of the W. R. Grace bankruptcy cases, the matter continues to generate an uncommonly voluminous amount of documentation related not only to typical bankruptcy issues, but also to matters dealing with the myriad of asbestos-liability issues and other litigation issues.  It is essential that the files, records, and research materials generated in this case be retrieved, organized, and distributed by K&E legal assistants in such a manner as to allow K&E attorneys to react expediently and efficiently to any matters that arise, particularly those involving asbestos liability.  Additionally, K&E legal assistants are often asked to assist attorneys with review of these materials in order to organize them in a fashion that will most effectively assist the K&E attorneys working on the Grace bankruptcy.  If not for the work of these assistants, K&E attorneys would be forced to do much if not all of these tasks at a much higher billable rate.  As such, K&E believes that performing the tasks referenced on Exhibit C to the Initial Report requires work of a far more demanding nature than would the merely ministerial functions that constitute K&E's normal firm overhead and far less cheaply than if such tasks were to be performed by the attorneys.

Response Exhibit 4

The Initial Report identifies six instances in which the summary of hours differs from the totals of the parenthetical time entries.

      (1)     SFB Time Entry of January 11, 2005

Sal Bianca ("SFB") billed 5.60 hours to matter 21 on 1/11/05, but the time breakdown contains an error. The original time records show that the '(.4)' should actually be '(4.0).' K&E therefore does not agree to this reduction.

      (2)     ALJ Time Entry of January 19, 2005

Andrea Johnson ("ALJ") billed 9.80 hours to matter 37 on 1/19/05, but the time breakdown contains an error. The original time records show that the '(4.8)' should actually be a '(5.0).' K&E therefore does not agree to this reduction.

      (3)     JSB Time Entry of January 6, 2005

The time entry objected to appears to be a duplicate of another entry under another matter number. K&E, therefore, will agree to a reduction of $5,274.50.

      (4)     RBB Time Entry of January 12, 2005

Ryan Bennett ("RBB") billed 12.80 hours to matter 37 on 1/12/05, but the time breakdown contains an error. The original time records show that '(.9)' should actually be '(9.0).' K&E therefore does not agree to this reduction.

      (5)     RBB Time Entry of January 14, 2005

RBB billed 9.20 hours to matter 37 on 1/14/05, but the time breakdown contains an error. The original time records show that the '(.7)' should actually be '(7.0).' K&E therefore does not agree to this reduction.

      (6)     TDM Time Entry of January 20, 2005

Tyler Mayce ("TDM") billed 8.50 hours to matter 57 on 1/20/05 but his time entry was miscalculated. K&E, therefore, will agree to this reduction of $162.50.

Therefore, K&E agrees that the respective time entries should be reduced as noted above in the aggregate amount of $5437.00.

Response Exhibit 5

The Initial Report questions whether the cost of five (5) working meals was excessive and requests further detail for each of the entries.

The first meal ($239.00, billed on January 12, 2005) represents the cost of a working lunch in Chicago on January 12, 2005, for six people.  The cost of the meal was $39.83/person.  In accordance with the recommended ceiling of $25/person for lunch, K&E agrees that $89.00 should be stricken from its bill.

The second meal ($345.30, billed on January 4, 2005) represents the cost of a working lunch in Chicago on January 4, 2005, for eight people.  The cost of the meal was $43.16/person.  In accordance with the recommended ceiling of $25/person for lunch, K&E agrees that $145.30 should be stricken from its bill.

The third meal ($240.00, billed on January 25, 2005) represents the cost of a working lunch in Washington, D.C. on January 25, 2005, for eight people.  The cost of the meal was $30.00/person.  In accordance with the recommended ceiling of $25/person for lunch, K&E agrees that $40.00 should be stricken from its bill.

The fourth meal ($171.60, billed on January 25, 2005) represents the costs of a working breakfast in Washington, D.C. on January 25, 2005, for eight people.  The cost of the meal was $21.45/person.  In accordance with the recommended ceiling of $15/person for breakfast, K&E agrees that $51.60 should be stricken from its bill.

The fifth meal ($240.00, billed on February 12, 2005) represents the cost of a working lunch in Washington, D.C. on February 12, 2005, for eight people.  The cost of the meal was $30.00/person.  In accordance with the recommended ceiling of $25/person for lunch, K&E agrees that $40.00 should be stricken from its bill.

Therefore, K&E agrees to a reduction in its working meal expenses of $365.90.

Response Exhibit 6

The Initial Report questions whether two (2) overtime transportation charges (Crown Coach charges in the amounts of $54.05 and $140.80 on January 6 and 18, 2005 for Andrea L. Johnson and Audrey P. Johnson, respectively) may be excessive.  On the morning of January 6, 2005, public transportation was halted due to a heavy snowstorm in Chicago.  Andrea Johnson had no other means of transportation to the office other than a car service for which this is the standard charge. It was imperative that she was not delayed in reaching the office early that morning as one of the Plan Documents for which she was the primary drafter was being filed that day.  The overtime transportation charge for Audrey P. Johnson relates to car service transportation home for on January 18, 2005.  On the day in question, Audrey P. Johnson, a secretary in the restructuring group who was required to work overtime on the Plan Documents, was traveling home after 9 pm in the evening. Pursuant to firm policy, individuals that work past 9 pm are entitled to take a "Crown Car" home. Audrey P. Johnson took a car to her home.  This is consistent with the Retention Order and the engagement agreement between K&E and the Debtors.