# EXHIBIT "C"

Case 01-01139-AMC    Doc 9382-4    Filed 09/09/05    Page 1 of 20

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JJF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**DEBTORS' MOTION FOR LEAVE TO FILE OMNIBUS REPLY TO VARIOUS OBJECTIONS TO THE DEBTORS' MOTION FOR ENTRY OF CASE MANAGEMENT ORDER, ESTABLISHMENT OF A BAR DATE, APPROVAL OF THE PROOF OF CLAIM FORMS AND APPROVAL OF THE NOTICE PROGRAM (RE: DOCKET NO. 545)**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), hereby request authority to file an omnibus reply (the "Omnibus Reply") pursuant to Del.Bankr.LR 9006-1(d) and D.Del.LR. 7.1.3(a)(D) in further support of the *Motion For Entry of a Case Management Order, Establishment of a Bar Date, Approval of the Proof of Claim Forms and Approval of the Notice Program* (the "Motion"), which Motion is currently pending before the Court and set for hearing on November 21, 2001 at 12:00 p.m.

Various creditors and official committees appointed in these chapter 11 cases have filed objections and responses to the Motion. The Debtors seek to file the Omnibus Reply for the purpose

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

No. 1106

### *Pulmonary Function Tests*

PFTs are the best tool to determine whether an asbestos claimant has a physical impairment. Put simply, PFTs measure a subject's lung capacity to determine levels of breathing obstruction. But such tests are reliable only if performed accurately, and they are particularly subject to manipulation. For this reason, the ATS has issued comprehensive standards governing PFTs.[40] Inaccurate or poorly performed tests can result in improper diagnoses. Where the quality of a test is suspect, any dysfunction shown on the test "should only indicate the need for more definitive testing," and the physician should "avoid specific diagnostic statements."[41]

Pulmonary function tests need to be scrutinized even more closely in the litigation context because proper performance of the tests require full patient cooperation and effort. "Variability is greater in pulmonary function tests than in most other laboratory tests because of the need for consistent patient effort. Therefore, proper testing and valid results require an expert technician, as well as the patient's full cooperation and ability to understand and perform the test correctly.[42] Because the test is so dependent on the cooperation of the patient, the ATS cautions that "[t]he effort-dependent spirogram must be carefully scrutinized for quality."[43]

In order to survive a *Daubert* challenge, claimants relying on pulmonary function tests must demonstrate that those tests were conducted in a reliable and accurate fashion, in conformance with the well-accepted standards established by the ATS. Qualified experts, with knowledge of the

---

[40] ATS, *Lung Function Testing: Selection of Reference Values and Interpretative Strategies*, AM. REV. RESP. DIS. 144:1202-18, 1211 (1991).

[41] *Id.*

[42] Fitzgerald *et al.*, *Office Evaluation of pulmonary Function: Beyond the Numbers*, AM. FAMILY PHYSICIAN 54: 525-34, 527 (1996).

[43] ATS *Standardization of Spirometry–1987 Update*, AM. REV. RESP. DIS. 136: 1285-98 (1987).

THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE CO., *et al.*, | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**DEBTORS' CONSOLIDATED REPLY IN SUPPORT OF THEIR
MOTION FOR ENTRY OF CASE MANAGEMENT ORDER,
ESTABLISHMENT OF A BAR DATE, APPROVAL OF THE CLAIM
FORMS WITH RESPECT TO ASBESTOS PERSONAL INJURY
CLAIMS AND APPROVAL OF DEBTORS' COMBINED NOTICE PROGRAM**

Dated: February 12, 2002

KIRKLAND & ELLIS
David M. Bernick
James H.M. Sprayregen
Andrew R. Running
Janet S. Baer
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000
(312) 861-2200 (fax)

PACHULSKI, STANG, ZIEHL, YOUNG
 & JONES P.C.
Laura Davis Jones
David W. Carickhoff, Jr.
Hamid Rafatjoo
919 North Market Street, 16th Floor
Wilmington, Delaware 19801
(302) 652-4100
(302) 652-4400 (fax)

Co-Counsel for the Debtors and
Debtors in Possession

No. 1666

subjective speculation. *Daubert*, 509 U.S. at 590. The methodology must be real and it must produce consistent results, meaning, it must be reproducible. *See id.* at 590, n. 9. Even if a test is *generally* reliable, testing is inadmissible if performed in an unreliable manner. *See, e.g., Metropolitan St. Louis Equal Housing Opp'y Council v. Gordon Gundaker Real Estate Co.*, 130 F.Supp.2d 1074, 1082-83 (E.D. Mo. 2001) (excluding expert testimony based on flawed testing protocols).

In the asbestos context, data from two types of test results, while widely used to support mass claim filings, can be unreliable, manipulable and not reproducible: (1) ILO scores — which are based on subjective interpretations of lung x-rays — have been shown to be highly unreliable unless independent doctors make multiple corroborative readings, and (2) lung function testing, known as a pulmonary function test ("PFT"), is highly manipulable and must be reproduced in accordance with defined procedures before a claimant can be deemed to have a real impairment. While these tests can be scientifically valid when performed in accordance with recognized procedures and standards, they are invalid if those procedures and standards are not followed. In the latter case, such test data will lack sufficient reliability, reproducibility and scientific validity to be admissible under *Daubert*.

This is not merely an academic concern for Grace. As discussed in Part I above, the recent surge in claims against Grace has come after mass screenings were performed by a small number of plaintiff firms. ILO and PFT tests have yielded massive numbers of claims for nonmalignant conditions. The task of determining whether these claims are supported will be difficult (but necessary) to ensure that only claims that are based upon reliable science are permitted to proceed. Again, appointment of a Rule 706 panel may be appropriate to assist the Court in performing its role as a "gatekeeper" under *Daubert*. Independent experts also could be enlisted to

...

made for each radiograph."[30] Other experts agree. As Dr. Ducatman has stated, "[a]t present, individual diagnoses, *legal decisions* and population assessments ought to rely on multiple readings."[31]

Accordingly, Grace proposes the use of independent, court-appointed scientific experts under Rule 706 to assist in ensuring the accuracy of ILO readings of asbestos personal injury claimants. An outside panel could be recommended by the National Academy of Sciences (or a similar impartial authoritative organization) and approved by the Court for this purpose.

*Pulmonary Function Tests*

PFTs are the best tool to determine whether an asbestos claimant has a physical impairment. Put simply, PFTs measure a subject's lung capacity to determine levels of breathing obstruction. But such tests are reliable only if performed accurately, and they are particularly subject to manipulation. For this reason, the ATS has issued comprehensive standards governing PFTs.[32] Inaccurate or poorly performed tests can result in improper diagnoses. Where the quality of a test is suspect, any dysfunction shown on the test "should only indicate the need for more definitive testing," and the physician should "avoid specific diagnostic statements."[33]

Pulmonary function tests need to be scrutinized even more closely in the litigation context because proper performance of the tests requires full patient cooperation and effort. "Variability is greater in pulmonary function tests than in most other laboratory tests because of the

---

[30] 1980 ILO Report at 20.

[31] Ducatman et al., *B-Readers and Asbestos Medical Surveillance*, JOM 30:644-47, 646 (1988) (emph. added).

[32] ATS, *Lung Function Testing: Selection of Reference Values and Interpretative Strategies*, AM. REV. RESP. DIS. 144:1202-18, 1211 (1991).

[33] *Id.*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

Objection Deadline: December 3, 2004
Hearing Date: To be determined

# DEBTORS' MOTION FOR ENTRY OF A CASE MANAGEMENT ORDER ESTABLISHING PROTOCOLS FOR LITIGATING ASBESTOS-RELATED CLAIMS FOLLOWING PLAN CONFIRMATION

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by their undersigned counsel, file this motion (the "New CMO Motion"), seeking entry of a case management order (the "New CMO"), establishing protocols for litigating asbestos-related claims (the "Asbestos Claims") following plan confirmation.[2]

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed thereto in the Glossary, which is Exhibit 2 to the Exhibit Book, filed on November 13, 2004.

necessary to establish a valid Asbestos Claim, the Asbestos Claim should be expunged and disallowed.

2. **Asbestos Claims Based On Unreliable Scientific Evidence**

49. In order to maintain a valid claim, a plaintiff must demonstrate that tests were conducted using reliable and admissible methods. See In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742, 745 (3d Cir. 1994), cert. denied, 513 U.S. 1190 (1990) (sponsoring party must demonstrate expert's findings are based on the scientific method and are reliable; any failure to do so renders testimony inadmissible). The scientific method relied upon may not be based on subjective speculation. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) at 590. The methodology must be real, and it must produce consistent, reproducible results. See id. at 590 n.9. Even if a test is *generally* reliable, testing is inadmissible if performed in an unreliable manner. See, e.g., Metropolitan St. Louis Equal Housing Opp'y Council v. Gundaker Real Estate Co., 130 F. Supp. 2d 1074, 1082-83 (E.D. Mo. 2001) (excluding expert testimony based on flawed testing protocols).

50. For Asbestos PI Claims, the two tests needed to establish asbestosis - the ILO Rating Test and Pulmonary Function Tests (PFT) - are (as described below) unfortunately subject to manipulation and can produce unreliable and non-reproducible results. While these tests can be scientifically valid when performed in accordance with recognized procedures and standards, they are invalid if those procedures and standards are not followed. In the latter case, such test data will lack sufficient reliability, reproducibility and scientific validity to be admissible under Daubert.

51. Accordingly, the Debtors intend to file a summary judgment motion seeking dismissal of claims based upon ILO and PFT readings that have not been obtained in compliance with accepted standards. Once again, the information submitted with the Asbestos PI

### (2) Pulmonary Function Tests (PFTs)

58.  PFTs are the best tool to determine whether an Asbestos PI Claimant has a physical impairment due to asbestos. Put simply, PFTs measure a subject's lung capacity to determine levels of breathing obstruction. But such tests are reliable only if performed accurately, and they are particularly subject to manipulation. For this reason, the ATS has issued comprehensive standards governing PFTs.[22] Inaccurate or poorly performed tests can result in improper diagnoses. Where the quality of a test is suspect, any dysfunction shown on the test "should only indicate the need for more definitive testing," and the physician should "avoid specific diagnostic statements."[23]

59.  Pulmonary function tests need to be scrutinized even more closely in the litigation context because proper performance of the tests requires full patient cooperation and effort. "Variability is greater in pulmonary function tests than in most other laboratory tests because of the need for consistent patient effort. Therefore, proper testing and valid results require an expert technician, as well as the patient's full cooperation and ability to understand and perform the test correctly."[24] Because the test is so dependent on the cooperation of the patient, the ATS cautions that "[t]he effort-dependent spirogram must be carefully scrutinized for quality."[25]

60.  Therefore, in order to survive a Daubert challenge, Asbestos PI Claimants relying on pulmonary function tests must demonstrate that those tests were conducted in a reliable and

---

[22] ATS, *Lung Function Testing: Selection of Reference Values and Interpretative Strategies*, AM. REV. RESP. DIS. 144:1202-18, 1211 (1991).

[23] Id.

[24] Fitzgerald et al., *Office Evaluation of Pulmonary Function: Beyond the Numbers*, AM. FAMILY PHYSICIAN 54: 525-34, 527 (1996).

[25] *ATS Standardization of Spirometry–1987 Update*, AM. REV. RESP. DIS. 136:1285-98 (1987).

subclinical asbestosis claims because subclinical injuries do not amount to physical harm. "[U]ntil the asbestosis manifests itself one can only speculate as to the debilitating effects the plaintiff will suffer. Not all asbestosis is one hundred percent debilitating." Id. Consequently, the court stated, "[w]e see no reason to depart from traditional tort concepts and allow recovery for injuries before any disease becomes manifest." Id. at 31. The court reasoned that a contrary rule would give rise to a cause of action for countless plaintiffs who are healthy and might never manifest injury. Id. Furthermore,

> proof of damages in such cases would be highly speculative, likely resulting in windfalls for those who never take ill and insufficient compensation for those who do. Requiring manifest injury as a necessary element of an asbestos-related tort action avoids these problems and best serves the underlying purposes of tort law: the compensation of victims who have suffered.

Id. at 30.

66. Similarly, in Taylor v. Owens-Corning Fiberglas Corp., 666 A.2d 681, 687 (Pa. Super. Ct. 1995) the Pennsylvania Superior Court found that "a plaintiff . . . must suffer discernible physical symptoms to have a compensable injury." Several of the plaintiffs whose cases had been consolidated in Taylor had been diagnosed with asbestosis but had no symptoms attributable to asbestos exposure. The court found that none of the plaintiffs had an injury sufficient to sustain a legal cause of action. Id. "[I]f a plaintiff is able to 'lead active, normal [life], with no pain or suffering, no loss of an organ function ...,' he does not have a compensable injury." Id. (quoting Giffear v. Johns Manville Corp., 632 A.2d 880, 887 (Pa. Super. 1993)).

67. For these reasons, any "asbestosis" that does not result in at least "mild impairment" under the AMA's standards for evaluating PFT results cannot support a claim of medical impairment.

No. 8395

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> W. R. GRACE & CO., *et al.*, <br><br> Debtors. | ) Chapter 11 <br> ) <br> ) Case No. 01-1139 (JKF) <br> ) (Jointly Administered) <br> ) <br> ) |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF W.R. GRACE & CO.'S MOTION TO
APPROVE PI CMO AND QUESTIONNAIRE**

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet Baer
Jonathan P. Friedland
Salvatore F. Bianca
Joseph Nacca
Andrea L. Johnson
200 East Randolph Drive
Chicago, IL 60601
Telephone:    (312) 861-2000
Facsimile:    (312) 861-2200

KIRKLAND & ELLIS LLP
Barbara M. Harding
Brian T. Stansbury
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone:    (202) 879-5000
Facsimile:    (202) 879-5200

Dated: May 10, 2005

PACHULSKI, STANG, ZIEHL, YOUNG, JONES &
WEINTRAUB P.C.
Laura Davis Jones (Bar No. 2436)
David Carickhoff (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

91100-001\DOCS_DE:107964.1

entrepreneurial medical screening enterprises and B-readers -- specially certified X-ray readers that the enterprises or plaintiff lawyers select, who often conform their findings and reports to the expectations of the plaintiffs' lawyers who retain them."[48] There simply is no dispute that, currently, massive numbers of asbestos claims, including substantial claims against this debtor (as discussed *infra*) have emanated from the practice of mass screenings - a practice that is loudly decried by the medical community and courts.

### 2. Pulmonary Function Tests Also Have Been Abused.

Another recurring problem is that pulmonary function tests (PFTs) -- tests used to measure lung impairment -- can be easily manipulated. *See Owens Corning v. Credit Suisse First Boston*, No. 04-00905, Docket No. 106, at 8 (D. Del. March 31, 2005). Claimants are aware that in order to be eligible for compensation (or higher levels of compensation), they often must "fail" the PFT.[49] Failing a PFT is easily accomplished by simply smoking cigarettes prior to the test, failing to inhale deeply or exhale completely, eating a large meal, wearing tight clothing, drinking alcohol or performing strenuous activity prior to the test.[50] Because the PFT

---

[48] Brickman 2003, *supra*, at 41.

[49] *See* Brickman 2003 *supra*, at 94 (citing Dep. of Larry M. Mitchell, M.D. at 149, taken on June 19, 1996, *In re Consolidation of Maples & Lomax, P.A., Asbestos Pers. Injury Cases, Flight 1* (Miss. Cir. Ct. 1996) (supervisor of PFTs at a mass screening enterprise stated "we had some people that came in [for pulmonary function testing]... that didn't try. They tried to give you an invalid test.... They wanted a positive test. We had a lot of those."); Dep. of Charles E. Foster at 177, taken on June 4, 1996, *In re Consolidation of Maples & Lomax, P.A., Asbestos Pers. Injury Cases, Flight 1* (Miss. Cir. Ct. 1996) (Foster ran a mass screening enterprise and acknowledged that the "litigants" openly talked about how they can influence the PFT outcome by failing to exhale fully and thus "earn" a settlement check"); Dep. of Leon Hammonds at 280-81, taken on Feb. 21, 1996, *In re Consolidation of Maples & Lomax, P.A., Asbestos Pers. Injury Cases, Flight 1* (Miss. Cir. Ct. 1996) (head PFT technician at a mass screening enterprise acknowledged that "litigants" understood that failing the PFTs was "good" and that some deliberately tried to get a "failing" reading)).

[50] *See* Brickman 2003, *supra*, at 94.

91100-001\DOCS_DE:107964.1

results are so sensitive and easily manipulated, the American Thoracic Society has established certain standards intended to limit the variability of these tests and make them more reliable.[51]

However, PFTs often do not conform to ATS standards. For instance, a complete PFT should take up to 90 minutes to complete,[52] but mass screening PFT's typically take only 10 to 15 minutes.[53] Another ATS guideline requires strict replication of results prior to their acceptance.[54]

The problems with both the sensitivity of pulmonary function tests and the way they are administered in practice, have contributed to the asbestos litigation crisis by making it easy for claimants to claim impairment when none truly exists. Although compliance with standards from the American Thoracic Society and the American Medical Association are designed to address these problems, those standards have not been seriously integrated into asbestos claims resolution processes, either in the tort or bankruptcy systems. For example, Owens Corning discovered that mass screening enterprises deviated from the required PFT standards in order to create false "positive" readings.[55] As shown in the graphic below, Owens Corning's medical

---

[51] ATS, *Lung Function Testing: Selection of Reference Values and Interpretive Strategies*, AM. REV. RESPIR. DIS., 144:1202 (1991).

[52] The American Association for Respiratory Care Uniform Reporting Manual for Diagnostic Services (1999).

[53] *See* Brickman 2003, *supra*, at 94-95 (citing Dep. of Deloris Bailey at 61, taken on May 21, 1996, *In re Consolidation of Maples & Lomax, P.A., Asbestos Pers. Injury Cases, Flight 1* (Miss.Cir. Ct. 1996) (stating that the PFTs she did at a mass screening enterprise required 15 minutes per test); Dep. of Charles Foster at 142, 165, taken on Aug. 6, 2002, *Morehouse v. N. Am. Refractories Co.* (Ala. Cir. Ct. 2002) (indicating that another mass screening enterprise took even less time to perform PFTs); Dep. of Michael G. Conner, M.D. at 67-70, taken on Mar. 29, 1993, *In re Asbestos Pls. v. Borden, Inc., No. 91-18397* (La Dist. Ct. 1993) (mass screening enterprise took 16-22 minutes per PFT).

[54] ATS, *Lung Function Testing: Selection of Reference Values and Interpretive Strategies*, AM. REV. RESPIR. DIS. 144:1202 (1991).

[55] Brickman 2003, *supra*, at 117-28 (citing Compl. at 5, *Owens Corning v. McNeese*, Civil Act 3:97CV29WS (S.D. La. 1997); Compl. at 60-67, *Owens Corning v. Pitts*, No. 96-CV-2095 (E.D. La. June 19, 1996)). *See*
(Continued...)

experts found that *over 95%* of 1,900 "positive" PFT cases did not meet ATS standards in the first case[56] and *over 98%* of 3,486 "positive" PFT cases did not meet ATS standards in the second case.[57]



B.   **Hard Data Now Confirms the Magnitude of the Problem.**

While the problems with the medical data and tests, including their abuse, have long been known by defendants, judges, and politicians, hard data now confirms the severity and pervasiveness of these problems throughout the tort and bankruptcy systems. As shown in the

---

*also,* Tr. of Hr'g at 29-33, *Owens Corning v. Credit Suisse First Boston,* No. 04-CV-905 (Bankr. D. Del. Jan. 13, 2005) (Clyde M. Leff) (settled RICO claims against certain mass screening enterprises with false "positive" PFTs for "just under $3 million dollars").

[56]   Brickman 2003, *supra,* at 119-20 (citing Compl. at 60-67, *Owens Corning v. Pitts,* No. 96-CV-2095 (E.D. La. June 19, 1996)).

[57]   Brickman 2003, *supra,* at 126-27 n. 326 (citing Compl. at 60-62, *Owens Corning v. McNeese,* Civil Act 3:97CV29WS (S.D. La. 1997)).

26

No. 8994

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.*, | ) | Case No. 01-1139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

## DEBTORS' STATUS REPORT REGARDING MOTION TO APPROVE ASBESTOS PI ESTIMATION CMO AND QUESTIONNAIRE

Dated: July 13, 2005

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick
Jonathan Friedland
Salvatore Bianca
200 East Randolph Drive
Chicago, IL 60601
Telephone: (312) 861-2000

KIRKLAND & ELLIS LLP
Barbara Harding
Brian T. Stansbury
655 15th St., NW
Washington, D.C. 20005
Telephone: (202) 879-5000

PACHULSKI, STANG, ZIEHL, YOUNG,
JONES & WEINTRAUB P.C.
Laura Davis Jones (Bar No. 2436)
David W. Carickhoff, Jr. (Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100

Co-Counsel to Debtors and Debtors in Possession

K&E 10627184.14

No. 8994

results by pointing to the recent *Owens Corning* decision where the Court acknowledged the unreliability of PFT's. This decision, however, merely underscores the importance of obtaining reliable PFT results that conform to modern medical standards. Verifying that a PFT was performed in accordance with these standards requires a Claimant to submit the documentation underlying the PFT analysis. Again, as with all the other information requested in the Questionnaire, this is proper discovery. The claimants and their lawyers already should have had this information prior to filing a claim and most likely have produced copies of the test results in connection with the settlement or litigation of other asbestos law suits.

### C.  Litigation History is Necessary to a Determination of a Claim's Validity

The claimants' committees also object to the request for prior litigation history as overly burdensome. In response, Debtors have tailored this request to seek only prior or concurrent litigation relating to silica or asbestos. The reasons for these requests are obvious. First, to be successful in any asbestos claim, the claimant must demonstrate that his exposure to the defendant's product played a substantial causal role in the development of the disease. Thus, lawsuits alleging that other asbestos exposures are substantial causes of claimants' diseases are relevant to determining the validity and value of these groups of claims. Furthermore, where it is universally recognized that claimants and screening companies are taught and coached to hide other confounding exposures, *see* Debtors' CMO Motion; *In re* Silica Opinion at 83-84, 125-26, disclosure of prior and concurrent litigation alleging other asbestos exposures serves as a deterrent to that type of fraudulent conduct.

Finally, as described above, the Debtors have dropped their requests for prior non-asbestos-related litigation, with one notable exception –the Debtors continue to seek discovery related to claimants' past or concurrent silica litigation. After a cursory review of Grace claims records, Grace is convinced that some, and probably many, of the claimants in the Texas MDL

25