# EXHIBIT "L"

1                  UNITED STATES DISTRICT COURT

                  SOUTHERN DISTRICT OF TEXAS

2                  CORPUS CHRISTI DIVISION

3

4

5    IN RE:                    )

                                )         CASE NO: MDL-03-1553

6                                )

                                )         Corpus Christi, Texas

7    SILICA PRODUCTS           )

       LIABILITY LITIGATION     )      Monday, August 22, 2005

8                                )      (9:15 a.m. to 11:17 a.m.)

                                )

9                                )

                                )

10

11                       STATUS CONFERENCE

12

13         BEFORE THE HONORABLE JANIS GRAHAM JACK,

              UNITED STATES DISTRICT COURT JUDGE

14

15

16   Appearances:      (See next page)

17

18

19

20

21

22

23

24

     Proceedings recorded by electronic sound recording;

25   transcript produced by transcription service.

Page 2

```
1   APPEARANCES FOR:
2
3   Baeou-Dalloz:        VINCENT R ALMERICO, III, ESQ
                         Hopkins Barvie & Hopkins
4                        2701 24th Avenue
                         P.O. Box 1510
5                        Gulfport, MS 39502

6   Vailen Corp.:        WALTER C MORRISON, IV, ESQ
                         Seasums Dallas & Morrison, PLLC
7                        2829 Lakeland Drive, Suite 1650
                         Jackson, MS 39232

8   Pannciee, U.S. Safety:   DAVID CRAIG LANDIN, ESQ
                         Hunton & Williams
9                        931 East Byrd Street
                         Richmond, VA 23219
10
11  MSA:                 KAREN K MASTON, ESQ
                         Connelly Baker Wotring et al.
12                       700 Louisiana, Suite 1850
                         Houston, TX 77002
13
    Lockbend Martin:     GREGORY L FOWLER, ESQ
14                       Shook Hardy & Bacon
                         2555 Grand Blvd.
15                       Kansas City, MO 64108

16  Cataphone, et al.:   W MARK EDWARDS, ESQ
                         Page Mannino Peresich, et al.
17                       259 Vieux Marche' Mall
                         P.O. Drawer 289
18                       Biloxi, MS 39533

19  J J Ferguson Sand & Gravel,   JOE E BASENBERG, ESQ
    et al :              Hand Arendall
20                       3000 Amsouth Bank Bldg.
                         107 St. Francis St.
21                       Mobile, AL 36602

22  Defendants' Steering   CHERI D GREEN, ESQ
    Committee:           Bruami Grantham, et al.
23                       P.O. Drawer 119
                         Jackson, MS 39205
24
25
```

Page 4

```
1   APPEARANCES FOR: (Cont'd)
2
3   3M Company:          J WILLIAM MANUEL, ESQ
                         Bradley Arant
4                        Suite 450, One Jackson Place
                         188 East Capitol Street
5                        P.O. Box 1789
                         Jackson, MS 39215

6   3M Company:          J A. "TONY" CANALES, ESQ
                         Canales & Minonson
7                        2601 Morgan Avenue
                         P.O. Box 5624
8                        Corpus Christi, TX 78465

9   Robert Martin, et al.:   SCOTT A HOOPER, ESQ
    (Attorney-in-Charge)      Scott Hooper & Associates
10                       1414 West Clay
                         Houston, TX 77019
11
    Plaintiffs' Steering    KATHRYN SNAPKA, ESQ
12  Committee:           Snapka & Turman
                         P.O. Drawer 23017
13                       Corpus Christi, TX 78403

14  Certain Plaintiffs:   RICK LAMINACK, ESQ
                         BUFFY K MARTINES, ESQ
15                       O'Quinn Laminack & Pirtle
                         440 Louisiana, Suite 2300
16                       Houston, TX 77002

17  Envirotech Corp.:    STEPHEN W MULLINS, ESQ
                         Law Offices of Alwyn H. Luckey
18                       P.O. Box 774
                         Ocean Springs, MS 39564
19
    Plaintiffs' Steering    GREGORY GOWAN, ESQ
20  Committee:           Watts Law Firm
                         Tower II Bldg., 14th Floor
21                       555 N. Carancahua St
                         Corpus Christi, TX 78478
22
    Eugene Williams, et al.:   PATRICK McMURTRAY, ESQ
23                       McMurtray & Armistad
                         P.O. Box 22508
24                       Jackson, MS 39225
25
```

Page 3

```
1   APPEARANCES FOR: (Cont'd)
2
3   Textron, et al.:     ROY T ATWOOD, ESQ
                         KATHRYN GAMEROS, ESQ
4                        Jones Day
                         2727 N. Harwood Street
5                        Dallas, TX 75201

6   Wedron Silica-Ohio:   I. JOHN ARGENTO, ESQ
                         Two PPG Place, Suite 400
7                        Pittsburg, PA 15222

8   U.S. Silica, et al.   MICHAEL J CARTEE, ESQ
                         Cartee & Lloyd
9                        2210 8th Street, Suite B
                         Tuscaloosa, AL 35401
10
    Vulcan Materials Co.:   BRUCE WILLIAMS, ESQ
11                       Cotton Bledsoe Tighe & Dawson
                         Post Office Box 2776
12                       Midland, TX 79702
    Martin Marietta Materials:   VICTOR FRANCKIEWICZ, JR, ESQ
13                       Deutsch Kerrigan & Stiles
                         2510 14th St., Suite 1001
14                       Gulfport, MS 39501

15  Humble Sand Co., et al.:   DAVID M SETTER, ESQ
                         Socha Perczak Setter & Anderson
16                       Denver Financial Center Tower I
                         1775 Sherman Street, Suite 1925
17                       Denver, CO 80203

18  Humble Sand Co., et al.:   FRED KRUTZ, ESQ
                         DANIEL J MULHOLLAND, ESQ
19                       Forman Perry Watkins, et al.
20                       One Jackson Place
                         188 East Capitol Street, #200
21                       Jackson, MS 39201

22  Liaison counsel for   DARRELL L BARGER, ESQ
    Defendants:          Hartline Dacus Barger Dreyer & Kern
23                       800 N. Shoreline
                         Suite 2000-North Tower
24                       Corpus Christi, TX 78401
25
```

Page 5

```
1   APPEARANCES FOR: (Cont'd)
2
3   Elijah Jackson, et al.:   R. ALLEN SMITH, JR, ESQ
                         JUSTIN G SANDERSON, ESQ
4                        McPherson Monk Hughes, et al.
                         3120 Central Mall Drive
5                        Port Arthur, TX 77642

6   E.D. Bullard Co.:    ABEL MANJI, ESQ
                         3618 Mt. Vernon
7                        Houston, TX 77006

8   Briggs-Weaver, Inc.:   GEORGE PLATO PAPPAS, ESQ
                         Sheehy Serpe & Ware
9                        2500 Two Houston Center
                         909 Fannin Street
10                       Houston, TX 77010

11  Liter's Quarry:      JOSEPH P HUMMEL, ESQ
                         Lynch Cox Gilmaz & Mahan
12                       500 West Jefferson Street
                         Suite 2100
13                       Louisville, KY 40202

14  Akrochem Bellevlew   ANN E GEORGEHEAD, ESQ
    Barbe:               ROBERT Y GWIN, ESQ
15                       Frost Brown Todd
                         400 W. Market St., 32nd Floor
16                       Louisville, KY 40202

17  Unimin Corp., et al.:   J.D. BASHLINE, ESQ
                         McLeod Alexander Powel & Apffel
18                       Onyx Building, Suite 344
                         17725 El Camino Real
19                       Houston, TX 77058

20  Porter Warner:       JIM I GRAVES, ESQ
                         Mehaffy & Weber
21                       One Allen Center
                         500 Dallas, Suite 1200
22                       Houston, TX 77002

23  U.S. Silica Company:   STEVEN L RUSSELL, ESQ
                         Beirne Maynard & Parsons
24                       1700 Pacific Avenue, Suite 4400
                         Dallas, TX 75201
25
```

Exceptional Reporting Services, Inc.   361 949-2988

## Page 6

1  APPEARANCES FOR: (Cont'd)
2
3  Survivair, Inc.:        HUBERT OXFORD, ESQ
4                          Benckenstein & Oxford
                           Post Office Drawer 150
                           Beaumont, TX 77704
5
6  Schramm:                NANCY M BELL, ESQ
                           Roberts Markel Guerry
7                          2500 City West Blvd., #1350
                           Houston, TX 77042
8  Air Liquide et al.:     DENNIS R ALENIK, ESQ
                           Alenik & Associates
9                          8582 Katy Frwy., Suite 421
                           Houston, TX 77024
10
11 Pauli & Griffin:        DAVID A BADERTCHER, ESQ
                           Meyer Knight & Williams
                           8100 Washington Ave., #1000
12                         Houston, TX 77007
13 Ideal Basic & Thorstenberg:  ENRIQUE M VARELA, ESQ
                           Taylor & Warren
14                         4600 Three Allen Center
                           333 Clay Street
15                         Houston, TX 77002
16 Certain Plaintiffs:     JOHN R FABRY, ESQ
                           Williams Bailey
17                         8441 Gulf Freeway, Suite 600
                           Houston, TX 77017
18
19 Sphinx Adsorbents:      VICTOR T AVELLINO, ESQ
                           7912 Bonhomme, Suite 400
                           St. Louis, MO 63105
20
21 U.S. Attorney:          KENNETH CUSICK, ESQ
                           Assistant U.S. Attorney
                           800 N. Shoreline, Suite 500
22                         Corpus Christi, Texas 78401
23
24
25

## Page 7

1  ADDITIONAL APPEARANCES:
2
3  Also present:          JASON CANSLER, ESQ
                          GLENN DOUGLAS, ESQ
4  Court Recorder:        Velma Gano
5  Transcribed By:        Exceptional Reporting Services
                          15213 Cartagena Ct.
6                         Corpus Christi, TX 78418
                          361 949-2988
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## Page 8

1      Corpus Christi, Texas; Monday, August 22, 2005; 9:15 a.m.
2          (Call to Order)
3      THE COURT: Thank you.  You may be seated.
4      I apologize for the delay.
5      THE CLERK: Court calls MDL 03-1553, In Re: Silica
6  Litigation.
7      May I have appearances, please?
8      MS. SNAPKA: Kathy Snapka, Plaintiff Liaison
9  Counsel.  Present, your Honor.
10     MR. BARGER: Darrell Barger, Defense Liaison
11 Counsel.  Present, your Honor.
12     THE COURT: Since you all have a copy of the agenda,
13 can you give me an update enough that there is a direct
14 communication with the Mississippi Supreme Court?  Does anybody
15 have any heads up on that at all?
16     MR. KRUTZ: Good morning, your Honor.
17     THE COURT: Good morning.
18     MR. KRUTZ: The briefing was concluded on Friday, so
19 the petitions have all been briefed by all parties.  It's in the
20 hands of the court, and that's all we know.
21     THE COURT: Okay.
22     MR. KRUTZ: Just as a heads up, your Honor, I think
23 the cases on Exhibit A under your present orders are to be
24 remanded August 30th.
25     THE COURT: Yes.

## Page 9

1      MR. KRUTZ: If by the end of this week we have not
2  heard from the Mississippi Supreme Court, we will be filing a
3  Motion for an additional 30 days.
4      THE COURT: Why thank you.
5      MR. HOOPER: Your Honor, Scott Hooper here.
6      To advise the Court, we've advised the Mississippi
7  Supreme Court that they should not proceed because under Title
8  28, United States Code, Section 1446(d), as long as this Court
9  intends to exert jurisdiction over those cases, the State Court
10 is barred from acting in those cases.
11     So it's to further the ends that the Defendants are
12 seeking.
13     THE COURT: Well, I don't know how they're going to
14 go with that after I've already said in my order I don't have
15 jurisdiction over them.  And that will clear the way for them to
16 do whatever they want to do in the interest of efficiency, but I
17 understand your argument.
18     MR. HOOPER: Okay.  Under 1446(d), though, as long
19 as this Court holds -- hold onto cases --
20     THE COURT: Save it for Mississippi.  Thanks.
21     MR. HOOPER: Okay.
22     THE COURT: I got it.  Thank you.
23     Next, the Motion to Remand and I think there are 12
24 -- well, I have 17 remaining cases.  I have gone ahead and
25 dismissed Nix -- let me make sure I've got it right, no, sorry

1 -- Thirsty, Crowe, Greer, Large yesterday, so I have 17 left
2 that are not covered by the last MDL Order.
3    Are the attorneys for Covey v. Union Pacific here?
4 I'm going to start backward.
5    MR. FABRY: Yes, your Honor. John Fabry for the
6 Plaintiffs in that case.
7    THE COURT: And the Defendants? Same Defendants?
8    MR. AVELINO: Your Honor, one additional Defendant
9 from the other MDL cases from St. Louis. I am Victor Avelino,
10 and I'm for Defendants Sphinx Adsorbents, who are not a
11 defendant in any other matter.
12    THE COURT: Thank you, sir.
13    Is there any contest about jurisdiction in that
14 case?
15    MR. AVELINO: I'm thought there was not, but I would
16 defer to John Fabry for any contacts with other MDL counsel.
17    MR. FABRY: No, your Honor.
18    THE COURT: Okay. Then at some point I'm going to
19 go through these that I have left and enter Scheduling Orders
20 for these cases that I still have.
21    Wilson versus 3M Company?
22    MR. MULLINS: This is Steve Mullins on behalf of the
23 Plaintiffs. I agree with opposing counsel. He asked the Court
24 to pass our Motions to Remain in all of the cases.
25    THE COURT: I'm sorry? I'm not going to pass on

1 anything. If you filed them, I'm going to talk about them.
2    I understand that -- you represent the plaintiff?
3    MR. MULLINS: Yes. Yes, ma'am.
4    THE COURT: And the problem was that this case was
5 removed greater than a year after it was -- the first Defendant
6 was served; is that correct?
7    MR. MULLINS: I believe that is correct.
8    THE COURT: Does anybody contest that?
9    (No Audible Response)
10    Then if there are no objections, I'm going to remand
11 Wilson versus 3M.
12    Clay versus Pulmosan Safety Equipment Company.
13    MR. MANUEL: Yes, your Honor.
14    THE COURT: That has a Motion to Remand by 3M, which
15 I don't think you can do that, but --
16    MR. MANUEL: We don't think you can.
17    THE COURT: Well, I think I can take up jurisdiction
18 at any time, but I'm not sure that a Defendant can file a Motion
19 to Remand --
20    MR. MANUEL: Well, your Honor --
21    THE COURT: -- when the Defendants removed the case.
22    MR. MANUEL: Will Manuel on behalf of 3M. We filed
23 a Motion to Remand on several cases and it's actually come down
24 now to just a few cases because of either dismissals or --
25    THE COURT: And Knight and Clay, I think, are the

1 ones left.
2    MR. MANUEL: Knight and Clay are the two -- I think
3 that with regard to Thirsty, Greer, Moore, Large, and Crowe, I
4 understood your Honor to say this morning that you had dismissed
5 them. I know that there's a --
6    THE COURT: Oh, no, no, no, no.
7    MR. MANUEL: Oh.
8    THE COURT: I still have Thirsty, Greer, Large, and
9 Crowe. I'm taking them up one at a time.
10    MR. MANUEL: Okay. We've got a similar motion --
11    THE COURT: The rest of them have Motions to Remand
12 filed by the Plaintiffs.
13    MR. MANUEL: Correct. We've got a Motion to Remand
14 on with regard to Clay, Crowe, Large, Moore, Greer, and Thirsty.
15    We do note that we'd like to withdraw our Motion to Remand on
16 Knight because I've got an Order of Dismissal for 3M.
17    THE COURT: Well, that would be good.
18    Do you want to hand me that?
19    MR. MANUEL: Yes.
20    And we also have --
21    THE COURT: And that's the only Motion to Remand
22 pending.
23    MR. MANUEL: On those cases?
24    THE COURT: On Knight.
25    MR. MANUEL: On Knight, that's correct.

1    THE COURT: So if you can hand me up -- Ms. Gano,
2 would you hand me that?
3    THE COURT RECORDER: Sure, your Honor.
4    (Pause)
5    THE COURT: And that is unopposed?
6    MR. MANUEL: Yes. The motion -- I mean, the Agreed
7 Order of Dismissal is unopposed, as to 3M on Knight.
8    THE COURT: Right.
9    MR. MANUEL: We also had a Motion to Remand 3M,
10 specifically, on Cole. We've also got an Agreed Order of
11 Dismissal for the entire Cole case, which would take care of
12 that Motion to Remand, if you --
13    THE COURT: Okay.
14    MR. MANUEL: Would you like me to hand that to you
15 Honor?
16    THE COURT: Yes, please. Is that entire case is
17 gone -- will be gone, then?
18    MR. MANUEL: That entire case will be dismissed
19 without prejudice, your Honor.
20    So, your Honor, as far as 3M's Motion to Remand, we
21 ended up covering Thirsty, Greer, Moore, Large, Crowe --
22    THE COURT: And Clay is left.
23    MR. MANUEL: -- and Clay.
24    THE COURT: All of them but Clay had Motions to
25 Remand by the Plaintiff.

Page 14

1    MR. MANUEL: As well.
2    THE COURT: Yes.
3    MR. MANUEL: That is correct. That is correct.
4    With regard to Clay, we would just reargue again --
5    if you'd like to hear my argument on the Motion to Remand on
6    Clay?
7    THE COURT: Who is the Plaintiff's Attorney in Clay?
8    MR. SMITH: I am, your Honor, Allen Smith.
9    THE COURT: Did you intend to file -- I guess
10   procedurally it's too late for you to file a Motion to Remand.
11   MR. SMITH: No, your Honor. I didn't intend to file
12   a motion.
13   THE COURT: Did 3M join in the removal?
14   MR. MANUEL: Of Clay? I'd have to check. I'm not
15   sure if we did because that was one of the later removed cases
16   after we had already gotten here. But --
17   MR. KRUTZ: Your Honor, and we oppose -- the
18   Defendants that we represent oppose 3M's Motion to Remand.
19   THE COURT: Did anyone -- well, who removed the
20   case?
21   MR. KRUTZ: We did.
22   THE COURT: You did? Did 3M join you in the
23   removal?
24   MR. KRUTZ: We'd have to check.
25   THE COURT: Pardon?

Page 15

1    MR. HANNULA: We'd have to check, your Honor. I
2    don't know.
3    THE COURT: Well, this would be the time to check.
4    MR. MANUEL: Your Honor, if we -- I can make my
5    argument very briefly whether we -- and your Honor can take it
6    under consideration with regard to whether we joined or we did
7    not join, but --
8    THE COURT: Well, do you know whether you joined or
9    didn't join?
10   MR. MANUEL: If we joined, we would have joined
11   within the 30 days because we're pretty good rule followers on
12   that issue.
13   THE COURT: Well, then how do you get to file a
14   Motion to Remand, if you joined in the removal?
15   MR. MANUEL: Well, your Honor, we would argue
16   that --
17   THE COURT: Do you have any case law on this?
18   MR. MANUEL: I don't have any case law on that
19   issue, but I can get some case law on that issue.
20   THE COURT: You can?
21   MR. MANUEL: Not today, but I can -- I'd be willing
22   to file a Supplemental Brief on that issue.
23   THE COURT: Okay.
24   MR. MANUEL: We filed our Motion to Remand --
25   THE COURT: Go ahead. Take a second. Write it down

Page 16

1    and then --
2    MR. MANUEL: Okay. I am. I'll just write it down
3    and remember it.
4    We filed our Motion to Remand on Clay, as well as we
5    did on the other cases on the exact same grounds and so in the
6    interest of making things quick --
7    THE COURT: Go ahead.
8    MR. MANUEL: -- I'd like to just go ahead and make
9    those arguments.
10   Clay is a single plaintiff case. The Thirsty,
11   Greer, Moore, Large, and Crowe cases are multiple plaintiff
12   cases, but I've been informed that the Plaintiff's lawyers are
13   considering dismissing almost a 136 plaintiffs out of that --
14   those first five cases, the Thirsty, Greer, Moore, Large, and
15   Crowe, but that still leaves some plaintiffs that are either the
16   subject of a Motion to Substitute Counsel or may still be
17   retained with the original counsel.
18   What we're talking about here is the Court is well
19   aware of the jurisdictional inquiry that you made in Order 29,
20   which is 3M were the people that provided the Fact Sheets and
21   said that with regard to this Court's Orders 4 and Order 6 in
22   which the parties agreed that they would look at the Fact Sheets
23   as an attempt to figure out where they had factual claims -- the
24   Plaintiffs had factual claims against the Defendants, that is
25   where the analysis can be done and that the primary motivated

Page 17

1    purpose behind those orders was to clarify the particular
2    Defendants against who each Plaintiff asserts a claim.
3    And the Court clearly said that if those Fact Sheets
4    showed that one of those Plaintiffs had a claim against a non-
5    diverse Defendant, then that case ought to be remanded. And we
6    went back and looked at those Fact Sheets with regards to these
7    later filed cases, we came down to first off, finding 64
8    Plaintiffs that either failed to file a Fact Sheet at all or
9    failed to complete a Fact Sheet. They may have one, but it
10   wasn't completed.
11   And you know, your Honor, dealt with that in Order
12   29, in which you said, "Because we don't have any information,
13   then it's the Defendant's burden to show jurisdiction. That the
14   assumption is that there is not jurisdiction in these type of
15   cases and the Defendants have the burden to show there is
16   jurisdiction. That with regard to the Fact Sheets that are
17   either not filed or not completed, then we can't show that there
18   is a claim against those Defendants and so, therefore, those
19   cases should be remanded."
20   With regard to all the other Fact Sheets, we came
21   down to finding only one person out of those cases and that was
22   in the McManus case that appeared to have, based on the Fact
23   Sheet, diversity. And that was a Wisconsin resident, who was
24   exposed -- allegedly exposed to Silica in Wisconsin. And
25   probably that specific -- it's a guy named Mr. Winston.

5 (Pages 14 to 17)

Page 18

1    With regard to that Fact Sheet, still the Fact Sheet
2  didn't identify the specific Defendants against who he had
3  claims, so we say it should be remanded as well, but that's the
4  only person that we saw that could have an arguable basis for
5  diversity jurisdiction based on our review of the Fact Sheets
6  and that's one Plaintiff in, McManus. With regard to that one
7  Plaintiff, we would say that, you know, this Court has
8  recognized in certain other unique situations in which you've
9  got -- like the Kirkland case, in which you had one Plaintiff
10  who needed to go back to somewhere else where it would be more
11  convenient, the Court asked that it be remanded to the Northern
12  District of Georgia. 3M would ask that that Wisconsin case be
13  remanded to an appropriate forum in Wisconsin.
14    But that's the only one out of the remaining cases
15  in which we filed Motions to Remand that we found somebody that
16  arguably would have diversity.
17    Now the opposition has been filed for our Motion to
18  Remand from Mr. Krutz's clients. He is going to -- he requested
19  that they do depositions, and use depositions in order to
20  establish jurisdiction.
21    THE COURT:  You just want to get them back to
22  Mississippi where you've already got a Summary Judgment against
23  them; am I correct?
24    MR. MANUEL:  Well, I don't know that -- we don't
25  have anything yet down there, but yeah, we believe that these

Page 19

1  cases do belong back to Mississippi, and we believe that the
2  Fact Sheets, which this Court has recognized as an adequate way
3  to look at jurisdiction --
4    THE COURT:  Well, I suppose anybody can raise
5  jurisdiction at any time. Either it's there or it isn't.
6    MR. MANUEL:  And I imagine that's what the case law
7  will say.
8    THE COURT:  And just because you joined in the
9  removals of all these, I guess doesn't bar you from later say,
10  "never mind."
11    MR. MANUEL:  Well, after we got Fact Sheets that
12  showed, you know, differences and more adequately explained --
13  I'm trying not to struggle with what I'm trying to say, but the
14  specific --
15    THE COURT:  I know it's a struggle.
16    (Laughter)
17    MR. MANUEL:  With more specific allegations against
18  those Defendants. When you actually said, "You've got to" --
19  "It's time for you to actually show who you are suing," and they
20  did that, then we showed that it was not -- there was not
21  complete diversity. And so that's why we raised the
22  jurisdictional motion at that time.
23    The problem with depositions, your Honor, you
24  addressed this in Order 29. We had the same issue with those
25  other cases that came up. There was a request to do depositions

Page 20

1  on those cases and the Court specifically in your Order -- as a
2  matter of fact, in Pages 207 through 209, addressed those
3  Requests for Depositions. And in that you said that first off,
4  there's a problem with time and the fact that you've got
5  numerous depositions at that time. In this case -- I mean, here
6  it's a lesser amount of depositions, but you've still got,
7  according to Forman Perry's Opposition, still 536. Now I
8  understand that's before some of these latest dismissals, but
9  it's still going to take a long time to go through and do
10  depositions based on jurisdiction.
11    But more significant, the Court addressed two
12  problems with the deposition process that I think still apply to
13  these later removed cases. First of all, the Court went back to
14  point out that the Federal Court has to assume that there's no
15  jurisdiction, that the burden is on the Defendants. And by
16  placing this deposition process in place, you may be switching
17  the burden to the Plaintiffs to have to prove that there is no
18  jurisdiction and that that's not proper.
19    And finally, your order made the point that it's
20  still speculation that these depositions are even going to show
21  that these people are going to come forth and say they don't
22  have a claim against a non-diverse Defendant because we thought
23  that's what the Fact Sheets were for, was to show who they were
24  suing. And so we came in here and said, "Well, we ought to look
25  at the Fact Sheets." And if the Fact Sheets aren't accurate,

Page 21

1  then it may be that the Fact Sheets aren't accurate, but your
2  Honor said in your order that the appropriate form for deciding
3  what to do about inaccurate Fact Sheets is a Court with
4  competent jurisdiction, which we would argue would be the courts
5  in Mississippi. And we can definitely cross examine people and
6  bring Motions for Sanctions and do all that kind of stuff in
7  that court and there won't be any kind of question as to whether
8  those orders would be valid.
9    So that's why we don't believe that depositions are
10  appropriate relief to solve this jurisdictional problem. We
11  think that the Court ought to do exactly what it did in Order
12  29, use the Fact Sheet analysis. And in the cases that we've
13  laid out in our motions show that there is not diversity --
14    THE COURT:  Do you want me to be -- your argument is
15  going to be consistent even though I'm not competent?
16    MR. MANUEL:  Consistent? We think that you're
17  competent in cases that are properly before you, but we just
18  don't -- but we would ask that you be consistent and that's --
19    THE COURT:  All right. Thank you.
20    MR. MANUEL:  That's it.
21    THE COURT:  I may go ahead and do the depositions
22  quickly. You've got -- the argument that Mr. Krutz's clients
23  have is that every time you noted -- 400 out of 900 or
24  something, you noticed depositions and 400 -- they dismissed 400
25  plaintiffs.

6 (Pages 18 to 21)

**Page 22**

1    MR. KRUTZ: Well, we didn't notice 400 depositions,
2  but every deposition we noticed so far have been dismissed and
3  since we have made it known to the Plaintiff lawyers that we
4  were going to ask you to let us depose those people, they have
5  agreed to dismiss over half of the cases and have implied that
6  more dismissals may be coming.
7    So what we would like to do, your Honor -- first of
8  all, that's the first time in this two years we've been here
9  that I've heard any Defendant say in written paper or from the
10  podium that they think there's any accuracy in those Fact
11  Sheets.
12    MR. MANUEL: Well, I'm not necessarily saying that.
13    MR. KRUTZ: You know, so I think you noticed along
14  in Order 29 that it was understandable we were suspicious about
15  the accuracy of the Fact Sheets and I think you also said that
16  we were entitled to discovery to try to meet our burden of
17  proving subject matter jurisdiction and that we were here today
18  for the purpose of coming up with a procedure that would
19  expedite that procedure.
20    THE COURT: For the cases I have left.
21    MR. KRUTZ: Exhibit --
22    THE COURT: Only for the ones that I've got left.
23    MR. KRUTZ: Yeah, those are done and gone.
24    THE COURT: Uh-huh.
25    MR. KRUTZ: And so what we want to do, your Honor,

**Page 23**

1  is first, we're working with some as we have the last weeks on
2  the Plaintiff lawyers to get these cases dismissed, as many as
3  possible. When that dust clears, we believe that we're going to
4  have a number of cases that we can easily do that we demand
5  related discovery on.
6    THE COURT: Well, I'm going to need a time limit on
7  that.
8    MR. KRUTZ: I figured you would.
9    THE COURT: A day, two days?
10    MR. KRUTZ: To do the depositions?
11    THE COURT: Why don't you just do --
12    MR. KRUTZ: We've got enough people here.
13    THE COURT: Why don't you just do one big Notice of
14  Deposition and notice them all for a certain week and see what
15  happens.
16    MR. KRUTZ: We'll do it.
17    THE COURT: Wouldn't that save you time and money
18  and everybody else and either they show up or they don't, one
19  after another. Do them in order. Give them a list, and those
20  are to be produced in that order.
21    MR. KRUTZ: We'll do that, your Honor.
22    Now as I understand it, one of the cases --
23    THE COURT: 30 days?
24    MR. KRUTZ: I'm sorry. Adams, one of the cases and
25  I've been talking to Mr. McMurtray. One of the cases, Adams,

**Page 24**

1  was over 400 of the Plaintiffs in it. That as I understand it,
2  his Fact Sheets aren't even due until the end of this week, so
3  we don't even have the Fact Sheets yet. I think that's correct,
4  in fact.
5    MR. MCMURTRAY: Good morning. Patrick McMurtray for
6  the Plaintiffs in this.
7    That is correct. Plaintiff's Fact Sheets are not
8  yet due, although we have been filing them piecemeal. And we
9  also just on Friday, I believe, provided Mr. Krutz's office at
10  least 26 of those plaintiffs who those cases can be dismissed
11  and so we're working with his office on that.
12    THE COURT: So when you get them Friday, you can
13  notice depositions over the next couple of weeks.
14    MR. KRUTZ: We will do that, your Honor.
15    MR. MANUEL: Your Honor, my client will --
16    THE COURT: Object -- strongly object.
17    MR. MANUEL: That's right. That's right.
18    THE COURT: I'll put down that you --
19    MR. MANUEL: We just believe that --
20    THE COURT: -- that you fought. They had to carry
21  you out kicking and screaming.
22    (Laughter)
23    MR. MANUEL: That would be correct, your Honor. We
24  just do believe that after the deposition process, we're going
25  to come back and we're going to come back and we're going to be

**Page 25**

1  in the same situation we were before --
2    THE COURT: Well, let's see.
3    MR. MANUEL: -- but then we have all these people --
4    THE COURT: Let's see. I mean, if what Mr. Krutz
5  says is correct, they all claim -- many of them are going to go
6  away.
7    MR. MANUEL: Can we have the opportunity before
8  depositions actually start, once we get this -- if they notice
9  them and we get these dismissals, can we have an opportunity to
10  be heard on whether actual depositions need to go forward before
11  they actually do?
12    THE COURT: I'm going to keep the same rules in
13  effect and Mr. Krutz's clients can notice the depositions. The
14  plaintiffs, if you've read all the orders -- I'm going to assume
15  all the Plaintiff's Attorneys that are in these 17 cases have
16  read all of the orders that apply to you.
17    MR. MCMURTRAY: Yes, your Honor.
18    THE COURT: And that means at time of deposition,
19  you have to know -- you have to give everybody notice well in
20  advance of what defendants you actually have a cause of action
21  against.
22    MR. MCMURTRAY: Yes, your Honor.
23    THE COURT: And I think that may shake you out a lot
24  of the problems that you're concerned about.
25    MR. MANUEL: We're just concerned --

Exceptional Reporting Services, Inc.    361 949-2988

Page 26

1  THE COURT: And I'm not trying to keep jurisdiction
2  over something I don't have jurisdiction over, except sometimes
3  I do. I think it may be somewhat more efficient for everybody
4  to do it this way. And I understand your argument. It's a good
5  argument, and it was very well presented.
6  (Laughter)
7  MR. MANUEL: Thank you, your Honor.
8  MR. ATWOOD: Your Honor, on the Adams case --
9  THE COURT: Yes, sir. Just one moment.
10  Go ahead. Yes, sir?
11  MR. ATWOOD: On the Adams case, Roy Atwood, your
12  Honor.
13  The Adams case is unique. It's a Western District
14  of Kentucky case. It has Defendants in it that are not
15  otherwise involved in this MDL and if the Court wants to
16  entertain discussion on the Adams case at this point, I'd like
17  to show the Court some facts from the Fact Sheets that we have
18  been provided by Plaintiffs that I think bears on your decision
19  with what to do with that case.
20  (Pause)
21  THE COURT: Unless you want me to treat it
22  differently, I'm putting it with the same group that's going to
23  be deposed.
24  MR. ATWOOD: I do, your Honor.
25  THE COURT: Okay. Go ahead.

Page 27

1  MR. ATWOOD: The problem that we have in that case
2  and these folks are from Kentucky and represent some of the
3  Defendants in this case as well, you have non-diverse non-
4  consenting Defendants who are only -- who are sand suppliers,
5  distributors in Kentucky whose only involvement in this MDL is
6  this case. And under your standing orders in the MDL, they
7  would have an obligation to do disclosures that pending the
8  decision on jurisdiction, when they didn't consent to remand or
9  they didn't consent to removal, they quite frankly want this
10  case back in State Court.
11  The Fact Sheets that have been filed, your Honor,
12  are --
13  THE COURT: I am -- I should have remembered that.
14  I'm not -- of all these remaining cases, I'm not going to order
15  the Defendant to make any disclosures until after the
16  Plaintiff's depositions.
17  MR. ATWOOD: Okay.
18  THE COURT: Does that take care of some of your
19  concern?
20  MR. ATWOOD: Well, it takes care of some of my
21  concerns, but your Honor --
22  THE COURT: Well, does anybody in that case, in the
23  Adams case, object to remand? Anybody? Any Defendant? Any
24  Plaintiff?
25  MR. KRUTZ: Yes, your Honor. We do.

Page 28

1  THE COURT: Okay. Go ahead.
2  MR. ATWOOD: Your Honor, what you have in this case
3  are 451 plaintiffs. We've gotten 306 Fact Sheets. We have zero
4  diagnoses of silicosis on the Fact Sheets. The B-Reads were all
5  performed by Dr. Ballard with consistent language --
6  THE COURT: All 451 or the 306 that are --
7  MR. ATWOOD: 306. We don't know about the --
8  THE COURT: Okay. Who is the Plaintiff's attorney
9  for Adams?
10  MR. MCMURTRAY: I am, your Honor. Patrick
11  McMurtray.
12  THE COURT: Where are the fact sheets? Are those
13  the ones -- are they due Friday or are they already due?
14  MR. ATWOOD: They are due -- the rest are due
15  Friday.
16  MR. MCMURTRAY: Yes, your Honor.
17  THE COURT: And 306 Fact Sheets with zero diagnosis,
18  is that right?
19  MR. MCMURTRAY: The B-Read language is correct.
20  There is --
21  THE COURT: No. Has anybody diagnosed those 306
22  with silicosis?
23  MR. MCMURTRAY: No, your Honor, other than what Dr.
24  Ballard has said in his B-Reads.
25  THE COURT: Okay. So you agree to dismiss those 306

Page 29

1  without prejudice?
2  MR. MCMURTRAY: Your Honor, I'm happy to discuss
3  that with the Defendants, but at this point --
4  THE COURT: You need to discuss it with me right
5  now.
6  MR. MCMURTRAY: Okay. Well, then, your Honor, if
7  you -- obviously you --
8  THE COURT: Okay. Unless you disagree, the premise
9  for all the Plaintiffs, every Plaintiff's case other than I've
10  not asked the Plaintiff's attorneys in these other 70 cases, the
11  premise for all the Plaintiffs is that they all agreed when they
12  came in that they have not -- that they do not have a cause of
13  action unless they have a diagnosis of silicosis.
14  Does any other Plaintiff Attorney disagree with
15  that?
16  MR. HOOPER: Your Honor, I must not. I have raised
17  several times to advise the Court that I don't agree with that.
18  THE COURT: Actually you haven't.
19  MR. HOOPER: Yes. I have.
20  THE COURT: Okay.
21  MR. HOOPER: It's on the record.
22  THE COURT: Okay. You think that your clients don't
23  have to have silicosis to have a cause of action right now?
24  MR. HOOPER: I clearly argued during the February
25  hearing that Plaintiff's individuals --

8 (Pages 26 to 29)

Page 30

1     THE COURT: Not in the February hearing, but before
2 that. Did you ever raise it before the February hearing?
3     MR. HOOPER: I'd have to go back and look at the
4 record.
5     THE COURT: I think you best do that. Thank you.
6     MR. HOOPER: Well, I'll say again, your Honor, that
7 individuals who have exposure to silica in significant
8 quantities who do not yet have a diagnosis of silicosis have an
9 injury that's recognized at law. Everybody who's ever studied
10 this, every scientist, every doctor, would agree with that.
11     THE COURT: All right. That was -- you have never
12 said that until the February hearing when your Plaintiffs were
13 going down.
14     MR. HOOPER: No, your Honor. I don't think that
15 that's true.
16     THE COURT: I think you need to go find that in the
17 record because I can assure you that everyone stood up here when
18 we first started this case, including you, and said, "I agree.
19 Every one of my Plaintiffs first have a diagnosis of silicosis,
20 and we agree that without a diagnosis of silicosis, they have no
21 cause of action at this time."
22     You said it. In fact, Mr. Basile, would you find
23 that in the record, please?
24     (Pause)
25     Yes, sir?

Page 31

1     MR. MCMURTRAY: Yes, your Honor. I understand what
2 you're saying correctly that you ruled before that a simple B-
3 Read without a diagnosis is not a cause of action, did not start
4 the cause of action.
5     THE COURT: That's why it's called a "screening."
6     MR. MCMURTRAY: Then, yes, your Honor, I would agree
7 that those cases should be dismissed.
8     THE COURT: All right.
9     MR. MCMURTRAY: Without prejudice.
10     THE COURT: So that's 306 I grant that dismissal
11 without prejudice. You just need to get me the names. Then you
12 have what? 94 left or -- that did not have Fact Sheets?
13     MR. ATWOOD: Well, 100 and -- well, you just
14 dismissed some, so...
15     MR. MCMURTRAY: Well, my numbers are a little bit
16 different than his, your Honor.
17     THE COURT: Okay.
18     MR. MCMURTRAY: And I don't know who is right. I
19 show 447 Plaintiffs listed.
20     THE COURT: 447? Well, you ought to know.
21     MR. MCMURTRAY: Well, I should, but he has an
22 overhead and I don't, your Honor.
23     (Laughter)
24     I'm always impressed by preparation. My Post-It
25 says, "447" at the top and of those I've already agreed to

Page 32

1 dismiss 26. I provided 313 Fact Sheets.
2     THE COURT: And that could be some of those 306 or
3 not?
4     MR. MCMURTRAY: Well, I don't believe so. I believe
5 that there is 313 sent of the 447. 26 have already been
6 provided to Forman Perry above and beyond that as cases that
7 should be dismissed and then that left me with 108 Plaintiffs
8 whose Fact Sheets have not yet been filed, which are not yet
9 due.
10     THE COURT: Okay.
11     MR. MCMURTRAY: I believe, your Honor.
12     MR. ATWOOD: Perhaps the question, your Honor, is
13 are the Facts Sheets that are going to be filed between now and
14 next Friday going to have diagnosis of silicosis, because if
15 they're just like the 306 we've gotten, then we can deal with
16 this whole thing at once in a week.
17     THE COURT: I'm not going to rule in advance, but I
18 mean --
19     MR. MCMURTRAY: And I believe so, your Honor, but I
20 don't know. I'm not prepared because those Fact Sheets haven't
21 been finalized.
22     THE COURT: You don't have them.
23     MR. MCMURTRAY: And in addition, I would expect that
24 a number of those 108 will ultimately be dismissed. These are
25 people who have trailed along in the Fact Sheet process, so I

Page 33

1 would expect at least half of those to have been dismissed
2 anyway, but I don't know the answer.
3     MR. ATWOOD: Then we'll file a Proposed Order based
4 on these 306 we have the Fact Sheets on at this point and we'll
5 follow that up with an order --
6     THE COURT: Okay.
7     MR. ATWOOD: -- once the rest of the Fact Sheets are
8 turned in.
9     MR. KRUTZ: Your Honor, this is what we were trying
10 to point out by saying based on our discussion with Mr.
11 McMurtray and other Plaintiff lawyers, we believe a lot of these
12 cases are about to go away by dismissals and that's why we would
13 prefer not -- for you not to remand anything until we've had an
14 opportunity to either get agreements from them to dismiss the
15 cases because of facts like this, or take some of the
16 depositions of the few people that will be remaining.
17     THE COURT: Well, I just remanded Wilson versus 3M.
18     MR. KRUTZ: Yes, ma'am.
19     THE COURT: That's a single Plaintiff case and
20 everybody agreed to remand it. Nobody stood up to disagree.
21     I understand your position on the other cases. I'm
22 not addressing any remands at this time.
23     I'm going to carry that motion -- those motions
24 forward for 60 days.
25     (Pause)

9 (Pages 30 to 33)

**Page 34**

1    That leaves Covey versus Union Pacific to do a
2 Scheduling Order, and let's do that at the end.  And I think
3 that takes care of everything in the Exhibit B cases, the still
4 pending cases, except for Alexander versus Air Liquide.
5    MS. SNAPKA:  Your Honor, Mr. Laminack's office
6 indicated that they received their -- the motion on the 10th and
7 would request their full 20 days to respond.
8    THE COURT:  No.  We're going forward with that
9 today.
10    Is Laminack -- O'Quinn Laminack?
11    MS. SNAPKA:  He's here.
12    MR. LAMINACK:  Rick Laminack, your Honor, for
13 Alexander.
14    THE COURT:  Have you all paid your sanction?
15    MR. LAMINACK:  My sanction?  We were discussing that
16 with Mr. Barger this morning.  My understanding is yes.  He
17 tells me his office has not yet received it.  I asked that it be
18 sent over a month ago.  I signed a check personally.  I even got
19 Mr. Barger's bank account number so I could send it.
20    THE COURT:  Did you want to give it to everybody
21 else?
22    MR. BARGER:  I went to Europe.
23    (Laughter)
24    THE COURT:  Well, there you have it, Mr. Laminack.
25    MR. BARGER:  We did talk a month ago.  He said he

**Page 35**

1 was sending it out that day.  We're checking on it now, Judge.
2 Obviously, it's not an issue.
3    THE COURT:  All right.
4    MR. LAMINACK:  And your Honor on this --
5    THE COURT:  Well, let me talk to you about the
6 Alexander versus Air Liquide.  If you could just take a moment
7 and pull out the first Petition, the First Amended Petition and
8 the Second Amended Petition?
9    The First Amended Petition did not have proper
10 jurisdictional allegations because citizenship was not pled.
11 Second Petition had proper allegations of citizenship for
12 everybody but one Defendant, and I said, "Please take care of
13 that."
14    The Second Amended Petition was filed and you went
15 back and filed -- somebody did -- filed the First Petition again
16 with no allegations of citizenship, so it's a mess.  If you
17 could just take a minute to pull those three Petitions out and
18 look at them and tell me what you want to do with them, we'll
19 come back to that.  But I have a feeling you couldn't possibly
20 have looked at those yet.
21    MR. LAMINACK:  I haven't seen them and you're
22 probably right, your Honor.
23    THE COURT:  So if you could look at those, I would
24 appreciate it.
25    Is that what you want to talk about?

**Page 36**

1    MR. COHEN:  Yes, your Honor.  Joe Cohen for American
2 Optical.
3    And also, your Honor, I note that Mr. Watts filed a
4 Motion to Remand in the Thirsty case in which he said three of
5 the Defendants are Mississippi citizens, in which case if that's
6 so, there couldn't be complete diversity since all the
7 Plaintiffs in this case, or many of them, are from Mississippi.
8 And I'm referring specifically to the -- I don't have the docket
9 number, but it is the Motion to Remand filed in Thirsty, Moore,
10 Large, Greer, and Crowe, in which he says in paragraph --
11 Section E on Page 10, with Kelco (phonetic), Quickfree
12 (phonetic) to Mississippi Valley are Mississippi citizens and if
13 that's so, there isn't complete diversity.
14    THE COURT:  Pardon?
15    MR. COHEN:  I said if that's so, there is not
16 complete diversity.
17    THE COURT:  Right.  Thank you.
18    Did you want to talk about Air Liquide, in the
19 Alexander versus?
20    MR. COHEN:  Your Honor, you've raised precisely the
21 point that we make and that is on the face --
22    THE COURT:  It's a mess.
23    MR. COHEN:  -- of the Second Amended Complaint, it's
24 not demonstrating diversity.
25    THE COURT:  It went back to the First Complaint,

**Page 37**

1 which was the worst one of all.
2    MR. COHEN:  It appears that way.  They have failed
3 to allege principal place of business for the Defendants, and
4 Statesman Corporation demonstrate diversity.
5    THE COURT:  And that's why I wasn't inclined to give
6 them their 20 days because they've had a year on that same
7 position.
8    MR. COHEN:  This is the third time, your Honor.
9    THE COURT:  It didn't apply the first time and it's
10 not doing well the second time.
11    MR. COHEN:  Correct.
12    THE COURT:  All right.  Thank you, sir.
13    Yes, sir?
14    MR. MULHOLLAND:  Your Honor, Danny Mulholland.
15    I was going to comment on the AO motion.  As you
16 know, I'm sure, in Pretrial Order 29, you suggested a procedure
17 for dealing with AO's objection to subject matter jurisdiction,
18 which was a dismissal of American Optical under 1653 and of
19 course, there's the other issues you've raised as to
20 jurisdiction.
21    THE COURT:  Well, I'm going to give Mr. Laminack a
22 chance to look at those three petition and figure out -- it's
23 American Optical that had the problem with -- that was not
24 properly pled in the Second Petition and First Amended Petition,
25 right?

Page 38

1    MR. MULHOLLAND: I believe that's correct, your
2  Honor.
3        MR. COHEN: I believe the First Amended was the last
4  live pleading before the --
5        THE COURT: Before the messed up one, before the one
6  -- before it reverted back to the original mess.
7        MR. COHEN: That's what it appears to be, your
8  Honor.
9        THE COURT: So I'll come back to that issue.
10       So Roman Numeral II, we have discovery motions,
11 Motions to Dismiss for Failure to Comply with Discovery Orders.
12       I don't think I have any jurisdiction to do anything
13 about that.
14       MR. MULHOLLAND: Your Honor, I think you do. And
15 there are -- you have to look at this motion through --
16       THE COURT: Okay. For failure to comply with my own
17 discovery motions and orders.
18       MR. MULHOLLAND: Actually it's easier than that.
19 We're talking -- I'm going to filter through your Motion to
20 Remand and put all those cases over here and just talk about
21 what cases are still before you.
22       THE COURT: The 17.
23       MR. MULHOLLAND: The 17, plus Alexander. Now we can
24 talk about Alexander in more detail later, if that's what the
25 Court would like.

Page 39

1        THE COURT: No. You can do that now, but I don't
2  want Mr. Laminack having to do two things at one time.
3        MR. LAMINACK: I'm ready, your Honor.
4        THE COURT: You're ready? Okay.
5        MR. MULHOLLAND: The --
6        MR. LAMINACK: Or I should say, somebody else is
7  looking at the petitions.
8        THE COURT: Thank you.
9        MR. MULHOLLAND: With respect to the McManus case,
10 which was one of the Exhibit B cases, there are after, what I
11 believe to be an Agreed Motion to Dismiss some Plaintiffs --
12       THE COURT: Speaking of Alexander, too, Mr.
13 Laminack, you -- and we'll get to this later, but you have
14 substituted in -- tried to substitute in, new diagnoses. You've
15 got 100 Plaintiffs in there and only 86 have a new diagnoses.
16       MR. LAMINACK: Correct.
17       THE COURT: So do you want to dismiss the other 14?
18       MR. LAMINACK: No.
19       THE COURT: What happened to them?
20       MR. LAMINACK: Nothing yet.
21       THE COURT: Well, I think that's why they get
22 dismissed if there's nothing wrong with them.
23       MR. LAMINACK: I understand, your Honor.
24       THE COURT: Okay. Unless you disagree with that? Do
25 you think -- never mind.

Page 40

1        Go ahead.
2        MR. MULHOLLAND: The McManus case, it started out
3  with 60-some-odd Plaintiffs and I think by the end of the
4  motions this morning, the Agreed Motions, we'll be down to 29.
5  Just last week, we had 22 Fact Sheets on file, seven of those
6  Plaintiffs did not have Fact Sheets. We got in the remaining
7  seven Fact Sheets last week, but they're unsigned.
8        Our particular problem with those 29 Fact Sheets, if
9  you count the seven unsigned ones, is this: We don't have any
10 of the screening information and the --
11       THE COURT: I'm sorry. I wasn't following you.
12 Which case was that? McManus?
13       MR. MULHOLLAND: McManus.
14       THE COURT: Okay.
15       MR. MULHOLLAND: There are going to be 29 Plaintiffs
16 remaining. Of those, we have 22 Fact Sheets, seven of which we
17 received last week and they are unsigned.
18       THE COURT: Who's the Plaintiff's Attorney for
19 McManus?
20       MR. CANSLER: Here, your Honor. Jason Cansler for
21 the Plaintiffs.
22       THE COURT: They have to be signed as an Affidavit.
23       MR. CANSLER: I'm sorry. I didn't hear your Honor?
24       THE COURT: How many are unsigned?
25       MR. MULHOLLAND: Seven.

Page 41

1        MR. CANSLER: Seven and --
2        THE COURT: What's the problem?
3        MR. CANSLER: I would assume that it was just client
4  error, your Honor. I don't think there's --
5        THE COURT: Client error?
6        MR. CANSLER: But we sent these things to them,
7  talked to them, and specifically tell them to sign them --
8        THE COURT: Didn't you read them?
9        MR. CANSLER: I think that was left to another
10 lawyer in the firm, which I would assume that they did and I
11 would hope that they would be a little bit more thorough, but it
12 looks like there's a mistake, your Honor.
13       THE COURT: Well, I don't think you should call it
14 "client error."
15       Many of these cases that I remanded, they may have
16 only one cause of action and it's not against the Defendants.
17       So when are you going to get those ready?
18       MR. CANSLER: Those seven, your Honor?
19       THE COURT: Yes.
20       MR. CANSLER: Immediately. As soon as we can get
21 back to the office, we will call the seven clients. I'm sure
22 Mr. Mulholland will be happy to give me the names of the seven
23 unsigned sheets.
24       THE COURT: You don't know which seven are unsigned?
25       MR. CANSLER: Your Honor, I do not know off the top

Page 42

1  of the my head know which seven are unsigned.
2      THE COURT: You'd rely on Mr. Mulholland to tell you
3  how to clean up your case?
4      MR. CANSLER: No, ma'am. I can always call Alice
5  Coleman in our Mississippi office to do that. I just -- he was
6  just standing right here so I thought I'd ask him.
7      THE COURT: And how many Plaintiffs did you start
8  out with McManus?
9      MR. CANSLER: 67, I believe, your Honor.
10     THE COURT: And you're down now to 29 Plaintiffs?
11     MR. CANSLER: That's correct.
12     THE COURT: Did you dismiss the others?
13     MR. CANSLER: There's an Agreed Motion to Dismiss
14  before the Court.
15     THE COURT: Have you got that with you?
16     MR. CANSLER: I do. Would you like it?
17     THE COURT: Please.
18     MR. MULHOLLAND: I believe there were 61 plaintiffs
19  to start out and we'll be down to 29.
20     THE COURT: Sorry.
21     MR. CANSLER: May I approach, your Honor?
22     THE COURT: Yes, sir. Thank you.
23  (Pause)
24     Do we have -- how many Defendants do you have?
25     MR. CANSLER: I'm sorry?

Page 43

1      THE COURT: How many Defendants?
2      MR. CANSLER: I don't have that count right in front
3  of me, your Honor. I'll take a guess, but I would think no more
4  than 35. That would be typical.
5      And I apologize, your Honor. I'm not the lead
6  attorney. The lead attorney, Alice Coleman, is with child and
7  could not fly to be here, so I apologize.
8      THE COURT: So you're not familiar with the case?
9      MR. CANSLER: No. I'm not saying that. I'm just
10  not the lead attorney.
11     THE COURT: But you don't know how many Defendants
12  or how many Plaintiffs or --
13     MR. CANSLER: Well, those things --
14     THE COURT: Those minor problems?
15     MR. CANSLER: I'm sorry? Yes, ma'am.
16     MR. MULHOLLAND: Your Honor, I'm told that there are
17  105 Defendants in the case.
18     THE COURT: Do you have any attorney from your firm
19  that's familiar with the case?
20     MR. CANSLER: Alice Coleman would be the most
21  familiar with the case, your Honor.
22     THE COURT: But you are not?
23     MR. CANSLER: No.
24     THE COURT: Apparently.
25     MR. CANSLER: Apparently not.

Page 44

1      THE COURT: And that is, of course, a requirement to
2  appear for your clients.
3      This order only dismisses Lockheed Martin. You
4  haven't -- and the Plaintiffs. Do you have an order that
5  dismisses the --
6      MR. COHEN: I have it as to without prejudice.
7      THE COURT: The 32 plaintiffs?
8      MR. COHEN: The 32 Plaintiffs right here also.
9      THE COURT: Okay. Give me that.
10     Anyone oppose this Order Dismissing without
11  Prejudice, the 32 Plaintiffs?
12     MR. MULHOLLAND: No, your Honor.
13     THE COURT: As to all Defendants.
14     Okay. That's granted. So you have 29 Plaintiffs
15  left and 20 -- and those seven have not -- seven of them have
16  not filed Fact Sheets in a timely manner; is that right?
17     MR. COHEN: I think they were filed somewhat
18  untimely, your Honor. That's correct.
19     THE COURT: Do you have 29 Fact Sheets, Mr.
20  Mulholland?
21     MR. MULHOLLAND: Yes. We have -- yes, that's
22  correct, your Honor, seven of which are unsigned.
23     THE COURT: Okay. So the 29 remaining have filed
24  some type of Fact Sheets, seven are unsigned.
25     MR. MULHOLLAND: Correct. And there's an additional

Page 45

1  problem with those 29 Fact Sheets.
2      THE COURT: And what is that?
3      MR. MULHOLLAND: We're aware, based on our own
4  research --
5      THE COURT: Sir, do you agree that your Plaintiffs
6  have to have a diagnosis of -- have to have silicosis to have a
7  cause of action?
8      MR. CANSLER: Yes, ma'am.
9      THE COURT: Okay. Do they have a diagnosis of
10  silicosis, Mr. Mulholland, in the 22 with the signed Fact Sheets
11  or the 29, including the unsigned Fact Sheets?
12     MR. MULHOLLAND: Well, facially, they appear to,
13  your Honor.
14     THE COURT: Who did the diagnosis?
15     MR. MULHOLLAND: Dr. Segara, but we're going to have
16  real big problems and they're markedly different from what the
17  Court saw in February regarding Dr. Segara's work. So that's
18  going to be the next -- or another issue that's going to loom in
19  the near future. It's a completely different view on Dr. --
20     THE COURT: It's different than what he testified to
21  is what you're saying?
22     MR. MULHOLLAND: Yes, your Honor.
23     THE COURT: In what fashion?
24     MR. MULHOLLAND: Well, as the Court may recall, Dr.
25  Segara testified he always did his own B-Reads.

12 (Pages 42 to 45)

1      THE COURT: He was a friendly witness to the
2  Defendant, as I recall.
3      MR. MULHOLLAND: In that proceeding --
4      THE COURT: In that proceeding.
5      MR. MULHOLLAND: There will be further proceedings.
6  He testified that he almost always -- I think all but -- he said
7  maybe one occasion did his own reading of X-rays. We now
8  have --
9      THE COURT: And he saw the clients in particular and
10  examined them and took either -- he or under his direct
11  supervision, the exposure history, along with the medical
12  history.
13      MR. MULHOLLAND: Right. We have a number of reports
14  filed in this case where he has not done that.
15      THE COURT: Have you talked to Dr. Segara about
16  this?
17      MR. MULHOLLAND: Not yet, your Honor, but we're
18  looking for an occasion to. And we would like the opportunity
19  to bring Dr. Segara back.
20      THE COURT: Would you like to visit with him here?
21      MR. MULHOLLAND: We would love to visit with him
22  here.
23      THE COURT: That's no problem. My court is your
24  court, as you know.
25      (Laughter)

1      The Plaintiffs and the Defendants, any time you want
2  it, it's yours.
3      Yes, sir. Have you talked to Dr. Segara about this
4  diagnoses?
5      MR. CANSLER: No, ma'am. I have not. Not about the
6  -- I've talked to Dr. Segara quite a bit, but not about these
7  particular issues before this Court, no, ma'am.
8      THE COURT: Did he examine all these patients?
9      MR. CANSLER: It's my understanding if he did a full
10  examine, that he did examine all the patients, at least that's
11  what we request that he did.
12      THE COURT: And he's -- where is he located?
13  Mississippi?
14      MR. CANSLER: Yes, ma'am.
15      THE COURT: And all your clients are Mississippi?
16      MR. CANSLER: Yes, ma'am. Other than the Wisconsin
17  Plaintiff, which we're currently taking care of.
18      THE COURT: What do you mean, "taking care of?"
19      MR. CANSLER: We're in correspondence with him. I
20  think it was just a mistake by, frankly, our office that a
21  Wisconsin Plaintiff got filed in a Mississippi case. I think
22  it's just a mistake, but we're taking care of that issue.
23      THE COURT: How?
24      MR. CANSLER: We are discussing with the Plaintiff.
25  I mean, well, this aside, we'll take care of it, your Honor.

1      THE COURT: I don't know what you mean you'll take
2  care of it.
3      MR. CANSLER: We're going to make sure that he's
4  ready to go here for this case. It's kind of an inconvenience
5  with the Wisconsin Plaintiff being in a Mississippi case. It's
6  our biggest concern.
7      THE COURT: Well, are you dismissing that Wisconsin
8  Plaintiff?
9      MR. CANSLER: Potentially. I can't say that right
10  now for sure. He's going to get some additional medical relief
11  there.
12      THE COURT: Is it Segara or Segura?
13      MR. MULHOLLAND: Segara.
14      THE COURT: Segara. Now -- oh, you know in the --
15  in some of the remaining 17, Nix, Douglas, Jackson, and Green,
16  you need to enter an order clarifying -- even though I don't
17  hear anybody objecting to jurisdiction -- well, there are
18  motions to remand. I need to clarify the citizenship of the
19  Defendants.
20      In Nix, Douglas, Jackson and Green, I'm going to
21  give you two weeks -- Plaintiffs attorneys two weeks to do
22  that.
23      MR. SMITH: Your Honor, I'm Allen Smith. I
24  represent the Plaintiffs.
25      THE COURT: In?

1      MR. SMITH: Nix, Douglas, Green and what was the
2  other one you said?
3      THE COURT: Jackson.
4      MR. SMITH: Yes, your Honor. And Jackson plaintiff.
5      THE COURT: Can you do that in two weeks?
6      MR. SMITH: Yes, ma'am.
7      THE COURT: Thank you, sir.
8      (Pause)
9      Mr. Mulholland, we were on the Motion to Dismiss, I
10  think, right?
11      MR. MULHOLLAND: Yes, your Honor.
12      THE COURT: Go ahead.
13      MR. MULHOLLAND: Now the additional problem with the
14  McManus --
15      THE COURT: I'll give him -- I'll give McManus seven
16  days to file the appropriate Fact Sheets signed.
17      MR. MULHOLLAND: One additional glaring problem with
18  those Fact Sheets is this: We're aware that at least 12 of
19  those 29 are retread, that also have asbestos claims and
20  pursuant to the Court's various orders, six, 12, 14, 25, and 27,
21  documents pertaining to those claims should be filed with the --
22      THE COURT: You got them out of the Manvel Trust? Is
23  that where you're getting those -- that information, the Manvel?
24      MR. MULHOLLAND: Partially from the Manvel Trust and
25  partially from the records of the Defendants who have also

13 (Pages 46 to 49)

## Page 50

1  -- some of whom also face asbestos findings.

2  THE COURT: I'm sorry. And your name again, please,

3  sir?

4  MR. CANSLER: My name is Jason Cansler.

5  THE COURT: I'm sorry?

6  MR. CANSLER: Jason Cansler, C-a-n-s-l-e-r.

7  THE COURT: Cansler, thank you, sir.

8  Mr. Cansler, did you know that 12 of the 29 have

9  been previously diagnosed with asbestosis?

10  MR. CANSLER: I can't speak specifically about that,

11  no, ma'am.

12  THE COURT: Why?

13  MR. CANSLER: Because I don't know if -- he's saying

14  that they currently are not being diagnosed with a mixed dust

15  pneumoconiosis. I don't know what he's trying --

16  THE COURT: Well, these are your clients.

17  MR. CANSLER: Well, I'm trying to figure out what

18  he's suggesting to this Court.

19  THE COURT: What he's telling me is that he has

20  information either from internal Defendant exhibits, their own

21  information in having defended silicosis -- asbestosis cases, or

22  from the John Manvel Trust, that 12 of your 29 have previous

23  claims of asbestosis.

24  MR. CANSLER: Okay.

25  THE COURT: Is that what you're saying?

## Page 51

1  MR. MULHOLLAND: That's correct, your Honor.

2  THE COURT: Is that on your Fact Sheets that they

3  have been previously diagnosed with asbestosis?

4  MR. CANSLER: If that was, in fact, true, I would

5  recommend to this Court that it should be on those Fact Sheets.

6  We rely on their answers to those Fact Sheets, yes, ma'am.

7  THE COURT: Have you represented anybody in

8  asbestosis claims, your firm?

9  MR. CANSLER: Yes, ma'am.

10  THE COURT: Did you represent any of these 29 in

11  your asbestosis claims?

12  MR. CANSLER: I don't know the answer to that and

13  would hate to be wrong.

14  THE COURT: Okay. I'm going to give you 30 minutes

15  to come back and give that information from someone in your

16  office that knows.

17  MR. CANSLER: Yes, ma'am.

18  Is there anything else before I?

19  MR. MULHOLLAND: No, your Honor.

20  THE COURT: Thank you.

21  MR. CANSLER: Thank you.

22  THE COURT: But we won't talk about McManus any more

23  until this gentleman returns.

24  MR. MULHOLLAND: Now your Honor the other case that

25  I think is still impacted or likely to be impacted by our order

## Page 52

1  25 motion, the Motion to Dismiss, is the Alexander case and the

2  real problem there comes in with this group of new medical

3  records, diagnoses --

4  THE COURT: Well, we'll get to that.

5  MR. MULHOLLAND: Excuse me?

6  THE COURT: We'll get to that in a minute.

7  MR. MULHOLLAND: Okay.

8  THE COURT: Mr. Laminack, are you ready with the --

9  have you looked at the three petitions?

10  MR. LAMINACK: We're still searching, your Honor.

11  We'll be ready before the hearing is over.

12  THE COURT: Do you want to just print them out for

13  him, Ms. Scotch?

14  CASE MANAGER: Yes, your Honor.

15  THE COURT: And what Mr. Laminack in Alexander you

16  just filed -- let's just take up the last of it. You just filed

17  the expert designations several months after the due date.

18  Did you know that?

19  MR. LAMINACK: I know that the due date fell during

20  a period in which you had stayed the proceedings.

21  THE COURT: No. I didn't stay the proceedings

22  during that time.

23  MR. LAMINACK: My understanding is your Honor stayed

24  -- issued a stay order in February and lifted it June 30th.

25  THE COURT: I think it was for certain matters and

## Page 53

1  not designation of experts.

2  MR. LAMINACK: My understanding is --

3  THE COURT: I didn't -- I stayed discovery during

4  that time.

5  MR. LAMINACK: Yes, your Honor. You stayed all

6  discovery.

7  THE COURT: But not designation of experts. That's

8  something you would have known from the beginning, your experts

9  MR. LAMINACK: Correct, your Honor.

10  THE COURT: So why --

11  MR. LAMINACK: We didn't designate them because my

12  understanding was that was part of the Master Discovery Order

13  and it was stayed by the Movants.

14  And so I wasn't about to do anything to violate your

15  order.

16  THE COURT: Okay. Well so when the stay was vacated

17  -- I don't agree with you about that, but let's say that you're

18  correct -- that your reading of that was correct. When the stay

19  was vacated -- Mr. Mulholland, end of the June?

20  MR. LAMINACK: June 30th.

21  MR. MULHOLLAND: June 30th.

22  THE COURT: June 30th.

23  MR. LAMINACK: Within six weeks, we listed all of

24  the experts we are going to use.

25  And I presume one of the things to be discussed

14 (Pages 50 to 53)

Page 54

1  today is the new Scheduling Order for the Alexander case.
2  　　　THE COURT: I don't think so.
3  　　　MR. MULHOLLAND: Your Honor, one of the truly
4  remarkable things about these new reports is they started -- the
5  dates on them go back to January of 2005 and the first time the
6  Defendants saw them was when they -- when the Alexander
7  plaintiffs responded to our Motion for Summary Judgment on
8  August 18th, 2005, and that motion had been filed in February.
9  So there are enormous timing problems throughout this process.
10 　　　THE COURT: I had -- and by the way, I had expert
11 discovery, which is why we had a February hearing of the
12 experts, the Dauberts and everything else. We had all those
13 were designated. The diagnosing physicians only were designated
14 per my Fact Sheet requirement. That discovery was supposed to
15 be ongoing. I never stayed those.
16 　　　The experts were due in Alexander June the 1st, '05.
17 I never stayed Alexander's discovery. I never stayed Alexander
18 at all. And instead, even if you -- there was some misreading
19 of that, that order on the regular MDL cases was vacated end of
20 June and these experts were not designated until August the
21 12th.
22 　　　MR. LAMINACK: Correct, your Honor.
23 　　　THE COURT: So why were they late designated?
24 　　　MR. LAMINACK: They weren't late, your Honor.
25 I mean, you lifted your stay June 30th. The stay

Page 55

1  order makes no distinction. It doesn't carve out Alexander at
2  all. It simply states, "All the discovery proceedings." Within
3  a very reasonable time after you lifted your stay, a lot of
4  deadlines had run during your stay. And certainly within a
5  reasonable time after you lifted your stay and in light of all
6  of the rulings and pronouncements the Court had made, I think
7  less than six weeks is a very reasonable time to attempt to
8  comply and address the Court's concerns, concerning experts, all
9  that you've said and written.
10 　　　It would be obviously derelict not to have done
11 that, and not to take into consideration everything you said and
12 all your rulings about experts, so we have been very careful in
13 what we've done with respect to experts. And I think you'll
14 find that we've been very thorough and in the Motion to Dismiss
15 and the Motion for Summary Judgment that they addressed, I hope
16 to have an opportunity to discuss that with you and why we did
17 certain things. I certainly think less than six weeks time
18 after you lifted the stay is reasonable time for designation.
19 　　　THE COURT: Why is that? I assume you had them all
20 along?
21 　　　MR. LAMINACK: Not all of them. We certainly had
22 some of them. Some of them we had been working with.
23 　　　MR. MULHOLLAND: Your Honor, all but four are dated
24 before June 7, 2005 and they began receiving them January 11th,
25 2005. And I can run down the dates on -- the dates and letters

Page 56

1  that need be, but the bulk of them were done by April 2005 and
2  again, the Defendants didn't see them until August 18th.
3  　　　MR. LAMINACK: That's correct. Discovery was
4  stayed.
5  　　　MR. MULHOLLAND: What was not stayed, however, your
6  Honor, even if discovery were stayed, was our Motion for Summary
7  Judgment and this is only thing that they submitted in response
8  to our Motion for Summary Judgment. It's been on file since
9  February -- February 25th.
10 (Pause)
11 　　　THE COURT: Well, I'm not sure that that's a good
12 explanation, Mr. Laminack.
13 　　　MR. LAMINACK: What's that, your Honor?
14 (Pause)
15 　　　THE COURT: Did you print them off?
16 　　　THE CLERK: Yes. They are printing.
17 　　　THE COURT: Thank you.
18 (Pause)
19 　　　I'm waiting for -- I think the whole matter will be
20 resolved when he looks at the petitions. I'm going to dismiss
21 it for lack of jurisdiction anyway.
22 　　　MR. LAMINACK: Dismiss the whole case for lack of
23 jurisdiction?
24 　　　THE COURT: When you look at the petitions, I think
25 you'll realize that. You've had over a year to identify -- to

Page 57

1  properly identify the Defendants with their citizenship.
2  　　　MR. LAMINACK: Well, first of all, your Honor --
3  　　　THE COURT: Their place of incorporation, and their
4  principal place of business, and for some reason, the Plaintiffs
5  have been unable to do that.
6  　　　MR. LAMINACK: First of all, I disagree with that,
7  your Honor.
8  　　　Second, there's only one party moving.
9  　　　THE COURT: Pardon?
10 　　　MR. LAMINACK: There's only one party -- one
11 Defendant that's moved for dismissal, based on lack of
12 jurisdiction.
13 　　　THE COURT: I can sua sponte do this any time.
14 　　　MR. LAMINACK: I understand that, your Honor.
15 　　　THE COURT: At any time and you all have had more
16 than enough time. I have given you so much leeway in this case
17 for improper pleadings, to fix them. You fix them one time then
18 they go back to the improper pleading a second time. And all
19 you were supposed to do was clarify about the one Defendant and
20 instead you muddied the water with all the Defendants again.
21 　　　Any other Motions to Dismiss?
22 　　　MR. MULHOLLAND: Your Honor, we have additional
23 arguments about the Alexander documents, but we'll defer those
24 based on the Court's comments.
25 　　　THE COURT: Go ahead. If you'd like to talk about

15 (Pages 54 to 57)

**Page 58**

1  them, you may.
2      MR. MULHOLLAND: Well, the -- it's more of the same.
3  Of the -- and this gets nightmarish because there are
4  plaintiffs in the first petition that don't appear in the Second
5  Petition. They reappear in the Third Petition.
6      THE COURT: I know. It's a mess.
7      MR. MULHOLLAND: But suppose there are about 82 that
8  purport to have new diagnoses and I think that's right -- 60
9  percent of those are retreads. They've also got asbestosis
10  claims.
11      Now in reference to our motion that we're talking
12  about the, the Order 25 Motion, those documents have not been
13  produced, and obviously it's critical to this claim for
14  silicosis that we have their prior asbestosis claims. 33 --
15      THE COURT: Mr. Laminack, do you have those by the
16  way?
17      MR. LAMINACK: Pardon me, your Honor?
18      THE COURT: In the Alexander and Mr. Mulholland is
19  saying that -- how many -- what percentage of those?
20      MR. MULHOLLAND: Sixty of 82, 73 percent.
21      THE COURT: Sixty of 82 have also previously had
22  asbestosis claims; is that correct?
23      MR. LAMINACK: I have no idea, your Honor. I'm not
24  aware of this. What I can say is, we never, never represented
25  an asbestos claimant and then turned around and retread it as a

**Page 59**

1  silicosis claimant. We never, ever did that.
2      THE COURT: But Mr. Mulholland is saying that
3  somebody else did.
4      MR. LAMINACK: Now we have gone to --
5      THE COURT: But that the 70-something percent of
6  these remaining Plaintiffs also have a claim for asbestosis.
7      MR. LAMINACK: Okay. We have gone to great lengths
8  to inquire of our clients whether or not they ever had an
9  asbestos claim.
10      THE COURT: Do you have the names?
11      MR. MULHOLLAND: Yes, your Honor. I have a
12  spreadsheet that lists them all out.
13      THE COURT: Let's do that. Let's just read them in.
14      MR. MULHOLLAND: And --
15      THE COURT: This is what we did at the February
16  hearing.
17      MR. LAMINACK: I understand that and when we got the
18  names at the February hearings, we wrote those clients letters.
19  We said, "Who is your lawyer? Did you have an asbestos lawyer?"
20  When we got that information, we wrote the lawyers. We said,
21  "Please provide that information. We're under Court Order to
22  turn it over."
23      In some cases we got it. In some cases we didn't
24  get it from the lawyers.
25      THE COURT: And here we are -- here we are in

**Page 60**

1  August. Okay. Just -- you want to put it on the overhead
2  screen?
3      MR. LAMINACK: So in short, we've given them
4  everything we have.
5      MR. MULHOLLAND: Your Honor, as a suggestion and
6  I'll do obviously whatever you like, we'd be willing this
7  afternoon or tomorrow to provide him a list of the Plaintiffs
8  that have asbestos claims. The lawyers that represent them --
9  the cases they were and so forth.
10      THE COURT: Just put them on the overhead. Let me
11  see them on the Elmo.
12      What information do you have?
13      Mr. Mulholland, has the Plaintiff's Attorney in
14  Alexander given you the information from the asbestosis claims?
15      MR. MULHOLLAND: No. We have three different --
16      THE COURT: Any of them?
17      MR. MULHOLLAND: I don't -- they identified the --
18  the Court may recall what we call the "O'Quinn 331" just as
19  Plaintiffs who also had asbestos claims, but we don't have any
20  of the underlying --
21      THE COURT: The X-rays, the diagnoses?
22      MR. MULHOLLAND: Correct. We don't have that -- we
23  do not have that, your Honor.
24      MR. BARGER: What are you trying to do?
25      MR. MULHOLLAND: Focus.

**Page 61**

1      MR. MULHOLLAND: Do that down here.
2      THE COURT: Zoom in and push focus. Zoom in all the
3  way. We'll do it. Ms. Scotch will do it. This is very
4  difficult.
5      (Laughter)
6      MR. KRUTZ: Sit down, Barger.
7      MR. BARGER: I failed again.
8      (Pause)
9      MR. MULHOLLAND: Your Honor, on the left column is
10  the name, and Column A and B is the last and first name of the
11  Plaintiff. Column C is the social security number. Over to the
12  right, beginning at Column K, L, M, and N are information based
13  on either our firm's internal records or the JM Trust, which we
14  were able to determine, the case the Plaintiffs were in, their
15  lawyers historically. You know, this is the information that we
16  have about the asbestos claims.
17      THE COURT: Mr. Laminack, these are your clients.
18  This information you had in February and here we are in August.
19      MR. LAMINACK: Correct. It's information I provided
20  them --
21      THE COURT: And do you have the X-rays from the
22  asbestosis claims? Do you have the medical reports from the
23  asbestosis claims?
24      These are your clients. They were supposed to have
25  identified on their original Fact Sheet, all of these diagnoses,

Page 62

1  but apparently failed to do so.
2       Now what you have here is 70-some-odd percent of
3  your clients that have had both a diagnosis, according to you,
4  of silicosis and asbestosis, which when I heard all the experts
5  in February, not a single expert had ever seen a combination of
6  those two. Only Plaintiff's lawyers have seen them.
7       Not a single physician that testified here had ever
8  seen -- they didn't rule out that it wasn't possible, but none
9  of them had ever seen a case of asbestosis and silicosis
10 combined.
11      And so the sanctions that were given originally for
12 this may continue. Those documents should be provided by your
13 clients. I assume that your experts that you've identified are
14 going to explain why some 70 percent of your clients have both
15 silicosis and asbestosis and how that could possibly have
16 occurred, and I just need to give you fair warning about this
17 because this stretches credibility.
18      MR. LAMINACK: Your Honor, I understand and I don't
19 like it, either. I want the Court to know that. I have
20 listened very carefully to everything you've said.
21      THE COURT: I appreciate that.
22      MR. LAMINACK: And I've heard your concerns. And
23      THE COURT: But those were February concerns and --
24      MR. LAMINACK: I totally understand. And you bet my
25 experts are going to explain that. I think the explanation on a

Page 63

1  lot of the cases is the asbestosis diagnosis is wrong.
2       THE COURT: Well, that would be a shame, wouldn't
3  it, that your clients made fraudulent claims in asbestosis and
4  now those same people who made fraudulent claims are trying to
5  make another pneumoconiosis claim here. It -- that impacts
6  their credibility tremendously.
7       I wonder, also, for each of the Plaintiff's lawyers
8  that have these cases, if they have informed their clients once
9  you acquired this diagnosis for your clients that they now have
10 to forever have the diagnosis of a terminal disease, that
11 they're obligated to tell their life insurance carriers. If
12 they acquire new life insurance, if they change health insurance
13 providers, that they have this disease.
14      Do you think that they know this, Mr. Laminack?
15      MR. LAMINACK: Your Honor, that's a very good point.
16 I agree totally with what you're saying.
17      THE COURT: Would you mind standing in front of a
18 microphone? I beg your pardon, Mr. Laminack. There's one on
19 each of the tables -- actually most of the tables, and there's
20 some overhead mikes that don't work because I had to disconnect
21 them to do these, but...
22      MR. LAMINACK: I understand and I agree with what
23 the Court has said. Obviously I don't want to go into what I
24 talked to my clients about --
25      THE COURT: I understand.

Page 64

1       MR. LAMINACK: -- other than to say we have been
2  very candid with our clients about these issues and the
3  repercussions.
4       And your Honor, I've got enough to do. I don't want
5  to represent people that don't have legitimate cases. I don't
6  want to do that. That's not my purpose in being here. All I
7  know is at this point 87 of these Alexander plaintiffs have
8  good, solid Daubert-proof diagnoses of silicosis. They've got
9  it.
10      THE COURT: And 70-some-odd percent of those also
11 had apparently solid Daubert-proof asbestosis diagnoses.
12      Did you print off the document for him?
13      MR. LAMINACK: I doubt that.
14      THE COURT: Pardon?
15      MR. LAMINACK: I doubt that's true.
16      THE COURT: About the asbestosis?
17      MR. LAMINACK: Yes.
18      THE COURT: And Mr. Laminack, you can speak on
19 behalf of your clients about that?
20      MR. LAMINACK: As I say, your Honor, I doubt that. I
21 doubt the numbers, and I doubt the diagnosis.
22      THE COURT: You doubt that they had claims or you
23 doubt that they actually had asbestosis?
24      MR. LAMINACK: Both.
25      THE COURT: Okay. Here are your -- we've printed

Page 65

1  off the three petitions that we're talking about, Mr. Laminack.
2  And one more. There's one more coming, sorry. You can take
3  that, too.
4       MR. LAMINACK: And I'm not -- I'm not taking a
5  cavalier attitude, your Honor, but that's not a problem.
6       THE COURT: Well, I don't hear that.
7       MR. LAMINACK: I know that's a problem.
8       THE COURT: And I appreciate that, Mr. Laminack, but
9  I --
10      MR. LAMINACK: And you can bet I don't want to be
11 here.
12      THE COURT: This is your Court, Mr. Laminack.
13      MR. LAMINACK: In this type of setting.
14      THE COURT: You're welcome here any time and your
15 clients.
16      MR. LAMINACK: Well, I hope this is my courtroom,
17 too, just like it is for the Defendants.
18      THE COURT: It is your courtroom, Mr. Laminack.
19      MR. LAMINACK: And I hope it belongs to my clients,
20 too.
21      THE COURT: It's not my courtroom. It belongs to
22 all of you.
23      Here's the third petition. And if you read them in
24 order, you'll see the problems.
25      MR. LAMINACK: I will do that right now, your Honor.

17 (Pages 62 to 65)

Page 66

1    THE COURT: Thank you, sir.
2       So I will excuse you and we'll go back then to
3  McManus. I see the attorney is back -- is in.
4       If you could change gears, Mr. Mulholland?
5       MR. CANSLER: They're working on it right now, your
6  Honor. They're supposed to call me back in ten minutes. I just
7  didn't want to miss what was going on in here.
8       THE COURT: All right. I assume you don't have a
9  cell phone on.
10      MR. CANSLER: Not in this big room, no, ma'am.
11      THE COURT: Thank you very much.
12      MR. MULHOLLAND: Your Honor, both with respect to
13  the McManus case and with respect to the information that's on
14  this chart as to Alexander, these matches to prior asbestos
15  claims were made by social security number and not name, so I'm
16  fairly confident, but not positive that it is.
17      THE COURT: Let's not talk about Alexander while Mr.
18  O'Quinn -- I mean, Mr. Laminack is not here.
19    (Pause)
20      Does that conclude then your presentation under
21  Roman Numeral II Discovery Motions to Dismiss?
22      MR. MULHOLLAND: Except for some additional
23  information about Alexander.
24      THE COURT: Okay. We'll then I'll come back to
25  that.

Page 67

1       Now B, Motion to Compel Screening Companies'
2  Compliance with Order Number 25.
3       MR. ARGENTO: Good morning, your Honor.
4       My name is John Argento and I filed this motion on
5  behalf of my clients and certain other Defendants. Your Honor
6  issued Order Number 25, which I'm sure you're familiar with,
7  that required the disclosure and filing with the depository of
8  certain information dealing with names of the screening
9  companies that screened each of the Plaintiffs, medical records
10  that dealt with any Plaintiffs that were in this MDL, other
11  medical records and information from either other treating
12  physicians or diagnosing doctors.
13      Your Honor, what we did before we presented this and
14  prepared this motion, we went to the depository and got an index
15  of everything that was filed by either a party or on behalf of a
16  Plaintiff by a law firm that represented them in this
17  litigation. What we were able to determine, your Honor, is that
18  there are four firms that filed absolutely nothing in response
19  to Order Number 25 that we can determine.
20      Now there is one possibility, your Honor, and it
21  does get confusing sometimes. Some of the firms work together
22  on cases or they're affiliated with respect to certain clients,
23  so if one firm filed something that satisfied the requirement
24  for another law firm, I'm not here and able to determine that. I
25  need to hear from the Plaintiffs' firms about that and you need

Page 68

1  to hear about that.
2       But your Honor those four firms are Brent Coon and
3  Associates --
4       THE COURT: Are who?
5       MR. ARGENTO: Brent Coon and Associates, your Honor.
6  Ingraham and Associates, Mr. Hooper's firm, and the Shannon Law
7  Firm, which I think may have been corrected or rendered moot
8  today because I think they only have the Cole case and that case
9  was dismissed, if I'm not --
10      THE COURT: Okay. So that's -- we're talking three
11  law firms?
12      MR. ARGENTO: Yes, your Honor. And then there are
13  other -- there are other law firms, your Honor, that we were
14  able to determine that they are in partial compliance, but
15  there's great amounts of information that are missing that
16  caused them to not be in compliance with Order Number 25.
17      And I can get into the details by law firm, if you'd
18  like me to, but perhaps as a suggestion, we could talk about the
19  three law firms first that as far as our research has indicated
20  have not filed anything in compliance with Order Number 25.
21      THE COURT: Is the Brent Law Firm here? Brent Coon
22  and Associates?
23      MR. CANSLER: That's me again, your Honor. That's
24  my firm.
25      THE COURT: And can you tell me, do you have any

Page 69

1  documents in response to Order Number 25?
2       The problem with that is that I know that I said all
3  orders apply to all new cases, but I had a date of February
4  25th, 2005 that everybody had to file. I don't think their law
5  firm was even -- had a case here.
6       MR. ARGENTO: That's possible, your Honor. That's
7  possible in light of --
8       THE COURT: So these, I think, that all they've got
9  are some new cases?
10      MR. CANSLER: We're one of the new cases, your
11  Honor, and I've got a letter here when we were filing and trying
12  to file with the Court. We were having difficulty because we
13  could not get a style. I talked to Ms. Scotch here, your Honor,
14  and of course, your clerk.
15      Where we were having difficulty actually filing it
16  and did not want to be out of compliance with any of the orders.
17      THE COURT: Okay. Well, you don't make any
18  agreements with my case manager. You're agreements either are
19  in court or made with other parties when you can file them, but
20  sending a letter to Ms. Scotch saying this is to confirm my
21  understanding of your conversations with my paralegal, doesn't
22  do a thing.
23      MR. CANSLER: Yes, ma'am. Well, I -- yes, ma'am.
24      THE COURT: And she's not obligated to respond at
25  your bottom line that says, "If this is not correct, please

18 (Pages 66 to 69)

## Page 70

1  notify either myself or my staff." That isn't how we do
2  business here. It's not sent out to all the other parties.
3       MR. CANSLER: I had spoke to --
4       THE COURT: Would you give that back to him, please?
5  What did you tell him about that?
6       MR. CANSLER: -- a member of Forman Perry Watkins
7  Reese and Tardy about this and told them that we were having
8  some problems and that was the extensive instructions.
9       THE COURT: What problems were you having?
10      MR. CANSLER: I couldn't -- they would not give me a
11 cause number to file the discovery into the repository, as I
12 understood it. I could have filed it, but they didn't -- it
13 didn't -- I didn't have a number.
14      THE COURT: Who was supposed to give you that? What
15 was your understanding about that?
16      MR. CANSLER: My understand was, and if I could read
17 my letter, I think it --
18      THE COURT: No. I don't care what your letter to my
19 case manager.
20      What was your understanding about how you were
21 supposed to file? Did you call the Liaison Plaintiff's Counsel?
22      MR. CANSLER: Mr. Watts? Yes, ma'am.
23      THE COURT: And what did he tell you?
24      MR. CANSLER: I don't recall him ever getting back
25 in touch with me, to be honest with you.

## Page 71

1       MR. ARGENTO: Your Honor, to follow up on your point
2  about when this firm may have been involved --
3       THE COURT: Your cause number -- what case are you
4  talking to -- talking about for cause number, McManus?
5       MR. CANSLER: Yes, ma'am.
6       MR. ARGENTO: Your Honor, there were Fact Sheets
7  filed in that case as far back as May 5th.
8       THE COURT: I have a Southern District Cause Number
9  205-121 and you filed documents in that cause number.
10      MR. CANSLER: And my understanding was we were
11 supposed to stop.
12      Your Honor, let me call Ms. Coleman once again and
13 find out for --
14      THE COURT: What are you doing here if you don't
15 know anything about this? This is very unfortunate.
16      MR. CANSLER: I was just trying to help out a lawyer
17 colleague of mine --
18      THE COURT: I understand that, but --
19      MR. CANSLER: -- who cannot fly because of her --
20      THE COURT: -- you need to -- do you have a Federal
21 license?
22      MR. CANSLER: Yes, ma'am.
23      THE COURT: Have you read the Federal Rules on what
24 you're supposed to do to appear for lead counsel and what your
25 level of -- do you have the authority to bind your client today?

## Page 72

1       MR. CANSLER: Yes, ma'am.
2       THE COURT: To what?
3       MR. CANSLER: It just depends on what you -- I need
4  to. I would have full authority, I would say.
5       THE COURT: You're supposed to be familiar with the
6  case and you're, as you said, clearly not so why don't you go
7  back and check with your firm and see what it is you can do?
8       MR. CANSLER: And what information specifically does
9  the Court request or is asking me --
10      THE COURT: I wanted to know why you've not filed
11 the documents in response to Order Number 25. It can't be
12 because you didn't have a cause number, because you've been
13 filing documents in this cause number in McManus, 2-05-121,
14 since the case was transferred.
15      MR. CANSLER: In my last conversation with Ms.
16 Coleman, her representations to me, your Honor, was that
17 everything that we had in our possession, custody, and control
18 had been turned over to the Court. If there's things out
19 there --
20      THE COURT: I don't take discovery. It goes into a
21 document depository.
22      MR. CANSLER: And that's what I --
23      THE COURT: Can you find out what documents you have
24 filed in response to Order Number 25?
25      MR. CANSLER: Yes, ma'am.

## Page 73

1       THE COURT: Do you have X-rays of your clients?
2       MR. CANSLER: Those have been filed, it's my
3  understanding.
4       MR. ARGENTO: Your Honor, that's not what the
5  deposit log from the depository says. The depository log
6  indicates that on May 5th, they filed some Fact Sheets and
7  that's the only filing they have for his law firm. And I got
8  this from --
9       THE COURT: Find out where the X-rays are, where the
10 expert reports are, where the diagnosing physician reports are.
11      MR. CANSLER: Yes, ma'am.
12      THE COURT: Did any of these have asbestosis claims?
13      MR. ARGENTO: Your Honor, these are part of the
14 McManus, so yes. We've already had that discussion this
15 morning.
16      THE COURT: Oh, McManus, they've had asbestosis
17 claims also?
18      MR. ARGENTO: I believe so, your Honor.
19      THE COURT: You need to find out where those
20 documents are that have to do with the asbestosis claims, and
21 report back.
22      MR. CANSLER: Yes, ma'am. Sorry for the
23 inconvenience.
24      THE COURT: Thank you, sir.
25      MR. ARGENTO: Your Honor, the next firm is the

19 (Pages 70 to 73)

Page 74

1   Ingraham firm and according to the deposit log from the
2   depository --
3        THE COURT: Is anyone here from Ingraham?
4        MR. ARGENTO: Cheri is not sure if they have any
5   active cases.
6        THE COURT: Cases left?
7        MR. ARGENTO: And your Honor, when we sent out the
8   motion, we sent it out a week or ten days in the advance with
9   the hope that some of these firms would call us. No one called
10   us from the Ingraham firm.
11        THE COURT: Okay.
12        MR. ARGENTO: So if they do not have any active
13   cases, we'll withdraw them.
14        THE COURT: And what have you got, Mr. Hooper?
15        MR. HOOPER: Your Honor, my reading of Order 25 was
16   about the screening companies only. As I've advised the Court
17   several times and the defendants, we didn't use screening
18   companies. We had a discussion with the Court during the
19   February hearing about on the day the order was entered that we
20   had used a company when we couldn't use land-based X-rays --
21   like a facility that had land-based X-rays that we used a
22   company called "Inner Visions," to do the X-rays. And during
23   the discussion with the Court, it's my understanding that we had
24   to produce those records. We have produced Inner Visions
25   records to the Defendant.

Page 75

1        My reading of 25 was about the screening companies
2   and we didn't use screening companies. If the Court would like
3   for me to file an Affidavit that Inner Visions has complied with
4   producing all of their records, I'll be happy to do that or if
5   the Court needs something from Inner Visions, we'd be happy to
6   do that.
7        THE COURT: Okay. That's not what I ordered in
8   Order 25, that you should file on the date that I specified, "A
9   list of all screening companies, medical testing companies, and
10   other entities or persons who supplied any Plaintiff's B-Read
11   and/or diagnosis of silica-related diseases to any Plaintiff's
12   Counsel in this MDL."
13        And of course, the list should include the name,
14   addresses, and phone number of each screening company, but did
15   not apply just to screening companies.
16        Now these are third-party people. If you don't --
17   if you tell me you didn't check with them, but if you don't
18   have any control over that, that's another thing all together.
19   But if these are going to be produced in any way to substantiate
20   any of these claims are --
21        MR. HOOPER: Your Honor, to the extent that it -- if
22   we're talking about doctors like Dr. Ballard, who did the B-
23   Reads, or Dr. Levy, who did the medical report. If it
24   encompasses those, Dr. Ballard and Dr. Levy have produced all of
25   their records, also. My understanding is Dr. Levy didn't

Page 76

1   produce a handful, and I don't know the number of files of
2   people that were incomplete that he had not diagnosed. So if
3   we're talking about those doctors, which I didn't read it, and I
4   asked the Court about the scope of it.
5        THE COURT: Wait a minute. What are you missing
6   that you want from Mr. Hooper's clients?
7        MR. ARGENTO: Well, your Honor, we're just asking
8   for what you ordered and that any physician that made a
9   diagnosis should supply through Plaintiff's Counsel an affidavit
10   saying they've supplied everything and we don't have affidavits
11   from anyone who diagnosed any of Mr. Hooper's clients.
12        MR. HOOPER: If that's the scope of the order, I'm
13   sorry because I -- I'm sorry. We'll get that affidavit.
14        THE COURT: All right. How long do you need to do
15   that?
16        MR. HOOPER: May I have two weeks?
17        THE COURT: That's fine. Thank you.
18        MR. ARGENTO: Your Honor, that takes care of that
19   group of firms and then there are other firms, your Honor, the
20   first one being Campbell Cherry where our investigation has
21   disclosed that they have provided no list of screening companies
22   or other medical testing companies as was required, and while
23   they did file an affidavit from M&N, they have not filed
24   affidavits from Drs. Martindale, Hilbun, Cooper, Ray Herron, and
25   perhaps other doctors.

Page 77

1        THE COURT: I think their testimony would suffice.
2        MR. ARGENTO: Good. But we would like --
3        THE COURT: That was all under oath.
4        MR. ARGENTO: Your Honor, we weren't sure exactly
5   how much detail they got into, whether they were asked about all
6   their records and whether or not they still retained anything,
7   so that's the only reason we brought it up.
8        THE COURT: I think that all those people did say
9   they didn't have any records. They didn't have any records at
10   all.
11        MR. BARGER: Yes.
12        THE COURT: If I recall correctly.
13        MR. BARGER: That's a correct assessment.
14        MR. ARGENTO: Your Honor, we'd still like a list of
15   all the screening companies and other medical providers, because
16   again there's no way for us to know if we're missing anybody
17   unless we have that list and it's provided.
18        THE COURT: All right. Campbell Cherry?
19        MS. SNAPKA: Your Honor, I believe those cases were
20   remanded. I don't believe we have any more.
21        THE COURT: I don't think I have any more Campbell
22   Cherry cases in front of me.
23        MS. SNAPKA: Yes. I believe that's correct, your
24   Honor.
25        MR. ARGENTO: Your Honor, the other firm would be

20 (Pages 74 to 77)

**Page 78**

1  the Alwyn Luckey (phonetic) firm. Again, no list of screening
2  companies.
3      THE COURT: The what company?
4      MR. ARGENTO: Alwyn Luckey, that law firm.
5      THE COURT: Anyone here from that company -- from
6  that firm?
7      MR. MULLINS: I'm here for the law settlement. Our
8  people were here live and while were here they produced
9  everything we had. I don't know what they suggest we --
10     THE COURT: Why not just make a -- if you make a
11  representation that that's all there is, there isn't any more.
12     MR. MULLINS: That's all there is, and I think these
13  were referenced again were May cases, which this Court -- we've
14  given everything we have.
15     THE COURT: Okay.
16     MR. ARGENTO: Your Honor, there was a letter from
17  Mr. Mullins indicating that he had attempted to contact Quality
18  Testing Services, that they were out of business, that some of
19  their records had been destroyed in a hurricane and that the
20  owner, Mr. Childers, had been away on vacation for a week and
21  that he was going to continue to try to speak with him and get
22  compliance with the Court's order. That was a letter dated in
23  February.
24     THE COURT: I don't have any of his cases.
25     Do I have any of his cases? Is he part of the 17?

**Page 79**

1      MR. MULLINS: No, your Honor.
2      MR. ARGENTO: I think they're remanded.
3      THE COURT: Do you answer anyway? Do you know
4  anything about that company?
5      MR. MULLINS: It's my understanding those records
6  were destroyed in Hurricane Ida. I think he was actually might
7  have had one or two of the actual cases that we represented. We
8  had never been successful in getting those back. He's an
9  independent party. He's out of business. He does something
10  else now. I've talked to his wife multiple times and we've
11  tried to get them to us. She said she thought they were all
12  destroyed. They've never been given to us.
13     MR. ARGENTO: Your Honor, the last one is the Porter
14  and Maluth (phonetic) Firm and the Foxworth and Casano
15  (phonetic), who I believe filed cases jointly. There were 19
16  providers that we were able to determine from review of the
17  records that we did not have affidavits from, none of whom were
18  experts that testified here at your Daubert hearing.
19     And your Honor, interestingly enough, ten out of the
20  19 called us in response to the motion and all ten of them told
21  us that they had never heard of Order Number 25. They had never
22  been contacted by anybody from the law firm to comply and that
23  in every instance we referred them to Attorney Porter and said,
24  "You need to talk with him."
25     MS. SNAPKA: Your Honor, I believe all those cases

**Page 80**

1  have been remanded, as well.
2      THE COURT: Do you have any response to that anyway?
3      MS. SNAPKA: I do not. I am not familiar with it. I
4  only know that those -- all the cases that --
5      THE COURT: Is anybody from the law firm here?
6      MS. SNAPKA: No, your Honor. I know that Mr.
7  Foxworth had a family emergency and I was advised of that, I
8  think, yesterday.
9      MR. MULLINS: His mother has brain cancer. It's
10  serious.
11     THE COURT: Thank you.
12     MR. ARGENTO: Thank you, your Honor.
13     MR. HOOPER: Your Honor, also on the fact that the
14  20 days haven't expired. I understand that they had problems
15  filing because the 20 days. The motion was filed on the 12th.
16     THE COURT: I don't have those cases before me
17  anyway. I just thought if anybody were here, they can respond;
18  otherwise, we'll move on. .
19     Let's talk about the Motion to Preserve Plaintiff's
20  Original Experts. I did not grant that motion. I wanted to
21  hear that on the agenda. I have great concern because these may
22  be evidence now in not only these cases, but in criminal
23  investigations. I'm very careful now about what we're going to
24  do with those X-rays. I don't intend to give them to just one
25  party.

**Page 81**

1      So what are we going to do about them?
2      MR. ATWOOD: May I suggest -- Roy Atwood, your
3  Honor.
4      My suggestion is that we keep them right where they
5  are.
6      THE COURT: Well, who is going to pay for that?
7  They're in a depository?
8      MR. ATWOOD: They're in Mikal Watts' warehouse.
9      THE COURT: Well, then somebody needs to pay for
10  them to stay there.
11     Who's going to do that?
12     MR. ATWOOD: What's the current arrangement?
13     MS. GREEN: My understanding is nobody has ever paid
14  Mr. Watts anything.
15     THE COURT: But that doesn't seem quite right.
16     MR. BARGER: We'll get it worked out with Mr. Watts.
17     MR. ATWOOD: I mean, if that's the only issue, we
18  can resolve that and I'm confident we can resolve a protocol for
19  use of the X-rays as they become necessary for the cases in
20  Mississippi once they're remanded. I think the important thing
21  is that they stay in one place.
22     My concern, quite frankly, your Honor, is once the
23  case is remanded, the order takes affect, that someone may just
24  decide, "Well, I want to take mine back to my office." And you
25  know, "I'll ask forgiveness, not permission." And I just want

21 (Pages 78 to 81)

Exceptional Reporting Services, Inc.    361 949-2988

Page 82

1   an order in place that keeps them all there and then we can work
2   out the details of making sure they're available to be used when
3   they need to be used and paid for.
4       THE COURT: Mr. Hooper, this was your motion?
5       MR. HOOPER: Yeah, it's actually their Motion to
6   Preserve. It was our Motion to Withdraw.
7       First, we believe that a Court of competent
8   jurisdiction, when the cases go back to Mississippi should
9   control the X-rays and control the --
10      THE COURT: That may very well be, but it's not back
11  in Mississippi and in the meantime, I told Liaison Counsel I
12  have had a call from -- I can't remember how long ago, Mr.
13  Barger --
14      MR. BARGER: About a month ago, Judge.
15      THE COURT: Pardon?
16      MR. BARGER: About a month ago.
17      THE COURT: I had a call from the U.S. Attorney
18  locally about access to discovery in the depository. First, I
19  explained that he didn't understand it was an ex parte -- he
20  doesn't do civil stuff, so he didn't understand it was an ex
21  parte conversation that I had to disclose to the other parties
22  and so I got Liaison Counsel on the phone and told him that I
23  had received this call. So once I am told that someone is
24  looking at this information or who wants access to this
25  information from the U.S. Attorney's Office, who have been

Page 83

1   called, I assume, by the Manhattan, Southern District of New
2   York Office. I just have to look. I have to be very careful
3   then about what happens to these documents in the depository, so
4   --
5       MR. BARGER: And for the record --
6       THE COURT: -- and so that was my concern, Mr. and
7   I'm not -- I don't think they'll destroy them in any way. They
8   need to be in one central place, but I don't intend to just let
9   them go back from in there.
10      MR. HOOPER: Your Honor, I believe -- strongly
11  believe that since the Court doesn't have jurisdiction, that the
12  Court should release its jurisdiction over documents and over
13  the cases. I also, as I stated in the brief, that I believe
14  when the Court entered its remand order, Order Number 29, it
15  stayed it for 30 days that on the 30th day that the cases were
16  remanded.
17      THE COURT: Well, you must have thought I had some
18  jurisdiction or you wouldn't have filed a motion to give you
19  back the X-rays, or you would have just walked in and taken
20  them.
21      MR. HOOPER: I filed that motion during the 30-day
22  stay. Also, I don't -- the argument that we have is that the X-
23  rays are the Plaintiff's diagnosing X-rays. The Plaintiffs
24  voluntarily put their X-rays into the document depository. The
25  Court never ordered us to produce

Page 84

1   those. The Court to this date has not ordered us to produce
2   those.
3       So those X-rays that are the basis of the diagnosis
4   -- or the basis of the B-Read, I'm sorry, have never been
5   ordered by the Court and the Court doesn't have jurisdiction to
6   order anything further on those documents.
7       Again, since the -- in my opinion the Court's
8   jurisdiction lapsed on July 30th. The Court no longer has
9   jurisdiction over those X-rays.
10      THE COURT: Well, why don't I just turn them over to
11  the U.S. Attorney then?
12      MR. HOOPER: Your Honor, I don't think that you have
13  jurisdiction to do that. You don't have jurisdiction to do
14  anything with respect to X-rays that Plaintiffs voluntarily
15  produced now that you have conceded that you don't have
16  jurisdiction.
17      THE COURT: Thank you.
18      MR. HOOPER: Let me --
19      THE COURT: Go ahead.
20      MR. HOOPER: Judge, just so it's clear and I don't
21  want to be standing in front of you so that there's any
22  misunderstanding. I acted accordingly with what I just said and
23  proceeded based upon what I just said in relation to my X-rays.
24      THE COURT: You took them out of the depository?
25      MR. HOOPER: Yes, I did, your Honor.

Page 85

1       THE COURT: Then Mr. Hooper, you will get those back
2   into the depository by 5:00 o'clock today or you will be in
3   contempt of court and you will be held in this courtroom until
4   they are replaced.
5       MR. HOOPER: Your Honor, I cannot physically --
6       THE COURT: I denied that motion. You knew I denied
7   the motion and you call your office and you get them here today.
8   You will physically do that today.
9       MR. HOOPER: Your Honor, I cannot physically --
10      THE COURT: If you have to hire a jet to get them
11  here, you will get them here.
12      MR. HOOPER: Your Honor, I ask that you stay that
13  order so that --
14      THE COURT: I will not. You will get them here
15  today.
16      MR. HOOPER: -- so that I may have a Court of
17  competent jurisdiction review that.
18      THE COURT: Get them here today, now.
19      MR. HOOPER: Which X-rays, your Honor?
20      THE COURT: The X-rays you removed from the
21  depository. When did you do that?
22      MR. HOOPER: I removed them once the Court's
23  jurisdiction lapsed.
24      THE COURT: When did you do that?
25      MR. HOOPER: The first week of August, Monday,

22 (Pages 82 to 85)

## Page 86

1 whatever the first Monday was.

2 THE COURT: You call your office and get those X-

3 rays. Where are they, exactly?

4 MR. HOOPER: Some of the X-rays are in my office,

5 some of the X-rays are at a doctor's office being reviewed.

6 THE COURT: You call -- you're excuse right now for

7 30 minutes to get -- to tell me when you can get those X-rays

8 here right now.

9 MR. BARGER: Judge, I would just add for the record

10 that my office has received an inquiry from the U.S. Attorney's

11 office --

12 THE COURT: Where is Mr. Watts? Did he allow those

13 X-rays to leave his depository?

14 MR. GOWEN: Your Honor, Gregory Gowen for Mr. Watts,

15 plaintiff. Some will come on either side to do the X-rays and

16 we video it and if they have to check it out for a doctor to

17 look at, then they have sign off on a piece of paper for it, for

18 X-rays to be taken out.

19 THE COURT: You knew there was a motion before me on

20 this?

21 MR. GOWEN: Your Honor, the motion that I'm aware of

22 that was denied, I'm not sure of the timing of it as far as --

23 THE COURT: And the denial was entered when?

24 MR. HOOPER: The denial was entered before we

25 removed them, Judge.

## Page 87

1 THE COURT: I thought so.

2 Okay. You're excused for 30 minutes.

3 Marshals, would you accompany him? Can I get some

4 Marshals here, please, to make his calls, Mr. Hooper.

5 And I assume as Liaison Counsel, Ms. Snapka and Mr.

6 Darrell -- Mr. Barger that you notified Mr. Hooper and all other

7 counsel that the U.S. Attorney was making -- was asking for

8 access to those documents?

9 MS. SNAPKA: Yes, your Honor.

10 THE COURT: Thank you.

11 MR. HOOPER: Your Honor, it's my understanding

12 that --

13 THE COURT: You're excused, Mr. Hooper.

14 Has anyone other than Mr. Hooper removed X-rays from

15 the depository?

16 MR. GOWEN: My understanding, your Honor, is that

17 all the X-rays are in the depository right now. Would you like

18 me to go check?

19 THE COURT: I think it would be a good idea.

20 MR. GOWEN: May I be excused for a second?

21 THE COURT: Yes.

22 MS. GREEN: Your Honor, on behalf of Defendants, we

23 previously requested of Mr. Watts a listing of all the X-rays

24 that are in the depository. We've never received such, so it

25 may be a good idea to have one.

## Page 88

1 THE COURT: It may be a good time to do that.

2 MR. GOWEN: Your Honor, I think that each of the

3 groups have provided a list of their X-rays that are in the

4 repository and every time that a Defendant has come to review

5 them, they -- my understanding is that they've seen a list of

6 the ones that they need to pull and those have been pulled. We

7 try to pull them before they get there for them. Sometimes they

8 ask for more than 1,000 so it's harder to do so, but that's been

9 provided.

10 THE COURT: Thank you.

11 MS. SNAPKA: Your Honor, for the record, I want to

12 clarify what I had related to Plaintiff's Counsel was that the

13 U.S. Attorney from Manhattan was looking into the matter. I'm

14 not sure I specifically said anything about X-rays. I wanted to

15 make that clarification for the Court.

16 THE COURT: Well, I wanted -- well, what I told you

17 all very clearly was that the U.S. Attorney from Manhattan had

18 called the local U.S. Attorney for access to discovery documents

19 in the depository, which included the X-rays. I don't know if I

20 said, "included the X-rays," but I told you the document

21 depository. You all knew the X-rays were there.

22 Subsequent to that, his motion was filed. I denied

23 it, and Mr. Hooper has removed the X-rays. I don't think there

24 are any ifs, ands, or buts about it. That may be a matter for

25 the U.S. Attorney in Manhattan.

## Page 89

1 In fact, would you get Mr. Cusick, the U.S Attorney

2 over here, please?

3 THE CLERK: Yes, your Honor.

4 THE COURT: Thank you.

5 (Pause)

6 Roman Numeral III, Omni Litigation Support Services'

7 Opposed Motion for Reimbursement.

8 MR. BARGER: I think Mr. McKibben is going to tell

9 you they're going to withdraw that for right now.

10 THE COURT: Somehow I thought that would happen.

11 MR. MCKIBBEN: That's correct, your Honor.

12 We filed a motion -- unopposed Motion for Leave to

13 make some corrections and virtually every one has paid except

14 for a few and we've kind of worked -- I talked to every one and

15 I think we've got almost everything worked out. There are a

16 couple of things we may have to resolve by -- I think we talked

17 to people about alternate dispute resolution on some of the

18 items and I don't think we need the Court's assistance, your

19 Honor.

20 THE COURT: All right. Then I'll consider that

21 motion withdrawn.

22 MR. MCKIBBEN: Thank you, your Honor.

23 THE COURT: And you have some miscellaneous issues,

24 a Motion for Withdrawal and Substitution of Counsel?

25 MR. MULLINS: Your Honor, we're going to withdraw

23 (Pages 86 to 89)

## Page 90

1  our Motion to Withdraw for Substitution of Counsel, looking at
2  the Court's prior orders, there's some additional steps we can
3  take and we're trying to work with the other attorneys.
4       THE COURT:  Thank you.
5       Then in B under miscellaneous Roman Numeral IV,
6  Motion to Dismiss Certain Plaintiffs without Prejudice?
7       MR. CANSLER:  I think we handled that earlier.  I
8  think those were the orders you just signed.
9       THE COURT:  All right.  Thank you.
10      And C, U.S. Silica's Motion to Dismiss without
11  Prejudice in four cases?
12      MR. RUSSELL:  Your Honor, Steve Russell for U.S.
13  Silica.  I've spoken with Plaintiff's Counsel this morning and
14  we have signed agreed orders --
15      THE COURT:  Thank you.
16      MR. RUSSELL:  -- to present to the Court.
17      THE COURT:  I didn't see anything that they were
18  agreed before, so I put them on the agenda.
19      Would you hand them to Ms. Gano, please, sir?
20      (Pause)
21      Okay.  Those orders are granted.  Thank you, sir.
22      MR. RUSSELL:  Thank you, your Honor.
23      THE COURT:  Then the Defendants placed on the agenda
24  a clarification of the status of the following actions.  These
25  have all been dismissed with Final Judgments.

## Page 91

1       And I think these were all by -- dismissals by
2  agreement.
3       Are these the ones I have to vacate?
4       (Laughter)
5       MR. MULHOLLAND:  Not necessarily.
6       Your Honor, I think, as I recall, Bard and White
7  were dismissed for lack of subject matter jurisdiction.
8       THE COURT:  Okay.  So those --
9       MR. MULHOLLAND:  Just orders.  They were orders that
10  were -- the Bland case was the case where we filed the Motion
11  for Summary Judgment.  The Court dismissed that motion for
12  failure of the Plaintiffs to file Fact Sheets.
13      THE COURT:  Okay.  I have to read -- I have to
14  vacate that, Bland and which other one?
15      MR. MULHOLLAND:  I think that's the only one, Judge.
16      THE COURT:  Weren't these -- a lot of these were
17  filed originally in this Court, but I vacated for lack of
18  subject matter jurisdiction --
19      MS. GREEN:  Yes.
20      THE COURT:  -- but not Bland?
21      MR. MULHOLLAND:  Bland is the exception.  I think
22  the others are subject matter.
23      THE COURT:  Okay.  But Bland, I'm going to vacate
24  that dismissal.
25      MR. MULHOLLAND:  Yes, your Honor.

## Page 92

1       THE COURT:  I want to go back -- do you have
2  anything else on that?
3       MR. MULHOLLAND:  Your Honor, before we get too far
4  away from the subject on X-rays, apparently the Alexander
5  plaintiffs had their X-rays re-read in March by a Dr. Altmier.  I
6  don't know if their X-rays were removed from the depository or
7  not or if Dr. Altmier came to the depository.
8       MR. LAMINACK:  Yes, your Honor.  We removed the X-
9  rays.  We had them re-read and then we put them back.
10      THE COURT:  Thank you.
11      MR. LAMINACK:  And that was all before you ever
12  entered the general order.
13      THE COURT:  Thank you.
14      Then I think what's left is -- I'm not going to
15  enter Scheduling Orders on Thirsty, Greer, Moore, Large, Crowe
16  and McManus -- Adams, Hill, Knight -- I'm sorry, Knight is gone
17  -- or Clay.
18      But I do need to have a Scheduling Order on Covey.
19  So why don't we have suggestions?  How long has that been
20  pending?  I think it was pending for -- is this the one that had
21  the February trial date?
22      MR. FABRY:  It's been pending for a while, your
23  Honor.  Its status has been difficult to ascertain by the
24  transfers, by the removal.  I think any kind of a reasonable
25  Scheduling Order at this point, 12 months before discovery.

## Page 93

1       THE COURT:  A trial date in a year, then?
2       MR. FABRY:  Yes, your Honor.
3       THE COURT:  Actually I won't be doing a trial date.
4  I'll just put a Pretrial Conference in a year.
5       MR. FABRY:  Right.
6       THE COURT:  Would you give him a copy of that?
7       (Pause)
8       I can hear a Final Pretrial Conference proposal for
9  September 13 of 2006?
10      MR. FABRY:  That's fine.
11      THE COURT:  And then back tracking, a Joint Pretrial
12  Order, July the 28th at 3:00 p.m.; dispositive motions, May the
13  15th, 2006; Joinder of parties, November 30th, 2005; Amendment
14  of pleadings, February 28th, 2006 -- that's next February, 2006;
15  and discovery ending on May 31st, 2006.
16      MR. FABRY:  That's fine with Plaintiff, your Honor.
17      In case I have to take a test, may I get us a copy
18  of that?
19      THE COURT:  No.  That's it.
20      (Laughter)
21      There will be a short quiz in the morning.
22      (Laughter)
23      No.  You get copies of it.
24      MR. FABRY:  Thank you.
25      THE COURT:  Is that quick enough?

24 (Pages 90 to 93)

Page 94

1    MR. FABRY: Yes, your Honor.
2    MS. GREEN: Yes.
3    THE COURT: And I think I have Scheduling Orders.
4    (Court Confers With Clerk)
5    I still have motions on Air Liquide.
6    Mr. Laminack, have you had time to look at your?
7    MR. LAMINACK: I have, your Honor. If I could
8    enlist --
9    THE COURT: Do you just want to fall on your sword
10    now or?
11    MR. LAMINACK: No, but I have a volunteer who would
12    fall on it.
13    You are right.
14    THE COURT: That's the best way to start.
15    (Laughter)
16    MR. LAMINACK: And I understand exactly what you're
17    saying.
18    THE COURT: I can understand you'd want to clean
19    that up, if I give you time?
20    MR. LAMINACK: A week? I can tell you --
21    THE COURT: After I've given you a year?
22    MR. LAMINACK: I can tell you what happened.
23    THE COURT: Well, I know what happened. You used
24    the same --
25    MR. LAMINACK: You got it. You figured it out.

Page 95

1    THE COURT: Yes, the computer problem. Now what do
2    you want to do about, however, the American Optical Motion? Do
3    you want to -- can you dismiss them now?
4    MR. LAMINACK: No. I want to respond to it because
5    I haven't had a chance to respond to that yet. There's a -- and
6    that's going to --
7    THE COURT: Yes, we have. I've had -- that has been
8    on this docket for a year.
9    MR. LAMINACK: No. This is a new one. This one
10    complains about the one in the final petition that is fixed,
11    which caused this whole problem to begin with.
12    THE COURT: Well, you fixed it in the second one and
13    then in the next one, you didn't.
14    MR. LAMINACK: No. I did. That's what caused
15    everything to get undone.
16    They complained when we had our second one on file.
17    They complained. So we went back and fixed it, but it changed
18    everything else and went back to the old one, but the AO part
19    stayed the same. That's what they're complaining about, the new
20    fixed job. They are the only ones. And I'd like to respond to
21    that. That is new.
22    MR. COHEN: Your Honor, our -- Joe Cohen for
23    American Optical.
24    Our motion was to the entire complaint. We weren't
25    complaining specifically about American Optical -- yes,

Page 96

1    inaccuracies about American Optical, but he addressed the
2    immediate issue that you had raised in your last order as to
3    American Optical, he just -- if you read the four corners though
4    of the Second Amended Complaint, he doesn't demonstrate
5    diversity restriction.
6    THE COURT: That's true and that's a fact.
7    MR. LAMINACK: That's true. Please let me fix that.
8    THE COURT: I'm not sure I'm going to. I'm going to
9    give you -- first I want the documents on the asbestosis before
10    I decide whether to allow you to amend. I'm going to carry
11    forward the Motion to Dismiss.
12    I find that to be absolutely crucial. And I'm going
13    to give you two weeks to get those documents in on the
14    asbestosis for the people that have made asbestosis claims.
15    Mr. Mulholland, unfortunately, after you already
16    walked out, he got that information from social security numbers
17    and he'll give you that spreadsheet. And those are the people
18    you need -- you've got two weeks to find.
19    MR. LAMINACK: I understand, your Honor.
20    THE COURT: All of those documents.
21    MR. LAMINACK: I understand, your Honor.
22    THE COURT: And I'd like to know if the experts --
23    the diagnosing people that you've gotten in, know that they've
24    already been diagnosed with asbestosis.
25    MR. LAMINACK: To answer that question is no.

Page 97

1    THE COURT: Thank you.
2    MR. LAMINACK: It's in the reports that you have.
3    THE COURT: But you told me you didn't know that
4    that -- oh, I don't think it's all quite there. If not, make
5    sure it's there.
6    Thank you.
7    MR. LAMINACK: Can I ask one other question, just a
8    point of clarification? This involves the X-rays in the
9    depository.
10    As the Court might guess, a lot of us are interested
11    in getting those X-rays re-read so we can take appropriate
12    action in the light of your previous orders --
13    THE COURT: It might be best if you --
14    MR. LAMINACK: -- how do we do that?
15    THE COURT: It might be best to bring your
16    Defendants -- your experts here and let them read them at the
17    depository, considering the way this is progressing. I
18    certainly have jurisdiction over Alexander.
19    MR. LAMINACK: I'm not concerned about Alexander.
20    That's done. But I'm talking about there's a whole bunch of
21    them in there that, I mean, I in light of what's happened am
22    interested in dismissing some cases if people don't have
23    silicosis. And the way to figure that out is to look at that X-
24    ray.
25    THE COURT: Right. Well, it's your Alexander case

25 (Pages 94 to 97)

Page 98

1　is the only one you've got, right? Yes.
2　　　　MR. LAMINACK: Right.
3　　　　THE COURT: Yes. And those you can see right there
4　in the depository.
5　　　　MR. LAMINACK: I'm not interested in those. I'm
6　interested in the non-Alexander cases that we would like to have
7　re-read.
8　　　　THE COURT: How many cases -- I thought -- how many
9　cases do you have?
10　　　　MR. LAMINACK: There are a number of other cases we
11　have, your Honor.
12　　　　MR. MULHOLLAND: Between ten and --
13　　　　MR. LAMINACK: And I'm not the only one in that
14　position. I think we're all in that position.
15　　　　THE COURT: Sure. You can have anybody come and re-
16　read them you want.
17　　　　MR. LAMINACK: That's a tough deal to have people
18　fly to here to read those, your Honor.
19　　　　THE COURT: I know--
20　　　　MR. LAMINACK: Especially when at least with respect
21　to me what's going on is an effort to separate the wheat from
22　the shaft here and get rid of a lot of this stuff.
23　　　　THE COURT: I understand that.
24　　　　MR. LAMINACK: And clean this up and I'd like to do
25　that as soon as possible.

Page 99

1　　　　THE COURT: Well, I can't run the risk of somebody
2　making off with them like Mr. Hooper has done, just assume he
3　just decided unilaterally that I didn't have any jurisdiction to
4　keep them in a depository and make off with them. So that's the
5　problem.
6　　　　MR. LAMINACK: I understand the problem.
7　　　　THE COURT: It's called the "Hooper problem."
8　　　　MR. LAMINACK: We need some kind of help on that,
9　Judge, I think.
10　　　　THE COURT: You can talk to the Defendants on that.
11　　　　MR. LAMINACK: Okay.
12　　　　THE COURT: Mr. Hooper, what is you -- what have you
13　discovered?
14　　　　Mr. Cusick?
15　　　　MR. CUSICK: Yes, your Honor.
16　　　　THE COURT: I asked you here because you had made a
17　call to me about -- on behalf of the U.S. Attorney in the
18　Southern District of Manhattan -- or Southern District of New
19　York over access to the Document Depository?
20　　　　MR. CUSICK: Yes, your Honor.
21　　　　THE COURT: And because that was an ex parte call, I
22　had to call Liaison Counsel and tell them, Ms. Snapka and Mr.
23　Barger, that the call had been made and that we wanted to
24　preserve the document depository.
25　　　　Subsequent to that, Mr. Hooper, and he may need his

Page 100

1　own counsel, but Mr. Hooper filed a Motion to Remove all of his
2　client's X-rays, which were the basis of the diagnoses from the
3　document depository. I denied that motion in early -- in mid-
4　July. Subsequent to that in the first week of August on his
5　own, he determined that I no longer had jurisdiction over his
6　cases and went in and removed them all.
7　　　　So I have now ordered him to return them forthwith,
8　and he has no intention of doing that, apparently. So I felt
9　like I needed to tell you about this, and you can report it to
10　whomever.
11　　　　MR. CUSICK: I'll do that, your Honor.
12　　　　MR. HOOPER: May I clear up the record?
13　　　　THE COURT: Yes, sir. Are you going to return the
14　X-rays?
15　　　　MR. HOOPER: After I clear up the record.
16　　　　THE COURT: Are you going to return the X-rays?
17　　　　MR. HOOPER: Yes, your Honor.
18　　　　THE COURT: When?
19　　　　MR. HOOPER: They're scheduled to leave Houston at
20　noon.
21　　　　THE COURT: All right. Thank you.
22　　　　MR. HOOPER: First, the -- I voluntarily produced X-
23　rays not --
24　　　　THE COURT: You've already said that.
25　　　　MR. HOOPER: -- not to the document repository, just

Page 101

1　as the Court has clarified, but to an X-ray repository in Mr.
2　Watts' office. The inquiry -- you just clarified it very
3　clearly. The inquiry that was discussed with me were documents
4　in the repository.
5　　　　THE COURT: No. I said they were all the discovery
6　documents and I said they were in -- as far as I knew X-rays and
7　documents were in Mr. Watts' office.
8　　　　MR. HOOPER: But the Court is wrong.
9　　　　THE COURT: Okay.
10　　　　MR. HOOPER: The documents aren't in Mr. Watts'
11　office.
12　　　　THE COURT: I know. They're in your office.
13　　　　MR. HOOPER: The documents are in the document
14　repository on -- I voluntarily produced X-rays to Mr. Watts'
15　office. I filed a Motion to Withdraw all X-rays --
16　　　　THE COURT: And it was denied.
17　　　　MR. HOOPER: -- which was denied. The Court entered
18　an order June 30th that said, "I'm remanding the cases in 30
19　days."
20　　　　THE COURT: And then I stayed the order.
21　　　　MR. HOOPER: After 30 days --
22　　　　THE COURT: And then I stayed that order before the
23　end of the 30 days.
24　　　　MR. HOOPER: No. You didn't. You stayed the Order
25　on August 5th. I removed the X-rays before you stayed the

26 (Pages 98 to 101)

Page 102

1  cases. You entered an order on June 30th staying cases for 30
2  days. After the expiration of those 30 days, after you had
3  ceded your jurisdiction, I removed my client's property from Mr.
4  Watts' office, which had never been ordered by this Court.
5      After that, you entered an order attempting to
6  further stay your order for another 30 days. I didn't do it
7  when you had an order on file saying that you had jurisdiction.
8  I would not have done anything directly to contravene this
9  Court's jurisdiction. I thought that this Court --
10     THE COURT: I understand, Mr. Hooper, but
11  nonetheless I denied your motion and you took the X-rays out,
12  and after being told by Liaison Counsel that the U.S. Attorney
13  in Manhattan was making inquiries about all discovery documents
14  You may be seated.
15     MR. HOOPER: No.
16     THE COURT: You may be seated. Thank you.
17     MR. HOOPER: May I -- I may not finish my record?
18     THE COURT: You may be seated. Thank you.
19     MR. HOOPER: You are not allowing me to finish my
20  record?
21     THE COURT: Mr. Hooper, you may be seated. Thank
22  you.
23      You may submit anything in writing that you would
24  like to supplement the record.
25      Thank you, Mr. Cusick, very much.

Page 103

1      You may be seated. Thank you.
2      All right. Then we have Alexander versus Air
3  Liquide, I think we have -- I'm going to -- I think I made an
4  order on that?
5      MR. LAMINACK: Yes, your Honor.
6      THE COURT: That I'm going to carry forward all
7  those pending motions for two weeks for Mr. Laminack to get you
8  the information about asbestosis on 73 percent of his claimants,
9  all the documents, including X-rays, diagnoses -- I assume
10  they've got Fact Sheets?
11     MR. MULHOLLAND: Yes, your Honor.
12     THE COURT: And now we have a Motion to Substitute
13  in a new diagnosing physician?
14     MR. MULHOLLAND: I will note they filed a motion to
15  that effect, your Honor, but we have submitted a dispute.
16     THE COURT: Anything else to take up? Do you need a
17  further meeting date for the 17 cases that I still have?
18     (Pause)
19     MR. BARGER: We don't have anything else today.
20     THE COURT: Right, but do you need another meeting
21  date?
22     MR. BARGER: Yes. Do you want to do it in a month?
23     THE COURT: A month is fine. Do you want a date?
24     Ms. Scotch?
25     THE CLERK: Monday, September the 26th, 2005 at 9:00

Page 104

1  a.m.
2      THE COURT: Is Monday a good day?
3      MR. BARGER: I've heard no complaints from anybody
4  about it.
5      MR. LAMINACK: Monday is a good day in what respect?
6      THE COURT: Well, I don't know, Mr. Laminack. But
7  9:00 o'clock that's after the first -- should we make it 9:30?
8  Does everybody like to come in the night before, or you want to
9  come at 9:30 and then 9:30 get you in on the first -- isn't that
10  the first flight of the Southwest? Certainly Continental gets
11  here earlier, but --
12     MR. BARGER: I think 9:00 is fine from the Defense.
13     THE COURT: 9:00 is fine?
14     MR. BASHLINE: 9:30 for those of us coming out of
15  Houston allows us a breathing period to get from the airport to
16  here. There's a flight that gets in, your Honor, at 8:35 or
17  something, but --
18     THE COURT: Mr. Hooper will fly you in on his X-
19  rays, that's fine.
20     (Laughter)
21     MR. BASHLINE: 9:30 would be -- any other Houston
22  people like 9:30?
23     THE COURT: Two?
24     MR. BASHLINE: Come on you wimps, put up your hands.
25     THE COURT: Sorry.

Page 105

1      MR. BASHLINE: Okay. 0900, Judge, that's fine.
2      THE COURT: And I don't care if you're late. We'll
3  track that flight.
4      (Laughter)
5      MR. BASHLINE: Your Honor, I have absolutely no
6  intention being late unless I'm dead and they can wheel my body
7  back.
8      THE COURT: Thank you very much for your
9  appearances.
10     You're excused.
11     MR. GOWEN: I just wanted to give you an update on
12  the X-rays, your Honor. All the X-rays are there.
13     THE COURT: Thank you.
14     MR. GOWEN: And we do have a list of them.
15     THE COURT: Thank you. If you could give those?
16     MR. GOWEN: I'll give them -- I may not have them on
17  me.
18     (Proceeding Adjourned at 11:17 a.m.)

27 (Pages 102 to 105)

Page 106

```
 1              CERTIFICATION
 2    I certify that the foregoing is a correct transcript
 3    from the electronic sound recording of the proceedings
 4    in the above-entitled matter.
 5
 6                    August 23, 2005
 7     Signed                Dated
 8
 9        TONI HUDSON
10
11      FEDERALLY-CERTIFIED TRANSCRIBER
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Exceptional Reporting Services, Inc.    361 949-2988