IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- )
In re                                                            ) Chapter 11
                                                                 )
W. R. GRACE & CO., et al.,                                       ) Case No. 01-01139 (JKF)
                                                                 ) (Jointly Administered)
                                                                 )
                              Debtors.                           ) **Hearing Date: 9/26/05 @ 12:00 p.m. (Requested)**
                                                                 ) **Objection Deadline: 9/21/05 @ 4:00 p.m. (Requested)**
---------------------------------------------------------------- )


### APPLICATION OF THE OFFICIAL COMMITTEE OF ASBESTOS PROPERTY DAMAGE CLAIMANTS TO RETAIN SPECIAL COUNSEL PURSUANT TO SECTIONS 328 AND 1103 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014

TO:    THE HONORABLE JUDITH K. FITZGERALD,
       UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Asbestos Property Damage Claimants (the "**PD Committee**") of the above-captioned debtors and debtors in possession (the "**Debtors**"), by and through undersigned counsel, respectfully files this application (the "**Application**") seeking entry of an order pursuant to sections 328 and 1103 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") authorizing the retention of special counsel to represent the PD Committee in the context of the estimation of Asbestos PD Claims (the "**PD Estimation**"), and especially, in connection with the "science" or harmfulness of the Debtors' various asbestos-containing products. In support of the Application, the PD Committee represents as follows.

## INTRODUCTION

1.  This Court has jurisdiction over these cases pursuant to 28 U.S.C. sections 157 and 1334 and this matter is a core proceeding pursuant to 28 U.S.C. section 157(b). Venue is proper before this Court pursuant to 28 U.S.C. sections 1408 and 1409. The statutory bases for the relief requested herein are sections 328 and 1103 of the Bankruptcy Code and Bankruptcy Rule 2014.

2.  On April 2, 2001 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**"). On the Petition Date, the Court entered an order of joint administration pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") providing for the joint administration of these cases and for their consolidation for procedural purposes only. Pursuant to 11 U.S.C. sections 1107(a) and 1108, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

3.  On April 12, 2001, the United States Trustee appointed the PD Committee. At the PD Committee's original organizational meeting, it selected Bilzin Sumberg Baena Price & Axelrod LLP as its bankruptcy counsel.

4.  On April 25, 2002, the Court set March 31, 2003 as the last date (the "**PD Bar Date**") for filing proofs of claim for all prepetition claims relating to traditional asbestos property damage (the "**Asbestos PD Claims**"). Approximately 4200 Asbestos PD Claims were filed by the PD Bar Date.

5.  On November 13, 2004, the Debtors filed their Chapter 11 Plan of Reorganization and Disclosure Statement [Docket Nos. 6895, 6896] and their *Motion for Entry of an Order Seeking the Estimation of Asbestos Claims and Certain Related Relief* (the "**Estimation**

**Motion")** [Docket No. 6899]. At the hearing on objections to the Disclosure Statement and the Estimation Motion held on January 21, 2005, the Court determined that it would undertake the PD Estimation and ordered the PD Committee and the Debtors to negotiate a case management order to govern the PD Estimation. Transcript, Jan. 21, 2005 at 210.

6.  During the course of the subsequent negotiations between the PD Committee and the Debtors regarding the timing and scope of the PD Estimation, the Debtors revealed their intention to litigate, in the context of the PD Estimation, the "science" or harmfulness of their various asbestos-containing products. The PD Committee informed the Court of the Debtors' intention to litigate these science issues at a hearing held on April, 25 2005, and again at a hearing on June 27, 2005. *See* Transcript, April 25, 2005 at 111, Transcript, June 27, 2005 at 93-94. As evidenced by the following colloquy, neither the PD Committee nor the Court had previously contemplated a science trial in the course of the PD Estimation:

MR. BAENA: [Litigating science] is going to obviously entail much more work in the context of an estimation proceeding than I think anybody contemplated. I suspect you didn't contemplate –

THE COURT: You're right about that.

Transcript, April 25, 2005 at 111.

The Debtors' intent to include science issues in the PD Estimation was a principal reason that agreement on the terms of a case management order was delayed until August, 2005.

7.  On August 29, 2005, the Court entered the agreed *Case Management Order for the Estimation of Asbestos Property Damage Liabilities* (the **"PD CMO"**) [Docket No. 9300], pursuant to which the PD Estimation shall proceed in two Phases. In Phase I, the Court will first

determine whether the Court will consider the "Methodology Issue," as defined in the PD CMO, as part of the PD Estimation.[1] *See* PD CMO at 3.

8. As a result of the Debtors' inclusion of science issues in the PD Estimation, the PD Committee, in addition to utilizing the undersigned as Asbestos PD Liaison Counsel, as defined in the PD CMO, deems it necessary, appropriate and highly efficient to utilize the services of certain counsel to members of the PD Committee, specifically, Martin W. Dies, III ("**Dies**") of Dies & Hile L.L.P. and C. Alan Runyan ("**Runyan**") of Speights & Runyan (collectively, the "**Special Counsel**"), as they have unique expertise in litigating Asbestos PD Claims. Indeed, such counsel have specialized knowledge of all aspects of Asbestos PD Claims, and have been at the forefront of asbestos property damage litigation and asbestos bankruptcy reorganizations for more than twenty years. Each possesses a remarkable amount of historical information and legal knowledge related to Asbestos PD Claims and will immeasurably enhance the PD Committee's presentation on the long-established harmfulness of the Debtors' asbestos-containing products and other issues engendered by the PD Estimation.

9. The Debtors already have special counsel at their disposal with the historical knowledge and experience necessary to assist in or undertake the PD Estimation on behalf of the Debtors. Transcript, May 16, 2005, at 12. Currently, the PD Committee does not enjoy a similar benefit putting the Committee at a distinct disadvantage. Moreover, the Debtors' estates would incur unnecessary and inordinate administrative expenses were the PD Committee not permitted to engage special counsel with vast experience in respect of the prosecution of property damage litigation in the tort system prior to the Debtors' bankruptcy.

---

[1] Phase I of the PD Estimation is comprised of two parts: (1) constructive notice and (2) methodology. Science issues are implicated in the methodology part of Phase I; however, Special Counsel will be responsible for litigating any science issues that arise in the course of the PD Estimation (or on appeal) regardless of the phase of the PD Estimation in which such issues arise.

MIAMI 926201.3 7481715563      4

## RELIEF REQUESTED

10. The role of counsel to members of an official creditors' committee ordinarily does not entail active participation in litigation being litigated by the committee. Where, as here, counsel to committee members are asked to devote substantial time and effort as special counsel to litigate a discrete matter, such as the estimation of the aggregate value of asbestos property damage claims in the tort system, which will engender issues that were commonplace in the pre-bankruptcy litigation in which such counsel represented parties other than their present clients who are members of the PD Committee, such counsel should be afforded the opportunity to make an application for compensation and reimbursement of expenses incurred directly in connection with such litigation. Accordingly, the PD Committee requests that this Court enter an order authorizing the retention of Special Counsel to represent the PD Committee in the PD Estimation, especially with regard to the so-called "Methodology Issue, the compensation of such Special Counsel being payable and determined pursuant to sections 328, 330(a), 331, 503(b) and 507(a)(1) of the Bankruptcy Code and the Court's *Amended Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Revised Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members* (the "**Fee Order**") [Docket No. 1949], and granting such further and other relief as this Court deems just and proper.

11. The PD Committee respectfully submits that the relief requested in this Application is both necessary and appropriate for the following reasons. First, Special Counsel are widely regarded as the foremost asbestos property damage trial attorneys in the country. Consequently, their assistance as Special Counsel in the PD Estimation, especially litigating the

harmfulness of the Debtors' various asbestos-containing products, will be invaluable to the PD Committee and the Debtors' estates.

12. Second, given the breathtaking scope of the "Methodology Issue" in respect of not one, but *all* of the Debtors' asbestos-containing products that gave rise to traditional Asbestos PD Claims, and the short time available to prepare for such a trial,[2] it is especially critical that the PD Committee have access to the resources and unique knowledge of Special Counsel.

13. Third, while it cannot be gainsaid that the Debtors have counsel at their disposal with the historical knowledge and experience necessary to conduct the PD Estimation, especially the "Methodology Issue," the PD Committee's bankruptcy counsel does not have the same depth of knowledge and experience as the Special Counsel.

14. Finally, each application for compensation and reimbursement of expenses will remain subject to the same sort of objections by parties-in-interest as applications for compensation and reimbursement of expenses of Court-retained professionals pursuant to the Court's Fee Order.

## SPECIAL COUNSEL'S QUALIFICATIONS

15. Special Counsel specialize in the areas of product liability and consumer protection litigation, with a particular expertise in toxic torts, principally including asbestos property damage. The lawyers who will be principally responsible for the matters set forth herein have served as lead or co-lead counsel in numerous federal or state certified class actions as more fully described in the affidavits of Martin W. Dies, III and C. Alan Runyan (the **"Special Counsel Affidavits"**) attached hereto as Exhibits B and C. For example, Runyan has actively litigated and tried asbestos property damage cases as lead counsel in eighteen states and in the

Commonwealth of Puerto Rico. In many of those cases, W.R. Grace & Co. ("**Grace**") was the adverse party. Such cases include the following with published opinions: *City of Kansas City v. W.R. Grace & Co.*, 778 S.W.2d 264 (Mo.App. 1989) appeal after remand 855 S.W.2d 360 (Mo. 1993) (en banc) (Grace settled before trial); *Clayton Ctr. Assocs. v. W.R. Grace & Co.*, 861 S.W.2d 686 (Mo.App. 1993) (plaintiff's verdict); and *Northridge Co. v. W.R. Grace & Co.*, 556 N.W.2d 345 (Wis.App. 1996) (plaintiff's verdict); *Blue Cross and Blue Shield of South Carolina v. W.R. Grace & Co.* 781 F.Supp. 420 (D.S.C. 1991) (plaintiff's verdict); *San Francisco Unified School Dist. v. W.R. Grace & Co.*, 44 Cal. Rptr.2d 305, 315 (Cal. Ct. App. 1995) (Grace settled before trial). Additionally, Mr. Runyan has represented many other asbestos claimants against Grace in a variety of state and federal jurisdictions where Grace settled the cases before or during trial. *See* Exhibit B, paragraph 8.

16. Similarly qualified, as either lead or class counsel, Dies has successfully prosecuted over 1,500 individual asbestos property damage claims included within the following consolidated or class actions with published opinions: *Dayton Independent School District., et al. v. W.R. Grace & Co.-Conn., et al.*, No. B-81-27-CA Consolidated With No. B-81-293-CA (E.D.Tex.) ("Dayton I"); *Kirbyville Independent School District, et al. v. National Gypsum Company*, No. 12,301 (Jasper County, Tex., 1st Jud. Dist.) ("Texas School Asbestos Property Damage Class Action"); *Dayton Independent School Dist., et al. v. W.R. Grace & Co.-Conn., et al.*, No. B-87-507-CA (E.D.Tex.) ("Dayton II"); *The County of Orange v. National Gypsum Company*, No. D-890803-C (Orange County, Tex.) ("Texas Governmental Entities Asbestos Property Damage Class Action"); *State of Hawaii v. W.R. Grace & Co.-Conn., et al.*, No. 93-4161-10 (1st Cir. Haw. 1993); *Boulder Valley School District No. RE-2, et al. v. W.R. Grace &*

---

[2] Pursuant to the PD CMO, discovery in relation to Phase I of the PD Estimation may begin at any time but must be completed by February 15, 2006 and, should the Court determine that the Methodology Issue shall be part of Phase I

*Co., et al.*, Civ. No. 87-M-1783, United States District Court, District of Colorado ("The Colorado Public School Property Damage Asbestos Litigation"); *State of Utah, et al., v. W.R. Grace & Co.-Conn., et al.*, No. 940906356 (Salt Lake County, Utah, 3d. Jud. Dist.); *The Corp. of Mercer Univ. v. Nat'l Gypsum Co., et al.*, No. 85-126-3-MAC (M.D.Ga.); *Jefferson Parish School Bd, et al., v. W.R. Grace & Co., et al.*, No. 88-3844 (E.D.La.) ("The Louisiana Schools Asbestos Property Damage Litigation"). Additionally, Dies has been involved in all of the significant asbestos property damage bankruptcies and was Chair of the PD Committee in the National Gypsum ("**NGC**") Bankruptcy, as well as Chair of the Trustee Advisory Committee.

### SERVICES TO BE PROVIDED BY SPECIAL COUNSEL

17. The PD Committee anticipates that Special Counsel will provide services to the PD Committee as needed throughout the course of the PD Estimation, including:

> (a) representation of the PD Committee with respect to all aspects of the "Methodology Issue" (including representation of the PD Committee in any ensuing appeals);
>
> (b) selection and the presentation of the opinions and testimony of experts and consultants; and
>
> (c) such other services as are necessary during the course of the PD Estimation.

### SPECIAL COUNSEL'S COMPENSATION

18. Special Counsel has agreed to be compensated for their services on an hourly basis, in accordance with their normal billing practices, subject to allowance by this Court in accordance with the Court's Fee Order. The current hourly rates of Special Counsel are as follows:

---

of the PD Estimation, a hearing on Phase I issues may occur as early as March 2006.

### Speights & Runyan

| Position | Rate per hour |
|---|---|
| Senior Partners | $650 |
| Junior Partners | $400 |
| Associates | $225-$240 |
| Paraprofessionals | $125-$150 |

### Dies & Hile L.L.P.

| Position | Rate per hour |
|---|---|
| Senior Partners | $650 |
| Junior Partners | $400 |
| Associates | $195-$400 |
| Paraprofessionals | $125-$150 |

19. In addition, also subject to allowance by this Court in accordance with the Fee Order, Special Counsel shall bill the Debtors for reimbursement of all of its reasonable out-of-pocket expenses incurred in connection with their employment for the purposes stated herein.

## DISCLOSURE CONCERNING CONFLICTS

20. Upon information and belief, none of the individuals and firms comprising Special Counsel represents or hold any interest adverse to the Debtors' estates or their creditors in the matters upon which such firms are to be engaged, except to the extent set forth in the Special Counsel Affidavits. However, each firm is a multi-lawyer firm with a national practice and may represent or may have represented certain of the Debtors' creditors or equity holders in matters unrelated to these Chapter 11 Cases.

## NOTICE

21. Proper notice of this Application has been given and the PD Committee submits that no further notice be given.

## WAIVER OF MEMORANDUM OF LAW

20. As there are no novel issues of law presented herein, the PD Committee waives its right to file a memorandum of law in support of the Application, pursuant to Rule 7.1.2(a) of the Local Rules, incorporated by reference into the Local Bankruptcy Rules by General Order #9D.

## PRIOR REQUEST FOR RELIEF

22. No previous application for the relief sought in this Application has been made to this or any other court.

WHEREFORE, the PD Committee respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit "A" (a) authorizing the retention of Special Counsel pursuant to the terms outlined in this Application and (b) granting such further and other relief as this Court deems just and proper.

[Remainder of page blank. Next page is signature page.]

Dated: September 12, 2005

BILZIN SUMBERG DUNN BAENA
PRICE & AXELROD LLP

Scott L. Baena (admitted pro hac vice)
Jay M. Sakalo (admitted pro hac vice)
2500 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2336
(305) 374-7580

-and-

FERRY, JOSEPH & PEARCE, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, Delaware 19899
Telephone: (302) 575-1555


By:/s/ Theodore J. Tacconelli
    Michael B. Joseph
    (Del. Bar No. 392)
    Theodore J. Tacconelli
    (Del. Bar No. 2678)

Counsel for the Official Committee of Asbestos
Property Damage Claimants