IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Objection Deadline: October 7, 2005 at 4:00 p.m. |
| | ) | Hearing Date: October 24, 2005 at 12:00 p.m. |
| | ) | |
| | ) | Re: Docket No. 9315 |

**MOTION OF THE OFFICIAL COMMITTEE OF ASBESTOS
PROPERTY DAMAGE CLAIMANTS TO STRIKE DEBTORS'
FIFTEENTH OMNIBUS OBJECTION (SUBSTANTIVE) TO ASBESTOS
PROPERTY DAMAGE CLAIMS OR, IN THE ALTERNATIVE, FOR
EXTENSION OF TIME FOR RESPONSES THERETO**

The Official Committee of Asbestos Property Damage Claimants (the "PD Committee"), through its undersigned counsel, hereby files this motion to strike (the "Motion to Strike") the Debtors' Fifteenth Omnibus Objection (Substantive) to Asbestos Property Damage Claims (the "Omnibus Objection") or, in the alternative, for an extension of time for responses to the Omnibus Objection. In support hereof, the PD Committee respectfully states as follows:

**Preliminary Statement**

In one cosmic sweep, the Debtors' Omnibus Objection asserts a battery of objections to untold asbestos property damage claims ("PD Claims"). Of course, in doing so, the Debtors altogether failed to seek leave of this Court to assert objections in excess of the limitation imposed by Delaware Local Rule 3007-1(f) (the "Local Rule"). The Debtors attempt to deflect attention from this material omission by suggesting that such

relief was granted by two prior Orders of the Court; however, the contention is pure fabrication.

The Omnibus Objection itself lends testimony against relief from the Local Rule. By combining all substantive objections to all PD Claims in the Omnibus Objection, holders of PD Claims (the "<u>PD Claimants</u>") are left to some twelve inches of Exhibits to the Omnibus Objection---which Exhibits were served after service of the Omnibus Objection due to the sheer size and complexity of the Exhibits---to determine whether any of their PD Claims are implicated and then, to sort though a Byzantine numbering system to determine just which objection(s) apply to those PD Claims. Unfortunately, however, some PD Claimants will never be able to figure that out for themselves as the Exhibits fail to provide basic information such as the locations of affected buildings, or even the names of counsel representing the holders of the PD Claims referred to therein. In addition, the Exhibits, as well as the supplemental information provided to certain PD Claimants by the Debtors well after service of the Omnibus Objection, are keyed to the claims numbers assigned to PD Claims by the claims agent. Unfortunately, however, it appears that, in most instances, the claims agent never advised PD Claimants what claims numbers had been assigned to their PD Claims, making it virtually impossible for PD Claimants to know which of the myriad objections have been lodged against which PD Claims.

## Discussion

1.  The Debtors filed the Omnibus Objection on September 1, 2005. While the Omnibus Objection describes the nature of the numerous objections asserted by the Debtors in respect of PD Claims, it does not inform which objections are applicable to

specific PD Claims. Rather, the Omnibus Objection refers to numerous Exhibits which purportedly provide such information. However, the Exhibits did not accompany the Omnibus Objection. As a consequence, without the Exhibits, PD Claimants could not determine from the Omnibus Objection whether it had any application to their PD Claims. Thus, on September 1, 2005, the undersigned counsel inquired of counsel for the Debtors when the Exhibits would be served. In response, counsel for the Debtors advised, "the exhibits are voluminous and will take some time to upload onto pacer, copy and serve. I expect you'll get them as quickly as anyone else does." E-mail from Michele Browdy, 9/2/05, 1:44 p.m. Thereupon, further inquiry was made to determine just how these "voluminous" Exhibits would be served upon PD Claimants. In response, counsel for the Debtors advised, as follows:

> Basically, for claimants/counsel with under 100 claims, they will get specialized notice showing just what is on the exhibits re them, plus the entire objection. If they want the whole thing, the Notice tells them to contact BMC to get it or go to the web site. For those attorneys with over 100 claims - only about 7-10, I believe, I think we are going to both provide the full exhibits e-mail and burn a cd. The exhibit binders hard copy are 5 volumes. Same with the core group. We will burn cd's and also provide e-mail if you wish. Not sure whose e-mail systems can handle that much info which is why I suggested the CD's.

E-Mail from Janet Baer, September 2, 2005, 5:24 p.m.

2. As of September 13, 2005, a certificate by the Debtors' counsel reflecting whether and how service of the Exhibits was made on PD Claimants had not been filed. Based upon information and belief as of September 12, 2005, PD Claimants had not received the Exhibits. We do know that it was not until late in the evening on September 4, 2005, that the Debtors filed the Exhibits on PACER, and the morning of September 5, 2005, that undersigned counsel became aware of that fact and downloaded the Exhibits from PACER. In hardcopy format, the Exhibits are well over a foot high!

3. The Exhibits are not easily navigable. While the Exhibits present affected PD Claims in alphabetical order by the names of the PD Claimants, they fail to identify counsel for the PD Claimants. In addition, where more than one PD Claim of a particular PD Claimant is subject of an objection, the only means provided for distinguishing between those PD Claims is by reference to the claim number assigned to the claims by the claims agent. For example, the Exhibits do not refer to the locations of the property subject of the PD Claims in respect of which objections are being lodged. Unfortunately, however, it does not appear that the claims agent, with few exceptions, ever apprised PD Claimants of the claims numbers it assigned to their PD Claims. Thus, the reference is of limited usefulness and necessitates yet further inquiry. In addition, each of the Exhibits fails to reference those PD Claims which are subject of more than one type of objection, as required by Del. Local R. 3007-1(e)(iii).

4. The Debtors recognize that the Exhibits are not easy to use. Some seven days after filing the Omnibus Objection with the Court, the Debtors e-mailed a spreadsheet to counsel representing more than 100 PD Claimants and "key counsel" in these chapter 11 cases. Once again, however, the information provided is catalogued by claim numbers and not by reference to the buildings or locations that are the subjects of the PD Claims. Thus, the Debtors' *post-hoc* attempt to fix another deficiency in the Omnibus Objection was in vain if the recipients of the spreadsheet are unaware of the claims numbers assigned to their clients' PD Claims. Moreover, the spreadsheets were not provided to PD Claimants who are not represented by counsel or counsel for fewer than 100 PD Claimants of which there are many.

5.  In these circumstances, it is easy to conceive that PD Claimants will be forced to expend a substantial portion of the period from September 1, 2005 to October 7, 2005, the date by which they must respond to the Omnibus Objection, merely attempting to determine specifically which of the Debtors' numerous objections apply to each of their PD Claims. Then, with what may be precious little time left on the clock, each PD Claimant will need to provide substantive responses to what are likely multiple objections to each of its PD Claims. Given the novelty of some of the Debtors' objections, each PD Claimant will likely face the grim prospect of disallowance of its PD Claims by the mere passage of time. This is precisely the sort of ham-handed result that the Local Rule seeks to avert.

6.  Del. Local R. 3007-1(f) limits each substantive claims objection to no more than 150 claims unless the Court orders otherwise. It cannot be gainsaid that the Omnibus Objection appears to implicate thousands of PD Claims and, in some instances, on numerous bases. While the Debtors forewarned of their intention to file numerous substantive objections to PD Claims, they never sought permission from the Court to do so in a single substantive objection via a waiver of the Local Rule. The Debtors clearly realize their omission as they attempt to back and fill by suggesting in the Omnibus Objection that they "have received permission to file all of these substantive objections at one time in one Omnibus Objection," by the Case Management Order for the Adjudication of Asbestos Property Damage Claims Objections dated August 29, 2005, and the Gateway Objection Order dated July 19, 2005. Omnibus Objection at ¶217. Neither Order makes any mention of such relief having been requested let alone granted. Indeed, the Omnibus Objection goes on to state, "The Gateway Objection Order also

permits the Debtors to file one further substantive objection to each of these claims." Id. In fact, however, the Gateway Objection Order limits the Debtors to one substantive objection to any PD Claim which was subject of a Gateway Objection, not two as the Debtors now purport. Gateway Objection Order at ¶1(d). Thus, either the Debtors misperceive the import of this Court's prior Orders or, in recognition of their failure to comply with the Local Rules, they now purposefully mischaracterize such Orders.

7.  Thus, there are but two alternatives: Strike the Omnibus Objection or grant PD Claimants sufficient additional time to respond to the Omnibus Objection.[1] The PD Committee respectfully posits that the former alternative would be the more sensible approach as the Omnibus Objection and accompanying Exhibits are so turgid, so internally difficult to follow, and the objections it raises so far in excess of the limitation prescribed by the Local Rule.

[continued on the next page]

---

[1] Pursuant to Del. Local R. 9006-2, if a motion to extend time to take any action is filed before the expiration of the period prescribed by the Bankruptcy Code, the Federal Rules of bankruptcy Procedure, the local rules of the District Court for the District of Delaware, or Court Order, the time shall be automatically extended until the Court acts on the motion, without the necessity for the entry of a bridge order.

WHEREFORE, the Official Committee of Asbestos Property Damage Claimants respectfully urges this Court to strike the Debtors' Fifteenth Omnibus Objection to Asbestos Property Damage Claims or, in the alternative to extend the date by which asbestos property damage claimants and other parties in interest are required to respond thereto and for such other relief as the Court deems just and proper.

Dated: September 14, 2005

Respectfully submitted,

BILZIN SUMBERG BAENA
PRICE & AXELROD LLP
2500 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, FL 33131-2336
Telephone: (305) 374-7580

Scott L. Baena (Admitted Pro Hac Vice)
Jay M. Sakalo (Admitted Pro Hac Vice)
Allyn S. Danzeisen (Admitted Pro HacVice)

-and-

FERRY, JOSEPH & PEARCE, P.A.

/s/ Theodore J. Tacconelli
Theodore J. Tacconelli (No. 2678)
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899
Telephone: (302) 575-1555

CO-COUNSEL FOR THE OFFICIAL
COMMITTEE OF ASBESTOS
PROPERTY DAMAGE CLAIMANTS