**STUTZMAN, BROMBERG, ESSERMAN &**
**  PLIFKA, A Professional Corporation**
Sander L. Esserman
Robert T. Brousseau
Van J. Hooker
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone:  (214) 969-4900

**THE HOGAN FIRM**
Daniel K. Hogan (DE 2814)
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone:  (302) 656-7540

ATTORNEYS FOR BARON & BUDD, P.C. AND
SILBER PEARLMAN LLP

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
|  | : |  |
| IN RE: | : | Chapter 11 |
|  | : |  |
| W.R. GRACE & CO., *et al.*, | : | Case No. 01-01139 (JKF) |
| Debtors. | : | Jointly Administered |
|  | : |  |

### BARON & BUDD P.C.'S AND SILBER PEARLMAN LLP'S
### RESPONSE IN OPPOSITION TO CERTAIN INSURERS'
### MOTION FOR ACCESS TO EXHIBITS TO 2019 STATEMENTS

Baron & Budd, P.C. ("Baron & Budd") and Silber Pearlman, LLP ("Silber Pearlman")

respond to and oppose "Certain Insurers' Motion for Access to Exhibits to 2019 Statements" (the

"Motion for Access", Dkt. No. 9341), and would respectfully show the Court as follows:

### I.

### BACKGROUND

The Motion for Access is a cynical tactical maneuver by a group of insurance companies

that have consistently refused to live up to their contractual obligations to the Debtors and to sick

and injured victims having asbestos disease.  As this Court is well aware, after considerable

pleading, counterpleading, argument and consideration, on October 22, 2004, the Court signed

its Revised Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019 (the "2019 Order," Dkt. No. 6715), attempting to balance the policies behind Rule 2019 with the important privacy rights of individual claimants.  An identical order, except for its caption, was entered in eight other asbestos cases pending in this Court.  A group of insurers, including, notably, Certain Underwriters at Lloyd's, London and Certain London Market Insurers (two of the movants here), appealed the identical Rule 2019 Order in the *Kaiser Aluminum Corporation* case, No. 02-10429 (JKF).  On appeal, the District Court affirmed this Court's rulings and not only found that the insurers had no standing to challenge the 2019 order, it further found that "[in] the alternative, even if the Court concludes that Appellants have standing to challenge the Revised Rule 2019 Orders, the Court concludes that the Bankruptcy Court did not err in permitting exemplars to be filed or in restricting access to the Rule 2019 information." *In re Kaiser Aluminum Corp.*, 327 B.R. 554, 559 (D.Del. 2005).

The insurers took no further appeal, but now try once again to obtain information about claims that they refuse to pay, seeking information that they simply do not need in order to further aims that have nothing to do with the payment of the Debtors' creditors.  Since the insurance companies are not creditors and refuse to pay legitimate creditors, notwithstanding their policies of insurance with the Debtors, they have no standing to seek access to personal and private claimant information.  Their attempts to use estimation as a need for obtaining the data they could not obtain through their appeal is pretextual.  One does not need to know private personal data in order to estimate a claim.

## II.

## ARGUMENT

**Certain Insurers Have No Standing to Request Sensitive Private Information Relating to Claims As to Which those Certain Insurers Have Refused to Acknowledge Coverage under Their Policies**

Since these Certain Insurer consistently decline to reimburse the Debtors for payment of asbestos claims asserted by the claimants represented by the law firm that filed the Rule 2019 Statement, they cannot show that their "rights or interests are 'directly and adversely' affected pecurniarily by an order or decree of the bankruptcy court."   The District court's standing analysis—interpreting an identical Rule 2019 Order challenged by two of the movants here—bears repeating here:

> In the bankruptcy context, standing is limited to "persons aggrieved" by an order of the Bankruptcy Court….[citing Combustion Engineering, 391 F.3d 190, 214 & n.21 (3d Cir. 2004)]…Standing is viewed more restrictively in the bankruptcy context, because bankruptcy proceedings typically involve a myriad of parties who are indirectly affected by every order issued by the bankruptcy court….

327. B. R. at 558.  The *Kaiser* court then turned to whether the insurers who complained about the fact that they were not given unfettered access to the 2019 information had suffered any kind of particularized injury, that is, whether they were in any way harmed by being denied access to sensitive claimant information.  In the absence of individualized harm, an inquisitive insurance company has no standing.  The District Court wrote:

> As Appellees point out*, the Rule 2019 Orders have no effect, unless (1) a plan of reorganization is first conceived, approved by creditors and confirmed, and (2) payment is sought from the Appellants [insurance companies] under the respective insurance policies they issued to the Debtors.*

*Kaiser*, 327 B.R. at 558 (emphasis added).   Finding that the plan had not been conceived in

*Kaiser*, just as it has not been approved by creditors or confirmed in this case, *"any impact that*

*the Revised Rule 2019 Orders may have on Appellants is contingent and speculative."   Kaiser*,

327 B.R. at 558 (emphasis added).   Not having a pecuniary interest in the private claimant

information, the insurers have no standing to complain that they are not given access to it.


### This Court's 2019 Order Legitimately Protects Innocent Tort Victims from Possible Misuses of Sensitive Private Information

While the District Court found the insurers lacked standing, it went on to hold that even

if they did have standing, the Bankruptcy Court "did not err in ….restricting access to the Rule

2019 information."   *Id*.   The District Court found that the Bankruptcy Court had the power to

balance claimants' privacy rights against the public's right to information.

> In the Court's view, Judge Fitzgerald's Rule 2019 Orders strike the
> appropriate balance between maintaining the public's right to
> access the Rule 2019 information and ensuring that the information
> is not misused."

*Id*.   There is good reason to be concerned over the privacy rights of personal injury claimants,

many of whom are elderly.   In reaching its decision to strike a balance that denied generalized

access to claimant information the Court repeatedly expressed concerns with privacy issues:

> "I was convinced to take them [social security numbers] out
> simply because I think there is a privacy issue especially when I'm
> also requiring disease levels and addresses to be put in."
> Transcript of Argument in All Delaware Asbestos Cass Regarding
> 2019 Order before Honorable Judith K. Fitzgerald United States
> Bankruptcy Judge on October 6, 2004 (the "October 6 Transcript")
> at 14, ll. 17-19.

> "I am really concerned about the privacy of these individuals . . .
> and I really don't think that I want to have disclosed, especially for
> people who have some form of disease, on a public record any
> more identifying information than is necessary.   And social

security numbers, even the last four digits are used for so many things that if that information plus a name, plus an address, plus a disease were to get out to someone for any reason I think it really could cause some phone calls and unwanted letters and I just don't see the need for it."  October 6 Transcript at 20, ll. 1-13.

"[R]easonable access still nonetheless gives the Court the discretion to protect privacy interests of various people."  October 6 Transcript at 30, ll. 1-3.

"And on the bankruptcy court's own motion may protect an entity or protect a person with respect to scandalous or defamatory matter or other types of information.  I think under 105 although 107 [11 U.S.C. §§ 105 and 107] was written at a time where the privacy concerns were not as realistic, where identity theft was not the most prevalent crime in the United States.  And it seems to me that 105 gives me sufficient authority under these circumstances to protect privacy of a party, i.e., a creditor as well."  October 6 Transcript at 31, ll. 5-14.

"[M]y primary concern right now is with the privacy rights of all of the creditors at issue."  October 6 Transcript at 32, ll. 17-19.

"I still think there's a privacy concern and I think it's appropriate to do this the way I'm doing it."  October 6 Transcript at 47, ll. 14-15.

"This order, in my view, does everything and probably more than it needs to do. . . . The problem that the Courts wrestle with with electronic case filing is just that.  Everything gets spread on the public docket and that is not appropriate.  That's not what the electronic case filing system was intended to do where privacy concerns are involved."  October 6 Transcript at 55, ll. 4-12.

Certain Insurers pay lip service to the Court's concerns, but then brush them aside stating that they "require" it in order to participate in the estimation proceedings.  As will be shown below, these Certain Insurers use "estimation" as if it were an "open sesame" entitling them to the treasure trove of personal information that they can use for any purpose they desire.

**An Insurance Company that is not Paying Claims Has No Need for Personal Claimant Information in Order to "Estimate" Them**

Without repeating the obvious point that these Certain Insurers steadfastly maintain that they have no duty to indemnify or reimburse the Debtors or any third party with respect to these claims, one may legitimately ask why an insurance company that has no intention of compensating a claimant needs to know the personal following information:

- Claimant's Name

- Claimant's Personal Address

- Form of Agreement with Counsel

- Claimant's Social Security Number

- Facts Surrounding Retention of Claimant's Attorney

These personal items have nothing to do with estimating claim. These Certain Insurers, perhaps realizing this, scramble to defend their request as follows: "Knowing the number, locations and disease categories of holders of Asbestos PI Claims and of these additional claimants will be germane to estimating current and future Asbestos PI Claims against the Debtors." Motion for Access at 5. Even assuming that insurance companies that aggressively refuse to acknowledge a duty to indemnify need to know about claims that they peremptorily deny, one can determine disease categories, location and claim amounts in ways that are much less threatening to the personal privacy interests of personal injury claimants.

**These Certain Insurers Are Huge Companies That May Have Other Uses (or Misuses) for Personal Claimant Information**

On information and belief, these Certain Insurers have interests in other lines of business, in other lines of insurance (health, disability, life, casualty) and might be able to use sensitive claimant data to benefit the insurance company in matters wholly unrelated to estimating claims

in the *W. R. Grace* bankruptcy cases.  Indeed, these Certain Insurers might use the data in coverage litigation, or in other bankruptcy cases.  Wholesale production of sensitive date to insurance companies involved in other bankruptcy cases, other tort litigation, other settlements, other lines of business, and having agendas other than the protection of privacy rights or the compensation of creditors, defeats the nuanced approach developed by this Court.  There is no assurance that a claimant data base would not promptly be sorted, cross-sorted, matched, logged, mined and plundered for the benefit of the insurance company, a company which professes to be a contractual stranger to these very claims.

Certain Insurers, reluctantly mindful of the Court's concern over claimant privacy and possible misuse of data (they make a grudging reference to only one of at least seven of the Court's references to these concerns in its October 6 hearing), offer to keep claimant data confidential.  Of course, any legitimate interest of a party in assuring both proper estimation and confidentiality could more easily be served by having the Debtors furnish Certain Insurers with the disease category mix.  This would eliminate the threat to personal privacy noted by the Bankruptcy Court and endorsed by the District Court.

If confidentiality is to be maintained, there would have to be a strict regime in place to be certain that any data that did come into the movants' hands (1) was used in an identified database, (2) accessed by identified individuals, (3) analyzed solely for the purposed of estimating claims in this bankruptcy case, (4) used for no other purpose, (5) and not merged with or placed in or cross referenced with any other database.

WHEREFORE, Baron & Budd, P.C. and Silber Pearlman, LLP, respectfully pray that the Court enter an order (i) denying in all respects Certain Insurers' Motion for Access, or in the alternative, (ii) limiting Certain Insurers' access to and use of the Exhibits to 2019 Statements,

and (ii) granting to Baron & Budd, P.C. and Silber Pearlman, LLP any and all other relief to which they may be entitled.

Dated:  September 16, 2005

Sander L. Esserman
Robert T. Brousseau
Van J. Hooker
**STUTZMAN, BROMBERG, ESSERMAN & PLIFKA,**
**A Professional Corporation**
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone:  (214) 969-4900
Facsimile:  (214) 969-4999
E-mail:  esserman@stutzman-bromberg.com

-AND-

/s/ Daniel. K. Hogan
Daniel K. Hogan (DE #2814)
**THE HOGAN FIRM**
1311 Delaware Avenue
Wilmington, DE  19806
Telephone:  (302) 656-7540

**ATTORNEYS FOR BARON & BUDD, P.C.**
**and SILBER PEARLMAN, LLP**