IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*,[1] | ) | Case No. 01-01139 (JKF) |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | [Related to Docket No. 9301] |
| | ) | **Hearing Date: October 24, 2005 noon** |
| | | **Objection Deadline: October 7, 2005** |

### MOTION OF REAUD, MORGAN & QUINN, INC. AND ENVIRONMENTAL LITIGATION GROUP, P.C. FOR (i) CLARIFICATION, OR (ii) ALTERNATIVELY, FOR MODIFICATION, OF CASE MANAGEMENT ORDER FOR THE ESTIMATION OF PERSONAL INJURY LIABILITIES

Reaud, Morgan & Quinn, Inc. ("RMQ") and Environmental Litigation Group, P.C., ("ELG") (collectively, "Movants"), by and through their undersigned attorneys, and on behalf of their clients described herein, hereby move this Court for an order clarifying the Case Management Order for the Estimation of Asbestos Personal Injury Liabilities (the "Case Management Order") (Docket No. 9301) or, in the alternative, for modification of the Case Management Order. For such motion, Movants state as follows:

#### Summary of Motion

1. The Case Management Order, which requires the completion of a detailed Asbestos Personal Injury Questionnaire (the "Questionnaire"),[2] was not intended to and does not apply to asbestos claimants whose claims were settled and liquidated pre-petition pursuant to written settlement agreements. Moreover, the Case Management Order was not intended to and

---

[1] Debtors are referred to herein collectively as the "Debtor" or "Grace."

{10006749.DOC}

-1-

does not apply to asbestos claimants who have already provided to the Debtor in other proceedings the information concerning their asbestos claims that is called for in the Questionnaire.

2. The asbestos claimants represented by Movants in this case (hereafter the "Settled Plaintiffs") fall within both of these categories.[3] They settled their litigation cases against the Debtors long before the petition date. They entered into written settlement agreements, pursuant to which they provided detailed information about their asbestos injuries to the Debtors, including, among other things, evidence of product exposure, work history, and medical diagnoses of their specific asbestos disease – the very information required by the Questionnaire.

3. Although it is obvious that the Case Management Order does not, and was not intended to, apply to these claimants, the Debtor refuses to acknowledge such fact and is insisting that the Settled Plaintiffs re-submit their information in the form of the Questionnaire. Accordingly, Movants seek from this Court an order clarifying that the Case Management Order does not apply to the Settled Plaintiffs. Alternatively, Movants seek an order modifying the Case Management Order and relieving the Settled Plaintiffs from the requirement of re-submitting their information to the Debtor in the Questionnaire.

**Factual and Procedural Background**

4. Prior to August 2000, the Settled Plaintiffs had filed lawsuits against Grace to recover damages as a result of asbestos-related disease and injury. On or about August 25, 2000,

---

[2] Unless otherwise defined herein, capitalized terms shall have the same meaning as defined in the Case Management Order.
[3] This motion is made on behalf of the Settled Plaintiffs only, who settled their claims against Grace pursuant to the Settlement Agreements (as described in paragraph 4 herein below). RMQ and ELG also represent other asbestos claimants who have not settled their claims against Grace. It is understood that the non-Settled Plaintiffs fall within the intended scope of the Case Management Order.

{10006749.DOC}

the Settled Plaintiffs and Grace entered into two settlement agreements: (1) the Confidential Settlement Agreement for Texas Cases (for RMQ's clients) and (2) the Confidential Settlement Agreement for Alabama Cases (for ELG's clients) (collectively, the "Settlement Agreements"). The Settlement Agreements settled the asbestos claims of in excess of 10,000 Settled Plaintiffs. True and correct copies of the Settlement Agreements (without exhibits, which are voluminous) are attached hereto as Exhibits "A" and "B".[4]

5. Pursuant to the Settlement Agreements, each of the Settled Plaintiffs were required to, and did, submit to the Debtor detailed information and documentation concerning each Settling Plaintiff's work history, their exposure to Grace asbestos-containing products, and their medical condition (hereinafter "Qualifying Materials"). The required medical condition information included, among other things, a report from a board certified pathologist or a diagnosis from a competent physician finding an asbestos-related disease or cancer and a report from a competent physician linking the disease or cancer to asbestos exposure.[5] With regard to

---

[4] This Court is aware of the terms and provisions of the Settlement Agreements, which are the subject of an adversary proceeding in this Court that has been heavily briefed and litigated through the summary judgment stage. *See W.R. Grace & Co.-Conn. v. National Union Fire Insurance Company of Pittsburgh, PA v. Reaud, Morgan & Quinn, Inc. and Environmental Litigation Group*, Adversary No. 02-01657 (Bankr. D. Del. 2002). Movants request that the Court take judicial notice of the evidence presented by the parties in the adversary proceeding, which includes full copies of the Settlement Agreements, declarations of the parties, and excerpts from the deposition of Jay Hughes, Senior Litigation Counsel for the Debtor.

[5] Each of the Settlement Agreements requires submission of the following "Qualifying Materials" by the Settled Plaintiffs, which Grace agreed would be sufficient to prove the claimant's asbestos disease and qualify the claimant for payment:

> "Qualifying Materials" consist of the following: (i) competent medical evidence that the Settling Plaintiff (or, for wrongful-death claims, the Settling Plaintiff's decedent) has or had an asbestos-related injury of the type set forth in paragraph 4 of this Agreement ("Medical Evidence"); and (ii) a standard release prepared by RMQ and executed by the Settling Plaintiff in the form attached hereto as Exhibit B or Exhibit C. Additionally, RMQ shall provide "Exposure Evidence" in the form of (a) a work history sheet for each Settling Plaintiff showing that such plaintiff worked for some period of time at an Agreed-Exposure Plant; and (b) a list of plants at which W.R. Grace agrees that its asbestos-containing products were used (the "Agreed-Exposure Plants"). The parties to this Agreement have agreed on the worksites that qualify as exposure sites for Settling Plaintiffs for this settlement only and no others, and a list of agreed exposure sites is attached as Exhibit D. Medical Evidence will be sufficient if it demonstrates that: (i) for Settling Plaintiffs alleging non-malignant asbestos related disease, either there exists a diagnosis of such condition

{10006749.DOC}

work history and exposure, the parties even agreed upon the specific worksite locations that qualify as exposure sites. Each Settling Claimant also delivered to Grace a release of that claimant's asbestos claims.

6.  The Settlement Agreements required Grace to notify RMQ or ELG within sixty (60) days after receipt of Qualifying Materials if the Debtor objected to the sufficiency of the submission. Grace did not object to any Qualifying Materials submitted by ELG. Although Grace had questions concerning some of the Qualifying Materials submitted by RMQ, either all such issues were resolved to Grace's satisfaction or the Qualifying Materials were re-submitted and then accepted.[6] In fact, Jay Hughes, Senior Litigation Counsel for the Debtor, acknowledged this procedure under the Settlement Agreements.[7]

7.  As a result of Grace's acceptance of the Qualifying Materials, Grace commenced making the installment payments required under the Settlement Agreements, and a substantial amount of the total was paid. The Debtor ceased payments after filing bankruptcy.

---

by a pathologist or a B-reader confirming such condition; (ii) for Settling Plaintiffs alleging asbestos-related cancer, other than lung cancer or mesothelioma, either there exists (a) a report from a board-certified pathologist that links the cancer to asbestos exposure, or (b) a diagnosis by a competent physician of one of the following cancers – Colon Cancer, Esophageal Cancer, Pharyngeal Cancer, Stomach Cancer, Kidney Cancer, Laryngeal Cancer, together with radiological evidence of some asbestos-related lung abnormality; (iii) for Settling Plaintiffs alleging asbestos-related lung cancer, there exists a diagnosis of lung cancer by a competent physician and a report of a physician that links the lung cancer to asbestos; (iv) for Settling Plaintiffs alleging asbestos-related mesothelioma, there exists a diagnosis of mesothelioma by a competent pathologist.

Settlement Agreements ¶ 6.

[6] See Declarations of J. William Lewis and Glen W. Morgan ¶ 16. Appendix to Reaud, Morgan & Quinn, Inc. and Environmental Litigation Group, P.C.'s Opening Brief in Support of Their Motion for Summary Judgment, etc. *W.R. Grace & Co.-Conn. v. National Union Fire Insurance Company of Pittsburgh, PA v. Reaud, Morgan & Quinn, Inc. and Environmental Litigation Group*, Adversary No. 02-01657 (Bankr. D. Del. 2002) (Docket No. 40).

[7] Deposition of Jay Hughes, pp. 21-31. Debtor's Response in Support of National Union's Summary Judgment Motion, etc. *W.R. Grace & Co.-Conn. v. National Union Fire Insurance Company of Pittsburgh, PA v. Reaud, Morgan & Quinn, Inc. and Environmental Litigation Group*, Adversary No. 02-01657 (Bankr. D. Del. 2002) (Docket No. 48).

{10006749.DOC}

8. On July 19, 2005, this Court held one of several hearings to consider the proposed Case Management Order and the Questionnaire. Throughout the hearing, counsel and the Court discussed the purpose of the Questionnaire and the intended scope of the Case Management Order. From a review of the hearing transcript, it is clear that both the Court and Debtor's counsel intended to implement a mechanism for the Debtor to obtain from asbestos claimants certain basic information that had ***not yet been provided*** to the Debtor. In fact, the Court was quite clear in instructing counsel that completion of the Questionnaire would not be required if the information had previously been provided to the Debtor in prior litigation or otherwise:

> MR. FINCH: There could be a warehouse of documents that Grace produced in prior litigation relating to exposures at job sites all over the country. You're expecting the plaintiff's lawyer to produce that, or can they just say tell Grace to go look in your own document depository?
>
> THE COURT: You can tell Grace to go look in its document depository if you identify for Grace where in the document depository it is. So, if it was filed in XYZ case pending in the Southern District of New York in discovery production YZ. You can do that.
>
> ...
>
> THE COURT: They probably have, **but if they've already produced them once, they don't need to produce them again. So if they can prove that they've already produced them; you [i.e., the Debtor] can go back into your [i.e., the Debtor's] files and get them.**

(Transcript of Hearing Before the Honorable Judith K. Fitzgerald, July 19, 2005; pp. 235–236; *emphasis added*.)

9. Notwithstanding this obvious understanding between counsel and the Court, Debtor sent to RMQ approximately 26 boxes full of copies of the Questionnaire for completion by the Settled Plaintiffs. On September 13, 2005, and several times thereafter, the undersigned counsel sent correspondence to counsel for the Debtor requesting the Debtor to acknowledge that the Settled Plaintiffs do not have to complete the Questionnaire because i) as their claims were

settled and liquidated pre-petition, they are not within the scope of the Case Management Order, and ii) in any event, the Debtor already is in possession of the same information as a result of the submission of Qualifying Materials under the Settlement Agreements. Debtor's counsel has declined to answer the inquiries, and thus it can only be assumed that the Debtor disagrees and expects all Settled Plaintiffs to complete the Questionnaires.[8]

### Relief Requested

10. By this motion, Movants request an order of the Court clarifying the scope of the Case Management Order (if such even is even necessary, since it is Movants' position that the order does not even apply to them) and declaring that the Settled Plaintiffs are not required to complete the Questionnaire.[9] Alternatively, the Settled Plaintiffs seek an order modifying the Case Management Order to provide that the order shall not apply to the Settled Plaintiffs, whose claims were settled and liquidated pre-petition and who have previously submitted the same or equivalent information under the Settlement Agreements.

### Argument

**A.    The Case Management Order does not apply to settled, liquidated claims.**

11. The Case Management Order requires completion of Questionnaires by all "Asbestos PI Pre-Petition Litigation Claims." Such term is defined in the order as "holders of asbestos personal injury claims for which litigation was commenced prior to the Petition Date." *See* Case Management Order ¶ 3.A.    On its face (but out of context with the Court's

---

[8] On September 19, 2005, the last day to file this motion to obtain a setting on the October 24, 2005 omnibus docket, Barbara Harding, counsel for Grace, finally called Mr. Esserman in response to his numerous requests. They were not able to speak, however, before the motion had to be filed.

[9] The Case Management Order provides that "this Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order." Case Management Order ¶ 19.

interpretation of the order), the order could be interpreted to apply to anyone who ever filed litigation against Grace at any time, whatever the current status of that litigation – even cases settled and dismissed years before the Debtor's bankruptcy.

12. The purpose of obtaining the information, however, is for discovery relevant to the claims estimation process. Obviously a claim that has been settled, released and assigned a liquidated value in a settlement agreement is not a claim that needs to be estimated. This is true even if there remains some portion of the settlement amount unpaid. The estimation process is intended to estimate the number and dollar value of claims that will be asserted against the estate. The value of a claim that is already settled is known. It is not necessary to review exposure evidence, medical proof, etc., because the Debtor has already agreed to the claim's validity and amount.

13. The Case Management Order therefore, as a mechanism to assist the estimation process, does not and is not intended to apply to the Settled Plaintiffs. The Court should enter its order clarifying that the Settled Plaintiffs are not required to complete the Questionnaire.

**B. The Case Management Order does not require the submission of information already provided to and/or known by the Debtor.**

14. Even if the Case Management Order could be construed to apply to claims other than claims still alive in the tort system, the Court did not intend that claimants be required to provide redundant information already submitted to the Debtor. The transcript excerpts quoted above demonstrate that the Court did not intend for claimants who had previously provided the same or equivalent information in a different proceeding to be required to complete the Questionnaire and re-submit the information.

15. This is precisely the situation of the Settled Plaintiffs. In order to participate under the Settlement Agreements, the Settled Plaintiffs provided evidence of exposure, work history, disease diagnoses, etc. to Grace. These submissions were accepted by Grace as sufficient to prove the validity of the claims. In fact, substantial payments have been made under the Settlement Agreements. It is absurd for the Debtor to assert that the information previously submitted and approved should be re-submitted for the claims estimation proceeding. There are over 10,000 Settled Plaintiffs. The burden of every claimant re-submitting his or her claim information by filling out the Questionnaire would be enormous and wholly unnecessary. It will not advance the estimation process at all. The Court should therefore clarify that the Case Management Order does not apply to the Settled Plaintiffs. Alternatively, the Court should modify the order so that it excludes the Settled Plaintiffs from the requirement of completing the Questionnaire.

**C.    Debtor should be required to pay the costs of Movants in bringing this motion.**

16. The position of the Debtor here is inexcusable. Given the statements made on the record at the hearing on July 19, 2005, there is no reasonable explanation for the Debtor's opposition to this motion. Movants' counsel attempted to reach an agreement on the interpretation of the Case Management Order prior to filing this Motion, but the Debtor declined to respond to counsel's inquiries. The refusal is without a good faith basis. The Debtor already has the information it seeks, and the information is in any event not pertinent to an estimation of claims. Unless the Debtor's motive in sending the Questionnaires is harassment, there is no explanation as to why the Debtor will not stipulate to the relief sought herein. Accordingly, Movants should be awarded their costs, including attorneys' fees and all expenses, incurred in preparing and prosecuting this motion.

{10006749.DOC}

## Conclusion

17.     The Case Management Order does not apply to the Settled Plaintiffs. Moreover, the information sought in the Questionnaire is duplicative of information already submitted to and approved by the Debtor. The Debtor accepted the submissions as sufficient to prove the validity of the claims and even paid on the claims until the intervention of bankruptcy. Re-submission of the same information again for over 10,000 claimants would be unduly burdensome and is not what was intended when the Court approved the Questionnaire. The Court should, if such even be necessary, issue an order of clarification so that it is clear the Case Management Order does not apply to the Settled Plaintiffs. Alternatively the Court should modify the order to exclude compliance by the Settled Plaintiffs.

WHEREFORE, Movants pray that the Court enter its order clarifying the Case Management Order as set forth above, or in the alternative, modifying the Case Management Order, that the Court award Movants their costs in bringing this motion, and for such other and further relief to which Movants are entitled.

Dated: September 19, 2005         Sander L. Esserman
                                  Robert T. Brousseau
                                  Van J. Hooker
                                  **STUTZMAN, BROMBERG, ESSERMAN & PLIFKA,**
                                  **A Professional Corporation**
                                  2323 Bryan Street, Suite 2200
                                  Dallas, Texas 75201
                                  Telephone: (214) 969-4900
                                  Facsimile: (214) 969-4999
                                  E-mail: esserman@stutzman-bromberg.com

                                  -AND-

SMITH, KATZENSTEIN &
FURLOW, LLP

/s/ Kathleen M. Miller
Kathleen M. Miller (ID no. 2898)
The Corporate Plaza
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, Delaware 19899 (Courier 19801)
Telephone: (302) 652-8400
Facsimile: (302) 654-8405
E-mail: KMM@skfdelaware.com

**ATTORNEYS FOR REAUD, MORGAN &
QUINN, INC. AND ENVIRONMENTAL
LITIGATION GROUP, P.C.**