# EXHIBIT "A"

Exhibpgs

# CONFIDENTIAL SETTLEMENT AGREEMENT
# FOR TEXAS CASES

This Confidential Settlement Agreement (the "Agreement") is entered into as of the 25th day of August, 2000 by and between (i) W. R. Grace & Co.-Conn.; (ii) the Settling Plaintiffs (as defined below) by and through their attorney, Glen W. Morgan of Reaud, Morgan & Quinn, Inc. (herein "RMQ").

## RECITALS

WHEREAS, RMQ (herein "Plaintiffs Counsel") have filed thousands of asbestos-related bodily-injury and wrongful-death claims against W. R. Grace & Co.-Conn. and others in various courts.

WHEREAS, W. R. Grace & Co.-Conn. desires, without in any way admitting liability, to settle the claims brought by clients of Plaintiffs Counsel against W. R. Grace & Co.-Conn. so as to avoid the delay, inconvenience, expense and uncertainties of further litigation.

WHEREAS, Plaintiffs Counsel have determined that the settlement set forth in this Agreement is fair to, and is in the best interests of, each of the Settling Plaintiffs (as defined below) and have agreed, to the extent consistent with their professional responsibilities to their clients, to recommend strongly this settlement and to use their best efforts to have the settlement accepted by each and every Settling Plaintiff (as defined below).

NOW, THEREFORE, in consideration of the premises and the mutual promises and representations contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is hereby agreed as follows:

1

## DEFINITIONS AND ELIGIBILITY TO PARTICIPATE IN SETTLEMENT

1. For purposes of this Agreement, the term "W. R. Grace" means: (i) W. R. Grace & Co. -Conn. (a Connecticut corporation); (ii) W. R. Grace & Co. (a New York corporation); (iii) W.R. Grace & Co. (a Delaware corporation); (iv) Western Mineral Products Company; and (v) Southern Zonolite Company. The term "W. R. Grace" also includes, with respect to the entities listed in clauses (i)-(v) of this Paragraph 1, all of their predecessors; successors; assigns; insurers (but only to the extent of coverage for W. R. Grace); present and former parents and subsidiaries; present and former partners, principals, shareholders, employees, officers, directors and agents; and all entities controlling or controlled by them as of the date of this Agreement.

2. For purposes of this Agreement, the term "RMQ" means Reaud, Morgan & Quinn, Inc.

3. The plaintiffs eligible to participate in the settlement set forth in this Agreement are referred to herein collectively as "Settling Plaintiffs" and individually as a "Settling Plaintiff." The term "Settling Plaintiffs" means each and every client of RMQ (i) who, as of May 19, 2000, is a plaintiff in a pending lawsuit in any court (state or federal) in any jurisdiction wherein any claim is being asserted against W. R. Grace for monetary damages for any asbestos-related disease, injury or death; (ii) who is represented by RMQ; (iii) who is not already a party to or otherwise subject to a prior settlement agreement with W. R. Grace; and (iv) whose case against W. R. Grace had not been tried to a verdict as of May 19, 2000. Exhibit A to this Agreement is a list, based on the best information currently available to RMQ and W. R. Grace, of the Settling Plaintiffs.

## SETTLEMENT PAYMENTS AND DISBURSEMENT PROCEDURES

4. RMQ agrees that settlement payments from W. R. Grace in the following amounts constitute a fair and reasonable basis on which to settle the claims of each Settling Plaintiff against W. R. Grace:

| Description | Approx. Number of Claims | Value | Total |
| --- | --- | --- | --- |
| Mesothelioma | 50 | $52,500.00 | $2,625,000.00 |
| Lung Cancer | 361 | $21,750.00 | $7,851,750.00 |
| Other Cancer | 133 | $13,000.00 | $1,729,000.00 |
| Pulmonary | 771 | $ 8,750.00 | $6,746,250.00 |
| Pleural | 592 | $ 4,490.50 | $2,658,376.00 |
| Total | 1907 | | |

In the case of wrongful-death claims, only one payment shall be made under this Paragraph 4 for each decedent, regardless of the number of Settling Plaintiffs who have made claims with respect to that decedent.

5. W. R. Grace shall pay to RMQ, in trust for the settling plaintiffs, the sum of $21,610,376.00 payable as set forth herein below. This amount shall be reduced to the extent that any plaintiff on Exhibit A rejects the settlement and declines to submit an executed release (in form as Exhibit B and Exhibit C) and the Qualifying Materials (as defined in paragraph 6). The amount of such reduction with respect to any plaintiff who rejects the settlement shall be the amount of such plaintiff's disease value (as set forth in paragraph 4 and Exhibit A) and the total amount of all such reductions shall be deducted from the January 15, 2003 installment. The amount payable by W.R. Grace hereunder shall be the "Settlement Funds" which shall be payable as follows:

| Payment Date | Payment Amount |
| --- | --- |
| November 1, 2000 | $7,887,000 |
| January 15, 2001; | $6,309,600 |
| January 15, 2002; and | $3,470,280 |
| January 15, 2003. | Balance Due (at least $3,943,500) |

6. RMQ shall submit to W. R. Grace the Qualifying Materials (as defined below) for each Settling Plaintiff who elects to participate in the settlement set forth in this Agreement. "Qualifying Materials" consist of the following: (i) competent medical evidence that the Settling Plaintiff (or, for wrongful-death claims, the Settling Plaintiff's decedent) has or had an asbestos-related disease or injury of the type set forth in paragraph 4 of this Agreement ("Medical Evidence"); and (ii) a standard release prepared by RMQ and executed by the Settling Plaintiff in the form attached hereto as Exhibit B or Exhibit C. Additionally, RMQ shall provide "Exposure Evidence" in the form of (a) a work history sheet for each Settling Plaintiff showing that such plaintiff worked for some period of time at an Agreed-Exposure Plant; and (b) a list of plants at which W.R. Grace agrees that its asbestos-containing products were used (the "Agreed-Exposure Plants"). The parties to this Agreement have agreed on the worksites that qualify as exposure sites for Settling Plaintiffs for this settlement only and no others, and a list of agreed exposure sites is attached as Exhibit D. Medical Evidence will be sufficient if it demonstrates that: (i) for Settling Plaintiffs alleging non-malignant asbestos related disease, either there exists a diagnosis of such condition by a pathologist or a B-reader confirming such condition; (ii) for Settling Plaintiffs alleging asbestos-related cancer, other than lung cancer or mesothelioma, either there exists (a) a report from a board-certified pathologist that links the cancer to asbestos exposure, or (b) a diagnosis by a competent physician of one of the following cancers - Colon Cancer, Esophageal Cancer, Pharyngeal Cancer, Stomach Cancer, Kidney Cancer, Laryngeal Cancer, together with radiological evidence of some asbestos-related lung abnormality; (iii) for Settling

4

Plaintiffs alleging asbestos-related lung cancer, there exists a diagnosis of lung cancer by a competent physician and a report of a physician that links the lung cancer to asbestos; (iv) for Settling Plaintiffs alleging asbestos-related mesothelioma, there exists a diagnosis of mesothelioma or pseudomesothelioma by a competent pathologist.

7. The settlement installments (as set forth in paragraph 5 above), shall be payable on the designated payment dates only if RMQ has submitted Qualifying Materials to W. R. Grace not later than 60 days prior to such payment date for Settling Plaintiffs whose aggregate settlement amount equals or exceeds the amount of the installment due on such payment date. RMQ shall provide W. R. Grace with written notice by October 31, 2002 of the identity of all Settling Plaintiffs who have elected not to participate in the settlement. If RMQ has not submitted sufficient claims to satisfy the total amount of the November 2000 payment, W.R. Grace agrees to continue to fund claims 60 days after submission until the total amount of the November 2000 payment is made.

8. W. R. Grace shall, within 60 days of receipt of Settling Plaintiffs' Qualifying Materials, notify RMQ in writing of the identity of any Settling Plaintiffs whose Qualifying Materials are deficient and shall identify, with reasonable particularity, the defect(s) in any such Qualifying Materials. If the parties cannot resolve the issue giving rise to the determination of deficiency, the sufficiency of the disputed Qualifying Materials shall be submitted to binding arbitration by the parties. Any arbitrations with respect to disputed Qualifying Materials shall be completed by no later than September 30, 2001. The cost of the arbitration shall be borne by the party against whom the arbitrator rules. The arbitrator shall be selected by agreement of the parties, failing which the court in which the case had been pending shall be requested to designate an arbitrator.

9. The parties shall attempt to negotiate a futures agreement that covers (a) new asbestos-related cancers among the Settling Plaintiffs brought to light after May 19, 2000; (b) asbestos-disease cases diagnosed after May 19, 2000; and (c) a flow rate of those cases under (b) above. In the event that the parties hereto have no such agreement with respect to either category of claimants by September 30, 2000, then an action may be brought by any such claimant in any court of competent jurisdiction.

10. RMQ shall file a motion to dismiss with prejudice all Settling Plaintiffs listed on Exhibit A hereto promptly after the execution of this Agreement. In the event that any such Settling Plaintiffs case shall not be settled hereunder (for any reason), then the parties hereto agree that such case shall be reinstated in the court from which it was dismissed. W. R. Grace agrees to waive any statute of limitation defense it might have as a result of any such dismissal and reinstatement and further agrees that, in the event of such reinstatement, the parties will be in the exact position they would have been in had the reinstatement not occurred.

11. W. R. Grace shall return to RMQ the releases of any Settling Plaintiff whose Qualifying Materials have been determined to be inadequate.

12. (a) W. R. Grace agrees and covenants to provide a letter of credit or other similar guarantee of this agreement satisfactory to RMQ a copy of which is attached hereto as Exhibit E. W. R. Grace shall take whatever steps that may be necessary from time to time to insure that said guarantee shall remain in effect until the entire agreement is paid in full. A true and correct copy of any such guarantee is to be forwarded to RMQ immediately upon the receipt of said guarantee. If a substitution of the guarantee is necessary, W. R. Grace must first obtain the permission of RMQ, and a copy shall be sent to RMQ. W. R. Grace is to obtain said guarantee in such a form so as to insure all payments will be made to Settling Plaintiffs without regard to

any bankruptcy proceeding which may be instituted against or by W. R. Grace.

(b) If a substitution of the letter of credit or other similar guarantee required by this Section 12 (the "Guarantee") is necessary, the permission of RMQ for such substitution shall not be unreasonably withheld or delayed, and shall not be withheld or delayed if the substitute Guarantee is provided by one or more banks or other financial institutionals of national stature and its terms and conditions are identical in all material respects to those of the Guarantee as set forth in Exhibit E.

(c) If substitution of the Guarantee is necessary and W.R. Grace does not provide a substitute Guarantee in accordance with this Section 12, then in lieu of a substitute Guaranty, W.R. Grace shall provide cash collateral in an initial amount equal to the face amount of the Guarantee less any payments theretofore actually made under this agreement, and subject to reduction dollar for dollar upon subsequent payments under this agreement. The terms and conditions of the provision and disposition of the cash collateral shall be consistent with the terms and conditions of this agreement and otherwise reasonably satisfactory to RMQ.

(d) The withholding of permission for substitution of collateral shall not be deemed unreasonable if RMQ has reasonable concern that such substituted collateral will be a preference in bankruptcy.

13. Nothing in this agreement is meant to affect the Settling Plaintiffs' claims against the remaining defendants. W. R. Grace is to file a motion to dismiss all cross-actions and seek a dismissal of all cross-actions filed against W. R. Grace. Furthermore, W. R. Grace agrees not to cooperate with or assist any other defendant in this litigation by way of, without limitation, furnishing experts, documents or any other assistance.

14. RMQ and the Settling Plaintiffs acknowledge that W. R. Grace has denied and

7

continues to deny any liability or wrongdoing and is willing to enter into this Agreement solely to avoid the delay, expense, inconvenience and uncertainty of further litigation. Neither this Agreement, nor any exhibit, document or instrument delivered hereunder, nor any statement, transaction or proceeding in connection with the negotiation, execution or implementation of this Agreement, shall be (i) deemed to be or construed as an admission by any party of any fact, matter, proposition or merit or lack of merit of any claim or defense or (ii) referred to or used in any manner or for any purpose in any pending or future action or proceeding, except one to enforce this Agreement.

15. Except to the extent the Settling Plaintiffs or W. R. Grace (or their respective attorneys) are required to disclose such information (i) to comply with applicable law or procedural rules or (ii) to be reimbursed under applicable liability insurance policies (or similar agreements), the terms of this Agreement, including the amount of any consideration paid, shall be kept strictly confidential and shall not be directly or indirectly disclosed by W. R. Grace or the Settling Plaintiffs or their employees, agents or attorneys except by written agreement of the parties or court order. In the event that the Settling Plaintiffs or W. R. Grace are required to disclose such information in order to comply with applicable law or rules, they agree that such disclosure will be limited only to those who have a lawful right to know such information.

16. All notices or communications required or permitted to be given under this Agreement to RMQ or the Settling Plaintiffs shall be addressed to: Glen W. Morgan, Reaud, Morgan and Quinn, Inc., 801 Laurel Street, Beaumont, Texas 77720-6005, and shall be sent by certified mail, return receipt requested.

17. All notices or communications required or permitted to be given under this Agreement to W. R. Grace shall be addressed to: Jay W. Hughes, Jr., W. R. Grace & Co. Conn.,

5400 Broken Sound Blvd. NW, Boca Raton, Florida 33487, and shall be sent by certified mail, return receipt requested.

18. The Qualifying Materials required to be submitted to W.R. Grace under paragraph 6 above shall be delivered by Federal Express or equivalent carrier to the following address: Jay W. Hughes, Jr., W. R. Grace & Co. Conn., 5400 Broken Sound Blvd. NW, Boca Raton, Florida 33487

19. This Agreement shall for all purposes include all Exhibits attached hereto. This Agreement embodies the entire agreement among the parties, supersedes all prior agreements and understandings relating to the subject matter hereof and may be amended only by a written agreement executed jointly by all parties hereto. In executing this Agreement, each party represents and warrants that he or she is not relying on any representation of any other party with respect to the subject matter hereof, except those explicitly set forth in this Agreement.

20. This Settlement Agreement shall be construed and enforced in accordance with the laws of the State of Texas.

21. The parties hereby agree that they shall not contest venue or jurisdiction over any suit, claim or enforcement action brought in Jefferson County, Texas arising out of this Agreement.

EXECUTED as of the 21st day of September, 2000.

By: _____
Jay W. Hughes, Jr.
Senior Litigation Counsel

SETTLING PLAINTIFFS,
BY THEIR UNDERSIGNED ATTORNEYS

REAUD, MORGAN & QUINN, INC.

By: _____
Glen W. Morgan