IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

| | | |
|---|---|---|
| W. R. GRACE & CO., et al. | ) | Adversary Proceeding No. ___ |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRADLEY M. CAMPBELL, | ) | |
| COMMISSIONER OF THE NEW | ) | |
| JERSEY DEPARTMENT OF | ) | |
| ENVIRONMENTAL PROTECTION, in | ) | |
| his official capacity, PETER C. HARVEY, | ) | |
| ATTORNEY GENERAL OF NEW | ) | |
| JERSEY, in his official capacity, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

W.R. Grace & Co. and W. R. Grace & Co-Conn. (collectively "Grace"), as

Debtors and debtors-in-possession in the above-captioned Chapter 11 Cases, and plaintiffs in the

above-captioned adversary proceeding, allege for their Complaint, upon knowledge of their own

acts and upon information and belief as to all other matters, as follows:

## SUMMARY OF ACTION

1.      This is an adversary proceeding brought pursuant to Fed. R. Bankr. P.

7001(7) and (9) and Fed. R. Bankr. P. 7065, for declaratory and injunctive relief to enjoin the

Defendants from prosecuting an action in New Jersey Superior Court against Grace, Grace

officer Robert J. Bettacchi, and former Grace employee Jay H. Burrill, based on defendants'

submission of an allegedly false report to the New Jersey Department of Environmental

Protection ("DEP") more than ten years ago.

        2.      On June 1, 2005, more than four years after Grace filed for Chapter 11

bankruptcy protection, the DEP brought a civil action in New Jersey state court against Grace

and two Grace employees seeking to recover more than $800 million. The complaint does not

seek to force the remediation of environmental injury, recover for the costs of environmental

clean-up, or even impose penalties for environmental violations. Rather, DEP claims that in a

June 1995 report, defendants should have provided additional information about the expansion of

vermiculite concentrate, and because defendants failed to do so, the State of New Jersey may

recover $75,000 in civil penalties for every day over the last ten years that defendants failed to

correct this allegedly false report.

        3.      The New Jersey action clearly threatens the orderly administration of the

Grace estate. So long as the New Jersey action continues outside this Court, no plan of

reorganization for Grace could be completed. It simply makes no sense to waste assets of the

bankruptcy estate by requiring the debtors to participate in protracted and expensive litigation

outside the confines of this Court. Therefore, Grace intends to remove the New Jersey action to

the United States District Court for the District of New Jersey and move to have the case

transferred to this District where the claims may be referred to this Court for adjudication within

the context of the bankruptcy proceeding.

2

4.     Grace now files this adversary complaint for declaratory and injunctive relief seeking to enjoin defendants from prosecuting the New Jersey action against Grace and its employees until it may be transferred to this Court. In the event that the removal and transfer proves unsuccessful, Grace seeks an injunction staying the New Jersey action stayed until the conclusion of the bankruptcy process.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O).

6.     Venue of this action in this District is proper under 28 U.S.C. § 1409.

7.     The statutory predicates for relief requested herein are Sections 362(a) and 105(a) of the Bankruptcy Code, Fed. R. Bankr. P. 7065, and the All Writs Act, 28 U.S.C. § 1651.

## THE PARTIES

8.     The plaintiffs in this adversary proceeding are W. R. Grace & Co. and W. R. Grace & Co-Conn., debtors in the underlying bankruptcy case, Case No. 01-01139 et al. (JKF).

9.     The defendants in this proceeding are two New Jersey state officials who direct the litigation filed against Grace by the DEP in New Jersey state court. Defendant Bradley M. Campbell is Commissioner of the DEP. Peter C. Harvey is Attorney General for the State of New Jersey. They are sued here in their official capacity.

3

## FACTUAL BACKGROUND

10.     On April 2, 2001, Grace and related entities filed their voluntary petitions
for relief under chapter 11 of the Bankruptcy Code. The State of New Jersey received notice of
the bankruptcy petition with other creditors, and New Jersey instrumentalities thereafter filed
proofs of claim.

11.     More than four years later, on June 1, 2005, the New Jersey DEP, a
governmental unit of the State of New Jersey, brought an action against Grace seeking to recover
more than $800 million. Although the State was aware of the Grace bankruptcy, DEP chose to
file its action in the Superior Court of New Jersey, Mercer County. The New Jersey State action
charges Grace with violating two state statutes, the Industrial Site Recovery Act, N.J.S.A. 13:1k-
8 et seq. ("ISRA") and the New Jersey Spill and Compensation Act, N.J.S.A. 58:10-23.11b et
seq ("the Spill Act").

12.     The complaint alleges that Grace, which operated an industrial plant in
Hamilton Township, New Jersey, together with then-employees, Robert J. Bettacchi and Jay H.
Burrill, failed in a June 5, 1995 report to DEP to disclose material facts to State environmental
authorities concerning the risks of processing asbestos-contaminated vermiculite. Complaint
¶¶ 60-64 (attached as Exhibit 1). The complaint further alleges that "since June 5, 1995, each of
the Defendants has continued to withhold the correct information that should have been include
in the [report] and has failed to correct the misinformation provided in the [report]." Id. ¶ 65.

13.     The allegations against Mr. Bettacchi and Mr. Burrill track verbatim those
raised against the Debtors themselves, see id. ¶¶ 59-64, because, as plaintiffs have alleged,
Bettachi and Burrill were acting on behalf of Grace in their respective capacities as Vice

4

President and Environmental Coordinator, when they made the representations that New Jersey now alleges were "false and misleading," *id.* ¶¶ 61-64, 71.

14.    Debtors' by-laws require that Grace indemnify, to the fullest extent allowed under applicable law, each person who was or is made a party or is threatened to be made a party to or is "involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative," by reason of the fact that he or she was serving as a director, officer, employee of Grace or Grace-Conn. Amended and Restated By-Laws of W. R. Grace & Co. Article II, §6.7 (emphasis added) (Exhibit 2). Accordingly, the financial burdens of the entire litigation fall squarely on the Debtors and, by extension, all creditors of the estate.

15.    As a result of filing the allegedly false report, the complaint seeks to assess liability against each defendant for $25,000 under ISRA and for $50,000 under the Spill Act. Compl. 21, 22-23. In addition, the complaint alleges the defendants have committed a separate violation of the ISRA and the Spill Act for "each day Defendants failed to correct the false information" set forth in the report. *Id.* DEP thus claims that defendants' refusal to concede the falsity of the June 1995 report equates to a total liability of $75,000 for every day from June 5, 1995 until the present day, for a total amount of civil penalties that exceeds $800 million and presumably grows each day.

16.    By a notice filed in New Jersey Superior Court on September 19, 2005, the defendants have removed the New Jersey action to the United States District Court of New Jersey and intend to move that court to transfer the action to the District Court of Delaware so that this Court may assume jurisdiction over the action and decide the case in the course of the bankruptcy. Because permitting the case to go forward against Bettacchi and Burrill without the

5

Debtors would be tantamount to allowing the case to proceed against the Debtors, the Debtors seek to bring the claims against the individuals before this Court as well.

### Relief Requested

17.    The separate prosecution of the New Jersey action will inevitably threaten the orderly administration of the Grace estate.  Through the filing of this adversary complaint, defendants seek an order enjoining the responsible New Jersey officials—the DEP Commissioner and the Attorney General—from prosecuting the New Jersey action until such time that this Court assumes jurisdiction over the removed and transferred action, or if the action is not brought before this Court, until Grace emerges from bankruptcy.  Because the New Jersey action does not constitute a "police power" action under the Bankruptcy Code, the action should be stayed pursuant to the automatic stay of section 362.  In the alternative, even if the action is not subject to the automatic stay, the action "run[s] so contrary to the policy of the Bankruptcy Code that it should not be permitted," *In re Penn Terra*, 733 F.2d 267, 273 (3d Cir. 1984), but rather should be stayed pursuant to this Court's general equitable powers under section 105 of the Code.

### PLAINTIFFS' FIRST CLAIM FOR RELIEF

(Automatic Stay Declaratory Judgment)

18.    The Debtors repeat and reallege the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

19.    Debtors seek a declaratory judgment that the continued prosecution of the New Jersey action would violate the automatic stay.  Section 362(a) of the Bankruptcy Code

6

prohibits the commencement or continuation of any judicial proceeding against the debtor to

recover on claims that arose before the bankruptcy. The Code provides a limited exception from

the automatic stay for regulatory actions that are necessary for the State to vindicate its "interest

in the general safety and welfare." *United States v. Nicolet, Inc.*, 857 F.2d 202, 208 (3d Cir.

1988). But the New Jersey action is not such an action. Because the $800 million that New

Jersey seeks to recover from the defendants is not proportional to any safety or welfare interest

that the State may have in the action, the action should be recognized for what it is: a sizable

financial claim on the bankruptcy estate, which should be dealt with on the same terms that the

Bankruptcy Code provides for all other creditors.

20.    The New Jersey action should be declared to be subject to the automatic

stay. As the Third Circuit has recognized, "In addition to providing the debtor with a 'breathing

spell,' the [automatic] stay is intended to replace an unfair race to the courthouse with an orderly

liquidation procedure designed to treat all creditors equally." *Id.* at 207. Congress recognized

the same in enacting the automatic stay. *See* H. Rep. No. 95-989, at 340 2d Sess. (1978)

(emphasis added) ("The automatic stay is one of the fundamental debtor protections provided by

the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops *all*

collection efforts, *all* harassment, and *all* foreclosure actions.")

21.    The New Jersey action is based on the submission of the report six years

prior to the bankruptcy, and the action clearly arose prior to the filing of the bankruptcy petition.

The action therefore should be subject to the automatic stay.

22.    The New Jersey action does not fall within the exception that the Code

provides for certain government regulatory actions. The Bankruptcy Code exempts from the

7

automatic stay governmental actions seeking to protect the public safety and welfare, provided that those actions do not directly target the property under the jurisdiction of the bankruptcy court. *See* 11 U.S.C. § 362(b)(4) (emphasis added) (The automatic stay shall not apply to actions "by a governmental unit to enforce such government unit's police or regulatory power, including the enforcement of a judgment *other than a money judgment*.").

23.    The Courts of Appeals have recognized that not every state regulatory action merits an exception to the automatic stay. Rather, courts measure the action against the purpose of the exception, and "ask whether the governmental proceeding relates principally to the protection of the government's interest in the debtor's property, rather than to its public policy interest in the general safety and welfare. In the former situation, the action is not exempt from the stay." *Nicolet*, 857 F.2d at 209; *see also Chao*, 270 F.3d at 385-86 ("[C]ourts [must] focus on whether the governmental proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property, and not to matters of public safety."); *In re Cash Currency Exchange*, 762 F.2d 542, 555 (7th Cir. 1985) ("This exception has been narrowly construed to apply to the enforcement of state laws affecting health, welfare, morals and safety, but not to regulatory laws that directly conflict with the control of the *res* or property by the bankruptcy court."); *Missouri v. United States Bankruptcy Court*, 647 F.2d 768, 776 (8th Cir. 1981) ("Missouri's grain laws, although regulatory in nature, primarily relate to the protection of the pecuniary interest in the debtors' property and not to matters of public safety and health.").

24.    New Jersey's attempt to recover more than $800 million from Grace "principally" reflects the State's financial "interest in the debtors' property," rather than its

8

"interest in the general safety and welfare." In the environmental context, the Third Circuit has

recognized that a State may bring a police power action to require the debtor to clean up an

environmental hazard, *see Penn Terra Ltd. v. Dep't of Envtl. Resources*, 733 F.2d 267, 272 (3d

Cir. 1984), or to "fix damages" for the costs of the government's efforts to clean up an

environmental violation. *Nicolet*, 857 F.2d at 208. But the Third Circuit has never held that

where the government action is not proportional to any direct or ongoing public harm, and

indeed, where the size of the liability would severely disrupt the administration of the estate, the

State action may proceed outside the bankruptcy.

   25. The magnitude of the fines in the New Jersey action—and its lack of

proportion to any real harm to the public health and welfare—demonstrates that the action's

underlying purpose is to put money in the State's coffers, not to enforce any conceivable

regulatory interest. The New Jersey action does not seek to protect the "general safety and

welfare" by requiring the debtors to clean up the environment or repay the government for

damages caused. (Indeed, the remediation of the site is occurring under the auspices of the

federal government, not the State.) The New Jersey action does not even seek to deter future

harm by imposing civil penalties for environmental harm. Rather, the DEP claims an entitlement

to more than $800 million of the debtors' property based solely on Grace's failure to "correct" an

allegedly false report filed ten years ago. DEP has not identified, and cannot identify, any

regulatory interest that would require its case to proceed in state court rather than in federal

bankruptcy court. Because the extravagant size of the claimed liability bears no proportional

relationship to the State's interest in the "general safety or welfare," the DEP's interest extends

9

"principally" to the State's "interest in the debtors' property" and should therefore be declared subject to the automatic stay.

## PLAINTIFFS' SECOND CLAIM FOR RELIEF
### (Section 105 Injunction)

26.     The Debtors repeat and reallege the allegations contained in the preceding paragraphs of the Complaint as if fully set forth herein.

27.     Alternatively, even if the Court found that the New Jersey action is not subject to the automatic stay, Debtors seek a preliminary and permanent injunction staying the prosecution of the New Jersey action under the general equitable powers provided by section 105.

28.     Congress specifically recognized, in crafting the exception to the automatic stay, that "in some individual situations, the exercise of State power, *even for the protection of the public health and safety*, may run so contrary to the policy of the Bankruptcy Code that it should not be permitted." *In re Penn Terra*, 733 F.2d 267, 273 (3d Cir. 1984) (emphasis added). "The statute provides for such exigencies," because "[t]he bankruptcy court, in its discretion, may issue an appropriate injunction, *even if the automatic stay is not operative*." *Id. See also In re Baldwin-United Corp. Litig.*, 765 F.2d 343, 348 (2d Cir. 1985) ("Even if it should be determined that the automatic stay does not apply ... the Bankruptcy Court has authority under § 105 broader than the automatic stay provision of § 362 and may use its equitable powers to assure the orderly conduct of the reorganization proceedings.").

29.     Section 105(a) empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."

10

11 U.S.C. § 105(a).  In providing that the filing of a bankruptcy petition does not ***automatically***
stay some state regulatory actions, Congress specifically recognized that bankruptcy courts
retained the authority under Section 105 to stay such actions on a case-by-case basis, where a
stay is necessary to prevent "an impermissible dilution of federal bankruptcy policy." *Penn*
*Terra*, 733 F.2d at 273.

      30.     Congress provided that a bankruptcy court may grant a Section 105
injunction against a state regulatory action "under the usual rules for the issuance of injunctions."
*Id.* (quoting S. Rep. No. 95-989, at 51; H. Rep. No. 95-595 at 342).  In this Circuit, bankruptcy
courts consider (1) the likelihood of success, (2) the plaintiff's risk of irreparable harm, (3) any
irreparable harm to be suffered by the defendant, and (4) the public interest.  *See American Tel.*
*& Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994); *In re*
*Zenith Labs.*, 104 B.R. 659, 665 (D.N.J. 1989).  Debtors can demonstrate an entitlement to
equitable relief under all four factors here.

      31.     **Likelihood of Success.**  In this context, the likelihood of success does not
concern the merits of the New Jersey action, but rather "the likelihood of success on the merits
logically must refer to whether the debtor can show that enforcement of the state laws will
***unduly interfere*** with the bankruptcy adjudication." *In re Security Gas & Oil, Inc.*, 70 B.R. 786,
793 n.3 (Bankr. N.D. Cal. 1987) (emphasis added); *see also In re Hunt*, 93 B.R. 484, 493 (N.D.
Tex. 1988) (same); *In re Pub. Serv. Co. of N.H.*, 98 B.R. 120, 125 (Bankr. D.N.H. 1989).

      32.     Courts have recognized that government regulatory proceedings unduly
interfere with the bankruptcy "when those proceedings would threaten the debtor's estate, and
when the court has jurisdiction over a petition in bankruptcy ...." *NLRB v. Superior*

*Forwarding, Inc.*, 762 F.2d 695, 698 (8th Cir. 1985); *SEC v. First Financial Grp.*, 645 F.2d 429, 440 (5th Cir. 1981) ("To the extent that the exercise of this jurisdiction threatens the assets of the debtor's estate, the bankruptcy court may issue a stay of those proceedings.")

33.     The New Jersey action clearly "unduly interfere[s]" with the bankruptcy and "threaten[] the assets of the estate." The potential size of the New Jersey action is enormous: over $800 million. The debtors and the creditors simply could not agree on a reorganization plan that did not account for the threat of massive additional liability hovering outside the bankruptcy case. Moreover, the New Jersey action will interfere with the bankruptcy process by distracting the attention of Grace and the other officers who would have to divide their attention between the state civil litigation and the bankruptcy actions. *See Hunt*, 93 B.R. at 496; *see also NLRB*, 762 F.2d at 699.

34.     **Plaintiff's Risk of Irreparable Harm**. Debtors would suffer irreparable harm if they were forced to litigate the New Jersey action outside the confines of the bankruptcy process. Courts have recognized that debtors readily suffer irreparable harm when they are forced to participate in a substantial litigation at the same time as the bankruptcy proceeding. *E.g.*, *Hunt*, 93 B.R. at 493.

35.     Forcing Grace to litigate the New Jersey action outside this Court would involve "the incurring of needless litigation expenses" in a state court proceeding lacking the efficiencies of the Bankruptcy Court. *Id.*; *see NLRB*, 762 F.2d at 699 ("the costs incurred in defending" against outside litigation should not be allowed to "deplete the estate"); *Hunt*, 93 B.R. at 496 ("Litigation costs must nevertheless be considered as an element of harm to the

debtors' estates in addition to the harm from the diversion of the Debtors' and counsel's attention from the Chapter 11 cases.").

36.     Moreover, the vermiculite claims in the New Jersey action are related to both personal injury and property damage claims that will be adjudicated by this Court. It simply makes no sense to waste the estate's resources in duplicative litigation, particularly where it would create a risk of inconsistent adjudications.

37.     In addition to the irreparable loss from litigation costs, debtors can show irreparable harm because of "the harm to the creditors and estate from disrupting the court's ability to effectively manage the Debtors' reorganization efforts." *Id.* at 496. The estate clearly would suffer irreparable harm if it must participate in a substantial civil litigation outside of the bankruptcy process, because of the "additional demands in preparing pleadings, participating in discovery and attending hearings," which "would clearly disrupt the Debtors' efforts to effectuate plans of reorganization during the exclusivity period of 11 U.S.C. § 1121(b), which would benefit all of the creditors." *Id.* Furthermore, "a simultaneous proceeding would also disrupt the Court's timetables for resolving claims and waste preciously scarce judicial resources." *Id.*

38.     **Defendants' Risk of Irreparable Harm**. DEP cannot demonstrate any harm either from delaying its action or from having the action resolved, like claims of other creditors, in the bankruptcy court. Defendants have already waited almost ten years to bring the action. Moreover, if this Court assumes jurisdiction over the removed New Jersey action, then defendants indeed will suffer little prejudice because they will be able to have their claim heard promptly within the bankruptcy forum.

39.    **The Public Interest**. An injunction will serve the broader public interest because it will prevent the state action from interfering with the strong federal policies underlying the bankruptcy process. As the Court held in *Hunt*, "Chapter 11 expresses the public interest of preserving the going concern values of businesses, protecting jobs, ensuring the equal treatment of and payment of creditors, and if possible saving something for the equity holders." *Hunt*, 93 B.R. at 497. Federal law vests the Bankruptcy Court with the authority to make sure that the claims of all creditors are respected, and an injunction with further these policies by ensuring that the state action does not interfere with the bankruptcy process.

40.    Because New Jersey's "exercise of State power" in bringing an $800 million lawsuit in state court "run[s] so contrary to the policy of the Bankruptcy Code that it should not be permitted," *Penn Terra*, 733 F.2d at 273, an injunction pursuant to Section 105 should issue.

## PLAINTIFFS' THIRD CLAIM FOR RELIEF
(Section 105 Injunction)

41.    The Debtors repeat and reallege the allegations contained in the preceding paragraphs of the Complaint as if fully set forth herein.

42.    The New Jersey actions should also be stayed against the individual defendants because the claims against them cannot be separated from claims against the State. The DEP has filed suit based upon these individuals' conduct as employees of Grace, and Grace's Charter requires the company to indemnify those individuals for any judgments against them to the fullest extent of the law. No matter whether this Court stays the claims against Grace pursuant to Section 362(a) or Section 105, the Court likewise has the authority to protect the

14

estate by staying claims against related parties where, as here, those claims are indistinguishable from claims against the estate.

43.     New Jersey's lawsuit against Grace officers Bettacchi and Burrill to recover civil penalties for alleged submissions of false statements is a transparent attempt to circumvent the protections of the automatic stay. Grace will be irreparably harmed if the New Jersey action against the officers is allowed to continue. Accordingly, the protections of section 362(a) of the Bankruptcy Code extend to the New Jersey action against Bettacchi and Burrill. *E.g.*, *In re American Film Technologies, Inc.*, 175 B.R. 847, 855 (Bankr. D. Del. 1994); *McCartney v. Integra Nat'l Bank North*, 106 F.3d 506 (3d Cir. 1997).

44.     The Third Circuit has held that an action against non-debtors should be stayed when the debtor can demonstrate "unusual circumstances" as set out by the Fourth Circuit's decision in *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986). *See Belcufine v. Aloe*, 112 F.3d 633, 637 (3d Cir. 1997). The *Robins* court defined "unusual circumstances" as "when there is such identity between the debtor and the third party defendant that the debtor may be said to be the real party defendant and that a judgment against the third party defendant will in effect be a judgment or finding against the debtor." 788 F.2d at 999. According to the court, "[a]n illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case." *Id.*

45.     As in *In re Lomas Fin. Corp.*, 117 B.R. 64, 68 (S.D.N.Y. 1990), the action against Grace's employees should be enjoined. There, Northern Trust filed a complaint against two officers of debtor Lomas, alleging that the officers made negligent or fraudulent

15

misrepresentations regarding Lomas's financial condition. *Id.* at 65. Based on these alleged

misrepresentations, Northern Trust advanced $20 million to Lomas, which was subsequently

unable to repay the loan. *Id.* The court held that the action against the officers should be

enjoined because the debtor's corporate charter contained "an indemnification clause, obligating

Lomas to indemnify its officers for all legal claims arising out of acts performed in their capacity

as Lomas officers," and because it was "undisputed that [the officers'] alleged fraudulent

misrepresentations were in fact made in their capacity as Lomas officers," the facts of the case

satisfied the "unusual circumstances" standard set forth in *Robins*. 117 B.R. at 68. On that basis,

the court held that "the Bankruptcy Court appropriately stayed the action against a non-debtor

third party pursuant to § 362(a)(1) of the Code." *Id.*

46.     Similarly, in the present case, Grace's Bylaws provide for indemnification

of claims against its officers and directors. New Jersey does not claim that either Mr. Bettacchi

or Mr. Burrill undertook any of the alleged acts of misrepresentation in any other capacity than

as an officer of Grace. Should a judgment for damages ever be entered against either officer, he

would have a claim for indemnification against the Debtors to the fullest extent of the law.

Accordingly, there is a substantial identity of interest between Grace and its employees, and the

stay against Grace should be extended to the action against its co-defendants.

47.     In addition, it is plain that Grace is the real party defendant. For example,

the New Jersey action seeks to recover from Mr. Bettacchi and Mr. Burrill the exact same civil

penalties it seeks from Grace under precisely the same legal theories asserted against the

Debtors. Indeed, the complaint draws no distinction among the conduct or the liability of the

defendants. Similarly, because any judgment against Grace's employees might be imputed

16

against the Debtors in subsequent litigation, Grace has a direct interest in the outcome of New Jersey's action against its individual officers. These facts together support a finding of "unusual circumstances" such that the New Jersey action against Bettacchi and Burrill is in fact an action against the Debtors.

48.     Because the DEP's complaint demonstrates beyond a doubt that the actions against Grace's employees are inextricably linked to those of Grace, continued litigation of the New Jersey action will cause irreparable harm to Grace. The New Jersey action against Mr. Bettachi and Burrill should likewise be enjoined under Section 105.

WHEREFORE, the Debtors respectfully request relief as follows:

1) a declaratory judgment that the continued prosecution of the New Jersey action would violate Section 362(a) of the Bankruptcy Code because the New Jersey action is not a "police power" action under Section 362(b)(2) of the Code;

2) an injunction pursuant to Section 105(a) of the Bankruptcy Code and 28 U.S.C. § 1651 enjoining and prohibiting the Defendants from prosecuting the New Jersey action or commencing future actions against Grace until this Court assumes jurisdiction over the New Jersey action or until the completion of the bankruptcy process; and

17

3) an injunction pursuant to Section 105(a) of the Bankruptcy Code and 28 U.S.C. §
1651 enjoining and prohibiting the Defendants from prosecuting the New Jersey
action or commencing future actions against Mr. Bettachi and Mr. Burrill, on the
same terms as the injunction against Grace.

Respectfully Submitted:

Dated: September 19, 2005

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Steven A. Engel
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG,
JONES & WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
James E. O'Neill. (Bar No. 4042)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705
(Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400

Counsel for Debtors and Debtors in
Possession

September 19, 2005

18