# Exhibit 1

PETER C. HARVEY
ATTORNEY GENERAL OF NEW JERSEY
Richard J. Hughes Justice Complex
25 Market Street
PO Box 093
Trenton, NJ 08625-0093
Attorney for Plaintiff

By: John F. Dickinson, Jr.
Deputy Attorney General
(609) 984-4654

|  |  |
|---|---|
| | SUPERIOR COURT OF NEW JERSEY |
| | LAW DIVISION - MERCER COUNTY |
| | DOCKET NO. |

| | |
|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, | Civil Action |
| Plaintiff, | COMPLAINT |
| v. | |
| W.R. GRACE & CO., INC., a corporation of the State of Delaware; W.R. GRACE & CO.-CONN., a corporation of the State of Connecticut; GRACE-CONN. SUCCESSOR (a fictitious entity); JAY H. BURRILL; and ROBERT J. BETTACCHI, | |
| Defendants. | |

Plaintiff New Jersey Department of Environmental Protection ("DEP")("the Plaintiff"), having its principal offices at 401 East State Street in the City of Trenton, County of Mercer, State of New Jersey, by way of Complaint against the above-named defendants (collectively, "the Defendants"), says:

## STATEMENT OF THE CASE

1.    The Plaintiff brings this civil action pursuant to the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 to 23.24 ("the Spill Act"), and the Industrial Site Recovery Act, N.J.S.A. 13: 1K-6 et seq. ("ISRA"), for civil penalties for misrepresentations and false statements made in a Preliminary Assessment/Site Investigation ("PA/SI") Report and Negative Declaration submitted by the Defendants to the DEP in 1995 pursuant to ISRA.

## THE PARTIES

2.    Plaintiff is a principal department within the Executive Branch of the State Government vested with the authority to conserve natural resources, protect the environment, prevent pollution, and protect the public health and safety. N.J.S.A. 13:1D-9.

3.    Defendant, W. R. Grace & Co.-Conn ("Grace-Conn.") is a corporation of the State of Connecticut. Grace-Conn. and its predecessor, W.R. Grace and Co., Inc. ("original W.R. Grace"), formerly a corporation of the State of Connecticut, operated a vermiculite processing plant at 35 Industrial Drive in Hamilton Township, Mercer County, New Jersey ("Hamilton Plant") during the times alleged in this complaint. Grace-Conn. and the original W.R.

- 2 -

Grace hereinafter collectively will be referred to as "Grace" unless otherwise referenced.

4.    Defendant Grace-Conn. Successor, a fictitious entity is the successor in interest to Grace-Conn.

5.    Defendant W.R. Grace & Co., Inc. ("W.R. Grace and Co.") a corporation with offices in Columbia, Maryland, is the parent corporation of both Grace-Conn. and Grace-Conn. Successor. At all times referred to in this Complaint, Defendant W.R. Grace & Co. or its predecessor or predecessors in interest controlled the operations of Defendants Grace-Conn. and Grace-Conn. Successor.

6.    Defendant Jay H. Burrill is an individual whose dwelling or usual place of abode is unknown. At the time the PA/SI Report and the Negative Declaration described below were submitted to the DEP, Defendant Burrill was an Environmental Coordinator for Grace-Conn. In that capacity, Defendant Burrill oversaw Grace-Conn's environmental compliance activities at the Hamilton Plant.

7.    Defendant Robert J. Bettacchi is an individual whose dwelling or usual place of abode is unknown. At the time the PA/SI Report and Negative Declaration described below were submitted to the DEP, Defendant Bettacchi was President of Grace Construction Products, a division of Grace-Conn., and Vice President of Defendant Grace-Conn. Defendant Bettacchi is a former Senior Vice President of the Defendant W.R. Grace & Co., and a former President of Grace Performance Chemicals, a unit of Defendant W.R. Grace &

- 3 -

Co.   In his capacity as President of Grace Construction Products and Vice President of Grace-Conn., Defendant Bettachi was responsible for the overall operation of the Hamilton Plant.

## ALLEGATIONS

8.    The Hamilton Plant was situated on a parcel approximately 8.4 acres in size, comprising two lots identified on the Tax Map of Hamilton Township, Mercer County, New Jersey as Block 1581, Lots 19.01 and 19.02 (the "Site"). Lot 19.01, is 4.24 acres in size and is owned by MLB Properties, L.L.C., and Block 1581, Lot 19.02, is 4.17 acres in size and is owned by National Railroad Passenger Corporation, Inc. ("Amtrak").

9.    The Site formerly was identified as Block 46, Lot 3 on the Tax Map of Hamilton Township, Mercer County, New Jersey. The Hamilton Plant has had several addresses, including 10 Industrial Drive, 15 Industrial Drive, 31 Industrial Drive, 35 Industrial Drive and 336 Whitehead Road.

10.    Amtrak Corporation ("Amtrak") and its predecessors-in-interest, the Pennsylvania Railroad ("PRR"), and Penn Central Transportation Corporation ("Penn Central"), owned the Site from approximately 1948 until approximately 1999 when Block 46, Lot 3 was subdivided and re-designated as Block 1581, Lot 19.01 and Block 1581, Lot 19.02. Amtrak still owns Block 1581, Lot 19.02.

11.    From 1950 to 1963, the Zonolite Corporation ("Zonolite") operated a plant at the Site under a lease with PRR. Zonolite

- 4 -

manufactured vermiculite-based products such as structure fireproofing materials, thermal insulation for masonry products, lightweight concrete aggregate, and horticultural vermiculite.

12. In 1963, Grace's predecessor, Original W.R. Grace, purchased the Zonolite Corporation and Grace began to process vermiculite concentrate at the Site under a lease with PRR and later Penn Central. Grace manufactured essentially the same vermiculite-based products at the Site as did Zonolite.

13. The raw vermiculite concentrate processed at the Site primarily came from Grace's mine in Libby, Montana ("Libby mine"). Some concentrate from Grace's South Carolina mine also was used.

14. The raw vermiculite ore was milled into a substance known as "vermiculite concentrate" at the Libby mine. The vermiculite concentrate contained tremolite asbestos in varying concentrations.

15. Grace's operations at the Site included, but were not limited to, the expansion of raw vermiculite concentrate. The expansion of the raw concentrate was accomplished by heating the raw concentrate in a kiln at a temperature of 2,000 degrees, which expanded the material 10 or 15 times its original size.

16. The vermiculite expansion process conducted at the Site produced waste that contained high concentrations of amphibole asbestos. Two primary types of waste were produced at the Site: "Stoner Rock," which was raw vermiculite ore that did not expand

- 5 -

and baghouse fines, which were collected as a dust particle in the furnace vent system.

17.  Some of the waste referenced in paragraph 16 was disposed of at the Site.

18.  On or about May 13, 1980, Grace submitted a "Selected Substance Report" to the Plaintiff. In section 15 of that report, Grace responded to a request for information for its on-site and off-site plant waste disposal practices for the years 1930-1977. In its response, which was certified as "true, complete, and correct," by Frederick W. Eaton, Grace's then Environmental Coordinator, Grace advised that Grace had disposed of asbestos-containing wastes, but that the location of the disposal sites were unknown.  Grace further advised that asbestos-containing waste was in the form of "mixed floor sweeping waste," and that prior to 1972, this facility manufactured a fire proofing material containing 13% (by weight) commercial asbestos."

19.  In the Community Right to Know Survey for 1989 submitted by Grace to Plaintiff for the Site pursuant to the Emergency Planning and Community Right to Know Act ("EPCRA"), 42 U.S.C.A. § 11001 et seq., and the New Jersey Community Right to Know Act ("NJCRA"), N.J.S.A. 34:5A-1 et seq., among other things, Grace advised that it stored "Asbestos-Process Waste Vermiculite," at the Site.  Grace inserted Chemical Abstract Services ("CAS") number 1332-21-4, and Department of Transportation ("DOT") number of 2590.

- 6 -

in the entry for the waste.   Those numbers are used to designate asbestos materials.

20.   In its 1989 Right to Know Survey referenced in paragraph 19 above, Grace inserted "percent code" number 52, which indicates that the waste contained from 1 to 9% asbestos and "hazard codes" of 66 and 67, which respectively indicate that the waste posed a "delayed(chronic) health hazard," and an "immediate (acute) health hazard."    Grace also advised that "process waste vermiculite (Libby)" and "process waste vermiculite (SC)" were stored at the Site.   The entry for the Libby waste indicates that waste was a mixture and had the "hazard codes" 66 and 67.   The entry for the "SC" waste also indicated that it was a mixture and that it had a "hazard code" of 66.   The 1989 Survey was certified as "true, accurate, and complete" by Tim W. Carrothers, Plant Manager.

21.   In the Community Right to Know Survey for 1991 submitted by Grace to plaintiff for the Site pursuant to EPCRA and NJRCA, among other things, Grace advised that it stored "Asbestos-Process Waste Vermiculite" at the site.   Grace inserted CAS number 1332-21-4, DOT number 2590, and Substance Number 0164 in the entry for the waste.   Those numbers are used to designate asbestos materials.

22.   In its 1991 Right to Know Survey, Grace inserted "percent code" number 52, which indicated that the waste contained from 1 to 9% asbestos, and "hazard codes" of 66 and 67, which respectively indicate that the waste posed a "delayed(chronic) health hazard,"

- 7 -

and an "immediate (acute) health hazard." Grace also advised that "process waste vermiculite (SC)" was stored at the Site. The entry indicated that the waste was a mixture and had a "hazard code" of 66, which indicates that the waste posed a "delayed (chronic) health hazard." The 1991 Survey was certified as "true, accurate, and complete" by John S. Kozarovich, Plant Manager.

23.    In the Community Right to Know Survey for 1992 and 1993 submitted by Grace to Plaintiff for the Site pursuant to the EPCRA and NJCRA, among other things, Grace advised that "process waste vermiculite (SC)" was stored at the Site. The entry for that waste indicated that the waste was a mixture and had the "hazard codes" 66 and 67, which respectively indicate that the waste posed a "delayed (chronic) health hazard," and an "immediate (acute) health hazard." The Surveys were certified as "true, accurate, and complete by John S. Kozarovich, Plant Manager.

24.    Grace ceased operations at the Site in January 1994.

25.    Under a cover letter from its attorneys Pitney, Hardin, Kipp, and Szuch dated November 9, 1994, pursuant to ISRA, Grace-Conn submitted a General Information Notice ("GIN") to the DEP. In that letter, Grace-Conn advised that operations at the Site had ceased in January 1994, triggering ISRA, and that Grace-Conn expected to make an ISRA filing in June 1995 when its lease expired. Grace-Conn advised that its had contracted with an

- 8 -

environmental consultant, ERM, Inc., to perform a preliminary assessment for the Site.

26.   In October 2000, the United States Environmental Protection Agency ("USEPA") collected soil samples at the Site and in the surrounding areas. Those samples were found to contain tremolite asbestos in concentrations of up to 2.9% and chrysotile asbestos in concentrations of up to 3.9%.

27.   Follow-up sampling conducted by USEPA in March 2001 on the plant property and on an adjacent parcel owned by Amtrak known as the "Millham Yard" revealed the presence of tremolite asbestos in the soil in concentrations of up to 4.5% and chrysotile asbestos in concentrations of up to 2.7%. Sampling by USEPA in August 2001 detected the presence of tremolite/actinolite and/or chrysotile asbestos in the soil in concentrations as high as 40%.

28.   In 2003, Amtrak and American Premier Underwriters, Inc. ("APU"), as a successor to Penn Central, executed an Administrative Order on Consent with the USEPA wherein they agreed to conduct the remediation of the Site under the oversight of the USEPA.

29.   In 2003-2004, under the supervision of the USEPA, Amtrak and APU excavated and disposed of 9,000 tons of asbestos contaminated soil from the Site and environs.

30.   In the summer of 2005, it is anticipated that Amtrak and APU will excavate an additional 6,000 tons of contaminated soil under the supervision of the USEPA.

- 9 -

## SPECIFIC ALLEGATIONS-PA/SI REPORT

31.   Under cover letter from its attorney dated June 5, 1995, Grace-Conn submitted a PA/SI Report dated May 19, 1995. The report, which was prepared by Grace-Conn's environmental consultant, ERM, Inc., included a Negative Declaration for the Site.   Both the PA/SI Report and the Negative Declaration were certified as true and correct by Defendants Burrill and Bettacchi on June 2, 1995.

32.   In the PA/SI Report, Grace-Conn identified several Areas of Concern ("AOC") at the Site where waste from Grace-Conn's on-site vermiculite processing activities could have come to be located.   Those AOCs were identified in the report as: "Rail Spurs or Sidings"; "Rail/truck loading and unloading areas"; "Storage pads and areas including drum and/or waste storage" or "dumpsters"; "Areas of stressed vegetation"; "Discolored areas or spill areas" and "Loading or transfer areas."

33.   In its PA/SI report, Grace-Conn indicated that prior to 1970, it formulated a fire protection product known as "Monokote" at the site that contained chrysotile asbestos.   The material that Grace-Conn used to manufacture the "Monokote" contained 13% commercial asbestos by weight.

34.   In the PA/SI Report, Grace-Conn advised that it did not sample the "silo"/"storage pads and areas including drum and/or waste storage" AOCs because: "no known spills or discharges from

- 10 -

the silos have occurred; the silos were located on an impervious concrete pad; trace amounts of asbestos were present in only a percentage of the raw material used on site prior to 1993; and the raw [vermiculite] material was treated to prevent any releases of asbestos."

35.  In the PA/SI Report, Grace-Conn advised that it did not sample the "rail spur or siding"/"rail truck loading and unloading"/"loading or transfer" AOCs because: "Limited amounts of vermiculite are present along the tracks; however, vermiculite is not considered to be a hazardous substance; trace amounts of asbestos were present in only a percentage of the raw material used on site prior to 1993; and the raw [vermiculite] material was treated to prevent any releases of asbestos." Additionally, as to the "truck loading/unloading area" and the "loading or transfer" AOCs, Grace-Conn advised that it did not sample those areas "[b]ecause no known spills or discharges have occurred in the truck loading area and this area is paved."

36.  In the PA/SI report, Grace-Conn advised that the dumpsters were the repository for dust generated and collected during the vermiculite expansion process conducted at the site. Grace-Conn further advised in the PA/SI that the dumpster areas were not sampled "[b]ecause no known environmental problems have been associated with the dumpsters."

37. In the PA/SI Report, Grace-Conn advised that it did not sample the "stressed vegetation"/"discolored areas or spill" AOCs to test for asbestos contamination because: "limited amounts of vermiculite are present along the tracks; however, vermiculite is not considered to be a hazardous substance; trace amounts of asbestos were present in only a percentage of the raw material used on site prior to 1993; and the raw [vermiculite] material was treated to prevent any releases of asbestos." Additionally, Grace-Conn advised that a trailer storage area located within these AOCs had dark-colored areas on the ground, but that it did not sample those areas because "these areas are probably due to normal trailer operations."

38. Grace-Conn sought to justify its failure to sample the AOC's identified in the PA/SI Report on seven separate occasions in the report on the basis that "the vermiculite present on-site cannot be viewed as an asbestos-containing material because of the following: (1) the asbestos-containing Montana vermiculite concentrate comprised only a percentage of the total concentrate stored on-site; use of the Montana vermiculite was less than 10% from 1991 to 1992 and was discontinued in 1993; and (3) less than 1% of asbestos would be present in the vermiculite concentrate."

39. In each of the seven instances the purported justification referenced in paragraph 38 above was based on the assertion that the vermiculite concentrate used at the site came

from Montana and South Carolina mines, and that the South Carolina
vermiculite concentrate contained no asbestos and had a small mesh
size, while the Montana vermiculite concentrates contained only
trace amounts (0.3-1% by weight) of tremolite asbestos. Grace-Conn
also repeatedly asserted that the Montana vermiculite concentrate
had been treated with a vegetable oil dust suppressant that was
said to significantly reduced the potential for the transmission of
airborne asbestos fibers.

40. In the site investigation portion of the PA/SI report,
Grace-Conn advised that:

> a limited number of areas of concern were identified and
> inspected in accordance with the technical requirements
> (N.J.A.C. 7:26E). These areas were chosen based upon
> visual observations and in compliance with the New Jersey
> Department of Environmental Protection (NJDEP) technical
> requirements.

As reported in the PA/SI, the areas selected for inspection were
the product elevator pits, the water line access pit, the sewage
sump, and the driveway drain. None of the areas of concern Grace-
Conn identified in the PA/SI report as potentially being the
repository for vermiculite processing waste were inspected by
Grace-Conn.

41. Defendant Jay H. Burrill certified the PA/SI Report as
follows:

> I certify under penalty of law that the information
> provided in this document is true, accurate, and
> complete. I am aware that there are significant civil
> penalties for knowingly submitting false, inaccurate, or
> incomplete information, and that I am committing a crime

- 13 -

of the fourth degree if I make a written false statement
which I do not believe to be true.  I am also aware that
if I knowingly direct or authorize the violation of any
statute, I am personally liable for the penalties.

42.  Defendant Robert J. Bettacchi certified the PA/SI Report
as follows:

I certify under penalty of law that I have personally
examined and am familiar with the information submitted
herein and all attached documents, and that, based on my
inquiry of those individuals immediately responsible for
obtaining the information, I believe that the submitted
information is true, accurate and complete.  I am aware
that there are significant civil penalties for knowingly
submitting false, inaccurate, or incomplete information,
and that I am committing a crime of the fourth degree if
I make a written false statement which I do not believe
to be true.  I am also aware that if I knowingly direct
or authorize the violation of any statute, I am
personally liable for the penalties.

43.  In the Negative Declaration submitted with the PA/SI
"Report", Defendant Jay H. Burrill stated that he had "specific
knowledge of the operations" of Grace-Conn's Hamilton Plant and
that "any discharge(s) of hazardous substances or hazardous wastes
on or from the industrial establishment have been remediated in
accordance with N.J.A.C. 7:26E (Technical Requirements for Site
Remediation) and approved by the Department."

44.  Defendant  Jay  H.  Burrill  certified  the  Negative
Declaration as follows:

I certify under penalty of law that the information
provided in this document is true, accurate, and
complete.  I am aware that there are significant civil
penalties for knowingly submitting false, inaccurate, or
incomplete information, and that I am committing a crime
of the fourth degree if I make a written false statement
which I do not believe to be true.  I am also aware that

- 14 -

if I knowingly direct or authorize the violation of any statute, I am personally liable for the penalties.

45. Defendant Robert J. Bettacchi certified the Negative Declaration as follows:

I certify under penalty of law that I have personally examined and am familiar with the information submitted herein and all attached documents, and that, based on my inquiry of those individuals immediately responsible for obtaining the information, I believe that the submitted information is true, accurate and complete. I am aware that there are significant civil penalties for knowingly submitting false, inaccurate, or incomplete information, and that I am committing a crime of the fourth degree if I make a written false statement which I do not believe to be true. I am also aware that if I knowingly direct or authorize the violation of any statute, I am personally liable for the penalties.

46. As a result of the representations made by Defendants, the DEP issued No Further Action Letters for the Site dated August 21, 1995 and November 15, 1995.

47. On or about May 3, 2005, the DEP rescinded the No Further Action Letters.

### FIRST COUNT

#### ISRA

48. Plaintiff repeats each allegation of paragraph nos. 1 through 47 above as though fully set forth in its entirety herein.

49. Asbestos is a "hazardous substance" within the meaning of N.J.S.A. 13:1K-8.

50. The Hamilton Plant operated by Grace-Conn at the Site was an "industrial establishment" within the meaning of N.J.S.A. 13:1K-8 when Grace-Conn ceased operations in 1994.

- 15 -

51.   Pursuant to N.J.S.A. 13:1K-13b, Plaintiff is authorized
to bring an action in Superior Court for a civil penalty against
any person who knowingly gives or causes to be given any false
information or who fails to comply with ISRA, and against any
officer or management official of an "industrial establishment" who
knowingly directs or authorizes the violation of ISRA. Any such
person, officer, or management official shall be personally liable
for a penalty of not more that $25,000 for each offense. With each
day the violation continues constituting an additional and separate
offense.

52.   Defendant Grace-Conn. shipped several hundred thousand
tons of vermiculite concentrate from the Libby mine to the Hamilton
Plant from 1957 to 1991.  The vermiculite concentrate received at
the Hamilton Plant was milled from vermiculite ore at the Libby
mine facilities.

53.   During the relevant periods referenced in this Complaint,
Defendants knew that the vermiculite ore mined from the Libby mine
contained tremolite asbestos and that the milling process conducted
at the mine caused the release of tremolite asbestos at the mine
and the surrounding community.

54.   During the relevant times referenced in this Complaint,
Defendants knew that the asbestos fibers released at the Libby mine
contaminated the soil at the mine and the surrounding community and

- 16 -

that it caused a variety of asbestos-related diseases to mine employees and the residents of the surrounding community

55.   During the relevant times referenced in this Complaint, Defendants knew that dust containing tremolite asbestos was released from vermiculite concentrate during the expansion or exfoliation process conducted at vermiculite processing plants throughout the United States, including Hamilton Plant.

56.   Defendant Grace-Conn. shipped several hundred thousand tons of vermiculite concentrate from the Libby mine to the O.M. Scott plant in Marysville, Ohio ("Scott Plant") between approximately 1948 and 1980.

57.   During the relevant times referenced in this Complaint, Defendants knew that tremolite asbestos-containing dust released at the Scott Plant and fibers released from the tremolite asbestos-contaminated vermiculite concentrate processed at the Scott Plant caused "bloody pleural effusions," i.e, the build-up of bloody fluids between the pleural lining and the lung, in employees of the O.M. Scott plant.

58.   During the relevant times referenced in this Complaint, Defendants knew that tremolite asbestos fibers were released from the handling of vermiculite-based commercial and consumer products, and that tremolite asbestos fibers had contaminated the Hamilton Plant and the soil at the Site.

- 17 -

59.   On or about June 5, 1995, Defendant Grace-Conn knowingly provided or caused to be provided false or misleading information in the PA/SI Report and submitted to the DEP in that the PA/SI report failed to note that the dust released at the Site during the expansion of the vermiculite concentrate and emissions from other manufacturing, handling, and processing operations conducted at the Site were known to contain concentrations of asbestos fibers and that asbestos was discharged to the soil at the Site, and in that the PA/SI report failed to make reference to the reports referenced to in paragraphs 19-23 above, thereby misleading DEP's ISRA staff.

60.   On or about June 5, 1995, Defendant Grace-Conn knowingly provided or caused to be provided false or misleading information in the Negative Declaration submitted to the DEP in that the Negative Declaration represented that any discharge of a hazardous substance or hazardous waste at the Site had been remediated in accordance with the plaintiff's Technical Requirements for Site Remediation, N.J.A.C. 7:26E when the discharges of asbestos fibers at the Site had not been so remediated.

61.   On or about June 5, 1995, at which time Defendant Burrill was a management official of Defendant Grace-Conn, Defendant Burrill knowingly provided or caused to be provided false or misleading information in the PA/SI Report in that the PA/SI report failed to note that the dust released at the Site during the expansion of the vermiculite concentrate and emissions from other

- 18 -

manufacturing, handling, and processing operations conducted at the Site were known to contain concentrations of asbestos fibers and that asbestos was discharged to the soil, and in that, the PA/SI report failed to make reference to the reports referred to in paragraphs 19-23 above, thereby misleading DEP's ISRA staff. As such, Defendant Burrill also knowingly directed or authorized a violation of ISRA.

62. On or about June 5, 1995, at which time Defendant Burrill was a management official of Defendant Grace-Conn, Defendant Burrill knowingly provided or caused to be provided false or misleading information in the Negative Declaration submitted to the DEP in that the Negative Declaration represented that any discharge of a hazardous substance or hazardous waste at the Site had been remediated in accordance with the plaintiff's Technical Requirements for Site Remediation, N.J.A.C. 7:26E when the discharge of asbestos fibers at the Site had not been so remediated. As such, Defendant Burrill also knowingly directed or authorized a violation of ISRA.

63. On or about June 5, 1995, at which time Defendant Bettacchi was a management official of Defendant Grace-Conn, Defendant Bettacchi knowingly provided or caused to be provided false or misleading information in the PA/SI Report in that in that the PA/SI report failed to note that the dust released at the Site during the expansion of the vermiculite concentrate and emissions

- 19 -

from other manufacturing, handling, and processing operations conducted at the Site were known to contain concentrations of asbestos fibers and that asbestos was discharged to the soil; and in that, the PA/SI report failed to make reference to the reports referred to in paragraphs 19-23 above, thereby misleading DEP and ISRA staff. As such, Defendant Bettacchi also knowingly directed or authorized a violation of ISRA.

64. On or about June 5, 1995, at which time Defendant Bettacchi was a management official of Defendant Grace Conn., Defendant Bettacchi knowingly provided or caused to be provided false or misleading information in the Negative Declaration submitted to the DEP in that the Negative Declaration represented that any discharge of a hazardous substance or hazardous waste at the Site had been remediated in accordance with the plaintiff's Technical Requirements for Site Remediation, N.J.A.C. 7:26B when the discharge of asbestos fibers at the Site had not been so remediated. As such, Defendant Bettacchi also knowingly directed or authorized a violation of ISRA.

65. Since June 5, 1995, each of the Defendants has continued to withhold the correct information that should have been included in the PA/SI and the Negative Declaration and has failed to correct the misinformation provided in the PA/SI and the Negative Declaration.

- 20 -

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court:

a. Find each of the Defendants in violation of ISRA;

b. Assess a civil penalty of $25,000 against each of the Defendants for the submission of the false information in the PA/SI Report and Negative Declaration and for each day Defendants failed to correct the false information set forth in the PA/SI report and the Negative Declaration;

c. Assess a civil penalty of $25,000 against Defendant Burrill for knowingly authorizing a violation of ISRA and for each day that he failed to cease the violation;

d. Assess a civil penalty of $25,000 against Defendant Bettacchi for knowingly authorizing a violation of ISRA and for each day that he failed to cease the violation;

e. Award the Plaintiff its costs and fees in this action; and

f. Award the Plaintiff such other relief as this Court deems appropriate.

### Second Count

### Spill Act

66.  Plaintiff repeats each allegation of paragraph nos. 1 through 65 above as though fully set forth in its entirety herein.

67.  Each Defendant is a "person" within the meaning of N.J.S.A. 58:10-23.11b.

- 21 -

68. Asbestos is a "hazardous substance" within the meaning of N.J.S.A. 58:10-23.11b.

69. Pursuant to N.J.S.A. 58:10-23.11u.a(1)(c), Plaintiff is authorized to bring an action in the Superior Court for a civil penalty against any person who knowingly has given false testimony, documents, or information to the Plaintiff. Any such person shall be subject to a civil penalty not to exceed $50,000, and each day of shall constitute an additional, separate, and distinct violation.

70. Each of the Defendants knowingly provided or caused to be provided false or misleading information in the PA/SI Report and Negative Declaration submitted to the NJDEP.

71. Since June 5, 1995, each of the Defendants has knowingly failed to correct the false or misleading information in the PA/SI Report and Negative Declaration submitted to the NJDEP.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

a. Find the Defendants in violation of the Spill Act;

b. Assess against each of the Defendants a civil penalty of $50,000 for the submission of the false information in the PA/SI Report and the Negative Declaration and for each day Defendants failed to correct the false information set forth in the PA/SI report and the Negative Declaration;

- 22 -

c. Award the Plaintiff its costs and fees in this action,

and

d. Award the Plaintiff such other relief as this Court

deems appropriate.

PETER C. HARVEY
ATTORNEY GENERAL OF NEW JERSEY
Attorney for Plaintiff



By: _____
John F. Dickinson, Jr.
Deputy Attorney General

Dated: June 1, 2005

DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, the Court is advised that John F. Dickinson, Jr., Deputy Attorney General, is hereby designated as trial counsel for the Plaintiff in this action.

<u>CERTIFICATION REGARDING OTHER PROCEEDINGS AND PARTIES</u>

Undersigned counsel hereby certifies, in accordance with R. 4:5-1(b)(2), that the matter in controversy in this action is not the subject of any other pending or contemplated action in any court or arbitration proceeding known to the Plaintiff at this time, nor is any non-party known to the Plaintiff at this time who should be joined in this action pursuant to R. 4:28, or who is subject to joinder pursuant to R. 4:29-1. If, however, any such non-party later becomes known to the Plaintiff, an amended certification shall be filed and served on all other parties and with this Court in accordance with R. 4:5-1(b)(2).

PETER C. HARVEY
ATTORNEY GENERAL OF NEW JERSEY
Attorney for Plaintiff

By: _____
John F. Dickinson, Jr.
Deputy Attorney General

Dated: June 1, 2005

Grace complaint.wpd

- 24 -

# CIVIL CASE INFORMATION STATEMENT
## (CIS)

Use for initial pleadings (not motions) under R. 4:5-1.

Pleadings will be rejected for filing under R. 1:5-6(c) if information above the black bar is not completed or if attorney's signature is not affixed.

| FOR USE BY CLERK'S OFFICE ONLY |
|---|
| PAYMENT TYPE: CK |
| CHG/CK. NO.: |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |

| ATTORNEY/PRO SE NAME: John F. Dickinson, Jr., Deputy Attorney General | TELEPHONE NO.: 609-984-4692 | COUNTY OF VENUE: Mercer |
|---|---|---|

| FIRM NAME (If Applicable): NEW JERSEY ATTORNEY GENERAL | DOCKET NUMBER (When Available): |
|---|---|

| OFFICE ADDRESS: Richard J. Hughes Justice Complex 25 Market Street P.O. Box 093 Trenton, NJ 08625-0093 | DOCUMENT TYPE: Complaint |
|---|---|
| | JURY DEMAND:  YES   X  NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff): Plaintiff | CAPTION: New Jersey Department of Environmental Protection v. W.R. Grace & Co., et al. |
|---|---|

| CASE TYPE NUMBER (See reverse side for listing): 156 | IS THIS A PROFESSIONAL MALPRACTICE CASE?   YES   X  NO  If You Have Checked "Yes," See N.J.S.A. 2A:53A-27 and Applicable Case Law Regarding Your Obligation to File an Affidavit of Merit. |
|---|---|

| RELATED CASES PENDING?   YES   X  NO | IF YES, LIST DOCKET NUMBERS: |
|---|---|

| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of the same transaction or occurrence)?   YES   X  NO | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (IF KNOWN):   NONE   X  UNKNOWN |
|---|---|

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| A. DO THE PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?   YES   X  NO | IF YES, IS THAT RELATIONSHIP:   EMPLOYER-EMPLOYEE   FRIEND-NEIGHBOR   OTHER (explain)   FAMILIAL   BUSINESS |
|---|---|

B. DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?   X  YES    NO

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION.

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?   X  YES    NO | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION: Real time captioning equipment for the hard-of-hearing |
|---|---|

| WILL AN INTERPRETER BE NEEDED?   YES   X  NO | IF YES, FOR WHAT LANGUAGE: |
|---|---|

ATTORNEY SIGNATURE:

**SIDE 2**                **CIVIL CASE INFORMATION STATEMENT**
                                      **(CIS)**
               **Use for initial pleadings (not motions) under R. 4:5-1**

CASE TYPES (Choose one and enter the number of case type in appropriate space on the reverse side.)

TRACK I    - 150 Days' Discovery

151 NAME CHANGE
175 FORFEITURE
302 TENANCY
399 REAL PROPERTY
502 BOOK ACCOUNT
505 OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS)
506 PIP COVERAGE
510 UM OR UIM CLAIM
511 ACTION ON NEGOTIABLE INSTRUMENT
512 LEMON LAW
599 CONTRACT/COMMERCIAL TRANSACTION
801 SUMMARY ACTION
802 OPEN PUBLIC RECORDS ACT (SUMMARY ACTION)

TRACK II  - 300 Days' Discovery

305 CONSTRUCTION
509 EMPLOYMENT (OTHER THAN CEPA OR LAD)
602 ASSAULT AND BATTERY
603 AUTO NEGLIGENCE - PERSONAL INJURY
605 PERSONAL INJURY
610 AUTO NEGLIGENCE - PROPERTY DAMAGE
699 TORT - OTHER

TRACK III - 450 Days' Discovery

005 CIVIL RIGHTS
301 CONDEMNATION
604 MEDICAL MALPRACTICE
606 PRODUCT LIABILITY
607 PROFESSIONAL MALPRACTICE
608 TOXIC TORT
609 DEFAMATION
616 WHISTLE BLOWER/CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
617 INVERSE CONDEMNATION
618 LAW AGAINST DISCRIMINATION (LAD) CASES

TRACK IV - Active Case Management by Individual Judge/450 Days' Discovery

156 ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
303 MT. LAUREL
508 COMPLEX COMMERCIAL
513 REPETITIVE STRESS SYNDROME
701 ACTIONS IN LIEU OF PREROGATIVE WRIT

Mass Tort (Track IV)

240 REDUX/PHEN-FEN (formerly "DIET DRUG")     264 PPA
246 REZULIN                                    601 ASBESTOS
247 PROPULSID                                  619 VIOXX
248 CIBA GEIGY

999    OTHER (Briefly describe nature of action)

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1 in the space under "Case Characteristics."

Please check off each applicable category:

Verbal Threshold        Putative Class Action        Title 59

CIS page 2.wpd