**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., *et al.*, | § | Case No. 01-1139 (JKF) |
| | § | (Jointly Administered) |
| Debtors. | § | Re: Docket No. 9382 |

**O'QUINN, LAMINACK & PIRTLE'S RESPONSE IN OPPOSITION TO DEBTORS' EMERGENCY MOTION FOR LEAVE TO TAKE DISCOVERY OF CLAIMANTS' ATTORNEYS**

COMES NOW, O'QUINN, LAMINACK & PIRTLE, and files this Response in Opposition to Debtor's Emergency Motion for Leave to Take Discovery of Claimant's Attorneys and requests this Court deny Debtors' Emergency Motion and in support of it's position would show the Court as follows:

**I.**

As a preliminary matter, O'Quinn, Laminack & Pirtle ("OLP") has never knowingly filed a "retread" silicosis lawsuit, i.e. a silicosis lawsuit based on an x-ray used for a prior diagnosis or indication of asbestosis which was subsequently used for a diagnosis of silicosis while making no mention of the prior evidence of asbestosis on the x-ray in question. OLP has filed lawsuits for silicosis based on an x-ray indication of mixed-dust pneumoconiosis. The silicosis lawsuits are not seeking any claims against Debtors.

1

**II.**

Faced with criminal indictments and ever-increasing asbestos-related deaths[1] Debtors now seek to implicate plaintiff's attorneys prosecuting any dust disease claims in a phantom conspiratorial network generating fraudulent asbestosis claims. Debtors have petitioned this Court to conduct unbridled discovery of any law firm which has so much as seen a shadow of an asbestos lawsuit. Debtors base their request citing Judge Jack's now-infamous order in MDL 1553, the federal silica MDL.

It is now clear Judge Jack's order, being touted by the defense bar all over the country as illustrative of the abuses rife in mass tort litigation, misses the point on several fronts:

- Judge Jack found, based on testimony elicited from defendant's experts, that the incidence of silicosis and asbestosis occurring in a single individual so rare as to be non-existent. The order overlooks the gold standard in pulmonary care, the criteria document put forth by the American Thoracic Society, which makes clear reference to the possibility of the incidence of both disease processes occurring in the same individual.[2] The scientific literature is rife with examples of mixed dust pneumoconiosis in the same individual such as the cases of "Labrador lung" noted in medical literature[3].

- The silicosis MDL order relied heavily on the *Gitlin* study: a purportedly unbiased study cited by Debtors for the proposition that studies have shown screenings to be unreliable. It has since been uncovered that Dr. Gitlin has worked for Owens-Corning in the past[4]. The x-rays in the study read "blind" by a unbiased panel of B-readers, which Dr. Gitlin is not, were in actuality selected by Dave Setter, an attorney who "is currently non-malignant medical counsel for various defendants where he litigates and directs the investigation and discovery of mass tort

---

[1] "*Changing patterns of Pneumoconiosis Mortality – United States, 1968-2000*"; Centers for Disease Control, Morbidity & Mortality Weekly, July 23, 2004. The article compares death rates from pneumoconiosis for the periods 1968-1981 and 1982 –2000 and found death rates among males "increased nearly 400% for asbestosis". A copy of the publication is attached hereto as Exhibit "A".

[2] Exhibit B: *Diagnosis and Initial Management of Nonmalignant Diseases Related to Asbestos*, Official Statement of the American Thoracic Society adopted by the ATS Board of Directors on December 12, 2003.

[3] Exhibit E: "*Labrador lung: an unusual mixed dust pneumoconiosis*" H.W. Ederson and D.M. Rice, Canadian Medical Assoiation Journal, Vol. 126, Issue 1 27-30, 1982

[4] Exhibit C: excerpts of deposition of Dr. Joseph Gitlin taken December 17, 2004

screenings and litigates the medicine behind non-malignant claims"[5]  In addition to misleading Judge Jack, the study is currently being referenced with obvious ignorance as to it's inherent bias. As succinctly stated by two professors at the University of Michigan who articulated their concerns related to the study and concluded: "For these reasons, and without further information, **no valid scientific conclusions can be drawn from Gitlin and colleagues' investigation.**"[6]

### III.

Debtors have failed to articulate what exactly it is they hope to uncover from claimants' attorneys. While Debtors' request is full of innuendo and unfounded allegations it must be noted for the benefit of this Court that the very issues Debtors seek to uncover were thoroughly investigated in MDL 1553 by Judge Jack. The screening doctors and the operatives of screening companies testified at length before the court, leading to Judge Jack's issuance of her now infamous order questioning screening protocols and practices in that matter though finding that "there is nothing inherently wrong with a mass screening, which can be a mechanism to identify disease in a population at risk for disease".[7]

Debtors have not made the showing necessary to depose opposing counsel in this matter. Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorneys' testimony, which delays may be the ultimate goal of Debtors' request for discovery of opposing counsel. The party seeking deposition of opposing counsel must show both the propriety and need for the

---

[5] As published on the website of Socha, Perczak, Setter & Anderson P.C.
[6] Exhibit "D", American Radiology, Vol. 11, No. 12, December 2004 at 1398 (emphasis added).
[7] MDL 1553, Order 29, Page 131.

deposition. *Dunkin Donuts Inc. v. Mandorico, Inc.*, 117 F.R.D.83, 85 (M.D.N.C. 1987). Furthermore a party seeking to depose an adversary's counsel must prove its necessity. *Jennings v. Family Management*, 201 F.R.D. 272, 277 (D.D.C. 2001). Debtors have failed to show the need or necessity for the depositions of plaintiffs counsel in this matter other than the unfounded allegation of a vast conspiracy involving lawyers, doctors and screening companies.

Additionally the information Debtors seek, if such exists, is readily available from sources other than depositions and discovery of opposing counsel. If the Debtors are seeking to discover furtive relationships between the diagnosing doctors, screening companies and lawyers, the information is equally available from the doctors and screening company operators. These relationships were the subject of three days of hearings before Judge Jack in the silicosis MDL. Judge Jack's findings are recounted at length in Order 29; the judge found no evidence of any improper relationships implicating the attorneys.

Debtors must carry the burden to show that no other sources for the information they seek are reasonably available. M & R Amusements' Corp. v. Blair, 142 F.R.D. 304, 305 (N.D. Ill. 1992). To meet this burden, Debtors must identify the specific unsuccessful measures they have taken to obtain the information, why they have failed, and that other resources are unavailable. *Id @* 420. To date Debtors have not met their burden to show this Court the other measures they have undertaken to discover the information sought: they have not deposed nor subpoenaed the doctors' records nor those of the screening companies. Debtors' discovery requests are overbroad, unlimited in time and scope and unprecedented.

4

## CONCLUSION

The Debtors have not satisfied their legal burden showing they have exhausted all available means to gather the information they seek; information which may not exist. Debtors have not conducted any preliminary investigation of other potential sources, such as doctors or screening companies; they have instead chosen to attack claimants' counsel in hopes of silencing the claims. Debtors support their request for discovery on plaintiffs' counsel with questionable medical criteria and self-serving studies perpetrated by hired guns. They have failed to articulate their goals or provide an example of the kind of evidence they seek and hope to uncover for one simple reason: it does not exist. Debtors' ultimate goal is to bog down these proceedings chasing red herrings and rabbit trails which bear no relation to the task before this Court: fair, just and timely compensation for decades of Debtors' criminal activities.

For the foregoing reasons OLP prays the Court deny Debtors request for discovery on claimants' counsel.

Dated: October 7, 2005             Respectfully submitted,

*/s/Daniel K. Hogan*
Daniel K. Hogan (DE #2814)
**THE HOGAN FIRM**
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone: 302-656-7540
Facsimile: 302-656-7599
E-mail: dkhogan@dkhogan.com

              -and-             Abel Manji (TBA # 00784520)
**O'QUINN, LAMINACK & PIRTLE**
440 Louisiana, Suite 2300
Houston, Texas  77002
(713) 236-2677
(713) 223-4870 (fax)