FILED

IN THE UNITED STATES BANKRUPTCY COURT 2005 OCT -8 AM 12: 02

FOR THE DISTRICT OF DELAWARE

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | Related Docket No. 9457 |

Hearing Date: October 24, 2005 @ 12:00 P.M.

## THE DEBTORS' OPPOSITION TO MOTION OF REAUD, MORGAN & QUINN, INC AND ENVIRONMENTAL LITIGATION GROUP, P.C. FOR (I) CLARIFICATION, OR (II) ALTERNATIVELY, FOR MODIFICATION OF CASE MANAGEMENT ORDER

### INTRODUCTION

Through their motion to clarify or, alternatively, modify the Case Management

Order entered on August 29, 2005 (the "CMO"), Reaud, Morgan & Quinn, Inc. ("RMQ") and

Environmental Litigation Group, P.C. ("ELG") (collectively "RMQ/ELG") request that the

Court relieve their clients of their obligation to respond to the W.R. Grace Personal Injury

Questionnaire (the "Questionnaire") approved by the Court and incorporated into the CMO.

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Specifically, RMQ/ELG contend that those RMQ/ELG clients who (1) entered into a settlement

agreement (the "Settlement Agreements") with the Debtors prior to filing for bankruptcy and (2)

provided the Debtors with certain documents related to their asbestos claims should not be

required to respond to the Questionnaire. RMQ/ELG Motion at ¶ 1.

        To be clear, the Debtors agree and have informed RMQ/ELG, consistent with the

language in the Questionnaire, that claimants are not required to respond to the Questionnaire if

their claims are "fully resolved." Although not defined in the Questionnaire, the term "fully

resolved" means precisely what it says. If a claimant no longer has a claim against the Debtors,

such that the claimant has no claim for monetary compensation from the Trust that eventually is

formed, then the claimant need not respond to the Questionnaire. If RMQ/ELG represents

clients whose claims have been "fully resolved" in this manner, then they need not respond to the

Questionnaire on behalf of those claimants. Upon inquiry by Counsel for RMQ/ELG, the

Debtors offered to release RMQ/ELG clients with fully resolved claims from their obligation to

respond to the Questionnaire upon a showing that the claimant:

        (1) provided the Debtors with a release of his or her claim; and

        (2) had his or her claim paid in full.

        However, those RMQ/ELG claimants who have not met these requirements must

respond to the Questionnaire. The Questionnaire is designed to elicit relevant information from

all current claimants with potential monetary claims against the Trust that will be formed after a

Plan of Reorganization is adopted. If a claim was settled prior to bankruptcy - *but not paid in*

*full* - then the claim is still active and counts as a potential current claim against the Trust. It

would make no sense, and indeed render the entire Questionnaire process useless, to exempt

2

these claimants with live monetary claims from responding to the Questionnaire. These

claimants must respond to the Questionnaire because they ultimately may seek money from the

Trust and therefore must be included in the Court's estimation of current claims. The Court's

intent, as evidenced by statements on the Record, the parties' course of conduct, and the plain

language of the CMO and the Questionnaire all demonstrate that the Questionnaire must be

completed by any claimant whose claim is not fully resolved. Accordingly, the Court should

deny RMQ/ELG's motion.

## ARGUMENT

I.   **ASBESTOS PERSONAL INJURY CLAIMANTS WHO HAVE NOT PROVIDED THE DEBTORS WITH A RELEASE AND WHOSE CLAIMS HAVE NOT BEEN FULLY PAID MUST RESPOND TO THE QUESTIONNAIRE**

A.   **The Language Of The Questionnaire And CMO Require All Asbestos Personal Injury Claimants To Respond To The Questionnaire.**

The plain language of the Questionnaire indicates that all pre-petition asbestos

personal injury claimants are required to respond to the Questionnaire and submit supporting

documents and evidence. The instruction page of the Questionnaire approved by this Court

mandates that "ALL HOLDERS OF PRE-PETITION ASBESTOS PERSONAL INJURY

CLAIMS MUST COMPLETE AND RETURN THIS QUESTIONNAIRE." Questionnaire at i

(capitalization retained) (attached as Exhibit A). Nowhere does the Questionnaire delineate

between settled and unsettled claims. Instead, the Questionnaire is directed to all asbestos

personal injury claimants whose "CLAIM WAS NOT FULLY RESOLVED." *Id.* Those

RMQ/ELG clients who have not released their claims against the Debtors and have not been paid

in full have "unresolved" claims and must respond to the Questionnaire.

3

Additionally, the language of Part VII of the Questionnaire contemplates that asbestos personal injury claimants who reached a settlement with Grace prior to April 2, 2001 would respond to the Questionnaire. For example, Part VII of the Questionnaire inquires about the asbestos personal injury claimants' litigation history. *See* Questionnaire at 13. Specifically, the claimant is asked whether "a settlement agreement [was] reached in [a] lawsuit [against Grace]." *Id.* Similarly, the Questionnaire asks whether "the settlement was reached on or after April 2, 2001." *Id.* These questions confirm that those claimants with settled claims are required to respond to the Questionnaire.

Finally, the CMO itself mandates that "all holders of Asbestos PI Pre-Petition Litigation Claims" complete the Questionnaire. August 29, 2005 CMO at ¶ 2. The CMO defines "Asbestos PI Pre-Petition Litigation Claims" as "asbestos personal injury claims for which litigation was commenced prior to the Petition Date." August 29, 2005 CMO at ¶ 3A. RMQ/ELG's clients who have not released the Debtors *and* had their asbestos claims fully paid clearly fall into this category. The simple fact that some of RMQ/ELG's clients have settled, but have not released the Debtors or had their claims paid in full, does nothing to alter the plain language or intention of the Questionnaire and CMO -- language that was negotiated between the Debtors and the Official Committee of Asbestos Personal Injury Claimants (the "PI Committee") and approved by the Court.

**B.    RMQ/ELG's Clients' Unresolved Claims Are Relevant To Estimating Present And Future Liability.**

4

There is no question that any unresolved personal injury asbestos claims must be considered and accounted for in the ultimate estimation ordered by the Court. If RMQ/ELG's claimants' settled but unpaid claims are "valid" claims with potential value under applicable state and federal rules, then they must be included in the estimation so that the Trust is funded sufficiently to pay them. If, on the other hand, these claims are not valid claims, or have little potential monetary value under applicable rules, then the Court must have that information as well so that the Trust is not over-funded at the expense of equity holders.

The Questionnaire and CMO were issued in connection with the Court's attempt to permit the Debtors to obtain information relevant to the estimation of the Debtors' current and future liability. The Court has noted and agreed with the Debtors that in order for the estimation of the Debtors' current and future liability to be accurate and viable, the Court must have the best available information on the validity and potential value of all current claims. Tr. of Hearing before the Honorable Judith K. Fitzgerald, June 27, 2005, at 80 ("The debtor has the right to discovery to know what the current claims are, and that will be a much better basis for estimation of current claims and possibly future claims than anything else."). Thus, any asbestos personal injury claimant with an unresolved claim filed prior to bankruptcy must respond to the Questionnaire so that both the Debtors and the Court have accurate and reliable evidence about the claim. With respect to the RMQ/ELG claims that have been "settled" but not fully paid, the Debtors, through the Questionnaire, are seeking evidence of the claims' validity and value, in accordance with the applicable federal rules of procedure and evidence as well as state substantive law. The fact that the claims were "settled" does not necessarily mean that they will be paid under a Trust at the amount agreed to in the settlement. As the Court has noted on

5

numerous occasions, neither the Court nor the Trust are bound by past settlement agreements or

values placed on claims. The Debtors have maintained that settlement values are not necessarily

representative of "liability," which is what the Court is estimating in this proceeding.

Consequently, any current claimants with claims that are not fully resolved must respond to the

Questionnaire to ensure that the estimation of those claims is based on reliable evidence that

meets the requirements of Rule 702 of the Federal Rules of Evidence as articulated in *Daubert v.*

*Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Moreover, even if RMQ/ELG's clients' settled but unresolved claims were paid

by the yet-to-be-formed Trust according to the terms of the settlement agreement, the value of a

similar future claim may indeed be different, based on the applicable rules and law in federal

proceedings, as well as new evidence regarding the unreliability of much of the medical and

exposure evidence upon which previous settlements have been reached. To the extent

RMQ/ELG's clients' settled but unresolved claims may be based on unreliable medical evidence,

that information can be used to help the Court predict the likelihood that similar future claims

will be based on such unreliable evidence. For example, based on the Debtors' internal

investigation of limited data from the *In re Silica* MDL, it appears that at least 150 of

RMQ/ELG's clients in this proceeding also filed claims for silicosis in the *In re Silica* MDL.

This Court is well aware of the abuse associated with large numbers of the claimants, doctors,

and lawyers involved in that proceeding. This says nothing of the number of RMQ/ELG's

clients, with unresolved claims against the Debtors, whose underlying diagnoses of asbestos

disease are based upon a B-reading by one of the doctors who were recently identified by David

Austern in a letter suspending payment by the Manville Trust of claims supported by these

6

doctors. It is critical to flesh out to what extent RMQ/ELG's clients' unresolved claims against the Debtors are similarly tainted.

For all the reasons stated above, any claimants whose claims were not fully resolved at the time of Grace's bankruptcy filing must respond to the Questionnaire.

### C. The Questionnaire Requires A Broader Production Of Information And Documents Than The Settlement Agreements.

In their motion, RMQ/ELG assert that "the Case Management Order was not intended to and does not apply to asbestos claimants who have already provided to the Debtors in other proceedings the information concerning their asbestos claims that is called for in the Questionnaire." RMQ/ELG Motion at ¶ 1. RMQ/ELG's assertion simply is not an accurate reflection of the facts, or the record. First, RMQ/ELG's statement implies that the information provided to Grace during settlement negotiations is the same as the information requested by the Questionnaire. Contrary to RMQ/ELG's assertion, the information provided to the Debtors as part of the settlement of some of RMQ/ELG's clients' claims is far narrower than the information and documents requested by the Questionnaire.

For example, the Questionnaire requests the following written information that was *not* required under the Settlement Agreements:

- "[A]ll x-ray readings and reports." Questionnaire at ii. The Settlement Agreements merely required showing the *existence* of an x-ray report/B-read and did not require the actual report itself.

- The claimants must provide "any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis." *Id.* The Settlement Agreements did not require production of tests "contrary" to the diagnosis forming the basis for the claim.

- "[A]ll pulmonary function test results, including the raw data and all spirometric tracings, on which the results are based." *Id.*

- Information about the qualifications of the doctors who examined the claimant as well as the social and financial relationship between the claimant and each examining doctor. *Id.* at 5 - 8.

- The claimant's smoking history. *Id.* at 5.

- Whether the claimant's x-ray was taken as part of a mass-screening. *Id.*

- *Detailed* information about a claimant's occupational exposure to a Grace asbestos product, including the nature of the exposure, the frequency of the exposure, and the claimant's occupation at the time of the exposure. *Id.* at 9.

- *Detailed* information about a claimant's exposure to non-Grace asbestos-containing products. *Id.* at 11.

- The claimant's complete employment history. *Id.* at 12. The Qualifying Materials merely required information about a claimant's employment when exposed to a Grace asbestos product.

- Claimant's litigation history, including lawsuits filed against manufacturers of non-Grace asbestos products. *Id.* at 13. A claimant is also required to submit any depositions or judgments issued in such lawsuits. *Id.*

This is not an exhaustive list but merely illustrates the information requested through the Questionnaire that was not required of claimants submitting Qualified Materials pursuant to the Settlement Agreements. Accordingly, the RMQ/ELG clients who have not been fully paid, and thus still have a potential claim against the Trust, should be required to participate in the estimation process and provide all of the information and documents requested through the Questionnaire.

Second, RMQ/ELG's assertion that the Questionnaire and CMO were not "intended" to apply to claimants who already provided information to the Debtors during settlement negotiations conveniently ignores relevant portions of the record leading up to the Court's approval of the CMO and Questionnaire. At the July 19, 2005 Omnibus Hearing, Counsel for the PI Committee raised the specific question as to whether claimants needed to

produce information previously disclosed to the Debtors in other litigation, and the Court stated

that such information must be produced, albeit at the Debtors' expense:

> MR. FINCH: There could be a warehouse of documents that
> Grace produced in prior litigation relating to exposures at job sites
> all over the country. You're expecting the plaintiff's lawyer to
> produce that, or can they just say tell Grace to go look in your own
> document depository?
>
> THE COURT: You can tell Grace to go look in its document
> depository if you identify for Grace where in the document
> depository it is. So, if it was filed in XYZ case pending in the
> Southern District of New York in discovery production YZ. You
> can do that.
>
> *    *    *    *
>
> THE COURT: They probably have, but if they've already
> produced them once, they don't need to produce them again. So if
> they can prove that they've already produced them; you [i.e., the
> Debtors] can go back into your [i.e., the Debtors'] files and get
> them.
>
> MR. BERNICK: Well, I think it's so simple. They've got the
> claim files for these people.
>
> THE COURT: They do. Do you want to pay for the cost of it
> then? But *if they've produced it before, they can send it again,*
> *but Grace will reimburse the costs -- the copying and mailing*
> *costs.*
>
> MR BERNICK: **That's fine.**
>
> THE COURT: **Fine.**

Tr. of Hearing before the Honorable Judith K. Fitzgerald, July 19, 2005, at 235-36 (emphasis

added). In their motion, RMQ/ELG selectively exclude from the passage above the final two --

and most relevant -- statements by the Court. RMQ/ELG Motion at ¶ 8. These statements settle

the issue. As the Court made clear, RMQ/ELG should copy their clients' claim files and send

them to the Debtors, and the Debtors will pay the cost. This is the mechanism that ultimately

was ordered by the Court and currently is reflected directly in the Questionnaire. *See* Questionnaire at 14 ("Grace will reimburse your reasonable expenses incurred in providing . . . any documents you have previously provided to Grace in prior litigation."). As such, the RMQ/ELG claimants with unresolved claims must respond to the requests in the Questionnaire, including the provision of all documents requested by the Questionnaire, regardless of whether or not these claimants previously have provided some of that information to the Debtors.

## II.    RMQ/ELG'S REQUEST FOR ATTORNEY'S FEES SHOULD BE DENIED

RMQ/ELG's request that this Court require the Debtors to pay the cost of their motion is absurd. RMQ/ELG contend that the Debtors were not diligent in responding to their request to be exempted from the discovery component of the estimation proceeding. As the attached e-mail exchange illustrates, Counsel for the Debtors attempted to set up an agreeable time to discuss RMQ/ELG's questions about the Questionnaire and CMO. *See* E-mail exchange between Barbara Harding and Sander Esserman (attached as Exhibit B). In fact, RMQ/ELG acknowledge in their motion that Counsel for the Debtors called Counsel for RMQ/ELG on September 19, 2005 to discuss the issue. RMQ/ELG Motion at ¶ 9 n. 8. RMQ/ELG's Counsel was not available to talk so the Debtors' Counsel left a message. Counsel for the Debtors called RMQ/ELG's Counsel again later in the day, at which time RMQ/ELG's Counsel informed Debtors' Counsel that the present motion had been filed. Still, the Debtors' Counsel offered to further investigate the factual predicates of RMQ's concerns. On Tuesday, September 20th, Counsel for the Debtors again called RMQ/ELG's Counsel explaining the Debtors' position that those RMQ/ELG clients who had provided the Debtors with a release and been paid in full

10

would not be required to respond to the Questionnaire, but if they had not been paid in full then they could not be released. As further explained to RMQ/ELG's Counsel during that September 20th conversation, RMQ/ELG had not provided information to the Debtors that would permit the Debtors to be able to identify which RMQ/ELG clients received full payments for their claims.[2] Thus, Counsel for the Debtors explained to RMQ/ELG's Counsel that before releasing any claimants from their obligations to respond to the Questionnaire, the Debtors would need some kind of verification of the names of the claimants who received full payment and thus no longer have any claim against Grace. The Debtors fail to understand the basis for RMQ/ELG's request for sanctions based upon this series of events.

Moreover, as discussed above, the linchpin of RMQ/ELG's argument is a selective quote from the July 19, 2005 hearing transcript which obscures the Court's plain intent. The Debtors should not be required to compensate RMQ/ELG for their decision not to read the paragraphs in the transcript immediately following the portion RMQ/ELG cited and for failing to discern the full extent of the Court's prior ruling, and the plain language of the CMO and the Questionnaire.

## CONCLUSION

This Court ruled, after much deliberation, that all pre-petition asbestos personal injury claimants - including those who have previously supplied medical documents and

---

[2]  Debtors' payments under the Settlement Agreements were made directly to RMQ/ELG. For some claimants, Debtors have information indicating that the claims have been paid in full. Accordingly, those claimants did not receive Questionnaires. For other claimants, however, Debtors have not been privy to how the money has been distributed among RMQ/ELG's clients. Further, some RMQ/ELG claimants were paid pursuant to the Settlement Agreements via a bulk payment from the National Union Fire Insurance Company. Again, the Debtors do not have any way of determining which individual RMQ/ELG clients actually have been paid. As stated to RMQ/ELG's Counsel, and again in this Response, the Debtors agree that any RMQ/ELG claimants who have given the Debtors a release and been paid in full are not required to respond to the Questionnaire, because they no longer have a claim against the Debtors.

evidence - must respond to the Questionnaire and provide all documentation requested in the Questionnaire. The language of the CMO and the Questionnaire similarly, and unequivocally, state that pre-petition asbestos personal injury claimants with *unresolved* claims *must* respond to the Questionnaire. Accordingly, the Debtors request that this Court deny RMQ/ELG's motion to clarify or amend the CMO and the accompanying request for attorney's fees. All of RMQ/ELG's pre-petition asbestos personal injury claimants, who have not been fully paid and/or have not executed releases, must respond to the Questionnaire. If RMQ/ELG represents pre-petition asbestos personal injury claimants who have been fully paid and have executed releases, then those claimants need not respond to the Questionnaire as long as RMQ/ELG agrees to provide the Debtors with the names and last four digits of the social security numbers of such claimants.

Dated:    Wilmington, Delaware
          October 7, 2005

Respectfully submitted,

KIRKLAND & ELLIS LLP

David M. Bernick, P.C.
200 East Randolph Drive
Chicago, IL 60601
Telephone:    (312) 861-2000
Facsimile:    (312) 861-2200

KIRKLAND & ELLIS LLP

Barbara M. Harding
David Mendelson (admission *pro hac vice* pending)
Brian T. Stansbury
Amanda C. Basta
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:    (202) 879-5000
Facsimile:    (202) 879-5200

-and-

PACHULSKI, STANG, ZIEHL, YOUNG,
JONES & WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:     (302) 652-4100
Facsimile:     (302) 652-4400

13