THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**Objection Deadline: October 28, 2005 at 4:00 p.m.**
**Hearing Date: November 14, 2005 at 12:00 p.m.**

## DEBTORS' APPLICATION FOR AUTHORIZATION TO RETAIN BEAR, STEARNS & CO. INC., AS FINANCIAL ADVISOR FOR LIMITED PURPOSE

The above captioned debtors (the "Debtors") hereby submit this application (the "Application") for an order authorizing the Debtors to retain Bear, Stearns & Co. Inc. ("Bear Stearns") as financial advisor solely in connection with the proposed acquisition by the Debtors of a specialty chemical business (the "Target Business") in a transaction that the Debtors have code named Project Omega (the "Transaction"). In support of this Application, the Debtors state as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 327(a) and 328(a), and Fed. R. Bank. P. 2014(a) and 5002.

## Background

2. On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") commencing these chapter 11 cases (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

## Relief Requested

3. By this Application, the Debtors seek authority to retain Bear Stearns pursuant to sections 327 and 328 of the Bankruptcy Code as their financial advisor solely with respect to the Transaction.

4. Bear Stearns has extensive experience in providing financial advisory services similar to those proposed herein in connection with mergers and acquisitions, including acquisitions in the specialty chemical business.

5.	The Debtors believe that Bear Stearns is well qualified to advise the Debtors in a cost-effective, efficient and timely manner, and Bear Stearns has indicated its willingness to act on behalf of the Debtors with respect to the Transaction.

### Financial Advisor's Disinterestedness

6.	To the best of the Debtors' knowledge, and except as disclosed herein and in the affidavit of Michael Constantino, a Managing Director of Bear Stearns (the "Affidavit", a copy of which is attached hereto as Exhibit A): (a) Bear Stearns is a "disinterested person" within the meaning of section 101(14) and holds no interest adverse to the Debtors and their estates relating to the matters for which Bear Stearns is to be employed, and (b) Bear Stearns has no connection to the Debtors, their creditors or other related parties in interest except as otherwise disclosed in the Affidavit.

### Terms of Retention

7.	Bear Stearns and W. R. Grace & Co.-Conn., the Debtors' chief operating company ("Grace"), have signed an agreement (the "Retention Agreement")[2] that will govern the relationship between Bear Stearns and the Debtors with respect to the Transaction, a redacted copy of which Retention Agreement is attached hereto as Exhibit B.[3] In the Retention Agreement Bear Stearns agrees to provide the following services (the "Transaction Services"):[4]

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Retention Agreement.

[3] The Retention Agreement has been redacted to protect certain confidential information. The Debtors shall provide such confidential information to parties upon request but only pursuant to appropriate confidentiality agreements. The redacted information shall also be provided to the Court for in camera review upon request.

[4] The Summary of the Retention Agreement provided herein is for convenience only. To the extent that any summary of the Retention Agreement herein differs from the actual terms and conditions set forth in Retention Agreement, the Retention Agreement controls.

3

a. undertake, in consultation with members of Grace's management, a study and analysis of the business, operations, financial condition and prospects of the Target Business;

b. advise Grace with respect to the valuation of the proposed Transaction;

c. develop a strategy to effectuate the proposed Transaction;

d. assist in structuring and negotiating the proposed Transaction; and

e. be available to meet with the Board of Directors of Grace to discuss the proposed Transaction and its financial implications.

8. The Transaction Services do not include other investment banking services, or involve services for any other transactions. The terms and conditions of any additional services or for any additional transactions, including compensation arrangements, would have to be set forth in a separate written agreement, and would be subject to any required Court approval.

9. As more fully described in the Retention Agreement, if, during the duration of the Retention Agreement or within 12 months after its termination by Grace, Grace consummates a Transaction, Grace will pay to Bear Stearns a fee of $1.25 million (the "Transaction Fee").

10. If Grace acquires assets of the Target Business that generated less than 50% of its pro forma sales for the twelve months ended June 30, 2005, Grace and Bear Stearns will negotiate in good faith to agree upon a fee payable to Bear Stearns in connection with any such transaction, which fee shall be consistent with compensation agreements customarily agreed to by Bear Stearns in similar circumstances. The Debtors expect that they will acquire all or

4

substantially all of the assets of the Target Business, therefore this provision is unlikely to be applicable.

11. The Retention Agreement may be terminated at any time by either Bear Stearns or Grace upon written notice thereof to the other party; provided, however, that if Grace shall terminate the Retention Agreement, Bear Stearns will continue to be entitled to the full amount of the Transaction Fee pursuant to the terms and conditions of the Retention Agreement if the Transaction is consummated prior to the expiration of 12 months after such termination. If Bear Stearns terminates the Retention Agreement, it shall not be entitled to payment of the Transaction Fee if the Transaction occurs after such termination.

12. The Retention Agreement also provides that without further approval by the Court, Grace will promptly (a) pay Bear Stearns the Transaction Fee in accordance with the terms of the Retention Agreement and (b) reimburse Bear Stearns, periodically upon request, for all out-of-pocket expenses reasonably incurred in connection with its performance of the Retention Agreement, provided, however, that Grace shall not be required to reimburse Bear Stearns for expenses incurred for legal counsel, or other consultants or advisors, unless Bear Stearns has obtained Grace's prior written approval of their retention of such counsel, consultants or advisors, other than in connection with the indemnification provisions referred to below. Bear Stearns will not be required to submit detailed daily time records or expense records as part of any monthly statements, or internal or final fee applications with respect to payment of the Transaction Fee or any expenses incurred under the Retention Agreement.

13. The Debtors believe that the Transaction Services will not duplicate the services that The Blackstone Group L.P. ("Blackstone"), the Debtors' financial advisors, are providing to the Debtors in the Chapter 11 Cases. Bear Stearns will carry out unique functions in these cases relating only to the Transaction, thus there is no reason to be concerned about duplication of efforts between Bear Stearns and Blackstone.

14. The Debtors are seeking approval of the fee structure set forth above pursuant to section 328(a) of the Bankruptcy Code, which provides in pertinent part that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . [of the Bankruptcy Code] . . . on any reasonable terms and conditions of employment, including . . . on a contingent fee basis." 11 U.S.C. § 328(a). Accordingly, section 328(a) permits the Court to approve the fee structure outlined above. The fee structure appropriately reflects the nature and scope of the Transaction Services, Bear Stearns' substantial experience with respect to financial advisory services, and the fee structures typically utilized by Bear Stearns and other leading financial advisors, which do not bill their clients on an hourly basis. Similar contingency fee arrangements have been approved and implemented in other large chapter 11 cases in this District and elsewhere. Bear Stearn's compensation and expenses in these Chapter 11 Cases shall be subject only to the standard of review set forth in section 328(a) of the Bankruptcy Code, and shall not be subject to any other standard review set forth in section 330 of the Bankruptcy Code.

DOCS_DE:112215.1

## Indemnification Provisions

15.  Bear Stearns requests that the indemnification provisions of the Retention Agreement, a copy of which is attached as <u>Annex A</u> to the Retention Agreement, be approved, subject to the following:

   a.  subject to the provisions of subparagraph (c) below, the Debtors are authorized to indemnify, and shall indemnify, Bear Stearns in accordance with the Retention Agreement, for any claim arising from, related to or in connection with the Transaction Services;

   b.  notwithstanding any provision of the Retention Agreement to the contrary, the Debtors shall have no obligation to indemnify Bear Stearns, or to provide contribution or reimbursement to Bear Stearns, to the extent any losses, claims, damages or liabilities (or expenses relating thereto) are determined by a court of competent jurisdiction (the determination having become final) to have primarily resulted from the bad faith, gross negligence or willful misconduct of Bear Stearns; and

   c.  if, before the earlier of (i) the entry of an order confirming a chapter 11 plan or plans in the Chapter 11 Cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing the Chapter 11 Cases, Bear Stearns believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Retention Agreement, including without limitation, the advancement of defense costs, Bear Stearns must file an application therefore in this Court, and the Debtors may not pay any such amount to Bear Stearns before the entry of an order by this Court approving such payment. This subparagraph (c) is intended only to specify the period of time during which the Court shall have jurisdiction over any request for fees and expenses by Bear Stearns for indemnification, contribution or reimbursement, and not to limit the duration of the Debtors' obligation to indemnify Bear Stearns.

16.  The preceding indemnification provisions are substantially similar to those that were negotiated with the U.S. Trustee and approved by the Court in these Chapter 11 Cases with respect to the Debtors' retention of Blackstone.

## Notice

17.     Notice of this Motion has been given to: (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to all official committees appointed by the United States Trustee, and (v) all those parties that requested service and notice of papers in accordance with Fed R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Request

18.     No prior application or motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form attached hereto, authorizing the retention of Bear Stearns as financial advisor for the limited purposes specified and pursuant to the terms of the Retention Agreement, and granting such other relief as is just and proper.

Dated: October 10, 2005

        KIRKLAND & ELLIS LLP
        David M. Bernick, P.C.
        Janet S. Baer
        Lori Sinanyan
        200 East Randolph Drive
        Chicago, Illinois 60601
        Telephone: (312) 861-2000
        Facsimile: (312) 861-2200

        and

        PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

        */s/ James E. O'Neill*
        Laura Davis Jones (Bar No. 2436)
        James E. O'Neill (Bar No. 4042)
        919 North Market Street, 16th Floor
        P.O. Box 8705
        Wilmington, DE 19899-8705 (Courier 19801)
        Telephone: (302) 652-4100
        Facsimile: (302) 652-4400

        Co-Counsel for the Debtors and Debtors in Possession