## **Exhibit B**

Retention Agreement



Bear, Stearns & Co. Inc.
383 Madison Avenue
New York, New York 10179
Tel 212-272-2000
www.bearstearns.com

August 19, 2005

W. R. Grace & Co.-Conn.
7500 Grace Drive
Columbia, Maryland 21044-4098

Attention:   Fred Festa
             President and Chief Executive Officer

Gentlemen:

This letter (the "Agreement") confirms the agreement between W. R. Grace & Co.-Conn. (collectively with its affiliates and as more fully set forth below, the "Company") and Bear, Stearns & Co. Inc. ("Bear Stearns") as follows:

1.  The Company hereby engages Bear Stearns to act as the Company's financial advisor in connection with any Transaction (as hereinafter defined) with or involving the                    business (the "Business") of                    (the "Acquiree"), a Delaware corporation and subsidiary of                    .

2.  Bear Stearns hereby accepts the engagement and, in that connection, to the extent requested by the Company, agrees to:

    (a)  Undertake, in consultation with members of the Company's management, a study and analysis of the business, operations, financial condition and prospects of the Acquiree;

    (b)  Advise the Company with respect to the valuation of the proposed Transaction;

    (c)  Develop a strategy to effectuate the proposed Transaction;

    (d)  Assist in structuring and negotiating the proposed Transaction; and

    (e)  Be available to meet with the Board of Directors of Company to discuss the proposed Transaction and its financial implications.

3.  For purposes hereof, "Transaction" shall mean any transaction or series of related

transactions whereby, directly or indirectly, control of the Acquiree, or of businesses or assets of the Acquiree that generated 50% or more of the Business's Pro Forma LTM Sales (as defined below), is transferred to the Company for consideration, including, without limitation: a sale or exchange of stock (including shares issuable upon the conversion of any securities convertible into such stock) or assets, a lease or license of assets with or without a purchase option, or a merger, consolidation or reorganization. The term "Pro Forma LTM Sales" means the Business's Pro Forma Sales for the twelve month period ended on June 30, 2005. The term Pro Forma Sales means all receipts of the Business that would customarily be classified as "Sales" or "Revenue" under US GAAP if the Business had been a stand-alone entity independent from the Acquiree for the entire period under consideration. The term "Company" means the Company, its consolidated subsidiaries and any entity formed by the Company for the purpose of entering into a Transaction. The term "affiliate" has the meaning given such term in Rule 12b-2 under the U. S. Securities Exchange Act.

4. In consideration of our services pursuant to this Agreement, if, during the duration of this Agreement or within 12 months after termination of this Agreement by the Company as discussed below, the Company consummates the Transaction, the Company agrees to pay Bear Stearns a fee of $1.25 million (the "Transaction Fee").

If the Company acquires assets of the Business that generated less than 50% of the Acquiree's Pro Forma LTM Sales (determined as described in paragraph 3, above), the Company and Bear Stearns will negotiate in good faith to agree upon a fee payable to Bear Stearns in connection with such transaction, which fee shall be consistent with compensation agreements customarily agreed to by Bear Stearns in similar circumstances.

The Company reserves the right, at any time and for any reason or no reason, to refuse any offer for a Transaction, to reject any particular proposed Transaction, to delay or terminate any negotiations with respect to any proposed Transaction, and to refuse to proceed with, or to delay the closing of any proposed Transaction, whether or not covered by a binding or allegedly binding contract, and whether or not such Transaction appears to meet the Company's goals. With respect to Bear Stearns, no obligation, commitment or duty of any nature whatever on the part of the Company shall exist or be implied in fact or in law to pursue, negotiate for, comply with any contract or alleged contract for, or bring to completion any Transaction, or that Bear Stearns is authorized to make any binding offer or binding commitment of any nature whatever on behalf of the Company or its affiliates.

5. The Company will promptly reimburse Bear Stearns, periodically upon request, for all out-of-pocket expenses reasonably incurred in connection with this Agreement, including the fees and expenses of legal counsel and of any other consultant or advisor retained by Bear Stearns; provided, however, that, other

than in connection with the Indemnification Provisions referred to below, the Company shall not be required to reimburse Bear Stearns for expenses incurred for legal counsel or other consultant or advisor unless Bear Stearns has obtained the prior written approval of the Company to their retention.

6. In connection with Bear Stearns' engagement hereunder, the Company will furnish Bear Stearns with all information concerning the Company that Bear Stearns reasonably deems appropriate and will provide Bear Stearns with access to the Company's officers, directors, employees, appraisers, independent accountants, legal counsel and other consultants and advisors (collectively, the "Representatives"). Bear Stearns agrees that such information shall be subject to the Confidentiality Provisions attached hereto as Annex A"), which provisions are incorporated herein in their entirety and shall survive the termination of this Agreement.

7. The Company recognizes and confirms that, in providing our services pursuant to this Agreement, Bear Stearns will rely upon and assume the accuracy and completeness of all financial and other information furnished by or discussed with the Company and its Representatives or available from public sources and Bear Stearns does not assume responsibility for the accuracy or completeness of any such information. Bear Stearns will have no obligation to verify such information or to conduct any independent evaluation or appraisal of the assets or liabilities of the Company or any other party. It is understood and agreed that Bear Stearns will act under this Agreement as an independent contractor with duties solely to the Company and nothing in this Agreement or the nature of our services shall be deemed to create a fiduciary or agency relationship between Bear Stearns and the Company or its stockholders.

8. The Company agrees to the indemnification provisions attached hereto as Annex B (the "Indemnification Provisions"), which provisions are incorporated herein in their entirety and shall survive the termination of this Agreement. Other than as set forth in the Indemnification Provisions, nothing in this letter is intended to confer upon any other person (including stockholders, employees or creditors of the Company) any rights or remedies hereunder or related hereto. The Company also agrees that Bear Stearns shall not have any liability (including without limitation, liability for any losses, claims, damages, obligations, penalties, judgments, awards, liabilities, costs, expenses or disbursements) in contract, tort or otherwise to the Company, or to any person claiming through the Company, in connection with the engagement of Bear Stearns pursuant to this Agreement and the matters contemplated hereby, except where such liability is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the bad faith, gross negligence or willful misconduct of Bear Stearns.

9. This Agreement and thereby Bear Stearns' engagement hereunder may be terminated at any time by either Bear Stearns or the Company upon written notice thereof to the other party; provided, however, that if the Company shall terminate

this Agreement, Bear Stearns will continue to be entitled to the full amount of the Transaction Fee pursuant to the terms and conditions set forth in paragraph 4 in the event that any of the applicable events occur prior to the expiration of 12 months after such termination; and provided, further, that any termination of this Agreement shall not affect the Company's obligation to pay any expenses incurred as provided in paragraph 5, and any indemnity or other obligation pursuant to paragraph 8.

10. Bear Stearns is a full service securities firm, as well as providing investment banking and financial advisory services. In the course of its activities, Bear Stearns or its affiliates may hold long or short positions and may trade or otherwise effect transactions for its own account or the accounts of customers in debt or equity securities or senior debt of the Company, the Acquiree or other companies that may have interest in the Acquiree.

11. The Company represents, to the best of its knowledge, that none of (i) the Company, (ii) any person controlling or controlled by the Company and (iii) any person for whom the Company acts as an agent or nominee is (x) a country, territory, individual or entity named on the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") list, (y) a person or entity prohibited under the programs administered by OFAC ("OFAC Programs"), or (z) a country, territory, individual or entity named on another international sanctions list.

12. Notwithstanding any agreement or representation, written or oral, by either the Company or Bear Stearns in connection with the Transaction, the Company and its Representatives may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of the Transaction, and all materials of any kind (including opinions or other analyses) that are provided to it relating to such tax treatment and tax structure. As required by U.S. Treasury Regulations, we hereby inform you that (i) any discussion of federal tax issues contained or referred to in any materials prepared by Bear Stearns in connection with our engagement hereunder is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code; and (ii) such discussion is written to support the promotion or marketing of the matters addressed therein. Bear Stearns does not provide tax, legal or accounting advice. The Company will consult its own tax, legal and accounting advisors before engaging in any Transaction.

13. This Agreement embodies the entire agreement and understanding of the Company and Bear Stearns with respect to the subject matter. The provisions of this Agreement may not be modified, amended or supplemented except in writing executed by the Company and Bear Stearns.

14. The validity and interpretation of this Agreement will be governed by, and construed and enforced in accordance with, the laws of the State of New York. New York law shall also govern any claims asserted in any suit, action or proceeding arising out of or relating to this Agreement or the Indemnification

4

Provisions. The Company irrevocably (a) submits to the jurisdiction of any court of the State of New York or the United States District Court for the Southern District of the State of New York for the purpose of any suit, action, or other proceeding arising out of this Agreement, or any of the agreements or transactions contemplated hereby (each, a "Proceeding"), (b) agrees that all claims in respect of any Proceeding may be heard and determined in any such court, (c) waives, to the fullest extent permitted by law, any immunity from jurisdiction of any such court or from any legal process therein, (d) agrees not to commence any Proceeding other than in such courts and (e) waives, to the fullest extent permitted by law, any claim that such Proceeding is brought in an inconvenient forum.

15. EACH OF BEAR STEARNS AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY LAW, ON BEHALF OF ITS RESPECTIVE EQUITY HOLDERS AND CREDITORS) HEREBY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED UPON, ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY (INCLUDING, WITHOUT LIMITATION, ANY TRANSACTION).

16. This Agreement shall become effective only when a final order (the "Retention Order") satisfactory in form and substance to Bear Stearns and the Company has been issued by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") approving all aspects of this Agreement pursuant to the application for such order pursuant to Section 327 of the Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Company shall use its best efforts to promptly apply to the Bankruptcy Court for the approval pursuant to Sections 327 and 328 of the Bankruptcy Code of (A) this Agreement and (B) Bear Stearns' retention by the Company under the terms of this Agreement and subject to the standard of review provided in Section 328(a) of the Bankruptcy Code and not subject to any other standard of review under Section 330 of the Bankruptcy Code. The Company shall supply Bear Stearns with a draft of such application and any proposed order authorizing Bear Stearns' retention sufficiently in advance of the filing of such application and proposed order to enable Bear Stearns and its counsel to review and comment thereon. Bear Stearns shall have no obligation to provide further services under this Agreement unless Bear Stearns' retention under the terms of this Agreement is approved under Section 327(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to Bear Stearns in all respects. Because Bear Stearns is not being compensated on an hourly basis, but on a contingent fee basis pursuant to Section 328(a) of the Bankruptcy Code, it is agreed that Bear Stearns will not be required and will not maintain detailed time records in connection with rendering services to the Company. If Bear Stearns' engagement hereunder is approved by the Bankruptcy Court, then except as otherwise provided in the Retention Order, the Company shall pay all fees and expenses of Bear Stearns hereunder as promptly as practicable in accordance with the terms hereof. Bear Stearns must seek payment by the Company of any amounts owing on account of the Company's

indemnification, contribution and/or reimbursement obligations under this Agreement by first filing an application therefor with the Bankruptcy Court. The Company may not pay any such amount to Bear Stearns before the entry of an order by the Bankruptcy Court approving payment.

We are delighted to accept this engagement and look forward to working with you on this assignment. Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicate of this letter.

Very truly yours,

BEAR, STEARNS & CO. INC.

By: _____
Michael Constantino
Managing Director

ACCEPTED AND AGREED TO:

W. R. GRACE & CO.-CONN.

By: _____
W. Brian McGowan
Senior President, Administration

## ANNEX A
## CONFIDENTIALITY PROVISIONS

Capitalized terms used but not defined herein are used with the definitions given them in the body of the agreement dated August 19, 2005 between Bear Stearns and the Company to which this Annex A is annexed, as it may be amended from time to time (the "Agreement").

In connection with Bear Stearns' engagement by the Company under the Agreement, it will receive certain information in oral, written, electronic and other form from or on behalf of the Company concerning the Acquiree, the Business, the Company and one or more possible Transactions (the "Evaluation Material"). Evaluation Material does not include information which (a) is or becomes publicly known or enters the public domain other than as a result of disclosure by Bear Stearns in violation of this Annex A, (b) was available to Bear Stearns or its Representatives (as defined below) prior to its disclosure by the Company hereunder, (c) is or becomes available to Bear Stearns or its Representatives from a source other than the Company, provided that such source is not known by Bear Stearns to have disclosed such information in violation of an obligation of confidentiality owed to the Company or (d) has been or is subsequently independently conceived or discovered by Bear Stearns or its Representatives without recourse to information provided by or on behalf of the Company hereunder.

Bear Stearns hereby agrees that the Evaluation Material will be used by it solely in connection with possible Transactions and will be kept confidential by it; provided, however, that (a) any Evaluation Material may be disclosed to its directors, officers, employees, agents, affiliates and advisors (its "Representatives") who need to know such information in connection with the Transaction, (b) any disclosure of Evaluation Material may be made to which the Company gives its prior written consent and (c) any disclosure of Evaluation Material may be made which is required by applicable law, rule or regulation or permitted by the further provisions of this Annex A. In addition, this Annex A does not restrict the use or disclosure by any Bear Stearns research analyst of any information furnished directly by or on behalf of the Company to such analyst in connection with his work as an analyst.

If Bear Stearns or any of its Representatives is requested or required (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand or similar process) to disclose any of the Evaluation Material, or if such disclosure is needed in connection with the defense of any action, suit, or investigation brought against Bear Stearns, it will, where permitted under applicable law, rule or regulation, provide you with notice of such request or requirement so that you may seek an appropriate protective order and/or waive its compliance with the terms of this Annex A. If, in the absence of a protective order or the receipt of a waiver hereunder, Bear Stearns or any of its Representatives is nonetheless obliged to disclose

any Evaluation Material, Bear Stearns and its Representatives may disclose such Evaluation Material without liability hereunder. In addition, Bear Stearns and its Representatives may disclose Evaluation Material in the course of inspections, examinations or inquiries by federal or state regulatory agencies, self-regulatory organizations and ratings agencies that have requested or required the inspection of records that contain the Evaluation Material, provided that Bear Stearns will advise the entity to which such disclosure is made of the confidential nature of the Evaluation Material and will exercise reasonable efforts to obtain reliable assurances that confidential treatment will be accorded to such Evaluation Material.

Upon the request of the Company, Bear Stearns shall promptly redeliver to the Company or destroy all Evaluation Material furnished to Bear Stearns hereunder and all documents in its possession or control containing or based on Evaluation Material; provided, however, that, subject to the terms of this Annex A, Bear Stearns may retain one archival copy of the Evaluation Material for its files, together with such copies of communications and other records relating to the Transaction as Bear Stearns are required to retain for legal and compliance purposes by its record retention policies or by applicable law, rule or regulation.

Bear Stearns are aware that, under certain circumstances, applicable securities laws may prohibit a person who has received from an issuer material, non-public information from purchasing or selling securities of such issuer or from communicating such information to any other person under circumstances in which it is reasonably foreseeable that such other person is likely to purchase or sell such securities.

To the extent required by applicable law or regulation, notwithstanding any agreement or representation, written or oral, by either the Company or Bear Stearns in connection with the Transaction, each of the Company and Bear Stearns (and their respective Representatives) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure the Transaction, and all materials of any kind (including opinions or other analyses) that are provided to it relating to such tax treatment and tax structure provided, however, that unless otherwise permitted by the terms of this Annex A, such disclosure may not be made until the earlier of (x) the date of the public announcement of discussions relating to the Transaction, (y) the date of the public announcement of the Transaction and (z) the date of execution of an agreement to enter into the Transaction. For purposes of this paragraph, it is understood and agreed that such tax treatment and tax structure do not include (i) the names of the parties, (ii) specific pricing information or the amount of any fees, expenses, rates or payments arising in connection with the Transaction, and (iii) financial and other projections and any firm-specific or industry analysis.

Without prejudice to any rights and remedies otherwise available at law or in equity, you shall be entitled to equitable relief by way of injunction if Bear Stearns or any of its Representatives breach or threaten to breach any of the terms of this Annex A.

# ANNEX B
# INDEMNIFICATION PROVISIONS

The Company agrees to indemnify and hold harmless Bear Stearns, to the fullest extent permitted by law, from and against any and all losses, claims, damages, obligations, assessments, penalties, judgments, awards, and other liabilities (collectively, "Liabilities"), and will fully reimburse Bear Stearns for any and all reasonable fees, costs, expenses and disbursements (collectively, "Expenses"), as and when incurred, of investigating, preparing or defending any claim, action, suit, proceeding or investigation, whether or not in connection with pending or threatened litigation or arbitration, and whether or not Bear Stearns is a party (collectively, "Actions") (including any and all legal and other Expenses in giving testimony or furnishing documents in response to a subpoena or otherwise), arising out of or in connection with advice or services rendered or to be rendered by Bear Stearns pursuant to the agreement dated August 19, 2005 between Bear Stearns and the Company, as it may be amended from time to time (the "Agreement"), the transactions contemplated hereby or Bear Stearns' actions or inactions in connection with any such advice, services or transactions; provided, however, such indemnity agreement shall not apply to any portion of any such Liability or Expense that is found in a final judgment by a court of competent jurisdiction to have resulted primarily or directly from the bad faith, gross negligence or willful misconduct of Bear Stearns. These Indemnification Provisions shall be in addition to any liability which the Company may otherwise have to Bear Stearns or the persons indemnified below in this sentence and shall extend to the following: The Bear Stearns Companies Inc., Bear, Stearns & Co. Inc., their respective affiliated entities, directors, officers, employees, legal counsel, agents and controlling persons (within the meaning of the federal securities laws). All references to Bear Stearns in these Indemnification Provisions shall be understood to include any and all of the foregoing. Capitalized terms used herein without definition shall have the meanings ascribed thereto in the Agreement.

If any Action is threatened or commenced, as to which Bear Stearns proposes to demand indemnification, it shall notify the Company with reasonable promptness; provided, however, that any failure by Bear Stearns to notify the Company shall not relieve the Company from its obligations hereunder except to the extent that such failure materially impairs the Company's ability to contest such Action. If the Company so elects or is requested by Bear Stearns, the Company may assume the defense of the Action, including the employment of counsel (which may be counsel to the Company) reasonably satisfactory to Bear Stearns and the payment of the Expenses of such counsel. Bear Stearns shall in any event have the right to retain separate counsel of its own choice ("Bear Stearns Counsel") to represent it in any such Action and to participate in the defense thereof, but the fees and expenses of such separate counsel shall be at the sole expense of Bear Stearns unless (a) the employment thereof has been expressly authorized in writing by the Company, (b) the Company has failed to assume the defense of any such Action, and to retain counsel to the Company, with reasonable promptness following receipt of Bear Stearns' notice pursuant to the first sentence of this paragraph, or (c) the parties named (or impleaded), or threatened to

be named (or impleaded), in such Action include both the Company and Bear Stearns and Bear Stearns has been advised by its counsel that Bear Stearns may have legal defenses available to it that are different from or in addition to those available to the Company; provided that the Company shall not in such event be responsible hereunder for the fees and expenses of more than one firm of separate counsel in connection with any Action in the same jurisdiction, except that the Company shall also be responsible for the fees and expenses of a single firm of supervisory counsel with respect to Actions in more than one jurisdiction (which firm may also serve as local counsel in one or more jurisdictions), if the engagement of a firm for such purpose is reasonably warranted by the circumstances. In any of the circumstances described in (a), (b) and (c) above, the Company shall pay the reasonable Expenses of Bear Stearns Counsel reasonably acceptable to the Company and, in any such event, counsel to the Company and Bear Stearns Counsel shall each, to the extent consistent with its professional responsibilities, cooperate with the other and with the other's client. The Company shall be liable for any settlement by Bear Stearns of any claim against Bear Stearns made with the Company's written consent, which consent shall not be unreasonably withheld. The Company shall not, without the prior written consent of Bear Stearns, settle or compromise any claim, or permit a default or consent to the entry of any judgment, in any Action in respect of which indemnification may be sought hereunder, which consent shall not be withheld so long as the following conditions are met: such settlement, compromise, or judgment (i) includes an unconditional release of Bear Stearns from all liability arising out of such Action and (ii) does not include a statement as to or an admission of fault, culpability or failure to act, by or on behalf of Bear Stearns.

In order to provide for just and equitable contribution, if a claim for indemnification pursuant to these Indemnification Provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification in such case, then the Company, on the one hand, and Bear Stearns, on the other hand, shall contribute to the Liabilities and Expenses to which the indemnified persons may be subject in accordance with the relative benefits received by the Company, on the one hand, and Bear Stearns, on the other hand, and also the relative fault of the Company, on the one hand, and Bear Stearns, on the other hand, in connection with the statements, acts or omissions which resulted in such Liabilities and Expenses and the relevant equitable considerations shall also be considered. Notwithstanding the foregoing, Bear Stearns shall not be obligated to contribute any amount pursuant to this paragraph that exceeds the amount of fees previously received by Bear Stearns pursuant to the Agreement.

If before the earlier of (i) the entry of an order confirming a chapter 11 plan or plans in the Company's chapter 11 cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing the chapter 11 cases, Bear Stearns believes that it is entitled to the payment of any amounts by the Company on account of the Company's indemnification, contribution and/or reimbursement obligations under this Agreement, including without limitation, the advancement of defense costs, Bear Stearns must file an application therefore with the Bankruptcy Court, and the Company may not pay

any such amount to Bear Stearns before the entry of an order by the Bankruptcy Court approving payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Bear Stearns for indemnification, contribution or reimbursement and not to limit the duration of the Company's obligation to indemnify Bear Stearns.

Neither termination nor completion of the engagement of Bear Stearns referred to above shall affect these Indemnification Provisions which shall remain operative and in full force and effect.