IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., <u>et al.</u>,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**Objection Deadline: October 28, 2005 at 4:00 p.m.**
**Hearing Date: November 14, 2005 at 12:00 p.m.**

## MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR ENTRY OF AN ORDER AUTHORIZING SETTLEMENT OF CERTAIN CLAIMS PURSUANT TO FED. R. BANKR. P. 9019 AND GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the

"Debtors") hereby move this Court, pursuant to sections 105 and 363 of title 11 of the United

States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code") and Rule 9019 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an order approving the

terms of the settlement of certain claims (the "Settlement") of Bank of America, N.A. ("BofA")

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

and granting certain related relief.  In support of this motion (the "Motion"), the Debtors

respectfully represent as follows:

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  Venue of these cases and of this matter in this district is proper pursuant to 28 U.S.C.

§§ 1408 and 1409.

## Background

1.      On April 2, 2001 (the "Petition Date"), the Debtors, including W. R.

Grace & Co. ("Grace") and W. R. Grace & Co. - Conn. ("Grace-Conn"), filed voluntary petitions

for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the

District of Delaware (the "Bankruptcy Court").

2.      Prior to the Petition Date, BofA issued three standby letters of credit for

the account of Grace-Conn (collectively, the "Letters of Credit") as collateral for certain

insurance transactions and surety bonds issued in favor of the Debtors, as follows:

| Letter of Credit Number | Face Amount | Issuance Date | Expiry Date[2] |
|---|---|---|---|
| 7404289 | $10,439,830 | 10/17/00 | 10/17/05 |
| 7404163 | $ 6,000,000 | 09/15/00 | 09/15/05 |
| 7403968 | $ 2,190,000 | 07/30/00 | 07/31/06 |

Except as specifically set forth below with regard to the Drawn Amounts (defined below), as of

the date of this Motion, each Letter of Credit remains outstanding in its full amount.

---

[2]  Each Letter of Credit has a provision concerning the automatic extension of the Expiry Date and each shall extend automatically in accordance with such language unless a timely and appropriate notice is given by BofA.  As of the date of this Motion, no such notice has been given and nothing herein shall be deemed to alter the requirements and conditions of such notices.

2

3.      On or about June 6, 2002, National Union Fire Insurance Company of

Pittsburgh, PA ("National Union"), as beneficiary under Letter of Credit number 7404289 (the

"First LOC"), drew down the First LOC in the amount of $9,729,720 (the "First Drawn

Amount"). Thereafter, on or about February 10, 2003, National Union, as beneficiary under

Letter of Credit number 7403968 (the "Second LOC"), drew down the Second LOC in the

amount of $250,000 (the "Second Drawn Amount," and together with the First Drawn Amount,

the "Drawn Amounts"). Finally, by order dated October 24, 2002 [Docket No. 2865], BofA was

authorized to, and did, setoff $200,000 (the "Setoff Amount") held by BofA in a depository

account against the amounts due to BofA as a result of National Union's draw upon the First

LOC.

4.      On or about March 27, 2003, National Union filed proofs of claim

numbers 00009553 and 00009554 (collectively, the "National Union Surety Proofs of Claim")

against Debtors Grace and Grace-Conn, respectively, each of which asserts a claim secured by,

inter alia, the First LOC and the Second LOC, in the amount of $46,971,764 plus unliquidated

amounts ("National Union's Surety Claims"). Additionally, on or about March 31, 2003,

National Union on its own behalf and on behalf of certain other related insurance companies

filed proofs of claim numbers 00013925 to 00013930 (collectively, the "National Union Insurer

Proofs of Claim") against Debtor Grace and five other of the Debtors in these jointly

administered cases, which assert claims secured by, inter alia, the Second LOC, in the amount of

$75,623 plus unliquidated amounts.

5.      The National Union Surety Proofs of Claim and the National Union

Insurer Proofs of Claim (together the "National Union Proofs of Claim") do not reflect the

3

application of the amounts drawn under the First LOC and the Second LOC. As a result of

National Union's draw upon the First LOC and the Second LOC, BofA holds a liquidated claim

against Grace-Conn in the Drawn Amounts less the Setoff Amount (i.e., $9,779,720) (the "BofA

Allowed Claim Amount"), which claim is neither contingent, unliquidated nor disputed. BofA

also holds a claim against Grace-Conn with respect to the undrawn amount of each of the

Letters of Credit (collectively, the "Outstanding Letters of Credit"), which claim is contingent

and unliquidated, but not disputed.

> 6.      Following extensive arm's length negotiations, the Parties have reached a

settlement that provides for the resolution and allowance of the BofA Allowed Claim Amount

and BofA's contingent, unliquidated claim arising from the Outstanding Letters of Credit. This

Motion seeks approval of the Settlement. A true and correct copy of the Settlement is attached

hereto as Exhibit A. The Debtors believe that the Settlement is in the best interests of their

estates.

### The Settlement

> 7.      The salient terms of the Settlement are as follows:[3]

- **BofA Allowed Claim**: BofA shall have an allowed, unsecured, nonpriority claim against Grace-Conn in the amount of $9,779,720, representing the Drawn Amounts under the First LOC and the Second LOC, less the Setoff Amount (the "BofA Allowed Claim").

- **BofA Contingent Claim**: BofA shall also have a contingent, unsecured, nonpriority claim against Grace-Conn in the amount of $8,850,110, representing the undrawn amounts under the Outstanding Letters of Credit (the "BofA Contingent Claim"). In the event that BofA is required to satisfy the claim of any beneficiary under any of the Outstanding Letters of Credit subsequent to the date of the Settlement, (i) that portion of the BofA

---

[3]  This summary and the terms and conditions of the Settlement described in this Motion are qualified in their entirety by the terms and conditions of the Settlement. Capitalized terms used in the summary but not defined therein shall have the meaning ascribed to them in the Settlement.

4

Contingent Claim representing the total amount drawn under the Outstanding Letters of Credit shall become an allowed, unsecured, nonpriority claim against Grace-Conn without further action by any party (the "BofA Further Allowed Claim") and (ii) the outstanding amount of the BofA Contingent Claim shall be reduced in an amount equal to the BofA Further Allowed Claim.[4]

- **Fees, Commissions and/or Other Expenses**:  In the event BofA incurs fees, commissions and/or other expenses subsequent to the date of the Settlement in connection with BofA's satisfaction of any claim under any of the Outstanding Letters of Credit, BofA shall have thirty (30) days from the date of payment under such Outstanding Letter of Credit to file a proof of claim with respect to such fees, commissions and/or expenses.

- **Reservation of Rights**:  The Debtors reserve their rights to object to the National Union Proofs of Claim on any basis whatsoever including, without limitation, the grounds that such claims are duplicative of the BofA Allowed Claims or any BofA Further Allowed Claim.

### Request for Approval of the Settlement

8.    By this Motion, the Debtors seek authority, pursuant to sections 105 and

363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), to enter into the Settlement and

thereby settle and resolve all issues pertaining to the Letters of Credit, the Drawn Amounts, the

BofA Allowed Claim, the BofA Further Allowed Claim and such other claims and disputes as

may be set forth in the Settlement.

**A.    Section 363(b) of the Bankruptcy Code**

9.    Bankruptcy Code section 363(b) provides, in relevant part, that a debtor

"after notice and hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate." 11 U.S.C. § 363(b)(1).  The standard for approval of the sale and use of

---

[4]  For example, if BofA was required to pay $5,500,000 to the beneficiary of Outstanding Letter of Credit number 7404163, the BofA Further Allowed Claim would be $5,500,000 and the BofA Contingent Claim would be reduced to $3,350,110 (representing $8,850,110 less $5,500,000).  If BofA thereafter was required to pay an additional $1,000,000 to National Union under the Second LOC, the BofA Further Allowed Claim would be increased to $6,500,000 (representing the collective amounts drawn under both Outstanding Letters of Credit) and the BofA Contingent Claim would be further reduced to $2,350,110 (representing $3,350,110 less $1,000,000).

5

property of the estate under section 363(b) in this Circuit is whether the debtor can demonstrate a sound business justification for the proposed transaction. Dai-ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions.") (citing to Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (setting forth the "sound business purpose" test in the context of a sale of assets under § 363(b)); In re Stroud Food, 163 B.R. 730, 732 (Bankr. M.D. Pa. 1993); In re Delaware & Hudson R.R. Co., 124 B.R. 169, 175-76 (D. Del. 1991) (adopting Lionel in this District in the context of a sale of assets).

10.     The business judgment standard requires that the Court approve the debtor's business decision unless that judgment is the product of bad faith, whim, or caprice. See Lubrizol Enterprises v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.), 756 F.2d 1043, 1047 (4th Cir. 1985), cert. denied, 475 U.S. 1057 (1986). Courts have considered four factors in determining whether a sound business justification exists:  (i) whether a sound business reason exists for the proposed transaction; (ii) whether fair and reasonable consideration is provided; (iii) whether the transaction has been proposed and negotiated in good faith; and (iv) whether adequate and reasonable notice is provided. Lionel, 722 F.2d at 1071 (setting forth the "sound business purpose" test); In re Abbotts Dairies, 788 F.2d 143, 145-47 (3d Cir. 1986)(implicitly adopting the articulated business justification test of Lionel and adding the "good faith" requirement); In re Delaware & Hudson R.R. Co., 124 B.R. at 176 (adopting Lionel

6

in this District). The terms of the Settlement meet each of these requirements, as demonstrated below.

**B.    Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019(a)**

11.    Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Bankruptcy Rule 9019(a) provides in pertinent part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Before approving a settlement under Bankruptcy Rule 9019, a court must determine that the proposed settlement is in the best interests of the debtor's estate. See Myers v. Martin (In re Martin), 91 F.3d 389, 394 (3d Cir. 1996); In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) ("The ultimate inquiry is whether 'the compromise is fair, reasonable, and in the interest of the estate.'"). To reach this determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. See Martin, 91 F.3d at 393.

12.    The standard by which courts should evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Id.; see also Depositor v. Mary M. Holloway Found., 36 F.3d 582, 587 (7th Cir. 1994) (affirming an order approving a compromise and settlement of claims against the estate where it was "unlikely" that the debtor would succeed on the claim, litigation of the claims would involve considerable

7

expense, and the claimant would withdraw all claims upon approval of the settlement).

Settlements should only be rejected if they fall "below the lowest point in the range of

reasonableness." Cosoff v. Rodman (In re W. T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983)

(citing Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972)).

**C.      Application of Standards for Approval of a Settlement to the Facts of This Case**

13.      The standards set forth above are plainly met in this case. The Settlement

will allow the Debtors to resolve any disputes that currently exist or may in the future arise with

respect to claims or motions filed or to be filed by BofA relating to the BofA Allowed Claim

Amount, without further litigation or expense. This resolution includes, among other things, the

liquidation and allowance of the BofA Allowed Claim and the BofA Further Allowed Claim. To

the extent disposition of any such claims (or motions for the allowance of such claims) through

contested matters would result in increased expenditures, both in terms of human and financial

resources, the savings to the Debtors' estates resulting from this resolution inures to the benefit

of all of the Debtors' creditors and, therefore, are in the best interest of the Debtors and their

estates.

14.      In addition, the consideration being given to BofA -- allowance of the

BofA Allowed Claim and the BofA Further Allowed Claim -- clearly is reasonable under the

circumstances. First, the Settlement liquidates and minimizes the estate funds the Debtors must

expend to satisfy any claims asserted by BofA, to the benefit of all parties in interest. Moreover,

the amounts and priority of the BofA Allowed Claim and BofA Further Allowed Claim are not in

dispute, such that the Settlement does not afford BofA more than it would otherwise receive

through the claims resolution process. Finally, the Debtors have reserved the right to address the

8

merits of the National Union Proofs of Claim as and when necessary. The Debtors have conferred with National Union regarding the terms of the Settlement and are advised that National Union has no objection thereto.

15.     For all of the foregoing reasons, the Debtors submit that the Settlement is fair and reasonable and in the best interest of the Debtors, their creditors and their estates, and thus the Debtors should be authorized to enter into the Settlement.

### Notice

16.     Notice of this Motion will be provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Official Committee of Unsecured Creditors; (iii) counsel to BofA, (iv) counsel to National Union and (v) all parties having requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice need be given.

17.     No previous motion for the relief sought herein has been made to this or any other Court.

9

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto as Exhibit "B," approving the terms of the Settlement and granting such other and further relief as the Court may deem just and proper.

Dated: October 10, 2005

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Lori Sinanyan
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES &
WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

10