IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al. | ) | |
| | ) | Case No. 01–1139 (JKF) |
| Debtors, | ) | |
| | ) | (Jointly Administered) |

**RESPONSE OF CREDITOR TRUMBULL MEMORIAL HOSPITAL
(CLAIM # 7028)
TO DEBTOR'S FIFTEENTH OMNIBUS OBJECTION (SUBSTANTIVE)
TO ASBESTOS PROPERTY DAMAGE CLAIMS**

COMES NOW Asbestos Property Damage Claimant Trumbull Memorial Hospital, Claim

Number 7028 (hereafter "Trumbull") and offers this response to Debtor's Fifteenth Omnibus

Objection (Substantive) to Asbestos Property Damage Claims.

1.     Trumbull Memorial Hospital is the owner of a hospital building located in

Warren, Ohio.  The contact person is Steven E. Crick, Humphrey, Farrington & McClain, P.C.,

221 West Lexington, Suite 400, P.O. Box 400, Independence, Missouri 64051, Telephone: (816)

836-5050, Telecopier: (816) 836-8966.

In response to specifically lodged objections, Trumbull states as follows:

**I.     RESPONSE TO DEBTOR'S OBJECTION: "EXHIBIT C-3(F) CLAIMS
ACCOMPANIED BY BULK SAMPLING DATA WHICH IS
INCONSISTENT, OR WHICH IS INSUFFICIENT TO DETERMINE
WHETHER INCONSISTENT WITH A GRACE PRODUCT"**

Debtor objected that bulk samples produced are inconsistent with a Grace product.  This

objection ignores the overwhelming evidence produced.  Trumbull was party to an asbestos

1

property damage action against Debtor in Cuyahoga County, Ohio captioned The Ohio Hospital

Association, et al. v. Armstrong World Industries, Inc., et al., Case No. 187471 (Ct. Common

Pleas, Cuyahoga County, Ohio). Exh. 4-B to Claim Form. Trumbull produced to Debtor during

that action copies of actual invoices reflecting the sale and delivery of Debtor's product

Monokote MK3 to the Trumbull Memorial Hospital. Exh. C-16b to the Claim Form. Debtor

had previously produced those records to counsel for Trumbull in other litigation. Debtor

admitted that the records were ancient documents or business records as a part of that litigation.

Id. (filed herewith for convenience as Exh. 1) and Exh. 2 attached at pp. 35-37. There is no

better proof than the invoices themselves. Further, constituent analysis was performed by

Materials Analytical Services ("MAS"). Exh. C-18 attached to the Claim Form. Dr. William

Longo of MAS performed an extensive analysis to determine the constituents and compared

them to the formulae of Grace and other comparable fireproofing manufacturers and gave the

opinion that the samples at Trumbull Memorial Hospital matched Monokote MK3.

Claimant produced other bulk reports as requested by the Debtor. However, those

samples were analyzed to ascertain the presence of asbestos, not to determine with precision the

constituents for product identification comparison. Claimant has demonstrated that the product

is Monokote MK3.

## II.    RESPONSE TO DEBTOR'S OBJECTION: "CLAIMS BARRED BY STATUTES OF LIMITATIONS (ACTUAL NOTICE)"

Debtor claims that the Trumbull Memorial Hospital claim was filed after the statute of

limitations had expired. That objection should be overruled.

The Trumbull claim is controlled by Ohio law and under Ohio law the claim is not

barred. In Ohio, the defendant has the burden of proving its affirmative defenses. Evans v.

<u>Southern Ohio Medical Center</u>, 103 Ohio App.3d 250, 659 N.E.2d 326 (Ct. App. 1995). The Ohio Supreme Court has already considered the issue of accrual of an action for asbestos property damage and established the standard of proof for assertion of the statute of limitations affirmative defense. <u>NCR v. U.S. Mineral Products Co.</u>, 72 Ohio St.3d 269 (1995). Recognizing that it would be unconstitutional to commence a limitations period before a cause of action matured to the point where it could survive a motion to dismiss, the Ohio Supreme Court rejected the "mere presence" of asbestos test in favor of the proposition that the condition of the asbestos determines if and when an injury occurs. <u>Id</u>. The Supreme Court held that "a cause of action for asbestos removal accrues when the plaintiff discovers or in the exercise of reasonable diligence should have discovered that the presence of asbestos constitutes a hazard requiring abatement. 'Hazard requiring abatement' means that the premises are contaminated by the asbestos to the extent that a potential health hazard to occupants exists." <u>Id</u>. at 273.

Debtor must prove that, before the statute of limitations date, the Monokote MK3 fireproofing released asbestos fibers and created a hazard requiring abatement. Debtor has failed to make that burden in this court and in the state court. In this proceeding, the Debtor failed to raise any specific facts to rebut in its omnibus objection and its objection must fail. At the state court level, Debtor denied that there was a hazardous release of asbestos prior to the statute date. Exh. 1 and Exh. 2 at pp. 39, 41, 43.

Claimant's Ohio action was filed in April 1990 and using a four year statute of limitations, Debtor must establish that there was a "hazard requiring abatement" prior to April 1986. Debtor fails in that proof. However, Trumbull also pursued its claim against Debtor since the November 19, 1985 filing of the American Hospital Association-sponsored class action,

Sisters of St. Mary, et al. v. AAER Sprayed Insulation, et al.  See Exh. 4-B to the Claim Form.

Trumbull pursued that action until October 10, 1989 when the Wisconsin Supreme Court issued

its opinion upholding the denial of certification.  Trumbull then pursued its claim in Ohio state

court through its own individual action initially filed on April 3, 1990.  Id.  The statute of

limitations was tolled during the pendency of that class action.  American Pipe & Construction

Co. v. Utah, 414 U.S. 538 (1974)

> Since the imposition of a time bar would not in this circumstance promote the
> purposes of the statute of limitations, the tolling rule we establish here is
> consistent both with the procedures of Rule 23 and with the proper function of the
> limitations statute.  While criticisms of Rule 23 and its impact on federal courts
> have been both numerous and trenchant, (citations omitted) this interpretation of
> the Rule is nonetheless necessary to insure effectuation of the purposes of
> litigative efficiency and economy that the Rule in its present form was designed to
> serve.

Id. at 414 U.S. at 555-59.  Vaccariello v. Smith & Nephew Richards, Inc., 94 Ohio St.3d 380

(Ohio 2002).  As such, Debtor must prove that there was a "hazard requiring abatement" before

May 13, 1982.[1]

---

[1] The date from which the appropriate statute of limitations date must be calculated is
May 13, 1982. This date is calculated as follows:

| | |
|---|---|
| April 3, 1990 | filing of O.H.A., et al. v. Armstrong World Industries,, et al. |
| October 10, 1989 | Wisconsin Supreme Court denies Petition for Review in Sisters of St. Mary v. AAER Sprayed Insulation, et al, 449 N.W.2d 275 (October 10, 1989) (the statute ran between October 10, 1989 and April 3, 1990 a period of 174 days) |
| Nov. 19, 1985 | filing of Sisters of St. Mary class action (the statute is tolled during pendency of this action from Nov. 19, 1985 until October 10, 1989) |
| **May 13, 1982** | Operative statute date (174 days [Oct. 10, 1989 to April 3, 1990] + 3 years 190 days [May 13, 1982 to Nov. 19, 1985] = 4 years). |

Trumbull suggests that the Ohio Supreme Court would follow the sound reasoning of the Supreme Court in American Pipe. Several Ohio courts of appeals have cited American Pipe with favor in tolling cases.[2]

Trumbull admits that the statute of limitations was raised as an objection in the state court action and that the trial court did dismiss the claim on that defense and that appellate review has followed. The trial court erroneously determined that the Trumbull claim was not tolled by the filing of a national hospital class action, a class action in which Trumbull participated. Exh. 4-B to the Claim Form.

*Trumbull appealed that order and the Ohio Supreme Court now has that case in its court.* Trumbull Memorial Hospital v. W.R. Grace & Co.-Conn., Case No. 00-1030 (Ohio Supreme Court). See, Exh. 3, The Supreme Court of Ohio Case Information sheet. The Debtor's filing stayed the Ohio Supreme Court from ruling on that appeal. Prior to the filing of the bankruptcy proceeding both sides had filed appellate briefs and argued the case to the Ohio Supreme Court. Id.

Since Trumbull's appeal was stayed, the Ohio Supreme Court handed down another opinion affirming that the filing of a class action "tolls the statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a

---

[2]Class actions are authorized by Rule 23 of the Ohio Rules of Civil Procedure which is patterned after Federal Rule 23. "[S]ince the Ohio rule is identical to Fed. R. Civ. P. 23 . . . federal authority is an appropriate aid to interpretation of the Ohio rule." Marks v. C.P. Chemical Company, Inc., 31 Ohio St.3d 200, 201 (1987); Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho, 52 Ohio St.3d 56, 62 (1990); and Hamilton v. Ohio Savings Bank, 82 Ohio St.3d 67 (1998).

class action." <u>Vaccariello v. Smith & Nephew Richards, Inc.</u>, 94 Ohio St.3d 380 (Ohio 2002).

Trumbull asserts that if the stay of its claim was lifted, the Ohio Supreme Court would rule in its

favor in the pending appeal.

A.     **The Statute of Limitations May Be Tolled During the Pendency of a Class Action If the Purposes of Ohio's Statutes of Limitations Are Served.**

1.     **The filing of <u>Sisters of St. Mary</u> satisfied the purposes of the statute of limitations.**

Ohio courts recognize that class actions are an appropriate vehicle for mass tort litigation.

As the Ohio Supreme Court wrote in its 1998 opinion, <u>Cope v. Metropolitan Life Insurance</u>

<u>Company</u>, 82 Ohio St.3d 426 (1998):

> [f]requently numerous consumers are exposed to the same dubious practice by the same seller so that proof of the prevalence of the practice as to one consumer would provide proof for all. Individual actions by each of the defrauded consumers is often impracticable because the amount of individual recovery would be insufficient to justify bringing a separate action; thus an unscrupulous seller retains the benefit of its wrongful conduct. A class action by consumers produces several salutary by-products, including a therapeutic effect upon those sellers who indulge in fraudulent practices, aid to legitimate business enterprises by curtailing illegitimate competition, and avoidance to the judicial process of the burden of multiple litigation involving identical claims. The benefit to the parties and the courts would, in many circumstances, be substantial.

<u>Id.</u> at 429.

The filing of a class action satisfies the purposes of the statute of limitations because it

notifies the defendant of the pending claims and provides a description of the class members.

See <u>American Pipe</u>, 414 U.S. at 555. Defendants are not prejudiced by defending a lawsuit

against a plaintiff who was a putative class member in the original class action, when it has had

an opportunity to mount a meaningful defense to the class action lawsuit. See <u>Id.</u>; <u>Crown Cork</u>

& Seal, 462 U.S. at 353 ("Tolling the statute of limitations thus creates no potential for unfair surprise, regardless of the method class members choose to enforce their rights upon denial of class certification.").

In this instance, Debtor W.R. Grace's interests were fully protected. It was apprised of the scope of the class and of Trumbull's membership in the class. W.R. Grace possessed sales invoices recording the sale and delivery of its product to Trumbull's building.[3] It also had a list of class members, including Trumbull, who claimed asbestos property damage against W.R. Grace's asbestos supplier, Johns Manville. W.R. Grace was already a defendant in other national class actions which were, or would become, certified (In re: Asbestos School Litigation, 104 F.R.D. 422 (1984); Prince George Center, Inc. v. United States Gypsum Company, et al.,704 A.2d 141 (Pa. 1997), cert denied, No. 98-1695, 120 S. Ct. 41 (Oct. 4, 1999)) and, being familiar with the class action litigation, did not oppose certification of the Sisters of St. Mary hospital class.

### 2.    Trumbull relied on the pendency of Sisters of St. Mary to protect its interests.

Trumbull monitored and relied upon the Sisters of St. Mary class action to protect its interests. Once that action failed, the present action was filed against W.R. Grace. Mr. Lewis Hutchison, Trumbull's asbestos coordinator, testified as follows:

Q.    You were involved in the Sisters case?

A.    Right, through the American Hospital Association.

---

[3]The Ohio Supreme Court has previously noted that asbestos claims are resolved primarily with the documentary evidence required to be kept in the ordinary course of business. O'Stricker, 4 Ohio St.3d at 89.

7

\* \* \*

Q.     Who was monitoring that for the hospital?

A.     Primarily Mr. Morris.

Q.     And when did your involvement with this case start?

A.     At the end of the <u>Sisters of Humility</u> (sic) case, whenever that -- right after that
       ended, we were involved in this case.

Trumbull cannot be said to have "slept on its rights" in relying on <u>Sisters of St. Mary</u> to protect

its interests.

> **3.    Without class action tolling, putative class members have no
>        assurance of safeguards provided for their protection in the event that
>        a class is not certified.**

Since the United States Supreme Court's 1974 decision in <u>American Pipe & Construction</u>

<u>Co.</u>, numerous state courts around the country including Ohio have held that the filing of a class

action complaint tolls the applicable statute of limitations. <u>Vaccariello v. Smith & Nephew</u>

<u>Richards, Inc.</u>, 94 Ohio St.3d 380 (Ohio 2002).   To hold to the contrary:

> . . . would frustrate the principal function of a class suit, because then the sole
> means by which members of the class could assure their participation in the
> judgment if notice of the class suit did reach them until after the running of the
> limitation period would be to file earlier individual motions to join or intervene as
> parties–precisely the multiplicity of activity which Rule 23 was designed to avoid
> where a class action is found 'superior to other available methods for the fair and
> efficient adjudication of the controversy.'

<u>American Pipe</u>, 414 U.S. at 551.

Class actions are an equitable procedure that allow a representative to prosecute an action

on behalf of a similarly situated body and to bind the members of the body to any judgment or

decree entered in the action.  <u>See</u> <u>Planned Parenthood Assn. of Cincinnati, Inc. v. Project</u>

<u>Jericho</u>, 52 Ohio St.3d 56, 62 (1990); <u>American Pipe</u>, 414 U.S. at 550-51.

8

The typicality and adequacy of representation requirements of the class action rule ensure that the interests of the absent class members, as well as the defendants, are protected. See Marks, 31 Ohio St.3d at 202; Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 810-11 (1985). Once these requirements have been met, the class members are allowed to "sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for [their] protection." See Phillips Petroleum, 472 U.S. at 810; see also Hamilton, 82 Ohio St.3d at 76 ("It is settled that absent class members are passive parties to a class suit and may, but need not, intervene to protect their interests therein."). Absent class members are further protected with such safeguards as the "opt-out" and notice procedures. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 172 (1974) (class action tolls the statute of limitations at least until the opt out notice is sent). Likewise, the defendant is assured of the protections of the personal jurisdiction requirements of the forum state so that a judgment will be binding on them and the absent class members. Phillips Petroleum, 472 U.S. at 808.

Without class action tolling, putative class members such as Trumbull have no assurance of the safeguards provided for their protection in the event that the class is not certified or is decertified. Their only means of protection is to intervene into the class action or to file protective suits.[4]

---

[4]Such measures can be risky for claimants. As an example, in Prince George Center, Inc. v. U.S. Gypsum Co., 704 A.2d 141 (Pa. 1997), the Pennsylvania Supreme Court held that The Prudential Insurance Company was bound by the entry of final judgment even though The Prudential had filed a separate individual suit in the United States District Court for the District of New Jersey. The court held that the separately filed lawsuit failed to constitute an effective expression of The Prudential's intention to opt out of Prince George.

A similarly inequitable result was occasioned upon an Ohio citizen by a New York court in Langford v. Devitt, 127 F.R.D. 41 (S.D. N.Y. 1989), in which an Ohio law firm which filed its

### 4.    Ohio Courts Have Applied Class Action Tolling.

Tolling has been recognized by the Ohio Supreme Court, in two published cases of the

Ohio Courts of Appeal, a federal decision applying Ohio law and in one unpublished Ohio case.

See Vaccariello v. Smith & Nephew Richards, Inc., 94 Ohio St.3d 380 (Ohio 2002); Beavercreek

Local Schools v. Basic, Inc., 71 Ohio App.3d 669; (Ohio App. 2d Dist. 1991); Columbus Board

of Educ. v. Armstrong World Industries, Inc., 89 Ohio App.3d 846, 856 (Franklin Cty. Ct. App.

1993); Day v. NLO, Inc., 798 F. Supp. 1322 (S.D. Ohio 1992); Cincinnati Board of Education v.

Armstrong World Industries, Inc., Case No. A-8405380 (Court of Common Pleas, Hamilton

Cty., Ohio 1989).

### 5.    Other Courts Have Applied the American Pipe Tolling Rule in Asbestos Class Actions.

There is also persuasive precedent from other courts around the country holding that the

filing of an asbestos property damage class action tolls the statute of limitations.  As an example,

in May v. AC&S, Inc., 812 F. Supp. 934 (E.D. Mo. 1993), the court held:

> After a thorough reading of the relevant caselaw, this Court finds that plaintiffs'
> membership in the Asbestos School Litigation class action suit did toll the
> running of the applicable statutes of limitations until such time that plaintiffs
> opted out of the class. . . .
>
> Furthermore, other courts have held that membership in the Asbestos School
> Litigation class action tolls the applicable state statute of limitations.  See,
> Independent School District No. 197 v. W.R. Grace & Co., 752 F. Supp. 286, 291
> (D. Minn.1990); West Haven School District v. Owens-Corning Fiberglas Corp.,
> 721 F. Supp. 1547, 1555 (D. Conn.1988); contra Oconomowoc Area School
> District v. U.S. Gypsum Co., Cause No. 86-CV-5939 (Wisc. Circuit Court, Dane
> County) (December 17, 1992).

own securities fraud complaint in Ohio state court, but failed to timely opt out of a New York
class action, was deemed to have settled its claims in the class action.

Id. at 938-39 (internal citations omitted).

A California court of appeals also has held that the filing of a class action complaint tolled the statute of limitations on the claims of a class member for asbestos property damage. See San Francisco Unified School Dist. v. W.R. Grace & Co.-Conn., 44 Cal. Rptr.2d 305 (1st Dist. Ct. App. 1995). There the court held:

> The federal class action for asbestos-in-building cases appears to raise the same issues that SFUSD's case does – tort causes of action raised by school districts around the country against asbestos manufacturers and sellers such as Grace, attempting to recover costs of asbestos abatement from those manufacturers and sellers rather than charging them to public taxpayers. Once the national asbestos in schools litigation had begum, Grace and other asbestos defendants were on notice that districts throughout the country would seek to recover the costs of asbestos abatement. What products were sold to which schools, the levels of asbestos in each of them, and other issues of proof were clearly at issue. Unlike Jolly, there are no individual plaintiffs whose medical histories raise differing issues that do not lend themselves to resolution in a class action. Grace urges that the number of plaintiffs in the original class militates against tolling – the federal class members raised the same claim affecting the same subject matter, and the members could be identified through public contracts for the purchase and installation of building materials containing asbestos. As we conclude that the property damage claim SFUSD raises is closer to that raised in Becker than those raised in Jolly, we reject Grace's claim that the federal class action did not give it sufficient notice of the claims that SFUSD now raises.

Id. at 317-18.

Finally, a federal court in Connecticut similarly found that the Asbestos School Litigation tolled the Connecticut statute of limitations for the plaintiff's action. See West Haven School Dist. v. Owens-Corning Fiberglass Corp., 721 F. Supp. 1547 (D. Conn. 1988). The May, San Francisco Unified School Dist. and West Haven School Dist. opinions are persuasive precedent and do not change because the claim involves a hospital and not a school.

11

**B.**     **The Statute of Limitations May Be Tolled by a Foreign Class Action because the foreign court has jurisdiction over the subject matter and the parties.**

The Ohio Supreme Court would toll Trumbull's statute of limitations even though <u>Sisters of St. Mary</u> was filed in Wisconsin.

The purposes of Ohio's statute of limitations are served by the commencement of a legally binding class action regardless of the forum in which it is filed.   This is especially true given the Ohio Supreme Court's prior holdings that the judgments and orders in class actions are binding on class members.  <u>See</u> <u>Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho</u>, 52 Ohio St.3d at 65; <u>In re: Kroger Company Shareholders Litigation</u>, 70 Ohio App.3d at 59-60. Trumbull would have been bound by an order certifying the class action.  <u>See</u> <u>e.g.</u> <u>Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho</u>, 52 Ohio St.3d at 65; <u>Prince George Center, Inc. v. U.S. Gypsum Co.</u>, 704 A.2d 141, 145 (Pa. 1997).

A final judgment on the merits in <u>Sisters of St. Mary</u> also would have been entitled to full faith and credit.  "The doctrine of full faith and credit requires the state of Ohio to give 'full faith and credit' to a final judgment or legal proceeding in any sister state."  <u>First Nat'l Supermarkets v. Merrill Lynch</u>, 104 Ohio App.3d 289, 297 (1994); <u>see also</u> <u>Romstadt v. Apple Computer, Inc.</u>, 948 F. Supp. 701, 709 (N.D. Ohio 1996) ("Therefore, a judgment entered in a class action, like any other judgment entered in a state judicial proceeding, is presumptively entitled to full faith and credit under the express terms of the Act.").  Because Wisconsin court had jurisdiction to legally bind all parties, including Trumbull, the fact that the case was filed in Wisconsin poses no bar to class action tolling in the instant case.[5]

---

[5] This result should not change merely because the <u>Sisters of St. Mary</u>'s case was not certified.  After all, both <u>American Pipe</u> and <u>Crown, Cork & Seal</u> were class actions that were

12

Other courts deciding whether cross-jurisdictional class action tolling applies have considered the following factors:

1. whether the defendant had notice of the plaintiff's claims,

2. whether those claims are substantially identical to the claims in the class action,

3. the defendant's experience in defending class actions,

4. whether the court had jurisdiction over the parties and the subject matter, and

5. whether the plaintiff had a right to reasonably rely on the pending class certification.

Cf. Staub v. Eastman Kodak Co., 726 A.2d 955 (N.J. App. 1999); May v. AC & S, Inc., 812 F. Supp. 934 (D. Mo. 1993); San Francisco Unified School Dist. v. W.R. Grace & Co.-Conn., 44 Cal. Rptr.2d 305 (Cal. App. 1995).

The Ohio Supreme Court has rejected case law that opposed "cross jurisdictional tolling."

> "In Portwood v. Ford Motor Company, 183 Ill.2d 459, 465, 233 Ill.Dec. 828, 830, 701 N.E.2d 1102, 1104 (1998) the Supreme Court of Illinois rejected cross jurisdictional tolling 'because plaintiffs from across the country may elect to file a subsequent suit in that state solely to take advantage of the generous tolling rule," thereby burdening Illinois' court system. **We are not persuaded that this is a realistic problem.**

Vaccariello v. Smith & Nephew Richards, Inc., 94 Ohio St.3d 380, 383 (Ohio 2002) (emphasis added).

Applying these factors to the instant case, Debtor had notice of Trumbull's claims, Trumbull's state court claims were substantially identical to the claims in Sisters of St. Mary, Debtor has substantial experience in defending class actions, the Wisconsin court had

---

not certified. The class action tolling rule was fashioned to cover this precise circumstance.

jurisdiction over the parties and the subject matter and Trumbull reasonably relied on the Wisconsin proceedings. These factors weigh in Trumbull's favor, and the purposes of the Ohio statute of limitations were served by the filing of the Sisters of St. Mary class action. Therefore, this Court should find that Claimant Trumbull's statute of limitations is tolled. Any holding to the contrary would frustrate the purpose of class actions and be contrary to this Court's prior class action decisions.

### III.    RESPONSE TO DEBTOR'S OBJECTION: "CLAIMS BARRED BY LACHES"

W.R. Grace has not met its burden of showing it was materially prejudiced by delay on the part of Trumbull in asserting its claim. Laches is an affirmative defense under Ohio law. Civ. Rule 8C). A showing by a defendant of mere delay on the part of a plaintiff is not enough:

> Dely in asserting a right does not of itself constitute laches, and in order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim. (Smith v. Smith, 168 Ohio St. 447 [O.O.2d 276], paragraph three of the syllabus, followed.")

Thirty-Four Corp. v. Sixty-Seven Corp. (1984), 15 Ohio St.3d 350, paragraph two of the syllabus. Copies exist of W.R. Grace's actual invoices reflecting the sale and delivery of Debtor's product Monokote MK3 to the Trumbull Memorial Hospital. Exh. C-16b to the Claim Form. W.R. Grace produced them to counsel for Trumbull in other litigation and admitted their authenticity. Exh. 1 and Exh. 2 at pp. 35-37. As the Ohio Supreme Court has noted, asbestos claims are resolved primarily with documentary evidence required to be kept in the ordinary course of business. O'Stricker v. Jim Walter Corp. (1983), 4 Ohio St.3d 84, at 89.

Trumbull has pursued its claim against Debtor since the November 19, 1985 filing of the American Hospital Association-sponsored class action Sisters of St. Mary, et al. v. AAER

14

Sprayed Insulation, et al. See Exh. 4-B to the Claim Form. W.R. Grace was already a defendant in other national asbestos property damage class actions. *infra, p. 7.* Debtor's assertion of the affirmative defense of laches is without merit and should be overruled.

## IV.    RESPONSE TO DEBTOR'S OBJECTION: "EXHIBIT E-3:  CLAIMS PROVIDING IRRELEVANT AIR SAMPLING DATA"

Trumbull is not sure how to respond to this objection.  "Ambient air sampling can be quite misleading and is not a good technique to determine the condition of asbestos-containing materials or to make determinations as to the levels of surface contamination and should not be used solely to make decisions about corrective action." Exh. 4, Report of Richard Hatfield.

Trumbull as a part of the discovery process in the underlying Ohio asbestos property damage action did produce all air samples taken up to that time at the hospital.  In addition, however, Trumbull did produce results of dust sampling which demonstrated extensive asbestos contamination in the building.  See Exhibits to Questions C-18 and C-26 attached to the Claim Form.  The dust samples included micro vac samples and passive (fallout) dust samples.  Id. Passive (fallout) dust samples are simply containers placed in the hospital in areas directly below the Monokote MK3 fireproofing which are allowed to sit for a period of time after which the containers are collected and the dust that is collected is analyzed.  Extensive quantities of asbestos fibers were found in the samples.  See Exhibits to Questions C-18 and C-26 attached to the Claim Form.  Further, experts William Ewing, CIH, Richard Hatfield and William Longo, Ph.D. gave reports and deposition testimony to counsel for Grace on this subject.  Mr. Hatfield opined that "It is my opinion that the asbestos fibers in the surface dust samples collected in the buildings originated from the asbestos-containing fireproofing materials in the buildings." Exh. 4, Report of Richard Hatfield.

15

Respectfully Submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.

KENNETH B. McCLAIN
STEVEN E. CRICK
SCOTT A. BRITTON-MEHLISCH
221 West Lexington, Suite 400
P.O. Box 400
Independence, Missouri 64051
Telephone: (816) 836-5050
Telecopier: (816) 836-8966

ROBERT E. SWEENEY CO., LPA
Mark Wintering
1500 Illuminating Building
55 Public Square
Cleveland, Ohio 44113
(216) 696-0606
ATTORNEYS FOR TRUMBULL MEMORIAL
HOSPITAL

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing was mailed via Federal Express this 20th day of October 2005 to all listed below.

Kirkland & Ellis, LLP,
Attn: Katherine Phillipis
200 E. Randolph Drive, Suite 6500
Chicago, IL 60601

Pachulski, Stang, Ziehl, Young, Jones & Weintraub P.C.
Attn: David W. Carickhoff, Jr.
919 N. Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

ATTORNEYS FOR CLAIMANT TRUMBULL
MEMORIAL HOSPITAL

16

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

OHIO HOSPITAL ASSOCIATION,            )
et al.                                )
                                      )        Case No.:  187171
           Plaintiffs,                )
                                      )
vs.                                   )        JUDGE FRANCIS TALTY
                                      )
ARMSTRONG WORLD INDUSTRIES, INC.,     )        **PLAINTIFFS' REQUESTS**
et al.                                )        **FOR ADMISSION TO**
                                      )        **DEFENDANT W.R. GRACE**
           Defendants.                )        **& CO.-CONN. (SECOND SET)**


COME NOW Plaintiffs and, pursuant to the Ohio Rules of Civil Procedure, request

Defendant  W.R. Grace & Co.-Conn. to admit the truth and genuineness of the following

statements and documents.

## I.

## DEFINITIONS

The term "you", "Grace" or "WRG" as used in these requests means this defendant, its

predecessors and subsidiaries, agents, and employees  including, inter alia, Zonolite, Division of

W.R. Grace & Co., Construction Products Division.

The term "business record" means that the document referenced qualifies as a record of

Regularly Conducted Activity under Ohio R.Evid. 803(6).

The term "ancient document" means the document qualifies as an ancient document under

Ohio R.Evid. 803(16).

The word "contaminate" as used herein, carries the same meaning as that found in

Webster's Ninth New Collegiate Dictionary (1986). The term "contaminate" means "1.(a) to soil,

**PLAINTIFF'S EXHIBIT**

1

stain, corrupt, or infect by contact or association; (b) to make inferior or impure by admixture; 2. to make unfit for use by the introduction of unwholesome or undesirable elements." The term "contamination" means "1. a process of contaminating: a state of being contaminated."

If you intend to raise any objection that a referenced document is not an original, state the reason in your response.

## II.

## REQUESTS FOR ADMISSIONS

### A.    ACCURACY OF EXHIBITS

For the Exhibits identified here below, admit that each Exhibit is a true and accurate copy of the Document(s) portrayed therein.

### B.    GENERAL REQUESTS

1.    The fireproofing product Monokote MK3 was manufactured by you during, but not limited to, the years 1959-1973.

2.    Monokote MK3 contains approximately 10% chrysotile asbestos by volume.

3.    Monokote MK3 contains approximately 10-14% chrysotile asbestos by weight.

4.    Monokote MK3 contains vermiculite.

5.    The vermiculite used in Monokote MK3 contains tremolite asbestos.

6.    The product Monokote MK3 does release asbestos fibers when it is contacted.

7.    Any disturbance of Monokote MK3 will create a hazardous condition in a building containing Monokote MK3.

8.    Any disturbance of Monokote MK3 will contaminate a building with hazardous asbestos fibers.

2

9.      Routine maintenance will cause the release of asbestos from Monokote MK-3.

10.     W.R. Grace has advised building owners that Monokote MK3 does not release asbestos fibers.

11.     You have been a member of the Safe Buildings Alliance since 1984.

12.     The Safe Buildings Alliance sent a copy of <u>Asbestos in Buildings:  What Every Building Owner Should Know</u> to each member of the American Hospital Association.

13.     The class action <u>Sisters of St. Mary v. AAER Sprayed Insulation</u>, 445 N W. 2d 723 (Wis. App. 1989), was filed on November 18, 1985.

14.     You were a defendant in the <u>Sisters of St. Mary v. AAER Sprayed Insulation</u> class action.

15.     You were in possession of all of the attached Exhibits, except Exhibit No.'s 1, 2, 3 and 9, during the pendency of the <u>Sisters of St. Mary v. AAER Sprayed Insulation</u> class action.

E.    TRUMBULL MEMORIAL HOSPITAL

1.    Trumbull Memorial Hospital, located at 1350 East Market Street, Warren, Ohio,
is owned by Trumbull Memorial Hospital.

2.    The Grace document, bearing a Customer order date of October 23, 1967 (WRG
# 30016157) attached hereto as Exhibit 26 is a business record.

3.    Exhibit 26 is an ancient document.

4.    The Grace Delivery Receipt bearing a Customer order date of December 18, 1967
attached hereto as Exhibit 27 is a business record.

5.    Exhibit 27 is an ancient document.

6.    The Grace document bearing an invoice date of March 19, 1968 attached hereto
as Exhibit 28 is a business record.

7.    Exhibit 28 is an ancient document.

8.    The Grace Invoice, Delivery Receipt, bearing a Customer order date of December
18, 1967 (WRG # 30016160) attached hereto as Exhibit 29 is a business record.

9.    Exhibit 29 is an ancient document.

10.    The Grace document bearing an invoice date of April 4, 1968 (WRG # 30018609)
attached hereto as Exhibit 30 is a business record.

11.    Exhibit 30 is an ancient document.

12.    The product Monokote MK3 was applied as a fireproofing at Trumbull Memorial
Hospital.

13.    Asbestos fibers have become released from the fireproofing at Trumbull Memorial
Hospital.

14. Trumbull Memorial Hospital is contaminated with asbestos fibers which were released from the fireproofing.

15. Prior to November 18, 1985, asbestos fibers became released from the fireproofing at Trumbull Memorial Hospital.

16. Prior to November 18, 1985, the levels of asbestos that were released from the fireproofing, contaminated the air and building at Trumbull Memorial Hospital.

17. Prior April 3, 1990, asbestos fibers became released from the fireproofing at Trumbull Memorial Hospital.

18. Prior to April 3, 1990, the levels of asbestos that were released from the fireproofing, contaminated the air and building at Trumbull Memorial Hospital.

HUMPHREY, FARRINGTON & McCLAIN, P.C.

Kenneth B. McClain  MO          #32430
Steven E. Crick     MO          #32654
P.O. Box 900
221 W. Lexington, Ste. 400
Independence, Missouri 64051
(816) 836-5050

Robert E. Sweeney Co., L.P.A.
Mark Wintering
Stephen C. Foley
Suite 1500 Illuminating Building
55 Public Square
Cleveland, OH  44113
(216) 696-0606

ATTORNEYS FOR PLAINTIFFS

<u>Certificate of Service</u>

I hereby certify that a copy of the above and foregoing Plaintiffs' Request for Admissions to Defendant W.R. Grace & Co.-Conn. (Second Set), was mailed, postage prepaid, this 17th day of May, 1996 to counsel for Defendants.

_____
Attorneys for Plaintiffs

**GRACE**

TRUCK LOADING REPORT

LOADING INSTRUCTIONS:

ORDER NO. _____

DATE LOADED __10-21-71__    A-2

TRAILER NO. ___F.R.O.C.___

NO. OF EMPTY BAGS INCL. WITH ORDER

300 Mh-3

03 9125
03 9090
700 mile

Bell P205

NOSE

EACH TIER TO BE RECORDED AND INITIALED DURING LOADING OPERATION

TOTAL _____ BAGS          CHECKED BY: _____

TIME OF DEPARTURE FROM PLANT __12:45 PM__    SHIP TO __Salem Hospital__
                                                        __Salem Ohio__

TIME OF ARRIVAL AT STOP OFF _____    STOP OFF AT _____

TIME OF DEPARTURE _____

TIME OF ARRIVAL AT DESTINATION __2:15 PM__

TIME OF DEPARTURE __3:38 PM__    CONSIGNEE REMARKS _____

TIME OF ARRIVAL AT PLANT __5:00 PM__

                                        DRIVER REMARKS _____

DRIVER _____

ZONOLITE D    ION
W. R. GRACE & CO.

BACK END

PL-3 (10M - 1/70) RBS

20042132

Exhibit    25



**ZONOLITE DIVISION**
W. R. Gr   & CO.
P.O. BOX 7093   CHICAL   ILLINOIS 60680

**GRACE**

OD-2-110-200M-3-44

4-34-155        23   23

ESR 10/23/67

08925    ZONOLITE TRUCK  MAR 1 5      ELLWOOD CITY

EASLEY & RIVERS

**SOLD TO**

**SHIP TO**

SAME
C/O TRUMBULL COUNTY HOSP.
WARREN, OHIO

| DESCRIPTION | | UNIT PRICE | AMOUNT |
|---|---|---|---|
| BAGS INSULATING FILL | ( -01-01-1-02) | | |
| BAGS ECONO-FILL | ( -01-02-1-04) | | |
| BAGS MASONRY FILL | ( -04-01-1-02) | | |
| BAGS PLAIN CONCRETE AGGREGATE | ( -02-02-1-02) | | |
| BAGS STABILIZED CONCRETE AGGREGATE | ( -02-01-1-02) | | |
| BAGS PLASTER AGGREGATE | ( -03-01-1-02) | | |
| BAGS INDUSTRIAL INSULATION | ( -07-01-1-02) | | |
| BAGS PERL-AG PLASTER | (35-09-02-1-02) | | |
| BAGS PERLITE CONCRETE AGGREGATE | (35-09-01-1-02) | | |
| BAGS ZONOLITE MONO-KOTE MK-3 | (41-06-01-1-19) | $1.90 | |

475

**TAX EXEMPT**
**FREIGHT:**

Wed 3-13
8-10 AM

☒ $_____ CASH DISCOUNT ALLOWED IF PAID BY_____
☐ NO CASH DISCOUNT - NET 30 DAYS

PLEASE MAKE ALL REMITTANCES PAYABLE TO ZONOLITE DIVISION, W. R. GRACE & CO.

Promised
3-7-68

30016157

Exhibit 26

**GRACE**

**ZONOLITE DIVISION**
W.R. GRACE & CO.

PHONE 12/18/67

4-34-155    /23

08825    ZONOLITE TRUCK    MAR 1 3 1968    ELLWOOD CITY

S    EASLEY & RIVERS
2612 MOSSIDE BLVD.
MONROEVILLE, PA.

S    SAME
C/O TRUMBULL COUNTY HOSPITAL
WARREN, OHIO

| QUANTITY ORDERED | QUANTITY SHIPPED | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| | | BAGS ATTIC INSULATION | | |
| | | BAGS MASONRY FILL | | |
| | | BAGS PLAIN CONCRETE AGGREGATE | | |
| | | BAGS STABILIZED CONCRETE AGGREGATE | | |
| | | BAGS PLASTER AGGREGATE | | |
| | | BAGS INDUSTRIAL INSULATION | | |
| | | BAGS PERL-AG PLASTER | | |
| | | BAGS PERLITE CONCRETE AGGREGATE | | |
| 4 TL | 375 380 | BAGS ZONOLITE MONO-KOTE MK-3 | 1.90 | 722.00 |

**DETENTION OF VEHICLES**
Free time allowed for unloading of freight: trailer
load 2 hrs., ½ trailer load 1 hr. Delays beyond free
time provided above will be charged at the rate of
$4 per hr.

(13.78)

TAX EXEMPT
Freight #32.00

RECEIVED BY_____

Arrival:    Departure:    Per:

**DELIVERY RECEIPT**



MDQ002

Exhibit    27

| GRACE | **ZONOLITE DIVISION** |
|---|---|
|  | W. R. GRACE & CO. |
|  | P.O. BOX 7093   CHICAGO, ILLINC.3 50680 |

| INVOICE DATE | INVOICE NO. | LOCATION | PLANT | DIST. | TERRITORY | OUR ORDER NO. | CUST. ORDER NO. AND DATE |
|---|---|---|---|---|---|---|---|
| 3-19-68 | 23-121 | 4-34-158 | 241 | 241 | 412 |  | Ph 12-18-67 |

| ED VIA | | | SHIPPED FROM | CAR NO. | BILL OF LADING NO | CHECKED |
|---|---|---|---|---|---|---|
| ..J25  Zonolite Truck  3-13-68 | | | Ellwood City | | | |

**SOLD TO:** Easley & Rivers
2612 Nosside Blvd.
Nearneville, Pa.

**SHIP TO:** Same
c/o Trumbull County Hospital
Warren, Ohio

| QUANTITY ORDERED | QUANTITY SHIPPED | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
|  | 380 | MONO KOTE MK-3  41-06-01-1-19 | 1.90 | 722.80 |

Exempt

[X] $ 13.78 CASH DISCOUNT ALLOWED IF PAID BY 3-29-68
[ ] NO CASH DISCOUNT · NET 30 DAYS

**PLEASE MAKE ALL REMITTANCES PAYABLE TO ZONOLITE DIVISION, W. R. GRACE & CO.**

Exhibit 28

3 (15M-6-67) EPC

# CUSTOMER BILLING INFORMATION

**GRACE**

INVOICE
ZONOLITE DIVISION
W.R. GRACE & CO.
P.O. BOX 7093 CHICAGO ILLINOIS 40680

| INVOICE DATE | INVOICE NO. | LOCATION 4-34-155 | PLANT 23 | DIST 23 | TERRITORY 34 | OUR ORDER NO. 002 | CUST. ORDER NO. AND DATE PHONE 12/18/67 |
|---|---|---|---|---|---|---|---|
| SHIPPED VIA 08925 | ZONOLITE TRUCK | | SHIPPED FROM ELLWOOD CITY | | CAR NO. | | BILL OF LADING NO. / CHECKED |

S

EASLEY & RIVERS
2612 MOSSIDE BLVD.
MONROEVILLE, PA. 15145

S

SAME
C/O TRUMBULL COUNTY MEMORIAL
HOSPITAL
WARREN, OHIO

| QUANTITY ORDERED | QUANTITY SHIPPED | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| | | BAGS ATTIC INSULATION | | |
| | | BAGS MASONRY FILL | | |
| | | BAGS PLAIN CONCRETE AGGREGATE | | |
| | | BAGS STABILIZED CONCRETE AGGREGATE | | |
| | | BAGS PLASTER AGGREGATE | | 8.91 |
| | | BAGS INDUSTRIAL INSULATION | | |
| | | BAGS PERL-AG PLASTER | | |
| | | BAGS PERLITE CONCRETE AGGREGATE | | |
| 250 | | BAGS ZONOLITE MONO-KOTE MK-3 | 1.90 | 475.00 |

DETENTION OF VEHICLES
Free time allowed for unloading of freight: trailer
load 2 hrs., ½ trailer load 1 hr. Delays beyond free
time provided above will be charged at the rate of
$4 per hr.
Arrival ___ Departure ___ Per ___

ux exempt
rt. #29.50

RECEIVED BY _____

**DELIVERY RECEIPT**                    30016160

Exhibit 29



## ZONOLITE DIVISION
### W. R. GRACE & CO.
P.O. BOX 7093   CHICAGO, ILLINOIS 60680

**GRACE**

| | | | | | PHONE 12-18-67 |
|---|---|---|---|---|---|
| 4-4-68 | 13-001 | 4-034-155 | 251 241 A25 | | |
| | Zonolite Truck | | Ellwood City | | |

**Sold To:**
Easley & Rivers
2612 Roseside Blvd.
Monroeville, Pa. 15146

**Ship To:**
Same
c/o Trumbull County Memorial
Hospital
Warren, Ohio

| QUANTITY ORDERED | QUANTITY SHIPPED | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| | 250 | MONO KOTE MK-3 41-06-01-1-19 | 1.90 | 475.00 |

Exempt

☒ $ 9.91 CASH DISCOUNT ALLOWED IF PAID BY 4-14-68
☐ NO CASH DISCOUNT - NET 30 DAYS

PLEASE MAKE ALL REMITTANCES PAYABLE TO ZONOLITE DIVISION, W. R. GRACE & CO.

30018609

**DISTRICT MANAGER**

Exhibit   30

C.

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

THE OHIO HOSPITAL ASSOCIATION,  )     CASE NO. 187471
et al.,                                              )
                                                       )     Judge Francis J. Talty
            Plaintiffs,                            )
                                                       )
      v.                                             )
                                                       )
ARMSTRONG WORLD INDUSTRIES, INC., )
et al.,                                               )
                                                       )
            Defendants.                          )  .

DEFENDANT W.R. GRACE & CO.- CONN.'S RESPONSES AND OBJECTIONS TO
PLAINTIFFS' REQUESTS FOR ADMISSION TO DEFENDANT W. R. GRACE & CO. -
CONN. (SECOND SET)

Pursuant to the Ohio Rules of Civil Procedure, Defendant W.R. Grace & Co.-Conn.

("Grace") responds and objects to Plaintiffs' Requests for Admission (Second Set) as follows:

I.

ENUMERATED OBJECTIONS

1.    Grace objects to these requests to the extent they seek information that is

subject to the attorney-client privilege, that evidences or constitutes attorney work product,

that evidences or constitutes materials prepared in anticipation of litigation or for trial, or

that is otherwise not discoverable under the Ohio Rules of Civil Procedure.  Except as

otherwise stated, Grace's responses do not include information that is subject to the

attorney-client privilege or constitutes attorney work product, including, without limitation,

PLAINTIFF'S
EXHIBIT

2

information obtained from third parties in the course of an attorney's factual investigation in connection with pending litigation. Nor do they include information or alleged information known to Grace solely because it was proffered by plaintiffs' attorneys at depositions or at trials as information obtained by said attorneys from third parties.

2.      Grace states that its responses apply to it alone, and objects to Plaintiffs' definition of it, to the extent it calls for it to provide information or documents in the possession of separately incorporated subsidiaries or "predecessors."

3.      By admitting, in part or in its entirety, any request Grace does not admit or concede the relevance, reliability, materiality or admissibility of the referenced document and does not waive, but rather expressly reserves, any and all objections to the relevance, reliability, materiality, necessity or admissibility of the document at trial.

4.      Grace objects to the requests to the extent they call for Conclusions of Law. By its responses, Grace does not stipulate to a legal determination of any evidentiary or other legal issue.

5.      Anything not specifically admitted is denied. Further, considering the volume of this request, the difficulty in relating the exemplar documents to specific documents in Grace's files, and the status of discovery in this case, Grace reserves the right to amend the response if it discovers that inadvertent errors or omissions have been made or if additional information becomes available, including, without limitation, location of documents not located at this time.

2

0030

## II.

## REQUESTS FOR ADMISSIONS

### A.    ACCURACY OF EXHIBITS

For the Exhibits identified here below, admit that each Exhibit is a true and accurate copy of the Document(s) portrayed therein.

RESPONSE:

In response to each of the request items listed below, Grace asserts its enumerated objections and the following:

| Exhibit No. | Response |
|---|---|
| 1 | After reasonable inquiry, Grace is without sufficient knowledge to admit or deny this request and therefore denies it.    Grace is unable to locate a copy of this exhibit in its files. |
| 2 | After reasonable inquiry, Grace is without sufficient knowledge to admit or deny this request and therefore denies it. Grace is unable to locate a copy of this exhibit in its files. |
| 3 | After reasonable inquiry, Grace is without sufficient knowledge to admit or deny this request and therefore denies it.    Grace is unable to locate a copy of this exhibit in its files. |
| 4 | Admitted, except the date of the invoice is 8/17/72. |
| 5 | Admitted, except the date of the invoice is 10/6/72. |

3

| | |
|---|---|
| 6 | Admitted, except the date of the invoice is 10/13/72. |
| 7 | Admitted, except the date of the invoice is 11/16/72. |
| 8 | Admitted. |
| 9 | After reasonable inquiry, Grace is without sufficient knowledge to admit or deny this request and therefore denies it. Grace is unable to locate a copy of this exhibit in its files. |
| 10 | Admitted. |
| 11 | Admitted. |
| 12 | Admitted. |
| 13 | Admitted. |
| 14 | Admitted. |
| 15 | Admitted. |
| 16 | Admitted. |
| 17 | Admitted. |
| 18 | Admitted. |
| 19 | Admitted. |
| 20 | Admitted. |
| 21 | Admitted. |
| 22 | Admitted. |
| 23 | Admitted. |
| 24 | Admitted. |

4

| 25 | Admitted. |
| 26 | Admitted. |
| 27 | Admitted. |
| 28 | Exhibit No. 28 was not attached to the Requests for Admissions (Second Set). Based on Plaintiffs' description of Exhibit 28, Grace assumes that Exhibit 28 is the document produced by Plaintiffs in discovery bearing bates number TRU 00982. Grace admits that the document bearing bates number TRU 00982 is a true and accurate copy of the document portrayed therein. |
| 29 | Admitted. |
| 30 | Admitted. |

## B.    GENERAL REQUESTS

1.    The fireproofing product Monokote MK3 was manufactured by you during, but not limited to, the years 1959-1973.

RESPONSE:

Denied. Grace began manufacturing Mono-Kote MK-3 on April 16, 1963, when it acquired the assets of the Zonolite Company, and continued to manufacture it in the U.S. until around June 1973. The Zonolite Company and its licensees began manufacturing MK-3 in 1961.

2.    Monokote MK3 contains approximately 10% chrysotile asbestos by volume.

RESPONSE:

After reasonable inquiry, Grace is unable to admit or deny this request and therefore denies it, because its manufacturing formulas were based on weight, not volume.

5

0033

3.    Monokote MK3 contains approximately 10-14% chrysotile asbestos by weight.

RESPONSE:

Admitted.

4.    Monokote MK3 contains vermiculite.

RESPONSE:

Admitted.

5.    The vermiculite used in Monokote MK3 contains tremolite asbestos.

RESPONSE:

Grace objects to this request on the grounds that it is overly broad and seeks information not relevant to the subject matter of this case and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections and its enumerated objections, Grace denies this request as stated. If the vermiculite used in Mono-Kote MK-3 came from Libby, Montana, it may have contained trace amounts of naturally occurring asbestiform tremolite asbestos, substantially all of which was removed during the processing of the vermiculite.

6.    The product Monokote MK3 does release asbestos fibers when it is contacted.

RESPONSE:

Grace objects to this request on the grounds that it is vague and ambiguous. Plaintiffs fail to define "contacted." Grace also objects to this request to the extent it implies that there is any hazard associated with its installed fireproofing products containing commercial asbestos under normal conditions of use. Subject to and without waiving these objections and its enumerated objections, Grace denies this request as stated.

6

7.    Any disturbance of Monokote MK3 will create a hazardous condition in a building containing Monokote MK3.

RESPONSE:

Grace objects to this request on the grounds that it is vague and ambiguous. Plaintiffs fail to define either "any disturbance" or "hazardous condition." Grace also objects to this request to the extent it implies that there is any hazard associated with its installed fireproofing products containing commercial asbestos under normal conditions of use. Subject to and without waiving these objections and its enumerated objections, Grace denies this request as stated.

8.    Any disturbance of Monokote MK3 will contaminate a building with hazardous asbestos fibers.

RESPONSE:

Grace objects to this request on the grounds that it is vague and ambiguous. Plaintiffs fail to define "any disturbance" and "hazardous asbestos fibers." , Plaintiffs' definition of "contaminate" is confusing and conflicting and legally irrelevant and insufficient. Grace also objects to this request to the extent it is argumentative or implies that there is any hazard associated with its installed fireproofing products containing commercial asbestos under normal conditions of use. Subject to and without waiving these objections and its enumerated objections, Grace denies this request as stated.

7

0035

9.    Routine maintenance will cause the release of asbestos from Monokote MK-3.

RESPONSE:

Grace objects to this request on the grounds that it is vague and ambiguous. Plaintiffs fail to define "routine maintenance." Grace also objects to this request to the extent it implies that there is any hazard associated with its installed fireproofing products containing commercial asbestos under normal conditions of use. Subject to and without waiving these objections and its enumerated objections, Grace denies this request as stated.

10.    W.R. Grace has advised building owners that Monokote MK3 does not release asbestos fibers.

RESPONSE:

Grace objects to this request on the grounds that it is overly broad and unduly burdensome and seeks information not relevant to the subject matter of this case and not reasonably calculated to lead to the discovery of admissible evidence. Grace also objects to this request on the grounds that it is vague and ambiguous. Plaintiffs fail to specify a particular group of "building owners" or a relevant time frame. Subject to and without waiving these objections and its enumerated objections, Grace denies this request as stated. In response to inquiries from a number of building owners, Grace has conveyed in writing its belief that because of the "setting" characteristics of Mono-Kote MK-3, the asbestos fibers would be encapsulated in the matrix, assuming the material was undisturbed and had suffered no in-place damage. If not, Grace suggested measures to be taken.

8

11.    You have been a member of the Safe Buildings Alliance since 1984.

RESPONSE:

Grace objects to this request on the grounds that it seeks information not relevant to the subject matter of this case and not reasonably calculated to lead to the discovery of admissible evidence. The request concerns activities by Grace 11 years after it ceased manufacturing and selling in the U.S. fireproofing products containing commercial asbestos. Subject to and without waiving these objections and its enumerated objections, Grace admits this request.

12.    The Safe Buildings Alliance sent a copy of Asbestos in Buildings: What Every Building Owner Should Know to each member of the American Hospital Association.

RESPONSE:

Grace objects to this request on the grounds that it seeks information not relevant to the subject matter of this case and not reasonably calculated to lead to the discovery of admissible evidence.  Grace also objects to this request on the grounds that it is vague and ambiguous. Plaintiffs fail to specify a relevant time frame. Subject to and without waiving these objections and its enumerated objections, Grace states that after reasonable inquiry, it is without sufficient knowledge to admit or deny this request and therefore denies this request as stated.

9

13.    The class action Sisters of St. Mary v. AAER Sprayed Insulation, 445 N. W.
2d 723 (Wis. App. 1989), was filed on November 18, 1985.

RESPONSE:

Grace objects to this request on the grounds that it seeks information not relevant
to the subject matter of this case and not reasonably calculated to lead to the discovery of
admissible evidence. Subject to and without waiving these objections and its enumerated
objections, Grace denies this request.  Grace admits that the class action captioned Sisters
of St. Mary v. AAER Sprayed Insulation was filed on November 19, 1985.

14.    You were a defendant in the Sisters of St. Mary v. AAER Sprayed Insulation
class action.

RESPONSE:

Grace objects to this request on the grounds that it seeks information not relevant
to the subject matter of this case and not reasonably calculated to lead to the discovery of
admissible evidence. Subject to and without waiving these objections and its enumerated
objections, Grace admits that it was a defendant in this lawsuit for which class action status
was denied on February 3, 1988.

15.    You were in possession of all of the attached Exhibits, except Exhibit No.'s
1, 2, 3 and 9, during the pendency of the Sisters of St. Mary v. AAER Sprayed Insulation
class action.

RESPONSE:

Grace objects to this request on the grounds that it is vague, ambiguous and
misleading. Subject to and without waiving these objections and its enumerated objections,

10

0038

Grace admits this request as stated. Grace states that possession of these documents did not provide Grace with sufficient notice that the Plaintiffs in this action would assert any claims against Grace.

## C. GEAUGA COMMUNITY HOSPITAL

1.    Geauga Community Hospital, located at 13207 Ravenna Road, Chardon, Ohio, is owned by Geauga Community Hospital.

RESPONSE:

After reasonable inquiry and at the present stage of discovery, Grace is without sufficient knowledge to admit or deny the ownership of the Hospital. Grace admits the address of Geauga asserted in this request.

2.    The Specifications, Section 9I, dated November 22, 1971 attached hereto as Exhibit 1 is a business record.

RESPONSE:

After reasonable inquiry, Grace is without sufficient knowledge to admit or deny this request and therefore denies it. Grace is unable to locate a copy of this exhibit in its files. Moreover, the exhibit on its face does not appear to fit Plaintiffs' definition of a business record.

3.    Exhibit 1 is an ancient document.

RESPONSE:

After reasonable inquiry, Grace is without sufficient knowledge to admit or deny this request and therefore denies it. Grace is unable to locate a copy of this exhibit in its files.

11

0039

Beginning no later than 1987, Salem has admitted conducting abatement of the subject fireproofing. Furthermore, based on information disclosed by Salem during preliminary discovery in this lawsuit, Grace believes that as early as 1978, Salem physically abused the fireproofing material through the application of physical force to the material of a type not encountered in ordinary day to day use which probably resulted in an elevated level of measurable asbestos fibers. Discovery is not complete and further evidence of physical abuse of the material by Salem may be discovered. Furthermore, Salem has an obligation to gather and preserve evidence of the property which has been in its exclusive control and its failure to gather and preserve such evidence results in an evidentiary presumption adverse to Salem.

E.    TRUMBULL MEMORIAL HOSPITAL

1.    Trumbull Memorial Hospital, located at 1350 East Market Street, Warren, Ohio, is owned by Trumbull Memorial Hospital.

RESPONSE:

After reasonable inquiry and at the present stage of discovery, Grace is without sufficient knowledge to admit or deny the ownership of the Hospital. Grace admits the address of Trumbull asserted in this request.

2.    The Grace document, bearing a Customer order date of October 23, 1967 (WRG # 30016157) attached hereto as Exhibit 26 is a business record.

RESPONSE:

Denied. While found in Grace's files, the document lacks the requisite indicia of reliability for it to constitute a business record.

35

3.    Exhibit 26 is an ancient document. 

<u>RESPONSE:</u>

 Admitted.

4.    The Grace Delivery Receipt bearing a Customer order date of December 18, 1967 attached hereto as Exhibit 27 is a business record.

<u>RESPONSE:</u>

Admitted.

5.    Exhibit 27 is an ancient document.

<u>RESPONSE:</u>

Admitted.

6.    The Grace document bearing an invoice date of March 19, 1968 attached hereto as Exhibit 28 is a business record.

<u>RESPONSE:</u>

Exhibit No. 28 was not attached to the Requests for Admissions (Second Set).  Based on Plaintiff's description of Exhibit 28, Grace assumes that Exhibit 28 is the document produced by Plaintiffs in discovery bearing bates number TRU 00982.  Grace admits that the document bearing an invoice date of March 19, 1968 and marked with bates number TRU 00982 is a business record.

7.    Exhibit 28 is an ancient document.

<u>RESPONSE:</u>

Exhibit No. 28 was not attached to the Requests for Admissions (Second Set).  Based on Plaintiffs' description of Exhibit 28, Grace assumes that Exhibit 28 is the document

0064

produced by Plaintiffs in discovery bearing bates number TRU 00982. Grace admits that the document bearing an invoice date of March 19, 1968 and marked with bates number TRU 00982 is an ancient document.

8.    The Grace Invoice, Delivery Receipt, bearing a Customer order date of December 18, 1967 WRG # 30016160) attached hereto as Exhibit 29 is a business record.

RESPONSE:

    Admitted.

9.    Exhibit 29 is an ancient document.

RESPONSE:

    Admitted.

10.    The Grace document bearing an invoice date of April 4, 1968 (WRG # 30018609) attached hereto as Exhibit 30 is a business record.

RESPONSE:

    Admitted.

11.    Exhibit 30 is an ancient document.

RESPONSE:

    Admitted.

37

12.    The product Monokote MK3 was applied as a fireproofing at Trumbull Memorial Hospital.

RESPONSE:

After reasonable inquiry and at the present stage of discovery, Grace is unable to admit or deny this request at this time and therefore denies it. The response to this request requires expert analysis and testimony, which has not been completed.

13.    Asbestos fibers have become released from the fireproofing at Trumbull Memorial Hospital.

RESPONSE:

Grace objects to this request on the grounds that it is vague and ambiguous and fails to specify a relevant time frame. Subject to and without waiving these objections and its enumerated objections, Grace admits this request as stated.

While assuming but not admitting the presence of Grace's asbestos-containing fireproofing in the subject building, Grace states the following: ordinary day to day activities in a building will not result in the release of a measurable quantity of asbestos fibers. On the other hand, it is possible to physically abuse the material through application of physical force to the material of a type not encountered in ordinary day to day use, which if done without adequately wetting the material may result in a dislodgment of material, which material may consist of approximately 10-14 percent asbestos fibers.

Beginning no later than 1984, Trumbull has admitted conducting abatement of the subject fireproofing. Discovery is commencing on the issues of whether Trumbull has otherwise physically abused the fireproofing material and whether Trumbull has failed to

38

0066

gather and preserve evidence, Trumbull has the obligation to gather and preserve the evidence concerning property which has been in its exclusive control and its failure to gather and preserve evidence entitles Grace to an evidentiary presumption adverse to Trumbull.

14.    Trumbull Memorial Hospital is contaminated with asbestos fibers which were released from the fireproofing.

RESPONSE:

Grace objects to this request on the grounds that Plaintiffs' definition of "contaminated" is confusing and conflicting and legally irrelevant and insufficient. Grace further objects to this request to the extent it implies that there is any hazard associated with its installed fireproofing and products containing commercial asbestos under normal conditions of use. Grace states that its fireproofing products containing commercial asbestos, if properly installed, do not present any hazard to occupants of buildings and there has never been any credible or widely accepted evidence within the medical and scientific communities that such products, and Grace's products in particular, pose any hazard to human health.

While assuming but not admitting the presence of Grace's asbestos-containing fireproofing in the subject building, Grace states the following: ordinary day to day activities in a building will not result in a release of a measurable quantity of asbestos fibers. On the other hand, it is possible to physically abuse the material through application of force of a type not generally contemplated in ordinary day to day use, which if done without adequately wetting the material may result in a dislodgment of material, which material may consist of approximately 10-14 percent asbestos fibers.

39

0067

Grace has no information that the fireproofing at Trumbull Memorial Hospital presently constitutes a hazard requiring abatement.

15. Prior to November 18, 1985, asbestos fibers became released from the fireproofing at Trumbull Memorial Hospital.

RESPONSE:

Grace objects to this request on the grounds that it is vague and ambiguous. Subject to and without waiving these objections and its enumerated objections, Grace admits this request as stated.

While assuming but not admitting the presence of Grace's asbestos-containing fireproofing in the subject building, Grace states the following: ordinary day to day activities in a building will not result in the release of a measurable quantity of asbestos fibers. On the other hand, it is possible to physically abuse the material through application of physical force to the material of a type not encountered in ordinary day to day use, which if done without adequately wetting the material may result in a dislodgment of material, which material may consist of approximately 10-14 percent asbestos fibers.

Beginning no later than 1984, Trumbull has admitted conducting abatement of the subject fireproofing. Discovery is commencing on the issues of whether Trumbull has otherwise physically abused the fireproofing material and whether Trumbull has failed to gather and preserve evidence. Trumbull has the obligation to gather and preserve the evidence concerning property which has been in its exclusive control and its failure to gather and preserve evidence entitles Grace to an evidentiary presumption adverse to Trumbull.

16.    Prior to November 18, 1985, the levels of asbestos that were released from the fireproofing, contaminated the air and building at Trumbull Memorial Hospital.

RESPONSE:

Grace objects to this request on the grounds that Plaintiffs' definition of "contaminated" is confusing and conflicting and legally irrelevant and insufficient. Grace further objects to this request to the extent it implies that there is any hazard associated with its installed fireproofing and products containing commercial asbestos under normal conditions of use. Grace states that its fireproofing products containing commercial asbestos, if properly installed, do not present any hazard to occupants of buildings and there has never been any credible or widely accepted evidence within the medical and scientific communities that such products, and Grace's products in particular, pose any hazard to human health.

While assuming but not admitting the presence of Grace's asbestos-containing fireproofing in the subject building, Grace states the following: ordinary day to day activities in a building will not result in a release of a measurable quantity of asbestos fibers. On the other hand, it is possible to physically abuse the material through application of force of a type not generally contemplated in ordinary day to day use, which if done without adequately wetting the material may result in a dislodgment of material, which material may consist of approximately 10-14 percent asbestos fibers.

Beginning no later than 1984, Trumbull has admitted conducting abatement of the subject fireproofing. Discovery is commencing on the issues of whether Trumbull has otherwise physically abused the fireproofing material and whether Trumbull has failed to

41

0069

gather and preserve evidence. Trumbull has the obligation to gather and preserve the evidence concerning property which has been in its exclusive control and its failure to gather and preserve evidence entitles Grace to an evidentiary presumption adverse to Trumbull.

17.    Prior April 3, 1990, asbestos fibers became released from the fireproofing at Trumbull Memorial Hospital.

RESPONSE:

Grace objects to this request on the grounds that it is vague and ambiguous. Subject to and without waiving these objections and its enumerated objections, Grace admits this request as stated.

While assuming but not admitting the presence of Grace's asbestos-containing fireproofing in the subject building, Grace states the following: ordinary day to day activities in a building will not result in the release of a measurable quantity of asbestos fibers. On the other hand, it is possible to physically abuse the material through application of physical force to the material of a type not encountered in ordinary day to day use, which if done without adequately wetting the material may result in a dislodgment of material, which material may consist of approximately 10-14 percent asbestos fibers.

Beginning no later than 1984, Trumbull has admitted conducting abatement of the subject fireproofing. Discovery is commencing on the issues of whether Trumbull has otherwise physically abused the fireproofing material and whether Trumbull has failed to gather and preserve evidence. Trumbull has the obligation to gather and preserve the evidence concerning property which has been in its exclusive control and its failure to gather and preserve evidence entitles Grace to an evidentiary presumption adverse to Trumbull.

42

0070

18.    Prior to April 3, 1990, the levels of asbestos that were released from the fireproofing, contaminated the air and building at Trumbull Memorial Hospital.

RESPONSE:

Grace objects to this request on the grounds that Plaintiffs' definition of "contaminated" is confusing and conflicting and legally irrelevant and insufficient. Grace further objects to this request to the extent it implies that there is any hazard associated with its installed fireproofing and products containing commercial asbestos under normal conditions of use. Grace states that its fireproofing products containing commercial asbestos, if properly installed, do not present any hazard to occupants of buildings and there has never been any credible or widely accepted evidence within the medical and scientific communities that such products, and Grace's products in particular, pose any hazard to human health.

While assuming but not admitting the presence of Grace's asbestos-containing fireproofing in the subject building, Grace states the following: ordinary day to day activities in a building will not result in a release of a measurable quantity of asbestos fibers. On the other hand, it is possible to physically abuse the material through application of force of a type not generally contemplated in ordinary day to day use, which if done without adequately wetting the material may result in a dislodgment of material, which material may consist of approximately 10-14 percent asbestos fibers.

Beginning no later than 1984, Trumbull has admitted conducting abatement of the subject fireproofing. Discovery is commencing on the issues of whether Trumbull has otherwise physically abused the fireproofing material and whether Trumbull has failed to

43

0071

gather and preserve evidence. Trumbull has the obligation to gather and preserve the evidence concerning property which has been in its exclusive control and its failure to gather and preserve evidence entitles Grace to an evidentiary presumption adverse to Trumbull.

Signed as to objections,

OF COUNSEL:

HAHN LOESER & PARKS

Robert J. Fogarty (#0006818)
Dennis R. Rose (#0039416)

3300 BP America Building
200 Public Square
Cleveland, Ohio 44114-2262
(216) 621-0150

Attorneys for Defendant
W. R. Grace & Co.--Conn.

44

## CERTIFICATE OF SERVICE

Copies of Defendant W.R. Grace & Co. - Conn.'s Responses and Objections to Plaintiffs' Request for Admissions to Defendant W. R. Grace & Co. - Conn. (Second Set) were served on this 17th day of June, 1996 by hand delivery on

> Mark Wintering, Esq.
> Robert E. Sweeney & Co.
> 1500 Illuminating Building
> Cleveland, OH 44113

and by regular U.S. mail, sufficient postage prepaid, on

> Kenneth B. McClain, Esq.
> Steven E. Crick, Esq.
> Humphrey, Farrington & McClain
> 123 West Kansas
> Independence, MO 64050

> Hilary S. Taylor, Esq.
> Warren Rosman, Esq.
> Weston, Hurd; Fallon, Paisley & Howley
> 2500 Terminal Tower
> Cleveland, OH 44133-2241

_____
One of the Attorneys for Defendant
W.R. Grace & Co. - Conn.



**The Supreme Court of Ohio**
Clerk's Office
65 South Front Street, 8th Floor
Columbus, Ohio 43215-3431
800.826.9010
614.387.9530

Marcia J. Mengel
Clerk of Court

Search Results: Case Number 2000-1030

# The Supreme Court of Ohio
## CASE INFORMATION

### GENERAL INFORMATION

**Case:** **2000-1030** Discretionary Appeal (Non-felony)

**Filed:** 06/01/00

**Status:** Case Is Inactive

### The Ohio Hospital Association et al. v. Armstrong World Industries, Inc., et al. [Trumbull Memorial Hospital]

### PARTIES and ATTORNEYS

| |
|---|
| Trumbull Memorial Hospital (Appellant) |
|    Represented by: |
|       Wintering, Mark (8015) , Counsel of Record |
|       Crick, Steven (0) |
|       Hodes, Garrett (0) |
|       McClain, Kenneth (0) |
| W.R. Grace & Son & Co.-Conn. (Appellee) |
|    Represented by: |
|       Fogarty, Robert (6818) , Counsel of Record |
|       Calderas, Erica (64064) |
|       Rose, Dennis (39416) |

### PRIOR JURISDICTION

| Jurisdiction Information | Prior Decision Date | Case Number(s) |
|---|---|---|
| Cuyahoga County, 8th District | 04/17/2000 | 76067 |

### DOCKET ITEMS

PLAINTIFF'S
EXHIBIT
3

| Date Filed | Description |
|---|---|
| 06/01/00 | Notice of appeal by Trumbull Memorial Hospital<br>*Filed by:* Trumbull Memorial Hospital |
| 06/01/00 | Motion for admission pro hac vice by Mark Wintering for Kenneth B. McClain and Steven E. Crick<br>*Filed by:* Trumbull Memorial Hospital |
|  | 09/20/00: Granted |
| 06/01/00 | Memorandum in support of jurisdiction<br>*Filed by:* Trumbull Memorial Hospital |
| 06/02/00 | Copy of notice of appeal sent to clerk of court of appeals |
| 06/30/00 | Memorandum in response<br>*Filed by:* W.R. Grace & Son & Co.-Conn. |
| 08/10/00 | List of additional authorities<br>*Filed by:* W.R. Grace & Son & Co.-Conn. |
| 09/20/00 | Upon consideration of jurisdictional question |
|  | 09/20/00: Appeal allowed |
| 09/20/00 | Order to clerk of court/custodian to certify record |
| 10/19/00 | Record |
| 10/19/00 | Clerk's notice of filing of record |
| 11/27/00 | Appellant's merit brief<br>*Filed by:* Trumbull Memorial Hospital |
| 11/27/00 | Supplement to briefs (two volumes)<br>*Filed by:* Trumbull Memorial Hospital |
| 12/21/00 | Stipulation to extension of time to file merit brief to 01/16/2001<br>*Filed by:* W.R. Grace & Son & Co.-Conn. |
| 01/16/01 | Appellee's merit brief<br>*Filed by:* W.R. Grace & Son & Co.-Conn. |
| 01/16/01 | Appendix<br>*Filed by:* W.R. Grace & Son & Co.-Conn. |
| 01/16/01 | Second supplement to briefs<br>*Filed by:* W.R. Grace & Son & Co.-Conn. |
| 01/31/01 | Stipulation to extension of time to file reply brief to 02/26/2001<br>*Filed by:* Trumbull Memorial Hospital |
| 02/12/01 | Notice of oral argument to be held 3/14/01 |
| 02/26/01 | Reply brief<br>*Filed by:* Trumbull Memorial Hospital |
| 03/07/01 | List of additional authorities<br>*Filed by:* W.R. Grace & Son & Co.-Conn. |
| 04/09/01 | Suggestion of bankruptcy |

| | |
|---|---|
| | *Filed by:* W.R. Grace & Son & Co.-Conn. |
| 04/13/01 | Entry: Proceedings in this case are stayed pending further order of this Court; it is ordered, sua sponte, that appellee shall file a notice upon the termination of the automatic stay under the Bankruptcy Code |
| 07/03/03 | Entry: It is ordered by the Court, sua sponte that appellee file a notice advising this Court of the status of the bankruptcy case, within 15 days of this entry |
| 07/15/03 | Notice of status of W.R. Grace & Co. - Conn.'s bankruptcy proceedings<br>*Filed by:* W.R. Grace & Son & Co.-Conn. |
| 07/23/04 | DECISION: Sua sponte, W.R. Grace & Sons & Co-Conn. file a notice advising this Court of the status of the bankruptcy case within 15 days of the date of this entry |
| 08/02/04 | Notice of status of W.R. Grace & Co. - Conn.'s bankruptcy proceedings<br>*Filed by:* W.R. Grace & Son & Co.-Conn. |
| 03/28/05 | DECISION: Sua sponte, appellee W. R. Grace & Son & Co.-Conn. file a notcie advising this Court of the status of the bankruptcy case 15 days from the date of this entry |
| 04/07/05 | Notice of status of W.R. Grace & Sons & Co.-Conn. bankruptcy proceedings: automatic stay remains in place: bankruptcy case remains pending<br>*Filed by:* W.R. Grace & Son & Co.-Conn. |

[ Back ]

Richard Hatfield
Materials Analytical Services, Inc.
3597 Parkway Lane, Suite 250
Norcross, GA  30092

My name is Richard Hatfield. I am the Senior Consultant at Materials Analytical Services, Inc. I obtained a Bachelor of Science degree in Experimental Statistics and Geology from North Carolina State University. Prior to my current position, I was employed as a consultant in the capacity as Assistant Vice President and Senior Corporate Consultant for Law Engineering from December 1987 to August 1996. Preceding my employment at Law, I served as Director of Services from McCrone Environmental Services, Inc. for five years and began my career relating to asbestos, serving as a Technical Field Advisor to the U.S. Environmental Protection Agency's Asbestos in Schools Program. I was appointed as an expert advisor to the US Environmental Protection Agency's negotiated rule making committee to promulgate new regulations for asbestos in schools pursuant to AHERA (Asbestos Hazards Emergency Response Act). My background and experience is also listed on my attached curriculum vitae.

During my years dealing with asbestos related problems, I have been an instructor in over fifty (50) courses and seminars on asbestos in buildings. I have developed protocols for the collection and analysis of asbestos in the settled dust of buildings with asbestos-containing building materials, and consulted with the US Environmental Protection Agency (EPA) and the American Society for Testing and Materials (ASTM) in establishing guidelines for these protocols. These protocols have been accepted by both the scientific and the legal community.

As a consultant, I have advised hundreds of public and private building owners regarding the proper response they should make regarding the disposition of asbestos in their properties. As part of my consulting services, I have acquired extensive experience in the field of identifying products by visual and microscopic examination of the materials and their components. I have also acquired extensive experience in the analysis of the amount and frequency of asbestos release from asbestos-containing building materials.

I have also participated in or reviewed a number of experiments and demonstrations involving asbestos-containing materials (ACM) in which either the asbestos-containing materials or their residue were disturbed during routine building operations and activities, which resulted in the release of significant levels of airborne asbestos-containing dust. Measurements were made of either airborne or surface asbestos dust released during these operations. Such tests have demonstrated that significant numbers of asbestos fibers are released when these routine building operations and activities are undertaken. This release of asbestos fibers into the building's environment results in elevated airborne levels for some time and leads to the contamination of building and property surfaces with asbestos dust. For the purposes of this report, the word "contamination" is intended to convey the idea that the surfaces analyzed contain asbestos fibers to a degree far in excess of what I would expect to see on a surface which was not in proximity to an asbestos-containing material that was releasing asbestos fibers. In my experience in collecting, analyzing and reviewing thousands of dust samples such as the ones collected in this case, a dust sample taken from areas without asbestos-containing materials or some other identified source



PLAINTIFF'S
EXHIBIT

4



DEFENDANT'S
EXHIBIT

#2    4-23-0

Hatfield

will reveal little to no contamination. Therefore, dust samples collected in the area of an asbestos-containing material which reveal significant numbers of asbestos fibers demonstrate release from the material present to addition to demonstrating surface contamination.

Asbestos fibers which are released from deteriorating ACM or from the disturbance of ACM will disburse into the ambient air within the buildings, settling on various surfaces in the building, contaminating those surfaces. The asbestos dust on these surfaces is subject to reentrainment into the air when this dust is disturbed during routine building activities. The reentrained fibers are as much of a concern as newly released asbestos fibers. The asbestos contamination will remain unless special cleaning procedures are employed to eliminate the asbestos-containing dust from non-porous surfaces or the proper removal and disposal of porous materials, as previously described, to which asbestos fibers customarily attach themselves. If ACM which is releasing asbestos fibers is left in areas where surfaces have been cleaned, these surfaces in time will become re-contaminated.

The dust sampling technique is accomplished by running a battery operated air sampling pump, equipped with a membrane filter cassette identical to those used in air sampling over a designated area of surface. A nozzle fashioned from 1/4 inch diameter tubing is attached to the open nipple of the cassette cap. By operating the pump at 2 liters/minute, the nozzle face velocity should be approximately 100 cm/sec. The actual sample collection process involves delineating a surface area of interest. This is usually accomplished by measuring a selected area of at least 100 square centimeters. The size of the sampled area may also be measured after the collection is complete. Once the pump is activated, the nozzle is passed along the surface in a manner sufficient to vacuum up any settled dust. Light rubbing of the surface may be necessary to dislodge any lightly attached materials; hard rubbing is not necessary. The vacuuming should continue over the entire sample area until the operator is satisfied that all the dust which can be removed is removed. Upon completion, the sampling cassette should be turned upright and with the pump still running, the cap should be loosened and the nozzle removed and placed into the cassette. After replacing the cap, the pump may be turned off and the cap plug replaced to seal the cassette. These samples are documented as to their surface and area sampled, along with other pertinent project information. The filters are then transported to a laboratory for analysis.

The materials collected on the filter are then prepared for analysis under the electron microscope. The microscopist identifies and quantifies asbestos fibers in the microscope grid opening and reports the findings in fibers per unit area such as fibers per square centimeter or fibers per square foot using a mathematical calculation.

As requested, I and other Law personnel have inspected and collected samples of various asbestos-containing materials and dust samples in the buildings which are the subject of this litigation. During most of these visits, reports, photographs, and in some cases video tape documentation were generated. The subject asbestos-containing materials in these buildings are friable fireproofing which is generally sprayed on to steel beams, columns and floor decking.

I or members of my staff at Materials Analytical Services, Inc., or at Law Companies, Inc., my former employer, may provide testimony in several areas. I am able to express opinions regarding

the release of asbestos fibers from the materials in the buildings at issue, and I and/or members of my staff have inspected the Trumbull Memorial Hospital, Salem Community Hospital and Geauga Hospital, and have made determinations concerning the use, condition, location, accessibility, and disturbance of the material. We have also taken bulk samples of fireproofing, as well as samples from settled dust and fallout samples from various areas and surfaces in the buildings.

The inspection process included a physical examination of the materials to determine the presence, location and use of the materials in the buildings and a determination of conditions. The level of contamination was measured in the facilities by the collection and analysis of dust samples. The findings of the inspection and sample collection were documented in various forms including reports, notes, logs, 35mm photographs and video tape.

In some cases, demonstrative activities were conducted and video taped to show how certain activities such as opening and closing a ceiling tile or disturbing the asbestos-containing materials release asbestos. These videos clearly demonstrate when asbestos-containing dust and debris or the in place asbestos-containing materials are disturbed, asbestos-containing dust becomes airborne and results in contaminating surfaces below. These videos make use of a lighting technique referred to as the Tyndell light effect to illuminate any airborne particles. This lighting effect is the same as the observation of airborne dust through a stream of sunlight through a window. Dust samples were taken on the top of surfaces above the ceilings prior to the demonstrations and from the plastic covered floor following the demonstrations. These samples demonstrate that asbestos-containing dust was disturbed and that typical maintenance activities result in contamination of surfaces below. For safety, these demonstrations were conducted in contained areas to prevent the spread of the released asbestos and were thoroughly cleaned following the demonstrations.

It is my opinion that the asbestos fibers in the surface dust samples collected in the buildings originated from the asbestos-containing fireproofing materials in the buildings. This opinion is based on my experience in analyzing hundreds of dust samples from numerous buildings with and without asbestos-containing materials. My inspection and sampling from the buildings at issue, as well as the number of fibers in the dust and fallout samples, and factual detail regarding the location of the sampling and methods used are reflected in the reports which have been produced. Those opinions are also recorded in photographs and a video tape of my inspection which I understand has been produced.

I am able to offer opinions about the handling of asbestos materials in a building, including the need for removal. It is my opinion that the policies and procedures pursued by the Plaintiff in handling and removal of asbestos in the buildings are prudent, appropriate and necessary. My opinions are based on my personal observations of the buildings, my experiments in the building, my personal discussions with persons at the building, my review of maintenance records, photographs, dust samples, fallout samples, bulk samples, reports generated by other members of my current and former staff and other available material. I also will base my opinions on EPA and OSHA regulations, and my experiences with other building assessments. My opinions will also be based on the results of experiments involving release of asbestos fibers in response to

specific activities such as cable pulling, remodeling and other maintenance work, or atmospheric conditions.

If asked, I will express an opinion on the appropriate uses and interpretations of air sampling. It is my opinion that air sampling techniques can be useful in measuring airborne asbestos during work practices which may disturb asbestos-containing materials, debris and dust. Ambient air sampling can be quite misleading and is not a good technique to determine the condition of asbestos-containing materials or to make determinations as to the levels of surface contamination and should not be used solely to make decisions about corrective actions.