## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Response Deadline:  10/24/05 |
| | ) | Hearing Date:  11/14/05 @ 12:00 p.m. |
| | ) | |
| | ) | **Related to:  9315** |
| | ) | **Claim No. 7020 (Solow Building, NY, NY)** |

### RESPONSE OF SHELDON H. SOLOW, SOLOW DEVELOPMENT CORP., SOLOVIEFF REALTY COMPANY, LLC, AND SOLOW BUILDING CO., LLC TO DEBTORS' FIFTEENTH OMNIBUS OBJECTION (SUBSTANTIVE) TO ASBESTOS PROPERTY DAMAGE CLAIMS [D.I. #9315]

Sheldon H. Solow, Solow Development Corp., Solovieff Realty Company, LLC, and Solow Building Co., LLC ("Solow"), through their undersigned counsel, respond to the Debtors' *Fifteenth Omnibus Objection (Substantive) to Asbestos Property Damage Claims* [D.I. 9315] (the "Objection"), as follows:

### BACKGROUND

1.      On April 2, 2001 (the "Petition Date"), Debtors filed a voluntary petition for protection under Chapter 11 of the Bankruptcy Code.  Debtors have continued in the operation of their business and the possession of their property as debtors-in-possession under Sections 1107 and 1108 of the Bankruptcy Code.

2.      On September 1, 2005, Debtors filed the Objection which seeks to disallow and expunge Claim No. 7020 filed by Solow on March 26, 2003.

3.      The Solow claim arises from an eighteen-year-old lawsuit, filed in 1987, that finally went to trial in 1999 after twelve years of extensive pre-trial proceedings.  During pre-trial the parties engaged in enormous discovery.  Grace had access to virtually every piece of

1

paper that touched upon construction of the Solow building in New York.  It extensively deposed Solow's fact and expert witnesses and received numerous reports of scientific testing in the Solow building including air testing, dust testing and bulk sampling.  So much information was produced and so many witnesses were called that the 1999 trial took over six weeks.  During that trial Grace's team of lawyers extensively cross-examined Solow's witnesses, produced their own witnesses, and introduced numerous documents from Solow's files.  The case was perhaps the most extensively discovered and litigated single-building asbestos property damage case in Grace's history.

4.     After the parties had exhausted themselves in this marathon of pre-trial and trial proceedings, the case was presented to a New York jury which awarded Solow a judgment (with pre-judgment interest added by the court) of over $25 million.  That judgment triggered another round of post-trial motions and extensive briefing by both sides.  The trial judge denied both sides' extensive post-trial motions.

5.     At no time during the twelve years of pre-trial proceedings, the six-week trial, or in post-trial did Grace ever contend that it lacked sufficient information concerning the Solow claim.  While Grace disagreed with Solow on the inferences to be drawn from the facts, Grace knew all the salient facts about which Grace product was installed in the Solow building, Solow's knowledge (or lack thereof) of its asbestos content, Solow's asbestos removal program and its claimed damages.  Suffice it to say that Solow's production of documents to Grace concerning the building's construction and its scientific testing, including air and dust testing, would fill a good portion of most courtrooms.

6.     Against this background, Solow received Grace's September 1, 2005 Objection to its claim with more than a little puzzlement.  It seemed apparent that whoever had prepared the

objections had not read the proof of claim form.  As detailed below, the vast majority of the objections are answered by the claim form itself, and all of the objections have already been addressed during twelve years of litigation in the New York courts.  The objections should be overruled.

7.      The vast majority of Grace's objections can charitably be described as the product of an overworked Debtors' counsel.  With 4,004 asbestos property damage claims facing it (according to Debtors' recent summary chart), Grace can probably be forgiven for being overwhelmed in trying to specify its objections to each claim.[1]  The use of computer "macros" to automatically insert repetitive objections into endless columns of claims has likely compounded the confusion.  But whatever the reason, it appears that no human being cast eyes on Solow's claim form before signing off on many of the objections Grace now asserts.  Solow reviews the objections below.

## "MISSING BASIC INFORMATION ABOUT CLAIMANT'S KNOWLEDGE" (Objection C-1(d))

8.      The first objection Grace makes to Solow's claim is that:

Claim omits information regarding claimant's knowledge of: (1) the date of installation of the product; (2) the date the claimant learned that the product at issue contained asbestos; (3) the date the claimant learned of presence of asbestos on the property; and/or (4) prior asbestos-related lawsuits and/or claims.  See Debtors' Fifteenth Omnibus Objection, p. 23.[2]

This objection is nonsense.

With respect to Grace's claimed lack of information regarding Solow's knowledge of "the date of installation of the product", the claim form had asked "When did you or someone on

---

[1] This state of affairs speaks loudly to the wisdom of addressing the merits of claims through a trust vehicle, rather than having the Court ensnared in reviewing over 4,000 claims objections.

[2] See Grace's " 'Key' to Summary Chart re Debtors' Fifteenth Omnibus Objection (Substantive) to Asbestos Property Damage Claims," at 1 (hereinafter "Grace's Key").  (Attach. A)

your behalf install the asbestos containing product(s) in the property?"  Solow's answer on the claim form was "1970".[3]  Could any answer be clearer?

Likewise, with respect to Grace's claimed lack of information concerning "the date the claimant learned that the product at issue contained asbestos", and "the date the claimant learned of presence of asbestos on the property", Solow answered these inquiries in the claim form by stating:

> As detailed at the trial of this matter (See Attachment A) Grace represented to Solow that there was either no asbestos in the Monokote used for the building, or that Monokote had a "trace" of asbestos, but was no concern.  This matter was covered in great detail at the trial.  [See e.g. testimony of Sheldon Solow, Michael Patti, James Cintani contained in Attachment A] [trial transcript].[4]

Even the most cursory review of the transcript, attached to the claim form as a computer disc, would have shown the extensive evidence of Grace attempting in the late-60s and early-70s to assure Solow there was no asbestos issue with its Monokote product.  Obviously, nobody at Grace bothered to look at the material provided with the claim form before making this objection.

Finally, Grace's objection that it is missing information about any "prior asbestos-related lawsuits and/or claims" by Solow is quizzical.  The claim form repeatedly referenced the prior trial and attached the trial transcript, a list of plaintiff's admitted exhibits, and the judgment.[5]

---

[3] See Solow Claim Form, Question 14.  (Attach. B).

[4] Solow Claim Form Supplemental Information for Question 18.  (Attach. B).

[5] Solow will provide these materials to the Court upon request, but they have been in Solow's claim file in Grace's possession for two and a half years.

## "CLAIMS THAT DID NOT ATTACH REQUESTED DOCUMENTS"
### (Objection C-2)

9.      Grace's next objection asserts that Solow did not attach documents relating to the purchase, installation, or removal of Grace's product.  <u>See</u> Grace's Key, at 2.  (Attachment A). This objection is, again, hard to fathom.  Not only did Solow attach the complete trial transcript in electronic form, but it also attached its list of admitted exhibits including:

1. A summary of the fireproofing shipments to the Solow building (Exhibit 1008.06);

2. An internal Grace document showing that the Solow building was a Grace project (Exhibit 1049);

3. W.R. Grace's own invoices for shipment to the Solow building (Exhibit 1079);

4. Numerous documents concerning the abatement of asbestos from the Solow building (<u>See</u> example Exhibits 1100, 1110, 1123); and

5. A complete breakdown of Solow's damage (Exhibit 1275(S)).

<u>See</u> Attachment C.

These exhibits and the numerous other exhibits addressing the installation of Grace's product in Solow's building, the removal of Grace's product from Solow's building, and the damages incurred for removal of Grace's product were all identified to Grace two and a half years ago as an attachment to the Proof of Claim form and extensively referenced within the claim form itself.  <u>See</u> Solow Claim Form Supplemental Information Question 16, 26 and 31. (Attachment B).  Solow explicitly told Grace in the claim form that "Copies of any such documents Grace cannot locate will be supplied on request."[6]  Because Grace already had all these documents from the pre-trial and trial, Solow's phone understandably never rang.  But it is

---

[6] Claim Form Supplemental Answer to Question 26.  (Attach. B).

baffling for Grace to claim now that Solow should be faulted for not repeatedly supplying these same documents.

## "CLAIMS PROVIDING NO MEASUREMENT OF RELEVANT ASBESTOS LEVELS" (Objection E-1)

10.    In its next perplexing objection, Grace asserts:

Claim fails to provide air (or even irrelevant dust) sampling data reflecting the subject property's asbestos levels.  See Debtors' Fifteenth Omnibus Objection, p39.

Again, someone at Grace must have misplaced the Solow claim form.  In response to this precise question on the form, Solow had answered:

The extensive evidence concerning sampling and testing of the asbestos-containing materials in the Solow building is contained in the attached transcript [Attachment A] and exhibits [Attachment B],  which are already in Grace's possession.  Copies of any such documents Grace cannot locate will be supplied on request.

See  Solow Claim Form Supplemental Information for Question 26.  (Attachment B).

Not only did Grace already have the documents it claims were not provided, but Solow specifically identified by exhibit number and offered to provide again the asbestos testing documents it introduced into evidence.  These included analysis of the Grace fireproofing[7], analysis of settled dust[8] and air monitoring analysis under various conditions[9].  In addition, as a cursory review of the transcript attached to the claim form would have shown, all three types of sampling were extensively discussed throughout the Solow trial.  Grace's objection is simply groundless.

---

[7] See e.g. Exhibit 1116 "Letter from Brown, Robert C., Hygenix, to Marke E. McKenna, Solow Management Corp., Re: Lab Analysis of Fireproofing".  (Attach. C).

[8] See e.g. Exhibit 1168 " Letter Report from William E. Longo, Materials Analytical Services, to Paul Heffernan, Environmental Consultant Re: Solow Microvac Dust, With Attached Analysis".  (Attach. C).

[9] See e.g. Exhibit 1153 "Letter / Report from Smerling, Barry, ATC Environmental Re: ATC Bulk Sample Collection and Air Monitoring – 4th Floor – Return Fan No. 8"; Exhibit 1194 "Letter report from James Lee Hubbard, Consulting Scientist, re: Solow Building fiber release tests".  (Attach. C).

## CLAIMS BARRED BY "STATUTES OF LIMITATION" OR "LACHES"
### <u>(Objections D-2, D-4 and D-6)</u>

11.    Grace's last batch of objections is based on the statute of limitations.  Thus, Grace asserts that the Solow claim is barred because it was "filed after the longest applicable Statute of Limitation" calculated from the date of actual or constructive notice, or because "the delay in bringing such claim has unreasonably prejudiced Grace".  <u>See</u> Grace's Key at 3.  (Attachment A).

These objections are as unavailing as the earlier objections.  First, as Grace's counsel conceded at the April 25, 2005 hearing,  New York passed an asbestos revival statute in 1986 that applied to the Solow claim: "And so Mr. Solow's asbestos property damage claim, which arose in 1973, was revived by the 1986 statute".[10]  Thus, Solow's claim is indisputably timely under New York law.

Likewise, Grace's claim that it was unreasonably prejudiced because Solow delayed in bringing its claim is without any factual support whatsoever.  Indeed, Solow's claim is one of the <u>earliest</u> claims against Grace in this bankruptcy.  It had been in litigation and completed its trial years before Grace's bankruptcy filing.  Grace's expertly presented trial defense certainly gave no hint its lawyers were unduly prejudiced by anything Solow did.  As was its custom at trial, Grace selected from its stable of carefully-prepared corporate witnesses who had been involved in its fireproofing sales, and brought to trial those whom it thought best able to present its position.  Likewise, Grace used well-prepared experts to buttress its arguments.  At no time did Grace contend that anything Solow did prevented Grace from putting on an adequate defense. After six weeks of a hard fought trial, such an argument would not have played well in Manhattan.  It should fare no better here.

---

[10] <u>See</u> April 25, 2005 Tr., at 11.   (Attach. D).

To the extent Grace is attempting to maneuver this Court into revisiting the statute of limitations issues, this Court should decline the invitation.  At the April 25, 2005 hearing, the Court clearly told Grace that it would neither intrude upon res judicata principles by re-examining the Solow case that had been fully tried, nor approve launching the parties on a multi-year, pre-confirmation set of cross-appeals.  With respect to res judicata, the Court said, "I think the outcome is going to be that their claim is allowed because there is a judgment that's res judicata.  This Court is not going to set aside findings of fact and conclusions of law of another court."  See April 25, 2005 Tr., at 33.  (Attachment D).  In rejecting Grace's invitation to launch the parties on their respective cross-appeals, the Court said:

> [I]t doesn't seem to me that the debtor, in terms of its settlement motion, has substantiated that it's likely to win on appeal any more than the other side is likely to win on appeal, so that the estate will benefit from pursuing this matter now.

See April 25, 2005 Tr., at 27.  (Attachment D).

What the Court did suggest is that rather than engage in costly cross-appeals, "Where neither side is too likely to win … why don't we go on with the $25 million claim, forget the appeals, and figure out how it should be classified in the plan."  See April 25, 2005 Tr., at 21. (Attachment D).  The Court suggested to Grace that a far better use of time and resources would be mediation:

> If you want relief from stay to attempt a mediation to see if you can come to some negotiated solution to this without pursuing the appeals that will take probably a considerable amount of money, I would be willing to consider that.

See April 25, 2005 Tr., at 32-33.  (Attachment D).  Since that day, almost six months ago, Grace has made no attempt to mediate the Solow claim.

Solow's counsel stands ready, as he did on April 25, 2005, to discuss the Solow claim with any Grace representative at any time, any place, and under any reasonable circumstances to

attempt to resolve this claim and, hopefully, take a small step toward resolution of the entire bankruptcy.

As a review of Grace's objections to the Solow claim illustrates, the goal of achieving reasonable resolution of claims is becoming lost in a morass of computer-generated objections where, at least in Solow's case, the bulk of the objections bear no relation to reality. This unfettered objection process has put Solow's counsel to time and effort to respond, and the Court and its staff to time and effort to read the response. If someone would turn off the computers and pick up the phone, perhaps some progress can be made.

With respect to the present situation, Solow respectfully requests that the Court overrule Grace's objections.

Dated:  October 21, 2005
    Wilmington, Delaware

/s/      *William D. Sullivan*
William D. Sullivan (No. 2820)
Buchanan Ingersoll PC
1007 North Orange Street, Suite 1100
Wilmington, DE  19801
Phone: (302) 428-5500

-and-

Andrew W. Hayes, Esquire
Boies, Schiller & Flexner, LLP
333 Main Street
Armonk, NY 10504
Phone:  (914) 749-8200

Edward J. Westbrook, Esquire
Richardson Patrick Westbrook & Brickman
1037 Chuck Dawley Blvd., Bldg. A
Mount Pleasant, SC  20464
Phone: (843) 727-6513

Attorneys for Sheldon H. Solow, Solow
Development Corporation, Solovieff  Realty
Company, LCC and Solow Building
Company, LLC