| Exhibit # | Date | Description | Admitted | Published? |
|---|---|---|---|---|
| G-25.5 | 3/1/66 | Vermiculite Institute 25th Annual Meeting Chandler, Arizona. | 09/24/99 | No |
| G-26 | 3/29/66 | Peter Kostic to John Murphy Re: Zonolite Dust Conditions. | 10/07/99 | Yes |
| G-27 | 3/31/66 | B.F. Wake to R.A. Bleich Re: Asbestos-Cancer Link. | 9/24/99 | No |
| G-27.5 | 6/29/66 | Letter from M. Malter, W.R. Grace to Russ Parks, Underwriters Laboratories, re: UL building material list. | 09/24/99; 10/14/99 | No |
| G-28.25 | 10/29/66 | (Effective date) Certificate of Renewal for Patent Registration No. 424,905 to Georgia-Pacific Corp. (with attached related documents)(Watson exh.1). | 09/24/99 | No |
| G-28.6 | 1/16/67 | Boyle Engineering Lab reports, dated 01/14/67, and 01/16-20/67. | 09/24/99 | No |
| G-29.6 | 6/22/67 | OCF Customer Acceptance Standards No. TP-31. | 09/24/99 | No |
| G-31.255 | 12/5/67 | Answers to Interrogatories in the case of Lilas D. Welch | 10/07/99 | Yes |
| G-31.3 | 12/5/67 | Memo from C.F. Dugan to W.L. Taggart Re: Report of Trip to Kalispell, Montana. | 10/8/99 | No |
| G-33 | 1/9/68 | R.W. Sterrett to Stewart Re: Arrangement for Kostic to meet JM Pres. | 10/8/99 | No |
| G-33.8 | 2/22/68 | Letter from S. Y. Larrick to Maryland American General Group re: W. R. Grace & Co. Zonolite Division re: Lilas D. Welch. | 10/07/99 | No |
| G-34.3 | 5/9/68 | (Specification File) Memo from Alice B. Rollins to R.C. Ericson re: Lignosite Raw Materials. | 10/8/99 | No |
| G-34.5 | 5/27/68 | Memo from William Fay to Sons of Norway, Adlofson & Peterson and Western Mineral. | 09/24/99 | Yes |
| G-35 | 6/27/68 | E.D. Lovick to R.W. Sterrett Re: HEW Proposal. | 10/07/99 | Yes |
| G-36 | 7/10/68 | J.R. Lynch to E.D. Lovick Re: Vermiculite Mine Study Proposal. | 10/07/99 | No |
| G-37 | 7/18/68 | R.M. Vining to R.W. Sterritt Re: Response to Sterrett's memo of 07/01/68. | 10/07/99 | Yes |
| G-38 | 7/18/68 | Memo from Lovick to Sterritt Re: Release of list of employees. | 10/07/99 | No |
| G-39 | 7/25/68 | R.W. Sterrett to R.M. Vining Re: HEW Tremolite Proposal/Discussion w/JM. | 10/07/99 | No |
| G-40 | 7/26/68 | R.W. Sterrett to E.D. Lovick Re: HEW Proposal. | 10/07/99 | Yes |
| G-40.1 | 7/31/68 | Excerpt of R.E. Rothfelder, Monokote Book No. 7., "General Trends and Considerations" of Dec. 31, 1968 | 9/23/99 | Yes |
| G-41 | 8/1/68 | E.D. Lovick to J.R. Lynch Re: List of Employees. | 10/07/99 | Yes |
| G-41.1 | 8/28/68 | Memo from Clancy Topp to P.R. Strand Re: Proposed Release of Sprayed-On Fireproofing on Bank of America World Headquarters. | 09/24/99 | No |
| G-43.5 | 11/5/68 | Memo from Sterrett to Lovick Re: Social Security Administration Study. | 10/07/99 | No |
| G-43.8 | 11/9/68 | Memo from Lovick to Sterrett Re: Social Security Administration Study. | 10/07/99 | No |
| G-45 | 11/18/68 | Letter from Leslie A. Barron to Members of Vermiculite Institute (51). | 10/8/99 | No |

| Exhbit # | Date | Description | Admitted | Published? |
|---|---|---|---|---|
| G-48 | 11/22/68 | Letter from Hector P. Blejer to California Zonolite with report of Industrial Hygiene Study at Beverly Hills High School attached. | 9/24/99 | No |
| G-50 | 12/10/68 | N.F. Bushell to R.W. Sterrett Re: Paul Annon - Asbestosis. | 10/8/99 | No |
| G-51.01 | 1/1/69 | Report on Zonolite Division (excerpted) | 9/29/99 | Yes |
| G-51.2 | 1/3/69 | Memo from John C. Ottinger to James Cintani.  Subject:  Annual Report - Manhattan District. | 9/24/99 | Yes |
| G-51.5 | 1/20/69 | Memo from Walt Pickthall to Bob Randall Re: Bank of California job. | 09/24/99 | Yes |
| G-52 | 1/28/69 | Internal memo W.V. Culver to C.H. Wendel (Buzz) (58). | 9/24/99 | No |
| G-52.1 | 2/7/69 | Letter from Leslie Barron to R.W. Sterrett Re: Article in Feb. issue of "Walls and Ceilings". | 9/24/99 | Yes |
| G-53 | 2/13/69 | Memo, R.W. Sterrett to T.F. Egan (59). | 10/8/99 | No |
| G-55 | 3/11/69 | Peter Kostic to R.W. Sterrett Re: March 1969 article in Safety Engineering. | 9/24/99 | Yes |
| G-55.5 | 3/31/69 | Memo from Charles Dugan to Peter Kostic Re:  Labeling of Vermiculite. | 10/8/99 | Yes |
| G-57 | 5/9/69 | K.R. Cranker to R.W. Sterrett Re: Zonolite research. | 9/24/99 | Yes |
| G-57.5 | 6/20/69 | Jim Cintani to Tom Egan Re: Attendance at NYU on Asbestos. | 9/23/99 | Yes |
| G-58 | 7/3/69 | Memo from Lovick to Brown Re:  U.S. Public Health Service Study. | 10/07/99 | No |
| G-59 | 7/8/69 | C.S. Breslauer to R.W. Sterrett Re: Fine Wood Fiber. | 9/24/99 | No |
| G-61 | 10/1/69 | W.R. Grace & Co. Re: "1970 Long Range Plan - Volume I."(excerpted) | 10/8/99 | Yes |
| G-62 | 10/1/69 | Memo, R.J. Bragg to W.R. Payment (62). | 9/24/99 | No |
| G-62.2 | 10/14/69 | Letter from John C. Ottinger to Melville Praeger, Morell-Brown, Ince, regarding description of Mono-Kote fireprofing for work at Mt. Sinai | 9/24/99 | Yes |
| G-62.5 | 10/24/69 | Letter from Howard E. Ayer to Earl D. Lovick Re: Libby mortality study. | 10/8/99 | No |
| G-63 | 11/3/69 | Memo from Jim Cintani to Pete Hollis Re:  A Monthly Situation Report 10/69. | 10/07/99 | No |
| G-63.02 | 11/13/69 | Memo from H.A. Brown to E.D. Lovick and Peter Kostic Re: radiological interpretation of x-rays. | 10/07/99 | Yes |
| G-63.1 | 11/24/69 | Memo from F.W. Eaton to W.R. Wright Re: Trenton Air Pollution. | 10/05/99 *EJW says in record that was prev. admitted, but not formally admitted | No |
| G-63.2 | 11/25/69 | Letter from Thomas P.Feit, Vermiculite Institute, to Members of the Plaster & Fireproofing Committee Re: Minutes of Meeting held on November 20 and 21, 1969. | 9/24/99 | No |
| G-64 | 12/1/69 | Memo, T.F. Egan to V.H. Dodson (64). | 9/24/99 | Yes |
| G-65 | 12/2/69 | Memo, T.F. Egan to Distribution List (65). | 9/23/99 | No |

| Exhbit # | Date | Description | Admitted | Published? |
|---|---|---|---|---|
| G-66 | 12/5/69 | Memo from Jim Cintani to L.P. Hollis Re:  Monthly Situation Report 11/69. | 10/07/99 | No |
| G-66.01 | 12/8/69 | Salesman Report on Complaint. | 9/24/99 | Yes |
| G-66.011 | 12/8/69 | Memo from T.F.Egan to Distribution list. | 9/23/99 | No |
| G-66.015 | 12/10/69 | Letter from Dr. Selikoff to William Carroll (President of Contracting Plasterers' and Lathers' International Association). | 9/24/99 | No |
| G-66.05 | 12/19/69 | Letter from Carter A. Watson to James Zisson, W.R. Grace, re: Cellufloc, with attachments. | 9/24/99 | No |
| G-66.1 | 1/1/70 | CPD 1970 Long-Range Plan (excerpted) | 9/23/99 | Yes |
| G-66.2 | 1/27/70 | Memo from Ed Van Vliet, W.R. Grace to Jim Cintani re: Meeting CPLIA NYC Re: Air Pollution - Asbestos Fiber | 9/24/99 | No |
| G-66.7 | 3/6/70 | Memo from R. Rothfelder to Tom Egan re:  Cellufloc. | 9/24/99; 10/07/99 | Yes |
| G-69.01 | 3/30/70 | Letter from Thomas F. Egan, W. R. Grace, to Dr. Irving J. Selikoff, Mount Sinai School of Medicine, regarding cementitious listing of Mono-Kote | 9/30/99; 10/07/99 | Yes |
| G-70 | 3/12/70 | Memo, C. Wendel to All Personnel Specific Region (70). | 9/24/99 | No |
| G-76 | 4/27/70 | Newspaper Articles: "Show Cause Order Due in Asbestos Spray Controversy", "Bar Asbestos in City Work", "City Acts to Curb Asbestos Spray", "Asbestos Hearing Held", "City May Ban Sprayed - Asbestos Fireproofing", dated April 27,1970 through June 16, 1970. | 9/24/99 | No |
| G-77.1 | 4/29/70 | Memo from B.R. Williams to C.R. Lowe Re: Monthly Report Excerpts. | 9/23/99 | Yes |
| G-78 | 5/1/70 | Walls and Ceilings "Sprayed Asbestos Viewed with Growing Alarm" (78). | 9/23/99 | Yes |
| G-78.01 | 5/20/70 | Memo from T.F. Egan to distribution list Re:  Cafco Type D C/F. | 9/24/99 | Yes |
| G-78.1 | 5/14/70 | Letter from Thomas F. Egan to Dr. Irving Selikoff, Re: Tests in Zonolite and Monokote. | *10/01/99 | Yes |
| G-79.05 | 5/25/70 | Memo/announcement from T.F. Egan, Zonolite, entitled " Are You Listening To The Rumblings" | 10/8/99 | No |
| G-81.5 | 5/31/70 | Western and Central Region Sales Meeting, 05/31/70-06/02/70. | 9/24/99 | No |
| G-84 | 6/1/70 | Memo, T.F. Egan to Asher, et al. (excerpted) | 9/24/99 | Yes |
| G-84.5 | 6/1/70 | T.F. Egan to R.F. Chaney and T.W. Pickthall/Zono-Newark, CA. | 9/24/99 | No |
| G-84.6 | 6/5/70 | Memo from John V. Lindsay (mayor of New York) Re: Spraying of asbestos is harmful. | 9/24/99 | No |
| G-85.05 | 6/10/70 | Letter from Robert N. Rickles to M. Milton Glass, New York Board of Standards and Appeals regarding list of approved, sprayed, non-asbestos fireproofing materials | 9/30/99 | Yes |
| G-85.051 | 6/10/70 | Letter from Robert N. Rickles to John T. O'Neill, Commissioner NY Dept. of Buildings, regarding list of approved, sprayed, non-asbestos fireproofing materials | 9/30/99 | No |

| Exhibit # | Date | Description | Admitted | Published? |
|---|---|---|---|---|
| G-85.052 | 6/10/70 | Letter from Robert N. Rickles to Howard Reymers, Underwriters' Laboratories regarding list of approved, sprayed, non-asbestos fireproofing materials | 9/30/99 | No |
| G-85.1 | 6/11/70 | Letter from Thomas F. Egan to Irving J. Selikoff Re:  Investigation of Cementitious Sprayed Fireproofing. | *10/01/9 | Yes |
| G-87 | 6/15/70 | Memo, R.J. Bragg to T.F. Egan (87). | 9/24/99 | No |
| G-88.5 | 6/24/70 | T.F. Egan to R.W. Sterrett Re: Cellulose in MK4. | 10/07/99 | Yes |
| G-89 | 7/1/70 | Memo from Armand McMillan to K.E. Prince, Re:  MonoKote Plaster Compositions. | 9/24/99; 10/07/99 | Yes |
| G-90 | 7/10/70 | Announcement from Sprayon Research Corporation (90). | 9/24/99; 10/07/99 | No |
| G-90.2 | 7/23/70 | Memo from Bourke to Egan Re:  State of IL, Construction Safety Inspection Unit Meeting. | 9/24/99 | No |
| G-90.3 | 7/24/70 | Memo from Bragg to Brown Re:  Monokote Research Meetings. | 9/24/99 | Yes |
| G-90.385 | 8/6/70 | Memo from Jim Cintani to Pete Hollis.  Subject:  Monthly Situation Report July, 1970. | 9/24/99; 10/07/99 | Yes |
| G-90.4 | 8/11/70 | Memo from Thomas Egan to W.J. Bourke Re: Visitors at Chicago Plant. | 9/24/99 | Yes |
| G-91 | 8/13/70 | Memo from H.A. Brown to R.E. Schneider Re: Monokote Data for Health Safety Program. | 9/24/99 | Yes |
| G-92 | 8/20/70 | Memo, T.F. Egan to Distribution List (92). | 9/24/99 | No |
| G-93 | 8/11/70 | Research & Development Program for Asbestos-Free Monokote (93). | 9/24/99; 10/07/99 | Yes |
| G-93.1 | 9/1/70 | "Walls and Ceilings" magazine with Grace brochure. | 10/05/99 | No |
| G-94.2 | 9/3/70 | Memo from Jim Cintani to L. P. Hollis Re: monthly situation report August 1970. | 9/24/99; 10/07/99 | Yes |
| G-94.4 | 9/12/70 | Memo from L.P. Hollis to B.R. Williams. | 9/23/99 | No |
| G-94.6 | 9/15/70 | MEA-41-70-M Report of Material and Equipment Acceptance Division (Published Sep 15 1970) for U.S. Mineral Products Cafco Blaze Shield Type D C/F | 10/8/9 | No |
| G-94.61 | 5/9/70 | MEA Application File 41-70-M for U.S. Mineral Products Co. Cafco Type D C/F Fiber (Harry Gropp) (excerpted) | 9/30/99 | No |
| G-94.7 | 9/23/70 | Letter from T.F. Egan to R.L. Asher, J.A. McEachern, et al, regarding MK-4 test of blend floor deck and beam assembly | 10/08/99 | Yes |
| G-96.4 | 10/20/70 | Managers Meeting Presented by Thomas F. Egan, Re: Recommendations Course of Action Status, Sprayed Fireproofing MonoKote.m (excerpted) | 9/24/99 | No |
| G-96.5 | 10/20/70 | T.F. Egan to numerous Re: UL Approval MK4. | 9/24/99 | Yes |
| G-96.505 | 10/28/70 | Letter from R. Berhinig to T. Feit Re: U.L. listings. | 9/24/99 | No |
| G-96.51 | 11/1/70 | 1971 Business Plan/Construction Products Division. (excerpted) | 9/23/99 | Yes |

| Exhbit # | Date | Description | Admitted | Published? |
|---|---|---|---|---|
| G-96.52 | 10/20/70 | Memo from "Ralph" to "Dick" regarding the Mono-Kote Meeting - Washington, D.C., with attached Managers Meeting brochure (excerpted) | 10/07/99 | No |
| G-96.525 | 11/9/70 | Memo from Harold Romer, Dept. of Air Resources, to Robert N. Rickles, Commissioner Re: Asbestos - Philadelphia | 10/08/99 | Yes |
| G-96.5251 | 11/10/70 | Letter from Robert N. Rickles, Department of Air Resources, City of New York, to R.M. Vining, Zonolite, regarding possible substitute for asbestos-containing spray | 9/30/99 | Yes |
| G-96.5256 | 11/18/70 | Memo from G. Ecott-Trenton to F. Eaton re: Pollution Complaints, copies to W.R. Wright, J. Timmons | 10/05/99 | No |
| G-96.6 | 11/16/70 | Memo from T.F. Egan to All Zonolite Sales Representatives Re: MK4. | 9/24/99 | No |
| G-96.7 | 11/23/70 | Memo from C. Wendel to K. Harrison Re:  Mono-Kote Research. | 9/24/99 | Yes |
| G-96.8 | 11/23/70 | Letter from Richard L. Kempthorne to Robert Rickles, Re: SprayDon Ingredients. | 10/8/99 | No |
| G-98.21 | 5/26/70 | Note from Wright, Reed Re: change of materials (est. date) | 9/24/99; 10/05/99 (w/copy showing date attached) | Yes |
| G-98.31 | 1/25/71 | Letter from Thomas Egan to Robert Rickles re:New York approval process | 9/30/99; 10/07/99 | Yes |
| G-98.37 | 2/1/71 | Letter from John C. Ottinger to Thomas F. Galvin, Chairman, Board of Standards and Appeals, City of New York. Subject: CAL No. 60-60-SM, w/ enclosures. | 9/24/99 w/stip. That came from larger document | No |
| G-98.38 | 2/2/71 | Letter from Thomas F. Egan to Regional Managers, District Managers, Sales Representatives, Architectural Represenatatives. Subject: Mono-Kote Promotion Format 1971. | 9/24/99 | Yes |
| G-98.4 | 2/3/71 | Memo from J.N. McDougall to All Salesmen St. Louis District Re: Monokote requirements 1971. | 9/24/99 | Yes |
| G-98.43 | 2/14/71 | "Method of Differentiation MK-3; MK-4", from Lab. Data Book #104 issued to Walter R. Payment. | 9/24/99 | No |
| G-98.45 | 2/24/71 | Letter from Thomas Egan to Frederic A. Davidson, Re:  MK4. | 9/30/99 | Yes |
| G-98.51 | 3/2/71 | File of application of John C. Ottinger, W.R. Grace & Co. Constrc. Prod. Div. to MEA Division, New York City Department of Buildings (MEA - 20 - 71 - M) for Mono-Kote - 4 | 9/24/99 w/stip. that came from larger document | No |
| G-98.6 | 3/6/71 | Patent. | 9/24/99 | No |
| G-98.701 | 3/11/71 | Memo from Jim Cintani to Tom Egan, et al., re: Monokote Requirement - Trenton | 9/24/99 | No |
| G-98.702 | 3/11/71 | Memo from J.L. Sawyer to R.C. Ericson, et al., re: MK-3 Manufactured at Weedsport | 9/24/99 | Yes |
| G-98.75 | 3/18/71 | Memo from J.L. Sawyer to R.C. Ericson regarding MK-3 Manufactured at Weedsport, with copies to Brown, Cranker, Egan, Schneider, Wright, and Reyer | 9/24/99 | Yes |
| G-99.5 | 3/26/71 | Memo from Vining to Harrison Re: Price of MK4. | 9/24/99 | Yes |
| G-100.026 | 4/8/71 | Memo from W.R. Wright to T.F. Egan, et al., re: Mono-Kote Capacity | 9/30/99; 10/05/99 | Yes |

| Exhbit # | Date | Description | Admitted | Published? |
|---|---|---|---|---|
| G-100.03 | 4/29/71 | McDougall to Dunham Re: MK Pollution Complaint. | 9/24/99 | Yes |
| G-100.031 | 5/4/71 | Letter from Thomas F. Egan to H. W. Poston, Commissioner, City of Chicago. | 9/24/99 | No |
| G-100.032 | 5/10/71 | News Release of Kevin J. White, Mayor, City of Boston. | 9/24/99 | No |
| G-100.0323 | 5/11/71 | Memo from J. Cintani to T. Egan regarding Monokote Requirements, with copies to Williams, Brown, Rogers, Wright, and Timmons | 9/24/99; 10/05/99 | Yes |
| G-100.034 | 5/14/71 | J. C. Ottinger presentation "Fireproofing in New York City Today", excerpted from W.R. Grace "New York and Spray Fireproofing" program at The Plaza. | 9/24/99 w/ stip. That is incomplete & def. may admit rest of doc. | No |
| G-100.035 | 5/14/71 | T.P. Feit Notes of NYC Presentation.(excerpted) | 10/8/99 | No |
| G-100.0353 | 5/17/71 | Memo from W.R. Wright to H.A. Brown, et al., Re: Expanding Plant Operations Monthly Report - April, 1971 | 9/24/99; 10/05/99 | Yes |
| G-100.06 | 5/21/71 | City of Chicago Ordinance. | 9/24/99 | No |
| G-100.065 | 6/1/71 | Memo from W.R. Wright to H.A. Brown, et al., re: Northest Vermiculite and Mono-Kote Capacity Increase (excerpted) | 10/05/99 | No |
| G-100.075 | 6/10/71 | March & April Monthly Excerpts to Distribution | 10/8/99 | Yes |
| G-100.09 | 6/21/71 | Memo from R.C. Ericson to James Cintani (Trenton), et al., re: MK-4 Performance - Binghamton | 10/8/99 | No |
| G-100.2 | 6/29/71 | Letter from R. C. Ericson to Mark Bonsignor and memo from Fred Wertz Re: Eastman Kodak. | 9/24/99 | No |
| G-100.23 | 7/7/71 | OCF Customer Acceptance Standards No. RC55.02. | 9/24/99 | No |
| G-100.231 | 7/7/71 | Letter from Doug Stumm of OCF to Recipients of RC55.02. | 10/8/99 | No |
| G-100.31 | 8/6/71 | Letter from R.F. Chaney, Zonolite, to Dan Crowley Plastering, Inc. Subject: Powell Street Mezzanine BART, Contract #1S3014. | 10/07/99 | No |
| G-100.4 | 9/21/71 | R.H. Lafferty to R.M. Coquillette Re: Pollution Compliance. (excerpted) | 10/07/99 | Yes |
| G-100.41 | 10/1/71 | Memo from Peter Kostic to H.A. Brown Re: BuMines Report-Libby. | 10/14/99 | No |
| G-100.414 | 10/4/71 | Memo rom W. R. Wright, W. R. Grace to H. A. Brown, et al., re: Trenton Mono-Kote Operation | 9/24/99 | No |
| G-100.415 | 10/4/71 | Memo from A.M. Rosenberg to T.P. Feit, Re: A Development Project concerning MK Field Problems. | 9/24/99 | Yes |
| G-100.416 | 10/4/71 | Letter from J.H. Greer to T.P. Feit. | 9/24/99; 10/8/99 | No |
| G-100.43 | 10/12/71 | Handwritten letter from Mrs. Edward Graske to Zonolite Co. Re: Edward Graske. | 10/8/99 | No |
| G-100.49 | 10/29/71 | Memo to R.F. Chaney from B.R. Williams, Subject: Northeast District Mono-Kote Sales and Product Problems. | 9/24/99 | Yes |
| G-100.5 | 11/1/71 | F.W. Eaton to W.R. Wright Re: Notice of Violation. | 10/8/99 | No |
| G-100.61 | 11/16/71 | Letter from Jim Cintani, W.R. Grace to T. Feit Re: Monokote MK IV (104). | 9/24/99; 10/8/9 | Yes |

| Exhbit # | Date | Description | Admitted | Published? |
|---|---|---|---|---|
| G-101.1 | 5/13/71 | Memo from S.J. Lord to Plant Superintendents Re: Product Description MK. | 9/24/99 | No |
| G-102 | 5/14/71 | Memo from Strand [regarding introduction of MK-4 into the New York Market) | 9/24/99; 10/07/99 | Yes |
| G-102.11 | 6/30/71 | Letter from Frank L. Guarino to John Ottinger Re:  Back charges 622 3rd Avenue. | 10/8/9 | Yes |
| G-102.12 | 7/9/71 | Memo from T.P. Feit to T.F. Egan Re:  Binghamton Report (with 06/21/71 memo attached). | 9/24/99 | No |
| G-102.125 | 7/13/71 | Excerpts of application file of Keith W. Harrison, W.R. Grace & Company Construction Products Division, to New York City Department of Buildings, MEA Division for Mono-Kote 3 (MEA - 110 - 70 - M) | 9/28/99 | No |
| G-102.4 | 9/30/71 | Letter from G.S. Rajhans, Ontario Dept. of Health,  to W. F. Hunter, F. Hyde (Ontario) Limited Re:  Sampling of MK-3 in Schools. | 10/8/99 | Yes |
| G-102.45 | 10/7/71 | memo from J.L. Wright, W.R. Grace, re: Mono-Kote Quality Control | 9/24/99 | Yes |
| G-103.21 | 11/4/71 | Memo from Ralph Bragg to R.C. Ericson Re: Trip of 10/05/71 Chicago MK-4 Field Audit. | 9/23/99 | Yes |
| G-103.3 | 11/7/71 | Handwritten memo Re:  Distillations of Changes, Findings and Report on New York Monokote Situation. | 10/8/99 | No |
| G-104.1 | 12/1/71 | Background Information -- Proposed National Emission Standards for Hazardous Air Pollutants (104.1). | 10/8/99 | No |
| G-104.2 | 12/1/71 | Minutes of Meetings:  Plaster & Fireproofing Committee (104.2). | 9/24/99 | Yes |
| G-104.21 | 12/1/71 | Report on W.R. Grace & Co. Construction Products Division Expanding Plant Operations, by W.R. Wright (excerpted) | 9/30/99; 10/05/9 | Yes |
| G-104.3 | 12/6/71 | September and October monthly reports. (excerpted) | 9/24/99 | No |
| G-104.31 | 12/30/71 | Memo from Thomas P. Feit to J.L. Wright Re:  Environmental Protection Agency. | 10/8/99 | No |
| G-104.343 | 1/4/72 | Letter from W.V. Culver to W.K. Rogers re:  MK3 acceptability or necessity to go to MK4. | 9/24/99 | Yes |
| G-104.4 | 1/13/72 | Memo from H.C. Duecker to Tom P. Feit Re:  Proposed EPA standards. | 10/8/99 | No |
| G-105 | 1/14/72 | Letter to Voriel from Bourke (105). | 9/24/99 | No |
| G-105.1 | 1/24/72 | Letter from R.S. Randal to Crawford Co. (105.1). | 9/24/99 | Yes |
| G-105.2 | 1/24/72 | Letter from Tom Feit to Members of the Plaster & Fireproofing Committee enclosing minutes of meeting held on December 1 and 2, 1971. (excerpted) | 9/24/99 | No |
| G-106 | 1/28/72 | Memo, Jim Cintani to Tom Feit (106). | 10/8/99 | No |
| G-106.25 | 2/11/72 | Letter from Wesley D. Snowden, Manager, Environmental Services to Zonolite Construction Products Company, Attn: William V. Culver. Re: Valentine, Fisher & Tomlinson's Fidings on "Evaluation for Presence of Asbestos Particles in an Office Ventilation S | 10/26/99 | No |
| G-106.3001 | 2/15/72 | Transcript of Zimmer Reporting Service Re: NESHAP, L.A. | 10/8/99 | No |

| Exhbit # | Date | Description | Admitted | Published? |
|---|---|---|---|---|
| G-106.301 | 2/17/72 | Memo from T.L. Lyall Re: Dust Collecting System. | 10/8/99 | No |
| G-106.41 | 2/29/72 | Memo from O.F. Stewart to R.S. Kujawa Re: Libby Mine Closed to Visitors. | 10/07/99 | Yes |
| G-106.51 | 3/9/72 | Memo from Tom Feit to Bruce Williams with attached 03/07/72 letter from Gail F. Borden to B. R. Williams. | 10/8/99 | Yes |
| G-106.5101 | 3/21/72 | Memo from Jud McDougall to St. Louis District Salesmen, Tom Egan Re: MK-4 pricing and attaching Egan's 03/14/72 memo. | 10/8/99 | No |
| G-106.511 | 3/30/72 | Memo from J. L. Sawyer to W. R. Wright Re: Non-Uniformity in Milwaukee Monokote-3. | 10/05/99 | Yes |
| G-106.5111 | 3/27/72 | Letter from William V. Culver to R. B. Moran. | 9/24/99 | No |
| G-106.513 | 3/16/72 | Memo from W.S. Sinacore to B.Bourke Re: Monokote Pricing MK-4. | 10/8/99 | Yes |
| G-107.101 | 4/5/72 | Memo from R.A. Kulberg to H.A. Brown Re: Warning. | 9/24/99 | No |
| G-107.106 | 5/5/72 | Memo from H. A. Eschenbach to T. L. Lyall Re: Fiber Evaluation Program. | 10/8/99 | Yes |
| G-107.11 | 5/19/72 | Memo from R.C. Ericson to J.H. Huxley Re: MK-4 Manufacturing Formulation. | 10/8/99 | No |
| G-107.12 | 5/23/72 | Memo from D.D. Nigh to C.H. Wendel Re: Report on Chicago visit. | 9/24/99 | No |
| G-107.31 | 6/8/72 | Memo from T.P. Feit to B.R. Williams Re: EPA Proposed Standards for Air Emissions of Asbestos. | 10/8/99 | No |
| G-108 | 6/14/72 | Internal memo from R.C. Ericson to Monokote Plant Supts. (109.2). | 10/8/99 | No |
| G-108.1 | 7/1/72 | I. Selikoff Re: "Asbestos Air Pollution." | 10/4/99 | Yes |
| G-108.16 | 7/11/72 | Draft No. ZE-1002 originated by R. C. Ericson regarding Mono-Kote to all MK Manufacturing plants. | 10/8/99 | No |
| G-108.3 | 7/31/72 | Letter from B.J. Steigerwald to Mr. Bruce R. Williams Re: EPA Standards. | 10/07/99 | No |
| G-108.5 | 8/2/72 | T.P. Feit to J.H. Greer Re: Sale of MK3. | 9/24/99; 10/8/99 | Yes |
| G-108.72 | 9/28/72 | Letter from V.G.Monroe to Commonwealth Systems Corporation. | 10/8/99 | No |
| G-108.73 | 10/1/72 | Announcement from Tom Feit Re: Zonolite Announces Monokote-5 The Improved Asbestos-Free Plaster - Type Fireproofing Material. | 9/24/99 | No |
| G-108.755 | 11/7/72 | Letter from Thomas F. Egan to Roy Wyatt, Ellerbe Architects re: State Farm Insurance Building, Bloomington, Illinois. | 9/24/99 | No |
| G-109 | 11/22/72 | J.L. Wright, W.R. Grace to H.A. Brown regarding Action Requirements RE: Monokote Cracking. | 9/24/99 | No |
| G-109.0001 | 11/28/72 | Memo from C.H. Wendel to B.R. Williams regarding Zellner Plastering Co. cross complaint. | 9/24/99 | No |
| G-109.001 | 12/1/72 | Grace's CP Digest, Vol. 9, Dec. 1972. | 9/24/99 | No |
| G-109.044 | 1/8/73 | New York Budget Review Meeting (excerpted) | 9/24/99 | Yes |
| G-109.0455 | 1/25/73 | W.R. Grace & Co. Raw Material Specification # 9187. | 9/24/99 | No |

| Exhbit # | Date | Description | Admitted | Published? |
|---|---|---|---|---|
| G-109.051 | 2/8/73 | Letter to John Rogers Re: Peoples National Bank. | 10/8/99 | No |
| G-109.2 | 3/21/73 | A.M. Rosenberg to E.C. Duecker concerning Cracking in MK, problem since inception. | 9/24/99 | Yes |
| G-109.3 | 3/30/73 | Memo from Mike Moran to H.A. Eschenbach Re: OSHA's Label requirement on MK-3. | 9/24/99 | No |
| G-109.5 | 4/2/73 | Memo from R.M. Vining to B.R. Williams Re: Monokote Tonnage. | 9/24/99 | No |
| G-109.51 | 4/3/73 | Memo from H.A. Eschenbach Re: Labelling of MK-3 Bags. | 9/24/99 | No |
| G-110.01 | 4/11/73 | Memo from Tom Egan to District Managers | 10/26/99 | No |
| G-112.1 | 5/10/73 | Letter from Edwin Van Vliet to Elmont Plastering Co. Re: Crescent Office Park-Return of MK. | 10/8/99 | Yes |
| G-113.5 | 5/24/73 | Letter from William V. Culver re: Use of All Stocks of MK3. | 10/8/99 | Yes |
| G-115.51 | 6/27/73 | Form from Beverly Risteen Cancellation of MK3 Formula. | 10/8/99 | Yes |
| G-115.6 | 7/2/73 | Memo from R.C. Abernathy to R.M. Vining Re: Monokote Margins. | 10/8/99 | Yes |
| G-115.61 | 7/2/73 | Memo from Lee Draper to Sandy Mangino Re: Mono-kote #3. | 10/8/99 | Yes |
| G-117.21 | 11/20/73 | Memo from W.R. Wright to T.L. Lyall Re: Monthly Report October, 1973. | 10/14/99 | No |
| G-118 | 5/19/81 | Removal document from NTA Plant built in 1970 (118). | 10/07/99 | No |
| G-123 | 2/23/83 | R.E. Schneider to J.W. Wolter Re: Monokote Removal. | 10/22/99 | Yes |
| G-126 | 4/20/83 | Memo from R.C. Walsh to Zonolite Sales Organization, et al., regarding background of Grace's involvment in asbestos-related matters. | 10/05/99 | Yes |
| G-127 | 4/27/83 | Paul M. Conner to H. Eschenbach Re: Travelers Rest In-Place Asbestos. | 10/22/99 | Yes |
| G-141 | 11/10/65 | 3 pages from laboratory data book #89. | 09/24/99 | No |
| G-142 | 8/31/67 | Inter-office correspondence from W.V. Culver to C.H. Wendel (with attachment). | 09/24/99 | Yes |
| G-145 | 9/29/78 | Group of letters concerning buildings, 4 pages. | 10/22/99 | Yes |
| G-147 | 7/20/81 | Request for technical services (2 pages). | 10/22/99 | Yes |
| G-162 | 5/15/79 | Memo to McCarthy from Henderson. | 10/22/99 | No |
| G-163 | 9/12/79 | Memo to Hart from Henderson. | 10/22/99 | No |
| G-167 | 1/1/85 | Excerpts from Mr. Odesky's Monthly Summaries. | 10/22/99 | Yes |
| G-170 | 9/18/84 | Memo to McCoy from Odesky. | 10/22/99 | Yes |
| G-186.253 | 7/1/88 | Letter from W.G. Winey, Grace Construction Products, to Jim Hubbard regarding Topkrete Latex testing | 9/30/99 | Yes |

| Exhbit # | Date | Description | Admitted | Published? |
|----------|------|-------------|----------|------------|
| G-186.254 | 7/1/88 | Letter from James L. Hubbard to Gray Winey, W.R. Grace and Company regarding proposal for testing of backspray product(Topkrete) | 9/30/99 | Yes |
| G-186.3 | 5/1/90 | Article, "Replace Fireproofing Without Getting Burned". | 10/04/99 | No |
| G-186.7 | 8/19/92 | W.R. Grace & Co.-Conn.'s Amended Answers and Objections to Interrogatories and Requests for Production to Defendant, W.R. Grace & Co.-Conn. in In Re: Asbestos Personal Injury Cases Abrams Lead Nos. 88-5422(2), et cet. | 9/24/99 | Yes |
| G-188A | | Grace Annual Rept. (1964 excerpt) | 10/8/99 | No |
| G-188.01 | 1/1/65 | Grace Annual Report | 10/8/99 | No |
| G-188.02 | 1/1/67 | W.R. Grace & Co. 1967 Annual Report | 10/8/99 | No |
| G-188.1 | 1/1/71 | W.R. Grace &Co. 1971 Annual Report (excerpt) | 10/8/99 | No |
| G-188.4 | | Steel City Industries, Inc. Patent License Agreement. (excerpted) | 10/26/99 | No |
| G-270.07 | 7/1/63 | Zonolite Mono-Kote Ad in "Plastering Industries". | 09/23/99 | Yes |
| G-270.1 | 10/1/63 | Zonolite Mono-Kote Ad. | 09/24/99 | Yes |
| G-272.02 | 1/1/65 | Sweets Architectural Catalog File: thermal insulation, ceilings, sound, vibration control, lath, plaster, wallboard accessories. | 10/8/99 | No |
| G-275.01 | 11/11/68 | Zonolite brochures. | 10/8/99 | No |
| G-275.04 | 4/1/68 | Zonolite Monokote brochure. | 09/24/99 | Yes |
| G-276.06 | 6/1/69 | Zonolite brochure. | 9/24/99 | Yes |
| G-276.1 | 10/1/69 | Zonolite brochure (1970 Sweets). | 9/24/99 | No |
| G-277.01 | 1/1/70 | Brochure, "Zonolite Monokote Applicators Manual". | 9/24/99 | No |
| G-277.02 | 1/1/70 | The Grace Log. | 10/05/99 *EJW says is admitted when published | Yes |
| G-277.05 | 5/1/70 | USM Cafco Ad Blaze-Shield Type D CF in "Walls & Ceilings". | 9/30/99 | Yes |
| G-277.07 | 10/1/70 | Zonolite Mono-Kote Direct-To-Steel Fire Protection Technical Data MK-112 (Copyright 1966). | 9/24/99 | Yes |
| G-277.1 | 10/1/70 | Zonolite Brochure (1971 Sweets). | 9/24/99 | Yes |
| G-277.11 | 10/1/70 | Ad "Nobody...but nobody...understands fireproofing like the Zonolite man-on-the-job. Just Say Grace" | 9/24/99 | Yes |
| G-278.01 | 1/1/71 | Zonolite brochure (1972 Sweets). | 10/8/99 | No |
| G-279.012 | 11/1/72 | Walls & Ceilings MonoKote Advertisement: Product Peformance - they're getting it with Zonolite Monokote | 10/8/99 | No |
| G-299.02 | 4/1/70 | Zonolite Ad, "Walls & Ceilings". | 9/24/99 | Yes |
| G-306.07 | 7/1/66 | Zonolite Monokote Technical Data Sheet. | 09/24/99 | Yes |
| G-308.04 | 4/1/68 | Technical Data Re: Mono-Kote. | 09/24/99 | Yes |

| Exhbit # | Date | Description | Admitted | Published? |
|---|---|---|---|---|
| G-476 | 12/20/78 | Letter from Robert A. Merther to Joseph J. Joseph Re: North Berkshire School Union. | 10/22/99 | Yes |
| G-500 | 5/12/81 | Grace letter from Joel C. Hortenstine to Gordon Matson Re: Southwest Junior College, Marshall, Minnesota. | 10/22/99 | Yes |
| G-600.1001 | 3/22/83 | Confidential memo to D.L. Wightman from J.C. Yang, Subject: Talc in Ballon Plant. | 10/22/99 | Yes |
| G-600.101 | 11/10/80 | Memo from T. E. Hamilton to J. McCarthy. | 10/22/99 | Yes |
| G-600.3 | 7/13/84 | Memo from P.M. Conner to R.Catardi/Northbrook Re: Industrial Hygiene Visit. | 10/22/99 | Yes |
| G-600.4 | 8/23/84 | Memo from T.E.Hamilton to D.C.Wightman Re: use of Building 5. | 10/22/99 | Yes |
| G-600.51 | 1/2/85 | Memo from Paul M. Conner to file Re: Asbestos Removal- CPD area. | 10/22/99 | Yes |
| G-600.7 | 3/5/85 | Memo from Marvin J. Odesky to B.R. Martin Re: Asbestos Survey. | 10/22/99 | No |
| G-601.05 | 4/15/86 | Memo from P. J. Walsh to R. P. Turner (with attachments). | 10/22/99 | Yes |
| G-601.2 | 5/7/86 | Letter from Ken A. Anderson of Diamonite Products to Dennis Maxwell of American Standard Plumbing and Heating Group Re: 1/2 inch of asbestos cement on dryer. | 10/22/99 | Yes |
| G-601.415 | 5/29/86 | Memo from K.P. Manning to R.V. Rowe Re: Asbestos in Buildings. | 10/22/99 | Yes |
| G-601.45 | 8/18/86 | Memo from R. J. Marion to C. M. Oesch and P. J. Walsh Re: CNA Loss Control Report, North Bergen. (excerpted) | 10/22/99 | Yes |
| G-601.5 | 9/29/86 | Memo from H. A. Eschenbach to J.J. DeMarco Re: Bridgewater facility basement fireproofing material. | 10/22/99 (as redacted) | Yes |
| G-602.05 | 7/9/87 | Memo from L. J. Oman to R. J. Marion. | 10/22/99 | Yes |
| G-602.1 | 7/16/87 | Letter from Kenneth J. Skuba (Asbestos Removal & Hazards Control) to James D. Gold (W. R. Grace) Re:  removal of ACM at Quakertown, Penn. facility. | 10/22/99 | No |
| G-604.501 | 1/29/88 | Letter from Herb Calhoun of Chemical Waste Management to Robert L. Catardi  of Emerson & Cuming re:  W. R. Grace Bldg. - Asbestos Abatement. | 10/22/99 | Yes |
| G-604.502 | 1/29/88 | Emerson & Cuming Purchase Order No. E 01968 re:  01/29/88 Asbestos Abatement Proposal. | 10/22/99 | No |
| G-608.01 | 8/10/88 | Memo from P.B. Reif to A. Umlauf Re: removal of fireproofing material. | 10/22/99 | No |
| G-608.201 | 10/13/88 | Baker & Taylor memo from H. Baldeo to P. Reif Re: removal of fireproofing material. | 10/22/99 | No |
| G-608.3 | 11/22/88 | Grace letter from Anthony Chase to Robert Benson with attachments Re:  Asbestos Removal from Acton. | 10/22/99 | Yes |
| G-616 | 7/14/89 | Grace policy and organization guide Re: asbestos-containing materials in Grace premises for Washington Research Center (acoustical plaster). | 10/22/99 | No |
| G-621.2 | 12/29/89 | Brujos Scientific Inc. report of Asbestos Abatement Project, W.R. Grace and Company Chemical Research Library, dated 12/26/89-12/29/89. | 10/22/99 | Yes |

| Exhbit # | Date | Description | Admitted | Published? |
|---|---|---|---|---|
| G-629.1 | 9/24/90 | Asbestos Action Notification Information re:National Medical Care, Inc. South Bay Dialysis Unit. | 10/22/99 | Yes |
| G-660 | 11/14/91 | Shop Order #64817, Title: Asbestos Removal From Ducts and Under Air Handlers in E.S. Bag Making. | 10/22/99 | No |
| G-702 | | World Book Encyclopedia, pages 89 - 90 (fiberglass). | 9/24/99 | Yes |
| G-725 | 12/23/69 | Letter from Kostic to Fenner, Environmental Control Johns-Manville, re: visit to Lompoc | 10/14/9 | No |
| G-747 | 9/10/72 | General Services Administration (GSA) PBS Guide Specification 4-0920, Srpayed Fire Protection | 10/14/99 | No |
| G-765 | 8/11/70 | Memo from Egan to Beveredge re: City of San Francisco Special Meeting Asbestos Hazards July 21, 1970  (excerpted) | 10/14/99 | No |
| G-769 | | Feit practice Q & A (excerpted) | 10/14/99 | No |
| G-780 | 3/2/72 | Memo from Kostic to Lyall re: Air Sampling & Analysis - Dust Exposures | 10/14/99 | No |
| 527A&B | | chart created during examination of Anderson | 10/4/99 | No |
| 801 | 3/1/79 | EPA Asbestos-Containing Materials in School Buildings:  A Guidance Document Parts 1 and 2 (Orange Book). | 9/23/99 | No |
| 804 | 3/1/83 | Guidance for Controlling Friable Asbestos-Containing Materials in Buildings (Blue Book). | 9/24/99 | No |
| 804(a) | 6/1/85 | Guidance For Controlling Asbestos- Containing Materials in Buildings (Purple Book). | 9/24/99 | No |
| 806 | 6/20/86 | Federal Register 29CFR 1910-1926 Department of Labor:  Exposure to Asbestos:  Final Standard | 10/4/99 | Yes |
| 808 | 10/30/87 | Asbestos Containing Materials in Schools: Final Rule (40 CFR Part 763)  Efective 12/14/87. (AHERA) | 9/23/99 | No |
| 850.01 | 9/1/88 | City of New York, Department of Environmental Protection, Asbestos Control Program Rules and Regulations | 10/04/99 | No |
| 851 | 8/10/94 | Federal Asbestos Regulations (OSHA) | 10/04/99 | Yes |
| 900 | | ACM in Plaintiff's Building. | 9/23/99 | No |
| 900.01A | | Blowup of Mono-Kote formula chart | 10/14/99 | No |
| 900.01 | | Compilation of product formula and lists pertaining to W.R. Grace asbestos-containing and non-asbestos -containing building products | 09/24/99; 10/01/99 w/ explanation that chart is a summary; 10/14/99 | Yes |
| 902 | | Sample Material. | 10/01/99 | Yes |
| 949A&B | | Photographs/Microphotographs of asbestos in dust and/or products. (A=Longo's Direct Dust Analysis B=Longo's Direct Dust Photomicrographs) | 9/27/99 | No |
| 999.02 | | MK-4 invoices | 10/8/99 | No |
| 1155A | 9/8/98 | Letter from Joseph Seiler, ATC, to Mark Finnerty, Cushman & Wakefield, transmitting updated Operations and Maintenance manual and procedures | 9/28/99 | No |

| Exhbit # | Date | Description | Admitted | Published? |
|----------|------|-------------|----------|------------|
| 527B | | chart created during examination of Anderson | 10/4/99 | No |
| 1000.05 | | Documents Regarding Emergency Cleanups of ACM (excerpted) | 10/07/99 | No |
| 1002.01 | | Invoices for asbestos abatement of the 25th floor | 10/28/99 | No |
| 1002.05 | | Contractor Notifications (excerpted) | 10/07/99 | No |
| 1002.08 | | Tenant Notifications | 10/07/99 | No |
| 1008.01 | | Diesel Daily Construction Progress Reports | 10/01/99 | No |
| 1008.02 | | Semi-Monthly Construction Progress Reports | 10/01/99 | Yes |
| 1008.03 | | Distasio & Van Buren Construction Inspection Reports | 10/01/99 | No |
| 1008.05 | | Fireproofing Progression chart | 10/28/9 | No |
| 1008.06 | | Fireproofing Shipments | 10/28/99 | No |
| 1017.05 | 4/17/70 | Letter from Thomas Egan, WR Grace, to Distribution List re: attached article"Controlling Construction Pollution" | 10/28/99 (trns. says "1017.015") | No |
| 1033 | 11/12/70 | Agreement between Diesel Construction and Glenbro Plastering Corporation | 10/8/99 | No |
| 1036.05 | 12/1/70 | Trenton District Month of December 1970 Shipping Summary | 9/24/99 | No |
| 1049 | 5/19/71 | List (WR Grace) Re: Fireproofing Projects in Progress at Trenton Plant as of May 19, 1971 | 9/24/99 | Yes |
| 1052 | 7/7/71 | Memo from R.C. Ericson to W.K. Rogers, et al., re: MK-3 Shrink-Cracking 39th to 42nd Floors Solow Building | 9/24/99 | Yes |
| 1056 | 7/22/71 | Memorandum from Cintani, Jim, WR Grace Re: Monokote Problems | 9/24/99 | Yes |
| 1060 | 7/30/71 | Memorandum from Ericson, R. C., W.R. Grace,  Re: MK-3 Shrink Cracking - Rudin Management Project | 10/01/99 | No |
| 1079 | | W. R. Grace Invoices for the Solow Building | 9/24/99 | Yes |
| 1079.01A | | Dept. of Buildings certificate of Occupancy No. 71632, dated 2/2/72 (9 West 57th St. floors 2nd sub, 1st, 3rd, 18th to 24th, 25th, 26th) | 10/08/99 | No |
| 1079.01B | | Dept. of Buildings certificate of Occupancy No. 71721, dated 2/2/72 (9 West 57th St. floors 2nd sub, 1st, 3rd, 6th & 7th, 8th  to 24, 25th, 26th to 35th)) | 10/8/9 | No |
| 1079.01C | | Dept. of Buildings certificate of Occupancy No. 72072, dated 2/2/72 (9 West 57th St. floors 2nd sub, 1st, 3rd, 6th & 7th, 8th  to 24, 25th, 26th to 35th)) | 10/8/99 | No |
| 1084 | 6/12/86 | Report from Hall-Kimbrell Environmental Services Re: Prioritization Asbestos Assessment Study - Cushman & Wakefield, 9 West 57th Street, New York City, N.Y. - Report No. 0649 | 9/28/99 | Yes |
| 1087A | | Letter from Xerox to Carl Olson, Cuchman & Wakefield | 9/28/99 | Yes |
| 1088 | 3/12/87 | Letter from Rudolph, Hans Re: Lobby Renovations | 10/07/99 | No |
| 1089 | 3/31/87 | Letter from McMahon, John F. Re: Asbestos concerns | 10/07/99 | Yes |

| Exhbit # | Date | Description | Admitted | Published? |
|---|---|---|---|---|
| 1100 | 11/10/87 | Report from Applied Environmental Technology, Inc. Re: Asbestos Survey For 9 West 57th Street, N.Y., New York 10019 | 10/07/99 | Yes |
| 1110 | 9/22/88 | Letter from Duvall, Michael Re: Proposed asbestos abatement - 51st floor | 9/27/99 | Yes |
| 1116 | 6/29/89 | Letter from Brown, Robert C., Hygenix, to Marke McKenna, Solow Management Corp., Re: Lab Analysis of Fireproofing | 9/28/99 | Yes |
| 1117 | 7/17/89 | Letter/Report from Brown, Robert C. Re: Lab Analysisof Fireproofing - 6/30/89 Inspection | 10/07/99 | No |
| 1118 | 7/26/89 | Letter from Cappell, Marcie, Chemical Bank Re: Phase I Environmental Assessment (by Clayton Environmental) | 9/28/99 | Yes |
| 1119 | 8/1/89 | Outline from Thorpe, Marianna Re: 9 West 57th Street Operations & Maintenance Program | 10/07/99 | No |
| 1121 | 8/17/89 | Letter from Duvall, Michael Re: Asbestos Related Activities at 9 West 57th Street | 10/07/99 | No |
| 1123 | 10/15/89 | Report from Hygeia, Inc. Re: Industrial Hygiene Monitoring Of Asbestos Removal at 9 West 57th Street, 50th Floor (Our Ref.: 15268.01) | 10/07/99 | No |
| 1128 | 3/16/90 | Letter from Hygeia Inc. Re: Our Ref. No. 15208.15 9 West 57th Street Floor 1B | 10/8/99 | No |
| 1140 | 1/28/91 | Letter from Mark Finnerty, Cushman & Wakefield, to Robert Filippi, Solow Building Compnay, re: Request for Owner's Approval, B.M.S. - Preparation for the Floor Temperature Sensors | 9/28/99 | No |
| 1152.05 | 2/22/94 | Letter from Barry Smerling, ATC Enviromental, to Steven Cherniak re: 9 West 57th Street, Operations and Maintenance Program | 10/07/99 | No |
| 1153 | 1/3/94 | Letter/Report from Smerling, Barry, ATC Environmental Re: ATC Bulk Sample Collection and Air Monitoring - 4th Floor - Return Fan No. 8 | 10/07/99 | Yes |
| 1155 | 4/1/94 | Manual from ATC Environmental, Inc. Re: Operations and Maintenance Program prepared fro Cushman & Wakefield, Inc. and Solow Building Compnay for the property located at 9 West 57th Street New York, New York | 9/28/99 | No |
| 1159 | 5/26/95 | Fax cover sheet w/ Proposal from Singleton, Dave J.P. Morgaon Re: Request for Proposal for Morgan Guaranty Trust Company of New York | 10/05/99 | No |
| 1161 | 6/10/95 | Photographs regarding building inspection on June 10, 1995 by Paul Heffeman | 9/27/99 | No |
| 1167 | 10/24/95 | Letter from William M. Longo, Materials Analytical Services, to William M. Ewing, Compass Environmental Inc. re: Solow Building Microvac Dust report | 10/28/99 | No |
| 1168 | 10/24/95 | Letter report from William E. Longo, Materials Analytical services, to Paul Heffeman, Environmental Consultant re: Solow Micovac Dust, with attached analysis | 10/28/99 | No |
| 1171 | 1/19/96 | Letter from Doug Kirkner, Grace Construction Products Division to Barry Smerling, ATC Environmental re: Re: 9 West 57th Street | 10/07/99 | No |
| 1173 | 1/29/96 | Letter report from William E. Longo, Materials Analytical Services, to Richard Hatfield, Law Enginering, re: Solow Building, Microvac Dust Samples (samples received 6/21/95) | 9/23/99 | No |

| Exhbit # | Date | Description | Admitted | Published? |
|---|---|---|---|---|
| 1179 | 11/27/96 | Memorandum from Bolsch, John, Assistant Property Manager Cushman & Wakefield, Inc. | 9/28/99 | No |
| 1185 | 10/27/97 | Memorandum from Benner, Marcus Re: 9 West 57th Street - Preliminary Analysis of the Ventilation and Air Conditioning with Respect to the New HEPA Filter Installation | 10/07/99 | No |
| 1185.05 | 1/1/97 | ATC Associates Inc. Limited Asbestos Survey at 9 West 57th Street, New York, New York, 17th Through 32nd Floors, ATC Project No. 16909-0035 | 10/07/99 | No |
| 1189 | 2/1/98 | Report from ATC Associates Re: Limited Asbestos Survey performed at 9 West 57th Street, 40th Floor South Office Space | 10/07/99 | No |
| 1192 | 4/24/98 | Memorandum from Finnerty, Mark Re: Abatement of Spray-on Fireproofing, Fortieth Floor, Partial, 9 West 57th Street | 10/07/99 | No |
| 1193 | 5/7/98 | Report of Richard Hatfield, MAS, re: Solow Building NYC (samples received 5/4/98) | 9/23/99 | No |
| 1194 | 5/19/98 | Letter report from James Lee Hubbard, Consulting Scientist, re: Solow Building fiber release tests | 9/30/9 | No |
| 1294A | | Curtis's extraordinary chart of Hubbard's photomicrographs | 9/30/99 | No |
| 1200 | 5/27/99 | Letter report from William E. Longo, MAS, re: Solow Direct Dust Analysis | 9/27/99 | No |
| 1201 | 6/1/99 | Report of Richard Hatfield, MAS, re: Solow Building (samples received 5/27/99) | 9/23/99 | No |
| 1203 | 5/24/99 | Log photographs taken by Richard Hatfield on 5/02/98 and 5/24/99. | 10/8/99 | No |
| 1203A-H | | Hatfield photos | 10/8/99 | No |
| 1204 | 5/24/99 | Photographs taken by Richard Hatfield on 5/02/98 and 5/24/99. | see 1203 A-H | No |
| 1254(A-L) | | Halliwell Engineering's Tables, Charts & Photographs | 10/01/99 | No |
| 1275G | | Schematic chart depicting curent status of fireproofing=G | 9/24/99 | No |
| 1275H | | Video (Hatfield) Demonstrating Friability and Reintrainment=H | 9/24/99 | No |
| 1275B | | Video of Hatfield's Inpection of the Solow Building=B | 9/24/99; 9/27/99 | No |
| 1275(S) | | Plaintiffs' Damages Breakdown | 10/27/99 | No |
| 1275 | | Demonstrative Charts and Graphs | 9/24/99; 9/27/99 | No |
| 1275(M) | | Blowup - Damages chart of $ 54 million lost value (J. Haims) | 10/07/99 | No. |
| 1275F | | Schematic chart depicting location of fireproofing installed=F | 9/24/99 | No |
| 1275J | | Hubbard Fiber Release Video | 9/30/99 | No |
| 1275C | | Photograph of the Solow Building, 9 West 57th Street=C | 9/24/99 | No |
| 1275A | | Videos of Hatfield's Solow Bldg. Inspection | 9/24/99 | No |
| 1275E | | Photo of Solow building under construction=E | 9/24/99 | No |

| Exhibit # | Date | Description | Admitted | Published? |
|-----------|------|-------------|----------|------------|
| 1275(L) | | Chart - Value of the Solow Building over time. | 10/07/99 | No |
| 1275D | | Chart - "Fireproofing - One of Hundreds of Products"=D | 9/24/99 | No |
| B2 | 8/22/61 | Memo from Wendel to Salesman | 10/26/99 | No |
| C10 | 5/30/86 | Grace memo from C.W. Forrest to R.C. Deskin, F.W. Eaton, re: Insulation Material in Machine Shop (def. Exh) | 10/22/99 | No |
| 1351a | | Review Draft of Managing Asbestos In Place (green book) | 10/19/99 | No |
| 1356 | 8/27/80 | IBM Asbestos Program | 10/21/99 | No |
| 1357 | 11/4/82 | Report on Review of Asbestos Program, IBM | 10/21/99 | No |
| 1368 | 7/9/80 | Memo from Finke re: 71 schools study | 10/22/99 (@ pg. 3720) | Yes |
| 2028 | | Grace Organizational Chart | 10/26/99 | No |
| 2074 | 12/16/70 | Memo from Culver to Egan transmitting Valentine Fisher report | 10/26/99 | No |
| 275 | | Boyle chart | 10/14/99 | No |

# ATTACHMENT D

1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE


IN RE:                            . Case No. 01-01139(JKF)
                                  . Chapter 11
                                  . Jointly Administered
   W.R. GRACE & CO., et al.,      .
                                  . 824 Market Street
                                  . Wilmington, Delaware  19801
                       Debtors.   .
                                  . April 25, 2005
. . . . . . . . . . . . . . . . . 12:01 p.m.


TRANSCRIPT OF OMNIBUS HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtors:          Kirkland & Ellis, LLP
                          By:  JANET S. BAER, ESQ.
                          Aon Center200 East Randolph
                          DriveChicago, IL  60601

For the Debtors:          Pachulski, Stang, Ziehl, Young,
                           Jones & Weintraub, P.C.
                          By:  DAVID W. CARICKHOFF, JR.,
                               ESQ.
                          919 Market Street
                          16th Floor
                          P.O. Box 8705
                          Wilmington, DE  19899

Audio Operator:           Jason Smith

Proceedings recorded by electronic sound recording, transcript
            produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**

2                                    2

APPEARANCES (Cont'd.):

For National Union:          Zeichner Ellman & Krause LLP
                             By:  YOAV M. GRIVER, ESQ.
                             575 Lexington Avenue
                             New York, NY  10022

For Sheldon Solow, et al.:   Richardson, Patrick, Westbrook
                               & Brickman, LLC
                             By:  EDWARD J. WESTBROOK, ESQ.
                             1037 Chuck Dawley Boulevard
                             Building A
                             Mount Pleasant, SC  29464

For Sheldon Solow, et al:    Buchanan Ingersoll, PC
                             By:  WILLIAM D. SULLIVAN, ESQ.
                             The Nemours Building Suite 1110
                             1007 North Orange Street
                             Wilmington, DE 19801

For Maryland Casualty:       Connolly Bove Lodge & Hutz LLP
                             By:  JEFFREY C. WISLER, ESQ.
                             The Nemours Building
                             1007 North Orange Street
                             Wilmington, DE  19801

For Sealed Air Corporation:  Skadden, Arps, Slate, Meagher
                               & Flom, LLP
                             By:  DAVID R. HURST, ESQ.
                             One Rodney Square
                             P.O. Box 636
                             Wilmington, DE  19899

For Unigard and CU:          Drinker Biddle & Reath LLP
                             By:  MICHAEL F. BROWN, ESQ.
                             One Logan Square
                             18th & Cherry Streets
                             Philadelphia, PA  19103

For Unsecured Creditors'     Stroock & Stroock & Lavan, LLP
Committee:                   By:  KENNETH PASQUALE, ESQ.
                                  LEWIS KRUGER, ESQ.
                             180 Maiden Lane
                             New York, NY  10038
                             (Mr. Kruger, Telephonic
                               Appearance)

For the Equity Committee:    Kramer, Levin, Naftalis &
                               Frankel, LLP

**J&J COURT TRANSCRIBERS, INC.**

11                              11

approximately $25 million.

Grace filed an appeal, and there are three appealable issues being raised. The first, Your Honor, is that under existing New York law, Solow's claim was barred by the statute of limitations. Under New York law, the claim arose or accrued in 1973, when the building was completed. However, in 1986, the New York legislature passed a reviable act which created a window to revive asbestos claims which would have been barred by the statute. And so Mr. Solow's asbestos property damage claim, which arose in 1973, was revived by the 1986 statute.

However, in 1973, when the cause of action arose, New York was a contributory negligence state. If plaintiff was found to have been more than 51 percent negligent, then the plaintiff took nothing by way of a verdict. New York changed this law in 1975 and abolished contributory negligence, but under the law it is for "causes of action that accrued after September 1, 1975." And so the first appealable issue, which we feel pretty strong about, is that under New York law, since the cause of action arose in 1973, and since in 1973 contributory negligence was a total bar to recovery, our first appealable issue is that since Solow was 62 percent contributorally negligent, he should take nothing.

Secondly, Your Honor, we believe the trial judge created reversible error when he calculated damages from 1987, rather than calculating the damages from the dates that were

**J&J COURT TRANSCRIBERS, INC.**



21

vetted these issues below, and certainly in this case these
issues have been analyzed agonizingly over 12 years, the
Appellate Courts, despite how they may sound superficially,
normally leave these alone.  So what we have here is a
situation --

        THE COURT:  Where neither side is too likely to win.
So, why don't we go on with the $25 million claim, forget the
appeals, and figure out how it should be classified in the
plan?

        MR. WESTBROOK:  Your Honor, that was my first
reaction when this came out of the woodwork.  When we're -- we
have 4,199 other asbestos property damage claims that Grace is
supposed to be sitting down and talking with Mr. Baena about
how to estimate them.  We have one more claim that's not only
been estimated, but it's essentially been liquidated.  Why
would we spend hundreds of thousands of dollars on each more,
after the sides have spent millions of dollars to get here, on
this one claim?  Why isn't there some rationality to this
process?  Why don't we do something about trying to get this
resolved and maybe take a small step for mankind in getting
this whole morass resolved and everybody can go home?

        THE COURT:  That's a principle I heartedly endorse,
the latter, getting this whole morass resolved and letting
everybody go home.  That much I am wholly in support of, Mr.
Westbrook.

                **J&J COURT TRANSCRIBERS, INC.**

22                                    22

        MR. WESTBROOK:  I'm with you, Your Honor.  And I

don't think that sending this case to a year and a half or two

years, or whatever, in the New York Appellate Courts --

remember, we're not even at the first level of appellate

review; after that we'd have discretionary review to the Court

of Appeals -- is going to move this process along.  I'd like to

find a way that we could move this along without us spending

millions of dollars in New York.  Thank you.

        THE COURT:  Why don't you go to some binding

arbitration on this issue?  Forget an appeal, get your claim

allowed, figure out what it is.

        MR. WESTBROOK:  We can certainly sit down.  We're

glad to talk with the debtor.

        THE COURT:  Or even mediation, if that's the need.

If it has to be litigated, I'm really not sure that Mr. Baena

is not correct, that for now there's a $25 million claim.  It

seems to lie with the property damage claims, not as a general

unsecured claim.  And I'm not exactly sure why that type of

treatment that will probably discharge any further liability

through a plan anyway isn't appropriate.  Why does this need to

be further litigated?

        MR. WESTBROOK:  Your Honor --

        MR. RESTIVO:  Your Honor, Jim Restivo.  We believe

the claim, when reviewed, either by this Court, if they want to

do it by proof of claim or by binding arbitration, or if they

                **J&J COURT TRANSCRIBERS, INC.**

23

want to do it in the New York Courts, will end up being a zero

claim, that the contributory negligence of Mr. Solow of 68

percent is a jury finding supported by the evidence, it won't

be overturned.  And the pure issue of law on that point is

whether or not the law in effect in 1973 when the claim arose,

which was contributory negligence, whether it applies.  It is

not a difficult question.  I mean, I hope we would win.  We

might lose.  But I mean it's a pure question of law.

          I think what Mr. Westbrook and Mr. Baena are trying

to refer to, I assume, I wasn't involved in the appeals, I

appreciate, that if you're trying to overturn a jury verdict on

the grounds that there was no evidence to support it, not just

asbestos defendants, but any defendants, or any plaintiffs have

difficulty doing that on appeal, and the success is not good at

that.  I wouldn't quarrel with that if that's what they're

talking about.

          We have three issues of pure law that will either

reduce this claim to zero or to about 15 or 16 million or less

than 3.2 million, and there ought to be some process to

determine the ultimate value of this claim, and right now it's

the New York Courts of Appeal, and we ought to determine what

this claim is worth.

          THE COURT:  Well, why is this claim going to be

treated any differently from any of the others?  As I

understand it, you're going to do a plan.  I'm still not

                    **J&J COURT TRANSCRIBERS, INC.**

convinced that you can put property damage claims into a trust

because it seems to me that they're all fixed.  There is no

future component aspect to them that I have heard about.  Maybe

there is some future abatement action that I'm not familiar

with that might get into a trust.  But let me bypass that issue

for a moment and assume that you can put the property damage

claims into a trust.  You're going to put them into a trust.

You're going to provide how they're going to get paid, and

anything that isn't paid is going to be discharged.  Why is

this claim any different from any of the rest?  I don't

understand why it's a general unsecured claim.  The surety

hasn't paid out yet.  The surety is still holding funds.  It's

a property damage claim.  If, in fact, there are funds that can

be used to pay it, then those funds might be able to go into a

trust, if there are other claimants subject to the surety.  I

don't know that either.  But why are we picking this particular

claim out for special treatment as opposed to any other

property damage claim?

         MR. RESTIVO:  I think the answer to that, Your Honor

-- I don't have an answer on classification.  I don't know

anything about the classification.  But in terms of a claim

that has gone to trial, this one has, I don't know that we have

any other property damage claims like that, most of the

property damage treatments of which I am aware in bankruptcy

will not pay money on a claim, you know, which is barred by the

25

statute of limitations.  You know these trusts or these debtors
don't give money away.  Here in issue is, is this claim barred
by the statute of limitations?

          THE COURT:  Well, the --

          MR. RESTIVO:  That's one of our three appellate
issues.

          THE COURT:  Okay, but the --

          MR. RESTIVO:  So right now if they put a claim in, we
say we will value it at zero.

          THE COURT:  Well, then you'll --

          MR. RESTIVO:  They say they'll value it at 70 million
or more.

          THE COURT:  Okay, then you'll -- but -- yes, and
you'll both lose, because you've got a judgment and that
judgment is res judicata unless and until it's turned aside on
appeal.

          MR. RESTIVO:  That's correct.

          THE COURT:  So right now Mr. Baena is a hundred
percent correct.  There's a $25 million property damage claim.
Why don't you reconcile with it and get on with life?

          MR. RESTIVO:  And the -- and again, Your Honor, I'm
not trying to argue with the Court.  The reconciling we believe
is to exercise our rights of appeal which will end up, we
believe, in this claim having a value of zero or 3.2 million or
16 million, not 25 to 70 million --

                    **J&J COURT TRANSCRIBERS, INC.**

26                                    26

THE COURT:  Okay, the debtor --

MR. RESTIVO:  -- and parties ought to know what the claim is worth.

THE COURT:  It's been represented that the debtors lost all but one of the appeals.  What about cross appeals?

MR. RESTIVO:  They do have a cross appeal.  They would like to --

THE COURT:  No, no.

MR. RESTIVO:  -- as I understand it, throw out the jury's finding --

THE COURT:  No.  Mr. Restivo, I understand what's the situation here.  I'm asking, how many times has the debtor faced cross appeals and what's been the outcome in similar appeals?

MR. RESTIVO:  The only appeals our firm has been involved with, Your Honor, have been in Pennsylvania and in West Virginia.  Pennsylvania was a statute of limitations question, not an overturn the verdict question, and so I don't think there were cross appeals, as I recollect.  In West Virginia, the trial court had determined as a matter of law that the product was defective.  We got a jury verdict.  The other plaintiff -- the plaintiff appealed.  The court granted a new trial.  We appealed that, and so that went up to the Supreme Court of Appeals of West Virginia on cross appeals. The West Virginia Supreme Court affirmed the grant of a new

**J&J COURT TRANSCRIBERS, INC.**

27

trial, disaffirmed the court's ruling that as a matter of law the product was defective, and so I treat the Supreme Court of Appeals of West Virginia as a decision in which parts of both cross appeals were won and parts of both cross appeals were lost by both the plaintiff and by Grace.

THE COURT: Which is something else that could happen in this case, and you might start this whole ball of wax all over again. I think you folks need some alternative to an appeal to see if you can get this resolved consensually. At the moment, I don't see the need to lift the stay. I don't see a need for special treatment of this claim. And it doesn't seem to me that the debtor, in terms of its settlement motion, has substantiated that it's likely to win on appeal any more than the other side is likely to win on appeal, so that the estate will benefit from pursuing this matter now. I agree that if the plan does not resolve the issues or if you're not able to consensually resolve the amount of the claim prior to the plan, that you're -- apparently you're going to have to reconcile that issue. It seems to me that right now there's a $25 million claim. It's apparently held by Mr. Solow, not by the surety at this point. I'm correct, the surety has not paid out, correct? It's Mr. Solow's claim.

MR. WESTBROOK: That's correct, Your Honor.

THE COURT: So, I see no need to have the surety pay out at this point in time. That issue ought to be reconciled

**J&J COURT TRANSCRIBERS, INC.**

28

in the plan, too.  If the surety's only obligation is to pay this claim, as opposed to any other, then that may be some grounds for taking this claim outside the typical way that asbestos property damage claims are going to be paid.  If the surety stands to pay other property damage claims, that may not be the case.  But I don't understand how, even if the surety pays, it's going to get a general unsecured claim when the payment that it's paying, the claim that it's paying, is a property damage claim.

MR. BACHRACH:  Your Honor, George Bachrach.  I'm the attorney for the surety, and I would disagree with you on that.  In order to get an appeal bond, Grace executed an indemnity agreement, which is a contractual obligation.  This appeal bond that was issued by St. Paul has no relationship to any asbestos property damage claim.  It's merely a contractual obligation of the debtor, a general unsecured claim, because we took no collateral for this bond.  So you've got a situation where the debtor has agreed contractually to reimburse the surety in the event the surety must make a payment in the future.

Now, I'm surprised that Solow would not want to go forward with the appeal because the bond says specifically that the surety only has to pay if the appeal is affirmed in part or all or if the appeal is dismissed.  So, Solow's failure to go forward with the appeal may risk its rights to make a claim under the appeal bond.

**J&J COURT TRANSCRIBERS, INC.**

29                                    29

　　　　Solow says that we have no general unsecured claim
because of the fact that the -- you know, 502(e) says that --
502(e)(1)(a) means that we may not have a claim.  But that
doesn't look at (d) and (c), which means that we may have an
indemnity claim or we may have a claim subrogated to Solow's
claims.  And that's where this case really got started, is
because the debtor did not fund the asbestos property damage
claim under their plan because they considered the St. Paul
claim to be an unsecured claim, and we're not in a position a
this point to assert a subrogation claim.  So, you know, in
summary, we have an indemnity claim under the agreement of
indemnity, and we should be classified that way.

　　　　THE COURT:  All right, maybe I'm confused about the
nature.  Some of the pleadings identify this as what you just
said, an appeal bond.  Others say it's a surety bond.  What is
it?

　　　　MR. BACHRACH:  It is an undertaking on appeal.  It's
a surety bond, which is a contractual obligation by the surety
that if the debtor or Grace does not pay the judgment that the
surety will pay the judgment, which is a contractual
obligation.

　　　　THE COURT:  Yes, it is a contractual obligation, but
it's an obligation to pay an asbestos claim which the debtor
would otherwise have to pay and which is going to be addressed
in the debtor's plan as payment of an asbestos claim.  So, if

**J&J COURT TRANSCRIBERS, INC.**

30

you're required to pay after the plan is confirmed, let's say,
this claim would -- Mr. Solow's claim would be put into the
claim category with the other asbestos property damage claims.
It's dividend will be paid out.  You, as the surety, will have
to pay out whatever that percentage is.  You will be subrogated
to that claim in the same class and entitled to get the payment
that Mr. Solow would get.

        MR. BACHRACH:  Or we have a reimbursement claim as a
result of making the payments and, therefore, are entitled to
reimbursement under our contractual claim.  502(e) gives us the
ability to have a reimbursement claim or a subrogation claim,
and the reason for the stipulation was to put us in the
category that we really are in, which is a reimbursement claim
for indemnification under the indemnity agreement.

        THE COURT:  Okay, well, I understand the nature of
your argument.  I'm not totally sure why you would have a
higher classification in the claim than the underlying claim
itself --

        MR. BACHRACH:  Well --

        THE COURT:  -- even if you have an indemnity claim.
I mean, you can't -- an indemnity doesn't get you higher than
the entity which you were indemnifying.  So, I -- maybe that's
something that I need to look at for plan confirmation.  I
don't think I need to look at it for now, because for now, I
don't see a basis for lifting the stay or to approve the

                    **J&J COURT TRANSCRIBERS, INC.**

settlement.  It seems to me the issue is not that clear-cut,

and the debtor ought to make this at best a disclosure

statement or plan issue in terms of classification because it

seems to me, again, without the benefit of having studied this

specific issue, but it seems to me that if you're indemnifying

Mr. Solow's claim, Mr. Solow's in, for example, Class 3, that

you're in Class 3 if you pay his claim.  I don't think you get

into Class 2 just because you pay his claim.  Now, if I'm

wrong, then I think that's a classification issue that should

be undertaken.  But I'm not going to approve a settlement over

the objection of the underlying claimholders who would stand to

be paid less because they'd be paid through a plan and then the

indemnitor would be paid more.  That seems to me to be giving a

preference to the indemnitor over the underlying claim.  The

debtor would be better off just paying the underlying claim and

forgetting the surety.

          MR. BACHRACH:  I disagree with that in the sense that

when Solow gets its appeal and the decision is made on the

appeal, if it's within the terms of the bond and the amount of

the bond, Solow will be paid and will be gone.  At that point

we have an indemnification claim or a subrogation claim.

Either have our indemnification claim under the indemnity

agreement or we have a claim being subrogated to Solow's claim

against the trust, and in this stipulation we agree to be

actually treated less -- certainly the present plan suggests

that the asbestos property damage claims will be paid a hundred percent in cash.  We are willing to accept lesser treatment now at whatever the numbers are, and that's what the stipulation says.  So we are agreeing to lesser treatment now for certainty in terms of the classification of our claim.

THE COURT:  Well, you're not really taking less.

MR. BACHRACH:  But we're not being treated better.  We're being treated worse.

THE COURT:  Well, no, you're not really.  You're just being treated in different collateral.  The debtor is still planning to pay a hundred percent to all creditors.  It's just that 85 percent of the unsecured claims are to be in cash, with 15 percent in stock.  That may actually be favorable, not less favorable.  I don't know that right now.  I don't know what stock values are going to do.  But that could very well give you a benefit, not a detriment.  But in any event, it won't be worse treatment.  It'll be just different collateral.  I don't see a basis for the settlement.  I don't think the debtor has substantiated the elements necessary to approve the settlement under Rule 9019, and I don't see the need for lifting the automatic stay to have this particular claim treated any more or less favorably than any other asbestos property damage claim.  If you want relief from stay to attempt a mediation to see if you can come to some negotiated solution to this without pursuing the appeals that will take probably a considerable

**J&J COURT TRANSCRIBERS, INC.**

amount of money, I would be willing to consider that.

MR. RESTIVO:  Your Honor, Jim Restivo.  Would the Court be willing to consider liquidating this claim through a proof of claim process --

THE COURT:  Well --

MR. RESTIVO:  -- that we would object to their claim on the grounds of these appellate issues and have this Court decide it by way of a proof of claim adjudication?

THE COURT:  Well, I mean, you could do that, Mr. Restivo, but I think the outcome is going to be that their claim is allowed because there is a judgment that's res judicata.  This Court is not going to set aside findings of fact and conclusions of law of another court.  If you want to do that, your only remedy is to get back into the State Court system, but I'm not sure it has to be done before plan confirmation.  I think you'd be better off attempting to settle the underlying claim and figuring out how you're going to pay it, rather than do this.

Okay.  Ms, Baer, I will ask the debtor to submit an order.  I understand it's not with your consent, but I'd still like to have you submit the order that denies this motion for the reasons that I've expressed on the record.

MS. BAER:  Yes, Your Honor, we will do so.

THE COURT:  Okay.

MS. BAER:  Your Honor, that takes us to agenda item

**J&J COURT TRANSCRIBERS, INC.**