IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | PD Claim No. 2977 |
| | ) | CHP Associates Inc. |
| | ) | 1415 Route 70 East |
| | ) | Cherry Hill, New Jersey |

**CLAIMANT CHP ASSOCIATES INC. RESPONSE
TO DEBTORS' OBJECTIONS (CLAIM NO. 2977)**

Claimant CHP Associates Inc. submits the following responses to Grace's objections to its claim, and respectfully requests the Court to reject Grace's objections.

**1.    Objection C-3(f) – Inconsistent Product Identification**

Claimant submitted a bulk sample analysis result that showed samples containing between 0.5% and 7.8% asbestos. [Ex. 1] Moreover, Claimant requested from Grace's bankruptcy counsel information it said would be available about Grace's own analyses of bulk sampling results. [Ex. 2] Claimant is awaiting Grace's analyses. However, there really is no question that Grace's Monokote-3 fireproofing was installed in Claimant's building and is still there. Claimant submitted invoices showing that at least 810 bags of Monokote-3 (MK-3) were delivered to the job site at Claimant's building, Cherry Hill Plaza. [Ex. 3] Therefore, Grace's objection regarding "inconsistent product identification" should be rejected.

**2.    Objection D-2 – Statute of Limitations (Constructive Notice)**

The statute of limitations in New Jersey for property damage claims is six years. N.J. Stat. Ann. §§ 2A:14-.12; 2A:2-725. Claimant purchased this property in April, 1998. [Ex. 4]

Claimant filed his claim on January 24, 2003, less than six years after he even bought the building. Therefore, Grace correctly does not objection to this Claim on statute of limitations (actual notice) grounds. However, it is difficult to see how Grace can possibly argue that Claimant's Claim is time-barred when he filed his claim within the six-year statute of limitations period.

The vast majority of jurisdictions have held that actual injury or contamination is the trigger for asbestos-in-building statutes of limitations, not the mere presence of asbestos in a building or some "constructive notice" of the possible dangers of asbestos in a building. E.g., MDU Resources Group v. W.R. Grace & Co., 14 F.3d 1274, 1279 (8th Cir. 1994) (injury is the contamination of building, not mere presence of asbestos); Adams-Arapahoe Sch. Dist. v. GAF Corp., 959 F.2d 868, 872 (10th Cir. 1992) ("[o]nly asbestos contamination constitutes a physical injury compensable under tort law."); City of Greenville v. W.R. Grace & Co., 827 F.2d 975, 977-78 (4th Cir. 1987) (injury is contamination, not mere presence of asbestos); San Francisco Unified Sch. Dist. v. W.R. Grace & Co. - Conn., 44 Cal. Rptr. 305, 306 (Cal. Ct. App. 1995) ("[w]e hold – consistent with the vast majority of other jurisdictions that have considered this issue – that the owner of a building containing asbestos cannot state a cause of action in tort against an asbestos manufacturer until contamination occurs."); Board of Educ. v. A, C and S, Inc., 546 N.E.2d 580, 587 (Ill. 1989) (ruling that physical harm, not mere dangerousness that creates a risk of harm, is required to support an award of damages); Kansas City v. W.R. Grace & Co., 778 S.W.2d 264, 268 (Mo. Ct. App. 1989) (statute does not run until release of toxic asbestos fibers into the environment and there is the ability to ascertain a substantial and unreasonable risk of harm from the release of the toxic asbestos fibers).

Indeed, Grace admits this in its very objections. "The mere presence of asbestos-containing material in a building or on a property does not create a health hazard." (Debtors' Fifteenth Omnibus Obj. (Substantive) to Asbestos Property Damage Claims ¶ 119.)

Grace claims in its objection D-2 that virtually all non-residential claimants' property damage claims are barred by the statute of limitations based upon constructive (or inquiry) notice. Grace's basic argument is that EPA regulations in the 1970s and 1980s, known as NESHAPs, and trade and building journals in the general press, should have put Claimants on constructive or actual notice of the potential dangers from ACMs. (Debtors' Fifteenth Omnibus Obj. (Substantive) to Asbestos PD Claims ¶ 95.) Grace ignores case law directly contrary to its position.

Courts generally have not been receptive to the argument that the National Emissions Standards for Hazardous Air Pollutants (NESHAPs) and other public and regulatory materials are sufficient to put an asbestos property damage plaintiff on constructive or inquiry notice that a property damage claim has accrued. See, e.g., California Sansome Co. v. U.S. Gypsum, 55 F.3d 1402, 1403 (9th Cir. 1995) (ruling that articles, publications, regulations, and seminars on the hazards of asbestos did not put plaintiff "on inquiry notice" of asbestos contamination); Kansas City v. W.R. Grace & Co., 778 S.W.2d 264, 269 (Mo. Ct. App. 1989) (ruling that building owner's notice of NESHAPs did not cause asbestos property damage claims to accrue).

Grace's argument that claimants should have been put on constructive notice of any possible claim by NESHAPs is also undercut by Grace's own admissions. In its Libby Operations Summary Report of March, 1992, Grace noted that it was informed that it was not complying with NESHAPs during demolition work. [Motley Rice Master Exhibit List, Ex. 1] Grace admitted that it had no notice of NESHAPs: "No one presently employed or employed at

the time of closure was aware of these regulations, nor were we informed of any such regulations by Cambridge [Grace headquarters] personnel." [Motley Rice Master Exhibit List, Ex. 1]

Even a high-ranking Grace regional sales manager for architectural sales for Grace products until 1990 admitted in 1995 that he was not familiar with NESHAPs. (Dep. of James Cintani, Transamerica Ins. Corp. v. W.R. Grace & Co. – Conn., No. C94-4083 (N.D. Cal.), July 25, 1995, p. 40, lines 23-25 [Motley Rice Master Exhibit List, Ex. 2].) Therefore, Grace's claim that all property damage claimants were put on constructive notice of their claims simply by virtue of government regulations and other materials in the general press is extremely weak.

Also, Grace's reliance on Prudential Insurance Co. of America v. United States Gypsum Co., 359 F.3d 226 (3d Cir. 2004) is misplaced. First, the Prudential court focused on Prudential's sophistication concerning building requirements and regulations: "[i]t is important to note that Prudential is a very sophisticated company that operates a large casualty insurance business and an extensive estate investment business." Id. at 234. The court distinguished such a sophisticated plaintiff from claimants here: "Such a sizable business operation not only provided Prudential with more opportunities than an average plaintiff to access ACM-related information, but it should have also given Prudential a greater incentive to diligently research and investigate any potential injuries it may suffer through the presence of ACMs in its own properties." Id.

The Prudential court made a point of distinguishing the RICO claims that Prudential brought from other cases in which remediation was the relief sought by plaintiffs. Prudential sought redress for monitoring and testing claims in its RICO action, while, in contrast, plaintiffs asserting the "actual injury/contamination" theory "confined their claims to costs of remediation and pursued their redress through state-law claims that require different accrual analyses than

4

used in RICO cases." Id. at 237 (emphasis added). Thus, Grace's attempt to use Prudential, a RICO action involving one of the largest property owners in the world, to show claimants in these proceedings should have had "constructive notice" of their claims before filing falls flat. The Court should reject Grace's objection based on "constructive notice."

Claimant hereby incorporates by reference as if fully contained herein any legal responses to Grace's constructive notice objection filed by any other property damage claimants.

### 3. Objection D-3 – Assumption of Risk

Grace's objection based on assumption of risk is faulty because it assumes that an action or risk accrues upon the mere existence of asbestos in a building, rather than the existence of an actual hazard or contamination. For example, Grace claims that "anyone purchasing a building after [1983] was on constructive notice that asbestos may be in the building and, if present, may pose a potential health hazard." (Debtors' Fifteenth Omnibus Obj. (Substantive) to Asbestos Property Damage Claims ¶ 101.) But, as noted above, Grace's constructive notice argument is faulty. It is not the mere presence of asbestos in a building that creates a risk or hazard; rather, it is contamination.

Claimant hereby incorporates by reference as if fully contained herein any legal responses to Grace's assumption of risk objection filed by any other property damage claimants.

### 4. Objection D-6 – Doctrine of Laches

Grace's objection based on the doctrine of laches simply makes no sense. Grace cannot argue that the statute of limitations has run on Claimant's Claim, because Claimant brought this claim less than six years after purchasing the building, within New Jersey's statute of limitations for property damage. Moreover, Claimant did not know that Grace's Monokote-3 contained

5

asbestos until 2001. (Claim Form, question 20 [Ex. 4].) Thus, Grace's laches argument is as meritless as its statute of limitations arguments, and the Court should reject them.

Claimant hereby incorporates by reference as if fully contained herein any legal responses to Grace's laches objection filed by any other property damage claimants.

### 5. Objection E-3 – Claims Relying On Air Sampling Results That Are Inapplicable

Grace's position, contained in paragraph 127 of its Objection, is that claims relying on air sampling results related to abatement are irrelevant to show a health risk or hazard during normal operations in a building. Three points are important here.

First, Claimant submitted air sampling results done during normal business hours, not during abatement. [Ex. 5] Thus, Claimant simply does not understand Grace's contention that the air sampling is "irrelevant to show risk during normal operations in a building." (Debtors' Fifteenth Omnibus Obj. (Substantive) to Asbestos Property Damage Claims ¶ 127.)

Second, even if it is Grace's contention that air sampling results related to abatement cannot show the existence of a health risk or hazard, then this implies that no contamination has been shown. But if no contamination has been shown, then claimant's cause of action cannot have accrued and the statute of limitations cannot even have begun to run.

Third, Grace's objection directly contradicts its previous position. As noted above, Grace was a member of the Safe Building Alliance (SBA). In January, 1988 the SBA put out a Background Paper entitled <u>Public Health Regulations for the Control of Asbestos Exposures in Buildings</u>. [Motley Rice Master Exhibit List, Ex. 5] In that paper, the SBA stated "[a]ir monitoring is not always necessary to make rational judgments about appropriate actions to be taken when friable asbestos-containing materials are identified in a building. <u>Some abatement decisions can responsibly be made on the basis of comprehensive visual inspection.</u> For

<u>example, obviously and significantly deteriorated materials typically require abatement</u>."

[Motley Rice Master Exhibit List, Ex. 5 at 57 (emphasis added)]  Therefore, air or dust sampling is not required, as Grace now claims, to determine whether abatement is required.

**6.     Conclusion**

For all of the above reasons, Claimant CHP Associates Inc. respectfully requests that the Court deny Grace's objections to this claim.

| | |
|---|---|
| Mt. Pleasant, SC<br>October 21, 2005 | Respectfully submitted, |

JASPAN SCHLESINGER HOFFMAN LLP

By:    /s/  Frederick B. Rosner
         Frederick B. Rosner (No. 3995)
         913 N. Market Street, 12th Floor
         Wilmington, DE  19801
         Telephone:  (302) 351-8000
         Facsimile:   (302) 351-8010

         - and -

MOTLEY RICE LLC

/s/  James M. Hughes
James M. Hughes, Esq.
28 Bridgeside Blvd.
P.O. Box 1792
Mount Pleasant, SC 29465
Telephone: (843) 216-9133
Facsimile: (843) 216-9440
E-mail: jhughes@motleyrice.com

         - and -

John J. Preefer, Esq.
60 East 42nd Street, Suite 1201
New York, New York 10165
Telephone:  (212) 490-9524
Facsimile:   (212) 682-3053

Co-Counsel for Claimant
CHP Associates Inc.