**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | PD Claim No. 6934 |
| | ) | The Church of St. Luke |
| | ) | 1079 Summit Avenue |
| | ) | St. Paul, Minnesota |

**CLAIMANT THE CHURCH OF ST. LUKE
RESPONSE TO DEBTORS' OBJECTIONS (CLAIM NO. 6934)**

Claimant The Church of St. Luke submits the following responses to Grace's objections to its claim, and respectfully requests the Court to reject Grace's objections.

**1.     Objection B-2 – Previously Settled Claims**

Grace's objection B-2 is that this Claim has already been settled. However, Claimant has no records of any settlement with W.R. Grace concerning the acoustical plaster in its church or school. Indeed, Claimant's counsel wrote to Grace's counsel asking for any information on any settlements with this Claimant. [Ex. 1] Claimant is awaiting a response from Grace. Until Grace provides documentation of any settlement with The Church of St. Luke, the Court should reject Grace's objection of previous settlement.

**2.     Objection C-2 – Insufficient Supporting Documentation**

Grace complains in this objection that Claimant The Church of St. Luke has provided insufficient supporting documentation relating to (1) purchase or installation; (2) removal, containment, or abatement; or (3) the presence of asbestos in the property. (Debtors' Fifteenth

Omnibus Obj. (Substantive) to Asbestos PD Claims ¶ 62.)  However, Claimant provided sufficient documentation relating to each of these categories.

As to installation, Claimant provided a W.R. Grace document entitled "Partial List of ZONOLITE ACOUSTICAL PLASTER Installations," dated October 19, 1954.  [Ex. 2]  It shows St. Luke's parochial school had 30,000 square feet of Zonolite acoustical plaster installed.  [Ex. 2].

As to containment or abatement, Claimant provided Grace with documents evidencing asbestos removal and abatement activities and costs.  [Ex. 3]

Finally, as to presence of asbestos in the property, Claimant provided a bulk sample report dated December 6, 1988 showing sprayed-on ceiling material containing 37% chrysotile.  [Ex. 4]  Also, the documents evidencing asbestos removals and costs specifically reference "spray on ceiling texture."  [Ex. 3]  Thus, there is no reason to disallow Claimant's claim based on this objection of "insufficient supporting documentation."

### 3. Objection C-3(f) – Inconsistent Product Identification

Claimant submitted a bulk sample analysis that showed the sprayed-on ceiling material contained 37% chrysotile asbestos.  [Ex. 4]  Claimant also submitted a W.R. Grace document entitled "Partial List of ZONOLITE ACOUSTICAL PLASTER Installations," dated October 19, 1954, which states that St. Luke's parochial school had 30,000 square feet of Zonolite acoustical plaster installed.  [Ex. 2].  Finally, Claimant requested from Grace's bankruptcy counsel information it said would be available about Grace's own analyses of bulk sampling results.  [Ex. 5]  Claimant is waiting for Grace documents regarding this request.  Therefore, the Court should reject Grace's objection regarding inconsistent product identification.

### 4. Objection D-1(c) – Any Acoustical Plaster Claim From Buildings Before 1969

Grace's objection D-1(c), especially when coupled with objection D-1(b), is simply nonsensical. First, Grace objects in D-1(b) to any claims for property damage caused by acoustical plaster after 1969. (Debtors' Fifteenth Omnibus Obj. (Substantive) to Asbestos PD Claims ¶ 92.) Then, in objection D-1(c), without any evidence whatsoever, Grace asserts that it "challenges whether any buildings built before 1969 still contain Grace's acoustical plaster. More likely, Grace anticipates that these nearly 40-year-old buildings would have replaced Grace product years ago." (Id. ¶ 93.) Thus, Grace is objecting to all claims by anyone for property damage caused by its acoustical plaster.

Claimant The Church of St. Luke indicated on its claim form that it was making a claim for Zonolite Acoustical Plaster. (Claim Form, question 13 [Ex. 6].) Moreover, Claimant has provided Grace acoustical plaster installation sheets showing that Grace's acoustical plaster was installed in the building. [Ex. 2] Therefore, the Court should reject Grace's objection D-1(c).

### 5. Objection D-2 – Statute of Limitations (Constructive Notice)

The statute of limitations in Minnesota for property damage is six years. Minn. Stat. § 541.05.

The vast majority of jurisdictions have held that actual injury or contamination is the trigger for asbestos-in-building statutes of limitations, not the mere presence of asbestos in a building or some "constructive notice" of the possible dangers of asbestos in a building. E.g., MDU Resources Group v. W.R. Grace & Co., 14 F.3d 1274, 1279 (8th Cir. 1994) (injury is the contamination of building, not mere presence of asbestos); Adams-Arapahoe Sch. Dist. v. GAF Corp., 959 F.2d 868, 872 (10th Cir. 1992) ("[o]nly asbestos contamination constitutes a physical

injury compensable under tort law."); City of Greenville v. W.R. Grace & Co., 827 F.2d 975, 977-78 (4th Cir. 1987) (injury is contamination, not mere presence of asbestos); San Francisco Unified Sch. Dist. v. W.R. Grace & Co. - Conn., 44 Cal. Rptr. 305, 306 (Cal. Ct. App. 1995) ("[w]e hold – consistent with the vast majority of other jurisdictions that have considered this issue – that the owner of a building containing asbestos cannot state a cause of action in tort against an asbestos manufacturer until contamination occurs."); Board of Educ. v. A, C and S, Inc., 546 N.E.2d 580, 587 (Ill. 1989) (ruling that physical harm, not mere dangerousness that creates a risk of harm, is required to support an award of damages); Kansas City v. W.R. Grace & Co., 778 S.W.2d 264, 268 (Mo. Ct. App. 1989) (statute does not run until release of toxic asbestos fibers into the environment and there is the ability to ascertain a substantial and unreasonable risk of harm from the release of the toxic asbestos fibers).

Indeed, Grace admits this in its very objections. "The mere presence of asbestos-containing material in a building or on a property does not create a health hazard." (Debtors' Fifteenth Omnibus Obj. (Substantive) to Asbestos Property Damage Claims ¶ 119.)

Grace claims in its objection D-2 that virtually all non-residential claimants' property damage claims are barred by the statute of limitations based upon constructive (or inquiry) notice. Grace's basic argument is that EPA regulations in the 1970s and 1980s, known as NESHAPs, and trade and building journals in the general press, should have put Claimants on constructive or actual notice of the potential dangers from ACMs. (Debtors' Fifteenth Omnibus Obj. (Substantive) to Asbestos PD Claims ¶ 95.) Grace ignores case law directly contrary to its position.

Courts generally have not been receptive to the argument that the National Emissions Standards for Hazardous Air Pollutants (NESHAPs) and other public and regulatory materials

4

are sufficient to put an asbestos property damage plaintiff on constructive or inquiry notice that a property damage claim has accrued.  See, e.g., California Sansome Co. v. U.S. Gypsum, 55 F.3d 1402, 1403 (9th Cir. 1995) (ruling that articles, publications, regulations, and seminars on the hazards of asbestos did not put plaintiff "on inquiry notice" of asbestos contamination); Kansas City v. W.R. Grace & Co., 778 S.W.2d 264, 269 (Mo. Ct. App. 1989) (ruling that building owner's notice of NESHAPs did not cause asbestos property damage claims to accrue).

Grace's argument that claimants should have been put on constructive notice of any possible claim by NESHAPs is also undercut by Grace's own admissions.  In its Libby Operations Summary Report of March, 1992, Grace noted that it was informed that it was not complying with NESHAPs during demolition work.  [Motley Rice Master Exhibit List, Ex. 1] Grace admitted that it had no notice of NESHAPs: "No one presently employed or employed at the time of closure was aware of these regulations, nor were we informed of any such regulations by Cambridge [Grace headquarters] personnel."  [Motley Rice Master Exhibit List, Ex. 1]

Even a high-ranking Grace regional sales manager for architectural sales for Grace products until 1990 admitted in 1995 that he was not familiar with NESHAPs.  (Dep. of James Cintani, Transamerica Ins. Corp. v. W.R. Grace & Co. – Conn., No. C94-4083 (N.D. Cal.), July 25, 1995, p. 40, lines 23-25 [Motley Rice Master Exhibit List, Ex. 2].)  Therefore, Grace's claim that all property damage claimants were put on constructive notice of their claims simply by virtue of government regulations and other materials in the general press is extremely weak.

Also, Grace's reliance on Prudential Insurance Co. of America v. United States Gypsum Co., 359 F.3d 226 (3d Cir. 2004) is misplaced.  First, the Prudential court focused on Prudential's sophistication concerning building requirements and regulations: "[i]t is important to note that Prudential is a very sophisticated company that operates a large casualty insurance

business and an extensive estate investment business." Id. at 234. The court distinguished such a sophisticated plaintiff from claimants here: "Such a sizable business operation not only provided Prudential with more opportunities than an average plaintiff to access ACM-related information, but it should have also given Prudential a greater incentive to diligently research and investigate any potential injuries it may suffer through the presence of ACMs in its own properties." Id.

The Prudential court made a point of distinguishing the RICO claims that Prudential brought from other cases in which remediation was the relief sought by plaintiffs. Prudential sought redress for monitoring and testing claims in its RICO action, while, in contrast, plaintiffs asserting the "actual injury/contamination" theory "confined their claims to costs of remediation and pursued their redress through state-law claims that require different accrual analyses than used in RICO cases." Id. at 237 (emphasis added). Thus, Grace's attempt to use Prudential, a RICO action involving one of the largest property owners in the world, to show claimants in these proceedings should have had "constructive notice" of their claims before filing falls flat. The Court should reject Grace's objection based on "constructive notice."

Claimant hereby incorporates by reference as if fully contained herein any legal responses to Grace's constructive notice objection filed by any other property damage claimants.

### 6. Objection D-4 – Statute of Limitations (Actual Notice)

The statute of limitations in Minnesota for property damage is six years. Minn. Stat. § 541.05. As noted above, an asbestos-in-building cause of action accrues, and hence the statute of limitations starts running, when there is actual contamination of the building by asbestos, not mere "notice" that asbestos is in the building.[1]

---

[1] E.g., MDU Resources Group v. W.R. Grace & Co., 14 F.3d 1274, 1279 (8th Cir. 1994) (injury is the contamination of building, not mere presence of asbestos); Adams-Arapahoe Sch. Dist. v. GAF Corp., 959 F.2d 868,

6

Claimant first learned of the presence of asbestos in the building in 1989. (Claim Form, questions 18-19 [Ex. 6].) Claimant first learned that Grace's Zonolite acoustical plaster contained asbestos in 2003. (Claim Form, question 20 [Ex. 6].) Claimant filed the claim on March 26, 2003, well within the six year statute of limitations. Therefore, Grace's objection based on the statute of limitations is without merit.

Claimant hereby incorporates by reference as if fully contained herein any legal responses to Grace's actual notice objection filed by any other property damage claimants.

**7.    Objection D-6 – Doctrine of Laches**

Grace claims that the doctrine of laches bars Claimant's claim, even though it cannot show that Claimant was untimely in filing its claim under the statute of limitations with actual or constructive notice.

Here, claimant did not delay unreasonably in commencing a claim or cause of action against Grace. It was not until 2003 that Claimant knew that Grace's Zonolite acoustical plaster had asbestos. [Ex. 6] Therefore, Grace's laches argument is unconvincing.

Claimant hereby incorporates by reference as if fully contained herein any legal responses to Grace's laches objection filed by any other property damage claimants.

---

872 (10th Cir. 1992) ("[o]nly asbestos contamination constitutes a physical injury compensable under tort law."); City of Greenville v. W.R. Grace & Co., 827 F.2d 975, 977-78 (4th Cir. 1987) (injury is contamination, not mere presence of asbestos); San Francisco Unified Sch. Dist. v. W.R. Grace & Co. - Conn., 44 Cal. Rptr. 305, 306 (Cal. Ct. App. 1995) ("[w]e hold – consistent with the vast majority of other jurisdictions that have considered this issue – that the owner of a building containing asbestos cannot state a cause of action in tort against an asbestos manufacturer until contamination occurs."); Board of Educ. v. A, C and S, Inc., 546 N.E.2d 580, 587 (Ill. 1989) (ruling that physical harm, not mere dangerousness that creates a risk of harm, is required to support an award of damages); Kansas City v. W.R. Grace & Co., 778 S.W.2d 264, 268 (Mo. Ct. App. 1989) (statute does not run until release of toxic asbestos fibers into the environment and there is the ability to ascertain a substantial and unreasonable risk of harm from the release of the toxic asbestos fibers).

### 8. Objection E-1 – Claims Providing No Measurement of Relevant Asbestos Levels

Grace's position, contained in paragraphs 119 and 120 of its Objections, is that claims not accompanied by relevant air sampling data or dust sampling data cannot possibly show that any health hazard exists. Two points are important here.

First, if it is Grace's contention that lack of air or dust testing implies that no hazard has been shown, then this implies that no contamination has been shown. But if no contamination has been shown, then claimant's cause of action cannot have accrued and the statute of limitations cannot even have begun to run.

Second, Grace's objection directly contradicts its previous position. As noted above, Grace was a member of the Safe Building Alliance (SBA). In January, 1988 the SBA put out a Background Paper entitled <u>Public Health Regulations for the Control of Asbestos Exposures in Buildings</u>. [Motley Rice Master Exhibit List, Ex. 5] In that paper, the SBA stated "[a]ir monitoring is not always necessary to make rational judgments about appropriate actions to be taken when friable asbestos-containing materials are identified in a building. <u>Some abatement decisions can responsibly be made on the basis of comprehensive visual inspection. For example, obviously and significantly deteriorated materials typically require abatement</u>." [Motley Rice Master Exhibit List, Ex. 5 at 57 (emphasis added)] Therefore, air or dust sampling is not required, as Grace now claims, to determine whether abatement is required.

**7.     Conclusion**

For all of the above reasons, Claimant The Church of St. Luke respectfully requests that the Court deny Grace's objections to this claim.

Mt. Pleasant, SC  
October 21, 2005

Respectfully submitted,

JASPAN SCHLESINGER HOFFMAN LLP

By:  /s/  Frederick B. Rosner  
Frederick B. Rosner (No. 3995)  
913 N. Market Street, 12th Floor  
Wilmington, DE  19801  
Telephone:  (302) 351-8000  
Facsimile:   (302) 351-8010

- and -

MOTLEY RICE LLC

/s/  James M. Hughes  
James M. Hughes, Esq.  
28 Bridgeside Blvd.  
P.O. Box 1792  
Mount Pleasant, SC 29465  
Telephone: (843) 216-9133  
Facsimile: (843) 216-9440  
E-mail: jhughes@motleyrice.com

- and -

John J. Preefer, Esq.  
60 East 42nd Street, Suite 1201  
New York, New York 10165  
Telephone:  (212) 490-9524  
Facsimile:   (212) 682-3053

Co-Counsel for Claimant  
The Church of St. Luke