**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | PD Claim No. 6945 |
| | ) | Port of Seattle |
| | ) | Main Terminal Building |
| | ) | 17600 Pacific Highway |
| | ) | SeaTac, Washington |

**CLAIMANT PORT OF SEATTLE, MAIN TERMINAL
BUILDING RESPONSE TO DEBTORS' OBJECTIONS (CLAIM NO. 6945)**

Claimant Port of Seattle, Main Terminal Building submits the following responses to Grace's objections to its claim, and respectfully requests the Court to reject Grace's objections.

**1.    Objection C-4 – Claims Failing To Rule Out Non-Grace Products**

Grace's objection C-4 is of no moment. Many buildings with Grace's asbestos-containing materials (ACMs) contain ACMs manufactured by companies other than the Debtor companies. This does not relieve Grace of its liability as to its products in Claimant's buildings.

**2.    Objection D-2 – Statute of Limitations (Constructive Notice)**

The statute of limitations in Washington for product liability claims is three years. RCW 4.16.080(2). The statute of limitations begins to run when the plaintiff's cause of action accrues. RCW 4.16.005. The cause of action accrues when the plaintiff suffers injury or damage that is "'actual and appreciable,'" and the statute does not begin to run before that. Mayer v. City of Seattle, 10 P.2d 408, 413 (Wash. Ct. App. 2000) (quoting Haslund v. City of Seattle, 547 P.2d 1221 (1976)). When there is a delay between the injury and the plaintiff's discovery of it, the discovery rule applies. Id. The discovery rule postpones the running of a statute of limitations

until the time when a plaintiff, though the exercise of due diligence, should have discovered the basis for the cause of action. Id. Once the plaintiff has notice of facts sufficient to prompt a person of average prudence to inquire into the presence of an injury, he or she is deemed to have notice of all facts that reasonable inquiry would disclose. Id. "Whether the plaintiff has exercised due diligence under the discovery rule is a question of fact." Id. The burden is on the defendant to prove those facts that establish the affirmative defense of statute of limitations. Id.

The vast majority of jurisdictions have held that actual injury or contamination is the trigger for asbestos-in-building statutes of limitations, not the mere presence of asbestos in a building or some "constructive notice" of the possible dangers of asbestos in a building. E.g., MDU Resources Group v. W.R. Grace & Co., 14 F.3d 1274, 1279 (8th Cir. 1994) (injury is the contamination of building, not mere presence of asbestos); Adams-Arapahoe Sch. Dist. v. GAF Corp., 959 F.2d 868, 872 (10th Cir. 1992) ("[o]nly asbestos contamination constitutes a physical injury compensable under tort law."); City of Greenville v. W.R. Grace & Co., 827 F.2d 975, 977-78 (4th Cir. 1987) (injury is contamination, not mere presence of asbestos); San Francisco Unified Sch. Dist. v. W.R. Grace & Co. - Conn., 44 Cal. Rptr. 305, 306 (Cal. Ct. App. 1995) ("[w]e hold – consistent with the vast majority of other jurisdictions that have considered this issue – that the owner of a building containing asbestos cannot state a cause of action in tort against an asbestos manufacturer until contamination occurs."); Board of Educ. v. A, C and S, Inc., 546 N.E.2d 580, 587 (Ill. 1989) (ruling that physical harm, not mere dangerousness that creates a risk of harm, is required to support an award of damages); Kansas City v. W.R. Grace & Co., 778 S.W.2d 264, 268 (Mo. Ct. App. 1989) (statute does not run until release of toxic asbestos fibers into the environment and there is the ability to ascertain a substantial and unreasonable risk of harm from the release of the toxic asbestos fibers).

Indeed, Grace admits this in its very objections. "The mere presence of asbestos-containing material in a building or on a property does not create a health hazard." (Debtors' Fifteenth Omnibus Obj. (Substantive) to Asbestos Property Damage Claims ¶ 119.)

Grace claims in its objection D-2 that virtually all non-residential claimants' property damage claims are barred by the statute of limitations based upon constructive (or inquiry) notice. Grace's basic argument is that EPA regulations in the 1970s and 1980s, known as NESHAPs, and trade and building journals in the general press, should have put Claimants on constructive or actual notice of the potential dangers from ACMs. (Debtors' Fifteenth Omnibus Obj. (Substantive) to Asbestos PD Claims ¶ 95.) Grace ignores case law directly contrary to its position.

Courts generally have not been receptive to the argument that the National Emissions Standards for Hazardous Air Pollutants (NESHAPs) and other public and regulatory materials are sufficient to put an asbestos property damage plaintiff on constructive or inquiry notice that a property damage claim has accrued. See, e.g., California Sansome Co. v. U.S. Gypsum, 55 F.3d 1402, 1403 (9th Cir. 1995) (ruling that articles, publications, regulations, and seminars on the hazards of asbestos did not put plaintiff "on inquiry notice" of asbestos contamination); Kansas City v. W.R. Grace & Co., 778 S.W.2d 264, 269 (Mo. Ct. App. 1989) (ruling that building owner's notice of NESHAPs did not cause asbestos property damage claims to accrue).

Grace's argument that claimants should have been put on constructive notice of any possible claim by NESHAPs is also undercut by Grace's own admissions. In its Libby Operations Summary Report of March, 1992, Grace noted that it was informed that it was not complying with NESHAPs during demolition work. [Motley Rice Master Exhibit List, Ex. 1] Grace admitted that it had no notice of NESHAPs: "No one presently employed or employed at

3

the time of closure was aware of these regulations, nor were we informed of any such regulations by Cambridge [Grace headquarters] personnel." [Motley Rice Master Exhibit List, Ex. 1]

Even a high-ranking Grace regional sales manager for architectural sales for Grace products until 1990 admitted in 1995 that he was not familiar with NESHAPs. (Dep. of James Cintani, <u>Transamerica Ins. Corp. v. W.R. Grace & Co. – Conn.</u>, No. C94-4083 (N.D. Cal.), July 25, 1995, p. 40, lines 23-25 [Motley Rice Master Exhibit List, Ex. 2].) Therefore, Grace's claim that all property damage claimants were put on constructive notice of their claims simply by virtue of government regulations and other materials in the general press is extremely weak.

Also, Grace's reliance on <u>Prudential Insurance Co. of America v. United States Gypsum Co.</u>, 359 F.3d 226 (3d Cir. 2004) is misplaced. First, the <u>Prudential</u> court focused on Prudential's sophistication concerning building requirements and regulations: "[i]t is important to note that Prudential is a very sophisticated company that operates a large casualty insurance business and an extensive estate investment business." <u>Id.</u> at 234. The court distinguished such a sophisticated plaintiff from claimants here: "Such a sizable business operation not only provided Prudential with more opportunities than an average plaintiff to access ACM-related information, but it should have also given Prudential a greater incentive to diligently research and investigate any potential injuries it may suffer through the presence of ACMs in its own properties." <u>Id.</u>

The <u>Prudential</u> court made a point of distinguishing the RICO claims that Prudential brought from other cases in which remediation was the relief sought by plaintiffs. Prudential sought redress for monitoring and testing claims in its RICO action, while, in contrast, plaintiffs asserting the "actual injury/contamination" theory "confined their claims to costs of remediation and pursued their redress through <u>state-law claims that require different accrual analyses than</u>

4

used in RICO cases." Id. at 237 (emphasis added). Thus, Grace's attempt to use Prudential, a RICO action involving one of the largest property owners in the world, to show claimants in these proceedings should have had "constructive notice" of their claims before filing falls flat. The Court should reject Grace's objection based on "constructive notice."

Claimant hereby incorporates by reference as if fully contained herein any legal responses to Grace's constructive notice objection filed by any other property damage claimants.

### 3. Objection D-4 – Statute of Limitations (Actual Notice)

The statute of limitations in Washington for product liability claims is three years. RCW 4.16.080(2). The statute of limitations begins to run when the plaintiff's cause of action accrues. RCW 4.16.005. The cause of action accrues when the plaintiff suffers injury or damage that is "'actual and appreciable,'" and the statute does not begin to run before that. Mayer v. City of Seattle, 10 P.2d 408, 413 (Wash. Ct. App. 2000) (quoting Haslund v. City of Seattle, 547 P.2d 1221 (1976)). As noted above, an asbestos-in-building cause of action accrues, and hence the statute of limitations starts running, when there is actual contamination of the building by asbestos, not mere "notice" that asbestos is in the building.[1]

Claimant hereby incorporates by reference as if fully contained herein any legal responses to Grace's actual notice objection filed by any other property damage claimants.

---

[1] E.g., MDU Resources Group v. W.R. Grace & Co., 14 F.3d 1274, 1279 (8th Cir. 1994) (injury is the contamination of building, not mere presence of asbestos); Adams-Arapahoe Sch. Dist. v. GAF Corp., 959 F.2d 868, 872 (10th Cir. 1992) ("[o]nly asbestos contamination constitutes a physical injury compensable under tort law."); City of Greenville v. W.R. Grace & Co., 827 F.2d 975, 977-78 (4th Cir. 1987) (injury is contamination, not mere presence of asbestos); San Francisco Unified Sch. Dist. v. W.R. Grace & Co. - Conn., 44 Cal. Rptr. 305, 306 (Cal. Ct. App. 1995) ("[w]e hold – consistent with the vast majority of other jurisdictions that have considered this issue – that the owner of a building containing asbestos cannot state a cause of action in tort against an asbestos manufacturer until contamination occurs."); Board of Educ. v. A, C and S, Inc., 546 N.E.2d 580, 587 (Ill. 1989) (ruling that physical harm, not mere dangerousness that creates a risk of harm, is required to support an award of damages); Kansas City v. W.R. Grace & Co., 778 S.W.2d 264, 268 (Mo. Ct. App. 1989) (statute does not run until release of toxic asbestos fibers into the environment and there is the ability to ascertain a substantial and unreasonable risk of harm from the release of the toxic asbestos fibers).

### 4. Objection D-6 – Doctrine of Laches

Under Washington law, "laches depends upon the particular facts and circumstances of each case." Lopp v. Peninsula Sch. Dist. No. 401, 585 P.2d 801, 804 (Wash. 1978) (citing Schrock v. Gillingham, 219 P.2d 92 (Wash. 1950)). The elements of laches are (1) knowledge or reasonable opportunity to discovery on the part of a potential plaintiff that he has a cause of action against a defendant; (2) an unreasonable delay by the plaintiff in commencing that cause of action; and (3) damage to defendant resulting from the unreasonable delay. Id. (citing Buell v. Bremerton, 495 P.2d 1358, 1361 (Wash. 1972)). As noted above, Claimant did delay in bringing a claim because the statute of limitations had not run when it brought its claim.

Claimant hereby incorporates by reference as if fully contained herein any legal responses to Grace's laches objection filed by any other property damage claimants.

### 5. Objection E-4 – Claims Attaching Air Sampling Results That Do Not Support The Existence Of A Health Hazard

Grace's position, contained in paragraphs 128-130 Objections, is that claims not accompanied by air sampling data or dust sampling data that do not show asbestos levels higher than outside background levels cannot possibly show that any health hazard exists. Two points are important here.

First, if it is Grace's contention that air sampling data that supports asbestos levels lower than or comparable to typical outdoor air implies that no hazard can be shown, then this implies that no contamination has been shown. But if no contamination has been shown, then claimant's cause of action cannot have accrued and the statute of limitations cannot even have begun to run.

Second, Grace's objection directly contradicts its previous position. Grace was a member of the Safe Building Alliance (SBA). In January, 1988 the SBA put out a Background Paper entitled Public Health Regulations for the Control of Asbestos Exposures in Buildings. [Motley

6

Rice Master Exhibit List, Ex. 5] In that paper, the SBA stated "[a]ir monitoring is not always necessary to make rational judgments about appropriate actions to be taken when friable asbestos-containing materials are identified in a building. <u>Some abatement decisions can responsibly be made on the basis of comprehensive visual inspection. For example, obviously and significantly deteriorated materials typically require abatement</u>." [Motley Rice Master Exhibit List, Ex. 5 at 57 (emphasis added)] Therefore, air sampling data showing levels higher than outdoor air not required, as Grace now claims, to determine whether abatement is required.

**6.    Conclusion**

For all of the above reasons, Port of Seattle, Main Terminal Building respectfully requests that the Court deny Grace's objections to this claim.

| | |
|---|---|
| Mt. Pleasant, SC<br>October 21, 2005 | Respectfully submitted, |

JASPAN SCHLESINGER HOFFMAN LLP

By:    /s/  Frederick B. Rosner
         Frederick B. Rosner (No. 3995)
         913 N. Market Street, 12th Floor
         Wilmington, DE  19801
         Telephone:  (302) 351-8000
         Facsimile:   (302) 351-8010

 - and -

MOTLEY RICE LLC

/s/  James M. Hughes
James M. Hughes, Esq.
28 Bridgeside Blvd.
P.O. Box 1792
Mount Pleasant, SC 29465
Telephone: (843) 216-9133
Facsimile: (843) 216-9440
E-mail: jhughes@motleyrice.com

 - and -

John J. Preefer, Esq.
60 East 42nd Street, Suite 1201
New York, New York 10165
Telephone:  (212) 490-9524
Facsimile:   (212) 682-3053

Co-Counsel for Claimant Port of Seattle,
Main Terminal Building