IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| W. R. Grace & Co., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Hearing Date: October 31, 2005 @ 9:00 a.m. |
| | ) | Objection Deadline: October 21, 2005 |
| | ) | |
| | ) | RE: DOCKET NOS. 9346 AND 9311 |

## SPEIGHTS & RUNYAN'S RESPONSE TO DEBTORS' BRIEF IN SUPPORT OF 13TH OMNIBUS OBJECTION SEEKING THE DISALLOWANCE AND EXPUNGEMENT OF 1900 CLAIMS

Speights & Runyan ("S&R"), on behalf of Anderson Memorial Hospital ("Anderson"), The California State University System, and the California Board of Regents, responds to the Debtors' Brief in Support of the Disallowance and Expungement of 1900 Claims filed by S&R. At the Debtors' request, the Court has scheduled three authority issues for determination at the October 31, 2005 special hearing, which the Debtors contend are "easy legal issues" which can be decided as a matter of law.[1] Because S&R has withdrawn all of the individual claims without Grace product identification, including its California claims,[2] only two of these legal issues remain: whether the Debtors, *as a matter of law*, are entitled to an Order expunging approximately 50 product identification claims S&R filed based solely on the authority of Anderson's certified South Carolina class action; and whether the Debtors, *as a matter of law*, are entitled to an Order expunging approximately 650 product identification claims that S&R filed based solely on the authority of Anderson's

---

[1] As they explained at the status conference, "the Debtors believe that if we can tee up three legal issues for hearing at the October 24th Omnibus, those could address 1,900 of the pending claims. We think we need no discovery to do those. **They're easy legal issues.**" Hearing (September 26, 2005) at 74 (emphasis supplied).

[2] Stipulation (October 21, 2005). While the Stipulation moots the authority issue with respect to the California claims, S&R must point out that it had written retainer agreements with these clients before it filed these claims, and has filed Declarations confirming this authority. [Response to the Debtor's 13th Omnibus Objection, Ex. 9].

putative class action. To the extent that *any* factual issues are implicated, Anderson requests that the Court enter a Case Management Order so that the parties can engage in relevant discovery. Contrary to Debtors' suggestion that there is "uncontroverted evidence," S&R disputes every factual assertion the Debtors make except where adopted herein or in its Response to the Debtors' 13th Omnibus Objection. S&R will refrain from addressing most of the Debtors' factual misstatements that are irrelevant to the "easy legal issues" presented.

## I. Argument

### A. S&R and Anderson Had Authority to File Claims on Behalf of Actual and Putative Class Members

1.  There can be no dispute that S&R has authority to represent Anderson in this bankruptcy. S&R has filed its power of attorney to act on Anderson's behalf in these proceedings and has produced evidence of clear authority to act on Anderson's behalf to protect its interests in this bankruptcy. [TABS A and B]. Even Grace acknowledged the litigation claims of Anderson and that S&R was its counsel in its Schedule F. [TAB C]. In fact, S&R has represented Anderson and acted as class counsel against Grace through nine years of continuous and highly contentious litigation, and through more than four years of these chapter 11 proceedings. Moreover, S&R was appointed to the Official Property Damage Committee not only as counsel for Anderson, but also as counsel for the Anderson class. Initially, Grace attempted to exclude S&R from the Official Property Damage Committee when, in direct violation of a protective order, it provided the U. S. Trustee with a three year old affidavit prepared by one its paid experts that raised questions about Mr. Speights' ability to serve as class counsel. This affidavit contained demonstrably false assertions and was thoroughly vetted and discredited during a two day evidentiary hearing, after which the South Carolina court sealed the record. When the U. S. Trustee inquired about the allegations contained in the affidavit, S&R provided a detailed response which

2

discussed the Anderson class action and again, discredited the affidavit. [TAB D]. After getting all the facts, the U. S. Trustee promptly appointed Mr. Speights, as counsel for Anderson and the class, to the Official Property Damage Committee. [TAB E].

2. Nevertheless, Grace now challenges the authority of S&R and Anderson to file class proofs of claim in this bankruptcy on behalf of South Carolina building owners who are actual class members of a pre-petition certified class. In support of its position, Grace contends that (1) the February 9, 2001 order conditionally certifying a South Carolina class action against Grace is invalid because Mr. Speights somehow managed to "manipulate" a respected trial judge who had been specially appointed by the Chief Justice of the South Carolina Supreme Court to oversee all asbestos cases in the state; and (2) a July 5, 2001 Order expressly inapplicable to Grace was somehow entered "ultra vires" and in violation of the automatic stay following Grace's bankruptcy petition. Grace further challenges S&R's authority to file class proofs of claims on behalf of non-South Carolina putative class members, arguing that an interlocutory order striking the claims of claims of out of state building owners from the Anderson class and based upon a statute that is on its face inapplicable to federal courts, deprived Anderson of any authority to fulfill its fiduciary obligation to preserve the claims of absent class members. Grace is wrong and its 13th Omnibus Objection should be denied.

**B. Class Counsel and Class Representatives Are Authorized to File Class Proofs of Claim**

3. Prior to the Seventh Circuit's landmark decision in In re: American Reserve Corp., 840 F.2d 487 (7th Cir.1988) (Easterbrook, J), there was little authority for the filing of class proofs of claim in bankruptcy proceedings. Even though Rule 7023, Fed. R. Bankr. P., incorporated the class action rule into contested matters, bankruptcy courts were clearly reluctant to allow class claims. Indeed, in Manville, the first significant asbestos bankruptcy,

3

the court dismissed the class proof of claim filed by the School Claimants Committee, finding that the Committee had not asserted that it had received the authority to act as agent for any of the putative class members and that §501 excluded class proofs of claim. Dade County School District v. Johns-Manville Corp., 53 B.R. 346 (S.D.N.Y1985).

4. The first circuit court to address the issue of class proofs agreed. In In re: Standard Metals Corp., 817 F.2d 625 (10th Cir.), vac'd on other grounds, 839 F.2d 1383 (10th Cir.1987), the Tenth Circuit panel held that class proofs of claim "violate the statutory scheme of the [Bankruptcy] Act and the Rules." Id. Furthermore, the court found that a "class representative cannot be considered the authorized agent of all the creditors in a putative class" and that "consent to being a member of a class in one piece of litigation is not tantamount to a blanket consent to any litigation the class counsel may wish to pursue." Id.

5. The Tenth Circuit later vacated this opinion on reconsideration finding that the class of bondholders the class representative sought to represent were "known creditors" whose address was "reasonably ascertainable." Id. The court concluded that it was error for the bankruptcy court and the district court not to require individual notice and an opportunity to file individual proofs of claim to these "known creditors" and reversed, noting that the "bankruptcy court had a responsibility under the Act, the rules, and as a court of equity to give all creditors an opportunity to present their claims in the proceedings. In view of the disposition of this appeal it is not necessary to consider the class action claims issue." Id.[3]

6. Shortly thereafter, in In re: American Reserve, 840 F.2d 487 (7th Cir.1988), the Seventh Circuit reversed the trend and concluded that class proofs of claim are permissible in bankruptcy. American Reserve considered whether the class representatives

---

[3] In this case, Grace likewise failed to give individual notice to more than a thousand known property damage creditors whose identity and, more importantly, addresses, were easily gleaned from Grace's own sales records. It is this failure of actual notice, and the potential that these claimants will not be discharged that makers class treatment especially appropriate in this case. [TAB F].

4

in a pre-petition uncertified (or putative) class action against the Debtor had authority to file class proofs of claim in the bankruptcy. The Seventh Circuit held that class representatives have the authority to file even in a pre-certified context. In reaching this conclusion, the court found that class actions were especially appropriate in bankruptcy, noting that (1) "some of the earliest class suits had been brought as creditors' bills that preceded the 1898 [Bankruptcy] Code", (2) "the bankruptcy code authorizes some filings by representatives" including creditors' agents (which is not specifically enumerated in §501); and (3) if class proofs of claim were not authorized then Rule 7023, Fed. R. Bankr. P. would be meaningless. Id. The court went on to conclude that

> Section 501 does not interfere with filing by agents. The representative in a class action is an agent for the missing. Not every effort to represent a class will succeed; the representative is an agent only if the class is certified. Putative agents keep the case alive pending the decision on certification. If the bankruptcy judge denies the request to certify a class, then each creditor must file an individual proof of claim; the putative agent never obtains "authorized agent" status. If the court certifies the class, however, the self-appointed agent has become "authorized", and the original filing is effective for the whole class (the principals). It follows that there may be class proofs of claims in bankruptcy. Id (citations omitted).

7. Since American Reserve, every circuit court or bankruptcy appellate panel to address the issue of class proofs of claim has agreed. See, In re: Charter Co., 876 F.2d 866 (11th Cir.1989);[4] Reid v. White Motor Co., 886 F.2d 1462 (6th Cir.1989) (allowing class proofs of claim but rejecting a proof of claim submitted by class counsel as unauthorized

---

[4] The Debtors have argued to this Court that S&R should have been "candid" and sought pre-approval to file a class proof of claim. This argument ignores In re: Charter, in which the Eleventh Circuit explicitly held that the appropriate avenue for pursuing a class action is Rule 7023, which is not applicable until there is a "contested matter." Rule 9014, Fed. R. Bankr. P. Accordingly, "this avenue for invoking Rule 23 was not available to the appellants" until an objection is made. 876 F.2d at 874 ("absent an adversary proceeding, the first opportunity to a claimant has to move under Bankruptcy Rule 9014, to request application of Bankruptcy Rule 7023, occurs when an objection is made to a proof of claim. Prior to that time, invocation of Rule 23 procedures would not be ripe, because there is neither an adversary proceeding nor a contested matter").

5

because the attorney was not a member of the class he sought to represent);[5] In re: Birting Fisheries, 92 F.3d 939 (9th Cir.1996); In re: Trebol Motors Dist. Corp., 220 B.R. 500 (BAP 1st Cir.1998). Furthermore, class proofs of claim have been explicitly permitted in this district. In re: Kaiser Group International, Inc., 278 B.R. 58 (D.Del.2002) (Walrath, J) (citing In re: Whitaker, 882 F.2d 791, 793, n.1 (3d Cir.1989) as an acknowledgement by the Third Circuit of class proofs of claim in bankruptcy); In re: United Companies Financial, 276 F.R. 368 (D.Del.2002) (the "vast majority of courts conclude that class proofs of claim are permissible in a bankruptcy proceeding"). Accordingly, there is ample support that S&R, as class counsel and as the holder of Power of Attorney from Anderson, was authorized and had authority to file class proofs of claim on behalf of absent class members.

C.   **The Anderson Certification Should be Given Full Faith and Credit**

8.   On December 23, 1992, Anderson filed a Class Action against Grace and a number of other former manufacturers of asbestos-containing surfacing materials on behalf of "all persons, corporations, partnerships, unincorporated associations or other entities which own in whole or in part any building which contains asbestos-containing surfacing materials." [TAB G]. The putative class excluded members of certified classes filed on behalf of school districts, colleges, and buildings leased to the federal government, as well as federal and state owned buildings.

9.   In spite of Grace's repeated misrepresentations about its history, this case was contentious and hard fought from the beginning. The parties litigated numerous procedural

---

[5] Without debating the logic of this reasoning in light of the general bankruptcy rule that proofs of claim signed the attorney for a party are deemed authorized, see, In re: Garner, 246 B.R. 617 (BAP 9th Cir.2000), S&R holds a Power of Attorney for Anderson who is clearly a member of the class it seeks to represent in this action. [TAB B]. However, even if it did not, other courts have held that a class proof of claim filed by the attorney for the class representative are valid and authorized under the Bankruptcy Code. Wilson v. Valley Electric Membership Corp., 141 B.R. 309 (E.D.La.1992) (wherein Judge Sear, former chair of the Advisor Committee on Bankruptcy Rules, held that the class attorney was not only authorized to execute class proofs of claim, but that that the class attorney was not required to file a verified statement pursuant to Rule 2019].

6

issues in State and Federal Court for the first several years of the case, including what the Debtors claimed in pre-petition representations to the South Carolina court, "a lot of discovery." During this period, the following events had occurred:

- In early 1997 (only four years after the case had been filed) counsel for Anderson and the defendants, including Grace, began circulating a briefing schedule for class certification. At Grace's request and without the knowledge of its co-defendants, Anderson agreed to postpone the briefing of the certification motion in order to discuss settlement with Grace. In the middle of these negotiations, however, Grace unilaterally began attacking the adequacy of S&R to serve as class counsel while it privately made overtures that it would stop the attack if S&R would be more reasonable in settlement negotiations.

- S&R refused to continue negotiations under this cloud and filed its motion for class certification on January 2, 1998 (contrary to Grace's oft-stated but erroneous claims to the contrary, this was the first and only motion for class certification). Grace responded by further attacking S&R's fitness to serve as class counsel and asking that the Court set a evidentiary hearing.[6] Anderson also sought an evidentiary hearing to refute these unfounded allegations.

- After making these allegations, two significant events occurred. First, counsel for U. S. Gypsum, one of the defendants in Anderson, sought and obtained more factual information about the allegations that were being made by Grace against S&R. After reviewing this information, U. S. Gypsum took the unprecedented step of withdrawing its joinder in Grace's adequacy attack.

---

[6] At the time Grace raised this attack, S&R had been serving as class counsel with Court approval and under Court supervision in numerous other cases, including the three nationwide asbestos property damage class actions, all of which were settled with Grace without any complaint about the adequacy of S&R. As the South Carolina Court (and presumably the U. S. Trustee) found, these scurrilous attacks were without merit.

7

- Second, even after claiming in court documents that S&R was inadequate class counsel, Grace continued to make settlement overtures and promises that it would call off the attack if S&R would just settle the Anderson class. S&R again refused to negotiate in this manner and sought a hearing on class certification.

- In the spring of 2000, the South Carolina court scheduled the evidentiary hearing on the class certification and the adequacy of S&R for September 5 and 6. In advance of the hearing, Grace filed its second round of briefs on the issue of class certification and adequacy.

- At the close of the evidentiary hearing the court indicated on the record that it had heard enough to make his decision. Nevertheless, Grace's counsel requested the opportunity to review the transcript of the hearing and submit a third round of briefs to the Court. The court acquiesced and gave Grace 45 days after receipt of the transcript to file its additional brief. Due to heavy work schedule and backlog of transcripts not uncommon to court reporters in South Carolina, the transcript was not delivered until late December of 2000.

- By the time Grace's third round of briefs were to be filed, Grace's CEO had publicly announced that Grace was seriously considering bankruptcy. In response to that announcement Anderson, through its counsel, sought an immediate *ex parte* order granting conditional certification of the Anderson class and the issuance of a Rule to Show Cause why the conditional order should not remain in place pending the court's final determination. Based on this application, the South Carolina court entered an order conditionally certifying the Anderson class [TAB H] and issued the Rule to Show Cause against Grace.

8

- Subsequently, after giving Grace the opportunity to fully brief the propriety of the conditional certification order, the Court held a hearing where Grace and Anderson were represented. Anderson argued and Grace did not seriously dispute that it was considering bankruptcy or that the filing of a bankruptcy petition and the accompanying automatic stay could prejudice Anderson and the class, especially given the fact that the certification motion had been pending for over three years; that the parties had submitted three rounds of briefs; that the parties had participated in a two day evidentiary hearing; and that the parties had hundred of hours and tens of thousands of dollars invested in the certification issue. At the conclusion of the hearing, the court kept the conditional certification order in place. Grace filed for Chapter 11 protection in this court on April 2, 2001.

- Almost immediately after Grace's filing, the remaining defendants withdrew their joinder to Grace's adequacy attack. [TAB I]. The court subsequently entered the order certifying the Anderson class as to the remaining defendants. In its Order the Court specifically excluded Grace from the order due to the bankruptcy stay, but clearly indicated that he found no merit in any of the adequacy arguments that had been made by the defendants throughout the three years of the certification proceeding.[7]

---

[7] Remarkably, even though the South Carolina court specifically recognized that Grace had filed for bankruptcy, enjoyed the automatic stay afforded by 11 U.S.C. §362(a)(1) and specifically excluded Grace from its final certification order, the Debtors still claim that this order violated the stay. Specifically, the South Carolina court stated:

> On March 30, 2001, Grace filed for bankruptcy which automatically stayed all further proceedings in this case against Grace. 11 U.S.C. §362. . . . but for the bankruptcy stay protecting Grace, this Court would without hesitation address and with specificity reject each and every one of the Defendants' inadequacy charges. [TAB J].

Given these specific exclusions and recognition of the Grace bankruptcy by the South Carolina court, Grace's claims that this order was entered "ultra vires" and in violation of the automatic stay are groundless.

9

10. Given the extensive history of the Anderson litigation and specifically the three year certification proceeding, this Court should afford full faith and credit to the certification order of the South Carolina Circuit Court. The United States Code, 28 U.S.C. §1738 provides that "judicial proceedings" of any State "shall have the same full faith and credit in every court within the United States" as "they have by law or usage in the courts of such State . . . from which they are taken." Applying this statute, the Court in Matsushita Electric Industries v. Epstein, 516 U.S. 367 (1996), held that federal courts must give full faith and credit to a global class action settlement entered in a Delaware state court, even though the settlement included claims exclusively within the federal court's jurisdiction. The court earlier emphasized that "§1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of the state judgment. Rather, it goes beyond common law and commands a federal court to accept rules chosen by the state from which the judgment is taken." Kremer v. Chemical Construction Corp., 456 U.S. 461, 481 (1982).

11. Bankruptcy courts are "court[s] within the United States" that must give prior state court judgments full faith and credit. In re Brown, 951 F.2d 564, 568 (3d Cir.1991) ("Whatever doubt that may have remained that preclusive effect was to be given to state court proceedings in bankruptcy cases was dispelled by the Supreme Court . . ."); In re Genesys Data Technologies, Inc., 204 F.3d 124 (4th Cir.2000) (applying §1758 in bankruptcy claims allowance proceedings); In re Marvel, 138 B.R. 451 (D.Del.1992) ("§1738 requires this [bankruptcy] court to give the State of Delaware Court judgment the same full faith and credit here it would receive in a Delaware Court."); In re Miloszar, 238 B.R. 266 (D.N.J.1999) ("The Full Faith and Credit Act" requires the federal courts to give a prior State Court judgment the same preclusive effect that it would be given in subsequent proceedings in the same state."); In re Kelly, 262 B.R. 307 (D.Pa.2001) ("This statute obliges federal

10

courts to give the same preclusive effect to state court judgments as would the courts of the state rendering the judgment.").

12. Because the February 9, 2001 conditional certification order was entered prior to Grace's bankruptcy filing and was based upon a complete and substantial record of proceedings in the South Carolina court, this court should afford full faith and credit to the South Carolina certification order. As such, Anderson and S&R clearly had authority to file class proofs of claim on behalf of the members of the South Carolina class. In re: American Reserve Corp. 840 F.2d 487 (7th Cir.1987) ("if the court certifies the class, however, the self-appointed agent has become 'authorized.'").

**D.     Anderson and S&R Owe Fiduciary Obligations to the Certified Class and the Putative Class**

13. The Third Circuit and the South Carolina Supreme Court have held that a class representative and class counsel have a fiduciary obligation to both putative and certified class members. In re: General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 822 (3d Cir.1995); Dondore v. NGK Metals Corp., 152 F.Supp.2d 662 (E.D.Pa.2001); Premium Investments v. Green, 283 S.C. 464, 470, 324 S.E.2d 72, 76 (1984). It is hornbook law that:

> a class representative acts as the principal to the other class members and owes them a fiduciary duty to vigorously protect their interests. That responsibility clearly encompasses the duty to act affirmatively to secure the class members' rights as well as to oppose the adverse interests asserted by others.

Am.Jur.2d *Parties*, §70; see also, City of Rochester v. Chiarella, 65 N.Y.2d 92 (1985). This fiduciary obligation to protect the claims of class members is wholly consistent with the Seventh Circuit's reasoning as to why class representatives are authorized to file proofs of claim for absent class members. As the court held, a class representative is the *"agent for the*

*missing*" in a class action, and is charged with *"keeping the case alive"* until the court can rule on certification. In re: American Reserve Corp., supra (emphasis supplied).

E.      **Door Closing Order and Out of State Claimants**

14.     In its attempt to argue that the interlocutory ruling in the Anderson case that struck non-South Carolina class members, Grace misstates both the facts and the law. In 1994, almost two years after the first Anderson Complaint was filed, the defendants, including Grace, moved to strike allegations from the Complaint relating to non-South Carolina class members. The basis of this motion was the so-called door closing statute, S.C. Code Ann. §15-5-150. The statute provides:

> An action against a corporation created by or under the laws of any other state, government, or country may be brought in Circuit Court: (1) by any residence of this state for any cause of action; or (2) by a plaintiff not a resident of this state when a cause of action shall have arisen or the subject of the action shall be situated within this state.

The defendants argued that this statute prohibited absent class members who were not residents of South Carolina from participating in a South Carolina class action.

15.     Importantly, at the time this motion was presented in the Anderson case, the U.S. District Court for the District of South Carolina and the Third Circuit had ruled that the door closing statute was no bar to a nationwide class in South Carolina. Central Wesleyan College v. W.R. Grace & Co., 143 F.R.D. 628 (D.SC.1992), aff'd, Central Wesleyan College v. W.R. Grace, 6 F.3d 177 (4th Cir. 1993). In spite of these rulings, however, Judge Howard ultimately decided that the door closing statute barred non-South Carolina building owners participating in the Anderson class. However, Judge Howard did not enter his Order denying reconsideration of this decision until 1995. Moreover, since the ruling was on a motion to strike allegations in a pleading, Grace asserted that this Order was not immediately

12

appealable and could not be reviewed until after final judgment had been entered.[8] As a result, Anderson, through S&R, filed an Amended Complaint to comply with the ruling, but reserved its position for appeal.

16.    Moreover, in 1996, after Judge Howard's ruling, the Anderson Class was the only uncertified class that was recognized in the Celotex bankruptcy proceedings and Judge Baynes' Voting Rights Order, and was given the same number of plan votes as the certified Class Actions. [TAB K]. Subsequently, Judge Baynes certified a consensual Plan of Reorganization that included under the definition of "Group Claimants" in the Asbestos Property Damage Claims Procedures, "Class Actions which had not been certified as of the Bar Date." [TAB L]. As a result of Anderson's participation in the Celotex Bankruptcy, it has obtained allowed costs on behalf of absent class members in the sum of $274,515,457.37, which, at the relevant payment percentage, represents a judgment against the Celotex Trust in excess of $30 million. The Debtors are well aware of this because they unsuccessfully challenged S&R's authority to do this at the evidentiary hearing in South Carolina.

17.    Subsequent to Judge Howard's interlocutory decision, another class action involving out of state class members was filed in circuit court in South Carolina. In that decision, the court came to the opposite conclusion and specifically found that the door closing statute did not bar out of state absent class members so long as the class representative was a South Carolina resident. This Order, which directly contradicted Judge Howard's Order, was issued in December 2000, before Grace filed bankruptcy. [TAB M].

---

[8] Mid-State Distributors, Inc. v. Century Importers, Inc., 310 S.C. 330, 335, 426 S.E.2d 777, 780 (1993) ("South Carolina case law has established what constitutes an interlocutory appeal. If there is some further act which must be done by the court prior to a determination of the rights of the parties, then the order is interlocutory. If a judgment determines the applicable law while leaving open questions of fact, it is not a final judgment.") (citations omitted).

18. Accordingly, when the bar date arrived in this bankruptcy in March of 2003, (1) the bankruptcy filing by all of the defendants in Anderson and the §362 Automatic Stay had permanently foreclosed any appeal by Anderson of Judge Howard's interlocutory Door Closing Order; (2) at least one other Circuit Court Judge in South Carolina had agreed with the Fourth Circuit Court of Appeals and held that §15-5-150 did not prohibit South Carolina residents from serving as class representatives to out of state class members; and (3) Anderson's non-South Carolina claims had been recognized and allowed to proceed in the Celotex Bankruptcy.

19. Under these circumstances, Anderson had no choice but to act to protect the claims of all known absent class members, including those who did not reside in South Carolina.[9] As stated above, class counsel owes a fiduciary obligation to both putative and certified class members. In re: General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 822 (3d Cir.1995); Dondore v. NGK Metals Corp., 152 F.Supp.2d 662 (E.D.Pa.2001); Premium Investments v. Green, 283 S.C. 464, 470, 324 S.E.2d 72, 76 (1984).

20. Moreover, even if the Supreme Court's overruling of the trial court's decision in Farmer v. Monsanto Corp., 353 S.C. 553, 579 S.E.2d 325 (2003) (issued April 7, 2003 – **after the bar date in this bankruptcy**), had been issued prior to the bar date, S&R would still have been constrained, both ethically and as a matter of fiduciary duty, to file claims to protect the interests of known out of state class members. This is because the specific holding of the South Carolina Supreme Court in Farmer makes it clear that §15-5-150 is not a jurisdictional statute, but merely affects the capacity to sue. More importantly, the court held that the door closing statute's application was limited by its plain language "to actions

---

[9] Prior to filling claims in the Celotex bankruptcy and this case, S&R consulted with a leading class action ethics expert and professor of business law and agency law about the propriety of pursuing claims for absent putative class members. Both times, S&R was advised that it had a fiduciary obligation as class counsel to take steps to preserve known claims held by actual and putative class members. Grace fully cross-examined this expert at the two day evidentiary hearing on class certification in the Anderson case.

14

brought in the **circuit court.** The statute clearly does not apply to federal suits and the Fourth Circuit's ruling on its non-application in that case is irrelevant." 353 S.C. at 558, 579 S.E.2d at 328. (Emphasis in original). Because this federal bankruptcy court had assumed jurisdiction over the Debtors' estate and the South Carolina Supreme Court had ruled the door closing statute did not apply to actions in federal court, Anderson and its counsel could not have relied upon the door closing ruling to relieve the obligation of protecting the claims of absent class members.

Dated: October 21, 2005

Daniel A. Speights (SC Fed. ID No. 4252)
Marion C. Fairey, Jr. (SC Fed. ID No. 6101)    Christopher D. Loizides (#3968)
SPEIGHTS & RUNYAN                              Michael J. Joyce (#4563)
200 Jackson Avenue, East                       LOIZIDES & ASSOCIATES
P.O. Box 685                                   Legal Arts Bldg.
Hampton, SC 29924                              1225 King Street, Suite 800
Telephone: (803) 943-4444                      Wilmington, DE 19801
Facsimile: (803) 943-4599                      Telephone: (302) 654-0248
                                               Facsimile: (302) 654-0728 (fax)