# TAB F

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| W. R. Grace & Co., et al.[1], | ) | Case No. 01-01139 (JKF) |
| | | Jointly Administered |
| Debtors. | ) | |
| | ) | |
| | ) | |

**Motion of Anderson Memorial Hospital for Class Certification**

Anderson Memorial Hospital respectfully moves, pursuant to Rules 9014 and 7023, Fed. Bankr. R. P. and 23, F.R.C.P., to certify a class action on behalf of itself and other similarly situated property owners whose buildings contain or used to contain the asbestos-containing surfacing materials for which the Debtors are responsible including many of those for which Anderson, through its counsel, have filed class proofs of claims for in this bankruptcy.

---

[1] The Debtors consist of the following 62 entities: W. R Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-I Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Ins., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Ins., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp, Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B 11 Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe. Inc., Grace H-G Inc., Grace H-G II Inc,, Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Ins., MICA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Curving, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## I. CLASS DEFINITION

Anderson seeks to certify an opt-out class action on behalf of itself and the class of other property owners whose buildings were, are or will be contaminated with asbestos fibers released from asbestos-containing surfacing materials for which the Debtors are legally responsible including, but not limited to, those claims identified in Exhibit A. The class would explicitly exclude any building for which a property damage claim is currently pending in this bankruptcy not listed on Exhibit A.

## I. NECESSITY FOR CLASS CERTIFICATION

The class action device is particularly appropriate and necessary in this bankruptcy proceeding because of the Debtors' failure to provide individual notice of the property damage bar date and bar date order to claimants Debtors knew had Grace asbestos-containing products in their building. The Debtors' sales and shipping records, containing street addresses and occasionally containing names, specifically identify thousands of buildings with Grace asbestos-containing surfacing products. Thus, when the Debtors' advanced their notice campaign pursuant to this Court's Bar Order, they had at their disposal physical and mailing addresses of those buildings with property damage claim in this bankruptcy. Armed with that knowledge, the Debtors made no attempt to mail individual notice to those potential claimants and have relied instead on notice by publication. See, Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (where the names and addresses of those affected are available, the reasons to resort to means less likely than the mails to apprise them of the proceedings and comport with due process disappears).

It is generally recognized that bar dates are not binding on known creditors who have not received appropriate notice of the bar order. Chemtron Corp. v. Jones, 72 F.3d 341 (3d Cir.1995) ("Inadequate notice is a defect which precludes discharge of a claim in bankruptcy"); Tillman ex. rel. Estate of Tillman v. Camelot Music, Inc., 408 F.3d 1300 (10th Cir.2005) (holding plaintiffs' claims not discharged in bankruptcy where the Debtor is aware

of the claim, concealed the claim and then relied upon publication notice of the bar date); In re: Sacred Heart Hospital of Norstown, 177 B.R. 16 (E.D.Pa.1995). Known creditors must be provided with actual notice of a debtor's bankruptcy filing and bar claims date. City of New York v. new York, N.H. & H.R. Co., 344 U.S. 293, 296, 73 S.Ct. 299, 301, 97 L.Ed.2d 333 (1953). Known creditors are those whose identity "is reasonably ascertainable by the debtor." Tulsa Professional Collection Serv., Inc. v. Pope, 485 U.S. 478, 490, 108 S.Ct. 1340, 1347, 99 L.Ed.2d 565 (1988).

In re: Standard Metals Corp., 839 F.2d 1383 (10th Cir.1987), is instructive. In Standard Metals, a claimant filed a class proof of claim on behalf of a putative class of bondholders. The bankruptcy court refused to acknowledge the class claim and struck the individual claim of the class representative as a sanction for not attending a hearing, and refused to extend the bar date and provide notice to the purported class members because it would "unduly complicate the proceedings." Id. The district court affirmed this decision.

Initially, the circuit court agreed that class claims could not be recognized under the bankruptcy code. In re: Standard Metals, 817 F.2d 625 (10th Cir.1987); but see, In re: American Reserve, 840 F.2d 487 (7th Cir.1988) (allowing class proofs of claim); In re: Charter Co., 876 F.2d 866 (11th Cir.1989);[2] Reid v. White Motor Co., 886 F.2d 1462 (6th Cir.1989) (allowing class proofs of claim);[3] In re: Birting Fisheries, 92 F.3d 939 (9th

---

[2] The Debtors have argued to this Court that Speights & Runyan should have been "candid" and sought pre-approval to file a class proof of claim. This argument ignores In re: Charter, in which the Eleventh Circuit explicitly held that the appropriate avenue for pursuing a class action is Rule 7023, which is not applicable until there is a "contested matter." Rule 9014, Fed. R. Bankr. P. Accordingly, "this avenue for invoking Rule 23 was not available to the appellants" until an objection is made. 876 F.2d at 874 ("absent an adversary proceeding, the first opportunity to a claimant has to move under Bankruptcy Rule 9014, to request application of Bankruptcy Rule 7023, occurs when an objection is made to a proof of claim. Prior to that time, invocation of Rule 23 procedures would not be ripe, because there is neither an adversary proceeding nor a contested matter").

[3] Without debating the logic of this reasoning in light of the general bankruptcy rule that proofs of claim signed by the attorney for a party are deemed authorized, see, In re: Garner, 246 B.R. 617 (BAP 9th Cir.2000), Speights & Runyan holds a Power of Attorney for Anderson Memorial Hospital who is clearly a member of the class it seeks to represent in these proceedings. [Exhibit – POA]. However, even if it did not, other courts have held that a class proof of claim filed by the attorney for the class representative are valid and authorized under the Bankruptcy Code. Wilson v. Valley Electric Membership Corp., 141 B.R. 309 (E.D.La.1992) (wherein Judge Sear, former chair of the Advisor Committee on Bankruptcy Rules, held that the class attorney was not only

Cir.1996) (same); In re: Trebol Motors Dist. Corp., 220 B.R. 500 (BAP 1st Cir.1998) (same); In re: Kaiser Group International, Inc., 278 B.R. 58 (D.Del.2002) (Walrath, J) (citing In re: Whitaker, 882 F.2d 791, 793, n.1 (3d Cir.1989) as an acknowledgement by the Third Circuit of class proofs of claim in bankruptcy); In re: United Companies Financial, 276 F.R. 368 (D.Del.2002) (the "vast majority of courts conclude that class proofs of claim are permissible in a bankruptcy proceeding"). However, on reconsideration, the circuit recognized that because the identity of the class members was "reasonably ascertainable," they were known creditors entitled "proper notice." Under these circumstances, the circuit court stated:

> We must conclude that it was error for the bankruptcy court and the district court to limit notice requirements to the creditors listed by the debtor when other became known and whose claims were clearly stated and brought to the attention of the bankruptcy court with motions for specific action. The bankruptcy court had a responsibility under the Act, the rules, and as a court of equity to give all creditors an opportunity to present their claims in the proceedings.

839 F.2d at 1387.

According to the Debtors' logic as expressed in its Fifteenth Omnibus Objection, the mere knowledge that a Grace product is in a building is sufficient to cause a property damage claim to accrue. By this logic, Grace's own records, which identified thousands of known buildings by street address which contained the Debtor's asbestos-containing surfacing treatments, identified with some particularity the address of known asbestos property damage creditors. See, e.g. [Exhibit 1]. Indeed, through the years, Grace corresponded directly with many building owners to falsely assure them that asbestos-containing Monokote **did not** release asbestos fibers and contaminate buildings. See, e.g. [Exhibit 2]. Nevertheless, the Debtors made no effort to provide these creditors with direct notice of the bar date. Because the notice to these known creditors was inadequate, the certification of this class may be the

---

authorized to execute class proofs of claim, but that that the class attorney was not required to file a verified statement pursuant to Rule 2019, Fed. R. Bankr. P.).

4

only means by which many property damage creditors can receive proper notice by which their claims can be discharged through this bankruptcy.

## II. ASBESTOS CLASS ACTIONS

As recounted by the late Chief Justice Rehnquist's special judicial committee, asbestos "is a tale of danger known in the 1930s,[4] exposure inflicted upon millions of Americans in the 1940s and 1950s, injuries that began to take their toll in the 1960s, and a flood of lawsuits beginning in the 1970s." In re Asbestos Products Liability Litigation (No. VI), 771 F.Supp. 415, 418 (Jud.Pan.Mult.Lit. 1991), citing *Report of the Judicial Conference Ad Hoc Committee on Asbestos Litigation*, 1-3 (1991).

This flood of lawsuits resulted from two unique properties of asbestos - its relative indestructibility and the "latency period" of 20-50 years after first exposure until disease appears. Thus, exposures in the 1940's led to disease in the 1980's, while disease from exposure in the 1970's have just begun to surface. Because "[a]sbestos dust is [also] no respecter of job classifications,"[5] disease has followed exposure from the early cases in the textile mills, into the shipyards of World War II, to building construction sites, home on work clothes to the workers' families, and now into buildings where those who must work and live can be exposed

The cost of removing and cleaning asbestos contamination from a building is staggering to building owners. Building owners must separately isolate and remove asbestos containing materials so that maintenance workers and custodians will not be exposed when

---

[4] No substance "has more clearly demonstrated detrimental health effects on humans than has asbestos exposure." 51 Fed. Reg. 22612, 22615, OSHA Final Rules, "Occupational Exposure to Asbestos, Tremolite, Anthophillyte and Actinolite." (June 20, 1986). The exhibits summarizing the defendants' early knowledge of this danger are included in Anderson's separate filing.

[5] City of Greenville v. W. R. Grace & Co., 640 F.Supp. 559, n. 1 (D.S.C.1986), aff'd 827 F.2d 975 (4th Cir.1987) (".If the people manufacturing the asbestos or putting it in buildings were known to be at risk, logic suggests the manufacturer should anticipate that others who would work around the material or eventually have to remove it during renovation or demolition might also be at risk.").

their routine work disturbs dust in the building riddled with asbestos fibers.[6] Moreover, as was fatefully demonstrated in the shipyards of World War II, the most extreme exposures to asbestos came not when asbestos-materials were being installed, but when they were being ripped out and replaced. Accordingly, to avoid these extreme exposures to workers, building owners (as required by the federal NESHAP regulations) are required to carefully remove asbestos-containing materials under extremely controlled conditions upon renovation or demolition of the building.

Courts have agreed that asbestos property damage actions are especially appropriate for class treatment. Notably, the Debtor initially urged this very position in In Re: Asbestos School Litigation, 104 F.R.D. 422, 426-427 (E.D. Pa. 1984), aff'd in relevant part 789 F.2d 996 (3d Cir.), cert. denied 479 U.S. 852, 915 (1986).

Following a report to Congress from the United States Attorney General, which concluded that schools could rely on existing state law to recover the cost of asbestos removals from the manufacturers, the Debtor initially stipulated to a mandatory non-opt out class action brought on behalf of all this nation's public and private schools. In Re: Asbestos School Litigation, 104 F.R.D. at 426-427. The Debtor also argued to the district court that asbestos property damage litigation should learn from the mistakes of the personal injury litigation and proceed as a certified class:

> Thus, we are beginning to see in the asbestos school litigation the first saplings of a forest potentially similar to the asbestos personal injury litigation with which the courts and defendants are all too familiar.

[Exhibit 3, Memorandum of National Gypsum Company, U. S. Gypsum and W. R. Grace & Co. in support of Certification of a Mandatory Class Action Against All Defendants in the School Class Action, at 1, 2]. In the Court's words, Grace and U.S. Gypsum's position "was

---

[6] Recent studies reveal a growing number of cases of asbestos disease in those exposed only to asbestos materials used in buildings. See, Oliver, L. Christine, "Asbestos-Related Disease in Public School Custodians," American Journal of Industrial Medicine, Vol. 19 at 303-316 (1991); Anderson, Henry A., "A Radiographic Survey of Public School Building Maintenance and Custodial Employees," Environmental Research, Vol. 59 at 159-166 (1993).

6

that is was far preferable for them to face one 'global' action rather than litigate thousands of individual cases." In Re: Asbestos School Litigation, 104 F.R.D. at 426. After thoroughly exploring the class action requirements of Rule 23, FRCP, the district court concluded in part that a nationwide class action should be certified under Rule 23(b)(3), FRCP. Id. at 430-434.

After certification, the Debtor maintained the same position on appeal. While acknowledging that there were individual issues in asbestos property damage cases, the Debtor explained to the Third Circuit that:

> There is another set of issues which are equally important to the resolution of these cases, which do not differ materially from one action to the next, and which involve the same witnesses, the same discovery, the same documents, and the same factual and legal determinations. With respect to such issues as negligence, unreasonable danger, state-of-the-art, and the justiciability and amount of any award of punitive damages, the precise facts applicable to the claim of any plaintiff are equally applicable to the claims of others . . .

[Exhibit 4, Brief to the Third Circuit Court of Appeals, from National Gypsum Co., United States Gypsum Co., and W. R Grace & Co., in the School Class Action, at pp. 9-10]. The Court agreed that common issues existed and certified an opt-out nationwide class action for the schools' asbestos property damage claims. In re: School Asbestos Litigation, 789 F.2d 996 (3d Cir.), cert. denied 479 U.S. 852, 915 (1986).

In reaching its decision, the Third Circuit emphasized that "[e]xperience shows that in the asbestos litigation arena redundant evidence is the rule rather than the exception" and that "[i]n case after case, the health issues, the question of injury causation, and the knowledge of the defendants are explored, often by the same witnesses." Id. at 1010.

The Third Circuit also noted that asbestos property damage classes were even more appropriate than asbestos personal injury classes. Unlike individual personal injury cases, which present complex causation problems, the Court noted "[the causation phase] phase of a property damage case is more straightforward." Id. The Court again drew this same distinction when it recently noted that asbestos property damage classes involve "vastly

fewer individualized questions" than asbestos personal injury classes. Georgine v. Amchem Products, Inc., 83 F.2d 610, 627 and n. 13 (3d Cir. 1996), aff'd sub nom., Amchem v. Windsor, 521 U.S. 591, 7 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

Numerous other courts have followed suit. See, Central Wesleyan College v. W. R. Grace & Co., 143 F.R.D. 628, 632-633 (D.S.C. 1992), aff'd, 6 F.3d 177 (4th Cir. 1993) (certifying a nationwide asbestos property damage class action for colleges and universities); Detroit Board of Education v. The Celotex Corp., Case No. 84-429634 (Cir.Ct., Wayne County, MI, Sep. 6, 1985) (certifying a statewide asbestos property damage class action and holding certification would "achieve considerable economies in terms of the Court's and litigants' time and financial resources."). Ex. C at 15; National Gypsum Co. v. Kirbyville Independent School District, 770 S.W.2d 621, 624 (Tex.App. 1989) (certification on the common issues of the asbestos health hazard, defendants' knowledge of the danger, failure to warn or test, conspiracy, and punitive damages); Dayton Independent School District, et al. v. U. S. Mineral Products Co., et al., 1989 WL 237732 (E.D.Tex., Feb. 14, 1989) (certifying a common issues trial on the defendants' knowledge of the hazard of asbestos, their testing and warning or lack of warning, conspiracy, and punitive damages); Prince George Center, Inc. v. U. S. Gypsum, et al., No. 5388 (Pa.Ct.Com.Pls. April 16, 1992).

Moreover, many of these courts, after having certified the class, have addressed the defendants recurring attempts to "decertify" these classes. For instance, in the Schools Class Action, Defendant's moved to decertify the class six years after it was initially certified, alleging that the litigation had too many individual issues such as the defendants' disparate knowledge of the hazards of asbestos and product. In denying this motion, Judge Kelly noted that

> Defendants do not present arguments which are either novel or representative of changed circumstances during the course of this litigation relevant to the requirements of class certification under Fed. R. Civ. P. 23(a). To date, no substantial manageability problems have arisen which would demonstrate to this court that proceeding on a class basis in this matter is imprudent. The

> common issues which exist in this case are substantial and predominate. Finally, as the Third Circuit noted in this matter, "It is difficult to imagine that class jury findings on the class questions will not significantly advance the resolution of the underlying hundreds of cases." In re: School Asbestos Litigation, 789 F.2d at 1010 (quoting Jenkins v. Raymark Indus. Inc., 782 F.2d 468, 472-73 (5th Cir.1986). For the foregoing reasons, I must deny the motion of certain defendants for decertification of the class.

In re: Asbestos School Litigation, Master File No. 83-0268 (E.D.Pa., January 12, 1990) (Order No. 203) [Exhibit 5].

Similarly, Grace moved to decertify Colleges and Universities class action almost six years after it was certified. However, Grace settled the case (and necessarily vouched for the appropriateness of class certification, see, Amchem v. Windsor, U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)) prior to resolution of its motion.

The late Chief Justice Rehnquist's special committee summed it up best in its Summary of the Report of the Judicial Conference Ad Hoc Committee on Asbestos Litigation (at 19):

> Virtually every federal judge who has tried to cope with a substantial asbestos docket agrees that this litigation impasse cannot be broken except by aggregate or class proceedings with issues of liability and damages being resolved for the entire class or subclass. The potential advantages of aggregation are evident: (1) avoidance of duplication of many asbestos litigation issues; (2) uniformity of decision making; (3) reduction of costs and (4) expedited disposition of large numbers of cases.

Those same purposes can be served in this proceeding.

## III. Requirements for Class Certification

The Supreme Court has expressed approval of class actions, specifically noting that "[c]lass actions serve an important function in our system of civil justice." Gulf Oil Co. v. Bernard, 452 U.S. 89, 99, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). The Third Circuit has likewise held that class actions should be looked upon favorably. See, Eisenberg v. Gagnon, 766 F.2d 770, 785 (3d Cir.1985).

Rules 7023, Fed.R.Bankr.P. and, by reference, Rule 23(a) and (b), F.R.C.P. set forth the elements that must be satisfied before a class action will be certified. Rule 23(a), F.R.C.P. states that

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

These requirements are commonly called (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.

A. "Numerosity

As the Debtor has so frequently pointed out, there are thousands of asbestos property damage claims currently pending in this bankruptcy that fit within the Anderson class definition. These claims were filed on behalf of building owners across the United States and Canada who have asbestos-containing surface treatments in their buildings for which the Debtor may be liable.

Numerosity does not require that joinder of all parties be impossible, only impracticable and inefficient. Ardy v. Federal Kemper Insurance Co., 142 F.R.D. 105, 111 (E.D.Pa.1992). Where "it is general knowledge or common sense that it [the class] is large, the court will take judicial notice of this fact and will assume that joinder is impracticable," particularly absent a contrary showing by defendants who possess or possessed the information as to the numerousness of the class. Newberg, Newberg on Class Actions 45-46 (2d Ed. 1985).

---

[7] Even if this Court were to decide to limit class certification to asbestos-containing surfacing material manufactured or sold by the Debtor, excluding Zonolite Attic Insulation and masonry fill, Grace sold and manufactured at least 22 different asbestos-containing products that it classified as surfacing material. In its submission to the USEPA under the Asbestos Information Act, Grace acknowledges that it manufactured these and other asbestos-containing products from 1938 until 1978. See, 55 F.R. 5144-01, Feb. 13, 1990. [Exhibit 6]. Grace's own records show tens of thousands of shipments of these products across the United States.

The decisions certifying asbestos property damage class actions support this common sense conclusion. In <u>In re: Asbestos School Litigation</u>, the district court concluded that almost 40% of the possible class members (14,000 out of 36,000) had buildings that contained the defendants' friable asbestos materials. <u>In re: Asbestos School Litigation</u>, 104 F.R.D. at 428. The district court in <u>Central Wesleyan</u> similarly concluded that 16%-35% of the nations' colleges and universities had buildings that contain friable asbestos materials. <u>Central Wesleyan</u>, 143 F.R.D. at 636.

Moreover, impracticability has been held to exist for classes as few as fourteen plaintiffs, see <u>Grant v. Sullivan</u>, 131 F.R.D. 436 (M.D.Pa.1990), and a finding of numerosity was upheld in an asbestos property damage action where only 67 building owners were class members. <u>National Gypsum v. Kirbyville Independent School District</u>, 770 S.W.2d 621 (Tex.App. 1989).[8]

**B. Commonality**

As aptly stated by the Third Circuit in the School Asbestos Class Action Litigation, "the threshold for commonality is not high." <u>In re: School Asbestos Litig.</u>, 789 F.2d 996 (3d Cir.1986). It is not necessary for every class member to have identical claims. Rather, the "commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." <u>Krell v. Prudential Insurance Co. of America</u>, 148 F.3d 283, 310 (3d Cir.1998).

The questions that Anderson asks be certified are the same common questions the courts have certified in asbestos property damage class actions. See <u>Central Wesleyan</u>

---

[8] See also, <u>Arkansas Education Asso. v. Board of Education</u>, 446 F.2d 763 (8th Cir.1971)(17 members); <u>Cypress v. Newport News General and Nonsectarian Hospital Ass'n</u>, 375 F.2d 648 (4th Cir.1967) (18 members); <u>MacNeal v. Columbine Exploration Corp.</u>, 123 F.R.D. 181 (E.D.Pa.1988) (36 members); <u>Dameron v. Sinai Hospital</u>, 595 F.Supp. 1404 (D.Md.1984)(25-30 members); <u>Pabon v. McIntosh</u>, 546 F.Supp. 1328 (30-40 members); <u>Republic National Bank of Dallas v. Denton & Anderson Co.</u>, 68 F.R.D. 208 (N.D.Tex.1975) (excess of 40 members); <u>Sharon Steel Corp. v. Chase Manhattan Bank</u>, 88 F.R.D. 38 (S.D.N.Y.1980) (87 members); <u>Polich v. Burlington N, Inc.</u>, 116 F.R.D. 258 (D.Mont.1987)(60 members sufficient to raise the presumption that joinder is impracticable).

College v. W. R. Grace & Co., 6 F.3d 177 (4th Cir. 1993); In re: School Asbestos Litigation, 789 F.2d 996 (3d Cir.), cert. denied 479 U.S. 852, 915 (1986); National Gypsum Co. v. Kirbyville Independent School District, 770 S.W.2d 621 (Tex.App. 1989).  Moreover, the Debtors have similarly conceded that this Court can (and should) give common treatment to the entire body of traditional property damage claims on such issues as constructive notice, actual notice, scientific reliability and product hazards.  As the district court in Central Wesleyan observed, "[c]learly, there are common issues of fact" on the general health hazards of asbestos, defendants' knowledge or reason to know these hazards, their failure to warn/test, conspiracy, punitive damages, the friability (propensity to crumble) of defendants' products, the applicability of the NESHAP regulations to these products, and the need for inevitable removal of these products." Central Wesleyan, 143 F.R.D. at 636.  Affirming, the Fourth Circuit likewise noted the "repetitious, wasteful presentation of proof" arising from "the need to prove over and over when defendants knew or should have known of asbestos' hazards, or whether defendants engaged in concerted efforts to conceal this knowledge, or even whether certain defendants' products crumble and release dust under hand pressure." Central Wesleyan College, 6 F.3d at 185.

### C. Typicality

By definition, the "typicality" requirement means only that Anderson and the absent class members' claims be similar rather than identical or co-extensive.  Courts thus generally presume typicality when "common questions" exist, Newberg, Newberg on Class Actions 165 (2d Ed. 1985), because "[a] claim is 'typical' if it arises from the same course of conduct that gives rise to the claims of the class members and if the claims are based on the same legal theories." Central Wesleyan, 143 F.R.D. at 628; see also, General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157 (1982) (noting commonality and typicality requirements "tend to merge"). "This test dos not require that the representatives have identical claims which other class members might present.  The question of typicality

[instead] focuses on the similarity of the legal and remedial theories of claims of the named and unnamed plaintiffs." Bates v. Tenneco, 132 F.R.D. 160, 163 (D.S.C.1990).

Anderson's claim is typical of the absent class members' claims for numerous reasons, including: (1) all the claims are united by federal and state regulations which require the eventual removal of friable asbestos materials "regardless of the exact product involved," Central Wesleyan, 143 F.R.D. at 637; (2) the claims are united by Debtor's civil conspiracy liability, which renders all the defendants responsible for the damage caused by their co-conspirators' products as well as their own, Central Wesleyan, 6 F.3d at 188. As has been repeatedly noted by circuit courts around the country, asbestos property damage cases involve far fewer individualized issues that personal injury classes. Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1232 (9th Cir.1996) (citing School Asbestos "as much more manageable than a personal injury case would have been because, in essence, the effect of asbestos in different buildings is the same and the effect of asbestos in different people is not."); Castano v. American Tobacco Co., 84 F.3d 734, 742 (5th Cir.1996); Georgine v. Amchem, 83 F.3d 610, n. 3 (3d Cir.), aff'd sub nom., Amchem v. Windsor, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

**D. Adequacy**

Adequacy focuses on whether or not any conflict exists between the named representative and the absent class members related to the subject of the action. This requirement does not require Anderson to show that it is likely to succeed on the merits; requiring such a showing on the merits in determining whether a class should be certified is legal error. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 1974). The issue is instead whether or not Anderson's counsel is generally able to conduct the suit and whether the class representative's interests are antagonistic to those of the rest of the class. Krell v. Prudential Ins. Co. of America, 48 F.3d 283, 312 (3d Cir.1998). Prior to filing for bankruptcy, Grace admitted in the underlying Anderson Memorial Hospital proceedings that Anderson and Speights & Runyan satisfied these requirements, which is the

applicable legal standard in the Third Circuit.[9] Having made these admissions, the Debtor should be bound by them.

### E. Predominance and Superiority

Rule 23(b)(3) permits class certification in those instances where "the Court finds that the questions of law or fact common to the class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3), F.R.C.P. Predominance is met where, as here, the class is cohesive enough to warrant adjudication by representation. Jefferys v. Communication Workers, 212 F.R.D. 320, 322 (E.D.Va.2003). Cohesiveness of this class is emphatically demonstrated by the Debtors' insistence that this Court entertain the legal issues in the estimation proceeding that they claim apply to the broad spectrum of property damage claimants. These issues include whether Monokote is hazardous, constructive notice for the statute of limitations, and the reliability of testing methodologies used to measure asbestos contamination. Additionally, common issues such as whether Grace's asbestos containing-surfacing materials are hazardous, whether these products release asbestos fibers under foreseeable uses, whether Grace tested its products for fiber release potential and whether the defendants owed or breached any duties to building owners clearly predominate over individual issues such as actual notice or individual damages. Central Wesleyan College v. W. R. Grace & Co., 143 F.R.D. 628 (D.S.C.1992), aff'd, 6 F.3d 177 (4th Cir.2993).

---

[9] Nevertheless, through fraudulent and "so-called" expert testimony and smear campaign the likes of which this Court is all too familiar, Grace attempted to challenge the adequacy of Speights & Runyan by raising groundless ethical charges against Speights & Runyan. As was demonstrated at the August 29, 2005 Omnibus hearing by Mr. Speights, this effort was contradicted by a substantial record and was immediately abandoned by the Debtor's co-defendants after the Debtor instigated this bankruptcy proceeding. As the South Carolina trial Judge expressed in his letter announcing his ruling on class certification as to the Debtor's co-defendants in the Anderson case, "I want it to be clear that I find absolutely no merit to the argument that Speights & Runyan would not be adequate class counsel for the plaintiff in this class action. I could easily address and with specificity dismiss the grounds raised on this issue, as I had reached my conclusions prior to the Grace stay." [Exhibit 7].

The class device is also superior in this bankruptcy proceeding because of the Debtors' failure to provide individual notice of the property damage bar date to claimants it knew had Grace asbestos-containing products in their building. Because the Debtors failed to provide the best reasonable notice to these known creditors, the certification of this class may be the only means by which property damage claimants can receive proper notice by which their claims can be discharged through this bankruptcy. Accordingly, the class device is superior to the individual claims.

## IV. Conclusion

WHEREFORE, Anderson Memorial Hospital respectfully moves for an order certifying an asbestos property damage class as set forth herein.

Respectfully submitted,

Christopher D. Loizides (#3968)
Michael J. Joyce (#4563)
Legal Arts Bldg.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 654-0248
Facsimile: (302) 654-0728 (fax)
E-mail: loizides@loizides.com

By:_____

SPEIGHTS & RUNYAN
Daniel A. Speights (SC Fed. ID No. 4252)
Marion C. Fairey, Jr. (SC Fed. ID No. 6101)
200 Jackson Avenue, East
P.O. Box 685
Hampton, SC 29924
Telephone: (803) 943-4444
Facsimile: (803) 943-4599

October 21, 2005