# TAB G

IN THE STATE OF SOUTH CAROLINA

COUNTY OF HAMPTON                    )

IN THE COURT OF COMMON PLEAS

ANDERSON MEMORIAL HOSPITAL,      )
on behalf of itself and others )
similarly situated

          Plaintiff,

      v.

              )
W.R. GRACE & COMPANY; W.R.       )
GRACE & COMPANY-CONNECTICUT;
UNITED STATES GYPSUM COMPANY;
USG CORPORATION;
UNITED STATES MINERAL PRODUCTS )
COMPANY; DANA CORPORATION;       )
KEENE CORPORATION; ASBESTOS
PRODUCT MANUFACTURING
CORPORATION; ASBESTOSPRAY
CORPORATION; H & A               )
CONSTRUCTION CORPORATION,        )
formerly SPRAYCRAFT;             )
T & N, plc, formerly             )
TURNER & NEWALL, PLC and         )
TURNER & NEWALL, LTD;

         Defendants.

Case No. 92-CP-25-279

FIRST AMENDED
CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

FILED
Case # 92-CP-25-279
Filed 1/14 19 93
at 11:35 o'clock
Clerk of Court for
Hampton County, South Carolina

---

      Plaintiff, Anderson Memorial Hospital, brings this action
on behalf of itself and all others similarly situated as a
voluntary class action under Rule 23 of the South Carolina Rules of
Civil Procedure, and alleges:

                      PARTIES

      1.   Plaintiff Anderson Memorial Hospital is a nonprofit
corporation organized and existing under the laws of the State of
South Carolina.

      2.   The above-named defendants (and/or their predecessors
in interest) are all corporations, companies or other business

entities which have been and/or are now engaged in the business of manufacturing, selling and/or distributing friable asbestos-containing acoustical plaster and/or fireproofing material for use in buildings; all references to "asbestos products", "products" or "asbestos materials" contained herein refer to friable asbestos-containing spray or trowel applied acoustical plaster and/or fireproofing.

3. Subject to the exceptions listed in paragraphs 4 and 11, the class of plaintiffs consists of all persons, corporations, partnerships, unincorporated associations or other entities which own in whole or in part any building which contains asbestos-containing acoustical plaster and/or fireproofing manufactured, sold and/or distributed by the above-named defendants; these buildings have suffered or will suffer asbestos contamination caused by the release of asbestos fibers from asbestos-containing products manufactured, sold and/or distributed by defendants.

4. The class does not include: a) any public and private elementary and secondary school, including, but not limited to those defined in the class actions In re: Asbestos School Litigation, 104 F.R.D. 422 (E.D.Pa.1984 , aff'd in part and vacated in part, 789 F.2d 996 (3rd Cir. 1986), cert. denied, 479 U.S. 852 915 (1986), and/or National Gypsum Co. v. Kirbyville Independent School District, 770 S.W.2d 621 (Tex.App. 1989), writ dismissed (Tex.Sup.Ct. 1990), and/or Board of Education of School District of Detroit v. Celotex Corp., No. 84-429634 NP (Mich.Cir.Ct., Wayne County Sept. 6, 1985), and/or any public and private school that

2

opted-out of any of these class actions; b) any public and private college or university as defined in the class action <u>Central Wesleyan College v. W. R. Grace & Co.</u>, CA No. 2:87-1860-8 (D.S.C. including opt outs therefrom; c) any commercial building leased in any part to the United States government on or after May 30, as defined in the class action <u>Prince George Center, Inc. v. United States Gypsum Co.</u>, C.A.No. 5388 (Philadelphia Common Pleas Court), including opt outs therefrom; d) any building owned by the Texas cities, counties, and school districts consolidated in <u>Dayton Independent School District v. U.S. Mineral Product Co.</u>, B-87-00507-CA (E.D. Tex. Feb. 14, 1989   including opt outs therefrom; e) any building owned by the federal or a state government; or f) any single family residence

### STATEMENT OF JURISDICTION

5.  Plaintiff is a nonprofit corporation organized existing under the laws of the State of South Carolina; it owns buildings located in South Carolina and its injuries complained of below occurred or will occur in whole or in part in the State of South Carolina.

6.  Defendants used the ports of South Carolina or roads and other means of transportation in the State of South Carolina to transport their products into the State of South Carolina where they sold and/or distributed their products to South Carolina residents or entities for use in buildings located in South Carolina

7.  Defendants are all subject to the jurisdiction of

3

this court in that Defendants transacted business in this state, committed tortious acts in whole or in part in this state, and/or produced, manufactured or distributed goods with the reasonable expectation that those goods would be used in this state and the goods were used in this state.

8. Defendants have caused or will cause, and all class members have suffered or will suffer, property damage as a result of the acts or omissions of these defendants.

9. The amount in controversy exceeds one hundred ($100.00) dollars for each member of the class, and some class members have suffered and will suffer less than fifty-thousand dollars ($50,000.00) in damages.

### CLASS ACTION ALLEGATIONS

10. Subject to the exceptions listed in paragraphs 4 and 11, the class of plaintiffs consists of all persons, corporations, partnerships, unincorporated associations or other entities which own in whole or in part any building which contains friable asbestos-containing acoustical plaster and/or fireproofing manufactured, sold and/or distributed by the above-named defendants.

11. The class does not include: a)  any public and private, elementary and secondary schools as defined in the class actions In re: Asbestos School Litigation, 104 F.R.D. 422 (E.D.Pa.1984), aff'd in part and vacated in part, 789 F.2d 996 (3rd Cir.1986), cert. denied, 479 U.S. 852, 915  1986), and/or National Gypsum Co. v. Kirbyville Independent School District, 770 S.W.2d

621 (Tex.App. 1989), <u>writ</u> <u>dismissed</u> (Tex.Sup.Ct. 1990), and/or

<u>Board of Education of School District of Detroit v. Celotex Corp.</u>,

No. 84-429634 NP (Mich.Cir.Ct., Wayne County Sept. 6, 1985), and/or

any public and private school that opted-out of these

aforementioned class actions; b) any public and private colleges

and universities as defined in the class action <u>Central Wesleyan</u>

<u>College v. W. R. Grace & Co.</u>, CA No. 2:87-1860-8 (D.S.C.

including opt outs therefrom; c) any commercial buildings leased in

any part to the United States government on or after May 30, 1986,

as defined in the class action <u>Prince George Center, Inc. v. United</u>

<u>States Gypsum Co.</u>, C.A.No. 5388 (Philadelphia Common Pleas Court),

including opt outs therefrom; d) any building owned by the Texas

cities, counties, and school districts consolidated in <u>Dayton</u>

<u>Independent School District v. U.S. Mineral Product Co.</u>, B-87-

00507-CA (E.D. Tex. Feb. 14, 1989), including opt outs therefrom;

e) any building owned by the federal or a state government; or f)

any single family residence.

12. The class is sufficiently numerous that joinder of

all members is impracticable

13. Plaintiff will fairly and adequately protect the

interests of the class. The interests of the class representative

are coincident with and not antagonistic to, those of the other

class members and plaintiff is represented by experienced and able

counsel who have previously litigated class actions and similar

types of cases.

14. There are questions of law and fact common to the

5

class.  Common questions of law include the liability of defendants for manufacturing, producing, selling and/or distributing asbestos materials for use in buildings.  Common questions of fact include the available scientific and technical knowledge when the asbestos products were manufactured and sold; defendants' knowledge or reason to know of the health hazards of asbestos and asbestos products; defendants' failure to warn class members of such hazards; the need for inspection and identification of friable asbestos in the class members' buildings; and the resultant damages incurred by members of the class

15. Plaintiff's claims are typical of the class members' claims and derive from a common nucleus of operative facts in that defendants' friable asbestos materials were installed in Plaintiff's and other class members' buildings.  These buildings have suffered or will suffer property damage caused by the release of asbestos fibers from defendants' products

16. Upon information and belief, the named plaintiff not only represents a large number of class members whose property is contaminated, but also, due to the defendants' failure to adequately warn of the potential dangers of asbestos products plaintiff represents an even larger number of class members who have yet to discover that their property has been or will be contaminated by asbestos fibers.  For these reasons, a class action is especially appropriate to promote judicial efficiency and to protect class members interests and rights

17. Each class member has been or will be similarly

6

injured by these defendants' acts and omissions in manufacturing, selling and/or supplying asbestos products.

18. Class treatment is a superior method for the fair and efficient adjudication of the issues in dispute because it permits a large number of injured parties, joinder of whom is impracticable, to prosecute their common claims in a single forum simultaneously. In addition, it does not infringe upon the rights of those building owners who wish to litigate their claims separately. The class action provides an efficient method whereby the relative rights of the class members and defendants can be fairly managed

SUBSTANTIVE ALLEGATIONS

19. Defendants manufactured, processed, sold, marketed and/or placed into the stream of commerce asbestos products knowing that they would be used in buildings for acoustical and/or fireproofing purposes

Asbestos

20. Asbestos is a known human carcinogen. Deterioration of asbestos products causes the release of asbestos fibers into air. Some such products in class members' buildings have already deteriorated to such a point as to make immediate removal of such products necessary. All asbestos products will eventually deteriorate to such a point if not earlier removed. In addition, any disturbance of asbestos products (such as by contact building users or maintenance workers, renovation or remodeling, demolition, vandalism, vibration and water damage) also causes a

7

release of fibers.   Once released, asbestos fibers are extremely durable and their size and shape permit them to remain airborne for long periods of time.

21. The asbestos products in each class members' building has resulted or will result in property damage because buildings have been or will be contaminated by the release asbestos fibers.

22. As a result of defendants' asbestos products, each class member faces an enormous and inevitable asbestos removal bill.   In addition, to control the asbestos until removal, class members must test, monitor and manage defendants' asbestos products.

<u>Defendants Acts/Omissions</u>

23. Defendants sought to suppress, conceal and obscure data on the relationship between asbestos exposure and disease as early as the 1930's.

24. Defendants suppressed, discouraged and retarded research and publication concerning the relationship between asbestos and various diseases, and actively concealed and misrepresented such relationship.

25. Defendants, through their participation in asbestos industry associations, their funding and control of the Saranac asbestos dust studies during the 1930's, their control over trade publications, and through other agreements, understandings, and joint undertakings, cooperated and assisted each other in the suppression and active concealment and misrepresentation of the

8

relationship between asbestos and disease as early as the 1930's.

26. Defendants were aware or should have been aware of certain studies and data linking asbestos with disease, and were aware or should have been aware of the acts of suppression, concealment and misrepresentation of the relationship established thereby being perpetrated for their economic benefit, but nevertheless continued to produce, manufacture, distribute and/or sell asbestos products without any warnings as to potential health hazards or property damage presented by their products.

Defendants and those entering the asbestos industry subsequent to the consummation of agreements, understandings and concert of action among the other industry members, adhered to an industry-wide practice of refusing to provide necessary warnings as to the health hazards or property damage presented by exposure to asbestos and asbestos products, and the resulting costs to repair such property damage.

### Damages

28. Because effective control of asbestos contamination is possible only after the asbestos is identified, the named plaintiff and other class members have had to, or will have to, incur the costs of inspection, analysis, containment, removal and replacement of defendants' asbestos products and other property contaminated with asbestos fibers. Class members have spent and will spend at a minimum hundreds of millions of dollars on asbestos abatement activities and other remedial action to eliminate the asbestos contamination caused by asbestos-containing products in

9

their buildings.

Class members will be compelled to abate defendants' asbestos products from their buildings as a result of asbestos contamination. Further, class members will have to dispose of much contaminated property including furnishings, drapes and curtains which cannot be adequately cleaned.

Class members must test for and manage asbestos materials (and incur substantially increased costs) for those building areas where friable asbestos cannot be immediately removed.

31. All friable asbestos material must be eventually removed from the class members' buildings separately and at great expense. Each removal project carries with it the additional expense of loss of use of those buildings for the duration of the removal projects.

<u>COUNT I: NEGLIGENCE</u>

32. Plaintiff hereby incorporates by reference Paragraphs 1-31, inclusive, as if fully set forth herein.

33. At all times material hereto, defendants knew or should have known that friable asbestos-containing products, in their ordinary and foreseeable uses, would be used in buildings for acoustical and fireproofing purposes.

34. At all times material hereto, defendants manufactured, processed, distributed and/or sold asbestos products which defendants knew, or through the exercise of reasonable care, should have known were defective and would damage class members'

10

property.

35. Defendants failed to warn, or adequately or sufficiently warn, either directly or indirectly, the foreseeable users of the hazards and costs associated with these materials or of the property contamination they could cause after installation.

36. Defendants failed to test or adequately test the asbestos and/or friable asbestos containing products or use alternate non-asbestos products in their place.

37. Defendants failed to represent accurately to class members, either directly or indirectly, that asbestos as used in the defendants' asbestos products can pose a health hazard and/or contaminate property, whereby class members were induced to purchase and utilize such products.

38. Defendants failed to remove or recommend the removal of friable asbestos-containing products from the market; to undertake the responsibility to test for, and remove and replace, asbestos materials in buildings when they knew or should have known that the presence of such asbestos material in a readily-releasable form would contaminate buildings.

39. Defendants at all times have failed and continue to fail to perform their continuing duties to warn, recall, and abate.

40. As a result of defendants' conduct, plaintiff and class members continue to be directly and materially harmed and injured

COUNT II:
GROSS NEGLIGENCE AND INTENTIONAL,
WILLFUL AND WANTON, AND RECKLESS MISCONDUCT

11

41. Plaintiff hereby incorporates by reference Paragraphs 1-40, inclusive, as if fully set forth herein.

42. At all times material hereto, defendants knew or should have known that friable asbestos-containing products, in their ordinary and foreseeable uses, would be used in buildings for acoustical and fireproofing purposes.

43. At all times material hereto, defendants manufactured, processed, distributed and/or sold asbestos products which defendants knew, or through the exercise of reasonable care, should have known were defective and would damage class members' property

44. Defendants failed to warn, or adequately or sufficiently warn, either directly or indirectly, the foreseeable users of the hazards and costs associated with these materials or of the property contamination they could cause after installation.

Defendants failed to test or adequately test the asbestos and/or friable asbestos containing products or use alternate non-asbestos products in their place

46. Defendants failed to represent accurately to class members, either directly or indirectly, that asbestos as used in the defendants' asbestos products can pose a health hazard and/or contaminate property, whereby class members were induced to purchase and utilize such products.

Defendants failed to remove or recommend the removal of friable asbestos-containing products from the market; to undertake the responsibility to test for, and remove and replace,

12

asbestos materials in buildings when they knew or should have known that the presence of such asbestos material in a readily-releasable form would contaminate buildings

48. Defendants at all times have failed and continue to to perform their continuing duties to warn, recall, and abate.

49. As a result of defendants' conduct, plaintiff and class members continue to be directly and materially harmed and injured.

50. All Defendants' acts and omissions complained of in count were committed by them intentionally, willfully and wantonly, or in reckless indifference to the rights of the Plaintiff and other class members

COUNT III:    BREACH OF IMPLIED WARRANTIES

51. Plaintiff hereby incorporates by reference Paragraphs 1-50, inclusive, as if fully set forth herein.

52. Defendants failed to represent accurately to class members, either directly or indirectly, that asbestos and friable asbestos-containing products are unfit and unsafe to persons and property and would require enormous expenditures to control and ultimately remove.

53. Defendants intended that their asbestos products be used in buildings for acoustical and fireproofing purposes, and impliedly warranted through the sale, advertising, and/or marketing of their products that asbestos and asbestos materials were fit for their normal and foreseeable uses in buildings, including those acoustical and fireproofing purposes

13

Class members, as foreseeable and intended users of defendants' products, relied upon defendants' representations skill, expertise and judgment in assuming that asbestos and asbestos-containing materials would not only perform their basic functions as warranted, but were safe, would not cause the class members to suffer property damage, and would not require enormous sums to maintain and eventually remove.

Defendants have consistently refused to assist in any asbestos abatement despite numerous requests from building owners Plaintiff, like the other plaintiffs before them  again demands responsive action

56. Defendants breached these implied warranties in that asbestos products as manufactured, distributed and/or sold by defendants are poisonous, carcinogenic, deleterious, and highly harmful, and can and do contaminate buildings and other property, therein by releasing asbestos fibers, and inevitably require enormous expenditures to maintain and dispose

57. As a direct and proximate result of defendants' breach of implied warranties of good and merchantable quality and fitness for a particular purpose and for their intended use, and the presence of the dangerous asbestos products in the building resulting therefrom, the class members were or will be directly and materially harmed and injured.

58. All Defendants' acts and omissions complained of in this count were committed by them intentionally, willfully and wantonly, or in reckless indifference to the rights of the

14

Plaintiff and other class members.

### COUNT IV:  FRAUD

Plaintiff hereby incorporates by reference paragraphs 1-58, inclusive, as if fully set forth herein

60. Defendants at all time in producing, manufacturing, distributing and/or selling their asbestos products knew that these products were and are hazardous and/or potentially hazardous to human life, health and property, and knew that asbestos fibers cause disease, injury, and death, including but not limited to cancer, and property damage

At all time in marketing their products, defendants falsely and fraudulently represented expressly or impliedly to plaintiff, class members, the public and the market that their products were safe, and defendants suppressed and concealed facts that asbestos products are hazardous and that asbestos fiber cause disease, injury and death to humans, and property damage. Defendants knew of the dangerous propensities when they sold them. Defendants also on other occasions failed to even notify buyers that their products included asbestos.

62. Defendants at all time have had a continuing duty to disclose the dangerous propensities of their products to plaintiff, class members, the public, and the market, and the suppression of these facts constituted misleading and fraudulent misrepresentations because defendants gave information of other facts, including the uses for which they represented their products were suited  which were likely to mislead for want of communication

15

of the suppressed facts, including the hazardous nature of asbestos and asbestos fibers.

63. The misrepresentations, suppressions, and failures to disclose information were made by defendants with the intent to induce plaintiff, class members, the public and the market to purchase and use the products of defendants in reliance thereon.

64. Defendants have continued at all time to the present to falsely and fraudulently misrepresent, suppress, and fail to disclose the dangerous propensities of their products including the facts that their products release fibers during operations maintenance, renovation, product deterioration, and demolition.

65. Plaintiff, class members, the public, and the market, at the times these failures to disclose and suppressions of fact occurred, and at the time of purchase and use of the products were ignorant of the existence of the facts which defendants suppressed and failed to disclose. If plaintiff, class members, the public, and the market had been aware of the existence of facts not disclosed by defendants, plaintiff and class member would not have purchased or used the asbestos products of defendants, and would have not suffered and would not suffer, the damages injuries alleged herein.

66. As a direct and proximate result of defendants suppression of facts and failure to disclose, marketing of asbestos products, and the presence of the asbestos products in the buildings of plaintiff and class members, plaintiff and class members were or will be directly and materially harmed and injured.

16

All Defendants' acts and omissions complained of in this count were committed by them intentionally, willfully and wantonly, or in reckless indifference to the rights of the Plaintiff and other class members.

COUNT V:  RESTITUTION

Plaintiff hereby incorporates by reference paragraphs 1-67, inclusive, as if fully set forth herein

69. Defendants have at all times failed to perform their legal duties to perform asbestos abatement in plaintiff's buildings, and continue to fail to act, despite demands to do so including this demand.

70. Plaintiff and members of the class, as a result of defendants' continuing failure to act and perform their legal duty to warn, test, remove and/or otherwise abate the hazards of friable asbestos-containing products and pay for and implement the remedial measures required upon product deterioration, building renovation demolition, and on other occasions during the life-cycle of the buildings in order to prevent fiber release, have had to and will have to undertake the responsibilities and duties of the defendants and to pay for asbestos remedial measures.

71. Plaintiff and class members also seek to have defendants perform and pay for the cost of ongoing operations and maintenance work, including monitoring, to assure that asbestos remains controlled until it is removed.

72. As a result of defendants' conduct, plaintiff and class members have been and/or will be directly and materially

17

harmed and injured

73. All Defendants' acts and omissions complained of in this count were committed by them intentionally, willfully wantonly, or in reckless indifference to the rights of Plaintiff and other class members.

COUNT VI:
PUBLIC AND/OR CONTINUING PRIVATE NUISANCE

74. Plaintiff hereby incorporates by reference paragraphs 1-73, inclusive, as if fully set forth herein.

75. Plaintiff and class members are, and have been, the owners and in possession and control of the buildings properties described herein.

76. The presence of friable asbestos-containing products results from the acts and omissions of Defendants, does or will cause or threaten injury to the health of users of the buildings, and interferes with the comfortable use and enjoyment of Plaintiff's and other class members property, thereby constituting a nuisance

77. The nuisance created by the continued presence of friable asbestos-containing products in the class members' buildings affects and will affect a large number of persons, including all users of the buildings. Further, upon demolition, fiber release will cause or threaten a nuisance by elevating or threatening to elevate asbestos fiber releases in the communities where the buildings are located

78. The nuisance also causes special injury to the class in that as owners of the buildings, Plaintiff and class

18

members will have to undertake the responsibility and duty of the defendants to expend monies for the abatement of the friable asbestos-containing products, including analysis, and removal of the products from the buildings.

79. The continued presence of the friable asbestos-containing products in Plaintiff's and other class members' buildings is abatable and the damage reflected by removal and abatement costs is remediable.  The continued presence of these products constitutes both a public nuisance, and a continuing private nuisance, entitling Plaintiff and class members to damages, and to injunctive relief.

80. As a result of Defendants' conduct, plaintiff and class members have been and/or will be directly and materially harmed and injured.

81. All Defendants' acts and omissions complained of in this count were committed by them intentionally, willfully and wantonly, or in reckless indifference to the rights of the Plaintiff and other class members.

COUNT VII:   IMPLIED EQUITABLE INDEMNITY
AND/OR COMPARATIVE INDEMNITY AND/OR CONTRIBUTION

82. Plaintiff hereby incorporates by reference paragraphs 1-81, inclusive, as if fully set forth herein.

83. By reason of the presence of the friable asbestos-containing products in the class members' buildings, Plaintiff and other class members have been, and will be, required to perform costly removal and other abatement actions upon building renovation or demolition, and will be required to perform other costly

19

measures during operations and maintenance, and prior to demolition and removal.

84. The release of asbestos fibers, or future release of asbestos fibers in Plaintiff's and other class members' buildings as a result of operations and maintenance, product deterioration, building renovation and demolition, and resultant damages are will be caused entirely or in part by Defendants' acts omissions

85. Such responsibilities and duties of Plaintiff and class members to safely manage, remove and abate the friable asbestos-containing products in their buildings, is non-fault, vicarious, passive, derivative, and secondary arising out of primary, active, positive, and intentional or negligent acts, conduct, and omissions, and failure to act by Defendants.

86. Defendants are entirely or jointly and severally liable for asbestos removal and abatement requirements, and for dangers posed to building users and are therefore liable for indemnification or, alternatively, for contribution, of all costs imposed upon Plaintiff and class members by reason of the presence of friable asbestos-containing materials in their buildings Plaintiff and class members' rights of non-contractual indemnification and contribution arise under state common law.

87. As a result of Defendants' conduct, Plaintiff and other class members have been and/or will be directly and materially harmed and injured

88. All Defendants' acts and omissions complained of in

20

this count were committed by them intentionally, willfully wantonly, or in reckless indifference to the rights of Plaintiff and other class members.

COUNT VIII:   DECLARATORY RELIEF FOR IMPLIED EQUITABLE
INDEMNITY, COMPARATIVE INDEMNITY, AND/OR CONTRIBUTION

89. Plaintiff hereby incorporates by reference paragraphs 1-88, inclusive, as if fully set forth herein.

90. An actual controversy has arisen and now exists between Plaintiff and class members on the one hand, and Defendants on the other hand, in that Plaintiff and class members contend, and Defendants deny, the following:

a)   That, as between Plaintiff and Defendants, responsibility for safe management, removal, and abatement of friable asbestos-containing products in Plaintiff's and class members' buildings rests entirely or partially on Defendants; and

b)   That as a result, Defendants are obligated to fully or partially indemnify or contribute to Plaintiffs for any sums that Plaintiff or other class members pay or will pay as a result of the removal and abatement of the friable asbestos-containing products in Plaintiff's and other class members' buildings

91. Plaintiff and class members desire a judicial determination of their respective rights and duties of the class and defendants with respect to the damages claimed in the complaint herein.   In particular, Plaintiff desires a declaration of the entire or comparative liability of Defendants for removal and abatement costs for any sums that Plaintiff and other class members pay or will pay in connection therewith.

21

92. Such declaration is necessary and appropriate at this time in order that Plaintiff and class members on the one hand, and Defendants on the other hand, may ascertain their rights and duties with respect to the costs of asbestos management, removal, abatement. Furthermore, such declaration is necessary appropriate in order to avoid the delay and multiplicity of actions that would result if the Plaintiff and class members refused to safely manage, remove and fully abate the friable asbestos-containing products in the class members' buildings until releases of asbestos fibers occurs or until compelled by legal actions against them to do so, and then brought separate actions in future against Defendants for indemnification of sums that Plaintiff and other class members would be compelled to pay as the result of judgments against them

93. All Defendants' acts and omissions complained of in this count were committed by them intentionally, willfully and wantonly, or in reckless indifference to the rights of the Plaintiff and other class members

<u>COUNT IX: CONCERT OF ACTION</u>

94. Plaintiff hereby incorporates by reference Paragraphs 1-93, inclusive, as fully set forth herein

95. Defendants acted pursuant to a common plan, concert of action and a concerted course of conduct with respect to the activities referred to in paragraphs 1-93, which activities were performed for the benefit of the defendants as members of the asbestos industry.

22

Each defendant knew or had reason to know that the conduct of some or all of the other defendants subjected class members to injury, constituting numerous breaches of legal duties, and gave substantial assistance or encouragement to such defendants by cooperating with, assisting in, and furthering the activities referred to in paragraphs 1-93, and by adhering to an industry-wide practice of refusing to provide adequate warnings and refusing to adequately test

Each defendant gave substantial assistance to some or all of the other defendants and each defendant's own conduct, separately considered, subjected class members to injury, constituting numerous breaches of legal duties.

98. As a result of the defendants' acts described herein, class members have suffered or will suffer substantial and material harm

99. All Defendants' acts and omissions complained of in this count were committed by them intentionally, willfully and wantonly, or in reckless indifference to the rights of the Plaintiff and other class members

### COUNT X:  CIVIL CONSPIRACY

100. Plaintiff hereby incorporates by reference Paragraphs 1-99, inclusive, as if fully set forth herein.

101. Defendants reached an agreement or tacit understanding to do the aforesaid acts with the unlawful intent to market asbestos products by suppressing knowledge about the dangers of asbestos, and by marketing without adequate testing and without

adequate warnings.

The aforesaid acts, and similar acts, were committed in furtherance of this conspiracy to market asbestos and friable asbestos-containing products in an unlawful manner.

Defendants' combination provided defendants with additional power to inflict injury, harm and damages; such power would not have otherwise existed absent such combination.

As a result of the defendants' actions described herein, class members have suffered or will suffer substantial and material harm.

105. All Defendants' acts and omissions complained of in this count were committed by them intentionally, willfully and wantonly, or in reckless indifference to the rights of the Plaintiff and other class members

### COUNT XI:   FRAUDULENT CONVEYANCE AGAINST
### UNITED STATES GYPSUM COMPANY AND USG CORPORATION

106. Plaintiff hereby incorporates by reference paragraphs 1-105 inclusive, as if fully set forth herein.

107. As alleged above, plaintiff and certain of the absent class members are or will be creditors the "Gypsum Creditors") of United States Gypsum Company ("U.S. Gypsum").

108. In July 1988, USG Corporation "USG" implemented a financial restructuring (the "Restructuring"). As a result of the Restructuring, USG became highly leveraged

109. In connection with the Restructuring, U.S. Gypsum, along with USG's other subsidiaries, was required by USG to guarantee (the "Guarantee") up to $1.6 billion of USG debt

24

110. Also in connection with the Restructuring, USG began a program to divert cash flow from U.S. Gypsum to USG to help cover USG's debt service.    On information and belief, since Restructuring, USG has diverted millions of dollars of cash flow from U.S. Gypsum to USG

111. On information and belief, U.S. Gypsum has not received fair consideration from USG for the Guarantee of for its diverted cash flow.

112. On information and belief, by virtue of its obligation under the Guarantee, U.S. Gypsum's liabilities, including those to the Gypsum Creditors, at the time it executed the Guarantee exceeded its assets.  At the time USG caused U.S. Gypsum to execute the Guarantee, therefore, and at all time since, U.S. Gypsum was insolvent.  In the alternative, U.S. Gypsum's execution of the Guarantee rendered it insolvent and it remained insolvent at all times since.

113. On information and belief, the Guarantee and diversion of U.S. Gypsum's cash flow to USG left U.S. Gypsum without sufficient assets to pay its creditors, including Gypsum Creditors

114. Pursuant to S.C. Code §27-23-10 (1976, as amended), the Guarantee and diversion of cash flow from U.S. Gypsum to USG constitute a fraudulent conveyance because they hinder, delay and defraud the U.S. Gypsum Creditors of their claims against U.S. Gypsum.

115. Pursuant to S.C. Code §27-23-30 (1976, as amended),

25



the Gypsum Creditors are entitled to have the Guarantee set aside and to recover the value of the cash flow diverted from U.S. Gypsum to USG in an amount to be determined

### PRAYER FOR RELIEF

WHEREFORE, plaintiff demands a jury trial and prays that:

A.   The Court certify a voluntary class under Rule 23 of the South Carolina Rules of Civil Procedure;

B.   Plaintiff and other class members recover the general and special compensatory damages determined to have been sustained by each of them respectively, including, but not limited to, reimbursement of the costs of inspection, analysis, containment, removal and replacement of the defendants' asbestos products, and that judgment therefore be entered therein against the defendants in an amount to be determined;

C.   Plaintiff and other class members recover the value of the cash flow diverted from U.S. Gypsum to USG in an amount to be determined;

D.   Plaintiff and other class members recover punitive damages from defendants in an amount to be determined;

E.   Declaratory relief and indemnification and/or contribution be granted as sought herein;

F.   Injunctive relief be granted as sought herein;

G.   Plaintiff and other class members recover the costs of this suit, including any expert witness fees, together with reasonable attorneys' fees; and,

H.   The Court grant such other, further or different

relief as may be deemed just and proper.

Respectfully submitted,

SPEIGHTS & RUNYAN
304 Lee Avenue
Post Office Box 685
Hampton, South Carolina 29924
(803) 943-4444

By:

ATTORNEYS FOR THE PLAINTIFF

Hampton, South Carolina

January 14, 1993

27