# TAB M

STATE OF SOUTH CAROLINA )

COUNTY OF HAMPTON

IN THE COURT OF COMMON PLEAS

Robert Farmer and Harry Bell, on behalf of themselves and all those similarly situated,

Civil Action No. 99-CP-25-424

)
Plaintiffs, ) **ORDER**

vs. )

Monsanto Corporation, Delta and Pine Land Company, Mixson Seed Company, United Agriculture Products Company and Paymaster Seed Company, )
)
)
Defendants.
)

**FILED**
DEC 15 2000 9:20 am
CLERK OF COURT
HAMPTON COUNTY

#1
P.m.B.

This matter is before the Court on motion of Plaintiffs Robert Farmer and Harry Bell to strike certain affirmative defenses from the Defendants' answers. Plaintiffs assert that defenses relating to the South Carolina Seed Act, lack of privity, statutes of limitations/repose/laches, or the Door Closing Statute should be stricken because the Defendants cannot prove that any of these defenses apply to the facts of this case. Upon consideration of the pleadings, memoranda of law, affidavits, and argument by counsel for Plaintiffs and for Defendants Monsanto and UAP, the Court finds that as to Plaintiffs' Motion to Strike Statute of Limitation Defense and the Defense that the action was barred by the "Door Closing Statute" is granted. As to all remaining Motions to Strike, the Court finds that those are premature at this time, and therefore denies Motions as to the other defenses. At this stage of the litigation, it cannot be

determined, as a matter of law, that the Defendants will not be able to prove their defenses relating to the South Carolina Seed Act, lack of privity, or laches.

## Nature of the Case

Harry S. Bell and Robert Farmer are South Carolina residents. Defendants' Notice of Removal at #4. They are members of a putative class of cotton farmers who purchased allegedly defective cotton seed from the Defendants for the 1999 growing season and planted the seed during the 1999 planting season. Defendants' Notice of Removal at #1.

The seed the Plaintiffs purchased was engineered, produced and marketed by the defendants Monsanto, Delta and Pine Land Company ("D&PL"), and Paymaster Seed Company. Defendants' Opposition to Remand at 3-4. The seeds were genetically altered to produce cotton plants that expressed certain genetic traits which caused the plants to be resistant to certain common insects and/or herbicides. Id. at 3. The technology for the genetic alteration of the cotton seed was developed by Monsanto and the seed was produced, marketed and sold by the D&PL companies and retailers such as Mixson Seed company. Id. at 3-4. Monsanto licensed the technology to D&PL and the ultimate purchaser of the seed. Id.

On November 15, 1999, Mr. Bell and Mr. Farmer, acting as putative class representatives for a class of cotton farmers who planted the allegedly defective seed in 1999, filed suit and served the summons and complaints on November 19, 1999. Defendants' Notice of Removal at Ex. E. The Complaint alleges that the Defendants breached certain warranties and were negligent in the sale, production, testing,

inspection, warning, marketing, and engineering of the cotton seed sold. Complaint at ##10-16.

Prior to filing the action in Hampton County, the named class representatives filed Seed Arbitration Complaints with the South Carolina Seed Arbitration Committee. Plaintiff's Memorandum in Support, Exs. 1-2. The first sentence of each named Plaintiff's Seed Arbitration Complaints specifically states that they were not admitting or consenting that S.C. Code Ann. Section 46-21-260 is applicable and in fact do not believe that Seed Act applies in this case. Plaintiff's Memorandum in Support, Exs. 1-2.

## DISCUSSION

#3
PmB.

## THE "DOOR CLOSING STATUTE"

Rule 12(f), SCRCP, authorizes this Court to strike "any insufficient defense" from a pleading. Such motions are *generally addressed to the sound discretion of the judge[,]*" Huggins v. Winn Dixie Greenville, Inc., 252 S.C. 353, 166 S.E.2d 297, 299 (1969), and a reviewed for an abuse of discretion. Mayes v. Paxton, 313 S.C. 109, 437 S.E.2d 66, 69-70 (1993).

A.   S. C. Code Ann. 15-5-150 Does Not Bar Multi-State Class Actions Brought by South Carolina Residents.

I find that the named Plaintiffs, Harry S. Bell and Robert Farmer, are South Carolina residents. Defendants' Notice of Removal at #4. After carefully considering the issue, I further conclude that §15-5-150 does not bar these South Carolina residents from bringing a multi-state class action.

The Defendants allege that Section 15-5-150 bars multi-state class actions and brought to this Court's attention two unpublished circuit court orders supporting this view.[1] The Plaintiffs rely on a contrary Fourth Circuit decision which affirmed the decision of the Honorable Sol Blatt, Jr. rendered in Central Wesleyan College v. W.R. Grace & Co., 6 F.3d 177, 187 n. 3 (4th Cir. 1993), aff'g 143 F.R.D. 628, 639 (D.S.C. 1992).[2] The weight given to this conflicting decisions favors the motion to strike. The circuit court orders may be considered only as memoranda of law; they are not authority and may not be expressly relied on for their legal conclusions. Higgins v. Medical University of South Carolina, 326 S.C. 592, 486 S.E.2d 269, 273 (SCAP. 1997). Federal authority construing South Carolina statutes, on the other hand, are considered persuasive authority in the absence of contrary binding authority. See e.g., Santee River Cypress Lumber Co. v. Query, 168 S.C. 112, 167 S.E. 22, 24 (1932). After carefully considering the issue, I find the Central Wesleyan decisions are indeed persuasive.

In Central Wesleyan, Judge Blatt held that Section 15-5-150 did not bar a nation-wide class action brought by a South Carolina resident for two separate and independent reasons, only one of which was the "countervailing federal policy" which

---

[1] Middleton v. Sunstar Acceptance Corp., C/A No. 98-CP-071131 (S.C. Comm. Pleas, Beaufort County, Jan.23, 2000); Anderson Memorial Hospital v. W.R. Grace & Co., C/A No. 92-CP-25-279 (S.C. Comm. Pleas, Hampton County, August 8, 1994).

[2] The Defendants did not bring Central Wesleyan to my attention, and it does not appear that the parties brought either Judge Blatt's decisions or the affirmance by the Fourth Circuit to the attention of the Court in Middleton. For the reasons discussed below, in my view the Court in Anderson incorrectly concluded that Central Wesleyan was based upon countervailing federal policy to centralize federal claims in one federal court. Anderson at 9.

is, of course, not at issue here. Judge Blatt also held that the statute allowed non-residents to join as named plaintiffs as long as a South Carolina resident was also named a plaintiff:

> In addition [to federal policy], it is uncertain that the "door closing" statute would apply in the class action context here. The Supreme Court has held that it is "merely a matter of form" for an absent class member to become a formal party of record by intervention. See Stewart v. Dunham, 115 U.S. 61, 5 S.Ct. 1163, 29 L.Ed 329 (1885).
>
> Central Wesleyan, 143 F.R.D. at 639 (emphasis added).

The defendants in that case raised Section 15-5-150 on appeal and cited Nix v. Mercury Motor Express, Inc., 270 S.C. 477, 242 S.E.2d 683 (1978), to contend that Section 15-5-150 barred the national class action Judge Blatt conditionally certified.[3] The Fourth Circuit disagreed, holding that Section 15-5-150(1) allowed the action precisely because the class representative was a South Carolina resident.

> Defendants also maintain that South Carolina's "door closing" Statute, S.C. Code Ann. Sec. 15-5-150, blocks this suit by Preventing any non-South Carolina colleges from suing non-South Carolina defendants in court in South Carolina. Central Wesleyan, however, is a South Carolina resident whose suits the statute does not bar. Id. Sec. 15-5-150(1).
>
> Central Wesleyan, 6 F.3d at 187 n. 3 (emphasis added).

1. A Literal Reading of the Statute Supports the Central Wesleyan Decisions

---

[3] Middleton and Anderson both relied on Nix. After reviewing the Fourth Circuit briefs, I find that the impact of Nix was squarely presented to and decided by the Fourth Circuit in Central Wesleyan.

Section 15-5-150(1), provides that South Carolina residents can bring "<u>any</u> cause of action." At the same time Section 15-5-150 was enacted in 1870, moreover, the Legislature further provided that a class representative may sue "for the benefit <u>of the whole</u>." S.C. Code Ann. 15-5-50 (repealed). In 1985, the Legislature replaced Section 15-5-50 with SCRCP Rule 23  1985 Acts No. 100, Sec. 1  The present rule, like its predecessor, provides that "one or more members of a class may sue or be sued as <u>representative parties on behalf of all</u> ...." Rule 23(a), SCRCP.

The use of the terms "any," "all," and "whole" reflects that the Legislature has never imposed geographical limits on a South Carolina resident's ability to bring a class action. Giving the present rule and statute their plain meaning, and harmonizing the two "so as to allow both to stand and give effect to each," see <u>Higgins v. State</u>, 307 S.C. 446, 415 S.E.2d 799 (1992), a South Carolina resident can properly represent "all" class members on "any" cause of action – including the common and typical claims Rule 23(a), SCRCP, requires to certify the class sought.

2. <u>Nix</u> Is Inapposite

The memoranda of law the Defendants present in the form of circuit court orders rely heavily on the <u>Nix</u> decision to conclude that Section 15-5-150 bars a South Carolina class representative from bringing a multi-state action. I agree with the Fourth Circuit that <u>Nix</u> is inapposite.

<u>Nix</u> involves Massachusetts's residents who were injured and killed in an automobile accident that occurred in Virginia. The injured Massachusetts resident tried to join a foreign corporation in his suit against a South Carolina defendant and Mr. Nix, a South Carolina resident, was appointed as the administrator of the estate of the

Massachusetts decedent. The court held that Section 15-5-150 did not allow the injured Massachusetts resident to bring suit against the foreign corporation and barred the wrongful death action because the statute would not have barred the action had the decedent survived. Nix, 242 S.E.2d at 685.

The facts here are quite different. In Nix, the state of South Carolina had no connection with the Virginia automobile accident or the Massachusetts resident injured in the Virginia accident, and the South Carolina administrator had no involvement with the Virginia accident or the Massachusetts' decedent other than his appointment as the estate's administrator. In this case, South Carolina residents are bringing suit for damages they themselves incurred in South Carolina and seek to have the common and typical class issues resolved in the process of resolving their own South Carolina claims.

### 3. The Policies For § 15-5-150 Are Not Implicated

The fact that South Carolina residents are pursuing their own individual claims for damages which occurred in South Carolina also shows in this case does not implicate the stated policies behind Section 15-5-150. According to the Supreme Court, the statute is designed to favor residents over non-resident plaintiffs; provide a forum for wrongs connected to the State while avoiding the resolution of wrongs in which the State has little interest; and encourage activity and investment by foreign corporations without subjecting them to actions unrelated to their activity within the State. Rosenthal v. Unarco Industries, Inc., 278 S.C. 420, 297 S.E. 2d 638, 641 1982)

None of these policies are implicated here. In this case, the State has an interest in providing these South Carolina plaintiffs with a forum for injuries that

occurred in South Carolina and, by definition, the claimed class liability is not unrelated to the Defendants' activities within this state -- for the class to proceed as plead, the South Carolina Plaintiffs must show that the claims arising from their injuries in South Carolina are both common and typical of the claims held by those they seek to represent. See Rule 23(a)(2-3), SCRCP; Flanagan, *South Carolina Civil Procedure* (2d Ed. 1996) at 179-180 (discussing the commonality and typicality requirements).



Because find that the Central Wesleyan plain meaning analysis is persuasive and that the policies behind Section 15-5-150 are not implicated, I conclude that Monsanto Corporation's Twenty-First affirmative defense alleged at #38 UAP/GA Ag Chem, Inc.'s Twenty-Third affirmative defense alleged at #38 insufficient and shall be stricken.

**THE SOUTH CAROLINA SEED ACT, S.C. CODE ANN. §§ 46-21-10 ET SEQ.**

Plaintiffs have moved to strike Defendants' affirmative defenses related to the South Carolina Seed Act, codified at S.C. Code Ann. §§ 46-21-10 et seq. (Code 1976) (the "Seed Act").[4] The South Carolina Seed Act provides, in pertinent part:

> When any farmer alleges that agricultural, vegetable, or flower seeds fail to conform to the label attached to the seeds, as required by §§ 46-21-210 and 46-21-240, as a prerequisite to his right to maintain a legal action against the dealer from whom the seeds were purchased, the farmer shall make a sworn complaint against the dealer from whom the seeds were purchased, the farmer shall make a sworn complaint against the dealer indicating in what

---

[4] Defendants have also raised the defense of SCRCP 12(b)(8) based on the pendency both of a parallel lawsuit pending in the United States District Court for the District of South Carolina and of arbitration proceedings pending between certain putative class members and Defendants DPL, Paymaster, and Monsanto. Plaintiffs did not move to strike these affirmative defenses insofar as they raise the pendency of the federal court action as a defense under SCRCP 12(b)(8).

> respects the seeds appear to be deficient. The complaint must be filed with the Department of Agriculture, and <u>a copy of the complaint must be served on the dealer by certified mail, within such time as to permit inspection of the seeds, crops, or plants</u> by the seed arbitration committee or its representatives and by the dealer from whom the seeds were purchased. . . .

S.C. Code. Ann. § 46-21-260 (1998) (emphasis added).

Plaintiffs do not dispute that filing a timely arbitration complaint is a prerequisite to the farmer's right to maintain a legal action against the dealer based on a violation of the Seed Act. Plaintiffs assert, however, that this case is not a "mislabeling" claim, based on a violation of the Seed Act, and that the mandatory arbitration provisions do not, therefore, apply. Even Plaintiffs apparently recognize, however, that it is at least an open question regarding whether the mandatory arbitration provisions of the Seed Act pertain to their claims. At the hearing on Plaintiffs' motion, Plaintiffs counsel conceded that Plaintiffs, and other putative class members, had filed arbitration complaints before filing this lawsuit "just in case" the Seed Act was found to apply.

The allegations of Plaintiffs' Complaint raise factual issues that may implicate the Seed Act's labeling requirements. For example, the Seed Act includes a requirement that the percent germination of the seeds must be properly stated on the label. Plaintiffs have alleged that the cottonseed they planted failed to provide the yields they expected. The proof that ultimately may be adduced relating to this allegation may concern the germination rate of the seed Plaintiffs purchased. Similarly, Plaintiffs have alleged that the cottonseed they planted was defective as marketed and sold and that Defendants breached warranties allegedly made regarding the performance and quality of the seed. The proof that may ultimately be adduced relating to these allegations will certainly concern any representations about quality made on the label of the seed Plaintiffs purchased. At this point in the

litigation, therefore, factual questions pertaining to the label on the seed bag, including any representations allegedly made on the label, would implicate the Seed Act and bar the claims of those putative class members who have not complied with the Seed Act's requirements.

The fact that some putative class members have filed arbitration complaints does not resolve this issue. The Seed Act imposes a timeliness requirement on the filing of an arbitration complaint. This requirement raises a factual issue that may not be resolved on the pleadings alone. In addition, based on the fact that Plaintiffs are seeking a nationwide class, Plaintiffs cannot establish that each putative class member has complied with the Seed Act's arbitration requirements. Presumably when Plaintiffs file their anticipated motion for class certification, they will argue, as is required by SCRCP 23, that joinder of all class members is impracticable. This would be difficult to show were it true that Plaintiffs can represent to this Court that they have ensured that each and every putative class member has filed an arbitration complaint at the direction of Plaintiffs' counsel.

Because factual issues exist pertaining to the viability of this defense, Plaintiffs' motion to strike is denied.

## LACK OF PRIVITY

Plaintiffs assert that they represent a putative class of individuals who were sold defective seeds by Defendants. Only Defendants Mixon, Helena and UAP actually were in the business of selling seeds. Therefore, putative class members will not be able to assert that they purchased seed directly from DPL, Paymaster or Monsanto. In addition, only DPL (including Paymaster) actually manufactured the seed. Monsanto

was the biotechnology licensor and did not itself manufacture or sell the seed at issue in this lawsuit.

Though privity is no longer required to assert a claim for breach of warranty or product liability under South Carolina law, it is, for example, required under North Carolina law. In North Carolina, privity requirements have been abolished for breach of warranty claims only with respect to certain beneficiaries specifically identified under the statute. See N.C. Gen. Stat. §§ 25-2-318, 99B-2(b). Privity requirements would still apply to the claim of an ultimate buyer against a seller in the chain of distribution, though not to warranty claims against the manufacturer. Because Plaintiffs are seeking certification of a nationwide class action, the putative class would include members whose claims would not be governed by South Carolina law, and might be governed by the law of states, such as North Carolina, where lack of privity is a complete defense to a breach of warranty claim.

In addition, to the extent any putative class members acquired seed produced using Monsanto's technology and did not first enter into valid technology licensing agreements with Monsanto, such putative class members would be not be in contractual privity with Monsanto. Not only would such putative class members be barred from pursuing claims against Monsanto, they would be liable to Monsanto for infringement.

Accordingly, the Court finds that Defendants have satisfied the "semblance of a defense" standard with respect to their lack of privity defenses.

## LACHES

Plaintiffs also seek to have this Court strike Defendants' statute of limitations, repose, and laches defenses. Defendants' defense of laches arises out of Plaintiffs' conduct in failing to timely provide the Defendants with notice of their claims. This untimely notice justifies dismissal of the claims pursuant to South Carolina Seed Act and, to the extent the Seed Act is found not to apply, justifies dismissal of Plaintiffs' claims under this equitable doctrine. It is well recognized under South Carolina law that the equitable defense of laches is extremely fact intensive. Therefore, it would be impossible for the court to determine, based upon the pleasings, that the Defendant had not raised a "semblance" of a defense regarding the timeliness of Plaintiffs' claims.

## STATUTE OF LIMITATIONS OR REPOSE

At the hearing on Plaintiffs' motion, Defendants Monsanto and UAP conceded that it would be unlikely that any statute that any state would have a statute of limitations period or statute of repose barring claims brought in less than one year for a breach of warranty or negligence claim. The Court is aware of no statute in the country in which a complaint for the pertinent causes of action is barred when the cause of action arose roughly five months prior. Therefore Plaintiffs' Motion to Strike the defense of Statute of Limitations or Repose is Granted.

## CONCLUSION

The Court grants Plaintiffs' motions to strike as to the Door Closing Statute and the Statute of Limitations or Repose. The Court finds that Plaintiffs' remaining motions to strike are premature and are therefore denied.

_____
Honorable Perry M. Buckner
Fourteenth Judicial Circuit

December __13__, 2000