IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ------------------------------------------------------- ) | | |
| In re | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | **Hearing Date: November 14, 2005** |
| | ) | **Objection Deadline: October 24, 2005** |
| ------------------------------------------------------- ) | | **Re: Docket No. 9315** |

## LIMITED RESPONSE OF THE OFFICIAL COMMITTEE OF ASBESTOS PROPERTY DAMAGE CLAIMANTS TO DEBTORS' FIFTEENTH OMNIBUS OBJECTION (SUBSTANTIVE) TO ASBESTOS PROPERTY DAMAGE CLAIMS

TO:    THE HONORABLE JUDITH K. FITZGERALD,
        UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Asbestos Property Damage Claimants (the "**PD Committee**") of the above-captioned debtors and debtors in possession (the "**Debtors**"), by and through undersigned counsel, respectfully files this response (the "**Response**") to the Debtors' Fifteenth Omnibus Objection (Substantive) to Asbestos Property Damage Claims (the "**Objection**"). In support hereof, the PD Committee would show as follows:

### Preliminary Statement

By the Objection, the Debtors seek the disallowance and expungement of the vast majority of asbestos property damage claims ("**PD Claims**"). While the PD Committee does not represent the interests of holders of PD Claims individually,[1] the Objection does implicate the estimation of PD Claims, as well as other matters which have been or are

---

[1]     *See In re Kensington Int'l,* 368 F.3d 289, 315 (3d Cir. 2004).

being shepherded by the PD Committee. Thus, the PD Committee is constrained to respond on a limited basis to the Objection.

**Responses to Objection**

A.      **The Objection Necessitates that PD Claimants Have Additional Time to Elect to Participate in Phase II of the Estimation of PD Claims**

1.      As the Court well knows, the Debtors and the PD Committee have just recently embarked upon the process of estimating PD Claims. To this end, on August 31, 2005, the Court approved a case management order governing the estimation process (the **"PD CMO"**). Among other things, the PD CMO required that any party in interest---including, of course, all holders of PD Claims---wishing to participate in the estimation must have made initial designations of its fact and expert witnesses in respect of Phase II of the estimation process by October 3, 2005. It cannot be gainsaid that the decision of holder of a PD Claim (a **"PD Claimant"**) to participate in Phase II of the estimation process would be informed, in part, by whether the PD Claimant deemed it likely that the process would affect the allowance of its PD Claim.

2.      The Objection suggests that some PD Claims will indeed be directly affected by Phase II of the estimation process:

> Some of these objections, such as objections to previously settled claims, may be   addressed on a minimal evidentiary record and can be heard by the Court during omnibus hearings scheduled for Fall 2005; <u>other objections, in particular claims failing due to the building owners' 1980s-era constructive notice of potential PD Claims or PD Claims relying on dust sampling data that fail *Daubert* standards, are best dealt with as part of the Phase I estimation process; still other objections requiring yet further development of an evidentiary record will be addressed during Estimation Phase II.</u>

*Objection* at p.5 (emphasis added).

2

3.     The foregoing excerpt from the Objection presents at least two problems
for PD Claimants.[2]  First, until the Court rules upon the so-called Phase I estimation
issues,[3] PD Claimants cannot know for sure whether those issues will be heard by the
Court as part of the estimation process and thus, they could not determine if their claims
will be directly impacted by the estimation by the October 3, 2005 deadline for the
submission of initial designations.   Second, the Objection fails to provide any further
explication of those PD Claims and the further record needed in respect of such PD
Claims which the Debtors intend to address within the context of Phase II of the
estimation process.   These problems can only be resolved by allowing PD Claimants to
participate in Phase II of the estimation process if the Court determines to permit either of
the Phase I issues to be heard as part of the PD estimation process, by requiring the
Debtors to advise which PD Claims the Debtors will attempt to develop objections to as
an evidentiary matter in Phase II, and then allowing the holders of such PD Claims to
elect to participate in the estimation process even if they did not comply with the October
3, 2005 deadline for initial designations.[4]

---

[2]     The Debtors continue to create confusion for PD Claimants concerning where and when
objections to PD Claims will be heard.  The Court will recall that the Debtors insisted upon entry of a case
management order governing the adjudication of objections to PD Claims and the Court obliged the
Debtors by its *Case Management Order for the Adjudication of Asbestos Property Damage Claims
Objections*, dated August 29, 2005.  Paragraph 3 of that *Order* states: "The Debtors will set the Speights
Authority Objections and Gateway Objections, other than constructive notice of the statute of limitation,
for hearings in batches pursuant to the Court's scheduling order at the appropriate Omnibus Hearings with
the goal of disposing of these Objections as soon as possible."

[3]     Throughout the Objection, the false impression is created that the Court has already determined
that the Phase I issues as identified by the Debtors will be heard as part of the PD estimation process.  As
the Court well knows, no such determination has been made as yet.  Indeed, the scope of the estimation will
not even be argued until November 14, 2005.

[4]     Pursuant to the PD CMO, initial designations of fact and expert witnesses to be called in Phase I
of the estimation must be exchanged on December 8, 2005, subject to the Court's determinations as to the
scope of Phase I.

3

**B.    The Objection Inappropriately Reserves the Right to Assert Further Substantive Objections to PD Claims**

4.      As the Court is also aware, the Debtors sought and obtained leave to file so-called "Gateway Objections" which essentially provided the Debtors with dispensation from the requirement of Del. Bankr. L. R. 3007-1 that the Debtors assert all substantive objections to a particular PD Claim in a single substantive objection. Instead, the Debtors were granted authority to assert Gateway Objections without waiving any other substantive objections (that are not Gateway Objections) to any PD Claim. The Debtors were thereupon limited to filing one subsequent substantive objection to each PD Claim in respect of which a Gateway Objection(s) was asserted. *Order Granting Limited Waiver of Del. Bankr. LR 3007-1 for the Purpose of Streamlining Objections to Certain Claims Filed Pursuant to the Bar Date Order*, July 19, 2004 at ¶1(d).

5.      Notwithstanding the foregoing limitations on substantive objections, whether or not a Gateway Objection is asserted in respect of a PD Claim, the Debtors assert in the Objection that they "reserve their right to make to make further objections" to PD Claims. *Objection* at p.4. The Debtors simply have no such right.

**C.    The Objection Invents Defenses to PD Claims**

6.      The Debtors assert that certain PD Claims identified in Exhibit D-1 to the Objection should be disallowed as "they arise in buildings built too late to contain Grace asbestos-containing products." *Objection* at p.32. Astonishingly, it appears that the Debtors assert this "defense" despite the fact that the subject PD Claims are accompanied by adequate proof of product identification. Thusly, the Debtors would disallow any PD Claim for MonoKote-3 (**"MK-3"**) if the building in which it was installed was built after 1973 because Grace purportedly stopped selling MK-3 in the U.S. in July 1973; the

4

Debtors would disallow any PD Claim for MK-3 installed in a Canadian building built after 1975 because Grace purportedly stopped selling MK-3 in Canada after 1975; and, the Debtors would disallow any PD Claim for acoustical plaster whenever it was installed because the Debtors conject that building owners would have replaced the product "years ago" and, in any event, Grace purportedly stopped selling acoustical plaster after 1969. *Id.* All this despite the fact that the affected PD Claimants have apparently provided product identification that the installed asbestos-containing material was manufactured by Grace!

7.    The Debtors also seek disallowance of each of the PD Claims identified in Exhibit D-3 to the Objection on the ground that the subject buildings were purchased after 1983 "and, therefore, [the PD Claimants] took their properties with knowledge of the potential risk of an asbestos hazard." According to the Debtors, "Since the claimants on Exhibit D-3 possessed such knowledge, they knowingly assumed any such risk and relieved Grace from any potential liability." *Objection* at ¶102.

8.    Of course, what the Debtors neglect to mention is that the defense of assumption of the risk has been abrogated in all but five states and replaced by comparative fault. Am. L. Prod. Liab. 3d §41:27(2005). In those jurisdictions, the jury may consider assumed risk as a form of comparative negligence but assumption of the risk does not act as a complete bar to recovery as it did at common law.

9.    Even more perplexing and troublesome is the fact that the Objection proposes that the assumption of risk defense, as well as (a) claims purportedly barred by statutes of limitation, statutes of repose, and laches, (b) claims seeking recovery for product in addition to Grace asbestos-containing products, (c) claims purportedly

providing no proof of hazard, and (d) Canadian claims, shall be determined in the context of Phase II of the estimation. As Grace has repeatedly argued in state, federal and appellate courts throughout the country during the twenty-plus year history of underlying asbestos property damage litigation, and as the PD Committee has argued over and over again, each of the foregoing defenses is "building specific" and must be determined on the particular facts of each case. Moreover, the estimation process is not designed for the purpose of <u>allowance</u> of individual PD Claims but rather---as the Court has said on innumerable occasions---for purposes of determining <u>feasibility</u> of a plan of reorganization (*i.e.,* to estimate the amount that will be necessary to fund a 524(g) trust to pay PD Claims under a plan of reorganization). Thus, the Debtors' plan to determine fact specific defenses to individual PD Claims by cosmic sweep in the context of an estimation of <u>all</u> PD Claims for purposes of feasibility of a plan is simply ridiculous. The PD Claims estimation process is not a proxy or a shortcut for objection to PD Claims on some group basis, especially when those objections are claim-specific.

      10.     Finally, the Debtors' objection to the PD Claims listed on Exhibit C-1 to the Objection based on the contention that the proofs of claim filed in respect of such claims were "facially incomplete," is without any basis in the law. The rubric for proofs of claim and objections thereto was articulated by the Third Circuit Court of Appeals in *In re Allegheny International, Inc.*, 954 F.2d 167 (3d Cir. 1992), as follows:

> The burden of proof for claims brought in the bankruptcy court under 11 U.S.C.A. § 502(a) rests on different parties at different times. Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is "*prima facie*" valid. [citations omitted]. In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate

the *prima facie* validity of the filed claim. It is often said that the objector must produce evidence equal in force to the *prima facie* case. [citations omitted.] In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.

954 F.2d at 173-74. (citations omitted).

11.     Thus, the pertinent inquiry is whether the proof of claim filed by a PD Claimant sets forth sufficient evidence of a claim against the Debtors, not whether the proof of claim provides sufficient information for the Debtors to formulate their defenses and objections to the PD Claim. If it does, the burden of production shifts to the Debtors to produce evidence that the claim is invalid, regardless of whether it would be useful for the proof of claim to provide additional information for the Debtors to assess their defenses as such information is obtainable by discovery.

12.     The fact that a PD Claimant may have omitted certain of the information the Court prescribed should be furnished by PD Claimants in their proofs of claim is, respectfully, not sufficient grounds for the disallowance of any PD Claim which otherwise makes a *prima facie* showing of the Debtors' liability. Said another way, a PD Claim may only be disallowed for one or more of the nine grounds for disallowance enumerated in section 502(b) of the Bankruptcy Code. *In re Taylor*, 289 B.R. 379, 384 (Bankr. N.D. Ind. 2003). Indeed, the Court has no discretion in this regard and cannot disallow a claim for reasons beyond those stated in the statute. *Id.* None of the grounds for disallowance set forth in section 502(b) involves the failure to provide information beyond that which establishes a *prima facie* claim against the Debtors' estates. *In re Guidry*, 321 B.R. 712 (Bankr. N.D. Ill. 2005).

WHEREFORE, the Official Committee of Asbestos Property Damage Claimants

respectfully requests that the Court grant such relief as is consistent with the foregoing.

Dated:  October 21, 2005

> BILZIN SUMBERG BAENA
> PRICE & AXELROD LLP
>
> Scott L. Baena (admitted pro hac vice)
> Jay M. Sakalo (admitted pro hac vice)
> 2500 Wachovia Financial Center
> 200 South Biscayne Boulevard
> Miami, Florida 33131-2336
> (305) 374-7580
>
> -and-
>
> FERRY, JOSEPH & PEARCE, P.A.
> 824 Market Street, Suite 904
> P.O. Box 1351
> Wilmington, Delaware  19899
> Telephone:  (302) 575-1555
>
> By:/s/ Theodore J. Tacconelli
>     Michael B. Joseph
>     (Del. Bar No. 392)
>     Theodore J. Tacconelli
>     (Del. Bar No. 2678)
>
> Counsel for the Official Committee of
> Asbestos Property Damage Claimants