# EXHIBIT 4



*In re Northern District of California "Dalkon Shield" IUD Products Liability Litigation*, 693 F.2d 847 (9th Cir. 1982), *vacating*, 526 F. Supp. 887 (N.D.Cal. 1981), *cert. denied*, 459 U.S. 1171 (1983) (vacating mandatory punitive damage litigation class); *In re Bendectin Products Liability Litigation*, 749 F.2d 300 (6th Cir. 1984) (issuing writ of mandamus to vacate order certifying a mandatory settlement class). Only in one litigation has the class action device resulted in the resolution of the matter, and that litigation was resolved by settlement rather than by judgment. *In re Agent Orange Product Liability Litigation*, 100 F.R.D. 718 (E.D.N.Y. 1983), *mandamus denied*, 725 F.2d 858 (2d Cir.), *cert. denied*, 104 S. Ct. 1417 (1984), *settlement approved*, 597 F. Supp. 740 (E.D.N.Y. 1984).[9]

Nevertheless, the mandatory class action deserves exploration as a vehicle for resolution of toxic tort cases. Although mass product liability cases involve numerous individual questions such as damages, contributory negligence, reliance, and assumption of the risk, there is another set of issues which are equally important to the resolution of these cases, which do not differ materially from one action to the next, and which involve the same witnesses, the same discovery, the same documents, and the same factual and legal determinations. With respect to such

---

collapse of the skywalks at the Kansas City Hyatt Regency, *In re Federal Skywalk Cases*, 93 F.R.D. 415 (E.D. Mo.), *reversed*, 680 F.2d 1175 (8th Cir.), *cert. denied*, 459 U.S. 988 (1982), the Eighth Circuit reversed a mandatory class certification on the grounds that the certification violated the Anti-Injunction Act, 28 U.S.C. § 2283; on remand, a (b)(3) class was certified and the case settled. 97 F.R.D. 380 (W.D. Mo. 1983).

9. These appellees seek certification of a mandatory class for resolution through *litigation* of issues that are integral to each class member's claims. Although a class action would be an invaluable vehicle for "universal" resolution of the school asbestos litigation — and indeed they have had discussions with class counsel to settle the asbestos school litigation on a nationwide basis in the context of the class action — they underscore that this Court's approval of a mandatory litigation class would neither constitute approval of a mandatory settlement class (the issue raised by Appeal No. 85-1038) nor preclude subsequent settlement of the case through a non-mandatory class action. *See Holmes v. Continental Can Co.*, 706 F.2d 1144 (11th Cir. 1983).

10                              Argument

issues as negligence, unreasonable danger, state-of-the-art, and the justifiability and amount of any award of punitive damages, the precise facts applicable to the claim of any plaintiff are equally applicable to the claims of others, and thus the litigation of those issues is truly representative and will permit the trier of fact fairly to adjudicate the rights and liabilities of not only the parties before the court, but a host of others who are not.

Both litigants and the courts have recognized commonality in these issues by using a variety of procedural devices for aggregating the claims of numerous "victims" of mass torts: joinder of numerous plaintiffs on a single complaint,[10] consolidation of cases for resolution under Rule 42(a),[11] and separate trials of the issues that are common to consolidated cases.[12] The recently circulated draft of the *Manual for Complex Litigation Second* (1985) recommends the combined use of Rule 42(a) and (b) for structuring the trial in complex cases:

> The court should consider consolidating under Fed. R. Civ. P. 42(a) all cases pending in (or transferable to) the court for

---

10. *E.g., Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481 (3d Cir. 1985), the first multi-plaintiff asbestos litigation to be tried to a jury in the Eastern District of Pennsylvania; *County School Board of Amelia County, Virginia, et al. v. U.S. Gypsum Co., et al.*, Civil Action No. 84-00-22C (W.D. Va.) (a suit by eight school districts against 36 defendants); *St. Robert's Congregation, et al. v. Owens-Corning Fiberglas Corp.*, C.A. No. 647656 (Cir. Ct. Milw. WI) (a school suit by 69 school districts against 32 defendants); and *Dayton Independent School District, et al. v. United States Gypsum Company, et al.*, Civil Action No. B-81-277 (E.D. Tx.) (a school asbestos suit brought by 79 school districts against 10 manufacturers).

11. *E.g., Kershaw v. Sterling Drug Inc.*, 415 F.2d 1009 (5th Cir. 1969) (affirming the consolidation of cases alleging that plaintiffs had developed chloroquine retinopathy as a result of taking a drug manufactured by defendant); *Hawkinson v. A.H. Robins Co.*, 595 F. Supp. 1290 (D. Colo. 1984) (consolidation of cases arising from use of Dalkon Shield IUD).

12. See cases discussed at pages 11-12, *infra; see also In re Beverly Hills Fire Litigation*, 695 F.2d 207 (6th Cir. 1982), *cert. denied*, 461 U.S. 929 (1983) (affirming the separate trial of the causation issue in the class action arising from the 1977 fire at the Beverly Hills Supper Club in Kentucky).

---

[right column, partially cut off:]

joint ti
proof [
or as c
Wheth
pend i
dence
may of
issues
to all c
quent

*Manual for*
Draft).

The ju
ordering a
by the clai:
For examp
vacated a r
Southern :
claims of h
*Products L*
trial on wh
the "*Dalkc*
the Distric
women for
and damaʃ
*Co.*, Nos.
Lexis). In
Lambros,
trial on t
claims. *In*
Ohio, Jan.
the Distri
injury cas
under the
§ 221. *In*
1985), re
2612-14 (J
asbestos [
mined de

NIA

FILE
268

leration
d States
and for
, South
ting its
the re-
h coun-
im, *it is*

District
lamages
irt until
anently
a to pu-

*ool Dis-
d States*
tanburg
:ing any
:laim, or

', J.

## PROOF OF SERVICE

I hereby certify this 12th day of August, 1985 that two copies of the foregoing Brief for National Gypsum, United States Gypsum Company, and W. R. Grace & Co. were served by United States mail, first-class, postage prepaid on all counsel of record identified on the attached service list.

RICHARD M. BERNSTEIN