IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JJF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Claim Number: 12758 |
| | ) | Name of Claimant: Macerich Fresno Limited Partnership |
| | ) | Building Location: 645 East Shaw Avenue, Fresno, CA 93710 |
| | ) | |
| | ) | Reply Deadline: October 31, 2005 @ 4:00 p.m. |
| | ) | Hearing Date: November 14, 2005 @ 12:00 p.m. |
| | ) | |
| | ) | Re: Docket No. 9315 |

## RESPONSE OF MACERICH FRESNO LIMITED PARTNERSHIP TO DEBTORS' FIFTEENTH OMNIBUS OBJECTION (SUBSTANTIVE) TO ASBESTOS PROPERTY DAMAGE CLAIMS

Claimant Macerich Fresno Limited Partnership ("Macerich") (Claim No. 12758) respectfully submits this response to the Debtors' Fifteenth Omnibus Objection (Substantive) to Property Damage Claims.

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## INTRODUCTION

1.  W.R. Grace & Co. ("W.R. Grace" or "Debtor") manufactured and sold a variety of asbestos-containing materials ("ACM") over the period from 1963 to 1973. (Debtors' Brief in Support of an Estimation Hearing on Constructive Notice in Property Damage Claims, p. 3 ("Grace Mem.").) The products included Zonolite Mono-Kote ("MK-3"), a spray-applied fireproofing insulation material used in building construction, which W.R. Grace sold in the United States until the U.S. Environmental Protection Agency banned the use of spray-applied ACM in 1973. (Grace Mem. pp. 3-4.)[2] Commencing in the 1970's, W.R. Grace was the subject of a large number of personal injury and property damage claims associated with ACM products. (Grace Mem. p. 4.) It subsequently filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code on April 2, 2001.

2.  On March 31, 2003, Macerich filed a timely Proof of Claim in the bankruptcy proceeding, based on property damage incurred or to be incurred at the Fresno Fashion Fair mall as a result of contamination of the premises by MK-3, which had been applied as fireproofing material to structural beams at the time of construction of the mall in 1970. Macerich, which had briefly held a limited ownership interest in the mall in 1987, has managed the mall operation from 1988 to the present, and it purchased the mall in 1996.

3.  Nearly four thousand creditors have filed property damage claims in this bankruptcy proceeding. At the request of the Debtor, the Court has established a two-phase Estimation Process to allow the Court to determine the magnitude, in the aggregate, of the property damage claims. As part of that process, the Debtor has filed its Fifteenth Omnibus Objection relating to Property Damage Asbestos Claims, and in that Objection requests that the

---

[2] W.R. Grace continued to sell MK-3 in Canada, until the Canadian government banned the sale in 1975. (Grace Mem., p. 4.)

2

Court dismiss claims on the basis of failure to satisfy certain "gateway" requirements. This Response is directed to the objections in the Fifteenth Omnibus Objection insofar as the Debtor asserts those objections against the property damage claim filed by Macerich. Of the four objections asserted with respect to the Macerich claim, three assert that the claim is time-barred, alleging that: (i) Macerich had constructive notice of the dangers of asbestos no later than 1983, which is a date prior to the expiration of any applicable limitations period; (ii) Macerich had actual notice of the presence of asbestos prior to the expiration of any applicable limitations period; and (iii) Macerich unreasonably delayed filing its claim to the detriment of the Debtor, and its claim should therefore be barred through application of the doctrine of laches. In the fourth defense, the Debtor alleges that the Macerich property damage claim is barred by the doctrine of assumption of risk because Macerich purchased the property with knowledge of the presence of asbestos.

4.  The issue of "constructive notice" has been set by the Court for separate briefing by the Debtor and the Creditor Property Damage Committee ("PD Committee"), with opening briefs filed by both on this issue on October 17, 2005. Macerich fully adopts the arguments in the brief filed by the PD Committee and will not repeat those arguments here, beyond noting the irony of the Debtor arguing both that "constructive knowledge" of the harmful nature of asbestos in 1983 would bar virtually all property damage claims filed in this action (Grace Mem., p. 19), while also arguing that there is no evidence of property damage absent air sampling demonstrating the presence of airborne asbestos fibers at levels sufficient to be hazardous to human health (Debtors' Fifteenth Omnibus Objection (Substantive) to Asbestos Property Damage Claims, p. 39, ¶ 119 ("Debtors' 15th Omni")).

3

5. The remainder of this Response addresses the remaining three defenses raised in the Fifteenth Omnibus Objection with respect to the Macerich claim.[3]

## BACKGROUND

6. The Fresno Fashion Fair mall ("mall") is located in Fresno, California. It was built in 1970, with asbestos-containing fireproofing material spray-applied to the structural beams at the mall. (Ghafari Dec. ¶ 3; attached as Exhibit A.) Analysis of the fireproofing material has established that the composition of the material is consistent with the composition of MK-3. (Ghafari Dec. ¶ 16.) Macerich purchased the mall in 1996 and is its current owner. Macerich had also managed the mall from 1988 to 1996, and had held an ownership interest in the mall for a short period in 1987. (Ghafari Dec. ¶ 2.)

7. As it directly states in its Proof of Claim, Macerich has been aware of the presence of ACM at the mall, including the presence of the fireproofing material, since 1988. In 1988, an asbestos survey of the mall was completed, which identified the fireproofing spray as ACM. However, the survey, which also involved air sampling of the common areas of the mall, did not show levels of asbestos in the air exceeding regulatory standards. (Ghafari Dec. ¶ 5.)

8. In 1996, a second asbestos survey was completed as part of the Phase I environmental review carried out in connection with the purchase of the mall by Macerich. ACM, including ceiling and floor tiles and joint compound, had been removed from some individual spaces within the mall at the time of renovation or turnover in tenants. However, the vast majority of the fireproofing material had not been addressed and remained unabated. Air

---

[3] W.R. Grace also included a second Macerich claim, No. 15310 in various categories of the Fifteenth Omnibus Objection dealing with incomplete or improperly filed claims. However, that second "claim" was in fact an amendment to the initial claim, and simply addressed the identification of the ACM as a product of W.R. Grace. (Ghafari Dec. ¶ 16, attached as Exhibit A.) It had been assigned a separate claim number through a clerical error. The Debtor acknowledged the error and has stipulated that it is withdrawing all objections to Macerich claim that are unique to Claim No. 15310 (attached as Exhibit B).

4

sampling at that time also demonstrated again that asbestos levels in the ambient air were within regulatory limits. In addition, cohesion/adhesion testing carried out at that time on the fireproofing materials indicated that the materials were continuing to adhere at acceptable levels, although the measured strength of adhesion varied substantially. (Ghafari Dec. ¶ 6.)

9. Thus, as demonstrated in the Declaration of Aladdin Ghafari, the Senior Environmental Project Manager for The Macerich Management Company, the presence of ACM fireproofing materials at the mall was not in question. The issue was the level of risk associated with allowing those materials to remain in place. The Debtor repeatedly argues in its papers that ACM becomes a health or property damage issue when it becomes friable through age or wear. (*See e.g.*, Debtors' 15th Omni, p. 39-41, ¶¶ 119-125). The 1988 and 1996 surveys indicated that there were no exceedances in the mall of the regulatory limits for ambient air in those time periods. However, it was recognized that materials such as asbestos-containing fireproofing were friable and, as set out in detailed local, state and federal regulations regarding management and handling of asbestos, the fireproofing ACM, even if intact in a normal setting, could present a significant risk if the area around it was disturbed during renovation or demolition. Accordingly, while Macerich was not required to remove the fireproofing ACM simply because it was present, Macerich did need to address ACM risk when it contemplated activity that might disturb the material. (Ghafari Dec. ¶¶ 7-9).

10. Consistent with its legal responsibilities, Macerich has monitored the condition of ACM at the mall, and has employed enclosures and undertaken air sampling during renovation or removal activities to assure the safety of workers and the public. (Ghafari Dec. ¶ 9.) Consistent with cost-effective management of any asbestos risks, it has carried out its remediation of ACM fireproofing when, in the course of construction activities at the mall, either

5

due to a change in tenancy, or a planned renovation of common areas, there was the risk of disturbance of the asbestos and an opportunity for removal with minimal disruption of the operations of tenants and of the mall. (Ghafari Dec. ¶¶ 10-11.)

11. By the time of this response, Macerich has remediated the ACM at 50 of 64 small retails spaces in the east wing of the mall, plus the common area in the east wing, incurring costs of approximately $2.65 million. (Ghafari Dec. ¶¶ 12-13.) In addition, Macerich anticipates that the cost of remediation of the 14 remaining small retail spaces in the east wing, plus two anchor stores in the east wing of the mall, will be approximately $5 million. (Ghafari Dec. ¶ 14)

## ARGUMENT

### Legal Standard

12. At a hearing on an objection to a claim in a bankruptcy proceeding, the initial burden of proof and the initial burden of going forward with the evidence are on the objecting party – here, the Debtor. An objection must be supported by enough evidence to rebut the prima facie evidence of the validity and amount of the claim presented by a duly executed and filed proof of claim. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3rd Cir. 1992); *In re United Companies Financial Corp.*, 267 B.R. 524, 527 (Bankr. D. Del. 2000).

13. As the Debtor observes in its Fifteenth Omnibus Objection, asbestos-in-building cases present a variety of legal causes of action for recovery of property damage, including nuisance, negligence, strict liability and other tort actions, and under some circumstances even the potential for claims under federal and state hazardous waste laws. Under California law, the statute of limitations for tort claims for property damage is three years from the date the claimant knew or should have known of all elements of the cause of action. Cal. Code Civ. Proc. § 338. Nuisance – any condition that obstructs a plaintiff's free use of property or interferes with his

enjoyment of property (Cal. Civil Code § 3479) – also has a three year statute of limitation, but with the application of the limitation period depending on whether the claim is a permanent or an abatable but continuing nuisance. *Mangini v. Aerojet-General Corporation*, 230 Cal. App. 3d 1125, 1143 (1991), *aff'd* 12 Cal. 4th 1087, 1103 (1996).

14.     The elements of liability for an asbestos-in-building cause of action founded in tort are straightforward and easily met by the alleged actions of the Debtor: duty, breach, foreseeability and property damage. Such an action would include as damages costs incurred and to be incurred as a result of the tort, and related costs such as monitoring and inspection.

15.     Modern California cases have recognized the statutory definition of nuisance to be broad enough to encompass almost every conceivable type of interference with the enjoyment or use of land or property. *Mangini*, 230 Cal. App. 3d at 1136. Macerich may also recover from the Debtor based on nuisance because its negligence in supplying asbestos-containing fireproofing caused the property damage to the building and the associated renovation costs Macerich incurred. An action in nuisance can recover the loss in value of the property due to the nuisance, where the nuisance is permanent. *Id.* Where the nuisance is abatable, but continues, the claimant may recover damages for the period beginning three years from the initiation of the action to date of judgment. *Id.* In addition, should the nuisance continue beyond that date, the claimant may file a new action, based on the theory that each reoccurrence of the nuisance is a new act creating liability. *Id.*

16.     Macerich has met its burden to establish a prima facie case supporting its claims under tort and nuisance theories. The issue for the court on the Debtor's Fifteenth Omnibus Objection here, however, is not whether Macerich would ultimately prevail on these causes of

action, but whether on these facts, each of these claims is time-barred, or barred by the doctrine of assumption of risk.

17. The Debtor, as discussed below, has not met its burden to establish that the Macerich claim is barred on either timeliness or assumption of risk grounds under California law, and its objections must be dismissed. First, its objection based on actual knowledge is based on no more than mere knowledge of the presence of asbestos on a property. As discussed below, that is not the law in California. Second, Debtor asserts the doctrine of laches, but does not assert any facts regarding Macerich to support any claim of prejudice from the alleged delay. Moreover, the facts before the court indicate that the potential for such prejudice with respect to the Macerich claim is virtually non-existent. Finally, assumption of risk is simply not a complete defense to a tort claim under California law, but only a factor that may be taken into account in the apportionment of damages, an issue not before the court in addressing the Fifteenth Omnibus Objection.

## Fifteenth Omnibus Objections as to the Macerich Claim

### Actual Notice of Claim

18. The standard for commencement of the statute of limitations for a cause of action based on actual notice is, as Debtor concedes, an issue of state law, and in this instance the laws of California. As the Debtor also acknowledges, there are a variety of legal bases available to property owners for property damage resulting from ACM, ranging from strict liability, negligence and nuisance, to RICO claims. (Debtors' 15th Omni, pp. 35-36, ¶ 105). The Debtor asserts that under any of those causes of action, the property damage claim by Macerich would be time-barred under California law. That is not correct.

19. Under California law, which governs the Macerich claim, the statute of limitations would commence to run with knowledge of the existence of the elements of the cause of action. *San Francisco Unified School District v. W.R. Grace & Co.*, 37 Cal. App. 4th 1318, 1325-1327 (1995) ("*SFUSD*") The elements of specific causes of action will differ, but a common element for each is knowledge of the injury – in this case, knowledge of the property damage.[4] In a decision relevant as well to the Debtor's constructive notice argument, the California appellate court in *SFUSD* differentiated knowledge of wrongdoing from knowledge of damage in a case involving asbestos contamination in San Francisco public schools. *SFUSD*, 37 Cal. App. 4th at 1333. The *SFUSD* court cited to the California Supreme Court's recognition that in unusual cases, a plaintiff might be aware of wrongdoing before damage arose. *Id.* (citing *Budd v. Nixen*, 6 Cal. 3d 195, 201 (1971)). The court further noted that in asbestos-in-building cases, the property damage – in that case contamination by friable asbestos – often arose after evidence of wrongdoing – the installation of potentially dangerous asbestos – had been discovered. Thus, while under section 338 of the California Code of Civil Procedure the statute of limitations for tort liability for property damage is three years, that period does not commence until a plaintiff has knowledge of the physical damage to his property, i.e. when "contamination by friable asbestos" occurs. *SFUSD*, 37 Cal. App. 4th at 1330-35 ("Physical injury resulting from asbestos contamination, not the mere presence of asbestos, must have occurred before a cause of action ... can accrue in an asbestos-in-building case and the limitations period commence."); *see also California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1994) (under

---

[4] The Debtors cite *City of San Diego v. United States Gypsum Co.* 30 Cal. App. 4th 575 (1994) for the proposition that all claimants were on constructive notice from publicly available information "that asbestos in buildings may raise potential health risks that must be investigated and handled appropriately." (Grace Mem., p. 15). However, *City of San Diego* addressed the issue of actual notice, not constructive notice. The court held that the City of San Diego's asbestos-in-building suit was time-barred because the City admitted in its complaint that it was aware of

California law the limitation period commenced upon the occurrence of the last element essential to a cause of action, and in an asbestos property damage tort action, did not accrue until there was wrongdoing and actual and appreciable harm).

20. In this claim, Macerich is seeking recovery of costs for abatement incurred when it removed asbestos-containing fireproofing materials during the course of other work on tenant units and common areas of the mall. In this instance, the injuries to the property did not occur until there were other activities at a particular location in the mall presenting a risk of disturbance and an opportunity for abatement, with each such occasion being a new cause of action. (Ghafari Dec. ¶¶ 8-10). In a proceeding involving determination of insurance coverage for third parties' asbestos-related bodily injury and property damage claims against insured asbestos manufacturers, the court had to decide "when" the property damage took place for the purpose of determining which policies were responsible for indemnifying the manufacturers. *Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co.*, 45 Cal. App. 4th 1, 94 (1996). The *Armstrong* court considered two scenarios in the release of asbestos in buildings. In the first, the contamination of buildings from released asbestos fibers was considered to be continuous and progressive, and since the injury was continuous and not complete upon the installation of asbestos containing materials, insurance coverage was triggered at the time of installation, at the time of removal, and at all points in between. *Armstrong*, 45 Cal. App. 4th at 94-96 (citing *Lac d'Amiante du Quebec v. Am. Home Assur.*, 613 F. Supp. 1549, 1561 (D.N.J. 1985)). In the second, of which *Armstrong* was an example, the record demonstrated that releases of asbestos fibers occurred sporadically from episodic disturbances, and therefore the *Armstrong* court affirmed the lower court's ruling that the indemnity obligations were triggered if it could be

---

contamination of its properties by significant asbestos dust and fiber releases more than three years prior to filing its lawsuit. *Id.* at 583.

shown that asbestos-containing business materials were installed in the building, asbestos-containing business materials released fiber or material into the air or on surfaces of the buildings, or settled releases were disturbed and reentrained into the air, during any portion of the period that the policy was in effect. *Armstrong,* 45 Cal. App. 4th at 97-99.

21. The facts of the Macerich claim fit within the second *Armstrong* scenario – intermittent incidents of property injury. Although addressed in *Armstrong* in the context of insurance coverage, the rationale should be extended to the context of triggering property damage in asbestos cases. Each renovation of a retail space or common area in the mall in which asbestos-containing fireproofing was present could disturb asbestos and release fibers into the air. Although the fireproofing had not already contaminated the area where a renovation was contemplated, undertaking the renovation would have disturbed the fireproofing and caused contamination, giving rise to a cause of action under tort and nuisance for property damage. Thus, the statute of limitations commenced to run on the date that the renovation commenced. The fact that Macerich prevented the contamination of the mall by implementing the procedures and practices required by Federal and California law does not negate Macerich's claim. Each renovation constitutes a separate cause of action under tort and under nuisance.

22. Knowledge of the presence of asbestos and its dangers would also not bar a continuing nuisance cause of action. Nuisance under California law is an unreasonable interference with a plaintiff's use and enjoyment of its property. Cal. Civil Code § 3479. In this case, the Debtor's fireproofing material, due to the presence of friable asbestos, has required that Macerich modify its management of the mall, at substantial cost, so that it can operate its mall safely for its tenants, members of the public, and workers. That interference continues, recurring with the activities required for each new tenant, or each construction or demolition activity in the

common areas of the mall, and will be abated only with the final removal of the fireproofing material.

23.  Under California law, the statute of limitations for an abatable continuing nuisance is three years prior to the commencement of the action, with the plaintiff having the right to renew its claim for succeeding periods until the nuisance is finally abated. *Mangini*, 230 Cal. App. 3d at 1143 (holding that every continuation of the nuisance would give rise to a separate claim for damages caused by the nuisance and the person injured may bring successive actions for damage). Moreover, "in case of doubt as to the permanency of the injury the plaintiff may elect whether to treat a particular nuisance as permanent or continuing." *Chevron U.S.A. Inc. v. Superior Court*, 44 Cal. App. 4th 1009, 1014 (1994).

24.  Thus, the Debtor cannot bar either a tort claim for property damage or a nuisance claim by simply asserting that Macerich knew of the presence of asbestos, and of the need to handle or manage asbestos material carefully. In seeking dismissal of the Macerich claim, it asserts nothing more. Testing and investigating which discloses no contamination cannot be equated with the actual harm of contamination, and at best, could only show a threat of future harm, which would not trigger the commencement of the statute of limitation. *SFUSD*, 37 Cal. App. 4th at 1331-32. Citing the *SFUSD* decision in a discussion of what constitutes property damage, the California Supreme Court has likewise held that a person could not state a cause of action for asbestos property damage based on the presence of asbestos products in a building, where the products had not contaminated the premises. *Aas v. Superior Court*, 24 Cal. 4th 627, 640 (2000).

25.  In conclusion, the Debtor's argument in its Fifteenth Omnibus Objection that any claim is time-barred because of Macerich's actual knowledge of the asbestos fireproofing

material is incorrect. Under California law, the time period of recovery by Macerich may be affected by the nature of the specific claim, but the limitations periods under California would not bar recovery for at least the period beginning three years prior to the filing of the Proof of Claim.

**Laches**

26. W.R. Grace argues that any property damage claim by Macerich is barred by the doctrine of laches. Laches is an equitable defense, and requires that W.R. Grace establish not only unreasonable delay in assertion of the claim, but that it has been prejudiced in its defense by that delay. *Getty v. Getty*, 187 Cal. App. 3d 1159, 1170-71 (1986). Under California law, prejudice is not presumed and must be affirmatively demonstrated by a defendant to sustain his burden of proof and burden of production of evidence on the issue. *Bono v. Clark*, 103 Cal. App. 4th 1409, 1420 (2002). Generic in its assertions, the Debtor does not even attempt in its Fifteenth Omnibus Objection to address the individual circumstances of each claim, or identify how it has been prejudiced in its defense by delay with respect to the Macerich claim. However, the known facts strongly belie the existence of any actual prejudice. Macerich conducted technical analysis that establishes the fireproofing material as consistent with the composition of MK-3, a W.R. Grace product, and submitted this information as a supplement to its timely Proof of Claim. (Ghafari Dec. ¶ 16.) Nor will W.R. Grace be hindered by the passage of time in addressing the issue of Macerich's knowledge of the asbestos fireproofing. Macerich acknowledges it was aware of the asbestos in 1988, from a survey that identified the location and condition of fireproofing ACM. (Ghafari Dec. ¶ 5.) And the costs of remediation are recent and thoroughly documented.

27.   Thus W.R. Grace has not only failed to demonstrate it has been hindered in its defense by the alleged delay, the objective facts indicate the absence of any prejudice with respect to the Macerich claim.

**Assumption of Risk**

28.   Having asserted that the mere presence of asbestos in a building is not property damage or a risk to human health, and that claims should be barred absent evidence of elevated levels of asbestos fibers in the air (Debtors' 15th Omni, p. 39, ¶ 119; p. 42, ¶ 128), the Debtor then asserts that anyone who purchased a building containing asbestos assumed the risk of such property damage, and should be barred from asserting a claim against the manufacturer of the ACM (Debtors' 15th Omni, pp. 34-35, ¶¶ 99-102). Macerich knew of the presence of ACM, and it also knew from its diligent pre-purchase inspection that the ACM was not a health risk at that time. (Ghafari Dec. ¶ 6.) To suggest that a purchaser should be barred from asserting a claim based on the property damage from the subsequent deterioration of ACM materials and/or the need to meet its legal obligations with respect to work that might disturb ACM would provide a buyer with little incentive to carry out a thorough investigation of site conditions, contrary to the public interest. For that reason, "assumption of risk" is not a favored defense under California law, and while it may be an element of comparative negligence, it is not an absolute defense to a claim. *Li v. Yellow Cab Co.*, 13 C.3d 804, 829 (1975). Accordingly, to the extent that the Debtor asserts assumption of risk as a bar to this claim, the Debtor is simply wrong.

## CONCLUSION

29.   In its Fifteenth Omnibus Objection, the Debtor seeks dismissal of claims on the basis of defenses that are inapplicable to the Macerich claim, or if applicable, would serve only to limit a damage claim, not bar it under California law. The application of these defenses to the

Macerich claim is fact specific. The uncontested facts, under applicable law, do not support dismissal of the claim on the grounds argued by Debtor, and its request with respect to the Macerich claim should be denied.

DATED: October 24, 2005

                                    /s/ Am Winfree
William P. Bowden (#2553)
Amanda M. Winfree (#4615)
Ashby & Geddes, P.A.
222 Delaware Ave., 17th Floor
P.O. Box 1150
Wilmington, DE 19899
Tel: (302) 654-1888
Fax: (302) 654-2067

162697.1

15