**EXHIBIT A**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JJF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

### DECLARATION OF ALADDIN GHAFARI IN SUPPORT OF RESPONSE OF MACERICH FRESNO LIMITED PARTNERSHIP TO DEBTORS' FIFTEENTH OMNIBUS OBJECTION

1.    I am the Senior Environmental Project Manager for The Macerich Management Company. I have held this position since early 1997. My duties include, among other things, ensuring that all activities and work undertaken at properties owned by The Macerich Company and its subsidiaries comply with federal, state and local environmental laws. In carrying out these duties, it is my responsibility to ensure the proper management, including where necessary, abatement, of asbestos-containing materials ("ACM") at the Fresno Fashion Fair mall (the

---

[1]    The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

"Mall"), which is owned by a subsidiary of The Macerich Company, Macerich Fresno Limited Partnership (collectively "Macerich").

2.    I am informed and believe that in 1987, Macerich purchased a limited ownership interest in the Mall. Macerich disposed of its ownership interest in 1988, but continued to manage the Mall from 1988 to the present. In 1996, Macerich purchased the Mall, and it is the current owner.

3.    The Mall has two wings, the East Wing and the West Wing. What is now referred to as the East Wing is the original mall structure, which I am informed and believe was constructed in 1970. The West Wing was built in 1982. Each wing contains numerous small retail spaces and a few large retail spaces, in addition to common areas. Macerich leases each of the retail spaces to retail businesses.

4.    The East Wing presently contains 64 small retail spaces, three large retail spaces for anchor stores (collectively, "retail spaces"), and a common area (the "common area").

5.    Macerich maintains records in the ordinary course of business with respect to the condition and maintenance of the East Wing facilities. It is part of my responsibilities to assure that such records are maintained and accurate. From my review of those business records, I am informed and believe that an asbestos survey of the East Wing of the Mall was performed in 1988 (the "1988 Survey"). The 1988 Survey indicated that the spray-applied fireproofing ("SAFP") on structural beams and cross members and some columns in the East Wing contained asbestos, and that most of the walls and studs behind existing dry walls were covered with SAFP over-spray. These beams and cross members are generally located in the ceiling cavity and walls of retail spaces, and in the common areas of the Mall. The 1988 Survey indicated that there was some delamination of the fireproofing on those structural beams, at locations within the East

Wing. Limited air sampling conducted in connection with the 1988 Survey detected the presence of asbestos fibers, but at levels below Federal and California regulatory thresholds. I am informed and believe that the results of the 1988 Survey indicated the presence of asbestos-containing material at the Mall, but did not identify conditions that required abatement of the fireproofing material throughout the Mall structure.

6. From my review of the business records, I am also informed and believe that, in 1996, Macerich commissioned another asbestos survey of the East Wing of the Mall (the "1996 Survey"), which was conducted in connection with Macerich's purchase of the Mall. Like the 1988 Survey, the 1996 Survey identified asbestos-containing SAFP on the structural beams and cross members throughout the East Wing of the Mall (except for six retail spaces that had been abated during 1992 and 1995). The 1996 Survey determined that the condition of the SAFP remained generally adequate. The results of air sampling also continued to indicate that ambient air asbestos levels were below regulatory thresholds. Thus, the condition of the SAFP did not require immediate abatement of the SAFP.

7. The presence of the asbestos-containing SAFP, while not presenting a condition that required immediate removal to avoid health risks to the workers and public at the Mall, has interfered with Macerich's use of the Mall. Disturbance and removal of asbestos-containing SAFP is subject to Federal and California law pertaining to the disturbance and removal of asbestos-containing material. Applicable Federal and California law includes: section 112 of the Clean Air Act (42 U.S.C. § 7412) and associated federal regulations at Part 61, Subpart M of Title 40 of the Code of Federal Regulations; section 6300 *et seq.* of the California Labor Code and associated regulations in Title 8 of the California Code of Regulations; and Rule 4002 of the San Joaquin Valley Unified Air Pollution Control District. These authorities establish a number

of requirements for activities that may disturb friable asbestos, including notification of appropriate agencies; worker training; protective work practices; asbestos isolation and containment procedures; spent waste disposal methods; and hazardous waste manifesting requirements.

8.  Each time a retail space "turns over"—i.e., when the existing tenant leaves—Macerich prepares the space for the new tenant's arrival according to the new tenant's specifications as provided in the lease. In some cases, the new tenant requires that Macerich renovate the space by repairing walls and ceiling tiles and repainting the space. Additionally, in situations where new tenants take their spaces "as is," these tenants frequently require that Macerich deliver the spaces free of asbestos. As discussed above, the 1988 Survey and the 1996 Survey identified asbestos-containing SAFP on structural members throughout the Mall, and on adjacent areas as well due to "overspray" in the original application process, with friable asbestos identified in various locations. Macerich was also aware that, over time, the asbestos-containing SAFP might deteriorate, and lose its adhesion to the structural beams. Therefore, Macerich understood that while the existing condition of the SAFP would not require abatement, Macerich was likely to disturb friable asbestos each time Macerich renovated a retail space or the common areas. In addition, Macerich also understood that, if a tenant required the delivery of an asbestos-free space, Macerich would have to remove the SAFP from the space.

9.  To prevent friable asbestos-containing SAFP from releasing asbestos particles into the air during a during a renovation or an asbestos abatement required by an incoming tenant, Macerich is required to establish special asbestos handling methods, and it removes all of the asbestos-containing SAFP from the structural members before the new tenant moves in. In addition, in order to access the asbestos-containing SAFP, Macerich must remove

the walls and ceiling tiles to expose the structural members on which the SAFP was applied as well as areas of overspray, and replace them when the abatement has been completed.

10. Macerich has been required to expend substantial sums of money and staff time to comply with the legal requirements pertaining to removal of asbestos each time that it has renovated a retail space during a tenant turn-over. Moreover, compliance with the asbestos removal requirements added weeks to each turn-over, thereby reducing the period of time for which Macerich was able to collect rents for spaces that required abatement. Macerich expects to incur similar costs and interference with its use of the Mall during future abatement of retail spaces.

11. It is not reasonable or commercially feasible for Macerich to remove asbestos-containing SAFP from a retail space while that space is occupied by a tenant. First, for each retail space, Macerich enters into a lease with the tenant. In general, the lease restricts Macerich's ability to enter a retail space for the purpose of conducting renovations. Second, as described in paragraph 9, in order to remove asbestos-containing SAFP from the structural members, Macerich must remove the walls and ceiling tiles. This would require that Macerich order a tenant to vacate the retail space, including the removal of all its retail stock, display furniture, equipment and other supplies, until the asbestos abatement was completed and the walls and ceiling tiles were replaced. The entire asbestos abatement process (including the removal and replacement of walls and ceilings) can take up to a month, or even longer for larger spaces, severely disrupting the tenant's business.

12. In 2003, Macerich renovated the common areas in the East Wing of the Mall. As part of this work, Macerich removed the asbestos-containing SAFP on the structural members in the common area, at a cost of approximately $1.2 million.

13. By the end of 2004, Macerich had removed the asbestos-containing SAFP from 50 of the 64 retail spaces in the East Wing of the Mall, at a total cost of approximately $1.45 million.

14. Going forward, Macerich must remove the asbestos-containing SAFP from 14 retail spaces in the East Wing and from two anchor stores in the East Wing. The estimated cost of that additional abatement is $5 million.

15. On March 31, 2003, Macerich filed a Proof of Claim in the instant W.R. Grace bankruptcy proceeding. Macerich estimated that its present and future property damages associated with the asbestos-containing SAFP at the Mall would total approximately $8 million. Of that total, approximately $2.65 million has been incurred.

16. At my direction, Sigma Incorporated, an asbestos abatement consulting firm carried out an analysis of the asbestos-containing SAFP on the structural and cross beams at the East Wing, and compared the composition of the material on the beams with the composition of Zonolite Mono-Kote. Sigma reported that its analysis indicated that the composition of the fireproofing material on the beams was consistent with the composition of Zonolite Mono-Kote, a W.R. Grace product. On or about July 15, 2003, Macerich submitted an amendment to its March 31, 2003 Proof of Claim, attaching the Sigma report as evidence identifying the asbestos-containing SAFP at the Mall as Zonolite Mono-Kote, a product manufactured by W.R. Grace. I have attached a summary of the Sigma report (Exhibit 1), which was included as part of the materials I submitted with the amendment to the March 31, 2003 Proof of Claim.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Dated: October 21, 2005.

                                          Aladdin Ghafari

**EXHIBIT 1**

Name of Debtor:        W.R. Grace & Co.

Case Number:           01-01139 (JKF)

Name of Creditor:      Macerich Fresno Limited Partnership

Confirmation No.:      CN00012758 3-31-2003

In March 2003, Macerich Fresno Limited Partnership ("Macerich") retained Sigma Engineering, Inc. ("Sigma") to analyze the asbestos-containing fire proofing materials that are present at the Fresno Fashion Fair. Sigma performed the analytical sampling on April 9, 2003 and determined that the sample of asbestos-containing material removed from the Fresno Fashion Fair had the same composition as "Zonolite Mono-Kote (MK-3)" manufactured by W.R. Grace & Co. (A copy of Sigma's analytical report is attached.) Accordingly, Macerich seeks to amend the Asbestos Property Damage Proof of Claim Form that it submitted on March 31, 2003 (Confirmation No. CN00012758 3-31-2003). With respect to Item 13 of that Form, Macerich has determined that the asbestos-containing product for which it made its claim was "Monokote-3 fireproofing insulation."

Macerich submits the attached analytical report as "Attachment C" to Macerich's Asbestos Property Damage Proof of Claim Form in Case No. 01-01139 (JKF).

10736752v1