## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 01-01139(JKF) |
| W.R. GRACE & CO., <u>et al.</u>, | (Jointly Administered) |
| Debtors. | **Claim Nos.: 6945, 6946, 6947, 6948, 6949, 6950, 6951, and 6952** |
| | **Hearing Date:  November 14, 2005** |
| | **Response Deadline:  October 24, 2005** |

**RESPONSE OF THE PRUDENTIAL INSURANCE COMPANY OF AMERICA TO THE DEBTORS' FIFTEENTH OMNIBUS OBJECTION (SUBSTANTIVE) TO ASBESTOS PROPERTY DAMAGE CLAIMS AS IT RELATES TO DAMAGE AT: (1) CENTURY CENTER I (CLAIM NO. 6945); (2) CENTURY CENTER IV (CLAIM NO. 6948); (3) BROOKHOLLOW (CLAIM NO. 6949); (4) FIRST FLORIDA TOWER (CLAIM NO. 6951); (5) NORTHWEST FINANCIAL CENTER (CLAIM NO. 6947); (6) SHORT HILLS OFFICE BUILDING (CLAIM NO. 6952); (7) SOUTHDALE OFFICE COMPLEX (CLAIM NO. 6946);  AND (8) 1100 MILAM (CLAIM NO. 6950)**

The Prudential Insurance Company of America ("Prudential"), by and through its co-counsel, Jaspan Schlesinger Hoffman LLP and Riker, Danzig, Scherer, Hyland & Perretti LLP, hereby responds and objects to the Debtors' Fifteenth Omnibus Objection (Substantive) to Asbestos Property Damage Claims (the "Omnibus Objection"), and respectfully states as follows:

### Background

1.      On April 2, 2001 (the "Petition Date"), W.R. Grace & Co. and certain of its affiliates (collectively, the "Debtors" or "Grace") filed with this Court voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code

(the "Bankruptcy Code") commencing their respective cases, now jointly administered (the "Cases").

2.      On April 22, 2002, the Bankruptcy Court entered an Order as to All Non-Asbestos Claims, Asbestos Property Damage Claims, and Medical Monitoring Claims: (I) Establishing Bar Date, (II) Approving Proof of Claim Forms, and (III) Approving Notice Program (the "Bar Date Order") fixing March 31, 2003 as the last date for all persons or entities holding asbestos property damage claims against the Debtors to file proofs of claim.  At the request of the Debtors, the Bar Date Order also established a special proof of claim form to be used by asbestos property damage claimants, which claim form required claimants to provide specific information about their claims beyond the information required on a typical proof of claim form (the "Specialized Claim Form").

## The Prudential Claims

3.      On March 24, 2003, Prudential timely filed eight (8) separate proofs of claim for asbestos property damage claims in the approximate aggregate amount of $21,057,000  (the "Prudential Claims") as a result of damages caused by the presence of Debtors' asbestos containing products in eight (8) Prudential owned properties.   True and complete copies of all eight (8) of the Prudential Claims are annexed hereto.   (See Proof of Claim for Century Center I, **Claim No. 6945** (the "Century Center I Claim), annexed hereto as Exhibit A;  Proof of Claim for Century Center IV, **Claim No. 6948** (the "Century Center IV Claim"), annexed hereto as Exhibit B;   Proof of Claim for Brookhollow, **Claim No. 6949** ("the Brookhollow Claim"), annexed hereto as Exhibit C;  Proof of Claim for First Florida Tower, **Claim No. 6951** (the "First Florida Claim"), annexed hereto as Exhibit D;  Proof of Claim for Northwest

Financial Center, **Claim No. 6947** (the "Northwest Financial Claim"), annexed hereto as Exhibit E; Proof of Claim for Short Hills Office Building, **Claim No. 6952** (the "Short Hills Claim"), annexed hereto as Exhibit F; Proof of Claim for Southdale Office Complex, **Claim No. 6946** (the "Southdale Claim"), annexed hereto as Exhibit G; Proof of Claim for 1100 Milam, **Claim No. 6950** (the "1100 Milam Claim"), annexed hereto as Exhibit H.)

4.    To date, the Debtors have not yet paid Prudential on account of the Prudential Claims.

### The Omnibus Objection

5.    In the Omnibus Objection, the Debtors have moved to expunge virtually all of the asbestos property damage claims filed against the Debtors' estates, including the Prudential Claims.

6.    The Omnibus Objection asserts various challenges to the Prudential Claims, yet the objections are not uniform – certain objection categories apply to certain of the Prudential Claims, but not others. In order to clarify the byzantine format of the Omnibus Objection, Prudential has prepared a chart showing which objection theories the Debtors assert against the eight (8) Prudential Claims, a copy of that chart is attached hereto as Exhibit I.

## LEGAL ARGUMENT

**I.    THE OMNIBUS OBJECTION SHOULD BE OVERRULED WITH RESPECT TO THE PRUDENTIAL CLAIMS BECAUSE THE DEBTORS HAVE FAILED TO OVERCOME THE PRESUMPTION OF VALIDITY OF THE PRUDENTIAL CLAIMS**

7.    Fed. R. Bankr. P. 3001(f) provides that a creditor's compliance with the Bankruptcy Rules in filing a proof of claim establishes a presumption of validity of the claim, stating:

> A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.

Fed. R. Bankr. P. 3001(f).

8.    The Prudential Claims were executed and filed in accordance with the Bankruptcy Rules as well as the Bar Date Order.  The Prudential Claims clearly set forth the basis of the asbestos property damage liability of the Debtors to Prudential and provide all of the information requested by the Debtors in the Specialized Claim Form. As a result, pursuant to Fed. R. Bankr. P. 3001(f), the Prudential Claims enjoy a prima facie presumption of validity.

9.    In objecting to a properly-filed claim, the Debtors must demonstrate evidence sufficient to rebut the prima facie presumption of validity of the claim.  See In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992) (stating that the burden falls on the objector to produce evidence sufficient to negate the prima facie validity of the filed claim).

10.    Here, while the Debtors have asserted various objections to the Prudential Claims, the Debtors have not provided any evidence to rebut the prima facie

presumption of validity of the Prudential Claims.   Indeed, the Debtors attach no
evidentiary documents whatsoever in connection with the Omnibus Objection.

11.    Because the Debtors have failed to meet their burden to
demonstrate the invalidity of the Prudential Claims, the Court should enter an Order
overruling the Omnibus Objection and allowing the Prudential Claims.

## II.    PRUDENTIAL HAS STATED MERITORIOUS CLAIMS AGAINST THE DEBTORS;   THE   DEBTORS'   ARGUMENTS   OPPOSING   THE PRUDENTIAL CLAIMS ARE SUBSTANTIVELY ERRONEOUS AND WITHOUT MERIT

12.    Because the Debtors have not rebutted the prima facie validity of
the Prudential Claims, Prudential has no duty to respond to the Omnibus Objection.
Nevertheless, for the reasons set forth below, Prudential not only possesses meritorious
claims against the Debtors, but also the Debtors' arguments opposing the Prudential
Claims are substantively erroneous and without merit.

### A.    Prudential Has Stated Creditable Claims Against the Debtors.

13.    The Prudential Claims seek recovery of millions of dollars in
damages that Prudential incurred as a result of the presence of asbestos containing
material manufactured by Grace in eight (8) buildings owned by Prudential.

14.    As a result of the losses incurred by Prudential, on October 20,
1987, Prudential filed a complaint (the "Complaint") against W.R. Grace & Co. and
other asbestos manufacturers in the United States District Court for the District of New
Jersey (the "District Court"), captioned The Prudential Insurance Company of America,
et al. v. United States Gypsum, et al., Civil Action Nos. 87-4227, 87-4238 (the
"Asbestos Litigation").   A true and complete copy of the Complaint is attached hereto
as Exhibit J.  Prudential also filed a First Amended Complaint on April 13, 1989, a

copy of which is attached hereto as Exhibit K.  Indeed, the Asbestos Litigation had been pretried and a Final Pretrial Order had been prepared and entered by the federal court.

15.    Prudential's Complaint (as amended) asserted causes of action against Grace, and other Defendants, including, but not limited to common law causes of action for product liability, negligence, breach of express and implied warranties, and fraud.

16.    Following the filing of the Complaint (as amended) the Asbestos Litigation was heavily litigated, including extensive discovery and substantial motion practice by the parties.  The record and file resulting from the continuing litigation is enormous – there were tens of thousands of documents produced, and hundreds of interrogatories and depositions.  As a result of the enormity of the record, much of the information supporting the Prudential Claims is already available to, and/or in the possession of, the Debtors.

17.    On December 18, 1996, upon the completion of pretrial discovery, the District Court entered a Final Pretrial Order.  During pretrial motion practice the District Court made a number of determinations that addressed many of the issues now raised by the Debtors in the Omnibus Objection.  Among other things, the District Court specifically addressed the issues of the applicable statute of limitation and statute of repose, rejecting Grace's claims for summary judgment on Prudential's state-law based claims.  As set forth herein, the District Court's rulings on those issues are binding on the Debtors with respect to the Prudential Claims.

18.    As of the Petition Date, the Asbestos Litigation remained pending. As a result, Prudential now pursues the Prudential Claims against the Debtors in these Cases.

**B.    The Debtors' Arguments in Objection to the Prudential Claims Are Substantively Erroneous and Without Merit.**

19.    The Debtors argue numerous, sometimes conflicting, theories in objection to the Prudential Claims, each of which, as addressed below, is substantively erroneous and/or without merit.

### (i)  Debtors' Exhibit "C-2" Objections

20.    The Debtors have objected to two (2) of the Prudential Claims, the Century Center I Claim and the Southdale Claim, on the grounds that Prudential has not provided sufficient supporting documentation for these claims (the "C-2 Objections"). (See Omnibus Objection at 24-25 and Exhibit "C-2".)  The Debtors, however, have not provided clear information regarding what documentation the Debtors believe is missing from the Prudential Claims.  (Cf. Del. Bankr. LR 3007-1(e)(iii)(I) (requiring the objector to the claim to provide "sufficient detail as to why the claim should be disallowed").   As a result, it is difficult for Prudential to understand what documentation the Debtors believe is missing from the Prudential Claims.

21.    The Omnibus Objection states that "[p]ursuant to this Court's Gateway Objection Order, dated July 19, 2004, the Debtors have already served each of these claimants (or their attorneys, where applicable) with at least one notice of intent to object and, therefore, the respective PD Claimants have already had an opportunity to supplement their documentation."  (Omnibus Objection at 24.)  This allegation is not true as to Prudential.  At no time has Prudential or its counsel been served with a "notice of intent to object" as described in the Omnibus Objection.   Indeed, the Prudential Claims are conspicuously absent from the "notices of intent to object" that the Debtors have filed with the Court, attached hereto as Exhibit L.   Because the

Debtors' statement is incorrect, Prudential demands that the Debtors immediately correct the statement with the Court and withdraw the C-2 Objections as they relate to the Prudential Claims.  Prudential reserves the right to file a motion seeking sanctions under Fed. R. Bankr. P. 9011 with respect to misstatements made by the Debtors to the Court.

22.    Prudential has already provided documentation concerning product identification along with the Prudential Claims.  In that regard, the Debtors appear to state that the Prudential Claims are deficient because Prudential failed to include supporting documentation regarding the existence of the Debtors asbestos product in certain of Prudential's buildings:

> Claimant (1) indicated it had documentation relating to the purchase and/or installation of the product on the property but did not attach those documents or a summary of them; or (2) indicated it made an effort to remove, contain and/or abate the Grace product for which the claim is made but did not attach documents or a summary of them relating to such efforts; and/or (3) did not attach documents relating to the purchase and/or installation of the product in the property and did not attach documents relating or referring to the presence of asbestos in the property for which the claim is made.

(Omnibus Objection at Exhibit "C-2".)   To the contrary, however, Prudential <u>has</u> provided documentation of the existence of the Debtors asbestos product for each of the Prudential Claims, including the Century Center I Claim and the Southdale Claim.  <u>See, e.g.</u>, Century Center I Claim at Exhibits A and B and Southdale Claim at Exhibits A and B.  In addition, this information is readily available to, and/or already in the possession of, the Debtors through the voluminous record developed during the Asbestos Litigation.

23.    Notwithstanding the Debtors' failure to provide sufficient detail as to how the documentation supporting the Prudential Claims is insufficient, Prudential

has provided all necessary information to support its claims. Among other things, Prudential has provided all information requested by the Debtors in the Specialized Claim Form – which form was presumably designed to provide the Debtors with the information they needed to evaluate a claim. In addition, Prudential has attached to its submitted claims voluminous supporting exhibits – each of the Prudential Claims has attached to it several inches of supporting documents (see Exhibits A through H, attached hereto). As noted above, many of those documents, as well as others are already in the possession of the Debtors because they were produced during the fourteen (14) years of litigation between the Debtors and Prudential. Nevertheless, in an abundance of caution, in each of the Prudential Claims, Prudential also offered to provide whatever additional information that the Debtors reasonably request in connection with claims determinations. Rather than review the documents provided by Prudential or already in the Debtors possession, however, and rather than consensually requesting additional documents, the Debtors have chosen to waste the Court's time with a frivolous claims objection.

24.    In addition, although the Debtors have asserted a C-2 Objection against Prudential's Century Center I Claim, during the Asbestos Litigation, the Debtors waived the right to contest the issue of product identification for the Century Center I complex. Indeed, an Order from the District Court to that effect is attached as Exhibit A to the Century Center I Claim. Prudential reserves the right to seek sanctions or contempt findings against the Debtors for their conduct in bringing this objection.

25.    As a result of the foregoing, the Debtors' should immediately withdraw the C-2 Objections as they relate to the Prudential Claims or, in the

alternative, the Court should overrule these objections and examine the conduct of the Debtors in bringing these wasteful, frivolous objections.

**(ii)    Debtors' Exhibit "C-3(d)" Objections**

26.    On Exhibit "C-3(d)" to the Omnibus Objection, the Debtors have objected to Prudential's Southdale Claim on the grounds that Prudential has not provided sufficient documentation relating to product identification (the "C-3(d) Objection").    (See Omnibus Objection 29 and Exhibit "C-3(d)".)    Contrary to the Delaware Bankruptcy Local Rules, however, the Debtors do not give "sufficient detail as to why the claim[s] should be disallowed."    Del. Bankr. LR 3007-1(e)(iii)(I).    As a result, it is difficult for Prudential, let alone the Court, to understand what information is allegedly missing from the Prudential Claims or what further information is allegedly needed.

27.    Instead of a specific identification of the documents that might be missing, the Debtors made the following general assertion in the Omnibus Objection: "Claimant supplied supporting documentation which is insufficient to establish the use of a Grace asbestos-containing product."    (Omnibus Objection at 29.)

28.    Notwithstanding the Debtors' failure to provide sufficient detail as to how the documentation supporting the Prudential Claims is insufficient, Prudential has provided all necessary information to support its claims.    Among other things, Prudential has provided all information requested by the Debtors in the Specialized Claim Form.    In addition, Prudential has attached to its Southdale Claim voluminous supporting exhibits – specifically, hundreds of pages of documentation (see Exhibit G), many of which documents, as well as others, are already in the possession of the Debtors as a result of the Asbestos Litigation.    Nevertheless, in an abundance of

caution, in each of the Prudential Claims, Prudential also offered to provide further information that the Debtors may reasonably request in connection with claims determinations.  No such requests have been made by Debtors.  Instead, rather than review the documents provided or already in their possession, and rather than requesting additional documents, the Debtors have chosen to waste the Court's time with a frivolous claims objection.

29.    Specifically, with respect to the Southdale Claim, in addition to attaching a bulk sampling analysis which identified Grace as the manufacturer of the asbestos containing material in the Southdale Office Complex, Prudential also provided building specifications, invoices, and the affidavits of three individuals, all as related to the installation of the Debtors' asbestos containing products at the complex.  (See Exhibit A to the Southdale Claim.)  That evidence establishes that the asbestos containing material in this building was manufactured by the Debtors.  Prudential is at loss as to what further documentation could have or should have been provided in connection with the Southdale Claim.  Once again, the Debtors appear to have raised a completely frivolous objection.

30.    As a result of the foregoing, the Debtors' should immediately withdraw the C-3(d) Objection as it relates to Prudential's Southdale Claim, or, in the alternative, the Court should overrule these objections and examine the conduct of the Debtors in bringing these wasteful, frivolous objections.

**(iii)    Debtors' Exhibit "C-4" Objections**

31.    In Exhibit "C-4" to the Omnibus Objection, the Debtors object to all of the Prudential Claims based upon the assertion that "these claims are accompanied by some bulk sampling data that is consistent with a Grace product *and*

either bulk sampling data that is inconsistent with a Grace product or bulk sampling data insufficient to determine the presence of a non-Grace product in addition to a Grace product" (the "C-4 Objection").  (Omnibus Objection at 30; see also id. at Exhibit "C-4.")  The Debtors do not, however, provide any information or evidence regarding the basis for this objection to the Prudential Claims.  As such, Prudential cannot fully respond to this objection – Prudential reserves its right to supplement or amend its response to the extent further information is produced.  Moreover, the Court should overrule the C-4 Objection because (i) the Debtors have failed to offer sufficient (let alone any) evidence to rebut the prima facie validity of the Prudential Claims, see In re Allegheny, 954 F.2d at 173, and (ii) the Debtors have failed to provide "sufficient detail as to why the claim should be disallowed".  Del. Bankr. LR 3007-1(e)(iii)(I).

32.    Notwithstanding the foregoing, the C-4 Objection is also substantively erroneous.  For each of the Prudential Claims, Prudential attached a constituent analysis performed by Materials Analytical Services, as well as a report of William M. Ewing, CIH, an expert on asbestos in buildings issues.  Each of these documents establish that the asbestos containing material in the Prudential buildings was manufactured by Grace.  (See, e.g., Exhibit B to Southdale Claim.)  Despite the volumes of material available to the Debtors from the Asbestos Litigation, the Debtors fail to provide a single document or piece of evidence that would support the C-4 objection as it relates to the Prudential claim.  As a result, the Debtors' C-4 Objection has also failed to rebut the substance of the Prudential Claims.

33.    For all of the foregoing reasons, the C-4 Objection should be overruled as it relates to the Prudential Claims.

### (iv)    Debtors' Exhibit "D-2" Objections

34.    As set forth in Exhibit "D-2" of the Omnibus Objection, the Debtors state that all of the Prudential Claims "should be disallowed and expunged under the applicable statutes of limitations based upon the doctrine of constructive notice" (the "D-2 Objection").  (Omnibus Objection at 33 and Exhibit "D-2".)  The D-2 Objection should be overruled as it relates to the Prudential Claims because (a) the Debtors have provided virtually no support for the applicability of the D-2 Objection to the Prudential Claims, (b) the constructive notice issue is not the relevant inquiry for determining whether Prudential timely brought the Prudential Claims, and (c) notwithstanding the foregoing, as has been determined in the Asbestos Litigation, the District Court already denied summary judgment for the Debtors on this issue, finding that there were disputed issues of material facts concerning what and when Prudential knew about asbestos property damages, as well as what Grace and other asbestos manufacturers concealed about asbestos property damages.  See Prudential Ins. Co. of America v. United States Gypsum, et al., No. 87-4238, (D.N.J. June 9, 1994) attached hereto as Exhibit M (the "June 9, 1994 Opinion") at 22, 23, 25;  Prudential Ins. Co. of America v. United States Gypsum, et al., 828 F. Supp. 287, 297 (D.N.J. 1993).

### a.    The Debtors Have Not Supported Their Conclusion That the D-2 Objection Applies to the Prudential Claims

35.    The Debtors have provided virtually no support for their conclusion that the D-2 Objection bars the Prudential Claims.  The Debtors have not shown any of their calculations regarding the application of statutes of limitations under the D-2 Objection, nor have the Debtors identified the specific statue of limitations that the Debtors allege apply to the Prudential Claims.  As a result, neither Prudential nor the Court can examine the analyses supposedly performed by the Debtors in preparing the

D-2 Objections, and the Debtors (i) have failed to offer sufficient evidence to rebut the prima facie validity of the Prudential Claims, <u>see</u> <u>In re Allegheny</u>, 954 F.2d at 173, and (ii) have failed to provide sufficient detail as to why the Prudential Claims should be disallowed, <u>see</u> Del. Bankr. LR 3007-1(e)(iii)(I).

36.     Notwithstanding their failure to appropriately set forth or document the D-2 Objection, the Debtors apparently seek to defer the Court's ruling on the D-2 Objections until a later hearing date and also presume that they are entitled to continue to produce evidence and arguments in support of the D-2 Objection on a continuing basis.  As discussed in Sections III and IV, <u>infra</u>, the Debtors had a duty to present to the Court, at the time of making the D-2 Objection, all evidence and arguments available in support of the Omnibus Objection, and the Debtors do not have a right to delay determination as to the D-2 Objection or to supplement the record as they see fit. For the substantive reasons set forth in this response, without delay, the D-2 Objection should be overruled as it applies to the Prudential Claims.  To the extent, however, that the Debtors submit additional materials or arguments for the Court's consideration, Prudential reserves the right to revise and supplement its response accordingly.

**b.     The Constructive Notice Issue Is Not the Relevant Inquiry For Determining Whether Prudential Timely Brought the Prudential Claims**

37.     The issue of when Prudential had constructive notice of the potential dangers relating to asbestos is not the relevant inquiry for determining whether Prudential timely brought the Prudential Claims.  General knowledge regarding the hazards of asbestos does not cause injury, much less asbestos property damage.  <u>See e.g.</u>, <u>MDU Res. Group v. W.R. Grace & Co.</u>, 14 F.3d 1274, 1278-79 (8th Cir.), <u>cert. denied</u> 513 U.S. 824 (1994) ("Mere discovery of asbestos is insufficient to begin the

running of the statute of limitations."). Nor is an asbestos property damage plaintiff injured from asbestos because there is a potential for harm from in-place asbestos containing materials in a building. See Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 236 (3d Cir. 2002); City of Wichita, Kan. v. U.S. Gypsum Co., 72 F.3d 1491, 1498-99 (10th Cir. 1996). Rather, as determined in the case of Prudential during the Asbestos Litigation, a plaintiff's claims accrue, and the statute of limitations begins to run, on the date that a claimant "knows that the asbestos in its buildings poses a hazard." June 9, 1994 Opinion, supra, at 21 (emphasis added). Thus, even if the Debtors established a date whereby claimants had constructive notice of the potential harm relating to asbestos, that date is not the time at which the statute of limitations would begin to run against the Prudential Claims.

38. Moreover, in the Omnibus Objection itself, the Debtors take the position that Prudential has yet to be harmed by the presence of the Debtors' asbestos in Prudential's buildings (see Omnibus Objection at 39-42 and Exhibits E-1 through E-4), a supposition which, if true, would mean that the applicable statute of limitations periods have not yet even begun to run, let alone expire. In that regard, it is well established that a cause of action cannot accrue if there has been no damage, which is an element of the cause of action. See MDU Res. Group, at 1278-79 (finding that Grace's positions are inconsistent, "if [plaintiff] suffered no injury from the Monokote, then it has no cause of action—until an injury is suffered, the statute of limitations cannot begin to run."); Port Auth. of N.Y. and N.J., 311 F. 3d at 236; Bellsouth Telecomms., Inc. v. W.R. Grace & Co.-Conn., 77 F.3d 603, 611 (2d Cir. 1996); City of Wichita, Kan., 72 F.3d at 1491.

c.    **Prudential Has Met the Statute of Limitations Applicable to the Prudential Claims**

39.    The Debtors assert in the Omnibus Objection that October 20, 1983, should apply to all claims as the constructive notice date, (see Omnibus Objection at 33) – a date which the Debtors derive from a Third Circuit opinion, the applicability of which the Debtors mischaracterize.[1]  Nevertheless, even assuming that the statute of limitations applicable to the Prudential Claims started to run on October 20, 1983, as the Debtors assert, the Prudential Claims were timely filed.

40.    Notwithstanding the Debtors' failure to provide calculations regarding statute of limitations applicable to the Prudential Claims, the District Court specifically addressed the issue during the Asbestos Litigation, finding that New Jersey's six (6) year statute of limitations applies:

> I conclude that because plaintiff Prudential is a New Jersey domiciliary whose primary place of business is in New Jersey, the New Jersey Supreme Court would be persuaded by its interest in compensating its domiciliary to apply its own statute of limitations in this case.
> …
>
> New Jersey's statute of limitations in this area is six (6) years.

See June 9, 1994 Opinion, supra, at 16-17; see also N.J.S.A. 2A:14-1 (providing for a statute of limitations of six (6) years for all state-law based claims).

_____

[1] Prudential notes that in the Omnibus Objection as well as the Debtors' Brief Addressing the Issue of Constructive Notice, which the Debtors filed on October 17, 2005, the Debtors substantially rely on Prudential v. United States Gypsum Company, et al., 359 F.3d 226 (3d Cir. 2004), for the proposition that a constructive notice date of October 20, 1983, should apply to all claims.  The only issue before the Third Circuit in that case, however, was Prudential's federal RICO claims.  See Prudential, 359 F. 3d at 232.  Indeed, the Court expressly recognized that the relevant statute of limitations inquiry for federal RICO claims is different from state law claims.  Id. at 236-37.  Because the Prudential Claims assert damages for causes of action other than federal RICO claims, Debtors' reliance on that case is misplaced.

41.     Moreover, the Court denied Debtors' motions for summary judgment on this same issue.  (See June 9, 1994 Opinion.)  The Debtors are not entitled to re-litigate issues that were fully and fairly decided by the District Court prior to the Petition Date.  See Grogan v. Garner, 498 U.S. 279, 285 n.11 (1991) (finding that issue preclusion applies to bankruptcy proceedings);  In re Graham, 973 F.2d 1089, 1097 (3d Cir. 1992);  In re Brown, 951 F.2d 564, 569 (3d Cir. 1991) (finding a summary judgment order to be "sufficiently final so that it should be given preclusive effect as to the matters considered and decided").  Therefore, New Jersey's six (6) year statute of limitations applies to the Prudential Claims.

42.     Assuming that the statute of limitations for the Prudential Claims begins to run as of October 20, 1983, as the Debtors assert, the Prudential Claims would not be barred because Prudential filed the Complaint asserting the Prudential Claims on October 20, 1987, a full two (2) years before expiration of the applicable statute of limitations period.  As a result, the Prudential Claims were timely filed.

43.     For all of the foregoing reasons, the C-2 Objection should be overruled as it relates to the Prudential Claims.

**(v)     Debtors' Exhibit "D-3" Objection**

44.     In Exhibit "D-3" to the Omnibus Objection, the Debtors object to Prudential's First Florida Claim on the grounds that this claim is barred under the doctrine of "assumption of risk" (the "D-3 Objection").  (Omnibus Objection at 34 and Exhibit "D-3".)  Debtors admit that assumption of risk is an affirmative defense and that it requires a showing that the plaintiff intentionally and knowingly exposed itself to a known danger.  Notwithstanding the high bar of having to affirmatively prove this defense, as well as having to provide sufficient evidence to rebut Prudential's prima

facie valid claims, see In re Allegheny, 954 F.2d at 173, Debtors provide no evidence whatsoever to support the D-3 Objection.

45.    Moreover, the evidence submitted by Prudential in connection with the First Florida Claim demonstrates that Prudential did not knowingly accept the risk of asbestos exposure in purchasing the property, but rather did not learn of the presence of asbestos in the building until a later date:

> Prudential first became aware of the presence in the property of asbestos containing fireproofing in October 1985, when it received the results of a bulk sample analysis prepared by BCM Converse, Inc.  Prudential first learned that the asbestos-containing fireproofing in the property was a Grace product in approximately 1990, when it received the results of constituent analysis performed by Materials Analytical Services, Inc and when it conducted an independent investigation to identify the manufacturer of the asbestos containing fireproofing found in the property.

(First Florida Claim, Exhibit D.)  As a result, the D-3 Objection should be overruled as it relates to Prudential's First Florida Claim.

46.    Debtors' objection as to the Prudential Claims is also flawed because it appears Debtors incorrectly assume that Florida law will apply to Prudential's First Florida Claim.  Prudential disputes that position and maintains that New Jersey law should control.  See Fu v. Fu, 160 N.J. 108, 118 (1999) (rejecting the traditional rule of lex loci delicti and applying the governmental interest test).

47.    Notwithstanding the foregoing, even if Debtors had offered some evidence to support the D-3 Objection, the assumption of risk doctrine in Florida does not act as a complete bar to a claim.  See Williams v. Winn Dixie Stores, Inc., 443 So. 2d 195, 196 (Fla. Dist. Ct. App. 1983) ("affirmative defense of assumption of risk is merged into the defense of contributory negligence"); Hoffman v. Jones, 280 So. 2d

431, 438 (Fla. 1973) (contributory negligence is not a complete bar to recovery). Thus, even on its face, the D-3 Objection is insufficient to preclude Prudential's claims.

### (vi)    Debtors' Exhibit "D-4" Objections

48.    As set forth in Exhibit "D-4" of the Omnibus Objection, the Debtors object to all of the Prudential Claims on the grounds that these claims "are barred by the statutes of limitations based upon claimants' actual knowledge of their claims" (the "D-4 Objections"). (See Omnibus Objection at 35 and Exhibit "D-4".) These objections are invalid for several reasons. First, the Debtors fail to provide proper notice of the basis of their objections. Second, the methodology employed by Debtors is flawed because it ignores previous determinations regarding the applicable statute of limitations. Third, Debtors have failed to rebut the prima facie validity Prudential Claims, the evidence of which establish that the Prudential Claims were timely filed in the Asbestos Litigation.

49.    In addition, as set forth more fully in its response to the Exhibit D-2 Objection, set forth in Section II.B.(iv)b. above, Prudential asserts that its causes of action with respect to the Prudential Claims did not accrue when it had notice of the potential dangers from asbestos containing materials. Thus, to the extent Debtors' D-4 Objections are based on its determination of when Prudential had notice of the potential dangers of asbestos containing products, these objections are invalid.

### a.    Debtors' Failed to Provide Sufficient Information as to the Basis of Its Objection

50.    Debtors assert that the D-4 Objections are based upon application of a "five-step algorithm" to determine whether a particular claim was barred by the statute of limitations, involving determinations as to:  (1) which state law applied; (2) the longest potentially applicable statute of limitations; (3) the date upon which a cause

of action accrued; and (4) the date upon which the action was commenced.  (See Omnibus Objection at 36 and Exhibit D-4.)  Based on this information, the Debtors' fifth step was to "check[ ] whether the time period from the date of accrual to the date of commencement exceeded the longest limitations period."  (Id.)  Nowhere in the Omnibus Objection, however, nor in the thousands of pages of exhibits do the Debtors state (1) the limitations period that was applied;  (2) the manner in which the date on which a cause of action accrued was determined; or (3) the date that was used in the algorithm.  Quite simply, the Debtors have failed to show their calculations.  Without this information, neither Prudential nor the Court can evaluate the allegation of D-4 Objections.  Accordingly, the D-4 Objection should be overruled.  Nevertheless, to the extent that the Debtors provide any information to support their D-4 Objections, Prudential reserves the right to provide a supplemental response.

> **b.    Debtors  "Algorithm"  Ignores  Prior  Judicial Determinations**

51.    In addition to the Debtors' failure to show any calculations supporting their allegations regarding the D-4 Objections, the D-4 Objections are further invalid because the "algorithm" ignores previous judicial determinations as to the applicable statute of limitations.  As a result, it appears that the Debtors did not apply the proper statute of limitations when it evaluated the Prudential Claims.

52.    As previously decided by the United States District Court for the District of New Jersey, New Jersey's six (6) year statute of limitations is applicable to the Prudential Claims, not, as the Debtors assert, the statute of limitation of the state where the property was located.  See June 9, 1994 Opinion, supra, at p. 16-17;  See N.J.S.A. 2A:14-1 (six (6) year statute of limitations governs tort claims).

53.    The Debtors are not entitled to re-litigate issues that were fully and fairly decided by the District Court prior to the Petition Date.  See Grogan, 498 U.S. at 285 n.11;  In re Brown, 951 F.2d at 569.  As such, it is New Jersey's six (6) year statute of limitations that applies to Prudential's claims.  To the extent Debtors applied any other limitations period, its D-4 Objections are invalid.

### c.    Prudential's Claims Were Timely Filed

54.    Notwithstanding the unsupported and erroneous conclusions flatly asserted by the Debtors in the D-4 Objections, the Prudential Claims should be allowed because they were timely raised in the Asbestos Litigation.  Prudential filed its Complaint on October 20, 1987.  As set forth above, the applicable statute of limitations is six (6) years.  Accordingly, the D-4 Objections are only valid if Prudential had actual knowledge prior to October 20, 1981.  As set forth in each of the Prudential Claims, Prudential did not have actual knowledge of any of its claims prior to November 1983.  Specifically, in response to Questions 18, 19, 20 and 21 on the Debtors' Specialized Claim Form, Prudential provided the following responses, stating when it learned of the presence of asbestos containing material in each of the buildings that are the subject of Prudential's claims against the Debtors.  Those responses, moreover, were supported by documentation:

- **Brookhollow:**  "Prudential first became aware of the presence in the property of asbestos containing fireproofing in October 1985, when it received the results of a bulk sample analysis prepared by BCM Converse, Inc.  Prudential first learned that the asbestos-containing fireproofing in the property was a Grace product in approximately 1990, when it received the results of constituent analysis performed by Materials Analytical Services, and when it conducted an independent investigation to identify the manufacturer of the asbestos containing fireproofing found in the property." (Addendum to Brookhollow Proof of Claim)

- **Century Center I:** "Prudential first became aware of the presence in the property of asbestos-containing fireproofing in approximately April 1986. At that time, it received the results of an asbestos survey report prepared by BCM Converse, Inc. Prudential first learned that the asbestos-containing fireproofing in the property was a Grace product in approximately 1990, when it received the results of constituent analysis performed by Materials Analytical Services, and when it conducted an independent investigation to identify the manufacturer of the asbestos-containing fireproofing found in the property." (Addendum to Century Center I Proof of Claim)

- **Century Center IV:** "Prudential first became aware of the presence in the property of asbestos-containing fireproofing in approximately April 1986. At that time, it received the results of an asbestos survey report prepared by BCM Converse, Inc. Prudential first learned that the asbestos-containing fireproofing in the property was a Grace product in approximately 1990, when it received the results of constituent analysis performed by Materials Analytical Services, and when it conducted an independent investigation to identify the manufacturer of the asbestos-containing fireproofing found in the property." (Addendum to Century Center IV Proof of Claim)

- **First Florida Tower :** "Prudential first became aware of the presence in the property of asbestos containing fireproofing in October 1985, when it received the results of a bulk sample analysis prepared by BCM Converse, Inc. Prudential first learned that the asbestos-containing fireproofing in the property was a Grace product in approximately 1990, when it received the results of constituent analysis performed by Materials Analytical Services, Inc and when it conducted an independent investigation to identify the manufacturer of the asbestos containing fireproofing found in the property." (Addendum to First Florida Proof of Claim)

- **Northwest Financial:** "Prudential first became aware of the presence of asbestos-containing material in the building in and around 1985 from the results of a survey conducted by Twin City Testing Corp. Prudential first learned that the asbestos-containing fireproofing in the property was a Grace product in 1990, when it received the results of constituent analysis performed by Materials Analytical Services, and when it conducted an independent investigation to identify the manufacturer of the asbestos-containing fireproofing found in the property." (Addendum to Northwest Financial Proof of Claim)

- **Short Hills:** "Prudential first became aware of the presence of asbestos in the Short Hills Building in late 1983 in connection with the demolition of that building. In 1983 Prudential was trying to decide whether to renovate or demolish the Chubb Building. In connection with that decision, Prudential in 1983 retained the Grad Partnership, an architectural firm, to conduct a feasibility study. While the Grad Partnership was investigating the feasibility of demolishing the building, it had the fireproofing in the building tested to see if it contained asbestos. The test indicated that the fireproofing did

contain asbestos.  It is not clear when that report concerning the presence of asbestos was transmitted to Prudential.   In November 1983, the outside consultants retained to advise Grad Partnership informed Prudential that the building contained asbestos fireproofing and that if the building was demolished, the asbestos fireproofing would have to be removed.   In late November 1983, Prudential decided to demolish the building.   … Prudential first learned that the asbestos-containing fireproofing in the property was a Grace product in 1990, when it received the results of constituent analysis performed by Materials Analytical Services."  (Addendum to Short Hill Proof of Claim)

- **Southdale:  "**Prudential first became aware of the presence in the property of asbestos containing fireproofing in late 1987, when a prospective purchaser of the property, Lexington Company hired Twin City Testing Corp. to survey the property as part of the due diligence process.  The late discovery of the asbestos was due to the fact that the initial surveys conducted in 1985 and 1986 did not identify that asbestos containing fireproofing was in the property.  Prudential first learned that the asbestos-containing fireproofing in the property was a Grace product in 1990, when it received the results of constituent analysis performed by Materials Analytical Services, and when it conducted an independent investigation to identify the manufacturer of the asbestos-containing fireproofing found in the property."  (Addendum to Southdale Proof of Claim)

- **1100 Milam:**  "Prudential first became aware of the presence in the property of asbestos-containing fireproofing in October 1985, when it received the results of a bulk sample analysis prepared by BCM Converse, Inc.  Prudential first learned that the asbestos-containing fireproofing in the property was a Grace product in 1990, when it received the results of constituent analysis performed by Materials Analytical Services, and when it conducted an independent investigation to identify the manufacturer of the asbestos-containing fireproofing found in the property." (Addendum to 1100 Milam Proof of Claim).

55.    Thus, as stated in the Prudential Claims, the earliest date of actual knowledge is November 1983 as it relates to Prudential's Short Hills Claim.  Prudential only learned of its asbestos claims related to the other seven buildings in and after 1985.  Prudential filed the Asbestos Litigation on October 20, 1987, well within the applicable six (6) year statute of limitation.   The Debtors have not provided any evidence to support their assertions that Prudential had actual notice of its claims earlier than the dates referenced above..   Accordingly, there is nothing to rebut the

prima facie validity of the Prudential Claims.  Thus, the Court should overrule the D-4 Objections.

**(vii)    Debtors' Exhibit "D-5" Objections**

56.    On Exhibit D-5 to the Omnibus Objection, the Debtors object to four (4) of the Prudential Claims, the Century Center I Claim, the Southdale Claim, the Northwest Financial Claim, and the Century Center IV Claim, on the grounds that these claims are barred by a statute of repose (the "D-5 Objection").  (See Omnibus Objection at 36-7 and Exhibit D-5.)    These objections are baseless.    During the Asbestos Litigation, the issue of statutes of repose was specifically addressed by the Court.    On June 9, 1994, the Court found that New Jersey law applied to the Prudential Claims and that "since New Jersey does not have an applicable statute of repose … the defendants' motion for summary judgment based on statutes of repose is denied."  (See June 9, 1994 Opinion, supra, at 31-32.)

57.    Inexplicably, the Debtors now object to four of the Prudential Claims, on grounds of "statute of repose."    The Debtors' cannot use the bankruptcy process to escape the valid rulings of the Court in the Asbestos Litigation. See Grogan, 498 U.S. at 285 n.11;  In re Brown, 951 F.2d at 569. The D-5 Objection is frivolous and should be withdrawn by the Debtors or otherwise overruled by the Court.  Prudential, reserves its right to seek appropriate sanctions under Fed. R. Civ. P. 9011 with respect to the D-5 Objection.

**(vii)    Debtors' Exhibit "D-6" Objections**

58.    On Exhibit D-6 to the Omnibus Objection, the Debtors object to all of the Prudential Claims on the grounds that they are barred by the doctrine of laches (the "D-6 Objection").    (See Omnibus Objection at 38 and Exhibit "D-6".)    The

Debtors do not, however, provide <u>any</u> information or evidence regarding the basis for this objection to the Prudential Claims.  As such, Prudential cannot fully respond to this objection – Prudential reserves its right to supplement or amend its response to the extent further information is produced.  Moreover, the Court should overrule the D-6 Objection because (i) the Debtors have failed to offer sufficient (let alone <u>any</u>) evidence to rebut the prima facie validity of the Prudential Claims, see <u>In re Allegheny</u>, 954 F.2d at 173, and (ii) the Debtors have failed to provide "sufficient detail as to why the claim should be disallowed." Del. Bankr. LR 3007-1(e)(iii)(I).

   59. Beyond the failure to provide adequate support for its D-6 Objection, the grounds for the D-6 Objection are baseless.  The Debtors focus on the fact that the have "not sold asbestos-containing construction products for more than 30 years."  (Omnibus Objection at 38.)  This statement, however, is irrelevant.  As the Debtors acknowledge, the affirmative defense of laches focuses on unreasonable delays by a <u>claimant</u>.  (Omnibus Objection at 38).  Thus, the Debtors actions—i.e. when it last sold asbestos—has no relationship to the matter in issue.  Instead, the determination requires and examination of Prudential's actions.  To that end, however, the Debtors do not provide any documentation, nor do they reference anything that would support the D-6 Objection.  Prudential filed the Asbestos Litigation approximately three (3) years after its earliest discovery of the presence of asbestos containing fireproofing in one of the eight buildings which are the subject of the Prudential Claims.  There is nothing in the record which suggests that Prudential unreasonably delayed in filing its claims.  As a result, the Debtors have neither met their burden of proving this affirmative defense nor have they met their burden to rebut the prima facie valid Prudential Claims.  <u>In re</u>

Allegheny, 954 F.2d at 173.  Accordingly, the Court should overrule the D-6 Objections with respect to the Prudential Claims.

(ix)    **Debtors' Exhibit "E-1" Objections**

60.    On Exhibit E-1 to the Omnibus Objection, the Debtors object to one (1)  of the Prudential Claims, the Short Hills claim, on the grounds that it "is not accompanied by *any* documentation reflecting airborne asbestos levels." (the "E-1 Objection") (Omnibus Objection at 39 and Exhibit E-1.)

61.    Prudential did not attach documentation regarding airborne asbestos levels, with respect to the Short Hills Claim because such information is not necessary for Prudential to establish its claim.  As set forth in the Specialized Proof of Claim form for the Short Hills Claim, Prudential first became aware of the presence of asbestos in the Short Hills Building in late 1983 in connection with the demolition of that building.  In 1983, Prudential was trying to decide whether to renovate or demolish the Chubb Building.  In connection with that decision, Prudential in 1983 retained the Grad Partnership, an architectural firm, to conduct a feasibility study.  While the Grad Partnership was investigating the feasibility of demolishing the building, it had the fireproofing in the building tested to see if it contained asbestos.  The test indicated that the fireproofing did contain asbestos.  It is not clear when that report concerning the presence of asbestos was transmitted to Prudential.  In November 1983, the outside consultants retained to advise Grad Partnership informed Prudential that the building contained asbestos fireproofing and that if the building was demolished, the asbestos fireproofing would have to be removed.  In late November 1983, Prudential decided to demolish the building.

62.   The abatement of the asbestos containing materials was necessitated by the demolition of the Facility as required by governmental regulations. See National Emission Standard for Hazardous Air Pollutants ("NESHAP"), 38 Fed. Reg. No. 66 (April 6, 1973) (presently codified at 40 C.F.R. Part 61 §61.140, et seq. (2002).)  Thus, it is of no consequence that Prudential did not provide documentation regarding the airborne levels inside the building because governmental regulation mandated the removal of the Grace asbestos material before the building was demolished.  As a result, the Debtors E-1 Objection should be overruled as it relates to the Prudential Claims.

**(x)   Debtors' Exhibit "E-2" Objections**

63.   On Exhibit E-2 to the Omnibus Objection, the Debtors object to two (2) of the Prudential Claims, the Southdale Claim and the Northwest Financial Claim, on the grounds that "the only testing data upon which they rely to establish asbestos levels are dust sampling and dust sampling is irrelevant and scientifically unreliable" (the "E-2 Objection").  (See Omnibus Objection at 40 and Exhibit E-2.)  As the Debtors acknowledge, this issue is currently the subject of briefing before the Court and may ultimately be included as part of the PD Estimation process.  Accordingly, the nature and substance of this Objection will likely change based upon the Court's determinations.  Further, in the Omnibus Objection, the Debtors do not fully state the basis for their objection.  Accordingly, as an initial matter, Prudential reserves its right to supplement its response to this objection, and reserves its right to appeal any ruling regarding the "relevance and reliability of dust sampling."

64.   Second, the Debtors do not, however, provide any information or evidence regarding the basis for this objection to the Prudential Claims.  As such,

Prudential cannot fully respond to this objection – Prudential reserves its right to supplement or amend its response to the extent further information is produced. Moreover, the Court should overrule the E-2 Objection because (i) the Debtors have failed to offer sufficient (let alone <u>any</u>) evidence to rebut the prima facie validity of the Prudential Claims, <u>see</u> <u>In re Allegheny</u>, 954 F.2d at 173, and (ii) the Debtors have failed to provide "sufficient detail as to why the claim should be disallowed." Del. Bankr. LR 3007-1(e)(iii)(I).

65.    Instead of a specific identification of their objection, the Debtors broadly state that "the only testing data upon which they rely to establish asbestos levels are dust sampling and dust sampling is irrelevant and scientifically unreliable." (Omnibus Objection at 40.)   Debtors provide no evidence, however, to support their proposition.

66.    Separately, Debtors' Exhibit E-2 Objections are substantively invalid.  With respect to the Southdale Claim, Prudential attached as part of Exhibit E to its Proof of Claim the report of Richard L. Hatfield, dated July 1996.  In his report, Mr. Hatfield states, in part:

> some air samples were taken during an operations and maintenance procedure which demonstrated elevated airborne concentrations.  It is my opinion that the subject fireproofing in this building released asbestos fibers and debris and cause contamination in this building.

(Report of Richard Hatfield, at 10, attached as part of Exhibit E to the Southdale Claim.)

67.    Moreover, Prudential also attached as part of Exhibit E, an excerpt from the report of William M. Ewing, CIH dated July 30, 1996.  Mr. Ewing's report states that "building records were reviewed to locate exposure data for workers

performing maintenance and renovation activities in the building prior to fireproofing removal." (Report of William M. Ewing, CIH, dated July 30, 1996, attached as part of Exhibit E to the Southdale Claim)  Based on his review of these records he concluded that "elevated exposures have occurred among workers performing maintenance and renovation activities." (Id. at 93.)

68.    Thus, Debtors assertion that the Prudential Claim related to the Southdale Office Complex is contradicted by the documents provided by Prudential.

69.    Similarly, with respect to the Northwest Financial Claim, Prudential attached to that claim, a summary of materials reviewed and relied on by one of its experts, Jack Halliwell of Halliwell Engineering Associates, Inc.  Included on that list is a letter dated December 1, 1988, from the Institute for Environmental Assessment to Prudential enclosing air sampling and laboratory analysis results for Northwest Financial Center (the "Northwest Air Sampling Documents").  (See Exhibit C to Northwest Proof of Claim.)  Notwithstanding the Debtors' failure to request such documentation upon Prudential's offer to provide additional documentation, Prudential attaches hereto as Exhibit N, a copy of the Northwest Air Sampling Documents.

70.    As a result of the foregoing, the Court should overrule the E-2 Objection as it relates to the Prudential Claims.

(xi)    **Debtors' Exhibit "E-3" Objections**

71.    On Exhibit E-3 to the Omnibus Objection, the Debtors object to four (4) of the Prudential Claims, the Century Center I Claim, the Brookhollow Claim, the 1100 Milam Claim and the First Florida Claim, on the grounds that these claims provide inapplicable air sampling results (the "E-3 Objection").    (See Omnibus Objection at 41 and Exhibit E-3.)

72.    Prudential notes that the E-3 Objection may be subject to modification based upon the briefing currently before the Court as well as the PD Estimation proceedings.    As such, Prudential reserves its right to supplement this response and reserves its right to appeal any rulings made in connection with the PD Estimation process that affects its claims.

73.    The Debtors do not provide any information or evidence regarding the basis for this objection to the Prudential Claims.    As such, Prudential cannot fully respond to this objection – Prudential reserves its right to supplement or amend its response to the extent further information is produced.    Moreover, the Court should overrule the E-3 Objection because (i) the Debtors have failed to offer sufficient (let alone any) evidence to rebut the prima facie validity of the Prudential Claims, see In re Allegheny, 954 F.2d at 173, and (ii) the Debtors have failed to provide "sufficient detail as to why the claim should be disallowed," Del. Bankr. LR 3007-1(e)(iii)(I).

74.    For each of its claims, Prudential has provided dust sampling which establishes that these buildings were contaminated by the asbestos-containing material manufactured by the Debtors. (See, e.g., documentation attached as Exhibit D to the Century Center I Claim, Exhibit E to the Brookhollow Claim, Exhibit E to the 1100

Milam Claim, and Exhibit E to the First Florida Claim.) Thus, Prudential has established a prima facie valid claim for each of the buildings.

75.    As a factual matter, Debtors claims are baseless.  Prudential has submitted evidence of air sampling conducted during normal business operations for each of the buildings to which Debtors assert an Exhibit E-3 Objection  (See, e.g., documentation attached as Exhibit E to each of the Century Center I Claim, the Brookhollow Claim, the 1100 Milam Claim, and First Florida Tower Claim.)

76.    Debtors have not submitted any documentation or evidence to support their Objections or to clarify why the Debtors believe the Prudential air sampling documents are inapplicable.  As a result the Debtors have failed to rebut the prima facie valid Prudential Claims.

77.    As a result of the foregoing, the Court should overrule the E-3 Objection as it relates to the Prudential Claims.

**(xii)    Debtors' Exhibit "E-4" Objections**

78.    On Exhibit E-4 to the Omnibus Objection, the Debtors object to one (1) of the Prudential Claims, the Century Center IV claim, on the grounds that it "provide[s] air sampling data that fail to show that airborne levels inside the building are higher than those in typical outdoor air" (the "E-4 Objection").  (See Omnibus Objection at 42 and Exhibit E-4.)

79.    The Debtors do not, however, provide any information or evidence regarding the basis for this objection to the Prudential Claims.  As such, Prudential cannot fully respond to this objection – Prudential reserves its right to supplement or amend its response to the extent further information is produced.  Moreover, the Court should overrule the E-4 Objection because (i) the Debtors have failed to offer sufficient

(let alone <u>any</u>) evidence to rebut the prima facie validity of the Prudential Claims, <u>see</u> <u>In re Allegheny</u>, 954 F.2d at 173, and (ii) the Debtors have failed to provide "sufficient detail as to why the claim should be disallowed".  Del. Bankr. LR 3007-1(e)(iii)(I).

80.    Namely, the Debtors do not assert or provide any evidence as to the level which they believes constitutes a hazardous level.  Instead, the E-4 Objection simply refers to the upcoming PD Estimation Proceedings.  Without this information, there is no way for Prudential to respond to the E-4 Objection.  Accordingly, Prudential expressly reserves its right to supplement or amend its response to this Objection. Moreover, to the extent issues relevant to this objection are affected by the current briefing before the Court or the PD Estimation proceedings, Prudential reserves its right to address or appeal any such issues.

81.    Because the Debtors have not met their burden of proof in overcoming the presumption of validity of the Prudential Claims, the E-4 Objection should be overruled by the Court as it relates to the Prudential Claims.

### (xiii) Conclusion as to Debtors' Specific Objections

82.    In summary of the foregoing, the Debtors (i) have failed to provide evidence rebutting the prima facie validity Prudential Claims and (ii) have failed to make meritorious arguments in light of the demonstrated substance of the Prudential Claims.  As a result, the Court should enter an Order overruling the Omnibus Objection and allowing the Prudential Claims.  In addition to the foregoing, Prudential expressly reserves the right to rely on the arguments raised by other claimants and/or the Property Damage Claimants' Committee in response to the Omnibus Objections.

III.    **HAVING FILED THE OMNIBUS OBJECTION AND CHALLENGED THE PRUDENTIAL CLAIMS, THE DEBTORS DO NOT HAVE A RIGHT TO POSTPONE THE SUBSTANTIVE DETERMINATION OF ALLOWANCE OF THOSE CLAIMS OR TO SUPPLEMENT THE EVIDENCE SUBMITTED IN SUPPORT OF THE OMNIBUS OBJECTION**

83.    Despite having brought the Omnibus Objection, the Debtors (i) seek to defer the Court's ruling on certain of the claims objections until a later date and (ii) presume that they are entitled to continue to produce evidence and arguments in support of the Omnibus Objection. <u>See, e.g.,</u> Omnibus Objection at 5. Debtors have no right to such a procedure. The Debtors, who frequently argue for the need for expedience in these Cases, have had years to compile information responsive to the Prudential Claims and should not be allowed to delay determination of the allowance of such claims. Indeed, the Proposed Order submitted by the Debtors in conjunction with Omnibus Objection seeks a finding from the Court that "there is no just reason for delay in the entry of judgment on these matters." Proposed Order to the Omnibus Objection at 3.

84.    Moreover, notwithstanding the limited permission granted by the Court for the Debtors to reply to claimants' responses to the Omnibus Objection, the Debtors do not have permission to supplement the evidentiary record for the Omnibus Objection after having failed to overcome the prima facie validity of the Prudential Claims. <u>See</u> Case Management Order for the Estimation of Asbestos Property Damage Liabilities, entered in this case on Aug. 31, 2005 (Docket No. 9302) (the "CMO"). Finally, the Debtors do not have a right to wait and see how claimants respond to the Omnibus Objection before compiling their own arguments (and evidence) in response – otherwise the "prima facie" designation for a properly filed claim under Fed. R. Bankr. P. 3001(f) would be rendered meaningless, with the claimant having to provide further

proof for a claim even where the objector has failed to demonstrate a valid, supported objection to a claim. Cf. In re Allegheny, 954 F.2d at 173-74 (stating that the objector must produce evidence to negate a prima facie claim before the claimant need provide further support for the claim).

85.    Notwithstanding the foregoing, to the extent that the Debtors attempt to submit additional materials or arguments for consideration in connection with the Omnibus Objection, Prudential reserves the right to revise, amend and supplement its response accordingly.

## IV.    THE DEBTORS' ATTEMPTS TO CONFUSE AND INTERMINGLE THE PROPERTY DAMAGE CLAIMS ADJUDICATION PROCESS WITH THE PROPERTY DAMAGE CLAIMS ESTIMATION PROCEEDINGS DEPRIVES ASBESTOS PROPERTY DAMAGE CLAIMANTS OF DUE PROCESS

86.    The Debtors have attempted to confuse the traditional claims objection process used by bankruptcy courts by intermingling it with an ill-defined asbestos property damage claims "estimation proceeding."  In the process, the Debtors seek to use the "estimation proceeding" to obtain summary determinations from the bankruptcy court with respect to entire categories of claims:

> The Debtors will seek to have certain of these contested objections … set for hearings throughout Fall 2005.  Other contested objections … will be best dealt with through the estimation process.  As appropriate, rulings made during Estimation Phase I and II may later be applied to the corresponding categories of objected-to-claims.

Omnibus Objection at 16.  The Debtors, however, cite no authority for summary-format claims adjudications.  Cf. In re UNR Indus., Inc., 45 B.R. 322, 325 (N.D. Ill. 1984) (rejecting an argument that the court can conduct a "summary hearing" in lieu of trial of thousands of asbestos claims, the debtor having pointed to "no statute or rule that either

authorizes this departure from normal practice or explains what procedures constitute a 'summary hearing'").

   87. Moreover, the use of an "estimation proceeding" to summarily adjudicate entire classes of claims would abrogate each individual creditor's right to Fifth Amendment due process and other Constitutional protections.  <u>See</u> <u>In re Federal-Mogul Global, Inc.</u>, 330 B.R. 133, 154 (D. Del. 2005) (holding that estimation of claims must not be focused on the merits of individual claims due to Fifth Amendment concerns); <u>see also</u> <u>In re G-I Holdings, Inc.</u>, 323 B.R. 583 (Bankr. D.N.J. 2005) (rejecting the debtor's attempts to liquidate individual asbestos claims during estimation citing concerns that the process would violate rights protected by the Constitution).  The due process problems in this case are compounded by the fact that the Debtors have failed to clearly set forth the procedures for the estimation/adjudication process.  Among other things, the Debtors have not set forth specific information as to how individual claims will be addressed during the "estimation proceedings" or when, where, or how individual claimants may respond. Indeed, a cursory review of the CMO shows that certain filing were due in the PD Estimation Proceedings even before the date that claimants were required to respond to the Omnibus Objection, yet the Debtors made no mention of these deadlines in its Omnibus Objection.  Because the claims adjudication process in this case has not been explained, but rather, obfuscated by the Debtors, any use of such proceeding to obtain "claims adjudications" manifestly violates the protections of the due process clause.

   88. Prudential specifically notes that it does not consent to the Debtors use of the PD Estimation Proceeding to determine the allowed amount of the Prudential Claims and maintains that any purported "claims adjudications" obtained by the Debtors

under such process are fatally flawed and unenforceable. Notwithstanding the foregoing, given the lack of clarity of the claims objection procedures the Debtors wish to establish, Prudential reserves the right to further address objections to its claims and to submit further evidence, testimony, and/or argument at any time during the Cases as shall become necessary.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Prudential respectfully requests that the Court overrule the Omnibus Objection as it relates to the Prudential Claims and enter an Order allowing the Prudential Claims in their entirety.

Date:    Wilmington, Delaware
         October 24, 2005

/s/  Frederick B. Rosner
Frederick B. Rosner (No. 3995)
JASPAN SCHLESINGER HOFFMAN LLP
913 North Market Street, 12th Floor
Wilmington, DE  19801
Tel: (302) 351-8000
Fax: (302) 351-8010

- and -

RIKER, DANZIG, SCHERER, HYLAND
   & PERRETTI LLP
Robert J. Gilson, Esq.
Joseph L. Schwartz, Esq.
Curtis M. Plaza, Esq.
Craig T. Moran, Esq.
Headquarters Plaza
One Speedwell Avenue
P.O. Box 1981
Morristown, New Jersey 07962-1981
(973) 538-0800
Email: rgilson@riker.com
Email: jschwartz@riker.com
Email: cplaza@riker.com
Email: cmoran@riker.com

Co-counsel for The Prudential Insurance Company
of America

3589828.2