IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> W. R. GRACE & CO., et al., <br><br><br><br> Debtors. | Chapter 11 <br> Case Nos. 01-01139 (JKF) <br> (Jointly Administered) <br><br> **Claim Nos.: 7825-7829, 7831-7832, 7836-7864, and 7866-7885** <br><br> **Response Deadline: October 24, 2005** <br> **Reply Deadline: October 31, 2005** <br> **Surreply Deadline: November 4, 2005** <br> **Hearing Date: November 14, 2005** |

### RESPONSE OF G-I HOLDINGS INC., SUCCESSOR-IN-INTEREST TO GAF CORPORATION, AND ITS AFFILIATED ENTITIES TO DEBTORS' FIFTEENTH OMNIBUS OBJECTION (SUBSTANTIVE) TO ASBESTOS PROPERTY DAMAGE CLAIMS AS IT RELATES TO CLAIM NOS. 7825-7829, 7831-7832, 7836-7864, AND 7866-7885

G-I Holdings Inc., successor-in-interest to GAF Corporation, and its affiliated entities (collectively, "G-I"), by and through its counsel, McCarter & English, LLP, hereby submits this response (the "Response") to the Debtors' Fifteenth Omnibus Objection (Substantive) to Asbestos Property Damage Claims (the "Omnibus Objection"), and respectfully states as follows:

#### Background

1. On April 2, 2001 (the "Petition Date"), W.R. Grace & Co. and certain of its affiliates (collectively, the "Debtors") filed with this Court voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") commencing their respective cases, now jointly administered (the "Cases").

2. On April 22, 2002, the Court entered an Order as to All Non-Asbestos Claims, Asbestos Property Damage Claims, and Medical Monitoring Claims: (I) Establishing Bar Date, (II) Approving Proof of Claim Forms and (III) Approving Notice Program (the "Bar Date Order") fixing March 31, 2003 as the last date for all persons or entities holding non-asbestos claims and asbestos property damage claims against the Debtors to file proofs of claim.

### G-I's Claims

3. On March 28, 2003, G-I timely filed one hundred twenty four (124) separate proofs of claim against the Debtors (collectively, the "Claims"), sixty two (62) of which relate to property damage claims (collectively, the "Property Damage Claims"), as described below.

4. G-I's Property Damage Claims contain, inter alia, the following language in the Attachment to each Property Damage Claim:

> The Debtor is indebted and obligated to G-I Holdings in an undetermined and unliquidated amount based upon G-I Holdings' rights and entitlements to indemnification, contribution, reimbursement or other payments (including, without limitation, damages, costs and expenses related thereto) from the Debtor pursuant to any applicable law, any contract, or otherwise for all known pending asbestos claims, including but not limited to, alleged personal injury or alleged property damage claims against G-I Holdings.

> The Debtor is indebted and obligated to G-I Holdings in an undetermined and unliquidated amount based upon G-I Holdings' rights and entitlements to indemnification, contribution, reimbursement or other payments (including, without limitation, damages, costs and expenses related thereto) from the Debtor pursuant to any applicable law, any contract, or otherwise for all unknown pending asbestos claims, including but not limited to, alleged personal injury claims or alleged property damage claims against G-I Holdings.

5. G-I's Claims, including its Property Damage Claims, are based in part on G-I's right to indemnification, contribution, reimbursement or other payments pursuant to applicable law and arising out of various contracts, co-defendant liability or otherwise for all known and unknown pending asbestos claims, including property damage claims against G-I.

### The Omnibus Objection

6. In the Omnibus Objection, the Debtors have moved to disallow and expunge virtually all of the non-asbestos and asbestos property damage claims filed against the Debtors' estates, including certain of G-I's Property Damage Claims.

7. The Omnibus Objection asserts various challenges to G-I's Property Damage Claims, including objections based on: (i) missing basic information about property at issue (C-1 (c)); (ii) missing basic information about claimant's knowledge (C-1 (d)); (iii) claims not supported by any product identification documentation and which (1) do not answer, or (2) provide a non-responsive answer to Question 3-C-13 (C-3 (a)); (iv) claims that fail to provide any supporting documentation relating to product identification (C-3 (e)), (v) claims barred by Statutes of Limitation (Constructive Notice) (D-2); (vi) claims barred by laches (D-6); claims providing no measurement of relevant asbestos levels (E-1); and (vii) Indemnity/Contribution Claims (H-1).

### G-I's Response

8. Federal Rule of Bankruptcy Procedure 3001(f) provides that a creditor's compliance with the Bankruptcy Rules in filing a proof of claim establishes a presumption of validity of the claim, stating:

3

> A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.

Fed. R. Bankr. P. 3001(f); see also Lundell v. Anchor Constr. Specialists, Inc., 223 F.3d 1035, 1039 (9th Cir. 2000) (recognizing presumption that properly filed claim is valid).

9. G-I's Claims, including its Property Damage Claims, were executed and filed in accordance with the Bankruptcy Rules as well as the Bar Date Order. G-I's Property Damage Claims clearly set forth the basis of the asbestos property damage liability of the Debtors to G-I and provide all of the information known to G-I regarding such claims. As a result, pursuant to Federal Rule of Bankruptcy Procedure 3001(f), G-I's Property Damage Claims enjoy a prima facie presumption of validity.

10. In objecting to a properly-filed claim, the Debtors must demonstrate evidence sufficient to rebut the prima facie presumption of validity of the claim. See In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992) (stating that the burden falls on the objector to produce evidence sufficient to negate the prima facie validity of the filed claim).

11. Here, while the Debtors have asserted various objections to certain of G-I's Property Damage Claims, the Debtors have not provided any evidence to rebut the prima facie presumption of validity of G-I's Property Damage Claims. Indeed, the Debtors attach no evidentiary documents whatsoever in connection with the Omnibus Objection.

12. Because the Debtors have failed to meet their burden to demonstrate the invalidity of G-I's Property Damage Claims, the Court should overrule the Omnibus Objection and allow G-I's Claims, including its Property Damage Claims.

13. Further, because the Debtors have not rebutted the prima facie validity of G-I's Property Damage Claims, G-I has no duty to respond to the Omnibus Objection. Nevertheless, for the reasons set forth below, G-I not only possesses meritorious claims against the Debtors, but the Debtors' arguments opposing certain of G-I's Property Damage Claims are substantively erroneous and without merit.

### The Debtors' Omnibus Objection Fails as a Matter of Law

14. While the Debtors object to certain of G-I's Property Damage Claims on seven (7) independent grounds, six (6) of these grounds are wholly without merit as they have no relation whatsoever to G-I's Property Damage Claims. The Debtors' objection labeled "Indemnity/Contribution Claims (H-1)" is the only objection that relates to G-I's Property Damage Claims. In support of this objection, the Debtors entire argument is as follows:

> The Claims identified on Exhibit H-1 were filed by companies with asbestos related liability or trusts, seeking contribution and/or indemnification for the payment of asbestos personal injury and/or asbestos property damage claims.
>
> The claims listed on Exhibit H-1 have not and cannot provide either a factual or legal basis that would entitle claimants to recover from the Debtors for asbestos property damage under any contribution or indemnification theory. As a result, the Debtors seek to disallow and expunge all of these claims.

(Debtors' Fifteenth Omnibus Objection (Substantive) to Asbestos Property Damage Claims, at p. 63).

15. The Debtors cite no case law and offer absolutely no evidence to support their objection to contribution and indemnification claims. Therefore, as a matter of law, the Debtors have clearly failed to demonstrate evidence sufficient to rebut G-I's

Property Damage Claims' prima facie presumption of validity. See Allegheny, 954 F.2d at 173.

### Debtors' Omnibus Objection to G-I's Property Damage Claims is Premature at Best

16. The Debtors' Omnibus Objection to contribution and indemnification claims is contrary to the intent of the Bankruptcy Code and premature at best. Although the Debtors' presumed belief that the existing and future indemnification and contribution claims against them should be summarily extinguished, such proposed solution undermines the bankruptcy process.[1] Instead, the Court should estimate these claims pursuant to 11 U.S.C. § 502(c), which would allow for the parties to undertake discovery, if necessary, and proceed in an orderly fashion. At no point in the Omnibus Objection do the Debtors state how or why the Debtors' estates would be prejudiced if such claims estimation process were allowed.

17. The Debtors fail to recognize that contingent and/or unliquidated indemnification and contribution claims can be timely liquidated without prejudice to the Debtors' estates. The drafters of the Bankruptcy Code provided a structure for treating contingent and/or unliquidated claims, while simultaneously balancing the interests of creditors. This structure includes the administrative procedure of claims estimation, see 11 U.S.C. 502(c), and where appropriate, subordination. See 11 U.S.C. 509(c).

18. Here, the Court could hold an estimation hearing to fix and allow all contingent and/or unliquidated indemnification and contribution claims. At such hearing, the Court would determine the estimated value of the indemnification and

---

[1] In certain asbestos bankruptcy cases, contingent and/or unliquidated indemnification and contribution claims are channeled to a trust established pursuant to 11 U.S.C. § 524(g).

contribution claims. In the event that a claimant failed to prove a legal entitlement to indemnification or contribution under applicable nonbankruptcy law or failed to demonstrate that it will suffer a loss to which it requires such indemnification or contribution, such claim estimation may reflect a zero value. On the other hand, if a claimant's claim for indemnification or contribution has a positive value, the Court could estimate such claim and allow it in the estimated amount.[2]

19.  After the claims estimation hearing, under 11 U.S.C. § 509, the Court may find it appropriate to subordinate the allowed claim of the party that is liable with the Debtors "until such creditor's claim is paid in full, either through payment under this title or otherwise." 11 U.S.C. § 509(c).

### Conclusion

20.  As a matter of law, the Debtors have clearly failed to demonstrate evidence sufficient to rebut G-I's Property Damage Claims' prima facie presumption of validity. Therefore, the Court should allow G-I's Claims, including its Property Damage Claims, in their entirety. Alternatively, at the very least, G-I's Property Damage Claims should be subject to an estimation hearing. The Debtors' attempt, through the Omnibus Objection, to wholly expunge indemnification and contribution claims undercuts the integrity of the bankruptcy process and creditors' claims as a whole. Accordingly, G-I submits that the Debtors' Omnibus Objection should be denied.

---

[2] Although the estimation of indemnification and/or contribution claims in these Cases may not be simple, in other contexts under the Bankruptcy Code courts have successfully estimated unliquidated and contingent claims of arguably equal technical complexity. See, e.g., Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.), 843 F.2d 636 (2nd Cir. 1988) (involving present and future asbestos-related claims); Apex Oil Co. v. United States Dept. of Energy (In re Apex Oil Co.), 91 B.R. 860 (Bankr. E.D. Mo. 1988 (involving a complex Department of Energy lawsuit); Addison v. Langston (In re Brints Cotton Mktg.), 737 F.2d 1338 (5th Cir. 1984) (involving over 1,200 on-call contracts).

WHEREFORE, for all the foregoing reasons, G-I respectfully requests that the Court (i) deny the Debtors' Omnibus Objection with respect to G-I's Claims, including its Property Damage Claims, (ii) allow G-I's Claims, including its Property Damage Claims, in their entirety; and (iii) for such other and further relief as the Court deems appropriate.

Dated: October 24, 2005
      Wilmington, Delaware

                          MCCARTER & ENGLISH, LLP

                          /s/ Katharine L. Mayer
                          William F. Taylor, Jr., Esq. (DE #2936)
                          Katharine L. Mayer, Esq. (DE #3758)
                          919 Market Street, Suite 1800
                          Wilmington, DE 19801
                          Telephone: 302-984-6300
                          Facsimile: 302-984-6399

                          Counsel for G-I Holdings Inc., successor-in-interest to GAF Corporation, and its affiliated entities