The Prudential 〰

**Appraisal Summary Form
For Office and Industrial
Properties**

## PROPERTY DATA

Property Name: Century Center I          Loan/Property #: __IP 4046__
Street Address: 2200 Century Parkway      Sub-property #: ___4046___
City: ____Atlanta____                     Portfolio Name: __General Account__
County: ____Dekalb____                    Property Type: __Suburban Mid-Rise Office__
State: ____Georgia____  Zip: _30345_      RGO Name: ____Atlanta____
Location: CBD ☐  Suburban Park ☒  Suburban Freestanding ☐

**Purpose of Appraisal:** to estimate the market value in order to
☐ buy, ☐ sell, ☐ mortgage ☐ encumber, or ☒ up-date an appraisal.

**Interest Appraised:** ☐ fee simple  ☒ leasehold  ☐ leased fee
Joint Venture  No ☒  Yes ☐, JV Name: _____
% Prudential Ownership: ___100___

**Area:**
Land: · Acres: _7.125_  Square Feet: _311,018_
Building: Floors: __11__  Basements: ___-___
Gross Square Feet: _152,795_  Rentable Square Feet: _139,157_  Parking Spaces: _____
Building Completion Year: 19 _71_ ;  Additions: 19 _-_ , 19 _-_

**Property Description:** An 11-story office building located within the Prudential-owned Century Center complex. Good access to I-85. However, this market is not perceived as one of the prime areas in the Atlanta market.

**Valuation subject to Mortgage** No ☒  Yes ☐     Mortgage Interest Rate: ___-___ %
Amount: $ ___-___                                 Annual Debt Service: $ _____
Mortgage Balance: $ ___-___                       Assumable Mortgage: Yes ☐  No ☐
as of date: _-_/_-_/_-_ (MM/DD/YY)  Maturity Date: _-_/_-_/_-_  Balloon Balance:$ ___-___
Contingent Interest : Yes ☐  No ☐  If yes explain: ___-___

## CERTIFICATION OF MARKET VALUE

Leasehold Value:                              $ ___-___

Economic Value (Direct Capitalization):       $ _6,000,000_
Economic Value (Discounted Cash Flow):        $ _5,900,000_
Physical (Cost) Value:                        $ _6,300,000_
Market Data (Sales Comparable) Value:         $ _5,800,000_  to $ _7,100,000_

Reconciliation/Comments: All 4 approaches fall within a close range. Because the property is presently up for sale to institutional investors, the sales comparable and discounted cash flow techniques are the most accurate measure of value.

We certify that we have complied with Prudential Realty Group appraisal procedures in estimating the Market Value of the Subject Property, and it is our opinion as of this **Date**, __March 19, 1988__ , that the Market Value is:

**Market Value:**          $ _6,000,000_   or $ _43.12_ per square foot

Appraiser's Signature: _Dnc. l. Z......._  Title: _Appraisal Analyst_
I have inspected the Subject Property for this Appraisal:  Yes ☒  No ☐.

Appraiser's Signature: _C.E. Miller_  Title: _VP PRC_  PIS 4000469
I have inspected the Subject Property for this Appraisal:  Yes ☒  No ☐.

COMB 85729  Ed 8-87  Litho in U.S.A. by PruPress
CAT# 6838994

Copyright © The Prudential 198?

## ECONOMIC APPROACH (REVENUE)

**Part 1: Income**    Gross ☐   Semi-Gross ☒   Net ☐    19 8/ Actual    19 29 Pro Forma

**Revenue 1:** Defined as __Office Rent__
Effective Market Rent = $ __15.80__ psf/yr.  Lease Expiration Date: _____
139,157 sq. ft. @ $ __10.34__ psf (Actual) & $ __13.04__ psf (Pro Forma)   $ 1,439,023   $ 1,814,676
Escalations, pass-throughs, other income ............. $ 80,845   $ 131,770
Pro Forma subtotal for Revenue 1 ....................................   $ 1,946,446
Less: ____% vacancy and credit loss of Revenue 1 of ........  -($ _____ )

**Revenue 2:** Defined as __Free Rent__
Effective Market Rent = $ __-__ psf/yr
139,157 sq. ft. @ $ __-__ psf (Actual) & $ __1.12__ psf (Pro Forma)   $ _____   $ (156,281)
Escalations, pass-throughs, other income ............. $ _____   $ _____
Pro Forma subtotal for Revenue 2 ....................................   $ (156,281)
Less: ____% vacancy and credit loss of Revenue 2 of ........  -($ __-__ )

**Revenue 3:** Defined as __CPI Recovery__
Effective Market Rent = $ __-__ psf/yr
139,157 sq. ft. @ $ __-__ psf (Actual) & $ __.46__ psf (Pro Forma)   $ __-__   $ 64,516
Escalations, pass-throughs, other income ............. $ _____   $ __-__
Pro Forma subtotal for Revenue 3 ....................................   $ 64,516
Less: ____% vacancy and credit loss of Revenue 3 of ........  -($ __-__ )

**Revenue 4:** Defined as __10% Vacancy/Credit Allowance__
Effective Market Rent = $ _____ psf/yr
_____ sq. ft. @ $ _____ psf (Actual) & $ _____ psf (Pro Forma)   $ _____   $ _____
Escalations, pass-throughs, other income ............. $ _____   $ _____
Pro Forma subtotal for Revenue 4 ....................................   $ _____
Less: ____% vacancy and credit loss of Revenue 4 of ........  -($ 156,346 )

**Revenue 5:** Defined as _____
Effective Market Rent = $ _____ psf/yr
_____ sq. ft. @ $ _____ psf (Actual) & $ _____ psf (Pro Forma)   $ _____   $ _____
Escalations, pass-throughs, other income ............. $ _____   $ _____
Pro Forma subtotal for Revenue 5 ....................................   $ _____
Less: ____% vacancy and credit loss of Revenue 5 of ........  -($ _____ )

**Revenue 6:** Defined as _____
Effective Market Rent = $ _____ psf/yr
_____ sq. ft. @ $ _____ psf (Actual) & $ _____ psf (Pro Forma)   $ _____   $ _____
Escalations, pass-throughs, other income ............. $ _____   $ _____
Pro Forma subtotal for Revenue 6 ....................................   $ _____
Less: ____% vacancy and credit loss of Revenue 6 of ........  -($ _____ )

**Garages or Parking Area Revenue:**
_____ spaces @ $ _____ /yr (Actual) & $ _____ /yr (Pro Forma)
_____ spaces @ $ _____ /yr (Actual) & $ _____ /yr (Pro Forma)
_____ spaces @ $ _____ /yr (Actual) & $ _____ /yr (Pro Forma)
Total = _____   $ _____   $ _____
Pro Forma subtotal for Parking Area Revenue ....................   $ _____
Less: ____% vacancy and credit loss for Parking Area of ........  -($ _____ )

**Miscellaneous Revenue** (not shown above):
Defined as __Miscellaneous Charges__   $ 13,537   $ __-__
Defined as _____   $ _____   $ _____
Pro Forma subtotal for Miscellaneous Revenue ..................   $ _____

**Total Annual Income** (Add columns)   $ 1,533,405   $ 1,854,681
Total rentable sq. ft.: __139,157__   $ 11.02 psf   $ 13.33 psf

**Total Effective Income** (Add column)   $ 1,698,335

2

PIS 4000470

## Part 2: Expenses

### Operating Expenses

| | Actual, 19 _87_ | Pro Forma, 19 _89_ |
|---|---|---|
| Cleaning (see note 1 below) | $ 115,330 | $ 111,609 |
| Utilities (see note 2) | $ 248,336 | $ 271,159 |
| Repairs and Maintenance (see 3) | $ 128,619 | $ 107,534 |
| Reserve for replacement | $ | $ |
| Landscaping and snow removal | $ 37,501 | $ 40,276 |
| Security | $ 22,811 | $ 31,375 |
| Office and Administrative | $ 123,745 | $ 161,749 |
| Total payroll and fringe | $ | $ |
| Management fees | $ 37,278 | $ - |
| Leasing commissions | $ 24,524 | $ - |
| Other (itemize) | $ | $ |
| | $ | $ |
| | $ | $ |
| **Operating Expenses Subtotal** | $ 738,144 | $ 723,699 |
| Operating Expenses psf: | $ 5.30 psf | $ 5.20 psf |

### Fixed Expenses

| | | |
|---|---|---|
| Real estate taxes | $ 123,471 | $ 173,152 |
| Other taxes and assessments | $ | $ |
| Insurance | $ | $ |
| Other (itemize) | $ 12,091 | $ 2,583 |
| | $ | $ |
| **Fixed Expenses Subtotal** | $ 135,562 | $ 175,735 |
| Fixed Expenses psf: | $ .97 psf | $ 1.26 psf |
| **Total Annual Expenses** | $ 873,706 | $ 899,434 |
| Total Expenses as % of Income: | 56.98 % | 52.96 % |
| Total Expenses psf: | $ 6.28 psf | $ 6.46 psf |

**Net Operating Income, Actual** ..........................$ 659,599

**Net Operating Income, Pro Forma** (Effective Income less Pro Forma Expense): ......................$ 798,901

### Complete Part 3 and/or Part 4 as appropriate

## Part 3: Direct Capitalization Technique

Capitalized Net Operating Income (Pro Forma): capitalized at _9.5_ % ......$ 8,400,000
(+/-): appraisal adjustments (explain) . Asbestos .Removal. ($18 .psf). . .$ (2,500,000)    ⟵
Plus: excess land value (explain) ............................................$
Capitalized Economic Approach to Value after adjustment..........Say $ 5,900,000

Comments: _The cap rate was chosen as the most appropriate for a B-class office building_
_of this age and condition. It is also in agreement with the sales comparable cap_
_rates on the following page._

## Part 4: Discounted Cash Flow (DCF) Technique  (attach computer printout of analysis & assumptions)

Modeled with Mortgage Assumptions  Yes ☐  No ☒
Discount rate or IRR (before tax) .............._12_ %   Residual capitalization rate ...............10 %
Assumed market rent growth rate .............._4_ %   Assumed expense growth rate ....3% .fixed........4 %
Holding period: _10.75_ years  Begin date: _4_ / _1_ / _88_   End date: _12_ / _31_ / _88_  Year capitalized: _1999_
Economic Approach to Value (from DCF printout).....................$ 6,010,000
(+/-): appraisal adjustments (explain) ...................................$ ————  PIS 4000471
Plus: excess land value (explain) .........................................$
DCF Economic Approach to Value after adjustment.................. Say $ 6,000,000

Comments: _The 12% IRR is chosen as an appropriate measure at risk and investor expectations_
_for a property of this type and quality. The residual ccapitalization rate was_
_determined by increasing the present cap rate by .5%._

Notes: (1) Janitorial, window washing, garbage hauling, trash removal, supplies, etc.
(2) Electric, gas, oil, steam, chilled water, water, sewer, etc.
(3) Electrical repairs, plumbing, HVAC, elevator, structural and roof, parking, etc. (other than capital improvements)

**Part 5: Leasehold Value**

Economic Approach: (Direct Capitalization ☐ Discounted Cash Flow ☐) .... $ _____

Less Value of the Leased Fee:

Present Value of Ground Lease, Discounted at _____% ................. $ ( _____ )

Present Value of Reversion, Discounted at _____% .................... $ ( _____ )

Economic Value of Leasehold ................................... $ _____

Remaining life of leasehold: _____ years    Seller retains liability upon assignment to new owner  No ☐  Yes ☐

Attach a legal opinion of lease for each leasehold property, except for re-appraisal.

Comments: (renewal terms, purchase options, financing restrictions, mortgage terms, lease terms, etc.) _____

_____

_____

## PHYSICAL (COST) APPROACH TO VALUE

| | | | | |
|---|---|---|---|---|
| Land | 311,018 sq. ft. @ $ 3.00 psf = $ | | $ | 933,000 |
| Building | 152,795 sq. ft. @ $ 85.00 psf = $ 12,987,575 | | | |
| P.F.I. | 192,000 sq. ft. @ $ .80 psf = $ 154,000 | | | |
| Other: Asbestos Removal | 139,157 sq. ft. @ $ (18.00) psf = $ | | | (2,504,826) ← |
| Other: _____ | _____ sq. ft. @ $ _____ psf = $ _____ | | | |

Sub-Total Replacement Cost .............. $ 13,141,575

Less Depreciation . 40% ............... -($ 5,256,630 )

Physical Value of Improvements ............................................. $ 7,884,945

Physical Value (includes all direct and indirect land costs) ........................... SAY ... $ 6,300,000

## MARKET DATA (Sales Comparable) APPROACH TO VALUE

| Sale # | Location | Building Size Rentable Sq. Ft. | Sale Price | Price psf Rentable | Overall Capitalization Rate |
|---|---|---|---|---|---|
| 1 | 2175 Parklake Drive | 85,130 sq. ft. | $ 6,550,000 | $ 76.94 | 8.8 % |
| 2 | 2400 Pleasant Hill Road | 41,222 sq. ft. | $ 3,400,000 | $ 82.48 | 10.6 % |
| 3 | Hammond & Peachtree-Dun. | 281,014 sq. ft. | $ 25,000,000 | $ 88.96 | 8.9 % |
| 4 | 1852 Century Place | 40,000 sq. ft. | $ 3,125,000 | $ 78.13 | N/A % |
| 5 | | sq. ft. | $ | $ | % |

| | Sale Date | Brief Comments on Comparables and Adjustments as required: |
|---|---|---|
| 1 | 10/1/85 | 4-story, built 1975, excellent location, downward adjustment for age, upward adjustment for time of sale, ~ $70 psf. |
| 2 | 10/ /87 | 3-story, built 1986, low occupancy (40%), large downward adjustment for age, ~ $60 psf. |
| 3 | 1/ /88 | 14 2-story office, built 1981, price is high due to land value; downward adjustment for age, ~$65 psf. |
| 4 | 10/ /87 | 75% owner occupied built 1982, downward adjustment for quality of tenant base and for age, ~$60 psf. |
| 5 | / / | |

**Value Indications for Subject Property** (Estimated ranges are based on selected comparables from above.)

Subject property rentable sq. ft.: 139,157 X $ 60 psf to $ 70 psf = $8,350,000 to $ 9,750,000

Comments: The property is significantly older than most of the comparables above. In addition, the cost of asbestos removal is estimated at $18 psf. Considering this, an appropriate range would be $42 psf to $52 psf.

_____

_____

**Market Data (Sales Comparable) Approach to Value**
**Subject Property Selected Range:**          $ 5,800,000 _____ to $ 7,100,000 _____

PIS 4000472

APPRAISAL ASSUMPTIONS FOR 2200 CENTURY CENTER

1. The annual growth rate for operating expenses, rents, and tenant improvements is 4%. Fixed expenses grow at 3%.

2. The gross market rent is assumed to be $15.20 psf in 1988.

3. A continuing 10% vacancy loss is assumed upon reaching full occupancy in February, 1989.

4. Total Expenses are estimated to be $6.23 psf in 1988 and grow thereafter at the above defined rates.

5. Leasing commissions are 5.75% for new leases and 2.25% for renewals. This assumes that 25% are co-brokered.

6. In 1988, tenant improvements for new tenants are $15 psf and $5 psf for renewals.

7. In 1988 a capital expense allowance of $20,000 is assumed. This amount is escalated annually at 4%.

8. Asbestos removal for the entire building is estimated at $18 psf. This includes actual removal costs, inspections, and above ceiling tenant improvements. Actual removal is scheduled to be completed during the next four years.

9. Lease-up of the remaining space is projected to occur using 5 year leases with 1,500 s.f. per month beginning April, 1988 until fully leased in February, 1989.

10. Free rent given on new leases is calculated at 6 months during 1988-89, 3 months during 1990-93 after which no free rent is given.

11. Free rent given on renewals is 3 months during 1988 and 1 1/2 months during 1989 after which no free rent is given.

12. 67% of all tenants are expected to renew while 33% will vacate. When a tenant vacates, a 3 month vacancy period, in addition to free rent, is assumed.

13. The holding period begins on 4/1/88 and ends on 12/31/98.

14. NOI from the year 1999 was capitalized to calculate the residual value.

PIS 4000473

APPENDIX F

# APPENDIX F

## EXCERPTS FROM
## PROPOSED SALE STRUCTURE FOR
## 2200 CENTURY CENTER,
## DATED JULY 11, 1988

Halliwell Engineering Associates, Inc., July 1996

MEMO TO:      George C. Peterson
              Vice President, Acqs. & Sales
              Corporate Office

FROM:         Frank J. Rojas
              Director, Acqs. & Sales

              J. Elizabeth Andress
              Investment Manager, Acqs. & Sales
              Atlanta Realty Group

DATE:         July 11, 1988

SUBJECT:      Proposed Sale Structure

---

The following summary represents the proposed sale structure for Century
Center we negotiated with Goldman, Janger, and White.

PURCHASE PRICE:  $72,500,000

          Cash to Pru at Closing:        $11,985,000 PRISA
                                           2,215,000 General Account
                                         $14,200,000

PURCHASE MONEY MORTGAGES:

- $ 5,778,400 (Secured by Phase II and IV - PRISA)
- $ 8,861,600 (Secured by Phases I and III - General Account)
- $14,940,000 (Secured by Phase VIII).
- On Phases II and IV $3,361,540 funded at Closing. The remainder will
  begin earning interest as the asbestos is removed on a $20 per square foot
  pro rata basis and income support funds are drawn down until $2,416,860
  support fund is disbursed. See proposed contract language following.
- On Phases I and III $5,478,460 funded at closing. The remaining
  $3,383,140 will begin earning interest as provided for in Phases II and IV.
- Interest only for 5 years @ 9.0%
- Two year extension option for Phases I-IV at market rate with a 10.0% cap.
- Three year extension option for Phase VIII if AT&T does not renew at least
  50% of their space, otherwise they have a two year extension option. At
  market rate with a 10.0% cap.
- 80% LTV ratio except on the AT&T Building which has a ratio of
  approximately 81%. Secondary financing permitted with restrictions.
- Purchaser may transfer loans one time with no fee. Restrictions on
  secondary financing with sale.

Asbestos Removal Fund: ($4,800,000) As purchaser removes asbestos from
Phases I and IV, purchaser will request from Prudential reimbursement of
the removal costs. As Prudential reimburses purchaser, purchaser must
begin paying interest on the cost of the removal. Purchaser must remove at

least 50% of the asbestos within 5 years in order to be permitted to extend the loan. If purchaser has not removed at least 50%, then the remaining balance of the asbestos fund shall be credited to the gross principal balance of the loan and the loan becomes due and payable.

Support Fund: ($1,000,000) Every six months, purchaser may request from Prudential the difference between actual cash flow and the cash flow projected in the offering brochure. As Prudential makes disbursements, purchaser must begin paying interest on the amount of the disbursements as part of the loan. Any fund remaining at the end of five or seven years will be credited against the gross loan amount.

GAP LOAN: $28,720,000 (Secured by Phases V and VIII)

° Matures 6-30-89
° 8% interest rate from Closing through 12-31-88
° 12% interest rate from 1-1-89 through 6-30-89
° 80% LTV ratio

TIMING:

° Completion of Due Diligence: 7-1-88
° Contract execution: 7-20-88 ($500,000 earnest money deposit)
° Closing: 9-1-88

SOUTHERN BELL CONTINGENCY:

Closing is conditioned upon the execution of the Southern Bell leases in Phase V. See following summary of Southern Bell lease proposal.

GROSS PURCHASE PRICE ALLOCATIONS:

| Phase | Property Number | Gross Price Allocation | Prudential Appraisal | Description | Address |
|-------|-----------------|------------------------|----------------------|-------------|---------|
| I | IP 4046 | $ 7,250,000 | $ 6,225,000 | Old Pru Bldg.(asbestos) | 2200 Century Pkwy. |
| II | PR 154 ✓ | $ 3,728,000 | $ 3,200,000 | Low Rise | 1900 Century Blvd. |
| III | IP 4056 | $ 3,827,000 | $ 3,285,000 | Low Rise | 1700 Century Circle |
| IV | PR 171 ✓ | $ 3,495,000 | $ 3,000,000 | Sunkist Bldg.(asbestos) | 2600 Century Pkwy. |
| V | PR 177 ✓ | $19,000,000 | $17,000,000 | Triangle | 1800 Century Blvd. |
| VII | PR 388 | $16,900,000 | $18,000,000 | Twin Glass Bldg. | 2635 Century Pkwy. |
| VIII | PR 753 ✓ | $18,300,000 | $20,000,000 | AT&T Building | 2800 Century Pkwy. |
| | | $72,500,000 | $70,710,000 | | |

PIS 4005760

APPENDIX F

# APPENDIX G

### EXCERPTS FROM
### AGREEMENT FOR PURCHASE AND SALE FOR
### 2200 CENTURY CENTER,
### DATED JULY 28, 1988

Halliwell Engineering Associates, Inc., July 1996

AGREEMENT FOR PURCHASE AND SALE

(General Account)

by and between

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

as Seller,

and

CENTURY CENTERGROUP

as Purchaser

July 28, 1988

PIS 4000016

## TABLE OF CONTENTS

| PARAGRAPH | TITLE | PAGE |
|---|---|---|
| 1 | Purchase and Sale | 3 |
| 2 | Purchase Price | 3 |
| 3 | Earnest Money | 4 |
| 4 | Title | 5 |
| 5 | Conveyance of Title | 6 |
| 5.A | Ground Lease Assignment | 6 |
| 5.B | Limited Warranty Deed | 6 |
| 5.C | Bill of Sale | 6 |
| 5.D | Assignments | 6 |
| 5.E | Commission Agreements | 7 |
| 5.F | Ground Lease Estoppels | 8 |
| 5.G | Space Lease Estoppels | 10 |
| 5.H | Files and Records | 12 |
| 5.I | Notices of Assignment and Assumption | 12 |
| 5.J | Non-Foreign Certificate; Affidavits and Other Instruments | 13 |
| 5.K | Materials Removal Fund | 14 |
| 6 | Closing | 14 |
| 7 | Closing Costs | 14 |
| 8 | Prorations | 15 |
| 9 | Inspection of Property | 18 |
| 10 | Condition of Premises at Closing | 19 |
| 10.A | "As-Is" Conveyance | 19 |
| 10.B | No Right of Set-Off | 20 |
| 10.C | Operation and Leasing Prior to Closing | 20 |
| 11 | Default | 22 |
| 12 | Brokers | 24 |
| 13 | Notices | 25 |
| 14 | Asbestos Materials | 26 |
| 14.A | Removal of Asbestos Materials | 26 |
| 14.B | Asbestos Litigation | 26 |
| 15 | Termination of Contracts | 29 |
| 16 | Casualty | 29 |
| 17 | Condemnation | 31 |
| 18 | Representations | 32 |
| 19 | E.R.I.S.A. | 36 |
| 20 | Purchaser's Southern Bell Right of Termination | 36 |
| 21 | General | 38 |
| 21(a) | Agreement Binding | 38 |
| 21(b) | Entire Agreement | 38 |
| 21(c) | Execution Necessary | 38 |
| 21(d) | Confidentiality | 40 |
| 21(e) | Agreement Irrevocable | 41 |
| 21(f) | Time is of the Essence | 41 |
| 21(g) | Governing Law | 41 |

PJS 4000017

K.   Materials Removal Fund.   At Closing, Seller shall
establish a fund out of the proceeds of the cash portion of the
Purchase Price in the amount of Three Million Three Hundred
Eighty-Three Thousand One Hundred Forty Dollars ($3,383,140.00)
(the "Removal Fund"), which Removal Fund shall be held and
disbursed by Seller pursuant to the terms of the Mortgage Loan
Conditions;  in the event that, prior to Closing, Seller
removes all Materials (as defined in the Mortgage Loan
Conditions) from portions of the building located at
2200 Century Parkway in accordance with the standards of the
Mortgage Loan Conditions, then the amount of the Removal Fund
so established at Closing shall be reduced only to the extent
that such removal, and the cost thereof, have been approved and
consented to by Purchaser in writing after the date of July 21,
1988.

6.   Closing.   Closing (the "Closing") shall occur in the
offices of Alston & Bird, 1200 C&S National Bank Building,
35 Broad Street, Atlanta, Georgia 30335 at 9:00 a.m. on
September 1, 1988, except that in the event that on or before
August 25, 1988 a New Southern Bell Lease has not been executed
and delivered by each of Seller and Southern Bell (as
hereinafter defined), then the date of Closing shall be
extended to a date which is seven (7) business days after the
date of full execution and delivery as aforesaid of the New
Southern Bell Lease; but in no event shall the date of Closing
be extended beyond September 30, 1988.   Seller shall deliver
possession of the Property, subject to the Permitted Title
Exceptions, to Purchaser at the time of Closing; as provided in
Paragraph 15, Seller's management contract shall be terminated
at Closing.

7.   Closing Costs.   Purchaser shall pay the costs of all
title searches, examinations and abstracts of title, the costs
of any new or updated surveys of the Property obtained by
Purchaser, the costs of any other investigations, studies and

PIS 4000032

- 14 -

Closing hereunder and any termination of this Agreement.  In
addition, in the event of any termination of this Agreement,
Purchaser shall deliver to Seller the originals or photocopies
: all inspection reports and results, test reports and
results, appraisals, analyses, surveys or other reports
received or obtained by or for Purchaser with respect to the
Property or any part thereof.  In addition to the foregoing,
Purchaser acknowledges and agrees that Purchaser is aware that
certain of the Improvements (namely, the building located at
2200 Century Parkway and otherwise as previously disclosed to
Purchaser) contain asbestos and asbestos-containing materials
(the "Materials") and that, as a consequence thereof, Purchaser
has required that Seller set aside at Closing the Removal Fund
and Purchaser has agreed to remove the Materials after
Closing.  Purchaser has investigated the status of the Property
with respect to the Materials and has received bids from
contractors with respect to the cost of removal of the
Materials and has otherwise become satisfied with Purchaser's
capacity to own and operate the Property notwithstanding the
existence of the Materials, with the costs of removing the
Materials and with the obligations and liabilities related
thereto upon acquisition of the Property by Purchaser.
Therefore, Purchaser acknowledges and agrees that Purchaser
shall not be entitled to terminate this Agreement in the event
that Purchaser hereafter becomes dissatisfied with the Property
on account of the Materials or any costs, expenses, claims or
liabilities related thereto or involved in the removal thereof.

10.  Condition of Premises at Closing.

A.  "As-Is" Conveyance.  In consideration of Seller's
creation of the Removal Fund and Purchaser's receiving access
to the Property as permitted by Seller prior to the execution
of this Agreement in order for Purchaser to conduct such
studies, tests, investigations, inspections and analyses with
respect to the Property as Purchaser has desired, Purchaser

PIS 4000037

- 19 -


knowledges and confirms that Purchaser shall accept Seller's
conveyance of the Property to Purchaser in "as-is" condition
free of any warranty by Seller except as otherwise expressly
provided in this Agreement and free of any obligation by Seller
perform any repairs or other improvement work with respect
the Property except as otherwise expressly provided in
Paragraph 10C hereof.

B.  <u>No Right of Set-Off</u>.  Furthermore, Purchaser
acknowledges and agrees that Purchaser shall have, and shall
claim, no right of set-off, reduction, counterclaim or any
other similar claims or defenses against payment or performance
under any instruments executed to evidence or secure the
purchase money financing described herein by virtue of any
representations and warranties given to Purchaser in this
Agreement or otherwise in the instruments of conveyance to
Purchaser delivered at Closing and by virtue of any loss,
damage or expenses on account of said representations and
warranties or the correctness or incorrectness thereof.

C.  <u>Operation and Leasing Prior to Closing</u>.  Prior to
Closing or other termination of this Agreement or default by
Purchaser hereunder and except as otherwise set forth below,
Seller shall have full discretion on all leasing, maintenance,
repair and operating matters with respect to the Property and
shall during such period conform to Seller's present policies
regarding the leasing, maintenance, repair and operation of the
Property; but Seller shall have no obligation to make any
tenant improvements except as, if and at the time required by
existing Space Leases and subject to the provisions hereinafter
set forth.  With respect to any other tenant improvements for
the cost of which Seller is responsible under the preceding
sentence, Seller may, as to any portion of the cost thereof
which is not due and payable by Closing, furnish Purchaser at
Closing a credit against the cash portion of the Purchase Price
in the amount of such unpaid portion of such cost and Purchaser

PIS 4000038

- 20 -

and

Robert L. Foreman, Jr., Esq.
Alston & Bird
1200 C&S National Bank Building
35 Broad Street
Atlanta, Georgia  30335

If to Purchaser:

Jerome Janger, Esq.
138 South Lasky Drive
Beverly Hills, California  90212

with a copy to:

Mr. Roderick T. White
White & Associates, Inc.
Suite 1500
1800 Century Boulevard, NE
Atlanta, Georgia  30345

14.   Asbestos Materials.

A.   Removal of Asbestos Materials.  After Closing,
Purchaser shall remove, at Purchaser's sole cost and expense
(including, but not limited to, reimbursements for costs and
expenses drawn from the Removal Fund), the asbestos-containing
materials described in the reports of BCM Converse, Inc. dated
April 28, 1986 and McCrone Environmental Services, Inc. dated
April 22, 1986 (the "Reports") from the building located at
2200 Century Parkway in such a manner as to prevent the
disbursement of asbestos fibers.  Purchaser shall conduct such
removal and shall transport, store and dispose of such asbestos
in a manner which is in compliance with all federal, state and
local laws, regulations and standards whenever and by whomever
triggered (including, but not limited to, the Federal Clean Air
Act, 42 U.S.C. Sec. 7401 et seq.) with respect to the removal
of such materials and Purchaser shall initiate and complete
such removal in an orderly and timely manner, all as set forth
in the Mortgage Loan Conditions.  Nothing in this subparagraph
shall be deemed a representation by Seller that the work
contemplated by the Reports is the only asbestos work required
or desirable at the Property.

B.   Asbestos Litigation.  In consideration of the
establishment of the Removal Fund to be held by Seller pursuant
to the terms of the Mortgage Loan Conditions referenced in

PIS 4000044

- 26 -

General Account

Paragraph 2B hereof, and notwithstanding anything in this
Agreement to the contrary, it is understood and agreed that
Seller is not selling to Purchaser and Purchaser is not
purchasing from the Seller any interest in Civil Action
No. 87-4227, in the U.S. District Court for the District of New
Jersey: The Prudential Insurance Company of America; PIC Realty
Corporation; and 745 Property Investments, Plaintiffs v. United
States Gypsum Company, et al., or Civil Action No. 87-4238, in
the U.S. District Court for the District of New Jersey: The
Prudential Insurance Company of America and PIC Realty
Corporation, Plaintiffs v. National Gypsum Company, being
generally, actions seeking damages against numerous entities
involved with asbestos located in certain buildings, including
the Property (hereinafter, such proceedings are referred to as
the "Existing Actions").  In addition, it is understood and
agreed that Seller is not selling to Purchaser and Purchaser is
not purchasing from Seller any claims, actions, causes of
action or other rights against any asbestos manufacturer,
distributor, vendor, architect, engineer, contractor,
subcontractor or other asbestos supplier with respect to the
Property, but rather all such claims and other rights shall
continue to remain with and belong to Seller, whether pursuant
to the terms of the Existing Actions or any other action or
claim now or hereafter made or commenced by Seller against the
parties in the Existing Actions or any other company or entity
or in any other action or method which Seller may pursue.
Nothing in the foregoing is intended to restrict Purchaser from
pursuing any rights or remedies it may have against its own
asbestos contractors in connection with the removal, enclosure
or encapsulation of the asbestos.  Purchaser agrees to
cooperate with Seller in any such action or method of pursuing
asbestos damage recovery, all at no cost or expense to
Purchaser.  Without limiting the above, it is understood that
Purchaser shall provide access to Seller to take such tests and

PIS 4000045

General Account

do other discovery as Seller or said parties in the Existing
Actions may deem necessary or desirable, provided that Seller
shall pay the costs of any such testing and discovery; Seller
shall, and does hereby agree to, indemnify, defend and hold
Purchaser harmless from any actions, suits, liens, claims,
damages, expenses, losses and liability arising out of the
exercise of such rights by Seller and said parties in the
Existing Actions (including, without limitation, any rights or
claims of materialmen or mechanics to liens on the Property),
which indemnity, defense and hold harmless agreement shall
survive Closing hereunder.  Any such testing or discovery shall
be coordinated with Purchaser and shall be conducted in a
manner which will not materially interfere with any tenants or
any other business operations on the Property.  At such time as
Purchaser is prepared to commence the actual removal of any of
the asbestos from the Property, Purchaser shall give Seller
notice prior to such commencement of actual removal (which
notice shall be in writing and shall be given not less than 70
days prior to the commencement of such actual removal, unless
such removal is in accordance with a schedule previously
submitted by Purchaser and approved by Seller) in order that
Seller or other litigants or their agents or representatives
shall be able to conduct such tests or take such other
discovery as it shall deem appropriate or desirable prior to
such removal.  The terms of this Paragraph 14B shall survive
the Closing, shall "run with the land" and be binding upon the
Purchaser and its successors and assigns.  Each of the Deeds
and Ground Lease Assignments to be delivered pursuant to
Paragraph 5 of this Agreement (or, in lieu thereof, a separate
instrument acceptable in form to Seller and Purchaser which
shall be in recordable form and shall be recorded along with
said Deeds and Assignments) shall contain a provision
preserving to Seller the rights reserved by this Paragraph 14B.

PIS 4000046

- 28 -

General Account

# APPENDIX H

## REMOVAL FUND ALLOCATION REQUEST
## FOR 2200 CENTURY CENTER - GROUND FLOOR

Halliwell Engineering Associates, Inc., July 1996



## WHITE & ASSOCIATES

October 10, 1990

Ms. Elizabeth Andress
The Prudential Acquisitions and Sales Group
One Ravinia Drive
Suite 1400
Atlanta, Georgia  30346

SUBJECT:        REMOVAL FUND ALLOCATION-FINAL REQUEST
                2200 CENTURY PARKWAY BUILDING
                ATLANTA, GEORGIA

Dear Elizabeth:

In accordance with Exhibit F, Section 3 of the loan agreement between Century
Centergroup and the Prudential Insurance Company of America, we respectfully
make a final request for disbursement in the amount of $250,000.00. This amount
is based upon the substantial completion of all asbestos abatement from the Ground
through Sixth, Eighth and Ninth Floors; approximately 10,460 square feet of the
Seventh Floor; and both of the interior stairwells from the Ground through Ninth
Floors, at the above referenced project; as detailed in our ten previous requests for
disbursement. Included with this letter you should find copies of the following
documents, further attesting to the final completion of the above-referenced project:

1.      Exhibit A - Affidavit of duly authorized general partner of Century
        Centergroup, dated October 4, 1990 attesting that; 1) all Asbestos Containing
        Materials have been abated from those areas of the Building which were
        designated as requiring Asbestos Abatement upon our taking ownership of the
        Building, in accordance with the Removal Fund, and; 2) all costs related to
        the Abatement of those same Materials have been paid in full;

2.      Exhibit B - Certificate from Samurai Construction Company, Inc., dated
        October 4, 1990 certifying that all Materials have been removed from the
        following areas of the Building which they were contractually obligated to
        perform removal of the Materials in accordance with the Plan:

        o       All of the Ground Floor, except the Chiller Room
        o       All of the First through Sixth Floors
        o       Approximately 10,460 square feet of the Seventh Floor
        o       All of the Ninth Floor
        o       Ground through Ninth Floor Interior Stairwells

Suite 800  2200 Century Parkway NE, Atlanta, Georgia 30345-3203    Tel 404-321-6555    Fax 404-325-4123

ATLANTA/ST. SIMONS ISLAND

PIS 4002756

Elizabeth Andress
Prudential Acquisitions and Sales Group
October 10, 1990
Page 2

3.    Exhibit C - Certificate from Asbestos Abatement Technology, Inc., dated
      October 4, 1990, certifying that all Materials have been removed from the
      Eighth Floor, i.e. those portions of the Building which they were contractually
      obligated to perform removal of the Materials in accordance with the Plan;

4.    Exhibit D - Certificate from the Consultant, Westinghouse Environmental and
      Geotechnical Services, Inc., dated October 5, 1990, stating that all Materials
      have been abated from the above referenced areas of the Building, in
      accordance with the Plan;

5.    Exhibit E - Final Release of Lien from Samurai Construction Company, Inc.,
      dated October 4, 1990, and;

6.    Exhibit F - Final Release of Lien from Asbestos Abatement Technology, Inc.,
      dated October 4, 1990.

To the best of my knowledge, this satisfies your requirements for final disbursement
request as set forth in the closing documents between Prudential and Century
Centergroup.  If you have any questions about the submittals provided herein,
require any further information, or if I may be of further assistance, please do not
hesitate to contact me.

Sincerely,

WHITE & ASSOCIATES MANAGEMENT GROUP

G. Scott Walters
Vice President Development

attachments

cc:  Sharon Tiller
     Ted Jacobson

*PIS* 4002757

APPENDIX 1

# APPENDIX I

## SUMMARY OF DISBURSEMENTS AND
## REMOVAL FUND ALLOCATION - FINAL REQUEST,
## 2200 CENTURY CENTER

Halliwell Engineering Associates, Inc., July 1996

ASBESTOS ABATEMENT
2200 BUILDING
CENTURY CENTER

| FLOOR | SQFT | COST/SQFT | DISBURSEMENT REQUEST | PROJECTED ABATEMENT DATE | COMMENTS |
|---|---|---|---|---|---|
| EIGHT | 12557 | $27.40 | $344,061.80 | COMPLETED | PAID MAY 15, 1989 |
| GROUND | 12557 | $27.40 | $321,045.80 | COMPLETED | PAID SEPT 15, 1989; HOLDBACK OF $23,016 FOR 840 SF ELECTRICAL ROOM |
| FIFTH | 12557 | $27.40 | $319,061.80 | COMPLETED | PAID DECEMBER 1, 1989; HOLDBACK OF $25,000 FOR FUTURE ABATEMENT OF STAIRWELLS |
| ELEC ROOM | | | $23,016.00 | COMPLETED | PAID JAN 3, 1990 |
| SIXTH | 12557 | $27.40 | $319,061.80 | COMPLETED | PAID FEBRUARY 6, 1990; HOLDBACK OF $25,000 FOR FUTURE ABATEMENT OF STAIRWELLS |
| | | | $1,326,247.20 | | |
| SECOND | 12557 | $27.40 | $319,061.80 | COMPLETED | DISBURSEMENT REQUEST IN PROCESS;$25,000 HOLDBACK FOR STAIRWELLS |
| SEVENTH | 10459 | $27.40 | $261,583.80 | COMPLETED | DISBURSEMENT REQUEST IN PROCESS;$25,000 HOLDBACK FOR STAIRWELLS |
| | | | $580,645.60 | | |
| FIRST | 12557 | $27.40 | $344,061.80 | Mar-90 | |
| THIRD | 12557 | $27.40 | $344,061.80 | May-90 | |
| NINTH | 12557 | $27.40 | $344,061.80 | May-90 | |
| FOURTH | 12557 | $27.40 | $344,061.80 | Jun-90 | |
| | | | $1,376,247.20 | | |
| HOLDBACK FOR STAIRWELLS | | | $100,000.00 | | |
| TOTAL | | | $3,383,140.00 | | |



## WHITE & ASSOCIATES

October 10, 1990

Ms. Elizabeth Andress
The Prudential Acquisitions and Sales Group
One Ravinia Drive
Suite 1400
Atlanta, Georgia 30346

SUBJECT:    REMOVAL FUND ALLOCATION-FINAL REQUEST
            2200 CENTURY PARKWAY BUILDING
            ATLANTA, GEORGIA

Dear Elizabeth:

In accordance with Exhibit F, Section 3 of the loan agreement between Century Centergroup and the Prudential Insurance Company of America, we respectfully make a final request for disbursement in the amount of $250,000.00. This amount is based upon the substantial completion of all asbestos abatement from the Ground through Sixth, Eighth and Ninth Floors; approximately 10,460 square feet of the Seventh Floor; and both of the interior stairwells from the Ground through Ninth Floors, at the above referenced project; as detailed in our ten previous requests for disbursement. Included with this letter you should find copies of the following documents, further attesting to the final completion of the above-referenced project:

1.    Exhibit A - Affidavit of duly authorized general partner of Century Centergroup, dated October 4, 1990 attesting that; 1) all Asbestos Containing Materials have been abated from those areas of the Building which were designated as requiring Asbestos Abatement upon our taking ownership of the Building, in accordance with the Removal Fund, and; 2) all costs related to the Abatement of those same Materials have been paid in full;

2.    Exhibit B - Certificate from Samurai Construction Company, Inc., dated October 4, 1990 certifying that all Materials have been removed from the following areas of the Building which they were contractually obligated to perform removal of the Materials in accordance with the Plan:

    o    All of the Ground Floor, except the Chiller Room
    o    All of the First through Sixth Floors
    o    Approximately 10,460 square feet of the Seventh Floor
    o    All of the Ninth Floor
    o    Ground through Ninth Floor Interior Stairwells

PIS 4002756

Elizabeth Andress
Prudential Acquisitions and Sales Group
October 10, 1990
Page 2

3.  Exhibit C - Certificate from Asbestos Abatement Technology, Inc., dated October 4, 1990, certifying that all Materials have been removed from the Eighth Floor, i.e, those portions of the Building which they were contractually obligated to perform removal of the Materials in accordance with the Plan;

4.  Exhibit D - Certificate from the Consultant, Westinghouse Environmental and Geotechnical Services, Inc., dated October 5, 1990, stating that all Materials have been abated from the above referenced areas of the Building, in accordance with the Plan;

5.  Exhibit E - Final Release of Lien from Samurai Construction Company, Inc., dated October 4, 1990, and;

6.  Exhibit F - Final Release of Lien from Asbestos Abatement Technology, Inc., dated October 4, 1990.

To the best of my knowledge, this satisfies your requirements for final disbursement request as set forth in the closing documents between Prudential and Century Centergroup. If you have any questions about the submittals provided herein, require any further information, or if I may be of further assistance, please do not hesitate to contact me.

Sincerely,

WHITE & ASSOCIATES MANAGEMENT GROUP

G. Scott Walters
Vice President Development

attachments

cc: Sharon Tiller
    Ted Jacobson

APPENDIX J

# APPENDIX J

## BCM CONVERSE ASBESTOS SURVEY REPORT, DATED APRIL 26, 1986

Halliwell Engineering Associates, Inc., July 1996

# ASBESTOS SURVEY REPORT

### FOR

## PRUDENTIAL INSURANCE COMPANY
## CENTURY CENTER COMPLEX

### PROJECT NO. 05-4151-06



### APRIL 28, 1986



Engineers, Planners and Scientists

PIS 4009963

ASBESTOS SURVEY REPORT

FOR

PRUDENTIAL INSURANCE COMPANY

CENTURY CENTER COMPLEX

BCM PROJECT NO. 05-4151-06

APRIL 28, 1986

_W. T. Dumas, P. E._
Manager, Engineering Services

BCM CONVERSE INC.
108 ST. ANTHONY STREET
MOBILE, ALABAMA 36602

© 1986 BCM CONVERSE INC.

PIS 4010036

TABLE OF CONTENTS

PAGE

1.0    INTRODUCTION..........................................1

2.0    METHODS OF ANALYSIS.................................2

3.0    RESULTS ............................................4

4.0    RECOMMENDATIONS....................................14

APPENDICES

APPENDIX A   INTERIM CONTROLS

APPENDIX B   OSHA REGULATIONS

APPENDIX C   AIR MONITORING DATA REPORT

PIS 4010037

1.0    INTRODUCTION

Prudential Insurance Company retained BCM Converse Inc. to survey and
sample properties held by Prudential in the South and Southeastern
regions for the presence of friable asbestos-containing materials.  On
April 17, 1985 Prudential's representative, Bud Burt, requested BCM to
perform the survey and sampling of the Century Center Office Complex.

A visual survey was conducted on April 18, 19, and 20, 1986, to locate
friable potentially asbestos-containing materials (ACM).  When friable
materials were found, samples were collected for laboratory analysis to
confirm the presence or absence of asbestos fibers within the material.
Following the visual survey, air quality monitoring was performed to
determine the concentration of airborne fibers within the areas.

Although the quantitive results are included in this report, further
investigation is in progress to determine the significance of the data.
An additional report addressing the air monitoring results will be issued
in the near future.

-1-

PIS 4010038

2.0    METHODS OF ANALYSIS

2.1    Visual Survey

The initial step in identifying friable asbestos-containing
materials involves a thorough walk-through visual inspection.
Asbestos inspections are conducted in accordance with Chapter I of
title 40 of the Code of Federal Regulations, Part 763.  Friable
materials, those materials that are easily crumbled and most
likely to contribute to air particulate concentrations, were the
main focus of the inspections.  Materials that are traditionally
non-friable, such as pipe and equipment insulation, are also
documented when observed.

2.2    Sampling Procedures

Following the visual survey, samples of the friable material were
obtained using EPA protocol.  To determine the sampling
requirements, the investigator first located the different
sampling areas by evaluating the texture, color, thickness and
consistency of the material.  From each sampling area, a
statistically valid number of randomly located samples were
obtained.

Air monitoring was performed in areas where friable materials were
located, and/or where bulk sampling was performed to document the
presence of asbestos.

2.3    Analytical Procedures

The bulk samples obtained were analyzed utilizing polarized light
microscopy with dispersion staining, and when necessary, x-ray
diffraction to determine the presence of asbestos fibers.  Once

-2-

PIS 4010039

the presence of asbestos is verified, the specific type of
asbestos is ascertained. Finally, the asbestos content for each
sample, as a percentage, is determined. The laboratory analyzing
the samples was EnviroSciences, Inc., 3509 Haworth Drive, Raleigh,
North Carolina. The laboratory is managed by Reginald C. Jordan
who is an A.B.I.H. Certified Industrial Hygienist. The complete
laboratory report is maintained in BCM files, and is available for
review when requested.

The air sampling was performed utilizing NIOSH method 7400 to
determine the concentration of airborne fibers within the
atmosphere. Method 7400 determines fiber concentration of
particulates five microns in length with a length to width ratio
of five to one. The method is not specific to asbestos fibers
alone, but determines the concentration of all fibers which are
similar to the asbestos fiber.

-3-

PIS 4010040

3.0    RESULTS

BCM representative, Mark A, Johnson, performed the visual survey, bulk
sampling, and the air quality monitoring on April 18, 19, and 20, 1986.

The results of the visual inspection and the analysis of the bulk and air
samples obtained are as follows:

Building 2200

### VISUAL OBSERVATION

Friable fireproofing was observed on structural steel throughout
the building (Floors 1 through 10 and basement). A transite
cooling tower was observed on the roof. Pipe lagging and pipe
elbows, possibly containing asbestos, were observed in the
mechanical rooms on all floors.

### BULK SAMPLING RESULTS

| SAMPLE NO. | LOCATION | RESULTS |
|---|---|---|
| 01 | 4th Floor Ceiling Tile | 0% |
| 02 | 4th Floor - Fireproofing | 20% |
| 03 | 7th Floor Mech Room Pipe Elbow Tape | 10% |
| 04 | 7th Floor - Fireproofing | 20% |
| 05 | Basement - Elbows on Chillers | 50% |
| 06 | 10th Floor - Fireproofing | 6% |
| 07 | 10th Floor - Fireproofing | 5% |
| 08 | 10th Floor - Fireproofing | 7% |
| 09 | 10th Floor - Elbows in Mech Room - on Hot Water Heater | 10% |

-4-

PIS 4010041

BUILDING 2200

(continued)

BULK SAMPLING RESULTS

| SAMPLE NO. | LOCATION | RESULTS |
|---|---|---|
| 10 | 9th Floor – Ceiling Tile | 0% |
| 11 | 9th Floor – Fireproofing | 8% |
| 12 | 9th Floor – Fireproofing | 8% |
| 13 | 9th Floor – Fireproofing | 7% |
| 14 | 8th Floor – Fireproofing | 9% |
| 15 | 8th Floor – Fireproofing | 7% |
| 16 | 8th Floor – Fireproofing | 7% |
| 17 | 7th Floor – Fireproofing | 6% |
| 18 | 7th Floor – Fireproofing | 8% |
| 19 | 7th Floor – Fireproofing | 10% |
| 20 | 7th Floor Mech Room Pipe Elbows – Tape | 40% |
| 21 | 6th Floor – Fireproofing | 6% |
| 22 | 6th Floor – Fireproofing | 9% |
| 23 | 6th Floor – Fireproofing | 7% |
| 24 | 5th Floor – Fireproofing | 8% |
| 25 | 5th Floor – Fireproofing | 15% |
| 26 | 5th Floor – Fireproofing | 8% |
| 27 | 5th Mech Room Pipe Elbow – Tape | 50% |
| 28 | 4th Floor – Floor Tile | 0% |
| 29 | 4th Floor – Fireproofing | 10% |
| 30 | 4th Floor – Fireproofing | 7% |
| 31 | 3rd Floor – Fireproofing | 6% |
| 32 | 3rd Floor – Fireproofing | 6% |
| 33 | 3rd Floor – Fireproofing | 8% |
| 34 | 2nd Floor – Fireproofing | 10% |
| 35 | 2nd Floor – Fireproofing | 8% |

-5-

PIS 4010042

BUILDING 2200

(continued)

BULK SAMPLING RESULTS

| SAMPLE NO. | LOCATION | RESULTS |
|---|---|---|
| 36 | 2nd Floor – Fireproofing | 8% |
| 37 | 1st Floor – Fireproofing | 7% |
| 38 | 1st Floor – Fireproofing | 8% |
| 39 | 1st Floor – Fireproofing | 8% |
| 40 | Basement – Fireproofing | 6% |
| 41 | Basement – Fireproofing | 6% |
| 42 | Basement – Fireproofing | 9% |
| 43 | Basement – Elbows in Chiller Rm – Water Supply Line | 10% |
| 44 | Basement – Elbows in Heater Tank Rm | 2% |

AIR SAMPLING RESULTS

| SAMPLE NO. | LOCATION | RESULTS (fibers/cc) |
|---|---|---|
| 01 | 4th floor Exposed Area | 0.071 |
| 02 | 4th Floor Vacuum Sample | * |
| 03 | 4th Floor Vacuum Sample | * |
| 04 | 4th Floor Wipe Sample | Too |
| 05 | 4th Floor Wipe Sample | dirty |
| 06 | 4th Floor Wipe Sample | to read |

* Both vacuum samples indicated a significant quantity of fibers resembling the configuration of asbestos fibers.

-6-

PIS 4010043

BUILDING 2200

(continued)

AIR SAMPLING RESULTS

| SAMPLE NO. | LOCATION | RESULTS (fibers/cc) |
|---|---|---|
| 07 | 4th Floor Exposed Area | 0.009 |
| 08 | 9th Floor Background | 0.020 |
| 09 | 8th Floor Background | 0.016 |
| 10 | 7th Floor Background | 0.028 |
| 11 | 6th Floor Background | 0.008 |
| 12 | 10th Floor Background | 0.011 |
| 13 | 5th Floor Background | 0.007 |
| 14 | 3rd Floor Background | 0.006 |
| 15 | 2nd Floor Background | 0.009 |
| 16 | 1st Floor Background | 0.007 |
| 17 | Basement Background | 0.006 |

LOCATION OF ASBESTOS MATERIAL

Asbestos materials were confirmed within the following areas of
Building 2200:

| AREA | TYPE | LOCATION |
|---|---|---|
| Basement, Floors 1-10 | Fireproofing | Throughout Floor |
| Mechanical Rooms | Pipe Elbows | Piping |
| Roof Level | Transite Panels | Cooling Tower |

-7-

PIS 4010044

Building 2600

## VISUAL OBSERVATION

Friable fireproofing was observed on structural steel throughout
the building (Floors 1 through 4 ) and basement.  Other materials
observed include a transite cooling tower at ground level and
insulated pipe elbows in the chiller building area.

## BULK SAMPLING RESULTS

| SAMPLE NO. | LOCATION | RESULTS |
|---|---|---|
| 01 | Basement Fireproofing | 25% |
| 02 | Basement Fireproofing | 7% |
| 03 | Basement Fireproofing | 9% |
| 04 | Basement Ceiling Tile | 0% |
| 05 | 1st Floor - Fireproofing | 8% |
| 06 | 1st Floor - Fireproofing | 8% |
| 07 | 1st Floor - Fireproofing | 6% |
| 08 | 1st Floor - Ceiling Tile | 0% |
| 09 | 2nd Floor - Fireproofing | 7% |
| 10 | 2nd Floor - Fireproofing | 9% |
| 11 | 2nd Floor - Fireproofing | 9% |
| 12 | 3rd Floor - Fireproofing | 8% |
| 13 | 3rd Floor - Fireproofing | 9% |
| 14 | 3rd Floor - Fireproofing | 6% |
| 15 | Chiller Building - Elbows | 0% |
| 16 | 4th Floor - Fireproofing | 5% |
| 17 | 4th Floor - Fireproofing | 6% |
| 18 | 4th Floor - Fireproofing | 6% |

-9-

PIS 4010046

BUILDING 2600
(continued)

AIR SAMPLING RESULTS

| SAMPLE NO. | LOCATION | RESULTS (fibers/cc) |
|---|---|---|
| 18 | 4th Floor Background | 0.006 |
| 19 | 3rd Floor Background | 0.006 |
| 20 | Basement Background | 0.006 |
| 21 | 1st Floor Background | 0.007 |
| 22 | 2nd Floor Background | 0.006 |

LOCATION OF ASBESTOS MATERIAL

| AREA | TYPE | LOCATION |
|---|---|---|
| Basement, Floors 1 - 4 | Fireproofing | Throughout Floors |
| Chiller Mech Room | Pipe Elbows | Piping |
| Ground Level | Transite | Cooling Tower |

-10-

PIS 4010047

**Halliwell Backup for Century Center Complex**

**Date**                                    **Description**

                    **2200 Century Center Drawings**

Drawings of Century Center I ground floor through the 10th floor

**2600 Century Center Drawings**

Drawings of Century Center II

**4/86 BCM Survey**

4/28/86              Asbestos Survey Report for Prudential Insurance Company, Century Center Complex prepared by BCM Converse

**Century Center Inspection 2**

Jack Halliwell Photo Log

**2200 Century Center Ground Floor Cost File (before sale) – Suite 30**

8/21/87              Central Jersey Coatings Invoice in the amount of $6,564 for asbestos removal and replacement of the 2200 Building ground floor Suite 30, 9th floor partial suite

**10th Fl. Project File (2200)**

2/88                 Project specifications, general terms and conditions 2200 Century Center prepared by ATEC Environmental Services

3/15/88              Letter from ATEC Associates to Property Management Systems re: 10th floor and penthouse asbestos abatement, 2200 Building, Century Center

3/21/88              Century Center 2200 Building Mandatory Pre-Bid Meeting Minutes

4/20-5/25/88         Century Center Progress Meeting Minutes

5/19/88              Letter from ATEC Associates to Asbestos Abatement Technology re: Century Center Certification of Substantial Completion

5/27/88              Letter from Geo Environmental Services to Asbestos Abatement Technology re: air monitoring and air sample analysis, 2200 Century Tower, 10th floor

| **Date** | **Description** |
|---|---|
| 4/16-5/14/88 | ATEC Associates Project Inspection Reports for 2200 Century Center |

**Century Center O&M, 2200 and 2600**

| | |
|---|---|
| 4/29/88 | ATEC Associates Invoice No. 3204609 in the amount of $3,510 |
| 11/30/87 | BCM Converse Invoice No. 11-1486 in the amount of $840.28 |
| 11/30/87 | BCM Converse Invoice No. 11-1410 in the amount of $900.75 |
| 3/31/88 | BCM Converse Invoice No. 3-463 in the amount of $593.76 |
| 3/31/88 | BCM Converse Invoice No. 3-465 in the amount of $2,092.05 |
| 4/29/88 | BCM Converse Invoice No. 4-501 in the amount of $1,148.71 |
| 3/29/88 | BCM Converse letter to Prudential enclosing Invoice 4-501 |
| 12/1/87 | BCM Converse letter to Property Management Systems re: Century Center – Construction Surveillance and Industrial Hygiene Services from 11/7-11/8/87 for the asbestos abatement at Century Center |
| 8/13/87 | Letter from BCM Converse to Prudential re: Air Monitoring and O&M |
| 11/10/87 | Letter from BCM Converse to Property Management Systems re: O&M Training Respirator Fit Tests |
| 1/29/88 | BCM Converse Invoice No. 1-155 in the amount of $2,362.50 |
| 1/27/88 | BCM Converse letter to Prudential re: Century Center enclosing copies of BCM invoices |
| 12/4/87 | BCM Converse letter to Prudential re: Century Center enclosing invoices |
| 11/2/89 | Westinghouse Environmental & Geotechnical Services Invoice G17982 in the amount of $588.87 |
| 1/4/88 | Letter from ATEC Associates to Property Management Systems re: proposal to provide industrial hygiene services, 2200 and 2600 Buildings, Century Center |
| 1/27/88 | Letter from Property Management Systems to Prudential recommending acceptance of ATEC Associates proposal |

2

| Date | Description |
|------|-------------|

**2200 Century Center 10th Floor Civil Suit**

| | |
|------|-------------|
| 1/23/91 | Memorandum re: Asbestos-Containing Materials, 2200 Century Parkway Building, 10th floor |
| 1/9/92 | Memorandum re: 2200 Century Parkway Building, 10th floor ACM Cleanup |
| 1/30/91 | Memorandum re: 2200 Century Parkway, 10th floor Asbestos Cleanup |

**2200 Century Center Sales Agreement**

| | |
|------|-------------|
| 1/20/88 | Letter from Property Management Systems to Prudential re: Asbestos Abatement, 2200 and 2600 Buildings, Century Center, Atlanta, Georgia enclosing preliminary numbers |
| | Property Strategy, Century Center I |
| 7/11/88 | Memo re: proposed sale structure for Century Center |
| 7/28/88 | Agreement for Purchase and Sale (general account) by and between Prudential and Century Center Group |
| 8/16/89 | Letter from White & Associates Real Estate to Prudential re: Removal Fund Allocation 2200 Century Center Building – ground floor |
| | Asbestos abatement 2200 Building, Century Center |
| 10/10/90 | White & Associates Real Estate letter to Prudential re: Removal Fund Allocation – final request 2200 Century Parkway Building, Atlanta, Georgia |

**2200 Century Center Ground Floor Cost File (before sale) Mechanical Room**

| | |
|------|-------------|
| 11/12/87 | Central Jersey Coatings Invoice in the amount of $4,862 for asbestos removal and replacement at 2200 Century Boulevard mechanical chiller room |
| 2/12/88 | BCM Converse letter to Prudential re: Century Center enclosing Invoice No. 1-154 in the amount of $954.26 |
| 4/29/88 | BCM Converse letter to Prudential re: HVAC Emergency Services enclosing Invoice No. 4-501 in the amount of $1,148.71 |

3

| Date | Description |
|------|-------------|
| 11/18/87 | Letter from Asbestos Abatement Services to Property Management Systems enclosing results of analysis for air samples collected during the asbestos abatement project at 2200 Century Boulevard |

**Century Center Inspection 1**

Photographs and Jack Halliwell Photo Log

**2200 Century Center Suite 750 (before sale) Cost File**

| Date | Description |
|------|-------------|
| 2/25/88 | Central Jersey Coatings Invoice No. 8802-011 in the amount of $22,263 for asbestos work done on Suite 750 |
| 3/18/88 | Swofford & Co. Invoice No. 0549 in the amount of $4,762.70 for drywall due to abatement |
| 1/5/88 | Letter from Central Jersey Coatings to PMS White Associates re: asbestos abatement and re-fireproofing Suite 750, 2200 Building |
| 1/29/88 | Prudential proposal to Property Management Systems for asbestos removal |

**Century Center (2200) 10th Floor (before sale) Cost File**

| Date | Description |
|------|-------------|
| 4/28/88 | Letter from ATEC Associates to Property Management Systems re: AAT Payment Request No. 1 for 2200 Century Center asbestos abatement in the amount of $46,564.20 |
| 5/19/88 | Letter from ATEC Associates to Property Management Systems re: AAT Payment Request No. 2 for 2200 Century Center asbestos abatement – request for $41,523.30 |
| 1/29/88 | ATEC Associates Invoice No. 3203841 in the amount of $1,830.90 |
| 2/29/88 | ATEC Associates Invoice No. 3204073 in the amount of $6,631.25 |
| 4/29/88 | ATEC Associates Invoice No. 3204599 in the amount of $5,661.63 |
| 5/31/88 | ATEC Associates Invoice No. 3201866 in the amount of $10,713.05 |
| 6/30/88 | ATEC Associates Invoice No. 3205100 in the amount of $1,318 |
| 6/28/88 | Swofford & Co. Invoice No. 0606 in the amount of $2,375 |

| Date | Description |
|------|-------------|
| 3/22/88 | Property Management Systems 1 order for approval of $7,546.65 to ATEC Associates Air Monitoring |
| 4/5/88 | Prudential Proposal for Asbestos Abatement Technology with the Brand Companies and DPC General Contractors |
| 4/13/88 | Agreement between Asbestos Abatement Technology, Inc. and Property Management Systems, agent for Prudential |
| | 2200 Century Center Bid Matrix |
| 3/15/88 | ATEC Associates letter to Property Management Systems re: 10th floor and penthouse asbestos abatement |
| 3/30/88 | ATEC Environmental Services letter to Property Management Systems re: bid review and award recommendation to Century Center 10th floor |
| 2/3/88 | Letter from General Contractors, Inc. to ATEC Associates re: 2200 Century Center 10th floor proposal for removal of asbestos-containing fireproofing |
| 2/29/88 | Letter from ATEC Associates to Property Management Systems re: 10th floor asbestos abatement, 2200 Building, Century Center |
| 5/16/88 | Letter from Asbestos Abatement Technology, Inc. to ATEC Environmental Services re: 10th floor, 2200 Century Center asbestos abatement |
| 5/19/88 | Letter from ATEC Associates to Asbestos Abatement Technology re: Century Center certification of substantial completion |
| | **2600 Century Center, Suite 405 (before sale) Cost File** |
| 9/23/87 | Central Jersey Coatings Invoice in the amount of $5,618 for asbestos removal, 2600 Building, Suite 450 |
| | **2600 Century Center Sales Agreement** |
| 7/28/88 | Agreement for Purchase and Sale by and between Prudential and Century Center I |
| | **Fund Disbursement Requests, Century Center (2200 and 2600)** |
| | Century Center Asbestos Abatement Program Financial Summary Report |

| Date | Description |
|------|-------------|
| 5/4/89 | Letter from White & Associates Real Estate to Prudential re: Removal Fund Allocation, 2200 and 2600 Century Parkway Buildings, Atlanta, Georgia – request for disbursement of $344,061.80 |
| 3/23/89 | Prudential letter re: Century Center Asbestos Abatement Program – approval of contractors |
| 4/27/90 | Letter from White & Associates Real Estate to Prudential re: Removal Fund Allocation, 2600 Century Parkway – 4th floor, Atlanta, Georgia – request for disbursement of $585,636.22 |
| 8/16/89 | Letter from White & Associates Real Estate to Prudential re: Removal Fund Allocation, 2200 Century Center Building – ground floor, Atlanta, Georgia – request for disbursement of $321,045.90 |
| 6/13/89 | Letter from White & Associates Real Estate to Prudential re: Removal Fund Allocation, 2600 Century Center Building – basement and 1st floor, Atlanta, Georgia – request for disbursement of $629,951.34 |
| 5/25/90 | Letter from White & Associates Real Estate to Prudential re: Removal Fund Allocation, 2600 Century Parkway – 2nd through 4th floor stairwells, Atlanta, Georgia – request for disbursement of $30,000 |
| 5/23/90 | Prudential letter to White & Associates re: 2600 Century Parkway, 4th floor enclosing check in the amount of $365,636.22 |
| 11/28/89 | Letter from White & Associates Real Estate to Prudential re: Removal Fund Allocation, 2200 Century Center Building – ground floor electrical room, Atlanta, Georgia – request for disbursement of $23,016 |
| 3/22/90 | Letter from White & Associates Real Estate to Prudential re: Removal Fund Allocation, 2200 Century Parkway – 1st floor, Atlanta, Georgia – request for disbursement of $331,561.80 |
| 1/30/90 | Letter from White & Associates Real Estate to Prudential re: Removal Fund Allocation, 2200 Century Parkway – 2nd and 7th floors, Atlanta, Georgia – request for disbursement of $580,645.60 |
| 6/28/90 | Letter from White & Associates Real Estate to Prudential re: Removal Fund Allocation, 2200 Century Parkway – 3rd floor, Atlanta, Georgia – request for disbursement of $331,561.80 |

| <u>Date</u> | <u>Description</u> |
|---|---|
| 7/12/90 | Letter from White & Associates Real Estate to Prudential re: Removal Fund Allocation, 2200 Century Parkway – 4th floor, Atlanta, Georgia – request for disbursement of $331,561.80 |
| 10/25/89 | Letter from White & Associates Real Estate to Prudential re: Removal Fund Allocation, 2200 Century Center Building – 5th floor, Century Center Office Park, Atlanta, Georgia – request for disbursement of $319,061.80 |
| 12/18/89 | Letter from White & Associates Real Estate to Prudential re: Removal Fund Allocation, 2200 Century Parkway – 6th floor, Atlanta, Georgia – request for disbursement of $319,061.80 |
| 2/13/89 | Letter from White & Associates Real Estate to Prudential re: Disbursement Request from Removal Fund – 8th floor, 2200 Century Parkway, Atlanta, Georgia requesting disbursement of $377,038 |
| 5/15/89 | Prudential letter to White & Associates enclosing first payment in the amount of $344,061.80 for the Asbestos Removal Fund |
| 5/15/89 | Memo re: revision of payment amount on Century Center loan, 2200 Building |
| 3/23/89 | Prudential letter to White & Associates re: Disbursement Request from Removal Fund – 8th floor, 2200 Century Parkway |
| 8/6/90 | Affidavit of Roderick T. White for the benefit of Prudential to induce Prudential to disburse the amount of $194,061.80 from the Removal Fund |
| 8/15/90 | Letter from White & Associates Real Estate to Prudential re: Notification of friable asbestos-containing materials still remaining on the 10th floor of the 2200 Century Parkway Building |
| 10/12/90 | Letter from White & Associates Real Estate to Prudential re: 2200 Century Parkway – 10th floor, Century Center Office Park, Atlanta, Georgia – update on status of removal of friable asbestos-containing materials remaining on the 10th floor |
| 2/14/90 | Letter from White & Associates to Prudential re: Removal Fund Allocation, 2200 Century Park Building, Century Center Office Park, Atlanta, Georgia – request for supplementary disbursement of $37,500 |
| 3/23/90 | Letter from White & Associates to Prudential re: Removal Fund Submittals, 2200 Century Parkway – floors 2, 3, 6 and 7, Century Center Office Park, Atlanta, Georgia – Change Order 2 |

| Date | Description |
|------|-------------|
| 5/25/90 | Letter from White & Associates Real Estate to Prudential re: Removal Fund Submittals, 2200 Century Parkway – 3rd, 4th and 9th floors and 1st through 9th stairwells, Century Center Office Park, Atlanta, Georgia |

Removal Fund 2200 Closing Documents

**Removal Fund Final Payments – 2600 Century Center**

Printout re: asbestos abatement, 2600 Building, Century Center – disbursement of abatement total of $2,416,860

| Date | Description |
|------|-------------|
| 6/13/90 | Letter from White & Associates Real Estate to Prudential re: Removal Fund Allocation Final Request, 2600 Century Parkway Building, Atlanta, Georgia – request for final disbursement in the amount of $250,000 |
| 6/7/90 | Prudential letter to White & Associates re: Asbestos Removal Fund Final Disbursement |
| 5/25/90 | Letter from White & Associates Real Estate to Prudential enclosing information relating to the Removal Fund |

**2200 Century Center Removal Fund Final Payment**

Printout re: asbestos abatement 2200 Building, Century Center – general disbursement $3,383,140

| Date | Description |
|------|-------------|
| 10/10/90 | Letter from White & Associates to Prudential re: Removal Fund Allocation Final Request, 2200 Century Parkway Building, Atlanta, Georgia – request for final disbursement in the amount of $250,000 |

3252503.01

8

RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP,
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962-1981
(973) 538-0800
Robert J. Gilson (RG 6618)

Attorneys for The Prudential Insurance Company of America

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:** | Chapter 11 |
| **W.R. GRACE & CO., et al.,** | Case No. 01-01139 (JKF)<br>(Jointly Administered) |
| **Debtors.** | |

## ADDENDUM TO PROOF OF CLAIM OF PRUDENTIAL INSURANCE COMPANY OF AMERICA FOR:

## CENTURY CENTER I
## 2200 CENTURY PARKWAY
## ATLANTA, GEORGIA 30345

## VOLUME II OF II



MATERIALS
ANALYTICAL
SERVICES

June 27, 1990

Re:    Century Center I
       Atlanta, Georgia

Based on the constituent analysis of the fireproofing
samples for the above-referenced project, it is my
opinion that the samples analyzed are Mono-Kote 3,
which was manufactured by W. R. Grace.

Worksheets reflecting our analysis are attached.

William E. Longo, Ph.D.

PIS 00060565

3597 Parkway Lane • Suite 250
Norcross, Georgia 30092
(404) 448-3200    FAX (404) 368-8256

BUILDING:        Century Center I
                 Atlanta, Georgia

The following bulk samples from the above-referenced buildings
were analyzed and were used to form an opinion of the manufactur-
er and product.

| Bulk Sample # | Sample Location | Collected By |
|---|---|---|
| 1 | 10th Floor Bath | McCrone |
| 3 | 8th Floor | McCrone |
| 4 | 7th Floor | McCrone |
| 5 | 6th Floor | McCrone |
| 6 | 5th Floor | McCrone |
| 7 | 4th Floor, West Hall | McCrone |
| 8 | 3rd Floor | McCrone |
| 9 | 2nd Floor | McCrone |
| 10 | 1st Floor | McCrone |
| 11 | Ground Floor | McCrone |

MATERIALS ANALYTICAL SERVICES, INC.

BULK ANALYSIS SHEET

Project # - Spl #: _M1565-1_                                    Date: _9/23/88_

Project Name: _LAW ASSOCIATES /HATFIELD_          Analyst: _W.B.E._
                                                                          Reviewer: _____

Sample Identification: _A88-120.18    CENTURY CENTER COMPLEX, 2200 BUILDING._
_____ _10TH FLOOR BATH._

Gross Visual Description: _TAN TO LIGHT GRAY MATRIX WITH GOLD FLAKES_
_THROUGHOUT. FINE FIBERS EXPOSED._

| ASBESTOS MINERALS: | Est. Vol. % |
|---|---|
| Chrysotile . . . . . . . . . . . | ~~10~~ 9 |
| Amosite . . . . . . . . . . . | |
| Crocidolite . . . . . . . . . . . | |
| Tremolite/Actinolite . . . . . | |
| Anthophyllite . . . . . . . . | |

OTHER FIBROUS COMPONENTS:

| | |
|---|---|
| Mineral/Rock wool . . . . . . | |
| Fibrous glass . . . . . . . . | |
| Cellulose . . . . . . . . . . | _TR_ |
| Synthetic . . . . . . . . . . | |
| Talc . . . . . . . . . . . . | |

NON-FIBROUS COMPONENTS:

| | |
|---|---|
| Perlite . . . . . . . . . . . | |
| Vermiculite . . . . . . . . . | _39_ |
| Mica . . . . . . . . . . . . | |
| Quartz . . . . . . . . . . . | |
| Calcite . . . . . . . . . . . | |
| Gypsum . . . . . . . . . . . | |
| Diatoms . . . . . . . . . . . | |
| Other _GRANULAR MINERALS_ | _TR_ |
| Binders . . . . . . . . . . . | _52_ |

_PREDOMINANTLY GYPSUM. SMALL AMOUNTS OF CARBONATE._

EFFERVESCENCE: _VERY WEAK_

COMMENTS:
_IODINE STARCH TEST NEGATIVE ORANGE COLOR._

MATERIALS ANALYTICAL SERVICES, INC.

BULK ANALYSIS SHEET

Project # - Spl #: _M1565-3_        Date: _9/23/88_

Project Name: _LAW ASSOCIATES/HATFIELD_    Analyst: _W.B.E._
                                                   Reviewer: ___

Sample Identification: _A88-120.18  #3 FROM 2200 BUILDING OF CENTURY_

_CENTER COMPLEX, 8TH FLOOR, SW. QUADRANT._

Gross Visual Description: _TAN TO LIGHT GRAY MATRIX WITH GOLD FLAKES._

_FINE FIBERS EXPOSED._

**ASBESTOS MINERALS:**             Est. Vol. %

Chrysotile . . . . . . . . . . : _8_
Amosite . . . . . . . . . . : ___
Crocidolite . . . . . . . . : ___
Tremolite/Actinolite . . . . : ___
Anthophyllite . . . . . . . : ___

OTHER FIBROUS COMPONENTS:

Mineral/Rock wool . . . . . . : ___
Fibrous glass . . . . . . . : ___
Cellulose . . . . . . . . . : ___
Synthetic . . . . . . . . . : ___
Talc . . . . . . . . . . . : ___

NON-FIBROUS COMPONENTS:

Perlite . . . . . . . . . : ___
Vermiculite . . . . . . . . : _40_
Mica . . . . . . . . . . . : ___
Quartz . . . . . . . . . . : ___
Calcite . . . . . . . . . : ___
Gypsum . . . . . . . . . . : ___
Diatoms . . . . . . . . . : ___
Other _GRANULAR MINERALS_ : _TR_

Binders . . . . . . . . . . . : _52_
_GYPSUM PREDOMINATES, SMALL AMOUNT OF CARBONATE._

EFFERVESCENCE: _VERY WEAK IN ISOLATED AREAS._

COMMENTS:

_____

# MATERIALS ANALYTICAL SERVICES, INC.

## BULK ANALYSIS SHEET

Project # - Spl #: _M1565-4_                          Date: _9/23/88_

Project Name: _LAW ASSOCIATES/HATFIELD_      Analyst: _W.B.E._
                                                                        Reviewer: _____

Sample Identification: _A88-120.18  #4 FROM 2200 BUILDING OF CENTURY_

_CENTER COMPLEX.  7TH FLOOR  NE. QUADRANT_

Gross Visual Description: _TAN TO LIGHT GRAY WITH GOLD FLAKES THROUGHOUT._

_FINE FIBERS EXPOSED._

ASBESTOS MINERALS:                    Est. Vol. %

Chrysotile . . . . . . . . . : . . _8_
Amosite . . . . . . . . . : . . _____
Crocidolite . . . . . . . . : . . _____
Tremolite/Actinolite . . . : . . _____
Anthophyllite . . . . . . . . : . _____

OTHER FIBROUS COMPONENTS:

Mineral/Rock wool . . . . . . . : . _____
Fibrous glass . . , . . . . . : . _____
Cellulose . . . . . . . . . . : . _____
Synthetic . . . . . . . . . . : . _____
Talc . . . . . . . . . . . . : . _____

NON-FIBROUS COMPONENTS:

Perlite . . . . . . . . . . : . _____
Vermiculite . . . . . . . . : . _33_
Mica . . . . . . . . . . . . : . _____
Quartz . . . . . . . . . . . : . _____
Calcite . . . . . . . . . . . : . _____
Gypsum . . . . . . . . . . . : . _____
Diatoms . . . . . . . . . . : . _____
Other _GRANULAR MINERALS_ . . _TR_

Binders . . . . . . . . . . . : . _59_
_GYPSUM DOMINANT, SMALL AMOUNT OF CARBONATE._

EFFERVESCENCE; _VERY WEAK_

COMMENTS:

_____

_____

## MATERIALS ANALYTICAL SERVICES, INC.

### BULK ANALYSIS SHEET

Project # - Spl #: _M/565-5_                    Date: _9/23/88_

Project Name: _LAW ASSOCIATES/HATFIELD_        Analyst: _V.B.E._
                                               Reviewer: _____

Sample Identification: _A88-126.18    #5 FROM 2200 BUILDING OF CENTURY_

_CENTER COMPLEX    6TH FLOOR  N.W. QUADRANT_

Gross Visual Description: _TANNISH LIGHT GRAY WITH GOLD FLAKES_

_THROUGHOUT THE MATRIX. FIBERS EXPOSED._

ASBESTOS MINERALS:                    Est. Vol. %

Chrysotile . . . . . . . . . . .    _9_
Amosite . . . . . . . . . . . .     _____
Crocidolite . . . . . . . . . .     _____
Tremolite/Actinolite . . . . .      _____
Anthophyllite . . . . . . . .       _____

OTHER FIBROUS COMPONENTS:

Mineral/Rock wool . . . . . . .     _____
Fibrous glass . . . . . . . .       _____
Cellulose . . . . . . . . . .       _____
Synthetic . . . . . . . . . .       _____
Talc . . . . . . . . . . . .        _____

NON-FIBROUS COMPONENTS:

Perlite . . . . . . . . . . .       _____
Vermiculite . . . . . . . . .       _35_
Mica . . . . . . . . . . . . .      _____
Quartz . . . . . . . . . . . .      _____
Calcite . . . . . . . . . . .       _____
Gypsum . . . . . . . . . . . .      _____
Diatoms . . . . . . . . . . .       _____
Other  ⌐⌐⌐                          _____

Binders . . . . . . . . . . .       _56_
_ABUNDANT GYPSUM, SLIGHT AMOUNT OF CARBONATE_

EFFERVESCENCE; _VERY WEAK_

COMMENTS:

_____

_____

MATERIALS ANALYTICAL SERVICES, INC.

BULK ANALYSIS SHEET

Project # - Spl #: _M1565-6_                    Date: _9/23/8V_

Project Name: _LAW ASSOCIATES/HATFIELD_        Analyst: _N.B.E._
                                               Reviewer: _____

Sample Identification: _A88-120.18  #6 FROM 2200 BUILDING OF CENTORY_

_CENTER COMPLEX    5TH FLOOR, N.W. QUADRANT._

Gross Visual Description: _LIGHT GRAY TO TAN  WITH SMALL GOLD FLAKES_

_THROUGHOUT.  FIBERS EXPOSED._

ASBESTOS MINERALS:              Est. Vol. %

Chrysotile . . . . . . . . . .    _8_
Amosite . . . . . . . . . . .   _____
Crocidolite . . . . . . . . .   _____
Tremolite/Actinolite . . . . .  _____
Anthophyllite . . . . . . . .   _____

OTHER FIBROUS COMPONENTS:

Mineral/Rock wool . . . . . .   _____
Fibrous glass . . . . . . . .   _____
Cellulose . . . . . . . . . .   _____
Synthetic . . . . . . . . . .   _____
Talc . . . . . . . . . . . .    _____

NON-FIBROUS COMPONENTS:

Perlite . . . . . . . . . . .   _____
Vermiculite . . . . . . . . .   _33_
Mica . . . . . . . . . . . .    _____
Quartz . . . . . . . . . . .    _____
Calcite . . . . . . . . . . .   _____
Gypsum . . . . . . . . . . .    _____
Diatoms . . . . . . . . . . .   _____
Other . . . . . . . . . . .     _____

Binders . . . . . . . . . . .   _59_
_ABUNDANT GYPSUM, SMALL CARBONATE AMOUNT._

EFFERVESCENCE: _VERY WEAK_

COMMENTS:

_____

MATERIALS ANALYTICAL SERVICES, INC.

BULK ANALYSIS SHEET

Project # - Spl #: _M1565-7_                    Date: _9/23/88_

Project Name: _LAW ASSOCIATES/HATFIELD_           Analyst: _W.B.E._
                                                  Reviewer: _____

Sample Identification: _A88-120.18   #7 FROM 2200 BUILDING OF_

_CENTURY CENTER COMPLEX, 4TH FLOOR, WEST HALL._

Gross Visual Description: _TAN TO LIGHT GRAY, WITH GOLD FLAKES_

_THROUGHOUT. FIBERS EXPOSED._

| ASBESTOS MINERALS: | Est. Vol. % |
|---|---|
| Chrysotile . . . . . . . . . . . | _8_ |
| Amosite . . . . . . . . . . . | |
| Crocidolite . . . . . . . . . . . | |
| Tremolite/Actinolite . . . . . | |
| Anthophyllite . . . . . . . . . | |

OTHER FIBROUS COMPONENTS:

| | |
|---|---|
| Mineral/Rock wool . . . . . . . | |
| Fibrous glass . . . . . . . . | |
| Cellulose . . . . . . . . . | |
| Synthetic . . . . . . . . . . | |
| Talc . . . . . . . . . . . | |

NON-FIBROUS COMPONENTS:

| | |
|---|---|
| Perlite . . . . . . . . . | |
| Vermiculite . . . . . . . . . | _40_ |
| Mica . . . . . . . . . . . | |
| Quartz . . . . . . . . . . | |
| Calcite . . . . . . . . . | |
| Gypsum . . . . . . . . . | |
| Diatoms . . . . . . . . . | |
| Other | |

Binders . . . . . . . . . . . _52_
_GYPSUM IS VERY ABUNDANT. SOME CARBONATE PRESENT._

EFFERVESCENCE: _VERY WEAK_

COMMENTS:

## MATERIALS ANALYTICAL SERVICES, INC.

### BULK ANALYSIS SHEET

Project # - Spl #: _M1565-8_     Date: _9/23/88_

Project Name: _LAW ASSOCIATES/HATFIELD_     Analyst: _W.B.E._
                            Reviewer: _____

Sample Identification: _A88-120.18 #8 FROM 2200 BUILDING OF CENTURY CENTER COMPLEX. 3RD FLOOR S.W. QUADRANT._

Gross Visual Description: _LIGHT GRAY WITH GOLD FLAKES, FIBERS EXPOSED FROM MATRIX._

ASBESTOS MINERALS:        Est. Vol. %

Chrysotile . . . . . . . . . . _9_
Amosite . . . . . . . . . . . _____
Crocidolite . . . . . . . . . _____
Tremolite/Actinolite . . . . . _____
Anthophyllite . . . . . . . . _____

OTHER FIBROUS COMPONENTS:

Mineral/Rock wool . . . . . . _____
Fibrous glass . . . . . . . . _____
Cellulose . . . . . . . . . . _____
Synthetic . . . . . . . . . . _____
Talc . . . . . . . . . . . . _____

NON-FIBROUS COMPONENTS:

Perlite . . . . . . . . . . . _____
Vermiculite . . . . . . . . . _40_
Mica . . . . . . . . . . . . _____
Quartz . . . . . . . . . . . _____
Calcite . . . . . . . . . . . _____
Gypsum . . . . . . . . . . . _____
Diatoms . . . . . . . . . . . _____
Other . . . . . . . . . . . . _____

Binders . . . . . . . . . . . _51_
_PREDOMINATELY GYPSUM, SMALL CARBONATE PERCENTAGE, TRACE OF OTHER GRANULAR MINERALS_

EFFERVESCENCE: _VERY WEAK_

COMMENTS:

## MATERIALS ANALYTICAL SERVICES, INC.

### BULK ANALYSIS SHEET

Project # - Spl #: _M 1565-9_     Date: _9/26/88_

Project Name: _LAW ASSOCIATES/HATFIELD_     Analyst: _W.B.E._
Reviewer: ___

Sample Identification: _A88-120.18   #9 FROM 2200 BUILDING OF CENTURY_

_CENTER COMPLEX.   2ND FLOOR ABOVE LADIES ROOM._

Gross Visual Description: _TAN TO LIGHT GRAY MATRIX WITH GOLD FLAKES_

_THROUGH OUT.  FINE FIBERS EXPOSED._

ASBESTOS MINERALS:     Est. Vol. %

Chrysotile . . . . . . . . . . . _7_
Amosite . . . . . . . . . . . . :
Crocidolite . . . . . . . . . . :
Tremolite/Actinolite . . . . . :
Anthophyllite . . . . . . . . . :

OTHER FIBROUS COMPONENTS:

Mineral/Rock wool . . . . . . .
Fibrous glass . . . . . . . . .
Cellulose . . . . . . . . . . .
Synthetic . . . . . . . . . . .
Talc . . . . . . . . . . . . . .

NON-FIBROUS COMPONENTS:

Perlite . . . . . . . . . . . .
Vermiculite . . . . . . . . . . _3 8_
Mica . . . . . . . . . . . . . .
Quartz . . . . . . . . . . . . .
Calcite . . . . . . . . . . . .
Gypsum . . . . . . . . . . . . .
Diatoms . . . . . . . . . . . .
Other

Binders . . . . . . . . . . . _55_
_PREDOMINANTLY GYPSUM, SOME CARBONATE PRESENT IN SMALL AMOUNTS_

EFFERVESCENCE: _VERY WEAK_

COMMENTS:

## MATERIALS ANALYTICAL SERVICES, INC.

### BULK ANALYSIS SHEET

Project # - Spl #: _M1565-10_      Date: _9/26/88_

Project Name: _LAW ASSOCIATES/HATFIELD_      Analyst: _W.D.C._
Reviewer: _____

Sample Identification: _A88-120.18 · #10 FROM BUILDING 2200 IN CENTURY_
_CENTER COMPLEX. 1ST FLOOR ABOVE LADIES RESTROOM._

Gross Visual Description: _TAN TO LIGHT GRAY MATRIX WITH GOLD FLAKES_
_THROUGHOUT. FIBERS EXPOSED FROM MATRIX._

**ASBESTOS MINERALS:**      Est. Vol. %

| | |
|---|---|
| Chrysotile . . . . . . . . . . | _8_ |
| Amosite . . . . . . . . . . | ___ |
| Crocidolite . . . . . . . . | ___ |
| Tremolite/Actinolite . . . . | ___ |
| Anthophyllite . . . . . . . . | ___ |

**OTHER FIBROUS COMPONENTS:**

| | |
|---|---|
| Mineral/Rock wool . . . . . . . | ___ |
| Fibrous glass . . . . . . . | ___ |
| Cellulose . . . . . . . . | ___ |
| Synthetic . . . . . . . . . | ___ |
| Talc . . . . . . . . . . . | ___ |

**NON-FIBROUS COMPONENTS:**

| | |
|---|---|
| Perlite . . . . . . . . . | ___ |
| Vermiculite . . . . . . . . | _39_ |
| Mica . . . . . . . . . . . | ___ |
| Quartz . . . . . . . . . . | ___ |
| Calcite . . . . . . . . . | ___ |
| Gypsum . . . . . . . . . . | ___ |
| Diatoms . . . . . . . . . | ___ |
| Other | ___ |

Binders . . . . . . . . . . _53_
_GYPSUM PREDOMINATES, CARBONATE PRESENT IN SMALL AMOUNT, GRANULAR MINERALS._

EFFERVESCENCE: _VERY WEAK_

COMMENTS: _____

MATERIALS ANALYTICAL SERVICES, INC.

BULK ANALYSIS SHEET

Project # - Spl #: _M 1565-11_          Date: _9/26/11_

Project Name: _LAW ASSOCIATES / HATFIELD_       Analyst: _H·B·C·_
                                                 Reviewer: _____

Sample Identification: _A88-120.18    #11 FROM 2200 BUILDING OF_

_CENTURY CENTER COMPLEX.    ~~ of ~~ GROUND FLOOR, NORTHEAST QUADRANT_

Gross Visual Description: _LIGHT GRAY TO TAN MATRIX WITH GOLD FLAKES_

_THROUGHOUT. FINE FIBERS EXPOSED._

ASBESTOS MINERALS:                Est. Vol. %

Chrysotile . . . . . . . . . .    _7_
Amosite . . . . . . . . . . .     _____
Crocidolite . . . . . . . . .     _____
Tremolite/Actinolite . . . . .    _____
Anthophyllite . . . . . . . .     _____

OTHER FIBROUS COMPONENTS:

Mineral/Rock wool . . . . . . .   _____
Fibrous glass . . . . . . . .     _____
Cellulose . . . . . . . . . .     _____
Synthetic . . . . . . . . . .     _____
Talc . . . . . . . . . . . . .    _____

NON-FIBROUS COMPONENTS:

Perlite . . . . . . . . . .       _____
Vermiculite . . . . . . . . .     _35_
Mica . . . . . . . . . . . .      _____
Quartz . . . . . . . . . . .      _____
Calcite . . . . . . . . . .       _____
Gypsum . . . . . . . . . .        _____
Diatoms . . . . . . . . . .       _____
Other                             _____

Binders . . . . . . . . . .       _58_
_GYPSUM PREDOMINATES, CARBONATE PRESENT IN SMALL PERCENTAGE_

EFFERVESCENCE: _VERY WEAK._

COMMENTS:

_____

_____

# ACID DISSOLUTION
# BULK ANALYSIS

**M.A.S.**
3597 PARKWAY LANE
NORCROSS GA. 30092

ANALYSIS USING 2% SOLUTION HCl

DATE: _W. B. Explan_

| NO. | SAMPLE # | P-D + SAMPLE | P-D - SAMPLE | SAMPLE WEIGHT | FILTER WEIGHT | FINAL WT + FILTER | FINAL WT - FILTER | PERCENT FINAL WT | AMOUNT IN SOLU. |
|---|---|---|---|---|---|---|---|---|---|
| 1 | M1565-1 | 8.8083g | 7.6894g | 1.1194g | 0.0159g | 0.4719g | 0.4568g | 40.8% | 59.2% |
| 2 | | | | | | | | | |
| 3 | | | | | | | | | |
| 4 | | | | | | | | | |
| 5 | | | | | | | | | |
| 6 | | | | | | | | | |
| 7 | | | | | | | | | |
| 8 | | | | | | | | | |
| 9 | | | | | | | | | |
| 10 | | | | | | | | | |
| 11 | | | | | | | | | |
| 12 | | | | | | | | | |
| 13 | | | | | | | | | |
| 14 | | | | | | | | | |
| 15 | | | | | | | | | |
| 16 | | | | | | | | | |
| 17 | | | | | | | | | |
| 18 | | | | | | | | | |
| 19 | | | | | | | | | |
| 20 | | | | | | | | | |
| 21 | | | | | | | | | |
| 22 | | | | | | | | | |
| 23 | | | | | | | | | |
| 24 | | | | | | | | | |
| 25 | | | | | | | | | |
| XX | | | | | | | | | |

MATERIALS ANALYTICAL SERVICES, INC.
3597 PARKWAY LANE, SUITE 250
NORCROSS, GA 30092
404/448-3200

TEM ANALYSIS: Binder

MAS SAMPLE ID: M-1565-1

PROJECT: A68-12018

SAMPLE NUMBER: Century Tower

DATE OF ANALYSIS: 11-25-85

ANALYST: WC

| | Rel. Conc. | Morphology | Photo | SAED | Photo | EDS | Disc/File | Comments |
|---|---|---|---|---|---|---|---|---|
| **Asbestos Minerals:** | | | | | | | | |
| Chrysotile | | ✓ | | ✓ | | ✓ | | Printout |
| **Other Components:** | | | | | | | | |
| Gypsum | | ✓ | | ✓ | | ✓ | | Printout |
| Vermiculite | | ✓ | | ✓ | photo | ✓ | | Printout |
| | | | | | q=500m | | | |

**COMMENTS:**

PIS 00060578

MATERIALS ANALYTICAL SERVICES         FRI 25-NOV-88   09:54
Cursor: 7.340keV = 43      ROI (SIKα) 1.660: 1.820=1013

0.000      B- 5                    VFS = 512    10.240
39      M1565-1 CHRYSOTILE

PIS 00060579

MATERIALS ANALYTICAL SERVICES          FRI 25-NOV-88   10:00
Cursor: 7.340keV = 15          ROI (SIKα) 1.660: 1.820=323



0.000      B- 5                          VFS = 2048    10.240
24        M1565-1 GYPSUM

PIS 00060580

MATERIALS ANALYTICAL SERVICES          FRI 25-NOV-88   10:14
Cursor: 7.340KeV = 19        ROI (SIKα) 1.660: 1.820=1016



0.000        B- 5                        VFS = 256      10.240
  10      M1565-1 VERMICULITE

PIS 00060581



MATERIALS
ANALYTICAL
SERVICES

ADDITIONAL BULK ANALYSIS

## STARCH VERIFICATION

Sample # *171565-1*                    Analyst *W. B. Egel*

Date *6/26/90*

1) Sample Analyzed before/after acid dissolutions

**Starch observed**                    (no) ✓

                                       yes _____

**Iodine test**                    positive _____
(ceiling tile only)
                                   negative _____

PIS 00060582

3597 Parkway Lane • Suite 250
Norcross, Georgia 30092
(404) 448-3200

# Report on Representative Sampling of Asbestos - Containing Fireproofing

This report has been prepared by Richard L. Hatfield relating to The Prudential Insurance Company of America, et. al. vs. United States Gypsum Company, et. al., Civil Action Nos. 87-4227 and 87-4238 (HAA).

At the request of The Prudential Insurance Company. Law personnel made site visits to Prudential buildings which are the subject of this litigation. Among the purposes for these visits were to confirm the presence, location and homogeneity of the asbestos - containing fireproofing materials and to collect representative samples of the asbestos - containing fireproofing materials. Based on these site visits and other material I have reviewed, I am of the opinion that the samples collected are representative of the asbestos - containing fireproofing found in the buildings.

## 1100 Milam Building, Houston, TX

Law conducted a visual survey of the 1100 Milam Building and collected fireproofing samples in 1989. Our observations and sampling indicates only one type of asbestos - containing fireproofing is located in this building. Eleven representative bulk samples of this material were collected throughout the building. These samples as well as other samples collected by others were submitted to Materials Analytical Services (MAS) for constituent analysis.

## 130 John St. Building, New York, NY

Law conducted a visual survey of the 130 Johns St. Building and collected fireproofing samples in 1988. Our observations and sampling indicates only one type of asbestos - containing fireproofing is located in this building. Three additional representative bulk samples of this material were collected to supplement eight other samples collected by McCrone Environmental. The samples were collected throughout the floors. An additional eight representative bulk samples were collected during a 1991 survey. These samples as well as other samples collected by others were submitted to Materials Analytical Services (MAS) for constituent analysis.

## First Florida Tower, Tampa, FL

Law conducted a visual survey of the First Florida Tower and collected fireproofing samples in 1989. Our observations and sampling indicates only one type of asbestos - containing fireproofing is located in this building. Ten representative bulk samples of this material were collected throughout the building. These samples as well as other samples collected by others were submitted to Materials Analytical Services (MAS) for constituent analysis.

## Century Center Buildings 2200 and 2600. Atlanta, GA

Law conducted a visual survey of the Century Center Buildings 2200 and 2600 and collected fireproofing samples in 1989. Our observations and sampling indicates only one type of

asbestos - containing fireproofing is located in these buildings. Fourteen representative bulk samples of this material were collected throughout the 2200 building and five representative bulk samples were collected from the 2600 building. These samples as well as other samples collected by others were submitted to Materials Analytical Services (MAS) for constituent analysis.

Chatham Center Hyatt in Pittsburgh, PA

Law conducted a visual survey of the Chatham Center Hyatt and collected fireproofing samples in 1988. Our observations and sampling indicated only one type of asbestos - containing fireproofing located on floors ground through ten. Seven representative bulk samples of this material were collected throughout the floors. These samples as well as other samples collected by others were submitted to Materials Analytical Services (MAS) for constituent analysis.

Northland Towers (East & West), Southfield, MI

Law conducted a visual survey of the Northland Towers (East & West) and collected fireproofing samples in 1988. Our observations and sampling indicates only one type of asbestos - containing fireproofing is located in these buildings. Eleven representative bulk samples of this material were collected from the East Tower and sixteen representative samples from the West Tower. The samples were collected throughout each tower. These samples as well as other samples collected by others were submitted to Materials Analytical Services (MAS) for constituent analysis.

Northwest Financial Building, Bloomington, MN

Law conducted a visual survey of the Northwest Financial Building and collected fireproofing samples in 1988. Our observations and sampling indicates only one type of asbestos - containing fireproofing is located in this building. Four additional, representative bulk samples of this material were collected throughout the floors to supplement other representative samples collected by other consultants. These samples as well as other samples collected by others were submitted to Materials Analytical Services (MAS) for constituent analysis.

Pru Plaza, Buildings A & B, Denver, CO

Law conducted a visual survey of the Pru Plaza, Buildings A & B and collected fireproofing samples in 1988. Our observations and sampling indicates only one type of asbestos - containing fireproofing is located in these buildings. Eight representative bulk samples of this material were collected throughout the A building and four representative bulk samples were collected from the B building. These samples as well as other samples collected by others were submitted to Materials Analytical Services (MAS) for constituent analysis.

Southdale Office Complex, Edina, MI

Law conducted a visual survey of the Southdale Office Complex and collected fireproofing samples in 1989. Our observations and sampling indicates only one type of asbestos - containing fireproofing is located in this building. Fourteen representative bulk

Page 2

samples of this material were collected throughout the building. These samples as well as other samples collected by others were submitted to Materials Analytical Services (MAS) for constituent analysis.

## Embarcadero I and II, San Francisco, CA

Law conducted visual surveys of Embarcadero I and II and collected fireproofing samples in 1989. Our observations and sampling indicates only one type of asbestos - containing fireproofing is located in each of these buildings. Four representative bulk samples of the fireproofing material located in Embarcadero I were collected to supplement seven samples previously obtained by McCrone and 20 representative bulk samples were collected throughout Embarcadero II. These samples as well as other samples collected by others were submitted to Materials Analytical Services (MAS) for constituent analysis.

## Renaissance Tower, Dallas, TX

Law conducted a visual survey of the Renaissance Tower and collected fireproofing samples in 1989. Our observations and sampling indicates only one type of asbestos - containing fireproofing is located in this building. Fifteen representative bulk samples of the fireproofing material were collected throughout most of the building. These samples as well as other samples collected by others were submitted to Materials Analytical Services (MAS) for constituent analysis.

## 5 Penn Center, Philadelphia, PA

Law conducted a visual survey the 5 Penn Center building and collected fireproofing samples in 1988. Our observations and sampling indicates only one type of asbestos - containing fireproofing is located in this building. Fifty-one representative bulk samples of the fireproofing material were collected throughout the building. These samples as well as other samples collected by others were submitted to Materials Analytical Services (MAS) for constituent analysis.

## Twin Towers ( Gaslight/North and South), Atlanta, GA

Law conducted a visual survey of the Twin Towers ( Gaslight/North) and collected fireproofing samples in 1988. Our observations and sampling indicates only one type of asbestos - containing fireproofing is located in this building. Twenty-one representative bulk samples of the fireproofing material were collected throughout the building. These samples as well as other samples collected by others were submitted to Materials Analytical Services (MAS) for constituent analysis.

Law conducted a visual survey of the Twin Towers (South Tower) and collected fireproofing samples in 1989. Our observations and sampling indicates only one type of asbestos - containing fireproofing is located in this building. Forty - one representative bulk samples of this material were collected throughout the floors. These samples as well as other

samples collected by others were submitted to Materials Analytical Services (MAS) for
constituent analysis.

## Prudential Plaza, Newark, NJ

Law conducted a visual survey of the Prudential Plaza office building and Mall and
collected two fireproofing samples from the 5th floor of the office building in 1988. Our
observations and sampling indicates only one type of asbestos - containing fireproofing is located
in the office building and a different type of fireproofing in the Mall. Twelve representative bulk
samples of the fireproofing material located in the Mall were collected by K & D asbestos
consultants. These samples as well as other samples collected by others were submitted to
Materials Analytical Services (MAS) for constituent analysis.

## Hunt Valley Marriott, Hunt Valley, MD

During our 1988 site visit one sample representing the chrysotile asbestos - containing
fireproofing was collected. Additionally two samples representing the amosite asbestos -
containing fireproofing were collected by K & D asbestos consultants and were submitted to
Materials Analytical Services (MAS) for constituent analysis.

## Short Hills Office, Short Hills NJ

Two representative samples of fireproofing were collected by K & D asbestos consultants
from the centrally located air handling rooms of the 2nd and the 4th floors of Short Hills Office,
Short Hills NJ. building and were submitted to Materials Analytical Services (MAS) for
constituent analysis.

## Brookhollow, Houston, TX

At the request of The Prudential Insurance Company, four representative samples of fireproofing
were collected by BCM asbestos consultants from the centrally located elevator shafts of the 4th,
5th and 7th floors of Brookhollow, Houston, TX and were submitted to Materials Analytical
Services (MAS) for constituent analysis.


Signed


*Richard L. Hatfield*


Richard L. Hatfield
Corporate Consultant
August, 1996



Page 4