## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In Re:                                    )       Chapter 11
                                          )       Case No. 01-01139(JKF)
W.R. GRACE & Co., et al.                  )
                                          )
          Debtors                         )
                                          )

## APPENDIX TO RESPONSE OF CLAIMANT BUILDING LABORERS LOCAL 310
## TO DEBTORS' FIFTEENTH OMNIBUS OBJECTION TO
## ASBESTOS PROPERTY DAMAGE CLAIMS

Now comes Claimant, Building Laborers Local 310, by and through the undersigned

counsel, and presents the Appendix to its recently filed Response to the Objections filed by

Debtors with respect to Claim #2785 and Claim #879. This appendix was inadvertently not

included with the original response filing.

Respectfully submitted,

ROTATORI, BENDER, GRAGEL, STOPER
     & ALEXANDER CO., L.P.A.
By:    Cara L. Santosuosso (#0069635)
Leader Building, Suite 800
526 Superior Avenue, Cleveland, Ohio 44114
Telephone: (216) 928-1010
csantosuosso@rotatori.com
Counsel for Claimant Laborers Local 310

## CERTIFICATE OF SERVICE

A copy of the foregoing was served by First Class U.S. Mail this _____ day of October, 2005

upon:

David M. Bernick
Michelle Browdy
Janet S. Baer
KIRKLAND & ELLIS, LLP
200 East Randolph Drive
Chicago, IL 60601
Counsel for Debtors

Laura Davis Jones
James E. O'Neill
PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB, P.C.
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
Local Counsel for Debtors

Frank J. Perch
844 King Street
Suite 2313, Lockbox 35
Wilmington, DE 19801
Lead Attorney, United States Trustee

Scott M. Baena
Jay Sakalo
BILZIN, SUMBERG, BAENA, PRICE & AXELROD, LLP
200 S. Biscayne Boulevard, Suite 2500
Miami, FL 33131-5340
Counsel for Official Committee of Asbestos Property Claimants

Lisa L. Coggins
FERRY, JOSEPH & PEARCE, P.A.
824 Market Street
Suite 904
Wilmington, DE 19801
Local Counsel for Official Committee of Asbestos Property Claimants

CARA L. SANTOSUOSSO

An Attorney for Claimant Laborers Local 310



B10 (Official Form 10) (Rev. 10/96)

| UNITED STATES BANKRUPTCY COURT<br>For the District of Delaware | PROOF OF CLAIM |
|---|---|

In re: **W. R. Grace & Co.** | Case Number: 01-01139

NOTE: This claim should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Creditor Name<br>(Person or entity debtor owes)<br>**Building & Construction**<br>**Laborers Local 310** | Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach Copy of statement giving particulars. |
|---|---|
| Address Line 1   **3250 Euclid Avenue** | Check box if you have never received any notices from the bankruptcy court in this case. **X** |
| Address Line 2 | |
| Address Line 3 | Check box if the address differs from the address on the envelope sent to you by the court |
| City, ST ZIP   **Cleveland, Ohio 44115** | THIS SPACE IS FOR COURT USE ONLY |

ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:

Check here if this claim ☐ replaces ☐ amends a previously filed claim dated: _____

**1. BASIS FOR CLAIM**

| | | |
|---|---|---|
| Goods sold | Personal injury/wrongful death | Retiree benefits as defined in 11 U.S.C. § 1114(a) |
| Services performed | Taxes | Wages, salaries, and compensation (Fill out below) |
| | | Your social security No._____ |
| Money loaned | **X** Other (Describe Briefly) | Unpaid compensation for services performed |
| | **Asbestos Contamination** | from _____ to _____<br>(date)    (date) |

**2. Date Debt Incurred: (MMDDYY)**

0 8 | 1 7 | 9 8

**3. If Court Judgment, Date Obtained:**

**4. CLASSIFICATION OF CLAIM.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another. CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.

**SECURED CLAIM**
Attach evidence of perfection of security interest
Brief Description of Collateral:

Real Estate    Motor Vehicle    Other (Describe briefly)

Amount of arrearage and other charges at time case filed included in secured claim above, if any $ _____

**UNSECURED NONPRIORITY CLAIM**
**X** A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

**UNSECURED PRIORITY CLAIM** - Specify the priority of the claim.

Wages, salaries, or commissions (up to $4300), earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3)

Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4)

Up to $1,950 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6)

Taxes or penalties of governmental units - 11 U.S.C. § 507 (a)(7)

Other - Specify applicable paragraph of 11 U.S.C. § 507(a) _____

**5. AMOUNT OF CLAIM AT TIME CASE FILED:**

| (Secured) | $ 5 4 1 5 7 0 0 0<br>(Unsecured Nonpriority) | (Unsecured Priority) |
|---|---|---|

Check this box if claim includes charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

**6. CREDITS AND SETOFFS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

**7. SUPPORTING DOCUMENTS:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. TIME-STAMPED COPY:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)<br><br>*James Deane*<br>**James Deane, Business Manager** |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

THIS SPACE IS FOR COURT USE ONLY — U.S. BANKRUPTCY COURT DISTRICT OF DELAWARE

**APPENDIX A**



INVOICE

# PRECISION ENVIRONMENTAL CO.

### INDUSTRIAL — COMMERCIAL

5722   SCHAAF   ROAD   •   INDEPENDENCE,   OHIO   44131
216/642-6040   •   FAX:   216/642-0891

Regular Invoice

Bill To:   44228
  LABORERS LOCAL #310
  ATT:   MR. JAMES DEAN
  3250 EUCLID AVENUE
  CLEVELAND, OH 44115

Ship To:   *SAME*

Invoice No. - 9854

Page   1 of   1
Transaction Date: 08/17/98

| Due Date | Project Number | Reference | Terms |
|---|---|---|---|
| 09/16/98 | 985107 | LOCAL #310 HALL | NET 30 DAYS |

| Description | Quantity | U/M | Unit Price | Ext Price |
|---|---|---|---|---|

7-14-98 THRU 8-13-98
  AMOUNT DUE FOR ASBESTOS ABATEMENT
  PROJECT AT LABORERS LOCAL #310 HALL
  AS STATED IN CONTRACT/PROPOSAL
BASE PRICE
3RD. PARTY AIR MONIT.
7-16-98 QUOTE

68600.00
4500.00
18600.00



RECEIVED
-7. V.
AUG 26 1998
BF-CY-3320 # 9-14-98
$91,700.00

| | | |
|---|---|---|
| Materials & Services Subtotal | $ 91,700.00 |
| Sales Tax | $ 0.00 |
| Freight | $ 0.00 |
| Other Amounts | $ 0.00 |
| Invoice Total | $ 91,700.00 |
| Net Invoice Total | $ 91,700.00 |

ORIGINAL



# Standard Form of Agreement Between Owner and Contractor *where the basis of payment is a* STIPULATED SUM

## AIA Document A101-1997
### 1997 Edition -Electronic Format

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

This document has been approved and endorsed by The Associated General Contractors of America.

Copyright 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution.

**AGREEMENT** made as of the ‾‾TWELFTH‾‾ day of ‾‾NOVEMBER‾‾ in the year of 2001
*(In words, indicate day, month and year)*

**BETWEEN** the Owner:
*(Name, address and other information)*
Laborers Local 310
3250 Euclid Avenue
Cleveland, OH 44115

and the Contractor
*(Name, address and other information)*
Precision Environmental
5722 Schaaf Road
Independence, OH 44131

The Project is:
*(Name and location)*
Laborers Local 310
3250 Euclid Avenue
Cleveland, OH 44115

The Architect is:
*(Name, address and other information)*
Kaczmar Architects, Inc.
110A Atrium Office Plaza
668 Euclid Avenue
Cleveland, OH 44114

The Owner and Contractor agree as follows.

## ARTICLE 1 THE CONTRACT DOCUMENTS

AIA DOCUMENT A101 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement; these form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than Modifications, appears in Article 8.

**Insert A: See Exhibit E**

## ARTICLE 2 THE WORK OF THIS CONTRACT

The Contractor shall fully execute the Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others.

**Insert B: Specifically including but is not limited to asbestos abatement and fireproofing including disposal offsite off all asbestos fireproofing, light fixtures, ceiling grid, ceiling tile, carpet, transaction windows/walls and associated cabinetry at Laborers #310, "U" shaped wall at lateral files at Laborers #310. Precision to supply own temporary power panels and feeds from owners source.**

**Insert C: Specifically excluded are VCT removal and wall covering removal only.**

## ARTICLE 3 DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

**3.1** The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.
*(Insert the date of commencement if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*
November 8, 2001

If, prior to the commencement of the Work, the Owner requires time to file mortgages, mechanic's liens and other security interests, the Owner's time requirement shall be as follows:

**3.2** The Contract Time shall be measured from the date of commencement.

**3.3** The Contractor shall achieve Substantial Completion of the entire Work not later than 45 calendar days from the date of commencement, or as follows:
*(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. Unless stated elsewhere in the Contract Documents, insert any requirements for earlier Substantial Completion of certain portions of the Work.)*
December 25, 2001

, subject to adjustments of this Contract Time as provided in the Contract Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to complete on time or for bonus payments for early completion of the Work.)*

## ARTICLE 4 CONTRACT SUM

**4.1** The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum shall be Three Hundred Seventy Two Thousand Five Hundred Fifty  Dollars ($ 372,550.00 ), subject to additions and deductions as provided in the Contract Documents.

**4.2** The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:
*(State the numbers or other identification of accepted alternates. If decisions on other alternates are to be made by the Owner subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when that amount expires)*
N/A

**4.3** Unit prices, if any, are as follows:
N/A

## ARTICLE 5 PAYMENTS
### 5.1 PROGRESS PAYMENTS
**5.1.1** Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by

AIA DOCUMENT A101 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

**5.1.2** The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

**5.1.3** Provided that an Application for Payment is received by the Architect not later than the 25th day of a month, the Owner shall make payment to the Contractor not later than the 30th day of the following month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than 60 days after the Architect receives the Application for Payment.

**5.1.4** Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Contract Sum among the various portions of the Work. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

**5.1.5** Applications for Payment shall indicate the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

**5.1.6** Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

    **.1** Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the Contract Sum allocated to that portion of the Work in the schedule of values, less retainage of ten percent ( 10 %). Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Subparagraph 7.3.8 of AIA Document A201-1997;

    **.2** Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing), less retainage of ten percent ( 10 %);

    **.3** Subtract the aggregate of previous payments made by the Owner; and

    **.4** Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Paragraph 9.5 of AIA Document A201-1997.

**5.1.7** The progress payment amount determined in accordance with Subparagraph 5.1.6 shall be further modified under the following circumstances:

    **.1** Add, upon Substantial Completion of the Work, a sum sufficient to increase the total payments to the full amount of the Contract Sum, less such amounts as the Architect shall determine for incomplete Work, retainage applicable to such work and unsettled claims; and
    *(Subparagraph 9.8.5 of AIA Document A201-1997 requires release of applicable retainage upon Substantial Completion of Work with consent of surety, if any.)*

    **.2** Add, if final completion of the Work is thereafter materially delayed through no fault of the Contractor, any additional amounts payable in accordance with Subparagraph 9.10.3 of AIA Document A201-1997.

**5.1.8** Reduction or limitation of retainage, if any, shall be as follows:
*(If it is intended, prior to Substantial Completion of the entire Work, to reduce or limit the retainage resulting from the percentages inserted in Clauses 5.1.6.1 and 5.1.6.2 above, and this is not explained elsewhere in the Contract Documents, insert here provisions for such reduction or limitation.)*
N/A

**5.1.9** Except with the Owner's prior approval, the Contractor shall not make advance payments to suppliers for materials or

AIA DOCUMENT A101 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

equipment which have not been delivered and stored at the site.

## 5.2 FINAL PAYMENT

**5.2.1**    Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when:

**.1**   the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Subparagraph 12.2.2 of AIA Document A201-1997, and to satisfy other requirements, if any, which extend beyond final payment; and

**.2**   a final Certificate for Payment has been issued by the Architect.

**5.2.2**    The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:

## ARTICLE 6 TERMINATION OR SUSPENSION

**6.1** The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of AIA Document A201-1997.

**6.2** The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201-1997.

## ARTICLE 7 MISCELLANEOUS PROVISIONS

**7.1** Where reference is made in this Agreement to a provision of AIA Document A201-1997 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

**7.2** Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*
N/A

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*
N/A

**7.3** The Owner's representative is:
*(Name, address and other information)*
James Deane
Laborers Local 310
3250 Euclid Avenue
Cleveland, OH  44115

**7.4** The Contractor's representative is:
*(Name, address and other information)*
John Savage
Precision Environmental
5722 Schaaf Road
Independence, OH  44131

**7.5** Neither the Owner's nor the Contractor's representative shall be changed without ten days written notice to the other party.

**7.6** Other provisions:
N/A

## ARTICLE 8 ENUMERATION OF CONTRACT DOCUMENTS

**8.1** The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:

AIA DOCUMENT A101 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

**8.1.1**   The Agreement is this executed 1997 edition of the Standard Form of Agreement Between Owner and Contractor, AIA Document A101-1997.

**8.1.2**   The General Conditions are the 1997 edition of the General Conditions of the Contract for Construction, AIA Document A201-1997.

**8.1.3**   The Supplementary and other Conditions of the Contract are those contained in the Project Manual dated <u>8/17/01</u> , and are as follows:

| Document | Title | Pages |
|---|---|---|
| <u>See Exhibit E</u> | | |

**8.1.4**   The Specifications are those contained in the Project Manual dated as in Subparagraph 8.1.3, and are as follows:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*

| Section | Title | Pages |
|---|---|---|
| <u>See Exhibit E</u> | | |

**8.1.5**   The Drawings are as follows, and are dated  unless a different date is shown below:
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*

| Number | Title | Date |
|---|---|---|
| <u>See Exhibit E</u> | | |

**8.1.6**   The Addenda, if any, are as follows:

| Number | Date | Pages |
|---|---|---|
| <u>N/A</u> | | |

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 8.

**8.1.7**   Other documents, if any, forming part of the Contract Documents are as follows:
*(List here any additional documents that are intended to form part of the Contract Documents. AIA Document A201-1997 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)*
<u>Letter from Laborers International Union of North America Inspector General dated 10/11/01.</u>

This Agreement is entered into as of the day and year first written above and is executed in at least three original copies, of which one is to be delivered to the Contractor, one to the Architect for use in the administration of the Contract, and the remainder to the Owner.

---

**OWNER** *(Signature)*

<u>Laborers Local 310</u>
<u>James Deane, Business Manager</u>
*(Printed name and title)*

**CONTRACTOR** *(Signature)*

<u>Precision Environmental</u>
<u>John Savage / Vice President</u>
*(Printed name and title)*

AIA DOCUMENT A101 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.   WARNING: Unlicensed  photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted  below.

N/A

## ARTICLE 8 ENUMERATION OF CONTRACT DOCUMENTS

8.1      The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:

8.1.1    The Agreement is this executed 1997 edition of the Standard Form of Agreement Between Owner and Contractor, AIA Document A101-1997.

8.1.2    The General Conditions are the 1997 edition of the General Conditions of the Contract for Construction, AIA Document A201-1997.

8.1.3    The Supplementary and other Conditions of the Contract are those contained in the Project Manual dated 8/17/01 , and are as follows:

| Document | Title | Pages |
|---|---|---|

See Exhibit E

8.1.4    The Specifications are those contained in the Project Manual dated as in Subparagraph 8.1.3, and are as follows:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)* .

| Section | Title | Pages |
|---|---|---|

See Exhibit E

8.1.5    The Drawings are as follows, and are dated unless a different date is shown below:
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*

| Number | Title | Date |
|---|---|---|

See Exhibit E

8.1.6    The Addenda, if any, are as follows:

| Number | Date | Pages |
|---|---|---|

N/A

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 8.

8.1.7    Other documents, if any, forming part of the Contract Documents are as follows:
*(List here any additional documents that are intended to form part of the Contract Documents. AIA Document A201-1997 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)*
N/A

This Agreement is entered into as of the day and year first written above and is executed in at least three original copies, of which one is to be delivered to the Contractor, one to the Architect for use in the administration of the Contract, and the remainder to the Owner.

_____    _____
OWNER *(Signature)*                         CONTRACTOR *(Signature)*

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.*

*This document has been approved and endorsed by The Associated General Contractors of America.*

©1997 AIA®
AIA DOCUMENT A101-1997
OWNER-CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates US copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: contract with esc h09yist.aia -- 11/8/2001. AIA License Number 1852239385, which expires on 11/9/2002.

James Deane
**Business Manager**
*(Printed name and title)*

Daniel Peders
**General Manager**
*(Printed name and title)*

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A101-1997
OWNER-CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates US copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: contract with esc h0991ist.aia -- 11/8/2001. AIA License Number 1852239385, which expires on 11/9/2002.

6

1997 Edition -Electronic Format

## AIA Document A101-1997

# Standard Form of Agreement Between Owner and Contractor
# where the basis of payment is a STIPULATED SUM

AGREEMENT made as of the $\underline{\text{TWELFT}}$ day of ___$\underline{\text{NOVEHBER}}$___ in the year of 2001
*(In words, indicate day, month and year)*

**BETWEEN the Owner:**
*(Name, address and other information)*
Building Laborers Local 310
3250 Euclid Avenue
Cleveland, OH  44115

and the Contractor:
*(Name, address and other information)*
ESC Environmental Services, Ltd.
343 West Bagley Road #408
Berea, OH  44017

The Project is:
*(Name and location)*
Building Laborers Local 310
3250 Euclid Avenue
Cleveland, OH  44115

The Architect is:
*(Name, address and other information)*
Kaczmar Architects, Inc.
1468 West 9th Street
400 Western Reserve Building
Cleveland, OH  44113

The Owner and Contractor agree as follows.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.*

*This document has been approved and endorsed by The Associated General Contractors of America.*

## ARTICLE 1 THE CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement; these form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than Modifications, appears in Article 8.



©1997 AIA®
AIA DOCUMENT A101-1997
OWNER-CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

## ARTICLE 2 THE WORK OF THIS CONTRACT

The Contractor shall fully execute the Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others.

Ambient background air samples to establish a baseline prior to the asbestos abatement. Daily asbestos abatement air monitoring and analysis. Daily asbestos abatement

© 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates US copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: contract with esc h0ÿ9lst.aia -- 11/8/2001. AIA License Number 1852239385, which expires on 11/9/2002.

compliance inspections. Final visual inspection and air clearance sampling after asbestos abatement.

## ARTICLE 3 DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

3.1     The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.

*(Insert the date of commencement if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*

**11/12/01**

If, prior to the commencement of the Work, the Owner requires time to file mortgages, mechanic's liens and other security interests, the Owner's time requirement shall be as follows:

3.2     The Contract Time shall be measured from the date of commencement.

3.3     The Contractor shall achieve Substantial Completion of the entire Work not later than **45 calendar** days from the date of commencement, or as follows:

*(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. Unless stated elsewhere in the Contract Documents, insert any requirements for earlier Substantial Completion of certain portions of the Work.)*

, subject to adjustments of this Contract Time as provided in the Contract Documents.

*(Insert provisions, if any, for liquidated damages relating to failure to complete on time or for bonus payments for early completion of the Work.)*

## ARTICLE 4 CONTRACT SUM

4.1     The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum shall be     Dollars ($  ), subject to additions and deductions as provided in the Contract Documents.

·4.2     The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:

*(State the numbers or other identification of accepted alternates. If decisions on other alternates are to be made by the Owner subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when that amount expires)*

4.3     Unit prices, if any, are as follows:
**$40.00/per hour**

## ARTICLE 5 PAYMENTS

5.1     **PROGRESS PAYMENTS**

5.1.1     Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

5.1.2     The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

5.1.3     Provided that an Application for Payment is received by the Architect not later than the **25th** day of a month, the Owner shall make payment to the Contractor not later than the

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
**AIA DOCUMENT A101-1997**
**OWNER-CONTRACTOR AGREEMENT**

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates US copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: contract with esc h0ypist.aia – 11/8/2001. AIA License Number 1852239385, which expires on 11/9/2002.

30th_ day of the following_ month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than 60_ days after the Architect receives the Application for Payment.

**5.1.4** Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Contract Sum among the various portions of the Work. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

**5.1.5** Applications for Payment shall indicate the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

**5.1.6** Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

> .1 Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the Contract Sum allocated to that portion of the Work in the schedule of values, less retainage of N/A percent ( N/A %). Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Subparagraph 7.3.8 of AIA Document A201-1997.

> .2 Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing), less retainage of N/A percent ( N/A%);

> .3 Subtract the aggregate of previous payments made by the Owner; and

> .4 Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Paragraph 9.5 of AIA Document A201-1997.

**5.1.7** The progress payment amount determined in accordance with Subparagraph 5.1.6 shall be further modified under the following circumstances:

> .1 Add, upon Substantial Completion of the Work, a sum sufficient to increase the total payments to the full amount of the Contract Sum, less such amounts as the Architect shall determine for incomplete Work, retainage applicable to such work and unsettled claims; and
> *(Subparagraph 9.8.5 of AIA Document A201-1997 requires release of applicable retainage upon Substantial Completion of Work with consent of surety, if any.)*

> .2 Add, if final completion of the Work is thereafter materially delayed through no fault of the Contractor, any additional amounts payable in accordance with Subparagraph 9.10.3 of AIA Document A201-1997.

**5.1.8** Reduction or limitation of retainage, if any, shall be as follows:
*(If it is intended, prior to Substantial Completion of the entire Work, to reduce or limit the retainage resulting from the percentages inserted in Clauses 5.1.6.1 and 5.1.6.2 above, and this is not explained elsewhere in the Contract Documents, insert here provisions for such reduction or limitation.)*
N/A

**5.1.9** Except with the Owner's prior approval, the Contractor shall not make advance payments to suppliers for materials or equipment which have not been delivered and stored at the site.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A101-1997
OWNER-CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates US copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: contract with esc h09yist.aia -- 11/8/2001. AIA License Number 1852239385, which expires on 11/9/2002.

### 5.2    FINAL PAYMENT

5.2.1    Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when:

.1    the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Subparagraph 12.2.2 of AIA Document A201-1997, and to satisfy other requirements, if any, which extend beyond final payment; and

.2    a final Certificate for Payment has been issued by the Architect.

5.2.2    The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:

### ARTICLE 6 TERMINATION OR SUSPENSION

6.1    The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of AIA Document A201-1997.

6.2    The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201-1997.

### ARTICLE 7 MISCELLANEOUS PROVISIONS

7.1    Where reference is made in this Agreement to a provision of AIA Document A201-1997 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

7.2    Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*
N/A.

*Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

7.3    The Owner's representative is:
*(Name, address and other information)*
James Deane
Building Laborers Local 310
3250 Euclid Avenue
Cleveland, OH 44115

7.4    The Contractor's representative is:
*(Name, address and other information)*
Daniel C. Peders
ESC Environmental Services, Ltd.
343 West Bagley Road #408
Berea, OH 44017

7.5    Neither the Owner's nor the Contractor's representative shall be changed without ten days written notice to the other party.

7.6    Other provisions:

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A101-1997
OWNER-CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution.  WARNING: Unlicensed  photocopying violates US copyright laws  and  will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: contract with esc h0ÿÿist.aia – 11/8/2001. AIA License Number 1852239385, which expires on 11/9/2002.

4



# W.R. GRACE & CO.
# ASBESTOS PROPERTY DAMAGE
# PROOF OF CLAIM FORM

*The United States Bankruptcy Court for the District of Delaware*
*In re: W.R. Grace & Co., et al., Debtors, Case No. 01-01139 (JKF)*
*(Jointly Administered)*

## SUBMIT COMPLETED CLAIMS TO:

**Claims Processing Agent**
**Re: W.R. Grace & Co. Bankruptcy**
**PO Box 1620**
**Faribault, MN 55021-1620**

For a complete list of the Debtors in this case, please see "The Debtors" section of the *General Instructions for Completing Proof of Claim Forms*. The Debtors in this case are collectively referred to in this document as "Grace."

If you have a present claim against Grace for property damage allegedly resulting from asbestos from a Grace product *other than Zonolite Attic Insulation*, THIS ASBESTOS PROPERTY DAMAGE PROOF OF CLAIM FORM MUST BE RECEIVED ON OR BEFORE 4:00 P.M. EASTERN TIME ON MARCH 31, 2003, or you will be forever barred from asserting or receiving payment for your claim.

**APPENDIX 8**

# W.R. GRACE & CO.
# ASBESTOS PROPERTY DAMAGE
# PROOF OF CLAIM FORM

*The United States Bankruptcy Court for the District of Delaware*
*In re: W.R. Grace & Co., et al., Debtors, Case No. 01-01139 (JKF)*
*(Jointly Administered)*

## SUBMIT COMPLETED CLAIMS TO:

**Claims Processing Agent**
**Re: W.R. Grace & Co. Bankruptcy**
**PO Box 1620**
**Faribault, MN 55021-1620**

For a complete list of the Debtors in this case, please see "The Debtors" section of the
*General Instructions for Completing Proof of Claim Forms.* The Debtors in this case are
collectively referred to in this document as "Grace".

If you have a current claim against Grace for property damage allegedly resulting from asbestos from a
Grace product *(other than Zonolite Attic Insulation),* THIS ASBESTOS PROPERTY DAMAGE PROOF
OF CLAIM FORM MUST BE RECEIVED ON OR BEFORE 4:00 P.M. EASTERN TIME ON MARCH 31,
2003, or you will be forever barred from asserting or receiving payment for your claim.

25. If you responded Yes to question 22. or 24. and you have not supplied documents, please specify the dates and descriptions of any such efforts.

| Year | | |
|---|---|---|
| 1 9 9 9 | Description | BASEMENT ASBESTOS ABATEMENT |
| 2 0 0 1 | Description | 1st and 2d Floor Asbestos Abatement |
| | Description | |

26. Have you or anyone on your behalf ever conducted any testing or sampling for the presence of asbestos or other particulates in the property?

☒ Yes     ☐ No     **If Yes, Attach All Documents Related To Any Testing Of The Property.**

27. If you responded Yes to question 26., but you have not provided documents, indicate who may have possession or control of such testing documents or where such documents may be located.

28. If you or someone on your behalf did not conduct any testing or sampling for the presence of asbestos or other particulates on the property, to the best of your knowledge, did anyone else conduct such testing or sampling with respect to the property?

☐ Yes     ☒ No

29. If you responded Yes to question 26. or 28. and you have not supplied related documents, please describe when and by whom and the type of testing and/or sampling (e.g. air, bulk and dust sampling).

| Year | Company/Individual | |
|---|---|---|
| | Type of testing: | |
| | Company/Individual | |
| | Type of testing: | |
| | Company/Individual | |
| | Type of testing: | |

30. Has the Grace product or products for which you are making this claim ever been modified and/or disturbed?

☐ Yes     ☒ No

31. If yes, specify when and in what manner the Grace product or products was modified and/or disturbed?

| Year | | |
|---|---|---|
| | Description | |
| | Description | |
| | Description | |

If yes, please specify the dates and description of such renovations.

| Year | | Description |
|---|---|---|
| 1999 | Description | COMPLETE ASBESTOS ABATEMENT OF BASEMENT |
| 2001 | Description | COMPLETE ASBESTOS ABATEMENT OF FL. 1 + 2 |
| | Description | |

11. To the best of your knowledge, have any other interior renovations been completed on the property during any other period of time which affected any asbestos on the property?

☐ Yes   ☒ No

If yes, please specify the dates and descriptions of such renovations.

| Year | Description |
|---|---|
| | Description |
| | Description |
| | Description |

## B. Claim Category

12. For which category are you making a claim on the property?

☒ Category 1:  Allegation with respect to asbestos from a Grace product in the property

☐ Category 2:  Allegation with respect to one of Grace's vermiculite mining, milling or processing operations

## C. Category 1 Claim: Allegation With Respect To Asbestos From A Grace Product In The Property

13. For what alleged asbestos-containing product(s) are you making a claim?

☒ Monokote-3 fireproofing insulation

☐ Other      Specify: _____

(For a list of the brand names under which Grace manufactured products that may have contained commercially added asbestos, see Exhibit 2 to the Claims Bar Date Notice provided with this Proof of Claim Form.)

14. When did you or someone on your behalf install the asbestos containing product(s) in the property?

| 1971 |   ☐ I did not install the product(s) |
| Year | |

15. If you or someone on your behalf did not install the asbestos containing product(s), to the best of your knowledge, when was/were the product(s) installed?

| | ☐ Don't know. |
| Year | |

36. How did you first learn of the presence of asbestos on your property?

Attach all documents relating or referring to the presence of asbestos on the property. If the documents are too voluminous to attach, attach a summary of the documents indicating the name of each document, date of each document, a brief description of the document, the location of the document, and who has possession or control of the document.

If you provide a summary of the documents rather than the documents themselves, you are required to consent to the production and release of those documents to Grace upon Grace's further request.

37. If you do not have any documents relating or referring to the presence of asbestos on the property, explain why not and indicate who may have possession or control of any such documents with respect to the property.

38. Have you or anyone on your behalf made an effort to remove, contain and/or abate the asbestos on your property?

☐ Yes    ☐ No

If Yes, attach all documents relating or referring to such efforts. If the documents are too voluminous to attach, attach a summary of the documents indicating the name of each document, date of each document, a brief description of the document, the location of the document, and who has possession or control of the document.

If you provide a summary of the documents rather than the documents themselves, you are required to consent to the production and release of those documents to Grace upon Grace's further request.

39. If you do not have any documents relating or referring to the removal, containment and/or abatement of the asbestos on your property, explain why not and indicate who may have possession and control of such documents with respect to the property.

40. If you or someone on your behalf did not make an effort to remove, contain and/or abate the asbestos on your property, to the best of your knowledge, did anyone else make such an effort?

☐ Yes    ☐ No

# PART 4: ASBESTOS LITIGATION AND CLAIMS

## A.  INTRODUCTION

1.  Has any asbestos-related property damage lawsuit or claim been filed against Grace on behalf of this claiming party relating to the property for which you are making this claim?

☒ No

☐ Yes – lawsuit

☐ Yes – non-lawsuit claim (other than a workers' compensation claim)

2.  Has any asbestos-related property damage lawsuit or claim been filed against any other party on behalf of this claiming party relating to the property for which you are making this claim?

☒ No

☐ Yes – lawsuit

☐ Yes – non-lawsuit claim (other than a workers' compensation claim)

*If an asbestos-related property damage lawsuit has been filed by or on behalf of this claiming party relating to the property for which you are making a claim, complete Section B. below.*

*If an asbestos-related property damage non-lawsuit claim has been made by or on behalf of this claiming party relating to the property for which you are making a claim, complete Section C. on the following page.*

## B.  LAWSUITS

1.  Please provide the following information about each asbestos-related property damage lawsuit which has been filed relating to the property for which you are making this claim or attach a copy of the face page of each complaint filed.

a.  Caption

b.  Court where suit **originally filed:**  
    *County/State*      Docket No.:

c.  Date filed:  
    *Month*  *Day*  *Year*

a.  Caption

b.  Court where suit **originally filed:**  
    *County/State*      Docket No.:

c.  Date filed:  
    *Month*  *Day*  *Year*

a.  Caption

b.  Court where suit **originally filed:**  
    *County/State*      Docket No.:

c.  Date filed:  
    *Month*  *Day*  *Year*

(Attach additional pages if necessary.)

1. If the claiming party has made any claims relating to the property for which you are making a claim (including administrative claims) against anyone, that was not filed with a court of law, please provide the following information for each claim:

   a. Description of claim:

   b. Date submitted:  [ ] [ ] – [ ] [ ] – [ ] [ ] [ ] [ ]
      *Month   Day   Year*

   c. Name of entity to whom claim was submitted:
      ☐ Grace
      ☐ Other
      *Name of Entity*

   a. Description of claim:

   b. Date submitted:  [ ] [ ] – [ ] [ ] – [ ] [ ] [ ] [ ]
      *Month   Day   Year*

   c. Name of entity to whom claim was submitted:
      ☐ Grace
      ☐ Other
      *Name of Entity*

   a. Description of claim:

   b. Date submitted:  [ ] [ ] – [ ] [ ] – [ ] [ ] [ ] [ ]
      *Month   Day   Year*

   c. Name of entity to whom claim was submitted:
      ☐ Grace
      ☐ Other
      *Name of Entity*

**PART 5.  SIGNATURE PAGE**

All claims must be signed by the claiming party.

I have reviewed the information submitted on this proof of claim form and all documents submitted in support of my claim. I declare, under penalty of perjury,* that the above statements are true, correct, and not misleading.

CONSENT TO RELEASE OF RECORDS AND INFORMATION: To the extent that I have produced a summary rather than the documents themselves as requested above or indicated who has possession and control of certain documents, I hereby authorize and request that all other parties with custody of any documents or information concerning my property damage or the information contained in this Form, upon the reasonable request of Grace or Grace's representative, with a copy to the claiming party, disclose any and all records to Grace or to Grace's representative.

SIGNATURE OF CLAIMANT

[02] – [06] – [2003]
*Month   Day   Year*

*The penalty for presenting a fraudulent claim is a fine up to $500,000.00 or imprisonment up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

9276110

1000226

Copyright © 2002 NCS Pearson, Inc.  All rights reserved.

# INVOICE



**ESC ENVIRONMENTAL SERVICES LTD**
364 GRISWOLD RD.
ELYRIA, OH  44035

FAX: 440-322-2706
VOICE: 440-322-7300

INVOICE #: 1607

INVOICE DATE: 25-Jan-02

PAGE: 1

SOLD TO:

Building Laborers Local 310
3250 Euclid Avenue
Cleveland, Ohio  44115
Mr. James Deane

PROJECT LOCATION:

Laborers Hall
Asbestos Abatement Project
Oversight and Air Monitoring

| CUSTOMER PO | | PAYMENT TERMS | DUE DATE | |
|---|---|---|---|---|
| | | NET 30 Days | February 25, 2002 | |
| **DATE OF COMPLETION** | | **PROJECT DATES** | | |
| | | January 2-4, 21 and 22, 2002 | | |
| **QTY** | **ITEM** | **DESCRIPTION** | **UNIT PRICE** | **EXTENSION** |
| 2.0 | 8-Hour Shifts | *Project Oversight and Air Monitoring* Day Shifts | $320.00 | $640.00 |
| 2.0 | 8-Hour Shifts | *Final Report and Documentation Prep* Day Shifts | $320.00 | $640.00 |

RECEIVED
T.K.
FEB - 4 2002
CK 4589
2-12-02
$1280.00

REMIT TO:
364 GRISWOLD ROAD
ELYRIA, OHIO  44035

| | |
|---|---|
| SUBTOTAL | $1,280.00 |
| SALES TAX | 0.00 |
| FREIGHT | |
| TOTAL | $1,280.00 |

A FINANCE CHARGE OF 1.5% WILL BE ADDED TO PAST DUE INVOICES

THANK YOU FOR USING *ESC ENVIRONMENTAL SERVICES, LTD.*

1ST & 2ND FLOOR

**INVOICE**



ESC ENVIRONMENTAL SERVICES LTD
364 GRISWOLD RD.
ELYRIA, OH   44035

FAX: 440-322-2706
VOICE: 440-322-7300

INVOICE #: 1603

INVOICE DATE: 31-Dec-01

PAGE: 1

SOLD TO:

Building Laborers Local 310
3250 Euclid Avenue
Cleveland, Ohio  44115
Mr. James Deane

PROJECT LOCATION:

Laborers Hall
Asbestos Abatement Project
Oversight and Air Monitoring

| CUSTOMER PO | PAYMENT TERMS | DUE DATE |
|---|---|---|
| | NET 30 Days | January 31, 2002 |

| DATE OF COMPLETION | PROJECT DATES |
|---|---|
| | December 3-7, 10-14, 17-21, 24, 26-28 and 31, 2001 |

| QTY | ITEM | DESCRIPTION | UNIT PRICE | EXTENSION |
|---|---|---|---|---|
| | | Project Oversight and Air Monitoring | | |
| 20.0 | 8-Hour Shifts | Day Shifts | $320.00 | $6,400.00 |
| 2.0 | Per Hour | Overtime on Dec. 28 | $50.00 | $100.00 |

*RECEIVED FEB - 4 2002* (stamp)
*BFCK 4285*

2-12-02
$6500.00

| | |
|---|---|
| SUBTOTAL | $6,500.00 |
| SALES TAX | 0.00 |
| FREIGHT | |
| TOTAL | $6,500.00 |

REMIT TO:
364 GRISWOLD ROAD
ELYRIA, OHIO  44035

A FINANCE CHARGE OF 1.5% WILL BE ADDED TO PAST DUE INVOICES

THANK YOU FOR USING *ESC ENVIRONMENTAL SERVICES, LTD.*

**INVOICE**



ESC ENVIRONMENTAL SERVICES LTD
364 GRISWOLD RD.
ELYRIA, OH  44035

FAX: 440-322-2706
VOICE: 440-322-7300

INVOICE #: 1586

INVOICE DATE: 30-Nov-01

PAGE: 1

SOLD TO:

Building Laborers Local 310
3250 Euclid Avenue
Cleveland, Ohio  44115
Mr. James Deane

PROJECT LOCATION:

Laborers Hall
Asbestos Abatement Project
Oversight and Air Monitoring

| CUSTOMER PO | PAYMENT TERMS | DUE DATE |
|---|---|---|
| | NET 30 Days | December 30, 2001 |

| DATE OF COMPLETION | PROJECT DATES |
|---|---|
| | October 5-9, 12-16, 19-21, 23, and 26-30, 2001 |

| QTY | ITEM | DESCRIPTION | UNIT PRICE | EXTENSION |
|---|---|---|---|---|
| | | Project Oversight and Air Monitoring | | |
| 19.0 | 8-Hour Shifts | Day Shifts | $320.00 | $6,080.00 |
| 14.0 | 8-Hour Shifts | Night Shifts | $320.00 | $4,480.00 |
| 2.5 | Per Hour | Overtime on Nov. 30 | $50.00 | $125.00 |

RECEIVED DEC 6 2001   12-11-01
BFCK4236   $10,685.00

| | |
|---|---|
| SUBTOTAL | $10,685.00 |
| SALES TAX | 0.00 |
| FREIGHT | |
| TOTAL | $10,685.00 |

REMIT TO:
364 GRISWOLD ROAD
ELYRIA, OHIO  44035

A FINANCE CHARGE OF 1.5% WILL BE ADDED TO PAST DUE INVOICES

THANK YOU FOR USING *ESC ENVIRONMENTAL SERVICES, LTD.*

# Building Fund
# Find Report
## All Transactions

| Type | Date | Num | Name | Memo | Clr | Amount | Balance |
|------|------|-----|------|------|-----|--------|---------|
| Check | 2/12/2002 | 4285 | ESC Environmental Services LTD | Inv. 1603 | X | (6,500.00) | (6,500.00) |
| Check | 2/12/2002 | 4289 | ESC Environmental Services LTD | Inv. 1607 | X | (1,280.00) | (7,780.00) |
| Check | 12/11/2001 | 4236 | ESC Environmental Services LTD | Inv. 1586 | X | (10,685.00) | (18,465.00) |
| Total | | | | | | (18,465.00) | (18,465.00) |



# Standard Form of Agreement Between Owner and Contractor *where the basis of payment is a* STIPULATED SUM

## AIA Document A101-1997
### 1997 Edition -Electronic Format

---

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401

AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

This document has been approved and endorsed by The Associated General Contractors of America.

Copyright 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution.

---

**AGREEMENT** made as of the [TWELFTH] day of _NOVEMBER_ in the year of 2001
*(In words, indicate day, month and year)*

**BETWEEN** the Owner:
*(Name, address and other information)*
Laborers Local 310
3250 Euclid Avenue
Cleveland, OH  44115

and the Contractor
*(Name, address and other information)*
Precision Environmental
5722 Schaaf Road
Independence, OH  44131

*(handwritten: 1ST & 2ND FLOORS)*

The Project is:
*(Name and location)*
Laborers Local 310
3250 Euclid Avenue
Cleveland, OH  44115

The Architect is:
*(Name, address and other information)*
Kaczmar Architects, Inc.
110A Atrium Office Plaza
668 Euclid Avenue
Cleveland, OH  44114

The Owner and Contractor agree as follows.

## ARTICLE 1 THE CONTRACT DOCUMENTS

---

AIA DOCUMENT A101 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement; these form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than Modifications, appears in Article 8.

**Insert  A: See Exhibit E**

## ARTICLE 2 THE WORK OF THIS CONTRACT

The Contractor shall fully execute the Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others.

**Insert   B: Specifically including but is not limited to asbestos abatement and fireproofing including disposal offsite off all asbestos fireproofing, light fixtures, ceiling grid, ceiling tile, carpet, transaction windows/walls and associated cabinetry at Laborers #310, "U" shaped wall at lateral files at Laborers #310.  Precision to supply own temporary power panels and feeds from owners source.**

**Insert  C: Specifically excluded are VCT removal and wall covering removal only.**

## ARTICLE 3 DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

**3.1** The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.
*(Insert the date of commencement if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*
November 8, 2001

If, prior to the commencement of the Work, the Owner requires time to file mortgages, mechanic's liens and other security interests, the Owner's time requirement shall be as follows:

**3.2** The Contract Time shall be measured from the date of commencement.

**3.3** The Contractor shall achieve Substantial Completion of the entire Work not later than 45 calendar days from the date of commencement, or as follows:
*(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. Unless stated elsewhere in the Contract Documents, insert any requirements for earlier Substantial Completion of certain portions of the Work.)*
December 25, 2001

, subject to adjustments of this Contract Time as provided in the Contract Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to complete on time or for bonus payments for early completion of the Work.)*

## ARTICLE 4 CONTRACT SUM

**4.1** The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum shall be Three Hundred Seventy Two Thousand Five Hundred Fifty  Dollars ($ 372,550.00 ), subject to additions and deductions as provided in the Contract Documents.

**4.2** The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:
*(State the numbers or other identification of accepted alternates. If decisions on other alternates are to be made by the Owner subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when that amount expires)*
N/A

**4.3** Unit prices, if any, are as follows:
N/A

## ARTICLE 5 PAYMENTS
### 5.1 PROGRESS PAYMENTS

**5.1.1**   Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by

AIA DOCUMENT A101 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

**5.1.2**    The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

**5.1.3**    Provided that an Application for Payment is received by the Architect not later than the 25thday of a month, the Owner shall make payment to the Contractor not later than the 30th day of the following month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than 60 days after the Architect receives the Application for Payment.

**5.1.4**    Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Contract Sum among the various portions of the Work. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require.  This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

**5.1.5**    Applications for Payment shall indicate the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

**5.1.6**    Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

    **.1**    Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the Contract Sum allocated to that portion of the Work in the schedule of values, less retainage of ten percent ( 10 %).  Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Subparagraph 7.3.8 of AIA Document A201-1997;

    **.2**    Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing), less retainage of ten percent ( 10 %);

    **.3**    Subtract the aggregate of previous payments made by the Owner; and

    **.4**    Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Paragraph 9.5 of AIA Document A201-1997.

**5.1.7**    The progress payment amount determined in accordance with Subparagraph 5.1.6 shall be further modified under the following circumstances:

    **.1**    Add, upon Substantial Completion of the Work, a sum sufficient to increase the total payments to the full amount of the Contract Sum, less such amounts as the Architect shall determine for incomplete Work, retainage applicable to such work and unsettled claims; and
    *(Subparagraph 9.8.5 of AIA Document A201-1997 requires release of applicable retainage upon Substantial Completion of Work with consent of surety, if any.)*

    **.2**    Add, if final completion of the Work is thereafter materially delayed through no fault of the Contractor, any additional amounts payable in accordance with Subparagraph 9.10.3 of AIA Document A201-1997.

**5.1.8**    Reduction or limitation of retainage, if any, shall be as follows:
*(If it is intended, prior to Substantial Completion of the entire Work, to reduce or limit the retainage resulting from the percentages inserted in Clauses 5.1.6.1 and 5.1.6.2 above, and this is not explained elsewhere in the Contract Documents, insert here provisions for such reduction or limitation.)*
N/A

**5.1.9**    Except with the Owner's prior approval, the Contractor shall not make advance payments to suppliers for materials or

AIA DOCUMENT A101 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.   WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

equipment which have not been delivered and stored at the site.

## 5.2 FINAL PAYMENT

**5.2.1** Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when:

>    **.1** the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Subparagraph 12.2.2 of AIA Document A201-1997, and to satisfy other requirements, if any, which extend beyond final payment; and
>
>    **.2** a final Certificate for Payment has been issued by the Architect.

**5.2.2**    The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:

## ARTICLE 6 TERMINATION OR SUSPENSION

**6.1** The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of AIA Document A201-1997.

**6.2** The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201-1997.

## ARTICLE 7 MISCELLANEOUS PROVISIONS

**7.1** Where reference is made in this Agreement to a provision of AIA Document A201-1997 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

**7.2** Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*
N/A

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*
N/A

**7.3** The Owner's representative is:
*(Name, address and other information)*
James Deane
Laborers Local 310
3250 Euclid Avenue
Cleveland, OH 44115

**7.4** The Contractor's representative is:
*(Name, address and other information)*
John Savage
Precision Environmental
5722 Schaaf Road
Independence, OH 44131

**7.5** Neither the Owner's nor the Contractor's representative shall be changed without ten days written notice to the other party.

**7.6** Other provisions:
N/A

## ARTICLE 8 ENUMERATION OF CONTRACT DOCUMENTS

**8.1** The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:

AIA DOCUMENT A101 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.    WARNING: Unlicensed  photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted  below.

**8.1.1**    The Agreement is this executed 1997 edition of the Standard Form of Agreement Between Owner and Contractor, AIA Document A101-1997.

**8.1.2**    The General Conditions are the 1997 edition of the General Conditions of the Contract for Construction, AIA Document A201-1997.

**8.1.3**    The Supplementary and other Conditions of the Contract are those contained in the Project Manual dated <u>8/17/01</u> , and are as follows:

| Document | Title | Pages |
|---|---|---|
| See Exhibit E | | |

**8.1.4**    The Specifications are those contained in the Project Manual dated as in Subparagraph 8.1.3, and are as follows:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*

| Section | Title | Pages |
|---|---|---|
| See Exhibit E | | |

**8.1.5**    The Drawings are as follows, and are dated  unless a different date is shown below:
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*

| Number | Title | Date |
|---|---|---|
| See Exhibit E | | |

**8.1.6**    The Addenda, if any, are as follows:

| Number | Date | Pages |
|---|---|---|
| N/A | | |

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 8.

**8.1.7**    Other documents, if any, forming part of the Contract Documents are as follows:
*(List here any additional documents that are intended to form part of the Contract Documents. AIA Document A201-1997 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)*
<u>Letter from Laborers International Union of North America Inspector General dated 10/11/01.</u>

This Agreement is entered into as of the day and year first written above and is executed in at least three original copies, of which one is to be delivered to the Contractor, one to the Architect for use in the administration of the Contract, and the remainder to the Owner.

_____
**OWNER** *(Signature)*

Laborers Local 310
James Deane, Business Manager
*(Printed name and title)*

_____
**CONTRACTOR** *(Signature)*

Precision Environmental
John Savage / Vice President
*(Printed name and title)*

AIA DOCUMENT A101 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed  photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted  below.



# Electro-Analytical Group

Environmental Consultants • Certified Laboratories
7118 Industrial Park Blvd., Mentor, Ohio 44060-5314
440-951-3514, FAX 440-951-3774

INVOICE NUMBER: 0214000-IN
INVOICE DATE: 04/30/98

ORDER NUMBER: OH28233
ORDER DATE: 04/30/98
SALESPERSON: PGH
CUSTOMER NO: 0801198

SOLD TO:
Building Laborers' Union
Local No. 310
3250 Euclid Avenue
Cleveland            OH 441152520
CONFIRM TO:
John Kilbane

SHIP TO:
Building Laborers' Union
Local No. 310
3250 Euclid Avenue
Cleveland            OH 441152520

CUSTOMER P.O.

TERMS
2%-10 Net 30 Days

| ITEM | UNIT | ORDERED | COMPLETED | PRICE | AMOUNT |
|------|------|---------|-----------|-------|--------|
| BULK SAMPLING | EACH | 3.00 | 3.00 | 65.00 | 195.00 |
| G. Kalevakis-4/13/98 | | | | | |
| PLM-FS | EACH | 5.00 | 5.00 | 20.00 | 100.00 |
| Bulk Asbestos Analysis | | | | | |
| REPORTING | EACH | 0.25 | 0.25 | 65.00 | 16.25 |
| Technical Writer | | | | | |
| REPORTING | EACH | 0.75 | 0.75 | 65.00 | 48.75 |
| Project Manager | | | | | |



ASBESTOS TESTING



RECEIVED
D-JVK
MAY - 6 1998

BFcK 3283
5-14-98

COMMENT:

Ceiling Tile Sampling

NET INVOICE:        360.00
LESS DISCOUNT:        .00

INVOICE TOTAL:        360.00



 **PRECISION ENVIRONMENTAL CO.**

INDUSTRIAL — COMMERCIAL

5722    SCHAAF    ROAD    •    INDEPENDENCE,    OHIO    44131

216/642-6040    •    FAX:    216/642-0891

Regular Invoice

| Bill To: 44228 | Ship To: *SAME* |
|---|---|
| LABORERS LOCAL #310 | |
| ATT: MR. JAMES DEAN | |
| 3250 EUCLID AVENUE | |
| CLEVELAND, OH 44115 | |

Invoice No. - 9854

Page 1 of
Transaction Date: 08/17/98

| Due Date | Project Number | Reference | Terms |
|---|---|---|---|
| 09/16/98 | 985107 | LOCAL #310 HALL | NET 30 DAYS |

| Description | Quantity | U/M | Unit Price | Ext. Price |
|---|---|---|---|---|
| 7-14-98 THRU 8-13-98 | | | | |
| AMOUNT DUE FOR ASBESTOS ABATEMENT | | | | |
| PROJECT AT LABORERS LOCAL #310 HALL | | | | |
| AS STATED IN CONTRACT/PROPOSAL | | | | |
| BASE PRICE | | | | 68600.00 |
| 3RD. PARTY AIR MONIT. | | | | 4500.00 |
| 7-16-98 QUOTE | | | | 18600.00 |

BASEMENT

RECEIVED
AUG 26 1998
BFCK-3320

J.K.
9-14-98
$91,700.00

| Materials & Services Subtotal | $ 91,700.00 |
|---|---|
| Sales Tax | $ 0.00 |
| Freight | $ 0.00 |
| Other Amounts | $ 0.00 |
| Invoice Total | $ 91,700.00 |

| Net Invoice Total | $ 91,700.00 |
|---|---|

ORIGINAL

# Electro-Analytical Group

### Environmental Consultants • Certified Laboratories

April 24, 1998

Mr. John Kilbane
**Laborers' Union Local 310**
3250 Euclid Avenue
Cleveland, Ohio 44115

**RE: Bulk Sampling of Suspect Asbestos-Containing Materials**
    **Laborer's Union Local 3100 Meeting Hall, 3250 Euclid Avenue, Cleveland, Ohio**
    **OH-28233**

## Executive Summary

Electro-Analytical Group, Mentor, Ohio was contracted by the Laborers' Union Local 310, Cleveland, Ohio to conduct bulk sampling of suspect asbestos-containing materials (ACM) in the meeting hall of Laborers' Union Local 310, 3250 Euclid Avenue, Cleveland, Ohio. All secured materials and sampling locations were at the discretion of Mr. John Kilbane of Laborers' Union Local 310. The following material was sampled as suspect and identified as asbestos-containing:

- Fireproofing

The inspector's *Asbestos Inspection Data Sheet*, which provides additional material descriptions and locations, is attached as Appendix A.

## Description of Work

Sampling activities to identify the presence of suspect ACM were performed by Electro-Analytical Group's Certified Asbestos Hazard Evaluation Specialist (CAHES), Mr. George Kalevakis (CAHES #3830) on April 13, 1998. Homogeneous areas of suspect ACM are identified on the Asbestos Inspection Data Sheet attached as Appendix A.

## Objective and Limitations of the Inspection

The purpose of this survey was to sample designated fireproofing, elbow insulation and lay-in ceiling tile to identify suspect ACM pursuant to National Emission Standards for Hazardous Air Pollutants (NESHAPs) regulations.

The results of this survey are based on sampling locations determined by Mr. John Kilbane of Building Laborers' Union Local 310. No inaccessible interior areas were noted during the survey.

F:\PROJECTS\ASB\OH28233\OH28233.BS

7118 Industrial Park Blvd.   •   Mentor, Ohio 44060-5314   •   (216) 951-3514   •   (800) 875-3514   •   FAX (216) 951-3774

**Electro-Analytical.
Group**

Environmental Consultants • Certified Laboratories

April 24, 1998
**Laborers' Union Local 310**
Bulk Sampling of Suspect Asbestos Containing Materials/3250 Euclid Avenue, Cleveland, Ohio
OH-28233
Page 2

Additional suspect asbestos-containing materials may be present behind permanent walls. If renovations are planned that might expose additional materials, then further bulk sampling and analysis is recommended at that time.

### Analysis

The bulk samples were analyzed by polarized light microscopy for asbestos content at the Laboratory Division of Electro-Analytical Group, which is accredited by the National Institute of Standards and Technology/National Voluntary Laboratory Accreditation Program. The United States Environmental Protection Agency requires all materials containing greater than one percent asbestos by weight to be considered asbestos-containing materials.

### Results

Three homogeneous groups were noted during the inspection. A total of seven bulk samples were collected from these homogeneous groups.

Three of the samples from one homogeneous group were determined to contain ACM. Analytical results are provided in Appendix B.

### Recommendations

ACM that is in good condition or ACM that has been repaired should be incorporated into an Operations and Maintenance Plan whereby it is routinely inspected for signs of damage. If damage occurs or if renovation or demolition is planned which might disturb the ACM, then it may need to be repaired or removed at that time.

Activities which involve the handling of ACM should be carried out by a licensed abatement contractor in accordance with all applicable regulations.

# Electro-Analytical Group

Environmental Consultants • Certified Laboratories

April 24, 1998
**Laborers' Union Local 310**
Bulk Sampling of Suspect Asbestos Containing Materials/3250 Euclid Avenue, Cleveland, Ohio
OH-28233
Page 3

If you have any questions or concerns regarding the above information, please contact the undersigned. Thank you for consulting Electro-Analytical Group.

Sincerely,

Electro-Analytical Group

Daniel C. Peders /TSB

Daniel C. Peders, CAHAPD, CAHES, CAHAS
Asbestos Section Manager

**Electro-Analytical Group**

Environmental Consultants • Certified Laboratories

# APPENDIX A

Asbestos Inspection Data Sheets

# ASBESTOS INSPECTION DATA SHEET

**Client:** Building Laborers' Union Local 310

**Project:** Bulk Sampling of Suspect Asbestos Containing Materials

**Building:** 3250 Euclid Avenue, Cleveland, Ohio

**Functional Space:** Meeting Hall

| Group No. | ID # OH28233 | MATERIAL DESCRIPTION | LOCATION | Quant. | Material Type | Material Cond | CAUSE OF DAMAGE | PRESENT DISTURBANCE FACTORS | PRESENT POTENTIAL FOR DAMAGE | Hazard Assess. |
|---|---|---|---|---|---|---|---|---|---|---|
| A | -1 | 2' x 2' lay-in ceiling tile | Meeting hall | | | | | | | 0 |
| B | -2 | Fireproofing | Rear section | 6300 SF | T | ND | | | | D |
| | -3 | | East wall | | T | ND | | | | D |
| | -4 | | Stage | | T | ND | | | | D |
| C | -5 | Elbow insulation | Rear section | | | | | | | 0 |
| | -6 | | East wall | | | | | | | 0 |
| | -7 | | Stage | | | | | | | 0 |

**Legend (PRESENT POTENTIAL FOR DAMAGE):**
- Potential Significant Damage (PSD)
- Potential Damage (PD)
- Low Potential Damage (LPD)

**PRESENT DISTURBANCE FACTORS:**
- Friable
- Activity Low/Med/High
- Air Movement Low/Med/High
- Accessible
- Visible

**CAUSE OF DAMAGE:**
- O = Other (indicate in Comments)
- D = Deterioration
- W = Water damage
- P = Physical damage

**MATERIALS:**

**TYPE:**
- S - Surfacing
- T - Thermal
- M - Miscellaneous
- NF1 - Non-friable Cat. I
- NF2 - Non-friable Cat. II

**CONDITION:**
- ND - No Damage
- D - Damage
- SD - Significant Damage

**HAZARD ASSESSMENT**
- 0 - Non-ACM
- 1 - Poor; damage extensive & severe
- 2 - Damage w/high PSD
- 3 - Damage w/moderate PD
- 4 - Damage w/low PD
- 5 - Good condition w/high PSD
- 6 - Good Condition w/moderate PSD
- 7 - Good Condition w/low PD
- A - Point counting/layering recommended; assume ACM
- B - Verified by point counting
- C - TEM recommended; assume ACM
- D - Scheduled for renovation; no assessment required

**COMMENTS:**

ELECTRO-ANALYTICAL GROUP
7118 Industrial Park Blvd., Mentor, OH
44060-5314        (216) 951-3514

EAG Technician(s): George Kalevaka, CxHES #3030

Survey Date(s): April 13, 1998

EAG OH28233

Page    1 of    1

Electro-Analytical Group

Environmental Consultants • Certified Laboratories

# ASBESTOS INSPECTION DATA SHEET KEY

**Client and Project -** Information provided by either Work Order or Scope of Work

**Building -** Name or address of building.

**Functional Space -** A room, group of rooms, or homogeneous area designated by the inspector to prepare management plans, design abatement projects, or conduct response actions.

**Group No. -** An arbitrary number/letter assigned to each homogeneous material (material that is uniform in color and texture, serves the same function, and was installed at the same time) encountered during sampling.

**ID # -** A sample number assigned by the inspector which begins with the work order number (OH 28233) at the top of the column and then a unique sample number for each sample.

**Material Description -** Distinguishing characteristics which may include system type, function, size, color, shape etc. Also describes any layering information.

**Location -** Location of homogeneous material being sampled. This should include enough detail to be able to locate the sample location.

**Quantity -** Defined as linear footage (LF), square footage (SF), or number of fittings (FTGS), or number of miscellaneous items, each (EA or @)

**Material Type -** Abbreviations provided on the form as:

S - Surfacing Material (troweled or sprayed-on)
T - Thermal System Insulation
M - Miscellaneous

NF1 - Non-friable Category I
NF2 - Non-friable Category II

All miscellaneous material should be accompanied with a NESHAP classification of NF1 or NF2.

**Material Condition**

ND - No Damage. The material is in visibly good condition with no apparent damage.
D - Damage. Material that has "Damage" is defined as damage to less than 10% of the entire homogeneous group or less than 25% of a localized section of the homogeneous group.
SD - Significant Damage. Material that has been "Significantly damaged" is defined as damage to greater than 10% of the entire homogeneous group or greater than 25% of a localized section of the homogeneous group.

**Cause of Damage -**

P - Physical. Vandalism or accidental damage
W - Water. Water damage

D - Deterioration. Deterioration from age
Other - Additional influences that may cause damage

**Present Disturbance Factors -** Visible, Accessible, Air Movement, Activity, and Friable

Visible - Can it be seen; Yes or No
Accessible - Yes - The material is accessible to both the occupants of the building and custodial and maintenance personnel.
No - The material is not easily accessible to people; i.e., crawl spaces, pipe tunnels, pipe chases, etc.
Air Movement - Low - No air flow/plenum; air flow not recognizable to human touch.
Medium - Air flow/plenum present; noticeable air flow; recognizable to human touch.
High - Air flow/plenum/air handling unit/fan present; steady to gusty air flow; air flow obvious to human touch.
Activity - Low - No traffic/vibrations.
Medium - Moderate traffic and/or vibration.
High - High traffic and/or continuous vibration.
Friable - A material is considered friable if, when dry, it may be crumbled, pulverized, or reduced to powder by hand pressure.

**Present Potential for Damage -** Low Potential for Damage - Accessibility, Influence for Vibration and Air Erosion must be no, low or insignificant.
Potential for Damage - Accessible with any combination of low or medium ratings in the Influence for Vibration and Air Erosion categories
Potential for Significant Damage - Accessible with any combination with a high rating in Influence of Vibration and Air Erosion categories.

**Hazard Assessment -** Abbreviations provided on the form. PD = Potential for Damage. PSD = Potential for Significant Damage. O and Alphabetical abbreviations will be provided during reporting.

Electro-Analytical
Group
Environmental Consultants • Certified Laboratories

## APPENDIX B

Analytical Data

# Electro-Analytical Group

Environmental Consultants • Certified Laboratories

7118 Industrial Park Blvd.
Mentor, Ohio 44060
Attn: Client Services Department
Phone: (440) 951-3514 [Fax 951-3774]

Laborer's Union, Local 310
3250 Euclid Ave.
Cleveland, Ohio 44115

Attn: John Kilbane

Order #: 98-04-245
Date: 04/14/98 11:42
Work ID: Bulk Sampling
Date Received:  04/13/98
Date Completed: 04/14/98

Project Code: OH28233

## SAMPLE IDENTIFICATION

| Sample Number | Sample Description | Sample Number | Sample Description |
|---|---|---|---|
| 01 | 28233-01 | 02 | 28233-02 |
| 03 | 28233-03 | 04 | 28233-04 |
| 05 | 28233-05 | 06 | 28233-06 |
| 07 | 28233-07 | | |

Reproduction of this report is prohibited except in entirety.
Unless noted, soil, sludge, and sediment results are reported
on dry weight basis.  REF indicates Reference Laboratory.
'Reporting Limit' does not refer to any regulatory limit.

Certified By
Electro-Analytical Group

age 1
oceived: 04/13/98

Results by Sample

AMPLE ID **28233-01** _____          FRACTION **01A**    TEST CODE **PLM NG**   NAME **Bulk Asbestos Analysis**
                                   Date & Time Collected **04/13/98** _____        Category _____

| PARAMETER | RESULT | UNITS |
|---|---|---|
| ASBESTOS: | | |
| % Chrysotile | ND | |
| % Amosite | ND | |
| % Crocidolite | ND | |
| % Other Asbestos Fibers | ND | |

DATE RUN ____ 04/14/98
ANALYST **CRE**
DESCRIPTION ___     Lt. brown 2'x2' ceiling tile w/foil layer
LOCATION _____

AMPLE ID **28233-04** _____          FRACTION **04A**    TEST CODE **PLM NG**   NAME **Bulk Asbestos Analysis**
                                   Date & Time Collected **04/13/98**           Category _____

| PARAMETER | RESULT | UNITS |
|---|---|---|
| ASBESTOS: | | |
| % Chrysotile | 5 | |
| % Amosite | ND | |
| % Crocidolite | ND | |
| % Other Asbestos Fibers | ND | |

DATE RUN ____ 04/14/98
ANALYST **CRE**
DESCRIPTION                    Lt. brown fireproofing
LOCATION _____

AMPLE ID **28233-05** _____          FRACTION **05A**    TEST CODE **PLM NG**   NAME **Bulk Asbestos Analysis**
                                   Date & Time Collected **04/13/98**           Category _____

| PARAMETER | RESULT | UNITS |
|---|---|---|
| ASBESTOS: | | |
| % Chrysotile | ND | |
| % Amosite | ND | |
| % Crocidolite | ND | |
| % Other Asbestos Fibers | ND | |

DATE RUN      04/14/98
ANALYST **CRE**
DESCRIPTION                    White elbow insulation
LOCATION _____

EA Group    REPORT    Work Order # 98-04-245
eceived: 04/13/98

Results by Sample

AMPLE ID 28233-06 _____    FRACTION 06A    TEST CODE PLM NG   NAME Bulk Asbestos Analysis ____
                                       Date & Time Collected 04/13/98 _____    Category _____

| PARAMETER | RESULT | UNITS |
|---|---|---|
| ASBESTOS: | | |
| % Chrysotile | ND | |
| % Amosite | ND | |
| % Crocidolite | ND | |
| % Other Asbestos Fibers | ND | |
| DATE RUN | 04/14/98 | |
| ANALYST | CRE | |
| DESCRIPTION | | White elbow insulation |
| LOCATION | | |

AMPLE ID 28233-07 _____    FRACTION 07A    TEST CODE PLM NG   NAME Bulk Asbestos Analysis ____
                                       Date & Time Collected 04/13/98 _____    Category _____

| PARAMETER | RESULT | UNITS |
|---|---|---|
| ASBESTOS: | | |
| % Chrysotile | ND | |
| % Amosite | ND | |
| % Crocidolite | ND | |
| % Other Asbestos Fibers | ND | |
| DATE RUN | 04/14/98 | |
| ANALYST | CRE | |
| DESCRIPTION | | White elbow insulation |
| LOCATION | | |

Laborer's Union, Local 310

Basic Asbestos Quantification Method

These bulk samples were analyzed as received for percentage composition
of fibrous asbestos minerals only, by Polarized Light Microscopy (PLM).
This basic asbestos quantification analysis is performed on a composite
of each of the submitted sample(s), and therefore cannot be point
counted. Nor does it include identification of non-asbestos materials,
and therefore does not meet the specific requirements of NVLAP
protocols. If results are needed that will meet these protocols,
please contact your client services representative.

Asbestos Containing Materials (ACM) and Presumed Asbestos Containing
Materials (PACM) are regulated by several different governmental
regulatory agencies.

EPA NESHAP regulations cover certain buildings that are to be
renovated or demolished. NESHAP regulations require that when a sample
(or layer of a multi-layered sample) is analyzed and found to contain
asbestos at a concentration of less than 10% by a method other than
point counting by Polarized Light Microscopy (PLM), the owner/operator
has the option of:

1) Assuming the amount to be greater than 1% and treating the material
   as regulated ACM.

                              OR

2) Requesting verification of the amount by point counting.

Building owners/operators covered by NESHAP should review the following
for the full and specific regulations:
1) Federal Register, Vol. 55, No. 224, Tuesday, November 20, 1990
2) Clarification of NESHAP requirement to perform point counting,
   May 8, 1991
3) Federal Register, Vol. 59, No. 3, Wednesday, January 5, 1994
4) Federal Register, Vol. 59, No. 146, Monday, August 1, 1994
5) Federal Register, Vol. 60, No. 243, Tuesday, December 19, 1995

Building owners/operators and employers covered by OSHA regulations
also have specific requirements regarding ACM and PACM. Those who
may be covered by these regulations should review 29 CFR 1926.1101
for specific requirements.

FLOOR TILES: PLM should only be considered a screening method for
floor tile analysis. Any floor tile with a result of one percent or
less asbestos by PLM should be assumed positive for asbestos until the
sample is re-analyzed by Analytical Electron Microscopy.

Other difficult matrices (such as bituminous, organically bound, and
cementitious materials) may obscure very small asbestos fibers. Some
samples may also contain asbestos fibers with diameters below the limit
of resolution of the optical microscopes used in typical PLM analysis.
Therefore, negative results by PLM on these materials should be
confirmed by Analytical Electron Microscopy.

ago 4.                    EA Group              REPORT            Work Order # 98-04-245
eceived: 04/13/98                       04/14/98 11:42:12        Continued From Above

aborer's Union, Local 310

Electro-Analytical Group has a sample retention policy of
ninety (90) days.  After that time, the samples will be disposed
of unless the client has requested that they be returned.  The
client will be charged a shipping and handling fee associated with
returned samples only.

Key to analysis comments (if noted on samples):

***     Insufficient sample amount for quantitation and/or performing
        Quality Control functions.

****    Due to the nature of the sample (dust, debris, or vacuum),
        percentages for the constituents could not be assigned.

++      Contains fibers that may be an asbestos mineral but could not
        be positively identified by PLM.  Analysis by Transmission
        Electron Microscopy (TEM) is recommended.

+++     See additional comment on cover page.

ND      None Detected
Trace   Observed but less than 1%

This report applies only to sample(s) analyzed and may not be used by
the client to claim product certification, approval, or endorsement by
NVLAP or any agency of the U.S. Government.

Analysis By:                    Approved By:

ELECTRO-ANALYTICAL GROUP        ELECTRO-ANALYTICAL GROUP

Carl R. Eggebraaten             James D. Hale
Microscopist                    Microscopist

For additional information or assistance, contact our Client Services
Department.

Page S ⁱ
Received: 04/13/98                    EA Group              REPORT              Work Order # 98-04-245
                                          NonReported Work

FRACTION AND TEST CODES FOR WORK NOT REPORTED ELSEWHERE

)2A   |   PLM_C
)3A   |   PLM_C

# FIELD REQUEST FOR LABORATORY ANALYSIS

mpany Name: _Building Laborer's Union, Local 310_

dress: _3250 Euclid Ave._
_Cleve, OH 44115_

ention: _John Kilbane_

Results Needed By: _____
Normal _____    RUSH _____
Priority _____   (confirm w/ lab)
Date: _____   Time: _____

rphone: _216-881-5901_          Fax: _216-881-5928_

ipled by: _G.K._

ect Name: _Bulk Sampling_        Project Number OH- _28233_

1 Authorized by: _Dan Peters_     Project Category: ASB

ial Billing/Reporting: _Verbal Results requested by 4/17/98_

ial Contact: _Dan Peters_

## CHAIN OF CUSTODY

| nuished by | Date/Time | Received by Name | Date/Time |
|---|---|---|---|
| _Kolenski_ | _4/13/98_ | | |
| | _4-13-98_ | _Peters_ | _4-13-98_ |
| | | _Hrucharik_ | _4/13/98  3:15P_ |

FIELD OPERATIONS REQUEST FOR LABORATORY ANALYSIS

ASBESTOS BULK SAMPLING LOG

page 1 of 1

| Sple No. | Homo Group | Description | 1 | 2 | 3 | 4 | 5 | Comments |
|---|---|---|---|---|---|---|---|---|
| 8233-01 | A | 2x2 lay-in Ceiling Tile | | | | | | |
| -02 | B | Fireproofing | | | | | | |
| -03 | B | " | | | | | | |
| -04 | B | " | | | | | | |
| -05 | C | Elbow Insulation | | | | | | |
| -06 | C | " | | | | | | |
| -07 | C | " | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

1  PLM (Basic)    2    PLM (full)    3    PLM (point count)
4
5

t: _____ G.K.

ts _____ Sampling Date: 4/13/98

C



**ZONOLITE**

CONSTRUCTION PRODUCTS DIVISION
CHICAGO, ILLINOIS 60680

P.O. BOX 7093

ATRE PLASTERING
A.E. 12388 ST.
FIELAND, OHIO 44166

APPENDIX C