**U. S. BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

**In re:**

**W. R. Grace & Co., et al.**

**Debtor**

**Chapter 11**
**Case No. 01-01139 (JKF)**
**(Jointly Administered)**

**RESPONSE OF PAUL J. MARTIN AS TO CLAIM NO. 11310, M. J. & P., LLC AS TO CLAIM NO. 11312, P & S ASSOCIATES AS TO CLAIM NO. 11309 AND L. A. MARTIN, INC. AS TO CLAIM NO. 113111, ALL AS TO DEBTORS' 15th OMNIBUS OBJECTION TO CLAIM**

DEAN & FULKERSON
ATTORNEYS AND COUNSELORS
PROFESSIONAL CORPORATION
FIFTH FLOOR
801 WEST BIG BEAVER ROAD
TROY, MICHIGAN 48084-4767
(248) 362-1300

NOW COMES, **PAUL J. MARTIN AS TO CLAIM NO. 11310, M. J. & P., LLC AS TO CLAIM NO. 11312; P & S ASSOCIATES AS TO CLAIM NO. 11309; AND L. A. MARTIN, INC. AS TO CLAIM NO. 11311 (the "Claimants") (the "Claims")** by and through his/its attorneys, Dean & Fulkerson, P.C., Richard A. Barr and Paul R. Gilleran, Attorneys at Law, and in response to the objections of the Debtors as to these Claims and states in response:

The Claimants are the owners or tenant of property at 14300, 14390 and 14400 Henn Street, Dearborn, Michigan (the "Real Property"). They have owned or operated businesses on this property since 1992.

The Real Property was the former W. R. Grace and Company ("WRG") Dearborn plant, also known as the Henn Street Facility Dearborn Plant. It includes approximately 2.7 acres of land and was used by WRG to process vermiculite ore into attic insulation and for light-weight concrete aggregate. Since 1963, when WRG acquired the Zonolite Co., this property was used to process ore from Libby, Montana. Approximately 206,000 tons of vermiculite ore was processed from 1966 to 1988. According to the EPA, the vermiculite ore was contaminated with asbestos fibers including amphibole asbestos varieties, tremolite and actimolite, as well as other related fibrous asbestitom minerals.

Attached to this response is a sample of the many reports to support all the claims made herein. From these reports, Debtor can ascertain dates, product identification, product contamination, adequate evidence of the contamination of the site, various measurements of the scope of the contamination and the answer to and all objections filed to these claims.

The full scope, extent and value of these claim are not yet ascertainable as the project continues to be evaluated and, where possible, contained or eliminated. The Claimants estimate the value of all four (4) Claims at well over $250,000.

For the reasons cited herein, the Claimants ask the Court to deny the Debtor's objections to these Claims as the objections are unfounded and unwarranted against these Claimants.

DEAN & FULKERSON, P.C.

Dated: October 21, 2005

By:________________________

Richard A. Barr (P34478)
Paul R. Gilleran (P13991)
Attorneys for Claimants
801 W. Big Beaver, 5th Floor
Troy, MI 48084
Telephone: 248-362-1300
Facsimile: 248-362-1358

DEAN & FULKERSON
ATTORNEYS AND COUNSELORS
PROFESSIONAL CORPORATION
FIFTH FLOOR
801 WEST BIG BEAVER ROAD
TROY, MICHIGAN 48084-4767
(248) 362-1300

Exhibit 1



# *WORK PLAN FOR ASBESTOS ABATEMENT*

**N-FORCER SITE**
**FORMER W. R. GRACE AND CO. FACILITY**
**14300 HENN AVENUE**
**DEARBORN, MICHIGAN**

**Æ Project Number 04-2494-712**

**September 1, 2004**



Applied *Eco*Systems-Great Lakes, Inc.
**Environmental Management, Consulting and Field Services**
**An Affiliate of Keystone Environmental, Inc.**
**G-4300 South Saginaw Street**
**Burton, Michigan 48529**
**☎(810) 715-2525**
**FAX (810) 715-2526**

# *WORK PLAN FOR ASBESTOS ABATEMENT*

**N-FORCER SITE**
**FORMER W. R. GRACE AND CO. FACILITY**
**14300 HENN AVENUE**
**DEARBORN, MICHIGAN**

**Æ Project Number 04-2494-712**

**September 1, 2004**

**Prepared by:**

**Michael D. Smith**
**Senior Project Manager**

**Sandra K. Clark**
**Operations Manager**

## TABLE OF CONTENTS

1.0 INTRODUCTION AND PURPOSE ..... 1

2.0 INITIAL DISCOVERY OF ASBESTOS-CONTAINING MATERIALS ..... 1

3.0 RESPONSE AND ASSESSMENT ACTIVITIES CONDUCTED TO DATE ..... 2

4.0 PROPOSED REMEDY ..... 2

4.1 Soil Abatement ..... 2

4.2 Airborne Particulate Control ..... 3

4.3 Air Monitoring ..... 3

4.4 Soil Verification Sampling ..... 4

4.5 Waste Disposal ..... 5

5.0 SCHEDULE ..... 5

## ATTACHMENTS

**Appendix A** **Site Maps and Figures**

Figure 1 Site Location Map

Figure 2 Diagram

**Appendix B** **Previous Reports**

## 1.0 INTRODUCTION AND PURPOSE

Applied *Eco*Systems – Great Lakes, Inc. (Æ), on behalf of L. A. Martin, Inc., is providing environmental consulting services pursuant to removal of asbestos-containing soil at the former W.R. Grace and Company facility, located at 14300 Henn Avenue, Dearborn, Michigan. The site location is depicted on Figure 1 in Appendix A.

The subject property was occupied by W.R. Grace and Company from the 1940s until 1990 and was used for the manufacturing of asbestos-containing insulation. In 2003, in conjunction with assessment of multiple W.R. Grace and Company facilities nationwide, the Environmental Protection Agency evaluated the location for the presence of asbestos contamination.

This Work Plan summarizes corrective action conducted to date (for interior asbestos concerns) as well as the intended methods by which to abate asbestos detected in soils on the facility. The current property owner and occupant are undertaking abatement measures only on the subject property, having acquired and occupied the site only after operations involving asbestos-containing materials had ceased. This Work Plan is designed to present asbestos abatement activities completed as well as additional measures proposed; it is in no way an admission of responsibility for the asbestos contamination found on the subject site.

## 2.0 INITIAL DISCOVERY OF ASBESTOS-CONTAINING MATERIALS

Historical operations on the subject site included off-loading of vermiculite from rail cars on the northern portion of the property into the subject building, where the material was used in the manufacturing of insulation.

Asbestos containing materials (namely vermiculite) were discovered within the subject building by the Environmental Protection Agency (EPA) in 2003. The EPA also sampled near-surface soils on the property and discovered asbestos in three areas above applicable federal limits. The EPA reported the results of the assessment to a representative of the property owner in January 2003. A copy of the EPA correspondence, including a site map and analytical data, are included in Appendix B.

## 3.0 RESPONSE AND ASSESSMENT ACTIVITIES CONDUCTED TO DATE

In early 2004, the property owner retained Next Generation Services, Inc. of Ypsilanti, Michigan to conduct interior asbestos abatement activities. During the abatement, all visible vermiculite and loose insulation was removed using HEPA collection measures. The collected material was disposed of in a licensed Type II landfill.

A copy of the documentation provided by Next Generation Services Group, Inc. is attached in Appendix B.

## 4.0 PROPOSED REMEDY

In order to address remaining asbestos on the site (that contained within near-surface soils), Æ proposes the following remedial activities.

### 4.1 Soil Abatement

Based on the EPA's assessment of the site, it is expected that asbestos fibers are located in surface and near-surface soils throughout the project site. The majority of the site is paved with concrete or asphalt except the following:

- Lawns located south of the subject building. The areas contain grass, limited landscaping, and trees;
- A lawn area located east of the parking lot and adjacent to the CSX railroad grade. This area is elevated approximately two to three feet above the parking lot and may contain buried asbestos, although subsurface investigations have not been conducted in this area; and
- A railroad spur is located north of the building and extends to the west onto an adjacent property, also owned by an entity represented by Mr. Martin. This area is gravel-covered and is used to store an out-of-use railroad caboose and materials/equipment associated with the operations conducted on the subject property.

It is anticipated that removal of the asbestos in soils on the subject site will necessitate excavation and disposal of soils located in the upper one to two feet (possibly more if visible evidence of buried asbestos is encountered) of the surface soils.

Limited piles of vermiculite were also noted at the surface along the railroad spur by Æ.

### 4.2 Airborne Particulate Control

During excavation, it is anticipated that some engineering controls will be necessary to limit the spread of asbestos fibers due to wind. Generally, the following excavation activities and control measures will be employed:

- The excavation and transport will take place only during periods of little to no wind;
- Excavated soils will be transported from the excavation equipment to the disposal container (roll-off dumpster or dump truck) by the shortest route, with the container being staged as close as possible to the work area;
- Equipment will be operated in such a manner to limit exposure of soil to wind, such as dumping loaded soil from the excavation into the container from the lowest practical height;
- Containers will be covered with a tarpaulin or other similar means as soon as possible and before transport;
- Equipment wheels and tracks will be rinsed frequently, or as necessary, to prevent unnecessary building and tracing of soil across the site;
- Soil will be wetted prior to excavation and, if necessary, a light mist will be applied to the area of soil excavation to limit airborne particulate releases.

### 4.3 Air Monitoring

A construction monitoring technician will wear a particulate aerosol monitor during construction activities while monitoring at or in the excavation or work site. The data collected from the particulate aerosol monitor will quantify the levels of airborne particulate being generated in the work area such that recommendations can be made regarding the level of management to implement. The site representative will also wear personal air sampling equipment capable of collecting air samples for analytical testing for asbestos.

Two meteorological stations will be established based on excavation or work site size and/or location to evaluate prevailing wind directions. Meteorological information will be used to establish the positioning of the site representative with monitoring and sampling equipment and the placement of air monitoring stations.

Monitoring stations will consist of a sampling pump fitted with filter cassettes and filter media to collect air samples for asbestos analytical testing. The equipped monitoring stations will be inspected and manually read a minimum of four times daily to record and assess total particulate levels. On a daily basis, up to three stations will be equipped with particulate monitoring devices that continuously record particulate levels based on prevailing wind direction.

Since real-time monitoring instruments that identify asbestos fibers in air are not currently available, a testing program will be implemented to evaluate the concentration of asbestos in air. The OSHA permissible exposure limit (PEL) for asbestos is an 8-hour time-weighted average concentration of O. 1 fiber (longer than 5 micrometers and having a length to diameter ratio of at least 3 to 1) per cubic centimeter of air (0. 1 fiber/cm'). Asbestos filter media from personal air monitors and monitoring station sampling pumps will be analyzed daily using phase contrast microscopy (PCM) to count fibers present on the filter media. This method does not differentiate between asbestos and non-asbestos fibers. If the PEL for asbestos is exceeded using this method, the daily sample will be submitted for supplemental testing by transmission electron microscopy (TEM), which identifies whether the fibers are asbestos or not. If action levels described herein are exceeded in a particular area, those areas will be controlled by increasing the level of management, or implementing more aggressive techniques if necessary.

## 4.4 Soil Verification Sampling

Following the removal of surface soil and visible asbestos-containing materials, soil samples will be collected from the base of the excavation and the walls (where applicable) according to the following:

- The floors of the excavation will be sampled at a frequency of one soil sample per 1,000 square feet of excavated area in a grid pattern.
- The walls of the excavation will be sampled at approximately every 20-foot interval.

The soil samples will be collected in laboratory-approved, sealed containers. Samples will be analyzed for asbestos using polarized light microscopy and TEM analytical procedures. Any area where asbestos is detected above 1% total asbestos by either analytical method will be over excavated and resampled.

Following verification of the remedial excavation, excavated areas will be restored using fill sand and gravel/topsoil, new building development, or other suitable covering.

### 4.5 Waste Disposal

Wastes will be containerized in either a roll-off dumpster or a dump truck. Each load will be secured with a tarpaulin or other similar device to limit release of asbestos fibers and/or asbestos-containing soils during transport.

All regulated wastes will be disposed of in a Type II landfill under appropriate manifests. Documentation of the disposal will be provided to the EPA in the final project report.

## 5.0 SCHEDULE

Activities outlined in this Work Plan, which (in general) will be conducted according to the following schedule:

| Activity | To be completed by ________th day after approval of Work Plan |
|---|---|
| Waste Characterization and Disposal Approval | 15 |
| Scheduling Field Activities | 20 |
| Field Work | 30 |
| Sample Analysis | 45 |
| Over Excavation (if necessary) | 60 |
| Sample Analysis | 75 |
| Final Report | 90 |

As indicated above, it is anticipated that the project can be completed within approximately 90 days after EPA approval.



Applied *Eco*Systems-Great Lakes, Inc.

*Environmental Management, Consulting and Field Services*

- An Affiliate of Keystone Environmental, Inc. -

September 12, 2004

Æ Proposal Number 04-2494B-712

Mr. George Rizik, II
Rizik & Rizik, P.C.
8226 South Saginaw
Grand Blanc, Michigan 48439

Subject: PROPOSAL FOR ASBESTOS REMEDIATION
14300 Henn Street
Dearborn, Michigan

Dear Mr. Rizik:

Applied *Eco*Systems-Great Lakes, Inc. (Æ) has completed a *Work Plan for Asbestos Abatement* for the above facility, which outlines necessary steps to excavate asbestos-impacted soil at the facility, provide on-site air monitoring, and conduct soil analysis to confirm the remediation. Please note that the extent of asbestos-impacted soil is not known; therefore, costs to complete the remediation are presented in unit rates with a total estimate based on the expected volume of soil generated.

This proposal includes costs associated with the following scope of work:

- Collection and analysis of one sample of the railroad ties, which will require special landfill approval;
- Notification to MISS-DIG of the intended excavation activities (Æ will not be responsible for unmarked public or private utilities);
- Preparation of a site-specific health and safety plan;
- Notification of appropriate regulatory agencies;
- Removal and disposal of the railroad spur (Æ will not be responsible for removal or relocation of the caboose or other equipment staged on the site);
- Removal and disposal of necessary trees;
- Excavation and disposal of impacted soils and asbestos containing building materials encountered in the soil;
- Application of water to excavated soils during excavation to minimize dust dispersion;
- Daily air monitoring;
- Collection and analysis of soil samples from the floors and walls of the excavation; and
- Preparation of a No Further Action request for submittal to the Environmental Protection Agency.

G-4300 South Saginaw Street • Burton, MI 48529 • (810) 715-2525 • FAX (810) 715-2526

Mr. Rizik
September 1, 2004
Æ Proposal Number 04-2494B-712
Page Two of Three

Æ will complete the above scope of work according to the following cost schedule:

| Activity | Unit Rate | Units | Extended |
|---|---|---|---|
| Landfill approval and characterization | Lump sum | | $ 625.00 |
| Notifications and Health and Safety Plan (Project Manager) | $70 per hour | 10 hours | 700.00 |
| Removal and disposal of rail spur | Lump sum | | 3,200.00 |
| Removal and disposal of trees | Lump Sum | | 550.00 |
| Soil excavation, disposal, backfill with sand and cover with gravel or seeded topsoil | $35 per cubic yard | 2,400 yards | 84,000.00 |
| Field Technician and expenses (daily rate) | $800 per day | 5 days | 4,000.00 |
| Water application (included excavation rate) | | | |
| Air monitoring | $720 per day | 5 days | 3,600.00 |
| Sample analysis | $95 | 45 samples | 4,275.00 |
| Reporting | Lump Sum | | 2,500.00 |
| **ESTIMATED TOTAL** | | | **$103,450.00** |

If you would like Æ to commence with the outlined scope of work at the lump sum and unit rates presented, please sign and return this document to Æ. Æ appreciates the opportunity to provide this estimate. Æ will honor this estimate for a period of 90 days from the date of this proposal. Please do not hesitate to contact Sandra Clark or me at (810) 715-2525 with any questions.

The proposed scope of work and information presented in this correspondence is based on information known by Æ to date and shall not be construed as consulting advice or service outside the context of this proposal. Æ encourages the client/and or client's legal counsel to carefully review the proposed scope of work and submit any comments or additional information to Æ that may be relevant to the investigation.

Signatures:
The above scope of work will be performed according to Æ's Terms and Conditions dated March 20, 2003.

Æ Client Contact: [signature] Client Representative ______________
Date 9/1/04 Date ______________

# Project Work Plan

*Site:*
N-Forcer Site
Dearborn, Michigan

*Prepared for:*
U.S. Environmental Protection Agency, Region V
77 West Jackson Boulevard
Chicago, Illinois 60604

*Prepared by:*
Earth Tech, Inc.
7870 Villa Park Drive, Suite 400
Richmond, Virginia 23228

*March, 2005*

Earth Tech Project No. 84343.01

# Project Work Plan

*Site:*
N-Forcer Site
Dearborn, Michigan

*Prepared for:*
U.S. Environmental Protection Agency, Regio
77 West Jackson Boulevard
Chicago, Illinois 60604

*Prepared by:*
Earth Tech, Inc.
7870 Villa Park Drive, Suite 400
Richmond, Virginia 23228

*March, 2005*

Earth Tech Project No. 84343.01

*Author:* ____________________

*Title:* ____________________

*Date:* ____________________

*Reviewer:* ____________________

*Title:* ____________________

*Date:* ____________________





**Table of Contents**

1.0 INTRODUCTION ..... 1
1.1 CERCLA Task Order # 026 ..... 2
1.2 Earth Tech's Understandings ..... 3
1.3 Technical Approach ..... 3
1.4 Preplanning ..... 3
1.5 Applicable Regulations ..... 3
2.0 Mangement Approach and Communications ..... 4
2.1 Scoping Meetings ..... 4
2.2 Daily RM and OSC Meetings ..... 4
2.3 Site Command Structure ..... 5
2.4 Resources and Scheduling ..... 5
2.5 Work Plan Amendments ..... 6
3.0 Performance Standards ..... 6
4.0 Mobilization and Utilities ..... 6
4.1 Power ..... 6
4.2 Telephone Service ..... 6
4.3 Water Supply ..... 6
4.4 Sanitary Services ..... 6
4.5 Field Trailers ..... 6
4.6 Contamination Reduction Zone (CRZ) Setup ..... 7
4.7 Site Security ..... 8
5.0 SURFACE PHASE CLEANUP ..... 8
5.1 Soil Excavation ..... 8
5.2 Dust Control ..... 8
5.3 Run-off ..... 8
5.4 Disposal ..... 9
5.5 Housekeeping and Street Cleaning ..... 9
6.0 Removal of Contamination from Concrete Surfaces ..... 9
7.0 Soil Sampling ..... 9
8.0 Personnel Air Sampling ..... 9
9.0 Backfill and Restoration ..... 9
10 Paving ..... 10
11 Railroad Spur ..... 10
12 Residential ..... 10
13 Demobilization ..... 10





**Appendices**

| | |
|---|---|
| Appendix A | Personnel and Equipment List |
| Appendix B | Project Schedule |
| Appendix C | Cost Estimate |
| Appendix D | Manifest example |





## 1.0 INTRODUCTION

This section outlines the site preparation work required for site setup to be completed. Although some of the activities discussed below can be conducted concurrently, many can be performed only in sequence. Appendix A is a list of personnel and equipment, Appendix B is a project schedule and Appendix C is a detailed cost estimate.

The former W.R. Grace & Company (WRG) Dearborn plant (also known as the Henn Street Facility, Dearborn plant, and N-Forcer Site) is located at 14300 Henn Street, Dearborn, Wayne County, Michigan. Land use in the surrounding neighborhood includes recreational (a soccer field is located across the street), residential, educational, commercial, and industrial. The Site is currently defined as the 2.7 acre parcel at 14300 Henn Street, Dearborn, Michigan. The parcel currently has a single 16,000-square-foot building, which was utilized for the processing of vermiculite ore into attic insulation and lightweight concrete aggregate. The original Site consisted of a railroad spur, where raw ore was off-loaded, two storage silos, exfoliation furnaces, and bagging/processing space. Processing of vermiculite ore ended in 1989, when WRG ceased operations at the Dearborn plant. The storage silos and exfoliation furnaces were dismantled and removed and the railroad spur is no longer used.

On September 27, 2002, staff from ATSDR, U.S. EPA, and MDCH visited the DMACI facility as part of ATSDR's National Asbestos Exposure Review. During this visit, staff observed vermiculite ore on the ground on the north and southeast areas of the property. Staff also observed material consistent with stoner rock behind the wooden slats of an interior wall in the main DMACI building.
These findings led ATSDR to ask U.S. EPA to test the wall cavity material, the indoor air of the room where the material was located, and several on-site soil samples for asbestos. On January 14, 2003, U.S. EPA collected four composite and two grab soil samples from around the property as well as two air samples from the work area and one grab sample of material from the interior wall space inside the main building. Analysis of the on-site composite surface soil samples (taken from five separate locations 0-2 inches below the surface) showed concentrations of tremolite and actinolite asbestos species ranging from non-detect (<1%) to 3%.



Earth Tech (ET) has been contracted by the U.S. Environmental Protection Agency (EPA) to conduct soils excavation and transportation and disposal (T&D) of the identified asbestos contaminated soils located at 14300 Henn Ave, Dearborn, MI

The estimated costs are to complete this project is $210,000.00.








## 1.1 CERCLA Task Order # 026

ET received verbal Task Order # 026 USEPA Contract 68-S5-03-01 on March 04, 2005. The task order outlined the following tasks:

- Prepare a site-specific health and safety plan including air monitoring plan and site security plan;
- Excavate and remove asbestos-contaminated soils to a maximum depth of 18 inches or otherwise prevent exposure from on-site surface soils from areas contaminated with ≥1% asbestos or which may pose an inhalation hazard;
- Excavate and remove or otherwise prevent exposure from asbestos-contaminated off-site soils if investigations find no more than (8) effected homes;
- Dispose of contaminated soils at an EPA-approved off-site facility in accordance with the U. S. OFF-SITE Rule;
- Implement engineering measures to control dust during the clean-up
- Install a recognizable marker at the bottom of the excavated area prior to backfill if asbestos remains;
- Backfill excavated areas with clean soil and restore property to original preremoval condition;





## 1.2 Earth Tech's Understandings

This work plan represents ET's project approach, schedule and cost estimate. As a company with extensive experience in cleaning up vermiculite sites ET will use its knowledge and resources to accomplish the safe and cost effective cleanup of this site.

## 1.3 Technical Approach

ET developed this work plan at the request of the On-Scene Coordinator (OSC) to outline schedule, logistics, manpower, equipment, procedures, and costs to accomplish this removal in a safe and efficient manner. ET's goals for this removal are to protect the workers, public and environment.

ET's approach will be divided into preplanning, mobilization, removal and close out. Preplanning will involve developing a waste sampling plan, waste characterization plan, transportation and disposal plan, and site-specific health and safety plan (HASP). Mobilization will involve mobilization of crew and equipment, delineation of the work zones, review of safety plan and decontamination techniques.

## 1.4 Preplanning

On March 9, 2005, Response Manager (RM) Carl Duffey visited the site and attended a planning meeting with EPA, ATSDR, MDCH, MDEQ, and START. The following items were discussed for the General Scope for Removal Activities:

- The vegetated areas on the east and north side of the building will be excavated to a maximum of 18 inches below grade.
- Concrete pads in the north side of the site will be pressured washed. The existing asphalt parking lot will be repaved.
- A survey will be performed to determine the property boundaries.

Also discussed:

- **CSX Report**
- **Air Dispersion Models**
- **Statistical Sampling of Homes Within The Dispersion**
- **Identification of Off-Site Locations**
- **Visual Inspections**
- **Development of Onsite and Offsite Sampling Plan**
- **Excavation**
- **Offsite Remediation**
- **Development of Air Monitoring Plan**
- **Logistics**
- **Other Items**

See meeting notes for further discussion on the above items.

## 1.5 Applicable Regulations





**Per MI OSHA Compliance Division all personnel know working with ACM will be required to have the basic requirements below.**

1. **Michigan Asbestos Supervisor Training License/Certificate (at least one person on site),**
2. **Michigan Asbestos Worker Training License/Certificate (all the workers who will knowingly be working with Asbestos Containing Material (ACM),**
3. **Asbestos Awareness Training (2hr.) (Individuals who don't expect to work directly with the ACM).**

**Transporting soil containing asbestos is a Class 9 Hazardous Material and does not require a designated route during T&D. It does have to have a placard for Class 9 material on the truck.**

## 2 Management Approach and Communications

The RM will be fully dedicated to the task order. A purchasing/subcontracting agent and T&D Coordinator will be assigned to the project. We anticipate use of Dawn Blevins as the T&D Coordinator

ET utilizes scoping meetings, work plan development, daily RM-OSC meetings, and daily operational and toolbox safety meetings, to ensure that communication continues successfully throughout the project.

### 2.1 Scoping Meetings

Scoping meetings are held before and during mobilization to the site to ensure that each ET's support department and any team subcontractor offices are prepared to provide needed assistance. The program manager (PM), RM, division manager, resource manager and the team subcontractor's point of contact will be available if necessary to identify specific resource requirements and potential critical paths using the staff's collective experience to respond to the USEPA needs. The RM will always remain the primary point of communication with the OSC for all site-related issues. Scoping meetings will also be held between the PM, RM, T&D Coordinator, and the Purchasing Agent to develop the scope of services necessary for this removal. Discussion will assure that the transportation and disposal contracts are in process, the facility is CERCLA approved, and the waste profiles have been submitted, necessary site supplies have been ordered, and that the other subcontracts are in place such as backfill and heavy equipment. The PM and RM will also be meeting with the points of contact with any Team Subcontractors providing services to this project, to confirm arrangements for personnel and equipment supplied by the Team Subcontractor.

### 2.2 Daily RM and OSC Meetings

While on site, a daily meeting will be held between the RM and OSC. ET's standard procedure is to conclude each workday with a meeting to discuss past, present, and future tasks as well as any other pending issues. The attendees typically include the OSC, RM, Foreman, and START. The assembled staff will be able to field any specific questions the OSC may have, enabling direct reports from each facet of the project. The goal is not only to inform the OSC but to facilitate effective internal communication as well. All pertinent information discussed during the "close of business" meetings will be summarized into a daily work orders and submitted to the OSC with the 1900-55 by noon the following morning. The daily work orders will include the following information:

Primary health and safety concerns of project tasks





Subcontracting needs (if any)
List of all site personnel and their role in each task
List of all equipment and its role in each task
General comments regarding site operations
Problems, issues, concerns, resolutions
Cost to date
Percent of ceiling remaining
Acknowledgment by RM
Acknowledgment by OSC

### 2.3 Site Command Structure

The RM will head ET's site command structure. He is the main point of contact for the OSC. The RM will be responsible for direct supervision of the cleanup personnel, development and adherence to the HASP, and the execution of the work plan and subcontracts. He will assure that the ET on-site team is effective in executing the work plan objectives and procedures. He will maintain communication with the ET support staff to assure that necessary subcontracts, especially the contracts for transportation and disposal are completed. He will be the primary contact for communication with local vendors, the foreman, operators and crew.

The foreman will report directly to the RM. His responsibilities include running the crew and completing tasks as the RM assigns them. The Foreman will provide a communication avenue between the crew and the RM if necessary.

Equipment operators (EO) familiar with a project of the type are critical for this response. EOs will report to the foreman and RM on the best approaches for the use of equipment to accomplish the work objectives with minimal cross contamination and environmental impact.

The clean-up technicians (CT) will be responsible for completing tasks as the Foreman and RM assign them. They will aid in the treatment and removal of the contaminated soil and debris. They will have a good understanding of the HASP and ET's Standard Operating Procedures.

### 2.4 RESOURCES AND SCHEDULING

After arriving on site, the RM will meet with the OSC to determine and address the immediate needs and concerns at the site based on the scope of work as presented in this work plan. Once all preliminary preparations have been completed and the full scope of services has been finalized, additional personnel such as the foreman, equipment operators, and environmental technicians will be assigned as necessary to prioritize and implement the tasks outlined in this plan. Likewise, the necessary materials and equipment to accomplish completion of the task order will be mobilized to the site based on priority of utilization for each specific task. To ensure site operations are effective and cost-efficient, the Foreman and RM will review resources on site, after the completion of each designated task, to assess their future needs and the possibility of increasing and/or reducing staff to maximize task performance and efficiency. Tasks will be performed concurrently to facilitate an effective cost management approach to addressing site hazards. Appendix A shows a list of personnel and equipment. Appendix B shows the project schedule.

## 2.5 Work Plan Amendments

The work plan will be followed. Amendments to the work plan will be recorded and signed-off by the RM and OSC. The OSC has the final decision on amending the work plan.

# 3 Performance Standards

ET's performance will be judged based on:

- Safety
- No injuries
- H&S audit
- Housekeeping
- Schedule adherence
- Cost adherence

# 4 Mobilization and Utilities

ET will mobilize to the site with a small crew and equipment necessary to complete the scope of services outlined in the Task Order. Mobilization and setup for the site has been scheduled to begin April 04, 2005, with the crew arriving to begin work on April 11, 2005.

## 4.1 Power

Temporary power will be supplied to the USEPA and ET command/crew site office trailers.

## 4.2 Telephone Service

A total of six to eight temporary telephone service lines will be supplied to the USEPA and ET command posts. Each trailer will be equipped with high speed internet.

## 4.3 Water Supply

Water for dust control (and showers if needed) will be provided by filling temporary tanks from the potable fire hydrant water supply at Henn Street. Drinking water will be supplied using off-site vendors.

## 4.4 Sanitary Services

Temporary sanitary facilities will be provided on site by off-site vendors.

## 4.5 Field Trailers

Two temporary office trailers will be mobilized for site facilities.






### 4.6 Contamination Reduction Zone (CRZ) Setup

Work zones will be established in accordance with 29 CFR 1910.120 and the site-specific HASP. The CRZ will be assembled prior to initiation of site activities. The decontamination areas within the CRZ will include the tool drop, dress-out and suit removal areas, and wash area for respirators, boots and hands.







### 4.7 Site Security

Per site conditions and EPA direction ET will subcontract installation of an alarm system (ADT SafeWatch system) for the site offices for after work hours.
This system consists of a motion detection alarm system connected to the telephone to notify authorities & ET/EPA in case of an intrusion or emergency after work hours.

Should the site conditions warrant or at EPA direction ET will subcontract a security guard service.

## 5 SURFACE PHASE CLEANUP

Surface phase cleanup will be conducted in accordance with the site-specific Health and Safety Plan. These activities include the excavation and disposal of asbestos-contaminated soil, sampling of surface and subsurface soil for presence of asbestos, and restoration of excavated areas through backfill and seeding or placement of gravel driveways.

### 5.1 Soil Excavation

Areas for excavation will be marked with survey stakes/flags. ET will notify "MISS DIG" at lease two days prior to excavation where practicable to locate and mark underground utilities. All areas of the work zone and access points will be marked with red asbestos barrier tape. All personnel entering the work zone will be required to follow Health and Safety guidelines including the use of full-face respirators. Personnel air sampling will be conducted on personnel working in the exclusion zone as per MI OSHA guidelines.

ET will utilize an excavator or hand shovels to excavate marked areas in 6-inch lifts. The excavator will load the wheel loader and the wheel loader will transport the soils to a waiting dump truck or staged rolloff (20 $yd^3$ roll-off boxes with lock down lids and liners). The truck or rolloff will be tarped and secured at the end of the shift each day or sent off site for disposal. Each area will be inspected visually for the presence of asbestos. If asbestos is present, a successive 6-inch lift will be excavated to a maximum of 18 total inches of depth in areas determined by USEPA/START to be visibly contaminated with asbestos. Excavated soil will be manifested and shipped to an approved disposal facility in accordance with all federal, state, and local laws and regulations.

See manifest example in Appendix D

### 5.2 Dust control

During excavation a water truck or hand sprayers will be used to keep the excavation area wet during excavation, loading, or other operations that may cause potential release of asbestos fibers. Water application will consist of a light mist to prevent run-off.

### 5.3 Run-off

Site run-off of rain & dust control water will be contained through the use of silt fence installed around all excavation areas. Any collected water will be reused for dust control.





### 5.4 Disposal

ET will subcontract the Transportation & Disposal of the ACM soil from the N-Forcer site. The facility(ies) accepting the waste must be in compliance with the CERCLA Off-Site Disposal Rule (40 CFR 300.440 as stated in Federal Register Vol. 58, No. 182, dated September 22, 1993) and must have all required permits. All intermediate facility(ies)/Treatment, Storage, and Disposal Facility(ies) (TSDF) at which waste stops en route to the final disposal facility must also be in compliance with the off-site policy. If, at any time during the duration of this contract, the TSDF or ultimate disposal facility receives notice that it is not or may not be in compliance with the CERCLA Off-Site Disposal Rule, the subcontractor shall notify Dawn Blevins at ET immediately in writing. In any event, ET shall have the right to unilaterally terminate this contract. ET with coordinate with EPA Region 5 CERCLA compliance rep William Damico on all disposal facilities CERCLA compliance before any waste is shipped. ET will prepare and verify manifests prior to OSC signature.

### 5.5 Housekeeping and Street cleaning

ET will take care to keep all contamination inside the work area. The trucks will stay on the paved areas while being loaded with poly placed to catch and spilled material. Should any material be spilled the crew will immediately clean up with brooms & shovels. ET will have a HEPA vacuum available to collect any spilled materials.

## 6. Removal of Contamination from Concrete Surfaces

ET will use a pressure washer to wash contamination from concrete & paved surfaces back into the excavated areas. If the conditions dictate ET can utilize a HEPA vacuum to remove surface contamination.

## 7 Soil Sampling

START/ERT has been tasked with perimeter air sampling as well as confirmation sampling of soils. ET will assist with bulk soil samples at the direction of USEPA. These samples will be obtained to determine the presence of asbestos.

## 8 Personnel Air Sampling

ET will be responsible for Personnel air sampling of workers. ET will provide analysis of worker breathing zone samples.

## 9 Backfill and Restoration

Following excavation and confirmation sampling, the property will be backfilled with topsoil and compacted with a gasoline-powered plate compactor so as to be restored to the pre-excavation condition where possible. Due to the limited depth of excavation no compaction testing will be done. A sample of the backfill material will be analyzed before backfilling operations. Backfill sample will be analyzed for TCL, VOCs, SVOCs, PCB, Pesticides and TAL Metals. Backfilled areas will be seeded according to the owners preference and or the growing season for this area.

A geothermal fabric or other barrier/marker will be placed on the bottom of the excavation prior to backfill/restoration as an indicator of excavation limits if vermiculite remains after 18 inches. This will







not be considered an impermeable barrier. Property restoration will mainly include the replacement of excavated grassed areas.

**10 Paving**

ET will subcontract the repaving or sealing of the parking lot(s) at the east and/or west side of the 14300 Henn Avenue building as per USEPA OSC's direction after the completion of work at the site.

**11 Railroad spur**

ET will contact the railroad to see the preferred method to remove the railroad spur and if it should be removed at all.

**12 Residential**

As contaminated residential properties have not been identified or do not exist, and may vary from on-site activities; ET will amend the work plan based on the results of the ERT sampling phase, if needed.

**13 DEMOBILIZATION**

If no contaminated residential properties are identified, and once the excavation, disposal, sampling, and restoration phases are complete, ET will demobilize project personnel, materials, and equipment.

**Appendices**

# Appendix A

## Personnel and Equipment List

# PERSONNEL AND EQUIPMENT LIST FOR N-FORCER SITE

## Personnel

- RM-01
- FCA-01
- H & S-01
- *Foreman-01
- *Equipment Operator – 02
- *Technicians – 02

## Equipment/Supplies

- Excavator – 01 – (JDeere 120E, Kobelco SK130LC-1/2 Cu Yd, 12-14 Metric Ton, Crawler, Dsl)
- Wheel Loader – 01– (JDeere 544H, Volvo L70C)
- Water Truck – 01
- Office Trailers – 02
- Porta-Johns – 02
- *Utility Trailer – 01 – (Tag-Along)
- Red Asbestos Barrier Tape
- Compactor
- Pressure Washer
- *Fuel Truck/Tank
- Geothermal Fabric
- RM Pickup
- FCA car
- *Crew vehicle
- *Fence Posts – 30 (these will be returned to BW)
- *PPE (5 cs – tyvek, 5 cs – booties, 1 – cs sample gloves, 1 – dz leather palm gloves, duct tape, 1 cs cartridges)
- *Shovels/rakes
- *Street Brooms-02

## Subcontractor

- Surveyor
- Electrician
- Phone Service
- Electric Service
- T & D
- Paving – Parking Lot
- Potable Water
- Topsoil
- ADT-alarm system

*Bay West Equipment

**Appendix B**

**Project Schedule**

| ID | Task Name | Duration | Start | Finish |
|---|---|---|---|---|
| 1 | N-Forcer | 40 days | Thu 3/10/05 | Wed 5/4/05 |
| 2 | Offsite Prep | 17 days | Thu 3/10/05 | Fri 4/1/05 |
| 3 | Mobilization | 1 day | Mon 4/4/05 | Mon 4/4/05 |
| 4 | Site Setup | 4 days | Tue 4/5/05 | Fri 4/8/05 |
| 5 | Soils Excavation-A1 | 3 days | Mon 4/11/05 | Wed 4/13/05 |
| 6 | Soils Excavation-A2 | 4 days | Thu 4/14/05 | Tue 4/19/05 |
| 7 | Soils Excation-A3 | 4 days | Wed 4/20/05 | Mon 4/25/05 |
| 8 | Backfill-A1 - A3 | 5 days | Tue 4/26/05 | Mon 5/2/05 |
| 9 | Demobilization | 1 day | Tue 5/3/05 | Tue 5/3/05 |
| 10 | Pave Parking Lot | 1 day | Wed 5/4/05 | Wed 5/4/05 |



**Appendix C**

**Cost Estimate**

**Appendix D**

**Manifest Example**

Exhibit 2



UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
WASHINGTON, D.C. 20460

MEMORANDUM

**SUBJECT:** Region V Request for Concurrence on a Nationally Significant or Precedent Setting Removal Action at the N-Forcer Site in Dearborn, Michigan.

**FROM:** Gary Turner, Acting Director
Program Operations and Coordination Division

**TO:** Debbie Dietrich, Director
Office of Emergency Management

This memorandum transmits the attached Region V request for concurrence on a proposed time-critical removal action at the N-Forcer site (also known as the W.R. Grace Dearborn plant, Henn St. Facility) in Dearborn, Wayne County, Michigan. This request is considered nationally significant because the primary contaminant is asbestos

The attached memo from Richard Karl to you describes in detail the history of the site This action will involve removal of the asbestos form soil on the site, defining and investigating off-site locations, and removing asbestos from up to eight off-site locations.

I recommend that you approve the Region V request. Regional coordinators, OGC and OECA have reviewed the attached action memorandum and concur with the action.

If you would like additional information, please contact Sherry Fielding at 564-6174 or Jeff Crowley at 564-8753.

Attachment

Recycled/Recyclable
Printed on paper that contains at least 75% recycled fiber

inside the building, have been appropriately cleaned up; characterize the extent and magnitude of remaining vermiculite contamination in on-site soils; based on the results of the characterization, develop a plan to eliminate or reduce future exposures, and; characterize the degree and magnitude of remaining contamination in off-site soils in the neighborhood immediately surrounding the former WRG facility.

ATSDR, MDCH, and the Michigan Department of Environmental Quality have requested U.S. EPA assistance in implementing these recommendations.

The Action Memorandum is attached for your review. My approval awaits your concurrence.

Concur:

Deborah Dietrich [signature] 2-18-05
Deborah Dietrich, Director, Office of Emergency Management Date

Non-Concur:

Deborah Dietrich, Director, Office of Emergency Management Date




UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
REGION 5
EMERGENCY RESPONSE BRANCH
9311 GROH ROAD, ROOM 216
GROSSE ILE, MI 48138-1697

REPLY TO ATTENTION OF:

**ACTION MEMORANDUM**

SUBJECT: Request for a Time-Critical Removal Action at the N-Forcer Site in Dearborn, Wayne County, Michigan (Site ID #B55P)

FROM: Brian Kelly, On-Scene Coordinator
Emergency Response Section 1

TO: Richard C. Karl, Director
Superfund Division

THRU: Thomas Geishecker, Acting Chief
Emergency Response Branch

## I. PURPOSE

This action memorandum requests and documents approval to expend up to $964,000 to conduct a time-critical removal action at the N-Forcer Site (also known as W.R. Grace & Company Dearborn plant and the Henn Street facility), 14300 Henn Street, Dearborn, Wayne County, Michigan, 48126. The proposed removal action is necessary to mitigate the immediate threat to public health posed by the presence of fibrous amphibole Libby Asbestos (LA). The asbestos contamination is the result of expansion of vermiculite from W R Grace's Libby, Montana, mine.

The response action proposed will mitigate the threats by: identifying facility soils contaminated with asbestos using modified polarized light microscopy (MPLM) or similar method; removing asbestos from all soil areas on the Site where asbestos is present at levels above 1% or which may pose an inhalation hazard; defining and investigating potential off-site locations where asbestos from the Site may have migrated or been moved; and removing asbestos from up to eight identified off-site locations where asbestos is present at levels above 1% or which may pose an inhalation hazard.

The proposed removal action is time-critical because of continued potential pathways of exposure.

This removal action will not address residential indoor materials or viable consumer products. The project will require an estimated 44 (34 removal, 10 day sampling) on-site working days to complete.

Asbestos removals are nationally significant. U.S. EPA is following Agency for Toxic Substances and Disease Registry (ATSDR), Michigan Department of Community Health (MDCH), and Michigan Department of Environmental Quality (MDEQ) guidance on cleanup levels. The removal will follow precedents and protocols set by other asbestos cleanups. The N-Forcer Site is not on the National Priorities List.

## II. SITE CONDITIONS AND BACKGROUND

CERCLIS ID #MIN 000 508 756

### A. Site Description and Background

The former W.R. Grace & Company (WRG) Dearborn plant (also known as the Henn Street Facility, Dearborn plant, and N-Forcer Site) is located at 14300 Henn Street, Dearborn, Wayne County, Michigan. Land use in the surrounding neighborhood includes recreational (a soccer field is located across the street), residential, educational, commercial, and industrial. The Site is currently defined as the 2.7 acre parcel at 14300 Henn Street, Dearborn, Michigan. The parcel currently has a single 16,000-square-foot building, which was utilized for the processing of vermiculite ore into attic insulation and lightweight concrete aggregate. The original Site consisted of a railroad spur, where raw ore was off loaded, two storage silos, exfoliation furnaces, and bagging/processing space. Processing of vermiculite ore ended in 1989, when WRG ceased operations at the Dearborn plant. The storage silos and exfoliation furnaces were dismantled and removed and the railroad spur is no longer used.

During the 1950s, the Zonolite Company started leasing the facility to process vermiculite ore from Libby, Montana. In 1963, the Zonolite Company was acquired by WRG and continued to use the Dearborn plant to manufacture attic insulation and lightweight concrete products using Libby vermiculite ore. Die, Mold & Automation Components, Inc. (DMACI), currently operates on the Site.

According to WRG shipping records, the Dearborn plant processed about 206,000 tons of vermiculite ore from Libby, Montana, from 1966 to 1988 (this may be an underestimate as WRG likely started processing vermiculite at least 10 years prior to 1966). Over time, it became known that vermiculite ore mined from Libby was contaminated with asbestos fibers, including the amphibole asbestos varieties tremolite and actinolite, as well as the related fibrous asbestiform minerals winchite, richterite, and ferro-edenite. In this document, the asbestos in Libby vermiculite is referred to as LA.

Studies throughout the 1980s indicated that vermiculite workers showed increased rates of asbestos-related respiratory diseases. The findings at Libby and sites processing ore from Libby provided the impetus for investigating the Dearborn Site, as well as other sites across the nation that received asbestos-contaminated vermiculite from the Libby mine.

**B. Vermiculite Processing**

Vermiculite is a non-fibrous, platy weathered mica mineral type used in many commercial and consumer applications. Raw vermiculite ore is used in gypsum wallboard, cinder blocks, and other products. Exfoliated vermiculite ("popped" vermiculite) is formed by heating the ore to approximately 2,000 degrees Fahrenheit, which explosively vaporizes the water contained within the mineral structure and causes the vermiculite to expand by 10 to 15 times. The finished, expanded product is used as loose fill insulation (mainly for attics), a fertilizer carrier, and an aggregate in lightweight concrete.

ATSDR and MDCH interviews with former workers report that employees had the opportunity to take off-spec product (i.e. "popped" vermiculite) home for private use, typically as fill material in driveways or yards. Interviews with local residents indicated that there were large piles of silvery gray material in the southeast corner of the facility near the railroad tracks during the early-to-mid 1960s. It was reported that children would play in these piles and that some would load wagons of the material to bring home. Other residents described a gondola-like structure located near the office of the facility that would be loaded with bags of silvery material that people would pick up and use at their residence. Given the description of the material and the detection of LA in the surface soil near these locations on the facility, it is likely that the material that children played in and was brought to their homes was the waste stoner rock from the vermiculite exfoliation process. This stoner rock waste material is known to contain high levels of LA.

WRG reportedly cleaned the Dearborn plant in 1990, collecting four air samples inside the building and one outside the building to document their cleanup. Sample results, presumably from phase contrast microscopy analysis, indicated airborne fiber levels at 0.0005 fibers per cubic centimeter (f/cc), which is below the current Occupational Safety and Health Administration permissible exposure limit of 0.1 f/cc asbestos.

**C. Off-Site Migration of Plant Materials**

The vermiculite exfoliation process is known to produce large amounts of aerosolized particulate dust. In the case of Libby vermiculite, this dust may contain asbestos species consistent with the Montana ore (including tremolite and actinolite). Based on community interviews, dust from the Dearborn operation was known to frequently migrate off-site. Off-site migration of fugitive materials has been documented in several Inspection Reports and Complaint Cards filed through the Wayne County Air Quality Management Division from 1983 through 1990.

Adding to these complaints is a letter from the City of Dearborn to the Michigan Department of Public Health (now the MDCH). The subject line of the letter is "Manufacturer of Insulating Product (Vermiculite), Releasing Product into Surrounding Neighborhood." The complainant, a carpenter working in the area, reported that his




UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
WASHINGTON, D.C. 20460

MEMORANDUM

**SUBJECT:** Region V Request for Concurrence on a Nationally Significant or Precedent Setting Removal Action at the N-Forcer Site in Dearborn, Michigan.

**FROM:** Gary Turner, Acting Director
Program Operations and Coordination Division

**TO:** Debbie Dietrich, Director
Office of Emergency Management

This memorandum transmits the attached Region V request for concurrence on a proposed time-critical removal action at the N-Forcer site (also known as the W.R. Grace Dearborn plant, Henn St. Facility) in Dearborn, Wayne County, Michigan. This request is considered nationally significant because the primary contaminant is asbestos

The attached memo from Richard Karl to you describes in detail the history of the site This action will involve removal of the asbestos form soil on the site, defining and investigating off-site locations, and removing asbestos from up to eight off-site locations.

I recommend that you approve the Region V request. Regional coordinators, OGC and OECA have reviewed the attached action memorandum and concur with the action.

If you would like additional information, please contact Sherry Fielding at 564-6174 or Jeff Crowley at 564-8753.

Attachment

Recycled/Recyclable
Printed on paper that contains at least 75% recycled fiber

inside the building, have been appropriately cleaned up; characterize the extent and magnitude of remaining vermiculite contamination in on-site soils; based on the results of the characterization, develop a plan to eliminate or reduce future exposures, and; characterize the degree and magnitude of remaining contamination in off-site soils in the neighborhood immediately surrounding the former WRG facility.

ATSDR, MDCH, and the Michigan Department of Environmental Quality have requested U.S. EPA assistance in implementing these recommendations.

The Action Memorandum is attached for your review. My approval awaits your concurrence.

Concur: Deborah Dietrich 2-18-05

Deborah Dietrich, Director, Office of Emergency Management Date

Non-Concur:

Deborah Dietrich, Director, Office of Emergency Management Date



UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
REGION 5
EMERGENCY RESPONSE BRANCH
9311 GROH ROAD, ROOM 216
GROSSE ILE, MI 48138-1697

**ACTION MEMORANDUM**

REPLY TO ATTENTION OF:

SUBJECT: Request for a Time-Critical Removal Action at the N-Forcer Site in Dearborn, Wayne County, Michigan (Site ID #B55P)

FROM: Brian Kelly, On-Scene Coordinator
Emergency Response Section 1

TO: Richard C. Karl, Director
Superfund Division

THRU: Thomas Geishecker, Acting Chief
Emergency Response Branch

## I. PURPOSE

This action memorandum requests and documents approval to expend up to $964,000 to conduct a time-critical removal action at the N-Forcer Site (also known as W.R. Grace & Company Dearborn plant and the Henn Street facility), 14300 Henn Street, Dearborn, Wayne County, Michigan, 48126. The proposed removal action is necessary to mitigate the immediate threat to public health posed by the presence of fibrous amphibole Libby Asbestos (LA). The asbestos contamination is the result of expansion of vermiculite from W R Grace's Libby, Montana, mine.

The response action proposed will mitigate the threats by: identifying facility soils contaminated with asbestos using modified polarized light microscopy (MPLM) or similar method; removing asbestos from all soil areas on the Site where asbestos is present at levels above 1% or which may pose an inhalation hazard; defining and investigating potential off-site locations where asbestos from the Site may have migrated or been moved; and removing asbestos from up to eight identified off-site locations where asbestos is present at levels above 1% or which may pose an inhalation hazard.

The proposed removal action is time-critical because of continued potential pathways of exposure.

This removal action will not address residential indoor materials or viable consumer products. The project will require an estimated 44 (34 removal, 10 day sampling) on-site working days to complete.

Asbestos removals are nationally significant. U.S. EPA is following Agency for Toxic Substances and Disease Registry (ATSDR), Michigan Department of Community Health (MDCH), and Michigan Department of Environmental Quality (MDEQ) guidance on cleanup levels. The removal will follow precedents and protocols set by other asbestos cleanups. The N-Forcer Site is not on the National Priorities List.

## II. SITE CONDITIONS AND BACKGROUND

CERCLIS ID #MIN 000 508 756

### A. Site Description and Background

The former W.R. Grace & Company (WRG) Dearborn plant (also known as the Henn Street Facility, Dearborn plant, and N-Forcer Site) is located at 14300 Henn Street, Dearborn, Wayne County, Michigan. Land use in the surrounding neighborhood includes recreational (a soccer field is located across the street), residential, educational, commercial, and industrial. The Site is currently defined as the 2.7 acre parcel at 14300 Henn Street, Dearborn, Michigan. The parcel currently has a single 16,000-square-foot building, which was utilized for the processing of vermiculite ore into attic insulation and lightweight concrete aggregate. The original Site consisted of a railroad spur, where raw ore was off loaded, two storage silos, exfoliation furnaces, and bagging/processing space. Processing of vermiculite ore ended in 1989, when WRG ceased operations at the Dearborn plant. The storage silos and exfoliation furnaces were dismantled and removed and the railroad spur is no longer used.

During the 1950s, the Zonolite Company started leasing the facility to process vermiculite ore from Libby, Montana. In 1963, the Zonolite Company was acquired by WRG and continued to use the Dearborn plant to manufacture attic insulation and lightweight concrete products using Libby vermiculite ore. Die, Mold & Automation Components, Inc. (DMACI), currently operates on the Site.

According to WRG shipping records, the Dearborn plant processed about 206,000 tons of vermiculite ore from Libby, Montana, from 1966 to 1988 (this may be an underestimate as WRG likely started processing vermiculite at least 10 years prior to 1966). Over time, it became known that vermiculite ore mined from Libby was contaminated with asbestos fibers, including the amphibole asbestos varieties tremolite and actinolite, as well as the related fibrous asbestiform minerals winchite, richterite, and ferro-edenite. In this document, the asbestos in Libby vermiculite is referred to as LA.

Studies throughout the 1980s indicated that vermiculite workers showed increased rates of asbestos-related respiratory diseases. The findings at Libby and sites processing ore from Libby provided the impetus for investigating the Dearborn Site, as well as other sites across the nation that received asbestos-contaminated vermiculite from the Libby mine.

## B. Vermiculite Processing

Vermiculite is a non-fibrous, platy weathered mica mineral type used in many commercial and consumer applications. Raw vermiculite ore is used in gypsum wallboard, cinder blocks, and other products. Exfoliated vermiculite ("popped" vermiculite) is formed by heating the ore to approximately 2,000 degrees Fahrenheit, which explosively vaporizes the water contained within the mineral structure and causes the vermiculite to expand by 10 to 15 times. The finished, expanded product is used as loose fill insulation (mainly for attics), a fertilizer carrier, and an aggregate in lightweight concrete.

ATSDR and MDCH interviews with former workers report that employees had the opportunity to take off-spec product (i.e. "popped" vermiculite) home for private use, typically as fill material in driveways or yards. Interviews with local residents indicated that there were large piles of silvery gray material in the southeast corner of the facility near the railroad tracks during the early-to-mid 1960s. It was reported that children would play in these piles and that some would load wagons of the material to bring home. Other residents described a gondola-like structure located near the office of the facility that would be loaded with bags of silvery material that people would pick up and use at their residence. Given the description of the material and the detection of LA in the surface soil near these locations on the facility, it is likely that the material that children played in and was brought to their homes was the waste stoner rock from the vermiculite exfoliation process. This stoner rock waste material is known to contain high levels of LA.

WRG reportedly cleaned the Dearborn plant in 1990, collecting four air samples inside the building and one outside the building to document their cleanup. Sample results, presumably from phase contrast microscopy analysis, indicated airborne fiber levels at 0.0005 fibers per cubic centimeter (f/cc), which is below the current Occupational Safety and Health Administration permissible exposure limit of 0.1 f/cc asbestos.

## C. Off-Site Migration of Plant Materials

The vermiculite exfoliation process is known to produce large amounts of aerosolized particulate dust. In the case of Libby vermiculite, this dust may contain asbestos species consistent with the Montana ore (including tremolite and actinolite). Based on community interviews, dust from the Dearborn operation was known to frequently migrate off-site. Off-site migration of fugitive materials has been documented in several Inspection Reports and Complaint Cards filed through the Wayne County Air Quality Management Division from 1983 through 1990.

Adding to these complaints is a letter from the City of Dearborn to the Michigan Department of Public Health (now the MDCH). The subject line of the letter is "Manufacturer of Insulating Product (Vermiculite), Releasing Product into Surrounding Neighborhood." The complainant, a carpenter working in the area, reported that his

crew became ill after "ingesting the airborne product." The complainant described symptoms such as bitter taste, coughing, and vomiting.

### D. Site Visits and Sampling

U.S. EPA inspected former vermiculite processing plants throughout the U.S. in 2000 to ascertain whether these sites still contained asbestos-contaminated vermiculite or related waste materials. U.S. EPA visited the Dearborn plant on February 25, 2000, to conduct a Phase I field inspection and owner interview. The resulting Preliminary Inspection Report, dated March 8, 2000, concluded that "no visual evidence of vermiculite from the Libby, Montana, mine was observed anywhere on the property." The WRG Dearborn plant was classified by U.S. EPA as "No Further Action Necessary." This initial assessments have been revised based on more recent investigations and information.

On September 27, 2002, staff from ATSDR, U.S. EPA, and MDCH visited the DMACI facility as part of ATSDR's National Asbestos Exposure Review. During this visit, staff observed vermiculite ore on the ground on the north and southeast areas of the property. Staff also observed material consistent with stoner rock behind the wooden slats of an interior wall in the main DMACI building.

These findings led ATSDR to ask U.S. EPA to test the wall cavity material, the indoor air of the room where the material was located, and several on site soil samples for asbestos. On January 14, 2003, U.S. EPA collected four composite and two grab soil samples from around the property as well as two air samples from the work area and one grab sample of material from the interior wall space inside the main building. Analysis of the on-site composite surface soil samples (taken from five separate locations 0-2 inches below the surface) showed concentrations of tremolite and actinolite asbestos species ranging from non-detect (<1%) to 3%. The material in the wall cavity was found to contain from 5% to 6.9% asbestos, depending on the analytical method used. The detection limit of <1% is not a health-based standard, but represents the detection limit of the two methods used for the composite and grab samples.

### E. Community Characteristics

In Michigan, the low-income percentage is 29% and the minority percentage is 18%. To meet the Environmental Justice (EJ) concern criteria, the area within 1 mile of the Site must have a population that is twice the state low-income percentage and/or twice the state minority percentage. That is, the area must be at least 58% low-income and/or 36% minority. At this Site, the low-income percentage is 51% and the minority percentage is 23% as determined by Arcview 3.0 EJ analysis. Therefore, this Site does not meet the Region's EJ criteria based on demographics as identified in "Region 5 Interim Guidelines for Identifying and Addressing a Potential EJ Case, June 1998."



UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
WASHINGTON, D.C. 20460

**MEMORANDUM**

**SUBJECT:** Region V Request for Concurrence on a Nationally Significant or Precedent Setting Removal Action at the N-Forcer Site in Dearborn, Michigan.

**FROM:** Gary Turner, Acting Director
Program Operations and Coordination Division

**TO:** Debbie Dietrich, Director
Office of Emergency Management

This memorandum transmits the attached Region V request for concurrence on a proposed time-critical removal action at the N-Forcer site (also known as the W.R. Grace Dearborn plant, Henn St. Facility) in Dearborn, Wayne County, Michigan. This request is considered nationally significant because the primary contaminant is asbestos

The attached memo from Richard Karl to you describes in detail the history of the site This action will involve removal of the asbestos form soil on the site, defining and investigating off-site locations, and removing asbestos from up to eight off-site locations.

I recommend that you approve the Region V request. Regional coordinators, OGC and OECA have reviewed the attached action memorandum and concur with the action.

If you would like additional information, please contact Sherry Fielding at 564-6174 or Jeff Crowley at 564-8753.

Attachment



inside the building, have been appropriately cleaned up; characterize the extent and magnitude of remaining vermiculite contamination in on-site soils; based on the results of the characterization, develop a plan to eliminate or reduce future exposures, and; characterize the degree and magnitude of remaining contamination in off-site soils in the neighborhood immediately surrounding the former WRG facility.

ATSDR, MDCH, and the Michigan Department of Environmental Quality have requested U.S. EPA assistance in implementing these recommendations.

The Action Memorandum is attached for your review. My approval awaits your concurrence.

Concur: Deborah Dietrich 2-18-05

Deborah Dietrich, Director, Office of Emergency Management Date

Non-Concur:

Deborah Dietrich, Director, Office of Emergency Management Date



UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
REGION 5
EMERGENCY RESPONSE BRANCH
9311 GROH ROAD, ROOM 216
GROSSE ILE, MI 48138-1697

**ACTION MEMORANDUM**

REPLY TO ATTENTION OF:

SUBJECT: Request for a Time-Critical Removal Action at the N-Forcer Site in Dearborn, Wayne County, Michigan (Site ID #B55P)

FROM: Brian Kelly, On-Scene Coordinator
Emergency Response Section 1

TO: Richard C. Karl, Director
Superfund Division

THRU: Thomas Geishecker, Acting Chief
Emergency Response Branch

## I. PURPOSE

This action memorandum requests and documents approval to expend up to $964,000 to conduct a time-critical removal action at the N-Forcer Site (also known as W.R. Grace & Company Dearborn plant and the Henn Street facility), 14300 Henn Street, Dearborn, Wayne County, Michigan, 48126. The proposed removal action is necessary to mitigate the immediate threat to public health posed by the presence of fibrous amphibole Libby Asbestos (LA). The asbestos contamination is the result of expansion of vermiculite from W R Grace's Libby, Montana, mine.

The response action proposed will mitigate the threats by: identifying facility soils contaminated with asbestos using modified polarized light microscopy (MPLM) or similar method; removing asbestos from all soil areas on the Site where asbestos is present at levels above 1% or which may pose an inhalation hazard; defining and investigating potential off-site locations where asbestos from the Site may have migrated or been moved; and removing asbestos from up to eight identified off-site locations where asbestos is present at levels above 1% or which may pose an inhalation hazard.

The proposed removal action is time-critical because of continued potential pathways of exposure.

This removal action will not address residential indoor materials or viable consumer products. The project will require an estimated 44 (34 removal, 10 day sampling) on-site working days to complete.

Asbestos removals are nationally significant. U.S. EPA is following Agency for Toxic Substances and Disease Registry (ATSDR), Michigan Department of Community Health (MDCH), and Michigan Department of Environmental Quality (MDEQ) guidance on cleanup levels. The removal will follow precedents and protocols set by other asbestos cleanups. The N-Forcer Site is not on the National Priorities List.

## II. SITE CONDITIONS AND BACKGROUND

CERCLIS ID #MIN 000 508 756

### A. Site Description and Background

The former W.R. Grace & Company (WRG) Dearborn plant (also known as the Henn Street Facility, Dearborn plant, and N-Forcer Site) is located at 14300 Henn Street, Dearborn, Wayne County, Michigan. Land use in the surrounding neighborhood includes recreational (a soccer field is located across the street), residential, educational, commercial, and industrial. The Site is currently defined as the 2.7 acre parcel at 14300 Henn Street, Dearborn, Michigan. The parcel currently has a single 16,000-square-foot building, which was utilized for the processing of vermiculite ore into attic insulation and lightweight concrete aggregate. The original Site consisted of a railroad spur, where raw ore was off loaded, two storage silos, exfoliation furnaces, and bagging/processing space. Processing of vermiculite ore ended in 1989, when WRG ceased operations at the Dearborn plant. The storage silos and exfoliation furnaces were dismantled and removed and the railroad spur is no longer used.

During the 1950s, the Zonolite Company started leasing the facility to process vermiculite ore from Libby, Montana. In 1963, the Zonolite Company was acquired by WRG and continued to use the Dearborn plant to manufacture attic insulation and lightweight concrete products using Libby vermiculite ore. Die, Mold & Automation Components, Inc. (DMACI), currently operates on the Site.

According to WRG shipping records, the Dearborn plant processed about 206,000 tons of vermiculite ore from Libby, Montana, from 1966 to 1988 (this may be an underestimate as WRG likely started processing vermiculite at least 10 years prior to 1966). Over time, it became known that vermiculite ore mined from Libby was contaminated with asbestos fibers, including the amphibole asbestos varieties tremolite and actinolite, as well as the related fibrous asbestiform minerals winchite, richterite, and ferro-edenite. In this document, the asbestos in Libby vermiculite is referred to as LA.

Studies throughout the 1980s indicated that vermiculite workers showed increased rates of asbestos-related respiratory diseases. The findings at Libby and sites processing ore from Libby provided the impetus for investigating the Dearborn Site, as well as other sites across the nation that received asbestos-contaminated vermiculite from the Libby mine.

## B. Vermiculite Processing

Vermiculite is a non-fibrous, platy weathered mica mineral type used in many commercial and consumer applications. Raw vermiculite ore is used in gypsum wallboard, cinder blocks, and other products. Exfoliated vermiculite ("popped" vermiculite) is formed by heating the ore to approximately 2,000 degrees Fahrenheit, which explosively vaporizes the water contained within the mineral structure and causes the vermiculite to expand by 10 to 15 times. The finished, expanded product is used as loose fill insulation (mainly for attics), a fertilizer carrier, and an aggregate in lightweight concrete.

ATSDR and MDCH interviews with former workers report that employees had the opportunity to take off-spec product (i.e. "popped" vermiculite) home for private use, typically as fill material in driveways or yards. Interviews with local residents indicated that there were large piles of silvery gray material in the southeast corner of the facility near the railroad tracks during the early-to-mid 1960s. It was reported that children would play in these piles and that some would load wagons of the material to bring home. Other residents described a gondola-like structure located near the office of the facility that would be loaded with bags of silvery material that people would pick up and use at their residence. Given the description of the material and the detection of LA in the surface soil near these locations on the facility, it is likely that the material that children played in and was brought to their homes was the waste stoner rock from the vermiculite exfoliation process. This stoner rock waste material is known to contain high levels of LA.

WRG reportedly cleaned the Dearborn plant in 1990, collecting four air samples inside the building and one outside the building to document their cleanup. Sample results, presumably from phase contrast microscopy analysis, indicated airborne fiber levels at 0.0005 fibers per cubic centimeter (f/cc), which is below the current Occupational Safety and Health Administration permissible exposure limit of 0.1 f/cc asbestos.

## C. Off-Site Migration of Plant Materials

The vermiculite exfoliation process is known to produce large amounts of aerosolized particulate dust. In the case of Libby vermiculite, this dust may contain asbestos species consistent with the Montana ore (including tremolite and actinolite). Based on community interviews, dust from the Dearborn operation was known to frequently migrate off-site. Off-site migration of fugitive materials has been documented in several Inspection Reports and Complaint Cards filed through the Wayne County Air Quality Management Division from 1983 through 1990.

Adding to these complaints is a letter from the City of Dearborn to the Michigan Department of Public Health (now the MDCH). The subject line of the letter is "Manufacturer of Insulating Product (Vermiculite), Releasing Product into Surrounding Neighborhood." The complainant, a carpenter working in the area, reported that his

crew became ill after "ingesting the airborne product." The complainant described symptoms such as bitter taste, coughing, and vomiting.

## D. Site Visits and Sampling

U.S. EPA inspected former vermiculite processing plants throughout the U.S. in 2000 to ascertain whether these sites still contained asbestos-contaminated vermiculite or related waste materials. U.S. EPA visited the Dearborn plant on February 25, 2000, to conduct a Phase I field inspection and owner interview. The resulting Preliminary Inspection Report, dated March 8, 2000, concluded that "no visual evidence of vermiculite from the Libby, Montana, mine was observed anywhere on the property." The WRG Dearborn plant was classified by U.S. EPA as "No Further Action Necessary." This initial assessments have been revised based on more recent investigations and information.

On September 27, 2002, staff from ATSDR, U.S. EPA, and MDCH visited the DMACI facility as part of ATSDR's National Asbestos Exposure Review. During this visit, staff observed vermiculite ore on the ground on the north and southeast areas of the property. Staff also observed material consistent with stoner rock behind the wooden slats of an interior wall in the main DMACI building.

These findings led ATSDR to ask U.S. EPA to test the wall cavity material, the indoor air of the room where the material was located, and several on site soil samples for asbestos. On January 14, 2003, U.S. EPA collected four composite and two grab soil samples from around the property as well as two air samples from the work area and one grab sample of material from the interior wall space inside the main building. Analysis of the on-site composite surface soil samples (taken from five separate locations 0-2 inches below the surface) showed concentrations of tremolite and actinolite asbestos species ranging from non-detect (<1%) to 3%. The material in the wall cavity was found to contain from 5% to 6.9% asbestos, depending on the analytical method used. The detection limit of <1% is not a health-based standard, but represents the detection limit of the two methods used for the composite and grab samples.

## E. Community Characteristics

In Michigan, the low-income percentage is 29% and the minority percentage is 18%. To meet the Environmental Justice (EJ) concern criteria, the area within 1 mile of the Site must have a population that is twice the state low-income percentage and/or twice the state minority percentage. That is, the area must be at least 58% low-income and/or 36% minority. At this Site, the low-income percentage is 51% and the minority percentage is 23% as determined by Arcview 3.0 EJ analysis. Therefore, this Site does not meet the Region's EJ criteria based on demographics as identified in "Region 5 Interim Guidelines for Identifying and Addressing a Potential EJ Case, June 1998."

**F. Enforcement Activities**

On April 9, 2003, a General Notice of Potential Liability was sent to the current Site owner Paul Martin. Discussions with Mr. Martin resulted in his agreement to remove and stabilize asbestos found inside the building. On March 3, 2004, Mr. Martin's consultant, Next Generation Service Group, submitted close out documentation of removal or stabilization of the indoor asbestos. As Mr. Martin did not notify U.S. EPA before implementing the cleanup plan, U.S. EPA is continuing to evaluate the work.

On April 9, 2003, a General Notice of Potential Liability was sent to W.R. Grace & Co. W.R. Grace & Co. informed U.S. EPA they were in bankruptcy and would not be participating in a cleanup.

On July 9, 2003, a General Notice of Potential Liability was sent to the adjacent property owner CSX Transportation. CSX sampled the railroad property adjacent to the former W.R. Grace facility, and on November 16, 2004, CSX consultant Arcadis reported the first round of sample results showed no asbestos. These results are inconsistent with U.S. EPA's results taken directly adjacent to the railroad property, which showed levels of asbestos between 1 and 6 percent. U.S. EPA is awaiting the second round of results.

**G. MDCH and ATSDR Health Consultation Conclusions**

MDCH has prepared a health consultation for the Site on behalf of ATSDR. The health consultation includes several conclusions concerning potential health risks currently presented by Site-related asbestos contamination. The conclusions as they apply to a U.S. EPA removal are summarized below:

1. The presence of asbestos-contaminated material (ACM) within the main building posed an indeterminate public health hazard to current workers at the Dearborn Site prior to its removal in December 2003. Likewise, exposure of household contacts of current DMACI workers prior to December 2003 posed an indeterminate public health hazard. It should be noted that airborne concentrations were found to be quite low and that the magnitude of this pathway is reduced compared to other historical pathways of exposure. Currently, this pathway probably represents no apparent health hazard to workers or their household contacts; however, efforts are ongoing to verify this conclusion (U.S. EPA and the Health Agencies are reviewing the current owners cleanup).

2. There are areas of residual LA contamination remaining in on-site soils. Exposure of workers, visitors, trespassers, and contractors to LA-contaminated soils on Site poses an indeterminate public health hazard. Changes in the condition or use of the property may exacerbate on-site exposures.

3. The Dearborn plant no longer processes vermiculite at the Site. The pathways for current or future community exposure to airborne Libby asbestos from facility emissions and to on-site waste piles have been greatly reduced, yet there remains an indeterminate health hazard. There is a small but potential risk that still exists from residual vermiculite contamination in the on-site soils, either from off-site migration of the soils or from resident exposure to unrestricted areas of the DMACI property. Plans to perform sampling in the surrounding neighborhood are ongoing and may lead to a re-evaluation of this hazard category as appropriate.

4. Residential indoor exposure to household dust containing Libby asbestos fibers from past plant emissions or waste rock brought home for personal use is considered no apparent health hazard for present and future community members. There is a small but potential risk that still exists from off-site migration of the residual vermiculite contamination in the on-site soils. Plans to perform sampling in the surrounding neighborhood are ongoing and may lead to a re-evaluation of this hazard category as appropriate.

5. Currently, individuals within the community could be exposed to airborne Libby asbestos from waste rock used as fill material, for gardening, or for paving driveways. This exposure pathway is an indeterminate public health hazard because insufficient information is available to determine the extent of the use of waste material within the community. Ongoing interviews and data collection from the neighborhood may lead to a re-evaluation of this hazard category as appropriate.

Table 3 of the Health Consultation performed by the MDCH, under Cooperative Agreement with the U.S. Department of Health and Human Services ATSDR, listed a number of potential pathways. Those relevant to this removal action are:

Table 3: Summary of Inhalation Pathways Considered for the WRG Dearborn, MI Site

| Pathway Name | Exposure Scenario(s) | Past Pathway Status | Present Pathway Status | Future Pathway Status |
|---|---|---|---|---|
| On-site Soils | On-site workers, contractors, or community members disturbing contaminated on-site soils (residual contamination, buried waste) | Complete | Potential | Potential |
| Residential Outdoor | Community members using contaminated vermiculite or waste material at home or exposed as a result of windborne deposition from the facility | Potential | Potential | Potential |

## H. MDCH and ATSDR Health Consultation Recommendations for the Facility and Off-Site Locations

1. Verify that areas of contaminated vermiculite remaining inside the DMACI building, have been appropriately cleaned up. Verify remediation results with post-cleanup indoor air sampling or other appropriate techniques.

2. Characterize the extent and magnitude of remaining vermiculite contamination in on-site soils. Based on the results of the characterization, develop a plan to eliminate or reduce future exposures.

3. Characterize the degree and magnitude of remaining contamination in off-site soils in the neighborhood immediately surrounding the former WRG facility.

## III. THREATS TO PUBLIC HEALTH OR WELFARE OR THE ENVIRONMENT, AND STATUTORY AND REGULATORY AUTHORITIES

### A. Threats to Public Health or Welfare

The conditions at the N-Forcer Site present an imminent and substantial threat to the public health, or welfare, and the environment, and meet the criteria for a time-critical removal action provided for in the National Contingency Plan (NCP), Section 300.415, Paragraph (b)(2). These criteria include, but are not limited to, the following:

(i) Actual or potential exposure to nearby human populations, animals, or the food chain from hazardous substances;

As documented by sampling conducted on-site, the concentrations of asbestos found in the surface soil show a human exposure pathway exists.

(ii) High levels of hazardous substances in soils largely at or near the surface, that may migrate;

Vermiculite and pieces of amphibole asbestos are visible at the site surface, and could be potentially re-aerosolized and transported off-site by vehicles, bicycle, and pedestrian traffic. Wind, particularly in dry summer months, can also lead to off-site migration of fine asbestos fibers from contaminated surface soils. Rainfall and snow melt would also tend to wash the fibers off of the Site and to nearby streets and sewers.

Currently, U.S. EPA has not established an asbestos level in soil below which an exposure does not pose a risk. The 1% cut-off level for regulation under the Toxic Substances Control Act abatement program was established on the basis of analytical capability at the time, and was not established based on the level of risk represented. MDEQ has identified an asbestos cleanup criteria of 1% based on detection limits, which is a default to the "target detection limit." U.S. EPA has determined that in certain settings, concentrations of less than 1% posed unacceptable inhalation risks when subject to disturbance.

(iii) Weather conditions that may cause hazardous substances or pollutants or contaminants to migrate or be released;

The warmer temperatures and dry weather typical in the summer and fall months in Dearborn will contribute to the migration of asbestos-containing soils. As soils dry they are more likely to be transported by wind, causing the asbestos to become airborne and available for inhalation. In the spring time snow melt, rainfall, or other forms of run-off will tend to spread the asbestos off Site.

(iv) The availability of other appropriate Federal or State response mechanisms to respond to the release

No other Local, State, or Federal agency is in the position or currently has the resources to independently implement an effective response action to address the on-going threats presented at the Site. U.S. EPA will conduct its actions in cooperation with State and local authorities. ATSDR, MDCH, and MDEQ have requested U.S. EPA assistance

## IV. ENDANGERMENT DETERMINATION

The predominant fibrous nature of minerals found at the N-Forcer Site are LA amphibole asbestos. Asbestos can cause asbestosis and is a recognized human carcinogen, causing lung cancer and mesothelioma, a lethal neoplasm of the lining of the chest and abdominal cavities. Cancer of the larynx and esophageal lining has also been associated with exposure to asbestos. Commercial forms of asbestos have been found to be carcinogenic in experimental animals. The ATSDR and MDCH have recommended actions to remove the threat and close the human exposure pathways.

Actual or threatened releases of asbestos from this Site, if not addressed by implementing the response action selected in this Action Memorandum, may present an imminent and substantial endangerment to public health, welfare, and the environment.

## V. PROPOSED ACTIONS AND ESTIMATED COSTS

### A. Proposed Actions

The OSC proposes to undertake the following actions to mitigate the potential threats posed by the presence of hazardous substances at the Site:

1. Develop and implement a Health and Safety Plan and Site Security Plan;
2. Identify potential off-site locations through an air dispersion model and interviews, newspaper ads, and a public meeting, where residents will be asked to identify vermiculite fill around their homes;
3. Develop and implement an on-site and off-site sampling plan using the MPLM screening level (subsurface areas such as parking lots and sidewalks will not be sampled);
4. Determine the horizontal extent of asbestos contamination in the contaminated soils and identify areas requiring response actions;
5. Excavate and remove asbestos-contaminated soils to a maximum depth of 18 inches or otherwise prevent exposure from on site surface soils from areas contaminated with ≥1% asbestos or which may pose an inhalation hazard;
6. Excavate and remove or otherwise prevent exposure from asbestos contaminated off-site soils if investigations find no more than 8 affected homes;
7. Dispose of contaminated soils at an EPA-approved off-site disposal facility in accordance with the U.S. EPA Off-Site Rule (40 CFR §300.440);
8. Perform personal air sampling and ambient air sampling during removal activities;
9. Implement engineering measures to control dust during the cleanup;
10. Install a recognizable marker at the bottom of the excavated area prior to backfill if asbestos remains;
11. Analyze samples using modified and standard PLM and Transmission Electron Microscopy (or comparable analytical method) to assess whether contamination is present and whether sufficient excavation has occurred; and
12. Backfill excavated areas with clean soil and restore property to original pre-removal condition;

It is important to note that U.S. EPA does not assert that soil concentration of less than 1% LA are necessarily safe or acceptable, and in appropriate circumstances, soils with less than 1% LA may be removed under the current response action. Depending on the accessibility and frequency of exposure, U.S. EPA may elect to remove or isolate soils containing less than 1% LA.

During a conference call on October 28, 2004, between U.S. EPA, ATSDR and MDCH, the health agencies, in particular MDCH, cited Michigan 201 regulations in support of a 1% screening level. Based on guidance from the health agencies, U.S. EPA intends to use the MPLM for screening, remove asbestos above 1% or which may cause a inhalation hazard to a maximum estimated depth of 18 inches, and resample. If asbestos contamination remains after the 18 inch excavation, U.S. EPA will install a marker to show the extent of excavation. Activity-based sampling may be used on a case-by-case basis, in consultation with ATSDR and MDCH.

This cleanup is being conducted as a Time-Critical Removal Action. A letter was sent to Steven Kitler of MDEQ on November 4, 2004, asking the State to identify ARARs. Identified Federal and State ARARs will be complied with to the extent practicable.

In accordance with Section 300.415(l), U.S. EPA will pursue appropriate arrangements for post-removal Site controls to ensure the long-term integrity of the removal.

All hazardous substances, pollutants, or contaminants removed off-site pursuant to this removal action for treatment, storage, and disposal shall be treated, stored, or disposed of at a facility in compliance, as determined by U.S. EPA, with the U.S. EPA Off-Site Rule, 40 C.F.R. § 300.440.

The response actions described in this memorandum directly address the actual or threatened release at the Site of a hazardous substance, or of a pollutant, or of a contaminant which poses an imminent and substantial endangerment to public health, welfare, or the environment. These response actions do not impose a burden on affected property disproportionate to the extent to which that property contributes to the conditions being addressed.

The estimated cleanup contractor cost is presented in Attachment 1 and estimated project costs are summarized below.

### B. Estimated Costs

The following cost estimates include costs associated with the removal actions for purposes of creating a total project ceiling. These costs are being estimated anticipating that the project will need to be performed as a fund lead action. The costs do not include any past or future investigation costs on the site. Costs are projected as follows:

| Regional Removal Allowance Costs | |
|---|---|
| Cleanup Contractor Costs | $ 602,883 |
| ERT | $ 80,000 |
| U.S. Coast Guard Atlantic Strike Team | $ 20,000 |
| Other Extramural Cost Not Funded from the Regional Allowance: | |
| START | $ 100,253 |
| Subtotal, Extramural Subtotal | $ 803,136 |
| Extramural Costs Contingency (20% of Subtotal) | $ 160,627 |
| TOTAL, Removal Action Project Ceiling | $ 964,000 (rounded) |

This estimate is based on a 1 acre cleanup of the Site and an estimated eight affected homes off Site. It should be noted that at the Western Mineral Site significantly more than eight homes were found to be contaminated. If greater than eight homes are found to be contaminated, the OSC will prepare an action memorandum amendment or refer the Site to other programs (State, Remedial, etc)

## VI. EXPECTED CHANGE IN THE SITUATION SHOULD ACTION BE DELAYED OR NOT TAKEN

If action is delayed, potential public health risks posed by asbestos fibers will remain and may be aggravated or increased through further dispersal.

## VII. OUTSTANDING POLICY ISSUES

Asbestos removals have been completed in Region 5, and around the country at removal sites under Section 300.415 of the NCP and NESHAPS regulation under 40 CFR Section 61.150. Because no national asbestos standards for soil exist, U.S. EPA is consulting with ATSDR and MDCH.

Because of the potentially broad impact of the vermiculite ore with high levels of LA, Region 5 is coordinating with U.S. EPA Headquarters and other regions to assure a consistent approach to LA issues.

## VIII. ENFORCEMENT

For administrative purposes, information concerning the enforcement strategy for this site is contained in the attached Enforcement Confidential Addendum.

The total EPA costs for this removal action based on full-cost accounting practices that will be eligible for cost recovery are estimated to be $1,465,000.

($ 964,000 + $65,000[1]) + (42.38%[2] x $1,029,000) = $1,465,000 (rounded)

## IX. RECOMMENDATION

This decision document represents the selected Removal Action for the N-Forcer Site, developed in accordance with CERCLA as amended, and not inconsistent with the NCP. This decision is based on the Administrative Record for the Site. Conditions at the Site meet the NCP §300.415(b)(2) criteria for a Removal Action, and your approval is recommend. The total project ceiling, if approved, will be $964,000. Of this, $863,510 may be used for cleanup contractor costs. You may indicate your decision by signing below.

APPROVE: Richard Karl Date: 2-27-05
Richard Karl, Director
Superfund Division

DISAPPROVE:________________________ Date:__________
Richard Karl, Director
Superfund Division

---

[1]Direct Costs include direct extramural costs and direct intramural costs.

[2]Indirect costs are calculated based on an estimated indirect cost rate expressed as a percentage of site-specific direct costs, consistent with the full cost accounting methodology effective October 2, 2000. These estimates do not include pre-judgment interest, do not take into account other enforcement costs, including Department of Justice costs, and may be adjusted during the course of a removal action. The estimates are for illustrative purposes only and their use is not intended to create any rights for responsible parties. Neither the lack of a total cost estimate nor deviation of actual total costs from this estimate will affect the United States' right to cost recovery.

Enforcement Addendum

Attachments:

Attachment 1 - Cleanup Contractor Costs
Attachment 2 - Administrative Record Index
Attachment 3 - ATSDR Draft Health Consultation
Attachment 4 - Environmental Justice Analysis
Attachment 5 - Independent Government Cost Estimate

cc: D. Chung, U.S. EPA, 5203-G
M. Chezik, U.S. DOI, w/o Enf. Addendum
Steven E. Chester, Director, Michigan DEQ, w/o Enf. Addendum
Steve Kitler, Michigan DEQ, w/o Enf. Addendum
Michael Cox, Attorney General, Michigan, w/o Enf. Addendum

Exhibit



UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
REGION 5
EMERGENCY RESPONSE BRANCH
9311 GROH ROAD, ROOM 216
GROSSE ILE, MI 48138-1697

REPLY TO ATTENTION OF:

January 14, 2003

Mr. Paul Martin
14300 Henn Street
Dearborn, Michigan 48126

Dear Mr. Martin,

Please find attached, copies of the analytical results for samples collected by U.S. EPA at your property located at 14300 Henn Street. Also included in this package is a summary table of the results and a map identifying the locations where the samples were collected.

If you have any additional questions please contact me at my office, 734-692-7687.

Sincerely,

James Justice
U.S. EPA On-Scene Coordinator

**EMSL Analytical, Inc.**

*14375 23rd Avenue North*
*Minneapolis, MN 55447*
*Phone: (763) 449-4922 Fax: (763) 449-4924*

EMSL

Attn.: Linda Korubka
Weston Solutions, Inc.
2501 Jolly Road
Suite 100
Okemos, MI 48864

Friday, January 17, 2003

Ref Number: MN03129
Analysis Date: 1/16/2003

# PHASE CONTRAST MICROSCOPY (PCM) FIBER COUNT BY NIOSH METHOD 7400, ISSUE 2, 4TH EDITION, 8/15/94

**Project: N-Forcer 12634-001-001-0323 COC#0001**

| Sample | Location | Sample Date | Volume (liters) | Fibers | Fields | fibers/ $mm^2$ | LOD fib/cc | fibers/cc |
|---|---|---|---|---|---|---|---|---|
| ATP-011403-WS1 HHID#778, EOC | | 1/14/2003 | 4155.54 | 20.0 | 100 | 25.48 | 0.001 | 0.002 |
| ATP-011403-WS2 HHID#778, EOC | | 1/14/2003 | 4129.29 | 22.5 | 100 | 28.66 | 0.001 | 0.003 |

Darla Gordhamer
Analyst

Approved Signatory

Disclaimers: LOD = Limit of Detection. This method assumes the limit of detection is 7 fibers/mm². The laboratory is not responsible for data reported in fibers/cc, which is dependent on volume collected by non-laboratory personnel. This report relates only to the samples reported above. This report may not be reproduced, except in full, without written approval by EMSL.

Analysis performed by EMSL Minneapolis ()

1

01/17/2003 FRI 15:09 [TX/RX NO 7505] 001

Chain of Custody Record

| Work Number: 12834-001-001-0323 | Project Name: N-Forcer |
|---|---|

| Sample ID | Date | Time | Comp. | Grab | Air | Station Location | Quantity | PLM | AHERA TEM | Soil TEM | PCM | Remarks: |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SPT-011403-SC1 | 1/14/2003 | 9:10 | X | | | Site Characterization #1 | 1 | X | | X | | |
| SPT-011403-SC2 | 1/14/2003 | 9:30 | X | | | Site Characterization #2 | 1 | X | | X | | |
| SPT-011403-SC3 | 1/14/2003 | 9:40 | X | | | Site Characterization #3 | 1 | X | | X | | |
| SPT-011403-SC4 | 1/14/2003 | 10:15 | X | | | Site Characterization #4 | 1 | X | | X | | |
| | | | | | | | | | | | | |
| SPT-011403-GB1 | 1/14/2003 | 9:50 | | X | | Grab Sample #1 | 1 | X | | X | | |
| SPT-011403-GB2 | 1/14/2003 | 10:05 | | X | | Grab Sample #2 | 1 | X | | X | | |
| SPT-011403-GB3 | 1/14/2003 | 10:25 | | X | | Grab Sample #3 | 1 | X | | X | | |
| | | | | | | | | | | | | |
| ATP-011403-WS1 | 1/14/2003 | 8:37 | X | | | HHID #776, EOC | 1 | | X | | X | 475 min * 8.75 L/min =4155.54 Liters |
| ATP-011403-WS2 | 1/14/2003 | 8:46 | X | | | HHID #776, EOC | 1 | | X | | X | 472 min * 8.75 L/min =4129.29 Liters |

MN 03/29

**24-Hour Turnaround**

Contact Linda Konubka:
517-381-5920
Fax: 517-381-5921
Hard copy and invoice to WESTON, Okemos

Also fax results to Heather Schichtel at 312-424-3330

| Relinquished By: (Signature) | Date/Time | Recieved By: (Signature) | Date/Time | Ship To: EMSL Analytical 14375 23rd Ave Minneapolis, MN 55447 |
|---|---|---|---|---|
| [signature] | 01/15/03 15:10 | [signature] | 1/16/03 9:15 | |
| Relinquished By: (Signature) | Date/Time | Recieved By: (Signature) | Date/Time | Airbill Number 7421 6750 5066 |
| Relinquished By: (Signature) | Date/Time | Recieved By: (Signature) | Date/Time | Chain of Custody Seal Numbers |

# *EMSL Analytical, Inc.*

*14375 23rd Avenue North*
*Minneapolis, MN 55447*
*Phone: (763) 449-4922* *Fax: (763) 449-4924*

EMSL

Attn.: Linda Korubka
Weston Solutions, Inc.
2501 Jolly Road
Suite 100
Okemos, MI 48864

Friday, January 17, 2003

Ref Number: MN03130

## Asbestos Fiber Analysis by Transmission Electron Microscopy (TEM) Performed by EPA 40 CFR Part 763 Final Rule (AHERA)

Project: N-Forcer 12634-001-001-0323 COC#0001

| Sample ID | Volume (liters) | Asbestos Type(s) | STRUCTURES ≥ 0.5µ - < 5µ | ≥ 5µ | Non-Asbestos | Area Analyzed (mm²) | Analytical Sensitivity (S/cc) | Asbestos Concentration (S/mm²) | (S/cc) |
|---|---|---|---|---|---|---|---|---|---|
| ATP-011403-WS1 HHID#778, EOC | 4155.64 | Tremolite Actinolite | 1 | 3 | 2 | 0.1092 | 0.0009 | 36.78 | 0.0036 |
| ATP-011403-WS2 HHID#778, EOC | 4129.29 | None Detected | | | 0 | 0.1092 | 0.0009 | <9.69 | <0.0009 |

Daria Gordhamer
Analyst

Approved Signatory

Disclaimers: This laboratory is not responsible for data reported in structures/cc, which is dependent on volume collected by non-laboratory personnel. This laboratory is only responsible for data reported in structures/mm². This report may not be reproduced, except in full, without written approval by EMSL. This report must not be used to claim product endorsement by NVLAP or any agency of the U.S. Government. This report relates only to the samples reported above. Quality control data (including 95 % confidence limits and laboratory and analysts' accuracy and precision) is available upon request.

## Chain of Custody Record

**Work Number:** 12634-001-001-0323

**Project Name:** N-Forcer

| Sample ID | Date | Time | Comp. | Grab | Air | Station Location | Quantity | PLM | AHERA TEM | Soil TEM | PCM | Remarks: |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SPT-011403-SC1 | 1/14/2003 | 9:10 | X | | | Site Characterization #1 | 1 | X | | X | | |
| SPT-011403-SC2 | 1/14/2003 | 9:30 | X | | | Site Characterization #2 | 1 | X | | X | | |
| SPT-011403-SC3 | 1/14/2003 | 9:40 | X | | | Site Characterization #3 | 1 | X | | X | | |
| SPT-011403-SC4 | 1/14/2003 | 10:15 | X | | | Site Characterization #4 | 1 | X | | X | | |
| | | | | | | | | | | | | |
| SPT-011403-GB1 | 1/14/2003 | 9:50 | | X | | Grab Sample #1 | 1 | X | | X | | |
| SPT-011403-GB2 | 1/14/2003 | 10:05 | | X | | Grab Sample #2 | 1 | X | | X | | |
| SPT-011403-GB3 | 1/14/2003 | 10:25 | | X | | Grab Sample #3 | 1 | X | | X | | |
| | | | | | | | | | | | | |
| ATP-011403-WS1 | 1/14/2003 | 8:37 | X | | | HHID #778, EOC | 1 | | X | | X | 475 min * 8.75 L/min =4156.54 Liters |
| ATP-011403-WS2 | 1/14/2003 | 8:46 | X | | | HHID #778, EOC | 1 | | X | | X | 472 min * 8.75 L/min =4129.20 Liters |

MW 03/30

**24-Hour Turnaround**

Contact Linda Korubka:
517-381-5920
Fax: 517-381-5921
Hard copy and invoice to WESTON, Okemos

Also fax results to Heather Schichtel at 312-424-3330

| Relinquished By: (Signature) | Date/Time | Recieved By: (Signature) | Date/Time |
|---|---|---|---|
| [signature] | 01/15/03 15:10 | [signature] | 1/16/03 9:15 |
| Relinquished By: (Signature) | Date/Time | Recieved By: (Signature) | Date/Time |
| Relinquished By: (Signature) | Date/Time | Recieved By: (Signature) | Date/Time |

Ship To: EMSL Analytical
14375 23rd Ave
Minneapolis, MN 55447

Airbill Number
7921 6750 5066

Chain of Custody Seal Numbers


N
97'
CSX Rail
SC-1
TEM <1%
PLM <1%
WS-2
0.0036 S/cc
Work Area
WS-1
<0.0009 S/cc
GB-3
TEM 6.9%
PLM 5%
Equipment
Storage Room
SC-3
TEM 1.9%
PLM <1%
514'
346'
SC-2
TEM 2%
PLM <1%
Office
GB-2
TEM <1%
PLM 3%
Henn Avenue
SC-4
TEM <1%
PLM 2%
GB-1
TEM 2.6%
PLM <1%

**EMSL Analytical, Inc.**

14375 23rd Avenue North
Minneapolis, MN 55447
Phone: (763) 449-4922 Fax: (763) 449-4924

EMSL

Attn.: Linda Korubka
**Weston Solutions, Inc.**
2501 Jolly Road
Suite 100
Okemos, MI 48864

Friday, January 17, 2003

Ref Number: MN03127

# POLARIZED LIGHT MICROSCOPY (PLM)

## Performed by EPA 600/R-93/116 Method*

Project: I-Forcer 12634-001-001-0323 COC#0001

| Sample | Location | Appearance | Sample Treatment | ASBESTOS % | ASBESTOS Type | NON-ASBESTOS % | Fibrous | % | Non-Fibrous |
|---|---|---|---|---|---|---|---|---|---|
| SPT-011403-SC1 | Site Characterization #1 | Tan/Gold/Brown Non-Fibrous Heterogeneous | Teased/Crushed | < 1% | Tremolite Actinolite | < 1% | Cellulose | 90%<br>10% | Mica<br>Other |
| SPT-011403-SC2 | Site Characterization #2 | Brown Non-Fibrous Heterogeneous | Teased/Crushed | 2% | Tremolite Actinolite | < 1% | Cellulose | < 1%<br>98% | Mica<br>Other |
| SPT-011403-SC3 | Site Characterization #3 | Brown Non-Fibrous Heterogeneous | Teased/Crushed | < 1% | Tremolite Actinolite | < 1% | Cellulose | 5%<br>95% | Mica<br>Other |
| SPT-011403-SC4 | Site Characterization #4 | Brown Non-Fibrous Heterogeneous | Teased/Crushed | 2% | Tremolite Actinolite | < 1% | Cellulose | < 1%<br>98% | Mica<br>Other |
| SPT-011403-GB1 | Grab Sample #1 | Brown Non-Fibrous Heterogeneous | Teased/Crushed | < 1% | Tremolite Actinolite | < 1% | Cellulose | < 1%<br>100% | Mica<br>Other |
| SPT-011403-GB2 | Grab Sample #2 | Brown Non-Fibrous Heterogeneous | Teased/Crushed | 3% | Tremolite Actinolite | 2% | Cellulose | < 1%<br>95% | Mica<br>Other |

Comments: For all obviously heterogeneous samples easily separated into subsamples, and for layered samples, each component is analyzed separately. Also, "# of Layers" refers to number of separable subsamples.

* NY samples analyzed by ELAP 198.1 Method.

Jodie Bourgerie
Analyst

Approved Signatory

Disclaimers: PLM has been known to miss asbestos in a small percentage of samples which contain asbestos. Thus negative PLM results cannot be guaranteed. EMSL suggests that samples reported as <1% or none detected be tested with either SEM or TEM. The above test report relates only to the items tested. This report may not be reproduced, except in full, without written approval by EMSL. The above test must not be used by the client to claim product endorsement by NVLAP nor any agency of the United States Government. Laboratory is not responsible for the accuracy of results when requested to physically separate and analyze layered samples.

Analysis performed by EMSL-Minneapolis (NVLAP Air and Bulk #200019-0)



01/17/2003 FRI 15:08 [TX/RX NO 7505] 005

EMSL Analytical, Inc.

14375 23rd Avenue North
Minneapolis, MN 55447
Phone: (763) 449-4922 Fax: (763) 449-4924

EMSL

Attn.: Linda Korubka
Weston Solutions, Inc.
2501 Jolly Road
Suite 100
Okemos, MI 48864

Friday, January 17, 2003

Ref Number: MN03127

# POLARIZED LIGHT MICROSCOPY (PLM)

## Performed by EPA 600/R-93/116 Method*

Project: U-Forcer 12634-001-001-0323 COC#0001

| Sample | Location | Appearance | Sample Treatment | ASBESTOS % | ASBESTOS Type | NON-ASBESTOS % | NON-ASBESTOS Fibrous | % | Non-Fibrous |
|---|---|---|---|---|---|---|---|---|---|
| SPT-011403-GB3 | Grab Sample #3 | Tan/Gold Fibrous Heterogeneous | Teased/Crushed | 5% | Tremolite Actinolite | | None Detected | 95% <br> < 1% | Mica <br> Other |

Comments: For all obviously heterogeneous samples easily separated into subsamples, and for layered samples, each component is analyzed separately. Also, "# of Layers" refers to number of separable subsamples.

* NY samples analyzed by ELAP 198.1 Method.

Jodie Bourgerie
Analyst

Approved Signatory

Disclaimer: PLM has been known to miss asbestos in a small percentage of samples which contain asbestos. Thus negative PLM results cannot be guaranteed. EMSL suggests that samples reported as <1% or none detected be tested with either SEM or TEM. The above test report relates only to the items tested. This report may not be reproduced, except in full, without written approval by EMSL. The above test must not be used by the client to claim product endorsement by NVLAP nor any agency of the United States Government. Laboratory is not responsible for the accuracy of results when requested to physically separate and analyze layered samples.

Analysis performed by EMSL Minneapolis (NVLAP Air and Bulk #200019-0)

2

01/17/2003 FRI 15:09 [TX/RX NO 7505] 006

COC # 0001

# Chain of Custody Record

| Work Number: | Project Name: |
|---|---|
| 12894-001-001-0323 | N-Forcer |

| Sample ID | Date | Time | Comp. | Grab | Air | Station Location | Quantity | PLM | AHERA TEM | Soil TEM | PCM | Remarks: |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SPT-011403-SC1 | 1/14/2003 | 9:10 | X | | | Site Characterization #1 | 1 | X | | X | | |
| SPT-011403-SC2 | 1/14/2003 | 9:30 | X | | | Site Characterization #2 | 1 | X | | X | | |
| SPT-011403-SC3 | 1/14/2003 | 9:40 | X | | | Site Characterization #3 | 1 | X | | X | | |
| SPT-011403-SC4 | 1/14/2003 | 10:15 | X | | | Site Characterization #4 | 1 | X | | X | | |
| SPT-011403-GB1 | 1/14/2003 | 9:50 | | X | | Grab Sample #1 | 1 | X | | X | | |
| SPT-011403-GB2 | 1/14/2003 | 10:05 | | X | | Grab Sample #2 | 1 | X | | X | | |
| SPT-011403-GB3 | 1/14/2003 | 10:25 | | X | | Grab Sample #3 | 1 | X | | X | | |
| ATP-011403-WS1 | 1/14/2003 | 8:37 | X | | | HHID #778, EOC | 1 | | X | | X | 475 min * 8.76 L/min =4165.64 Liters |
| ATP-011403-WS2 | 1/14/2003 | 8:46 | X | | | HHID #778, EOC | 1 | | X | | X | 472 min * 8.75 L/min =4129.29 Liters |

24-Hour Turnaround

Contact Linda Korubka:
517-381-5920
Fax: 517-381-5921
Hard copy and invoice to WESTON, Okemos

Also fax results to Heather Schichtel at 312-424-3330

| Relinquished By: (Signature) | Date/Time | Recieved By: (Signature) | Date/Time | |
|---|---|---|---|---|
| [signature] | 01/16/06 15:10 | [signature] | 1/16/03 9:15 | Ship To: EMSL Analytical 14375 23rd Ave Minneapolis, MN 55447 |
| Relinquished By: (Signature) | Date/Time | Recieved By: (Signature) | Date/Time | Airbill Number 7921 6780 5086 |
| Relinquished By: (Signature) | Date/Time | Recieved By: (Signature) | Date/Time | Chain of Custody Seal Numbers |

# EMSL Analytical, Inc.

14375 23rd Avenue North
Minneapolis, MN 55447
Phone: (763) 449-4922 Fax: (763) 449-4924

EMSL

Attention: Linda Korubka
Weston Solutions, Inc.
2501 Jolly Road, Suite 100
Okemos, MI 48864

Friday, January 17, 2003

Reference Number: MN03128

## Analysis of New York State NOB's Performed by Transmission Electron Microscopy (TEM) ELAP 198.4 Method*

**Project: 12634-001-001-0323 N-Forcer COC #0001**

| Sample ID | Sample Description | Sample Color | % Weight of Organic Material | % Weight of Acid Soluble Material | Asbestos Type | TEM Results* % Asbestos |
|---|---|---|---|---|---|---|
| SPT-011403-SC1 | Site Characterization #1 | Brown | 28.4 | 0.1 | Tremolite | <1.0 |
| SPT-011403-SC2 | Site Characterization #2 | Brown | 27.1 | 10.7 | Tremolite | <1.0 |
| SPT-011403-SC3 | Site Characterization #3 | Brown | 34.4 | 3.1 | Tremolite | 1.9 |
| SPT-011403-SC4 | Site Characterization #4 | Brown | 23.0 | 3.9 | Tremolite | <1.0 |
| SPT-011403-GB1 | Grab Sample #1 | Brown | 32.0 | 2.4 | Tremolite | 2.6 |
| SPT-011403-GB2 | Grab Sample #2 | Brown | 31.1 | 4.2 | Tremolite | <1.0 |
| SPT-011403-GB3 | Grab Sample #3 | Brown | 6.0 | 1.9 | Tremolite | 6.9 |

Analyst

Approved Signatory

*Results near 1% are not reliable by this method and a more accurate SEM method is recommended.
**To ensure results, EMSL recommends the use of SEM as a quality control measure. Without SEM QC the current diagnosis error rate for TEM/NOB and TEM/Chatfield occurs at a frequency of approximately 1-2% of samples analyzed. Without SEM QC, EMSL is not responsible for errors which could have been prevented with SEM QC.
NVLAP# 200019-0

# Chain of Custody Record

| Work Number: | Project Name: |
|---|---|
| 12634-001-001-0323 | N-Forcer |

| Sample ID | Date | Time | Comp. | Grab | Air | Station Location | Quantity | PLM | AHERA TEM | Soil TEM | PCM | Remarks: |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Analyte: | | | | |
| SPT-011403-SC1 | 1/14/2003 | 9:10 | X | | | Site Characterization #1 | 1 | X | | X | | |
| SPT-011403-SC2 | 1/14/2003 | 9:30 | X | | | Site Characterization #2 | 1 | X | | X | | |
| SPT-011403-SC3 | 1/14/2003 | 9:40 | X | | | Site Characterization #3 | 1 | X | | X | | |
| SPT-011403-SC4 | 1/14/2003 | 10:15 | X | | | Site Characterization #4 | 1 | X | | X | | |
| SPT-011403-GB1 | 1/14/2003 | 9:50 | | X | | Grab Sample #1 | 1 | X | | X | | |
| SPT-011403-GB2 | 1/14/2003 | 10:05 | | X | | Grab Sample #2 | 1 | X | | X | | |
| SPT-011403-GB3 | 1/14/2003 | 10:25 | | X | | Grab Sample #3 | 1 | X | | X | | |
| ATP-011403-WS1 | 1/14/2003 | 8:37 | X | | | HHID #778, EOC | 1 | | X | | X | 475 min * 8.75 L/min =4155.54 Liters |
| ATP-011403-WS2 | 1/14/2003 | 8:46 | X | | | HHID #778, EOC | 1 | | X | | X | 472 min * 8.75 L/min =4129.29 Liters |

24-Hour Turnaround

Contact Linda Korubka:
517-381-5920,
Fax: 517-381-5921
Hard copy and invoice to WESTON, Okemos

Also fax results to Heather Schichtel at 312-424-3330

| Relinquished By: (Signature) | Date/Time | Recieved By: (Signature) | Date/Time | |
|---|---|---|---|---|
| [signature] | 01/16/03 15:10 | [signature] | 1/16/03 9:15 | Ship To: EMSL Analytical 14375 23rd Ave Minneapolis, MN 55447 |
| Relinquished By: (Signature) | Date/Time | Recieved By: (Signature) | Date/Time | Airbill Number 7921 6750 5086 |
| Relinquished By: (Signature) | Date/Time | Recieved By: (Signature) | Date/Time | Chain of Custody Seal Numbers |

**Asbestos Sampling of Soil and Solid Material at former WR Grace Facility, Dearborn, MI**

| Soil Sample | Location | Asbestos Concentration | | Asbestos type | Additional material |
|---|---|---|---|---|---|
| | | PLM Method | TEM Method | | |
| SPT-011403-SC1 | Composite Sample #1 railroad track spur, north side of property | <1% | <1.0% | tremolite/actinolite | 90% mica |
| SPT-011403-SC2 | Composite Sample #2 parking lot, deposition area at base of RR ties | 2% | <1.0% | tremolite/actinolite | |
| SPT-011403-SC3 | Composite Sample #3 near main railroad line, east side of property | <1% | 1.9% | tremolite/actinolite | 5% mica |
| SPT-011403-SC4 | Composite Sample #4 grassed area, south side of property | 2% | <1.0% | tremolite/actinolite | |
| SPT-011403-GB1 | Grab Sample #1 grassed area at southeast corner of parking lot near main railroad line | <1% | 2.6% | tremolite/actinolite | |
| SPT-011403-GB2 | Grab Sample #2 southwest corner of parking lot, near bushes | 3% | <1.0% | tremolite/actinolite | 2% cellulose |
| SPT-011403-GB3 | Grab Sample #3 material on inside space of west interior wall of the N-Forcer building | 5% | 6.9% | tremolite/actinolite | 95% mica |

**Asbestos Sampling of Indoor Air in Workspace at former WR Grace Facility, Dearborn, MI**

| Interior Air Sample | Location | Asbestos Concentration | | Asbestos type |
|---|---|---|---|---|
| | | PCM Method (fibers/cc) | TEM Method (structures/cc) | |
| ATP-011403 WS1 | West section of facility, middle of the room, near lathe apparatus | 0.002 | 0.0036 | tremolite/actinolite |
| ATP-011403 WS2 | West section of facility, 4 ft from wall that contained suspect asbestos material where GB3 was collected | 0.003 | <0.0009 | tremolite/actinolite |

Exhibit



UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
REGION 5
77 WEST JACKSON BOULEVARD
CHICAGO, IL 60604-3590

APR 09 2003

REPLY TO THE ATTENTION OF:
N-Forcer Site, MI

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Mr. Paul Martin
14300 Henn Street
Dearborn, MI., 48126

RE: N-Forcer Site
General Notice of Potential Liability

Dear Mr. Martin:

The United States Environmental Protection Agency (U.S. EPA) has documented the release or threat of release of hazardous substances, pollutants and contaminants into the environment at and from the above-referenced facility, and is planning to spend public funds to investigate and control these releases. This notice addresses both amphibol asbestos contamination at the facility located at 14300 Henn Street, Dearborn, Michigan, and at various residential properties in the general vicinity of the facility that contain elevated levels of material containing amphibol asbestos that migrated off-site and/or was provided by historical operators of the facility. This action will be taken by U.S. EPA pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §9601 et seq. (CERCLA), as amended by the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499, 100 Stat. 1613 (1986) (SARA), unless U.S. EPA determines that such action will be done properly by a responsible party or parties. Responsible parties under CERCLA include the current and former owners and operators of the facility, persons who generated the hazardous substances, and persons who were involved in the transport, treatment, or disposal of the hazardous substances at the facility. Under Section 107(a) of CERCLA, where U.S. EPA uses public funds towards the cleanup of the hazardous substances, responsible parties are liable for all costs associated with the removal or remedial action and all other necessary costs incurred in cleaning up the facility, including investigation, planning, and enforcement costs.

U.S. EPA is currently planning to conduct the following actions at the above-referenced facility:

Recycled/Recyclable . Printed with Vegetable Oil Based Inks on 100% Recycled Paper (50% Postconsumer)

1. Limit access to the on-site storage area where elevated asbestos levels were detected;

2. Temporarily stabilize areas with detected asbestos on the property by installing a secure groundcover;

3. Develop and implement a Health and Safety Plan for workers and contractors on site;

4. Develop and implement a Work Plan to address the removal and disposal of asbestos-contaminated materials present in the storage room and the soils located on the property.

5. Conduct an assessment to identify residential areas where asbestos-containing material is present at or near the surface;

6. Determine the horizontal extent of surface amphibole asbestos contamination and identify areas to be addressed;

7. Develop and implement a Work Plan to address the removal and disposal of asbestos-contaminated materials present

8. Excavate and remove asbestos-contaminated soils on residential properties to a maximum depth of 18 inches (unless visible asbestos is present at 18 inches, in which case excavation will continue until visible asbestos is removed) on the property and at residences;

9. Excavate and remove asbestos-contaminated soils on residential properties horizontally until no asbestos is present, as detected by lab analysis;

10. Analyze bulk asbestos samples using standard Polarized Light Microscopy (PLM) methods. Supplement PLM analysis with Transmission Electron Microscopy (TEM) for samples with lower concentrations of asbestos to assess whether contamination is present and whether sufficient excavation has occurred;

11. Install a synthetic liner at the bottom of the excavated areas prior to backfill;

12. Backfill excavated areas with clean soil and restore property to original pre-removal condition;

13. Dispose of contaminated soils at an EPA-approved off-site disposal facility;

14. Perform personal air sampling and ambient air sampling during remediation activities; and

15. Implement engineering measures to control dust during the cleanup.

U.S. EPA has received information that you may have owned or operated the facility or generated or transported hazardous substances that were disposed of at the facility. By this letter, U.S. EPA notifies you of your potential liability with regard to this matter and encourages you, as a potentially responsible party, to agree to reimburse U.S. EPA for costs incurred to date and to voluntarily perform or finance the response activities which U.S. EPA has determined or will determine are required at the facility. U.S. EPA is willing to discuss with you the entry of an appropriate administrative consent order under which you would perform or finance response activities and reimburse U.S. EPA for its costs. If a consent order cannot be promptly concluded, U.S. EPA may issue a unilateral order under Section 106 of CERCLA, requiring you to perform specified work. Under Sections 106 and 107 of CERCLA, you may be liable for reimbursement of U.S. EPA's costs, for statutory penalties, and for treble damages for noncompliance with such an order.

Because of the conditions described above, U.S. EPA believes that response activities at the Site must be initiated as quickly as possible. Therefore, U.S. EPA does not intend to utilize the special notice procedures available under Section 122(e) of CERCLA.

As a potentially responsible party, you should notify U.S. EPA in writing within fourteen (14) days of receipt of this letter of your willingness to perform or finance the activities described above and to reimburse U.S. EPA for its costs. Your response should be sent to:

Ruth A. Woodfork
U.S. EPA - Region 5
Emergency Enforcement & Support Section SE-5J
77 West Jackson Boulevard
Chicago, IL 60604-3590

If U.S. EPA does not receive a timely response, U.S. EPA will assume that you do not wish to negotiate a resolution of your potential responsibility in connection with the facility and that you have declined any involvement in performing the response activities.

Your response should indicate the appropriate name, address, and telephone number for further contact with you. If you are already involved in discussions with State or local authorities or involved in a lawsuit regarding this facility, you may continue such activities as you see fit. This letter is not intended to advise you or direct you presently to restrict or discontinue any such activities already underway; however, you are advised to report the status of those discussions or actions in your response to this letter and to provide a copy of your response to any other parties involved in those discussions or actions.

If you need further information regarding this letter, you may contact Thomas Krueger of the U.S. EPA Office of Regional Counsel at (312)886-0562.

Due to the nature of the problem at this facility and the attendant legal ramifications, U.S. EPA strongly encourages you to submit a written response within the time frame specified herein. We hope you will give this matter your immediate attention.

Sincerely yours,

Richard C. Karl, Chief
Emergency Response Branch

U. S. BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

**In re:**

**W. R. Grace & Co., et al.**

**Debtor**
_______________________________/

**Chapter 11**
**Case No. 01-01139 (JKF)**
**(Jointly Administered)**

**Proof of Service**

The undersigned certifies that a copy of the **Response to Debtors' 15th Omnibus Objection to Claim and Proof of Service** was served upon the attached list of attorneys of record of all parties to the above cause at their respective business addresses as disclosed by the pleadings of record herein on October 21, 2005. Said service was made by: Federal Express Courier.

I declare under penalty of perjury that the statement above is true to the best of my information, knowledge and belief.

Carol A. Ucbrick

DEAN & FULKERSON
ATTORNEYS AND COUNSELORS
PROFESSIONAL CORPORATION
FIFTH FLOOR
801 WEST BIG BEAVER ROAD
TROY, MICHIGAN 48084-4767
(248) 362-1300

DEAN & FULKERSON
ATTORNEYS AND COUNSELORS
PROFESSIONAL CORPORATION
FIFTH FLOOR
801 WEST BIG BEAVER ROAD
TROY, MICHIGAN 48084-4767
(248) 362-1300

**Co-Counsel for Debtors:**

Janet S. Baer, Esq.
Kirkland & Ellis LLP
200 E. Randolph Dr.
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young,
Jones & Weintraub PC
919 N. Market St., Ste 1700
Wilmington, DE 19801

**Counsel to Official Committee of Property Damage Claimants:**

Scott L. Baena, Esq.
Bilzin, Sumberg, Dunn, Baena,
Price & Axelrod
First Union Financial Center
200 S. Biscayne Blvd., Ste. 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market St., Ste. 904
PO Box 1351
Wilmington, DE 19899

**Office of the U.S. Trustee:**

Office of the U.S. Trustee
Attn: David Klauder
844 N. King St.
Wilmington, DE 19801