## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: | ) | Chapter 11 |
|  | ) |  |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-01139 (JKF) |
|  | ) | Jointly Administered |
|  | ) |  |
| Debtors. | ) | [Related to Docket No. 9622; |
|  | ) | Hearing: November 14, 2005, |
|  | ) | 12:00 p.m.] |
|  | ) |  |

### RESPONSE IN OPPOSITION TO DEBTORS' MOTION FOR AN ORDER ESTABLISHING A PROOF OF CLAIM BAR DATE FOR ASBESTOS PERSONAL INJURY PRE-PETITION LITIGATION CLAIMS

Baron & Budd, P.C., Environmental Litigation Group, P.C., The Law Office of Peter G. Angelos, A Professional Corporation, Reaud, Morgan & Quinn, Inc., and Silber Pearlman, LLP, by and through their undersigned attorneys, hereby respond in opposition to the Motion for an Order Establishing a Proof of Claim Bar Date for Asbestos Personal Injury Pre-Petition Litigation Claims (the "Motion", Dkt. No. 9622) filed by Debtors (collectively, "Debtors" or "Grace"), and would respectfully show the Court as follows:

### I.    INTRODUCTION

1.    Grace previously asked the Court to impose a bar date on pre-petition asbestos creditors.  The Court declined to do so, but accommodated Grace by

permitting it to propound written discovery requests, in the form of a questionnaire, to asbestos personal injury claimants.[1]  Grace now returns to Court, arguing that the questionnaire approach is flawed and asking the Court to reverse its prior ruling on the bar date issue.

2.     The record is clear that the parties and the Court intended for Debtors' questionnaire to asbestos claimants to be in furtherance of *discovery* – not a proof of claim.  Debtors have stated through counsel that "at the end of the day [the claimant questionnaire] is discovery.  It is our questionnaire that drives our discovery, not [the Asbestos Committee] telling us what discovery we should get." Tr. of  Hrg. at 145 (July 19, 2005, Dkt. No. 9105).  The Asbestos Committee concurs with the characterization of the questionnaire as discovery, noting through its counsel that "this was justified as being a discovery questionnaire, i.e., just asking questions."  *Id.* at 212-13.  The Court, for its part, has held that the questionnaire "is the debtor's [sic] discovery."  *Id.* at 241.

3.     In the Motion, Debtors understatedly acknowledge their previous statements to the effect that they did not originally intend for the questionnaire "to serve as a proof of claim form and effectuate a bar date."  Motion at 7.  As recently as July 19, 2005, Mr. Bernick disclaimed in conclusory, unequivocal terms, in open

---

[1]     *See* Debtors' Motion for Entry of An Order Seeking the Estimation of Asbestos Claims and Certain Related Relief (Dkt. No. 6899, docketed Nov. 13, 2004, at 7) requesting that pre-petition asbestos personal injury claimants be required to file proofs of claim by a prescribed bar date; Debtors' Motion for Entry of a Case Management Order Establishing Protocols for Litigating Asbestos-Related Claims Following Plan Confirmation (Dkt. No. 6898, docketed Nov. 13, 2004, at 6), reiterating request for a pre-petition asbestos claims bar date.

RESPONSE IN OPPOSITION TO DEBTORS' MOTION FOR AN ORDER
ESTABLISHING A PROOF OF CLAIM BAR DATE FOR ASBESTOS
PERSONAL INJURY PRE-PETITION LITIGATION CLAIMS – PAGE 2

court, any intent on the part of the Debtors to seek a bar date (or, for that matter,

to seek disallowance of claims through the estimation process):

> I'll state it here in black and white and red.  We are not
> seeking, in contrast to what we're doing with property damage,
> where the rules are different, we're not seeking to disallow
> claims when it comes to the estimation that applies to the
> personal injury claims.  We're not asking for approval of a
> proof of claim form.  We're not seeking that. ***We're not seeking
> a bar date.***

*Id.* at 116 (emphasis added).  Less than three months later, Grace filed the Motion

and the reversal of course on its counsel's categorical, unqualified assurances was

complete.

4.     Although the relevant circumstances are unchanged since the Court's

denial of its prior request for a bar date, Grace has, with the filing of the Motion,

lately revived its plea that such a deadline be imposed on pre-petition asbestos

personal injury creditors.  In support of the Motion, Grace offers a hodgepodge of

contrived and misleading justifications, which will be addressed below.  Grace says

next to nothing in the Motion, however, about its real agenda:  the claims objection

pandemic it hopes to foment via the eleventh-hour imposition of a bar date and an

irregular, deceptively straightforward proof of claim procedure.

5.     Grace's second-bite-at-the-apple request for a bar date – and the

attendant prospect of litigating claims objections *ad infinitum* which Grace has

sought with eagerness all along – should be denied.

RESPONSE IN OPPOSITION TO DEBTORS' MOTION FOR AN ORDER
ESTABLISHING A PROOF OF CLAIM BAR DATE FOR ASBESTOS
PERSONAL INJURY PRE-PETITION LITIGATION CLAIMS – PAGE 3

F:\clj\RE038007\Docs\3221GG03.doc

## II.   THE FALSE PREMISE UNDERLYING THE MOTION

6.     Despite Grace's assertion to the contrary, there has been widespread compliance with Rule 2019 in this case.  The Court acknowledged ten months ago that numerous 2019 statements had been docketed, which is hardly indicative of widespread 2019 dereliction on the part of the plaintiffs' bar.  Tr. of  Hrg. at 120 (Jan. 21, 2005, Dkt. No. 7680).  Moreover, Grace has offered no evidentiary support for its recent contention to the contrary, citing in the Motion only its own counsel's comments at the omnibus hearing on September 26, 2005.  Motion at 2, citing Tr. of Hrg. at 126-29 (Sept. 26, 2005, Dkt. No. 9628).[2]

7.     Yet in the Motion Grace repeatedly emphasizes its view that a bar date is called for because "it now appears that a significant number of firms have failed to file Rule 2019 statements, contrary to the expectation of the Court."  Motion at 2. "The now apparent failure of various firms to file Rule 2019 statements", Debtors reiterate, shows that "a bar date is needed to ensure that firms file the appropriate Rule 2019 statements."  Motion at 6.  Grace feigns befuddlement as to why this is allegedly so, noting that it "did not envision that there would be such a substantial lack of response to the requirements of Rule 2019."[3]  Grace characterizes this

---

[2]   There is a slight pagination discrepancy between the Debtors' citation to the September 26, 2005, omnibus hearing and to the actual docketed transcript of the hearing.  Page citations herein are to the docketed transcript.

[3]   Debtors say they would not have disclaimed any intention of having the questionnaire "serve as a proof of claim form and effectuate a bar date" had they anticipated the scope of this alleged noncompliance with Rule 2019.  Motion at 7.

alleged wave of Rule 2019 noncompliance – the main premise for its renewed push for a bar date – as a changed circumstance with nefarious underpinnings. "[I]t has become apparent", Grace portentously asserts on page 5 of its Motion, "that a number of firms have not complied with Rule 2019."

8.      Debtors' premise – that there has been widespread non-compliance to date with Rule 2019 in this case – is contrived and untrue. In trumpeting this spurious charge, Grace takes no heed of *when* entities subject to Rule 2019 are required to file 2019 Statements in this case. Only by ignoring the specific requirements of the Court's Revised Order Requiring Filing of Statements Pursuant to Fed. R. Bank. P. 2019 (the "2019 Order", Dkt. No. 6715, docketed Oct. 25, 2004) can Grace perpetuate the fiction that any plaintiff's firm representing more than one pre-petition claimant against Debtors is obliged to have already filed a 2019 Statement.

9.      The 2019 Order was entered a year ago, was not appealed, and has long been final.[4] It provides that compliance with its terms "shall be deemed to be

---

[4]    The Court, of course, simultaneously issued identical 2019 Orders in a number of the mass tort reorganization cases pending before it in this District and in the Western District of Pennsylvania. Several of these were appealed. The 2019 Orders entered in the *Kaiser Aluminum* and *Flintkote* cases were affirmed in late July by District Judge Joseph J. Farnan, Jr. *Certain Underwriters at Lloyd's, London v. Future Asbestos Claim Representative (In re Kaiser Aluminum Corp.)*, 327 B.R. 554, 2005 WL 1799189 (D. Del. 2005). The 2019 Order issued in the *Pittsburgh Corning* case was affirmed last month in *Certain Underwriters at Lloyd's, London v. Pittsburgh Corning Corp. (In re Pittsburgh Corning Corp.)*, Civil Action No. 04-1814, 2005 WL --- -- (W.D. Pa., Sept. 27, 2005) by District Judge Joy Flowers Conti. An appeal of the 2019 Order issued in the *Owens Corning* case remains pending.

RESPONSE IN OPPOSITION TO DEBTORS' MOTION FOR AN ORDER
ESTABLISHING A PROOF OF CLAIM BAR DATE FOR ASBESTOS
PERSONAL INJURY PRE-PETITION LITIGATION CLAIMS – PAGE 5

F:\clj\RE038007\Docs\3221GG03.doc

complete compliance with Bankruptcy Rule 2019 for all purposes in this case"[5] and

answers the question of when Rule 2019 Statements must be filed with clarity:

> Within 60 days from the date of this order, … and entity or committee representing more than one creditor or equity security holder … *that has entered an appearance, filed a claim, cast a ballot or taken any other affirmative action to participate in the Debtor's [sic]* bankruptcy case in any way shall file with the Clerk a statement (a "2019 Statement") containing the information described below.

> It is further **ORDERED** that … any entity or committee that represents more than one creditor or equity security holder and any indenture trustee *that enters an appearance, files a claim, casts a ballot or takes any other affirmative action to participate in the Debtor's [sic] bankruptcy case in any way for the first time after the date of this Order shall, within 10 days of such action,* electronically file with the Clerk a 2019 Statement …

2019 Order at 1 (italicized emphasis added).

10.    Thus, only firms that have *already* entered an appearance or taken

other affirmative action to participate in the Grace's reorganization case are obliged

to file 2019 Statements.  Based on the Court's acknowledgement in January that

numerous 2019 statements had been filed of record, it would appear that the

plaintiffs' bar, on the whole, has been rigorous in its compliance with the 2019

Order.  Tr. of Hrg. at 120 (Jan. 21, 2005, Dkt. No. 7680).

11.    Undoubtedly, some counsel representing multiple asbestos claimants

with claims against Grace have not, thus far, entered an appearance in Grace's

---

[5]    2019 Order at 4.

chapter 11 case or otherwise taken affirmative action to participate therein.  Some of these firms may choose to cast master ballots on their respective clients' behalves when the time for plan balloting rolls around; if they do, they will have 10 days from that point forward, under the 2019 Order, to file 2019 statements.  In the meantime, they are in full compliance with the 2019 Order.  Any suggestion to the contrary is wrong and undoubtedly intended by Grace to besmirch their professional reputations.

12.      The factual premise of Grace's Motion – alleged indifference on the part of much of the plaintiffs' bar to Rule 2019 compliance in this case – is thus wrong and cynically tactical.[6]  Grace cannot credibly maintain that it experienced a recent epiphany concerning the number of asbestos claimants whose counsel had (or were likely at this point to have) filed 2019 statements.[7]  The 2019 Order has been in place for a year.  Its terms are clear.  The alleged widespread failure of claimants' counsel to comply with the 2019 Order is a myth conjured by Grace as a supposed justification for its revived push for an asbestos claims bar date.

---

[6]    The false premise underlying the Motion is a persistent drumbeat in Grace's Motion.  Ignoring the timing of Rule 2019 compliance set out in the 2019 Order, Debtors perniciously suggest that "[a]llowing parties to delay the estimation process due to *their* failure to submit the required Rule 2019 statements and PI Questionnaires undoubtedly will prejudice the Debtors … ." Motion at 7 (emphasis in original).

[7]    Since July 19, 2005, when Grace's counsel flatly denied that Grace was seeking a bar date, it appears that there have been twenty-two 2019 filings.  Of these, all but 3 appear, based on a review of the docket, to have been either supplemental or amended filings by firms that had already filed 2019 Statements.  Grace thus knew last July, with substantial precision, the extent to which pre-petition claimants were covered by 2019 Statements on file.  As nothing much has changed since then insofar as 2019 Statements are concerned, Grace's supposed epiphany clearly has been manufactured to suit its tactical purposes associated with the Motion.

RESPONSE IN OPPOSITION TO DEBTORS' MOTION FOR AN ORDER
ESTABLISHING A PROOF OF CLAIM BAR DATE FOR ASBESTOS
PERSONAL INJURY PRE-PETITION LITIGATION CLAIMS – PAGE 7

F:\clj\RE038007\Docs\3221GG03.doc

13.     In approving the claimant questionnaire, the Court undoubtedly relied upon Grace's representations that it would not seek a bar date.  Grace's swift and sudden disavowal of its prior assurances implicates the doctrine of judicial estoppel, which precludes a party from taking inconsistent positions to gain an unfair advantage – precisely what is occurring here with Grace's bar date flip-flop.  *See Montrose Med. Group Participating Sav. Plan v. Bennett*, 243 F.3d 773, 777 (3d Cir. 2001) (judicial estoppel appropriate to prevent a party from taking inconsistent positions to gain unfair advantage); *see also Motley v. New Jersey State Police*, 196 F.3d 160, 163 (3d Cir. 1999) (judicial estoppel may be invoked by a court at its discretion "to preserve the integrity of the judicial system by preventing parties from playing fast and loose with the courts in assuming inconsistent positions.").  After stating "in black and white and red" that they were "not seeking a bar date", Debtors are clearly estopped from taking a diametrically opposed position now.

## III.    GRACE'S PROFFERED JUSTIFICATIONS FOR A BAR DATE ARE UNPERSUASIVE.

14.     It is not just Grace's main premise that is faulty.  In the Motion, Grace identifies five "bullet points" relating to the service of the questionnaire that "cause Debtors to believe that proof of claim form is necessary to identify, with greater certainty, those Asbestos PI Pre-Petition Litigation Claimants who intend to file a claim against the trust."  Motion at 9.  As set forth below, none of these vaunted concerns withstand scrutiny.

15.    Grace leads off its list with an alleged conundrum that the Court heard and quickly dispatched on October 24, 2005:

- Reaud Morgan and Quinn [sic] ("RMQ") has disputed the Debtors' definition of what constitutes an unresolved claim and has filed an objection to completing the PI Questionnaire on behalf of those claimants who have a settled by unpaid or partially paid claim.

Motion at 9; [Modified] Order Granting Motion of Reaud, Morgan & Quinn, Inc. and Environmental Litigation Group, P.C. for Clarification of Case Management Order, Dkt. 10825.  The Court will recall that some of RMQ's clients had settled their asbestos claims with Grace pre-petition.  These claims were thus liquidated.  They were even partially paid; Grace paid the first of three installments prior to filing chapter 11.  Using the nomenclature of Grace's currently proposed Plan, these claims are "Previously Settled/Adjudicated Asbestos Claims."[8]  Since the ostensible rationale for the "PI Questionnaire" is to inform and further the *estimation* of claims, why should claimants whose claims are already liquidated (and therefore do not need to be estimated) be put to the task of filling out a questionnaire, especially when such claims will not be paid through the 524(g) trust under Debtors' proposed

---

[8]    See Glossary of Terms Used in Plan Documents, § 162 (Dkt. No. 7561, Exh. 2).  Grace's currently proposed plan is its Amended Joint Plan of Reorganization, dated January 13, 2005.  Dkt. No. 7560.  This version of Debtors' proposed plan contemplates a bar date for asbestos personal injury claims; further revisions seem probable.

RESPONSE IN OPPOSITION TO DEBTORS' MOTION FOR AN ORDER
ESTABLISHING A PROOF OF CLAIM BAR DATE FOR ASBESTOS
PERSONAL INJURY PRE-PETITION LITIGATION CLAIMS – PAGE 9

F:\clj\RE038007\Docs\3221GG03.doc

plan as currently constituted?[9]  The Court's ruling vindicated RMQ absolutely and exposed Debtors' alleged conundrum for the red herring it is.

16.    One is hard-pressed to respond to the next bullet point advanced by the Debtors, which is also specific to RMQ, owing to its lack of clarity:

> • Despite having filed a Rule 2019 statement in this case, it appears that RMQ's Rule 2019 statement may be incomplete.   Significantly, it appears, based on the Debtors' preliminary comparison of RMQ's Rule 2019 statement to the information in the Debtors' claims database, that RMQ has omitted from the list  of claimants it represents approximately 50 claims whose claims are not fully resolved and who have also filed claims in the *In re Silica* MDL.[4]  [text of footnote 4 appears immediately below]
>
> _____
>
> [4]  To the extent the Debtors' initial investigation was over-inclusive, that further buttresses the need for a proof of claim form and a bar date to determine the identity of actual Asbestos PI Pre-Petition Litigation Claimants.

Motion at 9.  RMQ's counsel has sought in writing an explanation from Grace as to what the specific issue is, but nothing coherent has been provided.

_____

[9]  It appears that Previously Settled/Adjudicated Asbestos Claims are classified as general unsecured claims under the Debtors' most current proposed plan.  Dkt. No. 7559 at 58-59 (Amended Disclosure Statement for the Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code).  Such claims are to be paid in full, 85% cash and 15% in stock – apparently independently of the Section 524(g) trust contemplated by Grace's proposed plan.  Dkt. No. 7560 at 10.  Grace's suggestion, in its lead-off bullet point, that the estimation process will be frustrated if questionnaires are not completed and submitted by holders of settled, fully liquidated claims is, as the Court squarely concluded, mystifying.  See [Modified] Order Granting Motion of Reaud, Morgan & Quinn, Inc. and Environmental Litigation Group, P.C. for Clarification of Case Management Order, Dkt. 10825.

RESPONSE IN OPPOSITION TO DEBTORS' MOTION FOR AN ORDER
ESTABLISHING A PROOF OF CLAIM BAR DATE FOR ASBESTOS
PERSONAL INJURY PRE-PETITION LITIGATION CLAIMS – PAGE 10

F:\clj\RE038007\Docs\3221GG03.doc

17.    Debtors' next proffered justification is apparently that a bar date would help it with clerical errors in its database.  As stated by Debtors:

- Law firms have denied that they presently represent or, in some cases, ever have represented, claimants for whom the Debtors' records indicate they are counsel of record.

Motion at 9.  No explanation is given as to how inaccuracies in Debtors' records as to who represents whom mandates a bar date.

18.    The last two of Debtors' five bullet points suggest that the plaintiffs' bar is taking the issues presented by the claimant questionnaire very seriously, making Grace's angst difficult to fathom:

- Law firms have been requesting extra PI Questionnaires for claimants who they believe should have been served with the PI Questionnaire although the Debtors' records do not indicate that the individuals have unresolved, pre-petition personal injury asbestos claims.  Similarly, law firms have been requesting blank PI Questionnaires.

- Law firms have been requesting lists of the social security numbers of the claimants for whom they have received PI Questionnaires for purposes of cross-referencing their list of personal injury clients with the list of claimants for whom they have received PI Questionnaires.

Motion at 10.  How is any of this troublesome for Grace?  These law firm requests suggest professional vigilance directed at the task of seeing that all asbestos claimants received questionnaires.  Presumably, this is what Grace wants; in any event, it is hardly a justification for imposing more stringent requirements on pre-petition asbestos claimants and their personal injury counsel.

IV. **A Bar Date Is Unnecessary, and Grace's Zeal for One Belies Its True Agenda.**

19. Bar dates are not, despite Debtors' insistence to the contrary, "essential to the finality of a bankruptcy case." Motion at 4. Indeed, the Bankruptcy Code does not require the imposition of a bar date (or the filing of a proof of claim prior to the bar date) as threshold requirements for consideration of creditors' claims. *See In re Simmons*, 765 F.2d 547, 551 (5th Cir. 1985) ("[N]o creditor is required to file a proof of claim."). As the Court is aware, asbestos claims bar dates have *not* been imposed in quite a number of recent mass tort cases, with no deleterious effect on the administration of those cases.[10]

20. As a general matter, resort to proofs of claim and bar dates is appropriate only when a legitimate purpose will be served. *Id.* ("A proof of claim should be filed only when some purpose would be served."). The primary purpose of a proof of claim/bar date procedure is ordinarily expressed as the achievement of finality in bankruptcy proceedings. *See In re Charter Co.*, 876 F.2d 861, 863 (11th Cir. 1989). In Grace's reorganization case, asbestos personal injury claims will be finally resolved only after the effective date of a plan and the commencement of operations by a 524(g) trust. Imposition of a bar date cannot, therefore, further this primary purpose.

---

[10] No bar date for asbestos personal injury claims has been imposed in, for example, *In re Owens Corning* (Bankr. D. Del., Case No. 00-03837), *In re Pittsburgh Corning* (Bankr. W.D. Pa., Case No. 00-22876), *In re Kaiser Aluminum* (Bankr. D. Del., Case No. 02-10429), *In re Plibrico* (Bankr. N.D. Ill., Case No. 02-09952), or *In re Western Asbestos* (Bankr. N.D. Cal., Case No. 02-46284).

Response in Opposition to Debtors' Motion for an Order Establishing a Proof of Claim Bar Date for Asbestos Personal Injury Pre-Petition Litigation Claims – Page 12

F:\clj\RE038007\Docs\3221GG03.doc

21.    Bar dates for mass tort victims are problematic both in their
application and implementation.  Future claimants slated to participate in the
distribution of estate assets (*e.g.*, holders of asbestos demands in a 524(g) case)
remain unidentified after any bar date has passed.    Who is subject to the bar date
and therefore required to file a proof of claim?  Constitutionally sufficient notice
must be given to all claimants to whom the bar date will apply, and the notice must
be tailored to that universe of claimants.[11]   An evidentiary hearing may be called
for; a court may wish to hear testimony from a communications expert and make
appropriate findings based on such evidence.  The time and expense of a public
notice program is considerable where the universe of claimants is large, which is to
say nothing of the inevitable future disputes and attendant judicial proceedings
over the enforcement of the bar date.

22.    Grace proposes a bar date of January 12, 2006 – less than two months
after the Motion is set to be heard.  If Grace had its druthers, notices of bar date
would be mailed to asbestos pre-petition litigation claimants mere days before
Thanksgiving and the onslaught of the holiday season.  Apparently Debtors
contemplate no other manner of notice, which is appalling in light of Grace's

---

[11]  The Due Process Clause of the Fifth Amendment provides that "[n]o person shall  . . . be
deprived of life, liberty, or property without due process of law[.]"  U.S. CONST. amend. V.  "Due
process requires notice that is 'reasonably calculated to reach all interested parties, reasonably
conveys all the required information, and permits a reasonable time for a response.'"  *Chemetron
Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995) (*quoting Greyhound Lines, Inc. v. Rogers (In re
Eagle Bus Mfg., Inc.*), 62 F.3d 730, 735 (5th Cir. 1995).

RESPONSE IN OPPOSITION TO DEBTORS' MOTION FOR AN ORDER
ESTABLISHING A PROOF OF CLAIM BAR DATE FOR ASBESTOS
PERSONAL INJURY PRE-PETITION LITIGATION CLAIMS – PAGE 13

F:\clj\RE038007\Docs\3221GG03.doc

proposed timetable and the profound substantive ramifications of a bar date.[12]

Appropriate respect for the due process rights of tort claimants demands a

comprehensive effort to provide actual notice to affected claimants, including media

and publication regimes calculated to target Grace's tort victims.

23.    Grace points out that "Asbestos PI Pre-Petition Litigation Claimants

and/or their counsel of record *are believed to be known* and, indeed, have already

been served with the PI Questionnaire."  Motion at 13 (emphasis added).  Grace's

complacency that its "belief" is correct – even as it concedes irregularities in the

service of the questionnaires (i.e., the five "bullet points" from the Motion addressed

above) – highlights Debtors lackadaisical commitment to honoring the due process

rights of its tort victims.  Sufficient notice is, after all, the most indispensable

attribute of due process.  As the United States Supreme Court has stated:

> An elementary and fundamental requirement of due process in
> any proceeding which is to be accorded finality is notice
> reasonably calculated, under all the circumstances, to apprise
> interested parties of the pendency of the action and afford
> them an opportunity to present their objections.

*Potter v. Castle Constr. Co.*, 355 F.2d 212, 215 (5th Cir. 1966) (*quoting Mullane v.*

*Central Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950)).

24.    Claimants fortunate enough to receive Debtors' notice of bar date and

timely apprehend its true significance would be put to the unenviable task of

---

[12]  "[T]here is no need for the Debtors' estates to incur the additional expense and burden associated with publication of the Asbestos PI Pre-Petition Bar Date Notice when all affected creditors will receive direct notice of such bar dates."  Motion at 13.

RESPONSE IN OPPOSITION TO DEBTORS' MOTION FOR AN ORDER
ESTABLISHING A PROOF OF CLAIM BAR DATE FOR ASBESTOS
PERSONAL INJURY PRE-PETITION LITIGATION CLAIMS – PAGE 14

F:\clj\RE038007\Docs\3221GG03.doc

assembling information necessary to formulate proofs of claim during the holiday season.  To the extent they may need input from third parties – say, to obtain or confirm historical employment or exposure data – the period from mid-November through the first of the year is probably the most problematic time of year for tracking down and obtaining that input.

25.    Grace, however, undoubtedly hopes that claimants *do not* timely apprehend the true significance of the bar date.  Debtors disclaim any intent to impose an undue burden on pre-petition asbestos claimants, suggesting that claimants can simply check the box on Grace's proposed proof of claim form stating their election to use their questionnaire responses – which Grace concedes were never intended to be anything more than discovery – as their proofs of claim. Motion at 10.  Grace's tactic is hardly original; it is just the old story of the Trojan Horse.

26.    Responses to written discovery requests are often not as comprehensive as the propounding party might prefer, and there are mechanisms for obtaining additional information (depositions and third-party discovery, for example).  But for claimants who check Grace's innocuous little box, their questionnaire responses will take on greater import than mere responses to discovery requests.  The questionnaire will become more consequential than many claimants are likely to realize.

RESPONSE IN OPPOSITION TO DEBTORS' MOTION FOR AN ORDER
ESTABLISHING A PROOF OF CLAIM BAR DATE FOR ASBESTOS
PERSONAL INJURY PRE-PETITION LITIGATION CLAIMS – PAGE 15

F:\clj\RE038007\Docs\3221GG03.doc

27.    And what will happen when lots of asbestos claimants exercise Grace's seemingly gracious invitation to just check that box?  The dual character of the questionnaire-cum-proof of claim will likely be lost on many claimants.  Grace anticipates – indeed, calculates – that that a number of claimants will not respond to the questionnaire with the same degree of rigor as a proof of claim.  Much of the information sought by the questionnaire, after all, is historical.  A claimant may not recall details concerning a particular job held decades ago or a worksite from the claimant's distant past.  Precise dates may be unknown or difficult to ascertain. Without any intention not to be forthcoming, claimants – many of whom are elderly, infirm or both – may leave discrete portions of the questionnaire blank or incomplete.    Grace will undoubtedly seize on this.

28.    After the bar date, Grace can be expected to object aggressively to proofs of claim that are arguably incomplete, even in trifling respects.  It is virtually certain that the passage of the bar date will bring wave after wave of omnibus claims objections based on alleged deficiencies in questionnaire responses deemed proofs of claim.  The merits of claimants' actual claims, Grace will predictably insist, should warrant no consideration in light of these alleged deficiencies and the passing of the bar date.  Vast judicial and other resources will be expended on claims objections, an exercise that could be handled far more efficiently and less contentiously by a post-confirmation 524(g) trust.

RESPONSE IN OPPOSITION TO DEBTORS' MOTION FOR AN ORDER
ESTABLISHING A PROOF OF CLAIM BAR DATE FOR ASBESTOS
PERSONAL INJURY PRE-PETITION LITIGATION CLAIMS – PAGE 16

F:\clj\RE038007\Docs\3221GG03.doc

29.    The Trojan Horse aspect of Grace's proposed bar date/proof of claim procedure, coming late in the day and hastily cobbled together, is easily discerned. It is cleverly and insidiously consistent with Grace's longstanding goal of zeroing out as many asbestos claims as possible.  The bar date/proof of claim procedure raises significant due process concerns.  Apart from the sufficiency of notice is the problem of conflicting notices.  Having recently been notified that the questionnaire was for discovery purposes only, another notice now proposed would give claimants the choice of filling out more paperwork (a proof of claim form) or checking a seemingly innocuous box designating the questionnaire response as a proof of claim. This sets up the prospect of Grace procedurally objecting to claims as to which asbestos claimants have congressionally mandated jury trial rights, a scenario that is problematic at best and fraught with due process and jurisdictional difficulties.

30.    The specter of widespread claims disallowance proceedings makes Grace's about-face on whether it "needs" a bar date – having obtained the Court's approbation sanction for the claimant questionnaire – particularly troublesome. Grace's minimalist, indifferent approach to notice and a looming bar date, spanning the hectic Thanksgiving-to-New Year's holiday period, seems calculated to trip up claimants.  Grace would actually prefer incomplete questionnaires serving dually as proofs of claim (which would tee up claims objections) over questionnaires complete in all respects – a significant corruption of the discovery that Grace has long insisted it needed.

RESPONSE IN OPPOSITION TO DEBTORS' MOTION FOR AN ORDER
ESTABLISHING A PROOF OF CLAIM BAR DATE FOR ASBESTOS
PERSONAL INJURY PRE-PETITION LITIGATION CLAIMS – PAGE 17

F:\clj\RE038007\Docs\3221GG03.doc

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, Debtors' Motion for an Order Establishing a Proof of Claim Bar Date for Asbestos Personal Injury Pre-Petition Litigation Claims should be, in all things, denied.

Dated: October 28, 2005

Sander L. Esserman
Robert T. Brousseau
Van J. Hooker
David A. Klingler
**STUTZMAN, BROMBERG, ESSERMAN & PLIFKA,**
**A Professional Corporation**
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 969-4900
Facsimile: (214) 969-4999
E-mail: esserman@stutzman-bromberg.com

**COUNSEL FOR BARON & BUDD, P.C.; ENVIRONMENTAL LITIGATION GROUP, P.C., THE LAW OFFICES OF PETER G. ANGELOS, A PROFESSIONAL CORPORATION; REAUD, MORGAN & QUINN, INC., AND SILBER PEARLMAN, LLP**

/s/ Kathleen M. Miller
Kathleen M. Miller (ID no. 2898)
**SMITH, KATZENSTEIN &
FURLOW, LLP**
The Corporate Plaza
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, Delaware 19899 (Courier 19801)
Telephone:  (302) 652-8400
Facsimile:   (302) 654-8405
E-mail:  KMM@skfdelaware.com

**LOCAL COUNSEL FOR
ENVIRONMENTAL LITIGATION GROUP,
P.C., and REAUD, MORGAN & QUINN,
INC.**

/s/ Daniel K. Hogan
Daniel K. Hogan (ID no. 2814)
**THE HOGAN FIRM**
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone:  (302) 656-7540
Facsimile:   (302) 656-7599
E-mail:  KMM@skfdelaware.com

**LOCAL COUNSEL FOR BARON & BUDD,
P.C.; THE LAW OFFICES OF PETER G.
ANGELOS, A PROFESSIONAL
CORPORATION; and SILBER PEARLMAN,
LLP**