IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| W.R. GRACE & CO., et al., | : | Case No. 01-1139 (JKF) |
|  | : | Jointly Administered |
| Debtors-in-possession. | : | Obj. Deadline: Oct. 28, 2005 |
|  | : | Hearing Date: November 14, 2005 @ Noon |

**OPPOSITION OF THE OFFICIAL COMMITTEE OF ASBESTOS
PERSONAL INJURY CLAIMANTS TO THE DEBTORS' MOTION FOR
AN ORDER ESTABLISHING A PROOF OF CLAIM BAR DATE FOR
<u>ASBESTOS PERSONAL INJURY PRE-PETITION LITIGATION CLAIMS [DI 9622]</u>**

The Official Committee of Asbestos Personal Injury Claimants ("Committee"), by and through its undersigned counsel, hereby opposes the Debtors' Motion for an Order Establishing a Proof of Claim Bar Date for Asbestos Personal Injury Pre-Petition Litigation Claims ("Motion"), which was filed by the Debtors and debtors-in-possession herein (collectively, "the Debtors" or "Grace") on or about October 11, 2005. The grounds supporting this opposition are as follows.

<u>**PRELIMINARY STATEMENT**</u>

The Debtors' efforts to impose a claims bar date on asbestos personal-injury claimants continue unabated. Earlier this year, this Court declined to grant the Debtors' request for a bar date, preferring instead to wait and see how the estimation proceeding would unfold. Now, in their Motion, the Debtors renew their request based on "changed circumstances" mostly having to do with the Court's Rule 2019 filing requirements, which the Debtors misconstrue. On closer scrutiny, the reasons given by the Debtors for their renewed request turn out to be vacuous, and have nothing to do with the immediate task at hand, which is to estimate the value of present and future asbestos personal-injury claims in the aggregate.

As explained below, the Debtors have shown no legitimate basis for imposing a bar date. Nor is there a credible reason to establish a claims bar date for estimation purposes.

<u>First</u>, the Debtors wholly misconstrue the Rule 2019 reporting requirements, as modified by this Court. In general, attorneys representing multiple claimants are required to file Rule 2019 disclosures if they wish to become active in the bankruptcy case. Contrary to the Debtors' suggestion, this Court has <u>not</u> required plaintiffs' attorneys who are not participating in the bankruptcy case to file Rule 2019 statements.

<u>Second</u>, the Debtors do not need a bar date to understand the entire "universe" of asbestos claimants. The Debtors' own Motion contradicts that assertion. On page 13 of the Motion, the Debtors concede that they already know the names and identities of pre-petition asbestos claimants. So the question remains: why do the Debtors even need a bar date to know the full universe of pre-petition claimants?

<u>Third</u>, the Debtors' assertion that they need a bar date to "establish jurisdiction" over individual claimants for estimation purposes is nonsense. There is no need to "establish jurisdiction" over individual claimants in order for the Court to conduct an estimation because, among other reasons, the Court is estimating claims <u>in the aggregate</u>, for plan confirmation purposes, and not ruling on the merits of individual claims. If the Debtors are asking the Court to use the estimation proceeding as a vehicle to issue rulings on individual claims, then the individual claimants should be given the full panoply of their due process rights, such as reciprocal discovery and a right to a jury trial.

One can only marvel at the Debtors' sheer determination to impose a bar date on claimants, and wonder what the Debtors' ulterior motives are for doing so. Apparently unsatisfied with their detailed claimants questionnaire, the Debtors continue to search for new

ways to procedurally disqualify large numbers of asbestos personal-injury claims.  If any claimants fail to return a questionnaire on time or return what the Debtors regard as "incomplete" questionnaires, the Debtors will likely attempt to disqualify those claims, even if such claims are valid on their individual merits.[1]  Moreover, if claimants miss the claims bar date because of simple oversight or lack of notice, then it stands to reason as well that the Debtors will seek to disqualify otherwise legitimate claims on completely technical grounds.[2]  It is almost as if the Debtors wish to lay as many traps for the unwary as possible, in an effort to disqualify claims for technical reasons and not because of their individual merits.

The time and place for dealing with the merits of individual claims is at the § 524(g) trust distribution stage, not during an <u>aggregate</u> estimation proceeding.  While aggregate estimation can serve many purposes – such as to test whether a proposed chapter 11 plan is feasible or whether a § 524(g) trust is adequately funded – individual claims adjudication is <u>not</u> one of them.  Because the Court cannot and should not use this proceeding to adjudicate the merits of individual claims, there is no reason for a bar date.  The Court should deny the Motion.

## ARGUMENT

I. **THE DEBTORS' MOTION PROVIDES NO VALID REASON FOR IMPOSING A BAR DATE ON PRE-PETITION ASBESTOS CLAIMANTS**

    A. **The Debtors Wholly Misconstrue the Court's Requirements Concerning Rule 2019 Statements, and in Any Case a Bar Date Is Unnecessary Since the Debtors Concede That They Know of the Universe of Personal-Injury Claims Already**

---

[1] Indeed, the questionnaire's instructions warn that "failure to timely return the questionnaire as completely and accurately as possible may result in sanctions and/or other relief available under applicable Federal Rules."  It is not a stretch of the imagination to anticipate that the Debtors will likely try to disallow or disqualify as many claims as possible under Fed. R. Civ. P. 37(b)(2)(C).

[2] The Debtors' proposed bar-date notice states that claimants with an untimely or improperly filed proof of claim "shall be forever barred, estopped and enjoined from asserting any such claims . . . ." Ex. B to Motion, at 3.

The Debtors renew their bar-date request, asserting that they only recently found that not all claimants' attorneys have filed Rule 2019 statements. As a result, the Debtors contend that they "have no way of knowing whether those who return [their claimants' questionnaires] represent the universe of [pre-petition personal-injury claimants] who intend to file claims against the Section 524(g) trust." Motion 2. In making such assertions, the Debtors totally misconstrue this Court's requirements regarding Rule 2019 disclosures, which contrary to the Debtors' suggestions, do <u>not</u> mandate that all plaintiffs' attorneys file Rule 2019 statements.

The Court's requirements concerning Rule 2019 of the Federal Rules of Bankruptcy Procedure are set forth in a series of orders entered in late 2004. Most relevant here is the order entered by the Court on October 22, 2004, which governs when an attorney is required to file a Rule 2019 statement. Under this order, an attorney representing more than one claimant or interest holder must file a Rule 2019 statement if he or she "enters an appearance, files a claim, casts a ballot or takes any other affirmative action to participate in the Debtor's bankruptcy case . . . ." Order of Oct. 22, 2004, at 1 (attached as <u>Exhibit 1</u>). In other words, attorneys who represent multiple parties must become affirmatively active in the bankruptcy case <u>before</u> their obligation to file a Rule 2019 statement is triggered.

It stands to reason then that not all claimants' attorneys have become affirmatively active in Grace's bankruptcy case, and thus, not all attorneys need to file a Rule 2019 statement. This explains why Grace has only recently "discovered" that not all plaintiffs' lawyers have filed such a statement. At the same time, the reality of the Court's Rule 2019 requirements differ substantially from what Grace suggests in its Motion. Grace asserts that "it has become apparent that a number of firms have not complied with Rule 2019." Motion 5. That is an absurd assertion for Grace to make, particularly when there is a reasonable explanation why a number of

lawyers might not have filed Rule 2019 statements: They were never required to do so in the first place. Their obligation to do so under the Court's orders was never triggered.[3]

So too, Grace's assertion that it needs a bar date to understand "the universe of Asbestos PI Pre-Petition Litigation Claimants" is not credible. Grace contends that it needs to understand the universe of claims to determine which claimants have failed to return their questionnaires by the January 12 deadline. See Motion 2-3. Surely, Grace can consult its own historical claims database to determine which asbestos claimants filed law suits against it prior to the bankruptcy filing. Grace can also calculate the non-return rate by checking its own list of whom it sent questionnaires to, and then comparing that list to the questionnaires that were returned. A bar date is simply unnecessary to help Grace determine the non-return rate of its questionnaires.

Moreover, in its own Motion, Grace contradicts its assertion that it has no knowledge of the universe of pre-petition asbestos personal-injury claims. In arguing that it should be exempt from publishing notice of the bar date, Grace concedes:

> [T]he names and identities of all potential Asbestos PI Pre-Petition Litigation Claimants are known to the Debtors. Indeed, to qualify as such, a claimant must have filed a pre-petition lawsuit against one or more of the Debtors. Thus … the entire universe of potential Asbestos PI Pre-Petition Claimants and/or their counsel of record are believed to be known and, indeed, have already been served with [a] questionnaire.

Motion 13 (emphasis added). If the "entire universe" of "potential" claimants and their lawyers is already known to Grace, why does Grace need a bar date to define the "universe" of claims?

Grace argues, nevertheless, that knowledge of the universe of potential claimants is not enough; it needs a bar date to understand which claimants will actually "assert claims against the

---

[3] While it is always possible that an attorney active in this case has not yet filed a Rule 2019 statement, the Committee believes that the alleged "substantial lack of response to the requirements of Rule 2019," Motion 7, is more the product of a duty to file never being activated, rather than a violation of such a duty after it arose.

- 5 -

Debtors or the Section 524(g) trust." Motion 8. Yet, this alleged distinction between "potential" and "actual" claimants is nothing but sophistry. The asserted distinction is also based on a false premise: that claimants who went to the trouble of filing a lawsuit against Grace pre-petition will have now lost interest and given up on their prospects of receiving compensation from a § 524(g) trust. Grace may well harbor some hope that claimants will lose interest and give up – especially after they are burdened with the Debtors' questionnaires. But it is simply untenable to assume such is the case. By its own admission, Grace well knows which claimants filed a lawsuit against it pre-petition, and if anything, such claimants should be regarded as "actual" claimants, not merely "potential" ones. In truth, Grace is <u>not</u> seeking a bar date to identify the pool of claimants who will be participating in a § 524(g) trust. Rather, it seeks a bar date to erect another procedural barrier to deter, if not prevent, pre-petition claimants from even getting into that pool.

> B. **The Court Does Not Need to Bring Individual Claimants "Within Its Jurisdiction" in Order to Estimate Present and Future Asbestos Claims in the Aggregate**

The Debtors argue that a bar date is needed to bring asbestos claimants "within the Court's jurisdiction" and thereby "bind [them] to the estimation so as to ensure proper funding of the Section 524(g) trust." Motion 4. This argument is a red herring, for two reasons.

First, there is no need to bring asbestos claimants "within the Court's jurisdiction" in order to estimate the Debtors' aggregate asbestos liability for plan confirmation purposes. As the Debtors have noted, the purpose of estimation is to ensure that a § 524(g) trust is adequately funded. Relevant concerns regarding this purpose include the feasibility of the proposed plan of reorganization, whether or not the proposed plan unfairly discriminates against other creditors, and whether the proposed plan satisfies the absolute priority rule. Thus, estimation is solely for

plan confirmation purposes and is not a device for testing or estimating the merits of individual claims.[4] As noted before, the time and place for dealing with the merits of individual claims is at the asbestos trust distribution stage, not during an aggregate estimation proceeding. Other courts – most notably those in the Eagle-Picher, Owens Corning, and Federal-Mogul cases – were able to estimate claims without having to impose a bar date or "assert jurisdiction" over individual claimants. See, e.g., In re Eagle-Picher Indus., Inc., 189 B.R. 681, 690-91 (Bankr. S.D. Ohio 1995); Owens Corning v. Credit Suisse First Boston, 322 B.R. 719, 722 (D. Del. 2005); In re Federal-Mogul Global, Inc., No. 05-00059, 2005 WL 2218360, at *27 (D. Del. Sept. 13, 2005). The Court should adopt the same approach here.[5]

Second, it is not necessary to "bind" individual claimants to an estimation decision. As noted, the Court will be estimating the present and future asbestos claims in the aggregate for purposes of plan confirmation. The purpose here is not to estimate the validity or allowability of a particular claim or group of claims. Indeed, estimating the validity and allowability of such claims would violate the claimants' individual due process rights as well as the prohibition against making wholesale rulings as to classes of claims. See Cimino v. Raymark Indus., Inc.,

---

[4] The difference between (a) an estimation for plan confirmation purposes and (b) an estimation for distribution purposes is highlighted by 28 U.S.C. § 157(b)(2)(B), which provides that a "core proceeding" includes proceedings for the "estimation of claims or interests for the purposes of confirming a plan under chapter 11 . . . but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11." (emphasis added).

[5] To support their position that individual claimants need to be brought "within this Court's jurisdiction," the Debtors cite Langenkamp v. Culp, 498 U.S. 42 (1990) and its progeny, which are inapposite since they deal with a party's Seventh Amendment right to a jury trial upon filing a proof of claim, and not with estimation. See Motion 4 & n.3. The Debtors also cite In re S.G. Phillips Constructors, Inc., 45 F.3d 702 (2d. Cir. 1995), for the unremarkable proposition that creditors invoke the jurisdiction of a court over their claims when they file a complaint or proof of claim in that court. See id. None of these cited decisions deals with estimation, nor do they even come close to holding that a bankruptcy court needs to bring all individual claimants "within its jurisdiction" in order to estimate asbestos claims for plan confirmation purposes.

151 F.3d 297 (5th Cir. 1998) (stating that the elements of a state-law tort cause of action and the associated damages "must be determined as to 'individuals, not groups'"); Malcolm v. National Gypsum Co., 995 F.2d 346, 350-53 (2d Cir. 1993) (disapproving consolidation of forty-eight asbestos cases because too many different individual exposures, jobs, job sites, and diseases were involved). If the Debtors intend to estimate the merits of claims or groups of claims, then the individual claimants should be given the full panoply of their due process rights, such as individualized notice of the estimation proceeding, reciprocal discovery rights as to Grace, and the right to have the individual merits of their claims decided by a jury. Estimating these claims for allowance purposes without providing the necessary notice and hearing to each individual claimant would violate due process. See, e.g., In re LaRouche Indus., 307 B.R. 774, 781 (D. Del. 2004); In re Waterman Steamship Corp., 157 B.R. 220, 221 (S.D.N.Y. 1993).[6] If such rights are not afforded to claimants, the Debtors cannot "bind" them to an estimation decision. And, as noted above, it is not necessary to bind claimants anyway in order to estimate the aggregate amount of present and future claims. Since no useful purpose would be served by imposing a bar date on individual claimants, the Motion should be denied.

II. **IMPOSING A BAR DATE ON ASBESTOS PERSONAL-INJURY CLAIMS IS NEITHER MANDATORY NOR NECESSARY**

The Debtors incorrectly assert that bar dates are "necessary," if not mandatory. That contention is not so. Neither the Bankruptcy Code nor the Bankruptcy Rules require a proof of

---

[6] Under certain circumstances, courts have found it necessary to estimate claims for allowance or distribution purposes, but only after ensuring that appropriate procedural safeguards inherent in traditional notions of due process were protected. See, e.g., In re Eagle Bus Mfg., Inc., 158 B.R. 421, 437 (S.D. Tex. 1993) (court estimated claims but permitted parties to present seven hours of evidence and testimony and 165 trial exhibits); In re Poole Funeral Chapel, Inc., 63 B.R. 527, 532 (Bankr. N.D. Ala. 1986) (finding that for "counts sounding in tort, the plaintiffs are entitled to jury trials in some court for purposes of distribution. The bankruptcy court has the right and duty only to estimate these claims for purposes of confirming a plan under Chapter 11, and that is a core proceeding").

claim as a prerequisite for having creditors' claims considered.  See In re Simmons, 765 F.2d 547, 551 (5th Cir. 1985) ("[N]o creditor is required to file a proof of claim."); see also 4 Collier on Bankruptcy ¶ 501.01[1], at 501-3 (15th ed. 2004) ("It should be noted that the filing of a proof of claim or interest is permissive, and no creditor or interest holder is ever required to file one.") [hereinafter "Collier"].  Instead, proofs of claim are a tool to be used when they would serve some legitimate purpose in the proceeding.  See Simmons, 765 F.2d at 551 ("A proof of claim should be filed only when some purpose would be served."); Collier ¶ 501.01[1], at 501-3 to 501-4 (quoting Simmons).

  The primary purpose of a bar date/proof of claim process has been described as the achievement of finality in bankruptcy proceedings.  See In re Charter Co., 876 F.2d 861, 863 (11th Cir. 1989).  Under § 524(g) of the Bankruptcy Code, a statutory provision tailored precisely to address asbestos claims, personal injury claims are not liquidated in bankruptcy, but are subsequently resolved by a trust established under a plan of reorganization.  Thus, the final resolution of asbestos personal-injury claims will occur only after a confirmed plan of reorganization becomes effective and the § 524(g) trust is established.  Accordingly, the bar date/proof of claim process sought by the Debtors does not serve the primary purpose contemplated by the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure.

  Though it is true that Bankruptcy Rule 3003(c)(3) provides that the "court shall fix . . . the time within which proofs of claim or interest may be filed," the rule does not mandate the establishment of a bar date for all claims.  To the extent it has not done so already, the Court will likely impose bar dates with respect to non-asbestos claims and even asbestos property-damage claims, thereby satisfying the requirements of Rule 3003(c)(3).  There is nothing in this rule that obligates the Court to impose an additional bar date for asbestos personal-injury claims.

Indeed, bankruptcy courts have substantial discretion to determine whether, in particular circumstances, a bar date should be required at all. See, e.g., In re Eagle-Picher Indus., 137 B.R. 679, 680-81 (Bankr. S.D. Ohio 1992) (setting an asbestos claims bar date is not mandatory but rather a matter left to the sound discretion of the bankruptcy court); Official Comm. of Asbestos Claimants of G-I Holdings, Inc. v. Heyman, 277 B.R. 20, 34 n.8 (S.D.N.Y. 2002) (observing that "in many asbestos bankruptcies, no bar date [is] ever set"). In exercising such discretion, courts may select not to impose a bar date:

> Initially we deal with the contention of the Debtors that they have an absolute right to have a bar date set by which time proofs of claim must be filed. After careful consideration of this question, we have reached the conclusion that while such bar dates are commonly set in Chapter 11 cases, upon good cause shown the court may dispense with one in a given case.

Eagle-Picher Indus., Inc., 137 B.R. at 680 (emphasis added).

Consequently, the Court should not read Bankruptcy Rule 3003(c) to remove the discretion that the Court has over the bar date process – particularly where the Court is specifically granted broad discretion over case administration pursuant to § 105(a) of the Bankruptcy Code.[7]

The Debtors cite a number of decisions in an effort to highlight the role of bar dates in (typically non-asbestos-related) bankruptcy cases. See Motion 8-9, 11. Yet, far from suggesting that bar dates are mandatory or necessary in a bankruptcy case, one of the decisions they cite, Eagle-Picher, emphasizes how the Court has discretion as to whether or not a bar date should be

---

[7] Section 105(a) of the Bankruptcy Code provides in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Section 105(a) has been held to afford the bankruptcy courts broad equitable powers to fashion any relief necessary for the effective administration of the bankruptcy case that is consistent with the express terms of the Bankruptcy Code. See generally Collier ¶ 105.01[2], at 105-7 to 105-8.1.

imposed on asbestos claimants. See In re Eagle-Picher Indus., 137 B.R. 679, 680-81 (Bankr. S.D. Ohio 1992). Additionally, several of these cited decisions are not helpful to the Debtors in that they address late-filed claims rather than the predicate issue of whether a bar date is needed in the first place. See, e.g., Jones v. Chemetron Corp., 212 F.3d 199 (3d Cir. 2000); In re Keene Corp., 188 B.R. 903 (Bankr. S.D.N.Y. 1995).

Though it is true that the court in In re Babcock & Wilcox Co., No. 00-10992 ("B & W"), set a bar date for asbestos claims, there is more to the history of that case than what the Debtors suggest. After a bar date order was entered in that case, almost a quarter of a million asbestos personal-injury claims were filed. The debtors then proposed a scenario for individualized claims adjudication. The court in B & W correctly recognized that such adjudication would take decades to accomplish, if it could be done at all. The court ordered the parties to submit briefs on claims estimation. Less than six months later, the debtors and the asbestos claimants committee filed a consensual plan of reorganization, which ultimately led to a confirmation hearing at which various insurance companies contested the debtors' overall asbestos liability. The valuation of the debtors' asbestos liability at the confirmation hearing was based entirely on expert estimation of that liability and the debtors' past claims history, not on the claim forms.

III. **DEBTORS' BAR-DATE PROPOSAL IS UNFAIR TO CLAIMANTS, AND SHOULD NOT BE PERMITTED**

The bar-date proposal set forth in the Motion is not the same bill of goods that the Debtors described at the hearing of September 26, 2005. At that hearing, counsel for the Debtors informed the Court that "we would be seeking a bar date and they [the claimants] could satisfy their obligation under the bar date either by submitting the questionnaire **or** by simply submitting the Form 10 [official proof-of-claim form], which [is] a simple piece of paper that says I got a claim." Hr'g Tr. of Sept. 26, 2005, at 130:21-24 (emphasis added) (attached as Exhibit 2). Yet,

- 11 -

a careful read of the Debtors' proposed bar-date notice reveals that this is not a situation where claimants can meet the bar date simply by filing their questionnaire responses on time. Under the procedures described in the proposed bar-date notice, claimants would have to file Grace's customized proof-of-claim form – not Official Form 10 itself – on or before the bar date or else they would lose their claim, <u>regardless of whether or not they timely filed their questionnaire responses</u>. Grace would permit claimants to support their proof of claim by relying on their questionnaire responses, but in order to do so, the claimants would have to check a special box on the customized proof-of-claim form. In other words, it is not enough for a holder of a legitimate asbestos claim against Grace to return a completed questionnaire on time. If that holder failed to timely file the customized claim form as well, his or her claim would still be "barred and disallowed." <u>See</u> Ex. B to Motion, at 1. It is thus becoming increasingly clear that Grace seeks to pile on additional procedural requirements not to understand the "universe" of claims, but rather in the hopes that as more and more procedural hurdles are added, more claimants will inadvertently "slip up" and lose their claims forever.

Complicating matters more is the relatively short period of time that claimants would have to file their customized claim forms. If the Motion were granted on November 14, 2005, and the bar-date notices served by November 18, 2005, claimants would have <u>less than 60 days</u> to receive the bar-date notice and then file their proof of claim. Such a short period of time is not reasonable, especially since creditors in a chapter 7 case are given at least 90 days' notice of the bar date, which is a notice period that cannot be reduced. <u>See</u> Fed. R. Bankr. P. 3002(c) & 9006(c)(2). It is important to note here that the Debtors have apparently not mailed the questionnaires to claimants within the timeframe ordered by this Court. Based on the Committee's investigation to date, many claimants who filed pre-petition claims against Grace

still have not received questionnaires. Given the Debtors' imperfect track record for mailing important items, individual claimants will likely have even less time to file their claim forms. Since the Debtors' bar-date proposal is unnecessary and would serve no useful purpose in the estimation, there is no reason for the Court to authorize a period to file claims at all, much less a reduced period of less-than-60 days.

Finally, even if a claimant has been diligent enough to file a proof of claim on a completed Official Form 10 prior to the Motion, that proof of claim would be eviscerated and nullified under the Debtors' bar-date proposal. That same diligent claimant would have to re-file the claim on the Debtors' customized form by the proposed bar date, or else that claim would be "barred and disallowed." See Ex. B to Motion, at 1. There is no proper basis for expunging a previously-filed proof of claim on a completed Official Form 10, simply because the claim is not set forth on the Debtors' preferred, customized claim form. It is unreasonable too to require claimants to file the same claim again, when they filed it on a perfectly proper Official Form 10 the first time. This re-filing requirement is simply another trap for the unwary that the Debtors are trying to create, in order to eliminate claims procedurally without having to address their merits. This additional hurdle is unfair to claimants who were diligent enough to file their proofs of claims already. The Motion should be denied.

## REPLY TO EQUITY COMMITTEE'S RESPONSE

On October 28, 2005, the Official Committee of Equity Security Holders ("Equity Committee") filed a response in support of the Motion. In that response, the Equity Committee asserts, without citation to the transcript, that there was an alleged announcement at the hearing of September 26, 2005, that "many claimants apparently do not intend to respond to the PI questionnaire and intend to challenge the Court's jurisdiction to compel responses." This

Committee has not been able to find any part of the September 26 hearing transcript in which this alleged announcement was made. Despite the request made by this Committee, the Equity Committee has been unwilling or unable to identify who made the alleged announcement or where in the transcript the alleged announcement might be found. Accordingly, this Court should ignore the assertions contained in the Equity Committee's response, and deny the Motion.

## CONCLUSION

From the start, the Debtors have improperly sought to use estimation as a vehicle for disallowing asbestos personal-injury claims en masse, without giving the holders of those claims their due process and jury-trial rights. This Court quite correctly declined to impose a claims bar date at the Debtors' request earlier this year. There was no reason to impose a bar date on claimants then. There is similarly no reason to impose a bar date now. As shown above, the Debtors' "new reason" for imposing a bar date, based on the Rule 2019 statements, is simply wrong. For all the reasons stated above, the Committee respectfully requests that the Court sustain the objections contained in this opposition, deny the Motion, and grant to the Committee such other and further relief as this Court deems just and appropriate.

[Signature of counsel on following page]

Dated: October 28, 2005

Respectfully submitted,

**CAMPBELL & LEVINE, LLC**

/s/ Mark T. Hurford
Marla R. Eskin (No. 2989)
Mark T. Hurford (No. 3299)
Kathleen Campbell Davis (No. 4229)
800 N. King Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 426-1900
Telefax: (302) 426-9947

**CAPLIN & DRYSDALE, CHARTERED**

Elihu Inselbuch
399 Park Avenue, 27th Floor
New York, NY 10022
Telephone: (212) 319-7125
Telefax: (212) 644-6755

Peter Van N. Lockwood
Nathan D. Finch
Jeffrey A. Liesemer
One Thomas Circle, N.W.
Washington, D.C. 20005
Telephone: (202) 862-5000
Telefax: (202) 429-3301

Counsel for the Official Committee
of Asbestos Personal Injury Claimants