**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
-------------------------------------------------)
In re                                            )        Chapter 11
                                                 )
W. R. GRACE & CO., et al.,                       )        Case No.  01-01139 (JKF)
                                                 )        (Jointly Administered)
                                                 )
                           Debtors.              )
                                                 )        Hearing Date:  November 14, 2005
                                                 )        RE: Docket No. 9673
-------------------------------------------------)
```

**RESPONSE AND MEMORANDUM OF LAW OF THE OFFICIAL COMMITTEE
OF ASBESTOS PROPERTY DAMAGE CLAIMANTS IN OPPOSITION
TO DEBTORS' BRIEF IN SUPPORT OF AN ESTIMATION HEARING ON
CONSTRUCTIVE NOTICE IN PROPERTY DAMAGE CLAIMS**

TO:    THE HONORABLE JUDITH K. FITZGERALD,
        UNITED STATES BANKRUPTCY JUDGE:

       The Official Committee of Asbestos Property Damage Claimants (the **"PD Committee"**) of the above-captioned debtors and debtors in possession (the **"Debtors"** or **"Grace"**), by and through undersigned counsel, respectfully files this Response and Memorandum of Law in Opposition to the Debtors' Brief in Support of an Estimation Hearing on Constructive Notice in Property Damage Claims (the **"Debtors' Brief"**).

**PRELIMINARY STATEMENT**

       Under the guise of "efficiency and speed," the Debtors entreat that "the Court during Phase I of the estimation proceedings should convene a hearing at which it considers and decides the issue of when property owners were on constructive notice of property damage claims under the laws of three key states that have the highest number of claims, California, New York and Louisiana." *Debtors' Brief*, p. 2. While we do not dispute that the Debtors have been promoting the notion of a "Constructive Notice"

finding as part of the estimation of filed asbestos property damage claims (**"PD Claims"**),
what is proposed in the Debtors' Brief is hardly the process that the Debtors have been
heralding and provides further evidence that the PD Estimation is a "work in progress"
that is being revealed to the Court and all participants when and as it suits the Debtors.[1]

Moreover, the Debtors apparently continue to think that because the PD
Estimation is to occur in the course of bankruptcy, the process is boundless.[2]  Thus, in
this instance, without any consideration of the actual facts underlying each PD Claim or
any regard for the causes of action asserted or that could be asserted by each holder of a
PD Claim (a **"PD Claimant"**), the Debtors promise to expunge *en masse* thousands of
PD Claims as time-barred.[3]  To soothe any concerns about due process or the like, the
Debtors also propose to allow PD Claimants an opportunity to actually be heard on
whether their individual claims are time-barred as part of "the ongoing claims objection
process" but, incredibly, the Debtors would place the "burden" of disproving the Debtors'
statute of limitations affirmative defense on PD Claimants. *Debtors' Brief*, pp. 16-17.  Of
course, no mention is made that such an "opportunity"[4] would be pyrrhic if the Court

---

[1]      By the Court's *Case Management Order for the Estimation of Asbestos Property Damage
Liabilities*, dated August 29, 2005 (the **"PD CMO"**), the Court directed the Debtors to "submit a brief to
address whether the Constructive Notice Issue should be addressed . . . via summary judgment motion,
Rule 502(c) Estimation, or in some other procedural context . . . ." *PD CMO*, ¶9. The PD CMO gave "any
PD Estimation Participant" until October 31, 2005 to respond to the Debtors' "Constructive Notice" brief.
*Id.* at ¶11. Thus, the only issue presently before the Court is whether or not the "Constructive Notice" issue
will be considered by the Court.

[2]      *See Memorandum of Law of the Official Committee of Asbestos Property Damage Claimants in
Opposition to Consideration of the Debtors' Proposed "Methodology Issue" as Part of the Estimation of
Asbestos Property Damage Claims,* pp. 4-9.

[3]      The Debtors altogether ignore the many differences between PD Claims and PD Claimants. They
fail to pay any attention to the fact that PD Claimants run the gamut from residential homeowners to
owners of commercial buildings, from the owners of a single property to the owners of multiple properties,
from unsophisticated property owners to more sophisticated property managers.

[4]      Once again, the Debtors mislead the Court by blurring the distinction between an estimation of PD
Claims and the process for the actual allowance or disallowance of PD Claims. Ever since the Court

2

makes the "Constructive Notice" finding that the Debtors seek and thus, estimates PD Claims at zero on a wholesale basis.

The Debtors' proposed "Constructive Notice" estimation procedure is simply indefensible. To adopt any aspect of it would, by definition, constitute reversible error. The Debtors' proposal ignores applicable Federal and state law which, without exception, establishes that the date on which a PD Claimant can be deemed to have suffered an actionable asbestos property damage tort injury, let alone when such PD Claimant knew or should have known of the injury so as to begin the running of the relevant statute of limitations, is determined based on an individual, case-by-case factual inquiry. The Debtors have been unable to cite even a single decision---because there is none---which supports their attempt to globally determine that thousands of PD Claims are time-barred without reference to the individual facts unique to each such PD Claim.[5]

---

considered whether it would require PD Claimants to file proofs of claim and the form of proof of claim that PD Claimants would be required to utilize, the PD Committee has complained that estimation and claims objections are mutually exclusive processes and that, under section 524(g), the claims allowance process is ordinarily delegated to a settlement trust. Indeed, a principal purpose of estimation in mass tort cases is to avoid delay in accomplishing reorganization engendered by the claims allowance process. Thus, the Debtors' pursuit of both estimation of and objections to PD Claims is wasteful and inefficient, despite the Debtors' baseless statements to the contrary. The fact that the Court has indulged the Debtors in their pursuit of both estimation and claims objections in tandem does not change the fact that they are separate and distinct processes or the fact that the Debtors bear the burden of rebutting the validity of filed PD Claims on a claim by claim basis, including the burden of proving that any PD Claim is barred by the applicable statute of limitations. To the extent that the Debtors posit that the Court may "summarily dispose of claims, adjudicate claims, and estimate the value of claims, as appropriate," leaving the impression that the Court can do all of these things in a consolidated estimation proceeding in which individual PD Claimants have not even been joined by the Debtors, it is no more than wishful thinking on the part of the Debtors. *See Debtors' Brief*, p.8.

[5]     The Court recognized the frailty of the Debtors' "Constructive Notice" proposal when it was first suggested at the January 21, 2005 omnibus hearing:

MR. BERNICK: *** Constructive notice doesn't have to be resolved on a case by case basis.

THE COURT: But these are the gateway issues we were--gatekeeping issues that we were talking about earlier. I think we can deal with those in the other--in a different context, in separate proceedings, as you file the objections--each gateway objection.

Ironically, the law of the three states curiously chosen by the Debtors as the first group of jurisdictions in respect of which the Court is being asked to make "Constructive Notice" findings---California, Louisiana, and New York---illustrates precisely why it is impossible to make any "Constructive Notice" findings whatsoever (other than on a claim by claim, building by building basis).[6]   For example, as shown below, California law--- the law which according to the Debtors themselves is applicable to 1500 PD Claims[7]--- like the law of the vast majority of other states to have addressed the issue, provides that a tort claim based on asbestos property damage cannot even be brought until there has been "contamination" of the particular building. Thus, the relevant inquiry for statute of limitations purposes under California law is when a particular PD Claimant knew or should have known that its particular building was contaminated by asbestos. Even actual knowledge by a PD Claimant that asbestos-containing materials ("**ACM**") had been installed in its particular building <u>and</u> that such ACM is a hazardous substance is insufficient in California, and the vast majority of other jurisdictions, to give rise to a tort claim, let alone to start the statute of limitations running on such a claim.

---

I don't know that that has, at this point, anything to do with the estimation hearing--because they will be disallowed.

*Hearing Transcript*, 198:13 to 198:19.

[6]   The inclusion of Louisiana is totally at odds with the extension of time that has been granted to Louisiana PD Claimants to respond to the Debtors' Fifteenth Omnibus Objection to PD Claims due to the havoc wreaked by Hurricane Katrina upon the communities where such PD Claimants' buildings are located. However, counsel for the Debtors has more recently advised that, at the request of counsel for Louisiana PD Claimants, for the foregoing reason, the Debtors will remove Louisiana as one of the three states it wishes to be considered as part of the "Constructive Notice" segment of Phase I of the PD Estimation. Because of its illustrative value to the arguments made herein, the PD Committee has nonetheless included references to Louisiana law.

[7]   Upon information and belief, the law firm of Speights & Runyan has voluntarily withdrawn approximately one-half of these PD Claims.

4

In sum, the Debtors' Brief flies in the face of fact and applicable law and the Debtors' "Constructive Notice" theory should play no role in the PD Estimation. The issue of constructive notice should not be part of the PD Estimation because (a) the date of constructive notice of potential hazard of asbestos is irrelevant under state law to the determination of when a cause of action accrued, (b) differences in state law preclude sweeping generalized determinations, (c) state law requires individual determinations in respect of statutes of limitations, and (d) the Debtors' "Constructive Notice" proposal would undermine the due process rights of PD Claimants.

I.     **There is no substantive or procedural basis for the Debtors' attempt to have this Court declare thousands of PD Claims time-barred on a global basis as part of the PD Estimation.**

At the beginning of this bankruptcy case, even the Debtors agreed that "estimation sets a fixed outer limit on the amount to be provided for contingent tort claims." *Debtors' Informational Brief*, p. 66. Said another way, by the PD Estimation, the Court ought to be estimating the worst case scenario, from the estates' perspective, for the <u>allowable</u> aggregate amount of PD Claims. Such an undertaking is entirely consistent with the Court's oft repeated view that the purpose of the PD Estimation (as well as the estimation of asbestos personal injury claims) is to determine whether any plan of reorganization is feasible. However, the Debtors' proposal for the determination of "Constructive Notice" altogether fails to advance this objective. According to the Debtors, "some individual claimants may be afforded, as necessary, an opportunity . . . to show cause why the Phase I ruling does not apply to the specific circumstances underlying their claims." *Debtors' Brief*, p. 16. Thus, rather than estimate the outer-limit of the aggregate value of PD Claims, in reality, the Debtors seek to use their "Constructive Notice" time-bar defense

on a global basis to fix the amount of thousands of PD Claims at zero and then leave it to the PD Claims resolution process for determinations to be made of whether in fact each such PD Claim should be deemed time-barred and thus, disallowed or expunged. Of course, if the Court were to follow the Debtors' ill-conceived script and value all PD Claims which might be time-barred at zero, and then later conclude any of such Claims were not time-barred based on specific showings made in respect of those Claims, there will not be sufficient funds available to pay all PD Claims in full as the Debtors propose under their pending plan of reorganization (the "**Plan**").[8]

It should not be lost on the Court that the Debtors' goal in the PD Estimation is contrary to the Court's as the Debtors clearly seek to minimize the amount by which they must fund the payment of PD Claims under the Plan, rather than to determine the outside value of PD Claims. After all, under the Plan, any funds liberated from the payment of PD Claims by the Debtors are earmarked for equity holders.[9]

Indeed, the starting point for the PD Estimation (and the estimation of personal injury claims) is the Debtors' ill-conceived Plan that posits all holders of Asbestos Claims (as defined in the Plan) will be unimpaired, and thus, not entitled to vote on the Plan. Under the terms of the Plan, the Debtors argue that holders of Asbestos Claims will not

---

[8]     If such an insufficiency were to occur in the context of a plan of reorganization that otherwise purports to pay all creditors in full, PD Claimants would incur a "taking." PD Claimants are not divested of their constitutional due process rights simply because the Debtors made the decision to file for bankruptcy or by the fact that the Bankruptcy Code provides precious few guidelines on the estimation of claims. *See e.g. In re Combustion Eng'g, Inc.*, 391 F.3d 190, 245 n. 64 (3d Cir. 2004)(due process requirements extend to bankruptcy proceedings); *In re Amoroso*, 123 Fed.Appx. 43, 49-50 (3d. Cir. 2004)(analyzing due process requirements in a bankruptcy proceeding); *Jones v. Chemetron Corp.*, 212 F.3d 199, 209 (3d. Cir. 2000)(applying due process considerations to bankruptcy proceeding); *Bittner v. Borne Chemical Company, Inc.*, 691 F.2d 134, 135 (3d. Cir. 1982).

[9]     It should also not be forgotten that the Debtors' "Constructive Notice" proposal is at odds with the Debtors' insistence that PD Claimants be required to file separate proofs of claim for each of their affected buildings.

6

be impaired under section 1124(a)(1) so long as the aggregate estimated value of all such Asbestos Claims does not exceed $1.483 billion. The PD Committee (and others) objected on numerous grounds to the notion that holders of PD Claims are not impaired under the Plan, including that section 524(g) does not permit the Debtors to cap the liability to holders of PD Claims through the PD Estimation. In that setting, the Court ruled that it would conduct an estimation of the aggregate amount of Asbestos Claims in order to, among other things, first determine if there was a clear "economic" impairment of Asbestos Claims under the Plan, before deciding whether there was any other impairment under section 1124(a)(1) of the Bankruptcy Code which would entitle holders of Asbestos Claims to vote on the Plan.[10]

The Debtors' attempt to "zero value" thousands of PD Claims for purposes of the PD Estimation through their implausible "Constructive Notice" theory, but to then allow---post hoc---specific PD Claims during the claims objection process based upon a showing by those PD Claimants why their PD Claims are not time-barred, will necessarily result in PD Claimants being impaired under section 1124(a)(1). If a single PD Claim is allowed during the claims objection process that was "zero-valued" for

---

[10]     During the January 21, 2005 omnibus hearing at which the objections to the Debtors' disclosure statement were heard, the Court stated: "I think the best argument you have is the one you've already raised, which is that, at this point in time, we don't know what those claims, as allowed, will be paid 100 cents on the dollar, and if they're not, I think it's impaired." *Hearing Transcript*, p.66:20-24. The Court went on to state:

> Yes, but look at it the other way. It [the estimation] can, in fact, determine whether or not you won't be paid 100 cents on a dollar, and if that's what the conclusion is, then you vote.
>
> So, it's still worthwhile going through that process, because if there is sufficient evidence to show what the aggregate claims are, and the cap isn't big enough to cover those aggregate claims, than [sic] either the plan has to be amended to make sure that it is enough to cover those aggregate claims, or everybody votes.

*Hearing Transcript, January 21, 2005*, pp. 68:23 – 69:7.

purposes of the PD Estimation as a result of the Debtors' "Constructive Notice" challenge, then PD Claims will be impaired as a class under section 1124(a)(1) as there will not be sufficient funds available to pay all PD Claims in full, and the entire class will be entitled to vote. Ironically, the Debtors will have wasted substantial estate resources proving the very point that the PD Committee made in its initial objection to the disclosure statement accompanying the Plan---the Plan is simply not confirmable under 1129 of the Bankruptcy Code.

Nor does bankruptcy change the fact that PD Claimants are entitled to have applicable state substantive law---in this case, state substantive law which requires a case-by-case statute of limitations factual inquiry---applied to their individual claims. *See Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 161 (1946)("What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed, is a question which, in the absence of overruling federal law, is to be determined by reference to state law."); *Grogan v. Garner*, 498 U.S. 279, 283 (1991)("The validity of a creditor's claim is determined by rules of state law."); *Raleigh v. Illinois Dept. of Rev.*, 530 U.S. 15, 20 (2000)("The 'basic federal rule' in bankruptcy is that state law governs the substance of claims.").

None of the cases cited by the Debtors even address, let alone support, a "Constructive Notice" estimation process such as the one they have concocted. For instance, *Bittner* involved the estimation of just one claim for tortious interference under the law of one state, and the stockholders who had filed the claim were actual participants in the estimation and could defend the merits of the claim. 691 F.2d at 136-37. Similarly, *Kool, Mann, Coffee & Co. v. Coffey* involved the proposed estimation of one claim, and a

bankruptcy court's decision to simply adjudicate and value that one claim (with the claimant's involvement, of course) in lieu of estimation. 300 F.3d 340, 357 (3d Cir. 2002).

The Debtors' resort to Federal Rule of Bankruptcy Procedure 7042, which incorporates Rule 42 of the Federal Rules of Civil Procedure, is also misplaced, especially since outside of bankruptcy the Debtors argued strenuously that statute of limitations issues are by their very nature not amenable to "common" determination but rather, are fact specific issues which must be decided on an individual basis. Indeed, we are unaware of any litigation involving the Debtors, or any other asbestos manufacturer for that matter, in which group determinations of a statute of limitation affirmative defense were permitted. In *Kirbyville Independent School District, et al. v. Asbestospray Corp, et al.*, Civil Action No. 1:94CV412 (U.S.D.C. E.D. Texas, Beaumont Div.), Grace argued:

> Issues of timing that are relevant to statutes of limitations and repose defenses are also individual in character and incapable of being decided on a class-wide basis. The date of the installation of the asbestos will differ from plaintiff to plaintiff and even from building to building. Thus, the availability of the statute of repose as a defense to plaintiffs' claims will have to be decided on an individual basis. With regard to the statute of limitations, some of the individual class members may be protected by Section 16.061 of the Texas Civil Practice and Remedies Code, which provides that the claims of certain public entities will not be barred by statutes of limitations, while others cannot rely on Section 16.061. Thus, the applicability of the statutes of limitations raises individual issues of both fact and law.

*Defendant W.R. Grace & Co.-Conn.'s Opposition to Plaintiff's Motion for Class Certification*, at 35 (emphasis added).[11]

---

[11]   Copy attached as Exhibit "A".

9

The cases the Debtors cite to as supportive of the proposition that Rule 42 provides a basis by which the Court can globally consider as part of the estimation process whether thousands of different, factually-unrelated PD Claims are time-barred do not even touch upon the subject. Indeed, not only does the *In re Dow Corning Corp,* 211 B.R. 545 (Bankr. E.D. Mich. 1997), decision not involve any statute of limitations issue, it also does not involve an estimation proceeding. Rather, only after specifically declining to estimate claims in lieu of liquidation, did that bankruptcy court discuss the appropriateness of a consolidated trial of a common issue (whether silicone gel is non-toxic) for purposes of liquidating the claims. *Id.* at 582.[12]

More importantly perhaps, although the Debtors point to Bankruptcy Rule 7042 as support for "Constructive Notice" being included in the PD Estimation, that Rule concerns the consolidation of separately pending "actions" involving a common question of law or fact. Here, however, there is but one action---the PD Estimation. Moreover, the Debtors have joined but one party to the PD Estimation---the PD Committee and not individual PD Claimants. Thus, the only conceivable significance of Bankruptcy Rule

---

[12]     In *Dow Corning,* a common issue trial of the "hazard" associated with silicone gel implants was authorized due to the fact that there had not been any pre-bankruptcy determinations of that issue in the tort system. 211 B.R. at 582-83. That, of course, is hardly the case in respect of Grace ACM. Throughout the Debtors' twenty year history of asbestos property damage litigation, they routinely raised and lost the contention that their asbestos-containing products were not hazardous. Rulings and verdicts were repeatedly rendered against the Debtors on that very point in state and federal courts at both the trial and appellate levels. *See, e.g., Bellsouth Telecomm., Inc. v. W.R. Grace & Co.,* 77 F.3d 603, 605 (2d Cir. 1996)("Asbestos containing material ('ACM') such as Monokote poses a health threat if and when it becomes 'friable.'"); *T.H.S. Northstar Assocs. v. W.R. Grace & Co.,* 66 F.3d 173 (8th Cir. 1995)(upholding a jury verdict finding contamination, but remanding for recalculation of damages); *City of Greenville v. W.R. Grace & Co.,* 827 F.2d 975, 979 (4th Cir. 1987)(upholding jury verdict and concluding "the jury would not have had to find a great degree of risk resulting from the asbestos to conclude that the Monokote was unreasonably dangerous."); *Town of Hooksett School Dist. v. W.R. Grace & Co.,* 617 F. Supp. 126, 131 (D. N.H. 1984)(finding "where a defect in Defendant's product—i.e. the asbestos—creates a cognizable safety hazard, the resulting injury to property is as actionable in strict liability and negligence as personal injury from the defect would be."); *Clayton Ctr. Assocs. v. W.R. Grace & Co.,* 861 S.W.2d 686, 689 (Mo. Ct. App. 1993)(upholding compensatory damage award and confirming that" a jury could reasonably conclude that Mono-Kote was unreasonably dangerous."); *Northridge Co. v. W.R. Grace & Co.,* 556

7042 might be in respect of the consolidation of individual PD Claims determinations (as opposed to the PD Estimation) that engender common questions of law or fact; having said that, as shown below, the issue of "Constructive Notice" cannot be determined on a consolidated basis even in the context of the determination of individual PD Claims.

Thus, it should be abundantly clear to this Court that there is absolutely no support for the Debtors' proposed "Constructive Notice" estimation procedure.

**II.     Under California law—and under the law of most other jurisdictions—a statute of limitation determination requires an individualized factual analysis of (a) when *contamination* of each PD Claimant's building occurred, and (b) when each PD Claimant should have known of the *contamination of its particular building*.**

Even with respect to their jurisdictions of choice—California, Louisiana, and New York—the Debtors spend very little time actually discussing the applicable state law. Rather than give any kind of detailed analysis, the Debtors simply state generally "under the laws of each state [California, Louisiana, and New York], property owners were on constructive notice—*i.e.,* they *should* have known from publicly available information— that asbestos in buildings may raise potential health risks that must be investigated and handled appropriately." *Debtors' Brief*, p. 15. Firstly, the Debtors' position is hopelessly inconsistent with their hortatory claim that their ACM was not harmful in the first place. As observed by the Eighth Circuit Court of Appeals in *MDU Resources Group v. W.R. Grace & Co.*, 14 F.3d 1274, 1279 n. 9 (8th Cir. 1994):

> Grace argued at trial not only that the statute of limitations had run, but also that the plaintiff had suffered no injury from the asbestos in Monokote. The arguments are inconsistent: if [the plaintiff] has suffered no injury from the Monokote, then it has no cause of action –until an injury is suffered, the statute of limitations cannot begin to run.

---

N.W.2d 345, 350 (Wis. Ct. App. 1996)(concluding there was "overwhelming" evidence for the jury to find Monokote hazardous).

Secondly, the Debtors fail to offer any further explanation of why information

that was simply "publicly available" about the health risks posed by asbestos (health risks

which, as aforesaid, the Debtors continue to deny to this day) is conclusive evidence of,

or even relevant to, a statute of limitations defense.  This lack of analysis is not mere

happenstance.  Consideration of the specific law of any state reveals why the Debtors'

proposed "Constructive Notice" estimation procedure is completely impermissible and

the opinion of their "constructive notice expert" is entirely irrelevant.[13]

For instance, if we consider California law, as that is purportedly the state where

the most PD Claims emanate from, California---like the vast majority of other

jurisdictions to have addressed the issue[14]--- is a "contamination" state.  That is, courts

interpreting California law have quite clearly stated:

---

[13]         By separate motion, the PD Committee preserves it right to move to strike Mr. Morse as a
"Constructive Notice" expert and/or to strike Mr. Morse's testimony.

[14]         *See, e.g., Bellsouth Telecomm.,* 77 F.3d at 611 (under Connecticut law, claim for asbestos
abatement accrues when "a plaintiff discovers or should discover, actionable harm caused by an asbestos-
containing product. Actual harm, in the context of an abatement claim, occurs when the plaintiff has
knowledge, or should have knowledge, of (i) actual contamination and (ii) the causal connection between
the defendant's product and the contamination.") *T.H.S. Northstar Assocs.,* 66 F.3d at 176 (under Minnesota
law, "the distinction between the mere presence of asbestos-containing materials in a building and an actual
release and contamination is critical. Indeed, no cause of action exists until there has been substantial
release."); *MDU Resources.,* 14 F.3d at 1279 (under North Dakota law no tort cause of action for asbestos
property damage arises before plaintiff's building contaminated with asbestos); *Adams-Arapahoe School
Dist. No 28-J v. GAF Corp.,* 959 F.2d 868, 1329 (10th Cir. 1992)(under Colorado law, "only asbestos
contamination constitutes a physical injury compensable under tort law.")  *City of Greenville,* 827 F.2d at
978(Under South Carolina law, contamination of building with asbestos fibers, which endanger the lives
and health of building occupants, gives rise to actionable tort claim); *NCR Corporation v. U.S. Mineral
Prods. Co.,* 649 N.E.2d 175, 178 (Oh. 1995)("We hold that in Ohio . . . a cause of action for asbestos
removal accrues when the plaintiff discovers or in the exercise of reasonable diligence should have
discovered that the presence of asbestos constitutes a hazard requiring abatement. 'Hazard requiring
abatement' means that the premises are contaminated by asbestos to the extent that a potential health hazard
to the occupants exists."); *Farm Credit Bank of Louisville v. U. S. Mineral Prods Co.,* 864 F. Supp. 643,
650 (W.D. Ky. 1994)("contamination of the environment is required to accrue" an action for asbestos
property damage); *Clayton Center Assocs.,* 861 S.W.2d at 690 ("In Missouri, a cause of action in tort for
asbestos contamination accrues upon 'release of toxic asbestos fibers into the environment . . . together with
the ability to ascertain a substantial and unreasonable risk of harm from the release of the toxic asbestos
fibers.'")(citing *Kansas City v. W.R. Grace & Co.,* 778 S.W.2d 264, 268 (Mo. App. W.D. 1989) and *School
Dist. of Independence v. U.S. Gypsum Co.,* 750 S.W.2d 442, 457 (Mo. App. W.D. 1988)); *State Farm
Mutual Auto. Ins. Co. v. W.R. Grace & Co.,* 834 F. Supp. 1046, 1049 (C.D. Ill. 1992)("statute of limitations

> we hold—consistent with the vast majority of other jurisdictions
> that have considered this issue—that the owner of a building
> containing asbestos cannot state a cause of action in tort against an
> asbestos manufacturer until contamination occurs.   Thus, the
> statute of limitations in an asbestos-in-building case does not
> commence until there has been damage in the form of
> contamination.

*San Francisco Unified School District v. W.R. Grace & Co.*, 37 Cal. App.4[th] 1318, 1323;
44 Cal.Rptr.2d 305, 307 (Cal. Ct. App. 4th 1995).[15]

Thus, under California law and the law of most other jurisdictions, <u>even testing</u>
<u>and investigation by a PD Claimant of asbestos containing materials in its own particular</u>
<u>building is insufficient to begin the running of the statute of limitations</u>.   *See San*
*Francisco Unified*, 37 Cal. App. 4th at 1331; 44 Cal. Rptr.2d at 312-313; *see also*
*California Sansome*, 55 F.3d at 1408 (rejecting the argument that plaintiff's allegations
that Grace's products "release asbestos spontaneously and in response to routine
maintenance activities" were sufficient to support an inference that the particular
buildings had actually been contaminated so as to begin running of statute of limitations).

Rather, under the discovery rule applicable in California and also in the vast
majority of other jurisdictions, the relevant inquiry for statute of limitations purposes is
when a plaintiff knew *(i.e.,* had actual knowledge) or should have known *(i.e,* had
constructive knowledge) that its particular <u>building was actually contaminated</u> with
asbestos. *See San Francisco Unified*, 37 Cal. App. 4th at 1336; 44 Cal. Rptr. 2d at 315.

---

did not begin to run until State Farm had sufficient knowledge of asbestos *contamination*. Therefore the
relevant factual inquiry for this Court is not whether [the plaintiff] had knowledge that asbestos was being
used, but whether [the plaintiff] had knowledge that asbestos was being released from the fireproofing
material and that it presented a hazard.")(emphasis in original); *Town of Hooksett.*, 617 F. Supp. at 131
(contamination constitutes the physical injury which gives rise to tort claim for asbestos property damage).

[15]    *See also California Sansome Co. v. U.S. Gypsum and W.R. Grace & Co.*, 55 F.3d 1402, 1406 n. 5
(9th Cir. 1995)("contamination—the release of asbestos fibers into the air of [plaintiff's] building sufficient
to constitute elevated levels—is the 'harm' that triggers the running of the statute of limitations.").

13

Thus, in *San Francisco Unified*, the appellate court reversed the trial court's decision in favor of Grace on its statute of limitations affirmative defense because the trial court had "erroneously focused on when [the plaintiff] was put on notice that its schools contained potentially dangerous asbestos." *Id.* The trial court was instructed that both (i) "the dates of actual contamination of each school" were "issues of fact" that must be resolved on remand, and (ii) the ultimate inquiry on remand for purposes of Grace's statute of limitations affirmative defense was "when [the plaintiff] should have reasonably discovered that each school's contamination [had] occurred." *Id.* (emphasis added).

Equally powerful, the Ninth Circuit Court of Appeals in *California Sansome*, in reversing the entry of judgment in favor of Grace and U.S. Gypsum on statute of limitations grounds, also explained that for purposes of the discovery rule (*i.e.,* for purposes of determining when a particular plaintiff *should have* known its building had been contaminated by asbestos):

> Whether [the plaintiff] was on inquiry notice of its injury [asbestos building contamination] is determined from the information its officers received from their experts and other sources prior to April 1986. The communications between [the plaintiff] and its experts are therefore clearly relevant. Yet the sources of information available to the experts but not received or read by [the plaintiff's] officers are immaterial

*California Sansome*, 55 F.3d at 1409 n.12 (emphasis added).

Shockingly, the Debtors' Brief simply fails to cite *San Francisco Unified* and *California Sansome*, the two most recent decisions interpreting California law, both of which are directly on point, and unequivocally establish that the Debtors' attempt to bar PD Claims through their "Constructive Notice" process is utter nonsense.

In fact, upon closer scrutiny, the sole case interpreting California law that the Debtors did cite to this Court, *City of San Diego v. United States Gypsum Company*, also establishes that the relevant statute of limitations inquiry in California is when the plaintiff knew or should have known that its particular building was contaminated by asbestos. Indeed, the primary reason[16] that the defendants' statute of limitations summary

---

[16]     In ruling that the plaintiff's claim was time-barred, the *City of San Diego* court considered numerous and extensive facts specific to the particular plaintiff:

> Before May 25, 1985, [the plaintiff] conducted an extensive investigation and evaluation of asbestos-containing materials in many [of its] buildings. [Its] safety director, Rick Cumming IIII, directed this investigation. Dr. Kenneth S. Cohen, a certified industrial hygienist, toxicologist and safety engineering consultant, assisted Cumming in an evaluation of [plaintiff's] buildings, including bulk sampling and air testing. Between 1978-1985, two professional testing labs conducted 500 air quality tests and analyses in [plaintiff's] buildings.
>
> Also before May 25, 2005, Dr. Cohen trained approximately 200 [of plaintiff's] maintenance personnel concerning the health dangers of disturbing in-place asbestos and held asbestos training sessions for other [of plaintiff's] custodial employees. In 1983, [the plaintiff] prepared an eight-minute videotape entitled "Understanding Asbestos," that was shown to many [of plaintiff's] employees who worked in [plaintiffs] buildings constructed with asbestos-containing building materials. [The plaintiff] also printed 500 posters stating "Caution. Asbestos Dust Hazard. Certain Construction Materials within this building have been identified as containing asbestos fibers. Avoid Cresting Dust. Breathing Asbestos Fibers May Cause Serious Bodily Harm." These signs were posting [in the plaintiff's] buildings.
>
> [The plaintiff] also formed an "Asbestos Containment Team," known as "The Tiger Team." Team members received special training in dealing with asbestos, wore protective clothing, including respirators, received health screening, including chest x-rays and pulmonary function tests, and were paid a premium hourly rate in their duties.
>
> Before May 25, 1985, there were instances of degrading or deterioration of asbestos-containing building materials in [the plaintiff's] buildings. In 1983, for example, the San Diego Police Headquarters building contained an asbestos boiler blanket that was "in very poor condition and . . . ripped." In 1984, asbestos insulation covering piping in the men's restroom at Brown Field became damaged. . . . .
>
> In 1982, a ceiling at the Mission Beach Plunge collapsed when a transient living in the ceiling crawl space stepped through the ceiling. The ceiling collapse apparently produced "high" asbestos fibers counts similar to "a controlled rip-out of insulation in the hold of a Naval

15

judgment motion was granted in *City of San Diego* was because the plaintiff itself had

alleged in its complaint that asbestos dust and fibers had "contaminated" its buildings for

many years prior to its filing suit, not because of any general information about asbestos

in the marketplace. *Id.* at 583.   Moreover, the *City of San Diego* court discussed

extensively the numerous facts particular to the plaintiff---not just general information

available to the public---which should have put the plaintiff on notice of the

contamination. *Id.* at 579-81 (see footnote 16 for direct quote discussing these facts at

length).

As the Ninth Circuit Court of Appeals subsequently observed in *California*

*Sansome*:

> [T]he court [in *City of San Diego*] merely held that the plaintiff had
> admitted in its complaint that appreciable harm (contamination)
> had occurred in its buildings more than three years before it

---

Vessel," according to Dr. Cohen.  In 1984, [plaintiff's] employee wrote
city officials and informed them that the lube area of [plaintiff's]
service station in which he worked had "[asbestos] coming off of
overhead pipes and fall[ing] all over the place."

In 1980, safety director Cumming wrote the deputy city manager
concerning asbestos exposure to 400 to 500 [of plaintiff's] employees.
He stated: "These exposures are encountered when asbestos-cement
water pipe is cut; when making brake and clutch repairs; when cutting
dry wall impregnated with asbestos; and when doing
maintenance/repair work in crawl spaces, on ceiling tiles or on pipe
insulation impregnated with asbestos."  In 1983, Cumming noted
"'there is *no safe level* of exposure [to asbestos.]"

On January 31, 1985, [the plaintiff] filed a claim for $50 million
damages in the United States Bankruptcy Court proceeding concerning
the bankruptcy of Johns-Manville Corporation [an asbestos
manufacturer not a defendant in *City of San Diego*] and its related
entities.  [The plaintiff] claimed the $50 million damages were
"believed to be the cost of repair of the [plaintiff's] buildings and
damages sustained by employees, past, present and future," due to the
presence of asbestos-containing building materials in [plaintiff]-owned
and [plaintiff]-leased buildings. [The plaintiff] alleged it was
"presently" performing encapsulation, enclosure and removal of friable
asbestos-containing materials and was "presently . . . investigat[ing]"
future encapsulation, enclosure and removal of such material.

*City of San Diego*,  30 Cal.App.4[th] at 579-81.

> brought suit. In such a case, in which the complaint clearly alleges and admits injury outside the limitations period . . . a plaintiff's only remaining recourse would be to rely on the discovery-rule exception.

*California Sansome*, 55 F.3d at 1407.

Grace was named as a defendant in *San Francisco Unified*, *California Sansome*, and *City of San Diego*. Grace knows full well that in California and the vast majority of jurisdictions the issue of constructive notice is not generically determined based on purported information generally available to a hypothetical PD Claimant. Moreover, as discussed below in Section V, even in those jurisdictions which are not "contamination" states, a statute of limitations inquiry is an individualized fact-specific analysis.

**III.    The *Prudential* decision only serves to underscore the importance of considering the individualized facts of each case and the law of the applicable jurisdiction when determining a statute of limitations affirmative defense.**

The Debtors' Brief, as well as prior arguments by the Debtors before the Court, repeatedly refer to the Third Circuit's opinion in *Prudential Ins. Co. of America v. United States Gypsum Co.*, 359 F.3d 226 (3d Cir. 2004). The Debtors' reliance on *Prudential* is misplaced for several reasons.    First, *Prudential* neither involved an estimation proceeding, nor the law of California, Louisiana or New York. More importantly, *Prudential* actually serves to highlight both (a) the fact-specific nature of a statute of limitations inquiry, and (b) the importance to that inquiry of the contours of the particular law being applied.

Specifically, although the Debtors failed to mention this in their Brief, *Prudential* concerned Federal RICO law and whether a RICO claim was time-barred, not whether a state law tort claim was time-barred. *Id.* at 233.    Of special importance here, in *Prudential*, Grace's motion for summary judgment on the grounds that the plaintiff's state

law claims for strict liability, negligence, fraud, misrepresentation, fraudulent concealment, unfair and deceptive trade practices, civil conspiracy, restitution, and indemnification (the claims traditionally asserted by PD Claimants) were time-barred had been previously denied and that ruling was not revisited by the Third Circuit. *Id.* at 231.

In addition to emphasizing the numerous facts peculiar to Prudential which supported the lower court's ruling that Prudential's RICO claim---and only its RICO claim---was time-barred (*see, id.* at 230-235), the Third Circuit made clear that its holding was only applicable to RICO claims, not to the more traditional state law tort claims brought by Prudential (and more often brought by PD Claimants generally). Specifically, in distinguishing the cases cited by Prudential, the Third Circuit explained, *inter alia,* that the plaintiffs in those cases had "pursued their redress through state-law claims that require different accrual analyses than used in RICO cases."[17] *Id.* at 237 (emphasis added). Thus, for example, in distinguishing *MDU Resources Group v. W.R. Grace and Co.*, 14 F.3d 1274 (8th Cir. 1994), the Third Circuit explained that the plaintiff in *MDU* had asserted state-law claims of negligence, strict liability, failure to warn, and breach of warranty, and that the statute of limitations with respect to these claims--unlike the analysis applicable to a RICO claim--"focused on actual contamination as the point when injury occurs." 359 F.3d at 237.

The Third Circuit went on to conclude that "[t]he different legal principles governing the [state law] claims and the limited scope of injury involved in these cases

---

[17]     We are astonished by the Debtors' assertion, in the context of its discussion of *Prudential*, that "individual questions of whether a particular claimant has actual knowledge of an asbestos related injury are not relevant to the constructive notice inquiry and will not defeat the applicability of a Phase I constructive notice ruling." *Debtors' Brief*, p.18. The Debtors' assertion is blatantly wrong and, it would seem, intentionally misleading.

18

requires different considerations for calculating statute of limitations periods that are not applicable to Prudential's broad RICO claims here." *Id.* at 237. (emphasis added).

In short, the Third Circuit's decision in *Prudential* is actually further authority that militates against the Debtors' proposed "Constructive Notice" estimation procedure. The decision in *Prudential* makes it abundantly clear that (a) the only facts which are relevant to a constructive notice defense are those facts pertinent to the knowledge of or which can be imputed to the particular plaintiff in the action, and (b) the statute of limitations analysis varies dramatically depending on the nature of the claim actually being asserted.

## IV. The Ninth Circuit Court of Appeals---interpreting California law---has rejected the Debtors' attempt to shift the burden of disproving their statute of limitations defense to PD Claimants.

There is absolutely no support for the Debtors' proposal that the burden of disproving their statute of limitations affirmative defense should somehow be placed on PD Claimants. In fact, the Ninth Circuit Court of Appeals---applying California law which the Debtors stress is the law that predominantly applies to the resolution of PD Claims---has specifically rejected the Debtors' pre-bankruptcy attempt to similarly shift the burden to PD Claimants in respect of the Debtors' statute of limitations affirmative defense.

In *California Sansome*, the Ninth Circuit reversed the trial court's entry of judgment in favor of Grace and U. S. Gypsum on statute of limitations grounds. 55 F.3d at 1408. The Ninth Circuit emphasized that the trial court had committed reversible error by placing on the plaintiff the "burden of proving that contamination [of the plaintiff's building] did not occur prior to April 21, 1986 [the last day on which the complaint

would have been timely under the applicable statute of limitations]." *Id.* at 1405. The

Ninth Circuit, in clear and unequivocal language, wrote:

> We must respectfully disagree with the court's ruling. A
> defendant raising the statute of limitations as an affirmative
> defense has the burden of proving the action is time barred.
> Under California law, the limitations period commences
> "upon the occurrence of the last element essential to the
> cause of action." A tort cause of action does not accrue
> until there is wrongdoing and "actual and appreciable
> harm." Thus, the defendant has the burden of
> demonstrating the complained of wrongdoing *and* harm
> occurred outside the limitations period.
>
> . . .
>
> [T]here is no requirement that a plaintiff specifically allege
> when the cause of action accrued—that is the defendant's
> responsibility if it wishes to raise a limitations defense.
>
> . . .
>
> Had the court properly allocated the burden of proof [as to
> when contamination of the plaintiff's building occurred],
> we find the evidence presented would have raised a fact
> question. . . . For example, U.S. Gypsum offered evidence
> of previous, similar building renovation and maintenance
> activities, and testimony regarding asbestos debris from
> which a jury could have inferred that the contamination
> alleged in [plaintiff's] complaint occurred earlier than this
> date. On the other hand, [the plaintiff] produced sampling
> data showing no contamination and expert testimony
> sufficient to create the contrary inference that the injury did
> not occur until the summer of 1986. The court's ruling
> therefore must be reversed.

*California Sansome*, 55 F.3d at 1406-08. (emphasis added).

The law of other jurisdictions, including New York and Louisiana, is likewise

clear that a defendant, not a plaintiff, bears the burden of proving a statute of limitations

affirmative defense. *See e.g. Castana v. American Tobacco Co.*, 961 F. Supp. 953, 957

(E.D. La. 1997)(under Louisiana law, "[p]rescription is an affirmative defense and

defendants bear the burden of proving prescription at trial."); *Cuccioli v. Jekyll & Hyde*

*Neue Metropol Bremen Theater Producktion GMBH & Co.*, 150 F.Supp.2d 566, 572

(S.D.N.Y. 2001)(under New York law, "statute of limitations is an affirmative defense on which the defendant bears the burden of proof at trial.").

Once again, therefore, it is readily apparent that by their proposed "Constructive Notice" estimation procedure, the Debtors would have this Court altogether contravene ample precedent in the tort system which, in this instance, precludes shifting the burden of production to PD Claimants.

V.    **Applicable state law makes clear that (a) an individualized fact inquiry is required in all states to determine a statute of limitations affirmative defense, and (b) a statute of limitations analysis under the law of one state cannot be "easily expanded," as suggested by the Debtors, to apply to PD Claims from other states.**

Without exception, the law of each state requires that a statute of limitations defense be determined based on the particular facts underlying each PD Claim. Moreover, because of the numerous variations among state laws, a statute of limitations analysis under the laws of one state cannot be "easily expanded," as suggested by the Debtors, to apply to PD Claims arising under the laws of other states.[18]

For instance, as we mentioned above, California and the overwhelming majority of other jurisdictions that have addressed the issue, have determined that "contamination"

---

[18]    An estimation proceeding is not the appropriate venue to carve new law or apply relevant law in an unorthodox manner. As Judge Conti stated during a hearing concerning the ongoing estimation of debtor United States Gypsum's asbestos personal injury claims:

> THE COURT: [T]he best that I can do, because I'm not making an individual decision on a single case, the best that I can do is try to evaluate the quality of [the theories at issue], looking at the various jurisdictions, and come up with an estimation of how I think it might play out.... What you need to do – I'm not making declaratory judgments. I'm not going to make new law in this case; that is, going to say, oh, gee, Judge Conti has now decided for the rest of the world that this defense is absolutely right....Everybody has to have a right to a hearing on that in their particular case.

*Hearing Transcript, June 13, 2005*, pp. 62-63.

21

is required before an actionable asbestos property damage tort injury even exists.[19]
Precisely when contamination occurred in a building is a particularized fact inquiry.
Moreover, just what constitutes "contamination" can be different from jurisdiction to
jurisdiction.[20]

In Louisiana, an actionable asbestos tort injury does not arise until a plaintiff: (1)
"becomes aware that asbestos is present in at least some of its buildings;" (2) that the
asbestos "pose[s] a health risk to employees;" and (3) "that it must be removed at
considerable expense." *Orleans Parish School Board v. Asbestos Corp., Ltd.,* 114 F.3d
66, 68 (5th Cir. 1997). Moreover, in 1985, Louisiana enacted a statute specifically
suspending the prescription of actions involving asbestos abatement which were not yet
time-barred. This statute provides, in pertinent part, "[n]otwithstanding any other
provisions of law to the contrary, any time limitation or prescription period which may be
applicable to any action to recover for asbestos abatement work shall not apply or expire
until five years after the date on which the party seeking to recover has completed the
abatement work or discovered the identity of the manufacturer of the materials which
require abatement, whichever is later." La. R.S. 9:5644(B)(1985). Frankly, it is difficult
to envision a more individualized factual analysis which has so little to do with the

---

[19]     See, *supra*, note 8.

[20]     *See, e.g., California Sansome,* 55 F.3d at 1406 n. 5 (referring to "contamination" as "the release of
asbestos fibers into the air of [plaintiff's] building sufficient to constitute elevated levels ."); *Kansas City,*
778 S.W.2d at 268 (requiring the "release of toxic fibers into the environment . . . together with the ability
to ascertain a substantial and unreasonable risk of harm from the release of toxic asbestos fibers."); *MDU,*
14 F.3d at 1278-1279 (requiring "contamination" but not defining the term); *NCR,* 649 N.E.2d at 178
(explaining that statute of limitations does not begin to run until the plaintiff in the exercise of reasonable
diligence should have discovered "that the presence of asbestos constitutes a hazard requiring abatement"
and defining "hazard requiring abatement" to mean that "the premises are contaminated by the asbestos to
the extent that a potential health hazard to occupants exits.").

22

Debtors' "Constructive Notice" theory, which centers solely on information about asbestos available to the general public.

Even in New York, which is one of only two states[21] in which an actionable asbestos property damage tort injury exists upon installation of asbestos in a particular building, an individualized fact inquiry is still required.[22] Moreover, even in New York, claims for intentional misrepresentation[23] and fraudulent concealment against the Debtors may be brought separate and apart from the negligence and strict liability claims subject to the date of installation accrual rule. *See, e.g., Angie v. Johns Manville Corp.,* 463 N.Y.S.2d 956, 958 (N.Y. App. Div 1983)("we cannot accept the dissenter's view that . . .

---

[21]    Georgia is the only other state in which the applicable statute of limitation for an asbestos property damage claim begins to run from the completion date of installation. *Smith v. Branch,* 487 S.E.2d 35, 38 (Ga.Ct. App. 1997)(discussing *Mercer University v. Nat'l Gypsum Co.,* 368 S.E.2d 732 (Ga. 1988)).

[22]    For instance, in *MRI Broadway Rental, Inc. v. United States Mineral Products Co.,* 704 N.E.2d 550 (Ct. App. N.Y. 1998), one of the other decisions championed by the Debtors, among other particularized facts, the court focused on the date construction of the particular building was completed, the fact that "the dangers inherent in asbestos-containing materials were specifically brought to [the managing agent of the building's] attention at least as early as 1970, when the New York City Department of Air Resources obtained an injunction against the spraying of asbestos insulation at another building managed by [the same agent],"that in 1983 the plaintiff had retained an environmental consultant to assess the condition of the asbestos fireproofing in the building at issue, that at about the same time tenants began expressing concern over the potential dangers associated with asbestos, that by late 1986 and continuing into early 1987 plaintiff undertook substantial asbestos abatement work on several floors of the building, in response to tenant complaints, and that the managing agent of the building retained environmental consultants to conduct air monitoring in the building. *Id.* at 551-52.

[23]    Within one month of the first asbestos property damage verdict in the country, the three largest former manufacturers of asbestos containing fireproofing (Grace, United States Gypsum Co., and National Gypsum Co.) formed the Safe Building Alliance ("SBA"). The SBA spent millions of dollars (contributed by its member companies) to reduce the members' liability by encouraging building owners to forego the removal of asbestos based upon often incorrect and misleading scientific and technical information. *See In re School Litigation,* 842 F.2d 671, 681 (3d Cir. 1987)(holding that the SBA was the alter-ego of its member companies); *In re Asbestos Schools Litigation,* 115 F.R.D. 22, 25 (E.D. Pa. 1986)(discussing content and misleading nature of SBA publication). Clearly, misrepresentations made by the Debtors, either directly or through the SBA, to PD Claimants could be used to state a separate fraud-based claim. Moreover, courts have already recognized that the fraudulent concealment of the dangers of in-place ACM by asbestos manufacturers should be considered and could toll the statute of limitations. *See Cheshire Med. Ctr. v. W.R. Grace & Co.,* 764 F. Supp. 213 (D.N.H. 1991)(holding that W.R. Grace's conduct constituted fraudulent concealment so that plaintiff's claims, including fraud and conspiracy, which had been filed in 1988, were timely); *City of Manchester v. National Gypsum Co.,* 637 F. Supp. 646, 653-54 (D.R.I. 1986); *Town of Hookset Sch. Dist. v. W.R. Grace & Co.,* 617 F. Supp. 126, 129 (D.N.H. 1984); *State Farm Mut. Auto. Ins. Co. v. W.R. Grace & Co.,* 834 F. Supp. 1046 (C.D. Ill. 1991).

23

the intentional fraud alleged is merely another aspect of the negligence or products liability causes of action.").

At least one jurisdiction requires knowledge of the presence of friable asbestos in a particular plaintiff's building and general knowledge of the hazards of friable asbestos in order for an actionable asbestos property damage claim to accrue.[24] Again, a very specific factual inquiry is required to determine a statute of limitations defense under this test.[25]

In fact, under any of these tests (which are purely illustrative and by no means the only tests), published information about asbestos that may have been available generally without any proof as to a particular plaintiff, is not conclusive of anything.[26]

---

[24]    *See Detroit Board of Education v. Celotex Corp.*, 493 N.W.2d 513, 519-20 (Ct. App. Mich. 1992). *But see Roseville Plaza Limited Partnership v. United States Gypsum Co.*, 31 F.3d 397, 399-400 (6th Cir. 1994)(also applying Michigan law)(discussing letter and data sheet admittedly received by the plaintiff regarding asbestos samples taken from plaintiff's building, and plaintiff's memo detailing square footage of asbestos which must be removed and cost of doing so, and stating that such "knowledge of the presence of asbestos is enough to inform an individual, through the exercise of reasonable diligence, of a 'possible cause of action' for asbestos abatement or removal.").

[25]    *Detroit Board*, 493 N.W.2d at 707 (discussing at length particular plaintiff's knowledge and investigation, survey, and subsequent analyses regarding friable asbestos in plaintiff's buildings, and the fact that plaintiff had submitted funding proposal for asbestos abatement ).

[26]    Indeed, the various tests discussed above as to what triggers an actionable asbestos property damage tort injury (including, most notably, the required showing of "contamination" adopted by the overwhelming majority of states) are by definition the very antithesis of the kind of omnibus showing advocated by the Debtors. For instance, a review of *Kansas City v. W.R. Grace & Co., et al.*, 778 S.W.2d 264 (W.D. Mo. App. 1989), *aff'd sub. nom.* 855 S.W.2d 360 (Mo. 1993)("*Kansas City*"), which is simply one of countless decisions illustrating the same point, establishes that the Debtors' omnibus "Constructive Notice" theory does not in any way comport with applicable state law. In *Kansas City*, the plaintiff sought recovery for the costs to abate asbestos-containing fireproofing placed in the Kansas City International Airport ("KCI"). *Id.* at 267. The defendants pointed to a plethora of undisputed facts regarding the plaintiff's knowledge, more than five years before the lawsuit was filed, about the dangers of asbestos and, more particularly, the asbestos installed in KCI, which convinced the trial court to grant summary judgment for the defendants on statute of limitations grounds. *Id.* at 268. The Court of Appeals reversed and, in doing so rejected, over and over again, not only the defendants' attempt to rely on public information generally available to the plaintiff, but even information which the defendants could show the plaintiff had been made aware of regarding asbestos at KCI. Most notably, the Court of Appeals wrote:

•       "[S]imply because Kansas City had notice of NESHAPS [which required that ACMs had to be removed when disturbed by renovation or demolition], its causes of action for

In addition, there are multitudinous variations of the discovery rule itself from state to state and, within a particular state, the discovery rule may vary depending on the cause of action at issue.[27]   For instance in California, "[u]nder the discovery rule, a cause

---

negligence and strict liability were not caused to accrue until asbestos fibers were released into the environment of the airport buildings and Kansas City was capable of ascertaining that there was a substantial and unreasonable risk of harm from the release of the toxic asbestos fibers." *Id.* at 269.

- "[An] OSHA report on this particular problem reflects that the concentration of asbestos fibers [at KCI] did not exceed the limits permissible under federal guidelines. This information shows that Kansas City was aware of problems with asbestos material adhering to beams to which it had been applied but, as substantiated by the OSHA report, it does not show that Kansas City had knowledge of a substantial and unreasonable risk of harm by virtue of environmental contamination." *Id.* at 269-270.

- "[T]his report [of a test conducted in 1976 confirming that the fireproofing material in KCI contained asbestos] establishes nothing other than the fact that asbestos was present which does not in itself cause accrual of Kansas City's cause of action." *Id.* at 270

- "[A report conduct by NIOSH regarding the potential exposure of employees to airborne asbestos] does not establish that Kansas City suffered environmental contamination at KCI in 1977 which contamination and the substantial and unreasonable risk of harm relating thereto were capable of ascertainment at that time." *Id.* at 270.

- "[The testimony that the manager of the Environmental Hazard Section of Kansas City's Public Health Department believed that the fireproofing posed a serious health problem for occupants of KCI by 1980] does not establish, by itself, that asbestos fibers had contaminated the environment . . . or that Kansas City was capable of ascertaining that there was a substantial and unreasonable risk of harm from asbestos contamination prior to 1981." *Id.* at 270.

Despite all the testimony and documentary evidence put forward by the defendants regarding the plaintiff's knowledge of asbestos, including knowledge of asbestos in its own building, the Court of Appeals concluded by holding that:

> The record reflects that there are genuine issues of material fact as to when asbestos fibers were released into the environment of Kansas City's airport buildings and when Kansas City was capable of ascertaining a substantial and unreasonable risk of harm from the release.

*Id.* at 271.

This case, like so many others, illustrates (i) that the only proper question in the vast majority of jurisdictions that have adopted the contamination theory, is when the plaintiff knew or should have know of contamination and health hazard in its own building, and (ii) the complete irrelevancy of a building owners' general knowledge of the hazards of asbestos or the inevitability of abatement.

---

[27]     The Debtors' "Constructive Notice" estimation proposal altogether fails to take into consideration that there are numerous different causes of action which can serve as the legal basis for a PD Claim,

of action does not accrue until the plaintiff either discovers the injury [contamination of

its building by asbestos] and its negligent cause or could have discovered the injury

[contamination of its building by asbestos] and cause through the exercise of reasonable

diligence." *San Francisco Unified*, 44 Cal. Rptr. 2d at 309.  However, elsewhere, the

level of knowledge (whether actual or constructive) or just what the defendant knew or

should have known substantively varies.[28]

Thus, to summarize, the overwhelming flaws in the Debtors' "Constructive

Notice" estimation proposal are at least two-fold: (1) every state requires individualized

---

including negligence, strict liability, products liability, conspiracy, concert of action, trespass, nuisance,
restitution, indemnification, fraud, breach of contract, breach of warranty, guarantee, contribution, and
subrogation. The Debtors' "Constructive Notice" proposal never addresses the multiplicity of causes of
action related to asbestos.

[28]    By way of examples, the discovery rules followed in other states (either as recognized by
decisional law or as codified) provide that applicable statutes of limitations begin to run when:

(1)    the plaintiff discovers, or reasonably should have discovered, the existence of all
elements essential to the cause of action *(see, e.g. Hanebuth v. Bell Helicopter Int'l* , 694 P.2d 143, 144
(Alaska 1984); *Catz v. Rubenstein*, 513 A.2d 98, 102 (Conn. 1986));

(2)    the plaintiff knows, or by the exercise of reasonable diligence should know (1) that he has
been injured; (2) the identify of the maker of the product; and (3) that the product has a causal relation to
his injury *(see e.g., Hickman v. Grover*, 358 S.E.2d 810. 813 (W.Va. 1987));

(3)    the plaintiff knew or, by the exercise of reasonable diligence, should have discovered the
causal connection between the product and the injuries suffered *(see, e.g. Martin v. Arthur*, 3 S.W.3d 684,
690 (Ark. 1999));

(4)    the plaintiff knows (or by the exercise of reasonable diligence should know) (1) the
injury, (2) its cause in fact and (3) of some evidence of wrongdoing *(see e.g. Bussineau v. President &
Directors of Georgetown College*, 518 A.2d 423, 425 (D.C. 1986));

(5)    the plaintiff discovers or should have discovered the negligent act, the damage, and the
causal connection between the former and the latter *(see e.g. Jacoby v. Kaiser Foundation Hospital*, 622
P.2d 613, 618 (Haw. App. 1981));

(6)    a person knows or should know through reasonable investigation of the injury and its
wrongful causation *(see e.g. Nolan v. Johns-Manville Asbestos*, 421 N.E.2d 864, 868-69 (Ill. 1981));

(7)    the facts constituting the claim have been discovered or, in the exercise of due diligence
should have been discovered by the injured person if: (a) the facts constituting the claim are by their nature
concealed or self-concealing; or (b) before, during, or after the act causing the injury, the defendant has
taken action which prevents the injured party from discovering the injury or its cause. *(see* Mt. Stat. § 27-2-
102).

determinations of a statute of limitations defense; and (2) the laws of the various states---both in respect of when a PD Claim is actionable and whether such a PD Claim is time-barred despite a discovery rule---do not permit this Court to "easily expand" its statute of limitations analysis under the law of one state (or even several states) to PD Claims governed by the law of another state.

## CONCLUSION

There can be no clearer demonstration of the Debtors' attempt to use its bankruptcy experience as a means of re-engineering or, worse yet, disregarding state tort law than their "Constructive Notice" proposal. By the "Constructive Notice" proposal, the Debtors attempt to accomplish precisely what they could not in underlying tort litigation. The fact that the ground rules for the estimation of mass tort claims are hardly a model of clarity does not mean that there are no rules at all. There is no question that the determination of PD Claims and thus, the estimation of PD Claims, are governed by state law. That ground rule is inviolate. In applying state law, the Court is constrained to do so literally on a state by state basis and not hypothetically based on some sort of amalgamation of various states' laws. That ground rule too is inviolate. The fact that the Debtors posit that it would be easier, faster or more efficient to cobble together a "virtual" state discovery rule is but wishful thinking, even in bankruptcy.

[continued on the next page]

WHEREFORE, the PD Committee respectfully requests that the Court enter an Order excluding consideration of the "Constructive Notice" as part of the estimation of PD Claims and granting such further and other relief as this Court deems just and proper.

Dated: October 31, 2005.

BILZIN SUMBERG BAENA
PRICE & AXELROD LLP

Scott L. Baena (admitted pro hac vice)
Jay M. Sakalo (admitted pro hac vice)
2500 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2336
(305) 374-7580

-and-

FERRY, JOSEPH & PEARCE, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, Delaware 19899
(302) 575-1555

By:  Theodore J. Tacconelli
     Theodore J. Tacconelli
     (Del. Bar No. 2678)

Co-Counsel for the Official
Committee of Asbestos Property
Damage Claimants