IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Objection Deadline: December 2, 2005 at 4:00 p.m.**
**Hearing Date: December 19, 2005 at 12:00 p.m.**

## DEBTORS' NINTH MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 1121(d) EXTENDING DEBTORS' EXCLUSIVE PERIODS IN WHICH TO FILE A CHAPTER 11 PLAN AND TO SOLICIT VOTES THEREON

The Debtors' chapter 11 cases present a complex challenge for all parties. From the very beginning, the Debtors aggressively attempted to map out a strategy for claims adjudication, common issue litigation and confirmation. While the various constituencies have been at odds for years on such strategy, the Court has now placed the parties on a clear path toward estimation and ultimately confirmation. Extending the Debtors' exclusivity is completely consistent with that process and should be ordered.

The Court has approved case management orders for the estimation of both PI and PD claims, and a PI questionnaire; the parties have complied with the requirements of the PD CMO and are nearly at the stage of the Phase I hearing for PD claims; the Debtors have eliminated nearly 75% of the PD claims through claims objections; and all constituents have a renewed commitment to settlement discussions to reach a consensual plan of reorganization. Essentially, the parties are well down the estimation road that the Court established. Only along

(or at the end of) this road is confirmation likely. Accordingly, the Debtors' request at this time for an extension of the Exclusive Periods is reasonable and should be granted.

### Relief Requested

By this Motion, the Debtors request that this Court (a) extend the exclusive right to file a chapter 11 plan of reorganization under Bankruptcy Code § 1121(b) (the "Exclusive Filing Period") through and including the 90th day after a final order is issued in the Estimation Hearings, and (b) extend the exclusive right to solicit acceptances of a plan of reorganization under Bankruptcy Code § 1121(c)(3) through and including an additional 60 days thereafter (the "Exclusive Solicitation Period" and together with the Exclusive Filing Period, the "Exclusive Periods.")

### Argument

1.    The facts and the law squarely support extending the Exclusive Periods. The length of these chapter 11 cases is consistent with other complex asbestos cases. In fact, as elaborated below, the Debtors have made substantial progress toward confirmation of a plan of reorganization. Thus, the Debtors satisfy the factors courts have examined in granting similar extensions. Failure to extend the Exclusive Periods would cause potential chaos at a key time in these cases and could damage the Debtors' businesses.

2

I.      **The Length of these Cases is Consistent with Other Large, Complex Asbestos Cases**

2.      The Debtors filed a motion for approval of an original case management order (the "Original CMO Motion") less than 3 months after the Petition Date.[1] The Original CMO Motion requested protocols for pre-confirmation common issues litigation and claims liquidation, and thus presented a path for confirming a plan with reasonable speed.  Judge Wolin never ruled upon the Original CMO Motion.

3.      The various parties in these chapter 11 cases have tried to negotiate a consensual plan and continue to have discussions in this regard.  However, there remains fundamental and dramatic disagreements among all parties over the value of the various claims in these cases that makes negotiations extremely difficult.  For example:

- The ZAI claimants believe their claims significantly dwarf those of the other PD claimants and PI claimants;

- the PD claimants believe their claims are comparable to the PI claims;

- the PI claimants believe their claims eclipse those of the PD claimants; and

- the Unsecured Creditors' Committee and the Equity Committee believe all the tort claims are overvalued and the Debtors' businesses have substantial equity.

4.      Because the various parties were unable to reach any agreement on a plan, the Debtors offered an alternative path to confirmation.  Specifically, they filed a plan of

---

[1]     See Docket No. 586.

reorganization and disclosure statement along with related motions for estimation, solicitation and a new case management order.[2]

    5.    The Court did not approve the Disclosure Statement. Instead, the Court instructed the Debtors to work with each of the Asbestos Parties to negotiate a case management order to govern the estimation of asbestos property damage ("PD") and asbestos personal injury ("PI") liabilities. In doing so, the Court recognized that, in order to confirm any plan in these chapter 11 cases, it would be necessary to conduct an estimation and determine the aggregate amount of asbestos claims.[3]

## II.    Progress made in Chapter 11 Cases with Respect to Asbestos Claims

    6.    As detailed below, the Debtors subsequently negotiated the terms of two case management orders to govern the estimation of asbestos claims. Estimation is key absent settlement. The Debtors can only proceed to plan confirmation after the Estimation Hearings are concluded and the aggregate amount of asbestos claims is determined. The Court, and all the parties, recognize this and are now well down the road of estimation.

---

[2]    Each was filed on November 13, 2004. See *Plan* (Docket No. 6895); *Disclosure Statement* (Docket No. 6896); *Estimation Motion* (Docket No. 6899); *Solicitation Motion* (Docket No. 6900) and *New CMO Motion* (Docket No. 6898). On January 13, 2005, the Debtors filed an amended plan and disclosure statement to include the Official Committee of Unsecured Creditors and the Equity Committee as joint proponents (the "Plan" and the "Disclosure Statement," respectively).

[3]    This occurred at the January 21, 2005 hearing.

4

### A.   Asbestos Property Damage Claims

7.      Since the January 2005 disclosure statement hearing, the Debtors

negotiated the terms of a case management order to govern the estimation of the PD claims.  On

August 31, 2005, the Court entered a case management order for estimating the liability for

pending PD claims (the "PD CMO"), excluding ZAI claims.  The PD CMO targets a Phase I

hearing in March 2006 and a Phase II hearing in September 2006 (the "PD Estimation

Hearing").[4]

8.      The PD CMO required that the parties (a) designate their witnesses and

experts and (b) submit briefs, and responses thereto, to the Court addressing constructive notice

and methodology issues.  The PD CMO further mandated that the Debtors submit expert reports

addressing the Phase I issues.  These designations and submissions have been completed and the

Court is set to hear, at the November omnibus hearing, the issues briefed so as to rule on the

scope of the Phase I trial.

9.      In addition to the above, the Debtors have begun to overcome one of the

biggest impediments to reaching a resolution with the PD claimants -- the claims filed by

Speights & Runyan.  The Debtors' objections thus far have resulted in the withdrawal or

disallowance of approximately 1,700 Speights & Runyan claims as of October 31, 2005.  The

Debtors anticipate disallowance of another approximately 600 claims as a result of the Court's

October 31, 2005 ruling regarding the Anderson Memorial related claims.

---

[4]   Phase I is to deal with two issues:  Daubert methodology and constructive notice.  Phase II will consist of
merits-based estimation of the PD claims.

10.     In addition, the Debtors have obtained the disallowance of or successfully negotiated the resolution of approximately another 200 non-Speights & Runyan PD claims and have executed or are in the process of executing stipulations regarding many of these claims. Furthermore, the Debtors anticipate that an additional approximately 250 claims will be disallowed as the claimants failed to respond to the Debtors' objections.

11.     The substantial progress that the Debtors have made in reducing approximately 3,950 PD claims down to approximately 1,200 PD claims will make it easier to either negotiate a consensual resolution of the PD claims or litigate the PD claims through the continuing objection process or at the PD Estimation Hearing.

### B.     Asbestos Personal Injury Claims

12.     Since the January 2005 disclosure statement hearing, the Debtors have also (a) negotiated the terms of a case management order to govern the estimation of the asbestos personal injury claims and (b) obtained an order approving the form of Debtors' proposed questionnaire for asbestos personal injury pre-petition litigation claims (the "PI Questionnaire").

13.     On August 31, 2005, the Court issued a case management order for estimating the liability for pending PI claims (the "PI CMO") and approved the PI Questionnaire. The PI CMO targets an estimation hearing in September 2006 (the "PI Estimation Hearing" and together with the PD Estimation Hearing, the "Estimation Hearings"). The Debtors believe that one of the keys to this estimation process is the PI Questionnaire as all PI claimants are obliged to provide the Debtors with detailed information regarding their PI claims. The Debtors require this data in order to accurately estimate the PI claims for purposes of the PI Estimation Hearing. PI Questionnaires have now been sent to all known holders of prepetition PI claims.

6

## III. Cause Exists to Extend the Exclusive Periods

14.     Bankruptcy Code § 1121(d) grants this Court authority to extend the

Exclusive Periods "for cause" after notice and a hearing.[5]

15.     Courts have relied on a variety of factors to determine whether cause

exists to extend the exclusive periods in which to file a plan of reorganization, each of which

may provide sufficient grounds for such an extension.  These factors include:

- the size and complexity of the case,

- the existence of good faith progress toward reorganization,

- whether the debtor is paying its debts as they come due,

- whether the debtor has demonstrated reasonable prospects for filing a viable plan,

- whether the debtor has made progress in negotiating with creditors,

- whether the debtor is seeking the extension to pressure creditors, and

- whether unresolved contingencies exist.[6]

---

[5]   Although the term "cause" is not defined by the Bankruptcy Code, the legislative history indicates that it is to be viewed flexibly "in order to allow the debtor to reach an agreement." H.R. Rep. No. 95, 95th Cong., 1st Sess. 232 (1997); see also, In re McLean Indus., Inc., 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987) (quoting H.R. Rep. No. 595, 95th Cong., 2d Sess. 231 (1978), reprinted in 1978, U.S.C.C.A.N. 5963, 6190); and In re Public Serv. Co. of New Hampshire, 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("legislative intent . . . [is] to promote maximum flexibility").

To facilitate this legislative intent, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and nonfinancial information concerning the ramifications of any proposed plan for disclosure to creditors.  See, e.g., McLean Indus., 87 B.R. at 833-34; In re Texaco Inc., 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).  The decision to extend a debtor's exclusive periods is committed to the sound discretion of the bankruptcy court based upon the facts and circumstances of each particular case. See, e.g., First Am. Bank of New York v. Southwest Gloves and Safety Equip., Inc., 64 B.R. 963, 965 (D. Del. 1986).

[6]   See In re Express One Int'l, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (finding cause to extend the exclusive periods where the debtor has been diligent in its attempts to reorganize and the extension was not sought for an indefinite period); see also, In re Gibson & Cushman Dredging Corp., 101 B.R. 405, 409-10

(Continued...)

16.    These factors clearly support extending the Exclusive Periods in the

Debtors' cases:

- These chapter 11 cases were filed as a result of mounting asbestos-related litigation liabilities. Defining these liabilities and then providing for the payment of valid claims on a basis that preserves the Debtors' core business operations is a complex process that is central to resolving these chapter 11 cases. This process is now <u>firmly</u> under way, as discovery in connection with estimation is progressing.

- Regardless of the means chosen by the Court to estimate the Debtors' asbestos-related liabilities, the process will almost certainly be a time-consuming and complex one toward which the Debtors and the Asbestos Parties must devote a tremendous amount of time and a large number of resources. As the Court has focused all the parties on an estimation process, the relief requested herein would afford the Debtors an opportunity to continue to work toward estimation without the ancillary distraction of addressing potential competing plans.

- Further, the Debtors and all constituencies continue to engage in discussions concerning a consensual plan. In fact, of late, as the estimation discovery progresses, these settlement discussions have increased and all parties have a renewed commitment to attempting to make progress. The requested relief would allow the Debtors to continue to utilize their resources in a manner that will most effectively and expediently further the estimation process while also providing the opportunity for the Debtors to continue discussions with other constituents that could result in a consensual plan.

- Additionally, at all times during the course of these chapter 11 cases, the Debtors have acted in good faith and have continued to pay their post-petition obligations.

- Finally, in light of the size and complexity of these chapter 11 cases and in light of the current time frame for resolving the

---

(E.D.N.Y. 1989) (listing some of the above-referenced factors); <u>In re Grand Traverse Dev. Co. Ltd. P'ship,</u> 147 B.R. 418, 420 (Bankr. W.D. Mich. 1992) (same); <u>In re General Bearing Corp.,</u> 136 B.R. 361, 367 (Bankr. S.D.N.Y. 1992) (same); and <u>In re Southwest Oil Co. of Jourdanton,</u> 84 B.R. 448, 451-54 (Bankr. W.D. Tex. 1987) (same).

K&E 10807134.7

Asbestos Claim issues, which will be a critical component of the Debtors' (or <u>any</u>) ultimate plan of reorganization, the Debtors' request at this time for an extension of the Exclusive Periods is reasonable.

17.    Given the complex circumstances of this case and the unusual length of time required to properly estimate the asbestos claims and determine how such claims should be valued in the Debtors' plan of reorganization, the Debtors' request is not beyond the range of extensions granted by this and other courts in large reorganization cases, which did not involve such complexities in their administration. <u>See, e.g.</u>, <u>In re Loewen Group Int'l, Inc.</u>, Case No. 99-1244 (PJW) (Bankr. D. Del. June 1, 1999) (exclusive periods extended for 25 months because ongoing litigation complicated the resolution of the chapter 11 case).

18.    Indeed, courts have routinely granted exclusive period extensions covering several years even when resolution of the chapter 11 cases did not revolve around complex litigation issues. <u>See, e.g.</u>, <u>In re Phar-Mor, Inc.</u>, Case No. 92-41599 (Bankr. N.D. Ohio) (exclusive periods extended approximately three years). Here, the Debtors cannot (nor can any party) proceed to plan confirmation on a practical or reasonable basis until <u>after</u> the Estimation Hearings are concluded and the aggregate amount of asbestos claims is determined.

19.    Accordingly, extending the Exclusive Periods as requested by the Debtors is reasonable and appropriate under the circumstances.

9

## IV.    Terminating Exclusivity Would Hurt All Parties

20.    As discussed at length in the *Debtors' Report on Business Effects of Terminating Exclusivity*[7] and the accompanying affidavit of the Debtors' President and CEO, Fred Festa, terminating exclusivity in these chapter 11 cases may have a negative impact on the Debtors' businesses. Externally, terminating exclusivity would almost certainly result in, among other things, a tightening of the Debtors' ability to obtain credit and other accommodations, loss of customer confidence, and lack of competitive edge. Internally, terminating exclusivity may damage, among other things, employee relations and the Debtors' ability to recruit and keep young talent. This would hurt <u>all</u> parties.

21.    Furthermore, terminating exclusivity in a case of this size and complexity is rare. In fact, in the approximately 70 significant asbestos related chapter 11 cases that have been filed over the last 20 years, the Debtors have found that on only three occasions has exclusivity been terminated and, those three cases are distinguishable from the present situation. The very fact that exclusivity is essentially never terminated in cases of this sort will set off alarm bells that are likely to affect the Debtors' businesses in the event it is terminated here. Thus, the Debtors' Motion should be granted.

<u>Notice</u>

22.    Notice of this Motion has been given to (a) the Office of the United States Trustee, (b) counsel to the debtor-in-possession lenders, (c) counsel to the committees appointed

---

[7]    <u>See</u> Docket No. 8486.

K&E 10807134.7

by the United States Trustee, and (d) those parties that requested papers under Fed. R. Bankr. P.

2002.

WHEREFORE, the Debtors respectfully request that the Court enter an order:

(a) extending the Debtors' Exclusive Filing Period through and including the 90th day after a

final order is issued in the Estimation Hearings; (b) extending the Debtors' Exclusive Solicitation

Period through and including an additional 60 days thereafter; and (c) granting such other relief

as may be fair and equitable.

Dated:  November 14, 2005

KIRKLAND & ELLIS
David M. Bernick, P.C.
Janet S. Baer
Jonathan Friedland
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile:  (312) 861-2200

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES
& WEINTRAUB P.C.

*James E. O'Neill*

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-counsel for Debtors and Debtors in Possession