# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

## FEE AUDITOR'S FINAL REPORT REGARDING
## FEE APPLICATION OF STROOCK & STROOCK & LAVAN, LLP
## FOR THE SEVENTEENTH INTERIM PERIOD

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Seventeenth Interim Fee Application of Stroock & Stroock & Lavan, LLP (the "Application").

## BACKGROUND

1.      Stroock & Stroock & Lavan, LLP ("Stroock") was retained as counsel to the Official Committee of Unsecured Creditors.  In the Application, Stroock seeks approval of fees totaling $340,821.25 and costs totaling $9,261.40 for its services from April 1, 2005, through June 30, 2005, as well as payment of fees and costs of $54,204.34 for Navigant Consulting ("Navigant"), an asbestos issues expert[1].

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. 330,  Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware,

---

[1] We do not review the fees and expenses of Navigant per Stroock's request.

Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing

Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued

January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the

United States Bankruptcy Court for the District of Delaware, the United States District Court for the

District of Delaware, and the Third Circuit Court of Appeals.  We served on Stroock an initial report

based on our review, and received a response from Stroock,  portions of which response are quoted

herein.

## DISCUSSION

3.      In our initial report, we noted that during the application period three  firm members

billed a total of 2.7 hours for  fees of $1,822.50 for work associated with review of legislation.  We

noted that during the March 21, 2005, hearing in the USG Corporation bankruptcy case[2], this Court

stated, "...I'm having some difficulty understanding how any one estate ought to be charged with

paying for legislative efforts . . . if USG wants to volunteer its services and help Senator Specter's

team to try to get something fixed, that's fine. I'm happy to do that, but in terms of having this estate

pay for it, I think I do want an analysis of why that's appropriate . . ."   While we realize that the

monitoring and review of legislation is not the same as  legislative efforts, we asked the firm to

provide direct correlation that the time entries listed below represent time spent as a necessary part

of Stroock's role as counsel to the Committee in this bankruptcy.  Further, we asked Stroock to

explain how the hours of review indicated by the time entries benefitted the bankruptcy estate.

| 04/13/2005 | Attend to R. Farrell correspondence re: asbestos reform legislation (.5); exchanged memoranda with R. Farrell re: asbestos reform | Krieger, A. | 0.7 |

---

[2]Bankruptcy Case number 01-2094.

(.2).

| 04/13/2005 | Review articles regarding Specter on legislation progress (.2); review BNA report (.1); review Leaky summary of bi-partisan changes (.1); review VAW letter of support (.1). | Kruger, L. | 0.5 |
|---|---|---|---|
| 04/14/2005 | Attend to asbestos article in Congress Daily (.1). | Krieger, A. | 0.1 |
| 04/05/2005 | Memorandum to the Committee re: letter from insurers to Senator Specter re: asbestos Legislation (.2). | Krieger, A. | 0.2 |
| 04/13/2005 | Received and reviewed materials re: asbestos legislation. | Speiser, M. | 0.1 |
| 04/18/2005 | ...reviewed legislative materials re: asbestos liabilities (.4) | Speiser, M. | 1.8 |
| 06/10/2005 | ...review Specter comments regarding asbestos bill (.2). | Kruger, L. | 1.0 |
| 06/17/2005 | Memorandum to LK, KP re: asbestos reform legislation article (.1); exchanged memoranda with R. Farrell re: FAIR Act (.1) | Krieger, A. | 0.2 |
| 06/24/2005 | Review Farrell report on Specter remarks and Leahy letter (.3). | Kruger, L. | 0.3 |

Stroock's response is provided as Response Exhibit 1. We appreciate the response and concur with Stroock's contention that the activities listed in Exhibit A do not represent direct legislative efforts. However, we do believe at least three of the entries suggest a general monitoring of bankruptcy legislation rather than specific research, and that the fees charged for that time may not be compensable. Those entries are listed below.

| 04/13/2005 | Received and reviewed materials re: asbestos legislation. | Speiser, M. | 0.1 |
|---|---|---|---|

| 04/14/2005 | Attend to asbestos article in Congress Daily (.1). | Krieger, A. | 0.1 |
| 04/18/2005 | ...reviewed legislative materials re: asbestos liabilities (.4) | Speiser, M. | 1.8 |

As set forth above, A. Krieger has one entry for .1 hours and $55.00, and M. Speiser has two entries for .5 hours and $367.50.  We thus recommend a reduction of $422.50 in fees for these entries.

4.      We noted two travel entries totaling seven hours and $4,235.00 which require greater explanation.  The entries are provided below.

| 04/13/2005 | Travel (non-preparation) to Washington DC for Bubnovich/Vanderslice depositions. | Pasquale, K. | 3.0 |
| 04/14/2005 | Return travel attendant to depositions. | Pasquale, K. | 4.0 |

As the first entry is clearly designated as non-working travel, we asked Stroock to explain why the charges for both entries should not be reduced by 50 percent in accordance with Delaware Local Rules governing non-working travel.  Further, we asked the firm to explain the increased hour of travel noted in the second entry compared to the first.   Stroock's response is provided as Response Exhibit 2.  We appreciate the response that the time was ultimately billed correctly as non-working travel, but we note that Stroock does not explain the increased hour of travel noted in the second entry .  We thus recommend a reduction of $302.50 in fees.

5.      We noted four entries totaling 11 hours and $6,655.00 regarding attendance at the Federal Mogul estimation hearing.  The entries are provided below.

| 06/20/2005 | Attended Federal Mogul (T&N) estimation hearing for expert testimony of Robin Cantor (Navigant - UCC's estimation consultant/expert) (Time divided evenly with USG matter.) | Pasquale, K. | 3.5 |
| 06/21/2005 | Attended Federal Mogul (T&N) estimation | Pasquale, K. | 4.2 |

| | | | |
|---|---|---|---|
| | hearing for expert testimony of Robin Cantor (Navigant - UCC's estimation consultant/expert) (Time divided evenly with USG matter.) | | |
| 06/20/2005 | Travel attendant to Federal Mogul (T&N) estimation hearing in Camden, NJ (Time divided evenly with USG matter.) | Pasquale, K. | 1.8 |
| 06/21/2005 | Travel attendant to Federal Mogul (T&N) estimation hearing in Camden, NJ (Time divided evenly with USG matter.) | Pasquale, K. | 1.5 |

While we are aware of the relationship between Stroock and Navigant, it remains unclear from the entries why it was necessary for Mr. Pasquale to attend this hearing in connection with the W.R. Grace matter. We asked the firm to explain the necessity of his attendance, as opposed to obtaining a transcript of the hearing with regard to the salient testimony, in light of how that attendance furthered the Grace bankruptcy action. Further, while we noted that the travel charges cited were split between W.R. Grace and USG, there was no indication that the travel was charged at 50 percent the normal billing rate, as would appear to be appropriate. We asked Stroock to explain why this travel time was not billed at 50 percent. Stroock's response is provided as Response Exhibit 3. We accept the response and offer no objection to these fees.

## CONCLUSION

6.      Thus we recommend approval of fees totaling $340,096.25 ($340,821.25 minus $725.00) and costs totaling $9,261.40 for Stroock's services from April 1, 2005, through June 30, 2005, as well as payment of fees and costs of $54,204.34 for Navigant Consulting.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
           Warren H. Smith
           Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 1275
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 18th  day of November,  2005.

_____
           Warren H. Smith

## SERVICE LIST
### Notice Parties

**The Applicant**
Lewis Kruger
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, New York 10038-4982

Arlene Krieger
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, New York 10038-4982

**The Debtors**
David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Damage Claimants**
Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**
Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE  19801

**Official Committee of Equity Holders**
Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**
Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

**Counsel to the Official Committee of Property**

Response Exhibit 1

The Report notes that the Application seeks payment of fees in the aggregate amount of $1,822.50 with respect to 2.7 hours "for work associated with review of legislation" and refers to Judge Fitzgerald's remarks during the March 21, 2005 hearing in the USG Corporation chapter 11 cases with respect to an estate paying for the voluntary efforts of a debtor to assist Senator Specter's team in trying to get some asbestos legislation passed. The Report seeks an explanation of how the services identified in the Report were a necessary part of Stroock's role as counsel to the Committee and benefitted the estate. (Report at paragraph 3).

Judge Fitzgerald's comments during the March 21, 2005 USG hearing arose in connection with the approval sought by Chilmark Partners, the financial advisor for USG Corporation, for payment of its fees, where certain of the services rendered by Chilmark Partners were for its efforts and active participation with USG in furthering the passage of asbestos reform legislation in Congress.

None of Stroock's services identified in the Report relate to any active participation by Stroock in efforts to either advocate for or oppose the passage of asbestos legislation. They are not "services on work associated with legislative efforts". Rather, as is evident by the time entries identified in paragraph 3 of the Report, most of the services involved reviewing articles, memoranda and reports on the legislation, some of which were either forwarded or prepared by Navigant Consulting, the Creditors' Committee's asbestos issues consultant.

It is a necessary part of Stroock's role as counsel for the Creditors' Committee that it forward materials to the Committee providing relevant information with respect to the legislation and iterations of the asbestos bill then under consideration. Stroock makes it a practice to review the materials that it forwards to the Committee prior to transmitting it to the Committee. Further, as reflected in the plan-related settlement reached with McDermott International, Inc., the parent company to Babcock & Wilcox Company ("B&W"), in connection with B&W's chapter 11 cases, knowledge of the prospects for enactment of asbestos legislation and the potential impact of that enactment on the asbestos liabilities of the estate, can be an integral component of plan negotiations. Consequently, the services identified in the Report were rendered by Stroock in order to be able to keep the Creditors' Committee and individual unsecured creditors advised with respect to the negotiations over, the prospects for, and the terms of, the various iterations of the asbestos bill and to enable the Creditors' Committee to be ready to engage in plan-related negotiations. There can be no doubt that the legislative attempts to address the resolution of asbestos claims on a national basis under discussion in Washington is an area of direct relevance to the Grace chapter 11 cases given its potential direct and substantial impact on the treatment of asbestos claims asserted against the Grace estates, the structure and timing of a chapter 11 plan and recoveries available for the non-asbestos unsecured creditors represented by the Creditors' Committee. Stroock could not adequately represent the Creditors' Committee and the creditor constituency the Creditors' Committee

represents without following the legislation and keeping up to date with all of the legislation's developments.

Stroock further observes that the time it expended during this period on this matter is very modest, whether viewed in and of itself, or in light of the importance of asbestos-related issues to these cases.  It is therefore Stroock's position that the time spent by Stroock in reviewing articles about the legislation and being fully informed as to its terms and developments is reasonable and necessary to properly represent the Creditors' Committee and the unsecured creditors of these estates.  Accordingly, Stroock submits that the $1,822.50 in fees referenced in the Report should be approved and paid in its entirety.

Response Exhibit 2

The Report notes two entries in the aggregate amount of $4,235.00 for 7.0 hours with respect to timekeeper K. Pasquale's travel to and from Washington, DC for the Bubnovich/Vanderslice depositions.  The Report seeks additional information regarding the entries and, in particular, why the entries should not be reduced by 50% in accordance with Delaware Local Rules governing non-working travel, and why the return trip took an hour longer.  (Report at paragraph 4).

As reflected both in the time records and in the narrative section of the Application, the Debtors had filed a motion seeking authorization to enter into a certain employment agreement with Fred Festa, as the new CEO for Grace.  The asbestos claim committees objected to the motion and in connection with this contested matter, depositions were taken of Nick Bubnovich, the Debtors' compensation consultant and Thomas Vanderslice, the Lead Independent Director of the Grace Board of Directors.  Stroock traveled to Washington to actively participate at the depositions on behalf of the Creditors' Committee.

Further, both of the time entries referenced in the Report are in Category-0035 (Non-Working Travel) of the Application and as is evident from Attachment B to the April 2005 portion of the Application, the amount of $2,722.50 was deducted from the total bill for the month.  This amount reflects 50% of the charges for these two entries and for a third entry for travel in connection with the April 2005 omnibus hearing.  There was a one-hour difference in the travel time and therefore, that is reflected in the time entries.  Accordingly, Stroock submits that the $2,722.50 in fees should be approved and paid in its entirety.

Response Exhibit 3

The Report notes four entries in the aggregate amount of $6,655.00 for 11 hours of services in connection with Mr. Pasquale's attendance at the Federal Mogul estimation hearing.[1] The Report states that while the Fee Auditor is aware of the relationship between Stroock and Navigant, he seeks information with respect to why it was necessary for Mr. Pasquale to attend the hearing in person, rather than reading a transcript of Dr. Robin Cantor's testimony during the hearing in light of how that attendance furthered the W. R. Grace bankruptcy. The Report also notes that while the travel charges were split between the W. R. Grace case and the USG Chapter 11 case, there is no indication that the travel charges were billed at 50% of the normal billing rate which appears to be appropriate. (Report at paragraph 5).

As the Fee Auditor recognizes, Navigant was retained by the Creditors' Committee to serve as its expert consultant on asbestos personal injury estimation issues, and potentially as a testifying expert on such issues. The testifying expert witness for the Property Damage Committee in the Federal Mogul estimation trial was Dr. Robin Cantor of Navigant, who is also a possible testifying expert for the Creditors' Committee in the W. R. Grace estimation trial. Accordingly, counsel to the Committee believed it to be extremely important to attend the Federal Mogul hearing solely on the days that Dr. Cantor testified, to evaluate, first hand, those matters pertinent to her potential expert testimony in the W. R. Grace case. It is counsel's experience that the mere review of transcripts of prior testimony, while certainly helpful, is far less informative than observing the witness testify, because only by observing the witness in person can one evaluate important considerations such as the demeanor, candor and personality of the witness while testifying. In light of the proximity of the location of the Federal Mogul estimation trial to counsel's office, Stroock determined that the relatively minimal cost of attending the trial was far exceeded by the benefits to the Creditors' Committee in having the opportunity to evaluate a potential expert during live testimony concerning the same general type of personal injury estimation issues that will be tried in the W. R. Grace cases. In sum, Stroock considers this work to be an important part of trial preparation for the asbestos personal injury estimation hearing in these chapter 11 cases and the overall evaluation of potential expert witnesses.

Further, both of the travel-related time entries referenced in the Report are in Category-0035 (Non-Working Travel) of the Application and as is evident from Attachment B to the June 2005 portion of the Application, the amount of $1,663.75 was deducted from the total bill for the month. This amount reflects 50% of the charge for these two entries, as well as for a third

---

[1] The Report inquires as to "why it was necessary for Mr. Pasquale to attend this hearing on behalf of W. R. Grace." (Report at paragraph 5). Stroock assumes that the Fee Auditor meant to say that Mr. Pasquale attended the hearing on behalf of the Creditors' Committee in the W. R. Grace cases.

entry for travel in connection with the June 2005 omnibus hearing.  Accordingly, Stroock submits that the $6,655.00 in fees should be approved and paid in its entirety.