## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **FEDERAL-MOGUL GLOBAL, INC.,** | § | **Case No. 01-10578 (RTL)** |
| **T&N LIMITED, et al.,** | § | **Jointly Administered** |
| | § | |
| Debtors. | § | |
| | § | |

## FEE AUDITOR'S FINAL REPORT REGARDING
## FEE APPLICATION OF CAPLIN & DRYSDALE,
## <u>CHARTERED, FOR THE FOURTEENTH INTERIM PERIOD</u>

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Fourteenth Quarterly Interim Fee Application of Caplin & Drysdale, Chartered</u> (the "Application").

## BACKGROUND

1.     Caplin & Drysdale, Chartered ("Caplin & Drysdale"), was retained as Counsel for the Official Committee of Asbestos Claimants.  In the Application, Caplin & Drysdale seeks approval of fees totaling $304,916.25 and expenses totaling $44,517.65 for its services from February 1, 2005 through April 30, 2005 (the "Application Period").

2.     In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing

Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330,

Issued January 30, 1996 (the "U. S. Trustee Guidelines"), as well as for consistency with precedent

established in the United States Bankruptcy Court for the District of Delaware, the United States

District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We served an

initial report on Caplin & Drysdale, and received a response from Caplin & Drysdale, portions of

which response are quoted herein.

## DISCUSSION

### General Issues

3.      The Order Appointing Fee Auditor and Establishing Related Procedures Concerning

the Allowance and Payment of Compensation and Reimbursement of Expenses of Professionals and

Members of Official Committees and Consideration of Fee Applications, dated April 8, 2002,

provides in Paragraph 6 that "[a]pplicants shall not be compensated for fees incurred in preparing

a Fee Application in an amount in excess of 5% of the fees subject to such Fee Application, in the

absence of a sufficient showing of cause for any such fees."  As the compensation for preparing a

particular fee application is generally sought in the following fee application (we have heard this

referred to as a "trailing expense"), it is very difficult to determine which fee application costs are

attributable to which particular application, and it does not appear to us that such attribution is

required by Paragraph 6 of the Fee Auditor Order.  Thus, we interpret Paragraph 6 to require that an

applicant's cumulative fee application costs be applied to the applicant's cumulative fees.

4.      We note that Caplin & Drysdale spent a total of 17.10 hours and $5,508.00 in fees

on matters pertaining to its fee applications during the Application Period.  Caplin & Drysdale's

cumulative fees for fee application preparation through April 30, 2005 are $113,482.00.  Caplin &

Drysdale's cumulative fees overall are $4,360,173.50, of which 5% is $218,008.65.  Thus, Caplin

& Drysdale's cumulative charges for matters pertaining to its fee applications are under the 5% cap,

and we have no objection to these charges.

Specific Time and Expense Entries

5.    We note that Caplin & Drysdale advised us in its response to our initial report that

some of its travel expenses had been billed in error.  Caplin & Drysdale's explanation for the

overcharges is included as Response Exhibit "A."   We appreciate Caplin & Drysdale advising us

of these overcharges, and we recommend a reduction of $1,742.00 in expenses.

6.    In our initial report, we noted the following hotel charges for which more information

was needed:

| | |
|---|---|
| 1,545.07 | EI; Travel expenses to London for meetings w/constituencies on 2/2-7 for The Savoy, London hotel |
| 604.02 | EI; Travel expenses to London for meetings w/constituencies on 2/21-23 for The Savoy Hotel |
| 387.69 | EI; Travel to London for meetings on 2/21/23 for The Savoy hotel |
| 637.19 | EI; Travel expenses to London for meetings on 2/1-4 for The Savoy hotel |
| 594.19 | EI; Travel expenses to London for meetings w/constituencies on 3/21-22 for The Savoy hotel |
| 1,060.26 | NDF; Travel expenses to London on 3/20-24 for Crown Plaza hotel in NYC and the Savoy Hotel in London |
| 560.53 | EI; Travel expenses to London for meetings w/constituencies on 3/21-23 for The Savoy, London |
| 15,048.00 | The Rittenhouse Hotel; Deposit on hotel for trial 6/12 thru 6/24 for entire group |

605.96          Travel Expenses - Hotel Charges for Andrea Crichton trip from
                Manchester to NY for interview with Counsel on March 9/05

15.20           NDF; Travel expenses to London on 3/20-24 charge for in room
                movie

In response to our request, Caplin & Drysdale provided additional information concerning these

charges which we have included as Response Exhibit "B."  We accept Caplin & Drysdale's response

with respect to the following charges and recommend no reduction of same:

$604.02 charge for Timekeeper EI's stay in London;

$594.19 charge for Timekeeper EI's stay in London;

$148.58 charge for Timekeeper NDF's stay in New York (part of the $1060.26
charge);

$15,048 charge for rooms at The Rittenhouse Hotel in Philadelphia during the
estimation trial[1]; and

$605.96 charge for Andrea Crichton's stay in New York.

We note that Caplin & Drysdale deleted the charges for $637.19, $387.69, and $560.53, and an

expense reduction has been recommended for same in Paragraph 5, *supra*.  As to the remaining

charges, it appears to us that one can obtain more than satisfactory lodging in London for $350.00

per night, plus taxes.  Utilizing this guideline, we recommend the following reductions:

$1,545.07 charge for EI's 3-night stay in London: Reduce the charges attributable to
the room rate from $1260.00 to $1,050.00, for a reduction of $210.00; and

$911.68 charge for NDF's 2-night stay in London: Reduce the charges attributable
to the room rate from $744.00 to $700.00, for a reduction of $44.00.

In addition, we appreciate Caplin & Drysdale's deletion of the $15.20 miscellaneous charge from

---

[1]Although we have no objection to this expense, we note that there were additional charges for the same stay listed
on Caplin & Drysdale's Fifteenth Interim Fee Application.  Those additional charges will be addressed in our report
for the Fifteenth Interim Period.

its application.  Thus, for all items under this Paragraph, we recommend a reduction of $269.20 in

expenses.

       7.      In our initial report, we noted the following air fare charge which appeared excessive:

    4,707.32       Air & Train transportation (Business Class) for Andrea Crichton trip
                     from Manchester to NY for interview with Counsel on March 9/05

Thus, we asked Caplin & Drysdale to explain why reimbursement for this fare should not be reduced

to the coach class rate.  Caplin & Drysdale provided the following response:

> You inquire in paragraph 7 of the Initial Report regarding air fare and train
> transportation for Andrea Crichton for a trip from Manchester to New York on March
> 9, 2005.  As stated above, the dollar amount paid for Ms. Crichton's expenses was
> increased by both an unfavorable pound-to-dollar exchange rate and fluctuations in
> that rate between time of purchase and time of reimbursement.

Caplin & Drysdale subsequently advised us that the charge was for air fare only, and no train fares

were included.  Paragraph II.E.1. of the U.S. Trustee Guidelines provides in part: "Factors relevant

to a determination that the expense is proper include the following: ...Whether the expense is

reasonable and economical.  For example, first class and other luxurious travel mode or

accommodations will normally be objectionable."  In many instances, a business class air fare is

double the cost of a coach class fare.  We maintain that the Estate should not be put to the added

expense of providing business class flights for its professionals.   Based upon our review of

comparable air fares, we believe that a round trip, non-stop, fully refundable economy class ticket

from Manchester, UK, to New York can be purchased with relatively few days' advance notice for

under $3,300.00.  Thus, we recommend a reduction of $1,000.00 in expenses.

       8.      In our initial report, we noted the following meal charges which appeared excessive:

    517.93       EI; Travel expenses to London for meetings w/ constituencies on 2/2-
                     7 for meals (American Bar Dinner w/ Conlan, Freakley, McGovern,

Patton @ $371.18)

44.90          NDF; Working late dinner on 2/17 split between 4018 and 5091

It appears to us that one can ordinarily dine satisfactorily for $50.00 for dinner, $25.00 for lunch, and

$15.00 for breakfast.  Thus, we asked Caplin & Drysdale to  explain why reimbursement for these

charges should not be reduced.  Caplin & Drysdale responded as follows:

**$517.93 -  Elihu Inselbuch Meal Charges, February 2-4, 2005:**

This charge includes the following:

1. A dinner meeting attended by Elihu Inselbuch and four other
   persons ($371.18)
2. Breakfast for Mr. Inselbuch on February 2, 2005 ($51.92)
3. Breakfast for Mr. Inselbuch on February 3, 2005 ($42.95)
4. Breakfast for Mr. Inselbuch on February 4, 2005 ($42.95)

All charges were for restaurant meals, not room service.  The  amount charged in
U.S. dollars was high due to an unfavorable pound-to-dollar exchange rate.

**$44.90 -   Nathan Finch Meal Charge, February 17, 2005**

Mr. Finch worked late at the office and had dinner delivered.  While the
total amount charged of $89.80 (divided between two bankruptcy cases)
is not unusual for a restaurant meal, plus gratuities, in Washington D.C.,
Caplin & Drysdale will accept a voluntary reduction of $19.90 regarding
this expense.

Applying the guidelines set forth above, we recommend the following reductions:

Reduce $371.18 dinner charge for 5 to $250, for a reduction of $121.18;

Reduce $51.92 breakfast charge for one to $15, for a reduction of $36.92;

Reduce $42.95 breakfast charge for one to $15, for a reduction of $27.95;

Reduce $42.95 breakfast charge for one to $15, for a reduction of $27.95; and

Reduce $44.90 dinner charge for one (where actual charge was $89.80) to $12.50,[2] for a reduction of $32.40.

Thus, for all items under this Paragraph, we recommend a reduction of $246.40 in expenses.

9.      In our initial report, we noted the following meal expenses for which more information was needed:

292.23      EI; Travel expenses to London for meetings w/constituencies on 2/21-23 for meals

176.73      EI; Travel expenses to London for meetings on 2/1-4 for meals at The Savoy

282.65      EI; Travel expenses to London for meetings w/constituencies on 3/21-22 for meals

71.85      EI; Travel expenses to London for meetings w/constituencies on 3/21-23 for meals

Pursuant to our request, Caplin & Drysdale provided the following information concerning these charges:

**$292.23 -  Elihu Inselbuch Meal Charges, February 21-23, 2005**

1. Breakfast for Mr. Inselbuch on February 21, 2005 ($52.67)
2. Dinner for Mr. Inselbuch on February 22, 2005 ($185.82)
3. Breakfast for Mr. Inselbuch on February 23, 2005  ($53.74)

All charges were for restaurant meals, not room service.  The amount charged in U.S. dollars was high due to an unfavorable pound-to-dollar exchange rate.

**$282.65 -  Elihu Inselbuch Meal Charges, March 21-22, 2005**
1. Dinner conference, Mr. Inselbuch and Mr. Finch, March 21, 2005 ($229.75)

---

[2]Ordinarily, we do not recommend approval of local meal charges for attorneys working late at the office if such meals are taken on a routine basis.  However, we will not recommend disallowance of this charge, as it appears to have been an isolated instance.  Nevertheless, it appears to us that $89.80 for dinner ordered in at one's desk is excessive, and that $25.00 would have been more than adequate for such a meal.  As only one-half of the meal charge, or $44.90, was billed to the Federal-Mogul estate, we recommend that Federal-Mogul's share of the charge be reduced to $12.50, for a reduction of $32.40.

2.  Dinner for Mr. Inselbuch, March 22, 2005 ($52.90)

All charges were for restaurant meals, not room service.  The amount charged in U.S. dollars was high due to an unfavorable pound-to-dollar exchange rate.

We note that Caplin & Drysdale deleted the charges for $176.73 and $71.85, and an expense reduction has been recommended for same in Paragraph 5, *supra*.  In addition, we recommend the following reductions:

Reduce the $52.67 breakfast charge for one to $15.00, for a reduction of $37.67;

Reduce the $185.82 dinner charge for one to $50.00, for a reduction of $135.82;

Reduce the $53.74 breakfast charge for one to $15.00, for a reduction of $38.74;

Reduce the $229.75 dinner charge for two to $100.00, for a reduction of $129.75; and

Reduce the $52.90 dinner charge for one to $50.00, for a reduction of $2.90.

Thus, for all items under this Paragraph, we recommend a reduction of $344.88 in expenses.

10.     In our initial report, we noted the following transportation expense for which more information was needed:

485.03     Travel Expenses - Ground Transportation - EI trip to London 3/21-23

In response to our request, Caplin & Drysdale provided the following additional information concerning this charge:

You inquire in paragraph 10 of the Initial Report regarding a charge of $485.03 in ground transportation for Elihu Inselbuch during his March 21-23, 2005 trip to London.  While we have no specific breakdown of these charges, the total includes the following (1) taxis from and to Heathrow Airport on March 21 and 23, respectively; (2) taxis to and from the office of Lovells, the Committee's international counsel, and the Savoy Hotel, during the period from March 21-23, 2005 (3 days).

We accept Caplin & Drysdale's response and have no objection to this expense.

## CONCLUSION

In summary, we recommend approval of $304,916.25 in fees and $40,915.17 in expenses

($44,517.65 minus $3,602.48) for Caplin & Drysdale's services from February 1, 2005 through April

30, 2005.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
        Warren H. Smith
        Texas State Bar No. 18757050

325 North St. Paul Street
Suite 1275
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served by
First Class United States mail to the attached service list on this 21st day of November, 2005.

_____
        Warren H. Smith

**SERVICE LIST**

Notice Parties

**The Applicant**

Elihu Inselbuch
Rita C. Tobin
Caplin & Drysdale, Chartered
399 Park Avenue, 27th Floor
New York, NY 10022-4614

rct@capdale.com

Peter Van N. Lockwood
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, D.C.  20005-5802

**Debtors**
Tim Trenary
Kristen Schweninger
Federal Mogul Corporation
26555 Northwestern Highway
Southfield, MI  48034

**Co-Counsel for Debtors**
James F. Conlan
Larry J. Nyhan
Kenneth P. Kansa
Sidley Austin Brown & Wood
Bank One Plaza
10 South Dearborn Street
Chicago, IL  60603

**Co-Counsel for Debtors**
James E. O'Neill
Laura Davis Jones
Pachulski Stang Ziehl Young & Jones, P.C.
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE  19899-8705

**Counsel to the Official Committee of Asbestos Personal Injury Claimants**
Aileen F. Maguire
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE  19801

**Co-Counsel to Creditors' Committee**
Charlene D. Davis
The Bayard Firm
222 Delaware Avenue, Ste 900
Wilmington, DE  19801

**Co-Counsel to Creditors' Committee**
Peter D. Wolfson
Art Ruegger
Carole Neville
Sonnenschein, Nath, & Rosenthal
1221 Ave. of the Americas, 24th Floor
New York, NY  10020

**Co-Counsel to Creditors' Committee**
Thomas A. Labuda, Jr.
Sonnenschein, Nath, & Rosenthal
8000 Sears Tower
Chicago, IL  60606

**Counsel To The DIP Lenders**
Julie E. Anderson
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 11107

**Counsel for Lenders**
Steven M. Fuhrman
Simpson Thacher & Bartlett
425 Lexington Avenue
New York, NY  10017-3954

**Counsel to Lenders**
Mark D. Collins
Richards Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE  19801

**Office of the United States Trustee**
Richard L. Shepacarter
Office of the United States Trustee
844 King Street, Lock Box 35, Room 2207
Wilmington, DE 19801

**Counsel to the Legal Representative for Future Claimants**
James L. Patton, Jr.
Edwin J. Herron
Maribeth Minella
Young Conaway Stargatt & Taylor
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801

**Copy Service**
Parcels, Inc.
Vito I. DiMaio
4 East Seventh Street
Wilmington, DE 19801

**Counsel to the Official Committee of Asbestos Property Damage Claimants**
Theodore J. Tacconelli
Ferry, Joseph & Pearce, P.A.
824 Market Street, Suite 904
Wilmington, DE 19801

Philip Abelson
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

## RESPONSE EXHIBIT "A"

You inquire in paragraphs 6 and 9 of the Initial Report regarding a number of expenses related to three necessary business trips to London taken by Elihu Inselbuch during the accounting period. We have reviewed our records, and determined that, due to an accounting error, the Debtors were over-billed for several of these expenses. Specifically, Mr. Inselbuch's American Express ("Amex") charges are calculated by Amex based on the pound-to-dollar exchange rate on the date that the charges are actually paid to the Savoy Hotel and other British vendors by Amex. Due to the unfavorable pound-to-dollar exchange rate, the actual amounts paid on those dates were somewhat higher than the U.S. dollar amounts usually charged to Mr. Inselbuch. Because Mr. Inselbuch had already been reimbursed by Caplin & Drysdale for his expenses based on his receipts, and those amounts had been entered into the accounting system, it was necessary to separately input to the system the additional amounts charged by Amex due to the less favorable exchange rate. We have determined, however, that in several instances, a portion of the expense previously input was re-input along with the additional charge incurred as the result of the exchange rate. Therefore, in each instance, the initial expense entry was correct, but the second entry was not, in that the second entry included some portion of the already-billed charge along with the "adjustment" caused by the less favorable exchange rate. The charges, Amex adjustments and overcharges are as follows:

| Dates of trip | Amounts billed | Amex Adjustment | Overcharge |
|---|---|---|---|
| Feb. 1-4, 2005 | $637.19 | | |
| | 176.73 | | |
| | $813.92 | $49.19 | $764.73 |
| | | | |
| Feb. 21-23, 2005 | $387.69 | $20.24 | $367.65 |
| | | | |
| March 21-23, 2005 | $560.53 | $22.51 | $609.87 |
| | 71.85 | | |
| | $632.38 | | |
| | | | |
| **TOTALS** | **$1,833.99** | **$91.94** | **$1,742.25** |

Caplin & Drysdale apologizes for these errors and will take a voluntary reduction of $1,742 for the overcharges. We continue to request $91.94 in additional expenses representing the Amex adjustments.

## RESPONSE EXHIBIT "B"

A.    **Elihu Inselbuch Trips to London:**

    1.    **$1,545.07    Savoy Hotel, February 1-4, 2005**
        Mr. Inselbuch spent three nights at the Savoy.  For the first three nights, he was billed a total of $1,029.61, while for the third night he was billed $515.46.

    *(Caplin & Drysdale subsequently advised us that the taxes on the first two nights' stay were £108.56, or $203.11 U.S. dollars.  This works out to approximately 22.5% for taxes.)*

    2.    **$604.02    Savoy Hotel, February 21-23, 2005**
        Mr. Inselbuch spent two nights at the Savoy, at a rate of $302.01 U.S. dollars per night.  Mr. Inselbuch was able to obtain a special "membership" rate regarding this and subsequent stays at the Savoy.

    3.    **$594.19    Savoy Hotel, March 21-22, 2005**
        Mr Inselbuch spent two nights at the Savoy, at $297.09 per night.  Once again, Mr. Inselbuch has been able to obtain a special, reduced rate at the Savoy as the result of a "membership" program in which he now participates.

B.    **Nathan D. Finch**

**$1,060.26**  This charge includes $148.58 for one night at the Crown Plaza hotel in New York City on March 3, 2005 and $911.68 for two nights, March 20-21, at the Savoy Hotel in London.  Mr. Finch accompanied Mr. Inselbuch on his March 2005 business trip to London to meet with the debtors and creditor constituencies.

*(Caplin & Drysdale subsequently advised us that the taxes on the two nights' stay in London were £89.56, or $167.56 U.S. dollars.  This works out to approximately 22.5% for taxes.)*

C.    **Andrea Crichton**

**$605.96**  Ms. Crichton, an employee of Turner & Newall, traveled to New York City at Caplin & Drysdale's expense to provide testimony regarding matters relating to the Debtors' asbestos liability.  The charge indicated is for a two-night hotel stay at $572.12, or $286.00 per night, at the Helmsley Park Lane Hotel in New York City.  The higher amount paid

reflects fluctuations in the unfavorable pound-to-dollar exchange rate between the dates that Ms. Crichton visited New York City, paying for her hotel in British pounds at the then-current exchange rate of $1.86, and the date that Caplin & Drysdale reimbursed Turner & Newall for her expenses, in British pounds at the then current, higher exchange rate of 1.97 per British pound.

**D.    Rittenhouse Hotel**

$15,048.00     These hotel expenses were for five people – two attorneys, two paralegals and one secretary -- during an eleven day stay in Philadelphia for the Federal Mogul estimation trial. The attorneys were Nathan D. Finch and Danielle K. Graham; the paralegals were David B. Smith and Sheila A. Clark; and the secretary was Sidney Barnes.

$15.20     Further, Mr. Finch's in-room movie expense of $15.20 was charged to the estate in error and should be deducted from the expense total.