IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**Hearing Date: January 30, 2006 at 12:00 p.m.**

Re: Docket Nos. 5527, 5637, 5685, 7961, 8070 & 8178

## DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO PETER P. PEARSON'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEBTORS' CROSS-MOTION FOR SUMMARY JUDGMENT (CLAIM NO. 2281)

---

[1]    The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

# TABLE OF CONTENTS

Page

Introduction ........................................................................................................... 1

Background and Statement of Facts ...................................................................... 2
    A.    Debtors' GRM Repair Business ........................................................... 2
    B.    Claimant's Proof of Claim .................................................................. 2

Standard for Motion for Summary Judgment ......................................................... 4

Opposition to Peter P. Pearson's Motion for Summary Judgment ........................... 6

Support for Debtors' Motion for Summary Judgment ............................................. 8
    A.    The Claimant Has No Viable Claim Against the Debtors Pursuant to
            EPCRA .................................................................................................. 9
    B.    OSHA Does Not Provide for Private Causes of Action ...................... 10
    C.    The Exclusive Remedy Provision of the Workers Compensation Statute
            Bars the Claim. .................................................................................. 11
    D.    The Claim is Barred by the Statute of Limitations. .......................... 14
    E.    The Claimant Failed to Properly Assert a Cause of Action under the
            Fourteenth Amendment. ...................................................................... 17

## TABLE OF AUTHORITIES

Page

Cases

*Adickes v. S.H. Kress & Co.,*
    398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ........................................................ 4

*American Federation of Governmentt Employees, AFL-CIO v. Rumsfeld,*
    321 F.3d 139 (D.C. Cir. 2003) ............................................................................................ 9

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ............................................. 5

*Blum v. Yaretsky,*
    457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) ..................................... 15, 16

*Brandler v. Manuel Treviso Hay Co.,*
    154 Ariz. 96, 97, 740 P.2d 958, 959 (Ariz.App. 1987) .................................................... 13

*Celotex Corp. v Catrett,*
    477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) .................................................. 5, 14

*Crane v. Conoco, Inc.,*
    41 F.3d 547, 553 (9th Cir. 1994) ........................................................................................ 9

*Delbridge v. Salt River Project Agr. Imp. And Power Dist.,*
    182 Ariz. 46, 50, 893 P.2d 46, 50 (Ariz.App. 1994) ....................................................... 10

*Dezell v. Day Island Yacht Club,*
    796 F.2d 324, 326 (9th Cir. 1986) .................................................................................... 15

*Jackson v. Metropolitan Edison Co.,*
    419 U.S. 345, 349, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) ................................................ 15

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
    475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ..................................................... 5

*Perkins v. Londonderry Basketball Club,*
    196 F.3d 13, 18 (1st Cir. 1999) .................................................................................... 15, 16

*Pruett v. Precision Plumbing, Inc.,*
    27 Ariz.App. 288, 293, 554 P.2d 655, 660 (Ariz.App. 1976) .......................................... 10

*Republic Nat. Bank of New York v. Pima County,*
    200 Ariz. 199, 204,  25 P.3d 1, 6 (Ariz.App. 2001) ........................................................ 13

*Resolution Trust Corp. v. Blasdell*,
   930 F.Supp. 417, 429 (D.Ariz. 1994) .............................................................. 15

*Resolution Trust Corp. v. Grant*,
   901 P.2d 807 (Okla. 1995) .............................................................................. 15

*San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.*,
   483 U.S. 522, 546, 107 S.Ct. 2971, 97 L.Ed. 427 (1987) ................................ 16

*Serna v. Statewide Contractors, Inc.*,
   6 Ariz.App. 12, 429 P.2d 504 (Ariz.App. 1967)........................................ 11, 12

*Shelley v. Kraemer*,
   334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948) ..................................... 15

*U.S. v. Price*,
   383 U.S. 787, 811, 86 S.Ct. 1152, 16 L.Ed. 267 (1966) ................................ 15

**Statutes**

29 U.S.C. § 645 ................................................................................................... 3

29 U.S.C. § 653(b)(4) .......................................................................................... 9

29 U.S.C. § 670 ................................................................................................... 3

29 U.S.C. §§ 651 ................................................................................................. 1

42 U.S.C. § 11012 ............................................................................................... 8

42 U.S.C. § 11021 ............................................................................................... 4

42 U.S.C. § 11022 ............................................................................................... 8

42 U.S.C. § 11023 ............................................................................................... 8

42 U.S.C. § 11045 ............................................................................................... 9

42 U.S.C. § 11046(a)(1)(A) ................................................................................ 8

42 U.S.C. § 11046(d)(1) ...................................................................................... 8

42 U.S.C. §§ 11001 ............................................................................................. 1

A.R.S. § 12-542................................................................................................... 13

A.R.S. § 23-1022................................................................................................. 10

A.R.S. § 23-1022(A) & (B) ................................................................................ 10

A.R.S. § 23-1061.A ...................................................................................................................... 11

A.R.S. § 23-906(A) ...................................................................................................................... 10

A.R.S. § 23-906.C ........................................................................................................................ 10

Ariz. Const. Art. 18 § 8 .............................................................................................................. 10

**Rules**

Fed.R.Civ.P. 56 .............................................................................................................................. 4

Fed.R.Civ.P. 56(c) .......................................................................................................................... 4

## Introduction

The motion for summary judgment filed by Peter P. Pearson (the "Claimant") must be denied.  In particular, the Claimant's legal arguments are premised upon numerous facts that are directly disputed by the Debtor.  Therefore, if all reasonable inferences are made in favor of the Debtors (the non-moving party) with respect to the underlying facts, this Court has no choice but to determine that the underlying factual disputes are genuine and such that a reasonable jury could return a verdict in favor of the Debtors.  Therefore, summary judgment cannot be awarded to the Claimant as a matter of law.

Conversely, the Debtors are entitled to summary judgment with respect to Claim No. 2281 filed by the Claimant.  There are no genuine issues of material fact with respect to whether any legal basis exists for Claim No. 2281.  Moreover, the Claimant is not entitled to relief as a matter of law under the facts as currently plead.  Simply put, the Claimant does not have a statutory right to assert a cause of action under the Emergency Planning and Community Right to Know Act ("EPCRA"), 42 U.S.C. §§ 11001 *et seq.*, because of his failure to comply with numerous prerequisites under the statute.  In addition, even if the Claimant could assert a valid claim under EPCRA, EPCRA does not allow for monetary recovery to be awarded to private individuals such as the Claimant.  Similarly, the Occupational Safety and Health Act ("OSHA"), 29 U.S.C. §§ 651 *et seq.*, does not provide for a private right of action for personal injury claims such as those asserted by the Claimant.  Furthermore, Claim No. 2281 is precluded by the exclusive remedy provision of Arizona's workers compensation statute.  Alternatively, the applicable statute of limitations bars the Claim as the Claimant failed to file a timely cause of action under the applicable statute.  Lastly, Claim No. 2281 fails to the extent it is based upon any alleged violation of the Fourteenth Amendment of the Constitution because no state action

was or can be asserted by the Claimant. Therefore, the Debtors are entitled to summary judgment and Claim No. 2281 should be disallowed and expunged.

## Background and Statement of Facts

### A.    Debtors' GRM Repair Business

Grace Specialty Chemicals (a division of W. R. Grace & Co.-Conn.) manufactured the Grace Roofing Membrane ("GRM"), a self-sticking single-ply roofing water proofing material. The GRM product line had a 10 year warranty, which was serviced by an in-house warranty service department. Once a GRM warranty problem was identified, a GRM repair crew would be assigned to address the situation.

The Claimant was an employee of W.R. Grace & Co.-Conn. in the Grace Specialty Chemicals[2] division from March 1986 to February 1992. He worked in the warranty service department for the GRM product line out of an office in Phoenix, Arizona. The Claimant was a crew chief of one of the two GRM crews stationed in Phoenix.

### B.    Claimant's Proof of Claim

On or about October 31, 2002, the Claimant filed a general unsecured claim against the Debtors in the amount of $741,600, allegedly based upon the Debtors' "failure to provide safety equipment, information or training with respect to G.R.M." ("Claim No. 2281").

The Claimant never filed a lawsuit against the Debtors, asserted any prior cause of action or claim against the Debtors, or put the Debtors on notice with respect to such potential claims until he filed Claim No. 2281. *See* Debtors' First Set of Interrogatories and First Request for Production of Documents to Peter P. Pearson, attached hereto as Exhibit A; Claimant's

---

[2]    The Claimant was originally employed by the Construction Products Division ("CPD"), a part of Grace's Industrial Chemicals Group, which was a division of W.R. Grace & Co.-Conn. Shortly thereafter, the name of the Industrial Chemicals Group was changed to Grace Specialty Chemicals. CPD continued as an organization within Grace Specialty Chemicals.

Production of Documents and Answer to Interrogatories ("Claimant's Production and Answer"),

Answer to Interrogatory No. 25 [Docket No. 8494].

On May 14, 2004, the Debtors filed their Fifth Omnibus Objection to Claims

(Substantive) (the "Fifth Omnibus Objection") [Docket No. 5527], in which the Debtors sought

to disallow or reduce, as appropriate, certain specified claims (the "Disputed Claims"). Included

on Exhibit C and identified as a "No Liability Claim," the Debtors objected to Claim No. 2281.

[Docket No. 5527, Exhibit C]. In particular, the Debtors stated that there was no manifestation

of any injury with respect to Claim No. 2281 and that the Debtors were not liable for such Claim.

Claimant filed a response to the Fifth Omnibus Objection ("Response") [Docket No.

5637], as well as a supplement to his Response ("Supplement") [Docket No. 5685]. On or about

March 4, 2005, the Debtors filed a reply to the Claimant's Response and Supplemental Response

(the "Reply") [Docket No. 7961], which expanded upon and further articulated the grounds as to

why the Debtors were not liable with respect to the causes of action underlying Claim No. 2281.

(Reply, p. 3-8). On or about March 18, 2005, the Claimant filed "Claimant's Answer to Debtors

Response" ("Claimant's Sur-Response"). [Docket No. 8070].

On or about April 5, 2005, the Claimant filed his motion for summary judgment

("Claimant's MSJ") [Docket No. 8178]. In the Claimant's MSJ, the Claimant identifies the

following issues as "uncontested facts":

    (a)    W. R. Grace did not provide the Claimant a workplace free from recognized

           hazards pursuant to 29 U.S.C. § 645;

    (b)    W. R. Grace did not provide the Claimant proper training to use the GRM

           products pursuant to 29 U.S.C. § 670;

(c)     W. R. Grace refused to provide meaningful material safety data sheets ("MSDS")
or training to the Claimant on how to understand MSDS forms pertaining to the
GRM products pursuant to 42 U.S.C. § 11021; and

(d)     The Claimant has suffered serious medical, emotional and economic harm due to
the malicious intent of W. R. Grace by its failure to comply with federal law.

Claimant's MSJ, p. 2-3. Based upon such alleged "uncontested facts," the Claimant declared
that it was entitled to a judgment as a matter of law. *Id.* at p 1. The Claimant did acknowledge,
however, that a contested issue was whether the Arizona statute of limitations relieved the
Debtors of liability for Claim No. 2281. *Id.* at p 3. The Debtors assert that Claimant's MSJ is
based upon numerous facts that are disputed by the Debtors and, thus, Claimant's MSJ must be
denied.

On the other hand, concurrent with the filing of this Memorandum, the Debtors file a
cross-motion for summary judgment. The Debtors assert that even if all reasonable factual
inferences are made in favor of the Claimant (the non-moving party), summary judgment should
be granted in favor of the Debtors as a matter of law.

### Standard for Motion for Summary Judgment

Summary judgment is proper only when there are no genuine issues of material fact in
dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. In
particular, Fed.R.Civ.P. 56(c) provides, in pertinent part, that:

> The judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories and admissions on file,
> together with the affidavits, if any, show that there is no genuine
> issue as to any material fact and that the moving party is entitled to
> judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party.
*Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary

judgment will not be granted if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249.

### Opposition to Peter P. Pearson's Motion for Summary Judgment

The Claimant's MSJ must be denied as there are genuine disputes with respect to material facts underlying the Claimant's alleged causes of action under EPCRA and OSHA. Mr. Pearson's assertions that certain disputed facts are "uncontested" are simply untrue. In fact, the Debtors genuinely dispute the allegation that the Debtors' workplace presented any "recognized hazards" whatsoever. Moreover, the Debtors contend that if any such "hazard" existed, the Claimant did not incur any significant or material harm (medical, emotional, economic or otherwise).

Indeed, the Debtors contend that the Claimant has utterly failed in his burden to demonstrate that he has incurred any harm, much less a material or significant harm, for a variety of reasons, including that:

    (a)    The Claimant fails to provide **any** evidence of actual harm caused by the exposure to any materials used while working for the Debtors. *See* Exhibit A, Debtors'

Interrogatory Nos. 6-9 & 12; Claimant's Production and Answers, Answer to Interrogatory Nos. 6-9 & 12, Exhibit L.

(b)     The Claimant has failed to produce any actual medical documentation (including, but not limited to, physician reports, test results, X-rays, or other medical diagnosis or evidence of any condition) or any scientific materials that link the Claimant's alleged harm to any of the GRM products. *See* Exhibit A, Debtors' Interrogatory Nos. 8, 10-15; Claimant's Production and Answers, Answer to Interrogatory Nos. 8, 10-15.

(c)     The Claimant produced the name and address of only one doctor that he visited **after** the Debtors served their First Set of Interrogatories and First Request for Production of Document on Mr. Pearson. *See* Claimant's Production and Answers, Exhibit L. This two (2) page report of a doctor from the University of Arizona Campus Health Service only suggests that the Claimant should consult a specialist in his pursuit of the Claim. The doctor does not make any conclusive diagnosis. Further, the doctor notes that the Claimant's vital signs were normal and he was "an articulate, pleasant man in no distress." *Id.*

In addition, the Claimant has failed to produce any objective evidence that the Debtors failed to comply in any way with EPCRA or OSHA. Moreover, in the decade before filing the Claims in these Chapter 11 cases, the Claimant had not notified the Debtors with respect to any such alleged violations. In particular, the Claimant had never filed any notices, lawsuits, causes of action, proceedings or initiated any reviews, hearings, inquiries or investigations with respect to any of the causes of action underlying Claim No. 2281. *See* Exhibit A, Interrogatory No. 25, Claimant's Production and Answers, Answer to Interrogatories No. 25.

6

In contrast, the Debtors intend to introduce evidence consistent with the attached Declaration of Timothy M. Barry, the other GRM crew chief in Phoenix, Arizona, at the same time as the Claimant who was performing virtually the same job with the same responsibilities as the Claimant. *See* Declaration of Timothy M. Barry, attached hereto and incorporated herein as Exhibit B. This evidence will dispute the Claimant's assertions and establish that affiant and all other similarly situated employees as the Claimant received regularly scheduled training in the use of GRM products including instructions on the safe us and application of the GRM products. *Id.* at ¶ 6. Moreover, employees were provided with MSDS sheets for all GRM products and for other products and materials they would encounter in connection with the GRM repair work. *Id.* Additionally, Mr. Barry is not aware of the Claimant ever complaining to Grace of any safety, health or medical concerns. *Id.* Lastly, Mr. Barry, as well as the Debtors, is unaware of any alleged EPCRA or OSHA violations that have been filed, asserted or reported by any other employee with respect to GRM during the relevant time period. *Id.* at ¶5.

In considering the Claimant's MSJ, the Court must view all evidence and draw reasonable inferences in favor of the Debtors. Upon such review, this Court has no option but to determine that genuine disputes of fact exist with respect to material facts underlying Claim No. 2281, including, without limitation, the issues of whether the Debtors' workplace presented any recognized hazards and whether the Claimant incurred any injuries resulting from such alleged hazards. As genuine issues for trial exist, summary judgment is not appropriate and the Court must deny the Claimant's MSJ.

## Support for Debtors' Motion for Summary Judgment

Not only should this Court dismiss the Claimant's MSJ, but the Court should grant summary judgment in favor of the Debtors. Even if the Court draws all reasonable inferences in

favor of the Claimant upon viewing evidence, the causes of action underlying Claim No. 2281

fail as a matter of law for the following reasons:

(a)    the Claimant has no standing to assert a claim under EPCRA against the Debtors,

       nor would he be entitled to any monetary recovery under EPCRA;

(b)    the Claimant has no statutory right to assert a claim under OSHA;

(c)    the Arizona workers' compensation statute provides the exclusive remedy to the

       Claimant;

(d)    if the Arizona workers' compensation statute exclusive remedy provision is not

       applicable, then the applicable statute of limitations bars the Claim; and

(e)    the Claimant cannot properly assert a Claim under the Fourteenth Amendment

       against the Debtors because there is no state action.

As a result thereof, Claim No. 2281 should be disallowed and expunged.

A.    **The Claimant Has No Viable Claim Against the Debtors Pursuant to EPCRA**

       EPCRA contains various reporting provisions that require a facility owner or

operator to submit certain specified information with respect to certain chemicals maintained at

threshold levels to responsible state, local and federal authorities. EPCRA, §§ 11012, 11022,

11023. Although EPCRA provides for a private right of action, the citizen lawsuit provision is

narrowly drawn. EPCRA § 11046(a)(1)(A).

       Citizen actions against a facility owner or operator are limited to compelling the

submission of four (4) types of information:  (1) emergency notices; (2) MSD sheets or lists;

(3) Tier I inventory sheets; and (4) release forms. EPCRA, § 11046(a)(1)(A)(i)-(iv). However,

such a citizen suit may only be commenced after providing 60 days prior notice of the alleged

violation to (i) the Administrator of the Environmental Protection Agency ("EPA"), (ii) the State

in which the alleged violation occurred, and (iii) the alleged violator. EPCRA, § 11046(d)(1).

8

Lastly, if a facility owner or operator is found to have violated EPCRA and is assessed a civil or criminal penalty, the penalties are paid to the United States of America, not to private individuals. EPCRA, § 11045.

The Claimant simply does not and cannot possess a viable cause of action against the Debtors under the citizen lawsuit provision of the EPCRA. In fact, the Claimant has no eligibility to assert such a claim under EPCRA because he failed to provide 60 days advance notice to the Administrator of the EPA or the State of Arizona before filing the Claim as required by the statute. *See* Exhibit A, Interrogatory No. 25; Claimant's Production and Answers, Answer to Interrogatory No. 25. Likewise, the Claimant never gave advance notice of any such alleged violations to the Debtor prior to filing his Claim. *Id.* The Claimant does not dispute that required prior notice was never given by him to the necessary parties, nor does he provide any tangible evidence to the contrary.

In addition, section 11045 of EPCRA clearly provides for no monetary recovery for private individuals, such as the Claimant. As a result, the Claimant's demand for monetary damages based upon alleged violations of EPCRA is unfounded and prohibited under the applicable statute. Therefore, any Claim based upon EPCRA should be disallowed and expunged.

## B.    OSHA Does Not Provide for Private Causes of Action

Although Congress enacted OSHA in order to promote workplace safety, OSHA does not affect the rights, duties and liabilities established by worker's compensation law or any other preexisting law. OSHA, § 653(b)(4). Courts have uniformly held that OSHA does not create a private cause of action for personal injury, and therefore, employees do not have any cause of action under OSHA against their employers for any injury stemming from OSHA violations. See, e.g., *American Federation of Government Employees, AFL-CIO v. Rumsfeld*, 321 F.3d 139,

9

143 (D.C. Cir. 2003); *Crane v. Conoco, Inc.*, 41 F.3d 547, 553 (9th Cir. 1994); *Pruett v. Precision Plumbing, Inc.*, 27 Ariz.App. 288, 293, 554 P.2d 655, 660 (Ariz.App. 1976). Thus, the Claimant does not possess a viable cause of action against the Debtors under OSHA. To the extent based upon OSHA, Claim No. 2281 should be disallowed and expunged.

**C.    The Exclusive Remedy Provision of the Workers Compensation Statute Bars the Claim.**

Claim No. 2281 also fails because it is barred by the Arizona workers' compensation statute's exclusive remedy provision. In most instances, Arizona's workers' compensation law provides the exclusive remedy for a worker injured or killed in a work-related accident, unless the worker rejected workers' compensation *prior* to being injured. A.R.S. § 23-906.C (workers conclusively presumed to have elected workers' compensation unless they reject workers' compensation prior to injury). Thus, an employee who does not expressly "opt out" of the workers' compensation scheme accepts workers' compensation as his or her sole remedy against the employer. Ariz. Const. Art. 18 § 8; A.R.S. §§ 23-906(A) and 23-1022. *See Delbridge v. Salt River Project Agr. Imp. And Power Dist.*, 182 Ariz. 46, 50, 893 P.2d 46, 50 (Ariz.App. 1994).

In particular, the Arizona workers' compensation statute provides as follows:

A. The right to recover compensation pursuant to this chapter for injuries sustained by an employee or for the death of an employee is the *exclusive remedy against the employer* or any co-employee acting in the scope of his employment, and against the employer's workers' compensation insurance carrier or administrative service representative, ... except that if the injury is caused by the employer's willful misconduct, ..., the injured employee may either claim compensation or maintain an action at law for damages against the person or entity alleged to have engaged in the wilful misconduct.

B. "Willful misconduct" as used in this section means an act done knowingly and purposely with the direct object of injuring another.

A.R.S. § 23-1022(A) & (B) (emphasis added).

It is undisputed that the Claimant failed to reject workers' compensation before any of the injuries allegedly incurred by the Claimant. It is also uncontested that the Claimant failed to file

10

any workers' compensation claim with the required authorities pursuant to the statute. *See* Exhibit A, Debtors Interrogatory No. 25, Claimant's Production and Answers, Answer to Interrogatory No. 25.[3] Therefore, as compliance with the Arizona workers' compensation statute is the sole and exclusive remedy available to the Claimant, the Claimant is specifically precluded from asserting a private cause of action directly against the Debtors' estates based upon the same alleged injuries incurred at the Debtors' workplace.

In addition, the Claimant fails to allege any facts whatsoever that support a finding that the workers' compensation exclusive remedy should not apply because of any alleged "willful misconduct" by the Debtors. Indeed, Arizona courts have developed a restrictive interpretation of what constitutes "willful misconduct."

In *Serna v. Statewide Contractors, Inc.*, 6 Ariz.App. 12, 429 P.2d 504 (Ariz.App. 1967), a case cited by the Claimant, numerous dependants alleged that the death of several employees was the result of the employer's willful misconduct and that the dependants were exempted from the exclusive remedy provision of the workers' compensation act. 429 P.2d at 505. The lower court granted summary judgment in favor of the employer and the dependants appealed. The Arizona court of appeals found that the cave-in that caused the deaths of the employees was the direct result of the employer's refusal to follow the safety recommendations of the Arizona Industrial Commission Accident Prevention Department. *Id.* at 506. The court, however, looked

---

3    Significantly, the Arizona workers' compensation statute provides that no claim for compensation will be valid unless it is filed by the employee "in writing within one year after the injury occurred or the right thereto accrued." A.R.S. § 23-1061.A. Therefore, the Claimant cannot remedy his failure to comply with the applicable statutory requirements by now submitting a claim with the designated agency as the applicable time period has lapsed.   Notably, the Claimant was not prohibited from filing such a claim by the Debtors' current bankruptcy cases due to the Court's order authorizing the Debtors to continue to pay certain pre-petition obligations, including, but not limited to, Workers' Compensation Obligations and Related Premiums (as that term was defined in the Debtors' motion). *See* Debtors' motion and the related order [Docket Nos. 19 and 20].  As a result thereof, the Claimant has no excuse for his failure to comply with the Arizona workers' compensation statute.

to the plain language of the Arizona statute to determine the meaning of "willful misconduct" and determined that,

> It would appear that our statute as well as the principles governing the interpretation of the workmen's compensation statutes which provide for suit at common law for the employer's willful misconduct require that there be *deliberate intention as distinguished from some kind of intention presumed from gross negligence.* 2 Larson, Workmen's Compensation Law, Sec. 69.20 (1961). The Arizona statute is most restrictive in this regard.

*Id.* at 508.

Although the court determined that the facts presented in *Serna,* viewed in the light most favorable to the dependants, clearly established the negligence of the employer, the facts "failed to establish that the employer, through its elected officer, acted with the intent required by our statute." *Id.* As a result, the *Serna* court held that the conduct of the employer did **not** amount to "willful misconduct" within the meaning of the statute and the dependants were not exempted from the exclusive remedy provided by the act. *Id.*

Like the dependants in *Serna*, the Claimant has failed, and not even attempted, to provide any objective evidence whatsoever of willful misconduct or deliberate intention necessary to sustain his Claim. In particular, the Claimant fails to provide any evidence that demonstrates that the alleged incidents were done knowingly and purposely with the direct object of injuring another. In the absence of any such evidence, the Court cannot find that the issue is the subject of a genuine dispute of the type sufficient to survive summary judgment.

Therefore, any exception to the exclusive remedy provision of the Arizona workers' compensation statute based upon "willful misconduct" is not available to the Claimant. As a result, Claim No. 2281 must be disallowed and expunged as the Claimant is precluded from asserting a private cause of action under the Arizona workers' compensation statute.

**D.**    **The Claim is Barred by the Statute of Limitations.**

If the Court determines that the Arizona workers' compensation exclusive remedy provision is somehow inapplicable to the circumstances before the Court, Claim No. 2281 is nonetheless barred by the Arizona statute of limitations.    Under Arizona law, the statute of limitations for personal injury actions is two years.    A.R.S. § 12-542.    This statute governs injuries sustained by an employee during the scope of his employment.    *Brandler v. Manuel Treviso Hay Co.*, 154 Ariz. 96, 97, 740 P.2d 958, 959 (Ariz.App. 1987).    Moreover, the injured party must bring the claim within two years of the time that the cause of action *accrued*--in Arizona, the "discovery rule" is determinative of the time of accrual.    Therefore, a cause of action is deemed to have accrued when "the plaintiff knows or, in the exercise of reasonable diligence, should have known the facts underlying the cause."    *Republic Nat. Bank of New York v. Pima County*, 200 Ariz. 199, 204,  25 P.3d 1, 6 (Ariz.App. 2001).

It is undisputed that the Claimant worked for the Debtors from mid-1986 to early 1992.    *See* Claim No. 2281.    Moreover, the Claimant, himself, states in numerous pleadings and accompanying affidavits that he,

> questioned and complained to [Claimant's] supervisor, Ken Porter on several occasions regarding the chemicals we were using, I was threatened either directly or indirectly that I would lose my job if I raised any questions about **safety concerns or medical problems that I was experiencing at the time.**

Exhibit A to Claimant's Sur-Response; *see also* Exhibit A to Claimant's MSJ; Response, ¶ 18; Exhibit 5 to Response.    In addition, the Claimant states that he saw two doctors in 1991 that treated him while he was working for the Debtors.    Exhibit A, Interrogatory No. 8; Claimant's Answer to Interrogatory No. 8.    The Claimant also submits a letter from an alleged customer of the Debtors as support for his Claim that the Claimant was allegedly exposed to hazardous materials.    *See* Exhibit A to Response.    This letter was sent to the Claimant on November 1,

1995. Thus, pursuant to the Claimant's own evidence and testimony, the Claimant was aware of his alleged "injuries" and the relationship of these alleged injuries to the Debtors' workplace during his employment with the Debtors.

Even if all of the facts are viewed in the light most favorable to the Claimant and it is assumed that these alleged incidents where the Claimant allegedly contacted his supervisor only occurred in the last year of the Claimant's employment with the Debtor (1992), then the Claimant was compelled to take legal action by sometime in 1994. Moreover, even if this Court determines that the Claimant was not aware of his injuries and the alleged cause of such injuries until the Claimant received the letter from Mr. Nelson in 1995 (putting aside the overwhelming evidence that the Claimant was actually aware of the cause of such alleged injuries at a much earlier date), then the Claimant would have been compelled to take legal action by 1997. It is undisputed, however, that the Claimant took no such action by 1994 or 1997 and indeed **never** filed a cause of action against the Debtors. *See* Exhibit A, Debtors' Interrogatory No. 25; Claimant's Production and Answers, Answer to Interrogatory No. 25. The only action the Claimant took was to file Claim No. 2281 in the Debtors' bankruptcy case in October of 2002, long after the applicable statute of limitations had expired. Consequently, the Claimant's Claims based upon alleged personal injuries are now barred.[4]

---

[4]    The Claimant asserts in his affidavits and pleadings that in early 2002 he "discovered" that some of the materials used while working for the Debtors are considered carcinogenic and caused his various problems. See Affidavit attached to Claim No. 2281; Response, p. 9; Claimant's Production and Answers, Answer to Interrogatory No. 7. The Claimant, however, has produced no evidence of this discovery other than his own assertions. Most significantly, he has produced no physician reports, test results, X-rays, or other medical diagnosis or evidence of any medical condition or any scientific materials that support his "discovery" in 2002 of the relationship between his alleged harm/injury and the Debtors. Rather, all evidence produced by the Claimant supports the position that the Claimant knew about the connection between any alleged injuries and the Debtors in 1991-1992, or at the latest, 1995. Therefore, it cannot be seriously maintained that a genuine issue of dispute exists such that summary judgment is inappropriate at this time. *See Celotex Corp. v. Catrett,* 477 U.S. at 322. (Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

Lastly, despite the Claimant's contentions to the contrary, the doctrine of adverse domination is inapplicable to the present circumstances. The doctrine of adverse domination is an equitable doctrine that tolls the statute of limitations for claims by a corporation against its officers and directors while the corporation is controlled by those wrongdoing officers or directors. *See Resolution Trust Corp. v. Blasdell*, 930 F.Supp. 417, 429 (D.Ariz. 1994); *Resolution Trust Corp. v. Grant*, 901 P.2d 807 (Okla. 1995). This doctrine is not applicable to the Claimant as he is obviously not a corporation and has not brought this Claim on behalf of a corporation. Thus, no tolling of the applicable two year statute of limitations can be established.

As a result thereof, Claim No. 2281 is barred by the applicable statute of limitations to the extent it is based upon alleged personal injuries and such claim should be disallowed and expunged as to the Debtors in these chapter 11 cases.

## E.    The Claimant Failed to Properly Assert a Cause of Action under the Fourteenth Amendment.

The Claimant fails to allege a proper cause of action based upon the Fourteenth Amendment of the Constitution because no state action was asserted or could be asserted. *Dezell v. Day Island Yacht Club*, 796 F.2d 324, 326 (9th Cir. 1986) (equal protection); *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948) (due process). A plaintiff must generally show that the alleged deprivation was committed by a person acting under color of state law. *See U.S. v. Price*, 383 U.S. 787, 811, 86 S.Ct. 1152, 16 L.Ed. 267 (1966). Conversely, purely private conduct is not within the reach of the law. *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Perkins v. Londonderry Basketball Club*, 196 F.3d 13, 18 (1st Cir. 1999). Private parties can be held to the requirements of the Fourteenth Amendment only if the plaintiff shows that "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action

of the latter may be fairly treated as that of the State itself." *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). The stated purpose of this requirement is to guaranty that constitutional standards are applied only when it can be said that the state is responsible for the precise conduct of which the plaintiff is complaining. *Id.*

In cases that do not involve direct "state action," courts have deemed a private entity a "state" actor if:

> (1) it assumes a traditional public function when it undertakes to perform the challenged conduct, or
>
> (2) an elaborate financial or regulatory nexus ties the challenged conduct to the State, or
>
> (3) a symbiotic relationship exists between the private entity and the State.

*Perkins v. Londonderry*, 196 F.3d at 18.

The Claimant asserts that the Debtors' obligations to comply with EPCRA and OSHA deem the Debtors a "state" actor and, thus, under a duty to comply with the Fourteenth Amendment. The Debtors, however, cannot be held to be a state actor simply because they were subject to state and federal regulations. The overwhelming case law provides that "extensive regulation, without more, cannot establish the necessary nexus" between the state and the Debtors. *Id.* at 20. *See also Blum*, 457 U.S. at 1004; *San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.*, 483 U.S. 522, 546, 107 S.Ct. 2971, 97 L.Ed. 427 (1987).

Therefore, the Debtors cannot be shown to be acting as the state and held to the requirements of the Fourteenth Amendment. Summary judgment must be granted as to Claim No. 2281 as the Claims fail to meet the "state action" requirement of the Fourteenth Amendment.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter an order denying the Claimant's motion for summary judgment and granting the Debtors' cross-motion for summary judgment..

Dated: November 21, 2005

KIRKLAND & ELLIS LLP
James W. Kapp III
Janet S. Baer
Rachel R. Schulman
200 East Randolph Drive
Chicago, IL 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES
& WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
James O'Neill (Bar No. 4042)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:   (302) 652-4400

Co-Counsel for Debtors and Debtors in Possession

17