## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| **Debtors.** | § | |
| | § | |

### FEE AUDITOR'S AMENDED FINAL REPORT REGARDING
### FEE APPLICATION OF KIRKLAND & ELLIS
### FOR THE SEVENTEENTH INTERIM PERIOD

This is the amended final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Fee Application of Kirkland & Ellis for the Seventeenth Interim Period</u>.

### BACKGROUND

1.      Kirkland & Ellis was retained as counsel to the Debtors.  In the Application, Kirkland & Ellis seeks approval of fees totaling $2,895,797.50 and costs totaling $143,582.75 for its services from April 1, 2005, through June 30, 2005.

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the

United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We served on K&E an initial report based on our review, and received a response from K&E, portions of which response are quoted herein.  After the filing of our original final report, we discovered  a misinterpretation of an expense entry in paragraph 5, below, which caused us to file this amended final report.

## DISCUSSION

3.      In our initial report, we noted five conferences attended by multiple professionals. (See Exhibit A.)  We asked K&E to examine the exhibit and in each instance to explain the need for each professional's presence and the particular area of expertise each brought to the meeting.  K&E's response is provided as Response Exhibit 1.  We appreciate the response and accept it for most of the cited instances.  However, we believe the response regarding the April 4 conference fails to adequately justify Barak Cohen's ($325.00 per hour) presence for 3.5 hours.  Thus we recommend a reduction of $1,137.50 in fees.

4.      We noted four "training" entries totaling 7.5 hours for fees of $2,057.50.  As training is normally a part of firm overhead, we asked the firm to explain why the training entries listed below should be viewed as compensable.

| 5/18/05 | DJH | 3.00 | ...attend Stratify administrator training (1.5). |
| 5/19/05 | TDS | 6.50 | ...attend Stratify administrator training (2.0) |
| 5/19/05 | WBJ | 7.30 | ...attend stratify training (2.0). |
| 5/23/05 | TDM | 3.00 | ...attend Stratify conference with C. Chiou (1.0)... |
| 5/23/05 | CCC | 3.40 | ...conference with T. Mace re same (1.0)... |

K&E's response is provided as Response Exhibit 2.  We appreciate the explanation of the process

and offer no objection to these fees.

5.    We noted one meal entry totaling $1,051.88 that may be excessive.  We recommend

reasonable ceilings of $15 per person for breakfast, $25 per person for lunch and $50 per person for

dinner. We asked K&E to explain why this entry should not be considered excessive.

| 4/13/05 | 1,051.88 | FESTIVE FOODS - Working Meals/K&E and Others LUNCH FOR 25 PEOPLE W/LARRY URGENSON AND TYLER MACE. MEETING HELD IN 12SW |

K&E responded as follows:

> The Initial Report questions whether the cost of a working meal on April 13, 2005 was excessive.  As previously explained, K&E hosted a joint defense conference on April 12 and 13, 2005.  K&E opted for a working breakfast and lunch provided in K&E's conference room that would allow the conference to continue uninterrupted. This working breakfast and lunch enabled the defense attorneys to be more efficient during the time billed to the client.  The $1,051.88 meal represents the cost for food and beverages for both breakfast and lunch for approximately 25 people.  The average cost-per-person for both meals together was approximately $42.00, which is reasonable, given that the cost represents the cost of food, delivery, set-up, and clean-up for two meals.  As such, K&E believes that these charges are appropriate and reasonable.

We appreciate the response, but maintain that the suggested cost ceilings are reasonable.  Our

recommended cost for both breakfast and lunch is $40.00, which, multiplied by 25 people, is

$1,000.00.  We thus recommend a reduction of $51.88 in expenses.

6.    We noted two hotel entries that appear excessive.  The entries are provided below.

| 6/13/05 | 455.87 | William Jacabson, Hotel, New York, NY, 06/13/05, (Meeting) |
| 6/13/05 | 455.87 | Barak Cohen, Hotel, New York, NY, 06/13/05, (Client Meeting) |

We recommend a reasonable ceiling of $350 per night plus tax for hotel stays in New York.  We

asked K&E to provide the name of the hotel, the daily room rate, applicable taxes and any other

charges associated with these entries.  K&E responded as follows:

The Initial Report questions whether the cost of two individuals' hotel stay of $455.87 each on June 13, 2005 was excessive. Messrs. Cohen and Jacobson stayed at the W Hotel in New York City. The daily room rate was $399.00 with applicable taxes of $56.87 (room tax of $19.95, state tax of $33.42, occupancy/tourism tax of $2.00, and NYS Javits Center Tax of $1.50). The hotel reservations were made at the last minute when a witness unexpectedly made himself available for an interview. The location was picked to accommodate the witness and it was not possible on such short notice to obtain a better room rate in a convenient location. Given the time demands of these bankruptcy cases, it would be have been detrimental to reschedule the conference. As such, K&E believes that these charges are appropriate and reasonable.

We appreciate the explanation, and under the exigent nature of the circumstances, we have no objection to these charges.

## CONCLUSION

7.      Thus we recommend approval of fees totaling $2,894,660.00 ($2,895,797.50 minus $1,137.50) and costs totaling $143,530.87 ($143,582.75 minus $51.88) for K&E's services from April 1, 2005, through June 30, 2005.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
      Warren H. Smith
      Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 1275
Dallas, Texas 75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 22nd day of November, 2005.

Warren H. Smith

**SERVICE LIST**
<u>Notice Parties</u>

**The Applicant**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

**The Debtors**
David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**
Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**
Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**
Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 141
Wilmington, DE 19801

**United States Trustee**
Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

Exhibit A

1.      On April 26, 2005, four (4) firm members (two partners, two associates) attended a conference.  The total time spent including any preparation time was 5.50 hours for a total fee of $2,834.00.

| 04/26/05 | JSB | 3.50 | ..........; conference with J. Donley, S. Blatnick and R. Finke re PD discovery, estimation issues and Speights claims (1.5). |
| 04/26/05 | SFB | 6.40 | ..........; prepare for and attend conference with J. Donley re same (.9);.......... |
| 04/26/05 | SB | 10.00 | ..........; prepare for and attend conference with J. Baer, J. Friedland, J. Donley and R. Finke re same (1.7);.......... |
| 04/26/05 | JD | 6.80 | .............; conference with J. Baer, S. Blatnick and J. Friedland re same and conference with R. Finke for part of meeting (1.4). |

2.      On April 4, 2005, seven (7) firm members (three partners and four associates) attended a conference.  The total time spent including any preparation time was 35.40 hours for a total fee of $13,006.50.

| 04/01/05 | WBJ | 3.50 | ..........; prepare for 4/4/05 conference re legal research issues (1.0);.......... |
| 04/03/05 | CCC | 4.70 | ..........; prepare for conference on April 4th with R. Senftleben, L. Urgenson, W. Jacobson and T. Mace (1.6). |
| 04/03/05 | WBJ | 5.10 | ............; prepare for 4/4/05 conference re legal research progress (2.0). |
| 04/03/05 | MEG | 3.00 | Revise outline for conference with other defense counsel. |
| 04/04/05 | CCC | 8.30 | ..........; prepare for and attend conference with L. Urgenson, R. Senftleben, M. Grummer, W. Jacobson, T. Mace, J. Stirgman, B. Cohen and J. Cowley re update on legal research and case management issues (3.0);............. |
| 04/04/05 | JHC | 5.00 | Prepare for and attend conference with client, L. Urgenson, W. Jacobson, T. Mace, B. Cohen, C. Chiou and others re preparation for client conference (4.0);................ |

| 04/04/05 | KKM | 10.00 | .............; prepare for and attend conference with M. Grummer, W. Jacobson and L. Urgenson (7.0). |
|---|---|---|---|
| 04/04/05 | BC | 6.50 | Attend conference with L. Urgenson, T. Mace, C. Chiou and J. Cowley re legal research (3.5);............. |
| 04/04/05 | WBJ | 10.70 | Prepare for and attend conference re legal research (6.0);............. |
| 04/04/05 | MEG | 7.20 | ..........; conference with trial team to review potential motions (1.8);........... |
| 04/04/05 | LAU | 3.80 | ..........; further conference with R. Senftleben, W. Jacobson, T. Mace, M. Grummer, C. Chiou, B. Cohen, J. Cowley re same (2.5);................. |

3.    On April 12 and 13, 2005, five firm members (three partners and two associates) attended a conference.  The total time spent including any preparation time was 101.20 hours for a total fee of $41,752.00.

| 04/06/05 | CCC | 9.80 | .............; draft and revise agendas for Joint Defense meetings of April 12th and 13th (.4);............. |
|---|---|---|---|
| 04/07/05 | CCC | 6.40 | Revise agendas for Joint Defense meetings on April 12th and 13th (.4);.............; prepare presentation of legal research at joint defense conference on April 12rh and 13th (.7); conference with J. Cowley re same (.7);............... |
| 04/08/05 | TDM | 9.50 | .............; prepare for joint defense meeting (1.5). |
| 04/08/05 | CCC | 8.50 | ...........; prepare presentation of legal research at joint defense conference on April 12th and 13th (2.5);............... |
| 04/11/05 | TDM | 11.00 | ...........; prepare for joint defense meeting (3.0);............. |
| 04/11/05 | WBJ | 12.20 | .............; prepare for joint defense meeting (5.0);............. |
| 04/11/05 | MEG | 6.10 | ...........; prepare outline for joint defense counsel meeting and do related case law research (4.9). |
| 04/12/05 | TDM | 13.80 | Attend joint defense conferences. |
| 04/12/05 | CCC | 10.00 | Finalize outline and documents for use in factual presentation |

<table>
<tr><td></td><td></td><td></td><td>during joint defense conference (1.1);...............; prepare for joint defense conference (conference with counsel for individual defendants) (2.2);.............</td></tr>
<tr><td>04/12/05</td><td>WBJ</td><td>13.00</td><td>Prepare for and attend conferences with defense counsel and Grace in-house lawyers re various issues in case,</td></tr>
<tr><td>04/12/05</td><td>MEG</td><td>4.30</td><td>Prepare for ad participate in conference of joint defense counsel (3.3);.................</td></tr>
<tr><td>04/12/05</td><td>LAU</td><td>10.30</td><td>Review documents in preparation of JDA conference (3.0); prepare for and attend conferences with client and JDA members re case status and strategy (7.3).</td></tr>
<tr><td>04/13/05</td><td>TDM</td><td>10.00</td><td>Attend joint defense conference (8.5); prepare with C. Chiou re discovery and attorney review (1.5).</td></tr>
<tr><td>04/13/05</td><td>CCC</td><td>8.90</td><td>Prepare for and participate in joint defense conference (3.0); prepare for and attend conference with R. Senftleben, D. Siegel, L. Urgenson, W. Jacobson and T. Mace (2.8);..............</td></tr>
<tr><td>04/13/05</td><td>WBJ</td><td>11.20</td><td>Prepare for and attend conference with Grace counsel and defense attorneys re various issues in case.</td></tr>
<tr><td>04/13/05</td><td>MEG</td><td>5.60</td><td>.............; prepare materials re counts for circulation at joint defense counsel conference (1.3); attend joint defense counsel conference (1.8);.................</td></tr>
<tr><td>04/13/05</td><td>LAU</td><td>9.80</td><td>Review documents in preparation of JDA conference (3.3);..........; multiple conferences with client re case status and strategy and preparation for same (2.0); extended conference with JDA members re same (2.0); further conference with D. Siegel, W. Jacobson, T. Mace (part) and C. Chiou re case status and strategy (1.0);................</td></tr>
</table>

4.   On May 6, 2005, five partners attended the same conference.  Total time involved was 4.8 hours for fees of $2,754.50.

<table>
<tr><td>5/6/05</td><td>JF</td><td>14.90</td><td>...conference with D. Bernick re PD issues (1.3)...</td></tr>
<tr><td>5/6/05</td><td>JSB</td><td>5.30</td><td>...confer with D. Bernick, J. Donley and E. Leibenstein re PD estimation (1.5)...</td></tr>
</table>

| 5/6/05 | JD | 3.70 | ...conference with D. Bernick, J. Baer, E. Leibenstein, J. Friedland re PD expert work (1.0). |
| 5/6/05 | EL | 5.50 | ...conference with D. Bernick, J. Donley, J. Baer, J. Friedland re property damage claims (1.0)... |

5.   On May 19, three partners and an associate attended the same conference.  Total time involved including preparation was 26 hours for fees of $14,022.50.

| 5/19/05 | JSB | 6.70 | Attend conference with R. Finke, D. Cameron, J. Donley, J. Friedland and S. Bianca re PD estimation and Gateway objections (6.5)... |
| 5/19/05 | SFB | 6.80 | ...conference with R. Finke, D. Cameron, J. Donley, J. Baer and J. Friedland re PD gateway objection/estimation issues (6.0)... |
| 5/19/05 | JD | 8.80 | Prepare for client meeting, studying and outlining PD issues (2.0)...conference with R. Finke, D. Cameron and team PD estimation, Gateway objections and legal strategy (6.0). |
| 5/19/05 | EL | 6.50 | Meeting with client, J. Donley and J. Baer re property damage claims (5.5)... |

Response Exhibit 1

Attendance at Conferences (¶ 3)

The Initial Report requests greater explanation concerning multiple professionals' attendance at (1) an April 26, 2005 conference; (2) an April 4, 2005 conference; (3) an April 12-13, 2005 conference; (4) a May 6, 2005 conference; and (5) a May 19, 2005 conference. The following explains the need for each professional's presence and the particular area of expertise each brought to the conference. K&E made the conscious decision that it was more advantageous to have multiple professionals participate in each conference, rather than relying on information to "flow down" after the conference had concluded.


April 26, 2005 Conference

The April 26, 2005 conference was an in-person conference among K&E attorneys necessary to discuss the estimation of asbestos property damage (PD) claims, specifically the claims filed by Speights & Runyan, and to develop an estimation roadmap. I (JSB) was in attendance as I am the restructuring partner in charge of the overall day-to-day management of these Chapter 11 cases and PD issues in particular. Additionally, my participation was necessary given my lengthy involvement in these cases and history regarding PD issues. John Donley (JD) was in attendance as the litigation partner in charge of implementing and coordinating the PD objections and estimation strategy. Samuel Blatnick (SB) was in attendance as the litigation associate primarily responsible for issues relating to the Speights' claims. Jonathan Friedland (JF) and Salvatore F. Bianca (SFB) were in attendance as they are the restructuring partner and senior associate, respectively, in charge of overseeing the PD claims review and analysis process, developing the objection database, and conducting necessary legal research.


April 4, 2005 Conference

The April 4, 2005 conference was an in-person conference among K&E attorneys and the client necessary to discuss legal research and strategic decisions relating to the criminal indictments. The time inquiries in question in the Initial Report relate to preparation time on April 1 and April 3 and the conference itself on April 4. Laurence A. Urgenson (LAU) was in attendance as he is the senior litigation partner on the matter and ultimately responsible for all of Grace's criminal defense efforts, rendering his participating at the conference critical. William B. Jacobson (WBJ) is a litigation partner experienced in criminal matters who is responsible for managing on a day-to-day basis the legal strategy, motions practices, and factual development of Grace's defense. Laurence Urgenson and William Jacobson held the conference to update the client (Rick Senftleben) about the areas that K&E was investigating, share progress to date, and discuss certain strategic decisions based on K&E's findings. Christopher C. Chiou (CCC), a junior litigation associate on the case responsible for many of the areas of legal research and specific factual development, and Jason H. Cowley (JHC), a litigation associate, were in attendance for part of the conference to discuss their

legal research findings (further information is attorney-client privileged).  Barak Cohen (BC), a litigation associate, was brought into the case at the time of the conference and attended part of the conference in order to be efficiently brought up to speed as to the issues in the case and progress to date.  Mark Grummer (MEG), an environmental partner, and Katherine Kirwan Moore (KKM), an environmental associate, were in attendance to discuss the Clean Air Act counts of the indictment and their legal research findings.

### April 12-13, 2005 Conference

The April 12-13, 2005 conference was a K&E hosted in-person conference of 25 professionals in Washington, D.C., for all eight defendants to discuss all aspects of the criminal defense.  The time inquiries in question in the Initial Report relate to preparation time on April 6, April 7, April 8, April 11, and the conference itself on April 12 and April 13.  Laurence A. Urgenson (LAU) was in attendance as he is the senior litigation partner on the matter and ultimately responsible for all of Grace's criminal defense efforts, rendering his participating at the conference critical.  William B. Jacobson (WBJ) is a litigation partner experienced in criminal matters who is responsible for managing the legal strategy, motions practices, and factual development of Grace's defense.  Tyler D. Mace (TDM) was in attendance as he is the lead litigation associate on the criminal matter responsible for the coordination of discovery efforts, including document review and witness interviews, and the coordination of defense efforts with the individual defendants.  Christopher C. Chiou (CCC) was in attendance as he is a junior associate on the case responsible for many areas of legal research and specific factual development.  Mark E. Grummer (MEG), an environmental partner, was in attendance for part of the conference as he is responsible for the legal arguments and motions regarding environmental issues.

### May 6, 2005 Conference

The May 6, 2005 conference was a short in-person conference among K&E attorneys involved in the asbestos PD estimation process to discuss how to approach the PD claims and internal memoranda regarding potential objections to asbestos PD claims.  David M. Bernick (DMB) was in attendance as he is the lead litigation partner in these Chapter 11 cases.  I (JSB) was in attendance as the restructuring partner in charge of the overall day-to-day management of these Chapter 11 cases and PD issues in particular.  John Donley (JD) was in attendance as he is the litigation partner in charge of implementing and coordinating the PD objections and estimation strategy. Elli Leibenstein's (EL) participation was necessary as he is the litigation partner responsible for addressing certain expert and factual development issues regarding the PD objections and estimation strategy.  Jonathan Friedland (JF) was in attendance as he is the restructuring partner in charge of overseeing the PD claims review and analysis process, developing the objection database, and conducting necessary legal research.

### May 19, 2005 Conference

The May 19, 2005 conference was an in-person conference necessary to coordinate efforts between the Debtors, Reed Smith (Debtors' traditional PD trial counsel) and the K&E attorneys working in these Chapter 11 cases.  The K&E attorneys responsible for PD matters met with the Debtors' in-house counsel (Richard Finke) and Douglas Cameron, a partner at Reed Smith to discuss the overall strategy underlying the PD claims objection process and estimation, and to exchange and coordinate views and approaches.  I (JSB) was in attendance as I am the restructuring partner in charge of the overall day-to-day management of these Chapter 11 cases and PD issues in particular.  Elli Leibenstein's (EL) participation was necessary as he is the litigation partner responsible for addressing certain expert and factual development issues regarding the PD objections and estimation strategy.  Jonathan Friedland (JF) and Salvatore F. Bianca (SFB) were in attendance as they are the restructuring partner and senior associate, respectively, in charge of overseeing the PD claims review and analysis process, developing the objection database, and conducting necessary legal research.

Response Exhibit 2

Training Entries (¶ 4)

The Initial Report requests greater explanation concerning time billed for "training" sessions for Stratify. Stratify is the online document repository that was purchased for shared use by each of the criminal defendants in the criminal investigation. Stratify is not a system otherwise used by K&E. The document repository established with Stratify contains all of the 4 million documents produced by the government and creates considerable efficiencies in the document review process by allowing each firm to benefit from the review of these materials. The following three individuals billed between 1.5 and 2.0 hours with regard to this training: Donna J. Hatcher (DJH), a litigation support coordinator, Terrell D. Stansbury (TDS), a lead litigation legal assistant for the Grace case, and William B. Jacobson (WBJ), a litigation partner for the Grace case responsible for managing the legal strategy, motions practices, and factual development of Grace's defense. The hours each K&E personnel spent training on the Stratify system are a necessary part of Kirkland's representation of Grace and administration of the joint defense document review. K&E professionals had not used Stratify prior to this case and would not otherwise be using the system. Training was essential to use the system efficiently for the Grace case.

The Stratify conference held on May 23, 2005 by Christopher C. Chiou (CCC) and Tyler D. Mace (TDM) was not a "training" session. Messrs. Chiou and Mace hosted the conference for the entire joint defense team in order to discuss the implementation and utilization of the Stratify system by the other seven law firms that are part of the joint defense team.