**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S AMENDED FINAL REPORT REGARDING**
**FEE APPLICATION OF BILZIN SUMBERG DUNN BAENA**
**PRICE & AXELROD LLP FOR THE SEVENTEENTH INTERIM PERIOD**

This is the amended final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Fee Application of Bilzin Sumberg Dunn Baena Price & Axelrod LLP for the Seventeenth Interim Period</u>.

**BACKGROUND**

1.  Bilzin Sumberg Dunn Baena Price & Axelrod LLP ("Bilzin") was retained as counsel to the Official Committee of Asbestos Property Damage Claimants. In the Application, Bilzin seeks approval of fees totaling $460,309.85 and costs totaling $23,639.30 for its services from April 1, 2005, through June 30, 2005.

2.  In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued

January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on Bilzin an initial report based on our review, and received a response from Bilzin, portions of which response are quoted herein. After the filing of our original final report, we received new information from Bilzin which caused us to change our recommendation in paragraph 5, below.

## DISCUSSION

3. In our initial report, we noted that on April 28, 2005, four firm members participated in a committee meeting. The total time spent including any preparation time was 3.60 hours for a total fee of $1,354.50. Those entries are provided below.

| | | | | |
|---|---|---|---|---|
| 04/28/05 | SLB | 1.10 | 632.50 | Prepare for and attend committee meeting (1.1). |
| 04/28/05 | JMS | 0.90 | 270.00 | Email regarding committee call (.1); committee call (.8). |
| 04/28/05 | JCM | 0.70 | 182.00 | Conference call with PD Committee. |
| 04/28/05 | MIK | 0.90 | 270.00 | Grace committee call |

We asked Bilzin to explain why this meeting required the participation of four firm members. Bilzin responded as follows:

> PD Committee calls, such as the one highlighted by the Fee Examiner, inevitably cover a wide array of matters, including the ongoing estimations of asbestos personal injury and property damage claims; recommendations in respect of pending motions, adversary proceedings and other matters; reorganization issues; the reporting of the Debtors' financial status; and a host of other issues that counsel to official creditors' committees typically address in large and complex bankruptcy matters, such as Bilzin Sumberg in these chapter 11 cases. Each of the Bilzin Sumberg participants on the PD Committee call is integral to the ongoing plethora of services provided by Bilzin Sumberg to the PD Committee.

> With respect to the particular call in question, as the partner in charge of supervising all aspects of these cases, Scott Baena's (SLB) participation on the PD Committee call was necessary. In addition, Jay Sakalo (JMS), James Moon (JCM) and Matthew Kramer (MIK) are associates who are each responsible for distinct facets of these complex cases that are addressed on PD Committee calls. Their input and participation on PD Committee calls are vital for the PD Committee to be fully informed of the many moving pieces of these cases and, conversely, for each of them to take direction from the PD Committee in respect of the areas that they are most critically involved. In respect of the particular call in question, Mr. Sakalo provided the PD Committee with a report on an omnibus hearing that he attended. Further, discreet estimation issues were discussed of which Mr. Moon and Mr. Kramer researched. As these Bilzin Sumberg associates are responsible for distinct aspects of these cases, which are covered on PD Committee calls (including the call in question), their participation on such calls, including the subject call, is necessary.

We appreciate the response and accept this explanation, and thus we have no objection to these fees.

4. We noted that during the application period JCM and ASD spent a total of 102.60 hours for fees of $30,858.00 on research relating to state specific statutes of limitation. (See Exhibit A). We asked Bilzin to explain why this topic required so many hours of research and its ultimate application to the resolution of the case. Bilzin responded as follows:

> The Fee Auditor notes that during the application period JCM and ASD spent a total of 102.6 hours for fees on research relating to state specific statues of limitation and requests an explanation as to the need for so many hours of research and how it ultimately applies to the resolution of the case.

> The estimation of property damage claims comprises two phases. Subject to a ruling by the Court that it intends to go forward with the first phase of the estimation, the first phase concerns the issues of whether property damage claimants were put on constructive notice of asbestos hazards such that their claims are barred by applicable statutes of limitation (as argued by the Debtors and disputed by the PD Committee) and the appropriate methodology by which asbestos is to be measured in a building (air versus dust or other sampling methodologies). The second phase of the estimation concerns a merits-based estimation of property damage claims.

> With respect to the constructive notice or statutes of limitation issue, the Debtors objected to almost all of the 4000 property damage claims on constructive notice grounds. As you know, each state possesses its own unique statute of limitations. Further, briefs in respect of the statutes of limitation/constructive notice issue were

> due in October, and a hearing on this issue will occur in mid-November. James Moon (JCM) and Allyn Danzeisen (ASD) are primarily involved in the statutes of limitation research. The research was necessary given the importance of this area to the estimation and the time and manner in which the issue will be heard by the Court. Because the research in question is of a highly sensitive nature, Bilzin Sumberg is willing to discuss any further concern of the Fee Examiner on the condition of confidentiality.

We appreciate the response and have no objection to these fees.

5.  We noted that on April 12 and 13, 2005, five firm members attended a meeting in Washington, D.C. The total time spent including any preparation and non-working travel time was 112.40 hours for a total fee of $30,935.25. (See Exhibit B) We asked the firm to explain why this meeting required the attendance of five firm members. Bilzin responded as follows:

> The Fee Auditor requests an explanation regarding the attendance of five firm members at a meeting is Washington, D.C. on April 12th and 13th.
>
> The estimation of property damage claims is the most critical aspect of the PD Committee's function at the present time. The task of estimating over 4000 filed property damage claims is unprecedented and necessitates a full-time team devoted to the host of issues that must be addressed for the PD Committee to properly estimate the claims. As an example of this task's complexity, the Debtors seek to reduce their liability owing to these 4000 claimants based on such defenses as (a) constructive notice; (b) actual notice; (c) assumption of risk; (d) lack of hazard of Debtors' asbestos products; and (e) air versus dust sampling. A critical component of the PD Committee's estimation of property damage claims is the utilization of their estimation expert, LECG. LECG's professionals who are providing services to the PD Committee are located in Washington, D.C. It was sufficiently more cost effective for the Bilzin Sumberg participants to travel to Washington, D.C. to discuss in depth the estimation process with LECG's team than for those individuals to travel to Bilzin Sumberg. Logistical issues involving computer hardware, etc., also necessitated Bilzin Sumberg participants to travel to Washington, D.C. As set forth above, since Scott Baena (SLB) is the partner in charge of supervising all aspects of these cases, his participation at the meeting was essential. In addition, Jay Sakalo (JMS), James Moon (JCM), Matthew Kramer (MIK) and Allyn Danzeisen (AD) are associates who are each responsible for distinct facets of the complex estimation process. Their input and participation at the meeting was vital because each will be most heavily involved with facilitating LECG's analyses so that LECG may most effectively estimate the amount of the Debtors' liability to property damage

claimants.  Ms. Danzeisen was in attendance to address certain aspects of the PD
claims database, as she has been the attorney with primary responsibility related to
the PD claims database that exceeds over 4000 claims.  Messrs. Kramer and Moon
were in attendance to address discreet legal issues that the PD Committee's experts
had requested additional background information about.  As these Bilzin Sumberg
associates are responsible for critical, yet distinct aspects of the estimation, their
participation at the meeting was necessary.

> As we have advised the Fee Auditor in the past, Bilzin makes every effort to only
> staff meetings with necessary participants and to utilize smaller or one-on-one
> conferences to disseminate information and tasks/responsibilities.  However, given
> the critical nature of the PD Estimation and the short time frames governing the PD
> Estimation, Bilzin submits that the attendance of each of the professionals was
> necessary      and warranted in this instance.

After the filing of our original final report, we received further information from Bilzen to the effect that both Moon and Kramer were both very involved in the subject matter of this meeting, and had individual research projects that were relevant to this meeting, so the presence of both was necessary at this meeting.  We appreciate this information, and have no objection to these fees.

6. We noted that on April 22 and 25, 2005, SLB charged for the exact same tasks.  The entries were exact in terms of time spent per task as well.  The total time spent was 3.10 hours for fees of $1,782.50.  The entries are provided below.

| 04/22/05 | SLB | 3.10 | 1782.50 | Conference with J. Baer regarding discovery issues (.6); review SAC deposition transcripts while en route to Miami (4.5). |
|---|---|---|---|---|
| 04/25/05 | SLB | 3.10 | 1782.50 | Conference with J. Baer regarding discovery issues (.6); review SAC deposition transcripts while en route to Miami (4.5). |

We asked the firm to confirm that this represents an inadvertent duplication.  Bilzin responded as follows:

> The Fee Auditor noted that on April 22nd and April 25th, SLB charged for the exact same tasks.

claimants. Ms. Danzeisen was in attendance to address certain aspects of the PD claims database, as she has been the attorney with primary responsibility related to the PD claims database that exceeds over 4000 claims. Messrs. Kramer and Moon were in attendance to address discreet legal issues that the PD Committee's experts had requested additional background information about. As these Bilzin Sumberg associates are responsible for critical, yet distinct aspects of the estimation, their participation at the meeting was necessary.

As we have advised the Fee Auditor in the past, Bilzin makes every effort to only staff meetings with necessary participants and to utilize smaller or one-on-one conferences to disseminate information and tasks/responsibilities. However, given the critical nature of the PD Estimation and the short time frames governing the PD Estimation, Bilzin submits that the attendance of each of the professionals was necessary      and warranted in this instance.

After the filing of our original final report, we received further information from Bilzen to the effect that both Moon and Kramer were both very involved in the subject matter of this meeting, and had individual research projects that were relevant to this meeting, so the presence of both was necessary at this meeting. We appreciate this information, and have no objection to these fees.

6. We noted that on April 22 and 25, 2005, SLB charged for the exact same tasks. The entries were exact in terms of time spent per task as well. The total time spent was 3.10 hours for fees of $1,782.50. The entries are provided below.

| Date | Atty | Hours | Fees | Description |
|---|---|---|---|---|
| 04/22/05 | SLB | 3.10 | 1782.50 | Conference with J. Baer regarding discovery issues (.6); review SAC deposition transcripts while en route to Miami (4.5). |
| 04/25/05 | SLB | 3.10 | 1782.50 | Conference with J. Baer regarding discovery issues (.6); review SAC deposition transcripts while en route to Miami (4.5). |

We asked the firm to confirm that this represents an inadvertent duplication. Bilzin responded as follows:

> The Fee Auditor noted that on April 22nd and April 25th, SLB charged for the exact same tasks.

SLB's time entry for the subject April 22, 2005 time entry should read, "Email to J. Baer regarding Monday meeting (.2); email from J. Hass and R. Henkin regarding schools class (.2); continue review of SAC discovery matter (3.1)," instead of the duplicate entry inadvertently submitted with the application, for a total of 3.5 hours. Therefore, Applicant agrees to a reduction of $575.00 for fees as the modified time entry is one hour less than the time entry inadvertently submitted with the application.

We appreciate the response and recommend a reduction of $575.00 in fees.

7. Finally, we noted three lodging charges that may be excessive. The entries are provided below.

| Date | Description | Amount |
|---|---|---|
| 04/13/05 | Lodging Travel to Washington DC - VENDOR: Moon, James C; INVOICE#: JCM -04/13/05; DATE: 4/13/05 - Client - 15537 | 411.06 |
| 04/14/05 | Lodging Travel to Washington DC - VENDOR: JAY M. SAKALO; INVOICE#: JMS -04/14/05; DATE: 4/14/05 - Client - 15537 | 824.40 |
| 05/05/05 | Lodging Travel to SC - VENDOR: JAY M. SAKALO; INVOICE#: JMS -05/05/05; DATE: 5/5/05 - Client - 15537 | 331.88 |

For each entry, we asked Bilzin to provide greater detail regarding these lodging charges. Bilzin responded as follows:

Please refer to the following as to the three lodging expenses:

4/13/05 – James C. Moon $411.06 – Lodging at Melrose Hotel (Washington, D.C.) for one night. Room rate $395.00, taxes $52.06

4/14/05 – Jay M. Sakalo $824.40 – Lodging at Sofitel Lafayette Square (Washington, D.C.) for two nights. Room rate $360.00 per night and taxes of $52.20 per night. The charge of $824.40 included $40.15 for food expenses.

5/5/05 – Jay M. Sakalo $331.88 – Lodging at Market Pavilion Hotel (Charleston, S.C.), Room rate $295.00, taxes of $36.88 for one night.

We recommend a reasonable lodging ceiling of $250 per day plus applicable taxes for most cities ($350 for New York and San Francisco). Thus, for the April 13 expense we recommend a reduction

of $145.00; a reduction of $220.00 for the April 14 and expense; and a reduction of $45.00 for the May 5 expense. Thus, we recommend an overall reduction of $410.00 for these lodging expenses.

## CONCLUSION

8. Thus we recommend approval of fees totaling $459,734.85 ($460,309.85 minus $575.00) and costs totaling $23,229.30 ($23,639.30 minus $410.00) for Bilzin's services from April 1, 2005, through June 30, 2005.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: /s/ Warren H. Smith
Warren H. Smith
Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 1275
Dallas, Texas 75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 30th day of November, 2005.

/s/ Warren H. Smith
Warren H. Smith

**FEE AUDITOR'S AMENDED FINAL REPORT** - Page 7
wrg Amended FR Bilzin 17int 4-6.05.wpd

# SERVICE LIST
## Notice Parties

**The Applicant**
Scott L. Baena
Jay M. Sakalo
BILZIN SUMBERG DUNN BAENA
PRICE & AXELROD LLP
2500 First Union Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2385

**The Debtors**
David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**
Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**
Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE  19801

**Official Committee of Equity Holders**
Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**
Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

Exhibit A

| Date | Atty | Hours | Amount | Description |
|---|---|---|---|---|
| 04/04/05 | JCM | 2.60 | 676.00 | Research state specific statutes of limitation |
| 04/05/05 | ASD | 6.10 | 1952.00 | Research regarding state defenses (6.1). |
| 04/05/05 | JCM | 4.30 | 1118.00 | Research state specific statutes of limitation |
| 04/06/05 | JCM | 3.70 | 962.00 | Research state specific statutes of limitation |
| 04/07/05 | ASD | 6.10 | 1952.00 | Continue research of statute of limitation issue (4.7);........... |
| 04/07/05 | JCM | 5.70 | 1482.00 | Research state specific statutes of limitation |
| 04/08/05 | ASD | 7.20 | 2304.00 | ..........; continuing research state defenses (5.8). |
| 04/09/05 | ASD | 3.70 | 1184.00 | Continue research state defenses. |
| 04/09/05 | JCM | 3.00 | 780.00 | Research state specific statutes of limitation |
| 04/10/05 | ASD | 5.20 | 1664.00 | Continue research statute of limitation issues. |
| 04/10/05 | JCM | 2.50 | 650.00 | Research state specific statutes of limitation |
| 04/11/05 | ASD | 9.60 | 3072.00 | ..........; research regarding defenses (2.9);................. |
| 04/11/05 | JCM | 1.90 | 494.00 | Research state specific statutes of limitation |
| 04/11/05 | JCM | 1.70 | 442.00 | Research state specific statutes of limitation |
| 04/14/05 | ASD | 9.60 | 3072.00 | Continue research defenses (5.9);............ |
| 04/14/05 | JCM | 1.50 | 390.00 | Research state specific statutes of limitation |
| 04/15/05 | ASD | 7.90 | 2528.00 | Continue research regarding defenses (6.2);............. |
| 04/18/05 | ASD | 7.80 | 2496.00 | ...........; continue research on state analysis (4.6);............ |
| 04/18/05 | JCM | 3.50 | 910.00 | Research state specific statutes of limitation |
| 04/19/05 | ASD | 10.50 | 3360.00 | ...........; research regarding defenses (1.6);........... |

| Date | Init | Hours | Amount | Description |
|---|---|---|---|---|
| 04/19/05 | JCM | 9.10 | 2366.00 | Research state specific statutes of limitation (1.2);........... |
| 04/20/05 | ASD | 10.10 | 3232.00 | Continue research of state by state analysis (4.9);............ |
| 04/22/05 | JCM | 6.50 | 1690.00 | Research state specific statutes of limitation (1.3);............ |
| 04/25/05 | ASD | 6.70 | 2144.00 | Continue research regarding state by state analysis. |
| 04/26/05 | ASD | 7.10 | 2272.00 | Continue state by state analysis (4.7);............ |
| 04/27/05 | ASD | 6.70 | 2144.00 | Research regarding defenses. |

Exhibit B

| Date | Initials | Hours | Amount | Description |
|---|---|---|---|---|
| 04/07/05 | ASD | 6.10 | 1952.00 | ............; begin preparation for meeting with expert on estimation issue (1.4);................ |
| 04/11/05 | ASD | 9.60 | 3072.00 | .........; prepare for meeting with estimation expert (3.1). |
| 04/11/05 | JMS | 2.40 | 720.00 | Prepare for meeting in DC with experts, including review of agenda, conferences with A. Danseizen and review file issues thereon (1.3);.............. |
| 04/11/05 | MIK | 6.50 | 1950.00 | Review estimation papers (4.5); review estimation case law (1.7); office conference with S. Baena regarding LECG meeting (.3). |
| 04/12/05 | ASD | 5.80 | 1856.00 | Meeting with LECG members regarding estimation. |
| 04/12/05 | ASD | 2.00 | 640.00 | Dinner meeting with LECG regarding estimation. |
| 04/12/05 | ASD | 1.80 | 576.00 | Prepare for presentation to LECG on estimation issues. |
| 04/12/05 | JMS | 10.00 | 3000.00 | Prepare for meeting with LECG en route to Washington (2.5); meeting with LECG (6.5); follow-up meeting with Expert (1.0). |
| 04/12/05 | JCM | 7.80 | 2028.00 | Attend meeting with LECG (5.8); attend dinner with members of LECG (2.0). |
| 04/12/05 | MIK | 7.30 | 2190.00 | Attend LECG meeting regarding estimation (5.8);.............. |
| 04/13/05 | ASD | 6.70 | 2144.00 | Continue prep for presentation to LECG (1.7); presentation and discuss legal aspects of estimation (5.0). |
| 04/13/05 | JMS | 1.40 | 420.00 | Work on outline regarding PD CMO legal issues (1.4). |
| 04/13/05 | JCM | 5.80 | 1508.00 | Review materials related to introduction of Fair Act (.8); presentation on estimation of PD claims (5.0). |

| Date | Initials | Hours | Amount | Description |
|---|---|---|---|---|
| 04/13/05 | MIK | 6.00 | 1800.00 | Attend meeting with LECG regarding estimation (5.0);............ |
| 04/12/05 | ASD | 4.80 | 1536.00 | Travel to D.C. to attend meeting with LECG. |
| 04/12/05 | SLB | 4.80 | 2760.00 | Non-working travel to DC (4.8). |
| 04/12/05 | JCM | 4.80 | 1248.00 | Non-working travel to DC for meeting with LECG (4.8). |
| 04/12/05 | MIK | 2.00 | 600.00 | Travel to meeting with LECG |
| 04/13/05 | ASD | 4.50 | 1440.00 | Non-working travel from D.C. to Miami |
| 04/13/05 | SLB | 5.50 | 3162.50 | Non-working travel to Miami (5.5). |
| 04/13/05 | JCM | 5.00 | 1300.00 | Non-working travel (.5); non-working travel to Miami (4.5). |
| 04/13/05 | MIK | 4.50 | 1350.00 | Travel from meeting with LECG (4.5). |
| 04/14/05 | JMS | 4.50 | 1350.00 | Return to Miami. |
| 04/11/05 | SLB | 0.60 | 345.00 | Conference with "estimation team" regarding preparation for meeting with experts (.4); review proposed agenda and email to Expert regarding 4/12 meeting (.2). |
| 04/12/05 | SLB | 7.00 | 4025.00 | Prepare for and meet with LECG regarding expert analysis (7.0). |