IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W. R. GRACE & CO., et al.,<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 01-1139 (JKF)<br>)<br>) (Jointly Administered)<br>)<br>) Response Deadline: December 2, 2005<br>) Hearing Date: December 19, 2005 at 12:00 p.m.<br>)<br>) Re: Docket No. 11067<br>) |

**OBJECTION OF THE OFFICIAL COMMITTEE OF ASBESTOS
PROPERTY DAMAGE CLAIMANTS TO DEBTORS' NINTH
MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 1121(d)
EXTENDING DEBTORS' EXCLUSIVE PERIODS IN WHICH TO
FILE A CHAPTER 11 PLAN AND SOLICIT VOTES THEREON**

The Official Committee of Asbestos Property Damage Claimants (the "PD Committee") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby submits this objection (the "Objection") to the Debtors' motion (the "Motion") for a ninth extension of the Debtors' exclusive periods (the "Exclusive Periods") to file a plan of reorganization and solicit acceptances thereon. In support of its Objection, the PD Committee respectfully represents as follows:

**PRELIMINARY STATEMENT**

The Debtors have enjoyed the exclusive right to file a plan of reorganization for over four and one-half years. At the end of 2004, faced with the prospect of losing their exclusive right, the Debtors rewarded their asbestos creditors with a patently unconfirmable plan of reorganization (the "Plan"), through which they seek to cram down a cap on recoveries by asbestos claimants in blatant contravention of sections 524(g) and 1129 of the Bankruptcy Code.

The PD Committee, the official committee of asbestos personal injury claimants (the "PI Committee") and the future claimants' representative (the "FCR") each filed an objection to the Debtors' Disclosure Statement in support of the Plan [Dkt. Nos. 7343, 7313 (under seal) & 7315 (redacted), and 7340, respectively], arguing that the Plan could not be confirmed as a matter of law. In the PD Committee's objection, the PD Committee argued that the Plan:[1]

- impermissibly seeks to treat the claims of holders of asbestos property damage claims ("PD Claims") as unimpaired and thus disenfranchise such claimants from the right to vote on the Plan whether under sections 1126 and 1129(a)(7) or 524(g) of the Bankruptcy Code;

- impermissibly seeks to cap the Debtors' liability for PD Claims at an amount *estimated* by the Court despite the requirement of section 524(g) of the Bankruptcy Code that the Debtors must fund the Asbestos Trust (as defined in the Plan) so that it can pay the *liquidated values* of *all* asbestos claims in full;[2] and

- fails to comply with section 524(g)(2)(B)(i)(III), which requires that the Asbestos Trust be entitled to own a majority of the voting shares of each of the Debtors, the parent of the Debtors or a subsidiary of each such Debtor that is also a Debtor.

As a result of the objections to the Plan, the Court deferred consideration of the Disclosure Statement and overarching objections to confirmation of the Plan posited by the PD Committee, PI Committee and FCR in order to first determine the magnitude of the Debtors' overall asbestos liabilities through separate estimations of PD Claims (the "PD Estimation") and asbestos personal injury claims (the "PI Estimation"; and together with the PD Estimation, the

---

[1] The PD Committee's objection is incorporated by reference herein.
[2] As stated by the Court during the November 14, 2005 omnibus hearing, "You know, as long as you're going to give a pot plan, how are you going to convince me that it is feasible that you've got 100 percent that can fund every claim, both current and estimated? It's only an estimate. Whatever I do by way of setting up the numbers that go into this Trust by way of the Debtor's Plan that says it's going to pay 100 percent of its allowed claims, is only an estimate. And if I'm wrong, you still have to pay 100 percent of the claims." See November 14, 2005 Hearing Transcript (Nov. Tr. p.__), pp. 144-145 (emphasis added)

2

"Estimations"), explicitly recognizing that the Estimations would inform <u>any</u> plan of reorganization in these cases, not just the Debtors' Plan.[3]

According to the Debtors, the only hope for reaching confirmation is to continue down the litigation-laden paths they continue to engineer for the Estimations.[4] Thus, the Motion seeks an extension of the Exclusive Period to (a) file a plan of reorganization for an indeterminate amount of time until the ninetieth (90th) day after a final order is issued in the Estimations, and (b) solicit acceptances of a plan of reorganization until sixty (60) days thereafter.

However, even the slightest scrutiny of the Debtors' arguments in favor of extending the Exclusive Periods due to the pendency of the Estimations demonstrates their weakness. After the Estimations are concluded and regardless of their outcome, parties will still be faced with the Debtors' Plan which cannot be confirmed as a matter of law. Even if the Debtors are successful (which the PD Committee thinks is highly unlikely) through the Estimations of achieving a ruling that the aggregate amount of asbestos claims does not exceed the proposed cap in the Plan of $1.483 billion, the Plan's defects will remain. Moreover, if the results of the Estimation produce an aggregate amount of asbestos claims in excess of the proposed cap, we will then be in a position of waiting to see if the Debtors wish to modify their Plan, which to this point they have not seen fit to do.

Under any scenario, the fact of the Estimations cannot justify continuing the Exclusive Periods. Moreover, as demonstrated below, the Debtors cannot meet their burden of establishing

---

[3] Indeed, the Debtors themselves now accept this point. See Motion, ¶5.
[4] During the November 14, 2005 omnibus hearing, the Court correctly recognized the approach taken by the Debtors, to wit: "This is the only case in which the parties are this contentious and it's largely because the Debtor is taking the track where it wants to litigate everything." See Nov. Tr., p. 143.

3

"cause" under section 1121(d) of the Bankruptcy Code. Accordingly, the Motion should be denied.

## BACKGROUND

1. On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. On April 12, 2001, the Office of the United States Trustee appointed the PD Committee, the PI Committee and the official committee of unsecured creditors (the "UCC"). On June 18, 2001, the United States Trustee appointed the Official Committee of Equity Security Holders (the "Equity Committee"). On May 24, 2004, the Court appointed Mr. David T. Austern as the FCR.

3. On or about November 13, 2004, the Debtors filed their initial Plan, which was subsequently amended on or about January 13, 2005, to include, inter alia, the UCC and the Equity Committee as co-proponents of the Plan. On November 14, 2005, the Debtors filed the Motion.

## OBJECTION

A. **The Debtors Have Failed to Establish "Cause" For A Ninth Extension of the Exclusive Periods**

   1. **Legal Standard Governing Extension of Exclusive Periods**

4. Bankruptcy Code Section 1121 provides, in relevant part, as follows:

> (d) [O]n request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and

4

after notice and a hearing, the court may <u>for cause</u> reduce or increase the 120-day period or the 180-day period [Exclusive Periods] referred to in this section.

11 U.S.C. § 1121(d) (emphasis added).[5]

5. It is axiomatic that a debtor bears the burden of affirmatively establishing "cause"[6] to extend exclusivity. See In re Matter of Newark Airport/Hotel Ltd., 156 B.R. 444, 431 (Bankr. D.N.J. 1993), aff'd 155 B.R. 93 (D.N.J. 1993); In re Washington-St. Tammany Elec. Coop., Inc., 97 B.R. 852, 854 (E.D. La. 1989) (citing In re Lake in the Woods, 10 B.R. 338 (Bankr. E.D. Mich. 1981)); In re Ravenna Indus., Inc., 20 B.R. 886 (Bankr. N.D. Ohio 1982); see also In re Curry Corp., 148 B.R. 754, 756 (Bankr. S.D.N.Y. 1992) (finding that a "debtor must make a clear showing of 'cause' to support an extension of the exclusivity period.").

6. Indeed, "[e]xtensions are not to be granted neither routinely nor cavalierly." In re McLean Indus., Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (citing In re Swatara Coal Co., 49 B.R. 898, 899-900 (Bankr. E.D. Pa. 1985)). The transcendent consideration is whether adjustment of exclusivity will facilitate moving the case forward to a fair and equitable resolution." Official Comm. Of Unsecured Creditors v. Henry Mayo Newhall Memo. Hosp. (In re Henry May Newhall Memo. Hosp.), 282 B.R. 444, 453 (B.A.P. 9th Cir. 2002). Moreover, with each successive extension of the exclusive periods, the burden of proof becomes more difficult to satisfy. See In re Dow Corning Corp., 208 B.R. 661, 664 (Bankr. E.D. Mich.

---

[5] As set forth below, pursuant to the recently enacted Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Public Law 109-8, 119 Stat. 23 (the "Reform Act"), Congress eliminated a court's ability to grant indefinite extensions of the exclusive periods to chapter 11 debtors. Revised section 1121(d) applies to chapter 11 cases commenced on or after October 17, 2005.

[6] "Cause" is not defined by the Bankruptcy Code. Courts have traditionally relied on a number of factors, including (i) the size and complexity of the case, (ii) the existence of good faith progress towards reorganization, (iii) whether the debtor has demonstrated reasonable prospects for filing a viable plan and (iv) whether the debtor has made progress in negotiating with creditors. See e.g. In re Dow Corning Corp., 208 B.R. 661, 664 (Bankr. E..D. Mich. 1997).

5

1997)("the Debtor's burden gets heavier with each extension it seeks as well as the longer the period of exclusivity lasts...").

7.  Congress limited exclusivity for good reason. "Congress believed that debtors often delay confirmation of a plan, while creditors want quick confirmation. Therefore, <u>unlimited</u> exclusivity gave a debtor 'undue bargaining leverage,' because it could use the threat of delay to force unfair concessions." <u>Century Glove, Inc. v. First Am. Bank of N.Y.</u>, 860 F.2d 94, 102 (3d Cir. 1988) (<u>citing</u> House Report, 1978 U.S.C.C.A.N. 5787, 6191)(emphasis in original). "Congress allowed a <u>limited</u> period of exclusivity, giving the debtor 'adequate time to negotiate a settlement, without unduly delaying creditors.'" <u>Id.</u> (<u>citing</u> same) (emphasis in original). "The Legislative history counsels a narrow reading of the section [1121]." <u>Id.</u>; <u>see also</u> <u>In re Timbers of Inwood Forest Assoc., Ltd.</u>, 808 F.2d 363, 372 (5th Cir. 1987) (section 1121 of the Bankruptcy Code "represents a congressional acknowledgment that creditors, whose money is invested in the enterprise no less than the debtor's, have a right to a say in the future of that enterprise.") (<u>citing</u> the legislative history of section 1121), <u>aff'd</u> <u>sub nom.</u>, <u>United Sav. Ass'n of Tex. V. Timbers of Inwood Forest Assoc., Ltd.</u>, 484 U.S. 365 (1988). The <u>Timbers</u> court added that bankruptcy courts should not only be "mindful of the legislative goal behind [section] 1121," but also "avoid reinstituting the imbalance between the debtor and its creditors that characterized proceedings under the old Chapter XI." <u>Id.</u> The <u>Timbers</u> court further noted, "Section 1121 was designed, and should be faithfully interpreted, to limit the delay that makes creditors the hostages of Chapter 11 debtors." <u>Id.</u> Terminating a debtor's exclusivity "serves to eliminate the potential harm and disadvantages to creditors and democratizes the reorganization process." <u>In re Kun</u>, 15 B.R. 852, 853 (Bankr. D. Ariz. 1981).

8. Moreover, the Debtors have failed to meet their evidentiary burden in seeking the extension of the Exclusive Periods. "Mere recitations of allegations described by a debtor deemed to constitute cause . . . is insufficient to allow such an extension. . . Section 1121(d) requires that an affirmative showing of cause, supported by evidence, be made by the party seeking the extension. See In re Parker Street Florist & Garden Center, Inc., 31 B.R. 206, 207 (quoting Ravenna Indus., 20 B.R. at 889).

9. If any doubt existed as to Congress' views towards unlimited extensions of exclusivity to debtors, the Reform Act put such questions to rest. Revised section 1121(d) eliminates a court's discretion to extend the exclusive period to file a plan beyond eighteen (18) months from the petition date and to solicit acceptances thereon beyond twenty months from the petition date. See 11 U.S.C. § 1121(d)(2). While revised section 1121(d) does not apply to these cases, the strong public policy behind eliminating indefinite extensions of the exclusive periods very much applies here.

**B.   Size And Complexity Alone Do Not Constitute "Cause"**

10. "Size and complexity alone cannot suffice as 'cause'" to extend exclusivity. In re Public Serv. Co. of N.H., 88 B.R. 521, 537 (Bankr. D. N.H. 1988). If that were so, a debtor in a large and complex case would automatically have a right to plan exclusivity throughout the proceedings, contrary to the rationale of section 1121. Id. Surely this is not the result Congress intended, especially as evidenced by revised section 1121(d).

11. In the legislative history for section 1121, Congress stated, "if an unusually large company were to seek reorganization under Chapter 11, the Court would probably need to extend the time in order to allow the debtor to reach an agreement. If, on the other hand, a

7

debtor delayed in arriving at an agreement, the court could . . . permit creditors to formulate and propose a reorganization plan." H.R. Rep. No. 595, 95th Cong., 1st Sess. 231, 232 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 9191. Legislative history makes it clear that Congress did not intend for all large complex cases to receive automatic extensions of exclusivity. The Reform Act likewise clarifies Congressional intent on eliminating evergreen extensions of exclusivity.

12. Size and complexity must be accompanied by other factors pertinent to the particular debtor to justify extension of plan exclusivity. Public Serv. Co. of N.H., 88 B.R. at 537. The Court may deny an extension of exclusivity where although a company seeking reorganization is unusually large, the debtor has delayed in arriving at an agreement or is attempting to pressure other parties to yield to a position which is necessarily prejudicial. In re Sharon Steel Corp., 78 B.R. 762, 765 (Bankr. W.D. Pa. 1987). The court in Sharon Steel denied the debtor's first request for an extension of exclusivity even though the case was very large and complex stating:

> The leverage accorded to the debtor by the period of exclusivity must give way to legitimate interests of other parties in interest so that progress toward an effective reorganization of the debtor may be enhanced before it is too late. The proceeding must be opened up to substantial and significant input by the creditors in the event they can propose a means (possibly by proposal of a plan of reorganization) which will rescue the debtor from its precarious posture.

Id. at 766.

13. The current Plan is a pure leverage play. Size and complexity are not holding up the confirmation process. The Plan provides for general unsecured creditors to be paid in full and for current equityholders to retain a substantial amount of their equity. What is holding up

8

the case is the Debtors' continued failure to comply with applicable bankruptcy law related to confirmation of a plan of reorganization. As stated, it seeks to deny the holders of PD Claims and other asbestos claimants the right to vote on the Plan, while simultaneously seeking to cap recoveries to asbestos claimants based upon an arbitrary ceiling conjured by the Debtors. The Debtors can no longer hide behind the vagaries of words like "large" and "complex" to receive for the ninth time an extension of the Exclusive Periods.

**C.    The Debtors Have Not Demonstrated a Reasonable Prospect for Filing a Viable Plan**

14.    In these cases, we already have a Plan on file. Almost one year ago, the PD Committee and each of the other asbestos constituents demonstrated why it is unconfirmable on its face. What reaction did that receive from the Debtors? None, as they have continued down the path of litigating each and every possible issue, without a single modification to their Plan in order to address the myriad of legal deficiencies contained therein.[7] Thus, the only possible conclusion that can be drawn is that there is no prospect that the Debtors will file a viable plan of reorganization. This factor clearly favors not extending the Exclusive Periods.

**D.    The Debtors Are Not Prejudiced If Exclusivity Ends**

15.    Moreover, the Debtors will not suffer any prejudice if exclusivity ends. The Debtors may continue on their ill-advised path or propose another plan of reorganization. See In re Mother Hubbard, Inc., 152 B.R. 189, 195 (Bankr. W.D. Mich. 1993). "By denying the extension, the Court does not prejudice the debtors' co-existent right, nor dilute the debtors' duty to file a plan. The other parties are simply allowed to protect their interests by coming forward with alternative plans or motions to dismiss." In re Southwest Oil Co. of Jourdanton, Inc., 84

---

[7]    See Footnote 4, supra.

9

B.R. 448, 454 (Bankr. W.D. Tex. 1987). The risk that while the Debtors are developing their plan, another party may file a plan, is a risk that Congress intended. Id. The fact that the Debtors may wish to prevent creditors from interfering with the Debtors' reorganization and proposal of a plan is not cause within the meaning of section 1121(d). See In re Parker Street Florist & Garden Ctr., Inc., 31 B.R. 206, 207 (Bankr. D. Mass. 1983) (debtor cannot use exclusivity as tactical weapon to pressure creditors to yield to unsatisfactory plan). There is no negative effect on the Debtors from denial of an extension of exclusivity. Id.

16.     In fact, it is beneficial to the Debtors, their estates and all creditors if others are allowed to propose plans, especially under the circumstances present here where the Debtors seek to deny any vote to holders of PD Claims and other asbestos creditors. "The ability of a creditor to compare the debtor's proposals against other possibilities is a powerful tool by which to judge the reasonableness of the proposals." Century Glove, Inc., 860 F.2d at 102; see also In re Mother Hubbard, Inc., 152 B.R. at 195 (stating that the possibility that other parties in interest may file competing plans may motivate the debtors to more earnestly negotiate an acceptable consensual plan).

17.     Here, if the Exclusive Periods are extended for the ninth time, the holders of PD Claims will continue to be powerless to a plan process specifically engineered to deny any voice to the holders of PD Claims and other asbestos creditors. Indeed, the requested extension of the Exclusive Periods until after the final rulings in respect of the Estimations all but assures that result. The Court must allow for the democratization of the plan process by terminating exclusivity. A further extension of the Exclusive Periods will not accomplish this result but would have the contrary effect, as evidenced to date. The relief requested herein is both

appropriate and in the best interests of the Debtors' estates and all of its creditors and, therefore, no "cause" exists to extend the Exclusive Periods for the ninth time. Only by eliminating the Exclusive Periods will the holders of PD Claims, and other creditors of the Debtors, be placed on an equal footing in the plan process, a condition precedent to exiting these long-standing cases.

## CONCLUSION

**WHEREFORE**, the PD Committee respectfully requests that this Court: (a) deny the Debtors' request for a ninth extension of the Exclusive Periods; and (b) provide the PD Committee with such other and further relief as is just and proper.

Dated:   December 2, 2005.
         Wilmington, Delaware

                                        Respectfully submitted,

                                        BILZIN SUMBERG BAENA
                                        PRICE & AXELROD LLP
                                        2500 Wachovia Financial Center
                                        200 South Biscayne Boulevard
                                        Miami, FL 33131-2336
                                        Telephone: (305) 374-7580

                                        Scott L. Baena (Admitted Pro Hac Vice)
                                        Jay M. Sakalo (Admitted Pro Hac Vice)

                                        -and-

                                        FERRY, JOSEPH & PEARCE, P.A.

                                        /s/ Lisa L. Coggins
                                        Lisa L. Coggins (No. 4234)
                                        824 Market Street, Suite 904
                                        P.O. Box 1351
                                        Wilmington, DE 19899
                                        Telephone: (302) 575-1555

                                        CO-COUNSEL FOR THE OFFICIAL
                                        COMMITTEE OF ASBESTOS PROPERTY
                                        DAMAGE CLAIMANTS