## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------

In re:                                              )        Chapter 11
                                                    )
W. R. GRACE & CO., et al.,                          )        Case No. 01-01139 (JKF)
                                                    )        (Jointly Administered)
                                                    )
            Debtors.                                )        Re: Docket Nos. 9302, 10014
                                                    )        Responses Due: December 2, 2005
                                                    )        Hearing Date: December 19, 2005
                                                    )

---------------------------------------------------------------

## DEBTORS' BRIEF IN OPPOSITION TO MOTION OF
## ANDERSON MEMORIAL HOSPITAL FOR CLASS CERTIFICATION

Mr. Speights' motion for class certification is just more of the same from a would-be member of an official committee who appears constitutionally incapable of appreciating the interests of the bankruptcy process or even following the basic rules of litigation. Certification would frustrate rather than advance the recent movement of this case toward resolution and would pervert rather than implement the core requirements of Rule 7023 -- all for the improper purpose of enhancing Mr. Speights' personal leverage in plan negotiations.

Certification would impede case resolution for three reasons. *First*, it would spell immediate delay as class notice is given, opt out rights are exercised, and class claims are litigated -- all without knowing whether there really are any actual bona fide claimants beyond those who timely met the bar date. *Second*, it would manufacture immediate uncertainty over the number of potential claims, just as progress is being made in filtering out the myriad invalid claims that Mr. Speights already has lodged. *Third*, it would further complicate the already difficult task of plan negotiations, as Mr. Speights would re-emerge, phoenix-like as a major obstacle to reaching consensus. Not only have the courts come slowly and reluctantly to the

conclusion that class action practice is even available in Chapter 11 cases, but they have been explicit that the real world impact of certification on the administration of the case -- precisely the kind of impact so obvious from the foregoing three facts -- must be weighed in addition to compliance with the basic requirements of Rule 23.

Nor can Speights come close to complying with those requirements. While other Rule 23 tests also are dispositive (as set forth briefly below), any application of the "superiority" requirement of Rule 23(b)(3) demonstrates the absurdity of Speights' motion and makes further analysis unnecessary. As the Seventh Circuit underscored in *In the Matter of Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1299-1300 (7th Cir. 1995), class certification should be avoided where litigation is mature and claimants have both the means and the opportunity to litigate claims individually. Here, asbestos property damage litigation in general is beyond mature, and, in this bankruptcy case in particular, it is virtually ossified. Individual claimants not only have ready access to counsel and the courts, they already have come forward to press their claims. The problem faced in this case is not unrepresented claimants but over-represented claimants; not valid claims with no prospect of justice but invalid claims which have impaired the process of dispensing justice. Class certification here would turn the superiority requirement of Rule 23 on its head.

And so we come back to the sole intended beneficiary of the pending motion, Mr. Speights. That, after repeated attempts to act as class counsel without being class counsel (and further instances where he had no authority to act as counsel at all), Mr. Speights should now seek to start the property damage litigation over as class litigation with Mr. Speights himself leading the charge is a rare (read "appalling") brand of self-serving chutzpah. It has no place in this now 4+ year old Chapter 11 case.

2

I.      **Factual Background.**

Although the Bar Date in these bankruptcy cases expired years ago, the very first time

Speights & Runyan (hereinafter "Speights") requested permission from this Court to proceed as

a class was a mere six weeks ago.  This egregiously untimely request was obviously not driven

by a concern with the procedural requirements that had long been ignored, but was a response to

the firm's loss of nearly all of the claimants it purported to -- but in reality had no basis to --

represent.  The facts underlying Speights' lack of authority and the filing of unsupported claims

were uncovered only after painstaking investigation by Debtors and discovery ordered by the

Court.  Those facts, as well as other history relevant to the Speights motion for class certification

are summarized in the following sections.

A.      **Asbestos Property Damage Litigation is Mature And These Bankruptcy**
        **Proceedings Are Significantly Advanced.**

When the Debtors filed these cases in April 2001, asbestos litigation was a mature

litigation with a nation-wide scope.  Potential health risks from asbestos exposure had been

widely publicized for decades and an "avalanche" of asbestos-related lawsuits had been filed

across the country against a large number of defendants, beginning with an influx of

occupational disease cases in the 1970s, and expanding to other personal injury cases and

property damage cases.  The morass of litigation spawned by asbestos and the tort system's

failure to effectively and fairly resolve that litigation was described in detail in W.R. Grace &

Company's Informational Brief (April 2, 1001).

By April 2001, Grace's asbestos property damage litigation was nearly 20 years old.  Yet

the company had been effectively managing its property damage cases.  Of more than 370

property damage lawsuits that had been filed since 1983, only 7 of those were still pending by

3

February 2001.  After filing these Chapter 11 cases, Debtors moved forward expeditiously to

request that the court approve a plan for ensuring that notice was given to potential property

damage claimants, and to establish a bar date by which claims would be filed.

**B.    The Asbestos Property Damage Bar Date and Grace's Court-Approved $4 Million Notice Program.**

On June 27, 2001, the Debtors filed their Motion for Entry of Case Management Order,

Establishment of a Bar Date, Approval of the Proof of Claim Forms and Approval of the Notice

Program and related memorandum in support of a case management order. [Docket No. 586] (the

"Bar Date Motion").  The Bar Date Motion sought the establishment of a claims bar date for all

asbestos property damage claims, as well as other claims.

During the following ten months, the Debtors worked with every official committee in

these cases, and with the Court itself, to craft the Bar Date Notice, the Bar Date Notice Package

and a comprehensive system of publication of the Bar Date Notice (collectively, the "Bar Date

Notice Program").  The Program would ensure that every affected party received some form of

notice of the Bar Date, the scope of the Bar Date, and the process for filing a proof of claim.  The

Debtors filed successive versions of the Bar Date Motion during the course of this lengthy

process. [Docket Nos. 1106 and 1665].  In addition, the Court received and considered multiple

responses from all of the official committees.  Each version of the motions and related Bar Date

Notice Program reflected a concerted effort by the Debtors to incorporate any concerns

expressed by this Court and members of the various committees.

In the midst of this undertaking, the specific issue of whether there would be any class

proofs of claim for asbestos property damage claims was discussed on multiple occasions.  For

example, during the February 25, 2002 hearing, the Court stated as follows:

> The Court: Well, it's a whole different issue.  I need a motion.  If you're gonna
> request that a [property damage] class proof of claim be filed, I need an

4

appropriate motion by a representative of the putative class by a law firm that is competent to handle it. Until I get such a motion there will be no class proofs of claim. Because that's what I think I need.

2/25/02 Hearing Tr. at 107:22 - 108:3.

The details of the Notice Program and Bar Date Package were also discussed at several omnibus hearings. For example, during the course of the April 22, 2002 hearing, the parties discussed whether the Debtors needed to disseminate the Bar Date Notice via television advertisements. Ultimately, the Court determined that the increase in coverage (from 83.8% of American households to 95% of American households) was not worth the additional $2.5 million in costs. 4/22/02 Hearing Tr. at 94. The Court reasoned that the other forms of notice were already comprehensive: "I truly don't see, given the reach of the newspapers, the consumer magazines, the business magazines, *The Wall Street Journal*, *The Parade Magazine*, the debtor's website, the other places, the opportunity for people to call in to the debtor's establishment to get information concerning a proof of claim, I don't see the need for a television ad." *Id* at 95:4-9.

By order dated April 22, 2002 (the "Bar Date Order") [Docket No. 1963], the Court approved the Bar Date Notice Program and set March 31, 2003 (the "Bar Date") as the last date for filing proofs of claim for Asbestos Property Damage Claims (as defined in the Bar Date Order). The Bar Date Order stated that any party that wished to assert an Asbestos Property Damage Claim needed to do so by the Bar Date. Specifically, the Modified Bar Date Order provided as follows:

> [A]ny person holding an Asbestos Property Damage Claim, Medical Monitoring Claim or Non-Asbestos Claim who does not file a completed Proof of Claim Form on or before the Bar Date shall be forever barred to the extent of applicable law from (a) participating in the Debtors' estates; (b) voting with respect to any plan of reorganization filed in these cases; and (c) receiving any distribution from the Debtors or any entity created pursuant to or in connection with any confirmed plan of reorganization in these cases.

Modified Bar Date Order at 6.

5

The Bar Date Order also stated that the Bar Date Notice Program constitutes legally sufficient notice to all unknown claimants:

> ORDERED that notice of the entry of this Order and of the Bar Date to unknown claimants pursuant to the Debtors' Bar Date Notice Plan for Asbestos Property Damage Claims and Other Claims (the "Notice Plan"), as modified, and filed on April 12, 2002, shall be deemed good, adequate and sufficient notice of the Bar Date.

Modified Bar Date Order at 5.

Pursuant to the Court-approved Bar Date Notice Program, the Debtors spent *over $4 million* to publish the Bar Date Notice. The Debtors also spent substantial funds to compile and mail copies of the Notice Package to all known affected parties, which amounted to mailing out at least 201,116 Bar Date Packages. The Bar Date Notice Package made it abundantly clear that the failure to file a claim by the Bar Date would result in a forfeiture of any such claim against the estates of any of the Debtors. The Bar Date Notice stated in Section 9, **"EFFECT OF NOT FILING A CLAIM"**:

> ANY HOLDER OF A NON-ASBESTOS CLAIM, ASBESTOS PROPERTY DAMAGE CLAIM OR MEDICAL MONITORING CLAIM WHO IS REQUIRED TO FILE A PROOF OF CLAIM AND USE A COURT APPROVED PROOF OF CLAIM FORM AND WHO FAILS TO FILE A PROOF OF CLAIM ON OR BEFORE THE BAR DATE FOR ANY CLAIMS SUCH CLAIMANT HOLDS AGAINST ANY OF THE DEBTORS OR THEIR PREDECESSORS-IN-INTEREST, INSURANCE CARRIERS OR THE DEBTORS' PROPERTY, **SHALL BE FOREVER BARRED, ESTOPPED AND ENJOINED** FROM ASSERTING ANY SUCH CLAIMS (OR FILING A PROOF OF CLAIM WITH RESPECT TO SUCH CLAIMS) AGAINST ANY OF THE DEBTORS, THEIR PROPERTY OR THEIR ESTATES. IF ANY SUCH CLAIMS ARE SO BARRED, **EACH OF THE DEBTORS AND ITS PROPERTY SHALL BE FOREVER DISCHARGED FROM ALL INDEBTEDNESS AND LIABILITIES WITH RESPECT TO SUCH CLAIMS** AND THE HOLDERS OF SUCH CLAIMS SHALL NOT BE PERMITTED TO VOTE ON ANY PLAN OR PLANS OF REORGANIZATION ON ACCOUNT OF SUCH CLAIMS, OR TO RECEIVE FURTHER NOTICES REGARDING SUCH CLAIMS OR REGARDING THESE CHAPTER 11 CASES.

Bar Date Notice at 7, ¶9 (emphasis added).

6

C.     **Speights' Request That They Not Be Required to Notify Their Clients Or Identify Their Clients So That They Might Be Directly Notified.**

The Bar Date Order originally required all counsel of record for PD Claimants either to (1) certify to Grace that they had contacted or attempted to contact all of the clients whom they represent, provided them with the Bar Date Package and advised them regarding their rights to assert a claim against the Debtors and their need to file their proofs of claim on court-approved proof of claim forms by the Bar Date; or (2) provide Grace with the current names and addresses of their clients who have claims against Grace, so that Grace could provide those claimants with a copy of the Bar Date Notice Package. Grace included this provision in the Bar Date Order, to help ensure that existing asbestos PD Claimants would receive actual notice of the Bar Date Order.

On June 21, 2002, the Asbestos Property Damage Committee -- of which Speights is a member and the co-chairman -- filed a Motion for Clarification of the Bar Date Order [Dkt. No. 2274]. While titled as a motion to *clarify* the Bar Date Order, this motion essentially asked the Court to *abate* the requirement that counsel of record for Asbestos PD Claimants either notify their clients of the Bar Date or provide the names and addresses of such parties to Grace, so that Grace could mail them Bar Date Notice Packages. By order dated September 23, 2002 [Dkt. No. 2745], the Court abated this requirement from the Bar Date Order.

D.     **Speights' Failure to Comply With the Court's Orders Regarding Filing of Class Claims.**

Even though Daniel Speights appeared at the February 25, 2002 omnibus hearing, at which the Court called for motions to be filed prior to filing class proofs of claim, at no point did Speights ever seek authority to file a class proof of claim on behalf of Anderson Memorial Hospital or otherwise communicate the intention to represent a purported *Anderson Memorial* class in these Chapter 11 cases. 2/25/02 Hearing Tr. at 3:11-13. Instead, Speights unilaterally

7

filed two class proofs of claim - Claim Nos. 9911 and 9914 - which were filed on behalf of

"worldwide" and "statewide" *Anderson Memorial* building owners, respectively. Rather than

seeking Court approval to file these claims or otherwise notifying the Court or Grace that they

had done so, Speights buried these two claims in the approximately 3,000 asbestos property

damage claims filed by the firm in these Chapter 11 cases. Not until October 2005 did Speights

request class certification.[1]

After extensive investigation, Debtors discovered that the earlier *Anderson Memorial*

class action was the purported basis upon which Speights filed the class proofs of claim, as well

as many of the individual proofs of claim. The extent of over-reaching with respect to filing

these claims was set forth in detail in earlier briefing and heard by this Court in oral argument,

and therefore will not be repeated here. Should the Court find it useful to review the history of

the *Anderson Memorial* litigation and Speights' conduct with respect to that litigation, a

summary can be found in Debtors' Brief in Support of the Disallowance and Expungement of

1,900 Improper Claims Filed by the Law Firm Speights & Runyan (Sept. 30, 2005) [Dkt. No.

9546].

E.    **Grace's Objections to Speights' Unauthorized Claims and Speights' Withdrawals.**

Of the approximately 4,000 claims that were filed in response to the Notice and Bar Date,

approximately 3,000 were filed by Speights, including the two unexpected *Anderson Memorial*

class proofs of claim. Yet, instead of simply filing class proofs of claim, Speights filed an

---

[1] Speights also ignored other procedural requirements. The firm did not file the required statement describing their representation of multiple claimants, pursuant to Bankruptcy Rule 2019, in conjunction with his filing of class proofs of claim. Instead, Speights only filed this required statement in response to this Court's direct order, on October 22, 2004, directing counsel representing more than one creditor or equity security holder (excluding counsel for appointed committees) to electronically file verified statements pursuant to Rule 2019 (the "2019 Order") [Dkt. No. 6715].

8

additional 787 separate claims on behalf of *Anderson Memorial* in-state claimants and 59 claims

on behalf of *Anderson Memorial* out-of-state claimants.

On June 17, 2005 and September 1, 2005, respectively, Grace filed its 12th and 13th

omnibus objections to claims filed by Speights [Dkt Nos. 8640 and 9311], which contest

Speights' claims on a myriad of bases, including Speights' authorization for filing his *Anderson*

*Memorial* claims. Speights responded to the 12th and 13th omnibus objections by withdrawing

mass numbers of claims. To date, Speights has withdrawn approximately *2,300 claims*,

including the following:

- On June 29, 2005, 55 claims withdrawn. [Dkt. Nos. 8710 - 8715, 8717-8227, 8729-8732, 8734, 8736, 8748-8767, 8769-9779].

- On June 30, 2005, 54 claims withdrawn. [Dkt. Nos. 8784, 8785, 8787-8814, 8819-8826, 8828, 8830-8843].

- On July 1, 2005, 48 claims withdrawn. [Dkt. Nos. 8849-8855, 8856-8871, 8873-8895].

- On July 5, 2005, 26 more claims withdrawn. [Dkt. Nos. 8911- 8936].

- On July 6, 2005, July 13, 2005, and October 26, 2005, three more claims withdrawn. [Dkt. Nos. 8943, 8991, and 9517].

- On September 26, 2005, Speights withdrew an additional 259 claims that were filed by Speights on behalf of buildings, rather than actual claimants. [Dkt. No. 10830].

Prior to the October 31, 2005 hearing regarding additional issues relating to Speights'

claims, Speights agreed to withdraw its 1,495 California claims which Debtors had challenged

for lack of Grace product identification. [Dkt. No 10961]. During the October 31, 2005 hearing,

the Court determined that Speights lacked authority to file individual claims on behalf of

purported *Anderson Memorial*-class claimants, and the Court ordered Speights to withdraw the

pending Anderson Memorial claims (552 pending out-of-state claims and 52 pending in-state

9

claims). On November 14, 2005, the Court entered an order expunging these claims. [Dkt. No. 11080].

It was not until October 22, 2005 - on the virtual eve of the October 31, 2005 hearing, *over four years* after Grace filed its first pleading seeking a bar date for asbestos property damage claims, and *over two and half years after the Bar Date had passed* - that Speights filed the Motion of Anderson Memorial Hospital for Class Certification [Dkt. No. 10014]. This motion is a blatant attempt to circumvent the Bar Date and Court-approved Bar Date Notice Program; and, if granted, this motion would allow Speights to pursue claims on behalf of individuals that have already had the opportunity to decide for themselves whether they wished to file claims in these Chapter 11 cases. Speights' motion is procedurally inappropriate, untimely, and utterly without merit, as described in the sections that follow, and should be denied.

## II.    Legal Standards.

### A.    Bankruptcy Courts Have Discretion to Determine Whether Class Certification is Appropriate in Bankruptcy Proceedings.

Most courts have now concluded that class proofs of claim are permissible in bankruptcy proceedings.[2] *In re Kaiser Group Intl.*, 278 B.R. 58 (Bankr. D. Del. 2002). Yet, while class certification is *available*, determining whether class treatment is *appropriate* in a particular case is firmly within the discretion of the bankruptcy judge. "Whether to certify a class claim is within the discretion of the bankruptcy court. Rule 7023 of the Federal Rules of Bankruptcy Procedure expressly allows class certification in adversary actions, by incorporating Rule 23 of

---

[2] Under the former Bankruptcy Act, the Third Circuit had held that a class proof of claim was not appropriate in a reorganization case. However it has acknowledged that classes are now regularly certified under the code. *In re Kaiser Group Intl.*, 278 B.R. 58, 62 n.2 (Bankr. D. Del. 2002) (citing *In re Whittaker*, 882 F.2d 791, 793 n.1 (3d Cir. 1989).

the Federal Rules of Civil Procedure. Fed. R. Bankr. P. 7023. Rule 9014 expands that Rule to

contested matters, *at the court's discretion*." *Kaiser Group,* 278 B.R. at 62 (emphasis added).

In particular, Rule 9014 says that the bankruptcy court *may* "at any stage in a particular matter

[direct that] one or more of the other rules of Part VII" apply, which would include Rule 7023.

*Reid v. White Motor Corp.*, 886 F.2d 1462, 1469 (6th Cir. 1989).

To certify a class of claimants, a bankruptcy court must undertake a two step analysis.

*First*, to warrant class certification, the court must determine whether a class action "makes

sense" and will advance the interests of the bankruptcy. The inquiry does not stop there,

however. *Second*, even if claimants can demonstrate that a class may be an acceptable way to

proceed in a particular bankruptcy, the claimants must also satisfy the elements of Fed. R. Civ. P.

23, in the same manner as any other potential class in a federal court. Notably, this includes the

requirement that a class action be the superior method for the fair and efficient adjudication of

the controversy. Fed. R. Civ. P. 23(b)(3). Because all of these requirements can be met only

rarely, one bankruptcy court has noted that "we believe that the class proof of claim device may

be utilized in appropriate contexts, but that such contexts should be chosen most sparingly." *In

re Sacred Heart Hospital of Norristown*, 177 B.R. 16, 22 (Bankr. E.D. Pa. 1995); *see also In re

Firstplus Financial, Inc.*, 248 B.R. 60, 73 (Bankr. N.D. Tex. 2000) ("In the bankruptcy context,

class actions should be rare.").

If class certification fails to advance the progress of the bankruptcy, was not timely

requested through the use of proper procedures, or is otherwise not appropriate in the

circumstances of the bankruptcy, the Court need look no further. In I*n the Matter of American

Reserve Corp.*, 840 F.2d 487, 493 (7th Cir. 1988), the Seventh Circuit remanded the case for the

bankruptcy judge to "consider the features, which we have discussed, that may make class

11

certification less desirable in bankruptcy than in ordinary civil litigation. The judge also did not

consider whether his control of the bankrupt's affairs might make class certification

unnecessary." *See also Sacred Heart*, 177 B.R. at 22 ("Even if [the requirements of Fed. R. Civ.

P. Rule 23] are met, the bankruptcy court must weigh the issue of whether it is appropriate to

give the class members what may amount to an additional opportunity to meet an otherwise

applicable bar date."); *In re First Interregional Equity Corp.*, 227 B.R. 358, 371 (Bankr. D.N.J.

1998); *In re Zenith Laboratories, Inc.* 104 B.R. 659, 664 (D.N.J 1989) (although class was

certified pre-petition, "there may be other factors in the bankruptcy proceedings that make class

certification there less compelling and it may be possible that a different result might be

appropriate"). Bankruptcy courts that have considered the question of class certification and

class proofs of claim have enunciated various factors that are relevant in determining whether a

class is appropriate to a bankruptcy case that is already significantly advanced.

> **B.**    **Courts Assess Claimants' Compliance with Procedural Requirements as Well as The Effect on the Bankruptcy Cases in Determining Whether To Certify a Class.**

The Bankruptcy Code and Rules do not provide specific criteria that must be applied to

determine whether to certify a class in bankruptcy cases. Instead bankruptcy courts have the

discretion to determine whether class certification is appropriate and necessary in the context of

the overall bankruptcy case, *i.e.*, whether class certification "makes sense" with respect to the

case. This determination is informed by the more detailed issues that courts typically examine,

such as whether claimants timely complied with appropriate procedures, including filing a

motion for class certification; whether a class had been certified prior to the bankruptcy filing

and thus might assist in giving notice to claimants and processing claims; and whether it would

be appropriate to permit an effective extension of the bar date through the use of a class proof of

claim. The legal analyses concerning each of these factors are addressed in turn below.

12

1.    **Whether Claimants Complied with Required Procedures in a Timely Manner.**

An important factor in whether a class action "makes sense" in a bankruptcy case is *when* a request for class certification is brought to the court. If a motion for class certification is brought too late in the bankruptcy, it can only disrupt the progress of the case.

Claimants must request permission to file a class proof of claim using certain procedures under the Bankruptcy Rules, and Claimants must comply with these procedures in a timely fashion for their request to be considered. Specifically, for Rule 7023 to be applicable to a contested matter, a motion for class certification must be brought under Rule 9014 in a timely manner. *See e.g.*, *In re Bicoastal Corp.*, 133 B.R. 252, 255 (Bankr. M.D. Fla. 1991) (Rule 7023 will not be applicable to a contested matter unless a motion to make applicable is timely filed and the motion is granted); *Zenith Laboratories, Inc.* 104 B.R. at 664 (party must move under Rule 9014 for Rule 7023 to be made applicable to proof of claim or must seek class certification before a class proof of claim is permissible); *Reid*, 886 F.2d at 1470-71 (party "ignored every mandatory requirement essential to filing a class proof of claim with the bankruptcy court" when he failed, among other things, to timely petition the bankruptcy court to apply the provisions of rules 9014 and 7023 to his proof of claim); *In the Matter of GAC Corp.*, 681 F.2d 1295, 1299 (11th Cir. 1982) (purported class agent "never filed a Rule 9[0]14 motion requesting that Rule 7[0]23 apply, and the bankruptcy court in its discretion chose not to so direct. Thus, Rule 7[0]23 (and thus FRCP 23) was never made applicable to the proceedings involved here, and in the absence of such application a class proof of claim could not properly be permitted.").

In addition to a motion under Rule 9014, a proposed class agent must also file in a timely manner, pursuant to Rule 2019, a verified statement with the clerk of the bankruptcy court. The statement must include a copy of the instrument, if any, whereby the agent is empowered to act

13

on behalf of the creditors he is representing. *Reid*, 886 F.2d at 1471. Bankruptcy courts have routinely refused to grant class certification where claimants and agents have failed to timely fulfill these basic procedural requirements.

The required filings must be accomplished without delay. Whether a purported class representative seeks class treatment in a timely fashion before the bar date or in conjunction with filing a class proof of claim is a key factor in many bankruptcy class certification decisions. More specifically, one bankruptcy judge ruled that: "Timing is also significant. The most propitious time for filing a motion for class recognition is *before a bar date is established*, since the bar date is effectively uprooted in part by an extension of the bar date for a favored class of creditors." *Sacred Heart*, 177 B.R. at 23 (emphasis added). A bankruptcy court should expect that a purported class agent, knowing full well that they will file a class proof of claim, request class status from the court prior to the bar date. This prevents later disruption of the bar date and potential unfairness to creditors who have filed on-time. Indeed, the Court in this action clearly expressed that expectation with respect to class proofs of claim.

While the bar date has not always been used as a mandatory cut-off for seeking class treatment, bankruptcy courts have required that class certification motions be filed -- at the very least -- shortly after filing a class proof of claim. Failure to do so has resulted in denial of class status. In *In re Thomson McKinnon Securities, Inc.*, 150 B.R. 98, 101 (Bankr. S.D.N.Y. 1992) the court denied class certification where claimants failed to move in a timely fashion. As the court explained, it would not allow class certification "where from the time the plaintiffs first filed their purported class claim on September 20, 1990, until their motion for class certification, filed on May 27, 1992, the plaintiffs never complied with Federal Rule of Bankruptcy Procedure 2019 by filing a verified disclosure statement, and never sought an order from the court directing

14

that Federal Rule of Bankruptcy Procedure 7023 should apply in a contested matter under

Federal Rule of Bankruptcy Procedure 9014." The court further explained: "The fact that the

plaintiffs did not move for class certification promptly after filing their purported class claim

detracts from the discretionary factors to be considered in determining class certification because

Fed. R. Civ. P. 23(c)(1) specifically requires that such determination must be sought '[a]s soon

as practicable after the commencement of an action brought as a class action.'" *Id.*

### 2.    **Whether Notice Has Already Been Given.**

A related factor that courts weigh in determining whether a class action will advance the

progress of the bankruptcy case is whether notice has already been provided to creditors. The

notice question is important because it is only in the total *absence* of notice that it may be

appropriate to "give the class members what may amount to an additional opportunity to meet an

otherwise applicable bar date." *Sacred Heart*, 177 B.R. at 22. Extending a bar date for one

group of creditors is likely to be unfair to other creditors and to layer additional complexity onto

the existing bankruptcy proceedings: "It is clearly disruptive to the formulation of a plan to

frustrate a debtor's logical assumptions regarding the amounts of total claims by compelling the

debtor to alter or extend the bar date. . . . Thus, clearly, a mere dispensation requested by a

creditor or a group of creditors is not a basis to justify such disruption." *Id.* at 23.

Because of the unfairness to existing claimants, extension of a bar date should only be

undertaken in extraordinary circumstances. One such circumstance is where certification of a

class is the only form of notice that many creditors will ever receive. *Sacred Heart*, 177 B.R. at

22. "On the other hand, if the putative unnamed class members have clearly received actual or

constructive notice of the bankruptcy case and the bar date, denial of the implementation of the

class proof of claim appears advisable." *Id.*

### 3.    **Prior Certification of a Class**

15

Cases where a class has been certified pre-petition by a nonbankruptcy court are more likely to receive class treatment in bankruptcy. The reasoning behind this relates largely to the efficiencies that a prior class may afford the bankruptcy cases, including again the provision of notice to creditors. Where a class has already been certified prior to the bankruptcy: "it is very likely that certain procedures for notifying the unnamed class members . . . have been devised and followed pre-petition. In fact, it can be convincingly argued that it would be wasteful for the bankruptcy court, in its claims process, to either replicate any notice procedures already utilized in the nonbankruptcy court class-action process." *Sacred Heart*, 177 B.R. at 22. Thus, where prior certification of a class may facilitate the publication of notice in the bankruptcy cases at hand, the class is more likely to be certified. In the absence of such benefit, prior certification is not compelling.

Prior certification of a class may also assist the bankruptcy court in determining whether the requirements of Fed. R. Civ. P. 23 have been met, assuming that the petitioners are attempting to have the *same class* certified. *See Sacred Heart*, 177 B.R. at 22 ("If the F.R.Civ.P. 23 or like requirements have been deemed satisfied by a nonbankruptcy forum, it seems likely that the class representatives will be deemed by the bankruptcy court to meet those requirements as well."). Where the purported class has not been certified or where it is a different class, however, pre-petition certification cannot so assist the bankruptcy court. *Id.* ("[I]n cases where the class action and the class's representation have not been certified pre-petition by the nonbankruptcy forum, there is little doubt that the bankruptcy court must rigorously examine whether the class representative in the bankruptcy case meets those requirements.").

**C.    The Court Must Further Determine Whether A Potential Class Meets the Requirements of Rule 23.**

16

Even where claimants have met the procedural requirements for seeking class certification in bankruptcy, and the court has determined that class certification is appropriate to the particular proceedings, the claimant group must still meet the familiar class certification criteria of Rule 23.

Rule 23 states:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Rule 23(a) thus requires numerosity, commonality, typicality and adequacy of representation.

Rule 23(b) further requires a finding that the "class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); *Kaiser Group*, 278 B.R. at 67. Within this requirement a court should consider "the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3)(D).

As detailed in Section III below, the application of these legal standards militates against class certification in Grace bankruptcy cases. Class certification would inflict unwarranted injustice on those creditors who filed on time, and would add further hurdles to an already complex mass-tort bankruptcy, with no countervailing benefits in efficiency or equity.

## III.    Argument.

The Speights' motion for class certification fails both of the tests that must be met before a class action may be certified in bankruptcy. Even had the motion not been filed far too late, class certification would not be available because it would not advance the progress of the bankruptcy cases. It would, rather, propel the cases backward while introducing delay and

17

uncertainty. In other words, a class action is not, as required by Rule 23(b), a superior method to fairly and efficiently adjudicate the claims before the Court.

There is nothing to be gained, and much to be lost, by proceeding as a class action here. Certainly, class certification will do nothing to affect the information and notice to creditors, since adequate notice has already been provided through the Court-approved Notice Program. Certifying a class now can only create a theoretical group of claimants who would likely require new notice, a new claims-filing process, an opportunity to opt out of the class and a myriad of other class-related procedures that will reverse the progress that has already been made in these cases. The parties should be seeking closure of claims against the Debtors, not seeking to start all over again from the beginning.

### A.    Speights' Motion for Class Certification Was Not Timely Filed and Violates this Court's Own Orders.

As described in Section II.A. above, a primary consideration in whether to permit certification of a class is whether proper procedures have been timely followed in seeking class treatment. Plainly, that has not been the case here.

First, the class proofs of claim that were filed by the Speights firm were in direct violation of this Court's earlier declarations setting forth its expectations with respect to such claims. On February 25, 2002 hearing, the Court explained:

> The Court: Well, it's a whole different issue. I need a motion. If you're gonna request that a [property damage] class proof of claim be filed, I need an appropriate motion by a representative of the putative class by a law firm that is competent to handle it. *Until I get such a motion there will be no class proofs of claim.* Because that's what I think I need.

2/25/02 Hearing Tr. at 107:22-108:3 (emphasis added).

The Court's statement clearly contemplated that a motion had to be filed *before* a class proof of claim would be accepted: "If you're *gonna* request that a class proof of claim *be* filed,

18

I need an appropriate motion . . . . *Id.* " Although Daniel Speights attended that February 25, 2002 omnibus hearing, the Speights firm never filed a motion seeking to file a class proof of claim. Instead, Speights simply went ahead and filed two class proofs of claim, burying them in the approximately 3,000 asbestos property damage claims filed by the firm, many of which were duplicative with Speights' purported class.

The utter contravention of the Court's direction with respect to the filing of class proofs of claim is more than enough reason to deny the class treatment sought by the Speights firm. Like all counsel present at the hearings relating to filing proofs of claim, Speights was informed directly by the Court that class proofs of claim were not going to be permitted absent a motion requesting class treatment. The Speights firm should not be rewarded for their disregard of this Court's rulings.

Compounding this disregard of the Court's enunciated procedural requirements, Speights also ignored other important steps that bankruptcy courts have required to initiate a request for class certification. Even after filing class proofs of claim that were never authorized by the Court, Speights failed to file a Rule 9014 motion requesting that Rule 7023 apply. The 11th Circuit in *In re GAC* found this failure sufficient reason to deny class status: "[Claimant] never filed a Rule 9[0]14 motion requesting that Rule 7[0]23 apply, and the bankruptcy court in its discretion chose not to so direct. Thus, Rule 7[0]23 . . . was never made applicable to the proceedings involved here, and in the absence of such application a class proof of claim could not properly be permitted." *GAC Corp.*, 681 F.2d at 1299; *see also Thomson McKinnon*, 150 B.R. at 101 (rejecting class certification where plaintiff -- in the two and a half years between filing a class proof of claim until their motion for class certification -- never sought an order from the court that Rule 7023 apply).

Speights also neglected to file with his class proofs of claim a verified statement demonstrating his authority to represent multiple claimants, pursuant to Rule 2019. *GAC Corp.*, 681 F.2d at 1299. Indeed, Speights did not file this statement until he was specifically ordered to do so by the Court. Rule 2019(b) provides for the Court's rejection of a purported class agent's status in light of the failure to comply with Rule 2019: "On motion of any party in interest or on its own initiative, the court may (1) determine whether there has been a failure to comply with the provisions of subdivision (a) of this rule or with any other applicable law regulating the activities and personnel of any entity . . .; and (3) hold invalid any authority, acceptance, rejection, or objection given, procured, or received by an entity or committee who has not complied with this rule . . . ."

Speights' cavalier disregard of bankruptcy rules warrants denial of the last-minute motion for class status. Just as in the *Reid* bankruptcy case where class certification was denied, Speights "failed to timely petition the bankruptcy court to apply the provisions of Rules 9014 and 7023." *Reid,* 886 B.R. at 1470-71. And just as in *Reid*, Speights' late motion for class certification should be rejected: "[Petitioner] blatantly failed to comply with the bankruptcy procedure to commence a class action. As a result, the bankruptcy court did not abuse its discretion in denying [the] class proof of claim." *Reid*, 886 B.R. at 1472.

### B.    The Untimely Motion Is A Thinly Veiled Attempt to Nullify the Bar Date And Allow Further Recruitment of PD Claimants.

The motion that Speights ultimately filed seeking class status in the name of Anderson Memorial Hospital was egregiously late. Speights knew prior to the Bar Date that he would be filing class proofs of claim, yet he did not file any request for class recognition prior to that date. Timely filing prior to the Bar Date would have easily averted the difficulties and unfairness that would inhere if a class were certified at this late date. *Sacred Heart*, 177 B.R. at 23 ("the most

20

propitious time for filing a motion for class recognition is before a bar date is established, since

the bar date is effectively uprooted in part by an extension of the bar date for a favored class of

creditors"). Instead, Speights chose to wait for over two and a half years after the Bar Date to

file a motion for class certification. Similar lassitude was the grounds for rejecting a class

certification motion in *Sacred Heart*: "Although [proposed class attorney] Koresko seems to

have understood the significance of active participation in this bankruptcy case from its outset,

he somehow let the disposition of the class issue drift from the earliest days, when it was

premature, to later, crucial stages in the case, without resolution." *Id.* at 24.

The class certification motion, filed a mere six weeks ago, is not the result of a newfound

concern with the Rules of Civil Procedure or the Bankruptcy Rules. Rather, it is a last-ditch

effort by the Speights firm to recapture its vanishing "client" pool. Speights' former 3,000

claims have been reduced to 600, including the expungement of hundreds of improperly filed

"class" claims. *See* Debtors' Brief in Support of the Disallowance and Expungement of 1,900

Improper Claims Filed by the Law Firm Speights & Runyan (Sept. 30, 2005) [Dkt. No. 9546]. It

was only with the evaporation of nearly all of its claims that the Speights firm finally filed a

motion for class certification.

The Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure do

not, in any way, condone the use of class certification to allow a law firm to resuscitate claims

that were filed with no authority and with no support. The Rules certainly do not condone the

use of a late-in-the-day class certification motion to permit a law firm to ignore the Bar Date and

re-initiate its client recruitment efforts to make up for other claims it has been forced to

withdraw. *Sacred Heart*, 177 B.R. at 24.

It is telling that the motion for class certification does not request that the Court, for

efficiency purposes, certify a class of claimants who have already filed claims in these

bankruptcy cases.  Nor does the motion ask the Court to certify here the class of South Carolina

plaintiffs that was included in the operative *Anderson Memorial* complaint, and upon which

alleged basis the Speights firm filed its class proofs of claim.  Instead, the motion for class

certification asks the Court to disregard the Bar Date and now throw open the doors of these

cases to *all property owners anywhere* "whose buildings contain or used to contain the asbestos-

containing surface materials for which the Debtors are responsible."  Motion for Class

Certification at 1 [Dkt. No. 10014].  By itself, the wildly unlimited scope of this proposed class -

- all members of which would automatically be represented by the Speights firm -- reveals what

really underlies the motion for class certification.

### C.    The Bar Date, Which Was Amply Publicized, Should Not Now Be Set Aside To Allow Late Filing of Claims.

Granting certification of the class requested by Speights would effectively and

retroactively eradicate the Bar Date.  Such backward-looking alteration of the "rules" of filing

would be extremely unfair to claimants who filed in a timely manner in accordance with the

Notice and Bar Date. *Sacred Heart,* 177 B.R. at 23 ("Tinkering with an established bar date may

raise due process claims of parties who have timely filed claims by originally-established bar

dates, since it gives late filers a second bite at an apple which is likely to be less than fully

satisfying, and thus effect unfair diminution of the timely filer's share of a distribution.").  Under

similar circumstances, the U.S. Bankruptcy Court for the Eastern District of Pennsylvania

refused to certify a class where it would alter the bar date largely for the benefit of late-filers and

their "arguably opportunistic counsel":

> [I]t is manifestly clear that it would be unwarranted, unfair, and possibly violate the due process rights of other creditors of the Debtor to effectively extend the bar

22

> date to benefit (1) the members of the putative class who failed to exercise
> vigilance; and (2) the pocketbook of the putative class's counsel, who obviously
> will seek a contingency fee from all unnamed class members who fail to opt out
> of the putative class. . . . [T]he Motion could have the effect of penalizing vigilant
> [claimant] employees to the benefit of those who ignored their known rights and
> their arguably opportunistic counsel.

*Sacred Heart*, 177 B.R. at 24.

Despite the unfairness this would impose on creditors who have filed timely claims, the

Speights firm alleges that this result is appropriate because notice to some creditors was

inadequate.  In particular, they claim that notice was not given directly to some known building

owners.  *See* Motion for Class Certification at 4-5 ("Debtors made no effort to provide these

creditors with direct notice of the bar date.  Because the notice to these known creditors was

inadequate, the certification of this class may be the only means by which many property damage

creditors can receive proper notice by which their claims can be discharged through this

bankruptcy.") [Dkt. No. 10014].

This argument is specious.  As an initial matter, this is the first time that Speights has

raised this supposed concern regarding notice to these possible claimants.  The timing of this

new-found worry for these claimants is extremely suspect, as it comes during Speights' last-ditch

effort to salvage some of its assumed leverage in this case.  It is even more suspect given

Speights' request in 2002 that the firm *not* be required to directly notify its clients of the Bar

Date or to provide identifying information so that all of those clients could be directly notified by

Grace.  Given this history, Speights should be estopped from now arguing that, without direct

notice to some creditors, notice was inadequate.  And, significantly, Speights has provided *no*

*evidence* that any creditor has failed to receive notice of the bankruptcy cases and Bar Date.

It is true that some courts have found that inadequate notice -- *if established* -- is a factor

weighing in favor of class certification.  *Sacred Heart*, 177 B.R. at 22.  Where notice has been

23

more than sufficient, as it has in this case, however, there is no justification whatsoever for waiving the Bar Date to allow claimants additional time to file. The court in *Sacred Heart* enunciated this principle in its ruling denying class certification: "if the putative unnamed class members have clearly received actual or constructive notice of the bankruptcy case and the bar date, denial of the implementation of the class proof of claim appears advisable." *Sacred Heart*, 177 B.R. at 22.

There is no basis for Speights' attempted attack on the notice that went out in these bankruptcy cases. Debtors worked for nearly a year at crafting a notice plan that would ensure that all affected creditors would receive some form of notice of the Bar Date and their rights and responsibilities with respect to filing claims. To create the notice plan, Debtors worked in conjunction with a nationally-recognized notice expert and the official committees representing various groups of creditors, and submitted several revisions to the Court. The Court ultimately approved the Notice Plan on April 22, 2002. After approval from the Court, Debtors spent over $4 million to widely publicize the Bar Date throughout the country. This included mailing individualized Notice packages to over 200,000 potential claimants or their counsel, publication in the New York Times, the Wall Street Journal and USA Today, publication in 11 national business and consumer magazines such as Fortune, Business Week, Time and People, publication in 35 trade magazines, publication on numerous online search engines, publication in several local newspapers, as well as wide-spread publication in Canada.

Significantly, property damage claimants are typically owners of large commercial properties who were well aware of issues affecting their properties, including asbestos-containing materials. Given the maturity of asbestos litigation in the U.S., these claimants had both the means and opportunity to pursue any claims in the court system. Indeed, many already

have. The Notice Program and Bar Date would have served to bring any remaining claimants before the Court here.

There is absolutely no evidence that any creditors were not provided notice of the Bar Date in some form. Indeed, the only instance where a decision was made not to directly notify certain potential creditors was when claimants' counsel requested that the Court *not* require *them* to provide the Bar Date Package to all of their clients or to list their clients so that Grace could provide actual notice to those potential creditors. At the specific request of the Asbestos Property Damage Committee of which Speights is a co-chairman, the Court abated the portion of the original Bar Date Order that required claimants' attorneys to provide such notice or information. Yet, even for these potential claimants, whose own attorneys refused to provide them notice or to identify them so that they could be sent notice by direct mail, notice *was* available in other forms. In sum, Speights' claim now that notice was inadequate because some known creditors were not *directly* notified cannot be credited, and is certainly not a basis for certifying a class action.

### D.    The Pre-Petition Class Certification Will Not Assist With Notice, Is Invalid For Purposes of Consideration Here and Does Not Justify Class Treatment.

A principal reason that bankruptcy courts look at whether a class has been certified prior to the bankruptcy petition is because such classes may already have procedures in place that will assist with efficiently giving notice to claimants and handling of the filing of claims. *See Sacred Heart*, 177 B.R. at 22-23. That is not a consideration in these bankruptcy cases, however, where notice has already been given to all potential claimants through means that were effective and approved by the Court. Even if notice procedures had been worked out in the original *Anderson Memorial* action, which is doubtful given the scant progress of the case, those notice procedures can provide no benefit here.

25

Moreover, claims have already been filed here and have been processed by the court-appointed notice agent and the parties. The court in *In re General Development Corporation* found that a class proof of claim would not advance the bankruptcy where claims had already been filed: "Here, the hundreds of proofs of claim at issue have already been filed and processed. As stated by the bankruptcy court in *In re Woodmoor*, 4 B.R. 186, 189 (Bankr. D. Colo. 1980), these 'claims can be conveniently and expeditiously managed by following normal bankruptcy procedures.'" *In re General Development Corporation*, 154 B.R. 601, 604 n.3 (Bankr. S.D. Fla. 1993).

Indeed, as discussed in greater depth in the following sections, class actions are rarely used in bankruptcy because the basic procedures and authority that are available to bankruptcy courts in Chapter 11 normally already provide all of the possible benefits that would be afforded by class certification. The U.S. Bankruptcy Court for the District of Colorado explained: "It is not unusual for large numbers of claims to be filed, objected to and allowed or disallowed in bankruptcy cases. The Bankruptcy Act and Rules are perfectly suited to effect the efficient handling of these landowner claims." *Woodmoor*, 4 B.R. at 189.

Finally, the existence of the pre-petition *Anderson Memorial* case cannot lend any credence here to the motion for class certification. *Anderson Memorial* was a class of South Carolina plaintiffs *only*; all attempts to further expand the class were rejected by the South Carolina courts themselves. *See* Debtors' Brief in Support of the Disallowance and Expungement of 1,900 Improper Claims Filed By the Law Firm Speights & Runyan at 4-5 [Dkt. No. 9546]. Thus, Speights is attempting to certify here a different and vastly broader class from that which was allowed in *Anderson Memorial*. As in *Sacred Heart* where class certification was

26

denied, "the putative class and its representatives has never been certified as appropriate by a
nonbankruptcy court." 177 B.R. at 23.

Furthermore, the class certification that was granted to South Carolina plaintiffs in
*Anderson Memorial* was awarded under circumstances and procedures that are so suspect and
improper that they should not be credited by this Court. The class certification by the state court
(1) was a conditional order issued *ex parte* in response to an "emergency" motion by the
Speights firm; (2) was an unabashed attempt to give South Carolina creditors an advantage over
other creditors in this bankruptcy; and (3) was invalidly finalized in violation of the automatic
stay in these cases. *See* Debtors' Brief in Support of the Disallowance and Expungement of
1,900 Improper Claims Filed By the Law Firm Speights & Runyan at 6-9 [Dkt. No. 9546].

### E.    The Proposed Class Fails to Meet The Elements of Rule 23.

Even if the bankruptcy court determines that a class action might serve some function in
the context of the bankruptcy, the court must still make another key determination before
certifying a class. Specifically, to be permitted, the potential class must meet the criteria of Fed.
R. Civ. P. 23. The burden is on the claimant seeking class certification to establish each element.
*Kaiser*, 278 B.R. at 64.

In applying the criteria of Rule 23, the Court need not look beyond Rule 23(b)(3) which
mandates that a class action may only be certified if it is "superior to other available methods for
the fair and efficient adjudication of the controversy." The Speights' proposed class action
cannot claim to be superior in any way to the case management plans that the Court has already
enunciated for the estimation of claims in these cases. Even if 23(b) were satisfied, however, the
criteria under Rule 23(a) -- numerosity, commonality, typicality and adequacy of representation -
- cannot be met.

27

1.    **Claimants Cannot Demonstrate That the Criteria of Rule 23(b) Have Been Satisfied.**

The Court must undertake the practical analysis, under Rule 23(b)(3), of whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." As noted, this will rarely be the case in bankruptcy simply because the very purpose of many of the bankruptcy procedures that were put in place by Congress was to enable the consolidation and efficient disposition of large numbers of claims. *Thomson McKinnon*, 150 B.R. at 101. Not only do class actions often not provide any benefit in bankruptcy, they may in fact impose a host of difficulties that did not previously exist. The Seventh Circuit, in *American Reserve*, has explained why class actions are often a "headache" to bankruptcy judges and therefore disfavored:

> Plaintiffs and their champions at bar hold the benefits of class litigation higher than do courts. The efficiency benefits of consolidation to one side -- because bankruptcy achieves them without the need for class suits -- *class actions are a headache for judges.* . . . Each starts off with complex problems about commonality of claims and adequate representation, followed by notice, opt-out, and other procedural issues unique to class actions, on top of which the substance of the case may be very difficult. Class actions consume judicial time, putting off adjudication for other deserving litigants; they impose steep costs on defendants, even those in the right. The systemic costs of class litigation should not be borne lightly.

840 F.2d at 490 (emphasis added).

Here, notice has already been provided to all creditors, informing them of the need to file individual claims prior to the Bar Date to preserve their rights. All vigilant asbestos property damage claimants have filed individual claims and are already before this Court. As one would expect, these sophisticated owners of large commercial properties have retained their own counsel. For months, the processing of these claims has been underway by the parties, and the parties have been negotiating and winnowing down the claims against the Debtors. The Court has, after extensive briefing and argument, initiated procedures whereby it will estimate large

28

numbers of property damage claims on a consolidated basis as part of a phased estimation procedure.

In short, there is *nothing* to be gained here by proceeding as a class action. Instead, as the Seventh Circuit warns, a class action will be nothing but a "headache." Certifying a class will move these cases backward by nullifying the Bar Date. It will create a group of creditors that is unknown, and largely unknowable, in its size and complexity. It will raise due process concerns and questions of unfairness to creditors who have already filed claims in conformity with the original Bar Date. It will add further complexity to the estimation process by creating a new class of theoretical claimants. It will likely require that a new notice program and bar date be negotiated, drafted, and approved; that claimants file new claims, and that class members be given the opportunity to opt out of the class. The delays and uncertainties inherent in this scheme are manifest.

Speights cannot show that proceeding as a class action is superior in any way to the case management plans that are already in place in this bankruptcy. In truth, the only benefit would be to the Speights firm by affording it the opportunity to automatically obtain thousands of "clients", most of whom it has never had any contact with and who have never expressed any interest in being represented by Speights.

### 2.  Claimants Cannot Demonstrate That The Criteria of Rule 23(a) Have Been Satisfied.

Claimants have utterly failed to demonstrate the elements of Federal Rule of Civil Procedure 23(a) with respect to the proposed class. While none of the elements can be satisfied here, the most glaring shortcomings concern the numerosity and adequacy of representation requirements.

With respect to numerosity, Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." That is not the case here. In response to the Notice and Bar Date, all timely individual claims have already been filed and are pending before this Court. While nearly 4000 claims were filed, the majority of those claims have already been withdrawn or expunged for lack of factual support or authorization. For example, nearly half of all the claims filed by Speights were dropped because they lacked any identification of a Grace product. The number of claims remaining, 600 claims, is certainly not too numerous for a bankruptcy court to administer efficiently.

The Bankruptcy Code and Rules are specifically designed to permit bankruptcy courts to manage large numbers of claims using consolidated and efficient procedures without the need for class actions. *Thomson McKinnon*, 150 B.R. at 101 ("Generally, the bankruptcy court's control of the debtor's affairs makes class certification unnecessary. . . . Indeed, the bankruptcy process is especially suited to the concept of individual filing and resolution of many claims in one case without the need for a series of suits which could otherwise be resolved in a class action.") (citation omitted).

With respect to adequate representation and adequate protection of the proposed class, there is no showing that Anderson Memorial Hospital and its counsel will adequately represent other members of the proposed class. Quite the opposite is true. The Speights firm's neglect of the Bankruptcy Rules, the Federal Rules and this Court's own rules in this case demolish any claim of adequately representing what Speights purports is a nationwide class of thousands of creditors. The firm's dubious history of filing thousands of claims under penalty of perjury, then withdrawing most of those claims when challenged, should raise additional red flags with regard to the capacity of Speights to responsibly and adequately represent claimants.

30

Indeed, the dubious history of Speights' "class representation" extends far beyond these

bankruptcy cases.  Speights has a long record of questionable practices in the representation of

class members in other cases, including the following:

- *First,* in the *Celotex* bankruptcy, where Speights also represented Anderson Memorial
  Hospital, Speights purported to finally and fully compromise the claims and rights of a
  class of South Carolina building owners without notice to the class and an opportunity to
  be heard as required by both South Carolina and Federal Rule 23.  Either this was a
  knowing and flagrant disregard of the rights of the class or a shocking ignorance of them.
  Such conduct demonstrates that Speights is focused only on its own interests and the
  interests of Anderson Memorial Hospital - even at the expense of unnamed claimants to
  whom it also owes fiduciary duties.

- *Second,* in *Central Wesleyan*, where Speights served as counsel to the class
  representative, Speights again acted to protect its own interests, which were diametrically
  opposed to the interests of the class members the firm was *supposed to* be representing.
  To help avoid the consequences of a malpractice action brought against the firm by a
  client, Speights took the extraordinary step of seeking an order from the court declaring
  that the firm's ex-client, Concordia College, was a member of the *Central Wesleyan*
  class, over the express objections of Concordia College.  Although Speights was counsel
  to the *Central Wesleyan* class (whose already existing members would not benefit from
  the addition of a new member), Speights filed the application not as class counsel (though
  he was) and not as Concordia's ex-counsel (though he was), but *pro se* on behalf of his
  own personal interests.

- *Third*, in the schools asbestos class action in Philadelphia (*In re Asbestos Schools Litig*,
  Case No. 94-1494), in which Mr. Speights was co-counsel for the class, co-lead counsel
  for the plaintiff reported the following to the court concerning Mr. Speights' conduct:

> In the ensuing three years, Mr. Speights firm made no significant
> contribution to the  persecution of the case.  Rather, it repeatedly
> took actions that compromised the interests of the class in favor of
> its other clients and vitiated or diminished any value attributable to
> its earlier efforts. . . .  In this case, Mr. Speights simply abandoned
> his responsibility to the class and pursued what he apparently
> viewed as more lucrative avenues to exploit the expertise
> developed at the class' expense.

These actions, coupled with Speights' complete disregard for the Court's rules in this

Chapter 11, demonstrate that Speights is not qualified to serve as counsel to the class proposed in

Speights' motion.

31

Finally, Speights has not demonstrated that the interests of Anderson Memorial Hospital are aligned with those of other property damage creditors. Mirroring prior litigation where Speights has sought to represent a class, the interests of Speights' main client, Anderson Memorial Hospital, and of the Speights firm itself, conflict with those of other purported class members. Not surprisingly, individual claimants -- including the American Medical Association -- have taken steps in these cases explicitly to inform the Speights firm that they *do not want that firm to represent their interests. See* Debtors' Brief in Support of the Disallowance and Expungement of 1,900 Improper Claims Filed By the Law Firm Speights & Runyan at 3; Tab 4 (AMA Affidavit) [Dkt. No. 9546]. These claimants have filed their own claims and have retained their own attorneys. *Id.* (letters from counsel to Maryland Casualty Company and counsel to Building Laborers Local 310). The Speights firm now attempts to force these creditors to participate in a purported class action with Speights taking the lead, an imposition that should not be permitted.

In the absence of any showing that a class action would be a superior method of proceeding, or that the other requirements of Rule 23 have been met, the Court must deny the motion for class certification.

**IV.    Conclusion.**

The motion of Speights & Runyan for class certification is untimely, unfair to existing creditors and does not meet the criteria for certification under either the Bankruptcy Rules or the Federal Rules of Civil Procedure. Accordingly, the motion should be denied.

32

Dated:  December 2, 2005

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, PC
Michelle Browdy
Janet S. Baer
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG,
JONES & WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier
19801)
(302) 652-4100

Co-Counsel for Debtors and Debtors in
Possession