IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **W. R. GRACE & CO., et al.** | ) | **Case No. 01-01139 (JKF)** |
| | ) | |
| Debtors. | ) | **(Jointly Administered)** |
| | ) | |
| | ) | **Re: Docket Nos. 9311, 9315** |
| | ) | **Surreply Deadline: January 20, 2006 at 12:00 p.m.** |
| | ) | **Hearing Date: January 24 and 26, 2006 at 9:00 a.m.** |

## DEBTORS' REPLY IN SUPPORT OF THEIR FIFTEENTH OMNIBUS OBJECTION (SUBSTANTIVE) TO ASBESTOS PROPERTY DAMAGE CLAIMS

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Michelle H. Browdy
Janet S. Baer
Salvatore F. Bianca
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

*And*

PACHULSKI, STANG, ZIEHL, YOUNG, JONES
& WEINTRAUB, PC
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ............................................................................................ i

Introduction ........................................................................................................ 1

Claimants' Burden of Proof................................................................................ 2

Argument............................................................................................................. 4

I.  Traditional Property Damage Claims, Other than Speights & Runyan Claims.................. 4

    A.  Motley Rice Claims................................................................................ 5

    B.  City of Philadelphia Claims .................................................................. 6

    C.  Prudential Insurance Company of America Claims ................................ 6

    D.  Individual Pro Se Claimants.................................................................. 9

        1.  Phillip Shawn Moore.................................................................. 9

        2.  Marcella Paulette....................................................................... 9

II. Non-Traditional Property Damage Claims ........................................................ 9

    A.  Biersdorf & Associates' Clients............................................................ 10

        1.  Minneapolis Stigma Claims ...................................................... 10

        2.  No Signature.............................................................................. 12

    B.  G-I Holdings, Inc. Claims ..................................................................... 12

        1.  Contribution and Indemnification ............................................. 13

        2.  No Product Identification Documentation ................................. 15

        3.  Missing Basic Information About Property ............................... 15

III. Speights & Runyan Claims .............................................................................. 16

    A.  Unauthorized Claims (per 13th Omnibus Objection) ........................... 16

        1.  38 Claims Speights Was Never Authorized To File .................. 16

        2.     71 Claims Speights Was Not Authorized To File By The Bar Date......... 18

B.    Previously Adjudicated Claims............................................................................ 19

C.    Previously Settled Claims ................................................................................... 20

D.    Missing Basic Property Address ......................................................................... 21

E.    No Signature........................................................................................................ 22

F.    Missing Basic Information .................................................................................. 22

G.    No Product Identification Documentation .......................................................... 23

H.    Built Too Late to Contain MK-3 ........................................................................ 26

I.    Georgia Claims Barred by Statute of Limitations.............................................. 26

J.    Tennessee Claims Barred by Statute of Repose................................................. 27

K.    Falsely Asserts 2003 as Date of Knowledge of Asbestos .................................. 28

Conclusion......................................................................................................................... 32

K&E 10873205.12

**Introduction**

On September 1, 2005, the Debtors filed their 15th Omnibus Objection (Substantive) to all 4002 pending asbestos property damage claims, Docket No. 9315. Since that filing, nearly 75% of these claims have been voluntarily withdrawn, expunged and/or reclassified, leaving 1137 PD claims currently pending. Consistent with this Court's Scheduling Order entered December 19, 2005, Docket No. 11408, the Debtors submit this Reply Brief in support of certain objections made to certain of those claims which are set to be heard on January 24 and 26, 2006. Specifically, as set out in the Scheduling Order, the Debtors file this reply on certain dispositive objections to claims which require little or no evidentiary record development for adjudication.

In conformity with the agenda for the January 24 and 26 hearing, attached as Schedule 1 to the Scheduling Order and attached hereto for the convenience of the Court as Exhibit A, this Reply brief is organized as follows. After addressing the burden of proof at issue, Section I addresses fatal shortcomings in a handful of traditional PD claims filed by firms or claimants other than the law firm Speights & Runyan ("Speights").[1] Section II addresses 109 pending non-traditional PD claims that are barred as a matter of law. These non-traditional claims consist of: (i) 53 claims filed for claimants in Minneapolis impermissibly seeking recovery for alleged "stigma" to property, and (ii) 56 claims filed by G-I Holdings, Inc. seeking contribution and indemnification that likewise fail as a matter of law. Section III addresses claims filed by Speights, including claims that Speights had no authority to file, claims that are barred as a matter of law, and claims for which Speights failed to provide even the minimal evidentiary basis needed to go forward.[2]

---

[1] Slightly fewer claims are addressed in this reply than listed on the Scheduling Order because of the Debtors' continuing efforts to resolve objections with claimants.

[2] The Debtors incorporate by reference all claim forms and supporting materials for all claims set for hearing on January 24 and 26, 2006, will have these materials accessible to the Court at those hearings and are prepared to

For the reasons discussed in the 15th Omnibus Objection and herein, each of the PD Claims set for hearing on January 24 and 26 should be disallowed with prejudice.

### Claimants' Burden of Proof

As an initial matter, a claimant must allege facts sufficient to support a legal basis for the claim. *See In re Allegheny International, Inc.*, 954 F.2d 167, 173 (3rd Cir. 1992). *If* the assertions set forth in the filed claim meet this standard, the claim is *prima facie* valid and is deemed allowed pursuant to Bankruptcy Code § 502(a) unless a party in interest objects to the proof of claim. *See id;* Fed. R. Bankr. P. 3001(f). When an objection is filed, the objecting party bears the burden of presenting sufficient evidence to overcome the presumed validity of the claim, *assuming there is such presumed validity. See Allegheny International*, 954 F.2d at 173-74; *In re Pagnotti,* 269 B.R. 326, 331 (Bankr. M.D. Penn. 2001).

Although the burden of proof is placed on different parties at different times, the ultimate burden of persuasion is always on the claimant. *Allegheny International,* 954 F.2d at 174; *In re Holm,* 931 F.2d 620, 623 (9th Cir. 1991); *see also In re Harrison,* 987 F.2d 677, 680 (10th Cir. 1993) ("If objection is made to the proof of claim, the creditor has the ultimate burden of persuasion as to the validity and amount of the claim.").

The Bar Date Order entered on April 22, 2002 (Docket No. 1960) further shifted the burden of proof onto claimants by requiring claimants to complete a customized Court-approved PD Claim Form in order to establish a valid PD Claim. Unlike typical proofs of claim, the PD Claim Form required claimants to provide greater detail regarding their claims and to support their claims with relevant documentation. The failure to provide such support prevents the

---

submit them earlier if requested. However, due to the volume of this material, for the convenience of the Court the Debtors plan to submit in advance of the hearing only: (i) the relevant claim forms for the traditional property damage claims addressed in Section I, (ii) an exemplar of the Minneapolis "stigma" claims and the G-I Holdings claims addressed in Section II, and (iii) exemplars of the Speights claims addressed in Section III.

2

claims at issue from enjoying any *prima facie* validity. *See, e.g., In re Circle J Dairy, Inc.*, 112 B.R. 297, 301 (W.D. Ark. 1989) ("To treat a claim lacking necessary support as *prima facie* valid can lead to abuses of the claim system.").

Even if a claimant meets its initial burden and a claim is presumed *prima facie* valid, the burden of persuasion remains with the claimant. *See Allegheny International*, 954 F.2d at 174; *Pagnotti*, 269 B.R. at 331; *In re Pugh*, 157 B.R. 898, 901 (9th Cir. BAP 1993) (claimant bears ultimate burden of persuasion as to validity and amount of the claim by a preponderance of the evidence). In fact, "[i]f the objecting party overcomes the *prima facie* validity of the claim, then the burden shifts to the claimant to prove its claim by a preponderance of the evidence." *Smith v. Sprayberry Square Holdings, Inc. (In re Smith)*, 249 B.R. 328, 332-333 (Bankr. S.D. Ga. 2000).

Courts have held that the *prima facie* validity of a claim can be negated by an objector providing either factual evidence *or* a legal basis challenging the claim. For instance, *In re Broadband Wireless Intern. Corp.*, the Bankruptcy Appellate Panel for the 10th Circuit held that:

> The objecting party has the burden of going forward with evidence supporting the objection. Such evidence must be of probative force equal to that of the allegations contained in the proof of claim. However, an objection raising only legal issues is sufficient. Once the objecting party has reached this threshold, the creditor [claimant] has the ultimate burden of persuasion as to the validity and amount of the claim.

*In re Broadband Wireless Intern. Corp.*, 295 B.R. 140, 145 (10th Cir. BAP 2003) (citations omitted).[3]

Accordingly, the objecting party does not need to provide actual evidence to rebut the *prima facie* validity of the claim as long as it sufficiently negates the basis of the claim. *See, e.g., In re Mariner Post Acute Network, Inc.*, 2005 WL 3086561, at *1 (3rd Cir. Nov. 18, 2005)

---

[3]  *See also In re McLaughlin*, 320 B.R. 661, 665 (Bankr. N.D. Ohio 2005); *In re Cluff*, 313 B.R. 323, 337 (Bankr. D. Utah 2004).

(unpublished opinion) (rejecting claimant's argument that objector did not present evidence against its claim where objector negated facts asserted in the claim); *In re Harford Sands Inc.,* 372 F.3d 637, 641 (4th Cir. 2004) (holding that debtor carried its burden of rebutting claim's presumptive validity by introducing "evidence" that the amount of claim was arrived at arbitrarily without supporting documentation, no evidence existed that debt was assigned, and claim was time-barred under state statute of limitations).

Moreover, *it is not necessary to negate the facts in the proofs of claim at issue when the facts necessary to support the claims were never asserted in the first place.* Indeed, Courts have held that although the proof of claim can be used as evidence in support of the claim, it can similarly be used by an objecting party as evidence against the claim. For example, in *Circle J Dairy,* the court held as follows:

> This court finds that the proof of claim may be used as evidence to support a creditor's claim and also to defeat it. The court below erred in its refusal to scrutinize the claim on the basis that it is not evidence. The legal sufficiency of the claim was called into question. The court *must* determine the legal sufficiency of a claim alleged to be facially defective and, under 11 U.S.C. § 502, must either disallow the claim or determine the amount to be allowed under the claim.

*Circle J Dairy, Inc.,* 112 B.R. at 300 (emphasis in original). Thus, facially defective claims and the lack of supporting documentation are themselves evidence of the invalidity of claims.

## Argument

## I.    Traditional Property Damage Claims, Other than Speights & Runyan Claims

As set forth in Schedule 2 to the Scheduling Order, objections relating to a handful of traditional property damage claims not filed by Speights are set for hearing on January 24, 2006. All of the claims described below should be disallowed and expunged.

4

### A.   Motley Rice Claims

The Debtors objected to the following 3 claims because, *inter alia*, such claims are subject to a settlement agreement and are thus barred by basic principles of contract law:  Church of St. Joseph (Claim No. 4075); Church of St. Luke (Claim No. 6934); and Church of St. Leo the Great (Claim No. 6935).   Motley Rice filed similar responses regarding each of these three claims.  *See* Docket No. 9858, 9868 and 9864.  As to this issue, the responses simply state that Motley Rice has no records of the respective claimants settling their claims with Grace and point to a September 2005 letter to the Debtors which asked for "any and all documents or materials evidencing previous settlement of claims against W.R. Grace for asbestos property damage made" by these claimants.  Exhibit 1 to Docket Nos. 9858, 9868, 9864.

In response to this request, Debtors' counsel sent Motley Rice a package which included the materials governing the settlement of the claims.   *See* letter attached as Exhibit B.  Specifically, this package included (i) the amended complaint, (ii) relevant pretrial orders, and (iii) the August 5, 1994 settlement agreement from *In re School Asbestos Litig.*, Case No. 83-0268 (E.D. Pa.).  The *School Asbestos* settlement agreement is attached as Exhibit C (including all exhibits thereto, with the exception of Exhibit A, which is covered by a confidentiality provision).  Collectively, the documents provided by the Debtors demonstrate that these claims were included in the *School Asbestos* settlement.

The *School Asbestos* settlement covered "entities which own or operate in whole or in part any non-public, non-profit elementary or secondary educational facilities, including entities with religious affiliations, in the United States . . ."[4]   The Motley Rice claims were filed on account of entities that fall squarely within this category.  Specifically, (i) Claim No. 4075

---

[4]   Settlement Agreement, dated August 5, 1994, by and between W. R. Grace & Co. -- Conn. and the *In re School Asbestos Litig.* Plaintiffs, p. 6.

(Church of St. Joseph) identifies the property's purpose as "Church and School" (p. 2), and the supporting documentation identifies the claimant as "St. Joseph School;" (ii) Claim No. 6934 (St. Luke) identifies the property's purpose as "Parochial School" (p. 2), and the supporting documentation identifies the claimant as "St. Luke Parochial School"; and (iii) Claim No. 6935 (Leo the Great) lists the property's purpose as "Parish School" (p. 2). The relevant *School Asbestos* pretrial orders (that Debtors' counsel provided to Motley Rice) demonstrate that these claimants did not opt out of the *School Asbestos* settlement and these claims were included in the *School Asbestos* settlement.

### B.      City of Philadelphia Claims

The Debtors objected to Claim Nos. 11313 and 11314 filed by the City of Philadelphia because, *inter alia*, these claims failed to include certain basic information about the properties at issue. Specifically, Claim No. 11313 failed to include the following information requested in the PD Claim Form: (i) the number of floors on the property (Question 3-A(6)); (ii) the approximate square footage of the property (Question 3-A(7)); and (iii) the date when the property was built (Question 3-A(8)). Claim No. 11314 failed to include information regarding whether the claimant owns the property for which the claim is being asserted (Question 3-A(3)) and the date when the property was built (Question 3-A(8)).

As previously discussed, claimants bear the ultimate burden in proving both the validity and the amount of a claim. By omitting basic property information requested in the PD Claim Form, claimants have failed to meet such burden. Accordingly, Claim Nos. 11313 and 11314 should be disallowed and expunged.

### C.      Prudential Insurance Company of America Claims

In response to the Debtors' statute of limitations objections to the Georgia claims set forth on Exhibit D-4 to the 15th Omnibus Objection, the Debtors received responses from

Prudential Insurance Company for Claim Nos. 6945 and 6948. These claims were filed on account of two properties located in Atlanta, Georgia: 2200 Century Parkway and 2600 Century Parkway, both of which were built on or before 1973. *See* Claim Nos. 6945 and 6948 at p. 2.

Both of these claims are barred by Georgia's statute of limitations. Georgia's Supreme Court has expressly held that an action under Georgia law for asbestos property damage commences on the date of the subject property's "substantial completion." *Corp. of Mercer Univ. v. National Gypsum Co.*, 368 S.E.2d 732, 733 (Ga. 1988) (holding that Georgia discovery rule "is confined to cases of bodily injury which develop only over an extended period of time" and that "[a]n action under OCGA § 9-3-30 [four year SOL for damage to realty] must be brought within four years of *substantial completion*.") (emphasis added). Prudential admits in the Prudential Bankruptcy Claims that the Century Parkway buildings were completed in 1973. Accordingly, under Georgia's statute of limitations, Prudential's claims needed to have been brought by 1977. Instead, Prudential waited until 1987 to file the New Jersey *Prudential* litigation and March 2003 to file its proofs of claim in Grace's bankruptcy.

In its response, Prudential states that Grace is precluded from arguing that these claims are barred by the applicable statute of limitations because this issue was resolved in a prior litigation. *See* Prudential Response (Docket No. 10571) at p. 20. Specifically, Prudential relies upon *Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*, No. 87-4238 (D. N.J. June 9, 1994 ) (the "Prudential Decision," attached as Exhibit D).[5] Prudential's argument is incorrect for the following reasons.

---

[5] In *Prudential Ins. Co. of Am. v. U.S. Gypsum Co.,* No. 87-4238 (D. N.J.), Prudential sued various manufacturers of asbestos-containing products, including W. R. Grace & Co. on account of asbestos that was allegedly present in 61 of Prudential's buildings. The final pre-trial order limited this universe to 18 of Prudential's buildings, including the building that is the subject of Claim Nos. 6945 and 6948. See Order Establishing a Final Pretrial Schedule, Case No. 87-4238 (March 22, 1996). Prudential asserted claims under RICO and state-law causes of action.

*First*, the 1993 Prudential Decision did <u>not</u> hold that these claims are not time-barred by the statute of limitations. Instead, the Prudential Decision simply denied the defendants' motion for summary judgment on that issue, while at the same time denying Prudential's motion to strike the statute of limitations defense. *See* Prudential Decision at pps. 29-30; *see also Prudential Ins. Co. of Am. v. U.S. Gypsum Co*, 359 F.3d 226, 231 (3d Cir. 2004). Therefore, the ultimate issue of whether Prudential's claims for these buildings are time barred was <u>not</u> adjudicated by the Prudential Decision; it was merely rejected at a single procedural juncture. The Prudential Decision does not constitute a "final judgment on the merits" that could preclude Grace from pursuing its statute of limitations objections. *U.S. v. Athlone Indus. Inc.,* 746 F.2d 977, 983 (3d Cir. 1984). In fact, in a published opinion reported after Grace filed for bankruptcy, the Third Circuit affirmed a later decision by the Prudential court in 2001 *granting* the remaining defendants' renewed statute of limitations motion. *Prudential*, 359 F.3d 226.

*Second*, in denying the defendants' summary-judgment motion, the Court applied the New Jersey statute of limitations to <u>all</u> of the claims, regardless of where the underlying buildings were located. *See* Prudential Decision at 16.[6] As a result, the Prudential court applied New Jersey's statute of limitations rules (including New Jersey's discovery rule) to the *Georgia buildings* that are the basis for the Prudential's claims. The Prudential court's determination (with respect to the state law governing statutes of limitations in that case) is inapposite to the law that this Court should apply in resolving these claims. Prudential's claims were filed in this Court and, as a result, Prudential has submitted itself to the jurisdiction of this Court, including the choice of law rules by which this Court is bound. *In re Best Products Inc.*, 68 F.3d 26 (2d Cir. 1995). This Court is required to apply Georgia law to Prudential's claims, including

---

[6]    In reaching this decision, the court speculated that the New Jersey Supreme Court would have reached the same decision. *Id.*

8

Georgia's statute of limitations. *Grogan v. Garner*, 498 U.S. 279, 283 (1991) ("The validity of a creditor's claim is determined by rules of state law.").

Therefore, Claim Nos. 6945 and 6948 are barred by Georgia's statute of limitations, and the Court should disallow and expunge both.

### D.    Individual Pro Se Claimants

#### 1.    Phillip Shawn Moore

Claim No. 14400 fails to include information regarding whether the claimant owns the property for which the claim is being asserted (Question 3-A(3)) and the date in which the property was purchased (Question 3-A(4)). The claimant's response does not contest the fact that the claim is missing such basic information. *See* Docket No. 10702. Accordingly, Claim No. 14400 should be disallowed and expunged.

#### 2.    Marcella Paulette

The Debtors objected to Claim No. 15352, *inter alia*, because it lacks any product identification documentation and does not identify a product on the face of the claim. As outlined above, the claimant has the initial burden to allege facts sufficient to support a legal basis for the claim. Without supporting product identification documentation, which was required by the Court-approved PD Proof of Claim Form, the claim lacks sufficient factual support and cannot be proved by a preponderance of the evidence. *See In re Dow Corning Corp.*, 250 B.R. 298, 353-54 (Bankr. E.D. Mich. 2000) ("It is well established that product identification is an essential element of every products liability action."). Accordingly, Claim No. 15352 should be disallowed and expunged.

## II.    Non-Traditional Property Damage Claims

As set forth in Schedule 2 to the Scheduling Order, objections relating to 109 non-traditional property damage claims are set for hearing on January 24, 2006. These non-

traditional claims consist of 53 claims filed by Biersdorf & Associates on behalf of claimants in Minneapolis seeking recovery for alleged "stigma" to property and 56 claims filed by G-I Holdings, Inc. ("G-I") seeking contribution and indemnification.

## A.     Biersdorf & Associates' Clients

### 1.     Minneapolis Stigma Claims

In the 15th Omnibus Objection, the Debtors objected to each of the 53 Category II Claims that were filed by the law firm of Biersdorf & Associates PA (collectively, the "Minneapolis Stigma Claims," for which Claim No. 11349 serves as an exemplar), because the claims fail to show that the subject properties are contaminated or otherwise damaged. Instead, these claims seek damages *solely* on account of an alleged "stigma associated with the neighborhood contamination caused by Grace."

Because each of the Minneapolis Stigma Claims were filed on behalf of properties located in Minneapolis, Minnesota, the Court must determine whether Minnesota law allows a party to assert a property damage claim for an alleged (but unsubstantiated) reduction in property value due to "stigma," where the claimant cannot show that the subject property is contaminated or otherwise damaged. *Butner v. U.S.*, 440 U.S. 48 (1979). Minnesota law does not recognize such a claim, and, therefore, the Court should enter an order disallowing and expunging each of the Minneapolis Stigma Claims. *See In re G.I. Indus. Inc.*, 204 F.3d 1276, 1281 (9th Cir. 2000) ("[A] claim cannot be allowed [under section 502(b)(1)] if it is unenforceable under nonbankruptcy law."); *In re Sanford*, 979 F.2d 1511, 1513 (11th Cir. 1992) ("a claim against the bankruptcy estate will not be allowed in a bankruptcy proceeding if the same claim would not be enforceable against the debtor outside of bankruptcy").

The Minneapolis Stigma Claimants ask this Court to deviate from the axiomatic tenet that, to recover for property damage, the claimant must show that the property is *actually*

10

*injured.* Instead of claiming any such injury, the Minneapolis Stigma Claims invent a new basis for recovery, namely that the subject properties are harmed by an unsubstantiated "stigma." There is one fundamental problem with this theory - - no Minnesota court has ever recognized a tort action for "stigma" or "perception" of injury.

Minnesota courts allow property damage claims only where the claimant has alleged *actual damage* to the subject property. *See, e.g., Mayavski v. Bemboom,* 1999 WL 343834, at \*1 (Minn. App. June 1, 1999). Then, once the claimant has established *actual* injury, an accepted method of determining compensation for [the] tortious injury to property is the lesser of diminution in value or cost of restoration. *See Lawlin v. City of Long Prairie,* 355 N.W.2d 764, 767 (Minn. App. 1984). Even then, the claimant bears the burden of showing the amount of diminution caused by the harm, and "[a]n assertion of stigma without corresponding evidence of diminution in value is insufficient proof of damages." *Russell v. Carroll,* 2004 WL 2093555 , at \*3 (Minn. App. Sept. 21, 2004); *See also Jackson v. Reiling,* 249 N.W.2d 896, 897 (Minn. 1977) (explaining that plaintiff cannot recover damages that are merely speculative). Thus, while Minnesota courts have looked to diminution in value stemming from stigma as a means of determining damages - once the claimant has already shown that the property is actually harmed - Minnesota courts *do not recognize stigma as a harm itself.*[7]

In their response, the Minnesota Claimants cite to *Dealer's Mfg. Co. v. County of Anoka,* 615 N.W.2d 76 (Minn. 2000) as their only support for asserting that a claimant may recover under Minnesota law for an unsubstantiated diminution in value caused by an unsupported "stigma." *See* Docket No. 10834. *Dealer's,* however, does *not* support the Minneapolis Stigma

---

[7]    Similarly, courts outside of Minnesota that have considered this issue have found that a claimant cannot recover on account of any alleged "stigma" associated with contamination. *See, e.g,. Ramirez v. AKZO Nobel Coatings,* 791 N.E.2d 1031, 1034 (Ohio Ct. App. 2003); *Chance v. BP Chemicals, Inc.,* 670 N.E.2d 985, 993 (Ohio 1996); *Leaf River Forest Products, Inc. v. Ferguson,* 662 So.2d 648 (Miss. 1995); *Twitty v. State,* 354 S.E.2d 296 (N.C. Ct. App. 1987); *Hammond v. City of Warner Robins,* 482 S.E.2d 422, 429 (Ga. Ct. App. 1997)

11

Claimants' position. In fact, as Biersdorf & Associates should be aware due to its involvement in the case, it is *completely inapposite* to the issue at hand.

In *Dealer's,* a real-estate taxpayer petitioned a Minnesota tax-court for a reduction in the assessment of its contaminated property on the basis that, because the county failed to take into account the stigma effect on the market value of the property, the assessed value exceeded the market value of the property. Specifically, the taxpayer argued that Minn. Stat. § 273.11, subd. 17 (1998) (entitled "Valuation of Contaminated Properties"), allows for a reduction in the assessed value of contaminated property for tax purposes due to stigma stemming from the contamination. In interpreting Minn. Stat. § 273.11, subd. 17, the court held that stigma to property may be considered in assessing the real estate taxes for Minnesota properties. *Dealer's* at 80. *Dealer's* does not address the issue of whether a claimant may recover stigma damages in tort. The case addresses only the interpretation and applicability of a Minnesota tax code provision for assessment purposes -- it does not change the law of what a property damage claimant can recover.

### 2. No Signature

The Debtors objected to Claim No. 11337 for lack of a signature. This objection is not mere procedure -- rather, it is a basic requirement of a valid proof of claim that a creditor or the creditor's representative attest to veracity of the information provided. *See* Fed. R. Bank. P. 3001(b) ("A proof of claim shall be executed by the creditor or the creditor's authorized agent except as provided in 3004 and 3005"); *see also* Official Bankruptcy Form 10. Nothing in the response filed on behalf of the Minneapolis Stigma Claimants even contests this issue.

### B. G-I Holdings, Inc. Claims

In the 15th Omnibus Objection at Exhibit H-1, the Debtors objected to 68 claims in which companies and asbestos trusts sought recovery from Grace for contribution and/or

12

indemnification. The Debtors and the respective claimants have entered into a stipulation providing for the withdrawal of 12 of these claims. As a result, only 56 contribution/indemnification claims remain pending.

Each of the remaining claims was filed by G-I Holdings, Inc, ("G-I") and seeks contribution and indemnification from Grace for the payment by G-I of asbestos personal injury and property damage claims that G-I *may eventually* have to pay to claimants. *See, e.g.* Exemplar Claim No. 7825 (seeking recovery "in an undetermined and unliquidated amount based upon G-I Holdings' rights and entitlements to indemnification, contribution, reimbursements or other payments . . . for all known pending asbestos claims" and "for all unknown pending asbestos claims."). The G-I Claims fail to reference let alone describe or provide any evidence supporting any specific payments by G-I claims for any liability supposedly owed by the Debtors.

### 1.     **Contribution and Indemnification**

The Court should disallow and expunge each of the G-I Claims because they fail to plead facts that, even if proven, would satisfy the requirements to recover from Grace for contribution and/or indemnity. Specifically, G-I has not shown that it has or will ever be forced to pay on account of a Grace product, let alone that any such payments have or would release Grace from liability, as required for indemnification and contribution.

### i.     **G-I Is Not Entitled to Indemnification from Grace**

The Restatement of the Law of Torts (Third): Apportionment of Liability provides:

> [w]hen two or more persons are or may be liable for the same harm and one of them discharges the liability of another in whole or in part by settlement or discharge of judgment, the person discharging the liability is entitled to recovery indemnity . . ."

§ 22(a) (Indemnity).[8] Thus, a party can only recover *indemnity* if "he *extinguishes* the *liability of the indemnitor*, either by judgment or settlement." § 22, Comment b (Extinguishing liability of the Indemnitor) (emphasis added).

*First*, G-I has failed to establish that indemnity is appropriate because G-I has not (and could not) show that it is *liable* for the "same harm" (underlying asbestos PD claims) as Grace. *Second*, G-I has not shown that it has *paid* any amounts on account of asbestos claims for which Grace is also liable. *Third*, G-I has not proven that it has "discharged" Grace's liabilities for such claims by obtaining a complete *release* from liability for Grace from such claims. Instead, G-I seeks recovery for unliquidated and contingent amounts on behalf of hypothetical monies that it *may be eventually be found liable* to pay. As a matter of law, G-I may not seek indemnity from Grace for hypothetical and speculative claims.

### ii.     G-I is Not Entitled to Contribution from Grace

Similarly, a party may not seek *contribution* for amounts paid to third parties unless they have first completely extinguished the liability of the person against whom contribution is sought. *The Restatement of the Law of Torts (Third): Apportionment of Liability, § 23(a) (Contribution)* provides:

> [w]hen two or more persons are or may be liable for the same harm and one of them discharges the liability of another by settlement or discharge of judgment, the person discharging the liability is entitled to recover contribution . . ."

Thus, "[a] person seeking contribution must extinguish the liability of the person against whom contribution is sought." §23, Comment b (Extinguishing liability of the person against whom contribution is sought); *see also* Uniform Contribution of Among Tortfeasors Act § 1(d) ("[a]

---

[8]  Since G-I failed to reference any specific payments for which it seeks indemnity and contribution, it is impossible for Grace to reference state-specific law covering such payments. As a result, Grace relies upon applicable restatements for present purposes.

tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished by the settlement . . ."). This rule is only fair. "Otherwise the person against whom contribution is sought would be subject to double liability." *The Restatement of the Law of Torts (Third): Apportionment of Liability* §23, Comment b.

As with its indemnification claims, G-I has failed to establish that (i) Grace is jointly liable for any of G-I's asbestos claims; or (ii) any of G-I's current or prospective judgments or settlement agreements with asbestos claimants have (or will) release Grace from all liability to the respective claimants. Therefore, G-I is barred as a matter of law from seeking contribution.

### 2.   No Product Identification Documentation

The Debtors also objected to the G-I Claims because they lack any product identification documentation and do not identify a product on the face of the claims. As discussed above, the claimant has the initial burden to allege facts sufficient to support a legal basis for the claim. Without supporting product identification documentation, required by law as well as by the Court-approved PD Proof of Claim Form, the claimants have not alleged facts sufficient to support the claim and cannot prove their claim by a preponderance of the evidence.

### 3.   Missing Basic Information About Property

The G-I Claims failed to include the following information requested in the PD Claim Form: whether the claimant owns the property for which the claim is being asserted (Question 3-A(3), when the property was purchased (Question 3-C(4)), the property's use (Question 3-A(5)), the number of floors on the property (Question 3-A(6)); approximate square footage of the property (Question 3-A(7)); and the date when the property was built (Question 3-A(8)). As previously discussed, claimants bear the ultimate burden in proving both the validity and the amount of a claim. By omitting basic property information requested in the PD Claim Form, the

15

G-I Claims fail to provide *prima facie* evidence regarding the potential for a Grace product to have been used in such properties.

## III.    Speights & Runyan Claims

As set forth in Schedules 3, 4, and 5 to the Scheduling Order, objections relating to numerous traditional property damage claims filed by Speights are set for hearing on January 24 and 26, 2006. Specifically, Schedules 4 and 5 identify claims filed by Speights without proper authority, addressed below in Section III.A. Schedule 3 identifies other fatal flaws in Speights claims, addressed below in Sections III.B-K. The claims on all of these Schedules should be disallowed and expunged.

### A.    Unauthorized Claims (per 13th Omnibus Objection)

As outlined in the Debtors' Thirteenth Omnibus Objection and accompanying briefs challenging the basis of Speights' *Anderson Memorial* claims, Speights has a now well-established history of filing unauthorized bankruptcy claims for claimants the firm does not represent. *See, e.g.,* Docket No. 9311 (Thirteenth Omnibus Objection), Docket No. 9546 (9/30/05 Opening Brief), Docket No. 10837 (10/26/05 Reply Brief), Docket No. 11080 (11/14/05 Order Expunging Anderson Memorial Claims). As a result, at the August 29, 2005 omnibus hearing and as memorialized in a September 23, 2005 Order, this Court ordered Speights to produce evidence that it had authority to file proofs of claim on behalf of the parties to whom it previously failed to demonstrate proper authorization. *See* Docket No. 9501. Despite this Court's directive, Speights has failed to provide proper proof of authorization to file *109* of these Claims.

### 1.    38 Claims Speights Was Never Authorized To File

For the 38 claims listed on Schedule 4, Speights has failed to produce *any* evidence that it ever had authority to file proofs of claim in Grace's chapter 11 cases. Although that alone is

16

enough to merit disallowance and expungement of all 38 claims, the procedural history of these claims provides further evidence that Speights does not represent these claimants.

*First*, 6 of the claims[9] are for claimants that do not appear on Speights' December 2004 Verified 2019 statement, another admission by Speights that the firm does not represent the parties in this bankruptcy.

*Second*, for 12 of the claims, Speights' 2019 statement identifies the superceded *Anderson Memorial* complaint as the basis for Speights' representation in Grace's bankruptcy. [10] For another claim (Claim No. 6740), Speights' Response to the Thirteenth Omnibus Objection admits that Speights' only basis for representation was the superceded *Anderson Memorial* complaint. After argument on October 31, 2005, the Court entered an Order disallowing all claims filed based on the *Anderson Memorial* complaint. All 13 of these claims should similarly be disallowed and expunged.[11]

*Third*, for 4 of the claims[12], Speights has already withdrawn other claims that it filed for the same claimants, another acknowledgment that Speights has no authority for these claims.

*Fourth*, 12 of the claims[13] do not appear in Speights' Response to the 13th Omnibus Objection in which Speights attempts to identify the basis for representing its purported clients in these Chapter 11 cases. *See* Docket No. 9607. Speights' failure to include these claims

---

[9] Claim Nos. 9908, 9915, 10870, 10878, 11212, and 11612.

[10] Claim Nos. 6626, 6640, 6740, 10522, 10738, 10952, 10960, 10971, 11079, 11166, 11237, 11520.

[11] The Debtors previously indicated in the briefing on the *Anderson Memorial* claims that the parties agreed on most, but not all, of which claims fell within the scope of *Anderson Memorial*. *See* Docket No. 9546 at p. 2. These 13 claims are among the handful on which the parties were not able to reach agreement.

[12] Claim Nos. 6626, 6640, 11166, and 11612.

[13] Claim Nos. 6626, 6640, 10522, 10870, 10878, 11079, 11166, 11237, 11520, 15740, and 15741.

demonstrates Speights has known since at least August that it lacked authorization to file these claims.

*Fifth*, for 3 of the claims[14], as the basis for its "authority" to file, Speights produced a notice from the *Celotex* trust which Speights apparently received because it filed the exact same claims in that bankruptcy. *See* Exhibit E.  These documents do not show that Speights was authorized to represent the claimants in *Celotex*, let alone that it had timely authorization to represent the claimants in Grace's bankruptcy.  As set out in the prior briefing on the *Anderson Memorial* issue, the Debtors have already demonstrated that Speights' filing of claims in the *Celotex* bankruptcy is the subject of a pending adversary proceeding in that case challenging Speights' authority to file claims.    *See* Docket No. 10837 at p. 5-6 and Exhibit 5 thereto. Regardless of what happens in the *Celotex* adversary proceeding, Speights has failed to comply with the Court's order in this case to prove it had express authority to file these claims against Grace.

*Sixth,* for two claims, 10526 and 11212, Speights' Response to the 13th Omnibus Objection states that these claims have already been withdrawn.  The Debtors cannot confirm this withdrawal.  These claims should now be either withdrawn or disallowed and expunged.

### 2.      71 Claims Speights Was Not Authorized To File By The Bar Date

For the 71 claims identified on Schedule 5, Speights produced express written authorization that was either (i) undated or (ii) dated after the Bar Date.  For certain of these authorizations, the face of the form itself is undated, but the fax line shows that Speights did not receive them until well-after the Bar Date.   Some signatures or fax sheets are dated *more than two years after the Bar Date had passed.*  Collections of Speights' late or undated authorizations

---

[14] Claim Nos. 10738, 10952, and 10960.

are attached as Exhibit F (late signed), Exhibit G (fax indicates late signed) and Exhibit H (undated).

In light of Speights' extensive history of filing hundreds of claims in this bankruptcy with no authority, the Debtors can only assume that Speights had *no* authority to file any of the 71 claims by the Bar Date, yet filed these claims, under the penalty of perjury, while proceeding to try to continue to solicit new clients after March 31, 2003. To permit Speights to do this unfairly disadvantages all other claimants who were subject to the Bar Date. For example, several of these claims were supposedly filed under the "blanket" authority of Anderson Memorial and were later signed-up by Speights.[15] Other late-signed claims do not even appear on Speights' Rule 2019 Statement.[16]

Unless and until Speights can demonstrate that these 71 claims were expressly authorized to be filed *by March 31, 2003*, all of these claims should be disallowed and expunged.

## B.    Previously Adjudicated Claims

In an attempt to delay resolution of 3 previously adjudicated Speights claims identified on Schedule 3[17], Speights argues that a "factual inquiry will be necessary" because final judgments and settlements can be set aside under "necessarily substantial" circumstances. *See* Speights Response (Claim No. 10887), pps. 26-28 (Docket No. 10740). Speights relies upon *Herring v U.S.*, 424 F.3d 384 (3d Cir. 2005) to support its position that setting aside verdicts is "clearly recognized by federal courts." *Id.* at p. 27. But Speights' response papers have failed to allege facts or provide any evidence that, if proven true, would rise to the "necessarily demanding" standard articulated in *Herring*.

---

[15] *See* Claim Nos. 10746, 10747, 10990, 11218, and 11689.

[16] *See* Claim Nos. 11227 and 12433

[17] Objection B-1, affecting Claims 10887, 10888 and 11579.

19

In *Herring*, the Court of Appeals for the Third Circuit held that a verdict may be set aside when it is the product of "fraud upon the court." *See Herring*, 424 F.3d at 386. The court further held that, in order to satisfy the "necessarily demanding" standard for showing fraud upon the court, there must be: "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court . . . a determination of fraud on the court may be justified only by the most egregious misconduct directed to the court itself, and that it must be supported by clear, unequivocal and convincing evidence." *Id.* at 386-87. The court noted that such a rigorous standard is necessary because "[t]he concept of fraud upon the court challenges the very principle upon which our judicial system is based: the finality of a judgment." *Id.* at 386.

Speights has failed to point to any specific decisions that he believes were allegedly obtained through fraud upon the court, let alone supply evidence that would satisfy this rigorous standard. Speights' response should be seen for what it is: yet another frivolous attempt to pursue invalid claims in this bankruptcy.

## C.    Previously Settled Claims

As with previously adjudicated claims, Speights similarly attempts to delay disposition of 4 previously settled claims identified on Schedule 3[18] by arguing that "factual inquiry will be necessary" because the Debtors "have failed to respond to requests" for the underlying documents. *See* Speights Response, Docket No. 10740. Not surprisingly, Speights' argument once again skews the facts.

*First*, for the contested Speights settled claims, the Debtors provided Speights with copies of all settlements to which Speights was a party. *See* letter attached as Exhibit I. The problem

---

[18] Objection B-2 to Claim Nos. 11234, 10990, 12299 and 12355.

here is that Speights has filed claims for parties which Speights does not represent. The Debtors cannot provide Speights with confidential settlement documents executed with others. As seen in Exhibit I, in October 2005 the Debtors identified the parties to these agreements for Speights, yet Speights has still provided no evidence of permission to see these settlements.[19]  If Speights truly represents these claimants, then Speights simply could have obtained the settlements from its clients or the various contacts the Debtors have provided regarding such settlements.

*Second*, with respect to Speights' bald assertion that release and settlements can be set aside under "certain circumstances," Speights fails to cite to *any legal authority whatsoever*. Instead, Speights relies on unsupported factual allegations to unilaterally conclude that Grace's settlements "are subject to being re-opened and re-litigated."  Speights has not provided hard evidence or legal support to overturn these settlements.

### D.   Missing Basic Property Address

The Debtors filed objections to Claim No. 11253 filed on behalf of YMCA and Claim No. 11612 filed on behalf of Holiday Inn because these claims did not include basic information regarding the respective properties. Specifically, Claim No. 11253 failed to include both the city and street address of the property and Claim No. 11612 failed to include a street address. Absent such information, claimants have not identified an actual building for which the claims are filed. As this Court recognized at the February 25, 2002 hearing regarding the proof of claim form, identification of the buildings on account of which the claimants allege damages is "absolutely critical information" regarding the claim. *See* Tr. of Hr'g on Feb. 25, 2002 at 78.  Accordingly, these claims should be disallowed for failure to include basic property address information.

---

[19] The Debtors are prepared to provide the Court with copies of these confidential agreements *in camera* at the January 2006 hearings, so the Court can confirm that the claims at issue are barred by prior settlement.

K&E 10873205.12

Speights argues in the responses filed for these claims that the Gateway Objection Order required the Debtors to provide claimants 60 days notice of an intent to object to facially incomplete claim forms.  *See* Speights Response (Claim No. 11253) at p. 26.   Contrary to Speights' assertions, the Gateway Objection Order does not impose any such requirement.  *See* Gateway Objection Order (Docket No. 6009).   Rather, the Gateway Objection Order distinguishes between objections based on substantially incomplete claim forms and objections based on insufficient supporting information.  *See id.* at p. 2.  Pursuant to the Gateway Objection Order, only objections based on insufficient supporting information required 60 days notice to claimants.  *See id.* at p. 3.  Thus, the requirement that Debtors provide 60 days notice does not apply to objections regarding incomplete claim forms.

### E.   No Signature

The Debtors filed an objection to 41 claims listed on Schedule 3 filed by Speights & Runyan for lack of a signature, Objection C-1(b).  As previously stated, it is a basic requirement of a valid proof of claim that a creditor or the creditor's representative attest to veracity of the information provided by signing the claim form.  *See* Fed. R. Bank. P. 3001(b) ("A proof of claim shall be executed by the creditor or the creditor's authorized agent except as provided in 3004 and 3005"); *see also* Official Bankruptcy Form 10.  The failure to sign such claims and thereby attest to the veracity of the information proved renders the claims invalid.  Indeed, nothing in the Speights Responses even contest this issue.

### F.   Missing Basic Information

Claim No. 12433 failed to include the following information requested in the PD Claim Form: (i) whether the claimant owns the property for which the claim is being asserted (Question 3-A(3)), (ii) when the property was purchased (Question 3-C(4)), (iii) the property's use (Question 3-A(5)), (iv) the number of floors on the property (Question 3-A(6)), (v) approximate

22

square footage of the property (Question 3-A(7)), and (vi) the date when the property was built (Question 3-A(8)).

In response, Speights argues that failure to provide such information does not affect the *prima facie* validity of the claim. However, by failing to answer certain combinations of critical questions on the claim forms, Speights has not sustained the initial burden of proving facts sufficient to provide a legal basis for the claim. *See Allegheny International, Inc.*, 954 F.2d at 173. Thus, the presumption of validity never arises.

### G.   No Product Identification Documentation

The Debtors objected to hundreds of Speights PD Claims listed on Schedule 3, Objections C-3(a) and C-3(c), because the claims lack any product identification documentation and identify only a type of generic product or product line such as "surface treatment" that was manufactured by Grace and other companies besides Grace. As outlined above, the Claimant has the initial burden to allege facts sufficient to support a legal basis for the claim. Without supporting product identification documentation, required by the Court-approved PD Proof of Claim Form, the claimants have not alleged facts sufficient to support the claim and cannot prove their claim by a preponderance of the evidence. *See also In re Dow Corning Corp.*, 250 B.R. 298, 353-54 (Bankr. E.D. Mich. 2000).

Responses filed by Speights assert that the Court cannot disallow claims for failure to include information requested in the PD Claim Form. *See, e.g.,* Speights Response (Claim No. 10752) at ¶ 82. Specifically, Speights argues that the Court can only disallow a claim for one or more of the grounds enumerated in section 502(b) and that failure to provide such information does not fall within these grounds. *Id. But Speights' failure to provide the basic information*

requested by the PD Proof of Claim Form causes them to lack even prima facie validity.[20]
Moreover, the PD Claim Form's clear requirement that claimants provide product information
documentation was one of the reasons claimants were given approximately seven months to file
their claims. See Tr. of Hr'g on April 22, 2002 at 106-07.

Speights' position seeks to turn the claimants' burden of proof on its head. Rather than
providing the information and evidence necessary to demonstrate a valid claim, Speights
suggests that this Court should allow it to omit critical information and documentation and
improperly shift the burden to the Debtors merely because a claim was filed. In other words,
Speights seeks to recover for hundreds of unsupported claims while forcing the Debtors to prove
a negative -- the non-existence of any basis or support for which a claim could be alleged.

The absurdity of Speights' position is clear. Thus, it is not surprising that case law makes
clear that Speights retains the burden of proving elements of these claims, rather than putting the
burden on the Debtors to disprove them. See In re Ford, 194 B.R. 583, 589 n.9 (S.D. Ohio 1995)
("As a general rule the burden of proof is on the claimant because a claimant in a bankruptcy
proceeding is in the same posture as a civil plaintiff in a non-bankruptcy proceeding, who
generally is assigned the burden of proving its claim against the defendant under non-bankruptcy
law.") (emphasis in original); see also In re Schwegmann Giant Supermarkets Partnership, 264
B.R. 823, 827 (Bankr. E.D. La. 2001) ("The burden of proof . . . is borne by the same party who
would bear the burden if the contest took place outside of bankruptcy.").

Nonetheless, Speights seeks to lead this Court through Alice's looking glass by arguing
that the mere filing of a proof of claim is sufficient to establish a presumption of prima facie

---

[20] Moreover, a claimant's failure to provide the information discussed above does fall within section 502(b)(1)
because, absent such critical information, the claimant cannot demonstrate an enforceable legal claim against the
Debtors. See 11 U.S.C. § 502(b)(1) (providing for disallowance of claim if "such claim is unenforceable against
the debtor and property of the debtor, under any agreement or applicable law for a reason other than because
such claim is contingent or unmatured").

24

validity and places the burden on the debtor to disprove such claim. The Speights Responses each state the following in support for this proposition:

> Upon objection, the proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." *Lundell v. Anchor Construction Specialists, Inc.* , 223 F.3d 1035, 1039 (9th Cir. 2000), citing *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991); *see also Ashford v. Consolidated Pioneer Mort.*, 178 B.R. 222, 226 (9th Cir. BAP 1995), *aff'd* 91 F.3d 151, 1996 WL 393533 (9th Cir. 1996). To defeat the claim, the objector must come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to the allegations of the proofs of claim themselves." *In re Holm*, 931 F.2d at 623.

Speights Response (Claim No. 10533) at p. 26. These cases, however, do not support the proposition that a claimant can wantonly allege a claim without providing evidence of the claim's validity -- particularly where, as here, a Court-approved claim form already requires claimants to provide such evidence. Although a proof of claim may provide "some evidence as to its validity," the cases cited by Speights do not indicate that a proof of claim is *sufficient* evidence of its validity. Moreover, although a proof of claim may be "strong enough to carry over a mere formal objection without more," this is not the scenario before this Court. The Debtors' 15th Omnibus Objection is not a cursory objection to claims generally. Rather, the 15th Omnibus Objection objects to claims on specific and detailed grounds which are supported by applicable case law and facts. Finally, any reliance on cases holding that an objector must come forward with evidence and facts "tending to defeat the claim by probative force equal to the allegations of the proofs of claim themselves" is misplaced. Because the claims at issue fail to provide information and documentation required by the PD Claim Form, they are of little probative force and, thus, the standard for countering such claims is corresponding low.

25

**H.**    **Built Too Late to Contain MK-3**

The Debtors objected to Claim Nos. 9908 and 15497 listed on Schedule 3 under

Objection D-1(a) because they allege the presence of MK-3 in US buildings built after 1973,

when Grace stopped selling MK-3 in the US.  For each of these claims, the claimants themselves

admitted on the face of their claim form that their buildings were constructed too late to contain

MK-3.

In 1973, under the authority of the Clean Air Act, the United States EPA banned the use

of sprayed-on products containing more than 1% asbestos for use as insulation or fireproofing.

*See* 38 F.R. 8820 (April 6, 1973) (attached as Exhibit J).  Grace's MK-3 was an asbestos-added

spray-on fireproofing product that contained more than 1% asbestos.  *See* Affidavit of Thomas F.

Egan (attached as Exhibit K).  As such, its use was expressly *banned* in the United States in

1973.  Accordingly, Grace permanently ceased selling MK-3 in the United States by July 4,

1973.  *See id.*  Therefore, Speights' U.S. buildings built after July 1973 *necessarily* do not

contain MK-3.

Speights filed identical responses on behalf of the buildings at issue.  These Responses do

not contest that Grace ceased selling *MK-3* in the United States in July 1973.  *See* Speights

Response (Claim No. 9908) at p. 31, ¶¶ 83-84  (Docket No. 10734).  Instead, Speights contends

that Grace sold "asbestos-containing building materials from 1938 to 1978."  *Id.*  Speights'

allegation is not supported by any credible evidence and does not alter the fact that Grace

stopped selling *MK-3*, the product at issue for these buildings, in 1973.

**I.**    **Georgia Claims Barred by Statute of Limitations**

Claim No. 11550 filed by Speights on behalf of "The Dodge County Hospital Job" in

Georgia is barred by statute of limitations.  As set out above in Section I.C, Georgia's applicable

statute of limitations provides that claims for asbestos property damage must be brought within *4*

*years* from the date of the property's substantial completion, regardless of when the claimant learned that the property contained (or was contaminated by) asbestos. *See Corp. of Mercer Univ. v. National Gypsum Co.*, 368 S.E.2d at 733. Claim No. 11550 states that the subject property was completed in 1970, thus the claim had to be brought by 1974. The March 2003 claim is *29 years too late.* Nothing in Speights' response casts any doubt on this conclusion. In fact, Speights' response for Claim 11550 fails to refer to any relevant law concerning Georgia's statute of limitations. *See* Speights Response, pps. 29-31 (Docket No. 10620).

### J.   Tennessee Claims Barred by Statute of Repose

Claim Nos. 11722 and 10533 filed by Speights on behalf of First Tennessee bank are barred by Tennessee's statute of repose which provides that actions against manufacturers must be brought within *10 years* of the date the product was purchased. Each of these claims state that the respective buildings were constructed in 1970. *See* Claim Nos. 11722 and 10533, at p. 2. Accordingly, such claims were required to be brought by 1980.

Tennessee's statute of repose provides as follows:

> Any action against a manufacturer or seller of a product for injury to person or property caused by its defective or unreasonably dangerous condition must be brought within the period fixed by §§ 28-3-104, 28-3-105, 28-3-202 and 47-2-725, *but notwithstanding any exceptions to these provisions it must be brought within six (6) years of the date of injury, in any event, the action must be brought within ten (10) years from the date on which the product was first purchased for use or consumption . . . .*

T.C.A. § 29-28-103(a) (emphasis added).[21] Claims against manufacturers that are brought after ten years of delivery of product are precluded as a matter of law. *King-Bradwell Partnership v. Johnson Controls, Inc.*, 865 S.W.2d 18, 20-21 (Tenn. App. 1993) (holding that plaintiff building-

---

[21] Tennessee courts have held that "[t]he ten-year period set forth in T.C.A. §19-28-103(a) is properly characterized as a statute of repose." *Wyatt v. A-Best Products Co.*, 924 S.W.2d 98, 102 (Tenn. Ct. App. 1995).

owner, who sued manufacturer of roofing materials after the building's roof collapsed, "had only ten years from the last date of purchase of the roofing products to bring suit.").

In Response to the objections to these Tennessee claims, the Debtors received three identical responses from Speights. *See* Docket Nos. 10224, 10889, 10111.[22] Speights' responses utterly fail to address the Debtors' statute of repose objections to these claims.[23]

## K.      Falsely Asserts 2003 as Date of Knowledge of Asbestos

All but a handful of the PD claims filed by Speights identified "2003" as the year the claimant learned of asbestos in the property at issue. These claims were identified on Exhibit F-2 to the 15th Omnibus Objection. While more than 2,000 of these claims have since been withdrawn or expunged, the remaining 600+ claims in this category are listed on Schedule 3. As set out in the 15th omnibus objection, the fact that the 2003 date provided by Speights on these claims forms is fraudulent constitutes grounds for disallowance and expungement of all of these claims. *See Southern Ry. Co. v. Johnson Bronze Co.,* 758 F.2d 137, 141 (3d Cir. 1985) ("a court of bankruptcy under its equitable powers may disallow or subordinate a particular claim in bankruptcy which, because of the fraudulent nature of the claim or the bad faith or improper conduct of the claimant, ought not in equity and good conscience to be allowed or paid on a parity with other claims.") (citing *Pepper v. Litton,* 308 U.S. 295 (1939)).

In response, Speights argues that 2003 was provided as the year when claimants knew that Grace was the manufacturer of the asbestos-containing product in their buildings. But that is

---

[22] Two of the responses, Docket Nos. 10224 and 10889, were filed regarding the same claim (Claim No. 10533) and appear to be identical.

[23] In surreply, Speights may attempt to argue that the statute of repose should not apply to these Tennessee claims because Grace concealed dangers associated with its products or otherwise somehow misled the Tennessee claimant. Such an argument, however, would be inapplicable, as Tennessee courts have held that Tennessee's statute of repose is not tolled by fraudulent concealment or by the failure of a defendant to disclose facts relating to the product. *King-Bradwell Partnership v. Johnson Controls, Inc.,* 865 S.W.2d 18, 22 (Tenn. Ct. App. 1993).

not what question 3-C-18 of the PD Claim Form requested. Rather, it requested the date the claimant knew of the presence of asbestos in the property for which the claim is being made against Grace.[24] Any alleged ambiguity in Question 3-C-18 is resolved by the text following the question, which requests claimants to attach all documents relating to or referring to the presence of asbestos in the property for which the claim is being made. Moreover, a separate question 3-C-20, requests the information Speights alleges he provided in response to Question 3-C-18. *See* Question 3-C-20 of PD Claim Form ("When did you first learn that the Grace product for which you are making this claim contained asbestos?").

Even if one accepted Speights' interpretation of question 3-C-18 as correct, however, Speights' position fails for numerous reasons. *First*, Speights' response is contradicted by the claim forms themselves. For example, each of the nearly 200 California University claims identified on Schedule 3 identifies "*W.R. Grace v. Alabama*," filed in the U.S. Supreme Court *in 1990*, as a prior lawsuit relating to the property for which the claim is being made.[25] This indicates that Speights' client sued Grace more than a decade ago for these same properties. An exemplar (Claim No. 9840) is attached as Exhibit L. Similarly, for hundreds of Speights claims, the claim forms indicate *Anderson Memorial v. Grace*, filed *in 1992*, as a prior lawsuit relating to the property for which the claim is being made. An exemplar (Claim No. 6697) is attached as Exhibit M.

*Second*, for the few Speights claims that actually contain supporting documentation, the 2003 knowledge date is contradicted by the papers provided by the claimants. Some of these

---

[24] Specifically, question 3-C-18 provides as follows: "When did you first know of the presence of asbestos in the property of the Grace product for which you are making this claims?"

[25] Such information was provided in response to question 4-B-1 of the PD Claim Form which requests claimants to provide certain information about "each asbestos-related property damage lawsuit which has been filed relating to the property for which [the claimant is] making this claim or attach a copy of the face page of each complaint filed."

29

documents show that the claimant knew of asbestos in the building at issue decades ago; others show that the claimant expressly knew of Grace asbestos-containing product in the building decades ago. For example, Claim No. 10516 regarding the "Mission Towers" property, provides supporting documentation stating that when the property was constructed in 1972, Grace's MK-3 was used to meet the City of Mission's requirement that a fireproofing insulating be sprayed on the structural support beams of the building. *See* Exhibit N (attaching applicable portion of the claim form and relevant documentation). The supporting documentation entitled "Building Conditions and Asbestos Damage Info," states that "In response to increasing vacancies from awareness and public concern over the asbestos-containing Monokote 3 within Mission Towers, beginning in the mid 1990's, the management and ownership began quoting a rental rate of $3.00 per rentable square foot less than other comparable buildings in the surrounding area." *Id.* Despite such documentation clearly indicating knowledge of a Grace product and knowledge that the product contained asbestos, Speights answered 2003 in response to Question 3-C-18 for this property.

Other examples of the supporting documentation attached to claims clearly contradicting the 2003 date provided by Speights include the following: Claim No. 10779 (attaching a 1972 invoice from Grace for the purchase on MK-3 and documents indicate the abatement/removal of asbestos-containing materials from the property from as early as 1985); Claim No. 10752 (attaching a 1970 invoice from Grace for monokote and various documents indicating the abatement/removal of asbestos-containing materials as early as 1987); Claim No. 10780 (attaching a 1971 invoice form Grace for the purchase of MK-3 and a "Prior Notification of Asbestos Abatement Project" sent to state department of health in 1989); and Claim No. 11517 (attaching a 1972 invoice from Grace for the purchase of MK-3 and a "demolition with removal" form dated 1994). *See* Exhibit O (attaching applicable portions of the claim forms and examples

of relevant documents). These claims are merely a brief sample of the universe of claims the Debtors have identified for which Speights falsely identified 2003 as the year claimants first learned of asbestos on their property.

*Third*, Speights' response is contradicted by the procedural history of these claims. Speights has *admitted*, for example, that the firm submitted claim forms for nearly 1000 building owners Speights never contacted. *See*, *e.g.* Docket No. 9186. Yet, all of those claim forms similarly identified "2003" as the building owners' initial knowledge of Grace asbestos in their buildings. Likewise, the 600 supposed *Anderson Memorial* claims filed by Speights without authority and struck by this Court also identified "2003" as the building owners' year of knowledge.

Put differently, Speights' "2003" knowledge dates are fraud, plain and simple. This information was falsely provided by Speights attorneys, under penalty of perjury, *expressly* to enable Speights to pursue invalid claims that Speights knew were barred decades ago by statutes of limitations. All should be disallowed.

31

## Conclusion

WHEREFORE, for the reasons stated above and outlined in more detail in the 13th and 15th Omnibus Objections, the Debtors respectfully request that the Court sustain the Debtors' objections and disallow and expunge all claims discussed above, identified on Schedules 2-5 to the 15th Omnibus Scheduling Order, Docket 11408.

Wilmington, Delaware
Dated: December 22, 2005

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Michelle H. Browdy
Janet S. Baer
Salvatore F. Bianca
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

*And*

PACHULSKI, STANG, ZIEHL, YOUNG, JONES
& WEINTRAUB, PC

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession