IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) (Jointly Administered) |
| W. R. GRACE & CO., et al. | )    Case No. 01-01139 (JKF) |
| | ) |
| Debtors. | ) |
| | ) |
| | ) Re: Docket No. 11184 |
| | ) Hearing Date: January 30, 2006 at 12:00 p.m. |
| | ) |

## DEBTORS' OBJECTION TO THE MOTION OF BDM CONSTRUCTION COMPANY, INC. FOR RELIEF FROM THE AUTOMATIC STAY (DOCKET NO. 11184)

The above captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby file their objection to the motion (the "Motion") of BDM Construction Company, Inc. ("BDM") seeking an order modifying the automatic stay.

### Preliminary Statement

BDM has woefully failed to meet its burden of demonstrating cause to lift the automatic stay to allow the prosecution of its cross-complaint filed in state court against the Debtors alleging indemnity, contribution, negligence, breach of warranty, breach of contract, and declaratory relief.

The Motion provides no basis for alleging entitlement to preferential treatment from the multitude of similarly situated claimants. Indeed, in an effort to demonstrate some type of hardship to support its Motion, BDM assets the following unremarkable reasons for lifting the stay: 1) suspension of the action will delay its ability to investigate and prosecute its claims

against the Debtors, (2) the majority of witnesses are outside of Delaware, and (3) state law governs determination of liability and damages.

Contrary to BDM's assertions, lifting the automatic stay to allow it to proceed with state court litigation will substantially prejudice the Debtors. To be successful in their reorganization efforts, particularly at this critical stage in these cases, the Debtors must concentrate all of their efforts on the immense tasks at hand with respect to claims estimation and the plan of reorganization. BDM's request, and the inevitable flurry of similar requests that would result from the lifting of the automatic stay in the present instance, is precisely the type of costly distraction that the Debtors cannot afford and against which Section 362 of the Bankruptcy Code was enacted to prevent. Accordingly, the Motion should be denied.

## Background

On March 1, 1999, BDM entered into a contract with Robert Mondavi Winery ("Mondavi"), for the construction of a property addition. Mondavi alleges that on or about September 2003, the waterproofing for the addition failed in certain areas. On September 14, 2004, Mondavi filed a complaint in the Superior Court of the State of California for the County of Napa against BDM, among others, alleging breach of contract and negligent construction, and seeking relief and damages of $3,000,000 plus interest.

On October 29, 2004, BDM filed a cross-complaint against several parties, including the Debtors alleging that each of the cross-defendants were inspectors, subcontractors, engineers, and/or designers involved in the construction of the addition. The cross-complaint alleges actions for indemnity, contribution, negligence, breach of warranty, breach of contract,

and declaratory relief. BDM has not asserted any dates in which the actions alleged in its cross-complaint occurred and discovery has not commenced in the action.

## Argument

As this Court made clear in denying previous lift-stay motions, it is rarely appropriate to allow litigants holding prepetition, general unsecured claims against a debtor to proceed with their lawsuits while a debtor is in the midst of its reorganization efforts.[1] The automatic stay would merely be a thin veil if any litigant holding a prepetition, general unsecured claim could obtain relief from the stay at will. In this instance, modification of the automatic stay would divert the Debtors' attention from critical restructuring issues for the mere convenience of a single potential creditor.

### The Cross-Complaint is Void as a Violation of the Automatic Stay

Although the cross-complaint does not assert any dates in which alleged actions occurred, BDM's request for relief from the automatic stay is a tacit acknowledgment that the cross-complaint relates to pre-petition conduct and is subject to the automatic stay.[2] Accordingly, as an initial matter, the action underlying BDM's motion is void as a violation of the automatic stay because the cross-complaint was filed after the petition date and is based on

---

[1] *See, e.g.*, Order Denying Motion for Relief From Stay Filed on Behalf of Paul Price (Docket No. 2106); Order Denying Kellogg's Motion for Relief from Stay (Docket No. 2244); and Order Denying Motion of Wesconn Co., Inc. for Relief From Stay Regarding Certain Construction Contracts (Docket No. 2618).

[2] The pre-petition nature of the conduct is supported by the Debtors' records which indicate that Grace's waterproofing material was applied on or around November 1999

3

pre-petition conduct.[3] *See In re Montgomery Ward, LLC*, 292 B.R. 49, 57 (Bankr. D. Del. 2003) (holding that contract claim in complaint violated the automatic stay and was, thus, void *ab initio*); *In re International Forex of California, Inc.*, 247 B.R. 284, 293-94 (Bankr. S.D. Cal. 2000) (holding that cross-complaint filed against debtor after petition date was void as violation of automatic stay). As this Court has previously recognized, the Motion should be denied on this basis alone:

> [T]he law is this circuit is pretty tough when actions are brought in violation of the stay even when it's not a willful violation of the stay. So with respect to authorizing the action nun [sic] pro tunc frankly I'm not comfortable doing that. I haven't done it for other defendants in this or the other cases because I am concerned about the third circuit rulings along those lines. Something taken in violation of the stay and action in violation of the stay in this circuit is void and it seems to me that this action is void and I really feel I have no choice but to strike it and require rather that the creditor move forward with some motion for relief from stay to commence the action over again if that's what you chose to do.

Tr. of Hr'g on Oct. 25, 2004 at 36. *See also* Tr. of Hr'g on June 18, 2002 ("[Claimant] filed this claim in the state court in violation of the stay in the first place, and if I were to approve this order, that would potentially alter creditors to the fact that it's okay to file things in violation of the stay and not face the consequences which are that the action's void, and I don't think that' a good policy to set . . .").

---

[3] The actions alleged in BDM's complaint relate to conduct that occurred before the petition date and are subject to the automatic stay regardless of when Mondavi asserted the waterproofing failed or when it filed its action against BDM. *See In re Black*, 70 B.R. 645 (Bankr. D. Utah 1986) (automatic stay applied to cross-claim for indemnification or contribution arising out of pre-petition business transaction, even when, under state law, claimant's cause of action would first arise upon commencement of litigation against it); *In re A.H. Robins Co.*, 63 B.R. 986 (Bankr. E.D. Va. 1986) (whether a claim arises pre- or post-petition depends on when debtor's conduct, on which the claim is based, occurred; thus, Dalkon Shield claim arose, for bankruptcy purposes, when product was inserted, and not when claimant first became aware of her injury); *In re Edge*, 60 B.R. 690 (Bankr. M.D. Tenn. 1986) (under the Bankruptcy Code, a claim against a Chapter 7 debtor "arises at the time of the negligent act, notwithstanding that access to the courts or the running of the statute of limitation may be timed from some other point in the relationship between tortfeasor and victim"); *In re Johns-Manville Corp.*, 57 B.R. 680 (S.D.N.Y. 1986) (since Congress intended "claim" to include "remote or contingent" obligations, a claim arises, for bankruptcy purposes, at the time when the acts giving rise to the alleged liability were performed, and the automatic stay applies to indemnification or contribution actions based on such claims); *Matter of Baldwin-United Corp.*, 48 B.R. 901 (Bankr. S.D. Ohio 1985) (automatic stay applied to post-petition claim for contribution or indemnity based on pre-petition conduct).

Nevertheless, even if the cross-complaint was properly filed, the Motion should still be denied because, as discussed below, BDM has failed to demonstrate cause for lifting the stay.

### BDM Has Failed to Demonstrate Cause for Lifting the Automatic Stay

The automatic stay is one of the most fundamental protections provided to a debtor under the Bankruptcy Code. *See Midatlantic Nat. Bank v. New Jersey Dept. of Envtl. Protection*, 474 U.S. 494, 503 (1986). In particular, the Third Circuit has held that the purpose of the automatic stay is to:

> prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtors' assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor.

*Borman v. Raymark Industries, Inc.*, 946 F.2d 1031, 1036 (3rd Cir. 1991); *In re Rexene Products Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992).

Pursuant to section 362(d) of the Bankruptcy Code, a movant must demonstrate sufficient cause to justify the lifting or modification of the automatic stay. Although the Bankruptcy Code does not define what constitutes cause, "courts generally consider the policies underlying the automatic stay [and] . . . the competing interests of the debtor and the movant." *In re Continental Airlines, Inc.*, 152 B.R. 420, 424 (D. Del. 1993). In particular, Delaware courts consider the following three factors in balancing the competing interests of the parties:

a. the prejudice that would be suffered by the debtors should the stay be lifted;

        b.        the balance of the hardships facing the parties if the stay is lifted; and

        c.        the probable success on the merits if the stay is lifted.

*Continental*, 152 B.R. at 424. Applying these factors, BDM has not demonstrated sufficient cause to warrant the lifting or modification of the automatic stay.

### A. <u>Allowing the Litigation to Proceed Would Cause Great Prejudice to the Debtors, their Estates, and Their Creditors</u>

The Debtors, their estates and their creditors would be greatly prejudiced if the automatic stay were modified to allow BDM's litigation to proceed because the Debtors would be forced to divert critical time and resources away from their reorganization efforts to defend against BDM's litigation. *See In re United States Brass Corp.*, 173 B.R. 1000, 1006 (Bankr. E.D. Tex. 1994) ("When balancing the hardships in lifting the stay, the most important factor is the effect of such litigation on the administration of the estate; even slight interference with the administration may be enough to preclude relief.") (*citing In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984)); *In re Ron Perlstein Enterprises, Inc.*, 70 B.R. 1005, 1009 (Bankr. E.D. Pa. 1987) (recognizing the need of "a debtor to devote its likely-limited financial resources and energies to the formulation of a plan to treat all of its similarly-classified creditors equitably in bankruptcy court, as opposed to being required to expend its resources and energies in defending cases brought by certain of its creditors against it in other forums"); *In re Penn-Dixie Indus.*, 6 B.R. 832, 836-37 (Bankr. S.D.N.Y. 1980) (acknowledging that even participation in preliminary proceedings can be disruptive to a debtor's reorganization).

Courts have recognized that there is a critical need to stay all collateral litigation in order to allow the debtors an opportunity to develop comprehensive litigation and reorganization plans.

> The purpose of this section [362] by its various subsections is to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor.

*A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins & Co., Inc.)*, 788 F.2d 994, 998 (4th Cir. 1986). Moreover, granting BDM's relief from the automatic stay would only encourage other unsecured creditors to file motions to lift the automatic stay and deluge this Court with additional lift-stay motions. This would unnecessarily deplete the Debtors' assets and prejudice the rights of other creditors to receive payment on their claims in the proper framework.

Lifting the automatic stay in the present instance would be particularly harmful to the Debtors due to the fact that the litigation is in its early stages. *See In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1287 (2d Cir. 1990) (declining to lift stay because "the litigation in state court has not even progressed even to the discovery stage"); *In re Collins*, 118 B.R. 35 (Bankr. D. Md. 1990) (declining to lift stay where parties in state court proceedings had not yet begun discovery). This is not a situation, for example, where state court litigation has been fully briefed and the plaintiff seeks to lift the automatic stay to allow the court to enter a ruling. Rather, lifting the automatic stay in the present instance would require the Debtors to engage in all aspects of a lengthy non-bankruptcy state court litigation.

7

Ignoring these issues, BDM argues that no great prejudice will result from a lifting of the stay because it "seeks to recover on any judgment it obtains against the Debtor from available insurance coverage, which is property in which the Debtor has no interest." Motion at 7. However, BDM's reliance on the potential existence of insurance coverage is misplaced. *First*, because BDM has not asserted any dates in which the actions alleged in its cross-complaint occurred, the Debtors cannot determine what, if any, insurance policy would apply and whether the policy has a deductible for which the Debtors are responsible. *Second*, any insurance coverage that does exist cannot prevent the harms previously discussed because the Debtors would still have to defend or provide information to insurers to defend against the action.

In contrast to the prejudice the Debtors, their estates and their creditors would suffer from lifting the automatic stay, keeping the stay in place will allow the Debtors to concentrate on their reorganization efforts and help to preserve resources for the greater benefit of all parties-in-interest. At this critical stage of their reorganization efforts, the Debtors should not have to heed to the whim of a potential unsecured creditor that happens to hold the unremarkable position that now is the appropriate time to proceed with its pending litigation action.

**B.    There is No Identifiable Hardship to BDM to Balance Against the Harms Faced by the Debtors**

Unsecured creditors, such as BDM (if successful in its action), bear a much higher burden than do secured creditors in proving that the balance of hardships tips significantly in their favor. *See In re FRG, Inc.*, 114 B.R. 75, 78 (E.D. Pa. 1990), *rev'd on other grounds*, 919 F.2d 850 (3d Cir. 1990). "It is not enough for the creditor to merely show that it will be hurt by

8

the continuation of the stay, rather the creditor must show that neither the debtor nor the other creditors will be injured if the stay is lifted." *In re Martha Washington Hosp.*, 157 B.R. 392, 395 (N.D. Ill. 1993) (citing Ginsberg, Bankruptcy, at 3306 (1985)).

In stark contrast to the prejudice the Debtors and their estates would suffer, BDM cannot show that it would be prejudiced if the automatic remained in place. BDM's contention that it will be harmed if the Motion is denied boils down to nothing more than the desire to have its claim adjudicated immediately. This desire, however, is common among all of the Debtors' claimants and BDM utterly fails to produce any valid reason as to why its claim should be given preferential treatment over other similarly situated creditors or why estate assets should be preferentially allocated to the defense of its action. *See Matter of Fletcher*, 176 B.R. 445, 453 (Bankr. W.D. Mich. 1995) (allocating assets equitably among a debtor's creditors is a goal of the Bankruptcy Code). Delay in taking actions against the Debtors, whether it be collecting on a claim directly or litigating in an attempt to collect on an action, is inherent in the bankruptcy process, and is an unavoidable -- and intended -- consequence of the automatic stay. *See In re Comdisco*, 271 B.R. at 277 ("The automatic stay almost always delays litigants. That, after all, is its purpose, and the reason they call it a stay.").

BDM relies on *In re Bock Laundry Machine Company*, 37 B.R. 564, (Bankr. N.D. Ohio 1984), as its sole support for the proposition that cause exists to vacate the stay "due to the delay BDM will suffer in liquidating its cross claims against the Debtor as part of the State Court Action." Motion at p. 8. *Bock Laundry*, however, does not stand for a broad proposition that mere delay is sufficient to warrant lifting the stay. Rather, the case notes that courts have attributed weight to instances where "a plaintiff, by having to wait, may effectively be denied an

9

opportunity to litigate." *Bock Laundry*, 37 B.R. at 566. In the present case, BDM has not demonstrated -- or even asserted -- any instance in which delay would deny it the ability to litigate later.

BDM further misplaces its reliance on Third Circuit case law for the proposition that requiring a debtor to participate in its defense does not present a great hardship. Specifically, BDM states that:

> The Court of Appeals for the Third Circuit has declared that litigation expenses do not constitute an injury sufficient to justify the enjoining of litigation against the Debtor. *In re Davis*, 691 F.2d 176, 178 (3d Cir. 1982), quoting *Younger v. Harris*, 401 U.S. 37, 46 (1971)

Motion at p. 9 (quoting *Matter of Nicholas, Inc.*, 55 B.R. 212, 217 (Bankr. N.J. 1985). However, *Davis*, *Younger* and *Nicholas* are all cases holding that litigation expenses were not a sufficient harm for purposes of granting a debtor's request for an injunction under Section 105(a). None of these cases address a debtor's litigation expenses in the context of adjudicating a creditor's request to lift the automatic stay. Moreover, unlike *Davis*, *Younger* and *Nicholas*, where the burden was on the debtor to demonstrate the necessity of an injunction, the burden of proof in the present case is on BDM to demonstrate cause for lifting the automatic stay.

Because lifting the stay will clearly prejudice the Debtors, BDM has failed to meet its burden of showing that the balance of hardships weighs in its favor. Far from it, the facts in this matter show very clearly that the potential harm faced by the Debtors dwarfs any potential prejudice faced by BDM.

C. <u>**Success on Merits is Irrelevant**</u>

In light of the fact that BDM has not met the initial requirement of establishing sufficient cause to modify the automatic stay, the Court should not reach the issue of the probability of success on the merits. *See Continental Airlines, Inc.*, 152 B.R. at 426 (probability of success weighed only after determining that balance of hardships weighed in favor of movant). However, even if this Court were to reach the issue, BDM has not demonstrated, nor can it demonstrate, any likelihood of success on the merits. BDM's litigation has yet to even begin its initial stages and it is therefore too early to predict the probability of its success on the merits. Moreover, the Debtors have many legal defenses to the complaint and dispute the facts alleged by BDM. Thus, BDM cannot demonstrate that it would likely prevail on the merits if its litigation were to proceed.

DOCS_DE:114209.1

## Conclusion

Simply put, BDM has not carried its burden of demonstrating cause for lifting the automatic stay. The balancing of the competing interests of the Debtors, their estates and their creditors against those of BDM demonstrates that the automatic stay should be maintained. Therefore, for the very same reasons the Court has denied similar attempts in the past, the Court must deny the BDM's Motion.

Dated: January 10, 2006

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
James W. Kapp III
Salvatore F. Bianca
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES
& WEINTRAUB, PC

*[signature]*

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession