IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- )
                                                         )
In re                                                    )     Chapter 11
                                                         )
W. R. GRACE & CO., et al.,                               )     Case No. 01-01139 (JKF)
                                                         )     (Jointly Administered)
                                                         )
                              Debtors.                   )     **Re: Docket No. 11434**
                                                         )     **Objection Deadline: January 12, 2006**
                                                         )     **Hearing Date: January 30, 2006**
-------------------------------------------------------- )

## OBJECTION OF OFFICIAL COMMITTEE OF PROPERTY DAMAGE CLAIMANTS TO DEBTORS' MOTION TO STRIKE OR COMPEL FULL DISCLOSURE OF THE PROPERTY DAMAGE COMMITTEE'S PHASE I FACT WITNESSES

The Official Committee of Asbestos Property Damage Claimants (the "PD Committee"), by and through its undersigned attorneys, respectfully submits its Objection (the "Objection") to the above-captioned debtors' (collectively, the "Debtors") Motion to Strike or Compel Full Disclosure of the Property Damage Committee's Phase I Fact Witnesses (Docket No. 11434) (the "Motion"). In further support of its Objection, the PD Committee respectfully states as follows:

### PRELIMINARY STATEMENT

1.      The Motion should be denied as it is both premature and ill-founded. The Motion is premature in that the case management order, dated August 29, 2005 (the "CMO") (Docket No. 9302), governing the estimation of property damage claims (the "PD Estimation"), has only required *initial* disclosures of "Phase I" fact witnesses to date. Final expert and fact witness lists are not required until, at the earliest, February 20, 2006. The Motion is ill-founded because it impermissibly seeks to exclude relevant fact witness testimony that would aid the Court in determining not only the use and general acceptance of dust sampling to assess the risk of

asbestos exposure from accumulated settled dust, but also the lack of acceptance of air sampling as a primary assessment tool. Fact witness testimony will further inform the Court with regard to the general use and acceptance of the primary assessment methodologies, as well as the supplemental assessment tools to determine the risk of an exposure hazard and the need for corrective action. The Motion is nothing more than a thinly veiled attempt by the Debtors' to impose their litigation agenda on the PD Committee and the Court. The Debtors desire that the Court conduct a purely abstract exercise based solely on the fabrication of the so-called "dust versus air" issue completely devoid of factual testimony regarding Debtors' and their experts' use of such methodologies in building assessments of ACM in the real world. The PD Committee believes that fact discovery will show clearly that, contrary to the Debtors' position in this bankruptcy, the Debtors and their expert witnesses have consistently performed dust sampling for many years. It is palpably absurd for the Debtors to argue that fact witness testimony is irrelevant and cannot be elicited. Indeed, the *Debtors'* CMO—to which the PD Committee has complied with in good faith and continues to do so—explicitly provides that fact witnesses are permissible in respect of the two original "Phase I" issues – methodology and constructive notice.[1] The CMO must govern "Phase I" of the PD Estimation and not the Debtors' latest drummed-up non sequitur that since they are foregoing "Phase I" fact witnesses so must the PD Committee (see Motion at ¶ 4). For these reasons, as well as the reasons set forth below, the PD Committee respectfully requests that the Court deny the Motion.

---

[1]     On November 14, 2005, the Court ruled that the "Phase I" constructive notice issue would be litigated exclusively in the property damage claims objection process and not in the PD Estimation.

**OBJECTION**

2.     The Debtors argue that the PD Committee should not be afforded any fact witnesses (or that the Court should compel the PD Committee to disclose the names of their fact witnesses) in respect of the "Phase I" methodology issue because (a) the relevance and reliability of dust sampling call exclusively for expert testimony; (b) the PD Committee's initial list of fact witnesses discloses only categories of witnesses rather than identify witnesses by name; (c) since constructive notice is no longer a "Phase I" issue, fact witnesses should not be permitted in the "Phase I" methodology litigation; and (d) the Debtors will not be calling any "Phase I" fact witness so neither should the PD Committee.  None of these assertions warrants denying the PD Committee the opportunity to proffer relevant testimony through fact witnesses or compelling disclosure of fact witnesses prematurely.  As a result, the Motion should be denied.

**The Debtors' CMO Provides for Testimony of "Phase I" Fact Witnesses**

3.     The CMO sets forth the discovery schedule in connection with both "Phase I" and "Phase II" of the PD Estimation.  In respect of *both* original "Phase I" issues, the CMO is replete with references to each party's ability to take fact discovery and proffer relevant testimony through fact witnesses.  For instance, paragraph 8 of the CMO states that by October 17, 2005, the Debtors were to make initial disclosures of fact witnesses they intend to call to testify as to the "Phase I" issues, and the general subject matter of each fact witness' testimony.[2]  Paragraph 13 of the CMO similarly states that the PD Committee was to make *initial* disclosures of "Phase I" fact witnesses on December 8, 2005, to which the PD Committee complied.  Paragraph 14 of the CMO further sets forth that by December 22, 2005, the Debtors were to submit rebuttal fact

---

[2]     The Debtors' *Fact and Expert Witness Disclosure for Asbestos PD Estimation Phase I*, dated October 17, 2005, states in respect of their "Phase I" methodology fact witnesses, "No fact witnesses are currently expected to be called affirmatively to testify on this *Daubert*-specific issue."

3

witnesses, if any, and the general subject matter of any rebuttal fact witness' testimony.[3]
Paragraph 15 of the CMO states that depositions of both "Phase I" experts and non-experts may
commence on December 15, 2005 and are to be completed by February 15, 2006.[4]  Paragraph 16
of the CMO states that on or before February 20, 2006, final fact/expert witness lists shall be
filed and served.[5]

    4.    It cannot be gainsaid that the Debtors—and not the PD Committee—have always
insisted upon litigating methodology as part of the PD estimation, and the CMO, as originally
proposed by the Debtors, has always included the ability of either party to utilize fact or expert
witnesses for such purposes.  Despite the CMO, the Debtors now disingenuously argue that since
constructive notice is no longer a "Phase I" issue, fact witnesses are no longer permissible in
respect of methodology.  Such assertion is ill-founded and contrary to the CMO's terms.  The
Debtors fail to argue in good faith that fact witness testimony demonstrating the repeated use and
reliance on dust samplings (including by the Debtors' and their experts both in and outside of
litigation) is anything but highly relevant to the "Phase I" methodology issue.

    5.    Fact witness testimony concerning the use of dust samplings by the Debtors and
their experts may not only further inform the Court as to dust sampling's general acceptance[6] but

---

[3]    By agreement among the PD Committee and the Debtors, this deadline, which includes
the submission of rebuttal expert reports by the Debtors, has been extended to January 20,
2006.

[4]    By agreement among the PD Committee and the Debtors, these dates have been extended
by 60 days.

[5]    By agreement among the PD Committee and the Debtors, this deadline has been extended
by 60 days.

[6]    *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590-95 (1993), requires
that experts have "good grounds" for their opinions and provides five factors for
determining reliability of a technique or theory: 1) whether the theory or technique has
been or can be tested; 2) whether the theory or technique has been subjected to peer
review or publication; 3) the error rate, if any; 4) whether there are standards maintained

4

also will cast much doubt on the credibility of the Debtors' experts as well as the entire "Phase I"

sideshow conceived by the Debtors. For instance, as mentioned in the PD Committee's expert

reports, Dr. Richard Lee, an expert retained by the Debtors, has collected and analyzed possibly

tens of thousands of dust samples for one project (One Liberty Center) using the ASTM D-5755-

3 Dust Sample Method[7] to evaluate asbestos contaminated surface dust. Indeed, one of the

laboratories that provides the ASTM D-5755-3 Dust Sample Method as a paid service is the RJ

Lee Group, Inc., owned and operated by Dr. Lee. Roger Morse, another Debtor-retained expert,

has likewise often utilized dust samplings. Further, the Debtors have taken dust samplings on

countless occasions. As aptly put by one court, "The fact-finder's freedom to consider, credit,

and discount various items of evidence is not as narrow as [plaintiff] suggests. The court, sitting

as finder of fact, was entitled to weigh the credibility of [the party's] fact witnesses....At the same

time, the court was entitled to consider the government's expert testimony...." *California Fed.*

*Bank v. U.S.*, 395 F.3d 1263, 1270 (Fed. Cir.), *cert. denied*, 126 S.Ct. 344 (2005). *See also TNT*

*Road Co. v. Sterling Truck Corp.*, No. Civ. 03-37-B-K, 2004 WL 1626248, at *5 (D. Me. July

19, 2004)("It is apparent from the parties' papers that [the expert] has continued to evaluate his

opinion in light of subsequent testimony by fact witnesses and that none of that evidence rules

out his opinion or exposes his basic methodology as unreliable."); *Kumho Tire Co. v.*

*Carmichael*, 526 U.S. 137, 150 (1999)(a court's gate keeping function is "a flexible one" that

---

for the application of the theory or technique; and 5) whether the theory or technique has
been generally accepted in the pertinent field.

[7]    The American Society for Testing Materials D-5755-95 Dust Sampling Method for the
Quantification of Asbestos Surface Contamination was approved and promulgated as an
ASTM standard method in 1995.    The ASTM D-5755 Dust Sample Method was re-
approved and re-promulgated in 2003 and now carries the designation D-5755-3, and is
entitled "Standard Test Method for Microvacuum Sampling and Indirect Analysis of Dust
by Transmission Electron Microscopy for Asbestos Structure Number Surface Loading."

5

"depends upon the particular circumstances of the particular case at issue."). Accordingly, the Court should enforce the CMO and allow the PD Committee to proffer relevant testimony through fact witnesses in connection with the "Phase I" methodology issue.

### The PD Committee's Initial Fact Witness Disclosures
### Were Based Upon Information Then Reasonably Available to It

6.    The Debtors unjustifiably complain that the PD Committee submitted only lists of categories of "Phase I" fact witnesses rather than specific names. The PD Committee listed the following as "Phase I" fact witnesses in its *Initial Disclosure of Fact and Expert Witnesses Anticipated to be Called in Phase I of the Estimation*, dated December 8, 2005 (the "Initial Disclosures"): (a) each asbestos property damage claimant ("PD Claimant") that filed a proof of claim; (b) as to each PD Claimant, the following types of professionals employed or contracted by such PD Claimant – asbestos engineers, asbestos coordinators, asbestos consultants; (c) the RJ Lee Group, Inc., including those of its employees most knowledgeable with regard to work performed at One Liberty Center, N.Y. for Deutsch, including dust and/or air sampling, as well as similar dust sampling for any other client; and (d) the Debtors, their employees, agents and independent contractors concerning the use of dust sampling, air sampling and other methods to determine the release of asbestos fibers from the Debtors' asbestos-containing products.

7.    In respect of Fed.R.Civ.P. 26(a) initial disclosures, a leading treatise on Federal practice and procedure underscores,

> A disclosing party "must make its initial disclosures based on the information then reasonably available to it...." Fed.R.Civ.P. 26(a)(1). The initial disclosure rules do not require a party to conduct a thorough investigation of the case before making its initial disclosures. Parties are required only to disclose matters of which they are aware or should be aware at the time they make the disclosures.

6 Moore's Federal Practice § 26.22[1][b] (Matthew Bender 3d ed.).

6

8.    At this juncture, discovery in respect of the PD Estimation is in a nascent stage. Indeed, the only discovery propounded to date is the PD Committee's *First Request for Production of Documents* (the "Requests for Production") which were issued on November 16, 2005. Among other things, in the Requests for Production, the PD Committee requested *"All documents which in any way relate, refer or pertain to Asbestos air monitoring, Asbestos air sampling, Asbestos dust sampling, Asbestos-related safety and Asbestos-related hazards."* On December 16, 2005, the Debtors predictably objected to this and every other request for production on a host of hortatory grounds.[8]    Clearly, until the documents requested are produced or determined not to exist, the PD Committee should not be compelled to provide a final designation of fact witnesses replete with the precise testimony which will be elicited from such witnesses in respect of the "Phase I" methodology issue. It is untenable for the Debtors to both refuse to provide the PD Committee with responsive documents and also attempt to deny the PD Committee the right to reserve the right to call fact witnesses as warranted by the documents sought.    Only after the Debtors produce documents and make their Fed.R.Civ.P. 30(b)(6) witnesses available for deposition ought the PD Committee be required to categorically identify their "Phase I" fact witnesses.

## The Debtors' Litigation Agenda

9.    As the Court has itself repeatedly observed, the Debtors are bent on litigating rather than reaching any type of consensus in these cases. The Motion is yet a further example of the Debtors' litigation agenda to skew the playing field against the PD Claimants by suppressing relevant evidence that contradicts the Debtors' stated position on the reliability of

---

[8]    To date the Debtors have failed to provide a single sheet of paper in response to the Requests for Production.    The PD Committee will likely file a motion to compel production if the Debtors continue their obstreperous tactics and refuse to produce documents to the PD Committee.

7

dust samplings. In so doing, the Debtors blatantly misrepresent to the Court that they attempted to meet and confer with the PD Committee regarding the Initial Disclosures. The Debtors have never reached out to the PD Committee in respect of the Initial Disclosures.[9] Further, the Debtors go so far as to attempt to seek attorneys' fees and costs from an officially constituted creditors' committee, despite the PD Committee's efforts at complying with the Debtors' CMO in every respect and working with the Debtors to extend CMO deadlines. Such ill-tempered conduct further underscores how out of touch these Debtors are from what is desperately required in these cases – a debtor whose first goal is to create consensus among the creditor constituents. For these reasons, and the reasons set forth above, the PD Committee respectfully requests that the Motion be denied and that the Court uphold the PD Committee's right to take fact discovery and proffer relevant testimony through "Phase I" fact witnesses as explicitly set forth in the CMO.

WHEREFORE, the PD Committee respectfully requests that the Court deny the Motion and grant such other and further relief as the Court deems appropriate.

Dated: January 12, 2006                    Respectfully submitted,

BILZIN SUMBERG BAENA
   PRICE & AXELROD LLP
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131-2336
Telephone: (305) 374-7580

Scott L. Baena (Admitted Pro Hac Vice)
Matthew I. Kramer (Admitted Pro Hac Vice)

---

[9]   In fact, the only request for a "meet and confer" in respect of discovery in this contested matter was made by the PD Committee to the Debtors in an effort to avoid the necessity for a motion to compel the Debtors' compliance with the PD Committee's Requests for Production.

8

-and-

DIES & HILE, LLP
1009 Green Avenue
Orange, TX 77630
Telephone: (409) 883-4394

Martin W. Dies (Admitted Pro Hac Vice)

-and-

FERRY, JOSEPH & PEARCE, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, Delaware 19899
(302) 575-1555


By: /s/ Theodore J. Tacconelli
        Theodore J. Tacconelli
        (Del. Bar No. 2678)

Co-Counsel for the Official Committee of
Asbestos Property Damage Claimants

9