IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:** ) | |
| ) | |
| **W. R. GRACE & CO.,** *et al.* ) | Chapter 11 |
| ) | |
| **Debtors.** ) | Case No. 01-01139 (JKF) |
| ) | (Jointly Administered) |
| ) | |
| ) | Related Docket Nos. 10014 and 11245 |
| ) | Hearing Date: January 26, 2006, 9:00 am |

### BRIEF DESCRIBING THE PURPOSE THAT PUBLICATION NOTICE SERVED IN THE DEBTORS' BAR-DATE NOTICE-PROGRAM

Nearly four years ago, this Court approved a $4 million Notice Plan under which the Debtors mailed approximately 200,000 Bar Date Notice Packages to potential claimants who could be affected by the Bar Date and also published the Bar Date Notice in dozens of U.S. and Canadian publications specifically selected to reach a target audience of potential claimants. As this Court recognized in 2002, this notice program collectively provided Grace's known and unknown creditors - including alleged former customers now identified by Speights as proposed class members - with legally sufficient notice of the Bar Date. *Chemetron Corp. v. Jones*, 72 F.3d 341, 344 (3d Cir. 1995).[1] In this supplemental brief, the Debtors now address the question raised by the Court at the December 19, 2005 omnibus hearing: Legally, what purpose was served by Grace's constructive notice program? (12/19/05 Tr. at p. 150)

---

[1] Docket No. 1963, Bar Date Order at 5 ("ORDERED that notice of the entry of this Order and of the Bar Date to unknown claimants pursuant to the Debtors' Bar Date Notice Plan for Asbestos Property Damage Claims and Other Claims (the "Notice Plan"), as modified, and filed on April 12, 2002, *shall be deemed good, adequate and sufficient notice of the Bar date....*") (emphasis added).

The answer to the Court's question is spelled out in detail in the Third Circuit's *Chemetron* decision. Specifically, when determining legally-adequate notice for a bankruptcy-claims bar-date, bankruptcy law divides creditors into two groups: "known" and "unknown" creditors. While known creditors are entitled to actual notice of a claims bar date, publication notice constitutes legally sufficient notice to unknown creditors. *Chemetron Corp.*, 72 F.3d at 344; *DePippo v. Kmart Corp.*, --- B.R. ----, No. 04 Civ. 7839, 2005 WL 3158008, at *4 (S.D.N.Y. Nov. 14, 2005) ("It is well-settled that when a creditor is 'unknown' to the debtor publication notice of the claims bar date is adequate constructive notice sufficient to satisfy due process requirements."). Thus, the legal purpose served by Grace's constructive notice program was to give legally sufficient notice to unknown creditors.

This necessarily raises a second question: Were the potential claimants now identified by Speights' motion for class certification known or unknown? Speights argues that Grace customers listed in invoices thirty or more years old were "known" to the Debtors and thus should have been given actual notice.[2] Speights is wrong as a matter of law.

The Supreme Court of the United States has held that a "known" creditor is one whose identity is either "known or reasonably ascertainable [by a debtor]." *Tulsa Prof. Collection Servs., Inc. v. Pope*, 485 U.S. 478, 490 (1988). An "unknown" creditor is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." *Mullane v. Central Hanover Bank*

---

[2] During the December 12, 2005 hearing, Speights argued that Grace had a legal obligation to provide actual notice to the owners of every single building where a Grace invoice shows that a Grace product could have been used. 12/19/05 Tr. at p. 148: 11-18.

2

& *Trust Co.*, 339 U.S. 306, 317 (1950). A creditor's identity is "reasonably ascertainable" if that creditor can be identified through "reasonably diligent efforts." *Mennonite Bd. Of Missions v. Adams*, 462 U.S. 791, 798 n.4 (1983).

The Third Circuit has held that "reasonable diligence" does not require "a vast, open-ended investigation." *Chemetron Corp.*, 72 F.3d at 346-47. Instead, "the requisite search instead focuses on the debtor's own books and records. Efforts beyond a careful examination of these documents are generally not required." *Id* (internal citations and quotes omitted). "Impracticable and extended searches are not required in the name of due process." *Mullane*, 339 U.S. at 316-17.

Critically, a debtor's search of its books and records does not have to extend to every *possible* creditor. *Tulsa Prof'l Collection Servs., Inc.*, 485 U.S. at 490 ("Nor is everyone who may conceivably have a claim properly considered a creditor entitled to actual notice ... it is reasonable to dispense with actual notice to those with mere 'conjectural' claims.); *In re Brooks Fashion Stores, Inc.*, No. 92 Civ. 1571, 1994 WL 132280, at *3 (S.D.N.Y. April 14, 1994) ("It simply is not 'reasonable,' therefore, to require [the debtor] to identify and notify every potential plaintiff, regardless of how speculative or remote their claims might be of its bankruptcy proceedings.").

Courts have specifically held that a debtor does *not* have to provide its former business relations with actual notice of a claims bar date simply because the debtors' records show transactions with such parties. *E.g. In re Charter Co.*, 125 B.R. 650 (M.D. Fla. 1991) (holding that chapter 11 debtor's supplier was not a known creditor, where the debtor's records contained a disputed invoice, for which the supplier sought leave to file a late proof of claim); *DePippo*,

3

2005 WL 3158008, at *4 (holding that debtor's bar date precluded former customer from asserting a pre-petition claim, because debtors' publication notice provided the customer with legally sufficient notice of the debtor's bar date); *Daewoo Intern. (America) Corp. Creditor Trust v. SSTS America Corp.*, Case No. 02 Civ. 9629, 2003 WL 21355214, at *3 (S.D.N.Y. June 11, 2003) (finding that constructive notice received by chapter 11 debtor's customer satisfied due process requirements); *In re West Coast Video Enters., Inc.*, 174 B.R. 906 (Bankr. E.D. Pa. 1994) (holding that former franchisees were "unknown creditors," to whom publication notice of significant events in debtor's bankruptcy filing was adequate to bind them to the debtor's bar date order). Instead, publication notice provides such parties with legally sufficient notice. *Chemetron Corp.*, 72 F.3d at 344; *In re Chicago, Milwaukee, St. Paul & Pac. RR Co.*, 974 F.2d 775, 788 (7th Cir. 1992).

This is not to say that a former customer can *never* be considered a "known" creditor. However, to be considered a "known" creditor, a former customer must have notified the debtor of its intent to assert a claim. *Daewoo Intern. (America) Corp. Creditor Trust*, 2003 WL 21355214, at *3, n.6. Despite Speights' assertion to the contrary, Grace did not have an obligation to provide actual notice to every one of Grace's former customers. Instead, Grace only had an obligation to conduct a reasonable search of its own books and records to determine customers *that had already notified Grace of their intent to assert claims*.

As set out at length before this Court during briefing and argument on Grace's Notice Plan more than three years ago, the Debtors conducted an *extensive* review to identify all potential known claimants and as a result mailed some *200,000 Bar Date Notice Packages* to provide these potential claimants with actual notice. Other former customers -- including all

4

those who had not previously notified Grace of their intent to assert claims -- are "unknown" creditors as a matter of law, and the Debtors had no legal obligation to provide them with actual notice. Getting back to the Court's initial question, Grace's publication notice served to provide any and all of these former customers with adequate notice as a matter of law. *Chemetron Corp.*, 72 F.3d at 344, 348 ("Having held that claimants were 'unknown' creditors, we have little difficulty holding that the notice which Chemetron [the debtor] published in the *New York Times* and the *Wall Street Journal* was sufficient."). As Speights and this Court well know, Grace's multimillion dollar publication notice program was extensive, was thoroughly vetted by the PD Committee in 2002, was expressly designed to reach vast numbers of building owners, and was found by this Court to be legally sufficient. *E.g.* Docket No. 1963 at 5 (Bar Date Order); 4/22/02 Tr. at p. 95: 4-9 (no need for a television advertisement in light of the already extensive reach of the Notice Program). And the PD Committee acknowledged as much during oral argument on the PD Committee's motion for clarification. Tr. 7/22/02 at p. 101: 3-5 ("By their papers, they [the Debtors] seek to get as broad notice on an actual basis as possible. And again, we applaud that effort.").

The law's recognition that the Debtors had no obligation to pore through old invoices to provide *actual* notice to former customers that had never demonstrated an interest in pursuing asbestos PD claims against Grace is particularly compelling in the present situation, where the Debtors stopped manufacturing asbestos-containing products such as MK-3 nearly *30 years* before the Bar Date. Over the course of three decades, buildings are demolished, companies which owned or constructed buildings change names and ownership, and building ownership changes hands, often repeatedly. That is exactly why *publication notice*, rather than actual

5

notice, is held to be legally adequate for these types of potential claimants. Furthermore, courts have held that a debtor is not required to give actual notice of the bar date to creditors "who [the debtor] reasonably believes have abandoned their claims " *Matter of Chicago, Rock Island & Pacific RR Co.*, 788 F.2d 1280, 1282 (7th Cir. 1986), *citing In re Chicago Pacific Corp.*, 773 F.2d 909, 916 (7th Cir. 1985). Given that the Debtors ceased selling their asbestos containing products 30 years before the Bar Date and had been involved in asbestos property damage litigation for nearly *20 years* by March 2003, it was reasonable for the Debtors to conclude that any former customers who had not already asserted claims against Grace by then had long-since abandoned any potential claims.

Moreover, to the extent that any of Speights' recently proposed class members did not receive actual notice of the Bar Date, this Court has already determined that it is Speights, rather than the Debtors, that is responsible for that failure. The Debtors have compared (i) the list of potential claimants identified at Exhibit A to Speights' October 2005 motion for class certification with (ii) the lists of claimants identified by Speights in its proposed *Anderson Memorial* class claims 9911 and 9914 submitted in March 2003 in violation of the Court's 2002 order prohibiting the filing of class claims without first seeking Court approval. 1009 of the 1010 claimants identified in Exhibit A to Speights' October 2005 motion were also listed in Speights' March 2003 claims. Not only that, in March 2003 Speights also SIGNED AND FILED individual PD claims for every single one of the claimants on the list -- hundreds of which have already been either withdrawn or disallowed by this Court. Speights thus had the information about these claimants at hand nearly 3 years ago, yet through the PD committee argued successfully to this Court that Speights should not be obligated to either certify to the

6

Debtors that counsel had notified these building owners or provide these addresses to the Debtors for the purpose of providing actual notice. Docket 2274 (6/21/02 PD Committee Motion for Clarification of the Bar Date Order); Docket 2745 (9/23/02 Order abating the requirement that counsel of record for PD Claimants either certify to the Debtors that they had notified their clients of the Bar Date or else provide the names and addresses of such parties to Grace so that Grace could mail them Bar Date packages).

As this Court noted when the PD Committee's June 2002 motion was argued:

THE COURT: Well, I think the issue simply is whether or not at a certain point in time the claimant got noticed, and *if the Debtor served the attorney, and the obligation is then on the attorney to serve the client and the attorney doesn't, the attorney's malpractice carrier hopefully is notified.* (7/22/02 Tr. at p. 102: 4-9)

\*    \*    \*

THE COURT: Well, look. They -- *the attorneys are the ones at risk, not the Debtor*, because if they blow a bar date and their clients don't file one, the excusable neglect standard is undoubtedly not going to say, 'I didn't get the notice from my attorney,' and undoubtedly I'm going to say, 'too bad, your attorneys got the notice, go contact their malpractice carrier.' I think it's for the attorneys' safety.

Mr. Baena: The attorneys don't need the safety net.

\*    \*    \*

Mr. Baena: And so we would ask that they be relieved of that obligation. (*Id.* at p. 103: 21 - p. 104: 4)

Judicial estoppel prohibits a party from asserting a position in a legal proceeding that is contrary to a position taken in a prior legal proceeding. The Third Circuit interprets judicial estoppel broadly, holding: "Judicial estoppel may be invoked by a court at its discretion to preserve the integrity of the judicial system by preventing parties from playing fast and loose with the courts in assuming inconsistent positions...." *Motley v. New Jersey State Police*, 196

F.3d 160, 163 (3d Cir. 1999) (internal quotations omitted); *see also Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir. 1996); *New Hampshire v. Maine*, 532 U.S. 742, 743, 749, 750-51 (2001) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him ... This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.") (internal quotations omitted).

Speights' class certification motion falls squarely within the Third Circuit's definition of judicial estoppel. Speights is playing fast and loose with this Court, urging this Court that the Debtors' Notice Plan was inadequate because it did not include the *very notice* Speights and the PD Committee successfully asked the court to abate in 2002. Speights' bad faith is transparent. Speights is precluded from arguing that the 2002 Notice Plan was inadequate.

## **Conclusion**

As a matter of law, Grace's former customers that had never notified Grace of their intent to assert claims are "unknown" creditors and were only entitled to publication notice of the Bar Date. Grace's Court-approved publication-notice program served to provide those customers with legally adequate notice. *Chemetron Corp.*, 72 F.3d at 344. For this reason, and the reasons stated in the Debtors Opposition to Speights' Motion for Class Certification, Docket 11245, Speights' Motion for Class Certification should be denied with prejudice.

Dated: January 13, 2006

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Michelle H. Browdy
Dawn Marchant

Samuel L. Blatnick
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG JONES & WEINTRAUB PC

*/s/ James E. O'Neill (By SGMS /4283)*

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession