# EXHIBIT "A"

NOT FOR PUBLICATION

**FILED**

'JUN 0 9 1994

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

AT 8:30 ............... M
WILLIAM T. WALSH
CLERK

| | |
|---|---|
| THE PRUDENTIAL INSURANCE ) <br> COMPANY OF AMERICA, et. al., ) <br> Plaintiffs,) <br> ) <br> v. ) <br> ) <br> U.S. GYPSUM, et. al., ) <br> Defendants.) | Civ. Action No. 87-4238 <br> (HAA) <br> O P I N I O N |

Ackerman, D.J.

The defendants in this action -- W. R. Grace & Co.-Conn. ("Grace"), United States Gypsum Company ("U.S. Gypsum"), National Gypsum Company ("National Gypsum"), United States Mineral Products, Inc. ("U.S. Mineral"), Asbestospray Corporation ("Asbestospray") and Keene Corporation ("Keene")[1] -- supplied products containing asbestos to buildings which plaintiffs -- The Prudential Insurance Company of America and two of its subsidiaries (hereinafter "Prudential") -- subsequently acquired.

Prudential claims the following:

> The use of the buildings identified in the Appendix to this First Amended Complaint has been and will be materially impaired due to the presence of the asbestos-containing materials of defendants in the buildings, both through a diminution of market value and physical property damage to the buildings. Because of the contamination caused by the asbestos-containing materials

---

[1] I am informed by Keene's counsel that Keene is in bankruptcy. However, the court has not been officially informed of this fact and no proceedings have been initiated to remove Keene from this litigation. Therefore, as far as the court is concerned, at this point in time, Keene is an active defendant in this matter.

> in plaintiffs' buildings, plaintiffs have paid and will continue to pay substantial costs and fees relating to abatement and buildings monitoring actions, buildings survey and testing costs, tenant relocation costs, operations and maintenance program costs for asbestos-containing materials before their removal from buildings, substantial disruption to their business, substantial property damage to their property . . . and other costs associated with the contamination or potential contamination of the buildings. Plaintiffs have also suffered and will suffer, among other damages, the loss of rental income from the buildings during abatement procedures or due to premature tenant departures, and the diminution in the commercial value of the properties. Prudential's Amended Complaint, ¶30.

This case has a lengthy and convoluted procedural history, which is not worth detailing at this juncture. Suffice it to say that after the first round of discovery, the parties made a plethora of motions. In July, 1993, this court denied Defendants' Motion to Dismiss Plaintiff's RICO Claim on Substantive Grounds, and also denied Plaintiff's Motion to Strike the Defendants' Statute of Limitations Defenses on Equitable Grounds. The court then granted defendants' motion to certify the RICO ruling for interlocutory appeal pursuant to 28 U.S.C. §1292, and stayed this action pending the Third Circuit's determination. On October 13, 1993, the Third Circuit declined to hear the interlocutory appeal.

This Opinion addresses the remaining motions in the case. They are:

(1) U.S. Gypsum and Asbestospray's motion for summary judgment dismissing plaintiff's RICO claim as barred by the statute of limitations;

(2) Defendants' motion for summary judgment dismissing plaintiffs' common law tort and fraud claims as barred by the applicable statute of limitations;

(3) Defendants' motion for summary judgment dismissing plaintiffs' complaint as barred by the applicable statutes of repose;

(4) Defendants' motion for summary judgment dismissing plaintiffs' breach of warranty claim as barred by the applicable statutes of limitation;

(5) Defendants' motion for summary judgment dismissing plaintiff's claims under the applicable Unfair Trade Practices Acts.

This opinion first sets out the standard for summary judgment, then addresses each motion in turn.

I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56 provides that summary judgment may be granted only if the pleadings, supporting papers, affidavits, and admissions on file, when viewed with all inferences in favor of the nonmoving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. See also Todaro v. Bowman, 872 F.2d 43, 46 (3d Cir. 1989); Chippolini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir.), cert. dism'd, 483 U.S. 1052 (1987). Put differently, "summary judgment may be granted if the movant shows that there exists no genuine issues of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Indiana Hospital, 843 F.2d 139, 143 (3d Cir.), cert. denied, 488 U.S. 870 (1988). An issue is "genuine" if a reasonable jury could

3

possibly hold in the nonmovant's favor with regard to that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A fact is material if it influences the outcome under the governing law. Id. at 248.

Within the framework set out above, the moving party essentially bears two burdens: First, there is the burden of production, of making a prima facie showing that it is entitled to summary judgment. This may be done either by demonstrating there is no genuine issue of fact and that as a matter of law, the moving party must prevail or by demonstrating the nonmoving party has not shown facts relating to an essential element of the issue for which it bears the burden. Once either showing is made, this burden shifts to the nonmoving party who must demonstrate facts supporting each element for which it bears the burden as well as establish the existence of genuine issues of material fact. Second, there is the burden of persuasion. This burden is a stringent one which always remains with the moving party. If there remains any doubt as to whether a trial is necessary, summary judgment should not be granted. See Celotex Corp. v. Catrett, 477 U.S. 317, 330-33 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-61 (1970); Advisory Committee's Notes on Fed. Rule of Civ. Pro. 56(e), 1963 Amendment; see generally C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §2727 (2d ed. 1983).

II. RICO Claim

Defendants U.S. Gypsum and Asbestospray move for summary judgment dismissing Prudential's RICO claim as barred by the statute of limitations.

In the case of <u>Agency Holding Corp. v. Malley-Duff & Assoc.</u>, 483 U.S. 143, 156 (1987), the Supreme Court held that civil RICO actions must be brought within four years of the date of accrual. The Third Circuit, in turn, has defined the date of accrual as follows:

> [T]he limitations period for a civil RICO claim runs from the date the plaintiff knew or should have known that the elements of the civil RICO cause of action existed . . . . <u>Keystone Insurance Co. v. Houghton</u>, 863 F.2d 1125, 1130 (3d Cir. 1988).

However, if "as a part of the same pattern of racketeering activity, there is further injury to the plaintiff or further predicate acts occur . . . the accrual period shall run from the time when the plaintiff knew or should have known of the last injury or the last predicate act which is part of the same pattern of racketeering activity." <u>Id</u> at 1126.

Prudential argues first that it did not know of (and should not have known of) facts which would constitute the basis of a RICO cause of action until the mid-1980s at the earliest. Secondly, Prudential argues that at any rate, the statute of limitations began to run over and over again because the defendants continued -- and continue -- to commit predicate acts. I will address these in turn.

In <u>Glessner v. Kenney</u>, 952 F.2d 702 (3d Cir. 1993), the Court upheld a district court finding that the plaintiffs were

5

aware of the elements of their RICO claim more than four years prior to their filing of their complaint. In that case, the defendants had advertised their products as "state of the art residential heating systems that were highly efficient and would result in considerable savings in home oil heating costs." Id. at 705. The plaintiff purchased his unit in 1977, "knew in the early 1970's of both the carbon monoxide emissions and the need for 'extraordinary amounts of servicing' because he worked for the defendant . . . and further knew his own unit began pulsating within three years of its 1977 installation." Id. at 707. Thus, plaintiff knew of his injuries well before the suit was filed in 1988.

U.S. Gypsum argues that by 1983, Prudential knew of the building contamination and further, the promotional literature put out by defendants had been published prior to Prudential's purchase of the buildings. Thus, the argument goes, Prudential relied on the alleged misrepresentations and then realized that they were false. This, the defendants argue, is analogous to Glessner, in which plaintiffs' knowledge of problems inconsistent with the manufacturers' representations constituted knowledge of the basis for the RICO claims. As U.S. Gypsum put it in its reply brief: "Presumably . . . Prudential bases its claim of ignorance on the legal supposition that it did not know of its RICO claims until some creative person within Prudential developed the specific idea of pleading a RICO theory." Reply Brief in Support of Defendant United States Gypsum Company's Motion for Summary Judgment on

6

<u>Plaintiffs' RICO Claims Based on Statute of Limitations Grounds</u> at 3.

The argument is not without merit. But <u>Glessner</u> never really what it means to be aware of the elements of a RICO claim. It appears, though, that the plaintiffs did not appeal the district judge's finding that they knew of the elements prior to 1984. Rather, the issue on appeal was whether plaintiffs suffered <u>further</u> injury after 1984 that restarted the statute of limitations.

In this case, it is clear that knowledge of the elements of a RICO claim means knowledge that the defendants engaged in predicate acts of mail or wire fraud constituting a pattern of racketeering activity. The facts put forward by U.S. Gypsum and Asbestospray in support of their respective motions simply do not establish such knowledge on Prudential's part. Rather, the defendants' facts go to Prudential's knowledge of this injury. The two types of knowledge are different.

At any rate, there also is a disputed issue of fact as to whether, even if Prudential knew of the elements of its cause of action, the statute of limitations began running anew after that time.

Defendants rely on another part of <u>Glessner</u> to support their argument that it did not. In <u>Glessner</u>, the plaintiffs argued that "although they realized that their . . . units needed extensive servicing prior to June, 1984, their RICO actions are timely because they replaced their units after June, 1984, within the limitations period." <u>Glessner</u>, 952 F.2d at 707. Holding that

7

"further injury under Keystone means a new and distinct injury from the initial injury", id. at 708, the Court upheld the dismissal.

Defendants' reliance on Glessner is somewhat misplaced. Although Prudential does argue that it sustained new injury, its primary argument is that the defendants committed further predicate acts. As noted above, the commission of further predicate acts can restart the statute of limitations. But any predicate acts which may restart of the statute of limitations must be of the same character as the pattern of conduct that constitutes the basis for the RICO claim. Thus, in Davis v. Grusemeyer, 996 F.2d 617 (3d Cir. 1993), the Court held that "[a]n attempt to cover up a completed scheme of criminal activity . . . does not constitute a predicate act in furtherance of a RICO conspiracy that might itself postpone accrual of [the RICO claim]." Id. at 626. This case is not like Davis, however. Here, defendants' alleged acts of concealment are precisely the conduct that Prudential claims constitutes unlawful RICO activity. In other words, the alleged continuing acts of concealment and misrepresentation -- committed over decades and decades -- are in fact the predicate acts that Prudential claims lulled them into a false sense of security about the dangers of asbestos.

U.S. Gypsum nonetheless claims that the further predicate acts involve simple lobbying, which is protected by the first amendment. However, as this court noted in its July, 1993 Opinion, plaintiff alleges more than lobbying activities directed at the public generally. As I noted then, plaintiff alleges that:

> In 1983, the EPA mentioned in a guidance document called the Blue Book that commercial buildings should consider operations and maintenance programs to monitor in-place asbestos. In response to the Blue Book, in 1984, defendants Grace, U.S. Gypsum, National Gypsum, and Keene joined with AIA/NA's special counsel and formed the Safe Buildings Alliance ("SBA"), which focused on problems associated with asbestos in buildings. In 1984 the SBA published and distributed a booklet called "What You Should Know About Asbestos in Buildings." The booklet stated that "experts believe that removing asbestos-containing materials in buildings often does more harm than good" and that proper removal does not pose a potential health hazard. <u>In 1986, the booklet was revised and targeted towards building owners and managers.</u>

Looking at the facts in the light most favorable to plaintiff, this representation can be seen as more akin to promotional marketing literature than to lobbying activity. As such, I cannot say as a matter of law that the AIA/NAS actions cannot constitute a predicate RICO act.

Finally, Asbestospray contends that since it stopped marketing asbestos in the early 1970s and since it dissolved as a corporation in 1982, it cannot be held liable under RICO. However, ordinary conspiracy law governs section 1962(d), and, as long as Asbestospray did not withdraw from the conspiracy, it may be liable when its co-conspirators continue with predicate acts. The record does not evince any clear evidence of Asbestospray's withdrawal, such as notifying other asbestos companies of its refusal to be part of any scheme.

Therefore, I will deny the motion to dismiss the RICO claim on the basis of the statute of limitations.

### III. Statute of Limitations

First, I will address defendants' motion for summary judgment dismissing Prudential's claim as barred by the statute of limitations. The threshold inquiry is into what state's law should govern.

### A. Choice of Law

The defendants contend that the applicable statute of limitations is the statute of the state in which each affected building is located. Thus, for example, Prudential's claim regarding a building in Wisconsin is governed by Wisconsin law. And so on. In defendants' view, these statutes mandate that all of Prudential's claims be dismissed. Prudential responds by arguing that New Jersey's fairly lengthy statute of limitations applies to all of its state law claims.

A federal court sitting in diversity must apply the conflicts of law rules of the forum state, see Klaxon Co. v. Stentor Electric Mfg Co., 313 U.S. 487 (1941); Henry v. Richardson-Merrell Inc., 508 F.2d 28, 31 (3d Cir. 1975). Thus, New Jersey conflicts of law principles govern the choice of law in the instant case.

First, it must be said that there are definite conflicts between the laws of the various states. The states where the buildings are located provide limitations periods varying from two to six years. Moreover, the states' discovery rules vary. Thus, a conflicts analysis is necessary.

The general common-law rule distinguished between

10.

conflicts of law regarding substantive legal questions and conflicts of law regarding the applicable statute of limitations. The general rule was that the statute of limitations was a procedural rule. Thus, irrespective of the substantive law that governed the claim, the forum state's statute of limitations applied.

However, in 1973, when given the opportunity to revisit the statute of limitations issue, the New Jersey Supreme Court expressed dissatisfaction with the general rule. Deciding that the time was ripe to depart from the rule, the Court held that:

> [w]hen the cause of action arises in another state, the parties are all present in and amenable to the jurisdiction of that state, New Jersey has no substantial interest in the matter, the substantive law of the foreign state is to be applied, and its limitation period has expired at the time suit is commenced here, New Jersey will hold the suit barred. In essence, we will "borrow" the limitations law of the foreign state.

However, the Court made it clear that it was articulating only a very narrow exception from the general rule. In its own words:

> We presently restrict our conclusion to the factual pattern identical with or akin to that in the case before us, for there may well be situations involving significant interests of this state where it would be inequitable or unjust to apply the concept we here espouse.

Heavner v. Uniroyal, Inc., 63 N.J. 130, 141 (1973). Subsequent cases have emphasized that the Heavner rule is a narrow exception to the general rule. As the New Jersey Supreme Court stated several years later, "[t]he Heavner rule provides a limited and special exception to the general rule that the rule of the forum determines the applicable period of limitations." O'Keefe v.

11

Snyder, 83 N.J. 478, 490 (1980).

More specifically, when New Jersey retains a substantial interest in the matter, the Heavner exception is inapplicable and New Jersey courts afford plaintiffs the benefit of New Jersey's statute of limitations. As the Third Circuit noted in a case decided soon after Heavner, "[i]mplicit in Heavner is a finding that New Jersey was a disinterested forum"; thus, in a tort suit, where the primary purpose of a recovery is to "compensate plaintiffs for their injury", New Jersey's interest is substantial. Henry, 508 F.2d at 33. Similarly, in Allen v. Volkswagen of America, Inc., 555 F.2d 361 (3d Cir. 1977), the Court again looked primarily to whether New Jersey had a substantial interest in the case.[2]

Thus, the question is whether, since Prudential is domiciled in New Jersey, this state retains a substantial interest in the matter such that its limitations period should apply.

In Draper v. Airco, Inc. 580 F.2d 91 (3d Cir. 1978), the Third Circuit held that when the plaintiff is domiciled in New Jersey, the Heavner exception simply does not apply. Rather, New Jersey's interest in compensating its domiciliary was sufficiently

---

[2] Both parties contend that after Heavner, New Jersey applies the governmental interest approach to statute of limitations questions. It is true that New Jersey generally applies the governmental interest analysis to choice of law issues. See, e.g., Van Slyke v. Worthington, 265 N.J. Super 603 (Law Div. 1992)(citing cases). However, the New Jersey and Third Circuit cases indicate that when the plaintiff is domiciled in New Jersey, the state does not engage in the balancing required by the governmental-interest approach to decide upon the applicable statute of limitation. See, e.g. In re Reach, McClinton & Co., Inc., 102 B.R. 392, 397-98 (D.N.J. 1989)(Lifland, D.J.).

substantial to outweigh all other factors warranting application of a foreign state's limitations law. As the Court put it in <u>Warner v. Auberge Gray Rocks, Inn., Ltee.</u>, 827 F.2d 938, 941 (3d Cir. 1987), "it is clear that when a plaintiff suing on an out-of-state cause of action is domiciled in New Jersey, the courts of New Jersey are not disposed to find that, within the meaning of the <u>Heavner</u> formulation, 'New Jersey has no substantial interest in the matter.'" In fact, in a 1986 case, the Court of Appeals found reversible error where the district court applied a foreign state's statute of limitations to an action in which the plaintiffs were domiciled in New Jersey. <u>Dent v. Cunningham</u>, 786 F.2d 173, 177 (3d Cir. 1986). See also <u>Pine v. Eli Lilly & Co.</u>, 201 N.J. Super. 186 (A.D. 1985) ("New Jersey has a clearly recognized governmental interest in the compensation of its domiciliaries. . . <u>which is alone</u>" sufficient to outweigh all other factors, including an interest in deterring forum-shopping) (emphasis added); <u>In re Reach</u>, 102 B.R. at 399 (same).

The defendants argue that New Jersey's interest in compensating its domiciliaries is significantly diminished by the fact that virtually all the cases endorsing the domicile rule are personal injury cases, and that New Jersey's interest in compensating domiciled plaintiffs is significantly diminished when the plaintiff is a large corporation. The language of the cases does not, however, support this interpretation. In fact, in <u>In re Reach</u>, the court concluded that "a corporate plaintiff which is incorporated in New Jersey is entitled to rely on New Jersey's

13

applicable statute of limitations when filing a suit in New Jersey, notwithstanding the fact that the corporate plaintiff's other ties in New Jersey may be slim." Id. at 399.

Defendants next argue that New Jersey's statute of limitations should not apply because one of the three named plaintiffs, a subsidiary of Prudential, was incorporated in another state. There is no dispute that Prudential, the corporate parent and primary plaintiff in this case, is incorporated in New Jersey and has its principal place of business in Newark, New Jersey. PIC Realty Corporation ("PIC"), another named plaintiff, however, is incorporated under the laws of Delaware. PIC maintains its principal place of business in Newark, New Jersey.[3]

New Jersey law provides that a corporation is a "domiciliary" of its state of incorporation. See State v. Garford Trucking, 4 N.J. 346, 351 (1950); In re Reach, 102 B.R. at 399. Nevertheless, New Jersey's statute of limitations rule is premised on New Jersey's compensation interest. Thus, the question is whether New Jersey has an interest in compensating a corporation incorporated in a foreign state with its principal place of business in New Jersey. New Jersey clearly has such an interest. The case of Eastern Seaboard Pile Driving Corp. v. New Jersey Property-Liability Ins. Guaranty Ass'n., 175 N.J. Super. 589 (App. Div. 1980) is indicative. There, the Court held that the plaintiff, which was incorporated in Delaware and had its principal

---

[3] 745 Investment Properties, another named plaintiff, is no longer a party to this action. Therefore, its location has no bearing on this case.

14

place of business in New Jersey, was a "resident" of New Jersey under the New Jersey Property Liability Insurance Guaranty Act. Therefore, plaintiff was entitled to the benefits of the statute. The Court held that determining whether a corporation is a resident "depends upon the aim and context of the statute" in question. Id. at 592.

In keeping with this, New Jersey's strong policy in favor of compensating its domiciliaries seems logically to extend to corporations with their principal place of business in this state. Even if this were not so, however, the minor stake of PIC in this litigation, in comparison to Prudential, its corporate parent, merits the application of New Jersey's statute of limitations in this case.

Defendants also claim that the application of the domiciliary rule would be just as mechanical as the forum state rule, which New Jersey allegedly abandoned. The old rule was abandoned because New Jersey found itself in the troubling position of adjudicating cases in which it had little or no interest. But as Heavner and its progeny demonstrates, New Jersey has consistently treated the question of statute of limitations differently than other questions of substantive law. In other words, in this narrow area, there is essentially a presumption that the forum state's statute of limitations applies, which is based on New Jersey's substantial interest in compensating its domiciliaries. Defendants' policy arguments are well taken but ultimately made to the wrong forum -- the role of this court is to

15

predict how the New Jersey Supreme Court would rule.

At any rate, this is not a case where the plaintiff's only connection to New Jersey is the fact that it is domiciled in New Jersey. Two of the buildings involved in this litigation are located in New Jersey, and the defendants have some contacts with New Jersey. Moreover, many of the corporate financial decisions for which Prudential seeks compensation took place in New Jersey.

Finally, defendants point to areas of law in which New Jersey applied the law of a different state, even when the plaintiff was domiciled in New Jersey. Again, though, New Jersey treats statute of limitations differently than other substantive choice of law questions.

Thus, I conclude that because plaintiff Prudential is a New Jersey domiciliary whose primary place of business is in New Jersey, the New Jersey Supreme Court would be persuaded by its interest in compensating its domiciliary to apply its own statute of limitations in this case.

### B. Statute of Limitations

New Jersey employs the discovery rule to toll statutes of limitation. Thus, the statute of limitations begins to run only when the plaintiff knows facts or has reason to know facts that would form the basis of a cause of action. See Viviano v. CBS, Inc., 101 N.J. 538, 546 (1986) ("Under [discovery] rule, a cause of action does not accrue 'until the injured party discovers, or by an

16

exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim.") (citing Lopez v. Swyer, 62 N.J. 267, 272 (1973)).

New Jersey's statute of limitations in this area is six (6) years. Prudential filed its complaint on October 20, 1987. Thus, the critical date is October 20, 1981. If Prudential knew of or should have discovered the basis of its claim before that date, the claim is barred and must be dismissed.

Here, the parties hotly dispute what facts a plaintiff must know in order to start the statue of limitations clock.

In the recent case of Savage v. Old Bridge-Sayreville Medical Group, P.A., 134 N.J. 241, 247 (1993), the New Jersey Supreme Court made clear that two distinct kinds of knowledge must be attributable to plaintiff before the statute or limitations may begin to run. First, the plaintiff must have knowledge of the injury; and second, plaintiff must have knowledge of fault. Thus, "when a party is either unaware that he has sustained an injury or, although aware that an injury has occurred, he does not know that it is, or may be, attributable to the fault of another, the cause of action does not accrue until the discovery of the injury or facts suggesting the fault of another person." Id. (quoting Tevis v. Tevis, 79 N.J. 422, 432 (1979)). Specifically, knowledge of fault requires "the awareness of facts that would alert a reasonable person exercising ordinary diligence that a third party's conduct may have caused or contributed to the cause of injury and that conduct itself might possibly have been

17

unreasonable or lacking in due care." Id. Furthermore the court stated that knowledge of injury plus knowledge of cause does not "logically or necessarily" equal knowledge of fault. Id.

Applied to this case, in order for the statute of limitations to begin running, Prudential would have to be aware not only of the presence of asbestos in its buildings, but further that it has suffered damage by the asbestos and that the presence of this hazardous material in Prudential's buildings was possibly caused in part by the unreasonable actions of another.[4]

Defendants argue that Prudential's suspicions prior to 1981 constitute actual knowledge that begins the running of the statute of limitations. See Reply Brief of Defendant, W.R. Grace Co. -- Conn., In Support of its Motion for Summary Judgment to Dismiss Plaintiffs' Amended Complaint As Barred By the Statute of Limitations in New Jersey at 8. Defendants further argue that Prudential confuses knowledge of injury with knowledge of the extent of the injury, and that in fact, Prudenti[al woul]d have actual knowledge of its injuries, even if those injuri[es w]ere slight at the time of its initial knowledge.

It is true that some courts have held that suspicions trigger the statute of limitations. For instance, in Board of Education of the School District of the City of Detroit v. Celotex Corporation, No. 84-429634 (Circuit Court, Wayne County Michigan)

---

[4]Prudential argues in addition that before the statute of limitation begins to run, it would need confirmation by an expert that the buildings were in fact contaminated and it would need actual knowledge of the identity of the defendants. Because of the disposition of the motions, I need not reach those issues.

18

(March 1, 1988), aff'd on this ground, 493 N.W.2d 513, 519-20 (Mich. App. 1992) (applying Michigan law), the court found that plaintiff's claim accrued when it obtained a general knowledge of the hazards of friable asbestos as well as knowledge that its buildings contained asbestos. Similarly, in Roseville Plaza Ltd. Partnership v. U.S. Gypsum Co., 811 F. Supp. 1200 (E.D. Mich. 1992), the Court rejected defendants' argument that the plaintiff's cause of action accrued only when it discovered that its buildings were actually contaminated. Instead, the court held that the statute of limitations had accrued when plaintiffs were informed by the Michigan Department of Public Health of the presence of asbestos, and of the fact that asbestos presents a potential for danger. Id. at 1207-09.

In Roseville Plaza, however, the court was motivated in significant part by the fact that "plaintiff waited four years after receiving the MDOPH investigation to order a professional survey of the asbestos-containing materials in Roseville Plaza." Id. at 1209. Thus, as the court put it, plaintiffs' cause of action had accrued because "plaintiffs should have discovered its claims through the exercise of reasonable diligence before May 31, 1988" (emphasis added). Celotex is also better characterized as a "should have known" case, since that is the nature of the two-component test of knowledge of a generalized potential for danger and knowledge that the plaintiff's buildings contained asbestos. To be sure, in most cases, "known" and "should have known" are combined in the analysis. But because of the character of

19