IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| W. R. Grace & Co., et al.[1], | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Sur-Reply Deadline: January 20, 2006 |
| | ) | Hearing Date: January 24, 25 and 26 2006 |
| | ) | |
| | | Re: Docket Nos. 9311, 9315 |

## Certain Speights & Runyan Claimants' Sur-Reply in Opposition to the Debtors' Thirteenth and Fifteenth Omnibus Objections

Speights & Runyan respectfully submits this Sur-Reply in Opposition to the certain of the Debtors' Thirteenth and Fifteenth Omnibus Objections to Asbestos Property Damage Claims.

---

[1] The Debtors consist of the following 62 entities: W. R Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-I Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Ins., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgracc, Inc., Coalgracc II, Ins., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp, Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B 11 Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe. Inc., Grace H-G Inc., Grace H-G II Inc,. Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Ins., MICA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Curving, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

060120111720.DOC                                                    1

## I. Thirteenth Omnibus Objection Related to the Authority of Speights & Runyan to Represent Claimants

### A. OBJECTIONS TO GRACE'S AUTHORITY OBJECTIONS TO THIRTY-EIGHT CLAIMS

Grace claims that there are 38 claims still pending for which there is no evidence of written authority to have filed the claim. Grace is simply wrong. The 38 claims identified by Grace have either been dismissed, withdrawn or written authority has been provided. The claims that have been withdrawn or dismissed are:

- Claim No.: 11612 – Holiday Inn, San Francisco, was withdrawn on June 29, 2005.

- Claim No.: 11520 – First National Bank – Hutchinson, Kansas was withdrawn on June 29, 2005.

- Claim No.: 11212 – Chateau LeMoyne Hotel – New Orleans, Louisiana was withdrawn on June 29, 2005

- Claim No.: 11166 – Union Hospital – Elkston, Maryland was withdrawn on June 29, 2005.

- Claim No.: 10526 – Saint Luke's Hospital – Duluth, Minnesota was withdrawn on June 29, 2005

- Claim No.: 6640 – Exxon Research and Engineering – Florham Park, New Jersey was withdrawn on August 31, 2005.

- Claim No.: 6626 - Exxon Research and Engineering – Florham Park, New Jersey was withdrawn on August 31, 2005.

- Claim Nos.: 11079, 6740, 10522, 11237, 10971, 10870, & 10878 were all dismissed or should have been dismissed as part of the Court's November 14, 2005 Order.

The claims for which Speights and Runyan has already provided Grace with evidence of written authority are as follows:

- Claim No.: 6639 – Eden Medical Center – Castro Valley, California

- Claim No.: 11125 – St. Anthony's Regional Hospital & Nursing Home – Carroll, Iowa

- Claim No.: 11207 – Lafayette Memorial Hospital – Lafayette, Louisiana

- Claim Nos.: 10948 & 10749 – Glenn Oak County Club – Old Westbury, New York[2]

- Claim No.: 9908 – Hyatt Corporation – Hyatt Regency – Dallas, Texas.[3]

- Claim No.: 15741 – Calgary Board of Education – Calgary, Alberta, Canada

- Claim No.: 12419 – Carleton University, Dunton Tower – Ottawa, Ontario, Canada

- Claim No.: 12417 – Carleton University, Glenn Gary House – Ottawa, Ontario, Canada

- Claim No.: 12416 - Carleton University, Loeb – Ottawa, Ontario, Canada

- Claim No.: 15740 – Carleton University, MacDrum Library – Ottawa, Ontario, Canada

---

[2] These claim numbers appear to represent a single claim.
[3] Although Speights and Runyan provided written authority for this claim, this claim is being withdrawn at this time.

- Claim No.: 12395 – Carleton University, MacDrum Library – Ottawa, Ontario, Canada

- Claim No.: 12434 – Carleton University, Patterson Hall – Ottawa, Ontario, Canada

- Claim No.: 12420 – Carleton University, Robertson Hall – Ottawa, Ontario, Canada

- Claim No.: 12415 – Carleton University, Russell Greenville – Ottawa, Ontario, Canada

- Claim No.: 12514 - Hyatt Equities, Hyatt Regency – Vancouver, Vancouver, British Columbia, Canada

- Claim No.: 12510 - Ipsco, Inc., E.R.W. Mill Building – Edmonton, Alberta, Canada

- Claim No.: 12511 – Ipsco, Inc., Rolling Mill Building – Regina, Saskatchewan, Canada

## B. WRITTEN AUTHORITY FOR SEVENTY-ONE ADDITIONAL CLAIMS

Additionally, Grace claims that in spite of Speights and Runyan having produced evidence of express written authority, there are seventy-one (71) additional claims which are unauthorized in this bankruptcy. Grace claims that because the document expressing written authority is undated or dated after the bar date, that these expressions of written authority are inadequate. Again, Grace is wrong.

There is no requirement under the Bankruptcy Code, and Grace has cited none, that requires counsel to obtain express written authority prior to filing a claim. It simply does not follow that because a client faxed a written authorization to its lawyer after the bar date, that the

4

filing of the claim in the first place was unauthorized. Indeed, such an artificial requirement would circumvent Rule 3001(b), F.R.Bankr.P. which presumes the validity of a proof of claim executed by a claimant's attorney. *See In Re Garner*, 246 Br. 617 (9th Cir. BAP 2000).

Moreover, even if the Bankruptcy Rules required every attorney representing a claimant to obtain express written authorization prior to filing a claim on their clients behalf, the seventy-one (71) claims objected to by Grace would still be valid and authorized under the doctrine of ratification.

The attorney client relationship is, among other things, a principal and agent relationship. *North Bend Senior Citizens Home, Inc. v. Cook* 261 Neb. 500, 509, 623 N.W.2d 681, 688 (Neb.,2001) (the authority and duties of an attorney are governed by the principles of the law of agency); *see also Riddle v. Com.* 864 S.W.2d 308, 311 (Ky.App.,1993) (The relationship of attorney-client is a contractual one, either expressed or implied by the conduct of the parties. The relationship is generally that of principal and agent); *Free v. Wilmar J. Helric Co.* 70 Or.App. 40, 688 P.2d 117, (Or.App.,1984); *In re Land* 215 B.R. 398, (8th Cir.BAP,1997). As such, doctrines concomitant with the law of principle and agent apply to actions of attorneys on behalf of clients. Included in these doctrines is the doctrine of ratification. "It is a basic principle of the agency law that a principal may ratify a prior unauthorized act of an agent by expressed or implied affirmation of the act and the effect of such affirmation is to supply the authority that was lacking when the act was taken." *Lenfest v. Boston & Maine Corp.*, 537 F.Supp. 324, (D.Mass.,1982).

In the attorney client context, it is well settled that a client may ratify even the unauthorized actions of his attorney. *Navrides v. Zurich Ins. Co.* 5 Cal.3d 698, 703, 488 P.2d 637, 640-640, 97 Cal.Rptr. 309, 312 (Cal. 1971); *citing, Moving Picture etc. Union v. Glasgow*

*Theaters, Inc.* (1970) 6 Cal.App.3d 395, 403, 86 Cal.Rptr. 33; *Redsted v. Weiss* 71 Cal.App.2d 660, 664, 163 P.2d 105 (1945); *Fidelity & Cas. Co. v. Abraham* (1945) 70 Cal.App.2d 776, 783, 161 P.2d 689). Courts have gone so far as to hold that a principal may ratify the forgery of his signature by his agent; *Volandri v. Hlobil* (1959) 170 Cal.App.2d 656, 659--660, 339 P.2d 218; 704 *Kadota Fig Ass'n v. Case-Swayne Co.* 73 Cal.App.2d 815, 167 P.2d 523 (1946); and that a principal may ratify the unauthorized act of an agent by bringing suit where unauthorized act was a legal prerequisite to the claim. *Price v. McConnell,* 184 Cal.App.2d 660, 666, 7 Cal.Rptr. 695 (1964).

In the case at bar and based solely on the fact that some written authorizations are undated or dated after the bar date, Grace argues that Speights & Runyan filed bankruptcy claims without the authority of its clients. Though wrong, even if this contention were correct, Grace cannot overcome the fact that the claimants ratified the filings expressly.

Bankruptcy courts have analyzed the doctrine of ratification and upheld its application. "The law is clear that the binding effect of an agent's acts is not necessarily dependent upon the existence of the authority at the time the act was performed. Rather, acts which are performed outside the scope of an agent's authority, or which are performed by one who is not even an agent may be ratified by the principal." *Matter of Mickler* 50 B.R. 818, 827 (Bkrtcy.Fla.,1985) *citing Armstrong v. Blackadar,* 118 So.2d 854 (Fla. 2d DCA 1960); *see also, In re Uwimana,* 274 F.3d 806,(C.A.4.Md.,2001) ( holding that principal's intention to ratify unauthorized act of its agent may be inferred from the words, conduct, or even the silence of principal that reasonably indicates its desire to affirm unauthorized act.)

Bankruptcy Courts have stated that the very acts which confer jurisdiction upon a bankruptcy court can be made ultra vires, so long as they are later ratified. In such cases, the

6

court's jurisdiction is proper and relates back to the original unauthorized act. *Hager v. Gibson*, 108 F.3d 35, 39-40 (4th Cir.1997). In *Hager*, the Fourth Circuit panel held that "the unauthorized filing of a voluntary petition in bankruptcy in behalf of a corporation might be ratified in appropriate circumstances by ensuing conduct of persons with power to have authorized it originally." The panel held that although a principal of the debtor corporation had never authorized the filing of the bankruptcy petition, he implicitly ratified the filing of the bankruptcy petition by not taking steps within his power to extricate the corporation from bankruptcy after he was aware of the proceedings. Moreover, the ratification was held to relate back to the original petition date. 108 F.3d at 40; *see also, McCay v. Luzerne and Carbon County Motor Transit Co.*, 189 A. 772, 774, 125 Pa.Super. 217, 223 (1937).

Here, Speights & Runyan has presented evidence of explicit written authorization to file claims on behalf of these 71 claimants. That some or all of these documents are dated after the bar date is immaterial because they expressly ratify the act filing of the claim by Speights & Runyan and authorize Speights & Runyan to act on their behalf in these proceedings. Accordingly, Grace's authority objections to 71 claims is without merit.

## II. Fifteenth Omnibus (Substantive) Objections to Property Damage Claims

### A. GRACE'S MISCHARACTERIZATION OF THE BURDEN OF PROOF

As an introduction to its Reply Memorandum and in an obvious attempt to avoid its responsibility to meet properly filed proofs of claim with evidence rather than empty lawyer allegations, Grace ignores both the Bankruptcy Code and Rules. Section 502(a) of the Bankruptcy Code states that a claim is "deemed allowed" unless an objection is made. Section 502(b) goes on to state that if an objection to a claim is made, then the Court "shall" determine the amount of such claim and "shall allow such claim" except to the extent that one of the limited

grounds for disallowance is established. Nowhere in the Code Section does it state that noncompliance with Rule 3001(c) is a statutory ground for disallowance. Accordingly, the Debtors must present evidence to rebut the claim, and do more than rest upon mere formal objections. See <u>In Re Heath, 331 Br. 424 (9th Cir. BAP 2005)</u>. As noted by another Bankruptcy Panel from the 9th Circuit,

> The mechanics of what it takes to rebut the presumption are driven by the nature of the presumption as *"prima facie"* evidence of the claim's validity and amount. The proof of claim is more than "some" evidence; it is, unless rebutted, "to *prima facie*" evidence. One rebuts evidence with counter evidence.

<u>In Re Garner, (246 Br. 617 (9th Cir. BAP 2000)</u>.

In most instances, Grace has presented the court with no evidence, but has instead generally referred to the documentary submissions of claimants. Where Grace has failed to come forward or identify specific evidence, its objections must fail. Stated another way, it would be violative of due process to sustain Grace's objections where Grace has failed to specifically identify and present factual evidence sufficient to rebut the *prima facie* validity of the claim. Claimants can not be made to come to court to respond to the debtors' objection to their claim without knowing in advance and as required by the Bankruptcy Rules and this Court's local rules, the specific evidentiary and legal basis of the objection. Accordingly, Grace must come forward with "evidence" to rebut "counter evidence." See <u>In Re Garner, (246 Br. 617 (9th Cir. BAP 2000)</u>.

### B. CLAIMS ARE NOT BARRED BY PRIOR SETTLEMENT AND RELEASE

Grace alleges that two pending claims (Claim No. 12355 and 12299) are barred by prior release and settlement agreements. As with all affirmative defenses, Grace bears the burden of

8

proof of the existence and meaning of the release. *Eulo v. Deval Aerodynamics, Inc.*, 430 F.2d 325 (3d Cir.1970). Grace has neither produced nor submitted any release agreement that would support its contention that these claims are barred. Accordingly, Grace's objection must fail for that reason alone.

### C. CANADIAN PROPERTY DAMAGE CLAIMS

Amazingly, after representing that it was not asking this Court to rule on the merits of Canadian property damage claims, Grace is now asking this Court to rule on merits of over three hundred Canadian claims, claiming that these claims lack adequate product identification evidence. Evaluation of this objection will involve this Court in a claim by claim and document by document review of over three hundred claims that Grace originally represented would be determined in another court. Moreover, by claiming that the merits of Canadian claims were not before this Court, Grace has successfully forestalled discovery that could have been directed at Grace's Canadian sales records that could have provided additional evidence in support of product identification. This about face is unfair and prejudicial to the claimants, and should not be allowed by this Court.

### D. GEORGIA STATUTE OF LIMITATIONS

Grace has objected to the claim of Dodge County Hospital (Claim No. 11550) on the basis that the Georgia statute of limitations bars the claim because the discovery rule does not apply to actions for property damage in Georgia. *See, Corporation of Mercer v. National Gypsum Co.*, 368 S.E.2d 732 (Ga.1988). Grace's argument has three fatal flaws.

First, although the Supreme Court of Georgia dismissed the application of the continuing tort theory in *Mercer*, it has since explicitly recognized the doctrine of continuing nuisance and trespass and applied to actions for property damage. *See, Smith v. Branch*, 487 S.E.2d 35

9

(Ga.App.1997) (holding that contamination of property due to spilled dry cleaning chemicals are subject to the "continuing tort" theory). Under the continuing tort theory, "every continuance of a nuisance which is not permanent, *and which could and should be abated,* is a fresh nuisance for which a new action will lie. Consequently ... suit may be maintained for damages growing out of a nuisance ... *where the damages ... were inflicted within four years before the time of filing suit,* though the act which originally caused the nuisance was not done within the period of limitation of the action." *Groble v. Louiville & N. R. R.,* 200 S.E. 259 (Ga.1938). Asbestos property damage has been held to be an abateable nuisance which is subject to recover under nuisance theories. *Northridge Mall v. W. R. Grace & Co.,* 556 N.W.2d 345 (Wis.App.1996). Accordingly, an asbestos property damage action in Georgia could be time under the continuing nuisance theory under developing law.

Second, *Mercer* did not address the doctrine of fraudulent concealment in Georgia. Under the doctrine of fraudulent concealment, the statute of limitations is tolled during any period in which the defendant, through fraud or concealment has "deterred or debarred" the plaintiff from bringing its action. Ga. St. §9-3-96. Here, the claimant has cited a substantial body of evidence that tends to show Grace fraudulently concealed the hazards of asbestos and concealed dangers of its products, even years after it ceased manufacturing them. *See, Response of Dodge County Hospital, ¶¶5 – 69.* Moreover, Grace has submitted no evidence to suggest that Dodge County Hospital knew or should have known that it had been injured by Grace's asbestos-containing Monokote. Accordingly, Grace's objection must fail.

Finally, but not leas importantly, Grace has failed to explain why this claimant would be limited to bringing its action in a Georgia court where Georgia's statute of limitations would apply. Because statutes of limitation are procedural rules, the statute of the forum state generally

10

applies under a choice of law analysis. Indeed, as Grace is fully aware, many building owners have sued Grace's in jurisdictions other than where the building was located. *See, Bellsouth Telecommunications v. W. R. Grace & Co.*, 77 F.3d 603 (2d Cir.1996) (reviewing property damage case filed in Connecticut and applying Connecticut statute of limitations to an Alabama building). Grace has failed to establish that this claim would be barred in every jurisdiction in which it could be brought.

### E. TENNESEE STATUTE OF REPOSE

Grace cites Tennessee Code §29-28-103(a) products liability repose statute to support its contention that the property damage claim nos. 10533 and 11722 are barred because they were brought more than 10 years after purchase and installation of Grace's asbestos-containing products. Grace fails to cite §29-28-103(b), which states, "[t]he foregoing limitation of actions shall not apply to any action resulting from exposure to asbestos or to the human implantation of silicone gel breast implants." Grace further fails to cite *Clarksville-Montgomery County Bd. of Educ. v. United States Gypsum Co.*, 710 F.Supp. 1157 (M.D.Tenn.1989) which recognizes that the "asbestos exception" to the Tennessee statute of repose applies to asbestos property damage suits. Grace's disingenuous argument based upon a selective reading of the Tennessee statute is unpersuasive.

### E. THE ALLEGED FABRICATED 2003 DATE

Grace alleges that the claim forms completed by Speights & Runyan which provide 2003 as the answer to question C-18 is fabricated, and that serves as an independent basis to disallow over 600 property damage claims. Again, Grace is wrong.

First, when Speights & Runyan initially completed the claim forms prior to the bar date, it answered question 18 with the best available information at the time. The question asked

when the claimant learned of the "presence of asbestos in the property **of the Grace product for which you are making this claim.**" (See, Proof of Claim, Q. 18). Speights & Runyan answered the question asked with the best information it had at the time, stating in most cases that the **claimant** did not know it had an asbestos-containing product manufactured by Grace until it was informed of that fact just prior to filing the proof of claim. Nevertheless, Grace now contends that this question should have been interpreted to ask when the claimant first learned it had asbestos of any kind in its building. Respectfully, it is not the claimants responsibility to sort through inartful questions to try and determine what the debtors really want to know. The fact that Speights & Runyan interpreted the question differently than the debtors now say they intended is no basis to disallow these claims.

Second, the great majority of Speights & Runyan claimants have provided supplemental documentation which provides Grace with information about when the claimants discovered they had any asbestos-containing products in their buildings. Accordingly, even if question 18 should have been interpreted to ask what Grace now claims it intended to ask, Grace has received responsive information through subsequent document supplements, and thus, cannot show it was prejudiced by the original answer to the question.

Finally, as described in great detail in the individual responses to the Debtors' Fifteenth Omnibus Objection, neither the date a claimant learned it had asbestos in its building generally, nor the date it learned that any particular asbestos product had been manufactured by Grace are determinative of when the statute of limitations began to run. Rather, the critical event that triggers the statute of limitations period is when the claimant learned that that the product at issue had released fibers and contaminated the building. *Kansas City v. W. R. Grace & Co.*, 778 S.W.2d 264, 268 (Mo.App.1989) (holding that an asbestos property damage action does not

12

"the ability to ascertain a substantial and unreasonable risk of harm form the release of the toxic asbestos fibers."); *MDU Resources v. W. R. Grace & Co.*, 14 F.3d 1274, 1279 (8th Cir.1994) ("the District Court erred when it instructed that the issue for purposes of the statute of limitations was when MDU learned of the presence of asbestos in the building"); *THS Northstar v. W. R. Grace & Co.*, 66 F.3d 173 (8th Cir.1995) ("the distinction between the mere presence of asbestos-containing materials in a building and actual release and contamination is critical" because "no cause of action exists until there has been a substantial release"); *San Francisco Unified School District v. W. R. Grace & Co.*, 37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305 (Cal.App.4th 1995) ("the mere presence of asbestos constitutes only a threat of future harm. . . . [c]ontamination by friable asbestos is the physical injury and the actual, appreciable harm that must exist before a property owner's strict liability or tort cause of action against an asbestos manufacturer accrues and the limitations period commences."); *Heider v. W. R. Grace & Co.*, 1992 WL 189254 (N.D.Ill.) (knowledge of the presence of asbestos is not enough to trigger the statute of limitations because the "threat of future harm, not yet realized, is not enough"). Accordingly, even if the answers provided by Speights & Runyan were erroneous when made, they have no bearing upon the statute of limitations issue Grace raises.

**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]**

## III. Conclusion

The remaining claims implicated by Grace's Reply Memorandum in Support of the Thirteenth and Fifteenth Omnibus Objections are valid claims, and Grace has failed to meet its evidentiary burden to rebut them. Grace's Thirteenth and Fifteenth Omnibus Objections to these claims should be denied.

Respectfully submitted,

Christopher D. Loizides (#3968)
Michael J. Joyce (#4563)
Legal Arts Bldg.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 654-0248
Facsimile: (302) 654-0728 (fax)
E-mail: loizides@loizides.com

SPEIGHTS & RUNYAN
Daniel A. Speights (SC Fed. ID No. 4252)
Marion C. Fairey, Jr. (SC Fed. ID No. 6101)
200 Jackson Avenue, East
P.O. Box 685
Hampton, SC 29924
Telephone: (803) 943-4444
Facsimile: (803) 943-4599

January 20, 2006