IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| W. R. Grace & Co., et al.[1], | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Re: Docket No. 11547 |

## ANDERSON MEMORIAL HOSPITAL'S PROPOSED
## REPLY MEMORANDUM TO THE DEBTORS' BRIEF REGARDING
## THE NOTICE PROGRAM AND IN SUPPORT OF CLASS CERTIFICATION

### I. THE PROBLEMS WITH GRACES' BAR ORDER NOTICE PROGRAM

"Th[e] right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Thus, "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections . . . But when notice is a

---

[1] The Debtors consist of the following 62 entities: W. R Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-I Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Ins., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Ins., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp, Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B 11 Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe. Inc., Grace H-G Inc., Grace H-G II Inc,, Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Ins., MICA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Curving, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

person's due, process which is a mere gesture is not due process." *Id,* 339 U.S. at 315, 70 S.Ct. at 657. Thus, in the bankruptcy context, any "known creditor" entitled to notice whose name and address are reasonably ascertainable, is entitled to have the notice sent directly to them. *Chemtron v. Jones,* 72 F.3d 341 (3d Cir.1995); *Fogel v. Zell,* 221 F.3d 955 (7th Cir.2000) (Posner, J); *In re: Chicago, Milwaukee, St. Paul & Pacific R.R.,* 974 F.2d 775 (7th Cir.1992); *In re: Savage Industries,* 43 F.3d 714 (1st Cir.1994). A "known creditor" is one whose name and address can be readily ascertained by the debtor, "making it feasible to send the creditor the notice directly and not force him to read the fine print in the *Wall Street Journal.*" *Fogel v. Zell, supra* at 963; *Tulsa Professional Collection Service, Inc. v. Pope,* 485 SuS. 478, 490, 108 S.Ct. 1340, 1347, 99 L.Ed.2d 565 (1988); *citied in, Chemetron v. Jones, supra* at 346 ("a 'known' creditor is one whose identity is either known or 'reasonably ascertainable by the debtor'").

***Did Grace Give Direct Mail Notice to the Proposed Class?***

No. Grace has not cited one example, one instance or produced one piece of evidence of a direct mail notice it sent to any property damage claimant listed on Exhibit A to Anderson's Motion for Class Certification. Although Grace submitted computer searchable schedules listing every creditor to whom direct notice of the bar Order was sent, Grace has not identified one such claimant from the list.

***Were the Names and Addresses of Class Members 'Reasonably Ascertainable' from Grace's "Books and Records"?***

Yes. Exhibit A to Anderson's Motion for Class Certification was derived by Speights & Runyan directly from Grace's own sales and advertising records. These records were gathered by Grace beginning in 1982, cataloged and stored by Grace's lawyers in a document repository. [Exhibit 1 (Deposition of Stephen H. Ahern,

060125103909.DOC                                                 2

2/26/1993, p. 3, 5-6, 19-20)]. Segregated in the repository are Grace's sales records for its asbestos-containing products. These records include thousands of purchase orders and billing invoices for asbestos-containing products (mostly Monokote) which provide the physical address and building owner where Grace's products were delivered. Additionally, Grace maintained at least two separate catalogs of the documents in the repository including one computerized catalog prepared by its counsel to assist in locating documents. [Exhibit 2 (Deposition of Robert Murphy, 12/18/1992, pp. 139, 140)]. Furthermore, Grace's repository custodian testified that Grace created and maintained customer lists containing the names and addresses of Grace's customers for asbestos-containing products. [Exhibit 2, p. 149].[2] In sum, the names and addresses of hundreds of buildings where Grace's asbestos-containing products were installed are readily accessible and have been maintained by Grace in its litigation repository by its asbestos property damage attorneys for over twenty years.

As the Third Circuit has held, "A creditor's identity is 'reasonably ascertainable' if that creditor can be identified through 'reasonably diligent efforts.'" *Chemetron, supra,* at 346. Though the Third Circuit specifically declined to limit the "ascertainable standard" to an examination solely of the debtor's own books and records, more may not required here. A review of Grace's own records, even without the benefit of its catalogs and computerized databases, reveals the names and addresses of hundreds of buildings in which Grace's asbestos-containing products were installed.

---

[2] Anderson has served discovery upon Grace in an effort to obtain evidence that will show that (1) Grace can easily identify hundreds of buildings in which its asbestos-containing products; and (2) despite this knowledge, Grace purposefully chose to exclude those claimants from its direct notice program. Anderson should be allowed to pursue this discovery to develop the record and refute Grace's assertions.

Nevertheless, Grace claims that it could not have reasonably ascertained the names and addresses of these claimants because of inevitable ownership changes, tenant changes, deaths or other unpredictable events, thus making it impossible to determine the names of the current owners who might have a claim.[3] But, buildings do not move or change their physical address or location and the cost of sending direct notice packages directly to several hundred building addresses would not have been material to the $4 million Grace actually spent. How can Grace claim that sending notice packages directly to the building addresses Grace had in its possession would be unreasonable, too expensive or overly burdensome? These property damage claimants should have gotten actual notice of the bar date for asbestos-property damage claims.

***Are Buildings with Grace Asbestos-Containing Products "Known Creditors"?***

Yes. Grace clearly had notice that building owners with its asbestos-containing products in them could have "contingent tort claims" against them. See, *Fogel v. Zell, supra,* at pp. 960 – 962 (discussion of "contingent tort claims" and "future tort claims" and whether they fit the definitions of a "creditor" who has a "claim" pursuant to 11 U.S.C. §§101(10) and 301. As it admitted in its brief, Grace has faced asbestos property damage suits for more than twenty years. Included in the hundreds of asbestos property damage cases filed against it are numerous class actions, which involved tens of thousands of buildings. Moreover, because the federal NESHAP regulations require the separate and controlled removal of Grace's asbestos-containing products from buildings, at the latest when they are ultimately demolished, Grace's liability for asbestos property

---

[3] To solve this problem with the Libby claimants, Grace apparently sent a direct notice package to every single P. O. Box in Libby, Montana.

damage claims may be more aptly described as future tort liability rather than contingent tort liability, depending upon the fact of each case.

In any event, Grace clearly knew that the remaining, unlitigated buildings could have (or would have) claims against Grace, subject to whatever defenses might also be available. As the Seventh Circuit recognized in *Fogel v. Zell*, recognition of contingent tort liabilities in bankruptcy proceedings might be complicated "by requiring that provision be made in the allocation of assets of the debtor's estate for future claims that might be difficult to value, but it might be a price worth paying to eliminate an arbitrary difference in treatment." *Fogel v. Zell, supra*, at 961. But, as the Seventh Circuit also recognized, where the debtor is clearly trying to extinguish the contingent or future claims in the bankruptcy, that is a point that "does not have to be decided." *Id*, at 962.

The point is that Grace clearly intends for the bar Order to completely and forever discharge its asbestos property damage liability. To do so consistently with the Bankruptcy Code and the Constitution, Grace must give appropriate notice that comports with due process. *Chemtron v. Jones, supra; Fogel v. Zell, supra; In re: Chicago, Milwaukee, St. Paul & Pacific R.R., supra; In re: Savage Industries, supra.* Constitutionally appropriate notice always includes direct mail notice where feasible.[4] *Mullane v. Central Hanover Bank & Trust, supra.*

---

[4] "Were feasible" was described by the Seventh Circuit to mean where the cost of direct notice does not "eat up" the debtors estate or where the claims are so small they do not justify the expense. *Fogel v. Zell, supra*, at 963. Neither is the case here. As in *Fogel*, this bankruptcy has been protracted for several years. The bar date was set many months after the petition date. As reflected by the past verdicts against the debtors, asbestos property damage claims are typically multi-million dollar claims and the assets at stake here are worth over a billion dollars. The cost of direct mail notice to several hundred property damage claim holders would not have taxed the $4 million dollar notice budget approved by this Court.

### *Is it Appropriate for Grace to assume that the Class Members have "Abandoned" Their Claims?*

No. Grace's assumption is self-serving at best and fraudulent at worst. Grace's interest is to have as few property damage claims allowed as possible, but to have as many forever barred as possible. Given this inherent conflict, Grace cannot justify its failure to give direct notice to hundreds of known claimants because it "assumed" that they had abandoned their claims. If any of these claimants abandon their claims, it must be after receiving constitutionally appropriate notice of their opportunity to do so.

### *Whose Burden is it to Provide Notice of the Bar Date Order?*

It is Grace's burden, and no one else's. *In re: Savage Industries, supra,* at p. 721; *In re Main,* 157 B.R. 786 (W.D.Pa.1992) ("Indeed, the burden of proof rests with the debtor to demonstrate that creditors had "notice or actual knowledge" of the bankruptcy filing under §523."). Grace is the party seeking to forever bar property damage claimants. It is Grace's responsibility to insure that its notice complies with due process.

### *Can Speights & Runyan Be Judicially Estopped from Grace's Notice Failures as a Basis for Class Certification?*

No. The motion cited by Grace which sought to relieve attorneys for property damage claimants of the obligation of certifying that they had provided notice of the bar order to their clients was filed by the Official Property Damage Committee. The arguments made in support of it were made by counsel for the Committee. Neither Mr. Speights, nor Speights & Runyan were a party to either the motion or counsel's arguments other than as one of seven members of the Committee.

Judicial estoppel may not be asserted against someone unless they were a 'party' to the prior, allegedly inconsistent position, or unless there is sufficient evidence that the

person had dominion or control over the 'party.' *Doral Pharmamedics, Inc. v. Pharmaceutical Generic Developers, Inc.*, 148 F.Supp.2d 127 (D.P.R.2001). Moreover, even if it were shown that Mr. Speights controlled the actions of the Property Damage Committee and its counsel, judicial estoppel does not apply because there is nothing inconsistent between the committee's position regarding the bar date Order, and the position of Speights & Runyan in its Motion for Class Certification. The fact that the Committee opposed shifting Grace's burden of providing adequate notice of the bar order to counsel for specific claimants has nothing to do with the fact that Grace chose not to send direct notice to the proposed Class Members listed on Exhibit A to Anderson's Certification Motion. Indeed, more recently, Grace has made representations to this Court that the great majority of Class Members were not represented by Speights & Runyan at all, or at least prior to the bar date. It is Grace who is playing "fast and loose" with its arguments to the Court, talking out of both sides of its mouth.

The underlying premise behind Grace's argument is that but for the interference of the Property Damage Committee, this Court's bar date Order would have required property damage counsel to certify that proper notice had been given to all of its clients.[5] How can Grace now, after arguing in no less than four briefs and at three separate hearings that Speights & Runyan 1) did not have authority to file proofs of claim on behalf of hundreds of claimants; 2) did not represent parties on whose behalf the proofs of claims had been filed; and 3) that because Speights & Runyan lacked authority and did not represent parties on whose behalf the proof of claims had been filed, that the claims were not valid, come in and tell this Court with a straight face that in spite of all that, Speights & Runyan should have (or even could have) certified that these same claimants

---

[5] Thus, Grace would have succeeded in shifting its notice burden to the representatives of the creditors themselves.

received the notice package? It is Grace who should be judicially estopped from making such a brazen argument.

### Can Notice by Publication Save Grace's Failure to Give Direct Notice?

No. "The issue is not whether the creditor is known to the [debtor] but whether the creditor's name and address can be readily ascertained by the [debtor], making it feasible send the creditor the notice directly and not force him to read the fine print in the *Wall Street Journal.*" *Fogel v. Zell*, supra, at p. 963. Or, as stated so eloquently in *Mullane*,

> It would be idle to pretend that publication alone as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts. It is not an accident that the greater number of cases reaching this Court on the question of adequacy of notice have been concerned with actions founded on process constructively served through local newspapers. Chance alone brings to the attention of even a local resident an advertisement in small type interested in the back pages of a newspaper, and if makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed. The chance of actual notice is further reduced when as here the notice required does not even name those whose attention it is supposed to attract, and does not inform acquaintances who might call it to attention. In weighing its sufficiency on the basis of equivalence with actual notice we are unable to regard this as more than a feint.
>
> * * *
>
> As to known present beneficiaries of known place of residence, . . ., notice by publication stands on a different footing. Exceptions in the name of necessity do not sweep away the rule that within the limits of practicability notice must be such as is reasonably calculated to reach interested parties. Where the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency.

*Id*, 339 U.S. at 315 – 318; 70 S.Ct. at 658 – 659.

*Will Class Certification Delay this Case?*

Not materially. The class claims can be adequately estimated based on the current record in the ongoing estimation process. Class notice can occur simultaneously with the ongoing estimation process. Moreover, Grace's concerns about delay are overstated and disingenuous given the number of times that Grace has sought to extend exclusivity in this case. Notice to a class of the known property damage claimants ascertained from Grace's own records could be accomplished through direct mail at little cost and can completed prior to the conclusion of the PD estimation proceedings.

## II. The South Carolina Anderson Class Has Already Been Certified

Anderson Memorial Hospital first filed its class action complaint against W. R. Grace & Co. on December 23, 1992. The case was certified as a state-wide class action against W. R. Grace & Co. after nine years of contentious litigation, three of which were devoted solely to the class certification issue. Having previously lost class certification for the state-wide class, Grace now seeks to avoid the consequences of that certification order by taking the remarkable position that the order entered was a sham and that Mr. Speights somehow manipulated a highly respected Circuit Court Judge in the process.

Contrary to these aspersions, the Anderson Memorial Hospital class certification issue was fully litigated and is entitled to full faith and credit from this Court. Indeed, for this Court to find otherwise without examining the full record for the South Carolina Court would be a miscarriage of justice. However, because Grace litigated the class certification issue in South Carolina in the same manner it is litigating these proceedings (by attempting to divert the Court's attention away from the merits through outrageous personal attacks against counsel), the record in the first class certification proceedings

was sealed by the trial court. Accordingly, to the extent that this court wishes to accept Graces' invitation to re-litigate state-wide certification order previously entered by the South Carolina Court, Anderson will request that this court lift the automatic stay for the limited purpose of petitioning the South Carolina Court to unseal the record so that it may be presented to this court. Unsealing the record would provide this court with clear and incontrovertible evidence that the class certification issue was fully litigated before the South Carolina Court, and that Grace's claims about the South Carolina proceedings are false. Specifically, unsealing the record would demonstrate that:

- In early 1997 (merely four years after the case had been filed) counsel for Anderson and the defendants, including Grace, began circulating a briefing schedule for class certification. At Grace's request and without the knowledge of its co-defendants, Anderson agreed to postpone the briefing of the certification motion in order to discuss settlement with Grace. In the middle of these negotiations, however, Grace unilaterally began attacking the adequacy of Speights & Runyan to serve as class counsel while it privately made overtures that it would stop the attack if Speights & Runyan would be more reasonable in settlement negotiations.

- Speights & Runyan refused to continue negotiations under this cloud and filed its motion for class certification on January 2, 1998. Grace and the other defendants responded by further attacking Speights & Runyan's fitness to serve as class counsel and asking that the Court set a evidentiary hearing to hear evidence. Anderson also sought an evidentiary hearing to refute these scurrilous allegations.

- After making these allegations, two significant events occurred. First, counsel for U. S. Gypsum, one of the defendants in Anderson, sought and obtained more factual information about the allegations that were being made by Grace against Speights & Runyan. After reviewing this information, U. S. Gypsum took the unprecedented step of withdrawing its joinder in Grace's attack against Speights & Runyan.

- Second, even after claiming in court documents that Speights & Runyan was inadequate class counsel, Grace continued to make settlement overtures and promises that it would call off the attack if Speights & Runyan would just settle the Anderson class. Speights & Runyan again refused to negotiate in this manner and sought a hearing on class certification.

- In the spring of 2000, the South Carolina court scheduled the evidentiary hearing on the class certification and the adequacy of Speights & Runyan for September 5 and 6. In advance of the hearing, Grace filed its second round of briefs on the issue of class certification and adequacy.

- At the close of the evidentiary hearing the court indicated on the record that he had heard enough to make his decision. Nevertheless, Grace's counsel requested the opportunity to review the transcript of the hearing and submit a third round of briefs to the Court. The court acquiesced and gave Grace 45 days after receipt of the transcript to file its additional brief. Due to heavy work schedule and backlog of transcripts not uncommon to court reporters in South Carolina, the transcript was not delivered until late December of 2000.

- By the time Grace's third round of briefs were to be filed, Grace's CEO had publicly announced that Grace was seriously considering bankruptcy. In response to that announcement Anderson, through its counsel, sought an immediate *ex parte* order granting conditional certification of the Anderson class and the issuance of a Rule to Show Cause why the conditional order should not remain in place pending the court's final determination. Based on this application, the South Carolina court entered an order conditionally certifying the Anderson class issued the Rule to Show Cause against Grace.

- Subsequently, after giving Grace the opportunity to fully brief the propriety of the conditional certification order, the court held a hearing where Grace and Anderson were represented. At the hearing, Anderson argued and Grace did not seriously dispute that it was considering bankruptcy or that the filing of a bankruptcy petition and the accompanying automatic stay could prejudice Anderson and the class, especially given the fact that the certification motion had been pending for over three years; that the parties had submitted three rounds of briefs; that the parties had participated in a two day evidentiary hearing; and that the parties had hundred of hours and tens of thousands of dollars invested in the certification issue. At the conclusion of the hearing, the court kept the conditional certification order in place. Grace filed for Chapter 11 protection in this court on March 30, 2001.

Moreover, unsealing the record would allow Anderson Memorial Hospital to present significant and uncontroverted evidence that the adequacy attack that Grace previously raised in the South Carolina case (and repeats again at page 31 of its response) is utterly groundless and contradicted by a substantial body of evidence.[6]

Additionally, Grace's contention that it was somehow surprised by Speights and Runyan filing a class proof of claim based upon the certified class action is utterly disingenuous. Grace knew full well that the Anderson state-wide class action had been certified at the time it filed for bankruptcy and would be presented as a class claim. Additionally, upon information provided to counsel for Anderson, Anderson believes that Grace and its attorneys actively and intentionally tried to avoid the effects of the South Carolina certification order by attempting to keep Anderson Memorial Hospital and its counsel, Daniel Speights, off of the official property damage committee by repeating the false allegations it had made in the Anderson regarding Speights and Runyan's adequacy in the Anderson Class Action proceedings to the US Trustee and others. At the time Grace repeated these accusations, Grace knew full well that they had been thoroughly disproven and rejected by the South Carolina Court and that all of the evidence had been placed under seal by the South Carolina Court. Moreover, Anderson believes that Grace and its counsel have engaged in similar conduct with others as well. Anderson has

---

[6] The three (3) "Questionable practices" of Mr. Speights that Grace recites at page 31 of its response were the same accusations made by Grace in the South Carolina Court on the record that was sealed by the South Carolina Court. Not only has Grace's recitation of these allegations violated the seal order of the South Carolina Court, they are made by Grace knowing that Anderson cannot refute them based on the existing record because the at to evidence is under seal. If Anderson were permitted to unseal the record, it could produce affidavits and testimony of expert and fact witnesses, including former members of the Asbestos School litigation plaintiff's committee, a sitting federal judge, a former assistant U. S. Attorney General, other asbestos property damage class counsel who have served with Mr. Speights, and a former candidate for the United States Senate, who flatly refute each of Grace's adequacy charges. Suffice it to say that the adequacy assertions made by Grace in Anderson and repeated here were so utterly baseless, that (1) Grace itself withdrew one of the same claims it now repeats to this Court after the evidentiary hearing; and (2) immediately after Grace excused itself from the South Carolina proceedings by filing for bankruptcy, Grace's co-defendants withdrew the remaining allegations against Mr. Speights, presumably to avoid sanctions.

noticed depositions and made document requests of Grace that will bear further light on this issue and Grace's knowledge about the Anderson Memorial State-wide Class Action in these bankruptcy proceedings. This discovery is necessary to allow Anderson to develop and present evidence regarding Grace's knowledge of the Anderson case and the extent to which Grace has tried to sabotage Anderson to avoid the affects of the Anderson litigation.

**Conclusion**

Class Certification will provide an opportunity to provide constitutionally sound direct notice to known property damage creditors. However, Grace's response to Anderson's motion for class certification is replete with misstatements and its characterization of the Anderson litigation in South Carolina is just false. Moreover, Grace has made these false statements knowing that the class certification record in the Anderson case is sealed and that Anderson cannot present this court with the substantial body of evidence from that case without petitioning the South Carolina court to lift the seal order. Anderson respectfully requests that this Court (1) enter a CMO and set a schedule to allow Anderson to complete the very limited discovery it has noticed and (2) lift the automatic stay for the limited purpose of allowing Anderson to petition the South Carolina court to lift the seal order so that Anderson can present to this court all of the

evidence that was presented to the South Carolina court to refute Grace's false accusations.

DATED: January 25, 2006

*[signature]*

Christopher D. Loizides (#3968)
Michael J. Joyce (#4563)
LOIZIDES & ASSOCIATES
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:     (302) 654-0248
Facsimile:     (302) 654-0728 (fax)
E-mail:        loizides@loizides.com

-- and --

Daniel A. Speights (SC Fed. ID No. 4252)
Marion C. Fairey, Jr. (SC Fed. ID No. 6101)
SPEIGHTS & RUNYAN
200 Jackson Avenue, East
P.O. Box 685
Hampton, SC 29924
Telephone:     (803) 943-4444
Facsimile:     (803) 943-4599

*Counsel for Anderson Memorial Hospital*