# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          .        Chapter 11
                                .
W.R. Grace & Co., et al.,       .
                                .
        Debtor(s).              .        Bankruptcy #01-01139 (JKF)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Wilmington, DE
November 14, 2005
11:30 a.m.

TRANSCRIPT OF OMNIBUS HEARING
BEFORE THE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For The Debtor(s):              Janet S. Baer, Esq.
                                Kirkland & Ellis, LLP
                                200 E. Randolph Drive
                                Chicago, IL 60601

                                Barbara H. Harding, Esq.
                                Kirkland & Ellis, LLP
                                655 Fifteenth Street, N.W.
                                Washington, DC 20005

                                Michelle H. Browdy, Esq.
                                Kirkland & Ellis, LLP
                                200 E. Randolph Drive
                                Chicago, IL 60601

                                Salvatore Bianca, Esq.
                                Kirkland & Ellis, LLP
                                200 E. Randolph Drive
                                Chicago, IL 60601

                                James O'Neill, Esq.
                                Pachulski, Stang, Ziehl,
                                Young, Jones & Weintraub
                                919 North Market Street
                                Wilmington, DE 19801

THE COURT:  Good morning.  Please be seated.
Everything working now?  Everything is working?  Okay.  This is
the matter of <u>W.R. Grace</u>, 01-1139.  The call-in list I have --

(Telephone interruption)

UNIDENTIFIED SPEAKER:  Good morning.

THE COURT:  Good morning.  Would you all please put
your mute buttons on.  It sounds like somebody's typing or
something in the background.  And I will read your names -- the
list of names I have for the record.  David Siegel, Paul
Norris, Elizabeth DeCristofaro, Edward Westbrook, Curtis Plaza,
Darrell Scott, Matthew Kramer, Robert Horkovich, Tiffany Cobb,
Jay Hughes, Christopher Candon, Mark Bartholomew, Sarah
Edwards, Michael Davis, Marti Murray, Michael Infalco, Scott
Beechert, Gerald George, John O'Connell, Steven Mandelsberg,
Mary Martin, Van Hooker, David Parsons, David Bernick, Lori
Sinanyan, Cara Santosuoss, S-A-N-T-O-S-U-O-S-S,  Jennifer
Scoliard, Andrew Craig, Roger Frankel, Monique Almy, Jonathan
Brownstein, Joseph Radecki.  Good morning.

MS. BAER:  Good morning, Your Honor, Janet Baer on
behalf of the Debtors.  Your Honor, agenda item #1 is the

Debtor's Motion to Approve the Settlement with Intercat.  The
parties are still negotiating that document and we ask that
that matter be continued to the December 19th hearing.

       THE COURT:  All right.

       MS. BAER:  Your Honor, agenda item #2 is the Debtors'
Application for the Authority to retain Bear Stearns.

       THE COURT:  May I interrupt you second?

       MS. BAER:  Sure.

       THE COURT:  The parties on the phone, please put your
mute buttons on.  I can still hear somebody.  I'm sorry, Ms.
Baer, go ahead.

       MS. BAER:  No problem.  Your Honor, the Debtor is
asking to retain Bear Stearns as a financial advisor for one
specific transaction and one transaction only.  They are a
potential bidder in purchasing a specialty chemicals business.
The business itself, Your Honor, would be a $60 million
purchase and that would come to Your Honor on a separate
motion.  All the Debtor is asking for today is to ask to retain
Bear Stearns to assist them in that transaction.  The Debtors
would like to use Bear Stearns because Bear Stearns knows the
seller.  They've had a relationship with the seller and know
the seller's business and that respect can be, and have in
fact, been very helpful in assisting the Debtors in this
transaction.

Again, we're not attempting to retain Bear Stearns for any other transaction other than this transaction. We do not believe Bear Stearns is a professional, Your Honor. We believe that under 363 you clearly could authorize the Debtor to expend the funds to retain Bear Stearns to assist in this transaction. In fact, Your Honor, we believe that it may not even be an out of the ordinary course transaction, it may be something the Debtors could just do. But we came here because we wanted everybody to know what we were doing. We came here, frankly, for a comfort order so that we knew that Bear Stearns could move forward, assist the Debtor and get paid for assisting the Debtor.

Under these circumstances, Your Honor, we do not believe the U.S. Trustee's motion really is an impediment. The U.S. Trustee filed a motion -- or, I'm sorry, a response indicating that if we are seeking to retain Bear Stearns as a professional under Section 327, they are not disinterested and can not be retained. The U.S. Trustee is taking the position that Bear Stearns has an actual conflict. The Bear Stearns trading desk, Your Honor, owns some unsecured debt and some equity in the company. They have established ethical walls which the Debtors and Bear Stearns believed were adequate and under case law could in fact permit this Court in its discretion to retain them as a 327 professional. However, Your Honor, we really

don't need to get there.  Bear Stearns is not a professional
under the First Merchants Acceptance Corporation Test.

THE COURT:  Well, then do you want to withdrawal the
motion?

MS. BAER:  What we'd like to do, Your Honor, is ask
for the authority under Section 363 to retain Bear Stearns,
rather than under 327, and ask Your Honor for permission to go
forward and obtain a comfort order under Section 363 retaining
Bear Stearns.

THE COURT:  But even under 363, that would be because
you're essentially using Bear Stearns as, not necessarily a
broker, but an agent --

MS. BAER:  As a --

THE COURT:  -- to negotiate the transaction?

MS. BAER:  They're actually a -- they are an
investment banking firm.  It's essentially like an agent and
they are assisting by reviewing the due diligence with the
Debtors and assisting in understanding the business.

THE COURT:  Okay.  Number one, this motion was not
filed in time to get on to this agenda, so I -- and I have no
Motion to Shorten, and I believe my staff contacted somebody to
advise about that.  Number two, to the extent that it's a --
probably something that needs to be addressed, I would have
granted the Motion to Shorten, so I will permit it to go

13

forward, but nonetheless, that's what my staff tells me.  So
please, I want to get things back to the point where they are
filed on schedule to be heard for hearings.

MS. BAER:  Your Honor, I believe local counsel can
address this because it was submitted on time.

THE COURT:  That's -- it's okay.

MR. O'NEILL:  It was filed timely, Your Honor, and we
did talk with your Chambers about the timely filing.  So --

THE COURT:  It was filed on time?

MR. O'NEILL:  It was filed timely.  On the preliminary
agenda the date of the filing was wrong.  It was fixed for the
final agenda.

THE COURT:  All right.

MR. O'NEILL:  But the motion was filed timely.

THE COURT:  Okay, thank you.

MS. BAER:  Your Honor, we understand and we truly
tried to adhere to the letter and the spirit of that order.

THE COURT:  I know and frankly, this case doesn't
usually have those problems, which is why I didn't interrupt
you at the beginning when I thought it was still a problem, but
thank you for the correction.  Okay, on behalf of the U.S.
Trustee?

(Telephone interruption)

THE COURT:  People on the phone, please, if you don't

14

put your mute buttons on, I'm going to disconnect the call.
Please, I don't want to hear the paper clicks and the typing.
Please put your mute buttons on.  Good morning.

MR. KLAUDER:  Good morning, Your Honor, David Klauder
for the United States Trustee's Office.  I guess I have to ask
Your Honor for some guidance.  What's before Your Honor is a
327 Application.

THE COURT:  Yes.

MR. KLAUDER:  Bear Stearns to be retained as a
professional.  I think our argument is quite clear there that
they are a Creditor and therefore, under Price Waterhouse, they
cannot be retained under 327.  It now sounds like -- and I've
spoken to the Debtors, we had some discussions about this
before, but they're doing a 180 here and saying, "No, they're
not a professional.  Can we do it under 363?"  Our position
would be, yes, they are a professional under the First
Merchants Test.  Now, if Your Honor wants to get through that -
- go through that analysis now, I'm happy to do so, but that
really is not before Your Honor at this juncture.

THE COURT:  Well, I guess they've made an oral motion
and the Court can hear oral motions, provided that appropriate
Parties-In-Interest are notified.  And I could state for the
record that this a large Courtroom that is at least b full, and
although I didn't take entries of appearance of those of you in

the Courtroom, we could do it for purposes of this record, but all, from my visual observation, constituent parties who have been taking an active role in this case are represented by counsel in the Courtroom.  So I think we could go forward on that basis if you want to address the 363 issue.

MR. KLAUDER:  That's fine, Your Honor, and it comes down to is Bear Stearns a professional, which would be -- which would implicate the First Merchants Test that is widely used in this District.  I would say first, Your Honor, it's the U.S. Trustee's position dealing with a professional that -- and I take this from Bankruptcy Judge Fox's opinion in <u>Metropolitan</u> <u>Hospital</u>, which is at 119 BR 910, that a professional is anyone who assists the Debtor in operating the business in a prudent and competent fashion, i.e. assist the Debtor-in-Possession in its duties under the Bankruptcy Code and that that particular entity needs to be retained.

Getting to the First Merchants Analysis, there are six factors, and going through those, the number one factor is whether the entity controls, manages, administers, invests, purchases or sells assets significant to the Debtor's reorganization.  I guess from our perspective, this transaction -- which we don't know much about, we know it's a potential purchase of the asset.  It has to be significant to the Debtor's business.  Why would the Debtor be entering into the

transaction?  Then we would argue ultimately that would be
significant to the Debtor's reorganization.  And Bear Stearns
is involved in helping the Debtor consummate the transaction,
therefore, it would be our position that they are a
professional, when looking at it, under that circumstance; that
these are assets significant to the Debtor's reorganization and
Bear is intimately involved in helping facilitate that
transaction.

The second factor is whether the entity is involved in
negotiating the Plan terms.  I don't think we can argue that
they are, where there's been nothing brought in front of us
that they are gonna be involved in the Plan.  But again, I
would go back to the first -- the analysis under the first
part.  These are significant assets and Bear is gonna be
intimately involved in consummating that transaction.

The third factor is whether the employment is directly
related to the type of work carried out by the Debtor or the
routine maintenance of the Debtor's operations.  Again, we
don't know much about the transaction, but I'm not so sure that
we can consider this a routine transaction in the Debtor's
business.  It's a purchase of a competing business.  I'm not so
-- the Debtor is not involved in the routine aspects of its
business, in purchasing businesses.  It obviously has some
significance.  The Debtor wants to move forward with it, so I

would -- we would argue it's not a routine matter.  It's not
the ordinary operations of the business.

The fourth factor is whether the entity is given
discretion or autonomy to exercise their professional judgment.
I think clearly Bear is gonna have that here.  They are being
hired for that reason.  Their professional judgment is key here
and I think that clearly has been satisfied.

The extent of the -- the fifth factor is the extent of the
entities involvement in the administration of the Debtor's
estate.  No, they are not the estate's financial advisor, I
think that's clear.  But again, they are providing much needed
skill and expertise on a significant transaction to the
Debtor's business and, ultimately, the Debtor's reorganization.

THE COURT:  Okay, is the fact that there is apparently
an ethical wall set up between the trading desk and whatever
arm of Bear Stearns would be assisting the Debtor and looking
at both the financial and other business aspects of this
transaction and how it would fit with the Debtor's business to
engage it a sufficient way around the 363 issue?

MR. KLAUDER:  Well, I don't think so.  I don't think
that gets into the professional analysis, Your Honor.  That
would be a factor under 327, and we considered that, but under
Price Waterhouse, I don't -- that doesn't matter.  The entity
is a Creditor, the entity is an equity holder.  That doesn't

18

matter about ethical walls.  They are not disinterested,
therefore, they cannot be retained under 327.  Under a 363
analysis, I don't -- or under professional -- whether it is a
professional analysis, I don't think that factors in at all.

THE COURT:  All right, so, the U.S. Trustee's position
is if you're a professional, you can't be retained under
anything other than 327?

MR. KLAUDER:  Correct.

THE COURT:  Okay.

MR. KLAUDER:  The final factor, Your Honor, the sixth
and final factor is when a -- whether the entity services
involves some degree of special knowledge or skill such that
the entity can be considered a professional within the ordinary
meaning of the term.  This is kind of the "if it looks and acts
like a professional, it must be a professional."  At least
that's the way I would put it in front of Your Honor.  Bear
Stearns certainly puts themself out in the market as a
professional.  I think under the ordinary meaning of the term,
Bear Stearns is a professional, as it were, so I think that
that factor has been satisfied as well.

So with all that, Your Honor, I think Bear Stearns -- it's
-- I understand it's one transaction, but the -- you kind of
have to go through this analysis.  It's a significant
transaction.  You can't get around 327 here.  They're trying to

get away from it and go a different route, and I don't think
the Code or the law provides that.  Unfortunately, they are a
Creditor, they are an equity holder and they're not allowed to
be retained.  So you can't just kind of shoehorn it a different
way here.  And therefore, from our perspective, they cannot be
involved in the transaction.

        THE COURT:  All right.

        MR. KLAUDER:  Thank you.

        THE COURT:  Thank you.  Yes, sir, good morning.

        MR. WEISS:  Good morning, Your Honor, John Weiss of
Latham & Watkins on behalf of Bear Stearns.  I just wanted to
point out a few facts that I think are relevant here, and also
frankly, to correct the record as well.  We have engaged the
U.S. Trustee in discussions for some time and very much
appreciate the Trustee's speaking with us about this, and the
Trustee was aware of the fact that we were going to talk to
Your Honor about 363 today.

    I think it's important to point out that the transaction
that we're dealing with here is not the sale transaction -- or
the -- rather, the purchase transaction.  It's not the purchase
of the specialty chemical business.  What we're dealing with
here is a letter of understanding between Bear Stearns and the
Debtors that involves a nominal fee, really a de minimis fee in
the context of these cases.  In fact, the fee was originally

20

listed as $1.25 million.  That fee actually would be reduced to

$1 million in agreement with the Official Committee of

Unsecured Creditors in this case.  So this is a $1 million

issue, Your Honor, to be considered here.

Bear Stearns has been working with the Debtors with

respect to this transaction for some time.  And when you look

at this I think that you do -- were correct to focus on the

First Merchants Factors, and I would actually focus on certain

factors that the U.S. Trustee pointed out to reflect the fact

that Bear Stearns actually is not a professional under the

First Merchants Factors.  And really, particularly, the issue

here is that when you're looking at this transaction, a $1

million retention agreement, more or less, it's a de minimus

transaction and it really is wholly unrelated to what happens

ultimately in these cases with respect to a Plan of

Reorganization.  This isn't a situation where Bear Stearns is

to provide services that are intimately related to the

administration of the estates.  It's not a situation where Bear

Stearns is dealing even with an ultimate transaction that will

have any bearing on whether this estate is able to effectively

reorganize or not.  This is a situation where Bear Stearns is

assisting the Debtors and taking advantage of a very good

business opportunity.  And it's really as simple as that, and

that's why we come to Your Honor under 363.

Now, whether Your Honor determines that this is a -- that
Bear Stearns is a professional or not a professional, in fact,
there actually is authority for Your Honor having discretion
under 363 to allow the retention of Bear Stearns, very recent
authority out of the Southern District of New York in the Enron
case.  The District Court actually allowed the retention of a
special counsel and essentially makes the statement to the
effect that {quote}, "The authorization of certain types of
payments under 363(b) is not prohibited simply because there is
another section to the Bankruptcy Code related to the same type
of payment."  And that -- there the Court was talking about
327(e).  So there is discretion here for Your Honor to
authorize this under 363, and we would ask that Your Honor do
so to enable us to go forward.

THE COURT:  Well, the special counsel provisions were
somewhat different.  I don't -- I mean, I -- I'm not familiar
with that aspect of the Enron case.  I don't know why the Court
would go to 363(b) when you've got 327(e).  I mean --

MR. WEISS:  Well, there was a question as to the basis
for retention because of the nature of the services to be
provided, Your Honor.

THE COURT:  Well, I -- okay, I don't know how that
fits into this analysis because if it's a special counsel issue
and you meet 327(e), I don't even think you need to take on the

proposition of 363(b). But I -- but Bear Stearns is not being asked to provide legal advice, correct?

MR. WEISS: Correct.

THE COURT: You're being asked to provide financial advice of some sort in terms of, as I understand it, figuring out whether this aspect -- this sale would be a good, I'll use the word fit, for the Debtor's business?

MR. WEISS: Correct, Your Honor. I -- you know, I think that when you look at the transaction at hand here and you apply sort of the vertical and horizontal tests that are controlling in this Circuit with respect to whether this is just purely an ordinary course of business transaction, I think that you come down and you get to where we need to get here, which is that this is an ordinary course of business transaction. I mean, industries of this size or companies of this size and Bear Stearns engage in these types of engagements all the time.

THE COURT: Well, if that's the case, then I don't need to do an order.

MR. WEISS: True, Your Honor, except --

THE COURT: In fact, I probably can't do an order.

MR. WEISS: Except that the United States Trustee has questioned whether, in fact, this is an ordinary course of business transaction. So in light of that questioning, Bear

Stearns can't go forward with providing services not knowing the --

        THE COURT:   Well, look --

        MR. WEISS:   -- ultimate result.

        THE COURT:   -- it doesn't seem like an ordinary course of business transaction.   I appreciate the fact that businesses do from time to time merge or purchase other businesses and so forth, but Grace is not in the business of purchasing other businesses for some purpose.   And so although this may be an expansion or -- I'll use that word in a loose sense -- of Grace's business, I don't know that that makes it in the ordinary course.   It's a pretty significant transaction and -- but what would be in the ordinary course is that the Debtor, in connection with carrying out this transaction, does have to do due diligence and hire somebody to assist it in the course of doing that due diligence, and that, I would say, is in the ordinary course of investigating this transaction.   So I appreciate the fact that the Debtor needs the assistance.   The issue is whether Bear is conflicted out by virtue of being a stock holder in the Debtor.

        MR. WEISS:   Well, and I think Your Honor points to the exact distinction that we stress here, which is the distinction between the two -- you know, the two transactions; in other words, the engagement transaction versus the purchase

transaction.  We would say that Your Honor can authorize Bear
Stearns to go forward and can authorize payment to Bear Stearns
because it's not -- this wouldn't be a situation where we're
dealing with 327 and disinterestedness.

THE COURT:  But ultimately, isn't what Bear is being
asked to do for the Debtor is give the Debtor the financial
information that's going to let the Debtor's Board decide
whether or not to enter into this transaction?  So, I mean, I
don't know how you can say you're not involved ultimately in
the transaction.  Isn't that the purpose by which you're being
asked to give financial information?

MR. WEISS:  That is the purchase -- that is the
purpose for the types of services that Bear is to provide, but
the test that you should be -- the transaction that you should
be applying the ordinary course of business test to is the
contract at hand.  There's no telling whether there will
ultimately be a purchase in this instance, Your Honor.  Bear
Stearns may not get paid at all.  It's essentially a question
of can Bear Stearns get the comfort to go forward over the
coming months, knowing that they'll be essentially reimbursed
for their expenses and paid for their services that -- many of
which have already been provided.

THE COURT:  Well, the Debtor is not going to be happy
with this comment, but I'll ask it anyway.  If there is some

negotiation that considers Bear to be paid for whatever
services that are provided not keyed on the success of this
deal going forward, does that eliminate the U.S. Trustee's
objection?  Is part of the problem in considering Bear to be a
professional in this instance that fact that your compensation
depends on the outcome of the deal, because you're acting in
the nature of, not quite a broker, an agent.  I don't know what
else -- what other word to use.

          MR. WEISS:  I'm not sure I understand exactly the
question.

          THE COURT:  You said ultimately you may not get paid.

          MR. WEISS:  That's true.  In other words, it's sort of
a completion fee-type situation.

          THE COURT:  Right, which is what I'm asking, whether
that's the problem that the U.S. Trustee has, that your
compensation depends on the completion of the deal as opposed
to the fact that the Debtor is retaining you to give it some
financial advice about the transaction?

          MR. WEISS:  I wouldn't want to speak for the United
States Trustee.  That's not a distinction that I've had --
personally had discussions with the United States Trustee that
that's the specific item of concern there.

          THE COURT:  Well, does it eliminate it if the deal is
re-done at -- you know, I -- maybe it can be even a less

expensive fee.  If you know you're going to get paid, there's
no contingency aspect to it.  Does that eliminate it and make
it more ordinary course, where the Debtor is simply hiring
somebody to analyze a transaction and give it financial advice?

MR. WEISS:  Speaking personally, Your Honor, I don't
think --

THE COURT:  No?

MR. WEISS:  -- that it would change anything because
the ordinary course of business with these types of
arrangements is, in fact, to get paid upon completion.

THE COURT:  Completion?

MR. WEISS:  Yes.

THE COURT:  Okay.

MR. WEISS:  That's been my personal experience, at
least, in dealing with these, Your Honor.

THE COURT:  All right, thank you.  Ms. Baer?

MS. BAER:  Your Honor, just a couple final points.
The status of the transaction, Your Honor, is that there was an
auction proceeding that Bear Stearns assisted the Debtor in in
putting together their bid.  The bid's been made.  It's down to
two potential purchasers.  A letter of intent is due this week,
and then there'll be some more due diligence.  That's all Bear
Stearns is being asked to do is look over the letter of intent,
assist with the due diligence.  In that respect, Your Honor, it

is really ordinary course of business for the Debtor to hire
consultants to help them with various transactions.  It's a
dynamic company that buys and sells businesses.  It's a dynamic
company that does different kinds of transactions all the time,
in spite of the fact that we're in Chapter 11.  But we came
here, Your Honor, because we are, in fact, going to be paying
Bear Stearns a million dollars if this transaction is
completed.  We believe that that is an expenditure of funds
that was something we should bring to the attention of the
Court.  But under 363, Your Honor, you have the authority to
let us spend that money outside the ordinary course when, in
fact, it makes good business judgment.  Here, it does make good
business judgment.  They will assist us in a potential
transaction that can further the Debtor's business.  They're
not a professional.  There's no discretion involved here
whatsoever.  This potential merger or this potential sale is
not key to the Debtor's reorganization.  The Debtor's
reorganization will go forward whether or not it happens.  We
hope that it will help to the value of the business and the
value of the business helps everybody.  But it is truly just a
transaction in the Debtor's business versus -- and I mean the
retention of Bear Stearns is just a transaction in the Debtor's
business, the kinds of things they do.  It's different from the
merger.

(Telephone interruption)

THE COURT:  People on the phone, say your names.

MR. HORKOVICH:  Robert Horkovich.

THE COURT:  Don't --

MS. ALMY:  Monique Almy.

THE COURT:  Folks, please, don't put your mute buttons -- don't -- put your mute buttons on, please, all of you and then say your names.

ALL:  (No verbal response).

THE COURT:  There is someone who still has not put a mute button on.  Are you using Court Call?  You're not using Court Call?

MS. BAER:  Yes, we're using Court Call.

THE COURT:  You are?  Okay, can the Court Call operator -- whoever it is --

OPERATOR:  I can mute all of their lines.  I just don't know when somebody needs to speak, you know -- who to open up lines.

THE COURT:  Well, can you detect who it is who's not putting the mute button on because we're still getting feedback here and that --

OPERATOR:  I just now did, yes.

THE COURT:  Okay, then disconnect that person, please.

OPERATOR:  Okay.

THE COURT:  Thank you.  Okay, Ms. Baer.

MS. BAER:  Your Honor, in conclusion, the Debtor is trying to be practical here and move forward.  All we're asking for is the authority to pay Bear Stearns a fee if a transaction is ultimately consummated.  All we're asking for is the authority to go forward and retain Bear Stearns to assist it in this potential transaction.

THE COURT:  But that's -- I mean, that's begging the question, truly.  I -- that's why you always hire a professional, to get advice.  What you're telling me is it's in the Debtor's best -- ordinary course of business to get advice, and that's probably true, but that doesn't stop the fact that what you're looking for is professional advice.

MS. BAER:  Well, Your Honor, again, it's what is a professional under the Bankruptcy Code?  A professional are the lawyers in this room who are involved in the bankruptcy in the Chapter 11 case and assisting the Debtors there.  That's not what Bear Stearns is doing.  We have Blackstone.  They're our financial consultant.  Bear Stearns is simply a consultant being asked to lend help to the Debtor in one aspect of its business, which is the aspect involved in buying and selling businesses, expanding its business lines and the like.  It is not a professional that has, frankly, anything to do with this Chapter 11 case, other than the fact that we happen to be in

the Debtor's bid.  Our concern, frankly, Your Honor, is if

Bears drops out now and we complete this transaction on our own

or with Blackstone or anything else, that will be a negative

impact on the buy -- on the seller.  And the seller is now

trying to determine which bid to go forward with.  And Bear's

being present in this transaction is assisting the Debtor in

having its bid looked at and taken very seriously by the

purchaser -- I'm sorry, by the seller.

THE COURT:  Well, okay, that's kind of a cart before

the horse analysis too because Bear got involved before this

whole transaction went forward, and that's what I see as the

problem.  You know, it's sort of that you create the problem

and therefore -- or create the circumstance that leads to the

problem and then say, "Okay, the only solution is to accept the

fact that we created a problem because if we try to get out of

it, there's going to be an even bigger one."  And I'm not sure

that's what the purpose of Section 363 is either.  Having said

that, in this instance, I'm going to permit the Debtor to

expend the funds.  It appears to me that with no one -- no

Party-In-Interest who has an economic stake in this transaction

objecting that it is an appropriate use.  However, the next

time the Debtor expects to do this, come here before you retain

someone because I'm not going to approve it again with

hindsight, as opposed to foresight.

MS. BAER:   Thank you, Your Honor.  We will submit an order to the Court on a Certification of Counsel that will outline the transaction and the fee reduction that was negotiated with the Unsecured Creditors Committee.

THE COURT:   All right, thank you.

MS. BAER:   Thank you.

MR. PASQUALE:   Just on that point, Your Honor, Ken Pasquale from Stroock for the Creditors Committee.  The reduction was already mentioned.  The other item that was agreed to was that for what's called the adjusted fee in the relationship -- in the transaction, that Bear Stearns will return to the Court for approval of any adjusted fee that might be sought on notice to all parties so that we have a chance --

THE COURT:   Other than the million dollars, you mean?

MR. PASQUALE:   I'm sorry?

THE COURT:   Other than the million dollars --

MR. PASQUALE:   Yes, except that --

THE COURT:   -- that you're agreeing to?

MR. PASQUALE:   That's right, it's an alternative.

THE COURT:   Okay, let me --

MR. PASQUALE:   Thank you.

THE COURT:   Let me assure Bear Stearns that unless some really good deal happens and some -- whatever, probably you're looking at a million dollar fee under these

circumstances.

MR. WEISS:  Actually, Your Honor, I believe the
mechanism is actually designed to deal with, generally, fees
that would be less than a million dollars.

THE COURT:  Okay.

MR. WEISS:  And we could return to the Court in the
event that that negotiation had to occur for a lesser fee
amount.

THE COURT:  Well, sure, you know, I think those
issues, if you're going to agree on lesser fee amounts,
probably will come here by stipulation.  If you have to -- you
know, if you -- if there's a fight, obviously you can always
come to Court.

MR. WEISS:  Right, thank you --

THE COURT:  Okay.

MR. WEISS:  -- Your Honor.  If I may be excused?

THE COURT:  Yes, sir, thank you.

MR. WEISS:  Thank you.

MS. BAER:  Your Honor, that takes us to agenda item
#3, which is the Debtor's Motion to Approve a Stipulation with
the Bank of American with respect to their claim.  No
objections were filed to that, Your Honor.  We did have a
couple of minor adjustments to the stipulation and submitted it
on Certification of Counsel on Friday.  The two adjustments