UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          . Case No. 01-1139
                                .
  W. R. GRACE,                  .
                                . 5414 USX Tower Building
                    Debtor      . Pittsburgh, PA 15222
                                . January 26, 2006
. . . . . . . . . . . . . . . . . 9:15 a.m.


TRANSCRIPT OF HEARING ON DEBTORS' FIFTEENTH OMNIBUS OBJECTION
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:            Kirkland & Ellis LLP
                           By:  MICHAEL T. DIERKES, ESQ.
                                SALVATORE BIANCA, ES.
                                MICHELLE H. BROWDY, ESQ.
                           200 East Randolph Drive
                           Chicago, IL 60601

                           W. R. Grace Legal Department
                           By:  RICHARD C. FINKE, ESQ.
                           7500 Grace Drive
                           Columbia, MADE 21066

For the FAI Claimants:     The Scott Law Group
                           By:  DARRELL SCOTT, ESQ.
                           2712 Middleburg Dr.
                           P. O. Box 2665
                           Columbia, SC 29206

Audio Operator:            Janet Kozloski

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-Mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**

2

APPEARANCES CONTINUED:

For the PD Committee:          Bilzin Sumberg Baena Price &
                                   Axelrod, LLP
                               By:  SCOTT L. BAENA, ESQ.
                                    MATTHEW I. KRAMER, ESQ.
                               200 S. Biscayne Blvd., Sta. 2500
                               Miami, FL 33131


For the S&R Claimants:         Speights & Runyon
                               By:  DANIEL A. SPEIGHTS, ESQ.
                               200 Jackson Ave., E.
                               P. O. Box 685
                               Hampton, SC 29924


TELEPHONICALLY:

                               White & Williams LLP
                               By:  MARC S. CASARINO, ESQ.
                               824 North Market St., Ste. 902
                               Wilmington, DE 19801


For the Official Committee     Stroock & Stroock & Lavan, LLP
of Unsecured Creditors:        By:  RYAN PAPIR, ESQ.
                               180 Maiden Lane
                               New York, NY  10038


For Off Date Insurance Co.:    Cuyler Burk, LLP
                               By:  ANDREW CRAIG, ESQ.
                               Parsippany Corporate Center
                               Four Century Drive
                               Parsippany, NJ  07054


For PD Claimants               Bilzin Sumberg Baena Price &
Committee:                         Axelrod LLP
                               By:  JAY SAKALO, ESQ.
                               200 S. Biscayne Blvd., Suite 2500
                               Miami, FL  33131


Official Committee of          Ferry, Joseph & Pearce, P.A.
Asbestos PD Claimants:         By:  THEODORE TACCONELLI, ESQ.
                               824 Market Street, Suite 904
                               P.O. Box 1351
                               Wilmington, DE  19899


For The Blackstone Group:      The Blackstone Group
                               By:  JOHN O'CONNELL

TELEPHONIC APPEARANCES CONTINUED:

For David Austern:                Phillips, Goldman & Spence, P.A.
                                  By:  JOHN PHILLIPS, JR. ESQ.
                                  1200 N. Broom Street
                                  Wilmington, DE  19806


For USG Corporation:              USG Corporation
                                  By:  MARY MARTIN, ESQ.

Also:                             RICHARD PARK, ESQ.

For DK Acquisition               Willkie Farr & Gallagher
Partners:                         By:  STEPHEN VOGEL, ESQ.
                                  787 Seventh Avenue
                                  New York, NY  10019


For Official Committee            Duane Morris, LLP
of Unsecured Creditors:           By:  MICHAEL LASTOWSKI, ESQ.
                                  1100 North Market St., Suite 1200
                                  Wilmington, DE  19801


For Continental Casualty          Ford Marrin Esposito Witmeyer
Company:                            & Gleser, LLP
                                  By:  ALEXANDER HENLIN, ESQ.
                                  Wall Street Plaza
                                  New York, NY  10005


For the Debtor:                   Kirkland & Ellis LLP
                                  By: JANET BAER, ESQ.
                                  200 East Randolph Drive
                                  Chicago, IL 60601


Unofficial Committee of           Montgomery, McCraken, Walker
Select Asbestos Claimants:          & Rhoads, LLP
                                  By:  NATALIE D. RAMSEY, ESQ.
                                  123 South Broad Street
                                  Philadelphia, PA  19109


For Everest Reinsurance           Marks, O'Neill, O'Brien &
Co. & McKinley Ins. Co.:            Courtney, P.C.
                                  By:  BRIAN KASPRZAK, ESQ.
                                  913 North Market St., Suite 800
                                  Wilmington, DE  19801


                                  Crowell & Moring, LLP
                                  By:  LESLIE EPLEY, ESQ.
                                  1001 Pennsylvania Ave., N.W.
                                  Washington, DC 20004

4

TELEPHONIC APPEARANCES CONTINUED:

Pacific Freeholds                    The Brandi Law Firm
Partnership:                         By:  TERENCE EDWARDS, ESQ.
                                     44 Montgomery Street, Suite 1050
                                     San Francisco, CA  94104

Roman Catholic Church                Dies, Henderson & Carona
Archdiocese of New Orleans:          By:  MARTIN DIES, ESQ.
                                     1009 Green Avenue
                                     Orange, TX  77630

Also:                                CHRISTINA KANG, ESQ.

For Fireman's Fund                   Stevens & Lee, P.C.
Insurance Company:                   By:  THOMAS WHALEN, ESQ.
                                     1107 North Market St., 7th Floor
                                     Wilmington, DE  19801

1          THE COURT:  Okay.  We're back on the record from a

2    continuation of yesterday and the day before's proceedings in

3    W. R. Grace, bankruptcy number 01-1139.  The parties I have

4    listed participating by phone are Mark Casarino, Ryan Papir,

5    Andrew Craig, Jay Sakalo, Theodore Tacconelli, John O'Connell,

6    John Phillips, Mary Martin, Richard Park, Steven Vogel, Michael

7    Lastowski, Alexander Henlin, Janet Bayer, Natalie Ramsey, Brian

8    Kasprzak, Leslie Epley, Terence Edwards, Martin Dies, Christina

9    Kang and Thomas Whalen.  I'll take entries of those of you in

10   Court, please.

11          MS. BROWDY:  Good morning, Your Honor.  Michelle

12   Browdy for the debtors.

13          MR. BIANCA:  Good morning, Your Honor.  Salvatore

14   Bianca for the debtors.

15          MR. DIERKES:  Good morning, Your Honor.  Michael

16   Dierkes for the debtors.

17          MR. SPEIGHTS:  Oh, I'm sorry, Your Honor.  Dan

18   Speights for S&R Claimants.

19          MR. BAENA:  Good morning, Your Honor.  Scott Baena,

20   Matt Kramer on behalf of the PD Committee.

21          THE COURT:  Ms. Browdy.  Ms. Browdy, I need to make

22   sure that we're on the same wave length about something.  You

23   know that we have to terminate at 2:00 today because I teach.

24          MS. BROWDY:  I hope we're done far before 2:00 today.

25          THE COURT:  Okay.  Because yesterday you said

1 something about all afternoon and until I went home last night

2 for some reason that hadn't hit me and I needed to make sure

3 that we were on the same page.  Okay.

4 　　　　MS. BROWDY:  No, I appreciate that, Your Honor.  My

5 guess based on the last two days is that we may be done by 11

6 or so.  But it's just an estimate.

7 　　　　THE COURT:  All right.

8 　　　　MS. BROWDY:  We are finally at the last day of our

9 three-day property damage festival here.  The first issue I

10 want to address is just to give you a brief update on this

11 claims processing problem that we stumbled into yesterday.

12 We've done some preliminary investigation and we think we've

13 identified the issue.  We knew that when a claim goes in and

14 then a supplement is made, the supplement has been getting a

15 new claim number.  And we chased that down and when our

16 objections were made to those California claims, for example,

17 if you look at both the initial and the supplemental neither of

18 those have the information.  What we didn't realize is if you

19 continue to make supplements, they continue to have additional

20 numbers.

21 　　　　So that tells us a couple of things.  One thing is we

22 actually have fewer claims than we thought we did because if we

23 have 20 California claims that have been supplemented twice,

24 those may be in our files as reflecting as many as 60 claims.

25 So one thing we need to do is go back retrospectively and fix

1  that, find where the duplicates are or the amendments and

2  collapse them down so, for example, if there's three claims

3  numbers given to a single property, we want to collapse those

4  down, get rid of two of the claims and have it all under one

5  and hopefully we can come up with a mechanism and do this by

6  agreement of counsel and get that in place.  Otherwise we may

7  need to come back to the Court.  But my expectation is it's

8  going to be a mechanical task.

9        And then the second thing we're going to need to do

10  obviously is to work with the claims processing agent to make

11  sure they're prepared to deal with this issue going forward.

12  But I think that explains what we had stumbled into yesterday.

13        THE COURT:  All right.

14        MS. BROWDY:  In terms of our agenda for today, Your

15  Honor, I'm just going to hand up a little chart for the Court.

16                        (Pause)

17        MS. BROWDY:  What we thought we would do, Your Honor,

18  is first just clean up a couple items from yesterday that we

19  continued over to today and then again that should go pretty

20  quickly we expect, and then we'd go into the class

21  certification.

22        THE COURT:  All right.

23        MS. BROWDY:  The first issue up would be the

24  unauthorized claims.  You may recall we initially objected to

25  38 claims for which we said that there was no authority.

1  Fifteen of those were withdrawn.  We still have a dispute with

2  the Speights firm as to 20 of those and my colleague, Mr.

3  Dierkes is going to be address those.  We apparently attempted

4  to meet and confer with Mr. Speights on these unsuccessfully.

5  So the parties still don't agree whether or not there's been

6  authorization shown.

7           THE COURT:  All right.  All right.

8           MR. DIERKES:  Good morning, Your Honor.  Michael

9  Dierkes on behalf of debtors.  As Ms. Browdy has stated, I'm

10 going to be addressing the 20 remaining Speights and Runyon

11 claims for which we believe the firm didn't have authority to

12 file them.  But this -- this started -- this process started

13 last summer back in July when we originally filed our motion

14 for leave to file our 13th omnibus objection.  Our objections

15 are set out in detail in the 13th omnibus which is docket

16 number 93-11.

17          THE COURT:  We covered this yesterday.  Tell me what

18 the issue is today.

19          MR. DIERKES:  Right.  Well the specific issue is we

20 still have 20 claims where we contend that there's no

21 authority.  Mr. Speights contends there is authority.  There is

22 a court order entered back on September 23rd of 2005 which

23 required Mr. Speights to identify the claims for which he

24 believes he has authority and proof that he has authority and

25 it's four months later and he still hasn't given us that proof.

1          THE COURT:  All right.  What are you looking for that

2   he hasn't produced?

3          MR. DIERKES:  We're looking for solid evidence that

4   he was actually authorized to file these specific claims.  He

5   hasn't given that to us.

6          THE COURT:  All right.  What does solid evidence

7   mean?

8          MR. DIERKES:  Something signed by the claimant that

9   says that they authorize Mr. Speights to file the claim and

10  when they authorized him to file the claim.

11         THE COURT:  All right.  Mr. Speights?

12         MR. SPEIGHTS:  Maybe the short answer would be we

13  could agree on a two-sentence form and I could send it to these

14  remaining ones and get it signed and maybe that's -- if that

15  would expedite it and that would be agreeable I'll do it.  But

16  I have an explanation.  And let me just give you one example.

17  It's the first one on their list.  It may not be the best, but

18  it's certainly not the worst example of what we have here.  The

19  first one is the Hyatt in San Francisco.  I personally can talk

20  about it because I personally dealt with the Hyatts before the

21  bar date and I dealt with a lawyer representing the Hyatts in-

22  house named Stephanie Fields I believe in the great city of

23  Chicago.  And I have a series of e-mails with Ms. Fields saying

24  do you have this, do you have that signed, give us this

25  information, I need that information, all of which are

1   attorney-client privilege.  Clearly I had authority from Ms.

2   Fields.  She told me I had authority.  I know I had authority.

3   There was not a contract signed, retainer agreement signed for

4   Grace at that time before the bar date, but I was operating

5   with her express authority, express permission and with a lot

6   of exchange of information and I'd be happy to share these e-

7   mails with the Court if I don't waive attorney-client

8   privilege.  It can be done in-camera.

9           THE COURT:  Do you want me -- a retainer agreement?

10          MR. SPEIGHTS:  No, Your Honor.  I don't believe so.

11  I mean that's --

12          THE COURT:  There's nothing under state law that says

13  that you have to have a retainer agreement.

14          MR. SPEIGHTS:  I don't believe so.  However I tell

15  you that, for example, I've represented the Hampton Schools, my

16  hometown is 3,000 people, for years without a retainer

17  agreement.  It's certainly customary.  And in fairness, may I

18  say a couple of things about these e-mails without their being

19  deemed a waiver of the privilege?

20          THE COURT:  Yes, I guess, so that I can understand

21  what the issue is.  I mean it seems to me that maybe I'm just

22  unfamiliar with a state court practice that doesn't require a

23  written retainer agreement.  But I don't know how you represent

24  somebody without a written retainer agreement.

25          MR. SPEIGHTS:  I can explain that if I can refer to

1  the e-mails without waiving the privilege.

2         MS. BROWDY:  Actually, Your Honor, I have no problem

3  with that at this point, but let me -- if we're going to talk

4  about privilege, we've asserted he didn't have authority to

5  file the claims.  He gave us information that doesn't assert --

6  the data he gave us doesn't show that he had authority to file

7  the claims.  He's now saying I have it in confidential

8  attorney-client communications.  You can not use privilege as a

9  sword and a shield saying I had authority from these clients

10 but I'm not going to disclose to you how I got it.  So if he

11 puts at issue these attorney-client communications, he has to

12 waive privilege because -- and I have a line of cases.  It

13 didn't occur to me to bring them here today.

14        THE COURT:  Well I understand that line of cases.  It

15 seems to me, however, the issue is this.  If you have the

16 authority and the only issue is the ministerial act of getting

17 somebody to put it in writing, then I'm going to give him time

18 to do it, although I don't know why, Mr. Speights, we're here

19 today without your having done that.  I really don't understand

20 that.  You know what the objections are.  You know, this has

21 been going on for a long time and it seems to me that if the

22 authority's there, it's not that hard to call your client and

23 say look, I need you to sign a two sentence letter that says I

24 have the authority to do it.

25        MR. SPEIGHTS:  I appreciate that, Your Honor, and --

1                 MS. BROWDY:  And Your Honor, and both the authority

2    and when authority was given because of the issues raised

3    yesterday.

4                 THE COURT:  Well I understand.

5                 MR. SPEIGHTS:  And that's fine and I should -- I've

6    been doing this too long to say anything else now that I accept

7    the Court's ruling.  But I think we've gotten down to just a

8    few and we all have our bureaucracies.  I've been trying, but I

9    realize now with the voice of the Court saying it's now or

10   never to put this in writing what these e-mails reflect, I

11   think I'll get it done.

12                THE COURT:  Well it was now or never at the bar date.

13                MR. SPEIGHTS:  Well --

14                THE COURT:  So if there are any other cases coming up

15   in which there's a bar date, this latitude isn't going to

16   happen in those other cases.  Let me just explain that.  I

17   understand that, you know, there's a learning curve in dealing

18   with lawyers and judges back and forth.  But my learning curve

19   is if I put a date on record, I expect it to be honored unless

20   the parties come forward with evidence before that date and

21   tell me why they need an extension.  I'm pretty liberal about

22   extensions for the most part until it gets to a point where I

23   think it's abusive and then I'm not.  So it's just the way I'm

24   --

25                MR. SPEIGHTS:  Thank you.

1          THE COURT:  -- accustomed to practicing that way in

2  this District and the Western District of Pennsylvania.  That's

3  generally how people behave here.  That's the way I generally

4  behave.  But I don't expect to have something come up in Court

5  at the last minute when you've had two years to get it done and

6  I'm not going to be liberal about it in the future.

7          MR. SPEIGHTS:  Thank you, Your Honor.

8          THE COURT:  All right.  I'll give you two weeks to

9  get these documents signed and show when you got the authority,

10 who gave it to you and the method by which it was communicated.

11         MR. SPEIGHTS:  Thank you, Your Honor.

12         THE COURT:  What else do you need, Ms. Browdy?

13         MS. BROWDY:  I think that would do it on these 20

14 unauthorized claims.

15         THE COURT:  All right.

16         MS. BROWDY:  On the product I.D. --

17         THE COURT:  Wait.  I need to catch up with my notes.

18 Just a minute, please.

19                    (Pause)

20         THE COURT:  Okay, Ms. Browdy.  Thank you.

21         MS. BROWDY:  Thank you, Your Honor.  On the product

22 I.D. I believe we've resolved everything except for Coca-Cola

23 Enterprises.  The Court was going to tell us I think today

24 whether or not --

25         THE COURT:  Oh, and I forgot.  I'm so sorry.  I

1  totally forgot to look last night when I got home.

2          MS. BROWDY:  We understand the Court has a lot on

3  Your Honor's plate.  We are going to be before the Court again

4  Monday for the omnibus hearing.

5          THE COURT:  Okay.  Yes.  What I will do, if we have a

6  recess, I will make a phone call to my husband.  If I can get

7  him at work, then it shouldn't be an issue.  I ought to be able

8  to be able to tell you that today.  I just simply totally

9  forgot.  I'm so sorry.

10          MS. BROWDY:  No, that's fine, Your Honor.

11          THE COURT:  Okay.  So let's move to this -- on to

12  something else and I'll get back to this one later.

13                          (Pause)

14          MS. BROWDY:  The last item then that we have up this

15  morning, Your Honor, before moving to class certification is

16  the follow up on what Speights is going to be obligated to do

17  to get true responses from his clients as to their date of

18  knowledge.  You'll recall we dealt with that at some length

19  yesterday.  I've given out proposal to Mr. Speights.  I'll hand

20  up a copy to the Court.

21          THE COURT:  All right.

22          MS. BROWDY:  Again, all of the other claimants in

23  this bankruptcy by order of this Court after extensive briefing

24  and hearings on what ought to be in the proof of claim form,

25  everyone was responsible for answering questions 18 and 20

1  which reflected date of knowledge of presence of asbestos in

2  the property and specifically date of knowledge of Grace

3  product.  Mr. Speights put in false information for his

4  clients, indicated 2003, without ever asking the clients.  And

5  what we would now ask is that Mr. Speights be ordered to go

6  back to each of the clients for whom he still has a live claim,

7  then it's about 500 claims -- fewer clients because, for

8  example, California State may be, you know, 50 claims or so.

9        But for each claimant we need to know when the

10  claimant first learned of the presence of asbestos in the

11  property for which the claim is being asserted.  Second, when

12  did the claimant first learn that the property for which the

13  claim is being asserted contained a Grace asbestos containing

14  product.  And finally consistent with what the intention of the

15  claim form was, we want that statement signed under oath not by

16  Mr. Speights, but by a corporate representative that has

17  authority to bind the claim that he's making the claim.  Again,

18  we think it's fully consistent with what the claim form

19  required everyone else to do by March of 2003.  We can't do

20  anything with the 2003 date that Speights gave us.  We need

21  this information to go ahead with our objections process.

22        THE COURT:  Okay.  Well you're not asking for

23  anything other than what the claim form asks for.

24        MS. BROWDY:  Yes, Your Honor.

25        THE COURT:  Okay.  Mr. Speights.

1           MR. SPEIGHTS:  Your Honor, I thought we'd heard this

2    matter yesterday and you had ruled.  I didn't even bring the

3    file back with me today.  And I thought your ruling which I

4    completely understood was that Grace had a choice and they

5    wanted to think overnight, they either -- you would either

6    require me to send the claim form to my clients and make them

7    sign it, the appropriate person, or they could send an

8    interrogatory, one or the other.

9           THE COURT:  Right.

10          MR. SPEIGHTS:  And if that's the issue, then I don't

11   -- this is something a Court order, you directing me to do some

12   special questions, et cetera.  I think this is -- I think Ms.

13   Browdy had a choice of A or B and she came back with C.

14          THE COURT:  Well, no, I believe that this is the same

15   information that's already on the claim form.  It's stated

16   differently in this exhibit that she's handed up.  But I think

17   she handed up an exhibit a little earlier that is the claim

18   form that had questions 18 and 20 which asks for the dates when

19   the claimant knew about asbestos in the property first and then

20   asked about the date that they knew of Grace's product in the

21   property second.  And that's the same thing that this form is

22   asking for.

23          MR. SPEIGHTS:  Well, Your Honor, I respectfully

24   disagree although I will need first to admit that reasonable

25   people can disagree on the interpretation of the claim form

1  because I and other people have read the first question.  The

2  only one they've objected to is the answer to question 18 and I

3  don't have the file with me with the claim form in front of me.

4          THE COURT:  Could you put the claim form back up, Ms.

5  Browdy, please?

6          MS. BROWDY:  Certainly, Your Honor.

7          THE COURT:  Okay.  Question 18 is when did you first

8  know of the presence of asbestos in the property of the Grace

9  products --

10          MR. SPEIGHTS:  Yes.

11          THE COURT:  -- in which you are making this claim?

12  And then the second one is when did you first know that the

13  Grace product for which you are making this claim contained

14  asbestos?  So I think it should be when did you know of the

15  presence of asbestos in the property, yeah, of the Grace

16  product for which you are making the claim?  So the first

17  question is still asking about in the property of the Grace

18  product -- it's still asking for Grace -- the Grace product

19  date not just general knowledge of asbestos in the property.

20  And the second question, which is question 20, is when did you

21  know that that product had asbestos?  So the first one just

22  wants to know when did you know -- well they're asking the same

23  question.  They're both asking the same thing.

24          MS. BROWDY:  Wait --

25          MR. SPEIGHTS:  I think it is.  And it's -- we can

1  spend a lot of time arguing about what they mean.  I think it's

2  ambiguous.  I think she wants to -- she wants to clear up the

3  ambiguity.

4          THE COURT:  Well I mean I don't think it's ambiguous.

5  I think they're both asking for the same thing.

6          MR. SPEIGHTS:  I think --

7          THE COURT:  The first question should have asked when

8  did you know about asbestos but it doesn't ask that.  It asks

9  for Grace products.  They both --

10         MR. SPEIGHTS:  And I think that's why our answer at

11 the time was made in good faith and was correct, and they don't

12 like it because they asked the same question twice.

13         THE COURT:  They did ask the same question twice, Ms.

14 Browdy.

15         MS. BROWDY:  Your Honor, there's -- there can be no -

16 - you can't argue with the straight face that the 2003 date was

17 given in good faith.  The 2003 date was given for properties

18 that didn't have Grace product in it, that were withdrawn

19 because they lacked product identification.

20         THE COURT:  Regardless, you've asked the same

21 question and you got an answer.  You may not like that answer.

22 You can take depositions of the claimants.  I'm sympathetic to

23 your assertion that the claim form should be signed by the

24 claimant under these circumstances and I'm going to have Mr.

25 Speights return it to the clients and get them to sign it.  And

J&J COURT TRANSCRIBERS, INC.

1  if they don't agree that 2003 is the right date, then I'll

2  order them to amend it.  I don't want a false proof of claim

3  form filed.  But if in fact that's the date in which they knew

4  that Grace products were in the property and that's the

5  asbestos containing product, then that's the information and

6  whether you like it or not, that's what they're going to tell

7  you.

8      MS. BROWDY:  Okay.  So he's going to get ordered to

9  go back to each of his clients and answer questions 18 and 20

10  on the claim for by a client signed under oath.

11      THE COURT:  The one that -- the ones that you've

12  objected to that are still at issue, yes.  I'm not going to

13  have them go back -- their clients, yes.

14      MS. BROWDY:  Okay.  And again, everyone else in this

15  bankruptcy had to do that by March of 2003.  It's two years

16  later.  I mean I think he should have to do that within --

17      THE COURT:  He had the authority to sign the claim

18  form.  Assuming he had the authority then you've got a proper

19  claim form.  Just because you don't like the information

20  doesn't mean that it's false.

21      MS. BROWDY:  But it's -- again, it's -- we don't like

22  it because it's false.  It's --

23      THE COURT:  You're making a giant leap, Ms. Browdy,

24  which I really would appreciate your not doing.  An assertion

25  that an attorney is falsely presenting information is not

1 something this Court takes lightly.  And if in fact you prove

2 that, there's going to be a reference to the Department of

3 Justice for criminal prosecution as a result.  So, please, do

4 not use those words in this Court lightly.

5        MS. BROWDY:  Your Honor, those words are not offered

6 lightly.  That was spelled out factually in our objection, the

7 13th omnibus, claim 9311 that has evidentiary record.  It has

8 affidavits attached.  It has letters attached.

9        THE COURT:  We're talking, Ms. Browdy, don't expand

10 the subject, about the claims that are at issue right now where

11 I'm going to order Mr. Speights to take these back to his

12 clients and get them to sign under oath the answers to the --

13 pardon me, to the questions on the proof of claim form.  That's

14 what's going to happen.  They're going to answer it.  If the

15 answer comes back 2003 just because you don't like that answer

16 doesn't mean it's false.

17        MS. BROWDY:  Fair enough, from the client.  We need

18 the answer from the client.

19        THE COURT:  From the client.  Yes.  Mr. Speights, how

20 much time do you need?

21        MR. SPEIGHTS:  Well I don't know what the short

22 answer is, but more than a short amount of time.  I mean I need

23 -- I don't need but a week to go out to clients, but -- I'm

24 cognizant of the fact that a large of number of these are

25 California buildings and these people are going to answer the

1 question based on the best of their knowledge.  We have been

2 supplying them, by the way, documents along which in some

3 instances clarifies the situation.  But are you telling -- I

4 hate to even ask this question.  If the answer is to give you

5 the best good faith answer they can, 30 days.  If you're

6 telling them to question everybody who's ever worked in the

7 building, look at every piece of paper both at that institution

8 and within the state hierarchy of the State of California, et

9 cetera, et cetera, I don't know how long it would take.  It may

10 be an initial answer and a supplementation.

11        THE COURT:  They've had since 2003 when the claim

12 forms came down.  So hopefully they've got this process

13 underway.  If they intend a proof of claim, then they know that

14 they've got a burden of proof and that is going to be part of

15 their burden of proof when it's objected to.  So I don't expect

16 it's going to take another six months to contact everybody in

17 the state if that's what's required.  If you need more than a

18 month, okay.  But it's not going to be a six-month long

19 process.  They've had plenty of time to get this together.

20        MR. SPEIGHTS:  I understand it, Your Honor.

21        THE COURT:  You want 60 days, I'll give you 60 days.

22 But I expect at the end of that time if the claim form is not

23 signed by an authorized representative and they have to

24 undertake whatever investigation is appropriate for either the

25 state or the corporation, whatever it is, to get that

1 information, you know, back.  There are state laws that govern

2 when a corporation is alleged to have knowledge of its

3 employees and sometimes when it isn't alleged to have that

4 knowledge.  So --

5 MR. SPEIGHTS:  Let me say, just so the record is

6 clear and people on the phone as well.  We have continued to

7 gather documents and get information and the 2003 is the date

8 we identified, our clients identified Grace is consistently the

9 right date.  Will we find a situation where on further

10 investigation we don't find some document else way, I'm

11 confident that will probably happen.  But I don't think you're

12 going to see any wholesale change of the 2003 date as you and I

13 interpret the question.  Thank you, Your Honor.

14 THE COURT:  Okay.  The proofs -- the signed proof of

15 claim forms are to be submitted to the claims agent with copies

16 to Ms. Browdy, I want copies sent to her so that she knows that

17 in fact this information has been appropriately filed by --

18 when's the April omnibus?

19 MS. BROWDY:  April 17th, Your Honor.

20 THE COURT:  Okay.  If I have them filed two months

21 from now, March 24th, that should be sufficient time to put

22 these back on the April agenda if there are still any other

23 issues left and for you to work out the terms of an order if in

24 fact this satisfies whatever objection the debtor has at that

25 point to this issue.

1          MS. BROWDY:  Thank you, Your Honor.  That would bring

2  us to the Anderson motion for class certification.

3          MR. BAENA:  Your Honor.

4          THE COURT:  Yes, sir.

5          MR. BAENA:  May I say something before you move onto

6  the next subject.

7          THE COURT:  Yes.

8          MR. BAENA:  Judge, I only rise because of the

9  implication of something you said in respect of the estimation

10 which we are principally responsible for.  A moment ago you

11 alluded to the burden of proof that claimants have in respect

12 of when contamination -- when contamination occurred.

13         THE COURT:  No, that wasn't the question.  The

14 question is when did they know that there was a Grace product

15 that had asbestos in the building?

16         MR. BAENA:  You referred to it as their burden of

17 proof.  And respectfully, Judge, I reserve the right to

18 disagree with that interpretation of the law at another time

19 because that's not our view.

20         THE COURT:  The claimant doesn't have to prove when

21 they had a claim accrue?

22         MR. BAENA:  No.  The claimant has to prove that they

23 have a claim.

24         THE COURT:  Right.

25         MR. BAENA:  They have -- in many states, most states,

1   the fact of contamination is what triggers the accrual of the

2   claim.  A claimant doesn't have to prove though when that

3   occurred in those states.  If the defendant wishes to assert by

4   way of affirmative defense that the claim is time barred

5   because the claim accrued and the time ran under the statute to

6   bring that claim, it's the defendant's burden of proof in those

7   jurisdictions, especially in California under the Samsung

8   decision.  It's the defendant's burden of proof to show when

9   the release occurred.  And so --

10          MS. BROWDY:  Your Honor --

11          MR. BAENA:  And so I'm not here to argue about it,

12   Judge.  I just want to sort of put like an asterisk next to

13   your comment to reserve our right to suggest otherwise in other

14   contexts.

15          THE COURT:  Well that's fine except that I don't

16   think I was going where you've just gone.  My comment wasn't

17   intended to go where you just went.  So to the extent that it

18   was interpreted that way, that was not the information.

19          MR. BAENA:  Okay.

20          THE COURT:  I'm talking about a proof of claim form

21   that has a question on it that I've ordered people to answer.

22   It's their burden to fill out that proof of claim form and

23   assert the proper and truthful information on that claim form.

24   The debtor can't fill out the claim form for the clients.  The

25   clients have to fill it out.  That's their burden.  That's what

1  I was attempting to say.

2          MR. BAENA:  Okay.  Yeah, I apologize, Judge.  I

3  thought I heard you say burden of proof.

4          THE COURT:  Well I probably did.  I apologize because

5  sometimes I say burden of proof and I mean burden.  To the

6  extent that I said burden of proof, I retract the "of proof".

7          MR. BAENA:  Thank you, Judge.

8          THE COURT:  All right.  Thanks.  Ms. Browdy?

9          MS. BROWDY:  And again, Your Honor, that takes us to

10 the Anderson motion for class certification.

11         THE COURT:  All right.

12                        (Pause)

13         THE COURT:  Mr. Speights?

14         MR. SPEIGHTS:  I'm sorry, Your Honor.  I'd like to

15 say it's because I'm still under the weather, but I was

16 thinking through a situation and thought that counsel might be

17 going first and I realize it's my motion, albeit there's some

18 branches of the tree out there that have to be dealt with in

19 addition to the main part of the tree.

20         Your Honor, we are here on Anderson's motion to

21 certify and I want to give you a little bit of background, less

22 than three minutes, and then go to where I think we need to go

23 today and where I understood you wanted us to go today as a

24 threshold matter before getting to the merits or the few merits

25 of this motion.  And I say that because at the last hearing and

1 at this hearing I continue to be of the view that evidence

2 needs to be presented, especially in light of the assertions

3 made by the debtors in their various briefs and that we cannot

4 agree to any assertion of factual on that as made by the

5 debtors because we sharply disagree with many of their

6 assertions and because we think there is evidence available to

7 us that will greatly buttress our motion for class

8 certification.

9         But let me stand back just a minute.  I really was

10 thinking last night about what we've been doing the last few

11 months and I realize that I thought I had retired from this and

12 I thought I had retired from this in 1992.  And this is not a

13 long war story, but it's a quick story to illustrate the

14 importance of the class.  In 1986, 20 years ago this week, I

15 tried the Greenville City Hall case and got the first verdict

16 in the country against Grace in any kind of asbestos case,

17 personal injury or property damage, and it was the first

18 asbestos property damage case tried to a successful verdict in

19 the country.  And from '86 until '92 I settled with W. R. Grace

20 claims on behalf of in excess of 200 buildings in approximately

21 30 states.

22         In 1992 I tried to semi-retire.  I'd had enough of

23 this frankly going across the country and litigating case-by-

24 case-by-case.  And so I came back from a 12-week trial in North

25 Dakota and filed the Anderson Memorial Hospital case as a class

1  action.  And I did so for several reasons, personal reasons

2  being one of them, I did so because frankly nobody can try

3  hundreds of these cases and certainly not in our law firm.  We

4  have four lawyers.  I'm not some mega firm that starts trials

5  in 10 states at a time.  And frankly because by then I thought

6  the litigation was pretty clear with an additional

7  certification of the colleges class that the courts had

8  recognized in asbestos property damage cases that they are

9  particularly good for treatment by class action, Rule 23, which

10 would regard the multiplicity of lawsuits.  That's the purpose

11 of the class action, to efficiently deal with it.

12        And so I thought I had gotten out of what we've been

13 doing here since July of dealing with hundreds of claims

14 because if Grace had not declared bankruptcy, one of those what

15 if games, I would have either tried or settled or had

16 dismissed, won at trial, lost at trial, a case brought on

17 behalf of Anderson for the entire class.  I would have tried

18 one claim.  It would have been Anderson's.  If it would have

19 been a national class action it would have been Anderson; if it

20 was a state certified class action it would have been Anderson.

21 It would have been the Anderson claim as a representative of a

22 class.  Whether the statute of limitations had run or not would

23 be a question of whether Anderson's statute of limitation had

24 run.  Whether there was liability for Grace and negligence or

25 nuisance or strict liability of what would have been tried with

1 respect to Grace's product in Anderson.  Whether there was a

2 conspiracy or not would have been tried with respect to what

3 evidence Anderson produced.  In that case in the case of South

4 Carolina would have been tried in South Carolina.

5        So I've listened now for months about Speights filing

6 all these claims.  The fact of the matter is I was trying to

7 file a class.  I did file it.  Part of it was certified to

8 create a pot of money.  If we'd have won by settlement or by

9 verdict, a pot of money would have been created, liability

10 would have been created like other class actions, other class

11 actions that, you know, that are handled in my state and others

12 and there would have been a claims facility and people would

13 have made claims against the facility and we wouldn't be trying

14 500 cases.  We'd be having a claims facility.  And that was the

15 purpose of it.

16        We weren't -- when we filed later claims in this

17 case, it wasn't that we were trying to, quote, gain the system,

18 it was to try to protect, as I've said repeatedly, upon the

19 advice of an ethics professor, protect the class for whom I

20 filed the case.

21        Interestingly from '92 until 2000, not only did class

22 actions proceed in asbestos and not only were class actions

23 concluded such as the colleges class against Grace also filed

24 in South Carolina, but in essence we did the same thing in

25 other bankruptcies.  Class claims were permitted, for example,

1  in the Celetex and National Gypsum bankruptcies.  In Celetex a

2  facility was set up, class claims were put forward made by the

3  class representative.  Nobody tried a case on behalf of

4  hundreds of colleges in America.  There was PE trust that was a

5  facility and people either win or lose before the facility.  I

6  think the authority person who deals with claims in Celetex is

7  roughly 50 percent, 50 percent of claims allowed, 50 percent

8  are disallowed.  Excuse me a moment, Your Honor.

9                          (Pause)

10         MR. SPEIGHTS:  But that's what we started and that's

11  what we intended and now we are -- and I'm not here complaining

12  about the process.  I understand what's happened now because we

13  have a bankruptcy and we're down the objection road rather than

14  the trust road which I plea for constantly.

15         Your Honor, the other thing that I've said is that I

16  wish the Court would be mindful of the effort that was made on

17  behalf of Anderson from a period of 1992 to 2000.  When we get

18  to the point of making a factual record, which I do not believe

19  is today.  Your Honor said recently you wanted to start with

20  legal issues.  But I believe that we will show that we not only

21  spent, you know, eight years of work, numerous motions.  We

22  conducted discovery throughout this country against Grace.  The

23  most discovery I've ever done against a defendant in any case

24  I've ever handled was done against Grace in the Anderson class

25  action case.  I spent probably close to a million dollars in

1 expenses, that's not the hundreds and hundreds of hours, all to

2 protect the class.

3        Now of course Grace filed bankruptcy and has filed --

4 we filed our brief.  I'm not going to deal with the timeliness

5 issue now because I don't think that's what before you again on

6 the merits other than to say I think we filed our motion to

7 certify as soon as we could under the Charter case.  I do think

8 in Grace's brief on the merits, however, they properly

9 identified the issues ultimately for you to decide in whether

10 to certify a Rule 23 class.  They say, Grace says to warrant a

11 class certification the Court must determine whether a class

12 action makes sense and will advance the interests of the

13 bankruptcy and second, even if claimants can demonstrate that a

14 class must be acceptable, the claimants must also satisfy the

15 elements of Rule 23 and in particularly they talk it being a

16 superior method.

17        And I think that at least for purposes of today's

18 argument we can at least start with that framework.  And right

19 away everybody has focused on the first element of that.

20 Indeed some of the cases suggest that that is the primary

21 focus, will this assist the bankruptcy.  And we've got several

22 arguments on that, Your Honor, but what was presented to Your

23 Honor in our initial motion was that it would greatly assist

24 the bankruptcy.  It was assist the estate in making sure that

25 they are not claims out here that still can be made and it

1 would assist of course property damage claimants who may not

2 have gotten notice.  It would greatly assist the bankruptcy

3 because we believe, we asserted we think we have shown at least

4 from a prima facie standpoint and certainly we'd be prepared to

5 do so that despite all the work and all the effort that went

6 into the bar date order which I appreciate and I'm not here

7 today to criticize the bar date order, I'm here to criticize W.

8 R. Grace for not providing certain information and for not

9 doing certain things.  But despite everything the Court did and

10 despite the 4 million dollars or whatever that was spent on

11 there, there's a gap there.  There is a gap because Grace did

12 not notify people that it had knowledge of that had its

13 asbestos containing products in their buildings.

14         The law -- I've read -- as you know we've been

15 briefing this week while I've been -- I'm going through the

16 best I could in my condition trying to get ready for the

17 objections as well.  But to the extent that I've been able to

18 concentrate on the law, I don't think we're that far apart on

19 the law.  The cases clearly suggest that if you can give actual

20 notice it's preferred, actual notice to constructive notice.

21 So that in addition to the construction notice program which

22 Your Honor approved, the actual notice should be given to those

23 and Grace says to those people who are reasonably ascertainable

24 from their own records.

25         Well again we get to the final argument on this.  I

1  may question some semi-colons and about some of their

2  standards, but I'll live with that standard for today for the

3  purpose of my saying we need to develop that record.  Because,

4  Your Honor, I think Grace simply saying that they did certain

5  things or had no records, or Grace simply saying that we gave

6  notices in their brief to 200,000 claimants suggesting they

7  gave all this actual notice, number one saying it's so doesn't

8  make it so and number two, I don't believe it is so.  I do not

9  believe that Grace gave actual notice to a large number of

10 claimants where it had records that Grace's product went in

11 their buildings.

12        And I assert the minute they took this position, I

13 don't say the minute, within a short time after they took their

14 position in response to our brief, I served discovery on Grace.

15 I served it on several issues, but this is the issue Your Honor

16 focused on at the last hearing concerning I want to question a

17 30(b)(6) the person who knows all about that.  I've seen

18 invoices.  I have copies with me.  If Your Honor wants to see

19 them which have specific street addresses on them, specific

20 post office boxes on them, where their product was shipped to

21 specific buildings.  I have seen advertisements of Grace,

22 internal documents -- by the way both the invoices and these

23 were supplied to me by Grace over the years in Anderson

24 discovery and in other cases.  They're Grace's documents.  I

25 have seen other data compilations by Grace salesmen back during

1 the time that identify where material was shipped including

2 identifying salesmen and sales houses were material was

3 shipped.  And that alone to me suggest at least we ought to

4 have a factual record of what they did with respect to these.

5       In addition, I'm going to have to be convinced by

6 solid testimony that Grace does not have a data bank which

7 contains a lot of this info.  I think Grace was first sued, if

8 I'm not mistaken, by Mr. Dies in 1982 in the Evendale case.

9 And it was involved in a number of property damage cases from

10 1982 until the bankruptcy including a number of class actions.

11 It obviously wants to know when somebody brings a personal

12 injury lawsuit against them and says I have mesothelioma and I

13 remember working in the First National Bank building in Little

14 Rock, Arkansas.  Well it just seems self evident to me in

15 managing a major company and managing the asbestos liabilities

16 that somebody within the W. R. Grace framework would be able to

17 look up on a spreadsheet or something and say was monocoat used

18 in the First National Bank building in Little Rock, Arkansas,

19 else we've got a defense here and there was no exposure to

20 Grace's product.

21       So the combination of the PD litigation and the

22 personal injury litigation which came a little later than '82 I

23 think, that that combination leads me to believe that they have

24 a lot of information about where their product went.  And if

25 they had that information, the question is, did they do

1 something to give actual notice to these people and if not, why

2 not.  Well we've got to have testimony on that.  We've got to

3 know, you know, what would have been required.

4          I do know this.  This is the smallest of all examples

5 I could give to you and I just thought about it and I had

6 somebody send it to me electronically today.  I have in my

7 hands and invoice for Buyers Machine Company, Post Office Box

8 464 in Lauren, South Carolina, 30 bags of monocoat, March 23,

9 1973, after the announcement that the product was going to be

10 banned but within the 90-day period before it was actually

11 banned or the spray application was banned.  Now Buyers is one

12 of those claims which you struck subject to their being a class

13 action protecting them.  It's a South Carolina building.  I had

14 not contact with Buyers before the bankruptcy or until midway

15 during this war with Kirkland and Ellis.  I believe honestly

16 that I had authority to file a claim on behalf of Buyers

17 because the judge in South Carolina said I was the class

18 representative, certified class on behalf of South Carolina

19 building owners.

20          Now to my knowledge W. R. Grace did not give notice

21 to Buyers.  If it did, it'll make me wrong and I'll be

22 embarrassed and I'll ask them about 3,000 more.  But I do know

23 this.  I do know that Buyers is readily ascertainable because

24 when Kirkland and Ellis decided to proceed against Speights and

25 Runyon in June of last year, they served Buyers with a subpoena

1 to question their form, to question the authority.  They knew

2 exactly how to find them.  They had not problem whatsoever in

3 serving Buyers with a subpoena.  I spoke with the lawyer who

4 represents Buyers.  I didn't know him beforehand but he and I

5 we went to the same school.

6         THE COURT:  Well there was a claim filed.

7         MR. SPEIGHTS:  Pardon me?

8         THE COURT:  I mean there's a -- they contacted Buyers

9 after the claim was filed to find out whether there was

10 authority to file the claim and the proof of claim has the

11 address on it.

12         MR. SPEIGHTS:  The proof of claim had the same

13 address.

14         THE COURT:  Right, that's what I mean.  They got it

15 from the proof of claim.

16         MR. SPEIGHTS:  Right.  But my point, Your Honor, is

17 this is their document.  This is -- the proof of claim attached

18 a Grace document, the invoice with the address.  And the

19 question is whether there was --

20         THE COURT:  But this is an address from 1983.  Number

21 one, the building may not be there.  Number two, the owner may

22 not be the same.  The building itself is clearly not a

23 claimant.  Now Buyers Machine Company may be.  But the fact

24 that the debtor has a record that's 23 years old doesn't mean,

25 I think, that the person who owned the building 23 years ago is

1  still a creditor in the case.  That's the whole purpose of

2  constructive notice and a widespread dissemination of

3  constructive notice so that current claimants that the debtor

4  doesn't know about get notice and can come forward.

5        MR. SPEIGHTS:  But Your Honor, my point is this.  I

6  don't suggest to you that if they sent a notice to everyone of

7  these people where they have the names and addresses that every

8  one of them will get the notice.  What I suggest to you they've

9  got a large number, and I haven't moved beyond invoices yet,

10  they have a large number of addresses where material is that

11  they never attempted to give notice to.  It would not have done

12  -- it would have cost them 32 cents --

13        THE COURT:  Material in 1983 --

14        MR. SPEIGHTS:  Pardon me, Your Honor.

15        THE COURT:  Where material was in 1983, not where it

16  is.  I mean how would that -- how would the debtor know whether

17  -- even if it -- let me just do a hypothetical.  Let me assume

18  for the moment that the debtor knew that there was in 1983

19  asbestos not just delivered to but installed in that building.

20  Okay.  There's no way that the debtor would know currently

21  whether that asbestos -- whether the building is still there,

22  who owns it, whether the asbestos was ever put into the

23  building at all or whether it's still there.  That's -- that's

24  the whole purpose of a constructive notice program.

25        MR. SPEIGHTS:  Your Honor, I believe the constructive

1 notice is to -- is to do the best we can where we don't --

2 where we can't give actual notice.

3          THE COURT:  Well I agree with that.  But I'm not sure

4 that you can give actual notice to a current building owner

5 just because you knew that a certain set of facts existed 23

6 years ago.

7          MR. SPEIGHTS:  What you're saying, Your Honor, is

8 without any discovery yet about what all was available to it.

9 My point is we need a factual record because I believe we will

10 show that Grace has -- I started out with the easiest example,

11 an invoice, Grace has information within its records about

12 where its product was placed.  It's got -- it's got material --

13 it's got photographs where the material was applied in its

14 depository.  It's got advertisements where its product was

15 applied.  It's got correspondence with building owners about

16 what to do about the product in its buildings.  It's got

17 certainly information from the BI litigation about where people

18 were exposed and when and may well have that somehow reduced to

19 some data format which is quickly available.

20          I think we owe it for the purposes of fair

21 consideration of this issue to have a factual record to see

22 what is there and what isn't there so that at the end of the

23 day Your Honor may say, well I don't think the invoice is

24 enough but I think that might be enough, et cetera, et cetera.

25 Otherwise you're saying even if Grace -- theoretically even if

1 Grace knows that two blocks from its headquarters in Columbia

2 there's monocoat in that building and it walks through that

3 building to go to meetings.  It knows it as certain as anything

4 in life.  Okay.  It has no obligation to give actual notice to

5 that building owner.  And I just don't think that complies with

6 any of the cases, theirs or ours, that we've cited to it.

7        At some point Grace has an obligation to inform

8 people of its right to file a claim in this bankruptcy where it

9 knows its product is there and they have a claim.  And you

10 might disagree with where that point is, but if it's any point

11 I'm entitled to discovery to develop the factual record.

12        THE COURT:  I think that even if there is

13 constructive notice to the filing of a bankruptcy, the law in

14 this Circuit is very clear, that that puts the burden on the

15 claimant to file a proof of claim.  So whether Grace gave them

16 actual notice of the proof of claim form or not, the issue is

17 did the claimant know that there was reason to know that Grace

18 had a bankruptcy and to file a claim.  So I really don't think

19 this issue's going to go too far because that trial of that

20 issue, the actual notice versus constructive notice really is

21 based on whether or not the building owner knew that Grace was

22 in bankruptcy and therefore had an obligation to file a claim

23 whether Grace gave it actual notice or not.

24        MR. SPEIGHTS:  And I understand that, Your Honor.

25 But I think Your Honor would agree not all of the people with

1 Grace's product got actual notice of the bar date.

2       THE COURT:  I don't know who has Grace's product or

3 if any building has Grace's product in it.

4       MR. SPEIGHTS:  So the best --

5       THE COURT:  I don't know that --

6       MR. SPEIGHTS:  But the best constructive notice

7 devised by human kind has never gotten it disseminated to every

8 single person who would be affected.

9       THE COURT:  Of course not, neither has actual notice

10 as far as I know.

11       MR. SPEIGHTS:  Right.  So there is a gap here.  I

12 happen to think it's a large gap.  I think that, for instance,

13 you talk to Buyers, I personally live in South Carolina and

14 personally interested in this subject and I personally do not

15 recall reading anything about the bar notice in South Carolina.

16 Obviously I knew about it because I'm actively involved in this

17 case and I filed a number of claims and everything else.  I

18 don't know -- and I'm not being critical, I'm not sure what

19 South Carolina newspapers carried a Wall Street --

20       THE COURT:  Well look, with respect to the notice

21 program, that was vetted ad nauseam in this Court before an

22 order was finally signed.  The order that was originally signed

23 required some additional information to come in from counsel

24 whose claim holders would be filing claims.  At the request of

25 the Committee and with notice to not just the Committee members

1 but everybody else, I entered an order that said that counsel

2 of record for those claimants did not have to produce

3 information as to whether they had personally served their own

4 clients with that information.

5         Now you're saying in this instance that you just gave

6 me that you hadn't talked to Buyers before the proof of claim

7 bar date.  So I don't know whether Buyers had counsel of record

8 or didn't have counsel of record.  And at the request of the

9 Committee with knowledge of the Committee members and everybody

10 else because the service list is quite extensive on this order

11 which was not appealed that counsel for those claimants have

12 prevented the debtor from knowing whether there was actual

13 notice served by attorneys who were ordered to make that

14 service or not.  Now you can't have it both ways, Mr. Speights.

15         MR. SPEIGHTS:  Your Honor, respectfully, I think it's

16 Grace trying to have it both ways.  Your Honor has ruled that I

17 had no authority to file these claims.

18         THE COURT:  Some of the claims, that's right.

19         MR. SPEIGHTS:  Right.  And that's the group I'm

20 talking about such as Buyers.

21         THE COURT:  Well --

22         MR. SPEIGHTS:  Grace had said, made the motion, you

23 agreed I had no authority to file them, that I don't represent

24 them.

25         THE COURT:  All right.

1       MR. SPEIGHTS:  So there's this large group that in

2 this case it's been determined I couldn't file individual

3 claims for.

4       THE COURT:  But their claims were stricken.  They

5 didn't appeal.  They didn't ask for reconsideration.  They

6 didn't have an attorney file a claim.  They have all sorts of

7 legal options available to them and they definitely got notice

8 of the fact that an order went out that said that their claims

9 are disallowed or stricken, whatever the -- or modified,

10 whatever the appropriate order was, you know, given the

11 particular facts in the case.  They're not here.

12       MR. SPEIGHTS:  Your Honor, I'm here because I filed

13 the class action in 1992 and I'm here trying to convince Your

14 Honor, and I realize that you're skeptical of my position to

15 put it politely, I'm trying to convince Your Honor that Grace

16 had some duty to give actual notice to some people.

17       THE COURT:  I don't disagree with that.

18       MR. SPEIGHTS:  And then the question is, can we just

19 simply develop the facts of who they gave actual notice to, who

20 they could have given actual notice to and who they did not

21 give actual notice to.

22       THE COURT:  Well I believe there is an affidavit of

23 record that was filed by the noticing agent as to who was

24 served.  Now that's my recollection and again I apologize if I

25 have this case confused with the others.  But Ms. Browdy?

42

1          MS. BROWDY:  I would have to chase that down.  If my

2   partner, Ms. Baer, is still on the line she might be able to

3   address it.  I think Mr. Speights' entire argument is wrong as

4   a matter of law.  But --

5          THE COURT:  Well I'm not going there, Ms. Browdy.

6          MS. BROWDY:  Okay.

7          THE COURT:  You'll have a chance.  All I want to know

8   is the simple thing, is there an affidavit of record with

9   respect to who was given actual notice by the noticing agent?

10         MS. BROWDY:  And again I'd ask Ms. Baer.

11         MS. BAER:  Your Honor, Janet Baer on behalf of the

12  debtor.  Yes, there is a certification of counsel in the record

13  done by BMC who was our notice agent.  It is, I believe,

14  several hundred pages long.

15         THE COURT:  So there is an affidavit -- thank you,

16  Ms. Baer -- as to who was actually served.

17         MR. SPEIGHTS:  And that's one of three things I said

18  and I appreciate that and I would appreciate Ms. Baer sending

19  me a copy of that and --

20         THE COURT:  It's on the record.  You can print it off

21  of the CMECF system.

22         MR. SPEIGHTS:  I understand it.  But -- and again I

23  think it's an issue of fact and I think that's a factual thing

24  that we'll need -- excuse me -- be made part of the record by

25  Grace.

1          THE COURT:  It is part of the record.  It's filed of

2  record.

3          MR. SPEIGHTS:  Well Your Honor, I'm not -- I need to

4  go down this path, but I'm not sure that it's part of the

5  record on the motion now that anything that's ever happened in

6  the bankruptcy is part of the factual record for the motion

7  being argued before you.

8          THE COURT:  Well I can certainly take judicial notice

9  of the fact that the certification is of record and it says

10  what it says.  If you want to put at issue that a particular

11  person or entity on that service list wasn't served, you may do

12  so.  But otherwise there's a certification that indicates that

13  they were served and as far as I'm concerned that's filed by

14  counsel of record.  I don't have any more reason to assume that

15  it's false then I have reason to assume that you're filing

16  false things, Mr. Speights.

17          MR. SPEIGHTS:  And I'm not suggesting in the least.

18  I'm just suggesting, Your Honor, that given that that's part of

19  the record all I was saying is now my next question is, we have

20  a record of what Grace has filed of who they served.  Good.

21  That's one of the things I said I wanted.  We now have it.  I'm

22  not challenging counsel's credibility or integrity.  I don't go

23  there.

24          But my next question is, who could they have served

25  that they didn't?  What records did they have available, what

1    data did they have available, how easily could they have served

2    other people with Grace's product?  And that's the missing

3    ingredient from this factual record.  When we get that, you may

4    say to me, Mr. Speights, I've looked at that, I think Grace's

5    constructive notice is sufficient.  They didn't have to write

6    Buyers and they didn't have to write Jones Bank and they didn't

7    have to do this and that.  But I'm dealing now with a vacuum.

8    I don't know what all they have.  I've just got a great deal of

9    suspicions and I want my facts so I can build my record.  And

10   Your Honor can agree or disagree with it, but this is a

11   contested proceeding and I want to be able to show that.

12            THE COURT:  But this proceeding is asking for class

13   certification.  If you're correct on the class certification

14   motion, the class is going to get notice of the class

15   certification.  So what difference does it make?  And if you're

16   wrong on the class certification issues or I don't mean wrong,

17   but if I decide not to certify a class, then in that sense the

18   people who have had notice have the right to come in and file a

19   claim based on the bar date.  Those who say that they didn't

20   get notice but find out about the bankruptcy later have an

21   excusable neglect standard that they have to show under the

22   Pioneer line of cases.  The normal processes for filing proofs

23   of claim apply.  So I don't know where we're going with all

24   this.  Why am I going to have an evidentiary hearing to do --

25   to do something that seems to me to be -- well I'm not clear

1  what the point is.

2           MR. SPEIGHTS:  Your Honor, we may or may not need an

3  evidentiary hearing in the broad sense of calling people.  But

4  I do believe we need evidence.  If you'll just take, Your Honor

5  -- the best case they could find which is the <u>Sacred Heart</u>

6  case, of all the cases in the world this is the best they could

7  find.  It's actually helpful to me in a number of ways

8  especially it says that the South Carolina class should be

9  recognized.  But leaving that aside, this case and all the

10 other cases suggest that one of the considerations is, "While

11 we agree with movants that a class be proclaimed as an

12 appropriate device in certain circumstances, we find that such

13 circumstances are narrowly defined," and it goes on to say one

14 of the issues is, why they would not certify here is, "There is

15 no evidence that the debtor excluded or failed to provide

16 proper notice to the putative class members."  That's one of

17 the issues.  Did the debtor provide proper notice to the

18 putative class members?

19          And I believe in deciding the certification issue

20 under their first prong which says will it assist the

21 bankruptcy that we need to find did they properly serve

22 putative class members and not challenging the constructive

23 notice program but challenging what they did not do which I say

24 they should have done once I get the information from them.

25 I'm not seeking 50 depositions or 10 tons of documents.  I'm

1  seeking a 30(b)(6) deposition and documents in connection with

2  who they could have given notice to, actual notice to, about

3  their asbestos containing products being in buildings.  And if

4  I can come back before you in 30 days and say we now have the

5  deposition of somebody, Mr. X, who says here's this readout and

6  they could have for the cost of a stamp per building owner

7  given actual notice to these people, I'm going to strongly

8  argue that they should have done that.  You might disagree, but

9  at least that's the offer that I want to mk.

10          THE COURT:  Okay.  I understand what you want to do.

11  I'm not sure it's going to be helpful, but I'll consider it in

12  light of the rest of the arguments.  So what else would you

13  like me to focus on today?

14          MR. SPEIGHTS:  Well, Your Honor, my understanding is

15  that that was going to be the focus today, that's what you

16  wanted to T up as a threshold matter as to whether -- what our

17  basis was in going forward with discovery.  Now before we also

18  argue the merits of the motion, there are a couple of things

19  that we have pending.  First of all, they have attacked the

20  South Carolina certification on the grounds that somehow it was

21  a put-up job down South Carolina.  I believe under the Sacred

22  Heart case which says it may well be res judicata and if this

23  class is certified beforehand you should normally recognize it

24  plus your other comments about the South Carolina case.  I

25  would like to think that we could just accept the finding of

1  the South Carolina Court and be done with it.  However --

2         THE COURT:  The class -- I'm sorry.  Would you just

3  refresh my recollection?  What class, the South Carolina state

4  class was certified when?

5         MR. SPEIGHTS:  It was certified several weeks before

6  the bankruptcy, Your Honor.

7         THE COURT:  All right.

8         MR. SPEIGHTS:  And it was certified after years of

9  contentious litigation.  It was certified after an evidentiary

10  hearing in September, the year before the bankruptcy.  There

11  was an extension -- in which live testimony was taken of a

12  number of witnesses, number of distinguished witnesses on both

13  sides.  Grace got an extension to file one more brief until

14  after the transcript was prepared.  The transcript took months

15  to prepare.  Once the transcript was prepared, the Judge

16  entered an order as to Grace certifying it.  They somehow claim

17  that it was -- and this is a judge who'd heard everything,

18  okay, that somehow there was something wrong about it.

19         Well if Your Honor's inclined to go down that path to

20  second guess the South Carolina judge of what went on, we have

21  a motion to unseal the record.  The Court in South Carolina --

22  actually it's to allow us to go South Carolina to ask the judge

23  to unseal the record because after those contentious

24  proceedings the South Carolina Court put the record under seal.

25         THE COURT:  Excuse me.  Mr. Speights, pardon me.  I

1  have -- there are two very brief calls that I have to take

2  today, but this is one of them.  I shouldn't be more than five

3  minutes.

4            MR. SPEIGHTS:  Thank you, Your Honor.

5                      (Recess)

6            THE COURT:  Be seated.  I'm sorry.  I did call my

7  husband while we were gone, and apparently I cannot handle the

8  Coca-Cola matters, so I will have to transfer them to somebody

9  else.  And I will get a Judge for you promptly, but right now I

10 don't know who that will be.

11           MS. BROWDY:  Thank you, Your Honor.

12           THE COURT:  So I think what I -- it would make it

13 easier if I -- if the debtor could simply break out the Coca-

14 Cola into a separate objection, and I don't care if you call it

15 15A or whatever, and then, Mr. -- and perhaps give me a list of

16 all of the documents that refer to that objection, including

17 Mr. Speights's response so that we don't have to have you

18 refile anything except that -- the new objection and link all

19 of the old documents to it so that whoever the new Judge is

20 will just have a package.

21           MS. BROWDY:  Thank you, Your Honor.  We'll do that.

22           THE COURT:  Okay.  Thank you.

23           MR. SPEIGHTS:  And, Your Honor, would it be

24 appropriate to strike from the transcript of the record, at

25 least put it in the seal or something, your comments about

1  those claims?  That allows us (indiscernible) around the

2  asbestos (indiscernible) and I don't know.

3            THE COURT:  Well, I think I've already ordered that

4  you can't use it for any purpose with respect to this --

5  whoever's going to sit on the case, so I don't know how to go

6  about sealing a part of the transcript.  I guess what I have to

7  do, Mr. Speights, is have somebody order the transcript and

8  then ask that the portions that refer specifically to Coca-Cola

9  be put into a separate document that can then be sealed, I

10 guess.

11           MS. BROWDY:  But, Your Honor, the problem is, I mean,

12 there are other things in the transcript from yesterday.  The

13 parties have already agreed not to use the Coca-Cola statements

14 with respect to the Coca-Cola argument.  We agreed on the

15 record yesterday.  There are other provisions in that

16 transcript from yesterday that'll -- that we're going to need

17 to look into, when are deadlines, what are page limitations, et

18 cetera.

19           THE COURT:  No, I said to have the transcript

20 prepared in such a way that every -- all the references to the

21 Coca-Cola things are excised into a separate document.

22           MS. BROWDY:  Right, but our main concern would just

23 be that that not slow down the process of getting the

24 transcripts.

25           THE COURT:  Well, I don't -- I don't know what

1  (indiscernible) slow down the process.  I think, Mr. Speights,

2  this would be the best.  Perhaps let's get the transcript.

3  Then if you can file something with me that delineates the

4  pages that you would like excised from anything that's going to

5  go to some other Court, although I don't think any other

6  Court's going to look at this transcript anyway because why

7  would they care, but --

8         MR. SPEIGHTS:  I'm sort of our of my element.  Maybe

9  I'm -- maybe (indiscernible) has (indiscernible) idea how to do

10  these things in bankruptcy --

11         MS. BROWDY:  -- and --

12         MR. SCOTT:  All you have to do is say on the record

13  now (indiscernible) comments (indiscernible) --

14         THE COURT:  Okay.  All those -- I think I said that

15  yesterday, to the extent that I have that conflict, that all of

16  my comments are of no moment on this -- in this case because

17  I'm not ruling.  So, yes, my comments are, with respect to

18  Coca-Cola, I guess are vacated.  How's that?  They're all

19  vacated, and therefore they're of -- to be of no use.  The

20  parties have already agreed not to use them for any purpose.  I

21  don't -- I really don't know what more can be done at this

22  point.

23         MR. SPEIGHTS:  Well --

24         MS. BROWDY:  Again, Your Honor, I think there's

25  nothing else to be done on the transcript.  Mr. Speights has

1  these claims.  He's admitted that he doesn't have product

2  identification.  He knows it's a requirement.  What he could

3  just do is withdraw the claims, and that wastes everybody's

4  time and money to go before another Court --

5          THE COURT:  Well, look --

6          MS. BROWDY:  -- if he's now willing to do it, we'll

7  do it.

8          THE COURT:  -- it doesn't matter -- Ms. Browdy,

9  there's no point getting into this.  I can't rule on it no

10 matter what he does.  So it seems to me that that issue will be

11 addressed by some other Judge.  My comments with respect to

12 Coca-Cola, the questions I asked and the argument that took

13 place, are all stricken.  It's to be started over again.  But I

14 don't know how to excise it from the transcript and still have

15 a transcript that will be meaningful for anybody's use,

16 including yours in the future, because of the integration of

17 the Coca-Cola arguments in various sections of the transcript.

18 So they're stricken.  They're to be of no use.  Anybody who

19 does attempt to use them for purposes of arguing with respect

20 to this Coca-Cola issue in front of another Judge will be

21 subject to contempt sanctions by this Court.  That's the best I

22 think I can do.

23         Okay.  Mr. Speights, I apologize for the

24 interruption.  You were at -- you were going to file a motion,

25 or you had filed a motion, to ask the South Carolina Court to

**J&J COURT TRANSCRIBERS, INC.**

1  unseal the record?

2          MR. SPEIGHTS:  Yes, Your Honor.  You had asked me

3  what is it I wanted to do because (indiscernible) my situation

4  today is not here at the final hearing but trying to get a

5  record so I can argue with a final record.  And I did think of

6  one thing over the break, if I can retrace about three steps,

7  and that is the fact that I believe Grace served a number of

8  Libby claimants by post office box address, so it's certainly

9  -- and I think that's in our brief -- knows how to do that.

10  And that was an appropriate way in that circumstance.  I'm sure

11  they will try to distinguish the situation.

12          Here's where I am today.  And there's so many things

13  I could argue and so many things I feel fervently about with

14  respect to class action.  But I'm really at this point with

15  respect to the South Carolina class, a certified class prior to

16  the bankruptcy, which Your Honor has commented on in the past,

17  has been quite distinct from my wanting to get the rest of the

18  world certified.  Grace has the burden of proof to come in here

19  and tell you why you should not honor that class action.  In

20  fact, I think it's entitled to full faith and credit.  In fact,

21  I think it's entitled to res judicata.  In fact, I don't think

22  they can go behind it.  But if there is going to be argument on

23  that in which they continue to make factual assertions, okay,

24  or challenge me in any way on that I need to have the record

25  that was made in South Carolina over days unsealed so I can

**J&J COURT TRANSCRIBERS, INC.**

1 bring it and put it as part of this record.  What happened

2 there was the Court became concerned about certain statements

3 which were made which turned out to be, according to the Court,

4 not accurate, and it sealed the record.  The Court sealed the

5 record.  And then Grace declared bankruptcy.  And I think the

6 Court will, presented with a short motion, quickly unseal the

7 record.  I'll be glad to serve breaks down there, however you

8 do it, and not violate any stay if you want to lift the stay,

9 and so I can at least say, Your Honor, everything they're

10 saying about South Carolina is patently wrong and here's the

11 record that proves it.  And so South Carolina at least my

12 certified class action lives when I struggle for it down there

13 for almost ten years.

14          Now we have the rest of the world, and it -- and it

15 -- Your Honor's going to recognize it.  We don't need to go

16 there with that discovery.  With the rest of the world, Your

17 Honor, we think we're entitled to certification regardless of

18 whether or not they gave this notice.  But I told you two

19 hearings ago, I think, that I recognize that if I could not

20 convince you of this I would have a more uphill fight to

21 convince you to certify a class, and I did so because I think

22 the cases recognize this is a strong factor in your favor if

23 you show that people who are entitled to actual notice did not

24 get served.  And so we have a choice.

25          They make statements in their -- this is a statement

1  in their brief.  It's before you now.  This is the record I'm

2  facing.  There is absolutely no evidence that any creditors

3  were not provided notice of the bar date in some form.  Now

4  maybe they mean constructive notice and maybe they mean actual

5  notice.  That's another one of those ambiguous sentences.  They

6  make the statement, this included mailing individualized notice

7  packages to over 200,000 potential claimants or their counsel.

8  Are they saying they gave 200,000 packages to asbestos property

9  damage claimants?  I don't know.  I need -- first choice is I

10  just need to pin this down with the record so we can come to

11  grips with this one way or the other with a factual record and

12  don't go arguing on an incomplete record and don't go to some

13  Appellate Court with an incomplete record, whoever decides to

14  go to the Appellate Court.

15        Of course, Your Honor, what I'm arguing for, however,

16  is not only for my benefit.  You know, we have two different

17  issues here.  Their interest is to give the minimum notice

18  required for due process.  That's what -- I mean, they want

19  their bar date to survive.  They want it to meet all due

20  process so it can't be challenged and so the estate is

21  protected.  And that's a laudable goal.  All right?  And I'm a

22  claimant in this estate -- my clients are, and we want the

23  estate protected.  So I join in that goal that we don't want

24  this estate attacked down the road -- people who have claims

25  who claim they did not give notice, and we believe this makes

**J&J COURT TRANSCRIBERS, INC.**

1  the debtor vulnerable.  So in that regard we're on the same

2  page.  I believe there is a threat to the estate if there's a

3  large number of claimants who did not get notice.

4        But the other difference is that we're fiduciaries

5  for people in or putative class, <u>Anderson</u> is.  So in addition

6  to providing whatever minimum due process might be required to

7  give notice <u>Anderson</u> in addition wants to make sure that it

8  fulfills its fiduciary duty by seeing that all people within

9  its putative class who could have gotten actual notice did in

10 fact get actual notice.  And maybe I'm going in circles.

11       The bottom line is for the putative class at this

12 point -- and I'm going to sit down because I'm not arguing

13 merits yet, if we get to the merits I've got a lot to argue

14 about, unless Your Honor wants me to address it -- at this

15 point we either want a recognition that a class action would

16 serve in the best interests of this estate because it would

17 take care of (indiscernible) my view it a probability that

18 people did not get actual notice or, which I don't think I'm

19 going to get the first, simply to be able to show you in a

20 factual record what I'm talking about, have it blown up, put it

21 right down here, and for about 30 minutes show you, this is

22 what they had, this is what they had, et cetera, et cetera, and

23 do that.  And once we have that we can argue the merits of

24 this.  And I might have other evidence as well (indiscernible)

25 evidentiary hearing as well as that.  That is fundamental

1 according to the cases in this area which have considered the

2 question.

3          THE COURT:  Ms. Browdy?

4          MS. BROWDY:  thank you, Your Honor.

5          THE COURT:  I'm sorry.  Mr. Baena, is the Committee

6 taking any position with respect to this?

7          MR. BAENA:  -- no.

8          THE COURT:  All right.

9          MS. BROWDY:  Your Honor, I'm going to -- my I hand

10 out one chart?

11                    (Pause)

12          MS. BROWDY:  Your Honor, may it please the Court,

13 when Mr. Speights surfaced with his motion for class

14 certification in October we were here for a hearing.  And the

15 debtors told the Court then that this motion was absolutely

16 frivolous, that it was designed solely to delay the process of

17 resolving Grace's Chapter 11, and it was thrown in as a

18 stumbling block exactly as we were finally making progress on

19 the property damage claims.  And we argued, Your Honor, that

20 Mr. Speights shouldn't even be permitted to file the motion for

21 class certification.  The Court disagreed and thought that

22 there were a couple of legal issues to be addressed.  There are

23 legal issues.  The parties have fully briefed those and I'm

24 here prepared to address them, and we believe, again, based on

25 the law this motion for class certification should be denied

1  and it should be denied today.

2         In order to understand these issues, though, first I

3  want to talk just in terms of the time line of how we got here

4  because I don't really think it's possible to understand the

5  class certification motion in a vacuum without seeing how it

6  fits into the big picture.  And then after we walk through that

7  I want to address three legal issues.  One is the requirements

8  of notice in the Third Circuit.  Second is the issue of

9  judicial estoppel in the Third Circuit.  And last is how

10 Bankruptcy Courts treat class actions.  It's certainly not

11 entitled to full faith and credit as Mr. Speights suggests.

12 But let's start by walking through historically how we got

13 here.

14        As the Court is well aware in 2001 and 2002 there was

15 extensive briefing and hearings on the notice and bar date

16 issues.  And I note that Mr. Speights made a big point of

17 saying, you know, the <u>Anderson</u> case started in 1992 and there's

18 all this work was done up till 2000 and the like.  So he was

19 well aware of these issues as a member of the Property Damage

20 Committee.  This is not some surprise that just happened in

21 2005.  Speights knew in 2001 and 2002 that there was full and

22 detailed briefing and hearings on the issue of a notice and the

23 bar date.

24        At one of the arguments on this issue, Your Honor,

25 the Court stated -- and we cited this in or papers -- that

1 there will be no class proof of claims without this Court's

2 permission in advance.  I think it was actually stated twice on

3 the record.  It was during Mr. Baena's argument and Mr.

4 Speights was present in the courtroom when that took place.

5        In April of 2002 the Court approved a four million

6 dollar actual and constructive notice program.  The Court

7 expressly made the finding as required that the notice was

8 adequate.  Again, it was ordered after full briefing on this,

9 after hearings.  Two hundred thousand individual notices were

10 provided and publication was given in dozens of journals.  In

11 fact, the question came up whether more notice should be given,

12 for example, on television spots, and the Court said, no,

13 there's plenty of notice here.  There was the finding -- again,

14 the April, 2002 order said notice was adequate.

15        As one of the provisions of the notice program the

16 debtors asked for a requirement that the counsel for property

17 damage claimants either certify to the Court that they had

18 notified their clients or potential clients of claims or -- of

19 te -- of the bar date, or that they give the debtors the

20 address information.  They didn't want to spend the time and

21 money, give us the addresses and we'll notify them.  And the

22 Property Damage Committee came into court.  Mr Baena argued it.

23 Mr. Speights is part of that Committee, and this -- the

24 Committee came in and asked the Court to abate that

25 requirement.  And again we cited that portions of that June

**J&J COURT TRANSCRIBERS, INC.**

1  transcript in the brief that we filed on January 13th, and they

2  said, don't make us do it.  And again, we had asked that they

3  either certify that they had notice -- notified their clients,

4  potential clients, or give us the addresses.  And they said,

5  don't make us do it.  They represented to the Court that it was

6  unnecessary, and the Court in September of 2002 adapted the

7  abatement request that the Property Damage Committee had made.

8        In March, 2003, Your Honor, at the bar date Speights

9  did a number of things.  He filed class proof of claims 9911

10 and 9914 for Anderson, South Carolina in state buildings or out

11 of state buildings that -- one was for South Carolina, one for

12 -- was for the others, in direct violation of the Court's

13 admonition that there will be no proof of claims for a class

14 without permission.  He also then filed thousands of individual

15 proofs of claims for individuals we later learned he didn't

16 even represent, but he filed individual proof of claim forms.

17 That meant he had the address information.  Byers Machinery is

18 an example.  He had that address information.  It's the exact

19 kind of information the debtors had asked for to give notice,

20 and the Property Damage Committee came in and said, don't make

21 us give us that information, they don't need to give them

22 actual notice.  Again, this is what they got the Court to abate

23 that requirement.

24        And in March of 2003 in addition to filing, again,

25 nearly 3,000 proofs of claim, including these two class proofs

1  of claims, Mr. Speights never moved for class certification.

2  It took us a while, Your Honor, to dig through the thousands of

3  claims that we received in this bankruptcy.  Remember, at the

4  time Grace went into Chapter 11 there were only about seven

5  property damage claims pending, and lo and behold 4,000 were

6  filed.  It turns out 3,000 of those, again, had been filed by

7  Mr. Speights.  And it took us, again, months of discovery,

8  briefing and the like to find out that these 3,000 claims that

9  Speights had filed he didn't have authority, they had false

10 information --

11          THE COURT:  Ms. Browdy, I am so tired of hearing

12 this, for Pete's sake.  The fact that you've repeated it for 18

13 times doesn't make it any more true than it was the first time.

14 Please --

15          MS. BROWDY:  Okay.

16          THE COURT:  -- let's get to the merits of this.

17          MS. BROWDY:  Okay.  And then here's the merits.  By

18 October of 2005 2,300 hundred of his claims are gone.  So he's

19 no longer the big fish in this pond with 3,000 claims

20 overwhelming everybody else.  Twenty-three hundred claims of

21 his are gone.  The dynamic of the settlement process and the

22 like is changing.  He's again getting boxed out because so many

23 of his claims are gone.  And what does he then do?  Two years

24 after the bar date, four years after the notice issues, that's

25 when he moves for class certification.  It was prompted not by

**J&J COURT TRANSCRIBERS, INC.**

1 any concern for these Anderson and Royal claimants, it's

2 because, again, he wants to get leverage.  That's the only

3 reason this class proof of claim has been filed.  And what's

4 interesting is his motion for class certification -- and this

5 is stunning -- he attaches as his Exhibit A, here's a thousand

6 claimants that we think were not properly noticed.  That's the

7 root of his argument here.  They're the exact list of claimants

8 that he already filed proof of claims for and they're the exact

9 people who are listed on his claim forms 9911 and 9914.  These

10 are not new names.  This is what he had in his pocket.  He had

11 that since 2003.  And I can hand this up to Your Honor.

12                            (Pause)

13           MS. BROWDY:  Your Honor, this is what Speights is

14 complaining about.  We went through everyone on his list

15 attached as Exhibit A.  They're contained on this -- on this

16 handout.  And we list the <u>Anderson</u> -- the claim number that was

17 used for the individual filing in this case and we show you

18 where it appears in 9911 or 9914.  He hasn't found new stuff.

19 He was sitting on this.  This is the information he had back in

20 2003.  He's now sought to get additional discovery with the <u>Sam</u>

21 <u>Anderson Memorial</u>.  He's tried to push over this hearing.  And

22 again, we think that as a matter of law this motion should be

23 denied.  And now I want to get into the legal issues.

24           First on the question of notice, which is what this

25 Court had us brief most recently, this is -- the argument is

1 sketched out in our supplemental brief filed on January 13th,

2 docket 11547.  The Third Circuit recognizes there are two types

3 of creditors, known and unknown.  Known creditors get actual

4 notice.  Unknown creditors get constructive notice, publication

5 notice.  That's the <u>Chemetron</u> case, 72 F3d 341, the Third

6 Circuit, 1995.  So the question then becomes for these

7 claimants on Exhibit A of Speights' motion are they known or

8 are they unknown creditors?

9         Mr. Speights said, gee (indiscernible) could they

10 have served but they didn't, how easily could it have done?  I

11 suspect that there are more people out there.  I think they

12 have a database.  That's not the question.  This is a question

13 as a matter of law.  And again, the cases are cited in our

14 briefs.  As a matter of law unknown creditors, unknown

15 creditors, only get publication notice.  And that shows, again,

16 that -- the cases show we have no duty to go through all of our

17 books and records and invoices and materials going back decades

18 to give notice to every customer, supplier, vendor, et cetera,

19 that we had 30 years ago.  We only have to give it to known

20 creditors.  That's people with a claim and people who have

21 given us notice of their intention to file a claim.  And none

22 of those people have done it.  And Speights has had years and

23 he comes up here, I suspect, I think, I think they have more.

24 Where's his scrap of evidence that any of these people had a

25 claim at the time or had notified Grace of a claim at the time?

**J&J COURT TRANSCRIBERS, INC.**

1  That's the standard.

2          And again, it's a question of law.  It's the issue

3  this Court already addressed as part of this notice program

4  briefing back in 2001 and 2002.  We have to go back to known

5  creditors, not to every customer we ever had, not to every

6  invoice we ever had, not to every billing slip we ever had.

7  That would be ridiculous.  No Chapter 11 could ever move past

8  the step one if every debtor had to go back and find every

9  single slip of paper going back decades.  And it's even more

10 egregious, Your Honor, this contention of Mr. Speights, when

11 you consider that property damage litigation went back to 1985.

12 By 2001 there were seven claims pending.  Again, we had never

13 gotten intention from any of those individual claimants, any of

14 these individual building owners listed on Exhibit A to say, I

15 have a claim against you, I'm filing suit.  Why didn't they

16 file suit?  Again, we had no obligation to do it.  Speights's

17 contention, gee, I think there's more, they could have done

18 more, is completely frivolous.  Where is the basis for his

19 discovery?  He can't get it because it's a legal issue.  The

20 Court doesn't need briefing on that.  Again, the Court

21 addressed the issue in 2001 and 2002.

22         Which then turn -- takes us again to the judicial

23 estoppel argument.  The Third Circuit reads judicial estoppel

24 broadly, in fact more broadly than a lot of other places that

25 I've had to litigate it.  The Motley case, it's 196 F3d 160,

1  the Third Circuit, 1999, notes that judicial estoppel is there

2  to preserve the integrity of the judicial system.  It's to

3  prevent parties from playing fast and loose with the Courts.

4  They cannot take inconsistent positions, and the Courts should

5  take a look and decide each case on its own individual facts.

6       Again, Your Honor, you go back to the abatement

7  request.  He had this list of addresses.  This is exactly what

8  we said.  You want to give us additional information, people

9  you think should have notice, we'll serve them.  The PD

10 Committee, of which Speights is a member, came and said, don't

11 do it.  He's judicially estopped now from turning around and

12 saying our notice program wasn't adequate because it didn't

13 give notice to people we said don't give notice to.  We're not

14 going to give you the information to give notice to.  And the

15 Court again doesn't even have to reach the issue because as a

16 matter of law we had no obligation to give these people notice

17 because they're not known creditors.  They were -- received

18 notice by the constructive notice program.  But again, the

19 Court has a second ground for denying the motion, which is

20 judicial estoppel under Third Circuit law.

21      Now, Mr. Speights says, gee, I wasn't a party to

22 that, it was the PD Committee.  The Ryan case, which is cited

23 in our opinion, shows you don't even need privity in the Third

24 Circuit.  The Ryan case is 81 F3rd 355, the Third Circuit,

25 1996.  But he certainly can't stand up here as a member of that

**J&J COURT TRANSCRIBERS, INC.**

1 Committee when the Committee proffered this position and then

2 tried to come and turn it 180 degrees around.  That's exactly

3 what judicial estoppel is designed to prevent.  He should no be

4 permitted to go forward with this motion.

5        This gets us to the third and final legal argument,

6 which is what does a Bankruptcy Court do when it gets a class

7 proof of claim?  The first thing, Your Honor, is it's obvious

8 that it doesn't apply full faith and credit.  If it was a full

9 faith and credit analysis, Your Honor, you never would have the

10 history leading up to the American Reserve decision.  There

11 wasn't -- there were -- there were questions for months if not

12 years as to whether a Bankruptcy Court even could permit a

13 class action to go forward.  And if State Court class actions

14 were entitled to full faith and credit you would never have had

15 that line of cases leading up and following American Reserve

16 because the question comes up again, can a Bankruptcy Court

17 even permit class actions to go forward?

18        But as the American Reserve and other cases developed

19 a couple of basic principles became clear, or I think that they

20 were clear.  They were spelled out in our brief.  One thing is

21 the Bankruptcy Court has discretion to figure out whether or

22 not to permit a class action.  And one of the key factors to

23 consider is the effect on the progress of the bankruptcy.

24 That's the American Reserve case and the In Re Zenith case.

25 And it says, for example, these cases point out even if you had

1  a class certified outside of the bankruptcy it may not make

2  sense for it to go forward in the context of the bankruptcy.

3  The Court has discretion.  You look at what is the effect on

4  the bankruptcy process.  And here I submit, Your Honor, where

5  we had notice and bar date issues briefed four years ago.  A

6  four million dollar notice program has taken place.  Thousands

7  of claims were filed by March of 2003.  We've now taken all

8  these steps to get it down to a matter of hundreds of claims.

9  We're in the midst of estimation.  We're in the midst of our

10 objection process.  To go and now to open the door to change

11 the issues, to change the notice that the Court has already

12 addressed years ago, would impede.  It would not advance the

13 progress of the bankruptcy at this point, and that's again a

14 key factor for this Court to consider.

15         A second issue that again becomes clear in the case

16 law is the timeliness of the filing of the motion is a factor

17 for the Court to consider.  And again, we submit, Your Honor,

18 when this was briefed and addressed in 2001 and 2002 and the

19 Court said, you're going to have to get permission to file a

20 class claim, that Speights went ahead and filed it without

21 permission and then waited two years, actually more than two

22 years, to try to bring the class claim.  That's an important

23 factor for this Court to consider.  It's just not timely.

24         But the third point -- and again, this is spelled out

25 in the opening brief that we filed on December 2nd -- is that

1  Courts have repeatedly rejected class actions in a bankruptcy

2  where notice and the bar date had passed and the individuals

3  have already been given an opportunity to file the claim.

4  That's the <u>Bicoastal</u> decision, 133 BR at 255.  That's the <u>First</u>

5  <u>Plus</u> decision, 248 BR at 73.  It would be inequitable to allow

6  a class proof of claim to stand by giving a second bite at the

7  apple to those who chose not to file.  It's the <u>In Re GAC</u> case,

8  681 F2d 1295.  And it's the <u>Sacred Heart</u> case that Mr. Speights

9  cited to you, 177 BR 16 at 22, where the putative class had

10 received actual or constructive notice denial of the class

11 proof of claim device was deemed advisable.  So repeatedly,

12 case after case, where Bankruptcy Courts are given the

13 opportunity to consider certifying a class after notice and a

14 bar date have passed they turn it down.

15         And the last case I'd point out to Your Honor is one

16 of the cases cited by the plaintiffs.  It's <u>In Re Charter</u>, 826

17 F2d 866.  It's an 11th Circuit case from 1989.  And what's

18 interesting in that <u>Charter</u> case, again, cited by Mr. Speights,

19 that <u>Charter</u> distinguished the circumstances of that case from

20 <u>GAC</u> because they noted that in <u>GAC</u> the bar date order entered

21 by the Bankruptcy Court rejected class proof of claims and

22 required individual proofs of claims and said that was within

23 the Bankruptcy Court's discretion.  The Bankruptcy Court has

24 discretion not even to permit class proof claims.  And, Your

25 Honor, I submit that that's what this Court did in February of

**J&J COURT TRANSCRIBERS, INC.**

1   2002 when they said, you're going to need permission before

2   filing.  So again, we think as a matter of law it's time to

3   deny this motion.  There's no basis for it.

4          And again, the question isn't, can we get discovery,

5   who may have gotten notice, what other things were in your

6   files, it's a legal standard.  The legal standard has been set

7   out by the Third Circuit, was there a known creditor?  That was

8   discussed at length in 2001 and 2002.  It was briefed.  It was

9   argued.  Speights hasn't come up with a single shred of

10  evidence saying, here's a known creditor, someone who meets the

11  standard under the Third Circuit, who didn't get notice.

12         This discovery request is a fishing expedition.  The

13  attempt to open up the Anderson Memorial case down in South

14  Carolina is a fishing expedition.  It's all designed to delay

15  at the same time that Speights' claims are being thrown out by

16  the hundreds and thousands.

17         THE COURT:  All right.  When was the class certified

18  in South Carolina?  Was it -- do you agree it was pre-petition?

19         MS. BROWDY:  Your Honor, we briefed this as part of

20  the Anderson Memorial issue.  First of all, the out of state

21  claimants in South Carolina, that class was never certified.

22         THE COURT:  Right.  I understand.

23         MS. BROWDY:  Okay.  For the South Carolina claimants

24  Speights ran in in February and got an ex parte conditional

25  class certification order.  Again, it would have February,

1  2001.  To the extent that there was a class certification

2  decision it came out in July of 2001.  It violated the bar date

3  -- or the automatic stay as to Grace.  So there was no

4  cognizable class certified as to Grace ever in the <u>Anderson</u>

5  <u>Memorial</u> class action.  But to the -- to the extent that any

6  class would be recognized in that case, again, it was certified

7  in July of 2001.  Again, we think that order was ultra vires as

8  to Grace.  And I believe that Mr. Speights has even conceded

9  that it did not apply to Grace because we pointed out that by a

10  letter that Mr. Speights introduced to this Court Speights

11  drafted the order for the South Carolina Court, and he could

12  not have done that in the Grace case.  That would violate the

13  automatic stay.  He would be subject to sanctions if he had

14  written that order to bar Grace -- to apply to Grace at the

15  same time the automatic stay applied.  We brief that issue,

16  again, back in October.  I can get those cases again if you

17  need it.

18           THE COURT:  No, I just am -- I want to make sure I

19  understand the facts because Mr. Speights argued that it was

20  certified pre-petition but my recollection was that the issue

21  came up as to whether drafting an order for another Court to

22  sign was in fact a violation of the stay.  I don't think I ever

23  had to get to that issue.  But I thought that the order that

24  came down specifically excluded Grace from the certification

25  because the Court was concerned in -- the South Carolina Court

1   was concerned that if it included Grace it would be in

2   violation of the stay.

3        MS. BROWDY:  Right.  And again, there was a one-

4   paragraph conditional ex parte class certification order

5   entered in February.  But the actual final class certification

6   order, again, was entered in July of 2001, after the automatic

7   stay.  It had to carve out Grace, and again, if it didn't we

8   would suggest that Mr. Speights is subject to sanctions for

9   having drafted it in violation of the stay.

10       THE COURT:  All right.  Well, I don't know what the

11  -- I don't recall if I saw it.  I probably did.  I just don't

12  remember what this conditional order in February was.  So can

13  somebody get me a copy of that order, I want to see that, and

14  then again, the July order?

15       MS. BROWDY:  We can get that to Your Honor.

16       THE COURT:  Mr. Speights?

17       MR. SPEIGHTS:  Just on that one point, Your Honor,

18  here's what happened.  There was a conditional order ex parte

19  when Grace announced it was thinking about bankruptcy.  Before

20  it filed bankruptcy there was a hearing in which Grace was

21  represented by its national and local counsel.  And after

22  hearing fully with the parties the Court decided to continue

23  that order.  So it's not like I ran up to see the Judge, who's

24  200 miles from where I live, hand him a piece of paper and,

25  what do you want, Mr. Speights?  There's nothing to impugn the

1  integrity of this Judge, one of the best Judges that I

2         THE COURT:   Well, an ex parte order getting a class

3  certification after a trial's a pretty difficult thing to

4  swallow, the other side, Mr. Speights.

5         MR. SPEIGHTS:   I understand, and that's why I want to

6  unseal that record, Your Honor, because it will show you that

7  the Court had this extensive record already.  Okay?  And when

8  we -- and it will show you that there was a basis for going to

9  the Court ex parte with -- it's like a TRO in a child custody

10  case, what am I going to do with the child pending a hearing?

11  There was a hearing, before the bankruptcy, and the Court

12  decided that it should certify the class, continue the

13  certification as to Grace after being heard by everybody.  And

14  then a few weeks later the final order is entered as for

15  everybody but Grace.

16         The word, conditional, I might say, Your Honor, has

17  -- it's not -- it's not a term that I should be hesitant to

18  use, or anybody else.  All class actions are conditional.  It's

19  typically -- I think it's in the <u>National Schools</u> class action,

20  which was upheld by the Third Circuit Court of Appeals.  So

21  that means nothing that it was conditional.  I imagine the last

22  order was conditional.  My (indiscernible) was conditional.

23         So a Judge hears -- and again, that's another reason

24  why we can unseal the record, and I think you will see what the

25  Court had before it.  And this thing about I draft the order,

**J&J COURT TRANSCRIBERS, INC.**

1 Grace drafts orders in the same sense.  The Judge writes a

2 lengthy letter, says, you got to type this, you have them type

3 up, this is my order, and circulate it and everybody comment on

4 it, and when everybody comments on it I'll put it in final

5 form.

6       THE COURT:  Yes, I'm not concerned about the fact

7 that you drafted an order when a Court directs you to draft an

8 order.  It's still the Court's order, it's not your order, Mr.

9 Speights.  And whether you're the scrivener of it, you know, as

10 it gets to the Judge or not, so that's not my concern.  I want

11 to understand the process and what happened pre-petition.  So I

12 would like to seethe orders that the Court entered, all of

13 them, with respect to the class certification with respect to

14 Grace.  I don't care who drafted them.  I do care that the

15 Judge signed them.  So I want --

16       MR. SPEIGHTS:  And I'll be happy to supply those to

17 Your Honor.

18       THE COURT:  All right.

19       MR. SPEIGHTS:  And I have them, and I will do so.

20 Let me fall back to the -- to the sum of the rest of the

21 argument.  If I talk as fast as Ms. Browdy I couldn't go every

22 point she made before two o'clock but I want to get to the

23 essence of what I think we're here about today.

24       While on the one hand Grace talks about there are no

25 factual disputes, we should rule today, Ms. Browdy makes

1  numerous factual assertions, including at one point there's not

2  one scrap of evidence to show such and such.  That's her

3  language.  Well, I just want to get this record straight.  I'm

4  like a broken record.  I want to put some scraps of evidence

5  into the record because throughout their brief, throughout

6  their argument, they constantly say things that I sharply

7  disagree with, including just a moment ago about the state of

8  this record in South Carolina, suggesting that there was an ex

9  parte order and then there was a bankruptcy, leaving out the

10 critical middle step that there was a hearing in between the ex

11 parte order in which Grace had a chance to argue the case in

12 full.  So again --

13          THE COURT:  Is that the record that's sealed?

14          MR. SPEIGHTS:  The -- I don't believe that portion is

15 sealed.  I can give you the orders.  What's sealed is what the

16 Judge had before him when he entered all those orders.

17          THE COURT:  Okay.  Well, at this point in time,

18 frankly, I don't know that I need that.  If there -- if there

19 is a transcript that's not sealed of the hearing that took

20 place after the ex parte order was entered and before the

21 conditional continuation order, whatever that order was, I

22 would like to see that transcript.  If not then I'll take the

23 orders.  If it's under seal -- if the transcript's under seal

24 I'll take the orders.

25          MR. SPEIGHTS:  And I will get that to you, Your

**J&J COURT TRANSCRIBERS, INC.**

1 Honor.  And in addition, one more thing on facts.  Somewhere

2 throughout here they say this was done late, they waited three

3 or four years, we didn't do anything about it, we were shocked

4 to discover it, et cetera, et cetera.  We have also served, I

5 forgot to mention a moment ago, discovery which will show that

6 Grace has been acutely aware of Anderson's claim throughout

7 this bankruptcy from the very first when we believe we can show

8 through this discovery that Grace successfully kept Anderson

9 off the Committee by violating the South Carolina Court order,

10 by violating the seal order and giving Mr. Perch, the U.S.

11 Trustee, information that was under that seal order, and we got

12 the record corrected before Mr. Perch and will add it to the

13 Committee.  So this is not contrary to the briefs and these

14 naked assertions, this is not, we had no idea, Mr. Speights

15 comes along four years later and files Anderson, we were

16 shocked, et cetera, et cetera.

17           THE COURT:  No, I don't think that's the point.  I

18 don't think there can be any dispute about the fact that Grace

19 knows what Anderson's claims are as they were litigated in the

20 South Carolina proceeding because it was there.  The issue is

21 whether or not the class proof of claim violates my order that

22 said that before you file a class proof of claim you get

23 authority.  Whether it does violate that order or not at this

24 point, frankly, is irrelevant.  Whether it meets the standards

25 for class certification is what I'm concerned about.  And

1  here's the problem that I'm facing.  There was a bar date, and

2  for purposes of this discussion I'm just going to make an

3  assumption, I'm not making findings, that the notice was

4  appropriate because I made a finding earlier that the notice

5  program was appropriate.  So for purposes, again, as I'm

6  saying, all I'm doing is making a hypothetical right now,

7  assuming that the notice was appropriate for creditors then I

8  have the whole panoply of property damage claims filed before

9  me with the exception, of course, of the zonolite issues, which

10 we haven't addressed yet.  But but for the zonolite property

11 damage issues we have all of the property damage claims that

12 are ever going to be able to be filed because there was a bar

13 date and it's gone.  And frankly, at this point there just

14 aren't enough of them that I can see that it requires a class.

15 So that's where I'm coming from.

16        I don't see how a class is going to advance the cause

17 of the bankruptcy at this point in time.  The objection process

18 is ongoing.  To the extent that the Canadian litigation is

19 going to take place somewhere, that's not a large number of

20 claims and it can be done here, it can be done in Canada, it'll

21 be done somewhere, and that's the bulk of the claims that are

22 left.  There are not that many claims left.  I really just

23 don't see the need for class certification in that sense.

24        To the extent that there are real live creditors,

25 current creditors, who should have gotten actual notice but

1  didn't somehow get actual notice I think the answer to that is

2  to give them actual notice and see if they file claims.  I

3  don't see why I need a class action for that purpose at this

4  point.

5          To the extent that the creditors on claims 9911 and

6  9914 are the same creditors that you say are current claimants

7  who didn't get notice, that was the whole purpose why the

8  debtor wanted to get counsel to say who you had notified or to

9  get -- when I say, you, I mean that in the plural sense -- who

10 were notified or to get addresses so that the debtor could give

11 actual notice.  And the fact that the debtor's stymied in that

12 effort because the Committee got an order that applies to all

13 counsel and nobody appealed, so it's a final order, that says

14 that that information doesn't have to be given to the debtor

15 means, I think, that the debtor's done everything it could do.

16 It came into court and argued against this order, and it lost

17 because the Committee was persuasive and it applies to all

18 counsel.  And service list includes you, Mr. Speights,

19 personally, not as a member of the Committee, and you didn't

20 appeal it.  So at this point in time I think, you know, you

21 make your bed you lie in it.

22          Now, with respect to the actual notice issue I think

23 we need to take a look at the certification that was filed by

24 the claims agents -- oh, I'm sorry, the noticing agents to see

25 who was served.  Again, I apologize.  This is going back too

**J&J COURT TRANSCRIBERS, INC.**

1  many years and I wasn't the Judge originally assigned to this

2  case so I'm not sure I even know this piece of information.

3  The debtor's schedules, do the schedules list the current

4  property damage claimants?

5

6          MS. BROWDY:  I would ask if my partner, Ms. Baer, is

7  still on the phone, because it was before I was involved as

8  well.

9          MS. BAER:  This is Janet Baer on behalf of the

10 debtor.  The debtor's schedules would have listed all of the

11 pending property damage litigation, which is of course all of

12 the people who would have been served, or their counsel, with

13 the bar date material.

14         THE COURT:  Okay.  Do you know, Ms. Baer, whether

15 they included the people who were putative class plaintiffs in

16 the Anderson case, the South Carolina Anderson case?

17         MS. BAER:  I can't say specifically.  It's been too

18 many years.

19         THE COURT:  Okay.  Can somebody check?  Because if

20 they in fact were served with actual notice, I don't know that

21 the debtor even knew who all those plaintiffs were.  I don't

22 know the status of the South Carolina litigation.  Were all of

23 the putative class members identified in South Carolina?

24         MS. BAER:  One thing -- one thing I can say, Your

25 Honor, is we notified their counsel, Mr. Speights.  That's what

                    **J&J COURT TRANSCRIBERS, INC.**

1  our requirement would be.

2          THE COURT:  Okay, yes, as the putative class counsel

3  for the Anderson claims.

4          MR. SPEIGHTS:  Actually it's certified class counsel

5  for South Carolina.

6          THE COURT:  Yes, for South Carolina.  All right.  So

7  in fact they do have notice because you had notice and you

8  represented them.

9          MR. SPEIGHTS:  And I filed a class proof of claim.

10          THE COURT:  Right, which I said you couldn't do, they

11  needed to file -- until you got a motion approved.

12          MR. SPEIGHTS:  Well, I'm ready to (indiscernible)

13  there's a lot I need to address, Your Honor.  I'm not sure

14  where we are, but --

15          THE COURT:  Well, I was trying to get to the question

16  of whether or not I need some discovery with respect to the

17  notice program.  And at this point, frankly, I'm not convinced

18  that I do.  I think that issue maybe we should take a look at

19  for February.  You need to look at the certification, Mr.

20  Speights, and see this list of 200,000 claimants and find out

21  whether in fact these claimants were notified, and if they

22  weren't why not when you were their counsel and could have

23  notified them, I think is the issue.  So --

24          MR. SPEIGHTS:  Well, if we're going to deal with that

25  in February I'm not going to prolong -- I understand where you

**J&J COURT TRANSCRIBERS, INC.**

1  are -- I'm not going to prolong things now by hopefully

2  effectively refuting everything Ms. Browdy said and by

3  hopefully convincing you about a couple of things, especially

4  about what Your Honor said at that previous hearing.  I

5  understand what your focus is.  The focus is, it seems to me

6  now, are we entitled to discovery or not?  And just in fairness

7  to me every now and then I like to fair to myself, Your Honor,

8  when Ms. Browdy comes up and said, delay, delay, delay, I

9  served this discovery in December.  We'd already be finished

10  with it.  It's not something that's going to take a long time.

11  They filed a motion for protective order, which they have every

12  right to, and that's the way the game is played.  And under the

13  local rules I haven't been able to take that discovery.  And I

14  believe with the discovery already served, you know, provided

15  they respond to it adequately, we would be in a position to

16  argue the merits of every aspect of this, which is sort of like

17  punching a balloon, when you punch one side of it another side

18  pops out.  But I want to get my arms around it and have it

19  resolved.

20          THE COURT:  Well, I agree with Ms. Browdy's statement

21  with respect to the standard.  The debtor is not required to go

22  through every piece of paper in its possession to determine

23  whether 30 years ago it shipped product to a place and

24  therefore the entity who got it 30 years ago may still be the

25  owner of a building who received the product and used it and

**J&J COURT TRANSCRIBERS, INC.**

1  had some knowledge that there was a hazard.  I think they do

2  have an obligation to make a reasonable inquiry as to who the

3  creditors of the estate are.  And so to the extent that the

4  issue, if this is the issue, is the list of creditors that were

5  on the 9911 and 9914 proofs of claim, and whether or not they

6  got actual notice, I think there can be a comparison between

7  what the noticing agent did and what the creditors are.  To the

8  extent that you were served on their behalf, that's sufficient

9  notice.  You have an obligation to notify your clients that

10 they have an obligation to do something as their counsel, and

11 that's sufficient notice.  That should have happened.  So

12 hopefully that's not going to become an issue as to whether

13 counsel did or didn't notify their clients because otherwise

14 I'm going to vacate this order that I entered several years ago

15 and get those certifications filed.  I don't know how else to

16 address the issue as to whether actual notice was provided by

17 the attorneys to their clients.  So that's where I am.

18         MR. SPEIGHTS:  And --

19         THE COURT:  Either this order has to be vacated and

20 we find out who was served.  And if there wasn't service then

21 I'll make the attorneys make the service.

22         MR. SPEIGHTS:  And, Your Honor, as we sit here today

23 I tell you that there's nothing in the record to suggest that

24 Grace could not get on the computer and hit a button and print

25 a list of addresses (indiscernible).

**J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:  And there's nothing on the record at this

2    moment to say that Grace didn't do that.

3          MR. SPEIGHTS:  I know, and that's --

4          THE COURT:  There were --

5          MR. SPEIGHTS:  -- why I need the discovery.

6          THE COURT:  -- there were representations, I believe

7    by Mr. Bernick, before the notice program was put in place as

8    to what effort the debtor was going to make to identify

9    creditors, but I don't have a recollection specifically of what

10   that was now.  I do recall one of his charts, talking about

11   some things like that, but I don't recall --

12         MR. SPEIGHTS:  And that's what I want to challenge,

13   and --

14         THE COURT:  So go back and we'll --

15         MR. SPEIGHTS:  -- in the most respectful way I want

16   to challenge it in discovery.  I just got -- this is an amazing

17   world we live in where you can be up here arguing in Pittsburgh

18   and get an e-mail from somebody out of state by your

19   Blackberry, and -- but since we don't have the record, somebody

20   has reported who has looked at the list Ms. Baer identified us

21   for earlier, I think that's the list, of the 265 pages of PD

22   names about 9,700 on the attachment, at least 200 pages of

23   names are Libby or other Montana addresses sent to current

24   occupant or current resident.  The actual names are very small.

25         THE COURT:  Well, with respect to Libby we addressed

1  that issue way back when, too.  And I believe that -- I think I

2  ordered the debtor to send notice to everybody who lived in

3  Libby because I want to make sure that there was some universe

4  of people.  But, Mr. Speights, Libby is a whole different

5  circumstance from having, you know, an isolated building

6  somewhere outside Libby, Montana that has a Grace product in it

7  or some other asbestos product in it.  It's just not -- it's

8  simply not the same kind of circumstance.

9          MR. SPEIGHTS:  But whether it's apples and oranges or

10 orange and tangerines, first of all, this long list is consumed

11 by Libby -- I said, you know, we talk about now being a part of

12 this record -- it's consumed by Libby.  Secondly, it shows that

13 when you want to give actual notice or the Court directs you to

14 you can send it to a post office box (indiscernible) address --

15         THE COURT:  I'm not sure that's actual notice.  That

16 may be constructive notice, too.

17         MR. SPEIGHTS:  Well, and the other thing is buildings

18 don't move.  And we don't need to get it --

19         THE COURT:  Buildings aren't claimants.  Buildings

20 are not claimants.  They have no standing to raise a claim in a

21 bankruptcy case.  Sending a notice to a building is irrelevant.

22 If they send a notice to, for example, I'll just pick a place,

23 the U.S. Steel Building that has 60 some floors and 5,000

24 tenants in it, what kind of notice is that giving to anybody?

25 It's not.  It's not notice.  It's better to put an ad in a

1  newspaper that's likely to be seen by at least half if not all

2  of those 5,000 tenants in the building.  The buildings are not

3  claimants.  And the fact that the debtor has some indication

4  that it's product was shipped to a specific building is totally

5  irrelevant with respect to giving notice to claimants.

6         MR. SPEIGHTS:  Sell, Your Honor, let me just shut up

7  since we're not going to finish today and say that hopefully

8  you'll give -- allow us the discovery.  I will send you the

9  papers you requested dealing with the South Carolina

10 certification.  And whether you allow discovery or don't allow

11 discovery when we appear before I will address all of those

12 assertions that Ms. Browdy has made and try to convince you

13 (indiscernible) timeliness on which Your Honor ruled in

14 February of 2002, et cetera, et cetera, which, as I understand

15 it, I don't need to address at this point.

16        THE COURT:  All right.  You may send me the -- I know

17 somewhere I the docket, Mr. Speights, I've already seen those

18 orders.  It's just that at this point in time I really couldn't

19 put my finger on them.  If you could send them to me in paper

20 copy and send Ms. Browdy a copy of what you send me, that would

21 be sufficient.  You don't have to -- unless electronically

22 filing them is easier, I don't really care.  But I just want an

23 opportunity to take a look at those orders and --

24        MR. SPEIGHTS:  And regardless --

25        THE COURT:  -- if it's not sealed.

1        MR. SPEIGHTS:  -- and regardless of the discovery

2   issues relating to notice unsealing that file is a separate

3   issue so that you would set -- I would ask you to think about

4   -- consider the context in which those short orders were

5   entered.

6        THE COURT:  I'm sorry, would you say that again?

7        MR. SPEIGHTS:  In addition to our discovery that we

8   want about notice I would also urge you to consider unsealing

9   the record in South Carolina so that when you consider the

10  orders I'm going to send you, unless you say, oh, those are

11  dispositive, okay, that at least you would have before you what

12  Judge Hayes had before him when he signed these very short

13  orders.

14       THE COURT:  Okay.  Well, I don't think I'm in a

15  position to order some other Court to unseal a record.

16       MR. SPEIGHTS:  Oh, we just want you to lift the stay

17  so we can go ask the Judge to unseal the record.

18       THE COURT:  Well, let me see the orders and the

19  transcript of the one hearing that I think at this point is --

20  may be a bit more crucial to this issue than the whole trial at

21  this point, just the transcript of the hearing between the ex

22  parte and the second order that the Court issued, if it's not

23  under seal.  That's what I would like, those three orders and

24  that transcript --

25       MR. SPEIGHTS:  Thank you, Your Honor.

**J&J COURT TRANSCRIBERS, INC.**

Argument                    85

1        THE COURT:  -- at this point.

2        MS. BROWDY:  Your Honor, I mean, we were here today

3   to argue the merits of the class certification.  I understand

4   you've heard argument, you want to look at these two additional

5   orders and potentially a transcript from the Anderson.  But Mr.

6   Speights has made no basis for getting discovery.  I mean, that

7   was the whole point, and we -- when we started to flag this

8   issue in October the Court wanted to examine the legal issues.

9        THE COURT:  Well, the legal issue is whether, as I

10  understand what Mr. Speights is arguing, is the fact that the

11  case -- some of the cases indicate that to the extent that the

12  debtor has done an appropriate notification program and the bar

13  date has passed that there is very little basis for a class

14  proof of claim.  There may be in some circumstances other

15  reasons to go into it, but for reasons such as face us on this

16  record where the universe of claims is not that large and the

17  known claimants are known, because everybody had notice, if the

18  debtor did not give appropriate notice then the cases tend to

19  say that a class proof of claim may be appropriate even though

20  it may be a second bit at the apple.  There are those cases

21  that say you shouldn't get a second bit at the apple, but there

22  seems to be a little bit of a disparity, depending on the facts

23  and how the law is applies to the facts.  He wants to get to

24  the facts.  His argument's going to be that the debtor didn't

25  give appropriate notice.

1          MS. BROWDY:  Your Honor, the Court's already made a

2    finding that notice was adequate --

3          THE COURT:  I gave -- I made a finding that the

4    notice program was appropriate, that's right.  The question is

5    I think a very limited one, and that is, what did the debtor do

6    to get that notice program approved, you know, what kind of

7    investigation was made to get some indication of who the actual

8    claimants are and to notify those actual claimants?  I'm not

9    convinced at this point that the debtor needed to do anything

10   more than was done but the question is I don't really know what

11   the debtor did to notify the actual claimants or to identify

12   the actual claimants.  I do recall some assertion by Mr.

13   Bernick as to what was going to be done.  I don't remember the

14   details.  It was just too long ago.

15         MS. BROWDY:  That's why we're digging up that -- the

16   list of notice from the earlier -- from the record that was

17   referred to.

18         THE COURT:  Well, the record that -- that

19   notification -- I'm sorry, that certification of the notice

20   that was provided should list everybody who got from the notice

21   agent the package that the debtor sent out.  So you're going to

22   know the list of entities, either known claimants or their

23   counsel, who got that package.  The debtor's request way back

24   when was to say, if we send the notice to the counsel we want

25   an indication that in fact they sent it to their clients so

**J&J COURT TRANSCRIBERS, INC.**

1 that we can say they got actual notice.  They convinced me that

2 they shouldn't have to do that because as a matter of ethics

3 they have an obligation to notify their clients, and so I

4 shouldn't have to make them file that certification.  And I

5 agree.  They're officers of the court.  If there's an order

6 that says, you know, make sure that your clients are notified,

7 they have to do it.  Now they -- I agree with you, they can't

8 come in and say, gee, there's no evidence of record because

9 they asked me not to have the evidence put of record because

10 they're officers of the court and I accepted that proposition,

11 and now they want to say, well, the debtor didn't make notice.

12         You know, you can't have it both ways.  So either I

13 vacate this order that I entered back in September of 2002 and

14 require the counsel who didn't want to certify to certify so

15 that there is this record.  That's going to be the first step

16 before we go into any discovery with respect to the debtor.

17 That will be step one because the debtor did make notice on

18 several counsel, and to the extent that they had clients they

19 had an obligation to notify them.  The disparity may still be

20 that there may be actual known creditors who weren't

21 represented by counsel who were missed.  But, you know, unless

22 there are hundreds of them it's not going to make a difference.

23 They got constructive notice.  That's the whole purpose for

24 constructive notice.  So I'm not really sure where we're going,

25 but the first step is to look at that certification.  I may

**J&J COURT TRANSCRIBERS, INC.**

1  request some information as to what the debtor did to find out

2  who actual claimants were.  And the next step before we go any

3  further, if it's necessary, is going to be to vacate this order

4  or to amend this order, whatever, and require the

5  certification, because the counsel were notified, and to the

6  extent they now want to say that there were creditors who were

7  not notified then I want to find out whose fault it was.

8          MS. BROWDY:  Thank you, Your Honor.  Then the only

9  question I -- we have for the Court, we have the omnibus

10  hearing set for Monday.  Two of the items on the agenda, one is

11  our motion for protective order as to Mr. Speights' request for

12  discovery, and the other is Speights' request to lift the stay

13  in Anderson, to which we've objected.  It strikes me that those

14  should both come off of the agenda for Monday.

15          THE COURT:  I think they should go on to the February

16  calendar, Mr. Speights, to give you an opportunity to look at

17  what I've already directed be done.

18          MR. SPEIGHTS:  Thank you, Your Honor.

19          THE COURT:  Okay.  Put them on the February.

20          MS. BROWDY:  Thank you, Your Honor.

21          THE COURT:  Okay.  Have -- is the argument for today

22  finished with respect to this issue, class --

23          MS. BROWDY:  As far as I know -- as far as I know --

24          MR. SPEIGHTS:  I believe so, Your Honor.

25          THE COURT:  Okay.  Then I will take up again at the

1  February hearing whether some if any discovery is necessary,

2  but as I indicated first I want everybody to look at the

3  notice, the certification of the notice that was filed.  I

4  would like some recitation from the debtor.  For February I

5  will accept it from counsel as a proffer but I do want some

6  representation as to what the debtor did to find out who the

7  actual claimants were.

8          MR. SPEIGHTS:  When is that due, Your Honor?

9          THE COURT:  I'm just going to accept it by way of an

10  oral representation at the February hearing.

11          MR. SPEIGHTS:  At the hearing (indiscernible) get it

12  in advance.  I understand.  I'm just making it clear.

13          THE COURT:  Because I'm looking to see whether some

14  additional discovery is going to be needed.  And then if some

15  additional discovery is needed before we do anything from the

16  debtor we're going to revisit this order, because at that point

17  in time I don't think you can have it both ways, so we'll find

18  out who was served -- or who was notified from their own

19  counsel so we do have a record as to not just the attorneys but

20  the actual clients who were notified.  So we'll address

21  anything further than that at the February hearing.

22          Okay.  I've given sort of my preliminary view with

23  respect to the numerosity issue.  I really am not convinced

24  that this is that numerous a class but that may be dependent on

25  this actual notice issue, so I'm reserving ruling on that.

**J&J COURT TRANSCRIBERS, INC.**

1  With respect to advancing the bankruptcy, unless there is a

2  numerosity issue I don't think it's going to advance the

3  bankruptcy.  And even if there is a notice problem I may rather

4  refile -- or have the debtor reserve a bar date for those

5  limited people who didn't get the notice and figure it out from

6  there at this point, but again, that's an issue I'll hear from

7  you on in February.  Okay?  Anything else for today?  Okay.

8  We're adjourned.

9            MS. BROWDY:  Thank you, Your Honor.

10           THE COURT:  Ms. Browdy, I didn't ask you how long it

11 will take you to file that Coca-Cola line of things so that we

12 can -- I can work to get that reassigned.

13           MS. BROWDY:  We can surely get that on file next

14 week, Your Honor, if that's okay.

15           THE COURT:  Okay.  That's fine.  Sure.  By like

16 Friday of next week?

17           MS. BROWDY:  That would be sure.

18           THE COURT:  Okay.

19           MS. BROWDY:  Thank you, Your Honor.

20           THE COURT:  If you would, Ms. Browdy, when that's

21 filed would you call Ms. Baker in Pittsburgh and let her know?

22 Because I would like to take care -- since I have a conflict I

23 would like to transfer that as soon as possible.

24           MS. BROWDY:  Yes, Your Honor.

25           THE COURT:  All right.  Thank you.

**J&J COURT TRANSCRIBERS, INC.**

Argument                                    91

1          (Hearing adjourned)

2              * * * * *

**C E R T I F I C A T I O N**

I, BEATRICE A. CREAMER, court approved transcriber,

certify that the foregoing is a correct transcript from the

official electronic sound recording of the proceedings in the

above-entitled matter.


/s/ Beatrice A. Creamer          February 2, 2006
BEATRICE A. CREAMER              Date
J&J COURT TRANSCRIBERS, INC.


**J&J COURT TRANSCRIBERS, INC.**