## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Request for Expedited Telephonic Hearing** |
| | ) | |
| | ) | **Hearing Date: To Be Determined.** |
| | ) | **Objection Deadline: To Be Determined.** |
| | ) | |

## THE OFFICIAL COMMITTEE OF ASBESTOS PROPERTY DAMAGE CLAIMANTS' MOTION TO COMPEL AND SUPPORTING MEMORANDUM OF LAW

The Official Committee of Asbestos Property Damage Claimants (the "PD Committee"), by and through undersigned counsel, hereby moves to compel production of documents in response to Requests Nos. 7, 8, 9, 12 and 17 included in the PD Committee's First Request for Production of Documents served on the above-captioned Debtors (the "Debtors" or "Grace").[1]  As grounds for this motion, the PD Committee states as follows:

### I.
### PRELIMINARY STATEMENT

On November 15, 2005, the PD Committee served its First Request for Production of Documents on Grace ("Request for Production").  A copy of the Request for Production is attached hereto as Exhibit 1.  On December 16, 2005, Grace served its Responses and Objections to the Request for Production (the "Response").  A copy of the Response is attached hereto as Exhibit 2.  The documents sought in Requests Nos. 7, 8, 9, 12 and 17, which are the subject of this motion, collectively seek documents concerning litigation between Grace and plaintiffs who sought relief based on allegations that their property was damaged as a result of the installation of various Grace products.  These documents will be referred to collectively as the "Litigation

---

[1] The Debtors objected to each and every Request, however, the PD Committee and the Debtors have been endeavoring to resolve such other objections.  The PD Committee reserves its right to move to compel further production should those efforts fail.

MIAMI 972939.3 7481715537

Files." Grace has refused to provide the PD Committee with its Litigation Files based on several objections, none of which excuse production. *See* Ex. 2 at pp. 7, 8 and 10.

The PD Committee is entitled to production of the Litigation Files.    Grace's unwillingness to comply with its obligations under the applicable rules to produce the documents cannot be justified under any argument.    Simply put, the Litigation Files are relevant and necessary to these proceedings and an order requiring their production is just and proper. Accordingly, the PD Committee respectfully requests that the Court require Grace to produce immediately the discovery sought, particularly the Litigation Files.

## II.
## ARGUMENT

## A.   GRACE CANNOT RELY ON IMPROPER AND UNSUBSTANTIATED BOILERPLATE OBJECTIONS

As a threshold matter, in each of the responses at issue herein, Grace made only blanket, boilerplate objections. *Id.* Such objections are fundamentally improper. *See e.g. Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998) (holding that "the standard, boilerplate 'general objections'. . . which include[] blanket objections as to relevance, burdensomeness and attorney-client privilege and work product privilege . . . **do not comply with Fed. R. Civ. P. 34(b) and courts disfavor them.**" (emphasis added)). As in *Athridge*, the Response contains only general objections, which do not comply with the requirements of the Federal Rules of Civil Procedure.

Indeed, Grace has offered **no** evidentiary support for its conclusory objections of burden, over breadth, relevance, or privilege. *See* Ex. 2 at pp. 7-9. Such evidence, however, is required to support any such objection. *See e.g. In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 351, 361-62 n.9 (N.D. Ill. 2005) (holding that "In order to demonstrate undue burden, the plaintiffs must provide affirmative proof in the form of affidavits or record evidence."). Cases within the Third Circuit expressly recognize this requirement. For example, in *Roesberg v. Johns-Manville*

*Corp.*, 85 F.R.D. 292, 296-97 (E.D. Pa. 1980), the court stated with respect to objections to

interrogatories that:

> GAF objects generally to this interrogatory as "overly broad, burdensome,
> oppressive and irrelevant", a complaint which GAF echoes with virtually every
> other interrogatory. To voice a successful objection to an interrogatory, GAF
> **cannot simply intone this familiar litany**. Rather, GAF **must show** specifically
> how, despite the broad and liberal construction afforded the federal discovery
> rules, each interrogatory is not relevant or how each question is overly broad,
> burdensome or oppressive, **by submitting affidavits or offering evidence**
> revealing the nature of the burden. The court is not required to "sift each
> interrogatory to determine the usefulness of the answer sought". The detail in the
> complaint specifies the necessary relevance of the interrogatories. The burden
> now falls upon GAF, the party resisting discovery, to clarify and explain its
> objections and to provide support therefor.

*Roesberg*, 85 F.R.D. at 296-97 (internal citations omitted and emphasis added); *see also Josephs*

*v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982); *Redland Soccer Club, Inc. v. Department of*

*Army of U.S.*, 55 F.3d 827, 856 (3d. Cir. 1995); *U.S. ex. Rel. Fisher v. Network Software Ass.*,

217 F.R.D. 240, 246 (D.D.C. 2003) (stating that "The court entertains the burdensome objection

only when the responding party demonstrates how the document is overly broad, burdensome, or

oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden.

The responding party cannot merely state, in conclusory fashion, that the requests are unduly

burdensome." (internal citations omitted)); *Am. Rock Salt Co., LLC v. Norfolk So. Corp.*, 228

F.R.D. 426, 432 (W.D.N.Y. 2004) (holding that "generalized objections that discovery requests

are vague, overly broad, or unduly burdensome are not acceptable, and will be overruled.").

Grace failed to support its objections adequately, and its generalized objections should be

overruled.

Grace also objected to production of documents responsive to Requests Nos. 12 and 17

on the purported basis of privilege. *See* Ex. 2 at pp. 8-9. Again, Grace did not comply with the

requirements of the Federal Rules of Civil Procedure. Specifically, Federal Rule of Civil

Procedure 26(b)(5), made applicable in this proceeding by Fed. R. Bankr. P. 7026, expressly requires:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

F.R.C.P. 26(b)(5). Grace provided no privilege log, or description of any kind to support its blanket claims of privilege.[2]

The case law is clear that, as with claims of burden and over breadth, blanket privilege objections are improper and will not be sustained. *See e.g. Burns v. Imagine Films Entertainment,* 164 F.R.D. 589, 594 (W.D.N.Y. 1996) (holding that "Rule 26(b)(5) requires that the party asserting the privilege or protection must specifically identify each document or communication, and the type of privilege or protection being asserted, in a privilege log."); *see also In re Lomas Financial Corp.*, 1999 WL 33495524, *5 (Bkrtcy. D. Del. 1999) (not reported) (holding that "Where a party invokes the attorney-client privilege or the work-product doctrine over a vast amount of material, courts regularly require that party to provide a privilege log."). Thus, Grace seeks to hide behind a claim of privilege despite its failure to comply with the applicable Rules of Civil Procedure.

It is clear that as a threshold matter, Grace's unsupported, blanket objections cannot excuse compliance with the Request for Production or the Rules of Civil Procedure.

---

[2] The Request for Production also contained an instruction that "[i]f there is a claim of privilege with respect to any document requested . . . provide a statement setting forth the basis for any claim of privilege and the specific privilege being asserted." Ex. 1, ¶¶ 5-6 at p. 3. Although Grace did indicate in a meet and confer that it would produce a privilege log, to date one has not been received.

**B.**    **THE LITIGATION FILES ARE RELEVANT AND WILL ASSIST IN THE ESTIMATION OF PROPERTY DAMAGE CLAIMS**

Grace objects to Requests Nos. 7 through 9 stating that the requests sought documents that were "irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence." Ex. 2 at p. 7. This argument is simply unfounded.

In order to estimate the asbestos property damage claims ("PD Claims"), the Committee must know the details of Grace's pre-petition valuation of PD Claims. The amount paid by Grace for the pre-petition settlement or resolution of PD Claims is highly material to an estimation of the cost of the outstanding post-petition PD Claims.[3] In fact, other bankruptcy courts have looked to the pre-petition settlement or resolution of asbestos claims in estimating the value of post petition claims. *See e.g. In re Eagle-Picher Industries, Inc.*, 189 B.R. 681, 690-91 (Bkrtcy. S.D. Ohio 1995) (involving the estimation of liability for asbestos-related personal injury claims in the Chapter 11 context). The *Eagle-Picher* case is instructive in this regard. Specifically, the *Eagle-Picher* court held that **"Valuation of claims should be based [in part] upon settlement values for claims close to the filing date of the bankruptcy case."** *Id.* (emphasis added).

Here, as in *Eagle-Picher*, the Litigation Files are both relevant and necessary to the estimation process. The Litigation Files contain a plethora of relevant information related to the settlement or resolution of pre-petition PD Claims. For example, it is appropriate to determine the characteristics of PD Claims which were settled to ascertain connections between the quality and quantity of proof advanced by claimants or in the possession of Grace and the settled value of the Claims. Similarly, information regarding the stage of litigation at the time of the settlement or resolution, including, for example, the fact and resolution of dispositive motions,

---

[3] Grace has already agreed to produce 'representative samples' of such documents. Representative samples are insufficient. The PD Committee has no means of determining how the samples were selected, why they were selected, and indeed if the samples are in fact 'representative.'

will be useful in analyzing the impact of such information on the manner in which the PD Claim was resolved.     The factors affecting the resolution of pre-petitions claim settlements or resolutions can then be compared with facts concerning extant PD Claims.    It is wholly insufficient for the Debtors to simply provide the PD Committee with a list of the pre-petition claims and their ultimate disposition or settlement amounts.    The information necessary to perform such an analysis can only be found in the Litigation Files and is indisputably relevant to the estimation process.

In addition to the relevance of the Litigation Files to the estimation, Grace itself has put the Litigation Files at issue in these proceedings.  For example, in Phase I Grace affirmatively and vehemently disputed the validity of dust sampling as a means to establish contamination in these proceedings, and in fact disputed the merits of dust sampling altogether. *See e.g. The Debtors' Response to the PD Committee's Opposition to Consideration of the Debtors' Proposed "Methodology Issue" as Part of the Estimation of Asbestos Property Damage Claims*, dated October 31, 2005 [Dkt. No. 10933].  The PD Committee has a clear right to review the Litigation Files to determine whether Grace itself has ever used dust sampling as a means of refuting contamination, whether Grace has ever accepted or recognized the validity of dust sampling in the pre-petition resolution of PD Claims or whether any of the Litigation Files otherwise concerned the use of dust sampling.

Given the broad parameters afforded discovery, the documents sought in the Request for Production have clear and unequivocal relevance to the issues raised in the proceedings.  It is axiomatic that pretrial discovery is "accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 407 (1947); *Marshall v. Electric Hose & Rubber Co.*, 68 F.R.D 287, 295 (D. Del. 1975); *In re Madden*, 151 F. 3d 125, 128 (3d Cir. 1998) (holding that pursuant to the Rules of Civil Procedure, absent a claim of privilege, a non-party can be compelled to produce any matter "relevant to the subject matter involved in the pending action" or "reasonably calculated to lead

MIAMI 972939.3 7481715537                                        6

to the discovery of admissible evidence"). Thus, "[a]lthough delineating the boundaries of appropriate discovery can be challenging and difficult, discovery will be permitted 'unless it is clear that the information sought can have **no possible bearing** upon the subject matter of the action.'" *Marshall*, 68 F.R.D at 295 *citing La Chemise Lacoste v. Alligator Co.*, 60 F.R.D. 164, 171 (D. Del. 1973) (emphasis added).

In fact, courts within the Third Circuit have recognized that:

> Where there is doubt over relevance, the rule indicates that the court should be permissive. *Heat and Control, Inc. v. Hester Industries, Inc.*, 785 F. 2d 1017, 1024 (Fed. Cir. 1986); *Josephs v. Harris Corp.*, 677 F. 2d 985, 995 (3d. Cir. 1982). The burden of showing that the requested discovery is not relevant is on the party resisting discovery. *Flora v. Hamilton*, 81 F.R.D. 576, 578 (M.D.N.C. 1978). Furthermore, a party objecting to discovery must state with specificity how each request is not relevant or is unduly burdensome, overly broad or oppressive. *Roesberg*, 85 F.R.D. at 296.

*In re Bell Atlantic Corp. Securities Litigation*, 1993 WL 514408, *3 (E.D. Pa.) (not reported). Grace, as the party objecting to the discovery sought, has the burden to prove the Litigation Files are not relevant. Grace has not and cannot carry its burden and its objections should be overruled.

## C.   THE LITIGATION FILES CANNOT REASONABLY BE OBTAINED FROM ANY OTHER SOURCE AND THE PD COMMITTEE SHOULD NOT BE REQUIRED TO SEEK THEM OUT

In addition to its broad and baseless objections, Grace also attempts to circumvent production of the Litigation Files by objecting to the production pursuant to Requests Nos. 7 through 9 "to the extent the documents requested are a matter of public record, equally available to the PD Committee as to Grace or otherwise in possession of claimants or other third parties." Ex. 2 at p. 7. Such an objection is patently unreasonable and improper.

### 1.   The PD Committee is Not Required to Seek the Litigation Files Elsewhere

Despite Grace's objection that the Litigation Files are available as public records or from third parties, federal law (including precedent from this Court) is clear that production from

Grace is proper even if the Litigation Files could be obtained from another source. *See Novartis Pharmaceuticals Corp. v. Eon Labs Mfg., Inc.*, 206 F.R.D. 392, 395 (D. Del. 2002) (holding that "If a corporate entity is deemed to be in 'control' of documents sought, a district court can compel the production of those documents, regardless of whether they are also in the possession and control of a non-party."); *see also Mead Corp. v. Riverwood Natural Resources Corp.*, 145 F.R.D. 512, 522 (D. Minn. 1992) (holding that "a contention that the requested documents have been obtained from another source will not relieve a party from the obligation to properly respond to a proper Request."). Consequently, Grace's responses to Requests Nos. 7 through 9, objecting to production to the extent the documents requested are a matter of public record and available by other means, is simply meritless.

## 2.   The Information Contained in Court Files Across the Country is Incomplete and Searching Them Out Would Be Time and Cost Prohibitive

Requiring the PD Committee to obtain such records from the public court files would place an undue burden on the PD Committee. Under Grace's argument, the PD Committee would be forced to visit dozens of courts across the country to inquire as to the existence of a case against Grace for property damage,[4] and then retrieve the court file assuming the court retained the records.[5] Such a process would be both time and cost prohibitive and result in an undue delay of these proceedings about which, we are confident, Grace would also complain. The Rules of Civil Procedure "should be construed to secure the just, speedy and inexpensive determination of actions." *Babcock & Wilcox Co. v. No. Carolina Pulp Co.,* 25 F. Supp. 596, 597 (D. Del. 1938) (discussing the Federal Rules of Civil Procedure relating to depositions and discovery). Grace's attempt to require the PD Committee to obtain the Litigation Files through

---

[4] Grace has provided the PD Committee with an incomplete list of settled cases and the state in which they were located. This information is insufficient to identify the jurisdiction in which the case was located.

[5] Courts do not retain court files indefinitely. For example, the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida maintains its closed court files for a period of only 5 years.

unreasonably expensive methods appears calculated to ensure that relevant evidence never surfaces.

Importantly, even if the PD Committee were able to retrieve all the court files expeditiously, which is not possible, the court records likely do not contain vital elements included in the Litigation Files. For example, a court file would not contain correspondence between the parties, expert reports, incomplete discovery, and information regarding settlements. Significant portions of pre-trial discovery are not ordinarily contained in a court file. *See e.g.* D. Del. L.R. 5.4 (which states "all requests for discovery under Fed. R. Civ. P. 31, 33 through 36, and 45, and answers and responses thereto, and all required disclosures under Fed. R. Civ. P. 26(a) shall be served upon other counsel or parties **but shall not be filed with the Court**.") (emphasis added). As discussed above, such information is vital to an analysis of what Grace used to assess prior claims and to determine their validity or invalidity. Such an analysis is indispensable to any estimation process which the Court in this case would undertake.

### 3.   The Information Contained in the Litigation Files Cannot Reasonably Be Obtained from Other Sources

Grace further objects to the production of the Litigation Files pursuant to Requests Nos. 7 through 9 on the grounds that the documents can be gleaned from claimants or other third parties. *See* Ex. 2 at p. 7. Such an objection is likewise wholly meritless. The Court should not require the PD Committee to locate and contact each of the plaintiffs or claimants who filed pre-petition claims or lawsuits against Grace. As with the objection that the PD Committee could retrieve the information from various court files, such a requirement would be prohibitively slow and expensive. Further, it is mere speculation that any plaintiff or claimant has maintained records, let alone complete records. Moreover, the use of any such material is likely to be challenged by Grace as unreliable or incomplete. Grace's attempt to evade production of the

Litigation Files by suggesting such an unreasonable and speculative method of discovery is improper.

### 4.  Grace Has the Litigation Files Collected and Organized

Grace's objections are particularly baseless in light of the fact that Grace has already acknowledged and identified the universe of claims and lawsuits that comprise the Litigation Files in correspondence between the parties. *See* Letter from J. Baer to M. Mora and S. Baena dated December 28, 2005, a copy of which is attached hereto as Exhibit 3. Although the Litigation Files are voluminous, the known universe of pre-petition claims, identified in the Debtors' Case Management System database, is comprised of 370 lawsuits, 124 claims not asserted in litigation, and 15 package settlements. *Id.* The Litigation Files already identified are located in Boca Raton, Florida, only a short distance from the undersigned counsel. Thus, given that the majority of the Litigation Files have already been located, Grace apparently seeks to avoid production solely because Grace would have to review its own Litigation Files for attorney client privilege and attorney work-product documents.[6]  In essence, Grace is attempting to avoid discovery simply because it would require effort to observe the parameters of the Federal Rules of Civil Procedure and comply with the Request for Production. A party cannot avoid discovery simply because compliance would create work for the party. *See e.g. Alexander v. Rizzo*, 50 F.R.D. 374, 376 (E.D. Pa. 1970) (denying a motion for protective order despite evidence that discovery would require hundreds of employees years to complete because "the Court need not determine the exact number of hours . . . nor the efficiency of the procedure . . .. It is sufficient to state that in the Court's opinion, taking into consideration the obvious necessity of this information sought to be discovered, we find that discovery should proceed at this time."); *see also Roesberg*, 85 F.R.D. at 296-97. In a case of this magnitude, discovery is at times

---

[6] The PD Committee did offer to enter into a stipulation with Grace which would permit Grace to pull-back any protected documents which are inadvertently produced. Grace rejected this proposal out of hand.

cumbersome and can involve large numbers of documents. The Litigation Files requested are not beyond the expected scope of this complex litigation.

Moreover, a privilege review is not an overwhelming task. If the documents are filed by ordinary litigation methods, most should require only a cursory review. Pleadings files would not contain privileged documents. Discovery files would likewise not ordinarily contain privileged documents. Correspondence files can be reviewed quickly and efficiently to determine whether the correspondence is between attorney and client, or a third party (such as an opposing party or an attorney). And attorney work files, such as notes and research that likely contain privileged documents, can be reviewed and catalogued efficiently. Accordingly, the burden in this case is not greater than ordinarily accompanies complex litigation.[7]

Thus, it is clear that Grace's unsubstantiated objection here, based on over breadth and undue burden, does not excuse compliance, particularly when Grace's own suggestions for alternate sources of the information are so patently unreasonable.

## III.
## CONCLUSION

Accordingly, for the foregoing reasons, the PD Committee respectfully requests that this Court order Grace to produce the documents responsive to Requests Nos. 7, 8, 9, 12 and 17.

## IV.
## RULE 7037 CERTIFICATION

Pursuant to Federal Rule of Bankruptcy Procedure 7037 and D. Del. L.R. 7.1.1, the PD Committee certifies that it has conferred with Debtors in a good faith effort to secure the information and documents sought by this motion without court action.

---

[7] As aforesaid, undersigned counsel would agree to return inadvertently produced privileged documents, without waiver of the privilege.

MIAMI 972939.3 7481715537                         11

WHEREFORE, the PD Committee respectfully requests that the Court schedule an expedited telephonic hearing on this motion, establish a response deadline of not later than one business day prior to such hearing, grant the relief requested in this motion and such other relief it deems necessary and appropriate.

Dated: February 14, 2006

FERRY, JOSEPH & PEARCE, P.A.

/s/ Theodore J. Tacconelli
Theodore J. Tacconelli (No.2678)
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899
(302) 575-1555

-and-

Scott L. Baena, Esquire
William K. Hill, Esquire
Jay M. Sakalo, Esquire
Bilzin Sumberg Baena Price
& Axelrod LLP
200 South Biscayne Boulevard
Suite 2500
Miami, FL 33131-2336
(305) 374-7580

Counsel for the Official Committee of
Asbestos Property Damage Claimants