## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

Chapter 11

**W.R. Grace & Co., <u>et</u> <u>al</u>.**

Case No. 01-01139 (JKF)

Debtors.

Jointly Administered

**NINETEENTH QUARTERLY FEE APPLICATION OF STROOCK & STROOCK
& LAVAN LLP FOR COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD
<u>FROM OCTOBER 1, 2005 THROUGH DECEMBER 31, 2005</u>**

| | |
|---|---|
| Name of Applicant | **Stroock & Stroock & Lavan LLP** |
| Authorized to Provide Professional Services to: | **Official Committee of Unsecured Creditors** |
| Date of Retention: | **April 12, 2001** |
| Period for which compensation and reimbursement is sought | **October 1, 2005 – December 31, 2005** |
| Amount of Compensation sought as actual, reasonable and necessary: | **$299,419.75** |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | **$5,838.28** |
| Fees and Expenses of the Asbestos Issues Expert | **$103,498.49** |

This is an: ☒ interim ☐ final application

This is the nineteenth quarterly application filed.

**Attachment A**

**Monthly Interim Fee Applications**

| Date Filed | Period Covered | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| May 30, 2001 D.I.339 | 4/12/01-4/30/01 | $138,926.00 | $1,975.13 | $111,140.80 | $1,975.13 |
| July 2, 2001 D.I.613 | 5/1/01 – 5/31/01 | $139,928.75 | $6,884.73 | $111,943.00 | $6,884.73 |
| July 30, 2001 D.I.772 | 6/1/01 – 6/30/01 | $91,019.00 | $10,458.14 | $72,815.20 | $10,458.14 |
| September 5, 2001 D.I.889 | 7/1/01-7/31/01 | $92,308.00 | $5,144.37 | $73,846.40 | $5,144.37 |
| October 2, 2001 D.I.983 | 8/1/01 8/31/01 | $53,873.50 | $3,069.88 | $43,098.80 | $3,069.88 |
| October 31, 2001 D.I.1058 | 9/1/01 – 9/30/01 | $58,742.00 | $6,801.32 | $46,993.60 | $6,801.32 |
| November 26, 2001 D.I.1239 | 10/1/01 – 10/31/01 | $101,069.00 | $3,562.09 | $80,855.20 | $3,562.09 |
| January 8, 2002 D.I.1470 | 11/1/01 – 11/30/01 | $136,368.50 | $8,847.34 | $109,094.80 | $8,847.34 |
| February 1, 2002 D.I.1608 | 12/01/01 – 12/31/01 | $92,064.50 | $9,471.47 | $73,651.60 | $9,471.47 |
| March 14, 2002 D.I.1812 | 01/01/02 – 01/31/02 | $100,231.50 | $14,675.58 | $80,185.20 | $14,675.58 |
| April 22, 2002 D.I.1951 | 02/01/02 – 02/28/02 | $88,974.50 | $16,863.97 | $71,179.60 | $16,863.97 |
| May 8, 2002 D.I.2029 | 03/01/02 – 03/31/02 | $77,964.25 | $1,190.44 | $62,371.40 | $1,190.44 |
| June 3, 2002 D.I.2156 | 04/01/02-04/30/02 | $97,251.50 | $1,816.40 (Stroock) $9,772.37 (Chambers) | $77,801.20 | $11,588.86 |

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| July 2, 2002 D.I.2324 | 05/01/02 – 05/31/02 | $74,910.75 | $2,9154.43 (Stroock) $43,190.69 (Chambers) | $59,928.60 | $46,105.12 |
| August 5, 2002 D.I.2495 | 06/01/02 – 06/30/02 | $73,096.75 | $2,054.05 (Stroock) $114,666.72 (Chambers) | $58,477.4011 | $116,720.77 |
| September 20, 2002 D.I.2720 | 07/01/02 – 07/31/02 | $90,903.27 | $1,250.79 (Stroock) $11,996.25 (Chambers) | $72,722.61 | $13,274.04 |
| October 29, 2002 D.I.2898 | 08/01/02 – 08/31/02 | $93,151.25 | $11,539.51 (Stroock) $5,046.70 (Chambers) | $74,521.00 | $16,586.21 |
| November 14, 2002 D.I.2981 | 09/01/02 - 09/30/02 | $96,613.25 | $15,567.77 (Stroock) $771.50 (Chambers) | $77,290.60 | $16,339.27 |
| December 10, 2002 D.I.3129 | 10/1/02 – 10/31/02 | $68,404.00 | $2,956.54 (Stroock) $1,780.75 (Chambers) | $54,723.20 | $4,737.29 |
| January 28, 2003 D.I.3286 | 11/1/02 – 11/30/02 | $75,345.50 | $8,712.16 (Stroock) | $60,276.40 | $8,712.16 |
| February 7, 2003 D.I.3349 | 12/1/02 – 12/31/02 | $27,683.50 | $13,332.14 (Stroock) | $22,146.80 | $13,332.14 |
| March 26, 2003 D.I.3552 | 1/1/03 – 1/31/03 | $88,139.00 | $1,210.11 (Stroock) | $70,511.20 | $1,210.11 |
| April 7, 2003 D.I.3626 | 2/1/03 – 2/28/03 | $76,313.00 | $2,022.78 (Stroock) $1,077.80 (Chambers) | $61,050.40 | $3,100.58 |
| April 29, 2003 D.I.3718 | 3/1/03 – 3/31/03 | $60,163.50 | $6,191.15 (Stroock) | $48,130.80 | $6,191.15 |
| June 2, 2003 D.I. 3850 | 4/1/03 – 4/30/03 | $60,269.00 | $814.02 (Stroock) $2,043.00 (Chambers) | $48,215.20 | $2,857.02 |
| July 1, 2003 D.I. 3983 | 5/1/03 – 5/31/03 | $111,990.50 | $691.84 (Stroock) $3,830.50 (Chambers) | $89,592.40 | $10,522.34 |
| August 5, 2003 D.I. 4152 | 6/1/03 – 6/30/03 | $43,824.00 | $1,220.42 (Stroock) $61,755.00 (Chambers) | $35,059.20 | $62,975.42 |
| September 4, 2003 D.I. 4381 | 7/1/03 – 7/31/03 | $79,090.50 | $2,301.33 (Stroock) $14,274.25 (Chambers) | $63,272.40 | $16,575.58 |

2

|  |  | Payment Requested |  | Payment Approved |  |
|---|---|---|---|---|---|
| September 30, 2003 D.I. 4512 | 8/1/03 – 8/31/03 | $69,927.00 | $1,164.19 (Stroock) $12,488.94 (Chambers) | $55,941.60 | $13,653.13 |
| October 29, 2003 D.I. 4625 | 9/1/03 – 9/30/03 | $69,409.50 | $1,076.94 (Stroock) $10,102.00 (Chambers) | $55,527.60 | $11,178.94 |
| December 19, 2003 D.I. 4843 | 10/1/03 – 10/31/03 | $96,980.50 | $3,800.45 (Stroock) $42,881.50 (Chambers) | $77,584.40 | $46,681.95 |
| January 23, 2004 D.I. 4976 | 11/1/03 – 11/30/03 | $66,428.50 | $1,225.38 (Stroock) $30,463.00 (Navigant f/k/a Chambers) | $53,142.80 | $31,688.38 |
| February 4, 2004 D.I. 5056 | 12/1/03 – 12/31/03 | $52,321.50 | $924.99 (Stroock) $27,005.00 (Navigant f/k/a Chambers) | $41,857.20 | $27,929.99 |
| March 17, 2004 D.I. 5309 | 1/1/04 – 1/31/04 | $65,980.50 | $1,917.93 (Stroock) $47,654.57 (Navigant f/k/a Chambers) | $52,784.40 | $49,572.50 |
| April 6, 2004 D.I. 5406 | 2/1/04 – 2/29/04 | $90,421.50 | $3,636.48 (Stroock) $35,492.50 (Navigant f/k/a Chambers) | $72,337.20 | $39,128.98 |
| April 28, 2004 D.I. | 3/1/04 – 3/31/04 | $103,524.00 | $5,567.34 (Stroock) | $82,819.20 | $5,567.34 |
| June 14, 2004 D.I. 5803 | 4/1/04 – 4/30/04 | $99,136.00 | $3,518.96 (Stroock) $1,515.00 (Navigant February) $49,667.00 (Navigant March) $80,307.11 (Navigant April) | $79,308.80 | $135,008.07 |
| July 2, 2004 D.I. 5917 | 5/1/04 – 5/31/04 | $134,324.50 | $2,409.97 (Stroock) $78,360.05 (Navigant May) | $107,459.60 | $80,770.02 |
| August 2, 2004 D.I. 6105 | 6/1/04 – 6/31/04 | $120,501.00 | $1,831.49 (Stroock) $62,625.00 (Navigant June) | $96,400.80 | $64,456.49 |

3

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 9, 2004<br>D.I. 6341 | 7/1/04 –<br>7/31/04 | $72,394.00 | $3,461.84 (Stroock)<br>$40,427.50 (Navigant July) | $57,915.20 | $43,889.34 |
| September 23, 2004<br>D.I. 6444 | 8/1/04 –<br>8/31/04 | $70,457.00 | $1,764.40 (Stroock) | $56,365.60 | $1,764.40 |
| October 14, 2004<br>D.I 6625 | 9/1/04 –<br>9/30/04 | $83,903.50 | $1,535.61 (Stroock)<br>$27,142.00 (Navigant August) | $67,122.80 | $28,677.61 |
| December 3, 2004<br>D.I. 7086 | 10/1/04 –<br>10/31/04 | $200,155.50 | $1,368.18 (Stroock)<br>$ 24,659.00 (Navigant September) | $160,124.40 | $26,027.18 |
| January 7, 2005<br>D.I. 7481 | 11/1/04 –<br>11/30/04 | $218,608.50 | $14,019.09 (Stroock)<br>$25,102.80 (Navigant October)<br>$27,972.34 (Navigant November) | $174,886.80 | $67,094.23 |
| February 2, 2005<br>D.I. 7667 | 12/1/04 –<br>12/31/04 | $235,503.70 | $10,442.92 (Stroock)<br>$62,687.97 (Navigant December) | $188,402.96 | $73,130.89 |
| March 15, 2005<br>D.I. 8026 | 1/1/05 –<br>1/31/05 | $187,168.00 | $4,411.55 (Stroock)<br>$15,686.00 (Navigant January) | $149,734.40 | $20,097.55 |
| April 1, 2005<br>D.I. 8155 | 2/1/05 –<br>2/28/05 | $108,180.25 | $8,102.85 (Stroock)<br>$18,303.37 (Navigant February) | $86,544.20 | $26,406.22 |
| April 29, 2005<br>D.I. 8305 | 3/1/05~ –<br>3/31/05 | $56,941.25 | $287.23 (Stroock)<br>$6,114.86 (Navigant March) | $45,553.00 | $6,402.09 |
| June 6, 2005<br>D.I. 8562 | 4/1/05-<br>4/30/05 | $127,695.00 | $3,531.45 (Stroock)<br>$20,129.06 (Navigant April) | $102,156.00 | $23,660.51 |
| June 28, 2005<br>D.I. 8704 | 5/1/05-<br>5/31/05 | $98,569.00 | $4,871.74 (Stroock) | $78,855.20 | $858.21 |

4

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| August 3, 2005 D.I. 9135 | 6/1/05- 6/30/05 | $114,903.75 | $4,871.74 (Stroock) $34,075.28 (Navigant June) | $91,923.00 | $38,947.02 |
| September 8, 2005 D.I. 9356 | 7/1/05 – 7/31/05 | $117,780.75 | $2,088.44 (Stroock) $2,211.00 (Navigant) | $94,224.60 | $4,299.44 |
| October 4, 2005 D.I. 9565 | 8/1/05 – 8/31/05 | $106,796.25 | $5,046.99 (Stroock) $18,550.00 (Navigant) | $85,437.00 | $23,596.99 |
| November 1, 2005 D.I. 10951 | 9/1/05 – 9/30/05 | $67,697.50 | $1,399.68 (Stroock) $11,197.50 (Navigant) | $54,158.00 | $12,597.18 |
| November 29, 2005 D.I. 11202 | 10/1/05 – 10/31/05 | $98,216.75 | $1,611.30 (Stroock) $11,582.50 (Navigant) | $78,573.40 | $13,193.80 |
| January 9, 2006 D.I. 11507 | 11/1/05 – 11/30/05 | $104,348.00 | $2,847.45 (Stroock) $71,598.50 (Navigant) | $83,478.40 | $74,445.95 |
| January 30, 2006 D.I. 11655 | 12/1/05 – 12/31/05 | $96,855.00 | $1,379.53 (Stroock) $20,317.49 (Navigant) | | |

5

**Quarterly Fee Applications**

| Date Filed | Period Covered | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| July 30, 2001 D.I.770 (First) | 4/12/01- 6/30/01 | $369,873.75 | $19,318.00 | $369,873.75 | $19,318.75 |
| November 1, 2002 D.I.1068 (Second) | 7/1/01 – 9/31/01 | $204,923.50 | $15,015.57 | $204,923.50 | $15,015.57 |
| February 8, 2002 D.I.1658 (Third) | 10/1/01 – 12/31/01 | $329,842.00 | $21,880.90 $9,918.43[*] | $329,842.00 | $21,880.90 (Stroock) $9,918.43 (Chambers) |
| May 16, 2002 D.I.2064 (Fourth) | 01/01/02 – 03/31/02 | $267,170.20 | $6,149.76 $36,352.60* | $266,865.70 | $6,144.85 (Stroock) $22,002.76 (Chambers) |
| August 16, 2002 D.I.2557 (Fifth) | 04/01/02 – 06/30/02 | $245,259.00 | $6,784.97 $167,629.78* | $245,259.00 | $6,784.97 (Stroock) $167,629.78 (Chambers |
| November 18, 2002 D.I.3045 (Sixth) | 07/01/02 – 09/30/02 | $280,471.77 | $28,358.07 $17,814.45* | $224,534.21[1] | $28,358.07 (Stroock)[1] $17,814,45 (Chambers)[1] |
| March 25, 2003 D.I.3549 (Seventh) | 10/01/02 – 12/31/03 | $171,108.00 | $25,000.84 $1,780.75* | $136,886.40[2] | $25,000.84 (Stroock)[2] $1,780.75 (Chambers)[2] |

---

[*]  These amounts relate to the Committee's Asbestos Issues Expert.

[1]  Court Order dated March 14, 2003 approved fees in the amount of $276,535.77 and expenses in the amount of $45,477.52.

[2]  Court Order dated July 28, 2003 approved fees in the amount of $171,108.00 and expenses in the amount of $26,412.62.

6

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| May 20, 2003<br>D.I. 3815<br>(Eighth) | 1/1/03 –<br>3/31/03 | $224,358.50 | $9,424.04<br>$1,077.80* | $224,615.50[3] | $9,424.04<br>(Stroock)[3]<br>$1,077.80<br>(Chambers)[3] |
| August 29, 2003<br>D.I. 4357<br>(Ninth) | 4/1/03 –<br>6/30/03 | $215,903.50 | $2,726.28<br>$67,628.50* | $215,903.50[4] | $2,726.28<br>(Stroock)[4]<br>$67,628.50<br>(Chambers)[4] |
| December 5, 2003<br>D.I. 4778<br>(Tenth) | 7/1/03 –<br>9/30/03 | $218,222.00 | $4,339.46<br>$36,865.19* | $218,222.00[5] | $4,339.46<br>(Stroock)[5]<br>$36,865.19<br>(Chambers)[5] |
| March 2, 2004<br>D.I. 5212<br>(Eleventh) | 10/1/03 –<br>12/31/03 | $215,718.50 | $5,950.82<br>$100,349.50* | $215,718.50[6] | $5,922.67<br>(Stroock)[6]<br>$100,349.50<br>(Chambers)[6] |
| May 18, 2004<br>D.I. 5597<br>(Twelfth) | 1/1/04 –<br>3/31/04 | $254,857.00 | $9,965.36<br>$83,147.07* | $254,857.00[7] | $9,965.36<br>(Stroock)[7]<br>$83,147.07<br>(Navigant)[7] |
| August 26, 2004<br>D.I. 6269<br>(Thirteenth) | 4/1/04 –<br>6/30/04 | $353,629.50 | $7,760.42<br>$272,474.16* | $353,629.50[8] | $7,760.42<br>(Stroock)[8]<br>$272,474.16<br>(Navigant)[8] |

---

[3] Court Order dated September 22, 2003 approved fees in the amount of $224,033.50 and expenses in the amount of $10,410.22.

[4] Amended Court Order dated December 23, 2003 approved fees in the amount of $215,903.50 and expenses in the amount of $70,354.78.

[5] Court Order dated April 26, 2004 approved fees in the amount of $218,222.00 and expenses in the amount of $41,204.65.

[6] Court Order dated June 16, 2004 approved fees in the amount of $215,718.50 and expenses in the amount of $106,272.17.

[7] Court Order dated September 27, 2004 approved fees in the amount of $254,857.00 and expenses in the amount of $93,011.96.

[8] Court Order dated January 25, 2005 approved fees in the amount of $353,629.50 and expenses in the amount of $280,234.58.

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| November 10, 2004 D.I. 6871 (Fourteenth) | 7/1/04 – 9/30/04 | $226,702.50 | $6,705.08 $67,569.50* | $226,702.50[9] | $6,705.08 (Stroock)[9] $67,569.50 (Navigant)[9] |
| February 22, 2005 D.I. 7851 (Fifteenth) | 10/1/04 – 12/31/04 | $653,133.20 | $25,830.19 $140,422.11* | $648,355.70[10] | $25,830.19 (Stroock)[10] $140,422.11 (Navigant)[10] |
| May 16, 2005 D.I. 8468 (Sixteenth) | 1/1/05- 3/31/05 | $352,289.50 | $12,746.23 $40,104.23* | $349,644.00 | $12,746.23 (Stroock)[11] $40,104.23 (Navigant) |
| August 19, 2005 D.I. 9225 (Seventeenth) | 4/1/-5 – 6/30/05 | $340,821.25 | $9,261.40 $54,204.34* | $340,096.25[12] | $9,261.40 (Stroock) $54,204.34 (Navigant) |
| November 18, 2005 D.I. 11118 (Eighteenth) | 7/1/05 – 9/30/05 | $291,843.50 | $8,534.71 $31,958.50 | | |

---

[9]     Court Order dated March 22, 2005 approved fees in the amount of $226,702.50 and expenses in the amount of $74,274.58.

[10]    Court Order dated June 29, 2005 approved fees in the amount of $648,335.70 and expenses in the amount of $166,252.30.

[11]    Court Order dated September 27, 2005 approved fees in the amount of $349,644.00 and expenses in the amount of $52,850.46.

[12]    Court Order dated December 19, 2005 approved fees in the amount of $340,096.25 and expenses in the amount of $63,465.74.

8

**WR GRACE & CO**
**ATTACHMENT B**
**OCTOBER 1, 2005 - DECEMBER 31, 2005**

| | Hours | Rate | Amount | No. of Years In Position |
|---|---|---|---|---|
| **Partners** | | | | |
| Dibernardo, Ian G. | 20.7 | $550 | $11,385.00 | 1 |
| Kruger, Lewis | 43.8 | 795 | 34,821.00 | 35 |
| Pasquale, Kenneth | 70.5 | 605 | 42,652.50 | 7 |
| Schneider, Bruce H. | 0.2 | 695 | 139.00 | 23 |
| Speiser, Mark A. | 3.1 | 735 | 2,278.50 | 19 |
| | | | | |
| **Associates** | | | | |
| Cutler, Ilana | 9.8 | 250 | 2,450.00 | 1 |
| Berg, Madelaine | 0.3 | 550 | 165.00 | 26 |
| Krieger, Arlene G. | 304.8 | 550 | 167,640.00 | 21 |
| Papir, Ryan M. | 34.9 | 360 | 12,564.00 | 1 |
| Thomison, Jessamy K. | 30.6 | 320 | 9,792.00 | 3 |
| | | | | |
| **Paraprofessionals** | | | | |
| Lawler, Elizabeth B. | 36.8 | 210 | 7,728.00 | 1 |
| Mohamed, David | 87.9 | 130 | 11,427.00 | 16 |
| | | | | |
| **TOTAL** | 643.4 | | $303,042.00 | |
| **LESS 50% TRAVEL** | (5.7) | | (3,622.25) | |
| **TOTAL** | 637.7 | | $299,419.75 | |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **W. R. GRACE & CO., et al.**[1] | ) | **Case No. 01-01139 (JKF)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

**NINETEENTH QUARTERLY FEE APPLICATION BY STROOCK & STROOCK &
LAVAN LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF W. R. GRACE & CO., et al, FOR INTERIM COMPENSATION AND
FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED
DURING THE PERIOD FROM OCTOBER 1, 2005 THROUGH DECEMBER 31, 2005**

Stroock & Stroock & Lavan LLP ("Stroock" or "Applicant"), counsel to the Official

Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co. ("Grace") and its

sixty-one domestic subsidiaries and affiliates that are debtors and debtors-in-possession (the

"Debtors") in this Court, for its application pursuant to 11 U.S.C. §§ 330 and 331 and in

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals,
Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land
Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace,
Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants,
Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G
C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace
Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp.,
Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical
Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation,
Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services
Corporation, Grace International Holdings. Inc. (f/k/a Dearborn International Holdings, Inc.), Grace
Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon
Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R.
Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc.,  Guanica-Caribe Land Development Corporation,
Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty,
Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management,
Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA
Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a
British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management,
Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water
Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-
Gulch West Coal Company, and H-G Coal Company.

accordance with the Administrative Fee Order (defined below) for interim allowance of

compensation for services rendered and for reimbursement of expenses incurred in connection

therewith, respectfully represents as follows:

## INTRODUCTION

1.      By this application (the "Application"), Stroock seeks (i) an interim allowance of

compensation for the professional services rendered by Stroock as counsel for the Committee for

the period from October 1, 2005 through December 31, 2005 (the "Compensation Period") in the

aggregate amount of $299,419.75 representing 518.7 hours of professional services and 124.7

hours of paraprofessional services; and (ii) reimbursement of actual and necessary expenses

incurred by Stroock during the Compensation Period in connection with the rendition of such

professional services and paraprofessional services in the aggregate amount of $5,838.28, as well

as the fees and expenses of the asbestos issues expert employed by the Committee pursuant to

the Court's June 22, 2001 Order Authorizing the Retention of Experts (the "Asbestos Issues

Expert") in respect of services rendered in the months of October, November and December of

2005 in the aggregate amount of $103,498.49.


2.      Venue of this proceeding and this Application is proper in this district pursuant to

28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are 11 U.S.C.

§§ 330 and 331 and Federal Rules of Bankruptcy Procedure 2002(a) and 2016.


## BACKGROUND

3.      On April 2, 2001 (the "Petition Date"), each of the Debtors filed voluntary

petitions for reorganization under chapter 11 of the Bankruptcy Code and have continued in the

management and operation of their businesses and property pursuant to §§ 1107 and 1108 of the

2

Bankruptcy Code.  Pursuant to an order of the Court, the Debtors' chapter 11 cases have been procedurally consolidated and are being jointly administered.

4.     The Debtors operate a world-wide specialty chemicals and materials business and employ approximately 3860 full and part-time employees.  On a consolidated basis, for the fiscal year 2000, Grace reported a net loss of $89.7 million[2] from $1.59 billion in net revenues.  The Debtors' bankruptcy filings report that in fiscal year 2000, on a consolidated basis, Grace's sales are generated approximately 50% by the Debtors and 50% by the Debtors' non-debtor subsidiaries and affiliates.

5.     On April 12, 2001, the United States Trustee formed the Committee.  During the first meeting of the Committee on April 12, 2001, the Committee duly selected Stroock as its counsel to represent the Committee in all matters during the pendency of the Debtors' Chapter 11 cases.  The Committee thereafter approved the retention of Duane, Morris & Heckscher LLP (n/k/a Duane Morris LLP) ("DM&H") as its local Delaware counsel.  On December 3, 2003, a second amended notice of appointment of the Committee was filed by the United States Trustee.

6.     The United States Trustee also appointed two separate official committees to represent the interests of claimants asserting asbestos-related personal injury claims and asbestos-related property damage claims against the Debtors (collectively, the "Asbestos Claim Committees").  On June 18, 2001, the United States Trustee appointed an official committee to represent the interests of equity security holders of the Debtors (the "Equity Committee").

---

[2]     The Debtors' pleadings further reported that this net loss resulted in part from a $294.0 million asbestos-related charge to earnings recorded in the fourth quarter of 2000.

7.    By order dated May 24, 2004, the Court authorized the appointment of a legal representative for future asbestos claimants (the "Futures Representative").

8.    By application dated May 1, 2001, Stroock sought Court approval for its retention as counsel to the Committee nunc pro tunc to April 12, 2001. The Court signed an order approving Stroock's retention as counsel to the Committee on May 30, 2001.

9.    This is the nineteenth quarterly interim application Stroock has filed with the Court for an allowance of compensation and reimbursement of expenses for services rendered to the Committee. This Application is submitted pursuant to the terms of the Administrative Order Under §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, approved by the Court on May 3, 2001 as amended by order dated April 19, 2002 (collectively, the "Administrative Fee Order").

10.   In accordance with the procedures established by the Administrative Fee Order, Stroock had, at the time of filing of this Application, received payment from the Debtors for 80% of the fees and 100% of Stroock's expenses requested, and not objected to, in the October 2005 fee statement encompassed within this Compensation Period. Stroock has not yet received payment for the fees and expenses requested in the November 2005 fee statement for which a certificate of no objection has been filed, or for the December 2005 fee statement. In addition, Stroock has received payment from the Debtors in the amount of $11,582.50, representing the fees and expenses of Navigant Consulting, Inc. ("Navigant") formerly known as Chambers Associates, the Asbestos Issues Expert for the Committee, for the month of October 2005, but

4

has not received payment in respect of the fees and expenses of the Asbestos Issues Expert for

the months of November and December 2005. Applicant has received no other payments and no

promises for payment from any source for services rendered in connection with these cases for

the months encompassing this Compensation Period other than as immediately set forth above.

There is no agreement or understanding between the Applicant and any other person (other than

members of Stroock) for the sharing of compensation to be received for the services rendered in

these cases.

11.    As stated in the Affidavit of Kenneth Pasquale, Esq. annexed hereto as Exhibit

"A," all of the services for which interim compensation is sought herein were rendered for and

on behalf of the Committee solely in connection with these cases.

## SUMMARY OF SERVICES RENDERED

12.    Since being retained by the Committee, Stroock has rendered professional

services to the Committee as requested and as necessary and appropriate in furtherance of the

interests of the unsecured creditors of the Debtors' estates. The variety and complexity of these

cases and the need to act or respond on an expedited basis in furtherance of the Committee's

needs have required the expenditure of substantial time by personnel from several legal

disciplines, on an as-needed basis, including in certain instances, working into the evening and

on weekends.

13.    Stroock maintains written records of the time expended by attorneys and

paraprofessionals in the rendition of their professional services to the Committee. Such time

records were made contemporaneously with the rendition of services by the person rendering

such services and in the ordinary course of Stroock's practice, and are presented in compliance

5

with Delaware Local Rule 2016-2(d) amended effective as of September 1, 2002. A compilation

showing the name of the attorney or paraprofessional, the date on which the services were

performed, a description of the services rendered, and the amount of time spent in performing the

services during the Compensation Period is annexed hereto as Exhibit "B". In addition, Exhibit

"C" hereto contains a summary of the hours expended by each of the attorneys and

paraprofessionals during the Compensation Period, their normal hourly rates, and the value of

their services.

14.    Stroock also maintains records of all actual and necessary out-of-pocket expenses

incurred in connection with the rendition of its professional services, all of which are also

available for inspection. A schedule of the categories of expenses and amounts for which

payment is requested is annexed hereto as Exhibit "D".

15.    Stroock respectfully submits that the professional services that it rendered on

behalf of the Committee were necessary and have directly benefited the creditor constituents

represented by the Committee and have contributed to the effective administration of these cases.

16.    The following summary of the services rendered during the Compensation Period

is not intended to be a detailed description of the work performed, as those day-to-day services

and the time expended in performing such services are fully set forth in Exhibit "B". Rather, it is

merely an attempt to highlight certain of these areas in which services were rendered to the

Committee, as well as to identify some of the problems and issues to which Stroock was required

to direct its attention.

6

**Claim Analysis Objection, Resolution & Estimation (Asbestos) -- Category 0003**

17.    As reflected in prior compensation applications, in mid-November 2004, the Debtors filed a reorganization plan and numerous related pleadings including their motion seeking the estimation of asbestos claims and the establishment of a schedule and procedures for carrying out the estimations (the "Estimation Motion") and their motion to establish post-confirmation litigation protocols for liquidating asbestos claims (the "Case Management Motion").

18.    During the prior Compensation Period, the Court approved a form of case management order ("CMO") to govern the estimation of asbestos personal injury claims (the "PI CMO") and the related form of questionnaire (the "Questionnaire") to be used by asbestos personal injury claimants who had commenced pre-petition litigation against the Debtors (the "PI Pre-Petition Litigation Claimants") and two case management orders for property damage claims the ("PD CMOs"); one to govern the Debtors' claims objection process and the other to govern the estimation of property damage claims ("PD Claims").

19.    During this Compensation Period, Stroock attended to numerous estimation and discovery-related matters, including reviewing deposition transcripts from prior litigation in these cases to assess their potential use by the Committee in the estimations, attending to a number of estimation-related issues identified by Navigant Consulting, the Committee's asbestos issues expert; attending to a number of extended conference calls with representatives of all parties in interest with respect to Grace's discovery production to the PI Committee; reviewing the discovery produced by Grace to the PD Committee; reviewing expert filings filed by Grace

7

and by the PD Committee relating to the issues of constructive notice and dust sampling methodology and the parties' respective briefs on those issues; preparing for and attending the three depositions held during the Period; and attending to the various pleadings addressing the disallowance or validity of myriad different categories of PD Claims.

20.    In addition, as reported in the prior compensation application, the Debtors had filed (i) a motion seeking authorization to take discovery of counsel representing the PI Pre-Petition Litigation Claimants and approval for a form of questionnaire for that purpose, and (ii) a motion seeking to expand the preliminary injunction to include all pending state court actions and other similar actions to be filed against the State of Montana with respect to alleged exposure to asbestos caused by the Debtors (the "Montana Injunction Motion"). During this Compensation Period, Stroock reviewed the various pleadings filed in opposition to these motions, and reviewed the Debtors' motion seeking to have a bar date established for PI Pre-Petition Claims and the opposing pleadings filed thereto, and, as reflected in other categories of services rendered by Stroock, informed the Committee of all such matters. Stroock has expended 148.4 hours on this category for a fee of $74,454.50.

### Asset Analysis and Recovery -- Category 0008

21.    During this Compensation Period, Stroock reviewed and provided comment to Capstone on its proposed memorandum to the Committee discussing the proposed acquisition by non-debtor affiliates of Grace of a concrete products-related company and then discussed with Capstone Grace's decision not to pursue the acquisition. Stroock has expended 0.8 hours on this category for a fee of $440.00.

8

## Asset Dispositions, Sales, Uses and Leases (Section 363) - Category 0009

22.     During this Compensation Period, Stroock attended to the Debtors' motion

seeking authorization to enter into a long-term ground lease for, and provide a purchase option

with respect to, a portion of the Debtors' Woburn, Massachusetts property.  Stroock reviewed the

lease and purchase option documentation, prepared with Capstone and Navigant requests for

additional information from the Debtors, participated on a lengthy conference call with the

Debtors' representatives and thereafter reviewed and provided comment to Capstone on its

memorandum to the Committee discussing this proposed transaction.  Stroock has expended 13.3

hours on this category for a fee of $7,315.00.[3]

## Business Operations -- Category 0013

23.     During this Compensation Period, Stroock reviewed the Company's third quarter

2005 financial package, and Capstone's report on the Company's third quarter 2005 operations

and year to date results, and discussed the same with Capstone.  In addition, Stroock was

informed of an agreement the Debtors reached to prepay royalties that they were otherwise

obligated to pay annually based on the sales of certain products over the next ten years.  Stroock

reviewed information obtained on the transaction, Capstone's financial analysis thereof, case law

relevant to an issue raised by the proposed transaction and prepared a memorandum on this

matter to the Committee.  Stroock has expended 14.3 hours on this category for a fee of

$6,715.00.

---

[3]     These figures reflect the inclusion of 0.1 hours of services and $55.00 in fees that were reflected in
Category 0023 - Executory Contracts/Unexpired Leases in Stroock's October 2005 fee statement.

**Case Administration -- Category 0014**

24.     As reported in prior monthly compensation applications, these chapter 11 cases

were reassigned to District Court Judge Alfred Wolin in November 2001 and referred to

Bankruptcy Court Judge Judith Fitzgerald, and then reassigned to District Court Judge Ronald L.

Buckwalter following Judge Wolin's recusal from these cases.

25.     During this Compensation Period, Stroock continued to closely monitor the items

on the Court's general chapter 11 docket for these cases, as well as those dockets relating to each

of the adversary proceedings pending in these chapter 11 cases, to ensure that the Committee was

fully informed about all pending motions and adversary proceedings and that Stroock would be

ready to timely respond on behalf of the Committee, as might be applicable.  Stroock continued

to engage Debtors' counsel and Capstone on an on-going basis with respect to pending matters

and information requests, and reviewed agenda notices prepared for Judge Fitzgerald during the

Compensation Period in respect of the hearings scheduled to be held each month during the

period.  In addition, during this Compensation Period, Stroock and the Debtors' representatives

engaged in a number of conference calls during which pending motions and upcoming matters

were discussed, as were various estimation and plan-related issues.  Also during this

Compensation Period, Stroock prepared a response to the Fee Auditor's initial report on

Stroock's Seventeenth Quarterly Fee Application and filed and served the Committee's joinder

to the Debtors' designation of expert witness categories.  Stroock has expended 117.8 hours on

this category for a fee of $30,764.00.

10

### Claims Analysis, Objection and Resolution (Non-Asbestos) -- Category 0015

26.     The Debtors filed a motion during this Compensation Period seeking approval for

a stipulation they entered into with Bank of America, which entity had issued three pre-petition

standby letters of credit in an aggregate amount in excess of $18.6 million.  Stroock reviewed

this motion and the stipulation requested, and discussed this matter with counsel for Debtors and

for B of A.  Subsequently, Stroock reviewed a related proposed stipulation with National Union.

Stroock has expended 3.0 hours on this category for a fee of $1,650.00.

### Committee, Creditors' Noteholders' or Equity Holders' -- Category 0017

27.     During this Compensation Period, Stroock communicated with the members of

the full Committee through numerous memoranda and telephone calls.  In order to keep the

Committee fully informed of all of the pending matters in these cases, and thus enable the

Committee to take informed positions on those issues, Stroock reviewed and summarized the

motions, other pleadings and notices filed by the Debtors and other parties in interest in these

cases and the responses filed, raised issues the Committee should be aware of, and made

recommendations to the Committee concerning appropriate actions to be taken with regard to the

pleadings, communicated with members of the Committee regarding the positions to be taken,

engaged counsel for the Debtors, and other parties and movants, as applicable, with the

Committee's questions and concerns, negotiated whenever and to the extent possible consensual

resolutions of outstanding issues and acceptable forms of proposed orders and advised the

Committee of the Court's rulings.

28.     The motions, settlement agreements, and other materials Stroock reviewed during

this Compensation Period, prepared memoranda to the Committee on and discussed with the

11

Committee, as applicable, included, among other matters, (i) the Debtors' motion to enjoin the Hamilton Action, related complaint seeking declaratory and injunctive relief, and motion to transfer venue of the Hamilton Action; (ii) pleadings by the NJDEP to remand the Action back to State Court and to dismiss Debtors' complaint and motion; (iii) Debtors' motion for a bar date for PI Pre-Petition Litigation Claimants and all responsive pleadings thereto; (iv) Debtors' motion seeking to retain Bear Stearns as their financial advisor in connection with an acquisition under discussion and the compromise ultimately reached on a modified fee structure for Bear Stearns; and (v) the revised form of Intercat Settlement Agreement and related documents.

29.     In addition, Stroock prepared memoranda to the Committee discussing the omnibus hearings held before Judge Fitzgerald and a number of memoranda addressing the Committee's negotiations with the Debtors over revising the post-petition interest rate for bank debt holders under a plan and discussions with the Debtors over the pending exclusivity extension request.

30.     Through its correspondence and communication with the Committee, Stroock has assisted the Committee in fulfilling its statutory duties to make informed decisions and express the Committee's views regarding the issues which arise in these cases, to support the establishment of appropriate processes for the estimation of the Debtors' asbestos liabilities, and participate in the estimation proceedings and in the preparation of a plan providing appropriate treatment for the creditors represented by the Committee.  Stroock has expended 122.1 hours on this category for a fee of $71,591.50.

### Fee Application, Applicant -- Category 0018

31.     During this Compensation Period, Stroock prepared its fee statements for the
months of September 2005, October 2005 and November 2005, and related notices and
certifications of no objection.  Stroock also prepared its Eighteenth Quarterly Fee Application
covering the period from July 1, 2005 through September 30, 2005 (the "Prior Compensation
Application"), including a narrative section summarizing the services rendered during that period
by Stroock and numerous fee and expense schedules, as required by the Administrative Fee
Order entered by the Court.  Stroock has expended 48.9 hours on this category for a fee of
$16,276.50.

### Creditor Inquiries -- Category 0019

32.     During this Compensation Period, Stroock responded to a number of inquiries
from unsecured creditors with respect to the status of estimating asbestos liabilities and related
issues, the status and prospects for asbestos legislation and the impact of the proposed legislation
on the Debtors' Amended Plan and chapter 11 cases, the status of the ZAI matters and the results
of the hearings held during this Period.  Stroock has expended 2.7 hours on this category for a
fee of $1,584.00.

### Fee Application, Others -- Category 0020

33.     During this Compensation Period, Stroock prepared notices and certifications
with respect to Capstone's monthly fee statements for the months of August, September and
October 2005 and with respect to Capstone's seventh quarterly fee application.  Stroock has
expended 7.8 hours on this category for a fee of $1,138.00.

13

## Environmental Matters/Regulations/Litigations -- Category 0022

34.     During this Compensation Period, the Debtors sought to recharacterize certain claims filed as asbestos claims as environmental claims entitled to treatment as general unsecured claims under the Debtors' Amended Plan. Stroock discussed these recharacterizations with Debtors' counsel and Navigant Consulting. In addition, Stroock reviewed the decision issued against Grace by the Ninth Circuit Court of Appeals dated December 1, 2005 affirming the District Court's award of $54.53 million to the EPA as reimbursement for costs it incurred in Libby, Montana and declaring that Grace would be liable to the EPA for future clean-up costs. Stroock has expended 5.8 hours on this category for a fee of $3,375.00.

## Litigation and Litigation Consulting -- Category 0032

35.     During the prior compensation period, the Debtors filed a motion seeking approval of a settlement of a pending patent infringement litigation with Intercat, Inc. Stroock reviewed the motion, the most current drafts of the agreements comprising the proposed settlement, discussed this matter with Debtors' in-house and outside intellectual property counsel, obtained and reviewed additional information and documentation from counsel for our analysis, prepared a comprehensive memorandum for the Committee discussing the settlement and identifying material provisions remaining to be negotiated and memorialized into the settlement, and prepared and filed with the Court on behalf of the Committee an objection to the Court's approval of the Intercat Settlement.

36.     During this Compensation Period, Stroock was provided with a revised completed version of the Settlement Agreement and related Option Agreement and License Agreement, which the Debtors believed to be in substantially final form. Stroock reviewed the revised

14

documents, raised several issues with Debtors' in-house counsel and recommended modifications to address those issues, prepared further memoranda for the Committee and after the outstanding matters were addressed, the Debtors sought and obtained the Court's approval for the Intercat Settlement as revised.

37.    Also during the prior compensation period, the Debtors filed with the Court a motion seeking to enjoin the civil action (the "Action") commenced by the New Jersey Department of Environmental Protection ("NJDEP") in New Jersey State Court (the "State Court") against Grace and two individual defendants in connection with Grace's former vermiculite processing plant in Hamilton, New Jersey (the "Hamilton Plant"), and a related complaint seeking declaratory and injunctive relief, and with the United States District Court for the District of New Jersey a related notice removing the Action to the District Court.

38.    During this Compensation Period, Stroock reviewed the pleadings filed by the NJDEP, including pleadings seeking to remand the action back to State Court and to dismiss Debtors' complaint for declaratory and injunctive relief and in opposition to Debtors' injunction motion, reviewed case law cited to therein and prepared supplemental memorandum to the Committee on these matters.  Stroock has expended 42.2 hours on this category for a fee of $23,316.50.

### Travel – Non Working -- Category 0035

39.    Stroock's fees in this category during this Compensation Period relate to travel to and/or from Wilmington, Delaware for hearings before Judge Fitzgerald in October 2005 and November 2005, and to travel attendant to the depositions of Dr. Flynn and Dr. Ray Harron. Stroock has expended 11.5 hours on this category for a fee of $7,334.50.

15

## Plan and Disclosure Statement -- Category 0036

40.    During the August 29, 2005 omnibus hearings, Judge Fitzgerald extended the

Debtors' exclusive period to file a plan through December 19, 2005.  During this Compensation

Period, the Debtors filed a motion seeking to further extend their exclusive filing period through

and including the 90th day after a final order is issued in the estimation hearing.  Stroock

reviewed Debtors' motion and responses filed in opposition thereto and the Debtors' reply and

discussed the proposed extension with the Committee.  Stroock also discussed the Committee's

position on the proposed exclusivity extension as well as the status of plan negotiations with

Debtors' representatives on a number of conference calls.  Stroock expended 25.4 hours on this

category for a fee of $13,112.50.[4]

## Hearings -- Category 0037

41.    During this Compensation Period, Judge Fitzgerald held three omnibus hearing in

Wilmington, Delaware and a hearing in Pittsburgh to address certain PD Claims-related matters.

Stroock reviewed all relevant pleadings, orders, stipulations and other documentation in advance

of the hearings, which as already described in this Application addressed a variety of motions

and issues, prepared for and attended the hearings and advocated the Committee's positions, as

appropriate.  Stroock expended 61.2 hours on this category for a fee of $34,485.00.

## Employment Applications – Others -- Category 0040

42.    As reflected in other categories in this Application, during this Compensation

Period, the Debtors filed a motion seeking approval to retain Bear Stearns & Co., Inc. ("Bear

Stearns") as their financial advisor in connection with an acquisition the Debtors were exploring

---

[4]    These figures reflect the inclusion of 0.1 hours of services and $55.00 in fees that were reflected in
Category 0034 – Litigation/Fraudulent Conveyance in Stroock's October 2005 fee statement

16

(the "Motion"). Stroock reviewed the Motion and relevant case law, discussed the proposal to compensate Bear Stearns with Capstone and communicated the terms of the retention to the Committee. The Committee determined to oppose the Motion if the proposed compensation arrangements were not modified in a manner the Committee believed acceptable. Stroock and Capstone engaged Debtors' counsel and Bear Stearns in discussions to see if a consensual modification could be agreed to and, at the same time, Stroock prepared a limited objection to the Motion, in the event an agreement was not able to be reached. Ultimately, Bear Stearns and the Debtors agreed to a modification acceptable to the Committee and the Committee's limited objection was not filed. Stroock also discussed with Debtors' counsel during this Period the objections raised by the U.S. Trustee to the Motion, and attended to the objection filed by the U.S. Trustee, the Debtors' arguments in reply to the U.S. Trustee and case law relevant to the arguments to be made during the November 14, 2005 hearing. Stroock expended 15.0 hours on this category for a fee of $8,190.00.

### Relief from Stay Proceedings – Category 0041

43.    During this Compensation Period movant, BDM Construction Company ("BDM"), filed a motion seeking relief from the stay so that it could prosecute the cross-complaint BDM filed against the Debtors, and liquidate and satisfy its claim against the Debtors from Debtors' available insurance policies. Stroock review the motion and prepared a memorandum discussing this matter. Stroock expended 3.2 hours on this category for a fee of $1,300.00.

17

## FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

44.    The factors to be considered in awarding attorneys fees have been enumerated in

In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), reh'g denied, 547

F.2d 573, cert. denied, 431 U.S. 904; these standards have been adopted by most courts. Stroock

respectfully submits that a consideration of these factors should result in this Court's allowance

of the full compensation sought.

> The Time and Labor Required.  The professional services rendered by
> Stroock on behalf of the Committee have required the expenditure of
> substantial time and effort, as well as a high degree of professional
> competence and expertise, in order to deal with the complex issues
> encountered by the Committee with skill and dispatch.  Occasionally,
> Stroock has been required to perform these services under significant time
> constraints requiring work late into the evening and on weekends.  The
> services rendered by Stroock were performed efficiently, effectively and
> economically.

> The Novelty and Difficulty of Questions.  Novel and complex issues have
> already arisen in the course of these Chapter 11 cases, and it can be
> anticipated that other such issues will be encountered.  In this case, as in
> many others in which the firm is involved, Stroock's effective advocacy
> and creative approach have helped clarify and resolve such issues and will
> continue to prove beneficial.

18

The Skill Requisite to Perform the Legal Services Properly. Stroock believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Stroock's practice, and its creative approach to the resolution of issues, are and will continue to contribute to the maximization of the distributions to the Debtors' unsecured creditors.

The Preclusion of Other Employment by Applicant Due to Acceptance of the Case. Due to the size of Stroock's insolvency department, Stroock's representation of the Committee has not precluded its acceptance of new clients. However, the volume of the matters needing attention on a continuing basis has required several of the attorneys to commit significant portions of their time to these cases.

The Customary Fee. The fee sought herein is based upon Stroock's normal hourly rates for services of this kind. Stroock respectfully submits that the fee sought herein is not unusual given the magnitude and complexity of these cases and the time expended in attending to the representation of the Committee, and is commensurate with fees Stroock has been awarded in other cases, as well as with fees charged by other attorneys of comparable experience.

Whether the Fee is Fixed or Contingent. Pursuant to §§ 330 and 331 of the Bankruptcy Code, all fees sought by professionals employed under

19

§ 1103 of the Code are contingent pending final approval by this Court, and are subject to adjustment dependent upon the services rendered and the results obtained.

Time Limitations Imposed by Client or Other Circumstances.  As already indicated, Stroock has attended to the various issues arising in these cases. Occasionally, Stroock has had to perform those services under significant time constraints requiring attorneys assigned to these cases to work evenings and on weekends.

The Amount Involved and Results Obtained.  Through the efforts of Stroock, the Committee has been an active participant in these Chapter 11 cases from the very first days of its formation, and its assistance, as well as constructive criticism, has greatly contributed to the efficient administration of these cases.

The Experience, Reputation and Ability of the Attorneys.  Stroock has one of the largest and most sophisticated insolvency practices in the nation and has played a major role in numerous cases of national import including: Acme Metals, Inc., Hillsborough Holdings Corporation, Laclede Steel Company, Gulf States Steel, Inc. of Alabama, The LTV Corporation, Wheeling-Pittsburgh Steel Corporation, Allis-Chalmers Corporation, The Charter Company, Federated Department Stores, G. Heileman Brewing Company, Inc., Burlington Motor Holdings, Inc., Metallurg, Inc.,

20

<u>Forstmann & Company, Inc.</u>, <u>Barneys, Inc.</u>, <u>Fruehauf Trailer Corporation,</u>
<u>Levitz Furniture Incorporated</u>, <u>The Columbia Gas System, Inc.</u>, <u>JWP, Inc.</u>,
<u>Flushing Hospital and Medical Center</u>, <u>Planet Hollywood International,</u>
<u>Anchor Glass Container Corporation, Beloit Corporation in the</u>
<u>Harnischfeger Industries Chapter 11 Cases, RSL COM U.S.A. Inc, USG</u>
<u>Corporation, Formica Corp. Galey & Lord, Inc. and DESA Holdings</u>.
Stroock's experience enables it to perform the services described herein
competently and expeditiously.  In addition to its expertise in the area of
corporate reorganization, Stroock has already frequently called upon the
expertise of its partners and associates in the litigation, ERISA, tax,
environmental and intellectual property law areas to perform the wide
ranging scope of the legal work necessitated by these cases.

<u>The "Undesirability" of the Case</u>.  These cases are not undesirable, but as
already indicated, have required a significant commitment of time from
several of the attorneys assigned hereto.

<u>Nature and Length of Professional Relationship</u>.  As described above,
Stroock has been actively rendering services on behalf of the Committee
as necessary and appropriate from April 12, 2001 through to the present.

## ALLOWANCE OF COMPENSATION

45.    The professional services rendered by Stroock required a high degree of
professional competence and expertise so that the numerous issues requiring evaluation and
determination by the Committee could be addressed with skill and dispatch and have, therefore,

21

required the expenditure of substantial time and effort. It is respectfully submitted that the

services rendered to the Committee were performed efficiently, effectively and economically,

and the results obtained to date have benefited the Debtors' unsecured creditor body as a whole

and the Debtors' estates.

46.     With respect to the level of compensation, § 330 of the Bankruptcy Code

provides, in pertinent part, that the Court may award to a professional person (including

attorneys for a creditors' committee): "Reasonable compensation for actual necessary services

rendered by [such] . . . professional person. 11 U.S.C. § 330. Section 330 further states that the

court should take into consideration, inter alia, the nature, extent, and value of services

performed, as well as the cost of comparable services other than in a case under this title. Id.

The clear Congressional intent and policy expressed in this statute is to provide for adequate

compensation in order to continue to attract qualified and competent bankruptcy practitioners to

bankruptcy cases.

47.     The total time spent by Stroock attorneys and paraprofessionals during the

Compensation Period for which Stroock seeks payment was 643.4 hours. Such services have a

fair market value of $299,419.75. The work involved, and thus the time expended, was carefully

assigned in light of the experience and expertise required for a particular task.

48.     As shown by this Application and supporting documents, Applicant spent its time

economically and without unnecessary duplication of time. Attached hereto as Exhibit "C" are

summaries of the hours expended by the attorneys and paraprofessionals during the

Compensation Period, their normal hourly rates, and the value of their services.

22

49.     In addition, Stroock incurred actual out-of-pocket expenses in connection with the
rendition of the professional services to the Committee in the sum of $5,838.28 for which
Stroock respectfully requests reimbursement in full.  The disbursements and expenses have been
incurred in accordance with Stroock's normal practice of charging clients for expenses clearly
related to and required by particular matters.  Such expenses were often incurred to enable
Stroock to devote time beyond normal office hours to matters, which imposed extraordinary time
demands.  Stroock has endeavored to minimize these expenses to the fullest extent possible.

50.     Stroock's billing rates do not include charges for photocopying, telephone and
telecopier toll charges, computerized research, travel expenses, "working meals", secretarial
overtime, postage and certain other office services, because the needs of each client for such
services differ.  Stroock believes that it is fairest to charge each client only for the services
actually used in performing services for it.  Stroock has endeavored to minimize these expenses
to the fullest extent possible.

51.     Stroock charges $.10 per page for in-house photocopying services, with respect to
computerized research services Stroock charges the actual cost from the vendor, and $1.00 per
page for out-going facsimile transmissions.  Stroock does not charge for incoming facsimiles.

52.     Further, in accordance with the Court's June 22, 2001 Order Authorizing the
Retention of Experts, this Application seeks payment for the fees and expenses of Navigant, the
asbestos issues expert engaged by the Committee, in the aggregate amount of $103,498.49, for
the services rendered on behalf of the Committee in the months of October through December of
2005.  No agreement or understanding exists between Stroock and any other person for the

23

sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

53.    Stroock has reviewed the requirements set forth in Delaware Local Rule 2016-2, entitled "Motion for Compensation and Reimbursement of Expenses," and believes that this application for interim compensation and reimbursement of expenses is fully in compliance with the rules set forth therein.

54.    No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period other than as set forth herein.

**WHEREFORE**, Stroock respectfully requests, pursuant to the Administrative Fee Order and the Court's June 22, 2001 Order Authorizing the Retention of Experts:

> the allowance of compensation for professional services rendered to the Committee during the period from October 1, 2005 through and including December 31, 2005 in the amount of $299,419.75,
>
> the reimbursement of Stroock's out-of-pocket expenses incurred in connection with the rendering of such services during the period from October 1, 2005 through and including December 31, 2005 in the amount of $5,838.28; the payment of the fees and expenses of the asbestos issues expert employed by the Committee for the months of October, November and December 2005 in the aggregate amount of $103,498.49; authorizing and directing the Debtors to pay to Stroock each of the amounts set forth in (a) (b) and (c) of this WHEREFORE

24

clause (to the extent not already paid pursuant to the Administrative Fee Order);

and granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
February 15, 2006

STROOCK & STROOCK & LAVAN LLP

Lewis Kruger
Kenneth Pasquale
Members of the Firm
180 Maiden Lane
New York, New York 10038-4982
(212) 806-5400

Co-Counsel for the Official Committee of
Unsecured Creditors of W. R. Grace & Co., et al.

25