IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Objection Deadline: March 10, 2006** |
| | ) | **Hearing Date: March 27, 2006 at 2:00 p.m.** |

## MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING SETTLEMENT OF CLAIM NO. 9563 PURSUANT TO FED. R. BANKR. P. 9019

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby move this Court, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order approving the terms of the settlement of Claim No. 9563 filed by the Port Authority of New York and New Jersey (the "Claimant") against the Debtors (the "Settlement," attached hereto as Exhibit A). In support of this motion (the "Motion"), the Debtors respectfully represent as follows:

### Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these cases and of this matter in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

1.    On April 2, 2001 (the "Petition Date"), the Debtors, including W. R. Grace & Co. ("Grace"), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

2.    Claimant purchased the property identified as Block No. 373, Lot 3 on the tax map of the City of Bayonne, New Jersey (the "Port Authority Property") from Nitrate Agencies Company, a former subsidiary of Grace, by agreement dated March 19, 1929.    Williams

Industries, Inc. owns Block No. 373, Lot 2 (the "Williams Property") and leases the portion of

the Port Authority Property adjacent to the Williams Property (the "Leased Premises"). The

remainder of Port Authority Property is used by Claimant for purposes related to the Bayonne

Bridge connecting New York and New Jersey.

3.        Prior to Claimant's purchase of the Port Authority Property, Nitrate Agencies

Company used the property and certain surrounding areas to manufacture pesticides. In

connection with its operations, Nitrate Agencies Company maintained an arsenic pit and

underground storage tank on what is now the Williams Property. Prior to the petition Date, the

Debtors performed, or caused to be performed, soil testing and soil remediation on the Williams

Property and the Leased Premises.

4.        On March 28, 2003, Claimant filed a proof of claim (Claim No. 9563) against the

Debtors asserting an unsecured, non-priority claim of $1.4 million plus future costs associated

with soil remediation and groundwater monitoring at the Port Authority Property.

5.        Following extensive arm's length negotiations, the Debtors and the Port Authority

reached a settlement providing for the resolution and allowance of Claim No. 9563 as an

unsecured, pre-petition general unsecured claim in the amount of $2.1 million. In exchange for

this compromise, the Settlement provides, in pertinent part, that Claimant:

      (a)    is forever barred, estopped, and enjoined from asserting any additional pre-petition or post-petition claims against the Debtors with respect to matters covered by the Settlement;

      (b)    takes full responsibility, including bearing any and all costs, for all soil remediation and groundwater monitoring of the Port Authority Property;

      (c)    takes full responsibility for all ongoing operation and maintenance overlay as may be required by the New Jersey Department of Environmental Protection (the "NJDEP") following and as related to the remediation and will bear all costs associated with such operation with respect to the Port Authority Property, and for groundwater monitoring reporting following and with respect to the remediation of the Williams Property and the Port Authority Property;

(d)    will apply for a "No Further Action Letter" or "Deed Notice" for soils of the Port Authority Property, and a "Classification Exception Area" for groundwater contaminants at the Port Authority Property and the Williams Property as may be required by the NJDEP; and

(e)    will perform any additional groundwater monitoring, including the location and installation of any additional monitoring wells as it deems necessary and as required by the NJDEP, with respect to the Williams Property and the Leased Premises and will bear all costs associated with such location, installation, and monitoring.

6.    The terms of the Settlement have been approved by every key constituency in these Chapter 11 cases -- *i.e.*, the Official Committee of Unsecured Creditors, the Official Committee of Equity Holders, the Official Committee of Asbestos Personal Injury Claimants, the Official Committee of Property Damage Claimants, and the Future Claimants' Representative.

7.    As discussed below, the Debtors believe that the Settlement is in the best interests of their estates.

### Relief Requested

8.    By this Motion, the Debtors seek authority, pursuant to Bankruptcy Rule 9019(a), to enter into the Settlement attached hereto as Exhibit A, thereby allowing Claim No. 9563 and settling and resolving all issues pertaining to soil remediation and groundwater monitoring at the Port Authority Property and the Williams Property.

### Basis for Relief

9.    Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed.R.Bankr.P. 9019(a). Before approving a settlement under Bankruptcy Rule 9019, a court must determine that the proposed settlement is in the best interests of the debtor's estate. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996); *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) ("The ultimate inquiry is whether 'the compromise is fair, reasonable, and in the interest of the estate.'"). To reach this determination,

courts assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. *See Martin*, 91 F.3d at 393.

10.     The standard by which courts evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.*; *see also Depositor v. Mary M. Holloway Found.*, 36 F.3d 582, 587 (7th Cir. 1994) (affirming an order approving a compromise and settlement of claims against the estate where it was "unlikely" that the debtor would succeed on the claim, litigation of the claims would involve considerable expense, and the claimant would withdraw all claims upon approval of the settlement). Settlements should only be rejected if they fall "below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W. T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

11.     The standards set forth above are plainly met in this case. The Settlement will allow the Debtors to resolve any disputes that currently exist or may arise in the future with respect to the clean-up of the Port Authority Property and the Williams Property while avoiding litigation expenses. Because disposition of the claim through contested matters would result in increased expenditures, both in terms of human and financial resources, the savings to the Debtors' estates resulting from this resolution inures to the benefit of all of the Debtors' creditors and, therefore, is in the best interest of the Debtors and their estates.

12.     The settlement amount of $2.1 million is reasonable under the circumstances. The Settlement provides the Debtors with a final resolution of any and all claims regarding the Port Authority Property, rather than allowing such claims to continue into the future. Moreover,

the costs associated with the responsibilities assumed by the Port Authority will be substantial and there is no guarantee that they will not cost more than $2.1 million. Finally, the reasonableness of the Settlement is reflected by the fact that every key constituency in these Chapter 11 cases has approved its terms.

13.    For all of the foregoing reasons, the Debtors submit that the Settlement is fair and reasonable and in the best interest of the Debtors, their creditors and their estates, and thus the Debtors should be authorized to enter into the Settlement.

### Notice

14.    Notice of this Motion has been given to: (i) the Office of the United States Trustee, (ii) counsel to the debtor-in-possession lenders, (iii) counsel to the official committees appointed by the United States Trustee, and (iv) all those parties that requested service and notice of papers in accordance with Fed R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order approving the terms of the Settlement and granting such other and further relief as the Court may deem just and proper.

Dated: February 17, 2006

KIRKLAND & ELLIS LLP
Janet S. Baer
Salvatore F. Bianca
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES &
WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession