IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:** ) | **Chapter 11** |
| ) | |
| **W. R. GRACE & CO.,** *et al.*, ) | Case No. 01-1139 (JKF) |
| ) | (Jointly Administered) |
| **Debtors.** ) | |

Hearing Date: March 27, 2006 @ 2:00 p.m.
Objection Deadline: March 10, 2006 @ 4:00 p.m.

## W.R. GRACE & COMPANY'S MOTION FOR AUTHORIZATION TO SEEK DISCOVERY FROM DR. ALAN C. WHITEHOUSE AND FOR A PROTECTIVE ORDER RELATING TO PRODUCTION OF DOCUMENTS FROM DR. ALAN C. WHITEHOUSE

W.R. Grace & Co. and its affiliated companies (collectively "Grace" or "Debtors") hereby move this Court for an Order (1) authorizing Grace to seek factual discovery from Dr. Alan Whitehouse and (2) protecting the documents disclosed during the course of this discovery in a manner consistent with the Protective Order issued by Federal District Court Judge Donald Molloy in *United States v. W.R. Grace & Co.*, CR-05-07-M-DWM (D. Mont. Nov. 23, 2005), attached as Exhibit 1. Dr. Whitehouse's medical records are the exclusive basis of (and source of data for) the "Libby Claimants'" allegation that they have a unique pulmonary disease. Grace anticipates that the Libby Claimants will continue to advocate their alleged uniqueness throughout the estimation proceeding. The Libby Claimants thus have placed their condition, as well as Dr. Whitehouse's records regarding that condition, at issue in this proceeding. As such, Grace is entitled to review and analyze the documents that underlie their allegations.

In the context of the criminal proceeding in Montana, U.S. District Judge Donald Molloy has ordered the Government to produce Dr. Whitehouse's documents for review by Grace and its experts. *See* Order in *United States v. W.R. Grace & Co.*, CR-05-07-M-DWM (D. Mont. Nov. 23, 2005). However, as is common with records relating to the health and medical condition of

individuals, Judge Molloy issued a protective order restricting the use of the documents to the criminal proceeding. *Id.* at 19-21. Judge Molloy did not, however, purport to limit the ability of Grace to seek discovery of the same files in another proceeding where appropriate. Because the same issues are now relevant in the PI estimation, Grace seeks this Court's authorization to obtain access to the same documents for use in the bankruptcy PI estimation proceeding, and a Protective Order governing the review and use of the documents that is consistent with the Protective Order issued by Judge Molloy.

### The Libby Claimants' Assertions

On June 30, 2005, the Libby Claimants filed an opposition to Debtors' May 10, 2005 Motion to Approve the PI CMO and Questionnaire. *See* the June 30, 2005 Libby Claimants' Opposition attached at Exhibit 2. The Libby Claimants' Opposition was filed separately from the Asbestos PI Committee's Opposition. In their Opposition, the Libby Claimants allege that they constitute a unique class of asbestos personal injury claimants. Libby Claimants' Opposition at 6-7. They allege that they have contracted a unique form of asbestos-related disease caused by exposure to asbestos at the Libby mine in Libby, Montana. *Id.* at 10 ("There generally appears to be a distinct pattern for Libby Tremolite Disease."). The Libby Claimants allege that they are entitled to distinct treatment during the estimation proceeding compared to other asbestos personal injury claimants. *Id.* at 6. Importantly, they allege that their claims should not be subject to the medical criteria proposed by the Debtors in their Plan of Reorganization, and that they are entitled to higher compensation than other personal injury asbestos claimants. *Id.* at 12. These assertions have emerged as critical issues in both the estimation litigation and with respect to settlement negotiations.

To be sure, Grace *does not dispute* that there are some individuals in Libby, Montana, who have contracted asbestos-related diseases such as mesothelioma and asbestosis as a result of

2

their exposure to asbestos from the Libby vermiculite mine, nor does Grace dispute that asbestos exposure from the mine may have contributed to the development of lung cancer in some individuals in Libby. Grace does dispute, however, allegations that it violated any laws in connection with its operation of the Libby mine, and, as this Court is well aware, Grace is vigorously defending itself against such allegations in *United States v. W.R. Grace & Co.* And, of critical importance here, Grace disputes the allegations of the Libby Claimants that (1) they have a "unique" asbestos disease and (2) that they should not be subject to the same medical and diagnostic criteria as other asbestos PI Claimants.

### Grace Seeks Access to Facts Relevant to the Estimation of the Libby Claimants' Claims

In support of their contentions that they have a unique form of asbestos disease and that they should not be subject to the same medical criteria as other PI asbestos Claimants, the Libby Claimants cite the affidavits of Dr. Alan Whitehouse, a physician who claims to have diagnosed hundreds of Libby residents with "Libby Tremolite Disease." June 15, 2005 General Affidavit of Dr. Alan C. Whitehouse ("Whitehouse General Affidavit"), attached as Exhibit 3; June 15, 2005 Affidavit of Dr. Alan C. Whitehouse re: Grace Questionnaire ("Whitehouse Questionnaire Affidavit"), attached as Exhibit 4. As the treating and diagnosing physician, Dr. Whitehouse possesses key facts relating to the Libby Claimants' allegations. Of significance, in addition to being the treating doctor for hundreds of individuals from Libby, Dr. Whitehouse has been named as the "expert" for the Libby Claimants in this Court's estimation proceeding. The Libby claimants have filed an expert disclosure, independent of the expert disclosure of the PI Committee. Thus, Dr. Whitehouse has emerged as an expert witness in possession of essential factual information.

The Debtors' present motion seeks access to the key factual information in the custody and control of Dr. Whitehouse. Specifically, the Debtors seek access to the records and

3

documents that form the basis of the Libby Claimants' contention that they have a "unique" asbestos disease that they call "Libby Tremolite Disease." *See* Draft Subpoena duces tecum to Dr. Alan Whitehouse, attached as Exhibit 5. The Debtors have sought and gained access to some of these materials in connection with the criminal proceeding in Montana, as Dr. Whitehouse has been named as a witness there as well.[1] However, U.S. District Judge Donald Molloy has issued a Protective Order prohibiting the use of some of Dr. Whitehouse's records in any other proceeding. *See* Order in *United States v. W.R. Grace & Co.*, CR-05-07-M-DWM (D. Mont. Nov. 23, 2005) at 19-21. Out of an abundance of caution, and in deference to the Court's Order in that case, the Debtors move this Court for authorization to seek discovery from Dr. Whitehouse, a key fact witness in this estimation proceeding.

In support of this request, the Debtors offer the following facts demonstrating the importance of the requested discovery:

1. Dr. Whitehouse's allegation that asbestos from the Libby vermiculite mine causes a "unique" disease called "Libby Tremolite Disease" is a new allegation that had not been fully litigated prior to Grace's bankruptcy in April 2001. Indeed, the "study" of Libby residents that Dr. Whitehouse authored, and upon which the Libby Claimants base their allegations, was not published until 2004. *See* Alan C. Whitehouse, *Asbestos-Related Pleural Disease Due to Tremolite Associated with Progressive Loss of Lung Function: Serial Observations in 123 Miners, Family Members, and Residents of Libby Montana*, 43 Am. J. Indus. Med. 219 (2004) (the "Whitehouse Progression Study"), attached as Exhibit 6.

---

[1] Additionally, as part of the criminal proceeding, the Government has represented that it will provide Grace access to all of Dr. Whitehouse's patient files. Grace's counsel in the criminal action will shortly move the Court for a protective order that would enable the Government to produce the records in unredacted form.

4

2.    The ATSDR investigated Dr. Whitehouse's claims about Libby tremolite. In reviewing Dr. Whitehouse's patient files in connection with its investigation of the environmental risks associated with exposure to asbestos in Libby, Montana, the ATSDR found that 27% of the cases which Dr. Whitehouse had diagnosed with asbestos disease, did not show any evidence of an asbestos-related disease. August 12, 2002 Dep. of Dannie C. Middleton, *United States v. W.R. Grace & Co.* at 17, attached as Exhibit 7.

3.    Many of Dr. Whitehouse's assertions offered in support of the existence of this unique "Libby Tremolite Disease" are *contrary* to established medical and scientific literature and knowledge about the development of asbestos-related disease and diseases caused by smoking. Dr. Al Franzblau, a prominent occupational medicine doctor with significant experience in the diagnosis of asbestos-related disease, has reviewed Dr. Whitehouse's assertions in the Whitehouse Progression Study. *See* February 17, 2006 Affidavit of Dr. Al Franzblau, attached as Exhibit 8. Dr. Franzblau offers a few prescient examples of just how controversial Dr. Whitehouse's allegations are:

   a.    Of critical importance to the Libby Claimants' claims is Dr. Whitehouse's assertion that the Whitehouse Progression Study (which is based upon the medical records of 123 individuals) is representative of all of Dr. Whitehouse's "Libby Tremolite Disease" patients and the population of Libby as a whole. *See* Whitehouse Progression Study at 221. However, this is nothing more than a sweeping generalization that is not supported by the data presented in the Whitehouse Progression Study. Franzblau Affidavit at ¶ 8. There are no data or comparisons provided about "age, gender, occupation, smoking history, medical history, or other pertinent factors" for the 123 patients, the 491 total patients referenced in the Whitehouse Progression Study, or the

residents of Libby, Montana as a whole. *Id.* Only by reviewing the medical records for the 123 patients in the study group and comparing them to the medical records for all 491 of Dr. Whitehouse's "Libby Tremolite Disease" patients could one ascertain whether Dr. Whitehouse's generalization is scientifically supportable." *Id.*

    b.    Dr. Whitehouse alleges that there is an "obstructive component" associated with "Libby Tremolite Disease." Whitehouse General Affidavit at ¶ 40. Once again, however, the medical and scientific literature clearly demonstrate that pulmonary disease caused by asbestos exposure is primarily a restrictive disease and that cigarette smoking -- not asbestos exposure -- is the primary cause of obstructive pulmonary disease, such as COPD. Franzblau Affidavit at ¶ 12. Most tellingly, in his published study, Dr. Whitehouse fails to report the data (the $FEV_1$ score) that would demonstrate whether or not the patient has COPD, a disease caused, according to almost all medical and scientific literature and the Surgeon General of the United States, by smoking and not asbestos. *Id.* Once again, though, Dr. Whitehouse, as the treating physician, would possess information relating to the $FEV_1$ scores of his patients. *Id.*

    c.    Dr. Whitehouse acknowledges that the individuals in his 123 patient study group had significant pulmonary disease previously diagnosed by doctors who had prescribed bronchodilators. Whitehouse Progression Study at 221. Once again, Dr. Whitehouse glosses over this fact, but the "entire study is confounded and/or flawed since these other diseases were not considered in the statistical analyses, and much or all of the observed excess decline in pulmonary function may be attributable to non-asbestos pulmonary disease, such as smoking." Franzblau Affidavit at ¶ 9. Only by reviewing the medical records in Dr. Whitehouse's possession for these 123 individuals "could one

6

determine whether the alleged decrement in pulmonary function was caused by asbestos exposure as opposed to smoking." *Id.*

d. As one more example, Dr. Whitehouse contends that "diffusion capacity" is a "particularly important indicator" of the "severity of restrictive disease in Libby Tremolite disease patients." Whitehouse General Affidavit at ¶ 40. However, once again, smoking is a primary cause of a decrement in diffusion capacity. Franzblau Affidavit at ¶ 12. Consistently, Dr. Whitehouse ignores established science, medical literature, and clinical practice and simply asserts, without data or evidence, that Libby asbestos caused this common smoking-related condition in his Libby patients.

These are just a few of the highly controversial assertions by Dr. Whitehouse. According to Dr. Franzblau, Dr. Whitehouse's selective reporting of data based on a cohort with a heavy smoking history casts doubt on his assertion that he has discovered a unique highly progressive asbestos-related disease. *Id.* at ¶ 7. However, Dr. Franzblau's ability to critique the Whitehouse Progression Study, and evaluate the Libby Claimants' contention that they have a unique asbestos disease, is limited without an opportunity to review the medical documents that underlie the study. *Id.* at ¶ 6.

The true extent and nature of asbestos-related disease caused by exposure to asbestos from the Libby mine has important implications for the estimation of Grace's asbestos PI liability. By this motion, Grace seeks authorization to pursue discovery of these critical facts necessary for an accurate estimate of that liability, and a protective order that will assure that the information disclosed will be used only to defend Grace in connection with this bankruptcy proceeding or, as already permitted by Judge Molloy, in connection with Grace's defense in the criminal proceeding in Montana.

### Grace is Entitled to Factual Discovery from Dr. Whitehouse

Although the Libby Claimants have identified Dr. Whitehouse as an expert witness, Grace is seeking factual discovery from Dr. Whitehouse. *See Gomez v. Rodriguez*, 344 F.3d 103, 113 (1st Cir. 2003) ("[C]ourts have followed the advisory committee's lead and ruled that a treating physician, testifying as to his consultation with or treatment of a patient, is not an expert witness for purposes of Rule 26."). Here, Grace is not asking Dr. Whitehouse to opine as to whether there is a "Libby Tremolite Disease." Such testimony regarding the discovery of a new disease should be offered or at the very least supported by an epidemiologist rather than a clinical pulmonologist, and to the extent Dr. Whitehouse will be offering expert opinions on that issue, Grace will depose Dr. Whitehouse as an expert pursuant to the schedule established in the CMO. All Grace seeks now are the documents in Dr. Whitehouse's possession that are relevant to an investigation into the Libby Claimants' assertions that they have a unique asbestos disease and that they should not be subject to the same medical criteria as other asbestos PI claimants in the estimation.

The fact that the Libby Claimants have identified Dr. Whitehouse as an expert witness does not shield Dr. Whitehouse from factual discovery. *See Foster v. Lawrence Mem. Hosp.*, 1993 WL 156131, at *1 (D. Kan. April 5, 1993) (recognizing that "physicians are percipient fact witnesses, and as such, the information and opinions they possess should be freely accessible to both parties to the litigation"). A party is specifically entitled to seek factual discovery from an expert witness when that expert witness has "personal knowledge about the events which are the subject matter of the lawsuit." *Cox v. Tenn. Valley Auth.*, 989 F.2d 499, 1993 WL 72488, at *5 (6th Cir. 1993); *see also, Harasimowicz v. McAllister*, 78 F.R.D. 319, 320 (E.D. Pa. 1978) (holding that rules preventing disclosure of expert witness information do not apply to physicians whose "information was not acquired in preparation for trial but rather because he was an actor

8

or viewer with respect to the transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness."). Dr. Whitehouse, by his own account, examined hundreds of patients from Libby in the course of his medical practice and now claims to have discovered the existence of a new disease. Dr. Whitehouse's observations are the foundation for the Libby Claimants' assertion that they should not be subject to the same medical criteria for evaluating whether they have a legitimate asbestos personal injury claim. Dr. Whitehouse has in his possession the very documents that will either support or debunk the notion that there is a unique "Libby Tremolite Disease." Consequently, Grace is entitled to discovery of these records.

### Grace Seeks an Order Authorizing the Discovery and Protecting the Documents Ultimately Produced

The Libby Claimants are asking this Court to apply different disease criteria to them in the estimation based on Dr. Whitehouse's "Libby Tremolite Disease" theory. Grace is incapable of defending itself against this theory until it reviews the records from Dr. Whitehouse's clinical practice upon which this theory is based.

At the same time, Dr. Whitehouse has been named as a witness by the government in the criminal proceedings in Montana. *See* January 13, 2006 Supplemental Expert Witness Disclosure for Dr. Alan Whitehouse in *U.S. v. W.R. Grace*, attached as Exhibit 9. Accordingly, the government produced some records from Dr. Whitehouse's practice. However, the Court in that proceeding has issued a Protective Order limiting the use of the documents to the criminal proceeding. Order in *United States v. W.R. Grace & Co.*, CR-05-07-M-DWM (D. Mont. Nov. 23, 2005) at 19-21. The same documents, however, are necessary and relevant to evaluating the Libby Claimants' assertions and claims for purposes of the estimation. Because of the Protective Order in place in the criminal matter, Grace must seek access to Dr. Whitehouse's documents

independently through discovery in the estimation proceeding. Grace has drafted a subpoena for the relevant materials, which will be served out of the U.S. District Court for the District of Montana, the same district where the criminal proceeding is pending. *See* Draft Subpoena duces tecum to Dr. Alan Whitehouse, attached as Exhibit 5. In order to avoid even the appearance of an attempt to circumvent Federal District Judge Molloy's orders, Grace requests (1) this Court's authorization to seek the discovery from Dr. Whitehouse for use in the estimation proceeding, and (2) an order ensuring that the documents produced by Dr. Whitehouse will be protected in the same manner and consistent with Judge Molloy's Order in the criminal proceeding.

### Certification of Counsel

Counsel for the Debtors conferred with counsel for the Libby Claimants prior to filing this Motion. Counsel for Debtors and counsel for the Libby Claimants agreed to confer further during the week of February 20, 2006 regarding this matter. Counsel for the Libby Claimants indicated that the Libby Claimants would be filing a motion by Tuesday, February 21, 2006 which they seek to be heard at the March 27, 2006 omnibus hearing. Counsel for the Debtors has no objection to filing and service on February 21, 2006 and hearing on March 27, 2006 for such motion.

### CONCLUSION

Grace moves this Court to enter the Order attached as Exhibit 10, which authorizes Grace to seek factual discovery from Dr. Whitehouse in accordance with the draft subpoena and ensures that the documents and the privacy of Dr. Whitehouse's patients will be protected during the course of this estimation in accordance with the Order issued by Judge Molloy in *United States v. W.R. Grace & Co.*, CR-05-07-M-DWM (D. Mont. Nov. 23, 2005).

Dated: February 17, 2006

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick
Janet S. Baer
Salvatore F. Bianca
200 East Randolph Drive
Chicago, IL 60601
Telephone:    (312) 861-2000
Facsimile:    (312) 861-2200

KIRKLAND & ELLIS LLP
Barbara M. Harding
David E. Mendelson
Brian T. Stansbury
Amanda C. Basta
Evan C. Zoldan
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:    (202) 879-5000
Facsimile:    (202) 879-5200

*And*

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

Laura Davis Jones (#2436)
James E. O'Neill (#4240)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession