# Exhibit "5"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| W. R. GRACE & CO., *et al.*, ) | Case No. 01-1139 (JKF) |
| ) | United States Bankruptcy Court |
| ) | District of Delaware (Wilmington) |
| Debtors. ) | |

## NOTICE OF DEPOSITION

**TO:**    Dr. Alan C. Whitehouse
Center for Asbestos Related Disease
308 Louisiana Avenue
Libby, MT  59923

**DATE &
TIME:**    TBD

**PLACE:**    Center for Asbestos Related Disease

**YOU ARE COMMANDED TO APPEAR** to testify at a deposition in the matter styled *In re W. R. Grace & Co., et al.*, Case No. 01-1139 (JKF), currently pending in the United States Bankruptcy Court, District of Delaware, to be conducted at _____ on _____ at the Center for Asbestos Related Disease, or at such other time and place mutually agreed upon by counsel for the parties. The deposition(s) will continue from day-to-day until complete. The deposition(s) will be taken before an official authorized by law to administer oaths, and, pursuant to Federal Rule of Civil Procedure 30(b)(2), will be recorded by both stenographic means and sound-and-visual means.

YOU ARE FURTHER COMMANDED TO PRODUCE the categories of documents set forth in Attachment "A" to this subpoena. Doctor Whitehouse is further requested to make the categories of documents set forth in Attachment "A" available to the undersigned counsel for W.R. Grace & Co. for inspection and copying at least two weeks before the first deposition scheduled as a result of this Subpoena.

This subpoena has been issued by the United States District Court for the District of Montana, Missoula Division. You must appear, give testimony, and produce all of the materials described in this subpoena and its attachments for inspection and copying and must do so at the time and place set out in this subpoena. Your failure to do so may be punished as a contempt of the United States District Court for the District of Montana.

Pursuant to the requirements of Federal Rule of Civil Procedure 45(a)(l)(D), a copy of the provisions of Rule 45(c) and (d) of the of the Federal Rules of Civil Procedure are reproduced as an attachment to this subpoena.

Dated: February 17, 2006

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick
Janet S. Baer
Salvatore F. Bianca
200 East Randolph Drive
Chicago, IL 60601
Telephone:   (312) 861-2000
Facsimile:   (312) 861-2200

2

KIRKLAND & ELLIS LLP
Barbara M. Harding
David E. Mendelson
Brian T. Stansbury
Amanda C. Basta
Evan C. Zoldan
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:  (202) 879-5000
Facsimile:  (202) 879-5200

PROVISIONS OF RULE 45(c) and (d) OF THE FEDERAL RULES OF CIVIL PROCEDURE

(c)   PROTECTION OF PERSON SUBJECT TO SUBPOENAS

   (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

   (2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

       (B)   Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

   (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

       (i)   fails to allow reasonable time for compliance;

       (ii)   requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial to be commanded to travel from any such place within the state in which the trial is held, or

       (iii)   requires disclosure of privileged or other protected matter and no exception or waiver applies, or

4

        (iv)    subjects a person to undue burden.

**(d) DUTIES IN RESPONDING TO SUBPOENA**

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## ATTACHMENT A

## DEFINITIONS AND INSTRUCTIONS

1. The "Action" shall mean the Chapter 11 matter styled *In re W.R. Grace & Co.,* Case No. 01-1139 (JKF) currently pending in the United States Bankruptcy Court, District of Delaware.

2. "Dr. Whitehouse," "You" or "Your" shall mean and include Dr. Alan C. Whitehouse, to whom this request is directed, and any member of his research staff, his laboratory, any hospital(s) or medical center(s), or other business entity with which he is affiliated, or any employee, representative, predecessor, agent, or attorney of any of the aforesaid, including all persons acting or purporting to act for, on behalf of, in conjunction with, or who are subject to the direction and control of, any of them.

3. "Debtors" or "Grace" shall mean and include any of the following entities, either individually or collectively: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace

6

PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

4. "Libby Tremolite Disease" shall mean the alleged theory that exposure to tremolite asbestos fibers from the mine in Libby, Montana causes a unique, highly progressive form of pleural or parenchymal lung disease.

5. "Whitehouse Progression Study" shall mean the published study by Alan C. Whitehouse, M.D., *Asbestos-Related Pleural Disease Due to Tremolite Associated with Progressive Loss of Lung Function: Serial Observations in 123 Miners, Family Members, and Residents of Libby, Montana*, 43 Am. J. Indus. Med. 219 (2004).

6. "Asbestos-Related Disease" shall mean any bodily injury, sickness, disease, or impairment alleged to have been caused by exposure to asbestos or asbestos-containing products.

7. "Pulmonary Function Test Records" shall mean and include pulmonary function test results and associated physician notes including, but not limited to the following: all

7

numerical data and graphical data from spirometry (including copies of all time volume curves, flow volume loops, or other graphs, charts, or tracings reflecting all efforts by the patient on spirometry testing), diffusion capacity measurements (all graphs and tracings reflecting effort in the performance of the diffusion capacity test including demonstration of the collection bar and all available information concerning discard volumes), lung volume measurements (obtained through plethysmography, nitrogen wash out, or any other means), and cardio-pulmonary exercise testing results; reference values used for interpreting the results from any of the tests listed above; all calibration logs for pulmonary function testing equipment; and all information necessary to demonstrate that all of the tests listed above were performed in compliance with the applicable American Thoracic Society standards.

8. "Radiology Records" shall mean and include any and all radiology reports, interpretations, and any notes referencing the radiology report; chest x-rays (originals, rather than photographic copies); CT scans or HRCT scans (delivered on a CD or an original digital print); MRI films, MRI reports, and any notes relating to interpretations of MRI reports.

9. "Medical Records" shall mean and include any of the following: "Radiology Records," "Pulmonary Function Test Records," pathology reports and notes reflecting interpretations of those reports; notes reflecting a patient's employment history; notes reflecting a patient's military history, including any jobs or activities that were in locations that may have contained asbestos; notes, records, reports, or any other document reflecting a patient's residential history; notes reflecting a patient's personal and family medical history; pharmacy records and a history of patient's use of prescription medicine; blood test results and any notes relating to the blood tests; any and all physicians' notes; any documents that reflect information about the person's smoking history or exposure to second-hand smoke, including but not limited

to time at which smoking commenced, packs per day, age at which smoking ceased (if applicable), and cumulative pack year history; any documents relating to hospital visits; statements of all charges for medical services; any and all records pertaining to medical care, history, condition, treatment, diagnosis, prognosis, etiology or expense.

10. "Death Certificate" shall mean an official document issued by a county, city, state, or municipality that identifies the cause of death for an individual.

11. "Medical Services" shall mean and include any and all tests or examinations which are used in the diagnosis of pulmonary disease including but not limited to "Libby Tremolite Disease," asbestos-related disease, any other form of pneumoconiosis, or COPD related conditions, as well as the interpretation of such tests or examinations. Such tests or examinations include, but are not limited to, "B-reading," chest x-ray reading or interpretation, performing, administering or interpreting PFTs, performing or administering a physical examination, diagnosing, or otherwise evaluating an individual.

12. "Whitehouse General Affidavit" shall mean the document entitled "General Affidavit of Dr. Alan C. Whitehouse" executed by you on June 15, 2005, which was attached to the Libby Claimants' Opposition filed on June 30, 2005 in the *In re W.R. Grace*, Case No. 01-01139 (JKF) bankruptcy proceeding.

13. "Questionnaire Affidavit" shall mean the document entitled "Affidavit of Dr. Alan C. Whitehouse re: Grace Questionnaire" executed by you on June 15, 2005, which was attached to the Libby Claimants' Opposition filed on June 30, 2005 in the *In re W.R. Grace*, Case No. 01-01139 (JKF) bankruptcy proceeding.

14. As used herein, "Document" has the full meaning ascribed to it in Rule 34 of the Federal Rules of Civil Procedure.

9

15. "Relate to," "related to," or "relating to" shall mean, without limitation, to consist of, refer to, evidence, describe, reflect, memorialize or otherwise be in any way legally, logically or factually connected with the subject matter discussed.

16. "Person" includes a natural person or any business, legal, or government entity or association.

17. "Identify," when used in reference to:

a. a natural person, shall mean to state the person's full name, present or last-known home address and telephone number, present or last-known job title, employment address and telephone number.

b. any other person, shall mean to state the person's full name and present or last known-address (designating which); and

c. a document, shall mean to describe the document by date, author(s), addressee(s), recipient(s), title and general subject matter and content.

18. Unless otherwise specified, the "Relevant Time Period" for this request for documents shall include the period beginning from the date that you first treated a patient for "Libby Tremolite Disease" or any other "Asbestos-Related Disease" through the date on which the answers in response hereto are made.

19. Consistent with the requirements and limitations of the Federal Rules of Civil Procedure, if you object to the production of any document requested on the basis of privilege or immunity from discovery, list in your written response to the particular request all such documents in chronological order, setting forth as to each the following: (a) date of the document; (b) identity of the author(s) and all recipients; (d) description; (e) type of document; (f) subject matter; and (g) basis for assertion of privilege or immunity.

20. If you have a good faith basis to believe that any document requested has been destroyed or lost, please so state.

21. Whenever appropriate, the singular form of a word should be interpreted in the plural. "And" as well as "or" shall be construed either disjunctively or conjunctively so as to acquire the broadest possible meaning in each circumstance.

22. References to the singular include the plural and vice versa, references to one gender include the other gender, references to the past tense include the present and vice versa, and disjunctive terms or phrases should be read to include the conjunctive and vice versa.

## **REQUESTED DOCUMENTS**

### **REQUEST NO. 1:**

All medical records, death certificates, and other documents related to your contention that "there generally appears to be a distinct pattern" for "Libby Tremolite Disease" in people in Libby, Montanta. *See* Whitehouse General Affidavit at ¶ 40.

### **REQUEST NO. 2:**

All medical records, death certificates, and other documents that are related to your contention that Libby Tremolite Disease is highly progressive. *See* Whitehouse General Affidavit at ¶ 40.

### **REQUEST NO. 3:**

All medical records, death certificates, and other documents that are related to your contention that Libby Tremolite Disease causes obstructive pulmonary impairment. *See* Whitehouse Questionnaire Affidavit at ¶ 19; Whitehouse General Affidavit at ¶ 40.

### **REQUEST NO. 4:**

All medical Records and Death Certificates for anybody you have diagnosed with Libby Tremolite Disease during the Relevant Time Period.

### **REQUEST NO. 5:**

All medical Records and Death Certificates in your possession generated by another referring doctor related to an individual you have diagnosed and/or treated for Libby Tremolite Disease.

11

**REQUEST NO. 6:**

The names of all pulmonary function test technicians that have been in your employ during the Relevant Time Period.

**REQUEST NO. 7:**

All medical records and death certificates for the 40 individuals you allege have died from Libby Tremolite Disease. These documents should be produced in a manner that identifies the documents that are associated with each of the 40 individuals.

**REQUEST NO. 8:**

All medical records and death certificates for the 153 individuals for whom you had multiple pulmonary function tests as alleged in the Whitehouse Progression Study. These documents should be produced in a manner that identifies the documents that are associated with each of the 153 individuals.

**REQUEST NO. 9:**

All medical records and death certificates for the 123 individuals upon whom you based your findings in the Whitehouse Progression Study. These documents should be produced in a manner that identifies the documents that are associated with each of the 123 individuals.

**REQUEST NO. 10:**

All medical records, death certificates, and billing records for anybody you have diagnosed as having Libby Tremolite Disease.

**REQUEST NO. 11:**

All prior drafts of the Whitehouse Progression Study.

**REQUEST NO. 12:**

All correspondence between you and any medical journal or other individual regarding the Whitehouse Progression Study, including any peer-review comments.

**REQUEST NO. 13:**

Any and all communications between you and any individual employed by or acting as an agent for the Agency for Toxic Substances and Disease Registry ("ATSDR").

**REQUEST NO. 14:**

All documents contained on the hard drive of any pulmonary function test machine computers you used during the Relevant Time Period.

**REQUEST NO. 15:**

All medical records and death certificates that you provided to ATSDR in connection with its screening activities in Libby, Montana. These documents should be produced in a manner that identifies the documents that are associated with the ATSDR's screening activities.

**REQUEST NO. 16:**

All documents produced by you in *United States v. W.R. Grace & Co.*, CR-05-07-M-DWM (D. Mont.).