IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |

Hearing Date: March 27, 2006 @ 2:00 p.m.
Objection Deadline: March 10, 2006 @ 4:00 p.m.

## MOTION OF DEBTORS FOR AUTHORITY TO FURTHER EXTEND AND MODIFY DEBTOR-IN-POSSESSION FINANCING

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby file their motion (the "Motion") for entry of an order authorizing them to enter into an amendment (the "Amendment," attached hereto as Exhibit A) to further extend and modify their Post-Petition Loan and Security Agreement among the Debtors, Bank of America, N.A. ("BofA"), and the additional financial institutions which became parties to the agreement, as lenders (collectively, the "Lenders") and BofA as the Lenders' agent (the "Agent") dated as of April 1, 2001 and approved by Court Order [Docket No. 194] dated May 3, 2001 (as amended

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

from time to time, the "Post-Petition Credit Agreement"). In the alternative, if the Court is unable to enter an order approving the Amendment prior to April 1, 2006, the Debtors request entry of an order temporarily extending the Post-Petition Credit Agreement until May 31, 2006 pending Court approval of the Amendment. In support of this Motion, the Debtors respectfully represent as follows:

### Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G) and (O).

2. The statutory predicate for the relief requested herein is section 364 of title 11 of the United States Code (as amended, the "Bankruptcy Code").

### Background

3. On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Contemporaneous therewith, the Debtors filed a motion to consolidate, for administrative purposes, the Debtors' chapter 11 cases (the "Chapter 11 Cases"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors-in-possession.

4. On the Petition Date, the Debtors filed and served their Emergency Motion for Interim and Final Orders, under 11 U.S.C. §§ 105, 362, 363 and 364, Approving Post-Petition Financing and Related Relief and Setting Final Hearing Pursuant to Bankruptcy Rule 4001(c) (the "DIP Motion").

5. In connection with the negotiation of the Post-Petition Credit Agreement, the Debtors solicited and received financing proposals from several financial institutions, including term sheets from BofA, the Chase Manhattan Bank, Goldman Sachs Credit Partners L.P., and Deutsche Banc Alex. Brown (now known as Deutsche Bank). The Debtors selected BofA's proposal because, in the Debtors' business judgment, it was far superior to those offered by the other prospective lenders. In particular, BofA offered the lowest interest and fee rates and the highest size of the DIP facility. In addition, BofA's proposal provided for greater financial and operational flexibility for the Debtors, including acquisition and asset disposition flexibility, as well as a limited ability to fund the operations of the Debtors non-debtor subsidiaries and affiliates.

6. On May 3, 2001, the Bankruptcy Court entered its Final Order Authorizing Secured Post-Petition Financing on a Priority Basis Pursuant to 11 U.S.C. § 364 and Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362 (the "Original Order").

7. In February 2003, the Debtors filed their Motion of Debtors for Authority to Extend and Modify Debtor-in-Possession Financing and their Supplement to Motion of Debtors for Authority to Extend and Modify Debtor-in-Possession Financing, requesting an amendment of the Post-Petition Credit Agreement to provide, among other things, for (a) extension of its termination date through the earlier of (i) the Debtors' emergence from bankruptcy or (ii) April 1, 2006; (b) adjustment of certain fees payable to the Agent and the Lenders; and (c) modification of certain of the financial and other covenants and provisions and/or representations and warranties contained in the Post-Petition Credit Agreement. On March 14, 2003, the Court granted the relief requested by the Debtors in its First Amended Final Order Authorizing Secured Post-Petition Financing on a Priority Basis Pursuant to 11 U.S.C. § 364, and Granting Relief

8. In the First Amended Order, this Court found the following facts:

   A. The loans and other credit accommodations provided in the Post-Petition Credit Agreement were necessary for the preservation, maintenance, and enhancement of the going concern value of the Debtors;

   B. The Debtors were unable to obtain sufficient unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. Thus, financing on a post-petition basis was not otherwise available without the Debtors' granting, pursuant to section 364(c)(1) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in sections 503(b), 507(b), and 546(c) of the Bankruptcy Code, and securing such indebtedness and obligations with the security interests in and the liens upon the property described in the Original Order pursuant to sections 364(c)(2) and (c)(3);

   C. The Post-Petition Credit Agreement was negotiated in good faith and at arms-length among the Debtors and BofA (as Agent and as a Lender), and any credit extended, loans made, or letters of credit issued for the account of the Debtors pursuant to the Post-Petition Credit Agreement were deemed to have been extended, issued or made, as the case may be, in good faith as required by, and within the meaning of section 364(e) of the Bankruptcy Code, and the Agent and Lenders are entitled to the protections of section 364(e) of the Bankruptcy Code; and

   D. The terms of the Post-Petition Credit Agreement were fair and reasonable, reflected the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and were supported by reasonably equivalent value and fair consideration.

9. The First Amended Order, among other things, provided:

   A. The Debtors authority to borrow from the Lenders, on specified terms and conditions, up to $250,000,000 (the "Commitment"), including revolving loans and up to $150,000,000 in letters of credit, pursuant to the Post-Petition Credit Agreement;

   B. The granting to the Agent and the Lenders of valid and perfected security interests in and liens upon all presently owned and after-acquired personal and real property of the Debtors of any nature whatsoever, wherever located, as set forth in the Loan Documents[2] except (i) avoidance actions, (ii) stock or other equity interests of the Debtors in any foreign subsidiary,

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the DIP Motion and the Original Order.

        located, as set forth in the Loan Documents[2] except (i) avoidance actions, (ii) stock or other equity interests of the Debtors in any foreign subsidiary, and (iii) life insurance policies owned by, or assigned to, any of the Debtors;

C.    An Event of Default if (a) any of the Chapter 11 Cases is dismissed or converted to a case under chapter 7 of the Bankruptcy Code, or (b) any order of this Court authorizes: (i) any lien in any property of the Debtors in favor of any party other than the Agent and the Lenders, (ii) the incurring of indebtedness that is entitled to super-priority administrative status, or (iii) the use of Cash Collateral or the Debtors seek any of the foregoing relief;

D.    Upon the occurrence of and during the continuance of any Event of Default, the Agent and the Lenders may, acting pursuant to the Post-Petition Credit Agreement, exercise rights and remedies without further order of or application to the Court to:

    (i)    terminate or suspend the Commitment and thereafter cease to issue letters of credit or make loans to the Debtors;

    (ii)    declare the principal of and accrued interest, fees and other liabilities constituting the Obligations to be due and payable;

    (iii)    set-off amounts in any of the Debtors' accounts maintained with a Lender or otherwise enforce rights against any other Collateral in the possession of the Agent or Lenders;

    (iv)    charge the default rate of interest as set forth in the Loan Documents; and/or

    (v)    take any other action or exercise any other right or remedy permitted to the Lenders under the Loan Documents, the First Amended Order, or applicable law;

E.    The Debtors, the Agent and the Lenders were authorized to implement, in accordance with the terms of the Post-Petition Credit Agreement, any non-material modifications of the Post-Petition Credit Agreement without further notice or order of this Court;

F.    The Debtors to be jointly and severally liable for all Obligations;

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the DIP Motion and the Original Order.

    G.    The Agent and the Lenders were entitled to the full protection of section 364(e) of the Bankruptcy Code with respect to the Obligations and the Liens created, adjudicated or authorized by the First Amended Order;

    H.    Survival of the First Amended Order, the claims and liens granted pursuant thereto or under the Loan Documents and the priority of such claims and liens thereunder through and after (i) confirmation of a plan of reorganization in the Chapter 11 Cases; (ii) conversion of any Chapter 11 Case to a chapter 7 case; or (iii) dismissal of any Chapter 11 Case, until all of the Obligations are indefeasibly paid in full in cash and discharged;

    I.    The granting to the Agent and the Lenders certain protections including without limitation a super-priority administrative claim over any and all administrative expenses of the kinds specified in sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b) and 546(c) of the Bankruptcy Code (a "Super-Priority Claim"); and

    J.    A carve-out from the Super-Priority Claim for fees incurred (i) by the Debtors' or any committees' counsel in an amount up to $7.5 million and (ii) by any trustee and its professionals in an amount up to $1 million.

The foregoing is merely a summary of certain key contents of the First Amended Order. A true and correct copy of the First Amended Order is attached hereto as <u>Exhibit B</u>.

10. Because the Post-Petition Credit Agreement will terminate by its terms on April 1, 2006, the Debtors entered into discussions with the Agent regarding the further amendment of the Post-Petition Credit Agreement to provide for, among other things:

    A.    an extension of its termination date through the earlier of (i) the Debtors' emergence from bankruptcy or (ii) April 1, 2008;

    B.    an adjustment of certain fees payable to the Agent and the Lenders; and

    C.    a modification of certain of the financial and other covenants and provisions and/or representations and warranties contained in the Post-Petition Credit Agreement.

Other than as set forth above in B. and C., the Amendment only extends the terms of the First Amended Order.

11. After analyzing their options for continuing their post-petition financing and reviewing recent comparable transactions in the capital markets, the Debtors have determined

6

that the most cost-effective approach would be to seek a further extension of the Post-Petition Credit Agreement. As provided in the Amendment, upfront fees related to the Amendment are lower than those paid under the Post-Petition Credit Agreement because of the two-year duration of the extension, and ongoing fees and interest rates are at or below comparable market rates. Additionally, by extending the Post-Petition Credit Agreement, the Debtors will avoid the substantial expenses attendant with negotiating a new credit agreement with a new lender.

12. The Debtors negotiated the Amendment with the Agent at arm's length and in "good faith" (as that term is defined in section 364(e) of the Bankruptcy Code), with all parties represented by experienced counsel.

## Relief Requested

13. By this Motion, the Debtors seek authority, pursuant to section 364(c)(1) of the Bankruptcy Code (a) to extend and modify the Post-Petition Credit Agreement pursuant to the terms and conditions set forth in the Amendment, or (b) in the alternative, if the Court is unable to enter an Order approving the Amendment prior to April 1, 2006, to temporarily extend the Post-Petition Credit Agreement pending Court approval of the Amendment on the same terms through and including May 31, 2006.

## Basis for Relief

14. As of January 31, 2006, approximately $33.5 million in letters of credit were outstanding under the Post-Petition Credit Agreement (the "Outstanding LOCs") to support general trade initiatives. Although there are currently no drawings outstanding aside from the Outstanding LOCs, the Debtors, in their business judgment, have determined that the Post-Petition Credit Agreement needs to be extended at the existing Commitment in order to: (1) continue to support general trade initiatives, as well as risk management and capital investment

7

initiatives, (2) provide liquidity protection in the face of significant economic uncertainty; (3) support strategic business initiatives that are in the best interest of the Debtors and their stakeholders; and (4) manage significant contingencies related to the Debtors' past and present operations.

15. Specific liquidity contingencies include: (a) the likelihood of significant contributions to U.S. qualified pension plans to satisfy the funding requirements of ERISA and (b) possible settlements of environmental, tax and other disputes as may be proposed by the Debtors and approved for funding by the Court and creditors in advance of a confirmed plan of reorganization, and (c) attorneys' fees and expenses in connection with such disputes.

16. As previously referenced above, the Debtors require a liquidity facility for maintenance of existing, and issuance of additional, letters of credit in the ordinary course of the Debtors' business, including trade-related performance bonds, support for commodity and foreign currency risk management instruments, and support of other insurance, environmental and general trade and corporate related matters.

17. The necessity, timing and/or advisability of expenditures to address the contingencies as well as to fund the strategic opportunities described above cannot be predicted at this time. Accordingly, the Debtors have concluded that maintaining sufficient credit availability is in the best interests of the Debtors' estates and of their creditors. This credit availability will give the Debtors the flexibility to preserve, maintain and enhance the going concern value of the Debtors, which is of the utmost significance and importance to a successful reorganization of the Debtors under chapter 11 of the Bankruptcy Code.

18. Because of the greater certainty of a binding credit commitment, and because the interest rates and costs of maintaining the facility and the available terms are, in the Debtors' view, favorable when compared with recent comparable capital markets transactions, the Debtors

concluded that maintaining the facility at its current level is more prudent and cost-effective. Decreasing the facility size at this juncture would create significant uncertainty as to the ability of the Debtors to manage the contingencies and fund the initiatives described above. Moreover, the Debtors would face the risk of less favorable terms and more adverse market conditions if they had to go into the credit markets in the future for additional financing.

## **Standard for Relief**

19. As provided in the Amendment, the Debtors propose to extend the financing under the Post-Petition Credit Agreement by (a) continuing the Super-Priority Claim granted the Agent in the First Amended Order on all amounts owing under the Post-Petition Credit Agreement pursuant to section 364(c)(1) of the Bankruptcy Code and (b) granting security interests on the Debtors' property pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code.

20. Section 364(c) of the Bankruptcy Code provides that:

> If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt - (1) with priority over any and all administrative expenses of the kind specified in section 503(b) or 507(b) of this title; (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on property of the estate that is subject to a lien.

Accordingly, Section 364(c) financing is appropriate when the trustee or debtor in possession is unable to obtain unsecured credit allowable as an ordinary administrative claim. *In re Crouse Group, Inc.*, 71 B.R. 544, 549, modified on other grounds, 75 B.R. 553 (Bankr. E.D. Pa. 1987) (secured credit under section 364(c) of the Bankruptcy Code is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained).

21. Courts have articulated a three-part test to determine whether a debtor is entitled to financing under section 364(c) of the Bankruptcy Code:

> (i) The debtor is unable to obtain unsecured credit under section 364(b) of the Bankruptcy Code, i.e., by allowing a lender only an administrative claim;
>
> (ii) The credit transaction is necessary to preserve the assets of the estate; and
>
> (iii) The terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender.

*Id.* As demonstrated below, the Debtors' request to enter into the Amendment meets each of these factors.

**The Debtors do not have an Alternative to the Amendment**

22. Given the Debtors' current financial condition and capital structure, the Debtors require an extension of their financing for continued financial flexibility in order to manage significant contingencies related to their past and present operations and to support general trade, risk management and strategic business initiatives, as well as for liquidity protection in the event of any further economic downturn. A working capital facility of the type and magnitude needed cannot be obtained on an unsecured basis. As was found in the First Amended Order and remains the case, the potential sources of a $250,000,000 credit facility for the Debtors, obtainable on reasonable terms, were very limited. In these circumstances, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Bray v. Shenandoah Federal Sav. and Loan Ass'n. (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986). As was also found in the First Amended Order, all potential lenders requested the protections of section 364(c) of the Bankruptcy Code as a prerequisite for obtaining the financing.

23. A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of section 364(c) of the Bankruptcy Code. *Id. See also In re*

*Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992). Where there are few lenders likely to be able and/or willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), aff'd sub nom, *Anchor Sav. Bank FSB v. Sky Valley*, 99 B.R. 1997, 120 N.4 (N.D. Ga. 1989). Because the Court's findings in the First Amended Order remain true and accurate, the section 364(c) requirement that unsecured credit be unavailable to the Debtors is satisfied.

### Application of the Business Judgment Standard

24. After appropriate investigation and analysis, the Debtors' management has concluded that the Amended Credit Agreement is the best alternative available in these Chapter 11 Cases. Bankruptcy courts routinely defer to the debtor's business judgment on most business decisions, including the decision to borrow money. *See Group of Institutional Investors v. Chicago Mil. St. P. & Pac. Ry.*, 318 U.S. 523, 550 (1943); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); *In re Lifeguard Indus., Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same). "More exacting scrutiny would slow the administration of the debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

25. In general, a bankruptcy court should defer to a debtor in possession's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. *In re Curlew Valley Assoc.*, 14 B.R. 506, 511-13 (Bankr. D. Utah 1981). Courts generally will not second-guess a debtor in possession's business decisions when those decisions

involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of [its] authority under the Code." *Id.* at 513-14 (footnotes omitted).

26.     As the Court found in the First Amended Order, the Debtors exercised sound business judgment in entering into the Post-Petition Credit Agreement. The Debtors have exercised sound business judgment in determining that the Amendment to the Post-Petition Credit Agreement is appropriate and have satisfied the legal prerequisites to borrow under the Amended Credit Agreement. The terms of the Amended Credit Agreement will remain fair and reasonable and in the best interests of the Debtors' estates. Accordingly, the Debtors should be granted authority to enter into the Amendment.

## The Terms of the Amendment are Fair, Reasonable and Appropriate

27.     The Amendment reflects the exercise of sound and prudent business judgment. As was found in the First Amended Order, the Debtors remain unable to obtain unsecured credit allowable solely as an administrative expense and believe that they would not be able to obtain financing on an unsecured basis. In the Debtors' business judgment, the Amended Credit Agreement is the best financing option available in the circumstances in these Chapter 11 Cases.

28.     The terms of the Amended Credit Agreement are fair, reasonable and adequate and neither (a) adversely affect the conduct of these Chapter 11 Cases or prejudice the powers and rights that the Bankruptcy Code confers for the benefit of all creditors, nor (b) prevent motions by parties in interest from being decided on their merits. Similar to the facility approved in *Sky Valley*, the purpose of the Amended Credit Agreement is to enable the Debtors to maintain the value of their estates while formulating a confirmable plan of reorganization. *See also In re First South Sav. Ass'n*, 820 F.2d 700, 710-15 (5th Cir. 1987).

29.     The Amended Credit Agreement provides that the security interests and administrative expense claims granted to Lenders remain subject to the Carve Out as established

in the Original Order.  In *Ames Dep't Stores*, 115 B.R. 346 (Bankr. S.D.N.Y. 1990), the bankruptcy court found that such "carve-outs" are not only reasonable, but are necessary to insure that official committees and the debtor's estate will be assured of the assistance of counsel. *Id.* at 40.

30.    Likewise, the various fees and charges required by BofA were found to be reasonable in the First Amended Order.  Under the Amended Credit Agreement, the Debtors expect the upfront fees will be lower than those paid under the Post-Petition Credit Agreement because of the two-year term of the extension, and that ongoing fees and interest rates will be at or below comparable market rates and thus reasonable and appropriate under the circumstances. Indeed, courts routinely authorize similar lender incentives beyond the explicit liens and other rights specified in section 364 of the Bankruptcy Code. *See In re Defender Drug Stores, Inc.*, 145 B.R. 312, 316 (9th Cir. B.A.P. 1992) (authorizing credit arrangement under section 364 of the Bankruptcy Code, including a lender "enhancement fee").

31.    The Amendment is clearly for the benefit of the Debtors' estates and creditors as the means of furthering the Debtors' relationships with their vendors, and of preserving and enhancing the Debtors' operations.  The continued availability of credit under the Amended Credit Agreement and the ongoing availability of letters of credit should give the Debtors' vendors and suppliers the necessary confidence to continue ongoing relationships with the Debtors, including the extension of credit terms for the payment of goods and services, and be viewed favorably by the Debtors' employees and customers, and all parties-in-interest. Therefore, approval of the Amendment is beneficial to the continued operation and health of the Debtors' businesses.

32.    The Debtors negotiated the terms of the Amendment at arms' length and pursuant to their business judgment, which is to be accorded deference. *See, e.g., Brav v. Shenandoah*

*Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) (approving debtor-in-possession financing necessary to sustain seasonal business); *In re Ames Department Stores*, 115 B.R. 34, 40 (S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 of the Bankruptcy Code is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest").

33. Accordingly, the Lenders and BofA should continue to be accorded the benefits of section 364(c)(1) of the Bankruptcy Code with respect to the Amended Credit Agreement.

34. The Debtors believe that the approval of the Amendment is in the best interest of their bankruptcy estates, their creditors and all parties-in-interest, and that this Court should grant this Motion and approve the Amendment.

### Request For Immediate Interim Relief

35. In the alternative, if the Court is unable to enter an order approving the Amendment prior to April 1, 2006, the Debtors request, and the Agent has agreed to provide,[3] a sixty (60) day extension of the Post-Petition Credit Agreement through May 31, 2006 (the "Interim Extension") in order to obtain Court approval of the Amendment.

36. The necessity of approximately $33.5 million of Outstanding LOCs to the operation of the Debtors' businesses necessitates the extension be granted prior to the expiration of the Post-Petition Credit Agreement on April 1, 2006. The Outstanding LOCs have been

---

[3] The Agent's agreement to provide the Interim Extension is subject to the approval of the Lenders.

provided by the Lenders in connection with (a) numerous trade-related performance bonds, (b) certain insurance matters and (c) certain environmental bonding requirements.

37. It is essential that the Debtors immediately receive an extension of the Post-Petition Credit Agreement to ensure the preservation of the Outstanding LOCs to prevent defaults under the various related agreements and the irreparable harm caused by the damage to relationships with vendors and the loss of insurance coverage which would be caused by such defaults. In the event that the Court does not enter an Order approving the Amendment prior to the April 1, 2006 expiration of the Post-Petition Credit Agreement, the Agent has agreed to provide the Interim Extension. The Interim Extension has been negotiated in an effort to avoid the disruption of the Debtors' business operations which would result from the need to cash collateralize the Outstanding LOCs or face their termination if the Amendment is not approved prior to April 1, 2006.

38. The terms of the Interim Extension are identical to the terms of the Post-Petition Credit Agreement with the exception of the change of the termination date to May 31, 2006. The Debtors have agreed to pay BofA a fee of not more than $100,000.00 for the extension.

### Notice

39. Notice of this Motion has been given to: (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to the Committees and (v) all those parties that requested service and notice of papers in accordance with Fed.R.Bankr.P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court (i) enter an order approving the Amendment and approve those modifications to the Post-Petition Credit Agreement set out in the Amendment, or, in the alternative, if the Court is unable to enter an order approving the Amendment prior to April 1, 2006, enter an order approving the Interim Extension; and (ii) grant such other and further relief as is just and proper.

Dated: February 17, 2006

Respectfully submitted,

KIRKLAND & ELLIS LLP
James H.M. Sprayregen, P.C.
Janet S. Baer
Salvatore F. Bianca
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG,
JONES & WEINTRAUB P.C.

_____
Laura Davis Jones (#2436)
James E. O'Neill (#4240)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession