## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| W.R. Grace & Co., *et al.*, | Case No. 01-01139 (JKF) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: March 27, 2006 at 12:00 p.m.  (ET)**<br>**Objection Deadline: March 10, 2006 at 4:00 p.m (ET)** |

## LIBBY CLAIMANTS' MOTION FOR PAYMENT OF CERTAIN EXPENSES
## IN CONNECTION WITH CLAIMS ESTIMATION AND PLAN PROCESS

Claimants injured by exposure to tremolite asbestos from Grace's operations in and near Libby, Montana (the "Libby Claimants"),[1] by and through their counsel, Cohn Whitesell & Goldberg LLP, McGarvey, Heberling, Sullivan & McGarvey, P.C., Lewis, Huppert & Slovak, P.C., and Landis Rath & Cobb LLP (collectively, the "Libby Claimants' Counsel"), and with the assent of the Official Committee of Asbestos Personal Injury Claimants (the "PI Committee"), hereby move this Court for an order pursuant to Section 503 of the Bankruptcy Code authorizing and requiring payment of (a) the Libby Claimants' Counsel's legal fees incurred in connection with the asbestos personal injury claim estimation proceedings and the Chapter 11 plan process (and not in connection with any other aspect of this case), and (b) the expert witness fees incurred by the Libby Claimants in the estimation process.  This relief is necessary because— while the Libby Claimants have certain interests in common with the Official Committee of Asbestos Personal Injury Claimants (the "PI Committee") and for those purposes can be adequately represented by the PI Committee's professionals—the Debtors, as shown by their list

---

[1] As identified in the Amended and Restated Verified Statement of Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP Pursuant to Fed. R. Bankr. P. 2019 [Docket No. 11624], as it may be amended and restated from time to time.

of witnesses, have raised significant issues specific to Libby which the PI Committee has informed the Libby Claimants that the PI Committee does not plan to address.  On these issues, the Libby Claimants' interests diverge significantly from the majority of personal injury claimants on important aspects of the claims estimation and plan process—necessitating that the Libby Claimants be treated analogously to a subcommittee of the PI Committee, with separate professionals compensated by the bankruptcy estate to represent the interests of the Libby Claimants that cannot adequately be represented by the PI Committee.  The Libby Claimants have been advised that the PI Committee supports the relief sought herein.  In support of this Motion, the Libby Claimants state as follows:

## I.    Jurisdiction

1.    This Court has jurisdiction to entertain this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief requested herein are Sections 105(a) and 503 of the Bankruptcy Code.

## II.    Introduction

2.    On April 2, 2001 (the "Petition Date"), W.R. Grace & Co. and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

3.    Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to manage their businesses and financial affairs as debtors-in-possession.  On April 12, 2001, the United States Trustee appointed the PI Committee in the Debtors' cases.

2

4.    On the Petition Date, this Court approved joint administration of the Debtors' Chapter 11 cases for procedural purposes only, pursuant to Fed. R. Bankr. P. 1015(b) and Del.Bankr.LR 1015-1.

### III.    Background

5.    On November 13, 2004, the Debtors filed their Chapter 11 Plan of Reorganization (the "Plan") and proposed form of Disclosure Statement [Docket Nos. 6895, 6896] and their Motion for Entry of an Order Seeking the Estimation of Asbestos Claims and Certain Related Relief (the "Estimation Motion") [Docket No. 6899].    At the hearing on objections to the Disclosure Statement and Estimation Motion held on January 21, 2005, the Court ordered the PI Committee, the Futures Claimants Representative, and the Debtors to negotiate a case management order to govern the estimation of asbestos personal injury claims (the "PI Claims Estimation").

6.    On August 29, 2005, the Court entered the Case Management Order for the Estimation of Asbestos Personal Injury Liabilities [Docket No. 9301], which was subsequently amended on January 31, 2006 (the "PI CMO") [Docket No. 11697].    Pursuant to the PI CMO, the PI Claims Estimation will proceed with various discovery deadlines, culminating in a trial currently scheduled for November 2006. The PI CMO did not attempt to resolve a fundamental issue articulated by the Debtors and the PI Committee, namely, whether the PI Claims Estimation would (as proposed by the PI Committee) be on the basis of past verdicts and settlements or would (as proposed by the Debtors) include placing lower values (including zero) on some or all claims based on the Debtors' assertion of legal/medical criteria.  With respect to

3

these criteria, the Libby Claimants' interests diverge from those of the majority of personal injury claimants.

7.    Although the Libby Claimants hope and expect that this Court will ultimately accept the PI Committee's position that claims should be estimated on the basis of past verdicts and settlements, it has become clear from the Debtors' disclosure of witnesses to be called at the PI Claims Estimation trial that a substantial portion of the Debtors' evidentiary presentation will address Libby-specific issues. The Preliminary Expert Witness Disclosure for Asbestos PI Estimation submitted by the Debtors on December 19, 2005 [Docket No. 11378] includes Dr. Mickey E. Gunter, Ph.D., who has authored studies on Libby, and at one point, was a proposed witness for the Debtors in prepetition litigation against certain of the Libby Claimants.  The Debtors' Preliminary Non-Expert Witness Disclosure for Asbestos Estimation filed on February 3, 2006 [Docket No. 11718] includes at least the following individuals whose testimony is expected to address Libby-specific issues:  Brad Black, M.D. (physician and director of the Center for Asbestos Related Disease in Libby); Sharon Campolucci (director of the Agency for Toxic Substances and Disease Registry (ATSDR), who has worked on various Libby projects); Mary Kay Collins (Dr. Whitehouse's respiratory therapist who performed pulmonary function tests in Dr. Whitehouse's office); James Jay Flynn, M.D. (administrator of the Grace Libby Medical Program); Vikas Kapil (author of one or more publications on Libby); Jeffrey Lybarger (ATSDR director and an author of one or more publications on Libby); Dan Middleton (ATSDR official who has worked on Libby issues); Aubrey Miller (toxicologist and/or public health

4

officer for the EPA who has done work on Libby); Christopher Weis (toxicologist with the EPA
and has done work on Libby); and Alan Whitehouse, M.D. (pulmonologist and physician with
the Center for Asbestos Related Disease in Libby).[2]  In addition, the Debtors listed the "[p]ersons
most knowledgeable" concerning seven published studies on asbestos disease in Libby, Montana,
and the "[p]ersons most knowledgeable about any database maintained by the Agency for Toxic
Substances and Disease Registry in connection with" those studies.  The Debtors listed in their
disclosures no studies other than those concerning Libby.

       8.     Approximately 750 claimants are represented by Libby Claimants' Counsel.
Others have been diagnosed with Libby tremolite asbestos disease but are not represented by
Libby Claimants' Counsel; many of these people can also be expected to assert claims against the
Debtors at the appropriate time.  This is an important constituency in this Chapter 11 case.  The
claims of the Libby Claimants and others who suffer from Libby tremolite asbestos disease differ
in material respects from claims of the personal injury claimants represented by the remaining
members of the PI Committee.  The typical personal injury claimant has a claim based on
exposure to chrysotile asbestos, which was the type used in 95 percent of commercial
applications.  The Libby Claimants, by contrast, were exposed to tremolite asbestos.  Tremolite
asbestos has demonstrated much higher toxicity than chrysotile asbestos; tremolite asbestos is
about 10 times as carcinogenic and fibrogenic as chrysotile asbestos, and is hundreds of times
more productive of mesothelioma, the type of lung cancer specific to asbestos.  Tremolite
asbestos disease also manifests much greater progressivity; a person diagnosed with Libby
tremolite asbestos disease has approximately a 76 percent likelihood of progressing to severe

---

[2]  The importance that the Debtors place on Dr. Whitehouse's testimony is underscored by their Motion to Seek
Discovery from Dr. Alan Whitehouse and for a Protective Order Relating to Production of Documents from Dr.
Alan C. Whitehouse, filed three days ago [Docket No. 11850].

disease—about three times the progressivity rate for chrysotile asbestos disease. The pleural disease pattern manifested by Libby tremolite asbestos disease often results in severe impairment or death without radiographic interstitial disease or typical chrysotile markers of radiographic severity which have commonly been used in trust distribution provisions of asbestos company Chapter 11 plans. Finally, exposure pathways in Libby, Montana, are unprecedented. For decades there has been an unprecedented 24 hour per day contamination of the community's homes, playgrounds, gardens, and community air, such that the entire community has been designated a Superfund site and is listed on the Environmental Protection Agency's National Priorities List. Since exposure pathways are not limited to the workplace, Libby Claimants suffering from severe asbestos disease or death include not only former workers at the mine and milling facilities, but also the spouses and children of workers, and community members who had no direct contact with the mine.

9.    While substantial medical literature exists as to the foregoing differences between disease resulting from tremolite asbestos as compared to chrysotile asbestos, these differences are apparently disputed by the Debtors. This has placed the PI Committee in a difficult position. On the one hand, a huge majority of its constituents suffer from chrysotile asbestos disease and could benefit if Libby tremolite asbestos disease were treated the same as chrysotile for purposes of the Chapter 11 plan and trust distribution procedures. On the other hand, the Libby Claimants are part of the constituency that the PI Committee represents, and are entitled to adequate representation of their interests in the PI Claims Estimation and plan process even on matters where, because of divergence in the Libby Claimants' interests from those of the committee majority, the PI Committee is unable to provide such representation.

6

10.     The PI Committee has declined to designate witnesses on Libby-specific issues, but instead advised Libby Claimants' Counsel that, if they conclude such experts might be necessary, they must designate their own.  Accordingly, on December 19, 2005, the Libby Claimants designated Dr. Alan C. Whitehouse and Dr. David Egilman as thier experts in the PI Claims Estimation (the "Libby Expert Witnesses") in the event that the Debtors raise medical issues specific to the Libby Claimants [Docket No. 11373].  More broadly, the PI Committee does not plan at this time to defend against Libby-specific evidence or positions that Grace may assert, except to the extent that the PI Committee determines that any such matter may more generally affect the interests of personal injury claimants.  Accordingly, Grace's position concerning claims based on Libby tremolite asbestos disease will go unanswered in the PI Estimation by any official committee.  In the interest of justice, the Libby Claimants will need to participate in the depositions of all Libby-specific witnesses and present evidence on Libby-specific issues.  The Debtors' decision to raise Libby-specific issues in the context of the PI Claims Estimation, in combination the PI Committee not representing the interests of those who suffer from Libby tremolite asbestos disease, effectively compels the Libby Claimants to participate in the PI Claims Estimation.  Unless the relief sought in this motion is granted, the Libby Claimants will be the only party required to participate in the PI Claims Estimation whose expense of so participating will not be borne by the estate.

11.     Based on the foregoing, it is clear that (a) the interests of those who suffer from Libby tremolite asbestos disease diverge from the majority of the PI Committee's constituency on certain issues, (b) the Debtors intend to litigate such issues in connection with the PI Claims Estimation, and (c) the PI Committee cannot adequately represent the interests of the victims of Libby tremolite asbestos disease in connection with the PI Claims Estimation; and (d) the Libby

7

Claimants are the only party that can adequately represent, in the PI Claims Estimation, the interests of claimants suffering from Libby tremolite asbestos disease. Moreover, negotiations concerning a consensual plan for the Debtors are expected to take place during the time-frame of the PI Claims Estimation. In respect of such negotiations and other aspects of the plan process, the PI Committee cannot adequately represent the interests of the Libby Claimants for, *inter alia*, the reasons described above. The Debtors themselves, in their recently filed Status Report on the Progress of the Case [Docket No. 11756], have recognized the separate interests of the Libby Claimants by listing them as a separate agenda item ("Provisions regarding Libby claimants to be negotiated") in their checklist for the negotiation of a consensual plan.[3] In the same report, the Debtors drew this Court's attention to the interplay between criminal and civil liability in respect of the Libby Claimants[4]—another unique aspect of their position in this case on which they cannot be adequately represented by the PI Committee.

### IV.    Relief Requested

12.    Representation of a group of creditors with common interests is the function appropriately performed by an official committee. Where different groups of creditors have different common interests, multiple committees may be required in order to assure that each group is adequately represented. Recognizing that this solution can be expensive and cumbersome, and that certain of the Libby Claimants' interests can continue to be adequately represented by the PI Committee, the Libby Claimants do not seek a separate committee. Rather, they seek to be treated analogously to a subcommittee whereby they can be represented separately from the PI Committee on issues where their interests diverge from the rest of the committee, with the expense of such representation borne by the bankruptcy estate. It is

---

[3] Exhibit C, Item III.A.2.
[4] Report, at 2.

important to emphasize that the scope of services by Libby Claimants' Counsel for which estate compensation is sought includes only matters concerning the PI Claims Estimation and the plan process, and specifically does not include representation of the Libby Claimants in respect of pending or future requests of the Debtors to expand the Preliminary Injunction in Adversary Proceeding No. 01-771—to date the greatest source of contention between the Libby Claimants and the Debtors.  Given that the interests of non-Libby asbestos claimants will be represented in the PI Claims Estimation and the plan process by the PI Committee's professionals at the expense of the estate but those same professionals cannot represent the interests of the Libby Claimants, it is fair and appropriate that the Libby Claimants' Counsel and Libby Expert Witnesses also be paid by the estate for their services related to those matters.

13.    The relief requested is not unlike this Court's order providing for the bankruptcy estate to compensate counsel for holders of Zonolite Attic Insulation ("ZAI") claims.  Indeed, the benefit to the estate provided by the Libby Claimants' is more compelling.  While the ZAI claims are totally in dispute, the Debtors acknowledge that Libby Claimants have legitimate claims; the only dispute is to the value and appropriate treatment of such claims under a Chapter 11 plan.

14.    If the relief sought in this motion is granted, then in order to permit review of estate-compensated expenses of the Libby Claimants as to both scope and reasonableness, the Libby Claimants propose that applications for compensation and reimbursement of expenses by Libby Claimants' Counsel and the Libby Expert Witnesses be made subject to the same procedures as are applicable to Court-retained professionals pursuant to the Court's Amended Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Revised Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members dated April 17, 2002 (the "Fee Order") [Docket No. 1949].  The Libby

9

Claimants propose that Libby Claimants' Counsel and Libby Expert Witnesses be paid on an hourly basis, in accordance with the hourly rates at the time services are rendered. The current hourly rates of the Libby Claimants' Counsel are as follows:

| Firm | Hourly Rates |
|------|--------------|
| Cohn Whitesell & Goldberg LLP | Partners: $400 - 550<br>Associates: $195 - 270<br>Paralegal Assistants: $105 |
| McGarvey, Heberling, Sullivan & McGarvey, P.C. | Partners: $240<br>Associates: $150<br>Paralegal Assistants: $75 |
| Lewis, Huppert & Slovak, P.C | Partners:  $240<br>Associates:  $150<br>Paralegal Assistants:  $75 |
| Landis Rath & Cobb LLP | Partners:  $400 - 480<br>Associates:  $215 - 270<br>Paralegal Assistants:  $95 - 140 |

The current hourly rates of the Libby Expert Witnesses are $300 for Dr. Whitehouse and $450 for Dr. Egilman. In addition, also subject to allowance by this Court in accordance with the Fee Order, the Libby Claimants propose that Libby Claimants' Counsel and Libby Expert Witnesses shall also be reimbursed by the estate for all reasonable out-of-pocket expenses incurred in connection with the services that are eligible for compensation by the estate.[5]

---

[5] The division of labor among the Libby Claimants' Counsel is such that there will be no duplication of services rendered. CWG will continue to serve as the Libby Claimants' bankruptcy counsel with respect to this Chapter 11 case. MHSM and LHS will continue to serve as the Libby Claimants' personal injury counsel, which in the context of the PI Claims Estimation will include conducting/defending depositions and appearing in court to represent the Libby Claimants concerning disputes related to the underlying factual and medical basis of the Libby Claims. LRC will continue to act as local counsel.

## VII.    Notice and No Prior Motion

15.    Proper notice of this Motion has been given and the Libby Claimants submit that, given the nature of the relief requested herein, no other or further notice is necessary.

16.    No previous request for the relief sought herein has been made to this or any other Court.

## VIII.    Conclusion

WHEREFORE, the Libby Claimants respectfully request that this Court: (a) enter an order granting the Motion in substantially the form attached hereto; and (b) grant such other and further relief as this Court may deem just and proper.

Dated: February 20, 2006                    LANDIS RATH & COBB LLP

Adam G. Landis (No. 3407)
Kerri Mumford (No. 4186)
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE 19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450

-and-

Daniel C. Cohn, Esq.
Christopher M. Candon, Esq.
COHN WHITESELL & GOLDBERG LLP
101 Arch Street
Boston, MA 02110
Telephone:  (617) 951-2505
Facsimile:  (617) 951-0679

Counsel for the Libby Claimants

393.001-11211.doc