## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| **In re:** | ) |
|  | ) |
|  | ) **Chapter 11** |
| **W.R. GRACE & CO., et al.** | ) **Case No. 01-01139 (JKF)** |
|  | ) **(Jointly Administered)** |
|  | ) |
| **Debtors.** | ) **Objection Deadline: March 20, 2006** |
|  | ) **Hearing Date:  To be determined** |

**APPLICATION OF DAVID T. AUSTERN, FUTURE CLAIMANTS'
REPRESENTATIVE, FOR AUTHORIZATION TO EMPLOY
PIPER JAFFRAY & CO. AS FINANCIAL
<u>ADVISOR TO THE FUTURE CLAIMANTS' REPRESENTATIVE</u>**

David T. Austern, the Court-appointed legal representative for future asbestos claimants against the above-captioned Debtors (the "Future Claimants' Representative" or "FCR"), hereby submits this application (the "Application") for the entry of an Order, pursuant to sections 328 and 1103(a) of Title 11 of the United States Code (the "Bankruptcy Code"), authorizing and approving the retention and employment of Piper Jaffray & Co. ("PJC") as financial advisor to the Future Claimants' Representative.  In support of this Application, the Future Claimants' Representative relies upon the Declaration of Joseph J. Radecki, Jr. (the "Radecki Declaration"), a Managing Director of PJC, attached to this Application as Exhibit A, and further respectfully represents as follows:

### <u>Jurisdiction and Venue</u>

1.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  The statutory basis for the relief requested herein is section 1103(a) of the Bankruptcy Code.

## Background

2.      On April 2, 2001 (the "Petition Date"), W.R. Grace & Co. and 61 affiliated

entities (collectively, the "Debtors") each filed a petition for relief under chapter 11 of the

Bankruptcy Code. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors are

continuing in the management of their respective businesses and possession of their respective

properties as debtors in possession.

3.      By Order dated May 24, 2004, the Court appointed the FCR for these jointly

administered cases [Bankr. Dkt. No. 5645].

4.      The FCR previously sought employment of CIBC World Markets Corp. ("CIBC")

as his financial advisor, which was approved by the Court pursuant to an Order entered on

September 27, 2004 [Bankr. Dkt. No. 6479].

5.      Joseph J. Radecki, Jr., Jonathan Brownstein, Ritwik Chatterjee and other financial

advisors primarily responsible for this representation at CIBC have joined PJC effective as of

February 13, 2006 (the "Former CIBC Professionals"). The FCR desires to continue his

engagement of these financial advisors, and to engage their new firm, to continue to represent

him in these cases. On February 16, 2006, the FCR terminated the employment of CIBC,

effective as of February 10, 2006. The engagement agreement with PJC is substantially the same

in all material respects as the terminated engagement agreement between the FCR and CIBC

and, particularly, the provisions relating to indemnification, as more fully described herein, are

identical.

**Relief Requested**

6.    By this Application, the FCR seeks to retain and employ PJC as financial advisor in these chapter 11 cases, effective as of February 13, 2006, to provide advice on the matters described below, and respectfully requests entry of an order authorizing this retention.

**Basis for the Relief Sought**

7.    Effective as of February 13, 2006, subject to approval of the Court, PJC will provide financial advice to the Future Claimants' Representative in his capacity as the Court-appointed legal representative for future asbestos claimants against the Debtors. A copy of the engagement letter dated February 16, 2006, effective as of February 13, 2006, between the Future Claimants' Representative and PJC (the "Engagement Agreement"), is attached to the Radecki Declaration as Exhibit 1.

8.    Since June 4, 2004, the Former CIBC Professionals have provided financial advice to the Future Claimants' Representative in these cases. As a result of the Former CIBC Professionals' experience in these cases and in other asbestos bankruptcy cases, particularly as financial advisor to future claimants' representatives in such cases, the Former CIBC Professionals are familiar with these cases, and with the concerns and issues important to the Future Claimants' Representative and to asbestos personal injury claimants who may assert claims or demands in the future. Accordingly, the Future Claimants' Representative believes that the continued engagement of the Former CIBC Professionals, and the engagement of their new firm with respect to the matters described below, is essential to the Future Claimants' Representative's role in these cases, and that the Former CIBC Professionals' new firm is well suited to assist the Future Claimants' Representative as financial advisor during the chapter 11 process.

## Services to be Rendered

9.    Subject to the approval of this Court, PJC will be engaged to render the following services to the Future Claimants' Representative:

a)  assist the FCR in analyzing and reviewing the acts, conduct, assets, liabilities and financial condition of the Debtors;

b)  familiarize itself to the extent appropriate with the operation of the Debtors' businesses, advise the FCR with respect to a proposed restructuring of the Debtors and implementation of a trust as contemplated under Section 524(g) of the Bankruptcy Code including analyzing, negotiating and effecting a plan of reorganization or recapitalization for the Debtors, and, to the extent necessary, performing valuation analyses on the Debtors and their assets;

c)  evaluate the financial effect of the implementation of any plan of reorganization upon the assets or securities of the Debtors; and

d)  any other tasks as mutually agreed upon by PJC and the FCR.

10.    The above listed services are necessary and essential to the Future Claimants' Representative. The financial issues presented in these cases are very complex. The Debtors are a very large, multi-national corporation with over $2.0 billion in revenues. Significant areas that the FCR requires immediate financial advice include valuation and securities analyses, among others, which are extremely complicated in these cases given the nature of the Debtors' industry, and the level and nature of balance sheet assets and liabilities that impact the Debtors' valuation, such as tax, pension and environmental items. Given the recent significantly increased activity requiring financial analysis in these cases, including the parties seeking mediation and active negotiations for a plan of reorganization, it is necessary that the FCR maintain a financial advisor that is both qualified and familiar with the Debtors and these cases.

11.    PJC has indicated a willingness to act on behalf of, and render such services to, the Future Claimants' Representative, upon the terms set forth herein.

## Disclosure Concerning Connections
## Between PJC and Parties in Interest

12.    To the best of the Future Claimants' Representative's knowledge, except as otherwise set forth herein and in the accompanying Radecki Declaration, PJC does not have any connection with the Future Claimants' Representative, the Debtors, their affiliates, creditors or any other party in interest, or their respective attorneys and accountants, the United States Trustee, or any person employed in the Office of the United States Trustee. Based upon the information provided to him, the FCR believes PJC does not represent any other entity having an adverse interest in connection with these cases, is disinterested, and does not represent or hold an interest adverse to the interests of the Future Claimants' Representative with respect to the matters on which PJC is to be employed.

## Professional Compensation

13.    PJC and the Future Claimants' Representative have entered into an Engagement Agreement, pursuant to which PJC will act as the Future Claimants' Representative's financial advisor if authorized by this Court. Pursuant to the May 24, 2004 Order appointing the FCR, compensation, including professional fees and reimbursement of expenses, shall be payable to the Future Claimants' Representative and his professionals from the Debtors' estates subject to approval by the Court and subject to the Administrative Compensation Order.[1] The terms and conditions of PJC's retention are set forth in the Engagement Agreement attached to the Radecki Declaration.

---

[1]    "Administrative Compensation Order" refers to the Amended Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Revised Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, entered April 17, 2002 [Bankr. Dkt. No. 1949], as may be further amended by the Court.

14.    PJC intends to apply for compensation for professional services rendered in connection with these cases, and for reimbursement of actual and necessary expenses incurred, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and orders of this Court, including the Administrative Compensation Order. PJC has agreed to accept as compensation such sums as may be allowed by the Court for fees incurred for professional services and for reimbursement of reasonable and necessary expenses. Other than as set forth above, no arrangement is proposed between the Future Claimants' Representative and PJC for compensation to be paid in these cases.

15.    Pursuant to the Engagement Agreement, PJC agreed to perform the requested services for the following compensation:

a)   for the initial twelve (12) months of the engagement, starting upon the effective date of the Engagement Agreement, a cash fee of $100,000 per month, payable monthly in arrears; and

b)   following the initial twelve (12) month period, a fee to be negotiated that is mutually acceptable to the FCR and PJC, subject to approval of the Court, for each month thereafter up through the month of the effective date of a plan of reorganization or termination of the Engagement Agreement, whichever first occurs.

In addition, the Engagement Agreement provides for reimbursement of reasonable out-of-pocket expenses incurred in connection with the provision of services thereunder. Such expenses include, but are not limited to, reasonable fees and expenses of its legal counsel, travel and lodging expenses, word processing charges, messenger and duplicating services, facsimile expenses and other customary expenditures.

16.    PJC has agreed to invoice for these expenses in a manner and at rates consistent with charges made generally to PJC's other clients. Both PJC and the FCR recognize and acknowledge that the compensation proposed has been accepted by all parties based on their

understanding of the proposed transaction. The fees to be paid to PJC pursuant to the terms of

the Engagement Agreement are subject to the standard of review provided in section 328(a) of

the Bankruptcy Code and are not subject to any other standard of review, under section 330 of

the Bankruptcy Code or otherwise, provided, however, that the FCR may, on a monthly basis,

confer with PJC whether any adjustment shall be made in the monthly fee based on PJC's

activity level for such month. The FCR would then submit any agreement reached with PJC

with respect to any adjustment to this Court for approval.

17.     The Former CIBC Professionals, while members of CIBC, and the FCR, after

consultation, did on numerous occasions voluntarily reduce the monthly fee payable to CIBC

under the CIBC engagement agreement. Similar to the FCR's Engagement Agreement with PJC,

the CIBC engagement agreement provided for fees of $100,000 per month since December 2004,

with a similar monthly review to determine whether adjusting the monthly fee was warranted

given the level of activity. In accordance with this provision, the fee payable to CIBC was

reduced to $25,000 from the nominal $100,000 monthly cap for the months of August 2005

through December 2005, which resulted in an average hourly rate of $303 - $330 during these

months.

18.     Other than as set forth above, no arrangement is proposed between the FCR and

PJC for compensation to be paid in these cases.

19.     The Future Claimants' Representative has been advised by PJC that it has no

agreement with any other entity to share any compensation received, nor will any be made,

except as permitted under section 504(b)(1) of the Bankruptcy Code.

20.     Pursuant to the Engagement Agreement, PJC requires that the Debtors agree to

indemnify and hold harmless PJC and the "Indemnified Parties" as defined in Annex A to the

Engagement Agreement. *See* Radecki Declaration, Exh. 1. The indemnification procedures are

in substantially the same form as the indemnification provision approved by the United States

Court of Appeals for the Third Circuit in <u>In re United Artists Company, et al.,</u> 315 F.3d 217, 233

(3d Cir. 2003).

21.    The Engagement Agreement is substantially the same in all material respects as

the prior engagement agreement that existed between the FCR and CIBC. Furthermore, the

provisions that relate to the indemnification (*See* Radecki Declaration, Exh. 1, at Annex A) are

identical to the provisions of the prior engagement agreement between the FCR and CIBC.

<b><u>Request for Nunc Pro Tunc Authorization</u></b>

22.    Issues which require the FCR's review and input have arisen and continue to arise

in these cases, and the FCR requires the assistance of a financial advisor. In order to avoid

delaying this proceeding and the exercise of his duties as the Future Claimants' Representative,

the FCR asked PJC to begin work immediately after the effective date of its termination of the

employment of CIBC, February 10, 2006, contingent upon the Court's approval of this

Application. Given the need for financial advisory services, the FCR respectfully asks that the

employment of PJC be authorized effective as of February 13, 2006.

<b><u>No Prior Request</u></b>

23.    No prior application for the relief requested herein has been made to this or any

other Court.

<b><u>Notice</u></b>

24.    Notice of the Application and the requested relief has been provided to (i) counsel

and co-counsel for the Debtors, (ii) the Office of the United States Trustee, (iii) counsel for the

Official Committees appointed in these cases, as follows:  Unsecured Creditors, Asbestos

Property Damage Claimants, Asbestos Personal Injury Claimants, and Equity Holders, (iv) the

Fee Auditor, and (v) any party who has entered its appearance in these cases pursuant to

Bankruptcy Rule 2002  Accordingly, the Future Claimants' Representative believes that such

notice of the Application is appropriate and sufficient.

### Conclusion

**WHEREFORE**, the Future Claimants' Representative respectfully requests that the

Court enter an order substantially in the form attached hereto (1) granting this Application, (2)

authorizing the Future Claimants' Representative to retain and employ PJC as his financial

advisor, effective as of February 13, 2006, in these chapter 11 cases pursuant to sections 328 and

1103(a) of the Bankruptcy Code, in accordance with the terms set forth in this application, and

(3) granting such other and further relief as is appropriate.

DAVID T. AUSTERN,
FUTURE CLAIMANTS' REPRESENTATIVE

David T. Austern, in his capacity as the Court-appointed
Future Claimants' Representative
c/o Claims Resolution Management Corporation
3110 Fairview Park Drive, Suite 200
Falls Church, VA  22042-0683
(703) 205-0835

Dated: March _1_, 2006