**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **In Re:** | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| **Debtors.** | § | |
| | § | |

# FEE AUDITOR'S FINAL REPORT REGARDING FEE APPLICATION OF BILZIN SUMBERG DUNN BAENA PRICE & AXELROD LLP FOR THE EIGHTEENTH INTERIM PERIOD

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Fee Application of Bilzin Sumberg Dunn Baena Price & Axelrod LLP for the Eighteenth Interim Period.

## BACKGROUND

1. Bilzin Sumberg Dunn Baena Price & Axelrod LLP ("Bilzin") was retained as counsel to the Official Committee of Asbestos Property Damage Claimants. In the Application, Bilzin seeks approval of fees totaling $832,114.00 and costs totaling $671,295.08 for its services from July 1, 2005, through September 30, 2005.

2. In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued

January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on Bilzin an initial report based on our review, and received a response from Bilzin, portions of which response are quoted herein.

## DISCUSSION

3. In our initial report, we noted that on July 21, 2005, four firm members participated in a committee conference call. The total time spent including any preparation time was 2.80 hours for a total fee of $930.50. The entries are provided below.

| | | | | |
|---|---|---|---|---|
| 07/21/05 | ASD | 0.90 | 288.00 | Prepare for and attend committee call (.4);............. |
| 07/21/05 | SLB | 4.00 | 2300.00 | ...........; committee meeting (.3). |
| 07/21/05 | JMS | 0.80 | 240.00 | Committee call (.3);................. |
| 07/21/05 | MIK | 2.30 | 690.00 | ...........; Telephone conference with Committee regarding CMO hearing and follow-up call with LECG (1.8). |

We asked Bilzin to explain why it was necessary for four firm members to participate in this call. The firm responded as follows:

> The Fee Auditor requests an explanation regarding the participation of four Bilzin Sumberg members on a PD Committee call that occurred on July 21, 2005 for a total of 2.8 hours.
> First, it must be noted that the time at issue for the conference call was only 1.3 hours for the four professionals and not 2.8 hours as suggested by the Report. Matthew Kramer's (MIK) time entry of 1.8 should have been segregated as follows: .3 hours for the conference call and 1.5 hours for a follow-up call with LECG, the PD Committee's asbestos claims advisor, to discuss pending matters and other matters raised on the conference call.
>
> Second, with respect to the particular entries, as the Fee Auditor knows, Scott Baena

> (SLB) is the partner in charge of supervising all aspects of these cases and, thus, his participation on the call was necessary. Jay Sakalo (JMS) has primary responsibility for most of the day-to-day functions of the PD Committee and provided a status update to the PD Committee of certain pending matters. Prior to the call, Allyn Danzeisen (ASD) and MIK worked on separate pieces of an ongoing project and each presented a status report to the Committee as to their respective projects. Accordingly, given the brevity of the call (less than 20 minutes), Bilzin Sumberg submits that it was appropriate and efficient to have each attorney participate on the call.

We appreciate the response and offer no objection to these fees.

4. We noted that on September 8, 2005, again four firm members participated in a conference call. The total time spent including any preparation time was 3.50 hours for a total fee of $1,284.00. The entries are provided below.

| | | | | |
|---|---|---|---|---|
| 09/08/05 | ASD | 0.70 | 224.00 | Prepare for and attend committee meeting (.7). |
| 09/08/05 | SLB | 0.80 | 460.00 | Prepare for and attend PD committee meeting (.8). |
| 09/08/05 | JMS | 1.20 | 360.00 | Prepare for and attend committee call. |
| 09/08/05 | MIK | 0.80 | 240.00 | Committee call. |

We asked Bilzin to explain why it was necessary for four firm members to participate in this call. Bilzin responded as follows:

> The Fee Auditor requests an explanation regarding the participation of four Bilzin Sumberg members on a PD Committee call that occurred on September 8, 2005 for a total of 3.5 hours.
>
> This was the first full Committee call after the Debtors filed their first omnibus objection to property damage claims on September 1, 2005, which was titled "the 15th Omnibus Objection." In the omnibus objection, which weighed in at over 60 pages, the Debtors asserted multiple (in some instances, more than 8) objections to virtually every property damage claim filed in these cases. In addition, the return date to respond to the objection was only 20 days after it was filed. Thus, upon the filing of the omnibus objection, it was necessary for Bilzin Sumberg to deploy sufficient resources to review and analyze the omnibus objection in order to be able to properly advise the PD Committee on the Committee call in light of the extremely abbreviated

> timeframe available to file a response to the objection. Accordingly, Messrs. Baena, Sakalo, Kramer and Danzeisen each reviewed distinct components of the objection in advance of the PD Committee call. During the call, Mr. Baena provided an overall review of the objection as well as points for the Committee to consider based upon the analyses conducted by Messrs. Sakalo, Kramer and Danzeisen, who were each in attendance to answer specific questions of the Committee in respect of the objection. Indeed, without waiving any privileges, the Committee had a number of questions that involved specific areas of the objection analyzed by the Bilzin Sumberg attorneys. In addition, during the call Mr. Sakalo provided an update as to other pending matters in the bankruptcy cases.

We appreciate the explanation and offer no objection to these fees.

5. We noted that on September 7, 2005, six firm members participated in conference calls. The total time spent including any preparation time was 29.80 hours for a total fee of $11,303.00. The entries are provided below.

| | | | | |
|---|---|---|---|---|
| 09/07/05 | AS | 2.30 | 724.50 | Conference and telephone conference with Dan Speights, Martin Dies, Allan Runyan, Scott Baena, Allyn Danzeisen, Matt Coglianese, and Adrian Delancy to discuss methodology estimation issues. |
| 09/07/05 | AS | 2.50 | 787.50 | Conference with Scott Baena, Allyn Danzeisen, Matt Coglianese, and Adrian Delancy to review Debtors' Fifteenth Omnibus Objection and determine which ones should be responded to by the Committee. |
| 09/07/05 | ASD | 11.00 | 3520.00 | Telephone conference with Dan Speights, Martin Dies and Allyn Runyan; interoffice conference with Bud Fairey, Scott Baena, Jay Sakalo, Allen Smith, Adrian Delancy and Matt Coglianese regarding methodology issues (2.3);.............; interoffice conference with Scott Baena, Jay Sakalo, Adrian Delancy, Allen Smith and Matt Coglianese regarding response to 15 Omnibus Objection (2.5);.......... |
| 09/07/05 | SLB | 3.30 | 1897.50 | Prepare for and conduct telephone conference with PD committee members regarding Phase I issues (3.3). |
| 09/07/05 | SLB | 4.40 | 2530.00 | Conference with J. Sakalo et al regarding debtors' |

| | | | | |
|---|---|---|---|---|
| | | | | objections to PD claims and the PD committee's response thereto (2.5);............. |
| 09/07/05 | JMS | 8.60 | 2580.00 | ............; lengthy telephone conference with S. Baena, A. Danseizen, D. Speights, M. Dies, A. Runyan and others regarding methodology issues (2.3); lengthy conference with S. Baena, A. Danzeisen, A. Delancy, M. Coglianese regarding 15th Omnibus objection (2.5);................. |
| 09/07/05 | MPC | 6.50 | 2600.00 | .............; telephone conference with D. Speights, Martin Dies, and Allan Runyon regarding Daubert/estimation team and methodology estimation issues (2.3); meeting with S. Baena, J. Sakalo, A. Delancy, A. Smith and A. Danzeisen regarding PD committee's response to Debtor's 15th omnibus objections (2.5);............... |
| 09/07/05 | ACD | 9.10 | 2957.50 | Telephone conference with Dan Speights, Martin Dies, Allan Runyan, S. Baena, J. Sakalo, A. Danzeisen, M. Coglianses, A. Smith and J. Moon regarding methodology estimation issues (2.3); prepare for meeting on response ti Debtors' 15th Omnibus Objection (.5); meeting with A. Smith , A. Danzeisen, S. Baena, M. Coglianese and J. Sakalo regarding response to Debtors' 15th Omnibus Objection (2.5);.............. |

We asked Bilzin to explain why it was necessary for six firm members to participate in these calls.

The firm responded as follows:

> The Fee Auditor requests an explanation regarding the attendance of six firm members on one conference call and one in-office conference on September 7, 2005. As explained below, the participation of each attorney was necessary.
>
> First, some background is helpful. As we believe the Fee Auditor is aware, the estimation of property damage claims (the "PD Estimation") is one of the most critical aspects of the PD Committee's function at the present time. The task of estimating thousands of filed property damage claims is unprecedented and necessitates a full-time team devoted to the host of issues that must be addressed for the PD Committee to properly estimate the claims. As an example of this task's complexity, the Debtors seek to reduce their liability owing to these claimants based

on such purported defenses as (a) constructive notice; (b) actual notice; (c) assumption of risk; and (d) lack of hazard of Debtors' asbestos products.

In addition, and more germane to the conference call and meeting in question, as part of the Court's August 29, 2005 case management order governing the PD Estimation, the Debtors sought a ruling that the Court should conduct a "Phase I" hearing on the proper methodology – air sampling versus dust sampling – to determine hazard. The Court ruled that the PD Committee was authorized to file a brief opposition to such process. As a result, the pressing need at the beginning of September was the PD Committee's responsibility to prepare its brief in opposition to the inclusion of the Phase I methodology issue as part of the PD Estimation. Accordingly, Bilzin Sumberg availed itself of certain of its litigation attorneys with technical and scientific backgrounds. Moreover, at the time of these entries, the PD Committee did not yet possess the services of special counsel in respect of the PD Estimation, including Phase I's highly scientific and technical aspects. It is also worth noting that upon Mr. Dies' retention as special counsel related to the PD Estimation, he was able to utilize the significant work product prepared by the Bilzin Sumberg attorneys who were significantly involved in the Phase I briefing.

The focus of the conference call was to discuss the history of "science" issues in the underlying property damage litigations in the tort system with members of the PD Committee involved in such litigation. This call allowed Bilzin Sumberg to gain invaluable insight into such historical issues in the most efficient manner possible. As to the interoffice conference, Bilzin Sumberg attorneys met to discuss the information provided by the Committee members on the call earlier that day in order to meld such information into the bankruptcy proceeding and the issues implicated by the Court's case management order.

With respect to the particular attorneys, Mr. Baena is the partner in charge of supervising all aspects of these cases and, thus, his participation was necessary. Mr. Sakalo's participation was also necessary as he possesses most of the day-to-day knowledge as well as substantive knowledge of the underlying claims. Matt Coglianese (MC) holds a PhD in biology, and is an experienced litigator in toxic torts, which was extraordinarily helpful in connection with the Phase I briefing. Allen Smith (AS) is a highly seasoned litigator with an expertise in *Daubert* issues, who offered strategic insights during the calls. Allyn Danzeisen possessed much knowledge as to the overlap between the 15th Omnibus Objection and the Phase I proceeding, which required her attendance. Further, as numerous complex and detailed research assignments were discussed on the calls, it was imperative to include junior associates James Moon (JM) and Adrian Delancy (ACD) as they were responsible for completing many of the research assignments discussed.

We appreciate the response and offer no objection to these fees.

6. We noted that during the application period WR ($150), LMF ($150), AM ($130) and

GG ($130) did data entry work. The total time spent was 42.20 hours for a total fee of $5,904.00. The entries are provided below.

| | | | | |
|---|---|---|---|---|
| 09/06/05 | WR | 4.00 | 600.00 | Update property damage claims' register database to include Debtor's 15th omnibus objection information. |
| 09/07/05 | LMF | 8.50 | 1275.00 | Attend to data entry on claims chart per 15th omnibus objection to PD claims (8.5). |
| 09/07/05 | AM | 7.50 | 975.00 | ...........; input relevant data into master claims database. |
| 09/07/05 | GG | 6.60 | 858.00 | Update PD claims chart with data from 15th Omnibus objection to PD claims (6.6). |
| 09/08/05 | LMF | 5.20 | 780.00 | Attend to updating database per 15th omnibus objections to pd claims (5.2). |
| 09/08/05 | AM | 3.60 | 468.00 | Review debtors' 15th omnibus objections and input relevant data into master claims database (3.6). |
| 09/08/05 | GG | 3.60 | 468.00 | Update PD claims chart with data from 15th Omnibus objection to PD claims (3.6). |
| 09/09/05 | WR | 3.20 | 480.00 | Input property damage claim information regarding Debtor's 15th Omnibus Objection. |

We are concerned whether these are appropriate tasks for these professionals to be billing at their full hourly rates. On the issue of adjusting rates downward for certain tasks, the Third Circuit seems fond, in the bankruptcy context, of quoting its opinion in Ursic v. Bethlehem Mines, 719 F.2d 670, 677 (3d Cir. 1983)that "[r]outine tasks, if performed by senior partners in large firms, should not be billed at their usual rates. A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn." See Zolfo, Cooper & Co.v. Sunbeam-Oster Co., Inc., 50 F.3d 253, 260 (3rd Cir. 1995). While we realize that these timekeepers are not presented as senior partners nor billed as such, we believe the spirit of the Court's opinion would still apply in this instance. We asked Bilzin

to explain why the cited tasks should not have been billed at a substantially lower rate. Bilzin responded as follows:

> The Fee Auditor questions why time spent by certain paraprofessionals should not have been billed at reduced rates for "data entry work." The Fee Auditor misunderstands the nature and scope of work performed by the four paraprofessionals at issue in these time entries. First, these paraprofessionals have been instrumental in creating a substantial, navigable database to house an inordinate amount of information concerning over 4000 property damage claims. The paraprofessionals have parsed through the lengthy 15th Omnibus Objection to determine which of the Debtors' litany of objections (often over 8 per claim) apply to which claims. Once such information was filtered by these individuals, they painstakingly inputted the information into the database. In addition, the paraprofessionals have digested each of the over 4000 proofs of claims, objections to the proofs of claims, as well as documents attached to the proofs of claims and inputted relevant information from these documents into the database. In total, over 30,000 entries have been inputted into the database by the paraprofessionals. Thus, Bilzin Sumberg submits that such work was far more than just "data entry", but, rather, substantive analysis of the claims at issue.

We appreciate the response; however, the explanation works to justify the need for the data entry much more than it supports the billing level of those involved in that process. While we do not question the need for the creation and maintenance of the database, we suggest that this work is more appropriately billed at $60.00 per hour. We thus recommend a reduction of $3,372.00 ($5,904.00/billed minus $2,532.00/ billed hours calculated at $60.00 per hour) in fees.

7. We noted that on September 6, 2005, MEW has a time entry listed as 0.90 hours for a total fee of $382.50. The entry is provided below.

| | | | | |
|---|---|---|---|---|
| 09/06/05 | MEW | 0.90 | 382.50 | Review case management order (.3); conference with S. Baena regarding Witness and Exhibit List preparation (.2). |

The parenthetical entries total only 0.50 hours for a fee of $212.50. The difference in fee totals is $170.00. We asked Bilzin to explain whether this was an inadvertent oversight, and whether the

difference in the fee total should then be deducted.   Bilzin responded as follows:

> Bilzin Sumberg will reduce its fees by $170.00 as the time entry at issue in paragraph 7 was inadvertently inputted at .9 hours rather than .5 hours.

We appreciate the response and thus recommend a reduction of $170.00 in fees.

8.      Finally, we noted two entries for miscellaneous costs totaling $627,972.92 relating

to expert witness fees.  The entries are provided below.

| | | | |
|---|---|---|---|
| 09/29/05 | Miscellaneous Costs | Professional/Expert fees related to PD Estimation for May 2005 $298,017.56 | 298,017.56 |
| 09/29/05 | Miscellaneous Costs | Professional/Expert fees related to PD Estimation for June 2005 $329,955.36 | 329,955.36 |

We asked Bilzin to provide all appropriate fee and expense detail for those firms and/or individuals

for review.   Bilzin responded as follows:

> The Fee Auditor has requested to review the fee and expense detail of the PD Committee's estimation expert LECG for the period May and June 2005.  The two miscellaneous cost entries at issue total $627,972.92.  First, Bilzin Sumberg notes that the Court has approved using such line-item entries for an expert's fees and costs in these chapter 11 cases to protect the confidentiality of the expert's work product related to the PD Estimation, as LECG is a retained expert for that proceeding. Second, Bilzin Sumberg is aware that Kirkland & Ellis, the Debtors' bankruptcy counsel, and other estate professionals have utilized such line items in their monthly invoices to both preserve the confidentiality of their experts' work product and seek payment of their experts.  Last, undersigned, at the Court's direction, previously advised the Fee Auditor of such billing arrangements.  Bilzin Sumberg does not object to providing the Fee Auditor with the fee and expense detail of its expert provided that the Fee Auditor agrees to enter into a confidentiality arrangement.

We appreciate the response and concur that unaudited line-item entries regarding experts' fees have

been approved by the Court in this and other pending asbestos cases in order to protect

confidentiality.  While we do not believe that it is necessary for us to review the fee and expense

detail of the expert at this time, we reserve the opportunity to request from Bilzin the referenced

detail should the Court deem it appropriate. Thus we offer no objection to these expenses at this time.

## CONCLUSION

9. Thus we recommend approval of fees totaling $828,572.00 ($832,114.00 minus $3,542.00) and costs totaling $671,295.08 for Bilzin's services from July 1, 2005, through September 30, 2005.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:______________________________

Warren H. Smith
Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 1275
Dallas, Texas 75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 9th day of March, 2006.

______________________________
Warren H. Smith

**SERVICE LIST**
Notice Parties

**The Applicant**

Scott L. Baena
Jay M. Sakalo
BILZIN SUMBERG DUNN BAENA
PRICE & AXELROD LLP
2500 First Union Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2385

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801