## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **W.R. GRACE & CO.,** *et al.,* | **Case No. 01-1139 (JKF)** |
| **Debtors** | |

**GOVERNMENT'S OBJECTION TO DEBTORS' MOTION FOR AUTHORIZATION TO SEEK DISCOVERY FROM DR. ALAN C. WHITEHOUSE AND FOR A PROTECTIVE ORDER RELATING TO PRODUCTION OF DOCUMENTS**

The debtors, W.R. Grace & Co. and its affiliated companies (collectively "Grace" or "Debtors") have moved this Court for an order authorizing Grace to seek factual discovery from Dr. Alan C. Whitehouse and for a protective order covering documents disclosed during the course of said discovery in a manner consistent with the protective order issued by the United States District Court, District of Montana, in *United States v. W.R. Grace, et al.*, CR 05-07-M-DWM. (District of Montana, November 23, 2005). In support of their motion, Grace makes at least two erroneous assertions: First, that the district court in Montana has ordered the government to produce all of Dr. Whitehouse's private medical records for review by Grace and its experts in the context of the criminal proceeding; and, second, that the government has represented that it will provide Grace access to all of Dr. Whitehouse's private medical files. For this reason and others set forth below, Grace's motion should be denied.

### I.    THE MONTANA DISTRICT COURT DID NOT ORDER DISCLOSURE OF ALL PRIVATE MEDICAL RECORDS.

A review of the Montana District Court's order attached as Exhibit 1 to Grace's motion reveals that the court only ordered disclosure of private medical records of <u>testifying</u> victim/witnesses. (See Exhibit 1, p. 14-17). The remainder of the district court's order concerns medical records contained in a study conducted by ATSDR of

which Dr. Whitehouse took no part. The Montana district court ordered the ATSDR records redacted before disclosure to remove all identifying information. Therefore, the Montana district court's order required disclosure of private medical records relating to only approximately 46 testifying victim/witnesses.

## II.    THE GOVERNMENT DOES NOT CONTROL ACCESS TO THE PRIVATE MEDICAL RECORDS.

Grace's motion attaches a proposed Subpoena Duces Tecum and Notice of Deposition to Dr. Whitehouse which Grace intend to have issued if authorized by this Court. (Attachment 5 to debtors' motion). Grace asserts that in the context of the Montana criminal case, the government has represented that it will provide access to the private medical information listed in the subpoena. This assertion is incorrect. In fact, the government agreed to facilitate the criminal defendants' review or the voluminous private medical records. However, the government does not possess these private medical records. The government has not reviewed these private medical records. The government does not control access to these private medical records. Possession of and access to these private medical records lies solely within the control of Dr. Whitehouse and the CARD clinic at Libby, Montana. Therefore, the government could not have "agreed" to provide these private medical records.

## III.    PRIVACY RIGHTS, HIPPA, AND MONTANA LAW REQUIRE REDACTION OF THE PRIVATE MEDICAL RECORDS.

Grace's motion implicates the same issues previously litigated before the Montana district court in the context of the criminal defendants' motion to compel production of medical records. For brevity, the government refers this Court to pages 4-7 of its response to defendants' motion to compel production of medical records. (Attached as Exhibit A). In addition, the government sites this Court to Montana state law at § 50-16-801, et seq. MCA where Montana's "HIPPA" is codified. These authorities make it clear that if the debtors want to review and copy the private medical

records at issue, those records must be redacted as required by the Montana district court's order of November 23, 2005 concerning medical records. (Attachment 1 to debtors' motion).

The 550 patients in Dr. Whitehouse's files deserve all the privacy protections accorded by the Montana district court to all non-testifying victims in the criminal case. Grace's needs can be well served without infringing on these patients' privacy rights by having their experts review only redacted copies of these private medical records.

## IV.    GRACE'S MOTION IS AN EFFORT TO OBTAIN DISCOVERY PROHIBITED BY THE MONTANA DISTRICT COURT'S ORDER

By order dated December 5, 2005 the Montana district court denied Grace's motion to depose Dr. Whitehouse in the criminal case. (Attached as Exhibit B). In an effort to obtain discovery of matters concerning the criminal case, Grace has moved this Court for authorization to depose Dr. Whitehouse. The government is concerned that Grace is attempting to obtain discovery in the context of this case that it cannot obtain in the criminal case. This Court should not allows such discovery tactics.

C:\Documents and Settings\mdavis1\Local Settings\Temporary Internet Files\OLK12A\Bankruptcy pleading.wpd

## IV.  CONCLUSION

For all of the foregoing reasons, the United States objects to Grace's motion for authorization to seek discovery from Dr. Alan C. Whitehouse and for a protective order relating to production of documents.  The United States respectfully requests this Court deny said motion or in the alternative, allow such discovery only after completion of trial in the Montana criminal case presently set to begin September 11, 2006.

RICHARD G. ANDREWS
Acting United States Attorney

By:/s/Ellen W. Slights
    Ellen W. Slights
    Assistant United States Attorney
    Delaware Bar I.D. No. 2782
    The Nemours Building
    1007 Orange Street, Suite 700
    P. O. Box 2046
    Wilmington, DE 19899
    (302) 573-6277
    Ellen.Slights@usdoj.gov

DATED this 10th day of March, 2006.

# EXHIBIT  A

**KELLY JOHNSON**
**Acting Assistant Attorney General, ENRD**
**DAVID M. UHLMANN**
**Chief, Environmental Crimes Section**
**KEVIN M. CASSIDY**
**Trial Attorney**
**Environmental Crimes Section**

**WILLIAM W. MERCER**
**United States Attorney**
**KRIS A. MCLEAN**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 8329**
**Missoula, MT 59807**
**105 E. Pine, 2nd Floor**
**Missoula, MT 59802**
**Phone: (406) 542-8851**
**FAX: (406) 542-1476**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

FILED
MISSOULA, MT

2005 AUG 19 PM 4 41

PATRICK E. DUFFY

BY _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF MONTANA

### MISSOULA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | **CR 05 - 07-M-DWM** |
| **vs.** | |
| **W.R. GRACE, ALAN R. STRINGER, HENRY A. ESCHENBACH, JACK W. WOLTER, WILLIAM J. McCAIG, ROBERT J. BETTACCHI, O. MARIO FAVORITO, ROBERT C. WALSH** | **GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF MEDICAL RECORDS** |
| **Defendants.** | |

The United States, hereby submits its brief in opposition to Defendants' Motion to Compel Production of Medical Records.

N:\crim\04r0395#141558-v1-kmc_WRG_reso_brief_re__med_records_(FINAL_VERSION).WPD        1

Rule 16 does not require the Government to produce the medical records underlying the Agency for Toxic Substances and Disease Registry (ATSDR) Screening Study in Libby. To the extent that individual witnesses or their treating physicians will testify in the Government's case-in-chief regarding their medical conditions, the Government intends to disclose those individuals' relevant medical records. Defendants' claims that such records must be unredacted are excessive, intrusive to individuals' rights of privacy, and entirely without merit based on statutory and case law.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1999, EPA representatives arrived in Libby, Montana to investigate reports of a potential hazardous waste emergency relating to asbestos contaminated vermiculite from W.R. Grace's mine. In conjunction with EPA, ATSDR also began an investigation in Libby into potential adverse health effects from exposure to asbestos contaminated vermiculite. As part of its investigation, ATSDR conducted a medical testing program in the Libby area. *See* Def. Mot., Ex. B. The study found that of the 6,668 participants who received chest x-rays in the two rounds of testing, almost 18% (or 1,186) showed pleural abnormalities. *See id.* at 14. Based, in part, on ATSDR's findings, the Indictment alleged that, "[t]o date, approximately 1,200 residents of the Libby, Montana area have been identified as having asbestosis related pleural abnormalities as a result of being exposed to tremolite asbestos produced by W.R. Grace at the Libby Mine."

On August 2, 2005, Defendants moved this Court to compel the Government to produce all unredacted medical records that will be used by the Government in trial (under Federal Rules of Criminal Procedure 16(a)(1)(E) and (F)). The Government files this response.

## II.   ARGUMENT

### A.   The Government is not Required to Provide the Medical Records Underlying the ATSDR Study

Rule 16 requires production of materials "within the government's possession." Fed. R. Crim. P. 16. The prosecution team is not and has never been in possession or control of the medical records underlying the ATSDR screening study conducted in Libby in 2000 and 2001. Those records are maintained by the Department of Health and Human Services. As such, the Government is not required to produce them under Rule 16.

As the Defendants recognize, the allegations in the Indictment are based, in part, on the findings of the ATSDR study. The Government certainly intends to prove the allegations of risk of harm, and attendant health effects, to certain individuals and the Libby community posed by W.R. Grace's asbestos contaminated vermiculite. Specifically, regarding the approximately 1,200 people identified by the ATSDR study as having asbestos related pleural abnormalities, the Government will likely present evidence in the form of expert testimony. As the Defendants know, the deadline for disclosure of expected expert witness testimony is September 30, 2005. To the extent that the ATSDR study will form the basis for testimony by Government expert witnesses, the Government will notify the Defendants at that time.

### B.   The Government Will Produce Medical Records of Individual Government Witnesses with Personal, Identifying Information Redacted

The Government is in the process of collecting medical records from individuals who may be witnesses in the Government's case-in-chief. To the extent that any of these individuals or their treating physicians will testify regarding their medical conditions, the Government intends to disclose relevant medical records in a redacted

form.[1]  The Government is currently seeking releases from individuals whose medical records may be required to be produced.  The Government also intends to move the Court for a protective order to further protect the privacy of the individual witnesses.

To the extent that any of the medical records produced by the Government to date are illegible as a result of low-quality print-outs from hospitals, scanning problems, or any other processing issues that inevitably arise during discovery, Defendants can inform the Government of the bates numbers of documents that are illegible, and the Government will attempt to obtain higher-quality copies of such documents.[2]

### C.   Redaction of Medical Records Is Essential to Protect Individuals' Privacy and Will Not Prejudice Defendants

Defendants have no need for or right to unredacted medical records that outweighs the substantial privacy interests individuals have in protecting personal and sensitive medical information.  Redacted medical records provide the Defendants with the information necessary for their analysis and conclusions regarding individual medical conditions.  Patients' names and contact information, among other information, are unnecessary in making such determinations.  In their motion, the Defendants acknowledge as much when they list their reasons that the medical records are material to the preparation of their defense—(1) "To Determine If The Injuries The Government Intends To Prove Were Caused By Conduct During the Conspiracy Period" and (2) to prove that the Indictment overstates the health effects caused by the Defendants'

---

[1] The Government has already begun this process by disclosing more than 2,000 pages of medical records through the discovery process to-date and will continue to provide records as soon as they are obtained by the Government and redacted.  The files are from several doctors (such as Doctors Whitehouse and Black) as well as results from pulmonary clinic screenings. The records include information such as data from spirometry, lung volume, airway mechanics, and airways resistance tests; and private exams.  All of the records have been redacted to ensure that private personal information is not revealed, and the Government will continue to provide documents in this manner.

[2] An initial review of the documents provided shows very few illegible documents. Of the illegible documents, some are difficult to comprehend because of poor handwriting in records such as doctor's reports. This issue cannot be avoided and, needless to say, cannot be attributed to the Government.

conduct. Def. Mot. at 8. Neither of these purposes requires that the identities of individuals be disclosed.[3]

Ninth Circuit courts conduct a balancing test when considering the importance of disclosure of medical records and individuals' privacy. *See, e.g., In re Crawford*, 194 F.3d 954, 959 (9th Cir. 1999) ("Our precedents demand that we 'engage in the delicate task of weighing competing interests' to determine whether the government may properly disclose private information."), *citing, Doe v. Attorney Gen. of United States*, 941 F.2d 780, 795-96 (9th Cir. 1991), *vacated on other grounds by Reno v. Doe by Lavery*, 518 U.S. 1014 (1996). Here, a balance can be struck where Defendants receive the required information but individuals' privacy is also protected. The importance of redacting patients' medical records far outweighs any need for information that would not be relevant to medical diagnoses, and redaction is essential to insuring that sensitive information regarding unrelated medical and other matters is not improperly revealed to Defendants and potentially the public.

Redaction is particularly important in this case, where patients whom Defendants allegedly have injured already would be subject to a second injury in the form of violations of their right to privacy if unredacted records were disclosed. Further, if this information were not under a protective order, the information could also reach sources not directly affiliated with Defendants, thus improperly allowing public access to private information.

Ninth Circuit courts have repeatedly emphasized the importance of maintaining individuals' privacy in medical records. *See, e.g., Tuscon Women's Clinic v. Eden*, 379 F.3d 531, 551-52 (9th Cir. 2004), *citing, Whalen v. Roe*, 429 U.S. 589, 599 (1977) (discussing individuals' "constitutionally protected interest in avoiding 'disclosure of personal matters,' including medical information."); *Doe v. Attorney Gen. of United*

---

[3] The Defendants' argument that the Indictment overstates adverse health effects is an issue more appropriately addressed at other stages of the litigation.

N:\crim\04\0395#141508-v1-kmc_WRG_resp_brief_re_med_records_(FINAL_VERSION).WPD    5

*States*, 941 F.2d at 795 (recognizing the "individual interest in avoiding disclosure of personal matters") (quoting *Whalen* 429 U.S. at 599 ). In doing so, courts have required that adequate protections be in place to prevent disclosure of private information. *In re Crawford*, 194 F.3d at 959 (discussing the need to consider, when weighing competing interests, "the adequacy of safeguards to prevent unauthorized disclosure"); *Crenshaw v. Mony Life Ins. Co.*, 318 F. Supp. 2d 1015, 1029 (S.D. Ca. 2004); *Hutton v. City of Martinez*, 219 F.R.D. 164, 167 (N.D. Ca. 2003) (production of medical records not precluded provided an "adequate protective order" was in place).

The Supreme Court, in requiring disclosure of redacted records, only did so under the "express condition that parties agree to a protective order ensuring the privacy of patients." *Reproductive Services, Inc. v. Walker*, 439 U.S. 1307, 1309 (1978). Even redacted medical records can be insufficient in protecting individuals' private matters:

> whether the patients' identities would remain confidential [in the redacted records] is questionable at best. The patients' admit and discharge summaries arguably contain histories of the patients; prior and present medical conditions, information that in the cumulative can make the possibility of recognition very high.

*Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 929 (7th Cir. 2004)(quotations omitted).

The instant case presents a similar problem to that discussed in *Ashcroft*. Although the Government insists that patients' names be redacted when medical records are disclosed, individuals reading the records could compile various records with similar medical information to develop an entire medical "history" of a given patient, thus imprudently delving into affairs that are beyond the subject matter of the instant case. Additionally, the government has provided Defendants with a preliminary witness list. Given the amount of time before trial, records could be pieced together to reveal private identifying information. A protective order, in addition to redaction, is thus the *minimum* acceptable identity protection for the patients in the case. *See, e.g.*, 45 C.F.R. § 164.514 (HIPPA regulations regarding disclosure of redacted information requiring that

"the covered entity does not have actual knowledge that information could be used alone or in combination with other information to identify an individual who is a subject of the information.").

### D. HIPAA Demonstrates Congress' Commitment to Medical Record Privacy

Congressional policy as well as case law has strongly emphasized the importance of maintaining the privacy of medical records. Congress's most definitive assertion of the need for medical privacy was codified in the Health Insurance Portability and Accountability Act ("HIPAA").[4] HIPAA acknowledges a "'strong federal policy' of protecting medical records." *United States v. Mazzola*, 217 F.R.D. 84, 88 (D. Mass. 2003) (quoting *United States v. Sutherland*, 143 F. Supp. 2d 609, 612 (W.D.Va. 2001)). HIPAA also has a strict redaction policy for individually-identifiable health information (such as the information in the instant case), requiring that state laws that are more strict than this policy supersede HIPAA in the case of individually identifiable information. *See Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d at 926 (7th Cir. 2004).

Defendants choose to ignore HIPAA when requesting unredacted medical records, only mentioning it briefly in a footnote and stating that "Defendants will, of course, work with the Government and the Court to devise a method of production that will satisfy the strictures of HIPPA and the requirements of Rule 16." *See* Def. Mot. at n.4. However, a request to compel production of entirely unredacted medical documents, without a guarantee of a protective order, blatantly violates the letter and the spirit of HIPAA. *See, e.g.*, 45 C.F.R. § 164.514 (listing personal identifying information to be removed when redacting medical records).

---

[4]Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191.

III.    **Conclusion**

For the foregoing reasons, the Government respectfully requests that the Court deny Defendants' request to compel production of *unredacted* medical records that will be used by the Government in trial.

DATED this ___19th___ day of August, 2005.

WILLIAM W. MERCER
United States Attorney

KRIS A. McLEAN
Assistant United States Attorney

KEVIN M. CASSIDY
Trial Attorney
Environmental Crimes Section
U.S. Department of Justice

## CERTIFICATE OF SERVICE

The undersigned certifies that she is an employee in the Office of the United States Attorney and is a person of such age and discretion as to be competent to serve papers. That on _____8-19-05_____ she served a copy of the attached GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF MEDICAL RECORDS by placing said copy in a postpaid envelope addressed to the person(s) hereinafter named, at the place(s) and address(es) stated below, which is/are the last known address(es), and by depositing said envelope and contents in the United States Mail at Missoula, Montana.
Addressee(s):

Larry Urgenson
William B. Jacobson
Tyler D. Mace
Kirkland & Ellis, LLP
655 Fifteenth St., NW,
Washington DC 20005
FAX: (202) 879-5200
lurgenson@kirkland.com
wjacobson@kirkland.com
tmace@kirkland.com

Stephen R. Brown
Charles E. McNeil
Kathleen Desoto
Attorney at Law
P.O. Box 7909
Missoula, MT 59807
FAX: (406) 523-2595
srbrown@garlington.com
cemcneil@garlington.com
kldesoto@garlington.com

Attorneys for W.R. Grace

David Krakoff
Gary Winters
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006
FAX: (202) 263-5370
dkrakoff@mayerbrownrowe.com
gwinters@mayerbrownrowe.com

Ronald F. Waterman
Gough, Shanahan, Johnson & Waterman
P.O. Box 1715
Helena, MT 59624-1715
FAX: (406) 442-8783
rfw@gsjw.com

Attorneys for Henry Eschenbach

Angelo Calfo
Michelle Peterson
Yarmuth Wilsdon Calfo PLLC
925 Fourth Avenue, Suite 2500
Seattle, WA 98104
FAX: (206) 516-3888
acalfo@yarmuth.com
mpeterson@yarmuth.com

Mr. Michael F. Bailey
Attorney at Law
P.O. Box 8597
Missoula, MT 59807
FAX: (406) 721-5912
bai-ant@bigsky.net

Attorneys for Alan Stringer

Mark Holscher
Jeremy Maltby
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071
FAX: (213) 430-6407
mholscher@omm.com

Michael J. Milodragovich
W. Adam Duerk
Attorney at Law
P.O. Box 4947
Missoula, MT 59806-4947
FAX: (406) 549-7077

Attorneys for Jack Wolter

William Coates
Roe Cassidy Coates & Price
PO Box 10529
Greenville, SC 29603
FAX: (864) 349-0303
wac@roecassidy.com

Elizabeth Van Doren Gray
Sowell, Gray, Stepp & Laffitte, LLC
1310 Gadsden Street
PO Box 11449
Columbia, SC 29211
FAX: (803) 929-0300

Palmer A. Hoovestal
Attorney at Law
P.O. Box 747
Helena, MT 59624
FAX: (406) 457-0475
palmer@hoovestal-law.com

Attorneys for William McCaig

Stephen Jonas
Wilmer Cutler Pickering Hale and Dorr
60 State Street
Boston, MA 02109
FAX: (617) 526-5000
stephen.jonas@wilmerhale.com

CJ Johnson
Kalkstein Law Firm
P.O. Box 8568
Missoula, MT 59807
FAX: (406) 721-9896
cj@kalksteinlaw.com

Attorneys for O. Mario Favorito

Thomas C. Frongillo
Wiel, Gotshal & Manges
100 Federal St., 34th Floor
Boston, MA 02110
FAX: (617) 772-8333
thomas.frongillo@weil.com

Brian K. Gallik
Goetz, Gallik, Baldwin, P.C.
P.O. Box 6580
Bozeman, MT 59771-0428
FAX: (406) 587-5144

Attorneys for Robert Bettacchi

Stephen R. Spivack
Bradley Arant Rose & White
1133 Connecticut Ave. NW
Washington, DC 20036
FAX: (202) 719-8334
sspivack@bradleyarant.com

Catherine A. Laughner
Aimee M. Grmoljez
Browning, Kaleczyc, Berry & Hoven, PC
P.O. Box 1697
Helena, MT 59624
FAX: (406) 443-6883

Attorneys for Defendant Robert C. Walsh

Sheryl L. Nordahl, Paralegal Specialist

# EXHIBIT  B

FILED
MISSOULA, MT

2005 DEC 5 PM 4 29

PATRICK E. DUFFY

BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 05-07-M-DWM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| W. R. GRACE, ALAN R. STRINGER, | ) | |
| HENRY A. ESCHENBACH, JACK W. | ) | |
| WOLTER, WILLIAM J. McCAIG, | ) | |
| ROBERT J. BETTACCHI, O. MARIO | ) | |
| FAVORITO, ROBERT C. WALSH, | ) | |
| | ) | |
| Defendants. | ) | |

## I.   Introduction[1]

A status conference was held in this matter on December 2,
2005.  Among the issues discussed at the conference were the
sufficiency of the prosecution's expert disclosures, the
prosecution's compliance with the Court's recent discovery
orders, the Defendants' collective request for an extension of
the deadline for reciprocal discovery under Rule 16(b)(1), Fed.

---

[1] The facts of this case, set forth in the Court's prior orders,
are well known to the parties and will not be repeated here.

1

R. Crim. P., and the Defendants' concerns over the size of the
government's witness list. Pursuant to Rule 17.1, Fed. R. Crim.
P., and in order to promote the orderly progression of this
matter to trial, the Court hereby enters this memorandum and
order.

## II.  Matters Discussed at the Status Conference

### A.    The United States' Finalized Witness List

The Scheduling Order in this case, dated March 15, 2005,
requires that the prosecution disclose a "finalized list of
witnesses and trial exhibits" on September 30, 2005. That
disclosure deadline was selected in part because of the
government's representation in its Notice to the Court dated
March 8, 2005 that it was prepared to try the case in September
2005. In the same document, the government estimated that it
would call 60 to 80 witnesses in its case in chief.

The witness list disclosed by the government on September
30, 2005 names 233 witnesses. The government explains that the
reason for the increase is that the investigation of this case is
ongoing and will continue through the close of all evidence at
trial. That contention is at odds with the prosecution's claim
in March that it was prepared to try its case in September of
2005. The government placed its case before the grand jury many
months ago. Presumably, the witnesses deemed necessary by the
government to prove the charges had been identified by the time

2

of the filing of the Indictment.  By the government's own
admission, its case was prepared to go to trial three months ago.
It cannot now credibly claim that it is necessary to continue
adding witnesses to an already unwieldy list.

Nor is it fair to the Defendants for the government to
contend that its case is still a work in progress more than six
months after the discovery deadline.  While it is never advisable
to take a "charge first, investigate later" approach to criminal
prosecution, such an approach is doubly undesirable in a case of
this complexity.  Nonetheless, the Court attempted to allow for
additional investigation by the government by establishing two
deadlines for disclosure of witnesses, the preliminary deadline
of May 27 and the final deadline of September 30.  Those
deadlines having passed, the government's presentation at trial
will be limited to those witnesses that have been disclosed as of
the filing of this Order.

As a means of reducing the number of prosecution witnesses
needed at trial, the government proposed at the status conference
that the Defendants review the government's exhibit list and
identify those exhibits for which they will not contest
foundation and authenticity, thereby eliminating the necessity of
a foundation witness.  I agree that such a procedure would be
worthwhile.  Accordingly, the Defendants shall review the
prosecution's exhibits and identify those which all Defendants

3

are willing to stipulate are authentic and do not require a
foundation witness.[2]  The Defendants must inform the government
of their stipulations no later than January 13, 2006.  Upon
receiving the stipulations, the government shall have two weeks
in which to inform the Defendants and the Court of the
corresponding foundation witnesses to be removed from the
government's list.[3]

B.    **The Government's Compliance with the Court's Discovery
      Orders**

    The Scheduling Order set a deadline of April 29, 2005 for
fulfillment of the government's discovery obligations under Rule
16, Fed. R. Crim. P.  As discussed in the Court's orders dated
November 23, 2005, the government failed to fully comply with
that deadline, resulting in a delay of several months in the
completion of discovery.  It is my impression that the delay is
due largely to the government's practice of adopting aggressive
legal positions in defense of non-disclosure and waiting for an
order of this Court to sort out the dispute.  If this case is to
proceed to trial as currently scheduled, that practice by the

---

[2]Such stipulations will not constitute a waiver of any
evidentiary objections beyond foundation and authenticity.  In the
event some Defendants are willing to stipulate as to a document and
others are not, the Defendants shall notify the Court and identify
with respect to each such document those Defendants who are willing to
stipulate and those who are not.

[3]To the extent the parties can agree to stipulations of
foundation and authenticity with respect to the Defendants' exhibits,
they should attempt to do so by April 30, 2006.

government must cease.

To that end, I will grant in part the Defendants' request that the government's compliance with the recent discovery orders be monitored. No more than ten days after the January 13, 2006 deadline for compliance with its <u>Brady</u> obligations, the government shall file a separate affidavit for each federal agency listed in the Court's November 23, 2005 Order, describing the process of <u>Brady</u> compliance with regard to that agency. The description shall include the type of search used, the places searched, the number of individuals involved in the search, and the name of the person with primary responsibility for conducting the search within the particular agency named. It is unnecessary to monitor the process of compliance with the Court's rulings with regard to Rule 16 because unlike <u>Brady</u>, the government's compliance with Rule 16 can best be assessed by evaluating the materials produced.[4]

## C.   The Government's Expert Disclosures

The Scheduling Order sets an expert disclosure deadline of September 30, 2005 for the government. The Defendants contend that the disclosures provided by the government are inadequate and have filed a written motion for an order compelling more detailed disclosures and allowing depositions of the government's

---

[4]The government has agreed to identify any evidence it intends to offer under Rule 404(b), Fed. R. Evid., by March 11, 2006.

experts.

The government has not yet had an opportunity to respond in writing to the Defendants' motion. However, I find based on my review of the controlling authority and the disclosures attached to the Defendants' motion that certain matters may be resolved without further delay.

Rule 16(a)(1)(G), Fed. R. Crim. P., requires the government to provide, at the defendant's request, a written summary of any expert testimony to be used at trial. "The summary provided ... must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." This Court has previously held that

> Rule 16 requires that the expert summary shall contain a complete statement signed by the expert of all opinions to be expressed and the bases and reasons for the opinions; any data or information considered by the expert in forming the opinions; the qualifications of the expert, including a list of all publications by the expert within the last ten years, and a list of all cases for which the expert has testified as an expert in trial or by deposition in the past four years.

United States v. Michel-Diaz, 205 F.Supp.2d 1155, 1156 (D.Mont. 2002).

Based on the foregoing, the following must be included in all expert disclosures in this case:

> 1.   **Specific identification of all documents or other information the expert reviewed in preparing his report, segregated by expert.** Where possible, documents should be identified by exhibit number or Bates number of items already produced. At trial, the government's expert witnesses will not be permitted to rely upon documents

6

unless the documents are contained in the discovery produced
to date or are currently subject to an order of this Court
requiring production.[5]  See Rule 16 (d)(2)(C) and (D), Fed.
R. Crim. P.

    **2.    Identification of samples reviewed, where
applicable.**  Samples reviewed should be identified by
exhibit number or Bates number if possible.

    **3.    Any studies, examinations or tests done with
respect to the subject matter of the testimony, segregated
by expert.**  Where possible, studies should be identified by
exhibit number or Bates number of items already produced.
At trial, the government's expert witnesses will not be
permitted to rely upon studies unless the studies are
contained in the discovery produced to date or are currently
subject to an order of this Court requiring production.  See
Rule 16 (d)(2)(C) and (D), Fed. R. Crim. P.

    **4.    A list of the expert's prior deposition and trial
testimony.**

    **5.    The letter of agreement or contract for services
relating to the expert's involvement in this case.**  It is
not necessary to disclose any other communication between
the expert and parties or counsel.

To the extent the government's existing expert disclosures
do not comply with the foregoing, they should be revised by
January 13, 2006.  Upon completion of any necessary revisions,
the government shall file with the Court all expert disclosures
it has provided in this case.  The disclosures should include the
substantive report, the *curriculum vitae*, and the list of prior
testimony.  It is not necessary to include other attachments.
The government shall timely respond in writing to any remaining

---

[5]See Orders dated November 23, 2005 and Order dated November 10,
2005.

issues raised by the Defendants' motion to compel more complete
expert disclosures.

The Defendants' request for depositions of government
experts is denied. The Federal Rules of Criminal Procedure offer
specific guidance with respect to depositions in Rule 15(a). It
is clear from that rule that a court may order depositions are
only for the purpose of preserving the testimony of an
unavailable witness whose expected testimony would be favorable
to the movant. See United States v. Zuno-Arce, 44 F.3d 1420,
1425 (9th Cir. 1995)(citations omitted). Otherwise, the parties
may stipulate to the use of depositions with the court's consent.
See Rule 15(h), Fed. R. Crim. P. The Defendants are not entitled
to depositions under either subparagraph. Because there is a
specific rule addressing depositions in criminal cases, I do not
believe either Rule 57(b) or Rule 16(d), Fed. R. Crim. P.,
provides a means to circumvent the meaning of Rule 15(a).

D.   The Defendants' Reciprocal Discovery Deadline

The deadline for the Defendants' disclosure of reciprocal
discovery under Rule 16(b)(1) is currently set for January 16,
2006. Defendants' have requested that the deadline be continued
in recognition of the government's failure to timely comply with
its own disclosure requirements. I agree that an extension is
warranted. Accordingly, the Defendants shall have until April
30, 2006 to make their reciprocal disclosures under Rule

16(b)(1).

**E.    Date for the Next Status Conference**

The parties have advised the Court that they have agreed on
February 14, 2006 as the date for the next status conference.
The Defendants have also requested oral argument on their motions
challenging the facial sufficiency of the charges.    Accordingly,
it is hereby ordered that oral argument and a status conference
will be held on February 14, 2006.    The Court will specify those
motions to be argued by a later order.

DATED this 5th day of December, 2005.

Donald W. Molloy, Chief Judge
United States District Court

## CERTIFICATE OF SERVICE

The undersigned certifies that she is an employee in the Office of the United States Attorney and is a person of such age and discretion as to be competent to serve papers.

That on March 10, 2006 she served a copy of the attached **GOVERNMENT'S OBJECTION TO DEBTORS' MOTION FOR AUTHORIZATION TO SEEK DISCOVERY FROM DR. ALAN C. WHITEHOUSE AND FOR A PROTECTIVE ORDER RELATING TO PRODUCTION OF DOCUMENTS** by placing said copy in a postpaid envelope addressed to the person(s) hereinafter named, at the place(s) and address(es) stated below, which is/are the last known address(es), and by depositing said envelope and contents in the United States Mail at Missoula, Montana.

Addressee(s):

Kirkland & Ellis, LLP
David M. Bernick
Janet S. Baer
Salvatore F. Bianca
200 East Randolph Dr.
Chicago, IL 60601
(312) 861-2000
Fax: (312) 861-2200

PACHULSKI, STANG, ZIEHL, YOUNG, JONES
& WEINTRAUB, P.C.
Laura Davis Jones
James E. O'Neill
919 North Market St., 16th Fl
PO Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

Kirkland & Ellis, LLP
Barbara M. Harding
David E. Mendelson
Brian T. Stansbury
Amanda C. Basta
Evan C. Zoldan
655 Fifteenth St., NW
Washington, DC 20005
(202) 879-5000
Fax: (202) 879-5200

Office of the US Trustee
J. Kaleb Boggs Federal Bldg.
844 King St.
Wilmington, DE 19801

By:/s/Sheryl Nordahl
      Sheryl Nordahl
      Assistant United States Attorney

C:\Documents and Settings\mdavis1\Local Settings\Temporary Internet Files\OLK12A\Bankruptcy pleading.wpd