IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Case No. 01-01139 (JKF) |
| W. R. GRACE & CO., et al., | : | Chapter 11 |
| Debtors. | : | Jointly Administered |
| | : | **Objection Deadline: March 10, 2006 at 4:00 p.m., extended for the UST until March 15, 2006 at noon** |
| | : | **Hearing Date: March 27, 2006 at 2:00 p.m.** |

**UNITED STATES TRUSTEE'S OBJECTION TO LIBBY CLAIMANTS' MOTION FOR PAYMENT OF CERTAIN EXPENSES IN CONNECTION WITH CLAIMS ESTIMATION AND PLAN PROCESS (DOCKET NO. 11867)**

The United States Trustee, by and through her counsel, hereby files the following objection to the motion of claimants injured by exposure to tremolite asbestos from Grace's operations in and near Libby, Montana (the "Libby Claimants") for payment of certain expenses in connection with the claims estimation and the Chapter 11 plan process (the "Motion"), and represents as follows:

**Background**

1. Kelly Beaudin Stapleton is the United States Trustee ("UST") for Region 3.

2. Pursuant to 28 U.S.C. § 586, the UST is charged with the administrative oversight of cases commenced pursuant to Title 11 of the United States Bankruptcy Code. This duty is part of the UST's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas System, Inc. (In re Columbia Gas System, Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that UST has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the UST as

1

a "watchdog").

3. Pursuant to 11 U.S.C. § 307, the UST has standing to be heard with regard to the above-referenced Objection.

**Background**

4. On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") commencing these chapter 11 cases (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

5. Numerous committees representing various constituents have been appointed in this case. On April 13, 2001, the UST appointed the Official Committee of Unsecured Creditors (the "Creditors Committee"). Also on April 13, 2001, the UST appointed the Official Committee of Asbestos Personal Injury Claimants (the 'PI Committee) and the Official Committee of Asbestos Property Damage Claimants (the "PD Committee"). On June 18, 2001, the UST appointed the Official Committee of Equity Holders (the "Equity Committee'). Finally, on May 24, 2004, the Court appointed David Austern as the Future Claimants Representative (the "FCR").

6. On February 20, 2006, the Motion was filed, pursuant to section 503 of the Bankruptcy Code, requesting that this Court authorize and require the Debtors' estates to pay the Libby Claimants' legal fees and expert witness expenses incurred in connection with the asbestos personal injury claim estimation proceedings and the Chapter 11 plan process.

7.  The Libby Claimants indicate that the Debtors have raised significant issues in the estimation and plan process specific to their claims, which will need to be addressed during both estimation and the plan process. The Libby Claimants allege that the PI Committee has informed them that the PI Committee itself will not address those issues. The Libby Claimants allege further that their interests diverge significantly from the majority of personal injury claimants necessitating the Libby Claimants to have separate counsel, which costs they assert should be borne by the estate[1].

**Grounds/Basis for Relief**

8.  The UST objects to the relief requested in the Motion because there is no authority in the Bankruptcy Code or otherwise to allow the Libby Claimants to be paid their fees and expenses in this context. The relief requested in the Motion, which is best described as a request for payment of administrative expenses, is not authorized or supported in section 503.

9.  Administrative expense requests are subject to 11 U.S.C. § 503. Administrative expenses may be allowed for the actual, necessary costs and expenses of preserving the estate. *See* 11 U.S.C. § 503(b)(1)(A). Administrative expenses are also allowable for compensation and reimbursement awarded under section 330(a), *see* 11 U.S.C. § 503(b)(2), and for the actual and necessary expenses incurred by a creditor or an informal committee in making a substantial contribution in a case, *see* 11 U.S.C. § 503(b)(3)(D)[2].

---

[1] It should be noted that on Friday, March 10, 2006, the Libby Claimants, through counsel, submitted a request to the UST for her to appoint an official committee consisting of Libby Claimants or, alternatively, a sub-committee of the PI Committee. The UST has filtered that request to the major constituents in this case seeking their comments and positions. While the request for a committee is closely aligned to the relief requested in the Motion, the UST has yet to make a decision on that committee request and reserves her right to argue in accordance with the decision she makes on that request.

[2] While there are other instances and events in section 503 that allow for the payment of administrative expenses, the three subsections cited above are the only instances that could remotely

10. In order to hold administrative expenses to a minimum and to maximize the value of an estate, Section 503(b) of the Bankruptcy Code is narrowly construed. *See, e.g., In re NP. Min. Co., Inc.,* 963 F.2d 1449, 1454 (11th Cir. 1992); *In re Philadelphia Mortgage Trust,* 117 B.R. 820, 828 (Bankr. E.D. Pa. 1990). The applicant seeking an allowance of administrative expenses has the burden to establish entitlement to such an award pursuant to 11 U.S.C. § 503(b). *Lebron v. Mechem Financial, Inc.,* 27 F.3d 937 (3d Cir. 1994); *In re Buckhead America Corp.,* 161 B.R. 11 (Bank. D. Del. 1993).

*Section 503(b)(1)(A)*

11. Section 503(b)(1)(A) allows administrative expense priority for the actual, necessary costs and expenses of preserving the estate. The Third Circuit addressed the issue of payment of a professional's compensation under section 503(b)(1)(A) in *F/S Airlease II, Inc. v. Simon,* 844 F.2d 99 (3d Cir. 1988). There, a broker who negotiated an aircraft lease for the debtor was denied employment under Section 327(a) on *nunc pro tunc* grounds. The broker nevertheless sought approval of his compensation under section 503(b)(1)(A). The court held that section 503(b)(2), authorizing payment of compensation awarded under section 330 to <u>retained</u> professionals, was the exclusive means of awarding administrative expenses to professional persons, and the broker "cannot rely on section 503(b)(1)(A) as a way of circumventing section 327(a). . . . If [the broker] were able to be compensated under section 503(b)(1)(A), it would render section 327(a) nugatory and would contravene Congress' intent in providing for prior approval." *Id.* at 109.

12. In this instance, there is no question that the Libby Claimants are seeking payment of the costs and fees for their professionals. The Motion lists four (4) separate law firms retained

---

apply to the Libby Claimants' request in the Motion.

by the Libby Claimants as well as two expert witnesses. As such, section 503(b)(1)(A), as interpreted in *F/S Airlease*, provides no authority or support for payment of the Libby Claimants' professionals. As the Third Circuit stated in that decision, section 503(b)(1)(A) cannot be used to circumvent the retention provisions of the Bankruptcy Code and that a professional not retained by the estate will have to look to another statutory provision to have its fees paid by the estate.

13. Moreover, if for some reason the entities for which the Libby Claimants seek payment were deemed not to be professionals (the UST strenuously disagrees with that argument), payment still cannot be made to these entities because there is nothing to show that their fees and costs are necessary to preserve the estate. *See In re Jartran, Inc.*, 732 F.2d 584, 586 (7th Cir. 1984) (expressing that the main policy behind section 503(b)(1)(A) is to provide an incentive for creditors and others to continue or commence doing business with an insolvent entity).

*Section 503(b)(2)*

14. Payment of an administrative expense under section 503(b)(2) is limited in its scope and of no consequence in this case. This section simply allows administrative priority for compensation of a trustee, an examiner, or a professionals person employed under section 327 or section 1103. Because the law firms and expert witnesses for the Libby Claimants do not fit any of these categories, the relief requested in the Motion cannot be granted under section 503(b)(2).

*Sections 503(b)(3) & (4)*

15. Section 503(b)(3) grants administrative priority to the actual, necessary expenses incurred by six categories of entities. Section 503(b)(4) grants administrative priority to the reasonable compensation for professional services rendered by an attorney or accountant of an entity whose expense is allowable under section (b)(3). The only possible subsection of section 503(b)(3)

5

in which the Libby Claimants could receive payment of their fees and expenses would be 503(b)(3)(D), i.e., substantial contribution, but as discussed, it is not permissible to grant such a request at this juncture.[3]

16. Section 503(b)(3)(D) allows administrative expense priority for the actual, necessary expenses incurred by a creditor, an indenture trustee, an equity security holder or an informal committee if they made a substantial contribution to a case. The decision of the Third Circuit in *Lebron v Mechem Financial, Inc.*, 27 F.3d 937 (3d Cir. 1994), provides the framework in this District for substantial contribution requests. In *Lebron*, the Third Circuit held that before an applicant may be reimbursed or compensated under 11 U.S.C. § 503, it must be shown that "the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." *Lebron*, 27 F.3d at 944, *citing In Re Lister*, 846 F.2d 55, 57 (10th Cir. 1988). The *Lebron* court further stated:

> A creditor should be presumed to be acting in his or her own interest unless the court is able to find that his or her actions were *designed* to benefit others who would foreseeably be interested in the estate. In the absence of such a finding, there can be no award of expenses even though there may have been an incidental benefit to the chapter 11 estate.

*Id.* at 946 (emphasis added). Similarly, if the claimant was acting to protect its own interests, the expense was not incurred in making a substantial contribution in the case under 11 U.S.C. § 503(b)(3) or (b)(4), even if the estate benefitted from the claimant's actions. *Lebron,* 27 F.3d at 946.

17. The biggest hurdle to the relief requested in the Motion is the timing. The request is simply premature at this time. The Libby Claimants cannot make out a case for substantial

---

[3] The actual and necessary expenses of: a creditor filing an involuntary petition, § 503(b)(3)(A); a creditor recovering property transferred or concealed by the debtor, § 503(b)(3)(B); a creditor in connection with the prosecution of a criminal offense; § 503(b)(3)(C); a custodian superseded under section 543, § 503(b)(3)(E); and a member of an official committee; § 503(b)(3)(F).

contribution until it is determined what services they and their professionals performed and whether the Libby Claimants provided substantial contribution to the estate, pursuant to the standard set out in *Lebron*. As such, it is impossible for the Libby Claimants to prove substantial contribution at this time because there is no way to show now that the Libby Claimants meet the required standard, which would be the first step in proving that the fees and expenses are allowable under section 503(b)(4)[4].

18.     Moreover, it appears that the payment of these expenses for the Libby Claimants is in pursuit of their own interest, rather than pursuing benefit for the estate. In the Motion, the Libby Claimants speak of how their interests differ from others in the case, including a majority of the PI Committee. In fact, the Libby Claimants state that through the Motion they seek to be treated similar to a subcommittee "whereby they can be represented separately from the PI Committee on issues where their interests diverge from the rest of the committee". The Libby Claimants are not performing a substantial contribution for the estate, rather they are performing services in their own self-interest. The Libby Claimants want to represent and protect their own interest and want the estate to pay for that. While the Libby Claimants may have legitimate claims, the Bankruptcy Code is not set up to allow the Debtors' estate to pay these fees and expenses.

---

[4] The UST reserves her right to object to any request for substantial contribution filed by the Libby Claimants at a later date.

WHEREFORE the UST requests that this Court issue an order denying the Motion and/or granting such other relief as this Court deems appropriate, fair and just.

        Respectfully submitted,

        KELLY BEAUDIN STAPLETON
        United States Trustee, Region Three

BY:   /s/ David M. Klauder
        David M. Klauder
        Trial Attorney
        Office of the United States Trustee
        J. Caleb Boggs Federal Building
        844 King Street, Suite 2207, Lockbox 35
        Wilmington, DE 19801
        (302) 573-6491
        (302) 573-6497 fax machine

Dated: March 15, 2006