IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | Hearing date: March 27, 2006 at 2:00 p.m. |
| | ) | |
| | ) | **Related Docket No. 11867** |

**OBJECTION OF THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS TO THE LIBBY CLAIMANTS'
MOTION FOR PAYMENT OF CERTAIN EXPENSES IN
CONNECTION WITH CLAIMS ESTIMATION AND PLAN PROCESS**

The Official Committee of Unsecured Creditors of W. R. Grace & Co., et al. (the "Creditors' Committee"), by and through its undersigned counsel, submits this objection to the Libby Claimants' Motion (the "Motion") for an order, pursuant to § 503 of the Bankruptcy Code, authorizing and requiring the payment of (1) Libby Claimants' legal fees incurred in connection with the asbestos personal injury claim estimation proceedings (the "PI Estimation") and the Chapter 11 plan process and (2) the expert witness fees incurred by the Libby Claimants in the PI Estimation (collectively, the "Estimation/Plan Expenses"). In support of this Objection, the Creditors' Committee respectfully states as follows:

**ARGUMENT**

**THE MOTION SHOULD BE DENIED BECAUSE THE LIBBY CLAIMANTS
HAVE NOT MET THEIR BURDEN OF PROVING THAT THEY HAVE
MATERIALLY DIFFERENT CLAIMS, THAT THEY HAVE VASTLY CONFLICTING
INTERESTS FROM THE OTHER CREDITORS REPRESENTED BY THE
PI COMMITTEE AND THAT THEY ARE NOT ADEQUATELY REPRESENTED**

The Motion should be denied. Nearly five years ago, the United States Trustee appointed an official committee to represent all claimants asserting asbestos-related bodily injury claims against the Debtors. At least one member of the PI Committee is a Libby Claimant, and

is represented on the PI Committee through McGarvey, Heberling, Sullivan & McGarvey, P.C., the same law firm that has and continues to serve as the principal personal injury counsel for the Libby Claimants (see Motion at footnote 5). At the same time, the Libby Claimants, primarily through McGarvey Heberling and other counsel, are actively participating in these chapter 11 cases, with the docket reflecting their having filed the first of numerous pleadings in these cases as early as 2003.

Now, for the very first time, over a year since the Debtors' reorganization plan was filed and since litigation concerning the PI Estimation commenced, the Libby Claimants allege that their expenses must be paid by the estates so that they can protect their individual interests in these cases.[1] They contend that their claims differ in material respects from the claims of all other personal injury claimants and that because of those differences, the PI Committee is conflicted and cannot adequately represent the Libby Claimants. But, the Libby Claimants' allegations that their claims are different from the claims of other bodily injury claimants represented by the PI Committee are nothing new, and remain totally unsubstantiated.

Section 1102 of the Bankruptcy Code provides in relevant part that "the court may order the appointment of additional committees of creditors…if necessary to assure adequate representation of creditors…" 11 U.S.C. § 1102(a)(2) (emphasis added). The

---

[1] The Libby Claimants ask in their Motion to be considered as a subcommittee of the PI Committee, with separate professionals and experts paid by the estates. Although courts most often address this issue in the context of requests to have a separate committee appointed, the burden and standards applied are no different where the appointment of a subcommittee is sought. See, e.g., In re Hills Stores Co., 137 B.R. 4 (Bankr. S.D.N.Y. 1992) (court denied subordinated debenture holders' requests for the appointment of either a separate committee or a subcommittee, holding that "[a]s the composition, function and rights of each as proposed are the same … this is a distinction without a difference." Id. at 8.); In re Public Serv. Co. of N.H., 89 B.R 1014, 1020 (Bankr. D.N.H. 1988) (court employed the same analysis in rejecting the debenture holders' motion for the appointment of a separate committee or, in the alternative, subcommittee); In re Baldwin-United Corp., 45 B.R. 375, 376 (Bankr. S.D. Ohio 1983) (court applied the same standards to an unsecured creditor group's motion for appointment of a subcommittee and to a group of holders of a certain class of preferred stock moving for the appointment of a separate committee).

Bankruptcy Code does not define "adequate representation." Since a member of an official committee owes a fiduciary duty to the constituents represented by the committee as a whole, and an official committee "is not intended to represent individual creditor interests," In re Garden Ridge Corp., 2005 WL 523129, *4, the measure for adequate representation cannot be whether a committee member is able to advance its own interests. In re Garden Ridge Corp., 2005 WL 523129, *4. A creditor who wants to advance its own interests is free to do so and may act in concert with others having similar interests in an informal group. Id. at 4.

Whether the creditor group is adequately represented must be analyzed on a case-by-case basis employing an examination of various factors. Factors generally applied by courts include "(1) [t]he ability of the committee to function; (2) [t]he nature of the case; and (3) [t]he standing and desires of the various constituencies." In re Enron Corp., 279 B.R. at 686 ("[A] strong indicator of when a committee is able to adequately represent its constituents is its ability to function."). Courts in exercising their discretion under Section 1102 may also consider additional factors, such as (i) when the application is filed and whether the appointment request is made on the eve of the start of plan negotiations and the complaining creditors could have moved for relief months earlier, In re Hills Stores Co., 137 B.R. at 7-8; (ii) whether the creditor's participation can be accomplished in some other way, such as enhancing the number of creditors of the moving group on the existing committee, In re Public Serv. Co. of N.H., 89 B.R at 1014; or forming an unofficial committee, In re Winn-Dixie Stores, Inc., 326 B.R. at 858; In re Hills Stores Co., 137 B.R. at 8; and (iii) the potential for the creditor to recover counsel and other expenses for making a substantial contribution to the case pursuant to Section 503 of the Bankruptcy Code, In re Garden Ridge Corp., 2005 WL 523129, *4; In re Hills Stores Co., 137 B.R. at 8; In re Enron Corp., 279 B.R. 671, 685 (Bankr. S.D.N.Y. 2002) (citing factors).

DM3\348158.1

The Libby Claimants, in seeking the appointment of an additional committee or subcommittee, bear the burden of developing a factual record to demonstrate that they are not adequately represented. See, e.g., In re Garden Ridge Corp., 2005 WL 523129, *3 (Bankr. D. Del. 2005); In re Winn-Dixie Stores, Inc., 326 B.R. 853, 857 (Bankr. M.D. Fla. 2005). In addition, courts have made it clear that the burden is a heavy one, because the decision to appoint an additional committee is "not to be taken lightly." In re Enron Corp., 279 B.R. 671, 685 (Bankr. S.D.N.Y.). In fact, appointment of an additional committee is an "extraordinary remedy." See, e.g., Winn-Dixie, 326 B.R. at 857; Garden Ridge, 2005 WL 523129 at *3.

The Libby Claimants have not met their burden of proving to the Court (nor we submit to the U.S. Trustee)[2] that their claims are, in fact, materially different than other asbestos personal injury claims. Their Motion does not set forth any basis for this Court to determine that the injuries allegedly sustained by the Libby Claimants are significantly different than the injuries sustained by any other asbestos personal injury claimant. Moreover, that the PI Estimation may, as argued in the Motion, involve Libby-specific issues, indicates that the evidence to prove or disprove the Libby Claimants' allegations is bound up with the PI Estimation itself and, as such, the Libby Claimants' Motion seems premature. Given that the Libby Claimants have not satisfied their burden of proving the very issue which is the foundation for the conflicts, and the inadequate representation they ascribe to the PI Committee, the Creditors' Committee submits that for that reason alone the Court should deny the relief sought.

Moreover, the Libby Claimants, through McGarvey Heberling and its client, are represented on the PI Committee. "As a general rule, 'adequate representation exists through a

---

[2] The Libby Claimants have now contacted the U.S. Trustee seeking to have the U.S. Trustee appoint either an official Libby Claimants' Committee or, alternatively, to form a subcommittee of the PI Committee.

DM3\348158.1

single committee so long as the diverse interests of the various creditor groups are represented on and have participated in that committee." In re Garden Ridge Corp., 2005 WL 523129, *3 (citing to In re Sharon Steel, 100 B.R. 767, 777-78 (Bankr. W.D. Pa. 1989); In re Hills Stores Co., 137 B.R. at 7 ("What the Code requires is that conflicting groups of creditors have a voice through adequate representation on a Committee…The fact that the Bondholders may not be able to protect all of their interests and achieve all of their goals is not paramount, as the ultimate aim is to strike a proper balance between the parties such that an effective and viable reorganization of the debtor may be accomplished"). The PI Committee, with at least one Libby Claimant as a member represented by sophisticated counsel, has been functioning and taking positions on issues of relevance to asbestos bodily injury claimants. The Libby Claimants have had a "voice" on the PI Committee since the inception of these cases.

There would therefore appear to be no support for the Libby Claimants' assertion of conflicts between the Libby Claimants and the rest of the PI Committee. The Court needs to hear from the PI Committee as well on these points, mindful that the existence of disparate viewpoints and conflicts within a committee is not at all unusual and does not require the appointment of a separate committee or subcommittee except in very limited circumstances to remedy substantial conflicts impairing a committee's ability to function and the inadequacy of a creditor group's representation. Indeed, the PI Committee represents the interests of all asbestos claimants: those with mesothelioma, those with lung cancer, those with other types of malignancies, as well as the various sub-groups of claimants without malignancies. Each of these categories of claimants have interests somewhat diverse because the amounts ultimately to be paid to such claimants will differ depending upon the disease. The Libby Claimants' position with respect to these groups of claimants is no different. Taking the Libby Claimants' argument

to its logical extension, each group of asbestos claimant would be entitled to its own committee or to have its expenses paid by the estates. This is, of course, insupportable.

Even were one to assume the existence of potential or actual conflicts within the PI Committee, such conflicts do not require the appointment of a separate committee or subcommittee, as conflicts among creditors on a committee are not uncommon. See, e.g., In re Hills Stores Co., 137 B.R. at 4 (denying request of a group of subordinated debenture holders for the appointment of their own committee, on the ground that "creditors' committees often contain creditors having a variety of viewpoints." Id., at 6); In re Garden Ridge Corp., 2005 WL 523129, *4 ("Mere conflict between members of the Official Committee is no basis for the appointment of an additional committee of creditors"); In re Sharon Steel Corp., 100 B.R. 767, 777-778 (Bankr. W.D. Pa. 1989) ("It is universally recognized that intercreditor conflicts inhere in any committee....").

Moreover, that the Libby Claimants have been representing themselves during the case, even outside the confines of an official committee, and have been heard on issues of importance to them, argues against the appointment of a separate committee or a subcommittee as the Libby Claimants have been adequately represented in the case by such action. See In re Enron Corp., 279 B.R. at 686-687 (wherein energy merchants' motion for appointment of a separate committee was denied, among other reasons, because the movants had retained counsel and had "been heard on every major issue before [the] Court"). The Libby Claimants, through one or more of their counsel, have filed numerous pleadings in these cases since the end of 2003. Those pleadings have not only sought affirmative relief to be able to obtain and utilize perpetuation depositions, but also challenged the Debtors' motions seeking to broaden the

DM3\348158.1


preliminary injunction in these cases[3] and through objections in December 2004 challenged the Debtors' Disclosure Statement and related pleadings filed in November 2004, including their PI Estimation Motion, and Case Management Motion and through objections in June 2005 challenged the Debtors' motion to approve the PI CMO and Questionnaire. The Libby Claimants also joined in the objections filed by the PI Committee to certain Plan-related pleadings[4] and in opposition to the estimation motion.[5]

Accordingly, application of the factors noted above to the facts in these cases reflects that the Court should exercise its discretion and deny the Motion. The Debtors' estates should not be directed to bear the Libby Claimants' expenses of litigating estimation and plan issues that the PI Committee will be litigating for all asbestos personal injury claimants. Given the Libby Claimants' counsel's on-going and long-standing participation in these cases, there would appear to be little likelihood that the Court's denial of the motion will leave the Libby Claimants without their current representation. Should the Libby Claimants' efforts result in an actual and demonstrable benefit to the Debtors' estates, which is other than an incidental benefit arising from their efforts pursued in protecting their own interests, Lebron v. Meehem Fin. Inc., 27 F.3d 937, 944 (3d. Cir. 1994), the Creditors' Committee would expect the Libby Claimants to seek allowance of the Estimation/Plan Expenses pursuant to Section 503(b)(3)(D) of the

---

[3] The Libby Claimants challenged the Debtors' expansion of the preliminary injunction to include third party suits against Maryland Casualty, Montana Vermiculite and the State of Montana.

[4] Libby Claimants' Objection to Disclosure Statement, Estimation Motion, Case Management Motion and Related Pleadings [Docket No. 7335] at footnote 2.

[5] Opposition of Libby Claimants to Debtors' Motion to Approve PI CMO and Questionnaire [Docket No. 8846] at footnote 2.

DM3\348158.1

Bankruptcy Code.[6] In the end, the Motion should be denied because it is nothing more than a premature attempt to shift the costs of the Libby Claimants' representation to the estates.

### Reservation of Rights

The Creditor's Committee reserves its rights to amend or supplement this Objection at any time and in any manner it believes appropriate, as well as to file supplemental pleadings with the Court as may be applicable in connection with this matter.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

---

[6] The Committee reserves all of its rights with respect to any such motion that may be filed by the Libby Claimants.

WHEREFORE, the Creditors' Committee respectfully requests that this Court deny the Motion and grant such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
March 15, 2005

Respectfully submitted,

**STROOCK & STROOCK & LAVAN LLP**
Lewis Kruger
Kenneth Pasquale
(Members of the Firm)
180 Maiden Lane
New York, New York 10038-4982
Tel:    (212) 806-5400
Fax:    (212) 806-6006

-and-

**DUANE MORRIS LLP**

*[signature]*

Michael R. Lastowski (DE I.D. 3892)
Richard W. Riley (DE I.D. 4052)
William S. Katchen
1100 North Market Street, Suite 1200
Wilmington, Delaware 19801
Tel:    (973) 424-2000
Fax:    (973) 424-2001

Counsel for the Official Committee of
Unsecured Creditors

DM3\348158.1