IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-1139 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | **Hearing Date: March 27, 2006 @ 2:00 p.m.** |
| | ) | **Related to Docket No. 11867** |
| | ) | |

**RESPONSE OF THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY
CLAIMANTS IN SUPPORT OF THE LIBBY CLAIMANTS' MOTION
FOR PAYMENT OF CERTAIN EXPENSES IN CONNECTION
WITH CLAIMS ESTIMATION AND PLAN PROCESS [DI 11867]**

The Official Committee of Asbestos Personal Injury Claimants (the "PI Committee"), by and through its undersigned counsel, respectfully submits this response ("Response") in support of the Libby Claimants' Motion for Payment of Certain Expenses in Connection with Claims Estimation and Plan Process (the "Motion"). Through the Motion, the Libby Claimants seek entry of "an order pursuant to Section 503 of the Bankruptcy Code authorizing and requiring the payment of (a) the Libby Claimants' Counsel's legal fees incurred in connection with the asbestos personal injury claim estimation proceedings and the Chapter 11 plan process (and not in connection with any other aspect of this case), and (b) the expert witness fees incurred by the Libby Claimants in the estimation process." Motion, page 1. In support of this Response, the PI Committee states as follows:

**PRELIMINARY STATEMENT**

Through various filings over the last several years of these cases (as well as in more informal settings), the Libby Claimants have asserted that they are a unique class of asbestos claimants in that they have been exposed to tremolite asbestos, rather than the chrysotile, amosite, or other forms asbestos fibers. As more fully discussed below, the Libby Claimants believe that

tremolite asbestos is more toxic than other types of asbestos fibers and that the associated Libby tremolite asbestos disease, has much "higher toxicity" and "progressivity" than other asbestos diseases. In addition, the Libby Claimants contend that the exposure pathways for the claimants with Libby tremolite asbestos disease have been "unprecedented" in that exposure is not limited to just the workplace, but includes the entire community. As a result of this, the Libby Claimants contend they are entitled to separate treatment under the Plan and Trust Distribution Procedures, including different medical and diagnostic criteria and significantly higher damages. As the Debtors have recognized in recent filings, these assertions have become "critical issues" in respect to both estimation and settlement negotiations. As a result of its fiduciary obligations to all asbestos personal injury claimants in general, the PI Committee does not believe it is in a position to assert the contentions of the Libby Claimants at the Estimation Hearing. Therefore, the PI Committee supports the relief requested in the pending Motion as the most cost effective means to address this important issue.

## INTRODUCTION

1. On April 2, 2001 (the "Petition Date"), in the face of 'overwhelming asbestos-related lawsuits,' the Debtors commenced the instant proceedings by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the Clerk of this Court.

2. On November 13, 2004, the Debtors filed their Plan of Reorganization ("Plan") [DI 6895] and Disclosure Statement ("Disclosure Statement") [DI 6896]. On November 13, 2004, the Debtors also filed their Motion for Entry of an Order Seeking the Estimation of Asbestos Claims and Certain Related Relief (the "Estimation Motion") [DI 6899]. Through the Estimation Motion, the Debtors seek "(a) entry of an order determining estimates of the

aggregate amounts needed to fund the Asbestos Trust to enable the Asbestos Trust to pay in full all Allowed Asbestos Claims and Asbestos Trust Expenses, as and when they become due and (b) entry of an order establishing a schedule and procedures for carrying out the requested estimations." Estimation Motion, pages 1-2.  Thereafter various parties, including the PI Committee and the Libby Claimants, filed papers objecting to the Disclosure Statement and Estimation Motion.

3. On January 21, 2005, a hearing was held on the Debtors' Disclosure Statement. During that hearing, this Court instructed certain parties, including the Debtors, the PI Committee, and the Future Claimants' Representative ("FCR"), to negotiate a case management order for the estimation of asbestos personal injury claims.  Ultimately, due to a disagreement regarding the Debtors' proposed Questionnaire, the Debtors filed the Motion to Approve the PI CMO and Questionnaire [DI 8394].  Various parties, including the PI Committee and the Libby Claimants filed objections.

4. On August 29, 2005, this Court entered the Case Management Order for the Estimation of Asbestos Personal Injury Liabilities ("PI CMO") [DI 9301].  This order was subsequently amended, most recently on February 21, 2006 ("Amended PI CMO")  [DI 11885]. As this Court is aware, the Amended PI CMO established various deadlines for factual and expert discovery and motions practice prior to the Estimation Hearing.

5. Since this Court entered the PI CMO, various parties, including the PI Committee, the FCR, the Libby Claimants, and the Debtors have filed designations of expert and non-expert witnesses and have been involved in factual discovery, including various depositions and exchanging written discovery.

**ARGUMENT**

6.　　As stated in the Motion, the Debtors have identified numerous witnesses to address Libby-related issues at the Estimation Hearing. Specifically, the Debtors have identified in their expert designation Mickey E. Gunter, Ph.D., who has authored studies on Libby and was previously a proposed witness for the Debtors in pre-petition litigation against certain Libby Claimants. Motion, paragraph 7. In addition, the Debtors have identified ten other individuals as non-expert witnesses. In addition to these eleven witnesses, the Debtors have identified the "persons most knowledgeable" concerning seven published studies on asbestos disease in Libby Montana as well as the "persons most knowledgeable about any database maintained by the Agency for Toxic Substances and Disease Registry in connection with" those studies. In addition to these designations, the Debtors recently filed their Motion for Authorization to Seek Discovery From Dr. Alan C. Whitehouse and for a Protective Order Relating to Production of Documents from Dr. Alan C. Whitehouse (the "Whitehouse Discovery Motion") [DI 11850]. Through the Whitehouse Discovery Motion, the Debtors seek authorization to take factual discovery from Dr. Whitehouse and for a related protective order governing the use of the documents produced by Dr. Whitehouse. In the Whitehouse Discovery Motion, the Debtors argue that "Dr. Whitehouse's medical records are the exclusive basis of (and source data for) the Libby Claimants' allegation that they have a unique pulmonary disease." Whitehouse Discovery Motion, page 1.

7.　　It is clear from the Debtors' actions noted above that the Debtors recognize the importance and potential significance of the Libby Claimants' asbestos personal injury claims in these bankruptcy cases. Indeed, in the Whitehouse Discovery Motion, the Debtors state that the Libby Claimants' assertions "have emerged as critical issues in both the estimation litigation and with respect to settlement negotiations." Whitehouse Discovery Motion, page 2. The Debtors also

state, quite correctly, that "the Libby Claimants will continue to advocate their alleged uniqueness throughout the estimation proceeding." Whitehouse Discovery Motion, page 1.

8.  Despite the fact that expert witness reports have not yet been exchanged, the Libby Claimants have disclosed a significant amount of information concerning their specific theories. Specifically, in their Opposition to the Debtors' Motion to Approve PI CMO and Questionnaire ("Questionnaire Opposition") [DI 8846], the Libby Claimants laid out in fairly extensive detail their support for the allegation that they constitute a unique class of asbestos personal injury claimants. In support of the Questionnaire Opposition is an eighteen-page affidavit of Dr. Alan C. Whitehouse. Therein, Dr. Whitehouse describes in detail the basis for the Libby Claimants' allegation that tremolite asbestos is allegedly more toxic and carcinogenic than other types of asbestos fibers. The instant Motion contains similar allegations.[1] From the assertion that tremolite asbestos is more harmful than other types of asbestos, the Libby Claimants contend that they are entitled to distinct

---

[1] In the instant Motion, the Libby Claimants contend that "the Libby Claimants and others who suffer from Libby tremolite asbestos disease differ in material respects from claims of the personal injury claimants represented by the remaining members of the PI Committee." Motion, page 5. The typical asbestos personal injury claimant has a claim based on exposure to many types of asbestos fibers including amosite, chrysotile, and tremolite contaminated chrysotile. The Libby Claimants, by contrast, assert that they were exposed solely to tremolite asbestos. The Libby Claimants contend that tremolite asbestos has much higher toxicity than chrysotile asbestos, and is more productive of mesothelioma, the type of lung cancer specific to asbestos exposure. The Libby Claimants also contend that tremolite asbestos disease manifests much greater progressivity, and that the pleural disease pattern manifested by Libby tremolite asbestos disease often results in severe impairment or death without radiographic interstitial disease or typical markers of radiographic severity which have commonly been used in trust distribution provisions of asbestos company Chapter 11 plans. Motion, pages 5 – 6.

The instant motion also contends allege that "exposure pathways in Libby, Montana, are unprecedented. For decades there has been an unprecedented 24 hour per day contamination of the community's homes, playgrounds, gardens, and community air, such that the entire community has been designated a Superfund site and is listed on the Environmental Protection Agency's National Priorities List. Since exposure pathways are not limited to the workplace, Libby Claimants suffering from severe asbestos disease or death include not only former workers at the mine and milling facilities, but also the spouses and children of workers, and community members who had no direct contact with the mine." Motion, page 6.

{D0055017:1 }  5

treatment in the estimation proceeding as well as under the Trust Distribution Procedures of the Plan. Indeed, in their Questionnaire Opposition, the Libby Claimants argued that:

> the highly progressive and deadly nature of pleural disease in Libby has resulted in historical verdicts and settlements *far greater than for pleural disease in other asbestos cases*. Libby average settlements for pleural disease have ranged from $212,000 (unimpaired claimant) to $343,000 (impaired claimant).

Questionnaire Opposition, page 12.

9. The Questionnaire Opposition was not the first time the Libby Claimants disclosed their position. In June 2004, the Libby Claimants included similar allegations in their "Status Report Submitted by the Libby Claimants" [DI 5859]. Therein, the Libby Claimants argued:

> Not surprisingly, the highly progressive and deadly nature of pleural disease in Libby has resulted in historical verdicts and settlements that are far greater than for pleural disease in other asbestos cases. Libby average settlements for pleural disease have ranged from $212,000 (unimpaired claimant) to $343,000 (impaired claimant) compared with, for example, $8,000 (unimpaired) and $19,000 (impaired) fixed as the pleural disease claim levels under the Trust Distribution Procedures of the Owens Corning case. A similar disparity is apparent in the category of combination pleural/interstitial disease. As a matter of fairness, the Trust Distribution Procedures under Grace's plan must place pleural disease resulting from tremolite asbestos in a separate category from pleural disease resulting from chrysotile asbestos, with claim amounts reflecting the relative historical verdicts/settlements for these two very different diseases.

Status Report Submitted by Libby Claimants, page 15.

10. As a result of the above, it is apparent to the PI Committee that the Libby Claimants will continue to push for separate treatment not only through the Estimation Hearing, but under any Trust Distribution Procedures approved under a Plan.[2] As the Debtors noted in the Whitehouse

---

[2] The Debtors note in the Whitehouse Discovery Motion that the Libby Claimants "allege that their claims should not be subject to the medical criteria proposed by the Debtors in their Plan of Reorganization, and that they are entitled to higher compensation than other personal injury asbestos claimants." Whitehouse Discovery Motion, page 2.

{D0055017:1 }
6

Discovery Motion, the Libby Claimants' assertions "have emerged as critical issues in both the estimation litigation and with respect to settlement negotiations." Whitehouse Discovery Motion, page 2. The PI Committee agrees with the Debtors' statement that the "true extent and nature of asbestos-related disease cause by exposure to asbestos from the Libby mine has important implications for the estimation of Grace's asbestos PI liability." Whitehouse Discovery Motion, page 7.

11. Although the PI Committee recognizes the significance of the issues asserted by the Libby Claimants, the PI Committee does not believe that it would be appropriate for it to advocate these positions at the Estimation Hearing and throughout the Plan confirmation process. Quite simply, the Libby Claimants have emerged as a sub-group within the PI Committee with respect to these issues. Despite this divergence, the Libby Claimants are certainly included within the overall constituency of asbestos personal injury claimants, a constituency to which the PI Committee has a fiduciary obligation. As a result, the PI Committee is not in a position to assert theories through the Estimation Hearing and Plan confirmation process that seeks to solely benefit this sub-group.

12. At the same time, the PI Committee recognizes that individuals who assert asbestos personal injury claims based upon Libby tremolite asbestos disease have asserted positions that are significant to the Debtors' reorganization. Indeed, through their filings noted above, the Debtors are preparing to defend against the Libby tremolite asbestos disease issues at the Estimation Hearing. The PI Committee does not intend to prosecute the Libby tremolite asbestos disease issues at the Estimation Hearing. Nevertheless, it is of critical importance to the PI Committee that it, and the Court, fully understand the Libby Claimants assertions concerning Libby tremolite asbestos disease as they continue to be an issue for not only the Estimation Hearing, but with respect to settlement and Plan negotiations. In order for the Libby Claimants to have an adequate voice, and not be

disadvantaged in this case vis-à-vis other creditor groups, their counsel and experts should be compensated by the Debtors' estates like the other creditor groups.

WHEREFORE, for the foregoing reasons, the PI Committee supports the request of the Libby Claimants for the entry of an order authorizing and directing the payment of (a) the Libby Claimants' Counsel's legal fees incurred in connection with the asbestos personal injury claim estimation proceedings and the Chapter 11 plan process and (b) the expert witness fees incurred by the Libby Claimants in the estimation process.

Date: March 15, 2006                               CAMPBELL & LEVINE, LLC

/s/ Mark T. Hurford
Marla R. Eskin (No. 2989)
Mark T. Hurford (No. 3299)
800 King Street, Suite 300
Wilmington, DE  19801
(302) 426-1900

   -and-

CAPLIN & DRYSDALE, CHARTERED
Elihu Inselbuch
375 Park Avenue, 35th Floor
New York, NY  10152-3500
(212) 319-7125

   -and-

CAPLIN & DRYSDALE, CHARTERED
Peter Van N. Lockwood
Nathan D. Finch
One Thomas Circle, N.W.
Washington, D.C.  20005
(202) 862-5000

Counsel to the Official Committee of
    Asbestos Personal Injury Claimants