IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| W. R. GRACE & CO., *et al.*, ) | Case No. 01-1139 (JKF) |
| ) | (Jointly Administered) |
| Debtors. ) | |
| | 3/27/06 Agenda Item 8 |
| | Related Docket No. 11867 |

### DEBTORS' OPPOSITION TO LIBBY CLAIMANTS' MOTION FOR PAYMENT OF CERTAIN FEES AND REQUEST FOR FORMATION OF A SEPARATE COMMITTEE

On February 20, 2006, the Libby Claimants moved this Court for an order authorizing and requiring the payment of fees incurred by their lawyers and experts during the asbestos personal injury claims estimation and the Chapter 11 plan process. *See* Libby Claimants' Motion for Payment of Certain Expenses in Connection with Claims Estimation and Plan Processes ("Motion for Payment"). After filing their Motion for Payment with the Court, the Libby Claimants subsequently filed a request with the U.S. Trustee seeking the formation of a "separate creditors' committee or a separate subcommittee . . . to represent the interests of all persons who claim personal injury from exposure to tremolite asbestos from Grace's operations in and near Libby, Montana . . . ." *See* Letter from Cohn to Klauder, Mar. 10, 2006 (attached as Exhibit A). As discussed below, the relief requested is inappropriate and should be denied.

From the very beginning of this bankruptcy, the Libby Claimants, through counsel, have been among the most active participants in the case. Prior to the bankruptcy, the Libby Claimants engaged counsel to represent them in the tort system; that representation has continued during the bankruptcy case. Once Grace filed for bankruptcy, the Libby Claimants retained bankruptcy counsel. Together, the Libby Claimants' tort and bankruptcy counsel have

actively participated in almost every aspect of the bankruptcy case.[1]  In addition to their own lawyers, the Libby Claimants also have been represented during the case by the Official Committee of Asbestos Personal Injury Claimants ("PI Committee") and even have their own representative on the PI Committee.  As this Court is well aware, the PI Committee has been extremely active and effective in representing the common interests of all the PI claimants, including the Libby Claimants.

Despite the effective and adequate representation they have in this bankruptcy, the Libby Claimants now seek further representation through the appointment of their own committee and/or payment of their counsel's fees.  Bankruptcy law provides well-established tests for determining whether or not appointment of a separate committee or payment of counsels' fees is necessary or required.  The Libby Claimants cannot, nor do they even try, to meet those tests.  First, appointment of a new or separate committee is appropriate only where the current committee is hopelessly divided, ineffective, and unable to take a position on important matters.  The Libby Claimants have made no such showing.  Second, counsel who merely represent the interests of their clients in a bankruptcy case are not entitled to compensation from the estate.  Unless the representation results in an actual and demonstrable benefit to the estate, reimbursement is not appropriate.  The Libby Claimants' counsel have not demonstrated how their counsels' continued representation of the Libby Claimants at the expense of the estate would somehow provide a benefit to the estate.  Here, where at least some of the Libby

---

[1] According to the 2019 statement filed on behalf of the Libby Claimants, the law firms of McGarvey, Heberling, Sullivan & McGarvey, P.C. and Lewis, Slovak, & Kovacich, P.C. are both being compensated on a contingency fee basis.  *See* Exhibits of Verified 2019 Statement of the Libby Claimants field December 21, 2004 (attached hereto as Exhibit B).  The Debtors do not know the fee arrangements negotiated between the Libby Claimants and their bankruptcy counsel.

Claimants' counsel will be paid a contingency fee, payment of their hourly rate amounts merely to a shift in fee arrangements and a possible windfall to some counsel.

## FACTUAL BACKGROUND

In their February 20, 2006 Motion, the Libby Claimants allege that the PI Committee cannot adequately represent them because their interests diverge from the interests of the rest of the personal injury claimants. Motion for Payment at 7-8. Specifically, the Libby Claimants contend that there are "Libby-specific issues" based on the nature and severity of the disease suffered by the claimants living in Libby. *Id.* at 5-6. In an attempt to support their position, the claimants also assert that Grace has created this issue by intending to take discovery regarding the claims put forth by claimants in Libby. *Id.* at 1-2. It is not Grace, however, that seeks differential treatment of claims held by individuals from Libby. The Debtors' Plan, dated January 13, 2005 (the "Plan") does not seek to treat Libby Claimants differently than the other personal injury asbestos claimants. *See* Plan at 4 (attached as Exhibit C). Moreover, during negotiations regarding the PI CMO and Questionnaire, Grace did not seek to treat Libby personal injury claimants differently than other personal injury claimants. *See* Debtors May 10, 2005 Motion to Approve the PI CMO and Questionnaire (attached as Exhibit D). Indeed, Grace continues to advocate, as it has from the inception of this bankruptcy, universal, medically and scientifically based criteria for claims estimation and payment for all personal injury asbestos claimants.

The Libby Claimants, however, *oppose* universal, medically and scientifically based criteria and urge the Court to consider and adopt different -- and less rigorous -- criteria for payment of their claims. *See* Libby Claimants' June 30, 2005 Opposition to Debtors' Motion to Approve PI CMO and Questionnaire (attached as Exhibit E). The Libby Claimants argue that

3

they are entitled to different treatment than other asbestos personal injury claimants during the estimation proceeding, and importantly, they allege that their claims should not be subject to the medical criteria proposed by the Debtors' Plan. *Id.* at 7, 12.

To be sure, the Libby Claimants have not established that they are entitled to unique, and more favorable treatment than other personal injury claimants for purposes of the estimation. Like many of the non-malignant claims, there are serious and substantial questions about the validity of the Libby Claimants' assertions and the Debtors vigorously dispute their allegation that they suffer from a "unique" form of asbestos disease called "Libby Tremolite Disease." Thus, in connection with the present Motion, the Debtors do not dispute that the Libby Claimants' assertions about their "unique" status could emerge as a distinct, discrete issue in the estimation litigation. What the Debtors do dispute, and address below, is the Libby Claimants' contention that they cannot receive adequate representation in the estimation unless either a new committee is appointed or the Debtors' estate pays their counsels' fees.

## DISCUSSION

### A. The Party Seeking Appointment of a New Committee Must Demonstrate Extraordinary Circumstances

The Bankruptcy Code provides that, when ordered by the Court, the U.S. Trustee must "appoint[] . . . additional committees of creditors or of equity security holders if necessary to assure adequate representation" of creditors. 11 U.S.C. § 1102(a)(2).[2] As this Court recently

---

[2] There is no authority for allowing the Libby Claimants to make an end-run around the requirements of Section 1102 by styling themselves as a "subcommittee." Indeed, such an attempt has been rejected by courts. For example, in *In re Allegheny International, Inc* 139 B.R. 336 (W.D. Pa. 1992), the bankruptcy court denied payment of fees to an entity that acted as a subcommittee but failed to be appointed as a committee under Section 1102:

> [T]he United States trustee argued that the Bankruptcy Code does not authorize a separate subcommittee to an official committee. This court is unaware of any authority for the creation of a subcommittee by the Equity Committee to conduct a proxy dispute. Section 1102(a)(2) of the

(Continued...)

held, it is the burden of the claimants seeking separate representation to prove that "the Official Committee does not provide them with adequate representation." *In re Garden Ridge Corp.*, 2005 WL 523129 at *3 (Bankr. D. Del. 2005). *Accord In re Agway, Inc.*, 297 B.R. 371, 374 (Bankr. N.D.N.Y 2003). Courts are reluctant to "authorize an additional committee of . . . creditors unless the current committee is hopelessly divided, unable to take a position on important matters and ineffective." *In re Garden Ridge*, 2005 WL 523129 at *4; *In re Enron Corp.*, 279 B.R. 671, 686 (Bankr. S.D.N.Y. 2002). As a result, appointment of a new committee is considered "an extraordinary remedy." *Id.*

When contemplating the appointment of a new committee, courts recognize that difference of opinions within a committee, even diverging financial interests, do not rise to the level of inadequate representation. *In re Enron*, 279 B.R. at 686; *In re Garden Ridge*, 2005 WL 523129 at *3-4. A "Creditor's Committee owes a fiduciary duty to the . . . creditors as a whole, not to the individual members." *In re Kensington Int'l Ltd.*, 368 F.3d 289, 315 (3d Cir. 2004); *In re Levy*, 54 B.R. 805, 807 (Bankr. S.D.N.Y. 1985). In *In re Agway*, after refusal by the U.S. Trustee, claimants sought to have a new committee appointed to represent them. This "unofficial

---

Bankruptcy Code, 11 U.S.C. § 1102(a)(2), enables a party in interest to request the formation of additional committees. That did not occur. Rather, Spear, Leads and Bomar created the Election Committee, which was ostensibly a subcommittee of the Equity Committee. The court finds that the Election Committee was a *de facto* additional committee, which had not been properly constituted pursuant to 11 U.S.C. § 1102(a)(2).

*In re Allegheny Int'l, Inc*, 139 B.R. 336 (W.D. Pa. 1992).

Additionally, the Libby Claimants' Motion for Payment is procedurally defective because the Libby Claimants failed to seek appointment of an official committee by the United States Trustee before requesting such relief from the court. *See* 11 U.S.C. 1102 (a)(1); *In re Dow Corning Corp.*, 212 B.R. 258, 264 (E.D. Mich. 1997). It was not until March 10, 2006 that the Libby Claimants made a belated request that the U.S. Trustee appoint a separate committee. Despite the procedural deficiencies in the Libby Claimants' Motion, the Debtors respond to the substantive issue before the Court: to wit, whether the Libby Claimants have demonstrated a need and entitlement to separate representation funded by the estate.

5

committee" believed that its interests were more narrow than those of the official committee and sought representation of their specific interests by a separate committee. *In re Agway*, 297 B.R. at 373. They even offered both to limit their separate representation to the discrete issues with which they diverged from the official committee and to place a monthly spending cap on the amount they would spend from the Debtors' estate. *Id.* at 374. Rejecting these arguments, the court held that the "Official Committee has demonstrated its ability to function in this case since its inception. This has included successful negotiations with the Debtor." *Id.* The court recognized that the addition of a new committee entailed an "additional layer of expense which . . . does not appear warranted." *Id.* In addition to these factors, as this Court recently held, courts also take into account (1) the ability of the creditors to participate in the case without a new appointment, (2) whether the creditors are treated differently under the reorganization plan, and (3) the tasks that the putative committee will perform. *In re Garden Ridge*, 2005 WL 523129 at *2 (citing *In re Enron*, 279 B.R. at 685).

### 1. The Libby Claimants Have Not Demonstrated Extraordinary Circumstances that Would Warrant Appointment of a New Committee or Payment of Fees

The Libby Claimants have not alleged any facts that would warrant appointment of a separate committee or retention of special counsel at the expense of the estate. First, the Libby Claimants have not alleged, nor is there is any indication, that the PI Committee functions in anything other than an efficient and effective manner. The PI Committee has negotiated, effectively, with the Debtors on both substantive and procedural matters. Additionally, like the putative committee in *In re Agway*, the Libby Claimants have neither alleged nor shown that the PI Committee has been lax in its fiduciary obligations to the claimants. *See In re Agway*, 297 B.R. at 374. Indeed, the PI Committee includes a representative of the Libby Claimants and through counsel, the Libby Claimants appear to be active on the PI Committee. *See* Notice of

6

Appointment of Official Committee (attached as Exhibit F) (appointing Royce N. Ryan, represented by McGarvey, Heberling, Sullivan & McGarvey, PC, as a member of the PI Committee).

Finally, the Libby Claimants face no barrier to participation in the estimation proceeding. Importantly, the tort law firms seeking payment have agreed to represent the Libby Claimants on a contingency basis and thus must continue to prosecute the interests of the Libby Claimants regardless of whether their fees are paid by the estate. Like the courts in *In re Agway*, *In re Enron*, and *In re Garden Ridge*, this Court should refrain from appointing a new committee to represent the Libby Claimants in this case as they have not made a sufficient showing to justify their extraordinary request.

> 2. **The Libby Claimants' Allegation of "Divergent Interests" - Even if True - Does Not Require Appointment of a New Committee or Payment of Fees**

Although the Libby Claimants assert that the PI Committee is "unable" to represent them, all the Libby Claimants have demonstrated is that the PI Committee apparently has "declined" to represent their interests in the manner requested by Libby Claimants' counsel. *See* Motion for Payment at 6-7. The relevant facts alleged in support of the Libby Claimants' request for fees are as follows:

> While substantial medical literature exists as to the . . . differences between disease resulting from tremolite asbestos as compared to chrysotile asbestos, these differences are apparently disputed by the Debtors. This has placed the PI Committee in a difficult position. On the one hand, a huge majority of its constituents suffer from chrysotile asbestos disease and could benefit if Libby Tremolite asbestos disease were treated the same as chrysotile for purposes of the Chapter 11 plan and trust distribution procedures. On the other hand, the Libby claimants are part of the constituency that the PI Committee represents and are entitled to adequate representation of their interests in the PI Claims Estimation and plan process even on matters where, because of divergency in the Libby Claimant interests from those of the committee majority, the PI Committee is unable to provide such representation.

7

Motion for Payment at 6. Based upon this alleged "divergence of interests," the Libby Claimants assert that the PI Committee has (1) declined to name the experts that the Libby Claimants believe should be named to support their contentions and (2) has "informed the Libby Claimants that the PI Committee does not plan to address" the "issues specific to Libby." Motion for Payment at 2.

Even if accepted as true, these facts do not support the Libby Claimants' contention that the PI Committee *cannot* continue to represent the common interests of the personal injury claimants. Indeed, the Libby Claimants' reliance on these facts demonstrates a misunderstanding of the purpose of a Committee. It is well established that section 1102 committees are not intended, nor are they permitted, to represent the unique interests of individual members of their constituency. *In re Kensington*, 368 F.3d at 315; *In re Levy*, 54 B.R. at 807. Differences within committees are presumed and do not warrant appointment of new committees absent extraordinary circumstances. *See In re Garden Ridge*, 2005 WL 523129 at *4; *In re Enron*, 279 B.R. at 686.

Within the personal injury claimant constituency, there are numerous "differences" among claimants concerning their exposures and their alleged diseases. In past bankruptcies, PI Committees routinely represented all of these claimants with diverging interests despite the fact that some would receive greater compensation than others. PI Committees regularly represent both claimants with asbestosis and claimants with mesothelioma despite the fact that claimants with mesothelioma clearly would benefit from stricter and more rigorous medical criteria for claimants who allege asbestosis. PI Committees regularly represent both mesothelioma and asbestosis claimants despite the fact that mesothelioma claimants generally receive greater compensation for their claims. The alleged differences between the Libby Claimants and the

remaining PI Claimants are not materially different than the differences that naturally and routinely exist among all PI claimants. Moreover, the asserted "divergent" interests between the Libby Claimants and the PI Committee simply do not rise to the "extraordinary" level required to justify creation of a new committee or separate compensation for Libby Claimants' counsel. *See In re Enron*, 279 B.R. at 686.

Finally, the Libby Claimants' Motion implies that the PI Committee *cannot* represent the Libby Claimants in the estimation because the PI Committee does not support, or agree with, the Libby Claimants' assertion that they have a "unique" asbestos disease called "Libby tremolite asbestos disease." *See* Motion for Payment at 7. However, this actual conflict has neither been alleged nor supported, and therefore does not provide a basis for the remedy sought. *In re Enron*, 279 B.R. at 686; *see also In re Garden Ridge*, 2005 WL 523129 at *3-4. Furthermore, even if such a conflict indeed exists, the Libby Claimants have retained counsel who can adequately represent their interests during the estimation and plan confirmation process on these limited and discrete issues. As discussed below, the bankruptcy code does not require payment of counsels' fees where the representation primarily benefits the clients and not the estate.

**B.    Representation of the Libby Claimants Does Not Provide a "Substantial Contribution" to the Estate and As Such, Should Not Be Paid For by the Estate**

The Libby Claimants' request for the payment of their counsels' fees and those of their experts is not justified, and at a minimum, it is premature. Section 503 of the U.S. Bankruptcy Code provides for the payment of expenses where a party has made a substantial contribution to the estate. The United States District Court for the District of Delaware has held that parties cannot be considered to have made a substantial contribution to the estate where their actions primarily benefit themselves and would have been undertaken absent an expectation of reimbursement from the estate:

9

> The applicable test to determine whether a party has made a 'substantial contribution' entitling him to administrative expenses pursuant to Section 503(b)(3)(D) is whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors. Even though a benefit may have been conferred to the estate, reimbursement should be excluded where the activities primarily served the interest of the interested parties, and would not have been undertaken absent an expectation of reimbursement from the estate. In other words, the acts must have been designed to benefit others who would foreseeably be interested in the estate. In the absence of such a finding, there can be no award of expenses even though there may have been a benefit to the estate.

*In re AM Int'l, Inc.*, 203 B.R. 898, 904 (D. Del. 1996) (citations omitted). This has been a consistent holding among the courts. *See In re Big Rivers Elec. Corp.*, 233 B.R. 739, 746 (W.D. Ky. 1998) ("The courts analyzing an award for administrative expenses usually engage in a two part inquiry. First, the court looks to whether the benefit was rendered solely for the party's individual self interest or for the benefit of the estate. Secondly, the court must determine whether the party's action conferred a direct, substantial, or meaningful benefit to the bankruptcy estate.") (citations omitted); *In re Alert Holdings Inc.*, 157 B.R. 753, 757 (Bankr. S.D.N.Y. 1993) ("[E]fforts undertaken by creditors solely to further their own self-interest are not compensable under section 503(b). The integrity of § 503(b) can only be maintained by strictly limiting compensation to extraordinary creditor actions which lead directly to tangible benefits to the creditors, debtor or estate.") (citations omitted); *In re F.E. Frederick Enters., Inc.*, 146 B.R. 360, 362 (Bankr. W.D. Pa. 1992) ("'Unless the creditor's attorney rendered services on behalf of the reorganization, not merely on behalf of his client's interest, and conferred a significant and demonstrable benefit to the debtor's estate and the creditors,' recovery under § 503(b)(3)(D) and (b)(4) is precluded.") (quoting *In re Gen. Oil Distrib., Inc.*, 51 B.R. 794, 806 (Bankr. E.D.N.Y. 1985)).

The Libby Claimants' counsel who seek reimbursement represent the overwhelming majority of claimants from Libby. *See* Motion for Payment at 5 ("Approximately 750 Claimants

10

are represented by Libby Claimants' Counsel."). To the extent that the "Libby Tremolite Disease" assertion becomes an important issue in the estimation, and the PI Committee is "unable" to represent the Libby Claimants' interests due to a true conflict, then the Libby Claimants' counsel will represent the Libby claimants' interests, as they have done since the inception of this bankruptcy case. Counsel for the Libby Claimants have agreed to the representation of the Libby Claimants on a contingency basis and thus are highly motivated to ensure that their clients' claims are substantiated and receive the highest possible value. The costs associated with that representation, however, should not be borne by the estate where the benefit of the representation "primarily serves the interests" of the Libby Claimants and not those of the estate.[3] *See In re AM Int'l, Inc.*, 203 B.R. 898, 904 (D. Del. 1996). If, at the conclusion of the estimation and plan confirmation process, counsel for the Libby Claimants believe that they have indeed rendered a service that benefits creditors generally or the estate, as opposed to just the interests of their clients, then they are free at that time to submit an application for fees pursuant to Section 503(b)(3)(D).[4]

## CONCLUSION

Grace has endeavored to treat all personal injury claimants alike. Through its proposed Plan, TDP's, and discovery practices, Grace had made no distinction between claimants from

---

[3] The Libby Claimants also assert that appointment of special counsel in the ZAI trial sets a precedent for their fee request. The present situation, however, is entirely inapposite to the appointment of special counsel for ZAI claimants. Special counsel for ZAI claimants was appointed due to the perceived unfairness of requiring 10 individual ZAI claimants to bear the burden of litigating a science trial impacting all alleged ZAI claimants. The Libby Claimants, on the other hand, are not bearing the costs for anyone other than themselves. Further, the lead special counsel retained for ZAI claimants had no prior obligation to provide services to such claimants and only undertook the representation due to his expectation that he would be compensated from the estate. Here, counsel for the Libby Claimants are already retained and obligated to provide the very services for which fees are sought in the Motion.

[4] The Debtors reserve the right to object to such a request.

Libby and all other personal injury claimants. By requesting that their attorneys be paid separately from the attorneys representing the PI Committee as a whole, the Libby Claimants, in essence, request that the Court do the impermissible by appointing the Libby Claimants as a separate creditors' committee. The claimants have not shown that they are not adequately represented by the PI Committee. They have not shown that their interests in the bankruptcy estimation proceeding differ in any way from the interests of the PI Committee at large. They have not shown that the PI Committee, as it stands, is unable to function effectively while still including the Libby claimants. In sum, they have not shown that it would be anything other than an impermissible waste of the Debtors' estate to pay four additional law firms to duplicate the work already being performed by the PI Committee. And finally, even if the Libby Claimants are required to litigate "Libby-specific" issues themselves, payment for legal services rendered in connection with the estimation would not be appropriate unless the services rendered confer a significant and demonstrable benefit to the Debtors' estate.

Wilmington, Delaware
Dated: March 15, 2006

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Salvatore F. Bianca
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

KIRKLAND & ELLIS LLP
Barbara M. Harding
David Mendelson
Brian T. Stansbury
Amanda C. Basta
Evan C. Zoldan
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:    (202) 879-5000
Facsimile:    (202) 879-5200

*And*

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

*/s/ James E. O'Neill / by CKH*

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession