# EXHIBIT A

# COHN WHITESELL & GOLDBERG LLP

ATTORNEYS AT LAW

101 ARCH STREET
BOSTON, MASSACHUSETTS 02110

TELEPHONE: (617) 951-2505
TELECOPIER: (617) 951-0679

March 10, 2006

**BY EMAIL**

David M. Klauder, Esq.
United States Department of Justice
Office of the United States Trustee
District of Delaware
844 King Street, Room 2207
Wilmington, DE 19899-0035

Re:   In re W.R. Grace & Co., et al./Libby Claimants

Dear David:

The claimants injured by exposure to tremolite asbestos from Grace's operations in and near Libby, Montana (the "Libby Claimants"),[1] by and through their counsel, Cohn Whitesell & Goldberg LLP, McGarvey, Heberling, Sullivan & McGarvey, P.C., Lewis, Huppert & Slovak, P.C., and Landis Rath & Cobb LLP (collectively, the "Libby Claimants' Counsel"), hereby request that the Office of the United States Trustee form a separate creditors' committee, or a separate subcommittee of the existing Official Committee of Asbestos Personal Injury Claimants (the "PI Committee"), to represent the interest of all persons who claim personal injury from exposure to tremolite asbestos from Grace's operations in and near Libby, Montana ("Injured Libby People"), including but not limited to the Libby Claimants. For the reasons set forth below, it has become apparent that critically important interests of Injured Libby People cannot be represented by the PI Committee.

Please note that the committee formation requested hereby is sought as an alternative remedy to the Libby Claimants' Motion for Payment of Certain Expenses in Connection with Claims Estimation and Plan Process (the "Motion") [Docket No. 11865]. The Motion is intended to offer a potentially less expensive and equally efficient means of assuring adequate representation of the interests of Injured Libby People. However, the Libby Claimants have been informed that the Motion will almost certainly be opposed by the Debtor. Under these circumstances, prudence requires that the Libby Claimants proceed with this request for committee formation in order to assure that the interests of Injured Libby People will be

---

[1] As identified in the Amended and Restated Verified Statement of Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP Pursuant to Fed. R. Bankr. P. 2019 [Docket No. 11624], as it may be amended and restated from time to time.

David M. Klauder, Esq.
March 10, 2006
Page 2

adequately represented as the claims estimation process and plan negotiations enter a critical phase.

As you are aware, through the Motion, the Libby Claimants seek an order from the Bankruptcy Court pursuant to Section 503 of the Bankruptcy Code authorizing and requiring payment of (a) the Libby Claimants' Counsel's legal fees incurred in connection with the asbestos personal injury claim estimation proceedings and the Chapter 11 plan process (and not in connection with any other aspect of this case), and (b) the expert witness fees incurred by the Libby Claimants in the estimation process. Whether the appropriate remedy is determined to be granting the Motion or formation of a separate committee or subcommittee to represent the interests of Injured Libby People, the relief is necessary because—while the Injured Libby People have certain interests in common with the PI Committee and for those purposes can be adequately represented by the PI Committee's professionals—the Debtors, as shown by their list of witnesses, have raised significant issues specific to Libby which the PI Committee has informed the Libby Claimants that the PI Committee does not plan to address. On these issues, the Injured Libby People's interests diverge significantly from the majority of personal injury claimants on important aspects of the claims estimation and plan process—necessitating approval of the Motion or committee or subcommittee formation. The PI Committee has expressed its support for the Motion. If the Office of the United States Trustee would rather seek formation of a committee or subcommittee to represent the interests of the Injured Libby People than support the Motion, the Libby Claimants would be willing to withdraw the Motion without prejudice while committee formation is sought and approved by the Bankruptcy Court. In any event, the Injured Libby People deserve adequate representation in this case.

On November 13, 2004, the Debtors filed their Chapter 11 Plan of Reorganization (the "Plan") and proposed form of Disclosure Statement [Docket Nos. 6895, 6896] and their Motion for Entry of an Order Seeking the Estimation of Asbestos Claims and Certain Related Relief (the "Estimation Motion") [Docket No. 6899]. At the hearing on objections to the Disclosure Statement and Estimation Motion held on January 21, 2005, the Bankruptcy Court ordered the PI Committee, the Futures Claimants Representative, and the Debtors to negotiate a case management order to govern the estimation of asbestos personal injury claims (the "PI Claims Estimation").

On August 29, 2005, the Bankruptcy Court entered the Case Management Order for the Estimation of Asbestos Personal Injury Liabilities [Docket No. 9301], which was subsequently amended on January 31, 2006 (the "PI CMO") [Docket No. 11697]. Pursuant to the PI CMO, the PI Claims Estimation will proceed with various discovery deadlines, culminating in a trial currently scheduled for November 2006. The PI CMO did not attempt to resolve a fundamental issue articulated by the Debtors and the PI Committee, namely, whether the PI Claims Estimation would (as proposed by the PI Committee) be on the basis of past verdicts and settlements or would (as proposed by the Debtors) include placing lower values (including zero) on some or all claims based on the Debtors' assertion of legal/medical criteria. With respect to these criteria, the Injured Libby People's interests diverge from those of the majority of personal injury claimants.

David M. Klauder, Esq.
March 10, 2006
Page 3

Although the Libby Claimants hope and expect that the Bankruptcy Court will ultimately accept the PI Committee's position that claims should be estimated on the basis of past verdicts and settlements, it has become clear from the Debtors' disclosure of witnesses to be called at the PI Claims Estimation trial that a substantial portion of the Debtors' evidentiary presentation will address Libby-specific issues. The Preliminary Expert Witness Disclosure for Asbestos PI Estimation submitted by the Debtors on December 19, 2005 [Docket No. 11378] includes Dr. Mickey E. Gunter, Ph.D., who has authored studies on Libby, and at one point, was a proposed witness for the Debtors in prepetition litigation against certain of the Libby Claimants. The Debtors' Preliminary Non-Expert Witness Disclosure for Asbestos Estimation filed on February 3, 2006 [Docket No. 11718] includes at least the following individuals whose testimony is expected to address Libby-specific issues: Brad Black, M.D. (physician and director of the Center for Asbestos Related Disease in Libby); Sharon Campolucci (director of the Agency for Toxic Substances and Disease Registry (ATSDR), who has worked on various Libby projects); Mary Kay Collins (Dr. Whitehouse's respiratory therapist who performed pulmonary function tests in Dr. Whitehouse's office); James Jay Flynn, M.D. (administrator of the Grace Libby Medical Program); Vikas Kapil (author of one or more publications on Libby); Jeffrey Lybarger (ATSDR director and an author of one or more publications on Libby); Dan Middleton (ATSDR official who has worked on Libby issues); Aubrey Miller (toxicologist and/or public health officer for the EPA who has done work on Libby); Christopher Weis (toxicologist with the EPA and has done work on Libby); and Alan Whitehouse, M.D. (pulmonologist and physician with the Center for Asbestos Related Disease in Libby).[2] In addition, the Debtors listed the "[p]ersons most knowledgeable" concerning seven published studies on asbestos disease in Libby, Montana, and the "[p]ersons most knowledgeable about any database maintained by the Agency for Toxic Substances and Disease Registry in connection with" those studies. The Debtors listed in their disclosures no studies other than those concerning Libby.

Approximately 750 claimants are represented by Libby Claimants' Counsel. Others have been diagnosed with Libby tremolite asbestos disease but are not represented by Libby Claimants' Counsel; many of these people can also be expected to assert claims against the Debtors at the appropriate time. This is an important constituency in this Chapter 11 case. The claims of the Libby Claimants and others who suffer from Libby tremolite asbestos disease differ in material respects from claims of the personal injury claimants represented by the remaining members of the PI Committee. The typical personal injury claimant has a claim based on exposure to chrysotile asbestos, which was the type used in 95 percent of commercial applications. The Injured Libby People, by contrast, were exposed to tremolite asbestos. Tremolite asbestos has demonstrated much higher toxicity than chrysotile asbestos; tremolite asbestos is about 10 times as carcinogenic and fibrogenic as chrysotile asbestos, and is hundreds of times more productive of mesothelioma, the type of lung cancer specific to asbestos. Tremolite asbestos disease also manifests much greater progressivity; a person diagnosed with Libby tremolite asbestos disease has approximately a 76 percent likelihood of progressing to

---

[2] The importance that the Debtors place on Dr. Whitehouse's testimony is underscored by their Motion to Seek Discovery from Dr. Alan C. Whitehouse and for a Protective Order Relating to Production of Documents from Dr. Alan C. Whitehouse, filed by the Debtors on February 17, 2006 [Docket No. 11850].

David M. Klauder, Esq.
March 10, 2006
Page 4

severe disease—about three times the progressivity rate for chrysotile asbestos disease. The
pleural disease pattern manifested by Libby tremolite asbestos disease often results in severe
impairment or death without radiographic interstitial disease or typical chrysotile markers of
radiographic severity which have commonly been used in trust distribution provisions of
asbestos company Chapter 11 plans. Finally, exposure pathways in Libby, Montana, are
unprecedented. For decades there has been an unprecedented 24 hour per day contamination of
the community's homes, playgrounds, gardens, and community air, such that the entire
community has been designated a Superfund site and is listed on the Environmental Protection
Agency's National Priorities List. Since exposure pathways are not limited to the workplace,
Injured Libby People suffering from severe asbestos disease or death include not only former
workers at the mine and milling facilities, but also the spouses and children of workers, and
community members who had no direct contact with the mine.

While substantial medical literature exists as to the foregoing differences between disease
resulting from tremolite asbestos as compared to chrysotile asbestos, these differences are
apparently disputed by the Debtors. This has placed the PI Committee in a difficult position. On
the one hand, a huge majority of its constituents suffer from chrysotile asbestos disease and
could benefit if Libby tremolite asbestos disease were treated the same as chrysotile for purposes
of the Chapter 11 plan and trust distribution procedures. On the other hand, the Libby Claimants
are part of the constituency that the PI Committee represents, and are entitled to adequate
representation of their interests in the PI Claims Estimation and plan process even on matters
where, because of divergence in the Libby Claimants' interests from those of the committee
majority, the PI Committee is unable to provide such representation.

The PI Committee has declined to designate witnesses on Libby-specific issues, but
instead advised Libby Claimants' Counsel that, if they conclude such experts might be necessary,
they must designate their own. Accordingly, on December 19, 2005, the Libby Claimants
designated Dr. Alan C. Whitehouse and Dr. David Egilman as their experts in the PI Claims
Estimation (the "Libby Expert Witnesses") in the event that the Debtors raise medical issues
specific to the Libby Claimants [Docket No. 11373]. More broadly, the PI Committee does not
plan at this time to defend against Libby-specific evidence or positions that Grace may assert,
except to the extent that the PI Committee determines that any such matter may more generally
affect the interests of personal injury claimants. Accordingly, Grace's position concerning
claims based on Libby tremolite asbestos disease will go unanswered in the PI Estimation by any
official committee. In the interest of justice, the Injured Libby People will need to participate in
the depositions of all Libby-specific witnesses and present evidence on Libby-specific issues.
The Debtors' decision to raise Libby-specific issues in the context of the PI Claims Estimation, in
combination the PI Committee not representing the interests of those who suffer from Libby
tremolite asbestos disease, effectively compels the Injured Libby People to participate in the PI
Claims Estimation. Unless the Motion is granted or a committee or subcommittee is formed, the
Injured Libby People will be the only party required to participate in the PI Claims Estimation
whose expense of so participating will not be borne by the estate.

David M. Klauder, Esq.
March 10, 2006
Page 5

Based on the foregoing, it is clear that (a) the interests of those who suffer from Libby tremolite asbestos disease diverge from the majority of the PI Committee's constituency on certain issues, (b) the Debtors intend to litigate such issues in connection with the PI Claims Estimation, and (c) the PI Committee cannot adequately represent the interests of the victims of Libby tremolite asbestos disease in connection with the PI Claims Estimation; and (d) the Libby Claimants are the only party that can adequately represent, in the PI Claims Estimation, the interests of claimants suffering from Libby tremolite asbestos disease. Moreover, negotiations concerning a consensual plan for the Debtors are expected to take place during the time-frame of the PI Claims Estimation, beginning with next week's initial mediation session with Judge Samuel Pointer, which the Libby Claimants' Counsel will attend. In respect of such negotiations and other aspects of the plan process, the PI Committee cannot adequately represent the interests of the Injured Libby People for, *inter alia*, the reasons described above. The Debtors themselves, in their recently filed Status Report on the Progress of the Case [Docket No. 11756], have recognized the separate interests of the Injured Libby People by listing them as a separate agenda item ("Provisions regarding Libby claimants to be negotiated") in their checklist for the negotiation of a consensual plan.[3] In the same report, the Debtors drew the Bankruptcy Court's attention to the interplay between criminal and civil liability in respect of the Injured Libby People[4]—another unique aspect of their position in this case on which they cannot be adequately represented by the PI Committee.

Representation of a group of creditors with common interests is the function appropriately performed by an official committee. Where different groups of creditors have different common interests, multiple committees may be required in order to assure that each group is adequately represented. Recognizing that this solution can be expensive and cumbersome, and that certain of the Libby Claimants' interests can continue to be adequately represented by the PI Committee, the Libby Claimants did not seek a separate committee. Rather, by the Motion, the Libby Claimants seek to be treated analogously to a subcommittee whereby they can be represented separately from the PI Committee on issues where their interests diverge from the rest of the committee, with the expense of such representation borne by the bankruptcy estate. It is important to emphasize that the scope of services by Libby Claimants' Counsel for which estate compensation is sought includes only matters concerning the PI Claims Estimation and the plan process, and specifically does not include representation of the Libby Claimants in respect of pending or future requests of the Debtors to expand the Preliminary Injunction in Adversary Proceeding No. 01-771—to date the greatest source of contention between the Libby Claimants and the Debtors. Given that the interests of non-Libby asbestos claimants will be represented in the PI Claims Estimation and the plan process by the PI Committee's professionals at the expense of the estate but those same professionals cannot represent the interests of the Injured Libby People, it is fair and appropriate that the Libby Claimants' Counsel and Libby Expert Witnesses also be paid by the estate for their services related to those matters.

---

[3] Exhibit C, Item III.A.2.

[4] Report, at 2.

David M. Klauder, Esq.
March 10, 2006
Page 6

The relief requested in the Motion is not unlike the Bankruptcy Court's order providing for the bankruptcy estate to compensate counsel for holders of Zonolite Attic Insulation ("ZAI") claims. Indeed, the benefit to the estate provided by the Libby Claimants' is more compelling. While the ZAI claims are totally in dispute, the Debtors acknowledge that Injured Libby People have legitimate claims; the only dispute is to the value and appropriate treatment of such claims under a Chapter 11 plan. Given that the Official Committee of Asbestos Property Damage Claimants refused to represent the interests of ZAI claimants, it was necessary either to form a separate committee for that purpose or to devise a "lesser included remedy" of just the sort sought by the Libby Claimants in the Motion. If, however, the Motion is denied, then the only way to assure adequate representation of the interests of Injured Libby People will be through formation of a separate official committee of creditors, or a subcommittee of the existing PI Committee.

Your prompt consideration of this request would be greatly appreciated. In particular, we would welcome your decision before March 15, 2006, which is the deadline (as extended for certain parties, including the U.S. Trustee) to respond to the Motion. If that is not possible, we would request a decision before March 27, 2006, which is the date scheduled for hearing on the Motion.

We very much appreciate your courtesy in this matter.

Very truly yours,

Daniel C. Cohn

cc:     Jon L. Heberling, Esq.
        Adam G. Landis, Esq.

877c/Klauder ltr (committee formation)2