# EXHIBIT 1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **W. R. GRACE & CO.,** *et al.,* | ) | **Case No. 01-1139 (JKF)** |
| | ) | **(Jointly Administered)** |
| Debtors. | ) | |

<u>**REPLY TO THE GOVERNMENT'S OPPOSITION TO DEBTORS' MOTION FOR**</u>
<u>**AUTHORIZATION TO SEEK DISCOVERY FROM DR. ALAN C. WHITEHOUSE AND**</u>
<u>**FOR A PROTECTIVE ORDER RELATING TO PRODUCTION OF DOCUMENTS**</u>
<u>**FROM DR. ALAN C. WHITEHOUSE**</u>

The criminal proceeding pending against the Debtors should not shield the Libby Claimants from discovery in this bankruptcy case relating to an issue that they themselves have chosen to litigate. The Libby Claimants have actively pursued their interests in this bankruptcy on numerous occasions. Whether or not asbestos from Libby produces a unique "tremolite disease" is the very issue about which Grace is seeking discovery from Dr. Whitehouse. The factors relied upon by Judge Molloy when limiting discovery in the criminal case have no application to this case, nor will the government be prejudiced by the discovery sought in this case by Grace.

> **A.**     **The Libby Claimants Have Submitted to the Jurisdiction of the Court for**
> **Purposes of Discovery and the Requested Discovery Plainly is Permissible**
> **Under the Rules**

The Libby Claimants have repeatedly submitted themselves to this Court's jurisdiction. Their counsel filed a 2019 statement prior to the Government's initiation of the Montana criminal proceeding. They filed a list of the experts that they intend to call in the estimation proceeding. On February 20, 2006, they took the aggressive position that this Court should fund their counsel and expert fees in the estimation proceeding or establish a separate subcommittee,

funded by the Debtors' estate, for the purpose of addressing what they term the unique nature of "tremolite disease."

The Libby Claimants have expressed a clear intention to adjudicate, in the bankruptcy court, the question of whether there is a "unique" disease called "Libby Tremolite Disease." The Debtors and the other parties whose interests stand to be affected by the Libby Claimants' positions are entitled to discovery of information and documents bearing on the question of whether such a distinct "disease" can be established based on proper medical and scientific criteria.   The Government has failed to provide any justification for shielding the Libby Claimants from their civil discovery obligations because of the existence of the Montana criminal proceeding.   Further, this Court specifically authorized discovery from doctors as part of the Questionnaire discovery process.[1]  Indeed, both the Debtors *and the PI Committee* have actively pursued discovery of doctors in the estimation.[2]  The discovery here is no different and quite clearly appropriate given the Libby Claimants' contentions.

**B.     The Requested Discovery of Dr. Whitehouse is Appropriate in its Scope**

The specific discovery requested by Grace is appropriate in scope.   Grace intends to request two categories of documents.   The first category requested consists of documents relating to Dr. Whitehouse's Progression Study (the "Study"), which purports to establish the existence of this unique Libby Tremolite Disease.   Dr. Whitehouse has created a database containing the data of 550 patients whom he claims to have treated for "Libby Tremolite Disease."   Of these,

---

[1] *See* Transcript of Proceedings, In re W.R. Grace, 01-01139 (JKF) (October 24, 2005) at 75-76 (instructing Grace to "take the depositions of the doctors.  Because they're the ones who got paid and gave the diagnosis.  And it's their testimony you're trying to challenge.").

[2] *See* Deposition Transcript of Dr. Ray A. Harron (Dec. 15, 2005) (deposition taken by Debtors); Deposition Transcript of Dr. James J. Flynn, III (Nov. 17, 2005) (deposition taken by PI Committee).

Dr. Whitehouse selected 123 patients as the subjects of his Study. Grace seeks discovery of the medical records both of the 123 patients who were selected for the Study as well as the approximately 430 patients whom he claims have Libby Tremolite Disease but were not selected for the Study. The second category relates to documents that provide information on the medical condition of the Libby Claimants or other persons alleged by the Libby Claimants to have "Libby Tremolite Disease." *According to the Libby Claimants*, there are 700 claimants with Libby Tremolite Disease and 800 non-claimants. See Libby Claimants' Opp. at 18. Dr. Whitehouse has treated or evaluated over 700 individuals that he claims have Libby Tremolite Disease. Grace seeks the medical documents in Dr. Whitehouse's possession of any individual with a claim against Grace, as well as documents supporting the *Libby Claimants' assertion* that an additional 800 individuals have this "unique" disease to the extent they are in his possession or custody.

It is well settled that civil discovery is expansive in scope as opposed to criminal discovery, which is more restricted. *Bittaker v. Woodford*, 331 F.3d 715, 734-35 (9th Cir. 2003). Here, a small group of unsecured creditors claim entitlement to favorable treatment at the expense of other similarly situated creditors. Under these circumstances, Grace is entitled to discovery of the documents that purport to form the basis of this contention. If the Debtors are precluded from obtaining that discovery, and thus rendered incapable of defending themselves against these contentions, then the Libby Claimants should not be permitted to advance their theory in the estimation proceeding.

### C.  The Discovery Limitations Ordered by Judge Molloy in the Criminal Case Are Not Applicable in this Bankruptcy Case

The Government contends that Grace impermissibly seeks to circumvent the limitations on discovery established by Judge Molloy in the criminal case through its request for discovery

3

of Dr. Whitehouse in the bankruptcy case. However, as noted above, the scope of discovery in civil cases is broader than the scope of discovery permitted in criminal cases. Critically, the limitations on discovery ordered by Judge Molloy in the criminal case were based on consideration of the Rules of Criminal Procedure. There is no indication that Judge Molloy intended to restrict Grace's right to obtain relevant discovery here.

      **1.**      **The Libby Claimants Are Active Parties in Interest in the Bankruptcy Case and Therefore Are Not Entitled to the Same Privacy Protections Granted in the Criminal Case**

The privacy concerns reflected in Judge Molloy's order are not present to the same degree in the bankruptcy case. Judge Molloy issued a protective order to protect the privacy of testifying witnesses who were not parties to the criminal proceeding. However, doctors are permitted to release medical records in a judicial proceeding where "the patient is a party to the proceeding and has placed the patient's physical or mental condition in issue." Mont. Code Ann. § 50-16-811(c) (2005). The Libby Claimants have repeatedly put their medical condition at issue in this bankruptcy case.

To the extent that some of Dr. Whitehouse's patients who allegedly have "Libby Tremolite Disease" are not among the current, active Libby Claimants, their records are still relevant to the Libby Claimants' claims about the existence and implications of this so-called disease, and the Libby Claimants repeatedly advance this allegation as relevant to their position. However, Grace would agree to a redaction of personal identifying information from these records.

Further, Grace will agree that any discovery obtained in the bankruptcy case that exceeds discovery permitted in the criminal case shall not be used in the criminal case in a manner that would impair the privacy rights of any individuals whose medical records are produced. And,

any documents produced by Dr. Whitehouse in the bankruptcy would be subject to a protective order issued from the bankruptcy court.

**2.    Judge Molloy's Decision Concerning the Deposition of Dr. Whitehouse in the Criminal Case Is Based on Rules of Procedure Inapplicable to the Bankruptcy Case**

The Government also objects to Grace's motion because it does not believe that Grace is entitled to depose Dr. Whitehouse in the bankruptcy. The Government's position is flawed on numerous levels. As an initial matter, Grace's motion for authorization seeks only the discovery of medical records, not a deposition of Dr. Whitehouse. Nevertheless, Grace certainly is entitled to depose Dr. Whitehouse in the bankruptcy proceeding. First, the Libby Claimants have put Dr. Whitehouse's testimony - both factual and expert - at issue. It may not have been the Government's preference for the Libby Claimants to pursue their claims in the bankruptcy, but the Libby Claimants themselves have decided to do so, and their counsel filed 2019 statements prior to the initiation of the criminal proceeding. On numerous occasions, the Libby Claimants have identified Dr. Whitehouse, his diagnoses, and his Study as the basis of their contention that they have a unique disease. *See* Libby Claimants' Opp.

Moreover, on April 8, 2004, when the Libby Claimants sought this Court's permission to conduct perpetuation depositions, they supported their contention that discovery should take place by attaching letters from Dr. Whitehouse attesting to the medical condition of various Libby Claimants. April 8, 2004 Libby Claimants' Motion for Relief from Stay (attached as Exhibit A). Dr. Whitehouse is in the unique position of possessing the facts that underlie the Libby Claimants' claims. His factual testimony is essential to testing their contention that they have a unique disease entitling them to special treatment in this case.

5

Second, Grace is entitled to depose Dr. Whitehouse in his capacity as an expert witness. The Libby Claimants have named Dr. Whitehouse as an expert witness in the estimation proceeding and thus, the PI CMO entitles Grace to depose Dr. Whitehouse. The Government is not the appropriate party to challenge the Libby Claimants' decision to name Dr. Whitehouse as an expert, nor may the Government impair Grace in its effort to defend itself against Dr. Whitehouse's assertions in the bankruptcy.

Judge Molloy's decisions concerning expert depositions were based on the application of Rule 15(a) of the Fed. R. Crim. P. December 5, 2005 Order at 8. That Rule is not applicable to this bankruptcy. Nothing in Judge Molloy's order suggests that he intended to prevent Grace from exercising its rights under the Federal Rules of Civil Procedure, which are broader than the Federal Rules of Criminal Procedure, either to subpoena Dr. Whitehouse as a fact witness or depose him in his capacity as an expert witness in the bankruptcy case.

Dated: March 17, 2006

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick
Janet S. Baer
Salvatore F. Bianca
200 East Randolph Drive
Chicago, IL 60601
Telephone:     (312) 861-2000
Facsimile:     (312) 861-2200

KIRKLAND & ELLIS LLP
Barbara M. Harding
David E. Mendelson
Brian T. Stansbury
Amanda C. Basta
Evan C. Zoldan
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:     (202) 879-5000
Facsimile:     (202) 879-5200

and

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:     (302) 652-4100
Facsimile:     (302) 652-4400

Co-counsel for Debtors and Debtors in Possession

6

# Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
* * * * * * * * * * * * * * * * * * * * * * *
                                  *     Chapter 11
In re                             *     Case No. 01-01139 (JKF)
                                  *     Jointly Administered
W.R. GRACE & CO., et al.,         *
                                  *
                                  *     Hearing Date: April 26, 2004 at 12:00 p.m.
            Debtor.               *     Objection Deadline: April 19, 2004
* * * * * * * * * * * * * * * * * * * * * * *
```

## LIBBY CLAIMANTS' MOTION FOR RELIEF FROM AUTOMATIC STAY AND PRELIMINARY INJUNCTION TO TAKE PERPETUATION DEPOSITIONS[1]

Claimants injured by exposure to tremolite asbestos from the Debtors' operations in and near Libby, Montana[2] (the "Libby Claimants"), by and through their counsel, McGarvey, Heberling, Sullivan & McGarvey, P.C.; Cohn Khoury Madoff & Whitesell LLP; and Landis Rath & Cobb LLP, hereby move for relief from the automatic stay of Section 362(a) of the Bankruptcy Code and the preliminary injunction entered by this Court on January 22, 2002 (the "Preliminary Injunction"), as set forth in paragraph 6 below, for the limited purpose of taking perpetuation depositions to preserve the testimony of certain plaintiffs who, due to the severity of their illness, may not be alive to testify at trial. In support of this Motion, the Libby Claimants state:

### I.    Background

1.    The Libby Claimants were, and many still are, residents of Libby, Montana who

---

[1] An identical pleading is being filed contemporaneously in Adversary Proceeding No. A-01-771 because relief is being sought from the Preliminary Injunction (defined herein) as well as from the automatic stay.

[2] As identified in the Verified Statement of Cohn Khoury Madoff & Whitesell LLP and Landis Rath & Cobb LLP Pursuant to Fed. R. Bankr. P. 2019 [Docket No. 4807] filed in Case No. 01-01139 (JKF), as it may be amended and supplemented from time to time.

have been diagnosed with tremolite asbestos disease. Thirty-three Libby Claimants have died during this Chapter 11 case. Among those still alive, many have no medical coverage for oxygen, nursing home care, home health care, and other treatments.

2.      As of April 2, 2001, the date W.R. Grace & Co. and certain of its affiliates (collectively, the "Debtors") filed Chapter 11 petitions (the "Petition Date"), the Libby Claimants' claims against the Debtors have been automatically stayed pursuant to Section 362(a) of the Bankruptcy Code.

3.      In addition, on the Petition Date, the Debtors filed an adversary complaint seeking, *inter alia*, to preliminarily enjoin asbestos-related claims against insurers and other affiliates of the Debtors. The Court entered a temporary restraining order on April 2, 2001, and on May 3, 2001 entered the preliminary injunction sought by the Debtors. On January 22, 2002, in response to the Debtors' Motion to Modify the Preliminary Injunction, the Court entered an order granting the Preliminary Injunction. On June 20, 2002, upon consideration of the Motion of Carol Gerard to Clarify the Scope of the Preliminary Injunction or, in the Alternative to Modify the Preliminary Injunction, the Court ordered the stay of the commencement of litigation and the tolling of the statutes of limitation (or other applicable time bar established by statute or order) with respect to any suit or potential claim against any Insurance Carrier (as defined in the preliminary Injunction), including any suit or potential claim based on alleged torts of such Insurance Carrier (the "Clarification Order").[3]

4.      Further, on July 21, 2003, the Debtors filed a Motion to Expand the Preliminary Injunction to Include Actions Against Montana Vermiculite Company (the "Expansion Motion"),

---

[3] The Clarification Order, insofar as it relates to the Libby Claimants' independent claims against Maryland Casualty Company, has been reversed on appeal. However, this Court has ruled that the Preliminary Injunction remains in effect as to such claims.

seeking to stay the Libby Claimants' litigation against Montana Vermiculite Company. Based on this Court's comments at oral argument, it appears that this Court is on the verge of granting the Expansion Motion.[4]

5.    So long as the automatic stay and Preliminary Injunction act to stay the Libby Claimants' claims from proceeding, a significant risk exists that seriously ill Libby Claimants will be unavailable to testify at the time of trial. To alleviate the risk, the Libby Claimants submit that perpetuation depositions are necessary. At present, perpetuation depositions of the following five Libby Claimants are critical: Irving Ball, Merritt Dutton, Edna Oikle, Claude Paul and Shirley Taylor-Regjovich (the "Proposed Deponents"). All five of the Proposed Deponents are currently on oxygen (24 hours per day for all except Mr. Paul), suffer from severe asbestos disease, have a significant risk of death at any time, and are not expected to live two years. See Exhibit "A" attached hereto, Letters from Alan C. Whitehouse, M.D., physician to each Proposed Deponent.

## II.    Relief Requested

6.    In order to preserve the testimony of Libby Claimants who are, or who become during the course of the Debtors' case, seriously ill, the Libby Claimants request relief from the automatic stay of Section 362(a) of the Bankruptcy Code and the Preliminary Injunction as follows:

      a.    The Libby Claimants seek relief to proceed with the perpetuation depositions of the Proposed Deponents.

      b.    The Libby Claimants seek retroactive relief for the depositions of Rodney Erickson and Louie O'Brien that were taken on December 1, 2003 to

---

[4] In any event, such actions are stayed pending entry of this Court's order on the Expansion Motion; following oral argument on December 15, 2003, the Libby Claimants, at this Court's request, consented to such stay in order to accommodate this Court's schedule in determining the Expansion Motion.

perpetuate testimony (the "December Perpetuation Depositions").[5]

    c.    The Libby Claimants seek relief to take future perpetuation depositions (the "Future Perpetuation Depositions") as the need arises during the course of the Debtors' case. The Libby Claimants propose that prior to the noticing of each Future Perpetuation Deposition, the Libby Claimants will file with this Court and serve upon Debtors' counsel a Certificate of Proposed Perpetuation Deposition (the "Certificate"). The Certificate will include the proposed deponent's medical condition, establishing the need for the Future Perpetuation Deposition. If the Debtors file and serve an objection to the taking of such Future Perpetuation Deposition within 20 days of the date of such a Certificate, the Libby Claimants shall be required to obtain relief from this Court in order to take the Future Perpetuation Deposition. If an objection is not timely filed, the Libby Claimants may take the Future Perpetuation Deposition without further order of this Court.

7.    Given the severity of Libby tremolite asbestos disease, and the fact that the automatic stay and Preliminary Injunction have stayed all of the Libby Claimants' claims from proceeding, perpetuation depositions are critical to preserve the testimony of the Libby Claimants who may not be alive, or may be physically incapacitated, to testify at trial. Accordingly, relief from the automatic stay and Preliminary Injunction, for the limited purpose of taking perpetuation depositions is appropriate.

---

[5] The December Perpetuation Depositions were taken subsequent to this Court's suggestion that relief already existed to take perpetuation depositions. At the September 22, 2003 hearing, this Court stated:

    If there's somebody dying get the deposition scheduled and do it, and you have relief from the injunction to the extent that it's in effect in any event to do that, so that at least the testimony is preserved.

Transcript of Hearing of September 22, 2003, In re W.R. Grace & Co., Inc., Case No. 01-01139 (JKF), Tr. 34:9-13. Prior to the December Perpetuation Depositions, which were taken pursuant to orders from the Montana Workers' Compensation Court, on November 10, 2003, notice of the depositions was provided to counsel to the Debtors, Maryland Casualty Company, the State of Montana, and BNSF, co-defendants in Mr. Erickson's and Mr. O'Brien's cases. Counsel to the State of Montana and BNSH in either actions appeared and conducted cross-examinations of the deponents. The December Perpetuation Depositions could not be deferred due to the illness of the deponents. On December 19, 2003, upon learning that Debtors' counsel deemed the notice to be inadequate, Jon Heberling, counsel to the Libby Claimants, provided copies of the December Perpetuation Deposition transcripts to Debtors' and Maryland Casualty Company's counsel and invited each to reopen the depositions for cross-examination. On March 4, 2004, Mr. Heberling again invited Debtors' and Maryland Casualty Company's counsel to further examine Mr. Erickson and Mr. O'Brien. Counsel to the Debtors has replied that the Debtors do not wish to reopen the December Perpetuation Depositions, but no response has been received from counsel to Maryland Casualty Company to date.

4

### III.    Notice and Prior Motion

8.    Notice of this Motion has been furnished to (a) the Office of the United States Trustee for this District, (b) the Debtors, (c) Royal Indemnity Company, (d) Continental Casualty Company, (e) Transportation Insurance Company, (f) Maryland Casualty Company, (g) Montana Vermiculite Company, through its successor trustee Lawrence H. Sverdrup, and (h) those entities that have requested notice pursuant to Fed. R. Bankr. P. 2002.  The Libby Claimants submit that, given the nature of the relief requested herein, no other or further notice is necessary.

9.    No prior request for the relief requested herein has been made to this or any other Court other than the discussion on the record at the September 22, 2003 hearing referred to in paragraph 6, footnote 5.

### IV.    Conclusion

WHEREFORE, the Libby Claimants respectfully request that this Court (i) enter the attached order granting this Motion; and (ii) grant such other and further relief as this Court may deem just and proper.

Respectfully submitted this 8th day of April, 2004

LIBBY CLAIMAINTS

By their attorneys,

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
LANDIS RATH & COBB LLP
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE 19801
(302) 467-4400

and

Daniel C. Cohn
David B. Madoff
COHN KHOURY MADOFF
  & WHITESELL LLP
101 Arch Street
Boston, MA 02110
(617) 951-2505

and

Jon L. Heberling
MCGARVEY, HEBERLING, SULLIVAN
  & MCGARVEY, P.C.
745 South Main
Kalispell, MT 59904
(406) 752-5566

877P\relief mot main case (perpetuation depos)3

6

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | **Hearing Date: April 26, 2004 at 12:00 p.m.** |
| | ) | **Objections Due: April 19, 2004 at 4:00 p.m.** |

## NOTICE OF MOTION

TO:  The United States Trustee for the District of Delaware, counsel to the Debtors, Royal Indemnity Company, Continental Casualty Company, Transportation Insurance Company, Maryland Casualty Company, Montana Vermiculate Company, through its successor trustee Lawrence H. Sverdrup, and all parties requesting notice under Bankruptcy Rule 2002.

Claimants injured by exposure to tremolite asbestos from the Debtors' operations in and near Libby, Montana (the "Libby Claimants") have filed the attached **Libby Claimants' Motion for Relief from Automatic Stay and Preliminary Injunction to Take Perpetuation Depositions** (the "Motion").

Objections, if any, to the relief requested in the Motion must be filed with the United States Bankruptcy Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801, on or before **April 19, 2004, at 4:00 p.m. (ET).**

At the same time, you must also serve a copy of the objection on the undersigned counsel to the Trust so as to be **received no later than 4:00 p.m. (ET) on April 19, 2004.**

A HEARING ON THE MOTION WILL BE HELD BEFORE THE HONORABLE JUDITH K. FITZGERALD, UNITED STATES BANKRUPTCY JUDGE, IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 N. MARKET STREET, 6TH FLOOR, WILMINGTON, DELAWARE 19801 ON **APRIL 26, 2004 AT 12:00 P.M. (ET).**

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: Wilmington, Delaware
      April 8, 2004

LANDIS RATH & COBB LLP

_/s/ Kerri K. Mumford (with permission Adam V. M.)_
Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
Landis Rath & Cobb LLP
919 Market Street, Suite 600
Wilmington, DE 19801
(302) 467-4400

       - and –

COHN KHOURY MADOFF & WHITESELL LLP
Daniel C. Cohn
David B. Madoff
101 Arch Street
Boston, MA 02110
(617) 951-2505

       - and –

MCGARVEY, HEBERLING, SULLIVAN
& MCGARVEY, P.C.
745 South Main
Kalispell, MT 59904
(406) 752-5566

Counsel to the Libby Claimants

**Exhibit "A"**

**(Letters from Alan C. Whitehouse, M.D.)**



**KLOCK & WHITEHOUSE, P.S.**
BOARD CERTIFIED
INTERNAL MEDICINE & PULMONARY DISEASE

104 W. 5th Avenue, Suite 270 E.
Spokane, Washington 99201-4810
Telephone (509) 755-5864
Fax (509) 755-5869

Lawrence E. Klock, M.D.
Alan C. Whitehouse, M.D.

March 30, 2004

Jon L. Heberling
McGarvey, Heberling, Sullivan, & McGarvey
745 South Main
Kalispell, MT 59901

RE:   IRVING BALL

Dear Mr. Heberling:

My patient, Irving Ball, is on oxygen 24 hours per day. At your request I have reviewed his chart to determine life expectancy. This is a very difficult determination to make. Results vary. Certainly Mr. Ball is subject to perishing due to hypoxia at any time. Mr. Ball has severe asbestosis disease.

Over the past 20 years I have evaluated or treated over 500 patients with asbestos disease from exposure to Libby tremolite asbestos. I have followed many of them to the point of death. Based on my experience with many such patients, on a more probably than not basis, I would estimate that Mr. Ball would perish secondary to asbestos disease in 1-2 years. He has a significant risk of death at any time within the two years.

Sincerely,

Alan C. Whitehouse, M.D.
ACW/glc

Mar 31 2004 3:49PM    KLOCK & WHITEHOUSE, PS    509 755 5869    P.4



**KLOCK & WHITEHOUSE, PS**
BOARD CERTIFIED
INTERNAL MEDICINE & PULMONARY DISEASE

104 W. 5th Avenue, Suite 270 E
Spokane, Washington 99201-4810
Telephone (509) 755-5864
Fax (509) 755-5869

Lawrence T. Klock, M.D.
Alan C. Whitehouse, M.D.

March 10, 2004

Jon L. Heberling
McGarvey, Heberling, Sullivan, & McGarvey
745 South Main
Kalispell, MT 59901

RE:    MERRITT DUTTON

Dear Mr. Heberling:

My patient, Merritt Dutton, is on oxygen 24 hours per day. At your request I have reviewed his chart to determine life expectancy. This is a very difficult determination to make. Results vary. Certainly Mr. Dutton is subject to perishing due to hypoxia at any time. Mr. Dutton has severe asbestosis disease.

Over the past 20 years I have evaluated or treated over 500 patients with asbestos disease from exposure to Libby tremolite asbestos. I have followed many of them to the point of death. Based on my experience with many such patients, on a more probably than not basis, I would estimate that Mr. Dutton would perish secondary to asbestos disease in 1-2 years. He has a significant risk of death at any time within the two years.

Sincerely,

Alan C. Whitehouse, M.D.
ACW/glc

04/01/04    14:47    MCGARVEY HEBERLING SULLIVAN HGH / /                      NO.000   002

Apr 01 2004 10:32AM   KLOCK & WHITEHOUSE, PS       509 755 5869       p.2



**KLOCK & WHITEHOUSE, P.S.**
BOARD CERTIFIED
INTERNAL MEDICINE & PULMONARY DISEASE

164 W. 5th Avenue, Suite 270 E
Spokane, Washington 99201-4810
Telephone (509) 755-5864
Fax (509) 755-5869

Lawrence E. Klock, M.D.
Alan C. Whitehouse, M.D.

March 30, 2004

Jon L. Heberling
McGarvey, Heberling, Sullivan, & McGarvey
745 South Main
Kalispell, MT 59901

RE: EDNA OIKLE

Dear Mr. Heberling:

My patient, Edna Oikle, is on oxygen 24 hours per day. At your request I have reviewed her chart to determine life expectancy. This is a very difficult determination to make. Results vary. Certainly Mrs. Oikle is subject to perishing due to hypoxia at any time. Mrs. Oikle has severe asbestosis disease.

Over the past 20 years I have evaluated or treated over 580 patients with asbestos disease from exposure to Libby tremolite asbestos. I have followed many of them to the point of death. Based on my experience with many such patients, on a more probably than not basis, I would estimate that Mrs. Oikle would perish secondary to asbestos disease in under one year. She has a significant risk of death at any time within the one year.

Sincerely,

Alan C. Whitehouse, M.D.
ACW/gic



**KLOCK & WHITEHOUSE, PS.**
BOARD CERTIFIED
INTERNAL MEDICINE & PULMONARY DISEASE

104 W. 5th Avenue, Suite 270 E
Spokane, Washington 99201-4810.
Telephone (509) 755-5864
Fax (509) 755-5869

Lawrence E. Klock, M.D.
Alan C. Whitehouse, M.D.

March 30, 2004

Jon L. Heberling
McGarvey, Heberling, Sullivan, & McGarvey
745 South Main
Kalispell, MT 59901

RE: CLAUDE PAUL

Dear Mr. Heberling:

My patient, Claude Paul, is on oxygen at night. At your request I have reviewed his chart to determine life expectancy. This is a very difficult determination to make. Results vary. Certainly Mr. Paul is subject to perishing due to hypoxia at any time. Mr. Paul has severe asbestosis disease.

Over the past 20 years I have evaluated or treated over 500 patients with asbestos disease from exposure to Libby tremolite asbestos. I have followed many of them to the point of death. Based on my experience with many such patients, on a more probably than not basis, I would estimate that Mr. Paul would perish secondary to asbestos disease in two years. He has a significant risk of death at any time within the two years.

Sincerely,

Alan C. Whitehouse, M.D.
ACW/glc



**KLOCK & WHITEHOUSE, P.S.**
BOARD CERTIFIED
INTERNAL MEDICINE & PULMONARY DISEASE

104 W. 5th Avenue, Suite 270 E
Spokane, Washington 99201-4810
Telephone (509) 755-5864
Fax (509) 755-5869

Lawrence E. Klock, M.D.
Alan C. Whitehouse, M.D.

March 30, 2004

Jon L. Heberling
McGarvey, Heberling, Sullivan, & McGarvey
745 South Main
Kalispell, MT 59901

RE:    SHIRLEY TAYLOR-REGIOVICH

Dear Mr. Heberling:

My patient, Shirley Taylor-Regiovich, is on oxygen 24 hours per day. At your request I have reviewed her chart to determine life expectancy. This is a very difficult determination to make. Results vary. Certainly Mrs. Taylor-Regiovich is subject to perishing due to hypoxia at any time. Mrs. Taylor-Regiovich has severe asbestosis disease.

Over the past 20 years I have evaluated or treated over 500 patients with asbestos disease from exposure to Libby tremolite asbestos. I have followed many of them to the point of death. Based on my experience with many such patients, on a more probably than not basis, I would estimate that Mrs. Taylor-Regiovich would perish secondary to asbestos disease in 1-2 years. She has a significant risk of death at any time within the two years.

Sincerely,

Alan C. Whitehouse, M.D.
ACW/glc

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
* * * * * * * * * * * * * * * * * * * * * *
                                *    Chapter 11
In re                           *
                                *    Case No. 01-01139 (JKF)
W.R. GRACE & CO., et al.,       *    Jointly Administered
                                *
              Debtor.           *    Re: Docket No. _____
* * * * * * * * * * * * * * * * * * * * * *
```

## ORDER GRANTING LIBBY CLAIMANTS' MOTION FOR RELIEF FROM AUTOMATIC STAY AND PRELIMINARY INJUNCTION TO TAKE PERPETUATION DEPOSITIONS

Upon consideration of the Libby Claimants' Motion for Relief from the Automatic Stay and Preliminary Injunction to Take Perpetuation Depositions (the "Motion") filed by the claimants injured by exposure to tremolite asbestos from the Debtors' operations in and near Libby, Montana[1] (the "Libby Claimants"); and after due deliberation and sufficient cause appearing therefor,

**THE COURT FINDS AND CONCLUDES THAT:**

A.    Due and adequate notice has been given to all parties entitled thereto, and no other or further notice is necessary or required.

B.    This Court has reviewed the Motion and has considered the request for relief therein.

C.    It is just and necessary to perpetuate testimony of seriously-ill Libby Claimants who are barred by the automatic stay and the Preliminary Injunction from commencing or continuing litigation against the Debtors and the parties protected by the Preliminary Injunction

---

[1] As identified in the Verified Statement of Cohn Khoury Madoff & Whitesell LLP and Landis Rath & Cobb LLP Pursuant to Fed. R. Bankr. P. 2019 [Docket No. 4807] filed in Case No. 01-01139 (JKF), as it may be amended and supplemented from time to time.

(the "Protected Parties"), and to assure that such testimony will be admissible against the Protected Parties to the full extent provided by applicable non-bankruptcy law notwithstanding the automatic stay and Preliminary Injunction.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.    The Motion is granted.

2.    The Libby Claimants are granted relief from the automatic stay and Preliminary Injunction to proceed with the perpetuation depositions of Irving Ball, Merritt Dutton, Edna Oikle, Claude Paul and Shirley Taylor-Regjovich.

3.    The Libby Claimants are granted retroactive relief from the automatic stay and Preliminary Injunction for the depositions of Rodney Erickson and Louie O'Brien that were taken on December 1, 2003 to perpetuate testimony.

4.    As the need arises during the course of the Debtors' case, the Libby Claimants are granted relief from the automatic stay and Preliminary Injunction to take future perpetuation depositions (the "Future Perpetuation Depositions") in accordance with the following procedure:

> Prior to the noticing of each Future Perpetuation Deposition, the Libby Claimants will file with this Court and serve upon Debtors' counsel a Certificate of Proposed Perpetuation Deposition (the "Certificate"). The Certificate will include the proposed deponent's medical condition, establishing the need for the Future Perpetuation Deposition. If the Debtors file and serve an objection to the taking of such Future Perpetuation Deposition within 20 days of the date of such a Certificate, the Libby Claimants shall be required to obtain relief from this Court in order to take the Future Perpetuation Deposition. If an objection is not timely filed, the Libby Claimants may take the Future Perpetuation Deposition without further order of this Court.

2

Wilmington, Delaware
_____ ___, 2004

877p\relief mot main case (perpetuation depos)3

_____
Honorable Judith K. Fitzgerald
United States Bankruptcy Judge