IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.*, | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | | Related Docket No. 11885 |

## W.R. GRACE & CO.'S STATUS REPORT REGARDING COMPLETION OF THE W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE

Debtors, W.R. Grace & Co. and its affiliated companies (collectively, "Grace" or "Debtors"), file this status report to update the Court on the status of its discovery efforts. This status report will discuss deficiencies that have been observed in the completion of the W.R. Grace Asbestos Personal Injury Questionnaire ("Questionnaire") by pre-petition litigation claimants.

### THE W.R. GRACE PERSONAL INJURY QUESTIONNAIRE

On September 12, 2005, pursuant to the Case Management Order for the Estimation of Personal Injury Liabilities, Grace served Questionnaires upon all known holders of Asbestos PI Pre-Petition Litigation Claims. As the result of two 60-day extensions granted by the Court, the deadline for the return of the Questionnaires is presently May 12, 2006. *See* Order Modifying the Case Management Order for the Estimation of Asbestos Personal Injury Liabilities Regarding the Extension of Time for Claimants to Respond to Questionnaires (Feb. 21, 2006) (Docket No. 11885). Nevertheless, since the Questionnaire was served, 6,933 have been completed and returned.

Rust Consulting ("Rust"), the Debtors' claims agent, has begun to compile the data in the Questionnaire into the navigable database as required by Paragraph 3.D of the CMO. *See also* Amended Case Management Order for the Estimation of Asbestos Personal Injury Liabilities

("Amended PI CMO") at ¶ 2.B. (Docket No. 11697). To date, 5,920 Questionnaires have been imaged and their responses compiled into a navigable database.

A preliminary review of the returned Questionnaires has revealed several significant deficiencies in the completion of the Questionnaires. The most frequent problems are: 1) claimants objecting to the Questionnaire instead of responding to the questions contained in the Questionnaire; 2) claimants providing answers to questions solely by way of attachment; and, 3) either the claimants or their attorneys failing to sign the Questionnaire.

### A.    Responding to the Questionnaire via Objections

Rust has reported that a significant number of Questionnaires are being returned with objections to certain questions instead of responses to the questions contained in the Questionnaire. Out of the 5,920 Questionnaires that have been processed to date, 3,353 or approximately 56% of the returned Questionnaires object to at least some of the questions rather than providing the requested information. The most common objections that have been observed are objections based on relevance, burden, and on the grounds that the information sought is equally accessible to Grace as to the claimant. These objections, however, are improper because the Court already has ruled on these issues during the July omnibus hearing, when it engaged in a question-by-question review of the Questionnaire and ruled on the relevance and burden objections raised by the Official Committee of Asbestos Personal Injury Claimants ("PI Committee"). The Court decided these issues precisely to prevent what presently is occurring. *See* Tr. of Hr'g at 176-77 (Jul. 19, 2006) ([The Court]: Well, but what they'll say, Mr. Bernick, in answer to the question is I object, it's not relevant, it's burdensome, then I'm going to be right

2

here making rulings on it anyway, so why don't we just do it and get it done?").[1] Thus, such objections are improper.[2]

### B.     Responding to the Questionnaire via Attachments

Rust also has observed that a large number of Questionnaires are being responded to in whole or in part via attachment, with the response "see attached." Out of the 5,920 Questionnaires that have been processed to date, 2,701 or approximately 45% of the Questionnaires contain this deficiency.

Providing the requested information by means of attachment instead of completing the Questionnaire itself is highly problematic. First, the Questionnaire directs the claimants (and their counsel) to return the Questionnaire "as *completely* and accurately as possible." Questionnaire at i (emphasis added). Second, providing answers to the portions of the Questionnaire solely by means of attachment makes it difficult, if not impossible, to discern to which question the information contained in the attachment responds. This problem is highlighted by the fact that, on average, each Questionnaire has 100 pages of attachments. Third, the purpose of the Questionnaire is to understand what the *claimant* believes is the claim, not Grace's guess based upon attachments.

---

[1]   Perhaps the most extreme example of such objections is the responses filed with the Court by Fitzgerald & Associates in which they respond on behalf of each of its claimants that the claimant "objects to providing the information sought in Part I, Part II, Part III, Part IV, Part V, Part VI, Part VII, Part VIII, and Part IX on the basis that this information has already been provided." *See* Objection to Providing Information (Docket No. 11551).

[2]   Rust has observed that at least one law firm, the Law Firm of Michael B. Serling, P.C., has converted the Questionnaire into an editable PDF format, and, instead of objecting to certain questions, has simply deleted questions that it does not wish to answer. *See* Questionnaire of Melbourne D. Cray at p.4 (omitting Part II.b.) (attached as Exhibit A). This sort of alteration violates the instruction that the Questionnaire be completed "as completely and accurately as possible." *See* Questionnaire at i.

Finally, Rust has informed Grace that if it is required to search the attached documents in attempt to discern the appropriate answers, the time that will be required to construct the navigable database will far exceed the time estimate originally provided. Rust made the original estimate based upon its understanding that the Court's instructions would be followed and that the Questionnaire would be completed by the pre-petition claimants. The entire purpose of ordering a Questionnaire in lieu of traditional discovery is to provide a streamlined discovery process. Pre-petition claimants who refuse to complete the Questionnaire and instead state "see attached" frustrate the entire process established by the Court.

C.  **Lack of Signature**

Part X of the Questionnaire requires that the claimant certify under penalty of perjury that "all of the foregoing information contained in this Questionnaire is true, accurate and complete." Questionnaire at Part X. Similarly, it requires that counsel for the claimants (where the claimant is represented by counsel) certify that "all of the information contained in the Questionnaire is true, accurate and complete." *Id.* Rust reports that of the 5,920 Questionnaires processed thus far, 2,146 or approximately 36% of the Questionnaires, have not been signed by the claimants. Additionally, 216 of the Questionnaires have not been signed by counsel. These signatures, however, are necessary to ensure that the Questionnaires are returned with the appropriate certifications as to their completeness and accuracy.

Grace intends to address these issues in the first instance by providing the claimants who have engaged in these practices a "cure letter" and an opportunity to cure the deficiencies within 30 days of the receipt of the cure letter. Further, in an effort to address the issues prospectively before the Questionnaires are returned, Grace already has notified the law firms and claimants about these issues by way of a letter included in the mailing of the Amended PI CMO. *See* Letter from B. Harding to Claimants and Counsel (Feb. 6, 2006) (attached as B). However, Grace

wishes to alert the Court to these issues now because Grace is concerned that further intervention will be needed either from the discovery mediator or the Court itself. Indeed, Grace has received responses from certain counsel, indicating they intend to continue these practices. *See, e.g.*, Letter from N. Duncan to B. Harding (Feb. 24, 2006) (attached as Exhibit C) (indicating that Baron & Budd will continue to answer via attachment, continue to object to the questions asked in the Questionnaire and that the Questionnaires returned by Baron & Budd claimants "will not be counter-signed by legal counsel").[3]

Dated: Wilmington, Delaware
　　　　March 20, 2006

　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　KIRKLAND & ELLIS LLP
　　　　　　　　　　　　　　David M. Bernick
　　　　　　　　　　　　　　Elli Leibenstein
　　　　　　　　　　　　　　200 East Randolph Drive
　　　　　　　　　　　　　　Chicago, IL 60601
　　　　　　　　　　　　　　Telephone:　(312) 861-2000
　　　　　　　　　　　　　　Facsimile:　(312) 861-2200

　　　　　　　　　　　　　　KIRKLAND & ELLIS LLP
　　　　　　　　　　　　　　Barbara M. Harding
　　　　　　　　　　　　　　David E. Mendelson
　　　　　　　　　　　　　　Brian T. Stansbury
　　　　　　　　　　　　　　Amanda C. Basta
　　　　　　　　　　　　　　655 Fifteenth Street, NW
　　　　　　　　　　　　　　Washington, D.C. 20005
　　　　　　　　　　　　　　Telephone:　(202) 879-5000
　　　　　　　　　　　　　　Facsimile:　(202) 879-5200

　　　　　　　　　　　　　　-and-

---

[3] Counsel for Grace has received identical letters from the law firms of Leblanc & Waddell, LLP and Silber Pearlman LLP.

PACHULSKI, STANG, ZIEHL, YOUNG,
JONES & WEINTRAUB LLP.

_____
Laura Davis Jones (Bar No. 2436)
James E. O'Neill, III (Bar. No.4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400

6