IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Objection Deadline: April 28, 2006** |
| | ) | **Hearing Date: May 15, 2006 at 2:00 p.m.** |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING
SETTLEMENT OF CLAIM NO. 851 OF CHL ADMINISTRATION, INC.
PURSUANT TO FED. R. BANKR. P. 9019**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby move this Court, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order approving the terms of the settlement of Claim No. 851 filed by CHL Administration, Inc. (the "Claimant") against the Debtors (the "Settlement," attached hereto as <u>Exhibit A</u>). In support of this motion (the "Motion"), the Debtors respectfully represent as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

**Jurisdiction**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these cases and of this matter in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

2. On April 2, 2001 (the "Petition Date"), the Debtors, including W. R. Grace & Co. ("Grace"), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

3. In 1959, the Miller Products Company ("Miller") acquired the property located at 7737 NE Killingsworth, Portland, Oregon (the "Killingsworth Street Property") and formulated horticultural chemicals on the site. In 1966, Grace acquired the assets of Miller and expanded the pesticide formulation operations. Grace continued to operate the facility under the Miller Products Company name as a division of Grace.

4. In August 1970, Claimant (then known as the Chas H. Lilly Company) purchased the Killingsworth Street Property from Grace. Claimant continued to formulate pesticides at the Killingsworth Street Property until 1996, at which time Claimant ceased production at the facility and decommissioned the plant.

5. In December of 2001, Claimant entered into a voluntary agreement with the Oregon Department of Environmental Quality ("ODEQ") to perform a remedial investigation and potential remediation to address soil and groundwater contamination at the Killingsworth Street Property.

6. On March 13, 2002, Claimant filed a timely proof of claim (Claim No. 851) against the Debtors asserting an unsecured, non-priority claim for an unliquidated amount relating to remediation of the Killingsworth Street Property. The proof of claim alleged that

Grace was liable to Claimant for remedial action costs pursuant to Oregon law and response costs under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA").

7.  On May 5, 2004, the Debtors filed an objection to the claim. Claimant responded to the objection and the parties commenced discussions regarding cost recovery relating to the Killingsworth Street Property. In the course of those discussions, Claimant provided documentation supporting its estimate of $4.8 million in total costs to complete remediation. Those costs consist of $1.5 million in past investigation costs, $730 thousand in remaining costs to complete the ODEQ-approved onsite remedy, and $2.57 million in estimated future costs for offsite investigation and possible remediation.[2]

8.  The Debtors and Claimant have reached the Settlement represented by Exhibit A, which provides for the resolution and allowance of Claim No. 851 as an unsecured, pre-petition, non-priority claim in the amount of $1.7 million. Under the Settlement, Claimant shall not be entitled to pre-petition or post-petition interest upon the allowed amount with respect to any period prior to the effective date of a confirmed chapter 11 plan or plans with respect to the Debtors.

9.  The $1.7 million Settlement amount represents approximately 35% of the total investigation and remediation costs. Under one method of allocating responsibility, based on the years of chlorinated pesticide formulating activities at the site, Grace could be responsible for as

---

[2] The offsite investigation relates to an adjoining property onto which a stormwater discharge pipeline emptied from the Killingsworth Street Property. The stormwater discharge pipeline operated during Grace's ownership period and was removed when the owner of the adjoining property developed the property prior to Claimant's ownership. The owner of the adjoining property did not file a proof of claim prior to the claims bar date.

much as 64% of the response costs relating to the site. Claimant has argued that Grace is responsible for all or substantially all of the response costs.

10. Under the Settlement, all other amounts outlined in or related to Claim No. 851 will be disallowed and expunged and Claimant will be forever barred from asserting any additional pre-petition or post-petition claims against the Debtors with respect to the matters covered by the Settlement, including all past, present and future costs of investigation, remediation, monitoring and maintenance associated with releases at or emanating from the Killingsworth Street Property including, but not limited to, those matters contained in Claimant's claim (the "Settled Matters"). Claimant has also agreed to indemnify the Debtors against any and all claims under CERCLA or the Oregon Environmental Cleanup Law by any party at any time with respect to the Settled Matters.

11. In the event that the Settlement becomes null and void for any reason, then the preceding paragraph shall not apply, and Claimant's claim shall be deemed fully reinstated, subject, however, to the Debtors' defenses, counterclaims and offsets, if any, and credits for payments Claimant has received, if any. Neither the Settlement nor its nullification pursuant to its terms, however, shall create a right that does not presently exist for Claimant or any other party to file additional claims with respect to these matters, nor waive any defense that the Debtors may have against such claims.

12. Claimant has agreed to settle its claim for a lesser sum than Claimant believes is due, in reliance upon the proposed treatment of general unsecured claims described in Debtors' Amended Joint Plan of Reorganization dated January 13, 2005 (the "2005 Plan"). Under the 2005 Plan, class 9 general unsecured claims would be paid in full, with payment being made 85% in cash and 15% in common stock of the reorganized Grace. In recognition of this reliance,

Claimant may void the Settlement if the plan that is ultimately confirmed with respect to Grace does not provide for the payment in full of Claimant's claim in the amount allowed pursuant to the Settlement, on or as soon as practicable after the effective date of the confirmed plan, with the payment being at least 85% in cash and any remainder in common stock of the reorganized Grace. However, this option is for the sole benefit of Claimant. In the event Claimant sells or assigns its claim to another party at any time prior to payment under the confirmed plan, such option terminates. If the Settlement is not approved by this Court prior to December 31, 2006, the Settlement shall be null and void unless mutually agreed by the Debtors and Claimant. If the Settlement is voided by Claimant or is not approved by the deadline described above, Claim No. 851 will be deemed fully reinstated, subject to all of the Debtors' defenses, counterclaims, offsets and credits.

13.  The terms of the Settlement have been submitted to every key constituency in these Chapter 11 cases -- *i.e.*, the Official Committee of Unsecured Creditors, the Official Committee of Equity Holders, the Official Committee of Asbestos Personal Injury Claimants, the Official Committee of Property Damage Claimants, and the Future Claimants' Representative. The Debtors believe that those constituencies will not object to approval of the Settlement.

14.  As discussed below, the Debtors believe that the Settlement is in the best interests of their estates.

### Relief Requested

15.  By this Motion, the Debtors seek authority, pursuant to Bankruptcy Rule 9019(a), to enter into the Settlement attached hereto as <u>Exhibit A</u>, thereby allowing Claim No. 851 and settling and resolving all issues pertaining to such claim, subject to Claimant's right to void the Settlement.

## Basis for Relief

16. Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed.R.Bankr.P. 9019(a). Before approving a settlement under Bankruptcy Rule 9019, a court must determine that the proposed settlement is in the best interests of the debtor's estate. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996); *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) ("The ultimate inquiry is whether 'the compromise is fair, reasonable, and in the interest of the estate.'"). To reach this determination, courts assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. *See Martin*, 91 F.3d at 393.

17. The standard by which courts evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.*; *see also Depositor v. Mary M. Holloway Found.*, 36 F.3d 582, 587 (7th Cir. 1994) (affirming an order approving a compromise and settlement of claims against the estate where it was "unlikely" that the debtor would succeed on the claim, litigation of the claims would involve considerable expense, and the claimant would withdraw all claims upon approval of the settlement). Settlements should be rejected only if they fall "below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W. T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (*citing Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

18. The standards set forth above have been met in this case. The Settlement will allow the Debtors to resolve the disputes with Claimant that currently exist or may arise in the

6

future with respect to the clean-up of the Killingsworth Street Property, while avoiding litigation expenses. Because disposition of the claim through contested matters would result in increased expenditures, both in terms of human and financial resources, the savings to the Debtors' estates resulting from this resolution inures to the benefit of all of the Debtors' creditors and, therefore, is in the best interest of the Debtors and their estates.

19. The Settlement amount of $1.7 million is reasonable under the circumstances. The Settlement represents approximately 35% of the estimated total investigation and remediation costs, whereas Grace's past use of the Killingsworth Street Property could make it liable for as much as 64% of those costs. The Settlement amount includes pre- and post-petition interest, tolling the accrual of interest up to the effective date of a confirmed plan.

20. For all of the foregoing reasons, the Debtors submit that the Settlement is fair and reasonable and in the best interest of the Debtors, their creditors and their estates, and thus the Debtors should be authorized to enter into the Settlement.

## NOTICE

21. Notice of this Motion has been given to: (i) the Office of the United States Trustee, (ii) counsel to the debtor-in-possession lenders, (iii) counsel to the official committees appointed by the United States Trustee, and (iv) all those parties that requested service and notice of papers in accordance with Fed R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

DOCS_DE:117028.1

WHEREFORE, the Debtors respectfully request that the Court enter an order approving the terms of the Settlement and granting such other and further relief as the Court may deem just and proper.

Dated: April 10, 2006

KIRKLAND & ELLIS LLP
David M. Bernick
Janet S. Baer
Salvatore Bianca
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

and

PACHULSKI STANG ZIEHL YOUNG JONES & WEINTRAUB LLP

_/s/ James E. O'Neill_
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession