IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JJF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**MOTION FOR THE ENTRY OF AN ORDER AUTHORIZING
THE DEBTORS TO ACQUIRE CATALYST COMPONENTS BUSINESS AND
<u>CATALYST MANUFACTURING ASSETS</u>**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby submit this motion (the "Motion") for the entry of an order authorizing the Debtors to acquire the Catalyst Components Business and certain other Catalyst Manufacturing Assets of a privately held chemical company located in central New Jersey (collectively, the "Target Business"). In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

**Jurisdiction**

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (as amended, the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

3. On April 2, 2001, the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

4. The Chapter 11 Cases have been consolidated for administrative purposes only, and pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

**Summary of Operations**

5. The Debtors and Grace subsidiaries outside the United States engage in specialty chemicals and materials businesses, operating on a worldwide basis. These operations are conducted primarily through two business units, Davison Chemicals and Performance Chemicals.

6. The Debtors' Specialty Catalysts unit is part of Davison Chemicals. Specialty Catalysts sells polymerization and chemical catalysts worldwide to the chemical and petrochemicals industry. For nearly 50 years, Specialty Catalysts has pioneered advances in polymerization catalysts and is a leading supplier throughout the

world. The domestic business is conducted by W. R. Grace & Co.-Conn. ("Grace"), which is a Debtor in the Chapter 11 Cases.

7. Grace has experienced significant, annual revenue-growth from sales of its polymerization catalysts in North America. A substantial part of the Specialty Catalyst polymerization catalyst business consists of the manufacture of catalysts for the production of polyolefins (polypropylene and polyethylene). Polymerization catalysts have been a very significant segment of Specialty Catalysts' business because of the growth in demand for polypropylene and polyethylene in the marketplace as plastics are substituted for wood, glass, metal, and other materials. This segment's recent growth and profitability have led the Debtors to pursue additional business opportunities within this business segment.

8. The acquisition of the Target Business will increase Grace's revenues and serve as a strategic and complementary addition to Grace's current products and manufacturing capabilities. Due to the anticipated future demand growth in the polymerization catalyst business, Grace will need to expand its current manufacturing capabilities to utilize the newest catalyst technologies. The acquisition of the Target Business will give Grace the assets to meet current and future production requirements, for a lower capital investment than would be required to build new or expand existing facilities.

9. Grace and the Seller are negotiating an asset purchase agreement for the Target Business (the "Purchase Agreement"), a redacted draft version of which is attached hereto as <u>Exhibit A</u>. Grace will purchase substantially all of the assets of the Target Business, including buildings at the business' location in central New Jersey,

production machinery and equipment, formulations, technology, know-how, customer lists, trademarks and goodwill.

10. Grace also will enter into a ground lease with the Seller for the site. The Seller, which also has substantial manufacturing operations elsewhere in the United States, will conduct its own operations on adjacent property and the parties will enter into agreements under which Grace will pay its share of certain expenses of the combined facility, and the Seller will supply certain services and facilities to Grace.

11. The purchase price for the acquisition will be $20,000,000 in cash, payable at the closing, subject to a post-closing adjustment based on any change in the working capital of the business from a specified base amount of $3,500,000.

12. Grace will assume certain pre-closing liabilities included in working capital. The Seller will indemnify Grace for certain pre-closing liabilities, including those relating to environmental issues, subject to the limitations set forth in the Purchase Agreement.

13. The parties expect that they will have to file pre-acquisition notification with the German Federal Cartel Office and await the expiration of the required waiting period (thirty days, subject in some cases to earlier termination). However, they do not expect that the acquisition will raise any subsequent antitrust issues either in Germany or elsewhere.

**Relief Requested**

13. By this Motion, the Debtors seek authority to acquire the Target Business from the Seller for a purchase price of $20 million subject to a post-closing adjustment based on any change in the working capital of the business from a specified base amount of $3,500,000, on substantially the same terms as set forth in the Purchase Agreement.

**Basis For Relief**

14. Section 363 of the Bankruptcy Code provides that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The Third Circuit Court of Appeals has held that courts should approve a debtor's use of assets outside the ordinary course of business if the debtor demonstrates a sound business justification for the proposed transaction. *See, e.g., In re Martin*, 91 F.3d 389, 396 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991)); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *see also In re Delaware & Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991).

15. Once the debtor has articulated a sound business justification, "[t]he business judgment rule '[creates] a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D. N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). The business judgment rule has significance in chapter 11 cases as it shields a debtor's management from judicial second-guessing. *See id*; *Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors

5

the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions").

16. Courts have applied four factors in determining the existence of a sound business justification: (i) whether a sound business reason exists for the proposed transaction; (ii) whether fair and reasonable consideration is provided; (iii) whether the transaction has been proposed and negotiated in good faith; and (iv) whether adequate and reasonable notice is provided. *See In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983) (setting forth the "sound business purpose" test); *Abbotts Dairies*, 788 F.2d at 145-47 (implicitly adopting the articulated business justification test of the Lionel standard and adding the "good faith" requirement); *Delaware & Hudson*, 124 B.R. at 176 (adopting Lionel in this district). The Debtor's proposed purchase of the Target Business meets each of these requirements.

17. ***Sound Business Reasons***. Several sound business reasons exist for the proposed acquisition of the Target Business by the Debtors. First, the manufacturing assets from this acquisition are important to the Debtors' current and future business plans and provides immediate sales growth (and sales growth potential) in a fast-growing segment of the Debtors' business. Indeed, industry sources project that the Specialty Catalysts market in the United States will grow at a rate that exceeds the growth rate of U.S. gross domestic product, and at even higher rates in regions of Asia Pacific and the Middle East.

18. ***Fair and Reasonable Consideration***. The $20 million USD purchase price, subject to working capital adjustment, is fair and reasonable consideration for the Target Business. First, the ratios of price-to-sales and price to EBITDA (earnings before

interest, tax, depreciation-and amortization) for the proposed transaction compare favorably with similar recent transactions in the specialty chemicals sector. Second, the Debtors project that incremental sales (that is, future sales above the combined current sales of the Debtors' existing polymerization catalysts business and the Target Business) will continue to grow at historical rates by leveraging the manufacturing assets and customer relationships of the Target Business. The manufacturing assets, combined with the Debtors' technology, know-how and strong sales, will increase the Debtors' revenues, profits and market presence. Third, the Debtors expect that the acquisition will be cash accretive to the Debtors' estates within the first year following the closing of the transaction, thereby increasing the value of their estates for the benefit of all stakeholders. Accordingly, the Debtors believe that the purchase price is fair and reasonable considering the economic benefit to the Debtors' estates.

19. ***Good Faith***. The Debtors and Seller have negotiated the proposed sale/purchase of the Target Business at arm's-length and in good faith. The Debtors also believe that the terms of the proposed transaction are fair to the Debtors.

20. ***Adequate and Sufficient Notice***. In satisfaction of the requirements of Bankruptcy Rule 2002, the Debtors intend to serve copies of this Motion to all parties as provided herein.

**Summary**

21. The Debtors have years of experience in developing, manufacturing and selling polymerization catalysts. The Debtors believe that they can use their state of the art technology, extensive research and development, technical service and manufacturing expertise and knowledgeable technical sales force across businesses to continue innovation and increase sales in the Target Business.

22. In recent years, the Debtors and their non-debtor subsidiaries and affiliates have completed a number of "bolt-on" acquisitions of various business sizes. These types of acquisitions are, and will continue to be, integral to the Debtors' growth strategy, and give the Debtors access to technologies and markets that they could not develop internally.

23. In light of the foregoing, the Debtors have determined in their business judgment that the acquisition of the Target Business is fair and reasonable. The Debtors believe that the proposed purchase is in the best interest of their estates, grounded in sound business judgment and satisfies the "sound business judgment" test for the use of assets outside the ordinary course of business under Section 363(b) of the Bankruptcy Code.

WHEREFORE, the Debtors respectfully request that the Court enter an order: (i) authorizing the Debtors to acquire, or fund the acquisition by a non-Debtor, the Target Business for an approximate purchase price of $20 million USD on substantially the same terms as set forth in this Motion; and (ii) granting such other relief as the Court deems just and proper.

Wilmington, Delaware
Dated: April 10, 2006

Respectfully submitted,

KIRKLAND & ELLIS LLP

David M. Bernick, P.C.
Janet S. Baer
Salvatore F. Bianca
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

*/s/ James E. O'Neill*

Laura Davis Jones (Bar No. 2436)
James E. O'Neill, III (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession