IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JJF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Objection Deadline: April 28, 2006 |
| | ) | Hearing Date: May 15, 2006 |

## MOTION FOR THE ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO CONTRIBUTE FUNDS INTO THE CHICAGO, 51ST STREET PENSION PLAN TRUST

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby submit this motion (the "Motion") for the entry of an order authorizing the Debtors to make a one-time, lump sum contribution to the trust funding the Retirement Plan of W. R. Grace & Co.-Conn. Chemical Group (Chicago Dewey & Almy Plant) (the "Union Pension Plan") in an amount not to exceed $1,300,000. The contribution is necessary to meet the Debtors' obligations to amend the Union Pension Plan to increase benefits, in accordance with its recently negotiated collective bargaining agreement (the "2006 Union Agreement"), between W. R. Grace & Co.-

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Conn, and the Steelworkers union (the "Union"), dated January 24, 2006. The 2006 Union Agreement covers the hourly bargaining unit employees of the Debtors' Chicago, 51st Street manufacturing facility, located at 6050 W. 51st Street, Chicago, Illinois ("Chicago, 51st Street").

## Jurisdiction

1. This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this motion is proper under 28 U.S.C. § 1408.

2. The statutory predicates for this Motion are sections 105 and 363(b) of title 11 of the United States Code (as amended, the "Bankruptcy Code").

## Chapter 11 Background

3. On April 2, 2001, the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

4. The Chapter 11 Cases have been consolidated for administrative purposes only, and pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

## Chicago 51st Street and the Union Agreement

5. The Chicago 51st Street plant is one of the Debtors' largest "Darex" plants, which produces metal can sealants, "soda - sorb" (for medical applications) and other products. Darex is part of the Debtors' Grace Performance Chemicals ("GPC") business.[2]

6. At Chicago 51st Street, the Debtors employ a total of approximately 150 hourly and salaried employees. The Union has represented the hourly workforce at Chicago 51st Street since at least the 1970's. The total number of hourly employees currently represented by the

---

[2] Prior union pension motions have dealt with the Debtors' Curtis Bay, Chattanooga, Cincinnati and Lake Charles unionized employees. Each of these locations are part of the Debtors' Davison business.

Union is approximately 68 (the "Union Employees"), or 45% of the total workforce at Chicago 51st Street.

7. The collective bargaining agreement with the Union (which preceded the 2006 Union Agreement) was scheduled to expire on January 22, 2006. Therefore, to avoid any possibility of a work stoppage, a new agreement to replace the prior agreement needed to be finalized on, or about, that date.

8. In anticipation of the expiration of the prior collective bargaining agreement, Debtors and the Union began formal negotiations in December 2005, and those negotiations ended with Debtors making a final offer, which included the Pension Amendments (as defined herein). The final offer became the 2006 Union Agreement when the Union Employees ratified the final offer on January 24, 2006 (retroactive to January 22).

9. The Debtors' objective regarding the negotiations with the Union were, among other things, to increase Union members' contributions towards medical premiums from 20% to 30% of the total cost, sign a 4-year labor agreement that would include a "no strike" clause, and cross-train certain Union employees to enhance efficiency and productivity at the work site. The Union Agreement accomplished these objectives.[3] In addition, these objections were achieved in a cost effective manner. The average annual percentage increase for wages and benefits is 2.5% per year (exclusive of pension expense).

10. During the negotiations, Debtors rejected the Union's demands for concessions in many areas, including more holidays, more vacation, and a $30 increase in monthly pension

---

[3] The negotiations with the Union, and the implementation of the 2006 Union Agreement, constitute conducting business in the ordinary course. Therefore, implementation of provisions of the 2006 Union Agreement (except for the Pension Amendments) would not require Court approval. The sole reason that the Debtors move for Court approval is to secure consent to fund the Union Pension Plan in an amount necessary to implement the Pension Amendments, pursuant to the 2006 Union Agreement and the requirements of Internal Revenue Code section 401(a)(33).

benefits, spread over 3 years. The Debtors did, however, agree to amend the Union Pension Plan to increase monthly pension benefits by $10 over 4 years (the "Pension Amendments"), provided that Debtors could secure the requisite approval from the Court (and the Internal Revenue Service, if necessary).

### The Union Pension Plan and the Pension Amendments

11. In general, the basic structure of the Union Pension Plan may be summarized as follows: the Plan is a defined-benefit pension plan, which satisfies the qualification requirements under Internal Revenue Code (the "Code") section 401(a). The "plan year" applicable to the Plan is a calendar year. The Plan is funded with employer contributions, in accordance with Code section 412. Those contributions, and all related earnings, are in the trust that is tax-exempt under Code section 501(a). The Plan does not require employee contributions. As of January 1, 2006, the fair market value of the assets held in trust to provide Plan benefits totaled approximately $2.8 million.

12. The Plan is a so-called "flat-dollar unit benefit plan", which provides a specific dollar amount for each year of service thereunder, commencing at age 65, which is paid in the form of an annuity over the life of the retired employee (or in other forms of benefit of the same actuarial value, but lower actual monthly benefit, including an annuity over the joint lives of the retired employee and his or her spouse). For instance, under the benefit formula that currently applies (without implementation of the Pension Amendments), an eligible employee would be entitled to a lifetime annuity (i.e., a "straight-life annuity") commencing at age 65 (or later) in the amount of $35.00 for each year of eligible service. Thus, an employee with 30 years of service would be entitled to such an annuity in the amount of $1,050.00 per month ($35.00 times 30 years).

13. The most significant aspect of the Pension Amendments is that the monthly pension benefit for any Union Employee who retires on or after February 1, 2006, would be increased from $35.00 per year of service to the applicable amount listed below:

| Retirement Date | Monthly Pension |
|---|---|
| 2/1/2006 | $36.00 |
| 2/1/2007 | $39.00 |
| 2/01/2008 | $42.00 |
| 2/1/2009 | $45.00 |

14. As explained below, in order to implement the Pension Amendments, the Debtors are required to make a contribution of $904,815 or, if the Pension Funding Equity Act (the "PFEA") is not extended, $1,228,542 (the "Required Contribution"), by no later than September 15, 2006, pursuant to Code section 401(a)(33).

15. Aside from the Pension Amendments, the only other material cost to the Debtors as a result of the 2006 Union Agreement is a moderate wage increase of 3.0% per year.

### Code Section 401(a)(33).

16. Code section 401(a)(33) generally prohibits the adoption of any amendment to increase or enhance benefits under a defined benefit pension plan (such as the Union Pension Plan) during the period that the employer which sponsors the plan, is a "debtor in a case under title 11, United States Code...", unless one of the exceptions provided by that Code section is satisfied. The exception that is most relevant to the circumstances regarding the Union Pension Plan is specified in subpart (B)(i) of Code section 401(a)(33), which provides that such amendments may be adopted where "the plan, were such amendment to take effect, would have a

funded current liability percentage (as defined in section 412(l)(8)) of 100 percent or more"[4] (the "Funded Exception").

17. The Funded Exception would apply to the Pension Amendments under the Union Pension Plan, if Debtors make the Required Contribution by no later than September 15, 2006. In that case, under Code section 412(c)(10), the Required Contribution would be deemed to have been made on December 31, 2005 (i.e., the last day of the Plan's 2005 plan year) for purposes of calculating the "funded current liability percentage" under the Funded Exception, for the 2005 plan year. The Pension Amendments would be adopted effective on or after January 1, 2006; and, as of such adoption, the Funded Exception would be satisfied.

### The Required Contribution

18. The exact amount of the Required Contribution was calculated by the actuary of the Union Pension Plan, as of December 31, 2005. The Required Contribution will be $904,815 (or $1,228,542 if PFEA is not extended).

19. As stated above, the Required Contribution is a one-time, lump sum contribution, which must be made by no later than September 15, 2006, to satisfy the Debtors' obligations with respect to the Pension Amendments under the 2006 Union Agreement. However, the Debtors will make the Required Contribution as soon as possible after the exact amount has been calculate to demonstrate good faith to the Union, in accordance with the Debtors' objective of continuing acceptable labor relations with the Union.

### Relief Requested

20. By this Motion, the Debtors seek authority to (a) make a one-time, lump sum contribution to the Union Pension Plan in an amount necessary to satisfy the Funded Exception

---

[4] Section 412(l) defines "funded current liability percentage" as "the percentage which – the [value of plan assets] is of the current liability under the plan."

under Code section 401(a)(33) (but in no event more than $1,300,000), as soon as possible after the amount of the Required Contribution has been definitely determined by the Plan's actuary, but no later than September 15, 2006; (b) effectuate the Pension Amendments in accordance with the Debtors' obligations under the 2006 Union Agreement; and (c) take such other actions as may be necessary or appropriate to effectuate the intent of this Motion.

## Basis for Relief

21.     Section 105(a) of the Bankruptcy Code "permits the court to issue any order that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." A court has the statutory authority to authorize a debtor to use property of the estate pursuant to section 363(b)(1) of the Bankruptcy Code when such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *see also Fulton State Bank v. Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by "some articulated business justification"); *Stephen Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D.Del. 1999); *In re Ernst Home Center, Inc.*, 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

22.     Under section 363(b) of the Bankruptcy Code, a debtor has the burden of establishing that it has a valid business purpose for using estate property outside the ordinary course of business. *See Lionel Corp.*, 722 F.2d at 1070-71. Once the debtor articulates such a

valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest belief that the action was in the debtor's best interest. *See In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992). A party in interest seeking to challenge the debtor's valid business purpose must "produce some evidence supporting its objections." *Montgomery Ward*, 242 B.R. at 155.

### The Proposed Transaction Is Supported by Sound Business Judgment

23. The Debtors' respectfully submit that the implementation of the increase in pension benefits, in accordance with the Plan Amendments, as agreed with the Union, will contribute significantly to maintaining (a) acceptable labor relations with the Union at the Debtors' Chicago 51st Street plant, and (b) the morale of both the employees represented by the Union and other employees.

24. The Debtors' management has determined that, in its business judgment, making the Required Contribution in a timely manner and effectuating the related Plan Amendments are in the best interests of the Debtors' estates and creditors. As specified above, clear business reasons exist to justify under section 363(b) of the Bankruptcy Code the Debtors' proposed contribution of the Required Contribution to the Union Pension Plan and the Pension Amendments. The benefits increases under the Pension Amendments were essential in helping to persuade the Union Employees to ratify the 2006 Union Agreement. Without such ratification, there existed a significant possibility of a financially damaging work stoppage at Chicago, 51st Street.

### Notice

25. Notice of this Motion has been given to: (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to all official committees appointed by the United States Trustee

and (v) all those parties that requested service and notice of papers in accordance with Fed R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Request

26.     No prior Application for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order (a) authorizing the Debtors to (i) make a one-time lump sum contribution of up to $1.3 Million to the Union Pension Plan to satisfy the Funded Exception under Code section 401(a)(33), (ii) amend the provisions of the Union Pension Plan in accordance with the Pension Amendments, as negotiated with the Union and specified in the 2006 Union Agreement, and (iii) take such other action as may be necessary or appropriate to effect the intent of this Motion; and (b) granting such other and further relief as the Court deems just and proper.

Wilmington, Delaware
Dated: April 10, 2006

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Salvatore F. Bianca
200 East Randolph Drive
Chicago, ILL 60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

*/s/ James O'Neill*
Laura Davis Jones (Bar No. 2436)
James E. O'Neill, III (Bar No. 4042)
919 North Market Street, 17th Floor
P. O. Box 8705
Wilmington, Delaware 19899-8705
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and Debtors-In-Possession