IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.*, | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

Objection Deadline: **May 31, 2006 at 4:00 p.m. (prevailing Eastern time)**
Hearing Date: **June 19, 2006 at 2:00 p.m. (prevailing Eastern time)**

## FOURTEENTH QUARTERLY INTERIM FEE APPLICATION OF THE BLACKSTONE GROUP L.P., AS FINANCIAL ADVISOR TO W.R. GRACE & CO. AND AFFILIATES FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD OF JULY 1, 2005 THROUGH SEPTEMBER 30, 2005

Pursuant to 11 U.S.C. §§ 330 and 331 of title 11 of the United States Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure, Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Retention Order (as defined herein), and this Court's *Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members* ("Procedures"), The Blackstone Group L.P. ("Blackstone") hereby submits this fourteenth quarterly interim application (the "Fourteenth Quarterly Interim Application") for allowance of (i) compensation for actual and necessary professional services rendered by it as financial advisor to the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for the period of July 1, 2005 through September 30, 2005 (the "Fourteenth Interim Period), and (ii) the reimbursement of expenses recorded in providing said services during the Fourteenth Interim Period.

In support of this Fourteenth Quarterly Interim Application, Blackstone respectfully represents as follows:

## I. <u>Jurisdiction</u>

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## II. <u>Background</u>

2.  Blackstone is financial advisor to the Debtors.

3.  On April 2, 2001 (the "Petition Date"), the Debtors filed a voluntary petition for reorganization under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (as amended, the "Bankruptcy Code"). The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.  On April 2, 2001, the Debtors applied to this Court for an order authorizing them to retain Blackstone pursuant to an engagement agreement dated February 15, 2001 (the "Engagement Agreement") as their financial advisor, effective as of the Petition Date.

5.  On June 22, 2001, this Court entered an order (the "Retention Order") authorizing the Debtors to employ Blackstone as their financial advisor effective as of the Petition Date pursuant to the terms of the Engagement Agreement.

## III. <u>Narrative Description of Blackstone's Activities During the Fourteenth Interim Period</u>

6.  The financial services provided by Blackstone to the Debtors during the Fourteenth Interim Period included:

   a) Advising the Debtors with respect to preparing a Plan of Reorganization, including the following:

      i)    Updating an operating and POR model, incorporating the Debtors' financial results, projections, and claims amounts;

      ii)   Analyzing anticipated tax effects of various Plan alternatives;

      iii)    Asbestos personal injury CMO and questionnaire;

      iv)    Attending meetings and conference calls with the Debtors and legal counsel with respect to a Plan;

      v)    Attend Court hearings via telephone;

      vi)    Analyzing the treatment and amount of claims – including employee claims, environmental claims, tax claims, other administrative and priority claims, general unsecured claims, asbestos claims and equity interests

      vii)    Providing other strategic advice as requested, including participating in weekly strategy meetings and coordinating with management and counsel;

b)    Interfacing with the key creditor constituents (including the Official Committee of Unsecured Creditors, the Bodily Injury Asbestos Committee, the Property Damage Asbestos Committee, the Future Claims Representative and the Equity Committee, as well as their respective legal and financial advisors) related to the following:

      i)    The Plan of Reorganization, as filed with the Court;

      ii)    Due diligence requests by key creditor constituents about claims, financial results and Court motions;

c)    Advising the Debtors with respect to several activities and motions, including the a business acquisition, settlement of claims, the sale of a facility, and tax issues and motions;

d)    Providing strategic and business advice in connection with the bankruptcy.

### IV. Blackstone's Request for Compensation and Reimbursement of Expenses

7.  Pursuant to the Procedures, professionals may request monthly compensation and the reimbursement of expenses incurred. The notice parties listed in the Procedures may object to such a request. If no notice party objects to a professional's request within twenty (20) days after the date of service of the request, the applicable professional may submit to this Court a certification of no objection whereupon the Debtors are authorized to pay 80% of the fees and 100% of the expenses requested.

8. Furthermore, and also pursuant to the Procedures, professionals are to file with this Court and serve upon the notice parties a quarterly request (the "Quarterly Interim Application") for interim approval and allowance of the monthly fee applications filed during the quarter covered by the Quarterly Interim Application. If this Court grants the relief requested in the Quarterly Interim Application, the Debtors are authorized and directed to pay the professional 100% of the fees and expenses requested in the monthly fee applications covered by that Quarterly Interim Application less any amounts previously paid in connection with the monthly fee applications. Any payment made pursuant to the monthly fee applications or the Quarterly Interim Application is subject to final approval of all fees and expenses at a hearing on the professional's final fee application.

**A. Blackstone's Request for Compensation**

9. With this Fourteenth Quarterly Interim Application, Blackstone seeks interim allowance of compensation in the amount of $150,000.00 for the period of July 1, 2005 through September 30, 2005, representing a voluntary reduction in each month based on the current level of activity. Copies of Blackstone's invoices pertaining to the Fourteenth Interim Period are attached hereto as Exhibit A.

**B. Blackstone's Request for Reimbursement of Expenses**

10. During the Fourteenth Interim Period, Blackstone has recorded expenses in the amount of $4,702.70. The details of these expenses are attached hereto as Exhibit A. Railroad charges are incurred solely in connection with traveling to and from a site to attend a meeting with the Debtors' management. Car Services charges are for transportation provided by a car service company in New York as opposed to a yellow cab and are billed directly from the car service company and allocated to a client based on the client code provided at the time of the

transportation. These charges generally are the expense for transportation to and from an airport, railroad station, place of work to home (if home is located outside New York City and after 8 p.m.) and exclusively cover charges for transportation in New York City and its environs.

11. Local Travel is primarily for cash out-of-pocket transportation expenses incurred either (i) in New York traveling to and from meetings related to the client's matter, traveling to/from home/office prior to normal working hours or after 8:00 pm, and the employee has traveled at those times as a result of the time exigencies of that client's matter or (ii) at the site of a meeting. If the employee lives outside Manhattan, it is permissible for that employee to take a car service since taking a taxi is impractical.

12. Meal Expenses include employee meals while traveling on client matters and in accordance with the restrictions set forth below and meals provided during meetings with the Debtors, committees and their advisors. Blackstone's general policy permits its employees to bill lunch or dinner meals to a client if the employee is required to provide services to the client during such meal time due to extreme time constraints. Blackstone employees are permitted to order meals in the office if the employee is required to work on client related matters after 8:00p.m. Blackstone caps its meal expenses at $25 per meal.

13. Document Production expenses include charges from outside service companies that provide, for a fee, high volume photocopying services on an expedited basis to Blackstone; and charges for internal photocopying services provided by Blackstone. Blackstone bills internal Document Production charges at the rate of $.15 per page.

14. Publishing Services expenses include charges for the production of text-based publications such as research reports and presentations, and printing and binding services.

## V. <u>Requested Relief</u>

15. With this Fourteenth Quarterly Interim Application, Blackstone requests that this Court approve the interim allowance of compensation for professional services rendered and the reimbursement of actual and necessary expenses recorded by Blackstone during the Interim Period. At all relevant times, Blackstone has been a disinterested person as that term is defined in § 101(14) of the Bankruptcy Code and has not represented or held an interest adverse to the interest of the Debtors.

16. All services for which Blackstone is requesting compensation were performed for or on behalf of the Debtors and not on behalf of any committee, creditor, or other person.

17. During the Interim Period, Blackstone has received no payment and no promises for payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the Debtors' cases.

**WHEREFORE**, Blackstone respectfully requests that this Court enter an order, substantially in the form attached hereto, providing that, for the period of July 1, 2005 through September 30, 2005:

    a) An allowance be made to Blackstone in the sum of $150,000.00 as compensation for reasonable and necessary professional services rendered to the Debtors and in the sum of $4,702.70 for reimbursement of actual and necessary costs and expenses incurred, for a total of $154,702.70;

    b) The Debtors be authorized and directed to pay to Blackstone's outstanding Monthly Fees and expenses for the Fourteenth Interim Period as follows:

| | |
|---|---:|
| Total Fees | $150,000.00 |
| Total Expenses | 4,702.70 |
| Subtotal | $154,702.70 |
| Less Payments Received | (0.00) |
| **Amount Due Blackstone** | **$154,702.70** |

    c) Grant such other and further relief as this Court deems just and proper.

Dated: May 4, 2006

The Blackstone Group L.P.
Financial Advisor to W.R. Grace &
Co.

By: _____
Pamela D. Zilly
Senior Managing Director
345 Park Avenue
New York, NY 10154
(212) 583-5000
(212) 583-5707 (fax)