IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

Objection Deadline: June 2, 2006 at 4:00 p.m. (prevailing Eastern time)
Hearing Date: June 19, 2006 at 2:00 p.m. (prevailing Eastern time)

### MOTION OF DEBTORS FOR ENTRY OF AN ORDER APPROVING A STIPULATION SETTLING CLAIMS CONCERNING THE WAUCONDA SITE AND AUTHORIZING PAYMENT THEREUNDER

W.R. Grace & Co. et al., debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, "Grace" or the "Debtors"), by and through their undersigned counsel, respectfully move this Court (the "Motion") for the entry of an Order approving the attached Stipulation and authorizing payment thereunder, pursuant to sections 105 and 363 of Title 11 of the United States Code (as amended, the "Bankruptcy Code") and Rules 2002, 6004, and 9019 of the Federal Rules of Bankruptcy Procedure, and in support thereof, state the following:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for this Motion are sections 105 and 363 of the Bankruptcy Code and Fed. R. Bankr. P. 2002, 6004, 9019.

## Background

3. On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). These Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4. Prior to the filing of these Chapter 11 Cases, Grace's former Dearborn manufacturing facility in Lake Zurich, IL disposed of industrial wastes including chromate wastes in a landfill located in Wauconda, IL.

5. Prior to 1941, the landfill was a sand and gravel pit. Thereafter, until 1978, it was operated as a landfill.

6. The United States Environmental Protection Agency ("EPA") listed the Wauconda Sand & Gravel Site on the National Priorities List (NPL) in 1983 (the "Wauconda Site"). Since then the site has undergone substantial investigation and remediation pursuant to various orders issued by EPA to a number of Potentially Responsible Parties ("PRPs").

7. The responding PRPs formed a group to undertake these activities. Grace was an original member of the group and actively participated and funded site actions.

8. A cap and monitoring wells were installed at the Wauconda Site landfill and operation and maintenance of this landfill remedy is on-going.

9. As a consequence of the April 2001 Grace Chapter 11 filings, Grace ceased to fund work at the Wauconda Site. Nine (9) PRPs (the "Claimants") at the Wauconda Site filed timely bankruptcy claims in amounts reflecting the various Wauconda Site operation and maintenance costs.

10. Two additional potentially responsible parties, BFI Waste Systems of North America, Inc. and Illinois Bronze Paint Co. (together the "Additional PRPs"), did not file proofs of claim but also assert that absent the agreement set forth in the Stipulation addressed herein they would be entitled to file proofs of claim in connection with the Wauconda Site. The Claimants and the Additional PRPs are all parties to the Stipulation and are referred to herein together as the "Wauconda Task Group" or "WTG."

11. In the Fall of 2003, the Lake County Health Department ("LCHD") identified vinyl chloride in residential wells east of the Wauconda Site including three that exceeded the Maximum Contaminant Level of 2 parts per billion (ppb).

12. In early 2004, EPA alleged the site was the source of this contamination and requested that the WTG conduct additional investigations and provide bottled water to the occupants of certain affected residences as short term measures. Further, EPA indicated permanent municipal water supplies would be a necessary component of a long term solution. Subsequent investigations by WTG and LCHD demonstrated that vinyl chloride was detected in wells throughout the subdivisions east and south of the Wauconda Site.

13. On 9/27/04, EPA issued a Unilateral Administrative Order (UAO) to a group of respondents relative to field investigation and feasibility studies to characterize and identify the appropriate remedy for groundwater containing vinyl chloride.

14. The United States, on behalf of the EPA, filed a Supplemental Proof of Claim (Number 15506, appended to Claim 9634) against Grace for response costs associated with the Wauconda Site.

15. The EPA and the U.S. Department of Justice ("DOJ") have agreed to enter into a settlement agreement with the Debtor whereby the Supplemental Proof of Claim will be deemed withdrawn with prejudice and Debtors' liability thereunder shall be resolved, with no additional payment by Debtors, subject to public comment, Court approval, and payment of the settlement amount by Grace to the WTG as outlined in this Motion and the Stipulation.

16. The DOJ is filing a separate Notice of Lodging of this settlement agreement with this Bankruptcy Court and seeking this Court's approval of it.

17. The costs to comply with the UAO alone were estimated by the WTG at $2.7 million, including one year of EPA oversight and PRP administrative costs, but no actual remedial activities. This amount did not include cost estimates for installation of a public water supply for area residents.

18. In negotiations with EPA to refine the scope of the ordered work, the Claimants and EPA agreed to the immediate installation of a public water supply system at a cost estimated in the range of $5.4 million to $6.2 million in lieu of other activities described in the UAO. The plan and schedule were contingent on, among other matters, a low interest loan by Illinois EPA to the Village of Wauconda, an intergovernmental agreement being finalized by Lake County and the Village of Wauconda, and ordinances requiring well sealing and residential hookups.

19. Construction of the water supply system was initiated in November 2005 with an expected completion date of August 2006.

20. In October 2005, WTG commenced negotiations with Grace to determine whether a mutually agreeable settlement could be reached to resolve all Grace's liabilities at the Wauconda Site without protracted litigation.

### Settlement

21. Grace, the Claimants, and the Additional PRPs, have executed a Stipulation attached hereto as Exhibit 1, under which, subject to approval by this Court, (a) Grace will pay $1,250,000 to resolve all of the Claimants' proofs of claim with respect to environmental conditions at the Wauconda Site, and (b) the Claimants and the Additional PRPs will be precluded from seeking other relief against Grace in connection with the Wauconda Site. Under the Stipulation, the Claimants shall not be entitled to pre-petition or post-petition interest in any amount.

### Relief Requested

22. By this Motion, the Debtors respectfully seek the entry of an order (i) approving the Debtors' execution of the Stipulation; (ii) granting the Debtors authority to pay immediately $1,250,000 to the Wauconda Task Group as set forth in the Stipulation.

### Statutory Authority

23. This Court has statutory authority to authorize and approve the Stipulation and the payment contemplated therein. 11 U.S.C. §§ 105 and 363 (b)(1). A settlement of claims and causes of action by a debtor in possession constitutes a use of the property of the estate. See Northview Motors, Inc. v. Chrysler Motors Corp., 186 F.3d 346, 350 (3d Cir. 1999). If a

settlement is outside the ordinary course of business of the debtor, it requires the approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. Id.

24. Bankruptcy Rule 9019 provides that, after notice and a hearing, the court may approve a proposed compromise or settlement. Settlements and compromises are "a normal part of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939)). Indeed, compromises are favored in bankruptcy. In re Martin, 91 F.3d 389, 393 (3d Cir. 1996). The decision whether to accept or reject a compromise lies within the sound discretion of the court. In re Resorts Int'l, Inc., 145 B.R. 412, 451 (Bankr. D. N.J. 1990): In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (Bankr. E.D. Pa. 1986).

25. In reviewing a motion for approval of a settlement, bankruptcy courts must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." In re Martin, 91 F.3d at 393. This requires court consideration of the following criteria: "(1) the probability of success in litigation, (2) the likely difficulties in collection, (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it, and (4) the paramount interest of the creditors." Id.

26. In determining whether to approve a proposed settlement, a bankruptcy court need not decide the numerous issues of law and fact raised by the settlement, but rather should "canvass the issues to see whether the settlement fall[s] below the lowest point in the range of reasonableness." In re Neshaminy Office Bldg. Assocs., 62 B.R. at 803.

27. The standards set forth above have been met in this case. Approval of the Stipulation is in the best interests of the Debtors and their estates and serves a public interest.

The Debtors will avoid protracted and expensive litigation, will cost-effectively resolve a considerable environmental liability, and will be protected against any future claims by the Wauconda Task Group members with respect to the Wauconda Site.

28. The Wauconda Site is a high profile environmental site in the community and has been the subject of recent press attention, particularly with respect to its alleged contamination of groundwater. The EPA is vigorously pursuing the WTG, and any litigation with either the WTG or the EPA is sure to be lengthy, complex, and costly. Furthermore, should the Debtors not resolve these claims at this time, they would bear the risks inherent in environmental remediation, namely: cost overruns associated with unknowns, changes in regulations, and significant transaction costs.

29. The settlement will preclude any future claim concerning the Debtors' responsibility regarding the WTG's claims with respect to the Site and will constitute a final resolution of the Debtors' liability relating thereto.

30. The settlement described herein was the product of a rigorous negotiation process, represents a substantial discount off of Grace's liability, precludes the incurrence of significant transaction costs, and cost-effectively resolves a significant environmental liability of the Debtor for a sum certain. The PRP group is prepared to settle for this favorable figure now because of the WTG's immediate need for cash to fund the remedial costs. This opportunity is short-lived and not open-ended. Thus, the proposed settlement is fair, reasonable, and in the best interest of the Debtors' estates.

31. With regard to consummating the Stipulation, to the extent the Debtors require authority under section 363 of the Bankruptcy Code, the Debtors, by this Motion, request such authority.

### Conclusion

32. The proposed Stipulation is fair and equitable and is in the paramount interests of the Debtors, their estates, and their creditors. In addition, the Debtors reasonably believe that the relief requested in this Motion will aid in the expeditious resolution of these Chapter 11 Cases. Accordingly, the Debtors have demonstrated a sound business justification and public interest for the execution and consummation of the Stipulation, and therefore the Court should authorize Debtors to enter into the Stipulation.

### Notice

33. Notice of this Motion has been given to: (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to JP Morgan Chase Bank as agent for the Debtors' prepetition lenders, (iv) counsel to each of the official committees appointed in these Chapter 11 Cases, and (v) all those parties that requested service and notice of papers in accordance with Fed.R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

### No Prior Request

34. No prior motion or application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an Order (i) approving the Debtors execution of the Stipulation attached as Exhibit 1 hereto, (ii) authorizing the Debtors to consummate the transactions contemplated thereby, and (iii) granting such other relief as may be just or proper.

Dated: May 15, 2006

KIRKLAND & ELLIS LLP
David M. Bernick
Janet S. Baer
Salvatore Bianca
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

-and-

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

_/s/ James E. O'Neill_
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession