IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Objection Deadline: June 2, 2006 at 4:00 p.m.** |
| | ) | **Hearing Date: June 19, 2006 at 2:00 p.m.** |

## MOTION OF DEBTORS FOR AN ORDER APPROVING THE SETTLEMENT AGREEMENT AND MUTUAL RELEASE WITH LLOYD'S UNDERWRITERS

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

hereby submit this motion (the "Motion") for entry of an order approving the Settlement

Agreement and Mutual Release (the "Settlement Agreement") by and between the Debtors and

certain underwriters at Lloyd's London (the "Lloyd's Underwriters") as defined in the Settlement

Agreement, a copy of which is attached as Exhibit A. In support of the Motion, the Debtors

respectfully represent as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this Motion is proper under 28 U.S.C. § 1408.

2.      The statutory predicates for this Motion are sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background.

3.      On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4.      The Lloyd's Underwriters subscribed to certain policies of insurance that provide, or are alleged to provide, insurance coverage to W.R. Grace & Co. and W.R. Grace & Co. - Conn. (collectively, "Grace"). Grace has incurred and may incur in the future certain liabilities, expenses, and losses arising out of asbestos-related claims and other claims.

5.      Prior to the Petition Date, Grace and the Lloyd's Underwriters entered into a settlement agreement dated November 17, 1995 ("1995 London Agreement") which governed the method by which the Lloyd's Underwriters and other insurance companies that participated in the policies issued (such other companies are commonly referred to in the insurance industry as "London Market Companies") would reimburse Grace for asbestos-related claims under certain policies of insurance issued to Grace by Lloyds Underwriters and London Market Companies.

2

6.     The 1995 London Agreement resolved disputes concerning policies that were issued to Grace by the Lloyd's Underwriters and London Market Companies prior to June 30, 1985. The Lloyd's Underwriters are obligated under the 1995 London Agreement to make liability payments and pay defense costs in connection with asbestos-related and other claims according to the terms of the 1995 London Agreement

7.     The Debtors have negotiated the Settlement Agreement with the Lloyd's Underwriters, pursuant to which the Lloyd's Underwriters will make an immediate cash payment of $90 million into a settlement account in full and complete satisfaction of the Lloyd's Underwriters' obligations under the 1995 London Agreement and the obligations that the Lloyd's Underwriters may have to the Debtors under policies issued to Grace after June 30, 1985[2] (all of the aforementioned policies shall hereinafter referred to as the "Subject Policies").

8.     The funds in the settlement account will be paid to the Debtors (or as otherwise provided pursuant to the Chapter 11 plan of reorganization) upon the effective date of a plan of reorganization which (a) is confirmed by a final order, (b) is not inconsistent with the terms of the Settlement Agreement, (c) does not materially or adversely affect the interests of Lloyd's Underwriters, Equitas[3] or Grace under the Settlement Agreement; and (d) provides for the following:

> (i)     a channeling injunction pursuant to Section 524(g) of the Bankruptcy Code that applies to Lloyd's Underwriters and Equitas;

---

[2]    The London Market Companies and any other insurance company that may have participated on any policy that is the subject of the Settlement Agreement are not parties to the Settlement Agreement and any rights that the Debtors have against the London Market Companies or any other insurance company under the Subject Polices as that term is defined in the Settlement Agreement, the 1995 London Agreement or otherwise are not being released, compromised or affected by the Settlement Agreement in any way.

[3]    Equitas is the company that assumed responsibility for the payment and administration of all claims under the Subject Polices that were issued by Lloyds Undewriters.

3

(ii)    an injunction pursuant to Section 105(a) of the Bankruptcy Code that is at least as broad and inclusive as the Released Matters Injunction provided in the Amended Joint Plan of Reorganization filed by the Debtors on or about January 13, 2005, and that applies to Lloyd's Underwriters and Equitas;

(iii)    an injunction that is at least as broad and inclusive as the Asbestos Insurance Entity Injunction provided in the Amended Joint Plan of Reorganization filed by the Debtors on or about January 13, 2005, and that applies to Lloyd's Underwriters and Equitas;

(iv)    absent a waiver from Lloyd's Underwriters, an indemnification of Lloyd's Underwriters and Equitas by the Reorganized Debtors; and

(v)    the Reorganized Debtors and the Section 524(g) trust shall be bound by the Settlement Agreement with the same force and effect as if they were parties to the Settlement Agreement from its date of execution.

9.    The funds in the settlement account will earn interest, which will inure to the benefit of the Debtors' estates when the funds are paid out.

10.    The Settlement Agreement represents a full and final settlement that: (a) releases and terminates all rights, obligations and liabilities (if any) that Grace and Lloyd's underwriters (collectively, the "Parties") may owe one another with respect to the Subject Policies (as defined in the Settlement Agreement) and the 1995 London Agreement; and (b) fully and finally settles all claims that the Parties asserted or could have asserted against one another pursuant to the Subject Policies and the 1995 London Agreement.

**Relief Requested**

11.    The Debtors seek an order approving the Settlement Agreement, which has been executed by the parties, and, by its terms, will become effective upon the approval of this Court.

**Basis for Relief**

12.    This Court has statutory authority to authorize and approve the Debtors' entry into the Settlement Agreement pursuant to sections 105 and 363(b)(l) of the Bankruptcy Code. A settlement of claims and causes of action by a debtor in possession constitutes a use of property

4

of the estate. *See Northview Motors. Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350-51 (3d Cir. 1999). If a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. *See id.*

13. Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed.R.Bankr.P. 9019(a). Before approving a settlement under Bankruptcy Rule 9019, a court must determine that the proposed settlement is in the best interests of the debtor's estate. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996); *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) ("The ultimate inquiry is whether 'the compromise is fair, reasonable, and in the interest of the estate.'"). To reach this determination, courts assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. *See Martin*, 91 F.3d at 393.

14. The standard by which courts evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.*; *see also Depositor v. Mary M. Holloway Found.*, 36 F.3d 582, 587 (7th Cir. 1994) (affirming an order approving a compromise and settlement of claims against the estate where it was "unlikely" that the debtor would succeed on the claim, litigation of the claims would involve considerable expense, and the claimant would withdraw all claims upon approval of the settlement). Settlements should only be rejected if they fall "below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W. T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983)

5

(citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The standards set forth above are plainly met in this case.

15.    The Settlement Agreement is in the best interests of the Debtors, their estates, and their creditors because it resolves all possible future disputes between the Parties regarding their respective rights and obligations under the Subject Policies and the 1995 London Agreement. If the Settlement Agreement is not approved, then the Debtors would need to pursue their claims against the Lloyd's Underwriters under the terms of the 1995 Settlement Agreement . This process would subject the Debtors to risk concerning the ultimate amount of recovery, and the Debtors believe their recovery is unlikely to be materially greater than the $90 million they will receive pursuant to the Settlement Agreement.

16.    The $90 million is already discounted to present value. Accordingly, the Debtors' estates will benefit from the interest accrued on the immediate payment of the $90 million and the certainty associated with receiving payment now rather than in the future. Indeed, the uncertainty of payment in the future is exacerbated by the fact that other insurance carriers have become insolvent. Moreover, the certainty of receiving the $90 million will aid in developing a plan of reorganization.

17.    Finally, the Debtors have calculated the potential insurance coverage under various liability scenarios and concluded that the Settlement Agreement is reasonable even in scenarios in which liabilities are far in excess of what the Debtors believe them to be.

18.    For all of the foregoing reasons, the Debtors submit that the Settlement Agreement is fair and reasonable and in the best interest of the Debtors, their creditors and their estates, and thus the Debtors should be authorized to enter into the Settlement.

DOCS_DE:118202.1

## Notice

19.    Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to each official committee appointed by the United States Trustee, and (iv) those parties that requested papers under Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order approving the Settlement Agreement, and granting such other and further relief as the Court deems just and proper.

Dated:  May 15, 2006

KIRKLAND & ELLIS LLP
David M. Bernick
Janet S. Baer
Salvatore Bianca
200 East Randolph Drive
Chicago, Illinois 60601
Telephone:  (312) 861-2000
Facsimile:  (312) 861-2200

-and-

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors In Possession

7