**Exhibit A**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.*,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**Re: Docket No. 11850 and
5/15/06 Agenda Item 15**

## ORDER AUTHORIZING DISCOVERY FROM DR. ALAN C. WHITEHOUSE AND CERTIFYING ISSUES OF PATIENT PRIVACY FOR JUDGE DONALD W. MOLLOY

Upon consideration of the motion filed by the above captioned Debtors (collectively "Grace" or "Debtors") for authorization to seek discovery from Dr. Alan C. Whitehouse ("Dr. Whitehouse") and for a protective order relating to production of documents from Dr. Whitehouse (the "Motion"),[2] the Court issues this order in consideration of the following:

---

[1]    The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2]    Capitalized terms used but not defined herein are as defined in the Motion.

WHEREAS Grace is a defendant in a criminal proceeding styled *United States v. W.R. Grace & Co.*, CR-07-07-M-DWM (D. Mont.) (the "Montana Criminal Case") and has initiated in this bankruptcy case a proceeding to estimate the amount of asbestos personal injury claims against Grace (the "Estimation Proceeding");

WHEREAS, Judge Molloy in orders dated April 6, 2006 and April 25, 2006, directed that the Government produce the medical records for the approximately 550 patients in Dr. Whitehouse's database (the "550 Whitehouse Database Patients") in the possession of Dr. Whitehouse and in the possession of the Center for Asbestos Related Disease ("CARD"). The Court further ordered that the medical records for the 550 Whitehouse Database Patients were to "be redacted to exclude sensitive identifying information such as names, addresses, contact information, insurance information and Social Security numbers";

WHEREAS Grace's use of the medical records produced by the Government in the Montana Criminal Case is restricted to the Montana Criminal Case as articulated in the protective order issued by Judge Molloy in the Montana Criminal Case. *United States v. W.R. Grace & Co.*, CR-07-07-M-DWM (D. Mont. Nov. 23, 2005);

WHEREAS counsel for the approximately 700 Libby Claimants has indicated that they intend to assert claims based on asbestos disease in these bankruptcy cases;

WHEREAS counsel for the Libby Claimants has indicated that many of the Libby Claimants are among the 550 Whitehouse Database Patients;

WHEREAS Libby Claimants allege that they have asbestos-related disease that is distinct from pleural disease caused by chrysotile asbestos. The Libby Claimants allege that there generally appears to be a distinct pattern for Libby tremolite asbestos disease and that the pleural

2

disease pattern manifested by Libby tremolite asbestos disease often results in severe impairment or death without radiographic interstitial disease;

WHEREAS the Libby Claimants allege (1) that persons diagnosed with Libby tremolite asbestos disease are entitled to distinct treatment compared to other non-malignant asbestos disease claimants in the bankruptcy case and (2) that Grace's proposed process for asbestos liability estimation in the Estimation Proceeding will impose on the Libby Claimants a series of medically unsubstantiated, burdensome and expensive requirements that are medically and legally irrelevant to the merits of their Claims;

WHEREAS the Libby Claimants allege that the claims for individuals with Libby tremolite asbestos disease should be estimated at a higher value than other non-malignant asbestos disease claimants. According to the allegations of the Libby Claimants, the highly progressive and deadly nature of pleural disease in Libby has resulted in historical verdicts and settlements far greater than for pleural disease in other asbestos cases;

WHEREAS the Libby Claimants allege, upon information and belief, that approximately 800 individuals who are not represented by counsel in this proceeding have been diagnosed with Libby tremolite asbestos disease at CARD (the "800 Additional Patients");

WHEREAS Grace and certain other Parties[3] maintain that the medical records of the 700 Libby Claimants and the medical records for the 550 Whitehouse Database Patients are relevant to the estimation of the Libby Claimants' claims in the Estimation Proceeding, and that the medical records of the 800 Additional Patients are relevant based upon the claims and allegations made by the Libby Claimants;

---

[3]    For Purposes of this Order, the term "Parties" shall have the same meaning given to such term in the Protective Order that is attached hereto as Exhibit A.

WHEREAS the Debtors filed a Motion on February 17, 2006, to seek factual discovery of Dr. Whitehouse, including authorization to seek access for use in this bankruptcy case various medical records in the possession of Dr. Whitehouse produced in the Montana Criminal Case, and discovery of other relevant records that are not being produced in the Montana Criminal Case (including unredacted records for the 550 Whitehouse Database Patients which Judge Molloy subsequently ruled shall not be produced in the Montana Criminal Case);

WHEREAS on March 10, 2006, the Government filed in this bankruptcy case an objection to the Motion;

WHEREAS on March 15, 2006, the Libby Claimants in the bankruptcy case filed an objection to the Motion;

WHEREAS on March 15, 2006, the Official Committee of Asbestos Personal Injury Claimants (the "PI Committee") filed a limited objection to the Motion;

WHEREAS on March 17, 2006, Grace filed replies to both the Libby Claimants' and the Government's objections;

WHEREAS on April 10, 2006, the Libby Claimants filed a supplemental objection to the Motion attaching a copy of Judge Molloy's April 6, 2006 order denying Grace's motion in the Montana Criminal Case for unredacted copies of the medical records of the 550 Whitehouse Database Patients (thus limiting the production in the Montana Criminal Case, at this time, to redacted copies of the medical records of the 550 Whitehouse Database Patients except for those listed as trial witnesses);

WHEREAS on April 13, 2006, and subsequently by telephone conferences on April 17, 2006, counsel for Grace, the Libby Claimants, the Government, as well as the Futures Representative and certain official committees in this bankruptcy case met with Judge Roger

4

Whelan, the discovery mediator in this bankruptcy case, and reached an agreement in principle with respect to the Motion, and the Parties had further negotiations on the agreement on April 21, 2006;

WHEREAS the Government has represented that it (a) objects to production of unredacted records of the 550 Whitehouse Database Patients as to whom Judge Molloy has ordered that only redacted records be produced, (b) does not object to the production of additional medical records in the bankruptcy case and is taking no position with respect to what discovery is relevant or permissible in the civil bankruptcy case, and (c) is concerned and reserves its rights about whether any documents produced in the bankruptcy case may be used in the Montana Criminal Case;

WHEREAS counsel agree that this order, in conjunction with the Protective Order Relating to Discovery of Medical Records to be entered herewith (the "Protective Order" attached to this Order as Exhibit A), accurately reflects the terms of the agreement reached during the mediation;

**IT IS ORDERED** as follows:

1.     **ORDERED** that this Court acknowledges that the medical records in Dr. Whitehouse's possession concerning the Libby Claimants and concerning the 550 Whitehouse Database Patients are relevant to the Libby Claimants' assertions, Grace's defense, and certain other Parties' assertions in the Estimation Proceeding;

2.     **ORDERED** that (a) the medical records for the 700 Libby Claimants who are not included in the 550 Whitehouse Database Patients shall be produced in unredacted form, and (b) there is certified to Judge Molloy the question whether the medical records for the 550 Whitehouse Database Patients produced in the Montana Criminal Case can be used by Grace in

5

the Estimation Proceeding, and may be produced by Grace to, and used by, other Parties in the Estimation Proceeding. If Judge Molloy rules in the negative in whole or in part, the Parties shall cooperate in making other arrangements for Grace and other Parties to obtain discovery in respect of the 550 Whitehouse Database Patients. If the Parties cannot reach agreement as to how such discovery will be provided, all Parties reserve the right, with reasonable notice to all Parties, including the Government, to seek appropriate relief from this Court. The Libby Claimants and other Parties agree to support Grace's request to Judge Molloy for production to other Parties and use of the medical records for the 550 Whitehouse Database Patients by all Parties in the Estimation Proceeding, provided that the Protective Order (attached as Exhibit A) also is entered by this Court. The Government agrees not to oppose Grace's request to produce to other Parties and for all Parties to use the medical records of the 550 Whitehouse Database Patients in the Estimation Proceeding provided that the Protective Order attached as Exhibit A is adopted as part of this Order. Within 30 days after receiving the redacted medical records of the 550 Whitehouse Database Patients, counsel for the Libby Claimants shall identify which of these patients are Libby Claimants and which filed a lawsuit against W.R. Grace prior to April 1, 2001, subject to paragraph 6 of the Protective Order attached as Exhibit A. Subject to paragraph 6 of the Protective Order (Exhibit A), all Parties reserve the right to petition this Court, with notice to the Government, for identification of Libby Claimants who are part of the 550 Whitehouse Database Patients, if the identity of the Libby Claimants who are part of the 550 Whitehouse Database Patients becomes relevant to any expert opinion relating to the Libby Claimants' contentions;

3.      **ORDERED** that except as provided in this Order, there shall be no other fact discovery of Dr. Whitehouse in connection with the Estimation Proceeding, except that the

6

following rights are reserved: (a) all Parties' rights concerning any potential deposition of Dr. Whitehouse, provided that any request to depose Dr. Whitehouse shall be made on reasonable advance notice to the Government and all Parties, (b) all Parties' rights pursuant to Rule 26 of the Federal Rules of Civil Procedure to seek discovery of Dr. Whitehouse in his capacity as an expert witness for the Libby Claimants in the bankruptcy case, other than discovery of medical records with respect to: (i) the 550 Whitehouse Database Patients and (ii) the Libby Claimants, as to which all Parties shall be bound by this Order, and (c) all Parties' right to raise before Judge Molloy issues related to whether the medical records of the 550 Whitehouse Database Patients are properly redacted to exclude all Patient Identifying Information but not to exclude medically relevant information, provided that reasonable advance notice is provided to the Government and all Parties. All Parties reserve all rights and protections afforded by applicable state and federal law concerning all other discovery, including, but not limited to, discovery of the 800 Additional Patients. As to the 800 Additional Patients' medical records in the possession of CARD, all Parties agree to seek mediation by Judge Roger M. Whelan prior to serving discovery relating to such records.

4.    **ORDERED** that the Parties shall cooperate concerning the timing and logistics of producing the medical records as required herein, provided that all reasonable costs of reproducing medical records shall be paid by Grace; in addition, the reasonable costs of the CARD Clinic's staff to assemble the records, and to reassemble its files after copying, shall be paid by Grace in advance. Grace is hereby authorized and directed to pay such costs, *provided, however,* that all Parties reserve the right to raise before the Discovery Mediator in the first instance, and thereafter (if necessary) this Court, any issues related to the reasonableness of the proposed costs before they are incurred. All records of the Libby Claimants not among the 550

7

Whitehouse Database Patients shall be produced on a rolling basis with the production completed by July 14, 2006 (assuming no significant delays by reason of disputes concerning timing, logistics or costs);

5.      **ORDERED** that the medical records produced pursuant to this Order (a) will be subject to the Protective Order (Exhibit A), which is consistent with the November 23, 2005 order issued by Judge Molloy, and the January 18, 2006 order issued by Judge Molloy, (b) for the 550 records, as to Grace, will be subject to any subsequent orders issued by Judge Molloy governing the use of the medical records in the Montana Criminal Case, and (c) in the bankruptcy case will be limited to the Estimation Proceeding except by further order of this Court, as to which all Parties' rights are expressly reserved;

6.      **ORDERED** that this Court hereby certifies for Judge Molloy the question of whether there will be any restriction placed upon Grace's use of the medical records of the Libby Claimants in the Montana Criminal Case and any questions, other than those expressly addressed in the Protective Order, related to privacy of individuals in the criminal case.

7.      **ORDERED** that this order shall in no way be construed to (a) impose any obligation on the Government in this bankruptcy case, or (b) broaden the scope of the discovery obligations of the Government in the Montana Criminal Case;

8.      **ORDERED** that this Order, and the terms and provisions contained herein, shall not be effective unless the Protective Order Relating to Production of Medical Records, a copy of

8

which is annexed hereto as Exhibit A, is, in both form and substance, entered simultaneously with the entry of this Order.

**IT IS SO ORDERED.**

_____
JUDITH K. FITZGERALD
United States Bankruptcy Judge

Wilmington, Delaware
May _____, 2006

9

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.*, | ) | Case No. 01-1139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**Re: Docket No. 11850 and
5/15/06 Agenda Item 15**

### PROTECTIVE ORDER RELATING TO
### PRODUCTION OF MEDICAL RECORDS

Upon consideration of the *W.R. Grace & Co.'s Motion for Authorization to Seek
Discovery from Dr. Alan C. Whitehouse and for a Protective Order Relating to Production of
Documents from Dr. Alan C. Whitehouse* (the "Motion"),

IT IS HEREBY:

1      **ORDERED** that the right to access the documents and records that are being

produced or disclosed pursuant to the terms of the Court's May __, 2006 Order authorizing

discovery of Dr. Alan C. Whitehouse (hereinafter referred to, collectively, as "Records") is

limited to: (a) attorneys representing the Debtors, the Official Committee of Unsecured

Creditors, the Official Committee of Equity Holders, the Official Committee of Asbestos

Personal Injury Claimants, the Official Committee of Property Damage Claimants, the Future

Claimants' Representative, and the Libby Claimants (the "Parties") in this action; (b) medical

and scientific experts, whose review of the Records is necessary for the presentation of the

Parties' cases, or who will provide expert testimony on behalf of any of the Parties; (c) such law

clerks, investigative agents, paralegals, and secretaries employed by the Parties' attorneys and

agents, whose review of that material is required for the preparation and presentation of the

Parties' cases; (d) the Debtors; (e) the Future Claimants' Representative, and (f) the members of

the Official Committee of Unsecured Creditors, the Official Committee of Equity Holders, the

Official Committee of Asbestos Personal Injury Claimants, the Official Committee of Property

Damage Claimants (the "Committees"), the attorneys representing one or more members of the

Committees in connection with this case, and each such attorneys' law clerks, paralegals, and

secretaries whose review of the Records is required for the preparation and presentation of the

Parties' cases (individuals identified in subsections (a) through (f) of this paragraph shall herein

be collectively referred to as "Authorized Individuals");

       2      **ORDERED** that this Order is intended to protect the confidentiality of the

documents produced by Dr. Whitehouse in a manner consistent in principle with the protections

detailed in U.S. District Judge Donald Molloy's November 23, 2005 Order in *U.S. v. W.R.*

*Grace*, CR-05-07-M-DWM (the "Montana Criminal Case") as well as Judge Molloy's January

18, 2006 Order; attached as Exhibits A and B to this Order;

       3      **ORDERED** that the records shall be maintained by Authorized Individuals in

accordance herewith and shall be used by Authorized Individuals solely and exclusively in

connection with the proceeding to estimate asbestos personal injury claims in this case, including

trial preparation, trial, and appeals (the "Estimation Proceeding") and for no other purpose.  The

contents of the Records shall be kept confidential, and shall not be disclosed publicly or to any

person who does not have a right of access to the Records pursuant to paragraph 1 of this Order;

for avoidance of doubt, it shall not be a violation of this Order for Authorized Individuals to

discuss the Records (including any opinion in connection therewith) with any other person who

has right of access.  Counsel for the Parties shall expressly advise every Authorized Individual as

to this limitation on lawful use.

4    **ORDERED** that the Records shall be maintained by Authorized Individuals in a locked file or cabinet at all times except when being actively utilized, and a copy of this Order shall be kept with the records at all times.

5    **ORDERED** that within sixty (60) days after an order that has the effect of concluding the Estimation Proceeding becomes final and non-appealable, each Authorized Individual with a copy of the Records shall dispose of his or her copy of the Records, by causing all Records to be destroyed, and certifying to the Bankruptcy Court that such destruction has been accomplished, except that the Libby Claimants shall retain one (1) copy of the Records and Grace shall certify and return one (1) copy of the Records to counsel for the Libby Claimants, who will retain such Records until further order of this Court.

6    **ORDERED** that if any Party in the presentation of its case in the Estimation Proceeding requires introduction into evidence of any of the Records, the Party may introduce such Record only in a form that has been redacted to remove the patient's name, address, contact information, insurance information, and Social Security number ("Patient Identifying Information"); instead, the Party redacting such Record shall assign the patient a number which shall be used to identify such patient in the Estimation Proceeding (an "Identifying Number"). Testimony concerning any patient who is the subject of the Records shall not include any Patient Identifying Information for such patient but shall instead refer to such patient only by an Identifying Number.

7    **ORDERED** that each of the Parties, lead counsel to each of the Parties, and each of the Experts shall have a single set of the Records, except as otherwise permitted by Judge Molloy. Bates numbering or some other unique numbering system shall be used to identify and account for each set of the Records. Lead counsel to each of the Parties shall maintain a

complete log of the document sets received on behalf of its constituency, and to whom (Parties

or experts) those sets are given.  The Parties have agreed to coordinate access to x-rays, CT

scans, and HRCT scans.


DATED this ___ day of May, 2006.


The Honorable Judith K. Fitzgerald
United States Bankruptcy Judge

# EXHIBIT A

FILED
MISSOULA, MT

2006 JAN 18  AM 9 59

PATRICK E. DUFFY

BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 05-07-M-DWM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| W. R. GRACE, ALAN R. STRINGER, | ) | |
| HENRY A. ESCHENBACH, JACK W. | ) | |
| WOLTER, WILLIAM J. McCAIG, | ) | |
| ROBERT J. BETTACCHI, O. MARIO | ) | |
| FAVORITO, ROBERT C. WALSH, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Before the Court is the Defendants' motion for permission to
photocopy medical records for use by retained experts.  Under the
current terms of the protective order covering medical records in
this case, the Defendants are prohibited from photocopying the
medical records of the government's testifying witnesses.  See
Order dated November 23, 2005 (dkt #236) at p. 19.  The
Defendants ask that they be allowed to photocopy the records to
facilitate simultaneous review of the records by several experts.
The Defendants have assured the Court that the experts to whom
the photocopied records will be given are all medical doctors.

1

The United States does not oppose the motion.

The Defendants have articulated a legitimate basis for seeking permission to photocopy the medical records. The records may be photocopied, subject to such terms (listed below) as are necessary to secure the privacy of the testifying witnesses.

Accordingly, IT IS HEREBY ORDERED that the Defendants' motion to allow photocopying (dkt #273) is GRANTED, and the protective order relating to medical records, established by Order dated November 23, 2005, is amended as follows:

(1)    The Defendants may create photocopies of the medical records for the government's testifying witnesses. The Defendants may make only as many copies as are necessary to provide one complete copy of the records to each expert witness already retained.

(2)    The photocopied medical records may not be used for any purpose other than review by retained experts.

(3)    The Defendants shall maintain a complete log of the number of photocopies made and to whom those copies are given. The Defendants shall use Bates numbering or some other unique numbering system to allow them to identify and account for each copied set of records.

(4)    Paragraphs (1) through (8) and Paragraph (10) of the Court's November 23, 2005 Order (dkt #236, pp. 18-21) remain in effect with respect to the medical records and all photocopies.

2

This includes the prohibition against copying records except as
authorized by Paragraphs (1) through (3) above.

DATED this 18th day of January, 2006.

_____
Donald W. Molloy, Chief Judge
United States District Court

3

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 05-07-M-DWM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| W. R. GRACE, ALAN R. STRINGER, | ) | |
| HENRY A. ESCHENBACH, JACK W. | ) | |
| WOLTER, WILLIAM J. McCAIG, | ) | |
| ROBERT J. BETTACCHI, O. MARIO | ) | |
| FAVORITO, ROBERT C. WALSH, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.  Introduction

Defendants W.R. Grace and Co., a Connecticut corporation

("Grace"), and current and former Grace employees Alan R.

Stringer, Henry A. Eschenbach, Jack W. Wolter, William J. McCaig,

Robert J. Bettacchi, O. Mario Favorito and Robert C. Walsh, are

charged by a ten-count Indictment with crimes arising from

Grace's operation of a vermiculite mine near Libby, Montana (the

"Libby Mine").  The Defendants are charged with conspiracy to

violate the Clean Air Act and to defraud the United States in

violation of 18 U.S.C. § 371 (Count I); violation of the Clean

1

Air Act, 42 U.S.C. § 7413(c)(5)(A) (Counts II, III and IV); wire
fraud in violation of 18 U.S.C. §§ 1343, 2 (Counts V and VI); and
Obstruction of Justice in violation of 18 U.S.C. §§ 1505, 2
(Counts VII, VIII, IX and X). The charges relate to the
Defendants' alleged role in the release and distribution
throughout the Libby area of asbestos contaminated vermiculite.

Before the Court is defendant Grace's motion, filed on
behalf of all defendants, to compel production of medical records
in the government's possession pursuant to Rule 16(a)(1)(E) and
(F), Fed. R. Crim. P. The Defendants ask the Court to order
production of nearly 1,200 unredacted sets of medical records
which Defendants allege are the basis for the claim in the
Indictment that "approximately 1,200 residents of the Libby,
Montana area have been identified as having asbestos related
pleural abnormalities as a result of being exposed to tremolite
asbestos produced by W.R. GRACE at the Libby Mine." Indictment,
¶ 57. The government contends that it is obligated to provide
only those medical records pertaining to witnesses the
prosecution intends to call at trial. The government further
insists that it be permitted to redact the records to remove
identifying information as well as any medical information that
is unrelated to the victims' asbestos-related medical problems.
The government has filed a motion for a protective order, arguing
that the victim witnesses' privacy rights require redaction of

2

the records prior to disclosure.[1]

## II.   Factual Background

Following the Environmental Protection Agency's (EPA)
identification of a potential hazardous waste emergency in Libby,
Montana in 1999, the Agency for Toxic Substances and Disease
Registry (ATSDR), an agency of the Department of Health and Human
Services (DHHS), began an investigation into potential adverse
health effects from exposure to asbestos contaminated
vermiculite.  The investigation included a medical testing study
in which 6,668 participants who had lived, worked or played in
Libby for a period of at least six months prior to December 31,
1990 received chest x-rays.  The study revealed pleural
abnormalities in 17.8 percent of those tested, or 1,186
participants.  The United States relied on these findings in
alleging the following at Paragraph 57 of the Indictment: "To
date, approximately 1,200 residents of the Libby, Montana area
have been identified as having asbestos related pleural
abnormalities as a result of being exposed to tremolite asbestos
produced by W.R. GRACE at the Libby Mine.  Of this group, 70
percent are not former employees at the Libby Mine."

According to the government, the medical records of the

---

[1]The Defendants' response brief in opposition to the government's
motion (dkt #186) fails to comply with Local Rule 10.1(b) in that it
is uses less than a 12 point font.  Defendants have used impermissibly
small fonts in other briefs as well.  The parties are reminded to
adhere to the Local Rules lest they be subject to sanctions.

participants in the Libby study are not and never have been in

the prosecution's possession, but are instead maintained by DHHS.

The government has declared that it does not intend to use the

1,186 medical records at trial, but will present the medical

records of the prosecution's testifying victim witnesses, at this

point numbering sixteen.  The Scheduling Order required that

government to produce all materials discoverable under Rule 16,

Fed. R. Crim. P., as well as other materials specified in

Paragraph 5 of the Scheduling Order, no later than April 29,

2005.  To date, the government has not disclosed the complete

medical records of any of its victim witnesses.

### III.  Analysis

**A.    Availability of Medical Records Under Fed. R. Crim. P. 16**

**1.    The Prosecution's Obligations Under Rule 16**

Rule 16(a)(1)(E) provides:

Upon a defendant's request, the government must permit
the defendant to inspect and to copy or photograph
books, papers, documents, data, photographs, tangible
objects, buildings or places, or copies or portions of
any of these items, if the item is within the
government's possession, custody, or control and:

(i) the item is material to preparing the defense;

(ii) the government intends to use the item in its
case-in-chief at trial; or

(iii) the item was obtained from or belongs to the
defendant.

In the event a defendant seeks discovery under Rule

16(a)(1)(E)(i) on the ground that the information sought is

4

material to the preparing the defense, the defendant must make a threshold showing of materiality.  <u>United States v. Santiago</u>, 46 F.3d 885, 894 (9th Cir. 1995).  Such a showing "requires a presentation of 'facts which would tend to show that the Government is in possession of information helpful to the defense.'"  <u>Id</u> (quoting <u>United States v. Mandel</u>, 914 F.2d 1215, 1219 (9th Cir. 1990)).  "Neither a general description of the information sought nor conclusory allegations of materiality suffice."  <u>Id</u>.  "Requests under Rule 16 must be sufficiently clear to inform the prosecution about what is sought."  <u>United States v. McVeigh</u>, 954 F.Supp. 1441, 1450 (D.Colo. 1997).[2]

    2.    **Does Rule 16 Require Production of Medical Records?**

        a.    **Medical Records of Testifying Victim Witnesses Currently Held By the Prosecution**

There is no question that the medical records of testifying victim witnesses are discoverable and must be produced under Rule 16(a)(1)(E).  These records are material to the preparation of the defense under Rule 16(a)(1)(E)(i) and the prosecution intends to use them in its case-in-chief at trial, making them discoverable under Rule 16(a)(1)(E)(ii) as well.  Moreover, the government does not dispute that the records are in the

---

    [2]I have fully fleshed out the margins of discovery in a separate order filed contemporaneously with this one.  That discussion will not be repeated here.  <u>See</u> Order dated November 23, 2005, resolving Grace's Motion for Material and Exculpatory Information in the Possession of Government Agencies and the individual Defendants' Motion for Production of <u>Brady</u> Materials.

possession of the prosecution.  The only issue with regard to
these records is whether the victim witnesses' privacy rights
require the Court to place restrictions on the production in the
form of redaction of sensitive material, issuance of a protective
order, or both.

### b.  Medical Records of ATSDR Study Subjects Currently Held By DHHS

The medical records underlying the ATSDR study are
discoverable if (1) they are material to preparing the defense or
will be used in the government's case-in-chief and (2) they are
in the government's possession, custody or control as defined by
the "knowledge and access" test.  See Rule 16(a)(1)(E), Fed. R.
Crim. P.

The Defendants argue that the records are material, *i.e.*
that they will be helpful to the defense, because they may be
used by the Defendants to undermine various charges in the
Indictment.  For example, the Defendants contend that the records
will show that a significant amount of asbestos-related disease
in the Libby area was caused by exposure to asbestos that
occurred prior to the period of the conspiracy alleged in the
Indictment.  The Defendants also intend to use the records to
show that the Indictment overstates the adverse health effects
resulting from the overt acts charged in the Indictment.  This
they plan to do by demonstrating that the 1,186 ATSDR study
participants identified as having "asbestos related pleural

6

abnormalities" have not been diagnosed with any asbestos-related
medical problem.  The Defendants note that the ATSDR survey was a
screening study intended to identify individuals who should,
because of abnormalities found during the study, seek additional
medical testing to determine whether they have an asbestos-
related illness.

The Defendants have met their burden of showing that the
medical records underlying the ATSDR study are material for
purposes of Rule 16(a)(1)(E)(i).  The government has chosen to
include in the Indictment an allegation that nearly 1,200 former
and current Libby residents suffer from pleural abnormalities
caused by asbestos exposure, and has indicated that it will rely
on the ATSDR study and related expert testimony to prove its
allegations of risk of harm and the attendant health effects of
asbestos exposure.  Any information that might allow the
Defendants to assess the validity of that study is helpful to the
defense and therefore material.  Moreover, because the government
appears to intend to rely on the ATSDR study in its case-in-
chief, the records underlying that study are discoverable under
Rule 16(a)(1)(E)(ii).  Considerations of fairness and due process
require that the Defendants not be forced to defend against a
serious allegation of widespread health problems caused by their
conduct without also having access to the data upon which the
allegation is based.

Rule 16 also requires that the Defendants show that the
medical records underlying the ATSDR study are within the
government's possession, custody and control as defined by the
"knowledge and access" test.  Because there is no question that
the prosecution is aware of the existence of the medical records
underlying the ATSDR study, the Court's inquiry focuses on
whether the prosecution has access to the records underlying the
study.  Just because the prosecution has requested and received
some information from ATSDR, including the final screening study
report, does not mean that the prosecution has access to the
medical data underlying the study.

An assessment of the prosecution's access to the medical
records must acknowledge that the records are confidential health
information the disclosure of which is regulated by federal
statutes.  Two statutes limit the disclosure by government
agencies of confidential medical information.  The Health
Insurance Portability and Accountability Act ("HIPAA"), Pub. L.
No. 104-191, places limitations on the disclosure of medical
records held by a health plan, a health care clearinghouse, or a
health care provider making certain electronic transmissions.  42
U.S.C. § 1320d-1(a).  A "health care clearinghouse" is defined as
"a public or private entity that processes or facilitates the
processing of nonstandard data elements of health information
into standard data elements."  42 U.S.C. § 1320d(2).  Although it

8

is not entirely clear that ATSDR or DHHS meet the definition of a

"health care clearinghouse" as defined by HIPAA, I assume that

HIPAA applies to the agency holding the medical records.

The rules governing disclosure under HIPAA of information to

be used in a judicial proceeding are set forth at 45 C.F.R. §

164.512(e) and provide, in relevant part, as follows:

> **(1)** Permitted disclosures. A covered entity may disclose
> protected health information in the course of any judicial
> or administrative proceeding:
>
> > **(i)** In response to an order of a court or
> > administrative tribunal, provided that the covered
> > entity discloses only the protected health information
> > expressly authorized by such order; or
> >
> > **(ii)** In response to a subpoena, discovery request, or
> > other lawful process, that is not accompanied by an
> > order of a court or administrative tribunal, if:
> > > **(A)** The covered entity receives satisfactory
> > > assurance, as described in paragraph (e)(1)(iii)
> > > of this section, from the party seeking the
> > > information that reasonable efforts have been made
> > > by such party to ensure that the individual who is
> > > the subject of the protected health information
> > > that has been requested has been given notice of
> > > the request; or
> > > **(B)** The covered entity receives satisfactory
> > > assurance, as described in paragraph (e)(1)(iv) of
> > > this section, from the party seeking the
> > > information that reasonable efforts have been made
> > > by such party to secure a qualified protective
> > > order that meets the requirements of paragraph
> > > (e)(1)(v) of this section.
>
> . . . .
>
> > **(iv)** For the purposes of paragraph (e)(1)(ii)(B) of
> > this section, a covered entity receives satisfactory
> > assurances from a party seeking protected health
> > information, if the covered entity receives from such
> > party a written statement and accompanying
> > documentation demonstrating that:

> **(A)** The parties to the dispute giving rise to the
> request for information have agreed to a qualified
> protective order and have presented it to the
> court or administrative tribunal with jurisdiction
> over the dispute; or
> **(B)** The party seeking the protected health
> information has requested a qualified protective
> order from such court or administrative tribunal.

**(v)** For purposes of paragraph (e)(1) of this section, a
qualified protective order means, with respect to
protected health information requested under paragraph
(e)(1)(ii) of this section, an order of a court or of
an administrative tribunal or a stipulation by the
parties to the litigation or administrative proceeding
that:

> **(A)** Prohibits the parties from using or disclosing
> the protected health information for any purpose
> other than the litigation or proceeding for which
> such information was requested; and
> **(B)** Requires the return to the covered entity or
> destruction of the protected health information
> (including all copies made) at the end of the
> litigation or proceeding.

HIPAA allows the agencies involved here to disclose
information to the prosecution if the prosecution subpoenas the
information or the information sought is responsive to a
discovery request, provided the prosecution has either entered a
stipulated protective order with the defense or has requested a
protective order from the court having jurisdiction over the
case.  Because the prosecution need only request a qualified
protective order to receive information covered by HIPAA, that
statute does not present a barrier to the prosecution's access to
the medical records underlying the ATSDR study and currently held
by DHHS.

The other applicable statute is the Privacy Act, 5 U.S.C. §

552a.  The relevant portions of the Privacy Act provide, at 5

U.S.C. § 552a(b),

> No agency shall disclose any record which is contained in a
> system of records by any means of communication to any
> person, or to another agency, except pursuant to a written
> request by, or with the prior written consent of, the
> individual to whom the record pertains, unless disclosure of
> the record would be—

> . . . .

>> (7) to another agency or to an instrumentality of any
>> governmental jurisdiction within or under the control
>> of the United States for a civil or criminal law
>> enforcement activity if the activity is authorized by
>> law, and if the head of the agency or instrumentality
>> has made a written request to the agency which
>> maintains the record specifying the particular portion
>> desired and the law enforcement activity for which the
>> record is sought; [or]

> . . . .

>> (11) pursuant to the order of a court of competent
>> jurisdiction.

The Privacy Act authorizes an agency to disclose medical

records to "an instrumentality of any governmental jurisdiction,"

such as the United States Attorney's Office, for the purpose of

criminal law enforcement activity, provided that the United

States Attorney makes a written request to the agency specifying

the information desired and the purpose for which it is sought.

Because it appears that federal agency records covered by the

Privacy Act are available to federal prosecutors upon written

request, the act does not impede the prosecution's access to

agency files in any meaningful way.

11

There is no statutory impediment to the prosecution's access
to the medical data underlying the ATSDR study.  What remains is
a factual inquiry into whether the prosecution has access to DHHS
files.  The prosecution concedes that it has requested and
received information held by ATSDR, including the asbestos
screening study conducted in Libby.  ATSDR is an agency within
DHHS, although the prosecution has not been clear whether the
medical records underlying the screening study are held by ATSDR
or are kept elsewhere within DHHS.

The outcome of this inquiry does not turn on whether ATSDR
or some other entity within DHHS has actual custody of the
underlying medical records.  The prosecution was able to obtain
some files form ATSDR, including the screening study.  There is
no reason to assume that the prosecution could not gain access to
the underlying medical data had it wanted the information.  From
the prosecution's perspective, however, there is little incentive
to request the medical information upon which the study is based.
The study itself provides the government with the information
useful to the prosecution, *i.e.* the conclusion that a significant
number of Libby residents have shown pleural abnormalities.  The
data underlying the study does nothing to add to the strength of
the government's allegation of widespread sickness; rather, the
utility of the underlying data lies in the possibility that the
information might suggest avenues for the defense to undermine or

12

clarify the findings of the ATSDR study and to limit its harmful

impact.  This information is potentially useful to the defense,

but one can see why it would be of little interest to the

prosecution.  For this reason, an assessment of the prosecution's

access must be based not on what the prosecution has requested or

from whom, but rather on what the prosecution appears able to

obtain, regardless of attempt.

        The question is a close one.  The court in <u>United States v.</u>

<u>Bryan</u>, 868 F.2d 1032, 1036 (9th Cir. 1989), described the

competing considerations, forbidding prosecutors from employing

"a mechanical definition of 'government' that would deny to the

defendant documents accessible to the prosecution," while also

stating, "[A] prosecutor need not comb the files of every federal

agency which might have documents regarding the defendant in

order to fulfill his or her obligations under [Rule

16(a)(1)(E)]."  Weighing those considerations in this case, I

find that the scales tip in favor of requiring disclosure.  There

is a strong likelihood that the prosecution would deny the

Defendants documents to which the prosecution itself could have

access if it desired.  Moreover, these documents are probably of

greater utility to the defense than to the prosecution.  Ordering

disclosure in this instance is a far cry from forcing the

prosecution to "comb the files of every federal agency," because

the prosecution has placed the information at issue by basing

allegations in the Indictment on the ATSDR study and planning to

introduce the study's findings at trial.   These considerations

warrant a finding that the medical records supporting the ATSDR

study are within the government's possession under the "knowledge

and access" test and that the other elements of Rule 16(a)(1)(E)

are satisfied as to require disclosure of the medical records,

subject to restrictions necessary to protect that study

participants' privacy rights.

**B.   What Precautions Are Necessary to Protect Confidential Information?**

    **1.   Medical Records of Testifying Victim Witnesses**

The government states that it will disclose the medical

records of testifying victim witnesses, but insists that

disclosure be subject to a strict protective order and that the

government be allowed to unilaterally redact all identifying

information and all medical information it deems "wholly

unrelated" to the illnesses at issue in this case.[3]   The

government contends that such steps are mandated by the relevant

statutes and case law.

The defense is willing to enter a strict protective order,

but objects to the prosecution's plan to withhold identifying

---

[3]The government proposes to inform the Defendants as to which set
of medical records belongs to each testifying witness 30 days before
trial.   The government offers no argument in support of this procedure
except to state that it is intended to protect the testifying
witnesses' privacy.   That arbitrary limit on disclosure is
unreasonable.

information and redact portions of the medical records.  The

Defendants argue that the government is not qualified to make

medical determinations as to what information is "wholly

unrelated" to the illnesses at issue in the case, and that the

Defendants are entitled to have their experts review the complete

medical records of the testifying witnesses for potentially

useful information.

In addition to the privacy statutes cited above, Ninth

Circuit has recognized a constitutionally protected interest in

avoiding disclosure of medical information.  Tuscan Women's

Clinic v. Eden, 379 F.3d 531, 551 (9th Cir. 2004) (citation

omitted).  "Like the right to decide whether to terminate a

pregnancy, the right to informational privacy is not absolute;

rather, it is a conditional right which may be infringed upon a

showing of proper governmental interest."  Id (citation omitted).

> We balance the following factors to determine whether
> the governmental interest in obtaining information
> outweighs the individual's privacy interest: (1) the
> type of information requested, (2) the potential for
> harm in any subsequent non-consensual disclosure, (3)
> the adequacy of safeguards to prevent unauthorized
> disclosure, (4) the degree of need for access, and (5)
> whether there is an express statutory mandate,
> articulated public policy, or other recognizable public
> interest militating toward access.

Id (citation omitted).

Application of those factors in this case strongly favors an

order requiring the government to disclose the medical records of

testifying witnesses in their entirety, subject to a strong

15

protective order.  The type of information requested is
sensitive, and the risk of harm from non-consensual disclosure is
great, but the remaining three factors mandate full disclosure in
this case.  The Court is in a position to issue a strict
protective order supported by threat of sanctions, which is a
substantial safeguard against unauthorized disclosure.
Considering factors (4) and (5) together, there is a high degree
of need for access and a public policy (*i.e.*, the Rules of
Discovery) that favors access.  Due process requires that
defendants confronted by victim witnesses have an opportunity to
inspect the medical records upon which the witnesses base their
claims of injury, and that the inspection take place without the
arbitrary removal of portions of the records by the prosecution.

The victim witnesses have already disclosed confidential
medical information to the government.  By agreeing to serve as
witnesses in a criminal case, the testifying witnesses must
assume that their medical information will become known to the
defense.  In most cases dealing with informational privacy, an
individual is seeking to block disclosure of private information
to the government.  See, *e.g.*, Eden, 379 F.3d 531 (patients
seeking abortions challenge a state law requiring clinics to
provide reports, including medical records, to state agency); In
re Crawford, 194 F.3d 954 (9th Cir. 1999) (bankruptcy petition
preparer challenging federal law requiring inclusion of

16

preparer's Social Security number on petition).  Here, the
testifying witnesses have already disclosed their private
information to the government, and the government is in turn
asserting the witnesses' privacy rights as a basis for not
disclosing information to the defense.  There is no ground for
the prosecution's contention that disclosure of complete records
to the Defendants subject to a protective order poses any greater
risk to privacy than disclosure of the same records to the
government.

Neither the testifying witnesses' privacy rights nor the
applicable statutes (HIPAA and the Privacy Act, both of which
allow disclosure subject to a protective order) require the
redaction of medical records before disclosure.  The government
must produce the records in their entirety, subject to the strict
protective order set forth below in Part IV.  The records will
include the witnesses' names, although the government may redact
sensitive identifying information such as addresses, contact
information, insurance information and Social Security numbers.

## 2.    Medical Records Underlying the ATSDR Study

The medical records underlying the ATSDR study present two
different considerations that may warrant greater or less
protection upon production.  First, the medical records
underlying the ATSDR study are not complete medical records, but
instead consist only of medical histories provided and tests

17

performed in relation to the study.  This decreases the
likelihood that any portion of the information contained in the
records will be unrelated to asbestos exposure.  Second, the
identities of the participants in the study are not as important
to the defense as are the identities of the testifying witnesses.
As it relates to the testifying witnesses, the Defendants will be
looking to rebut individual claims of injury.  By contrast, with
regard to the study participants' information, the Defendants
will seek to undermine the broad conclusions of the study; there
is no apparent utility to knowing the names of the participants
in that case.

Accordingly, in the interest of the study participants'
privacy rights, I will allow the prosecution to redact the names
of the study participants prior to disclosing the medical
information underlying the ATSDR study.[4]  Disclosure will
nonetheless be subject to the strict protective order set forth
below.

### IV.  Order

Based on the foregoing, IT IS HEREBY ORDERED that the
Defendants' motion to compel production of medical records (dkt
#178) is GRANTED and the government's motion for a protective

---

[4]To the extent such information is contained in the ATSDR
records, the government may also redact sensitive identifying
information such as addresses, contact information, insurance
information and Social Security numbers.

18

order (dkt #202) is GRANTED in PART and DENIED in part as set
forth herein.  Production shall be subject to the following
protective order:

(1)  The government will provide each defendants with a
single copy of the complete medical records and related documents
for each of the government's testifying victim witnesses
(hereinafter "Witness Medical Records").

(2)  The Witness Medical Records provided by the government
will be redacted to remove sensitive identifying information such
as addresses, contact information and Social Security numbers.
The Witness Medical Records should not be otherwise redacted.
With each set of records, the information provided should include
the patient's name.

(3)  No person or party may make copies of the Witness
Medical Records provided by the government, nor are the
defendants to exchange copies among themselves or their counsel.
Defense counsel shall expressly advise every authorized person
whom they have review the records as to this prohibition.

(4)  Right to access the Witness Medical Records is limited
to: (a) attorneys representing the defendants and the government
in this action; (b) medical and scientific experts, whose review
of that material is necessary for the presentation of defendants'
or the government's case; (c) such law clerks, investigative
agents, paralegals, and secretaries employed by defendants or the

19

government's attorneys and agents, whose review of that material

is required for the preparation and presentation of defendants'

or the government's case; (d) the testifying witnesses or any

representative they designate; and (e) the defendants.

(5)     The Witness Medical Records shall be maintained by

defense counsel in accordance herewith and shall be used by

counsel solely and exclusively in connection with this case

(including trial preparation, trial, and appeals or other related

legal proceedings) and for no other purpose.  Defense counsel

shall expressly advise every authorized person whom they have

review the records as to this limitation on lawful use.

(6)  The Witness Medical Records shall be maintained by

defense counsel in a locked file or cabinet at all times except

when being actively utilized, and a copy of this Order shall be

kept with the Witness Medical Records at all times.

(7)  Within sixty (60) days after the conclusion of the

trial, or if an appeal is taken, within sixty days following the

return of the mandate to the District Court, defense counsel

shall return to the prosecution the same set of Witness Medical

Records as were provided by the prosecution, and shall maintain

no portion of the Witness Medical Records in their own files.

The government shall, in a timely manner, provide the Court with

notice upon the return of complete sets of original Witness

Medical Records by all defendants.  In the event such return is

delayed beyond the sixty-day deadline set forth in this paragraph, the government shall provide the Court with written notice of the nature of the delay.

(8)   Upon certification to this Court of the receipt of all original sets of Witness Medical Records, the government shall promptly destroy all sets of records received from the defendants.

(9)   The government will provide or make available for copying all information, including confidential medical information, underlying the ATSDR Study (hereinafter "ATSDR Study Records"). Prior to providing the ATSDR Study Records, the government shall remove all identifying information, including participants' names and all contact information, but shall not remove or redact any medical information. Paragraphs (4) and (5) of this Order apply with respect to the ATSDR Study Records.

(10) Failure or any party to comply with the terms of this Order will be punished to the full extent of the Locals Rules, the Federal Rules of Criminal Procedure, and the Court's inherent authority.

DATED this 23rd day of November, 2005.

DONALD W. MOLLOY, Chief Judge
United States District Court

21