IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                                    Chapter 11

**W.R. Grace & Co., et al.**               Case No. 01-01139 (JKF)

                    Debtors.              Jointly Administered

TWENTIETH QUARTERLY FEE APPLICATION OF STROOCK & STROOCK
& LAVAN LLP FOR COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD
FROM JANUARY 1, 2006 THROUGH MARCH 31, 2006

| | |
|---|---|
| Name of Applicant | **Stroock & Stroock & Lavan LLP** |
| Authorized to Provide Professional Services to: | **Official Committee of Unsecured Creditors** |
| Date of Retention: | **April 12, 2001** |
| Period for which compensation and reimbursement is sought | **January 1, 2006 – March 31, 2006** |
| Amount of Compensation sought as actual, reasonable and necessary: | **$323,566.25** |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | **$5,758.28** |
| Fees and Expenses of the Asbestos Issues Expert | **$65,934.08** |

This is an: ☒ interim ☐ final application

This is the twentieth quarterly application filed.

**Attachment A**

## Monthly Interim Fee Applications

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| May 30, 2001 D.I.339 | 4/12/01- 4/30/01 | $138,926.00 | $1,975.13 | $111,140.80 | $1,975.13 |
| July 2, 2001 D.I.613 | 5/1/01 – 5/31/01 | $139,928.75 | $6,884.73 | $111,943.00 | $6,884.73 |
| July 30, 2001 D.I.772 | 6/1/01 – 6/30/01 | $91,019.00 | $10,458.14 | $72,815.20 | $10,458.14 |
| September 5, 2001 D.I.889 | 7/1/01- 7/31/01 | $92,308.00 | $5,144.37 | $73,846.40 | $5,144.37 |
| October 2, 2001 D.I.983 | 8/1/01 8/31/01 | $53,873.50 | $3,069.88 | $43,098.80 | $3,069.88 |
| October 31, 2001 D.I.1058 | 9/1/01 – 9/30/01 | $58,742.00 | $6,801.32 | $46,993.60 | $6,801.32 |
| November 26, 2001 D.I.1239 | 10/1/01 – 10/31/01 | $101,069.00 | $3,562.09 | $80,855.20 | $3,562.09 |
| January 8, 2002 D.I.1470 | 11/1/01 – 11/30/01 | $136,368.50 | $8,847.34 | $109,094.80 | $8,847.34 |
| February 1, 2002 D.I.1608 | 12/01/01 – 12/31/01 | $92,064.50 | $9,471.47 | $73,651.60 | $9,471.47 |
| March 14, 2002 D.I.1812 | 01/01/02 – 01/31/02 | $100,231.50 | $14,675.58 | $80,185.20 | $14,675.58 |
| April 22, 2002 D.I.1951 | 02/01/02 – 02/28/02 | $88,974.50 | $16,863.97 | $71,179.60 | $16,863.97 |
| May 8, 2002 D.I.2029 | 03/01/02 – 03/31/02 | $77,964.25 | $1,190.44 | $62,371.40 | $1,190.44 |
| June 3, 2002 D.I.2156 | 04/01/02- 04/30/02 | $97,251.50 | $1,816.40 (Stroock) $9,772.37 (Chambers) | $77,801.20 | $11,588.86 |

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| July 2, 2002 D.I.2324 | 05/01/02 – 05/31/02 | $74,910.75 | $2,9154.43 (Stroock) $43,190.69 (Chambers) | $59,928.60 | $46,105.12 |
| August 5, 2002 D.I.2495 | 06/01/02 – 06/30/02 | $73,096.75 | $2,054.05 (Stroock) $114,666.72 (Chambers) | $58,477.4011 | $116,720.77 |
| September 20, 2002 D.I.2720 | 07/01/02 – 07/31/02 | $90,903.27 | $1,250.79 (Stroock) $11,996.25 (Chambers) | $72,722.61 | $13,274.04 |
| October 29, 2002 D.I.2898 | 08/01/02 – 08/31/02 | $93,151.25 | $11,539.51 (Stroock) $5,046.70 (Chambers) | $74,521.00 | $16,586.21 |
| November 14, 2002 D.I.2981 | 09/01/02 - 09/30/02 | $96,613.25 | $15,567.77 (Stroock) $771.50 (Chambers) | $77,290.60 | $16,339.27 |
| December 10, 2002 D.I.3129 | 10/1/02 – 10/31/02 | $68,404.00 | $2,956.54 (Stroock) $1,780.75 (Chambers) | $54,723.20 | $4,737.29 |
| January 28, 2003 D.I.3286 | 11/1/02 – 11/30/02 | $75,345.50 | $8,712.16 (Stroock) | $60,276.40 | $8,712.16 |
| February 7, 2003 D.I.3349 | 12/1/02 – 12/31/02 | $27,683.50 | $13,332.14 (Stroock) | $22,146.80 | $13,332.14 |
| March 26, 2003 D.I.3552 | 1/1/03 – 1/31/03 | $88,139.00 | $1,210.11 (Stroock) | $70,511.20 | $1,210.11 |
| April 7, 2003 D.I.3626 | 2/1/03 – 2/28/03 | $76,313.00 | $2,022.78 (Stroock) $1,077.80 (Chambers) | $61,050.40 | $3,100.58 |
| April 29, 2003 D.I.3718 | 3/1/03 – 3/31/03 | $60,163.50 | $6,191.15 (Stroock) | $48,130.80 | $6,191.15 |
| June 2, 2003 D.I. 3850 | 4/1/03 – 4/30/03 | $60,269.00 | $814.02 (Stroock) $2,043.00 (Chambers) | $48,215.20 | $2,857.02 |
| July 1, 2003 D.I. 3983 | 5/1/03 – 5/31/03 | $111,990.50 | $691.84 (Stroock) $3,830.50 (Chambers) | $89,592.40 | $10,522.34 |
| August 5, 2003 D.I. 4152 | 6/1/03 – 6/30/03 | $43,824.00 | $1,220.42 (Stroock) $61,755.00 (Chambers) | $35,059.20 | $62,975.42 |
| September 4, 2003 D.I. 4381 | 7/1/03 – 7/31/03 | $79,090.50 | $2,301.33 (Stroock) $14,274.25 (Chambers) | $63,272.40 | $16,575.58 |

2

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 30, 2003<br>D.I. 4512 | 8/1/03 –<br>8/31/03 | $69,927.00 | $1,164.19 (Stroock)<br>$12,488.94 (Chambers) | $55,941.60 | $13,653.13 |
| October 29, 2003<br>D.I. 4625 | 9/1/03 –<br>9/30/03 | $69,409.50 | $1,076.94 (Stroock)<br>$10,102.00 (Chambers) | $55,527.60 | $11,178.94 |
| December 19, 2003<br>D.I. 4843 | 10/1/03 –<br>10/31/03 | $96,980.50 | $3,800.45 (Stroock)<br>$42,881.50 (Chambers) | $77,584.40 | $46,681.95 |
| January 23, 2004<br>D.I. 4976 | 11/1/03 –<br>11/30/03 | $66,428.50 | $1,225.38 (Stroock)<br>$30,463.00 (Navigant<br>f/k/a Chambers) | $53,142.80 | $31,688.38 |
| February 4, 2004<br>D.I. 5056 | 12/1/03 –<br>12/31/03 | $52,321.50 | $924.99 (Stroock)<br>$27,005.00 (Navigant<br>f/k/a Chambers) | $41,857.20 | $27,929.99 |
| March 17, 2004<br>D.I. 5309 | 1/1/04 –<br>1/31/04 | $65,980.50 | $1,917.93 (Stroock)<br>$47,654.57 (Navigant<br>f/k/a Chambers) | $52,784.40 | $49,572.50 |
| April 6, 2004<br>D.I. 5406 | 2/1/04 –<br>2/29/04 | $90,421.50 | $3,636.48 (Stroock)<br>$35,492.50 (Navigant<br>f/k/a Chambers) | $72,337.20 | $39,128.98 |
| April 28, 2004<br>D.I. | 3/1/04 –<br>3/31/04 | $103,524.00 | $5,567.34 (Stroock) | $82,819.20 | $5,567.34 |
| June 14, 2004<br>D.I. 5803 | 4/1/04 –<br>4/30/04 | $99,136.00 | $3,518.96 (Stroock)<br>$1,515.00 (Navigant<br>February)<br>$49,667.00 (Navigant<br>March)<br>$80,307.11 (Navigant<br>April) | $79,308.80 | $135,008.07 |
| July 2, 2004<br>D.I. 5917 | 5/1/04 –<br>5/31/04 | $134,324.50 | $2,409.97 (Stroock)<br>$78,360.05 (Navigant<br>May) | $107,459.60 | $80,770.02 |
| August 2, 2004<br>D.I. 6105 | 6/1/04 –<br>6/31/04 | $120,501.00 | $1,831.49 (Stroock)<br>$62,625.00 (Navigant<br>June) | $96,400.80 | $64,456.49 |

3

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 9, 2004<br>D.I. 6341 | 7/1/04 –<br>7/31/04 | $72,394.00 | $3,461.84 (Stroock)<br>$40,427.50 (Navigant<br>July) | $57,915.20 | $43,889.34 |
| September 23, 2004<br>D.I. 6444 | 8/1/04 –<br>8/31/04 | $70,457.00 | $1,764.40 (Stroock) | $56,365.60 | $1,764.40 |
| October 14, 2004<br>D.I 6625 | 9/1/04 –<br>9/30/04 | $83,903.50 | $1,535.61 (Stroock)<br>$27,142.00 (Navigant<br>August) | $67,122.80 | $28,677.61 |
| December 3, 2004<br>D.I. 7086 | 10/1/04 –<br>10/31/04 | $200,155.50 | $1,368.18 (Stroock)<br>$ 24,659.00 (Navigant<br>September) | $160,124.40 | $26,027.18 |
| January 7, 2005<br>D.I. 7481 | 11/1/04 –<br>11/30/04 | $218,608.50 | $14,019.09 (Stroock)<br>$25,102.80 (Navigant<br>October)<br>$27,972.34 (Navigant<br>November) | $174,886.80 | $67,094.23 |
| February 2, 2005<br>D.I. 7667 | 12/1/04 –<br>12/31/04 | $235,503.70 | $10,442.92 (Stroock)<br>$62,687.97 (Navigant<br>December) | $188,402.96 | $73,130.89 |
| March 15, 2005<br>D.I. 8026 | 1/1/05 –<br>1/31/05 | $187,168.00 | $4,411.55 (Stroock)<br>$15,686.00 (Navigant<br>January) | $149,734.40 | $20,097.55 |
| April 1, 2005<br>D.I. 8155 | 2/1/05 –<br>2/28/05 | $108,180.25 | $8,102.85 (Stroock)<br>$18,303.37 (Navigant<br>February) | $86,544.20 | $26,406.22 |
| April 29, 2005<br>D.I. 8305 | 3/1/05~–<br>3/31/05 | $56,941.25 | $287.23 (Stroock)<br>$6,114.86 (Navigant<br>March) | $45,553.00 | $6,402.09 |
| June 6, 2005<br>D.I. 8562 | 4/1/05-<br>4/30/05 | $127,695.00 | $3,531.45 (Stroock)<br>$20,129.06 (Navigant<br>April) | $102,156.00 | $23,660.51 |
| June 28, 2005<br>D.I. 8704 | 5/1/05-<br>5/31/05 | $98,569.00 | $4,871.74 (Stroock) | $78,855.20 | $858.21 |

4

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| August 3, 2005<br>D.I. 9135 | 6/1/05-<br>6/30/05 | $114,903.75 | $4,871.74 (Stroock)<br>$34,075.28 (Navigant June) | $91,923.00 | $38,947.02 |
| September 8, 2005<br>D.I. 9356 | 7/1/05 –<br>7/31/05 | $117,780.75 | $2,088.44 (Stroock)<br>$2,211.00 (Navigant) | $94,224.60 | $4,299.44 |
| October 4, 2005<br>D.I. 9565 | 8/1/05 –<br>8/31/05 | $106,796.25 | $5,046.99 (Stroock)<br>$18,550.00 (Navigant) | $85,437.00 | $23,596.99 |
| November 1, 2005<br>D.I. 10951 | 9/1/05 –<br>9/30/05 | $67,697.50 | $1,399.68 (Stroock)<br>$11,197.50 (Navigant) | $54,158.00 | $12,597.18 |
| November 29, 2005<br>D.I. 11202 | 10/1/05 –<br>10/31/05 | $98,216.75 | $1,611.30 (Stroock)<br>$11,582.50 (Navigant) | $78,573.40 | $13,193.80 |
| January 9, 2006<br>D.I. 11507 | 11/1/05 –<br>11/30/05 | $104,348.00 | $2,847.45 (Stroock)<br>$71,598.50 (Navigant) | $83,478.40 | $74,445.95 |
| January 30, 2006<br>D.I. 11655 | 12/1/05 –<br>12/31/05 | $96,855.00 | $1,379.53 (Stroock)<br>$20,317.49 (Navigant) | $77,484.00 | 21,697.02 |
| March 1, 2006<br>D.I. 11921 | 1/1/06 –<br>1/31/06 | $73.383.00 | $1,810.85 (Stroock)<br>$14,124.01 (Navigant) | $58.706.40 | $15,934.86 |
| March 28, 2006<br>D.I. 12134 | 2/1/06 –<br>2/28/06 | $105,083.75 | $1,434.62 (Stroock)<br>$25,971.70 (Navigant) | $84.067.00 | $27,406.32 |
| May 2, 2006<br>D.I. 12354 | 3/1/06 –<br>3/31/06 | $145,189.50 | $2,512.81 (Stroock)<br>$25,838.37 (Navigant) | | |

SSL-DOCS1 1688177v2

**Quarterly Fee Applications**

| Date Filed | Period Covered | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| July 30, 2001 D.I.770 (First) | 4/12/01-6/30/01 | $369,873.75 | $19,318.00 | $369,873.75 | $19,318.75 |
| November 1, 2002 D.I.1068 (Second) | 7/1/01 – 9/31/01 | $204,923.50 | $15,015.57 | $204,923.50 | $15,015.57 |
| February 8, 2002 D.I.1658 (Third) | 10/1/01 – 12/31/01 | $329,842.00 | $21,880.90 $9,918.43* | $329,842.00 | $21,880.90 (Stroock) $9,918.43 (Chambers) |
| May 16, 2002 D.I.2064 (Fourth) | 01/01/02 – 03/31/02 | $267,170.20 | $6,149.76 $36,352.60* | $266,865.70 | $6,144.85 (Stroock) $22,002.76 (Chambers) |
| August 16, 2002 D.I.2557 (Fifth) | 04/01/02 – 06/30/02 | $245,259.00 | $6,784.97 $167,629.78* | $245,259.00 | $6,784.97 (Stroock) $167,629.78 (Chambers |
| November 18, 2002 D.I.3045 (Sixth) | 07/01/02 – 09/30/02 | $280,471.77 | $28,358.07 $17,814.45* | $224,534.21[1] | $28,358.07 (Stroock)[1] $17,814,45 (Chambers)[1] |
| March 25, 2003 D.I.3549 (Seventh) | 10/01/02 – 12/31/03 | $171,108.00 | $25,000.84 $1,780.75* | $136,886.40[2] | $25,000.84 (Stroock)[2] $1,780.75 (Chambers)[2] |

---

[*]    These amounts relate to the Committee's Asbestos Issues Expert.

[1]    Court Order dated March 14, 2003 approved fees in the amount of $276,535.77 and expenses in the amount of $45,477.52.

[2]    Court Order dated July 28, 2003 approved fees in the amount of $171,108.00 and expenses in the amount of $26,412.62.

SSL-DOCS1 1688177v2

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| May 20, 2003<br>D.I. 3815<br>(Eighth) | 1/1/03 –<br>3/31/03 | $224,358.50 | $9,424.04<br>$1,077.80* | $224,615.50[3] | $9,424.04<br>(Stroock)[3]<br>$1,077.80<br>(Chambers)[3] |
| August 29, 2003<br>D.I. 4357<br>(Ninth) | 4/1/03 –<br>6/30/03 | $215,903.50 | $2,726.28<br>$67,628.50* | $215,903.50[4] | $2,726.28<br>(Stroock)[4]<br>$67,628.50<br>(Chambers)[4] |
| December 5, 2003<br>D.I. 4778<br>(Tenth) | 7/1/03 –<br>9/30/03 | $218,222.00 | $4,339.46<br>$36,865.19* | $218,222.00[5] | $4,339.46<br>(Stroock)[5]<br>$36,865.19<br>(Chambers)[5] |
| March 2, 2004<br>D.I. 5212<br>(Eleventh) | 10/1/03 –<br>12/31/03 | $215,718.50 | $5,950.82<br>$100,349.50* | $215,718.50[6] | $5,922.67<br>(Stroock)[6]<br>$100,349.50<br>(Chambers)[6] |
| May 18, 2004<br>D.I. 5597<br>(Twelfth) | 1/1/04 –<br>3/31/04 | $254,857.00 | $9,965.36<br>$83,147.07* | $254,857.00[7] | $9,965.36<br>(Stroock)[7]<br>$83,147.07<br>(Navigant)[7] |
| August 26, 2004<br>D.I. 6269<br>(Thirteenth) | 4/1/04 –<br>6/30/04 | $353,629.50 | $7,760.42<br>$272,474.16* | $353,629.50[8] | $7,760.42<br>(Stroock)[8]<br>$272,474.16<br>(Navigant)[8] |

---

[3]    Court Order dated September 22, 2003 approved fees in the amount of $224,033.50 and expenses in the amount of $10,410.22.

[4]    Amended Court Order dated December 23, 2003 approved fees in the amount of $215,903.50 and expenses in the amount of $70,354.78.

[5]    Court Order dated April 26, 2004 approved fees in the amount of $218,222.00 and expenses in the amount of $41,204.65.

[6]    Court Order dated June 16, 2004 approved fees in the amount of $215,718.50 and expenses in the amount of $106,272.17.

[7]    Court Order dated September 27, 2004 approved fees in the amount of $254,857.00 and expenses in the amount of $93,011.96.

[8]    Court Order dated January 25, 2005 approved fees in the amount of $353,629.50 and expenses in the amount of $280,234.58.

SSL-DOCS1 1688177v2

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| November 10, 2004 D.I. 6871 (Fourteenth) | 7/1/04 – 9/30/04 | $226,702.50 | $6,705.08 $67,569.50* | $226,702.50[9] | $6,705.08 (Stroock)[9] $67,569.50 (Navigant)[9] |
| February 22, 2005 D.I. 7851 (Fifteenth) | 10/1/04 – 12/31/04 | $653,133.20 | $25,830.19 $140,422.11* | $648,355.70[10] | $25,830.19 (Stroock)[10] $140,422.11 (Navigant)[10] |
| May 16, 2005 D.I. 8468 (Sixteenth) | 1/1/05- 3/31/05 | $352,289.50 | $12,746.23 $40,104.23* | $349,644.00 | $12,746.23 (Stroock)[11] $40,104.23 (Navigant) |
| August 19, 2005 D.I. 9225 (Seventeenth) | 4/1/-5 – 6/30/05 | $340,821.25 | $9,261.40 $54,204.34* | $340,096.25[12] | $9,261.40 (Stroock) $54,204.34 (Navigant) |
| November 18, 2005 D.I. 11118 (Eighteenth) | 7/1/05 – 9/30/05 | $291,843.50 | $8,534.71 $31,958.50 | $291,843.50[13] | $8,534.71 (Stroock) $31,958.50 (Navigant) |
| February 15, 2006 D.I. 11798 (Nineteenth) | 10/1/05 – 12/31/05 | $299,419.75 | $5,838.28 $103,498.49 | | |

---

[9]    Court Order dated March 22, 2005 approved fees in the amount of $226,702.50 and expenses in the amount of $74,274.58.

[10]    Court Order dated June 29, 2005 approved fees in the amount of $648,335.70 and expenses in the amount of $166,252.30.

[11]    Court Order dated September 27, 2005 approved fees in the amount of $349,644.00 and expenses in the amount of $52,850.46.

[12]    Court Order dated December 19, 2005 approved fees in the amount of $340,096.25 and expenses in the amount of $63,465.74.

[13]    Court Order dated March 24, 2006 approved fees in the amount of $291,843.50 and expenses in the amount of $40,493.21.

SSL-DOCS1 1688177v2

**WR GRACE & CO**
**ATTACHMENT B**
**JANUARY 1, 2006 - MARCH 31, 2006**

| | Hours | Rate | Amount | No. of Years in Position |
|---|---|---|---|---|
| **Partners** | | | | |
| Kruger, Lewis | 59.3 | $ 825 | $ 48,922.50 | 35 |
| Latza, William D. | 0.5 | 675 | 337.50 | 15 |
| Lewin, Robert | 1.8 | 650 | 1,170.00 | 15 |
| Lewin, Robert | 3.1 | 675 | 2,015.00 | 15 |
| Pasquale, Kenneth | 63.2 | 650 | 41,080.00 | 7 |
| Speiser, Mark A. | 0.5 | 775 | 387.50 | 19 |
| | | | | |
| **Associates** | | | | |
| Balk, Heidi | 9.1 | 495 | 4,504.5 | 8 |
| Berg, Madelaine | 5.6 | 595 | 3,332.0 | 26 |
| Krieger, Arlene G. | 308.1 | 575 | 177,157.5 | 21 |
| Papir, Ryan M. | 24.1 | 395 | 9,519.5 | 5 |
| Parra, Rebecca | 25.4 | 355 | 9,017.0 | 3 |
| | | | | |
| **Paraprofessionals** | | | | |
| Holzberg, Ethel H. | 45.1 | 225 | 10,147.50 | 34 |
| Kollendar, Adam E. | 3.3 | 215 | 709.50 | 1 |
| Lawler, Elizabeth B. | 7.2 | 225 | 1,620.00 | 1 |
| Lollie, Toya | 6.0 | 150 | 900.00 | 1 |
| Mohamed, David | 89.1 | 150 | 13,365.00 | 17 |
| | | | | |
| **SUB TOTAL:** | 651.4 | | $ 324,185.00 | |
| **LESS 50% TRAVEL:** | (0.7) | | (618.75) | |
| **TOTAL:** | 650.7 | | $ 323,566.25 | |

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | **Chapter 11** |
| **W. R. GRACE & CO., et al.**[1] | ) | **Case No. 01-01139 (JKF)** |
| | ) | |
| **Debtors.** | ) | **Jointly Administered** |

## TWENTIETH QUARTERLY FEE APPLICATION BY STROOCK & STROOCK & LAVAN LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF W. R. GRACE & CO., et al., FOR INTERIM COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED <u>DURING THE PERIOD FROM JANUARY 1, 2006 THROUGH MARCH 31, 2006</u>

Stroock & Stroock & Lavan LLP ("Stroock" or "Applicant"), counsel to the Official

Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co. ("Grace") and its

sixty-one domestic subsidiaries and affiliates that are debtors and debtors-in-possession (the

"Debtors") in this Court, for its application pursuant to 11 U.S.C. §§ 330 and 331 and in

accordance with the Administrative Fee Order (defined below) for interim allowance of

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings. Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

compensation for services rendered and for reimbursement of expenses incurred in connection therewith, respectfully represents as follows:

## INTRODUCTION

1.     By this application (the "Application"), Stroock seeks (i) an interim allowance of compensation for the professional services rendered by Stroock as counsel for the Committee for the period from January 1, 2006 through March 31, 2006 (the "Compensation Period") in the aggregate amount of $323,566.25 representing 500.7 hours of professional services and 150.7 hours of paraprofessional services; and (ii) reimbursement of actual and necessary expenses incurred by Stroock during the Compensation Period in connection with the rendition of such professional services and paraprofessional services in the aggregate amount of $5,758.28, as well as the fees and expenses of the asbestos issues expert employed by the Committee pursuant to the Court's June 22, 2001 Order Authorizing the Retention of Experts (the "Asbestos Issues Expert") in respect of services rendered in the months of January, February and March of 2006 in the aggregate amount of $65,934.08.

2.     Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 330 and 331 and Federal Rules of Bankruptcy Procedure 2002(a) and 2016.

## BACKGROUND

3.     On April 2, 2001 (the "Petition Date"), each of the Debtors filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code and have continued in the management and operation of their businesses and property pursuant to §§ 1107 and 1108 of the

2

Bankruptcy Code. Pursuant to an order of the Court, the Debtors' chapter 11 cases have been procedurally consolidated and are being jointly administered.

4.      The Debtors operate a world-wide specialty chemicals and materials business and employ approximately 3860 full and part-time employees. On a consolidated basis, for the fiscal year 2000, Grace reported a net loss of $89.7 million[2] from $1.59 billion in net revenues. The Debtors' bankruptcy filings report that in fiscal year 2000, on a consolidated basis, Grace's sales are generated approximately 50% by the Debtors and 50% by the Debtors' non-debtor subsidiaries and affiliates.

5.      On April 12, 2001, the United States Trustee formed the Committee. During the first meeting of the Committee on April 12, 2001, the Committee duly selected Stroock as its counsel to represent the Committee in all matters during the pendency of the Debtors' Chapter 11 cases. The Committee thereafter approved the retention of Duane, Morris & Heckscher LLP (n/k/a Duane Morris LLP) ("DM&H") as its local Delaware counsel. On December 3, 2003, a second amended notice of appointment of the Committee was filed by the United States Trustee.

6.      The United States Trustee also appointed two separate official committees to represent the interests of claimants asserting asbestos-related personal injury claims and asbestos-related property damage claims against the Debtors (collectively, the "Asbestos Claim Committees"). On June 18, 2001, the United States Trustee appointed an official committee to represent the interests of equity security holders of the Debtors (the "Equity Committee").

---

[2]      The Debtors' pleadings further reported that this net loss resulted in part from a $294.0 million asbestos-related charge to earnings recorded in the fourth quarter of 2000.

3

7.     By order dated May 24, 2004, the Court authorized the appointment of a legal representative for future asbestos claimants (the "Futures Representative").

8.     By application dated May 1, 2001, Stroock sought Court approval for its retention as counsel to the Committee nunc pro tunc to April 12, 2001. The Court signed an order approving Stroock's retention as counsel to the Committee on May 30, 2001.

9.     This is the twentieth quarterly interim application Stroock has filed with the Court for an allowance of compensation and reimbursement of expenses for services rendered to the Committee. This Application is submitted pursuant to the terms of the Administrative Order Under §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, approved by the Court on May 3, 2001 as amended by order dated April 19, 2002 (collectively, the "Administrative Fee Order").

10.     In accordance with the procedures established by the Administrative Fee Order, Stroock had, at the time of filing of this Application, received payment from the Debtors for 80% of the fees and 100% of Stroock's expenses requested, and not objected to, in the January 2006 fee statement encompassed within this Compensation Period. Stroock has not yet received payment for the fees and expenses requested in the February 2006 fee statement for which a certificate of no objection has been filed, or for the March 2006 fee statement. In addition, Stroock has received payment from the Debtors in the amount of $14,124.01, representing the fees and expenses of Navigant Consulting, Inc. ("Navigant") formerly known as Chambers Associates, the Asbestos Issues Expert for the Committee, for the month of January 2006, but

4

has not received payment in respect of the fees and expenses of the Asbestos Issues Expert for the months of February and March 2006. Applicant has received no other payments and no promises for payment from any source for services rendered in connection with these cases for the months encompassing this Compensation Period other than as immediately set forth above. There is no agreement or understanding between the Applicant and any other person (other than members of Stroock) for the sharing of compensation to be received for the services rendered in these cases.

11.    As stated in the Affidavit of Kenneth Pasquale, Esq. annexed hereto as Exhibit "A," all of the services for which interim compensation is sought herein were rendered for and on behalf of the Committee solely in connection with these cases.

## SUMMARY OF SERVICES RENDERED

12.    Since being retained by the Committee, Stroock has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the unsecured creditors of the Debtors' estates. The variety and complexity of these cases and the need to act or respond on an expedited basis in furtherance of the Committee's needs have required the expenditure of substantial time by personnel from several legal disciplines, on an as-needed basis, including in certain instances, working into the evening and on weekends.

13.    Stroock maintains written records of the time expended by attorneys and paraprofessionals in the rendition of their professional services to the Committee. Such time records were made contemporaneously with the rendition of services by the person rendering such services and in the ordinary course of Stroock's practice, and are presented in compliance

5

with Delaware Local Rule 2016-2(d) amended effective as of September 1, 2002. A compilation showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services during the Compensation Period is annexed hereto as Exhibit "B". In addition, Exhibit "C" hereto contains a summary of the hours expended by each of the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

14.     Stroock also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are also available for inspection. A schedule of the categories of expenses and amounts for which payment is requested is annexed hereto as Exhibit "D".

15.     Stroock respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and have directly benefited the creditor constituents represented by the Committee and have contributed to the effective administration of these cases.

16.     The following summary of the services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit "B". Rather, it is merely an attempt to highlight certain of these areas in which services were rendered to the Committee, as well as to identify some of the problems and issues to which Stroock was required to direct its attention.

6

## Claim Analysis Objection, Resolution & Estimation (Asbestos) -- Category 0003

17.     As reflected in prior compensation applications, in mid-November 2004, the

Debtors filed a reorganization plan and numerous related pleadings including their motion

seeking the estimation of asbestos claims and the establishment of a schedule and procedures for

carrying out the estimations (the "Estimation Motion") and their motion to establish post-

confirmation litigation protocols for liquidating asbestos claims (the "Case Management

Motion").

18.     During a prior compensation period, the Court approved a form of case

management order ("CMO") to govern the estimation of asbestos personal injury claims (the "PI

CMO") and the related form of questionnaire (the "Questionnaire") to be used by asbestos

personal injury claimants who had commenced pre-petition litigation against the Debtors (the "PI

Pre-Petition Litigation Claimants") and two case management orders for property damage claims

the ("PD CMOs"); one to govern the Debtors' claims objection process and the other to govern

the estimation of property damage claims ("PD Claims").

19.     During this Compensation Period, Stroock attended to the revised PI CMOs and

PD CMOs circulated.  In addition, Stroock attended to numerous estimation and discovery-

related matters, including reviewing deposition transcripts from previously conducted

depositions, preparing for and attending (either in person or telephonically) the depositions held

during this Compensation Period; preparing for a meeting with Navigant (the Committee's

asbestos issues expert) and attending to numerous estimation-related issues; attending to a

number of extended conference calls with representatives of all parties in interest with respect to

Grace's discovery production to the PI Committee; reviewing the discovery produced by Grace to the PD Committee; attending to expert filings by Grace and by the PD Committee relating to the issue of dust sampling methodology; and attending to the various pleadings addressing the disallowance or validity of myriad different categories of PD Claims including pleadings in respect of Anderson Memorial Hospital's motion for class certification.

20.    In addition, during this Compensation Period, the Debtors filed a motion seeking to compel the use in the estimation of PI Claims of material produced by Dr. Alan Whitehouse in the criminal action against Grace and seven individual defendants (the "Government's Libby Litigation") pending before the United States District Court in Montana.  Stroock reviewed Debtors' motion and the pleadings filed in opposition thereto.  Stroock has expended 98.2 hours on this category for a fee of $52,882.00.

### Asset Analysis and Recovery -- Category 0008

21.    During this Compensation Period, Stroock had a discussion with Capstone (the Committee's financial advisor) about the status of a proposed acquisition by Grace and the renegotiation and extension of the Debtors' post-petition credit agreement (the "DIP Agreement"), among other matters.  Stroock has expended 0.8 hours on this category for a fee of $460.00.

### Business Operations -- Category 0013

22.    During this Compensation Period, Stroock reviewed the Company's fourth quarter 2005 financial package, and Capstone's report on the Company's fourth quarter 2005 operations and year end results, and discussed the same with Capstone.  In addition, during this Compensation Period, the Debtors filed (i) a motion seeking to extend the current termination

8

date of their DIP Agreement and obtain approval for a proposed amendment to such agreement, and (ii) a motion seeking to extend for two years the terms of existing credit agreements with ·Advanced Refining Technologies LLC (the "ART Credit Agreements"), a joint venture owed partly by Grace-Conn and partly by Chevron USA. Stroock reviewed these motions and related material and discussed these matters with Capstone. Stroock has expended 13.2 hours on this category for a fee of $7,940.00.

### Case Administration -- Category 0014

23.     As reported in prior monthly compensation applications, these chapter 11 cases were reassigned to District Court Judge Alfred Wolin in November 2001 and referred to Bankruptcy Court Judge Judith Fitzgerald, and then reassigned to District Court Judge Ronald L. Buckwalter following Judge Wolin's recusal from these cases.

24.     During this Compensation Period, Stroock continued to closely monitor the items on the Court's general chapter 11 docket for these cases, as well as those dockets relating to each of the adversary proceedings pending in these chapter 11 cases, to ensure that the Committee was fully informed about all pending motions and adversary proceedings and that Stroock would be ready to timely respond on behalf of the Committee, as might be applicable. Stroock continued to engage Debtors' counsel and Capstone on an on-going basis with respect to pending matters and information requests, and reviewed agenda notices prepared for Judge Fitzgerald during the Compensation Period in respect of the hearings scheduled to be held each month during the period. In addition, during this Compensation Period, Stroock and the Debtors' representatives engaged in a number of conference calls during which pending motions and upcoming matters

9

were discussed, as were various estimation and plan-related issues, including the selection of a plan mediator.

25.     Also during this Compensation Period, the Libby Claimants made a motion seeking payment, as administrative expenses of the Debtors' estates, for the PI estimation-related fees and expenses of their counsel and experts and certain plan-related fees and expenses (the "Libby Claimants Administrative Payment Motion"), as well as, requested separately that the U.S. Trustee appoint a separate official committee for Libby Claimants (the "Libby Claimants' Separate Committee Request"). As reflected in another category of services in this Application, Stroock prepared an objection to the Libby Claimants Administrative Payment Motion on behalf of the Committee. In connection with the preparation of that objection, Stroock retrieved earlier pleadings filed in these cases pertaining to the Libby Claimants for review. Further, Stroock reviewed the responses submitted by other parties in interest to the U.S. Trustee in respect of the Libby Claimants' Separate Committee Request.   Stroock has expended 103.5 hours on this category for a fee of $28,554.50.

### Claims Analysis, Objection and Resolution (Non-Asbestos) -- Category 0015

26.     During this Compensation Period, Stroock reviewed (i) the Debtors' notice of settlement of a non-asbestos tort claim and prepared a memorandum to the Committee on the settlement, (ii) the appellate briefs filed by PacificCorp. and Vancott Bagley and the Debtors, which appeal was to be heard by Judge Buckwalter in April 2006, and (iii) Debtors' brief in opposition to a non-asbestos tort claimants' summary judgment motion. Stroock has expended 5.6 hours on this category for a fee of $3,220.00.

10

**Committee, Creditors' Noteholders' or Equity Holders' -- Category 0017**

27.     During this Compensation Period, Stroock communicated with the members of

the full Committee through numerous memoranda and telephone calls.  In order to keep the

Committee fully informed of all of the pending matters in these cases, and thus enable the

Committee to take informed positions on those issues, Stroock reviewed and summarized the

motions, other pleadings and notices filed by the Debtors and other parties in interest in these

cases and the responses filed, raised issues the Committee should be aware of, and made

recommendations to the Committee concerning appropriate actions to be taken with regard to the

pleadings, communicated with members of the Committee regarding the positions to be taken,

engaged counsel and other representatives for the Debtors, and other parties and movants, as

applicable, with the Committee's questions and concerns, negotiated whenever and to the extent

possible consensual resolutions of outstanding issues and acceptable forms of proposed orders

and advised the Committee of the Court's rulings.

28.     The motions, settlement agreements, and other materials Stroock reviewed during

this Compensation Period, prepared memoranda to the Committee on and discussed with the

Committee, as applicable, included, among other matters, (i) each of the Debtors' proposed

settlements with the Port Authority and CHL Administration of environmental contamination-

related claims; (ii) the Debtors' motions to further extend and modify their DIP Agreement and

ART Credit Agreements; and (iii) the Debtors' proposed settlement with certain underwriters at

Lloyd's, London.

29.     In addition, Stroock prepared memoranda to the Committee (i) discussing the

omnibus hearings and the January 24 – 26, 2006 PD Claims-related hearings held before Judge

11

Fitzgerald, and (ii) addressing the discussions with all parties regarding the consideration and selection of a plan mediator to assist the parties with plan negotiations, and the mediation sessions held during this Compensation Period.

30.    Further, in connection with the Libby Claimants Administrative Payment Motion, Stroock reviewed relevant case law and pleadings filed previously in these cases by the Libby Claimants, prepared a memoranda to the Committee discussing the Libby Claimants Administrative Payment Motion and, with the Committee determining to oppose the Motion, prepared an objection on behalf of the Committee.  Stroock also responded to the US Trustee's request for the Committee's position to the Libby Claimants' request that the US Trustee appoint a separate Committee for such claimants.

31.    During this Compensation Period, Stroock also discussed and communicated with the Committee and with the Debtors with respect to various plan-related matters, proposals and analyses, as applicable, including the terms under which the Committee would continue as a co-proponent of the Debtors'reorganization plan.

32.    Through its correspondence and communication with the Committee, Stroock has assisted the Committee in fulfilling its statutory duties to make informed decisions and express the Committee's views regarding the issues which arise in these cases, to support the establishment of appropriate processes for the estimation of the Debtors' asbestos liabilities, and participate in the estimation proceedings and in the preparation of a plan providing appropriate treatment for the creditors represented by the Committee.  Stroock has expended 145.6 hours on this category for a fee of $83,564.50.

12

### Fee Application, Applicant -- Category 0018

33.     During this Compensation Period, Stroock prepared its fee statements for the months of December 2005, January 2006 and February 2006, and related notices, affidavits of service and certifications of no objection.  Stroock also prepared its Nineteenth Quarterly Fee Application covering the period from October 1, 2005 through December 31, 2005 (the "Prior Compensation Application"), including a narrative section summarizing the services rendered during that period by Stroock and numerous fee and expense schedules, as required by the Administrative Fee Order entered by the Court.  Stroock has expended 79.2 hours on this category for a fee of $24,897.50.

### Creditor Inquiries -- Category 0019

34.     During this Compensation Period, Stroock responded to numerous inquiries from unsecured creditors with respect to the status of estimating asbestos liabilities and related issues, plan-related matters, including the extension of exclusivity and treatment of unsecured creditors, the status and prospects for asbestos legislation and the impact of the proposed legislation on these cases, the status of the ZAI matters and the results of and matters addressed during the hearings held in this Compensation Period.  Stroock has expended 7.5 hours on this category for a fee of $4,625.00.

### Fee Application, Others -- Category 0020

35.     During this Compensation Period, Stroock prepared notices, affidavits of service and certifications with respect to Capstone's monthly fee statements for the months of November 2005, December 2005 and January 2006 and with respect to Capstone's eighth quarterly fee

13

application, and attended to fee applications of other professionals retained in these cases.
Stroock has expended 14.3 hours on this category for a fee of $4,415.00.

### Employee Benefits, Pension -- Category 0021

36.     During this Compensation Period, the Debtors forwarded a draft of their motion
seeking authorization to make minimum funding contributions in aggregate amounts in excess of
$100.00 million to their defined benefit plans during the period from July 15, 2006 through
April 15, 2007 (the "2006 Pension Motion"). Stroock reviewed the draft 2006 Pension Motion,
the Debtors' prior several requests for authority to make pension plan contributions and the
issues raised thereby and discussed this matter with Capstone. Stroock has expended 4.5 hours
on this category for the fee of $2,587.50.

### Environmental Matters/Regulations/Litigations -- Category 0022

37.     During this Compensation Period, the Debtors sought approval of a proposed
stipulation with the Port Authority of New York and New Jersey (the "Port Authority"), which
settled a filed claim asserting a $1.4 million general unsecured claim, plus future costs associated
with environmental contamination at certain property purchased from a former subsidiary of
Grace. Stroock reviewed the initial draft of the stipulation circulated and the Port Authority's
proof of claim, prepared information requests and exchanged multiple memoranda with Debtors'
counsel on this matter and requested modifications be made to the draft stipulation, and as
reflected elsewhere in the Compensation Application, prepared a memorandum to the Committee
discussing this proposed settlement as modified and filed with the Court.

38.     In addition, during this Compensation Period, the Debtors circulated to Stroock a
proposed stipulation and fact sheet with respect to the proposed settlement of an unsecured claim

14

filed by CHL Administration for past and future remediation costs on property which Grace formerly owned and operated a business on. Stroock reviewed the draft stipulation, the term sheet and CHL's proof of claim, prepared memoranda of comments and questions for the Debtors, and requested modifications to the stipulation. Stroock attended to the responses received from Debtors' counsel and the revised stipulation and discussed remaining open points and comments with Debtors' counsel.

39.    Further, Stroock reviewed the decision issued against defendant Grace and individual defendants by the Montana Court District denying the defendants' motions to dismiss certain counts of the criminal complaint filed against them by the United States Department of Justice in the Government's Libby Litigation. Stroock has expended 22.2 hours on this category for a fee of $12,937.00.

### Insurance – Category 0028

40.    During this Compensation Period, the Debtors informed Stroock that they had negotiated a settlement with underwriters at Lloyds, London ("Lloyds") with respect to certain policies of insurance and prior insurance-related agreements, pursuant to which settlement $90.0 million would be paid into an escrow account and thereafter to the Debtors or as provided for in a confirmed reorganization plan. Stroock reviewed the term sheet, the memorandum on the settlement, the draft settlement agreement and other materials provided by the Debtors and prepared a memorandum of open points and comments. In addition, Stroock had a number of conference calls with Debtors' representatives, Navigant and Capstone, to discuss the terms of the settlement and reviewed case law relevant to the Committee's assessment of the benefits of the settlement. Stroock has expended 46.6 hours on this category for a fee of $27,452.50.

15

### Investigation – Category 0031

41.     At the beginning of this Compensation Period, Montana District Court Judge

Molloy issued a decision in the Government's Libby Litigation denying defendants' motion to

transfer the Litigation to another venue.  Stroock reviewed Judge Molloy's decision and selected

portions of the order issued later in this Compensation Period ruling on the defendants' motions

to dismiss certain counts of the criminal complaint.  Stroock has expended 1.9 hours on this

category for a fee of $1,152.50.

### Litigation and Litigation Consulting – Category 0032

42.     As reported in prior compensation applications, the New Jersey Department of

Environmental Protection ("NJDEP") commenced a civil action (the "Action") in New Jersey

State Court (the "State Court") against Grace and two individual defendants in connection with

Grace's former vermiculite processing plant in Hamilton, New Jersey (the "Hamilton Plant").

Thereafter, the Debtors filed with the Court a motion seeking to enjoin the Action and a related

complaint seeking declaratory and injunctive relief, and filed with the United States District

Court for the District of New Jersey a related notice removing the Action to the District Court.

During this Compensation Period, Stroock reviewed a recent decision issued by the Ninth Circuit

Court of Appeals on removal of a government action for civil penalties.  Stroock has expended

0.6 hours on this category for a fee of $345.00.

### Travel – Non Working -- Category 0035

43.     Stroock's fees in this category during this Compensation Period relate to one

attorney traveling back to New York from a hearing before Judge Fitzgerald on February 21,

16

2006 in Wilmington, Delaware.  Stroock has expended 1.5 hours on this category for a fee of $1,237.50.

### Plan and Disclosure Statement -- Category 0036

44.     During the February 21, 2006 omnibus hearing, Judge Fitzgerald extended the Debtors' exclusive period to file a plan through the April 17, 2006 omnibus hearing and stated that the Court would promptly appoint a mediator/facilitator to assist the parties with plan negotiations; either a specific individual that the parties could agree on, or, in the absence of agreement, an individual chosen by the Court.  Stroock attended to the numerous memoranda to all parties which followed setting forth suggestions for individuals to be considered as the plan mediator, reviewed the biographical materials on each such individual, provided these materials to the Committee and communicated to all parties the Committee's initial candidate for the position and the Committee's position on the other candidates under consideration, and participated on several conference calls with representatives for all parties to discuss the candidates.  Following the parties agreement on Judge Sam Pointer and his appointment by the Court, Stroock had an extended call with Judge Pointer to discuss the issues in these cases from the Committee's perspective and then attended the initial mediation session that took place over a two-day period in March 2006.

45.     In addition, during this Compensation Period, Stroock engaged the Debtors' representatives in multiple discussions with respect to plan negotiations and the treatment of unsecured claims, the Committee's position on continuing as a co-proponent of the Amended Plan, attended to the modified plan proposal outline and the settlement offer forwarded by the Debtors and an updated plan-related analysis prepared by Capstone, and discussed these

17

materials with the Committee and Capstone. Stroock expended 63.9 hours on this category for a fee of $42,030.00.

### Hearings -- Category 0037

46.     During this Compensation Period, Judge Fitzgerald held three omnibus hearings in Wilmington, Delaware and held hearings over three days in Pittsburgh, Pennsylvania to address certain PD Claims-related matters. Stroock reviewed all relevant pleadings, orders, stipulations and other documentation in advance of the hearings, which as described in this Application addressed a variety of motions and issues, prepared for and attended the hearings, sometimes by telephone, and advocated the Committee's positions, as appropriate. After the hearings, Stroock, as reflected elsewhere in the Compensation Application, prepared memoranda informing the Committee of the results of the hearings. Stroock expended 27.2 hours on this category for a fee of $16,794.50.

### Employment Applications – Others -- Category 0040

47.     As reflected in the Prior Compensation Application, the Debtors had filed a motion seeking approval to retain Bear Stearns & Co., Inc. ("Bear Stearns") as their financial advisor in connection with an acquisition the Debtors were exploring (the "Motion"). Stroock communicated the terms of the retention to the Committee and the Committee determined to oppose the Motion if the proposed compensation arrangements were not modified in a manner the Committee believed acceptable. Stroock and Capstone engaged Debtors' counsel and Bear Stearns in discussions and ultimately, Bear Stearns and the Debtors agreed to a modification acceptable to the Committee. The U.S. Trustee raised objections to the Motion.

18

48.     During this Compensation Period, the Debtors circulated revised competing forms of order reflecting the differing positions of the Debtors and the U.S. Trustee and a related certificate of counsel. Stroock reviewed the proposed competing forms of order and the certification of counsel and exchanged memoranda with the U.S. Trustee and the Debtors providing suggested additional modifications to those documents.

49.     In addition, during this Compensation Period, the Debtors filed a number of motions seeking in some instances to enlarge the scope of the retention of certain professionals already approved to render services for the Debtors and in one instance to retain additional professionals. Stroock reviewed each of the motions and related pleadings, forwarded questions and comments on the proposed retentions to Debtors' counsel and discussed these matters with Debtors' counsel, as appropriate. Stroock expended 13.2 hours on this category for a fee of $7,975 .00.

### Relief from Stay Proceedings – Category 0041

50.     During the prior compensation period movant, BDM Construction Company ("BDM"), filed a motion seeking relief from the stay so that it could prosecute the cross-complaint BDM filed against the Debtors, and liquidate and satisfy its claim against the Debtors from Debtors' available insurance policies. During this Compensation Period, Stroock reviewed the motion, Debtors' pleading in opposition, and BDM's reply. Stroock expended 1.9 hours on this category for a fee of $1,115,00.

### FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

51.     The factors to be considered in awarding attorneys fees have been enumerated in In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), reh'g denied, 547

19

F.2d 573, cert. denied, 431 U.S. 904; these standards have been adopted by most courts. Stroock

respectfully submits that a consideration of these factors should result in this Court's allowance

of the full compensation sought.

> The Time and Labor Required. The professional services rendered by
> Stroock on behalf of the Committee have required the expenditure of
> substantial time and effort, as well as a high degree of professional
> competence and expertise, in order to deal with the complex issues
> encountered by the Committee with skill and dispatch. Occasionally,
> Stroock has been required to perform these services under significant time
> constraints requiring work late into the evening and on weekends. The
> services rendered by Stroock were performed efficiently, effectively and
> economically.

> The Novelty and Difficulty of Questions. Novel and complex issues have
> already arisen in the course of these Chapter 11 cases, and it can be
> anticipated that other such issues will be encountered. In this case, as in
> many others in which the firm is involved, Stroock's effective advocacy
> and creative approach have helped clarify and resolve such issues and will
> continue to prove beneficial.

> The Skill Requisite to Perform the Legal Services Properly. Stroock
> believes that its recognized expertise in the area of corporate
> reorganization, its ability to draw from highly experienced professionals in

20

other areas of Stroock's practice, and its creative approach to the resolution of issues, are and will continue to contribute to the maximization of the distributions to the Debtors' unsecured creditors.

The Preclusion of Other Employment by Applicant Due to Acceptance of the Case. Due to the size of Stroock's insolvency department, Stroock's representation of the Committee has not precluded its acceptance of new clients. However, the volume of the matters needing attention on a continuing basis has required several of the attorneys to commit significant portions of their time to these cases.

The Customary Fee. The fee sought herein is based upon Stroock's normal hourly rates for services of this kind. Stroock respectfully submits that the fee sought herein is not unusual given the magnitude and complexity of these cases and the time expended in attending to the representation of the Committee, and is commensurate with fees Stroock has been awarded in other cases, as well as with fees charged by other attorneys of comparable experience.

Whether the Fee is Fixed or Contingent. Pursuant to §§ 330 and 331 of the Bankruptcy Code, all fees sought by professionals employed under § 1103 of the Code are contingent pending final approval by this Court, and are subject to adjustment dependent upon the services rendered and the results obtained.

21

Time Limitations Imposed by Client or Other Circumstances.  As already indicated, Stroock has attended to the various issues arising in these cases. Occasionally, Stroock has had to perform those services under significant time constraints requiring attorneys assigned to these cases to work evenings and on weekends.

The Amount Involved and Results Obtained.  Through the efforts of Stroock, the Committee has been an active participant in these Chapter 11 cases from the very first days of its formation, and its assistance, as well as constructive criticism, has greatly contributed to the efficient administration of these cases.

The Experience, Reputation and Ability of the Attorneys.  Stroock has one of the largest and most sophisticated insolvency practices in the nation and has played a major role in numerous cases of national import including: Acme Metals, Inc., Hillsborough Holdings Corporation, Laclede Steel Company, Gulf States Steel, Inc. of Alabama, The LTV Corporation, Wheeling-Pittsburgh Steel Corporation, Allis-Chalmers Corporation, The Charter Company, Federated Department Stores, G. Heileman Brewing Company, Inc., Burlington Motor Holdings, Inc., Metallurg, Inc., Forstmann & Company, Inc., Barneys, Inc., Fruehauf Trailer Corporation, Levitz Furniture Incorporated, The Columbia Gas System, Inc., JWP, Inc., Flushing Hospital and Medical Center, Planet Hollywood International, Anchor Glass Container Corporation, Beloit Corporation in the

22

Harnischfeger Industries Chapter 11 Cases, RSL COM U.S.A. Inc, USG
Corporation, Formica Corp. Galey & Lord, Inc. and DESA Holdings.
Stroock's experience enables it to perform the services described herein
competently and expeditiously.  In addition to its expertise in the area of
corporate reorganization, Stroock has already frequently called upon the
expertise of its partners and associates in the litigation, ERISA, tax,
environmental and intellectual property law areas to perform the wide
ranging scope of the legal work necessitated by these cases.

The "Undesirability" of the Case.  These cases are not undesirable, but as
already indicated, have required a significant commitment of time from
several of the attorneys assigned hereto.

Nature and Length of Professional Relationship.  As described above,
Stroock has been actively rendering services on behalf of the Committee
as necessary and appropriate from April 12, 2001 through to the present.

## ALLOWANCE OF COMPENSATION

52.    The professional services rendered by Stroock required a high degree of
professional competence and expertise so that the numerous issues requiring evaluation and
determination by the Committee could be addressed with skill and dispatch and have, therefore,
required the expenditure of substantial time and effort.  It is respectfully submitted that the
services rendered to the Committee were performed efficiently, effectively and economically,
and the results obtained to date have benefitted the Debtors' unsecured creditor body as a whole
and the Debtors' estates.

23

53.     With respect to the level of compensation, § 330 of the Bankruptcy Code

provides, in pertinent part, that the Court may award to a professional person (including

attorneys for a creditors' committee): "Reasonable compensation for actual necessary services

rendered by [such] . . . professional person. 11 U.S.C. § 330. Section 330 further states that the

court should take into consideration, inter alia, the nature, extent, and value of services

performed, as well as the cost of comparable services other than in a case under this title. Id.

The clear Congressional intent and policy expressed in this statute is to provide for adequate

compensation in order to continue to attract qualified and competent bankruptcy practitioners to

bankruptcy cases.

54.     The total time spent by Stroock attorneys and paraprofessionals during the

Compensation Period for which Stroock seeks payment was 651.4 hours. Such services have a

fair market value of $323,566.25. The work involved, and thus the time expended, was carefully

assigned in light of the experience and expertise required for a particular task.

55.     As shown by this Application and supporting documents, Applicant spent its time

economically and without unnecessary duplication of time. Attached hereto as Exhibit "C" are

summaries of the hours expended by the attorneys and paraprofessionals during the

Compensation Period, their normal hourly rates, and the value of their services.

56.     In addition, Stroock incurred actual out-of-pocket expenses in connection with the

rendition of the professional services to the Committee in the sum of $5,758.28 for which

Stroock respectfully requests reimbursement in full. The disbursements and expenses have been

incurred in accordance with Stroock's normal practice of charging clients for expenses clearly

24

related to and required by particular matters. Such expenses were often incurred to enable Stroock to devote time beyond normal office hours to matters, which imposed extraordinary time demands. Stroock has endeavored to minimize these expenses to the fullest extent possible.

57.     Stroock's billing rates do not include charges for photocopying, telephone and telecopier toll charges, computerized research, travel expenses, "working meals", secretarial overtime, postage and certain other office services, because the needs of each client for such services differ. Stroock believes that it is fairest to charge each client only for the services actually used in performing services for it. Stroock has endeavored to minimize these expenses to the fullest extent possible.

58.     Stroock charges $.10 per page for in-house photocopying services, with respect to computerized research services Stroock charges the actual cost from the vendor, and $1.00 per page for out-going facsimile transmissions. Stroock does not charge for incoming facsimiles.

59.     Further, in accordance with the Court's June 22, 2001 Order Authorizing the Retention of Experts, this Application seeks payment for the fees and expenses of Navigant, the asbestos issues expert engaged by the Committee, in the aggregate amount of $65,934.08, for the services rendered on behalf of the Committee in the months of January through March of 2006. No agreement or understanding exists between Stroock and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

60.     Stroock has reviewed the requirements set forth in Delaware Local Rule 2016-2, entitled "Motion for Compensation and Reimbursement of Expenses," and believes that this

25

application for interim compensation and reimbursement of expenses is fully in compliance with the rules set forth therein.

61.    No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period other than as set forth herein.

**WHEREFORE,** Stroock respectfully requests, pursuant to the Administrative Fee Order and the Court's June 22, 2001 Order Authorizing the Retention of Experts:

> the allowance of compensation for professional services rendered to the Committee during the period from January 1, 2006 through and including March 31, 2006 in the amount of $323,566.25,
>
>> the reimbursement of Stroock's out-of-pocket expenses incurred in connection with the rendering of such services during the period from January 1, 2006 through and including March 31, 2006 in the amount of $5,758.28; the payment of the fees and expenses of the asbestos issues expert employed by the Committee for the months of January, February and March 2006 in the aggregate amount of $65,934.08; authorizing and directing the Debtors to pay to Stroock each of the amounts set forth in (a)

26

(b) and (c) of this WHEREFORE clause (to the extent not already paid

pursuant to the Administrative Fee Order); and granting such other and

further relief as this Court may deem just and proper.

Dated: New York, New York
May 23, 2006

STROOCK & STROOCK & LAVAN LLP

Lewis Kruger
Kenneth Pasquale
Members of the Firm
180 Maiden Lane
New York, New York 10038-4982
(212) 806-5400

Co-Counsel for the Official Committee of
Unsecured Creditors of W. R. Grace & Co., et al.

27