## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

### FEE AUDITOR'S FINAL REPORT REGARDING
### FEE APPLICATION OF BILZIN SUMBERG DUNN BAENA
### PRICE & AXELROD LLP FOR THE NINETEENTH INTERIM PERIOD

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Fee Application of Bilzin Sumberg Dunn Baena Price & Axelrod LLP for the Nineteenth Interim Period.

## BACKGROUND

1.      Bilzin Sumberg Dunn Baena Price & Axelrod LLP ("Bilzin") was retained as counsel to the Official Committee of Asbestos Property Damage Claimants.  In the Application, Bilzin seeks approval of fees totaling $1,106,101.75 and costs totaling $971,587.32 for its services from October 1, 2005, through December 31, 2005.

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued

January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the

United States Bankruptcy Court for the District of Delaware, the United States District Court for the

District of Delaware, and the Third Circuit Court of Appeals.  We served on Bilzin an initial report

based on our review, and received a response from Bilzin, portions of which response are quoted

herein.

## DISCUSSION

3.      In our initial report, we noted seven conference calls in which four or more firm

professionals participated.  (See Exhibit A.) We asked Bilzin to explain why it was necessary for

multiple professionals to participate in each of these calls.    Bilzin's response is provided as

Response Exhibit 1.  We appreciate the response and concur with Bilzin's proposal of a total

reduction in fees of $1,768.00 regarding these calls.

4.      We noted two meetings or hearings in which multiple professionals participated.  (See

Exhibit B.) In each instance, we asked the firm to explain why it was necessary for multiple

professionals to participate.  Bilzin's response is provided as Response Exhibit 2.  We appreciate the

response and concur with the firm's proposed reduction of $1,014.00 in fees regarding the meeting

of November 14, 2005.

5.      We noted that during the application period GG ($130), WR ($150) and AM ($130)

performed data entry.  (See Exhibit C.)  The total time spent was 169.40 hours for a total fee of

$22,294.00.  We have been consistent in recommending that clerical tasks be billed at no more than

$80.00 per hour.   In *in re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 855 n.34 (3rd Cir. 1994),

the Court stated that "the statute [11 U.S.C. 330] plainly specifies that the type of service performed

by a paralegal (including whether it is clerical) affects the <u>rate</u> of compensation, not compensability

vel non." Busy Beaver at 849.  In keeping with that opinion, we asked Bilzin to examine Exhibit C

and to show why time for these tasks should be billed at normal rates. Bilzin's response is provided

as Response Exhibit 3.   We appreciate the response, but note that we are unconvinced by the

argument that, "...the work performed by the paraprofessionals in many instances could have been

performed by higher-billing attorneys..."  We have no doubt that, when properly trained, attorneys

could run a photocopy machine, but that does not make such work billable at the attorneys' full

hourly rates.  Had attorneys rather than paraprofessionals performed the cited tasks, we would have

no choice but to recommend a substantial reduction in fees.  We are more persuaded by the argument

that these paraprofessionals performed "substantive analysis of the documents produced", and thus

we have no objection to these fees.  We ask Bilzin to ensure that, in future applications, its time

entries accurately reflect the work performed.

6.       We noted an expense entry for $150.00 for air conditioning.  The entry is provided

below.

Overtime Air Conditioning & Services                              $150.00

We asked Bilzin to explain why this expense should not be considered as part of normal firm

overhead.  Bilzin responded as follows:

> Bilzin Sumberg will reduce its expenses by $150.00.  The expense was inadvertently
> included in the bill.

We appreciate the response and thus recommend a reduction of $150.00 in expenses.

## CONCLUSION

7.       Thus we recommend approval of fees totaling $1,103,319.75 ($1,106,101.75 minus

$2,782.00) and costs totaling $971,437.32 ($971,587.32 minus $150.00) for Bilzin's services from

October 1, 2005, through December 31, 2005.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____
          Warren H. Smith
          Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 1275
Dallas, Texas 75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

       **FEE AUDITOR**


**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 30th day of May, 2006.


_____
          Warren H. Smith

# SERVICE LIST
## Notice Parties

### The Applicant

Scott L. Baena
Jay M. Sakalo
BILZIN SUMBERG DUNN BAENA
PRICE & AXELROD LLP
2500 First Union Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2385

### The Debtors

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

### Counsel for the Debtors

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones,
P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

### Counsel for the Official Committee of Unsecured Creditors

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

### Counsel to the Official Committee of Property Damage Claimants

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price &
Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

### Counsel to the Official Committee of Personal Injury Claimants

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE  19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

Exhibit A

1.  On October 6, 2005, four (4) firm members participated in a conference call.  The total time spent including any preparation time was 2.00 hours for a total fee of $747.50.  Please explain why this conference call required the participation of four (4) firm members?

| 10/06/05 | ASD | 0.50 | 160.00 | Attend Committee call (.5). |
| 10/06/05 | SLB | 0.50 | 287.50 | Committee meeting (.5). |
| 10/06/05 | JMS | 0.50 | 150.00 | Committee call. |
| 10/06/05 | MIK | 0.50 | 150.00 | Committee call. |

2.  On October 20, 2005, four (4) firm members participated in a conference call.  The total time spent including any preparation time was 3.60 hours for a total fee of $1,426.00.  Please explain why this conference call required the participation of four (4) firm members?

| 10/20/05 | ASD | 0.80 | 256.00 | Prepare for and attend committee call (.8). |
| 10/20/05 | SLB | 1.20 | 690.00 | Prepare for and attend committee meeting (1.2). |
| 10/20/05 | JMS | 0.80 | 240.00 | Committee call. |
| 10/20/05 | MIK | 0.80 | 240.00 | Committee call. |

3.  On October 27, 2005, six (6) firm members participated in a conference call.  The total time spent including any preparation time was 6.50 hours for a total fee of $2,382.50.  Please explain why this conference call required the participation of six (6) firm members?

| 10/27/05 | RMF | 1.00 | 340.00 | Attend committee conference call (1.0). |
| 10/27/05 | ASD | 1.00 | 320.00 | Prepare for and attend committee call (1.0). |
| 10/27/05 | SLB | 1.50 | 862.50 | Prepare for and attend committee meeting (1.5). |
| 10/27/05 | JMS | 1.00 | 300.00 | Committee call. |
| 10/27/05 | JCM | 1.00 | 260.00 | Attend Grace P.D. Committee conference call (1.0) |
| 10/27/05 | MIK | 1.00 | 300.00 | Committee call. |

4.  On November 3, 2005, five (5) firm members participated in a conference call.  The

total time spent including any preparation time was 7.00 hours[1] for a total fee of $2,573.00. Please explain why this conference call required the participation of five (5) firm members?

| 11/03/05 | ASD | 1.50 | 480.00 | Prepare for and attend committee call (1.5). |
| 11/03/05 | SLB | 3.00 | 1725.00 | ................; prepare for and convene committee meeting (1.8). |
| 11/03/05 | JMS | 1.40 | 420.00 | Prepare for and attend Committee call. |
| 11/03/05 | MIK | 1.00 | 300.00 | Committee call. |
| 11/03/05 | JCM | 9.50 | 2470.00 | ............; meeting with litigation team in preparation for P.D. Committee conference call (.3); participate in P.D. Committee conference call (1.0);............. |

     5.  On November 10, 2005, four (4) firm members participated in a conference call.  The total time spent including any preparation time was 3.30 hours[2] for a total fee of $1,422.00. Please explain why this conference call required the participation of four (4) firm members?

| 11/10/05 | ASD | 0.60 | 192.00 | Prepare for and attend committee call (.6). |
| 11/10/05 | SLB | 1.60 | 920.00 | Prepare for and attend committee meeting (1.6). |
| 11/10/05 | JMS | 0.60 | 180.00 | Committee call. |
| 11/10/05 | JCM | 9.50 | 2470.00 | ..........; attend Grace P. D. Committee telephone conference (.5);............ |

     6.  On November 17, 2005, four (4) firm members participated in a conference call.  The total time spent including any preparation time was 4.60 hours for a total fee of $1,694.00. Please explain why this conference call required the participation of four (4) firm members?

| 11/17/05 | ASD | 1.20 | 384.00 | Prepare for and attend conference call. |
| 11/17/05 | SLB | 1.60 | 920.00 | ..........; prepare for and telephone conference with PD committee (1.2);................ |

---

[1] Time for this entry was located in two (2) Project Categories - (i) Creditors Committee and (ii) Claims Analysis, Objection, Resolution & Estimation (asbestos).

[2] Time for this entry was located in two (2) Project Categories - (i) Creditors Committee and (ii) Claims Analysis, Objection, Resolution & Estimation (asbestos).

| 11/17/05 | JMS | 1.20 | 360.00 | Committee call. |
|---|---|---|---|---|
| 11/17/05 | JCM | 1.00 | 260.00 | Grace P.D. Committee conference call (1.0). |

7.  On November 8, 2005, four (4) firm members participated in a conference call.  The total time spent including any preparation time was 10.50 hours[3] for a total fee of $3,647.50. Please explain why this conference call required the participation of four (4) firm members?

| 11/08/05 | SLB | 2.50 | 1437.50 | Telephone conference with Judge Fitzgerald regarding ZAI, telephone call from M. Dies and telephone call from D. Scott memo to committee regarding same (2.5). |
|---|---|---|---|---|
| 11/08/05 | JCM | 9.00 | 2340.00 | ..........; conference call with Court and conference with S. Baena regarding same and draft email memorandum to P.D. Committee (5.5). |
| 11/08/05 | ASD | 2.20 | 704.00 | Prepare for and attend conference with Judge regarding ZAI status (1.5);............ |
| 11/08/05 | JMS | 1.00 | 300.00 | Status conference with Court. |

---

[3] Time for this entry was located in three (3) Project Categories - (i) Claims Analysis, Objection, Resolution & Estimation (asbestos), (ii) Litigation Consulting and (iii) ZAI Science Trial.

Exhibit B

1.  On October 11, 2005, MAM, ASD and WR attended a meeting.  The total time spent including any preparation time was 4.10 hours for a total fee of $1,214.50.  Please explain why this meeting required the attendance of three (3) firm members?

| 10/11/05 | ASD | 10.10 | 3232.00 | ...............; interoffice conference with Mindy Mora, Alicia Ortiz and Wanda Roman regarding discovery issues (1.1);............. |
| 10/11/05 | MAM | 1.50 | 637.50 | Prepare for and attend meeting regarding discovery plan with W. Roman, A. Ortiz and A. Danzeisen. |
| 10/11/05 | WR | 1.50 | 225.00 | Meeting regarding managing of discovery documents. |

2.  On November 14, 2005, six (6) firm members attended a hearing.

| 11/14/05 | ASD | 8.40 | 2688.00 | Prepare for and attend hearing on estimation issues (8.4). |
| 11/14/05 | SLB | 8.40 | 4830.00 | Prepare for hearing and confer with Hass et al (3.9); court appearance regarding various matters (4.5). |
| 11/14/05 | JMS | 8.40 | 2520.00 | Prepare for and attend hearing; including client conferences thereon, and follow up conferences with S. Baena. |
| 11/14/05 | JCM | 3.90 | 1014.00 | Monitor omnibus hearing (3.9). |
| 11/14/05 | MIK | 5.00 | 1500.00 | Partially attend hearing via phone. |
| 11/04/05 | ASD | 0.90 | 288.00 | .........; review and respond to various emails regarding preparation for hearing (.3). |
| 11/04/05 | SLB | 3.50 | 2012.50 | ...........; telephone conference with M. Dies regarding preparation for 11/14 hearing (.5);...........; conference with R. Fernandez regarding 11/14 hearing (.7); emails to and from M. Dies regarding 11/14 arguments (.3); emails regarding demonstrative exhibits (.5). |
| 11/07/05 | ASD | 12.90 | 4128.00 | Begin preparation for hearing on Phase I hearing |

| | | | | |
|---|---|---|---|---|
| | | | | issues (8.7);............... |
| 11/07/05 | SLB | 6.50 | 3737.50 | Prepare for 11/14 hearing including review of decisional law, telephone conference with M. Dies, interoffice conference with R. Fernandez and A. Danzeisen, organization of arguments (5.7);........... |
| 11/08/05 | SLB | 7.00 | 4025.00 | Prepare for 11/14 hearing, including organization of argument, review of decisional law, conference with A. Danzeisen and R. Fernandez, email to D. Speights, two telephone conferences with M. Dies (6.3);............... |
| 11/09/05 | ASD | 10.10 | 3232.00 | ........; continue preparation for estimation hearing (4.7); interoffice conference with Scott Beana regarding charts and telephone conference with experts regarding same (.3); interoffice conference with paralegals regarding estimation hearing and document production (.8). |
| 11/09/05 | SLB | 6.40 | 3680.00 | ..............; continued preparation for 11/14 hearing (3.3). |
| 11/09/05 | JCM | 7.00 | 1820.00 | ...........; research related to hearing on November 14 (1.0). |
| 11/10/05 | ASD | 13.80 | 4416.00 | ..............; preparation for estimation issues on Omnibus Hearing including several conferences with Scott Baena (7.9). |
| 11/10/05 | SLB | 7.90 | 4542.50 | Continued preparation for 11/14 hearing including research review of decisional law, telephone conference with M. Dies, emails to and from M. Dies, D. Speights, T. Brandt, organization of demonstratives and handouts (7.9). |
| 11/10/05 | JMS | 4.50 | 1350.00 | Multiple conferences with S. Baena regarding November 14 hearing and work on preparation for same, including telephone conferences with M. Dies thereon. |
| 11/11/05 | ASD | 11.10 | 3552.00 | Continue preparation for Omnibus Hearing including several conferences with Scott Beana |

|  |  |  |  | (8.7);............. |
|---|---|---|---|---|
| 11/11/05 | SLB | 8.50 | 4887.50 | ...........; continued preparation for 11/14 hearing including review of cases, review parties' briefs, preparation of demonstratives, organization of materials, packing of shipping boxes of hearing materials, telephone conference with M. Dies (7.3). |
| 11/11/05 | JMS | 7.80 | 2340.00 | .........; work on preparation for November 14 hearing (4.2);............ |
| 11/12/05 | ASD | 2.80 | 896.00 | Continue preparation for hearing on constructive notice issues. |
| 11/13/05 | ASD | 9.80 | 3136.00 | Continue preparation for hearing on constructive notice and methodology issues including meeting with Scott Baena, Jay Sakalo and Martin Dies. |
| 11/13/05 | SLB | 10.50 | 6037.50 | Prepare for 11/14 hearing (10.5). |
| 11/13/05 | JMS | 7.50 | 2250.00 | Prepare for hearing on Phase I issues. |
| 11/14/05 | RMF | 1.20 | 408.00 | Attend telephonically portion of hearing relating to constructive notice (.8);............... |
| 11/13/05 | ASD | 1.00 | 320.00 | Travel to Delaware for hearing (2.0 hrs.) |
| 11/13/05 | SLB | 1.00 | 575.00 | Travel to Wilmington (2.0 hrs.) |
| 11/13/05 | JMS | 1.00 | 300.00 | Non-working travel to Delaware (2.0 hrs.) |
| 11/14/05 | ASD | 2.00 | 640.00 | Return travel to Miami from Delaware hearing (4.0 hrs.). |
| 11/14/05 | SLB | 2.00 | 1150.00 | Return to Miami (4.0 hrs.) |
| 11/14/05 | JMS | 2.00 | 600.00 | Return travel to Miami (4.0 hrs.) (non-working). |

Exhibit C

| 11/17/05 | GG | 5.70 | 741.00 | Data entry of property damage insurance claim files (4.0);........... |
| 11/18/05 | WR | 3.00 | 450.00 | Input property damage insurance claim files data into master database. |
| 11/18/05 | GG | 6.10 | 793.00 | Data entry of property damage insurance claims files (4.5);........... |
| 11/20/05 | GG | 7.00 | 910.00 | Data entry of property damage insurance claims files (7.0) |
| 11/21/05 | AM | 6.50 | 845.00 | Review and data entry of property damage insurance claim files (6.5). |
| 11/21/05 | GG | 4.10 | 533.00 | Data entry of property damage insurance claims files (3.8);............. |
| 11/22/05 | AM | 7.50 | 975.00 | Review and data entry of property damage insurance claim files (7.5). |
| 11/22/05 | GG | 6.10 | 793.00 | Data entry of property damage insurance claims files (5.5);............. |
| 11/23/05 | AM | 7.50 | 975.00 | Review and data entry of property damage insurance claim files (7.5). |
| 11/23/05 | GG | 4.70 | 611.00 | Data entry of property damage insurance claims files and various short meetings with regard to electronic indexing issues (4.7). |
| 11/28/05 | GG | 4.40 | 572.00 | Data entry of property damage insurance claims files (3.9);............. |
| 11/29/05 | AM | 7.00 | 910.00 | Review and data entry of property damage insurance claim files (7.0). |
| 11/29/05 | WR | 4.00 | 600.00 | Review PD insurance claims files and input pertinent information into master database |
| 11/29/05 | GG | 7.50 | 975.00 | Data entry of property damage insurance claims |

files (4.3);.............

| | | | | |
|---|---|---|---|---|
| 11/30/05 | WR | 4.60 | 690.00 | Review property damage insurance claims files and input pertinent information into master database |
| 11/30/05 | WR | 2.00 | 300.00 | Data entry of pertinent PD insurance claim files information into master database |
| 11/30/05 | GG | 5.80 | 754.00 | .............; data entry of property damage insurance claims files (3.0). |
| 12/01/05 | GG | 5.50 | 715.00 | ;Data entry of property damage insurance claims files (4.5) |
| 12/02/05 | GG | 6.00 | 780.00 | Data entry of property damage insurance claims files (5.2) |
| 12/04/05 | GG | 4.50 | 585.00 | Data entry of property damage insurance claims files (4.5) |
| 12/05/05 | GG | 2.30 | 299.00 | ;data entry of property damage insurance claims files (1.6) |
| 12/06/05 | GG | 6.10 | 793.00 | ;data entry of property damage insurance claims files (5.7) |
| 12/07/05 | GG | 5.50 | 715.00 | Data entry of property damage insurance claims files (5.5) |
| 12/08/05 | GG | 5.80 | 754.00 | Data entry of property damage insurance claims files (5.0) |
| 12/09/05 | GG | 3.60 | 468.00 | Data entry of property damage insurance claims files (3.6) |
| 12/11/05 | GG | 2.90 | 377.00 | Data entry of property damage insurance claims files (2.9) |
| 12/12/05 | GG | 4.10 | 533.00 | Data entry of property damage insurance claims files (2.6) |
| 12/13/05 | GG | 6.30 | 819.00 | Data entry of property damage insurance claims files (1.4); |

| | | | | |
|---|---|---|---|---|
| 12/19/05 | GG | 6.40 | 832.00 | Data entry of property damage insurance claims files (3.5) |
| 12/20/05 | GG | 6.30 | 819.00 | Data entry of property damage insurance claims files (4.1); |
| 12/22/05 | GG | 5.00 | 650.00 | Data entry of property damage insurance claims files (3.0) |
| 12/27/05 | GG | 3.40 | 442.00 | Data entry of property damage insurance claims files (3.4) |
| 12/28/05 | GG | 3.90 | 507.00 | Data entry of property damage insurance claims files and distribution of files to attorneys (3.9) |
| 12/30/05 | GG | 5.80 | 754.00 | Data entry of property damage insurance claims files (5.8) |

Response Exhibit 1

The Fee Auditor requests an explanation regarding the participation of multiple Bilzin Sumberg professionals on seven conference calls.   Each of the conference calls in question, except for the November 8, 2005 call, was a telephonic meeting of the PD Committee that occurred during a critical stage in these cases.

First, we believe some background is helpful.  As the Fee Auditor is likely now aware, the estimation of property damage claims (the "PD Estimation") is one of the most critical aspects of the PD Committee's function at this stage in these cases, recognizing the current abatement in effect due to the ongoing plan mediation.  The task of estimating thousands of filed property damage claims is unprecedented and necessitates a full-time team devoted to the host of issues that must be addressed for the PD Committee to properly estimate the claims.  As an example of this task's complexity, the Debtors seek to reduce their liability owing to these claimants based on such purported defenses as (a) constructive notice; (b) actual notice; (c) assumption of risk; and (d) lack of hazard of Debtors' asbestos products.

In addition, and more germane to the conference calls in question, as part of the Court's August 29, 2005 case management order governing the PD Estimation, the Debtors sought a ruling that the Court should conduct a "Phase I" hearing on the proper methodology – air sampling versus dust sampling – to determine hazard.  In addition, the Debtors sought a ruling that the Court should find a date that PD claimants should have had constructive notice of their claims against the Debtors. As part of the CMO, the Court ruled that the PD Committee was authorized to file briefs in opposition to the inclusion of a methodology hearing and a constructive notice hearing as part of the PD Estimation.  Accordingly, Bilzin Sumberg assembled two different "teams" of attorneys to work on the distinct issues.  Each team was comprised of a bankruptcy attorney with experience in the Debtors' cases and a litigation attorney to assist with the research and brief writing.  Bilzin Sumberg also availed itself of the substantial expertise and knowledge of the PD Committee members.

With that background, set forth below is Bilzin Sumberg's response to the particular Committee calls in question:

October 6, 2005 – Committee Call

As the Fee Auditor knows, Scott Baena (SLB) is the partner in charge of supervising all aspects of these cases and Jay Sakalo (JMS) has primary responsibility for most of the day-to-day functions of the PD Committee.  Thus, their participation on all of the calls was necessary.  During the call in question, SLB and JMS provided an update to the Committee regarding the pending schedule under the Court's CMO on the PD Estimation and discussed with the Committee its participation in the process.  Matt Kramer (MIK) updated the Committee on matters related to the PD Estimation methodology issue and Allyn Danzeisen (ASD) outlined a number of issues raised by the Debtors' 15th Omnibus Objection to PD claims, which launched objections to virtually every PD claim filed in these cases.  Each participant was necessary as there were multiple topics to be

addressed and different professionals had responsibility for each topic.  As the call was brief in length, it was most efficient to have the particular professional on the call, rather than to transmit the information between professionals in advance of the call, discuss the information with the Committee and then re-transmitted the response back to the other professional.

October 20, 2005 – Committee Call

During this Committee meeting, JMS provided a further update to the Committee on upcoming deadlines and assistance needed from the Committee in respect of the PD Estimation. SLB and MIK led a discussion of the Committee regarding the briefing on the PD Estimation issues. ASD continued the discussion from the October 6 meeting regarding the Debtors' 15th Omnibus Objection.  Again, each participant was necessary as there were multiple topics to be addressed and different professionals had responsibility for each topic.  As the call was brief in length, it was most efficient to have the particular professional on the call, rather than to transmit the information between professionals in advance of the call, discuss the information with the Committee and then re-transmitted the response back to the other professional.

October 27, 2005 – Committee Call

This was the last Committee call prior to the response deadline for the Committee's brief in opposition to the inclusion of a "constructive notice" component as part of Phase I of the PD Estimation.  As a result, there were a myriad of issues and concerns to be addressed with the Committee.  Raquel Fernandez (RMF), the litigation partner who was principally in charge of the drafting the brief in opposition, participated on the call to lead the discussion of discrete legal issues that comprised parts of the brief.  SLB and JMS updated the Committee on a number of other pending matters, including those in respect of the estimation of personal injury claims, a recap of the omnibus hearing from the prior week and the matters to be addressed at the upcoming omnibus hearing.  ASD provided a further update on the responses to the 15th Omnibus Objection.  MIK and James Moon (JCM) were heavily involved in the research and preliminary drafting of the constructive notice opposition brief and, thus, participated to obtain the benefits of the Committee's views.  Notwithstanding the importance of their participation to the drafting process, we will agree to a reduction for their time of $560.00.

November 3, 2005 – Committee Call

During this call, SLB and MIK provided the Committee with a report on the Debtors' response to the Committee's brief opposing a methodology component of Phase I.  SLB provided an overall view of the disparate positions and MIK provided detail regarding the points raised by the Debtors.  JMS provided the Committee with a report on a proposed scheduling order on the Debtors' 15th Omnibus Objection, including the procedural issues implicated by the proposal.  SLB and ASD provided the Committee with a report of the Debtors' objections in respect of claims filed by the law firm of Speights & Runyan.  SLB provided an overall view on the objections and ASD addressed certain of the specifics.  We will agree to a reduction of JCM's time for his participation on the call

and preparation therefor in the amount of $338.00.

        November 10, 2005 – Committee Call

        During this call, SLB and JMS provided the Committee with an update on the telephonic ZAI status conference held on November 8, 2005.  ASD provided the Committee with a report on the Debtors' motion for a bar date for PI claims that was scheduled to be heard at the next omnibus hearing.  We will agree to a reduction of JCM's time for his participation on the call in the amount of $130.00.

        November 17, 2005 – Committee Call

        This was a Committee call held after the November 14, 2005 omnibus hearing in which the Court made its determination regarding the scope of Phase I of the PD Estimation.  SLB provided the Committee with a detailed report of the hearing and the Court's rulings.  JMS reviewed with the Committee the Court's rulings in respect of the scheduling order on the 15th Omnibus Objection. ASD also discussed certain of the Court's rulings on that issue and the effect it could have on claimants going forward.  We will agree to a reduction of JCM's time for his participation on the call in the amount of $260.00.

        November 8, 2005 – Telephonic Status Conference on ZAI Science Trial

        First, the Fee Auditor refers to total fees of $3,647.50; however, by our calculation, only $1,615 in total fees are at issue with respect to multiple participants on the call.  Second, this call was a telephonic status conference convened by Judge Fitzgerald to discuss matters related to the Court's ruling in respect of the ZAI science trial.   SLB and JMS regularly attend all Court hearings/conferences that implicate property damage issues and, thus, their participation was necessary and consistent with past practice in order for them to acquit their fiduciary duties to the Committee.  JCM participated in order to take as detailed notes as possible due to the conference being held without the benefit of a court reporter and the Committee's request to obtain the most detailed accounting of the back and forth as possible.  We will agree to a reduction of ASD's time for her participation on the call in the amount of $480.00.

Response Exhibit 2

The Fee Auditor requests an explanation regarding the participation of multiple Bilzin Sumberg professionals at a meeting or hearing, as set forth on Exhibit B to the Report.

October 11, 2005

This was a meeting that included ASD, Mindy Mora (MAM), a partner in Bilzin Sumberg's restructuring group and Wanda Roman (WR), a paralegal in the same group. The focus of the meeting centered on the handling, review and analysis of the multitude of CD-ROMs received from the Debtors in response to the PD Committee's informal discovery requests in the PD Estimation. The Debtors produced in excess of 12 CDs (comprising over 35,000 pages of information). MAM and ASD were tasked with controlling the review and analysis of the discovery and WR was tasked as the paralegal in charge of maintaining control and preservation of the production and review. This meeting was the initial meeting to plan and allocate work projects related to the discovery. Accordingly, given the magnitude of the documents to be reviewed, we submit it was appropriate to have three professionals in charge of the project meet to launch the project in the right direction.

November 14, 2005

As discussed in detail in the responses to Paragraph 3, the November 14, 2005 hearing was the culmination of a critical step in the PD Estimation process – the determination of the scope of the Phase I issues. As a result of the substantial matters to be heard at the hearing, it was necessary to prepare extensively for the hearing and allocate responsibilities accordingly. SLB and JMS prepared the large part of the legal argument for the hearing and their participation was critical. ASD also helped prepare for those issues and also focused on the remaining matters scheduled to be heard that day. Thus, the attendance of all three attorneys at the hearing was critical and necessary. It is also worth noting that the Debtors had 7 attorneys in the courtroom for the hearing. JCM and MIK participated on the hearing by telephone in order to assist the Bilzin Sumberg attorneys in the courtroom in the event that certain matters arose that needed to be researched during the hearing. Notwithstanding the need to have those attorneys on the phone, we will agree to a reduction of JCM's attendance by telephone in the amount of $1014.00.

Response Exhibit 3

The Fee Auditor questions why time spent by certain paraprofessionals should not have been billed at reduced rates for "data entry work." The Fee Auditor understandably mistook the nature and scope of work performed by the three paraprofessionals at issue in these time entries. The majority of the entries do in fact state that they were for "data entry," however; upon closer analysis the work performed was substantive legal work that was properly performed by paraprofessionals at their full billing rate. As explained above in response to Paragraph 4, the Debtors produced in excess of 35,000 pages of documents related to historical insurance settlements that they reached with their various insurers. The paraprofessionals were instrumental in performing the initial review and analysis of the documents in order to winnow down the number of documents that were necessary to be reviewed in greater detail by attorneys working on the matter. In reality there was no work that comprised "data entry". Indeed, the paraprofessionals reviewed the substance of the material terms of the relevant documents and created a database to facilitate the attorneys' further review. In fact, the work performed by the paraprofessionals in many instances could have been performed by higher-billing attorneys, but Bilzin Sumberg attempted to be as cost-efficient as possible by utilizing paraprofessionals to reduce the cost. Thus, Bilzin Sumberg submits that such work was far more than just "data entry," but, rather, substantive analysis of the documents produced.