IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., et al. | Case No. 01-1139 (JKF) |
| | (Jointly Administered) |
| | Hearing Date: June 19, 2006 @ 2:00 p.m. |
| Debtors. | Related to Docket No. 12432 |

## THE FUTURE CLAIMANTS' REPRESENTATIVE'S OBJECTION TO THE MOTION OF DEBTORS FOR AN ORDER APPROVING THE SETTLEMENT AGREEMENT AND MUTUAL RELEASE WITH LLOYD'S UNDERWRITERS

David T. Austern, the Court-appointed legal representative for future asbestos claimants against the above-captioned Debtors (the "FCR"), by counsel, respectfully submits this objection to the motion of W.R. Grace & Co., et al. (the "Debtors") for an order approving a proposed settlement agreement and mutual release with Lloyd's Underwriters ("Lloyd's"), filed May 15, 2006 [Docket No. 12432] (the "Motion"). In support of his objection, the FCR states:

1.  On April 2, 2001, each of the Debtors filed a petition for relief under chapter 11 of the Bankruptcy Code. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors are continuing in the management of their respective businesses and possession of their respective properties as debtors-in-possession.

2.  By Order dated May 24, 2004, the Court appointed the FCR for these jointly administered cases [Docket No. 5645].

### Joinder In the PI Committee's Objection

3. The FCR joins in the grounds for objection stated in the Objection of the Official Committee of Asbestos Personal Injury Claimants to the Motion of Debtors for an Order Approving the Settlement Agreement and Mutual Release with Lloyd's Underwriters [Docket No. 12432] (the "PI Committee's Objection"). The FCR shares the concerns articulated in that Objection, including that the "premises liability" coverages provided by the policies at issue are being released (to the extent of Lloyd's participation) without adequate consideration. While the proposed settlement amount of $90 million may well constitute adequate consideration for the settlement and release of personal injury claims under the "products and completed operations" coverages of these policies, this amount does not justify the release of substantial additional premises coverages.[1]

### The FCR Objects to the Indemnification Obligations The Proposed Settlement Agreement Imposes Upon Any 524(g) Trust

4. The FCR is filing this separate pleading to emphasize his objection to the indemnification provision in the proposed settlement agreement. The proposed indemnification clause forces an extremely broad, unlimited indemnification obligation, in favor of Lloyd's, upon any trust created pursuant to section 524(g) of the Bankruptcy Code under any plan of reorganization confirmed in these cases. Burdening a § 524(g) trust with such obligations simply serves to deplete trust assets that are otherwise intended to compensate present and future asbestos claimants, and is unacceptable to the FCR.

---

[1] "Premises liability" coverage relates to exposure arising out of the Debtors' premises and business operations. "Products and completed operations" coverage relates to claims arising out of the use of or exposure to products manufactured, distributed or sold by the Debtors and operations by the Debtors which have been completed.

5.  The FCR notes that, in advance of filing the Motion, the Debtors provided his counsel with a version of the proposed settlement agreement executed by Lloyd's. Counsel raised numerous questions and concerns with the settlement. The Debtors addressed some of the FCR's concerns by modifications reflected in the revised settlement agreement attached to the Motion as Exhibit A;[2] the Debtors did not address or modify the proposed indemnification provision.

### The Indemnification Provisions of the Settlement Agreement

6.  Clause VI.A. of the proposed settlement agreement, entitled "Obligation to Indemnify," provides:

> Reorganized Debtors shall: (1) defend, indemnify and hold harmless Lloyd's Underwriters, including defense costs, in respect of any and all Claims against Lloyd's Underwriters relating to the Subject Policies, the 1995 London Agreement or any other agreement between the Parties relating to the Subject Policies that are not subject to the Injunctions; and (2) defend application of the Injunctions to all Claims against Lloyd's Underwriters subject to the Injunctions (collectively, the "Indemnified Claims"). The Indemnified Claims include all Claims, whether by way of direct action or otherwise, made by: (i) other insurers of Grace; (ii) any person or Entity claiming to be insured under the Subject Policies; (iii) any person or Entity who has made or will or can make a claim under the Subject Policies or the 1995 London Agreement; (iv) any person or Entity who has acquired or been assigned the right to make a claim under the Subject Policies or the 1995 London Agreement; or (v) any federal, state or local government or any political subdivision, agency, department, board or instrumentality thereof. The Parties acknowledge that this indemnification includes Claims made by any person or Entity over whom Grace does not have control, including former subsidiaries, predecessors in interest, and sellers or purchasers of assets.

---

[2] For example, the original form of settlement agreement appeared to provide that Lloyd's obligation to pay the $90 million settlement amount (or to release it from escrow) was conditioned upon, among other things, confirmation of the Debtors' plan, but Lloyd's obligation to pay would not be triggered by any other party's plan, even if such other plan contained the required protections for Lloyd's. That requirement has been largely modified so that it is possible that any proponent's plan now could satisfy the conditions set out in the proposed settlement agreement attached to the Motion. One vestige of this problem, however, remains in the proposed agreement: in Clause VII.B., Lloyd's agrees, after the proposed settlement is approved, not to object to or oppose confirmation of "Grace's" plan so long as it meets the criteria, rather than agreeing not to object to or oppose confirmation of "any" plan which meets the criteria.

3

7.   Clause VII.D. of the proposed settlement agreement, entitled "Trust as a Party," provides, in relevant part:

> Upon its creation, and without limiting the obligations of Grace under this Agreement, the Trust (i) automatically and without need for further action shall become a Party to this Agreement and shall be bound by all the obligations of Grace under this Agreement to the maximum extent possible; and (ii) promptly shall execute this Agreement. Grace shall include in the Trust Agreement as an obligation of the Trust, effective from its creation, that the Trust shall be subject to and bound by this Agreement and the Approval Order to the maximum extent possible.[3]

8.   As a result of these two provisions, the proposed settlement agreement imposes a broad, unlimited indemnification obligation directly upon any trust established pursuant to § 524(g) under any confirmed plan in these cases.

### The Scope of the Proposed Indemnification is Extremely Broad

9.   Under the proposed settlement agreement, the trust would be required to indemnify Lloyd's from all "Claims" – broadly defined – "relating to" the subject policies, including claims made by, among others, "any person or Entity who ... will or can make a claim under the Subject Policies." (Clause VI.A.(1).) The indemnification provision does not require that the claim actually be brought *under* the subject policies in order to be indemnified, or even that the claim be an asbestos-related claim,[4] only that the claim be one "relating to" the subject policies, whatever that means in this context.

---

[3]   The proposed settlement agreement defines "Grace" to include the "Reorganized Debtors." See Clause I.O. Thus, obligations of "Grace" imposed upon the trust by Clause VII.D. include the "Reorganized Debtors'" obligation to indemnify in Clause VI.A.

[4]   The indemnification provision includes claims relating to "any other agreement between the Parties relating to the Subject Policies that are not subject to the Injunctions." (Clause VI.A.(1).) Pre-petition, the Debtors entered into a settlement with Lloyd's of environmental claims arising under these policies. This additional language in the indemnification clause arguably forces the Trust to indemnify Lloyd's for environmental claims asserted against it, which claims, of course, cannot be the subject of a § 524(g) channeling injunction.

4

10. "Claim" is, of course, very broadly defined. See Clause I.H. Among other things, "Claim" includes a claim for "any alleged bad faith, conspiracy, unfair claim practice, unfair trade practice, fraud or misrepresentation, or extra-contractual or tort liability, under any theory of liability whatsoever." (Clause I.H.3.c.) This language is so broad that Lloyd's could argue that the Trust must indemnify Lloyd's against claims alleging Lloyd's own misconduct in violation of various state statutes, such as the so-called "Wise" and "Cashman" claims about which the Court heard so much in connection with the chapter 11 proceedings of Combustion Engineering, Inc. If such "Claims" were asserted by a person who "can" make a claim under the subject policies, Lloyd's would no doubt argue that such "Claims" "relate to" the policies, and thus tender the defense to the Trust and demand indemnification. That is a risk that no trust or future claimant should be forced to accept.[5]

### The Proposed Obligation to Indemnify is Unlimited

11. There are no limits on the proposed indemnification obligations of the trust -- the obligations are of unlimited duration and for an unlimited amount. The Debtors, as debtors-in-possession, and all other constituents in these cases, should be very concerned about adding the risks of such unlimited obligations to the those already to be borne by the Reorganized Debtors. For the Debtors and Lloyd's to demand that these risks also be borne directly by the trust is unreasonable. Section 524(g) trusts are

---

[5] The indemnification clause is even broader. It includes indemnification not only from claims of individuals but also from claims of entities "over whom Grace does not have control, including former subsidiaries, predecessors in interest, and sellers or purchasers of assets." (Clause VI.A.) Only Grace knows how many entities fit that description. It is worth noting that at least one entity -- The Scott's Company -- has appeared in these cases to assert that it has an interest under certain of the Debtors' other insurance policies. See The Scotts Company v. American Employees Insur. Co., et al., Adversary Proceeding No. 04-55083-JKF.


created and funded to use their assets to pay asbestos claims and demands, see 11 U.S.C. § 524(g)(2)(B)(i)(IV), not to indemnify insurers.

12. Unlimited and non-quantifiable obligations, like those in the proposed indemnity clause, impose significant burdens upon an asbestos trust. Asbestos trusts, of course, deal with liabilities including future asbestos claims. While the amount of future claims is not known, there are methodologies which established trusts use to estimate aggregate ranges of such claims. Given the broad scope of indemnified claims proposed here, however, it would be impossible for any trust reasonably to estimate its potential exposure under this indemnification provision.

13. If a trust were burdened by an indemnification obligation like the one proposed here, how could trustees reasonably determine an appropriate payment percentage for asbestos claimants? How much, if any, of the trust's assets must be reserved for this potential liability, and for how long? How can claimants know, and how could the Court determine, that the assets to be contributed to the trust will be used to process and pay asbestos claims and demands, as required by section 524(g)? How can future claimants have any reasonable assurance that trust assets intended to pay their claims will not instead have to be diverted to pay Lloyd's?

\*      \*      \*

While the Debtors believe that this proposed settlement is in their best interests, and they may be willing to have the Reorganized Debtors take the risk of unlimited indemnification obligations, for the reasons set forth above and in the PI Committee's Objection, this settlement, as presently proposed, is not in the best interests of future

asbestos creditors. Accordingly, the FCR respectfully requests that the Court not approve the proposed settlement agreement in its current form, and deny the Debtors' Motion.

Respectfully submitted,

By: _____
ROGER FRANKEL
RICHARD H. WYRON
Orrick, Herrington & Sutcliffe LLP
3050 K Street, N.W.
Washington, DC 20007
(202) 339-8400

JOHN C. PHILLIPS, JR. (#110)
Phillips, Goldman & Spence, P.A.
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200

*Bankruptcy Counsel to David T. Austern, Future Claimants' Representative*

Dated: June 2, 2006