IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| W.R. Grace & Co., *et al.*, | Case No. 01-01139 (JKF) |
| Debtors. | (Jointly Administered) |
| | Objection Deadline: June 2, 2006 at 4:00 p.m.<br>Hearing Date: June 19, 2006 at 2:00 p.m. |
| | Related Docket No. 12432 |

## LIBBY CLAIMANTS' OBJECTION TO DEBTORS' MOTION TO APPROVE SETTLEMENT WITH LLOYD'S UNDERWRITERS

Claimants injured by exposure to tremolite asbestos from the Debtors' operations near Libby, Montana (the "Libby Claimants"),[1] by and through their counsel, Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP, hereby object to the Motion of Debtors for an Order Approving the Settlement Agreement and Mutual Release with Lloyd's Underwriters filed May 15, 2006 [Docket No. 12432] (the "Motion"). As more fully set forth below, the Motion should be denied because (a) the Motion fails to disclose even minimal facts demonstrating that the attached Settlement Agreement and Mutual Release attached thereto (the "Proposed Settlement") meets the standards established by the Third Circuit for approval of settlements in bankruptcy, and (b) since the Proposed Settlement releases coverage that is available to the Libby Claimants, not in competition with any other creditors of the Debtors' estate and as to which Libby Claimants have a vested interest under Montana law, the Proposed Settlement cannot be approved without the Libby Claimants' consent or, in the alternative, may be approved

---

[1] As identified in the Amended and Restated Verified Statement of Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP Pursuant to Fed. R. Bankr. P. 2019 [Docket No. 11624], as it may be amended and restated from time to time.

393.001-12591.doc

only with adequate protection of the Libby Claimants' interests. In support of this Objection, the Libby Claimants state:

## I. **Background**

1. On April 2, 2001, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors-in-possession.

2. On May 15, 2006, the Debtors filed the Motion seeking this Court's approval of the Proposed Settlement, whereby the Debtors would receive $90 million in exchange for releasing certain insurers from all of their obligations under certain insurance policies (the "Subject Policies"). Apart from stating that the Subject Policies were issued after June 30, 1985 and were the subject of a previous settlement (in 1995), the Motion says nothing about the types of coverage provided by the Subject Policies, the years for which the coverage was in effect, its nature as primary or excess coverage, any aggregate limits on claims payable under one or more of the coverages provided—in short, no information on which this Court or any interested party could make a reasonably informed decision about whether or not the Proposed Settlement is in the best interest of the Debtors' estate, and no information on which any particular group of claimants would be able to understand whether their particular claims were covered by the Subject Polices which the Debtor now proposes to cancel.

3. Upon information and belief,[2] the Subject Policies include comprehensive general liability (CGL) policies that contain coverage not only for products/completed operations claims but also for premises/operations claims. The vast majority of asbestos personal injury claims

---

[2] Earlier this week, counsel to the Libby Claimants received a disk containing the Subject Policies, but have not yet been able to complete review of the policies.

2

393.001-12591.doc

against the Debtors are (in insurance terms) products/completed operations claims because they result from exposure to the Debtors' products once they were placed in the stream of commerce. For example, a construction or shipyard worker exposed to the Debtors' asbestos-containing products would have a products/completed operations claim because the harmful material had left Grace's possession at the time the injury occurred. By contrast, the claims of the Libby Claimants are (in insurance terms) premises/operations claims because they result from exposure to asbestos released at Grace's premises and/or in the course of Grace's operations. As this Court has previously been made aware, the Libby Claimants are workers, family members of workers and members of the community who were exposed to asbestos from the Debtors' operations in and near Libby, Montana.

4.  CGL policies generally provide that products/completed operations claims are subject to an aggregate coverage limit. Thus, the insurer's potential liability is capped at the aggregate limit (plus other items such as defense costs that might, under the terms of a particular policy, be outside the aggregate limits). By contrast, CGL policies do not usually set an aggregate limit for premises/operations claims. Typically, while such coverages are limited to an amount per claim and an amount per accident/occurrence, there is no cap whatsoever on the insurer's aggregate exposure. This means that even in a mass tort case, injured people do not compete with each other for premises/operations coverage;[3] the only issue is whether an injury is covered by the policy, not whether the coverage has run out. The Libby Claimants have a vested interest in the insurance coverage for their injuries, and the Debtors have made no attempt to demonstrate that the considerations sometimes invoked in mass tort cases to override this vested interest *as to products/completed operations coverage*—namely, that because of aggregate

---

[3] Assuming that the insurer is solvent and that the claims stem from separate accidents/occurrences or are within the amount of coverage per accident/occurrence. The Motion contains no information on these issues.

3

393.001-12591.doc

coverage limits, there is not enough insurance to go around, so claims must be channeled in order to give all victims their *pro rata* share—are present in this case *as to the premises/operations coverage contained in the Subject Policies.*

5. Upon information and belief, the Debtors' CGL policies providing coverage for premises/operations claims are an important potential source of recovery for the Libby Claimants, which could reduce or eliminate the Libby Claims as liabilities of the bankruptcy estate without depleting estate assets or depleting insurance coverage available to other asbestos victims. Thus, it is in the best interest of the Debtors' estate and other creditors to preserve the insurance coverage available for the Libby Claimants.

6. The Official Committee of Personal Injury Claimants (the "PI Committee") has reviewed the Subject Policies and, as stated in the Objection of the Official Committee of Asbestos Personal Injury claimants to the Motion of Debtors for an Order Approving the Settlement Agreement and Mutual Agreement with Lloyd's Underwriters of even date herewith (the "PI Committee Objection"), concluded that they provide at least $199 million of premises/operations coverage. The PI Committee Objection also represents that the Debtors, in discussions with the PI Committee concerning the Proposed Settlement, attempted to justify the $90 million settlement solely with reference to the release of products/completed operations coverage. The Motion offers no reason why it is prudent, fair or even legally permissible for the Debtors to discard $199 million or more of insurance coverage for the Libby Claimants.

393.001-12591.doc

## II. <u>Argument</u>

A. <u>The Motion Must be Denied Because the Debtors Have Failed to Make Adequate Disclosure of Material Facts Related to the Proposed Settlement.</u>

7. The Debtors bear the burden of persuading the Court that the Proposed Settlement should be approved. <u>See</u> <u>In re Key3Media Group, Inc.</u>, 336 B.R. 87, 93 (Bankr. D. Del. 2005). The Motion does not even attempt to articulate the facts that would permit parties to evaluate, and this Court to determine, that the Proposed Settlement is fair, reasonable and in the best interest of the estate, let alone whether it meets the four-part <u>Martin</u> standard. <u>See</u> <u>Myers v. Martin (In re Martin)</u>, 91 F.3d 389, 393 (3d Cir. 1996).

8. The paucity of information contained in the Motion, combined with the short period provided for parties to respond, makes it impossible for parties such as the Libby Claimants to comprehensively evaluate the Proposed Settlement. As noted above, the Motion is completely silent as to the nature of the coverage provided by the Subject Policies, and the relationship of that coverage to coverages provided by other insurers. Such statements as the Debtors have chosen to share with the parties and this Court raise more questions than they answer. For example, the Debtors state that "other insurance carriers have become insolvent"[4] without explaining the relationship (if any) of those carriers to the Proposed Settlement. The Debtors state that they "believe their recovery is unlikely to be materially greater than the $90 million they will receive pursuant to the settlement agreement"[5] without providing the financial analysis on which such a statement would responsibly need to rely. The Debtors state that "the

---

[4] Motion ¶ 16.

[5] Motion ¶ 15.

5

393.001-12591.doc

$90 million is already discounted to present value"[6] without explaining what discount rate was used, what payment stream it was applied to, and the assumptions utilized in projecting the payment stream. It may be that these representations can be understood through discovery,[7] and confirmed by independent analysis. If so, adequate time will need to be provided. In the meantime, it would be unfair for this Court even to consider the Proposed Settlement for approval,[8] let alone enter the order of approval sought by the Debtors.

### B. The Proposed Settlement is Impermissible Because Proceeds of Premises/Operations Coverage Under the Subject Policies Are Not Property of the Estate.

9.    As a general matter, proceeds of a liability insurance policy are not property of the insured's bankruptcy estate. As the Court of Appeals for the Fifth Circuit has held:

> [W]hen the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate.
>     Examples of insurance policies whose proceeds are property of the estate include casualty, collision, life, and fire insurance policies in which the debtor is a beneficiary....
> But under the typical liability policy, the debtor will not have a cognizable interest in the proceeds of the policy. Those proceeds will normally be payable only for the benefit of those harmed by the debtor under the terms of the insurance contract.

Houston v. Edgeworth, 993 F.2d 51, 55 (5th Cir. 1993). Judicial decisions that have trumped this rule in the mass tort context are based on circumstances not present here: the need to channel proceeds of products/completed operations coverage *where those proceeds are*

---

[6] Motion ¶ 16.

[7] In response to the Libby Claimants request to schedule depositions under Fed. R. Civ. P. 30(b)(6), Debtors' counsel requested the Libby Claimants to first participate in a teleconference with the Debtors' legal and business representatives most familiar with the Proposed Settlement. The Libby Claimants appreciate the offer, and have held off on depositions pending such teleconference, which is likely to take place next week. The Libby Claimants reserve the right to proceed with depositions, accompanying requests for documents, and appropriate follow-on discovery (if any).

[8] The Libby Claimants have separately filed their Motion to Defer Consideration of Proposed Settlement with Lloyd's Underwriters, whereby they request this Court to continue the Motion to at least the July omnibus hearing in order for the Libby Claimants and other parties to have a fair opportunity to respond.

*insufficient to pay all claims*, with the purpose and effect of providing for an orderly and ratable distribution to victims who are beneficiaries of the coverage. The Debtors have not alleged, much less attempted to demonstrate with specific reference to their insurance policies as now in effect, that they have insufficient premises/operations coverage to pay the Libby Claimants (and anyone else with a premises/operations claim) in full.[9]

10. The Proposed Settlement is impermissible because it purports to dispose of an asset—namely, proceeds of premises/operations coverage under the Subject Policies—that is not property of the estate.

### C. Even if Proceeds of Premises/Operations Coverage Under the Subject Policies Were to be Treated as Property of the Estate, the Motion Must Nevertheless be Denied in the Absence of Adequate Protection of the Libby Claimants' Interest.

11. An injured party has a legally cognizable interest in a liability policy covering his injury, which must be adequately protected in any transaction disposing of the policy. Allied Products Corp. v. ITT Industries, Inc. (In re Allied Products Corp.), 2004 WL 635212 (N.D. Ill.), *affirming* 288 B.R. 533 (Bankr. N.D. Ill. 2003). The debtor in Allied Products proposed to sell its prepetition liability policies back to the insurers, much as the Debtors are proposing here. An injured party objected, claiming that cancellation of the insurance would deprive it of a vested right in the policies. The Bankruptcy Court's denial of the motion was affirmed on the basis that the injured party's rights vest at the time their injuries occur, and cannot thereafter be defeated by actions of the insurer and insured.

12. Although Allied Products applied the law of Illinois on the issue of vesting, these principles appear to comport with general principles of insurance law:

---

[9] If the Debtors were to make this allegation, then of course the Libby Claimants would have the right to reasonable discovery, pursuant to Bankruptcy Rule 9014(c) (incorporating rules of discovery to contested matters), and opportunity to brief and otherwise be heard on the issue.

393.001-12591.doc

> The cancellation of an insurance policy does not affect rights which have already accrued under the policy in favor of the insured or of a third person, and consequently, notice of the insurer's previous election to terminate the policy, given the insured after a loss has occurred, is manifestly insufficient to avoid liability under the policy for such loss.

43 Am. Jur. 2d Insurance § 416. Certainly the same principles are applicable under the law of Montana,[10] where the Libby Claimants' injuries occurred. See McLane v. Farmers Insurance Exchange, 150 Mont. 116, 119, 432 P.2d 98 (1967). McLane held that the injured party's rights "vested either at the time of the accident or at the time of the [insurance company's] implied waiver of the right to rescind. . . . In either case, [the insured] and [the insurance company] cannot do anything either in concert or through the failure of [the insured] to defend to affect the rights of [the injured party] after they vested." Id. Given that Lloyd's has not asserted a right of rescission, the date of the Libby Claimants' injury is the only relevant date under McLane to determine when their rights vested in the Subject Policies. See also J.G. Link & Company v. Continental Casualty Co., 470 F.2d 1133, 1138 (9th Cir. 1972) (under Montana law, "the [injured parties] had vested rights under the policy and were therefore entitled to assert coverage despite any estoppel of the [insureds].").

13.  Adequate protection of the Libby Claimants would certainly be accomplished by modifying the Proposed Settlement so as to preserve premises/operations coverage. This was apparently the approach taken in the 1995 settlement between the Debtors and Lloyds; the Debtors have provided no explanation why a different approach is taken in the Proposed Settlement. In the absence of any rationale for surrendering premises/operations coverage, no other type of adequate protection should be deemed sufficient.

---

[10] Most likely Montana law governs the vesting issue because it trumps any other choice of law that might otherwise apply, including matters of public policy concerning the performance of an insurance contract in Montana. See Oberson v. Federated Mut. Ins., 330 Mont. 1, 6, 126 P. 3d 459 (2005); Swanson v. Hartford, 309 Mont. 269, 277, 46 P.3d 584 (2002); Youngblood v. American States, 262 Mont. 391, 399, 866 P.2d 203 (1993).

8

D. **The Motion Should be Denied Because the Proposed Settlement is Unduly Prejudicial to the Libby Claimants.**

14. Even if the Debtors were to demonstrate that the Proposed Settlement is otherwise in the best interest of the estate, the Motion must be denied because the Proposed Settlement is unduly prejudicial to the Libby Claimants. In considering a settlement, the bankruptcy court must consider the rights and interests of all affected parties, not just the parties to the settlement:

> The fairness to the settling parties of a proposed settlement agreement may not warrant its approval if the rights of others who are not parties to the settlement agreement are unduly prejudiced. We must further determine that "no one has been set apart for unfair treatment." Cullen v. Riley (In re Masters Mates & Pilots Pension Plan), 957 F.2d 1020, 1026, 1031 (2d Cir. 1992). Ignoring the effect of a proposed [settlement] upon the rights of third parties "contravenes a basic notion of fairness. In re AWECO, 725 F.2d 293, 298 (5th Cir. 1984)."

In re Medical Asset Mgmt., 249 B.R. 659, 663 (Bankr. W.D. Pa. 2000). The surrender of potentially more than $200 million of coverage for the Libby Claimants is unfairly prejudicial to them, whether or not the Debtors might be able to portray the Proposed Settlement as otherwise advantageous to the Debtors' estate.

E. **Joinder in PI Committee Objection.**

15. In addition to the arguments advanced herein, the Libby Claimants hereby join in the PI Committee Objection with the same effect as though repeated here.

393.001-12591.doc

### III. Conclusion

16. Based on the foregoing, the Motion should be denied.

Dated: June 2, 2006
       Wilmington, Delaware

LANDIS RATH & COBB LLP

*/s/ Kerri Mumford*

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

-and-

Daniel C. Cohn, Esq.
Christopher M. Candon, Esq.
COHN WHITESELL & GOLDBERG LLP
101 Arch Street
Boston, MA 02110
Telephone: (617) 951-2505
Facsimile: (617) 951-0679

Counsel for the Libby Claimants

393.001-12591.doc