## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

## FEE AUDITOR'S AMENDED FINAL REPORT REGARDING
## FEE APPLICATION OF KIRKLAND & ELLIS
## FOR THE NINETEENTH INTERIM PERIOD

This is the amended final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Fee Application of Kirkland & Ellis for the Nineteenth Interim Period</u>.

## BACKGROUND

1.      Kirkland & Ellis was retained as counsel to the Debtors.  In the Application, Kirkland & Ellis seeks approval of fees totaling $4,984,415.00 and costs totaling $456,005.52 for its services from October 1, 2005, through December 31, 2005.

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the

United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We served on K&E an initial report based on our review, and received a response from K&E, portions of which response are quoted herein. After the filing of our original final report, we were provided with new information that caused us to amend that report regarding the tasks in paragraph 4, below.

## DISCUSSION

3.      In our initial report, we noted 18 conferences or meetings attended by multiple professionals.  (See Exhibit A.)  We asked K&E to examine the exhibit and in each instance to explain the need for each professional's presence and the particular area of expertise each brought to the meeting.  K&E's response is provided as Response Exhibit 1.  We appreciate the response and offer no objection to these fees.

4.      We noted that throughout the application period, various K&E professionals spent a total of 2,225.20 hours and $312,817.50 on seemingly clerical tasks. (See Exhibit B.) We have been consistent in recommending that clerical tasks be billed at no more than $80.00 per hour.   In *in re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 855 n.34 (3rd Cir. 1994), the Court stated that "the statute [11 U.S.C. 330] plainly specifies that the type of service performed by a paralegal (including whether it is clerical) affects the rate of compensation, not compensability vel non." Busy Beaver at 849.  In keeping with that opinion, we asked K&E to examine Exhibit B and to show why time for these tasks should be billed at normal rates.  K&E's response is provided as Response Exhibit 2.  We appreciate the response and concur that, in light of the extraordinary circumstances extent throughout the period of this application, many of the cited tasks should be compensable at full rates.  However, some of these tasks were clearly clerical in nature.  For these 67.4 cited hours,

billed at $11,458.00, we recommend those hours be billed at the $80.00 per-hour rate, resulting in

a total of $5,392.00.  Thus we recommend a reduction of $6,066.00 ($11,458.00 minus $5,392.00)

in fees.

5.      We noted an airfare expense of $3,795.95 that may be excessive.  The entry is

provided below.

11/17/2005      3,795.95        Airfare, Laurence Urgenson, Airfare, London, England, 11/17/05 to
                                11/21/05, (Client Meeting)

We asked K&E to provide documentation that the cited fare was booked at coach rate.  K&E

responded as follows:

> Documentation is provided that shows that this airfare was booked at
> a business class rate (pursuant to K&E's cost policy, attorneys
> traveling internationally book business class fares). In fact, this fare
> was a promotional advanced purchase non-refundable business class
> ticket booked three weeks prior to the trip. (Regular, fully-refundable
> business class fare at the time was priced between $5,000 and
> $6,000).  The back-up documentation related to this airfare is
> attached.

We appreciate the response.  Paragraph  II.E.1. of the Guidelines states, ". . .[f]actors relevant to a

determination that the expense is proper include the following: 1. Whether the expense is reasonable

and economical.  For example, first class and other luxurious travel mode or accommodations will

normally be objectionable."  The Court has been consistent in its application of the guideline to

international as well as domestic air travel.  Our research indicates comparable, fully-refundable

coach-class ticket cost ranging from approximately $1,300.00 to $2,100.00.  Applying the upper end

of that range, we thus recommend a reduction of $1,695.95 ($3,795.95 minus $2,100.00) in

expenses.

6.    We noted seven hotel expenses that appear excessive.  The entries are provided below.

| | | |
|---|---|---|
| 11/06/2005 | 535.73 | Travel Expense, Elli Leibenstein, Hotel, New York, NY, 11/06/05 (Expert Witness Conference) |
| 11/08/2005 | 542.73 | Travel Expense, Elli Leibenstein, Hotel, Washington, DC, 11/08/05 (Expert Witness Meeting) |
| 11/15/2005 | 502.66 | Travel Expense, Elli Leibenstein, Hotel, Washington, DC, 11/15/05 (Expert Witness Conference) |
| 11/08/2005 | 350.29 | Travel Expense, Tyler Mace, Hotel, Boca Raton, FL, 11/08/05, (Witness Meeting) |
| 11/09/2005 | 339.24 | Travel Expense, William Jacobson, Hotel, Boca Raton, FL, 11/09/05, (Witness Meeting) |
| 11/09/2005 | 339.24 | Travel Expense, Tyler Mace, Hotel, Boca Raton, FL, 11/09/05, (Witness Meeting) |
| 11/29/2005 | 649.10 | Travel Expense, Elli Leibenstein, Hotel, New York, NY, 11/29/05 (Expert Witness Conference) (last minute booking of only acceptable room available) |

We recommend a reasonable ceiling of $250 for hotel stay per night in most cities ($350 for New York, $300 for Washington D.C., $400 for London).  We asked K&E to explain why the cited hotel entries should not be viewed as excessive.  K&E's response is provided as Response Exhibit 3.  We appreciate the response; however, we do not believe that the circumstances cited in the response provide a sufficient reason to deviate from our suggested ceilings.  Granting a 13% tax addition (state and occupancy) above the recommended ceilings, we recommend the following reductions.

| | |
|---|---|
| 11/06/2005 | 535.73 - reduction of $140.23 |
| 11/08/2005 | 542.73 - reduction of $203.73 |
| 11/15/2005 | 502.66  - reduction of $163.66 |

11/08/2005     350.29 - reduction of $67.79

11/09/2005     339.24  - reduction of $56.74

11/09/2005     339.24  - reduction of $56.74

11/29/2005     649.10 - reduction of $253.60

For the cited hotel expenses, we thus recommend a total reduction of $942.49 in expenses.


       7.       We noted an unexplained travel expense of $91.48.  The entry is provided below.


11/14/2005     91.48          Travel Expense, Tyler Mace, Hotel, Jacksonville, FL, 11/14/05,
                              (Witness Meeting)

We asked K&E to provide appropriate documentation as to the nature of this expense.  K&E
responded as follows:

> This $91.48 should have been described as a hotel expense.  It was the cost for one
> night's lodging at the Jacksonville, Florida Holiday Inn where Mr. Mace stayed on
> a trip to Florida to conduct witness interviews.  As such, it is properly chargeable to
> the Debtors' estate.

We appreciate the response and offer no objection to this expense.

       8.       We noted an overtime transportation charge of $487.70 that appears excessive.  The
entry is provided below.

10/15/2005     487.70         RED TOP CAB COMPANY - Overtime Transportation 10/11/05

We asked the firm to provide all appropriate explanation and documentation as to the need for the

expense as well as justification for the amount.  K&E responded as follows:


> This expense was improperly categorized.  It was actually a travel
> expense for a car service to make a 6 hour round trip with Brian
> Stansbury from K&E's Washington, D.C. office to Johns Hopkins
> University in Baltimore for a conference with an expert.  It was
> determined that this mode of transportation was the most efficient and
> productive way for Mr. Stansbury to attend the conference.

We appreciate the response and offer no objection to this expense.

**CONCLUSION**

9.      Thus we recommend approval of fees totaling $4,978,349.00 ($4,984,415.00 minus

$6,066.00) and costs totaling $453,367.08 ($456,005.52 minus $2,638.44) for K&E's services from

October 1, 2005, through December 31, 2005.

                              Respectfully submitted,

                              **WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____
                              Warren H. Smith
                              Texas State Bar No. 18757050

                              Republic Center
                              325 N. St. Paul, Suite 1275
                              Dallas, Texas  75201
                              214-698-3868
                              214-722-0081 (fax)
                              whsmith@whsmithlaw.com

                              **FEE AUDITOR**

**CERTIFICATE OF SERVICE**

        I hereby certify that a true and correct copy of the foregoing document has been served,
without exhibits, via First Class United States mail to the attached service list on this 12th day of
June, 2006.  Copies of the exhibits may be obtained in electronic format by contacting the
undersigned.

_____
                              Warren H. Smith

## SERVICE LIST
Notice Parties

**The Applicant**

Janet S. Baer
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

**The Debtors**

David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**

James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones,
P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of
Unsecured Creditors**

Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of
Property Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price &
Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of
Personal Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE  19801

**Official Committee of Equity Holders**

Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**

Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

Exhibit A

1. On October 24, 2005, five firm members (three partners and two associates) attended a hearing. The total time spent including any preparation and non-working travel time was 79.50 hours[1] for a total fee of $40,337.50. The entries are provided below.

| 10/18/2005 | Michelle H Browdy | 2.70 | Preparation for 10/24 hearing and conference re same (.8);................ |
| 10/20/2005 | Janet S Baer | 5.20 | .................; conference re preparation for S&R hearing (.3);............ |
| 10/20/2005 | Amanda C Basta | 8.70 | .........; conference with A. Johnson, D. Mendelson and B. Harding re hearing preparation (.7);............. |
| 10/20/2005 | Michelle H Browdy | 3.50 | ..............; preparation for 10/24 and 10/31 hearing (1.1). |
| 10/21/2005 | Amanda C Basta | 11.30 | ................; conference with B. Harding and M. Utgoff re hearing preparation (1.0);.......... |
| 10/23/2005 | Janet S Baer | 3.50 | ...........; review insurance materials re 2019 order in preparation for omnibus hearing (2.0). |
| 10/23/2005 | Michelle H Browdy | 10.60 | ...........; work on slides for 10/31 hearing (2.7); continue to prepare for 10/24 status hearing (1.1). |
| 10/22/2005 | Amanda C Basta | 8.00 | Conference with B. Harding re hearing preparation (.5); prepare for omnibus hearing (7.5). |
| 10/22/2005 | Barbara M Harding | 3.80 | Preparation for omnibus hearing. |
| 10/23/2005 | Janet S Baer | 0.50 | Review materials in preparation for October omnibus hearing. |
| 10/23/2005 | Amanda C Basta | 15.30 | Prepare for omnibus hearing. |

---

[1] Time for this entry was located in three Project Categories - (i) Claims Analysis Objection & Resolution (Asbestos), (ii) Hearing and (iii) Travel non-working.

| | | | |
|---|---|---|---|
| 10/23/2005 | Barbara M Harding | 7.50 | Preparation for omnibus hearing. |
| 10/24/2005 | Janet S Baer | 7.50 | Review insurance materials in preparation for hearing on 2019 matter (2.0); review all materials and orders for omnibus hearing and confer with client re same (2.0); attend and conduct October omnibus hearing (3.0); confer with clients after conclusion of same (.5). |
| 10/24/2005 | Lori Sinanyan | 0.40 | Participate (partial) in omnibus hearing telephonically |
| 10/24/2005 | Amanda C Basta | 7.00 | Prepare for hearing (4.0); attend hearing (3.0). |
| 10/24/2005 | Michelle H Browdy | 6.10 | Omnibus hearing, preparation and follow up. |
| 10/24/2005 | Barbara M Harding | 9.70 | Preparation for Omnibus hearing (7.2); attend omnibus hearing (2.5). |
| 10/23/2005 | Janet S Baer | 1.50 | Travel to Delaware for October omnibus hearing (billed at half time). |
| 10/24/2005 | Janet S Baer | 1.50 | Travel from Delaware back to Chicago after October omnibus hearing (flight delays) (billed at half time) |
| 10/24/2005 | Amanda C Basta | 1.00 | Travel from Wilmington, DE for omnibus hearing (billed at half time) |

2. On October 6, 2005, seven (7) firm members (two partners and five associates) attended a conference. The total time spent including any preparation time was 9.40 hours for a total fee of $3,499.50. The entries are provided below.

| | | | |
|---|---|---|---|
| 10/6/2005 | Tyler D Mace | 1.70 | Conference with joint defense counsel (1.0);........... |
| 10/6/2005 | Christopher C Chiou | 1.90 | Conference with joint defense counsel (1.3); preparation for same (.6). |
| 10/6/2005 | Barak Cohen | 9.00 | ...........; participate in Joint Defense conference (.5). |
| 10/6/2005 | Kenneth S Clark | 2.70 | Joint defense team conference (1.7);........ |

| 10/6/2005 | Rebecca A Koch | 7.10 | ..........; conference with W. Jacobson, L. Urgenson, K. Clark and joint-defense team re case development (1.4). |
| 10/6/2005 | William B Jacobson | 9.70 | .........; confer with all defense counsel (1.7);......... |
| 10/6/2005 | Laurence A Urgenson | 2.20 | ..........; weekly JDA conference (1.2);........... |

3.  On October 14, 2005, six (6) firm members (two partners and four associates) attended a conference.  The total time spent including any preparation time was 7.30 hours for a total fee of $2,836.00.  The entries are provided below.

| 10/14/2005 | Tyler D Mace | 6.50 | ..........; conference with joint defense counsel (.5);......... |
| 10/14/2005 | Christopher C Chiou | 1.70 | Conference with joint defense counsel (1.3); prepare for same (.4). |
| 10/14/2005 | Barak Cohen | 9.00 | Participate in Joint Defense Group conference (1.0);............. |
| 10/14/2005 | Rebecca A Koch | 9.90 | .........; conference with T. Mace, L. Urgenson and joint-defense team re case developments (1.7). |
| 10/14/2005 | William B Jacobson | 7.50 | ............; confer with K&E attorneys prior to defense call (.5); confer with defense counsel re various issues (.9). |
| 10/14/2005 | Laurence A Urgenson | 3.20 | .........; JDA conference (1.0). |

4.  On October 20, 2005, four (4) firm members (all associates) attended a conference.  The total time spent including any preparation time was 4.30 hours for a total fee of $1,229.50.  The entries are provided below.

| 10/20/2005 | Tyler D Mace | 1.80 | Conference with joint defense and criminal team. |
| 10/20/2005 | Barak Cohen | 9.50 | ........; participate in weekly Joint Defense conference (.5);............. |
| 10/20/2005 | Kenneth S Clark | 1.00 | Joint defense team conference with T. Mace, B. Cohen and R. Koch. |

| 10/20/2005 | Rebecca A Koch | 6.50 | .........; conference with K Clark, T. Mace, B. Cohen and joint defense team re case developments (1.0);........... |

5.   On October 25, 2005, six firm members (three partners and three associates) attended a conference.  The total time spent including any preparation time was 48.20 hours for a total fee of $22,438.50.  The entries are provided below.

| 10/25/2005 | Tyler D Mace | 12.00 | Conference with civil counsel re science issues. |
| 10/25/2005 | Kenneth S Clark | 3.30 | Confer with Holme Roberts & Owen to review information from cost recovery case. |
| 10/25/2005 | Rebecca A Koch | 10.80 | .........; Joint Defense conference re case developments (3.8). |
| 10/25/2005 | William B Jacobson | 11.90 | ..............;  confer  with Holme Roberts attorneys re expert witnesses (10.5). |
| 10/25/2005 | Antony B Klapper | 10.50 | Expert conference with outside counsel. |
| 10/25/2005 | Laurence A Urgenson | 8.20 | ............; conference with W. Jacobson, K. Coggon, J. McCarthy, J. Sherman, T. Mace, M. Browdy, T. Frongillo, R. Koch and K. Clark re case status and strategy (8.1). |

6.   On October 27, 2005, five (5) firm members (one partner and four associates) attended a conference.  The total time spent including any preparation time was 7.30 hours for a total fee of $2,378.00.  The entries are provided below.

| 10/27/2005 | Christopher C Chiou | 1.20 | Conference with joint defense counsel (.9); prepare for same (.3). |
| 10/27/2005 | Barak Cohen | 7.50 | ..............; participate in Joint Defense conference (1.0);........... |
| 10/27/2005 | Kenneth S Clark | 1.50 | Joint defense team conference |
| 10/27/2005 | Rebecca A Koch | 3.30 | ..........; joint-defense conference re case developments (1.8). |
| 10/27/2005 | William B Jacobson | 8.60 | ............; confer with K. Clark, R. Koch, C. Chiou and B. Cohen followed by conference |

with defense counsel (1.8);...........

7.  On November 2, 2005, five firm members (two partners, two associates and one legal assistant) attended a conference.  The total time spent including any preparation time was 17.40 hours for a total fee of $5,790.00.  The entries are provided below.

| | | | |
|---|---|---|---|
| 11/02/2005 | Jonathan Friedland | 3.90 | ............; PI discovery conference (1.7);.............. |
| 11/02/2005 | David E Mendelson | 7.70 | Team discovery related conferences with both outside counsel and in-house counsel (2.0); prepare for same conferences (1.5);.................... |
| 11/02/2005 | Salvatore F Bianca | 7.40 | Conference with Grace and PI team re discovery issues (1.5);............... |
| 11/02/2005 | Margaret S Utgoff | 12.50 | Prepare for expert meeting (2.0); prepare materials for expert (2.0); prepare bar date materials (3.0);........... |
| 11/02/2005 | Brian T Stansbury | 9.50 | Prepare for conference with experts (1.7); prepare for discovery conference (.4); conference with B. Harding, J. Baer, J. Friedland, J. Hughes, B. Murphy, T. Mace, D. Mendelson, R. Finke, D. Cameron and M. Murphy re discovery requests (1.6);.............. |

8.  On November 14, 2005, five firm members (three partners and two associates) attended a hearing. The total time spent including any preparation and non-working travel time was 46.80 hours[2] for a total fee of $29,080.00.  The entries are provided below.

| | | | |
|---|---|---|---|
| 11/14/2005 | Jonathan Friedland | 5.50 | ................; monitor omnibus hearing (4.8);........... |
| 11/13/2005 | Janet S Baer | 5.50 | Review New Jersey pleadings and case law in preparation for hearing on same (3.5); prepare outline for same (2.0). |
| 11/14/2005 | Janet S Baer | 1.00 | Review materials and outline in preparation for hearing on New Jersey injunction. |
| 11/11/2005 | Janet S Baer | 0.50 | Assemble materials re November omnibus hearing. |
| 11/13/2005 | Janet S Baer | 0.50 | Review and organize further materials for omnibus |

---

[2] Time for this entry was located in four Project Categories - (i) Claims Analysis Objection & Resolution (Asbestos), (ii) Litigation and Litigation Consulting, (iii), Hearing, and (iv) Travel non-working.

|            |                     |      | hearing. |
|------------|---------------------|------|----------|
| 11/14/2005 | Janet S Baer        | 7.50 | Attend November omnibus hearing and confer with clients re same. |
| 11/14/2005 | Lori Sinanyan       | 3.20 | Attend hearing telephonically (partial). |
| 11/14/2005 | Salvatore F Bianca  | 8.00 | Attend omnibus hearing (6.0); preparation re same (2.0). |
| 11/14/2005 | Michelle H Browdy   | 7.40 | Hearing on PD issues (2.5); preparation for hearing (3.6); follow up from hearing (1.3). |
| 11/13/2005 | Janet S Baer        | 2.00 | Travel to Delaware for November omnibus hearing (billed at half time). |
| 11/13/2005 | Salvatore F Bianca  | 2.00 | Travel to Wilmington for omnibus hearing (billed at half time). |
| 11/15/2005 | Janet S Baer        | 2.20 | Travel from Delaware back to Chicago after November omnibus hearing (billed at half time). |
| 11/15/2005 | Salvatore F Bianca  | 2.20 | Return to Chicago from Wilmington (billed at half time). |

9.  On November 2, 2005,  five (5) firm members (two partners and three associates) attended a conference.  The total time spent including any preparation time was 12.90 hours for a total fee of $5,646.50.  The entries are provided below.

|            |                     |      |          |
|------------|---------------------|------|----------|
| 11/03/2005 | Tyler D Mace        | 7.90 | ..............; conference with counsel for joint defense (1.0);  conference with counsel for witnesses (.6);........... |
| 11/03/2005 | Kenneth S Clark     | 4.60 | Joint defense conference with W. Jacobson, C. Chiou, R. Koch, B. Cohen and joint defense team (.7);................. |
| 11/03/2005 | Rebecca A Koch      | 6.60 | ...........; joint defense conference with C. Chiou, W. Jacobson and K. Clark re case developments (1.5);........... |
| 11/03/2005 | William B Jacobson  | 9.40 | Prepare for and attend conference with expert witness (5.5);................; conference with defense attorneys (1.4);............... |

| | | | |
|---|---|---|---|
| 11/03/2005 | Antony B Klapper | 2.20 | Conference with state of the art expert. |

10.  On November 10, 2005, five (5) firm members (one partner and four associates) attended a conference.  The total time spent including any preparation time was 5.60 hours for a total fee of $1,822.00.  The entries are provided below.

| | | | |
|---|---|---|---|
| 11/10/2005 | Christopher C Chiou | 8.40 | .................; prepare for and attend conference with joint defense team (1.4). |
| 11/10/2005 | Barak Cohen | 2.80 | Joint defense conference (1.8);............. |
| 11/10/2005 | Kenneth S Clark | 2.80 | Joint defense team conference with L. Urgenson, B. Cohen, C. Chiou and R. Koch (.8);................ |
| 11/10/2005 | Rebecca A Koch | 10.80 | .................; joint defense conference with W. Jacobson, B. Cohen, C. Chiou and K. Clark re case developments (.8). |
| 11/10/2005 | William B Jacobson | 7.50 | ..............;    conference    with defense counsel (.8);............ |

11.  On December 5, 2005, six firm members (four partners and two associates) attended a conference.  The total time spent including any preparation time was 33.90 hours for a total fee of $16,672.50.  The entries are provided below.

| | | | |
|---|---|---|---|
| 12/5/2005 | Salvatore F Bianca | 8.00 | ..................; conference with PI team, criminal team and client re expert witnesses (3.8); prepare for same (.9);............... |
| 12/5/2005 | Brian T Stansbury | 12.80 | Prepare  for  expert development conference (1.5); conference with D. Cameron, B. Jacobson, J. Hughes, B. Harding, R. Finke, L. Urgenson, A. Klapper, D. Kuchinsky, L. Decker and K. Coggins re expert development (6.5);............... |
| 12/5/2005 | Michelle H Browdy | 7.40 | ..............; conference re expert witnesses (6.1);........... |
| 12/5/2005 | Dawn D Marchant | 7.50 | Confer with B. Harding and others re PI experts (5.8); prepare materials for conference re same (1.6); confer with M. Browdy re same (.1). |
| 12/5/2005 | Elli Leibenstein | 8.00 | Conference  with  consulting experts re presentation (.5);............... |

| 12/5/2005 | Barbara M Harding | 12.60 | Prepare for expert coordination conference (1.2); conference with client, client's outside counsel, W. Jacobson, L. Urgenson and B. Stansbury re expert preparation and coordination (4.2);................; prepare for expert conference (1.7);......... |

12.  On December 6, 2005, eight (8) firm members (four partners and four associates) attended a conference.  The total time spent including any preparation time was 31.10 hours for a total fee of $14,311.00.  The entries are provided below.

| 12/6/2005 | Jonathan Friedland | 9.00 | Team conference with M. Browdy, client and others re omnibus 15 (2.0);............ |
| 12/6/2005 | Janet S Baer | 4.60 | ..............; conference with client re 15th omnibus objection issues (2.3);............ |
| 12/6/2005 | Salvatore F Bianca | 6.20 | Confer with M. Browdy, J. Baer, J. Friedland, R. Finke and D. Cameron re PD reply (2.0);........; conference with M. Browdy, J. Baer, J. Friedland and PD Committee re scheduling order for PD claim objections (.4); conference with PI team and client re PI expert issues (1.8); prepare for same (.5);............ |
| 12/6/2005 | Michael Dierkes | 8.20 | ...........; conferences re case strategy with M. Browdy, S. Blatnick, S. Bianca and others (2.5). |
| 12/6/2005 | Samuel Blatnick | 7.90 | .................; confer with M. Browdy, J. Baer, M. Dierkes, S. Bianca, R. Finke, M. Bidderman and paralegals re PD estimation items (2.5);............ |
| 12/6/2005 | Brian T Stansbury | 9.70 | Prepare for expert conference (1.0); conference with D. Cameron, B. Jacobson, D. Golden, expert, A. Klapper, D. Kuchinsky, L. Decker, K. Coggins and G. Winters re expert development (3.8); conference with B. Harding, J. Hughes and expert (3.5); revise materials to be distributed in preparation for conference with expert (1.4). |
| 12/6/2005 | Elli Leibenstein | 5.50 | Conference with experts re charts and review same (1.0);............... |
| 12/6/2005 | Barbara M Harding | 15.60 | ..............; prepare for conference with expert (2.5); conference with expert, J. Hughes and A. Klapper |

(2.2); review documents to prepare for conference with expert (1.7);..............

13.  On December 19, 2005, six firm members (five partner and one associate) attended a hearing. The total time spent including any preparation and non-working travel time was 97.40 hours[3] for a total fee of $62,057.00.  The entries are provided below.

| 12/9/2005 | Michelle H Browdy | 9.10 | ...............; revise Speights class certification issues for 12/19 hearing (1.8);.............. |
|---|---|---|---|
| 12/12/2005 | Michelle H Browdy | 7.00 | ...............; edit slides for 12/19 hearing (1.2);......... |
| 12/13/2005 | Michelle H Browdy | 10.90 | ...........; conference with K&E and client re 12/19 hearing preparation (1.0); prepare for class certification hearing (1.6);......... |
| 12/14/2005 | Michelle H Browdy | 7.90 | .................; prepare for 12/19 hearing (3.2);......... |
| 12/15/2005 | Michelle H Browdy | 8.60 | ...........; prepare for 12/19 hearing (2.7);............. |
| 12/16/2005 | Janet S Baer | 6.10 | ...............;  assemble  materials re 15th omnibus scheduling order and review correspondence in preparation for 12/19 hearing (2.0);................. |
| 12/16/2005 | Michelle H Browdy | 5.60 | ..............; continue preparation for 12/19 hearing (.4). |
| 12/16/2005 | Elli Leibenstein | 2.50 | Prepare for hearing and exchange e-mail re same. |
| 12/16/2005 | Barbara M Harding | 13.20 | ..................;   prepare expert designation (2.5); conference with expert re same (1.8); conference with J. Hughes re expert preparation and discovery (.5); review materials re preparation for omnibus hearing (1.3); conference with E. Leibenstein re same (.2); conference with consultants re expert preparation (.5); review documents re same (2.2);.............. |
| 12/18/2005 | David M Bernick, P.C. | 5.00 | Prepare for hearing. |
| 12/18/2005 | Elli Leibenstein | 5.00 | ...............; prepare for hearing (2.0). |

---

[3] Time for this entry was located in four (4) Project Categories - (i) Claims Analysis Objection & Resolution (Asbestos), (ii) Litigation and Litigation Consulting, (iii) Hearings, and (iv) Travel non-working.

| 12/18/2005 | Barbara M Harding | 7.80 | Review materials and correspondence re preparation for omnibus hearing (1.5); review and draft comments re expert design (3.5);............. |
| 12/19/2005 | Barbara M Harding | 9.30 | Prepare expert designations (4.8);......... |
| 12/17/2005 | Janet S Baer | 1.00 | Review Montana injunction materials in preparation for hearing on same. |
| 12/18/2005 | Janet S Baer | 5.00 | Review materials in preparation for hearing on Montana injunction (1.5); prepare outline re same (2.0);................ |
| 12/19/2005 | Janet S Baer | 1.50 | Review materials/outline in preparation for Montana injunction hearing. |
| 12/11/2005 | Janet S Baer | 0.30 | Review final 12/19 hearing agenda and comment re same. |
| 12/15/2005 | Janet S Baer | 0.50 | Confer with L. DeVault re materials necessary for 12/19 hearing and arrangements for preparation in Pittsburgh on same. |
| 12/18/2005 | Michelle H Browdy | 4.70 | Prepare for 12/19/05 hearing re PD class certification. |
| 12/19/2005 | Janet S Baer | 5.50 | Attend/conduct December omnibus hearing (5.0); confer with client re same (.5). |
| 12/19/2005 | Salvatore F Bianca | 4.40 | Telephonically attend hearing. |
| 12/19/2005 | David M Bernick, P.C. | 9.00 | Prepare for and participate in hearing. |
| 12/19/2005 | Michelle H Browdy | 9.90 | Participate in hearing in Pittsburgh (4.7); prepare for argument re class certification (3.6); conduct post-hearing conferences (1.6). |
| 12/19/2005 | Elli Leibenstein | 5.50 | Attend hearing (3.5); prepare for same (2.0). |
| 12/19/2005 | Barbara M Harding | 4.20 | Prepare for and attend omnibus hearing. |
| 12/18/2005 | Janet S Baer | 1.50 | Travel to Pittsburgh for December omnibus hearing (billed at half time). |
| 12/18/2005 | Elli Leibenstein | 1.00 | Travel to Pittsburgh for hearing (billed at half time). |

| 12/19/2005 | Janet S Baer | 1.70 | Travel from Pittsburgh back to Chicago after omnibus hearing (billed at half time). |
| 12/19/2005 | Elli Leibenstein | 1.00 | Travel from Pittsburgh hearing (billed at half time). |

14.  On December 5, 2005, four (4) firm members (all partners) attended a conference.  The total time spent including any preparation time was 25.50 hours for a total fee of $14,267.50.  The entries are provided below.

| 12/5/2005 | William B Jacobson | 11.90 | .................; confer with L. Urgenson re experts (.7); confer with D. Bernick, et. al. re same (1.0); conference with Grace in-house counsel, Holmes Roberts Attorneys, Reed Smith attorneys, L. Urgenson, A. Klapper and B. Harding re experts (6.5);............... |
| 12/5/2005 | Renee D Smith | 6.00 | Conferences with D. Bernick, outside counsel and client re expert and trial preparation issues. |
| 12/5/2005 | Antony B Klapper | 6.50 | Prepare for client presentation (3.0); make presentation to client relating to various issues (1.5); confer with legal team re strategies (2.0). |
| 12/5/2005 | Laurence A Urgenson | 6.30 | ...............; conference with criminal and civil teams re case status and strategy (.8); conference with K&E, client, HRO and Reed Smith counsel re expert testimony and related issues (4.0). |

15.  On December 8, 2005, eight (8) firm members (three partners and five associates) attended a conference.  The total time spent including any preparation time was 18.00 hours for a total fee of $7,361.50.  The entries are provided below.

| 12/8/2005 | Tyler D Mace | 10.20 | .................; attend joint defense conference (2.6); .................; conference with joint defense attorneys (.4);.................... |
| 12/8/2005 | Christopher C Chiou | 10.60 | .................; conference with joint defense counsel (1.6);................. |
| 12/8/2005 | Barak Cohen | 8.50 | Conference with joint defense team (1.5);............ |
| 12/8/2005 | Kenneth S Clark | 2.50 | Joint defense team conference with L. Urgenson, W. Jacobson, B. Cohen, C. Chiou, T. Mace and R. Koch. |

| 12/8/2005 | Rebecca A Koch | 2.80 | Conference with W. Jacobson, L. Urgenson, K. Clark, B. Cohen and C. Chiou re case developments. |
| 12/8/2005 | William B Jacobson | 11.20 | ............; confer with all defense counsel (2.0). |
| 12/8/2005 | Mark E Grummer | 8.10 | .............; prepare for team conference re briefs status (1.1); participate in same (1.5). |
| 12/8/2005 | Laurence A Urgenson | 4.50 | ................; JDA status conference (2.0);............ |

16.  On December 12, 2005, four (4) firm members (two partners and two associates) attended a witness interview.  The total time spent including any preparation time was 14.30 hours for a total fee of $7,113.50.  Please explain why this witness interview required the attendance of four (4) firm members?

| 12/12/2005 | Tyler D Mace | 7.40 | Coordinate witness interview schedule and attend witness interview (2.5); conference with counsel for witnesses (1.0);............... |
| 12/12/2005 | Christopher C Chiou | 13.10 | ................; interview witness (.5). |
| 12/12/2005 | William B Jacobson | 10.90 | ...............; interview witness (7.2);.......... |
| 12/12/2005 | Laurence A Urgenson | 3.50 | Conduct witness interview with counsel for individual defendants (3.1);................ |

17.  On December 15, 2005, four (4) firm members (two partners and two associates) attended a conference.  The total time spent including any preparation time was 4.40 hours for a total fee of $2,000.00.  The entries are provided below.

| 12/15/2005 | Tyler D Mace | 7.80 | ............; conference with counsel for joint defense (.4);................ |
| 12/15/2005 | Christopher C Chiou | 13.10 | ................; conferences with joint defense counsel and K&E team re same (1.3);............. |
| 12/15/2005 | William B Jacobson | 9.70 | ..............; confer with counsel re same (1.5);......... |
| 12/15/2005 | Mark E Grummer | 7.60 | ..............; prepare for conference with all defendants re comments on all briefs (.4); participate in same (.8);............... |

18.  On December 22, 2005, five (5) firm members (three partners and two associates) attended a

conference.  The total time spent including any preparation time was 4.30 hours for a total fee of $2,230.00.  The entries are provided below.

| | | | |
|---|---|---|---|
| 12/22/2005 | Barak Cohen | 2.00 | Participate in weekly joint defense conference (1.0);.......... |
| 12/22/2005 | Kenneth S Clark | 1.80 | ...........; conference with L. Urgenson, T. Mace, B. Cohen and joint defense team (.7);......... |
| 12/22/2005 | William B Jacobson | 4.40 | ............; confer with defense counsel (.6). |
| 12/22/2005 | Mark E Grummer | 1.20 | Prepare for joint defense group conference (.3); participate in same (.6);............ |
| 12/22/2005 | Laurence A Urgenson | 1.60 | .................; prepare for conference with counsel for individuals (.3); participate in JDA conference (.8). |

Exhibit B

| 10/1/2005 | Lauren DeVault | 9.20 | ............; search and retrieve pleadings from docket (.6); collate and organize 2019 statement cds and binder (1.4). |
| 10/2/2005 | Lauren DeVault | 8.20 | .............; organize and collate proof of claims (.4); |
| 10/3/2005 | Lauren DeVault | 10.50 | ...............; search and retrieve pleadings from docket (.9). |
| 10/4/2005 | Katherine K Phillips | 9.30 | Review and distribute witness disclosures (1.0); search, retrieve and distribute pleadings re leases (1.0); search, retrieve and distribute hearing transcripts (.5) |
| 10/4/2005 | Lauren DeVault | 7.20 | Search and retrieve pleadings from docket (.3);........ |
| 10/5/2005 | Katherine K. Phillips | 6.50 | search, retrieve and distribute affidavit of Jay Hughes (.5); |
| 10/05/2005 | Lauren DeVault | 6.60 | Search and retrieve pleadings from docket (3.0);............ |
| 10/6/2005 | Lauren DeVault | 9.40 | Search and retrieve pleadings from docket (1.3);................ |
| 10/7/2005 | Katherin K. Phillips | 5.10 | .............; search, retrieve and distribute pleadings (1.0);.............; |
| 10/7/2005 | Lauren DeVault | 9.50 | ...............; search and retrieve pleadings from docket (1.0);............ |
| 10/10/2005 | Lauren DeVault | 6.30 | Search and retrieve pleadings from docket (1.5);............ |
| 10/11/2005 | Lauren DeVault | 8.60 | ................; search and retrieve pleadings from docket (.5). |
| 10/13/2005 | Lauren DeVault | 7.50...........; search and retrieve pleadings from docket (.3); |

.

| 10/14/2005 | Katherine K. Phillips | 3.00 | Search, retrieve and distribute mediator pleadings (1.0); |
| 10/18/2005 | Lauren DeVault | 8.10 | Search and retrieve pleadings from docket (1.1)... |
| 10/19/2005 | Kristen Weber | 11.00 | ...attach bates numbers and review, organize, and retrieve material to send to opposing counsels (4.0). |
| 10/22/2005 | Katherine K. Phillips | 6.50 | Search, retrieve and distribute US Trustee pleadings and correspondence (1.2)... |
| 10/23/2005 | Lauren DeVault | 5.90 | **...** search and retrieve pleadings from docket (.5);............ |
| 10/25/2005 | Kristen Weber | 9.00 | .........; review and pull filed responses from docket (1.0); |
| 10/26/2005 | Katherine K. Phillips | 8.00 | ...search, retrieve and distribute plan and disclosure statement (.2). |
| 10/26/2005 | Lauren DeVault | 12.50 | ... retrieve and collate pleadings from docket and proof of claim forms from claims agent (1.0);.............. |
| 10/29/2005 | Lauren DeVault | 6.20 | **...**search and retrieve pleadings from docket (1.0);.............. |
| 10/13/2005 | Kristen Weber | 5.00 | .........; prepare documents re W.R. Grace case precedence for shipment to offsite storage (1.7);.............. |
| 10/4/2005 | Stephanie A Rein | 9.00 | ...label and file materials in war room (1.0)... |
| 10/11/2005 | Stephanie A Rein | 9.00 | make labels for and organize materials in war room (1.0);............ |
| 0/14/2005 | Stephanie A Rein | 8.00 | ...create labels for files in war room (.5); |
| 11/03/2005 | Katherine K Phillips | 6.00 | .................; search, retrieve and distribute NJ adversary pleadings (1.0); |
| 11/03/2005 | Lauren DeVault | 9.20 | ..........; search and retrieve pleadings from docket (.9); |

| | | | |
|---|---|---|---|
| 11/11/2005 | Lauren DeVault | 12.50 | .................; search and retrieve pleadings from docket (.1); |
| 11/14/2005 | Lauren DeVault | 4.20 | search and retrieve pleadings from docket (1.4);............. |
| 11/14/2005 | Kristen Weber | 1.00 | Pull pleadings from docket (.2);............. |
| 11/15/2005 | Lauren DeVault | 0.90 | Search and retrieve pleadings from docket (.5);................ |
| 11/16/2005 | Lauren DeVault | 4.50 | Search and retrieve pleadings from docket (1.5);.................... |
| 11/17/2005 | Katherine K Phillips | 8.50 | ...search, retrieve and distribute 2019 pleadings (1.0); search, retrieve and distribute 15th omnibus claims and corresponding responses (2.0);... |
| 11/18/2005 | Lauren DeVault | 3.50 | Search and retrieve pleadings from case files (.4); |
| 11/01/2005 | Elizabeth Ori | 0.30 | Download G-I Holdings and USG dockets and distribute to A. Johnson. |
| 11/02/2005 | Margaret S Utgoff | 12.50 | .... distribute hearing transcript (1.0); |
| 11/02/2005 | Elizabeth Ori | 0.40 | Download G-I Holdings and USG dockets and distribute to A. Johnson. |
| 11/03/2005 | Elizabeth Ori | 0.30 | Download G-I Holdings and USG dockets and distribute to A. Johnson. |
| 11/04/2005 | Elizabeth Ori | 0.30 | Download G-I Holdings and USG dockets and distribute to A. Johnson. |
| 11/07/2005 | Elizabeth Ori | 0.30 | Retrieve G-I Holdings and USG dockets and distribute to team. |
| 11/08/2005 | Elizabeth Ori | 0.70 | Download G-I Holdings and USG dockets and distribute to team. |
| 11/09/2005 | Margaret S Utgoff | 10.50 | ... track federal express package to council (.5); |
| 11/10/2005 | Elizabeth Ori | 1.20 | Retrieve documents, print and distribute to team (.9); retrieve G-I Holdings and USG dockets and distribute |

to A. Johnson (.3).

| | | | |
|---|---|---|---|
| 11/14/2005 | Elizabeth Ori | 2.40 | Retrieve G-I Holdings and USG dockets and distribute to team (.3); retrieve documents for A. Johnson's review (2.1). |
| 11/15/2005 | Elizabeth Ori | 0.30 | Retrieve G-I Holdings and USG dockets and distribute to team. |
| 11/16/2005 | Elizabeth Ori | 0.30 | Retrieve G-I Holdings and USG dockets and distribute to team. |
| 11/17/2005 | Elizabeth Ori | 0.30 | Retrieve G-I Holdings and USG dockets and distribute to team. |
| 11/18/2005 | Elizabeth Ori | 0.30 | Retrieve G-I Holdings and USG dockets and distribute to team. |
| 11/21/2005 | Elizabeth Ori | 0.30 | Retrieve G-I Holdings and USG dockets and distribute to team. |
| 11/22/2005 | Elizabeth Ori | 0.30 | Retrieve G-I Holdings and USG dockets and distribute to team. |
| 11/23/2005 | Elizabeth Ori | 0.30 | Retrieve G-I Holdings and USG dockets and distribute to team. |
| 11/28/2005 | Margaret S Utgoff | 11.20 | .... mail letters to opposing council with attachments (5.0). |
| 11/28/2005 | Elizabeth Ori | 0.30 | Retrieve G-I Holdings and USG dockets and distribute to team. |
| 11/29/2005 | Michael A Coyne | 11.00 | **...**prepare mailing materials re same (.8);....................; prepare mail merge documents for outstanding firms (2.0). |
| 11/30/2005 | Elizabeth Ori | 0.30 | Retrieve G-I Holdings and USG dockets and distribute to team. |
| 12/1/2005 | Kristen Weber | 4.00 | ...retrieve pleadings from docket for attorney review (.1); retrieve correspondence letter for attorney review (.1). |

| 12/12/2005 | Lauren DeVault | 4.50 | ...............; search and retrieve pleadings from docket (3.1); |
| 12/13/2005 | Lauren DeVault | 7.10 | ...........; search and retrieve pleadings from docket (4.6); ...search and retrieve case materials from central files (1.1);.............. |
| 12/15/2005 | Lauren DeVault | 8.00 | Search and retrieve pleadings from docket (1.1);... |
| 12/16/2005 | Lauren DeVault | 2.70 | ...search and retrieve pleadings from docket (1.0). |
| 12/20/2005 | Lauren DeVault | 2.90 | Search and retrieve pleadings from docket (1.3);... |
| 12/21/2005 | Lauren DeVault | 3.00 | ...bates label document production (2.2); |
| 12/15/2005 | Margaret S Utgoff | 6.70 | Prepare packages to mail to co-counsel (2.0);............ |

Response Exhibit 1

The Initial Report requests greater explanation concerning multiple professionals' attendance at, and preparation for, fifteen conferences and three hearings. The following explains the topic(s) of each conference or hearing and the need for each professional's presence due to such professional's particular area of expertise.  As has been explained before, it is not K&E's routine practice to have multiple K&E attorneys at conferences and hearings.  When multiple professionals were present at a conference or hearing, it was because K&E made the conscious decision that it was more advantageous to have multiple professionals participate, rather than relying on information to "flow down" after the conference had concluded.  This is especially important in this case, where there are multiple proceedings pending in multiple forums, all ultimately connected to these Chapter 11 cases.  It is critical that, for example, members of the criminal defense team meet regularly and coordinate with the PI team, as many of the matters addressed in the defense of the indictment will relate directly to the allowance and viability of certain PI claims.  Also, for example, the PD Committee and PI Committee each served Grace with nearly identical discovery requests during the Nineteenth Interim Period, a fact that necessitated the use of numerous joint PI/PD team meetings.  Similarly, the Chapter 11 Plan will be impacted by every pending piece of litigation, in no matter what forum.

(a)    Preparation for and attendance at October 24, 2005 Omnibus Hearing (Interim Report, Exhibit A, Item 1)

Baer/Basta/Browdy/Harding/Sinanyan

Numerous complex matters were before the Court at the October 24th omnibus hearing, including: status reports on the 14th and 15th omnibus claims objections, Grace's emergency motion to take discovery of PI claimants' attorneys, and a motion to clarify or modify the PI estimation case management order.  The required preparation for this hearing was extensive, and included legal research, preparation of power point presentations on numerous topics and review of factual information.

I conducted the hearing and presented certain bankruptcy-related motions.  I also presented the status report on the 14th omnibus claims objection and the portion of the 15th omnibus claims objection status report relating to environmental claims.  Ms. Browdy presented the bulk of the 15th omnibus status report.

Ms. Harding, the partner who heads up the PI team, did much of the heavy lifting at the October hearing, addressing both the motion for leave to take discovery and the motion to clarify or modify the PI case management order.  The discovery motion in particular included a detailed power point presentation, which Ms. Harding presented at the hearing.  Ms. Basta, a key associate on the PI team, was charged with preparing all hearing presentation slides relating to PI issues and researching related legal and factual hearing issues. Both the research and presentation were adjusted and updated up to the start of the hearing, thus necessitating Ms. Basta's presence at the hearing. Finally, restructuring associate Lori Sinanyan prepared the "bankruptcy-specific" non-estimation

pleadings that were addressed at the hearing; she attended only relevant portions of the hearing via telephone.

(b)     October 6, 2005 Conference (Interim Report, Exhibit A, Item 2)

Mace/Chiou/Cohen/Clark/Koch/Jacobson/Urgenson

The October 6th conference was one in a series of weekly "joint defense" conferences scheduled for members of both the K&E criminal defense team and the other law firms representing Grace and seven of Grace's former officers in connection with the grand jury criminal indictment relating to the Debtors' former vermiculite mining and processing activities in Libby, Montana.

K&E attorneys on the criminal matter participate in these weekly conferences as matters specific to their area of responsibility are on the conference agenda.   The purpose of these joint defense conferences is to provide a forum for all criminal team co-counsel to discuss and coordinate various aspects of Grace's criminal defense, including: the coordination of witness interviews, the sharing of newly-received information, the discussion of the outcome and import of research assignments, and the assignment of new tasks.  Of particular importance, these weekly conferences also serve as internal team meetings for the criminal team, allowing the criminal team to coordinate work assignments for the upcoming week and avoid the inefficiency of having partners describe case status on multiple occasions to various associates.  Generally, the joint defense conferences are in-person meetings for K&E attorneys, with other law firms participating via telephone.

Lawrence Urgenson, as senior litigation partner on the Grace criminal matter, is ultimately responsible for all of Grace's criminal defense efforts.   He attended the October 6th conference in this capacity.  William Jacobson, the junior litigation partner on the criminal matter, is responsible for managing the legal strategy, motions practice and factual development of Grace's defense.  As such, his participation in this conference was necessary.  Tyler Mace participated as the lead litigation associate on the criminal defense team, responsible for, among other things, the coordination of discovery and defense efforts with the individual defendants, as well as day-to-day management of the more junior associates assigned to the matter.  Christopher Chiou, Kenneth Clark, Rebecca Koch and Barak Cohen participated in their roles as junior litigation associates on the criminal matter, each responsible for many areas of legal research and specific factual development.  Each attended the October 6th conference in order to report on the outcome of his or her previous assignments and to receive new assignments

(c)     October 14, 2005 Conference (Interim Report, Exhibit A, Item 3)

Mace/Chiou/Cohen/Koch/Jacobson/Urgenson

The October 14th conference was another weekly joint defense conference, and the participating attorneys attended in their respective roles as described under paragraph (b) above.

(d)    October 20, 2005 Conference (Interim Report, Exhibit A, Item 4)

Mace/Cohen/Clark/Koch

The October 20th conference was another weekly joint defense conference. The participating attorneys attended in their respective roles listed under paragraph (b) above.

(e)    October 25, 2005 Conference (Interim Report, Exhibit A, Item 5)

Mace/Clark/Koch/Jacobson/Klapper/Urgenson

The October 25th conference was an in-person meeting between K&E attorneys and attorneys from Holme Roberts & Owens, the law firm that represented Grace in previous litigation with the Environmental Protection Agency regarding the Libby mine and related properties. This EPA litigation generated considerable work product, and, in order to avoid replicating such work product, K&E requested that Holme Roberts give K&E a detailed presentation of the scientific issues underlying the prior litigation, as such issues are virtually identical to the scientific issues faced by Grace in the criminal case. With respect to the different amounts of time spent by different attorneys at this conference, K&E made every effort to limit the number of attorneys present during each part of the presentation. To this end, associates Ms. Koch and Mr. Clark did not attend the complete presentation, but rather only those portions that bore direct relation to their assignments. In addition, since Mr. Urgenson was not available to attend the entire presentation, Mr. Mace attended in Mr. Urgenson's absence, and so attended the entire presentation. In this role, Mr. Mace bore responsibility for the preliminary work product related to the presentation. Mr. Jacobson attended in his role as junior litigation partner on the criminal matter, and Mr. Klapper attended in order to develop an outline regarding the multitude of scientific issues related to the criminal defense case.

(f)    October 27, 2005 Conference  (Exhibit A, Item 6)

Chiou/Cohen/Clark/Koch/Jacobson

The October 27th conference was another weekly joint defense conference. The participating attorneys attended in their respective roles described under paragraph (b) above.

(g)    November 2, 2005 Conference (Exhibit A, Item 7)

Friedland/Mendelson/Bianca/Utgoff/Stansbury

The five time entries set forth in the Initial Report under Exhibit A, Item 7 actually represent two separate conferences.

The first November 2nd conference (time entries of Jonathan Friedland, David Mendelson, Salvatore Bianca, and 2.0 hours of Brian Stansbury's entry) was a joint discovery conference of the PI and PD teams. Shortly before this conference, both the PD Committee and the PI Committee had served Grace with nearly identical interrogatories and document requests relating to the estimation

litigation.  The degree of overlap amongst these requests meant that the PI and PD teams needed to meet and coordinate so as not to (a) duplicate efforts or (b) be inconsistent in response to these discovery requests.  Mr. Friedland participated in his role as restructuring partner assisting the PI litigation team.  Mr. Mendelson attended as junior litigation partner on the PI team, responsible for supervising the discovery responses to the PI Committee.  Mr. Bianca, as a primary drafter of the PI Questionnaire, is knowledgeable about the Grace PI data and type of information sought in the discovery requests, and attended in such role.  In addition, Mr. Bianca, as senior restructuring associate on the case, is involved in the PI, PD and bankruptcy aspects of the case.  As such, he provides continuity and coherence amongst teams, and his presence is often required at cross-team meetings.  Mr. Stansbury was responsible for drafting the responses to the PI Committee's discovery requests, and attended in that role.

The second November 2nd conference (4.0 hours of Margaret Utgoff's time entry and 1.7 hours of Brian Stansbury's time entry) represented time spent preparing for and attending a separate, unrelated conference with PD experts. 3.0 hours of Ms. Utgoff's entry ("prepare bar date materials") was unrelated to any conference.

(h)    November 14, 2005 Hearing Preparation and Attendance (Exhibit A, Item 8)

Friedland/Baer/Sinanyan/Bianca/Browdy

The matters up at the November 2005 omnibus hearing were again numerous and quite complex, and included the following:  hearing on Phase I PD estimation – procedural approach to constructive notice and dust sampling methodology, status conference on remaining open 15th omnibus claim objections, Grace motion for injunction regarding New Jersey EPA matter and status hearings on unresolved 5th and 8th omnibus objection to claims.

Again, preparation for this hearing was extensive, and included legal research, preparation of power point presentations on numerous topics and review of factual information. In addition to generally conducting the hearing and presenting certain bankruptcy-related issues, I presented Grace's Motion for Injunction regarding the New Jersey matter.  Ms. Browdy conducted the PD estimation hearing, as well as the status conference on 15th omnibus claims (all PD claims).  Mr. Bianca's time consisted of creating presentation materials related to the PI bar date motion, and researching and reviewing the related case law, and attending the hearing in connection with these matters.  As restructuring partner responsible for review of the PD claims, Mr. Friedland monitored the portions of the hearing related to 15th omnibus objections. Ms. Sinanyan prepared the "bankruptcy-specific" non-estimation pleadings that were addressed at the hearing and she attended only relevant portions of the hearing via telephone.

(i)    November 3, 2005 Conference (Exhibit A, Item 9)

Mace/Clark/Koch/Jacobson/Klapper

The time entries shown on Exhibit A, Item 9 actually represent three separate conferences. The first was another weekly joint defense telephone conference (1.0 hour of Mr. Mace's time entry,

1.4 hours of Mr. Jacobson's entry, and the entirety of Mr. Clark's and Ms. Koch's entries). Each of these attorneys attended the joint defense conference in their respective role as set forth under paragraph (b) above. The second conference was between Mr. Mace and counsel for a criminal defense witness (.6 hours of Mr. Mace's entry). The third conference was a separate conference with a different witness (5.5 hours of Mr. Jacobson's entry and the entirety of Mr. Klapper's entry). (A portion of Mr. Jacobson's 5.5 hours was spent preparing the expert and the remainder of the time spent conducting the witness conference.)

(j)      November 10, 2005 Conference (Exhibit A, Item 10)

Chiou/Cohen/Clark/Koch/Jacobson

The November 10 conference was another weekly joint defense conference. The participating attorneys attended in their respective roles described under paragraph (b) above.

(k)      December 5, 2005 Conference (Exhibit A, Item 11)

Bianca/Stansbury/Browdy/Marchant/Liebenstein/Harding

The December 5th conference was an in-person conference held at K&E's Washington, D.C. offices (with some non-D.C.-based attorneys participating via telephone). The purpose of the conference was to coordinate the use of experts across the PD, PI and criminal proceedings. This was a joint conference for members of all 3 (PD, PI and criminal) teams, scheduled to provide an efficient forum in which to coordinate these expert witness matters and ensure testimony consistency and accuracy across forums and matters. Attorneys attended who were responsible for working with different witnesses in different matters. Specifically, Ms. Browdy participated in her role as lead partner in the PD proceedings. Ms. Harding attended in her role as lead partner on the PI proceedings. Ms. Marchant attended in her role as the litigation partner responsible for PI claims estimation experts in the areas of causation, exposure and risk assessment and epidemiology. Mr. Bianca participated in his role as restructuring associate responsible for PI claims estimation causation experts. Mr. Stansbury's role was to help determine which experts identified in the Chapter 11 case could testify in the criminal case, and what the nature of their testimony would be. Mr. Liebenstein attended a portion of the conference related to PI estimation experts utilized to help build the models for estimating actual PI claims.

(l)      December 6, 2005 Conference (Exhibit A, Item 12)

Friedland/Baer/Bianca/Dierkes/Blatnick/Stansbury/Liebenstein/Harding

The time entries listed under Item 12 of Exhibit A represent three different conferences.

The first December 6th conference was a continuation of the conference described under paragraph (k) above. Participants included Ms. Harding, Mr. Stansbury and Mr. Liebenstein, each of whom attended in the roles described under paragraph (k).

The second December 6th conference was a PI team expert witness conference with Grace, attended by Ms. Harding, Mr. Stansbury and Mr. Bianca. Ms. Harding attended in her role as lead PI team partner, and Mr. Stansbury as litigation associate on the PI team. Mr. Bianca attended in his PI team role of working with causation experts on PI estimation issues.

The third December 6th conference was a telephone conference among Mr. Friedland, Mr. Bianca, Mr. Dierkes, Mr. Blatnick and myself, related to PD claims objected to in the 15th omnibus objection. The 15th omnibus objection was so massive that K&E formed a "sub-group" of PD team members to concentrate on 15th omnibus objection matters. Mr. Dierkes and Mr. Blatnick attended in their roles as primary litigation associates on this sub-group. Mr. Friedland, who assembled the team that reviewed and objected to the PD claims, attended in this role. Mr. Bianca attended in his role as the restructuring associate on the sub-group, and I attended as restructuring partner working with the PD team.

    (m)    December 9 - 19, 2005 Hearing Preparation and Attendance at December 19, 2005 Omnibus Hearing (Exhibit A, Item 13)

Browdy/Baer/Liebenstein/Harding/Bernick/Bianca

The December omnibus hearing addressed several key complex and significant matters. Matters addressed at this hearing included: a status report on entire case, including estimation and plan progress; extension of plan exclusivity; the motion of Anderson Memorial Hospital for class certification; approval of a settlement motion with Intercat, Inc.; and three Montana-related matters: Grace's motion to expand scope of preliminary injunction to include actions against the State of Montana, the Montana plaintiffs' motion for leave to amend complaint, and the State of Montana's motion for relief from stay.

David Bernick conducted significant portions of this hearing. As you are aware, Mr. Bernick is the senior attorney on the Grace case, and the quarterback of the entire case. He is the lead attorney on any global issues that are addressed in Court, especially those related to the chapter 11 plan and the estimation process. Mr. Bernick presented the status report on the case and the extension of exclusivity motion. Each of these complicated and overlapping matters required extensive time, both in Court and in preparation for the Court presentation.

Ms. Browdy conducted the portions of the hearing related to Anderson Memorial Hospital's class action certification motion and the status of PD estimation proceedings. I conducted the portion of the hearing related to Grace's motion to extend the preliminary injunction to include the State of Montana as a protected party and the related Montana plaintiffs' motion for leave to amend their complaint. I also presented the Intercat settlement motion.

Mr. Liebenstein's time was spent preparing materials on estimation and asbestos claims to support Mr. Bernick's presentation at the hearing.. Mr. Leibenstein is working directly with Grace's estimation experts and prepared materials relating to that work. Likewise, Ms. Harding's time was spent in preparation and support of information and materials for Mr. Bernick's presentation on case status as well as PI Estimation and exclusivity. While neither Mr. Liebenstein nor Ms. Harding

spoke at the hearing, their attendance was required as they prepared materials up to the moment of the hearing and supported Mr. Bernick's presentation at the hearing.

Mr. Bianca assisted in preparation of various materials for the hearing.  He attended (telephonically) the portions of the hearing related to the matters in which he was involved.

(n)    December 5, 2005 Conference (Exhibit A, Item 14)

Jacobson/Smith/Klapper/Urgenson

The December 5th time entries listed under Exhibit A, Item 14 actually represent three conferences.  The first was an internal K&E telephone conference among members of the criminal and civil legal teams regarding case status and strategy (.8 Urgenson, 1.0 Jacobson, 2.0 Klapper, and an unspecified portion of Ms. Smith's 6.0 hour entry).  The second was a conference among K&E criminal and PI team members, Grace attorneys, and other law firms' attorneys regarding scientific issues common to both the criminal and PI matters (Urgenson 4.0, Klapper 7.5, unspecified portion of Ms. Smith's time entry, 6.5 Jacobson).  Mr. Urgenson attended in his role as quarterback of the criminal team, Ms. Smith in her role as litigation partner in charge of various expert witnesses, and Mr. Klapper attended in order to make a presentation to Grace and the other law firms regarding scientific issues.

(o)    December 8, 2005 Conference (Exhibit A, Item 15)

Mace/Chiou/Cohen/Clark/Koch/Jacobson/Grummer/Urgenson

The November 10th conference was another weekly joint defense conference.  The participating attorneys attended in their respective roles described under paragraph (b) above.  In addition, as Environmental partner on the criminal matter, Mr. Grummer participated in the portions of the conference related to environmental issues.

(p)    December 12, 2005 Witness Interview (Exhibit A, Item 16)

Mace/Chiou/Jacobson/Urgenson

The December 12th interview was an interview of one key government witness. Mr. Jacobson led the interview and Mr. Mace attended portions of the interview in order to assist Mr. Jacobson.  Mr. Urgenson joined the interview periodically throughout the day in order to assess the potential impact of the witness at trial.  Mr. Chiou attended the interview only briefly, in order to review several key documents.

(q)    December 15, 2005 Conference (Exhibit A, Item 17)

Mace/Chiou/Jacobson/Grummer

The December 15th conference was another weekly joint defense conference.    The participating attorneys attended in their respective roles described under paragraph (b) above, while Mr. Grummer participated in his role as described under paragraph (o) above.

(r)    December 22, 2005 Conference (Exhibit A, Item 18)

Cohen/Clark/Jacobson/Grummer/Urgenson

The December 22nd conference was another weekly joint defense conference.    The participating attorneys attended in their respective roles described under paragraph (b) above, while Mr. Grummer participated in his role as described under paragraph (o) above.

Response Exhibit 2

K&E uses legal assistants/paraprofessionals when necessary to perform a wide range of tasks that are vital to K&E attorneys' effective representation of Grace in these Chapter 11 cases.  The Initial Report (Exhibit B) questions many of such legal assistant's time entries as being for "ministerial" functions.  As discussed by K&E in the Prior Response, these tasks are not ministerial in nature, but, in fact, could not have been performed by secretaries or other clerical personnel untrained either as to these relatively complex tasks or as to these Chapter 11 cases in particular.  If K&E paraprofessionals had not accomplished these tasks, attorneys would have had to perform them, which would result in far higher bills.

As explained in detail in the Prior Response, several tasks that were ongoing during this period involved many legal assistants and paraprofessionals, including the extensive PD claims review process.  Initially, the claims review process was led by restructuring legal and project assistants, Katie Phillips, Lauren Devault and Kristen Weber with assistance on specific projects by especially Mary Mortell, Whitney Lappley and Elizabeth Ori.  However, as the data became more complicated, litigation legal and project assistants Kathleen Cawley, Michael Rosenberg and Erin Skowron became involved. They were also assisted by Jon Knisley, Albinas Prizgintas, Keith Leluga, Maria Negron and Katrina Simek.  During the Nineteenth Interim Period, the legal and project assistants were continuing to organize and review, claim by claim, all 4000 PD claims and the hundreds of thousands of pages of back-up documentation. Ms. Cawley and Mr. Rosenberg were brought into the Grace case specifically because of their extensive knowledge of database workings and ability to manage large amounts of data.  The PD paraprofessional team, under the leadership of Ms. Cawley and Mr. Rosenberg, has been able to make the claim review process both more efficient and more cost-effective by, for example, permitting the reduction in outsourcing of certain tasks.

In addition to claims review, the PD paraprofessional team, during the Nineteenth Interim Period, also assisted the PD team attorneys with review and organization of expert reports and preparation for PD estimation Phase II. At the same time, restructuring legal and project assistants continue to support all of the teams in review, coordination, filing, and retrieval of all of the pleadings and correspondence in the cases.  While it may seem to be ministerial to "file" or "retrieve" documents in a case, in this matter, with the number of simultaneous teams reviewing and attending to issues for different purposes, even something which appears as simple as filing a document is not so simple since where it is put and who is sent copies takes a knowledge of the case and an understanding of the interrelationships of the various teams and issues.

At the same time, the PI and Criminal teams continued their extensive document reviews described in the Prior Response.  Again, they had to create and maintain war rooms and organize and assist in the review of millions of pages of documents. They also assisted the attorneys with hearing preparation. The PI paraprofessional team was led by Margaret Utgoff, and included Joshua Pierce, Stephanie Rein, Michael Coyne, and Laura Mellis, while the criminal defense paraprofessional team was led by Terrell Stansbury, and included Amber Horn, Suzanne McPhail and Velma Worrells.

Several of the questioned time entries listed on Exhibit B of the Initial Report represent time spent by criminal team attorneys (specifically, Tyler Mace and Barak Cohen) on matters very far removed from ministerial or clerical.  These several entries are set forth, and explained in detail, below:

| | | | |
|---|---|---|---|
| 12/14/2005 | Tyler D Mace | 7.30 | Perform case administrative tasks (2.8);.............. |
| 12/19/2005 | Tyler D Mace | 6.50 | .................;  perform   case administrative tasks (1.4);................ |
| 12/21/2005 | Tyler D Mace | 4.20 | Compile key documents in master joint defense chronology (2.2);............. |
| 12/23/2005 | Tyler D Mace | 6.00 | Compile materials for L. Urgenson (2.3);.............. |
| 11/17/2005 | Barak Cohen | 6.00 | Prepare material for use in hearing. |

Mr. Mace is the associate on the criminal defense team charged with (under the supervision of Mr. Urgenson and Mr. Jacobson) managing the criminal defense effort.  Due to the complexity of the matter, management of the many professionals involved is a critical, ongoing requirement.  Had Mr. Mace not taken on this responsibility, either Mr. Urgenson or Mr. Jacobson, at their far higher billing rates, would be required to do so.  The time that Mr. Mace has described as "performing case administrative tasks" was time he spent managing and coordinating such professionals' various roles and responsibilities.  Mr. Mace used the term "administrative tasks" to differentiate such management time from his time spent on other, specific aspects of the criminal defense case.  In addition, Mr. Mace is responsible for managing a large portion of the litigation costs that are generated by the criminal defense, and for reviewing with Grace the indemnification and fee advancement arrangements with the individual defendants. With respect to Mr. Mace's time spent compiling key materials, the criminal case includes over five million pages of documents, thousands of draft pleadings and case citations, and hundreds of factual memos and interview reports.  It is of considerable savings to Grace that K&E engages associates to prepare a focused collection of key materials for senior partners to review and respond, according to pending case needs.  Mr. Cohen's time spent preparing materials for use in hearing consisted of his preparing a briefing book and outline of oral argument for Mr. Urgenson to use during argument of a critical motion at an upcoming hearing.

For the reasons cited above, K&E respectfully disagrees with the Initial Report's categorization of all the entries on Exhibit B as "clerical" and requests approval of the time billed as the rates requested.

Response Exhibit 3

The Initial Report identifies six hotel expenses with respect to which the Fee Auditor requests an explanation of why the expense should not be considered excessive.  Each is set forth below, followed by the requested explanation:

11/06/2005    535.73         Travel Expense, Elli Leibenstein, Hotel, New York, NY,
                             11/06/05 (Expert Witness Conference)

On November 6th, Mr. Leibenstein stayed at the Waldorf Hotel, a K&E preferred hotel, and so received K&E's discounted rate.  Since there were no standard rooms available at the time, he was booked into the only available room, the nightly rate of which, with K&E's discount, and including taxes and several work-related telephone calls, came to $535.73.

11/08/2005    542.73         Travel Expense, Elli Leibenstein, Hotel, Washington, DC,
                             11/08/05 (Expert Witness Meeting)

11/15/2005    502.66         Travel Expense, Elli Leibenstein, Hotel, Washington, DC,
                             11/15/05 (Expert Witness Conference)

Mr. Leibenstein's two Washington, D.C. hotel stays above were both at the Hilton Capital Hotel.  On November 8th, the best available rate for a room at the Hilton was the $542.73 rate shown above.  On November 15th, the best available rate was $502.66. Due to the short notice provided for attendance at these meetings, these were the best rates Mr. Liebenstein could find for an acceptable hotel in close proximity to K & E's Washington DC office.

11/08/2005    350.29         Travel Expense, Tyler Mace, Hotel, Boca Raton, FL,
                             11/08/05, (Witness Meeting)

11/09/2005    339.24         Travel Expense, William Jacobson, Hotel, Boca Raton, FL,
                             11/09/05, (Witness Meeting)

11/09/2005    339.24         Travel Expense, Tyler Mace, Hotel, Boca Raton, FL,
                             11/09/05, (Witness Meeting)

With regard to the three Boca Raton hotel expenses listed above, these hotel expenses were incurred in the aftermath of Hurricane Wilma, a Category 4-5 hurricane that struck Florida in October of 2005.  As a result of the destruction of property caused by the hurricane, many area hotels were not open at the time, and the attorneys had a very limited choice of hotels.  The rates shown were the best available at that time.

11/29/2005    649.10         Travel Expense, Elli Leibenstein, Hotel, New York, NY,
                             11/29/05 (Expert Witness Conference) (last minute booking of
                             only acceptable room available)

With respect to Mr. Leibenstein's New York hotel stay listed above, the date of this conference was immediately after Thanksgiving, which represents the peak time and cost for New York travel due to both the holiday and the large number of conventions held in New York City at that time of year.   As the decision to send Mr. Leibenstein to this conference was made at the last minute, he was very limited in choice of rooms on this trip.   He again stayed at the Waldorf and so received K&E's discount, and the price listed indicates K&E's discounted rate on the least expensive room available at that time.