IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

Objection Deadline: July 7, 2006 at 4:00 p.m.
Hearing Date: July 24, 2006 at 2:00 p.m.

## MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN A LEASE AND SUBLEASE FOR CERTAIN REAL PROPERTY IN HOUSTON, TEXAS

The above-captioned Debtors submit this motion (the "Motion") for entry of an Order authorizing the Debtors to assume and assign a lease and sublease for real property in Houston, Texas. The Motion is in the best-interest of the Debtors, their estates, their creditors, and all other parties in-interest because it would allow the Debtors to: (i) immediately recover from the prime landlord a substantial portion of the potential future profit from the Debtors' interest in the lease and sublease and (ii) relieve the Debtors of the administrative burdens and financial risks

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food >N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

associated with maintaining the lease and sublease. In support of this Motion, the Debtors respectfully state as follows:

### Jurisdiction

1. This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. The statutory basis for the relief requested herein are sections 105(a), 363(b), 365(a), and 365(f)(2) of Title 11 of the United States Code (the "Bankruptcy Code").

### Background

3. On April 2, 2001 (the "Petition Date"), each of the Debtors file a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4. By Real Property Ground Lease dated December 5, 1978, as assigned and amended to date (the "Prime Lease"), between Northwest Village Limited, a Texas limited partnership and Del Taco Corporation, a Delaware corporation, Northwest Village Limited leased to Del Taco Corporation that certain parcel of land in the City of Houston, Harris County, State of Texas, more particularly described in the Prime Lease (the "Premises").

5. Northwest Village Limited and Del Taco Corporation entered into a First Amendment to Lease dated May 21, 1979 and a Memorandum of Real Property Ground Lease dated May 25, 1979.

6. Pursuant to Lease Guaranty Agreement dated June 7, 1979 (the "Grace Guaranty"), W.R. Grace & Co. – Conn. ("Grace-Conn."), a Connecticut corporation and one of the Debtors herein, guaranteed the obligations of Del Taco Corporation under the Prime Lease.

2

7. Pursuant to multiple assignments, SW 290, L.P. (the "Prime Landlord"), a Colorado limited partnership, became the successor in interest to Northwest Village Limited. Pursuant to Assignment dated February 27, 1985, Creative Food 'N Fun Company ("CF&F"), a Delaware Corporation and one of the Debtors herein, became the successor in interest to Del Taco Corporation.

8. By Agreement of Sublease (the "Sublease") dated March 28, 1988 between CF&F and Whataburger, Inc. (the "Subtenant"), CF&F subleased the Premises to the Subtenant.

9. The effect of all of the foregoing transactions is that (i) the Prime Landlord is the owner and prime landlord of the Premises, (ii) CF&F is the Prime Landlord's tenant under the Prime Lease, (iii) the Subtenant is Grace's subtenant under the Sublease, and (iv) Grace-Conn. has guaranteed CF&F's obligations to the Prime Landlord under the Prime Lease.

10. On June 5, 2006, CF&F and the Prime Landlord entered into the Assignment and Assumption Agreement (a copy of which is attached as Exhibit A), by which: (i) CF&F would assign to the Prime Landlord all of CF&F's rights and interests related to the Prime Lease and Sublease, (ii) the Prime Landlord would accept CF&F's assignment and would also assume all of CF&F's obligations under the Prime Lease and the Sublease, and (iii) the Prime Landlord would release Grace-Conn. from any liability under the Grace Guaranty.

11. The consideration payable to CF&F under the Assignment and Assumption Agreement would be $50,000.00. This represents slightly *more than* the entire net profit to CF&F over the existing term of the Prime Lease and Sublease, without even discounting those future profits to present value.

12. There is a single five year renewal option remaining under both the Prime Lease and Sublease. If this option were to be exercised, the $50,000 payment would represent the

present value of the future profits at a discount rate of approximately 23.5%. The relatively high discount rate reflects, in addition to the possibility that the Subtenant will not exercise the renewal option, the Prime Landlord's and the Debtors' recognition of certain deferred maintenance obligations with respect to the Premises. If the Subtenant were to default under the Sublease, CF&F would need to perform the deferred maintenance. CF&F would also have to undertake extensive renovations if the Premises had to be leased to a new tenant. Under the Assignment and Assumption Agreement, the Prime Landlord is assuming these risks.

## Relief Requested

13.  Pursuant to sections 105(a), 363(b), 365(a), and 365(f) of the Bankruptcy Code, the Debtors request approval to enter into the Assignment and Assumption Agreement, by which CF&F would: (i) assume the Prime Lease and the Sublease, (ii) assign all of its rights and obligations under the Prime Lease and Sublease to the Prime Landlord and (iii) be paid $50,000 (collectively, the "Requested Relief").

## Basis for the Requested Relief

14.  Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may ... reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The "business judgment" standard is applied to determine whether the rejection or assumption of an executory contract or unexpired lease should be authorized. See NLRB v. Bildisco & Bildisco, 465 U.S. 513, 524 (1984); see In re Taylor, 913 F.2d 102 (3d Cir. 1990); Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.), 872 F.2d 36 (3d. Cir. 1989). Accordingly, assumption or rejection of any executory contract is appropriate where the assumption or rejection would benefit the estate. Sharon Steel Corp., 872 F.2d at 40. This standard is satisfied when a debtor has made a business determination that

4

rejection would benefit the estate. See Commercial Fin. Ltd. v. Hawaii Dimensions, Inc. (In re Hawaii Dimensions, Inc.), 47 B.R. 425, 427 (Bankr. D. Haw. 1985).

15. Section 363(b)(1) of the Bankruptcy Code provides that a debtor in possession, "after notice and hearing may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

16. Section 365(f)(2) of the Bankruptcy Code sets forth the following prerequisites for the assignment of a lease: (i) the lease must be assumed in accordance with section 365 and (ii) the assignee of the lease must provide adequate assurance of future performance. 11 U.S.C. 365(f)(2). It is also well-established that the decision to assume and assign an executory contract or lease is also a matter within the "business judgment" of the debtor. See In re Taylor, 913 F.2d 36 (3d Cir. 1989).

17. Therefore, if the Debtors' business judgment has been reasonably exercised, and the Debtors can establish adequate assurance of future performance on the part of the Prime Landlord, then the Court should grant the Requested Relief. See, e.g., NLRB v. Bildisco & Bildisco, 465 U.S. at 523; Group of Institutional Investors v. Chicago M. St. P. & P.R.R. Co., 318 U.S. 523 (1943); Sharon Steel Corp., 872 F.2d at 39-40.

## Argument

18. The Debtors, in their business judgment, have determined that the Requested Relief is in the best interest of the Debtors' estates. The Debtors do not use the Premises, and the Premises are not necessary for the Debtors' reorganization efforts. Instead, CF&F serves merely as a "middle-man" by (i) leasing the Premises from the Prime Landlord and (ii) simultaneously subleasing the Premises to the Subtenant. The Requested Relief would also relieve CF&F of the administrative burdens and relieve CF&F and Grace-Conn. of the financial risks associated with

serving as the "middle-man" in this structure, while recouping a substantial portion of the potential remaining profit under the Prime Lease and Sublease.

19. CF&F is not in default of any of its obligations under the Prime Lease or the Sublease. Therefore, there will be no cure obligations to satisfy in connection with the assumption and assignment of those agreements.

20. The requirement of adequate protection of future performance is also satisfied. If the Court grants the Requested Relief, then the only effect would be that CF&F would no longer serve as an intermediary between the Prime Landlord and the Subtenant. Because (i) CF&F's obligations with respect to the Subtenant relate only to making the Premises available and suitable for occupation and (ii) the Prime Landlord is already primarily responsible for these same obligations, the Requested Relief would not materially alter Subtenant's interest with respect to the Premises. Further, the Debtors are not aware of any information that suggests the Prime Landlord will not be able to subsequently satisfy its obligation under the Prime Lease or Sublease.

## Conclusion

21. The Requested Relief is in the best interest of the Debtors, their creditors and estates. As described above, the assignment of the Prime Lease and Sublease would: (i) allow CF&F to immediately receive $50,000, which represents a substantial portion of the potential remaining profit and (ii) relieve CF&F of the administrative burdens and relieve CF&F and Grace-Conn. of the financial risks associated with maintaining the Prime Lease, Sublease and the Premises.

## Notice

22. Notice of this Motion has been given to: (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors'

DOCS_DE:119108.1

prepetition lenders, (iv) counsel to all official committees appointed by the United States Trustee, (v) the Subtenant (vi) counsel to the Subtenant, (vii) the Prime Landlord; (viii) the Prime Landlord's lender; and (ix) all those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Relief

23. No previous application for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, (i) approving the assumption and assignment of the Debtors' rights and obligations under the Lease and Sublease to Prime Landlord, pursuant to the terms of the Assignment and Assumption Agreement, (ii) determining that no defaults exist under the Prime Lease or the Sublease that are required to be cured in connection with the assumption and assignment, and (iii) granting such other and further relief as is just and proper.

Dated: June 19, 2006

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL YOUNG JONES & WEINTRAUB LLP

*/s/ James E. O'Neill*

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession