## **EXHIBIT A**

Assumption and Assignment Agreement

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (this "Agreement") is made this 5 day of June, 2006, by and between CREATIVE FOOD 'N FUN COMPANY, a Delaware corporation having an address c/o W. R. Grace & Co. – Conn., 7500 Grace Drive, Columbia, Maryland 21044 ("CF&F") and SW 290, L.P., a Colorado limited partnership having an address c/o Southwestern Investment Group, Inc., 333 West Hampden Avenue, Suite 810, Englewood, Colorado 80110 ("the Landlord").

### W I T N E S S E T H:

WHEREAS, by Real Property Ground Lease dated December 5, 1978, as assigned and amended to date (the "Lease"), between Northwest Village Limited, a Texas limited partnership and predecessor in interest to Landlord, and Del Taco Corporation, a Delaware corporation and predecessor in interest to CF&F, Northwest Village Limited leased to Del Taco Corporation that certain parcel of land in the City of Houston, Harris County, State of Texas, more particularly described in the Lease (the "Premises"); and

WHEREAS, Northwest Village Limited and Del Taco Corporation entered into a First Amendment to Lease dated May 21, 1979 and a Memorandum of Real Property Ground Lease dated May 25, 1979; and

WHEREAS, pursuant to Lease Guaranty Agreement dated June 7, 1979 (the "Grace Guaranty"), W. R. Grace & Co. – Conn., a Connecticut corporation formerly known as W. R. Grace & Co. ("Grace") guaranteed the obligations of Del Taco Corporation under the Lease; and

WHEREAS, pursuant to multiple assignments, Landlord became the successor in interest to Northwest Village Limited, and pursuant to Assignment dated February 27, 1985, CF&F became the successor in interest to Del Taco Corporation; and

WHEREAS, by Agreement of Sublease dated March 28, 1988 between CF&F and Whataburger, Inc. (the "Sublease"), a copy of which is attached hereto as Exhibit A, CF&F subleased the Premises to Whataburger, Inc.; and

WHEREAS Grace and a number of its subsidiaries, including CF&F, filed a voluntary petition for reorganization relief pursuant to Title 11 of the United States Code, 11 U.S.C. Sections 101 et seq., (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on April 2, 2001 (the "Filing Date"), and has operated its business as a debtor-in-possession (as defined in Section 1101 of

the Bankruptcy Code), as authorized by Sections 1107 and 1108 of the Bankruptcy Code since the Filing Date; and

WHEREAS CF&F now desires to sell and assign to the Landlord all of its right, title and interest in and to the Lease and the Sublease, and the Landlord desires to purchase such interest, accept such assignment and assume the obligations of CF&F thereunder, on the terms and conditions hereinafter set forth,

NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which is hereby acknowledged, and the mutual covenants herein contained, the parties hereto hereby agree as follows:

1. <u>Assignment and Assumption.</u>

1.1. <u>Assignment</u>. Subject to the terms and conditions of Section 6 of this Agreement, CF&F hereby assigns, conveys, sets over and transfers unto the Landlord, to have and to hold from and after the Effective Date (as hereinafter defined), (i) all of the right, title and interest of CF&F in, to and under the Lease and the leasehold estate created thereby, for the balance of the term of the Lease, subject to the terms and conditions of the Sublease, and (ii) all of the right, title and interest of CF&F in, to and under the Sublease.

1.2. <u>Assumption</u>. Subject to the terms and conditions of Section 6 of this Agreement, Landlord hereby accepts such assignment and assumes the performance and observance of, and agrees to be bound by all of the terms, covenants, agreements, provisions and conditions of, the Lease and the Sublease on CF&F's part to be performed and observed for the period from and after the Effective Date.

1.3. <u>Obligations Until Effective Date</u>. To the best of each party's knowledge, Grace, CF&F and the Landlord each hereby represents to the other that it is not aware of any default that remains uncured under the Lease, the Grace Guaranty and/or the Sublease prior to the date hereof. From the date hereof until the Effective Date, (i) the Landlord shall continue to remain liable for all obligations of Landlord under the Lease, (ii) CF&F and Grace shall continue to remain liable for all obligations of CF&F and Grace under the Lease, the Grace Guaranty, and the Sublease, as the case may be, and (iii) Landlord, on the one hand, and CF&F and Grace on the other, shall each indemnify and hold the other harmless of, from and against any and all costs, claims, obligations, damages, penalties, causes of action, losses, injuries, liabilities and expenses, including, without limitation, reasonable attorneys' fees, arising by reason of such party's failure to so perform its obligations from the date hereof until the Effective Date.

2. <u>Consideration</u>. In consideration of CF&F entering into this Agreement, the Landlord shall pay to CF&F the sum of Fifty Thousand Dollars ($50,000.00), which sum shall be payable on or before the Effective Date.

3. <u>Prorations</u>. Landlord and CF&F shall make all normal and customary prorations under the Lease and the Sublease, including, without limitation, rents, real estate taxes, common area maintenance charges, and utility charges, such prorations to be made on, and as of, the Effective Date.

4. <u>Mutual Releases</u>. Landlord and CF&F each hereby unconditionally, absolutely and irrevocably agrees to release and hold the other harmless from and against any and all claims of any nature whatsoever, now existing or hereafter arising, that it may possess against the other relating to the Lease and/or the Premises, except for such obligations as are created pursuant to the express provisions of this Agreement. In addition, Landlord hereby unconditionally, absolutely and irrevocably agrees to release and hold Grace harmless from and against any and all claims of any nature whatsoever, arising under the Grace Guaranty.

5. <u>Indemnification</u>.

5.1. <u>By Landlord</u>. Landlord hereby unconditionally, absolutely and irrevocably agrees to indemnify and hold CF&F harmless of, from and against any and all costs, claims, obligations, damages, penalties, causes of action, losses, injuries, liabilities and expenses, including, without limitation, reasonable attorneys' fees, arising by reason of or in connection with the Landlord's failure to perform its obligations under the Sublease arising or accruing on and after the Effective Date.

5.2. <u>By CF&F</u>. CF&F hereby unconditionally, absolutely and irrevocably agrees to indemnify and hold the Landlord harmless of, from and against any and all costs, claims, obligations, damages, penalties, causes of action, losses, injuries, liabilities and expenses, including, without limitation, reasonable attorneys' fees, arising by reason of or in connection with CF&F's failure to perform its obligations under the Sublease arising or accruing prior to the Effective Date.

6. <u>Bankruptcy Court Approval</u>. This Agreement shall not become effective unless approved by the Bankruptcy Court. CF&F and Grace shall use their good faith diligent efforts to pursue Bankruptcy Court approval of this Agreement and the transaction which is the subject hereof. As used in the provisions of this Agreement, the "Effective Date" shall be the third business day following the date on which the order entered by the Bankruptcy Court authorizing and approving this Agreement and the transaction which is the subject hereof (the "Bankruptcy Court Order") becomes final. The Bankruptcy Court Order shall not be deemed final until the time to appeal has expired without

- 3 -

any appeal having been filed and without entry of any stay pending appeal. CF&F shall promptly notify Landlord when the Bankruptcy Court Order becomes final. Either party shall have the right to terminate this Agreement, by notice to the other, if the Effective Date shall not have occurred on or before November 30, 2006.

### 7. Miscellaneous.

7.1. No Broker. Landlord and CF&F each warrants and represents to the other that no broker, agent or finder has been retained by it in connection with this Agreement or any transaction contemplated hereby, and each agrees to indemnify and hold the other harmless from all losses or claims based on or arising out of any assertion by any such party that it is entitled to any fee or compensation due to an agreement made by such party and the indemnitor in violation of the foregoing.

7.2. Counterparts. This Agreement may be executed in two counterparts, each of which shall be deemed an original, but both of which together shall constitute one and the same instrument.

7.3. Time of the Essence. Time is of the essence with respect to all provisions of this Agreement.

7.4. Entire Agreement. This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof, and supersedes any and all written or oral agreements with respect hereto. This Agreement may be amended or modified only by instrument signed by both of the parties hereto.

7.5. Rules of Construction. CF&F, Grace and Landlord have each been represented by legal counsel in the preparation of this Agreement, and the rule of construction that documents be construed against the drafter shall not apply to this Agreement.

7.6. Governing Law. The parties agree that the Bankruptcy Court has exclusive jurisdiction to enforce the provisions of this Agreement and to decide any claims or disputes which may arise or result from or be connected with this Agreement, any breach or default hereunder, or the transaction contemplated thereby.

IN WITNESS WHEREOF, the parties hereto have duly executed
this Agreement as a sealed instrument as of the day and year first above written.

CREATIVE FOOD 'N FUN COMPANY

By: _W B mc Gowan_
W. Brian McGowan, President
~~Senior Vice President~~

SW 290, L.P.

By: _____

By: _____
Name:
Title:

- 5 -

Exhibit A

Copy of Sublease

*File Copy*

#9308

#2038
Houston, Texas

SUBLEASE

by and between

CREATIVE FOOD 'N FUN COMPANY
(Landlord)

and

WHATABURGER, INC.
(Tenant)

03/21/88

SUBLEASE

by and between

CREATIVE FOOD 'N FUN COMPANY
(Landlord)

and

WHATABURGER, INC.
(Tenant)

TABLE OF CONTENTS

Section 1.   Demised Premises: .......................................... 1

Section 2.   Alterations: .............................................. 2

Section 3.   Term: ..................................................... 2

Section 4.   Option to Extend: ......................................... 3

Section 5.   Rent: ..................................................... 3

Section 6.   Public Utilities, Taxes and Assessments: .................. 3

Section 7.   Use: ...................................................... 5

Section 8.   Fixtures and Equipment: ................................... 5

Section 9.   Signs: .................................................... 6

Section 10.  Removal of Improvements: .................................. 6

Section 11.  Repairs and Maintenance: .................................. 6

Section 12.  Damage and Destruction: ................................... 6

Section 13.  Insurance: ................................................ 7

Section 14.  Indemnity: ................................................ 8

Section 15.  Liens: .................................................... 9

Section 17.  Landlord's Remedies: ...................................... 10

Section 18.  Condemnation: ............................................. 11

Section 19.  Termination: .............................................. 13

Section 20.  Surrender of Property: .................................... 13

Section 21.  Notices: .................................................. 14

Section 22.  Compliance with Laws: ..................................... 14

Section 23.  Bankruptcy of Tenant: ..................................... 14

Section 24.  Assignment; Subletting: ................................... 15

Section 25.  Estoppel Certificate: ..................................... 16

TABLE OF CONTENTS

(continued)

Section 26.    Subordination: ................................................... 16

Section 27.    Quite Enjoyment: ............................................... 16

Section 28.    Specific Definitions: ......................................... 16

Section 29.    Common Areas: ................................................. 17

Section 30.    No Merger; Termination of Subtenancies: ...................... 18

Section 31.    Tenant's Quitclaim: ........................................... 19

Section 32.    Conditions and Covenants: ..................................... 19

Section 33.    No Waiver of Breach.    ........................................ 19

Section 34.    Unavoidable Delay; Force Majeure: ............................ 19

Section 35.    Entire Agreement: ............................................. 19

Section 36.    Partial Invalidity: ........................................... 20

Section 37.    Relationship of Parties: ...................................... 20

Section 38.    Interpretation and Definitions: ............................... 20

Section 39.    Attorneys' Fees: .............................................. 21

Section 40.    Modification: ................................................. 21

Section 41.    Overlease: .................................................... 21

Section 42.    Liability of Landlord: ........................................ 21

Section 43.    Brokerage: .................................................... 22

Section 44.    Survey: ....................................................... 22

Section 45.    Landlord's Obligation: ........................................ 22

Section 46.    Contingencies: ................................................ 22

Section 47.    Notices: ...................................................... 23

Section 48.    Proration: .................................................... 23

Section 49.    Landlord Warrants: ............................................ 23

Section 50.    Miscellaneous: ................................................ 23

Exhibit "A"    Legal Description

Exhibit "B"    Rent Schedule

Exhibit "C"    Estoppel Certificate

Exhibit "D"    Addendum – Commencement Date

Exhibit "E"    Shopping Center Site Plan

## S U B L E A S E

THIS SUBLEASE is made as of the _28th_ day of _March_____, 19 _88_,
by and between Creative Food 'N Fun Company, a Delaware corporation
("Landlord") and WHATABURGER, INC., a Texas corporation ("Tenant").

## W I T N E S S E T H :

WHEREAS, pursuant to a certain Real Property Ground Lease dated December
5, 1978, between Northwest Village Limited ("Overlandlord"), as landlord, and
Del Taco Corporation ("Del Taco"), as tenant, Del Taco leased certain land
(excluding any improvements from time to time constructed thereon) in the City
of Houston, County of Harris and State of Texas, as more particularly
described in Exhibit "A" attached hereto, together with all rights, easements
and appurtenances thereto (collectively, the "Property"); as amended by that
certain First Amendment to Lease dated May 21, 1979, between Overlandlord and
Del Taco, and the tenant's interest therein assigned by that certain
Assignment effective as of May 22, 1985 from Del Taco to Landlord; (said Real
Property Ground Lease, as so amended and assigned, is hereinafter referred to
as the "Overlease"); and

WHEREAS, pursuant to the terms of the Overlease, Landlord has constructed
and owns a building on the Property, used as a Del Taco restaurant and
consisting of approximately 2,400 square feet, together with other related
improvements (said building and other related improvements being collectively
referred to as the "Improvements"); and

WHEREAS, Landlord desires to sublease to Tenant the Property and to lease
to Tenant the Improvements (except where the context provides otherwise, the
Property and the Improvements are hereinafter collectively referred to as the
"Demised Premises") and Tenant desires to sublease the Property and to lease
the Improvements from Landlord, upon the terms, covenants and conditions
hereinafter set forth.

Section 1.   Demised Premises:

Landlord hereby leases to Tenant and Tenant hereby leases from Landlord
the Demised Premises. Landlord has not made and does not make any
representation or warranties as to the physical condition of the Demised
Premises, the use to which the Demised Premises may be put, or any other
matter or thing affecting or relating to the Demised Premises, except as

specifically set forth in this Sublease (excluding anything in the Overlease incorporated herein by reference). Landlord shall have no obligation whatsoever to alter, improve, decorate or otherwise prepare the Demised Premises for Tenant's occupancy.

Section 2.    Alterations:

Tenant shall have the right to make, at Tenant's sole cost and expense, alterations and changes (hereinafter sometimes referred to as "Alterations") in or to the Demised Premises, so that a Whataburger restaurant consisting of approximately 2,400 square feet, and related improvements, can be constructed thereon, subject, however, in all cases to the following:

(a)  Tenant shall be permitted all necessary remodeling required to convert the existing improvements to a Whataburger restaurant, provided the same is performed in accordance with the terms of the Overlease.  Tenant shall not make any further alterations, additions or improvements without the prior written consent of the Landlord, which consent shall not be unreasonably withheld or delayed, it being agreed that it would not be unreasonable for Landlord to withhold its consent to any proposed alteration which would tend to reduce or impair the value, rental value or usefulness of the Demised Premises or any material part thereof;

(b)  No alterations shall be undertaken until the Tenant shall have procured and paid for, so far as the same from time to time may be necessary, all permits and authorizations of all municipal departments and other governmental authorities having jurisdiction thereof;

(c)  The cost of any such alterations shall be paid in cash or its equivalent, so that the Demised Premises shall at all times be free of liens for labor and materials supplied or claimed to have been supplied to the Demised Premises.

(d)  Any and all such alterations shall become the property of the Landlord upon termination of this Sublease.

Section 3.    Term:

. The term of this Sublease shall commence upon the date Tenant satisfies all contingencies set forth in Section 46 herein (the "Commencement Date") and shall continue until midnight on October 29, 2004, unless earlier terminated as hereinafter set forth.  Within fifteen (15) days after the Commencement Date, Landlord and Tenant shall execute and deliver an Addendum in the form of Exhibit D attached hereto which sets forth the actual Commencement Date of the term hereof.

- 2 -

Section 4.   Option to Extend:

Landlord hereby grants to Tenant an option to extend this Sublease for _2_ additional periods of _5_ years each, at the rental as shown on Exhibit "B" and upon the same terms and conditions as contained in this Sublease.  The options of Tenant to extend the term of this Sublease for any or all of the later option periods shall be exercisable only if the option to extend the term of this Sublease for the immediately preceding option period has been exercised.  To exercise Tenant's options to extend, Tenant must notify Landlord in writing not less than one hundred twenty (120) days before the date of expiration of the within Sublease or the option period for which such extension is intended to be made; provided, however, that if Landlord desires an earlier determination concerning Tenant's exercise of said option, Landlord may serve a demand upon Tenant in writing at any time within one hundred eighty (180) days from the date of expiration of said Sublease or prior option period, for a determination by Tenant concerning exercise of said option, and Tenant shall notify the Landlord in writing within thirty (30) days from receipt of said demand from Landlord whether or not Tenant elects to exercise said option.  Notwithstanding the foregoing, Tenant may not exercise any of its options to extend the term of this Sublease if, at the time Tenant exercises such option or, on the date on which such option period shall begin, Tenant is in default, beyond any applicable cure period, under this Sublease. If Tenant duly exercises any of its options to extend the term of this Sublease, then Landlord agrees to timely exercise the corresponding option under the Overlease, provided that, at the time of such exercise by Landlord Tenant is not in default, beyond any applicable cure period, under this Sublease.

Section 5.   Rent:

Tenant shall pay to Landlord, as the fixed annual rental hereunder for the Demised Premises, the monthly amounts set forth in Exhibit "B" attached hereto and incorporated herein ("Minimum Rent"), each in advance on the first day of each and every calendar month during the term hereof.  If the commencement date of this Sublease occurs on other than the first day of a calendar month, Minimum Rent for the first month shall be prorated, based on actual days elapsed and paid in advance.

Section 6.   Public Utilities, Taxes and Assessments:

- 3 -

number of square feet of the Improvements assessed on the Demised Premises as the same relate to the total number of square feet of buildings on that tax bill.

6.5 <u>Other Charges and Expenses</u>. Any other charge or expense of any nature which the Landlord may be required to pay by virtue of Landlord's ownership of, or leasehold interest in, the Demised Premises (including, but not limited to, common area maintenance charges, merchant's association dues, fees and taxes and security service fees payable by Landlord under the Overlease) shall be promptly paid to Landlord as additional rent hereunder upon Landlord's request therefore (the real property taxes and assessments required to be paid hereunder and all such charges and expenses required to be paid by Tenant pursuant to this Section 6 being hereinafter collectively referred to as "Additional Rent", and all Additional Rent and Minimum Rent being sometimes hereinafter collectively referred to herein as "rent").

Section 7. <u>Use</u>:

Tenant shall use the Demised Premises as a Whataburger restaurant. Tenant shall not use the Demised Premises or any part thereof, nor permit the Demised Premises or any part thereof to be used, for any other purpose or purposes, without the written consent of the Landlord and Overlandlord, which consent shall not be unreasonably withheld or delayed, and provided such use is a use permitted under the Overlease. Tenant shall not use or permit any person to use the Demised Premises, or any portion thereof, in a manner which would disturb the neighborhood or occupants of adjoining property, or to constitute a nuisance, or to violate any public law, ordinance or regulation from time to time applicable thereto. Tenant shall also comply and abide by all restrictions of use imposed upon Landlord by the Overlease.

Section 8. <u>Fixtures and Equipment</u>:

Tenant may install in the Demised Premises, at its sole cost and expense, any fixtures or equipment it deems necessary for the conduct of its business as a Whataburger restaurant, which fixtures and equipment may either be purchased or leased. All furniture, fixtures and equipment installed by Tenant in the Demised Premises shall at all times be and remain the personal property, of Tenant and/or the equipment-lessor or conditional seller of such furniture, fixtures and equipment, as the case may be, regardless of the method in which the same is affixed to the Demised Premises. Tenant shall repair any damage arising from removal of such furniture, fixtures and equipment.

- 5 -

Section 9.    Signs:

Tenant shall have the right to affix and maintain on the Demised Premises such signs and advertising matter as Tenant may deem necessary for the operation of its business; provided, however, that Tenant shall not affix any signs which are in violation of any applicable law or ordinance, or which have not been approved in advance by Landlord, which approval shall not be unreasonably withheld.

Section 10.  Removal of Improvements:

Except as otherwise provided hereinafter, Tenant agrees that any Improvements, when erected on the Property, shall not be removed or torn down, in whole or in part, unless and until the Tenant shall first agree in writing to replace or restore said Improvements with Improvements of equal or greater value than the proposed Improvements which Landlord and Tenant contemplate will be constructed on the Property.  Tenant, before tearing down and removing such Improvements, or any part thereof, will supply satisfactory proof of its ability to pay the full cost of such new Improvements placed upon the Property at any time during the term of this Sublease and all additions, modifications or alterations thereof shall become the absolute property of Landlord, without cost to Landlord, upon the expiration of the term of this Lease, or any extension or renewal thereof.

Section 11.  Repairs and Maintenance:

Tenant takes the Premises from Landlord "AS IS" on the Commencement Date hereof.  Landlord shall not be obligated to make any repairs, alterations, additions or improvements, including structural repairs to the roof or exterior of the Improvements, in, to, upon or adjoining the Demised Premises or any structure or other Improvement that hereafter may be constructed or installed thereon.  Except as otherwise provided in Section 12 hereinafter set forth, Tenant, at its sole cost and expense, shall make all repairs as shall be necessary to keep the Demised Premises in reasonably good condition and repair during the term of this Sublease and Tenant agrees, at the expiration of this Sublease or upon the earlier termination hereof, to quit and surrender the Demised Premises in good condition and repair, uninsurable causes beyond the control of Tenant, damage by act of God and reasonable wear excepted.

Section 12.  Damage and Destruction:

(a)  If, during the term of this Sublease, or any renewal thereof, the Improvements and/or replacements thereto shall be wholly or partially

- 6 -

in which the Premises are located and employer's liability insurance in an amount customary for similar businesses in the locality.

(ii)  Comprehensive general public liability insurance, including product liability coverage in a form approved by Landlord, on an occurrence basis, with a combined single limit of not less than $1,000,000.00 for bodily injury and property damage, per occurrence.  Additional liability coverage is provided by Tenant's umbrella insurance coverage.

(b)  Casualty Insurance.  Tenant shall maintain and keep in force all risk, fire and extended coverage, including flood and earthquake, vandalism and malicious mischief insurance upon the Demised Premises, operational equipment, signs, furnishings, decor and supplies, in an amount equal to not less than ninety percent (90%) of the full replacement value.

(c)  Replacement and Policies of Insurance.  All insurance policies required to be carried hereunder shall name the Landlord, Overlandlord, and any party designated by Landlord, as their interests may appear in this Sublease, as additional insureds.  All policies shall be effective on or prior to the date Tenant is given possession of the Demised Premises, and evidence of payment of premiums and duplicate copies of certificates of the insurance required herein shall be delivered to Landlord at least thirty (30) days prior to the expiration date of an existing policy of insurance.  In the event Tenant should fail to obtain the insurance required herein, within ten (10) days after receipt of written notice from Landlord, Landlord may, but need not, purchase said insurance, and the cost of the premiums shall be included as Additional Rent hereunder.  All insurance shall be placed with a reputable insurance company licensed to do business in the State of Texas.  Copies of all insurance certificates or such other evidence of the same as shall be required by Overlandlord under the Overlease shall be promptly delivered to Landlord upon request.

Section 14.  Indemnity:

(a)  Landlord shall not be liable for any loss, damage or injury of any kind whatsoever to the person or property of Tenant, or any of Tenant's employees, guests or invitees or any other person whomsoever, caused by any use of the Demised Premises, or by any defect in any building, structure or other improvement constructed thereon, or arising from any accident on the Demised Premises or any fire or other casualty thereon, or occasioned by the failure on the part of Tenant to maintain the Demised Premises in a safe

- 8 -

destroyed by any cause except those which result from the willful act or omission of Landlord, its agents or employees, and whether or not the same shall be covered by the insurance required to be maintained by Tenant hereunder, Tenant forthwith shall repair, rebuild and restore the same, to the same or better condition as the same were in immediately prior to such destruction. During such repair period, this Sublease shall remain in force, and Tenant shall not be entitled to any reduction in or rebate of rent. If there is total or partial destruction of the Improvements or such replacement during the last five (5) years of the initial term hereof, or any extension of renewal thereof, Tenant may elect to not repair or restore the same, but may terminate this Lease by assigning to Landlord the right to receive all such insurance proceeds.

(b)  In the event of damage or destruction by any casualty other than a casualty insured under the insurance referred to hereinafter, Landlord may restore the Demised Premises and the Rent shall be abated until said restoration has been completed or, at Landlord's option, Landlord may elect to terminate this Lease and thereupon be released from further obligation hereunder by giving written notice thereof to Tenant within thirty (30) days after occurrence of such casualty unless Tenant elects to restore the Demised Premises by delivering written notice of such election to Landlord within ten (10) days after the receipt of Landlord's written election to terminate the Lease. If Tenant elects to restore, Tenant shall, as soon as reasonably possible, commence and proceed diligently to restore the Demised Premises substantially to the condition thereof immediately prior to such damage or destruction and the Rental shall be abated until said restoration has been completed. If neither party elects to restore the Demised Premises, this Lease shall be terminated and Landlord and Tenant shall be released from further obligation hereunder, except that Landlord shall be obligated to repay Tenant any unused prepaid rent to Landlord.

(c)  In the event the Demised Premises suffer a casualty loss prior to the date Tenant takes possession of the Demised Premises, Tenant shall have the option of canceling this Sublease.

Section 13.  Insurance:

(a)  Liability Insurance.  Tenant shall pay for and maintain during the entire term of this Sublease the following insurance:

(i)  Workers' compensation insurance prescribed by law in the state

- 7 -

condition, or by any nuisance made or suffered on the Demised Premises, or by any act or omission of Tenant, or of Tenant's employees, guests or invitees, or arising from any other cause; unless arising out of the negligent act of Landlord, Landlord's employees, agents or contractors and Tenant hereby waives on its behalf all claims and demands against Landlord for the same. Tenant hereby agrees to indemnify and save Landlord, Landlord's employees, agents or contractors free and harmless from liability for any such loss, damage or injury of other persons, and from all costs, expenses and other charges arising therefrom and in connection therewith.

(b)  During the term of this Sublease, Tenant shall indemnify and save Landlord, Landlord's employees, agents or contractors free and harmless from any and all liabilities or damages arising from or connected with breach on the part of Tenant in the performance of any covenants or agreements on the part of Tenant to be performed pursuant to the terms of this Sublease, or from any negligent acts or omissions of Tenant, its agents or employees in, on or about the Demised Premises. Landlord shall indemnify and save Tenant harmless from any and all liabilities or damages arising from or connected with a breach on the part of Landlord in the performance of any covenants or agreements on the part of Landlord to be performed pursuant to the terms of this Sublease or arising from or connected with any negligent acts or omissions of Landlord, its agents or employees in, on or about the Demised Premises.

Section 15.  Liens.

15.1 Premises to be Free of Liens. Tenant covenants to keep the Property, and any Improvements heretofore or hereafter erected thereon, at all times during the term hereof, free of mechanic liens and other liens of like nature other than liens created or claimed by reason of any work done by or at the insistence of Landlord, and at all times fully to protect and indemnify Landlord and Overlandlord against all such liens and claims which may ripen into such liens and against all attorneys' fees and other costs and expenses growing out of or incurred by reason of or on account of any such claim or lien, and Landlord agrees to do likewise with respect to work done by or for Landlord. If Tenant or Landlord shall desire to contest any mechanic's lien or other claim, the contesting party shall furnish to the other adequate security in the amount of the claim or a bond of a responsible corporate surety in such amount. If a final judgment establishing the validity or existence of a lien for any amount is entered, the responsible party shall pay and satisfy the same at once.

- 9 -

15.2 Right of Landlord to Post Notices of Nonresponsibility. Nothing herein shall be construed as denying Landlord the right to post and record Notices of Nonresponsibility as provided by applicable Texas law.

Section 16. Landlord's Cure of Default:

Should Tenant fail or refuse to pay any charge upon the Demised Premises when due and payable as provided herein, or any lien or claim arising out of the construction, repair, restoration, maintenance and/or use of the Demised Premises and the buildings and improvements thereon, or any other claim, charge or demand which Tenant has agreed to pay under the covenants of this Sublease, after thirty (30) days from written notice from Landlord to Tenant, then Landlord may at its option pay any such lien, claim, charge or demand, or settle or discharge any action therefore or judgment thereon, and all costs, expenses and other sums incurred or paid by Landlord in connection therewith shall become Additional Rent hereunder and shall be repaid to Landlord by Tenant upon written demand therefore, together with interest thereon at the maximum legal rate per annum from the date of payment by Landlord until repayment by Tenant.

Section 17. Landlord's Remedies:

(a) Should Tenant fail to pay any installment of Minimum Rent or Additional Rent or any other sum provided in this Sublease to be paid by Tenant at the times herein specified, and should such failure, default or breach continue after a period of five (5) days from and after written notice hereof or should Tenant default in the performance of or breach any other covenant, condition or restriction of this Sublease herein provided to be kept or performed by Tenant, and should such failure, default or breach continue for a period of twenty (20) days from and after receipt by Tenant of written notice thereof by Landlord to Tenant, Landlord may at its option terminate this Sublease by giving Tenant written notice thereof.

(b) Upon the occurrence of any breach described in this Section 16, Landlord shall have the option to pursue any one or more of the following remedies without any notice or demand whatsoever;

(i) Terminate this Sublease, in which event Tenant shall immediately surrender the Demised Premises to Landlord, and if Tenant fails to do so, Landlord may, without prejudice to any other remedy which it may have for possession or arrearages in rent, enter upon and take possession of the Demised Premises and expel or remove Tenant and any other person who may be

- 10 -

occupying such Demised Premises or any part thereof, by force if necessary, without being liable for prosecution or any claim of damages therefore; and Tenant agrees to pay to Landlord on demand the amount of all loss and damage which Landlord may suffer by reason of such termination.

(ii)   Enter upon and take possession of the Demised Premises and expel or remove Tenant and any other person, who may be occupying such Demised Premises or any part thereof, by force if necessary, without being liable for prosecution or any claim for damages therefore, and relet the Demised Premises and receive the rent therefore; and Tenant agrees to pay to the Landlord on demand any deficiency that may arise by reason of such reletting.

(iii)   Enter upon the Demised Premises by force if necessary without being liable for prosecution or any claim for damages therefore, and do whatever Tenant is obligated to do under the terms of this Sublease; and Tenant agrees to reimburse Landlord on demand for any expenses which Landlord may incur in thus effecting compliance with Tenant's obligations under this Sublease, and Tenant further agrees that Landlord shall not be liable for any damages resulting to the Tenant from such action, whether caused by negligence of Landlord or otherwise.

Pursuit of any of the foregoing remedies shall not preclude pursuit of any of the other remedies herein provided and any other remedies provided by law, nor shall pursuit of any remedy herein provided constitute a forfeiture or waiver of any rent due to Landlord hereunder or of any damages accruing to Landlord by reason of the violation of any of the terms, provisions and covenants herein contained.  Forbearance by Landlord to enforce one or more of the remedies herein provided upon a breach shall not be deemed or construed to constitute a waiver of such breach.  No act or thing done by the Landlord or its agents during the term hereby granted shall be deemed an acceptance of the surrender of the Demised Premises and no agreement to accept a surrender of the Demised Premises shall be valid unless in writing signed by Landlord.

Section 18.  Condemnation:

(a)   In the event that the whole of the Demised Premises shall be permanently taken or condemned for a public or quasi-public use or purpose by any competent authority during the term hereof, this Sublease shall terminate as of the date when possession of the Demised Premises is surrendered by Tenant.  Upon such termination rental paid to Landlord and covering any portion of the term thereafter remaining shall be refunded to Tenant.

- 11 -

(b) If a portion of the Demised Premises shall be taken under the power of eminent domain and the portion not so taken would not, in the reasonable judgment of Tenant stated in a notice to Landlord within twenty (20) business days after such taking, be adequate for the continued operation of Tenant's business, either unrestored or as to be restored by Landlord as hereinafter provided in this Subparagraph 18(b) then this Lease shall be deemed to have terminated as of the date said Demised Premises are so taken. In the event of any taking under the power of eminent domain which does not terminate this Lease as aforesaid, any obligation of Tenant under this Sublease to pay rent and all of the other provisions of this Sublease shall remain in full force and effect, except as provided in this Subparagraph 18(b). Within a reasonable time after it is determined by Tenant pursuant to the foregoing provisions, that such taking will not terminate this Sublease if the Demised Premises are restored as hereinafter set forth, Overlandlord shall, at Overlandlord's own cost and expense, proceed with due diligence to restore such part of the Property as is not taken to as near the former condition of the original Property including parking area and drive-through capability as the circumstances will permit, and Tenant shall continue to utilize said Demised Premises for the operation of its business. Upon completion of such restoration, (i) the Minimum Rent provided in this Sublease shall be abated to an amount which bears the same ratio to the Minimum Rent in effect immediately prior to such taking under the power of eminent domain as the cash fair market value of the Demised Premises immediately after such taking bears to the cash fair market value of the Demised Premises immediately prior to such taking and (ii) the Demised Premises shall be reduced by the Property so taken.

(c) Notwithstanding any provision of this Section 17 to the contrary, any partial taking under the power of eminent domain which materially interferes with or destroys the Tenant's drive-through capability or adjacent parking shall be deemed to render the remainder of the Demised Premises inadequate for the continued operation of Tenant's business.

(d) All damages awarded for any taking under the power of eminent domain, whether for the whole or part of the Demised Premises, shall belong to and be the property of Landlord and Tenant as their respective interest may appear.

(e) If this Sublease is terminated as provided in this Section 17, all rent shall be paid up to the date that possession is taken by public authority

- 12 -

and Landlord shall make an equitable refund to Tenant of any rent or other amounts paid by Tenant which are applicable to any period after that date and not yet earned.

Section 19. <u>Termination</u>:

Any termination of this Sublease as herein provided shall not relieve Tenant from the payment of any sum or sums that shall then be due and payable to Landlord hereunder for any claim for damages then or theretofore accruing against Tenant hereunder, and any such termination shall not prevent Landlord from enforcing the payment of any such sum or sums or claim for damages by any remedy provided by law, or from recovering damages from Tenant for any default hereunder. All rights, options and remedies of Landlord contained in this Sublease shall be construed and held to be cumulative and not exclusive, and Landlord shall have the right to pursue any one or all of such remedies, or any other remedy which may be provided by law, whether or not stated in this Sublease. No waiver by Landlord of any breach of any of the covenants or conditions of this Sublease by Tenant shall constitute a waiver of any succeeding or preceding breach of the same or of any other covenant or condition herein contained.

Section 20. <u>Surrender of Property</u>:

(a) Tenant shall, upon termination of the term hereof or any extensions or renewals thereof, or any earlier termination of this Sublease, surrender to the Landlord the Property; including, without limitation, all building apparatus and Improvements not covered by Subparagraph 19(b) hereof, and all alterations, Improvements and other additions which may be made or installed by either party.

(b) Trade fixtures, furniture, equipment and signs, which may be installed in the Demised Premises prior to or during the term hereof at the cost of Tenant shall not be deemed to become a part of the Demised Premises and may be removed by Tenant from the Demised Premises at or before the end of the term hereof if Tenant be not then in breach hereunder. Tenant shall, at its own cost and expense, repair any and all damages to the Demised Premises resulting from or caused by such removal, and shall restore the said Demised Premises to their original condition, reasonable wear and tear excepted. Tenant shall have twenty (20) days after termination of this Sublease for any reason whatsoever to effect such removal, repair and restoration; provided, however, no such fixtures or equipment placed on or in the Demised Premises by

- 13 -

Tenant, and which remain the property of Tenant, may be removed at a time when Tenant is in breach of payment of rent or any other money payable hereunder. Tenant shall not be required to pay rent for the twenty (20) day removal period.

(c)  Anything to the contrary herein notwithstanding, Tenant shall have the right at any time to remove its signs and other equipment bearing any of its trade names, trademarks or service marks whether registered or unregistered.  Landlord shall have no right to use and shall not have or acquire any interest in any such trade name, trademark or service mark by reason of any of the terms or provisions of this Sublease, or by reason of use of the same on the Demised Premises.

Section 21.  Notices:

All notices, requests, demands and other communications hereunder shall be deemed to have been duly given if sent by registered or certified mail, postage prepaid, return receipt requested, Federal Express, Airborne, Emery, DHL, Express Mail, Purolator, or by other recognized overnight courier service with delivery fees either prepaid or arrangement, satisfactory with such carrier, made for the payment of such fees, addressed as follows or to such address as Landlord or Tenant may indicate by written notice to the other:

```
To Landlord:        Creative Food 'N Fun Company
                    1801 Royal Lane
                    Suite 902
                    Dallas, Texas 75229
                    Attn:  Vice President


To Tenant:          Whataburger, Inc.
                    4600 Parkdale Drive
                    Corpus Christi, TX 78411
                    Attn:  Director of Real Estate
```

Section 22.  Compliance with Laws:

Tenant shall, at its sole cost, comply with all of the requirements of all applicable municipal, state and federal authorities now in force, or which may hereafter be in force, and shall faithfully observe in its use of the Demised Premises all municipal ordinances and state and federal statutes not in force, or which may hereafter be in force.

Section 23.  Bankruptcy of Tenant:

This Sublease shall be deemed to be repudiated and breached by Tenant if, during the term thereof:

- 14 -

(a) A petition to have Tenant adjudicated a bankrupt or a petition for reorganization or arrangement under any of the laws of the State of Texas and/or the United States relating to bankruptcy to be filed by or against Tenant, and if so filed against Tenant be not dismissed within sixty (60) days thereafter;

(b) The assets of Tenant or the business conducted by Tenant on the Premises be assumed by any trustee or any other person pursuant to any judicial proceedings;

(c) Tenant becomes insolvent or makes an assignment for the benefit of creditors;

(d) Tenant commits any act of bankruptcy;

(e) Tenant commences proceedings for winding up; or

(f) Any attachment, execution or other judicial levy upon the leasehold estate hereunder not vacated within sixty (60) days thereafter.

Section 24. Assignment; Subletting:

Tenant may not, without the prior written consent of Landlord, which consent shall not be unreasonably withheld or delayed, assign this Sublease or sublet all or a part of the Premises, to any party, and Landlord's consent to one assignment or subletting shall not constitute consent to any subsequent assignment or subletting. No such consent by Landlord shall be deemed to release, absolve or diminish Tenant's obligations hereunder, Tenant agrees that any assignee of this Sublease shall assume Tenant's obligations hereunder and Tenant shall submit to Landlord for Landlord's reasonable approval, not less than thirty (30) days prior to entering into any further subletting or any assignment hereof. It shall not be deemed unreasonable for Landlord to deny consent if the Overlandlord fails to provide , or denies, consent. In the event that Landlord consents to the assignment or subletting of this Sublease, Tenant shall pay to Landlord the sum of Five Hundred Dollars ($500.00), which Tenant and Landlord agree shall constitute reasonable reimbursement for Landlord's costs incurred in relation to such assignment or subletting. Tenant shall have the right to assign or sublet this Sublease to any wholly owned subsidiary of Tenant or any franchisee of Tenant without Landlord's permission; however, any such assignment or sublease shall be subject to the Overlandlord's consent pursuant to the terms of the Overlease.

- 15 -

Section 25.  Estoppel Certificate:

Tenant shall at any time and from time to time, within fifteen (15) days after request of Landlord, deliver a certificate to Landlord or to any proposed or present mortgage, trust deed beneficiary, purchaser, or successor in interest certifying the commencement and expiration dates of the Sublease term and that this Sublease is then in full force and effect and setting forth the nature and amount of modifications, defenses or offsets, if any, claimed by Tenant.

Section 26.  Subordination:

Except as hereinafter provided, this Sublease may, at Landlord's or Overlandlord's option, be made subordinate to any mortgage or deed of trust now or hereafter placed upon the Demised Premises and to any and all advances made on the security thereof and to all renewals, replacements and extensions thereof.  Tenant shall, upon request by Landlord, execute and deliver such instruments as may be necessary or convenient to evidence such subordination. The subordination of this Sublease to any such mortgage or deed of trust shall be subject to the following conditions, which shall be set forth in any document evidencing this subordination which Tenant is requested to sign:  (1) in the event of the sale of the Demised Premises upon foreclosure or upon the exercise of a power of sale under any such mortgage or deed of trust,. Tenant will upon request made within twenty (20) days after such sale, attorn to the purchaser and recognize the purchaser as the Overlandlord under the Overlease or Landlord under this Sublease, as the case may be, and (ii) notwithstanding such subordination, Tenant's right to quiet possession of the Demised Premises shall not be disturbed so long as Tenant shall pay the rent and observe and perform all of the provisions of this Sublease to be observed and performed by Tenant during the unexpired term of this Sublease and any renewal or extension thereof.

Section 27.  Quiet Enjoyment:

Subject to the terms hereof Tenant, upon paying the rent herein provided and performing all and singularly the covenants and conditions of this Sublease on its part to be performed, shall and may peaceably and quietly have, hold and enjoy the Demised Premises during the term hereof.

Section 28.  Specific Definitions:

The following terms, whenever used in this Sublease, shall have the following meanings:

- 16 -

(a) "Shopping Center". The term "Shopping Center" as used in this Sublease shall mean any multi-unit development, whether or not said development consists of two units or a "mall" type design, on land owned by Overlandlord lying within the real property depicted on Exhibit "E", hereto;

(b) "Common Areas". The term "Common Areas" shall mean all areas located within the exterior boundaries of the Shopping Center, which are available from time to time for the non-exclusive convenience and use of Landlord and Overlandlord, its tenants and their respective employees, agents, contractors, subtenants, licensees, concessionaires, customers and business invitees, including those portions of the Demised Premises not occupied by floor area; and

(c) "Floor Area". The term "Floor Area" shall mean the total number of square feet of floor space contained in a building (constructed or projected to be constructed in the Shopping Center), which floor space or area is exclusively appropriated for the use by the occupant or occupants of such building, measured in the case of a building from the exterior surface of exterior walls (and from extensions thereof in case of openings) and from the center of common walls, including basement and subterranean areas, and balcony and mezzanine areas.

Section 29. Common Areas:

29.1 Right of Tenant to Use Common Area. Except as limited in the Overlease, Tenant shall have the non-exclusive right for itself and for its employees, agents, contractors, subtenants, licensees, concessionaires, customers and business invitees to use the common areas in common with Landlord and other persons permitted by Overlandlord to use the same, and their employees, agents, contractors, subtenants, licensees, concessionaires, customers and business invitees (hereinafter collectively referred to as "Permitees") for parking of vehicles and for vehicular and pedestrian ingress, egress and access. Tenant hereby grants to Landlord and Permitees the non-exclusive right to use the common areas of the Demised Premises for parking of vehicles and for vehicular and passenger ingress, egress and access.

29.2 Landlord's and Overlandlord's Duty to Maintain Common Area. Overlandlord shall operate and maintain the common areas and all improvements and facilities situated thereon and required in connection therewith, and keep same in good state of repair.

29.3 Tenant Shall Pay Pro Rata Share of Costs and Expenses of Maintaining Common Area. Tenant shall, in the manner hereinafter set forth:

- 17 -

(a)  Pay its pro rata share of all costs paid and incurred in connection with such operation, maintenance and repair of the Common Area and Tenant's pro rata share of real estate taxes, levies and assessments thereon and all other charges in the nature of taxes and assessments; and

(b)  Overlandlord shall have the right to cause any or all services with respect to the Common Areas to be performed by others, including an independent contractor or contractors.  Tenant shall pay its pro rata share of all common area expenses, which pro rata share shall be computed in accordance with the ratio of Tenant's floor area (as defined in Section 27) to the total floor area in the Shopping Center.

29.4  <u>Terms for Payments of Costs and Expenses of Maintenance</u>.  All payments herein required to be made by Tenant with respect to such common area costs and expenses shall be made within ten (10) days after the expiration of each calendar quarter during the term of this Lease based on Overlandlord's expenditures during the preceding calendar quarter as evidenced by a statement, itemized in reasonable detail, setting forth the total expenditures by Landlord and Overlandlord.

29.5  <u>Control of Common Area by Landlord and Overlandlord</u>.  Overlandlord shall, at all times during the term of this Sublease, have the sole and exclusive control of the common areas and may, at any time and from time to time during the term hereof, exclude and restrain any person from use or occupancy thereof; excepting, however, bona fide customers, patrons, employees and service-suppliers of Tenant and other tenants of Overlandlord who make use of said areas in accordance with the rules and regulations established by Overlandlord from time to time with respect thereto.  The rights of Tenant in and to the common areas shall at all times be subject to the rights of Overlandlord and of other occupants of buildings in the Shopping Center to use the same in common with Tenant.  Tenant shall not construct nor permit to be constructed or maintained any fences or obstacles which interfere with the free flow of vehicular traffic from the common area on the Demised Premises to all of the common area parking in the Shopping Center.

Section 30.  <u>No Merger; Termination of Subtenancies</u>:

The voluntary or other surrender of this Sublease by Tenant, or mutual cancellation hereof, shall not work a merger and shall, at the option of Landlord, terminate all or any existing subleases or subtenancies, or may, at the option of Landlord, operate as an assignment to Landlord of any or all such subleases or subtenancies.

- 18 -

Section 31.  Tenant's Quitclaim:

At the expiration or earlier termination of this Sublease, Tenant shall execute, acknowledge and deliver to Landlord within ten (10) days after written demand from Landlord to Tenant, any quitclaim deed or other instrument required by any reputable title company to remove the cloud of this Sublease from the Demised Premises.

Section 32.  Conditions and Covenants:

All of the provisions of this Sublease shall be deemed as running with the land, and construed to be conditions as well as covenants as though the words specifically expressing or imparting covenants and conditions were used in each separate provision.

Section 33.  No Waiver of Breach.

No failure by either Landlord or Tenant to insist upon the strict performance by the other of any covenant, agreement, term or condition of this Sublease or to exercise any right or remedy consequent upon a breach thereof, shall constitute a waiver of any such breach or of such covenant, agreement, term or condition.  No waiver of any breach shall affect or alter this Sublease, but each and every covenant, agreement, term and condition of this Sublease shall continue in full force and effect with respect to any other then existing or subsequent breach.

Section 34.  Unavoidable Delay; Force Majeure:

If either party shall be delayed or prevented from the performance of any act required by this Sublease by reason of acts of God, strikes, lockouts, labor troubles, inability to procure materials, restrictive governmental laws or regulations or other cause, without fault and beyond the reasonable control of the party obligated (except financial inability), performance of such act shall be excused for the period of the delay; and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay, provided, however, nothing in this Section shall excuse Tenant from the prompt payment of any rental or other charge required of Tenant except as may be expressly provided elsewhere in this Sublease.

Section 35.  Entire Agreement:

This Sublease contains the entire agreement of the parties with respect to the matters covered by this Sublease, and no other agreement, statement or promise made by any party, or by any employee, officer or agent of any party, which is not contained in this Sublease shall be binding or valid.

- 19 -

Section 36.  Partial Invalidity:

If any term, covenant, condition or provision of this Sublease is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

Section 37.  Relationship of Parties:

Nothing contained in this Sublease shall be deemed or construed by the parties or by any third person to create the relationship of principal and agent or partnership or of joint venture or any association between Landlord and Tenant, and neither any provisions contained in this Sublease nor any acts of the parties shall be deemed to create any relationship between Landlord and Tenant other than the relationship of sublessor and sublessee.

Section 38.  Interpretation and Definitions:

(a)  The neuter gender includes the feminine and masculine, and the singular number included the plural, and the word "person" includes a corporation, partnership, firm or association as the context so requires or allows.

(b)  "Shall", "will" and "agrees" are mandatory; "may" is permissive.

(c)  Captions of sections are for convenience and reference only, and the words contained therein shall in no way be held to explain, modify, amplify or aid in the interpretation, construction or meaning of the provisions hereof.

(d)  All references to the term of this Sublease shall include any extensions of such term.

(e)  Premises shall include any improvements upon the Premises.

(f)  The word "sublessee" shall mean and include in addition to a sublessee and subtenant, a licensee, concessionaire or other occupant or user of any portion of the Premises.

(g)  Any holding over after the expiration of the term hereof, including extensions thereto, without the express or implied consent of Landlord, shall be construed to be a tenancy from month-to-month only, at the same rental, terms and conditions as are herein set forth.

(h)  All of the terms, covenants and conditions hereof shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors, assigns and sublessees of the parties hereto, provided that nothing in this Subparagraph shall be deemed to permit any assignment contrary to the provisions of Section 24 hereof.

- 20 -

(i) All references to Tenant contained herein also refer to any successors, assignees or sublessees of Tenant.

(j) If, as required by the terms of this Sublease, Tenant seeks Landlord's consent or approval, Landlord's refusal to grant such consent or approval shall be deemed reasonable if Landlord is required under the Overlease to obtain such consent or approval of the Overlandlord and the Overlandlord has refused or failed to grant such consent or approval.

(k) This Lease is made and delivered within the State of Texas and shall be construed and enforced in accordance with the laws of the State of Texas.

Section 39.   Attorneys' Fees:

Should either party commence any legal action or proceeding against the other based on this Sublease, the prevailing party shall be entitled to an award of attorneys' fees and disbursements.

Section 40.   Modification:

This Sublease is not subject to modifications except by a document executed by both Landlord and Tenant.

Section 41.   Overlease:

(a) This Sublease is in all respects subject and subordinate to the terms and conditions of the Overlease.  A copy of the Overlease has previously been furnished by Landlord to Tenant and Tenant acknowledges that it has received and reviewed same.  Tenant hereby agrees to comply in all respects with the terms and conditions of the Overlease insofar as the same are applicable to the Demised Premises.

(b) As between Landlord and Tenant, Landlord shall be entitled to all of the rights and remedies reserved by and granted to the Overlandlord in the Overlease as if Landlord was the Overlandlord under the Overlease and Tenant was the primary tenant under the Overlease, and such rights and remedies are hereby incorporated herein by reference for all programs.

(c) This Sublease is subject and subordinate to all of the terms, covenants and conditions of the Overlease and to all of the rights of the Overlandlord under the Overlease.

Section 42.   Liability of Landlord:

Tenant shall look only to Landlord's estate and interest in the Demised Premises for the satisfaction of Tenant's remedies for the collection of any judgment (or other judicial process) requiring the payment of money by Landlord in the event of any default by Landlord under this Sublease, and no

- 21 -

other assets of Landlord shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under or with respect to this Sublease, the relationship of Landlord and Tenant hereunder or Tenant's use and occupancy of the Demised Premises. However, nothing contained in this Paragraph shall be construed to permit Tenant to offset against Rent due hereunder.

Section 43. Brokerage:

Tenant represents and warrants to Landlord it has dealt with no broker (the "Broker") in connection with the transaction of this Sublease. Tenant shall indemnify, defend and hold Landlord harmless from and against any and all claims or liabilities to any Broker claiming to have dealt with Tenant in connection with the transaction of this Sublease (an "Indemnified Claim"). In the event any Indemnified Claim shall be made, Tenant shall defend against same by counsel selected by Tenant and approved by Landlord. If Tenant shall defend such action and the Broker shall be successful therein, Tenant shall make the payment of the claim of such Broker. Tenant shall be responsible for all attorney's fees and disbursements incurred in such action, regardless of the outcome.

Section 44. Survey:

Tenant acknowledges, that prior to the date hereof, Landlord has provided Tenant with Landlord's existing metes and bounds survey and Landlord's existing site plan of the Demised Premises at Landlord's sole cost and expense.

Section 45. Landlord's Obligation:

Landlord shall be responsible for prompt payment of all rent, property taxes, assessments, common area maintenance charges and other charges and all other charges set forth in the Overlease provided Landlord receives timely payment for such charges from Tenant under this Sublease. In the event Landlord fails to timely make any such payments, and after a further failure to do so ten (10) days after requested to do so by Tenant, Tenant may, at its option, make such payments and deduct the cost thereof from future rent payments due Landlord under this Sublease.

Section 46. Contingencies:

It is understood and agrees between the Landlord and Tenant that this Sublease is subject to satisfaction of the following contingencies and that in the event any of the contingencies are not satisfied in the manner hereinafter

- 22 -

specified, this Sublease shall become null and void; provided, however, Tenant may waive any of said contingencies. All such contingencies are to be satisfied or waived no later than sixty (60) days from the date hereof.

(a) Tenant's receipt and approval of an Estoppel Certificate from the Overlandlord (Exhibit "C").

(b) Tenant's receipt of Landlord's approval of all remodel and signage plans.

(c) Tenant's receipt of all civil and governmental approvals and permits for remodel of the Demised Premises.

Tenant and Landlord agree to proceed with due diligence to satisfy all contingencies. The time period to satisfy said contingencies may be extended, if agreed to in writing by Tenant and Landlord.

Section 47. Notices:

Tenant shall promptly give Landlord a copy of all notices sent to or received from Overlandlord relating to the Demised Premises or Sublease. Landlord shall promptly give Tenant a copy of all notices sent to or received from the Overlandlord relating to the Demised Premises or Sublease.

Section 48. Proration:

Real estate taxes, common area maintenance charges and other similar matters shall be prorated on an equitable basis, as of the Commencement Date. Landlord agrees to promptly pay all such charges up the the Commencement Date and Tenant shall promptly pay all such charges or similar matters that become due and payable after the Commencement Date.

Section 49. Landlord Warrants:

Landlord warrants that it is presently the Tenant under the Overlease and (subject to the consent of the Overlandlord in form attached hereto as Exhibit "C" and made a part hereof) has the sole right and authority to convey the same and to enter into this Sublease. Landlord further warrants that, to the best of Landlord's actual knowledge, it is in full compliance with all terms and covenants under the Overlease including any and all financial obligations thereunder.

Section 50. Miscellaneous:

(a) Landlord and Tenant hereby agree, to the extent that they may legally do so, to waive any right of recovery against the other and against the Overlandlord for loss or damage suffered which is insured by a valid policy or policies of insurance; each party hereto agreeing to the extent that it may legally do so that no insurance company or companies with which either

- 23 -

Landlord or Tenant insures may maintain any claim of one of the parties hereto against the other or against the Overlandlord.

(b)  Landlord agrees that provided Tenant pays all rent and performs the terms and conditions of this Sublease, that Landlord will, subject to the terms and conditions of this Sublease, take the necessary steps to secure to Tenant and to maintain for the benefit of Tenant the quiet and peaceful possession of the Demised Premises for the term hereof without hindrance by Landlord or any other person lawfully claiming title to the Demised Premises of any part thereof.

(c)  Landlord agrees that the compliance by Tenant with any applicable law or regulation of a governmental authority shall not place Tenant in violation of any term, condition or covenant in this Sublease.

(d)  Neither payment of rent by Tenant nor acceptance of rent by Landlord, nor failure by either party to complain of any action, non-action or default of the other party shall constitute a waiver of any aggrieved party's rights hereunder.

IN WITNESS WHEREOF, Landlord and Tenant have executed this Sublease as of the date and year first written above.

Landlord:

CREATIVE FOOD 'N FUN COMPANY
a Delaware corporation

By: _William W Bird IV_

Its _President_

Tenant:

WHATABURGER, INC.
a Texas corporation

By: _____

Its _President_

C.L. CHATELAIN
SENIOR VICE PRESIDENT

- 24 -

EXHIBIT "A" OF THE SUBLEASE

### LEGAL DESCRIPTION

For a 0.3788 acre parcel of land situated in the J. M. Dement Survey, Abstract 228, Jersey Village, Harris County, Texas said 0.3788 acre parcel being out of a 6.96083 acre parcel of land being recorded on F.C. 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 of the Harris County Clerk's Deed Records and said 0.3788 acre parcel of land being further designated as Reserve "A" of the Northwest Village Shopping Center, said 0.3788 acre tract being more particularly described by metes and bounds as follows:

COMMENCING at a 5/8" iron rod marking the South Corner of Northwest Village General Partnership 59.7499 acre tract, said point being at the intersection of Northeast right-of-way line of Hempstead Highway, U.S. 290 (300 ft. wide) and Northwest Line of Harris County Flood Control District right-of-way (Vol. 4364, page 566, Harris County Deed Records);

THENCE North 50° 25' 25" West, 606.00 feet along the Northeast right-of-way line of U.S. 290 to a 5/8" iron rod set for the POINT OF BEGINNING of the hereinafter described 0.3788 acre parcel of land;

THENCE North 50° 25' 25" West, 110.00 feet along the Northeast right-of-way line of U.S. 290 to a 5/8" iron rod set for corner;

THENCE North 39° 34' 35" East, 150.00 feet to a 5/8" iron rod set for corner;

THENCE South 50° 25' 25" East, 110.00 feet to a 5/8" iron rod set for corner;

THENCE South 39° 34' 35" West, 150.00 feet to the POINT OF BEGINNING and containing 0.3788 acres of land.

EXHIBIT "B" OF THE SUBLEASE

RENT SCHEDULE

| Years | Monthly | Rental Annual |
|---|---|---|
| 1 - 5 | $ 2,400 | $ 28,800 |
| 6 - 10 | $ 2,760 | $ 33,120 |
| 11 - 15 | $ 3,174 | $ 38,088 |
| 16 - 17 | $ 3,650 | $ 43,800 |
| Option I 1 - 5 | $ 4,198 | $ 50,376 |
| Option II 1 - 5 | $ 4,828 | $ 57,936 |

EXHIBIT "D" OF THE SUBLEASE

SUBLEASE TERM COMMENCEMENT DATE AND RENT PAYMENTS


Entered into this 14th day of ___April___, 198 8 by and between _CREATIVE FOOD N' FUN COMPANY___, Sublessor and WHATABURGER, INC., Sublessee.

WHEREAS, the parties have previously entered into a Sublease dated _____ ___March 28, 1988___ whereby Sublessor subleased to Del Taco Unit #2038___ and more particularly described therein; and

WHEREAS, the parties have agreed to define the commencement date of the primary term of said Sublease;

NOW, THEREFORE, the parties hereby agree:

That the commencement date of the primary term of said Sublease shall be the _12th_ day of _April___, 198 8_.

IN WITNESS WHEREOF, the parties have hereunto set their hands on the day and year first above mentioned.

SUBLESSOR:

By: _Claire D. Wright_

Its _Vice President and Chief Financial Officer_


SUBLESSEE:
WHATABURGER, INC.

By: _____
Its _Sr. Vice President_

EXHIBIT "E" OF THE SUBLEASE

SHOPPING CENTER LEGAL DESCRIPTION

#2038

**BILL OF SALE**  JAN 14 1988

STATE OF TEXAS      §
                       §       KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF HARRIS   §

That, M. I. VENTURES, INC., for the sum of One Hundred Ninety-Five Thousand Dollars ($195,000.00), the receipt and sufficiency of which is acknowledged, hereby TRANSFERS, ASSIGNS, CONVEYS and DELIVERS unto WHATABURGER, INC., a Texas corporation, whose address is P. O. Box 6220, Corpus Christi, Texas 78411, the following property:

All of the furniture, fixtures and equipment located in the restaurant building known as "Del Taco Mexican Cafe" located at 17388 NW Freeway, Houston, Texas, also known as a 0.3788 acre partial designated a Reserve "A" of the Northwest Village Shopping Center, together with all of the interest of M. I. Ventures, Inc. in and to the leasehold improvements in said restaurant building, excluding however sign panels (but including the frames and supporting structures for such signs) and excluding any inventory and any proprietary marks relating to "Del Taco" or "Del Taco Mexican Cafe".

TO HAVE AND TO HOLD unto Whataburger, Inc., its successors and assigns.

M. I. Ventures, Inc. warrants and represents that it has not granted any liens to any third party lienholder on the property hereby conveyed.

EXECUTED this ___30___ day of ___December___, 1987.

M. I. VENTURES, INC.

By: _____
Name: _____
Title: _____


STATE OF TEXAS      §
                       §
COUNTY OF _Harris_   §

This instrument was acknowledged before me on the ___30___ day of ___December___, 1987 by _Stamatios Iakovou_ _Vice President_ of M. I. VENTURES, INC., a Texas corporation, on behalf of said corporation.

_____
Notary Public, State of Texas
_Bambi McCullough_
(typed or printed name)
My commission expires: _3-31-90_


1817/W/.AB7

# SALES AGREEMENT

This is an Agreement by and between M. I. VENTURES, INC., as "Seller", and WHATABURGER, INC., as "Buyer".

Upon the terms and conditions herein set forth, Seller hereby agrees to sell and transfer to Buyer, and Buyer agrees to purchase from Seller, the following property:

All of the furniture, fixtures and equipment located in the restaurant building known as "Del Taco Mexican Cafe" located at 17388 NW Freeway, Houston, Texas, also known as a 0.3788 acre partial designated a Reserve "A" of the Northwest Village Shopping Center, together with all of the interest of M. I. Ventures, Inc. in and to the leasehold improvements in said restaurant building, excluding however sign panels (but including the frames and supporting structures for such signs) and excluding any inventory and any proprietary marks relating to "Del Taco" or "Del Taco Mexican Cafe".

The purchase price to be paid by Buyer to Seller is One Hundred Ninety-Five Thousand Dollars ($195,000.00) cash to be paid at closing. The purchase herein provided is to be accomplished in connection with Seller's cessation of business in the above restaurant building and in connection with Buyer's obtaining a sublease of such building. Accordingly, closing of the sale provided herein, and Buyer's liability hereon, is contingent on:

1.    Seller entering into a written agreement in form satisfactory to Buyer surrendering possession of the above property to Creative Food'N Fun Company and terminating any sublease to Seller; and

2.    Buyer's entering into a sublease agreement in a form satisfactory to Buyer whereby Buyer subleases the above mentioned restaurant building from Creative Food'N Fun Company.

Buyer shall have no liability whatsoever hereunder unless and until the foregoing two events occur.

Either party may terminate this Agreement after ___July 1___, 19 88    if closing has not occurred by such date.

The form of the Bill of Sale to be utilized is attached hereto as Exhibit "A", and Seller warrants that it will have title, free of all liens, to the property to be conveyed to Buyer at the time of closing. Seller also warrants that at the present time it has not heretofore granted any liens on any of the property to be conveyed to Buyer, and that it will grant no such liens prior to closing.

EXECUTED this _30_ day of __December__, 1987.

SELLER:

M. I. VENTURES, INC.

BUYER:

WHATABURGER, INC.

By: _Nemesio Galvan_
Name: STENATIO TXKAVAN
Title: VICE PRESIDENT

By: _C J Chatelain_
Name: C J CHATELAIN
Title: SENIOR VICE PRESIDENT

1817/W/.AB7