IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.[1] | ) Case No. 01-01139 (JKF) |
| | ) Jointly Administered |
| | ) |
| Debtors. | ) **Objection Deadline: July 7, 2006** |
| | ) **Hearing Date: July 24, 2006 at 2:00 p.m.** |

## MOTION TO AMEND THE ORDER AUTHORIZING THE DEBTORS TO EMPLOY AND COMPENSATE CERTAIN PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF THE DEBTORS' BUSINESSES

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby move the Court for entry of an order further amending that certain Order Pursuant to 11 U.S.C. §§ 1107(a) and 1108 Authorizing the Debtors to Employ and Compensate Certain Professionals Utilized in the Ordinary Course of the Debtors' Business dated May 3, 2001 (the "Original Order"). Specifically, the Debtors request that the Original Order be further amended to increase the Total Expenditure Cap (as defined below) to $800,000. In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

**Jurisdiction**

1.  This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this motion is proper under 28 U.S.C. § 1408.

2.  The statutory predicate for this Motion is section 363(b) of the Bankruptcy Code and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

3.  On April 2, 2001, the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4.  On May 3, 2001, this Court entered the Original Order authorizing the Debtors to continue to utilize certain professionals, including attorneys, accountants, actuaries and consultants, in their day-to-day business operations (collectively, the "Ordinary Course Professionals"). The Ordinary Course Professionals are not involved in the administration of the Chapter 11 Cases, and the Debtors' bankruptcy professionals have been retained by separate, individual applications. The Original Order authorized the Debtors to pay Ordinary Course Professionals up to $50,000 per month (the "Monthly Cap") and up to $300,000 in total per professional during these Chapter 11 Cases (the "Total Expenditure Cap").

5.  On December 10, 2002, this Court entered an order increasing the Total Expenditure Cap from $300,000 to $600,000 (the "2002 Order"). Contemplating that a further increase in the Total Expenditure Cap may become necessary, the 2002 Order provided that it

"shall be without prejudice to the Debtors' rights to seek additional increases to the amounts they are authorized to pay Ordinary Course Professionals in the future . . ."

### Relief Requested

6.    The Debtors respectfully entry of an order increasing the Total Expenditure Cap from $600,000 to $800,000.

### Basis for Relief

7.    In the near future, numerous Ordinary Course Professionals are likely to begin to exceed the current Total Expenditure Cap of $600,000. An increase of the Total Expenditure Cap is necessitated solely by the length of the Chapter 11 Cases and is neither the result of increases in the monthly fees billed by the Ordinary Course Professionals nor of increased activity being performed by the Ordinary Course Professionals. This Motion does not seek to increase the Monthly Cap.

8.    The Debtors have been in Chapter 11 and operated under the current Total Expenditure Cap for five years. Applied over that extended period of time, the payment of $600,000 in fees to an Ordinary Course Professional amounts to an average monthly expenditure of only $10,000. An average per month this low was never contemplated, as is clear from the fact that the Monthly Cap was set at $50,000 per month. However, by the sheer unexpected length of these Chapter 11 Cases, this has turned out to be the case. As a result, there is a need to increase the Total Expenditure Cap to preserve the Ordinary Course Professional character of numerous professionals billing very modest amounts to the Debtors.

9.    The Debtors hereby request an increase in the Total Expenditure Cap of $200,000 to account for the length of these Chapter 11 Cases. At an increase of $200,000, the Debtors should be able to prevent the need for any further increase in either this year or the following year, in the event the Debtors remain in Chapter 11 that long to conclude these Chapter 11 cases.

10.     Increasing the Total Expenditure Cap to $800,000 will eliminate the need for the Debtors to file numerous additional retention applications with the Court requesting authority to pay certain Ordinary Course Professionals higher amounts. Requiring the Ordinary Course Professionals to file retention pleadings and follow the usual fee application process would flood the Clerk's office, the Court and the U.S. Trustee's office with unnecessary fee applications from professionals who bill extremely modest amounts. Moreover, the unnecessary cost associated with these retention and fee applications would ultimately be borne by the Debtors' estates.

11.     The uninterrupted services of the Ordinary Course Professionals are vital to the Debtors' continuing operations and their ultimate ability to reorganize. The operation of the Debtors' businesses and these Chapter 11 Cases would be hindered if Ordinary Course Professionals were either (a) unable to be retained or paid for their services, or (b) required to submit to the Court formal applications for employment as professionals and subsequent monthly and quarterly fee applications. Further, a number of the Ordinary Course Professionals are unfamiliar with the fee application procedures employed in bankruptcy cases and might be unwilling to continue working with the Debtors if these requirements are imposed.

12.     In sum, increasing the Total Expenditure Cap will minimize the Debtors' expenses and facilitate the continued success of the Debtors' business operations and thus is in the best interests of the Debtors' estates. Moreover, because the Debtors only seek to increase the Total Expenditure Cap, all other terms of the Original Order shall remain in full force and effect. Accordingly, the increase to the Total Expenditure Cap will not eliminate the oversight function of the Court and other parties-in-interest because, pursuant to the Original Order, the Debtors will still be required to file quarterly statements disclosing how much they paid each Ordinary Course Professional.

13. The Debtors reserve the right to request authority to increase the amounts that they are authorized to pay Ordinary Course Professionals in the future if the need arises.

WHEREFORE, the Debtors respectfully request that the Court enter an order increasing the Total Expenditure Cap from $600,000 to $800,000, and granting such other and further relief as the Court deems just and proper.

Dated: June 19, 2006

KIRKLAND & ELLIS LLP
Janet S. Baer
Salvatore F. Bianca
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

and

PACHULSKI STANG ZIEHL YOUNG JONES & WEINTRAUB LLP

*/s/ James E. O'Neill*

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17$^h$ Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

DOCS_DE:119114.1