IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Objection Deadline: July 7, 2006** |
| | ) | **Hearing Date:  July 24, 2006** |

## MOTION OF THE DEBTORS FOR AN ORDER
## AUTHORIZING THE IMPLEMENTATION OF THE 2006-2008
## LONG-TERM INCENTIVE PROGRAM FOR KEY EMPLOYEES

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors")

hereby move this Court for entry of an order authorizing the implementation of the Grace 2006-

2008 Long Term Incentive Plan (the "2006-2008 LTIP") for certain key employees, as part of a

continuing long-term, performance-based incentive compensation program for key employees

(the "Ongoing Long-Term Incentive Program").    In support of this Motion, the Debtors

respectfully state as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

**Jurisdiction**

1.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a) and 363(b) of chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code").

**Background**

3.      On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"), which have been consolidated for administrative purposes only.  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors-in-possession.

4.      On April 2, 2001, upon a motion of the Debtors (the "Wages Motion"), the Court entered an order that, *inter alia*, authorized and approved on an interim basis certain compensation programs for key employees (the "Key Employees"), including the 2001-2003 Long-Term Incentive Plan (the "2001-2003 LTIP").  On June 22, 2001, the Court entered a final order authorizing and approving the 2001-2003 LTIP.[2]

5.      On the dates noted in the following Schedule, the Court entered an order authorizing the implementation of the respective long-term incentive plan (the "LTIP") for Key Employees, as part of the Ongoing Long-Term Incentive Program:

---

[2] In the Wages Motion, the Debtors reserved the right to determine whether a particular employee is a Key Employee pursuant to the applicable retention and long-term incentive programs.  For purposes of this Motion, the Debtors continue to reserve the right to determine whether a particular employee is a Key Employee with respect to the 2006-2008 LTIP; and the right to vary the selection of Key Employees under the 2006-2008 LTIP from the Key Employees identified under prior long-term incentive plans.

2

| Date of Order | Period of LTIP |
|---|---|
| August 26, 2002 | 2002-2004 LTIP |
| March 26, 2003 | 2003-2005 LTIP |
| June 9, 2004 | 2004-2006 LTIP |
| July 13, 2005 | 2005-2007 LTIP |

6.      The Ongoing Long-Term Incentive Program continues to contemplate the implementation of a long-term incentive plan each year, with payouts based on the performance of the Debtors' businesses, measured on a three-year performance period commencing with the year in which the specific plan is implemented.  Currently, the Ongoing Long-Term Incentive Program consists of (i) the 2004-2006 LTIP and (ii) the 2005-2007 LTIP.

7.      In accordance with its design and goals regarding motivating Key Employees, and the expectation of Key Employees, the ordinary administration of the Ongoing Long-Term Incentive Program requires that annual long-term incentive awards be made to Key Employees in the ordinary course of the Debtors' business in the form of an "LTIP." The 2006-2008 LTIP continues the implementation of that overall strategy.  Adoption of the 2006-2008 LTIP is consistent with the Ongoing Long-Term Incentive Program, and with respect to its design is also consistent with the 2002-2004 LTIP, the 2003-2005 LTIP, the 2004-2006 LTIP, the 2005-2007 LTIP, which were previously adopted as part of the Ongoing Long-Term Incentive Program.

### Relief Requested

8      By this Motion, the Debtors request that the Court authorize the continuation of the Ongoing Long-Term Incentive Program by authorizing the implementation of the 2006-2008 LTIP, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.

3

## Similarity Of The 2006-2008 LTIP With Previous LTIPs

9.    In all material respects, the provisions of the 2006-2008 LTIP are identical to the provisions of the four previous LTIPs, which were previously authorized and approved by the Court. Specifically, the provisions of the 2006-2008 LTIP are the same as the provisions of the previous LTIPs in the following respects:

(a)    The payments under the 2006-2008 LTIP will consist of 100% cash.

(b)    Business performance is measured on a three-year performance period, commencing with 2006.[3]

(c)    The applicable compounded annual 3-year growth rate in core earnings before interest and taxes ("EBIT") to achieve an award of 100% of the 2006-2008 LTIP target payment (the "Base Target Payment") will be 6% per annum. Core EBIT for the 3-year period is adjusted for changes in pension expense and LTIP expense.

(d)    Partial payouts for EBIT growth rates between 0% and 6% will be implemented on a straight-line basis.

(e)    The amount of the 2006-2008 LTIP payments will be increased at EBIT compounded annual growth rates in excess of the 6%, up to a maximum of 200% of the Base Target Payment at an annual compounded EBIT growth rate of 25%.

(f)    Payouts (if earned) will occur in 1/3 and 2/3 installments, respectively, in early March following years 2 and 3 of the LTIP (i.e., in 2008 and 2009.)

(g)    The total target payout for the 2006-2008 LTIP will be no more than $11.8 millions, which is the same total target payout with respect to the 2002-2004 LTIP, 2003-2005 LTIP, and the 2004-2006 LTIP[4] and the 2005-2007 LTIP.

---

[3] The 2002-2004 LTIP three-year performance period commenced with 2002, the 2003-2005 LTIP three-year performance period commenced with 2003, the 2004-2006 LTIP three-year performance period commenced with 2004, and the 2005-2007 LTIP three-year performance period commenced with 2005.

[4] Consistent with the 2005-2007 LTIP, the estimated total target payout specified above for the 2006-2008 LTIP excludes the targeted payout that will be awarded to the Debtors' Chief Executive Officer, Fred Festa. Under Mr. Festa's CEO employment agreement, he is entitled to a targeted award under that LTIP in the amount of $1,690,000. That employment agreement was approved by the Court by an Order dated April 24, 2005. The calculation of the total targeted payout for the 2002-2004 LTIP, the 2003-2005 LTIP and the 2004-2006 LTIP, also excluded consideration of the awards to the former CEO, Paul Norris, since LTIP awards to him were provided under his employment agreement, originally approved by the Court on June 22, 2001.

4

10.     The sole difference of significance between the previous LTIPs and the 2006-2008 LTIP is the three-year period during which performance is measured. Implementation of the Ongoing Long-Term Incentive Program necessitates that a renewed LTIP be initiated each year, with no more than three LTIPs in effect in any year. Thus, upon approval of the Court, in 2006, the 2004-2006 LTIP, the 2005-2007 LTIP and the 2006-2008 LTIP will each be active.

### Basis for Relief

11.     Section 105(a) of the Bankruptcy Code "permits the court to issue any order that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This Court has recognized that the broad reach of its equitable powers under section 105(a) of the Bankruptcy Code authorizes, among other things, implementation of key employee retention programs, including long-term incentive plans.

12.     Section 363(b) provides in relevant part that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." A court has the statutory authority to authorize a debtor to use property of the estate pursuant to section 363(b)(1) of the Bankruptcy Code when such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991); *see also In re Bethlehem Steel Corp.*, 2003 WL 21738964 (SDNY 2003) (requiring "a good business reason"); Fulton State Bank v. Schipper, 933 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by an "articulated business justification"); *Stephen Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *In re Ernst Home Center, Inc.*, 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

5

13.     Under section 363(b) of the Bankruptcy Code, a debtor has the burden to establish that it has a valid business purpose for using estate property outside the ordinary course of business. *See In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999), see also *In Re Delaware & Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991), and *In re Lionel Corp.*, 722 F.2d 1063, 1070-71 (2d Cir. 1983). Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest belief that the action was in the debtor's best interest. *See In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992).

14.     Generally, courts authorize debtors to implement key employee incentive programs because key employees are essential to a debtor's continued operations. *See In Re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) (sound business purpose justified the Debtor's employee incentive programs); *see also In re America West Airlines, Inc.*, 171 B.R. 674, 678 (Bankr. D. Ariz. 1994) (approving success bonuses to certain officers and employees as within Debtor's sound business judgment); *In re Interco Inc.*, 128 B.R. 229, 234 (Bankr. E.D. Mo. 1991) (authorizing the debtor to assume prepetition severance contracts and approving performance based retention program to ensure critical employees remained with the debtor).

15.     To continue to maintain cohesive and motivated management teams during the chapter 11 process—particularly in large chapter 11 cases—debtors frequently implement various combinations of incentive compensation programs. Without such programs, essential key employees will often tend to leave a debtor's employ if other employment opportunities arise offering greater financial rewards without the uncertainties inherent in a debtor's reorganization process. Recognizing these risks, similar employment and incentive plans have been authorized

6

by this and other courts, including *In re Homelife Corporation et al.*, Case No. 01-02412 (Bankr. D. Del. July 16, 2001); *In re Acme Metals Incorporated, et al.*, Case No. 98-2179 (Bankr. D. Del. February 23, 1999 and March 1, 1999); *In re FPA Medical Management, Inc., et al.*, Case Nos. 98-1596 through 98-1685 (Bankr. D. Del. September 23, 1998); *In re APS Holding Corp., et. al.*, Case No. 98-00197 (Bankr. D. Del. September 2, 1998); and *In re PWS Holding Corporation, Brunos, Inc., et. al.*, Case Nos. 98-212 through 98-223 (Bankr. D. Del. June 3, 1998).

16.     The Ongoing Long Term Incentive Program was developed in conjunction with Human Capital Advisor Services Group of Deloitte & Touche, at the time that the Debtors sought approval of the 2002-2004 LTIP.

17.     The Debtors' Board approved the implementation of the 2006-2008 LTIP on February 23, 2006, pending Court approval.

18.     Permitting the Debtors to continue the Ongoing Long-Term Incentive Program by implementing the 2006-2008 LTIP will accomplish the sound business purpose of aiding the maximization of the value of the Debtors' estates and furthering the Debtors' efforts to successfully reorganize. The Key Employees are experienced and talented individuals who are intimately familiar with the Debtors' businesses and can obtain employment elsewhere. Furthermore, the Debtors' management believes that without continuing the Ongoing Long-Term Incentive Programs, it would be difficult and more expensive to attract and hire qualified replacements for any Key Employee who does leave.

19.     Moreover, it continues to be the case that the unanticipated loss of Key Employees likely would adversely affect the Debtors' operations by lowering the morale of the remaining employees because of the appearance of disarray and disruption generated by such

7

departures. It would also burden the Debtors' remaining employees with additional responsibilities. Such a scenario would negatively impact the Debtors' operations. The Debtors therefore must protect a critical mass of their high-performing employees in sufficient numbers to profitably operate their businesses during the pendency of these Chapter 11 Cases, thus maximizing the likelihood of a successful restructuring.

20.    Additionally, given the current status of the Chapter 11 Cases, the Debtors' management believes that it will be difficult to maintain employee morale and loyalty if it does not continue the Ongoing Long-Term Incentive Program by implementing the 2006-2008 LTIP. The employees' morale, continued loyalty to the Debtors and faith in the Debtors' management will be furthered by the 2006-2008 LTIP because the Ongoing Long-Term Incentive Program clearly signals the Debtors' commitment to continuing to profitably grow their businesses for the benefit of the Debtors' stakeholders, including their employees.

21.    Finally, management believes that the Ongoing Long-Term Incentive Program has been an important part of the successful performances of the Debtor's businesses during the pendency of the Chapter 11 Cases.

22.    In light of these circumstances, the Debtors' specific goals in implementing the 2006-2008 LTIP include:

(a)    Continuing the Ongoing Long-Term Incentive Program, which will provide cash-based, long-term incentive opportunities to achieve pay levels that are not only competitive within the specialty chemical industry, but also are competitive with and comparable to similar programs instituted by other companies in chapter 11 because of mass tort liabilities; and

(b)    Providing cash incentive compensation potential to Key Employees during the Chapter 11 Cases, which is directly related to the performance of the Debtors' businesses.

23.    In light of the foregoing, the Debtors believe that the incentives provided by the 2006-2008 LTIP are reasonable and appropriate and will enhance the prospect of retaining Key

8

Employees and, ultimately, attaining a successful result in these Chapter 11 Cases. For all of the foregoing reasons, the 2006-2008 LTIP should be approved.

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) authorizing, but not requiring, the Debtors to continue the Ongoing Long-Term Incentive Program by authorizing the implementation of the 2006-2008 Long Term Incentive Plan, (ii) authorizing the Debtors to take such other action as may be necessary or appropriate to effect the intent of this Motion, and (iii) granting such other and further relief as the Court deems just and proper.

Dated: June 19, 2006

Respectfully submitted,

KIRKLAND & ELLIS LLP
Janet S. Baer
Salvatore F. Bianca
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

and

PACHULSKI STANG ZIEHL YOUNG JONES &
WEINTRAUB LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

9