IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 01-01139(JKF)<br><br>(Jointly Administered)<br><br>Hearing Date: July 24, 2006<br>Response Deadline: July 7, 2006 |

**OBJECTION OF THE PRUDENTIAL INSURANCE COMPANY OF AMERICA TO THE DEBTORS' MOTION FOR A SCHEDULING ORDER REGARDING CERTAIN OF THE DEBTORS' FIFTEENTH OMNIBUS OBJECTIONS TO PD CLAIMS (SUBSTANTIVE)**

The Prudential Insurance Company of America ("Prudential"), by and through its co-counsel, Jaspan Schlesinger Hoffman LLP and Riker, Danzig, Scherer, Hyland & Perretti LLP, hereby objects to the Debtors' Motion for a Scheduling Order Regarding Certain of the Debtors' Fifteenth Omnibus Objections to PD Claims (Substantive) [Doc. No. 12679] (the "Motion"), and respectfully states as follows:

## Summary of Objection

The Debtors' Motion seeks to transform the PD Estimation proceedings into a complex global claims adjudication process. The Motion should be denied for the following reasons:

(1) <u>The Motion would unnecessarily complicate both the PD Estimation process and the claims adjudication process.</u> To date, the PD Estimation process has largely involved two parties (the Debtors and PD Committee) and one issue (the estimation of the Debtors' aggregate PD liability). The Debtors' Motion, however, would unnecessarily entangle the PD Estimation proceeding with the ongoing proceedings to adjudicate PD claims – which proceedings involve hundreds of participants and thousands of

individual claims issues. Imposing the PD adjudication process on the PD Estimation proceedings would bog down both proceedings and would require that the expanded PD Estimation process consider (a) volumes of additional factual evidence relevant to individual (as opposed to aggregated) claims, (b) testimony from multitudes of additional fact and expert witnesses with claim-specific knowledge, (c) protracted discovery, and (d) an opportunity for briefing and oral argument by all of the hundreds of newly affected parties. Quite simply, the process proposed by the Debtors would cause undue delay and complication to both the PD Estimation process as well as the process of adjudicating individual PD claims.

(2) While the Motion seeks that the Court view certain issues as global to all PD claims, <u>the Court has already denied the Debtors' request for global adjudication of certain claims issues</u>, recognizing that issues affecting individual, as opposed to aggregated, claims are fact- and claim-specific. <u>See, e.g.</u>, Official Transcript of Hearing on Nov. 14, 2005, at 82-104 (denying Debtors' efforts to have certain claims issues globally adjudicated by the Court).

(3) <u>The procedures established by the Motion would violate the due process rights of PD Claimants</u> who have a right to have their claims heard and adjudicated individually on the merits and not based upon determinations regarding the merits of an aggregated class of claims.

(4) <u>The Motion would cause claimants to appear in court on numerous occasions over multiple days, despite the Court's previous rulings that claimants need not appear more than twice</u> to defend their claims. <u>See, e.g.</u>, Modified Scheduling Order Regarding Certain of Debtors' Fifteenth Omnibus Objections to Claims (the "Modified Scheduling Order") entered on December 19, 2005 [Doc No. 11408] at 4.

For the foregoing reasons, the Debtors' Motion to entangle the PD claims adjudication with PD Estimation should be DENIED, and the two distinct processes should continue on their already established separate tracks.

## Background

1. On April 2, 2001 (the "Petition Date"), W.R. Grace & Co. and certain of its affiliates (collectively, the "Debtors") filed with this Court voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code commencing their respective cases, now jointly administered.

2. On or about April 12, 2001, the Official Committee of Asbestos Property Damage Claimants (the "PD Committee") was appointed in these cases.

3. On or about November 13, 2004, the Debtors filed a proposed plan of reorganization (the "Plan") [Doc. No. 6895].

## The PD Estimation Case Management Order and the Separate PD Claims Adjudication Case Management Order

4. On August 29, 2005, the Court entered its Case Management Order for the Estimation of Asbestos Property Damage Liabilities [Doc. No. 9302] (the "PD Estimation CMO") establishing a process to estimate the Debtors' aggregate property damage asbestos liability for purposes of determining the feasibility of the Debtors' Plan (the "PD Estimation"). On the same day, the Court separately entered its Case Management Order for the Adjudication of Asbestos Property Damage Claims Objections [Doc. No. 9300] (the "PD Adjudication CMO") establishing a separate process for the adjudication of individual property damage claims. Since the entry of the PD Estimation CMO and the PD Adjudication CMO, the process of PD Estimation and the process of individual claims adjudication have appropriately traveled separate tracks.

### The PD Adjudication Process

5.      In connection with the requirements of the PD Adjudication CMO, on or about September 1, 2005, the Debtors filed objections to virtually all of the asbestos property damage claims filed against the Debtors, including eight (8) claims for asbestos property damage properly and timely asserted by Prudential (collectively, the "Prudential Claims").  Substantial litigation has commenced and is continuing between the Debtors and individual claimants as to the adjudication of asbestos PD claims.

### The PD Estimation Process

6.      Pursuant to the PD Estimation CMO, the PD Estimation has followed a separate path from the PD claims adjudication process.  The PD Committee, as representative for PD claimants in the PD Estimation, and the Debtors have each filed briefs, made oral arguments, designated fact and expert witnesses, conducted discovery and made various procedural motions.  The PD Estimation process is well under way, with deadlines for numerous required submissions having already passed.

### The Debtors' "Scheduling Motion"

7.      Notwithstanding that the PD Estimation and the PD claims adjudication processes are each well established on separate tracks, the Debtors have now filed the Motion that would entangle the two processes.

**OBJECTION**

I. **THE MOTION WOULD UNNECCESSARILY COMPLICATE BOTH THE PD ESTIMATION PROCESS AND THE PD CLAIMS ADJUDICATION PROCESS**

8. The Debtors' Motion would unnecessarily expand the PD Estimation proceeding from a two-party, single-issue litigation into a complicated procedure involving hundreds of parties and thousands of individual claim issues. Such a process would only serve to complicate both the PD Estimation process and the individual claims adjudication. Moreover, the entanglement of these two distinct processes is wholly unnecessary, given that separate proceedings for PD Estimation and PD claims adjudication have already been established by the Court and are ongoing. Compare, e.g., the PD Estimation CMO with the PD Adjudication CMO (establishing separate processes for PD Estimation and PD Claims Adjudication).

9. To date, one party – the PD Committee – has adequately represented the interests of all claimants in the PD Estimation process. The Motion, however, would require the direct involvement of hundreds of PD claimants as well as the dozens of counsel that represent them. (See, e.g., Exhibit 1 to the Motion, listing the hundreds of PD claimants that would be affected and their numerous respective attorneys.) Invariably, the effect of this exponential enlargement of the number of participating parties will serve to greatly complicate the proceedings and would require that the PD Estimation process now consider (a) volumes of additional factual evidence relevant to individual (as opposed to aggregated) claims, (b) testimony of numerous additional fact and expert witnesses with claim-specific knowledge, (c) protracted discovery, and (d) briefing and oral argument by all of the newly affected parties, including the opportunity to supply submissions and address issues affected by

deadlines already passed. Quite simply, the process proposed by the Debtors would cause undue delay and complication to both the PD Estimation process and the process for adjudicating individual PD claims. Indeed, because both proceedings have already begun, the Debtors' proposal would require certain matters to be redone. In short, the proceedings are already ongoing and should not be altered at this late date.

## II.   THE COURT HAS ALREADY DENIED THE DEBTORS' REQUEST FOR GLOBAL ADJUDICATION OF CERTAIN ISSUES

1.     While the Debtors' Motion requests the Court to view certain issues as global to all PD claims, the Court has already correctly denied the Debtors' request for global adjudication of certain claims issues. See, e.g., Official Transcript of Hearing on Nov. 14, 2005, at 82-104 (denying the Debtors' efforts to have statute of limitations issues globally adjudicated by the Court). The Court recognized that issues affecting individual (as opposed to aggregated) claims are fact- and claim-specific and require individual, not global, review and consideration. Indeed, the Debtors themselves acknowledge that adjudication of the currently existing PD claims will involve "complex legal and/or evidentiary issues." (Motion at 3.) The ongoing process of PD claims adjudication is uniquely suited to provide a determination on the merits of each PD claim based upon the particular facts and circumstances of each such claim.

2.     Moreover, the three issues that the Debtors seek to have globally determined by the Court pursuant to the Motion are, by their nature, claim specific. Statute of limitations determinations require review of the law of the applicable state and the particular facts as to when the claim arose. The Court has already ruled that statute of limitations determinations are claim specific. See Official Transcript of Hearing on Nov. 14, 2005, at 82-104. Likewise, evidence available to show product identification differs from claim to claim. While the Debtors may challenge evidence

6

demonstrating the existence of their product at certain properties, evidence of product identification at other properties is beyond challenge – for example, the Debtors have already stipulated that the Debtors' product exists at certain buildings covered by the Prudential Claims. See Prudential Ins. Co. of America v. United States Gypsum Co., et al., Nos. 87-4227, 87-4238, Final Pretrial Order at 10 (D.N.J. Dec. 18, 1996). Finally, proof of hazard is also a claim-specific issue, with individual claimants able to offer degrees of evidence to support the damage caused to them by the Debtors' harmful product. (See, e.g., Prudential's Proofs of Claim (attaching volumes of information regarding the hazard and damages created by the Debtors' product at the Prudential properties).) Each of the foregoing issues requires that the Court review the particular facts surrounding each claim. None of these issues are candidates for global review, and the Court's prior determinations have correctly opined as much.

### III. THE SUMMARY PROCEDURE PROPOSED IN THE MOTION WOULD VIOLATE THE DUE PROCESS RIGHTS OF CLAIMANTS

3. In the Motion, the Debtors appear to be attempting to establish a process to have all claims summarily dismissed without the Debtors ever having to litigate the merits of each individual claim. The summary and global adjudication procedure proposed by the Motion, however, would violate the due process rights of PD claimants who have a right to have their claims heard and adjudicated individually on the merits and not based upon determinations made in a proceeding involving an aggregated class of claims.

4. The use of an "estimation proceeding" to summarily adjudicate entire classes of claims would abrogate each individual creditor's right to Fifth Amendment due process and other Constitutional protections. See In re Federal-Mogul Global, Inc., 330 B.R. 133, 154 (D. Del. 2005) (holding that estimation of claims must

not be focused on the merits of individual claims due to Fifth Amendment concerns); see also In re G-I Holdings, Inc., 323 B.R. 583 (Bankr. D.N.J. 2005) (rejecting the debtor's attempts to liquidate individual asbestos claims during estimation citing concerns that the process would violate rights protected by the Constitution). Because the Debtor's Motion seeks establishment of a process that would deny claimants of individual consideration of their claims, the Motion should be denied as violative of the claimants' due process rights.

5. Moreover, because the PD Estimation proceeding is already ongoing, with several deadlines already having past, any effort by the Debtors to belatedly cause those proceedings to become binding as to the adjudication of individual claims would immediately create due process concerns, subjecting the entire claims determination process to attack on appeal.

## IV. THE PROCEDURE PROPOSED BY THE MOTION WOULD REQUIRE CLAIMANTS TO APPEAR ON MORE THAN TWO OCCASIONS, VIOLATING PRIOR ORDERS OF THIS COURT

6. Despite the Court's previous rulings that claimants need not appear more than twice to defend their claims, the procedure proposed by the Debtors' Motion would cause claimants to appear in defense of their claims on numerous occasions over multiple days.

7. Delaware Local Bankruptcy Rule 3007-1 provides that all substantive objections to a claim must be brought at the same time. Del. Bankr. L.R. 3007-1(f). The rule prevents an individual claimant from having to appear on multiple occasions to defend its claim against a debtor asserting serial objections. In the Debtors' cases, the Court has accommodated a request by the Debtors to assert objections to claims in batches. Nevertheless, the Court has clearly stated that <u>in no</u>

<u>event shall a claimant be required to appear more than twice to defend its claim</u>. <u>See, e.g.</u>, Modified Scheduling Order Regarding Certain of Debtors' Fifteenth Omnibus Objections to Claims entered on December 19, 2005 [Doc No. 11408] at 4 ("[N]o claim . . . shall be subjected to more than two hearings on Objections thereto."). Notwithstanding that Order, the Motion now proposes a procedure that would require certain claimants to appear more than twice in defense of their claim. Moreover, the Debtors' proposal would also require claimants to attend the PD Estimation proceedings day in and day out, waiting for the proceedings to address the particular legal issues affecting their individual claim. Requiring claimants to attend and participate in a lengthy trial process, only a certain potion of which would deal with their individual claim, represents a massive waste of legal resources at a considerable expense and prejudice to individual claimants. Both the Local Rules and the existing mandate of this Court operate to prevent such an abuse of process, and the Debtors should not be allowed to circumvent these rules through the entangled estimation/adjudication procedure proposed in the Motion.

[remainder of page intentionally left blank]

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Prudential respectfully requests that the Court (i) deny the Debtors' Motion and (ii) continue with separate PD Estimation and PD claims adjudication proceedings as previously established by the PD Estimation CMO and the PD Adjudication CMO entered by this Court.

Date:   Wilmington, Delaware
        July 7, 2006

/s/ Laurie S. Polleck
Laurie S. Polleck, Esq. (Bar No. 4300)
JASPAN SCHLESINGER HOFFMAN LLP
913 North Market Street, 12th Floor
Wilmington, DE  19801
Tel: (302) 351-8000
Fax: (302) 351-8010
Email: lpolleck@jshllp-de.com

- and -

RIKER, DANZIG, SCHERER, HYLAND
  & PERRETTI LLP
Robert J. Gilson, Esq.
Curtis M. Plaza, Esq.
Craig T. Moran, Esq.
Headquarters Plaza
One Speedwell Avenue
P.O. Box 1981
Morristown, New Jersey 07962-1981
(973) 538-0800
Email: rgilson@riker.com
Email: cplaza@riker.com
Email: cmoran@riker.com

Co-counsel for The Prudential Insurance Company of America

3667465.2