IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al., | ) Case No. 01-01139 (JKF) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Objection Deadline: July 7, 2006** |
| | ) **Hearing Date: July 24, 2006 at 2:00 p.m.** |
| _____ | ) **Re: Docket No. 12679** |

**OBJECTION OF OFFICIAL COMMITTEE OF ASBESTOS PROPERTY DAMAGE CLAIMANTS TO DEBTORS' MOTION FOR A SCHEDULING ORDER REGARDING CERTAIN OF THE DEBTORS' FIFTEENTH OMNIBUS OBJECTIONS TO PD CLAIMS (SUBSTANTIVE)**

By their Motion, the Debtors seek to radically transform the PD Estimation into something the Court never envisioned – a process to disallow individual property damage claims (the "**PD Claims**") in the muddle of an aggregate estimation of all PD Claims for assessing plan feasibility. The Debtors also seek to impermissibly transfer the adjudication of certain PD Claims filed in respect of buildings located in Canada but against U.S. Debtors in this Court (the "**Canadian PD Claims**") to a Canadian court presiding over an insolvency proceeding of a Canadian affiliate that is not a U.S. Debtor and against whom the Canadian PD Claims were not filed.

As to the first of the Debtors' objectives, the Debtors seek to disallow PD Claims in Phase 2 of the PD Estimation through a wholly inappropriate F.R.C.P. 42 evidentiary hearing(s) on claim-specific defenses of statutes of limitation, product identification and lack of hazard. In support of the Motion, the Debtors fail to offer any new facts or caselaw, but rather rely upon snippets from their prior briefs and arguments that were largely rejected by the Court. Indeed, the PD Committee has responded to numerous ill-fated attempts by the Debtors to

inappropriately employ Rule 42 trials or convert the PD Estimation into a claims liquidation event; so much so that the PD Committee will spare the Court from yet another lengthy explication of these settled matters. Rather, the PD Committee incorporates herein all such filed briefs and related oral arguments.[1] The Court should again reject the Debtors' latest attempt to convert the PD Estimation into a claims disallowance process.

As for the Canadian PD Claims, the Debtors seek to transfer the adjudication of those Claims to the pending insolvency proceeding for Grace Canada, Inc. ("**Grace Canada**"), *In the Matter of S. 18.6 of the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, As Amended and In the Matter of Grace Canada, Inc.,* Court File 01-CL-4081, Ontario Superior Court of Justice, Commercial List (the "**Grace Canada Proceeding**"). Putting aside for the moment that the Debtors have closely guarded against keeping this Court apprised or even knowledgeable about the Grace Canada Proceeding,[2] the Debtors' attempt to transfer the Canadian PD Claims to the Grace Canadian Proceeding for adjudication clearly would be an

---

[1] Relevant PD Committee briefs include the following: Response and Memorandum in Opposition to Debtors' Motion for Entry of Case Management Order, Establishment of a Bar Date, Approval of the Proof of Claim Forms and Approval of the Notice Program, dated September 7, 2001 [Docket No. 900] (the "**CMO Objection**"); Response and Objection to the Proposed Asbestos Property Damage Proof of Claim Form Filed in Support of Debtors' Revised Motion as to All Non-Asbestos Claims, Asbestos Property Damage and ZAI Claims for Entry of Case Management Order, Establishment of Bar Date, Approval of Proof of Claim Forms and of the Notice Program, dated March 8, 2002 [Docket Nos. 1780, 1782]; Objection to Debtors' Motion for Limited Waiver of Del. Bankr.LR. 3007-1 for the Purpose of Streamlining Objections to Certain Claims Filed Pursuant to the Bar Date Order, dated January 12, 2004 [Docket No. 4908]; Objections to (I) Disclosure Statement for Debtors' Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code; (II) Debtors' Motion for a Case Management Order; (III) Debtors' Motion for Estimation of Asbestos Claims; and (IV) Debtors' Motion for Approval of Confirmation Procedures, dated December 22, 2004 [Docket No. 7343] (the "**Disclosure Statement Objection**"); Objection to Debtors' Eighth Motion for an Order Pursuant to 11 U.S.C. Section 1121(d) Extending Debtors' Exclusive Periods in Which to File a Chapter 11 Plan and Solicit Votes Thereon, dated June 10, 2005 [Docket No. 8600]; Objection to Debtors' Motion to Approve PI CMO and Questionnaire and Memorandum of Points and Authorities in Support of Motion, dated June 30, 2005 [Docket No. 8817]; Proposed Case Management Order and Incorporated Memorandum of Law in Support of Proposal, dated July 13, 2005 [Docket No. 8990]; Limited Response to Debtors' Fifteenth Omnibus Objection (Substantive) to Asbestos Property Damage Claims, dated October 21, 2005 [Docket No. 10013] (the "**Limited Response to the Fifteenth Omnibus Objection**"). Relevant oral arguments occurred on the following dates: February 25, 2002 [Docket No. 1793]; March 18, 2002 [Docket No. 1912]; January 21, 2005 [Docket No. 7680]; June 27, 2005 [Docket No. 8961]; July 19, 2005 [Docket No. 9105]; and November 14, 2005 [Docket No. 11563].

[2] See Disclosure Statement Objection at 34.

abuse of process and simply impermissible under the law. Accordingly, this relief too, should be denied.

## I. PD ESTIMATION ISSUES

### A. The Purpose of the PD Estimation is to Solely Determine Plan Feasibility, Not the Liquidation of Individual PD Claims

The contours and purpose of the PD Estimation were fashioned by the Court after extensive argument and consideration. In this regard, on numerous occasions, the Court has underscored that the PD Estimation is not designed for the purpose of allowance of individual PD Claims but rather for the purpose of determining feasibility of a plan of reorganization. See, e.g., Official Transcript of July 19, 2005 at 108 (statements of the Court) ("[The PD Estimation] is, in my view, preliminary to the plan process. It is fixing the claims, the property damage claims, figuring out how the trust has to be funded . . . and it may not provide for the percentage of distribution, but it is going to be the whole universe of what will be available for distribution."); see also Official Transcript of November 14, 2005 hearing at 103 (statements of the Court) ("But in figuring [dust versus air samplings] as part of the estimation phase what I'm eventually trying to get to is what are the value of the claims that have to be funded? That's it.").

The PD Committee is unaware of any new fact or case that warrant rethinking the present scope of the PD Estimation. Rather, the Motion intends mischief and is obviously designed to disadvantage PD Claimants by creating a surreal process to disallow PD Claims *en masse* and to avoid the more rigorous prosecution of building-by-building objections and defenses in the PD Claims Objection process. The Debtors highlight the reduced number of PD Claims (now totaling approximately 900)[3] as reason to liquidate PD Claims in the PD Estimation, but this fact

---

[3] The PD Committee has contacted the claims agent in these cases, Rust Consulting, Inc., to reconcile discrepancies between the PD Committee's records of remaining PD Claims with those of the Debtors.

3

only underscores the need for the Court to maintain the bright-line distinction between the PD Estimation and the PD Claims Objection processes.[4]

The Debtors acknowledge that remaining PD Claims "[involve] more complex legal and/or evidentiary issues." Motion at 3. They further note that issues relating to the defenses of product identification, statutes of limitation and lack of proof of hazard "implicate more complex evidentiary issues than the simple objections teed up to date." Id. at 7. In large part, these defenses are more complex because their application is dependent upon the unique facts and circumstances of each remaining PD Claim and are not susceptible to common application among PD Claims generally. As a result, the liquidation of PD Claims based on these defenses must be strictly confined to the PD Claims Objection process, which is specifically designed—unlike the PD Estimation—to provide a merits-based adjudication of each PD Claim based on the unique facts and circumstances of each PD Claim and with each PD Claimant present before the Court.[5]

---

[4] The Debtors make much of the fact that Messrs. Dies and Speights are each counsel to a substantial percentage of remaining holders of PD Claims. The small universe of highly qualified counsel should not marginalize the fact that these attorneys each represent several hundred individual PD Claimants with uniquely situated facts and circumstances.

[5] Under the current CMO governing the PD Estimation, PD Claimants are not required, but may elect, to participate in the PD Estimation. To the extent that the Court grants the Motion and orders the compulsory joining of PD Claimants to the PD Estimation, the PD Estimation CMO would need significant reworking to provide the PD Claimants with the rights granted to parties who voluntarily elected to participate.

### B. PD Claims Are Not Susceptible to Liquidation *En Masse* Based on the Defenses of Statutes of Limitation, Product Identification or Proof of Hazard

#### 1. Rule 42 Common Issue Trials Have No Place in the PD Estimation

The PD Committee has argued since the inception of these cases against the notion that PD Claims may largely be resolved by common issue litigation. See, e.g., CMO Objection at 14. Ironically, pre-petition, the Debtors likewise consistently argued that the issue of the defectiveness of their asbestos containing products had to be determined on a building-by-building basis and that common issue trials were inappropriate. See PD Committee's Proposed Case Management Order and Incorporated Memorandum of Law in Support of Proposal at 7, dated July 13, 2005 [Docket No. 8990] (exemplary cases cited therein). To date, the Court has determined that only one the dust-versus-air methodology issue to be adjudicated in Phase 1 of the PD Estimation may possibly be applied to all PD Claims.[6] See Official Transcript, Nov. 14, 2005 at 100. Therefore, the attempt by the Debtors to once again interject Rule 42 trials into the PD Estimation concerning defenses other than Phase 1 methodology must fail.[7]

#### 2. The Court Has Specifically Ruled That the Defense of Statutes of Limitation Must Be Determined on a Claim-By-Claim Basis

Based on substantial briefing by the parties and a purported "expert" report submitted by the Debtors at the hearing held on November 14, 2005, the Court ruled that whether a date certain exists by which applicable statutes of limitation begin to run against all PD Claimants, i.e. the Debtors' theory of "constructive notice," is not an estimation issue (threshold or otherwise).

---

[6] It is noteworthy that even the dust/air sampling methodology issue does not go to the value of individual claims, but rather to the requisite proof required to demonstrate building contamination. Further, no matter the result of the dust-versus-air litigation, the PD Committee has explained to the Court that various other methods exist besides dust or air samplings to prove contamination, including visual inspection.

[7] The PD Committee has noted on numerous occasions that the Debtors have the burden of demonstrating the propriety of a Rule 42 trial. See Ocean Ships, Inc. v. Stiles, 2003 WL 22741457, at *1 (S.D.N.Y. 2003) (holding that the burden is on the moving party to prove that consolidation is warranted, that the actions to be consolidated

5

See id. at 82-104. According to the Court, the determination of whether a PD Claim is barred by applicable statutes of limitation must be done on a building-by-building basis. Id. The Debtors have already acknowledged the individualized nature of the statutes of limitation defense by including the defense as a "Gateway Objection" to individual PD Claims. See Motion of Debtors for Limited Waiver of Del.Bankr.LR. 3007-1 for the Purpose of Streamlining Objections to Certain Claims Filed Pursuant to the Bar Date Order at 3 [Docket No. 4853] (the "Gateway Objections Motion"); see also Order approving Gateway Objections Motion, dated July 19, 2004 at 2 [Docket No. 6009] (the "Gateway Objections Order"); Scheduling Order Regarding Debtors' Fifteenth Omnibus Objection to Claims (Substantive) [Docket No. 11035] at 3-4 (the "Scheduling Order"); Modified Scheduling Order Regarding Certain of Debtors' Fifteenth Omnibus Objections to Claims (Substantive) at 3 [Docket No. 11408] (the "Modified Scheduling Order"). The Debtors provide no basis to overturn the Court's rulings that the adjudication of statutes of limitation defenses for purposes of allowance must occur exclusively within the PD Claims Objection process.

### 3. Product Identification and Proof of Hazard Must Likewise Be Determined On A Building-By-Building Basis

As explained by the Court below, the purpose of including a particular defense in the PD Estimation is to inform the Court on the value of the PD Claims in the aggregate and not for the purpose of allowing or disallowing a particular PD Claim:

> The Court: I don't think [determining the legal standard for California under constructive notice is] estimating the claim. I think what that's doing is determining by way of judgment whether you have an allowed claim that can go forward. Because I would not be determining the value of that claim. Let's say that I decide – again hypothetically, just to get to the point – let's say I decide that in fact, California's constructive notice statute is not applicable to whatever claims objections to the Debtor raises. That doesn't tell me that the claim is

---

are based on common questions of law or fact, and that considerations of efficiency outweigh any prejudice or confusion that might result). The Motion fails to even attempt to meet this substantial burden.

> allowed at a certain value. It simply tells you that that defense doesn't work. So it doesn't estimate the claim.

Official Transcript, November 14, 2005 at 83 (emphasis added).

Here, as with the statutes of limitation defense, the Debtors seek to disallow claims through the PD Estimation on the bases of lack of product identification and "hazard." Accordingly, since the stated purpose of including these particular defenses in the PD Estimation is <u>not</u> to inform the Court as to the value of PD Claims in the aggregate, but rather to disallow PD Claims, these defenses should not be employed in the PD Estimation.[8]

### 4. The Limited Role of the Defenses in the PD Estimation

Contrary to the Debtors' assertions, only a slight nexus exists between the PD Estimation and the PD Claims Objection process. To the extent that PD Claims are disallowed in the PD Claims Objection process based on statutes of limitation, product identification, proof of hazard, or otherwise, those PD Claims will not be estimated in the PD Estimation. Conversely, to the extent that PD Claims survive the PD Claims Objection process, those PD Claims will be considered in the PD Estimation. Moreover, requiring (whether expressly or functionally) that all remaining PD Claimants participate in the PD Estimation (regardless of how many or how few lawyers represent such Claimants), merely ensures that the PD Estimation cannot be undertaken in the same period of time presently contemplated.

With respect to those PD Claims that await individual adjudication, Debtors' counsel described the process it intends to employ to estimate those PD Claims: "What we would do is

---

[8] It is worth noting as well that, similar to the statute of limitations defense, the Court approved the Debtors' request to include lack of product identification as a "Gateway Objection" to individual PD Claims. See Gateway Objections Order at 2. Further, as the Court will recall, it entered the Modified Scheduling Order to ensure that PD Claimants would only be required to appear in Court no more than twice in respect both gateway *and* substantive objections to PD Claims. See Modified Scheduling Order; see also Official Transcript, November 14, 2005 at 44 - 54. By allowing the Debtors to prosecute their PD Claims objections in both the PD Estimation and the PD Claims Objection process, PD Claimants would again be unfairly subjected to seriatim attack on their claims, which this Court has already found objectionable.

7

we would argue the legal issues, but the experts would translate our arguments into what claims, or what groups of claims are picked up by the arguments." Official Transcript, January 21, 2005 at 137.  In other words, according to the Debtors, the estimation filters that it will use to estimate PD Claims will include statutes of limitation, product identification and hazard; however, those filters are inappropriate tools to disallow a single PD Claim as they are not claim specific.  Due process to holders of PD Claims requires nothing less.[9]

## II.  CANADIAN PD CLAIMS ISSUES

In order to fully understand the mischief proposed by the Debtors in respect of the Canadian PD Claims, it is necessary to understand the Grace Canada Proceeding and its relationship to the Debtors' proceedings in the United States.  First, Grace Canada is not a debtor in the United States.  Second, no U.S. Debtor is a party to the Grace Canada Proceeding.  The PD Committee has previously complained about the shroud the Debtors have placed over the Grace Canada Proceeding, and in fact, until the Debtors filed their Disclosure Statement in November 2004, virtually no one even knew of such proceeding.  The Debtors submit that the Canadian PD Claims may be transferred because their Plan provides for such treatment.  Suffice it to say that the Debtors' Plan and Disclosure Statement provide no basis in the law to transfer the Canadian PD Claims to the Grace Canada Proceeding.  Indeed, this Plan provision, along with many others in the Plan, makes it patently unconfirmable and, therefore, any purported reliance by the Debtors on the Plan is grossly misplaced and improper.

---

[9] As the PD Committee has often argued, the Debtors' proposed allowance-styled estimation would deprive individual PD Claimants of their due process rights.  Although courts have found that a bankruptcy court can use "whatever method is best suited to the particular contingencies at issue," this does not mean that procedural due process rights can be sacrificed on the altar of expediency.  See In re Combustion Eng'g, Inc., 391 F.3d 190, 245 n. 64 (3d Cir. 2004) (minimal due process requirements extend to bankruptcy proceedings); In re Amoroso, 123 Fed.Appx. 43, 49-50 (3d. Cir. 2004)(analyzing due process requirements in a bankruptcy proceeding); Jones v. Chemetron Corp., 212 F.3d 199, 209 (3d. Cir. 2000) (applying due process considerations to bankruptcy proceeding).

### A. Section 305 Abstention

The Debtors predicate their requested relief on two distinct abstention provisions, neither of which forms a sufficient basis to transfer the Canadian PD Claims to the Grace Canada Proceeding. First, the Debtors rely on the abstention provisions of section 305. Section 305(a) provides, in pertinent part,

> [t]he court, after notice and a hearing, may dismiss a <u>case</u> under this title or may suspend <u>all</u> proceedings in a <u>case</u> under this title, at any time if –
> (1) the interests of creditors and the debtor would be better served by such dismissal or suspension; or
> (2)   (A) there is pending a foreign proceeding; and
>            (B) the factors specified in section 304(c) of this title warrant such dismissal or suspension.

<u>See</u> 11 U.S.C. § 305 (2000) (emphasis added).

When a court abstains pursuant to section 305, it abstains from the entire case. <u>See</u> <u>In re Bellucci</u>, 119 B.R. 763, 771 (Bankr. E.D. Cal. 1990). "The court cannot rely on section 305 abstention to pick and choose proceedings within the case." <u>Id</u>. <u>See also</u>, <u>In re Reed</u>, 94 B.R. 48, 53 (Bankr. E.D. Pa. 1988) (holding that section 305 only applies to abstaining from the entire case and not to particular proceedings within the case). Clearly, the Debtors have misconstrued this statute as they are not seeking to dismiss or suspend these entire bankruptcy cases.

### B. Permissive Abstention Under 28 U.S.C. § 1334(c)(1)

Secondly, the Debtors rely on the permissive abstention provisions of 28 U.S.C. § 1334(c)(1). Again, the Debtors' argument is flawed. Pursuant to 28 U.S.C. § 1334(c)(1), the Court "in the interest of justice, or in the interest of comity with State courts or respect for State law" may abstain from hearing a proceeding arising under title 11.

Over the objection of the PD Committee, the Debtors were successful in obtaining a bar date by which all PD Claims against the <u>U.S. Debtors</u> had to be filed. Indeed, by the March 31,

2003 bar date, in excess of 250 Canadian PD Claims were filed against the U.S. Debtors, primarily W.R. Grace-Connecticut, Inc., one of the Debtors who manufactured and processed asbestos-containing products. Significantly, none of those claimants asserted PD Claims against Grace Canada in the Grace Canada Proceeding. As a result, the Grace Canada Court is without any subject matter or personal jurisdiction over the Canadian PD Claims thereby precluding the Court from abstaining from the adjudication of the Canadian PD Claims in favor of the Grace Canada Court.

Despite the lack of the Grace Canada court's jurisdiction over the Canadian PD Claims, the Debtors brazenly blur that issue by referring to a number of inapposite cross-border cases that authorized permissive abstention. See e.g., In re Maxwell Corp., 170 B.R. 800 (Bankr. S.D.N.Y. 1994); In re Regus Business Centre Corp., 301 B.R. 122 (Bankr. S.D.N.Y.). The Debtors fail to point out that in every case they rely upon for this Court's proposed authority to permissively abstain from the adjudication of the Canadian PD Claims, the U.S. debtor in each such case itself had filed a parallel proceeding in the foreign jurisdiction. In contrast, as explained above, the only entity that is the subject of the Grace Canada Proceeding is Grace Canada, and that entity is not a U.S. Debtor. Accordingly, there is no pending proceeding to which the Court can properly transfer the Canadian PD Claims.

## **CONCLUSION**

**WHEREFORE**, the PD Committee respectfully requests that this Court: (a) deny the Debtors' Motion; and (b) provide the PD Committee with such other and further relief as is just and proper.

Dated:    Wilmington, Delaware
            July 7, 2006

                                    Respectfully submitted,

                                    BILZIN SUMBERG BAENA
                                      PRICE & AXELROD LLP
                                    200 South Biscayne Boulevard
                                    Suite 2500
                                    Miami, Florida  33131-2336
                                    Telephone:  (305) 374-7580

                                    Scott L. Baena (Admitted Pro Hac Vice)
                                    Jay M. Sakalo (Admitted Pro Hac Vice)
                                    Matthew I. Kramer (Admitted Pro Hac Vice)

                                    and

                                    FERRY, JOSEPH & PEARCE, P.A.


                                     /s/ Lisa L. Coggins
                                    Michael B. Joseph, Esq. (Del. Bar No. 392)
                                    Theodore J. Tacconelli, Esq. (Del. Bar No. 2678)
                                    Lisa L. Coggins, Esq. (Del. Bar No. 4234)
                                    824 Market Street, Suite 904
                                    P.O. Box 1351
                                    Wilmington, Delaware  19899
                                    Telephone:  (302) 575-1555