## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| **In re:** | ) **Chapter 11**<br>) **Case No. 01-1130 (JKF)**<br>) **(Jointly Administered)** |
| **W.R. GRACE & CO., et al.,** | ) |
| **Debtors.** | ) **Related Docket Nos. 11067, 11243, 11244, 11246,**<br>) **11247, 11404, 11309, 11747, 11748, 11756, 12031,**<br>) **12405**<br>) **Objection Deadline:  July 7, 2006**<br>) **Hearing Date:  July 24, 2006 at 2:00 p.m.** |

### SUPPLEMENTAL OBJECTION OF THE FUTURE CLAIMANTS' REPRESENTATIVE, OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS AND OFFICIAL COMMITTEE OF ASBESTOS PROPERTY DAMAGE CLAIMANTS TO DEBTORS' NINTH MOTION FOR ORDER FURTHER EXTENDING EXCLUSIVE PERIODS FOR FILING A PLAN AND SOLICITING VOTES THEREON, AND THE ASBESTOS CONSTITUENTS' PROPOSAL FOR A QUICKER EXIT FROM CHAPTER 11

David T. Austern, the legal representative for future asbestos claimants (the "Future Claimants' Representative" or "FCR"), the Official Committee of Asbestos Personal Injury Claimants (the "ACC"), and the Official Committee of Asbestos Property Damage Claimants (the "PD Committee," and together with the FCR and ACC, the "Asbestos Constituents"), by their respective counsel, submit this supplemental objection to the Ninth Motion for an Order Pursuant to 11 U.S.C. § 1121(d) Extending Debtors' Exclusive Periods in Which to File A Chapter 11 Plan and to Solicit Votes Thereon (the "Ninth Motion") (Docket No. 11067), filed by W.R. Grace & Co. and its affiliates (collectively, the "Debtors"). In addition, as set out below, the Asbestos Constituents recommend a proposal which may lead to a quicker exit from Chapter 11 than the path advocated by the Debtors.

## PRELIMINARY STATEMENT

The Debtors have had over five years to move these cases to resolution. Yet they have neither formulated a consensual Chapter 11 plan of reorganization nor filed a confirmable plan, and are no closer to doing so.[1] Despite this posture, the Debtors continue to argue that they are entitled to exclusivity at least through the conclusion of the estimation processes for both personal injury and property damage claims, which now is not likely until, at the earliest, the summer of 2007.

The lack of meaningful progress with the Asbestos Constituents this many years into these cases should compel the Court to conclude that further extensions of exclusivity will only serve to further delay the reorganization process. Moreover, the Debtors have failed to demonstrate (because they cannot do so) that any cause exists for the extension of exclusivity; lest we forget, cause for the extension of exclusivity is required by the operative version of section 1121 of the Bankruptcy Code. The lifting of exclusivity will not have a negative impact on the Debtors' businesses; the declarations in the record confirm that the Debtors have prospered in these cases, with results improving even with the threat of losing exclusivity.[2] The lifting of exclusivity will not only permit the filing of competing plans, but will also jump-start negotiations with all parties (including the Debtors), provide all constituents with a level playing field at the negotiating table, and possibly lead to agreement on the terms of a consensual plan.

The recent mediation efforts make it abundantly clear that the real stumbling block for a consensual resolution of these cases is the markedly different views of the Debtors' solvency. On

---

[1] As described herein, the Debtors' Amended Plan of Reorganization (Dkt. No. 7560) (the "Plan") announces that asbestos claimants are not impaired and are not entitled to vote. Despite the Debtors' contention, among other reasons, the Plan does impair asbestos claimants as it channels asbestos claims to a limited fund and enjoins claimants from litigating their claims against other parties.

[2] See Dkt Nos. 8982 (FCR's business brief and Radecki affidavit), 8984 (ACC's business brief and Mathews affidavit), and 8985 (PD Committee's business brief and Boyer affidavit).

the one hand, the Debtors, the Official Committee of Unsecured Creditors and the Official Committee of Equity Holders take the position that the Debtors *are* solvent, thus entitling general unsecured creditors to 100% of their allowed claims, together with post-petition interest thereon, and entitling existing holders of equity interests to retain their interests.  On the other hand, the Asbestos Constituents contend that the Debtors are woefully insolvent as a consequence of the unliquidated claims of the asbestos personal injury and property damage claimants, the Department of Justice and the State of New Jersey.

Accordingly, absent consent, a plan cannot be confirmed without a determination of the Debtors' solvency.   While the determination of the Debtors' solvency may, in part, be accomplished by the estimation of the Debtors' asbestos liabilities, that process is time consuming and likely to take another year to complete.   Indeed, the Asbestos Constituents believe there is a better and more efficient way to bring these cases to a conclusion, or at least increase the likelihood of an earlier conclusion.  As explained below, the Asbestos Constituents propose that the case management order for the estimation of personal injury liabilities be modified so that liabilities to cancer claimants are estimated first.

Accordingly, the Asbestos Constituents respectfully request that the Debtors' Ninth Motion to further extend exclusivity be denied and that the Court implement the Asbestos Constituents' proposed change to the *status quo*.

## BACKGROUND

1.    The Asbestos Constituents included a detailed discussion of the events leading up to the filing of the Debtors' Ninth Motion in their initial objections to the Ninth Motion, which are incorporated by reference herein.  See Dkt. Nos. 11243 (PD Committee's objection), 11244 (FCR's objection) and 11247 (ACC's objection).

3

2.      Several events have occurred since the filing of the Asbestos Constituents' initial objections which are worthy of discussion and which may assist the Court in assessing the relief sought in the Debtors' Ninth Motion.

**Events in These Cases Since the Debtors' Previous Request for a Further Extension of Exclusivity**

3.      At the December 19, 2005 omnibus hearing, the Court considered the Debtors' request for a further extension of their exclusive periods, which request was continued from the omnibus hearing on August 29, 2005, so that the parties could work out the technical issues surrounding the case management order and questionnaire in connection with the estimation of asbestos personal injury claimants.  See Aug. 29, 2005 Bankr. Hr'g Tr., Dkt. No. 9349, p. 131, line 21.

4.      At the December 19 hearing, the Court extended the Debtors' exclusivity for sixty days, until the February 21, 2006 omnibus hearing, and indicated that, if a consensual agreement was not reached by the February 21 hearing, the Court would appoint someone to assist in the plan negotiation process.  See Dec. 19, 2005 Bankr. Hr'g Tr., pp. 110-11, Dkt. No. 11473.

5.      On February 13, 2006, the Debtors filed their Status Report on the Progress of the Case (the "Status Report"), in which they discussed the steps they said they had taken to address the concerns previously expressed by the Court.  See Status Report, Dkt. No. 11756.  The Debtors indicated that they have "been hard at work to address the Court's concerns with the plan on file."  Status Report at p. 6.  Specifically, the Debtors stated that they are "ready to file (if necessary) an amended plan that removes the cap on personal injury claims and puts equity at

risk."[3] Id. at p. 7.  They also stated that they are "preparing amendments that could be used in the event that agreement is reached with the personal injury claimants."  Id.  The Status Report also proposed that a mediator be appointed in order to move the parties toward resolution in these cases.

6.    At the February 21, 2006 omnibus hearing, the Court extended the Debtors' exclusive periods by another sixty days and directed the parties to commence plan mediation. See Order Extending Debtors' Exclusive Periods in Which to File a Chapter 11 Plan and Solicit Votes Thereon and Appointing a Plan Mediator, Dkt. No. 12031.

7.    Judge Sam C. Pointer, Jr. was subsequently selected and appointed by the Court as the plan mediator and a number of mediation sessions were held.

8.    At the April 17, 2006 omnibus hearing, the parties informed the Court about the ongoing mediation sessions, and the Debtors' exclusive periods were further extended until the omnibus hearing on July 24, 2006, so that mediation could continue.  See Order Extending (i) Debtors' Exclusive Periods in Which to File a Chapter 11 Plan and Solicit Votes Thereon (ii) Term of the Plan Mediator and (iii) Matters with Respect to PI and PD Estimation, Dkt. No. 12405.

9.    At the June 19, 2006 omnibus hearing, the Debtors informed the Court that there no longer appeared "to be any foothold for moving forward with any further [mediation] discussions."  June 19, 2006 Bankr. Hr'g Tr., p. 4, lines 21-22, Dkt. No. 12717.  Despite this impasse, the Asbestos Constituents advised the Court that the mediation was a partial success as it resulted in an agreement between the Asbestos Constituents for the allocation of distributions

---

[3] As the Debtors have said little else on the subject, it is not clear what their proposed amendment to the Plan would do in respect of a cap on property damage claims since the Plan lumps personal injury and property damage claims under the same cap.  We presume that a cap on property damage claims under the Plan would likewise disappear under the proposed amendment.

between personal injury claimants and property damage claimants, as well as an agreement within the PD Committee concerning the allocation of distributions under a plan between traditional property damage claimants and Zonolite Attic Insulation ("ZAI") claimants. Id. at pp. 23-24.

## ARGUMENT

### A.    The Debtors Have a Heavy and Increasing Burden to Establish "Cause" to Extend the Exclusive Periods

10.    The version of section 1121(d) of the Bankruptcy Code operative in these cases provides that the Court may reduce or increase the 120-day or 180-day exclusive periods for a debtor to file and solicit acceptances of its reorganization plan if "cause" exists.  11 U.S.C. § 1121(d).[4]

11.    Requests to extend or reduce a period of exclusivity should "be granted neither routinely nor cavalierly." In re McLean Indus., Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987); In re Curry Corp., 148 B.R. 754, 756 (Bankr. S.D.N.Y. 1992) ("This court will not routinely extend the exclusivity period absent a showing of 'cause' when creditors object to such requests for extensions."); In re Pine Run Trust, Inc., 67 B.R. 432, 434 (Bankr. E.D. Pa. 1986) ("Furthermore, both the language and purpose of this statutory provision require that an extension not be granted routinely.").

---

[4] Although not applicable here, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amends section 1121(d) of the Bankruptcy Code and provides that a debtor's 120-day exclusive period to file a plan and 180-day exclusive period to solicit acceptances may not be extended beyond 18 months and 20 months, respectively.

12.    The burden is on the Debtors to demonstrate the existence of good cause warranting extensions. In re Newark Airport/Hotel LP, 156 B.R. 444, 451 (Bankr. D. N.J.), aff'd, FGH Realty Credit Corp. v. New Airport/Hotel LP, 155 B.R. 93 (D. N.J. 1993). Moreover, the "Debtor[s'] burden gets heavier with each extension it seeks as well as the longer the period of exclusivity lasts; and a creditor's burden to terminate gets lighter with the passage of time." In re Dow Corning Corp., 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997). The Debtors have utterly failed to meet this burden.

### B.    The Debtors Have Failed to Establish that "Cause" Exists to Extend the Exclusive Periods

13.    Courts consider a series of factors in determining whether the "for cause" language in section 1121(d) has been satisfied.[5] As the Asbestos Constituents explained more fully in their initial objections to the Debtors' Ninth Motion, when these factors are considered in light of the length of time that has elapsed in these cases, the Debtors' pending unconfirmable plan, the fact that the limited progress that has occurred in these cases has happened only after clear directives from the Court, and the fact that the termination of exclusivity will not have a detrimental impact on the Debtors' businesses, the scales tip heavily in favor of terminating the Debtors' exclusivity.

---

[5] Courts consider (1) the size and complexity of the case; (2) the necessity of sufficient time to negotiate and prepare adequate information; (3) the existence of good faith progress; (4) whether the debtor is paying its debts as they become due; (5) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (6) whether the debtor has made progress negotiating with creditors; (7) the length of time a case has been pending; (8) whether the debtor is seeking an extension to pressure creditors; and (9) whether or not unresolved contingencies exist. In re Central Jersey Airport Servs., LLC, 282 B.R. 176, 184 (Bankr. D. N.J. 2002); McLean Indus., Inc., 87 B.R. at 834.

**(i)      There Has Been No Good Faith Progress Toward Filing a
Confirmable Plan and the Debtors' Plan is Patently Unconfirmable**

14.      The Debtors cannot demonstrate that they have made good faith progress toward

filing a confirmable plan, let alone a consensual plan. Despite the passage of years during which

the Debtors could have negotiated with the Asbestos Constituents, it was only when the Court set

a firm deadline that the Debtors attempted to reach a consensual plan with other constituencies

and then, when it could not reach such a consensus, filed the Plan which on its face is not

confirmable.[6]      That hardly shows sufficient progress to warrant a further extension of the

exclusive periods.  See In re Am. Fed'n of Television and Radio Artists, 30 B.R. 772, 774

(Bankr. S.D.N.Y. 1983) (cause for extension of a debtor's exclusive periods does not exist where

the debtor has made no showing that it can successfully reorganize if the exclusive periods are

extended).

15.      Moreover, if the Debtors have their way, the Court will not be in a position to

estimate all asbestos personal injury and property damage liabilities until the summer of 2007, at

the earliest, and the only plan then on the table will be the Debtors' patently unconfirmable Plan.

As a result, instead of proceeding directly to confirmation following the results of the

estimations, the parties will first have to expend additional time and resources litigating the

confirmability of the Plan and then preparing and filing further plans.  Respectfully, the Court

should not delay the start of that process for another year, but rather, should permit all parties in

interest to file competing plans now and take such other steps as will facilitate a more expedient

exit from bankruptcy as we suggest below.

---

[6] On January 21, 2005, the Court heard objections to the Debtors' disclosure statement. Although the
Asbestos Constituents argued at that time that the Plan was patently unconfirmable, the Court deferred
consideration of that issue.  See Bankr. Hr'g Tr., Jan. 21, 2005, Dkt. No. 7680.  See also Dkt Nos. 7315
(ACC's objection to disclosure statement), 7340 (FCR's objection to disclosure statement), 7343 (PD
Committee's objection to disclosure statement).

16.     While the Court conceived of the asbestos estimations as a means of determining the feasibility of *any* plan of reorganization, the Debtors' Plan improperly seeks to utilize such estimations of all asbestos claims (including future demands) for distribution purposes by capping the Debtors' aggregate asbestos liability under the Plan at the lesser of the aggregate estimated amount of asbestos liabilities or $1.6 billion.  There is nothing in section 524(g) that requires that the Court estimate or cap the Debtors' asbestos-related liability.  On the contrary, to confirm a plan which features section 524(g) treatment of asbestos liabilities, the Court must find that the actual amounts, numbers and timing of future demands cannot be determined.  11 U.S.C. § 524(g)(2)(B)(ii)(II).  Thus, when the Court estimates future asbestos claims, such an estimation (absent the parties' consent) cannot be final for distribution purposes.

17.     To make matters worse, the Plan also provides that asbestos claims are unimpaired and not entitled to vote.  Simply asserting that asbestos claims will be paid in full, as the Plan does, does not mean that such claims are unimpaired.  The term "impaired" is read in broad terms.  See, e.g., In re Barakat, 99 F.3d 1520, 1527 (9th Cir. 1996) ("Congress intended to define impairment broadly, and generally, any alteration of a creditor's legal rights constitutes impairment.").  "Impairment" under the Bankruptcy Code is a standard that is easily met.  In re Am. Solar King Corp., 90 B.R. 808, 819 (Bankr. W.D. Tex. 1988) (noting even the smallest impairment entitles a creditor to participate in voting).  Thus, the question is whether the provisions of the Plan, if approved, would alter the rights of asbestos claimants in any respect.  Even a cursory examination of the Plan shows that this is not even a close question, and that the answer is "Yes."  The Debtors should not be allowed to use the estimation of asbestos claims to back into their positions that asbestos claims are unimpaired and that their liability to all asbestos claims should be capped while equity holders retain substantial interests.

      (ii)     **Termination of the Exclusive Periods Will Not Cause Material Harm to the Debtors or Their Businesses**

18.     The Debtors well know the issues separating the parties, and are merely using exclusivity, their unconfirmable Plan and the time consuming nature of the estimation process as leverage over the Asbestos Constituents. There is no reason to believe – as we have seen for the past five years – that meaningful plan discussions will ensue so long as no other party has the authority to file a competing plan. In fact, because the Debtors are operating comfortably in bankruptcy, there is no urgency for them to even emerge from Chapter 11. The briefs filed with the Court in July 2005 regarding the business effects of terminating the Debtors' exclusive periods establish that the termination of the exclusive periods will have no material impact on the Debtors' businesses. While operating in Chapter 11 for over five years, the Debtors have continued to maintain a strong market position, strong cash flow and low borrowing needs. See Dkt Nos. 8982 (FCR's business brief and Radecki affidavit), 8984 (ACC's business brief and Mathews affidavit), and 8985 (PD Committee's business brief and Boyer affidavit).

      C.     **Proposal for Moving These Cases Forward As Quickly As Possible**

19.     There does not appear to be any significant dispute that the net distributable value of the Debtors' estate will be approximately $2.9 billion.[7] Thus, if the Court determines that asbestos liabilities alone exceed $2.9 billion, the Debtors are hopelessly insolvent and, under the

---

[7] The calculations set out in Exhibit A attached hereto demonstrate what the Asbestos Constituents refer to as the Debtors' "solvency number" – that is, the value of the Debtors before consideration of asbestos claims. If the "solvency number" is $2.9 billion (see Exhibit A), and if the Court estimates all or any part of the asbestos liabilities as aggregating more than $2.9 billion, then the Debtors are insolvent. The attached analysis does not take into account the ultimate financial impact on the Debtors of the New Jersey environmental suit, federal criminal case and Libby mine clean-up. Thus, the Debtors' insolvency will only increase as additional unliquidated liabilities of the Debtors become fixed in amount. To the best of the Asbestos Constituents' knowledge, the asset values set forth in Exhibit A are undisputed.

absolute priority rule, equity would be eliminated and unsecured creditors would share ratably without any entitlement to post-petition interest.

20.    While the Asbestos Constituents are prepared to proceed with the estimation process well into 2007, the Asbestos Constituents believe there is a better and more efficient way to bring these cases to a conclusion, or at least increase the likelihood of an earlier conclusion. This would require that the case management orders governing the estimation of the Debtors' personal injury and property damage liability be amended so that the Court would first address the estimation of <u>cancer claimants</u> only ("Cancers-Only Estimation").  The Asbestos Constituents believe a Cancers-Only Estimation could be concluded by December 2006 or January 2007, as opposed to an estimation of all asbestos claims, which is not likely to be completed until, at the earliest, mid-2007.  A Cancers-Only Estimation would be a significantly shorter process because there are fewer claims, medical diagnoses are based upon pathology, and there would be no diversion as a result of "suspect" B-readers and other questions raised by the Debtors relating to non-malignant claims.  Furthermore, the lengthy list of experts designated by the Debtors (*e.g.*, experts relating to B-readers and non-malignant diseases) would be significantly reduced, which would shorten not only the discovery process but also the Cancers-Only Estimation hearing itself by significantly reducing the number of testifying experts.[8]  The most significant benefit of a Cancers-Only Estimation is that if the estimate of the value of cancer claims exceeds the Debtors' "solvency number," then the Asbestos Constituents are prepared to agree to a *pro rata* allocation of assets with the commercial creditors based on the results of the Cancers-Only Estimation, without expending additional time and resources valuing non-malignant personal injury claims,

---

[8] The Debtors have designated 19 expert witnesses, many of whom would likely testify on issues relating to non-malignant claims.  <u>See</u> Debtors' Preliminary Expert Witness Disclosure for Asbestos PI Estimation, Dkt. No. 11378.

traditional property damage claims, and ZAI claims. If it turns out that the results of the Cancers-Only Estimation do not exceed the Debtors' "solvency number," no harm has been done (although all the parties will live with those results), and the parties can proceed with the rest of the estimations, which we are currently scheduled to do under the existing case management orders.

## CONCLUSION

The Debtors have had over five years to move these cases to resolution but have failed to do so. It should be clear, after the passage of so much time, that the path the Debtors have chosen for these cases is no longer viable. The Debtors elected to file a plan arm-in-arm with the commercial creditors and the equity interests. While they may have had the right to do so, they should not be permitted to continue to hold the Asbestos Constituents hostage to such a plan. Instead, the Court should terminate the Debtors' exclusivity, and implement the Asbestos Constituents' proposal, which is a workable and efficient process for moving these cases forward. The goal is firstly, to conclude whether the Debtors are insolvent so that we end any dispute over the entitlements of each constituency under a plan and secondly, to have in place a proposed plan which can be pursued should, as we expect, the Court conclude that the Debtors are indeed insolvent. That process is facilitated by permitting the filing of plans by other parties in interest.

For the foregoing reasons, the Asbestos Constituents respectfully request that the Court deny the Debtors' Ninth Motion and implement their proposal for moving these cases forward as quickly as possible by permitting a Cancers-Only Estimation to proceed first and terminating the Debtors' exclusivity.

12

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP          CAMPBELL & LEVINE, LLC

*R. Frankel/DVF*
_____                    _____
Roger Frankel                                   Marla R. Eskin (#2989)
Richard H. Wyron                                Mark T. Hurford (#3299)
3050 K Street, N.W.                             800 King Street, Suite 300
Washington, D.C. 20007                          Wilmington, DE 19801
Telephone:  (202) 339-8400                      Telephone:  (302) 426-1900

John C. Phillips, Jr. (#110)                    Elihu Inselbuch
PHILLIPS, GOLDMAN & SPENCE, P.A.                CAPLIN & DRYSDALE, CHARTERED
1200 North Broom Street                         375 Park Avenue, 35th Floor
Wilmington, DE 19806                            New York, NY 10152-3500
Telephone:  (302) 655-4200                      Telephone:  (212) 319-7125

*Counsel for David T. Austern,*                 Peter Van N. Lockwood
*Future Claimants' Representative*              Nathan D. Finch
                                                Jeffrey A. Liesemer
                                                CAPLIN & DRYSDALE, CHARTERED
                                                One Thomas Circle, N.W.
                                                Washington, D.C. 20005
                                                Telephone:  (202) 862-5000

                                                *Counsel for the Official Committee of*
                                                *Asbestos Personal Injury Claimants*

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP    CAMPBELL & LEVINE, LLC

_____
Roger Frankel
Richard H. Wyron
3050 K Street, N.W.
Washington, D.C. 20007
Telephone: (202) 339-8400

John C. Phillips, Jr. (#110)
PHILLIPS, GOLDMAN & SPENCE, P.A.
1200 North Broom Street
Wilmington, DE 19806
Telephone: (302) 655-4200

*Counsel for David T. Austern,*
*Future Claimants' Representative*

Mark K. Eskin (#2989)
Mark T. Hurford (#3299)
800 King Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 426-1900

Elihu Inselbuch
CAPLIN & DRYSDALE, CHARTERED
375 Park Avenue, 35th Floor
New York, NY 10152-3500
Telephone: (212) 319-7125

Peter Van N. Lockwood
Nathan D. Finch
Jeffrey A. Liesemer
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, N.W.
Washington, D.C. 20005
Telephone: (202) 862-5000

*Counsel for the Official Committee of*
*Asbestos Personal Injury Claimants*

13

BILZIN SUMBERG BAENA
PRICE & AXELROD LLP

_____

Scott L. Baena
Jay M. Sakalo
200 South Biscayne Boulevard
Suite 2500
Miami, FL 33131-2336
Telephone:  (305) 374-7580

Theodore J. Tacconelli (#2678)
Lisa L. Coggins (#4234)
FERRY, JOSEPH & PEARCE, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899
Telephone:  (302) 575-1555

*Counsel for the Official Committee of
Asbestos Property Damage Claimants*

Dated:  July 7, 2006