IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Objection Deadline: July 7, 2006 |
| | ) | Hearing Date: July 24, 2006 at 2:00 p.m. |
| --------------------------------------------- | ) | Re: Docket No. 12679 |

**OBJECTION OF THE STATE OF ARIZONA TO DEBTORS' MOTION FOR A SCHEDULING ORDER REGARDING CERTAIN OF THE DEBTORS' FIFTEENTH OMNIBUS OBJECTIONS TO PD CLAIMS (SUBSTANTIVE), AND JOINDER IN THE OBJECTION OF THE OFFICIAL COMMITTEE OF ASBESTOS PROPERTY DAMAGE CLAIMANTS**

Debtors in their Motion for a Scheduling Order Regarding Certain of the Debtors' Fifteenth Omnibus Objections to PD Claims (Substantive) (hereinafter "the Motion") propose an unworkable global hearing on issues that are closely linked to case-specific and even building-specific evidence.[1] The Court has previously addressed the statute of limitations issue and rejected Debtors' contention that it would be possible to determine a universal date for constructive notice that would be applicable to all claimants. The Court should deny the Motion for similar reasons.

Debtors' proposal is a model of ambiguity and is more noteworthy for what it omits than for what it explains. Debtors suggest that they could identify discreet "common issues" applicable to and determinative of all PD claimants' rights concerning statutes of limitation, product identification ("product ID") and product hazard and that these "common issues" could be addressed in such global trial. However, Debtors do not attempt to address the underlying

---

[1] Claimants adopt and join in the Objection of Official Committee of Asbestos Property Damage Claimants to Debtors' Motion.

basis of purported commonality. Debtors make the general statement that Rule 42 F.R.C.P. allows a court to order joint hearings when actions involve common questions of law or fact. Yet, Debtors do not explain how Rule 42 might apply to Claimants' claims or this bankruptcy proceeding. Mere wishful speculation is not sufficient to make this or any Court embark on a circuitous, expensive and ultimately futile attempt to reinvent the canon of asbestos PD litigation.

Debtors' Motion does not adequately inform the Court with regard to the nature of PD Claims as such claims have evolved in the underlying tort system because if the Debtors had adequately briefed and presented how prior Courts have addressed statute of limitations, product ID and product hazard it would be apparent that their Motion is baseless. Debtors would have this Court ignore the factual and evidentiary complexities which their myriad factual defenses always insert into PD claims. Instead, Debtors want the Court to adopt a shortcut process that emphasizes Debtors abstract defenses over the detailed building-specific evidence that claimants must and can submit to rebut each defense.

1. **Debtors' Proposal Would Impair PD Claimants Ability to Rebut the Debtors' Defenses by Building Specific Evidence That is Closely Related to Such Defenses**

An analysis of commonality must carefully take into consideration the claim specific, product specific and building specific factual basis of each claim. Some courts have attempted to identify common issues in PD cases.[2] Counsel has advocated in underlying cases that certain common issues exist particularly with regard to product defect in connection with the products friability and propensity to release fibers. In these cases, the Court initially identified certain common issues.[3] However, it was recognized that a finding on common issues would not

---

[2] *Central Wesleyan College v. W.R. Grace*, 143 FRD 628 (DSC 1992), affd 6 F3d 177 (4th Cir. 1993).
[3] *Dayton Independent School District, et al. v. U.S. Mineral Products Co., et al.*, ("*Dayton II*"), No. B-87-00507-CA, in the United States District Court for the Eastern District of Texas, Beaumont Division; *Kirbyville Independent School District, et al., Individually, and on Behalf of All*

necessarily determine liability. Additional building specific issues such as individual causation and allocation of fault would still have to be determined in subsequent additional trials for each building at issue. Assuming due process concerns could be satisfied, such a process would be exceedingly complicated and costly as claimants would have to appear before the Court on multiple occasions. At the end of this process it was unclear whether the case would survive challenges on appeal. Indeed the parties recognized the complexities due to the implication of building specific issues. No underlying case in which common issues were identified were tried to jury verdict. All such cases were settled before verdict.

The factually complex nature of PD claims necessitates that Claimants be given an opportunity for a full and fair hearing on each and every element of their claims, and as such, this is not an evidentiary process that can be abbreviated and shortened in the way that Debtors suggest. Unlike an estimation process where issues can be broadly addressed by expert witnesses for purposes of Plan feasibility, a merits trial of a PD claim must allow all of the pertinent issues involving each building claim to be fully developed by competent evidence. The due process contours of relevant evidence regarding Debtors affirmative defenses in connection with the issues of product identification, statutes of limitation and liability have been determined in the underlying cases.[4] Debtors previously maintained that no common issues were predominate in PD cases,

> Thus, the wide variety of buildings involved in this case precludes a finding that class issues predominate here. On the contrary, individual issues abound. All the evidence indicates that each individual building in issue here will require an

---

*Texas Political Entities v. Asbestospray Corporation, W.R. Grace & Co.-Conn., and United States Gypsum Company*, No. 1:94CV412 (E.D. Tex.); *State of Hawaii v. W.R. Grace & Co.-Conn., et al.*, No. 93-4161-10, in the Circuit Court of the First Circuit, State of Hawaii; *The State of Utah, et al. v. W. R. Grace & Co.-Conn, et al.*, No. 940906356, in the Third Judicial District Court, Salt Lake County, State of Utah; *Jefferson Parish School Board, et al. v. W. R. Grace & Co.*, et al., No. 88-3844 (E.D. La.).

[4] See *City of Greenville v. W.R. Grace & Co.*, No. 85-1693-3, in the United States District Court, District of South Carolina, Greenville Division; *City of Greenville v. W.R. Grace & Co.*, 827 F.2d 975 (4th Cir. 1987); *School District of the City of Independence, Missouri, No. 30 v. U.S. Gypsum Company*, 750 S.W.2d 442 (MO. Ct. Appeals, 1988); *Perlmutter v. U.S. Gypsum*, 4 F.3d 864, 868 (10th Cir. 1993); *Tioga Pub. Sch. Dist. No. 15 of Williams Ct., State of N.D. v. U.S. Gypsum Co.*, 984 F.2d 915 (8th Cir. 1993); *Reorganized Church of Jesus Christ of Latter Day Saints v. U.S. Gypsum Co.*, 882 F.2d 335 (8th Cir. 1989); also, see footnote 3 above.

individual inspection to resolve the question raised in this case. Moreover, the credible testimony makes clear that the friability, potential for release and potential health risks raised by the presence of asbestos in buildings must be determined on a building-by-building basis. Under the circumstances, it cannot properly be said that common issues predominate.[5]

*Kirbyville* involved fewer buildings than are at issue in this bankruptcy and the types of buildings were no less diverse than exist here.[6]

Claimant has ten building claims in this bankruptcy proceeding. The buildings include a convention center/coliseum, State Capitol, an executive and legislative office tower, transportation facilities, a museum, a correctional facility, and a state hospital and related facilities. According to Debtors,

> "The different types and uses of various buildings have a significant impact on asbestos related issues......the issues raised by litigation involving one type of building are unlikely to be the same as issues raised in litigation involving another type of building.[7]

With regard to hospital buildings, Debtors represented to the court in *Kirbyville* that,

> "Likewise, hospitals raise asbestos-related issues that are unique. Hospitals contain multiple-voltage outlets, emergency electrical supplies, isolation wards with special ventilation systems, as well as other special and particularized mechanical systems, all of which would affect asbestos-related issues in ways that are different from other types of buildings."[8]

The question must be asked what has changed since Debtors made the above referenced representations to court in *Kirbyville*? The answer is nothing has changed except that Debtors have adopted a different agenda in this bankruptcy proceeding.

## 2.    Product Identification Evidence in PD Cases

---

[5] W.R. Grace's Post-Hearing Brief in Opposition to Class Certification, paragraph 30, page 15; *Kirbyville Independent School District, et al., Individually, and on Behalf of All Texas Political Entities v. Asbestospray Corporation, W.R. Grace & Co.-Conn., and United States Gypsum Company)*, No. 1:94CV412 (E.D. Tex.).

[6] In *Kirbyville* there were approximately 250 buildings of various types.

[7] *Kirbyville Independent School District, et al., Individually, and on Behalf of All Texas Political Entities v. Asbestospray Corporation, W.R. Grace & Co.-Conn., and United States Gypsum Company)*, No. 1:94CV412 (E.D. Tex.); W.R. Grace's Post-Hearing Brief In Opposition To Class Certification, at para 10, pg 6).

[8] Id. at para 12, pg 6.

Product identification is usually accomplished by expert micro-analytical testing of a bulk sample of the asbestos containing surface treatment product ("ACSTM"), the results of which are then utilized by a materials characterization expert who compares them to the manufacturers' original formulas for such products and opines as to whether there is a match.[9] Claimant attached to each Proof of Claim form micro-analytical product identification reports from MAS Laboratories. Claimants attached additional documentary product identification proof such as building specifications, manufacturer, advertisements identifying the building, or similar historical documentary evidence to the extent such documents were still available for certain claims. Indeed the Proof of Claim form specified that to the extent that such corroborating documentation existed, it should be attached to the claim form. No doubt other PD claimants in this bankruptcy filed more than one type, or even multiple types of product identification proof such that the product identification proof varies from building to building and from claim to claim.

When product identification is accomplished by micro-analytical methods and presented by expert testimony, attendant discovery is always extensive and lengthy. The product identification proof for just a few building samples will invariably result in significant expert and fact discovery.[10] Grace products have signal ingredients such that the products can be identified

---

[9] Product identification may also be proven by other documentary or testimonial proof of purchase including but not limited to advertisements, shipment invoices or records, construction specifications, product approvals or similar historical records, installation or application records or other similar evidence of the manufacturer of the ACSTM.

[10] This Court will no doubt be presented with a myriad of purported reasons why Debtors' longtime product identification expert, Dr. Richard Lee, will opine that claimant's micro-analytical product identification report analyses do not represent a Debtors product. In the past, Dr. Lee has repeatedly argued that plaintiffs' analytical results did not support an expert opinion that the bulk sample matched Debtors' formulas because, even though the three primary, or "fingerprint" constituents of Grace's unique vermiculite-based products were present, they were not present in the precise proportions of the formulas in particular years (despite the fact that Grace has never shown him original formula documents) or because trace elements were or were not identified along with the fingerprint constituents. Even if the plaintiff's results fell precisely within the range acknowledged by Dr. Lee as "constituent," he then has utilized an evolving variety of testing methods differing from the classic methods used by plaintiffs' experts to test bulk sample splits and to find variations from the formula information Grace provided him. Each time Dr. Lee adds a new analytical procedure, then discovery and evidence is required for Claimants to prove the true capabilities and effects of variations involved in that procedure and the problems with his analyses.

with reasonable scientific certainty. However, because of the defenses typically asserted by Grace, product identification ultimately is a lengthy, building specific process.[11]

In *State of Hawaii v. W.R. Grace & Co.-Conn., et al.*, No. 93-4161-10, in the Circuit Court of the First Circuit, State of Hawaii ("*State of Hawaii*") there were approximately 198 buildings at issue alleged by plaintiff to contain Grace acoustical, fireproofing or decorative texture ACM. Grace proposed a case management order to require a separate trial on each building on the issue of product identification. Grace did not purport to identify any "common issues." In its proposed case management order, Grace stated,

> This question (the product identification issue) joins hotly-contested, case-specific, and fact-dependent issues which must be resolved before any liability or damages issues can be pursued on a building-specific basis."[12]

Grace listed in its Motion the following product identification "evidentiary matters":

- Plaintiff's constituent analysis expert opinion (Dr. Longo) based on bulk samples allegedly removed from each building.

- Plaintiff's consultants' sampling technique and protocol, along with adherence to such techniques and protocol;

- Plaintiff's proof of homogeneity of the analyzed sample to the area or location of the building alleged;

- Plaintiff's proof of chain of custody covering its analyzed samples;

- Plaintiff's fact witness evidence, if any, indicating whether and when the alleged products were installed in the building;

- Plaintiff's documentary evidence, if any, indicating whether and when the alleged products were installed in the building; then

- Defendants' constituent analysis expert opinion (Dr. Lee) and expert rebuttal testimony (Mr. Stewart);

---

[11] *Dayton Independent School District, et al. v. U.S. Mineral Products Co., et al.*, ("Dayton II"), No. B-87-00507-CA, in the United States District Court for the Eastern District of Texas, Beaumont Division; *State of Hawaii v. W.R. Grace & Co.-Conn., et al.*, No. 93-4161-10, in the Circuit Court of the First Circuit, State of Hawaii; *Kirbyville Independent School District, et al., Individually, and on Behalf of All Texas Political Entities v. Asbestospray Corporation, W.R. Grace & Co.-Conn., and United States Gypsum Company*, No. 1:94CV412 (E.D. Tex.); *The State of Utah, et al. v. W. R. Grace & Co.-Conn, et al.*, No. 940906356, in the Third Judicial District Court, Salt Lake County, State of Utah.

[12] *State of Hawaii v. W.R. Grace & Co.-Conn., et al.*, No. 93-4161-10, in the Circuit Court of the First Circuit, State of Hawaii; Defendant W.R. Grace & Co.-Conn's Motion for Separate Trial on Issue of Product Identification; Memorandum in Support of Motion; Exhibits "A"-"C"; Notice of Hearing of Motion and Certificate of Service, para. III.A., pg. 4.

- Defendants' expert opinion on the proper methodology and protocol for collecting bulk samples;

- Defendants' rebuttal to chain of custody evidence of certain buildings;

- Defendants' fact witness evidence, if any, that Defendants' alleged products were not installed in the building; and

- Defendants' documentary evidence, if any, that Defendants' alleged products were not installed in the building.

According to Grace, the initial trial of product identification on all buildings would eliminate from the "building specific" liability trial that Grace proposed should come later

> "lengthy and complicated examinations of the product identification expert witnesses, a parade of ... fact witnesses, and lengthy challenges to chain of custody and sampling techniques and protocol".[13]

The extensive product identification discovery and numerous discovery dispute hearings in State of Hawaii were typical in counsel's experience in multi-building PD cases involving Grace. In this bankruptcy, Grace has followed the same pattern and has objected to many claims on the basis of inconsistent product identification.[14]

3. **Debtors Maintained to Courts in the Underlying Litigation That Liability Issues Are "Building Specific" And That Any Trial Must Be Fashioned To Address Case Specific Issues**

In *State of Hawaii* Debtors proposed that following its requested initial product identification trial on each building there would be a liability and damage phase. Debtors identified the following "building-specific" liability issues:

- Condition of the Asbestos-Containing Materials

- Homogeneity/Amount of ACM

---

[13] *Ibid*, at pg. 5.

[14] Debtors' Fifteenth Objection (Substantative) to Asbestos Property Damage Claims filed 9/1/05, see Para II.C.3 and 4, "(80) Inconsistent Product Identification. The PD Claims listed on Exhibit C-3(f) provide supporting product identification that is inconsistent with a Grace product; (81) Specifically, Exhibit C-3(f) lists PD Claims that are invalid because they are accompanied by bulk sampling data that is inconsistent with a Grace product; (83) The bulk sample results attached to the PD Claims identified on Exhibit C-3(f) either (i) indicate that the product found at the building was *missing* a key ingredient that would have been there if the product at issue was manufactured by Grace; (ii) contain ingredients that are not found in Grace product; (iii) contain key ingredients but in the wrong proportionality of those used by Grace; or (iv) provide data insufficient to determine consistency with a Grace product. Any of these findings demonstrates that the claimant has failed to establish that that product in the claimant's respective building was manufactured by Grace; (84) Because of the size of this Fifteenth Omnibus Objection, the Debtors' analysis of bulk sampling results attached to the claimants' PD Claims is not attached as an Exhibit. This evidence will be made available to the Court or the claimant upon request.

- Other ACM
- Use of the building
- History of the building
- Operation and Maintenance Programs
- Testing in each building
- Abatements
- Renovations
- Plans for Abatement and Renovations
- Costs specific to each buildings ACM[15]

In each and every underlying PD case that counsel participated in, Debtors adamantly insisted on having its own experts inspect every building. The primary purpose of such inspections was for an expert to be able to opine on the "condition of the material" which is the first "evidentiary matter" Debtors listed in the *State of Hawaii* motion. The underlying reason why Debtors wanted its experts to see the condition of the building was so they could dispute plaintiff's evidence that because of ACSTM product's constituents the material either had contaminated the buildings, or would do so at some dangerously unpredictable interval in the future, and thus had to be abated or removed. Thus, in practice Grace has treated the "product hazard" issue as one that is building specific, necessitating building-specific evidence to be presented and its significance or insignificance weighed at the same time as evidence regarding product formulation, state of the art, and health effects.

Grace, in its Fifteenth Omnibus Objections has raised its typical laundry list of affirmative defenses. Such objections implicate the "myriad" of issues Grace described in *State of Hawaii* and in other similar PD cases. Nowhere in Debtors' Motion do Debtors identify and discuss these issues or explain how the Court would proceed to hear evidence on all of the

---

[15] Id, Grace Motion in *State of Hawaii*.

060707140436.doc                                                8

"building specific" evidence with regard to each claim of every Claimant. Instead, Debtors suggest in their proposal that the Court simply address claims in some unexplained global manner during the estimation phase.

In reality Debtors' plan is totally unworkable because it fails to deal with each Claimant's fundamental due process right to a full evidentiary hearing on each of the numerous building-specific issues implicated by Debtors' numerous objections.

DIES & HILE, L.L.P.

Martin W. Dies, III (admitted pro hac vice)
1601 Rio Grande, Suite 330
Austin, Texas 78701
(512) 476-4394 telephone
(512) 476-4397 fax

*Special Counsel, State of Arizona*

and

LOIZIDES & ASSOCIATES

Christopher D. Loizides (No. 3968)
1225 King Street, Suite 800
Wilmington, DE 19801
(302) 654-0248 telephone
(302) 654-0718 fax

By: _____
     Christopher D. Loizides
*Attorneys for Claimant*