IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | Related to Docket Nos. 11067, |
| | ) | 12246, 12405, and 12765 |
| | ) | Hearing: July 24, 2006] |
| | ) | |

### RESPONSE OF THE TORT VICTIMS' LAW FIRMS IN OPPOSITION TO DEBTOR'S SUPPLEMENTAL BRIEF IN SUPPORT OF A FURTHER EXCLUSIVITY EXTENSION

Baron & Budd, P.C.; Environmental Litigation Group, P.C.; The Law Office of Peter G. Angelos, P.C.; Provost & Umphrey, LLP; Reaud, Morgan & Quinn, Inc.; Silber Pearlman, LLP; and SimmonsCooper, LLC (the "Tort Victims' Law Firms"), by and through their undersigned attorneys, hereby file their Response in Opposition to Debtor's Supplemental Brief in Support of a Further Exclusivity Extension, (the "Debtor's Supplemental Brief") (the "Response in Opposition") and would respectfully show the Court as follows:

With unerring predictability, the Debtors return to this Court in pursuit of yet another extension of exclusivity. Although Debtors appear to have ceased numbering their requests for further extensions, it is worth noting that this is the eleventh time the Debtors have come before this Court and asked that other parties in interest be precluded from proposing a plan of reorganization and seeking a speedy and equitable resolution of this case. Last December, the Tort Victims' Law

Firms filed their Response in Opposition to Debtors' Ninth Motion for an Order Pursuant to 11 U.S.C. 1121(d) Extending Debtors' Exclusive Periods in which to File a Chapter 11 Plan and to Solicit Votes Thereon [Docket No. 12246] (the "Response to the Ninth Motion to Extend Exclusivity") and set forth, in exhaustive manner, the reasons why this Court should refuse to grant further extensions of exclusivity in this case.  The Tort Victims' Law Firms will not repeat the arguments made at that time, but incorporate them herein, in full, by reference.  The passage of an additional seven months has only served to strengthen the force of the arguments made in the Response to the Ninth Motion to Extend Exclusivity and this Court should decline to grant any further extension.

    1.    **The Bankruptcy Code provides a very short exclusivity period, which may be extended only upon a strict showing of cause.  Debtors do not even attempt to meet this high burden.**

This is the eleventh time Debtors have sought an extension of the exclusivity period having many years since exhausted the modest periods provided by the Bankruptcy Code. Section 1141(c) of the Bankruptcy Code grants to a reorganizing debtor the exclusive right to file a plan of reorganization for the first 120 days following the petition date with a further 60 days exclusivity to solicit acceptances of that plan.  In this case, the exclusivity period would have expired before the end of 2001 absent the ten previous extensions granted by this Court.  Prior to the reforms of the Bankruptcy Code enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCA"), bankruptcy courts were empowered to extend the Exclusivity Periods indefinitely upon a showing of cause by the Debtor. *See* 11 U.S.C. § 1121(d).  Requests to extend the Exclusivity Periods should "be

granted neither routinely nor cavalierly." *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987).[1] The purpose of the requirement of cause is plainly to ensure that, in the normal course of events, the Debtor will have 180 days to propose and solicit acceptances for a plan of reorganization, and that extensions are only to be granted in cases of strictly proven justification. The Debtors bear the heavy burden of demonstrating the existence of cause sufficient to warrant an extension. *In re Newark Airport/Hotel LP*, 156 B.R. 444, 451 (Bankr. N.J. 1993), aff'd *FGH Realty Credit Corp. v. New Airport Hotel LP*, 155 B.R. 93 (D. N.J 1993).[2]

Effective in October 2005, the changes to the Bankruptcy Code radically altered the calculation a court must apply to requests for extensions of exclusivity. While retaining the necessity of showing cause, BAPCPA capped the power to extend the exclusive periods to absolute 18 month maximum for the filing of a plan, and a 20 month maximum for soliciting acceptances thereto. No discretion is permitted to extend exclusivity further. Had the BAPCPA reforms had been in place prior to April 2, 2001 (the petition date in this case), exclusivity would have expired over three and a half years ago, even with the maximum possible

---

[1] *See also*, *In re Curry Corp.*, 148 B.R. 754, 756 (Bankr. S.D.N.Y. 1992) ("This court will not routinely extend the exclusivity period absent a showing of 'cause' when creditors object to such requests") and *In re Pine Run Trust, Inc.*, 67 B.R. 432,434 (Bankr. E.D. Pa. 1986) ("both the language and purpose of this statutory provision require that an extension not be granted routinely.").

[2] In determining whether cause exists to extend the Exclusivity Periods, bankruptcy courts generally consider nine factors: the size and complexity of the case; the necessity of sufficient time to negotiate and prepare adequate information; the existence of good faith progress; whether the debtor is paying its debts as they become due; whether the debtor has demonstrated reasonable prospects for filing a viable plan; whether the debtor has made progress negotiating with creditors; the length of time the case has been pending; whether the debtor is seeking an extension to pressure creditors; whether or not unresolved contingencies exist. *In re Central*

extensions.³ Given the Debtors' tactics in proposing a patently unconfirmable plan it seeks to cram down upon the tort constituencies, without these interminable extensions of exclusivity this case may well have seen a confirmed plan by now. Even under a regime where extensions may be granted for cause, the Debtors still cannot bear the heavy burden of proving the existence of a valid reason to grant yet another extension of exclusivity.

Nor, to their credit, do they really attempt to make such a showing. In a 32 page supplemental brief, jam-packed with charts and diagrams, the Debtors barely mention exclusivity until page 24. Instead, 75% of the pleading represents a detailed exposition of the Debtors' vision for how estimation should proceed, and the issue of exclusivity is treated almost as an afterthought. The Tort Victims' Law Firms do not agree with the Debtors' bald contention that no plan may be confirmed without estimation, but even if estimation were to proceed, there would be absolutely no reason to grant the Debtors yet another extension of exclusivity. In fact, it makes much more sense to see what over alternative plans might be proposed, and have the case ready to move to a solicitation footing immediately upon the conclusion of any estimation proceeding.

---

*Jersey Airport Servs.*, LLC, 282 B.R. 176, 184 (Bankr. D. N.J. 2002); *In re Mclean Indus., Inc.*, 87 B.R. at 834.

3   Of course, this aspect of BAPCPA does not apply directly in this case, but this Court's decision upon whether to extend exclusivity for a ninth time should be informed by the clear congressional resolve to sharply curtail extensions of exclusivity and should sharpen the focus of this Court's inquiry. The reforms to the exclusivity regime were undertaken principally to prevent the automatic and routine extensions of exclusivity at the mere request of a debtor in possession sought here. At a minimum, the changes wrought by BAPCPA should heighten Debtors' burden to prove the existence of cause for a further extension.

When the Debtors finally do turn to exclusivity, they offer no meaningful justification for their eleventh extension.  First, they – again – return to the estimation issue and argue that "all roads lead to a merits-based estimation of asbestos-liability."  Debtors' Supplemental Brief at 25.  Perhaps they might (although this is far from established), but there is nothing to stop estimation and the proposal of competing plans running in parallel.  In fact, this would position this case to be able to move straight into a plan solicitation mode at the close of the estimation process.  The Debtors go on to argue that the contentions of the asbestos constituencies that exclusivity has muzzled them and prevented them from sharing their vision for these cases has no credibility, and that the assertion that the market has been misled by the Debtors' Plan is both untrue and irrelevant.  *Id.* at 26-7.  These contentions, even if true, do not serve as a justification for any further extension of exclusivity.  Far from it.  Declining to extend exclusivity would remove any possibility of muzzling or market misleading, and allow all parties to focus on the real business at hand – implementing a consensual and confirmable plan of reorganization.  The only marginally coherent justification posited by the Debtors is ultimately unpersuasive and marred by the use of a cheap shot that should not be dignified by a lengthy response.  Claiming that the filing of competing plans would not serve a useful purpose and could actually delay the resolution of the case, the Debtors go on to suggest that the only beneficiaries would be lawyers, enriching themselves at the expense of the estate.  *Id.* At 25.  This is absurd.  This case is five years old, and – while the Debtor has retained exclusivity through 10 prior extensions – is not one step further towards a confirmed plan of reorganization.  It

begs belief for the Debtors to suggest that declining to extend exclusivity would engender delay. The filing of competing plans could hardly do worse than allowing the Debtor to be the only party empowered to put forward its ideas for reorganization.

> 2. **The last two extensions of exclusivity were premised on the recently stalled attempts of an appointed Plan Mediator to kick-start negotiations for a consensual plan. The continued extension of exclusivity is not only unwarranted in the absence of plan negotiations, it forecloses the possibility of any meaningful attempts at renewed negotiation.**

The last two extensions of exclusivity were granted so that all parties might sit down and negotiate a consensual plan of reorganization, with the aid of plan mediator. These mediation sessions have failed (at least so far). The only substantive progress was made *within* the asbestos creditor constituencies, with a broad consensus reached between the personal injury and property damage groups. Not only were the Debtors unable to reach a consensus with the asbestos creditors constituency, but another creditor constituency, the bondholders, refused to even negotiate in good faith, resolutely sticking to their insistence upon payment in full with interest. The Debtors are partially to blame for this intransigence. The only plan that has been allowed to be proposed in this case assumes a handsome return for equity. Given that, the bondholders, as a result of the absolute priority rule, consider themselves to be entitled to payment in full. The continued extension of exclusivity merely perpetuates the ability of the Debtors to stymie progress towards a consensual resolution of this case, retaining the upper hand and being able to dictate the terms of the debate long after the Bankruptcy Code provides that they

may do so as a matter of right (and long after the revised Bankruptcy Code would allow them to do so for any reason whatsoever). Denying an extension of exclusivity and facilitating the proposal of alternative plans would level the playing field considerably, and might bring the parties to the table in earnest to talk realistically of settlement and compromise.

There will be no incentive for the parties to seek a consensual resolution while the Debtors are permitted to dominate the process with the exclusive right to propose and advocate a plan of reorganization. Eight months ago, this Court permitted a brief extension of exclusivity to allow for discussions to proceed on whether a consensual resolution were possible. Experience has shown that consent is unattainable in an atmosphere were certain parties have no incentive to engage in genuine discussion. This Court should deny a further extension of exclusivity, and allow other parties in interest to set forth their own visions for the resolution of this case. Only then will the conditions exist to incentivize good faith negotiation that might lead swiftly to the Debtors' emergence from bankruptcy, and the creation of a trust to pay the claims of those tort victims injured by the Debtors' tortious acts.

> 3. **The Debtors seek a virtually open-ended extension of exclusivity. Even if this Court decides to grant another extension, it should be of short duration and readily revocable in the event this Court changes its mind.**

In any event, even if this Court decides to grant a further extension of exclusivity, it should not do so on the terms suggested by the Debtor. In the Debtors' Supplemental Brief, they ask this Court to extend exclusivity until the

conclusion of the estimation hearings. Given the Debtors' combative stance and insistence upon vehement litigation every step of the way, allowing no compromise, and given the clear complexities of any such proceeding and the inevitable wait while this Court considers and renders a decision, this conclusion could be years away. If the Debtors must be granted an eleventh extension of exclusivity, it should be for a finite and tightly controlled period of time, and this Court must have the opportunity to refuse futher extensions if the Debtors indulge in the sort of delaying tactics that might arise from a hard-fought estimation case. This Court should take up the issue at each omnibus hearing, and put the Debtors to their proof on a monthly basis. If this Court grants the sort of indefinite extension sought by the Debtors, this case may wel be mired in pointless and costly litigation for years to come.

WHEREFORE, for the foregoing reasons, this Court should deny Debtors' renewed attempt to gain yet another indefinite extension of exclusivity, permit any and all parties in interest to file alternative plans of reorganization, and grant such other and further relief to which the Tort Victims' Law Firms may be entitled including, if an extension to exclusivity is granted, the requirement that the Debtors must return to court each month and prove the cause by which they request and deserve a further extension of exclusivity.

Dated: July 14, 2006

Sander L. Esserman
David J. Parsons
**STUTZMAN, BROMBERG,
ESSERMAN & PLIFKA,
A Professional Corporation**
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 969-4900
Facsimile: (214) 969-4999

**COUNSEL FOR
THE TORT VICTIMS LAW FIRMS**

/s/ Kathleen M. Miller
Kathleen M. Miller (ID no. 2898)
**SMITH, KATZENSTEIN & FURLOW, LLP**
The Corporate Plaza
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, Delaware 19899 (Courier 19801)
Telephone: (302) 652-8400
Facsimile: (302) 654-8405
E-mail: KMM@skfdelaware.com

**LOCAL COUNSEL FOR
ENVIRONMENTAL LITIGATION GROUP,
P.C., & REAUD, MORGAN & QUINN, INC.**

/s/ Daniel K. Hogan
Daniel K. Hogan (ID no. 2814)
**THE HOGAN FIRM**
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone: (302) 656-7540
Facsimile: (302) 656-7599
E-mail: dan@dkhogan.com

**LOCAL COUNSEL FOR BARON & BUDD,
P.C.; THE LAW OFFICES OF PETER G.
ANGELOS, P.C.; PROVOST & UMPHREY,
LLP; SILBER PEARLMAN, LLP; and
SIMMONSCOOPER, LLC**