# Exhibit 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Re: Docket Nos. 11067, 12756 |
| | ) | |
| | ) | Hearing: July 24, 2006 at 2:00 p.m. |

## GRACE'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO EXTEND EXCLUSIVITY

It has been quite some time coming. But no matter, the asbestos claimants now agree with Grace on two fundamental, related propositions:

1.  No *consensual* resolution of these cases is possible without an estimation of Grace's asbestos liability:

    "The recent mediation efforts make it abundantly clear that *the real stumbling block for a consensual resolution* of these cases is the markedly different views of the Debtors' solvency." (Opposition Brief at 2)(emphasis added).

2.  *No plan of any kind* can be *confirmed* without an estimation of Grace's asbestos liability:

    "Accordingly, absent consent, *a plan cannot be confirmed* without a determination of the Debtors' solvency." (Id., at 3)(emphasis added).

And so, we are all agreed that estimation is the central task and highest priority of these cases. It should proceed forthwith.[1]

---

[1] The claimants suggest various figures relating both to non-asbestos liabilities and to the value of the estates, all in service of the proposal that $2.7 billion be regarded as the 'over-under' number for solvency. Grace disagrees with some of the figures and with the over-under number proposed. Whether there is a need to

(Continued...)

Three issues remain. The first relates to the scope of the estimation. The asbestos claimants propose that the estimation be confined in the first instance to claims for malignant disease, the theory being that the issues will be more limited and that the first (and they hope dispositive) estimation can occur sooner. Grace agrees that there is some merit to the idea that the Court *hear* the malignant claims before the non-malignant claims, but believes that the claimants' proposal goes much too far and should be decided later, when the Court actually has a full pre-trial record.

More specifically, the estimation of malignant claims can neither be as limited as promised nor as dispositive as promised. It will not be as limited because it cannot, contrary to representation, be confined to "pathology." In Torts 101 we all learned that there is more to a tort claim than injury. There must also be liability and causation. Here, there are critical scientific issues as to what exposures to Grace products are causative, and, particularly in the case of lung cancer, whether the disease alleged is even asbestos-related. Evidence of exposure will inevitably bring x-rays back into the mix -- apparently something the claimants wish to avoid. Nor can the estimation be as dispositive as promised. Of course, if the estimate of malignant disease shows Grace to be solvent, the claimants surely will seek estimation of the other claims. But even if the result for malignant disease exceeds the value of Grace, absent agreement by the other creditors, the other personal injury claims and the property claims still must be estimated in connection with plan confirmation.

And then claimants also ignore the potential value of estimation in guiding further plan negotiations. While the personal injury and property constituencies apparently have reached a

---

estimate other non-asbestos liabilities or to value assets should be addressed soon, but the issue does not have to be resolved now. What counts now is to continue the process toward the estimation of the asbestos liabilities.

2

K&E 11242206.3

side agreement that will effectively by-pass any decision by the Court regarding the viability of property claims, no other constituency has endorsed this agreement. It is Grace's belief that the valuation of property claims will *facilitate* reaching a consensual plan. Of all the claims, those claims should be estimated first. And of all the claims, they are the easiest to estimate and the furthest along in the estimation process.

Grace therefore proposes that both of the estimation schedules be reset as previously instructed by the Court. That is, allowing for the time that has been consumed in the mediation, the schedules should be shifted back but otherwise remain unchanged. In this fashion, discovery and litigation can proceed on all tracks. As the parties get further into the process, it could well be that the *hearings* on estimation should be *phased*, and it could well be that the malignant personal injury claims should be *heard* before the non-malignant claims. But the sequencing should be informed by both the questionnaire responses and the expert reports. It should not be decided in the abstract before there is a complete record.

The second issue (raised by the property claimants) relates to the schedule for the property damage track. Moving the existing schedule back by three months would mean that the Phase I hearing should take place in December. The Court in the last two weeks provided available dates in January, February, March and April. Hearing nothing from the parties, the Court selected dates in January for Phase I and March for Phase II. The Debtors are agreeable to those dates. It turns out that the property claimants have an issue with any date before March.[2]

---

[2] Grace does not argue here that it is too late for the PD claimants to be heard on the matter. Enough said that communications about the dates between the parties were not completely successful, through no one's fault.

3

In particular, Mr. Dies is the only lawyer approved by the Court to act as special counsel, and Grace is told (and accepts) that Mr. Dies personally cannot be available for Phase I proceedings in January. But Grace believes it essential that this case move forward, particularly given the hiatus taken for mediation. As a consequence, Grace is prepared to agree to substitution of another lawyer for Mr. Dies.

Finally, we come to the issue of exclusivity. Here, the claimants' brief is baldly self-contradictory. They say - -

> No consensual plan is possible without resolving the scope of liabilities. (Id., at 3).

But they then assert - -

> Termination of exclusivity will *"jump start" negotiations*. (Id., at 2).

And that - -

> There has been *"no good faith"* progress toward a confirmable plan. (Id., at 8).

Grace of course disputes any notion that it has not acted in good faith -- it is *Grace* that has always been prepared to continue with the nearly-successful plan discussions of 18 months ago, and it is the *asbestos claimants* who have abrogated that position and entered into a side agreement that will undercut negotiation of a fully consensual plan. But all of this is somewhat academic now that the claimants themselves have conceded the very core of Grace's position regarding the path for this case, i.e., that the key issue is the value of the claims. That issue, not bad faith, is the problem. Indeed, the value problem is the *heart* of Grace's *good faith* position. For the same reason, termination of exclusivity will not "jump start" anything consensual because it will do nothing to resolve the value issue.

4

It follows also and inevitably that the only effect of lifting exclusivity will be to open up yet another litigation track, a track for abstract litigation over competing plans. This the Court already declined to do in January, 2005, deciding (after extensive argument over the principles of impairment) to defer review of the plan now on file until estimation had been completed.

> THE COURT: ...I'd like to try to figure out what pieces we need to do, and in what order, to get a plan proposed that, hopefully, will be a consensual plan. *I'm not minimizing what the debtor has now, but it's obviously not a consensual plan. So, if an estimation is going to do it, let's tee up an estimation hearing.* (Tr. of Hr'g at 110:17; 111: 2-7) (Jan. 21, 2005)(emphasis added).
>
> THE COURT: ...creditors have the right to determine whether the distributions are fair and reasonable with — coming either from the — that the debtor would put into the trust, on the one hand, versus what the debtor would be paying to the other creditors whose claims don't go into the trust, on the other. But, *I think the first piece of that is the estimation process.* (*Id.* at 155: 16-22) (emphasis added).

The world has not changed since then, excepting only that the claimants now have come to recognize that estimation is in fact a pre-requisite for progress in this case.

Dated: July 14, 2006

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB LLP

*/s/ Laura Davis Jones*

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

5

K&E 11242206.3