# EXHIBIT E

# W. R. Grace
# Asbestos Personal Injury
# Questionnaire



10315607002913

**REDACTED**

RE:
Climaco Climaco Lefkowitz Garofoli Co . LPA
9th Floor – The Halle Building
1228 Euclid Avenue
Cleveland OH 44115

000571002913

# W. R. Grace
# Asbestos Personal Injury
# Questionnaire

**[THIS PAGE INTENTIONALLY LEFT BLANK.]**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

# W. R. Grace
# Asbestos Personal Injury
# Questionnaire

YOU HAVE RECEIVED THIS QUESTIONNAIRE BECAUSE GRACE BELIEVES THAT YOU HAD SUED ONE
OR MORE OF THE DEBTORS LISTED IN APPENDIX A ATTACHED TO THIS QUESTIONNAIRE BEFORE
GRACE FILED FOR BANKRUPTCY ON APRIL 2, 2001 FOR AN ASBESTOS-RELATED PERSONAL INJURY
OR WRONGFUL DEATH CLAIM, AND THAT CLAIM WAS NOT FULLY RESOLVED.

IF YOU HAVE SUCH A CLAIM, YOU MUST COMPLETE AND SUBMIT THIS QUESTIONNAIRE BY
JANUARY 12, 2006 TO RUST CONSULTING, INC., THE CLAIMS PROCESSING AGENT, AT ONE OF THE
FOLLOWING ADDRESSES:

| IF SENT BY U.S. MAIL | IF SENT BY FEDERAL EXPRESS, UNITED PARCEL SERVICE, OR A SIMILAR HAND DELIVERY SERVICE |
|---|---|
| RUST CONSULTING, INC. | RUST CONSULTING, INC. |
| CLAIMS PROCESSING AGENT | CLAIMS PROCESSING AGENT |
| RE: W.R. GRACE & CO. BANKRUPTCY | RE: W.R. GRACE & CO. BANKRUPTCY |
| P.O. BOX 1620 | 201 S. LYNDALE AVE. |
| FARIBAULT, MN 55021 | FARIBAULT, MN 55021 |

A QUESTIONNAIRE (AND ANY AMENDMENTS OR ADDITIONAL DOCUMENTS IN SUPPORT OF THE
QUESTIONNAIRE) WILL NOT BE CONSIDERED UNLESS RECEIVED BY RUST CONSULTING, INC. BY
JANUARY 12, 2006.

THIS QUESTIONNAIRE IS AN OFFICIAL DOCUMENT APPROVED BY THE COURT IN CONNECTION
WITH ESTIMATING GRACE'S ASBESTOS-RELATED PERSONAL INJURY AND WRONGFUL DEATH
CLAIMS AS A WHOLE. THE QUESTIONNAIRE IS BEING USED BY W. R. GRACE AS A MEANS TO SEEK
INFORMATION ABOUT YOUR ASBESTOS CLAIM. BY TIMELY RETURNING THE QUESTIONNAIRE AS
COMPLETELY AND ACCURATELY AS POSSIBLE, GRACE, THE OFFICIAL COMMITTEES, AND THE
FUTURE CLAIMANTS REPRESENTATIVE WILL SEEK TO PRIORITIZE THE PROCESSING OF YOUR
CLAIM UNDER ANY TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF
REORGANIZATION.

THE COURT HAS ORDERED THAT, AS PART OF THE DISCOVERY PROCESS, ALL HOLDERS OF PRE-
PETITION ASBESTOS PERSONAL INJURY CLAIMS MUST COMPLETE AND RETURN THIS
QUESTIONNAIRE. THUS, FAILURE TO TIMELY RETURN THE QUESTIONNAIRE AS COMPLETELY AND
ACCURATELY AS POSSIBLE MAY RESULT IN SANCTIONS AND/OR OTHER RELIEF AVAILABLE UNDER
APPLICABLE FEDERAL RULES.

BECAUSE YOUR CLAIM WILL BE EVALUATED IN ACCORDANCE WITH THE TRUST DISTRIBUTION
PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION, COMPLETION OF THIS
QUESTIONNAIRE DOES NOT MEAN THAT YOUR CLAIM WILL EITHER BE ALLOWED OR PAID. TO THE
EXTENT YOU ATTACH TO THIS QUESTIONNAIRE DOCUMENTS ALSO NEEDED BY THE TRUST TO
PROCESS YOUR CLAIM, SUCH DOCUMENTS WILL BE PROVIDED TO THE TRUST AND YOU WILL NOT
NEED TO RESUBMIT THEM.

## INSTRUCTIONS

### A. GENERAL

1. This Questionnaire refers to any lawsuit that you filed before April 2, 2001 for an "asbestos-related personal injury or wrongful death claim." This term is intended to cover any lawsuit alleging any claim for personal injuries or damages that relates to: (a) exposure to any products or materials containing asbestos that were manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors (or any of their respective past or present affiliates, or any of the predecessors of any of the Debtors or any of their respective past or present affiliates), or (b) exposure to vermiculite mined, milled or processed by the Debtors (or any of their respective past or present affiliates, any of the predecessors of any of the Debtors or any of their predecessors' respective past or present affiliates). It includes claims in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity, or any other theory of law or equity, or admiralty for, relating to, or arising out of, resulting from, or attributable to, directly or indirectly, death, bodily injury, sickness, disease, or other personal injuries or other damages caused, or allegedly caused, directly or indirectly, and arising or allegedly arising, directly or indirectly, from acts or omissions of one or more of the Debtors. It includes all such claims, debts, obligations or liabilities for compensatory damages such as loss of consortium, personal or bodily injury (whether physical, emotional or otherwise), wrongful death, survivorship, proximate, consequential, general, special, and punitive damages.

2. Your Questionnaire will be deemed filed only when it has been received by Rust Consulting Inc., the Claims Processing Agent, via U.S. Mail, Federal Express, United Parcel Service or a similar hand delivery service. A Questionnaire that is submitted by facsimile, telecopy or other electronic transmission will not be accepted and will not be deemed filed.

   Do not send any Questionnaire to the Debtors, counsel for the Debtors, the Future Claimants Representative, the Official Committee of Unsecured Creditors, the Official Committee of Asbestos Personal Injury Claimants, the Official Committee of Asbestos Property Damage Claimants, the Official Committee of Equity Security Holders, or such Committees' counsel. Questionnaires that are filed with or sent to anyone other than Rust Consulting, Inc. will be deemed not to have been submitted, and such Questionnaires will not be considered.

3. Your completed Questionnaire must (i) be written in English, and (ii) attach relevant supporting materials as instructed further below.

4. All holders of claims described on page i (and as described in further detail in Instruction A (1) above) are required to file this Questionnaire by Jan. 12, 2006. Your Questionnaire will be used in connection with the estimation hearing to be conducted by the Court pursuant to the Estimation Procedures Order (a copy of which is attached as Appendix B).

5. Any subsequent amendment to the Questionnaire will not be considered for any purpose unless received by Jan. 12, 2006.

### B. PART I -- Identity of Injured Person and Legal Counsel

Respond to all applicable questions. If you are represented by a lawyer, then in Part I (b), please provide your lawyer's name and the name, telephone number and address of his/her firm. If you are represented by a lawyer, he/she must assist in the completion of this Questionnaire. Also, if you would prefer that the Debtors send any additional materials only to your lawyer, instead of sending such materials to you, then check the box indicating this in Part I (b).

All references to "you" or the like in Parts I through X shall mean the injured person. If the injured person is deceased, then the executor of the person's will (or similar estate representative) must complete this Questionnaire.

### C. PART II -- Asbestos-Related Condition(s)

Please indicate all asbestos-related medical conditions for which you have been diagnosed. To complete questions related to injuries, medical diagnoses, and/or conditions, please use the following categories of customarily diagnosed conditions:

- Mesothelioma
- Asbestos-Related Lung Cancer
- Other Cancer (colon, laryngeal, esophageal, pharyngeal, or stomach)
- Clinically Severe Asbestosis
- Asbestosis
- Other Asbestos Disease

If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

**Supporting Documents for Diagnosis:** This Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that support or conflict with your diagnosis.

**X-rays and B-reads:** Please attach all x-ray readings and reports. You may, but are not required to, attach chest x-rays. The court, however, has ruled that Grace may seek access to chest x-rays upon request.

**Pulmonary Function Tests:** Please attach all pulmonary function test results, including the actual raw data and all spirometric tracings, on which the results are based.

ii

**D. PART III – Direct Exposure to Grace Asbestos-Containing Products**
In Part III, please provide the requested information for the job and site at which you were exposed to Grace asbestos-containing products. Indicate the dates of exposure to each Grace asbestos-containing product. If your exposure was a result of your employment, use the list of occupation and industry codes below to indicate your occupation and the industry in which you worked at each site. If you allege exposure to Grace asbestos-containing products at multiple sites, the Court has ordered that you must complete a separate Part III for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

Attach copies of any and all documents establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the disease.

## Occupation Codes

| | |
|---|---|
| 01. Air conditioning and heating installer/maintenance | 31. Iron worker |
| 02. Asbestos miner | 32. Joiner |
| 03. Asbestos plant worker/asbestos manufacturing worker | 33. Laborer |
| 04. Asbestos removal/abatement | 34. Longshoreman |
| 05. Asbestos sprayer/spray gun mechanic | 35. Machinist/machine operator |
| 06. Assembly line/factory/plant worker | 36. Millwright/mill worker |
| 07. Auto mechanic/bodywork/brake repairman | 37. Mixer/bagger |
| 08. Boilermaker | 38. Non-asbestos miner |
| 09. Boiler repairman | 39. Non-occupational/residential |
| 10. Boiler worker/cleaner/inspector/engineer/installer | 40. Painter |
| 11. Building maintenance/building superintendent | 41. Pipefitter |
| 12. Brake manufacturer/installer | 42. Plasterer |
| 13. Brick mason/layer/hod carrier | 43. Plumber – install/repair |
| 14. Burner operator | 44. Power plant operator |
| 15. Carpenter/woodworker/cabinetmaker | 45. Professional (*e.g.*, accountant, architect, physician) |
| 16. Chipper | 46. Railroad worker/carman/brakeman/machinist/conductor |
| 17. Clerical/office worker | 47. Refinery worker |
| 18. Construction - general | 48. Remover/installer of gaskets |
| 19. Custodian/janitor in office/residential building | 49. Rigger/stevedore/seaman |
| 20. Custodian/janitor in plant/manufacturing facility | 50. Rubber/tire worker |
| 21. Electrician/inspector/worker | 51. Sandblaster |
| 22. Engineer | 52. Sheet metal worker/sheet metal mechanic |
| 23. Firefighter | 53. Shipfitter/shipwright/ship builder |
| 24. Fireman | 54. Shipyard worker (md. repair, maintenance) |
| 25. Flooring installer/tile installer/tile mechanic | 55. Steamfitter |
| 26. Foundry worker | 56. Steelworker |
| 27. Furnace worker/repairman/installer | 57. Warehouse worker |
| 28. Glass worker | 58. Welder/blacksmith |
| 29. Heavy equipment operator (includes truck, forklift, & crane) | 59. Other |
| 30. Insulator | |

## Industry Codes

| | |
|---|---|
| 001. Asbestos abatement/removal | 109. Petrochemical |
| 002. Aerospace/aviation | 110. Railroad |
| 100. Asbestos mining | 111. Shipyard-construction/repair |
| 101. Automotive | 112. Textile |
| 102. Chemical | 113. Tire/rubber |
| 103. Construction trades | 114. U.S. Navy |
| 104. Iron/steel | 115. Utilities |
| 105. Longshore | 116. Grace asbestos manufacture or milling |
| 106. Maritime | 117. Non-Grace asbestos manufacture or milling |
| 107. Military (other than U.S. Navy) | 118. Other |
| 108. Non-asbestos products manufacturing | |

**E.  PART IV – Indirect Exposure to Grace Asbestos-Containing Products**

In Part IV, please provide the information requested for any injury alleged to have been caused by exposure to Grace asbestos-containing products through contact/proximity with another injured person.  If you allege exposure through contact/proximity with multiple injured persons, please complete a separate Part IV for each injured person.  For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.

**F.  PART V – Exposure to Non-Grace Asbestos-Containing Products**

In Part V, please provide the requested information for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products.  If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate Part V for each party.  If exposure was in connection with your employment, use the list of occupation and industry codes in Part III to indicate your occupation and the industry in which you worked.  For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

**G.  PART VI – Employment History**

In Part VI, please provide the information requested for each industrial job you have held, other than jobs already listed in Parts III or V.  Use the list of occupation and industry codes in the instructions to Part III to indicate your occupation and the industry in which you worked for each job.  Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.

**H.  PART VII – Litigation and Claims Regarding Asbestos and/or Silica**

In Part VII, please describe any lawsuits and/or claims that were filed by you or on your behalf regarding asbestos or silica.

**I.  PART VIII – Claims by Dependents or Related Persons**

Part VIII is to be completed only by dependents or related persons (such as spouse or child) of an injured person who sued the Debtors before April 2, 2001 for an asbestos-related personal injury or wrongful death claim against Grace not involving physical injury to him-/herself on account of his/her own exposure.  One example of such a claim would be a claim for loss of consortium.  If you are asserting such a claim, complete the entire Questionnaire, providing all information and documentation regarding the injured person.

**J.  PART IX – Supporting Documentation**

In Part IX, please mark the boxes next to each type of document that you are submitting with this Questionnaire.  As indicated in the instructions to Parts II and III, this Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that (a) support or conflict with your diagnosis and/or (b) establish exposure to Grace asbestos-containing products as having a substantial causal role in the development of the medical diagnoses, and/or conditions claimed.  Original documents provided to Grace will be returned within a reasonable time after its professionals and experts have reviewed the documents.

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation.  Please indicate the documents for which you are seeking reimbursement and attach a receipt for such cost.

**K.  PART X – Attestation that Information is True, Accurate and Complete**

By signing Part X, you, the injured person, are attesting and swearing, under penalty of perjury, that, to the best of your knowledge, all of the information in this Questionnaire is true, accurate and complete.  If the injured person is deceased, then the executor of the person's will (or similar estate representative) must complete and sign Part X on behalf of the injured person.

The legal representative of the injured person must complete and sign Part X where indicated.

## PART I:  IDENTITY OF INJURED PERSON AND LEGAL COUNSEL

**a.    GENERAL INFORMATION**

1.  Name of Claimant: _____                2. Gender: ☐ Male ☐ Female
         First          MI         Last

3.  Race (for purposes of evaluating Pulmonary Function Test results): ................................... ☐ White/Caucasian

                                        **REDACTED**        ☐ African American

                                                                ☐ Other

4.  Last Four Digits of Social Security Number: _____        5.  Birth Date: _____

6.  Mailing Address: _____

7.  Daytime Telephone Number: ....................................................................................................................

**b.    LAWYER'S NAME AND FIRM**

1.  Name of Lawyer: Thomas M. Wilson, Esq

2.  Name of Law Firm With Which Lawyer is Affiliated: Kelley & Ferraro LLP

3.  Mailing Address of Firm: 1300 E. 9th Street, Suite 1901  Cleveland, OH  44114
                         Address            City          State/Province       Zip/Postal Code

4.  Law Firm's Telephone Number or Lawyer's Direct Line: ...............................................( 216 ) 575 - 0777

    X   Check this box if you would like the Debtors to send subsequent material relating to your claim to your lawyer, in
    lieu of sending such materials to you.

**c.    CAUSE OF DEATH (IF APPLICABLE)**

1.  Is the injured person living or deceased? ...............................................................X Living   ☐ Deceased
    If deceased, date of death: ................................................................ __ __ / __ __ / __ __ __ __

2.  If the injured person is deceased, then attach a copy of the death certification to this Questionnaire and complete
    the following:
        Primary Cause of Death (as stated in the Death Certificate):   If deceased, see attached death certificate

        Contributing Cause of Death (as stated in the Death Certificate): _____

**PART II  ASBESTOS-RELATED CONDITIONS**

Mark the box next to the conditions with which you have been diagnosed and provide all information required in the
instructions to this Questionnaire.  If you have been diagnosed with multiple conditions and/or if you received diagnoses and
diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis
and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis.  For your
convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

1.  Please check the box next to the condition being alleged:
    ☐ Asbestos-Related Lung Cancer        ☐ Mesothelioma
    X Asbestosis                     ☐ Other Cancer (cancer not related to lung cancer or mesothelioma)
    ☐ Other Asbestos Disease         ☐ Clinically Severe Asbestosis

    a.  **Mesothelioma:**  If alleging Mesothelioma, were you diagnosed with malignant mesothelioma based on the
        following (check all that apply):
        ☐ diagnosis from a pathologist certified by the American Board of Pathology
        ☐ diagnosis from a second pathologist certified by the American Board of Pathology
        ☐ diagnosis and documentation supporting exposure to Grace asbestos-containing products having a substantial
            causal role in the development of the condition
        X other (please specify): Objection:  See attached medical information

**PART II  ASBESTOS-RELATED CONDITIONS (Continued)**

1

b. **Asbestos-Related Lung Cancer:** If alleging Asbestos-Related Lung Cancer, were you diagnosed with primary lung cancer based on the following (check all that apply):

☐ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ diffuse pleural thickening as defined in the International Labour Organization's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the lung cancer

**X** other (please specify):  <u>Objection:  See attached medical information</u>

c. **Other Cancer:**

(i) If alleging Other Cancer, please mark the box(es) next to the applicable primary cancer(s) being alleged:

☐ colon   ☐ pharyngeal   ☐ esophageal   ☐ laryngeal   ☐ stomach cancer

☐ other, please specify:  _____

(ii) Were you diagnosed with the above-indicated cancer based on the following (check all that apply):

☐ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the cancer

**X** other (please specify): <u>Objection:  See attached medical information</u>

2

PART II:  ASBESTOS-RELATED CONDITION(S) (Continued)

d.  **Clinically Severe Asbestosis:**  If alleging Clinically Severe Asbestosis, was your diagnosis based on the following (check all that apply):

☐   diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐   a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐   a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐   asbestosis determined by pathology

☐   a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies*, demonstrating total lung capacity less than 65% predicted

☐   a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies*, demonstrating forced vital capacity less than 65% predicted and a FEV1/FVC ratio greater than or equal to 65% predicted

☐   a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

**X**   other (please specify):  <u>Objection:  See attached medical information</u>

e.  **Asbestosis:**  If alleging Asbestosis, was your diagnosis based on the following (check all that apply):

☐   diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐   a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐   a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐   asbestosis determined by pathology

☐   a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies*, demonstrating a FEV1/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐   a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

**X**   other (please specify):  <u>Objection:  See attached medical information</u>

3

PART II: ASBESTOS-RELATED CONDITION(S) (Continued)

f.   **Other Asbestos Disease:** If alleging any asbestos-related injuries, medical diagnoses, and/or conditions other than those above, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ diagnosis determined by pathology

☐ a chest x-ray reading conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a second B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading other than those described above

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies*, demonstrating a FEV1/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐ a pulmonary function test other than that discussed above

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the condition

☐ a CT Scan or similar testing

☐ a diagnosis other than those above

X   other (please specify):  Objection: See attached medical information

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

4

## PART II:  ASBESTOS-RELATED CONDITION(S) (Continued)

2. **Information Regarding Diagnosis**

   Date of Diagnosis: ....................................................................................................................................01/29/2001

   Diagnosing Doctor's Name:  See attached medical information

   Diagnosing Doctor's Specialty: See attached medical information

   Diagnosing Doctor's Mailing Address:  See attached medical information
                                                        Address

   ───────────────────────────────────────────────────────────────────────

   City                                      State/Province                    Zip/Postal Code

   Diagnosing Doctor's Daytime Telephone Number: See attached medical information............................ __ __ __

   With respect to your relationship to the diagnosing doctor, check all applicable boxes:

   Was the diagnosing doctor your personal physician? Objection: contains terms not defined nor understsood ☐ Yes  ☐ No

   Was the diagnosing doctor paid for the diagnostic services that he/she performed? Objection:  relevance ☐ Yes  ☐ No

   *If yes, please indicate who paid for the services performed*:  Objection:  relevance

   Did you retain counsel in order to receive any of the services performed by the

   diagnosing doctor? Objection:  relevance......................................................................................☐ Yes  ☐ No

   Was the diagnosing doctor referred to you by counsel? Objection:  relevance .........................................☐ Yes  ☐ No

   Are you aware of any relationship between the diagnosing doctor and your

   legal counsel?  Objection:  relevance ..........................................................................................☐ Yes  ☐ No

   *If yes, please explain:* _____

   _____

   ───────────────────────────────────────────────────────────────────────

   Was the diagnosing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine
   at the time of the diagnosis?  See attached medical information .....................................................☐ Yes  ☐ No

   Was the diagnosing doctor certified as a pathologist by the American Board of Pathology at the time of the
   diagnosis?  See attached medical information............................................................................☐ Yes  ☐ No

   Was the diagnosing doctor provided with your complete occupational, medical and smoking history prior to
   diagnosis? See attached medical information ............................................................................☐ Yes  ☐ No

   Did the diagnosing doctor perform a physical examination? See attached medical information..........☐ Yes  ☐ No

   Do you currently use tobacco products? Objection:  relevance ............................................................☐ Yes  ☐ No

   Have you ever used tobacco products? ...........................................................................................☐ Yes  ☐ No

   If answer to either question is yes, please indicate whether you have regularly used any of the following tobacco
   products and the dates and frequency with which such products were used: Objection: relevance

   ☐ **Cigarettes**   Packs Per Day (half pack = .5) _____   Start Year __ __ __ __   End Year __ __ __ __

   ☐ **Cigars**   Cigars Per Day _____   Start Year __ __ __ __   End Year __ __ __ __

   ☐ If Other Tobacco Products, please specify (e.g., chewing tobacco): _____

   Amount Per Day _____   Start Year __ __ __ __   End Year __ __ __ __

   Have you ever been diagnosed with chronic obstructive pulmonary disease ("COPD")? See attached medical
   Information. ...............................................................................................................................☐ Yes  ☐ No

   *If yes, please attach all documents regarding such diagnosis and explain the nature of the diagnosis:*

3. **Information Regarding Chest X-Ray**

   Please check the box next to the applicable location where your chest x-ray was taken (check one):

   ☐ Mobile laboratory  ☐ Job site  ☐ Union Hall  ☐ Doctor office  ☐ Hospital  X Other: Objection: relevance

   Address where chest x-ray taken:  Objection: relevance
                                                      Address

   City                                      State/Province                    Zip/Postal Code

## PART II: ASBESTOS-RELATED CONDITION(S) (Continued)

4. **Information Regarding Chest X-Ray Reading** <u>See attached medical information</u>

Date of Reading: __ __ / __ __ / __ __ __ __        ILO score: _____

Name of Reader: _____

Reader's Daytime Telephone Number:.................................................( __ __ __ ) __ __ __ - __ __ __ __

Reader's Mailing Address: _____
<div style="padding-left:2em">Address</div>

_____

City                             State/Province                 Zip/Postal Code

**With respect to your relationship to the reader, check all applicable boxes:**

Was the reader paid for the services that he/she performed <u>Objection: relevance</u>......................................☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* <u>Objection: relevance</u>

Did you retain counsel in order to receive any of the services performed

by the reader? <u>Objection: relevance</u>.........................................................................................................☐ Yes ☐ No

Was the reader referred to you by counsel? <u>Objection: relevance</u> .................................................☐ Yes ☐ No

Are you aware of any relationship between the reader and your legal counsel? <u>Objection: relevance</u>........☐ Yes ☐ No

*If yes, please explain:* _____

**Was the reader certified by the National Institute for Occupational Safety and Health at the time of the reading?**

.........................................................................................................................X Yes ☐ No

*If the reader is not a certified B-reader, please describe the reader's occupation, specialty, and the method through which the reading was made:* _____

5. **Information Regarding Pulmonary Function Test:** <u>See attached medical information</u> Date of Test: __ / __ / __

List your height in feet and inches when test given: <u>See attached medical information</u> .._____ ft _____ inches

List your weight in pounds when test given: <u>See attached medical information</u> ...................................._____ lbs

Total Lung Capacity (TLC): <u>See attached medical information</u>......................................._____% of predicted

Forced Vital Capacity (FVC): <u>See attached medical information</u> ............................................._____% of predicted

$FEV_1/FVC$ Ratio: <u>See attached medical information</u> ................................................................._____% of predicted

Name of Doctor Performing Test (if applicable): <u>See attached medical information</u>

Doctor's Specialty: <u>See attached medical information</u>

Name of Clinician Performing Test (if applicable): <u>See attached medical information</u>

Testing Doctor or Clinician's Mailing Address: <u>See attached medical information</u> _____
<div style="padding-left:2em">Address</div>

_____

City                             State/Province                 Zip/Postal Code

Testing Doctor or Clinician's Daytime Telephone Number: <u>See attached medical information</u> __ __ __ - __ __ __ __

Name of Doctor Interpreting Test: <u>See attached medical information</u>

Doctor's Specialty: _____ <u>See attached medical information</u>

Interpreting Doctor's Mailing Address: <u>See attached medical information</u> _____
<div style="padding-left:2em">Address</div>

_____

City                             State/Province                 Zip/Postal Code

Interpreting Doctor's Daytime Telephone Number: <u>See attached medical information</u> __ __ __ - __ __ __ __

## PART II:  ASBESTOS-RELATED CONDITION(S) (Continued)

**With respect to your relationship to the doctor or clinician who performed the pulmonary function test check all applicable boxes:**

If the test was performed by a doctor, was the doctor your personal physician? Objection: relevance ....... ☐ Yes ☐ No

Was the testing doctor and/or clinician paid for the services that he/she performed? Objection: relevance ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* .............. ___ Objection: relevance _____

Did you retain counsel in order to receive any of the services performed by the testing doctor

or clinician? Objection: relevance ................................................................................ ☐ Yes ☐ No

Was the testing doctor or clinician referred to you by counsel? Objection: relevance ................. ☐ Yes ☐ No

Are you aware of any relationship between either the doctor or clinician and your legal

counsel? Objection: relevance ........................................................................................ ☐ Yes ☐ No

*If yes, please explain:* _____

**Was the testing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the pulmonary function test?** See attached medical information ................................ ☐ Yes ☐ No

**With respect to your relationship to the doctor interpreting the results of the pulmonary function test check all applicable boxes:**

Was the doctor your personal physician? Objection: relevance ............................................. ☐ Yes ☐ No

Was the doctor paid for the services that he/she performed? Objection: relevance ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed*: ___ Objection: relevance _____

Did you retain counsel in order to receive any of the services performed by the

doctor? Objection: relevance .......................................................................................... ☐ Yes ☐ No

Was the doctor referred to you by counsel? Objection: relevance ....................................... ☐ Yes ☐ No

Are you aware of any relationship between the doctor and your legal counsel? Objection: relevance ....... ☐ Yes ☐ No

*If yes, please explain* _____

**Was the doctor interpreting the pulmonary function test results certified as a pulmonologist or internist by the American Board of Internal Medicine at the time the test results were reviewed?** ............................ ☐ Yes ☐ No
See attached medical information

6. **Information Regarding Pathology Reports:**

Date of Pathology Report: See attached medical information ....................................... __ / __ / __ __ __ __

**Findings:**    See attached medical information

**Name of Doctor Issuing Report:** See attached medical information

**Doctor's Specialty:** See attached medical information

**Doctor's Mailing Address:** See attached medical information
                                Address

| City | State/Province | Zip/Postal Code |
|---|---|---|

**Doctor's Daytime Telephone Number:** See attached medical information ...... (__ __ __) __ __ __ - __ __ __ __

**With respect to your relationship to the doctor issuing the pathology report, check all applicable boxes:**

Was the doctor your personal physician? Objection: relevance ............................................. ☐ Yes ☐ No

Was the doctor paid for the services that he/she performed? Objection: relevance .................... ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed*: _____

Did you retain counsel in order to receive any of the services performed by the

doctor? Objection: relevance ........................................................................................... ☐ Yes ☐ No

Was the doctor referred to you by counsel? Objection: relevance ...................................... ☐ Yes ☐ No

Are you aware of any relationship between the doctor and your legal counsel? Objection: relevance ....... ☐ Yes ☐ No

{D0050647:1 }

*If yes, please explain:*.................._____

**Was the doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis?**

See attached medical information ................................................................................................□ Yes  □ No

## PART II: ASBESTOS-RELATED CONDITION(S) (Continued)

7. **With respect to the condition alleged, have you received medical treatment from a doctor for the condition?**
See attached medical information .................................................................................................. ☐ Yes ☐ No
*If yes, please complete the following:*

**Name of Treating Doctor:** ___See attached medical information_____

**Treating Doctor's Specialty:** ____See attached medical information_____

**Treating Doctor's Mailing Address:** ___See attached medical information_____
                            Address

_____
City                                              State/Province                          Zip/Postal Code

**Treating Doctor's Daytime Telephone number:** See attached medical information  __ __ __  -  __ __ __ __

**Was the doctor paid for the services that he/she performed?** See attached medical information.............☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* ...._See attached medical information_____

**Did you retain counsel in order to receive any of the services performed by the doctor?** Objection: relevance ...........

### [REMAINDER OF PAGE INTENTIONALLY BLANK]

8

## GRACE ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below for each site at which you allege exposure to Grace asbestos-containing products. If you allege exposure at multiple sites, the Court has ordered that you must complete a separate chart for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each job listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Grace asbestos-containing products

(b) A worker who personally removed or cut Grace asbestos-containing products

(c) A worker who personally installed Grace asbestos-containing products

(d) A worker at a site where Grace asbestos-containing products were being installed, mixed, removed or out by others

(e) A worker in a space where Grace asbestos-containing products were being installed, mixed, removed or out by others

(f) If other, please specify.

Site of Exposure:

Site Name: **See Exhibit A**

Site Type: ☐ Residence   ☐ Business        Site Owner:_____   Location:_____

Employer During Exposure:_____        Unions of which you were a member during your employment:_____

| | Employer Name and Address (or Name and Description of Site) | Occupation | Industry | Dates of Exposure and/or Employment (month/year to month/year) | Nature of Exposure (see a-f above) |
|---|---|---|---|---|---|
| Job 1 Description: | **See Exhibit A** | | | | |
| Job 2 Description: | | | | | |
| Job 3 Description: | | | | | |
| Job 4 Description: | | | | | |
| Job 5 Description: | | | | | |
| Job 6 Description: | | | | | |

9

[D00006471]

## PART IV: INDIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

1.  Are you asserting an injury caused by exposure to Grace asbestos-containing products through contact/proximity with another injured person? ................................................................................................................☐ Yes ☐ No

    *If yes, complete questions 2 through 10 of this section for each injured person through which you allege exposure to Grace asbestos-containing products. For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.*

2.  Please indicate the following information regarding the other injured person:

    Name of Other Injured Person: _____  Gender: ☐ Male ☐ Female

    Last Four Digits of Social Security Number: __ __ __ __        Birth Date: __ __ / __ __ / __ __ __ __

3.  What is your Relationship to Other Injured Person: ....................................................☐ Spouse ☐ Child ☐ Other

4.  Nature of Other Injured Person's Exposure to Grace Asbestos-Containing Products:
    _____

5.  Dates Other Injured Person was Exposed to Grace Asbestos-Containing Products:
    From: __ __ / __ __ / __ __ __ __    To: __ __ / __ __ / __ __ __ __

6.  Other Injured Person's Basis for Identification of Asbestos-Containing Product as Grace Product:
    _____

7.  Has the Other Injured Person filed a lawsuit related to his/her exposure?............................................☐ Yes ☐ No

    *If yes, please provide caption, case number, file date, and court name for the lawsuit:*

    Caption: _____

    Case Number: _____  File Date: __ __ / __ __ / __ __ __ __

    Court Name: _____

8.  Nature of Your Own Exposure to Grace Asbestos-Containing Product:
    _____

9.  Dates of Your Own Exposure to Grace Asbestos-Containing Product:
    From: __ __ / __ __ / __ __ __ __    To: __ __ / __ __ / __ __ __ __

10. Your Basis for Identification of Asbestos-Containing Product as Grace Product:
    _____

### [REMAINDER OF PAGE INTENTIONALLY BLANK]

10

{D0050647:1 }

## POST-1976 EXPOSURE TO OTHER ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products. If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate chart for each party. For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each product listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Non-Grace asbestos-containing products

(b) A worker who personally removed or cut Non-Grace asbestos-containing products

(c) A worker who personally installed Non-Grace asbestos-containing products

(d) A worker at a site where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others

(e) A worker in a space where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others

(f) If other, please specify.

Objection:  Burdensome/Public Record

| Party Against which Lawsuit or Claim was Filed: See attached Complaint cover sheet | | | | | | |
|---|---|---|---|---|---|---|
| **Site of Exposure 1** | Job 1 Description: | | | | | |
| Site Name: Objection: Burdensome Public Documents | Job 2 Description: | | | | | |
| Address: | | | | | | |
| City and State: | Job 3 Description: | | | | | |
| Site Owner: | | | | | | |
| **Site of Exposure 2** | Job 1 Description: | | | | | |
| Site Name: | | | | | | |
| Address: | Job 2 Description: | | | | | |
| City and State: | | | | | | |
| Site Owner: | Job 3 Description: | | | | | |
| **Site of Exposure 3** | Job 1 Description: | | | | | |
| Site Name: | | | | | | |
| Address: | Job 2 Description: | | | | | |
| City and State: | | | | | | |
| Site Owner: | Job 3 Description: | | | | | |

11

{D0055641:1 }

## PART VI:  EMPLOYMENT HISTORY

Other than jobs listed in Part III or V, please complete this Part VI for all of your prior industrial work experience up to and including your current employment.  For each job, include your employer, location of employment, and dates of employment. Only include jobs at which you worked for at least one month.  Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.

**Occupation Code:** _____ If Code 59, specify: <u>See Exhibit A</u>

**Industry Code:** _____ If Code 118, specify:_____

**Employer:** _____

**Beginning of Employment:** __ __ / __ __ / __ __ __ __     **End of Employment:** __ __ / __ __ / __ __ __ __

**Location:** _____
                   Address

City _____     State/Province _____     Zip/Postal Code _____

**Occupation Code:** _____ If Code 59, specify: _____

**Industry Code:** _____ If Code 118, specify:_____

**Employer:** _____

**Beginning of Employment:** __ __ / __ __ / __ __ __ __     **End of Employment:** __ __ / __ __ / __ __ __ __

**Location:** _____
                   Address

City _____     State/Province _____     Zip/Postal Code _____

**Occupation Code:** _____ If Code 59, specify: _____

**Industry Code:** _____ If Code 118, specify:_____

**Employer:** _____

**Beginning of Employment:** __ __ / __ __ / __ __ __ __     **End of Employment:** __ __ / __ __ / __ __ __ __

**Location:** _____
                   Address

City _____     State/Province _____     Zip/Postal Code _____

**Occupation Code:** _____ If Code 59, specify: _____

**Industry Code:** _____ If Code 118, specify:_____

**Employer:** _____

**Beginning of Employment:** __ __ / __ __ / __ __ __ __     **End of Employment:** __ __ / __ __ / __ __ __ __

**Location:** _____
                   Address

City _____     State/Province _____     Zip/Postal Code _____

12

{D0050647:1 }

## PART VII:  LITIGATION AND CLAIMS REGARDING ASBESTOS AND/OR SILICA

**a.   LITIGATION**

1.  Have you ever been a plaintiff in a lawsuit regarding asbestos or silica? ................................................. X Yes ☐ No

*If yes, please complete the rest of this Part VII(a) for each lawsuit.   For your convenience, additional copies of Part VII are attached as Appendix G to this Questionnaire*

2.  Please provide the caption, case number, file date, and court name for the lawsuit you filed:

    **Caption:**   See Complaint cover sheet

    **Case Number:** _____  **File Date:** __ __ / __ __ / __ __ __ __

    **Court Name:**  Cuyahoga County Court of Common Pleas

3.  **Was Grace a defendant in the lawsuit?** Objection: Burdensome/Public Document ................................... ☐ Yes ☐ No

4.  **Was the lawsuit dismissed against any defendant?** Objection: See docket and pleadings in case which are public records.
    ☐ Yes ☐ No

    *If yes, please provide the basis for dismissal of the lawsuit against each defendant:*

    Objection: burdensome.  Please see docket and pleadings filed in the case which are public records

5.  **Has a judgment or verdict been entered?** Objection: See Fantozzi v Sandusky Cement Products (1992), 64 Ohio St.3d601 ................................................................................................................... ☐ Yes ☐ No

    *If yes, please indicate verdict amount for each defendant(s):* _____

6.  6.   **Was a settlement agreement reached in this lawsuit?** Objection: See Fantozzi v Sandusky Cement Products (1992), 64 Ohio St.3d601. ................................................................................................. ☐ Yes ☐ No

    *If yes and the settlement was reached on or after April 2, 2001, please indicate the following:*

    a.   Settlement amount for each defendant: _____

    b.   Applicable defendants: _____

    c.   Disease or condition alleged: _____

    d.   Disease or condition settled (if different than disease or condition alleged): _____

7.  Were you deposed in this lawsuit? Objection: Public Document. See attached docket and pleading .......... ☐ Yes ☐ No

    **If yes and Grace was not a party in the lawsuit, please attach a copy of your deposition to this Questionnaire.**

**b.   CLAIMS**

1.  Have you ever asserted a claim regarding asbestos and/or silica, including but not limited to a claim against an asbestos trust (other than a formal lawsuit in court)? ..................................................... X Yes ☐ No

    *If yes, please complete the rest of this Part VII(b).  If no, please skip to Part VIII.*

2.  Date the claim was submitted: Objection: See Fantozzi v Sandusky Cement Products (1992), 64 Ohio St.3d601

3.  Person or entity against whom the claim was submitted:
    Objection: See Fantozzi v Sandusky Cement Products (1992), 64 Ohio St.3d601

4.  Description of claim: Objection: See Fantozzi v Sandusky Cement Products (1992), 64 Ohio St.3d601

5.  Was claim settled? Objection: See Fantozzi v Sandusky Cement Products (1992), 64 Ohio St.3d601 ........ ☐ Yes ☐ No

6.  Please indicate settlement amount: Objection: See Fantozzi v Sandusky Cement Products (1992), 64 Ohio St.3d601
    -------------------------------------------------------------------------------------$

7.  Was the claim dismissed or otherwise disallowed or not honored? Objection:relevance ........................ ☐ Yes ☐ No

    *If yes, provide the basis for dismissal of the claim:* .................................................. _____

13

{D0050647:1 }

## PART VIII: CLAIMS BY DEPENDENTS OR RELATED PERSONS

Name of Dependent or Related Person: Objection: relevance: See Complaint Cover Sheet..  Gender: ☐ Male ☐ Female

Last Four Digits of Social Security Number: __ __ __ __          Birth Date: __ __ / __ __ / __ __ __ __

Financially Dependent:...............................................................................................................☐ Yes ☐ No

Relationship to Injured Party: ☐ Spouse ☐ Child ☐ Other If other, please specify _____

Mailing  Address: _____
            Address

_____
City                                    State/Province                  Zip/Postal Code

Daytime Telephone number: ..........................................................( __ __ __ ) __ __ __ - __ __ __ __

## PART IX: SUPPORTING DOCUMENTATION

Please use the checklists below to indicate which documents you are submitting with this form.
**Copies:** See attached medical information

☐ Medical records and/or report containing a diagnosis
☐ Lung function test results
☐ Lung function test interpretations
☐ Pathology reports
☐ Supporting documentation of exposure to Grace asbestos-containing products
☐ Supporting documentation of other asbestos exposure

☐ X-rays
☐ X-ray reports/interpretations
☐ CT scans
☐ CT scan reports/interpretations
☐ Depositions from lawsuits indicated in Part VII of this Questionnaire
☐ Death Certification

**Originals:**

☐ Medical records and/or report containing a diagnosis
☐ Lung function test results
☐ Lung function test interpretations
☐ Pathology reports
☐ Supporting documentation of exposure to Grace asbestos-containing products

☐ Supporting documentation of other asbestos exposure
☐ X-rays
☐ X-ray reports/interpretations
☐ CT scans
☐ CT scan reports/interpretations
☐ Death Certification

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation. Please indicate the documents for which you are seeking reimbursement and attach a receipt for such costs:

_____

## PART X: ATTESTATION THAT INFORMATION IS TRUE AND ACCURATE

The information provided in this Questionnaire must be accurate and truthful. This Questionnaire is an official court document that may be used as evidence in any legal proceeding regarding your Claim. The penalty for presenting a fraudulent Questionnaire is a fine of up to $500,000 or imprisonment for up to five years, or both.  18 U.S.C. §§ 152 & 3571.
**TO BE COMPLETED BY THE INJURED PERSON.**

I swear, **under penalty of perjury**, that, to the best of my knowledge, all of the foregoing information contained in this Questionnaire is true, accurate and complete.

Signature: _Shm M.Wil. roa_____  Date:2/11/2006

Please Print Name: Thomas M Wilson, Esq as POA

**TO BE COMPLETED BY THE LEGAL REPRESENTATIVE OF THE INJURED PERSON.**

I swear that, to the best of my knowledge, all of the information contained in this Questionnaire is true, accurate and complete.

Signature: _____ Date: 2/11/2006

Please Print Name: Thomas M. Wilson, Esq.

14

Exhibit "A"

REDACTED

Name: _____

S.S#: _____

| JOBSITE | CITY | STATE | YEARS WORKED |
|---|---|---|---|
| MENGOLUF MACHINE REFINERY | SAVANANAH | GA | 1/1/1955 – 12/1/1980 |
| UNION CAMP PAPER CO | SAVANNAH | GA | 1/1/1948 – |
| SAVANNAH ELECTRIC CO. POWER PLANT | SAVANNAH | GA | 1/1/1942 – 12/1/1987 |
| SAVANNAH MACHINE FOR SHIPYARD | SAVANNAH | GA | 1/1/1942 – 12/1/1987 |
| SOUTHEASTERN SHIPYARD | SAVANNAH | GA | 1/1/1940 – 12/1/1954 |
|  |  |  | - |
|  |  |  | - |
|  |  |  | - |
|  |  |  | - |
|  |  |  | - |
|  |  |  | - |
|  |  |  | - |
|  |  |  | - |
|  |  |  | - |
|  |  |  | - |

(D0050647:1 )

FILED

'1993 MAR 26 PM 1: 45

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

OHIO ASBESTOS LITIGATION

CASE NO. 1:93CV10317

)
)                         JUDGE:   THOMAS D. LAMBROS
REDACTED                  )
)
)
)
)
Plaintiffs,               )
)
-vs-                      )                      COMPLAINT
)                      (Jury Trial Demanded)
ARMSTRONG WORLD INDUSTRIES, INC.    )
A Pennsylvania Corporation          )
c/o C.T. Corporation System         )
Statutory Agent                     )
815 Superior Avenue, N.E.           )
Cleveland, Ohio  44114              )
)
ACandS, INC.                        )
A Delaware Corporation              )
120 North Lime Street               )
Lancaster, Pennsylvania  17604      )              REDACTED
)
A. P. GREEN REFRACTORIES CO.        )
Subsidiary of United States         )
Gypsum Company                      )
A Delaware Corporation              )
Statutory Agent                     )                8413
815 Superior Avenue, N.E.           )
Cleveland, Ohio  44114              )

A. W. CHESTERTON CO.                )
A Massachusetts Corporation         )
Middlesex Industrial Park           )
Route 93                            )
Stoneham, Massachusetts  02180      )
)
)

ANCHOR PACKING CO.                           )
A Delaware Corporation                       )
Airpark East                                 )
408-G Gallimore Dairy Road                   )
Greensboro, NC    27409                      )
                                             )
ATLAS TURNER, INC.                           )
(formerly Atlas Asbestos Co.)                )
A Canadian Corporation                       )
5600 Hochelaga Street                        )
Montreal, P.Q., Quebec                       )
CANADA    H1N1W1                             )
                                             )
FIBERBOARD CORPORATION                       )
ATTN:  Theresa Dick                          )
P.O. Box 4125                                )
Concord, California  94524                   )
                                             )
FOSTER WHEELER ENERGY CORPORATION            )
A Delaware Corporation                       )
c/o U. S. Company                            )
Statutory Agent                              )
380 South Fifth                              )
Columbus, Ohio  43215                        )
                                             )
GAF CORPORATION                              )
A Delaware Corporation                       )
1361 Alps Road                               )
Wayne, New Jersey  07470                     )
                                             )
HARBISON WALKER REFRACTORIES, INC. )
c/o Dick Jewell                              )
Statutory Agent                              )
1 Gateway Center                             )
Pittsburgh, Pennsylvania   15222             )
                                             )
KEENE CORPORATION                            )
A New York Corporation                       )
200 Park Avenue                              )
New York, New York 10017                     )
                                             )
KEENE BUILDING PRODUCTS CORPORATION)
A Delaware Corporation                       )
200 Park Avenue                              )
New York, New York  10017                    )
                                             )
PITTSBURGH CORNING CORPORATION               )
A Pennsylvania Corporation                   )
800 Presque Isle Drive                       )
Pittsburgh, Pennsylvania  15239              )
                                             )
ROCK WOOL MANUFACTURING COMPANY              )
An Alabama Corporation                       )
Leeds, Alabama  35094                        )
                                             )

```
TURNER & NEWALL, PLC                    )
P.O. Box 20                             )
Ashburton Road, West                    )
Trafford Park                           )
Manchester, England  M17-1RA            )
                                        )
UNITED STATES GYPSUM COMPANY            )
c/o C. T. Corporation Systems           )
Statutory Agent                         )
Carew Tower                             )
Cincinnati, Ohio 45202                  )
                                        )
W. R. GRACE & COMPANY-CONN              )
c/o Prentice Hall Corp. System          )
Statutory Agent                         )
380 South 5th Street                    )
Columbus, Ohio   43215-5436             )
                                        )
GARLOCK, INC.                           )
An Ohio Corporation                     )
c/o C.T. Corporation System             )
Statutory Agent                         )
815 Superior Avenue, N.E.               )
Cleveland, Ohio  44114                  )
                                        )
PFIZER, INC.                            )
A Delaware Corporation                  )
c/o C. T. Corporation Systems,          )
Statutory Agent                         )
Carew Tower                             )
Cincinnati, Ohio   45202                )
                                        )
M.H. DETRICK. CO.                       )
An Illinois Corporation                 )
c/o John W. Hosbein                     )
Statutory Agent                         )
19444 South 97th Avenue                 )
Mokena,  IL  60448                      )
                                        )
```

```
OWENS CORNING FIBERGLAS CORP.      )
A Delaware Corporation             )
c/o R. LaMar Frederick             )
Statutory Agent                    )
Fiberglas Tower                    )
Toledo, Ohio    43604              )
                                   )
          Defendants               )
```

<div align="center">COUNT ONE         **REDACTED**</div>

1.   Plaintiff,                who resides in
has been a Boilermaker in the State of Georgia and Florida from
1942 to 1987.   Plaintiff              is the wife of


2.   Defendants are corporations incorporated under the laws
of states other than the State of Georgia and Florida and all
have their principal place of business in states other than the
State of Georgia and Florida.

3.   The amount in controversy exceeds the sum of Fifty
Thousand Dollars ($50,000.00), exclusive of costs and interests.

4.   Defendants are miners, manufacturers, processors,
importers, converters, compounders, or merchants of asbestos, and
asbestos-containing materials.

5.   Defendants, acting through their servants, employees,
agents and representatives, caused asbestos and asbestos-
containing materials to be placed in the stream of interstate
commerce.            **REDACTED**

6.                     worked as a Boilermaker in the Georgia
and Florida area from approximately 1942 to 1987.  During the

course of his employment, he had been exposed to the defendant's
asbestos and asbestos-containing materials, by virtue of
installation and tear-out work, which exposure directly and
proximately caused him to develop asbestosis and to suffer other
injury, including a greatly increased risk of developing
mesothelioma, bronchogenic carcinoma, or other cancerous
condition.  Further, this increased cancer risk has caused
plaintiff to endure great mental anguish and will continue to
cause such anguish in the future.

7.  The illness and disability of               is the
direct and proximate result of the negligence of the defendants
in that they produced, sold or otherwise put into the stream of
interstate commerce, asbestos and asbestos-containing materials,
which the defendants knew or in the exercise of ordinary care,
ought to have known were deleterious poisonous, and highly
harmful to                   health.        **REDACTED**.

8.  The illness and disability of               is the
direct and proximate result of the negligence of the defendants
in that even though the defendants knew or in the exercise of
ordinary care, ought to have known that their asbestos and
asbestos-containing materials were deleterious, poisonous and
highly harmful to                   health, and that
would not know of such dangers to his health, the defendants
nonetheless:

(a)   Failed to advise                    of the
dangerous characteristics of their asbestos
and asbestos-containing products;    **REDACTED**

(b)   Failed or omitted to provide
        with the knowledge as to what would be
reasonably safe and sufficient wearing
apparel and proper protective equipment and
appliances, if in truth there were any to
protect                from being poisoned and
disabled as              was, by exposure to
such deleterious and harmful asbestos and
asbestos-containing materials;

(c)   Failed and omitted to place any warnings
on their containers of said asbestos and
asbestos-containing materials to warn the
handlers thereof of the dangers to health in
coming into contact with said asbestos and
asbestos-containing materials;

(d)   Failed and omitted to take reasonable
precautions or exercise reasonable care to
publish, adopt and enforce a safety plan and
a safe method of handling and installing said
asbestos and asbestos-containing materials.

9.   The defendants impliedly warranted that said asbestos
and asbestos-containing materials were of good and merchantable
quality and fit for the intended use.

**REDACTED**

10.            was a a Boilermaker working in close proximity to the asbestos and asbestos-containing materials of the defendants, and            ; presence was known, or ought to have reasonably been anticipated by the defendants.

11.  The implied warranty made by the defendants that their asbestos and asbestos-containing materials were of good and merchantable quality and fit for their particular intended use was breached in that certain harmful, poisonous and deleterious matter was given off into the atmosphere where carried out his duties working in and around asbestos and asbestos-containing materials.            **REDACTED**

12.  As a direct and proximate result of the breach of the implied warranty of good and merchantable quality and fitness for the particular intended use,            developed asbestosis.

13.  The defendants manufactured and sold products which were defective at the time they left the control of the defendants, and which proximately caused the illness of            whom defendants knew or should have known would be exposed to their products.            **REDACTED**

14.  Defendants violated the requirements of the §402(A) as adopted by the <u>Restatement of all Torts</u>, 2d, all of which proximately resulted in the illness of

15.  As a direct and proximate result of the acts and omissions complained of above,            has experienced

great pain and suffering of mind and body, and will endure future
pain and suffering of mind and body.                    **REDACTED**

   16.  As a direct and proximate result of the acts and
omissions complained of above,                    has incurred
expenses for medical, hospital, and surgical care in an amount
not yet determined, and will incur future such expenses.

   17.  As a direct and proximate result of the acts and
omissions complained of above,                    has lost wages in an
amount not yet determined.

                          COUNT TWO

   18.  Plaintiffs herein reallege paragraphs 1 through 17
above as though fully rewritten herein.

   19.  Defendants, individually and as a group since 1929 have
been possessed of medical and scientific data which clearly
indicates that their asbestos fibers and asbestos-containing
products are hazardous to health; and prompted by pecuniary
motives, the defendants, individually and collectively, ignored
and intentionally failed to act upon said medical and scientific
data and conspired to deprive the public, and particularly the
users, including                    of said medical and scientific
data, and therefore deprived                    of the opportunity of
free choice as to whether or not to expose himself to the
asbestos and asbestos-containing products of said defendants; and
further, willfully, intentionally and wantonly failed to warn
                    of the serious bodily harm which would result from
                          **REDACTED**

the inhalation of the asbestos fibers and the dust from their
asbestos products.

20.    The award for this Count should be in such an amount as
would act as a deterrent to defendants and others from the future
commission of like offenses and wrongs.

### COUNT THREE

21.    Plaintiffs herein reallege paragraphs 1 through 20
above as though fully rewritten herein.

22.    Defendants, collectively and individually,
manufactured, designed, selected, assembled, inspected, tested,
maintained for sale, marketed, distributed, sold, supplied,
delivered, and promoted asbestos-containing products which were
generically similar and fungible in nature; and placed such
material into the stream of interstate commerce.

23.    Plaintiffs, through no fault of their own, may not be
able to identify all of the asbestos-containing products or their
manufacturers, marketers, sellers, distributors, or promoters due
to the generic similarity and fungible nature of such products as
produced and promoted by these defendants.

24.    As a direct and proximate result of the defendants'
activities, plaintiff,                    was exposed to asbestos-
containing material and sustained the injuries and damages
described above.
                         **REDACTED**

25.  Defendants are jointly and severally liable to the
plaintiffs for the injuries and damages sustained by
     described above, by virtue of industry-wide liability, or
enterprise liability.          REDACTED

26.  (a)  Alternatively, defendants represent a substantial
share of the asbestos-containing product market where
     worked and was exposed to asbestos.

     (b)  Defendants manufactured, designed, selected,
assembled, marketed, distributed, sold, supplied, delivered, and
promoted asbestos-containing products of the kind and nature to
which          was exposed during the period of his
employment.          REDACTED

27.  Defendants are severally liable to the plaintiffs based
upon their pro-rata market share within the market described
herein.

<u>COUNT FOUR</u>

28.  Plaintiffs herein reallege paragraphs 1 through 27
above as though fully rewritten herein.          REDACTED

29.  Plaintiff,          has suffered a loss of
consortium and has been deprived of the society, companionship,
and assistance of her husband,          .

     WHEREFORE, plaintiffs demand judgment against the
defendants in the sum of THREE MILLION DOLLARS ($3,000,000.00)
compensatory damages on Counts One and Three, the sum of ONE

MILLION FIVE HUNDRED THOUSAND DOLLARS ($1,500,000.00) punitive

damages on Count Two; and in the sum of FIVE HUNDRED THOUSAND

DOLLARS ($500,000.00) compensatory damages on Count Four for a

total demand of FIVE MILLION DOLLARS ($5,000,000.00), plus

interest, costs and such further relief to which plaintiffs may

be entitled.

        A trial by jury is hereby demanded to determine all

issues.

Of Counsel:
Climaco, Climaco,
Seminatore, Lefkowitz,
& Garofoli Co., L.P.A.

MICHAEL V. KELLEY 39-0002679
JOHN A. SIVINSKI 39-0036712
ROBERT R. LUCARELLI 39-0033559
JACK L. PETRONELLI 39-0013910
Suite 900, The Halle Building
1228 Euclid Avenue
Cleveland, Ohio 44115-1891
(216) 621-8484


                Attorneys for Plaintiffs

CHATHAM PATHOLOGY ASSOCIATES, P.C.

ST. JOSEPH'S HOSPITAL
DEPARTMENT OF PATHOLOGY
11705 Mercy Blvd., Savannah, Ga.
(912) 927-5426 FAX (912) 927-5128
Edward E. Hahn, M.D., Director

CANDLER HOSPITAL
DEPARTMENT OF PATHOLOGY
5353 Reynolds St., Savannah, Ga.
(912) 692-6370 FAX (912) 692-6515
James A. Miller, M.D., Director

REDACTED

| PATIENT: | ACCT #: V0D8316754 | LOC: 5S | U #: M000363973 |
|---|---|---|---|
| REG DR: Perry, Douglas A. | AGE/SX: | ROOM: 547 | REG: 01/17/01 |

SPEC #: S01-185      RECD: 01/29/01-0819  STATUS: SOUT  PERFORMED AT St. Joseph's Hospital

CLINICAL INFORMATION:
         Operation:  LAPAROSCOPY
Pre-Op Diagnosis:  LUNG LESION.  HISTORY OF SMOKIND AND ASBESTOS EXPOSURE.
Post-Op Diagnosis:  PENDING
      Specimen(s):  PERITONEAL IMPLANT


MICROSCOPIC DIAGNOSIS:
PERITONEAL IMPLANT (LAPAROSCOPIC BIOPSY):  DIFFUSE MALIGNANT MESOTHELIOMA.


GROSS DESCRIPTION:
The specimen is received in the fresh state and labeled "peritoneal implant".  I understand
from the surgeon, Dr. Hungerpiller, that there are innumerable small white nodules studding
the peritoneum of the right abdomen. The specimen consists of yellow soft tissue
containing several, relatively firm white nodules.  The nodules measure up to 3-4 mm. in
diameter.  A small portion of the specimen is submitted for frozen section in block 1.  The
remainder of the specimen is submitted in block 2.  PJD:syw


MICROSCOPIC DESCRIPTION:
Sections demonstrate peritoneal adipose tissue containing multiple, ill defined nodules of
a large cell malignant neoplasm.  The malignant cells diffusely infiltrate the fat, forming
ill defined solid nodules.  The malignant cells have large, ovoid to elongated, spindle
shaped nuclei.  The nuclei are markedly pleomorphic with prominent nucleoli and marked
membrane irregularities.  Mitotic figures are readily identified, numbering >10 per 10 high
power fields in areas.  Some of the mitoses appear abnormal.  The malignant cells have
ample, finely textured cytoplasms.  Neither keratinization nor glandular formation is
identified.  Sparse chronic inflammation is present, especially toward the periphery of the
tumor nodules.  The inflammatory cells consist mostly small lymphocytes and eosinophils.
The histologic features are that of a mixed epithelioid and sarcomatoid malignant neoplasm
and suggest mesothelioma.  Iron and Mucicarmine stains are obtained on blocks 1 and 2.  No

** CONTINUED ON NEXT PAGE **
***************FINAL PATHOLOGY REPORT - DO NOT DESTROY***************

**CHATHAM PATHOLOGY ASSOCIATES, P.C.**

ST. JOSEPH'S HOSPITAL
DEPARTMENT OF PATHOLOGY
11705 Mercy Blvd., Savannah, Ga.
(912) 927-5426 FAX (912) 927-5128
Edward E. Hahn, M.D., Director

CANDLER HOSPITAL
DEPARTMENT OF PATHOLOGY
5353 Reynolds St., Savannah, Ga.
(912) 692-6370 FAX (912) 692-6535
James A. Miller, M.D., Director

REDACTED

Patient:                        #V008316754        (Continued)

Specimen: S01-185        Received: 01/29/01-0819              (Continued)

MICROSCOPIC DESCRIPTION:  (Continued)
ferruginous bodies are seen.  No mucin is present.  Immunostains for Cytokeratin AE1/AE3,
B72.3, Calretinin, Thrombomodulin, and MOC31 are also obtained.  The malignant cells show
cytoplasmic positivity for cytokeratin AE1/AE3 and for the mesothelial markers, calretinin
and thrombomodulin.  They appear negative for the adenocarcinoma markers, B72.3 and MOC31.
The controls worked appropriately.

INTRAOPERATIVE CONSULTATION:    :
FROZEN SECTION DIAGNOSIS:
        PERITONEAL IMPLANT:  -  MALIGNANT NEOPLASM, POSSIBLE MESOTHELIOMA.
                             -  DEFER TO PERMANENT SECTIONS.

DOCUMENTATION:
PJD:syw
D&T  01/30/2001

COPIES/FAXED TO PHYSICIAN(S):
Perry,Douglas A.
Schwartz,Philip G.

Signed _____(signature on file)____ Drwiega, Paul DR 01/31/01

** END OF REPORT **
***************FINAL PATHOLOGY REPORT - DO NOT DESTROY***************

ST. JOSEPH'S/CANDLER HEALTH SYSTEM
PATIENT  :
MR#      :  M000363973
ATTENDING MD:  Dr. Douglas A. Perry

DISCHARGE SUMMARY

**REDACTED**

St. Joseph's Hospital          Visit # :  V008316754
11705 Mercy Boulevard          Location:  5S  547  0
Savannah, Georgia 31419        DOB     :
                                           Pt.Type: IN

DATE OF ADMISSION:  01/17/2001

DATE OF DISCHARGE:  02/03/2001

ADMITTING DIAGNOSIS:
1.  Right lower lobe infiltrate.
2.  Asbestos-related lung disease.
3.  Abdominal aortic aneurysm.
4.  ASVD.
5.  Hypertension.
6.  Chronic obstructive pulmonary disease.
7.  Hyperlipidemia.
8.  Vitamin B12 deficiency anemia.
9.  Parkinson's disease.
10. Chronic constipation.

DISCHARGE DIAGNOSIS:
1.  Disseminated peritoneal malignant mesothelioma.

DISCHARGE MEDICATIONS: Ms Contin 60 mg q.12h., MSARIR p.r.n. break-through
pain, Senokot two tabs t.i.d., Lisinopril 20 mg per day, Lasix 20 mg per
day, Sinemet 25/100 t.i.d., Alprazolam 0.5 mg b.i.d., Zantac 150 mg q.h.s.,
Selegiline 5 mg b.i.d., Colace q.d., multivitamin q.d., vitamin B12 shot
monthly.

DISPOSITION: The patient was discharged to home hospice, I believe Palmetto
Hospital services out of South Carolina.

Of note, he expired within two weeks of discharge from the hospital.

PATIENT PROFILE: The patient was a chronically ill, 73-year-old white male,
followed closely through the VA system with multiple chronic medical
problems which are documented above. He went to the VA clinic on the 17th.
Had some chest pain and some abdominal pain. They were worried about
pending rupture of known abdominal aortic aneurysm and sent them to the
emergency room. Emergency room evaluation found him to have aneurysm of
about 5 cm in diameter. It appeared to be stable. His white blood cell
count on emergency room presentation was 23,000. Chest x-ray showed right
lower lobe infiltrate with pleural thickening and probable effusion. CT of
the abdomen showed 5.5 cm infrarenal abdominal aortic aneurysm without
ruptures or sign of leakage. There was also marked right pleural thickening
and subdiaphragmatic lymph nodes. Electrocardiogram showed electronic
ventricular paced rhythm. No acute abnormalities. Please see history and
physical for presenting symptomatology and examination. The patient was

DISCHARGE SUMMARY                                    Page 1 of 3

ST. JOSEPH'S/CANDLER HEALTH SYSTEM
PATIENT :
MR# : M000363973
ATTENDING MD: Dr. Douglas A. Perry

DISCHARGE SUMMARY

REDACTED

admitted to the med floor and started on Rocephin 1 gram IV q.24h. and
Zithromax 500 mg p.o. q.d. Consultation was obtained with Dr. Allen
Meadows. He was started on all of his home medications. His hemoglobin was
low so he was transfused two units of packed red blood cells. Consultation
with Dr. Hungerpiller was obtained regarding his abdominal aortic aneurysm.
Records of prior ultrasounds and CTs done through the VA system were
requested. Dr. Meadows felt bronchoscopy and pleural biopsy was indicated
given the marked pleural thickening. Over the next two days, his breathing
improved some. He did start complaining of some right flank and upper
quadrant discomfort. White blood cell count was still about 20,000. He
showed no signs of cardiac decompensation. He had some midline chest pain
on the 20th which resolved after one dose of nitroglycerin and some oral
Tylox. Electrocardiogram was obtained during the pain episode and was
unchanged from his baseline. Lung exam remained unremarkable. Sedimentation
rate I had ordered came back and was markedly elevated at 149 making us
quite worried about possible malignancy, particularly mesothelioma given
his radiographic findings. He continued to have some vague abdominal pain
over the next few days. His white blood count started rising and was up to
25,000 on the 22nd. Zithromax was stopped in case this was playing a role
in his abdominal pain. However, his abdominal pain increased. Consultation
with Dr. Nicholas V. Costrini was performed who did upper endoscopy which
showed only mild gastritis. Right upper quadrant ultrasound did show
evidence for cholecystitis. Bronchoscopy was done on the 23rd. Pleural
cultures were negative as were bronchoscopic biopsies. He continued to be
quite weak over the next few days. Consultation was obtained with Dr.
Robert Jones for thoracoscopy to get some biopsies to assess for the
possibility of mesothelioma. He was maintained on Levaquin for respiratory
infectious process. Further radiographic procedures were done over the next
few days. A G-scope was done on the 27th and showed mild gastritis.
Cholecystectomy and thoracoscopy were planned for the 29th. However, on
laparoscopy, he was found to be studded with carcinomatosis and
cholecystectomy was aborted and thoracoscopy was unnecessary as multiple
biopsies of the peritoneal implants were taken. Pathology did come back
consistent with malignant mesothelioma. The situation was discussed at
length with the patient, his wife, and family members. We explained to them
that there probably was not much an oncologist could offer but they
expressed that they would like an expert opinion regarding this and this
was obtained. Consultation was obtained with Palmetto Hospice. The patient
was started on MS Contin and dose was titrated up to pain control. He was
already showing some delirium the last few days of hospitalization. Some
Alprazolam was added to his regimen and this seemed to help. He had a
fairly bad night overnight on the 2nd. He had had some hallucinations and
was in some discomfort. I increased his baseline OxyContin rate and made
sure they knew when to ask for the immediate release of morphine for break-
through pain. I had planned to send him home with home hospice on the 3rd.
However, his wife had awakened with what sounded like a severe viral
gastroenteritis overnight on the 3rd. When I saw them on the third, we were
going to wait until the following day given his wife's acute illness.
However, the patient became more alert early in the afternoon and very much
wanted to go home to be with his wife, so I discussed it with his daughter

DISCHARGE SUMMARY

Page 2 of 3

ST. JOSEPH'S/CANDLER HEALTH SYSTEM
PATIENT   :
MR#       :  M000363973
ATTENDING MD:  Dr. Douglas A. Perry

DISCHARGE SUMMARY

REDACTED

and we agreed to discharge him on the 3rd which was performed.

His discharge medications are as described and again, unfortunately, the
patient expired within several weeks of hospital discharge.

DAP/ nd
D:    03/04/2001  09:59
T:    03/07/2001  17:19

Job#06660

Douglas A. Perry, M.D..

*Pulmonary Medicine Associates, Inc.*

*Internal Medicine and Diseases of the Chest*

EDMUNDO M. ANTEOLA, M.D., F.C.C.P. • LAXMINARAYANA C. RAO, M.D., F.C.C.P., F.A.C.P. • NEAL C. CHADWICK, M.D., F.C.C.P.
PAUL C. VENIZELOS, M.D., F.C.C.P. • TIMOTHY N. TAYLOR, D.O. • LINAS F. VAITKUS, M.D., F.C.C.P. • GREGORY G. HICKEY, D.O.
John S. Bauer, M.B.A., Administrative Manager

NO. 332

NAME:_____                    DATE:   1-9-93

ADDRESS:_____

HT.:   _____
WT.:   _____            **REDACTED**
BP:    _____
AGE:   _____

CHEST X-RAY:

The soft tissues and bony thorax are normal.  There is no hilar prominence
or mass.  Cardiomegaly is absent.  There is no pleural thickening.  There
are irregular opacities present in both middle and lower lung fields.

PULMONARY FUNCTION TEST:

Flow study is within normal limits.

CONCLUSION:

With a significant history of exposure to asbestos dust, these findings
would be consistent with asbestosis.

*Paul C. Venizelos, M.D.*

DOCTOR:   Paul C. Venizelos, M.D., F.C.C.P.

LAKEWOOD PROFESSIONAL BUILDING • 14601 DETROIT AVE. • #550 • LAKEWOOD, OH 44107 • (216) 226-6666 - FAX # 226-6840
SOUTHWEST PHYSICIANS BUILDING • 7215 OLD OAK BLVD. • #3101 • MIDDLEBURG HTS., OH 44130 • (216) 826-3030 - FAX # 826-1235
FAIRVIEW GENERAL PHYSICIAN'S BUILDING • 18099 LORAIN AVE. • #225 • CLEVELAND, OH 44111 • (216) 252-8484 - FAX # 252-6724
WEST SHORE MEDICAL-ARTS BUILDING • 29099 HEALTH CAMPUS DR. • #150 • WESTLAKE, OH 44145 • (216) 835-8163 - FAX # 871-3408
PARMA MEDICAL ARTS CENTER • 8681 RIDGE RD. • #18 • PARMA, OH 44129 • (216) 846-4221 - FAX # 845-4292
BUSINESS OFFICE • 24901 CLEMENS RD. • #111 • WESTLAKE, OH 44145 • (216) 892-4655 • 1-800-541-4854 - FAX #-892-4858

PAUL C. VENIZELOS, M.D., F.C.C.P.

Pulmonary Medicine Associates, Inc.
Board Certified in Internal Medicine and Pulmonary Diseases
NIOSH "B" READER

**REDACTED**

PATIENT NAME _____     Social Security Number ___     TYPE OF READING [B]

| 1A. DATE OF X-RAY | 1B. FILM QUALITY | 1C. IS FILM COMPLETELY NEGATIVE? |
|---|---|---|
| 01 09 93 | X 2 3 4 | YES ☐   NO ☒ |

2A. ANY PARENCHYMAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?  YES ☒   NO ☐  (COMPLETE 2B and 2C / PROCEED TO SECTION 3)

2B. SMALL OPACITIES
a. SHAPE/SIZE — PRIMARY / SECONDARY
b. ZONES: R / L
c. PROFUSION

2C. LARGE OPACITIES — SIZE ☒ A B C

3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?  YES ☐   NO ☒

3B. PLEURAL THICKENING
3C. PLEURAL THICKENING — Chest Wall
3D. PLEURAL CALCIFICATION

4A. ANY OTHER ABNORMALITIES?  YES ☒   NO ☐

4B. OTHER SYMBOLS (OBLIGATORY)

4C. OTHER COMMENTS  Pacemaker noted.

SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 4C?  YES ☐ NO ☐

5. FILM READER'S INITIALS  PCV
PHYSICIAN'S SOCIAL SECURITY NUMBER  2 2 4 4 7 1 3 7
DATE OF READING  02 01 93

Lakewood Hospital Professional Building
14601 Detroit Avenue, Suite 550
Lakewood, Ohio 44107
(216) 226-6666
Fax (216) 226-8540

Westlake Health Campus, Building 3
29099 Health Campus Drive, Suite 150
Westlake, Ohio 44145
(216) 835-6163
Fax (216) 871-9408

FEB 20 2001

*[signature]* W.E. Edward
COUNTY REGISTRAR

**REDACTED**

STATE OF .
DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL
**CERTIFICATE OF DEATH**

STATE FILE NUMBER

**REDACTED**

TYPE/PRINT
IN
PERMANENT
BLACK INK
FOR
INSTRUCTIONS
SEE
OTHER SIDE
AND HANDBOOK

DECEDENT'S NAME

SEX: Male
DATE OF DEATH (Month, Day, Year)

SOCIAL SECURITY NUMBER: -1680
AGE - Last Birthday (Years): 73
BIRTHPLACE (City and State or Foreign Country): Savannah, GA

WAS DECEDENT EVER IN U.S. ARMED FORCES: Yes

MARITAL STATUS - Married: Married

DECEDENT'S USUAL OCCUPATION: Welder

RESIDENCE - STATE

INSIDE CITY LIMITS: No

RACE: White
DECEDENT'S EDUCATION: 12

METHOD OF DISPOSITION: Burial

FUNERAL DIRECTOR: L. MARTIN SAULS, III  1316
EMBALMER: L. MARTIN SAULS, III  1195
LICENSE NUMBER: 295

TIME OF DEATH: 3:00 p.
DATE PRONOUNCED DEAD: February 15, 2001
WAS CASE REFERRED TO MEDICAL EXAMINER/CORONER: Yes

IMMEDIATE CAUSE: cancer of lungs due to asbestos
Approximate Interval Between Onset and Death: 4 weeks

AUTOPSY: No

MANNER OF DEATH: Natural

CERTIFIER: CORONER
NAME OF ATTENDING PHYSICIAN: Dr. Douglas Perry

SIGNATURE AND TITLE OF CERTIFIER: L. MARTIN SAULS, III
Coroner
DATE SIGNED: 2/16/2001

NAME AND ADDRESS OF PERSON WHO SIGNED: L. Martin Sauls, III,

REGISTRAR'S SIGNATURE: Yvette C. Smith
DATE FILED: 02/20/01

DHEC 670
Rev 1990

**REDACTED**

*Pulmonary Medicine Associates, Inc.*

*Internal Medicine and Diseases of the Chest*

EDMUNDO M. ANTEOLA, M.D., F.C.C.P. • L.C. RAO, M.D., F.C.C.P., F.A.C.P. • NEAL C. CHADWICK, M.D., F.C.C.P. - PAUL C. VENIZELOS, M.D., F.C.C.P.
TIMOTHY N. TAYLOR, D.O. - LINAS F. VAITKUS, M.D., F.C.C.P. - GREGORY G. HICKEY, D.O., F.C.C.P. - BABU M. EAPEN, M.D.
JOHN S. BAUER, FACMPE, Administrative Manager

| | |
|---|---|
| **NAME** | **REDACTED** |
| **LOCATION** | |
| **SCREENING DATE** | 1-9-93 |
| **X-RAY #** | 33 2 |

# SIMPLE SPIROMETRY

```
DATE 02. 13. '93
TIME       49
AGE        67
SEX       MALE
HEIGHT   69 IN.
ADJUST   100 %
           SS6

* QUICK PRINT *

FVC      3590 ML
 PRED    4010 ML
 %PRED   89.5 %

FEV1.0   3100 ML
 PRED    3180 ML
 %PRED   97.4 %

FEV1%    86.3 %
 PRED    79.3 %
 %PRED  108.8 %
```

LAKEWOOD PROFESSIONAL BUILDING • 14601 DETROIT AVE. #550 • LAKEWOOD, OH. 44107 • (216)226-6666 • FAX #226-6540
OLD OAK PAVILION, SUITE 101 • 7255 OLD OAK BLVD. • MIDDLEBURG HTS., OH. 44130 • (216)826-3030 • FAX #826-1235
FAIRVIEW GENERAL PHYSICIANS BUILDING • 18099 LORAIN AVE. #225 • CLEVELAND, OH. 44111 • (216)252-8484 • FAX #252-0724
WEST SHORE MEDICAL ARTS CENTER • 29099 HEALTH CAMPUS DR. #150 • WESTLAKE, OH. 44145 • (216)835-6163 • FAX #871-9408
PARMA MEDICAL ARTS CENTER • 6681 RIDGE RD. #10 • PARMA, OH. 44129 • (215)845-4221 • FAX #845-4292
MEDINA COMMUNITY OFFICE • 970 E. WASHINGTON ST. #404 • MEDINA, OH. 44256 • (216)723-4727 • FAX #722-4457
BUSINESS OFFICE • 28901 CLEMENS RD. #111 • WESTLAKE. OH. 44145 • (216)892-4655 • FAX #892-4658

8413

STATE OF SOUTH CAROLINA
COUNTY OF                                                    PROBATE COURT

IN THE MATTER OF          The Estate of: _____          **REDACTED**

CASE NUMBER  2001-ES-27-53

### CERTIFICATE OF APPOINTMENT

This is to certify that

_____

_____

is/are the duly qualified

☒ PERSONAL REPRESENTATIVE
☐ GUARDIAN
☐ CONSERVATOR
☐ TRUSTEE
☐ _____

in the above matter and that this appointment, having been executed on
the ___12th___ day of ____June____ ____2002____ is
now in full force and effect, including authorization to receive all
monies, income, principal, interest & dividends of and belonging to said
estate.

RESTRICTIONS:  None

Executed this ___12th___ day of ____June____ ____2002____

Do not accept a copy of this certificate without
the raised seal of the Probate Court.

_LouElla Butler, Deputy_  . Probate Court Judge

FORM #141PC (1/91)
62-1-305, 62-3-103, 62-5-304, 62-5-421, 62-7-201