# EXHIBIT G

# W. R. Grace
# Asbestos Personal Injury
# Questionnaire



10315607070524
RE:
Parker & Parks L ɪ P
One Plaza Square
Port Arthur TX 77647

**REDACTED**



000437070524

[THIS PAGE INTENTIONALLY LEFT BLANK.]

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

# W. R. Grace
# Asbestos Personal Injury
# Questionnaire

**YOU HAVE RECEIVED THIS QUESTIONNAIRE BECAUSE GRACE BELIEVES THAT YOU HAD SUED ONE OR MORE OF THE DEBTORS LISTED IN APPENDIX A ATTACHED TO THIS QUESTIONNAIRE BEFORE GRACE FILED FOR BANKRUPTCY ON APRIL 2, 2001 FOR AN ASBESTOS-RELATED PERSONAL INJURY OR WRONGFUL DEATH CLAIM, AND THAT CLAIM WAS NOT FULLY RESOLVED.**

**IF YOU HAVE SUCH A CLAIM, YOU MUST COMPLETE AND SUBMIT THIS QUESTIONNAIRE BY JANUARY 12, 2006 TO RUST CONSULTING, INC., THE CLAIMS PROCESSING AGENT, AT ONE OF THE FOLLOWING ADDRESSES:**

|  |  |
|---|---|
| **IF SENT BY U.S. MAIL** | **IF SENT BY FEDERAL EXPRESS, UNITED PARCEL SERVICE, OR A SIMILAR HAND DELIVERY SERVICE** |
| RUST CONSULTING, INC. | RUST CONSULTING, INC. |
| CLAIMS PROCESSING AGENT | CLAIMS PROCESSING AGENT |
| RE: W.R. GRACE & CO. BANKRUPTCY | RE: W.R. GRACE & CO. BANKRUPTCY |
| P.O. BOX 1620 | 201 S. LYNDALE AVE. |
| FARIBAULT, MN 55021 | FARIBAULT, MN 55021 |

**A QUESTIONNAIRE (AND ANY AMENDMENTS OR ADDITIONAL DOCUMENTS IN SUPPORT OF THE QUESTIONNAIRE) WILL NOT BE CONSIDERED UNLESS RECEIVED BY RUST CONSULTING, INC. BY JANUARY 12, 2006.**

**THIS QUESTIONNAIRE IS AN OFFICIAL DOCUMENT APPROVED BY THE COURT IN CONNECTION WITH ESTIMATING GRACE'S ASBESTOS-RELATED PERSONAL INJURY AND WRONGFUL DEATH CLAIMS AS A WHOLE. THE QUESTIONNAIRE IS BEING USED BY W. R. GRACE AS A MEANS TO SEEK INFORMATION ABOUT YOUR ASBESTOS CLAIM. BY TIMELY RETURNING THE QUESTIONNAIRE AS COMPLETELY AND ACCURATELY AS POSSIBLE, GRACE, THE OFFICIAL COMMITTEES, AND THE FUTURE CLAIMANTS REPRESENTATIVE WILL SEEK TO PRIORITIZE THE PROCESSING OF YOUR CLAIM UNDER ANY TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION.**

**THE COURT HAS ORDERED THAT, AS PART OF THE DISCOVERY PROCESS, ALL HOLDERS OF PRE-PETITION ASBESTOS PERSONAL INJURY CLAIMS MUST COMPLETE AND RETURN THIS QUESTIONNAIRE. THUS, FAILURE TO TIMELY RETURN THE QUESTIONNAIRE AS COMPLETELY AND ACCURATELY AS POSSIBLE MAY RESULT IN SANCTIONS AND/OR OTHER RELIEF AVAILABLE UNDER APPLICABLE FEDERAL RULES.**

**BECAUSE YOUR CLAIM WILL BE EVALUATED IN ACCORDANCE WITH THE TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION, COMPLETION OF THIS QUESTIONNAIRE DOES NOT MEAN THAT YOUR CLAIM WILL EITHER BE ALLOWED OR PAID. TO THE EXTENT YOU ATTACH TO THIS QUESTIONNAIRE DOCUMENTS ALSO NEEDED BY THE TRUST TO PROCESS YOUR CLAIM, SUCH DOCUMENTS WILL BE PROVIDED TO THE TRUST AND YOU WILL NOT NEED TO RESUBMIT THEM.**

## INSTRUCTIONS

### A. GENERAL

1. This Questionnaire refers to any lawsuit that you filed before April 2, 2001 for an "asbestos-related personal injury or wrongful death claim." This term is intended to cover any lawsuit alleging any claim for personal injuries or damages that relates to: (a) exposure to any products or materials containing asbestos that were manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors (or any of their respective past or present affiliates, or any of the predecessors of any of the Debtors or any of their respective past or present affiliates), or (b) exposure to vermiculite mined, milled or processed by the Debtors (or any of their respective past or present affiliates, any of the predecessors of any of the Debtors or any of their predecessors' respective past or present affiliates). It includes claims in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity, or any other theory of law or equity, or admiralty for, relating to, or arising out of, resulting from, or attributable to, directly or indirectly, death, bodily injury, sickness, disease, or other personal injuries or other damages caused, or allegedly caused, directly or indirectly, and arising or allegedly arising, directly or indirectly, from acts or omissions of one or more of the Debtors. It includes all such claims, debts, obligations or liabilities for compensatory damages such as loss of consortium, personal or bodily injury (whether physical, emotional or otherwise), wrongful death, survivorship, proximate, consequential, general, special, and punitive damages.

2. Your Questionnaire will be deemed filed only when it has been received by Rust Consulting Inc , the Claims Processing Agent, via U.S. Mail, Federal Express, United Parcel Service or a similar hand delivery service. A Questionnaire that is submitted by facsimile, telecopy or other electronic transmission will not be accepted and will not be deemed filed.

   Do not send any Questionnaire to the Debtors, counsel for the Debtors, the Future Claimants Representative, the Official Committee of Unsecured Creditors, the Official Committee of Asbestos Personal Injury Claimants, the Official Committee of Asbestos Property Damage Claimants, the Official Committee of Equity Security Holders, or such Committees' counsel. Questionnaires that are filed with or sent to anyone other than Rust Consulting, Inc will be deemed not to have been submitted, and such Questionnaires will not be considered

3. Your completed Questionnaire must (i) be written in English, and (ii) attach relevant supporting materials as instructed further below.

4. All holders of claims described on page i (and as described in further detail in Instruction A (1) above) are required to file this Questionnaire by Jan. 12, 2006. Your Questionnaire will be used in connection with the estimation hearing to be conducted by the Court pursuant to the Estimation Procedures Order (a copy of which is attached as Appendix B).

5. Any subsequent amendment to the Questionnaire will not be considered for any purpose unless received by Jan. 12, 2006.

### B. PART I – Identity of Injured Person and Legal Counsel
Respond to all applicable questions. If you are represented by a lawyer, then in Part I (b), please provide your lawyer's name and the name, telephone number and address of his/her firm. If you are represented by a lawyer, he/she must assist in the completion of this Questionnaire. Also, if you would prefer that the Debtors send any additional materials only to your lawyer, instead of sending such materials to you, then check the box indicating this in Part I (b).

All references to "you" or the like in Parts I through X shall mean the injured person. If the injured person is deceased, then the executor of the person's will (or similar estate representative) must complete this Questionnaire.

### C. PART II – Asbestos-Related Condition(s)
Please indicate all asbestos-related medical conditions for which you have been diagnosed. To complete questions related to injuries, medical diagnoses, and/or conditions, please use the following categories of customarily diagnosed conditions:

- Mesothelioma
- Asbestos-Related Lung Cancer
- Other Cancer (colon, laryngeal, esophageal, pharyngeal, or stomach)
- Clinically Severe Asbestosis
- Asbestosis
- Other Asbestos Disease

If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

Supporting Documents for Diagnosis: This Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that support or conflict with your diagnosis.

X-rays and B-reads: Please attach all x-ray readings and reports. You may, but are not required to, attach chest x-rays The court, however, has ruled that Grace may seek access to chest x-rays upon request.

Pulmonary Function Tests: Please attach all pulmonary function test results, including the actual raw data and all spirometric tracings, on which the results are based.

**D. PART III – Direct Exposure to Grace Asbestos-Containing Products**

In Part III, please provide the requested information for the job and site at which you were exposed to Grace asbestos-containing products. Indicate the dates of exposure to each Grace asbestos-containing product. If your exposure was a result of your employment, use the list of occupation and industry codes below to indicate your occupation and the industry in which you worked at each site. If you allege exposure to Grace asbestos-containing products at multiple sites, the Court has ordered that you must complete a separate Part III for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

Attach copies of any and all documents establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the disease.

## Occupation Codes

01. Air conditioning and heating installer/maintenance
02. Asbestos miner
03. Asbestos plant worker/asbestos manufacturing worker
04. Asbestos removal/abatement
05. Asbestos sprayer/spray gun mechanic
06. Assembly line/factory/plant worker
07. Auto mechanic/bodywork/brake repairman
08. Boilermaker
09. Boiler repairman
10. Boiler worker/cleaner/inspector/engineer/installer
11. Building maintenance/building superintendent
12. Brake manufacturer/installer
13. Brick mason/layer/hod carrier
14. Burner operator
15. Carpenter/woodworker/cabinetmaker
16. Chipper
17. Clerical/office worker
18. Construction - general
19. Custodian/janitor in office/residential building
20. Custodian/janitor in plant/manufacturing facility
21. Electrician/inspector/worker
22. Engineer
23. Firefighter
24. Fireman
25. Flooring installer/tile installer/tile mechanic
26. Foundry worker
27. Furnace worker/repairman/installer
28. Glass worker
29. Heavy equipment operator (includes truck, forklift, & crane)
30. Insulator

31. Iron worker
32. Joiner
33. Laborer
34. Longshoreman
35. Machinist/machine operator
36. Millwright/mill worker
37. Mixer/bagger
38. Non-asbestos miner
39. Non-occupational/residential
40. Painter
41. Pipefitter
42. Plasterer
43. Plumber - install/repair
44. Power plant operator
45. Professional (e.g., accountant, architect, physician)
46. Railroad worker/carman/brakeman/machinist/conductor
47. Refinery worker
48. Remover/installer of gaskets
49. Rigger/stevedore/seaman
50. Rubber/tire worker
51. Sandblaster
52. Sheet metal worker/sheet metal mechanic
53. Shipfitter/shipwright/ship builder
54. Shipyard worker (rnd. repair, maintenance)
55. Steamfitter
56. Steelworker
57. Warehouse worker
58. Welder/blacksmith
59. Other

## Industry Codes

001. Asbestos abatement/removal
002. Aerospace/aviation
100. Asbestos mining
101. Automotive
102. Chemical
103. Construction trades
104. Iron/steel
105. Longshore
106. Maritime
107. Military (other than U.S. Navy)
108. Non-asbestos products manufacturing

109. Petrochemical
110. Railroad
111. Shipyard-construction/repair
112. Textile
113. Tire/rubber
114. U.S. Navy
115. Utilities
116. Grace asbestos manufacture or milling
117. Non-Grace asbestos manufacture or milling
118. Other

**E. PART IV – Indirect Exposure to Grace Asbestos-Containing Products**

In Part IV, please provide the information requested for any injury alleged to have been caused by exposure to Grace asbestos-containing products through contact/proximity with another injured person. If you allege exposure through contact/proximity with multiple injured persons, please complete a separate Part IV for each injured person. For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.

**F. PART V – Exposure to Non-Grace Asbestos-Containing Products**

In Part V, please provide the requested information for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products. If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate Part V for each party. If exposure was in connection with your employment, use the list of occupation and industry codes in Part III to indicate your occupation and the industry in which you worked. For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

**G. PART VI – Employment History**

In Part VI, please provide the information requested for each industrial job you have held, other than jobs already listed in Parts III or V. Use the list of occupation and industry codes in the instructions to Part III to indicate your occupation and the industry in which you worked for each job. Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.

**H. PART VII – Litigation and Claims Regarding Asbestos and/or Silica**

In Part VII, please describe any lawsuits and/or claims that were filed by you or on your behalf regarding asbestos or silica.

**I. PART VIII – Claims by Dependents or Related Persons**

Part VIII is to be completed only by dependents or related persons (such as spouse or child) of an injured person who sued the Debtors before April 2, 2001 for an asbestos-related personal injury or wrongful death claim against Grace not involving physical injury to him-/herself on account of his/her own exposure. One example of such a claim would be a claim for loss of consortium. If you are asserting such a claim, complete the entire Questionnaire, providing all information and documentation regarding the injured person.

**J. PART IX – Supporting Documentation**

In Part IX, please mark the boxes next to each type of document that you are submitting with this Questionnaire. As indicated in the instructions to Parts II and III, this Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that (a) support or conflict with your diagnosis and/or (b) establish exposure to Grace asbestos-containing products as having a substantial causal role in the development of the medical diagnoses, and/or conditions claimed. Original documents provided to Grace will be returned within a reasonable time after its professionals and experts have reviewed the documents.

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation. Please indicate the documents for which you are seeking reimbursement and attach a receipt for such cost.

**K. PART X – Attestation that Information is True, Accurate and Complete**

By signing Part X, you, the injured person, are attesting and swearing, under penalty of perjury, that, to the best of your knowledge, all of the information in this Questionnaire is true, accurate and complete. If the injured person is deceased, then the executor of the person's will (or similar estate representative) must complete and sign Part X on behalf of the injured person.

The legal representative of the injured person must complete and sign Part X where indicated.

## ▓▓▓▓▓▓▓ ▓ ▓▓▓▓ ▓▓▓▓▓▓▓ ▓▓▓▓▓▓ ▓▓▓ON AND LEGAL COUNSEL

### ▓ GENERAL INFORMATION

1.  Name of Claimant: _____
    First          MI          Last          2. Gender: ☑ Male ☐ Female

3.  Race (for purposes of evaluating Pulmonary Function Test results):... ........... ..... . .. ☑ White Caucasian

    **REDACTED**
    ☐ African American
    ☐ Other

4.  Last Four Digits of Social Security Number: __ __ __ __.        5.  Birth Date:

6.  Mailing Address: _
    Address          City          State Province    Zip Postal Code

7.  Daytime Telephone Number:... ...    . .. ........... ........ .... .. .. .

    **REDACTED**

### ▓ LAWYER'S NAME AND FIRM

1.  Name of Lawyer: _____

2.  Name of Law Firm With Which Lawyer is Affiliated: _____    Chris Parks
                                                                  Chris Parks & Associates
3.  Mailing Address of Firm: _____                              1 Plaza Square, 2ⁿᵈ Floor
                   Address          City                          Port Arthur, Texas 77642          Code
4.  Law Firm's Telephone Number or Lawyer's Direct Line:......    Telephone (409) 985-5000

    ☑ Check this box if you would like the Debtors to send subsequent material relating to your claim to your lawyer, in
      lieu of sending such materials to you

### ▓ CAUSE OF DEATH (IF APPLICABLE)

1.  Is the injured person living or deceased?    ...... ................... .............. .... . .      . ☑ Living ☐ Deceased
    If deceased, date of death:.... ... .............. ....... . ... . . . ........ .... __ __ __ __ __ __ __

2.  If the injured person is deceased, then attach a copy of the death certification to this Questionnaire and complete
    the following:
    Primary Cause of Death (as stated in the Death Certificate): _____

    Contributing Cause of Death (as stated in the Death Certificate): _____

## ▓▓▓▓▓▓▓ ▓ ▓▓▓▓ ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓ CONDITION(S)

Mark the box next to the conditions with which you have been diagnosed and provide all information required in the
instructions to this Questionnaire  If you have been diagnosed with multiple conditions and or if you received diagnoses and
diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis
and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis  For your
convenience, additional copies of Part II are attached as Appendix C to this Questionnaire  *See attached*
*medical records.*

1.  Please check the box next to the condition being alleged:
    ☐ Asbestos-Related Lung Cancer          ☐ Mesothelioma
    ☐ Asbestosis                            ☐ Other Cancer (cancer not related to lung cancer or mesothelioma)
    ☐ Other Asbestos Disease                ☐ Clinically Severe Asbestosis

    a.  **Mesothelioma:**  If alleging Mesothelioma, were you diagnosed with malignant mesothelioma based on the
        following (check all that apply)
        ☐ diagnosis from a pathologist certified by the American Board of Pathology
        ☐ diagnosis from a second pathologist certified by the American Board of Pathology
        ☐ diagnosis and documentation supporting exposure to Grace asbestos-containing products having a substantial
          causal role in the development of the condition
        ☐ other (please specify) _____

I

**b.   Asbestos-Related Lung Cancer:**  If alleging Asbestos-Related Lung Cancer, were you diagnosed with primary lung cancer based on the following (check all that apply):

☐   findings by a pathologist certified by the American Board of Pathology

☐   evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐   evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐   evidence of asbestosis determined by pathology

☐   evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐   evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐   diffuse pleural thickening as defined in the International Labour Organization's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐   a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the lung cancer

☐   other (please specify):_____

**c.   Other Cancer:**

(i)   If alleging Other Cancer, please mark the box(es) next to the applicable primary cancer(s) being alleged:

☐ colon        ☐ pharyngeal        ☐ esophageal        ☐ laryngeal        ☐ stomach cancer

☐ other, please specify: _____

(ii)   Were you diagnosed with the above-indicated cancer based on the following (check all that apply):

☐   findings by a pathologist certified by the American Board of Pathology

☐   evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐   evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐   evidence of asbestosis determined by pathology

☐   a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the cancer

☐   other (please specify): _____

2

## PART II: ASBESTOS-RELATED CONDITION(S) (Continued)

b. **Asbestos-Related Lung Cancer:** If alleging Asbestos-Related Lung Cancer, were you diagnosed with primary lung cancer based on the following (check all that apply):

☐ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ diffuse pleural thickening as defined in the International Labour Organization's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the lung cancer

☐ other (please specify): **SEE ATTACHED MEDICAL RECORDS**

c. **Other Cancer:**

(i) If alleging Other Cancer, please mark the box(es) next to the applicable primary cancer(s) being alleged:

☐ colon   ☐ pharyngeal   ☐ esophageal   ☐ laryngeal   ☐ stomach cancer

☐ other, please specify: _____

(ii) Were you diagnosed with the above-indicated cancer based on the following (check all that apply):

☐ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the cancer

☐ other (please specify): **SEE ATTACHED MEDICAL RECORDS** _____

2

## PART II: ASBESTOS-RELATED CONDITION(S) (Continued)

**d.** **Clinically Severe Asbestosis:** If alleging Clinically Severe Asbestosis, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a second B-reader certified by the National Institute for Occupational Safety and Health

☐ asbestosis determined by pathology

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies*, demonstrating total lung capacity less than 65% predicted

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies*, demonstrating forced vital capacity less than 65% predicted and a FEV1/FVC ratio greater than or equal to 65% predicted

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐ other (please specify): **SEE ATTACHED MEDICAL RECORDS** _____

**e.** **Asbestosis:** If alleging Asbestosis, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ a chest x-ray reading conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a second B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ asbestosis determined by pathology

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies*, demonstrating a FEV1/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐ other (please specify): **SEE ATTACHED MEDICAL RECORDS** _____

3

## PART II: ASBESTOS-RELATED CONDITION(S) (Continued)

f.    **Other Asbestos Disease:** If alleging any asbestos-related injuries, medical diagnoses, and/or conditions other than those above, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ diagnosis determined by pathology

☐ a chest x-ray reading conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading other than those described above

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEV1/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐ a pulmonary function test other than that discussed above

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the condition

☐ a CT Scan or similar testing

☐ a diagnosis other than those above

☐ other (please specify):<u>**SEE ATTACHED MEDICAL RECORDS**</u> _____


[REMAINDER OF PAGE INTENTIONALLY BLANK]


4

**PART II. ASBESTOS-RELATED CONDITION(S) (Continued)**

2.  **Information Regarding Diagnosis**

Date of Diagnosis: ................ ... .... ....... .......................................... ......... SEE ATTACHED MEDICAL RECORDS

Diagnosing Doctor's Name: SEE ATTACHED MEDICAL RECORDS

Diagnosing Doctor's Specialty: SEE ATTACHED MEDICAL RECORDS

Diagnosing Doctor's Mailing Address: SEE ATTACHED MEDICAL RECORDS
    <u>Address</u>

SEE ATTACHED MEDICAL RECORDS
City                                           State/Province                        Zip/Postal Code

Diagnosing Doctor's Daytime Telephone Number: ............ ... ............. SEE ATTACHED MEDICAL RECORDS

With respect to your relationship to the diagnosing doctor, check all applicable boxes:

Was the diagnosing doctor your personal physician?................... .... ...... ....... ......... .. ............. ... ..☐ Yes  ☒ No

Was the diagnosing doctor paid for the diagnostic services that he/she performed?........ .......... .......... ☒ Yes  ☐ No

*If yes, please indicate who paid for the services performed:* LAW FIRM, REIMBURSED BY CLAIMANT

Did you retain counsel in order to receive any of the services performed by the diagnosing doctor?...........☐ Yes  ☒ No

Was the diagnosing doctor referred to you by counsel? ............................ ...... .... .. .....................................☒ Yes  ☐ No

Are you aware of any relationship between the diagnosing doctor and your legal counsel?... ...... ...........☐ Yes  ☒ No

*If yes, please explain.* N/A

Was the diagnosing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the diagnosis? SEE ATTACHED MEDICAL RECORDS. .... ... ... ... .. .. . ... .. .............☐ Yes  ☐ No

Was the diagnosing doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis? SEE ATTACHED MEDICAL RECORDS .............................. ... ... .. .. ... .... .............☐ Yes  ☐ No

Was the diagnosing doctor provided with your complete occupational, medical and smoking history prior to diagnosis? SEE ATTACHED MEDICAL RECORDS ...... ................. ...... ...... ....... .. ...... .. ...... .......☐ Yes  ☐ No

Did the diagnosing doctor perform a physical examination? SEE ATTACHED MEDICAL RECORDS ☐ Yes  ☐ No

Do you currently use tobacco products? ... ............... ... ... ............ ... ... ....... ... ... .. ............................☐ Yes  ☒ No

Have you ever used tobacco products? ............................................... ............. ............ ...............☒ Yes  ☐ No

*If answer to either question is yes, please indicate whether you have regularly used any of the following tobacco products and the dates and frequency with which such products were used:*

☒ **Cigarettes**       Packs Per Day (half pack = .5) 1.0       Start Year 1947   End Year 1956

☐ **Cigars**           Cigars Per Day _____                    Start Year __ __ __ __   End Year __ __ __ __

☐ If Other Tobacco Products, please specify (e.g., chewing tobacco): _____
                       Amount Per Day _____                    Start Year __ __ : __   End Year __ __ : __

Have you ever been diagnosed with chronic obstructive pulmonary disease ("COPD")? ................ .☐ Yes  ☒ No

*If yes, please attach all documents regarding such diagnosis and explain the nature of the diagnosis:*

_____

3.  **Information Regarding Chest X-Ray**

Please check the box next to the applicable location where your chest x-ray was taken (check one):

☐  Mobile laboratory  ☐ Job site  ☐ Union Hall  ☒ Doctor office  ☐ Hospital  ☐ Other: _____

Address where chest x-ray taken: _____
                                          Address

Beaumont                                          TX
City                                           State/Province                        Zip/Postal Code

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

4. Information Regarding Chest X-Ray Reading SEE ATTACHED MEDICAL RECORDS

   Date of Reading: SEE ATTACHED MEDICAL RECORDS ILO score: SEE ATTACHED MEDICAL RECORDS

   Name of Reader: SEE ATTACHED MEDICAL RECORDS

   Reader's Daytime Telephone Number:.... ............................................    SEE ATTACHED MEDICAL RECORDS

   Reader's Mailing Address: SEE ATTACHED MEDICAL RECORDS _____
   <br>Address

   _____
   | City | State/Province | Zip/Postal Code |

   With respect to your relationship to the reader, check all applicable boxes:

   Was the reader paid for the services that he/she performed.. ............ .. -    ... .. ...    .............    ..... ...........☒ Yes ☐ No

   *If yes, please indicate who paid for the services performed:* LAW FIRM, REIMBURSED BY CLAIMANT _____

   Did you retain counsel in order to receive any of the services performed by the reader?........... .... .  ....  ...☐ Yes ☒ No

   Was the reader referred to you by counsel? ....   .. . . ....................    .............   .. ....  . ...........☒ Yes ☐ No

   Are you aware of any relationship between the reader and your legal counsel?.. .............. .    ...  ...........☐ Yes ☒ No

   *If yes, please explain·* _____

   Was the reader certified by the National Institute for Occupational Safety and Health at the time of the reading?

   ..........................................  .. .. ....  .............  ..............................  ................  . ..............  .. ...............☒ Yes ☐ No

   *If the reader is not a certified B-reader, please describe the reader's occupation, specialty, and the method through which the reading was made:* N/A _____

5. Information Regarding Pulmonary Function Test: ......... . Date of Test: SEE ATTACHED MEDICAL RECORDS

   List your height in feet and inches when test given: ...... ... .. .. .......... SEE ATTACHED MEDICAL RECORDS

   List your weight in pounds when test given:    .    .. ................... . SEE ATTACHED MEDICAL RECORDS

   Total Lung Capacity (TLC):........ .. .  ...... ..... ..... ................. ... ..    ........................... . . . _____% of predicted

   Forced Vital Capacity (FVC): .. ........... ..................... ... ......... ..........SEE ATTACHED MEDICAL RECORDS

   FEV1/FVC Ratio: ................ ........... ...................................................SEE ATTACHED MEDICAL RECORDS

   Name of Doctor Performing Test (if applicable): SEE ATTACHED MEDICAL RECORDS

   Doctor's Specialty: SEE ATTACHED MEDICAL RECORDS

   Name of Clinician Performing Test (if applicable): SEE ATTACHED MEDICAL RECORDS

   Testing Doctor or Clinician's Mailing Address: SEE ATTACHED MEDICAL RECORDS _____
   <br>Address

   SEE ATTACHED MEDICAL RECORDS _____
   | City | State/Province | Zip/Postal Code |

   Testing Doctor or Clinician's Daytime Telephone Number:...... .......... .. . SEE ATTACHED MEDICAL RECORDS

   Name of Doctor Interpreting Test: SEE ATTACHED MEDICAL RECORDS

   Doctor's Specialty: SEE ATTACHED MEDICAL RECORDS

   Interpreting Doctor's Mailing Address: SEE ATTACHED MEDICAL RECORDS
   <br>Address

   _____
   | City | State/Province | Zip/Postal Code |

   Interpreting Doctor's Daytime Telephone Number: .................. .. . .....SEE ATTACHED MEDICAL RECORDS

6

PART II:  ASBESTOS-RELATED CONDITION(S) (Continued)

With respect to your relationship to the doctor or clinician who performed the pulmonary function test check all applicable boxes:

If the test was performed by a doctor, was the doctor your personal physician?........................................☐ Yes ☒ No

Was the testing doctor and/or clinician paid for the services that he/she performed? ...............................☒ Yes ☐ No

*If yes, please indicate who paid for the services performed:..* **LAW FIRM, REIMBURSED BY CLAIMANT**

Did you retain counsel in order to receive any of the services performed by the testing doctor or clinician ..☐ Yes ☒ No

Was the testing doctor or clinician referred to you by counsel? ...... .. .. ...... .  ...... ..  .... ......... ....... ......☒ Yes ☐ No

Are you aware of any relationship between either the doctor or clinician and your legal counsel?.............☐ Yes ☒ No

*If yes, please explain:*  **N/A**

Was the testing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the pulmonary function test? **SEE ATTACHED MEDICAL RECORDS**. ..............  ....  ☐ Yes ☐ No

With respect to your relationship to the doctor interpreting the results of the pulmonary function test check all applicable boxes:

Was the doctor your personal physician? ..................................... . . ... ........ ...................... .......☐ Yes ☒ No

Was the doctor paid for the services that he/she performed? .. ..    ...........................................☒ Yes ☐ No

*If yes, please indicate who paid for the services performed:* .... ...........  **LAW FIRM, REIMBURSED BY CLAIMANT**

Did you retain counsel in order to receive any of the services performed by the doctor?.................. .......☐ Yes ☒ No

Was the doctor referred to you by counsel? ..................................................  .. ...............  . ......☒ Yes ☐ No

Are you aware of any relationship between the doctor and your legal counsel? ......... ..   ......... ... .....☐ Yes ☒ No

*If yes, please explain*   **N/A**

Was the doctor interpreting the pulmonary function test results certified as a pulmonologist or internist by the American Board of Internal Medicine at the time the test results were reviewed?

**SEE ATTACHED MEDICAL RECORDS** ................. ... . .. ............... .    ...... .. ............. . ......................... .... .....  ☐

6.  **Information Regarding Pathology Reports:**

Date of Pathology Report:.. .... .......................................... .. ...................... **SEE ATTACHED MEDICAL RECORDS**

**Findings:**    **SEE ATTACHED MEDICAL RECORDS**

**Name of Doctor Issuing Report:  SEE ATTACHED MEDICAL RECORDS**

**Doctor's Specialty:  SEE ATTACHED MEDICAL RECORDS**

**Doctor's Mailing Address:  SEE ATTACHED MEDICAL RECORDS**
                                              Address

| City | State/Province | Zip/Postal Code |
|---|---|---|

**Doctor's Daytime Telephone Number:**...................................................... **SEE ATTACHED MEDICAL RECORDS**

With respect to your relationship to the doctor issuing the pathology report, check all applicable boxes:

Was the doctor your personal physician? ....................................................... . ...................☐ Yes ☐ No

Was the doctor paid for the services that he/she performed? ............ . ,............   . .............................  .. ... ..☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor? .................. ...........☐ Yes ☐ No

Was the doctor referred to you by counsel? .............................  ......................................................☐ Yes ☐ No

Are you aware of any relationship between the doctor and your legal counsel? ........................................ ...☐ Yes ☐ No

*If yes, please explain:* _____

Was the doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis?

... ............  . ... .. .   .............. . .. .. .......... .. ..  . ......... ............ ... ..........☐ Yes ☐ No

**PART II:  ASBESTOS-RELATED CONDITION(S) (Continued)**

7.  With respect to the condition alleged, have you received medical treatment from a doctor for the condition?

..................................................................................................................................................................... ☐ Yes ☒ No

*If yes, please complete the following:*

Name of Treating Doctor: _____

Treating Doctor's Specialty: _____

Treating Doctor's Mailing Address: _____
                                           Address

| City | State/Province | Zip/Postal Code |
|---|---|---|

Treating Doctor's Daytime Telephone number: ............. .... . .............. .. ..( __ __ __ ) __ __ __ - __ __ __

Was the doctor paid for the services that he/she performed?. ............. .. ... ...........   .. ......   .   ... ... ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:*._____

Did you retain counsel in order to receive any of the services performed by the doctor?.. .. .... . .. ☐ Yes ☒ No

[REMAINDER OF PAGE INTENTIONALLY BLANK]

8

## PART III: DIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below for each site at which you allege exposure to Grace asbestos-containing products. If you allege exposure at multiple sites, the Court has ordered that you must complete a separate chart for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked

In the "Nature of Exposure" column, for each job listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure

(a) A worker who personally mixed Grace asbestos-containing products

(b) A worker who personally removed or cut Grace asbestos-containing products

(c) A worker who personally installed Grace asbestos-containing products

(d) A worker at a site where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(e) A worker in a space where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(f) If other, please specify

**Site of Exposure:**

Site Name: __SEE ATTACHED WORK HISTORY__    Location: __SEE ATTACHED WORK HISTORY__

Site Type: ☐ Residence  ☐ Business    Site Owner: __SEE ATTACHED WORK HISTORY__

Employer During Exposure: __SEE ATTACHED WORK HISTORY__    Union of which you were a member during your employment: __SEE ATTACHED WORK HISTORY__

| | Product(s) | Basis for Identification of Each Grace Product | Dates and Frequency of Exposure (hours/day, days/year) | Occupation Code If Code 59, specify. | Industry Code If Code 118, specify. | Was exposure due to working in or around areas where product/was being installed, mixed, removed, or cut? If Yes, please indicate your regular proximity to such areas | Nature of Exposure |
|---|---|---|---|---|---|---|---|
| Job 1 Description. | SEE ATTACHED WORK HISTORY | SEE ATTACHED WORK HISTORY | SEE ATTACHED WORK HISTORY | SEE ATTACHED WORK HISTORY | SEE ATTACHED WORK HISTORY | SEE ATTACHED WORK HISTORY | SEE ATTACHED WORK HISTORY |
| Job 2 Description. | | | | | | | |
| Job 3 Description. | | | | | | | |
| Job 4 Description. | | | | | | | |
| Job 5 Description. | | | | | | | |

## PART IV: INDIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

1. Are you asserting an injury caused by exposure to Grace asbestos-containing products through contact/proximity with another injured person? ........................................................................................... ☐ Yes ☐ No

   *If yes, complete questions 2 through 10 of this section for each injured person through which you allege exposure to Grace asbestos-containing products. For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.*

2. Please indicate the following information regarding the other injured person:

   Name of Other Injured Person: _____ Gender: ☐ Male ☐ Female

   Last Four Digits of Social Security Number: __ __ __ __          Birth Date: __ __ / __ __ / __ __

3. What is your Relationship to Other Injured Person: ................................................☐ Spouse   ☐ Child   ☐ Other

4. Nature of Other Injured Person's Exposure to Grace Asbestos-Containing Products:

   _____

5. Dates Other Injured Person was Exposed to Grace Asbestos-Containing Products:
   From: __ __ / __ __ / __ __ __ __          To: __ __ / __ __ / __ __ __ __

6. Other Injured Person's Basis for Identification of Asbestos-Containing Product as Grace Product:

   _____

7. Has the Other Injured Person filed a lawsuit related to his/her exposure? ...................................☐ Yes ☐ No

   *If yes, please provide caption, case number, file date, and court name for the lawsuit:*

   Caption: _____

   Case Number: _____          File Date: __ __ / __ __ / __ __ __ __

   Court Name: _____

8. Nature of Your Own Exposure to Grace Asbestos-Containing Product:

   _____

9. Dates of Your Own Exposure to Grace Asbestos-Containing Product:
   From: __ __ / __ __ / __ __ __ __          To: __ __ / __ __ / __ __ __ __

10. Your Basis for Identification of Asbestos-Containing Product as Grace Product:

    _____

[REMAINDER OF PAGE INTENTIONALLY BLANK]

10

## PART V: EXPOSURE TO NON-GRACE ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products. If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate chart for each party. For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked

In the "Nature of Exposure" column, for each product listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Non-Grace asbestos-containing products

(b) A worker who personally removed or cut Non-Grace asbestos-containing products

(c) A worker who personally installed Non-Grace asbestos-containing products

(d) A worker at a site where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others

(e) A worker in a space where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others

(f) If other, please specify.

| Party Against which Lawsuit or Claim was Filed: | | Product(s) | Dates and Frequency of Exposure (hours/day, days/year) | Occupation Code If Code 59, specify. | Industry Code If Code 118, specify. | Was exposure due to working in or around areas where product was being installed, mixed, removed, or cut? If Yes, please indicate your regular proximity to such areas | Nature of Exposure |
|---|---|---|---|---|---|---|---|
| Site of Exposure 1 | Job 1 Description: | SEE ATTACHED MEDICAL REPORTS, WORK HISTORY AND PETITION | | | | | |
| Site Name: | | | | | | | |
| Address: | Job 2 Description: | SEE ATTACHED MEDICAL REPORTS, WORK HISTORY AND PETITION | | | | | |
| City and State: | | | | | | | |
| Site Owner: | Job 3 Description: | SEE ATTACHED MEDICAL REPORTS, WORK HISTORY AND PETITION | | | | | |
| Site of Exposure 2 | Job 1 Description. | | | | | | |
| Site Name. | | | | | | | |
| Address: | Job 2 Description: | | | | | | |
| City and State | | | | | | | |
| Site Owner: | Job 3 Description: | | | | | | |
| Site of Exposure 3 | Job 1 Description | | | | | | |
| Site Name: | | | | | | | |
| Address: | Job 2 Description | | | | | | |
| City and State | | | | | | | |
| Site Owner: | Job 3 Description: | | | | | | |

11

## PART VI: EMPLOYMENT HISTORY

Other than jobs listed in Part III or V, please complete this Part VI for all of your prior industrial work experience up to and including your current employment. For each job, include your employer, location of employment, and dates of employment. Only include jobs at which you worked for at least one month. Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.

**Occupation Code:**   SEE ATTACHED WORK HISTORY   If Code 59, specify: _____

**Industry Code:**   SEE ATTACHED WORK HISTORY   If Code 118, specify: _____

**Employer:**   SEE ATTACHED WORK HISTORY

**Beginning of Employment:** SEE ATTACHED WORK HISTORY **End of Employment:** SEE ATTACHED WORK HISTORY

**Location:**   SEE ATTACHED WORK HISTORY
      Address

_____

City                                        State/Province                    Zip Postal Code

**Occupation Code:**   SEE ATTACHED WORK HISTORY   If Code 59, specify: _____

**Industry Code:**   SEE ATTACHED WORK HISTORY   If Code 118, specify: _____

**Employer:**   SEE ATTACHED WORK HISTORY

**Beginning of Employment:** SEE ATTACHED WORK HISTORY **End of Employment:** SEE ATTACHED WORK HISTORY

**Location:**   SEE ATTACHED WORK HISTORY
      Address

_____

City                                        State/Province                    Zip/Postal Code

**Occupation Code:**   SEE ATTACHED WORK HISTORY   If Code 59, specify: _____

**Industry Code:**   SEE ATTACHED WORK HISTORY   If Code 118, specify: _____

**Employer:**   SEE ATTACHED WORK HISTORY

**Beginning of Employment:** SEE ATTACHED WORK HISTORY **End of Employment:** SEE ATTACHED WORK HISTORY

**Location:**   SEE ATTACHED WORK HISTORY
      Address

_____

City                                        State/Province                    Zip/Postal Code

**Occupation Code:**   SEE ATTACHED WORK HISTORY   If Code 59, specify: _____

**Industry Code:**   SEE ATTACHED WORK HISTORY   If Code 118, specify: _____

**Employer:**   SEE ATTACHED WORK HISTORY

**Beginning of Employment:** SEE ATTACHED WORK HISTORY **End of Employment:** SEE ATTACHED WORK HISTORY

**Location:**   SEE ATTACHED WORK HISTORY
      Address

_____

City                                        State/Province                    Zip/Postal Code

12

## PART VII: LITIGATION AND CLAIMS REGARDING ASBESTOS AND/OR SILICA

### LITIGATION

1. Have you ever been a plaintiff in a lawsuit regarding asbestos or silica?................................... □ Yes □ No

   *If yes, please complete the rest of this Part VII(a) for each lawsuit.  For your convenience, additional copies of Part VII are attached as Appendix G to this Questionnaire*

2. Please provide the caption, case number, file date, and court name for the lawsuit you filed:

   Caption:   SEE ATTACHED PETITION

   Case Number: SEE ATTACHED PETITION          File Date: SEE ATTACHED PETITION

   Court Name: SEE ATTACHED PETITION

3. Was Grace a defendant in the lawsuit? ............................................................................. □ Yes □ No

4. Was the lawsuit dismissed against any defendant? ............................................................. □ Yes □ No

   *If yes, please provide the basis for dismissal of the lawsuit against each defendant:*

   _____

   _____

5. Has a judgment or verdict been entered?........................................................................... □ Yes □ No

   *If yes, please indicate verdict amount for each defendant(s):* _____

6. Was a settlement agreement reached in this lawsuit?.......................................................... □ Yes □ No

   *If yes and the settlement was reached on or after April 2, 2001, please indicate the following:*

   a.  Settlement amount for each defendant: _____

   b.  Applicable defendants: _____

   c.  Disease or condition alleged: _____

   d.  Disease or condition settled (if different than disease or condition alleged): _____

7. Were you deposed in this lawsuit? .................................................................................... □ Yes □ No

   *If yes and Grace was not a party in the lawsuit, please attach a copy of your deposition to this Questionnaire.*

### CLAIMS

1. Have you ever asserted a claim regarding asbestos and/or silica, including but not limited to a claim against an asbestos trust (other than a formal lawsuit in court)? .......................................................... □ Yes □ No

   *If yes, please complete the rest of this Part VII(b).  If no, please skip to Part VIII.*

2. Date the claim was submitted:................................................................. __ __ / __ __ / __ __ __ __

3. Person or entity against whom the claim was submitted: _____

4. Description of claim:  _____

5. Was claim settled?  ...................................................................................................... □ Yes □ No

6. Please indicate settlement amount: ...........................................................$_____

7. Was the claim dismissed or otherwise disallowed or not honored? ..................................... □ Yes □ No

   *If yes, provide the basis for dismissal of the claim:* _____

13

## PART VIII: CLAIMS BY DEPENDENTS OR RELATED PERSONS

Name of Dependent or Related Person: N/A                      Gender: ☐ Male ☐ Female

Last Four Digits of Social Security Number: _ _ _ _        Birth Date: _ _ / _ _ / _ _ _ _

Financially Dependent: ........................................................................................☐ Yes ☐ No

Relationship to Injured Party: ☐ Spouse ☐ Child ☐ Other If other, please specify _____

Mailing Address: _____
                 Address

_____
City                          State/Province              Zip Postal Code

Daytime Telephone number: ... .............. ......... ................................ ... . .......( _ _ _ ) _ _ _ - _ _ _ _

## PART IX: SUPPORTING DOCUMENTATION

Please use the checklists below to indicate which documents you are submitting with this form.

**Copies:**
- ☒ Medical records and/or report containing a diagnosis
- ☒ Lung function test results (IF APPLICABLE)
- ☒ Lung function test interpretations (IF APPLICABLE)
- ☒ Pathology reports (IF APPLICABLE)
- ☐ Supporting documentation of exposure to Grace asbestos-containing products
- ☐ Supporting documentation of other asbestos exposure

- ☐ X-rays
- ☐ X-ray reports/interpretations
- ☐ CT scans
- ☐ CT scan reports/interpretations
- ☐ Depositions from lawsuits indicated in Part VII of this Questionnaire
- ☒ Death Certification (IF APPLICABLE)

**Originals:**
- ☐ Medical records and/or report containing a diagnosis
- ☐ Lung function test results
- ☐ Lung function test interpretations
- ☐ Pathology reports
- ☐ Supporting documentation of exposure to Grace asbestos-containing products

- ☐ Supporting documentation of other asbestos exposure
- ☐ X-rays
- ☐ X-ray reports/interpretations
- ☐ CT scans
- ☐ CT scan reports/interpretations
- ☐ Death Certification

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation. Please indicate the documents for which you are seeking reimbursement and attach a receipt for such costs:

## PART X: ATTESTATION THAT INFORMATION IS TRUE AND ACCURATE

The information provided in this Questionnaire must be accurate and truthful. This Questionnaire is an official court document that may be used as evidence in any legal proceeding regarding your Claim. The penalty for presenting a fraudulent Questionnaire is a fine of up to $500,000 or imprisonment for up to five years, or both. 18 U.S.C. §§ 152 & 3571. **TO BE COMPLETED BY THE INJURED PERSON.**

I swear, under penalty of perjury, that, to the best of my knowledge, all of the foregoing information contained in this Questionnaire is true, accurate and complete.

Signature:                                          Date: 01 / 18 / 2006

Please Print Name:

**REDACTED**

```
SSA-1826              ITEMIZED STATEMENT OF EARNINGS          JOB:
VERSION 1984.002 * * *     FOR SSN                    * * *
```

**REDACTED**

```
FROM:  SOCIAL SECURITY ADMINISTRATION
       OFFICE OF CENTRAL RECORDS OPERATIONS
       BALTIMORE, MARYLAND  21235-0000
```

ASBESTOS DEPARTMENT                    NUMBER HOLDER NAME:

PARKER PARKS LLP                          **REDACTED**

```
ONE PLAZA SQUARE
PORT ARTHUR           TX  77642-5513
```

PERIOD REQUESTED    JANUARY 1947  THRU  DECEMBER 1980

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|-------------|-------------|-----------|-------|

```
EMPLOYER NUMBER:  36-1854245
TAYSTEE BAKING CO
919 N MICHIGAN AVE
CHICAGO   IL 00011-0000
```

| 1947 | 50.10 | 60.17 | 40.40 | 10.01 $ | 160.68 |
|------|-------|-------|-------|---------|--------|

```
EMPLOYER NUMBER:  74-0613030
ENTERPRISE CO
BOX 3071
BEAUMONT  TX 77704-0000
```

| 1947 | | | 6.70 | $ | 6.70 |
|------|--|--|------|---|------|

```
EMPLOYER NUMBER:  75-0220140
CUMMER INVESTMENT COMPANY
BOX 218
PARIS  TX 75460-0000
```

| 1947 | | | 138.75 | $ | 138.75 |
|------|--|--|--------|---|--------|

```
EMPLOYER NUMBER:  13-0989425
ABB LUMMUS CREST INC
% CORP PAYROLL SERVICES
PO BOX 42833
HOUSTON  TX 77242-2833
```

| 1952 | 41.60 | | | $ | 41.60 |
|------|-------|--|--|---|-------|

PAGE 001

```
SSA-1826              ITEMIZED STATEMENT OF EARNINGS          JOB:
VERSION 1984.002 * * *      FOR SSN ·             * * *
```

**REDACTED**

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | | TOTAL |
|------|------------|-------------|-------------|-----------|---|-------|

```
EMPLOYER NUMBER:  13-1535805
THE TEXAS COMPANY
135 EAST 42ND STREET
NEW YORK NY 00000-0000
```

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | | TOTAL |
|------|------------|-------------|-------------|-----------|---|-------|
| 1952 | 448.20 | 704.19 | 915.07 | 1,048.32 | $ | 3,115.78 |
| 1953 | 845.95 | 1,044.28 | 948.52 | 761.25 | $ | 3,600.00 |
| 1954 | 998.98 | 1,196.95 | 970.15 | 433.92 | $ | 3,600.00 |
| 1955 | 990.00 | 1,166.40 | 1,002.75 | 1,025.30 | $ | 4,184.45 |
| 1956 | 1,298.58 | 1,120.88 | 1,261.17 | 519.37 | $ | 4,200.00 |
| 1957 | 1,253.25 | 1,116.80 | 1,370.46 | 459.49 | $ | 4,200.00 |
| 1958 | 1,385.34 | 1,210.26 | 1,538.43 | 65.97 | $ | 4,200.00 |
| 1959 | 1,538.48 | 1,301.74 | 1,597.30 | 362.48 | $ | 4,800.00 |
| 1960 | 1,246.22 | 1,252.08 | 1,520.63 | 781.07 | $ | 4,800.00 |

```
EMPLOYER NUMBER:  74-1383447
TEXACO INC AND SUBSIDIARIES
PO BOX 4696
HOUSTON  TX 77210-4696
```

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | | TOTAL |
|------|------------|-------------|-------------|-----------|---|-------|
| 1961 | 1,461.83 | 1,637.63 | 1,486.79 | 213.75 | $ | 4,800.00 |
| 1962 | 1,472.34 | 1,677.08 | 1,452.01 | 198.57 | $ | 4,800.00 |
| 1963 | 1,577.12 | 1,759.16 | 1,463.72 | | $ | 4,800.00 |
| 1964 | 1,521.70 | 1,603.47 | 1,371.98 | 302.85 | $ | 4,800.00 |
| 1965 | 1,611.30 | 1,783.49 | 1,405.21 | | $ | 4,800.00 |
| 1966 | 1,741.45 | 2,157.20 | 2,072.99 | 628.36 | $ | 6,600.00 |
| 1967 | 2,030.32 | 2,007.99 | 2,201.63 | 360.06 | $ | 6,600.00 |
| 1968 | 2,439.22 | 1,964.91 | 2,297.17 | 1,098.70 | $ | 7,800.00 |
| 1969 | 1,404.18 | 2,116.57 | 2,502.06 | 1,777.19 | $ | 7,800.00 |
| 1970 | 2,523.92 | 2,201.30 | 2,784.46 | 290.32 | $ | 7,800.00 |
| 1971 | 2,173.36 | 2,588.60 | 2,997.92 | 40.12 | $ | 7,800.00 |
| 1972 | 2,884.01 | 2,859.65 | 2,824.18 | 432.16 | $ | 9,000.00 |
| 1973 | 2,707.02 | 3,656.26 | 3,244.80 | 1,191.92 | $ | 10,800.00 |
| 1974 | 3,464.74 | 3,991.46 | 3,519.88 | 2,223.92 | $ | 13,200.00 |
| 1975 | 2,389.32 | 4,096.18 | 3,707.00 | 3,907.50 | $ | 14,100.00 |
| 1976 | 4,696.38 | 4,694.30 | 4,131.42 | 1,777.90 | $ | 15,300.00 |
| 1977 | 5,337.38 | 5,623.45 | 5,539.17 | | $ | 16,500.00 |
| 1978 | - | - | - | - | $ | 17,700.00 |
| 1979 | - | - | - | - | $ | 22,900.00 |

PAGE 002

SSA-1826            ITEMIZED STATEMENT OF EARNINGS          JOB:
VERSION 1984.002 * * *       FOR SSN    :              * * *

**REDACTED**

| YEAR | JAN - MARCH | APRIL - JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|--------------|-------------|-----------|-------|
| 1980 | - | - | - | - | $  21,821.76 |

THERE ARE NO OTHER EARNINGS RECORDED UNDER THIS SOCIAL SECURITY
NUMBER FOR THE PERIOD(S) REQUESTED.

EARNINGS FOR THE YEARS AFTER   1998 MAY NOT BE SHOWN, OR ONLY
PARTIALLY SHOWN, BECAUSE THEY MAY NOT YET BE ON OUR RECORDS.

PAGE 003 END

CAUSE NO. *D-162,140*

| | |
|---|---|
| ROY BARKER, ET UX; JESSE<br>ARDOIN, ET UX; BURNEY AUCOIN,<br>ET UX; ROY BIRKELBACH, ET UX;<br>GEORGE BOERSMAN, ET UX; CARL<br>BRADLEY, ET UX; CALVIN BREAUX,<br>ET UX; WINFRED BROCK, ET UX;<br>ALLEN BRYANT, ET UX; KENNETH<br>CARTER, ET UX; ROY CASTILLE,<br>ET UX; JACKSON CLARK, ET UX;<br>JOHN CROCHET, ET UX; GEORGE<br>CROSBY, ET UX; HOWARD DAVIS,<br>ET UX; GERALD DELEON, ET UX;<br>AUGUST DOIRON, ET UX; THOMAS<br>FOURNIER;<br>    JOHN HALLMARK, SR.,<br>ET UX; MARVIN HOGGATT, ET UX;<br>CHARLES HOLYFIELD;<br>JAY CURTIS JAETZOLD and<br>PENNY JAETZOLD, Individually<br>and on behalf of the Estate of<br>FRANK JAETZOLD; JAMES<br>KELLEY, ET UX; DONALD KEY, JR.,<br>ET UX; JOHN MARTIN, ET UX;<br>ROBERT NOLAND, ET UX;<br>TALMADGE PHILLIPS, ET UX;<br>CLEVELANDROMERO; WAYLAND<br>SAMFORD, ET UX; RAYMOND<br>SCHROEDER, ET UX; JAMES<br>STEWART; RAYMOND SUTTLE,<br>ET UX; FRANK WALTERS, ET UX;<br>JOE WEISS, ET UX;<br><br>    Plaintiffs<br><br>VS.<br><br>OWENS-CORNING FIBERGLAS CORP.;<br>PITTSBURGH CORNING<br>CORPORATION; ABLE SUPPLY CO.;<br>AC and S, INC.; A.M.F., INC.;<br>AQUA-CHEM, INC. (d/b/a CLEAVER-<br>BROOKS DIVISION); ARMSTRONG<br>WORLD INDUSTRIES, INC. (successor in<br>interest to Armstrong Cork Company); | IN THE DISTRICT COURT OF<br><br><br><br><br><br><br><br><br><br><br>**REDACTED**<br><br><br><br><br>JEFFERSON COUNTY, TEXAS<br><br><br><br><br><br><br><br><br><br><br><br><br>*136* JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW:

| | | |
|---|---|---|
| Roy D. Barker, Sr. | ss# 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 | D.O.B. 01/30/29, et ux |
| Jessie J. Barker | ss# 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 | D.O.B. 03/08/31 |
| Jesse L. Ardoin | ss# 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 | D.O.B. 01/30/24, et ux |
| Gloria Ardoin | ss# 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 | D.O.B. 12/06/25 |
| Burney M. Aucoin | ss# 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 | D.O.B. 06/23/22, et ux |
| Myra Aucoin | ss# 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 | D.O.B. 01/05/31 |
| Roy Birkelbach | ss# 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 | D.O.B. 01/03/22, et ux |
| Elva Birkelbach | ss# 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 | D.O.B. 01/06/27 |
| George Boersman | ss# 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 | D.O.B. 12/27/08, et ux |
| Willie F. Boersman | ss# 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 | D.O.B. 08/19/25 |
| Carl R. Bradley | ss# 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 | D.O.B. 12/03/21, et ux |
| Marie Bradley | ss# 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 | D.O.B. 06/30/26 |
| Calvin J. Breaux | ss#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 | D.O.B. 03/22/34, et ux |
| Suzanne Breaux | ss# 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 | D.O.B. 07/02/34 |
| Winfred Brock | ss# 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 | D.O.B 06/23/31, et ux |
| Effie Brock | ss# 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 | D.O.B. 06/29/33 |
| Allen H. Bryant | ss# 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 | D.O.B. 10/23/22, et ux |
| Agnes Bryant | ss# 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 | D.O.B. 08/14/32 |
| Kenneth Carter | ss# 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 | D.O.B. 03/16/41, et ux |
| Peggy Carter | ss# 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 | D.O.B. 12/01/49 |
| Roy J. Castille | ss# 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 | D.O.B. 07/22/28, et ux |
| Janella Castille | ss# 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 | D.O.B. 01/28/31 |
| Jackson Clark | ss# 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 | D.O.B.09/03/17, et ux |
| Joyce Clark | ss# 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 | D.O.B. 02/10/28 |
| John L. Crochet, Sr. | ss# 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 | D.O.B. 05/13/21 |
| George T. Crosby | ss# 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 | D.O.B. 06/06/10, et ux |
| Dorothy Crosby | ss# 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 | D.O.B. 12/30/19 |
| Howard M. Davis | ss# 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 | D.O.B. 01/10/46, et ux |
| Linda Davis | ss# 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 | D.O.B. 08/01/47 |
| Gerald A. DeLeon | ss# 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 | D.O.B. 11/12/46, et ux |
| Maria DeLeon | ss# 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 | D.O.B. 11/04/47 |
| August A. Doiron | ss# 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 | D.O.B. 01/09/27, et ux |
| Juanita Doiron | ss# 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 | D.O.B. 11/12/30 |
| Thomas J. Fournier | ss# 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 | D.O.B. 03/21/22 |

REDACTED

| | | |
|---|---|---|
| John P. Hallmark, Sr. | ss# 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 | D.O.B. 05/23/47, et ux |
| Linda Hallmark | ss# 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 | D.O.B. 10/23/47 |
| Marvin L. Hoggatt | ss# 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 | D.O.B. 04/07/31, et ux |
| Martha Hoggatt | ss# 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 | D.O.B. 03/14/38 |
| Charles Holyfield | ss# 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 | D.O.B. 01/15/35 |

Jay Jaetzold and Penny Jatezold, Individually and on behalf of the Estate of

| | | |
|---|---|---|
| Frank Jaetzold | ss# 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 | D.O.B. 10/18/16 |
| James A. Kelley | ss# 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 | D.O.B. 02/24/24, et ux |
| Benni Jo Kelley | ss# 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 | D.O.B. 05/08/26 |
| Donald Key, Jr. | ss# 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 | D.O.B. 08/05/25, et ux |
| Betty Key | ss# 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 | D.O.B. 02/19/28 |
| John Martin | ss# 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 | D.O.B. 04/08/21, et ux |
| Martha Martin | ss# 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 | D.O.B. 08/09/21 |
| Robert Noland | ss# 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 | D.O.B. 02/26/47, et ux |
| Debra J. Noland | ss# 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 | D.O.B. 01/11/56 |
| Talmadge C. Phillips | ss# 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 | D.O.B. 10/28/15, et ux |
| Grace Phillips | ss# 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 | D.O.B. 02/26/17 |
| Cleveland Romero | ss# 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 | D.O.B. 03/07/23 |
| Wayland Samford | ss# 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 | D.O.B. 09/29/39, et ux |
| Jeanette Samford | ss# 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 | D.O.B. 01/16/32 |
| Raymond Schroeder | ss# 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 | D.O.B. 11/18/29, et ux |
| Wyvon Schroeder | ss# 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 | D.O.B. 07/02/30 |
| James N. Stewart | ss# 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 | D.O.B. 10/15/33 |
| Raymond Suttle | ss# 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 | D.O.B. 03/05/17, et ux |
| Louise Suttle | ss# 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 | D.O.B. 08/07/20 |
| Frank Walters | ss# 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 | D.O.B. 05/08/24, et ux |
| Lou B. Walters | ss# 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 | D.O.B. 03/30/30 |
| Joe H. Weiss | ss# 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 | D.O.B. 05/13/45, et ux |
| Mary Weiss | ss# 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 | D.O.B. 05/09/46 |

hereinafter referred to as plaintiffs complaining of:

1.  OWENS CORNING FIBERGLAS is a Delaware corporation and may be served through its agent for service, C. T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

2.  ABLE SUPPLY COMPANY, a corporation organized and existing under and by virtue of laws of the State of Texas, with an agent for service in the State of Texas, to-wit: Thomas J. Daubner, Houston TX, 77001.

3.  ACandS, INC., a corporation organized and existing under and by virtue of the laws of the State of Delaware, with an agent for service in the State of Texas, to-wit: C. T. Corporation System, 350 St. Paul Street, Dallas, Texas 75201

4.  A. M. F. INCORPORATED (successor in interest to B & B Engineering & Supply Co.), corporation organized and existing under and by virtue of the laws of the State of New Jersey with an agent for service in the State of Minnesota, to-wit: 100 South Fifth Street, Minneapolis, Minnesota 55402.

5.  AQUA-CHEM, INC. (d/b/a CLEAVER-BROOKS DIVISION) has at all times relevant to this litigation conducted business in the State of Texas, but no longer maintains a registered agent for service of process in this State. Therefore it is hereby requested that service of citation be issued and that this defendant be served by serving the Secretary of State of the State of Texas who shall then forward a copy to AQUA-CHEM, INC, at its home office at 7800 N. 113th Street, Milwaukee, Wisconsin, 53224-3136.

6.  ARMSTRONG WORLD INDUSTRIES, INC. (successor in interest to Armstrong Cork Company), a corporation organized and existing under and by virtue of the laws of the State of Delaware, with an agent for service in the State of Texas, to-wit: C. T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

### GEORGE V. ZUZUKIN, M.D., PH.D.
DIAGNOSTIC AND INTERNAL MEDICINE CLINIC, P.A.

## HISTORY AND PHYSICAL EXAM/PFT

PATIENT NAME:
SOCIAL SECURITY NUMBER:
DOB:
DATE OF EXAM:             02-18-00             **REDACTED**

**HISTORY:**                          is a 69-year-old man from Nederland, Texas, who
received a medical evaluation on February 18, 2000. This evaluation included a physical
examination, a review of current medical problems, and an assessment of any diseases
related to a history of exposure to asbestos. He retired in 1994.

            is a rather healthy man and only takes medications for arthritis; Celebrex
and Vicodin. He had a left knee replacement and has chronic back pain. He has never
smoked.
        **REDACTED**

**OCCUPATIONAL HISTORY:** He joined the U. S. Marine Corp in 1947. He was on
ships and was exposed to asbestos insulation. On and off direct contact with asbestos
occurred when the patient began working for Texaco in 1952. For the next 40 years he
worked at the same plant starting as a laborer, then operator, and later was promoted to
supervisor. As a laborer and operator he was exposed to asbestos working around
insulators and removing insulation himself during shutdowns. For several years he
operated machines where asbestos powder was mixed for insulation mud. No protection
was used.

**REVIEW OF SYSTEMS:** Review of systems indicates that the patient denies any
shortness of breath or cough. He feels rather well.
        **REDACTED**

**PHYSICAL EXAM:**                    is 5'9" tall, and weighs 201 pounds. Blood
pressure: 130/80; Pulse: 68; Respiratory: 18. HEENT: Unremarkable; NECK:
Veins are flat, no carotid bruits, thyroid was not palpable; LUNGS: Clear breath sounds
bilaterally without wheezing or rales; CARDIOVASCULAR: Regular heart sounds, no
audible murmurs or gallops; ABDOMINAL: Normal bowel sounds, no organomegaly,
no tenderness to deep palpation; EXTREMITIES: Good peripheral pulses, no evidence
of peripheral edema, no cyanosis, no clubbing; NEUROLOGICAL: Intact.

CONTINUED

PAGE 2

**REDACTED**

**PFTs:** The pulmonary function test was normal.

**CHEST X-RAY:** The chest x-ray findings reveal evidence of bilateral interstitial fibrosis.

**CONCLUSION: Mr.**          is a 69-year-old man who has a reliable history of exposure to asbestos. He has appropriate time interval between exposure and detection of asbestosis. His chest radiographs show evidence of bilateral interstitial fibrosis. It is my medical opinion that        has pulmonary asbestosis and a causal relationship exists between asbestos exposure and asbestosis.

**REDACTED**

GEORGE V. ZUZUKIN, M.D., PH.D./H-P,PFT/407

● **GEORGE V. ZUZUKIN M.D., Ph.D.**
Internal Medicine

●

ID:
Badge#:
Name:
Company:        X
Location:
Department:
Smoker:         X

**REDACTED**

Gender:     M
Race:       Caucasian
DOB:
Tst Age:    69 [Yrs]
Tst Ht:     69 [in]
Tst Wgt:    201 [lbs]
Session:    50

Calibration date: 02/18/2000  Hose#         Temp: 26.0 C.   BP: 760 mmHg  BTPS Factor: 1.0676
Normals Used: Crapo-1981  Interpretation algorithm: Hankinson-1998   RA Factor: 1.00
Spirometer: SensorMedics 922,   ID (Serial#): WYI01390  GMI Version: 2.27

Pulmonary Function Overview Report 02/18/2000 11:21:09 AM

|          |     | Observed | Pred | %Pred  |
|----------|-----|----------|------|--------|
| FVC      | L   | 3.77     | 4.39 | 86.0%  |
| FEV1     | L   | 3.24     | 3.38 | 95.9%  |
| FEV1/FVC%| %   | 85.9%    | 77.2%| 111.3% |
| FEF25-75%| L/s | 4.87     | 3.09 | 157.9% |
| PEF      | L/s | 7.09     |      |        |
| FEV6     | L   | 3.77     |      |        |
| FET      | sec | 6.9      |      |        |

Baseline (02/18/2000) FVC:3.77 ( 0.0%); FEV1:3.24 ( 0.0%)

Reproducible Test.  FVC, FEV1 and PEF reproducible.
4 of 4 trials met criteria for acceptable start of expiration; 1 for acceptable plateau.
3 of 4 trials met minimum acceptablity criteria.
1 of 4 trials were deleted.

Session Effort: Maximal, Position: Sitting

The Patient deviated from optimal testing criteria by:
Currently has respiratory symptoms.

The Patient reported signs or symptoms of:
Coughing.  Short of breath.

INTERPRETATION - 02/18/2000 (COM)

Normal
Normal expiratory flows and a normal FVC.

Additional Test Session Comments:

Operator: CSD  Reviewed By:

GEORGE V. ZUZUKIN M.D., Ph.D.
Internal Medicine

| ID: | | Gender: | M |
| Badge#: | | Race: | Caucasian |
| Name: | | DOB: | |
| Company: | X | Tst Age: | 69 [Yrs] |
| Location: | **REDACTED** | Tst Ht: | 69 [in] |
| Department: | | Tst Wgt: | 201 [lbs] |
| Smoker: | X | Session: | 50 |

Calibration date: 02/18/2000  Hose#         Temp: 26.0 C   BP: 760 mmHg  BTPS Factor: 1.0676
Normals Used: Crapo-1981  Interpretation algorithm: Hankinson-1998   RA Factor: 1.00
Spirometer: SensorMedics 922,  ID (Serial#): WYIO1390  OMI Version: 2.27

Pulmonary Function Detail Report 02/18/2000 11:21:09 AM

| Test | Time | FVC L | %Vary | FEV1 L | %Vary | FEV1/FVC% | | FEF25-75% L/s | PEF L/s | | FET s | Vext% | 123456 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 11:16 A | 3.29 | 74.9% | 3.08 | 91.0% | 93.6 | 121.3% | 6.29 | 203.9% | 7.09 | 3.42 | 4.5% | |
| 2 | 11:18 A | 3.68 | 83.9% | 3.15 | 93.2% | 85.6 | 110.8% | 4.83 | 156.4% | 6.52 | 10.86 | 2.9% | |
| 3 | 11:20 A | 3.77 | 86.0% | 3.24 | 95.9% | 85.9 | 111.3% | 4.87 | 157.9% | 5.82 | 6.92 | 3.6% | |
| | 11:21 A | 0.22 | 5.1% | -0.06 | -1.9% | -28.4 | -36.8% | 0.25 | 7.9% | 1.58 | 7.26 | 4.5% | |

| # | FVC | ml | %Vary | FEV1 | ml | %Vary | PEF | ml/s | %Vary | ACC 123456 |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 3.29 | 487 | 12.9 | 3.08 | 165 | 5.1 | 7.09 | 0 | BEST | |
| 2 | 3.68 | 91 | 2.4 | 3.15 | 92 | 2.8 | 6.52 | 565 | 8.0 | |
| 3 | 3.77 | 0 | BEST | 3.24 | 0 | BEST | 5.82 | 1265 | 17.8 | |
| | 0.22 | 3552 | 94.1 | -0.06 | 3306 | 101.9 | 1.58 | 5508 | 77.7 | |

Acceptability columns:
■ - Test Acceptable
□ - Test not acceptable
■ - Operator Overrode FC
✕ - Deleted Curve

1: Time to Peak Flow too Large
2: Low Peak Flow
3: FET < 6 seconds
4: No ATS Plateau
5: Cough
6: Back Extrapolated Exceeded.

FVC w/in 200 ml
FEV1 w/in 200 ml
PEF w/in 20 percent

Operator: CSD



ID
DOB
69"    201 lbs  M  C

Name:
Date: 02/18/2000
Session: 50

**REDACTED**

69 yrs

|          | Actual     | Pred    | %Pred  |
|----------|-----------|---------|--------|
| FVC      : | 3.77L    | 4.39L   | 86.0%  |
| FEV1     : | 3.24L    | 3.38L   | 95.9%  |
| Ratio    : | 85.9%    |         | 111.3% |
| PEF      : | 7.09L/s  |         |        |
| FEF25-75%: | 4.87L/s  | 3.09L/s | 157.9% |
| Vext     : | 3.60%    |         |        |

Volume (L - BTPS)

Time (sec)

Flow (L/s - BTPS)

Volume (L -BTPS)

——— Best Curve
——— Deleted Curve

# PHILLIP H. LUCAS, M.D.

### RADIOLOGY   INTERNAL MEDICINE   NIOSH B-READER

220 Winged Foot Circle
Jackson, Mississippi 39211
(601) 957-2252  Fax (601) 957-6912

REDACTED

PA and lateral chest radiographs dated 01/20/98 were evaluated for the presence and classification of pneumoconiosis, utilizing the ILO (1980) Guidelines.

The film quality is 2, secondary to underpenetration of the edges.  The heart, mediastinum and pulmonary vasculature are normal.   Irregular interstitial opacities are observed in both mid and lower lung zones, the size and shape of which are classified as t/t and the profusion is 1/0.  The pleural surfaces are normal and no other significant defects are found.

**OPINION:**

Bilateral interstitial fibrotic changes consistent with asbestosis in a patient who has had an adequate exposure history and latent period.

Phillip H. Lucas, M.D.

PHL/br

02/27/98

# PHILLIP H. LUCAS, M.

### RADIOLOGY • INTERNAL MEDICINE • NIOSH B-READER

220 Winged Foot Circle
Jackson, Mississippi 39211
(601) 957-2262 • Fax (601) 957-6912

**REDACTED**

WORKER'S Social Security Number      TYPE OF READING

TYPE OF READING: A [X] P

DATE OF READING: MONTH [0] [2] DAY [2] [6] YR [9] [8]

| 1A. DATE OF X-RAY | 1B. FILM QUALITY | 1C. IS FILM COMPLETELY NEGATIVE? |
|---|---|---|
| MONTH [0] [1] DAY [3] [0] YR [6] [8] | 1 [X] 3 Ur  If Not Grade 1 Give Reason: *lightedges* | YES [ ] Proceed to Section 5    NO [X] Proceed to Section 2 |

| 2A. ANY PARENCHYMAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS? | YES [X] COMPLETE 2B and 2C | NO [ ] | PROCEED TO SECTION 3 |
|---|---|---|---|

**2B. SMALL OPACITIES**

a. SHAPE/SIZE

| | PRIMARY | SECONDARY |
|---|---|---|
| | p [ ] s [X] | p [ ] s [X] |
| | q [X] t [ ] | q [X] t [ ] |
| | r [ ] u [ ] | r [ ] u [ ] |

b. ZONES

| [X] | [X] |
|---|---|
| [X] | [X] |
| [X] | [X] |
| R | L |

c. PROFUSION

| 0/- | 0/0 | 0/1 |
|---|---|---|
| 1/0 | 1/1 | 1/2 |
| 2/1 | 2/2 | 2/3 |
| 3/2 | 3/3 | 3/+ |

**2C. LARGE OPACITIES**

SIZE [X] 0 A B C

PROCEED TO SECTION 3

| 3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS? | YES [ ] COMPLETE 3B, 3C and 3D | NO [ ] | PROCEED TO SECTION 4 |
|---|---|---|---|

**3B. PLEURAL THICKENING**

a. DIAPHRAGM (plaque)

SITE [ ] 0 R L

b. COSTOPHRENIC ANGLE

SITE [ ] 0 R L

**3C. PLEURAL THICKENING ... Chest Wall**

a. CIRCUMSCRIBED (plaque)

| | SITE | 0 | R | | SITE | 0 | L |
|---|---|---|---|---|---|---|---|
| IN PROFILE i. WIDTH | | 0 A B C | | | | 0 A B C | |
| ii. EXTENT | | 0 1 2 3 | | | | 0 1 2 3 | |
| FACE ON iii. EXTENT | | 0 1 2 3 | | | | 0 1 2 3 | |

b. DIFFUSE

| | SITE | 0 | R | | SITE | 0 | L |
|---|---|---|---|---|---|---|---|
| IN PROFILE i. WIDTH | | 0 A B C | | | | 0 A B C | |
| ii. EXTENT | | 0 1 2 3 | | | | 0 1 2 3 | |
| FACE ON iii. EXTENT | | 0 1 2 3 | | | | 0 1 2 3 | |

**3D. PLEURAL CALCIFICATION**

SITE [ ] 0 R  EXTENT

| | | |
|---|---|---|
| a. DIAPHRAGM | 0 1 2 3 |
| b. WALL | 0 1 2 3 |
| c. OTHER SITES | 0 1 2 3 |

SITE 0 L  EXTENT

| | | |
|---|---|---|
| a. DIAPHRAGM | 0 1 2 3 |
| b. WALL | 0 1 2 3 |
| c. OTHER SITES | 0 1 2 3 |

PROCEED TO SECTION 4

| 4A. ANY OTHER ABNORMALITIES? | YES [ ] COMPLETE 4B and 4C | NO [X] | PROCEED TO SECTION 5 |
|---|---|---|---|

**4B. OTHER SYMBOLS (OBLIGATORY)**

| 0 | ax | bu | ca | cn | co | cp | cv | di | ef | em | es | fr | hi | ho | id | ih | kl | cr | px | rp | tb |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Report items which may be of present clinical significance in this section.

SPECIFY od.i [OD] _____

Date Personal Physician notified?

MONTH [ ] DAY [ ] YR [ ]

**4C. OTHER COMMENTS**

_____
_____
_____
_____

SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 4C  YES | NO

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: | ) | Chapter 11 |
|  | ) |  |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-01139 (JKF) |
| Debtors. | ) | Jointly Administered |
|  | ) |  |
|  | ) |  |

REDACTED

### GENERAL OBJECTIONS TO CLAIMANT DISCOVERY QUESTIONNAIRE

("Claimant") hereby makes the following general objections to the W.R. Grace Asbestos Personal Injury Questionnaire (the "Discovery Questionnaire"):

1.    Pursuant to Federal Rule of Civil Procedure 26(b)(4)(B), Claimant objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. Without limiting the foregoing, Claimant objects to the following provisions of the Discovery Questionnaire as violative of Fed. R. Civ. P. 26(b)(4)(B):

(a)    Claimant objects to Section C of the Instructions to the extent that it requests the completion of Part II of the Discovery Questionnaire "if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors."

(b)    Claimant objects to Section C of the Instructions to the extent that it requests the production of "any and all documents" that "support or conflict with your diagnosis."

(c)    Claimant objects to Section C of the Instructions to the extent that it requests the production of "all x-ray readings and reports."

(d)    Claimant objects to Section C of the Instructions to the extent that it requests the production of "all pulmonary function test results, including the raw data and all spirometric tracings, on which the results are based."

(e)    Claimant objects to Section J of the Instructions to the extent that it requests the production of "any and all documents" that "support or conflict with your diagnosis."

(f)    Claimant objects to Part II of the Discovery Questionnaire to the extent that it requests disclosure of "diagnoses and diagnostic tests" by "multiple doctors" concerning "previous or subsequent diagnoses or diagnostic tests that change or conflict with the original diagnoses." Claimant urges this objection with regard to all "conditions" for which disclosure is requested.

2.    Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of any privileged communication between Claimant, and/or a representative of Claimant, and any attorney for Claimant, and/or a representative of any attorney for Claimant. In

1

addition, pursuant to Federal Rule of Civil Procedure 26(b)(3), Claimant objects to the Discovery Questionnaire to the extent that it seeks disclosure of the work product of any attorney for Claimant, including but not limited to the mental impressions, conclusions, opinions or legal theories of any attorney or other representative of Claimant. Specifically, and without limiting the foregoing, Claimant objects to the following provisions of the Discovery Questionnaire as violative of the attorney-client communication and/or attorney work product privileges:

     (a)    Claimant objects to Part II of the Discovery Questionnaire to the extent that it asks if Claimant "retained counsel in order to receive any of the services performed by the diagnosing doctor."

     (b)    Claimant objects to Part II of the Discovery Questionnaire to the extent that it asks if "the diagnosing doctor was referred to you by counsel."

     (c)    Claimant objects to Part II of the Discovery Questionnaire to the extent that it asks if Claimant is "aware of any relationship between the diagnosing doctor and your legal counsel" unless Claimant's knowledge was obtained other than through communication with Claimant's legal counsel and/or his/her representative.

     (d)    These objections are urged with regard to each instance that the above questions are asked in sections 2, 3, 4, 5, 6 and 7 of Part II of the Discovery Questionnaire.

     3.    Claimant further objects to Part VII the Discovery Questionnaire to the extent that it seeks disclosure of information relating to litigation and claims regarding silica as irrelevant to the issues concerning Claimant's asbestos claim against W.R. Grace & Co. and or its affiliated debtors.

     4.    Claimant further objects to Section a.6 of Part VII of the Discovery Questionnaire to the extent that it seeks disclosure of settlements reached with other defendants that are subject to binding confidentiality agreements.

     5.    Claimant further objects to providing the information sought in Part I, Part II, Part III, Part IV, Part V, Part VI, Part VII, Part VIII and Part IX pursuant to Federal Rule of Civil Procedure 26(b)(2)(i) on the basis that this information is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive, because it has previously been provided. A lawsuit against various asbestos manufacturers was filed by claimant in the state of Texas. Pursuant to the Master Asbestos Standing Order governing discovery that was entered by the Court, the claimant provided the requested information to all defendants. The debtor was either a party to the suit at the time the discovery was produced or has the ability to gather the information.

     6.    Claimant further objects to the Discovery Questionnaire pursuant to Federal Rule of Civil Procedure 26 (b)(2)(iii) to the extent that the burden and expense imposed upon the law firm of Chris Parks & Associates and each of its' clients in responding to this questionnaire outweighs its likely benefit, taking into account the needs of this case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Specifically, to fully answer all questions and provide all responsive documents for a single client to one questionnaire, the most experienced Certified Legal Assistant at Chris Parks & Associates (who is also a Registered Respiratory Therapist) spent 4.5 hours searching one client's file for different information, making phone calls, looking up addresses, running database queries, making copies of form pages, reviewing instructions, etc. In this amount of time, she completed all sections except Part III (exposure to Grace products chart), Part V (exposure to non-Grace products chart) and Part VI (employment history other than those listed in Parts III and V.

To complete sections III, V and VI would have taken an additional three or four hours. This particular client worked at a small number of job sites over his working life. For clients with a large number of work sites, the questionnaire would have taken even longer. Parts III and V would be especially difficult since Part III requires a separate page for each job site and Part V requires a separate page for each Defendant in each client's lawsuit and there can be anywhere from 1 to 150 Defendants in a given suit.

Therefore, it would take approximately nine hours of time from our best, most experienced staff member and certainly more from our less experienced staff. Allotting only ten hours per questionnaire to our 1,060 W.R. Grace claimants, our firm would have to spend 10,600 hours to respond to these Questionnaires. Additionally, each of our clients would have to spend additional time searching for additional information, making phone calls, searching for addresses, etc. All this time would be spent with absolutely no regard for whether or not any client would later be eligible to file a claim in this bankruptcy. Even assuming the client is later deemed qualified, the average payout in past bankruptcies has rarely exceeded $5,000.00 for a non-malignant claim.

Over 25% of our clients are deceased and, of the living clients, more than half are over the age of 70. Few can swear they worked directly with Grace products or name any of the Grace products they worked with over 30 years ago, yet most worked at recognized Grace sites in trades which exposed them to Grace products. (Grace products were at most of our local refineries and chemical plants and Grace settled with several local firms in the past paying those who worked at these locations. See Docket No. 9604, Response and Objection of Reaud, Morgan & Quinn, Inc. In Opposition to Debtors' Emergency Motion for Leave to Take Discovery of Claimants' Attorneys and Exhibit "A," the Settlement Agreement attached thereto which refers to a list of "Agreed-Exposure Plants.")[1] Asking an 80 year old man or his widow to spend hours searching his records or to sit with our staff for hours with no assurance he will even qualify to file a claim is, based upon our experience, incredibly burdensome and usually results in the client giving up rather than providing the information. Our clients believe the amount in controversy for them is anywhere from zero to a few thousand dollars. Given this and their usually limited resources, we have been unsuccessful in the past getting responses to detailed questions even when posed during in-office interviews or depositions.

---

[1] For a complete copy of the Settlement Agreement which includes a list of "Agreed-Exposure Plants," see Docket No. 40 in *W.R. Grace & Co -Conn v. National Union Fire Insurance Company of Pittsburgh, PA v Reaud, Morgan & Quinn, Inc. and Environmental Litigation Group*, Adversary No. 02-01657 (Bankr.D.Del 2002)

3

Since "the parties resources" are to be considered when determining whether the burden and expense of discovery outweighs the benefit, it is relevant to note that our firm employs three attorneys and four legal assistants. We have explained to our clients that we will continue to work on their asbestos files as long as it makes economic sense to do so. Since Hurricane Rita closed our office in part of September and October, 2005, we have worked full time trying to keep our asbestos files open in light of the recent changes in Texas law. Because of the new Texas asbestos law, none of our non-malignant clients have a realistic chance of ever having their claims tried in a court of law and they are aware of this fact. The only available future compensation to our non-malignant clients (or income from our asbestos files) will come from current receivables which accumulated before the change in Texas law last fall and future bankruptcies. Because of this stark financial reality, our clients individually and our firm staff collectively cannot reasonably expend 10,600+ hours completing a questionnaire for a bankruptcy for which they may never qualify. (Assuming a legal assistant works 2,000 hours a year, it would have taken ten legal assistants working full time over six months to complete these Questionnaires, meaning we would have had to hire six more legal assistants.)

Despite these burdens, our firm spent hundreds of hours and each client who has chosen to do so has responded to the best of their ability to the attached Questionnaire subject to our objections.

7.    These general objections are made in addition to, and without waiver of, any specific objections contained within the responses to the Discovery Questionnaire itself. This covering sheet is intended to be, and is hereby, incorporated into the Discovery Questionnaire as if repeated therein verbatim in full.

Respectfully submitted,

Chris Parks

4

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| W. R. GRACE & CO., ET AL. | § | CASE NO. 01-1139-JKF |
| | § | (CHAPTER 11) |
| DEBTOR. | § | |

### AFFIDAVIT

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF JEFFERSON | § |

BEFORE ME, the undersigned authority, on this day personally appeared Regina Youngblood who, upon her oath, deposed and stated as follows:

"My name is Regina Youngblood. I am over eighteen years of age and fully competent in all respects to make this Affidavit. I graduated Magna Cum Laude from Lamar University in Beaumont, Texas in August, 1990, with an Associate of Applied Science in Respiratory Therapy. I graduated Summa Cum Laude from Lamar University in Port Arthur, Texas in May, 1996, with an Associate of Applied Science in Legal Assistant. I became Certified as a Legal Assistant by the National Association of Legal Assistants in August, 1996. I have personal knowledge of the facts recited herein:

I have been a legal assistant with Parker & Parks, L.L.P. and later, Chris Parks & Associates, since our asbestos files were first received from the referring attorneys in early 1998. I have spent many, many hours meeting with our clients and speaking to them by telephone. I can state authoritatively that due to the age and in most cases limited educational experience of our clients, most of whom worked in industrial and construction trades in Southeast Texas over their entire lifetimes, few of them have the ability to remember the specific products they worked with during their career. Furthermore, even when asked a direct question in a face-to-face meeting, it is usually difficult for these men to remember specific information. Asking them to go home and research information or gather additional information, other than the information that we have been able to gather thus far while working with them for many years, usually results in little or no additional factual information being developed. In fact, when faced with difficult, tedious and confusing tasks such as answering the Questionnaire from W.R. Grace, our clients would simply not be capable of completing this questionnaire on their own.

*Page 1*

Additionally, in order to help determine how long it would take for our firm to answer the Questionnaire for our clients, I spent a total of 4.5 hours working on a questionnaire for a single client. It was very time consuming to search the file for different information, make calls, look up addresses, run database queries, make copies of form pages, review instructions, etc. In this amount of time, I completed all sections except Part III (exposure to Grace products chart), Part V (exposure to non-Grace products chart) and Part VI (employment history other than those listed in Parts III and V). I believe it would take at least 3 or 4 hours to complete Parts III, V and VI, and possibly more than that for clients with a large number of job sites. Part V would be especially difficult since a separate page is required for each defendant in each client's lawsuit.

Further Affiant Sayeth Not."

Regina Youngblood

SWORN TO AND SUBSCRIBED before me, the undersigned authority, on this _____ day of _____, 2006.

Notary Public in and for the State of Texas
My commission expires: _____

*Page 2*