IN THE UNITED STATES BANKRUPTCY COURT
FOR DISTRICT OF DELAWARE

IN RE:

W.R. GRACE & CO., *et al.*,       Bankruptcy No. 01-01139 (JKF)
                                           Jointly Administered
       Debtors                                  Chapter 11

Related to Doc. No. 9315, Debtors' Fifteenth Omnibus Objection (Substantive) To Asbestos Property Damage Claims; Doc. No. **10834**, Northeast Minneapolis Residents' Response to Debtors' Fifteenth Omnibus Objection to Claims; Doc. No. **11428**, Debtors' Reply in Support of their Fifteenth Omnibus Objection (Substantive) to Asbestos Property Damage Claims; Doc. No. **11612**, Northeast Minneapolis Residents' Surreply to Debtors' Fifteenth Omnibus Objection to Claims.

### MEMORANDUM OPINION[1]

On September 1, 2005, Debtors W.R. Grace, *et al.*, filed their 15th Omnibus Objection (Substantive) to all 4,002 pending asbestos property damage (PD) claims.[2] Section II of the Objection addressed the 53 non-traditional PD claims now at issue. They were filed by the law firm of Biersdorf & Associates PA ("Biersdorf") for claimants in Minneapolis seeking recovery for alleged "stigma" damage to property (collectively, the "Minneapolis Stigma Claims"). The Minneapolis claimants are residents of a Northeast Minneapolis neighborhood that contains a Superfund site (EPA project #MNN000508056) where, from the 1950s to 1989, Debtors disposed of asbestos-contaminated vermiculite by offering and distributing it throughout the

---

[1]The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

[2]Doc. No. 9315.

1

neighborhood as "free crushed rock." From the year 2000 to the present, the U.S. Environmental Protection Agency ("EPA") inspected over 1600 homes in claimants' neighborhood and remediated over 200 as a result of the contamination and, in 2003, began its "fourth, and likely final, year" of clean up of "outdoor properties in northeast Minneapolis that are contaminated with asbestos-containing vermiculite material."[3]

On October 25, 2005, the Minneapolis Claimants filed a Response to Debtors' Fifteenth Omnibus Objection To Claims.[4] Debtors filed their Reply[5] on December 22, 2005, and Claimants filed a Surreply.[6]

The Minneapolis claimants allege that the "stigma" associated with the contamination of their Northeast Minneapolis neighborhood has caused a diminution in value to their real estate. Citing *Dealers Manufacturing. Co. v. County of Anoka*, 615 N.W.2d 76 (Minn. 2000), claimants argue that stigma loss is a measurable property value loss associated with real estate in proximity to contaminated property and is recoverable under Minnesota law. All of the proofs of claim referred to the lawsuit of *Chase v. W.R. Grace Co.-Conn.*, (Hennepin County File No. 00-

---

[3] "*EPA Starts 4th Year of Northeast Minneapolis Residential Cleanups*," U.S. Environmental Protection Agency, Press Release No. 03-OPA083 (June 9, 2003). http://www.epa.gov/region5/news/news03/03opa083.htm

[4] Doc. No. 10834.

[5] Doc. No. 11428.

[6] Doc. No. 11612.

014792).[7] However, none of the property damage claimants whose claims are at issue assert that their property is contaminated with asbestos.[8]

Debtors object to all 53 Minneapolis Stigma Claims because the claims fail to show that the subject properties are contaminated or otherwise damaged and instead seek damages solely on account of "stigma" associated with the neighborhood where the properties are located. They argue that Minnesota statutes do not recognize an injury for "stigma" or "perception" of injury, and, therefore, that claimants have failed to establish a basis for recoverable damages, an essential element for all property damage claims.[9]

## DISCUSSION

Pursuant to 11 U.S.C. §502(a), a claim or interest, evidenced by a proof of claim filed under §501 "is deemed allowed, unless a party in interest, . . . objects." If an objection is made, the court must determine the allowability of the claim under the applicable standards set forth in §502(b). Section 502(b)(1) requires disallowance of a claim to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such a claim is contingent or unmatured." The validity and

---

[7] Mr. Chase sought, for himself and all others similarly situated, the costs of investigation, soil borings, remediation; the loss in value to property due to contamination; and loss in value due to the ongoing "stigma" caused by the contamination of the properties in the neighborhood.

[8] In fact, a third of these claims expressly state that the claimant is not aware of any asbestos on the property. Some of the claims concede that the EPA has already cleaned up the site at issue, and other claims admit that testing was done by the EPA and no contamination was found. Claim # 5143, filed by an individual property owner, states: "My property was evaluated and cleaned up by the EPA . . . I do not wish to make a claim or file a lawsuit at this time." Doc. No. 9315 at 58, 59.

[9] Doc. No. 11612.

3

legality of claims generally is determined by applicable nonbankruptcy law.[10] Because each of the Minneapolis Stigma Claims was filed with regard to a property located in Minneapolis, Minnesota, this court must determine whether Minnesota law recognizes a property damage claim for an alleged (but unsubstantiated) reduction in property value due to "stigma," where the claimant cannot show that the subject property is contaminated or otherwise damaged. *Butner v. U.S.*, 440 U.S. 48 (1979). If Minnesota law does not recognize such a claim, then there is no basis upon which this court can allow the Minneapolis Stigma Claims. *See In re G.I. Indus. Inc.*, 204 F.3d 1276, 1281 (9th Cir. 2000)("[a] claim cannot be allowed [under section 502(b)(1)] if it is unenforceable under nonbankruptcy law")(citations omitted); *In re Sanford*, 979 F.2d 1511, 1513 (11th Cir. 1992)("a claim against the bankruptcy estate will not be allowed in a bankruptcy proceeding if the same claim would not be enforceable against the debtor outside of bankruptcy").

In their Response and Surreply to Debtors' Fifteenth Omnibus Objection to Claims and at the January 24, 2006, hearing, the only case cited by claimants to support their assertion that a property damage claimant may recover under Minnesota law for unsubstantiated "stigma" damages was *Dealer's Manufacturing. Co. v. County of Anoka*, 615 N.W.2d 76 (Minn. 2000). In *Dealer's*, a real estate taxpayer petitioned a Minnesota tax court for a reduction in the

---

[10]*See In re Eastview Estates II*, 713 F.2d 443 (9th Cir. 1983)(state law determined the legitimacy of claims to receive commissions under a brokerage agreement and the applicability of the attorney fee provision included in the brokerage agreement); *Matter of Ovetsky*, 100 B.R. 115 (Bankr. N.D. Ga. 1989). The validity of a claim is determined by reference to the state law governing the substance of that claim and those state interests are analyzed no differently, absent some federal interest to the contrary, than if the interested parties were not in bankruptcy. *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20 (2000); *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156 (1946), *rehearing denied*, 329 U.S. 833 (1947).

assessment of its contaminated property on the basis that, because the county failed to take into account the stigma effect on the market value of the property, the assessed value exceeded the market value of the property. The property was a manufacturing plant Superfund site with groundwater and soil contamination. Contaminants were still present on the property at the time of the assessment and at the time the lower court decided the motion, which was on appeal, and the clean up project was still on-going. *Id.* at 77. Specifically, the taxpayer argued that, for tax purposes, Minnesota Statute Annotated ("M.S.A.") §273.11, subd. 17 (1998) (entitled "Valuation of Contaminated Properties"),[11] permits a reduction in the assessed value of property greater than the cost of clean up due to stigma stemming from contamination.[12] In interpreting the statute, which requires a reduction of market value for a property "containing contaminants," "not to exceed the cost of a reasonable response action plan. . .," the court held that stigma is not part of "contamination" and may be separately considered in assessing the market value for taxation purposes. *Dealer's, supra,* 615 N.W.2d at 80.

---

[11]That section provides:
> Generally. Except as provided in this section or section 273.17, subdivision 1, all property shall be valued at its market value. . . . The assessor shall take into account the effect on the market value of property of environmental factors in the vicinity of the property.

[12] The provision of the tax code at issue was enacted by the Minnesota legislature to tax the reduction in assessed values of properties caused by certain environmental factors. It is applied to a reduction in market value "that is granted for general ad valorem property tax purposes . . . because of the presence of contaminants." *Dealer's*, 615 N.W.2d at 84 (Page, J., dissenting) (citation omitted). Thus, the question before the court involved a determination of how much of a reduction to the state's tax base would be sanctioned. Its analysis involved the interplay between subdivisions 1 and 17 of §273.11 of Minnesota's tax code. Ultimately, the court reconciled the two distinct sections and determined that the limitation of the reduction of assessed value to the cost of remediation did not apply to stigma under §273.11, sub'd 17. Thus, under §273.11 sub'd 1 (1998), by which the assessor is directed to take into account environmental factors "in the vicinity of the property," stigma could be considered, resulting, in appropriate cases, in a reduction different from the cost of remediation.

The property in question in *Dealer's* was contaminated. Thus, the holding of the case, as noted by the dissent, *see* 615 N.W.2d at 84, is limited to property that is contaminated at the time of assessment. *Dealer's* does not address the issue of whether a claimant may recover "stigma" damages in tort, particularly where no actual contamination is alleged. The case addresses only the interpretation and applicability of a Minnesota tax code provision for tax assessment purposes – it does not address the law governing what a property damage claimant must prove or can recover. The matter at bench does not involve a tax. It does not involve ascertaining the actual fair market value of the properties. In the present case, claimants do not allege that their properties are contaminated. Thus, *Dealer's* is inapposite, and claimants present no case in which stigma is used to calculate damages for an alleged tort.

Debtors cite to several Minnesota cases to outline the appropriate formula for a Minnesota property damage claim and the determination of damages. Minnesota courts allow property damage claims only where the claimant has alleged actual injury or damage to the subject property. *See, e.g., Mayavski v. Bemboom*, 1999 WL 343834 at *1 (Minn.App. June 1, 1999) (designated as "unpublished").[13] Then, once the claimant has established actual injury, an accepted compensation for the tortious injury to property is the lesser of diminution in value or cost of restoration. *See Lawin v. City of Long Prairie*, 355 N.W.2d 764, 767 (Minn.App. 1984). Even then, the claimant bears the burden of proving the amount of diminution caused by the harm, and "[a]n assertion of stigma without corresponding evidence of diminution in value is insufficient proof of damages." *Russell v. Carroll*, 2004 WL 2093555 at *3 (Minn.App., Sept.

---

[13] Unpublished opinions of the Minnesota Court of Appeals are not precedential. Minn. Stat. §480A.08, subd. 3 (1998).

21, 2004)(designated "unpublished"), *review denied* Dec. 22, 2004, citing *Jackson v. Reiling*, 249 N.W.2d 896, 897, *cert. denied* 432 U.S. 906 (1977)(plaintiff cannot recover for damages that are speculative).

While *Russell* may not be a perfect fit for the present issue because it addressed stigma arising from undisclosed defects in property and not environmental contamination, the court's application of the *Jackson* opinion is relevant. The Minnesota Supreme Court in *Jackson* ruled that "damages which are remote and speculative cannot be recovered," 249 N.W.2d at 897, citing its earlier decisions in *Hornblower and Weeks-Hemphill Noyes v. Lazere*, 222 N.W.2d 799 (Minn. 1974), and *Carpenter v. Nelson*, 101 N.W.2d 918 (Minn. 1960).

Courts in other jurisdictions that have faced the specific issue of stigma associated with environmental contamination have analyzed the matter in the same fashion as the Minnesota Supreme Court did in *Jackson* and determined that stigma damages are too remote and speculative to be recoverable. The U.S. District Court for the Western District of New York decided that, when no actual physical damage to a plaintiff's property existed,[14] stigma damages alone were too remote and speculative to be recoverable. *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 71 F.Supp.2d 179, 193 (W.D.N.Y. 1999), *aff'd in part on other grounds*, 216 F.3d 1072 (2d Cir. 2000). The Court of Appeals of Georgia in *Hammond v. City of Warner Robins*, 482 S.E.2d 422, 428 (Ga.App. 1997), similarly found that "stigma to realty, in and of itself, is too remote and speculative to be a damage and is of first impression."[15] The Supreme Court of Ohio and the

---

[14] Here, as noted, actual physical damage to the 53 properties is not alleged as a basis for recovery. *See* note 8 and accompanying text, *supra*.

[15] The court went on to speculate that "the closest area [where the concept of stigma may be applicable] in tort comes under O.C.G.A. §51-9-11, slander to title, which is analogous to a stigma." *Hammond*, 482 S.E.2d at 428.

Court of Appeals of Ohio both held that stigma damages are not recoverable as property damage in the State of Ohio. *See Chance v. BP Chemicals, Inc.*, 670 N.E.2d 985, 989 (Ohio 1996); *Ramirez v. AKZO Nobel Coatings*, 791 N.E.2d 1031, 1032-33 (Ohio App., 2003)("stigma damages cannot be recovered unless there is actual, physical damage to . . . property"). In *Chance* the Supreme Court of Ohio found that the trial court had not abused its discretion when it denied the plaintiffs the opportunity to present evidence of speculative stigma damages. 670 N.E.2d at 993. In *Leaf River Forest Products, Inc. v. Ferguson*, 662 So.2d 648 (Miss. 1995), plaintiffs filed a property damage claim based on the release of dioxin into the Leaf and Pascagoula Rivers. The Supreme Court of Mississippi in *Leaf River* held that "mere stigma, supported by tests showing dioxin contamination no closer than eighty river miles north of the alleged damage, is not sufficient evidence of compensable injury." *Id.* at 664.

We note that the court in *Mehlenbacher, supra*, 71 F.Supp.2d at 182-88, acknowledged, discussed, and/or distinguished numerous stigma cases, including those similar to *Dealer's*, that address the effect on valuation of "stigma" related to contaminated property in the context of tax assessment. "Most of the cases discussing such damages involve condemnation or tax proceedings, where the only real issue is the actual market value of the property." *Mehlenbacher*, 71 F.Supp.2d at 182. The court ultimately decided that, despite the aforementioned tax cases, damages for stigma claims are not compensable in tort, stating:

> It is clear, therefore, that the widely accepted if not universal view among the courts in this country is that causing the value of another's property to diminish is not in and of itself a basis for tort liability. Something more – physical invasion or damage, or unreasonable interference with that person's use and enjoyment of the property – is required.

8

*Id.* at 188. *See also, Good Fund, Ltd.-1972 v. Church*, 540 F.Supp. 519, 535 (D. Colo. 1982), *reversed on other grounds*, 703 F.2d 464 (10th Cir. 1983)(the kind of fear presented is a public reaction which is conjectural, transitory, and ephemeral; no authority to establish a tort based on creation of fear without physical damage).[16]

**Conclusion**

Claimants failed to introduce any evidence suggesting that Minnesota law would permit a property owner to pursue a claim solely for stigma to property. *Jackson v. Reiling*, 249 N.W.2d 896 (Minn. 1977), establishes that no claim is compensable when it involves remote and

---

[16] In a case involving allegations of diminution in property value of plaintiffs' homes due to proximity to a contaminated railroad yard and presence of PCB's on their land, the Court of Appeals for the Third Circuit projected what it thought the Pennsylvania law regarding stigma damages would be:
> where (1) defendants have caused some (temporary) physical damage to plaintiffs' property; (2) plaintiffs demonstrate that repair of this damage will not restore the value of the property to its prior level; and (3) plaintiffs show that there is some ongoing risk to their land, plaintiffs can make out a claim for diminution of value of their property without showing permanent physical damage to the land.

*In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 798 (3d Cir. 1994), *cert denied*, 513 U.S. 1190 (1995). In a footnote the court said, "Any risk of an avalanche of litigation with every market fluctuation will be prevented by the need of plaintiffs to establish causation and to prove that the stigma associated with their land will remain in place after any physical damage to their land has been repaired." *Id.* at n.64. While the majority of the Minneapolis Stigma Claims did not allege any contamination of their property, several did state that the EPA had remediated their property. *Paoli* was based upon a construction of Pennsylvania law. However, Minnesota law controls here. Under Pennsylvania law as articulated by the Court of Appeals for the Third Circuit, these claimants would still not be permitted to have allowed claims because they do not base these claims on a showing that the remediation had not restored the value of their property to its prior level and that there is some ongoing risk to their property. Rather, claimants have based their claims on the contamination of the neighborhood. They "specifically allege that they have suffered stigma loss . . . associated with real estate in proximity to contaminated property." Northeast Minneapolis Residents' Response to Debtors' Fifteenth Omnibus Objection to Claims, Doc. No. 10834, at 3-4 (unnumbered). They are not asserting stigma based on contamination of their property.

9

speculative damages. This court cannot create a new cause of action which has never been applied in Minnesota courts. Claimants have no claim based on stigma. An appropriate order will be entered sustaining the objection to the Minneapolis Stigma Claims and disallowing the 53 Minneapolis Stigma Claims pursuant to 11 U.S.C. §502(b)(1).

DATE: July 31, 2006

*Judith K. Fitzgerald*  jmd
Judith K. Fitzgerald
United States Bankruptcy Judge

cc:  Dan Biersdorf
Bill Butler
Biersdorf & Associates, P.A.
Suite 4100
33 South Sixth Street
Minneapolis, Minnesota  55402

David M. Bernick
Janet S. Baer
Salvatore F. Bianca
Kirkland & Ellis
200 East Randolph Drive
Chicago, Illinois  60601

Laura Davis Jones
James E. O'Neill
Pachulski, Stang, Ziehl, Young,
    Jones, & Weintraub, P.C.
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)

U.S. Trustee
844 King Street, Suite 2313
Wilmington, DE  19801

The case administrator shall electronically send copies of the opinion and order to the parties listed on the current service list.