UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br>W.R. GRACE & CO., et al.,<br>Debtors. | Chapter 11<br>Case No. 01-01139(JFK)<br>(Jointly Administered)<br>Objection Deadline: August 4, 2006 @ 4:00<br>Hearing Date: September 11, 2006<br>Ref. Docket No. 12823 |

### OBJECTION OF CLAIMANTS REPRESENTED BY GOLDBERG, PERSKY & WHITE TO DEBTORS' MOTION TO COMPEL

Claimants represented by Goldberg, Persky & White, P.C. (the "Goldberg Claimants"), through their undersigned counsel, respond to the Motion to Compel filed by the Debtors, W.R. Grace Co. and affiliates ("Grace") as follows:

### **Introduction**

By means of its present Motion, Grace seeks to compel Claimants to respond to Grace's Questionnaire differently than they have, by, *inter alia*, forbidding Claimants to respond by reference to attachments. Grace singles out the Goldberg Claimants' responses as "an egregious example" of the use of attachments, because in addition to providing "an affidavit from those Claimants who were able to provide such information", the Goldberg Claimants provided three boxes and two computer disks of product identification evidence applicable to all Claimants. Motion to Compel at 22-23.

Grace fails to point out a crucial fact regarding the Goldberg Claimants – viz., that they did not file suit against Grace, because they were all subject to an administrative settlement agreement. This fact, which differentiates the Goldberg Claimants from most of the other Claimants, has important implications for Grace's Motion to Compel, as will be explained below.

It is the Goldberg Claimants' position that (1) The Goldberg Claimants are not required to respond to the Questionnaire under this Court's Orders; (2) the information sought by the Questionnaire is not relevant to claims estimation with respect to the Goldberg Claimants; (3) the Goldberg Claimants have provided all responsive information in their possession; and (4) Grace is better able to derive more particularized information than the Goldberg Claimants.

**Factual Background re Goldberg Claimants**

Goldberg, Persky & White, P.C. ("GPW") has had a tolling agreement with Grace since 1997 preventing lawsuits or discovery against Grace.

On October 16, 1997, GPW (then known as Goldberg, Persky Jennings & White, P.C.) resolved all pending cases with Grace. As part of this settlement, GPW agreed to a "moratorium" and "tolling of limitations" against Grace. This agreement provided that GPW would not commence, file or otherwise pursue asbestos-related bodily injury or wrongful death actions or claims against Grace in exchange for Grace administratively resolving claims that would have otherwise been brought against Grace in the tort system. On May 1, 2000, GPW entered into another settlement agreement with Grace resolving all then pending, unresolved claims against Grace. This agreement again contained a

"moratorium" and "tolling of limitations" that provided that Grace would administratively consider resolution of claims that otherwise would have been brought against Grace in the tort system.

The 1997 and 2000 Agreements both required GPW to submit qualifying medical, product exposure, and release documents to Grace which was free to accept or reject the proffered evidence. In the event that Grace rejected a claim, GPW was free to pursue the claim in the tort system.

As a result of the continuing Moratorium and Tolling Agreements, GPW did not pursue and discovery against Grace for product identification information at any job sites from 1997 continuing until the present date.

**THE MAJORITY OF THE CLAIMS IDENTIFIED BY GRACE AS UNSETTLED OR PRE-PETITION CLAIMS WERE IN FACT SETTLED WITH GRACE UNDER THE MAY 1, 2000 SETTLEMENT AGREEMENT**

As indicated above, GPW entered into a Settlement Agreement with Grace on May 1, 2000. The May 1, 2000 Settlement Agreement resolved all unsettled cases with Grace pending as of May 1, 2000. As part of the Settlement Agreement, GPW was required to submit qualifying medical and product exposure information which was subject to the approval or disapproval of Grace. This Settlement Agreement provided, of course, for 100% payment on the settled claims, and specifically allowed Settling Plaintiffs who were not already paid, and Moratorium Plaintiffs, at their individual option, to reject the Agreement and assert their claims pursuant to a Trust Distribution Plan in the event that Grace filed bankruptcy.

In the Fall of 2005, Grace sent to GPW clients and GPW co-counsel Questionnaires for people it had determined had pre-petition unsettled claims. GPW spent considerable time attempting to determine who exactly had received Questionnaires, and spent additional time trying to match the names on the questionnaires with GPW's clients. GPW contacted Rust Consulting and requested if Rust Consulting had social security numbers or other identifiers for these individuals, but Rust was unwilling, or unable, to provide such identifiers.

In the middle of this process, GPW received a November 28, 2005 letter from Kirkland & Ellis which included two new lists of "claims" derived from the records of Grace. GPW could not make any sense of these lists, and on December 2, 2005 contacted Kirkland & Ellis requesting additional information concerning these lists. GPW never received any information clarifying how Grace determined that certain GPW clients had settled claims, and other GPW clients had "Pre-Petition Litigation Claims". GPW of course had not sued Grace in the tort system prior to the bankruptcy because of the existing "moratorium" and "tolling of limitations" Agreement, and thus it was not clear how Grace compiled a list of "Pre-Petition **Litigation** Claims".

The vast majority of clients identified by Grace as having "Pre-Petition Litigation Claims were, in fact, clients who were part of the May 1, 2000 Settlement Agreement, but who had not yet been paid by Grace. For many of these clients, GPW had already submitted qualifying medical and/or product identification materials. Some of the clients who are part of the May 1, 2000 Settlement Agreement appeared on Grace's list of "Settled Claims". GPW could

not determine what basis, if any, Grace used to distinguish between clients on the "Pre-Petition Litigation Claims" list or the "Settled Claims" list. In an abundance of caution and in an effort to preserve GPW's clients' right to assert a claim under the Trust Distribution Process if the clients so chose, GPW decided to make its own determination of those clients who might fall within the parameters of the Court's Order concerning the questionnaires.

As it turned out, the vast majority, if not all, of claims submitted on the questionnaire process are for clients who were part of the May 1, 2001 Settlement Agreement. For most of these clients, Grace had already received qualifying medical and/or product exposure information prior to the bankruptcy. Thus, Grace already had in its possession medical and/or exposure information for many of the GPW clients subject to the questionnaire process.

### THE QUESTIONNAIRE PROCESS WAS EXTREMELY BURDENSOME AND REQUIRED GPW TO PRODUCE TRIAL READY MATERIALS IN A MANNER INCONSISTENT WITH NORMAL CASE DEVELOPMENT.

GPW represents asbestos claimants in at least six different states and within multiple venues within each state. Cases are subject to Case Management Orders requiring the production of medical and product identification materials at various stages during the development of the case. Final expert reports and evidentiary responses to Motions for Summary Judgment are not normally due until relatively shortly before the scheduled trial date.

In this situation, GPW was required to provide trial-ready materials on almost 2,000 cases under a time frame less than one year. This extraordinary

burden was exacerbated by the fact that GPW did not have access to discovery materials they normally would receive from a litigation defendant. A few examples will give the Court an illustration of the burdens imposed by the Questionnaire project. Almost all of the GPW attorneys were, in some respect, involved in the questionnaire project. In addition to attorney time, approximately 16 people spent 815 man hours in reviewing 661 depositions that had been collected over many years to determine if there is information relevant to Grace. GPW spent over $18,000.00 in copying materials for Grace, and spent almost $3,000.00 in mailing costs involved with the project.

GPW provided Grace with evidentiary materials currently in it possession, including medical reports, depositions of product identification witnesses, affidavits of product identification witnesses, Grace invoices, and other evidentiary materials normally used to establish a claim against Grace. In addition, GPW attempted to update work histories for each client and to obtain from each client whatever information the client had concerning product exposure information. In short, GPW made its best effort to provide to Grace all information in its possession concerning medical and product exposure information concerning Grace.

It is important to remember that this production by GPW was done in the context of a 10-year arrangement between GPW and Grace in which there was no litigation or discovery activity between these two parties. In short, GPW was required to produce trial ready materials for almost 2,000 claimants within the time period less than normally allowed to work up an individual case.

## **Argument**

1. **The Goldberg Claimants are not required to respond to the Questionnaire under this Court's Orders.**

This Court's Case Management Order for the Estimation of Asbestos Personal Injury Liabilities ("PI CMO") authorizes issuance of the Questionnaire only to holders of "pre-petition **litigation** claims" (emphasis added). A "litigation claim" means a claim asserted in a lawsuit. *See* Black's Law Dictionary 944 (7th ed. 1999) (defining "litigation" as "[t]he process of carrying on a lawsuit" or "[a] lawsuit itself"). Because the Goldberg Claimants never filed a lawsuit against Grace, they are not holders of litigation claims, and they should not have been issued Questionnaires.

Moreover, by an Order dated October 24, 2005 (docket No. 10825), this Court clarified that under the PI CMO persons with enforceable pre-petition settlement agreements are not required to complete the questionnaire. All or almost all of the Goldberg Claimants are subject to the May 1, 2000 settlement agreement between GPW and Grace.

Although the Goldberg Claimants confidently believe that they are not required to complete the Questionnaires, out of an abundance of caution and in an effort to cooperate with Grace's endeavors, the Goldberg Claimants nevertheless expended substantial efforts to provide what responsive information they and their counsel possess. However, in answer to Grace's attempt to compel more, the Goldberg Claimants stand on their status as non-litigation claimants with an enforceable settlement agreement.

2. **The information sought by the Questionnaire is not relevant to claims estimation with respect to the Goldberg Claimants.**

There is a good reason for the PI CMO not to require claimants with enforceable settlement agreements to complete the Questionnaire. Because such claimants' eligibility for payment is established by satisfaction of the particular requirements of the applicable settlement agreement, the information sought by the Questionnaire (which concerns what would be required to establish a claim in the tort system) is simply irrelevant to estimating Grace's liability. This is true in the case of the Goldberg Claimants. The May 1, 2000 agreement between GPW and Grace called for exposure verification that differs substantially from the evidence that would be required in a lawsuit or that is requested in the Questionnaire. Most or all of the Goldberg Claimants have submitted qualifying materials that satisfy the requirements of the settlement agreement. Accordingly, whether they can or cannot come forward with evidence that would meet the applicable standard in court is not relevant. A proper estimate of Grace's liability should include full settlement values for all of the Goldberg Claimants, and no information to be gleaned from the Questionnaires should alter this result.

3. **The Goldberg Claimants have provided all responsive information in their possession.**

There is also a good reason for limiting the Questionnaires to those with litigation claims: claimants who file suit expect to be required (eventually) to marshal evidence sufficient to withstand a product identification motion for summary judgment; and their law firms engage in discovery to adduce such evidence. On the other hand, claimants who, like the Goldberg Claimants,

refrain from suing Grace because they are subject to an administrative tolling agreement and/or settlement agreement, do not expect to marshal such evidence, and their law firms do not engage in discovery directed to Grace products.  In point of fact, GPW has not taken any discovery with respect to Grace, and has not had to marshal evidence to respond to a summary judgment motion by Grace, for ten years.

Contrary to Grace's assertion, the Goldberg Claimants' attachment of product identification materials was not "simply a 'document dump'".  Although GPW's product identification evidence relating to Grace is dated and limited due to the lack of recent discovery, GPW went to substantial pains to cull all such responsive information from its files and to provide it to Grace in an organized fashion.

The individual Goldberg Claimants who had pertinent knowledge of Grace exposure have provided it by affidavit.  As to the rest, they should not be required to ascertain information that they do not know in order to answer Grace's questionnaires in the format Grace prefers.  Indeed, relief from the burden of marshalling Grace exposure evidence is one of the principal considerations for the Goldberg Claimants' refraining from suing Grace in court.

**4.    Grace is better able to derive more particularized information than the Goldberg Claimants.**

Grace is simply wrong when it asserts that the requested exposure information "could have been easily provided by the Claimants and their counsel, who are in possession of the information and are most familiar with it."  Motion at 23.  On the contrary, first, the Goldberg Claimants are not in possession of nearly

as much pertinent information concerning use of Grace products at various jobsites as is Grace. Grace sold the products in the first place, and has defended and settled cases over many years, participating in formal and informal discovery while GPW stayed out of the fray at Grace's behest.

Second, even as to the documents (depositions, invoices and the like) in GPW's possession, Grace has much more familiarity due to its ongoing participation in litigation. GPW's lawyers have had no occasion to look at Grace product identification, to take an active role in depositions, or to consider the import of particular documents for particular occupations or jobsites. Grace, however, has had to look at the evidence and correlate it to particular jobsites and occupations in deciding how to defend and settle cases.

Third, Grace's complaint that the materials will not be understood by untrained data entrants misses the point. The proper comparison is between the familiarity of the interrogating and interrogated parties – between Grace and the Goldberg Claimants, who are by and large lifelong laborers who have never seen the documents in question. To suggest that the Goldberg Claimants, or even their counsel, could "easily" provide the information in the particularized format requested, pre-digested to facilitate Grace's employment of untrained data entrants, is disingenuous.

## Conclusion

For the foregoing reasons, Grace's Motion to Compel should be denied as to the Goldberg Claimants.

GOLDBERG, PERSKY & WHITE, P.C.

*/s/ Mark C. Meyer*
Mark C. Meyer
David B. Rodes
1030 Fifth Avenue
Pittsburgh PA 15219
412-471-3980
412-471-8308(Fax)
mmeyer@gpwlaw.com

HEIMAN, GOUGE & KAUFMAN, LLP

*/s/ Susan E. Kaufman*
Susan E. Kaufman (DSB # 3381)
800 King Street
Suite 303
P.O. Box 1674
Wilmington, DE 19801
(302) 658-1800
(302) 658-1473 (fax)
skaufman@hgkde.com

Date: August 4, 2006