1  Christopher E. Grell, Esq. (SBN 88498)
   Richard F. Rescho, Esq. (SBN 108086)
2  Law Offices of Christopher E. Grell
   The Broadlake Plaza
3  360 22nd Street, Suite 230
   Oakland, Ca  94612
4  Telephone:  (510) 832-2980
5  Facsimile:  (510) 832-2986

6  Attorneys for Claimants
   ELLEN ASHDOWN, et al.
7

8

9                 UNITED STATES BANKRUPTCY COURT

10                 FOR THE DISTRICT OF DELAWARE

11

12

13  IN RE:                              **Chapter 11**

14  W.R. GRACE & CO., et al.,           **Case No. 01-01139 (JFK)**
                                        **(Jointly Administered)**
       Debtors.
15                                      **Hearing Date:  September 11, 2006**

16

17
          **DECLARATION OF CLAIMANTS' COUNSEL,**
18        **RICHARD F. RESCHO, IN SUPPORT OF**
          **OBJECTION TO MOTION TO COMPEL**
19        **ASBESTOS PERSONAL INJURY CLAIMANTS TO**
          **RESPOND TO THE W.R. GRACE ASBESTOS**
20        **PERSONAL INJURY QUESTIONNAIRE**

21        I, Richard F. Rescho, declare:

22        1.    I am an attorney duly licensed to practice law in the State of California and before the

23  United States District Courts for the Northern, Central and Southern Districts of California.  I have

24  personal knowledge of the matters stated herein, and if called upon to do so, could and would

25  competently testify thereto.

26        2.    I am an associate attorney of the Law Offices of Christopher E. Grell, Oakland,

27  California, counsel for asbestos claimants Ellen Ashdown (Decedent Gary Smith), Franklin Castleman,

28  Edwin Conway, Sharon Doughty, Henry Enos, Candice Fleming, Eleanor Franer, Nancy Kearny,

                                        1

1 Agnes Klassen, Yvonne Mager, Curtis Neal, II, Gordon Nurse, Sandra Odegaard, Frances Rongstad,
2 Rhee Michelle Smith, Graydon Simpson, Ernest P. Snyder, Mary Ann Market, Joyce Lopez and Tracie
3 Webber.

4     3.    The Law Offices of Christopher E. Grell has prepared and submitted the W.R. Grace
5 Asbestos Personal Injury Questionnaire on behalf of the above-named Claimants.

6     4.    Attached hereto as Exhibit A is a true and correct copy of the W.R. Grace Personal
7 Injury Questionnaire prepared by the Law Offices of Christopher E. Greel on behalf of Claimant Ellen
8 Ashdown for Decedent Gary Smith.   This Questionnaire is a representative sample of those
9 Questionnaires prepared and submitted on behalf of those Claimants listed above.

10     5.    In the Ashdown/Smith Questionnaire attached as Exhibit A, with regard to Part II:
11 Asbestos-Related Condition(s), the responses to various questions refer to Exhibit A to the
12 Questionnaire, which consists of the report of pathologist Samuel Hammar, M.D., of Diagnostic
13 Specialties Laboratory, Inc., P.S. the Autopsy Report of Decedent Gary Smith and the Certificate of
14 Death, which confirm that the Decedent Gary Smith died of mesothelioma caused by asbestos
15 exposure.   The response to Part II, Question 7 of the Questionnaire refers to Exhibit B to the
16 Questionnaire, Plaintiffs' Answers to Wrongful Death Interrogatories, Response to Interrogatory No. 9,
17 which lists the Decedent's treating doctors.

18     6.    In the Ashdown/Smith Questionnaire attached as Exhibit A, with regard to Part III:
19 Direct Exposure to Grace Asbestos-Containing Products, the responses to questions regarding the
20 locations of Decedent's exposure to W.R. Grace asbestos-containing products refer to Exhibit B to the
21 Questionnaire, the aforementioned Plaintiffs' Answers to Wrongful Death Interrogatories, Response to
22 Interrogatory No. 25, which lists Decedent's various employment sites and Exhibit B-1, which lists
23 W.R. Grace asbestos-containing products.

24     7.    In the Ashdown/Smith Questionnaire attached as Exhibit A, with regard to Part VII:
25 Litigation and Claims Regarding Asbestos and/or Silica, the response to Question 6 refers to Exhibit
26 One to the Questionnaire, which provides information as to settlements made in a lawsuit brought as a
27 result of Decedent's asbestos exposure and death.

28

2

28

3

W. R. Grace

# Asbestos Personal Injury
# Questionnaire

Ashdown –
Smith

001036176818

RE: Ashdown, Ellen     for deceased Gary Smith  17 2006
Law Offices of Christopher E Grell
Suite 320 Broadlake Plaza
360 22nd Street
Oakland CA 94612

001036176818

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **W. R. GRACE & CO., et al.,** | ) | **Case No. 01-01139 (JKF)** |
| | ) | **Jointly Administered** |
| Debtors. | ) | |
| | ) | |

# W. R. Grace
# Asbestos Personal Injury
# Questionnaire

YOU HAVE RECEIVED THIS QUESTIONNAIRE BECAUSE GRACE BELIEVES THAT YOU HAD SUED ONE OR MORE OF THE DEBTORS LISTED IN APPENDIX A ATTACHED TO THIS QUESTIONNAIRE BEFORE GRACE FILED FOR BANKRUPTCY ON APRIL 2, 2001 FOR AN ASBESTOS-RELATED PERSONAL INJURY OR WRONGFUL DEATH CLAIM, AND THAT CLAIM WAS NOT FULLY RESOLVED.

IF YOU HAVE SUCH A CLAIM, YOU MUST COMPLETE AND SUBMIT THIS QUESTIONNAIRE BY JANUARY 12, 2006 TO RUST CONSULTING, INC., THE CLAIMS PROCESSING AGENT, AT ONE OF THE FOLLOWING ADDRESSES:

| | |
|---|---|
| **IF SENT BY U.S. MAIL** | **IF SENT BY FEDERAL EXPRESS, UNITED PARCEL SERVICE, OR A SIMILAR HAND DELIVERY SERVICE** |
| RUST CONSULTING, INC. | RUST CONSULTING, INC. |
| CLAIMS PROCESSING AGENT | CLAIMS PROCESSING AGENT |
| RE: W.R. GRACE & CO. BANKRUPTCY | RE: W.R. GRACE & CO. BANKRUPTCY |
| P.O. BOX 1620 | 201 S. LYNDALE AVE. |
| FARIBAULT, MN 55021 | FARIBAULT, MN 55021 |

A QUESTIONNAIRE (AND ANY AMENDMENTS OR ADDITIONAL DOCUMENTS IN SUPPORT OF THE QUESTIONNAIRE) WILL NOT BE CONSIDERED UNLESS RECEIVED BY RUST CONSULTING, INC. BY JANUARY 12, 2006.

THIS QUESTIONNAIRE IS AN OFFICIAL DOCUMENT APPROVED BY THE COURT IN CONNECTION WITH ESTIMATING GRACE'S ASBESTOS-RELATED PERSONAL INJURY AND WRONGFUL DEATH CLAIMS AS A WHOLE. THE QUESTIONNAIRE IS BEING USED BY W. R. GRACE AS A MEANS TO SEEK INFORMATION ABOUT YOUR ASBESTOS CLAIM. BY TIMELY RETURNING THE QUESTIONNAIRE AS COMPLETELY AND ACCURATELY AS POSSIBLE, GRACE, THE OFFICIAL COMMITTEES, AND THE FUTURE CLAIMANTS REPRESENTATIVE WILL SEEK TO PRIORITIZE THE PROCESSING OF YOUR CLAIM UNDER ANY TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION.

THE COURT HAS ORDERED THAT, AS PART OF THE DISCOVERY PROCESS, ALL HOLDERS OF PRE-PETITION ASBESTOS PERSONAL INJURY CLAIMS MUST COMPLETE AND RETURN THIS QUESTIONNAIRE. THUS, FAILURE TO TIMELY RETURN THE QUESTIONNAIRE AS COMPLETELY AND ACCURATELY AS POSSIBLE MAY RESULT IN SANCTIONS AND/OR OTHER RELIEF AVAILABLE UNDER APPLICABLE FEDERAL RULES.

BECAUSE YOUR CLAIM WILL BE EVALUATED IN ACCORDANCE WITH THE TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION, COMPLETION OF THIS QUESTIONNAIRE DOES NOT MEAN THAT YOUR CLAIM WILL EITHER BE ALLOWED OR PAID. TO THE EXTENT YOU ATTACH TO THIS QUESTIONNAIRE DOCUMENTS ALSO NEEDED BY THE TRUST TO PROCESS YOUR CLAIM, SUCH DOCUMENTS WILL BE PROVIDED TO THE TRUST AND YOU WILL NOT NEED TO RESUBMIT THEM.

# INSTRUCTIONS

## A. GENERAL

1. This Questionnaire refers to any lawsuit that you filed before April 2, 2001 for an "asbestos-related personal injury or wrongful death claim." This term is intended to cover any lawsuit alleging any claim for personal injuries or damages that relates to: (a) exposure to any products or materials containing asbestos that were manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors (or any of their respective past or present affiliates, or any of the predecessors of any of the Debtors or any of their respective past or present affiliates), or (b) exposure to vermiculite mined, milled or processed by the Debtors (or any of their respective past or present affiliates, any of the predecessors of any of the Debtors or any of their predecessors' respective past or present affiliates). It includes claims in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity, or any other theory of law or equity, or admiralty for, relating to, or arising out of, resulting from, or attributable to, directly or indirectly, death, bodily injury, sickness, disease, or other personal injuries or other damages caused, or allegedly caused, directly or indirectly, and arising or allegedly arising, directly or indirectly, from acts or omissions of one or more of the Debtors. It includes all such claims, debts, obligations or liabilities for compensatory damages such as loss of consortium, personal or bodily injury (whether physical, emotional or otherwise), wrongful death, survivorship, proximate, consequential, general, special, and punitive damages.

2. Your Questionnaire will be deemed filed only when it has been received by Rust Consulting Inc., the Claims Processing Agent, via U.S. Mail, Federal Express, United Parcel Service or a similar hand delivery service. A Questionnaire that is submitted by facsimile, telecopy or other electronic transmission will **not** be accepted and will **not** be deemed filed.

    Do **not** send any Questionnaire to the Debtors, counsel for the Debtors, the Future Claimants Representative, the Official Committee of Unsecured Creditors, the Official Committee of Asbestos Personal Injury Claimants, the Official Committee of Asbestos Property Damage Claimants, the Official Committee of Equity Security Holders, or such Committees' counsel. Questionnaires that are filed with or sent to anyone other than Rust Consulting, Inc. will be deemed not to have been submitted, and such Questionnaires will not be considered.

3. Your completed Questionnaire must (i) be written in English, and (ii) attach relevant supporting materials as instructed further below.

4. All holders of claims described on page i (and as described in further detail in Instruction A (1) above) are required to file this Questionnaire by Jan. 12, 2006. Your Questionnaire will be used in connection with the estimation hearing to be conducted by the Court pursuant to the Estimation Procedures Order (a copy of which is attached as Appendix B).

5. Any subsequent amendment to the Questionnaire will not be considered for any purpose unless received by Jan. 12, 2006.

## B. PART I -- Identity of Injured Person and Legal Counsel

Respond to all applicable questions. If you are represented by a lawyer, then in Part I (b), please provide your lawyer's name and the name, telephone number and address of his/her firm. If you are represented by a lawyer, he/she must assist in the completion of this Questionnaire. Also, if you would prefer that the Debtors send any additional materials only to your lawyer, instead of sending such materials to you, then check the box indicating this in Part I (b).

All references to "you" or the like in Parts I through X shall mean the injured person. If the injured person is deceased, then the executor of the person's will (or similar estate representative) must complete this Questionnaire.

## C. PART II -- Asbestos-Related Condition(s)

Please indicate all asbestos-related medical conditions for which you have been diagnosed. To complete questions related to injuries, medical diagnoses, and/or conditions, please use the following categories of customarily diagnosed conditions:

- Mesothelioma
- Asbestos-Related Lung Cancer
- Other Cancer (colon, laryngeal, esophageal, pharyngeal, or stomach)
- Clinically Severe Asbestosis
- Asbestosis
- Other Asbestos Disease

If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

**Supporting Documents for Diagnosis:** This Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that support or conflict with your diagnosis.

**X-rays and B-reads:** Please attach all x-ray readings and reports. You may, but are not required to, attach chest x-rays. The court, however, has ruled that Grace may seek access to chest x-rays upon request.

**Pulmonary Function Tests:** Please attach all pulmonary function test results, including the actual raw data and all spirometric tracings, on which the results are based.

**D.  PART III – Direct Exposure to Grace Asbestos-Containing Products**

In Part III, please provide the requested information for the job and site at which you were exposed to Grace asbestos-containing products. Indicate the dates of exposure to each Grace asbestos-containing product. If your exposure was a result of your employment, use the list of occupation and industry codes below to indicate your occupation and the industry in which you worked at each site. If you allege exposure to Grace asbestos-containing products at multiple sites, the Court has ordered that you must complete a separate Part III for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

Attach copies of any and all documents establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the disease.

## Occupation Codes

01. Air conditioning and heating installer/maintenance
02. Asbestos miner
03. Asbestos plant worker/asbestos manufacturing worker
04. Asbestos removal/abatement
05. Asbestos sprayer/spray gun mechanic
06. Assembly line/factory/plant worker
07. Auto mechanic/bodywork/brake repairman
08. Boilermaker
09. Boiler repairman
10. Boiler worker/cleaner/inspector/engineer/installer
11. Building maintenance/building superintendent
12. Brake manufacturer/installer
13. Brick mason/layer/hod carrier
14. Burner operator
15. Carpenter/woodworker/cabinetmaker
16. Chipper
17. Clerical/office worker
18. Construction - general
19. Custodian/janitor in office/residential building
20. Custodian/janitor in plant/manufacturing facility
21. Electrician/inspector/worker
22. Engineer
23. Firefighter
24. Fireman
25. Flooring installer/tile installer/tile mechanic
26. Foundry worker
27. Furnace worker/repairman/installer
28. Glass worker
29. Heavy equipment operator (includes truck, forklift, & crane)
30. Insulator

31. Iron worker
32. Joiner
33. Laborer
34. Longshoreman
35. Machinist/machine operator
36. Millwright/mill worker
37. Mixer/bagger
38. Non-asbestos miner
39. Non-occupational/residential
40. Painter
41. Pipefitter
42. Plasterer
43. Plumber - install/repair
44. Power plant operator
45. Professional (*e.g.*, accountant, architect, physician)
46. Railroad worker/carman/brakeman/machinist/conductor
47. Refinery worker
48. Remover/installer of gaskets
49. Rigger/stevedore/seaman
50. Rubber/tire worker
51. Sandblaster
52. Sheet metal worker/sheet metal mechanic
53. Shipfitter/shipwright/ship builder
54. Shipyard worker (md. repair, maintenance)
55. Steamfitter
56. Steelworker
57. Warehouse worker
58. Welder/blacksmith
59. Other – *Medical Professional*

## Industry Codes

001. Asbestos abatement/removal
002. Aerospace/aviation
100. Asbestos mining
101. Automotive
102. Chemical
103. Construction trades
104. Iron/steel
105. Longshore
106. Maritime
107. Military (other than U.S. Navy)
108. Non-asbestos products manufacturing

109. Petrochemical
110. Railroad
111. Shipyard-construction/repair
112. Textile
113. Tire/rubber
114. U.S. Navy
115. Utilities
116. Grace asbestos manufacture or milling
117. Non-Grace asbestos manufacture or milling
118. Other –

**E.  PART IV – Indirect Exposure to Grace Asbestos-Containing Products**

In Part IV, please provide the information requested for any injury alleged to have been caused by exposure to Grace asbestos-containing products through contact/proximity with another injured person.  If you allege exposure through contact/proximity with multiple injured persons, please complete a separate Part IV for each injured person.  For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.

**F.  PART V -- Exposure to Non-Grace Asbestos-Containing Products**

In Part V, please provide the requested information for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products.  If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate Part V for each party.  If exposure was in connection with your employment, use the list of occupation and industry codes in Part III to indicate your occupation and the industry in which you worked.  For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

**G.  PART VI -- Employment History**

In Part VI, please provide the information requested for each industrial job you have held, other than jobs already listed in Parts III or V.  Use the list of occupation and industry codes in the instructions to Part III to indicate your occupation and the industry in which you worked for each job.  Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.

**H.  PART VII -- Litigation and Claims Regarding Asbestos and/or Silica**

In Part VII, please describe any lawsuits and/or claims that were filed by you or on your behalf regarding asbestos or silica.

**I.  PART VIII -- Claims by Dependents or Related Persons**

Part VIII is to be completed only by dependents or related persons (such as spouse or child) of an injured person who sued the Debtors before April 2, 2001 for an asbestos-related personal injury or wrongful death claim against Grace not involving physical injury to him-/herself on account of his/her own exposure.  One example of such a claim would be a claim for loss of consortium.  If you are asserting such a claim, complete the entire Questionnaire, providing all information and documentation regarding the injured person.

**J.  PART IX -- Supporting Documentation**

In Part IX, please mark the boxes next to each type of document that you are submitting with this Questionnaire.  As indicated in the instructions to Parts II and III, this Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that (a) support or conflict with your diagnosis and/or (b) establish exposure to Grace asbestos-containing products as having a substantial causal role in the development of the medical diagnoses, and/or conditions claimed.  Original documents provided to Grace will be returned within a reasonable time after its professionals and experts have reviewed the documents.

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation.  Please indicate the documents for which you are seeking reimbursement and attach a receipt for such cost.

**K.  PART X -- Attestation that Information is True, Accurate and Complete**

By signing Part X, you, the injured person, are attesting and swearing, under penalty of perjury, that, to the best of your knowledge, all of the information in this Questionnaire is true, accurate and complete.  If the injured person is deceased, then the executor of the person's will (or similar estate representative) must complete and sign Part X on behalf of the injured person.

The legal representative of the injured person must complete and sign Part X where indicated.

## PART I - IDENTITY OF INJURED PERSON AND LEGAL COUNSEL

### a. GENERAL INFORMATION

1. **Name of Claimant:** Gary _____ Smith _____  2. **Gender:** ☒ Male ☐ Female
   First _____ MI _____ Last

3. **Race (for purposes of evaluating Pulmonary Function Test results):** ....................... ☒ White/Caucasian
   ☐ African American
   ☐ Other

4. **Last Four Digits of Social Security Number:** 1492   5. **Birth Date:** 07/29/1944

6. **Mailing Address:** 525 E. Gulf Beach Drive _____ Fl. _____ 32328
   Address _____ City _____ State/Province _____ Zip/Postal Code

7. **Daytime Telephone Number:** ................................................ ( 510 ) 832-2980

### b. LAWYER'S NAME AND FIRM

1. **Name of Lawyer:** Christopher E. Grell
2. **Name of Law Firm With Which Lawyer is Affiliated:** Law Office of Christopher E. Grell
3. **Mailing Address of Firm:** 360 22nd St. Suite 320 Oakland, Ca. 96612
   Address _____ City _____ State/Province _____ Zip/Postal Code
4. **Law Firm's Telephone Number or Lawyer's Direct Line:** ......................... ( 510 ) 832-2980

   ☒ Check this box if you would like the Debtors to send subsequent material relating to your claim to your lawyer, in lieu of sending such materials to you.

### c. CAUSE OF DEATH (IF APPLICABLE)

1. **Is the injured person living or deceased?** ................................................ ☐ Living ☒ Deceased
   **If deceased, date of death:** ................................................ 04/21/1994

2. **If the injured person is deceased, then attach a copy of the death certification to this Questionnaire and complete the following:**
   **Primary Cause of Death (as stated in the Death Certificate):** mesothelioma
   **Contributing Cause of Death (as stated in the Death Certificate):** _____

## PART II - ASBESTOS-RELATED CONDITION(S)

Mark the box next to the conditions with which you have been diagnosed and provide all information required in the instructions to this Questionnaire. If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

1. **Please check the box next to the condition being alleged:**

   ☐ Asbestos-Related Lung Cancer          ☒ Mesothelioma
   ☐ Asbestosis                            ☐ Other Cancer (cancer not related to lung cancer or mesothelioma)
   ☐ Other Asbestos Disease                ☐ Clinically Severe Asbestosis

   a. **Mesothelioma:** If alleging Mesothelioma, were you diagnosed with malignant mesothelioma based on the following (check all that apply):
      ☒ diagnosis from a pathologist certified by the American Board of Pathology
      ☒ diagnosis from a second pathologist certified by the American Board of Pathology
      ☒ diagnosis and documentation supporting exposure to Grace asbestos-containing products having a substantial causal role in the development of the condition
      ☐ other (please specify): _____

1

*Gary Smith had MESO - Sections Not Applicably*

## PART II. ASBESTOS-RELATED CONDITION(S) (Continued)

**b.  Asbestos-Related Lung Cancer:** If alleging Asbestos-Related Lung Cancer, were you diagnosed with primary lung cancer based on the following (check all that apply):

☐  findings by a pathologist certified by the American Board of Pathology

☐  evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐  evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a second B-reader certified by the National Institute for Occupational Safety and Health

☐  evidence of asbestosis determined by pathology

☐  evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐  evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a second B-reader certified by the National Institute for Occupational Safety and Health

☐  diffuse pleural thickening as defined in the International Labour Organization's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐  a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the lung cancer

☐  other (please specify):_____

**c.  Other Cancer:**

(i)  If alleging Other Cancer, please mark the box(es) next to the applicable primary cancer(s) being alleged:

☐ colon        ☐ pharyngeal        ☐ esophageal        ☐ laryngeal        ☐ stomach cancer

☐ other, please specify:_____

(ii)  Were you diagnosed with the above-indicated cancer based on the following (check all that apply):

☐  findings by a pathologist certified by the American Board of Pathology

☐  evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐  evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a second B-reader certified by the National Institute for Occupational Safety and Health

☐  evidence of asbestosis determined by pathology

☐  a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the cancer

☐  other (please specify):_____

2

*Gary Smith 11-*
*Sections Not Applicable*

**PART II ASBESTOS-RELATED CONDITION(S) (Continued)**

d. **Clinically Severe Asbestosis:** If alleging Clinically Severe Asbestosis, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ asbestosis determined by pathology

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating total lung capacity less than 65% predicted

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating forced vital capacity less than 65% predicted and a FEV1/FVC ratio greater than or equal to 65% predicted

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐ other (please specify): _____

e. **Asbestosis:** If alleging Asbestosis, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ a chest x-ray reading conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ asbestosis determined by pathology

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEV1/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐ other (please specify): _____

*No Applicable*
*Meso*

3

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

f.  **Other Asbestos Disease:** If alleging any asbestos-related injuries, medical diagnoses, and/or conditions other than those above, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ diagnosis determined by pathology

☐ a chest x-ray reading   conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading   conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading  other than those described above

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies*, demonstrating a FEVI/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐ a pulmonary function test other than that discussed above

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the condition

☐ a CT Scan or similar testing

☐ a diagnosis other than those above

☐ other (please specify): _____

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

Not Applicable
Meso

4

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

2. **Information Regarding Diagnosis**

Date of Diagnosis: ............................................................ _09/22/1994_

Diagnosing Doctor's Name: _Dr. Samuel P. Hammar_

Diagnosing Doctor's Specialty: _Pathology_

Diagnosing Doctor's Mailing Address: _700 Lebo Blvd,_
<br>Address

_Bremerton_ _Wash._ _98310_
<br>City                                  State/Province              Zip/Postal Code

Diagnosing Doctor's Daytime Telephone Number: ......................................... ( _360_ ) _479-7707_

With respect to your relationship to the diagnosing doctor, check all applicable boxes:

Was the diagnosing doctor your personal physician?..................................................................... ☐ Yes  ☑ No

Was the diagnosing doctor paid for the diagnostic services that he/she performed?.._Yes See A_...... ☑ Yes  ☐ No

*If yes, please indicate who paid for the services performed:* _Counsel_       _EX A_

Did you retain counsel in order to receive any of the services performed by the diagnosing doctor?....... ☑ Yes  ☐ No

Was the diagnosing doctor referred to you by counsel?................................................... ☑ Yes  ☐ No

Are you aware of any relationship between the diagnosing doctor and your legal counsel?............... ☑ Yes  ☐ No

*If yes, please explain:* _expert_

Was the diagnosing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the diagnosis? ............ _N.U._ ...................................................................... ☐ Yes  ☐ No

Was the diagnosing doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis? ...................................................................................................... ☒ Yes  ☐ No

Was the diagnosing doctor provided with your complete occupational, medical and smoking history prior to diagnosis? ...................................................................................................... ☒ Yes  ☐ No

Did the diagnosing doctor perform a physical examination? ...... _tissue_ ...................... ☒ Yes  ☐ No

Do you currently use tobacco products? .......... _N/A_ ............................................ ☐ Yes  ☐ No

Have you ever used tobacco products?................................................................. ☒ Yes  ☐ No

*If answer to either question is yes, please indicate whether you have regularly used any of the following tobacco products and the dates and frequency with which such products were used:*

☑ **Cigarettes**     Packs Per Day (half pack = .5) _1.0_     Start Year _1960_ End Year _1993_

☐ **Cigars**     Cigars Per Day _____     Start Year _____ End Year _____

☐ **If Other Tobacco Products, please specify (e.g., chewing tobacco):** _____
<br>Amount Per Day _____     Start Year _____ End Year _____

Have you ever been diagnosed with chronic obstructive pulmonary disease ("COPD")?... _n/a_ ...... ☐ Yes  ☑ No

*If yes, please attach all documents regarding such diagnosis and explain the nature of the diagnosis:*

3. **Information Regarding Chest X-Ray** _n/a - Gary Smith had meso. X-rays showed cancer but pathology tests made the diagnosis of meso. See Exhibit A Dr. Hammar's Report_

Please check the box next to the applicable location where your chest x-ray was taken (check one):

☐ Mobile laboratory ☐ Job site ☐ Union Hall ☐ Doctor office ☐ Hospital ☐ Other: _____

Address where chest x-ray taken: _____
<br>Address

_____          _____          _____
<br>City                                  State/Province              Zip/Postal Code

## PART III. ASBESTOS RELATED CONDITION(S) (Continued)

pathology, not X-rays making this section no  Not applicable since X-rays
are irrelevant to Gary Smith's

**4. Information Regarding Chest X-Ray Reading**

Date of Reading: ___ / ___ / _____   ILO score: asbestos-related mesothelioma

Name of Reader: _____

Reader's Daytime Telephone Number: ........................................................ ( ___ ) ___ - _____

Reader's Mailing Address: _____
                                         Address

_____

City                                    State/Province                    Zip/Postal Code

With respect to your relationship to the reader, check all applicable boxes:

Was the reader paid for the services that he/she performed.......................................................... ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the reader? ........................... ☐ Yes ☐ No

Was the reader referred to you by counsel?.............................................................................. ☐ Yes ☐ No

Are you aware of any relationship between the reader and your legal counsel? .......................................... ☐ Yes ☐ No

*If yes, please explain:* _____

**Was the reader certified by the National Institute for Occupational Safety and Health at the time of the reading?**

............................................................................................................................................. ☐ Yes ☐ No

*If the reader is not a certified B-reader, please describe the reader's occupation, specialty, and the method through which the reading was made:* _____

**5. Information Regarding Pulmonary Function Test:** .............................Date of Test: ___ / ___ / _____

List your height in feet and inches when test given: ............................................... _____ ft _____ inches

List your weight in pounds when test given: .................................................................... _____ lbs

Total Lung Capacity (TLC):.......................................................................................... _____ % of predicted

Forced Vital Capacity (FVC): ....................................................................................... _____ % of predicted

FEV1/FVC Ratio: ........................................................................................................ _____ % of predicted

Name of Doctor Performing Test (if applicable): _____

Doctor's Specialty: _____

Name of Clinician Performing Test (if applicable): _____

Testing Doctor or Clinician's Mailing Address: _____
                                                              Address

_____

City                                    State/Province                    Zip/Postal Code

Testing Doctor or Clinician's Daytime Telephone Number: ........................ ( ___ ) ___ - _____

Name of Doctor Interpreting Test: _____

Doctor's Specialty: _____

Interpreting Doctor's Mailing Address: _____
                                                     Address

_____

City                                    State/Province                    Zip/Postal Code

Interpreting Doctor's Daytime Telephone Number: ..................................... ( ___ ) ___ - _____

Not Necessary
Claimant Died
of Meso   Exhibit A

6

*Again, since Gary Smith's asbestos-related mesothelioma was diagnosed by pathology, the*

**PART II ASBESTOS RELATED CONDITION(S) (Continued) SEC(12)**

*n/a*    *Not applicable*

*Not applicable. I am not advised of reasons. See exhibit.*

**With respect to your relationship to the doctor or clinician who performed the pulmonary function test check all applicable boxes:**

If the test was performed by a doctor, was the doctor your personal physician? .......................... ☐ Yes ☐ No

Was the testing doctor and/or clinician paid for the services that he/she performed? .................... ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:.* _____

Did you retain counsel in order to receive any of the services performed by the testing doctor or clinician?.. ☐ Yes ☐ No

Was the testing doctor or clinician referred to you by counsel?................................................ ☐ Yes ☐ No

Are you aware of any relationship between either the doctor or clinician and your legal counsel? ............. ☐ Yes ☐ No

*If yes, please explain:* _____

**Was the testing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the pulmonary function test? .**................................................ ☐ Yes ☐ No

**With respect to your relationship to the doctor interpreting the results of the pulmonary function test check all applicable boxes:**

Was the doctor your personal physician? ................................................ ☐ Yes ☐ No

Was the doctor paid for the services that he/she performed? ................................................ ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor?............................. ☐ Yes ☐ No

Was the doctor referred to you by counsel? ................................................ ☐ Yes ☐ No

Are you aware of any relationship between the doctor and your legal counsel? ................................... ☐ Yes ☐ No

*If yes, please explain* _____

**Was the doctor interpreting the pulmonary function test results certified as a pulmonologist or internist by the American Board of Internal Medicine at the time the test results were reviewed?**.............................. ☐ Yes ☐ No

**6.  Information Regarding Pathology Reports:**    *See EX. A*

Date of Pathology Report: ...........................    *04/17/1995*

**Findings:** ___*Mesothelioma*___

**Name of Doctor Issuing Report:** *Dr. Samuel Hamman*

**Doctor's Specialty:** *Pathology*

**Doctor's Mailing Address:** *700 Lebo Blvd.*
                              Address

*Bremerton* , *Wash* *98310*

City    State/Province    Zip/Postal Code

**Doctor's Daytime Telephone Number:** ...........................    *(360) 479-7707*

**With respect to your relationship to the doctor issuing the pathology report, check all applicable boxes:**

Was the doctor your personal physician? ................................................ ☐ Yes ☑ No

Was the doctor paid for the services that he/she performed? ................................................ ☑ Yes ☐ No

*If yes, please indicate who paid for the services performed:* ___*counsel*___

Did you retain counsel in order to receive any of the services performed by the doctor?............................. ☑ Yes ☐ No

Was the doctor referred to you by counsel? ................................................ ☑ Yes ☐ No

Are you aware of any relationship between the doctor and your legal counsel? ................................... ☑ Yes ☐ No

*If yes, please explain:* ___*expert*___

**Was the doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis?**
................................................ ☑ Yes ☐ No

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

*See* EX A - Dr. Hammar

7. With respect to the condition alleged, have you received medical treatment from a doctor for the condition?

.................................................................................................................................................. ☑ Yes ☐ No

*If yes, please complete the following:*

**Name of Treating Doctor:** _Tallahassee memorial Regional Medical Center_

**Treating Doctor's Specialty:** _provided medical care to Gary Smith before he died the names etc v_

**Treating Doctor's Mailing Address:** _doctors involve in his care are set forth in Exhibit A records and Exhibit B_
Address

_Tallahassee_    FL.    _32304_

City    State/Province    Zip/Postal Code    *Response*

**Treating Doctor's Daytime Telephone number:** _Many treating doctors were involved_ - ___ - ____    *To Interogatory*

Was the doctor paid for the services that he/she performed? ................................................... ☑ Yes ☐ No    *No. 8*

*If yes, please indicate who paid for the services performed:.* _injured party and/or insured_    *(nine)*

Did you retain counsel in order to receive any of the services performed by the doctor? ...................... ☐ Yes ☑ No


[REMAINDER OF PAGE INTENTIONALLY BLANK]

**PART III: YOUR EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS**

Please complete the chart below for each site at which you allege exposure to Grace asbestos-containing products. If you allege exposure at multiple sites, the Court has ordered that you must complete a separate chart for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each job listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Grace asbestos-containing products

(b) A worker who personally removed or cut Grace asbestos-containing products

(c) A worker who personally installed Grace asbestos-containing products

(d) A worker at a site where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(e) A worker in a space where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(f) If other, please specify: _See_ _EX B#25_

**Site of Exposure:**

Site Name: _Chattahoochee State Mental Hospital_    Location: _Chattahoochee, Fla._

Site Type: ☐ Residence ☑ Business    Site Owner: _see employer_

Employer During Exposure: _Chattahoochee State Mental Hospital_    Unions of which you were a member during your employment: _____

| | | | Medical Position 118 |
|---|---|---|---|
| **Job 1 Description:** | Info regarding President T.D. | | 59    hospital yes.    unknown |
| **Job 2 Description:** | etc. is to voluminous for space | | Additional exposure information is set forth in Exhibit B, Interrogatory |
| **Job 3 Description:** | provided. Consequently, the | | Response # 25 which sets |
| **Job 4 Description:** | responses are set forth in | | forth the information requested |
| **Job 5 Description:** | Claimants' Interrogatory Response | | but to voluminous to set forth |
| **Job 6 Description:** | #25 attached on Exhibit B | | in the space provided. |

Exposed to W.R. Grace products manufactured between 1940's and 1970's. Most Common products include Monokote and Zonolite fireproofing spray, decorative finishes, and coatings. **Also See Ex. B-1**

9

*(handwritten)* *Part IV nothing in this asset responsive to this section is N/A*

## PART IV. INDIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

1. Are you asserting an injury caused by exposure to Grace asbestos-containing products through contact/proximity with another injured person? ........................................................................................................☐ Yes ☑ No

   *If yes, complete questions 2 through 10 of this section for each injured person through which you allege exposure to Grace asbestos-containing products. For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.*

2. Please indicate the following information regarding the other injured person:

   Name of Other Injured Person: _____ Gender: ☐ Male ☐ Female

   Last Four Digits of Social Security Number __ __ __ __   Birth Date: __ __ / __ __ / __ __

3. What is your Relationship to Other Injured Person: ....................................☐ Spouse ☐ Child ☐ Other

4. Nature of Other Injured Person's Exposure to Grace Asbestos-Containing Products:
   _____

5. Dates Other Injured Person was Exposed to Grace Asbestos-Containing Products:
   From: __ __ / __ __ / __ __ __ __   To: __ __ / __ __ / __ __ __ __

6. Other Injured Person's Basis for Identification of Asbestos-Containing Product as Grace Product:
   _____

7. Has the Other Injured Person filed a lawsuit related to his/her exposure? ..........................................☐ Yes ☐ No

   *If yes, please provide caption, case number, file date, and court name for the lawsuit:*

   Caption: _____

   Case Number: _____ File Date: __ __ / __ __ / __ __ __ __

   Court Name: _____

8. Nature of Your Own Exposure to Grace Asbestos-Containing Product:
   _____

9. Dates of Your Own Exposure to Grace Asbestos-Containing Product:
   From: __ __ / __ __ / __ __ __ __   To: __ __ / __ __ / __ __ __ __

10. Your Basis for Identification of Asbestos-Containing Product as Grace Product:
    _____

*(handwritten)* This section is Not applicable

[REMAINDER OF PAGE INTENTIONALLY BLANK]

10

**PART V — EXPOSURE TO NON-GRACE ASBESTOS-CONTAINING PRODUCTS**

Please complete the chart below for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products. If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate chart for each party. For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each product listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Non-Grace asbestos-containing products
(b) A worker who personally removed or cut Non-Grace asbestos-containing products
(c) A worker who personally installed Non-Grace asbestos-containing products

(d) A worker at a site where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(e) A worker in a space where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(f) If other, please specify. _See EX B ¥ #85 EX one_

| Party Against which Lawsuit or Claim was Filed: | | |
|---|---|---|
| | | _This information_ |
| | | _is provided as_ |
| | | _follows_ |
| **Site of Exposure 1** | Job 1 Description: | _medical 59 hospital 118_ |
| Site Name: | | _D._ |
| Address: | | _yes, unknown_ |
| City and State: | | _As set forth in Part III at p. 9 of this questionnaire_ |
| Site Owner: | Job 2 Description: | |
| | Job 3 Description: | _Additional information concerning exposure_ |
| **Site of Exposure 2** | Job 1 Description: | _is set forth in Exhibit B, Response To_ |
| Site Name: | | |
| Address: | | _Interrogatories. As stated in Section III page_ |
| City and State: | Job 2 Description: | |
| Site Owner: | Job 3 Description: | _nine, the space provided in this questionnaire_ |
| **Site of Exposure 3** | Job 1 Description: | _is not sufficient to list the information_ |
| Site Name: | | |
| Address: | | _in the space provided._ |
| City and State: | Job 2 Description: | |
| Site Owner: | Job 3 Description: | |

11

## PART VI EMPLOYMENT HISTORY

Other than jobs listed in Part III or V, please complete this Part VI for all of your prior industrial work experience up to and including your current employment. For each job, include your employer, location of employment, and dates of employment. Only include jobs at which you worked for at least one month. Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.

**Occupation Code:** 59    If Code 59, specify: Gay Smith was exposed to asbestos while working in a hospital

**Industry Code:** 118    If Code 118, specify: Containing W.R. Grace asbestos containing plank products

**Employer:** Information is provided in detail in Standard Responses to Interrogatories Response #25

**Beginning of Employment:** ___/ See Exhibit B    **End of Employment:** ___/___/___

**Location:** This information is provided in detail in Exhibit B interrogatory No. 25

Address

---

City                                State/Province                Zip/Postal Code

**Occupation Code:** _____    If Code 59, specify: ._____

**Industry Code:** _____    If Code 118, specify: _____

**Employer:** _____

**Beginning of Employment:** __ __ / __ __ / __ __ __ __    **End of Employment:** __ __ / __ __ / __ __ __ __

**Location:** _____

Address

---

City                                State/Province                Zip/Postal Code

**Occupation Code:** _____    If Code 59, specify: ._____

**Industry Code:** _____    If Code 118, specify: _____

**Employer:** _____

**Beginning of Employment:** __ __ / __ __ / __ __ __ __    **End of Employment:** __ __ / __ __ / __ __ __ __

**Location:** _____

Address

---

City                                State/Province                Zip/Postal Code

**Occupation Code:** _____    If Code 59, specify: ._____

**Industry Code:** _____    If Code 118, specify: _____

**Employer:** _____

**Beginning of Employment:** __ __ / __ __ / __ __ __ __    **End of Employment:** __ __ / __ __ / __ __ __ __

**Location:** _____

Address

---

City                                State/Province                Zip/Postal Code

12

## PART VII. LITIGATION AND CLAIMS REGARDING ASBESTOS AND/OR SILICA

### a. LITIGATION

**1. Have you ever been a plaintiff in a lawsuit regarding asbestos or silica?**.............................☒ Yes ☐ No

*If yes, please complete the rest of this Part VII(a) for each lawsuit.   For your convenience, additional copies of Part VII are attached as Appendix G to this Questionnaire*

**2. Please provide the caption, case number, file date, and court name for the lawsuit you filed:**

Caption:  _Ellen Ashdown v Abex Corp._

Case Number: _96/288_                       File Date: _05/31/1994_

Court Name: _S.F. Superior Court_

**3. Was Grace a defendant in the lawsuit?** ...........................................................................☒ Yes ☐ No

**4. Was the lawsuit dismissed against any defendant?** ..................................................................☐ Yes ☒ No

*If yes, please provide the basis for dismissal of the lawsuit against each defendant:*

**5. Has a judgment or verdict been entered?**...........................................................................☐ Yes ☒ No

*If yes, please indicate verdict amount for each defendant(s):*  _____

**6. Was a settlement agreement reached in this lawsuit?** ...............................................☒ Yes ☒ No

*If yes and the settlement was reached on or after April 2, 2001, please indicate the following:*

a. Settlement amount for each defendant: _____ _See Ex one which_
b. Applicable defendants:_____ _provides all the information requested_
c. Disease or condition alleged: _____ _in this section_
d. Disease or condition settled (if different than disease or condition alleged): _Meso_

**7. Were you deposed in this lawsuit?** ...........................................................................☐ Yes ☒ No

*If yes and Grace was not a party in the lawsuit, please attach a copy of your deposition to this Questionnaire.*

### b. CLAIMS    _See Attached Exhibit One_

**1. Have you ever asserted a claim regarding asbestos and/or silica, including but not limited to a claim against an asbestos trust (other than a formal lawsuit in court)?** ...........................................☒ Yes ☐ No

*If yes, please complete the rest of this Part VII(b). If no, please skip to Part VIII.*

**2. Date the claim was submitted:**.................................................. _ _ / _ _ / _ _ _ _

**3. Person or entity against whom the claim was submitted:** _____

**4. Description of claim:** _Bankruptcy_

**5. Was claim settled?** ......................... _See EX one_ ................☐ Yes ☐ No

**6. Please indicate settlement amount:** ...................................$_____

**7. Was the claim dismissed or otherwise disallowed or not honored?** ...........................☐ Yes ☒ No

*If yes, provide the basis for dismissal of the claim:* _As set forth in Exhibit One, various bankruptcy claims have been submitted or will be submitted since companies are in bankruptcy that have not set a claims filing date. The name of each bankrupt defendant and the claim status is all set forth in Exhibit One_

## PART III: CLAIMS BY DEPENDENTS OR RELATED PERSONS

**Name of Dependent or Related Person:** _Ellen Ashdown_    **Gender:** ☐ Male ☒ Female

**Last Four Digits of Social Security Number:** _0466_    **Birth Date:** _03 / 19 / 1945_

**Financially Dependent:** ...................................................................................................☒ Yes ☐ No

**Relationship to Injured Party:** ☒ Spouse ☐ Child ☐ Other  If other, please specify _____

**Mailing Address:** _525 E. Gulf Beach Drive_
Address

_St. George Island_            _F/._            _32328_
City            State/Province            Zip/Postal Code

**Daytime Telephone number:** ..............................................................( _510_ ) _832-2980_ .

## PART IX: SUPPORTING DOCUMENTATION

Please use the checklists below to indicate which documents you are submitting with this form.
**Copies:**

☑ Medical records and/or report containing a diagnosis
☐ Lung function test results
☐ Lung function test interpretations
☑ Pathology reports
☑ Supporting documentation of exposure to Grace asbestos-containing products
☑ Supporting documentation of other asbestos exposure

☐ X-rays
☐ X-ray reports/interpretations
☐ CT scans
☐ CT scan reports/interpretations
☐ Depositions from lawsuits indicated in Part VII of this Questionnaire
☑ Death Certification

**Originals:**

☐ Medical records and/or report containing a diagnosis
☐ Lung function test results
☐ Lung function test interpretations
☐ Pathology reports
☐ Supporting documentation of exposure to Grace asbestos-containing products

☐ Supporting documentation of other asbestos exposure
☐ X-rays
☐ X-ray reports/interpretations
☐ CT scans
☐ CT scan reports/interpretations
☐ Death Certification

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation. Please indicate the documents for which you are seeking reimbursement and attach a receipt for such costs:

## PART X: ATTESTATION THAT INFORMATION IS TRUE AND ACCURATE

The information provided in this Questionnaire must be accurate and truthful. This Questionnaire is an official court document that may be used as evidence in any legal proceeding regarding your Claim. The penalty for presenting a fraudulent Questionnaire is a fine of up to $500,000 or imprisonment for up to five years, or both. 18 U.S.C. §§ 152 & 3571. **TO BE COMPLETED BY THE INJURED PERSON.**

I swear, **under penalty of perjury**, that, to the best of my knowledge, all of the foregoing information contained in this Questionnaire is true, accurate and complete.

Signature: _____    Date: __ / __ / ____

Please Print Name: _____

**TO BE COMPLETED BY THE LEGAL REPRESENTATIVE OF THE INJURED PERSON.**

I swear that, to the best of my knowledge, all of the information contained in this Questionnaire is true, accurate and complete.

X Signature: _____    Date: _03 / 06 / 2006_

Please Print Name: _____

LAW OFFICES OF
CHRISTOPHER E. GRELL
360 22ND ST., SUITE 320
OAKLAND, CA 94612

Additional Responses To W.R. Graces' Proof of Claim
Section I and II

## **EXHIBIT A**

Claimant's Responses to W.R. Graces' Proof of Claim Request for Information Concerning Claimant/Asbestos Victim's Asbestos Related Injury Including Medical Documentation, x-ray reports, pathology reports if applicable, doctors opinion concerning Claimant/Asbestos Victims Asbestos Injury – information that is too voluminous to write out in the space provided for in W.R. Graces' Proof of Claim form Sections Part I and Part II.

Consequently, it is necessary to add to the responses to Part I and Part II set forth in the W.R.Graces' Proof of Claim Form these additional responses.

**Exhibit A:**    Responsive Information Pertaining To Claimant/Asbestos Victim's Asbestos Related Injury   Re: W.R. Grace

Case 01:01:139-AMS Spe Doc 12931-1 File 08/04/06 Page 23 of 76

P.O. Box 2171 • 700 Lebo Blvd.
Bremerton, WA 98310

JM-F
CEG/
Skenve

Samuel Hammar, M.D., Director
Keith Hallman, M.D.
John Matan, M.D.
David M. Bray, M.D.

(360) 479-7707
800-762-2344 (WA)
(360) 479-7886 FAX

*April 17, 1995*

**APR 19 1995**

*Jeanette M. Waight, Legal Assistant to*
*Christopher E. Grell, Attorney at Law*
*The Monadnock Building*
*685 Market Street #340*
*San Francisco, California 94105*

*Re:    Smith, Gary G.*
*Our L-259-94*

*Dear Ms. Waight:*

*Please find enclosed my report on Gary G. Smith. Mr. Smith was only 49 years old when*
*he died from malignant mesothelioma. You indicated that he had an exposure to asbestos*
*and also had a 34-pack/year history of cigarette smoking.*

*Mr. Smith also had a history of hairy cell leukemia that was diagnosed and treated 15 years*
*ago. This is a rare type of leukemia of lymphocytes that by light microscopy have*
*protrusions from the cell surface which makes them look hairy. This disease was treated*
*with splenectomy and chemotherapy and appeared to have been cured.*

*In early 1994, Mr. Smith started complaining of left lower chest pain and left upper*
*quadrant pain. A chest X-ray and CT scan of the chest and abdomen showed thickening of*
*the left pleura and thickening in the left upper quadrant of the abdomen. Pleural biopsies*
*were done, which were stated to be nondiagnostic. A thoracoscopy was attempted but could*
*not be done because of the rind of tumor covering the left lung. A thoracotomy was done*
*and biopsies were obtained that showed pieces of fibrous tissue that had an appearance*
*consistent with a characteristic of a desmoplastic mesothelioma.*

*Mr. Smith had a rapidly downhill course and died on April 21, 1994, only a few months*
*after his diagnosis. The autopsy tissue that I received showed an extensive malignant tumor*
*encasing the left lung. The predominant pattern of the tumor was that of a desmoplastic*
*mesothelioma, although there are other areas in which the tumor was relatively polymorphic,*
*being composed of some large tumor giant cells. There was even focal epithelial*
*differentiation by the tumor. The immunohistochemical studies we performed on the tumor*
*confirmed it to be a malignant mesothelioma.*

*Asbestos digestion analysis on a small sample of lung tissue that was sent with the other*
*pieces of tissue showed 800 asbestos bodies/gram of wet lung tissue. Based on the elevated*
*numbers of asbestos bodies in the lung tissue and the history of occupational exposure to*
*asbestos, I conclude that Mr. Smith's malignant left pleural mesothelioma was caused by*
*asbestos.*

Exhibit A

*If you have any questions concerning my report, please let me know.*

*Sincerely,*

*Samuel P. Hammar, M.D.*

*SPH/sl*

*Encl.*

ᴅAGNOSTIC SPECIALTIES LABORATᴑ .., ᴎC., P.S.
**700 LEBO BOULEVARD/P.O. BOX 2171**
**BREMERTON, WASHINGTON  98310**

| | | | | | |
|---|---|---|---|---|---|
| **Name:** | Smith, Gary G. | | Age:   49   Attorney:  Grell | | |

**Name:** Smith, Gary G.                    Age:   49   Attorney:  Grell
                                            DOB: 07-29-44    DOD:  04-21-94
**Patient No:** Consultation                               Date:  09/22/94, 11/9/94
**Requested:** Jeanette M. Waight, Legal Assistant to Christopher E. Grell,
              Attorney at Law, The Monadnock Building, 685 Market Street
              #340, San Francisco, California  94105

**Specimens:** Autopsy tissue sample        Thomas P. Wood, M.D.
               94A-16                        Pathology/Tallahassee Memorial
                                             Magnolia Drive & Miccosukee Road
                                             Tallahassee, Florida  32308
**rc'd 11/9** Review of slides (4) + (3) paraffin blocks
              94S-757  (2) + (2)
              94S-1551 (2) + (1)

All from pathologist

Received from Thomas P. Wood, M.D., Department of Pathology, Tallahassee
Memorial Regional Medical Center, Tallahassee, Florida, at the request of
Jeanette M. Waight, Legal Assistant to Christopher E. Grell, Attorney at Law,
San Francisco, California, is a bag of fixed autopsy tissue.  Also received is a
copy of Dr. Wood's autopsy report of Gary G. Smith, who died April 21, 1994 at
age 49 years.  Received on November 9, 1994 are an additional four glass slides
plus three paraffin blocks with corresponding pathology reports concerning Gary
G. Smith.  .

Gross Description:
Received in a small gauze sponge are eleven pieces of tissue, the majority of
which have the appearance of tumor tissue, with at least two of these showing
tumor in association with lung, with the tumor forming what appears to be a rind
around the lung, with macroscopic findings highly suggestive of malignant
mesothelioma.  There is one piece of bone that probably represents rib, and some
other pieces of tissue that include rib and bone, and solid tumor.  There is one
nodule of tissue that is brownish-tan, that consists mostly of tumor with
central necrosis.  I'm uncertain what the brownish-tan tissue surrounding this
is.  Sections of lung tissue with obvious tumor are submitted in cassettes 1-3;
other sections of tumor are submitted in cassettes 4 and 5; sections of the
nodule with the appearance of metastatic tumor are submitted in cassette 6.
There is one piece of relatively normal-appearing lung tissue measuring about 3
x 3 x 0.5 cm that shows one area of slight visceral pleural thickening that
could be tumor.  A small slice of this tumor is submitted in cassette 7, and the
remainder is submitted for asbestos digestion analysis.  It weighs approximately
1.3 g.

There is a copy of a consultation report concerning Mr. Gary Smith from the
Tallahassee Memorial Regional Medical Center by Dr. Dale A. Wickstrum dated
March 3, 1994.  This history states that Mr. Smith was a 49-year-old man who was
recently admitted to the Tallahassee Memorial Regional Medical Center for
exploratory left thoracotomy.  The history states that two-three months prior to

-continued-
ACCESSION L-259-94

Smith, Gary G.
Consultation
Page 2

this time, Mr. Smith noted pain and discomfort in the left lower rib cage.  This
appeared to be adjacent to a previous splenectomy scar.  Mr. Smith also noted
epigastric discomfort and low back pain.  A chest radiograph was done which
showed an area of thickening in the left pleura.  A left pleural biopsy was
performed which was stated to be nondiagnostic.  A CT scan of the chest and the
abdomen showed an area of thickening in the left chest area, an area of
thickening in the stomach wall, and thickening in the left upper retroperitoneal
region.  An upper GI study showed greatly thickened gastric folds and upper GI
endoscopy showed gastritis.  The biopsy showed chronic inflammation.  The report
goes on to state that Mr. Smith had a history of hairy cell leukemia
approximately 15 years ago, presenting with a huge spleen and pancytopenia.  He
was treated by splenectomy.  In addition, he had a lytic lesion in the left
clavicle and received a course of radiation treatment to the left clavicle.
There was no radiation given to the left hemithorax.  Mr. Smith subsequently was
treated with systemic chemotherapy consisting of platinum, Velban, and
chlorambucil.  Mr. Smith had no other problems related to his hairy cell
leukemia and had not required any blood transfusions.  Except for the most
recent illness, he had been doing well.  He had a few abnormal lymphocytes
detectable in his peripheral blood.

Mr. Smith was admitted to the hospital for a left thoracotomy.  The report
states that an attempt was made to explore the pleura via thoracoscopy, but the
rind of tumor involving the left pleura made this procedure difficult.
Subsequent open biopsies of the pleura were obtained which were stated to show
an atypical spindle-cell proliferation consistent with a consistent
mesothelioma.  The pathology slides were stated to have been reviewed at the
University of Virginia, and the report from that institution stated that the
findings were consistent with a spindle-cell variant of a malignant mesothelioma
(my note:  a spindle-cell variant of malignant mesothelioma is referred to as a
sarcomatoid mesothelioma or a fibrous mesothelioma).  The report states that Mr.
Smith's chief problem was pain and that an epidural catheter was placed to
deliver medicines to relieve the pain.  Mr. Smith was also being considered for
an intercostal nerve block.  Mr. Smith had been taking Zantac and Valium but no
other medications.  He had no significant past medical illnesses except for his
hairy cell leukemia.  Under the heading "Habits" Mr. Smith was stated to have a
past history of cigarette smoking and also a prior history of asbestos exposure
(my note:  the type of asbestos exposure he had is not stated).  On physical
examination, auscultation of the right lung was stated to be clear.  The left
lung showed decreased breath sounds at the left base.  Palpation of the abdomen
showed no palpable hepatomegaly.  Laboratory studies showed a hematocrit of 38,
a white blood cell count of 8,600, and a platelet count of 304,000.  The
differential white blood cell count was normal.

There is a copy of a death summary from the Tallahassee Memorial Regional
Medical Center by Dr. R. James Mabry.  This short report indicates that Mr.
Smith had been diagnosed as having mesothelioma and had a past history of hairy
cell leukemia.  He was admitted to the hospital because of the inability to keep
his pain under control at home.  At the time of admission, Mr. Smith was started
on IV fluids and was given parenteral corticosteroids and was continued on MS

-continued-
ACCESSION L-259-94

Smith, Gary G.
Consultation
Page 3

Contin by mouth and received small doses of Valium. A CT scan of the head was
was ordered and showed slight cerebral atrophy but no evidence of metastatic
tumor. Mr. Smith had a fairly rapidly downhill course and died on April 21,
1994, which was about four days after his admission.

There is a copy of an autopsy report from the Pathology Associates of
Tallahassee Memorial Regional Medical Center, Tallahassee, Florida. The first
page of the autopsy lists Mr. Smith's name, age, date of birth, and hospital
number. The death on the autopsy report was April 21, 1994, and the date of the
autopsy was April 22, 1994. The final anatomic diagnoses, which are listed on
the first page, are:

1.     PLEURAL MESOTHELIOMA WITH EXTENSION INTO THE LEFT CERVICAL AREA AND LEFT
       UPPER QUADRANT OF THE ABDOMEN. METASTATIC TUMOR INVOLVING MEDIASTINUM,
       RIGHT LUNG, MESENTERY, MUCOSA OF BOWEL, PERIAORTIC LYMPH NODES,
       RETROPERITONEAL AREA, LIVER, AND ADRENAL GLAND.

2.     OBSOLETE OPERATION:  SPLENECTOMY (HISTIOCYTIC OR HAIRY CELL LEUKEMIA).

3.     PERITONEAL ADHESIONS.

4.     SEVERE CONGESTION AND PNEUMONITIS OF THE RIGHT LUNG.

5.     CYST OF THE UPPER POLE OF THE LEFT KIDNEY.

6.     NEGATIVE CENTRAL NERVOUS SYSTEM, PROSTATE, LARYNX, THYROID, TESTES AND
       HEART.

7.     MULTIPLE IRON STAINS NEGATIVE FOR FERRUGINOUS BODIES.

8.     NO EVIDENCE OF RESIDUAL OR RECURRENT HAIRY CELL LEUKEMIA.

Under the heading of "Internal Examination" on the second page of the autopsy,
it states that the body was opened through a Y-shaped incision and there was
dense fibrous thickening of the pleura and the diaphragm on the left. There
were also dense fibrous peritoneal adhesions. Dissection of the small and large
bowels and abdominal viscera was difficult. Dissection of the left lung was
also stated to be extremely difficult due to the fibrotic tumor mass. Increased
peritoneal fluid was present which was described as being straw-colored. Under
the heading "Cardiovascular System" the heart was stated to weigh 250 grams and
to appear grossly normal. Under the heading "Respiratory System" the left lung
was removed in two portions which weighed 610 and 340 grams each. The lung
surface was covered by thick greyish-white fibrotic pleura with occasional
nodules. Similar tissue was involving the left diaphragm. The right lung was
stated to weight 1,600 grams and to contain thickened pleura, pleural nodules
and occasional parenchymal nodules that were greyish-white and roughly round.
The trachea and larynx were stated to be unremarkable. Both lungs are stated to
appear congested. Under the heading "Spleen and Lymph Nodes" the autopsy report
states that the spleen was surgically absent, and that there were large lymph
nodes present in many areas. Some of these were stated to be reddish-purple on

-continued-
ACCESSION L-259-94

Smith, Gary G.
Consultation
Page 4

sectioning and others firm and greyish-white. Obvious tumor was present within
the lymph nodes in the posterior mediastinum at the periaortic region and the
mesentery of the bowel. Under the heading "Gastrointestinal Tract" the autopsy
report states that the esophagus was unremarkable. The gastric mucosa was
stated to be distinctly pebbled. The pylorus and duodenum were stated to be
unremarkable except for focal dark grey discoloration of the pylorus. The small
and large bowels were unremarkable except for the numerous fibrous adhesions on
the surface. There was pebbly induration adjacent to the cecum. The pancreas
was stated to be unremarkable. The liver was stated to weigh 2,610 grams and
contain numerous grey-white metastatic tumor nodules that were sometimes
umbilicated. About 85-95% of the liver was stated to be replaced by tumor.
Under the heading "Genitourinary," the report states that the left kidney
weighed 160 grams, and there was a 30-gram cyst at the upper pole. The right
kidney weighed 130 grams. Both kidneys were stated to be unremarkable and the
ureters were not dilated. The urinary bladder was not dilated, and the prostate
was stated to not be enlarged. Under the heading "Endocrine," the thyroid was
stated to be unremarkable and the parathyroid glands were stated to not be
identified. The left adrenal gland was stated to contain an adjacent portion of
what appeared to be metastatic tumor. Under the heading "Bone," bone from
multiple sites was obtained and some marrow contained firm greyish-white fibrous
tumor suggestive of metastatic involvement. Under the heading "Central Nervous
System," the brain was stated to weigh 1,480 grams and to show no significant
changes.

There are two glass slides and two paraffin blocks designated "94S-757."
One of the slides designated "94S-757" consist mostly of skeletal muscle and
fibrous tissue consistent with chest wall and parietal pleura. This slide is
unremarkable. The other slide designated "94S-757" consists mostly of dense
fibrous tissue that is moderately cellular in area with a small amount of
skeletal muscle at one side. The appearance of this tissue would raise the
possibility of a malignant mesothelioma, probably desmoplastic variety. I don't
think one could be absolutely certain from this biopsy if this is malignant or
benign, although the appearance would raise a possibility of a malignancy. The
other differential diagnosis would be "FIBROSING PLEURITIS."

There are two glass slides designated "94S-1551." These slides show more pieces
of the fibrous-type tissue which varies from being moderately cellular to
relatively hypocellular. The appearance of the tissue strongly suggests the
diagnosis of malignant mesothelioma in areas of increased cellularity. The
tumor is probably best classified as a desmoplastic/sarcomatoid mesothelioma.
The slides designated "94S-1551" were reviewed by Robert Fechner, M.D., and
Frank J. Bellafiore, M.D., of the University of Virginia Health Sciences Center,
Department of Pathology. Dr. Fechner and Dr. Bellafiore diagnosed malignant
mesothelioma desmoplastic type. There is also a copy of a report from IMMPATH
indicating that they performed immunohistochemistry on autopsy tissue designated
"94A-16." The tests they did were Cytokeratin, Leu M1, CEA, B72.3, and
epithelial antigen. The Cytokeratin was positive. The Leu M1, CEA, B72.3, and
epithelial antigen were all negative. Their interpretation was that these
results favored mesothelioma.

-continued-
ACCESSION L-259-94

Smith, Gary G.
Consultation
Page 5

Also present in the medical records is a copy of the death certificate, which
states that Mr. Smith died from malignant mesothelioma. There is information
from Jeanette Waight of the Christopher Grell Law Office stating that Mr. Smith
smoked one pack of cigarettes a day from 1960-1944 (34-pack/years). Under the
heading "Exposure History" the report states that Mr. Smith worked as a
counsellor at the Orange County Juvenile Hall while a remodel was being done,
and he would have been exposed to asbestos-containing materials during the
remodel. Mr. Smith also worked at Amercote, a company that manufactured
asbestos-containing pipe. His job at Amercote was to test and inspect the
asbestos-containing pipe. Mr. Smith was also stated to have worked as a
psychologist at the Florida Mental Health Hospital, which was known to have been
insulated with asbestos-containing materials.

Microscopic Description:
Sections of the tumor encasing the left lung show it to exhibit variable
differentiation. Most of the tumor is composed of relatively dense and
hypocellular connective tissue with the pattern being consistent with a
desmoplastic mesothelioma. In other areas, the tumor is much more cellular and
much more pleomorphic. It focally infiltrates into the lung parenchyma. There
are tumor giant cells with huge irregular-shaped nuclei and prominent nucleoli.
There are also areas where the tumor shows a storiform pattern such as one would
see in a malignant fibrous histiocytoma. In addition, there is focal epithelial
differentiation by the tumor in which the tumor cells are round, polygonal and
cuboidal and some focal cytoplasmic baculation. The majority of the tumor is
desmoplastic in nature. The adjacent lung tissue that is being infiltrated by
the tumor shows acute bronchitis and bronchopneumonia. The tumor focally
infiltrates into the mediastinal tissue. There is one section that shows tumor
on the serosal surface of the large intestine. The tumor is infiltrating fat
and is composed predominantly of spindle-shaped cells. There is also a section
of the liver that shows involvement by tumor that is mostly spindle-shaped
neoplasm but has areas of cellular pleomorphism with large nuclei and prominent
nucleoli.

Immunohistochemical Studies: Immunohistochemical studies were done for Keratin,
Vimentin, muscle-specific Actin, Desmin, HMFG-2, CEA, Leu M-1, B72.3, and
BerEP4. The positive controls show the expected staining result. The majority
of the neoplastic cells, including the spindle-shaped cells, the epithelial
cells, and the pleomorphic cells show immunostaining with the Keratin cocktail
antibody. Some of the spindle-shaped cells show immunostaining for Vimentin,
although most of the epithelial cells and the pleomorphic cells are negative.
The neoplastic cells show no immunostaining for muscle-specific Actin or Desmin.
The section stained for Human Milkfat Globule Protein-2 shows a good built-in
control of the alveolar lining cells. The neoplastic cells forming the
mesothelioma are negative for Human Milkfat Globule Protein-2. The neoplastic
cells show no immunostaining for CEA, Leu M-1, B72.3, and BerEP4. This
immunophenotype is nonspecific but is consistent with and characteristic of a
mesothelioma showing this type of differentiation.

-continued-
ACCESSION L-259-94

Smith, Gary G.
Consultation
Page 6

**Asbestos Digestion Analysis:** One 1.3-gram sample of peripheral lung tissue is cut into small pieces and completely digested in commercial bleach. After complete digestion the bleach is carefully decanted and the sediment at the bottom of the container is carefully extracted with equal volumes of chloroform and 50% ethyl alcohol. This solution is transferred to a test tube, shaken vigorously, and centrifuged at 1200 rpm for ten minutes. After removal of as much carbonaceous material as possible, the solution is recentrifuged and the sediment at the bottom of the test tube is extracted in 95% alcohol and passed through a Millipore filter of 0.5 micrometer diameter pore size. Asbestos bodies on the filter are then counted. Results are as follows:

Sample #1   =   800 asbestos bodies/gram wet lung tissue

**Comment:** In our laboratory, persons with no occupational history of exposure to asbestos have between 0-20 asbestos bodies per gram of wet lung tissue.

The following summary statements can be made in this case:

1.    Mr. Smith was a 49-year-old man with a 34-pack/year history of cigarette smoking and a history of exposure to asbestos while working at Amercote, a company that manufactured asbestos-containing pipe, while working as a counsellor at the Orange County Juvenile Hall while remodelling was done, and potentially while working as a psychologist at the Florida Mental Health Hospital, which was known to be insulated with asbestos-containing materials.

2.    Mr. Smith had a past medical history of hairy cell leukemia, which was diagnosed approximately 15 years prior to his death and which was treated with splenectomy, chemotherapy and radiation.

3.    Mr. Smith was well until the early part of 1994 when he presented with left lower rib cage discomfort. He was evaluated and a CT scan of the chest and abdomen showed thickening of the left pleura and thickening in the left upper quadrant of the abdomen.

4.    A closed pleural biopsy was done but was stated to be nondiagnostic. A thoracoscopy was attempted but was stated to be impossible to perform. A thoracotomy was eventually done and pleural biopsies were taken.

5.    I reviewed two slides and one block designated "94S-757" that represented the needle biopsy of the pleura. These slides showed one piece of moderately cellular fibrous tissue that I thought was suspicious for a malignant mesothelioma, desmoplastic type.

6.    I reviewed two slides and two blocks designated "94S-1551" that represented the open pleural biopsy specimen. These slides show pieces of fibrous tissue that range from being moderately cellular to hypocellular and which had an appearance consistent with a malignant mesothelioma, desmoplastic type.

-continued-
ACCESSION L-259-94

Smith, Gary G.
Consultation
Page 7

7.   An autopsy was performed on Mr. Smith by Dr. Thomas P. Wood of the
     Pathology Associates at Tallahassee Memorial Regional Medical Center in
     Tallahassee, Florida, on April 22, 1994. Dr. Wood diagnosed Mr. Smith as
     having a left pleural malignant mesothelioma with extension into the left
     cervical area and left upper quadrant of the abdomen. The tumor showed
     extensive metastases, including metastases to the mediastinum, right
     lung, mesentery, mucosa of bowel, periaortic lymph nodes, retroperitoneal
     area, liver, and adrenal gland.

8.   The biopsy slides were reviewed in consultation by Dr. Robert E. Fechner
     at the University of Virginia Pathology Department, who diagnosed
     desmoplastic mesothelioma. Immunohistochemical studies were done on
     autopsy tissue by IMMPATH of New York City, who diagnosed findings
     consistent with mesothelioma.

9.   We received various tissue specimens including tumor; lung, liver
     involved by tumor, and colon that was involved by tumor on the serosal
     surface. The tumor had a histologic and immunohistochemical pattern
     consistent with and characteristic of a malignant mesothelioma that was
     predominantly desmoplastic in nature but which showed other types of
     differentiation, including an anaplastic component and an epithelial
     component.

10.  We performed asbestos digestion analysis in our laboratory and found 800
     asbestos bodies/gram of wet lung tissue.

11.  Based on the occupational history of exposure to asbestos, plus the
     elevated numbers of asbestos bodies in the digested lung tissue, I
     conclude that Mr. Smith's left pleural malignant mesothelioma was caused
     by asbestos.

SPH/sl
ACCESSION NO.  L-259-94

JW

**PATHOLOGY ASSOCIATES**
TALLAHASSEE MEMORIAL REGIONAL MEDICAL CENTER
TALLAHASSEE, FLORIDA 32308
TELEPHONE (904) 681-5888

ΓLOMATES OF THE
MERICAN BOARD OF PATHOLOGY

THOMAS P WOOD, M D.
WOODWARD BURGERT, JR., M.D.
DAVID E. CRAIG, M.D.
JERRY L. HARRIS, M.D.
BEN M. TURNER, M D.
JOHN P. MAHONEY, M D
CHARLES F. MANNING, JR., M.D.
MARGARET HAVENS NEAL, M.D.
L. STEPHEN SARBECK, M D
DAVID STEWART, M D.
DAVID J. DOLSON, M D
LYNN H. DOLSON, M.D.

## AUTOPSY REPORT

PATIENT: Smith, Gary G.    AGE: 49    RACE: White    SEX: Male
ACCESSION #: 94A-16    DATE OF BIRTH: 7-29-44    HOSPITAL #: 94099231

DATE OF DEATH: April 21, 1994    DATE OF AUTOPSY: April 22, 1994
TIME OF DEATH: 11:55 a.m.    TIME OF AUTOPSY:
DATE ADMITTED: April 18, 1994    DATE AUTOPSY COMPLETED: July 8, 1994
DATE OF SURGERY:

PERMISSION:    Complete
PATHOLOGIST:    Thomas P. Wood, M.D.
PHYSICIAN:    R. James Mabry, Jr., M.D. ¡/

### FINAL ANATOMIC DIAGNOSES:

Pleural malignant mesothelioma, left with extension into left cervical
 area and left upper quadrant of the abdomen
Metastases involving the mediastinum, right lung, mesentery and mucosa
     of bowel, periaortic lymph nodes, retroperitoneal area, liver
     and adrenal gland
Obsolete operation:   Splenectomy (histiocytic or hairy cell leukemia)
Peritoneal adhesions, fibrous
Severe congestion and pneumonitis of right lung
Cyst of the upper pole of left kidney
Negative central nervous system, prostate, larynx, thyroid, testes
  and heart
See IMPATH consultation report
Multiple iron stains negative for ferruginous bodies
No evidence of residual or recurrent histiocytic or hairy cell leukemia

THOMAS P. WOOD, M.D.
bt/da

AUTOPSY REPORT                    2                    Smith, Gary G.
                                                       94A-16

EXTERNAL DESCRIPTION                              The autopsy
specimen is the body of an adult male who is emaciated. The hair
is fairly long and there is abundant beard and mustache growth
with slight graying. There is an old midline scar that extends
from the xiphoid to just above the pubis. Weight is estimated at
110-120 pounds and body length measures approximately 5 feet 10
1/2 inches. Numerous freckles are present over the anterior
surface of the trunk. Pupils are difficult to visualize but are
apparently 5 to 6 millimeters in diameter. The irides are brown
and there is slight arcus formation. Natural teeth are present.

EVIDENCE OF TREATMENT                             There is an
intravenous infusion apparatus present in the right arm. A
fentanyl transderm patch is present over the right pectoral area.
Identification tags are present. Two stitches are present in the
central midlumbar area closing a recent incision. This is
covered by a bandage.

INTERNAL EXAMINATION                              The body is
opened with the usual Y-shaped incision. There is dense fibrous
thickening of the pleura and the diaphragm on the left. There
are also dense fibrous peritoneal adhesions. Dissection of the
small and large bowels and the abdominal viscera is difficult.
Dissection of the left lung is also extremely difficult due to
the fibrotic tumor mass. There is increased peritoneal fluid
which is clear and straw colored. There is no significant
increase of pleural or pericardial fluid.

CARDIOVASCULAR SYSTEM                             The heart
weighs 250 grams and appears grossly normal. The aorta shows no
significant sclerosis.

RESPIRATORY SYSTEM                               The left lung
is removed in two portions and these weigh 610 and 340 grams
each. The lung surface is covered by thick grayish-white
fibrotic pleura with occasional nodules. Similar tissue is
present within the left diaphragm. The right lung weighs 1,600
grams and contains scattered thickened pleural nodules and
occasional parenchymal nodules that are grayish-white and roughly
round. The trachea and larynx are not remarkable. The lungs
both appear congested.

SPLEEN AND LYMPH NODES                           The spleen is
surgically absent. Enlarged lymph nodes are present in many
areas. Some of these appear reddish-purple upon sectioning and
others are firm and grayish-white. Obvious tumor within lymph
nodes is present within the posterior mediastinum, the periaortic
nodes and the mesentery of the bowel.

AUTOPSY REPORT                           3                    Smith. Gary G.
                                                             94A-16


GASTROINTESTINAL TRACT                                    The esophagus
is not remarkable. The gastric mucosa has a distinct pebbled
pattern especially in the proximal portion. The pylorus and
duodenum are not remarkable aside from some dark gray
discoloration at the pylorus. The small and large bowels are not
remarkable aside from the numerous fibrous adhesions described
above. There is a plate like area of pebbly induration noted
adjacent to the cecum. The pancreas is not remarkable. The
liver weighs 2,610 grams and contains innumerable grayish-white
metastatic tumor nodules that are moderately firm and are
sometimes umbilicated. There is approximately 85-95% of the
liver replaced by this tumor.

GENITOURINARY                                            The left
kidney weighs 160 grams which does not include a 30 gram cyst at
the upper pole. The right kidney weighs 130 grams. The kidneys
are not remarkable otherwise and the ureters are not dilated.
The bladder is not dilated and the prostate is not enlarged and
contains no tumor. There is no evidence of tumor within the
testes.

ENDOCRINE                                                The thyroid is
not remarkable. The parathyroid glands are not recognized. The
left adrenal contains an adjacent portion of what appears to be
metastatic tumor similar to that described above.

BONE                                                     Bone from
multiple sites is obtained and some of the marrow contains a firm
grayish-white fibrous tumor process similar to that described
above. There is massive tumor involvement on the anterolateral
aspect of the lower cervical vertebral bodies.

CENTRAL NERVOUS SYSTEM                                    The brain
weighs 1,480 grams, shows normal vasculature and a normal gyral
pattern. The brain is step-sectioned at close intervals and
there is no evidence of neoplasia. necrosis, hemorrhage. tumor or
inflammatory change. There is pigmentation of the substantia
nigra.

MICROSCOPIC                                               Sections of
myocardium are not remarkable. Sections of lung show areas of
intense pneumonitis and areas of fibrosis with variable
infiltration of bland and more commonly obviously malignant
nuclei. In some areas small irregular spaces are lined by large
bizarre obviously malignant cells. Similar tumor is present
within the pleura, the left cervical area, the abdomen including
lymph nodes. mucosa and serosa of the gastrointestinal tract,
adrenals and liver. Many sections are stained for iron. No
ferruginous bodies are recognized.

AUTOPSY REPORT                    4                    Smith, Gary G.
                                                      94A-16


                                                      Sections    of
bone   marrow show areas of myeloid and erythroid  production   and
areas  of  pale  hypocellularity.  There  is  no  actual   tumor
infiltrate noted within the bone marrow.  Sections of kidney show
no tumor.  Central nervous system sections are not remarkable.

SPECIAL   STUDIES                                    Appropriate
tissue  is submitted to IMPATH for tissue and tumor   markers.   A
copy  of  the results is attached and the   interpretation   states
that  the results favor mesothelioma.  This is in agreement  with
the previous consultation obtained on antemortem biopsy material.


THOMAS P. WOOD, M.D.

bt/da

## CERTIFICATE OF DEATH
### FLORIDA

FILE NO.

| 1. DECEDENT'S NAME | FIRST | MIDDLE | LAST | 2. SEX |
|---|---|---|---|---|
| | Gary | Gragg | Smith | Male |

| 3. DATE OF DEATH (Month, Day, Year) | 4. SOCIAL SECURITY NUMBER | 5a. AGE-Last Birthday (years) | 5b. UNDER 1 YEAR Months / Days | 5c. UNDER 1 Day Hours / Minutes |
|---|---|---|---|---|
| April 21, 1994 | 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 | 49 | | |

| 6. DATE OF BIRTH (Month, Day, Year) | 7. BIRTHPLACE (City and State or Foreign Country) | 8. WAS DECEDENT EVER IN U.S. ARMED FORCES? (Yes or No) |
|---|---|---|
| July 29, 1944 | Memphis, Tennessee | No |

9a. PLACE OF DEATH (Check only one: see instructions on other side)

HOSPITAL: X Inpatient __ ER/Outpatient __ DOA    OTHER: __ Nursing Home __ Residence __Other (Specify)

9b. INSIDE CITY LIMITS? (Yes or No) Yes

| 9c. FACILITY NAME (If not institution, give street and number) | 9d. CITY, TOWN, OR LOCATION OF DEATH | 9e. COUNTY OF DEATH |
|---|---|---|
| Tallahassee Memorial Regional Medical Ctr. | Tallahassee | Leon |

| 10a. DECEDENT'S USUAL OCCUPATION | 10b. KIND OF BUSINESS/INDUSTRY | 11. MARITAL STATUS —Married, Never Married, Widowed, Divorced (Specify) | 12. SURVIVING SPOUSE (If wife, give maiden name) |
|---|---|---|---|
| Clinical Psychologist | Psychology | Married | Ellen Abernethy |

| 13a. RESIDENCE — STATE | 13b. COUNTY | 13c. CITY, TOWN, OR LOCATION | 13d. STREET AND NUMBER |
|---|---|---|---|
| Florida | Leon | Tallahassee | 3016 Brookmont Dr. |

| 13e. INSIDE CITY LIMITS? (Yes or No) | 13f. ZIP CODE | 14. WAS DECEDENT OF HISPANIC OR HAITIAN ORIGIN? (Specify No or Yes — If yes, specify Haitian, Cuban, Mexican, Puerto Rican, etc.) X No __ Yes | 15. RACE — American Indian, Black, White, etc. Specify: | 16. DECEDENT'S EDUCATION (Specify only highest grade completed) Elementary/Secondary (0-12) / College (1-4 or 5+) |
|---|---|---|---|---|
| Yes | 32312 | Specify: | White | _ / 5+ |

| 17. FATHER'S NAME (First, Middle, Last) | 18. MOTHER'S NAME (First, Middle, Maiden Surname) |
|---|---|
| William Tyler Smith | Lama Florine Springer |

| 19a. INFORMANT'S NAME (Type/Print) | 19b. MAILING ADDRESS (Street and Number or Rural Route, City or Town, State, Zip Code) |
|---|---|
| Ellen A. Ashdown | 3016 Brookmont Dr., Tallahassee, Florida 32312 |

| 20a. METHOD OF DISPOSITION | 20b. PLACE OF DISPOSITION (Name of cemetery, crematory, or other place) | 20c. LOCATION — City or Town, State |
|---|---|---|
| X Burial __ Cremation __ Removal from State __ Donation __ Other (Specify) | Roselawn Cemetery | Tallahassee, Florida |

| 21a. SIGNATURE OF FUNERAL SERVICE LICENSEE OR PERSON ACTING AS SUCH | 21b. LICENSE NUMBER (of Licensee) | 21c. NAME AND ADDRESS OF FACILITY |
|---|---|---|
| | | Culley's MeadowWood Funeral Homes P.O. Box 12487, Tallahassee, FL 32317 |

22a. To the best of my knowledge, death occurred at the time, date and place and due to the cause(s) as stated. (Signature and Title) ► *James Mabry MD*

23a. On the basis of examination and/or investigation, in my opinion death occurred at the time, date and place and due to the cause(s) and manner as stated. (Signature and Title) ►

| 22b. DATE SIGNED (Mo., Day, Yr.) | 22c. HOUR OF DEATH |
|---|---|
| 4/25/94 | M |

| 23b. DATE SIGNED (Mo., Day, Yr.) | 23c. HOUR OF DEATH M |
|---|---|

22d. NAME OF ATTENDING PHYSICIAN IF OTHER THAN CERTIFIER (Type or Print)

23d. MEDICAL EXAMINER'S CASE # _ _ _ - _ _ _ - _ _ _ _

24. NAME AND ADDRESS OF CERTIFIER (PHYSICIAN, MEDICAL EXAMINER) (Type or Print)

R. James Mabry MD 1632 Riggins Rd Tallahassee 32708

| 25a. SUBREGISTRAR — SIGNATURE AND DATE | 25b. LOCAL REGISTRAR — SIGNATURE | 25c. DATE REGISTERED |
|---|---|---|
| ► | ► | |

26. PART I. Enter the diseases, injuries, or complications that caused the death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock, or heart failure. List only one cause on each line.

| | | Approximate Interval Between Onset and Death |
|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) → | a. Mesothelioma | Ca. 8 mos |
| | DUE TO (OR AS A CONSEQUENCE OF): | |
| Sequentially list conditions, if any, leading to immediate cause. Enter UNDERLYING CAUSE (Disease or injury that initiated events resulting in death) LAST. | b. _____ | |
| | DUE TO (OR AS A CONSEQUENCE OF): | |
| | c. _____ | |
| | DUE TO (OR AS A CONSEQUENCE OF): | |
| | d. | |

| PART II. Other significant conditions contributing to death but not resulting in the underlying cause given in Part I. | 27a. WAS AN AUTOPSY PERFORMED? (Yes or No) | 27b. WERE AUTOPSY FINDINGS USED TO COMPLETE CAUSE OF DEATH? (Yes or No) | 28. CASE REPORTED TO MEDICAL EXAMINER? (Yes or No) |
|---|---|---|---|
| leukemic reticuloendotheliosis | yes | no | |

| 29. IF FEMALE, WAS THERE A PREGNANCY IN THE PAST 3 MONTHS? __YES X NO | 30a. IF SURGERY IS MENTIONED IN PART I or II ENTER CONDITION FOR WHICH IT WAS PERFORMED | 30b. DATE OF SURGERY (Mo., Day, Year) |
|---|---|---|
| | | |

| 31. PROBABLE MANNER OF DEATH (Specify) Natural, accident, suicide, homicide, or undetermined. | 32a. DATE OF INJURY (Month, Day, Year) | 32b. TIME OF INJURY M | 32c. INJURY AT WORK? (Yes or No) | 32d. DESCRIBE HOW INJURY OCCURRED |
|---|---|---|---|---|
| | 32e. PLACE OF INJURY — At home, farm, street, factory, etc. (Specify) | | 32f. LOCATION (Street and Number or Rural Route Number, City or Town, State) | |

Additional Responses To W.R. Graces' Proof of Claim Parts/
Section III, IV, V and VI

## **EXHIBIT B**

Claimant's Responses to W.R. Graces' Proof of Claim Request for Information Concerning Claimant/Asbestos Victim's Asbestos Personal History, Family Information, Work History, Asbestos Exposure to W.R. Graces' Asbestos Containing Products and Others, Worksites, etc.

As noted, this information that is too voluminous to write out in the space provided for in W.R. Graces' Proof of Claim form Sections Part III, Part IV, V and Part VI.

Consequently, it is necessary to add to the responses to Part III and Part VI these additional responses to W.R. Graces' Proof of Claim Form.

**Exhibit B:**    Responsive Information Pertaining To Claimant/Asbestos Victim's
Asbestos Exposure to W.R. Graces' Asbestos Products

1  CHRISTOPHER E. GRELL (#88498)
   JOANNE LAWRENCE (#147070)
2  LAW OFFICES OF
   CHRISTOPHER E. GRELL
3  The Monadnock Building
   685 Market Street, Suite 340
4  San Francisco, California  94105
   (415) 541-9866
5
   Attorney for Plaintiffs
6

7

8        IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            IN AND FOR COUNTY OF SAN FRANCISCO

10

11  ELLEN ASHDOWN, KRISTY SMITH, IAN  )   NO.   961288
    SMITH as Surviving Heirs and ELLEN)
12  ASHDOWN as Executrix of the Estate)
    of GARY SMITH,                    )   PLAINTIFFS' ANSWERS TO
13                                     )   WRONGFUL DEATH
                 Plaintiffs,          )   INTERROGATORIES
14                                     )
        v.                             )
15                                     )
                                       )
16  ABEX CORPORATION, et al.,          )
                                       )
17                 ·Defendants.        )
                                       )
18

19  PROPOUNDING PARTY:  Defense Group

20  RESPONDING PARTY:   Plaintiffs:  Ellen Ashdown

21  SET NUMBER:         One (1)

22       Plaintiff responds to Defense Group's Standard First

23  Set of interrogatories as follows.  Answers are made solely on

24  the information available to plaintiff and, to the best of

25  plaintiff's present recollection and knowledge.  Where

26  indicated, response are made on plaintiff's information and

27  belief.  Plaintiff's investigation is continuing and other

28  information may well come to plaintiff's attention before

                           -1-                    Exhibit B

1  trial.   Counsel has assisted plaintiff and has interposed

2  objections where necessary.

3          Some of the events which may be relevant to the

4  matters inquired about by defendant's interrogatories occurred

5  many years ago.  As a result of this lapse of time, memories

6  fade and much of the information is difficult to retrieve.

7  Plaintiff will make every effort to answer each interrogatory

8  fully to the best of his or her recollection at this time.

9  The following is a part of and incorporated by reference as if

10  therein written in every answer provided hereinafter:  Because

11  plaintiff has to answer these interrogatories at a very early

12  date, much of the information is based on plaintiff's ability

13  to recall events that took place many years ago so while this

14  answer is accurate as of the date of the plaintiff's answers

15  to these interrogatories, plaintiff's investigation is

16  continuing, and plaintiff cannot exclude the possibility that

17  he may be able to obtain more complete information or even

18  information which indicates that the answer being supplied is

19  incorrect.

20          Throughout these interrogatories you will find

21  frequent references to Exhibit "A", Exhibit "B" and Exhibit

22  "C".   These Exhibits include the following:

23          Exhibit "A"     An index of all unprivileged

24                          documents maintained by plaintiff's

25                          counsel that relate to Sumner Simpson

26                          and defendant RAYMARK, commonly known

27                          as the "Sumner Simpson Papers".

28          Exhibit "B"     An index of all unprivileged

CHRISTOPHER E. GRELL
885 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 84105
TEL (415) 541-8668  FAX (415) 541-8669

-2-

1                                  documents maintained by plaintiff's

2                                  counsel that relate to defendant

3                                  OWENS-ILLINOIS; and

4            Exhibit "C"    An index of all unprivileged

5                                  documents maintained by plaintiff's

6                                  counsel other than as specifically

7                                  outlined above that relate to the

8                                  asbestos litigation.

9            These Exhibits are voluminous in nature, identical

10   in every case and have been previously served on all

11   defendants.  As they are updated from time to time, the

12   revised Exhibits with the revision date are served on all

13   defendants.  Plaintiff will make a copy of any Exhibit to any

14   defendant upon request, but will not routinely serve these

15   voluminous Exhibits with the answers to interrogatories.

16   These Exhibits are incorporated by reference herein in the

17   same manner as if attached hereto.

18

19            RESPONSE TO INTERROGATORY NO. 1:  Decedents spouse.

20       a)   Name:  Ellen Ashdown

21       b)   Relationship to decedent:  Wife

22       c)   Date of birth:  3/9/45

23       d)   Place of birth:  Duncan, OK

24       e)   Address:  3016 Brookmont Dr., Tallahassee, FL 32312

25       f)   Height:  5'7"

26       g)   Social Security Number:  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

27       h)   Kaiser Number:  N/A

28       i)   Military Serial Number:  N/A

LAW OFFICES OF
CHRISTOPHER E. GRELL
665 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-8666  FAX (415) 541-8669

1    j)    Government Serial Numbers:  N/A

2    k)    Driver's License Number and State:  Fla. A235-201-

3  45-589-0

4    l)    All names by which you have been known:  Ellen Kay

5  Abernethy, Ellen Kay Ashdown, Ellen A. Ashdown, Ellen

6  Abernethy Ashdown Smith

7    m)    Highest grade level completed:  Ph.D.

8    n)    Current Spouse's Name:  N/A

9    o)    Date of current marriage:  N/A

10    p)    Name of any former spouse:  Paul G. Ashdown

11    q)    Date of former marriage:  4/24/66, 1/16/76

12    r)    Place, date and circumstances under which any

13  marriage(s) was (were) dissolved or terminated:

14    1b)    Gainesville, Fla., 2/28/69, irreconcilable

15         differences.

16    2b)    Plaintiff's former spouse, Gary Smith died of

17         mesothelioma an asbestos caused cancer on 4/2/94.

18

19         RESPONSE TO INTERROGATORY NO. 1B:  Decedent.

20    a)    Name:  Gary Smith

21    b)    Date of birth:  7/29/44 (Gary)

22    c)    Place of birth:  Memphis, Tn.

23    d)    Address:  3016 Brookmont Dr., Tallahassee Fl. 32312

24    e)    Height:  5' 10 1/2"

25    f)    Social Security Number:  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

26    g)    Kaiser Number:  N/A

27    h)    Military Serial Number:  N/A

28    i)    Government Serial Numbers:  N/A

LAW OFFICES OF
CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-9886  FAX (415) 541-9888

-4-

1  3/    j)    Driver's License Number and State:  Fla. S530-287-

2  44-269-0

3      k)    All names by which you have been known:  Gary G.

4  Smith, Gary Gragg Smith

5      l)    Highest grade level completed:  Ph.D.

6      m)    Current Spouse's Name:  Ellen Ashdown

7      n)    Spouse's Date of Birth:  3/9/45

8      o)    Date of current marriage:  1/16/76

9      p)    Spouse's current address:  3016 Brookmont Dr.,

10  Tallahassee Fl. 32312

11      q)    Spouse's Occupation/Employer:  Writer, Self-employed

12      r)    Name of any former spouse:  Pamela Cox Smith

13      s)    Date of former marriage:  3/21/64

14      t)    Place, date and circumstances under which any

15  marriage(s) was (were) dissolved or terminated:  Gainesville,

16  Fla., 6/1/71, irreconcilable differences.

17

18          RESPONSE TO INTERROGATORY NO. 2: Decedent's children

19  are as follows:

20

| Name | Date of Birth | Address | Occupation |
|------|---------------|---------|------------|
| 1) Kristen D. Smith | 1) 10/31/64 | 1) 417-A N.E. 4 Ave., Gainesville Fl. 32601 | 1) Researcher Federal medical Study |
| 2) Ian B. Smith | 2) 11/21/67 | 2) 929 N.E. 7th Avenue Gainesville, Fl. 32601 | 2) Carpenter, house-builder and student |

LAW OFFICES OF
CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-8686  FAX (415) 541-9686

1       <u>RESPONSE TO INTERROGATORY NO. 3</u>:  Are decedent's

2 parents still living?

3     Mother:  Yes           Father:  No

4     a)   Current age: 85

5

6       <u>RESPONSE TO INTERROGATORY NO. 4</u>:  Are decedent's

7 parents dead?

8 Father's Name: William Tyler Smith  Mother's Name: Lama Smith

9 a) Age of death: Unknown

10 b) Cause of death: pneumonia

11

12       <u>RESPONSE TO INTERROGATORY NO. 5</u>:  To the best of

13 plaintiffs' ability to recall such information, decedent lived

14 at the following addresses:

15

16     <u>Address</u>                    <u>Date(s)</u>

17   1) 3016 Brookmont Dr., Tallahassee, Fl.    1) July 1991-April 1994

18

19   2) 1105 E. 6th Avenue, Tallahassee, Fl.    2) March 1977-July 1991

20   3) 728 2 E. 6th Avenue, Tallahassee, Fl.    3) August 1976-March 1977

21

22   4) 5442 Conradi St., Tallahassee, Fl.    4) August 1975-August 1976

23   5) 318 N. W. 24th Street, Gainesville, Fl.    5) 1971-August 1975

24

25   6) Apt. 200-A, Flavet III, Gainesville, Fl.    6) 1968-1970

26   7) 401 North Bedford, LaHabra, Ca.    7) 1964-1967

27   8) 11864 First Street, Orange, Ca.    8) 1967-1968

28   9) 711 North Laura, LaHabra, Ca.    9) 1962-1964

LAW OFFICES OF
CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-8868  FAX (415) 541-8869

1    <u>RESPONSE TO INTERROGATORY NO. 6</u>:    Decedent's

2    education background is as follows:    Decedent received a

3    Bachelor's BA degree at California State at Fullerton 1967;

4    M.A. University of Florida, Gainesville, 1971; Ph.D.

5    University of Florida, Gainesville, 1977

6

7    <u>RESPONSE TO INTERROGATORY NO. 7</u>:    Decedent's

8    criminal background, if any, is as follows:    None

9

10    <u>RESPONSE TO INTERROGATORY NO. 8</u>:    Decedent's

11    military experience, if any, is as follows:    None

12

13    <u>RESPONSE TO INTERROGATORY NO. 9</u>:

14    Plaintiff objects to this interrogatory on the

15    grounds that it requests the disclosure of the identities of

16    expert witnesses and consultants and as such is protected by

17    the attorney work product privilege.    Without waiving said

18    objections, and without disclosing the identities of such

19    experts and consultants, plaintiff responds as follows:

20    Complete information regarding every Doctor who treated

21    decedent may be found in decedent's medical records.

22    Consequently, the following information is provided to assist

23    you in identifying and subpoenaing these records.    The

24    information is as complete as plaintiff can recall at this

25    time and plaintiff reserves the right to amend and/or modify

26    their response as new and more accurate information is

27    uncovered.

28

LAW OFFICES OF
CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-9868   FAX (415) 541-9868

1  1)  **Doctor's Name and Address**      **Dates of Treatment and Reason**

2      R. James Mabry, M.D.               1978-     General medical care
       1632 Riggins Rd.                   4/94      mesothelioma
3      Tallahassee, Fl. 32308                       hairy cell leukemia

4
5  2)  **Doctor's Name and Address**      **Dates of Treatment and Reason**

6      J. Daniel Davis, M.D.              1994      lung problems
       1401 Centerville Rd.
7      Tallahassee, Fl.  32308

8
9  3)  **Doctor's Name and Address**      **Dates of Treatment and Reason**

10     Charles Bianco, M.D.               1994      Mesothelioma
       1623 Medical Dr.
11     Tallahassee, Fl. 32308

12
13 4)  **Doctor's Name and Address**      **Dates of Treatment and Reason**

14     David Saint, M.D.                  2/94      Mesothelioma
       1401 Centerville Rd.
15     Tallahassee, Fl. 32308

16
17 5)  **Doctor's Name and Address**      **Dates of Treatment and Reason**

18     Glenn W. Mahan, M.D.               1962-     General Medical Care
       360 North Harbor Blvd.             1968
19     LaHabra, Ca 90631

20
21 6)  **Doctor's Name and Address**      **Dates of Treatment and Reason**

22     James Stockwell, M.D.              1994      Mesothelioma
       2400 Miccosukee Rd.
23     Tallahassee, Fl. 32308

24
25
26
27 7)  **Doctor's Name and Address**      **Dates of Treatment and Reason**
28

LAW OFFICES OF
CHRISTOPHER E. GRELL
605 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-8868  FAX (415) 541-8868

-8-

Richard Henry, M.D.      1994    Mesothelioma
2173 Centerville P.
Tallahassee, Fl. 32308

8)   Doctor's Name and Address     Dates of Treatment and Reason

Mark Vogelhut, M.D.      1994    Mesothelioma
2173 Centerville Pl.
Tallahassee, Fl. 32308

8)   Doctor's Name and Address     Dates of Treatment and Reason

Dale Wickstrum, M.D.      1994    Mesothelioma
1300 Miccosukee Rd.
Tallahassee, Fl. 32308

RESPONSE TO INTERROGATORY NO. 10:

Plaintiff objects to this interrogatory on the grounds that it requests the disclosure of the identities of expert witnesses and consultants and as such are protected by the attorney work product privilege.   Without waiving said objections, and without disclosing the identities of such experts and consultants, plaintiff responds as follows: Complete information regarding every hospital decedent went to may be found in decedent's medical records.  Consequently, the following information is provided to assist you in identifying and subpoenaing these records.  The information is as complete as plaintiff can recall at this time and plaintiff reserves the right to amend and/or modify their responses as new and more accurate information is uncovered.

LAW OFFICES OF
CHRISTOPHER E. GRELL
885 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-8888  FAX (415) 541-8868

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
CHRISTOPHER E. GRELL
805 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-8858  FAX (415) 541-8859

1) <u>Name and Address of Hospital</u>

Dates of Test, Treatment,
Examination or
<u>Hospitalization and Reason</u>

Tallahassee Memorial          12/10/    Lung problems
Regional Medical Center       1993      mesothelioma
Magnolia Dr. and Muccosukee   1/19/94
Rd                            1/26/94
Tallahassee, Fl. 32304        1/28/94
                              2/2/94
                              2/10/94
                              2/19 -
                              2/24/94

2) <u>Name and Address of Hospital</u>

Dates of Test, Treatment,
Examination or
<u>Hospitalization and Reason</u>

Radiology Associates    2/2/94    Endoseopy
Tallahasee, Fla.

3) <u>Name and Address of Hospital</u>

Dates of Test, Treatment,
Examination or
<u>Hospitalization and Reason</u>

Tallahassee Orthopedic    3/1/94    Permanent Epidural
Surgery Center                     Catheter
3334 Capitol Medical Blvd.

<u>RESPONSE TO INTERROGATORY NO. 11:</u>

Plaintiff objects to this interrogatory on the grounds
that it requests the disclosure of the identities of expert
witnesses and consultants and as such is protected by the
attorney work product privilege.    Without waiving said
objections, and without disclosing the identities of such
experts and consultants, plaintiff responds as follows:
Complete information regarding x-rays of decedent's trunk
i.e., upper body, may be found in decedent's medical records.
Consequently, the following information is provided to assist
you in identifying and subpoenaing these records.    The
information is as complete as plaintiff can recall at this

1  time and plaintiff reserves the right to amend and/or modify

2  their response.

3

4  1) Name and Address

5     Where X-ray        Date(s) and No.    Part(s) of
      Was Taken          of X-ray           Body X-rayed    Results

6

7  Tallahassee Memorial   12/10/93    CXR    Abnormal
   Regional Medical       1/19/94     CT     abnormal

8  Center                 3/8/94      CT     mesothelioma
   Magnolia Dr. and       4/18/94     CT     mesothelioma

9  Muccosukee Rd
   Tallahassee, Fl.

10 32304

11

12 2) Name and Address

13    Where X-ray        Date(s) and No.    Part(s) of
      Was Taken          of X-ray           Body X-rayed    Results

14

15 Tallahassee Memorial   9/1978    CXR    Unknown
   Regional Medical

16 Center
   Magnolia Dr. and

17 Muccosukee Rd
   Tallahassee, Fl.

18 32304

19

20      RESPONSE TO INTERROGATORY NO. 12:

21      Plaintiff objects to this interrogatory on the grounds

22 that it requests the disclosure of the identities of expert

23 witnesses and consultants and as such is protected by the

24 attorney work product privilege.   Without waiving said

25 objections, and without disclosing the identities of such

26 experts and consultants, plaintiff responds as follows:

27 Complete information regarding pulmonary function tests may be

28 found in decedent's medical records.   Consequently, the

1  following information is provided to assist you in identifying

2  and subpoenaing these records.  The information is as complete

3  as plaintiff can recall at this time and plaintiff reserves

4  the right to amend and/or modify their response.  Plaintiff is

5  not aware of decedent having PFT's done while he was alive.

6

7

8      RESPONSE TO INTERROGATORY NO. 13:  Plaintiff cannot

9  recall each and every medication decedent took in the last ten

10 years of his life.  To the best of plaintiff's present

11 recollection and knowledge, decedent has taken Tylenol,

12 Darvocet, Tylox, Zantac, Fentanyn, Morphine, Cisplatin,

13 Valium, Interferon.

14      The exact doses and frequency are presently unknown.

15 Discovery is continuing.

16

17     RESPONSE TO INTERROGATORY NO. 14:  (a-b) Plaintiff

18 objects to this interrogatory to the extent it seeks the

19 reports of plaintiff's consultants on the grounds that such

20 information is protected by the attorney work-product

21 privilege.  Subject to this objection, plaintiff(s) responds

22 as follows:

23      To the best of plaintiff's knowledge, defendant have

24 either medical releases or copies of all discoverable medical

25 reports presently available.  Further, plaintiffs will provide

26 defendants with copies of all medical records and reports as

27 required by law.  In addition, please see plaintiff's

28 responses to interrogatories numbered 9, 10, 11 and 12.

-12-

1        RESPONSE TO INTERROGATORY NO. 15:

2            Due to the debilitating effects of decedent's

3    asbestos-related disease, plaintiff contends that decedents

4    entire body has become adversely affected by his exposure to

5    asbestos and asbestos-containing products.  Decedent's

6    symptoms became increasingly more aggravated.  Decedent's

7    complaints include shortness of breath, coughing, and a

8    reduction of activities and mobility.  The onset of these

9    symptoms was so gradual that it is not possible to identify a

10   specific date as to when they started.  However, to the best

11   of plaintiff's present recollection the following is in

12   reasonable approximation:

13           a)   To the best of plaintiff's knowledge decedent's

14   symptoms and complaint included: Chest pain, shortness of

15   breath, loss of mobility, loss of 25 lbs.

16           b)   Decedent suffered from mesothelioma.

17           c)   Decedent cannot recall the first time decedent

18   started noticing his symptoms.

19           d)   Decedent died as a result of his asbestos

20   injuries.

21           e)   Decedent's lungs and airway passages were

22   primarily affected.  However, eventually his entire body was

23   effected.

24           f)   The first time plaintiff recalls decedent going

25   to the doctor because of his complaints was July 1993.

26           g)   See (f) above.

27           h)   Yes.  The date plaintiff believes the decedent

28   became disabled was January 18, 1994.

1              RESPONSE TO INTERROGATORY NO. 16:

2              This interrogatory is object to on the grounds that

3    the information sought is protected by the attorney client

4    privilege.  Without waiving this objection, plaintiff responds

5    as follows:

6              a)    The first time plaintiff learned that decedent

7    had an asbestos disease was February 21, 1994.

8              b)    Plaintiff learned about decedent's asbestos

9    disease from Dr. David Saint.

10             c)    See (b) above.

11             d)    Plaintiff does not know what doctors were

12   involved in the determination that decedent had an asbestos

13   disease.

14             e)    Plaintiff has no way of knowing what other

15   people this information was provided to.

16             f)    Decedent was employed as a self-employed

17   clinical psychologist with Tallahassee Institute for pain and

18   stress management and consultant for Fla. Office of Disability

19   Determination, Department of Labor.

20             g)    Decedent's therapy included:  radiation,

21   chemotherapy

22             h)    Yes.  Please see Interrogatory answers Nos. 13

23   and 16(b) and (c).

24             i)    Plaintiff objects to this interrogatory to the

25   extent it seeks reports of plaintiff's consultants on the

26   ground that such information is protected by the attorney-

27   work-product privilege.  Subject to and as modified by this

28   objection, plaintiff has no present knowledge of those other

-14-

1

## RESPONSE TO INTERROGATORY NO. 16:

2          This interrogatory is object to on the grounds that

3   the information sought is protected by the attorney client

4   privilege.  Without waiving this objection, plaintiff responds

5   as follows:

6          a)   The first time plaintiff learned that decedent

7   had an asbestos disease was February 21, 1994.

8          b)   Plaintiff learned about decedent's asbestos

9   disease from Dr. David Saint.

10         c)   See (b) above.

11         d)   Plaintiff does not know what doctors were

12  involved in the determination that decedent had an asbestos

13  disease.

14         e)   Plaintiff has no way of knowing what other

15  people this information was provided to.

16         f)   Decedent was employed as a self-employed

17  clinical psychologist with Tallahassee Institute for pain and

18  stress management and consultant for Fla. Office of Disability

19  Determination, Department of Labor.

20         g)   Decedent's therapy included:  radiation,

21  chemotherapy

22         h)   Yes.  Please see Interrogatory answers Nos. 13

23  and 16(b) and (c).

24         i)   Plaintiff objects to this interrogatory to the

25  extent it seeks reports of plaintiff's consultants on the

26  ground that such information is protected by the attorney-

27  work-product privilege.  Subject to and as modified by this

28  objection, plaintiff has no present knowledge of those other

CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-8888   FAX (415) 541-8889

1  than already listed who confirmed the determination.

2

3          RESPONSE TO INTERROGATORY NO. 17:

4          Not to plaintiff's present recollection or

5  knowledge.

6          (a-d) not applicable.

7

8          RESPONSE TO INTERROGATORY NO. 18:   A death

9  certificate was prepared.   (See Exhibit 1).

10          (a-g) See attached death certificate.

11

12          RESPONSE TO INTERROGATORY NO. 19:   To the best of

13  plaintiff's present recollection an autopsy was performed.

14          (A-H) (See Exhibit 2)

15

16          RESPONSE TO INTERROGATORY NO. 20:   Plaintiff is

17  informed that pathology materials were done at the following

18  places: Tallahassee Memorial Regional Medical Center

19  Magnolia Dr. and Muccosukee Rd., Tallahassee, Fl. 32304.

20

21          RESPONSE TO INTERROGATORY NO. 21:

22          Plaintiff is not presently aware of any other

23  personal injury lawsuits brought by decedent.

24          (a-d) Not applicable)

25

26          RESPONSE TO INTERROGATORY NO. 22:   To the best of

27  plaintiff knowledge decedent smoked cigarettes.

28

LAW OFFICES OF
CHRISTOPHER E. GRELL
665 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-9888  FAX (415) 541-9868

1    RESPONSE TO INTERROGATORY NO. 23:    To be best of

2  plaintiff s' recollections:

3        a)    Decedent smoked from 1960 to 1994.

4        b)    Decedent smoked cigarettes.

5        c)    Decedent smoked approximately one pack a day

6  maximum.    Before his illness, in the fall, he had reduced his

7  smoking to as few as 10 cigarettes a day.

8        d)    See (f) above.

9        e)    Decedent smoked Kent III, Marlboro brand(s) of

10  cigarettes.

11

12    RESPONSE TO INTERROGATORY NO. 24:    Plaintiff cannot

13  state with accuracy decedents consumption of alcoholic

14  beverages in his lifetime.    However, to the best of

15  plaintiff's knowledge, decedents consumption was for the most

16  part limited to social occasions.

17

18    RESPONSE TO INTERROGATORY NO. 25:    Decedents work

19  history.

20                                        Date Started-
   1)  Employer's Name and Address  Job Title    Date Ended
21                                        (mo,day,year)

22    Clinical Psychologist,        Therapist    Nov. 1988-Dec. 1993
      Tallahassee Institute for
23    Pain and Stress Management
      Buford Ct.,
24    Tallahassee, Fl.

25

26

27  Description of Job Duties:

28  Did part-time work as a therapist at the Institute before
    1988, while he was still at Florida State Hospital.

LAW OFFICES OF
CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-8866  FAX (415) 541-8869

LAW OFFICES OF
CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 240
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-9868  FAX (415) 541-9868

1

2    <u>Does Plaintiff contend that decedent was exposed to</u>
     <u>asbestos:</u>

3    Plaintiff is not aware of exposure at present.  Discovery is
     continuing.

4

5

6    2)  <u>Employer's Name and Address</u>  <u>Job Title</u>     Date Started-
                                                          <u>Date Ended</u>
7                                                          (mo,day,year)

8        Office of Disability        Claims         Approx. July 1992-
         Determination Florida       Examimer       January 1994
9        Depart of Labor
         227 North Bronough St and
10       1709 Mahan Dr.
         Tallahassee, Fl.

11

12

13   <u>Description of Job Duties:</u>

     Deceased reviewed claims for Social Security disability
14   benefits for the mentally ill.

15

16   <u>Does Plaintiff contend that decedent was exposed to</u>
     <u>asbestos:</u>

17   Plaintiff is not aware of exposure at present.  Discovery is
     continuing.

18

19                                                        Date Started-
20   3)  <u>Employer's Name and Address</u>  <u>Job Title</u>     <u>Date Ended</u>
                                                          (mo,day,year)

21
         Florida State Hospital      Clinical       January 1977-August
22       Chattahoochee, Fl.          Psycholo-      1988
         (State Mental Hospital)     gist
23                                   Chief
                                     Psycholo-
24                                   gist

25

26

27   <u>Description of Job Duties:</u>

28   Deceased performed duties of (1977-78) clinical psychologist
     and (1979-88) chief psychologist, Civil Division.

Does Plaintiff contend that decedent was exposed to asbestos:

Yes

4)  Employer's Name and Address    Job Title    Date Started-
                                                Date Ended
                                                (mo,day,year)

    The Drug Project              Psychol-      August 1973-Jan. 1976
    Gainesville, Fl.              ogist
    (It was housed in an old
    (c.1930s') private
    residence in Gainesville,
    Florida.

Description of Job Duties:

Refer to C.V. Exhibit 4.

Does Plaintiff contend that decedent was exposed to asbestos:

Plaintiff is not aware of exposure at present.  Discovery is continuing.

5)  Employer's Name and Address    Job Title    Date Started-
                                                Date Ended
                                                (mo,day,year)

    University of Florida         Psychology    1968-1972
    Gainesville, Fla.             Intern
    See Deceased's attached C.V.
    Exhibit for his practice and
    internships. These were in
    various University of
    Florida buildings.

Description of Job Duties:

See Exhibit 4 attached C.V. of decedent.

Does Plaintiff contend that decedent was exposed to asbestos:

CHRISTOPHER E. GRELL
LAW OFFICES OF
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-9686  FAX (415) 541-9689

1

2   Plaintiff is not aware of exposure at present. Discovery is continuing.

3

4

5

6   6)   <u>Employer's Name and Address</u>   <u>Job Title</u>   Date Started-
                                                            <u>Date Ended</u>
7                                                            (mo,day,year)

8        Orange County              Counselor      1967
9        Juvenile Hall
         Anaheim, Calif.

10

11

12   <u>Description of Job Duties</u>:

13   Decedent performed the duties of a counselor at the Orange County Juvenile Hall.

14

15   <u>Does Plaintiff contend that decedent was exposed to asbestos</u>:

16

17   Yes

18

19   7)   <u>Employer's Name and Address</u>   <u>Job Title</u>   Date Started-
                                                            <u>Date Ended</u>
20                                                            (mo,day,year)

21       Amercoat corporation      Pipe          1964-1966
         201 North Berry st.       testing
22       Brea, CA                  and
                                   inspecting
23

24   <u>Description of Job Duties</u>:

25   Decedent performed duties of Inspector of asbestos containing pipes.
26

27   <u>Does Plaintiff contend that decedent was exposed to asbestos</u>:
28
     Yes

1    RESPONSE TO INTERROGATORY NO. 26:

2        While discovery is just beginning, plaintiff s informed

3    and believes that decedent's exposure may include but is not

4    limited to the following types of asbestos products during his

5    lifetime:  Asbestos fiber, asbestos tape, asbestos mud,

6.   asbestos cloth, asbestos pipecovering, asbestos cement,

7    asbestos insulation pads, asbestos paper, asbestos gaskets,

8    manhole and handhole gaskets, other asbestos insulation,

9    asbestos powder, asbestos insulated wire, asbestos sheets,

10   asbestos wallboard, asbestos bricks, asbestos insulation

11   bricks, asbestos-containing construction products and/or

12   asbestos-containing friction products.  Plaintiff is

13   continuing to research the specific brand names, dates of

14   exposure, packaging and labeling of all asbestos and asbestos-

15   containing products to which decedent was exposed.  Due to the

16   amount of asbestos and the number of asbestos-containing

17   products manufactured, sold, and distributed by the defendants

18   served in this action, as well as the number of years over

19   which decedent's exposure occurred, plaintiff has not yet been

20   able to clearly specify brand names, packaging and labeling of

21   all products.  In addition, not all exposure to asbestos and

22   asbestos-containing products was from "new" asbestos and "new"

23   asbestos-containing products since a great deal of retrofit

24   and repair was done.  Additionally, decedent was exposed to

25   asbestos and asbestos-containing products used by co-workers

26   and other trades working in close proximity to him, and the

27   full extent of this exposure is still being ascertained.

28   Without waiving plaintiff's objection, plaintiff responds to

LAW OFFICES OF
CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 84105
TEL (415) 541-9866  FAX (415) 541-9869

1 (a-i) as follows:

2      (a)   Dates of Exposure:  1967, 1977-1988

3      (b)   Manner and Duration of Exposure:  Daily work in a
4 plant that manufactured asbestos pipes.

5      (c)   Did decedent install asbestos products: Not that
6 plaintiff is presently aware.

7      (d)   Did decedent tear-out asbestos products:  Not that
8 plaintiff is presently aware.

9      (e)   See opening statement in response to interrogatory
10 No. 26, above.

11      (f)   Please see response to Interrogatory No. 25,
12 above.

13      (g)   Without waiving the above objection, plaintiff can
14 currently recall the following ships if any, that decedent
15 work on: None

16      (h)   Without waiving the above rejection, plaintiff
17 believes that the following people, who may themselves be
18 represented by counsel, were decedents supervisors:

19      Sam Cunningham - Havana, Florida
     Britt Dennis - Chatohoochee, Florida
20      Julian Davis - Naples, Florida
     Lynn Hatchen   - Address unknown
21      Peter Ivory - Address unknown
     Leoncia Curva - Address unknown
22

23      (i)   Without waiving the above objection, plaintiff can
currently recall the following co-workers of decedent:
24

25      Roy Hougton     -    Address Unknown
     Dennis Miles   -    Address Unknown
     Ken Wilson     -    Address Unknown
26      Harry McClaren -    Quincy, Fla.
     Monte Bein     -    Gainsville, Fla.
27      Bill Day       -    Address Unknown
     Leonard Gottlieb    Address Unknown
28      Barbara Young  -   Address Unknown
     Terry Carley   -    Address Unknown

LAW OFFICES OF
CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-9866  FAX (415) 541-9866

1  The following is a list of names of insulators who
2  identify various asbestos containing products at plaintiffs
3  different worksites.

4  Ralph Hatcher

5

6  RESPONSE TO INTERROGATORY NO. 27:  To the best of
7  plaintiff's knowledge, plaintiff is not aware of decedent
8  being exposed to asbestos outside his work environment.  (a-c)
9  not applicable.

10

11  RESPONSE TO INTERROGATORY NO. 28:

12  (a)  Please see answer to Interrogatory No. 25.

13  (b)  Plaintiff claims decedent was exposed to asbestos
14  products manufactured by the defendants sued in this lawsuit.
15  Plaintiff claims that decedent's exposure occurred to numerous
16  types of products described in Exhibit One attached hereto.
17  Discovery is also continuing.

18

19

20  RESPONSE TO INTERROGATORY NO. 29:

21  Plaintiff cannot presently state with precision the
22  frequency of the presence of such containers, nor can
23  plaintiff state each person witnessing or that can identify
24  each document evidencing the presence of such containers.
25  Plaintiff is informed that some of the labels indicated there
26  was asbestos of asbestos-containing products inside the
27  packages.  Plaintiff is not sure what specific type of
28  products were-in what packages.  Defendants are obviously more

CHRISTOPHER E. GRELL
LAW OFFICES OF
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-8866   FAX (415) 541-8868

1  knowledgeable than plaintiff about which of their products

2  were sold to the entities and location through which decedent

3  was exposed.  See answer no. 28 and Exhibit "C" previously

4  served on all defendants.  Plaintiff's discovery is

5  continuing.

6

7          RESPONSE TO INTERROGATORY NO. 30:

8          Decedent may have been exposed to products manufactured

9  by various companies that filed for bankruptcy and cannot be

10  sued by law. ·Exposure to their products, if any, would have

11  occurred while decedent was performing his regular work

12  duties.  See answer no. 25 above for information regarding

13  decedent's worksites.  Defendants are obviously more

14  knowledgeable than plaintiff about which of their products

15  were sold to the entitles and locations at which decedent was

16  exposed.  (a-e) To the best of plaintiff's present

17  recollection and knowledge decedent was not exposed to

18  asbestos products other than those of defendants.  Discovery

19  is continuing.

20

21          RESPONSE TO INTERROGATORY NO. 31:  Please see

22  plaintiff's response to interrogatory number· 26 for presently

23  available information concerning decedent's co-workers.

24

25          RESPONSE TO INTERROGATORY NO. 32:  Plaintiff submits

26  the following information in response to defendants question

27  about·whether decedent ever left a position due to health

28  problems.  Gary was unable to work for some time after the

1  1978 discovery of his hairy cell leukemia, which required a

2  splenectomy.  However, he never resigned his position.  He

3  returned to work after recovery.

4  He stopped working in January 1994 due to mesothelioma.

5

6  RESPONSE TO INTERROGATORY NO. 33:  To the best of

7  plaintiff's knowledge, the following employers of decedent may

8  have required physical exams.  Plaintiff is not aware of the

9  frequency, dates or any of the other information requested in

10  (a-h).

11

12  RESPONSE TO INTERROGATORY NO. 34:  To the best of

13  plaintiff's knowledge, whether decedent's involvement in

14  unions was as follows: Plaintiff is not aware.  Deceased

15  belonged to any unions in his professional career.  He was a

16  member of the American and Florida psychological associations.

17  He may have been in a union at Amercoat.

18

19

20  RESPONSE TO INTERROGATORY NO. 35:

21  The last employment decedent had before he died was as

22  follows: Psychologist.  Decedent left the job because severe

23  pain due to mesothelioma.

24

25  RESPONSE TO INTERROGATORY NO. 36:  Decedent was

26  disabled at the time he died.

27  a)  Nature of Disability: Mesothelioma

28  b)  Date of Disability: January 18, 1994

CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-9686  FAX (415) 541-9686

1    c)    Any disability pension: NO

2    d)    From whom: N/A

3

4         RESPONSE TO INTERROGATORY NO. 37:    Other than as

5    already noted, decedent did not engage in any business where

6    he had an income.

7

8         RESPONSE TO INTERROGATORY NO. 38:    Not applicable.

9

10        RESPONSE TO INTERROGATORY NO. 39:

11   1)    For Decedent, Gary Smith:

12        1.    1987              Amount: $37,131.00

13        2.    1988              Amount: $25,561.00

14        3.    1989              Amount: $15,781.00

15        4.    1990              Amount: $19,895.00

16        5.    1991              Amount: $28,672.00

17        6.    1992              Amount: $37,042.00

18        7.    1993              Amount: $52,824.00

19

20   2)    For Plaintiff Kristen Smith:

21        1.    1987              Amount: $ 6,000.00

22        2.    1988              Amount: $14,000.00

23        3.    1989              Amount: $14,000.00

24        4.    1990              Amount: $12,000.00

25        5.    1991              Amount: $10,000.00

26        6.    1992              Amount: $18,000.00

27        7.    1993              Amount: $20,000.00

28

CHRISTOPHER E. GRELL
LAW OFFICES OF
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-9866  FAX (415) 541-9866

LAW OFFICES OF
CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-9888  FAX (415) 541-9888

3)    For Plaintiff Ian Smith:

    1.    1986              Amount: $10,000.00

    2.    1987              Amount: $13,000.00

    3.    1988              Amount: $13,000.00

    4.    1989              Amount: $13,000.00

    5.    1990              Amount: $13,000.00

    6.    1991              Amount: $13,000.00

    7.    1992              Amount: $13,000.00

    8.    1993              Amount: $13,000.00


4)    For Plaintiff Ellen Ashdown:

    1.    1987              Amount: $42,964.00

    2.    1988              Amount: $32,833.00

    3.    1989              Amount: $37,725.00

    4.    1990              Amount: $30,244.00

    5.    1991              Amount: $48,320.00

    6.    1992              Amount: $43,590.00

    7.    1993              Amount: $43,390.00


RESPONSE TO INTERROGATORY NO. 40:  Because plaintiffs'
investigation and discovery is continuing, plaintiff does not
have copies of all decedent's hospital and medical bills.
Plaintiffs will provide this information once all these bills
have been obtained.  If defendants want this information
sooner, it is available to them by subpoena.


RESPONSE TO INTERROGATORY NO. 41:  Please see Response
to Interrogatory No. 40, above.

1    <u>RESPONSE TO INTERROGATORY NO. 42</u>:  Plaintiffs does not

2  know if any company is obligated to pay decedent's hospital

3  expenses.   Decedent had Blue Cross-Blue Shield medical

4  coverage however.

5

6    <u>RESPONSE TO INTERROGATORY NO. 43</u>:  Decedent's funeral

7  arrangements where taken care of by Culley Funeral Home,

8  Tallahassee, Fla..

9

10    <u>RESPONSE TO INTERROGATORY NO. 44</u>:  Plaintiff was buried

11  April 27, 1994.

12

13    <u>RESPONSE TO INTERROGATORY NO. 45</u>:

14    Please see response to interrogatory No. 44.

15

16    <u>RESPONSE TO INTERROGATORY NO. 46</u>:  Plaintiffs are not

17  in a position to quantify the total of decedent's funeral

18  expenses.   To date, the plaintiffs have incurred approximately

19  $5,000.00 in funeral expenses.

20

21    <u>RESPONSE TO INTERROGATORY NO. 47</u>:  Previously accident

22  or injury claims, in excess of $500, if any, filed by decedent

23  are as follows: None

24

25    <u>RESPONSE TO INTERROGATORY NO. 48</u>:   (Presently pending

26  asbestos compensation claims.) None

27

28    <u>RESPONSE TO INTERROGATORY NO. 49</u>:   (Prior personal

CHRISTOPHER E. GRELL
LAW OFFICES OF
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-9868  FAX (415) 541-9868

1  injury lawsuits.) None

2

3      RESPONSE TO INTERROGATORY NO. 50:    (a-d) Asbestos

4  workers compensation awards. N/A

5

6      RESPONSE TO INTERROGATORY NO. 51:    (a-b)   Plaintiff

7  will provide defendant with the names of all settling

8  defendants and the total amount of any settlement at the

9  settlement conference.

10

11      RESPONSE TO INTERROGATORY NO. 52:   My attorneys

12  requested social security earnings information.

13

14      RESPONSE TO INTERROGATORY NO. 53: My attorney will make

15  the social security earning records available to defendant

16  when received.

17

18      RESPONSE TO INTERROGATORY NO. 54:   (Photographs of

19  decedent in last 12 months.)   Yes.

20

21      RESPONSE TO INTERROGATORY NO. 55:   (Employment History

22  of Heirs.)

23

24

25  (1)  For Plaintiff Ellen Ashdown:

26  | Employer's Name and Address | Job Title | Dates |
   | --- | --- | --- |

27  | Self-Employed writer and editor | Self-Employed Writer and Editor | Dec. 1986-present |
28  | See Exhibit #3 | | |

LAW OFFICES OF
CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 84105
TEL (415) 541-9866  FAX (415) 541-9869

CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-8866   FAX (415) 541-8868

(2)   <u>For Plaintiff Ian Smith:</u>

| Employer's Name and Address | Job Title | Dates |
|---|---|---|
| Tom Smith Construction Co.<br>Gainesville, Fla. | Carpenter | 2/94-present |
| Precision Landscape Services<br>Gainesville, Fla. | Landscaper | 1989-1993 |
| Calton Dental Lab.<br>Gainesville, Fla. | Ceramics Technician | 1987-1989 |
| Oasis Landscaping<br>Gainesville, Fla. | Landscaper | 1986 |

(3)   <u>For Plaintiff Kristen Smith:</u>

| Employer's Name and Address | Job Title | Dates |
|---|---|---|
| University of Florida<br>Gainesville, Fla. | Health Educator | 5/92-present |
| Bagels Unlimited<br>Gainesville, Fla. | Witness | 1989-1991 |
| Florida Museum of Natural History<br>University of Fla. | Archaeologist | 1987-1989 |

<u>RESPONSE TO INTERROGATORY NO. 56</u>:   (Was there a will?)

Yes

<u>RESPONSE TO INTERROGATORY NO. 57</u>:   If yes, state:

a)   Was it probated: Pending

b)   Executor name: Ellen Ashdown

c)   Executor Address: 3016 Brookmont Dr., Tallahassee, Fl. 32312

d)   Attorney Handling Probate: Ms. Terry Carley

1          RESPONSE TO INTERROGATORY NO. 58:    N/A

2

3          RESPONSE TO INTERROGATORY NO. 59:    (a-b) See response

4    to No. 58, above.

5

6          RESPONSE TO INTERROGATORY NO. 60:

7          (a)    Name of heirs living at home: Ellen Ashdown

8          (b)    Amount of money decedent contributed to heir

9    living at home.   Decedent contributed income necessary for the

10   upkeep.   Maintenance of their home.

11

12         RESPONSE TO INTERROGATORY NO. 61:    Was decedent

13   dependant on anyone for support.   If so: No

14

15         RESPONSE TO INTERROGATORY NO. 62:    Please see

16   plaintiff's response to interrogatory number 60.   In addition,

17   decedent provided support to the following individuals living

18   outside of his home (if applicable): Deceased handled all of

19   his mother's financial affairs and had power of attorney.   He

20   did not contribute money.

21

22         RESPONSE TO INTERROGATORY NO. 63:    Did decedent provide

23   support to anyone other than spouse, children, or parents.   If

24   so: No

25

26         RESPONSE TO INTERROGATORY NO. 64:    Was decedent ever

27   charged with failure to make support payments: No

28

CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-8868   FAX (415) 541-8869

1    RESPONSE TO INTERROGATORY NO. 65:   Services decedent

2   provided.

3        (a)   Name of person receiving services: Lama Smith

4        (b)   Description: Investments of all financial affairs

5   (banking, insurance, paying bills), taxes

6        (c)   Total time: 1 hour per week average

7        (d)   Dates: Don't remember when he started.   His

8   mother will.

9        (e)   Was decedent paid, if so, how much? No

10        (f)   Name of person compensating decedent: N/A

11        (g)   Replacement value of services: Unknown

12        (h)   Name of person doing replacement work: Brent Smith

13

14    RESPONSE TO INTERROGATORY NO. 66:   Yes, plaintiff is

15   claiming damages for the loss of decedents care, guidance,

16   advise, counsel, society etc.   Plaintiff is presently not in a

17   position to put a dollar value on this loss just yet.

18

19    RESPONSE TO INTERROGATORY NO. 67:   Hobbies, games, and

20   activity done with decedent:

21   1)   For Plaintiff Ellen Ashdown:   Attended dance and music

22   concerts, movies, went swimming, reading, watching television,

23   taking vacations to cities, beach, and mountains, spending

24   much time in conversation together.

25

26

27

28   2)   For Plaintiff Kristen Smith:   Spend much time in

LAW OFFICES OF
CHRISTOPHER E. GRELL
665 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-8668   FAX (415) 541-8668

1 conversation together regarding politics, social issues, sing

2 together, go to beach house, St. George Island, Fla., watch

3 movies together, go out to dinner.

4

5 3)    For Plaintiff Ian Smith:   Playing guitar together,

6 camping hiking, road trips to Tennessee, supportive acting

7 interest, dinner, spending much time in conversation together.

8

9        RESPONSE TO INTERROGATORY NO. 68:   Time spent per day

10 with decedent:

11        For Plaintiff Ellen Ashdown:   20 hours

12

13        For Plaintiff Kristen Smith:   Every other weekend,

14 holidays, phone calls on a regular basis.

15

16        For Plaintiff Ian Smith:   A weekend a month, telephone

17 calls weekly when not visiting father.

18

19        RESPONSE TO INTERROGATORY NO. 69:   Ever file any formal

20 complaints against decedent?  If yes:   No

21

22        RESPONSE TO INTERROGATORY NO. 70:   Ever file for

23 divorce or legally separated?  No

24

25        RESPONSE TO INTERROGATORY NO. 71:   Plaintiff objects to

26 this question on the grounds this information is privilege

27

28

LAW OFFICES OF
CHRISTOPHER E. GRELL
885 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-9666  FAX (415) 541-9669

1    <u>RESPONSE TO INTERROGATORY NO. 72</u>:  My attorneys:  The

2  Law Offices of Christopher E. Grell, The Monadnock Building,

3  685 Market Street, Suite 340, San Francisco, CA, (415) 541-

4  9866.

5

6  DATED:  November 19, 1994

7

8                              LAW OFFICES OF CHRISTOPHER E. GRELL

9

10                             By

11                                 Christopher E. Grell
                                   Attorney for Plaintiffs
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-9866  FAX (415) 541-9868

W.R. GRACE

PRODUCT SUMMARY

W. R. GRACE  —

| PRODUCT NAME | DATES SOLD | COLOR | USE | PACKAGING |
|---|---|---|---|---|
| Econo-White 65 | 1956-1970* | White | Acoustical Plaster | Brown kraft paper bags |
| Econo-White 70 | 1956-1970* | White | Acoustical Plaster | Brown kraft paper bags |
| High Temperature Insulating Cement | 1945-1971* | Light Beige | High Temperature Insulating Cement | 25 lb. paper bags |
| Perltex Super 40 Fog aka Perltex Fog aka Plastertex | 1968-1973** (Aka Prior to 1968) | White or Beige | Base coat for decorative textured finish | Brown kraft paper bags |
| Perltex Super-40 Perlite | 1968-1973** | White or Beige | Decorative textured finish | Brown kraft paper bags |
| Perltex Super-40 Polycoarse aka Perltex Polycourse aka Plastertex | 1968-1973** (Aka prior to 1968) | White or Beige | Sprayed texture | Brown kraft paper bags |
| Perltex Super-40 SAV | 1968-1973** | White or Beige | Decorative textured finish | Brown kraft paper bags |
| Versakote or Prep Coat #4 | 1966-1973, w/ asb; 1973-pres., w/o asb. | White or Beige | Very hard, decorative textured exterior finish | Brown kraft paper bags |
| Zono-Coustic (2 and Z) | 1959-1973* | Off white | Acoustical base coat for walls & ceilings | Brown kraft paper bags |
| Zonolite Finish Coat (Decorator's White) | 1950-1974*; w/o asb. after 1973 | White | Decorative textured finish | Brown kraft paper bags |
| Zonolite Finish Coat (Decorator's White)(Extra Hard) | 1961-1974*; w/o asb. after 1973 | White | Decorative textured finish | Brown kraft paper bags |
| Zonolite Mono-Kote (MK-3) | 1959-1973* | Light Beige | Fireproofing | Brown kraft paper bags |

Ex. B-1

Additional Responses To W.R. Graces' Proof of Claim
Section VII and VIII

## **EXHIBIT ONE**

Responses to W.R. Graces' Proof of Claim Request for Information Pertaining to Claimant/Asbestos Victim's Prior Asbestos Claims, Presently Pending, Unsettled Asbestos Claims, Names of Defendant and where applicable amount of individual settlement with other Asbestos Defendants.

As set forth in this Proof of Claim Form, this information is too voluminous to write out in the space provided for in W.R. Graces' Proof of Claim Form Sections VII and VIII.

**Exhibit One:** W.R. Grace Exhibit One Settlement – Prior Claims Information

Law Offices of Christopher E. Grell
Client Profile Entry
General Status Report

**Date:** February 8, 2006
**Client#:**   848
**Case Title:**   ELLEN ASHDOWN, KRISTY SMITH, IAN SMITH as Surviving Heirs and ELLEN
ASHDOWN as Executrix of the Estate of GARY SMITH, Deceased, v. Abex Corporation

**Client Name:**   Ms. Ellen Ashdown
**Address:**   3016 Brookmont Dr.
**City/State/Zip:**   Tallahassee, Florida 32312

**Name of Deceased:**   Re: Mr. Gary G. Smith (D)

**Social Security #:**   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 (Ellen)
**(Spouse) Social Security #:**   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 (Gary)

**(Spouse/Decedent's) Name:** Mr. Gary Smith
**Children's Name:**   Kristy Smith, Ian Smith

**Date of Birth:** 7/29/44 (Gary)
**Date of Death:** 4/21/94 (Gary)
**Date of Marriage:**   1/16/76

**Docket Number:**   **PI:**   **WD:**   961288
**Jurisdiction:** San Francisco

## RELEASES/RELEASE LETTERS SENT/TYPED

| DEFENDANTS | AMOUNTS | STATUS-PENDING, PAID OR? |
|---|---|---|
| AcandS (A) | $ | NOT SETTLED: |
| Ameron | $863.25 | SETTLED: |
| Fibreboard (A) | $ | NOT SETTLED: |
| Garlock | $ | NOT SETTLED: |
| W.R. Grace | $ | NOT SETTLED: |

Asbestos Claims Management

Exhibit One

| | | |
|---|---|---|
| (formerly known as Nat=l Gypsum)  $_____ | | NOT SETTLED: |
| CCR<br>(GAF; Asbestos Claims Corp. formerly known as<br>Nat'l Gypsum/Armstrong/A.P. Green/<br>U.S. Gypsum, Certainteed) | $80,000.00 | MONEY PAID |
| Riley Stoker | $1,000.00 | MONEY PAID |
| Manville | $200,000.00 | PARTIAL PAYMENT: |
| Amatex (Bankruptcy) | $1,200.00 | MONEY PAID |
| Owens-Corning | $40,000.00 | MONEY PAID: |
| Combustion Engineering | $750.00 | MONEY PAID: |
| Unarco | $6,557.00 (CLV) | MONEY PAID: |
| Flintkote | $1,500.00 | MONEY PAID: |
| Uniroyal | $500.00 | MONEY PAID: |
| Owens-Illinois | $3,500.00 | MONEY PAID: |
| Parker-Hannifan | $350.00 | MONEY PAID: |
| Asbestos Claims Management | $_____ | Class decertified |
| Pittsburg Corning | $_____ | BANKRUPT |

| | | |
|---|---|---|
| United States Mineral Products | $ _____ | BANKRUPT |
| Babcock & Wilcox **(Bankrupt)**(A) | $3,000.00 | PENDING SETTLMEENT<br>Pre-Bankruptcy;<br>POC Sent: 12/18/2000 |
| Anchor Packing | $ _____ | BANKRUPT |
| M.H. Detrick | $ _____ | BANKRUPT |
| Keene | $ _____ | BANKRUPT |
| 48 Insulations | $ _____ | BANKRUPT |
| Amatex | $ _____ | BANKRUPT |
| Celotex | $ _____ | MONEY PAID: |
| Eagle Picher | $ _____ | BANKRUPT |
| H.K. Porter | $ _____ | BANKRUPT |
| Raymark | $ _____ | BANKRUPT |
| UNR | $ 863.25 | SETTLED: |