IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., et al., | Case No. 01-1139 (JKF) |
|  | Jointly Administered |
| Debtors-in-possession. |  |
|  | **Related Doc. No. 12823** |

**OPPOSITION OF THE OFFICIAL COMMITTEE OF ASBESTOS
PERSONAL-INJURY CLAIMANTS TO THE DEBTORS' MOTION
TO COMPEL RESPONSES TO THEIR QUESTIONNAIRES**

The Official Committee of Asbestos Personal-Injury Claimants ("Committee"), by and through its undersigned counsel, hereby submits this opposition to the Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Asbestos Personal Injury Questionnaire ("Motion to Compel"), which was filed by the debtors-in-possession herein (collectively, "Grace") on or about July 17, 2006. The grounds supporting this opposition are as follows.

**INTRODUCTION AND OVERVIEW**

In its Motion to Compel, Grace alleges that many of the questionnaire responses returned by claimants include objections and/or references to attached or publicly available documents instead of narrative answers. Grace, however, has brought these perceived problems on itself. Having insisted on a cumbersome and unprecedented form of discovery, Grace now protests that some of the responses it has received do not conform to its view of how its questionnaire should be answered.

The Committee, of course, does not represent the individual interests of claimants; that is the function of their counsel. As Grace implicitly acknowledges (by addressing the Motion to

Compel to the claimants who received the questionnaires), the discovery disputes over how claimants have responded to their questionnaires are disputes that exist between Grace and the tens of thousands of individual claimants to whom it chose to send the questionnaires. Whether a particular response is adequate or whether a particular objection is valid must be addressed in the context of each claimant's response and/or objections. Those disputes, like any other discovery dispute, must be resolved – whether by negotiation, mediation, or if necessary, judicial decision – with the individual targets of the discovery, in which the targets, as well as Grace, are afforded full due process. Accordingly, in this response, the Committee limits itself to dealing with certain contentions by Grace that involve the Committee or which apply to every questionnaire or claimant.

At the outset, it is important to acknowledge the essentially futile nature of Grace's whole campaign. In substance, despite its disingenuous assertions to the contrary, Grace is seeking to disallow individual claims with certain characteristics by having the Court value them at zero or effectively eliminating them from consideration in the aggregate estimation. Through this dubious "merits-based estimation" process, Grace's end-game is to limit the amount of assets that will go to the § 524(g) trust so as to ensure that many claimants will receive nothing. *See* In re Roman Catholic Archbishop, 339 B.R. 215 (Bankr. D. Or. 2006) (debtor attempts to use estimation of individual claims to cap funds available to pay claims); In re Dow Corning Corp., 211 B.R. 545 (Bankr. E.D. Mich. 1997).

Grace is certainly entitled to discovery. However, its view seems to be that asbestos personal-injury claims are presumptively "invalid" *unless* claimants produce discovery evidence that satisfies the standards which Grace – not the legal system – believes should be required for compensating such claims. Moreover, in Grace's view, if claimants in response to the

questionnaire cannot immediately produce a full trial-ready case meeting its standards, then they have no valid claims and no further opportunity to establish the validity of their claims. But that theory simply ignores how civil litigation works. Discovery is, and must be, a reciprocal process. Yet, immunized from discovery by the automatic stay, Grace insists on claimants now presenting definitive information, much of which the claimants could only assemble fully by discovery from Grace and others.

Discovery is not only reciprocal; it is, in almost all cases, an ongoing process. No jurisdiction in the United States requires plaintiffs to have assembled all of their trial evidence prior to filing an asbestos tort complaint. By this Court's order, questionnaire responses are required only from those claimants who filed lawsuits that were still unresolved when Grace filed for bankruptcy. At the time of the bankruptcy filing, most of those lawsuits were nowhere near receiving trial dates or completing discovery. Under § 362 of the Bankruptcy Code, Grace's filing automatically stayed, and thus cut off, the process of discovery by which plaintiffs normally build much of the detailed evidence underlying their case.[1] Moreover, Grace's filing and the consequent stay of all proceedings in lawsuits against Grace meant that it would be years before any claim would be considered in any forum. The stay – and the concomitant indefinite delay in getting a trial date – also effectively eliminated any incentive for claimants or their counsel to undertake the expense and effort of preparing their case for trial by investigation and preparation outside the discovery process.

---

[1] The suggestion by Grace's counsel, that claimants do not need discovery because they have handled other asbestos cases, perhaps for the same clients, barely requires response. Representing a claimant against a different defendant or representing a different client against Grace does not necessarily produce any, much less comprehensive, evidence for the claimant's case against Grace.

The fundamental flaw in Grace's discovery campaign is that even if every discovery request – no matter how unreasonable, irrelevant, or burdensome – were complied with in exactly the way Grace desires, there probably still would be some gaps in the information presented, since discovery from Grace was stayed years ago, making the full gathering of evidence impossible. The existence of such gaps cannot serve as grounds for deciding on the validity of claims, nor for their estimation.

## ARGUMENT

Even considering the matter strictly from the point of view of the discovery process, the Motion to Compel is unfounded principally for two general reasons, in addition to whatever issues may be presented in individual cases.

I.   **Responding to Questions by Referencing Available Documents Is Permissible**

The questionnaire created by Grace requires claimants to attach multiple documents that Grace considers related to the matters on which it seeks discovery. But Grace now, without retreating from its insistence on documents it considers interesting, makes the extraordinary assertion that claimants cannot, as a matter of principle, respond to any of its questions by reference to documents.[2] This, it says, is because it intends to use the responses to create a "navigable database." Grace argues that to facilitate the creation of that database, claimants should be compelled to supply information in the precise form that Grace considers will be most convenient to the contractor that Grace hired to create the database.

---

[2]   Whether a particular "response by reference" is appropriate is, as with other objections, a matter to be determined in the individual case. Grace, however, aside from a few anecdotal remarks about being referred to "masses" of documents, bases its universal Motion to Compel on the proposition that *any* reference to documents is improper and all responses must be in the form of "narrative answers."

It is basic discovery law that the proponents of discovery are not entitled to force respondents to prepare their case, but only provide the information necessary for the proponents to do so themselves. *See, e.g.*, Olmert v. Nelson, 60 F.R.D. 369, 370 (D.D.C. 1973) ("[N]o party may be compelled to do the interrogating party's investigation for him."); Kainz v. Anheuser-Busch, Inc., 15 F.R.D. 242, 251 (N.D. Ill. 1954) (stating that "interrogatories should not be used as a device for compelling the interrogated party to prepare the interrogator's case for him"); Aktiebolaget Vargos v. Clark, 8 F.R.D. 635, 636 (D.D.C. 1949) ("A litigant may not compel his adversary to go to work for him."). It is true, of course, that a question not objected to must be answered, but so long as the answer provides the information requested, no particular format is required. *See* Luey v. Sterling Drug, Inc., 240 F. Supp. 632 (W.D. Mich. 1965) (interrogatory cannot require responder to prepare summaries of relevant information); Porter v. Montaldo's, 71 F. Supp. 372 (S.D. Ohio 1946) (interrogatory improper where it required extensive research to present answer in specific tabulated form.); H.K. Porter Co. v. Bremer, 12 F.R.D. 187, 187-88 (N.D. Ohio 1941) (court will not require a party to examine its own records, and compile and correlate information therefrom for the benefit of the opposing party when that party has a right to inspect the records). Specifically, the respondent cannot be forced to do burdensome analysis of data that the proponent of the question can equally do for itself.[3] *See* Miller v. Pruneda, 2004 WL 3927832, at *4 (N.D. W. Va. Jul. 20, 2004) ("Interrogatories cannot require the responding party to make extensive investigations or conduct complex research.").

---

[3]    This is not an issue of "checking the box" with a number two pencil so that later tabulation is automatic, even assuming claimants could be compelled to squeeze their answers into precise categories that Grace preferred. Grace says it wants "narrative" responses, not references to documents. A narrative response by a claimant, no less than Grace's own narrative developed from documents to which it is referred, will require that Grace's contractor analyze the answer and code it under some protocol of its own devising. No such protocol has been provided, much less approved by this Court.

Nothing in the questionnaire mentions anything about a "navigable database."[4] Grace is entitled to make whatever use it wants of information obtained by discovery. It is not, however, entitled to demand that the claimants do more than provide (within the normal discovery requirements) relevant information of which it can make use.

In any event, the rules specifically acknowledge that there will be cases where the appropriate response to a question is reference to documents. Federal Rule of Civil Procedure 33(d) expressly permits such reference where "the answer to an interrogatory may be derived or ascertained from business records of the party" and "the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served."[5]

Grace at one point admits that its questionnaire is "part fact interrogatory … and part document request," Motion to Compel 13, but later says it is "not merely the equivalent of a set of interrogatories or documents requests." *Id*. at 24. Grace cannot have it both ways. By calling the questionnaire a "hybrid form of discovery," Grace attempts to justify selectively applying its own version of the Federal Rules of Civil Procedure in order to categorically disregard the discovery rights of the claimants. Having won the ability to circulate its questionnaire by

---

[4] The Court's order merely sets a schedule by which Grace must produce its database and make it available to other parties. *See* Order of Aug. 29, 2005, ¶ 3(D).

[5] The requirement under Rule 33(d) that the "specification shall be in sufficient detail to permit the interrogating party to locate and identify, *as readily as can the party served*, the records from which the answer may be ascertained" (emphasis added) requires a particularized analysis in each case, as does the "substantially the same burden" requirement. The cases make clear that the mere fact that the documents of the responding party are presumably always more familiar to it than to the interrogator is not sufficient to bar a reference to documents. *See* Sabel v. Mead Johnson & Co., 110 F.R.D. 553, 556 (D. Mass. 1986) ("While an interrogated party will always be more familiar with its own records than the interrogating party, familiarity with the records cannot be the sole test."); Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co., 105 F.R.D. 16, 44 (S.D.N.Y. 1984) ("One party's familiarity with the documents does not necessarily create a disparity in the ease of discovery that would preclude resort to [Rule 33(d)]").

invoking its general discovery rights, Grace cannot now deny those who must answer the questionnaire their discovery rights. If Grace can propound interrogatories as part of its discovery, then Rule 33(d) must necessarily apply and permit a document-reference response.[6]

Two examples illustrate how document references can be an entirely appropriate means of providing the information Grace seeks. Grace objects that its questions are sometimes responded to by reference to answers already given to interrogatories in other cases. Where essentially the same information – *e.g.*, work history – has been provided previously, Grace is neither burdened nor prejudiced by being asked to read the earlier answers.

Many of Grace's questions relate to the claimant's medical condition, diagnosis, and history. *See, e.g.,* Questionnaire pt. II ("Asbestos-Related Condition(s)," which includes 8 pages of questions). The answers to these questions will, in almost all instances, require review of the claimant's medical records – a task for which any layperson-claimant is ill-equipped. Information that can be derived only from medical records is therefore clearly an area in which Grace, with its ample corporate resources to engage experts, is clearly in a better position to ascertain answers from documents than the layperson-claimant. Grace has already designated, and presumably actually hired, medical experts to assist it in presenting its case on estimation. Such experts could easily extract the answers to Grace's questions from the medical records referenced in the questionnaire responses.

Grace, however, argues that even if claimants could rely on Rule 33(d), they cannot do so with respect to *medical* records because such records are not the business records of the claimant,

---

[6] Grace also says at one point that its questionnaire is "part deposition by written question." Motion to Compel 13. It does not offer any authority for the proposition that a non-party responding to a written deposition has any less right to respond by reference to documents than a party responding to interrogatories. In an appropriate case, a deposition question – whether oral or written – may well be answered most accurately and simply by reference to documents provided by the person answering.

but only of the doctors who created or maintained them for their patients. It ill-behooves Grace, which otherwise talks sweepingly of "streamlined" discovery, to maintain that a sensible and explicitly authorized means of responding to a question is barred on such hyper-technical grounds. Indeed, access to such records gives Grace a far more complete and accurate information than a layperson's attempt to decipher the highly technical and specialized language of medical records, much less rely on personal memory.

In any event, Grace's contention about the nature of a patient's medical records is wrong. Under the Federal Rules of Evidence, the definition of a business record expressly includes "conditions" and "diagnoses," while "business" is defined broadly. *See* FED. R. EVID. 803(6). An individual's medical records are, in every sense of the word, the records *of* the patient party, even though they are kept by others for him. The medical personnel who maintain patient records do so on behalf of, and for the benefit of, the patient, not just the business interests of the health care provider. Indeed, under state and federal law, patients have important rights with respect to those records. *See generally* Health Insurance Portability and Accountability Act (HIPAA) of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996). The test under Rule 33(d) is whether the documents referred to are the records of the person answering, not whether they are records made in that person's own business.[7]

---

[7] In connection with this, Grace cites an unreported decision of the U.S. District Court for Kansas, holding in a single brief paragraph that Rule 33(d) did not permit an answer by reference to hospitalization records on the ground that "the medical records are the business records of various non-party hospitals and not those of Plaintiff." Bradley v. Val-Mejias, 2001 WL 1249339, at *2 (D. Kan. Oct. 9, 2001). The Committee respectfully suggests that this case, in addition to being unreported and therefore not binding precedent even in Kansas, improperly conflates the issue of *whose records* are referred to with that of in the course of *whose business* they were maintained. Another court, by contrast, has permitted responses to medical interrogatories to reference to medical records. *See* Leonard v. Katsinas, 2006 WL 1063768, *4 (C.D. Ill. Apr. 20, 2006); *cf. also* SEC v. Elfinepan, 206 F.R.D. 574, 578 n.6 (M.D.N.C. 2002) (issue of scope of "business record" under Rule 33(d) is unsettled). Moreover, it appears that in

Grace also complains that certain claimants' counsel have offered to provide the information that Grace seeks in its questionnaire by making documents available for inspection at their offices. Grace acknowledges that its questionnaire is partly a document request. If Grace had sought for production and inspection under Rule 34, there would be no question that Grace is responsible for the expense to copy the responsive documents. *See* Barrows v. Koninklijke Luchtvaart Maatschappij, 11 F.R.D. 400, 401 (S.D.N.Y. 1951). Instead, Grace attempts to shift the expense of copying the responsive documents to the respondent. This cannot be permitted. *See id.* (defendant who served plaintiff with request for interrogatories under Rule 33 ordered to pay costs for plaintiff to copy responsive documents); *see also* FED. R. CIV. P. 34 advisory committee notes (1970 Amendment) (court may require discovery party to pay costs under Rule 26(c)).

II.     **The Prior Proceedings Dealing with the Questionnaire Do Not Foreclose an Individual Claimant's Right to Object**

Like anyone else served with a discovery request, individual claimants are required to respond to the discovery served on them. They cannot ignore the process. Nevertheless, under the applicable rules, a litigant may properly respond to a discovery request by raising any good-faith objection it may have. *See* FED. R. CIV. P. 32 (objections to depositions upon written questions); *id.* 33(b)(1) (objections to interrogatories); *id.* 34(b) (objections to document requests); *id.* 36(a) (objections to requests for admission); *id.* 45(c)(2)(B) (objections to a subpoena *duces tecum*); c*f. also* In re Lenders Mortgage Servs., Inc., 224 B.R. 707 (Bankr. E.D.

---

the Kansas case, no specific medical records were identified; the response was only that information about the plaintiff's prior hospitalizations "can be derived from the medical records of the Plaintiff that have been or are being obtained by the Defendants pursuant to deposition subpoenas." 2001 WL 1249339, at *2.

Mo. 1997) (interrogatories must be answered *or* objected to). That is what many individual claimants have done.

Grace, however, asserts that all objections, except perhaps certain claims of privilege, have already been resolved in its favor simply because the Court permitted Grace to proceed with its questionnaire and entered an order to that effect. This ignores what the Court has repeatedly made clear, *viz.*, that its decision to allow the questionnaire was based on the broad scope of discovery that is afforded to all parties in the bankruptcy system. *See* Hr'g Tr. of Jul. 19, 2005, at 175 ("My bottom line position is I think a questionnaire, to the extent that the debtor or the other parties want to do discovery is fine.… You could do it by interrogatories. You can do it by questionnaires. There is really not much difference."). Nothing in the extensive record suggests that the Court intended – or even believed it had the power – to preemptively overrule any objections that individual claimants might advance.[8] Indeed, the Court acknowledged that there would likely be objections from some respondents. *See, e.g.*, Hr'g Tr. of Jun. 19, 2006, at 55, 86; Hr'g Tr. of Apr. 17, 2006, at 27; Hr'g Tr. of Jul. 19, 2005, at 232.

Court approval of a discovery measure does not preclude subsequent specific objections. For example, courts may grant a contested request to propound more than 25 interrogatories, after considering the specific additional questions to be propounded. Yet, even under those circumstances, courts will still entertain specific objections to the additional interrogatories. *See* 8A Wright, Miller, & Marcus, Federal Practice & Procedure § 2174, at 311 (1994); *see also* Riddle v. Liz Claiborne, Inc., 2003 WL 21982967, at *1 (S.D.N.Y. Aug. 19, 2003).

Grace claims that because the Committee objected to certain elements of its discovery questionnaire, the individual claimants who received the questionnaires are barred from raising

---

[8] Grace cites no authority for the proposition that a court could thus preemptively bar individual objections to discovery, and the Committee respectfully submits that there is none.

{D0064112.1 } 10

similar objections. That argument, however, is unavailing. The Committee does not represent individual claimants. *See* In re Circle K Corp., 199 B.R. 92, 100 (Bankr. S.D.N.Y. 1996) (holding that for purposes of bankruptcy proceedings, creditors' committee constituents are not clients of the committee's attorneys); In re Snyder, 51 B.R. 432, 439 (Bankr. D. Utah 1983) (acknowledging that a committee's attorneys represent only committee members and that individual creditors are represented by their respective attorneys); *cf. also* In re Gibson Group, Inc., 158 B.R. 101 (Bankr. S.D. Ohio 1993) (noting that individual member of creditors' committee was "not a party herein").

Moreover, the Committee is not the agent of its constituents, and cannot bind them. *See* In re Kensington Int'l Ltd., 368 F.3d 289, 315 (3d Cir. 2004) (creditors' committees in bankruptcy do "not have authority to bind each individual creditor"); 7 Collier on Bankruptcy ¶ 1103.05[1][d][i], at 1103-26 (15th ed. rev. 2005); *see also* In re Quality Beverage Co., 181 B.R. 887, 894 (Bankr. S.D. Tex. 1995) (a committee does not have "the power nor the authority to bind each individual creditor"); In re Drexel Burnham Lambert Group, 138 B.R. 717, 722 (Bankr. S.D.N.Y. 1992) (stating that "[t]he duty [of a committee] extends to the class as a whole, not its individual members"); In re Levy, 54 B.R. 805, 807 (Bankr. S.D.N.Y. 1985) ("Counsel for the creditors' committee do not represent any individual creditor's interest in this case; they [are] retained to represent the entire unsecured creditor class.").

Based on these authorities, the Committee has repeatedly argued in the course of the proceedings here that a creditors' committee does not represent individual claimants, and cannot bind them with respect to issues unique to those claimants. *See* Kensington Int'l Ltd., 368 F.3d at 315; Levy, 54 B.R. at 807. Grace did not provide notice to the individual claimants of its motion for leave to circulate the questionnaire, and with a few highly particularized exceptions,

individual claimants or claimant groups did not participate in the proceedings leading up to the distribution of the questionnaire.

By permitting the questionnaire exercise to go forward, the Court decided that the questions were within the broad scope of permissible discovery.[9] Nevertheless, such a decision does not mean that an individual claimant's objection is necessarily without merit or that objections should be barred as a result of contrary "law of the case."[10] Here, the Court should permit individual claimants to raise issues of burden and relevance, since such issues will be specific to their circumstances. Grace has chosen to propound broad-ranging questions, whose burden and relevance – or likelihood of leading to relevant evidence – are likely to vary widely from case to case. A question that one claimant can answer quite simply – because, for example, he has access to worksite records or his counsel had already developed the relevant information when the automatic stay went into effect – may present a heavy and unreasonable burden for another. A broad category of inquiry, which may meet relevance standards in some cases, may be highly invasive of privacy or very far afield from the issues presented in other cases. The Court's ruling that a question is, in a broad and general sense, one that can properly be put in the exercise of very broad-ranging discovery, does not mean – nor could it properly mean – that a claimant-specific objection is without merit.[11]

---

[9]    *See, e.g.,* Hr'g Tr. of Jul. 19, 2005, at 215 ("This is the debtor's discovery.").

[10]    The cases cited by Grace in this context all deal with the same party attempting to reopen issues that have already been resolved against it, not a separate party with separate grounds for contesting a prior ruling, and none deals with the particular contexts of either discovery or the relationship of bankruptcy creditors' committees and individual creditors.

[11]    Additionally, Grace's argument in support of a claims bar date undercuts its assertion that individual claimants are precluded from raising objections. Grace has contended that a bar date is needed in order to "establish jurisdiction" over individual claimants for purposes of discovery. If, as Grace contends, the Court lacks jurisdiction over individual claimants, how can the Court's prior rulings on the questionnaire preclude their objections?

No doubt resolving such particularized objections by negotiation, mediation, or court action would take time and effort, but that is merely the consequence of Grace's decision to send out over 100,000 questionnaires and of nothing else. Having embarked on this massive enterprise and having persuaded the Court to let it go forward, Grace cannot now be heard to claim that its choice cuts off the rights of individual claimants because it would be too complicated to consider their objections.

**[Remainder of page left intentionally blank]**

## **CONCLUSION**

For the reasons stated above, the Committee respectfully requests that the Court deny the Motion to Compel, and grant such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

**CAMPBELL & LEVINE, LLC**

/S/ Kathleen Campbell Davis
Marla R. Eskin (No. 2989)
Kathleen Campbell Davis (No. 4229)
Mark T. Hurford (No. 3299)
800 N. King Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 426-1900
Telefax: (302) 426-9947

**CAPLIN & DRYSDALE, CHARTERED**

Elihu Inselbuch
375 Park Avenue, 35th Floor
New York, NY 10022
Telephone: (212) 319-7125
Telefax: (212) 644-6755

Peter Van N. Lockwood
Nathan D. Finch
Walter B. Slocombe
Jeffrey A. Liesemer
One Thomas Circle, N.W.
Washington, D.C. 20005
Telephone: (202) 862-5000
Telefax: (202) 429-3301

*Counsel for the Official Committee*
*of Asbestos Personal-Injury Claimants*

Dated:  August 4, 2006