# Exhibit A

# W. R. Grace
# Asbestos Personal Injury
# Questionnaire

F:\WP70\Bankruptcies\Asbestos Bankruptcies\W.R. Grace Co\WR Grace Archive\Emmell\Emmell, William E (liv).doc

[THIS PAGE INTENTIONALLY LEFT BLANK.]

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., <u>et al.</u>, | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

# W. R. Grace
# Asbestos Personal Injury
# Questionnaire

YOU HAVE RECEIVED THIS QUESTIONNAIRE BECAUSE GRACE BELIEVES THAT YOU HAD SUED ONE OR MORE OF THE DEBTORS LISTED IN APPENDIX A ATTACHED TO THIS QUESTIONNAIRE BEFORE GRACE FILED FOR BANKRUPTCY ON APRIL 2, 2001 FOR AN ASBESTOS-RELATED PERSONAL INJURY OR WRONGFUL DEATH CLAIM, AND THAT CLAIM WAS NOT FULLY RESOLVED.

IF YOU HAVE SUCH A CLAIM, YOU MUST COMPLETE AND SUBMIT THIS QUESTIONNAIRE BY JANUARY 12, 2006 TO RUST CONSULTING, INC., THE CLAIMS PROCESSING AGENT, AT ONE OF THE FOLLOWING ADDRESSES:

|  | IF SENT BY FEDERAL EXPRESS, UNITED PARCEL |
|---|---|
| <u>IF SENT BY U.S. MAIL</u> | <u>SERVICE, OR A SIMILAR HAND DELIVERY SERVICE</u> |
| RUST CONSULTING, INC. | RUST CONSULTING, INC. |
| CLAIMS PROCESSING AGENT | CLAIMS PROCESSING AGENT |
| RE: W.R. GRACE & CO. BANKRUPTCY | RE: W.R. GRACE & CO. BANKRUPTCY |
| P.O. BOX 1620 | 201 S. LYNDALE AVE. |
| FARIBAULT, MN 55021 | FARIBAULT, MN 55021 |

A QUESTIONNAIRE (AND ANY AMENDMENTS OR ADDITIONAL DOCUMENTS IN SUPPORT OF THE QUESTIONNAIRE) WILL <u>NOT</u> BE CONSIDERED UNLESS RECEIVED BY RUST CONSULTING, INC. BY JANUARY 12, 2006.

THIS QUESTIONNAIRE IS AN OFFICIAL DOCUMENT APPROVED BY THE COURT IN CONNECTION WITH ESTIMATING GRACE'S ASBESTOS-RELATED PERSONAL INJURY AND WRONGFUL DEATH CLAIMS AS A WHOLE. THE QUESTIONNAIRE IS BEING USED BY W. R. GRACE AS A MEANS TO SEEK INFORMATION ABOUT YOUR ASBESTOS CLAIM. BY TIMELY RETURNING THE QUESTIONNAIRE AS COMPLETELY AND ACCURATELY AS POSSIBLE, GRACE, THE OFFICIAL COMMITTEES, AND THE FUTURE CLAIMANTS REPRESENTATIVE WILL SEEK TO PRIORITIZE THE PROCESSING OF YOUR CLAIM UNDER ANY TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION.

THE COURT HAS ORDERED THAT, AS PART OF THE DISCOVERY PROCESS, ALL HOLDERS OF PRE-PETITION ASBESTOS PERSONAL INJURY CLAIMS MUST COMPLETE AND RETURN THIS QUESTIONNAIRE. THUS, FAILURE TO TIMELY RETURN THE QUESTIONNAIRE AS COMPLETELY AND ACCURATELY AS POSSIBLE MAY RESULT IN SANCTIONS AND/OR OTHER RELIEF AVAILABLE UNDER APPLICABLE FEDERAL RULES.

BECAUSE YOUR CLAIM WILL BE EVALUATED IN ACCORDANCE WITH THE TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION, COMPLETION OF THIS QUESTIONNAIRE DOES <u>NOT</u> MEAN THAT YOUR CLAIM WILL EITHER BE ALLOWED OR PAID. TO THE EXTENT YOU ATTACH TO THIS QUESTIONNAIRE DOCUMENTS ALSO NEEDED BY THE TRUST TO PROCESS YOUR CLAIM, SUCH DOCUMENTS WILL BE PROVIDED TO THE TRUST AND YOU WILL NOT NEED TO RESUBMIT THEM.

## INSTRUCTIONS

### A. GENERAL

1. This Questionnaire refers to any lawsuit that you filed before April 2, 2001 for an "asbestos-related personal injury or wrongful death claim." This term is intended to cover any lawsuit alleging any claim for personal injuries or damages that relates to: (a) exposure to any products or materials containing asbestos that were manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors (or any of their respective past or present affiliates, or any of the predecessors of any of the Debtors or any of their respective past or present affiliates), or (b) exposure to vermiculite mined, milled or processed by the Debtors (or any of their respective past or present affiliates, any of the predecessors of any of the Debtors or any of their predecessors' respective past or present affiliates). It includes claims in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity, or any other theory of law or equity, or admiralty for, relating to, or arising out of, resulting from, or attributable to, directly or indirectly, death, bodily injury, sickness, disease, or other personal injuries or other damages caused, or allegedly caused, directly or indirectly, and arising or allegedly arising, directly or indirectly, from acts or omissions of one or more of the Debtors. It includes all such claims, debts, obligations or liabilities for compensatory damages such as loss of consortium, personal or bodily injury (whether physical, emotional or otherwise), wrongful death, survivorship, proximate, consequential, general, special, and punitive damages.

2. Your Questionnaire will be deemed filed only when it has been received by Rust Consulting Inc., the Claims Processing Agent, via U.S. Mail, Federal Express, United Parcel Service or a similar hand delivery service. A Questionnaire that is submitted by facsimile, telecopy or other electronic transmission will **not** be accepted and will **not** be deemed filed.

   Do **not** send any Questionnaire to the Debtors, counsel for the Debtors, the Future Claimants Representative, the Official Committee of Unsecured Creditors, the Official Committee of Asbestos Personal Injury Claimants, the Official Committee of Asbestos Property Damage Claimants, the Official Committee of Equity Security Holders, or such Committees' counsel. Questionnaires that are filed with or sent to anyone other than Rust Consulting, Inc. will be deemed not to have been submitted, and such Questionnaires will not be considered.

3. Your completed Questionnaire must (i) be written in English, and (ii) attach relevant supporting materials as instructed further below.

4. All holders of claims described on page i (and as described in further detail in Instruction A (1) above) are required to file this Questionnaire by Jan. 12, 2006. Your Questionnaire will be used in connection with the estimation hearing to be conducted by the Court pursuant to the Estimation Procedures Order (a copy of which is attached as Appendix B).

5. Any subsequent amendment to the Questionnaire will not be considered for any purpose unless received by Jan. 12, 2006.

### B. PART I -- Identity of Injured Person and Legal Counsel

Respond to all applicable questions. If you are represented by a lawyer, then in Part I (b), please provide your lawyer's name and the name, telephone number and address of his/her firm. If you are represented by a lawyer, he/she must assist in the completion of this Questionnaire. Also, if you would prefer that the Debtors send any additional materials only to your lawyer, instead of sending such materials to you, then check the box indicating this in Part I (b).

All references to "you" or the like in Parts I through X shall mean the injured person. If the injured person is deceased, then the executor of the person's will (or similar estate representative) must complete this Questionnaire.

### C. PART II -- Asbestos-Related Condition(s)

Please indicate all asbestos-related medical conditions for which you have been diagnosed. To complete questions related to injuries, medical diagnoses, and/or conditions, please use the following categories of customarily diagnosed conditions:

- Mesothelioma
- Asbestos-Related Lung Cancer
- Other Cancer (colon, laryngeal, esophageal, pharyngeal, or stomach)
- Clinically Severe Asbestosis
- Asbestosis
- Other Asbestos Disease

If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

**Supporting Documents for Diagnosis:** This Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that support or conflict with your diagnosis.

**X-rays and B-reads:** Please attach all x-ray readings and reports. You may, but are not required to, attach chest x-rays. The court, however, has ruled that Grace may seek access to chest x-rays upon request.

**Pulmonary Function Tests:** Please attach all pulmonary function test results, including the actual raw data and all spirometric tracings, on which the results are based.

**D. PART III – Direct Exposure to Grace Asbestos-Containing Products**

In Part III, please provide the requested information for the job and site at which you were exposed to Grace asbestos-containing products. Indicate the dates of exposure to each Grace asbestos-containing product. If your exposure was a result of your employment, use the list of occupation and industry codes below to indicate your occupation and the industry in which you worked at each site. If you allege exposure to Grace asbestos-containing products at multiple sites, the Court has ordered that you must complete a separate Part III for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

Attach copies of any and all documents establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the disease.

## Occupation Codes

| | |
|---|---|
| 01. Air conditioning and heating installer/maintenance | 31. Iron worker |
| 02. Asbestos miner | 32. Joiner |
| 03. Asbestos plant worker/asbestos manufacturing worker | 33. Laborer |
| 04. Asbestos removal/abatement | 34. Longshoreman |
| 05. Asbestos sprayer/spray gun mechanic | 35. Machinist/machine operator |
| 06. Assembly line/factory/plant worker | 36. Millwright/mill worker |
| 07. Auto mechanic/bodywork/brake repairman | 37. Mixer/bagger |
| 08. Boilermaker | 38. Non-asbestos miner |
| 09. Boiler repairman | 39. Non-occupational/residential |
| 10. Boiler worker/cleaner/inspector/engineer/installer | 40. Painter |
| 11. Building maintenance/building superintendent | 41. Pipefitter |
| 12. Brake manufacturer/installer | 42. Plasterer |
| 13. Brick mason/layer/hod carrier | 43. Plumber - install/repair |
| 14. Burner operator | 44. Power plant operator |
| 15. Carpenter/woodworker/cabinetmaker | 45. Professional (*e.g.*, accountant, architect, physician) |
| 16. Chipper | 46. Railroad worker/carman/brakeman/machinist/conductor |
| 17. Clerical/office worker | 47. Refinery worker |
| 18. Construction - general | 48. Remover/installer of gaskets |
| 19. Custodian/janitor in office/residential building | 49. Rigger/stevedore/seaman |
| 20. Custodian/janitor in plant/manufacturing facility | 50. Rubber/tire worker |
| 21. Electrician/inspector/worker | 51. Sandblaster |
| 22. Engineer | 52. Sheet metal worker/sheet metal mechanic |
| 23. Firefighter | 53. Shipfitter/shipwright/ship builder |
| 24. Fireman | 54. Shipyard worker (md. repair, maintenance) |
| 25. Flooring installer/tile installer/tile mechanic | 55. Steamfitter |
| 26. Foundry worker | 56. Steelworker |
| 27. Furnace worker/repairman/installer | 57. Warehouse worker |
| 28. Glass worker | 58. Welder/blacksmith |
| 29. Heavy equipment operator (includes truck, forklift, & crane) | 59. Other |
| 30. Insulator | |

## Industry Codes

| | |
|---|---|
| 001. Asbestos abatement/removal | 109. Petrochem ical |
| 002. Aerospace/aviation | 110. Railroad |
| 100. Asbestos mining | 111. Ship yard-construction/repair |
| 101. Automotive | 112. Textile |
| 102. Chemical | 113. Tire/rubbe r |
| 103. Construction trades | 114. U.S. Navy |
| 104. Iron/steel | 115. Utilities |
| 105. Longshore | 116. Grace asbestos manufacture or milling |
| 106. Maritime | 117. Non-Grace asbestos manufacture or milling |
| 107. Military (other than U.S. Navy) | 118. Other |
| 108. Non-asbestos products manufacturing | |

**E.  PART IV – Indirect Exposure to Grace Asbestos-Containing Products**
In Part IV, please provide the information requested for any injury alleged to have been caused by exposure to Grace asbestos-containing products through contact/proximity with another injured person.  If you allege exposure through contact/proximity with multiple injured persons, please complete a separate Part IV for each injured person.  For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.

**F.  PART V -- Exposure to Non-Grace Asbestos-Containing Products**
In Part V, please provide the requested information for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products <u>other than</u> Grace products.  If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate Part V for each party.  If exposure was in connection with your employment, use the list of occupation and industry codes in Part III to indicate your occupation and the industry in which you worked.  For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

**G.  PART VI -- Employment History**
In Part VI, please provide the information requested for each industrial job you have held, other than jobs already listed in Parts III or V.  Use the list of occupation and industry codes in the instructions to Part III to indicate your occupation and the industry in which you worked for each job.  Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.

**H.  PART VII -- Litigation and Claims Regarding Asbestos and/or Silica**
In Part VII, please describe any lawsuits and/or claims that were filed by you or on your behalf regarding asbestos or silica.

**I.  PART VIII – Claims by Dependents or Related Persons**
Part VIII is to be completed only by dependents or related persons (such as spouse or child) of an injured person who sued the Debtors before April 2, 2001 for an asbestos-related personal injury or wrongful death claim against Grace <u>not</u> involving physical injury to him-/herself on account of his/her own exposure.  One example of such a claim would be a claim for loss of consortium.  If you are asserting such a claim, complete the entire Questionnaire, providing all information and documentation regarding the injured person.

**J.  PART IX -- Supporting Documentation**
In Part IX, please mark the boxes next to each type of document that you are submitting with this Questionnaire.  As indicated in the instructions to Parts II and III, this Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that (a) support or conflict with your diagnosis and/or (b) establish exposure to Grace asbestos-containing products as having a substantial causal role in the development of the medical diagnoses, and/or conditions claimed.  Original documents provided to Grace will be returned within a reasonable time after its professionals and experts have reviewed the documents.

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation.  Please indicate the documents for which you are seeking reimbursement and attach a receipt for such cost.

**K.  PART X – Attestation that Information is True, Accurate and Complete**
By signing Part X, you, the injured person, are attesting and swearing, under penalty of perjury, that, to the best of your knowledge, all of the information in this Questionnaire is true, accurate and complete.  If the injured person is deceased, then the executor of the person's will (or similar estate representative) must complete and sign Part X on behalf of the injured person.

The legal representative of the injured person must complete and sign Part X where indicated.

## PART I:  IDENTITY OF INJURED PERSON AND LEGAL COUNSEL

### a.  GENERAL INFORMATION

1.  Name of Claimant:  <u>William, Sr.</u>      <u>E</u>      <u>Emmell</u>      **2. Gender:**  X Male  ☐ Female
    First            MI            Last

2.  **Gender:** (see above)

3.  **Race (for purposes of evaluating Pulmonary Function Test results):**.....................X  White/Caucasian
    ☐ African American
    ☐ Other

4.  **Last Four Digits of Social Security Number:** 9654        **5. Birth Date:** 11/27/1923

6.  **Mailing Address:** <u>407 Elk River Manor</u>      <u>Northeast</u>      <u>MD</u>      <u>21901</u>
    Address            City            State/Province      Zip/Postal Code

7.  **Daytime Telephone Number:**.............................................................................(410) 287-2520

### b.  LAWYER'S NAME AND FIRM

1.  Name of Lawyer:    <u>Robert Jacobs</u>

2.  Name of Law Firm With Which Lawyer is Affiliated:    <u>Jacobs & Crumplar</u>

3.  Mailing Address of Firm:  <u>2 East 7th Street</u>      <u>Wilmington</u>      <u>DE</u>      <u>19899</u>
    Address            City            State/Province      Zip/Postal Code

4.  Law Firm's Telephone Number or Lawyer's Direct Line:  ...........................................( 302 ) 656 - 5445

    X  Check this box if you would like the Debtors to send subsequent material relating to your claim to your lawyer, in
       lieu of sending such materials to you.

### c.  CAUSE OF DEATH (IF APPLICABLE)

1.  Is the injured person living or deceased?.........................................................X  Living  ☐ Deceased
    If deceased, date of death: ...................................................................... __ __ / __ __ / __ __

2.  If the injured person is deceased, then attach a copy of the death certification to this Questionnaire and complete
    the following:
    Primary Cause of Death (as stated in the Death Certificate):  _____
    Contributing Cause of Death (as stated in the Death Certificate):  _____

### PART II:  ASBESTOS-RELATED CONDITION(S)

Mark the box next to the conditions that you have been diagnosed and provide all information required in the
instructions to this Questionnaire.  If you have been diagnosed with multiple conditions and/or if you received diagnoses and
diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis
and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis.  For your
convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

1.  **Please check the box next to the condition being alleged:  SEE ATTACHED MEDICAL RECORDS FOR 1 (a) – (f)**

    ☐ Asbestos-Related Lung Cancer          ☐ Mesothelioma
    ☐ Asbestosis                            ☐ Other Cancer (cancer not related to lung cancer or mesothelioma)
    ☐ Other Asbestos Disease                ☐ Clinically Severe Asbestosis

    a.  **Mesothelioma:**  If alleging Mesothelioma, were you diagnosed with malignant mesothelioma based on the
        following (check all that apply):
        ☐ diagnosis from a pathologist certified by the American Board of Pathology
        ☐ diagnosis from a second pathologist certified by the American Board of Pathology
        ☐ diagnosis and documentation supporting exposure to Grace asbestos-containing products having a substantial
           causal role in the development of the condition
        ☐ other (please specify):_____

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

b. **Asbestos-Related Lung Cancer:**  If alleging Asbestos-Related Lung Cancer, were you diagnosed with primary lung cancer based on the following (check all that apply):

☐ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ diffuse pleural thickening as defined in the International Labour Organization's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the lung cancer

☐ other (please specify):_____

c. **Other Cancer:**

(i) If alleging Other Cancer, please mark the box(es) next to the applicable primary cancer(s) being alleged:

☐ colon      ☐ pharyngeal      ☐ esophageal      ☐ laryngeal      ☐ stomach cancer

☐ other, please specify:  _____

(ii) Were you diagnosed with the above-indicated cancer based on the following (check all that apply):

☐ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the cancer

☐ other (please specify):  _____

2

**PART II:  ASBESTOS-RELATED CONDITION(S) (Continued)**

d.  **Clinically Severe Asbestosis:**  If alleging Clinically Severe Asbestosis, was your diagnosis based on the following (check all that apply):

☐  diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐  a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐  a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a  second B-reader certified by the National Institute for Occupational Safety and Health

☐  asbestosis determined by pathology

☐  a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating total lung capacity less than 65% predicted

☐  a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating forced vital capacity less than 65% predicted and a FEV1/FVC ratio greater than or equal to 65% predicted

☐  a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐  other (please specify): _____

e.  **Asbestosis:**  If alleging Asbestosis, was your diagnosis based on the following (check all that apply):

☐  diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐  a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐  a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a  second B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐  asbestosis determined by pathology

☐  a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEV1/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐  a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐  other (please specify): _____

3

**PART II:  ASBESTOS-RELATED CONDITION(S) (Continued)**

f.   **Other Asbestos Disease:** If alleging any asbestos-related injuries, medical diagnoses, and/or conditions other than those above, was your diagnosis based on the following (check all that apply):

☐  diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐  diagnosis determined by pathology

☐  a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumonioses* (2000)

☐  a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumonioses* (2000)

☐  a chest x-ray reading  other than those described above

☐  a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies*, demonstrating a FEVI/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐  a pulmonary function test other than that discussed above

☐  a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the condition

☐  a CT Scan or similar testing

☐  a diagnosis other than those above

☐  other (please specify): _____


[REMAINDER OF PAGE INTENTIONALLY BLANK]


4

---

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

2.  **Information Regarding Diagnosis**          **SEE ATTACHED MEDICAL RECORDS**

   **Date of Diagnosis:** ................................................................................... __ __ / __ __ / __ __ __ __

   **Diagnosing Doctor's Name:** _____

   **Diagnosing Doctor's Specialty:** _____

   **Diagnosing Doctor's Mailing Address:** _____
   <br>Address

   _____
   City                                            State/Province                    Zip/Postal Code

   **Diagnosing Doctor's Daytime Telephone Number:** ........................................ ( __ __ __ ) __ __ __ - __ __ __ __

   **With respect to your relationship to the diagnosing doctor, check all applicable boxes:**

   Was the diagnosing doctor your personal physician? ........................................................☐ Yes  ☐ No

   Was the diagnosing doctor paid for the diagnostic services that he/she performed?....................☐ Yes  ☐ No

   *If yes, please indicate who paid for the services performed:* _____

   Did you retain counsel in order to receive any of the services performed by the diagnosing doctor?...........☐ Yes  ☐ No

   Was the diagnosing doctor referred to you by counsel? ...........................................................☐ Yes  ☐ No

   Are you aware of any relationship between the diagnosing doctor and your legal counsel?........................☐ Yes  ☐ No

   *If yes, please explain:* _____

   _____

   **Was the diagnosing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the diagnosis?** ...........................................................☐ Yes  ☐ No

   **Was the diagnosing doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis?** ........................................................................................☐ Yes  ☐ No

   **Was the diagnosing doctor provided with your complete occupational, medical and smoking history prior to diagnosis?** ................................................................................................☐ Yes  ☐ No

   **Did the diagnosing doctor perform a physical examination?** ...............................☐ Yes  ☐ No

   **Do you currently use tobacco products?** ..............................................................☐ Yes  ☐ No

   **Have you ever used tobacco products?**.................................................................☐ Yes  ☐ No

   *If answer to either question is yes, please indicate whether you have regularly used any of the following tobacco products and the dates and frequency with which such products were used:*

   **SEE ATTACHED INTERROGATORY NUMBERS 24-26**

   ☐  Cigarettes      Packs Per Day (half pack = .5) _____   Start Year __ __ __ __   End Year __ __ __ __

   ☐  Cigars      Cigars Per Day _____      Start Year __ __ __ __   End Year __ __ __ __

   ☐  If Other Tobacco Products, please specify (e.g., chewing tobacco): _____
   <br>      Amount Per Day _____      Start Year __ __ __ __   End Year __ __ __ __

   Have you ever been diagnosed with chronic obstructive pulmonary disease ("COPD")? ...................☐ Yes  ☐ No

   *If yes, please attach all documents regarding such diagnosis and explain the nature of the diagnosis:*

   SEE ENCLOSED MEDICAL RECORDS
   _____

3.  **Information Regarding Chest X-Ray**

   **Please check the box next to the applicable location where your chest x-ray was taken (check one):**

   ☐  Mobile laboratory  ☐ Job site  ☐ Union Hall  ☐ Doctor office  ☐ Hospital  ☐ Other: _____

   **Address where chest x-ray taken:** Plaintiff objects as ambiguous. Numerous x-rays were taken. SEE ATTACHED
   <br>                                    Address                                                                    MEDICAL REPORTS

   _____
   City                                            State/Province                    Zip/Postal Code

**PART II:  ASBESTOS-RELATED CONDITION(S) (Continued)**

4.  Information Regarding Chest X-Ray Reading        **SEE ENCLOSED MEDICAL REPORT**

Date of Reading:  __ __ / __ __ / __ __ __ __          ILO score: _____

Name of Reader: _____

Reader's Daytime Telephone Number: .......................................................... ( __ __ __ ) __ __ __ - __ __ __ __

Reader's Mailing Address: _____
                             Address

_____
City                                    State/Province                         Zip/Postal Code

With respect to your relationship to the reader, check all applicable boxes:        **Object. Attorney work product.**

Was the reader paid for the services that he/she performed ......................................................... ☐ Yes  ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the reader? ........................... ☐ Yes  ☐ No

Was the reader referred to you by counsel? ................................................................... ☐ Yes  ☐ No

Are you aware of any relationship between the reader and your legal counsel? ........................... ☐ Yes  ☐ No

*If yes, please explain:* _____  Object, attorney client privilege

Was the reader certified by the National Institute for Occupational Safety and Health at the time of the reading?

See enclosed medical records .................................................................................... ☐ Yes  ☐ No

*If the reader is not a certified B-reader, please describe the reader's occupation,  specialty, and the method through which the reading was made:* _____

                              **SEE ENCLOSED MEDICAL RECORD(S) FOR #5**

5.  Information Regarding Pulmonary Function Test: ............................. Date of Test:  __ __ / __ __ / __ __ __ __

List your height in feet and inches when test given: ......................................... _____ ft _____ inches

List your weight in pounds when test given: ................................................................. _____ lbs

Total Lung Capacity (TLC): .............................................................................._____ % of predicted

Forced Vital Capacity (FVC): ............................................................................._____ % of predicted

FEV1/FVC Ratio: ............................................................................................._____ % of predicted

Name of Doctor Performing Test (if applicable): _____

Doctor's Specialty: _____

Name of Clinician Performing Test (if applicable): _____

Testing Doctor or Clinician's Mailing Address: _____
                                                  Address

_____
City                                    State/Province                         Zip/Postal Code

Testing Doctor or Clinician's Daytime Telephone Number: ......................... ( __ __ __ ) __ __ __ - __ __ __ __

Name of Doctor Interpreting Test: _____

Doctor's Specialty: _____

Interpreting Doctor's Mailing Address: _____
                                          Address

_____
City                                    State/Province                         Zip/Postal Code

Interpreting Doctor's Daytime Telephone Number: ..................................... ( __ __ __ ) __ __ __ - __ __ __ __

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

**With respect to your relationship to the doctor or clinician who performed the pulmonary function test check all applicable boxes:**

If the test was performed by a doctor, was the doctor your personal physician?..........................................X Yes ☐ No

Was the testing doctor and/or clinician paid for the services that he/she performed? ...................................X Yes ☐ No

*If yes, please indicate who paid for the services performed:*._____

Did you retain counsel in order to receive any of the services performed by the testing doctor or clinician? ............**OBJECT**

Was the testing doctor or clinician referred to you by counsel?..............................................................................**OBJECT**

Are you aware of any relationship between either the doctor or clinician and your legal counsel? ......................**OBJECT**

*If yes, please explain:* _____

**Was the testing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the pulmonary function test?....................................................SEE ENCLOSED MEDICAL REPORT**

**With respect to your relationship to the doctor interpreting the results of the pulmonary function test check all applicable boxes:**

Was the doctor your personal physician? ..............................................................................................X Yes ☐ No

Was the doctor paid for the services that he/she performed?........................................................................X Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor? .....................................**OBJECT**

Was the doctor referred to you by counsel?...........................................................................................................**OBJECT**

Are you aware of any relationship between the doctor and your legal counsel? ....................................................**OBJECT**

*If yes, please explain* _____

**Was the doctor interpreting the pulmonary function test results certified as a pulmonologist or internist by the American Board of Internal Medicine at the time the test results were reviewed?................................☐ Yes ☐ No**

6. **Information Regarding Pathology Reports:      SEE ENCLOSED MEDICAL REPORT**

**Date of Pathology Report:**.................................................................................... __ __ / __ __ / __ __ __ __

**Findings:** _____

**Name of Doctor Issuing Report:** _____

**Doctor's Specialty:** _____

**Doctor's Mailing Address:** _____
                              Address

City                                    State/Province                    Zip/Postal Code

**Doctor's Daytime Telephone Number:** ...................................... ( __ __ __ ) __ __ __ - __ __ __ __

**With respect to your relationship to the doctor issuing the pathology report, check all applicable boxes:**

Was the doctor your personal physician? ..............................................................................................☐ Yes  X No

Was the doctor paid for the services that he/she performed?........................................................................X Yes ☐ No

*If yes, please indicate who paid for the services performed:*_____ Claimant _____

Did you retain counsel in order to receive any of the services performed by the doctor? .....................................**OBJECT**

Was the doctor referred to you by counsel?..........................................................................**ATTORNEY CLIENT**

Are you aware of any relationship between the doctor and your legal counsel? ............................................**PRIVILEGE**

*If yes, please explain:* _____

**Was the doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis?**

...............................................................................................................................................X Yes ☐ No

**PART II:  ASBESTOS-RELATED CONDITION(S) (Continued)**

7.  With respect to the condition alleged, have you received medical treatment from a doctor for the condition?

.................................................................................................................................................X Yes ☐ No

*If yes, please complete the following:*        **SEE ENCLOSED MEDICAL RECORDS**

Name of Treating Doctor: _____

Treating Doctor's Specialty: _____

Treating Doctor's Mailing Address: _____
                                                         Address

_____
City                                                State/Province                        Zip/Postal Code

Treating Doctor's Daytime Telephone number: ......................................... ( __ __ __ ) __ __ __ - __ __ __ __

Was the doctor paid for the services that he/she performed? ...............................................☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor? ....................☐ Yes ☐ No


**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

8

## PART III: DIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below for each site at which you allege exposure to Grace asbestos-containing products. If you allege exposure at multiple sites, the Court has ordered that you must complete a separate chart for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each job listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Grace asbestos-containing products

(b) A worker who personally removed or cut Grace asbestos-containing products

(c) A worker who personally installed Grace asbestos-containing products

(d) A worker at a site where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(e) A worker in a space where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(f) If other, please specify:

### SEE INTERROGATORY ANSWERS

**Site of Exposure:**

Site Name: _____   Location: _____

Site Type: ☐ Residence  ☐ Business   Site Owner: _____

Employer During Exposure: _____

Unions of which you were a member during your employment: _____

| | Product(s) to which you were exposed (identification of Grace Product) | Dates and Duration of Exposure (mm/dd/yy - mm/dd/yy) | Occupation Code (From List Provided) | Industry Code (From List Provided) | Nature of Exposure (Were you a worker who personally mixed, installed, removed, or cut a Grace asbestos-containing product, or a worker at a site or in a space where such products were being installed, mixed, removed or cut by others?) |
|---|---|---|---|---|---|
| Job 1 Description: | See Cover Letter | See Emmett Job Description | | | |
| Job 2 Description: | | | | | |
| Job 3 Description: | | | | | |
| Job 4 Description: | | | | | |
| Job 5 Description: | | | | | |
| Job 6 Description: | | | | | |

9

## PART IV: INDIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

1.  Are you asserting an injury caused by exposure to Grace asbestos-containing products through contact/proximity
    with another injured person? ................................................................... Object as claimant has bystander exposure

    *If yes, complete questions 2 through 10 of this section for each injured person through which you allege exposure to
    Grace asbestos-containing products. For your convenience, additional copies of Part IV are attached as Appendix E
    to this Questionnaire.*    Exposure also but has no knowledge if person using product is also "injured"

2.  Please indicate the following information regarding the other injured person:

    Name of Other Injured Person: _____ Gender: ☐ Male ☐ Female

    Last Four Digits of Social Security Number: __ __ __ __          Birth Date: __ __ / __ __ / __ __

3.  What is your Relationship to Other Injured Person: ................................☐ Spouse  ☐ Child  ☐ Other

4.  Nature of Other Injured Person's Exposure to Grace Asbestos-Containing Products:

    _____

5.  Dates Other Injured Person was Exposed to Grace Asbestos-Containing Products:

    FROM: __ __ / __ __ / __ __ __ __    To: __ __ / __ __ / __ __ __ __

6.  Other Injured Person's Basis for Identification of Asbestos-Containing Product as Grace Product:

    _____

7.  Has the Other Injured Person filed a lawsuit related to his/her exposure? ............................................☐ Yes  ☐ No

    *If yes, please provide caption, case number, file date, and court name for the lawsuit:*

    Caption: _____

    Case Number: _____ File Date: __ __ / __ __ / __ __ __ __

    Court Name: _____

8.  Nature of Your Own Exposure to Grace Asbestos-Containing Product:

    _____

9.  Dates of Your Own Exposure to Grace Asbestos-Containing Product:

    FROM: __ __ / __ __ / __ __ __ __    To: __ __ / __ __ / __ __ __ __

10. Your Basis for Identification of Asbestos-Containing Product as Grace Product:

    _____

[REMAINDER OF PAGE INTENTIONALLY BLANK]

## PART V: EXPOSURE TO NON-GRACE ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products. If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate chart for each party. For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each product listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure

(a) A worker who personally mixed Non-Grace asbestos-containing products
(b) A worker who personally removed or cut Non-Grace asbestos-containing products
(c) A worker who personally installed Non-Grace asbestos-containing products
(d) A worker at a site where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(e) A worker in a space where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(f) If other, please specify.

| Party Against which Lawsuit or Claim was Filed: | Date(s) of Exposure and Approximate Amount of Time Spent at Each Site | Occupation Code | Industry Code | Were specific Non-Grace asbestos-containing products being installed, mixed, removed or cut during this period? If so, please identify these products. | Nature of Exposure |
|---|---|---|---|---|---|
| **Site of Exposure 1** Site Name: Address: City and State: Site Owner: | SEE INTERROGATORY ANSWER NO. 11 | | | | |
| Job 1 Description: | | | | | |
| Job 2 Description: | | | | | |
| Job 3 Description: | | | | | |
| **Site of Exposure 2** Site Name: Address: City and State: Site Owner: | | | | | |
| Job 1 Description: | | | | | |
| Job 2 Description: | | | | | |
| Job 3 Description: | | | | | |
| **Site of Exposure 3** Site Name: Address: City and State: Site Owner: | | | | | |
| Job 1 Description: | | | | | |
| Job 2 Description: | | | | | |
| Job 3 Description: | | | | | |

## PART VI: EMPLOYMENT HISTORY

Other than jobs listed in Part III or V, please complete this Part VI for all of your prior industrial work experience up to and including your current employment. For each job, include your employer, location of employment, and dates of employment. Only include jobs at which you worked for at least one month. Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.     **SEE INTERROGATORY ANSWER NO. 10**

Occupation Code: _____   If Code 59, specif y: ._____

Industry Code: _____   If Code 118, specify: _____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __      End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
          Address

_____
City                                          State/Province                    Zip/Postal Code

Occupation Code: _____   If Code 59, specif y: ._____

Industry Code: _____   If Code 118, specify: _____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __      End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
          Address

_____
City                                          State/Province                    Zip/Postal Code

Occupation Code: _____   If Code 59, specif y: ._____

Industry Code: _____   If Code 118, specify: _____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __      End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
          Address

_____
City                                          State/Province                    Zip/Postal Code

Occupation Code: _____   If Code 59, specif y: ._____

Industry Code: _____   If Code 118, specify: _____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __      End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
          Address

_____
City                                          State/Province                    Zip/Postal Code

**PART VII:  LITIGATION AND CLAIMS REGARDING ASBESTOS AND/OR SILICA**

**a. LITIGATION            SEE ENCLOSED CASE CAPTION**

1. Have you ever been a plaintiff in a lawsuit regarding <u>asbestos</u> or silica?.................................................x Yes ☐ No

   *If yes, please complete the rest of this Part VII(a) for each lawsuit.   For your convenience, additional copies of Part VII are attached as Appendix G to this Questionnaire*

2. Please provide the caption, case number, file date, and court name for the lawsuit you filed:

   Caption: _____

   Case Number: _____   File Date: __ __ / __ __ / __ __ __ __

   Court Name: _____

3. Was Grace a defendant in the lawsuit? ......................................................................☐ Yes ☐ No

4. Was the lawsuit dismissed against any defendant? ......................................................☐ Yes ☐ No

   *If yes, please provide the basis for dismissal of the lawsuit against each defendant:*

   _____

   _____

5. Has a judgment or verdict been entered?...................................................................☐ Yes ☐ No

   *If yes, please indicate verdict amount for each defendant(s):* _____

6. Was a settlement agreement reached in this lawsuit? ..................................................☐ Yes ☐ No

   *If yes and the settlement was reached on or after April 2, 2001, please indicate the following:*

   a.  Settlement amount for each defendant: _____

   b.  Applicable defendants:_____

   c.  Disease or condition alleged: _____

   d.  Disease or condition settled (if different than disease or condition alleged):_____

7. Were you deposed in this lawsuit? ...........................................................................☐ Yes ☐ No

   *If yes and Grace was not a party in the lawsuit, please attach a copy of your deposition to this Questionnaire.*

**b. CLAIMS**

1. Have you ever asserted a claim regarding asbestos and/or silica, including but not limited to a claim against an asbestos trust (other than a formal lawsuit in court)? ..................................................... X Yes ☐ No

   *If yes, please complete the rest of this Part VII(b).  If no, please skip to Part VIII.*
   OBJECT TO THE FOLLOWING QUESTIONS AS THIS IS DEEMED NON-DISCOVERABLE UNDER DELAWARE LAW AND THUS BINDING IN DISTRICT COURT

2. Date the claim was submitted:......................................................................... __ __ / __ __ / __ __ __ __

3. Person or entity against whom the claim was submitted:_____

4. Description of claim: _____

5. Was claim settled? ...................................................................................☐ Yes ☐ No

6. Please indicate settlement amount: ..........................................$_____

7. Was the claim dismissed or otherwise disallowed or not honored? ........................☐ Yes ☐ No

   *If yes, provide the basis for dismissal of the claim:_____*

## PART VIII:  CLAIMS BY DEPENDENTS OR RELATED PERSONS

**SEE COMPLAINT**

Name of Dependent or Related Person: _____ Gender: ☐ Male ☐ Female

Last Four Digits of Social Security Number: __ __ __ __    Birth Date: __ __ / __ __ / __ __ __ __

Financially Dependent:.................................................................................................☐ Yes ☐ No

Relationship to Injured Party: ☐ Spouse ☐ Child ☐ Other If other, please specify _____

Mailing  Address:  _____
                            Address

_____
City                                              State/Province                          Zip/Postal Code

Daytime Telephone number: ..............................................................(__ __ __) __ __ __ - __ __ __ __

## PART IX:  SUPPORTING DOCUMENTATION

Please use the checklists below to indicate which documents you are submitting with this form.
**Copies:**

X   Medical records and/or report containing a diagnosis
X   Lung function test results
X   Lung function test interpretations
☐   Pathology reports
☐   Supporting documentation of exposure to Grace
     asbestos-containing products
☐   Supporting documentation of other asbestos exposure

☐   X-rays
☐   X-ray reports/interpretations
☐   CT scans
☐   CT scan reports/interpretations
☐   Depositions from lawsuits indicated in Part VII
     of this Questionnaire
☐   Death Certification

**Originals:**
☐   Medical records and/or report containing a diagnosis
☐   Lung function test results
☐   Lung function test interpretations
☐   Pathology reports
☐   Supporting documentation of exposure to Grace
     asbestos-containing products

☐   Supporting documentation of other asbestos exposure
☐   X-rays
☐   X-ray reports/interpretations
☐   CT scans
☐   CT scan reports/interpretations
☐   Death Certification

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation.  Please indicate the documents for which you are seeking reimbursement and attach a receipt for such costs:
**BILL OF COPIES ENCLOSED**

## PART X: ATTESTATION THAT INFORMATION IS TRUE AND ACCURATE

The information provided in this Questionnaire must be accurate and truthful.  This Questionnaire is an official court document that may be used as evidence in any legal proceeding regarding your Claim.  The penalty for presenting a fraudulent Questionnaire is a fine of up to $500,000 or imprisonment for up to five years, or both.  18 U.S.C. §§ 152 & 3571.
**TO BE COMPLETED BY THE INJURED PERSON.**

I swear, **under penalty of perjury,** that, to the best of my knowledge, all of the foregoing information contained in this Questionnaire is true, accurate and complete.

Signature: _____    Date: __ __ / __ __ / __ __ __ __

Please Print Name: _____

**TO BE COMPLETED BY THE LEGAL REPRESENTATIVE OF THE INJURED PERSON.**

I swear that, to the best of my knowledge, all of the information contained in this Questionnaire is true, accurate and complete.

Signature: *Robert Jacobs*    Date: 07 / 12 / 2006

Please Print Name: Robert Jacobs

14

**Emmell Job Description**

Plaintiff was exposed to W.R. Grace asbestos-containing MonoKote fireproofing material while working at the DuPont Chestnut Run building, Wilmington, DE. (from henceforth, the DuPont Chestnut Run building will be referred to as Chestnut Run). MonoKote fireproofing material was seen in use at Chestnut Run from 1958 – 1959 and again from 1966-1967 as is documented in the depositions of Allen J. Nagowski C.A. 90C-AP-54-1-CV.  Considering that MonoKote would be particularly difficult to remove from all fireproofed surfaces at Chestnut Run, and MonoKote was still in use 8 years after its use by the witness at the Chestnut Run location, it can be inferred that MonoKote was verifiably present at Chestnut Run between 1958 – 1967.  Plaintiff, in the course of performing his duties as a maintenance tradesman at Chestnut Run, came in the vicinity and/or contact with surfaces sprayed with a mixture comprised of MonoKote and plaster or similar material.  Plaintiff inhaled latent aerial dust from the original spraying that did not adhere, later flaked from the surfaces that were sprayed or was incidentally knocked loose during the original construction or subsequent maintenance or repairs.  This exposure to W.R. Grace asbestos-containing MonoKote fireproofing material directly contributed to the Plaintiff's asbestos-related sickness as documented in the Plaintiff's attached medical history.

Plaintiff was exposed to W.R. Grace asbestos-containing MonoKote fireproofing material while working at the Getty petroleum refinery in Delaware City, DE (from henceforth, the Getty petroleum refinery in Delaware City, DE, also known as Catalytic, Sun Oil, Texaco will be referred to as Getty). MonoKote fireproofing material was used continuously at Getty from 1959 – 1978 as is documented in the deposition of Allen G. Nelson, Sr., C.A. 92C-01-251.  Plaintiff, in the course of performing his duties as a maintenance tradesman from 1955 to 1956, 1963 to 1964, 1967 to 1968 and 1970 to 1972 at Getty, came in the vicinity and/or contact with surfaces sprayed with a mixture comprised of MonoKote and plaster or similar material.  Plaintiff inhaled latent aerial dust from the original spraying that did not adhere, later flaked from the surfaces that were sprayed or was incidentally knocked loose during the original construction or subsequent maintenance or repairs.  This exposure to W.R. Grace asbestos-containing MonoKote fireproofing material directly contributed to the Plaintiff's asbestos-related sickness as documented in the Plaintiff's attached medical history.

Plaintiff was exposed to W.R. Grace asbestos-containing MonoKote fireproofing material while working at the Getty petroleum refinery in Delaware City, DE (from henceforth, the Getty petroleum refinery in Delaware City, DE, also known as Catalytic, Sun Oil, Texaco will be referred to as Getty). MonoKote fireproofing material was used continuously at Getty from 1959 – 1978 as is documented in the deposition of Allen G. Nelson, Sr., C.A. 92C-01-251.  Plaintiff, in the course of performing his duties as a maintenance tradesman in 1959 at Getty, came in the vicinity and/or contact with surfaces sprayed with a mixture comprised of MonoKote and plaster or similar material.  Plaintiff inhaled latent aerial dust from the original spraying that did not adhere, later flaked from the surfaces that were sprayed or was incidentally knocked loose during the original construction or subsequent maintenance or repairs.  This exposure to W.R. Grace

asbestos-containing MonoKote fireproofing material directly contributed to the Plaintiff's asbestos-related sickness as documented in the Plaintiff's attached medical history. Plaintiff was exposed to W.R. Grace asbestos-containing MonoKote fireproofing material while working at the Getty petroleum refinery in Delaware City, DE (from henceforth, the Getty petroleum refinery in Delaware City, DE, also known as Catalytic, Sun Oil, Texaco will be referred to as Getty). MonoKote fireproofing material was used continuously at Getty from 1959 – 1978 as is documented in the deposition of Allen G. Nelson, Sr., C.A. 92C-01-251.  Plaintiff, in the course of performing his duties as a maintenance tradesman at Getty, came in the vicinity and/or contact with surfaces sprayed with a mixture comprised of MonoKote and plaster or similar material.  Plaintiff inhaled latent aerial dust from the original spraying that did not adhere, later flaked from the surfaces that were sprayed or was incidentally knocked loose during the original construction or subsequent maintenance or repairs.  This exposure to W.R. Grace asbestos-containing MonoKote fireproofing material directly contributed to the Plaintiff's asbestos-related sickness as documented in the Plaintiff's attached medical history.

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

WILLIAM E. EMMELL, SR.;      :
                               :

     Plaintiff,           :
                               :

       v.               :     C.A. No. 94C-11-226
                               :

ABEX CORPORATION, et al.,    :
                               :

     Defendants.          :

**WILLIAM EMMELL'S ANSWERS TO INTERROGATORIES
DIRECTED TO PLAINTIFF BY ALL DEFENDANTS
AND RESPONSE TO REQUEST FOR PRODUCTION**

**Preamble**

    Counsel for plaintiff have already produced all Documents and Exhibits to all defense counsel pursuant to Standing Order No. 1. These Documents and Exhibits are available for review at plaintiff's counsel's office.

**A.   Personal History**

    1.    State all names by which you have been known; the date and place of your birth; occupation; social security number; height; weight; color of hair and eyes; and the number of any motor vehicle operator's license held in the State of Delaware or any other state.

ANSWER:   Name:                  William E. Emmell, Sr.

          Date of Birth:       11/27/23

          Place of Birth:      Salem, NJ

          Occupation:          Millwright

          Social Security No.:   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

          Height:               5'11"

          Weight:               208

          Hair:                 Gray

          Eyes:                 Blue

          Driver's License:     E-540-887-189-906 MD

    2.    State the address of each place of residence that you have occupied from 1936 to date.

| ANSWER: | Meadow Road | 29 W. Chestnut St. |
|---|---|---|
| | New Castle, DE | Ambler, PA |
| | 1942-1945 | 1945-1948 |
| | | |
| | 320 Collins Park | Castle Hill |
| | New Castle, DE | New Castle, DE |
| | 1950-1965 | 1965-1972 |
| | | |
| | RD 1, Box 51-B | 366 County Rd. |
| | Townsend, DE | Bear, DE |
| | 1972-1980 | 1980-1983 |
| | | |
| | 3 W. Cecil Ave. | |
| | Northeast, MD | |
| | 1983-1994 | |

    3.    Are you married?  If yes, please state the name and present address of your spouse.

ANSWER:    No.

    4.    If you have had any previous marriages, please state the name of any former spouse, and state the date, place and circumstances under which the marriage or marriages were dissolved or terminated.

ANSWER:    Plaintiff was divorced from Arline Emmell in 1965 and

Kathy Reynolds in 1981.

    5.    Please state the name, ages and present address of your children.

| ANSWER: | Elizabeth Brown | Diana Hart |
|---|---|---|
| | Cochranville, PA | DOB:  1947 |
| | DOB: 4/14/45 | |
| | | |
| | William E. Emmell, Jr. | Warren L. Emmell |
| | Bear, DE | Newport, DE |
| | DOB: 7/6/51 | DOB: 6/22/52 |
| | | |
| | Catherine J. Emmell | Edward J. Emmell |
| | New Castle, DE | Houston, TX |
| | DOB: 7/7/53 | DOB: 3/4/65 |
| | | |
| | Christopher L. Emmell | |
| | Brookside, DE | |
| | DOB: 4/5/67 | |

    6.    If you have ever been a member of the Armed Forces of the United States, state the following:

(a)  The branch of the service, serial number, and highest rank held;

(b)  The beginning and ending dates of your military services;

(c)  The type of discharge that you received;

(d)  Whether you were given a physical examination which included x-rays prior to the time you entered the service;

(e)  Whether you received any injury while in the military services; and

(f)  Whether you have claimed disability for any injury or physical condition arising out of your military service.

ANSWER:     (a)  Army; 43-007-926; P.F.C.;

(b)  7/26/45 - 8/16/46;

(c)  Honorable;

(d)  Yes;

(e)-(f)  Plaintiff objects to this interrogatory as being beyond the scope of discovery.  Plaintiff further objects as this question is not relevant nor designed to lead to relevant evidence.  Without waiver, plaintiff states: No.

7.   If you have had a claim arising out of your military service, state the date on which the claim was made, the nature of the claim, the claimed disability and the disability rating, if any, which you were given.

ANSWER:   N/A.

8.   If you have ever been convicted of a felony or a crime involving dishonesty, state fully and in detail the date, place and nature of each such felony conviction.

ANSWER:   Plaintiff objects to this interrogatory as being beyond the scope of discovery and as being irrelevant and not designed to lead to relevant evidence.  Without waiver of such objection, plaintiff states No.

9.   Give a brief summary of your education, including schools attended and the last year completed.

ANSWER:  7th grade; Salem, NJ;

**B.    Employment Background**

10.    State the names and address of each employer for whom you worked during the years 1936 to date, stating as to each such employer the beginning and ending dates of employment, the nature of the business, the name and address of your direct supervisor, and your particular job function.

ANSWER:   Plaintiff believes to his best recollection that he was

exposed to asbestos products during his employment with Motor

Wheel Corporation, Local 626 of the Carpenters Union, Getty-

Delaware City, Keasbey & Mattison, General Motors, Boxwood plant

and the Pennsylvania Railroad.

> Motor Wheel Corporation
> Newark, DE
> 1957-1982

Plaintiff worked as a millwright/maintenance mechanic.

Plaintiff used pipecovering and worked on the ovens.  His

personnel manager was Marvin Quinn.

> Local 626 of the Carpenters Union
> 1949-1957

Plaintiff worked at various sites in Delaware and New Jersey

where he was exposed to the asbestos being used around him.  Some

of these sites include, but are not limited to the following:

Chrysler, Newark plant (1949), Salesianum School, Howard School,

DuPont-Chestnut Run, DuPont-Chambers Works for one year in 1952

or 1953, Heald Street School, DPL-Edgemoor, Brandywine Race

Track, Getty/Tidewater plant (1955-1956 and 1959) and Hercules

sites.  Plaintiff hung doors in a new warehouse building which

was being built on the DuPont-Chambers Works site.

> Getty-Delaware City
> 1959 (for 13 weeks)

Plaintiff was employed as a dump truck driver driving loads of asbestos pipe insulation.

>           Keasbey & Mattison plant
>           Ambler, PA
>           1947 (seven months)

Plaintiff was employed as a punch out operator. Plaintiff put holes into asbestos shingles.

>           General Motors Corporation
>           Boxwood Assembly plant
>           1947-1949

Plaintiff was employed as a spray painter on the assembly line where he was exposed to the asbestos around him.

>           Pennsylvania Railroad
>           Wilmington Shops
>           1941-1945

Plaintiff was employed as a boilermaker's helper where he was exposed to the asbestos around him. Plaintiff put coal and water in steam engines.

>           Siani's-Material Transit
>           1982-1983

Plaintiff repaired machinery and welded on a regular basis.

Plaintiff's Social Security authorization is attached to this answer for McCarter & English pursuant to Standing Order No. 1.

C.  **Product I.D. and Exposure History**

11.  With respect to any products containing asbestos manufactured, packaged, furnished, supplied, or sold by each defendant named in this action that you claimed to have worked with or around, state the following for each defendant.

>           (a)  The name of the product or products;

>           (b)  The name of your employer at the time you worked with or around such product;

      (c)  The name and address of the plant where you worked with or around such products;

      (d)  The name and last known address of your immediate supervisor or job superintendent on such job;

      (e)  The name and last known address of all persons with whom you worked on such jobs; and

      (f)  The approximate length of time that you worked on each such job.

ANSWER:    (a)  At this time plaintiff specifically recalls using and/or being exposed to the following asbestos products.  He may recall additional products in the future.

         **PA Railroad-Wilmington Shops**
         Raw asbestos-mud
         Asbestos block-firebrick

         **Siani's-Material Transit**
         Welding rods

         **Keasbey & Mattison plant**
         Asbestos shingles

         **Motor Wheel Corp.**
         Asbestos Pipecovering
         Welding rods
         Owens-Corning Fiberglas Corporation

         **Getty/Tidewater**
         Asbestos pipe insulation

      In addition, plaintiff recalls the following asbestos-containing products:  Eagle-Picher asbestos products, Atlas asbestos cement, Goldbond joint compound, Lincoln welding rods, Hobart welding rods, Westinghouse welding rods, General Electric welding rods, Fleetweld welding rods, Keasbey & Mattison shingles, Johns-Manville asbestos products, Anchor Packing material, Garlock gaskets, asbestos roofing asphalt, asbestos pipe covering, asbestos rope packing, asbestos cloth and asbestos packing.

Plaintiff was exposed to Ehret asbestos-containing products distributed by Desco while working at the Getty/Tidewater refinery, and possibly other sites while employed by Local 626 of the Carpenters Union from 1949 to 1957.

Although plaintiff may not have a specific recollection of the following products, pursuant to plaintiff's counsel's obligation to disclose information within his knowledge or control, plaintiff's counsel provides the information contained in the following exhibits which indicate products that may have been at plaintiff's worksite.  These exhibits are incorporated into this answer:  Exhibits A and E-3 for Chrysler plant; A, E-1 and E-2 for DuPont-Chestnut Run; A, E-1 and E-2 for DuPont-Chambers Works; A, E-1 and E-2 for DP&L-Edgemoor; A, E-1, E-2, E-3 for Getty/Tidewater; A, E-1, E-2 and E-3 for Hercules; A, E-2 and E-3 for General Motors Corp.; E-1 for Pennsylvania Railroad-Wilmington Shops; and Exhibits A-1 and E attached to IN RE: ASBESTOS LITIGATION, C.A. NO. 77C-ASB-2, Exhibits Attached To The Answers To Standard Interrogatory No. 12 Directed To All Plaintiffs By All Defendants, filed on 5/09/91 and all subsequent and/or future amendments and supplements filed thereafter. Additional copies of the above Exhibits will be provided upon specific request.

(b)    See answer to Interrogatory No. 10.

(c)    See answer to Interrogatory No. 10.

(d)    See answer to Interrogatory No. 10.

(e)    There were many people who worked with plaintiff at Chrysler plant, DuPont-Chestnut Run, DuPont-Chambers Works, DP&L-

Edgemoor; Getty/Tidewater, Hercules, General Motors Corp. and
Pennsylvania Railroad-Wilmington Shops.  At this time plaintiff
specifically recalls the following names listed below. Other
names may be supplied later.

> **PA Railroad-Wilmington Shops**
> Charles Emmell (deceased)
>
> **General Motors**
> Roy Robinson
> Frank Green
> Harry Begetz
>
> **Local 626**
> Paul Cherrin
>
> **Motor Wheel Corp.**
> Marvin Quinn (personnel manager)
> Hal Boyd

Additionally, plaintiff refers and incorporates into
the answer herein Exhibit B for Chrysler, DuPont-Chestnut Run,
DuPont-Chambers Works, DP&L-Edgemoor, Getty/Tidewater, Hercules
and General Motors attached to IN RE: ASBESTOS LITIGATION, C.A.
NO. 77C-ASB-2, Exhibits Attached To The Answers To Standard
Interrogatory No. 12 Directed To All Plaintiffs By All
Defendants, filed on 5/09/91 and as supplemented on 1/14/93 and
all subsequent and/or future amendments and supplements filed
thereafter for names of co-workers.  Plaintiff believes his
attorneys will prove that the workers listed on Exh. B also
worked at plaintiff's worksite during the period of plaintiff's
employment.  Additional copies of Exh. B will be provided upon
specific request.

    (f)  See answer to Interrogatory No. 10.

12.  State fully and in detail each and every evidentiary
fact upon which the alleged negligence or alleged liability of
each defendant is based.  As to each such fact, state:

## D.    Smoking History

24.    Do you smoke cigarettes, cigars or a pipe?

ANSWER:  No.

25.    Have you ever smoked tobacco products of any type?

ANSWER:  Yes.

26.    If your answer to Interrogatory 24 and/or 25 is in the affirmative, please state fully and in detail:

(a)  The type of tobacco products which you smoke or have smoked, that is, cigarettes, cigars, pipes, etc., stating whether you inhaled the smoke or not;

(b)  The daily frequency with which you smoke or have smoked same, e.g., two packages of cigarette daily, two pipefulls daily, etc.;

(c)  The dates and time periods during which you have smoked;

(d)  For any time periods during which you have ceased smoking tobacco products, your reasons for stopping;

(e)  For any time period when you have commenced smoking tobacco products after a period of having stopped smoking, your reasons for restarting;

(f)  If you smoke cigarettes, please state the average number of packs per day so consumed in each of the following five year periods of 1935 to the present time:

(i)     1935 - 1940

(ii)    1941 - 1945

(iii)   1946 - 1950

(iv)    1951 - 1955

(v)     1956 - 1960

(vi)    1961 - 1965

(vii)   1966 - 1970

(viii)  1971 - 1975

(ix)    1976 - present

(g)  Whether you were ever advised by any physician to stop smoking.  If your answer is yes, give the date and name and

address of each physician who gave you any such advice, and also
state whether you followed that advice; and

      (h)  State the brand of tobacco used by plaintiff.

ANSWER:  (a)  Lucky, Camel;

      (b)  1/2 pack/day up to 3/4 pack/day;

      (c)  1943-1965;

      (d)  Plaintiff stopped smoking in 1965 because of
health reasons;

      (e)  N/A;

      (f)  Plaintiff does not recall the exact number of
cigarettes he smoked per five-year period.  The following is to
the best of plaintiff's recollection.

            (i)    N/A;

            (ii)   1943-1945 - 1/2 pack/day;

            (iii)  1/2 pack/day;

            (iv)   1/2 pack/day;

            (v)    3/4 pack/day;

            (vi)   3/4 pack/day;

            (vii)  N/A;

           (viii) N/A;

            (ix)   N/A

      (g)  No;

      (h)  Lucky and Camel cigarettes.

     27.  Are you aware of the United States Surgeon General's
warning placed on all cigarette packages and advertisements?

ANSWER:  Plaintiff objects to this interrogatory as it is not
calculated to lead to admissible evidence.  Also objected to as
being vague.  Without waiving such objections, plaintiff states

PULMONARY CONSULTANTS, INC.

CROZER-CHESTER MEDICAL CENTER

PROFESSIONAL BUILDING II, SUITE 422

UPLAND, CHESTER, PENNSYLVANIA 19013
—
TELEPHONE (610) 876-5627

JEROME RUDNITZKY, M.D.
LEONARD BERKOWITZ, M.D.
GARY D. WENDELL, M.D.

February 24, 1995

Mr. Robert Jacobs, Esquire
Jacobs and Crumplar
2 East 7th Street
Wilmington, DE

Re: William Emmell

Dear Mr. Jacobs:

I saw your client Mr. William Emmell in the office on January 6, 1995. He is a 71 year old white male who has been a non-smoker for the last 30 years. Prior to that he smoked 1 to 1 1/2 packs per day for 20 years. He was formerly exposed to asbestos dust while working as a millwright mechanic at the Keesby Mattison Plant in Ambler. He was involved with the manufacture of asbestos shingles and operating a punch press putting holes in the shingles with a tremendous amount of dust generated for approximately 9 months. He also worked at the Dravo Shipyard in Wilmington as a millwright maintenance mechanic involved with welding and burning using asbestos blankets for approximately 1 year. He also worked at the Pennsylvania Railroad as a boilermaker's helper utilizing asbestos insulation around fire boxes with much dust exposure for approximately 3 years. He held the position at the EI Dupont Chamberworks as a carpenter involved with the construction of a large warehouse extensively utilizing asbestos-containing materials. For 17 weeks he worked at the Getty Oil Refinery driving a truck, hauling old pipe coverings and unloading these himself for approximately 17 weeks with much dust exposure. He worked as a millwright maintenance mechanic at the Motor Wheel Corporation for approximately 25 years involved with pipe insulating and ripe outs and re-insulation of asbestos-containing materials until the plant closed in 1982. He then worked an additional six months at that site to remove asbestos-containing materials. He states he used no precautions throughout his career. At the current time he notes shortness of breath on walking up less than one flight of stairs or less than 1 block on the level ground. He has a chronic cough which occasionally produces mucus. He had a right pleural effusion in November of 1993 and had what sounds like a pleural tap and biopsy done. He was finally told it was not related to cancer but was related to asbestos exposure. He gets shortness of breath at night but has had an extensive cardiac work-up which he was told was

Mr. Robert Jacobs, Esquire
Re: William Emmell
PAGE TWO:

normal. His current medications include Proventil and Atrovent
inhalers on an as needed basis and nitroglycerine on an as needed
basis. He uses Nifedipine chronically for hypertension.

Mr. Emmell's past medical history is positive for chronic
hypertension under treatment and a nephrectomy done in the distant
past for hematuria. He is known to have an enlarged prostate.
Family history is positive for a brother that died of emphysema.

Social history reveals that Mr. Emmell is divorced. He does
take out his trash but he does not do home maintenance because of
shortness of breath. Review of systems is positive for occasional
ankle swelling and arthritis and bursitis of his right shoulder.

Physical examination revealed a fairly fit-looking male. A dry
cough was noted.  Blood pressure was elevated at 150/100, pulse was
80 and regular. Head, eyes, ears, nose and throat were positive for
arteriolar narrowing in the fundi. The neck revealed no increased
nodes or goiter and the vessels were normal.  The chest revealed a
normal AP diameter and the E/I ratio was normal. He had extensive
rales bilaterally. Some dullness to percussion was heard at the
right base. No wheezing was heard. The heart revealed a regular
rhythm without murmur, gallop or rub, the abdomen revealed no
hepatosplenomegaly, the extremities revealed no cyanosis, clubbing
or edema.

Pulmonary function testing was done on Mr. Emmell in the
office on January 6, 1995. Screening spirometry reveals an FEC and
$FEV_1$ at the lower limits of normal. Carbon monoxide diffusing
capacity by the single breath technique was reduced. This reduction
was seen in spite of good inspiratory efforts and a normal
hemoglobin. The lung volumes obtained by the hemalution technique
revealed marked variability between the runs. The ones printed on
the pulmonary function form are inaccurate and strongly suggest a
helium leak during the study. Test 1 and Test 3 which agree fairly
closely with each other revealed mild restrictive changes
consistent with the borderline spirometric values and the reduced
diffusing capacity.

Mr. Robert Jacobs, Esquire
Re: William Emmell
PAGE THREE:

Mr. Emmell had chest x-rays done at Crozer Chester Medical Center on January 6, 1995. Extensive asbestos-related pleural changes are seen. In addition, there is an increase of a moderate degree in the interstitial markings. There is also a suggestion of a mass in the right upper lobe region. For that reason a CT scan of his chest was performed at Crozer January 23, 1995. The CT scan demonstrates extensive asbestos-related pleural disease. In addition, there are areas that resemble rounded atelectasis greater on the right than the left. The apparent right upper lobe mass looks like an area of rounded atelectasis. The CT scan will have to be repeated in approximately 3 months time to make sure that this mass is not growing because it could possibly represent a lung cancer.

In summary, Mr. William Emmell has had extensive asbestos dust exposure throughout his working career. He has developed asbestos-related pleural disease and asbestosis related to this exposure. He has markedly abnormal x-rays which are troublesome. While I believe the mass on the right is an area of rounded atelectasis, I cannot definitely say it is not a lung cancer and as noted above he will require a repeat CT scan in 3 months time. He is as you know in a high risk group for the development of an asbestos-related malignancy such as lung cancer or malignant mesothelioma. He may also have deterioration with increasing symptoms from progression of his asbestosis. I hoped this has clarified Mr. Emmell's health situation for you. If I can be of any further assistance to you in his evaluation, please feel free to call upon me.

Sincerely yours,

Leonard B. Berkowitz, M.D.

LBB:PRN/fl

# CROZER

CROZER-CHESTER MEDICAL CENTER
UPLAND, PA 19013

William H. Green, M.D.
*Chairman*

**DEPARTMENT OF RADIOLOGY**

Diagnostic Radiology 447-2500

Radiation Oncology 447-2740
George E. McCarthy, M.D.
Stephen A. Arrigo, M.D.
Lincoln K. Pao, M.D.

Ki Woong Kim, M.D.
Barbara A. McCafferty, M.D.
Richard N. Taxin, M.D.
Howard P. Rothenberg, M.D.
James W. Husted, M.D.

Joseph R. Stock, M.D.
John A. Bonavita, M.D.
Stefan M. Skalina, M.D.
Noel L. Melhorn, D.O.
Carrie L. Kresge, M.D.

NAME: EMMELL, WILLIAM
3 W CECIL AVE
N E MARYLAND    MD    21901

AGE OR DOB: November 27, 1923

PT. BILLING NO.: 307125948

LOCATION:        SVC: RDO

SOCIAL SECURITY NO.:    143129654

DISCHARGE DATE:

ADM/REG DATE: 01/23/1995

CT OF THE CHEST WITH INTRAVENOUS CONTRAST: 1/23/95        ORD # 2

CLINICAL HISTORY: Known asbestos exposure; rule out right middle lobe parenchymal nodule.

IMPRESSION: PLEURAL-BASED PARENCHYMAL MASSES IN THE RIGHT MIDDLE AND LEFT LOWER LOBE MOST CONSISTENT WITH FOCI OF ROUNDED ATELECTASIS. FOLLOW-UP CHEST CT SUGGESTED IN APPROXIMATELY 3 MONTHS TO INSURE THE STABILITY OF THESE LESIONS.

COMMENT: Axial CT images of the chest were obtained from the thoracic inlet to the level of the adrenal glands during the uneventful administration of intravenous contrast.

There are multiple areas of pleural thickening and pleural calcification consistent with the patient's history of previous asbestos exposure. Calcification is especially prominent along both diaphragmatic surfaces.

In addition, there are areas of parenchymal mass lesions in the anterior segment of the right upper lobe and the posterior left lower lobe. The right upper lobe lesion measures approximately 4cm AP x 2cm transverse and is pleural-based adjacent to a large calcified pleural plaque. Its margins are irregular, and there is a swirling area of atelectasis around the superior aspect of the lesion.
                    CONTINUED ON PAGE 2.

JOHN F. HIEHLE, JR., M.D.
JFH/so
January 25, 1995

ORDERING PHYSICIAN:

BERKOWITZ MD.LEONARD
CCMC POB 11- 422
UPLAND PA 19013

BERKOWITZ MD.LEONARD
CCMC POB 11- 422
UPLAND PA 19013

FORM NO. 37-000721 (REV. 7/94)    REFERRING DOCTOR

CROZER

CROZER-CHESTER MEDICAL CENTER
UPLAND, PA 19013

## DEPARTMENT OF RADIOLOGY

William H. Green, M.D.
*Chairman*

Diagnostic Radiology 447-2500

Radiation Oncology 447-2740
George E. McCarthy, M.D.
Stephen A. Arrigo, M.D.
Lincoln K. Pao, M.D.

Ki Woong Kim, M.D.          Joseph R. Stock, M.D.
Barbara A. McCafferty, M.D.  John A. Bonavita, M.D.
Richard N. Taxin, M.D.       Stefan M. Skalina, M.D.
Howard P. Rothenberg, M.D.   Noel L. Melhom, D.O.
James W. Husted, M.D.        Carrie L. Kresge, M.D.

NAME:
EMMELL, WILLIAM
3 W CECIL AVE
N E MARYLAND    MD  21901

AGE OR DOB:      November 27, 1923

PT. BILLING NO.:    307125948

LOCATION:              SVC:  RDO

SOCIAL SECURITY NO.:    143129654

DISCHARGE DATE:

ADM/REG DATE: 01/23/1995

---

CT OF THE CHEST WITH INTRAVENOUS CONTRAST:  1/23/95        ORD # 2

PAGE 2.

A second left lower lobe lesion measuring approximately 1.5cm in diameter is
also pleural based adjacent to a prominent calcified pleural plaque in the
left para-aortic region.  Both of these parenchymal opacities have features
strongly suggestive of rounded atelectasis.  No other parenchymal nodules
are identified.

Evaluation of the mediastinum demonstrates some small mediastinal lymph
nodes in the right paratracheal region, pretracheal and precarinal regions.
No pathologic adenopathy is identified in the hila or mediastinum.

Limited evaluation of the upper abdomen demonstrates no focal abnormality.

Although these areas of parenchymal opacity are suggestive of rounded
atelectasis, the possibility of coexistent tumor cannot be entirely excluded
and a follow-up chest CT is suggested in approximately three months to
insure the stability of these lesions.

JOHN F. HIEHLE, JR., M.D.
JFH/so
January 25, 1995

ORDERING PHYSICIAN:

BERKOWITZ MOLEONARD
CCMC POB 11- 422
UPLAND PA 19013

BERKOWITZ MOLEONARD
CCMC POB 11- 422
UPLAND PA 19013

FORM NO. 37-000721 (REV. 7/94)    REFERRING DOCTOR

PULMONARY CONSULTANTS, INC.

CROZER-CHESTER MEDICAL CENTER

PROFESSIONAL BUILDING II, SUITE 422

UPLAND, CHESTER, PENNSYLVANIA 19013

SEP 4 1996

TELEPHONE (610) 876-5627

JEROME RUDNITZKY, M.D.
LEONARD BERKOWITZ, M.D.
GARY D. WENDELL, M.D.

August 28, 1996

Robert Jacobs, Esq.
Jacobs and Crumplar
2 East Seventh Street
P.O. Box 1271
Wilmington, DE   19899

RE: 

Dear Mr. Jacobs:

I saw Mr. William Emmell in the office on July 17, 1996 in follow-up.  He was previously seen by me on January 6, 1995.  He continues to remain a non-smoker.  He notes shortness of breath on walking up one flight of stairs or one and one-half blocks on the level ground at which point he must rest.  He utilizes Proventil and Atrovent inhalers.  He has not had any hospitalizations since his prior visit.  He believes his respiratory symptoms are worse than on his last visit.  He has been told of a blockage of his left carotid artery and is to undergo angiography in August 1996.

Physical examination revealed a blood pressure of 142/90.  Pulse was 80 and regular.  Conjunctiva were pink.  There were decreased pulsations in the right carotid.  No bruit was heard.  The chest revealed extensive rales at the left base and left axilla.  Decreased breath sounds were heard at the right base with minimal rales at the right axilla with dullness to percussion at that region.  The heart revealed a regular rhythm without murmur, gallop or rub.  The abdomen revealed no hepatosplenomegaly.  The extremities revealed no cyanosis, clubbing or edema.

Blood work done on Mr. Emmell revealed a mild elevation of his cholesterol to 236 and his triglycerides to 219.  His hemoglobin was normal at 13.7.  Pulse oximetry was normal at rest and with limited exertion.

Mr. Emmell had pulmonary function tests which demonstrated spirometric values at the lower limits of normal with little change from 1995.  Lung volumes are reduced.  The diffusing capacity is significantly reduced.  The diffusing capacity has demonstrated little change from 1995.

Robert Jacobs, Esq.                                August 28, 1996
RE:  William Emmell                                Page:  2

Chest x-rays done at the Crozer-Chester Medical Center on July 17, 1996 again
demonstrates extensive bilateral pleural plaques and increased interstitial markings with
little change from 1995.

In summary, Mr. Emmell continues to demonstrate changes of asbestos related pleural
disease and asbestosis.  He has remained fairly stable when compared to his prior
evaluation in 1995.  He continues to remain in a group that is at a high risk for the
development of further progression in his asbestosis and the development of an asbestos
related malignancy.  He will continue to require frequent re-evaluations.

                                        Sincerely yours,

                                        Leonard Berkowitz, M.D.

LB:ew
Enclosures:  reports of PFT, CXR, Lab work

*Ervmell, William*
NO.
*at rest* F/A
------------------
7-17-96    01:47
SAO2 94 %
RATE 76 BPM
NELLCOR N-10
PULSE OXIMETER


PATIENT

*c̄ rest*
NO.


------------------
7-17-96    01:48

          SAT  BPM
    00:30 96%  84
    01:00 93%  93
*   00:59 93%  93
    01:30 95%  98
    02:00 93%  98
    02:30 95%  97
    03:00 94%  95

*   MIN SAT: 93%
    AT 01:51:17

NELLCOR N-10
PULSE OXIMETER

**Laboratory Report**

5:21:48

PULMONARY CONSULTANTS
CROZIER CHESTER MED CENTER
SUITE 422
UPLAND CHESTER, PA 19013

4319                              001.055

**CORNING Clinical Laboratories**

900 Business Center Drive · Horsham, PA 19044
(215) 957-9300 · 800-825-7330 (PA) · 800-825-7320 (Client Serv)

| Patient Name | Patient ID | Age | Sex | Date Collected | Time Collected | Accession No. |
|---|---|---|---|---|---|---|
| EMMELL, WILLIAM | 143129654 | 72 | M | 07/17/96 | (NONE) | 74973331 |

| Requesting Physician / Remarks | Date Received | Date Reported | Report Status | Page |
|---|---|---|---|---|
| DR. L. BERKOWITZ | 07/17/96 | 07/18/96 | FINAL | 1 |

| | Results | | | |
|---|---|---|---|---|
| | Out of Range | Within Range | Reference Range | Units |
| CS 24 (22 CHEM) | | | | |
| CALCIUM, SERUM | | 9.6 | 8.4-10.2 | MG/DL |
| PHOSPHORUS, SERUM | | 3.3 | 2.2-4.6 | MG/DL |
| MAGNESIUM, SERUM | | 2.3 | 1.8-2.6 | MG/DL |
| GLUCOSE | | 87 | 65-114 | MG/DL |
| BUN | | 16 | 9-25 | MG/DL |
| CREATININE, SERUM | | 1.4 | 0.8-1.7 | MG/DL |
| BUN CREATININE RATIO | | 11 | 7-24 | |
| URIC ACID, SERUM | | 5.9 | 3.6-8.3 | MG/DL |
| CHOLESTEROL | 236    H | | <200 | MG/DL |
| TRIGLYCERIDE | 219    H | | <200 | MG/DL |
| TOTAL PROTEIN, SERUM | | 7.6 | 6.0-8.2 | G/DL |
| ALBUMIN | | 4.0 | 3.5-5.0 | G/DL |
| GLOBULIN | | 3.6 | 1.9-3.8 | G/DL |
| A-G RATIO | | 1.1 | 0.9-2.1 | G/DL |
| BILIRUBIN, TOTAL | | 0.2 | 0.2-1.4 | MG/DL |
| BILIRUBIN, DIRECT | | 0.0 | 0.0-0.4 | MG/DL |
| ALKALINE PHOSPHATASE | | 108 | 41-142 | U/L |
| GAMMA GLUTAMYL TRANS | | 29 | 1-60 | U/L |
| AST/SGOT | | 14 | 1-50 | U/L |
| ALT/SGPT | | 11 | 1-55 | U/L |
| | | 141 | 110-240 | U/L |
| SODIUM, SERUM | | 135 | 134-145 | MEQ/L |
| POTASSIUM, SERUM | | 4.9 | 3.5-5.3 | MEQ/L |
| CHLORIDE, SERUM | | 103 | 96-107 | MEQ/L |
| IRON, TOTAL SERUM | | 62 | 29-162 | MCG/DL |
| | | | | |
| CBC (W) DIFFERENTIAL | | | | |
| WBC | | 7.6 | 4.0-11.3 | THOUS/UL |
| RBC | | 4.38 | 3.80-5.50 | MIL/UL |
| HEMOGLOBIN | | 13.7 | 11.9-16.9 | G/DL |
| HEMATOCRIT | | 38.4 | 35.5-50.0 | % |
| MCV | | 88 | 81-99 | FL |
| MCH | | 31.3 | 27.5-35.0 | PG |
| MCHC | | 35.7 | 32.0-36.0 | G/DL |
| RDW | | 13.2 | 11.0-15.5 | % |
| PLATELET COUNT | | 314 | 140-390 | THOUS/UL |
| NEUTROPHILS | | 60.1 | 38-80 | % |
| BANDS | | 0 | 0-6 | % |
| LYMPHOCYTES | | 26.4 | 15-49 | % |
| MONOCYTES | | 9.6 | 0-13 | % |

PAGE 1: CONTINUED ON PAGE 2

Herman Hurwitz, M.D., F.C.A.P., Senior Medical Director · Robert M. Lucas, M.D., D.D.S., Ph.D., Associate Medical Director · Maryam Bakhtar, M.D., F.C.A.P., Anatomic Pathology
Vivian Anagnoste, M.D., Pathologist · Joseph W. Fisher, M.D., Director · Katherine Erickson, Ph.D., Technical Director · Joseph J. Murphy, Jr., Director

## Laboratory Report

5:22:01

PULMONARY CONSULTANTS
CROZIER CHESTER MED CENTER
SUITE 422
UPLAND CHESTER, PA 19013

4319                                001.055

**CORNING** Clinical
Laboratories

900 Business Center Drive · Horsham, PA 19044
(215) 957-9300 · 800-825-7330 (PA) · 800-825-7320 (Client Ser

| Patient Name | Patient ID | Age | Sex | Date Collected | Time Collected | Accession No. |
|---|---|---|---|---|---|---|
| EMMELL, WILLIAM | 143129654 | 72 | M | 07/17/96 | (NONE) | 74973331 |

| Requesting Physician / Remarks | Date Received | Date Reported | Report Status | Page |
|---|---|---|---|---|
| DR. L. BERKOWITZ | 07/17/96 | 07/18/96 | FINAL | 2 |

| | Out of Range | Within Range | Reference Range | Units |
|---|---|---|---|---|
| EOSINOPHILS | | 3.0 | 0-8 | % |
| BASOPHILS | | 0.9 | 0-2 | % |
| ABS. NEUT. COUNT | | 4568 | 1650-8000 | /CU.MM |
| ABS. LYMPH COUNT | | 2006 | 800-3500 | /CU.MM |
| ABS. MONO COUNT | | 730 | 40-950 | /CU.MM |
| ABS. EOS COUNT | | 228 | 30-600 | /CU.MM |
| ABS. BASO COUNT | | 68 | 0-125 | /CU.MM |

```
                * END OF FINAL REPORT *
          Printed on: 07/18/96  at: 5:22 AM
```

Herman Hurwitz, M.D., F.C.A.P., Senior Medical Director · Robert M. Lucas, M.D., D.D.S., Ph.D., Associate Medical Director · Maryam Bakhtar, M.D., F.C.A.P., Anatomic Pathology
Vivian Anagnoste, M.D., Pathologist · Joseph W. Fisher, M.D., Director · Katherine Erickson, Ph.D., Technical Director · Joseph J. Murphy, Jr., Director

Spirotech S600 Version 4J.1                    07-17-1996
PULMONARY CONSULTANTS                          CHESTER, PA 19013
me: EMMELL, WILLIAM                            ID: 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



Pre    ..........
Post   ———



Pre    ..........
Post   ———

Spirotech S600 Version 4J.1                           07-17-1996
PULMONARY CONSULTANTS                              CHESTER, PA 19013
15th and Upland, Ave, Chester, PA  19013

Name: EMMELL, WILLIAM                  Doctor:    BERKOWITZ
ID: 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                        Technician: JACKIE
Date of Birth: 11-27-1923     Height: 70.6 insWeight: 222 lbsSex: M  Race: W

| Parameter | Predicted | Pre | %Pre | Post | %Post | %Diff |
|-----------|-----------|-----|------|------|-------|-------|
| Spirometry: | | 07/17/96 09:57 | | 07/17/96 11:24 | | |
| FVC (1) | 4.21 | 3.38 | 80% | 3.56 | 85% | 5.3% |
| FEV1 (1) | 3.31 | 2.50 | 76% | 2.69 | 81% | 7.6% |
| FEV1/FVC | 0.78 | 0.74 | 95% | 0.76 | 97% | 2.2% |
| PEFR (1/s) | 8.34 | 5.37 | 64% | 4.49 | 54% | -16.4% |
| FEF 50% (1/s) | 4.09 | 2.82 | 69% | 3.15 | 77% | 11.7% |
| FF 75% (1/s) | 1.42 | 0.51 | 36% | 0.75 | 53% | 47.1% |
| EF 25%-75% (1/s) | 3.25 | 1.75 | 54% | 2.28 | 70% | 30.3% |
| MVV (1/m) | 117.27 | – | – | – | – | – |
| Upper Airway Obstruction Profile: 07/17/96 09:57 | | | | 07/17/96 11:24 | | |
| FIF 50% (1/s) | – | 2.15 | – | 2.69 | – | 25.1% |
| FEF50%/FIF50% | – | 1.77 | – | 1.42 | – | -20.0% |
| FEV1/PEFR | – | 0.47 | – | 0.60 | – | 28.7% |
| Lung Volumes: | | 07/17/96 10:04 | | | | |
| FRC (1) | 3.48 | 2.32 | 67% | – | – | – |
| SVC (1) | 4.21 | 3.28 | 78% | – | – | – |
| ERV (1) | 0.86 | 0.90 | 105% | – | – | – |
| RV (1) | 2.62 | 1.41 | 54% | – | – | – |
| TLC (1) | 6.61 | 4.70 | 71% | – | – | – |
| '/TLC | 0.41 | 0.30 | 72% | – | – | – |
| SVC/FVC | – | 0.97 | – | – | – | – |
| Diffusion Capacity: | | 07/17/96 10:40 | | | | |
| DLco | 25.93 | 16.20 | 62% | – | – | – |
| VA (1) | 6.94 | 5.38 | 78% | – | – | – |
| DLco/VA | 3.83 | 3.01 | 79% | – | – | – |

Comments:

INTERPRETATION
Mild Obstructive Disease.  Additional mild restrictive disease.  Moderate
decrease in DLCo.  FEV1 increased by 0.19 L.  FEF25-75 increased by 0.53 L.

Signed: _Lenard Berkowitz MD_____    Date: _____