# Exhibit B

# W. R. Grace
# Asbestos Personal Injury
# Questionnaire

F:\WP70\Bankruptcies\Asbestos Bankruptcies\W.R. Grace Co\WR Grace Archive\Galloway\Galloway, Vaughn G (dec).doc

[THIS PAGE INTENTIONALLY LEFT BLANK.]

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

# W. R. Grace
# Asbestos Personal Injury
# Questionnaire

YOU HAVE RECEIVED THIS QUESTIONNAIRE BECAUSE GRACE BELIEVES THAT YOU HAD SUED ONE OR MORE OF THE DEBTORS LISTED IN APPENDIX A ATTACHED TO THIS QUESTIONNAIRE BEFORE GRACE FILED FOR BANKRUPTCY ON APRIL 2, 2001 FOR AN ASBESTOS-RELATED PERSONAL INJURY OR WRONGFUL DEATH CLAIM, AND THAT CLAIM WAS NOT FULLY RESOLVED.

IF YOU HAVE SUCH A CLAIM, YOU MUST COMPLETE AND SUBMIT THIS QUESTIONNAIRE BY JANUARY 12, 2006 TO RUST CONSULTING, INC., THE CLAIMS PROCESSING AGENT, AT ONE OF THE FOLLOWING ADDRESSES:

| IF SENT BY U.S. MAIL | IF SENT BY FEDERAL EXPRESS, UNITED PARCEL SERVICE, OR A SIMILAR HAND DELIVERY SERVICE |
|---|---|
| RUST CONSULTING, INC. | RUST CONSULTING, INC. |
| CLAIMS PROCESSING AGENT | CLAIMS PROCESSING AGENT |
| RE: W.R. GRACE & CO. BANKRUPTCY | RE: W.R. GRACE & CO. BANKRUPTCY |
| P.O. BOX 1620 | 201 S. LYNDALE AVE. |
| FARIBAULT, MN 55021 | FARIBAULT, MN 55021 |

A QUESTIONNAIRE (AND ANY AMENDMENTS OR ADDITIONAL DOCUMENTS IN SUPPORT OF THE QUESTIONNAIRE) WILL NOT BE CONSIDERED UNLESS RECEIVED BY RUST CONSULTING, INC. BY JANUARY 12, 2006.

THIS QUESTIONNAIRE IS AN OFFICIAL DOCUMENT APPROVED BY THE COURT IN CONNECTION WITH ESTIMATING GRACE'S ASBESTOS-RELATED PERSONAL INJURY AND WRONGFUL DEATH CLAIMS AS A WHOLE. THE QUESTIONNAIRE IS BEING USED BY W. R. GRACE AS A MEANS TO SEEK INFORMATION ABOUT YOUR ASBESTOS CLAIM. BY TIMELY RETURNING THE QUESTIONNAIRE AS COMPLETELY AND ACCURATELY AS POSSIBLE, GRACE, THE OFFICIAL COMMITTEES, AND THE FUTURE CLAIMANTS REPRESENTATIVE WILL SEEK TO PRIORITIZE THE PROCESSING OF YOUR CLAIM UNDER ANY TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION.

THE COURT HAS ORDERED THAT, AS PART OF THE DISCOVERY PROCESS, ALL HOLDERS OF PRE-PETITION ASBESTOS PERSONAL INJURY CLAIMS MUST COMPLETE AND RETURN THIS QUESTIONNAIRE. THUS, FAILURE TO TIMELY RETURN THE QUESTIONNAIRE AS COMPLETELY AND ACCURATELY AS POSSIBLE MAY RESULT IN SANCTIONS AND/OR OTHER RELIEF AVAILABLE UNDER APPLICABLE FEDERAL RULES.

BECAUSE YOUR CLAIM WILL BE EVALUATED IN ACCORDANCE WITH THE TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION, COMPLETION OF THIS QUESTIONNAIRE DOES NOT MEAN THAT YOUR CLAIM WILL EITHER BE ALLOWED OR PAID. TO THE EXTENT YOU ATTACH TO THIS QUESTIONNAIRE DOCUMENTS ALSO NEEDED BY THE TRUST TO PROCESS YOUR CLAIM, SUCH DOCUMENTS WILL BE PROVIDED TO THE TRUST AND YOU WILL NOT NEED TO RESUBMIT THEM.

## INSTRUCTIONS

### A. GENERAL

1.  This Questionnaire refers to any lawsuit that you filed before April 2, 2001 for an "asbestos-related personal injury or wrongful death claim." This term is intended to cover any lawsuit alleging any claim for personal injuries or damages that relates to: (a) exposure to any products or materials containing asbestos that were manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors (or any of their respective past or present affiliates, or any of the predecessors of any of the Debtors or any of their respective past or present affiliates), or (b) exposure to vermiculite mined, milled or processed by the Debtors (or any of their respective past or present affiliates, any of the predecessors of any of the Debtors or any of their predecessors' respective past or present affiliates). It includes claims in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity, or any other theory of law or equity, or admiralty for, relating to, or arising out of, resulting from, or attributable to, directly or indirectly, death, bodily injury, sickness, disease, or other personal injuries or other damages caused, or allegedly caused, directly or indirectly, and arising or allegedly arising, directly or indirectly, from acts or omissions of one or more of the Debtors. It includes all such claims, debts, obligations or liabilities for compensatory damages such as loss of consortium, personal or bodily injury (whether physical, emotional or otherwise), wrongful death, survivorship, proximate, consequential, general, special, and punitive damages.

2.  Your Questionnaire will be deemed filed only when it has been received by Rust Consulting Inc., the Claims Processing Agent, via U.S. Mail, Federal Express, United Parcel Service or a similar hand delivery service. A Questionnaire that is submitted by facsimile, telecopy or other electronic transmission will **not** be accepted and will **not** be deemed filed.

    Do **not** send any Questionnaire to the Debtors, counsel for the Debtors, the Future Claimants Representative, the Official Committee of Unsecured Creditors, the Official Committee of Asbestos Personal Injury Claimants, the Official Committee of Asbestos Property Damage Claimants, the Official Committee of Equity Security Holders, or such Committees' counsel. Questionnaires that are filed with or sent to anyone other than Rust Consulting, Inc. will be deemed not to have been submitted, and such Questionnaires will not be considered.

3.  Your completed Questionnaire must (i) be written in English, and (ii) attach relevant supporting materials as instructed further below.

4.  All holders of claims described on page i (and as described in further detail in Instruction A (1) above) are required to file this Questionnaire by Jan. 12, 2006. Your Questionnaire will be used in connection with the estimation hearing to be conducted by the Court pursuant to the Estimation Procedures Order (a copy of which is attached as Appendix B).

5.  Any subsequent amendment to the Questionnaire will not be considered for any purpose unless received by Jan. 12, 2006.

### B. PART I -- Identity of Injured Person and Legal Counsel

Respond to all applicable questions. If you are represented by a lawyer, then in Part I (b), please provide your lawyer's name and the name, telephone number and address of his/her firm. If you are represented by a lawyer, he/she must assist in the completion of this Questionnaire. Also, if you would prefer that the Debtors send any additional materials only to your lawyer, instead of sending such materials to you, then check the box indicating this in Part I (b).

All references to "you" or the like in Parts I through X shall mean the injured person. If the injured person is deceased, then the executor of the person's will (or similar estate representative) must complete this Questionnaire.

### C. PART II -- Asbestos-Related Condition(s)

Please indicate all asbestos-related medical conditions for which you have been diagnosed. To complete questions related to injuries, medical diagnoses, and/or conditions, please use the following categories of customarily diagnosed conditions:

- Mesothelioma
- Asbestos-Related Lung Cancer
- Other Cancer (colon, laryngeal, esophageal, pharyngeal, or stomach)
- Clinically Severe Asbestosis
- Asbestosis
- Other Asbestos Disease

If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

**Supporting Documents for Diagnosis:** This Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that support or conflict with your diagnosis.

**X-rays and B-reads:** Please attach all x-ray readings and reports. You may, but are not required to, attach chest x-rays. The court, however, has ruled that Grace may seek access to chest x-rays upon request.

**Pulmonary Function Tests:** Please attach all pulmonary function test results, including the actual raw data and all spirometric tracings, on which the results are based.

**D. PART III – Direct Exposure to Grace Asbestos-Containing Products**

In Part III, please provide the requested information for the job and site at which you were exposed to Grace asbestos-containing products. Indicate the dates of exposure to each Grace asbestos-containing product. If your exposure was a result of your employment, use the list of occupation and industry codes below to indicate your occupation and the industry in which you worked at each site. If you allege exposure to Grace asbestos-containing products at multiple sites, the Court has ordered that you must complete a separate Part III for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

Attach copies of any and all documents establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the disease.

## Occupation Codes

| | |
|---|---|
| 01. Air conditioning and heating installer/maintenance | 31. Iron worker |
| 02. Asbestos miner | 32. Joiner |
| 03. Asbestos plant worker/asbestos manufacturing worker | 33. Laborer |
| 04. Asbestos removal/abatement | 34. Longshoreman |
| 05. Asbestos sprayer/spray gun mechanic | 35. Machinist/machine operator |
| 06. Assembly line/factory/plant worker | 36. Millwright/mill worker |
| 07. Auto mechanic/bodywork/brake repairman | 37. Mixer/bagger |
| 08. Boilermaker | 38. Non-asbestos miner |
| 09. Boiler repairman | 39. Non-occupational/residential |
| 10. Boiler worker/cleaner/inspector/engineer/installer | 40. Painter |
| 11. Building maintenance/building superintendent | 41. Pipefitter |
| 12. Brake manufacturer/installer | 42. Plasterer |
| 13. Brick mason/layer/hod carrier | 43. Plumber - install/repair |
| 14. Burner operator | 44. Power plant operator |
| 15. Carpenter/woodworker/cabinetmaker | 45. Professional (*e.g.*, accountant, architect, physician) |
| 16. Chipper | 46. Railroad worker/carman/brakeman/machinist/conductor |
| 17. Clerical/office worker | 47. Refinery worker |
| 18. Construction - general | 48. Remover/installer of gaskets |
| 19. Custodian/janitor in office/residential building | 49. Rigger/stevedore/seaman |
| 20. Custodian/janitor in plant/manufacturing facility | 50. Rubber/tire worker |
| 21. Electrician/inspector/worker | 51. Sandblaster |
| 22. Engineer | 52. Sheet metal worker/sheet metal mechanic |
| 23. Firefighter | 53. Shipfitter/shipwright/ship builder |
| 24. Fireman | 54. Shipyard worker (md. repair, maintenance) |
| 25. Flooring installer/tile installer/tile mechanic | 55. Steamfitter |
| 26. Foundry worker | 56. Steelworker |
| 27. Furnace worker/repairman/installer | 57. Warehouse worker |
| 28. Glass worker | 58. Welder/blacksmith |
| 29. Heavy equipment operator (includes truck, forklift, & crane) | 59. Other |
| 30. Insulator | |

## Industry Codes

| | |
|---|---|
| 001. Asbestos abatement/removal | 109. Petrochem ical |
| 002. Aerospace/aviation | 110. Railroad |
| 100. Asbestos mining | 111. Ship yard-construction/repair |
| 101. Automotive | 112. Textile |
| 102. Chemical | 113. Tire/rubbe r |
| 103. Construction trades | 114. U.S. Navy |
| 104. Iron/steel | 115. Utilities |
| 105. Longshore | 116. Grace asbestos manufacture or milling |
| 106. Maritime | 117. Non-Grace asbestos manufacture or milling |
| 107. Military (other than U.S. Navy) | 118. Other |
| 108. Non-asbestos products manufacturing | |

**E.  PART IV – Indirect Exposure to Grace Asbestos-Containing Products**
In Part IV, please provide the information requested for any injury alleged to have been caused by exposure to Grace asbestos-containing products through contact/proximity with another injured person.  If you allege exposure through contact/proximity with multiple injured persons, please complete a separate Part IV for each injured person.  For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.

**F.  PART V -- Exposure to Non-Grace Asbestos-Containing Products**
In Part V, please provide the requested information for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products.  If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate Part V for each party.  If exposure was in connection with your employment, use the list of occupation and industry codes in Part III to indicate your occupation and the industry in which you worked.  For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

**G.  PART VI -- Employment History**
In Part VI, please provide the information requested for each industrial job you have held, other than jobs already listed in Parts III or V.  Use the list of occupation and industry codes in the instructions to Part III to indicate your occupation and the industry in which you worked for each job.  Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.

**H.  PART VII -- Litigation and Claims Regarding Asbestos and/or Silica**
In Part VII, please describe any lawsuits and/or claims that were filed by you or on your behalf regarding asbestos or silica.

**I.  PART VIII -- Claims by Dependents or Related Persons**
Part VIII is to be completed only by dependents or related persons (such as spouse or child) of an injured person who sued the Debtors before April 2, 2001 for an asbestos-related personal injury or wrongful death claim against Grace not involving physical injury to him-/herself on account of his/her own exposure.  One example of such a claim would be a claim for loss of consortium.  If you are asserting such a claim, complete the entire Questionnaire, providing all information and documentation regarding the injured person.

**J.  PART IX -- Supporting Documentation**
In Part IX, please mark the boxes next to each type of document that you are submitting with this Questionnaire.  As indicated in the instructions to Parts II and III, this Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that (a) support or conflict with your diagnosis and/or (b) establish exposure to Grace asbestos-containing products as having a substantial causal role in the development of the medical diagnoses, and/or conditions claimed.  Original documents provided to Grace will be returned within a reasonable time after its professionals and experts have reviewed the documents.

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation.  Please indicate the documents for which you are seeking reimbursement and attach a receipt for such cost.

**K.  PART X -- Attestation that Information is True, Accurate and Complete**
By signing Part X, you, the injured person, are attesting and swearing, under penalty of perjury, that, to the best of your knowledge, all of the information in this Questionnaire is true, accurate and complete.  If the injured person is deceased, then the executor of the person's will (or similar estate representative) must complete and sign Part X on behalf of the injured person.

The legal representative of the injured person must complete and sign Part X where indicated.

## PART I:  IDENTITY OF INJURED PERSON AND LEGAL COUNSEL

**a.**  **GENERAL INFORMATION**

1.  Name of Claimant:  __Vaughn__      __G__      __Galloway__      **2. Gender:** X Male ☐ Female
              First           MI          Last

3.  Race (for purposes of evaluating Pulmonary Function Test results): .................................. X White/Caucasian

                                                         ☐ African American

                                                         ☐ Other

4.  Last Four Digits of Social Security Number: 3753         **5. Birth Date:** 01/26/1941

6.  Mailing Address: __168 Schoolhouse Road__     __West Grove__     __PA__     __19390__
               Address                 City          State/Province     Zip/Postal Code

7.  Daytime Telephone Number: ...................................................................................................... (610) 869-8248

**b.**  **LAWYER'S NAME AND FIRM**

1.  Name of Lawyer: __Robert Jacobs__

2.  Name of Law Firm With Which Lawyer is Affiliated: __Jacobs & Crumplar__

3.  Mailing Address of Firm: __2 East 7th Street__    __Wilmington__    __DE__    __19899__
                           Address           City         State/Province    Zip/Postal Code

4.  Law Firm's Telephone Number or Lawyer's Direct Line: ........................................... ( 302 ) 656 - 5445

    X   Check this box if you would like the Debtors to send subsequent material relating to your claim to your lawyer, in lieu of sending such materials to you.

**c.**  **CAUSE OF DEATH (IF APPLICABLE)**

1.  Is the injured person living or deceased? .............................................................................. X Living   ☐ Deceased
    If deceased, date of death: ...........................................................................................................SEE ATTACHMENT

2.  If the injured person is deceased, then attach a copy of the death certification to this Questionnaire and complete the following:
    Primary Cause of Death (as stated in the Death Certificate): __SEE ATTACHMEN__
    Contributing Cause of Death (as stated in the Death Certificate): __SEE ATTACHMENT__

## PART II:  ASBESTOS-RELATED CONDITION(S)

Mark the box next to the conditions with which you have been diagnosed and provide all information required in the instructions to this Questionnaire.  If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis.  For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

1.  Please check the box next to the condition being alleged:  SEE ATTACHED MEDICAL RECORDS FOR 1 (a) – (f)

    ☐ Asbestos-Related Lung Cancer             ☐ Mesothelioma

    ☐ Asbestosis                                 ☐ Other Cancer (cancer not related to lung cancer or mesothelioma)

    ☐ Other Asbestos Disease                ☐ Clinically Severe Asbestosis

    **a.**  **Mesothelioma:**  If alleging Mesothelioma, were you diagnosed with malignant mesothelioma based on the following (check all that apply):

        ☐ diagnosis from a pathologist certified by the American Board of Pathology

        ☐ diagnosis from a second pathologist certified by the American Board of Pathology

        ☐ diagnosis and documentation supporting exposure to Grace asbestos-containing products having a substantial causal role in the development of the condition

        ☐ other (please specify):_____

1

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

b.  **Asbestos-Related Lung Cancer:**  If alleging Asbestos-Related Lung Cancer, were you diagnosed with primary lung cancer based on the following (check all that apply):

☐  findings by a pathologist certified by the American Board of Pathology

☐  evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b*)* by a B-reader certified by the National Institute for Occupational Safety and Health

☐  evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b*)* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐  evidence of asbestosis determined by pathology

☐  evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b*)* by a B-reader certified by the National Institute for Occupational Safety and Health

☐  evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b*)* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐  diffuse pleural thickening as defined in the International Labour Organization's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐  a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the lung cancer

☐  other (please specify):_____

c.  **Other Cancer:**

(i)  If alleging Other Cancer, please mark the box(es) next to the applicable primary cancer(s) being alleged:

☐ colon        ☐ pharyngeal        ☐ esophageal        ☐ laryngeal        ☐ stomach cancer

☐ other, please specify: _____

(ii)  Were you diagnosed with the above-indicated cancer based on the following (check all that apply):

☐  findings by a pathologist certified by the American Board of Pathology

☐  evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b*)* by a B-reader certified by the National Institute for Occupational Safety and Health

☐  evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b*)* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐  evidence of asbestosis determined by pathology

☐  a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the cancer

☐  other (please specify): _____

2

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

d. **Clinically Severe Asbestosis:** If alleging Clinically Severe Asbestosis, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ asbestosis determined by pathology

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating total lung capacity less than 65% predicted

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating forced vital capacity less than 65% predicted and a FEV1/FVC ratio greater than or equal to 65% predicted

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐ other (please specify):_____

e. **Asbestosis:** If alleging Asbestosis, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ asbestosis determined by pathology

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEV1/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐ other (please specify):_____

3

## PART II:  ASBESTOS-RELATED CONDITION(S) (Continued)

f.  **Other Asbestos Disease:**  If alleging any asbestos-related injuries, medical diagnoses, and/or conditions other than those above, was your diagnosis based on the following (check all that apply):

☐  diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐  diagnosis determined by pathology

☐  a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐  a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐  a chest x-ray reading  other than those described above

☐  a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a $FEVI/FVC$ ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐  a pulmonary function test other than that discussed above

☐  a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the condition

☐  a CT Scan or similar testing

☐  a diagnosis other than those above

☐  other (please specify):_____


[REMAINDER OF PAGE INTENTIONALLY BLANK]


4

## PART II:  ASBESTOS-RELATED CONDITION(S) (Continued)

2.  **Information Regarding Diagnosis**        **SEE ATTACHED MEDICAL RECORDS**

Date of Diagnosis: ..................................................................................... __ __ / __ __ / __ __ __ __

Diagnosing Doctor's Name:  _____

Diagnosing Doctor's Specialty:  _____

Diagnosing Doctor's Mailing Address:  _____
                                                                        Address

_____
City                                                       State/Province                              Zip/Postal Code

Diagnosing Doctor's Daytime Telephone Number: ....................... ( __ __ __ ) __ __ __ - __ __ __ __

**With respect to your relationship to the diagnosing doctor, check all applicable boxes:**

Was the diagnosing doctor your personal physician?......................................................☐ Yes  ☐ No

Was the diagnosing doctor paid for the diagnostic services that he/she performed?...................☐ Yes  ☐ No

*If yes, please indicate who paid for the services performed*:  _____

Did you retain counsel in order to receive any of the services performed by the diagnosing doctor?...........☐ Yes  ☐ No

Was the diagnosing doctor referred to you by counsel? ................................................☐ Yes  ☐ No

Are you aware of any relationship between the diagnosing doctor and your legal counsel?.........☐ Yes  ☐ No

*If yes, please explain:*  _____

_____

Was the diagnosing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the diagnosis?.................................................................................☐ Yes  ☐ No

Was the diagnosing doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis? ..............................................................................................☐ Yes  ☐ No

Was the diagnosing doctor provided with your complete occupational, medical and smoking history prior to diagnosis?..............................................................................................☐ Yes  ☐ No

Did the diagnosing doctor perform a physical examination? ...........................................☐ Yes  ☐ No

Do you currently use tobacco products?....................................................................☐ Yes  ☐ No

Have you ever used tobacco products?......................................................................☐ Yes  ☐ No

*If answer to either question is yes, please indicate whether you have regularly used any of the following tobacco products and the dates and frequency with which such products were used:*

**SEE ATTACHED INTERROGATORY NUMBERS 24-26**

☐  Cigarettes        **Packs Per Day (half pack = .5)** _____    **Start Year** __ __ __ __    **End Year** __ __ __ __

☐  Cigars            **Cigars Per Day** _____             **Start Year** __ __ __ __    **End Year** __ __ __ __

☐  If Other Tobacco Products, please specify (e.g., chewing tobacco): _____
                    **Amount Per Day** _____            **Start Year** __ __ __ __    **End Year** __ __ __ __

Have you ever been diagnosed with chronic obstructive pulmonary disease ("COPD")? ..................☐ Yes  ☐ No

*If yes, please attach all documents regarding such diagnosis and explain the nature of the diagnosis:*

_____ SEE ENCLOSED MEDICAL RECORDS _____

3.  **Information Regarding Chest X-Ray**

Please check the box next to the applicable location where your chest x-ray was taken (check one):

☐  Mobile laboratory  ☐ Job site  ☐ Union Hall  ☐ Doctor office  ☐ Hospital  ☐ Other: _____

Address where chest x-ray taken:  _Plaintiff objects as ambiguous.  Numerous x-rays were taken.  SEE ATTACHED_
                    Address

                                                                        MEDICAL REPORTS
_____
City                                                       State/Province                              Zip/Postal Code

5

**PART II:  ASBESTOS-RELATED CONDITION(S) (Continued)**

4.  Information Regarding Chest X-Ray Reading      **SEE ENCLOSED MEDICAL REPORT**

Date of Reading:  __ __ / __ __ / __ __ __ __                    ILO score: _____

Name of Reader: _____

Reader's Daytime Telephone Number:...........................................( __ __ __ ) __ __ __ - __ __ __ __

Reader's Mailing Address: _____
                                              Address

City                                    State/Province                        Zip/Postal Code

With respect to your relationship to the reader, check all applicable boxes:    **Object. Attorney work product.**

Was the reader paid for the services that he/she performed.........................................................☐ Yes  ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the reader?............................☐ Yes  ☐ No

Was the reader referred to you by counsel? ...............................................................☐ Yes  ☐ No

Are you aware of any relationship between the reader and your legal counsel?.........................................☐ Yes  ☐ No

*If yes, please explain:* _____    Object, attorney client privilege

Was the reader certified by the National Institute for Occupational Safety and Health at the time of the reading?

See enclosed medical records.........................................................................................☐ Yes  ☐ No

*If the reader is not a certified B-reader, please describe the reader's occupation,  specialty, and the method through which the reading was made:* _____
                         **SEE ENCLOSED MEDICAL RECORD(S) FOR #5**

5.  Information Regarding Pulmonary Function Test: ............................ Date of Test:  __ __ / __ __ / __ __ __ __

List your height in feet and inches when test given: ........................................ _____ ft _____ inches

List your weight in pounds when test given: ........................................................................: _____ lbs

Total Lung Capacity (TLC):........................................................................._____ % of predicted

Forced Vital Capacity (FVC):......................................................................._____ % of predicted

FEV1/FVC Ratio:......................................................................................._____ % of predicted

Name of Doctor Performing Test (if applicable):_____

Doctor's Specialty: _____

Name of Clinician Performing Test (if applicable):_____

Testing Doctor or Clinician's Mailing Address: _____
                                                                   Address

City                                    State/Province                        Zip/Postal Code

Testing Doctor or Clinician's Daytime Telephone Number:........................( __ __ __ ) __ __ __ - __ __ __ __

Name of Doctor Interpreting Test: _____

Doctor's Specialty: _____

Interpreting Doctor's Mailing Address: _____
                                                            Address

City                                    State/Province                        Zip/Postal Code

Interpreting Doctor's Daytime Telephone Number: ...................................( __ __ __ ) __ __ __ - __ __ __ __

6

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

**With respect to your relationship to the doctor or clinician who performed the pulmonary function test check all applicable boxes:**

If the test was performed by a doctor, was the doctor your personal physician?...........................................X Yes ☐ No

Was the testing doctor and/or clinician paid for the services that he/she performed? ..................................X Yes ☐ No

*If yes, please indicate who paid for the services performed:*._____

Did you retain counsel in order to receive any of the services performed by the testing doctor or clinician? ............**OBJECT**

Was the testing doctor or clinician referred to you by counsel? ...........................................................................**OBJECT**

Are you aware of any relationship between either the doctor or clinician and your legal counsel? ......................**OBJECT**

*If yes, please explain:* _____

**Was the testing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the pulmonary function test?.....................................................SEE ENCLOSED MEDICAL REPORT**

**With respect to your relationship to the doctor interpreting the results of the pulmonary function test check all applicable boxes:**

Was the doctor your personal physician? ...............................................................................................X Yes ☐ No

Was the doctor paid for the services that he/she performed?...........................................................X Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor? ....................................**OBJECT**

Was the doctor referred to you by counsel?.....................................................................................................**OBJECT**

Are you aware of any relationship between the doctor and your legal counsel? ....................................................**OBJECT**

*If yes, please explain* _____

**Was the doctor interpreting the pulmonary function test results certified as a pulmonologist or internist by the American Board of Internal Medicine at the time the test results were reviewed?..............................☐ Yes ☐ No**

6. **Information Regarding Pathology Reports:    SEE ENCLOSED MEDICAL REPORT**

**Date of Pathology Report:**...................................................................................... __ __ / __ __ / __ __ __ __

**Findings:** _____

**Name of Doctor Issuing Report:** _____

**Doctor's Specialty:** _____

**Doctor's Mailing Address:** _____
                             Address

| City | State/Province | Zip/Postal Code |
|------|----------------|-----------------|

**Doctor's Daytime Telephone Number:** ........................................... ( __ __ __ ) __ __ __ - __ __ __ __

**With respect to your relationship to the doctor issuing the pathology report, check all applicable boxes:**

Was the doctor your personal physician? ...............................................................................☐ Yes X No

Was the doctor paid for the services that he/she performed?...........................................................X Yes ☐ No

*If yes, please indicate who paid for the services performed:*_____ **Claimant** _____

Did you retain counsel in order to receive any of the services performed by the doctor? ...................................**OBJECT**

Was the doctor referred to you by counsel?...................................................................................**ATTORNEY CLIENT**

Are you aware of any relationship between the doctor and your legal counsel? ............................................**PRIVILEGE**

*If yes, please explain:* _____

**Was the doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis?**

.........................................................................................................................................X Yes ☐ No

**PART II:  ASBESTOS-RELATED CONDITION(S) (Continued)**

7.  With respect to the condition alleged, have you received medical treatment from a doctor for the condition?

.................................................................................................................................X Yes ☐ No

*If yes, please complete the following:*     **SEE ENCLOSED MEDICAL RECORDS**

Name of Treating Doctor: _____

Treating Doctor's Specialty: _____

Treating Doctor's Mailing Address:    _____
                                      Address

City                                State/Province                Zip/Postal Code

Treating Doctor's Daytime Telephone number: ...........................................( __ __ __ ) __ __ __ - __ __ __ __

Was the doctor paid for the services that he/she performed?...............................................☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* . _____

Did you retain counsel in order to receive any of the services performed by the doctor?.....................☐ Yes ☐ No


[REMAINDER OF PAGE INTENTIONALLY BLANK]


8

## PART III: DIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below for each site at which you allege exposure to Grace asbestos-containing products. If you allege exposure at multiple sites, the Court has ordered that you must complete a separate chart for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each job listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Grace asbestos-containing products

(b) A worker who personally removed or cut Grace asbestos-containing products

(c) A worker who personally installed Grace asbestos-containing products

(d) A worker at a site where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(e) A worker in a space where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(f) If other, please specify.

### SEE INTERROGATORY ANSWERS

**Site of Exposure:**

Site Name: _____    Location: _____

Site Type: ☐ Residence  ☐ Business    Site Owner: _____

Employer During Exposure: _____    Unions of which you were a member during your employment: _____

| | Basis for Identification of Each Grace Product | Dates and Frequency of Exposure (mm/dd/yy-mm/dd/yy) | Occupation Code (see list of codes) | Industry Code (see list of codes) | Nature of Exposure |
|---|---|---|---|---|---|
| Job 1 Description: | See Cover Letter | See Galloway Job Description | | | |
| Job 2 Description: | | | | | |
| Job 3 Description: | | | | | |
| Job 4 Description: | | | | | |
| Job 5 Description: | | | | | |
| Job 6 Description: | | | | | |

9

## PART IV: INDIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

1. Are you asserting an injury caused by exposure to Grace asbestos-containing products through contact/proximity with another injured person? ................................................................... Object as claimant has bystander exposure

   *If yes, complete questions 2 through 10 of this section for each injured person through which you allege exposure to Grace asbestos-containing products. For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.*     Exposure also but has no knowledge if person using product is also "injured"

2. Please indicate the following information regarding the other injured person:

   Name of Other Injured Person: _____ Gender: ☐ Male ☐ Female

   Last Four Digits of Social Security Number: __ __ __ __          Birth Date: __ __ / __ __ / __ __

3. What is your Relationship to Other Injured Person: ................................................. ☐ Spouse ☐ Child ☐ Other

4. Nature of Other Injured Person's Exposure to Grace Asbestos-Containing Products:

   _____

5. Dates Other Injured Person was Exposed to Grace Asbestos-Containing Products:

   From: __ __ / __ __ / __ __ __ __   To: __ __ / __ __ / __ __ __ __

6. Other Injured Person's Basis for Identification of Asbestos-Containing Product as Grace Product:

   _____

7. Has the Other Injured Person filed a lawsuit related to his/her exposure? ........................................... ☐ Yes ☐ No

   *If yes, please provide caption, case number, file date, and court name for the lawsuit:*

   Caption: _____

   Case Number: _____ File Date: __ __ / __ __ / __ __ __ __

   Court Name: _____

8. Nature of Your Own Exposure to Grace Asbestos-Containing Product:

   _____

9. Dates of Your Own Exposure to Grace Asbestos-Containing Product:

   From: __ __ / __ __ / __ __ __ __   To: __ __ / __ __ / __ __ __ __

10. Your Basis for Identification of Asbestos-Containing Product as Grace Product:

   _____

### [REMAINDER OF PAGE INTENTIONALLY BLANK]

10

## PART V: EXPOSURE TO NON-GRACE ASBESTOS–CONTAINING PRODUCTS

Please complete the chart below for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products. If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate chart for each party. For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each product listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Non-Grace asbestos-containing products
(b) A worker who personally removed or cut Non-Grace asbestos-containing products
(c) A worker who personally installed Non-Grace asbestos-containing products

(d) A worker at a site where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(e) A worker in a space where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(f) If other, please specify.

| Party Against which Lawsuit or Claim was Filed: | | Dates and Frequency of Exposure (from/to) (mm/dd/yy) | Occupation Code | Industry Code | Nature of Exposure... | Name(s)... |
|---|---|---|---|---|---|---|
| **Site of Exposure 1** | Job 1 Description: | **SEE INTERROGATORY ANSWER NO. 11** | | | | |
| Site Name: | Job 2 Description: | | | | | |
| Address: | | | | | | |
| City and State: | Job 3 Description: | | | | | |
| Site Owner: | | | | | | |
| **Site of Exposure 2** | Job 1 Description: | | | | | |
| Site Name: | Job 2 Description: | | | | | |
| Address: | | | | | | |
| City and State: | Job 3 Description: | | | | | |
| Site Owner: | | | | | | |
| **Site of Exposure 3** | Job 1 Description: | | | | | |
| Site Name: | Job 2 Description: | | | | | |
| Address: | | | | | | |
| City and State: | Job 3 Description: | | | | | |
| Site Owner: | | | | | | |

11

## PART VI: EMPLOYMENT HISTORY

Other than jobs listed in Part III or V, please complete this Part VI for all of your prior industrial work experience up to and including your current employment. For each job, include your employer, location of employment, and dates of employment. Only include jobs at which you worked for at least one month. Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.    **SEE INTERROGATORY ANSWER NO. 10**

Occupation Code: _____ If Code 59, specif y: ._____

Industry Code: _____ If Code 118, specify:_____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __    End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
            Address

_____
City                                    State/Province                    Zip/Postal Code

Occupation Code: _____ If Code 59, specif y: ._____

Industry Code: _____ If Code 118, specify:_____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __    End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
            Address

_____
City                                    State/Province                    Zip/Postal Code

Occupation Code: _____ If Code 59, specif y: ._____

Industry Code: _____ If Code 118, specify:_____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __    End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
            Address

_____
City                                    State/Province                    Zip/Postal Code

Occupation Code: _____ If Code 59, specif y: ._____

Industry Code: _____ If Code 118, specify:_____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __    End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
            Address

_____
City                                    State/Province                    Zip/Postal Code

12

**PART VII:  LITIGATION AND CLAIMS REGARDING ASBESTOS AND/OR SILICA**

**a.**  **LITIGATION**        **SEE ENCLOSED CASE CAPTION**

1.  Have you ever been a plaintiff in a lawsuit regarding <u>asbestos</u> or silica?................................................ x Yes ☐ No

    *If yes, please complete the rest of this Part VII(a) for each lawsuit.   For your convenience, additional copies of Part VII are attached as Appendix G to this Questionnaire*

2.  Please provide the caption, case number, file date, and court name for the lawsuit you filed:

    Caption:      _____

    Case Number:  _____  File Date:  __ __ / __ __ / __ __ __ __

    Court Name:   _____

3.  Was Grace a defendant in the lawsuit? ................................................................................. ☐ Yes ☐ No

4.  Was the lawsuit dismissed against any defendant? ................................................................ ☐ Yes ☐ No

    *If yes, please provide the basis for dismissal of the lawsuit against each defendant:*

    _____

    _____

5.  Has a judgment or verdict been entered?.............................................................................. ☐ Yes ☐ No

    *If yes, please indicate verdict amount for each defendant(s):* _____

6.  Was a settlement agreement reached in this lawsuit? ............................................................ ☐ Yes ☐ No

    *If yes and the settlement was reached on or after April 2, 2001, please indicate the following:*

    a.  Settlement amount for each defendant:  _____

    b.  Applicable defendants:_____

    c.  Disease or condition alleged: _____

    d.  Disease or condition settled (if different than disease or condition alleged):_____

7.  Were you deposed in this lawsuit? ...................................................................................... ☐ Yes ☐ No

    *If yes and Grace was not a party in the lawsuit, please attach a copy of your deposition to this Questionnaire.*

**b.**  **CLAIMS**

1.  Have you ever asserted a claim regarding asbestos and/or silica, including but not limited to a claim against an asbestos trust (other than a formal lawsuit in court)? ............................................................... X Yes ☐ No

    *If yes, please complete the rest of this Part VII(b).  If no, please skip to Part VIII.*
    OBJECT TO THE FOLLOWING QUESTIONS AS THIS IS DEEMED NON-DISCOVERABLE UNDER DELAWARE LAW AND THUS BINDING IN DISTRICT COURT

2.  Date the claim was submitted:................................................................................... __ __ / __ __ / __ __ __ __

3.  Person or entity against whom the claim was submitted:_____

4.  Description of claim:  _____

5.  Was claim settled? ........................................................................................................ ☐ Yes ☐ No

6.  Please indicate settlement amount: .................................................................. $_____

7.  Was the claim dismissed or otherwise disallowed or not honored? ..................................... ☐ Yes ☐ No

    *If yes, provide the basis for dismissal of the claim:_____*

13

## PART VIII:  CLAIMS BY DEPENDENTS OR RELATED PERSONS

**SEE COMPLAINT**

Name of Dependent or Related Person: _____    Gender: ☐ Male ☐ Female

Last Four Digits of Social Security Number: __ __ __ __        Birth Date: __ __ / __ __ / __ __ __ __

Financially Dependent: ...................................................................................................☐ Yes ☐ No

Relationship to Injured Party: ☐ Spouse ☐ Child ☐ Other  If other, please specify _____

Mailing  Address: _____
                        Address

_____

City                                State/Province                        Zip/Postal Code

Daytime Telephone number: ......................................................... ( __ __ __ ) __ __ __ - __ __ __ __

## PART IX:  SUPPORTING DOCUMENTATION

Please use the checklists below to indicate which documents you are submitting with this form.
**Copies:**

| | | | |
|---|---|---|---|
| X | Medical records and/or report containing a diagnosis | ☐ | X-rays |
| X | Lung function test results | ☐ | X-ray reports/interpretations |
| X | Lung function test interpretations | ☐ | CT scans |
| ☐ | Pathology reports | ☐ | CT scan reports/interpretations |
| ☐ | Supporting documentation of exposure to Grace asbestos-containing products | ☐ | Depositions from lawsuits indicated in Part VII of this Questionnaire |
| ☐ | Supporting documentation of other asbestos exposure | ☐ | Death Certification |

**Originals:**

| | | | |
|---|---|---|---|
| ☐ | Medical records and/or report containing a diagnosis | ☐ | Supporting documentation of other asbestos exposure |
| ☐ | Lung function test results | ☐ | X-rays |
| ☐ | Lung function test interpretations | ☐ | X-ray reports/interpretations |
| ☐ | Pathology reports | ☐ | CT scans |
| ☐ | Supporting documentation of exposure to Grace asbestos-containing products | ☐ | CT scan reports/interpretations |
| | | ☐ | Death Certification |

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation.  Please indicate the documents for which you are seeking reimbursement and attach a receipt for such costs:
**BILL OF COPIES ENCLOSED**

## PART X: ATTESTATION THAT INFORMATION IS TRUE AND ACCURATE

The information provided in this Questionnaire must be accurate and truthful.  This Questionnaire is an official court document that may be used as evidence in any legal proceeding regarding your Claim.  The penalty for presenting a fraudulent Questionnaire is a fine of up to $500,000 or imprisonment for up to five years, or both.  18 U.S.C. §§ 152 & 3571.
**TO BE COMPLETED BY THE INJURED PERSON.**

I swear, **under penalty of perjury,** that, to the best of my knowledge, all of the foregoing information contained in this Questionnaire is true, accurate and complete.

Signature: _____    Date: __ __ / __ __ / __ __ __ __

Please Print Name: _____

**TO BE COMPLETED BY THE LEGAL REPRESENTATIVE OF THE INJURED PERSON.**

I swear that, to the best of my knowledge, all of the information contained in this Questionnaire is true, accurate and complete.
Signature: _Robert Jacobs_____    Date: 07 / 12 / 2006

Please Print Name: _Robert Jacobs_____

14

**Galloway Job Description**

Plaintiff was exposed to W.R. Grace asbestos-containing MonoKote fireproofing material while working at the DuPont Chestnut Run building, Wilmington, DE. (from henceforth, the DuPont Chestnut Run building will be referred to as Chestnut Run). MonoKote fireproofing material was seen in use at Chestnut Run from 1958 – 1959 and again from 1966-1967 as is documented in the depositions of Allen J. Nagowski C.A. 90C-AP-54-1-CV. Considering that MonoKote would be particularly difficult to remove from all fireproofed surfaces at Chestnut Run, and MonoKote was still in use 8 years after its use by the witness at the Chestnut Run location, it can be inferred that MonoKote was verifiably present at Chestnut Run between 1958 – 1967. Plaintiff, in the course of performing his duties as a maintenance tradesman from 1960 to 2006 at Chestnut Run, came in the vicinity and/or contact with surfaces sprayed with a mixture comprised of MonoKote and plaster or similar material. Plaintiff inhaled latent aerial dust from the original spraying that did not adhere, later flaked from the surfaces that were sprayed or was incidentally knocked loose during the original construction or subsequent maintenance or repairs. This exposure to W.R. Grace asbestos-containing MonoKote fireproofing material directly contributed to the Plaintiff's asbestos-related sickness as documented in the Plaintiff's attached medical history.

1

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

VAUGHN G. GALLOWAY and RUTH   :
GALLOWAY, his wife;             :
                               :
    Plaintiffs,            :
                               :
       v.            :   C.A. No. 95C-09-175
                               :
OWENS CORNING FIBREGLAS COR-  :
PORATION, et al.,          :
                               :
    Defendants.          :

**VAUGHN C. GALLOWAY'S ANSWERS TO INTERROGATORIES
DIRECTED TO PLAINTIFF BY ALL DEFENDANTS
AND RESPONSE TO REQUEST FOR PRODUCTION**

**Preamble**

    Counsel for plaintiffs have already produced all Documents
and Exhibits to all defense counsel pursuant to Standing Order
No. 1.  These Documents and Exhibits are available for review at
plaintiff's counsel's office.

**A.   Personal History**

    1.    State all names by which you have been known; the date
and place of your birth; occupation; social security number;
height; weight; color of hair and eyes; and the number of any
motor vehicle operator's license held in the State of Delaware or
any other state.

ANSWER:  Name:                  Vaughn C. Galloway

          Date of Birth:       01/26/41

          Place of Birth:      West Chester, PA

          Occupation:          Field Technical Representative

          Social Security No.:    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

          Height:              6' 3"

          Weight:              230 lbs.

          Hair:                Brown

          Eyes:                Blue

2

Driver's License:          PA 10991809

2.    State the address of each place of residence that you have occupied from 1936 to date.

ANSWER:    168 Schoolhouse Road
           West Grove, PA 19390
           1968 - present

           Ebright Road
           Wilmington, DE
           1961-1968

           Route 202
           Glen Mills, PA
           1951 - 1961

           Lincoln University, PA
           1941 - 1954

3.    Are you married?  If yes, please state the name and present address of your spouse.

ANSWER:    Yes, Ruth Galloway resides with answering plaintiff at

168 Schoolhouse Road.

4.    If you have had any previous marriages, please state the name of any former spouse, and state the date, place and cir-cumstances under which the marriage or marriages were dissolved or terminated.

ANSWER:    N/A.

5.    Please state the name, ages and present address of your children.

ANSWER:    Shaun Galloway
           Willow Grove, PA
           05/13/67

           Colleen Galloway
           Resides with plaintiff
           04/17/71

6.    If you have ever been a member of the Armed Forces of the United States, state the following:

       (a)  The branch of the service, serial number, and highest rank held;

       (b)  The beginning and ending dates of your military services;

       (c)  The type of discharge that you received;

(d)  Whether you were given a physical examination which included x-rays prior to the time you entered the service;

(e)  Whether you received any injury while in the military services; and

(f)  Whether you have claimed disability for any injury or physical condition arising out of your military service.

ANSWER:  N/A.

7.  If you have had a claim arising out of your military service, state the date on which the claim was made, the nature of the claim, the claimed disability and the disability rating, if any, which you were given.

ANSWER:  N/A.

8.  If you have ever been convicted of a felony or a crime involving dishonesty, state fully and in detail the date, place and nature of each such felony conviction.

ANSWER:  Plaintiff objects to this interrogatory as being

beyond the scope of discovery, irrelevant and not designed to

lead to relevant evidence.  Without waiver of such objection,

plaintiff states no.

9.  Give a brief summary of your education, including schools attended and the last year completed.

ANSWER:  Plaintiff graduated from Media High School in

Pennsylvania.

B.  **Employment Background**

10.  State the names and address of each employer for whom you worked during the years 1936 to date, stating as to each such employer the beginning and ending dates of employment, the nature of the business, the name and address of your direct supervisor, and your particular job function.

ANSWER:  Plaintiff believes to his best recollection that he was

exposed to asbestos products during his employment with Magness

Construction, Haveg and DuPont - Chestnut Run.

Magness Construction - Approximately 6 months in 1958.

4

As a carpenter, plaintiff did frame work in Graylyn Crestand used Gypsum Lath Board.

Haveg Marshallton - March, 1959 to July, 1960.

Plaintiff worked as a mechanical development technician in the Larger Molding Area.  Plaintiff was involved in fabricating equipment for the nose cones for Atlas missiles.  The nose cones were made of pre-impregnated cloth which plaintiff understands contained asbestos.  Plaintiff also used plastic reinforced with asbestos to create prototype parts.  The lathing process used to make the prototypes created dust.

During his employment at Haveg, plaintiff worked around others who were working with asbestos.  Plaintiff recalls asbestos being used as close as three to four feet from where he was working.  In addition, plaintiff's work caused him to walk through areas where raw asbestos was used.  The workers mixed and dumping both loose and bagged raw asbestos. Plaintiff worked in the Powerhouse where pipes were insulated with asbestos lagging. Plaintiff worked in the area when these pipes were repaired, and insulation was torn by other workers.

DuPont - Chestnut Run - 1960 to the present (except *)

Plaintiff worked as a lab technician assistant from 1960 to 1962.  Plaintiff worked in the film building and tested cellophane bags.  Plaintiff's supervisor was Hans Nunne. He worked as a lab technician from 1962 to 1968. Plaintiff recalls that the overhead pipes were insulated with asbestos lagging.

*Greenhill Avenue* - 1968 - 1970

Plaintiff worked in the mechanical development laboratory. He did metal machine work and developed packaging equipment. Plaintiff's supervisor was Hans Nunne.

Field Technical Representative - 1970 to the present.

Plaintiff has worked with packaging equipment such as shrink films, polyethylene, Polypropine and asbestos transite. In addition, plaintiff has worked with asbestos containing marinate and masonite board. Plaintiff himself cut these boards to insulate ovens. Plaintiff recalls that this process created dust. Plaintiff often visited various sites including General Foods in Dover, Delaware and Byesville, Ohio. He recalls the pipes in these food processing plants were covered with asbestos insulation.

Plaintiff's supervisors have been Gilbert Schlerf, Burton Spottiswoode and Robert Thogersen.

In addition to his occupational exposure, plaintiff has been exposed to asbestos while changing brakes on his personal cars and for other family menbers.

Plaintiff has changed the original GM brakes at least on the following vehicles:  1955 Chevy, 1960 Chevy, 1965 Chevy and 1971 Chevy.  In addition, he has changed the brakes on a 1955 Chevy race car, 1974 Chevy pick-up truck, 1980 Pontiac LeMans, 1990 Chevy pick-up truck and 1987 Pontiac.  Plaintiff used the following brake products:  Big A, Raybestos and Bendix.

Plaintiff has welded at home and has used welding rods.  He recalls using Airco and Hobart welding rods and he recalls that the handling of these rods created dust.

Plaintiff's Social Security authorization is attached to this answer for McCarter & English pursuant to Standing Order No. 1.

## C.    Product I.D. and Exposure History

11.    With respect to any products containing asbestos manufactured, packaged, furnished, supplied, or sold by each defendant named in this action that you claimed to have worked with or around, state the following for each defendant.

(a)    The name of the product or products;

(b)    The name of your employer at the time you worked with or around such product;

(c)    The name and address of the plant where you worked with or around such products;

(d)    The name and last known address of your immediate supervisor or job superintendent on such job;

(e)    The name and last known address of all persons with whom you worked on such jobs; and

(f)    The approximate length of time that you worked on each such job.

ANSWER:    (a) At this time plaintiff specifically recalls using and/or being exposed to the following asbestos products.  He may recall additional products in the future. Gypsum Lath Board, Asbestos lagging, Asbestos cement in bags; asbestos gloves; General Motors, Bendix, Raybestos and Big A brake products; marinate; Rutland Furnace cement; Johns-Manville Transite; Garlock gaskets; Airco and Hobart welding rods.

Although plaintiff may not have a specific recollection of the following products, pursuant to plaintiff's counsel's obligation to disclose information within his or her knowledge or control, plaintiff's counsel provides the information contained in the following exhibits which indicate products that may have been at plaintiff's worksite and to which plaintiff may have been

exposed.   These exhibits are incorporated into this answer:
Exhibits A, E-1 and E-2 for Haveg and DuPont - Chestnut Run,
Exhibit E-3 for Haveg and Exhibits A-1 and E attached to IN RE:
ASBESTOS LITIGATION, C.A. NO. 77C-ASB-2, Exhibits Attached To The
Answers To Standard Interrogatory No. 12 Directed To All
Plaintiffs By All Defendants, filed on 5/09/91 and all subsequent
and/or future amendments and supplements filed thereafter.
Additional copies of the above Exhibits will be provided upon
specific request.

(b)   See answer to Interrogatory No. 10.

(c)   See answer to Interrogatory No. 10.

(d)   See answer to Interrogatory No. 10.

(e)   There were many people who worked with plaintiff at his
worksites.   At this time plaintiff specifically recalls the
following names listed below.   Other names may be supplied later.
James Poppiti, George Montville, Peter Opreska, Ed Destephaney,
Joe Tresinski, Dave Trimble, Ed Hoffman, Hans Nonne, Vince
Brodie, John Raniszewski, Frank Story, Tom Smith, Don Burns, Bill
Marrs, Jack Moseley, Gilbert Schlerf, Burton Spottiswoode, Robert
Thogersen, Rom Smith, Harold Ramsay, Joe Trala and Robert Herman.

Additionally, plaintiff refers and incorporates into
the answer herein  Exhibit B for Haveg and DuPont - Chestnut Run
attached to IN RE: ASBESTOS LITIGATION, C.A. NO. 77C-ASB-2,
Exhibits Attached To The Answers To Standard Interrogatory No. 12
Directed To All Plaintiffs By All Defendants, filed on 5/09/91
and as supplemented on 1/14/93 and all subsequent and/or future
amendments and supplements filed thereafter for names of co-
workers.  Plaintiff believes his attorneys will prove that the

workers listed on Exh. B also worked at plaintiff's worksite during the period of plaintiff's employment. Additional copies of Exh. B will be provided upon specific request.

(f)  See answer to Interrogatory No. 10.

12.  State fully and in detail each and every evidentiary fact upon which the alleged negligence or alleged liability of each defendant is based.  As to each such fact, state:

(a)  The identities, including names, business addresses, residential address, of each individual having knowledge of those facts;

(b)  Identify each document which supports or tends to support the existence of such fact.  Identify the document by briefly describing it, and by stating its present location and the name and full business address of the present custodian of the document.

ANSWER:  Plaintiff objects to this interrogatory as overly broad and burdensome.  Without waiver of said objection, plaintiff provides the following:  Plaintiff does not undertake to list "each and every evidentiary fact" but only those ascertained to date and even those only can be given in general.

Evidence will be given by plaintiff and parties, including defendants' employees previously identified, as to the conditions of the work areas where plaintiff was employed, the lack of safety or respiratory devices for asbestos at plaintiff's work sites and the types of work performed by plaintiff.  Facts will be introduced through testimony as well as through the use of prior Court decisions with regard to the state of knowledge available to the defendants concerning asbestos.  Facts will be introduced concerning lack of warning to plaintiff by any defendant although each defendant had knowledge of the dangers of exposure to asbestos.  Facts will be introduced on the ability of defendants to manufacture non-asbestos products for insulation

(c)  The date, time, place, manner and circumstances when each such advice, warning or recommendation was given;

(d)  The name, business address and telephone number, job title, residence address and telephone number of each and every witness to the plaintiff's reception of such advice, warning or recommendation; and

(e)  The name, business address and telephone number, job title, residence address and telephone number of each and every co-worker or similar member of your trade and occupation who also received the same or similar advice, warning or recommendation.

ANSWER:   See answer to Interrogatory No. 22.

**D.   Smoking History**

24.  Do you smoke cigarettes, cigars or a pipe?

ANSWER:   No.

25.  Have you ever smoked tobacco products of any type?

ANSWER:   No.

26.  If your answer to Interrogatory 24 and/or 25 is in the affirmative, please state fully and in detail:

(a)  The type of tobacco products which you smoke or have smoked, that is, cigarettes, cigars, pipes, etc., stating whether you inhaled the smoke or not;

(b)  The daily frequency with which you smoke or have smoked same, e.g., two packages of cigarette daily, two pipefulls daily, etc.;

(c)  The dates and time periods during which you have smoked;

(d)  For any time periods during which you have ceased smoking tobacco products, your reasons for stopping;

(e)  For any time period when you have commenced smoking tobacco products after a period of having stopped smoking, your reasons for restarting;

(f)  If you smoke cigarettes, please state the average number of packs per day so consumed in each of the following five year periods of 1935 to the present time:

(i)      1935 - 1940

(ii)     1941 - 1945

|       |              |
|-------|--------------|
| (iii) | 1946 – 1950  |
| (iv)  | 1951 – 1955  |
| (v)   | 1956 – 1960  |
| (vi)  | 1961 – 1965  |
| (vii) | 1966 – 1970  |
| (viii)| 1971 – 1975  |
| (ix)  | 1976 – present |

(g)   Whether you were ever advised by any physician to stop smoking.  If your answer is yes, give the date and name and address of each physician who gave you any such advice, and also state whether you followed that advice; and

(h)   State the brand of tobacco used by plaintiff.

ANSWER:   N/A.

27.   Are you aware of the United States Surgeon General's warning placed on all cigarette packages and advertisements?

ANSWER:   Plaintiff objects to this interrogatory as it is not calculated to lead to admissible evidence.  Plaintiff also objects as this interrogatory is vague.  Without waiver of said objections, plaintiff states that he never smoked tobacco products.

28.   Have you ever read the warning referred to in Interrogatory 27.  If so, state the date you first read it.

ANSWER:   Plaintiff objects to this interrogatory on the basis that it is not calculated to lead to admissible evidence.  Plaintiff also objects to this interrogatory as it is vague.  Without waiver of said objections, plaintiff states that he never smoked tobacco products.

29.   Have you ever smoked cigarettes subsequent to being aware of or reading the warning referred to in Interrogatory 27.

ANSWER:   Plaintiff objects to this interrogatory as it is not calculated to lead to admissible evidence.  Plaintiff also

**Dr. M. Jane Thomas**
**University of Ottawa**
**Room 4168**
**Health & Sciences Building**
**451 Smyth Road**
**Ottawa, Ontario   K1H 8M5**
**(613) 562-5492  Fax (613) 562-5442**

JAN 1 2 199.

January 7, 1997

Jacobs & Crumplar, P.A.
Attorneys at Law
2 East 7th Street
P.O. Box 1271
Wilmington, Delaware 19899

Dear Mr. Jacobs:

### Re:  GALLOWAY, Vaughn

Received from Jacobs and Crumplar were photocopies of clinical documents
indicating Mr. Galloway's recent medical history and his asbestos exposure history.
Forty glass slides labelled CS 8096-95 and 36 glass slides labelled 7298-95 were
present as well.

Two fragments of the wet tissue included with the package were converted into
paraffin blocks and from those some immunohistochemistry was performed.
Although this tissue was exposed to prolonged formalin fixation, some
immunoperoxidase stains were successfully performed and these will be returned
along with all of the remainder of the pathologic material referred to above.

A review of the slides labelled 7298, which I presume are from the original biopsy,
show lesions with two different appearances.  One is a completely hyalinized
fragment of tissue consistent with a pleural plaque and the other is a small fragment
of extremely cellular tissue with a sarcomatous appearance.  In this fragment the
spindle cells are large with highly pleomorphic nuclei often surrounded by a delicate
filigree pattern of collagen highly suggestive of mesothelioma.

Examination of slides labelled 8096 confirm the previous impression and show a
spindle cell tumour which in some areas is extremely hyalinized but which clearly
shows the cytologic features of a malignant mesothelioma.  The adjacent pulmonary
parenchyma shows focal areas of fibrosis and multifocal alveolar cuboidal

**GALLOWAY, Vaughn - Page 2**

metaplasia.  The presence of the pleural plaque noted in the original biopsy is indicative of asbestos exposure and in the opinion of many authorities is highly correlated with asbestos exposure.

Although the immunostains performed here are suboptimal since the tissue had undergone prolonged fixation and was extensively necrotic, the tumour cells showed convincing staining with antibodies directed against cytokeratins.  These cells also showed a positivity with antibodies directed against vimentin.  Other antibodies such as desmin and muscle specific actin were not considered to be positive.  These immunohistochemical findings are be in keeping with the diagnosis of mesothelioma.

As far as the patient's occupational asbestos exposure is concerned, I cannot comment fully on that but it would seem however that the longest period of his employment at Dupont from was 1960 to 1995 where it would appear there were several sources of asbestos.  This long term possibly milder exposure may have been added to by the exposure at Haveg Marshallton in 1959 and 1960.

In summary, the presence of pleural plaques on this gentleman's lung indicate that this gentleman has undergone significant asbestos exposure.

In my opinion, there is no doubt that the lesion in the chest wall and the pleura is a diffuse malignant mesothelioma and it is probable that asbestos exposure has contributed to the development of this tumour.

Thank you once again for allowing me to review this interesting material.

Yours truly,

M. Jane Thomas, M.D.

**Final Diagnosis: Diffuse malignant mesothelioma (sarcomatous or desmoplastic type) - right pleura.**

/as
Encl.

This is to certify that the information here given is correctly copied from an original certificate of death duly filed with me Local Registrar. The original certificate will be forwarded to the State Vital Records Office for permanent filing.

**WARNING: It is illegal to duplicate this copy by photostat or photograph.**

Fee for this certificate, $2.00

COMMONWEALTH OF PENNSYLVANIA · DEPARTMENT OF HEALTH

*John F. X. Morley* 
Local Registrar

No. 3646489

JUL 18 1996
Date

---

H105.143 Rev. 2/97

COMMONWEALTH OF PENNSYLVANIA · DEPARTMENT OF HEALTH · VITAL RECORDS
**CERTIFICATE OF DEATH**

TYPE/PRINT IN PERMANENT BLACK INK

| | | | | |
|---|---|---|---|---|
| NAME OF DECEDENT (First, Middle, Last) VAUGHN GALLOWAY | SEX M | SOCIAL SECURITY NUMBER 198 — 30 — 3753 | | DATE OF DEATH (Month, Day, Year) 7-14-96 |

AGE (Last Birthday) 55 Yrs. | UNDER 1 YEAR Months / Days | UNDER 1 DAY Hours / Minutes | DATE OF BIRTH (Month, Day, Year) 1-26-41 | BIRTHPLACE (City and State or Foreign Country) West Chester, Penna | PLACE OF DEATH (check only one side) HOSPITAL: Inpatient ☐ ER/Outpatient ☐ DOA ☐ OTHER: Home ☐ Nursing Home ☐ Residence ☒ Other (Specify) ☐

COUNTY OF DEATH Chester | CITY, BORO, TWP OF DEATH London Grove Twp. | FACILITY NAME (If not institution, give street and number) 168 Schoolhouse Rd. | WAS DECEDENT EVER IN U.S. ARMED FORCES? Yes ☒ No ☐ IF yes, specify Cuban, Mexican, Puerto Rican, etc. | RACE - American Indian, Black, White (Specify) White

DECEDENT'S USUAL OCCUPATION (Give kind of work done during most of working life; do not use retired) Sr. Development Specialist | KIND OF BUSINESS/INDUSTRY Packaging | | DECEDENT'S EDUCATION Elementary/Secondary (0-12) 12 College (1-4 or 5+) | MARITAL STATUS - Married Never Married, Widowed, Divorced (Specify) Married | SURVIVING SPOUSE (If wife, give maiden name) Ruth Twaddell

DECEDENT'S MAILING ADDRESS (Street, City/Town, State, Zip Code) 168 Schoolhouse Rd. West Grove, Pa. 19390 | DECEDENT'S ACTUAL RESIDENCE (See instructions on 4 or prior) 17a. State Penna 17b. County Chester | Did decedent live in a township? | No, decedent lived in: Yes ☒ within actual limits of:

FATHER'S NAME (First, Middle, Last) George Galloway | MOTHER'S NAME (First, Middle, Last) Bernice Johnson

INFORMANT'S NAME (Type/Print) Ruth Galloway | INFORMANT'S MAILING ADDRESS (Street, City/Town, State, Zip Code) 168 Schoolhouse Rd., West Grove, Pa. 19390

METHOD OF DISPOSITION Burial ☐ Cremation ☒ Removal from State ☐ Donation ☐ Other (Specify) | DATE OF DISPOSITION (Month, Day, Year) 7-19-96 | PLACE OF DISPOSITION - Name of Cemetery, Crematory or Other Place Elam Methodist Cem. | LOCATION - City/Town, State, Zip Code Concord Twp. Glen Mills, Pa. 1934

SIGNATURE OF FUNERAL SERVICE LICENSEE OR PERSON ACTING AS SUCH *William C. Rigby* | LICENSE NUMBER 010787-L | NAME AND ADDRESS OF FACILITY Wm. C. Rigby III FH 19317 232 Concord Pike Chadds Ford, Pa.

Complete items 22a-c only when certifying physician is not available at time of death to certify cause of death. | SIGNATURE AND TITLE OF PERSON PRONOUNCING DEATH (Signature and Title) *Susan K Bretzner RN* | LICENSE NUMBER RN221076L | DATE PRONOUNCED DEAD (Month, Day, Year) 7-14-96

Items 24-26 must be completed by person who pronounced death. | TIME OF DEATH 9:26 p.m. | DATE PRONOUNCED DEAD (Month, Day, Year) July 14, 1996 | WAS CASE REFERRED TO MEDICAL EXAMINER/CORONER? Yes ☐ No ☒

27. PART I  Enter the diseases, injuries or complications which caused the death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock or heart failure. List only one cause on each line.

IMMEDIATE CAUSE (Final disease or condition resulting in death) Malignant Mesothelioma with Metastases | Approximate interval between onset and death 1 year

PART II. Other significant conditions contributing to death, but not resulting in the underlying cause given in PART I.

Sequentially list conditions if any, leading to immediate cause. Enter UNDERLYING CAUSE (Disease or injury that initiated events resulting in death) LAST | DUE TO (OR AS A CONSEQUENCE OF): | DUE TO (OR AS A CONSEQUENCE OF): |

WAS AN AUTOPSY PERFORMED? Yes ☐ No ☒ | WERE AUTOPSY FINDINGS AVAILABLE PRIOR TO COMPLETION OF CAUSE OF DEATH? Yes ☐ No ☒ | MANNER OF DEATH Natural ☒ Accident ☐ Suicide ☐ Homicide ☐ Pending Investigation ☐ Could not be determined ☐ | DATE OF INJURY (Month, Day, Year) | TIME OF INJURY | INJURY AT WORK? Yes ☐ No ☐ | DESCRIBE HOW INJURY OCCURRED.

PLACE OF INJURY - At home, farm, street, factory, office building, etc. (Specify) | LOCATION (Street, City/Town, State)

CERTIFIER (Check only one)
☐ CERTIFYING PHYSICIAN (Physician certifying cause of death when another physician has pronounced death and completed item 23) To the best of my knowledge, death occurred due to the cause(s) and manner as stated.
☒ PRONOUNCING AND CERTIFYING PHYSICIAN (Physician both pronouncing death and certifying to cause of death) To the best of my knowledge, death occurred at the time, date, and place, and due to the cause(s) and manner as stated.
☐ MEDICAL EXAMINER/CORONER On the basis of examination and/or investigation, in my opinion, death occurred at the time, date, and place, and due to the cause(s) and manner as stated.

SIGNATURE AND TITLE OF CERTIFIER *David D Biggs MD* | DATE SIGNED (Month, Day, Year) 7-17-96

LICENSE NUMBER MD043669-E | NAME AND ADDRESS OF PERSON WHO COMPLETED CAUSE OF DEATH (Item 27) Type or Print David D. Biggs M.D. 1941 Limestone Rd. Wilm, DE. 19808

REGISTRAR'S SIGNATURE AND NUMBER *John F. X. Morley* 1231238 | DATE FILED (Month, Day, Year) 7-18-96

VAUGHN GALLOWAY — NAME OF DECEDENT

15

**THE MEDICAL CENTER OF DELAWARE**

**DISCHARGE SUMMARY**

| | |
|---|---|
| Name: | **Galloway, Vaughn** |
| Med Rec#: | **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** |
| Pt. Type: | **CI** |
| Room: | **C6B 6216B** |
| Adm. Date: | **02/29/96** |
| Dis. Date: | **03/01/96** |
| Pt. Age: | **55** |

cc:  David Biggs, M.D.
     Allen L Davies, M.D.
     Raymond McLaughlin, M.D.

FILE COPY

RECEIVED
MAR 1 4 1996

**ADMISSION MEDICATIONS:**  Acute shortness of breath.

**SECONDARY DIAGNOSES:**  Mesothelioma.

**PROCEDURE:**  Pulmonary angiogram.

**HISTORY AND PHYSICAL:**  The patient is a 55-year-old man who was initially diagnosed with mesothelioma in May, 1995.  He underwent wedge resection of a mass lesion seen at that time and a subtotal right upper lobe lobectomy.  He did have evidence of metastasis in one right mainstem bronchial lymph node.  The patient has been observed since that time and has had steady progression with enlarging pleural mass.  His pain has been reasonably well controlled on long acting narcotics and he was recently placed on Duragesic patch at 50mcg. every 72 hours with good control of his pain.  The patient has been suffering a continuous decline in his performance status, and is currently spending greater than 90% of the day in the bed or on the couch.  He does walk around but tires quickly.  He has a food aversion and is eating poorly.

On the morning of admission, at approximately ten o'clock, the patient noted the acute onset of shortness of breath.  He felt unable to get enough oxygen no matter how hard he breathed.  It was not associated with any chest pain or cough.  The patient had not noted any lower extremity edema.  The episode resolved over a period of one to two hours but the patient was quite distressed by it.

**PAST MEDICAL HISTORY:**  Significant for a mesothelioma as described above.—He did have a history of kidney stones in the distant past.  He denies any other significant surgeries or ongoing medical problems.

**ADMISSION MEDICATIONS:**
Duragesic patch at 50mcg. q 72 hours.
Lactulose 30cc. twice daily during waking hours.
Senokot 2 tablets twice daily during waking hours.
Percocet as needed for pain.

**ALLERGIES:**  Penicillin.

**DISCHARGE SUMMARY**
Carbon Copy For:Raymond McLaughlin, M.D.

**SOCIAL HISTORY:**   The patient does not smoke nor drink alcohol.   His work exposure consists of fifteen months of working at Haveg Industries where he had significant asbestos exposure.   That occurred in 1959.   Since that time, he has spent most of his working life at duPont working in their packing department and has not had other significant toxic exposures that he is aware of.

**FAMILY HISTORY:**   Unremarkable.   Both parents are alive and well and he has three brothers who are alive.

**REVIEW OF SYSTEMS:**   Only significant for the above mentioned complaints.   He has had a steady weight loss of about 40 pounds over the past six months.

**PHYSICAL EXAMINATION:**   He is a weak man in no acute distress who prefers to lie supine as he is too tired to sit up for any length of time.   Blood pressure is 140/80, pulse 100 beats per minute with frequent skips.   There is no jugular venous distention.   There is no lymphadenopathy in the cervical or supraclavicular regions.   His right axilla has a 4cm. nodal mass and there is a right back nodule which measures approximately 3cm. in size.   The lungs are clear to auscultation and percussion.   He has a right well healed thoracotomy incision.   His heart sounds are within normal limits.   His abdomen is soft and nontender with no palpable mass or organomegaly.   His extremities showed no edema or tenderness to palpation.   He is quite weak but there are no focal motor deficits noted on strength testing.

The chest x-ray taken as an outpatient did show that the pleural-based mass had enlarged over the past two months and was a small pleural effusion present.   Although there is evidence of progression of his disease, there does not appear to be a sufficient enough change to explain his shortness of breath.

**ASSESSMENT:**
1.   Acute onset of shortness of breath without any underlying etiology, was suspicious for pulmonary embolism.
2.   Mesothelioma with slow but steady progression.   The patient is not a candidate for any systemic therapy protocols due to his poor performance status.
3.   "Do Not Resuscitate".   The patient clearly indicated that he did not wish any aggressive life support measures and hs requested that he not receive any cardiopulmonary resuscitation.

**CLINICAL COURSE:**   The patient was admitted and his initial laboratories showed that his electrolytes and liver function tests were all within normal limits.   The blood urea nitrogen was 7 and creatinine 0.7.   The arterial blood gases showed a pH of 7.48, PCO2 of 33.6 and a PO2 of 88.   The complete blood count showed a mild microcytic anemia with a hemoglobin of 10, a platelet count of 669,000.   PT and PTT were within normal limits.

Doppler studies of the lower extremities showed no evidence of deep vein thrombosis and, therefore, a pulmonary angiogram was performed.   This was also within normal limits.   The patient was observed overnight and had no recurrence of his shortness of breath.   By the next day he was feeling well.   As he was not hypoxic and had no evidence of thrombosis and was feeling well, it was felt it was safe for discharge.

I discussed with the patient his current clinical condition and his poor prognosis.   We agreed that he would not be receiving any systemic therapy in the future.

Galloway, Vaughn                    DISCHARGE SUMMARY                    *Page 3*
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

We discussed home-based Hospice Care and the patient and his wife were
interested in entering into a Hospice program.

The patient was discharged on 3/1/96. Delaware Home Hospice will be contacted
and will be making a home visit within the next two to three days. No
further scheduled appointments will be made in our office although we remain
open to seeing him at any time if we can be of any service in his care. WE
plan to deliver all care through the Home Hospice agency.


DB /dbw  #98996/6664/1
Dictated:  03/01/96
Transcribed:  03/06/96          _____
                                David Biggs, M.D.


DISCHARGE SUMMARY
Carbon Copy For:Raymond McLaughlin, M.D.

This is to certify that the information here given is correctly copied from an original certificate of death duly filed with a Local Registrar. The original certificate will be forwarded to the State Vital Records Office for permanent filing.

**WARNING: It is illegal to duplicate this copy by photostat or photograph.**

Fee for this certificate, $2.00

*John F. X. Morley*
Local Registrar

**JUL 18 1996**
Date

3646489
No.

---

COMMONWEALTH OF PENNSYLVANIA • DEPARTMENT OF HEALTH • VITAL RECORDS
**CERTIFICATE OF DEATH**

H105.143 Rev. 2/87

| NAME OF DECEDENT (First, Middle, Last) | | | | SEX | SOCIAL SECURITY NUMBER | DATE OF DEATH (Month, Day, Year) |
|---|---|---|---|---|---|---|
| VAUGHN GALLOWAY | | | | M | 198 - 30 - 3753 | 7-14-96 |

| AGE (Last Birthday) | UNDER 1 YEAR | UNDER 1 DAY | DATE OF BIRTH (Month, Day, Year) | BIRTHPLACE (City and State or Foreign Country) | PLACE OF DEATH | |
|---|---|---|---|---|---|---|
| 55 | Days | Hours | Minutes | 1-26-41 | West Chester, Penna | |

PLACE OF DEATH — see instructions on other side
Inpatient ☒ ER/Outpatient ☐ DOA ☐

| COUNTY OF DEATH | CITY, BORO, TWP OF DEATH | FACILITY NAME (If not institution, give street and number) |
|---|---|---|
| Chester | London Grove Twp. | 168 Schoolhouse Rd. |

WAS DECEDENT OF HISPANIC ORIGIN? No ☒ Yes ☐ (If yes, specify Cuban, Mexican, Puerto Rican, etc.)

RACE — American Indian, Black
White

| DECEDENT'S USUAL OCCUPATION | KIND OF BUSINESS/INDUSTRY | WAS DECEDENT IN U.S. ARMED FORCES? | DECEDENT'S EDUCATION | MARITAL STATUS | SURVIVING SPOUSE |
|---|---|---|---|---|---|
| Sr. Development Specialist | Packaging | No ☒ Yes ☐ | Elementary/Secondary (0-12) 12 College (1-4 5+) | Married | Ruth Twaddell |

| DECEDENT'S MAILING ADDRESS (Street, City/Town, State, Zip Code) | DECEDENT'S ACTUAL RESIDENCE | State: Penna | City/Town | London Grove |
|---|---|---|---|---|
| 168 Schoolhouse Rd. West Grove, Pa. 19390 | | County: Chester | | |

| FATHER'S NAME (First, Middle, Last) | MOTHER'S NAME (First, Middle, Maiden Surname) |
|---|---|
| George Galloway | Bernice Johnson |

| INFORMANT'S NAME (Type or Print) | INFORMANT'S MAILING ADDRESS (Street, City/Town, State, Zip Code) |
|---|---|
| Ruth Galloway | 168 Schoolhouse Rd., West Grove, Pa. 1939 |

| METHOD OF DISPOSITION | DATE OF DISPOSITION (Month, Day, Year) | PLACE OF DISPOSITION — Name of Cemetery, Crematory or Other Place | LOCATION — City/Town, State, Zip Code |
|---|---|---|---|
| Burial ☐ Cremation ☒ Removal from State ☐ Donation ☐ Other (Specify) | 7-19-96 | Elam Methodist Cem. | Concord Twp. Glen Mills, Pa. 19 |

| SIGNATURE OF FUNERAL SERVICE LICENSEE OR PERSON ACTING AS SUCH | LICENSE NUMBER | NAME AND ADDRESS OF FACILITY |
|---|---|---|
| *William L. Rigby III* | 010787-L | Wm. C. Rigby III FH, 232 Concord Pike Chadds Ford, PA 1931 |

| PRONOUNCING PHYSICIAN | LICENSE NUMBER | DATE SIGNED (Month, Day, Year) |
|---|---|---|
| *Susan K. Bradner RN* | RN221076L | 7-14-96 |

| TIME OF DEATH | DATE PRONOUNCED DEAD (Month, Day, Year) | WAS CASE REFERRED TO MEDICAL EXAMINER/CORONER? |
|---|---|---|
| 9:26 p.m. | July 14, 1996 | No ☒ Yes ☐ |

**32. PART II**  Enter the diseases, injuries or complications which caused the death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock or heart failure.

| | | Approximate interval between onset and death | PART IV  Other significant conditions contributing to death, not resulting in the underlying cause given in Part II. |
|---|---|---|---|
| IMMEDIATE CAUSE (Disease or condition resulting in death) | Malignant Mesothelioma with Metastases | 1 year | |
| Sequentially list conditions, if any, leading to immediate cause. Enter UNDERLYING CAUSE (Disease or injury that initiated events resulting in death) LAST | DUE TO (OR AS A CONSEQUENCE OF): | | |
| | DUE TO (OR AS A CONSEQUENCE OF): | | |
| | DUE TO (OR AS A CONSEQUENCE OF): | | |

| WAS AN AUTOPSY PERFORMED? | WERE AUTOPSY FINDINGS AVAILABLE PRIOR TO COMPLETION OF CAUSE OF DEATH? | MANNER OF DEATH | DATE OF INJURY (Month, Day, Year) | TIME OF INJURY | INJURY AT WORK? | DESCRIBE HOW INJURY OCCURRED |
|---|---|---|---|---|---|---|
| Yes ☐ No ☒ | Yes ☐ No ☒ | Natural ☒ Homicide ☐ Accident ☐ Pending Investigation ☐ Suicide ☐ Could not be determined ☐ | | | Yes ☐ No ☐ | |

PLACE OF INJURY - At home, farm, street, factory, office, building, etc. (Specify)

LOCATION (Street, City/Town, State)

| CERTIFIER (Check only one) | SIGNATURE AND TITLE OF CERTIFIER |
|---|---|
| * CERTIFYING PHYSICIAN (Physician certifying cause of death when another physician has pronounced death and completed Item 23) To the best of my knowledge, death occurred due to the cause(s) and manner as stated. ☐ | *David D. Biggs* MD |
| * PRONOUNCING AND CERTIFYING PHYSICIAN (Physician both pronouncing death and certifying to cause of death) To the best of my knowledge, death occurred at the time, date, and due to the cause(s) and manner as stated. ☒ | LICENSE NUMBER MD 043644-E    DATE SIGNED 7-17-96 |
| * MEDICAL EXAMINER/CORONER On the basis of examination and/or investigation, in my opinion, death occurred at the time, date, and place, and due to the cause(s) and manner as stated. ☐ | NAME AND ADDRESS OF PERSON WHO COMPLETED CAUSE OF DEATH (Item 32) Type or Print  David D. Biggs M.D. 1941 Limestone Rd. Wilm, DE. 19808 |

| REGISTRAR'S SIGNATURE AND NUMBER | | DATE FILED (Month, Day, Year) |
|---|---|---|
| *John F. X. Morley* | 23-23-18 | 7-18-96 |

SHORT CERTIFICATE

COMMONWEALTH OF PENNSYLVANIA  )
                              )  SS        FILE NO. 1596-1003
COUNTY OF CHESTER             )

  I, DONALD A. MANCINI, Register of Wills in and for the County of Chester

in the Commonwealth of Pennsylvania,

DO HEREBY CERTIFY that on the    6th    day of    AUGUST    1996,

LETTERS    TESTAMENTARY

on the Estate of VAUGHN C. GALLOWAY

deceased, were granted to    RUTH GALLOWAY

having first been qualified well and truly to administer the same.

I further certify that no revocation of said Letters appears of record in

my office.

Date of Death 07/14/1996          Given under my hand and seal of office this

Soc. Sec. No. 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         6th  day of  AUGUST  1996.

                                              Deputy Register

NOT VALID WITHOUT ORIGINAL SIGNATURE AND IMPRESSED SEAL

C45191

F 9/23/97

1

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

RUTH GALLOWAY, Individually        :
and as Executrix of the            :
Estate of VAUGHN GALLOWAY,         :
deceased                           :
                                   :
        Plaintiffs,                :        C.A. No.   95C-09-175
                                   :
            v.                     :
                                   :        THIRD AMENDED COMPLAINT
                                   :        UNDERSCORED LANGUAGE
OWENS CORNING FIBREGLAS COR-       :        REPRESENTS CHANGES TO
PORATION;                          :        THE FIRST COMPLAINT
                                   :
A. C. & S., INC., a/k/a            :        NON-ARBITRATION
ACANDS, INC., Individually         :
and formerly known as              :        ASBESTOS
ARMSTRONG CONTRACTING AND          :
SUPPLY CORPORATION;                :        JURY TRIAL DEMANDED
                                   :
AIRCO, INC., formerly known        :
as AIR REDUCTION CO. and           :
AIRCO, INC.;                       :
                                   :
ALLIED SIGNAL, INCORPORATED.,      :
Individually and as Successor-     :
in-Interest to BENDIX              :
CORPORATION;                       :
                                   :
ASBESTOS CORPORATION OF            :
AMERICA;                           :
                                   :
ATLAS TURNER, LTD., formerly       :
known as ATLAS ASBESTOS            :
COMPANY, a division of BELL        :
ASBESTOS MINES, LTD.;              :
                                   :
BELL ASBESTOS MINES, LTD.;         :
                                   :
CHAMPLAIN CABLE CORPORATION,       :
Formerly known as HAVEG            :
INDUSTRIES, INC., formerly         :
known as CONTINENTAL DIAMOND       :
FIBRE COMPANY;                     :
                                   :
CHAMPLAIN CABLE CORPORATION,       :
f/k/a Haveg Industries, Inc.,      :
f/k/a CONTINENTAL DIAMOND          :
FIBRE COMPANY, Individually        :

## POWER OF ATTORNEY

I, *Vaughn Galloway* do hereby appoint the law firm of JACOBS & CRUMPLAR, P.A. as my agent to file proofs of claim and represent me in all bankruptcy proceedings related to my claim for asbestos-related injuries, including but not limited to, the bankruptcy proceedings of the Johns-Manville Co., Continental Products Corporation, Amatex Corporation, and United Asbestos and Rubber Company a/k/a UNARCO.

*Vaughn E. Galloway*

SWORN TO AND SUBSCRIBED before me, a Notary Public for the State of Delaware and County of New Castle, this 23 day of *August* 198 1995

*Sheila Marie Bladdie*
NOTARY PUBLIC

relevant, nor leading to relevant information, nor material to the issues involved in this litigation. For hospitalizations unrelated to his asbestos illness, plaintiff only will provide answers to subparts (a) through (d); subparts (e) and (f) will not be answered. Plaintiff's medical authorizations are attached to this answer for McCarter & English (defense medical coordinator) to obtain medical records pursuant to Del. Super. Ct. Rule 33 and 34 and Standing Order No. 1. In view of the special situation, medical records will be provided to defense medical co-ordinator as soon as they are available.

    (a)   Medical Center of Delaware
            Christiana Hospital
            Christiana, DE;

    (b)   June 12, 1995 to June 15, 1995;

    (c)   Chest tumor removed;

    (d)   Dr. Allen L. Davies
            Monroe Street
            Wilmington, DE;

and

    (a)   Medical Center of Delaware
            Christiana Hospital
            Christiana, DE

    (b)   May 25, 1995;

    (c)   Biopsy of chest tumor;

    (d)   Dr. Allen L. Davies
            Monroe Street
            Wilmington, DE;

and

    (a)   Southern Chester County Medical Center
            Chester, PA;

    (b)   1988;

    (c)   Kidney stone;

    (d)  Dr. Richard Uhlman
        Chester, PA;

and,

    (a)  Delaware Hospital
        Wilmington, DE;

    (b)  1962;

    (c)  Broken arm;

    (d)  Dr. Casselles
        Wilmington, DE.

33. If you have ever suffered any personal injuries or illness other than those involved in this lawsuit, state for each such injury or illness:

(a) The date, place, names of persons involved, and circumstances surrounding each such injury or illness;

(b) The nature and extent of the injuries or illnesses, including all ill effects or disabilities remaining at the time of the last treatment or examination;

(c) The nature and extent of the injuries or illnesses including all ill effects or disabilities remaining at the time of answering these interrogatories;

(d) The names and addresses of all persons who treated or examined you, together with the date of the last treatment or examination; and

(e) The nature, source, and amount of any disability benefits, pensions, or other remunerations for such injuries or illnesses.

ANSWER: None other than those detailed in Interrogatory Nos. 32 and 34.

34. With respect to each doctor who has examined or treated you from the year 1936 to date, state the following:

(a) The name and address of each such doctor;

(b) The complaint that you had which caused you to see the particular doctor;

(c) The type of examination and treatment that each doctor gave you; and

(d) The date or dates on which you were examined and treated by each particular doctor.

ANSWER:    Plaintiff objects to the wholesale invasion of his medical records which have no relationship to his lung problems. This interrogatory delves into material which is neither relevant, nor leading to relevant information, nor material to the issues involved in this litigation.   For doctors rendering treatment unrelated to his asbestos illness, plaintiff only will provide answers to subparts (a), (b) and (d).   See medical records for answer to subpart (c).   Plaintiff's medical authorizations are attached to this answer for McCarter & English (defense medical coordinator) to obtain medical records pursuant to Del. Super. Ct. Rule 33 and 34 and Standing Order No. 1. In view of the special situation, medical records will be provided to defense medical co-ordinator as soon as they are available.

  (a) Dr. Allen L. Davies
     Monroe Street
     Wilmington, DE;

  (b) Lung tumor;

  (c) Biopsy and surgery;

  (d) 1995;

and

  (a) Dr. Clifton Hunt

  (b) Referral by family physician;

  (c) Review of x-rays;

  (d) May, 1995;

and

  (a) Dr. Raymond McLaughlin
     Kennett Square, PA
     (610) 444-4060
     (Family physician);

  (b) Routine ailments;

    (d)  1991 - present;

and

    (a)  Dr. David Biggs
         Limestone Medical Center
         Wilmington, DE;

    (b)  Referral by Dr. Allen Davies;

    (c)  Oncological treatment;

    (d)  1995 - present;

and

    (a)  DuPont - Chestnut Run
         Plant physicians;

    (b)  Regular physical examinations;

    (d)  1960 - 1995
         Approximately every three years;

and

    (a)  Dr. Richard Uhlman
         Chester, PA;

    (b)  Kidney stones;

    (d)  1970s, 1988;

and

    (a)  Dr. Casselles
         Wilmington, DE;

    (b)  Broken arm;

    (d)  1962.

    (Authorization will not be provided to obtain medical
records from plaintiff's expert.  Plaintiff's expert report will
be provided to McCarter & English pursuant to Standing Order No.
1).

    35.  Have you ever had chest x-rays taken?  If so, state the
following for each set of x-rays taken:

        (a)  The name and address of the office or hospital
where the x-rays were taken;

nurse, laboratory technician, etc., involved in any part of such diagnosis;

      (e)   Name, address and telephone number of each and every person, including your relatives, employer, or anyone acting in your behalf to whom such diagnosis was made known, including the date, time and place of such revelation, and the name, address and telephone number of anyone witnessing such revelation;

      (f)   Describe in detail the specific course of treatment or therapy, including any medication, prescribed as a result of such diagnosis, and the name, address and telephone number of each prescribing physician;

      (g)   Name, address and telephone number of plaintiff's employer at time of diagnosis; and

      (h)   If said diagnosis resulted in any prescribed or recommended change in your occupation, behavior, life-style or work habits or conditions, please state:

        (i)      Nature, extent and exact content of such prescription or recommendation;

        (ii)      Plaintiff's response to same and reasons for such response, particularly stating any reasons for failing to comply fully with such prescriptions or recommendations; and

        (iii)      State all facts upon which you rely to support a contention that such pleuritis is related to exposure to asbestos.

ANSWER:   (a)   See answer to Interrogatory No. 45.

    47.   Do you contend that you are suffering from asbestosis?

ANSWER:   Yes.

    48.   If your answer to Interrogatory 47 is in the affirmative, please state:

      (a)   Date and time of such diagnosis;

      (b)   Name, address and telephone number of diagnosing physician and any concurring physicians;

      (c)   Method and information upon which such diagnosis was based;

      (d)   Name, address and telephone number of each and every hospital, medical institution, laboratory, physician, nurse, laboratory technician, etc., involved in any part of such diagnosis;

(e)  Name, address and telephone number of each and every person, including your relatives, employer or anyone acting in your behalf, to whom such diagnosis was made known, including the date, time and place of such revelation, and the name, address and telephone number of anyone witnessing said revelation;

(f)  Describe in detail the specific course of treatment or therapy, including any medication, prescribed as a result of such diagnosis, and the name, address and telephone number of each prescribing physician;

(g)  Name, address and telephone number of plaintiff's employer at the time of diagnosis; and

(h)  If said diagnosis resulted in any prescribed or recommended change in your occupation, behavior, life-style or work habits or conditions, please state:

(i)  Nature, extent and exact content of such prescription or recommendation; and

(ii)  Plaintiff's response to same and reasons for such response, particularly stating any reasons for failing to comply fully with such prescriptions or recommendations.

ANSWER:  Yes.

(a)  Shortly after June 12, 1995;

(b)  Dr. Allen L. Davies, See answer to Interrogatory No. 34;

(c)  Surgical pathology report;

(d)  Medical Center of Delaware, Department of Pathology and Laboratory Medicine;

(e)  Plaintiff's spouse, plaintiff's attorneys;

(f)  Continued medical monitoring;

(g)  DuPont - Chestnut Run; see answer to Interrogatory No. 10;

(h)  Plaintiff has been unable to work and has been on medical leave from DuPont.

(Authorization will not be provided to obtain medical records from plaintiff's expert.  Plaintiff's expert report will