## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.* | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Related Docket Nos. 12817, 12904, 12928 |
| | ) | |

### (CORRECTED)[1] OBJECTION TO MOTION TO AMEND CASE MANAGEMENT ORDER FOR THE ESTIMATION OF ASBESTOS PERSONAL INJURY CLAIMS

Debtors W.R. Grace & Co. and its affiliated companies (collectively, "Grace" or "Debtors"), object to the Motion to Amend Case Management Order for the Estimation of Asbestos Personal Injury Liabilities filed by SimmonsCooper LLC (the "Motion").[2]

The original PI CMO and Questionnaire were approved almost a year ago following nearly nine months of briefing, argument and consideration by the Court. *See* Case Management Order for the Estimation of Asbestos Personal Injury Liabilities [Dkt. No. 9301]. Yet, now, certain asbestos personal injury claimants represented by SimmonsCooper LLC (the "Claimants") argue at this late hour that the estimation process approved by the Court has "no merit" unless the PI CMO is amended to allow each and every of the over 100,000 individual claimants to engage in full-fledged litigation discovery to support their claims. *See* Motion at 3. In other words, Claimants want to bring the estimation proceeding to a grinding halt – opting instead for traditional litigation.

---

[1] Formatting errors have been corrected.

[2] Two other law firms filed joinders to the Motion without any argument. *See* Joinder of Brayton Purcell, LLP in the Motion of SimmonsCooper to Amend Case Management Order for the Estimation of Asbestos Personal Injury Liabilities [Dkt. No. 12904] filed on August 2, 2006; Joinder of Thornton & Naumes, LLP in the Motion of SimmonsCooper to Amend Case Management Order for the Estimation of Asbestos Personal Injury Liabilities [Dkt. No. 12928] filed on August 4, 2006.

But Claimants misunderstand the very purpose of the PI estimation process. Unlike the property damage estimation, the PI estimation is not a method to allow or disallow any claim. So, to the extent Claimants are concerned that their ability to obtain individualized discovery will foreclose their claims, they are wrong. Moreover, the PI Committee is empowered to seek, and has sought, all the discovery its experts need to value the estimation at the level it believes appropriate. Indeed, that is its purpose.

Even worse, the Claimants continue to argue that the Questionnaire is "massive, intrusive, burdensome, and largely irrelevant." Motion at 2. The Court long-ago rejected such arguments in approving the Questionnaire. *See* Tr. of Hr'g at 80 (Jun. 27, 2005) ("I will approve a claim form of some sort … because it may be useful to all parties in the estimation."); Tr. of Hr'g at 61 (Jul. 24, 2006) ("They're to fill out the Questionnaire . . . . This is a bankruptcy case. I don't care what they said in the tort system. I want to know for proof of claim purposes what they're alleging here, and that's what the questionnaire does. So that will not -- I will not go there."). The short shrift the Claimants themselves give to their three-page request for discovery is perhaps the most telling indication of what the Motion really is – the latest, baseless attempt to delay (or even derail) the estimation and avoid fully and properly responding to the Questionnaire. *See* Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Asbestos Personal Injury Questionnaire [Dkt. No. 12823] (detailing the obstructionist tactics of various firms with regard to the Questionnaire). Indeed, the discovery contemplated by the Motion would make the Court's current trial schedule impossible. *See* Amended Case Management Order for the Estimation of Asbestos Personal Injury Liabilities [Dkt. No. 12858] entered on July 24, 2006. The Court should consider the Motion for what it is, and therefore deny it.

**Claimants' Strategic Delay in Requesting Discovery Should Not be Countenanced**

The Claimants do not allege any lack of awareness of the PI CMO.  Claimants were invited to participate in the PI CMO and Questionnaire process from the very beginning.  Various firms representing claimants have filed pleadings regarding the PI CMO.  *See, e.g.*, Motion of Read Morgan & Quinn, Inc. and Environmental Litigation Group, P.C. for Clarification of Case Management Order [Dkt No. 9457].  Moreover, the Questionnaire was served on SimmonsCooper in September 2005 and included the PI CMO as an attachment.  Thus, Claimants were well aware of the estimation process, the Questionnaire, and all that was entailed nearly a year ago.

The Claimants chose not to argue at the time that the estimation process was inherently flawed, as they now appear to do, and that they needed full discovery from the Debtors.  Instead, they waited until after the deadline for responding to the Questionnaire (which was extended multiple times) and after the Debtors stated that they would move to compel complete responses to the Questionnaires.[3]  They should not at this late date be rewarded for their inaction.  *See, e.g.*, *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) ("As a vehicle designed to streamline the flow of litigation through our crowded dockets, we do not take case management orders lightly, and will enforce them."); *Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 46 (1st Cir. 2002) ("To manage a crowded calendar efficiently and effectively, a trial court must

---

[3] Indeed, SimmonsCooper did not fill out the Questionnaires correctly.  *See, e.g.,* Redacted Questionnaire Response of J. P. (attached as Exhibit A).  For example, in addition to improperly objecting and leaving portions blank, SimmonsCooper often referred to discovery responses in the underlying tort litigation.  *Id.*  This Court specifically rejected this practice at the July 24, 2006 omnibus hearing.  *See* Tr. of Hr'g at 61 (Jul. 24, 2006) ("They're to fill out the Questionnaire . . . .  This is a bankruptcy case.  I don't care what they said in the tort system.  I want to know for proof of claim purposes what they're alleging here, and that's what the questionnaire does.  So that will not -- I will not go there.").  Incidentally, when SimmonsCooper provided these discovery responses from the underlying litigation, they did not provide the discovery requests, so the answers have no meaning.  *See* Exhibit A.

take an active role in case management.  Scheduling orders are essential tools in that process –
and a party's disregard of such orders robs them of their utility."); *Rosario-Diaz v. Gonzalez,* 140
F.3d 312, 315 (1st Cir. 1998) (discussing a party's "unflagging duty to comply with clearly
communicated Case Management Orders").

### Claimants' Asserted Right to Discovery is Baseless

Putting aside Claimants' transparent attempts to obstruct the estimation, the foundation of
Claimants' purported basis for seeking to revise the PI CMO is fundamentally flawed.
Claimants' entire argument is based on a bald assertion that they have a right  to discovery
because (1) the "net practical effect" of using the estimate as a cap on asbestos liability "operates
as a de facto disallowance or reduction in the amount recoverable" on claims; and (2) the PI
Committee does not represent individual claimants and, thus, will not "object to the individual
Questionnaires or the merits of the individual claims of the various personal injury claimants."
Motion at 3.  As demonstrated below, this argument lacks any merit.

As an initial matter, the Court has the power to tailor the methods by which the
estimation is conducted, including the manner and method of discovery, pursuant to 11 U.S.C. §
502.[4]  Because estimation is a more streamlined and focused proceeding, designed to address
issues common to significant numbers of claims, the discovery should be equally focused and
streamlined.  Consistent with this approach, (1) in lieu of full-blown discovery of each asbestos
personal injury claimant, the Debtors conducted discovery through the Questionnaires, which
provide all *parties* to the estimation with basic factual information about the pre-petition

---

[4] *See Bittner v. Borne,* 691 F.2d 134, 135 (3d Cir. 1982) ("Congress intended the [estimation
hearing] to be undertaken initially by the bankruptcy judges,  using whatever method is best
suited to the particular contingencies at issue.");  *see also Kool, Mann, Coffee & Co. v. Coffey*,
300 F.3d 340, 356 (3d Cir. 2002) (noting that "there was no requirement that a particular kind
of procedure be employed in estimating the value of [a] claim" and that the Court's chosen
method for conducting the estimation will not be disturbed absent an "abuse of discretion.").

4

litigation claims; and (2) the PI Committee and the FCR propounded numerous discovery requests and interrogatories, and have indicated they will be taking expert and non-expert depositions. The Claimants *are not* parties to the estimation. Allowing each individual claimant to propound discovery in an estimation of aggregate claim values is antithetical to the streamlined nature of an estimation. Indeed, allowing complete individualized discovery would necessitate the Debtors taking deposition discovery of all claimants. This is inconsistent with the Court's position that it does not want 100,000 depositions. *See* Tr. of Hr'g at 80 (Jun. 27, 2005).

Second, although the Claimants themselves recognize that the estimation is of the aggregate value of claims, they assert that because the Debtors seek to use the estimated liability as an aggregate class cap, individual claims are effectively disallowed and/or reduced. *See* Motion at 3. The obvious implication of Claimants' position is that an aggregate class cap transforms the process of estimating aggregate liability into a process of individual claims adjudication. This is just wrong. The Court has reiterated on numerous occasions that the estimation is not – and is in no way intended to be – a claims disallowance process. *See*, *e.g.*, Tr. of Hr'g at 240 (Jul. 19, 2005) ("Nobody is disallowing claims . . . This is an not an allowance process. It's an estimation process."). Further, arguments regarding whether estimation can be used to set an aggregate class cap are appropriately raised during plan confirmation. Accordingly, because adjudication of *individual* claims is not an issue that will be resolved as part of the estimation, individual claimants are not – nor should they be – entitled to discovery related to their *individual* claims as part of the estimation.

Third, the Claimants' alleged *need* for discovery to avoid a low estimate impacting claims in the case of a hard cap is also baseless. The PI Committee represents the interests of the class of asbestos PI claimants in connection with the estimation. *See In re Refco*, 336 B.R. 187,

5

195 (Bankr. S.D.N.Y. 2006) (holding official creditors' committees are "purposely intended to represent the *necessarily different* interests and concerns of the creditors [they] represent") (emphasis added).   The PI Committee has an obvious – and well-demonstrated – interest in valuing the aggregate claims as high as possible.   Claimants have come forward with no evidence that they PI Committee is not competent to obtain the discovery needed for this purpose.   Curiously, if Claimants' proposal is accepted, the resources of the estate will be wasted in full-blown discovery for over 100,000 claimants – and all claimants may get less money.

Fourth, Claimants' assertion that discovery has been one-sided is misleading, at best.[5] Debtors have responded and continue to respond to extensive discovery requests from the PI Committee and the FCR.   Indeed, they have made available to the PI Committee millions of pages of documents, and the PI Committee has copied and coded hundreds of boxes of documents.

Fifth, contrary to the Claimants' insinuations, the Questionnaire is not full litigation discovery.   The Questionnaire seeks basic information regarding the basis for the pre-petition litigation commenced against the Debtors.   Claimants should have had most of this information prior to filing suit.   If a plaintiff lacked such information, then the litigation should not have been filed in the first instance.   *See Weil v. Markowitz*, 108 F.R.D. 113, 116 (D.D.C. 1985) ("Counsel should not be allowed to file a complaint first and thereafter endeavor to develop a cause of action."); *Weathersby ex rel. Estate of Weathersby v. General Motors Corp.*, 2006 WL 1487025, *3 (N.D. Miss. 2006) ("[C]omplaints should not be filed in matters where plaintiffs intend to find out in discovery whether or not, and against whom, they have a cause of action."); *cf. Harold's*

---

[5] *See* Motion at 3 ("It would be unheard of in litigation, even in the context of an estimation proceeding in bankruptcy, that one party to a dispute is allowed to engage in discovery while the opposing party is forbidden to do so.").

*Auto Parts v. Mangliardi*, 889 So.2d 493, 495 (Miss. 2004) (complaint must be dismissed without prejudice where plaintiffs fail to provide, *inter alia*, "the time period and location of exposure."). Indeed, this is precisely the reason that the PI CMO only requires claimants with pre-petition litigation claims to complete the Questionnaire.

Finally, Claimants' argument that the PI Committee will not "object to individual questionnaires" is woefully misguided. The PI Committee acted on behalf of all personal injury claimants in vigorously opposing the Questionnaire in its entirety and the individual questions contained in it, at every turn in these cases.[6] Objections to the Questionnaire at this late date are wholly inappropriate given the fact that the Court approved the Questionnaire. Neither the PI Committee nor any individual claimants can now re-litigate the Court-approved Questionnaire. *See* Tr. of Hr'g at 28 (April 17, 2006) ("I'm not going to hear objections to questions. I've already said that if the Debtor wants to ask those questions, the Debtor can ask those questions."); *id.* at 27 ("[T]o the extent that an objection is to the question that's being asked, I don't expect either a mediator or [the Court] to have to go through that"); *see also Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 815-16 (1988) ("law of the case" doctrine applies when a court makes a decision on a rule of law and the decision then governs the same issues in the later stages of the same litigation); *AL Tech Specialty Corp. v. Allegheny Intern. Credit Corp.*, 104 F.3d 601, 605 (3d Cir. 1997) (refusing to reexamine whether claim for reimbursement was barred under law of the case doctrine where argument had previously been fully and fairly litigated in same case); *In re Ameriserve Food Distribut., Inc.,* 315 B.R. 24, 35 (Bankr. D. Del. 2004) (holding creditor could not reassert defense that had previously been decided upon in

---

[6] *See*, *e.g.*, Objection of the Official Committee of Asbestos Personal Injury Claimants to Debtors' Motion for Entry of an Order Seeking the Estimation of Asbestos Claims and Certain related Relief [Dkt. No. 7314]; Opposition of the Official Committee of Asbestos Personal Injury Claimants to Debtors' Motion to Approve PI CMO and Questionnaire [Dkt. No. 8847].

earlier stage of same case).[7]   Yet, that is what Claimants' motion envisions –turning back the clock to before the Questionnaire and PI CMO were approved.

### Conclusion

Although this Court has already set out a clear course for proceeding to estimation, the Claimants request that the Court take a significant step backwards.  Indeed, Claimants suggest that this Court ignore its own consistent rulings and treat the estimation as essentially an individual claims adjudication process.   Despite the profound significance that allowing discovery by individual claimants would have on the estimation and these Chapter 11 Cases, Claimants provide no justification or support for such a request.  The Claimants' only attempt to support the Motion are two pages of conclusory statements.  This is not surprising because, as demonstrated above, the relief Claimants seek is uns supportable.

Wilmington, Delaware
Dated:  August 4, 2006

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Jonathan P. Friedland
Salvatore Bianca
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000


KIRKLAND & ELLIS LLP
Barbara M. Harding
David Mendelson
Amanda C. Basta
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:     (202) 879-5000
Facsimile:      (202) 879-5200

---

[7] This issue is addressed more fully in the Debtors' Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Asbestos Personal Injury Questionnaire [Dkt. No. 12823].

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

_James E. O'Neill_

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession