# EXHIBIT A

# W. R. Grace
# Asbestos Personal Injury
# Questionnaire





10315607083241
RE:
Simmons Firm, L L C
301 Evans Suite 300
PO Box 559
Wood River IL 62095

000476083241

**PART I: IDENTITY OF INJURED PERSON AND LEGAL COUNSEL**

## a. GENERAL INFORMATION

1. **Name of Claimant:** 

   First                      MI                        Last

   2. **Gender:** ☒ Male ☐ Female

3. **Race (for purposes of evaluating Pulmonary Function Test results):**........ ☐ White/Caucasian

   ☐ African American

   ☐ Other

4. **Last Four Digits of Social Security Number:** _____     5. **Birth Date:**

6. **Mailing Address:**

   Address                     City              State/Province       Zip/Postal Code

7. **Daytime Telephone Number:** ......................................................................

## b. LAWYER'S NAME AND FIRM

1. **Name of Lawyer:** _Robert W. Phillips_

2. **Name of Law Firm With Which Lawyer is Affiliated:** _Simmons Cooper_

3. **Mailing Address of Firm:** _707 Berkshire Blvd, East Alton, IL 62024_

   Address          City          State/Province       Zip/Postal Code

4. **Law Firm's Telephone Number or Lawyer's Direct Line:** ......................... _(618) 259-2222_

   ☐ Check this box if you would like the Debtors to send subsequent material relating to your claim to your lawyer, in lieu of sending such materials to you.

## c. CAUSE OF DEATH (IF APPLICABLE)

1. **Is the injured person living or deceased?** ...................................................... ☒ Living ☐ Deceased

   If deceased, date of death: .................................................... __ / __ / __ __ __ __

2. **If the injured person is deceased, then attach a copy of the death certification to this Questionnaire and complete the following:**

   **Primary Cause of Death (as stated in the Death Certificate):** _____

   **Contributing Cause of Death (as stated in the Death Certificate):** _____

## PART II: ASBESTOS-RELATED CONDITION(S)

Mark the box next to the conditions with which you have been diagnosed and provide all information required in the instructions to this Questionnaire. If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

1. **Please check the box next to the condition being alleged:**

   ☐ Asbestos-Related Lung Cancer        ☐ Mesothelioma

   ☒ Asbestosis                         ☐ Other Cancer (cancer not related to lung cancer or mesothelioma)

   ☐ Other Asbestos Disease              ☐ Clinically Severe Asbestosis

   a. **Mesothelioma:** If alleging Mesothelioma, were you diagnosed with malignant mesothelioma based on the following (check all that apply):

      ☐ diagnosis from a pathologist certified by the American Board of Pathology

      ☐ diagnosis from a second pathologist certified by the American Board of Pathology

      ☐ diagnosis and documentation supporting exposure to Grace asbestos-containing products having a substantial causal role in the development of the condition

      ☐ other (please specify):_____

1

**PART II. ASBESTOS-RELATED CONDITIONS (Continued)**

**b.    Asbestos-Related Lung Cancer:** If alleging Asbestos-Related Lung Cancer, were you diagnosed with primary lung cancer based on the following (check all that apply):

☐ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ diffuse pleural thickening as defined in the International Labour Organization's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the lung cancer

☐ other (please specify):_____

**c.    Other Cancer:**

(i)    If alleging Other Cancer, please mark the box(es) next to the applicable primary cancer(s) being alleged:

☐ colon        ☐ pharyngeal        ☐ esophageal        ☐ laryngeal        ☐ stomach cancer

☐ other, please specify:  _____

(ii)    Were you diagnosed with the above-indicated cancer based on the following (check all that apply):

☐ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the cancer

☐ other (please specify): _____

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

**d.   Clinically Severe Asbestosis:** If alleging Clinically Severe Asbestosis, was your diagnosis based on the following (check all that apply):

☐   diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐   a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐   a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a second B-reader certified by the National Institute for Occupational Safety and Health

☐   asbestosis determined by pathology

☐   a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating total lung capacity less than 65% predicted

☐   a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating forced vital capacity less than 65% predicted and a FEV1/FVC ratio greater than or equal to 65% predicted

☐   a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐   other (please specify): _____

**e.   Asbestosis:** If alleging Asbestosis, was your diagnosis based on the following (check all that apply):

☒   diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☒   a chest x-ray reading conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐   a chest x-ray reading conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a second B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐   asbestosis determined by pathology

☐   a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEV1/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐   a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐   other (please specify): _____

3

f.  **Other Asbestos Disease:** If alleging any asbestos-related injuries, medical diagnoses, and/or conditions other than those above, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ diagnosis determined by pathology

☐ a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading  other than those described above

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEVI/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐ a pulmonary function test other than that discussed above

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the condition

☐ a CT Scan or similar testing

☐ a diagnosis other than those above

☐ other (please specify): _____

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

4

## 2. Information Regarding Diagnosis

Date of Diagnosis: .................................................................................... _11/17/1997_

Diagnosing Doctor's Name: _Jay T. Segarra_

Diagnosing Doctor's Specialty: _____

Diagnosing Doctor's Mailing Address: _See Attached_
<br>Address

City
<br>State/Province                                                    Zip/Postal Code

Diagnosing Doctor's Daytime Telephone Number: ..................................... ( _ _ _ ) _ _ _ - _ _ _ _

With respect to your relationship to the diagnosing doctor, check all applicable boxes:

Was the diagnosing doctor your personal physician? ....................................................................

Was the diagnosing doctor paid for the diagnostic services that he/she performed? .................... ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed*: _____

Did you retain counsel in order to receive any of the services performed by the diagnosing doctor?

Was the diagnosing doctor referred to you by counsel? ........................................................... ☐ Yes ☐ No

Are you aware of any relationship between the diagnosing doctor and your legal counsel? ........... ☐ Yes ☐ No

*If yes, please explain*: _____

Was the diagnosing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the diagnosis? ......................................................................... ☐ Yes ☐ No

Was the diagnosing doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis? ........................................................................................................ ☐ Yes ☐ No

Was the diagnosing doctor provided with your complete occupational, medical and smoking history prior to diagnosis? ............................................................................................................. ☐ Yes ☐ No

Did the diagnosing doctor perform a physical examination? ................................................... ☐ Yes ☐ No

Do you currently use tobacco products? .............................................................................. ☐ Yes ☐ No

Have you ever used tobacco products? ................................................................................ ☐ Yes ☒ No

*If answer to either question is yes, please indicate whether you have regularly used any of the following tobacco products and the dates and frequency with which such products were used:* ☒ Yes ☐ No

☒ Cigarettes      Packs Per Day (half pack = .5) _1_      Start Year _1939_ End Year _1977_

☐ Cigars          Cigars Per Day _____            Start Year _ _ _ _ End Year _ _ _ _

☐ If Other Tobacco Products, please specify (e.g., chewing tobacco): _____
<br>Amount Per Day _____            Start Year _ _ _ _ End Year _ _ _ _

Have you ever been diagnosed with chronic obstructive pulmonary disease ("COPD")? .................. ☐ Yes ☐ No

*If yes, please attach all documents regarding such diagnosis and explain the nature of the diagnosis:*
_____

## Information Regarding Chest X-Ray

**Please check the box next to the applicable location where your chest x-ray was taken (check one):**

☐ Mobile laboratory  ☐ Job site  ☐ Union Hall  ☐ Doctor office  ☐ Hospital  ☐ Other: _____

Address where chest x-ray taken: _____
<br>Address

City
<br>State/Province                                                    Zip/Postal Code

4. **Information Regarding Chest X-Ray Reading**

Date of Reading: 11/17/1997        ILO score: 1/0

Name of Reader: Jay T. Segarra

Reader's Daytime Telephone Number: _____ ( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___

Reader's Mailing Address: See Attached
<span>Address</span>

_____
City                                          State/Province                         Zip/Postal Code

**With respect to your relationship to the reader, check all applicable boxes:**

Was the reader paid for the services that he/she performed.............................................. ☐ Yes  ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the reader? ............... ☐ Yes  ☐ No

Was the reader referred to you by counsel?............................................................... ☐ Yes  ☐ No

Are you aware of any relationship between the reader and your legal counsel? ........................ ☐ Yes  ☐ No

*If yes, please explain:* _____

**Was the reader certified by the National Institute for Occupational Safety and Health at the time of the reading?**
.......... See Attached
...................................................................................................... ☐ Yes  ☐ No

*If the reader is not a certified B-reader, please describe the reader's occupation, specialty, and the method through which the reading was made:* _____

5. **Information Regarding Pulmonary Function Test:** ........................Date of Test: ___ ___ / ___ ___ / ___ ___

List your height in feet and inches when test given: _____ ft _____ inches

List your weight in pounds when test given: .......... See Attached .......................... lbs

Total Lung Capacity (TLC):................................................................._____% of predicted

Forced Vital Capacity (FVC):.............................................................._____% of predicted

FEV1/FVC Ratio:............................................................................_____% of predicted

Name of Doctor Performing Test (if applicable): _____

Doctor's Specialty: _____

Name of Clinician Performing Test (if applicable): _____

Testing Doctor or Clinician's Mailing Address: _____
<span>Address</span>

_____
City                                          State/Province                         Zip/Postal Code

Testing Doctor or Clinician's Daytime Telephone Number: ................ ( ___ ___ ___ ) ___ ___ ___ - ___ ___

Name of Doctor Interpreting Test: _____

Doctor's Specialty: _____

Interpreting Doctor's Mailing Address: _____
<span>Address</span>

_____
City                                          State/Province                         Zip/Postal Code

Interpreting Doctor's Daytime Telephone Number: ................... ( ___ ___ ___ ) ___ ___ ___ - ___ ___

**With respect to your relationship to the doctor or clinician who performed the pulmonary function test check all applicable boxes:**

If the test was performed by a doctor, was the doctor your personal physician? ......................... ☐ Yes ☐ No

Was the testing doctor and/or clinician paid for the services that he/she performed? .................. ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* ._____

Did you retain counsel in order to receive any of the services performed by the testing doctor or clinician?.. ☐ Yes ☐ No

Was the testing doctor or clinician referred to you by counsel?..................................................... ☐ Yes ☐ No

Are you aware of any relationship between either the doctor or clinician and your legal counsel?............. ☐ Yes ☐ No

*If yes, please explain:* _____

**Was the testing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the pulmonary function test?** *See Attached* ................................. ☐ Yes ☐ No

**With respect to your relationship to the doctor interpreting the results of the pulmonary function test check all applicable boxes:**

Was the doctor your personal physician? ..................................................................... ☐ Yes ☐ No

Was the doctor paid for the services that he/she performed? .............................. ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor?........................ ☐ Yes ☐ No

Was the doctor referred to you by counsel? ...................................................... ☐ Yes ☐ No

Are you aware of any relationship between the doctor and your legal counsel? ......................... ☐ Yes ☐ No

*If yes, please explain* _____

**Was the doctor interpreting the pulmonary function test results certified as a pulmonologist or internist by the American Board of Internal Medicine at the time the test results were reviewed?** *See Attached* ☐ Yes ☐ No

**6. Information Regarding Pathology Reports:**

Date of Pathology Report: ...................................................................... __ __ / __ __ / __ __ __ __

Findings: _____

Name of Doctor Issuing Report: _____

Doctor's Specialty: _____

Doctor's Mailing Address: _____
                                Address

_____
City                                 State/Province                 Zip/Postal Code

Doctor's Daytime Telephone Number: ........................................ ( __ __ __ ) __ __ __ - __ __ __ __

**With respect to your relationship to the doctor issuing the pathology report, check all applicable boxes:**

Was the doctor your personal physician? ....................................................................... ☐ Yes ☐ No

Was the doctor paid for the services that he/she performed? .................................................... ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor?........................... ☐ Yes ☐ No

Was the doctor referred to you by counsel? ..................................................................... ☐ Yes ☐ No

Are you aware of any relationship between the doctor and your legal counsel? ......................... ☐ Yes ☐ No

*If yes, please explain:* _____

**Was the doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis?**

.......................................................................................................... ☐ Yes ☐ No

7.  With respect to the condition alleged, have you received medical treatment from a doctor for the condition?

..................................................................................................................................................☐ Yes ☐ No

*If yes, please complete the following:*

Name of Treating Doctor: _____

Treating Doctor's Specialty: _____

Treating Doctor's Mailing Address: _____
                                    Address

_____
City                          State/Province                Zip/Postal Code

Treating Doctor's Daytime Telephone number: ...........................................( __ __ __ ) __ __ __ - __ __ __ __

Was the doctor paid for the services that he/she performed?...............................................................☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor?.....................☐ Yes ☒ No

[REMAINDER OF PAGE INTENTIONALLY BLANK]

## GRACE ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below for each site at which you allege exposure to Grace asbestos-containing products. If you allege exposure at multiple sites, the Court has ordered that you must complete a separate chart for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each job listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Grace asbestos-containing products

(b) A worker who personally removed or cut Grace asbestos-containing products

(c) A worker who personally installed Grace asbestos-containing products

(d) A worker at a site where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(e) A worker in a space where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(f) If other, please specify.

**Site of Exposure:**

Site Name: _____

Site Type: ☐ Residence ☐ Business    Site Owner: _____    Location: _____

Employer During Exposure: _____

Unions of which you were a member during your employment: _____

Job 1 Description:

Job 2 Description:

Job 3 Description:

Job 4 Description:

Job 5 Description:

Job 6 Description:

9

1. Are you asserting an injury caused by exposure to Grace asbestos-containing products through contact/proximity with another injured person? ................................................................................ □ Yes □ No

*If yes, complete questions 2 through 10 of this section for each injured person through which you allege exposure to Grace asbestos-containing products. For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.*

2. Please indicate the following information regarding the other injured person:

   Name of Other Injured Person: _____ Gender: □ Male □ Female

   Last Four Digits of Social Security Number: __ __ __ __     Birth Date: __ __ / __ __ / __ __

3. What is your Relationship to Other Injured Person: ..................................... □ Spouse □ Child □ Other

4. Nature of Other Injured Person's Exposure to Grace Asbestos-Containing Products:

   _____

5. Dates Other Injured Person was Exposed to Grace Asbestos-Containing Products:

   From: __ __ / __ __ / __ __ __ __     To: __ __ / __ __ / __ __ __ __

6. Other Injured Person's Basis for Identification of Asbestos-Containing Product as Grace Product:

   _____

7. Has the Other Injured Person filed a lawsuit related to his/her exposure? ........................... □ Yes □ No
   *If yes, please provide caption, case number, file date, and court name for the lawsuit:*

   Caption: _____

   Case Number: _____ File Date: __ __ / __ __ / __ __ __ __

   Court Name: _____

8. Nature of Your Own Exposure to Grace Asbestos-Containing Product:

   _____

9. Dates of Your Own Exposure to Grace Asbestos-Containing Product:

   From: __ __ / __ __ / __ __ __ __     To: __ __ / __ __ / __ __ __ __

10. Your Basis for Identification of Asbestos-Containing Product as Grace Product:

   _____


**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

Please complete the the chart below for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products. If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate chart for each party.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each product listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Non-Grace asbestos-containing products
(b) A worker who personally removed or cut Non-Grace asbestos-containing products
(c) A worker who personally installed Non-Grace asbestos-containing products
(d) A worker at a site where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(e) A worker in a space where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(f) If other, please specify.

11

**Party Against which Lawsuit or Claim was Filed:**

Site of Exposure 1
Site Name:
Address:
City and State:
Site Owner:

Job 1 Description:
Job 2 Description:
Job 3 Description:

Site of Exposure 2
Site Name:
Address:
City and State:
Site Owner:

Job 1 Description:
Job 2 Description:
Job 3 Description:

Site of Exposure 3
Site Name:
Address:
City and State:
Site Owner:

Job 1 Description:
Job 2 Description:
Job 3 Description:

Other than jobs listed in Part III or V, please complete this Part VI for all of your prior industrial work experience up to and including your current employment. For each job, include your employer, location of employment, and dates of employment. Only include jobs at which you worked for at least one month. Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.

Occupation Code: _____  If Code 59, specify: _____

Industry Code: _____  If Code 118, specify:_____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __      End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
      Address

_____
City                   State/Province         Zip/Postal Code

Occupation Code: _____  If Code 59, specify: _____

Industry Code: _____  If Code 118, specify:_____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __      End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
      Address

_____
City                   State/Province         Zip/Postal Code

Occupation Code: _____  If Code 59, specify: _____

Industry Code: _____  If Code 118, specify:_____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __      End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
      Address

_____
City                   State/Province         Zip/Postal Code

Occupation Code: _____  If Code 59, specify: _____

Industry Code: _____  If Code 118, specify:_____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __      End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
      Address

_____
City                   State/Province         Zip/Postal Code

## a. LITIGATION

1.  Have you ever been a plaintiff in a lawsuit regarding asbestos or silica?..............................☑ Yes ☐ No

    *If yes, please complete the rest of this Part VII(a) for each lawsuit. For your convenience, additional copies of Part VII are attached as Appendix G to this Questionnaire*

2.  Please provide the caption, case number, file date, and court name for the lawsuit you filed:

    Caption:  _____  _____

    Case Number: __  _____  File Date:

    Court Name:  _____  _____

3.  Was Grace a defendant in the lawsuit? ...................................................................☑ Yes ☐ No

4.  Was the lawsuit dismissed against any defendant? ..........................................................☑ Yes ☐ No

    *If yes, please provide the basis for dismissal of the lawsuit against each defendant:*

    _____

    _____

5.  Has a judgment or verdict been entered?.................................................................☐ Yes ☑ No

    *If yes, please indicate verdict amount for each defendant(s):* _____

6.  Was a settlement agreement reached in this lawsuit? .......................................................☐ Yes ☐ No

    *If yes and the settlement was reached on or after April 2, 2001, please indicate the following:*

    a.  Settlement amount for each defendant: _____

    b.  Applicable defendants:_____

    c.  Disease or condition alleged: _____

    d.  Disease or condition settled (if different than disease or condition alleged):_____

7.  Were you deposed in this lawsuit? .......................................................................☐ Yes ☐ No

    *If yes and Grace was not a party in the lawsuit, please attach a copy of your deposition to this Questionnaire*

## b. CLAIMS

1.  Have you ever asserted a claim regarding asbestos and/or silica, including but not limited to a claim against an asbestos trust (other than a formal lawsuit in court)? ........................................☐ Yes ☐ No

    *If yes, please complete the rest of this Part VII(b). If no, please skip to Part VIII.*

2.  Date the claim was submitted:........................................................... __ __ / __ __ / __ __ __ __

3.  Person or entity against whom the claim was submitted: _____ *See attached* _____

4.  Description of claim: _____

5.  Was claim settled? .......................................................................................☐ Yes ☐ No

6.  Please indicate settlement amount: ................................ $_____

7.  Was the claim dismissed or otherwise disallowed or not honored? ......................................☐ Yes ☐ No

    *If yes, provide the basis for dismissal of the claim:* _____

## PART VIII: CLAIMS BY DEPENDENT OR RELATED PERSONS

Name of Dependent or Related Person: _____ Gender: ☐ Male ☐ Female

Last Four Digits of Social Security Number: __ __ __ __    Birth Date: __ __ / __ __ / __ __ __ __

Financially Dependent: ........................................................................................☐ Yes ☐ No

Relationship to Injured Party: ☐ Spouse ☐ Child ☐ Other  If other, please specify _____

Mailing Address: _____
                          Address

_____
City                                     State/Province                        Zip/Postal Code

Daytime Telephone number: ...............................................( __ __ __ ) __ __ __ - __ __ __ __

## PART IX: SUPPORTING DOCUMENTATION

Please use the checklists below to indicate which documents you are submitting with this form.

**Copies:**

☒ Medical records and/or report containing a diagnosis
☐ Lung function test results
☒ Lung function test interpretations
☐ Pathology reports
☐ Supporting documentation of exposure to Grace asbestos-containing products
☐ Supporting documentation of other asbestos exposure

☐ X-rays
☒ X-ray reports/interpretations
☐ CT scans
☐ CT scan reports/interpretations
☐ Depositions from lawsuits indicated in Part VII of this Questionnaire
☐ Death Certification

**Originals:**

☐ Medical records and/or report containing a diagnosis
☐ Lung function test results
☐ Lung function test interpretations
☐ Pathology reports
☐ Supporting documentation of exposure to Grace asbestos-containing products

☐ Supporting documentation of other asbestos exposure
☐ X-rays
☐ X-ray reports/interpretations
☐ CT scans
☐ CT scan reports/interpretations
☐ Death Certification

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation. Please indicate the documents for which you are seeking reimbursement and attach a receipt for such costs:

_____

_____

## PART X: ATTESTATION THAT INFORMATION IS TRUE AND ACCURATE

The information provided in this Questionnaire must be accurate and truthful. This Questionnaire is an official court document that may be used as evidence in any legal proceeding regarding your Claim. The penalty for presenting a fraudulent Questionnaire is a fine of up to $500,000 or imprisonment for up to five years, or both. 18 U.S.C. §§ 152 & 3571.
**TO BE COMPLETED BY THE INJURED PERSON.**

I swear, **under penalty of perjury**, that, to the best of my knowledge, all of the foregoing information contained in this Questionnaire is true, accurate and complete.

Signature: _____  Date: __ __ / __ __ / __ __ __ __

Please Print Name: _____


**TO BE COMPLETED BY THE LEGAL REPRESENTATIVE OF THE INJURED PERSON.**

I swear that, to the best of my knowledge, all of the information contained in this Questionnaire is true, accurate and complete.

Signature: _____  Date: __ __ / __ __ / __ __ __ __

Please Print Name: _____

14



# SLU*Care*
The Health Services Division
of Saint Louis University

Department of Internal Medicine
Division of Pulmonary, Critical Care
and Occupational Medicine
3635 Vista Ave. at Grand Blvd.
PO Box 15250
St. Louis, MO 63110-0250
Phone: 314-577-8856
Fax: 314-577-8859
Clinic: 314-577-6055

February 5, 2001

The Simmons Firm
John Simmons, Attorney at Law
301 Evans Avenue, Suite 559
Wood River, IL  62059

Re:
            Asbestos screen on 1/23/01

Dear Mr. Simmons,

            is a 77-year old gentleman who began his work career as a farmer from 1935-50. He then worked in a sawmill from 1940-50, and then began working at Mexico Refractories from 1950-85. Mexico Refractory became Kaiser Aluminum Chemical Corporation and the National Refractories. His jobs included: transferring bricks to cars as a bricksetter, as a press changer, changing the press which would make a different shape and size of brick, and finally he finished his career as a benchman, who would bring out the new presses from the shop. He believes that he was exposed to asbestos while being around asbestos insulation, which was poorly maintained on pipes and furnaces. Furthermore, he may have had asbestos exposure while working on the machinery that made refractory bricks. He always worked indoors and states that though respiratory protective equipment was available, its use was not required.

He was hospitalized for heart disease in the 1970's. He had no surgery and no diagnosis. He was hospitalized for an appendectomy in the 1950's, and a cholecystectomy in the 1990's. He currently takes no medications. He is able to shovel snow slowly for approximately 5 minutes, and then must sit to rest. He has a 5-year history of chest pain occurring once per week, lasting 10 minutes. It is sharp and he can identify nothing that brings it on, but is relieved by rest. He has daily wheeze over the last 15 years, and a 2-year history of a dry hacking cough.  His father died at the age of 71 of an accident, though he suffered with skin cancer. His mother died at the age of 86 with diabetes and coronary artery disease. One brother suffers with diabetes. His family history is otherwise unremarkable. He began smoking cigarettes at the age of 16 and ceased at the age of 54. He smoked one pack of cigarettes per day. He never regularly used pipe, cigar or chewing tobacco.

On physical exam he is a well-developed, well-nourished Caucasian male in no apparent distress. He is 5 feet 8½ inches tall and weighs 210 pounds.  His blood pressure is 140/90, his pulse is 112, and respirations are 20.  Head, ears, eyes, nose and throat exam reveals his pupils to be equal, round, and reactive to light.  His extraocular muscles are intact and his disks are flat.  He has no hemorrhages or exudates.  Tympanic membranes are cerumen impacted.  The oro- and nasopharynx are within normal limits.  He has no neck vein distention visible and no carotid bruits audible.  He has neither palpable supraclavicular nor cervical lymphadenopathy.  His lungs are clear to percussion.  Crackles are audible in the left base. His heart has a regular rate and rhythm with no murmurs, rubs, or gallops audible.  His abdomen is soft and nontender with normal active bowel sounds.  There are no palpable masses or organomegaly.  Extremities are free of clubbing, cyanosis, and edema.   Pulses are decreased equally throughout both extremities.

Cesar A. Keller, *Division, Director*, George Matuschak, M.D., Francisco Alvarez, M.D., Madhu Bajaj, M.D., Rita Heuertz, Ph.D.
Mary Ellen Kleinhenz, M.D., Susan Marshall, M.D., J. Luis Noronha, M.D., Jill A. Ohar, M.D., Robert O. Webster, Ph.D.
Patricia A. Dettenmeier, M.S.N. (R), Karen Franke, R.N., B.S.N., Peggy Haselhorst, R.N.

Page 2                                                        Re: John Puckett

A chest x-ray dated 11/17/97 has been read by the B-reader as showing small t/s sized irregular pulmonary parenchymal opacities, seen in the lower lung fields bilaterally with a profusion of 1/0. The pleural surfaces reveal circumscribed pleural thickening, B width, extent of 2 on the right and B width, extent of 2 on the left. Pleural plaque was seen en face extent of 2 bilaterally.

Pulmonary function testing dated 11/17/97 reveals an FVC of 3.84 L, which is 92% of predicted. The $FEV_1$ is 2.84 L, which is 89% of predicted.   The $FEV_1$/FVC is 74%.  The $FEF_{25-75}$% is 2.11 L/sec, which is 74% of predicted.  The TLC is 5.95 L, which is 92% of predicted.  The RV is 1.0 L, which is 78% of predicted.  The DLCO is 30.2 ml/min/mmHg, which is 103% of predicted.  It is my impression that this evaluation is normal.

                        has a history of asbestos exposure, and a chest x-ray consistent with asbestosis.  He is additionally at risk for the development of progressive fibrotic interstitial lung disease as well as lung and GI carcinoma.  I have advised him regarding these risks and have suggested that he receive routine medical follow-up as deemed indicated by his local physician. Additionally, 3 stool guaiac cards have been returned and all 3 tested positive for occult blood. In view of the positive stool guaiac testing, I recommend referral for colonoscopy.

Sincerely,

Jill A. Ohar, M.D.
Professor of Internal Medicine
Medical Director of Occupational Medicine
Division of Pulmonary, Critical Care & Occupational Medicine

JAO:pr

cc:     Dr. Justin Jones
        626 Summit Medical Park
        Mexico, MO 65265



**Jay T. Segarra, M.D., FCCP**                    *NIOSH Certified B-Reader*

*Board certified in Internal Medicine, Pulmonary Diseases, & Critical Care*

Office Address: Camellia Place • 2123 Government Street • Ocean Springs, Mississippi 39564
Office Phone/Fax (601) 872-2411

---

ASBESTOS EVALUATION SUMMARY                         November 17, 1997

**HISTORY:**  This is a 74 year old male brick maker exposed to asbestos from 1950 to 1985, who smoked cigarettes daily for 27 years, quitting at age 45.

**CHEST X-RAY:**  PA and lateral views of the chest are reviewed for the presence of and classification of pneumoconiosis according to the ILO (1980) classification.  Film quality is grade 1.  Inspection of the lung parenchyma reveals a diffuse interstitial pattern, consisting of small, irregular linear opacities of size and shape T/S, profusion 1/0 within the lower lung zones bilaterally.  The pleural surfaces demonstrate circumscribed pleural thickening, width B, extent 2 on the right and width B, extent 2 on the left, and circumscribed en face pleural thickening, extent 2 bilaterally.  No infiltrates, effusions or lung masses are present.  The heart size is normal.  The trachea is midline.  The mediastinal structures are unremarkable.  There are no other significant intrathoracic findings.

**PULMONARY FUNCTION TESTING:**  Forced vital capacity (FVC) is  3.84 liters (l.), or 92.0% predicted (pred.).  FEV1 is  2.84 l. ( 89.0% pred.).  FEV1/FVC ratio is  74%.  Inspection of the volume/time curves reveals adequate performance.  TLC is 5.95 liters ( 92% pred.).   RV is  1.00 liters ( 78 % pred.). DLCOsb is 30.20 cc/min./mm Hg. (103% pred.).  Spirometry is within normal limits.  The reduction in total lung capacity demonstrates a slight restrictive defect.  DLCOsb is within normal limits.

**DIAGNOSIS / IMPRESSION:**  The interstitial and pleural changes seen on the chest x-ray and the restrictive abnormalities seen on pulmonary function testing are consistent with a clinical diagnosis of mild asbestosis.

**PROGNOSIS:**  Due to the latency period between occupational exposure and the onset of clinical asbestos-related disease, the subject is at increased risk for the development of bronchogenic carcinoma, mesothelioma and other cancers, as well as for further deterioration in pulmonary function, even in the absence of additional asbestos exposure.  Since these conditions may occur many years after exposure has terminated, continued avoidance of tobacco use, close clinical follow-up and annual pulmonary re-evaluation are strongly recommended.

This report relates only to the diagnosis of asbestos-related diseases, and is not intended to serve as a comprehensive evaluation of all health problems.


Jay T. Segarra, M.D.
JTS/eps

1. Morgan, W. Keith C. and GEF, JBL Asbestos-Related Diseases in OCCUPATIONAL
   LUNG DISEASES, Morgan and Seaton, ed., 3rd Ed., 1995, W. B. Sanders Company,
   Philadelphia.
2. DIAGNOSIS OF NON-MALIGNANT DISEASES RELATED TO ASBESTOS (Official Statement of
   the American Thoracic Society), American Review of Respiratory Disease 1986: 134,
   pp 363-368

# WORKERS DISEASE DETECTION SERVICE, INC.

### 112 North Harvard Avenue, Suite 258, Claremont, CA 91711

Date: **11/17/97**

Name
Age: 74                     Height: 68 in          Weight: 217 lb
Refer: Jay Segarra          Sex: M                 Smoker: X
Technician: LLJ                                    Packs/Day:

### Predicted Values from Miller, Crapo and Morris

## SPIROMETRY

|          |      | Predicted Value | Best Effort | % Pred | Pre #1 | Pre #2 | Pre #3 |
|----------|------|-----------------|-------------|--------|--------|--------|--------|
| FVC      | L    | 4.18            | 3.84        | 92     | 3.64   | 3.73   | 3.84   |
| FEV1     | L    | 3.19            | 2.84        | 89     | 2.67   | 2.70   | 2.84   |
| FEV1/FVC | %    | 77              | 74          | 96     | 73     | 72     | 73     |
| FEF25-75 | L/S  | 2.86            | 2.11        | 74     | 1.92   | 1.88   | 2.11   |
| PEFR     | L/S  | 7.72            | 6.56        | 85     | 7.00   | 6.32   | 6.56   |
| FEF25    | L/S  |                 | 5.56        |        | 5.00   | 5.42   | 5.56   |
| FEF50    | L/S  |                 | 2.37        |        | 2.21   | 2.62   | 2.37   |
| FEF75    | L/S  |                 | .85         |        | .69    | .64    | .85    |
| FET      | Sec  |                 | 14.89       |        | 15.33  | 16.77  | 14.89  |

## LUNG VOLUMES

|        |   | Predicted Value | Best Effort | % Pred | Pre #1 | Pre #2 |
|--------|---|-----------------|-------------|--------|--------|--------|
| SVC    | L | 4.18            | 4.05        | 97     | 4.05   | 4.01   |
| IC     | L | 3.05            | 2.97        | 97     | 2.97   | 2.94   |
| ERV    | L | 1.13            | 1.08        | 96     | 1.08   | 1.08   |
| FRC    | L | 3.56            | 2.98        | 84     | 2.98   | 2.80   |
| TLC    | L | 6.49            | 5.95        | 92     | 5.95   | 5.73   |
| RV     | L | 2.44            | 1.9         | 78     | 1.90   | 1.72   |
| RV/TLC | % | 37              | 32          | 86     | 31     | 29     |

## DIFFUSION

|           |   | Predicted Value | Best Effort | % Pred | Pre #1 | Pre #2 |
|-----------|---|-----------------|-------------|--------|--------|--------|
| DLCO UNC  |   | 29.28           | 30.4        | 104    | 29.58  | 31.21  |
| DLCO CORR |   | 29.28           | 30.23       | 103    | 29.42  | 31.03  |
| VA @BTPS  |   | 5.7             | 4.87        | 85     | 4.74   | 4.99   |
| DL/VA     |   | 5.14            | 6.21        | 121    | 6.20   | 6.21   |

| DLCO Test Constants:   |     |       |       |
|------------------------|-----|-------|-------|
| Hb                     |     | 14.8  |       |
| Valve Deadspace        | (L) |       |       |
| Anatomical D.S         | (L) |       |       |
| BTPS Inspired          |     |       |       |
| Test Variables:        |     |       |       |
| He Inspired            | (%) | 9.83  | 9.86  |
| CO Inspired            | (%) | .271  | .259  |
| O2 Inspired            | (%) |       |       |
| He Expired             | (%) | 6.25  | 6.33  |
| CO Expired             | (%) | .074  | .076  |
| O2 Expired             | (%) | 17.4  | 18.1  |
| Vol Inspired           | (L) | 2.85  | 3.02  |
| Diffusion Time         | (S) | 9.5   | 8.7   |

Page 2

Name:

Sex: M     Date: 11/17/97



**Summary of Client Work History**

| Last: | | First: | | Middle: | |
|---|---|---|---|---|---|

| | | | |
|---|---|---|---|
| SPAM: | . | SPAM Type: | |
| Trade Description: | | Social Security Number: | |
| Years of Exposure: | 01/01/1950    to    01/01/1985 | Date Of Birth: | |
| Asbestos Disease: | Asbestosis | Date Of Death: | |
| Environmental Exposure: | | Diagnosis Date: | 11/17/1997 |
| Spouse: | | | |

| Date Filed | Case Number | Matter Number | Trial Group | Jurisdiction |
|---|---|---|---|---|
| 05/23/2000 | 002-1379 | Asb0100-002763 | #3 - May 2001 - National Refractories - St. Louis - Living | MO -  Saint Louis City |

| Start Date | End Date | Employer | City | State | Job Description |
|---|---|---|---|---|---|
| 1950 | 1985 | National Refractories - Mexico, MO | | | Steelworker |

## a. LITIGATION

1. Have you ever been a plaintiff in a lawsuit regarding asbestos or silica?....................................☐ Yes ☐ No

   *If yes, please complete the rest of this Part VII(a) for each lawsuit.  For your convenience, additional copies of Part VII are attached as Appendix G to this Questionnaire*

2. Please provide the caption, case number, file date, and court name for the lawsuit you filed:

   Caption: _____

   Case Number: _____  File Date: __ __ / __ __ / __ __ __ __

   Court Name: _____

3. Was Grace a defendant in the lawsuit?....................................................................................☐ Yes ☐ No

4. Was the lawsuit dismissed against any defendant?..................................................................☐ Yes ☐ No

   *If yes, please provide the basis for dismissal of the lawsuit against each defendant:*

   _____
   _____
   _____

5. Has a judgment or verdict been entered?.................................................................................☐ Yes ☐ No

   *If yes, please indicate verdict amount for each defendant(s):* _____

6. Was a settlement agreement reached in this lawsuit?..............................................................☐ Yes ☐ No

   *If yes and the settlement was reached on or after April 2, 2001, please indicate the following:*

   a. Settlement amount for each defendant: _____
   b. Applicable defendants: _____
   c. Disease or condition alleged: _____
   d. Disease or condition settled (if different than disease or condition alleged): _____

7. Were you deposed in this lawsuit?.........................................................................................☐ Yes ☐ No

   *If yes and Grace was not a party in the lawsuit, please attach a copy of your deposition to this Questionnaire*

## b. CLAIMS

1. Have you ever asserted a claim regarding asbestos and/or silica, including but not limited to a claim against an asbestos trust (other than a formal lawsuit in court)?......................................................☒ Yes ☐ No

   *If yes, please complete the rest of this Part VII(b).  If no, please skip to Part VIII.*

2. Date the claim was submitted: _____ 03/10/2004

3. Person or entity against whom the claim was submitted: Celotex

4. Description of claim: _____

5. Was claim settled?...............................................................................................................☐ Yes ☐ No

6. Please indicate settlement amount: _____ $_____

7. Was the claim dismissed or otherwise disallowed or not honored?.......................................☐ Yes ☐ No

   *If yes, provide the basis for dismissal of the claim:* _____

**a.** | **LITIGATION**

1. Have you ever been a plaintiff in a lawsuit regarding asbestos or silica?...................... ☐ Yes ☐ No

   *If yes, please complete the rest of this Part VII(a) for each lawsuit. For your convenience, additional copies of Part VII are attached as Appendix G to this Questionnaire*

2. Please provide the caption, case number, file date, and court name for the lawsuit you filed:

   Caption: _____

   Case Number: _____ File Date: __ __ / __ __ / __ __ __ __

   Court Name: _____

3. Was Grace a defendant in the lawsuit? ................................................................. ☐ Yes ☐ No

4. Was the lawsuit dismissed against any defendant? ............................................ ☐ Yes ☐ No

   *If yes, please provide the basis for dismissal of the lawsuit against each defendant:*

   _____
   _____
   _____

5. Has a judgment or verdict been entered?............................................................. ☐ Yes ☐ No

   *If yes, please indicate verdict amount for each defendant(s):* _____

6. Was a settlement agreement reached in this lawsuit? .......................................... ☐ Yes ☐ No

   *If yes and the settlement was reached on or after April 2, 2001, please indicate the following:*

   a. Settlement amount for each defendant: _____
   b. Applicable defendants: _____
   c. Disease or condition alleged: _____
   d. Disease or condition settled (if different than disease or condition alleged): _____

7. Were you deposed in this lawsuit? ..................................................................... ☐ Yes ☐ No

   *If yes and Grace was not a party in the lawsuit, please attach a copy of your deposition to this Questionnaire*

**b.** | **CLAIMS**

1. Have you ever asserted a claim regarding asbestos and/or silica, including but not limited to a claim against an asbestos trust (other than a formal lawsuit in court)? .......................... ☒ Yes ☐ No

   *If yes, please complete the rest of this Part VII(b). If no, please skip to Part VIII.*

2. Date the claim was submitted:................................................. 07 15 2002

3. Person or entity against whom the claim was submitted: H K Porter

4. Description of claim: _____

5. Was claim settled? ............................................................................................. ☐ Yes ☐ No

6. Please indicate settlement amount: ....................................... $_____

7. Was the claim dismissed or otherwise disallowed or not honored? ...................... ☐ Yes ☐ No

   *If yes, provide the basis for dismissal of the claim:* _____

## a.   LITIGATION

1. Have you ever been a plaintiff in a lawsuit regarding asbestos or silica?.................................... ☐ Yes ☐ No

   *If yes, please complete the rest of this Part VII(a) for each lawsuit.   For your convenience, additional copies of Part VII are attached as Appendix G to this Questionnaire*

2. Please provide the caption, case number, file date, and court name for the lawsuit you filed:

   Caption: _____

   Case Number: _____   File Date: __ __ / __ __ / __ __ __ __

   Court Name: _____

3. Was Grace a defendant in the lawsuit? ............................................................ ☐ Yes ☐ No

4. Was the lawsuit dismissed against any defendant? .......................................... ☐ Yes ☐ No

   *If yes, please provide the basis for dismissal of the lawsuit against each defendant:*

   _____

   _____

   _____

5. Has a judgment or verdict been entered?........................................................ ☐ Yes ☐ No

   *If yes, please indicate verdict amount for each defendant(s):* _____

6. Was a settlement agreement reached in this lawsuit? ...................................... ☐ Yes ☐ No

   *If yes and the settlement was reached on or after April 2, 2001, please indicate the following:*

   a. Settlement amount for each defendant: _____

   b. Applicable defendants:_____

   c. Disease or condition alleged: _____

   d. Disease or condition settled (if different than disease or condition alleged):_____

7. Were you deposed in this lawsuit? ................................................................ ☐ Yes ☐ No

   *If yes and Grace was not a party in the lawsuit, please attach a copy of your deposition to this Questionnaire.*

## b.   CLAIMS

1. Have you ever asserted a claim regarding asbestos and/or silica, including but not limited to a claim against an asbestos trust (other than a formal lawsuit in court)? ........................................ ☒ Yes ☐ No

   *If yes, please complete the rest of this Part VII(b).  If no, please skip to Part VIII.*

2. Date the claim was submitted:.......................................................... 08/14/2001

3. Person or entity against whom the claim was submitted: Johns Manville

4. Description of claim: _____

5. Was claim settled? .................................................................... ☐ Yes ☐ No

6. Please indicate settlement amount: ................................... $_____

7. Was the claim dismissed or otherwise disallowed or not honored? .................. ☐ Yes ☐ No

   *If yes, provide the basis for dismissal of the claim:* _____

**a.   LITIGATION**

1.   Have you ever been a plaintiff in a lawsuit regarding asbestos or silica? ............................... ☐ Yes ☐ No

*If yes, please complete the rest of this Part VII(a) for each lawsuit.   For your convenience, additional copies of Part VII are attached as Appendix G to this Questionnaire*

2.   Please provide the caption, case number, file date, and court name for the lawsuit you filed:

Caption: _____

Case Number: _____   File Date: __ __ / __ __ / __ __ __ __

Court Name: _____

3.   Was Grace a defendant in the lawsuit? ............................................................................. ☐ Yes ☐ No

4.   Was the lawsuit dismissed against any defendant? ............................................................ ☐ Yes ☐ No

*If yes, please provide the basis for dismissal of the lawsuit against each defendant:*

_____

_____

5.   Has a judgment or verdict been entered? ........................................................................... ☐ Yes ☐ No

*If yes, please indicate verdict amount for each defendant(s):* _____

6.   Was a settlement agreement reached in this lawsuit? ......................................................... ☐ Yes ☐ No

*If yes and the settlement was reached on or after April 2, 2001, please indicate the following:*

a.   Settlement amount for each defendant: _____

b.   Applicable defendants: _____

c.   Disease or condition alleged: _____

d.   Disease or condition settled (if different than disease or condition alleged): _____

7.   Were you deposed in this lawsuit? ..................................................................................... ☐ Yes ☐ No

*If yes and Grace was not a party in the lawsuit, please attach a copy of your deposition to this Questionnaire.*

**b.   CLAIMS**

1.   Have you ever asserted a claim regarding asbestos and/or silica, including but not limited to a claim against an asbestos trust (other than a formal lawsuit in court)? ........................................... ☒ Yes ☐ No

*If yes, please complete the rest of this Part VII(b).  If no, please skip to Part VIII.*

2.   Date the claim was submitted: ...................................................... 02/26/2003

3.   Person or entity against whom the claim was submitted: UNR _____

4.   Description of claim: _____

5.   Was claim settled? ............................................................................................................ ☐ Yes ☐ No

6.   Please indicate settlement amount: _____ $ _____

7.   Was the claim dismissed or otherwise disallowed or not honored? ..................................... ☐ Yes ☐ No

*If yes, provide the basis for dismissal of the claim:* _____

13

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | } | Chapter 11 |
| | } | |
| W.R. GRACE & CO., et al | } | Case No. 01-1139(JKF) |
| | } | (Jointly Administered) |
| Debtors. | } | |

## CLAIMANT'S OBJECTIONS AND RESPONSES TO THE
## W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE

    Claimant[1],             , by and through his counsel, SimmonsCooper LLC, submits the following objections and responses to the "W.R. Grace Asbestos Personal Injury Questionnaire" ("Questionnaire"). In order to maintain the integrity of the formatting on Debtor's Questionnaire, Claimant has set out all of his/her general and specific objections in the following separate sections of this response and hereby incorporates each of these objections into Claimant's Questionnaire responses by reference herein.

## CLAIMANT'S GENERAL OBJECTIONS TO THE W.R. GRACE ASBESTOS
## PERSONAL INJURY QUESTIONNAIRE

    Claimant hereby files these objections in response to the Questionnaire propounded by W.R. Grace.

1.    Claimant objects to the Questionnaire and its Instructions to the extent that they impose discovery obligations beyond those of the Federal Rules of Bankruptcy Procedure and/or the rules of civil procedure in the state where Claimant filed an asbestos personal injury lawsuit. Claimant will respond to the discovery Questionnaire in accordance with those rules. Claimant objects to the Instructions as they make document requests that are overly broad, harassing, and not reasonably calculated to lead to the discovery of admissible evidence. Claimant contends that the burden and expense of responding to Debtor's Questionnaire in the format requested by Debtor outweighs its likely benefit.

2.    Claimant objects to the Questionnaire and its Instructions to the extent that they seek information or identification of documents that are attorney work product, subject to the attorney-client or consulting expert privileges, or are otherwise not discoverable under the Federal Rules of Bankruptcy Procedure or the rules of civil procedure in the state where Claimant filed an asbestos personal injury lawsuit. Claimant further objects to the Questionnaire and its Instructions to the extent it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to

---

[1]    Throughout these Objections and Responses, the "Claimant" means the person identified in the Questionnaire Part I, Subsection a, whether living or deceased, who has or had an alleged asbestos-related disease and who filed an asbestos-related lawsuit either directly or through his/her Estate.

be called as a witness at trial. Inadvertent disclosure of any such information or documents shall not constitute waiver of any privilege.

3.      By providing responses to the Questionnaire, the claimant does not concede that the information provided is discoverable, relevant, or admissible. All responses are provided subject to the objections set forth herein. Each claimant reserves the right to challenge further discovery into the subject matter of the Questionnaire.

4.      Claimant objects to any request in the Questionnaire that seeks any information that is not in the Claimant's control, custody, or possession; is already in the control, custody or possession of the Debtor; or is obtainable with equal or greater facility by the Debtor. The answers to the majority of the questions in Debtor's Questionnaire may be derived or ascertained from interrogatory responses and documents produced in connection with Claimant's asbestos personal injury lawsuit to which Debtor was a party prior to filing for bankruptcy ("Claimant's Asbestos Lawsuit"). Because the burden of deriving or ascertaining the answer is substantially the same for Debtor as for Claimant, Claimant has specified in Claimant's Questionnaire response the document from which the answer may be derived as permitted by Rule 33(d) of the Federal Rules of Civil Procedure as incorporated by Rule 7033 of the Federal Rules of Bankruptcy Procedure.

5.      In response to this Questionnaire, Claimant objects to the extent that the questions are vague, ambiguous and premature. Moreover, Claimant objects to this Questionnaire to the extent that the scope and content of the information sought is unreasonably cumulative and duplicative.

6.      Claimant objects to this Questionnaire to the extent it requires Claimant to compile documents or information from sources not presently available to Claimants, including documents created or compiled by third parties. Claimant objects to the Questionnaire to the extent it purports to require Claimant to gather and summarize information contained in voluminous papers that are already matters of public record.

7.      Claimant objects to this Questionnaire to the extent that the questions and their discreet sub-parts exceed twenty-five (25) in number.

8.      By submitting this response to the Questionnaire, Claimant does not intend to, and hereby does not, submit to the jurisdiction of the United States District Court for the District of Delaware, to the United States Bankruptcy Court for the District of Delaware, or to any other court. Claimant reserves (i) all objections to jurisdiction and/or venue, (ii) all protections afforded under Federal Rule of Civil Procedure 45 and Federal Bankruptcy Rule of Procedure 9016, and (iii) the right to jury trial afforded under 28 U.S.C. § 157(b)(5).

## CLAIMANT'S SPECIFIC OBJECTIONS TO THE W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE

**INSTRUCTIONS**

1.      Claimant objects to Instruction A.1 to the extent that it purports to include claims under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement or indemnity on the ground that it is overly broad and requests information that is not relevant to the subject matter of the estimation proceeding.

2.      Claimant objects to Instruction C in its entirety and Instruction J regarding medical supporting documentation on the ground that it is vague, ambiguous and exceeds the scope of discovery in that it seeks information and documents from experts that is not discoverable and is subject to the work product and consulting expert privileges. Claimant further objects to the portion of the instruction requiring claimant to "complete a separate Part II for each initial diagnosis and any previous or subsequent diagnosis or diagnostic tests that change or conflict with the initial diagnosis", on the ground that the burden outweighs its likely benefit. Claimant further objects to the instruction to attach **all** x-ray readings and reports and **all** pulmonary function test ("PFT") results on the ground that it is overly broad and ambiguous. Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. Without limiting the foregoing, Claimant objects to the following provisions of the Discovery Questionnaire as violative of Fed. R. Civ. P. 26(b)(4)(B):

    (a).    Claimant objects to Section C of the Instructions to the extent that it requests the completion of Part II of the Discovery Questionnaire "if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors."

    (b).    Claimant objects to Section C of the Instructions to the extent that it requests the production of "any and all documents" that "support or conflict with your diagnosis."

    (c).    Claimant objects to Section C of the Instructions to the extent that it requests the production of "all x-ray readings and reports."

    (d).    Claimant objects to Section C of the Instructions to the extent that it requests the production of "all pulmonary function test results, including the raw data and all spirometric tracings, on which the results are based."

    (e).    Claimant objects to Section J of the Instructions to the extent that it requests the production of "any and all documents" that "support or conflict with your diagnosis."

    (f).    Claimant objects to Part II of the Discovery Questionnaire to the extent that it requests disclosure of "diagnoses and diagnostic tests" by "multiple doctors" concerning "previous or subsequent diagnoses or diagnostic tests that change or conflict with the original diagnoses." Claimant urges this objection with regard to all "conditions" for which disclosure is requested.

Subject to the foregoing, Claimant will attach any x-rays, B-reads, pulmonary function tests or pathology reports considered by Claimant's medical expert in forming his/her opinion in connection with Claimant's Asbestos Lawsuit.

3. Claimant objects to Instruction D to the extent that it requests Claimant to "attach copies of any and all documents establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the disease" on the ground that it is ambiguous and exceeds the scope of discovery in that it requests documents that are subject to the work product privilege. Further, Claimant has been barred by the Bankruptcy Code Section 362 stay from pursuing discovery against Debtors.

## PART I: IDENTITY OF INJURED PERSONS AND LEGAL COUNSEL

### Subsection (a)(7) - Daytime Telephone Number of client

Claimant objects to this inquiry on the ground that it is neither relevant nor likely to lead to the discovery of admissible evidence. Claimant is represented by counsel, as reflected herein, and may only be contacted through counsel.

## PART II: ASBESTOS-RELATED CONDITION(S)

1. **General Objections.** Claimant objects to Part II of the Questionnaire in its entirety on the ground that it exceeds the scope of discovery in that it seeks information not relevant to the estimation proceeding, information that is privileged, and information from experts that is non-discoverable and is subject to the consulting expert and work product privileges. Additionally, the information sought may be derived from the Claimant's discoverable medical records, which are attached to the Questionnaire. Claimant further objects on the ground that the information requested by this question and its sub-parts is equally available to the Debtor in that it may be derived from Claimant's discoverable medical reports attached to the Questionnaire. Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of any privileged communication between Claimant, and/or a representative of Claimant, and any attorney for Claimant, and/or a representative of any attorney for Claimant. In addition, pursuant to Federal Rule of Civil Procedure 26(b)(3), Claimant objects to the Discovery Questionnaire to the extent that it seeks disclosure of the work product of any attorney for Claimant, including but not limited to the mental impressions, conclusions, opinions or legal theories of any attorney or other representative of Claimant.

2. **Subsection 1(a)-(f) - Condition Being Alleged.** Claimant objects to this question and each of its subparts (a-f) on the ground that it exceeds the scope of discovery in that it seeks information not relevant to the estimation proceeding, and information from experts that is non-discoverable and is subject to the consulting expert and work product privileges. Claimant further objects on the ground that the information requested by this question and its sub-parts is equally available to the Debtor in that it may be derived from the claimant's discoverable medical reports attached to the Questionnaire. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

3.     **Subsection 2 - Information Regarding Diagnosis.**

a.     Claimant objects to Part II, Subsection 2 on the ground that it exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, seeks information from experts that is non-discoverable, and seeks information that is subject to the consulting expert, work product and attorney-client privileges. Claimant further objects to this question as it is not reasonable and necessary to this proceeding and is harassing. Claimant further objects to this question to the extent that it purports to require Claimant to gather and summarize information already contained in documents provided with Claimant's Questionnaire answers, and is, therefore, obtainable with equal or greater facility by the Debtors. Claimant's diagnosis of an asbestos-related condition may be based on one or more diagnostic test(s), pathology report(s) or physical examination(s). Therefore, asking Claimant to state a "date of diagnosis" is vague and ambiguous. Subject to and without waiving the foregoing, in response to Part II, Subsection 2, Claimant has provided the date of the medical report prepared by the medical doctor designated by Claimant in Claimant's Asbestos Lawsuit to provide expert medical opinions regarding Claimant's asbestos-related disease as needed to establish the elements of Claimant's claim under state law and has answered the questions regarding such doctor, if such information was readily available. Claimant has attached to this Questionnaire a copy of such expert's report along with any available x-ray readings, pulmonary function test reports ("PFT") and/or pathology reports considered by Claimant's medical expert in forming his/her opinion in connection with Claimant's Asbestos Lawsuit. In addition to specifying and attaching a copy of the records from which the answer to Part II, subsection 2 may be derived or ascertained and without waiving Claimant's right to do so pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Claimant has set out in the Questionnaire response the information that is contained in the medical reports and  that was readily available to Claimant's attorney.

b.     Claimant further objects to the following questions in Part II, Subsection 2 regarding Claimant's relationship to the diagnosing doctor on the ground that these questions are violative of the attorney-client communication and/or attorney work product privileges, are harassing and seek information that is not relevant to the proceeding. Claimant has additional, specific objections for the questions noted below.

With respect to your relationship to the diagnosing doctor, check all applicable boxes:

Was the diagnosing doctor your personal physician?    ☐    Yes    ☐    No
        Further, Claimant specifically objects to this question on the ground that it is vague and
        ambiguous.

Was the diagnosing doctor paid for the diagnostic services that he/she performed? ☐    Yes    ☐    No
*If yes, please indicate who paid for the services performed:*

Did you retain counsel in order to receive any of the services performed by the diagnosing doctor? ☐ Yes ☐ No
        Further, Claimant specifically objects to this question on the ground that it is violative of the
        attorney-client communication and/or attorney work product privileges, is misleading and
        cannot be fairly or completely answered with a "yes" or "no." Claimant retained counsel in
        order to determine whether he/she had an asbestos-related claim. As part of that analysis,
        Claimant's counsel referred Claimant to and/or forwarded a copy of Claimant's medical records
        to a medical doctor qualified to give opinions regarding asbestos-related disease.

Was the diagnosing doctor referred to you by counsel?    ☐    Yes    ☐    No
        Further, Claimant objects to this question on the ground that it is violative of the attorney-client
        communication and/or attorney work product privileges. Claimant objects to this question since
        "referred to you" is vague and ambiguous; therefore, the question cannot be answered with
        either a "yes" or a "no." The doctor was retained by Claimant through Claimant's counsel to
        provide medical opinions in Claimant's Asbestos Lawsuit as needed to establish the
        elements of Claimant's claim under state law.

Are you aware of any relationship between the diagnosing doctor and your legal counsel? ☐ Yes ☐ No
        Further, Claimant objects to this question on the ground that it is violative of the attorney-client
        communication and/or attorney work product privileges. Claimant objects to this question since
        "relationship" is vague and ambiguous; therefore, the question cannot be answered with either a
        "yes" or a "no." The doctor was retained by Claimant through Claimant's counsel to provide
        expert medical opinions in Claimant's Asbestos Lawsuit as needed to establish the elements of
        Claimant's claim under state law.

*If yes, please explain:*

Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and documents attached hereto.

4.    **Subsection 3 - Information Regarding Chest X-Ray (Location of X-Ray)**

Claimant objects to Part II, Subsection 3 on the ground that it is harassing, and exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, seeks information from experts that is non-discoverable, and seeks information that is subject to the consulting expert and work product privileges. Claimant further objects to this question on the ground that it is vague and ambiguous in that Claimant may have had multiple chest x-rays taken that do not change or conflict with Claimant's initial diagnosis of an asbestos-related condition and it would be duplicative, unduly burdensome and harassing to require Claimant to complete a separate Part II for each chest x-ray.

Subject to and without waiving the foregoing, please refer to Claimant's deposition, if available, and any medical records attached hereto.

5.    **Subsection 4 - Information Regarding Chest X-Ray Reading (Results of X-Ray)**

a.    Claimant objects to Part II, Subsection 4 on the ground that it exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, information from experts that is non-discoverable, and information that is subject to the consulting expert, work product and attorney-client privileges. Claimant further objects to this question as it is not reasonable and necessary to this proceeding and is harassing. Additionally, Claimant objects to this question on the ground that it is duplicative of other questions herein, and thus is unduly burdensome. Claimant objects to this question on the ground that it is vague and ambiguous in that Claimant may have had multiple chest x-rays taken that do not change or conflict with Claimant's initial diagnosis of an asbestos-related condition and it would be duplicative, unduly burdensome and harassing to require Claimant to complete a separate Part II for each chest x-ray. Subject to and without waiving the foregoing, in response to Part II, Subsection 4, Claimant has provided information regarding Claimant's certified B-reader report considered by Claimant's medical expert in forming his/her opinion in connection with Claimant's Asbestos Lawsuit. Claimant has set out in the Questionnaire response the information relating to Claimant's certified B-reader report that was readily available to Claimant's attorney.

b.    Claimant objects to Part II, Subsection 4 of the Discovery Questionnaire as violative of the attorney-client communication and/or attorney work product privileges to the extent that it asks: "if Claimant retained counsel in order to receive any of the services performed by the reader;" if "the reader was referred to you by counsel"; and if Claimant is "aware of any relationship between the reader and your legal counsel". Claimant further objects to the following questions in Part II, Subsection 4 regarding Claimant's relationship to the reader on the ground that these questions are harassing and seek information that is not relevant to the proceeding. Claimant has additional, specific objections for the questions noted below.

With respect to your relationship to the reader, check all applicable boxes:

Was the reader paid for the diagnostic services that he/she performed?　☐　Yes　☐　No

*If yes, please indicate who paid for the services performed:*

Did you retain counsel in order to receive any of the services performed by the reader?　☐　Yes　☐　No

　　　**Further, Claimant specifically objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges, is misleading and cannot be fairly or completely answered with a "yes" or "no." Claimant retained counsel in order to determine whether he/she had an asbestos-related claim. As part of that analysis, Claimant's counsel referred Claimant to and/or forwarded a copy of Claimant's x-ray to a medical doctor qualified to give opinions regarding asbestos-related disease.**

Was the reader referred to you by counsel?　☐　Yes　☐　No

　　　**Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges. Claimant objects to this question since "referred to you" is vague and ambiguous; therefore, the question cannot be answered with either a "yes" or a "no." The doctor was retained by Claimant through Claimant's counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit as needed to establish the elements of Claimant's claim under state law.**

Are you aware of any relationship between the reader and your legal counsel?　☐　Yes　☐　No

　　　**Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges. Claimant objects to this question since "relationship" is vague and ambiguous; therefore, the question cannot be answered with either a "yes" or a "no." The doctor was retained by Claimant through Claimant's counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit as needed to establish the elements of Claimant's claim under state law.**

*If yes, please explain:*

　　　Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and documents attached hereto.

**6.　　Subsection 5 - Information Regarding Pulmonary Function Test**

　　a.　　Claimant objects to Part II, Subsection 5 on the ground that it exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, that is non-discoverable, and that is subject to the consulting expert, work product and attorney-client privileges. Claimant further objects to this question as it is not reasonable and necessary to this proceeding and is harassing. Additionally, Claimant objects to this question to the extent that it purports to require Claimant to gather and summarize information contained in documents already provided herewith, and is thus obtainable with equal or greater facility by the Debtor. Subject to and without waiving the foregoing, in response to Part II, Subsection 5, Claimant has provided information regarding Claimant's pulmonary function test ("PFT") considered by Claimant's medical expert in forming his/her opinion in connection with Claimant's Asbestos Lawsuit. Claimant has set out in the Questionnaire response the information relating to Claimant's PFT report that was readily available to Claimant's counsel.

　　b.　　Claimant objects to Part II, subsection 5 of the Discovery Questionnaire as violative of the attorney-client communication and/or attorney work product privileges to the extent that it asks: "if Claimant retained counsel in order to

receive any of the services performed by the testing doctor or clinician;" if "the testing doctor or clinician was referred to you by counsel"; and if Claimant is "aware of any relationship between the testing doctor or clinician and your legal counsel".  Claimant further objects to the following questions in Part II, Subsection 5 regarding Claimant's relationship to the doctor or clinician who performed the pulmonary function test on the ground that these questions are harassing and seek information that is not relevant to the proceeding.  Claimant has additional, specific objections for the questions noted below.

---

**With respect to your relationship to the doctor or clinician who performed the pulmonary function test, check all applicable boxes:**

If the test was performed by a doctor, was the doctor your personal physician?   ☐ Yes   ☐   No
      **Further, Claimant specifically objects to this question on the ground that it is vague and ambiguous.**

Was the testing doctor and/or clinician paid for the diagnostic services that he/she performed? ☐   Yes ☐ No
      *If yes, please indicate who paid for the services performed:*

Did you retain counsel in order to receive any of the services performed by the testing doctor or clinician? ☐ Yes ☐   No
      **Further, Claimant specifically objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges, is misleading and cannot be fairly or completely answered with a "yes" or "no." Claimant retained counsel in order to determine whether he/she had an asbestos-related claim.  As part of that analysis, Claimant's counsel referred Claimant to a doctor or clinician qualified to perform a pulmonary function test.**

Was the testing doctor or clinician referred to you by counsel? ☐      Yes      ☐      No
      **Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges.  Claimant objects to this question since "referred to you" is vague and ambiguous; therefore, the question cannot be answered with either a "yes" or a "no."  The doctor was retained by Claimant through Claimant's counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit as needed to establish the elements of Claimant's claim under state law.**

Are you aware of any relationship between either the doctor or clinician and your legal counsel? ☐ Yes ☐ No
      **Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges.  Claimant objects to this question since "relationship" is vague and ambiguous; therefore, the question cannot be answered with either a "yes" or a "no."  The doctor was retained by Claimant through Claimant's counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit as needed to establish the elements of Claimant's claim under state law.**
      *If yes, please explain:*

---

c.      Claimant objects to the following questions in Part II, Subsection 5 regarding Claimant's relationship to the doctor interpreting the results of the pulmonary function test on the ground that these questions are violative of the attorney-client communication and/or attorney work product privileges, harassing and seek information that is not relevant to the proceeding.  Claimant has additional, specific objections for the questions noted below.

With respect to your relationship to the doctor interpreting the results of the pulmonary function test, check all applicable boxes:

Was the doctor your personal physician?  ☐ Yes  ☐ No

    Further, Claimant specifically objects to this question on the ground that it is vague and ambiguous.

Was the doctor paid for the services that he/she performed?  ☐ Yes  ☐ No

    *If yes, please indicate who paid for the services performed:*

Did you retain counsel in order to receive any of the services performed by the doctor?  ☐ Yes  ☐ No

    Further, Claimant specifically objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges, is misleading and cannot be fairly or completely answered with a "yes" or "no." Claimant retained counsel in order to determine whether he/she had an asbestos-related claim. As part of that analysis, Claimant's counsel referred Claimant to a medical doctor qualified to interpret the results of Claimant's pulmonary function test.

Was the doctor referred to you by counsel?  ☐ Yes  ☐ No

    Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges. Claimant objects to this question since "referred to you" is vague and ambiguous; therefore, the question cannot be answered with either a "yes" or a "no." The doctor was retained by Claimant through Claimant's counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit as needed to establish the elements of Claimant's claim under state law.

Are you aware of any relationship between the doctor and your legal counsel?  ☐ Yes  ☐ No

    Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges. Claimant objects to this question since "relationship" is vague and ambiguous; therefore, the question cannot be answered with either a "yes" or a "no." The doctor was retained by Claimant through Claimant's counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit as needed to establish the elements of Claimant's claim under state law.

    *If yes, please explain:*

Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and documents attached hereto.

7.    **Subsection 6 - Information Regarding Pathology Reports**

    a.    Claimant objects to Part II, Subsection 6 on the ground that it exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, that is non-discoverable, and that is subject to the consulting expert, work product and attorney-client privileges. Claimant further objects to this question as it is not reasonable and necessary to this proceeding and is harassing. Claimant further objects to this question to the extent that it purports to require Claimant to gather and summarize information contained in documents already provided herewith, and is thus obtainable with equal or greater facility by the Debtor. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and documents attached hereto.

    b.    Claimant objects to Part II, Subsection 6 of the Discovery Questionnaire as violative of the attorney-client communication and/or attorney work product privileges to the extent that it asks: "if Claimant retained counsel in order to receive any of the services performed by the doctor;" if "the doctor was referred to

you by counsel"; and if Claimant is "aware of any relationship between the doctor and your legal counsel". Claimant further objects to the following questions in Part II, Subsection 6 regarding Claimant's relationship to the doctor issuing the pathology report on the ground that these questions are harassing and seek information that is not relevant to the proceeding. Claimant has additional, specific objections for the questions noted below.

---

With respect to your relationship to the doctor issuing the pathology report, check all applicable boxes:

Was the doctor your personal physician?                    ☐    Yes    ☐    No
    **Further, Claimant specifically objects to this question on the ground that it is vague and ambiguous.**

Was the doctor paid for the services that he/she performed?                ☐    Yes    ☐    No
    *If yes, please indicate who paid for the services performed:*

Did you retain counsel in order to receive any of the services performed by the doctor?  ☐    Yes    ☐    No
    **Further, Claimant specifically objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges, is misleading and cannot be fairly or completely answered with a "yes" or "no." Claimant retained counsel in order to determine whether he/she had an asbestos-related claim.**

Was the doctor referred to you by counsel?            ☐    Yes    ☐    No
    **Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges. Claimant objects to this question since "referred to you" is vague and ambiguous; therefore, the question cannot be answered with either a "yes" or a "no." The doctor was retained by Claimant through Claimant's counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit as needed to establish the elements of Claimant's claim under state law.**

Are you aware of any relationship between the doctor and your legal counsel? ☐ Yes ☐ No
    **Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges. Claimant objects to this question since "relationship" is vague and ambiguous; therefore, the question cannot be answered with either a "yes" or a "no." The doctor was retained by Claimant through Claimant's counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit as needed to establish the elements of Claimant's claim under state law.**
    *If yes, please explain:*

---

Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and documents attached hereto.

8.    **Subsection 7 - Medical Treatment From Doctor for Condition Alleged**

Claimant objects to this question on the ground that it exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, that is non-discoverable, and that is subject to the consulting expert, work product and attorney-client privileges. Claimant further objects to this question as it is harassing. Additionally, Claimant objects to Part II, Subsection 7 of the Discovery Questionnaire to the extent that it asks if Claimant "retained counsel in order to receive any of the services performed by the doctor," on the ground that it is violative of the attorney-client communication and/or attorney work product privileges, is misleading and cannot be fairly or completely answered with a "yes" or "no." Claimant retained counsel in order to determine whether he/she had an asbestos-related claim.

Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and documents attached thereto.

## PART III:   DIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

Claimant objects to Part III in its entirety on the ground that it is onerous, unduly burdensome and harassing in that it would require a great amount of time, labor and expense to create a chart of exposure to Debtor's products in the format requested by Debtor. Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor. Subject to and without waiving the foregoing objections, the information responsive to this request may be derived from the documents attached to Claimant's Questionnaire, including, where available, Claimant's Work History Sheet ("WHS"), Claimant's Answers to Interrogatories filed in connection with Claimant's Asbestos Lawsuit (referred to in the Questionnaire response as "interrogatory responses") and Claimant's or Claimant's coworker's deposition. Further, Claimant has been barred by the Bankruptcy Code Section 362 stay from pursuing discovery against Debtors, so Claimant is unable to properly ascertain the information necessary to fully answer this section of the Questionnaire.

## PART IV:   INDIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

1.    Claimant objects to Part IV, question 1 to the extent that it is vague and ambiguous with regard to the use of the terms "contact/proximity" and "injured person". Claimant further objects to this question on the ground that it implicitly asserts unproven conclusions as established facts. Specifically, Claimant may have been injured by exposure to Grace products as a result of contact or proximity to another person, but not necessarily an "injured" person. To the best of Claimant's ability, Claimant understands the question to ask whether Claimant's injury is caused solely by contact/proximity with another person. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

2.    Claimant objects to Part IV, question 2 to the extent that it is vague and ambiguous with regard to the use of the undefined term "Other Injured Person". Specifically, there may not be an "Other Injured Person" responsible for Claimant's injuries. Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Additionally, Claimant objects to this question as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

3.    Claimant objects to Part IV, question 3 to the extent that it is vague and ambiguous with regard to the use of the undefined term "Other Injured Person". Specifically, there may

not be an "Other Injured Person" responsible for Claimant's injuries. Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Additionally, Claimant objects to this question as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

4.      Claimant objects to Part IV, question 4 to the extent that it is vague and ambiguous with regard to the use of the undefined term "Other Injured Person". Specifically, there may not be an "Other Injured Person" responsible for Claimant's injuries. Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Additionally, Claimant objects to this question as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

5.      Claimant objects to Part IV, question 5 to the extent that it is vague and ambiguous with regard to the use of the undefined term "Other Injured Person". Specifically, there may not be an "Other Injured Person" responsible for Claimant's injuries. Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Additionally, Claimant objects to this question as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding. Claimant also objects to this question on the ground that Claimant may not know the specific day, month, and year of another person's exposure and therefore cannot answer the question. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

6.      Claimant objects to Part IV, question 6 to the extent that it is vague and ambiguous with regard to the use of the undefined term "Other Injured Person". Specifically, there may not be an "Other Injured Person" responsible for Claimant's injuries. Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Additionally, Claimant objects to this question as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

7.      Claimant objects to Part IV, question 7 to the extent that it is vague and ambiguous with regard to the use of the undefined term "Other Injured Person". Specifically, there may not be an "Other Injured Person" responsible for Claimant's injuries. Claimant further

objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Additionally, Claimant objects to this question as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

8.     Claimant objects to Part IV, question 8 to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor. Claimant further objects to the use of the term "Nature" in that it is vague and ambiguous. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

9.     Claimant objects to Part IV, question 9 to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor. Claimant further objects to the use of the term "Nature" in that it is vague and ambiguous. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

10.   Claimant objects to Part IV, question 10 to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor. Additionally, Claimant objects to this question on the ground that Claimant may not recall the exact day, month, and year his or her exposure began or ended, and, in that regard, this question is unduly burdensome. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

## PART V:  EXPOSURE TO NON-GRACE ASBESTOS-CONTAINING PRODUCTS

Claimant objects to Part V as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding, nor reasonably calculated to lead to admissible evidence therein. Claimant objects to this interrogatory on the ground that it is unduly burdensome, onerous and harrassing in that it would require a great amount of time, labor and expense to create a chart of exposure in the format requested by Debtor and then to create a separate chart for each party against which Claimant has filed an asbestos lawsuit or claim. Claimant further objects to Part V to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor. Subject to and without waiving the foregoing objections, the information responsive to this request may be derived from the documents attached to Claimant's Questionnaire, including, where available, Claimant's Work History Sheet, Claimant's Answers to Interrogatories filed in connection with Claimant's Asbestos Lawsuit ("interrogatory responses") and Claimant's or Claimant's coworker's deposition.

## PART VI:  EMPLOYMENT HISTORY

Claimant objects to Part VI on the ground that it is unduly burdensome and harassing and it would require a great amount of time, labor and expense to complete this section of the Questionnaire in the format requested by Debtors.  Claimant further objects to this question because it requires Claimant to compile or summarize information from Claimant's Social Security records that is obtainable with equal or greater facility by the Debtor.  Claimant further objects to providing information, including but not limited to, the occupation and industry codes for employers or jobsites where Claimant has not alleged any asbestos exposure as it exceeds the scope of permissible discovery in that it is not relevant to the subject matter of the estimation proceeding, nor reasonably calculated to lead to admissible evidence therein, and is harassing to Claimant.

Subject to and without waiving the foregoing objections, the information responsive to this request may be derived from the documents attached to Claimant's Questionnaire, including, where available, the Answers to Interrogatories filed in connection with Claimant's Asbestos Lawsuit, Claimant's Work History Sheet, and Claimant's or Claimant's coworker's deposition, if available.

## PART VII:  LITIGATION AND CLAIMS REGARDING ASBESTOS AND/OR SILICA

### Subsection a. - Litigation

1.    Claimant objects to Part VII, Subsection a, question 1 as it is overly broad in that it is not limited to *asbestos-related personal injury* lawsuits; and further, it is not limited to the lawsuit in which Debtor was sued.  Claimant responds to this entire Subsection a (questions 1 through 7) as if the question were so limited.  Claimant further objects to this subpart to the extent that it requires Claimant to summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Responding to Part VII, Subsection a in the format in Debtor's Questionnaire is harassing and unduly burdensome. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto. Claimant's counsel does not represent Claimant in a lawsuit regarding silica.

2.    Claimant objects to Part VII, Subsection a, question 2, to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor. Claimant further objects to this subpart as it is overly broad in that it is not limited to *asbestos-related personal injury* lawsuits.  Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

3.    Claimant objects to Part VII, Subsection a, question 3 on the ground that it is harrassing in that Grace knows equally as well as Claimant whether or not it was named as a defendant in Claimant's lawsuit, if any.  Claimant objects to this subpart as it is overly broad in that it is not limited to *asbestos-related personal injury* lawsuits. Further, Claimant objects to this subpart on the ground that it

exceeds the permissible scope of discovery in that it seeks information that is not relevant to the estimation proceeding, nor reasonably calculated to lead to admissible evidence therein. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

4.      Claimant objects to Part VII, Subsection a, question 4 on the ground that it seeks information that is neither relevant, nor necessary to the estimation proceeding, nor reasonably calculated to lead to admissible evidence therein. Whether a particular defendant has been dismissed has no bearing on Debtor's share of the liability. Additionally, Claimant objects on the ground that it is unduly burdensome to provide the basis for dismissal for each of the dismissed defendants, if any. Claimant further objects to this subpart as it is overly broad in that it is not limited to *asbestos-related personal injury* lawsuits. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

5.      Claimant objects to Part VII, Subsection a, question 5 on the ground that it exceeds the scope of discovery in that it seeks information that is not relevant, nor necessary to the estimation proceeding, nor reasonably calculated to lead to admissible evidence therein. The existence and amount of any verdict or judgment against any defendant other than Debtor has no bearing on Debtor's share of the liability. Claimant objects to this subpart as it is overly broad in that it is not limited to *asbestos-related personal injury* lawsuits. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

6.      Claimant objects to Part VII, Subsection a, question 6 and each of its subparts regarding settlements reached in the lawsuit as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding, nor reasonably calculated to lead to admissible evidence therein and requests privileged or confidential information. Specifically, the terms of the settlement agreements, if any, including the settlement amounts, if any, are irrelevant to an <u>aggregate</u> estimate of Debtor's liability. Claimant further objects to this subpart as it is overly broad to the extent that it seeks information beyond *asbestos-related personal injury* lawsuits. Settlements with other defendants are irrelevant to Debtor's share of the liability, and Debtor would get a set-off or credit for such settlements only for the cases that were tried all the way to judgment, which clearly will not happen in the context of the present proceeding. Further, for a majority of defendants, any settlement agreements are subject to a confidentiality agreement.

Claimant specifically objects to providing the "disease or condition alleged" and the "the disease or condition settled" (Part VII.a.6(c) and (d)) on the ground that it is ambiguous and harassing. Claimant filed a lawsuit alleging Claimant suffered injuries proximately caused by Claimant's exposure to asbestos-containing products designed, manufactured and sold by the Defendants named in the lawsuit, and any settlements were related to those allegations. Subject to and

without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

7.      Claimant objects to Part VII, Subsection a, question 7 on the ground that it is overly broad and unduly burdensome.  Further, Claimant's deposition testimony is duplicative of information already provided herein.  Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

## Subsection b - Claims

1.      Claimant objects to Part VII, Subsection b, question 1 as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding, nor reasonably calculated to lead to admissible evidence therein, and requests privileged or confidential information.  Claimant further objects that responding to Part VII, Subsection b in the format in Debtors' Questionnaire is harassing and unduly burdensome.  Additionally, Claimant objects on the ground that this question is overly broad in that it is not limited to *asbestos-related personal injury* claims.  Claimant responds to this entire subsection b (questions 1 through 7) as if the questions were so limited.  Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the  documents attached hereto.

2.      Claimant objects to Part VII, Subsection b, questions 2, 3 and 4 on the ground that it seeks information that is neither relevant, nor necessary to the estimation proceeding, nor reasonably calculated to lead to admissible evidence therein.  The date and entity against whom a claim was submitted has no bearing on Debtor's share of the liability.  Additionally, Claimant objects on the ground that this question is overly broad in that it is not limited to *asbestos- related personal injury* claims.  Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

3.      Claimant objects to Part VII, Subsection b, questions 5 and 6 regarding settlements with an asbestos trust as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding, nor reasonably calculated to lead to admissible evidence therein, and requests privileged or confidential information.  The settlement amounts are not relevant to an <u>aggregate</u> estimate of Debtor's liability or to Debtor's share of the liability.  Additionally, Claimant objects on the ground that this question is overly broad in that it is not limited to *asbestos- related personal injury* claims.  Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

4.      Claimant objects to Part VII, Subsection b, question 7 on the ground that it seeks information that is neither relevant, nor necessary to the estimation proceeding, nor reasonably calculated to lead to admissible evidence therein.  Whether a particular defendant has been dismissed has no bearing on Debtor's several share

of the liability.  Additionally, Claimant objects on the ground that it is unduly burdensome to provide the basis for dismissal for each of the dismissed defendants, if any, and it is overly broad in that it is not limited to *asbestos-related personal injury* lawsuits.  Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

## PART VIII:  CLAIMS BY DEPENDENTS OR RELATED PERSONS

Claimant objects to Part VIII on the ground that information regarding dependents or related persons who sued the Debtors before April 2, 2001 is equally available to Debtors. Subject to and without waiving the foregoing, Claimant has provided information regarding Claimant's spouse where available.  Please see attached interrogatory responses and Debtors' own records for information regarding dependents.

## QUESTIONNAIRE RESPONSES

Claimant hereby incorporates by reference all of the foregoing general and specific objections into Claimant's Questionnaire responses and has provided the following responses subject to those objections.  Because the burden of deriving or ascertaining the answer is substantially the same for Debtor as for Claimant, Claimant has specified in Claimant's Questionnaire response the document(s) from which the answer may be derived, including but not limited to Claimant's medical records, Claimant's Work History Sheet (referred to in the  Questionnaire response as "WHS"), Claimant's Answers to Interrogatories filed in connection with Claimant's Asbestos Lawsuit (referred to in the Questionnaire response as "interrogatory responses"), and Claimant's or Claimant's coworker's deposition.

Respectfully submitted,

SIMMONSCOOPER LLC

_____
Robert W. Phillips
707 Berkshire Boulevard
East Alton, IL 62024
Phone (618) 259-2222
Fax (618) 259-2251
rphillips@simmonscooper.com

Counsel for Claimant

IN THE CIRCUIT COURT
STATE OF MISSOURI
TWENTY-SECOND JUDICIAL CIRCUIT
(City of St. Louis)

|  |  |  |
|---|---|---|
| , | ) | Cause No. 002-1379 |
|  | ) | Division No. 3 |
|  | ) | (Asbestos) |
| Plaintiff, | ) |  |
|  | ) | PERSONAL INJURY |
| -vs.- | ) | PRODUCTS LIABILITY |
|  | ) |  |
| A. P. GREEN INDUSTRIES, INC., et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## CERTIFICATE OF SERVICE OF PLAINTIFF FOR
## NOTICE OF COMPLIANCE AND ANSWERS TO INTERROGATORIES

I hereby certify that Answers to Interrogatories and a Notice of Compliance were mailed

to the attorneys of record as per the attached Proof of Service, via U.S. Mail, postage prepaid,

this 8th day of January, 2001.

The Simmons Firm, L.L.C.

By: _____
Marcus E. Raichle, Jr. #44050
Attorney for Plaintiff
301 Evans Ave., Suite 300
Wood River, IL 62095
Phone: 618/251-2222

IN THE CIRCUIT COURT
STATE OF MISSOURI
TWENTY-SECOND JUDICIAL CIRCUIT
(City of St. Louis)

|  |  |  |
|---|---|---|
| , | ) | Cause No. 002-1379 |
|  | ) | Division No. 3 |
| Plaintiff, | ) | (Asbestos) |
|  | ) |  |
| -vs.- | ) |  |
|  | ) | PERSONAL INJURY |
| ACandS, Inc., et al., | ) | PRODUCTS LIABILITY |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

## NOTICE OF COMPLIANCE

Now comes the Plaintiff, by his attorneys, The Simmons Firm, L.L.C., and hereby gives notice to all interested parties that the items listed on the receipt attached hereto which has been signed by a representative of Roberts, Perryman, Bomkamp & Meives were produced to said counsel on the date indicated on said receipt. All parties, including non-participating members of Roberts, Perryman, Bomkamp & Meives, will be allowed an opportunity to inspect and/or copy these documents during counsel's usual business hours.

Respectfully submitted,

The Simmons Firm, L.L.C.

By: Marcus E. Raichle, Jr. #44060
Marcus E. Raichle, Jr. #44060
Attorney for Plaintiff
301 Evans Ave., Suite 300
Wood River, IL 62095
Phone: 618/251-2222



**The Simmons Firm** L.L.C.
Attorneys at Law

*Lawyers for the American Worker*

ATTORNEYS

John Simmons (IL, GA, FL)
Marcus E. Raichle, Jr. (IL, MO, OK, IN)
W.W. Schooley III (IL, CO)
S. Martin Jansky (MO)
Jeffrey S. Cooper (IL)

OF COU
Randall A. Bonc

January 3, 2001

Roberts, Perryman, Bomkamp  Meives, P.C.
1 Mercantile Center
St. Louis, Missouri 63101

Authorizations for release of information, complete sets, for the following cases filed in the City of St. Louis:

Received this 5th day of January, 2001.

_____
ROBERTS PERRYMAN BOMKAMP & MEIVES

301 Evans Avenue, Suite 300, P.O. Box 559, Wood River, Illinois 62095  800-479-9533  618-251-2222  618-251-2251 (Fax)
3362 Hollenberg Drive, Suite 300, P.O. Box 890, St. Louis, Missouri 63044  314-298-7722  314-298-1155 (Fax)
www.simmonsfirm.com
95

MISSOURI CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT
ST. LOUIS, MISSOURI

1. (a) Name:
   (b) SS#:
   (c) DOB:
   (d) POB:

2.

3. None.

4. (a)
   (b) 12/23/44 - Aberdeen, Mississippi;
   (c) N/A;
   (d) N/A;
   (e) 7/7/19 - Housewife.

5. No.

6. 1928-1935: Amory Elementary, Mississippi through 7th grade.

7. Yes:
   (a) 1943;
   (b) U.S. Army;
   (c) Heart condition.

8. N/A.

9. I am not aware of any written or tape recorded statement.

10. Will answer in accordance with Standing Order.

11. See Answer #10.

12.

13.

Page 2

14. (a) National Refractories, Mexico, Missouri;
    (b) 1950-1985;
    (c) Laborer;
    (d) Executed release to obtain Social Security data has been provided to the Records
        Center.

15. See attached Form A and Exhibit A.

16. (a) Yes;
    (b) Required;
    (c) No;
    (d) No;
    (e) Annually (in the later years);
    (f) Audrain Medical Center, Mexico, Missouri;
    (g) N/A;
    (h) Unknown;
    (i) Dr. Ben Jolly, Mexico, Missouri.

17. Johns Manville, others unknown; investigation continues.

18. No.

19. No.

20. N/A.

21. No.

22. N/A.

23. No.

24. No.

25. No.

26. N/A.

27. No.

Page 3

28. (a) 4/12/98;
    (b) B-read interpreted by Dr. Jay T. Segarra, Ocean Springs, Mississippi;
    (c) That I had asbestosis.

29. N/A.

30. Yes:
    (a) Aluminum, Brick, & Glass Union Local #660, Mexico, Missouri;
    (b) 1950-1985;
    (c) None;
    (d) Refractories.

31. Not that I recall.

32. No.

33. No.

34. No.

35. Asbestosis.

36. (a) Do not recall;
    (b) Occasional shortness of breath;
    (c) Medical records.

37. (a) See #28(a);
    (b) See #28(b);
    (c) Chest x-ray and B-read;
    (d) I knew I had been exposed to asbestos and I wished to know how it affected my
        health;
    (e) See #37(c).

38. 11/17/97:  Audrain Medical Center, St. Louis, Missouri performed PFT;
    4/12/98:   Dr. Jay T. Segarra interpreted B-read and PFT.

39. Plaintiff objects to this interrogatory on the grounds that requested information is
protected by the physician/patient privilege and that this interrogatory seeks medical information
beyond the medical conditions at issue in this case.

40. No.

Page 4

41. N/A.

42. Yes:
    (a) Do not recall - See #38;
    (b) 11/17/97 - Audrain Medical Center, Mexico, Missouri;
    (c) Asbestos screening resulting in asbestosis;
    (d) B-read and medical report.

43. See #38.

44. Plaintiff objects to this interrogatory on the grounds that requested information is protected by the physician/patient privilege and that this interrogatory seeks information beyond the medical conditions at issue in this case.

45. No.

46. No.

47. Plaintiff objects to this interrogatory on the grounds that requested information is protected by the physician/patient privilege and that this interrogatory seeks medical information beyond the medical conditions at issue in this case.

48. Plaintiff objects to this interrogatory on the grounds that requested information is protected by the physician/patient privilege and that this interrogatory seeks medical information beyond the medical conditions at issue in this case.

49. Plaintiff was exposed to the following substances; frequency and intensity of exposure varied according to the job being performed at the time and its location within the plant: welding fumes and silica.

50. Plaintiff does not recall exposer to any of the listed activities.

51. Yes:
    (a) 1940-1968;
    (b) Non-filtered cigarettes/Cigars/Pipe;
    (c) One pack per day/Three cigars per day;
    (d) 1968 - spouse insisted;
    (e) N/A;
    (f) N/A;
    (g) Camel and Prince Albert Tobacco.

52. No.

Page 5

53. (a) Audrain Medical Center, Mexico, Missouri;
    (b) 11/17/97;
    (c) Interpreted by Dr. Jay T. Segarra, Ocean Springs, Mississippi
    (d) Within normal limits;
    (e) The Simmons Firm.

54. No.

55. None.

56. N/A.

57. (a) Exacerbation of pre-existing ailments or conditions; See Answer #68;
    (b) Past and future disability or disfigurement; See Answer #68;
    (c) Past and future pain and suffering and mental anguish resultant from subjection
        to greatly increased risk of developing asbestos-induced cancers and debilitating
        asbestosis;
    (d) Past and future medical expenses; See Answer #58;
    (e) Past and future lost earnings; See Answer #54;
    (f) Special damages; See Answer #59;

    Total amount of damages to be determined by the trier of fact.

58. N/A.

59. None.

60. No.

61. No.

62. No.

63. Yes:  pension benefits and social security benefits as a result of retirement.

64. None.

65. See Production.

66. See Production.

67. See Production.

68. No.

69. See production.

70. See Complaint.

71. See Production.

72. See Production.

EMPLOYMENT HISTORY
PRODUCT EXPOSURE WORKSHEET

FORM A

PLAINTIFF:

EMPLOYER: National Refractories

JOB SITE:    Mexico, Missouri

JOB SITE:      Open  X                                      Closed  X

SHOWERS PROVIDED    Yes                    SEPARATE LOCKERS    No

DATE AND DURATION OF JOB:  1950-1985.

WORK PERFORMED BY PLAINTIFF:    Laborer.

DESCRIPTION OF JOB:    Brick setter, press changer, and bench man.

TO YOUR KNOWLEDGE, WERE YOU EXPOSED TO ASBESTOS ON THIS JOB?  YES

CO-WORKERS:

IDENTIFY EACH PRODUCT TO WHICH YOU CLAIM YOU WERE EXPOSED.  THE
MANUFACTURER OR DISTRIBUTOR OF EACH SUCH PRODUCT, AND THE SPECIFIC
LOCATION WITHIN THE WORK PLACE WHERE THE EXPOSURE OCCURRED.

SEE EXHIBIT A

EXHIBIT A

NAME: __

I WAS EXPOSED TO THE FOLLOWING TYPES OF ASBESTOS-CONTAINING PRODUCTS, WHOSE NAME BRANDS I CANNOT RECALL. NAME BRANDS CAN BE SUPPLIED BY MY CO-WORKERS.

Pipe Covering and Block Insulation
Muds, Insulating Cements, Finishing Cements
Refractory Materials and Bricks
Gunites
Fireproofing and Spray-on Insulation
Mastics and Adhesives
Specialty Cements
Joint Compounds
Asbestos Floor and Ceiling Tile
Asbestos Felts
Roofing and Siding Materials and Roof Coatings
Asbestos Cement Board and Pipe
Wallboard, Drywall, Drywall Adhesives
Asbestos Cement Wallboard and Floor Coverings
Plasters and Acoustical Plasters
Asbestos Fabric, Yarn, Tape, and Paper
Asbestos Millboard and Rollboard
Asbestos Blankets
Asbestos Rope and Wick Packing
Asbestos Seals
Gaskets, Gasket Material, Packing
Asbestos Gloves and Apparel
Brakes and Clutches

STATE OF MISSOURI       )
                           )

COUNTY OF                )

_____, states that he has answered the foregoing Interrogatories, consisting of _____8 0_____ pages, in accordance with Supreme Court Rules, and that the answers are correct to the best of his knowledge and belief.

SUBSCRIBED AND SWORN before me on this 22nd day of December, 2000.

_____
Notary Public

My Commission Expires

LINDA S. BAITINGER
NO          PUBLIC
NOTARY SE        OF MISSOURI
COU          AUDRAIN
My Commission         12-14-2002

The Simmons Firm, L.L.C.
Attorneys for Plaintiff
301 Evans Avenue
P.O. Box 559
Wood River, Illinois 62095
(618)251-2222

## PROOF OF SERVICE -- St. Louis City

This is to certify that a copy of the foregoing has been served upon the following attorneys of record by placing same in an envelope, with postage prepaid, plainly addressed to each attorney, and by depositing same in a U. S. Mailbox, on this ___5th___ day of ___January___ , 2001:

| | | |
|---|---|---|
| Ann Hatch<br>Herzog, Krebs & McGee<br>1 City Centre, 24th Floor, 515 North 6th Street<br>St. Louis, MO 63101 | = | Combustion Engineering |
| Allen Boston<br>Lewis Rice & Fingersh<br>500 N. Broadway, Suite 2000<br>St. Louis, MO 63102 | = | Nooter Corporation |
| Kent L. Plotner<br>Heyl, Royster, Voelker & Allen<br>103 West Vandalia, Ste. 100<br>P.O. Box 467<br>Edwardsville, IL   62025 | = | Armstrong World<br>U.S. Gypsum |
| Robert G. Burridge<br>Anderson & Gilbert<br>200 S. Hanley Rd., Suite 720<br>St. Louis, MO   63105 | = | Brauer Supply |
| Clayton Dickey/Kurt Rasmussen<br>Rasmussen, Barton & Willis, LLC<br>4218 Roanoke, Ste. 200<br>Kansas City, MO   64111 | = | Fibreboard<br>Owens-Corning<br>Rapid American |
| Jan Dodd<br>Sandberg, Phoenix & von Gontard<br>One City Centre, 15th Floor<br>St. Louis, MO   63101-1880 | = | Flintkote |
| Richard E. Boyle<br>Gundlach, Lee<br>1010 Market, Suite 1640<br>St. Louis, MO   63101 | = | Foster Wheeler<br>Minnesota Mining & Manufacturing |
| Armstrong, Teasdale L.L.P.<br>Attn: Raymond Fournie<br>One Metropolitan Square<br>26th Floor<br>St. Louis, MO 63102 | = | GAF   (MO cases only) |

Ronald L. Hack                              =      General Electric
Gallop, Johnson & Newman
101 S. Hanley, Ste. 1600
St. Louis, MO   63105

A.J. Bronsky                                =      General Gasket
Brown & James
705 Olive St., Ste. 1100
St. Louis, MO   63101-2270

Rebecca R. Jackson / Dennis O'Connell       =      Kaiser
Bryan, Cave                                 =      W.R. Grace
211 North Broadway
St. Louis, MO   63102-2750

Charles L. Joley                            =      Metropolitan Life
Donovan, Rose
8 East Washington Street
Belleville, IL   62220-2190

Robert Riley                                =      Owens Illinois
Schiff, Hardin & Waite
7200 Sears Tower
Chicago, IL   60606

Daniel G. Donahue                           =      Westinghouse Electric
Herzog, Crebs & McGhee, LLP                        Wise Elsanto
One City Centre, 24th Floor
515 North Sixth Street
St. Louis, MO   63101

THOMAS J. KERNELL                           =      CENTRAL RECORDS
Roberts, Perryman
One Mercantile Center, Ste. 2300
St. Louis, MO   63101