Christopher E. Grell, Esq. (SBN 88498)
Richard F. Rescho, Esq. (SBN 108086)
Law Offices of Christopher E. Grell
The Broadlake Plaza
360 22nd Street, Suite 230
Oakland, Ca  94612
Telephone:  (510) 832-2980
Facsimile:  (510) 832-2986

Attorneys for Claimants
ELLEN ASHDOWN, et al.

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>W.R. GRACE & CO., et al.,<br><br>        Debtors. | **Chapter 11**<br><br>**Case No. 01-01139 (JFK)**<br>**(Jointly Administered)**<br><br>**Hearing Date:  September 11, 2006** |

### DECLARATION OF CLAIMANTS' COUNSEL, RICHARD F. RESCHO, IN SUPPORT OF OBJECTION TO MOTION TO COMPEL ASBESTOS PERSONAL INJURY CLAIMANTS TO RESPOND TO THE W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE

I, Richard F. Rescho, declare:

1.    I am an attorney duly licensed to practice law in the State of California and before the United States District Courts for the Northern, Central and Southern Districts of California.  I have personal knowledge of the matters stated herein, and if called upon to do so, could and would competently testify thereto.

2.    I am an associate attorney of the Law Offices of Christopher E. Grell, Oakland, California, counsel for asbestos claimants Ellen Ashdown (Decedent Gary Smith), Franklin Castleman, Edwin Conway, Sharon Doughty, Henry Enos, Candice Fleming, Eleanor Franer, Nancy Kearny,

1

1    Agnes Klassen, Yvonne Mager, Curtis Neal, II, Gordon Nurse, Sandra Odegaard, Frances Rongstad,
2    Rhee Michelle Smith, Graydon Simpson, Ernest P. Snyder, Mary Ann Market, Joyce Lopez and Tracie
3    Webber.

4        3.      The Law Offices of Christopher E. Grell has prepared and submitted the W.R. Grace
5    Asbestos Personal Injury Questionnaire on behalf of the above-named Claimants.

6        4.      Attached hereto as Exhibit A is a true and correct copy of the W.R. Grace Personal
7    Injury Questionnaire prepared by the Law Offices of Christopher E. Greel on behalf of Claimant Ellen
8    Ashdown for Decedent Gary Smith.   This Questionnaire is a representative sample of those
9    Questionnaires prepared and submitted on behalf of those Claimants listed above.

10       5.      In the Ashdown/Smith Questionnaire attached as Exhibit A, with regard to Part II:
11   Asbestos-Related Condition(s), the responses to various questions refer to Exhibit A to the
12   Questionnaire, which consists of the report of pathologist Samuel Hammar, M.D., of Diagnostic
13   Specialties Laboratory, Inc., P.S. the Autopsy Report of Decedent Gary Smith and the Certificate of
14   Death, which confirm that the Decedent Gary Smith died of mesothelioma caused by asbestos
15   exposure.   The response to Part II, Question 7 of the Questionnaire refers to Exhibit B to the
16   Questionnaire, Plaintiffs' Answers to Wrongful Death Interrogatories, Response to Interrogatory No. 9,
17   which lists the Decedent's treating doctors.

18       6.      In the Ashdown/Smith Questionnaire attached as Exhibit A, with regard to Part III:
19   Direct Exposure to Grace Asbestos-Containing Products, the responses to questions regarding the
20   locations of Decedent's exposure to W.R. Grace asbestos-containing products refer to Exhibit B to the
21   Questionnaire, the aforementioned Plaintiffs' Answers to Wrongful Death Interrogatories, Response to
22   Interrogatory No. 25, which lists Decedent's various employment sites and Exhibit B-1, which lists
23   W.R. Grace asbestos-containing products.

24       7.      In the Ashdown/Smith Questionnaire attached as Exhibit A, with regard to Part VII:
25   Litigation and Claims Regarding Asbestos and/or Silica, the response to Question 6 refers to Exhibit
26   One to the Questionnaire, which provides information as to settlements made in a lawsuit brought as a
27   result of Decedent's asbestos exposure and death.

28

2

1      8.    In the Ashdown/Smith Questionnaire attached as Exhibit A, Part IX:  Supporting

2  Documentation, the Questionnaire requests that the Claimant use the checklist to indicate which

3  documents are being submitted with the form.   The Ashdown/Smith Questionnaire indicates the

4  following documents are being submitted:   Medical records and/or report containing a diagnosis,

5  Pathology reports, Supporting documentation of exposure to W.R. Grace asbestos-containing products,

6  Supporting documentation of other asbestos exposure, and Death Certification.

7      9.    With regard to those questions on the W.R. Grace Personal Injury Questionnaire listed

8  above in which the responses refer to the above-mentioned Exhibits, the spaces provided on the

9  Questionnaire do not provide enough space to permit a narrative response providing the information

10  provided in the Exhibits.

11      10.   W.R. Grace has not provided to the Law Offices of Christopher E. Grell a "site list"

12  indicating those locations at which W.R. Grace asbestos-containing products have been present and the

13  dates the products have been present. Such a "site list" would greatly facilitate Claimants' providing to

14  W.R. Grace information as to those locations at which the injured party was exposed to W.R. Grace's

15  asbestos-containing products.

16      11.   The Law Offices of Christopher E. Grell has represent a great number of asbestos

17  victims with claims against numerous asbestos defendants which have filed bankruptcy, or have

18  undergone liquidation.  With regard to a number of such bankrupt parties, Proof of Claim procedures

19  have been instituted, in which Proof of Claim forms are submitted by the claimants in order to receive

20  compensation. The Proof of Claim forms allow for Claimants to rely upon attached documents in order

21  to provide information with regard to medical issues, exposure to the party's products, and the like.

22  The bankrupt parties include, but are not limited to, Johns Manville, National Gypsum, Celotex, Eagle

23  Pitcher, H.K. Porter, Fibreboard, Babcock & Wilcox, E.V. Bartells, and Harbison Walker, and Western

24  MacArthur.

25      12.   In the event W.R. Grace's Motion to Compel is granted, the 60-day "cure period"

26  requested by W.R. Grace is unrealistic.  The Law Offices of Christopher E. Grell is a two-attorney

27  office with modest support staff.  Given the other responsibilities and commitments of the office, it is

28

3

1    not possible to re-prepare the Questionnaires for the twenty Claimants represented by this office in the
2    form requested by W.R. Grace within a 60-day period.
3        I declare under penalty of perjury under the laws of the United States that the foregoing is true
4    and correct and that this Declaration is executed August _3_, 2006, at Oakland, California.
5
6
7                                  Richard F. Rescho
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4

# W. R. Grace

# Asbestos Personal Injury
# Questionnaire

Ashdown—
Smith

||||||| ||||| |||||| |||| ||||| |||| |||| ||| |||| ||| |||
001036176818

RE: Ashdown, Ellen     *for deceased Gary Smith* 17 2006
Law Offices of Christopher E Grell
Suite 320 Broadlake Plaza
360 22nd Street
Oakland CA 94612

||||| ||||| ||||| ||||| ||||| |||| ||||| |||| |||| ||| |||| |||
001036176818

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | )    **Chapter 11** |
| | ) |
| **W. R. GRACE & CO., et al.,** | )    **Case No. 01-01139 (JKF)** |
| | )    **Jointly Administered** |
| **Debtors.** | ) |
| | ) |

# W. R. Grace
# Asbestos Personal Injury
# Questionnaire

**YOU HAVE RECEIVED THIS QUESTIONNAIRE BECAUSE GRACE BELIEVES THAT YOU HAD SUED ONE OR MORE OF THE DEBTORS LISTED IN APPENDIX A ATTACHED TO THIS QUESTIONNAIRE BEFORE GRACE FILED FOR BANKRUPTCY ON APRIL 2, 2001 FOR AN ASBESTOS-RELATED PERSONAL INJURY OR WRONGFUL DEATH CLAIM, AND THAT CLAIM WAS NOT FULLY RESOLVED.**

**IF YOU HAVE SUCH A CLAIM, YOU MUST COMPLETE AND SUBMIT THIS QUESTIONNAIRE BY JANUARY 12, 2006 TO RUST CONSULTING, INC., THE CLAIMS PROCESSING AGENT, AT ONE OF THE FOLLOWING ADDRESSES:**

| | |
|---|---|
| **IF SENT BY U.S. MAIL** | **IF SENT BY FEDERAL EXPRESS, UNITED PARCEL SERVICE, OR A SIMILAR HAND DELIVERY SERVICE** |
| RUST CONSULTING, INC. <br> CLAIMS PROCESSING AGENT <br> RE: W.R. GRACE & CO. BANKRUPTCY <br> P.O. BOX 1620 <br> FARIBAULT, MN 55021 | RUST CONSULTING, INC. <br> CLAIMS PROCESSING AGENT <br> RE: W.R. GRACE & CO. BANKRUPTCY <br> 201 S. LYNDALE AVE. <br> FARIBAULT, MN 55021 |

**A QUESTIONNAIRE (AND ANY AMENDMENTS OR ADDITIONAL DOCUMENTS IN SUPPORT OF THE QUESTIONNAIRE) WILL NOT BE CONSIDERED UNLESS RECEIVED BY RUST CONSULTING, INC. BY JANUARY 12, 2006.**

**THIS QUESTIONNAIRE IS AN OFFICIAL DOCUMENT APPROVED BY THE COURT IN CONNECTION WITH ESTIMATING GRACE'S ASBESTOS-RELATED PERSONAL INJURY AND WRONGFUL DEATH CLAIMS AS A WHOLE. THE QUESTIONNAIRE IS BEING USED BY W. R. GRACE AS A MEANS TO SEEK INFORMATION ABOUT YOUR ASBESTOS CLAIM. BY TIMELY RETURNING THE QUESTIONNAIRE AS COMPLETELY AND ACCURATELY AS POSSIBLE, GRACE, THE OFFICIAL COMMITTEES, AND THE FUTURE CLAIMANTS REPRESENTATIVE WILL SEEK TO PRIORITIZE THE PROCESSING OF YOUR CLAIM UNDER ANY TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION.**

**THE COURT HAS ORDERED THAT, AS PART OF THE DISCOVERY PROCESS, ALL HOLDERS OF PRE-PETITION ASBESTOS PERSONAL INJURY CLAIMS MUST COMPLETE AND RETURN THIS QUESTIONNAIRE. THUS, FAILURE TO TIMELY RETURN THE QUESTIONNAIRE AS COMPLETELY AND ACCURATELY AS POSSIBLE MAY RESULT IN SANCTIONS AND/OR OTHER RELIEF AVAILABLE UNDER APPLICABLE FEDERAL RULES.**

**BECAUSE YOUR CLAIM WILL BE EVALUATED IN ACCORDANCE WITH THE TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION, COMPLETION OF THIS QUESTIONNAIRE DOES NOT MEAN THAT YOUR CLAIM WILL EITHER BE ALLOWED OR PAID. TO THE EXTENT YOU ATTACH TO THIS QUESTIONNAIRE DOCUMENTS ALSO NEEDED BY THE TRUST TO PROCESS YOUR CLAIM, SUCH DOCUMENTS WILL BE PROVIDED TO THE TRUST AND YOU WILL NOT NEED TO RESUBMIT THEM.**

## INSTRUCTIONS

### A. GENERAL

1. This Questionnaire refers to any lawsuit that you filed before April 2, 2001 for an "asbestos-related personal injury or wrongful death claim." This term is intended to cover any lawsuit alleging any claim for personal injuries or damages that relates to: (a) exposure to any products or materials containing asbestos that were manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors (or any of their respective past or present affiliates, or any of the predecessors of any of the Debtors or any of their respective past or present affiliates), or (b) exposure to vermiculite mined, milled or processed by the Debtors (or any of their respective past or present affiliates, any of the predecessors of any of the Debtors or any of their predecessors' respective past or present affiliates). It includes claims in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity, or any other theory of law or equity, or admiralty for, relating to, or arising out of, resulting from, or attributable to, directly or indirectly, death, bodily injury, sickness, disease, or other personal injuries or other damages caused, or allegedly caused, directly or indirectly, and arising or allegedly arising, directly or indirectly, from acts or omissions of one or more of the Debtors. It includes all such claims, debts, obligations or liabilities for compensatory damages such as loss of consortium, personal or bodily injury (whether physical, emotional or otherwise), wrongful death, survivorship, proximate, consequential, general, special, and punitive damages.

2. Your Questionnaire will be deemed filed only when it has been received by Rust Consulting Inc., the Claims Processing Agent, via U.S. Mail, Federal Express, United Parcel Service or a similar hand delivery service. A Questionnaire that is submitted by facsimile, telecopy or other electronic transmission will **not** be accepted and will **not** be deemed filed.

   Do **not** send any Questionnaire to the Debtors, counsel for the Debtors, the Future Claimants Representative, the Official Committee of Unsecured Creditors, the Official Committee of Asbestos Personal Injury Claimants, the Official Committee of Asbestos Property Damage Claimants, the Official Committee of Equity Security Holders, or such Committees' counsel. Questionnaires that are filed with or sent to anyone other than Rust Consulting, Inc. will be deemed not to have been submitted, and such Questionnaires will not be considered.

3. Your completed Questionnaire must (i) be written in English, and (ii) attach relevant supporting materials as instructed further below.

4. All holders of claims described on page i (and as described in further detail in Instruction A (1) above) are required to file this Questionnaire by Jan. 12, 2006. Your Questionnaire will be used in connection with the estimation hearing to be conducted by the Court pursuant to the Estimation Procedures Order (a copy of which is attached as Appendix B).

5. Any subsequent amendment to the Questionnaire will not be considered for any purpose unless received by Jan. 12, 2006.

### B. PART I -- Identity of Injured Person and Legal Counsel

Respond to all applicable questions. If you are represented by a lawyer, then in Part I (b), please provide your lawyer's name and the name, telephone number and address of his/her firm. If you are represented by a lawyer, he/she must assist in the completion of this Questionnaire. Also, if you would prefer that the Debtors send any additional materials only to your lawyer, instead of sending such materials to you, then check the box indicating this in Part I (b).

All references to "you" or the like in Parts I through X shall mean the injured person. If the injured person is deceased, then the executor of the person's will (or similar estate representative) must complete this Questionnaire.

### C. PART II -- Asbestos-Related Condition(s)

Please indicate all asbestos-related medical conditions for which you have been diagnosed. To complete questions related to injuries, medical diagnoses, and/or conditions, please use the following categories of customarily diagnosed conditions:

- Mesothelioma
- Asbestos-Related Lung Cancer
- Other Cancer (colon, laryngeal, esophageal, pharyngeal, or stomach)
- Clinically Severe Asbestosis
- Asbestosis
- Other Asbestos Disease

If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

**Supporting Documents for Diagnosis:** This Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that support or conflict with your diagnosis.

**X-rays and B-reads:** Please attach all x-ray readings and reports. You may, but are not required to, attach chest x-rays. The court, however, has ruled that Grace may seek access to chest x-rays upon request.

**Pulmonary Function Tests:** Please attach all pulmonary function test results, including the actual raw data and all spirometric tracings, on which the results are based.

ii

**D. PART III – Direct Exposure to Grace Asbestos-Containing Products**

In Part III, please provide the requested information for the job and site at which you were exposed to Grace asbestos-containing products. Indicate the dates of exposure to each Grace asbestos-containing product. If your exposure was a result of your employment, use the list of occupation and industry codes below to indicate your occupation and the industry in which you worked at each site. If you allege exposure to Grace asbestos-containing products at multiple sites, the Court has ordered that you must complete a separate Part III for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

Attach copies of any and all documents establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the disease.

## Occupation Codes

01. Air conditioning and heating installer/maintenance
02. Asbestos miner
03. Asbestos plant worker/asbestos manufacturing worker
04. Asbestos removal/abatement
05. Asbestos sprayer/spray gun mechanic
06. Assembly line/factory/plant worker
07. Auto mechanic/bodywork/brake repairman
08. Boilermaker
09. Boiler repairman
10. Boiler worker/cleaner/inspector/engineer/installer
11. Building maintenance/building superintendent
12. Brake manufacturer/installer
13. Brick mason/layer/hod carrier
14. Burner operator
15. Carpenter/woodworker/cabinetmaker
16. Chipper
17. Clerical/office worker
18. Construction - general
19. Custodian/janitor in office/residential building
20. Custodian/janitor in plant/manufacturing facility
21. Electrician/inspector/worker
22. Engineer
23. Firefighter
24. Fireman
25. Flooring installer/tile installer/tile mechanic
26. Foundry worker
27. Furnace worker/repairman/installer
28. Glass worker
29. Heavy equipment operator (includes truck, forklift, & crane)
30. Insulator

31. Iron worker
32. Joiner
33. Laborer
34. Longshoreman
35. Machinist/machine operator
36. Millwright/mill worker
37. Mixer/bagger
38. Non-asbestos miner
39. Non-occupational/residential
40. Painter
41. Pipefitter
42. Plasterer
43. Plumber - install/repair
44. Power plant worker
45. Professional (*e.g.*, accountant, architect, physician)
46. Railroad worker/carman/brakeman/machinist/conductor
47. Refinery worker
48. Remover/installer of gaskets
49. Rigger/stevedore/seaman
50. Rubber/tire worker
51. Sandblaster
52. Sheet metal worker/sheet metal mechanic
53. Shipfitter/shipwright/ship builder
54. Shipyard worker (md. repair, maintenance)
55. Steamfitter
56. Steelworker
57. Warehouse worker
58. Welder/blacksmith
59. Other – *Medical Professional*

## Industry Codes

001. Asbestos abatement/removal
002. Aerospace/aviation
100. Asbestos mining
101. Automotive
102. Chemical
103. Construction trades
104. Iron/steel
105. Longshore
106. Maritime
107. Military (other than U.S. Navy)
108. Non-asbestos products manufacturing

109. Petrochemical
110. Railroad
111. Shipyard-construction/repair
112. Textile
113. Tire/rubber
114. U.S. Navy
115. Utilities
116. Grace asbestos manufacture or milling
117. Non-Grace asbestos manufacture or milling
118. Other -

iii

**E.  PART IV – Indirect Exposure to Grace Asbestos-Containing Products**
In Part IV, please provide the information requested for any injury alleged to have been caused by exposure to Grace asbestos-containing products through contact/proximity with another injured person.  If you allege exposure through contact/proximity with multiple injured persons, please complete a separate Part IV for each injured person.  For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.

**F.  PART V -- Exposure to Non-Grace Asbestos-Containing Products**
In Part V, please provide the requested information for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products. If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate Part V for each party.  If exposure was in connection with your employment, use the list of occupation and industry codes in Part III to indicate your occupation and the industry in which you worked.  For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

**G.  PART VI -- Employment History**
In Part VI, please provide the information requested for each industrial job you have held, other than jobs already listed in Parts III or V.  Use the list of occupation and industry codes in the instructions to Part III to indicate your occupation and the industry in which you worked for each job.  Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.

**H.  PART VII -- Litigation and Claims Regarding Asbestos and/or Silica**
In Part VII, please describe any lawsuits and/or claims that were filed by you or on your behalf regarding asbestos or silica.

**I.  PART VIII -- Claims by Dependents or Related Persons**
Part VIII is to be completed only by dependents or related persons (such as spouse or child) of an injured person who sued the Debtors before April 2, 2001 for an asbestos-related personal injury or wrongful death claim against Grace not involving physical injury to him-/herself on account of his/her own exposure.  One example of such a claim would be a claim for loss of consortium.  If you are asserting such a claim, complete the entire Questionnaire, providing all information and documentation regarding the injured person.

**J.  PART IX -- Supporting Documentation**
In Part IX, please mark the boxes next to each type of document that you are submitting with this Questionnaire.  As indicated in the instructions to Parts II and III, this Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that (a) support or conflict with your diagnosis and/or (b) establish exposure to Grace asbestos-containing products as having a substantial causal role in the development of the medical diagnoses, and/or conditions claimed.  Original documents provided to Grace will be returned within a reasonable time after its professionals and experts have reviewed the documents.

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation.  Please indicate the documents for which you are seeking reimbursement and attach a receipt for such cost.

**K.  PART X -- Attestation that Information is True, Accurate and Complete**
By signing Part X, you, the injured person, are attesting and swearing, under penalty of perjury, that, to the best of your knowledge, all of the information in this Questionnaire is true, accurate and complete.  If the injured person is deceased, then the executor of the person's will (or similar estate representative) must complete and sign Part X on behalf of the injured person.

The legal representative of the injured person must complete and sign Part X where indicated.

**PART I: IDENTITY OF INJURED PERSON AND LEGAL COUNSEL**

**a.   GENERAL INFORMATION**

1.   **Name of Claimant:** _Gary_ _____ _Smith_   2. **Gender:** ☒ Male ☐ Female
First              MI              Last

3.   **Race (for purposes of evaluating Pulmonary Function Test results):** ....................................☒ White/Caucasian
☐ African American
☐ Other

4.   **Last Four Digits of Social Security Number:** _1492_   5. **Birth Date:** _07/29/1944_

6.   **Mailing Address:** _525 E. Gulf Beach Drive_ _____ _Fl._   _32328_
Address              City              State/Province   Zip/Postal Code

7.   **Daytime Telephone Number:** ............................................................. ( _570_ ) _832-2980_

**b.   LAWYER'S NAME AND FIRM**

1.   **Name of Lawyer:** _Christopher E. Grell_

2.   **Name of Law Firm With Which Lawyer is Affiliated:** _Law Office of Christopher E. Grell_

3.   **Mailing Address of Firm:** _360 22nd St. Suite 320 Oakland, Ca_   _94612_
Address              City              State/Province   Zip/Postal Code

4.   **Law Firm's Telephone Number or Lawyer's Direct Line:** ............................ ( _570_ ) _832-2980_

☒ Check this box if you would like the Debtors to send subsequent material relating to your claim to your lawyer, in
lieu of sending such materials to you.

**c.   CAUSE OF DEATH (IF APPLICABLE)**

1.   **Is the injured person living or deceased?** ................................................................☐ Living  ☒ Deceased
**If deceased, date of death:** ...........................................................................  _04/21/1994_

2.   **If the injured person is deceased, then attach a copy of the death certification to this Questionnaire and complete
the following:**
**Primary Cause of Death (as stated in the Death Certificate):** _mesothelioma_

**Contributing Cause of Death (as stated in the Death Certificate):** _____

**PART II: ASBESTOS-RELATED CONDITION(S)**

Mark the box next to the conditions with which you have been diagnosed and provide all information required in the
instructions to this Questionnaire. If you have been diagnosed with multiple conditions and/or if you received diagnoses and
diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis
and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your
convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

1.   **Please check the box next to the condition being alleged:**

☐ Asbestos-Related Lung Cancer          ☒ Mesothelioma

☐ Asbestosis          ☐ Other Cancer (cancer not related to lung cancer or mesothelioma)

☐ Other Asbestos Disease          ☐ Clinically Severe Asbestosis

a.   **Mesothelioma:** If alleging Mesothelioma, were you diagnosed with malignant mesothelioma based on the
following (check all that apply):

☑ diagnosis from a pathologist certified by the American Board of Pathology

☑ diagnosis from a second pathologist certified by the American Board of Pathology

☑ diagnosis and documentation supporting exposure to Grace asbestos-containing products having a substantial
causal role in the development of the condition

☐ other (please specify):_____

1

Gary Smith had MESO- Sections Not Applicably

**PART II ASBESTOS-RELATED CONDITION(S) (Continued)**

b. **Asbestos-Related Lung Cancer:** If alleging Asbestos-Related Lung Cancer, were you diagnosed with primary lung cancer based on the following (check all that apply):

☐ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a second B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a second B-reader certified by the National Institute for Occupational Safety and Health

☐ diffuse pleural thickening as defined in the International Labour Organization's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the lung cancer

☐ other (please specify):_____

c. **Other Cancer:**

(i) If alleging Other Cancer, please mark the box(es) next to the applicable primary cancer(s) being alleged:

☐ colon      ☐ pharyngeal      ☐ esophageal      ☐ laryngeal      ☐ stomach cancer

☐ other, please specify: _____

(ii) Were you diagnosed with the above-indicated cancer based on the following (check all that apply):

☐ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a second B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the cancer

☐ other (please specify): _____

2

*Gary Smith* *Sections Not Applicable*

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

**d.  Clinically Severe Asbestosis:** If alleging Clinically Severe Asbestosis, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a second B-reader certified by the National Institute for Occupational Safety and Health

☐ asbestosis determined by pathology

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating total lung capacity less than 65% predicted

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating forced vital capacity less than 65% predicted and a FEV1/FVC ratio greater than or equal to 65% predicted

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐ other (please specify): _____

**e.  Asbestosis:** If alleging Asbestosis, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ a chest x-ray reading conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a second B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ asbestosis determined by pathology

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEV1/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐ other (please specify): _____

*No Applicable*
*Meso*

3

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

f.  **Other Asbestos Disease:** If alleging any asbestos-related injuries, medical diagnoses, and/or conditions other than those above, was your diagnosis based on the following (check all that apply):

☐  diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐  diagnosis determined by pathology

☐  a chest x-ray reading conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐  a chest x-ray reading conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐  a chest x-ray reading other than those described above

☐  a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies*, demonstrating a FEVI/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐  a pulmonary function test other than that discussed above

☐  a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the condition

☐  a CT Scan or similar testing

☐  a diagnosis other than those above

☐  other (please specify): _____

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

Not Applicable
Meso

4

**PART II. ASBESTOS-RELATED CONDITION(S) (Continued)**

2. **Information Regarding Diagnosis**

Date of Diagnosis: .................................................................. 09/22/1994

Diagnosing Doctor's Name: Dr. Samuel P. Hammar

Diagnosing Doctor's Specialty: Pathology

Diagnosing Doctor's Mailing Address: 700 Lebo Blvd,
_____
Address

Bremerton                              Wash.                    98310
City                                   State/Province          Zip/Postal Code

Diagnosing Doctor's Daytime Telephone Number: ....................................... ( 360 ) 479-7707

With respect to your relationship to the diagnosing doctor, check all applicable boxes:

Was the diagnosing doctor your personal physician?.......................................................... ☐ Yes ☑ No

Was the diagnosing doctor paid for the diagnostic services that he/she performed?..Yes.See A ...☑ Yes ☐ No

*If yes, please indicate who paid for the services performed:* Counsel

Did you retain counsel in order to receive any of the services performed by the diagnosing doctor?......☑ Yes ☐ No

Was the diagnosing doctor referred to you by counsel?.................................................☑ Yes ☐ No

Are you aware of any relationship between the diagnosing doctor and your legal counsel?.................☑ Yes ☐ No

*If yes, please explain:* ___ expert ___

Was the diagnosing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the diagnosis? .............N.U.............................................................................. ☐ Yes ☐ No

Was the diagnosing doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis? ....................................................................................................................................☑ Yes ☐ No

Was the diagnosing doctor provided with your complete occupational, medical and smoking history prior to diagnosis? ...................................................................................................................................☑ Yes ☐ No

Did the diagnosing doctor perform a physical examination? ...... tissue ....................... ☑ Yes ☐ No

Do you currently use tobacco products? ................N/A............................................. ☐ Yes ☐ No

Have you ever used tobacco products?............................................................................. ☑ Yes ☐ No

*If answer to either question is yes, please indicate whether you have regularly used any of the following tobacco products and the dates and frequency with which such products were used:*

☑ **Cigarettes**   Packs Per Day (half pack = .5) 1.0   Start Year 1960 End Year 1993

☐ **Cigars**   Cigars Per Day _____   Start Year _____ End Year _____

☐ **If Other Tobacco Products, please specify (e.g., chewing tobacco):** _____
   Amount Per Day _____   Start Year _____ End Year _____

Have you ever been diagnosed with chronic obstructive pulmonary disease ("COPD")?...n/a......☐ Yes ☑ No

*If yes, please attach all documents regarding such diagnosis and explain the nature of the diagnosis:*

3. **Information Regarding Chest X-Ray** n/a - Gary Smith had meso. X-rays showed cancer but pathology tests made the diagnosis of meso. See Exhibit A Dr. Hammar's Report

Please check the box next to the applicable location where your chest x-ray was taken (check one):

☐ Mobile laboratory ☐ Job site ☐ Union Hall ☐ Doctor office ☐ Hospital ☐ Other: _____

Address where chest x-ray taken: _____
                                   Address

_____        _____        _____
City                         State/Province          Zip/Postal Code

*As noted in Part III 3 - Gary Smith had mesothelioma confirmed by*

## PART III. ASBESTOS-RELATED CONDITION(S) (Continued)

*pathology, not x-rays making this section* No *applicable since x-rays are irrelevant to Gary Smith's* **4. Information Regarding Chest X-Ray Reading** *N/a* asbestos-related mesothelioma

Date of Reading: ___ / ___ / _____

ILO score: _____

Name of Reader: _____

Reader's Daytime Telephone Number:.............................................................( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___

Reader's Mailing Address: _____
                                    Address

_____
City                                              State/Province                          Zip/Postal Code

With respect to your relationship to the reader, check all applicable boxes:

Was the reader paid for the services that he/she performed........................................................☐ Yes ☐ No

*If yes, please indicate who paid for the services performed*: _____

Did you retain counsel in order to receive any of the services performed by the reader? ...........................☐ Yes ☐ No

Was the reader referred to you by counsel?.............................................................................☐ Yes ☐ No

Are you aware of any relationship between the reader and your legal counsel? .........................................☐ Yes ☐ No

*If yes, please explain:* _____

**Was the reader certified by the National Institute for Occupational Safety and Health at the time of the reading?**

.................................................................................................................................☐ Yes ☐ No

*If the reader is not a certified B-reader, please describe the reader's occupation, specialty, and the method through which the reading was made:*_____

**5. Information Regarding Pulmonary Function Test:** ..............................Date of Test: ___ / ___ / ___ ___ ___ ___

List your height in feet and inches when test given: ........................................................ _____ ft _____ inches

List your weight in pounds when test given: ................................................................................. _____ lbs

Total Lung Capacity (TLC):....................................................................................._____ % of predicted

Forced Vital Capacity (FVC): .................................................................................._____ % of predicted

FEV1/FVC Ratio: ................................................................................................._____ % of predicted

Name of Doctor Performing Test (if applicable): _____

Doctor's Specialty: _____

Name of Clinician Performing Test (if applicable): _____

Testing Doctor or Clinician's Mailing Address: _____
                                                          Address

_____
City                                              State/Province                          Zip/Postal Code

Testing Doctor or Clinician's Daytime Telephone Number: .........................( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___

Name of Doctor Interpreting Test: _____

Doctor's Specialty: _____

Interpreting Doctor's Mailing Address: _____
                                                 Address

_____
City                                              State/Province                          Zip/Postal Code

Interpreting Doctor's Daytime Telephone Number: ....................................( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___

6

*Not Necessary*
*Claimant Died*
*of Meso  Exhibit A*

*Again, since Gary Smith's asbestos-related mesothelioma was diagnosed by pathology, the*

**PART II - ASBESTOS RELATED CONDITION(S) (Continued)   SEC(c)(2)**

*n/a   Not applicable*

**With respect to your relationship to the doctor or clinician who performed the pulmonary function test check all applicable boxes:**

*Not applicable I am not in need of resc ee exhibit*

If the test was performed by a doctor, was the doctor your personal physician? ......................... ☐ Yes ☐ No

Was the testing doctor and/or clinician paid for the services that he/she performed? ................... ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the testing doctor or clinician?.. ☐ Yes ☐ No

Was the testing doctor or clinician referred to you by counsel? ................................................ ☐ Yes ☐ No

Are you aware of any relationship between either the doctor or clinician and your legal counsel? ............. ☐ Yes ☐ No

*If yes, please explain:* _____

**Was the testing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the pulmonary function test?** ............................................................... ☐ Yes ☐ No

**With respect to your relationship to the doctor interpreting the results of the pulmonary function test check all applicable boxes:**

Was the doctor your personal physician? ............................................................................ ☐ Yes ☐ No

Was the doctor paid for the services that he/she performed? ................................................... ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor? ............... ☐ Yes ☐ No

Was the doctor referred to you by counsel? ........................................................................ ☐ Yes ☐ No

Are you aware of any relationship between the doctor and your legal counsel? .......................... ☐ Yes ☐ No

*If yes, please explain* _____

**Was the doctor interpreting the pulmonary function test results certified as a pulmonologist or internist by the American Board of Internal Medicine at the time the test results were reviewed?** ............................. ☐ Yes ☐ No

**6. Information Regarding Pathology Reports:**   *See  EX. A*

**Date of Pathology Report:** ........................................   0 4 / 1 7 / 1 9 9 5

**Findings:**   _Mesothelioma_

**Name of Doctor Issuing Report:**   _Dr.  Samuel  Hammon_

**Doctor's Specialty:**   _Pathology_

**Doctor's Mailing Address:**   _7 0 0   Lebo   Blvd._
                              Address

_Bremerton_   _,   Wash_        _98310_
City          State/Province       Zip/Postal Code

**Doctor's Daytime Telephone Number:** ........................................   ( 3 6 0 ) 4 7 9 - 7 7 0 7

**With respect to your relationship to the doctor issuing the pathology report, check all applicable boxes:**

Was the doctor your personal physician? ............................................................................ ☐ Yes ☑ No

Was the doctor paid for the services that he/she performed? ................................................... ☑ Yes ☐ No

*If yes, please indicate who paid for the services performed:*   _counsel_

Did you retain counsel in order to receive any of the services performed by the doctor? ............... ☑ Yes ☐ No

Was the doctor referred to you by counsel? ........................................................................ ☑ Yes ☐ No

Are you aware of any relationship between the doctor and your legal counsel? .......................... ☑ Yes ☐ No

*If yes, please explain:*   _expert_

**Was the doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis?**

............................................................................................................................... ☑ Yes ☐ No

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

*See    EX   A - Dr. Hammar*

7. With respect to the condition alleged, have you received medical treatment from a doctor for the condition?

..................................................................................................................................☑ Yes ☐ No

*If yes, please complete the following:*

**Name of Treating Doctor:** Tallahassee memorial Regional Medical Center

**Treating Doctor's Specialty:** provided medical care for Gary Smith before he died the names etc v/

**Treating Doctor's Mailing Address:** doctors involved in his care are set forth in Exhibit A records and

_____ Echibit

Tallahassee                                  FL.                    32304    B

City                          State/Province              Zip/Postal Code    Response

**Treating Doctor's Daytime Telephone number:** Many treating doctors were involved -    To

Was the doctor paid for the services that he/she performed?...............................................☑ Yes ☐ No    Interogatory

*If yes, please indicate who paid for the services performed:* injured party and/or insured    No.

Did you retain counsel in order to receive any of the services performed by the doctor?.....................☐ Yes ☑ No    (nine)


[REMAINDER OF PAGE INTENTIONALLY BLANK]

**PART III: YOUR EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS**

Please complete the chart below for each site at which you allege exposure to Grace asbestos-containing products. If you allege exposure at multiple sites, the Court has ordered that you must complete a separate chart for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each job listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Grace asbestos-containing products

(b) A worker who personally removed or cut Grace asbestos-containing products

(c) A worker who personally installed Grace asbestos-containing products

(d) A worker at a site where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(e) A worker in a space where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(f) If other, please specify: _See EX B#25_

**Site of Exposure:**

Site Name: _Chatahoochee State Mental Hospital_    Location: _Chatahoochee, Fla._

Site Type: ☐ Residence ☑ Business    Site Owner: _see employer_

Employer During Exposure: _Chatahoochee State Mental Hospital_    Unions of which you were a member during your employment: _____

| | | | Medical Position 118 |
|---|---|---|---|
| Job 1 Description: | Info regarding Product I.D. | 59 | Hospital yes Unknown |
| Job 2 Description: | etc. is to voluminous for space | | Additional exposure information is set forth in Exhibit B, Interrogatory |
| Job 3 Description: | provided. Consequently the | | Response # 25 which sets |
| Job 4 Description: | responses are set forth in | | forth the information requested |
| Job 5 Description: | Claimant's Interrogatory Response | | but to voluminous to set forth |
| Job 6 Description: | #25 attached as Exhibit B | | in the space provided. |

9

Exposed to W.R. Grace products manufactured between 1940's and 1970's. Most Common products include Monokote and Zonolite fireproofing spray, decorative finishes, and coatings. **Also See Ex. B-1**

*Our's that makes no domaging this assertion so this section is N/A*

## PART IV. INDIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

1. **Are you asserting an injury caused by exposure to Grace asbestos-containing products through contact/proximity with another injured person?** .................................................................................. ☐ Yes ☑ No

   *If yes, complete questions 2 through 10 of this section for each injured person through which you allege exposure to Grace asbestos-containing products. For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.*

2. **Please indicate the following information regarding the other injured person:**

   **Name of Other Injured Person:** _____ **Gender:** ☐ Male ☐ Female

   **Last Four Digits of Social Security Number** __ __ __ __   **Birth Date:** __ __ / __ __ / __ __ __

3. **What is your Relationship to Other Injured Person:** ................................... ☐ Spouse ☐ Child ☐ Other

4. **Nature of Other Injured Person's Exposure to Grace Asbestos-Containing Products:**

   _____

5. **Dates Other Injured Person was Exposed to Grace Asbestos-Containing Products:**

   **From:** __ __ / __ __ / __ __ __ __    **To:** __ __ / __ __ / __ __ __ __

6. **Other Injured Person's Basis for Identification of Asbestos-Containing Product as Grace Product:**

   _____

7. **Has the Other Injured Person filed a lawsuit related to his/her exposure?** ............................................ ☐ Yes ☐ No

   *If yes, please provide caption, case number, file date, and court name for the lawsuit:*

   **Caption:** _____

   **Case Number:** _____  **File Date:** __ __ / __ __ / __ __ __ __

   **Court Name:** _____

8. **Nature of Your Own Exposure to Grace Asbestos-Containing Product:**

   _____

9. **Dates of Your Own Exposure to Grace Asbestos-Containing Product:**

   **From:** __ __ / __ __ / __ __ __ __    **To:** __ __ / __ __ / __ __ __ __

10. **Your Basis for Identification of Asbestos-Containing Product as Grace Product:**

    _____

*This section is Not applicable*

[REMAINDER OF PAGE INTENTIONALLY BLANK]

10

**PART V: EXPOSURE TO NON-GRACE ASBESTOS-CONTAINING PRODUCTS**

Please complete the chart below for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products. If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate chart for each party. For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked. In the "Nature of Exposure" column, for each product listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Non-Grace asbestos-containing products
(b) A worker who personally removed or cut Non-Grace asbestos-containing products
(c) A worker who personally installed Non-Grace asbestos-containing products
(d) A worker at a site where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(e) A worker in a space where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(f) If other, please specify. _See EX B & #25, EX one_

| Party Against which Lawsuit or Claim was Filed: | | | |
|---|---|---|---|
| | | This information is provided as follows | D. |
| **Site of Exposure 1** | Job 1 Description: | medical 59 | |
| Site Name: | | hospital 118 | yes, unknown |
| Address: | | As not both in Part III at p. 9 of this questionnaire | |
| City and State: | Job 2 Description: | | |
| Site Owner: | Job 3 Description: | Additional information concerning exposure | |
| **Site of Exposure 2** | Job 1 Description: | Is set both in Exhibit B, Response to | |
| Site Name: | | | |
| Address: | Job 2 Description: | Interrogatories, As stated in Section III page | |
| City and State: | | | |
| Site Owner: | Job 3 Description: | nine, the space provided in this questionnaire | |
| **Site of Exposure 3** | Job 1 Description: | is not sufficient to list the information | |
| Site Name: | | in the space provided. | |
| Address: | Job 2 Description: | | |
| City and State: | | | |
| Site Owner: | Job 3 Description: | | |

11

**PART VI EMPLOYMENT HISTORY**

Other than jobs listed in Part III or V, please complete this Part VI for all of your prior industrial work experience up to and including your current employment. For each job, include your employer, location of employment, and dates of employment. Only include jobs at which you worked for at least one month. Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.

**Occupation Code:** 59   If Code 59, specify: _Gary Smith was opposed to asbestos while working in a hospital_

**Industry Code:** 118   If Code 118, specify: _containing W.R. Grace asbestos containing flank products_

**Employer:** _Information is provided in detail in Standard Responses to Interrogatories Response #25_

**Beginning of Employment:** _/ See Exhibit B_   **End of Employment:** _/ /_

**Location:** _This information is provided in detail in Exhibit B interogatory No. 25_
    Address

City                          State/Province              Zip/Postal Code

**Occupation Code:** _____   If Code 59, specify: _____

**Industry Code:** _____   If Code 118, specify: _____

**Employer:** _____

**Beginning of Employment:** __ __ / __ __ / __ __ __ __   **End of Employment:** __ __ / __ __ / __ __ __ __

**Location:** _____
    Address

City                          State/Province              Zip/Postal Code

**Occupation Code:** _____   If Code 59, specify: _____

**Industry Code:** _____   If Code 118, specify: _____

**Employer:** _____

**Beginning of Employment:** __ __ / __ __ / __ __ __ __   **End of Employment:** __ __ / __ __ / __ __ __ __

**Location:** _____
    Address

City                          State/Province              Zip/Postal Code

**Occupation Code:** _____   If Code 59, specify: _____

**Industry Code:** _____   If Code 118, specify: _____

**Employer:** _____

**Beginning of Employment:** __ __ / __ __ / __ __ __ __   **End of Employment:** __ __ / __ __ / __ __ __ __

**Location:** _____
    Address

City                          State/Province              Zip/Postal Code

12

**PART VII. LITIGATION AND CLAIMS REGARDING ASBESTOS AND/OR SILICA**

### a. LITIGATION

1. Have you ever been a plaintiff in a lawsuit regarding asbestos or silica?.............................☒ Yes ☐ No

   *If yes, please complete the rest of this Part VII(a) for each lawsuit.   For your convenience, additional copies of Part VII are attached as Appendix G to this Questionnaire*

2. Please provide the caption, case number, file date, and court name for the lawsuit you filed:

   Caption: _Ellen Ashdown v Abex Corp._

   Case Number: _96/288_    File Date: _05/31/1994_

   Court Name: _S.F Superior Court_

3. Was Grace a defendant in the lawsuit? ................................................................☒ Yes ☐ No

4. Was the lawsuit dismissed against any defendant? ..........................................☐ Yes ☒ No

   *If yes, please provide the basis for dismissal of the lawsuit against each defendant:*

5. Has a judgment or verdict been entered?.............................................................☐ Yes ☒ No

   *If yes, please indicate verdict amount for each defendant(s):* _____

6. Was a settlement agreement reached in this lawsuit? ......................................☒ Yes ☒ No

   *If yes and the settlement was reached on or after April 2, 2001, please indicate the following:*

   a. Settlement amount for each defendant: _____ See Ex one which_

   b. Applicable defendants: _____ provides all the information requested_

   c. Disease or condition alleged: _____ in this section_

   d. Disease or condition settled (if different than disease or condition alleged): _MESO_

7. Were you deposed in this lawsuit? ......................................................................☐ Yes ☒ No

   *If yes and Grace was not a party in the lawsuit, please attach a copy of your deposition to this Questionnaire.*

### b. CLAIMS      _See Attached Exhibit One_

1. Have you ever asserted a claim regarding asbestos and/or silica, including but not limited to a claim against an asbestos trust (other than a formal lawsuit in court)? ..........................................☒ Yes ☐ No

   *If yes, please complete the rest of this Part VII(b). If no, please skip to Part VIII.*

2. Date the claim was submitted:................................................................... __ __ / __ __ / __ __ __ __

3. Person or entity against whom the claim was submitted: _____

4. Description of claim: _Bankruptcy_

5. Was claim settled? ......................................_See EX one_ ................☐ Yes ☐ No

6. Please indicate settlement amount: ........................................................$_____

7. Was the claim dismissed or otherwise disallowed or not honored? .........................☐ Yes ☒ No

   *If yes, provide the basis for dismissal of the claim:* _As set forth in Exhibit One, various bankruptcy claims have been submitted or will be submitted since companies are in bankruptcy that have not set a claims filing date. The name of each bankrupt defendant and the claim status is all set forth in Exhibit One_

## PART III: CLAIMS BY DEPENDENTS OR RELATED PERSONS

**Name of Dependent or Related Person:** _Ellen Ashdown_     **Gender:** ☐ Male ☒ Female

**Last Four Digits of Social Security Number:** _0466_     **Birth Date:** _03/19/1945_

**Financially Dependent:** ...............................................................................................................☒ Yes ☐ No

**Relationship to Injured Party:** ☒ Spouse ☐ Child ☐ Other  If other, please specify _____

**Mailing Address:** _525 E. Gulf Beach Drive_
Address

_St. George Island_                     _Fl._               _32328_
City                                          State/Province          Zip/Postal Code

**Daytime Telephone number:** ................................................................( _510_ ) _832-2980_.

## PART IX: SUPPORTING DOCUMENTATION

Please use the checklists below to indicate which documents you are submitting with this form.

**Copies:**

☑ Medical records and/or report containing a diagnosis
☐ Lung function test results
☐ Lung function test interpretations
☑ Pathology reports
☑ Supporting documentation of exposure to Grace asbestos-containing products
☑ Supporting documentation of other asbestos exposure

☐ X-rays
☐ X-ray reports/interpretations
☐ CT scans
☐ CT scan reports/interpretations
☐ Depositions from lawsuits indicated in Part VII of this Questionnaire
☑ Death Certification

**Originals:**

☐ Medical records and/or report containing a diagnosis
☐ Lung function test results
☐ Lung function test interpretations
☐ Pathology reports
☐ Supporting documentation of exposure to Grace asbestos-containing products

☐ Supporting documentation of other asbestos exposure
☐ X-rays
☐ X-ray reports/interpretations
☐ CT scans
☐ CT scan reports/interpretations
☐ Death Certification

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation. Please indicate the documents for which you are seeking reimbursement and attach a receipt for such costs:

## PART X: ATTESTATION THAT INFORMATION IS TRUE AND ACCURATE

The information provided in this Questionnaire must be accurate and truthful. This Questionnaire is an official court document that may be used as evidence in any legal proceeding regarding your Claim. The penalty for presenting a fraudulent Questionnaire is a fine of up to $500,000 or imprisonment for up to five years, or both. 18 U.S.C. §§ 152 & 3571. **TO BE COMPLETED BY THE INJURED PERSON.**

I swear, **under penalty of perjury**, that, to the best of my knowledge, all of the foregoing information contained in this Questionnaire is true, accurate and complete.

Signature: _____     Date: __ / __ / _____

Please Print Name: _____

**TO BE COMPLETED BY THE LEGAL REPRESENTATIVE OF THE INJURED PERSON.**

I swear that, to the best of my knowledge, all of the information contained in this Questionnaire is true, accurate and complete.

X Signature: _____     Date: _03/06/2006_

Please Print Name: _____

LAW OFFICES OF
CHRISTOPHER E. GRELL
360 22ND ST., SUITE 320
OAKLAND, CA 94612

Additional Responses To W.R. Graces' Proof of Claim
Section I and II

## **EXHIBIT A**

Claimant's Responses to W.R. Graces' Proof of Claim Request for Information Concerning Claimant/Asbestos Victim's Asbestos Related Injury Including Medical Documentation, x-ray reports, pathology reports if applicable, doctors opinion concerning Claimant/Asbestos Victims Asbestos Injury – information that is too voluminous to write out in the space provided for in W.R. Graces' Proof of Claim form Sections Part I and Part II.

Consequently, it is necessary to add to the responses to Part I and Part II set forth in the W.R.Graces' Proof of Claim Form these additional responses.

**Exhibit A:**    Responsive Information Pertaining To Claimant/Asbestos Victim's Asbestos Related Injury  Re: W.R. Grace

Diagnostic Specialties Laboratory, Inc. P.S.

P.O. Box 2171 • 700 Lebo Blvd.
Bremerton, WA 98310

Samuel Hammar, M.D., Director
Keith Hallman, M.D.
John Matan, M.D.
David M. Bray, M.D.

(360) 479-7707
800-762-2344 (WA)
(360) 479-7886 FAX

*April 17, 1995*

**APR 19 1995**

*Jeanette M. Waight, Legal Assistant to*
*Christopher E. Grell, Attorney at Law*
*The Monadnock Building*
*685 Market Street #340*
*San Francisco, California 94105*

*Re:     Smith, Gary G.*
*        Our L-259-94*

*Dear Ms. Waight:*

*Please find enclosed my report on Gary G. Smith. Mr. Smith was only 49 years old when he died from malignant mesothelioma. You indicated that he had an exposure to asbestos and also had a 34-pack/year history of cigarette smoking.*

*Mr. Smith also had a history of hairy cell leukemia that was diagnosed and treated 15 years ago. This is a rare type of leukemia of lymphocytes that by light microscopy have protrusions from the cell surface which makes them look hairy. This disease was treated with splenectomy and chemotherapy and appeared to have been cured.*

*In early 1994, Mr. Smith started complaining of left lower chest pain and left upper quadrant pain. A chest X-ray and CT scan of the chest and abdomen showed thickening of the left pleura and thickening in the left upper quadrant of the abdomen. Pleural biopsies were done, which were stated to be nondiagnostic. A thoracoscopy was attempted but could not be done because of the rind of tumor covering the left lung. A thoracotomy was done and biopsies were obtained that showed pieces of fibrous tissue that had an appearance consistent with a characteristic of a desmoplastic mesothelioma.*

*Mr. Smith had a rapidly downhill course and died on April 21, 1994, only a few months after his diagnosis. The autopsy tissue that I received showed an extensive malignant tumor encasing the left lung. The predominant pattern of the tumor was that of a desmoplastic mesothelioma, although there are other areas in which the tumor was relatively polymorphic, being composed of some large tumor giant cells. There was even focal epithelial differentiation by the tumor. The immunohistochemical studies we performed on the tumor confirmed it to be a malignant mesothelioma.*

*Asbestos digestion analysis on a small sample of lung tissue that was sent with the other pieces of tissue showed 800 asbestos bodies/gram of wet lung tissue. Based on the elevated numbers of asbestos bodies in the lung tissue and the history of occupational exposure to asbestos, I conclude that Mr. Smith's malignant left pleural mesothelioma was caused by asbestos.*

Exhibit A

*If you have any questions concerning my report, please let me know.*

*Sincerely,*

*Samuel P. Hammar, M.D.*

*SPH/sl*

*Encl.*

AGNOSTIC SPECIALTIES LABORATL .., iNC., P.S.
700 LEBO BOULEVARD/P.O. BOX 2171
BREMERTON, WASHINGTON 98310

| Name: | Smith, Gary G. | Age: 49   Attorney: Grell |
|---|---|---|
| | | DOB: 07-29-44   DOD: 04-21-94 |
| Patient No: | Consultation | Date: 09/22/94, 11/9/94 |
| Requested: | Jeanette M. Waight, Legal Assistant to Christopher E. Grell, | |
| | Attorney at Law, The Monadnock Building, 685 Market Street | |
| | #340, San Francisco, California 94105 | |

| Specimens: | Autopsy tissue sample | Thomas P. Wood, M.D. |
|---|---|---|
| | 94A-16 | Pathology/Tallahassee Memorial |
| | | Magnolia Drive & Miccosukee Road |
| | | Tallahassee, Florida 32308 |
| rc'd 11/9 | Review of slides (4) + (3) paraffin blocks | |
| | 94S-757 (2) + (2) | |
| | 94S-1551 (2) + (1) | |

All from pathologist

Received from Thomas P. Wood, M.D., Department of Pathology, Tallahassee
Memorial Regional Medical Center, Tallahassee, Florida, at the request of
Jeanette M. Waight, Legal Assistant to Christopher E. Grell, Attorney at Law,
San Francisco, California, is a bag of fixed autopsy tissue. Also received is a
copy of Dr. Wood's autopsy report of Gary G. Smith, who died April 21, 1994 at
age 49 years. Received on November 9, 1994 are an additional four glass slides
plus three paraffin blocks with corresponding pathology reports concerning Gary
G. Smith. .

Gross Description:
Received in a small gauze sponge are eleven pieces of tissue, the majority of
which have the appearance of tumor tissue, with at least two of these showing
tumor in association with lung, with the tumor forming what appears to be a rind
around the lung, with macroscopic findings highly suggestive of malignant
mesothelioma. There is one piece of bone that probably represents rib, and some
other pieces of tissue that include rib and bone, and solid tumor. There is one
nodule of tissue that is brownish-tan, that consists mostly of tumor with
central necrosis. I'm uncertain what the brownish-tan tissue surrounding this
is. Sections of lung tissue with obvious tumor are submitted in cassettes 1-3;
other sections of tumor are submitted in cassettes 4 and 5; sections of the
nodule with the appearance of metastatic tumor are submitted in cassette 6.
There is one piece of relatively normal-appearing lung tissue measuring about 3
x 3 x 0.5 cm that shows one area of slight visceral pleural thickening that
could be tumor. A small slice of this tumor is submitted in cassette 7, and the
remainder is submitted for asbestos digestion analysis. It weighs approximately
1.3 g.

There is a copy of a consultation report concerning Mr. Gary Smith from the
Tallahassee Memorial Regional Medical Center by Dr. Dale A. Wickstrum dated
March 3, 1994. This history states that Mr. Smith was a 49-year-old man who was
recently admitted to the Tallahassee Memorial Regional Medical Center for
exploratory left thoracotomy. The history states that two-three months prior to

-continued-
ACCESSION L-259-94

Smith, Gary G.
Consultation
Page 2

this time, Mr. Smith noted pain and discomfort in the left lower rib cage. This
appeared to be adjacent to a previous splenectomy scar. Mr. Smith also noted
epigastric discomfort and low back pain. A chest radiograph was done which
showed an area of thickening in the left pleura. A left pleural biopsy was
performed which was stated to be nondiagnostic. A CT scan of the chest and the
abdomen showed an area of thickening in the left chest area, an area of
thickening in the stomach wall, and thickening in the left upper retroperitoneal
region. An upper GI study showed greatly thickened gastric folds and upper GI
endoscopy showed gastritis. The biopsy showed chronic inflammation. The report
goes on to state that Mr. Smith had a history of hairy cell leukemia
approximately 15 years ago, presenting with a huge spleen and pancytopenia. He
was treated by splenectomy. In addition, he had a lytic lesion in the left
clavicle and received a course of radiation treatment to the left clavicle.
There was no radiation given to the left hemithorax. Mr. Smith subsequently was
treated with systemic chemotherapy consisting of platinum, Velban, and
chlorambucil. Mr. Smith had no other problems related to his hairy cell
leukemia and had not required any blood transfusions. Except for the most
recent illness, he had been doing well. He had a few abnormal lymphocytes
detectable in his peripheral blood.

Mr. Smith was admitted to the hospital for a left thoracotomy. The report
states that an attempt was made to explore the pleura via thoracoscopy, but the
rind of tumor involving the left pleura made this procedure difficult.
Subsequent open biopsies of the pleura were obtained which were stated to show
an atypical spindle-cell proliferation consistent with a consistent
mesothelioma. The pathology slides were stated to have been reviewed at the
University of Virginia, and the report from that institution stated that the
findings were consistent with a spindle-cell variant of a malignant mesothelioma
(my note: a spindle-cell variant of malignant mesothelioma is referred to as a
sarcomatoid mesothelioma or a fibrous mesothelioma). The report states that Mr.
Smith's chief problem was pain and that an epidural catheter was placed to
deliver medicines to relieve the pain. Mr. Smith was also being considered for
an intercostal nerve block. Mr. Smith had been taking Zantac and Valium but no
other medications. He had no significant past medical illnesses except for his
hairy cell leukemia. Under the heading "Habits" Mr. Smith was stated to have a
past history of cigarette smoking and also a prior history of asbestos exposure
(my note: the type of asbestos exposure he had is not stated). On physical
examination, auscultation of the right lung was stated to be clear. The left
lung showed decreased breath sounds at the left base. Palpation of the abdomen
showed no palpable hepatomegaly. Laboratory studies showed a hematocrit of 38,
a white blood cell count of 8,600, and a platelet count of 304,000. The
differential white blood cell count was normal.

There is a copy of a death summary from the Tallahassee Memorial Regional
Medical Center by Dr. R. James Mabry. This short report indicates that Mr.
Smith had been diagnosed as having mesothelioma and had a past history of hairy
cell leukemia. He was admitted to the hospital because of the inability to keep
his pain under control at home. At the time of admission, Mr. Smith was started
on IV fluids and was given parenteral corticosteroids and was continued on MS

-continued-
ACCESSION L-259-94

Smith, Gary G.
Consultation
Page 3

Contin by mouth and received small doses of Valium. A CT scan of the head was ordered and showed slight cerebral atrophy but no evidence of metastatic tumor. Mr. Smith had a fairly rapidly downhill course and died on April 21, 1994, which was about four days after his admission.

There is a copy of an autopsy report from the Pathology Associates of Tallahassee Memorial Regional Medical Center, Tallahassee, Florida. The first page of the autopsy lists Mr. Smith's name, age, date of birth, and hospital number. The death on the autopsy report was April 21, 1994, and the date of the autopsy was April 22, 1994. The final anatomic diagnoses, which are listed on the first page, are:

1.    PLEURAL MESOTHELIOMA WITH EXTENSION INTO THE LEFT CERVICAL AREA AND LEFT UPPER QUADRANT OF THE ABDOMEN. METASTATIC TUMOR INVOLVING MEDIASTINUM, RIGHT LUNG, MESENTERY, MUCOSA OF BOWEL, PERIAORTIC LYMPH NODES, RETROPERITONEAL AREA, LIVER, AND ADRENAL GLAND.

2.    OBSOLETE OPERATION:  SPLENECTOMY (HISTIOCYTIC OR HAIRY CELL LEUKEMIA).

3.    PERITONEAL ADHESIONS.

4.    SEVERE CONGESTION AND PNEUMONITIS OF THE RIGHT LUNG.

5.    CYST OF THE UPPER POLE OF THE LEFT KIDNEY.

6.    NEGATIVE CENTRAL NERVOUS SYSTEM, PROSTATE, LARYNX, THYROID, TESTES AND HEART.

7.    MULTIPLE IRON STAINS NEGATIVE FOR FERRUGINOUS BODIES.

8.    NO EVIDENCE OF RESIDUAL OR RECURRENT HAIRY CELL LEUKEMIA.

Under the heading of "Internal Examination" on the second page of the autopsy, it states that the body was opened through a Y-shaped incision and there was dense fibrous thickening of the pleura and the diaphragm on the left. There were also dense fibrous peritoneal adhesions. Dissection of the small and large bowels and abdominal viscera was difficult. Dissection of the left lung was also stated to be extremely difficult due to the fibrotic tumor mass. Increased peritoneal fluid was present which was described as being straw-colored. Under the heading "Cardiovascular System" the heart was stated to weigh 250 grams and to appear grossly normal. Under the heading "Respiratory System" the left lung was removed in two portions which weighed 610 and 340 grams each. The lung surface was covered by thick greyish-white fibrotic pleura with occasional nodules. Similar tissue was involving the left diaphragm. The right lung was stated to weight 1,600 grams and to contain thickened pleura, pleural nodules and occasional parenchymal nodules that were greyish-white and roughly round. The trachea and larynx were stated to be unremarkable. Both lungs are stated to appear congested. Under the heading "Spleen and Lymph Nodes" the autopsy report states that the spleen was surgically absent, and that there were large lymph nodes present in many areas. Some of these were stated to be reddish-purple on

-continued-
ACCESSION L-259-94

Smith, Gary G.
Consultation
Page 4

sectioning and others firm and greyish-white. Obvious tumor was present within
the lymph nodes in the posterior mediastinum at the periaortic region and the
mesentery of the bowel. Under the heading "Gastrointestinal Tract" the autopsy
report states that the esophagus was unremarkable. The gastric mucosa was
stated to be distinctly pebbled. The pylorus and duodenum were stated to be
unremarkable except for focal dark grey discoloration of the pylorus. The small
and large bowels were unremarkable except for the numerous fibrous adhesions on
the surface. There was pebbly induration adjacent to the cecum. The pancreas
was stated to be unremarkable. The liver was stated to weigh 2,610 grams and
contain numerous grey-white metastatic tumor nodules that were sometimes
umbilicated. About 85-95% of the liver was stated to be replaced by tumor.
Under the heading "Genitourinary," the report states that the left kidney
weighed 160 grams, and there was a 30-gram cyst at the upper pole. The right
kidney weighed 130 grams. Both kidneys were stated to be unremarkable and the
ureters were not dilated. The urinary bladder was not dilated, and the prostate
was stated to not be enlarged. Under the heading "Endocrine," the thyroid was
stated to be unremarkable and the parathyroid glands were stated to not be
identified. The left adrenal gland was stated to contain an adjacent portion of
what appeared to be metastatic tumor. Under the heading "Bone," bone from
multiple sites was obtained and some marrow contained firm greyish-white fibrous
tumor suggestive of metastatic involvement. Under the heading "Central Nervous
System," the brain was stated to weigh 1,480 grams and to show no significant
changes.

There are two glass slides and two paraffin blocks designated "94S-757."
One of the slides designated "94S-757" consist mostly of skeletal muscle and
fibrous tissue consistent with chest wall and parietal pleura. This slide is
unremarkable. The other slide designated "94S-757" consists mostly of dense
fibrous tissue that is moderately cellular in area with a small amount of
skeletal muscle at one side. The appearance of this tissue would raise the
possibility of a malignant mesothelioma, probably desmoplastic variety. I don't
think one could be absolutely certain from this biopsy if this is malignant or
benign, although the appearance would raise a possibility of a malignancy. The
other differential diagnosis would be "FIBROSING PLEURITIS."

There are two glass slides designated "94S-1551." These slides show more pieces
of the fibrous-type tissue which varies from being moderately cellular to
relatively hypocellular. The appearance of the tissue strongly suggests the
diagnosis of malignant mesothelioma in areas of increased cellularity. The
tumor is probably best classified as a desmoplastic/sarcomatoid mesothelioma.
The slides designated "94S-1551" were reviewed by Robert Fechner, M.D., and
Frank J. Bellafiore, M.D., of the University of Virginia Health Sciences Center,
Department of Pathology. Dr. Fechner and Dr. Bellafiore diagnosed malignant
mesothelioma desmoplastic type. There is also a copy of a report from IMMPATH
indicating that they performed immunohistochemistry on autopsy tissue designated
"94A-16." The tests they did were Cytokeratin, Leu M1, CEA, B72.3, and
epithelial antigen. The Cytokeratin was positive. The Leu M1, CEA, B72.3, and
epithelial antigen were all negative. Their interpretation was that these
results favored mesothelioma.

-continued-
ACCESSION L-259-94

Smith, Gary G.
Consultation
Page 5

Also present in the medical records is a copy of the death certificate, which
states that Mr. Smith died from malignant mesothelioma.  There is information
from Jeanette Waight of the Christopher Grell Law Office stating that Mr. Smith
smoked one pack of cigarettes a day from 1960-1944 (34-pack/years).  Under the
heading "Exposure History" the report states that Mr. Smith worked as a
counsellor at the Orange County Juvenile Hall while a remodel was being done,
and he would have been exposed to asbestos-containing materials during the
remodel.  Mr. Smith also worked at Amercote, a company that manufactured
asbestos-containing pipe.  His job at Amercote was to test and inspect the
asbestos-containing pipe.  Mr. Smith was also stated to have worked as a
psychologist at the Florida Mental Health Hospital, which was known to have been
insulated with asbestos-containing materials.

Microscopic Description:
Sections of the tumor encasing the left lung show it to exhibit variable
differentiation.  Most of the tumor is composed of relatively dense and
hypocellular connective tissue with the pattern being consistent with a
desmoplastic mesothelioma.  In other areas, the tumor is much more cellular and
much more pleomorphic.  It focally infiltrates into the lung parenchyma.  There
are tumor giant cells with huge irregular-shaped nuclei and prominent nucleoli.
There are also areas where the tumor shows a storiform pattern such as one would
see in a malignant fibrous histiocytoma.  In addition, there is focal epithelial
differentiation by the tumor in which the tumor cells are round, polygonal and
cuboidal and some focal cytoplasmic baculation.  The majority of the tumor is
desmoplastic in nature.  The adjacent lung tissue that is being infiltrated by
the tumor shows acute bronchitis and bronchopneumonia.  The tumor focally
infiltrates into the mediastinal tissue.  There is one section that shows tumor
on the serosal surface of the large intestine.  The tumor is infiltrating fat
and is composed predominantly of spindle-shaped cells.  There is also a section
of the liver that shows involvement by tumor that is mostly spindle-shaped
neoplasm but has areas of cellular pleomorphism with large nuclei and prominent
nucleoli.

Immunohistochemical Studies:  Immunohistochemical studies were done for Keratin,
Vimentin, muscle-specific Actin, Desmin, HMFG-2, CEA, Leu M-1, B72.3, and
BerEP4.  The positive controls show the expected staining result.  The majority
of the neoplastic cells, including the spindle-shaped cells, the epithelial
cells, and the pleomorphic cells show immunostaining with the Keratin cocktail
antibody.  Some of the spindle-shaped cells show immunostaining for Vimentin,
although most of the epithelial cells and the pleomorphic cells are negative.
The neoplastic cells show no immunostaining for muscle-specific Actin or Desmin.
The section stained for Human Milkfat Globule Protein-2 shows a good built-in
control of the alveolar lining cells.  The neoplastic cells forming the
mesothelioma are negative for Human Milkfat Globule Protein-2.  The neoplastic
cells show no immunostaining for CEA, Leu M-1, B72.3, and BerEP4.  This
immunophenotype is nonspecific but is consistent with and characteristic of a
mesothelioma showing this type of differentiation.

-continued-
ACCESSION L-259-94

Smith, Gary G.
Consultation
Page 6

Asbestos Digestion Analysis: One 1.3-gram sample of peripheral lung tissue is cut into small pieces and completely digested in commercial bleach. After complete digestion the bleach is carefully decanted and the sediment at the bottom of the container is carefully extracted with equal volumes of chloroform and 50% ethyl alcohol. This solution is transferred to a test tube, shaken vigorously, and centrifuged at 1200 rpm for ten minutes. After removal of as much carbonaceous material as possible, the solution is recentrifuged and the sediment at the bottom of the test tube is extracted in 95% alcohol and passed through a Millipore filter of 0.5 micrometer diameter pore size. Asbestos bodies on the filter are then counted. Results are as follows:

Sample #1   =   800 asbestos bodies/gram wet lung tissue

Comment: In our laboratory, persons with no occupational history of exposure to asbestos have between 0-20 asbestos bodies per gram of wet lung tissue.


The following summary statements can be made in this case:

1.    Mr. Smith was a 49-year-old man with a 34-pack/year history of cigarette smoking and a history of exposure to asbestos while working at Amercote, a company that manufactured asbestos-containing pipe, while working as a counsellor at the Orange County Juvenile Hall while remodelling was done, and potentially while working as a psychologist at the Florida Mental Health Hospital, which was known to be insulated with asbestos-containing materials.

2.    Mr. Smith had a past medical history of hairy cell leukemia, which was diagnosed approximately 15 years prior to his death and which was treated with splenectomy, chemotherapy and radiation.

3.    Mr. Smith was well until the early part of 1994 when he presented with left lower rib cage discomfort. He was evaluated and a CT scan of the chest and abdomen showed thickening of the left pleura and thickening in the left upper quadrant of the abdomen.

4.    A closed pleural biopsy was done but was stated to be nondiagnostic. A thoracoscopy was attempted but was stated to be impossible to perform. A thoracotomy was eventually done and pleural biopsies were taken.

5.    I reviewed two slides and one block designated "94S-757" that represented the needle biopsy of the pleura. These slides showed one piece of moderately cellular fibrous tissue that I thought was suspicious for a malignant mesothelioma, desmoplastic type.

6.    I reviewed two slides and two blocks designated "94S-1551" that represented the open pleural biopsy specimen. These slides show pieces of fibrous tissue that range from being moderately cellular to hypocellular and which had an appearance consistent with a malignant mesothelioma, desmoplastic type.

-continued-
ACCESSION L-259-94

Smith, Gary G.
Consultation
Page 7

7.  An autopsy was performed on Mr. Smith by Dr. Thomas P. Wood of the
    Pathology Associates at Tallahassee Memorial Regional Medical Center in
    Tallahassee, Florida, on April 22, 1994. Dr. Wood diagnosed Mr. Smith as
    having a left pleural malignant mesothelioma with extension into the left
    cervical area and left upper quadrant of the abdomen. The tumor showed
    extensive metastases, including metastases to the mediastinum, right
    lung, mesentery, mucosa of bowel, periaortic lymph nodes, retroperitoneal
    area, liver, and adrenal gland.

8.  The biopsy slides were reviewed in consultation by Dr. Robert E. Fechner
    at the University of Virginia Pathology Department, who diagnosed
    desmoplastic mesothelioma. Immunohistochemical studies were done on
    autopsy tissue by IMMPATH of New York City, who diagnosed findings
    consistent with mesothelioma.

9.  We received various tissue specimens including tumor; lung, liver
    involved by tumor, and colon that was involved by tumor on the serosal
    surface. The tumor had a histologic and immunohistochemical pattern
    consistent with and characteristic of a malignant mesothelioma that was
    predominantly desmoplastic in nature but which showed other types of
    differentiation, including an anaplastic component and an epithelial
    component.

10. We performed asbestos digestion analysis in our laboratory and found 800
    asbestos bodies/gram of wet lung tissue.

11. Based on the occupational history of exposure to asbestos, plus the
    elevated numbers of asbestos bodies in the digested lung tissue, I
    conclude that Mr. Smith's left pleural malignant mesothelioma was caused
    by asbestos.

SPH/sl
ACCESSION NO.  L-259-94

$J \mu$

**PATHOLOGY ASSOCIATES**
TALLAHASSEE MEMORIAL REGIONAL MEDICAL CENTER
TALLAHASSEE, FLORIDA 32308
TELEPHONE (904) 681-5888

DIPLOMATES OF THE
AMERICAN BOARD OF PATHOLOGY

THOMAS P WOOD, M D.
WOODWARD BURGERT. JR., M.D.
DAVID E. CRAIG, M.D.
JERRY L. HARRIS, M.D.
BEN M. TURNER, M D.
JOHN P. MAHONEY, M D
CHARLES F. MANNING. JR., M D.
MARGARET HAVENS NEAL, M.D.
L. STEPHEN SARBECK, M D
DAVID STEWART, M D.
DAVID J. DOLSON, M D
LYNN H. DOLSON, M.D.

## AUTOPSY REPORT

PATIENT: Smith, Gary G.      AGE: 49    RACE: White    SEX: Male
ACCESSION #: 94A-16    DATE OF BIRTH: 7-29-44    HOSPITAL #: 94099231

DATE OF DEATH: April 21, 1994    DATE OF AUTOPSY: April 22, 1994
TIME OF DEATH: 11:55 a.m.    TIME OF AUTOPSY:
DATE ADMITTED: April 18, 1994    DATE AUTOPSY COMPLETED: July 8, 1994
DATE OF SURGERY:

PERMISSION:    Complete
PATHOLOGIST:    Thomas P. Wood, M.D.
PHYSICIAN:    R. James Mabry, Jr., M.D.

### FINAL ANATOMIC DIAGNOSES:

Pleural malignant mesothelioma, left with extension into left cervical
  area and left upper quadrant of the abdomen
Metastases involving the mediastinum, right lung, mesentery and mucosa
      of bowel, periaortic lymph nodes, retroperitoneal area, liver
      and adrenal gland
Obsolete operation:  Splenectomy (histiocytic or hairy cell leukemia)
Peritoneal adhesions, fibrous
Severe congestion and pneumonitis of right lung
Cyst of the upper pole of left kidney
Negative central nervous system, prostate, larynx, thyroid, testes
  and heart
See IMPATH consultation report
Multiple iron stains negative for ferruginous bodies
No evidence of residual or recurrent histiocytic or hairy cell leukemia

THOMAS P. WOOD, M.D.
bt/da

AUTOPSY REPORT                    2                      Smith, Gary G.
                                                         94A-16

## EXTERNAL DESCRIPTION

The autopsy specimen is the body of an adult male who is emaciated. The hair is fairly long and there is abundant beard and mustache growth with slight graying. There is an old midline scar that extends from the xiphoid to just above the pubis. Weight is estimated at 110-120 pounds and body length measures approximately 5 feet 10 1/2 inches. Numerous freckles are present over the anterior surface of the trunk. Pupils are difficult to visualize but are apparently 5 to 6 millimeters in diameter. The irides are brown and there is slight arcus formation. Natural teeth are present.

## EVIDENCE OF TREATMENT

There is an intravenous infusion apparatus present in the right arm. A fentanyl transderm patch is present over the right pectoral area. Identification tags are present. Two stitches are present in the central midlumbar area closing a recent incision. This is covered by a bandage.

## INTERNAL EXAMINATION

The body is opened with the usual Y-shaped incision. There is dense fibrous thickening of the pleura and the diaphragm on the left. There are also dense fibrous peritoneal adhesions. Dissection of the small and large bowels and the abdominal viscera is difficult. Dissection of the left lung is also extremely difficult due to the fibrotic tumor mass. There is increased peritoneal fluid which is clear and straw colored. There is no significant increase of pleural or pericardial fluid.

## CARDIOVASCULAR SYSTEM

The heart weighs 250 grams and appears grossly normal. The aorta shows no significant sclerosis.

## RESPIRATORY SYSTEM

The left lung is removed in two portions and these weigh 610 and 340 grams each. The lung surface is covered by thick grayish-white fibrotic pleura with occasional nodules. Similar tissue is present within the left diaphragm. The right lung weighs 1,600 grams and contains scattered thickened pleural nodules and occasional parenchymal nodules that are grayish-white and roughly round. The trachea and larynx are not remarkable. The lungs both appear congested.

## SPLEEN AND LYMPH NODES

The spleen is surgically absent. Enlarged lymph nodes are present in many areas. Some of these appear reddish-purple upon sectioning and others are firm and grayish-white. Obvious tumor within lymph nodes is present within the posterior mediastinum, the periaortic nodes and the mesentery of the bowel.

AUTOPSY REPORT                        3                    Smith. Gary G.
                                                          94A-16

GASTROINTESTINAL TRACT                               The   esophagus
is not remarkable. The gastric mucosa has a distinct pebbled
pattern especially in the proximal portion.    The pylorus and
duodenum   are   not  remarkable  aside  from  some   dark  gray
discoloration at the pylorus.  The small and large bowels are not
remarkable  aside from the numerous fibrous adhesions described
above.    There  is a plate like area of pebbly induration noted
adjacent  to  the  cecum.  The pancreas is not remarkable.    The
liver  weighs 2,610 grams and contains innumerable grayish-white
metastatic  tumor  nodules  that  are  moderately  firm  and  are
sometimes umbilicated.    There is approximately 85-95% of  the
liver replaced by this tumor.

GENITOURINARY                                      The      left
kidney weighs 160 grams which does not include a 30 gram cyst  at
the upper pole.  The right kidney weighs 130 grams.   The kidneys
are   not  remarkable otherwise and the ureters are  not  dilated.
The  bladder is not dilated and the prostate is not enlarged  and
contains  no  tumor. There is no evidence of tumor within  the
testes.

ENDOCRINE                                          The thyroid is
not remarkable.  The parathyroid glands are not recognized.   The
left  adrenal contains an adjacent portion of what appears to  be
metastatic tumor similar to that described above.

BONE                                             Bone      from
multiple sites is obtained and some of the marrow contains a firm
grayish-white  fibrous  tumor process similar to that  described
above.    There is massive tumor involvement on the  anterolateral
aspect of the lower cervical vertebral bodies.

CENTRAL  NERVOUS  SYSTEM                          The     brain
weighs  1,480 grams, shows normal vasculature and a normal  gyral
pattern.    The  brain is step-sectioned at close  intervals  and
there is no evidence of neoplasia, necrosis, hemorrhage, tumor or
inflammatory  change.    There is pigmentation of the  substantia
nigra.

MICROSCOPIC                                       Sections    of
myocardium are not remarkable. Sections of lung show  areas  of
intense   pneumonitis  and  areas  of  fibrosis  with  variable
infiltration  of  bland  and  more  commonly  obviously  malignant
nuclei.  In some areas small irregular spaces are lined by  large
bizarre  obviously  malignant cells.   Similar tumor is  present
within the pleura, the left cervical area, the abdomen including
lymph  nodes, mucosa and serosa of the gastrointestinal tract,
adrenals  and  liver. Many sections are stained for iron.    No
ferruginous bodies are recognized.

AUTOPSY REPORT                    4                     Smith, Gary G.
                                                        94A-16


                                                   Sections   of
bone  marrow show areas of myeloid and erythroid  production  and
areas  of  pale  hypocellularity.  There  is  no  actual  tumor
infiltrate noted within the bone marrow.  Sections of kidney show
no tumor.  Central nervous system sections are not remarkable.

SPECIAL  STUDIES                                        Appropriate
tissue  is submitted to IMPATH for tissue and tumor  markers.   A
copy  of  the results is attached and the  interpretation  states
that  the results favor mesothelioma.  This is in agreement  with
the previous consultation obtained on antemortem biopsy material.


THOMAS P. WOOD, M.D.

bt/da

## CERTIFICATE OF DEATH
## FLORIDA

STATE FILE NO.

| 1. DECEDENT'S NAME | FIRST | MIDDLE | LAST | 2. SEX |
|---|---|---|---|---|
| | Gary | Gragg | Smith | Male |

| 3. DATE OF DEATH (Month, Day, Year) | 4. SOCIAL SECURITY NUMBER | 5a. AGE-Last Birthday (years) | 5b. UNDER 1 YEAR Months / Days | 5c. UNDER 1 Day Hours / Minutes |
|---|---|---|---|---|
| April 21, 1994 | 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 | 49 | | |

| 6. DATE OF BIRTH (Month, Day, Year) | 7. BIRTHPLACE (City and State or Foreign Country) | 8. WAS DECEDENT EVER IN U.S. ARMED FORCES? (Yes or No) |
|---|---|---|
| July 29, 1944 | Memphis, Tennessee | No |

**9a. PLACE OF DEATH** (Check only one: see instructions on other side)

HOSPITAL: X Inpatient __ ER/Outpatient __ DOA    OTHER: __ Nursing Home __ Residence __ Other (Specify)

9b. INSIDE CITY LIMITS? (Yes or No): Yes

| 9c. FACILITY NAME (If not institution, give street and number) | 9d. CITY, TOWN, OR LOCATION OF DEATH | 9e. COUNTY OF DEATH |
|---|---|---|
| Tallahassee Memorial Regional Medical Ctr. | Tallahassee | Leon |

| 10a. DECEDENT'S USUAL OCCUPATION | 10b. KIND OF BUSINESS/INDUSTRY | 11. MARITAL STATUS —Married, Never Married, Widowed, Divorced (Specify) | 12. SURVIVING SPOUSE (If wife, give maiden name) |
|---|---|---|---|
| Clinical Psychologist | Psychology | Married | Ellen Abernethy |

| 13a. RESIDENCE — STATE | 13b. COUNTY | 13c. CITY, TOWN, OR LOCATION | 13d. STREET AND NUMBER |
|---|---|---|---|
| Florida | Leon | Tallahassee | 3016 Brookmont Dr. |

| 13e. INSIDE CITY LIMITS? (Yes or No) | 13f. ZIP CODE | 14. WAS DECEDENT OF HISPANIC OR HAITIAN ORIGIN? (Specify No or Yes — If yes, specify Haitian, Cuban, Mexican, Puerto Rican, etc.) Specify: | 15. RACE — American Indian, Black, White, etc. Specify: | 16. DECEDENT'S EDUCATION (Specify only highest grade completed) Elementary/Secondary (0 - 12) / College (1 - 4 or 5 +) |
|---|---|---|---|---|
| Yes | 32312 | X No __ Yes | White | 5+ |

| 17. FATHER'S NAME (First, Middle, Last) | 18. MOTHER'S NAME (First, Middle, Maiden Surname) |
|---|---|
| William Tyler Smith | Lama Florine Springer |

| 19a. INFORMANT'S NAME (Type/Print) | 19b. MAILING ADDRESS (Street and Number or Rural Route Number, City or Town, State, Zip Code) |
|---|---|
| Ellen A. Ashdown | 3016 Brookmont Dr., Tallahassee, Florida  32312 |

| 20a. METHOD OF DISPOSITION | 20b. PLACE OF DISPOSITION (Name of cemetery, crematory, or other place) | 20c. LOCATION — City or Town, State |
|---|---|---|
| X Burial __ Cremation __ Removal from State / __ Donation __ Other (Specify) | Roselawn Cemetery | Tallahassee, Florida |

| 21a. SIGNATURE OF FUNERAL SERVICE LICENSEE OR PERSON ACTING AS SUCH | 21b. LICENSE NUMBER (of Licensee) | 21c. NAME AND ADDRESS OF FACILITY |
|---|---|---|
| | | Culley's MeadowWood Funeral Homes P.O. Box 12487, Tallahassee, FL  32317 |

**To Be Completed by CERTIFYING PHYSICIAN Only**

22a. To the best of my knowledge, death occurred at the time, date and place and due to the cause(s) as stated. (Signature and Title) ► *[signature]* James Mabry MD

22b. DATE SIGNED (Mo., Day, Yr.): 4/25/94

22c. HOUR OF DEATH: ____ M

22d. NAME OF ATTENDING PHYSICIAN IF OTHER THAN CERTIFIER (Type or Print)

**To Be Completed by MEDICAL EXAMINER**

23a. On the basis of examination and/or investigation, in my opinion death occurred at the time, date and place and due to the cause(s) and manner as stated. (Signature and Title) ►

23b. DATE SIGNED (Mo., Day, Yr.):

23c. HOUR OF DEATH: ____ M

23d. MEDICAL EXAMINER'S CASE #

24. NAME AND ADDRESS OF CERTIFIER (PHYSICIAN, MEDICAL EXAMINER) (Type or Print)

R. James Mabry MD  1632 Riggins Rd  Tallahassee  32708

| 25a. SUBREGISTRAR — SIGNATURE AND DATE | 25b. LOCAL REGISTRAR — SIGNATURE | 25c. DATE REGISTERED |
|---|---|---|
| ► | ► | |

**CAUSE OF DEATH BY CERTIFIER**

26. PART I. Enter the diseases, injuries, or complications that caused the death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock, or heart failure. List only one cause on each line.

Approximate Interval Between Onset and Death

IMMEDIATE CAUSE (Final disease or condition resulting in death) → a. Mesothelioma  —  Ca 8 mos

DUE TO (OR AS A CONSEQUENCE OF):

Sequentially list conditions, if any, leading to immediate cause. Enter UNDERLYING CAUSE (Disease or injury that initiated events resulting in death) LAST.

b. _____

DUE TO (OR AS A CONSEQUENCE OF):

c. _____

DUE TO (OR AS A CONSEQUENCE OF):

d. _____

| PART II. Other significant conditions contributing to death but not resulting in the underlying cause given in Part I. | 27a. WAS AN AUTOPSY PERFORMED? (Yes or No) | 27b. WERE AUTOPSY FINDINGS USED TO COMPLETE CAUSE OF DEATH? (Yes or No) | 28. CASE REPORTED TO MEDICAL EXAMINER? (Yes or No) |
|---|---|---|---|
| leukemic reticuloendotheliosis | Yes | No | No |

| 29. IF FEMALE, WAS THERE A PREGNANCY IN THE PAST 3 MONTHS? __YES X NO | 30a. IF SURGERY IS MENTIONED IN PART I or II ENTER CONDITION FOR WHICH IT WAS PERFORMED | 30b. DATE OF SURGERY (Mo., Day, Year) |
|---|---|---|
| | | |

| 31. PROBABLE MANNER OF DEATH (Specify) Natural, accident, suicide, homicide, or undetermined. | 32a. DATE OF INJURY (Month, Day, Year) | 32b. TIME OF INJURY | 32c. INJURY AT WORK? (Yes or No) | 32d. DESCRIBE HOW INJURY OCCURRED |
|---|---|---|---|---|
| | | M | | |
| | 32e. PLACE OF INJURY — At home, farm, street, factory, etc. (Specify) | 32f. LOCATION (Street and Number or Rural Route Number, City or Town, State) | | |

Additional Responses To W.R. Graces' Proof of Claim Parts/
Section III, IV, V and VI

## **EXHIBIT B**

Claimant's Responses to W.R. Graces' Proof of Claim Request for Information Concerning Claimant/Asbestos Victim's Asbestos Personal History, Family Information, Work History, Asbestos Exposure to W.R. Graces' Asbestos Containing Products and Others, Worksites, etc.

As noted, this information that is too voluminous to write out in the space provided for in W.R. Graces' Proof of Claim form Sections Part III, Part IV, V and Part VI.

Consequently, it is necessary to add to the responses to Part III and Part VI these additional responses to W.R. Graces' Proof of Claim Form.

**Exhibit B:**    Responsive Information Pertaining To Claimant/Asbestos Victim's
                  Asbestos Exposure to W.R. Graces' Asbestos Products

1  CHRISTOPHER E. GRELL (#88498)
   JOANNE LAWRENCE (#147070)
2  LAW OFFICES OF
   CHRISTOPHER E. GRELL
3  The Monadnock Building
   685 Market Street, Suite 340
4  San Francisco, California  94105
   (415) 541-9866
5
   Attorney for Plaintiffs
6

7

8        IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            IN AND FOR COUNTY OF SAN FRANCISCO

10

11 ELLEN ASHDOWN, KRISTY SMITH, IAN )  NO.   961288
   SMITH as Surviving Heirs and ELLEN)
12 ASHDOWN as Executrix of the Estate)
   of GARY SMITH,                   )  PLAINTIFFS' ANSWERS TO
13                                   )  WRONGFUL DEATH
               Plaintiffs,          )  INTERROGATORIES
14                                  )
       v.                           )
15                                  )
                                    )
16 ABEX CORPORATION, et al.,        )
                                    )
17                Defendants.       )
                                    )
18 ────────────────────────────────

19 PROPOUNDING PARTY:   Defense Group

20 RESPONDING PARTY:    Plaintiffs:  Ellen Ashdown

21 SET NUMBER:          One (1)

22       Plaintiff responds to Defense Group's Standard First

23 Set of interrogatories as follows.  Answers are made solely on

24 the information available to plaintiff and, to the best of

25 plaintiff's present recollection and knowledge.  Where

26 indicated, response are made on plaintiff's information and

27 belief.  Plaintiff's investigation is continuing and other

28 information may well come to plaintiff's attention before

-1-

*Exhibit B*

1  trial.   Counsel has assisted plaintiff and has interposed

2  objections where necessary.

3         Some of the events which may be relevant to the

4  matters inquired about by defendant's interrogatories occurred

5  many years ago.   As a result of this lapse of time, memories

6  fade and much of the information is difficult to retrieve.

7  Plaintiff will make every effort to answer each interrogatory

8  fully to the best of his or her recollection at this time.

9  The following is a part of and incorporated by reference as if

10  therein written in every answer provided hereinafter:   Because

11  plaintiff has to answer these interrogatories at a very early

12  date, much of the information is based on plaintiff's ability

13  to recall events that took place many years ago so while this

14  answer is accurate as of the date of the plaintiff's answers

15  to these interrogatories, plaintiff's investigation is

16  continuing, and plaintiff cannot exclude the possibility that

17  he may be able to obtain more complete information or even

18  information which indicates that the answer being supplied is

19  incorrect.

20         Throughout these interrogatories you will find

21  frequent references to Exhibit "A", Exhibit "B" and Exhibit

22  "C".   These Exhibits include the following:

23         Exhibit "A"      An index of all unprivileged

24                          documents maintained by plaintiff's

25                          counsel that relate to Sumner Simpson

26                          and defendant RAYMARK, commonly known

27                          as the "Sumner Simpson Papers".

28         Exhibit "B"      An index of all unprivileged

CHRISTOPHER E. GRELL
885 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 84105
TEL (415) 541-9868  FAX (415) 541-9869

1                                documents maintained by plaintiff's

2                                counsel that relate to defendant

3                                OWENS-ILLINOIS; and

4       Exhibit "C"    An index of all unprivileged

5                                documents maintained by plaintiff's

6                                counsel other than as specifically

7                                outlined above that relate to the

8                                asbestos litigation.

9       These Exhibits are voluminous in nature, identical

10 in every case and have been previously served on all

11 defendants.  As they are updated from time to time, the

12 revised Exhibits with the revision date are served on all

13 defendants.  Plaintiff will make a copy of any Exhibit to any

14 defendant upon request, but will not routinely serve these

15 voluminous Exhibits with the answers to interrogatories.

16 These Exhibits are incorporated by reference herein in the

17 same manner as if attached hereto.

18

19       RESPONSE TO INTERROGATORY NO. 1:  Decedents spouse.

20    a)   Name:  Ellen Ashdown

21    b)   Relationship to decedent:  Wife

22    c)   Date of birth:  3/9/45

23    d)   Place of birth:  Duncan, OK

24    e)   Address:  3016 Brookmont Dr., Tallahassee, FL 32312

25    f)   Height:  5'7"

26    g)   Social Security Number:  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

27    h)   Kaiser Number:  N/A

28    i)   Military Serial Number:  N/A

LAW OFFICES OF
CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-8686  FAX (415) 541-8689

1    j)   Government Serial Numbers:  N/A

2    k)   Driver's License Number and State:  Fla. A235-201-

3    45-589-0

4    l)   All names by which you have been known:  Ellen Kay

5    Abernethy, Ellen Kay Ashdown, Ellen A. Ashdown, Ellen

6    Abernethy Ashdown Smith

7    m)   Highest grade level completed:  Ph.D.

8    n)   Current Spouse's Name:  N/A

9    o)   Date of current marriage:  N/A

10   p)   Name of any former spouse:  Paul G. Ashdown

11   q)   Date of former marriage:  4/24/66, 1/16/76

12   r)   Place, date and circumstances under which any

13   marriage(s) was (were) dissolved or terminated:

14        1b)  Gainesville, Fla., 2/28/69, irreconcilable

15             differences.

16        2b)  Plaintiff's former spouse, Gary Smith died of

17             mesothelioma an asbestos caused cancer on 4/2/94.

18

19        RESPONSE TO INTERROGATORY NO. 1B:  Decedent.

20   a)   Name:  Gary Smith

21   b)   Date of birth:  7/29/44 (Gary)

22   c)   Place of birth:  Memphis, Tn.

23   d)   Address:  3016 Brookmont Dr., Tallahassee Fl. 32312

24   e)   Height:  5' 10 1/2"

25   f)   Social Security Number:  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

26   g)   Kaiser Number:  N/A

27   h)   Military Serial Number:  N/A

28   i)   Government Serial Numbers:  N/A

LAW OFFICES OF
CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-9866  FAX (415) 541-9868

-4-

1  3/   j)   Driver's License Number and State:  Fla. S530-287-

2  44-269-0

3       k)   All names by which you have been known:  Gary G.

4  Smith, Gary Gragg Smith

5       l)   Highest grade level completed:  Ph.D.

6       m)   Current Spouse's Name:  Ellen Ashdown

7       n)   Spouse's Date of Birth:  3/9/45

8       o)   Date of current marriage:  1/16/76

9       p)   Spouse's current address:  3016 Brookmont Dr.,

10 Tallahassee Fl. 32312

11      q)   Spouse's Occupation/Employer:  Writer, Self-employed

12      r)   Name of any former spouse:  Pamela Cox Smith

13      s)   Date of former marriage:  3/21/64

14      t)   Place, date and circumstances under which any

15 marriage(s) was (were) dissolved or terminated:  Gainesville,

16 Fla., 6/1/71, irreconcilable differences.

17

18       RESPONSE TO INTERROGATORY NO. 2: Decedent's children

19 are as follows:

| Name | Date of Birth | Address | Occupation |
|---|---|---|---|
| 1) Kristen D. Smith | 1) 10/31/64 | 1) 417-A N.E. 4 Ave., Gainesville Fl. 32601 | 1) Researcher Federal medical Study |
| 2) Ian B. Smith | 2) 11/21/67 | 2) 929 N.E. 7th Avenue Gainesville, Fl. 32601 | 2) Carpenter, house-builder and student |

LAW OFFICES OF
CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-8866   FAX (415) 541-8868

LAW OFFICES OF
CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-8866 FAX (415) 541-8868

1        <u>RESPONSE TO INTERROGATORY NO. 3</u>:  Are decedent's

2   parents still living?

3        Mother:  Yes               Father:   No

4        a)   Current age: 85

5

6        <u>RESPONSE TO INTERROGATORY NO. 4</u>:  Are decedent's

7   parents dead?

8   Father's Name: William Tyler Smith   Mother's Name: Lama Smith

9   a) Age of death: Unknown

10  b) Cause of death: pneumonia

11

12       <u>RESPONSE TO INTERROGATORY NO. 5</u>:  To the best of

13  plaintiffs' ability to recall such information, decedent lived

14  at the following addresses:

15

16       <u>Address</u>                                    <u>Date(s)</u>

17    1) 3016 Brookmont Dr., Tallahassee, Fl.    1) July 1991-April
                                                    1994
18
19    2) 1105 E. 6th Avenue, Tallahassee, Fl.    2) March 1977-July
                                                    1991
20    3) 728 2 E. 6th Avenue, Tallahassee, Fl.   3) August 1976-March
                                                    1977
21
22    4) 5442 Conradi St., Tallahassee, Fl.      4) August 1975-
                                                    August 1976
23    5) 318 N. W. 24th Street, Gainesville,     5) 1971-August 1975
      Fl.
24
25    6) Apt. 200-A, Flavet III, Gainesville,    6) 1968-1970
      Fl.
26    7) 401 North Bedford, LaHabra, Ca.         7) 1964-1967

27    8) 11864 First Street, Orange, Ca.         8) 1967-1968

28    9) 711 North Laura, LaHabra, Ca.           9) 1962-1964

-6-

1        <u>RESPONSE TO INTERROGATORY NO. 6</u>:   Decedent's

2    education background is as follows:   Decedent received a

3    Bachelor's BA degree at California State at Fullerton 1967;

4    M.A. University of Florida, Gainesville, 1971; Ph.D.

5    University of Florida, Gainesville, 1977

6

7        <u>RESPONSE TO INTERROGATORY NO. 7</u>:   Decedent's

8    criminal background, if any, is as follows:   None

9

10       <u>RESPONSE TO INTERROGATORY NO. 8</u>:   Decedent's

11   military experience, if any, is as follows:   None

12

13       <u>RESPONSE TO INTERROGATORY NO. 9</u>:

14       Plaintiff objects to this interrogatory on the

15   grounds that it requests the disclosure of the identities of

16   expert witnesses and consultants and as such is protected by

17   the attorney work product privilege.   Without waiving said

18   objections, and without disclosing the identities of such

19   experts and consultants, plaintiff responds as follows:

20   Complete information regarding every Doctor who treated

21   decedent may be found in decedent's medical records.

22   Consequently, the following information is provided to assist

23   you in identifying and subpoenaing these records.   The

24   information is as complete as plaintiff can recall at this

25   time and plaintiff reserves the right to amend and/or modify

26   their response as new and more accurate information is

27   uncovered.

28

LAW OFFICES OF
CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-9868   FAX (415) 541-9868

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
CHRISTOPHER E. GRELL
665 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-9866  FAX (415) 541-9868

1)  <u>Doctor's Name and Address</u>          <u>Dates of Treatment and Reason</u>

    R. James Mabry, M.D.               1978-      General medical care
    1632 Riggins Rd.                   4/94       mesothelioma
    Tallahassee, Fl. 32308                        hairy cell leukemia

2)  <u>Doctor's Name and Address</u>          <u>Dates of Treatment and Reason</u>

    J. Daniel Davis, M.D.              1994       lung problems
    1401 Centerville Rd.
    Tallahassee, Fl.  32308

3)  <u>Doctor's Name and Address</u>          <u>Dates of Treatment and Reason</u>

    Charles Bianco, M.D.               1994       Mesothelioma
    1623 Medical Dr.
    Tallahassee, Fl. 32308

4)  <u>Doctor's Name and Address</u>          <u>Dates of Treatment and Reason</u>

    David Saint, M.D.                  2/94       Mesothelioma
    1401 Centerville Rd.
    Tallahassee, Fl. 32308

5)  <u>Doctor's Name and Address</u>          <u>Dates of Treatment and Reason</u>

    Glenn W. Mahan, M.D.               1962-      General Medical Care
    360 North Harbor Blvd.             1968
    LaHabra, Ca 90631

6)  <u>Doctor's Name and Address</u>          <u>Dates of Treatment and Reason</u>

    James Stockwell, M.D.              1994       Mesothelioma
    2400 Miccosukee Rd.
    Tallahassee, Fl. 32308

7)  <u>Doctor's Name and Address</u>          <u>Dates of Treatment and Reason</u>

1   Richard Henry, M.D.              1994     Mesothelioma
    2173 Centerville P.
2   Tallahassee, Fl. 32308

3

4   8)   Doctor's Name and Address      Dates of Treatment and Reason

5        Mark Vogelhut, M.D.            1994     Mesothelioma
         2173 Centerville Pl.
6        Tallahassee, Fl. 32308

7

8   8)   Doctor's Name and Address      Dates of Treatment and Reason

9        Dale Wickstrum, M.D.           1994     Mesothelioma
         1300 Miccosukee Rd.
10       Tallahassee, Fl. 32308

11       RESPONSE TO INTERROGATORY NO. 10:

12           Plaintiff objects to this interrogatory on the grounds

13   that it requests the disclosure of the identities of expert

14   witnesses and consultants and as such are protected by the

15   attorney work product privilege.   Without waiving said

16   objections, and without disclosing the identities of such

17   experts and consultants, plaintiff responds as follows:

18   Complete information regarding every hospital decedent went to

19   may be found in decedent's medical records.   Consequently, the

20   following information is provided to assist you in identifying

21   and subpoenaing these records.   The information is as complete

22   as plaintiff can recall at this time and plaintiff reserves

23   the right to amend and/or modify their responses as new and

24   more accurate information is uncovered.

25

26

27

28

LAW OFFICES OF
CHRISTOPHER E. GRELL
995 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-9866   FAX (415) 541-9868

1
2
3

| 1) Name and Address of Hospital | Dates of Test, Treatment, Examination or Hospitalization and Reason | |
|---|---|---|
| Tallahassee Memorial Regional Medical Center Magnolia Dr. and Muccosukee Rd Tallahasee, Fl. 32304 | 12/10/ 1993 1/19/94 1/26/94 1/28/94 2/2/94 2/10/94 2/19 – 2/24/94 | Lung problems mesothelioma |

| 2) Name and Address of Hospital | Dates of Test, Treatment, Examination or Hospitalization and Reason | |
|---|---|---|
| Radiology Associates Tallahasee, Fla. | 2/2/94 | Endoseopy |

| 3) Name and Address of Hospital | Dates of Test, Treatment, Examination or Hospitalization and Reason | |
|---|---|---|
| Tallahassee Orthopedic Surgery Center 3334 Capitol Medical Blvd. | 3/1/94 | Permanent Epidural Catheter |

RESPONSE TO INTERROGATORY NO. 11:

Plaintiff objects to this interrogatory on the grounds that it requests the disclosure of the identities of expert witnesses and consultants and as such is protected by the attorney work product privilege.   Without waiving said objections, and without disclosing the identities of such experts and consultants, plaintiff responds as follows: Complete information regarding x-rays of decedent's trunk i.e., upper body, may be found in decedent's medical records. Consequently, the following information is provided to assist you in identifying and subpoenaing these records.   The information is as complete as plaintiff can recall at this

LAW OFFICES OF
CHRISTOPHER E. GRELL
665 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-9866   FAX (415) 541-9866

1  time and plaintiff reserves the right to amend and/or modify

2  their response.

3

4  1) Name and Address

5     Where X-ray        Date(s) and No.    Part(s) of
      Was Taken          of X-ray           Body X-rayed    Results

6

7  Tallahassee Memorial   12/10/93      CXR         Abnormal
   Regional Medical       1/19/94       CT          abnormal
8  Center                 3/8/94        CT          mesothelioma
   Magnolia Dr. and       4/18/94       CT          mesothelioma
9  Muccosukee Rd
   Tallahassee, Fl.
10 32304

11

12 2) Name and Address

13    Where X-ray        Date(s) and No.    Part(s) of
      Was Taken          of X-ray           Body X-rayed    Results

14

15 Tallahassee Memorial   9/1978        CXR         Unknown
   Regional Medical
16 Center
   Magnolia Dr. and
17 Muccosukee Rd
   Tallahassee, Fl.
18 32304

19

20          RESPONSE TO INTERROGATORY NO. 12:

21      Plaintiff objects to this interrogatory on the grounds

22 that it requests the disclosure of the identities of expert

23 witnesses and consultants and as such is protected by the

24 attorney work product privilege.   Without waiving said

25 objections, and without disclosing the identities of such

26 experts and consultants, plaintiff responds as follows:

27 Complete information regarding pulmonary function tests may be

28 found in decedent's medical records.   Consequently, the

LAW OFFICES OF
CHRISTOPHER E. GRELL
655 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-9886  FAX (415) 541-9889

-11-

1  following information is provided to assist you in identifying

2  and subpoenaing these records.  The information is as complete

3  as plaintiff can recall at this time and plaintiff reserves

4  the right to amend and/or modify their response.  Plaintiff is

5  not aware of decedent having PFT's done while he was alive.

8      RESPONSE TO INTERROGATORY NO. 13:  Plaintiff cannot

9  recall each and every medication decedent took in the last ten

10  years of his life.  To the best of plaintiff's present

11  recollection and knowledge, decedent has taken Tylenol,

12  Darvocet, Tylox, Zantac, Fentanyn, Morphine, Cisplatin,

13  Valium, Interferon.

14      The exact doses and frequency are presently unknown.

15  Discovery is continuing.

17      RESPONSE TO INTERROGATORY NO. 14:  (a-b) Plaintiff

18  objects to this interrogatory to the extent it seeks the

19  reports of plaintiff's consultants on the grounds that such

20  information is protected by the attorney work-product

21  privilege.  Subject to this objection, plaintiff(s) responds

22  as follows:

23      To the best of plaintiff's knowledge, defendant have

24  either medical releases or copies of all discoverable medical

25  reports presently available.  Further, plaintiffs will provide

26  defendants with copies of all medical records and reports as

27  required by law.  In addition, please see plaintiff's

28  responses to interrogatories numbered 9, 10, 11 and 12.

-12-

1          <u>RESPONSE TO INTERROGATORY NO. 15</u>:

2          Due to the debilitating effects of decedent's

3    asbestos-related disease, plaintiff contends that decedents

4    entire body has become adversely affected by his exposure to

5    asbestos and asbestos-containing products.  Decedent's

6    symptoms became increasingly more aggravated.  Decedent's

7    complaints include shortness of breath, coughing, and a

8    reduction of activities and mobility.  The onset of these

9    symptoms was so gradual that it is not possible to identify a

10   specific date as to when they started.  However, to the best

11   of plaintiff's present recollection the following is in

12   reasonable approximation:

13          a)   To the best of plaintiff's knowledge decedent's

14   symptoms and complaint included: Chest pain, shortness of

15   breath, loss of mobility, loss of 25 lbs.

16          b)   Decedent suffered from mesothelioma.

17          c)   Decedent cannot recall the first time decedent

18   started noticing his symptoms.

19          d)   Decedent died as a result of his asbestos

20   injuries.

21          e)   Decedent's lungs and airway passages were

22   primarily affected.  However, eventually his entire body was

23   effected.

24          f)   The first time plaintiff recalls decedent going

25   to the doctor because of his complaints was July 1993.

26          g)   See (f) above.

27          h)   Yes.  The date plaintiff believes the decedent

28   became disabled was January 18, 1994.

1    <u>RESPONSE TO INTERROGATORY NO. 16</u>:

2        This interrogatory is object to on the grounds that

3    the information sought is protected by the attorney client

4    privilege.  Without waiving this objection, plaintiff responds

5    as follows:

6        a)   The first time plaintiff learned that decedent

7    had an asbestos disease was February 21, 1994.

8        b)   Plaintiff learned about decedent's asbestos

9    disease from Dr. David Saint.

10       c)   See (b) above.

11       d)   Plaintiff does not know what doctors were

12   involved in the determination that decedent had an asbestos

13   disease.

14       e)   Plaintiff has no way of knowing what other

15   people this information was provided to.

16       f)   Decedent was employed as a self-employed

17   clinical psychologist with Tallahassee Institute for pain and

18   stress management and consultant for Fla. Office of Disability

19   Determination, Department of Labor.

20       g)   Decedent's therapy included:  radiation,

21   chemotherapy

22       h)   Yes.  Please see Interrogatory answers Nos. 13

23   and 16(b) and (c).

24       i)   Plaintiff objects to this interrogatory to the

25   extent it seeks reports of plaintiff's consultants on the

26   ground that such information is protected by the attorney-

27   work-product privilege.  Subject to and as modified by this

28   objection, plaintiff has no present knowledge of those other

-14-

1    RESPONSE TO INTERROGATORY NO. 16:

2          This interrogatory is object to on the grounds that

3    the information sought is protected by the attorney client

4    privilege.  Without waiving this objection, plaintiff responds

5    as follows:

6          a)   The first time plaintiff learned that decedent

7    had an asbestos disease was February 21, 1994.

8          b)   Plaintiff learned about decedent's asbestos

9    disease from Dr. David Saint.

10         c)   See (b) above.

11         d)   Plaintiff does not know what doctors were

12   involved in the determination that decedent had an asbestos

13   disease.

14         e)   Plaintiff has no way of knowing what other

15   people this information was provided to.

16         f)   Decedent was employed as a self-employed

17   clinical psychologist with Tallahassee Institute for pain and

18   stress management and consultant for Fla. Office of Disability

19   Determination, Department of Labor.

20         g)   Decedent's therapy included:  radiation,

21   chemotherapy

22         h)   Yes.  Please see Interrogatory answers Nos. 13

23   and 16(b) and (c).

24         i)   Plaintiff objects to this interrogatory to the

25   extent it seeks reports of plaintiff's consultants on the

26   ground that such information is protected by the attorney-

27   work-product privilege.  Subject to and as modified by this

28   objection, plaintiff has no present knowledge of those other

CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 84105
TEL (415) 541-8888  FAX (415) 541-8889

1  than already listed who confirmed the determination.

2

3           RESPONSE TO INTERROGATORY NO. 17:

4           Not to plaintiff's present recollection or

5  knowledge.

6           (a-d) not applicable.

7

8           RESPONSE TO INTERROGATORY NO. 18:    A death

9  certificate was prepared.    (See Exhibit 1).

10          (a-g) See attached death certificate.

11

12          RESPONSE TO INTERROGATORY NO. 19:    To the best of

13  plaintiff's present recollection an autopsy was performed.

14          (A-H) (See Exhibit 2)

15

16          RESPONSE TO INTERROGATORY NO. 20:    Plaintiff is

17  informed that pathology materials were done at the following

18  places: Tallahassee Memorial Regional Medical Center

19  Magnolia Dr. and Muccosukee Rd., Tallahassee, Fl. 32304.

20

21          RESPONSE TO INTERROGATORY NO. 21:

22          Plaintiff is not presently aware of any other

23  personal injury lawsuits brought by decedent.

24          (a-d) Not applicable)

25

26          RESPONSE TO INTERROGATORY NO. 22:    To the best of

27  plaintiff knowledge decedent smoked cigarettes.

28

LAW OFFICES OF
CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-9888   FAX (415) 541-9889

1      RESPONSE TO INTERROGATORY NO. 23:  To be best of

2  plaintiff s' recollections:

3           a)   Decedent smoked from 1960 to 1994.

4           b)   Decedent smoked cigarettes.

5           c)   Decedent smoked approximately one pack a day

6  maximum.  Before his illness, in the fall, he had reduced his

7  smoking to as few as 10 cigarettes a day.

8           d)   See (f) above.

9           e)   Decedent smoked Kent III, Marlboro brand(s) of

10  cigarettes.

11

12      RESPONSE TO INTERROGATORY NO. 24:  Plaintiff cannot

13  state with accuracy decedents consumption of alcoholic

14  beverages in his lifetime.  However, to the best of

15  plaintiff's knowledge, decedents consumption was for the most

16  part limited to social occasions.

17

18      RESPONSE TO INTERROGATORY NO. 25:  Decedents work

19  history.

20                                            Date Started-
   1)  Employer's Name and Address  Job Title    Date Ended
21                                                (mo,day,year)

22      Clinical Psychologist,       Therapist   Nov. 1988-Dec. 1993
        Tallahassee Institute for
23      Pain and Stress Management
        Buford Ct.,
24      Tallahassee, Fl.

25

26

27  Description of Job Duties:.

28  Did part-time work as a therapist at the Institute before
    1988, while he was still at Florida State Hospital.

LAW OFFICES OF
CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-9866  FAX (415) 541-9869

LAW OFFICES OF
CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-9866   FAX (415) 541-9868

<u>Does Plaintiff contend that decedent was exposed to asbestos</u>:

Plaintiff is not aware of exposure at present.   Discovery is continuing.

2)   <u>Employer's Name and Address</u>   <u>Job Title</u>

Date Started-
<u>Date Ended</u>
(mo,day,year)

Office of Disability          Claims          Approx. July 1992-
Determination Florida         Examimer         January 1994
Depart of Labor
227 North Bronough St and
1709 Mahan Dr.
Tallahassee, Fl.

<u>Description of Job Duties</u>:

Deceased reviewed claims for Social Security disability benefits for the mentally ill.

<u>Does Plaintiff contend that decedent was exposed to asbestos</u>:

Plaintiff is not aware of exposure at present.   Discovery is continuing.

3)   <u>Employer's Name and Address</u>   <u>Job Title</u>

Date Started-
<u>Date Ended</u>
(mo,day,year)

Florida State Hospital        Clinical         January 1977-August
Chattahoochee, Fl.            Psycholo-        1988
(State Mental Hospital)       gist
                              Chief
                              Psycholo-
                              gist

<u>Description of Job Duties</u>:

Deceased performed duties of (1977-78) clinical psychologist and (1979-88) chief psychologist, Civil Division.

1

2    <u>Does Plaintiff contend that decedent was exposed to</u>
     <u>asbestos</u>:

3    Yes

4

5

6    4)  <u>Employer's Name and Address</u> <u>Job Title</u>

     Date Started-
     <u>Date Ended</u>
     (mo,day,year)

7

8        The Drug Project              Psychol-        August 1973-Jan. 1976
         Gainesville, Fl.              ogist

9        (It was housed in an old
         (c.1930s') private

10       residence in Gainesville,
         Florida.

11

12

13   <u>Description of Job Duties</u>:

14   Refer to C.V. Exhibit 4.

15

16   <u>Does Plaintiff contend that decedent was exposed to</u>
     <u>asbestos</u>:

17   Plaintiff is not aware of exposure at present.   Discovery is
     continuing.

18

19                                                    Date Started-

20   5)  <u>Employer's Name and Address</u> <u>Job Title</u>    <u>Date Ended</u>
                                                     (mo,day,year)

21       University of Florida         Psychology         1968-1972
         Gainesville, Fla.             Intern

22       See Deceased's attached C.V.
         Exhibit for his practice and

23       internships. These were in
         various University of

24       Florida buildings.

25   <u>Description of Job Duties</u>:

26   See Exhibit 4 attached C.V. of decedent.

27

28   <u>Does Plaintiff contend that decedent was exposed to</u>
     <u>asbestos</u>:

CHRISTOPHER E. GRELL
LAW OFFICES OF
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-9866  FAX (415) 541-9868

1

2    Plaintiff is not aware of exposure at present. Discovery is
     continuing.

3

4

5

6    6)    <u>Employer's Name and Address</u> <u>Job Title</u>          Date Started-
                                                              <u>Date Ended</u>
7                                                             (mo,day,year)

8          Orange County              Counselor             1967
           Juvenile Hall
9          Anaheim, Calif.

10

11

12   <u>Description of Job Duties</u>:

13   Decedent performed the duties of a counselor at the Orange
     County Juvenile Hall.

14

15   <u>Does Plaintiff contend that decedent was exposed to
     asbestos</u>:

16

17   Yes

18

19   7)    <u>Employer's Name and Address</u> <u>Job Title</u>          Date Started-
                                                              <u>Date Ended</u>
20                                                            (mo,day,year)

21         Amercoat corporation       Pipe                 1964-1966
           201 North Berry st.        testing
22         Brea, CA                   and
                                      inspecting
23

24   <u>Description of Job Duties</u>:

25   Decedent performed duties of Inspector of asbestos
     containing pipes.

26

27   <u>Does Plaintiff contend that decedent was exposed to
     asbestos</u>:

28

     Yes

---

LAW OFFICES OF
CHRISTOPHER E. GRELL
885 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 84105
TEL (415) 541-9866  FAX (415) 541-9868

1    <u>RESPONSE TO INTERROGATORY NO. 26</u>:

2        While discovery is just beginning, plaintiff s informed

3    and believes that decedent's exposure may include but is not

4    limited to the following types of asbestos products during his

5    lifetime:  Asbestos fiber, asbestos tape, asbestos mud,

6    asbestos cloth, asbestos pipecovering, asbestos cement,

7    asbestos insulation pads, asbestos paper, asbestos gaskets,

8    manhole and handhole gaskets, other asbestos insulation,

9    asbestos powder, asbestos insulated wire, asbestos sheets,

10   asbestos wallboard, asbestos bricks, asbestos insulation

11   bricks, asbestos-containing construction products and/or

12   asbestos-containing friction products.  Plaintiff is

13   continuing to research the specific brand names, dates of

14   exposure, packaging and labeling of all asbestos and asbestos-

15   containing products to which decedent was exposed.  Due to the

16   amount of asbestos and the number of asbestos-containing

17   products manufactured, sold, and distributed by the defendants

18   served in this action, as well as the number of years over

19   which decedent's exposure occurred, plaintiff has not yet been

20   able to clearly specify brand names, packaging and labeling of

21   all products.  In addition, not all exposure to asbestos and

22   asbestos-containing products was from "new" asbestos and "new"

23   asbestos-containing products since a great deal of retrofit

24   and repair was done.  Additionally, decedent was exposed to

25   asbestos and asbestos-containing products used by co-workers

26   and other trades working in close proximity to him, and the

27   full extent of this exposure is still being ascertained.

28   Without waiving plaintiff's objection, plaintiff responds to

LAW OFFICES OF
CHRISTOPHER E. GRELL
885 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 84105
TEL (415) 541-8866  FAX (415) 541-8869

1  (a-i) as follows:

2        (a)   Dates of Exposure:   1967, 1977-1988

3        (b)   Manner and Duration of Exposure:   Daily work in a
4  plant that manufactured asbestos pipes.

5        (c)   Did decedent install asbestos products: Not that
6  plaintiff is presently aware.

7        (d)   Did decedent tear-out asbestos products:   Not that
8  plaintiff is presently aware.

9        (e)   See opening statement in response to interrogatory
10  No. 26, above.

11        (f)   Please see response to Interrogatory No. 25,
12  above.

13        (g)   Without waiving the above objection, plaintiff can
14  currently recall the following ships if any, that decedent
15  work on: None

16        (h)   Without waiving the above rejection, plaintiff
17  believes that the following people, who may themselves be
18  represented by counsel, were decedents supervisors:

19        Sam Cunningham - Havana, Florida
          Britt Dennis - Chatohoochee, Florida
20        Julian Davis - Naples, Florida
          Lynn Hatchen   - Address unknown
21        Peter Ivory - Address unknown
          Leoncia Curva - Address unknown
22
          (i)   Without waiving the above objection, plaintiff can
23  currently recall the following co-workers of decedent:
24
          Roy Hougton     -     Address Unknown
25        Dennis Miles    -     Address Unknown
          Ken Wilson      -     Address Unknown
26        Harry McClaren -      Quincy, Fla.
          Monte Bein      -     Gainsville, Fla.
27      . Bill Day        -     Address Unknown
          Leonard Gottlieb      Address Unknown
28        Barbara Young   -     Address Unknown
          Terry Carley    -     Address Unknown

LAW OFFICES OF
CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-9866  FAX (415) 541-9869

1       The following is a list of names of insulators who

2  identify various asbestos containing products at plaintiffs

3  different worksites.

4       Ralph Hatcher

5

6       RESPONSE TO INTERROGATORY NO. 27:   To the best of

7  plaintiff's knowledge, plaintiff is not aware of decedent

8  being exposed to asbestos outside his work environment.   (a-c)

9  not applicable.

10

11       RESPONSE TO INTERROGATORY NO. 28:

12       (a)   Please see answer to Interrogatory No. 25.

13       (b)   Plaintiff claims decedent was exposed to asbestos

14  products manufactured by the defendants sued in this lawsuit.

15  Plaintiff claims that decedent's exposure occurred to numerous

16  types of products described in Exhibit One attached hereto.

17  Discovery is also continuing.

18

19

20       RESPONSE TO INTERROGATORY NO. 29:

21       Plaintiff cannot presently state with precision the

22  frequency of the presence of such containers, nor can

23  plaintiff state each person witnessing or that can identify

24  each document evidencing the presence of such containers.

25  Plaintiff is informed that some of the labels indicated there

26  was asbestos of asbestos-containing products inside the

27  packages.   Plaintiff is not sure what specific type of

28  products were-in what packages.   Defendants are obviously more

CHRISTOPHER E. GRELL
LAW OFFICES OF
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-8866   FAX (415) 541-8868

1  knowledgeable than plaintiff about which of their products
2  were sold to the entities and location through which decedent
3  was exposed.   See answer no. 28 and Exhibit "C" previously
4  served on all defendants.   Plaintiff's discovery is
5  continuing.

6

7          <u>RESPONSE TO INTERROGATORY NO. 30</u>:

8          Decedent may have been exposed to products manufactured
9  by various companies that filed for bankruptcy and cannot be
10  sued by law.  ·Exposure to their products, if any, would have
11  occurred while decedent was performing his regular work
12  duties.   See answer no. 25 above for information regarding
13  decedent's worksites.   Defendants are obviously more
14  knowledgeable than plaintiff about which of their products
15  were sold to the entitles and locations at which decedent was
16  exposed.   (a-e) To the best of plaintiff's present
17  recollection and knowledge decedent was not exposed to
18  asbestos products other than those of defendants.   Discovery
19  is continuing.

20

21          <u>RESPONSE TO INTERROGATORY NO. 31</u>:  ·Please see
22  plaintiff's response to interrogatory number· 26 for presently
23  available information concerning decedent's co-workers.

24

25          <u>RESPONSE TO INTERROGATORY NO. 32</u>:  Plaintiff submits
26  the following information in response to defendants question
27  about·whether decedent ever left a position due to health
28  problems.   Gary was unable to work for some time after the

LAW OFFICES OF
CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-9866   FAX (415) 541-9866

1 | 1978 discovery of his hairy cell leukemia, which required a

2 | splenectomy.   However, he never resigned his position.   He

3 | returned to work after recovery.

4 |  He stopped working in January 1994 due to mesothelioma.

5 |

6 | RESPONSE TO INTERROGATORY NO. 33:   To the best of

7 | plaintiff's knowledge, the following employers of decedent may

8 | have required physical exams.   Plaintiff is not aware of the

9 | frequency, dates or any of the other information requested in

10 | (a-h).

11 |

12 | RESPONSE TO INTERROGATORY NO. 34:   To the best of

13 | plaintiff's knowledge, whether decedent's involvement in

14 | unions was as follows: Plaintiff is not aware.  Deceased

15 | belonged to any unions in his professional career.   He was a

16 | member of the American and Florida psychological associations.

17 | He may have been in a union at Amercoat.

18 |

19 |

20 | RESPONSE TO INTERROGATORY NO. 35:

21 | The last employment decedent had before he died was as

22 | follows: Psychologist.   Decedent left the job because severe

23 | pain due to mesothelioma.

24 |

25 | RESPONSE TO INTERROGATORY NO. 36:   Decedent was

26 | disabled at the time he died.

27 |  a)  Nature of Disability: Mesothelioma

28 |  b)  Date of Disability: January 18, 1994

CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-9668  FAX (415) 541-9668

1     c)    Any disability pension: NO

2     d)    From whom: N/A

3

4           RESPONSE TO INTERROGATORY NO. 37:   Other than as

5     already noted, decedent did not engage in any business where

6     he had an income.

7

8           RESPONSE TO INTERROGATORY NO. 38:   Not applicable.

9

10          RESPONSE TO INTERROGATORY NO. 39:

11    1)     For Decedent, Gary Smith:

12           1.    1987                 Amount: $37,131.00

13           2.    1988                 Amount: $25,561.00

14           3.    1989                 Amount: $15,781.00

15           4.    1990                 Amount: $19,895.00

16           5.    1991                 Amount: $28,672.00

17           6.    1992                 Amount: $37,042.00

18           7.    1993                 Amount: $52,824.00

19

20    2)     For Plaintiff Kristen Smith:

21           1.    1987                 Amount: $ 6,000.00

22           2.    1988                 Amount: $14,000.00

23           3.    1989                 Amount: $14,000.00

24           4.    1990                 Amount: $12,000.00

25           5.    1991                 Amount: $10,000.00

26           6.    1992                 Amount: $18,000.00

27           7.    1993                 Amount: $20,000.00

28

CHRISTOPHER E. GRELL
LAW OFFICES OF
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-9888    FAX (415) 541-9888

3)      For Plaintiff Ian Smith:

        1.   1986              Amount: $10,000.00

        2.   1987              Amount: $13,000.00

        3.   1988              Amount: $13,000.00

        4.   1989              Amount: $13,000.00

        5.   1990              Amount: $13,000.00

        6.   1991              Amount: $13,000.00

        7.   1992              Amount: $13,000.00

        8.   1993              Amount: $13,000.00


4)      For Plaintiff Ellen Ashdown:

        1.   1987              Amount: $42,964.00

        2.   1988              Amount: $32,833.00

        3.   1989              Amount: $37,725.00

        4.   1990              Amount: $30,244.00

        5.   1991              Amount: $48,320.00

        6.   1992              Amount: $43,590.00

        7.   1993              Amount: $43,390.00


RESPONSE TO INTERROGATORY NO. 40:   Because plaintiffs'
investigation and discovery is continuing, plaintiff does not
have copies of all decedent's hospital and medical bills.
Plaintiffs will provide this information once all these bills
have been obtained.   If defendants want this information
sooner, it is available to them by subpoena.


RESPONSE TO INTERROGATORY NO. 41:   Please see Response
to Interrogatory No. 40, above.

LAW OFFICES OF
CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-9888   FAX (415) 541-9888

1        RESPONSE TO INTERROGATORY NO. 42:  Plaintiffs does not

2   know if any company is obligated to pay decedent's hospital

3   expenses.   Decedent had Blue Cross-Blue Shield medical

4   coverage however.

5

6        RESPONSE TO INTERROGATORY NO. 43:  Decedent's funeral

7   arrangements where taken care of by Culley Funeral Home,

8   Tallahassee, Fla..

9

10       RESPONSE TO INTERROGATORY NO. 44:  Plaintiff was buried

11  April 27, 1994.

12

13       RESPONSE TO INTERROGATORY NO. 45:

14       Please see response to interrogatory No. 44.

15

16       RESPONSE TO INTERROGATORY NO. 46:  Plaintiffs are not

17  in a position to quantify the total of decedent's funeral

18  expenses.   To date, the plaintiffs have incurred approximately

19  $5,000.00 in funeral expenses.

20

21       RESPONSE TO INTERROGATORY NO. 47:  Previously accident

22  or injury claims, in excess of $500, if any, filed by decedent

23  are as follows: None

24

25       RESPONSE TO INTERROGATORY NO. 48:   (Presently pending

26  asbestos compensation claims.) None

27

28       RESPONSE TO INTERROGATORY NO. 49:   (Prior personal

LAW OFFICES OF
CHRISTOPHER E. GRELL
885 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-8868  FAX (415) 541-9868

1  injury lawsuits.) None

2

3        RESPONSE TO INTERROGATORY NO. 50:    (a-d) Asbestos

4  workers compensation awards. N/A

5

6        RESPONSE TO INTERROGATORY NO. 51:    (a-b)  Plaintiff

7  will provide defendant with the names of all settling

8  defendants and the total amount of any settlement at the

9  settlement conference.

10

11       RESPONSE TO INTERROGATORY NO. 52:   My attorneys

12  requested social security earnings information.

13

14       RESPONSE TO INTERROGATORY NO. 53: My attorney will make

15  the social security earning records available to defendant

16  when received.

17

18       RESPONSE TO INTERROGATORY NO. 54:   (Photographs of

19  decedent in last 12 months.)   Yes.

20

21       RESPONSE TO INTERROGATORY NO. 55:   (Employment History

22  of Heirs.)

23

24

25  (1)  For Plaintiff Ellen Ashdown:

26       Employer's Name and Address        Job Title        Dates

27       Self-Employed writer and        Self-           Dec. 1986-present
         editor                          Employed
28       See Exhibit #3                  Writer and
                                         Editor

LAW OFFICES OF
CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 84105
TEL (415) 541-9868  FAX (415) 541-9869

1

2

(2)   <u>For Plaintiff Ian Smith</u>:

3

| <u>Employer's Name and Address</u> | <u>Job Title</u> | <u>Dates</u> |
|---|---|---|
| Tom Smith Construction Co.<br>Gainesville, Fla. | Carpenter | 2/94-present |
| Precision Landscape<br>Services<br>Gainesville, Fla. | Landscaper | 1989-1993 |
| Calton Dental Lab.<br>Gainesville, Fla. | Ceramics<br>Technician | 1987-1989 |
| Oasis Landscaping<br>Gainesville, Fla. | Landscaper | 1986 |

(3)   <u>For Plaintiff Kristen Smith</u>:

| <u>Employer's Name and Address</u> | <u>Job Title</u> | <u>Dates</u> |
|---|---|---|
| University of Florida<br>Gainesville, Fla. | Health<br>Educator | 5/92-present |
| Bagels Unlimited<br>Gainesville, Fla. | Witness | 1989-1991 |
| Florida Museum of Natural<br>History<br>University of Fla. | Archaeolog<br>ist | 1987-1989 |

RESPONSE TO INTERROGATORY NO. 56:   (Was there a will?)

Yes

RESPONSE TO INTERROGATORY NO. 57:   If yes, state:

a)   Was it probated: Pending

b)   Executor name: Ellen Ashdown

c)   Executor Address: 3016 Brookmont Dr., Tallahassee, Fl.
32312

d)   Attorney Handling Probate: Ms. Terry Carley

CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-8666  FAX (415) 541-8668

CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-8888    FAX (415) 541-8889

1    <u>RESPONSE TO INTERROGATORY NO. 58</u>:   N/A

2

3    <u>RESPONSE TO INTERROGATORY NO. 59</u>:   (a-b) See response

4  to No. 58, above.

5

6    <u>RESPONSE TO INTERROGATORY NO. 60</u>:

7    (a)   Name of heirs living at home: Ellen Ashdown

8    (b)   Amount of money decedent contributed to heir

9  living at home.   Decedent contributed income necessary for the

10  upkeep.   Maintenance of their home.

11

12    <u>RESPONSE TO INTERROGATORY NO. 61</u>:   Was decedent

13  dependant on anyone for support.   If so: No

14

15    <u>RESPONSE TO INTERROGATORY NO. 62</u>:   Please see

16  plaintiff's response to interrogatory number 60.   In addition,

17  decedent provided support to the following individuals living

18  outside of his home (if applicable): Deceased handled all of

19  his mother's financial affairs and had power of attorney.   He

20  did not contribute money.

21

22    <u>RESPONSE TO INTERROGATORY NO. 63</u>:   Did decedent provide

23  support to anyone other than spouse, children, or parents.   If

24  so: No

25

26    <u>RESPONSE TO INTERROGATORY NO. 64</u>:   Was decedent ever

27  charged with failure to make support payments: No

28

1      RESPONSE TO INTERROGATORY NO. 65:   Services decedent

2 provided.

3      (a)   Name of person receiving services: Lama Smith

4      (b)   Description: Investments of all financial affairs

5 (banking, insurance, paying bills), taxes

6      (c)   Total time: 1 hour per week average

7      (d)   Dates: Don't remember when he started.   His

8 mother will.

9      (e)   Was decedent paid, if so, how much? No

10     (f)   Name of person compensating decedent: N/A

11     (g)   Replacement value of services: Unknown

12     (h)   Name of person doing replacement work: Brent Smith

13

14     RESPONSE TO INTERROGATORY NO. 66:   Yes, plaintiff is

15 claiming damages for the loss of decedents care, guidance,

16 advise, counsel, society etc.   Plaintiff is presently not in a

17 position to put a dollar value on this loss just yet.

18

19     RESPONSE TO INTERROGATORY NO. 67:   Hobbies, games, and

20 activity done with decedent:

21 1)   For Plaintiff Ellen Ashdown:   Attended dance and music

22 concerts, movies, went swimming, reading, watching television,

23 taking vacations to cities, beach, and mountains, spending

24 much time in conversation together.

25

26

27

28 2)   For Plaintiff Kristen Smith:   Spend much time in

LAW OFFICES OF
CHRISTOPHER E. GRELL
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-8868   FAX (415) 541-8868

1  conversation together regarding politics, social issues, sing
2  together, go to beach house, St. George Island, Fla., watch
3  movies together, go out to dinner.

4

5  3)  <u>For Plaintiff Ian Smith</u>:  Playing guitar together,
6  camping hiking, road trips to Tennessee, supportive acting
7  interest, dinner, spending much time in conversation together.

8

9  <u>RESPONSE TO INTERROGATORY NO. 68</u>:  Time spent per day
10  with decedent:

11  <u>For Plaintiff Ellen Ashdown</u>:  20 hours

12

13  <u>For Plaintiff Kristen Smith</u>:  Every other weekend,
14  holidays, phone calls on a regular basis.

15

16  <u>For Plaintiff Ian Smith</u>:  A weekend a month, telephone
17  calls weekly when not visiting father.

18

19  <u>RESPONSE TO INTERROGATORY NO. 69</u>:  Ever file any formal
20  complaints against decedent?  If yes:  No

21

22  <u>RESPONSE TO INTERROGATORY NO. 70</u>:  Ever file for
23  divorce or legally separated?  No

24

25  <u>RESPONSE TO INTERROGATORY NO. 71</u>:  Plaintiff objects to
26  this question on the grounds this information is privilege

27

28

CHRISTOPHER E. GRELL
LAW OFFICES OF
685 MARKET STREET, SUITE 340
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 541-9866  FAX (415) 541-9868

1    <u>RESPONSE TO INTERROGATORY NO. 72</u>:   My attorneys:   The

2  Law Offices of Christopher E. Grell, The Monadnock Building,

3  685 Market Street, Suite 340, San Francisco, CA, (415) 541-

4  9866.

5

6  DATED:   November 19, 1994

7

8                        LAW OFFICES OF CHRISTOPHER E. GRELL

9

10                   By

11                        Christopher E. Grell
                          Attorney for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**W·R·**
**GRACE**

PRODUCT SUMMARY

W. R. GRACE  —

| PRODUCT NAME | DATES SOLD | COLOR | USE | PACKAGING |
|---|---|---|---|---|
| Econo-White 65 | 1956-1970* | White | Acoustical Plaster | Brown kraft paper bags |
| Econo-White 70 | 1956-1970* | White | Acoustical Plaster | Brown kraft paper bags |
| High Temperature Insulating Cement | 1945-1971* | Light Beige | High Temperature Insulating Cement | 25 lb. paper bags |
| Perltex Super 40 Fog aka Perltex Fog aka Plastertex | 1968-1973** (Aka Prior to 1968) | White or Beige | Base coat for decorative textured finish | Brown kraft paper bags |
| Perltex Super-40 Perlite | 1968-1973** | White or Beige | Decorative textured finish | Brown kraft paper bags |
| Perltex Super-40 Polycoarse aka Perltex Polycourse aka Plastertex | 1968-1973** (Aka prior to 1968) | White or Beige | Sprayed texture | Brown kraft paper bags |
| Perltex Super-40 SAV | 1968-1973** | White or Beige | Decorative textured finish | Brown kraft paper bags |
| Versakote or Prep Coat #4 | 1966-1973, w/ asb; 1973-pres., w/o asb. | White or Beige | Very hard, decorative textured exterior finish | Brown kraft paper bags |
| Zono-Coustic (2 and Z) | 1959-1973* | Off white | Acoustical base coat for walls & ceilings | Brown kraft paper bags |
| Zonolite Finish Coat (Decorator's White) | 1950-1974*; w/o asb. after 1973 | White | Decorative textured finish | Brown kraft paper bags |
| Zonolite Finish Coat (Decorator's White)(Extra Hard) | 1961-1974*; w/o asb. after 1973 | White | Decorative textured finish | Brown kraft paper bags |
| Zonolite Mono-Kote (MK-3) | 1959-1973* | Light Beige | Fireproofing | Brown kraft paper bags |

Ex. B-1

Additional Responses To W.R. Graces' Proof of Claim
Section VII and VIII

## **EXHIBIT ONE**

Responses to W.R. Graces' Proof of Claim Request for Information Pertaining to Claimant/Asbestos Victim's Prior Asbestos Claims, Presently Pending, Unsettled Asbestos Claims, Names of Defendant and where applicable amount of individual settlement with other Asbestos Defendants.

As set forth in this Proof of Claim Form, this information is too voluminous to write out in the space provided for in W.R. Graces' Proof of Claim Form Sections VII and VIII.

**Exhibit One:** W.R. Grace Exhibit One Settlement – Prior Claims Information

Law Offices of Christopher E. Grell
Client Profile Entry
General Status Report

**Date:** February 8, 2006
**Client#:** 848
**Case Title:** ELLEN ASHDOWN, KRISTY SMITH, IAN SMITH as Surviving Heirs and ELLEN
ASHDOWN as Executrix of the Estate of GARY SMITH, Deceased, v. Abex Corporation

| | |
|---|---|
| **Client Name:** | Ms. Ellen Ashdown |
| **Address:** | 3016 Brookmont Dr. |
| **City/State/Zip:** | Tallahassee, Florida 32312 |

**Name of Deceased:** Re: Mr. Gary G. Smith (D)

**Social Security #:** 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 (Ellen)
**(Spouse) Social Security #:** 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 (Gary)

**(Spouse/Decedent's) Name:** Mr. Gary Smith
**Children's Name:** Kristy Smith, Ian Smith

**Date of Birth:** 7/29/44 (Gary)
**Date of Death:** 4/21/94 (Gary)
**Date of Marriage:** 1/16/76

**Docket Number:** **PI:** **WD:** 961288
**Jurisdiction:** San Francisco

## RELEASES/RELEASE LETTERS SENT/TYPED

| DEFENDANTS | AMOUNTS | STATUS-PENDING, PAID OR? |
|---|---|---|
| AcandS (A) | $ | NOT SETTLED: |
| Ameron | $863.25 | SETTLED: |
| Fibreboard (A) | $ | NOT SETTLED: |
| Garlock | $ | NOT SETTLED: |
| W.R. Grace | $ | NOT SETTLED: |

Asbestos Claims Management

Exhibit One

(formerly known as Nat=l Gypsum)  $_____ _____                    NOT SETTLED:

CCR
(GAF; Asbestos Claims Corp. formerly known as
Nat'l Gypsum/Armstrong/A.P. Green/
U.S. Gypsum, Certainteed)          $80,000.00                         MONEY PAID

Riley Stoker                       $1,000.00                          MONEY PAID

Manville                           $200,000.00                        PARTIAL PAYMENT:

Amatex (Bankruptcy)                $1,200.00                          MONEY PAID

Owens-Corning                      $40,000.00                         MONEY PAID:

Combustion Engineering             $750.00                            MONEY PAID:

Unarco                             $6,557.00 (CLV)                    MONEY PAID:

Flintkote                          $1,500.00                          MONEY PAID:

Uniroyal                           $500.00                            MONEY PAID:

Owens-Illinois                     $3,500.00                          MONEY PAID:

Parker-Hannifan                    $350.00                            MONEY PAID:

Asbestos Claims Management         $_____ _____                   Class decertified

Pittsburg Corning                  $_____ _____                   BANKRUPT

| | | |
|---|---|---|
| United States Mineral Products | $_____ | BANKRUPT |
| Babcock & Wilcox **(Bankrupt)**(A) | $3,000.00 | PENDING SETTLMEENT<br>Pre-Bankruptcy;<br>POC Sent: 12/18/2000 |
| Anchor Packing | $_____ | BANKRUPT |
| M.H. Detrick | $_____ | BANKRUPT |
| Keene | $_____ | BANKRUPT |
| 48 Insulations | $_____ | BANKRUPT |
| Amatex | $_____ | BANKRUPT |
| Celotex | $_____ | MONEY PAID: |
| Eagle Picher | $_____ | BANKRUPT |
| H.K. Porter | $_____ | BANKRUPT |
| Raymark | $_____ | BANKRUPT |
| UNR | $ 863.25 | SETTLED: |