IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors | ) | (Jointly Administered) |
| | ) | |
| | ) | Hearing Date: August 21, 2006 at 2:00 PM |
| | ) | Objection Deadline: August 4, 2006 at 4:00 PM |

## Response to Motion to Compel

Now come certain asbestos personal injury claimants (Claimants) represented by the Law Firm of Cooney and Conway, and in response to WR Grace's motion to compel additional responses to the estimation questionnaire, state as follows:

Claimants represented by the Cooney and Conway Law Firm submitted 191 questionnaire responses on July 11th, 2006. Claimant's responses included both narrative answers and, where appropriate, attached and cited exhibits that accurately and more thoroughly answered WR Grace's inquiries. As directed by the questionnaire, Claimant's also attached copies of depositions and medical records. Whenever a question was better answered by a document, the document was attached, and the answer to the question referenced and explicitly directed the reader to the document. Preparing the responses to the questionnaires was both time consuming and labor intensive.

Grace is apparently dissatisfied with Claimant's responses. Claimant's use the term 'apparently' because Grace has made no specific motion to the Cooney and Conway claimants, only a general and vague request for cure directed to all claimants. Grace's motion to compel a narrative

answer to questions more appropriately and better answered by a document will, if granted, be extremely burdensome for the Claimants. Additionally, such a narrative response would serve no purpose, since Claimants would simply be retyping documents such as social security earnings reports in order for the claims estimation contractor to retype them into Grace's purported database. Further, contrary to its pleadings, Grace's motion is another attempt to inappropriately use the estimation hearing as a way to disqualify valid claims.

**I. Claimants Questionnaire Response Fully Comply with the Federal Rules Governing this Case.**

Under the Bankruptcy rules, Rule 33 (Rule 33 F.R.Civ.P.) applies to adversarial proceedings such as the instant matter (See USCS Bankruptcy R. 7033).

Rule 33(d) states:

> (d) Option to Produce Business Records. Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, including a compilation, abstract or summary thereof, *and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries.* A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.
>
> USCS Fed Rules Civ Proc R 33
> (emphasis added)

Grace objects to the Claimant's exercise of their option to produce records. Such an option

is clearly within Claimant's election under rule 33(d). Claimants have gone beyond the requirements of Rule 33, and have not only given sufficient detail to permit Grace to 'locate and identify' the documents, Claimant's have <u>attached and specifically referenced each document provided for each question so answered</u>. As an example, Grace requested Claimants entire employment history in Part VII of the questionnaire. In response, Claimants attached a copy of their certified report of earnings from the Social Security Administration. This attachment lists every employer, by date and address, for each Claimant's entire career. In the space provided for a 'narrative answer', Claimants directed Grace to see the "attached social security print-out". The information is provided in a precise, easy to understand, chronological manner. There can be no confusion as to what document a claimant is referencing, since it is scanned, labeled and attached.

Grace objects to the documents because it is purportedly <u>impossible</u> for its claims processing agent, Rust Consulting, to determine what information contained in a document actually answers the question. (Washburn affidavit, attached to Grace's motion as Grace's Exhibit A, reproduced here as Claimant's ex. A). Grace's argument logically fails in light of its demand that depositions be submitted with the questionnaires. Surely it is more difficult to compile database information from a deposition, parsing through colloquy, objections, and repetitive and redundant questioning in order to find work and exposure history than by reading a social security print-out or interrogatory answers. Yet Grace only objects to the latter.

This argument is also is contrary to Rust Consulting's description of its own claims information processing capabilities:

> "As class members send in their claim forms, via U.S. Mail or through electronic filing, Rust Consulting has the systems, technology and trained personnel in place to process and validate a large volume of claims in a timely manner.

When volume is especially large, our parent company, SOURCECORP, can offer a variety of methods for claim and voucher processing. SOURCECORP processes more than 90 million claims per year using capabilities that include:

- *High-speed scanning, with OCR/ICR technology, to create images for data conversion as well as for archival and retrieval processes*

- *Data capture from image or paper*

- *3,000 data entry stations to complete the data entry process*

- *A highly automated tracking and auditing process to receive, open, prepare, sort and image documents; batch and allocate images to data capture operators; extract data elements and validate data "*

Rust Consulting website,
http://www.rustconsulting.com/Resources_claims.html

Far from the overburdened and overwhelmed data entry clerk portrayed in the Washburn affidavit, Rust and Sourcecorp claim elsewhere to have the capability of creating similar databases almost entirely by scanning and electronically indexing documents. Such capability requires a minimal amount of manual input. The claimants have provided Grace with digitized or scanned documents responsive to Grace's questions, all of which comport with Rule 33 (d). The fact that Grace and Rust have apparently elected to use manual data entry rather than the faster and less labor intensive OCR data retrieval should not be a reason to make Claimants essentially re-type their employment and exposure histories for Grace's advantage.

**II. Extracting the Data and Compiling it into a Narrative Form Is an Unduly Burdensome and**

**Unnecessary Duplication of Effort.**

Rule 33 (d) is clear that where the burden of ascertaining the information substantially the same for the party serving the interrogatory as it is for the party served, specification of the records containing the information suffices as an answer. *Goodrich Corp. v. Emhart Indus.*, 2005 U.S. Dist. LEXIS 25158 (D. Cal. 2005). Grace apparently disagrees, arguing that only a narrative answer will suffice, but makes no showing that either the information sought is missing from the records provided or that the information is so voluminous that either Grace or Rust is unable to ascertain it.[1].

Grace complains that the information has not been provided in the *form* in which Grace wishes to review it. Grace seeks to have this Court order the claimants to take perfectly legible and understandable information, such as a social security print-out and then re-type it into the questionnaire form. Then, Grace wants to take the information re-typed by the claimant, and have the estimation consultant again re-type it into the 'navigable database'. In bringing this motion, Grace truly urges this Court to elevate form over function.

Claimants have provided the information sought. In order to answer the questionnaire, claimants spent a substantial amount of time retrieving case files (since many of these claims are older files), copying medical records, discovery and depositions, providing the information sought, and scanning and filling out the narrative portion of the questionnaire forms. If claimants were to retype only the employer information from the social security print-out into the questionnaire forms, rather than submitting the relevant documents pursuant to Rule 33, it is estimated that it would take more than 90 minutes per questionnaire. (Affidavit of Kathy Byrne, Cooney and Conway attorney

---

[1] In fact, if anything, Grace proves the opposite since the the Rust project manager's affidavit states that the records average only 38 pages per claimant. This is surely not a 'voluminous' amount.

overseeing claim preparation, attached as Exhibit B). Simply transferring the product and jobsite information from the previously filed answers to interrogatories into the questionnaire form would add an additional hour and a half.

When the burden of deriving information from documents is equal between the parties, the interrogating party should bear the burden of compiling the information. *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 44 (D.N.Y. 1984), citing *Sandler v. Musicland Pickwick Int'l, Inc.*, 31 Fed. R. Serv. 2d 760, 761-62 (E.D. Tex. 1980); *Webb v. Westinghouse Elec. Corp.*, 81 F.R.D. 431, 435-36 (E.D. Pa. 1978); *Mid-America Facilities, Inc. v. Argonaut Co.*, 78 F.R.D. 497, 498 (E.D. Wis. 1978).

Here, the burden is at least equal. Grace is the interrogating party. In fact, according to Grace's affiant, even if Claimants were to do what Grace wants–that is fill in the blanks on the questionnaire– **Grace's estimator would still have to re-enter the information**. (Washburn affidavit, par. 4). Grace should bear the burden of compiling the information in the format it desires, particularly since it apparently is going to re-enter the data anyway. There is no need for the Court to order a purposeless duplication of effort.


**III. Grace's Motion Is an End-Run Attempt to Disqualify Valid Claims, a Tactic to Which Claimant's Rightfully and Specifically Object**


The Bankruptcy Code does not establish the manner in which claims are to be estimated. See In re Federal-¡Mogul Global, Inc., 330 B.R. 133, 155 (Bankr. D. Del. 2005). However, the Court must not be persuaded to conduct trials on the merits of individual claims under the guise of estimation, which Grace seeks, because conducting such trials would deprive individual claimants

of the full measure of due process and their right to a jury trial. See Federal-Mogul Global, Inc., 330 B.R. at 154-55 (stating that to focus on the merits of individual claims in an estimation would "require that each claimant be afforded the procedural protections of the due process clause of the Fifth Amendment, thereby requiring cases that presented disputed issues of fact a trial by jury"); see also In re Eagle-Picher Indus., 1996 U.S. Dist. LEXIS 22742 (D. Ohio 1996). Here, Grace's objective is clearly not to estimate, but to disallow claims or convince this Court to estimate them at zero, the effective equivalent of disallowance. This manipulation of the rules should not be permitted.

Grace has repeatedly pledged to this Court that it is not seeking disallowance by means of this estimation process. (See Grace motion at pages 2, 18, 19, 20). However, in its most recent annual filing with the Securities and Exchange Commission, Grace told the SEC and its shareholders:

> **Through the estimation process, Grace will seek to demonstrate that most claims should not be allowed because they fail to establish any** material property damage, **health impairment or significant occupational exposure to asbestos from Grace's operations or products**. If the Bankruptcy Court agrees with Grace's position on the number of, and the amounts to be paid in respect of, allowed personal injury and property damage claims, then Grace believes that the Funding Amount could be less than $1,613 million.
> However, this outcome is highly uncertain and will depend on a number of Bankruptcy Court rulings favorable to Grace's position.
>
> WR GRACE Annual Report, 10 K, filed March 13, 2006, page F-21, attached as Exhibit \*\*)

Obviously, the statements in Grace's pleadings and in open court are at odds with its sworn SEC filings. Grace's sworn SEC statement avers that it is going to attempt use this estimation

process to disallow most claims. Claimants have a right to trial by jury on their personal injury claims, which are governed by state law. Clearly, all information Grace receives in the questionnaire is going to be used adversarially by Grace in an effort to disallow such claims, not for the purpose of estimating its own liability.

In light of Grace's sworn statement as to its real purposes in this estimation hearing, Claimant's objections become even more vital. Objections that Grace describes as 'generic' are in fact, essential for the Claimants to make in order to preserve their rights. Illinois law will control the Cooney & Conway Claimant's cases should they eventually be tried on their merits. Illinois law has special relevance requirements in asbestos litigation. Cook County, where the Cooney and Conway cases are filed, has a deferred asbestos docket under which discovery is enjoined for certain cases. Claimant's objections are not 'generic', they are specific as they relate to the law controlling the underlying cause of action, and should not be over-ruled.

## Conclusion

Claimants have substantially complied with the requirements of the estimation questionnaire. Grace and its estimation contractor have not chosen the least burdensome way by which to undertake the creation of a navigable database, but Claimant's responses to the questionnaire have no impact on Grace's ability to process the information. Claimant's submission of documents is a proper response pursuant to R. 33(d.). Claimant's objections to certain areas of questioning are not "generic", as Grace asserts, instead they are specific, proper and applicable under the evidentiary laws of Illinois.

Wherefore, for all of the reasons stated above, Claimants respectfully request this Honorable Court to deny in all respects Grace's motion to compel.

Respectfully Submitted
COONEY AND CONWAY

_____
By one of its Attorneys

Kathy Byrne
COONEY AND CONWAY
Attorney for the Plaintiff
120 N. Lasalle St., 30th Floor
Chicago, IL 60602
(312) 236-6166
#90200