IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 <br> ) <br> ) Case No. 01-01139 (JKF) <br> ) |
| W. R. GRACE & CO., et al., | ) (Jointly Administered) <br> ) |
| Debtors. | ) Docket Nos.: 9315, 11408, 12679, 12757, <br> ) 12941 <br> ) Response Deadline: August 11, 2006 <br> ) Hearing Date: August 21, 2006 |

**REPLY OF THE OFFICIAL COMMITTEE OF ASBESTOS PROPERTY DAMAGE CLAIMANTS TO THE DEBTORS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PROTOCOL FOR DISPOSITION OF CANADIAN PROPERTY DAMAGE CLAIMS**

The Official Committee of Asbestos Property Damage Claimants (the "PD Committee") of the above-captioned debtors (the "Debtors"), by and through undersigned counsel, hereby files this Reply (the "Reply") to the Debtors' Supplemental Memorandum in Support of Protocol for Disposition of Canadian Property Damage Claims (the "Supplement"). In support of its Reply, the PD Committee respectfully submits as follows:

**Preliminary Statement**

The Supplement provides no support for the wholesale transfer of property damage claims ("PD Claims") involving Canadian buildings to an irrelevant Canadian proceeding. The Canadian proceeding involves a single debtor company--Grace Canada, Inc. ("Grace Canada")-- which has no connection with any PD Claims filed in these cases against the Debtors. As established at the July 24, 2006 omnibus hearing, Grace Canada

- is not a Debtor in these Chapter 11 cases;

- is a "relatively new entity"[1] that is not reorganizing in Canada; and

- is not named in any property damage proof of claim filed in these cases.

In the context of these irrefutable facts, the Court rightly opined,

> But, how is the Canadian court going to adjudicate claims against the U.S. debtor when the parallel proceeding doesn't involve the U.S. debtor, because this isn't a recognition proceeding in Canada of the U.S. debtor. It's another debtor that has some sort of relief that it maybe entitled to because the U.S. debtor has filed.

Transcript at 188.

Nowhere in the Debtors' twenty-six page "Supplement"[2] do they answer the Court's threshold jurisdictional inquiry. Indeed, the Debtors fail to cite to a single case in which a Canadian court has determined the merits of <u>claims</u> solely against a U.S. rather than Canadian debtor. The Debtors instead generically (a) rely upon inapposite decisions that relate solely to the extension of third-party injunctions and (b) focus on the authority of a bankruptcy court to transfer claims to a foreign jurisdiction based upon wholly inapplicable doctrinal concepts of international comity, concurrent jurisdiction, and *forum non conveniens*. All agree that this Court does not possess subject matter jurisdiction over Grace Canada.[3] The Debtors have offered no caselaw demonstrating that the Canadian court's jurisdictional reach over the Debtors or PD Claimants is any different. As a result, the Court should deny the Debtors' request to transfer PD Claims to Canada.

---

[1] *See* July 24, 2006 transcript (the "Transcript") at 186. Grace Canada was formed in 1998, well after the Debtors purportedly stopped utilizing asbestos-laden products. A copy of Grace Canada's corporate profile is attached hereto as Exhibit A. Interestingly, Grace Canada currently lists O. Mario Favorito as one of its administrators, notwithstanding that Mr. Favorito has been indicted by a federal grand jury for crimes committed in and around Libby, Montana.

[2] The Debtors' initial brief on this issue was only eight pages in length.

[3] Applying the Debtors' flawed logic, they would have this Court believe it could assert jurisdiction over claims made solely against Grace Canada if those claims were based primarily on United States law. The whole notion of comity rises or falls on the consistency of the application of laws amongst jurisdictions.

Case No. 01-1139 (JKF)

## Background

1.  On April 2, 2001, each Debtor filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2.  According to the Debtors' Disclosure Statement [Docket No. 6896], which revealed the first glimpse of the Grace Canada proceeding, on April 4, 2001, the Ontario Superior Court of Justice granted non-Debtor Grace Canada an order pursuant to Section 18.6 of the Canadian Companies' Creditors Arrangement Act (the "CCAA").[4] As the Debtors state, although Grace Canada "is not a Debtor, Grace believed that Grace Canada could potentially become subject to asbestos-related Claims." Disclosure Statement at 43.

3.  On April 12, 2001, the Office of the United States Trustee appointed the PD Committee, the Official Committee of Unsecured Creditors and the Official Committee of Asbestos Personal Injury Claimants.

4.  On April 22, 2002, over the objection of the PD Committee, the Court entered a bar date order (the "Bar Date Order"), setting March 31, 2003 (the "Bar Date") as the deadline for filing Asbestos Property Damage Claims, Medical Monitoring Claims and Non-Asbestos Claims and further approving the Debtors' notice program.[5]

---

[4] *In the Matter of Grace Canada, Inc.*, Court File 01-CL-4081, Ontario Superior Court of Justice, Commercial List.

[5] The Bar Date notice program included publication notice in both the United States and Canada. *See Debtors' Revised Motion as to all Non-Asbestos Claims, Asbestos Property Damage and ZAI Claims For Entry of Case Management order, Establishment of a Bar Date, Approval of the Proof of Claim Forms and of the Notice Program* [Docket No. 1665]. Significantly, PD Claimants owning buildings in Canada were directed to file their proofs of claim against the Debtors with this Court and not with the Grace Canada court. Indeed, any filing in the Grace Canada court would not have made any logical sense, as those claims were against the U.S. Debtors only.

Case No. 01-1139 (JKF)

5. On December 5, 2002, nearly seven months into the Court-mandated eleven-month Bar Date notice program, the Grace Canada court entered an *ex parte* order (the "Canadian Bar Date Order"),[6] effectuating this Court's Bar Date Order. The Debtors failed to reveal the existence of the Canadian proceeding, let alone the Canadian Bar Date Order in these cases until they filed their Disclosure Statement in November 2004, almost two years after the Canadian Bar Date Order was entered and four years after the Canadian proceeding was commenced. The intended effect of the Canadian Bar Date Order appears to have been to ensure that no PD Claim against the Debtors was filed with the Grace Canada court. In fact, no PD Claimant filed a proof of claim against Grace Canada.[7]

6. On June 19, 2006, the Debtors filed their *Motion for a Scheduling Order Regarding Certain of the Debtors' Fifteenth Omnibus Objections to PD Claims (Substantive)* (the "Scheduling Order Motion") [Docket No. 12679] pursuant to which the Debtors sought, among other things, the Court's permission to proceed immediately to determine the merits of the Debtors' substantive objections to PD Claims involving buildings located in Canada as part of the pending Grace Canada proceeding.

7. On July 24, 2006, the Court held a hearing on the Scheduling Order Motion, and after hearing argument on the issue of whether to permit the Debtors to seek a ruling on the enforceability of the Canadian PD Claims in the Grace Canada Proceeding, the Court directed the Debtors' to submit a supplemental brief on two issues: (1) whether the Canadian court can assume jurisdiction over both the Debtors and the PD Claimants to adjudicate PD Claims; and (2) whether the Court can transfer the claims from "this case to that case." *See* Transcript at 195.

---

[6] Indeed, the Debtors failed to include any information in respect of the Grace Canada proceeding in its Bar Date notice program, failed to provide any notice to this Court of such proceeding prior to the filing of its Disclosure Statement and failed to provide any notice to claimants in these cases of the pendency of the proceeding.

[7] Currently, approximately 100 PD Claims involving Canadian buildings remain against the Debtors.

Case No. 01-1139 (JKF)

## The Grace Canada Court Lacks Subject Matter
## Jurisdiction to Determine the Merits of PD Claims

8. Strikingly, the Debtors fail to address the Court's threshold issue of whether the Grace Canada court possesses subject matter jurisdiction over claims against entities that are not debtors in Canada. This glaring omission demonstrates the tenuous nature of the Debtors' argument. The Debtors have regrouped since the last omnibus hearing by making a subtle, but significant shift by now characterizing this Court's role as one focused on the allowance/disallowance of the Claims. No matter how the Debtors attempt to mask the relief sought, at bottom, they are asking for leave to have the Grace Canada court adjudicate the Claims.

9. The Debtors do not cite to any case in which a Canadian court determined claims against a U.S. debtor that was not a debtor under the CCAA. The Debtors do not even cite to a case in which the Court determined claims of a U.S. debtor who was also a debtor in Canada. For instance, *Babcock & Wilcox Ltd. (Re)*, (2000), 18 C.B.R. (4th) 157, involved a Canadian court extending the third-party channeling injunction to a B&W Canadian subsidiary. At no time did the B&W Canadian court ever determine the merits of claims of any creditor, U.S. or Canadian. Similarly, *United Air Lines Inc. (Re)*, (2005) 9 C.B.R. (5th) 159 and *Matlack, Inc. (Re)*, (2001) 26 C.B.R. (4th) 45, did not involve the determination of the enforceability of claims against U.S. debtors. Rather, *United Airlines* involved the air carrier's efforts to avoid making contributions to its Canadian funded pension plans, and *Matlack* involved the debtor's application for stay protection under the CCAA. *United Airlines* and *Matlack* are further distinguishable in that the debtors in those cases also filed bankruptcy proceedings in the U.S.

10. Here, without any authority, the Debtors seek a protocol to transfer certain PD Claims to a wholly unrelated Canadian proceeding with no jurisdiction over the Debtors or PD

5

Claimants. *See* Supplement at 3, n.5. In fact, the protocol appears contradictory to the intent of the Canadian Bar Date Order to channel *away* from the Canadian court PD Claims. Plainly, the Court should deny the Debtors' request to transfer PD Claims to the unrelated Grace Canada proceeding.

## The Court Cannot Transfer PD Claims to the Canadian Court

11. The Debtors offer no new support for their flawed analysis regarding either Bankruptcy Code section 305 mandatory abstention or permissive abstention under 28 U.S.C. 1334(c)(1). When a court abstains pursuant to section 305, it abstains from the entire case. *See In re Bellucci*, 119 B.R. 763, 771 (Bankr. E.D. Cal. 1990). "The court cannot rely on section 305 abstention to pick and choose proceedings within the case." *Id. See also, In re Reed*, 94 B.R. 48, 53 (Bankr. E.D. Pa. 1988) (holding that section 305 only applies to abstaining from the entire case and not to particular proceedings within the case). Clearly, the Debtors have misconstrued this statute as they are not seeking to dismiss or suspend these entire bankruptcy cases.

12. The Debtors likewise cannot rely on permissive abstention under 28 U.S.C. 1334(c)(1). Pursuant to 28 U.S.C. § 1334(c)(1), the Court "in the interest of justice, or in the interest of comity with State courts or respect for State law" may abstain from hearing a proceeding arising under title 11. Over the objection of the PD Committee, the Debtors were successful in obtaining a bar date by which all PD Claims against the *U.S. Debtors* had to be filed. Indeed, by the Bar Date Order, hundreds of PD Claims for buildings located throughout Canada were filed against the *U.S. Debtors*, primarily W.R. Grace & Co.-Conn., one of the Debtors who manufactured and processed asbestos-containing products. Significantly, none of those claimants asserted PD Claims against Grace Canada in the Grace Canada Proceeding. As a result, the Grace Canada court is without any subject matter or personal jurisdiction over the

6

Case No. 01-1139 (JKF)

Canadian PD Claims thereby precluding the Court from abstaining from the adjudication of the Canadian PD Claims in favor of the Grace Canada court.

13. Despite the lack of the Grace Canada court's jurisdiction over the Canadian PD Claims, the Debtors brazenly blur that issue by referring to a number of inapposite cross-border cases that authorized permissive abstention. *See e.g., In re Maxwell Corp.*, 170 B.R. 800 (Bankr. S.D.N.Y. 1994); *In re Regus Business Centre Corp.*, 301 B.R. 122 (Bankr. S.D.N.Y. 2003). The Debtors fail to point out that in every case they rely upon for this Court's proposed authority to permissively abstain from the determination of the Canadian PD Claims, the U.S. debtor in each such case itself had filed a parallel proceeding in the foreign jurisdiction. In contrast, as explained above, the only entity that is the subject of the Grace Canada Proceeding is Grace Canada, and that entity is not a U.S. Debtor. Accordingly, there is no pending proceeding to which the Court can properly transfer the Canadian PD Claims.

14. The Debtors further obfuscate a straightforward jurisdictional issue by haphazardly invoking the doctrines of international comity, concurrent jurisdiction, and *forum non conveniens*. The Debtors also erroneously contend that the Grace Canada court possesses a strong interest in resolving PD Claims that solely involve the Debtors. Regarding international comity, this doctrine is not at issue before the Court because no foreign proceeding exists in respect of a common debtor. Contrary to the Debtors' assertions, comity is not advanced by requiring PD Claimants to have the merits of their claims against the Debtors determined in a foreign proceeding with no jurisdiction over or connection to those claims.[8]

---

[8] Additionally, contrary to the Debtors' assertion, new Chapter 15 of the Bankruptcy Code has no bearing on whether the court should, as a matter of international comity, transfer PD Claims to the Grace Canada proceeding. As the Debtors acknowledge, Chapter 15 applies to "a foreign proceeding and a case under this title with respect to the **same debtor**...pending concurrently," a factual scenario absent from these cases. Supplement at 13 (emphasis added). Parenthetically, if BAPCPA does provide some basis for a decision in the instant controversy, then it should

15. The Debtors argument in respect of concurrent jurisdiction is also misplaced because, as the Debtors acknowledge, the doctrine is premised upon two courts possessing jurisdiction over a matter. As the Debtors are not debtors in the Grace Canada proceeding, concurrent jurisdiction does not exist in respect of either the Grace Canada court or this Court. Accordingly, the doctrine of concurrent jurisdiction appears entirely misplaced and provides no support for the transfer of PD Claims to Canada.

16. Likewise, the doctrine of *forum non conveniens* has no bearing on the issue of whether the Court may transfer PD Claims to Canada. It cannot be gainsaid that the Debtors requested, and the Court approved, the Bar Date Order that directed PD Claimants, including those who own Canadian buildings, to file proofs of claim against the Debtors with this Court. In approving the Canadian Bar Date Order, the Grace Canada court likewise directed that PD Claimants file proofs of claim against the Debtors with this Court. It is simply too late for the Debtors to now single out a segment of PD Claimants and demand that they engage in a merits-based determination in Canada, which would be inefficient, costly and grossly inconvenient.

17. Finally, the Grace Canada court lacks any interest in determining the merits of claims involving the Debtors. First, the purpose of the Grace Canada proceeding is merely prophylactic - - to *prevent* the filing of asbestos related claims in Canada against Grace Canada, a non-Debtor. Second, the Canadian Bar Date Order makes clear that PD Claims are to be adjudicated in this forum. Third, the Grace Canada court has no jurisdiction over the Debtors. If anything, the Grace Canada court could easily disapprove of a process by which PD Claims involving Canadian buildings are singled out with a more cumbersome claims process. For instance, in *Laidlaw (Re), (2003)* 39 C.B.R. (4th) 239 (attached hereto as <u>Exhibit B</u>), Justice

---

be applied to other aspects of these cases, such as whether the Debtors' exclusive right to file a plan of reorganization should be terminated some five years after these cases were commenced.

Case No. 01-1139 (JKF)

Farley, the same judge who presides over the Grace Canada proceeding, recently highlighted the importance of Canadian claimants being subject to the identical claims process as U.S. claimants when a debtor seeks to treat Canadian and U.S. claimants equally under a single plan of reorganization. There, the *Laidlaw* court gave full force and effect to a plan of reorganization and confirmation order approved by the U.S. bankruptcy court based, in part, on the "single claims process which treats [Canadian and U.S. claimants] equally regardless of the jurisdiction in which they reside...."[9] *Id.* at ¶5.

18.   Here, the Debtors seek to single out Canadian claimants with an unnecessary, inefficient and burdensome claims process, which would require multiple hearings in two forums. This suggested claims process is contrary to the Court's Modified Scheduling Order Regarding Certain of Debtors' Fifteenth Omnibus Objections to Claims (Substantive) [Docket No. 11408], which prohibits no more than two appearances in respect of the adjudication of PD Claims, as well as the Bar Date Order and the Canadian Bar Date Order. At bottom, the Debtors fail to explain why transferring PD Claims to Canada in any way would advance these cases, especially where the Court has stated its willingness to adjudicate PD Claims involving Canadian buildings.

---

[9] The *Laidlaw* court also possessed concurrent jurisdiction to bless the U.S. plan of reorganization and confirmation order because, unlike here, the Canadian debtors were also U.S. debtors. Even with such concurrent jurisdiction, the *Laidlaw* court found it more appropriate that Canadian claims be adjudicated in the U.S. than in Canada.

Case No. 01-1139 (JKF)

## Conclusion

**WHEREFORE**, the PD Committee respectfully requests that the Court (a) deny the Scheduling Order Motion as it related to transferring any PD Claim to the Grace Canada proceeding and (b) provide the PD Committee with such other and further relief as the Court deems just and appropriate.

Wilmington, Delaware
Dated: August 11, 2006

Respectfully submitted,

BILZIN SUMBERG BAENA
 PRICE & AXELROD LLP
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131-2336
Telephone: (305) 374-7580

Scott L. Baena (Admitted Pro Hac Vice)
Jay M. Sakalo (Admitted Pro Hac Vice)
Matthew I. Kramer (Admitted Pro Hac Vice)
 and

FERRY JOSEPH & PEARCE, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, Delaware 19899
Telephone: (302) 575-1555

By: /s/ Theodore J. Tacconelli
 Theodore J. Tacconelli
 (Del. Bar No. 2678)

CO-COUNSEL FOR THE OFFICIAL
COMMITTEE OF ASBESTOS PROPERTY
DAMAGE CLAIMANTS