# EXHIBIT B

Westlaw.

39 C.B.R. (4th) 239

C
2003 CarswellOnt 787

Laidlaw, Re

In the Matter of the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as Amended

In the Matter of the Canada Business Corporations Act, R.S.C. 1985, c. C-44, as Amended

In the Matter of the Business Corporations Act (Ontario), R.S.O. 1990 c. B. 16, as Amended

In the Matter of Laidlaw Inc. and Laidlaw Investments Ltd.

Ontario Superior Court of Justice

Farley J.

Heard: February 28, 2003
Judgment: February 28, 2003
Docket: 01-CL-4178

Copyright © CARSWELL,

a Division of Thomson Canada Ltd. or its Licensors. All rights reserved.

Counsel: J. Carfagnini, B. Empey, for Laidlaw Applicants

D. Tay, for Ernst & Young Inc., Monitor

S.R. Orzy, K.J. Zych, for Bondholders Subcommittee

D. Byers, for Bank Subcommittee

J. Marin, for Safety Kleen Corporation

R. Jaipargas, for Federal Insurance Company, Chubb Insurance Company

Subject: Corporate and Commercial; Insolvency

Corporations --- Arrangements and compromises -- Under Companies' Creditors Arrangement Act -- Miscellaneous issues

39 C.B.R. (4th) 239

Applicant debtors and others commenced proceedings under chapter 11 of United States Bankruptcy Code -- Joint plan of reorganization for debtors was confirmed by U.S. judge -- Debtors brought application for order pursuant to s. 18.6(2) of Companies' Creditors Arrangement Act recognizing and implementing order confirming plan and for order pursuant to s. 18.6(2) of Act recognizing and implementing plan in Canada -- Application granted -- Section 18.6(2) of Act provides court with authority to coordinate proceedings under Act with any foreign proceeding -- Applicant debtors were entitled to relief under Act and U.S. proceedings had been recognized as foreign proceeding for purposes of Act -- Global nature of plan of restructuring was appropriate consideration on application -- Over 90% of revenues for debtors were produced by operations in United States -- Ontario court had been apprised of developments relating to U.S. proceedings on regular basis -- In these circumstances, full force and effect should be given in Canada to confirmation order and to plan of reorganization pursuant to s. 18.6(2) of Act.

Cases considered by Farley J.:

    Algoma Steel Inc., Re, 2001 CarswellOnt 4640, 30 C.B.R. (4th) 1 (Ont. S.C.J. [Commercial List]) -- referred to

    Babcock & Wilcox Canada Ltd., Re, 2000 CarswellOnt 704, 5 B.L.R. (3d) 75, 18 C.B.R. (4th) 157 (Ont. S.C.J. [Commercial List]) -- followed

    Beatrice Foods Inc., Re (October 21, 1996), Doc. 295-96 (Ont. Gen. Div.) -- considered

    Loewen Group Inc., Re, 2001 CarswellOnt 4910, 32 C.B.R. (4th) 54, 22 B.L.R. (3d) 134 (Ont. S.C.J. [Commercial List]) -- referred to

Statutes considered:

Bankruptcy Code, 11 U.S.C. 1982

    Generally -- referred to

Canada Business Corporations Act, R.S.C. 1985, c. C-44

    Generally -- referred to

    s. 173 -- considered

    s. 173(1)(o) -- considered

    s. 176(1)(b) -- considered

    s. 191 -- considered

    s. 191(2) -- considered

Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36

    Generally -- referred to

    s. 18.6(1) "foreign proceeding" [en. 1997, c. 12, s. 125] -- referred to

    s. 18.6(2) [en. 1997, c. 12, s. 125] -- considered

39 C.B.R. (4th) 239

s. 20 -- referred to

APPLICATION by debtors for order recognizing and implementing United States order confirming plan of reorganization and for order recognizing and implementing plan in Canada.

*Farley J.*:

1  The applicants sought an order as follows:

> a. an order pursuant to section 18.6(2) of the *Companies' Creditors Arrangement Act* (the "CCAA") recognizing and implementing in Canada the Order (the "U.S. Confirmation Order") of the Honourable Judge Kaplan of the United States Bankruptcy Court for the Western District of New York (the "U.S. Court") providing for, *inter alia*, confirmation of the Third Amended Joint Plan of Reorganization of Laidlaw USA, Inc. and its Debtor Affiliates, as may be amended from time to time prior to the date of the U.S. Confirmation Order (the "POR");
>
> b. an order pursuant to section 18.6(2) of the CCAA recognizing and implementing in Canada the POR;
>
> c. an order, pursuant to section 191 of the *Canada Business Corporations Act* ("CBCA"), authorizing the amendment of LINC's articles in accordance with articles of reorganization substantially in the form attached as Schedule "A" hereto;
>
> d. an order extending the stay of proceedings.

2  The facts in this matter have been appropriately summarized in the factum of the applicants as follows:

> **PART II -- THE FACTS**
>
> *A. The Cross Border Reorganization*
>
> . . . . .
>
> 3. On June 28, 2001, the Applicants, together with Laidlaw USA, Inc., Laidlaw One, Inc., Laidlaw International Finance Corporation and Laidlaw Transportation, Inc. (collectively, the "Debtors") commenced proceedings under chapter 11 of the United States Bankruptcy Code in the U.S. Court, which proceedings are jointly administered under Case Nos. 01-14099 K through 01- 14104 K (the "U.S. Proceedings").
>
> 4. Pursuant to the order of this Honourable Court dated June 28, 2001 (the "June 28 Order"), this Honourable Court, among other things, ordered that the Applicants were entitled to relief under the CCAA and granted a stay of proceedings.
>
> 5. Pursuant to the June 28 Order, this Court also recognized the U.S. Proceedings as foreign proceedings for the purposes of the CCAA.
>
> 6. By Order dated August 10, 2001 (the "August 10 Order"), this Honourable Court, among other things, approved a cross-border insolvency protocol (which has also been approved by the U.S. Court) (the "Protocol") to assist in coordinating activities in these proceedings and the U.S. Proceedings.
>
> 7. The Protocol was developed to promote the following mutually desirable goals and objectives:
>
>> (a) harmonize, coordinate and minimize and avoid duplication of activities in the proceedings before the U.S. Court and this Court;

39 C.B.R. (4th) 239

(b) promote the orderly and efficient administration of the proceedings in the U.S. Court and this Court to, *inter alia*, reduce the costs associated therewith and avoid duplication of effort, all in order to allow the businesses operated by LINC's subsidiaries to be recoganized as a global enterprise; and

(c) promote international cooperation and respect for comity among the Courts.

8. For the past several years, United States-based operations have generated more than 90% of LINC's revenue on a consolidated basis.

***B. Single Claims Process***

9. Pursuant to the August 10 Order, this Honourable Court also recognized and approved, as the single claims process applicable to and binding on all creditors, wherever located, of the Debtors, a claims process approved by Order of the U.S. Court on August 7, 2001, (the "Claims Process").

10. Notice of the Claims Process was (i) published in the national editions of the *National Post* and *The Globe and Mail* and, in French, in *La Presse*, as well as in *The Wall Street Journal* and *The New York Times*, (ii) mailed to addresses of known creditors of the Debtors in the United States, Canada and elsewhere and (iii) posted on LINC's website.

11. Approximately 950 proofs of claim were received in response to the Claims Process. The Debtors have entered into settlement agreements involving many of the largest unliquidated claims.

***C. POR and Disclosure Statement***

*(a) Previous Versions of the POR and Disclosure Statement*

12. Previous versions of the POR and a Disclosure Statement for the POR (the "Disclosure Statement") have been filed with the U.S. Court and with this Honourable Court at the commencement of the respective proceedings in June, 2001 and on August 6, 2002 and September 20, 2002 (the "September Disclosure Statement").

*(b) Initial Solicitation Process*

13. On September 24, 2002, the U.S. Court entered an order (the "September 24 Order") which, among other things: (a) approved the September Disclosure Statement; (b) approved a form of confirmation hearing notice (the "September Confirmation Hearing Notice"); (c) scheduled the hearing for the confirmation of the POR by the U.S. Court (the "November Confirmation Hearing"); and (d) required the Debtors to publish a notice substantially in the form of the September confirmation Hearing Notice not less than 25 days before the November Confirmation Hearing.

14. On September 27, 2002, this Honourable Court granted an Order (the "September 27 Order") which, among other things: (a) declared that the U.S. Court has the jurisdiction to compromise claims against the Applicants; (b) recognized, and declared to be effective in Canada, the September 24 Order; (c) relieved the Applicants from any obligation to file a separate plan in Canada under the CCAA; (d) provided for the Applicants to publish a notice of the granting of such relief (the "Canadian Notice") in various newspapers in Canada; and (e) allowed interested persons to bring a motion to apply to this Court to vary or rescind the September 27 Order within 14 days after the publication of the Canadian Notice.

15. The Canadian Notice was published on Friday, October 4, 2002 in the *National Post, The Globe and Mail* and *La Presse*. No person has brought a motion to vary the September 27 Order.

Copr. © West 2004 No Claim to Orig. Govt. Works

39 C.B.R. (4th) 239

*(c) Amended POR and Disclosure Statement*

16. Following the granting of the September 24 Order and the September 27 Order, the Debtors and their advisors continued their efforts to resolve certain outstanding issues before the September Confirmation Hearing Notice could be published and before the September Disclosure Statement could be printed. Included in those efforts were discussions with the Pension Benefit Guaranty Corporation (the "PBGC") of the United States which contacted the Debtors after the Orders had been granted and advised that it had concerns about the impact of the POR on certain claims that the PBGC had or may assert.

17. As discussions continued, the Debtors and their advisors determined that the September Disclosure Statement would not be printed and the September Confirmation Hearing Notice would not be published until the material issues were resolved. As a result, the Confirmation Hearing did not take place as scheduled.

18. An agreement in principle had been reached between the Debtors and PBGC. The POR and Disclosure Statement have been amended to reflect the discussions and settlement reached among the Debtors and PBGC.

19. The POR provides for, among other things: (a) cancellation of approximately US$3.4 billion of indebtedness in exchange for cash or newly-issued common stock (the "New Common Stock") of Reorganized LIL ("New LINC"), which will, through a series of restructuring transactions, become the ultimate parent holding company of the remaining Reorganized Debtors and their non-debtor affiliates; (b) the cancellation of the Old Common Stock and Old Preferred Stock of LINC; (c) the assumption, assumption and assignment or rejection of certain Executory Contracts and Unexpired Leases to which one or more of the Debtors is a party; (d) settlements of certain disputes between or among the Debtors and various creditor groups; and (e) implementation of the Laidlaw Bondholders' Settlement and the Safety-Kleen Settlement, each of which has previously been approved by this Honourable Court and the U.S. Court.

*(d) Amended Solicitation Process*

20. As a result of the amendments to the POR and the Disclosure Statement, on January 23, 2003 amended versions of the POR and the Disclosure Statement were filed with the U.S. Court and the U.S. Court granted a further Order (the "January 23 Order") approving the form of Disclosure Statement, establishing procedures for solicitation and tabulation of votes, setting 5:00 p.m., Eastern Time, February 24, 2003, as the Voting Deadline for the submission of ballots, scheduling the Confirmation Hearing before the U.S. Court for February 27, 2003 at 10:00 a.m., Eastern Time, and approving the Form of Notice of the Voting Deadline and the Confirmation Hearing (the "February Confirmation Hearing Notice").

21. Other than the necessary changes to dates involved in the process, neither the January 23, Order nor the February confirmation Hearing Notice are substantially different from the September 24 Order and November Confirmation Hearing Notice which were recognized by this Honourable Court pursuant to the September 27 Order. No party was prejudiced by the subsequent delay in the voting process.

**D. *Approval of POR***

22. The February Confirmation Hearing Notice was published on or about January 31, 2003 in the following newspapers in Canada and the United States: (a) the *National Post*; (b) *The Globe and Mail*; (c) *La Presse*; (d) *The Wall Street Journal*; and (e) *The New York Times*.

23. The Voting Deadline set out in the January 23 Order has now passed. The voting in all relevant Classes has been overwhelmingly in favour of the POR.

24. Prior to the objection deadline established by the U.S. Court and after distribution of over 100,000 copies of the POR and Disclosure Statement to parties in interest, only 6 objections to confirmation of the

39 C.B.R. (4th) 239

> POR were filed. The Debtors and their advisors expect that these objections (to the extent not resolved or withdrawn) will be overruled at the Confirmation Hearing.

> 25. On February 27, 2003, the U.S. Court issued the U.S. Confirmation Order. The U.S. Court found, among other things, that the POR complied in all respects with the requirements of the United States Bankruptcy Code and related rules. In particular, the U.S. Court found that:
>
>> (a) the POR contained all provisions required by law;
>>
>> (b) the POR was proposed in good faith;
>>
>> (c) the POR was in the best interests of the creditors of the Debtors;
>>
>> (d) the POR was feasible; and
>>
>> (e) the POR satisfied the "cram-down" requirements of the United States Bankruptcy Code.
>
> 26. The POR, as approved by the U.S. Confirmation Order, expressly contemplates and requires that the Applicants will seek an order effecting and implementing in Canada certain elements of the Restructuring Transactions and the POR.

3   Allow me now to turn to the law as it applies to this particular fact situation. Section 18.6(2) of the CCAA provides the Court with authority of latitude to coordinate proceedings under the CCAA with any "foreign proceeding" (that term being defined in s.18.6(1) to mean "a judicial or administrative proceeding commenced outside Canada in respect of a debtor under a law relating to bankruptcy or insolvency and dealing with the collective interests of creditors generally").

> s.18.6(2) The Court may, in respect of a debtor, make such orders and grant such relief as it considers appropriate to facilitate, approve or implement arrangements that will result in a co-ordination of proceedings under this Act with any foreign proceeding.

The applicants are debtor companies entitled to relief pursuant to the CCAA and the U.S. Proceedings have been recognized by the June 28 Order as a "foreign proceeding" for the purposes of the CCAA.

4   The purpose of s. 18.6(2) is to give the Court broad and flexible jurisdiction to facilitate cross-border insolvency proceedings which involve concurrent filings in Canada under the CCAA and in a foreign jurisdiction under the insolvency laws of that latter jurisdiction. The discretion given to a Canadian judge thereby must be exercised judicially. In appropriate circumstances, this may include a Canadian Court making an order which recognizes and gives effect to insolvency proceedings in foreign Courts and orders thereby emanating from those foreign Courts. As I observed in *Babcock & Wilcox Canada Ltd., Re* (2000), 18 C.B.R. (4th) 157 (Ont. S.C.J. [Commercial List]) at pp 107-8, factors which reasonably ought to be considered under the "recognition of comity and cooperation between the courts of various jurisdictions are to be encouraged" and that an enterprise should be permitted to "reorganize as a global unit."

5   Given that in this case, there are the following facts:

> (a) the Protocol has been implemented by both this Court and the U.S. Court;
>
> (b) the U.S. Proceedings are foreign proceedings for the purposes of the CCAA;
>
> (c) the stakeholders of the Applicants (and the other Debtors) have been subject to a single claims process which treats them equally regardless of the jurisdiction in which they reside;
>
> (d) the global nature of the restructuring proposed by the POR;

Copr. © West 2004 No Claim to Orig. Govt. Works

39 C.B.R. (4th) 239

(e) ample notice has been given of the existence of these proceedings and the U.S. Proceedings;

(f) over 90% of revenues for the Debtors are produced by operations in the United States; and

(g) this Court has been apprised of developments relating to the U.S. Proceedings on a regular basis.

and further that in applying the guidelines set out in *Babcock & Wilcox Canada Ltd.* I granted the September 27 Order providing *inter alia*:

(a) ordering and declaring that the U.S. Court has the jurisdiction to determine, compromise or otherwise affect the interest of claimants against, including creditors and shareholders of, the Applicants; and

(b) relieving the Applicants from the obligation to file a Plan of Compromise in Canada under the CCAA unless and until the proposed POR was rejected or refused by the U.S. Court.

and further given that I have already determined that the U.S. Court is the appropriate forum for adjudicating, determining, compromising or otherwise affecting all claims against the applicants and given that I have relieved the applicants (in the particular circumstances of this case) of the obligation to file a CCAA plan, it seems to me that it is appropriate in the circumstances to recognize and give full force and effect in Canada, to the Confirmation Order and the POR pursuant to s.18.6(2). I note in that respect that the POR has now been approved by the creditors of the Debtors, including the creditors of the applicants and confirmed by the U.S. Court following a Confirmation Hearing. That approval by the creditors of the applicants was by an overwhelming vote of over 96% in number and over 99% in value of each of the classes of creditors, which creditors had the benefit of fulsome disclosure.

6  The POR expressly contemplates that the Canadian Court would be asked for a s.18.6(2) order recognizing and implementing in Canada the Confirmation Order and the POR. In my view in the circumstances of this case that would be a fair and reasonable result *vis-à-vis* all affected persons on either side of the U.S. -- Canadian border in providing an equitable solution. See *Loewen Group Inc., Re* (2001), 32 C.B.R. (4th) 54 (Ont. S.C.J. [Commercial List]) for a case of quite similar circumstances.

7  In addition the applicants sought an order pursuant to s.191 of the CBCA amending LINC's articles. Section 191 of the CBCA permits the court to order necessary amendments to the articles of a corporation without shareholder or dissent rights.

191(1) In this section, "reorganization" means a court order made under

(a) section 241;

(b) the *Bankruptcy and Insolvency Act* approving a proposal; or

(c) any other Act of Parliament that affects the rights among the corporation, its shareholders and creditors.

(2) If a corporation is subject to an order referred to in subsection (1), its articles may be amended by such order to effect any change that might lawfully be made by an amendment under section 173.

(3) If a court makes an order referred to in subsection (1), the court may also

(a) authorize the issue of debt obligations of the corporation, whether or not convertible into shares of any class or having attached any rights or options to acquire shares of any class, and fix the terms thereof; and

(b) appoint directors in place of or in addition to all or any of the directors then in office.

Copr. © West 2004 No Claim to Orig. Govt. Works

39 C.B.R. (4th) 239

> (4) After an order referred to in subsection (1) has been made, articles of reorganization in the form that the Director fixes shall be sent to the Director together with the documents required by section 19 and 113, if applicable.
>
> (5) On receipt of articles of reorganization, the Director shall issue a certificate of amendment in accordance with section 262.
>
> (6) A reorganization becomes effective on the date shown in the certificate of amendment and the articles of incorporation are amended accordingly.
>
> (7) A shareholder is not entitled to dissent under section 190 if an amendment to the articles of incorporation is effected under this section.

8   The CCAA is an "other Act of Parliament that affects the rights among the corporation, its shareholders and creditors". See s.20 of the CCAA; *Beatrice Foods Inc., Re* (October 21, 1996), Doc. 295-96 (Ont. Gen. Div.), Houlden J.A., unreported.

9   The amendment to the articles would effect a cancellation of all presently outstanding shares of LINC. This is appropriate in the circumstances since:

> (a) such shares do not have value and are not likely to have value in the foreseeable future;
>
> (b) subsection 191(2) of the CBCA, which permits the Court to amend articles to effect any change that might be made under Section 173 of the CBCA, grants substantive, and not simply procedural, powers to amend the articles of a CBCA corporation;
>
> (c) paragraph 173(o) of the CBCA provides that articles may be amended to "add, change or remove any other provision that is permitted by the [CBCA] to be set out in the articles"; and
>
> (d) Section 173 of the CBCA is supported by paragraph 176(1)(b) of the CBCA, which contemplates amendments to the articles of a corporation to effect the cancellation of all or part of the shares of a class of shares.

See *Beatrice Foods Inc., Re*; *Algoma Steel Inc., Re* (2001), 30 C.B.R. (4th) 1 (Ont. S.C.J. [Commercial List]), R. Dickerson, L. Getz and J. Howard, *Proposals for a New Business Corporations Law for Canada*, vol 1 (Ottawa: Information Canada, 1971) at p. 124.

10   The requested relief is granted. Order to issue as per my fiat.

11   I would wish to reiterate my comments at the end of today's hearing as to my appreciation to counsel on all sides throughout these CCAA proceedings and to Judge Kaplan of the U.S. Bankruptcy Court who shouldered so well the bulk of the burden of these coordinated U.S./Canadian proceedings.

*Application granted.*

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. Govt. Works