# Exhibit 10

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | |
| | ) | |

PROVOST UMPHREY, L.L.P.'S
SUPPLEMENT TO THE JOINT RESPONSE OF VARIOUS LAW FIRMS
REPRESENTING ASBESTOS PERSONAL INJURY CLAIMANTS IN OPPOSITION TO DEBTOR'S
MOTION TO COMPEL ASBESTOS PERSONAL INJURY CLAIMANTS TO RESPOND TO THE
W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE

Provost Umphrey, L.L.P. ("Provost Umphrey"), by and through its undersigned attorneys, hereby files the following as a supplement ("Supplement") to the Joint Response of Various Law Firms Representing Asbestos Personal Injury Claimants in Opposition to Debtor's Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Asbestos Personal Injury Questionnaire (the "Response" and the "Motion to Compel", respectively) and would respectfully show the Court as follows:

In addition to the matters raised in the Response, which is incorporated herein in its entirety, Provost Umphrey submits the attached Declaration of Colin Moore (the "Declaration") in support of the Response. As established in the Declaration, Provost Umphrey would respectfully show the Court the following:

1.      Provost Umphrey received approximately 1300 questionnaires. Before the firm could even start answering the questionnaires, it took two staff members working a full week to go through all of the questionnaires they received and try to match them to their clients.  Some of the questionnaires had the estate representative's name, some had the spouse's name and some had the client's name but not spelled correctly.  The Debtors did not include a social security number on any of the questionnaires.  Provost Umphrey also found that some of the questionnaires did not match anyone in its database.  Others matched more than one client with the same or similar names.  Still others were found to be the responsibility a different law firm, and Provost Umphrey forwarded them to that firm.  Provost Umphrey completed and returned 526 questionnaires to the Debtors.

2.      It took members of the Provost Umphrey staff approximately (i) 32 hours to formulate a standard response to correspond to the questionnaire (ii) 20 hours to produce the one-page defendant payment report, and (iii) 20 hours to print the responses for each claimant.  It then took them three days to locate, print and copy medical records, work history, annotated Social Security records and answers to interrogatories to attach to the questionnaire.  It then took two staff members three more days to assemble all materials to create a complete packet for each client.

3. It then took paralegals working 8 hours per day for two weeks (approximately 160 hours) to review the materials to make sure all questionnaires and packets were complete and to supplement missing information when necessary.

4. After completion of the questionnaires, it took two staff members a day to box the questionnaires for shipment, weigh the boxes, prepare and print shipping labels, and log them into the system as being sent to the Debtors.

5. Provost Umphrey responded to some of the questions by providing attachments. If not allowed to do so, and if Provost Umphrey were required to answer the questionnaire other than how it did, the huge burden already imposed on the firm would have increased by many multiples. Generally the attachments contain information that could not fit in the small space provided on the questionnaire, or otherwise contained information that does not lend itself to narrative response. Even if there were enough room on the questionnaire, it would be a totally unnecessary burden on Provost Umphrey to be required to repeat and re-write verbatim the information from the attachment into the questionnaire.

6. In the normal course of litigation, Provost Umphrey would not usually be required to respond to such detailed discovery for so many clients all at once. To be required to do so here is an unreasonable burden which Provost Umphrey undertook to the best of its ability.

WHEREFORE, for the foregoing reasons set forth in this Supplement, as well as the reasons set forth in the Response, Provost Umphrey prays that the Motion to

Compel be denied, and for such other and further relief requested in the Response and to which Provost Umphrey is entitled.

Dated: August 14, 2006
        Sander L. Esserman
        Van J. Hooker
        David A. Klingler
        David J. Parsons
        **STUTZMAN, BROMBERG,**
        **ESSERMAN & PLIFKA,**
        **A Professional Corporation**
        2323 Bryan Street, Suite 2200
        Dallas, Texas 75201
        Telephone: (214) 969-4900
        Facsimile: (214) 969-4999

        **COUNSEL FOR**
        **PROVOST UMPHREY, L.L.P.**

        /s/ Daniel K. Hogan
        Daniel K. Hogan (ID no. 2814)
        **THE HOGAN FIRM**
        1311 Delaware Avenue
        Wilmington, Delaware 19806
        Telephone: (302) 656-7540
        Facsimile: (302) 656-7599
        E-mail: dan@dkhogan.com

        **LOCAL COUNSEL FOR**
        **PROVOST UMPHREY, L.L.P.**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) ) ) | Chapter 11 |
| W.R. GRACE & CO., *et al.*, | ) ) ) | Case No. 01-01139 (JKF) Jointly Administered |
| Debtors. | ) ) ) ) | |

### DECLARATION OF COLIN MOORE

1. I declare under penalty of perjury that the following is true and correct. I have personal knowledge of the matters stated herein.

2. My name is Colin Moore. I am an attorney practicing law in the state of Texas with the firm of Provost Umphrey LLP. Provost Umphrey represents certain individuals with claims against W.R. Grace, et al. ("Debtors") for personal injuries caused by exposure to asbestos-containing products. I am familiar with the time and expense required to respond to discovery in asbestos litigation cases.

3. My firm received approximately 1300 questionnaires. Before we could even start answering the questionnaires, it took two staff members working a full week to go through all of the questionnaires we received and try to match them to our clients. Some of the questionnaires had the estate representative's name, some had the spouse's name and some had the client's name but not spelled correctly. The Debtors did not include a social security number on any of the questionnaires. We also found that some of the questionnaires did not match anyone in our database. Others matched more than one client with the same or similar names. Still others were found to be the responsibility a different law firm, and we forwarded them to that firm. We completed and returned 526 questionnaires to the Debtors.

4. It took members of our staff approximately (i) 32 hours to formulate a standard response to correspond to the questionnaire (ii) 20 hours to produce the one-page defendant payment report, and (iii) 20 hours to print the responses for each claimant. It then took us three days to locate, print and copy medical records, work history, annotated Social Security records and answers to interrogatories to attach to the questionnaire. It then took two staff members three more days to assemble all materials to create a complete packet for each client.

5. It then took paralegals working 8 hours per day for two weeks (approximately 160 hours) to review the materials to make sure all questionnaires and packets were complete and to supplement missing information when necessary.

6. After completion of the questionnaires, it took two staff members a day to box the questionnaires for shipment, weigh the boxes, prepare and print shipping labels, and log them into the system as being sent to the Debtors.

C:\DOCUME~1\CMoore\LOCALS~1\Temp\PROVOS~1.DOC

7. We responded to some of the questions by providing attachments. If we were not allowed to do so, and if we were required to answer the questionnaire other than how we did, the huge burden already imposed on my firm would have increased by many multiples. Generally the attachments contain information that could not fit in the small space provided on the questionnaire, or otherwise contained information that does not lend itself to narrative response. Even if there were enough room on the questionnaire, it would be a totally unnecessary burden on us to be required to repeat and re-write verbatim the information from the attachment into the questionnaire.

8. In the normal course of litigation, we would not usually be required to respond to such detailed discovery for so many clients all at once. To be required to do so here is an unreasonable burden which we undertook to the best of our ability.

Executed at Beaumont (city), Texas, on August 9, 2006.

_____
Colin Moore