# Exhibit 14

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | |
| | ) | |

SIMMONSCOOPER, L.L.C.'S
SUPPLEMENT TO THE JOINT RESPONSE OF VARIOUS LAW FIRMS
REPRESENTING ASBESTOS PERSONAL INJURY CLAIMANTS IN OPPOSITION TO DEBTOR'S
MOTION TO COMPEL ASBESTOS PERSONAL INJURY CLAIMANTS TO RESPOND TO THE
W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE

SimmonsCooper, L.L.C. ("SimmonsCooper"), by and through its undersigned attorneys, hereby files the following as a supplement ("Supplement") to the Joint Response of Various Law Firms Representing Asbestos Personal Injury Claimants in Opposition to Debtor's Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Asbestos Personal Injury Questionnaire (the "Response" and the "Motion to Compel", respectively) and would respectfully show the Court as follows:

In addition to the matters raised in the Response, which is incorporated herein in its entirety, SimmonsCooper submits the attached Declaration of Robert Phillips (the "Declaration") in support of the Response. As established in the Declaration, SimmonsCooper would respectfully show the Court the following:

1. SimmonsCooper received approximately 432 questionnaires, of which approximately 50 were duplicates. Of the 382 non-duplicates, the firm responded to 264 and did not respond to 118, the latter group representing clients who as of April 2001 did not have pending litigation against Debtors (such claims having been dismissed or settled and paid).

2. Due to the form of the questionnaire and the nature of the questions, SimmonsCooper was required to expend an inordinate amount of time responding to the questionnaires. It took approximately (i) 66 hours to complete the general portions of the questionnaires, (ii) 132 hours to review medical records and complete the medical portion of the questionnaires, (iii) 192 hours to retrieve and copy various attachments to the responses (interrogatories, depositions, work histories, etc.), and (iv) 200 hours to perform general copying, collating, sending copies to clients and processing the returned signed questionnaires. The total estimated time it took SimmonsCooper to complete the questionnaires in the manner it did is 590 man-hours.

3. SimmonsCooper responded to some of the questions by providing attachments. If not allowed to do so, and if the firm was required to answer the questionnaire other than how it did, the huge burden already imposed on the law firm would have increased by many multiples. Due to the way the questions are organized and formulated, Mr. Phillips estimates that it would take him and his staff a minimum of 6-8 hours more per questionnaire, or approximately 1500-2100 additional man-hours. Generally the attachments contain information that could

not fit in the small space provided on the questionnaire, or otherwise contained information that does not lend itself to narrative response. Even if there were enough room on the questionnaire, it would be a totally unnecessary burden on the firm to be required to repeat and re-write verbatim the information from the attachment into the questionnaire.

4. In addition, this work could only be performed by Mr. Phillips and about three (3) paralegals he employs, as the firm's clerical staff does not have the legal experience or training to review the depositions, interrogatories, settlements, etc., to compile exposure charts and the like. (Much of the work performed so far was able to be performed by clerical staff supervised by a senior paralegal.) As a result, Mr. Phillips and his paralegals would have to devote in excess of 12 weeks to the project without working on any other files or on any other matters or even taking vacation or sick leave. They would essentially have to work full-time from September through Christmas on these questionnaires and nothing else, neglecting their other clients, almost all of whom are terminally ill. (SimmonsCooper has since 2002 exclusively represented clients suffering from cancer or mesothelioma.) The other lawyers and paralegal staff of the firm likewise are fully busy with current clients, as they have trials all this fall and next spring for their clients in several states. The firm cannot effectively shut down simply because Debtors refuse to look at the attachments to the questionnaires.

5.  These questionnaires were completed despite the fact that in many instances Grace has already been provided the answers to most of the questions and documents in discovery responses served on Grace before the bankruptcy was filed (or available to lawyers for Grace who attended the depositions of such clients prior to the bankruptcy filing).

6.  Also, it should be noted that the questions that Debtors have asked regarding evidence of other asbestos exposure, which are some of the most burdensome questions in the questionnaire, are improper under Illinois law, which governs almost all of SimmonsCooper's clients' claims. Evidence of other asbestos exposure is per se irrelevant and inadmissible in Illinois due to the joint and several liability rules in that jurisdiction, and the interpretation of same by the appellate courts in asbestos cases.

7.  In the normal course of litigation, SimmonsCooper would never be required to respond to such detailed discovery for so many clients all at once. To be required to do so here is an unreasonable burden which we undertook to the best of our ability.

WHEREFORE, for the foregoing reasons set forth in this Supplement, as well as the reasons set forth in the Response, SimmonsCooper prays that the Motion to Compel be denied, and for such other and further relief requested in the Response and to which SimmonsCooper is entitled.

Dated: August 14, 2006              Sander L. Esserman
                                    Van J. Hooker
                                    David A. Klingler
                                    David J. Parsons
                                    **STUTZMAN, BROMBERG,**
                                    **ESSERMAN & PLIFKA,**
                                    **A Professional Corporation**
                                    2323 Bryan Street, Suite 2200
                                    Dallas, Texas 75201
                                    Telephone:  (214) 969-4900
                                    Facsimile:   (214) 969-4999

                                    **COUNSEL FOR SIMMONSCOOPER, L.L.C.**

                                    /s/ Daniel K. Hogan
                                    Daniel K. Hogan (ID no. 2814)
                                    **THE HOGAN FIRM**
                                    1311 Delaware Avenue
                                    Wilmington, Delaware 19806
                                    Telephone:  (302) 656-7540
                                    Facsimile:   (302) 656-7599
                                    E-mail:  dan@dkhogan.com

                                    **LOCAL COUNSEL FOR**
                                    **SIMMONSCOOPER, L.L.C.**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | |
| | ) | |

### DECLARATION OF ROBERT PHILLIPS

1. I declare under penalty of perjury that the following is true and correct. I have personal knowledge of the matters stated herein.

2. My name is Robert Phillips. I am an attorney practicing law in the state of Illinois with the firm of SimmonsCooper, LLC. SimmonsCooper represents certain individuals with claims against W.R. Grace, et al. ("Debtors" or "Grace") for personal injuries caused by exposure to asbestos-containing products. I am familiar with the time and expense required to respond to discovery in asbestos litigation cases.

3. My firm received approximately 432 questionnaires, of which approximately 50 were duplicates. Of the 382 non-duplicates, we responded to 264 and did not respond to 118, the latter group representing clients who as of April 2001 did not have pending litigation against Debtors (such claims having been dismissed or settled and paid).

4. Due to the form of the questionnaire and the nature of the questions, we were required to expend an inordinate amount of time responding to the questionnaires. It took approximately (i) 66 hours to complete the general portions of the questionnaires, (ii) 132 hours to review medical records and complete the medical portion of the questionnaires, (iii) 192 hours to retrieve and copy various attachments to the responses (interrogatories, depositions, work histories, etc.), and (iv) 200 hours to perform general copying, collating, sending copies to clients and processing the returned signed questionnaires. The total estimated time it took us to complete the questionnaires in the manner we did is 590 man-hours.

5. We responded to some of the questions by providing attachments. If we were not allowed to do so, and if we were required to answer the questionnaire other than how we did, the huge burden already imposed on my firm would have increased by many multiples. Due to the way the questions are organized and formulated, I estimate that it would take us a minimum of 6-8 hours more per questionnaire, or approximately 1500-2100 additional man-hours. Generally the attachments contain information that could not fit in the small space provided on the questionnaire, or otherwise contained information that does not lend itself to narrative response. Even if there were enough room on the questionnaire, it would be a totally unnecessary burden on us to be required to repeat and re-write verbatim the information from the attachment into the questionnaire.

6. In addition, this work could only be performed by myself and about three (3) paralegals I employ, as the clerical staff does not have the legal experience or training to review the depositions, interrogatories, settlements, etc., to compile exposure charts and the like. (Much of the work performed so far was able to be performed by clerical staff supervised by a senior paralegal.) As a result, I and my paralegals would have to devote in excess of 12 weeks to the project without working on any other files or on any other matters or even taking vacation or sick leave. We would essentially have to work full-time from September through Christmas on these questionnaires and nothing else, neglecting our other clients, almost all of whom are terminally ill (SimmonsCooper LLC has since 2002 exclusively represented clients suffering from cancer or mesothelioma). The other lawyers and paralegal staff of the firm likewise are fully busy with current clients, as we have trials all this fall and next spring for our clients in several states. We cannot effectively shut down our firm simply because Debtors refuse to look at the attachments to the questionnaires.

7. These questionnaires were completed despite the fact that in many instances Grace has already been provided the answers to most of the questions and documents in discovery responses served on Grace before the bankruptcy was filed (or available to lawyers for Grace who attended the depositions of such clients prior to the bankruptcy filing).

8. Also, it should be noted that the questions that Debtors have asked regarding evidence of other asbestos exposure, which are some of the most burdensome questions in the questionnaire, are improper under Illinois law, which governs almost all of our clients' claims. Evidence of other asbestos exposure is per se irrelevant and inadmissible in Illinois due to the joint and several liability rules in this jurisdiction,

      and the interpretation of same by the appellate courts in asbestos cases.

9.    In the normal course of litigation, we would never be required to respond to such detailed discovery for so many clients all at once. To be required to do so here is an unreasonable burden which we undertook to the best of our ability.

Executed at East Alton, Illinois, on August 9, 2006.

_____
Robert Phillips

::ODMA\PCDOCS\DMLIBRARY1\225030\1