# Exhibit 15

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) ) ) | Chapter 11 |
| W.R. GRACE & CO., *et al.*, | ) ) ) | Case No. 01-01139 (JKF) Jointly Administered |
| Debtors. | ) ) ) | |

**WEITZ & LUXENBERG, P.C.'S
SUPPLEMENT TO THE JOINT RESPONSE OF VARIOUS LAW FIRMS
REPRESENTING ASBESTOS PERSONAL INJURY CLAIMANTS IN OPPOSITION TO DEBTOR'S
MOTION TO COMPEL ASBESTOS PERSONAL INJURY CLAIMANTS TO RESPOND TO THE
W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE**

Weitz & Luxenberg, P.C. ("Weitz & Luxenberg"), by and through its undersigned attorneys, hereby files the following as a supplement ("Supplement") to the Joint Response of Various Law Firms Representing Asbestos Personal Injury Claimants in Opposition to Debtor's Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Asbestos Personal Injury Questionnaire (the "Response" and the "Motion to Compel", respectively) and would respectfully show the Court as follows:

In addition to the matters raised in the Response, which is incorporated herein in its entirety, Weitz & Luxenberg submits the attached Declaration of Karen Sylander (the "Declaration") in support of the Response. As established in the Declaration, Weitz & Luxenberg would respectfully show the Court the following:

1. Weitz & Luxenberg submitted 918 completed questionnaires to Grace. The efforts expended with regard to such undertaking can be summarized as follows.

2. It took several days simply to go through all of the questionnaires the firm received and try to match them to clients. Some of the questionnaires had the estate representative's name, some had the spouse's name and some had the client's name but not spelled correctly.

3. It took 35 hours just to replicate the WR Grace questionnaire in Word format instead of a PDF file that was provided to Weitz & Luxenberg by the Debtors. This included putting in all the bookmarks that were necessary for Weitz & Luxenberg to do programming. The programming itself took approximately 95 hours to complete. It took another two days to assemble and mail the questionnaires to the clients for their review and signature. It took the firm three days using two printers to print the completed questionnaires.

4. Weitz & Luxenberg assigned sixteen (16) paralegals to work on this project. Each paralegal spent approximately 2.5 hours per case to do the following: (i) review the questionnaire with our client or the estate representative and answer any questions; (ii) pull the file and copy all required documents including but not limited to medical records, expert reports, pathology reports, PFT tests, ILOs, X-ray narratives, depositions, death certificates (if applicable), interrogatories, co-worker depositions (if applicable), social security records, military records, union records,

etc. (iii) follow up with any client or estate representative who did not return questionnaires.

5. The total man hours spent completing the questionnaires by the 16 paralegals was approximately 2,295 hours. In paralegal time alone, this project cost Weitz & Luxenberg approximately $57,375.00 (assuming an average cost of paralegal time at $25.00 per hour).

6. In addition, it took two clerks two full days to alphabetize all the questionnaires, box the questionnaires for shipment, weigh the boxes, prepare and print shipping labels, and log them into the system as being sent to the Debtors.

7. Weitz & Luxenberg responded to some of the questions by providing attachments. If not allowed to do so, and required to answer the questionnaire other than how Weitz & Luxenberg did, the huge burden already imposed on Weitz & Luxenberg would have increased by many multiples. Generally the attachments contain information that could not fit in the small space provided on the questionnaire, or otherwise contained information that does not lend itself to narrative response. Even if there were enough room on the questionnaire, it would be a totally unnecessary burden on the law firm and its clients to be required to repeat and re-write verbatim the information from the attachment into the questionnaire.

8. In the normal course of litigation, Weitz & Luxenberg would not usually be required to respond to such detailed discovery for so many clients all at

once. To be required to do so here is an unreasonable burden which Weitz & Luxenberg undertook to the best of our ability.

WHEREFORE, for the foregoing reasons set forth in this Supplement, as well as the reasons set forth in the Response, Weitz & Luxenberg prays that the Motion to Compel be denied, and for such other and further relief requested in the Response and to which Weitz & Luxenberg is entitled.

Dated: August 14, 2006

Sander L. Esserman
Van J. Hooker
David A. Klingler
David J. Parsons
**STUTZMAN, BROMBERG, ESSERMAN & PLIFKA,**
**A Professional Corporation**
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 969-4900
Facsimile: (214) 969-4999

**COUNSEL FOR**
**WEITZ & LUXENBERG, P.C.**

/s/ Daniel K. Hogan
Daniel K. Hogan (ID no. 2814)
**THE HOGAN FIRM**
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone: (302) 656-7540
Facsimile: (302) 656-7599
E-mail: dan@dkhogan.com

**LOCAL COUNSEL FOR**
**WEITZ & LUXENBERG, P.C.**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-01139 (JKF) |
| Debtors. | ) | Jointly Administered |

### DECLARATION OF KAREN SYLANDER

1. I declare under penalty of perjury that the following is true and correct. I have personal knowledge of the matters stated herein.
2. My name is Karen Sylander. I am a legal assistant employed by the law firm of Weitz & Luxenberg, P.C. Weitz & Luxenberg represents certain individuals with claims against W.R. Grace, et al. ("Debtors") for personal injuries caused by exposure to asbestos-containing products. I am familiar with the time and expense required to respond to discovery in asbestos litigation cases.
3. Weitz & Luxenberg submitted 918 completed questionnaires to Grace. The efforts expended with regard to such undertaking can be summarized as follows.
4. It took several days simply to go through all of the questionnaires we received and try to match them to clients. Some of the questionnaires had the estate representative's name, some had the spouse's name and some had the client's name but not spelled correctly.
5. It took 35 hours just to replicate the WR Grace questionnaire in Word format instead of a PDF file that was provided to us by the Debtors. This included putting in all the bookmarks that were necessary for us to do programming. The programming itself took approximately 95 hours to complete. It took another two days to assemble and mail the questionnaires to the clients for their review and signature. It took us three days using two printers to print the completed questionnaires.
6. We assigned sixteen (16) paralegals to work on this project. Each paralegal spent approximately 2.5 hours per case to do the following: (i) review the questionnaire with our client or the estate representative and answer any questions; (ii) pull the file and copy all required documents including but not limited to medical records, expert reports, pathology reports, PFT tests, ILOs, X-ray narratives, depositions, death certificates (if applicable), interrogatories, co-worker depositions (if applicable), social security records, military records, union records, etc. (iii) follow up with any client or estate representative who did not return questionnaires.

7. The total man hours spent completing the questionnaires by the 16 paralegals was approximately 2,295 hours. In paralegal time alone, this project cost our firm approximately $57,375.00 (assuming an average cost of paralegal time at $25.00 per hour).
8. In addition, it took two clerks two full days to alphabetize all the questionnaires, box the questionnaires for shipment, weigh the boxes, prepare and print shipping labels, and log them into the system as being sent to the defendant.
9. We responded to some of the questions by providing attachments. If we were not allowed to do so, and if we were required to answer the questionnaire other than how we did, the huge burden already imposed on Weitz & Luxenberg would have increased by many multiples. Generally the attachments contain information that could not fit in the small space provided on the questionnaire, or otherwise contained information that does not lend itself to narrative response. Even if there were enough room on the questionnaire, it would be a totally unnecessary burden on us to be required to repeat and re-write verbatim the information from the attachment into the questionnaire.
10. In the normal course of litigation, we would not usually be required to respond to such detailed discovery for so many clients all at once. To be required to do so here is an unreasonable burden which we undertook to the best of our ability.

Executed at   New York   (city),   New York   (state), on August  10 , 2006.

_____
Karen Sylander