# Exhibit 16

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: | ) | Chapter 11 |
|  | ) |  |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-01139 (JKF) |
|  | ) | Jointly Administered |
|  | ) |  |
| Debtors. | ) |  |
|  | ) |  |

**WILENTZ, GOLDMAN & SPITZER, P.A.'S
SUPPLEMENT TO THE JOINT RESPONSE OF VARIOUS LAW FIRMS
REPRESENTING ASBESTOS PERSONAL INJURY CLAIMANTS IN OPPOSITION TO DEBTOR'S
MOTION TO COMPEL ASBESTOS PERSONAL INJURY CLAIMANTS TO RESPOND TO THE
<u>W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE</u>**

Wilentz, Goldman & Spitzer, P.A. ("WG&S"), by and through its undersigned attorneys, hereby files the following as a supplement ("Supplement") to the Joint Response of Various Law Firms Representing Asbestos Personal Injury Claimants in Opposition to Debtor's Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Asbestos Personal Injury Questionnaire (the "Response" and the "Motion to Compel", respectively) and would respectfully show the Court as follows:

In addition to the matters raised in the Response, which is incorporated herein in its entirety, WG&S submits the attached Declaration of Lynne M. Kizes (the "Declaration") in support of the Response. As established in the Declaration, WG&S would respectfully show the Court the following:

1. WG&S responded to 525 questionnaires. A small subset of the questionnaires was submitted without the clients' signatures due to not being timely received back to WG&S. Annexed to Ms. Kizes' declaration is a spreadsheet prepared summarizing the different categories of time expended to respond. As set forth therein, as of July 12, 2006, WG&S devoted approximately 320 hours of attorney time at an average rate of $250 per hour for a time value of $80,000, and 1,480 hours of paralegal/clerk time at an average rate of $80.00 per hour for a value of $118,400.00. This totals $198,400.00 of time-value already invested by WG&S in the Debtor's discovery. In addition to time, the regularly kept records of WG&S reflect that the firm incurred copying and shipping costs totaling approximately $4,941.88. This total is incomplete however, for example Ms. Kizes noted the metered postage to send the 525 questionnaires to WG&S's clients for review and signature was not charged to the account as it should have been.

2. The 'cost' to 'complete' the Grace Questionnaires as the Debtor now seeks in its motion is incalculable. To begin with, the Grace Questionnaire seeks 'certified' responses to questions for which neither WG&S nor its clients are qualified. The clients are lay people; WG&S's staff are legal professionals - neither can 'attest' to the validity of or testify as to the bona fides of a particular doctor's report or diagnostic report. The questionnaires call for interpretation of data by the unilateral standards asserted by the Debtor, whereas the tort system normally leaves such determinations to the adversary process and the trier of fact because the validity and significance of the medical and exposure evidence is subject to

differing opinions and argument. Secondly, the Debtor now seems to demand that all 'answers' be transmitted physically onto the Grace Questionnaire form. Since many of the relevant asbestos cases filed on behalf of WG&S's clients contain 50 or more defendants who were either settled or dismissed from the case, the Debtor cannot reasonably expect that data to be legibly inserted in the 4-1/2 inch, single-line space provided. Even assuming those and similar obstacles were overcome or omitted from the computation, WG&S's Toxic and Mass Tort practice group could simply be put out of business if forced to expend even more resources on this issue. WG&S would not be able to meet the needs of any of its other clients or even these clients' claims against other defendants. Attempting to 'comply' as the Debtors request could take 100 times as many person-hours as did completion of the Grace Questionnaires in reasonable compliance with all applicable federal discovery rules prior to July 12, 2006.

  3. What the Debtor seeks is 525 trials' worth of evidence presented to it in a format that does not presently exist and would need to be created for the Debtor alone. It simply cannot be amassed and presented as suggested, let alone in the time suggested. There is no applicable non-bankruptcy court in New York and New Jersey that would even consider such a proposition. No asbestos defendant has ever asked WGS for this much detail and it is not called for by any of the court approved discovery, Case Management or Standing Orders in the New York and New Jersey courts where the underlying litigation was filed.

4.      WG&S's Toxic and Mass Tort practice group was severely taxed by the Grace Questionnaire completion exercise.  The issues and claims of clients both with and without claims against Grace had to be deferred to do the best WG&S could to respond to the Debtor's discovery.  WG&S's clients were confused about these unusual requirements and how after providing so much information there was not a settlement offer on the other end.  Several experienced staff actually quit due to the burden and frustration of this task.

5.      In the normal course of litigation, WG&S would not usually be required to respond to such detailed discovery for so many clients all at once.  To be required to do so here is an unreasonable burden which WG&S undertook to the best of its ability.

WHEREFORE, for the foregoing reasons set forth in this Supplement, as well as the reasons set forth in the Response, WG&S prays that the Motion to Compel be denied, and for such other and further relief requested in the Response and to which WG&S is entitled.

Dated: August 14, 2006               Sander L. Esserman
                                     Van J. Hooker
                                     David A. Klingler
                                     David J. Parsons
                                     **STUTZMAN, BROMBERG,**
                                     **ESSERMAN & PLIFKA,**
                                     **A Professional Corporation**
                                     2323 Bryan Street, Suite 2200
                                     Dallas, Texas 75201
                                     Telephone:  (214) 969-4900
                                     Facsimile:   (214) 969-4999

                                     **COUNSEL FOR**
                                     **WILENTZ, GOLDMAN & SPITZER, P.A.**

                                     /s/ Daniel K. Hogan
                                     Daniel K. Hogan (ID no. 2814)
                                     **THE HOGAN FIRM**
                                     1311 Delaware Avenue
                                     Wilmington, Delaware 19806
                                     Telephone:  (302) 656-7540
                                     Facsimile:   (302) 656-7599
                                     E-mail:  dan@dkhogan.com

                                     **LOCAL COUNSEL FOR**
                                     **WILENTZ, GOLDMAN & SPITZER, P.A.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ) | Chapter 11 |
| ) | |
| W.R. GRACE & CO., *et al.*, ) | Case No. 01-01139 (JKF) |
| ) | Jointly Administered |
| ) | |
| Debtors. ) | |
| ) | |

### DECLARATION OF LYNNE M. KIZIS

1. I declare under penalty of perjury that the following is true and correct. I have personal knowledge of the matters stated herein.

2. My name is Lynne M. Kizis. I am an attorney practicing law in New Jersey and I am a shareholder of the law firm of Wilentz, Goldman & Spitzer, P.A. ("WG&S"). WG&S represents certain individuals with claims pending against W.R. Grace, et al. ("Debtor") for asbestos-related personal injury and wrongful death. I have handled asbestos litigation since 1989, I co-manage the Toxic and Mass Tort Team at WG&S, and I supervised the 20 staff members and 10 attorneys who expended time and effort to respond to the Debtor's discovery questionnaires. I am fully familiar with the time and expense required to respond to discovery in asbestos litigation cases.

3. My firm responded to 525 questionnaires. A small subset of these were submitted without our clients' signatures due to not being timely received back to us. Annexed hereto and incorporated herein is a spreadsheet I prepared summarizing the different categories of time expended to respond. As set forth therein, as of July 12, 2006 we devoted approximately 320 hours of attorney time at an average rate of $250 per hour for a time value of $80,000, and 1,480 hours of paralegal/clerk time at an average rate of $80.00 per hour for a value of $118,400.00. This totals $198,400.00 of time-value already invested by us in the Debtor's discovery. In addition to time, our regularly kept records reflect that we incurred copying and shipping costs totaling approximately $4,941.88. This total is incomplete however, for example I noted the metered postage to send the 525 questionnaires to our clients for review and signature was not charged to this account as it should have been.

#2785808 (113082.016)

4.  The 'cost' to 'complete' the Grace Questionnaires as the Debtor now seeks in its motion is incalculable. To begin with, the Grace Questionnaire seeks 'certified' responses to questions for which neither we nor our clients are qualified. Our clients are lay people; we are legal professionals - neither can 'attest' to the validity of or testify as to the bona fides of a particular doctor's report or diagnostic report. The questionnaires call for interpretation of data by the unilateral standards asserted by the Debtor, whereas the tort system normally leaves such determinations to the adversary process and the trier of fact because the validity and significance of the medical and exposure evidence is subject to differing opinions and argument. Secondly, the Debtor now seems to demand that all 'answers' be transmitted physically onto the Grace Questionnaire form. Since many of the relevant asbestos cases filed on behalf of our clients contain 50 or more defendants who were either settled or dismissed from the case, how does the Debtor expect that data to be legibly inserted in the 4-1/2 inch, single-line space provided. Even assuming those and similar obstacles were overcome or omitted from the computation, WG&S's Toxic and Mass Tort practice group could simply be put out of business if forced to expend even more resources on this issue. We would not be able to meet the needs of any of our other clients or even these clients' claims against other defendants. Attempting to 'comply' as the Debtors request could take 100 times as many person-hours as did completion of the Grace Questionnaires in reasonable compliance with all applicable federal discovery rules prior to July 12, 2006.

5.  What the Debtor seeks is 525 trials' worth of evidence presented to it in a format that does not presently exist and would need to be created for the Debtor alone. It simply cannot be amassed and presented as suggested, let alone in the time suggested. There is no applicable non-bankruptcy court in NY and NJ that would even consider such a proposition. No asbestos defendant has ever asked WGS for this much detail and it is not called for by any of the court approved discovery, Case Management or Standing Orders in the NY and NJ courts where the underlying litigation was filed.

6.  WG&S's Toxic and Mass Tort practice group was severely taxed by the Grace Questionnaire completion exercise. The issues and claims of clients both with and without claims against Grace had to be deferred to do the best we could to respond to the Debtor's discovery. Our clients were confused about these unusual requirements and how after providing so much information there was not a settlement offer on the other end. Several experienced staff actually quit due to the burden and frustration of this task.

7.  In the normal course of litigation, we would not usually be required to respond to such detailed discovery for so many clients all at once. To

#2785808 (113082.016)

be required to do so here is an unreasonable burden which we undertook to the best of our ability.

Executed at __Woodbridge__(city), __NJ__ (state), on August __10__, 2006.

_____
Lynne M. Kizis

#2785808 (113082.016)

# WGS ATTORNEY AND STAFF TIME EXPENDED ON WR GRACE DISCOVERY QUESTIONNAIRES AS OF JULY 12, 2006

| Description | Atty Time | Paralegal / Clerk Time |
|---|---|---|
| Evaluation of WGS records as to which clients had a pre-petition open claim against WR Grace as compared to pre petition settled or dismissed claims | 10 | 50 |
| Create file for each client answering the questionnaire. Locate, extract and copy materials and information from hard file for data not available electronically | | 405 |
| Initial preparation of responses to questionnaires, biographical, work history and exposure data from available electronic data and data culled from hard files. | | 540 |
| Attorney review of biographical, work history and exposure data for completeness and accuracy; prepare responses to medical related questions | 270 | |
| Preparation of spreadsheets of defendant, settlement and bankruptcy claim data where there was not sufficient room to respond on the questionnaire form | | 180 |
| Copying and mailing draft questionnaires to clients for their review and signature; manual process due to questionnaire being a bound document | | 155 |
| Fielding client telephone calls, questions, revisions to questionnaire based on client review, follow up calls to clients for outstanding questionnaires | 10 | 30 |
| Receipt and inspection of signed questionnaires back from clients, check and assemble enclosures, verify completeness of questionnaire, attorney review and signature of questionnaires | 20 | 80 |
| Record keeping of progress of completing project, support and guidance of staff working on the project | 10 | 40 |
| | | |
| **Subtotals** | **320** | **1,480** |
| | | |
| Average Billing Rate for Category of Timekeeper | $250 | $80 |
| | | |
| **Approximate Value of Time Expended:** | $ 80,000 | $ 118,400 |

#2786409