**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------

In Re:                                                    )        In Proceedings for a Reorganization under
                                                          )        Chapter 11
                                                          )
W.R. Grace & Co., *et al.,*                               )
                                                          )        Case No. 01-01139-JKF
                    Debtors.                              )
                                                          )        Hearing: September 11, 2006 at 2:00 p.m.
                                                          )
---------------------------------------------------------   )

**RESPONSE OF GRACE CERTAIN CANCER CLAIMANTS
IN OPPOSITION TO THE W.R. GRACE MOTION TO COMPEL
ASBESTOS PERSONAL INJURY CLAIMANTS TO RESPOND
TO THE W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE**

The Grace Certain Cancer Claimants ("GCCC") hereby respond to the W.R. Grace

Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Asbestos

Personal Injury Questionnaire ("Motion to Compel").

## I.      <u>INTRODUCTION</u>

W.R. Grace impermissibly seeks entry of a global Order compelling rigid and needlessly

burdensome discovery from "approximately 1,000 law firms" (Motion to Compel, p. 19)

representing "approximately 129,000 persons holding pre-petition litigation asbestos personal

injury claims." (Motion to Compel, p. 6, Fn. 1). In requesting entry of such an extraordinary

Order, W.R. Grace relies on generalized allegations of discovery improprieties by a selected few

of the many law firms involved.

As explained below, the Questionnaires submitted on behalf of the GCCC represented

good faith discovery responses that provided W.R. Grace with all of the essential information

reasonably necessary for W.R. Grace's stated objectives of conducting "streamlined discovery

consistent with the estimation proceeding" (Motion to Compel, p. 1) and preparing a "navigable data base that would be made available to all parties for use in the estimation." (Motion to Compel, p. 6.)

As explained below, there is no proper basis on which to compel any further discovery from the GCCC with respect to the Questionnaire at issue.  The documents attached by the GCCC were in fact all requested by W.R. Grace (see, Part IX of the Questionnaire requesting the submission of "Supporting Documentation"); the attached documents either verified specific Questionnaire answers, or provided the answers in a reasonably non-burdensome format as permitted by relevant case law and Fed. R. Civ. P. 33(d); the limited objections to irrelevant areas of inquiry were well-founded; and the GCCC Questionnaires were in almost all cases properly signed in Part X by either counsel, or claimant, or both.

W.R. Grace complains about attached documents, but it is impossible to believe that W.R. Grace would ignore the GCCC's attached reports of board certified medical experts in asbestos-related medical fields; attached death certificates; attached verified interrogatory answers with extensive and easily located information about work history, asbestos exposure, age, smoking history, social security number, and medical treatment; and attached detailed work histories.

It is impossible to believe that W.R. Grace would ignore all of this attached information – information that W.R. Grace itself specifically asked for – in favor of "narrative answers" or yes/no answers provided in the small spaces on the pre-printed Questionnaires.  While W.R. Grace now seeks to compel the production of information in one rigidly specified format, there can be no doubt that W.R. Grace intends to analyze all of the attached records, discovery responses, and sworn statements for inconsistencies, contradictions, or mistakes.  For goodness

sake, W.R. Grace wants its "navigable database" to include data as to whether any claimant is "aware of any relationship between the doctor and your legal counsel." (Questionnaire, Part II, question 6.) If W.R. Grace seeks this level of detail on what will likely prove to be an irrelevant data point for purposes of any proper estimation, it is apparent that W.R. Grace also intends to review all attached expert medical reports, death certificates, pathology reports, work histories, and verified interrogatory answers providing detailed employment history, information about other asbestos exposure, medical treatment and so on.

Since W.R. Grace, for the reasons noted, among others, undoubtedly intends to review the obviously relevant attachments that it asked for and that the GCCC and other claimants provided, there is no good reason to burden the GCCC (or any other claimants) with repeating the same information on a different form when that information has already been set forth in a reasonably accessible format and when the claimants and/or their counsel have reaffirmed that information as being factually true and correct pursuant to the signature provisions of Part X of the Questionnaire.

This Court can also take judicial notice of the extent to which asbestos personal injury litigation has become standardized and routinized in every state with a high number of asbestos victims. For example, joint defense interrogatories are used in numerous jurisdictions and W.R. Grace's extensive pre-bankruptcy involvement in asbestos litigation has made W.R. Grace fully familiar with such joint defense interrogatories.

W.R. Grace purports in its Motion to Compel to want information:

> Focused on common and generic issues in a consistent manner with respect to, *inter alia*, (1) whether the claim for an asbestos-related personal injury is supported by objective and verifiable medical test and (2) whether the claim is supported by objective and verifiable evidence of an exposure to a Grace asbestos-containing product sufficient to cause disease.

Motion to Compel, p. 13.

As for its purported interest in "objective and verifiable medical tests," W.R. Grace can hardly now complain about claimants (such as is typically the case with the GCCC) who have attached copies of "objective and verifiable medical tests."

As for "objective and verifiable evidence of an exposure to a Grace asbestos-containing product sufficient to cause disease," the GCCC claimants have in many cases attached copies of their sworn answer to joint defense interrogatories in which their work histories and asbestos exposure are set forth to the best of their present knowledge. As already noted, W.R. Grace is fully familiar with these joint defense interrogatories in various jurisdictions (having been a joint defendant in many of those cases), and representatives of W.R. Grace, or any human being for that matter, can easily find the interrogatory answers that relate to work history and asbestos exposure.

To the extent that any particular interrogatory answers describe work site asbestos exposure without making a specific reference to W.R. Grace, then it is W.R. Grace that has to provide "the cooperative exchange of certain types of basic information about a party's claim [or defense]" (Motion to Compel, p. 14), sufficient to inform claimants as to whether "a Grace asbestos-containing product" was present on that work site.

Further, and as explained below, for the vast majority of GCCC claimants who are victims of mesothelioma, any minimal exposure to a W.R. Grace asbestos product is sufficient to prove liability and certainly to be included for purposes of any "estimation."

A good example of the expense, burdensomeness, and unreasonableness of what W.R. Grace seeks to impose on the GCCC (and all claimants) involves Part VI of the Questionnaire: "Employment History." Part VI states in relevant part that the claimant should

-4-

"please complete Part VI for all of your prior industrial work experience up to and including your current employment."  The Questionnaire then calls for the "Occupation Code" and "Industry Code" to be supplied as to each employer, along with the beginning and end date of each employment, plus the name and location of each employer.  With the exception of the "Occupation Code" and "Industry Code," all of this requested information for various GCCC claimants was provided in verified interrogatory answers to "Joint Defense Interrogatories" separately attached to the Questionnaire, and specifically referenced and identified as containing that claimant's employment history.

By way of example, the 36 year employment history of one GCCC claimant (the first name in an alphabetical listing of claimants from one of the firms representing GCCC claimants), consisted of twenty-five different jobs; each job was separately identified by employer, location of employer, duration of employment, and nature of work, including specified exposure to asbestos, collectively occupying almost three full pages of text.  (<u>See</u> copy of this three page work history summary attached hereto as Exhibit A.)

W.R. Grace now seeks to require this claimant – not to mention many thousands of other claimants – to repeat all such information, with the only difference being that the information appear on a different piece of paper, and that the Claimant undertake to identify "Occupation Codes" and "Industry Codes" that W.R. Grace could do equally as easily and equally as well, if not better, itself.[1]

Without regard to legal technicalities, requiring such mindless repetition of the same information would plainly be a complete and colossal waste of everyone's time.

---

[1] To impose the burden and expense of recreating the same sworn information, already reaffirmed and readopted as true and correct, but only on a different piece of paper arguably implicates constitutional rights guaranteed to Claimants under the 14th Amendment of the Constitution.

A second example of the needless expense, burdensomeness, and unreasonableness of what W.R. Grace seeks to impose on the GCCC (and other claimants) with its rigid "one size fits all" Questionnaire involves Part II: "Asbestos Related Conditions." As explained below, for claimants diagnosed with mesothelioma, the detailed follow up questions regarding "Chest X-rays" (questions 3 and 4) and "Pulmonary Function Test" (question 5) are irrelevant.

Some 179,000 "Asbestos Personal Injury Questionnaires" were served by W.R. Grace on September 12, 2005. (Motion to Compel, p. 6.) Some 129,000 different individuals are believed by W.R. Grace to hold "pre-petition litigation asbestos personal injury claims" against it. (Motion to Compel, p. 6, fn. 1.) According to W.R. Grace, some 56,000 Questionnaires had been "returned" as of the filing of its Motion to Compel. (Motion to Compel, p. 6.)

It is tempting in the context of such numbers to search for a quick and easy global "solution." In truth, the appropriate solution insofar as the GCCC claimants are concerned is for W.R. Grace and/or its data compiler Rust Consulting, Inc. to read the combination of Questionnaire answers and specified attachments, which reasonably provide all of the essential information reasonably necessary for W.R. Grace's stated objectives.

## II.    ARGUMENT

### A.    CLAIMANTS HAVE THE RIGHT TO ANSWER QUESTIONS BY REFERENCING SPECIFIED, SEGREGATED, AND EASILY LOCATED ATTACHED DOCUMENTS THAT CONTAIN THE SAME INFORMATION AS REQUESTED IN THE QUESTIONNAIRE

W.R. Grace uses loaded terms like "hiding the ball" (p. 2) and "document dump" (p. 24) in an attempt to bias the Court as to the submissions of all claimants. The GCCC are not privy to what the hundreds and hundreds and hundreds of other law firms have done, but the GCCC have consistently sought to attach a limited number of specified, segregated, and easily located

documents.  For example, specified, segregated and easily located documents attached by the

GCCC have included:  death certificates, work histories, expert and related medical reports,

pathology reports, interrogatory answers, and deposition transcripts.  (See, Exhibit B, which

includes copies of selected label pages that specify particular categories of attached documents

as submitted by one of the firms representing GCCC claimants.)

W.R. Grace falsely asserts in its Motion to Compel that it never requested all of these

documents:

> If the parties or the Court believed it made sense to engage in this
> type of discovery [namely, document production], Debtor would
> have served document requests and interrogatories instead of
> proceeding by Questionnaire in an estimation proceeding.

Motion to Compel, p. 24.

In other words, W.R. Grace is saying:  "If we had wanted any of the documents

submitted by the various claimants, we would have requested them."

W.R. Grace is suffering from a severe case of self-serving and selective amnesia because

Part IX of the Questionnaire – entitled "Supporting Documentation" – specifically does request

each claimant to provide most of the specific categories of documents attached on behalf of

various of the GCCC Claimants (and other claimants).  More specifically, Part IX of the

Questionnaire states in relevant part that the claimant should "Please use the checklists below to

indicate which documents you are submitting with this form."  Types of documents on the

checklists include "Medical records and/or report containing a diagnosis"; "Pathology reports";

"Death Certification"; "Supporting Documentation of exposure to Grace asbestos-containing

products" (which counsel for certain GCCC claimants reasonably understood to request copies of

interrogatory answers which did "document" such exposure); and "Depositions from lawsuits

indicated in Part VII of this Questionnaire."

In short, W.R. Grace specifically asked for all of these documents and W.R. Grace has no right now to complain about receiving precisely what it asked for.[2][3]

In addition to the fact that the GCCC claimants attached precisely what W.R. Grace asked for, it is also clear that W.R. Grace does not have the legal right to require claimants to answer questions in a precise and rigid format. Rule 33 requires only that "[e]ach interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable." Fed. R. Civ. P. 33(b). See, e.g., Phillips v. City of N.Y., 230 F.R.D. 369, 369-370 (S.D.N.Y. 2005) (holding that party was not required to respond to opponent's interrogatories in the specific form that opponent requested).

Further, Rule 33(d) specifically permits a party to answer an interrogatory by attaching or referencing business records where "the answer to an interrogatory may be derived or ascertained from business records of the party" and "the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served."

Citing only an unpublished opinion from the District of Kansas, Bradley v. Val-Mejias,[4] W.R. Grace argues that Rule 33(d) does not apply to a party's own medical records. Bradley held that plaintiff's records were the business records "of the hospitals," and not the plaintiff, and

---

[2] W.R. Grace even acknowledges on page 13 of its Motion to Compel that its Questionnaire is "a hybrid form of discovery, . . . [that is] part document request, . . ." (Emphasis added.)

[3] If W.R. Grace never intended to review the documents it requested, then the request was unduly burdensome and was made in bad faith in the first instance.

[4] No. 00-2395, 2001 WL 1249339 (D. Kan. Oct. 9, 2001).

that the plaintiff was therefore not entitled to reference them under Rule 33(d) in response to interrogatories. [5]

Not only is this decision not binding on this Court, but it is contrary to the plain language of Rule 33(d).  Medical records prepared by medical professionals are indisputably "business records" within the meaning of Fed. R. Evid. 803(6).  Equally indisputable is that patients have a right upon request to obtain their own medical records.  See, e.g., Pyramid Life Ins. Co. v. Masonic Hosp. Ass'n of Payne Co., Okla., 191 F.Supp. 51, 54 (D. Okla. 1961) ("[T]he keeper of the records is only the custodian and not the owner of that information constituting the medical records of the patient.  The patient has a property right in the information appearing or portrayed on the records").

In short, a patient's own medical records in the custody of the patient are, quite literally, "business records of the party" when the "party" is the patient.

The plain language of Rule 33(d) nowhere requires that the party be in the same business as the creator of the documents.  The imposition of any such requirement is unsupported by the text of Rule 33(d) regardless of whether the responding "party" is an individual or a "business." A "business" party obviously has "business records" that it "owns" and maintains, but that originate from other sources such as customers, service providers, consultants, etc.  Business parties have every right under Rule 33(d) to produce any such "business records," even if originating from a different source.

Similarly, an individual commonly has possession of "business records" that originate from other sources – such as from doctors, hospitals or employers as in the present case.  When

---

[5] The Bradley court stressed that the plaintiff did not even offer to produce the records, but instead he sought to force the defendants to subpoena the records at their own expense from the hospitals.  See id. at *2.

an individual has custody of such "business records" from other sources he or she has every right to attach them and to reference them pursuant to Rule 33(d).[6]

The position argued for by W.R. Grace would in fact, permit parties to have recourse to Rule 33(d) only for records <u>created</u> by them in their own "business," rather than "business records" that are <u>received</u> by them from others.  Such a result would eviscerate the practical utility of Rule 33(d), and would make no sense.

The official Advisory Committee Note for the 1970 Amendment to Rule 33 explains as follows with respect to that what is now Rule 33(d):

> This is a new subdivision, adapted from Calif. Code Civ. Proc. § 2030(c), relating especially to interrogatories which require a party to engage in burdensome or expensive research into his own business records in order to give an answer

Nothing in the official Advisory Committee Notes, and nothing that has been found in the decisional law interpreting Calif. Code Civ. Proc. § 2030 (c) (or its successor rule), stands for the proposition that the business records that may be attached must be created by the party attaching them.  To the contrary, the obvious intention of Rule 33(d) is to relieve a party of the burden and expense of researching its own records – meaning business records owned and used by that party and not only records created by that party that would meet the evidentiary criteria of the hearsay exception for "business records" under Fed. R. Evid. 803(6).  Nothing in the text of Rule 33(d) or in the Advisory Committee Notes stands for the proposition that "business records" as referenced in Rule 33(d) must satisfy the concepts of evidentiary reliability that are set forth in Fed. R. Evid. 803(6).

---

[6] It would seem that interrogatory answers filed by claimants in a non-bankruptcy asbestos case are "business records" prepared on their behalf by their counsel who are engaged in the "business" of pursuing their asbestos claims.

Where a claimant's own medical and employment records – business records created by others, but in the possession of the claimant – would permit W.R. Grace to derive or ascertain the answer with a "burden" that is "substantially the same" as would be the burden on the claimant, then it is submitted that the claimant has the absolute right under Rule 33(d) to attach those records to his or her responses so long as the other requirements of Rule 33(d) are satisfied.

In addition to the rights provided to claimants under Rule 33(d), there is the fact that numerous courts have recognized the appropriateness of incorporating previous discovery responses by reference in order to avoid needless burden on the responding party.

W.R. Grace asserts that "it is improper for a party to direct the person requesting the discovery to prior discovery responses, such as depositions and interrogatory responses, rather than providing substantive answers to the discovery request."  (Motion to Compel, p. 27.)

This assertion is more than self-serving and selective amnesia.  This is just plain wrong.  Numerous courts have permitted parties to incorporate by reference previous discovery responses in order to avoid the burden of "duplicative discovery":

> after a reading of the original answer, supplemental answers, depositions, and expert reports, the court is of the opinion that compelling further answer would only result in duplicative discovery.

In re Norplant Contraceptive Products Liability Litigation, 170 F.R.D. 427, 428 (E.D. Tex. 1997)

> When complete 'answers are contained in prior depositions, [however,] then a motion to compel answers to subsequent interrogatories seeking to elicit the same information should be denied as burdensome, vexatious, oppressive and totally without justification.' (quoting Sendi v. Prudential Bache Sec., 100 F.R.D. 21, 23 (D.D.C. 1983)).

Pulse Card, Inc. v. Discover Card Svc., Inc., 168 F.R.D. 295, 305-06 (D. Kan. 1996)

> In answering such interrogatories, the plaintiff propounded a short answer and then referred the defendant to the places in the voluminous record of this cause where the specific facts could be found. The Magistrate [correctly] found that was an adequate form of answering such detailed questions and that such questions amounted to 'little more than harassment.'

Equal Employment Opportunity Commission v. Tecumseh Products Co., No. C-78-1004, 1980 WL 2199, at *1 (W.D. Tenn. Nov. 28, 1980).

In other words, even to the extent that prior discovery responses are not themselves "business records" pursuant to rule 33(d), a litigant has the right to incorporate prior discovery responses in order to avoid needless burden.  See also Richlin v. Sigma Design West Ltd., 88 F.R.D. 634, 640 (E.D. Cal. 1980):

> It is clear that the fact that a litigant can engage in successive sets of interrogatories is not a license to engage in "repetitious, redundant and tautological" inquiries.
>
> *      *      *
>
> This Court cannot fathom why such patently unnecessary inquiries should be sanctioned merely because the seeker has chosen to employ two differing successive methods, i.e., depositions and then interrogatories or vice versa, as opposed to interrogatories upon interrogatories.
>
> *      *      *
>
> [A]s a general principal it is incumbent upon a court to balance the burden on the interrogated party against the benefit which would inure to the interrogator in making a determination whether a given set of interrogatories are so broad and all inclusive as to be overly burdensome.
>
> *      *      *

-12-

> In light of the Magistrate's finding that the
> information sought to be ascertained is duplicative
> of that already discovered, the burden to the
> plaintiffs, as weighted against the marginal benefit
> which the defendants stand to gain, tips the scales in
> favor of the plaintiffs.

Citations omitted.

For all of the foregoing reasons, the GCCC (and other claimants) have reasonably and appropriately answered certain questions by referencing specified, segregated, and easily located attached documents that contain the same information as requested in the Questionnaire.

**B.    VARIOUS PORTIONS OF THE QUESTIONNAIRE ARE IRRELEVANT AS A MATTER OF LAW FOR ESTIMATION OF THE VALUE OF MESOTHELIOMA CLAIMS.  REQUIRING ANSWERS TO THESE QUESTIONS BY MESOTHELIOMA CLAIMANTS WOULD THEREFORE BE UNDULY BURDENSOME AND IRRELEVANT**

The vast majority of the GCCC claimants are mesothelioma victims.  Under applicable state tort law, mesothelioma claimants have a fundamentally different burden of proof with respect to causation.  Mesothelioma is a "signature disease," meaning that asbestos exposure is its only cause.  See, e.g., Lane v. Gasket Holdings, Inc., No. B153966, 2003 WL 21666623, at *2 (Cal. App. July 17, 2003) ("The only known cause of mesothelioma is exposure to asbestos.  All kinds of asbestos can cause mesothelioma."); Sparks v. Owens-Illinois, Inc., 32 Cal. App. 4th 461, 469 (1995) ("[T]he only established cause of mesothelioma in humans was asbestos exposure . . . .").

Accordingly, insofar as mesothelioma claimants are concerned, exposure to any carcinogens other than asbestos is irrelevant.

In contrast to lung cancer and other asbestos-related diseases, one encounter with a small amount of asbestos can be enough to cause mesothelioma. See, e.g., Hoeffer v. Rockwell

Automation, Inc., Nos. A107353, A107964, 2006 WL 185479, at *6 (Cal. Ct. App. Jan. 26,

2006) ("[U]nlike in other asbestos-related cancer cases, the relationship between asbestos

exposure and mesothelioma provides 'the strongest link between any exposure in any cancer that

we know of.'"); Lane, 2003 WL 21666623 at *2 ("Mesothelioma can develop in one who has

had very low exposure to asbestos. . . . there's no threshold below which any type of bystander or

occupational exposure to asbestos cannot potentially cause mesothelioma."); Wehmeier v. UNR

Indus., Inc., 572 N.E. 2d 320, 337 (Ill. App. Ct. 1991) (stating that mesothelioma "is caused after

only minor exposure to asbestos dust," but that "[a]sbestosis, on the other hand, develops after a

more substantial exposure to asbestos."); Purcell v. Asbestos Corp., Ltd., 959 P.2d 89, 94 (Or.

Ct. App. 1998) (stating that mesothelioma "can be caused by very minor exposures.").

　　　　To prove "causation" in asbestos tort cases, a plaintiff need not show that specific fibers

from the defendant's product caused the malignancy.  See, e.g., Rutherford v. Owens-Illinois,

Inc., (1997) ("In an asbestos-related cancer case, the plaintiff need not prove that fibers from the

defendant's product were the ones, or among the ones, that actually began the process of

malignant cellular growth.").  Rather, a plaintiff need only show that he or she was exposed to

the defendant's product and that such exposure was a "substantial factor" in bringing about the

injury.  See, e.g., id.  Where a plaintiff has been exposed to different asbestos products made by

different defendants, a plaintiff may satisfy the "substantial factor" test with respect to a

particular defendant by showing that exposure to that defendant's product, on its own, was a

substantial factor in increasing the risk of contracting the disease in question.  See, e.g., Hoeffer,

2006 WL 185479, at *4 ("[A] particular asbestos-containing product is deemed to be a

substantial factor in bringing about the injury if its contribution to the plaintiff or decedent's risk

or probability of developing cancer was substantial.").

As regards mesothelioma, where even the most minor exposure can trigger the disease, a plaintiff can satisfy the causation element simply by showing just one brief encounter with a particular defendant's product, because that one brief encounter would have been enough to trigger the disease.  Id. at *5 (noting expert testimony to the effect that out of many separate exposures to asbestos, each one by itself was a substantial factor in causing the plaintiff's mesothelioma); Purcell, 959 P.2d at 94 ("Where there is competent evidence that one or a *de minimus* number of asbestos fibers can cause injury, a jury may conclude the fibers were a substantial factor in causing a plaintiff's injury.") (quoting Wehmeier, 572 N.E. 2d at 337); see also Wehmeier, 572 N.E. 2d at 337 ("The substantial factor test is not concerned with the *quantity* of the injury-producing agent or force but rather with its *legal significance."*) (citing W. Keeton, Prosser & Keeton on Torts § 41, at 267 (5th ed. 1984)).

Consequently, a mesothelioma plaintiff can prove causation by showing very minor exposure.  See, e.g., Wehmeier, 572 N.E.2d at 337 ("Where there is competent evidence that one or a *de minimis* number of asbestos fibers can cause injury, a jury may conclude the fibers were a substantial factor in causing a plaintiff's injury.").

With respect to mesothelioma claimants, therefore, much of the information sought by the Questionnaire is plainly irrelevant.  If such claimants can simply show proof of any exposure to W.R. Grace asbestos products, they will be able to show that W.R. Grace's products "substantially contributed" to their mesothelioma.  No other evidence regarding causation would be relevant.  Similarly, conclusive pathology evidence of mesothelioma eliminates all need for various other diagnostic testing such as chest X-rays, or Pulmonary Function Tests.  Accordingly, for mesothelioma claimants there is no proper basis for W.R. Grace to insist on answers to such diagnostic testing (see, for example, questions 3, 4 and 5 of Part II).

2099433v1

C.    **INDIVIDUAL CLAIMANTS RETAIN THE RIGHT TO OBJECT TO SPECIFIC QUESTIONS ON ANY GROUND APPLICABLE UNDER THE SPECIFIC FACTS OF THEIR CLAIM**

The Motion to Compel concedes (and rightly so) that, "By requesting that the Court compel responses to questions for which Claimants withheld discoverable information based on generic objections to the form and contents of the Questionnaire, Grace is in no way seeking to limit an individual Claimant's ability to raise substantive objections such as objections on the basis of a privilege or confidentiality interest."  (Motion to Compel, p. 20 fn. 6.)

Claimants' rights regarding "substantive objections" to the Questionnaire, including but not limited to, privilege and confidentiality are therefore admitted by W.R. Grace to be preserved.

Moreover, the Court has previously acknowledged that individual claimants' retain the right to object to any of the questions based on their own unique circumstances.  See, for example, Hr'g Tr. of July 19, 2005 at 232, lines 7-8 ("Well, then they can object to it if that's what they want to do.")

Finally, as a matter of procedural due process, the Court could not, in an *ex parte* proceeding, make a pre-judgment that would deprive individual claimants of their rights to object based on the specific facts and circumstances of their claims.  See, e.g. U.S. v. One Toshiba Color Television, 213 F.3d 147, 152 (3d Cir. 2000) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections") (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)); see also Fed. R. Civ. P. 33(b)

and 34(b) (specifically providing for the ability of the responding party to object to interrogatories and document requests).

The GCCC hereby join in section II of the Opposition of the Official Committee of Asbestos Personal-Injury Claimants to the Debtors' Motion to Compel Responses to Their Questionnaires, which ably addresses the fact that individual claimants retain all of their rights to object to the Questionnaire on any basis that may be applicable under the specific facts of the individual claimant's case.

### D.   INFORMATION CONCERNING THE SETTLEMENT OF PRIOR ASBESTOS SUITS IS CONFIDENTIAL AND PRESENTLY NOT DISCOVERABLE; SUCH INFORMATION IS ALSO NOT REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE

Part VII of the Questionnaire requests information about settlements that claimants have reached in other asbestos lawsuits, including settlement amounts.  Requests for information about the settlement amounts in other actions amounts cannot be considered as "reasonably calculated to lead to the discovery of admissible evidence," which is the controlling standard under Rule 26(b).

In California, for example, settlements only become relevant if a court has to allow credits against a verdict after the trial.  Under California law, any settling defendant — a status that would apply to W.R. Grace under the terms proposed by W.R. Grace in this bankruptcy proceeding — has no right to equitable indemnity or contribution, and thus has no need ever to know who else paid what; nor would any such settlement ever be admissible in evidence.

Moreover, as W.R. Grace well knows, settlement details, including amounts, are subject to confidentiality agreements entered into with each settling defendant.  W.R. Grace insisted on confidentiality provisions in its own settlement agreements entered into pre-bankruptcy.  (<u>See</u>

redacted example of Settlement Agreement with W.R. Grace attached as Exhibit C.)  Claimants

are not presently permitted to disclose information as to settlement amounts or any other

information covered by such confidentiality agreements.


**E.      THE CLAIMANT AND ATTORNEY SHOULD NOT BOTH HAVE TO
SIGN THE QUESTIONNAIRE**

There is no reasonable basis to require that both the attorney <u>and</u> the Claimant sign Part X

of the Questionnaire.  Certain claimants are close to death, incapacitated, or otherwise impaired.

Some claimants have recently died and a representative capable of signing on their behalf has not

yet been appointed.  Requiring a claimant signature under such circumstances is needlessly

intrusive and burdensome if counsel of record has signed.

The insistence by W.R. Grace that both claimant and counsel sign Part X would be

penalized in football as "piling on."  No legitimate purpose for an estimation exercise is served

in having two different persons – each with their own legal obligations to be truthful – both

swear to the truth of the information submitted.


**F.      BECAUSE THE ESTIMATION PROCEEDING IS A CONTESTED
MATTER, DEBTOR IS REQUIRED TO COMPLY WITH RULE 26(a)(1)**

Federal Rule of Bankruptcy Procedure 9014 provides that Federal Rule of Bankruptcy

Procedure 7026 applies to contested matters.  Rule 7026, in turn, states that Federal Rule of Civil

Procedure 26 applies.  The estimation process is obviously a contested matter and the Debtor is

therefore subject to the duty under Federal Rule of Civil Procedure 26(a)(1) to provide initial

disclosures to Claimants.

Indeed, Debtor's own Motion to Compel refers to Fed.R.Civ.P. 26(a)(1) and "the modern model of litigation, which explicitly provides for the cooperative exchange of certain types of basic information about a party's claim."  (Motion to Compel, p.14)

W.R. Grace has, of course, itself as yet provided none of the mandatory initial disclosures required by Fed. R. Civ. P. 26(a)(1).


**III.    <u>CONCLUSION</u>**

For the foregoing reasons, the Grace Certain Cancer Claimants respectfully request that W.R. Grace's Motion to Compel be denied as to them and as to all similarly situated claimants.


Dated:  August 14, 2006              MONTGOMERY, MCCRACKEN, WALKER &
                                      RHOADS, LLP


                           By:    _____/s/ Noel C. Burnham_____
                                  Noel C. Burnham, Esquire (DE 3483)
                                  Natalie D. Ramsey, Esquire (PA only)
                                  Leonard A. Busby, Esquire (PA only)
                                  300 Delaware Avenue, Suite 750
                                  Wilmington, DE 19801
                                  (302) 504-7800
                                  (302) 504-7820 (facsimile)

                                  and

                                  123 South Broad Street
                                  Philadelphia, PA 19109
                                  (215) 772-1500
                                  (215) 772-7620 (facsimile)

                           Attorneys for Grace Certain Cancer Claimants