# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.* | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Docket No. 12823** |
| | ) | **9/11/06 Agenda Item No. 2** |

### DEBTORS' REPLY TO VARIOUS RESPONSES TO DEBTORS' MOTION TO COMPEL ASBESTOS PERSONAL INJURY CLAIMANTS TO RESPOND TO THE W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE

Debtors filed a Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Asbestos Personal Injury Questionnaire (the "Motion") to ensure that a navigable database of information related to Claimants' claims could be completed on schedule. *See* Dkt. No. 12823 (Jul. 17, 2006). Of the 637 firms who were served with the Motion, 40 filed responses ("Responding Claimants"). Of those, eight firms filed discovery objections instead of a brief or memorandum of law. The remaining 597 firms (including eight of the 20 firms representing the most Claimants) filed no response to the Motion. The Court must again make clear to Responding Claimants that it is not proper for Claimants and their counsel to: (1) object to the Questionnaire on grounds such as relevance and burden in lieu of answering; (2) attach documents instead of responding to questions in the Questionnaire; and (3) refuse to sign the Questionnaire.

At the heart of Responding Claimants' arguments are: (1) a fundamental attack on this Court's authority to order Claimants to complete the Questionnaire at this time; and (2) a belief that the Claimants should be able to treat this Questionnaire as if it were traditional tort system discovery, not a hybrid Questionnaire that has been reviewed and approved by the Court. Although the Questionnaire was approved and served a full year ago, Responding Claimants

wish now to litigate separately each and every response to each and every question for each and every Claimant. In practical terms, this means the Court would have to individually consider and rule on approximately 55,000 Questionnaires now, and an untold number of additional Questionnaires that will be returned as part of the bar date process. The Court should not grant this request and thereby return the entire estimation process to square one.

**I.      The Court Approved The Questionnaire After Exhaustive Litigation.**

Responding Claimants would have this Court believe that it never engaged in a thorough line-by-line review of the Questionnaire. *See* Joint Response of Various Law Firms Representing Asbestos Personal Injury Claimants in Opposition to Debtors' Motion to Compel ("Joint Resp.") at 25-26 (Dkt. No. 12960) (Aug. 14, 2006). Debtors need not spend much time rebutting that ridiculous statement as the Court is more aware than any party what actually transpired. Debtors' Motion reviews the Questionnaire process in exacting and accurate detail. *See* Motion at 3-7.

Indeed, since Debtors filed their Motion on July 17, 2006, the Court has twice reiterated its position:

- At the July 2006 hearing, one of the responders (SimmonsCooper) argued that it should be sufficient for Claimants to attach to Questionnaires discovery responses from the underlying tort litigation. The Court rejected that argument. The Court made clear "[t]hey're to fill out the questionnaire. . . . This is a bankruptcy case. I don't care what they said in the tort system." Tr. of Hr'g at 61 (Jul. 24, 2006).

- At the latest hearing, on August 21, 2006, the Court stated that given the lengthy process involved in approving the Questionnaire and the fact that everyone who was present vetted the language and had a chance to argue, the Court did not anticipate that many objections will be sustained. The Court also noted that the Courtroom was full on the occasions where the contents of the Questionnaire were considered by the Court.[1]

---

[1]     A transcript is not yet available from the August hearing.

## II.    The Committee Was The Correct Party To Litigate These Issues.

As an alternative to their argument that the Court has not made clear that the Questionnaire must be completed, Responding Claimants argue that the Court should ignore its prior decisions because the Official Committee of Asbestos Personal Injury Claimants ("PI Committee") had no authority to speak or object to the Questionnaire. *See, e.g.,* Joint Resp. at 34-35; Memorandum of Law in Support of Claimants' Opposition to Debtors' Motion to Compel at 8 (Dkt. No. 12929) (Aug. 4, 2006) ("Thornton & Naumes Resp."). They basically argue that Debtors must first litigate the Questionnaire with the PI Committee, and then relitigate the Questionnaire with each Claimant.

Responding Claimants' argument brushes aside the fact that the PI Committee was fully empowered to act on behalf of asbestos personal injury claimants in litigating the PI Questionnaire. *See* Motion at 17-18. The Questionnaire is for purposes of an estimation, in which the PI Committee -- not the individual Claimants -- will litigate on behalf of the Claimants. Counsel for the PI Committee candidly acknowledges that the Committee does "represent [the Claimants] in the estimation." Tr. of Hr'g at 240 (Jul. 19, 2005).

Further, a similar practice was employed with respect to property damage claims. There, the Court approved a proof of claim form. *See Order as to All Non-Asbestos Claims, Asbestos Property Damage Claims, and Medical Monitoring Claims: (I) Approving Case Management Schedule, (II) Establishing Bar Date, (III) Approving Proof of Claim Forms, and (IV) Approving Notice Program* (Dkt. No. 1960) (Apr. 22, 2002) (the "Bar Date Order"). Unlike typical proofs of claim, the PD Claim Form required Claimants to provide detail regarding their claims and to support their claims with relevant documentation. *Id.* The PD Claim Form was litigated with the PD Committee, ordered without approval of every PD Claimant, and is being uniformly enforced as to every PD Claimant.

3

### III. The Court Has The Power To Order Claimants To Respond To The Questionnaire.

Responding Claimants also cleverly try to position themselves to contest this Court's jurisdiction regarding the PI Questionnaire. *See* Joint Resp. at 6-8. Many of the Responding Claimants were actually present at the various hearings where the Questionnaire was discussed. *See* Tr. of Hr'g (Jul. 19, 2005) (noting appearance of Stutzman, Bromberg, Esserman & Plifka, P.C., counsel for 17 of the 40 Responding Claimants, and Cohn Whitesell & Goldberg LLP, counsel for the Libby Claimants). Some are on the Court's Rule 2002 Service list. *See* W. R. Grace Rule 2002 Service List (including 14 Responding Claimants' law firms). Some have filed 2019 statements. Yet, as the Court pointed out during the August omnibus hearing, none of the Responding Claimants objected to either the Questionnaire or its contents.

It is only now, after standing mute for nearly a year, that these parties have stepped out of the shadows to pursue their attack on the Court's jurisdiction, arguing the following:

> The persons to whom the questionnaire has been promulgated, the Claimants, have not submitted to the Court's jurisdiction and are not currently before the Court. The Claimants have not filed proofs of claim.

Joint Resp. at 6. Such mischievous practices should not be rewarded.

First, to the extent there is any question about the Court's jurisdiction, it has been cured by the Court's recent order of a bar date. Grace will obviously concede that any person who does not wish to assert a claim against Grace need not fill out the Questionnaire.[2]

Second, contrary to the Responding Claimants' assertions, the Court's jurisdiction over Claimants is not limited to those who file proofs of claim. Each of the cases cited by the

---

[2] Responding Claimants make a related argument that the proof of claim requirement moots the Questionnaire. Whether or not Grace chooses to contest an individual claim, this matter is still proceeding as an estimation. The information provided in response to the Questionnaire is relevant to that estimation. Simply put, nothing changes with respect to the need to respond to the Questionnaire or the utility of the information contained in those responses.

Responding Claimants stands for the unremarkable proposition that if a Claimant files a proof of claim, then the Claimant is subject to the Court's orders. *See* Joint Resp. at 6-7. None of the cases support the Responding Claimants' contrary proposition that only parties who have filed a proof of claim are subject to the Court's jurisdiction. Accordingly, it is not surprising that this argument has already been rejected by this Court:

> . . . There is an allegation that [the Claimants] are, in quotes, "third-party witnesses". I don't see them as third-party witnesses. These are people who are going to be pursuing claims against a trust that the debtor has to fund. . . . So one way or another they are going to be recognized as creditors even if they have not yet filed a claim.

Tr. of Hr'g at 50 (Jun. 19, 2006).

Third, a number of the Claimants, including several Responding Claimants, have already appeared before this Court to request the rulings they desire.[3] They now argue that this Court lacks jurisdiction when it enters an order with which they disagree. They cannot have it both ways.

Fourth, there are practical considerations. Any attempt to relitigate the Questionnaire will completely upend the Court's schedule. After extending the due dates for the Questionnaires for ten months, the Court put in place a very aggressive schedule for trial. That schedule calls for the completion of the navigable database by October 12, 2006, non-estimation expert reports by September 20, 2006, supplemental non-estimation expert reports by December

---

[3] For example, various Responding Claimants have filed the following:

- *Response in Opposition to Debtors' Motion for an Order Establishing a Proof of Claim Bar Date for Asbestos Personal Injury Pre-Petition Litigation Claims* (Dkt. No. 10913) (Oct. 28, 2005) by Baron & Budd, P.C., Environmental Litigation Group, P.C., The Law Offices of Peter G. Angelos, P.C., Reaud, Morgan & Quinn, Inc., and Silber Pearlman, LLP.

- *Response in Opposition to Debtors' Ninth Motion for an Order Pursuant to 11 U.S.C. 1121(d) Extending Debtors' Exclusive Periods in Which to File a Chapter 11 Plan and to Solicit Votes Thereon* (Dkt. No. 11246) (Dec. 2, 2005) by SimmonsCooper, LLC, Provost & Umphrey, LLP, Baron & Budd, P.C., Environmental Litigation Group, P.C., The Law Offices of Peter G. Angelos, P.C., Reaud, Morgan & Quinn, Inc., and Silber Pearlman, LLP.

11, 2006, estimation expert reports by December 1, 2006, and supplemental estimation expert reports by February 1, 2007. If Debtors are now forced to litigate every objection or failure to answer with each individual firm, the Court's schedule becomes an impossibility.

## IV. Attachments Should Not Substitute For Completed Questionnaires.

Responding Claimants argue that they should, for various general and particular reasons, not have to fill out the Questionnaire, but merely attach documents. First, contrary to Responding Claimants' position, the Court has stated clearly that it did not want attachments in lieu of answering. At the July 2006 hearing, Mr. Phillips of SimmonsCooper argued that the SimmonsCooper Claimants should be entitled to attach "prior discovery" in lieu of filling out the responses to questions on the Questionnaire. *See* Tr. of Hr'g at 60 (Jul. 24, 2006). The Court responded simply and directly: "They're to fill out the questionnaire. . . . This is a bankruptcy case. I don't care what they said in the tort system. I want to know for proof of claim purposes what they're alleging here, and that's what the questionnaire does." Tr. of Hr'g at 61 (Jul. 24, 2006).

Second, Responding Claimants attach a number of affidavits complaining about the unfair burden of having to actually fill out the Questionnaires as opposed to attaching documents. *See, e.g.*, Decl. of Claimants' Counsel, Richard F. Rescho, in Support of Objection to Motion to Compel; Joint Resp. at Exs. 1-17. These claims of burden are contradicted by the Responding Claimants' own statements. Depending on the law firm, Responding Claimants state that to fill out the Questionnaire completely would take them between three and 10.5 hours.[4] Even accepting these estimates at face value, that is hardly an undue burden. Moreover,

---

[4] One law firm (Hal Pitkow, Esq.) estimated the need for sixteen hours. Given the other estimates, that number is not credible. Moreover, the Pitkow firm only returned two Questionnaires on behalf of its clients. However, despite having exactly ten months to do so, the Pitkow firm did not respond to the vast majority of questions, instead referring Grace to records it characterized as *"voluminous medical and employment records and*

6

on average, the time required to properly complete the Questionnaire is approximately equivalent to one seven-hour deposition. Debtors would be entitled to that full deposition day if they were to proceed by traditional discovery, in addition to all of the other discovery devices available under the federal rules. Thus, if anything, the discovery Questionnaire is less burdensome than traditional discovery.

Responding Claimants' legal representatives try to escape this obvious logic by aggregating their Claimants to demonstrate a burden. *See, e.g.*, Decl. of Alan B. Rich in Support of the Response of Baron & Budd, P.C. to the Debtors' Motion to Compel. But, it is the burden on the individual Claimant or plaintiff, not their counsel, that matters. If an individual law firm took on too many plaintiffs to prepare their individual case for trial, let alone complete the Questionnaires over a nearly year-long period, that should not excuse responding.

Third, Responding Claimants' allegations of burden are refuted by the Questionnaires returned by firms like Campbell Cherry Harrison Davis & Dove, P.C. ("Campbell Cherry"). Upon initial review of a subset of Campbell Cherry's Questionnaires, they are nearly complete. Campbell Cherry had 174 claimants, and each Questionnaire took approximately 3.3 hours to complete. *See* Joinder of Campbell Cherry Harrison Davis Dove, P.C., to Certain Objections and Responses at 1 (Dkt. No. 12974) (Aug. 14, 2006). If Campbell Cherry could do it, there is no reason other firms could not do the same.

Fourth, Responding Claimants allege that they are entitled to treat the Questionnaire as Fed. R. Civ. P. 33 interrogatories, and then under Rule 33(d) respond by attaching documents instead of answering. This argument misunderstands the nature of the Questionnaire as a discovery vehicle. The Questionnaire is a hybrid used to replace, among other things, deposition

---

*voluminous deposition transcripts*" which would be made available for inspection at the Pitkow firm's office. *See* Aff. of Hal Pitkow, Esq. (emphasis added).

7

questions. *In re Sept. 11th Litig.*, 236 F.R.D. 164, 173, n.5 (S.D.N.Y. 2006) (stating that "to rely on 'documents'" produced in the litigation instead of answering deposition questions "inevitably will tend to shut off all answers, making a mockery of the deposition process."). Responding Claimants cannot characterize the Questionnaire in a manner that they prefer, and then use the Rules to limit a fulsome response.

V.    **Threshold Objections Such As Burden Or Relevance Are Improper.**

The next major complaint from the Responding Claimants is that the rules require an individual adjudication of every objection, whether it be for relevance, burden, or any other issue. *See*, Thornton & Naumes Resp. at 5. Some Responding Claimants base these objections on specific oddities of state law, while others just make the uniform statement that it is improper for the Court to require responses until hearing every Claimants' objection first. *See, e.g., id.;* Response of Grace Certain Cancer Claimants ("GCCC Resp.") at 16-17 (Dkt. No. 12970) (Aug. 14, 2006).

The problems with this approach are obvious. First, as discussed above, the Court went through the Questionnaire line-by-line over the course of two hearings. *See* Motion at 5. That was after months of negotiations. *Id.* The very purpose of the Court doing so was to whittle the questions down to those it thought were proper and relevant, so it would not have to hear questions of burden, relevance and the like after the Questionnaires were returned. *Id.* at 5, 15-16.[5] The PI Committee, acting on behalf of its constituents, and any Claimant in attendance, which included some of the Responding Claimants, had the right, ability, and opportunity to

---

[5] Also, with respect to the confidentiality objections, Grace acknowledges it may be appropriate to raise that objection on a case-by-case basis. But, the Court stated that it was ordering settlement amounts to be provided as Grace was entitled to know if the Claimant is making a claim that is duplicative to a claim that the Claimant alleged against somebody else and for which the Claimant recovered, and that if a defendant believes that the Claimant violated a confidentiality agreement by providing the information as required by the Court, the defendant "can come in and contest it." Tr. of Hr'g at 282-83 (Jul. 19, 2005).

participate in the process. The PI Committee vigorously fought for the Claimants on these issues. The Court overruled those objections and approved the contents of the Questionnaire. No appeal was taken by the PI Committee or any Claimant. The Court reiterated at the August 2006 omnibus hearing that it did not anticipate that many objections will be sustained in light of the longstanding approval process.

Second, to the extent Claimants wish to litigate each and every Questionnaire objection to each and every question on the over 100,000 Questionnaires, as discussed above, that in itself is a multi-month process that will require the dismantling of the Court's current schedule.

## VI. Both Claimants And Their Counsel Must Sign The Questionnaire.

Responding Claimants provide some novel arguments as to why either Claimants or counsel need not sign the Questionnaire. With respect to the Claimants, the Responding Claimants allege that some are near death and it is too great an imposition for someone that ill to sign. *See, e.g.*, GCCC Resp. at 18. If it is true that someone is so ill that they cannot read what their attorney prepares or put pen to paper, Grace will accept a sworn affidavit from counsel indicating that counsel spoke with the Claimant, tried to review the Questionnaire with the Claimant, but the Claimant was too ill to read or sign the Questionnaire.

Some Responding Claimants also argue that the Questionnaire is ambiguous as to whether an attorney must sign the Questionnaire because the word "legal representative" is unclear. *See* Joint Resp. at 21-22; Thornton & Naumes Resp. at 11-12. To do that, Claimants contort the transcript, removing lines from quotations which make the point clear. *Compare* Joint Resp. at 21 to Tr. of Hr'g at 242-43 (Jul. 19, 2005). Grace has detailed accurately and fully in its Motion what the Court ordered, and it is clear the words "lawyer" and "legal representative" were being used interchangeably. *See* Motion at 28, n. 9. Lest there be any confusion, in February 2006, Grace sent a letter to all Claimants' counsel indicating that both the

attorney and plaintiff had to sign the Questionnaire. *See* Ltr. from B. Harding to Counsel (Feb. 6, 2006) (attached as Exhibit A). Claimants clearly understood the meaning, as they wrote letters to Grace refusing to sign the Questionnaire, regardless of what the Court ordered. *See* Motion at 28, n. 9, and Exs. I, J, and K, thereto. Thus, this feigned confusion is nothing more than certain Claimants' counsel pretending not to understand the Court's clear directive as a basis not to attest to the truthfulness and completeness of the responses contained in the Questionnaire.

### VII. Question About Settled Claims.

A number of Responding Claimants, Goldberg Persky in particular, have argued that they should not have to fill out the Questionnaire because many of the claims are settled. At the last status conference the Court instituted a process in conjunction with the revised proof of claim form for handling settled claims. That issue will resolve itself through that process, and should not operate as a bar to this Court ordering proper narrative responses.

### VIII. The Sixty Day Cure Period Is Proper.

Responding Claimants object to the proposed sixty day cure period as not providing sufficient time to properly complete the Questionnaires. First, this argument appears disingenuous in light of the fact that many of the Questionnaires returned by the Responding Claimants were completed far in advance of the July 12, 2006 deadline. Instead of using the additional time to properly complete the Questionnaires, the Responding Claimants merely rested on the hope that a proper response would never be required. Second, as outlined above, the cure period is the only way to meet the Court's current schedule.

DOCS_DE:120911.1

Wilmington, Delaware
Dated:

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000


KIRKLAND & ELLIS LLP
Barbara M. Harding
David Mendelson
Brian T. Stansbury
Amanda C. Basta
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:   (202) 879-5000
Facsimile:   (202) 879-5200

*and*

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

*/s/ James E. O'Neill*

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession

# EXHIBIT A

Sht 2 of 2

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Barbara Mack Harding
To Call Writer Directly:
202 879-5081
bharding@kirkland.com

202 879-5000

www.kirkland.com

Facsimile:
202 879-5200

Dir. Fax 202 879-5200

February 6, 2006

**Via First Class Mail**

Re: W.R. Grace Bankruptcy

Dear Counsel/Claimants:

Enclosed please find the Amended Case Management Order for the Estimation of Asbestos Personal Injury Liabilities that was signed by the United States Bankruptcy Court for the District of Delaware on January 31, 2006 and entered on February 2, 2006.

Please note that per the Court's December 21, 2005 order, all persons holding an Asbestos PI Pre-Petition Litigation Claim against W.R. Grace are granted an additional 60 days to complete and return the W.R. Grace Personal Injury Questionnaire ("Questionnaire"). The new deadline for completing and returning the Questionnaire is **March 13, 2006**. Only persons who filed claims against W.R. Grace prior to April 2, 2001, and who have not entered into an enforceable settlement agreement with W.R. Grace must complete the Questionnaire.

Further, per the Court's previous rulings and instructions, please note the following concerning completion of the Questionnaire:

- All persons who complete the Questionnaire must answer all questions asked as completely and accurately as possible. *See* Questionnaire at i. Specifically, questions must not be answered by means of attaching documents. While documentation supporting a person's claims is required, Questionnaire at ii-iv, supporting documentation may not be submitted in lieu of answering the questions contained in the Questionnaire.

- For those claimants who are represented by counsel, the Questionnaire must be signed by both the claimant and his or her attorney. Questionnaire at iv. Paralegals or other support staff may not sign the Questionnaire on behalf of the attorney of record. *See id.*

- The Court ruled on objections to the Questionnaire's content at the July 19, 2005 and August 29, 2005 omnibus hearings. Those rulings are reflected in the contents of the Questionnaire, which consist of the questions that have been deemed by the Court to be relevant and non-burdensome.

Chicago        London        Los Angeles        New York        San Francisco