## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., et al.,<br><br>Debtors. | Chapter 11<br>Case No. 01-01139 (JKF)<br>(Jointly Administered)<br><br>**Claim Nos.: 6945 and 6948**<br>**Hearing Date:  September 25, 2006**<br>**Response Deadline: September 1, 2006** |

---

## SUPPLEMENTAL BRIEF OF THE PRUDENTIAL INSURANCE COMPANY OF AMERICA AS TO (I) ISSUE PRECLUSION OF DEBTORS' CLAIMS OBJECTIONS AND (II) APPLICABLE CHOICE OF LAW

JASPAN SCHLESINGER HOFFMAN LLP
913 North Market Street, 12th Floor
Wilmington, DE  19801
Tel: (302) 351-8000
Fax: (302) 351-8010
Email: lpolleck@jshllp-de.com

 and -

RIKER, DANZIG, SCHERER, HYLAND
   & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
P.O. Box 1981
Morristown, New Jersey 07962-1981
(973) 538-0800

Co-counsel for The Prudential Insurance Company of America

Date of Filing: September 1, 2006

Prudential Insurance Company of America ("Prudential"), by and through its counsel Jaspan Schlesinger Hoffman LLP and Riker, Danzig, Scherer, Hyland & Perretti LLP, submits this brief in further response to Debtors' objection to Prudential's properly filed Century Center I (Claim No. 6945) and Century Center IV (Claim No. 6948) property damage claims (collectively, the "Century Center Claims") and hereby states as follows:

## PRELIMINARY STATEMENT

Prudential has timely filed proofs of claim in this bankruptcy case in connection with Prudential's prepetition asbestos property damage litigation against the Debtors, pending but stayed in the District of New Jersey.

The Debtors do not contest that Prudential's proofs of claims were timely filed with regard to the Bar Date Order. The issue now before the Court is whether Prudential timely asserted its Century Center Claims in the prepetition litigation. Debtors entire argument is premised upon its assertion that Georgia's statute of limitations applies to these two claims and that, under Georgia law, no "discovery rule" is applicable. This argument fails for three reasons.

First, in prepetition litigation, the District Court for the District of New Jersey determined that New Jersey's statute of limitations applies to these claims. The doctrine of issue preclusion bars the Debtors from re-litigating this issue. As part of the prepetition litigation, Debtors moved for summary judgment seeking dismissal of Prudential's claims on grounds that its claims were barred by the applicable statute of limitations. That motion was denied. In determining whether Prudential timely asserted its prepetition litigation in the District of New Jersey, the District Court performed a

review of the conflict of law principles of the forum state to determine which state's statute of limitations would apply to Prudential's claims. The District Court entered a detailed and well-reasoned written opinion determining that the statute of limitations of New Jersey, and not that of any other state, applies to Prudential's claims. The doctrine of issue preclusion bars the Debtors from re-litigating this issue because the same issue has already been litigated and decided, as recorded by the decision of the District Court. Thus, the statute of limitations of New Jersey applies to Prudential's Century Center Claims.

Second, even if this Court revisited the issue of what statute of limitations should apply in analyzing the timeliness of Prudential's claims related to two buildings, this Court should come to the same conclusion as the District Court– that the New Jersey statute of limitations applies to Prudential's claims. Because the appropriate inquiry is whether Prudential timely filed its Century Center Claims in the prepetition litigation, this Court should use New Jersey choice of law as the forum of the litigation. Applying New Jersey choice of law rules, this Court should conclude, as the District Court did, that New Jersey's statute of limitations applies.

Third, should this Court apply Delaware's choice of law rules, the statute of limitations of either New Jersey or Delaware should apply. Following Delaware Supreme Court precedent, Delaware's borrowing statute should not be applied here. Rather, this Court should apply the law of the state where the cause of action arose, New Jersey. In the alternative, if Delaware's borrowing statute is applied, Delaware's statute of limitations should apply because: (i) Prudential is a resident of Delaware for purposes of the borrowing state; and (ii) Prudential's cause of action arose in New Jersey.

Given the foregoing, the Debtors' objections to the Century Center Claims should be overruled.

## STATEMENT OF FACTS

1.      On October 20, 1987, Prudential filed a complaint against W.R. Grace & Co.-Conn. (referred to herein as "W.R. Grace") and other asbestos manufacturers in the United States District Court for the District of New Jersey (the "District Court") captioned The Prudential Insurance Company of America, et al. v. United States Gypsum, et al., Civil Action Nos. 87-4227, 87-4238 (the "District Court Litigation"). Through the District Court Litigation, Prudential asserted several causes of action against the defendants including, but not limited to, New Jersey common law causes of action for product liability, negligence, breach of express and implied warranties and fraud (the "State Law Claims").  In addition, Prudential asserted claims based on the Federal RICO statute.

2.      The parties subsequently engaged in a three-year period of intense discovery involving the production of tens of thousands of documents and hundreds of interrogatories and depositions focused on the issues of product identification and statutes of limitations.

3.      Commencing in or about 1991, the defendants, including W.R. Grace, filed a series of summary judgment motions to dismiss Prudential's claims on statute of limitations grounds (the "Summary Judgment Motions").  In support of their respective positions, the parties submitted more than thirty (30) briefs and memoranda of law on the statute of limitations issues.  Among other things, W.R. Grace and the other defendants argued on summary judgment that the Georgia statute of limitations should apply to bar

Prudential's claims with respect to the Century Center I and Century Center IV properties. (See District Court Decision (defined below) at 10.)

4.    In a written Opinion and related Order dated June 9, 1994, the District Court, after reviewing the applicable briefing and facts, denied defendants' summary judgment motions and specifically ruled that the New Jersey statute of limitations, and not the statute of limitations of other states including Georgia, applied to Prudential's claims. <u>Prudential Ins. Co. of Am., et al. v. U.S. Gypsum Co., et al.</u>, No. 87-4238 (June 9, 1994) (the "District Court Decision"). A true and correct copy of the District Court Decision and related Order is annexed hereto as Exhibit "A".

5.    In determining that the New Jersey statute of limitations, and not the statute of limitations of other states including Georgia, applied to Prudential's claims, the Court stated as follows:

> The threshold inquiry is into (sic) what state's law should govern.
>
> . . .
>
> The defendants contend that the applicable statute of limitations is the statute of the state in which each affected building is located. Thus, for example, Prudential's claim regarding a building in Wisconsin is governed by Wisconsin law. And so on. In defendants' view, these statutes mandate that all of Prudential's claims be dismissed. Prudential responds by arguing that New Jersey's fairly lengthy statute of limitations applies to all of its state law claims.
>
> . . .
>
> [T]here is essentially a presumption [under New Jersey law] that [New Jersey's] statute of limitations applies, which is based on New Jersey's substantial interest in compensating its domiciliaries. . . . At any rate, this is not a case where the plaintiff's only connection to New Jersey is the fact that it is domiciled in New Jersey. . . . [T]he defendants have some contacts with New Jersey [and] many of the corporate financial decisions for which Prudential seeks compensation took place in New Jersey.
>
> . . .

> Thus, I conclude that because plaintiff Prudential is a New Jersey domiciliary whose primary place of business is in New Jersey, the New Jersey Supreme Court would be persuaded by its interest in compensating its domiciliary to apply its own statute of limitations in this case.

(District Court Decision at 10-16 (emphasis added).)  As a result, the District Court ruled that the statute of limitations of New Jersey, and not the statute of limitations of Georgia, applies to Prudential's claims.

6.    Having received a significant adverse ruling, the defendants, including W.R. Grace, filed a motion seeking to certify for interlocutory appellate review the question of what state's statute of limitations should apply to Prudential's claims. Prudential Ins. Co. of Am., et al. v. U.S. Gypsum Co., et al., Docket No. 87-4227, #337. The defendants' motion was denied.  Prudential Ins. Co. of Am., et al. v. U.S. Gypsum Co., et al., Docket No. 87-4227, #340.

7.    In November 1994, in further recognition of the importance of the District Court Decision, the defendants, including W.R. Grace, filed a petition for a writ of mandamus seeking Third Circuit review of the District Court Decision.  That petition was similarly denied.  Prudential Ins. Co. of Am., et al. v. U.S. Gypsum Co., et al., Docket No. 87-4227, #342.

8.    Following the entry of the District Court Decision, the District Court Litigation progressed toward trial, remaining active through April 3, 2001, (the "Petition Date") when the Debtors filed their voluntary petitions for relief commencing these cases before this Court.  Notwithstanding the filing of the Debtors' bankruptcy cases, however,

to date, the District Court Litigation remains pending as to the Debtors, albeit stayed pursuant to 11 U.S.C §362.[1]

9.      On March 24, 2003, Prudential timely filed (8) separate proofs of claim in the approximate aggregate amount of $21,057,000 in connection with asbestos property damage causes of action asserted prepetition in District Court Litigation.

## LEGAL ARGUMENT

I.      **THE DISTRICT COURT HAS ALREADY RULED THAT THE NEW JERSEY STATUTE OF LIMITATIONS APPLIES TO PRUDENTIAL'S CLAIMS; THE DOCTRINE OF ISSUE PRECLUSION BARS THE DEBTORS FROM RELITIGATING THE ISSUE BEFORE THIS COURT**

10.      In a detailed and well-reasoned written opinion, the District Court ruled that the New Jersey statute of limitations applied to adjudication of Prudential's claims against the Debtors.    The Debtors now seek to misuse the bankruptcy process to circumvent that ruling, hoping to relitigate the statute of limitations issue in the Bankruptcy Court.    The doctrine of issue preclusion, however, prohibits the Debtors from using the Bankruptcy Court to evade a valid prior judicial determination and precludes relitigation of the statute of limitations choice of law issue in this Court.

---

[1] The Debtors have incorrectly stated that the District Court Litigation has been dismissed. (See, e.g., Debtors' Supplemental Brief [Docket no. 11727] at 9.) The District Court Litigation has not been dismissed with respect to Prudential's claims against the Debtors. Moreover, the decision in Prudential Ins. Co. of America v. U.S. Gypsum Co., 359 F.3d 226 (3d Cir. 2004), erroneously relied upon by the Debtors in their papers, specifically does not apply to Prudential's claims against the Debtors. See id. at 232, n. 11. Finally, even as to Prudential's claims against other defendants in the District Court Litigation to which the Third Circuit's decision applies, the decision does not in any way affect the substance of Prudential's state law claims against those defendants – which rights remain valid and enforceable – but specifically limits its holding to the substance of Prudential's Federal RICO claims. See id. at 232 & 238.

A.    **The Doctrine of Issue Preclusion**

11.    The doctrine of issue preclusion, or collateral estoppel,[2] prohibits a party

from relitigating issues that have been adjudicated in prior litigation. Grogan v. Garner,

498, U.S. 279, 284-85 n.11 (1991); In re Docteroff, 133 F.3d 210, 214 (3d Cir. 1997); In

re Brown, 951 F.2d 564, 569 (3d Cir. 1991); see also Montana v. United States, 440 U.S.

147, 153 (1979) ("[O]nce an issue is actually and necessarily determined by a court of

competent jurisdiction, that determination is conclusive in subsequent suits . . . ."). The

doctrine derives from the simple principle that later courts should honor the first actual

decision of an issue that has been previously litigated.    Burlington N. R.R. Co. v.

Hyundai Merch. Marine Co., Ltd., 63 F.3d 1227, 1231 (3d Cir. 1995).    The purpose of

the doctrine is to protect litigants from the burden of relitigating an issue with the same

party and to promote judicial economy by preventing needless litigation.    Parklane

Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979).    Use of the doctrine of issue preclusion

"relieves parties of the cost and vexation of multiple lawsuits, conserves judicial

resources, and, by preventing inconsistent decisions, encourages reliance on

adjudication." Kremer v. Chem. Constr. Corp., 456 U.S. 461, 467 (1982) (citing Allen v.

McCurry, 449 U.S. 90 (1980)).

B.    **The Doctrine of Issue Preclusion Applies to Bar the Debtors from
       Relitigating the Issues Decided by the District Court**

12.    The Doctrine of issue preclusion applies to bar the Debtors from

relitigating the statute of limitations choice of law issue in this Court.    The doctrine of

issue preclusion applies equally in bankruptcy proceedings as in other courts.    See

---

[2] While the terms "issue preclusion" and "collateral estoppel" may be used interchangeably, the
Third Circuit has instructed courts to use the term "issue preclusion" to avoid confusion. Gregory
v. Chehi, 843 F. 2d 111 (3d Cir. 1988).

Grogan, 498 U.S. at 284-85 n.11; In re Docteroff, 133 F.3d at 214; In re Brown, 951 F.2d

at 564 (requiring bankruptcy court to afford preclusive effect to issues decided in prior

litigation).    Moreover, bankruptcy courts are required to apply the doctrine of issue

preclusion where an issue has previously been litigated in another forum:

> The bankruptcy court's otherwise broad powers do not
> include the power to reject a party's invocation of collateral
> estoppel on an issue fully and fairly litigated in another
> court.

In re Bugna, 33 F.3d 1054, 1058 (3d Cir. 1994); see also In re Wilson, 116 F.3d 87, 90

(3d Cir. 1997) ("The Bankruptcy Code was not intended to give litigants a second chance

to challenge a [prior] judgment, nor did it intend for the Bankruptcy Court to serve as an

appellate court . . . .") (citing In re Besing, 981 F.2d 1488 (5th Cir. 1993)).    District court

rulings are entitled to substantial deference by bankruptcy courts, particularly where the

facts and circumstances before the bankruptcy court are similar to those presented to the

District Court.    See In re Turner, 326 B.R. 563 (Bankr. W.D. Pa. 2005) (citing In re

Brown, 244 B.R. 62 (Bankr. D.N.J. 2000)).

13.    The Third Circuit has adopted a rather expanded view regarding the

application of issue preclusion. Lynne Carol Fashions, Inc. v. Cranston Print Works Co.,

453 F.2d 1177, 1181 (3d Cir. 1972).    Issue preclusion will apply when: (1) the issue

sought to be precluded is the same as the one involved in the prior litigation, (2) the issue

was actually litigated,  (3) the issue was determined by a valid and final judgment; and

(4) the determination of the issue was essential to the prior judgment.    See Burlington N.

R.R., 63 F.3d at 1231-32; In re Docteroff, 133 F.3d at 214 (citing In re Ross, 602 F,2d

604, 608 (3d Cir. 1979)).  Each of these elements is met here, as discussed below, and, as

a result, the Debtors are barred from relitigating the statute of limitations choice of law

issue in this Court.

### 1.    The Issue Sought to Be Precluded Is the Same Issue Ruled Upon by the District Court

14.     The first prerequisite for issue preclusion, that the issue to be precluded is the same as the one involved in the prior litigation, is clearly met here. The issue before the District Court in 1994 was which state's statute of limitations should apply to Prudential's claims. In its detailed District Court Decision, the District Court ruled that the New Jersey statute of limitations, and not the statute of limitations of Georgia, among other states, would apply to Prudential's claims. The issue now being raised by the Debtors in the Bankruptcy Court is which state's statute of limitations should apply to Prudential's Century Center Claims. The issue is <u>identical</u> to the issue raised before the District Court.

15.     Despite the clarity of the foregoing, the Debtors attempt to confuse the matter by arguing that the issue before the Bankruptcy Court is different than the issue before the District Court because the Bankruptcy Court is a different venue than the District Court. The Third Circuit, however, has squarely dismissed that argument, ruling that where an issue arising in bankruptcy court bears semblance to the issue previously litigated, the differences arising due to the new bankruptcy venue do not prevent issue preclusion:

> Taking [the debtor's] argument to its logical conclusion, collateral estoppel would never apply in bankruptcy because the precise bankruptcy issue would never have been litigated in a court action prior to the filing of the petition in bankruptcy. Such a conclusion defies common sense and reason and is at odds with the Supreme Court's holding in <u>Grogan</u>.

<u>In re Docteroff</u>, 133 F.3d at 215 (citing <u>Grogan v. Garner</u>, 498 U.S. 279 (1991)).

16.     Having dispelled the myth of the Debtors' argument, clearly the issue presented to the Bankruptcy Court, the statute of limitations choice of law, is the same as the issue before the District Court.  The first prerequisite of issue preclusion has been met.

### 2.     The Issue Was Actually Litigated in the District Court

17.     The second prerequisite for issue preclusion, that the issue was actually litigated in the prior litigation, is clearly met here.  The parties to the District Court Litigation, including the Debtors and Prudential, submitted more than thirty (30) briefs and memoranda of law in connection with the District Court's deliberation of the statute of limitations issues.[3]  These filings demonstrate the thoroughness with which the parties actually litigated this issue.  The Debtors simply cannot plausibly now argue that they did not have the opportunity to actually litigate this issue in the District Court Litigation.  Cf. In re Docteroff, 133 F.3d at 215 (finding that the "actually litigated" requirement was satisfied even where debtor had some minimal participation in district court litigation). As a result, the second prerequisite of issue preclusion has been met.

### 3.     The District Court Order Was Final

18.     The third prerequisite for issue preclusion is whether the order from the prior litigation is sufficiently "final" as such term has been defined in the context of issue preclusion.  This is the only prerequisite for which the Debtors can make a colorable argument.  However, while the District Court Decision was not a final judgment for

---

[3] Due to the volume of documents submitted in support of and in opposition to the motions addressing the statutes of limitations issues in the District Court Litigation, Prudential is not submitting copies of these documents with this brief, but will provide these documents upon the request of the Court.

purposes of appeal, it is sufficiently "final" to have issue preclusive effect under Third Circuit jurisprudence.

19.    "Finality" of a prior decision for purposes of issue preclusion is determined by evaluating whether the parties were fully heard and whether a reasoned opinion was filed.  In re Brown, 951 F. 2d at 570.  "Finality" is a more "pliant" concept for purposes of issue preclusion than it is in other legal contexts.  Id. at 569 (quoting Dyundul v. Dyundul, 620 F.2d 409, 412 (3d Cir. 1980)).  Among other things, a "final" decision for purposes of issue preclusion need not reach the maturity of being appealable. See In re Brown, 951 F.2d at 569 ("In this case, the order of the state court . . . was not final for the purposes of appeal, but that does not deny it preclusive effect in the bankruptcy court."); In re Docteroff, 63 F.3d at 1233 ("[T]he concept of finality for purposes of 'collateral estoppel does not require the entry of a judgment final in the sense of being appealable.'") (quoting In re Brown, 951 F.2d 564); Burlington Northern, 63 F.3d at 1233 (holding that the fact that the prior decision was not appealable is of little consequence and concluding that the denial of summary judgment in the prior case and issues determined therewith were sufficiently final to be given issue preclusive effect); In re Pennsylvania Truck Lines, Inc., Bankr. No. 92-12370DAS, 1994 WL 247348, at *1 (Bankr. E.D. Pa. June 1, 1994) (stating that the pending status of an appeal from a federal court judgment does not affect the finality of the judgment for preclusion purposes, particularly in the area of bankruptcy claim litigation).  Rather, "for purposes of issue preclusion . . . 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect."  In re Brown 951 F.2d at 569 (emphasis added) (quoting Restatement (Second) of Judgments §13 (1982)).

20.     As a result of the foregoing, courts have given preclusive effect to, among

other things, interlocutory orders including orders denying summary judgment. See, e.g.,

Burlington Northern, 63 F.3d at 1233 n.8 (determining that an interlocutory order

denying summary judgment precludes relitigation in a subsequent litigation as to issues

decided in the order); In re G-I Holding, Inc., 02-CV-3082(WGB), 2003 WL 22273256

(D.N.J. Aug. 8, 2003) (holding that the United States Tax Court's prior determinations as

to statute of limitations precludes re-litigation of issue in bankruptcy); see also 18 Fed.

Prac. & Proc. Juris. 2d § 4418 ("A wide variety of interlocutory or other orders also may

qualify for direct estoppel.").

21.     Moreover, "finality" for purposes of issue preclusion also does not require

that the prior litigation be complete. See In re Docteroff, 133 F.3d at 216. The Third

Circuit follows the Restatement (Second) of Judgments in advising that an issue decided

should be granted preclusive effect in a subsequent litigation even while the prior action

remains pending:

> [I]nsistence on a final and fully appealed judgment can
> involve needless duplication and expenses to decide the
> same issue . . . in a second action while the first action is
> brought to a complete finish.  [T]he wisest course is to
> regard the prior decision as final for the purpose of issue
> preclusion without awaiting the end judgment.

In re Brown, 951 F.2d at 569.  Moreover, a debtor, in particular, is prohibited from

arguing that a pre-petition order lacks "finality" where debtor's bankruptcy filing

prevented conclusion of the prior litigation:

> [Debtor], himself—and no one else—prevented the
> judgment from becoming final.  By filing a Chapter 11
> bankruptcy petition and invoking the automatic stay, he
> prevented the district court from holding a trial [to liquidate
> the amount of the claim] and entering final judgment.
> Permitting him to relitigate the issue in light of his original

> rejection of a full and fair opportunity to litigate would
> implicitly endorse his abuse of judicial process.

In re Docteroff, 133 F.3d at 216; see also In re 2435 Plainfield Avenue, 223 B.R. 440

(Bankr. D.N.J. 1998) (affording preclusive effect to issues decided in prior litigation,

where debtor's bankruptcy filing stayed consideration of appeal); In re G-I Holdings,

2003 WL 22273256 at *6. As a result of the foregoing, "finality" for purposes of issue

preclusion is a fairly lenient standard.

22.     In this case, the District Court Decision should be deemed to meet the

requirement of "finality" for purposes of issue preclusion. The District Court considered

all of the relevant issues, including the voluminous submissions and arguments of the

parties, including W.R. Grace. Cf. In re Brown, 951 F.2d at 570 (finding of "finality" for

purposes of issue preclusion where prior court opinion reflected an appreciation of the

relevant facts and familiarity with applicable law). The District Court wrote a thorough

and thoughtful fifty-three (53) page opinion in which the District Court carefully

analyzed the issue of which state's statute of limitations should apply to Prudential's

claims. Cf. In re Docteroff, 133 F.3d at 216 (considering an issue "finally" decided

where prior court wrote a thorough and thoughtful opinion on the issue). Nowhere does

the text of the District Court Decision state that the opinion is not final. (See, generally,

District Court Decision). Moreover, W.R. Grace, among other defendants, recognizing

that the District Court intended the District Court Decision to conclusively bind the

parties as to the choice of statute of limitations issue, made several unsuccessful attempts

to have the District Court Decision overturned, including by way of motion seeking to

certify the choice of law issues for interlocutory appellate review, Prudential Ins. Co. of

Am., et al. v. U.S. Gypsum Co., et al., Docket No. 87-4227, #340, and petition for a writ

13

of mandamus seeking Third Circuit review.   Prudential Ins. Co. of Am., et al. v. U.S.

Gypsum Co., et al., Docket No. 87-4227, #342.   Upon defendants' failure to have the

District Court Decision overruled, the parties abided by the statute of limitations choice

of law determination throughout the next seven (7) years of the litigation.   Furthermore,

nothing has changed with respect to the District Court's determination of which state's

statute of limitations applies to Prudential's claims – the District Court's statute of

limitations choice of law determination remains law of the case of the District Court

Litigation, stayed but pending against the Debtors even today.   The only change has been

the bankruptcy filing of the Debtors, but a bankruptcy filing will not relieve application

of the doctrine of issue preclusion.   See In re Docteroff, 133 F.3d at 216.   All of the

factors here point to the conclusion that the District Court Decision should be deemed to

be "final" in all ways relevant for purposes of issue preclusion.

23.    In addition to the foregoing, as further guidance for this Court, a similarly-

situated court facing similar facts has ruled that issue preclusion bars debtors from

relitigation of an issue previously decided.   See In re G-I Holdings, Inc., 2003 WL

22273256 (D.N.J. 2003), a copy of which opinion is annexed hereto as Exhibit "B".   In

that case, the debtors, having filed for bankruptcy protection against mounting asbestos

liabilities, sought to relitigate statute of limitations issues previously decided as part of a

detailed prepetition federal court opinion denying a summary judgment motion brought

by the debtors.   See id. at *1.   Citing much of the applicable issue preclusion caselaw

discussed above, the court in that case ruled that the prior federal court decision was

final, barring the debtors from relitigating a statute of limitations issue, even though (i)

the prior determinations on the statute of limitations issues were contained in an opinion

denying summary judgment, (ii) the debtors were unable to obtain substantive

interlocutory review of the prior opinion, and (iii) the prior litigation, which was still actively proceeding as of the Petition Date, was dismissed by operation of law upon the filing of the debtors' bankruptcy. See id. The court ruled that the Debtors were barred by issue preclusion from relitigating the statute of limitations issues. See id. at *7. The G-I decision gives credence to the Third Circuit's "expanded view" regarding the application of issue preclusion, Lynne Carol Fashions, Inc., 453 F.2d at 1181, as well as the "pliant" concept of finality, In re Brown, 951 F.2d at 569. By way of comparison to the current case, the District Court Decision here remains a valid and binding conclusion of a stayed litigation that has not been dismissed.

24.     In light of the foregoing, the District Court's Decision on the issue of statute of limitations choice of law meets the "finality" requirement for purposes of issue preclusion as defined by the Third Circuit.

### 4.     The Statute of Limitations Choice of Law Determination Was an Essential Element of the District Court Decision

25.     The fourth element of issue preclusion, that the determination of the issue in the prior litigation was essential to the prior decision, is also met here. The District Court Decision itself refers to the determination of the statute of limitations choice of law issue as the "threshold inquiry," which "analysis is necessary" to the District Court Decision. (District Court Decision at 10.)   Moreover where, as here, the prior consideration of the issue was raised by the party now seeking to relitigate, such party cannot contend that the issue was not essential to the prior case. See In re G-I Holdings, Inc., 2003 WL 22273256 at *3 ("Having requested the [prior court] to grant summary judgment on the statute of limitations issues, Debtors could hardly argue that they did not recognize them as important."). Because the District Court and the Debtors, among

others, deemed the statute of limitations choice of law issues as essential, there cannot be any argument that the fourth element for issue preclusion is met here.

**C.    Conclusion: Issue Preclusion Applies to Bar the Debtors from Relitigating the Statute of Limitation Choice of Law Issue**

26.    In summary of all of the foregoing, because the four elements of issue preclusion have been met, and because the Third Circuit requires that bankruptcy courts apply issue preclusion where such elements are met, see In re Bugna, 33 F.3d at 1058 ("The bankruptcy court's otherwise broad powers do not include the power to reject a party's invocation of collateral estoppel on an issue fully and fairly litigated in another court."), issue preclusion applies to bar the Debtors from relitigating the statute of limitations choice of law issue in this Court. As a result, the Debtors are barred from asserting that a Georgia statute of limitations applies to Prudential's Century Center Claims, and the Debtors' objection to the Century Center Claims should be overruled.

**II.    ANALYSIS UNDER THE APPLICABLE CHOICE OF LAW ISSUES WOULD LEAD TO THE SAME RESULT – THE STATUTE OF LIMITATIONS OF NEW JERSEY APPLIES TO PRUDENTIAL'S CLAIMS**

27.    Pursuant to the doctrine of issue preclusion, the choice of law issues with respect to the timeliness of Prudential's claims may not be revisited here. Nevertheless, even considering such issues on an academic basis, analysis of the applicable choice of law issues would lead to the same result – that the statute of limitations of New Jersey applies to Prudential's claims.

28.    An analysis of the applicable choice of law doctrine, as already performed by the District Court, reveals why the New Jersey statute of limitations applies to Prudential's claims.

A.    **The Issue: Did Prudential Timely Assert Its Claims in the Prepetition Litigation**

29.    Central to finding the right answer to a question is, as an initial matter, getting the question right. The Debtors have argued that, under the applicable statute of limitations, Prudential did not timely assert its claims in the prepetition litigation against W.R. Grace. (See Debtors' Reply in Support of Their Fifteenth Omnibus Objection (Substantive) to Asbestos Property Damage Claims [Doc. No. 11428] at 7 (the "Debtors' Reply Brief").) As a result, absent the bar of issue preclusion, the question for this Court to answer is whether Prudential timely filed the District Court Litigation against W.R. Grace.

30.    By way of comparison, the issue is _not_ whether Prudential timely asserted its proofs of claim in the bankruptcy case. Prudential filed its proofs of claims on March 24, 2003, in compliance with the March 31, 2003 deadline established pursuant to the Order as to All Non-Asbestos Claims, Asbestos Property Damage Claims, and Medical Monitoring Claims: (I) Establishing Bar Date, (II) Approving Proof of Claim Forms, and (III) Approving Notice Program, dated April 22, 2002 (the "Bar Date Order"). Consequently, Prudential's proofs of claim, asserting a right to payment against the Debtors in connection with the claims asserted in the District Court Litigation, were timely filed in this case.[4]

---

[4] The Debtors' Reply Brief insinuates that Prudential should have filed its proofs of claim in this bankruptcy case in or before 1977. (See Debtors' Reply Brief at 7.) The Debtors' argument makes no sense. Debtors themselves did not commence these cases until 2001, rendering impossible an earlier proof of claim filing. Accordingly , Prudential took the proper course of action in timely filing prepetition litigation against W.R. Grace and asserting a right to payment against the Debtors via Prudential's timely filed proofs of claim.

31.     As a result of the foregoing, absent the bar of issue preclusion, this Court would next look at the proper legal standard for determining whether Prudential timely filed the District Court Litigation against W.R. Grace.

**B.      Statute of Limitations Choice of Law: New Jersey Statute of Limitations Applies to Prudential's Claims**

32.     In determining whether Prudential timely asserted its litigation in the District of New Jersey, the District Court properly applied the law of the forum state. See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487 (1941).  As a result, the choice of law provisions of New Jersey governed the analysis of the statute of limitations issues affecting the District Court Litigation, and also apply here.  See Henry v. Richardson-Merrell, Inc., 508 F.2d 28, 31 (3d Cir. 1975) (holding that New Jersey choice of law doctrine governs the choice of law in the District of New Jersey); District Court Decision at 10 (citing Klaxon, 313 U.S. 487) (stating the same); In re Professional Investors Ins. Group, Inc., 232 B.R. 870, 883 (Bankr. N.D. Texas 1999) (applying choice of law doctrine of the forum of the prepetition litigation); Van Dusen v. Barrack, 376 U.S. 612, 639 (1964) (requiring federal courts to apply the law of the original forum state); Davis v. Norris, 34 Fed. Appx. 658, 665 (10th Cir. 2002) ("[W]e must look to the choice of law rules of that State in which the suit was originally filed . . . ."); In re Segre's Iron Works, Inc., 258 B.R. 547, 550-52 (Bankr. D. Conn. 2001) (applying the substantive law of the forum of the prepetition litigation).

33.     In determining choice of law questions relating to statute of limitations, New Jersey courts apply the statute of limitations of New Jersey where the plaintiff is a domiciliary of New Jersey.  See, e.g., Draper v. Airco, Inc., 580 F.2d 91 (3d Cir. 1978); Warner v. Auberge Gray Rocks, Inc., 827 F.2d 938, 941 (3d Cir. 1987); In re Reach,

McClinton & Co., Inc., 102 B.R. 392, 399 (D.N.J. 1989); see also, District Court
Decision at 12-15. For purposes of determining where a corporation is domiciled, New
Jersey courts look to the state of incorporation. See State v. Garford Trucking, 4 N.J.
346, 351 (N.J. 1950); In re Reach, 102 B.R. at 399.

34.     In this case, Prudential is a domiciliary of New Jersey as it was
incorporated in New Jersey and, moreover, has its principal place of business in Newark,
New Jersey. Because Prudential, the plaintiff in the District Court Litigation, was a
domiciliary of New Jersey, the state courts of New Jersey would apply the statute of
limitations of New Jersey to Prudential's claims. As a result, pursuant to Klaxon, 313
U.S. 487, the District Court properly ruled that the statute of limitations of New Jersey
must apply to Prudential's state law claims asserted in federal court because the courts of
the forum state would apply the same:

> Thus, I conclude that because plaintiff Prudential is a New
> Jersey domiciliary whose primary place of business is in
> New Jersey, the New Jersey Supreme Court would be
> persuaded by its interest in compensating its domiciliary to
> apply its own statute of limitations in this case

District Court Decision at 16.[5]  In reviewing this same issue, the Bankruptcy Court
should come to the same conclusion for the same reasons – the statute of limitations of
New Jersey applies to Prudential's claims.

### C.    Debtors' Arguments Seeking to Overrule the District Court Decision Violate Applicable Legal Precepts

35.     Following the binding District Court Decision, W.R. Grace made

---

[5] The Debtors made numerous alternative arguments to the District Court as to why the New
Jersey statute of limitations should not apply to Prudential's claims. The District Court gave due
consideration to each of the Debtors' arguments, but dismissed all of them. See District Court
Decision at 9-16.

numerous attempts to have the District Court Decision overturned, including efforts to have the decision reversed on appeal and even a writ of mandamus seeking Third Circuit review. All of these efforts failed. Now, twelve (12) years after the District Court Decision was entered, the Debtors seek to relitigate the issue in this Bankruptcy Court. This Court should reject the Debtors' efforts and should refuse to overrule a valid <u>Klaxon</u>-based determination made by the District Court.

36.    District court rulings are entitled to substantial deference by bankruptcy courts, particularly where the facts and circumstances before the bankruptcy court are similar to those presented to the district court. <u>See</u> <u>In re Turner</u>, 326 B.R. 563 (Bankr. W.D. Pa. 2005) (citing <u>In re Brown</u>, 244 B.R. 62 (Bankr. D.N.J. 2000)).

37.    Moreover, there is no reason for this Court to substitute its own analysis for the District Court's sound reasoning. The Debtors have not presented any evidence to this Court that the underlying facts considered by the District Court have changed. The District Court was particularly well-positioned to rule on the issue, given the volumes of briefing and argument on the issue provided by the parties, the scope of the factual evidence presented, and the District Court's particular knowledge of the law of its forum state.

38.    Furthermore, the Debtors' position seeks a result in violation of the doctrine emanating from the <u>Erie</u> line of cases. <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64 (1938). Under the <u>Erie</u> line of cases including <u>Klaxon</u>, regardless of which federal court ultimately decides the issues in a case, such court must analyze the issues consistent with the law of the state in which the federal case was first filed. <u>See</u> <u>Van Dusen</u>, 376 U.S. at 638-639; <u>see also</u> <u>In re Gaston & Snow</u>, 243 F.3d 599, 607 (2d Cir. 2001) ("It would be anomalous to have the same property interest governed by the laws of one state in federal

diversity proceedings and by the laws of another state where a federal court is sitting in bankruptcy.") (quoting In re Merritt Dredging Co., 839 F.2d 203, 206 (4th Cir. 1988)). Otherwise, defendants and debtors might seek to have the issues adjudicated in a different, more favorable forum, violating the plaintiff's privilege in choice of litigation venue and encouraging the ill of forum-shopping, both of which consequences run contrary to the Erie doctrine.  See Ferens v. John Deere Co., 494 U.S. 516, 523-28 (1990); Van Dusen, 376 U.S. at 638-639; In re SMEC, Inc., 161 B.R. 953, 956 (Bankr. M.D. Tenn. 1993).  As a result, in this case, the Bankruptcy Court should apply the same substantive law as the District Court in New Jersey would apply.

39.    Finally, the Debtors' position would cause an alteration of the state law rights underlying Prudential's claims in violation of applicable bankruptcy law.  It is well-settled that the viability of claims against a bankruptcy estate is determined by reference to the applicable non-bankruptcy law related to such claims.  See Raleigh, 530 U.S. at 20.  The enforceability of a pre-petition claim against a bankruptcy estate is determined on the strength of the claim's factual and legal underpinnings as they existed immediately prior to the commencement of the case.  See In re Segre's, 258 B.R. at 550. Where a claimant has filed litigation against a debtor prior to the bankruptcy filing, the prepetition litigation will define the non-bankruptcy law rights of the claimant.  See, e.g., In re Professional Investors, 232 B.R. at 883-85; In re Segre's, 258 B.R. at 551-52.  In this case, on the eve of the Debtors' bankruptcy filing, Prudential's non-bankruptcy law rights included the rights asserted, and the adjudications made, in the District Court Litigation.  The Debtors had already received an adverse ruling that the statute of limitations of New Jersey applied to Prudential's claims.  (See District Court Decision at 16.)  The Debtors may not now effectuate a change in those non-bankruptcy law rights

merely because the Debtors chose to file their bankruptcy case in a different forum. <u>See</u> <u>In re SMEC</u>, 161 B.R. at 956 ("A claim which was valid prior to bankruptcy should not be disallowed solely because the state law of the state in which the debtor has chosen to reside and filed bankruptcy . . . would not allow recovery.") (<u>quoting</u> <u>In re Ovetsky</u>, 100 B. R. 115, 118 (Bankr. N. D. Georgia 1989); <u>In re Segre's</u>, 258 B.R. at 552 ("It is fundamentally unfair, and subversive of uniformity, for a debtor to be permitted to defeat a creditor's claim – which was timely prosecuted in, and under the law of, the state with the greatest interest in the dispute – through the simple maneuver of filing a bankruptcy case in a different state where a less generous statute of limitation arguably controls."). The Debtors are not entitled to new defenses merely because of the bankruptcy filing. <u>See</u> <u>Raleigh</u>, 530 U.S. at 20 ("[T]here is no reason why [the state law] interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.") (<u>quoting</u> <u>Butner v. United States</u>, 440 U.S. 48, 55 (1979)); <u>In re</u> <u>Combustion Engineering, Inc.</u> 391 F.3d 190, 245 (3d Cir. 2005) ("Ultimately, the effect of § 502 is to provide a bankruptcy trustee with the same rights and defenses to claims as held by the debtor prior to bankruptcy."). As a result, to the extent that the Bankruptcy Court adjudicates Prudential's claims pursuant to 11 U.S.C. § 502, it must do so consistent with the applicable non-bankruptcy law existing immediately prior to the filing of the Debtors' cases – including the legal determination made by the District Court that the statute of limitations of New Jersey applies to Prudential's claims.

40.    As a result of all of the foregoing, the New Jersey statute of limitations applies to the adjudication of Prudential's claims in this bankruptcy case. Because the Debtors have not articulated a statute of limitations objection under the applicable law, the Debtors' statute of limitations objections to the Century Center Claims should be

overruled.

**III.    APPLYING DELAWARE CHOICE OF LAW STANDARDS, THE NEW JERSEY OR DELAWARE STATUTE OF LIMITATIONS APPLIES TO PRUDENTIAL'S CENTURY CENTER CLAIMS**

41.    Even if this Court (i) disregards the valid, binding District Court Decision and (ii) overlooks the choice of law analysis performed by the District Court pursuant to Klaxon, the Debtors' objection to the Century Center claims still fails because, under Delaware's choice of law rules, either New Jersey's or Delaware's statute of limitations will apply.  This is because under applicable Delaware law as recently announced by the Delaware Supreme Court, Delaware will not allow a defending party, who has chosen the action's forum, to use Delaware's borrowing statute to defeat claims that otherwise would be valid in another jurisdiction.  Saudi Basic Industries Corp. v. Mobil Yanbu Petrochemical Co., Inc., 866 A. 2d 1, 16-18 (Del. 2005).  Alternatively, application of Delaware's borrowing statute would result in selection of Delaware's statue of limitations, not that of Georgia.

**A.    Delaware's Borrowing Statute Is Inapplicable to the Facts of the Present Case**

42.    As a threshold matter, this Court must decide whether the borrowing statute even applies.  Saudi Basic, 866 A.2d at 16-18  (borrowing statute cannot be rigidly applied without consideration of the statute's purpose).  Here, it will not.  Application of the borrowing statute in this case would promote forum shopping; a purpose that is antithetical to that statute.  Id.; Pack v. Beech Aircraft Corp., 132 A.2d 54, 58 (Del. 1957); Dymond v. National Broadcasting Co., 559 F. Supp. 734 (D. Del. 1983).  Where the defending party has chosen the forum, the borrowing statue is inapplicable and Delaware courts will apply the law of the state/jurisdiction in which the cause of action

arose. Saudi Basic, 866 A.2d at 18.

43.     Under Delaware law, disputes regarding choice of statutes of limitations are governed by its "borrowing statute, " 10 Del. C. §8121. That statute, like those of most states was, enacted as a measure to prevent forum shopping by plaintiffs. Specifically, the statute prevents plaintiffs seeking redress for injuries that arose outside of the state, from taking advantage of Delaware's longer statute of limitations. Saudi Basic, 866 A. 2d at 16-18. To that end, under the borrowing statute, Delaware courts must apply the shorter of its statute of limitations or the statute of limitations where the cause of action arose. 10 Del. C. §8121.

44.     In its usual application, the borrowing statute prevents a plaintiff from using Delaware's statute of limitations to adjudicate a claim that was otherwise "stale." In the same vein, however, the Delaware Supreme Court has held that parties cannot use their choice of forum to obtain a limitations defense that would not otherwise have been available. Saudi Basic, 866 A.2d at 16. In Saudi Basic, the plaintiff, who was facing potential liability for overcharging the defendant, took pre-emptive action by filing a complaint in Delaware seeking a declaratory judgment that, under the borrowing statute, any claims that could be asserted by defendant, Exxon Mobil, were barred by Delaware's three-year statute of limitations. Unquestionably, literal application of the borrowing statute in Saudi Basic would have resulted in Delaware's statute of limitations applying because the jurisdiction where the cause of action arose had no applicable statute of limitations. Nevertheless, the Delaware Supreme Court affirmed the trial court's refusal to simply mechanically apply the borrowing statute without first considering the purpose for the statute itself—the prevention of forum shopping. The trial court had stated:

> To apply the borrowing statute and [conclude] that
> Delaware's statute of limitations would apply would
> basically turn the borrowing statute on its head for the
> purpose for which it was enacted.
> …
> Our legislature intended to prevent people out of state,
> foreign plaintiffs, from coming into this forum and getting
> the benefit of a statute of limitations that really ought not to
> apply given the fact that the substantive law is interwoven
> with the procedural right.

Id. at 15.

45.     The Delaware Supreme Court adopted the trial court's ruling that the

borrowing statute does not apply, stating that the "literal construction of the borrowing

statute, if adopted, would subvert the statute's underlying purpose." Id. The Delaware

Supreme Court also affirmed the trial court's decision to apply the law of the jurisdiction

where the claim arose. Id.

46.     Federal courts, relying on the holding in Saudi Basic, similarly eschew

literal application of the Delaware borrowing statute where doing so would be run

contrary to the statute's intended purpose:

> A literal application of the statute cannot be countenanced
> when it would circumvent the purpose of the statute, as is
> the case when a plaintiff can be seen to be taking advantage
> of the shorter Delaware statue of limitations to deprive a
> defendant of claims he would otherwise have.

B. Lewis Productions, Inc. v. Bean, 2005 WL 273298, at *2 (D. Del. 2005).

47.     Like the plaintiffs in Saudi Basic and B. Lewis, the Debtors are attempting

to use their choice of the Delaware forum and the Delaware borrowing statue to assert a

defense that was not previously available.  At the time Debtors filed their petition for

bankruptcy, the District Court litigation had been pending for more than thirteen years

and was awaiting trial.  As part of that action, the District Court had determined that New

Jersey's statute of limitations governed Prudential's claims. (See District Court Decision at 16.)

48.     In what is, in essence, a red herring, Debtors argue that Prudential is somehow "forum shopping" and, therefore, the borrowing statute should be applied. This argument is contradicted by two essential facts of the present case. First, the Debtors, not Prudential, chose the Delaware forum by filing a bankruptcy petition. Prudential had no choice but to file its proofs of claim in the forum that the Debtors chose. Second, perhaps more importantly, the District Court Litigation was venued in New Jersey and was litigated for more than thirteen years without a successful challenge to Prudential's choice of forum.

49.     Debtors seek to usurp Prudential's original choice of forum and use its bankruptcy case to eliminate valid claims. It would be an offense to the fundamental purpose of Delaware's borrowing statute to allow Debtors to ignore the pre-petition litigation and apply the borrowing statute to bar Prudential's claims. Accordingly, the borrowing statute should not be applied and New Jersey's statute of limitations should apply.

**B.     Under a Literal Application of the Borrowing Statute, Delaware's Statute of Limitations Should Apply**

50.     Even applying the borrowing statute, the Delaware statute of limitations would apply to Prudential's claims and not the statute of limitations of Georgia upon which the Debtors' objection relies.

1.    **Prudential is a "Resident" of Delaware for Purposes of the Borrowing Statute**

51.    Applying the borrowing statute, the Delaware statute of limitations would apply to Prudential's claims because, for purpose of the borrowing statute, Prudential is considered a resident of Delaware.

52.    Under the express language of the Delaware borrowing statute:

> Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State or the time limited by the law of the state or country where the cause of action arose. Where the cause of action originally accrued in favor of a person who at the time of such accrual was a resident of this State, the time limited by the law of this state shall apply.

10 Del C. §8121.

53.    Long standing Delaware jurisprudence has established that a corporation's "residence" for purposes of service of process and statutes of limitations does not necessarily mean the corporation's state of incorporation or place of domicile. Rather, a foreign corporation, by appointing an agent for service of process in Delaware, is deemed a resident for purpose of the statute of limitations. Red Man's Fraternal Acc. Ass'n of America v. Merritt, 117 A. 284, 285-86 (Del Super. 1921); McDaniel v. Asbestos Corp. of America, 1989 WL 70973, *3-4 (Del. Super. 1989). For example, the court in Red Man's held that when a foreign insurer has appointed the Insurance Commissioner as its agent for service of process and is authorized to do business in Delaware, those facts "entitle[ ] it to all advantages of pleading to which a citizen of the state would be entitled to, including the plea of statute of limitations." Red Man's, 117 A. at 286. Indeed, as a prerequisite to being authorized to transact insurance in Delaware, 18 Del. C. §524

27

requires each insurer to appoint the Commissioner of Insurance as its agent for service of process.

54.    Prudential has appointed an agent for service of process in Delaware and is authorized to do business as an insurer in Delaware.  As a result, for purposes of the borrowing statute, Prudential is considered a resident of Delaware.    Accordingly, Debtors' argument that the borrowing statute requires application of Georgia law fails.

### 2.    Prudential's Cause of Action Arose in New Jersey

55.    Even if Prudential is not deemed to be a resident of Delaware, applying the borrowing statute, this Court would be forced to choose the shorter of Delaware's three year statute of limitation and New Jersey's six year statute of limitations.  This is because New Jersey, not Georgia, is where Prudential's cause of action arose.  New Jersey is where Prudential's economic injury was sustained and the state with the most significant relationship to the cause of action.

56.    Delaware courts have not clearly established what test they will use to determine where a cause of action arose for purposes of applying the borrowing statute. See e.g. David B. Lilly Co. Inc. v. Fisher, 18 F. 3d 1112, 1117 (3d Cir. 1994); Dymond v. National Broadcasting Company, Inc., 559 F. Supp. 734, 737 (D. Del. 1983). Traditionally, choice of law determinations were made using the "lex loci delicti" test, which considers the location of the injury.  Friday v. Smoot, 211 A.2d 594 (Del. 1965). However, following a national trend toward a more equitable standard, the Delaware Supreme Court adopted the "most significant relationship" test that is set forth in the Restatement (Second) or Conflict of Laws. §145.  Travelers Indemnity Company v. Lake, 594 A. 2d 38 (1991).  In any event, application of both of these standards yields the same result, Prudential's claims arose in New Jersey.

57.     Although the "most significant relationship" test established by the
Restatement (Second) of Conflict of Laws §145 has been adopted for analyzing
substantive choice of law questions, it has not explicitly abandoned the traditional "lex
loci delicti" test.  Under that test, in the case of a negligence tort, the *lex loci* is the place
where the wrong caused the injury or loss, not the place where the wrong occurred.
Autrey v. Chemtrust Industries Corp., 362 F. Supp. 1085, 1090 (D. Del. 1973)("Since the
business losses suffered by all the plaintiffs substantially occurred in Florida, Florida is
the place of the alleged tortious wrongs."); Tew v. Sun Oil Co., 407 A.2d 240, 242 (Del.
Super. Ct. 1979).   The basis for this rule is the recognition that the injury is the last
element necessary for a cause of action to accrue.  See Kaufman v. C.L. McCabe, 603
A.2d 831, 834 (Del. Super. Ct. 1992);  Nardo v. Guido DeAscanis & Sons, 254 A.2d 254
(Del Super. Ct. 1969);  Plumb v. Cottle, 492 F. Supp. 1330, 1337 (D. Del. 1980) (holding
that a cause of action for negligent installation of lightning protection system accrued
upon injury, not when the defective system was installed);  Sack v. Low, 478 F.2d 360,
366 (2d Cir. 1973) (holding that cause of action arises where economic impact is felt,
normally where the plaintiff resides).

58.     Here, Prudential was organized under New Jersey law and has maintained
its corporate headquarters in New Jersey since 1873.  As a result, New Jersey  is where
all of its investment decisions were made.  Moreover, the cost of abating and dealing with
the asbestos (the essence of Prudential's injury in this case) has been and will be borne by
Prudential in New Jersey, where its principal place of business is located and where all
financial decisions are made.  Accordingly, under a *lex loci delicti* analysis, Prudential's
tort causes of action arose in New Jersey.

59.     The choice of New Jersey law is even more compelling under the "most

29

significant relationship test" set forth in the <u>Restatement (Second) of Conflicts of Law</u>

(the "<u>Restatement</u>"), which the Delaware Supreme Court has adopted when analyzing

substantive choice of law for tort claims.    <u>Travelers Indemn. Co. v. Lake</u>, 594 A.2d 38,

40 (Del. 1991).    Under the Restatement test, the law of the state with the "most

significant relationship to the occurrence and the parties" will be applied to determine the

rights of the parties.    <u>Restatement</u> §145(1).    The Restatement test directs that in actions

with contacts relating to multiple states, the significance of the states' relationship to the

tort is determined by evaluating the following policy considerations:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

<u>Id.</u> at §6.

60.    To properly evaluate these policy considerations, the following contacts

should be considered:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

<u>Id.</u> §145.

61.    This test is similar to the test used by the District Court in the District

Court Litigation.    (<u>See</u> District Court Decision at pp. 9-16.)    Applying the same test here,

there is no reason why the Court should not reach the same result as the District Court,

thereby finding that New Jersey has the most significant relationship to Prudential's claims. All of the contacts in this case that are relevant to the significant relationships analysis are with New Jersey. As discussed above, Prudential is a New Jersey corporation and headquartered in New Jersey. In addition, W.R. Grace has significant contacts with New Jersey, as it previously had a manufacturing plant and substantial sales of asbestos products in New Jersey. Those contacts give New Jersey the most significant relationship to this case.

62.    By contrast, Georgia's sole contact with this litigation is the physical location of these buildings. As the District Court decided in 1994, that interest does not outweigh New Jersey's contacts.

63.    Debtors rely primarily on an Eighth Circuit case to argue that Prudential's claims "arose" in the state where the buildings are located. (Debtors' Supp. Br at 3-4). The need to rely on Eighth Circuit caselaw is not for lack of relevant authority in Delaware. Rather, it is because Delaware jurisprudence is contrary to the Debtors' interests. Thus, for purpose of the borrowing statute, Prudential's cause of action arose in New Jersey. Accordingly, Delaware's three year statute of limitations[6] would apply as it is shorter than New Jersey's six year statute of limitations.

---

[6] Debtors, in analyzing the borrowing statute, referred to Delaware's six-year statute of repose. Under Delaware law, a supplier of material is not entitled to the protection provided by the "statute of repose" set forth in 10 Del. C. §8127. Becker v. Hamada Inc., 455 A.2d 353, 355-6 (Del. 1982)(supplier of roofing materials "did not engage in or furnish 'construction' which is defined as the act of building; erection, act of devising and forming ..."); Windley v. Potts Welding & Boiler Repair Co., Inc., 888 F. Supp. 610, 612 (D. Del. 1995)("where the party merely supplies raw materials, it is not entitled to the protections of §8127"). Prudential's claims arise out of the installation of Debtors' asbestos containing material in its buildings. Debtors' did not and cannot in good faith allege, that they were anything more than a supplier of materials. Accordingly, Delaware's three-year statute of limitations—not the statute of repose—applies. 10 Del. C. §8106.

### 3.    Under Delaware Law, Prudential's Century Center Claims Were Timely Filed

64.    If the Delaware statute of limitations applies to the Century Center Claims, Debtors' statute of limitation objections should be dismissed.  Debtors have provided no analysis of the timeliness of Prudential's clams under the Delaware statute of limitations.  Thus, Debtors have failed to carry their burden of proving a statute of  limitations defense.  See e.g. Richard B. Roush, Inc. Profit Sharing Plan v. New England Mutual Life Insurance Co., 311 F.3d 581, 585 (3d Cir. 2002).

65.    A tort cause of action, under Delaware law, does not accrue prior to the time when plaintiff is injured.[7]  See, e.g., Kaufman v. C.L. McCabe, 603 A.2d 831, 834 (1992);  Nardo v. Guido DeAscanis & Sons, 254 A.2d 254 (Del Super. 1969).   In addition, Delaware recognizes a "discovery rule" for determining the accrual of a cause of action.  Kaufman, 603 A.2d at 835.  Under the discovery rule, the statute of limitations begins to run only when the plaintiff knows facts "constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery" of such facts.  Becker v. Hamada, Inc., 455 A.2d 353, 356 (Del. 1982).  Although initially first held applicable in medical malpractice cases, Delaware courts have applied the discovery rule in a wide range of cases including: asbestos personal injury claims, In re District Court

---

[7] Debtors tacitly relied on this principle as part of the estimation and adjudication proceedings in this matter.  Debtors are challenging the dust sampling methodology employed by many property damage claimants.  Consistent with the objections asserted to many of the Property Damage claims, Debtors are claiming that claimants have not proven that there has been "contamination" from its asbestos containing material, therefore, those proofs of claims should be disallowed.  In essence, Debtors contend that Property Damage Claimants do not have a "claim" unless there has been injury.  Accordingly, Debtors cannot be heard to argue here that the statute of limitations began to run upon installation of the asbestos containing material.  Prudential's cause of action, therefore did not accrue, until discovery of sufficient facts
(footnote continued...)

Litigation West Trial Group, 622 A.2d 1090, 1093 (Del. Super. 1992) (cause of action for asbestos related injuries accrues when plaintiff is chargeable with knowledge of injury), and construction related defects, Becker, 455 A.2d at 356, Rudginski v. Pullella, 378 A. 2d 646, 649 (Del. Super. Ct. 1977) (negligent installation of a septic tank); see also Hodges v. Smith, 517 A.2d 299, 301 (Del. Super. Ct. 1986); Child Inc. v. Rodgers, 377 A. 2d 374, 377 (Del. Super. Ct. 1977).

66.     As set forth in the Century Center proofs of claims, Prudential first became aware of the presence of asbestos containing fireproofing at Century Center I and IV in April 1986.  (See Response to Question Nos. 18, 19, 20 and 21, Century Center Proofs of Claims, Submitted as Exhibits A and B to Prudential's Response to Debtors' 15th Omnibus Objections (Substantive) to Asbestos Property Damage Claims (Docket Nos. 10686, 10687).)  Thus, when it filed the District Court Litigation on October 20, 1987, Prudential was well within Delaware's 3-year statute of limitations.  Despite their burden of proof in presenting an objection to a *prima facie* valid claim, see In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992), the Debtors have failed to provide this Court with anything to contradict these facts.   Accordingly, Debtors' Fifteenth Omnibus Objection as it relates to Prudential's Century Center Claims should be overruled.

[remainder of page intentionally left blank]

_____

regarding its injury.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, Prudential respectfully requests that the Court (i) overrule the Debtors' objections to Prudential's Century Center Claims, and (ii) enter an Order determining that Prudential's Century Center Claims have been timely asserted.

Wilmington, Delaware
Dated: September 1, 2006

Respectfully Submitted,

/s/ Laurie S. Polleck
Laurie S. Polleck, Esq. (No. 4300)
JASPAN SCHLESINGER HOFFMAN LLP
913 North Market Street, 12th Floor
Wilmington, DE  19801
Tel: (302) 351-8000
Fax: (302) 351-8010
Email: lpolleck@jshllp-de.com

- and -

RIKER, DANZIG, SCHERER, HYLAND
   & PERRETTI LLP
Robert J. Gilson, Esq.
Curtis M. Plaza, Esq.
Craig T. Moran, Esq.
Headquarters Plaza
One Speedwell Avenue
P.O. Box 1981
Morristown, New Jersey 07962-1981
(973) 538-0800
Email: rgilson@riker.com
Email: cplaza@riker.com
Email: cmoran@riker.com

Co-counsel for The Prudential Insurance
Company of America

3643177.7

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS .......................................................................................................3

LEGAL ARGUMENT...............................................................................................................6

I.  THE DISTRICT COURT HAS ALREADY RULED THAT THE
    NEW JERSEY STATUTE OF LIMITATIONS APPLIES TO
    PRUDENTIAL'S CLAIMS; THE DOCTRINE OF ISSUE
    PRECLUSION BARS THE DEBTORS FROM RELITIGATING
    THE ISSUE BEFORE THIS COURT...............................................................................6

II. ANALYSIS UNDER THE APPLICABLE CHOICE OF LAW
    ISSUES WOULD LEAD TO THE SAME RESULT – THE
    STATUTE OF LIMITATIONS OF NEW JERSEY APPLIES TO
    PRUDENTIAL'S CLAIMS..............................................................................................16

III. APPLYING DELAWARE CHOICE OF LAW STANDARDS,
    THE NEW JERSEY OR DELAWARE STATUTE OF
    LIMITATIONS APPLIES TO PRUDENTIAL'S CENTURY
    CENTER CLAIMS...........................................................................................................23

CONCLUSION..........................................................................................................................34