# EXHIBIT B

# Westlaw.

Not Reported in F.Supp.2d                                                                                                   Page 1
Not Reported in F.Supp.2d, 2003 WL 22273256 (D.N.J.), 92 A.F.T.R.2d 2003-6070, 2004-1 USTC P 50,152
(Cite as: Not Reported in F.Supp.2d)

Briefs and Other Related Documents

United States District Court,D. New Jersey.
In re G-I HOLDINGS INC., et al., Debtors.
No. Civ.02-CV-3082(WGB).

Aug. 8, 2003.

Christopher J. Christie, United States Attorney, Susan Steele, Assistant U.S. Attorney, Richard G. Jacobus, Trial Attorney, Tax Division, U.S. Department of Justice, Ben Franklin Station, Washington, D.C., for the United States.
Albert H. Turkus, Bryon A. Christensen, Skadden, Arps, Slate, Meagher & Flom LLP, Washington, D.C., William F. Nelson, J. Branford Anwyll, Sanford W. Stark, Jonathan Z. Ackerman, McKee Nelson LLP, Washington, D.C., Dennis O'Grady, Mark Hall, Riker, Danzig, Scherer Hyland & Perretti LLP, Morristown, New Jersey, for Debtors.

*OPINION*
BASSLER, J.
*1 The United States moves for partial summary judgment on statute of limitations issues previously decided by the Tax Court and on the issue of adequate disclosure. For the reasons set forth in this opinion, the United States' motion for partial summary judgment on the statute of limitations issues is granted, and the United States' motion for partial summary judgment on the issue of adequate disclosure is denied.

I. BACKGROUND

The IRS issued a Final Partnership Administrative Adjustment (FPAA) to Rhone-Poulence Surfactants and Specialties, L.P. ("RPSSLP") on September 12, 1997, in connection with a 1990 transfer of property by GAF Chemicals Corporation ("GAF," predecessor to G-I) and Alkaril Chemicals Inc. ("Alkaril," predecessor to ACI) to RPSSLP. The United States contended the transaction was a taxable disguised asset sale under 26 U.S.C. § 707(a)(2)(B), and Debtors contended it was a nontaxable contribution to the capital of the RPSSLP partnership. Debtors filed a petition in Tax Court for a readjustment of partnership items.

In *Rhone-Poulenc Surfactants and Specialties, L.P. v. Commissioner,* 114 T.C. 533, 2000 WL 863142 (2000) (hereafter, *"RP 1"*), Debtors moved for summary judgment on the basis that the FPAA was not timely and therefore the United States' action was barred by statute of limitations. Debtors contended that the three-year limitation period for partnership items under 26 U.S.C. § 6229(a) had expired; in the alternative, that the six-year limitation on assessment against GAF under 26 U.S.C. § 6501(a) had expired and the FPAA did not suspend the running of that limitation; and in the alternative, that the six-year limitation under 26 U.S.C. § 6501(e)(1)(A) governing tax returns from which a taxpayer has omitted 25% of its gross income was inapplicable because GAF had adequately disclosed the items in question on its 1990 federal income tax return. In a detailed opinion examining a complex matter of law on the basis of undisputed facts, the Tax Court denied summary judgment, ruling that: (1) § 6229(a) dictated a minimum period, not a strict limitation; (2) § 6229(d) suspended the running of the limitations period described in § 6501 once an FPAA is issued; and (3) if GAF omitted 25% of its gross income from its 1990 federal income tax return and did not adequately disclose the nature of the omitted items, § 6501(e) applied and the FPAA was timely. The Tax Court declined to rule on that question of adequate disclosure, however, because it presented genuine issues of material fact.

With leave from the Tax Court for interlocutory appeal, Debtors appealed the ruling to the Third Circuit, in *Rhone-Poulenc Surfactants and Specialties, L.P. v. Commissioner,* 249 F.3d 175 (3d Cir.2001) (hereafter *"RP 2"*). The Third Circuit found that the contingent nature of the Tax Court's holding meant that, depending on the outcome of litigation on both the question of adequate disclosure and the question of whether GAF had an interest in the partnership, the correctness of the Tax Court's ruling on the statutes of limitation might never require review. Therefore there was no case or controversy satisfying Article III of the Constitution, and leave to appeal had been improvidently granted. The Third Circuit dismissed the appeal, remanding the case to the Tax Court for further proceedings on the merits. *RP 2,* 249 F.3d at 183.

*2 In the interim, Debtors to this tax liability (G-I and

Not Reported in F.Supp.2d                                                                                                           Page 2
Not Reported in F.Supp.2d, 2003 WL 22273256 (D.N.J.), 92 A.F.T.R.2d 2003-6070, 2004-1 USTC P 50,152
**(Cite as: Not Reported in F.Supp.2d)**

ACI) had both filed for bankruptcy under Chapter XI. By operation of law, this required the dismissal of *RP 1* from Tax Court, and reference to Bankruptcy Court. This Court withdrew that reference upon the United States' motion on May 13, 2003, per 28 U.S.C. § 157(d), which mandates such withdrawal where resolution of the case will require consideration of complex non-bankruptcy issues. Because the Tax Court dismissed *RP 1*, Debtors can no longer appeal that ruling.

The United States filed a motion for partial summary judgment on the statute of limitations issues decided by the Tax Court in *RP 1* under principles of collateral estoppel; or in the alternative as barred by 11 U.S.C. § 505(a)(2)(A); or in the alternative by abstention under 11 U.S.C. § 505(a)(1). Debtors oppose this motion, arguing that collateral estoppel does not apply, because the Tax Court's denial of summary judgment in *RP 1* does not meet all the standards for issue preclusion; they also argue that §§ 505(a)(2)(A) and 505(a)(1) do not apply.

The United States also filed a motion for partial summary judgment on the adequate disclosure issue, asserting that Debtors' disclosure was not adequate under any rational standard. Debtors oppose this motion on the grounds that the question of adequate disclosure presents genuine issues of material fact.

## II. DISCUSSION

*1. Collateral Estoppel Precludes the District Court from Relitigating the Statute of Limitations Issues Decided by the Tax Court*

Collateral estoppel requires that an issue meet four standards: "1) the issue sought to be precluded [is] the same as that involved in the prior action; 2) that issue [was] actually litigated; 3) it [was] determined by a final and valid judgment; and 4) the determination [was] essential to the prior judgment." *In re Graham*, 973 F.2d 1089, 1097 (3d Cir.1992) (quoting *In re Braen*, 900 F.2d 621, 628-29 n. 5 (3d Cir.1979), *cert denied*, 498 U.S. 1066 (1991)). Debtors dispute whether *RP 1* meets the third and fourth standards, which this Court will discuss in reverse order.

*A. The Tax Court's Denial of Summary Judgment Was Essential to the Litigation*

On the fourth standard, whether the statute of limitations ruling was "essential to the prior judgment," Debtors' position is that the Third Circuit answered this question in *RP-2*, when they pointed out that "neither question may ever have to be answered in this litigation." *RP-2*, 249 F.3d at 181. If the litigation might never have to reach that question, Debtors theorize, then the question could not be essential to the judgment.

Yet the Third Circuit in *RP 2* did not, as Debtors would have it, decline to review *RP 1* because the Tax Court might never have had to reach the statute of limitations question. The Third Circuit declined to review *RP 1* because the possibility that the Tax Court might find in Debtors' favor on the merits meant that *any appellate ruling* on the Tax Court's statute of limitations ruling would be premature. If the Third Circuit had truly believed that any *trial court* examination of the statutes of limitations was inappropriate prior to a finding on adequate disclosure, or if it had desired to issue a "mandate" to the Tax Court to resolve the merits prior to interpreting the statutes of limitations, it surely would have reversed or vacated the Tax Court's ruling, which it did not; it merely remanded for further proceedings.

*3 In addition, the Tax Court decided the statute of limitations issues at the behest of Debtors, who asked for summary judgment on that basis. In the section on "Determinations Essential to the Judgment," the *Restatement (Second) of Judgments* states:
The appropriate question, then, is whether the issue was actually recognized by the parties as important and by the trier as necessary to the first judgment. If so, the determination is conclusive between the parties in a subsequent action ...

*Restatement*, § 27(j) (1982). Having requested the Tax Court to grant summary judgment on the statute of limitations issues, Debtors could hardly argue that they did not recognize them as important. By ruling on the statute of limitations issues, and particularly by issuing a detailed opinion on them, the Tax Court demonstrated that they found that ruling necessary to any eventual judgment.

*B. The Tax Court's Denial of Summary Judgment, Being on a Fully and Fairly Litigated Matter, Was a Final and Valid Ruling*

Debtors assert that "denial of a motion for summary judgment is not 'sufficiently firm to be accorded

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                Page 3
Not Reported in F.Supp.2d, 2003 WL 22273256 (D.N.J.), 92 A.F.T.R.2d 2003-6070, 2004-1 USTC P 50,152
(Cite as: Not Reported in F.Supp.2d)

conclusive effect' under the Restatement," (*Debtors' Memorandum in Opposition*, at 14), citing *Kay-R Elec. Corp. v. Stone & Webster Constr. Co.*, 23 F.3d 55, 59 (2d Cir.1994) (quoting Restatement, § 13 (1982)). First of all, *Kay-R* offers *Acha v. Beame*, 570 F.2d 57, 63 (2d Cir.1978) as support for this proposition, but a careful reading suggests that *Acha* questions only the effect of partial summary judgment on *claim preclusion*, not on issue preclusion:

Thus when res judicata is in question a judgment will ordinarily be considered final in respect to a *claim* ... if it is not tentative, provisional, or contingent and represents the completion of all steps in the adjudication of the *claim* by the court ...

(Emphasis added.) *Acha*, 570 F.2d at 63 (quoting *Restatement*, § 41, comment b. at 3, Tent. Draft No. 1, 1973).

The court in *Kay-R* also justified its decision not to apply collateral estoppel by explaining, "[W]e of course do not know why summary judgment was denied in that case, and it is clear that for collateral estoppel to bar a party on an issue, the issue in dispute must actually have been litigated and actually decided." *Kay-R*, 23 F.3d at 59. In contrast, the Tax Court in *RP 1* left little doubt as to its reasons for denying summary judgment, or as to the logical path it used in determining the statute of limitations issue: the issue was actually and demonstrably litigated and decided.

The United States also points out that collateral estoppel "does not require the entry of a judgment, final in the sense of being appealable," that it applies "whenever an action is 'sufficiently firm to be accorded conclusive effect.' *Restatement*, § 13 at 132 ." *In re Brown*, 951 F.2d 564, 569 (3d Cir.1991) (quoting *Hills Dev. Co. v. Township of Bernards*, 103 N.J. 1, 510 A.2d 621, 652 (1986)). One illustration of such a "conclusive effect" without traditional finality is *Burlington Northern R.R. Co. v. Hyundai Merchant Marine Co., Ltd.*, 63 F.3d 1227 (3d Cir.1995), where, as in this case, a plaintiff asked the court to give preclusive effect to denial of summary judgment in an earlier action against the same defendant. In reversing the District Court's failure to apply collateral estoppel, the Third Circuit let stand the long-held "unmixed questions of law" exception for issue preclusion on which the District Court had relied, but held that the exception:

*4 is satisfied only so long as the issue involved is one of law *and either* (1) the two actions involve claims that are substantially unrelated *or* (2) a new determination of the legal issue is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws. *See Restatement (Second) of Judgments § § 28 (1982)*.

*Burlington*, 63 F.3d at 1228. This case certainly does not meet the first criterion, as the parties are either the same or in privity, and the action is identical; only the venue has changed. As for whether a new determination of the legal issue is warranted, the Tax Court continues to rely on its holding in *RP 1* for interpretation of these statutes of limitations. *See, e.g., CC & F Western Operations Ltd. P'ship v. Commissioner*, 2000 WL 1276708 at *2, aff'd, 273 F.3d 402 (1st Cir.2001). Although the Third Circuit has not ruled on that interpretation, other Circuits have cited it with approval as precedent:There is nothing about the court's reasoning in *Rhone-Poulenc*, nor in its reliance on that case here that gives us pause.... The language of § 6501 plainly refers to all the assessments made pursuant to the chapter, and specifically notes that § 6229 may be used to extend the period in case of partnership items. Likewise, the language of § 6229, rather than simply stating a three-year statute of limitations, indicates by the use of the term "shall not expire" that the provision is intended to dictate a minimum period, but not an absolute restriction ... [W]e find the reasoning and analysis first applied by the Tax Court in *Rhone-Poulenc*, then followed in the present case reasonable, persuasive, and ultimately convincing ...

*Andantech L.L.C. v. Commissioner*, 2003 WL 21382905 at *8 (D.C.Cir.2003). Such appellate approval satisfies this Court as to the effect of the Tax Court's ruling and the lack of need for a new determination.

Further, *Burlington* directly addressed the question of whether an issue will automatically fail the "sufficiently firm" test simply because the issue is not appealable, quoting, as the United States has, *Brown*:

*Brown* held that "[i]n determining whether the resolution was sufficiently firm, the second court should consider whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed." *Id*.... Burlington "w[as] represented by counsel ..., [t]he issues were genuinely contested, and the court gave no indication that the summary judgment was tentative or likely to be changed." *See Brown*, 951 F.2d at 569. Moreover, the *Atlantic Mutual* court did not summarily deny Burlington's

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22273256 (D.N.J.), 92 A.F.T.R.2d 2003-6070, 2004-1 USTC P 50,152
(Cite as: Not Reported in F.Supp.2d)

Page 4

summary judgment motion on (for example) grounds that there were material factual disputes; rather, it ruled in a reasoned opinion that Burlington's timeliness defense was unsuccessful as a matter of law. Under all these circumstances *the fact that the decision was not actually appealable is of little consequence in this action.*

*5 (Emphasis added.) Burlington, 63 F.3d at 1233 n. 8. The Third Circuit's conclusion in that case is especially germane to the current question, since the Tax Court decided under what circumstances Rhone-Poulenc's (and now G-I's) timeliness defense would fail as a matter of law, and the United States asks this Court to give that decision, albeit an unappealable one, preclusive effect.

In contrast, Debtors offer Gelb v. Royal Globe Ins. Co., 798 F.2d 38 (2d Cir.1986) as support for the proposition that when there has been no appellate review on an issue, only a voluntary decision not to obtain such review will permit preclusion: "Thus, although failure to appeal does not prevent preclusion, [citations omitted] inability to obtain appellate review, or the lack of review once an appeal is taken, does prevent preclusion." *Id.* at 44. To the extent that the holdings of *Gelb* and *Burlington* are inconsistent, this Court must follow *Burlington*.

First and perhaps most obviously, *Gelb* is a decision of the Second Circuit and not binding on this Court. The holding in *Gelb* also seems far more apposite to the preclusive effect of a prior criminal conviction on a subsequent civil action, not to denial of summary judgment in a prior civil action between the same parties. But this Court also concludes that, even if *Gelb* were binding, the procedural posture of this case has resulted substantially enough from Debtors' voluntary filing for bankruptcy protection that it might still fall outside the holding in *Gelb*.

When a party to partnership tax proceedings files for bankruptcy protection, the partnership items of that party are thereafter treated as nonpartnership items pursuant to 26 U.S.C. § 6226(d)(1)(A) and 26 C.F.R. § 301.6231(c)-7T, and therefore eliminated from those tax proceedings; essentially, as in *RP 1*, the case is dismissed as it applies to that partner. Depending on the timing of the dismissal, one possible and natural consequence of this is that some issues will already have been litigated in Tax Court.

The government argues that this dismissal, the resulting lack of appealability of the Tax Court proceedings, and the possibility that collateral estoppel would be inapplicable due to that lack of appealability, must have been the only motivation behind Debtors' filing for bankruptcy. The government concludes that Debtors filed for bankruptcy solely to obtain another opportunity to litigate the statute of limitations issues; and because Debtors are in a bed of their own making, the government argues further, this Court should let them lie there by applying collateral estoppel.

The government's deliberateness argument is well-taken to an extent. There are many circumstances where, having voluntarily acted in a way that dictates a certain result, a party may not then be heard to complain of that result. Ironically, Debtors seem to agree; in attempting to distinguish this case from *Burlington*, they pointed out that the dismissal due to settlement in *Burlington'* s predecessor, *Atlantic Mutual Cos. v. Orient Overseas Container Line,* Case No. 91-CV-1097 (W.D.Wash.), "embodied the former circumstance-a voluntary action that effectively precluded further proceedings on the underlying dispute." *Debtors' Memorandum in Opposition*, at 17.

*6 As additional argument, Debtors cite a Third Circuit footnote, which says that "relitigation ... is not precluded [when t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the intial action." Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n, 288 F.3d 519, 525 n .3 (3d Cir.2002) (*quoting Restatement (Second) of Judgments,* § 28(1)). Presuming that Debtors had not declared bankruptcy, and *RP 1* had been litigated to a conclusion unsatisfactory to them, Debtors would have had the opportunity for normal appellate review. This Court is not prepared to describe the situation as one in which Debtors "could not, as a matter of law, have obtained review of the judgment."

This Court simply need not inquire into Debtors' motives, or view collateral estoppel as punishment for Debtors' actions, when the rule of *Burlington* clearly allows preclusion as a proper result. Debtors' voluntary filing for bankruptcy protection, whatever their motivation, is the reason they now find themselves in District Court rather than the same Tax Court which denied summary judgment. That they did not continue the litigation in Tax Court is not reason enough for this Court to disregard a fully and fairly litigated finding on an unmixed question of law.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                Page 5
Not Reported in F.Supp.2d, 2003 WL 22273256 (D.N.J.), 92 A.F.T.R.2d 2003-6070, 2004-1 USTC P 50,152
(Cite as: Not Reported in F.Supp.2d)

*C. Debtors' Other Arguments Regarding Collateral Estoppel Are Inapposite to the Case*

Debtors offer a number of other grounds upon which they ask the Court to deny partial summary judgment on the basis of issue preclusion. None applies to this case in a way that would alter this Court's opinion of the proper result.

Debtors assert that "[i]n general, partial summary judgment is not a valid final judgment and thus cannot serve as a basis for issue preclusion." *American Cas. Co. v. Sentry Fed. Sav. Bank,* 867 F.Supp. 50, 56 (D.Mass.1994). But this case goes on to say:

The definition of a valid and final judgment for collateral estoppel purposes, however, is unclear. In fact, " 'finality' may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80, 89 (2d Cir.1961), *cert. denied sub nom., Dawson v. Lummus Co.,* 368 U.S. 986 (1962).

*Sentry,* 867 F.Supp. 50 at 56. Given the Tax Court's continued reliance on its statutory interpretation in *RP 1,* and the First Circuit's affirmation of that interpretation, this Court sees no "really good reason for permitting it to be litigated again." *Lummus,* 297 F.2d at 89.

Debtors also assert that "the Third Circuit has squarely held that a decision that has been appealed and subsequently remanded for further consideration is not a final and valid judgment for issue preclusion purposes" (*Debtors' Memorandum in Opposition,* at 15), citing as an example *Chemical Leaman Tank Lines, Inc. v. Aetna Cas. and Sur. Co.,* 177 F.3d 210, 220 (3d Cir.1999). Yet in *Chemical Leaman,* the Third Circuit had been asked to apply *claim preclusion* to a matter that had not been litigated in the original trial:

*7 When an appellate court approves something the district court has done and not others, issue preclusion does foreclose further consideration of an issue on which the district court has been "affirmed." However, the doctrine of *claim preclusion* bars consideration of an issue *not litigated below* only if there exists a valid, enforceable judgment into which a claim or defense has merged.

(Emphasis added.) *Id.* Further, the Third Circuit was reviewing judgments the district court had made in a second proceeding after the Circuit's remand with instructions. The facts of that case simply do not apply here.

Next, citing *Synon Church v. U.S.,* 820 F.2d 421, 424-25 (D.C.Cir.1987) as an example, Debtors assert that "an issue is actually decided only upon affirmation by the appellate court, and issue preclusion is inapplicable to issues which, like those addressed by the Tax Court, the appellate court left open." *Debtors' Memorandum in Opposition,* at 15. This is a fair approximation of the argument that Synon made to the D.C. Circuit Court. Yet the Court was unwilling to decide on that basis, ultimately relying instead on the "actually recognized ... as necessary" standard from *Restatement (Second) of Judgments,* § 27(j) as discussed *supra.* The Court in fact then *affirmed* the District Court's application of issue preclusion to the issue in question under this standard. *Synon,* 820 F.2d at 427.

In an attempt to counter the Government's argument "that the concept of finality is less rigid for issue preclusion purposes than for claim preclusion purposes" (*Debtors' Memorandum in Opposition,* at 16), Debtors note that the Supreme Court has recognized that "[t]he estoppel doctrine ... is premised upon an underlying confidence that the result achieved in the initial litigation was substantially correct. In the absence of appellate review ... such confidence is often unwarranted." *Standefer v. United States,* 447 U.S. 10, 23 n. 18 (1980). Yet the Supreme Court qualified that footnote, saying, "This is not to suggest that the availability of appellate review is always an essential predicate of estoppel." *Id.* Moreover, even if confidence that the original result was substantially correct is "often" unwarranted, that does not rule out the use of collateral estoppel when such confidence is warranted. This Court finds support for such confidence in the Tax Court's continued use of its statutory interpretation from *RP 1* in other cases, and in the First Circuit's approval of that interpretation.

The Court therefore concludes that collateral estoppel is appropriate here, and will grant summary judgment on that basis, on the statute of limitations issues previously decided by the Tax Court.

*2. Section 505(a)(2)(A) of the Bankruptcy Code is Inapplicable*

If the government's position on collateral estoppel were to have failed, or were to be reversed on appeal, Debtors' other arguments regarding the Tax Court's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                    Page 6
Not Reported in F.Supp.2d, 2003 WL 22273256 (D.N.J.), 92 A.F.T.R.2d 2003-6070, 2004-1 USTC P 50,152
(Cite as: Not Reported in F.Supp.2d)

adjudication of the statute of limitations issues would prevail.

*8 The government asserts correctly that the Bankruptcy Code bars a Bankruptcy Court from determining "the amount of legality of a tax ... if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title." 11 U.S.C. § 505(a)(2)(A). But contrary to the government's argument, this is a legislative reflection of claim preclusion doctrine, not an enlargement of issue preclusion. "11 U.S.C. § 505(a)(2)(A) ... incorporates the concept of *res judicata* (also known as claim preclusion) under commonlaw jurisprudence." *In re Northbrook Partners LLP*, 245 B.R. 104, 112 (Bankr.D.Minn.2000) (citing *In re Teal*, 16 F.3d 619, 621 n. 3 (5th Cir.1994); *In re Doerge*, 181 B.R. 358, 364 (Bankr.S.D.Ill.1995)). The *Northbrook* court notably footnoted that statement, saying, "Given this, there is no reason to get into that portion of the County's argument that relies on the judicial doctrine of collateral estoppel," *Northbrook*, 245 B.R. at 112 n. 12, thus indicating clearly that it considered § 505(a)(2)(A) unrelated to collateral estoppel.

The government also notes that "[t]here is no language in the statute to indicate that the adjudication must be 'final.' " *In re Railroad Street P'ship*, 255 B.R. 644, 647 (N.D.N.Y.2000). Yet the lack of finality addressed by the *Railroad Street* court was merely "that the determination of the Assessment Board [was] subject to further review by the State Court." *Id.* The competency and completeness of the Board's own adjudication of the tax, after a full and fair hearing of the debtors, was not in question.

In any event, "the amount or legality" of the tax assessment against Debtors was not "contested before and adjudicated by" the Tax Court in *RP 1*. Rather, the Tax Court denied summary judgment on a basis of a statutory interpretation, in preparation for adjudicating the tax itself. At most, this Court could consider that ruling a partial adjudication. To have determined completely the amount or legality of the assessment would have required the Tax Court to reach the merits of the case, including the question of adequate disclosure and the concomitant question of a 25% omission from gross income. So § 505(a)(2)(A) would not apply regardless.

*3. Abstention from Deciding the Amount and Legality of the Tax Liability Would Be Inappropriate*

The Bankruptcy Code says that "the court may determine the amount or legality of any tax," which courts have interpreted as making the authority of a bankruptcy court to adjudicate a tax liability discretionary. *In re Luongo*, 259 F.3d 323, 330 (5th Cir.2001) ("The bankruptcy court's ability to abstain is premised on Congress' use of the word 'may' in § 505."). The government therefore urges this Court to abstain from revisiting the statute of limitations issues decided by the tax court.

*9 Courts look to six factors in determining whether to abstain:
(1) the complexity of the tax issue to be decided; (2) the need to administer the bankruptcy case in an orderly and efficient manner; (3) the burden on the bankruptcy court's docket; (4) the length of time required for trial and decision; (5) the asset and liability structure of debtors; and (6) any prejudice or potential prejudice to both the debtor and taxing authority.

*In re AWB Assocs.*, 144 B.R. 270, 276 (Bankr.E.D.Pa.1992). In examining these factors as they relate to the current case, one overriding fact must govern: per 28 U.S.C. § 157(d), this Court withdrew reference to the Bankruptcy Court specifically because of the complexity of the non-bankruptcy issues to be litigated, and this Court's ability to hear them. To back down from those issues now because of their complexity or their burden to this Court's docket would largely defeat the purpose of that withdrawal, which was the ability to litigate all of the complex issues surrounding this case, not merely the bankruptcy itself.

Even if this were not true, the government asks this Court to abstain from only one part of the overall determination of the amount and legality of a tax liability, while it seeks to litigate the remaining multiple issues. Debtors point out that the grant of authority in § 505 "is jurisdictional in nature, and the language conferring jurisdiction to determine the 'legality of any tax' speaks broadly to the tax controversy as a whole; it does not contemplate piecemeal abstention." *Debtors' Memorandum in Opposition*, at 23. Such selective abstention would also be inappropriate in the face of this Court's withdrawal of reference, as discussed *supra*, and its accompanying self-imposed duty to adjudicate the matter in its entirety.

Moreover, as Debtors point out, where bankruptcy courts have abstained, it is generally when the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22273256 (D.N.J.), 92 A.F.T.R.2d 2003-6070, 2004-1 USTC P 50,152
(Cite as: Not Reported in F.Supp.2d)

Page 7

litigation of a tax issue furthers no bankruptcy purpose, as in no-asset chapter 7 cases, or chapter 11 cases where resolution of the tax issue would not serve the interests of other creditors. *See In re Williams, 190 B.R. 225 (Bankr.W.D.Pa.1995); Northbrook;* and *In re Shapiro, 188 B.R. 140 (Bankr.E.D.Pa.1995).* Here the tax litigation, on an adjustment in the hundreds of millions of dollars, will have a significant impact on the rights of numerous creditors. This Court must therefore decline its option to abstain.

*4. Summary Judgment on Adequate Disclosure Is Inappropriate When There Are Genuine Issues of Material Fact with Respect to the Omission Required for Adequate Disclosure to Be Relevant*

The standard for granting summary judgment pursuant to Federal Rule of Civil Procedure 56 is a stringent one. Summary judgment is appropriate only if all the probative materials in the record "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Hersh v. Allen Prods. Co., 789 F.2d 230, 232 (3d Cir.1986); Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir.1983).* An issue involving a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Healy v. New York Life Ins. Co., 860 F.2d 1209, 1219 n. 3 (3d Cir.1988).*

\*10 The court must resolve all reasonable doubts in favor of the nonmoving party when determining whether any genuine issues of material fact exist. *Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n. 2 (3d Cir.1983); Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870, 874 (3d Cir.1972).* Even though a court must resolve reasonable doubts in favor of the nonmoving party, because a motion for summary judgment is designed to go beyond the pleadings, factual specificity is required of a party who opposes such a motion. *Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).* Accordingly, in order to defeat a properly supported motion for summary judgment, a party may not merely restate the allegations of its pleadings or rely upon self-serving conclusions which are unsupported by specific facts in the record. *Celotex, 477 U.S. at 322-23.* A non-moving party must point to concrete evidence in the record which supports each essential element of its case. *Id.* If the party fails to provide such evidence, then it is not entitled to a trial and the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(e).

As the Tax Court established in *RP I*, whether the government's FPAA was timely depends partly on the omission of gross income from Debtors' tax returns. If GAF omitted 25% of its gross income from its 1990 federal income tax return and did not adequately disclose the nature of the omitted items, then the statute of limitations in 26 U.S.C. § 6501(e) applies, and the FPAA was timely. If GAF did not omit 25% of its gross income from the 1990 return-or if it did omit 25% of its gross income from the return, but adequately disclosed the nature of the omitted items-then the FPAA was not timely and the government may not recover.

Yet "there is an omission of gross income from Debtors' return if-and only if-the Government's recasting of the 1990 partnership transaction is upheld." *Debtors' Memorandum in Opposition,* at 35. So the primary factual dispute between the government and Debtors is the nature of the 1990 partnership transaction. If Debtors prevail on the nature of the transaction, then there will have been no omission of gross income, and therefore nothing to disclose in order to explain or draw attention to such an omission. On the other hand, if the government succeeds in proving that the transaction was a sale, then this will establish that there was some omission of gross income, but it will not necessarily settle the question of the proportion of the omission, which-contrary to the government's assertion-Debtors do dispute. *Id.,* at 31.

Debtors suggest, as evidence that the government's position on these issues is not a foregone conclusion, that GAF's 1990 tax return must be viewed in concert with RPSSLP's 1990 tax return for a complete, contextual picture. Indeed, there is evidence in the RPSSLP return that a reasonable fact-finder might tend to believe should have led a reasonable IRS agent to investigate the connection between GAF and the partnership more fully. *Id.,* at 36-8. Without the benefit of discovery, there may not yet be enough evidence to convince a fact-finder that GAF's tax return alone should have led such an agent to RPSSLP's return in the first place. But this Court disagrees with the government's position that Debtors should not have the opportunity to make such a showing. Debtors have offered sufficient initial evidence (and have sufficiently contended that more such evidence will, or could, be forthcoming during discovery) for this Court to believe that a reasonable fact-finder could conceivably rule in their favor on the nature of the 1990 transaction and the percentage

Not Reported in F.Supp.2d                                                                                                                Page 8
Not Reported in F.Supp.2d, 2003 WL 22273256 (D.N.J.), 92 A.F.T.R.2d 2003-6070, 2004-1 USTC P 50,152
(Cite as: Not Reported in F.Supp.2d)

omission of gross income.

*11 Only if this Court determines that the 1990 transaction was a sale, and subsequently determines that the omission of gross income on the 1990 return was at least 25% of the total reported income, will it have to make a determination on adequate disclosure. As these are genuine, disputed issues of material fact, the government's motion for summary judgment on adequate disclosure must fail.

III. CONCLUSION

For the foregoing reasons, the government's Motion for Partial Summary Judgment with regards to statute of limitations issues previously decided by the Tax Court is granted, and the government's Motion for Partial Summary Judgment with regards to adequate disclosure is denied.

An appropriate Order follows.

ORDER

This matter having come before the Court on the Motions of the United States for Partial Summary Judgment pursuant to Fed.R.Civ.P. 56; and

The Court having considered the submissions of the parties; and

For the reasons set forth in the Court's opinion filed this day; and

For good cause shown;

It is this the 8th day of August, 2003 ORDERED that the Plaintiff's Motion for Partial Summary Judgment is GRANTED as to statute of limitations issues previously decided by the Tax Court, and the Plaintiff's Motion for Partial Summary Judgment is DENIED as to adequate disclosure.

D.N.J.,2003.
In re G-I Holdings Inc.
Not Reported in F.Supp.2d, 2003 WL 22273256 (D.N.J.), 92 A.F.T.R.2d 2003-6070, 2004-1 USTC P 50,152

Briefs and Other Related Documents (Back to top)

• 2006 WL 381470 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of United States'

Appeal of Magistrate Judge's Order Compelling Third-Party Production of Proprietary Valuecalce Software (Jan. 19, 2006) Original Image of this Document (PDF)
• 2006 WL 381471 (Trial Motion, Memorandum and Affidavit) Debtors' Reply Memorandum in Support of Conditional Motion for Bifurcated Trial on Adequate Disclosure (Jan. 19, 2006)
• 2006 WL 381469 (Trial Motion, Memorandum and Affidavit) Debtors' Reply Memorandum in Support of Cross-Motion for Partial Summary Judgment on the Statute of Limitations Issue (Jan. 17, 2006)
• 2006 WL 381468 (Trial Motion, Memorandum and Affidavit) United States' Brief in Opposition to Debtors' Conditional Motion for Bifurcated Trial on Adequate Disclosure (Jan. 12, 2006) Original Image of this Document (PDF)
• 2005 WL 3527826 (Trial Motion, Memorandum and Affidavit) United States' Reply Brief in Support of Its Motion for Partial Summary Judgment Regarding Rhone-Poulenc S.A. Guaranty of Credit Suisse Loan (Nov. 30, 2005) Original Image of this Document (PDF)
• 2005 WL 3527827 (Trial Motion, Memorandum and Affidavit) United States' Reply Brief in Support of Its Motion and in opposition to Debtors' Cross-Motion for Partial Summary Judgment Regarding Debtors' Claim for """Binding Contract'" Transitional Relief from ¢ ySection 731(c) of the Internal Revenue Code¢ y¢ r ;00001;;LQ;26USCAS731;1012823;¢ r (Nov. 30, 2005) Original Image of this Document (PDF)
• 2005 WL 3527823 (Trial Motion, Memorandum and Affidavit) Debtors' Memorandum of Fact and Law in Opposition to United States' Motion in Limine to Exclude the Alleged Tripaldi Statements (Nov. 18, 2005)
• 2005 WL 3527824 (Trial Motion, Memorandum and Affidavit) Debtors' Memorandum of Fact and Law in Opposition to United States' Motion in Limine for Determination as to Admissibility of Exhibits 144, 294, 297 (Nov. 18, 2005)
• 2005 WL 3527825 (Trial Motion, Memorandum and Affidavit) Debtors' Memorandum in Support of Opposition to United States' Renewed Motion for Partial Summary Judgment Regarding the Adequate Disclosure Issue, and in Support of Debtors' Cross Motion for Partial Summary Judgment on the Statute of Limitations Iss ue (Nov. 18, 2005)
• 2005 WL 3527821 (Trial Motion, Memorandum and Affidavit) Debtors' Memorandum in Opposition to United States' Motion for Partial Summary Judgment Regarding Rhone-Poulenc S.A. Guaranty of Credit Suisse Loan (Nov. 9, 2005)
• 2005 WL 3527822 (Trial Motion, Memorandum

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                Page 9
Not Reported in F.Supp.2d, 2003 WL 22273256 (D.N.J.), 92 A.F.T.R.2d 2003-6070, 2004-1 USTC P 50,152
**(Cite as: Not Reported in F.Supp.2d)**

and Affidavit) Debtors' Memorandum in Opposition to United States' Motion for Partial Summary Judgment and in Support of Debtors' Cross-Motion for Partial Summary Judgment Regarding Debtors' Claim for Binding Contract Transitional Relief from ¢ ySection 731(c) of th e Internal Revenue Code¢ y¢ r;00001;;LQ;26USCAS731;1012823;¢  r  (Nov. 9, 2005)
• 2005 WL 2899060 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of United States' Motion for Partial Summary Judgment Regarding the Adequate Disclosure Issue (Sep. 28, 2005)
• 2005 WL 2899059 (Trial Motion, Memorandum and Affidavit) Memorandum of Fact and Law in Support of United States' Renewed Motion in Limine to Exclude the Alleged Tripaldi Statements%n1%n (Sep. 26, 2005)
• 2005 WL 2899056 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of United States' Motion for Partial Summary Judgment Regarding Rhone-Poulenc S.A. Guaranty of Credit Suisse Loan (Sep. 8, 2005)
• 2005 WL 2899053 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of United States' Motion for Partial Summary Judgment Regarding Debtors' Claim for ""Binding Contract" Transitional Relief from Section 731 (c) of the Internal Revenue Code (Sep. 7, 2005)
• 2:02cv03082 (Docket) (Jun. 26, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.