## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | Related to Docket Nos. 9401, |
| | ) | 12823 & 12960 |
| | ) | |
| | ) | |

### POST-MEDIATION SUMMARY MEMORANDUM OF VARIOUS LAW FIRMS
### REPRESENTING ASBESTOS PERSONAL INJURY CLAIMANTS

Various Law Firms Representing Asbestos Personal Injury Claimants (collectively, "Respondents")[1] respectfully submit this post-mediation summary memorandum to comply with the Court's Order Appointing Mediator and Requiring Certain Action (the "Order"; Dkt. No. 9401), and would show the Court as follows:

1.       Respondents have previously filed their Joint Response in Opposition to Debtor's Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Asbestos Personal Injury Questionnaire (Dkt. No. 12960; the "Joint Response"), which included as exhibits thereto supplemental responses filed on behalf of each of the Respondents. Respondents incorporate by reference their Joint Reponses and their respective supplemental responses.

---

[1]    Respondents are the following law firms:  Baron & Budd, P.C.; Brayton Purcell; Foster & Sear, L.L.P.; Hissey, Kientz & Herron, P.L.L.C.; The Law Offices of Peter G. Angelos, A Professional Corporation; LeBlanc & Waddell, P.C.; David Lipman, P.A.; Chris Parks & Associates; Robert Pierce & Associates; Provost & Umphrey, L.L.P.; Reaud, Morgan & Quinn, L.L.P.; Sieben, Polk, LaVerdiere & Dusich, PA; Silber Pearlman LLP; SimmonsCooper, L.L.C.; Weitz & Luxenberg P.C.; Wilentz, Goldman & Spitzer, P.A.; and Williams Bailey Law Firm L.L.P.

2.      The Order was docketed on September 13, 2005, almost a year ago.  Pursuant thereto, the Court approved the Honorable Roger M. Whelan as mediator with respect to estimation discovery disputes.  The Order provides in part that

> … if the parties are unable to resolve the discovery dispute through mediation, they shall file appropriate motions and responses, including only those portions of the discovery requests still at issue, and briefs limited to **two (2) pages** per item in dispute.

3.      On July 17, 2006, W.R. Grace & Co. and its affiliated companies (collectively, "Grace" or "Debtors") filed their Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Asbestos Personal Injury Questionnaire (the "Motion"; Dkt. No. 12823).  Grace complains in the Motion that many Claimants have not responded to its questionnaire in precisely the manner that Grace wishes, and have not – at considerable expense to themselves and their respective personal injury counsel – spared Grace from time consuming work that necessarily attends the processing and interpretation of ambitious, far-ranging discovery.  Citing three allegedly "pervasive deficiencies", Grace seeks through the Motion to force tens of thousands of Claimants to essentially start from scratch and re-respond to the questionnaire.  Motion at 1.

4.      "The most significant discovery deficiency observed in the Questionnaire responses," according to Grace, "is Claimants' decisions not to respond to questions at all – but instead write 'see attachment,' 'see exhibit' or some variation thereof."  Motion at 20.  Grace mischaracterizes such practices to a "document dump" and an "obstructionist tact."  *Id.* at 20, 23.  Grace also asserts that nearly all the objections Claimants have lodged with respect to the questionnaire are improper and should be summarily overruled.  Finally, Grace maintains that questionnaire responses must be signed by the Claimant's personal injury counsel, despite the absence of such a requirement in the questionnaire itself.

5.      On August 29, 2006, at the Court's direction, the three issues raised in Grace's Motion were the subject of a mediation session before Judge Whelan.  No progress was made at the mediation session, and the Court is set to hear the Motion on September 11, 2006.

6.      As the mediation failed even to narrow any of the issues raised by the Motion, what follows is a brief executive summary of Respondents' Joint Response as it addresses the Motion's three grounds.  Respondents are mindful of the admonition to brevity set forth in the Order, but wish to reiterate that their positions are more fully articulated in the Joint Response and accompanying supplemental responses, to which the Court is respectfully referred.

**A.      Provision of attached documents responsive to questions posted by the questionnaire (or offering to produce such documents) is an efficient, effective, and responsible way of responding to the questionnaire.**

Grace's problem with documents being attached or offered in conjunction with questionnaire responses is strange, since Grace concedes that the questionnaire is "part document request[.]"  Motion at 13.  Grace exaggerates the extent of this alleged "problem", acknowledging that the first 56,659 responses received by Grace's contractor for processing included just 38.43 pages of attachments on average.  Exh. A to Motion at ¶ 3.  That is hardly a "document dump."

The real problem is Grace's insistence on delegating the initial review of raw questionnaire responses to its contractor's data entry clerks.  Grace has submitted sworn testimony indicating that these clerks have *zero* interpretive discretion when reviewing questionnaire responses.  Why aren't Grace's lawyers and other professionals – people who would presumably would have necessary discretion – involved in reviewing the raw questionnaire responses?  Why does Grace insist on devolving the important task of constructing its database entirely on clerks in whom it is willing to entrust no discretion?

Grace seeks, essentially, to sub-contract, *for free*, the construction of its database to Claimants and Claimants' counsel. The cases say that Grace shouldn't be allowed to get away with that. "[A] litigant may not compel his adversary to go to work for him." *Phillips v. City of New York*, 230 F.R.D. 369, 370 (S.D.N.Y. 2005) (*quoting Aktiebolaget Vargos v. Clark*, 8 F.R.D. 635 (D.D.C. 1949). "[D]iscovery proceedings should [not] be utilized to cast upon a defendant the burden of establishing the plaintiff's case when the plaintiff can at least as readily establish the requested facts.*" United Cigar-Whelan Stores Corp. v. Phillip Morris, Inc.*, 21 F.R.D. 107, 109 (S.D.N.Y. 1957).

Where, as here, information must be extracted from documents, production of documents is preferable to interrogatories that would shift the burden of document review to the responding party: "[I]t seems only fair that the party seeking such information be required to bear the burden of extracting and collating it." *Triangle Mfg. Co. v. Paramount Bag Mfg. Co.*, 35 F.R.D. 540, 543 (E.D.N.Y. 1964). Grace is aggressively seeking to shift that burden away from itself and impose it on the Claimants and Claimants' counsel.

Grace concedes the critical role of Claimants' counsel in the questionnaire process, but ignores the obvious and substantial burdens attendant with that role. Grace expects each Claimant's lawyer to play "a critical role … in ensuring that the information presented [in the questionnaires] … is true, accurate and complete." Motion at 28. Irreconcilably, Grace insists that "Claimants' counsel should not be permitted to aggregate their clients' burden … ." *Id.* at 26.

Most Claimants are not able-bodied, legally sophisticated, and in the prime of their lives. Most have to rely heavily on their legal counsel. The demands that responding to the questionnaires entail are extraordinary; law firms rarely have to respond to hundreds or thousands of discovery requests all at once. The costs already incurred on enormous, as shown by the various declarations appended to the Joint Response.

**B.      Despite Grace's contention to the contrary, Claimants' individualized objections to the questionnaire based on burden, relevance and other issues are permissible and must be dealt with on their merits.**

Grace exaggerates again when it says that the Court undertook a "line-by-line" review of the questionnaire before it was circulated to Claimants.  The Court did broadly consider certain aspects of the questionnaire raised by committee counsel.  But the Committee does not represent Claimants, and was not knowledgeable of the burden that responding to the questionnaire might impose on a particular Claimant.  The Court, moreover, rightly questioned the Committee's standing to speak for individual Claimants.

Grace concedes that, in the course of normal litigation, objections that various Claimants have asserted would be permissible.  Grace seems to be claiming some special exemption from discovery rules by virtue of status as a debtor in bankruptcy.    Grace is obliged to address itself to the merits of Claimants' various objections and cannot suspect procedures, rules, and constitutional protections that it finds inconvenient for its purposes.

Black-letter discovery law holds that objections based on undue burden, for example, must be anchored in a factual context supported by an evidentiary record.  They may not be ruled upon in bulk, in the abstract and divorced of context.  Only when a discovery request is excessively burdensome *on its face* is there no need for a factual record.  A court cannot "pre-approve" discovery requests that may, upon an evidentiary showing, subject the responding party to excessive burden.

**C.      Grace is incorrect in asserting that questionnaire responses must be signed by Claimants' respective personal injury counsel is without merit.**

Grace's questionnaire includes two (2) signature blocks, one for the "Injured Person" and the other for the "Legal Representative of the Injured Person."  Grace speciously maintains that a Claimant's personal injury counsel is necessarily the "Legal Representative of the Injured Person" and therefore is obliged to sign.

Grace ignores that "legal representative" is a term of art commonly used to refer to an executor of a deceased person or a similar estate representative. The most commonsensical interpretation of the dual signature blocks is that questionnaire responses should be signed by Claimants who are themselves the "Injured Person" *or* the legal representative of the Injured Person if the Injured Person is deceased. In the light most charitable to Grace – after all, nowhere in the questionnaire or its instructions is counsel described as "legal representative" but is rather referenced, interchangeably, as counsel, attorney or lawyer – the signature blocks are ambiguous. In that vein, it should be borne in mind that Grace oversaw the drafting of its own questionnaire.

Grace's contention that the record dispels all ambiguity is incorrect. The breadth of the attestation for a "legal representative" (that is, "I swear that, to the best of my knowledge, all of the information contained in this Questionnaire is true, accurate and complete") strongly suggests that it was never intended to refer to counsel. Grace's insinuation that Claimants' counsel have declined to sign the questionnaires because they have something to hide is both offensive and nonsensical.

**D. Other pertinent issues.**

Overlaying the relief sought by the Motion are two issues of consequence that Grace, frankly, refuses to acknowledge. First, the Court's jurisdiction over the Claimants is doubtful at best, and the idea of either "compelling" persons who have not submitted to the jurisdiction of the Court to do something or denying such persons due process of law (as by summarily overruling objections) is troublesome. Second, given the Court's recent imposition of bar dates with respect pre-petition asbestos personal injury claims, broad claims-related discovery via the questionnaire or otherwise is premature. Claims-related discovery, in the normal course of things, should await (i) the filing of proofs of claim by Claimants who choose to assert claims, and (ii) such objections to claims (as to validity, amount or both) that Grace chooses thereafter to assert.

## Conclusion

Grace's Motion to Compel should be overruled in its entirety.  If, on the other hand, the Court were to deem it appropriate to afford Grace any relief pursuant to the Motion to Compel, the permitted cure period must be realistic.  The Joint Response and supplemental responses attest to the unreasonableness of Grace's suggested 60-day cure period.  A realistic cure period would have to be substantially longer than 60 days.

Dated: September 7, 2006

Sander L. Esserman
Van J. Hooker
David A. Klingler
David J. Parsons
**STUTZMAN, BROMBERG,**
**ESSERMAN & PLIFKA,**
**A Professional Corporation**
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone:  (214) 969-4900
Facsimile:  (214) 969-4999

**COUNSEL FOR RESPONDENTS, VARIOUS**
**LAW FIRMS REPRESENTING PERSONAL**
**INJURY CLAIMANTS**

/s/ Kathleen M. Miller
Kathleen M. Miller (ID no. 2898)
**SMITH, KATZENSTEIN &**
**FURLOW, LLP**
800 Delaware Avenue, 7th Floor
Wilmington, Delaware 19899
Telephone:  (302) 652-8400
Facsimile:   (302) 654-8405
E-mail:  KMM@skfdelaware.com

**LOCAL COUNSEL FOR RESPONDENTS**
**REAUD, MORGAN & QUINN, INC. &**
**ENVIRONMENTAL LITIGATION GROUP,**
**P.C.**

/s/ Daniel K. Hogan
Daniel K. Hogan (ID no. 2814)
**THE HOGAN FIRM**
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone:  (302) 656-7540
Facsimile:  (302) 656-7599
E-mail:  dan@dkhogan.com

**LOCAL COUNSEL FOR ALL OTHER
RESPONDENTS**