**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| W.R. Grace & Company ) | |
| ) | Case No. 01-01139 (JKF) |
| Debtors. ) | (Jointly Administered) |
| ) | |
| ) | **Hearing Date: August 21, 2006,** |
| ) | **2:00 p.m.** |
| ) | **Related to Docket Nos. 6301, 6371,** |
| ) | **6654, 6852, 6853,** |
| ) | **12819, 12921, 12958** |

**ASBESTOS CLAIMANTS REPRESENTED BY JACOBS & CRUMPLAR, P.A.'S RESPONSE TO THE MEDIATION ISSUES RESULTING FROM THE MEDIATION OF AUGUST 29, 2006 TO COMPEL PERSONAL INJURY CLAIMANTS TO RESPOND TO W. R. GRACE'S PERSONAL QUESTIONNAIRE**

**NOW COMES** Plaintiffs, represented by Jacobs & Crumplar, in accordance with the Court's orders and the mediation held on the 29th day of August 2006 and states as follows:

1. On August 29, 2006, the Court ordered mediation was held. During this mediation, three issues appeared to be discussed at length, to which no resolution occurred, although many Claimants' counsel were present to discuss the issues with the representatives of the debtor including the undersigned.

2. The first issue discussed was the proper form of answer to the questionnaire authorized in the core. Discovery proceeding for evaluating Asbestos Personal Injury claims. No attorney representing the Claimants of Jacobs & Crumplar have been present at any of the meetings with respect to said questionnaire. It was understood by all Plaintiffs' counsel that the entire estimating process was a litigation process within the

main bankruptcy. Although Debtor indicates Claimants kept silent during the entire debate over the questionnaire, the underlying issue allegedly is for the questionnaire to provide the Debtor with information on the exposure and disease level of the Plaintiff. A sub theme by W. R. Grace apparently was whether or not the physicians being utilized by Plaintiff might be tainted as they seem to cite the unfortunate case with respect to unfounded diagnoses in the State of Texas. Some of the questions that the Court approved appeared to be more interested in the voracity of the expert than in the actual diagnosis or the exposure.

      3. Since the Bankruptcy Code and the rules of bankruptcy encompass the Federal Rules of Civil Procedure, and a written questionnaire is not a deposition, counsel has taken the position in answering the questionnaire that the information was what Grace was seeking rather than cost shifting by having Claimants' counsel dot and cross each question rather than supply the information which will allow Grace to create its database. In *In Re: Fine Paper Antitrust Litigation*, 685 F.2d 810, 823 (3rd Cir. 1982), the Court clearly held that as long as the records were responsive and the requesting party directed to the correct record, this was a sufficient answer under the Federal Rules. This case law holds the requesting party has to bear the cost with respect to excising the information for their litigation purposes.

      4. This Claimants' counsel does not believe that the Debtor is representing there is not an adversary position between the Debtor's attempt to estimate the value of asbestos claims versus that of the Asbestos Claims Committee agenda or for that matter, the agenda of the future claims representative. It is for this reason that this counsel in providing the Debtor with the information filled the area of the questionnaire for

identification purposes. When it next required a review of the medical records to respond to little boxes, when the medical report of the examining physician would give all of this information, the report was chosen as the proper response to written questions.

    5. Therefore, this Claimant's attorney has taken the position that the medical record was a full answer. One is not hiding any information. One is only providing full disclosure. In fact it is obvious from the questionnaire that the very documents that we are attaching to provide the answers were considered to be a requirement of the questionnaire. It is assumed that Debtor wishes to check the accuracy of what we have filled out with respect to medical responses because of the request for the supporting documents. Thus they are not only asking for our verification that we may have read it correctly but they want to be able to verify that we did not make mistakes. If they know how to go through this record to check, they certainly know how to go through the record to create the database. The Manville or Celotex trust probably goes through the number of questionnaire medicals that have been provided here in this litigation in a matter of weeks to fill out its needed information including a list of doctors that it feels are not to be relied upon. There is no showing by the Debtor that it does not have that identical ability rather than hiring individuals who have no understanding of what they are supposed to be doing except data entry.

    6. The Debtor also argues that this is a hybrid between deposition and interrogatory. Counsel does not understand how this is at all a substitute for a deposition. If this is an attempt by the Debtor to say this is a deposition by written question under Rule 26 and Rule 33 both clearly allow the attachment of documents in giving the response.

7. This does not mean that this counsel has agreed that the questionnaire approved by the Court and hard fought in front of the Court is relevant to the issues or that individual objections to specific questions can have not be made. Although a pathologist report used to answer Part II, Question 1(a) may indicate that he is certified by the American Board of Pathology clearly when there are multiple reports from hospitals which happen all the time in mesothelioma case, from multiple pathologists one never finds out if they are "American Board Certified" to be rendering this opinion. This is not known when reviewing the independent reports of treating hospitals such as Bethesda in Washington, Christiana Hospital in Delaware, John Hopkins in Baltimore, Hahnamann Hospital in Philadelphia or the Fox Case Medical Center. These questions are supposed to be answered by the Plaintiffs. Plaintiffs' counsel would be required to investigate information not in their possession not used at trial or in estimates. In part II number 5, clearly the Claimants who have asbestosis do not understand the medical terminology and what the Debtor is requesting is that Claimant's counsel used their skilled staff to do this on behalf of the Debtor. The Debtor will have the records and rather than just check the counsel or its employees to see if it they read it right they should fill it into their database directly.

8. The Court allegedly held that all of the information on co-defendants (Section 7(a) is relevant to the appraisal of the claim. The fact that Claimant may have had to dismiss the lawsuit against the Defendant because of summary judgment, a settlement or other litigation has nothing to do with evaluation. Many of the lawsuit settlements have occurred and settlement amounts have been paid and in many of the cases this is only with one or two Defendants. In Delaware, settlement amounts are strict and confidential.

The case continues to go forward with other Defendant putting aside the waiting for bankruptcy trusts to pay under the claims procedures. This entire document does not lend anything to evaluating the claim for trust purposes. In addition, Claimants believe that the production of underlying documents is more than sufficient for Grace to understand the nature of claim on both exposure and disease and allow it to properly fill out its own database at its expense.

9. The second major contention was signatures. This counsel has taken the position that requiring the Plaintiff to execute the oath provided is contrary to standard tort practice and in fact even proofs of claim need only to be executed by counsel as a representative of the Claimant. Looking at the oath of the Claimant who swears under "penalty of perjury" that to the best of his knowledge all the information contained in this questionnaire is true, accurate and complete is an oath that I do not believe my clients should sign. That I should sign that the information to the best of my knowledge is true, accurate and complete is one thing when I have during the litigation actually found out most of the information and understand it. However, having my client who never met the coworkers who utilized the product they were exposed to and who do not understand any of the pulmonary function testing or diagnostic tests, sign is improper under the suggested oath. Counsel's signature should be sufficient.

10. The final item that appeared to be whether or not Claimants can object in general to this set or specifically to this set. If this is truly discovery, then clearly such objections are allowable. For instance, the general objection that because of the stay on discovery it is impossible to state whether exposure in some instances has occurred is not a frivolous objection to the underlying process and one which this Court must understand

5

takes some precedent with respect to Grace's conclusions of whether or not exposure occurred.

Based upon the above, these Claimants, through counsel, request as follows:

1.  Attachments should be allowed and that the costs of the preparation of the specific information which has been provided should be borne by the Debtor, not the Claimants.

2.  The signature of Claimants' counsel is more than sufficient to verify the information and no other signature is needed especially with the oath required in the questionnaire from the Claimants.

3.  General objections and objections to specific questions based upon the understanding of Claimant was always contemplated by the Court.  Rulings must be obtained for Grace to go forward with their evaluation if Grace believes the information is needed for evaluation.

**Respectfully submitted,**

**JACOBS & CRUMPLAR, P.A.**

By:____/s/ Robert Jacobs____
Robert Jacobs, Esq. (#0244)
2 East 7th Street
P.O. Box 1271
Wilmington, DE  19899
Tel: 302-656-5445
Fax: 302-656-5875
Attorney for Asbestos Injury
Creditors

Date: September 7, 2006

6

F:\WP70\Bankruptcies\Asbestos Bankruptcies\W.R. Grace Co - 13,754\Pleadings\083106_Supplemental Response to Motion to Compel.rj.doc

7

F:\WP70\Bankruptcies\Asbestos Bankruptcies\W.R. Grace Co - 13,754\Pleadings\083106_Supplemental Response to Motion to Compel.rj.doc