# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Related Docket No. 12823 |
| | ) | September 11, 2006 Agenda Matter No. 2 |

## SUMMARY OF ISSUES NOT RESOLVED IN MEDIATION FOR W.R. GRACE'S MOTION TO COMPEL

Pursuant to the Court's Order Appointing Mediator and Requiring Certain Action (Sep. 13, 2005) and its direction at the July 24, 2006 Omnibus hearing, W.R. Grace & Co. and its affiliated companies (collectively "Grace" or "Debtors") submit this summary of the issues left unresolved by the Mediation with Grace, certain "Responding Claimants," and the PI Committee. No issues were resolved at mediation.

The procedural posture of this case cannot be disputed:

- The merits of the Questionnaire were litigated fully over the past two years. This included claims that the questions were irrelevant and unduly burdensome. *See* Motion to Compel Asbestos Personal Injury Claimants to Respond to the W. R. Grace Personal Injury Questionnaire (Jul. 17, 2006) ("Motion") at 3-7, 15-17; Debtors' Reply to Various Responses to Debtors' Motion to Compel Asbestos Personal Injury Claimants to Respond to the W. R. Grace Personal Injury Questionnaire (Aug. 25, 2006) ("Reply") at 8.

- The asbestos Claimants were fully and vigorously represented by their Committee, which had unquestioned authority to litigate this matter relating to the estimation process generally, and not the allowance of a claim. *See* Motion at 17-18; Reply at 3.

- In the litigation process, the Court and other constituencies sought to craft solutions to concerns raised on behalf of asbestos Claimants, with the Debtors agreeing to "give up" meritorious positions in order to achieve an agreement. *See, e.g.*, Motion at 5; Tr. of Hr'g at 251-266, 269-272, 273-274 (Jul. 19, 2005).

- After this arduous process the Court ruled -- approving the Questionnaire -- and no appeal was taken. *See* Motion at 5, 13-14; Reply at 9.

- Over 170,000 copies of the Questionnaire were mailed to the Claimants and their counsel. *See* Motion at 6.

We are now facing what can only be described as a "show of force" -- 40 law firms, many represented by the same lawyers who participated in the original litigation over the Questionnaire, speaking with multiple voices but from the same script, with the obvious goal of derailing the orderly process toward this now-scheduled estimation. This effort to pack the courthouse with opposition cannot alter the binding history of how the Questionnaire was developed and approved.

The issues raised by the Responding Claimants are neither new nor meritorious:

- Claimants must actually complete the Questionnaire. They may not send Grace searching through scores of "attached documents" (some of which were not even attached to the Questionnaires) and prior discovery that may or may not contain some or all of the responsive information;

- Claimants and their counsel must sign the Questionnaire; and

- Claimants may not lodge threshold objections such as burden or relevance in lieu of answering. The Court already ruled that the questions are relevant and not unduly burdensome.

I. **The Court Has Authority To Order The Completion Of The Questionnaire And Claimants Should Not Be Able To Object In Lieu Of Responding.**

The Court has and had full authority to approve the Questionnaire as the vehicle for discovery in this estimation proceeding. *See* Motion at 10-12; Reply at 2. Various law firms suggest that the Court has violated their (mis-)construction of the discovery rules. Questionnaires have been used for years to conduct discovery in mass tort litigation outside bankruptcy as well as in other bankruptcy cases. *See* Motion at 12-13 (citing use of discovery questionnaires in *In re A. H. Robins* and other bankruptcy cases). That same authority both exists and enjoys enhanced flexibility and status in bankruptcy where one debtor and one Court must deal with discovery related to thousands of claims. *See id.* at 12, 25. The rules for

2

answering interrogatories or document requests do not constrain the Court's power to obtain information in a streamlined fashion. *See* Motion at 12-14, 24-25; Reply at 7-8. The Questionnaire stands in place of more formal and time consuming procedures such as interrogatories and depositions, but draws from both. *See* Motion at 13, 24-25; Reply at 7.

## II. The Claimants Cannot Attach Documents In Lieu Of Answering The Questions.

The requirement that documents be attached to the Questionnaire was designed to *supplement*, not replace, providing answers to the questions in the Questionnaire. *See* Motion at 21; Reply at 6. Indeed, the only instance in which the Court condoned attaching documents to the Questionnaire was as *"supporting documentation." See* Motion at 21 and n.7; Tr. of Hr'g at 229-236 (Jul. 19, 2005) (emphasis added). The focal point of the Questionnaire is the Claimants' contentions regarding the factual basis for their claims. That can only be determined by the individual Claimants. The attachment serves as verification for those contentions. *See* Motion at 21; Reply at 6. Without first knowing a Claimant's underlying factual contentions, attaching documents is nothing but an opportunity to allow the Claimant to make no contention at all.

## III. Claimants And Their Counsel Must Sign The Questionnaire.

The Court ordered the Claimants and their attorneys to sign the Questionnaire -- there can be no question. *See* Motion at 28. The purpose of having counsel sign the Questionnaire was plain. Because counsel would obviously be filling out much of the Questionnaire, they needed to represent that the responses are accurate and complete to the best of the attorney's knowledge. *See id.*

Some Responding Claimants feign not understanding that "legal representative," as used in the Questionnaire, meant the attorney. *See* Reply at 9. But that is obviously a display of deliberate ignorance, as the Court has been clear. *See id.* at 10.

3

Some also claim that Claimants cannot sign because they are infirm. *See id.* at 9. If that is the case, Grace would obviously accept a sworn declaration of such infirmity and inability to sign from the Claimant's counsel. *See id.*

## IV. Conclusion.

No issues specifically related to any individual Claimant have been raised as an impediment to responding to the Questionnaire. The Court indicated that it had the flexibility to hear that issue if there was some particular circumstance giving rise to a particular burden or other claim for relief. *See* Motion at 4-5, 15; Tr. of Hr'g at 26-27, 41 (Apr. 17, 2006). Nothing the Court said indicates anything more. Totally absent from any of the submissions is anything responsive to this issue. No individual made a burden claim. To the contrary, the Court has heard only about burdens on the particular law firms.

In light of the foregoing, we now expect the inevitable chorus of voices at the September 11, 2006 hearing on behalf of law firms who have dealt with questionnaires/claims forms for nearly twenty years to complain bitterly that the whole process is ill-conceived and they should not be put to the trouble of completing the Questionnaire. This transparent effort to intimidate the Court and impair the ability of other constituencies to make their case in estimation should be rejected for all of the reasons already stated by the Court:

> "I think it's very unlikely, having gone through the process that this Court went through for days about the questionnaire, that a whole lot of objections are going to be sustained to the information requested on the questionnaire. So, folks get it filled out and get it returned . . . . The language was vetted by everybody who was present in court. The courtroom was filled on all of those days, so frankly, I don't think you're going to have too many objections that will be sustained. There may be some. I'm not ruling in advance, but the presumption that I'm going to make is that this questionnaire was essentially what everybody agreed on could make sense for the parties who had to fill it out and could be returned in some completed fashion. So that's the presumption I'm starting with." Tr. of Hr'g at 162 (Aug. 21, 2006).

The time has come to simply get the job done.

Wilmington, Delaware

Dated: September 7, 2006

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000


KIRKLAND & ELLIS LLP
Barbara M. Harding
David Mendelson
Brian T. Stansbury
Amanda C. Basta
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:   (202) 879-5000
Facsimile:    (202) 879-5200

*and*

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

*/s/ James E. O'Neill*
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession