# Exhibit 2

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              . Case No. 01-1139(JKF)
                                    .
                                    .
W.R. GRACE & CO.,                   . 5414 USX Tower Building
                                    . Pittsburgh, PA  15222
                                    .
                  Debtor.           .
                                    . January 25, 2006
. . . . . . . . . . . . . . . . . . 2:12 p.m.


TRANSCRIPT OF HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Property Damage          Bilzin Sumberg Baena Price
Committee:                          & Axelrod LLP
                                 By:  SCOTT L. BAENA, ESQ.
                                      MATTHEW KRAMER, ESQ.
                                 Wachovia Financial Center
                                 200 South Biscayne Boulevard
                                 Suite 2500
                                 Miami, FL  33131


Audio Operator:                  Janet Heller




Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**

1  case including why Georgia -- why it's the Georgia statute of
2  limitations that applies, but I offer, Your Honor, if you want
3  briefing on this in the same schedule we're doing for
4  Prudential before hearing the argument and having the benefit
5  of all of that, we're happy to defer it.

6          THE COURT:  I think Mr. Speights wants to piggyback
7  onto that briefing, and I think that's a legitimate request.
8  But, Mr. Speights, I would not rely on the set of facts that's
9  coming up in the Prudential issue.  I don't think it's going to
10 be the same.

11         MS. BROWDY:  Okay, and --

12         THE COURT:  And if you want to do the same thing on
13 the Tennessee statute of repose, that's fine, too, because I
14 think that is also a choice of law issue.

15         MS. BROWDY:  I agree, Your Honor, and just to clarify
16 for the benefit of Mr. Speights, who was not here yesterday,
17 our brief on the choice of law issue is going to go in on
18 February 3rd.  The claimants' brief is due February 24th, reply
19 briefs are due March 3rd, and the issue will be set for the
20 omnibus hearing on March 27th.

21         THE COURT:  Okay.

22         MS. BROWDY:  Okay, so that actually brings us to the
23 last item on the agenda which is the objection to claims that
24 have falsely asserted 2003 as the date the claimant was aware
25 of asbestos in the building.  We have indicated that we raised

80

1   that objection to essentially all pending claims.  My
2   understanding from the Court's ruling earlier this afternoon,
3   we would only go forward as to the U.S. claims not the Canadian
4   ones.  But I also had a sense from the Court that the Court may
5   not believe this issue is ripe for adjudication, and I don't
6   know if I should launch into my argument, or if a discussion in
7   advance would be --

8        THE COURT:  Well, I -- the reason I'm not sure that
9   it is appropriate for adjudication on this basis is I think
10  you're going to have to show me building owner by building
11  owner what day they knew about the -- not just the presence of
12  asbestos but the presence of Grace's product.  Isn't that the
13  issue?

14       MS. BROWDY:  Well, I think that there are a couple
15  problems, Your Honor.  One this is the claim form asks the
16  owner to identify what date they had knowledge of asbestos on
17  the property, which Mr. Speights reply paper has suggested they
18  interpreted it to mean Grace asbestos.  But that's really just
19  not consistent with the record we have in this case.  For
20  example, Your Honor, we know again from dealing with the
21  Anderson Memorial case issues back in October that hundreds or
22  thousands of claims were submitted in this case by Mr. Speights
23  on behalf of claimants the firm had never met and never spoke
24  to, and they all indicated 2003 as the date of knowledge, so,
25  obviously, it's not reflecting anything.

1          The same thing when Speights now says, well, it's not
2   the date we knew of asbestos on the property.  It's when we
3   knew of Grace asbestos on the property.  The problem with that
4   comment, Your Honor, is that because the Court ordered Speights
5   to produce evidence of authority and product I.D. and the like,
6   Speights in response to this Court's order, docket 9501,
7   identified more than 15 hundred buildings that ultimately were
8   withdrawn that had no product I.D., and those all listed 2003
9   as the date of knowledge.  So it was just a -- it's not 2003
10  was when they first knew about Grace.  Two thousand three is a
11  date that the firm just made up on the claim form with no
12  factual basis.  It's --

13          THE COURT:  Well, that may be, but I think you need
14  to prove that as a matter of claimant by claimant.  I don't
15  think it's a valid assumption to say that there is not one of
16  these -- I'm not sure how many -- 60 claims that are in this
17  category -- U.S. claims that are in this category that really
18  didn't have knowledge of something until 2003.  It's a fact
19  inquiry.

20          I understand you want to get into the reasonable duty
21  to inquire, and if, in fact, the building owner had some
22  knowledge of anybody's asbestos on the property, hypothetically
23  speaking, back in 1980, then they may be barred by the statute
24  of limitations.  Maybe they had a duty to inquire and
25  investigate at that time to find out that it was Grace's

1  product.  But I don't think it's valid just to say that because
2  they put 2003 down on a claim form, (a) that it's false, or (b)
3  that it's false as to all claimants who listed 2003.  It's a
4  factual issue.  Isn't it?

5          MS. BROWDY:  Well, I think the problem is again that
6  there is such an abysmal track record at this point by this --

7          THE COURT:  Regardless.  I mean there may -- there
8  may be an abysmal track record as to, you know, 2,911 out of
9  2,912 claims, but if there's one valid claim, I'm not going to
10 strike it, simply because the other 2,911 aren't proper.

11         MS. BROWDY:  Well, here's the problem I have again,
12 Your Honor, and we reflected it in our 15th omnibus objection,
13 which is we can only take these clams forms and start with the
14 presumption that the data people gave us signed under the
15 penalties of perjury were true.

16         THE COURT:  Right, so assuming that 2003 really is
17 the right date, then I have to accept that as prima facia
18 evidence that that's the date.

19         MS. BROWDY:  But the problem is we know definitively
20 that that date was a lie.  We know that for at least 15 hundred
21 or --

22         THE COURT:  And they've been stricken --

23         MS. BROWDY:  Correct, Your Honor.

24         THE COURT:  -- or withdrawn.

25         MS. BROWDY:  But then there's no -- there should not

1 be a presumption of validity for the other entries.

2           THE COURT:   I don't think it works that way, Ms.
3 Browdy.   I think every proof of claim form gets a presumption
4 of validity, and it's the debtor's obligation to challenge that
5 presumption.

6           MS. BROWDY:   Again, we're here challenging it.   We've
7 made an objection.   We've made a record of the others, and we
8 would ask then at the least, Your Honor, that Mr. Speights be
9 forced for every remaining claim to go back to his claimants
10 now that we understand that this is a question that we're
11 entitled to a true answer for and go back and get the signature
12 of the claimant under oath answering that question.

13           THE COURT:   All right.   That's fine.   Mr. Speights, I
14 think the issue is not when you knew but when your client knew,
15 and if there's some -- you know, some issue about it, I think
16 your clients ought to tell us what the date of knowledge was.

17           MR. SPEIGHTS:   May I be heard on that, Your Honor?
18           THE COURT:   Sure.

19           MR. SPEIGHTS:   And I'm trying to be constructive.   I
20 understand you think the clients should provide some more
21 information.   I'm not going to argue with you on that.   Ms.
22 Browdy and I seriously disagree on the interpretation of the
23 question at issue.   We don't need to get bogged down in that
24 now.   I've had other people look at it, and I've got a plethora
25 of interpretations of that question by people not involved in

84

1  this.

2         The question is -- and whether it's asked pursuant to
3  your directing us to ask it or my interrogatory to our clients,
4  the question is what is the question?  What is the question
5  that the clients are going to answer?  What is it that we want
6  to know from the clients?

7         THE COURT:  Actually, I think you want to know two
8  things.  Number one, what is the dates that they knew there was
9  asbestos in the building, and number two, what is the date that
10 they knew that it was Grace's asbestos in the building.

11        MR. SPEIGHTS:  And then my third question would be --
12 and I'm not commenting yet on what you think on that, but my
13 third question would be is -- and I'm not trying to be coy with
14 this -- who's the client?

15        THE COURT:  Well --

16        MR. SPEIGHTS:  Because we've done this in litigation.
17 Are you asking for when the CEO of the company knew, when the
18 asbestos coordinator knew, when the maintenance worker knew,
19 when the previous owner knew?  I mean Grace has taken bunches
20 of depositions trying to figure this out from all sorts of
21 people.  Is it sufficient if I write the head honcho at my
22 client and say Judge Fitzgerald has directed me to ask you when
23 did you first know?  I mean I want to get it right this time
24 and --

25        THE COURT:  Corporations act by agents all the time.
                    **J&J COURT TRANSCRIBERS, INC.**

1  I mean this is not a bankruptcy issue.  This is either a

2  corporation or partnership or whoever owns the building.  Maybe

3  it's an individual owner, and in that case it's pretty easy.

4          MR. SPEIGHTS:  But I asked Grace -- asked them for

5  years when did you first know that asbestos caused

6  mesothelioma, and they would say, well, various employees may

7  have known certain things, but the corporation itself didn't

8  know.  I guess --

9          THE COURT:  They're not going to play that game here

10 either, Mr. Speights.  Neither side is going to play that game.

11         MR. SPEIGHTS:  All right, then I want to comment on

12 the --

13         MS. BROWDY:  Your Honor, this could be very

14 straightforward.  I want the signature of someone who can bind

15 the claimant.

16         MR. SPEIGHTS:  That's what I thought.  Now --

17         THE COURT:  So if it takes the President of the

18 company, and he has to send an e-mail out to every employee,

19 past and present, then I guess, you know, companies do this

20 kind of thing all the time.  They know how to get information.

21         MR. SPEIGHTS:  I understand that, Your Honor, but

22 that leads me to my next concern.  And it may be a concern --

23 I'm not sure.  This may be of concern of other property damage

24 claimants beside my own.  I don't want to do something that's

25 not going to -- this is going to be a lot of work on behalf of

1  my clients.  They are claiming in the bankruptcy, and if they
2  need to do the work, they will do the work.  Okay?  But I
3  really would like us to pause a minute and ask is this going to
4  accomplish anything, because the law seems to be almost
5  universal now that it does not matter when you knew that you
6  had asbestos or does not matter when you knew that you had
7  Grace's product.

8       The statute of limitations decisions from throughout
9  the country have now developed over the last 20 years or more
10 into consistent findings that the important question is not
11 when you knew you had asbestos or even if it was Grace's
12 asbestos but when you knew your building had been injured.  In
13 the MBU case, which I've cited many times to you, the lower
14 court judge, an Eisenhower appointee, one of the most
15 experienced judges in the mid-west, charged the jury that they
16 were entitled to know that Grace's product was identified in
17 1980.  That the building owner knew it and didn't bring it for
18 seven/eight years, and not surprisingly, the jury found against
19 the building owner, because the statute had run.  And the
20 Eighth Circuit Court of Appeals said, no, that doesn't trigger
21 a statute, not when you knew you had asbestos in floor tile or
22 TSI or some other material or even in Grace's product.  It
23 doesn't trigger it when you know that Grace's product is in the
24 building.  It's when you knew that -- knew or should have known
25 that you've been injured.

**J&J COURT TRANSCRIBERS, INC.**

1          So at least I would suggest, Your Honor, that Grace

2    would have to tell you what benefit this information is.    I'm

3    not talking about the claim form now going out to all these

4    claimants.    What benefit is it going to do?    It may even be

5    that in most instances there almost could be a Grace question

6    based on a state by state.    I mean in those states almost

7    request you to admit that you knew about the presence of

8    asbestos before 1992 or 1987 or whatever, because we want to

9    take the position it doesn't matter.    They're going to take the

10   position, at least I've heard Mr. Bernick say, it's when they

11   knew they had asbestos, some sort of constructive notice.

12          But to require building owners to go digging in all

13   sorts of records of themselves and previous owners and previous

14   employees seems to me a gargantuan task if it doesn't get us to

15   where Grace wants to be and you want us to be, and I would ask

16   that we at least try to massage this little bit before we

17   undertake that.

18          MS. BROWDY:    Your Honor, this is actually a very good

19   introduction to tomorrow's class action hearing, because once

20   again Mr. Speights is trying to reargue issues that this Court

21   took head on four years ago.    There was plenty of argument,

22   I've read the transcript, I've seen the briefs as to what ought

23   to be in the claim form, what information the claimant was

24   required to provide.    Everyone else has had to put this

25   information in.

**J&J COURT TRANSCRIBERS, INC.**

1        THE COURT:  Yes, the fact that they have to put the
2   information in and that Grace wants to know that information,
3   because it may prompt an inquiry duty -- I mean it may prompt
4   that, and under some states that may be enough -- is relevant
5   information, but it may not be the means all and end all to the
6   issue of the injury, as Mr. Speights says.  Now proof of claim
7   form from my point of view has many purposes, but the primary
8   purpose is to let the debtor tee up objections to the claims,
9   so that you can figure out what the universe of claims is, so
10  that you can get a plan underway.

11       MS. BROWDY:  Right.  So we're trying to get the same
12  information from Mr. Speights' clients that all the other
13  clients had to provide.

14       THE COURT:  So if you want it, that's fine.  You
15  know, you can send him an interrogatory or send the building
16  owners interrogatories and ask that question as to when they
17  knew whatever it is you want to know, but that's without
18  prejudice to Mr. Speights' ability to argue that that's not the
19  relevant question anyway.

20       MS. BROWDY:  I have no dispute with that, Your Honor,
21  but the point was that this question was posed to the
22  claimants.  The claimants were supposed to sign this under
23  penalty of perjury, and instead we had Mr. Speights and his
24  colleague sign almost 3,000 claim forms without making any
25  inquiry.  We shouldn't have to go through the hoops now of

**J&J COURT TRANSCRIBERS, INC.**

1 serving discovery, having him make objections, come back before

2 the Court, and the like.  This is the information that the

3 Court required can be provided in response to the claim form,

4 and Mr. Speights should now be ordered by this Court to go back

5 to his clients and get the information that was asked for four

6 years ago from somebody that can bind these claimants.

7           THE COURT:  Ms. Browdy, I'll do that.  Here's the

8 problem.  If I do it, you're going to get the same kind of

9 probably wishy washy information you're getting, because

10 apparently, there is some dispute as to what the meaning of the

11 claim form is.  So if you want me to simply have Mr. Speights

12 go back to his clients, get a different date, if it's a

13 different date or the same date, if it's the same date, and

14 have the client sign it, I'll do that.  If what you really want

15 to know is what did they know and when did they know it, I

16 don't think that form is going to do it for you.

17           MS. BROWDY:  So you'd rather have us prepare

18 interrogatories and serve them?

19           THE COURT:  I don't -- look, it's the debtor's

20 discovery.  I don't have a view about how -- at this point in

21 time how to do it or not do it.  What I would like to do is

22 figure out which claims are valid claims, so that they can move

23 through the system and weed out the ones that aren't valid

24 claims, so that they don't have to weed through the system.

25 I'm just not convinced at this point that that question's going

**J&J COURT TRANSCRIBERS, INC.**

90

1  to do it for you, but, you know, you're in charge of your case.

2  I'm not.  So that's the -- if that's the form you want signed

3  and the question you want asked, then I'll direct Mr. Speights

4  to go back to each of those clients he's included in K on this

5  chart and get a client with authority to bind the claimants to

6  sign the proof of claim form, and if the date needs to be

7  changed, change the date, so that it's accurate.  If it's the

8  correct date, obviously, they'll leave it alone.

9          MS. BROWDY:  Can I have a brief recess before

10 responding, Your Honor?

11         THE COURT:  I think you should talk to Mr. Speights,

12 too, for a minute, but yes.  How much time would you like?

13         MS. BROWDY:  Well, actually, since we're going to be

14 before the Court at 9:00 a.m., should we just take this up

15 tomorrow morning?

16         THE COURT:  Mr. Speights, do you want to defer until

17 tomorrow to see if you two can figure this one out?

18         MR. SPEIGHTS:  That suits me fine, Your Honor.  I'll

19 also need to call my office and have them overnight all the

20 California State claims, so that gives me a chance to do that.

21         THE COURT:  All right.  It's continued until

22 tomorrow.

23         MS. BROWDY:  That was our agenda for this afternoon,

24 Your Honor.

25         THE COURT:  Anybody else have any matters today?

91

1                    (No verbal response)

2             THE COURT:  Okay.  I'll see you tomorrow.

3             MS. BROWDY:  Thank you, Your Honor.

4             MR. SPEIGHTS:  What time are we starting tomorrow,

5    Your Honor?

6             THE COURT:  Nine o'clock.

7             MR. SPEIGHTS:  Thank you, Your Honor.

8                         * * * * *

9                       **CERTIFICATION**

10            I, PATRICIA C. REPKO, court approved transcriber,

11   certify that the foregoing is a correct transcript from the

12   official electronic sound recording of the proceedings in the

13   above-entitled matter to the best of my ability.

14

15   /s/ Patricia C. Repko          Date:  February 3, 2006
16   PATRICIA C. REPKO
17   J&J COURT TRANSCRIBERS, INC.

**J&J COURT TRANSCRIBERS, INC.**