### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | **Chapter 11** |
| | ) | |
| **In re:** | ) | **Case No. 01-01139 (JKF)** |
| | ) | |
| **W. R. GRACE & CO., et al.,** | ) | **(Jointly Administered)** |
| | ) | |
| **Debtors.** | ) | **Docket No.: 13034** |
| | ) | **Response Deadline: September 8, 2006** |
| | ) | **Hearing Date: September 25, 2006** |
| _____ | ) | |

### JOINT OBJECTION OF THE OFFICIAL COMMITTEE OF ASBESTOS PROPERTY DAMAGE CLAIMANTS, THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS, THE FUTURE CLAIMANTS' REPRESENTATIVE, THE ZONOLITE ATTIC INSULATION CLAIMANTS AND THE LIBBY CLAIMANTS TO THE MOTION OF DEBTORS AND DEBTORS IN POSSESSION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR THE PRODUCTION OF <u>DOCUMENTS</u>

The Official Committee of Asbestos Property Damage Claimants (the "PD Committee"),

the Official Committee of Asbestos Personal Injury Claimants (the "PI Committee"), the Future

Claimants' Representative (the "FCR"), the Zonolite Attic Insulation Claimants[1] (the "ZAI

Claimants") and the Libby Claimants (the "Libby Claimants;" collectively, with the PD

Committee, PI Committee, FCR and ZAI Claimants, the "Objectors") of the above-captioned

debtors and debtors-in-possession (collectively, the "Debtors"), by and through their respective

undersigned counsel, hereby submit this objection (the "Objection") to the *Motion of Debtors*

*and Debtors in Possession Pursuant to Federal Rule of Bankruptcy Procedure 2004 for the*

---

[1] All capitalized terms used, but not defined herein, shall have the meanings ascribed thereto in the Motion, without any acknowledgement that the definitions used in the Motion are accurate or complete, in any respect.

MIAMI 1151420.2 7481715537                    1

*Production of Documents* (the "Motion").   In support of their Objection, the Objectors respectfully represent as follows:

## PRELIMINARY STATEMENT

On March 10, 2006, this Court entered an Order[2] extending the Debtors' exclusive periods to file and solicit a plan of reorganization premised upon the commencement of a formal mediation process. By that Order, the Court appointed the Honorable Samuel C. Pointer, Jr. to mediate consensual plan negotiations among the Debtors, the Objectors and other constituencies. During the course of the Court-ordered mediation, certain agreements were reached by and among the PD Committee, PI Committee and the FCR (collectively, the "Official Asbestos Constituencies"), which have the support of the ZAI Claimants and the Libby Claimants. At the Court's direction, the terms of those agreements were confidentially shared with the Debtors. In addition, at the Debtors' request, the Official Asbestos Constituencies provided the Debtors with the writings between and among them setting forth the terms of their agreements. Now, on the pretense that the Debtors "believe that other responsive documents may exist, but are being unreasonably withheld," the Debtors seek to transform what was a settlement effort into a full-blown litigation exercise. There is no wonder why the Debtors have not, cannot and will not achieve a consensual plan of reorganization in these cases. The Motion should be denied in its entirety and protection against all discovery in this regard should be ordered.

## OBJECTION

### A.   The Discovery Sought Violates the Confidential Nature of the Mediation

1.   On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate

---

[2] See Docket No. 12031.

MIAMI 1151420.2 7481715537                    2

their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2.    Since the Petition Date, the Debtors have sought and received eight extensions of their exclusive periods to file and solicit a plan of reorganization. The Debtors' ninth motion for an extension of the exclusive periods was scheduled to be heard at the February 27, 2006 omnibus hearing. However, at the February 27th hearing, the Debtors suggested that exclusivity be extended on an interim basis for sixty days to allow for a mediation of plan negotiations. The Debtors' suggestion was agreed to by the Official Asbestos Constituencies. As a result, by Order dated March 9, 2006 [Dkt. No. 12031], the Court extended the Debtors' exclusive periods for approximately sixty days and appointed the Honorable Samuel C. Pointer, Jr. to serve as the mediator.[3]    Consistent with notions of confidentiality which are typical of court-ordered mediations, the Order appointing Judge Pointer permitted him to report to the Court on the general status, but not the substance, of the plan discussions. See Dkt. No. 12031, ¶3.

3.    Subsequently, in March and April, 2006, Judge Pointer convened a number of in-person and telephonic mediation sessions among the Debtors, the Objectors and other constituencies.    The sessions facilitated and enabled the Official Asbestos Constituencies to reach certain agreements concerning a plan of reorganization amongst themselves, but not with the Debtors or any other constituency.

4.    As a result of the Debtors professing ignorance of the agreements reached by the Official Asbestos Constituents, at the June 19, 2006 omnibus hearing, the Court directed counsel to the Official Asbestos Constituencies to meet with the Debtors' counsel to inform them of the

---

[3]    The Debtors' exclusive periods have subsequently been extended on an interim basis through the upcoming hearing on September 11, 2006. Each Official Asbestos Constituency, among others, has objected to any further extension of the Debtors' exclusive periods.

terms and structure of the agreements reached. See June 19, 2006 Hearing Transcript at pp. 24-25. Within a week of that hearing, counsel to the Official Asbestos Constituencies did in fact convene a meeting with the Debtors' counsel and explained in detail the terms and structure of the agreements. During that meeting, the Debtors' counsel requested any writings that memorialized the agreements reached by the Official Asbestos Constituencies in order to facilitate its analysis of the agreements. Considering the request for documents to be consistent with the Court's directive to explain the agreements, counsel to the Official Asbestos Constituencies agreed to share with the Debtors, solely for purposes of facilitating the mediation, the documents that memorialized the terms of the agreements reached among them.

5. Despite obtaining the agreement to be provided with the documents memorializing the agreements reached among the Official Asbestos Constituencies as part of the mediation, on July 6, 2006, the Debtors' counsel sent a draft Rule 2004 request to, among others, counsel to the Official Asbestos Constituencies, requesting, inter alia, the documents that such counsel already voluntarily agreed to provide in conjunction with the mediation. To clarify their position, on July 7, 2006, counsel to the PD Committee, on behalf of the Official Asbestos Constituencies, responded to the Debtors' counsel in respect of the draft Rule 2004 request, as follows (emphasis in original):[4]

> Barbara [Harding]---
>
> The ACC and the FCR have asked that I take responsibility for the subject matter of your following e mail and its attachments. Per the inquiry in your letter, I am available for a call on Monday (before 1 or after 3pm EDT) and Tuesday. However, when Elihu, Roger and I met with David last week we told David that we would provide him with copies of whatever documents we had (which we believed consisted of several e mails) which memorialized the agreement between PI and PD and

---

[4] A complete copy of the email is attached hereto as Exhibit A.

between PD and ZAI for purposes of Grace's consideration of the matters discussed at that meeting consistent with the direction of the Court. We are still willing to do so. To that end, we have determined that there are several e mails concerning the PI/PD agreement. However, as to the PD/ZAI agreement, there are no documents save correspondence with PD Committee counsel inquiring as to the agreement that we deem protected from disclosure. Thus as to the latter we are preparing a summary of the agreement reached which we will provide you.

Based on the foregoing, I'm not really sure why we need to have a telephone conference but as I said above, I am happy to do so if that is your desire. I do wish to make it very clear though that if you were to seek to issue the more formal "discovery request" appended to your e mail we would likely oppose the same as it suffers from a variety of deficiencies and more importantly seems to imply that Grace seeks the material requested for some purpose other than its consideration of the matters discussed with David at the direction of the Court. That is the only purpose for this disclosure and our willingness to so disclose is based on that limit on what the documents can be used by Grace for.

Let me know what suits you.

With all good wishes,
Scott [Baena]

6.      As Mr. Baena made clear, the Official Asbestos Constituencies only agreed to provide the requested material in furtherance of the mediation in order to allow the Debtors to consider the information previously provided orally to their counsel. Thus, on July 17, 2006, Mr. Baena sent an e-mail[5] to the Debtors' counsel that included the terms of the agreements concerning the sharing of distributions reached between the Official Asbestos Constituencies.

7.      Debtors' counsel replied to Mr. Baena on July 18, 2006, and, in referring to their July 6, 2006 draft Rule 2004 request, asked if he could "confirm that there are no other responsive documents that fall within the 2004 request?"[6]

---

[5]  A copy of Mr. Baena's July 17, 2006 email is attached hereto as Exhibit B. Due to the confidential nature of the subject matter of the attachments to the July 17, 2006 email, such attachments have not been included with Exhibit B attached hereto.

[6]  A complete copy of the email is attached hereto as Exhibit C.

8.     Mr. Baena responded to the Debtors' counsel's inquiry and re-iterated that the

production of documents was made only in furtherance of the Court's directive to do so, and not

in response to an improper Rule 2004 examination, as follows:[7]

> I wish to make clear what I have previously told you. We did not and do
> not think that the request, if made, would be appropriate and that we
> would move for protection rather than respond to it. However, in an effort
> to ensure that we have complied with Judge Fitzgerald's direction that we
> share with Grace the agreement reached between PI and PD, we
> volunteered to provide you with any writings between PI and PD, which
> were not otherwise protected or privileged, and which memorialized the
> agreement reached. That is precisely what we have done.

9.     Thereafter, on July 19, 2006, Mr. Baena sent a follow-up email to the Debtors'

counsel that included the remaining document which he referred to in his July 17, 2006 e-mail

that embodied the agreements reached by the Official Asbestos Constituencies.[8]

10.    Nevertheless, on August 21, 2006, the Debtors filed and served the Motion, which

includes a request for documents and five separate "requests for information."[9]  With respect to

the documents requested, the Debtors seek:

> [a]ll documents relating to any agreement, arrangement or contract
> (whether oral or written) entered into within or among the PI Committee,
> PD Committee, Libby Claimants, ZAI Claimants and FCR relating to any
> potential chapter 11 plan, plan negotiations, payment of claims, valuation
> of claims, or other resolution of this Action.

See Motion, Exhibit A, p. 4.

11.    The only bases set forth in the Motion for the requested relief is that it "will

facilitate Debtors' ability to negotiate a plan of reorganization and resolve these chapter 11

---

[7]  A complete copy of the email is attached hereto as Exhibit D.

[8]  A copy of Mr. Baena's July 19, 2006 email is attached hereto as Exhibit E.  Due to the confidential nature of the subject matter of the attachment to the July 19, 2006 email, such attachment has not been included with Exhibit E attached hereto

[9]  The procedural infirmities of the Motion, including the "requests for information" are addressed in Section C below. The "requests for information" were not included in the draft Rule 2004 request received on July 6, 2006.

proceedings," that it is "crucial to the Debtors' ability to formulate a <u>confirmable</u> plan of reorganization," and, that the Debtors "believe that other responsive documents may exist, but are being unreasonably withheld." <u>See</u> Motion, ¶¶8, 13 and 9, respectively (emphasis added). Those statements are telling, particularly in light of the fact that the Debtors have been fully apprized, both in writing and in person, of the agreements reached among the Official Asbestos Constituencies. Clearly, the Debtors' generalized, self-serving statements are not sufficient to establish "cause." <u>See</u> <u>In re Drexel Burnham Lambert Group, Inc.</u>, 123 B.R. 702 (Bankr. S.D.N.Y. 1991) ("The burden of showing good cause is an affirmative one in that it is not satisfied merely by a showing that justice would not be impeded by production of the documents."); <u>In re Eagle-Picher Indus., Inc.</u> 169 B.R. 130, 133 (Bankr. S.D.Ohio 1994). This is not a situation where the Debtors can establish that the failure to proceed with the Rule 2004 examination would cause injustice. <u>Id.</u> Indeed, the Debtors have had their non-confirmable plan of reorganization on file with this Court since November 2004 and have failed to make any amendments to that plan that may move it towards one that could be confirmed. Perhaps that should be their starting point rather than launching into a litigation exercise that is only intended to create leverage.

12.    It is indisputable that the purpose of the Court's directive to the Official Asbestos Constituencies to share with the Debtors the terms of the agreements reached by them was in furtherance of the mediation that was commenced at the Debtors' request and underscored the Court's interim extensions of the Debtors' exclusive periods. The Debtors should not be permitted to pierce confidential settlement discussions by simply hiding behind the rubric of seeking to "formulate a confirmable plan of reorganization." Indeed, when faced with a factually similar issue, the <u>Eagle-Picher</u> court would not allow the unsecured creditors committee

in that case to proceed with Rule 2004 examinations of certain officers and professionals of the debtors in respect of agreements reached with their asbestos claimants. See Eagle-Picher. 169 B.R. at 134. The court determined that because the constituencies were in the posture of negotiating their respective interests and the unsecured creditors committee knew the contents of the proposed deal, there was no basis to allow the discovery to go forward. Id. The result should be no different in this instance.[10]

**B.     The Request for Documents is Overly Broad and Vague**

13.     In addition to the foregoing, there are a number of basic infirmities with the Motion and the Requests included therein. As explained above, the Debtors have directed the Request for Documents to each Official Asbestos Constituency, the ZAI Claimants and the Libby Claimants and stated "[i]f all documents have been produced that related to the Request for Production of Documents as set forth below, then the Parties should be compelled to confirm same. Otherwise, the Parties should be compelled to produce all responsive documents." See Motion, ¶8. Of course, "the devil is in the details" and what the Debtors fail to identify is the breadth and vagueness of the Request for Documents.

14.     First, it includes a request for documents that pre-date the Petition Date! The Request for Documents seeks documents from "January 1, 2001 through the date on which the answers in response hereto are made." See Motion, Exhibit A, ¶11 (emphasis added). Clearly, the Debtors had only one goal in mind by filing the Motion - - to harass the Objectors for having obeyed the Court's direction to endeavor to reach an agreement and reaching one that does not

---

[10]    That result is not dissimilar from this Court's decision in Pittsburgh Corning, on a corollary point. In that case, certain insurers served discovery requests seeking, among other documents, draft plans of reorganization. The Court ruled, "[t]he plan is what the plan is. Prior drafts of the plan are not discoverable, they're not admissible, they're wholly irrelevant, I ruled that ways [sic] in Combustion Engineering,, [sic] I'm going to stick with those same rulings, they're not admissible, they're not discoverable." See In re Pittsburgh Corning Corp., Case No. 00-22876 (JKF) (Bankr. W.D. Pa.) February 19, 2004 Hearing Transcript, at 64.

MIAMI 1151420.2 7481715537                 8

provide any recovery to equity as it is premised on the Debtors' insolvency. See In re Duratech Indus., Inc., 241 B.R. 291, 296 (Bankr. S.D.N.Y. 1999); In re Mittco, Inc., 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984) (Rule 2004 examinations may not be used to harass or abuse proposed examinees).

15.     Second, the documents requested are those that relate to "any agreement, arrangement or contract (whether oral or written) entered into within or among the PI Committee, PD Committee, Libby Claimants, ZAI Claimants and FCR relating to any potential chapter 11 plan, plan negotiations, payment of claims, valuation of claims, or other resolution of this Action." See Motion, Exhibit A, p.4.

16.     When viewed in its entirety, the Debtors' Motion could be read to seek virtually unfettered access to over five years of privileged communications within and among each Official Asbestos Constituency and the other Objectors related to the very heart of the disputes at the forefront of these cases - - the value of the Debtors' asbestos liabilities. Read broadly, the Debtors are seeking documents that go far beyond the agreements reached by the Official Asbestos Constituencies during the mediation. Indeed, the blunderbuss nature of the request suggests the Debtors are seeking documents related to intra-committee agreements that are simply "old and cold." Clearly, the Debtors are not entitled to such a wide-ranging array of documents. In fact, "[a] Rule 2004 examination is not intended to provide *debtors* unlimited access to the internal affairs of its creditors and those employed by its creditors." See In re GHR Energy Corp., 33 B.R. 451, 455 (Bankr. D. Mass. 1983). Moreover, as explained above, the Official Asbestos Constituencies have already provided the Debtors with copies of the relevant documents that set forth the agreements reached during the mediation. The Debtors ought not be entitled to anything further.

17.     Making matters worse, the definitions of PD Committee, the PI Committee, FCR, ZAI Claimants and Libby Claimants are so broad that it is impossible to draw distinctions concerning communications between Committee members sitting in their capacity as members of an Official Committee, on the one hand, and communications between Committee members acting as creditors of the Debtors, on the other hand. It is entirely unclear whether the Debtors are seeking documents maintained by Committee members or their individual counsel, Committee professionals or some combination. There are so many permutations of how the document request may be interpreted that render the request nonsensical or worse yet, an impermissible intrusion upon the operation of each Official Asbestos Constituency and its individual members.

### C.     The Discovery Exceeds the Boundaries of Rule 2004

18.     As explained above, pursuant to Rule 2004, "[o]n motion of any party in interest, the court may order the examination of any entity." See Fed. R. Bankr. P. 2004(a). And, while the scope of a Rule 2004 examination may be broad, "it may relate only to the acts, conduct, or property or the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." See Fed. R. Bankr. P. 2004(b). Moreover, the attendance for examination and the production of documents "may be compelled as provided in Rule 9016." See Fed. R. Bankr. P. 2004(c).

19.     Thus, it is manifest that, at most, Rule 2004 provides for the examination of a witness and the production of documents in accordance with Rule 9016, which incorporates Federal Rule of Civil Procedure 45. However, despite the unequivocal language of Rule 2004, the Debtors have once again envisaged a discovery device that does not exist - - "Requests for

Information."[11]  See Motion, Exhibit A, pp. 5-6.  Although titled "Requests for Information," it is clear that these "Requests" are nothing more than interrogatories that only may be posed under Rule 7033.  As explained above, however, Rule 2004 only permits a request for an examination and the production of documents.  Interrogatories are not a permitted method of discovery under Rule 2004 and the Debtors' "Requests for Information" should be stricken in their entirety.

20.     In addition, despite the title of the Motion seeking relief only under Rule 2004, the Motion itself states the Debtors are moving for relief under Rules 2004 and 7034 and Federal Rules of Civil Procedure 26 and 34.  This is yet another example of the Debtors simply "mixing and matching" discovery rules.

21.     Rules 7026 and 7034 only apply in adversary proceedings or contested matters. However, if an adversary proceeding or contested matter has been commenced, Rule 2004 can not be used.  See In re Valley Forge Plaza Assoc., 109 B.R. 669, 675 (Bankr. E.D. Pa. 1990) ("Many courts have expressed distaste for efforts of parties to utilize [Rule] 2004 examinations to circumvent the restrictions of the [Federal Rules of Civil Procedure] in the context of adversary proceedings or contested matters");  In re Bennett Funding Group, Inc., 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996).  Accordingly, any purported reliance on Rules 7026 and 7034 is unfounded.

## CONCLUSION

Once again, the Debtors have sparked a litigation controversy when none should exist. The Court set in motion a mediation process at the Debtors' behest.  All parties agreed to that process as part of an interim extension of the Debtors' exclusive periods.  In the mediation, the

---

[11]     This is not surprising, considering the Debtors' repeated attempts to engineer discovery devices for their own benefit that exceed permissible limits - - i.e., the burdensome PD proof of claim form and the PI Questionnaire.
MIAMI 1151420.2 7481715537                            11

Official Asbestos Constituencies did precisely what the Court hoped for as they were able to reach certain agreements concerning an allocation of estate assets between them. Unfortunately, they were unable to reach agreement with the Unsecured Creditors Committee or the Debtors. Now, despite the fact that these agreements were reached in the midst of a confidential mediation and as punishment for achieving an agreement among the Official Asbestos Constituencies, the Debtors propose throwing the confidential disclosures made during the mediation out the window and launching a discovery process that is so broad that it pre-dates the Petition Date and attempts to intrude upon the dynamics of official committees and court-appointed representatives. The Motion should be denied in its entirety.

**[signature pages follow]**

**WHEREFORE**, the Objectors respectfully request that this Court (a) deny the Motion in its entirety; and (b) provide the Objectors with such other and further relief as is just and proper.

Dated: Wilmington, Delaware
September 8, 2006

Respectfully submitted,

BILZIN SUMBERG BAENA
 PRICE & AXELROD LLP
200 South Biscayne Boulevard
Suite 2500
Miami, Florida  33131-2336
Telephone:  (305) 374-7580

Scott L. Baena (Admitted Pro Hac Vice)
Jay M. Sakalo (Admitted Pro Hac Vice)

and

FERRY, JOSEPH & PEARCE, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, Delaware  19899
Telephone:  (302) 575-1555

By: /s/ Theodore J. Tacconelli

Michael B. Joseph
(Del. Bar No. 392)
Theodore J. Tacconelli
(Del. Bar No. 2678)

CO-COUNSEL FOR THE OFFICIAL
COMMITTEE OF ASBESTOS
PROPERTY DAMAGE CLAIMANTS

**CAMPBELL & LEVINE, LLC**

Marla R. Eskin (No. 2989)
Mark T. Hurford (No. 3299)
800 N. King Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 426-1900
Telefax: (302) 426-9947

- and -

**CAPLIN & DRYSDALE, CHARTERED**

Elihu Inselbuch
375 Park Avenue, 35th Floor
New York, NY 10152-3500
Telephone: (212) 319-7125
Telefax: (212) 644-6755

Peter Van N. Lockwood
Nathan D. Finch
One Thomas Circle, N.W.
Washington, D.C. 20005
Telephone: (202) 862-5000
Telefax: (202) 429-3301

Counsel for the Official Committee
of Asbestos Personal Injury Claimants

ORRICK, HERRINGTON &
SUTCLIFFE LLP

Roger Frankel, Esq.
Richard H. Wyron, Esq.
The Washington Harbour
3050 K Street, N.W., Suite 200
Washington, D.C.  20007-5135
(202) 339-8400

-and-

PHILLIPS, GOLDMAN & SPENCE, P.A.


John C. Phillips, Jr. (No. 110)
1200 N. Broom Street
Wilmington, DE 19806
(302) 655-4200

Counsel for David T. Austern,
Future Claimants' Representative

RICHARDSON, PATRICK, WESTBROOK &
BRICKMAN LLC

Edward J. Westbrook, Esq.
1037 Chuck Dawley Blvd.
Bldg. A
P.O. Box 1007
Mount Pleasant, SC 29464

-and-

SCOTT LAW GROUP PS

Darrell W. Scott, Esq.
926 Sprague Avenue
Suite 583
Spokane, WA 99201

-and-

WILLIAM D. SULLIVAN, LLC

William D. Sullivan (No. 2820)
4 East 8th Street
Suite 400
Wilmington, DE 19801
(302) 428-8191

Counsel for the Zonolite Attic Insulation Claimants

COHN WHITESELL & GOLDBERG LLP

Daniel C. Cohn, Esq.
101 Arch Street
Boston, MA 02110
(617) 951-2505

-and-

LANDIS RATH & COBB LLP

Adam G. Landis, (No. 3407)
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE 19801
(302) 467-4400

Counsel for the Libby Claimants