# EXHIBIT B

STATE OF SOUTH CAROLINA )
COUNTY OF HAMPTON ) IN THE COURT OF COMMON PLEAS
)
Anderson Memorial Hospital, on behalf )
of itself and all those similarly situated, ) Case No. 92-CP-25-279
)
Plaintiff, )
)
v. )
)
W. R. Grace & Company, et al. )
)
Defendants. )

# ANDERSON MEMORIAL HOSPITAL'S REPLY TO GRACE'S RESPONSE TO FEBRUARY 9, 2000 CONDITIONAL ORDER

Shlake 2/9/01

---

**FILED UNDER SEAL**

---

Daniel A. Speights
C. Alan Runyan
Marion C. Fairey, Jr.
Robert N. Hill
SPEIGHTS & RUNYAN
200 Jackson Avenue East
Post Office Box 685
Hampton, SC 29924
(803) 943-4444

Hampton, South Carolina
March 5, 2001

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | |
| ) | IN THE COURT OF COMMON PLEAS |
| COUNTY OF HAMPTON ) | |
| ) | |
| Anderson Memorial Hospital, on behalf ) | Case No. 92-CP-25-279 |
| of itself and all those similarly situated, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| W. R. Grace & Company, et al. ) | |
| ) | |
| Defendants. ) | |

### ANDERSON MEMORIAL HOSPITAL'S REPLY TO GRACE'S RESPONSE TO FEBRUARY 9, 2000 CONDITIONAL ORDER

Grace professes that it wants class certification resolved on the merits, yet offers the Court no assurances that it will await a decision on the merits before arguably stripping the Court of jurisdiction under the automatic § 362 bankruptcy stay. These circumstances amply support the entry and maintenance of this Court's February 9, 2000 Order ("Conditional Order").

### I. Grace's Admissions and Undisputed Facts

- Grace admits that *ex parte* orders are proper "where exigent circumstances clearly require that action be taken before there is time for a full hearing" [Grace Response at 8, citing Herring v. Retail Credit Co., 266 S.C. 455, 224 S.E.2d 663, 666 (1976)].

- It is undisputed that Grace announced on January 30, 2001 that it "may [be] force[d] to file for bankruptcy;" that it was "seriously consider[ing] bankruptcy; and that "[o]bviously, we would rather conclude this sooner rather than later . . ." [Verification at ¶ 6 and Exs. 1-3].

- It is undisputed that merely filing for bankruptcy arguably deprives this Court of jurisdiction over Grace - either to certify a class against Grace on the merits or even to determine if

- exigent circumstances support an *ex parte* conditional order [Petition at 1-2, citing Ex parte Reichlyn, 310 S.C. 495, 427 S.E.2d 661, 663-664 (1993); Verification at ¶¶ 4, 6, citing Professor Ayer, Grace's bankruptcy expert].

- Grace does not claim that it lacked a full and fair opportunity to object to the Conditional Order or, given the hearing scheduled for March 9, 2001, that Grace will lack a full and fair opportunity to object to the Conditional Order [Grace Response].

- It is undisputed that Grace and its co-defendants enjoyed a two day evidentiary hearing to oppose class certification in which they presented expert witnesses; enjoyed additional time to file another round of opposition memoranda; and filed the last of it and its co-defendants' seven memoranda the day the Conditional Order was entered [Verification at ¶¶ 2-4, 7].

- It is undisputed that the Conditional Order will end by its own terms the moment the Court resolves Plaintiff's motion to certify on its merits [Conditional Order; Petition at 3]. With the filing of Plaintiff's final omnibus reply, certification on the merits is now decisional.

- Grace even now offers the Court no suggestion that Grace will await this Court's decision on the merits before triggering the § 362 bankruptcy stay.

- It is undisputed that the Petition was designed "to protect the rights of class members should Grace declare bankruptcy before the Court issues a final order" [Petition at 3].

## II. The *Ex Parte* Order is Perfectly Proper

This Court found unequivocally that, "under the circumstances such ex parte request is appropriate and not violative of the prohibition against ex parte communications" [Conditional Order]. While Grace boldly asserts that there is "no authority, procedurally or substantively," for this finding [Response at 1-2], Grace is plainly wrong. The finding is supported by Rule 23(d)(2), SCRCP, as well as exigent circumstances.

2

Rule 23(d)(2), SCRCP, grants this Court broad discretion to enter what it considers "appropriate" orders that impose "such terms and conditions as shall fairly and adequately protect the interest of the persons on whose behalf the action is brought or defended." Such orders, the rule continues, may be entered "at any time." Id. Grace barely mentions this provision, perhaps because it is an apparently unique grant of judicial authority to take broad measures designed to protect the class alleged.[1] Other rules, moreover, expressly provide for *ex parte* motions and orders. Rule 5, SCRCP ("... every written motion, other than one which may be heard ex parte ...."); Rule 77, SCRCP ("... no hearing, other than one ex parte ...shall be conducted outside the circuit ..."). These rules combine to grant the Court authority to issue *ex parte* orders designed to "fairly and adequately protect" the class alleged.

Grace's "no authority" assertion also cannot be squared with Grace's later admission that *ex parte* orders are indeed proper "where exigent circumstances clearly require that action be taken before there is time for a full hearing." [Response at 8, citing Herring v. Retail Credit Co., 266 S.C. 455, 224 S.E.2d 663, 666 (1976)]. Herring is just one of many cases Grace could have cited. The courts have repeatedly held that exigent circumstances support *ex parte* orders. See Herring v. Credit Bureau of Columbia, 272 S.C. 368, 252 S.E.2d 123 (1979)("We have stated repeatedly that *ex parte* orders are reserved for those rare occasions where no adverse interest exists or where exigent circumstances dictated that action be taken prematurely."); McSwain v. Holmes, 269 S.C. 293, 237 S.E.2d 363, 366 (1977)(Justice Rhodes reiterated the Court's view that exigent circumstances support *ex parte* orders); Charest v. Charest, 329 S.C. 511, 495 S.E.2d 784, 787 (Ct.App. 1997)("*Ex*

---

[1] Neither the federal nor the Alabama courts that Grace cites has a provision as broad as Rule 23(d)(2), SCRCP. The Supreme Court has held that it is reversible error to apply federal restrictions unsupported by the plain terms of the South Carolina Rule. Littlefield v. South Carolina Forestry Commission, 37 S.C. 348, 523 S.E.2d 781 (1999).

3

*parte* orders are condemned by this Court except when justified by exigent circumstances"(emphasis added; citations omitted). Where exigent circumstances exist, post-order proceedings satisfy any due process notice concerns. See Herring, 224 S.E.2d at 666 ("In the latter instance [where exigent circumstances exist] a full hearing shall take place as soon as possible."); Myers v. Real Property at 1518 Holmes Street, 306 S.C. 232, 411 S.E.2d 209, 212 (1991)(post- seizure proceedings satisfy due process for *ex parte* asset seizures).

The exigent circumstances present are substantial and undisputed. Grace does not dispute its January 30, 2001 announcements, the adverse impact a prior bankruptcy filing will have on this Court's ability to certify a class against Grace on the merits, or even the adverse impact a prior bankruptcy filing would have had on this Court's ability to determine that exigent circumstances warranted an *ex parte* order to protect the class. Grace even now offers the Court no assurance that it will not immediately trigger the automatic § 362 bankruptcy stay if this Court vacates the Conditional Order "forthwith" before resolving the certification motion on the merits.

Grace instead dismisses as "absurd" Anderson's view that a noticed motion may itself have prompted a bankruptcy filing prior to the Court's consideration of these exigent circumstances. [Response at 6]. The idea is "absurd," Grace claims, because it made $1.62 billion in revenues last year. Id. But Grace offers no support for this figure, and the undisputed record Anderson presented in its verified petition reflects that Grace actually had a $14.7 million net loss last year [Verification at Ex. 1]; that Grace's stock price dropped from over $10.00 a share at the beginning of 2000 down to less than $2.00 a share today [Verification at Ex. 4]; that Grace's line of credit may run out this May [Verification at Exs.1-3]; and that the Grace Chairman and CEO's bankruptcy pronouncements on January 30, 2001 followed what Grace wants the Court to believe was a banner year [Verification at Exs. 1-3]. While hindsight is always 20/20, this record evidence shows that a noticed motion may

4

indeed have tipped the scales in favor of bankruptcy - and that Grace may still trigger the automatic § 362 bankruptcy stay at any moment [Petition at 2, citing Ex parte Reichlyn, 310 S.C. 495, 427 S.E.2d 661, 663-664 (1993); Verification at ¶ 4, 6, citing Professor Ayer, Grace's bankruptcy expert].[2]

Grace's bankruptcy pronouncements, moreover, take this case far outside the realm of what Grace calls an "alleged" threat of bankruptcy which is a "possibility" for any company [Response at 15-17]. The threat of a Grace bankruptcy is not "alleged" but documented. The threat of a Grace bankruptcy is not a "possibility" but a likelihood. Again, the plummet in Grace's stock price and credit woes culminated in Grace's own announcement that it "may [be] force[d] to file for bankruptcy," was "seriously consider[ing]" bankruptcy, and would "[o]bviously" like to "conclude this sooner rather than later ..." [Verification at Exs 1-3]. It is this unusual, if not unprecedented, advance warning that prompted Anderson to try "to protect the rights of class members should Grace declare bankruptcy before the Court issues its final order" [Petition at 3].

### III. The Temporary Order Should be Maintained

*Ex parte* orders will be affirmed absent some showing of prejudice (or judicial partiality). Burgess v. Stern, 311 S.C. 326, 428 S.E.2d 880, 884 (1993); Stewart v. Floyd, 247 S.C. 437, 265 S.E.2d 254, 256 (1980)(Rhodes, J.). Despite two attempts, Grace has made no such showing.

Grace first tries to claim prejudice with the charge that the "intangible process of inertia" will prevent the Court from holding Anderson to its burden of proof on the merits [Response at 12]. There is no warrant for this charge. Anderson never attempted to shift the burden of proof on the

---

[2] The fact that this lawsuit is clearly on Grace's radar screen is shown by the fact that its former Executive Vice President and General Counsel, Robert Beber, who remains in charge of its asbestos litigation, not only has repeatedly tried to settle the case, but attended the two day evidentiary hearing. [Dies Affidavit (Speights Affidavit Tab II) at 11-12; Transcript (September 5-6, 2000)].

5

merits. Anderson was instead trying to "protect the rights of class members should Grace declare bankruptcy before the Court issues a final order[]" on the merits and, even more on point, the order expires once the Court determines if Anderson has met its burden on the merits [Petition at 3; Conditional Order]. There is also no warrant for this charge against the Court. The Court's February 15, 2001 letter to Anderson and Grace clearly states that Anderson carries the burden of supporting the Conditional Order, much like the Court's April 10, 2000 order placed the burden on Anderson on the merits of certification.

Grace's last claim of prejudice is that the Court improperly granted Anderson a more favorable position in a bankruptcy proceeding [Response at 1-2, 4, 7, 17]. This cannot be prejudicial, of course, unless and until Grace files for bankruptcy before the Conditional Order expires with the entry of the order on the merits. Grace holds the key to that lock and, if it waits, Anderson's position in any bankruptcy proceedings will be determined by this Court on the merits.

But Grace offers no assurances that it will await a decision on the merits. This is precisely why the Conditional Order is necessary. Absent such an order, Grace could file for bankruptcy and then try to pick the South Carolina building owners' individual proof of claims off one-by-one, or try to force Anderson to begin the entire certification process anew in a bankruptcy forum of Grace's choosing,[3] even if this Court later certifies a class against Grace's co-defendants on the merits (and would have certified a class against Grace on the merits absent the automatic § 362 bankruptcy stay). The order only grants the South Carolina building owners "the preferential class treatment this Court may determine they deserve" after entertaining the extensive class certification briefing and a two day evidentiary hearing [Verification, ¶¶ 2-4, 7-8].

---

[3] In bankruptcy, venue is generally determined by a corporation's principal place of business or where its principal assets are located 180 days prior to the bankruptcy filing. 28 U.S.C. § 1408.

6

Grace's charge of improper treatment is also belied by Grace's mutually exclusive charge that a bankruptcy court will not give this Court's Conditional Order any weight [Response at 5-6].[4] The Conditional Order expires once this Court resolves the merits. If the Conditional Order is ineffective in a bankruptcy filed before then, as Grace claims, Anderson fails to see how Grace can possibly be harmed.

Finally, Grace proffers no less restrictive means to protect the class or this Court's ability to grant these South Carolina building owners class treatment on the merits. Grace simply stands on its right to file for bankruptcy and thus strip the class of any protection this Court may determine its members deserve. As shown below, that is not, and cannot be, the law.

## IV. Grace's Case Citations Are Inapposite.

Grace relies on foreign authority to threaten mandamus [Response at 11-15]. This authority is so off the mark that it is helpful for its distinctiveness.

First, Grace's threat of mandamus is legally flawed. The Alabama authority Grace relies on, for example, reflects that Alabama uses mandamus simply as a tool to review class certification orders that are not immediately appealable as a matter of right. See In Re: Citicorp Acceptance Co., 715 So.2d 199, 202 (Ala. 1997)("A petition for a writ of mandamus is the proper method for obtaining review of the certification of a class action."). While class certification orders are also not immediately appealable in this state, see Schein v. Lamar, 274 S.C. 329, 263 S.E.2d 383 (1980), the two states' mandamus practice differ dramatically. In this state, mandamus is designed to command

---

[4] Although Anderson will not be so bold as to predict an outcome, it believes that the Conditional Order is entitled to full faith and credit, and will vigorously defend the order in the bankruptcy court if need be. Unlike the situation presented in its single citation [Response at 6 n. 2], Grace has never claimed that it lacked anything other than a full and fair opportunity to contest the Conditional Order and has been granted a hearing to continue its opposition. As noted above, post-order hearings satisfy due process. See Herring, 224 S.E.2d at 666.

7

the performance of a ministerial act; it does not lie to either inquire into facts or adjudicate rights. Charleston School District v. Charleston Election Commission, 336 S.C. 174, 519 S.E.2d 567, 572-573 (1999). Grace is well aware of these unmentioned limits on mandamus from the Supreme Court's earlier denial of Grace's petition for an extraordinary writ. See Supreme Court Order, dated December 30, 1997 ("Petition for Extraordinary Writ is denied.").[5]

More importantly, all Grace's cases involve *ex parte* findings of fact and conclusions of law entered on the merits before discovery on certification was complete or, in some instances, before the complaint was even served. These "drive-by" certifications were apparently driven by the possibility that similar class actions subsequently filed in other courts would be certified first, and thus abate the pending action before the court could reach the merits. Basing a certification order on what it described as a "race to the courthouse" and "claim-jumping," the Alabama Supreme Court held, is insufficient to justify an *ex parte* certification. In Re: First National Bank of Jasper, 717 So.2d 342, 346-351 (Ala. 1997). More significantly, the Alabama Supreme Court made a point to further hold that it was not laying down any per se rule and that other "compelling reasons" could justify a conditional *ex parte* certification. Id. at 347.

This Court's Conditional Order stands in sharp factual contrast to Grace's citations and is based on a compelling reason. The Conditional Order makes no findings of fact or conclusions of law on the merits, and actually expires once the Court does so in its "final order on the Plaintiff's motion to certify" [Conditional Order]. The Conditional Order also follows extensive briefing, a two-day evidentiary hearing in which Grace presented expert testimony, and yet another round of

---

[5] On a similar point, Grace claims that the record is insufficient for appellate review. [Response at 13]. After seven opposition briefs and a two day evidentiary hearing, Grace cannot seriously claim that the record on the merits is deficient, and the record developed on the Conditional Order is based almost wholly on Grace's announcements and admissions.

8

opposition briefs [Verification at ¶¶ 2-4, 7]. Lastly, the Conditional Order is designed to protect the class should Grace trigger the automatic § 362 bankruptcy stay before the Court can reach the merits [Petition at 2-3; Verification at ¶ 8]. Again, Grace does not dispute that this Court may lose all jurisdiction over Grace the moment Grace files for bankruptcy and does not even pretend that it will await a decision on the merits before filing for bankruptcy [Petition at 1-2; Verification at ¶ 4].

## V. Conclusion

This Court has the power to issue an *ex parte* order to protect the class and properly protected the class pending resolution of class certification on the merits. Grace's only possible claim of prejudice from this protection is that Grace may now lack the ability to separately pick off the individual South Carolina property damage claims, or try to force Anderson to undergo the certification process all over again, should Grace unilaterally decide to file for bankruptcy before this Court resolves certification on the merits. That is not prejudice to Grace. That is prejudice to the class. The Conditional Order should remain in effect until it expires on its own terms.

Respectfully submitted,

Daniel A. Speights
C. Alan Runyan
Marion C. Fairey, Jr.
Robert N. Hill
SPEIGHTS & RUNYAN
200 Jackson Avenue East
Post Office Box 685
Hampton, SC 29924
(803) 943-4444

By: _____
ATTORNEYS FOR THE PLAINTIFF

Hampton, South Carolina
March 5, 2001

9

STATE OF SOUTH CAROLINA )
 )  AFFIDAVIT OF SERVICE BY MAIL
COUNTY OF HAMPTON )

Re: Anderson Memorial Hospital, etc. v. W.R. Grace & Company, et al. (Case No. 92-CP-25-279)

---

PERSONALLY APPEARED before me Rhonda L. Bowers, who being duly sworn, deposes and says: that she is employed in the office of Speights & Runyan, attorney for the Plaintiff in the above-referenced action; that she served the foregoing, under seal, **ANDERSON MEMORIAL HOSPITAL'S REPLY TO GRACE'S RESPONSE TO FEBRUARY 9, 2000 CONDITIONAL ORDER** this 5th day of March, 2001, by personally sending a copy of the same, Via UPS Next Day Air, addressed to the attorney(s) as indicated on the attached service list.

RHONDA L. BOWERS

SWORN TO before me this

5th day of March, 2001

Susan J. Murdaugh (L.S.)
Notary Public for South Carolina
My Commission Expires: June 6, 2005

## SERVICE LIST

Re:    Anderson Memorial Hospital, etc. v. W.R. Grace
       & Company, et al. (Case No. 92-CP-25-279)

**T&N, plc, formerly Turner & Newall, PLC and Turner & Newall, Ltd.**

Timothy W. Bouch, Esquire
LEE BOUCH AND CRAWFORD
134 Meeting Street, 4th Floor
Post Office Box 59
Charleston, SC 29401
843-937-8811
843-937-0606 (fax)

Charles Boulbol, Esquire
COBLENCE & WARNER
415 Madison Avenue, 17th Floor
New York, NY 10017
212-593-9058 (fax)

**United States Gypsum Company**

Steven W. Ouzts, Esquire
Timothy D. St. Clair, Esquire
TURNER PADGET GRAHAM & LANEY
1901 Main Street, 17th Floor
Post Office Box 1473
Columbia, SC 29202
803-254-2200
803-799-3957 (fax)

Raymond T. Cullen, Esquire
Joseph B.G. Fay, Esquire
MORGAN, LEWIS & BOCKIUS
1701 Market Street
Philadelphia, PA 19103
215-963-5000
215-963-5299 (fax)

**U.S. Mineral Products Company**

Bruce E. Miller, Esquire
MOORE & VAN ALLEN, PLLC
40 Calhoun Street, Suite 300 (29401-3535)
Post Office Box 22828
Charleston, SC 29413-2828
843-579-7033
803-579-7099 (fax)

Paul F. Slater, Esquire
DANAHAR TEDFORD LAGNESE & NEAL,
  P.C.
20 Exchange Place, 31st Floor
New York, NY 10005
212-269-7100
212-269-2976 (fax)

**W.R. Grace & Company and W.R. Grace & Company-Connecticut**

Donald A. Cockrill, Esquire
L. Gray Geddie, Jr., Esquire
Phillip A. Kilgore, Esquire
OGLETREE, DEAKINS, NASH, SMOAK STEWART
The Ogletree Building
300 North Main St., PO Box 2757
Greenville, SC 29602
864-271-1300
864-235-4754 (fax)

Allen S. Joslyn, Esquire
CAHILL GORDON & REINDEL
Eighty Pine Street
New York, NY 10005
212-701-3340
212-269-5420 (fax)

**Asbestos Products Manufacturing Corporation**
**H&A Construction Corporation, formerly Spraycraft**
**Asbestospray Corporation**

Linda Martin Barber, Esquire
Envision Claims Management
305 Madison Avenue
Morristown, NJ 07960
973-490-6000
973-490-6122 (fax)