IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| W. R. GRACE & CO., et al. | ) | **Chapter 11** |
| | ) | |
| Debtors. | ) | **Case No. 01-01139 (JKF)** |
| | ) | **(Jointly Administered)** |

9/25/06 Agenda Item No. 9
Related Docket Nos: 9315, 11727, and
13129

**DEBTORS' SUPPLEMENTAL BRIEF IN SUPPORT OF THE APPLICATION OF
GEORGIA'S STATUTE OF LIMITATIONS TO PRUDENTIAL INSURANCE
COMPANY'S ASBESTOS PD CLAIMS FOR GEORGIA BUILDINGS**

During the January 24 hearing, this Court asked the parties to brief two issues regarding

Prudential Insurance Company's ("Prudential") asbestos property damage claims for two

buildings constructed in Georgia in the early 1970's and barred by statute of limitations under

Georgia law. *See Corp. of Mercer Univ. v. Nat'l Gypsum*, 368 S.E.2d 732, 733 (Ga. 1988)

(asbestos property damage action "must be brought within four years of substantial completion"

of the building): *First,* what jurisdiction's limitations period applies to Prudential's Georgia

claims; and *Second,* what, if any, is the collateral estoppel effect of the 1994 *Prudential* decision

from a New Jersey district court. The answers, in short, are as follows:

*First,* Delaware choice of law rules direct this Court to apply Georgia's statute of

limitations to Prudential's Georgia claims. As a Delaware bankruptcy court, this Court applies

Delaware's choice of law rules. *In re PHP Healthcare Corp.,* 128 Fed. Appx. 839, 843 (3d Cir.

2005). Delaware's choice of law rules require application of borrowing statute which in turn

requires application of the limitations period of the state where the claim at issue arose, unless

Delaware's limitations period is shorter. *See* 10 Del. C. § 8121 (2005). Here, Prudential's

asbestos property damage claim arose in Georgia, the state in which the two properties at issue are located. Georgia's four-year statute of limitations is shorter than Delaware's six-year statute of repose--which would be the applicable limitation period in Delaware, as explained below-- and, therefore, Georgia's statute of limitations applies.

*Second*, the New Jersey District Court 1994 *Prudential* decision has no collateral estoppel effect in this Chapter 11. The 1994 *Prudential* decision, in which the Court denied defendants' motion for summary judgment, (i) was not final, (ii) was abandoned by the New Jersey District Court in a 2001 decision, affirmed by the Third Circuit, and (iii) dealt with an issue different than that before this Bankruptcy Court. Therefore, it has no collateral estoppel effect here.

As a result, Georgia's four-year statute of limitations applies to Prudential's Asbestos Property Damage Claims 6945 and 6948 (collectively, the "Georgia Claims"). Since it is undisputed that the Georgia Claims are proscribed under Georgia's statute of limitations, the Georgia Claims should be disallowed and expunged.

## FACTS AND BACKGROUND

1.    The two Prudential buildings at issue in this bankruptcy proceeding were constructed in Atlanta, Georgia during 1970 and 1972. *See* Claim Nos. 6945 and 6948 (relevant portions attached as Exhibit A). During their respective constructions, Grace's[1] Monokote-3 ("MK-3") was allegedly installed in the both of the buildings. MK-3 is an asbestos-added fireproofing product that Grace sold in the United States until July 4, 1973, when Grace

---

[1] For purposes of this Brief, the term "Grace" refers to W. R. Grace & Co. and/or its affiliated entities that are Debtors in this Chapter 11, either collectively or in their individual capacities, as appropriate.

permanently stopped selling MK-3 in the U.S.  MK-3 was sprayed on steel structural-components of buildings to prevent or delay the steel from collapsing in the event of a fire.

2.      On October 20, 1987 -- *seventeen years* after the first building was constructed and *fifteen years* after the second building was constructed -- Prudential brought suit over several buildings, including the two Georgia buildings now at issue, in the District of New Jersey (the "New Jersey District Court").  Prudential asserted claims against several manufacturers of asbestos-containing materials. *Prudential Insurance Company of America, et al. v. United States Gypsum, et al.*, Civil Action Nos. 87-4227, 87-4238 (D.N.J. filed October 20, 1987).  Prudential's claims were based upon RICO and state law causes of action.

3.      In June 1994, the District of New Jersey denied the motion of Grace and other defendants for summary judgment on Prudential's RICO claims as time- barred. *See* the "1994 Opinion," attached as Exhibit A to the *Supplemental Brief of Prudential Insurance Company of America as to (I) Issue Preclusion of Debtors' Claims Objections and (II) Applicable Choice of Law* (Docket No. 13129).  In the same opinion, the Court also denied the defendants' motion for summary judgment on certain state law claims on the basis of statute of limitations. *Id.* As part of this judgment, the court first considered choice of law issues and held that New Jersey's statute of limitations applied to all of the Prudential buildings at issue, regardless of where those buildings were located. *See id.* at 10-16.

4.      Notably, the 1994 Opinion was based upon the fact that Prudential's lawsuit had been filed in a New Jersey federal court.  In reaching its decision, the New Jersey District Court speculated that a New Jersey state court would have applied New Jersey's limitations period to Prudential's state law claims, regardless of the location of the underlying buildings:

3

[A] corporate plaintiff which is incorporated in New Jersey is entitled to rely on New Jersey's applicable statute of limitations *when filing a suit in New Jersey*, notwithstanding the fact that the corporate plaintiff's other ties in New Jersey may be slim.

......

Thus, I conclude that because plaintiff Prudential is a New Jersey domiciliary whose primary place of business is New Jersey, *the New Jersey Supreme Court would be persuaded by its interest in compensating its domiciliary to apply its own statute of limitations in this case.* (*Id.* at 13-14, 16.) (emphasis added)

5.    In 2001, the New Jersey District Court reversed its own June 1994 Opinion on Prudential's RICO claims and decided that those claims were barred by the statute of limitations. *See Prudential Ins. Co. of America v. U.S. Gypsum Co.*, 146 F.Supp.2d 643 (D.N.J. 2001), *aff'd* 359 F.3d 226, 232 (3d Cir. 2004). At the same time, "[h]aving thus dismissed Prudential's only federal claim, the New Jersey District Court declined to exercise supplemental jurisdiction and dismissed Prudential's remaining state law claims against [U.S.] Gypsum and USMP [U.S. Mineral Products Company] without prejudice." *Id.* at 232. The Third Circuit affirmed both the summary judgment on the RICO counts and the dismissal of the remainder of the case. *Id.* at 238.

6.    The New Jersey District Court and Third Circuit decisions dismissing Prudential's New Jersey District Court action in its entirety have not yet been applied to Grace solely because Grace had filed for bankruptcy by the time the matter was decided and thus the action has been stayed as to Grace since early 2001. *Id.* at 231-32 and n.2 (explaining that Grace was a party to the later summary judgment motions to dismiss on statute of limitations and substantive grounds that were ultimately granted, along with U.S. Gypsum and U.S. Mineral Products, but that the action was stayed as to it under 11 U.S.C. § 362(a) because Grace subsequently filed a Chapter 11 petition.) As this Court correctly noted at the January 24, 2006 hearing on Prudential's two Georgia claims, the Prudential New Jersey action likely will also be dismissed as to Grace.

4

7.      In March 2003, nearly two years after the District of New Jersey reversed the

1994 Opinion and dismissed the *Prudential* action, Prudential filed the Georgia Claims, which

are the subject of the Debtors' pending objections.  By filing proofs of claim, Prudential

subjected itself to this Court's jurisdiction.  *See Travellers Intern. AG v. Robinson*, 982 F.2d 96

(3d Cir. 1992).

8.      On September 1, 2005, the Debtors filed their *Fifteenth Omnibus Objection to

4003 Asbestos PD Claims [Substantive]* (the "Fifteenth Omnibus") (Dkt. No. 9315).  The

Debtors objected to the Georgia Claims on multiple bases, including that they are proscribed

under the applicable statute of limitations.

9.      On January 24, 2006, the Court considered the Debtors' statute of limitations

objections to the Georgia Claims.   During that hearing, the Court determined that the 1994

Opinion and related order "[is] not a final order... Because it wasn't a final order... I'm not bound

by it."  Tr. 1/24/2006 Hrg. p. 39, lns. 16-23 (relevant pages attached as Exhibit B).

10.      During the January 24 hearing, the Court directed the parties to submit additional

briefs on two issues: (i) choice of law for determining the statute of limitations that governs the

Georgia Claims; and (ii) the collateral estoppel effect, if any, of the 1994 Opinion.  *See* 1/24/06

Hrg. Tr. p. 42, lns. 10-15.  As explained below, Delaware choice of law rules direct this Court to

apply Georgia's statute of limitations to the Georgia Claims, and the 1994 Opinion has no

collateral estoppel effect in this Chapter 11.

## LEGAL ARGUMENT

**I.    Delaware Choice of Law Rules Direct this Court to Apply Georgia's Statute of Limitations to Prudential's Georgia Claims.**

11.    Delaware choice of law principles require application of Georgia's statute of limitations to the Georgia Claims. *See In re PHP Healthcare*, 128 Fed. Appx. at 843. Delaware has enacted a "borrowing statute" that codifies its approach to choice of law issues relating to statutes of limitations. *See* 10 Del. C. § 8121 (2005). To prevent forum shopping, the borrowing statute requires application of the limitations period of the state where the claim at issue "arose" if it is shorter than Delaware's limitations period:

> Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of *whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose*, for bringing an action upon such cause of action. Where the cause of action originally accrued in favor of a person who at the time of such accrual was a resident of this State, the time limited by the law of this State shall apply.

10 Del. C. § 8121 (2005) (emphasis added).

12.    This borrowing statute "shorten[s] the period of limitation applicable to actions arising in foreign jurisdictions if the foreign statute specifies a shorter period" and therefore requires application of the Georgia statute of limitations period. *Pack v. Beech Aircraft Co.*, 132 A.2d 54, 57 (Del. 1957). Delaware's statute of repose has a six-year limitations period for any action stemming from construction or improvement to real property, with such period commencing at completion of installation. *See* 10 Del. C. § 8127.[2] Accordingly, Delaware's borrowing statute selects Georgia's shorter four-year period.

---

[2] The Debtors believe that given the facts of the Georgia Claims, Delaware's 6-year statute of repose is the applicable limitations statute for purposes of applying Delaware's borrowing statute. However, even if

(Continued...)

13.     *First*, for purposes of the borrowing statute, the Georgia Claims "arose" in

Georgia. "Delaware courts, when confronted with a substantive choice of law situation in a tort

action will apply the law of the *lex loci delecti*, i.e., the law of the state where the tort or injury

occurred." *Hill v. Equitable Trust Co.*, 562 F.Supp. 1324, 1334 (D. Del. 1983), *citing Dymond v.*

*Nat'l Broading Co., Inc.*, 559 F.Supp. 734, 737 (D. Del. 1983), *Thornton v. Carroll*, 490

F.Supp. 455, 457 (D. Del. 1980).   In the present instance, that state is Georgia – the state

where the subject properties are located. *Pennzoil Prod. Co. v. Colelli & Assoc.*, 149 F.3d 197,

202 (3d Cir. 1998) ("[S]ince Pennzoil claims to have suffered damage to its refinery equipment

in Pennsylvania, that is where—for jurisdictional purposes—we must conclude the alleged injury

occurred."); *Paoletto v. Beech Aircraft Co.*, 464 F.2d 976, 979 (3d Cir. 1972) (holding that a

claim arose at the "place of the injury" rather than the "place of the negligence").   In this respect,

the Eighth Circuit's holding in *Building Erection Servs., Inc. v. JLG, Inc.*, 376 F.3d 800 (8th Cir.

2004), is directly on-point.   There, a Kansas corporation sued for damage to its Missouri property

stemming from a crane failure in Missouri.   The court held -- for purposes of Missouri's

borrowing statute -- that the claim accrued in Missouri: "[W]e believe a corporate injury accrues

at the place where the physical property is damaged, not at the place where the corporation feels

the secondary economic effects of the injury." *Id.* at 804-05.

---

Prudential is correct that Delaware's 3-year statute of limitations is more appropriate, Prudential's Georgia
Claims are still proscribed.   In affirming the New Jersey District Court's 2001 decision abandoning the 1994
Opinion, the Third Circuit held, "that Prudential should have known of the injuries alleged in its [1987 New
Jersey District Court] complaint *prior to October 20, 1983*." *Prudential,* 359 F.3d at 236 (emphasis added).
Therefore, even if Delaware has a discovery rule for Asbestos PD Claims (an issue that has never been
addressed by any Delaware court), under Delaware's three-year statute of limitations, Prudential's claims would
have been proscribed before October 20, 1986 - - one year prior to Prudential filing the New Jersey action, and
seventeen years prior to Prudential filing the Georgia Claims.

14.    *Second*, Georgia has adopted a strict limitations period that bars the Georgia

Claims. Under Georgia's statute of limitations, asbestos property damage claims must be

brought within *4 years* from the date of the property's substantial completion, regardless of when

the claimant learned that the property contained asbestos. OCGA §9-3-30; *Corp. of Mercer*

*Univ. v. National Gypsum Co.*, 368 S.E.2d 732, 733 (Ga. 1988) ("The [Georgia] discovery rule ...

[is confined] to cases of bodily injury which develop only over an extended period of time.").

To prevent forum shopping, Delaware's borrowing statute selects Georgia's 4-year limitations

period over Delaware's longer period. Therefore, under Delaware choice of law rules, the

Georgia Claims are governed by OCGA § 9-3-30.[3]

15.    Prudential would have this Court believe that its Georgia Claims "arose" in New

Jersey, because that is where Prudential is headquartered and, therefore, where certain of its

business and investment decisions are made. 1/24/2006 Hrg. Tr. p. 14, lns. 10-18. There are

several problems with this assertion. As a preliminary matter, Prudential has not presented any

evidence that the decision to purchase the Georgia properties was actually made in New Jersey.

Prudential has offices throughout the country and world, and business decisions are necessarily

made at many of those offices. Therefore, Prudential's theory would require this Court to

ascertain who made the decision to purchase the subject properties, and where they were located

when that decision was made. Not only would this standard be unduly burdensome in its

application (particular so in Chapter 11 cases, such as this, where the Court was asked to

---

[3]Despite Prudential's assertions to the contrary during the January 24 hearing, a rule applying the limitations where
the subject property is located would not force Prudential to undertake a "50 state survey." Prudential has eight
pending Asbestos PD Claims (Claim Nos. 6945 – 6952), which collectively assert claims on account of
buildings located in five states (Florida, Georgia, Minnesota, New Jersey, and Texas). Therefore, at most, only
limitations periods in five states would apply to all of Prudential's claims.

consider objections to thousands of Asbestos PD Claims) -- it is simply not supported by any

facts in this litigation.  Further, this rule would allow building owners to manipulate limitations

periods relating to particular buildings, simply by sending "decisionmakers" to the State that has

the most favorable statute of limitations.  Finally, despite Prudential's bravado during the

January 24, 2006 hearing in arguing that an "investment decision" constitutes the location where

an injury arises for purpose of an asbestos property damage claim, Prudential's supplemental

brief *fails to cite to any case law supporting this counterintuitive assertion.*  The reason for this is

simple -- it represents an incorrect statement of the law.  Instead, under prevailing Delaware law,

an injury "arises" (for purposes a property damage lawsuit) in the state where the subject

property is located.  *See Pennzoil Prod. Co. v. Colelli & Assoc.*, 149 F.3d 197, 202 (3d Cir.

1998); *Paoletto,* 464 F.2d at 979.

16.     In the alternative, Prudential would have this Court believe that it is a "resident"

of Delaware for purposes of Delaware's borrowing statute.  *See* Prudential Supplemental Brief,

Dkt. No. 13129, at pps. 27-28.  Prudential is wrong.  *First,* Prudential's only asserted ties to

Delaware are that: (i) it has appointed an agent in Delaware for service of process, and (ii) it is

authorized to do business in Delaware.  *Id.*  To be considered a "resident" for purposes of

Delaware's borrowing statute, Prudential is required to demonstrate a "significant connection" to

Delaware.  *Cerullo v. Harper Collins Publishers, Inc.,* No. Civ. A. 01L-3-21-CHT, 2002 WL

243387, at *3 (Del. Super. 2002).  Prudential's tangential ties to Delaware fall far short of this

standard. *See id.*  *Second*, even if Prudential was a Delaware resident for purposes of the

borrowing statute (which it is not), Georgia's statute of limitations would still apply to the

Georgia Claims.   That is because, "[Delaware's borrowing statute] does not apply to a resident

of this State [Delaware] suing on a foreign cause of action, provided he was a resident when the

9

cause of action arose." *Cerullo*, 2002 WL 243387, at *3. Prudential, as a Delaware "resident"

would be suing for property damage under Georgia substantive law. *See* Memorandum Opinion

Regarding the Objection to Claims (July 31, 2006), Dkt. No.12888 (applying Minnesota

substantive law to disallow asbestos PD claims filed on account of properties located in

Minnesota). Therefore, Delaware's borrowing statute would not apply to Prudential's Georgia

Claims, and Georgia's limitations period would remain applicable.

17.    Therefore, regardless of whether Prudential is considered a Delaware "resident"

for purposes of Delaware's borrowing statute, Georgia's limitations period applies to the Georgia

Claims. This result is simple and comports with common sense -- Georgia is the State where the

buildings at issue are located; where the alleged property damage occurred; and where any

monitoring, maintenance, or remediation would take place. *See, e.g.*, *In re Asbestos School

Litig.*, No. 83-0268, 1991 WL 3890, at *2 (E.D. Pa. Jan 9, 1991) ("Any asbestos-containing

materials present in Hawaii schools were installed in that state and any abatement or repair will

take place there. These contacts are such that the laws of Hawaii, including its statues of

limitations and repose are properly applied by this court.").

## II.    The Georgia Claims are Proscribed Under Georgia's Statute of Limitations.

18.    It is undisputed that the Georgia Claims are barred under Georgia's statute of

limitations. As explained above, the Supreme Court for Georgia has expressly held Georgia's 4-

year statute of limitations for property damage commences on the date of the subject property's

"substantial completion." *Mercer Univ.*, 368 S.E.2d at 733. Further, Georgia does not have any

sort of discovery rule that can delay tolling of this period. *Id.; see also,* 1/24/06 Hrg. Tr. p. 43,

lns. 15-17 ("I [Prudential's counsel] agree with [Debtors'] counsel that if you get to Georgia law,

as I understand Georgia law, they don't have a discovery rule."). Accordingly, Prudential should

have filed its claims within four years of each building's completion, which would have been (i)

1974 for Claim No. 6945 and (ii) 1976 for Claim No. 6948. Instead, Prudential waited until (i)

1987 to file the New Jersey *Prudential* action and (ii) March 2003 to file proofs of claim in

Grace's bankruptcy. These actions were taken well after Prudential's claims had become time-

barred. Therefore, Prudential's Georgia Claims are barred by Georgia's statute of limitations,

and the Court should disallow and expunge both of them.

19.      Nothing in Prudential's brief casts any doubt on this conclusion. Apparently

willing to concede that the Georgia Claims are proscribed under Georgia's statute of limitations,

Prudential devotes the entirety of its 34-page brief to attempting to avoid application of

Georgia's statute of limitations. In doing so, Prudential argues that the doctrine of collateral

estoppel prohibits Grace from asking this Court to apply the correct statute of limitations to the

Georgia Claims. Prudential's argument fails because (i) the New Jersey District Court (as

affirmed by the Third Circuit) reversed the 1994 Opinion and, therefore, the 1994 Opinion has

no precedential effect; and, in any event, (ii) even if the 1994 Opinion had not been abandoned, it

is not binding upon this Court for purposes of determining the proper statute of limitation to

apply to Prudential's proofs of claim in Grace's Chapter 11.

**III.      The New Jersey Court Decision is <u>Not</u> Binding on this Court.**

20.      Prudential has argued that under federal law, collateral estoppel can foreclose re-

litigation of an issue when the party asserting the bar demonstrates that *all four* of the following

requirements are satisfied:

- the issue to be precluded is identical to the issue decided in the prior proceeding;
- the issue was actually litigated in the prior proceeding;

- the issue must have been determined by a "valid and final judgment;" and

- the determination of the issue was essential to the prior judgment.

*In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997). Failing to meet *any* of these four

requirements dooms Prudential's attempt to apply collateral estoppel to the District of New

Jersey's choice of law decision. The 1994 Opinion does not satisfy these requirements.

### A.    The Issue Before This Court is Different than the Issue Addressed by the New Jersey Court.

21.    The present issue -- whether Prudential's *bankruptcy claims* against Grace are

barred by the statute of limitations -- is different from the issue decided by the New Jersey court,

which was whether U.S. Gypsum and Asbestospray were entitled, as a matter of law under the

applicable statute of limitations, to dismissal of Prudential's common law fraud and tort claims.

*See* 1994 Opinion, p. 2. The New Jersey court's order denying Asbestospray and Gypsum's

motion makes this distinction abundantly clear, as it fails to address the appropriate statute of

limitations to apply or even whether Prudential's claims were actually barred under any statute of

limitations. Instead, the order states only as follows: "Defendants' motion for summary

judgment dismissing plaintiff's common law tort and fraud claims as barred by the applicable

statute of limitations is DENIED." *See* 1994 Opinion, p. 54.

22.    The New Jersey District Court's reasoning in the 1994 Opinion makes this

distinction abundantly clear. In reaching its decision, the New Jersey District Court speculated

that a New Jersey state court would have applied its own statute of limitations rules to

Prudential's state law claims, regardless of where a particular building was located. The New

Jersey District Court stated as follows:

> [A] corporate plaintiff which is incorporated in New Jersey is entitled to rely on New Jersey's applicable statute of limitations *when filing a suit in New Jersey* , notwithstanding the fact that the corporate plaintiff's other ties in New Jersey may be slim. (1994 Opinion, pps. 13-14) (emphasis added).
>
> ......
>
> Thus, I conclude that because plaintiff Prudential is a New Jersey domiciliary whose primary place of business is New Jersey, the New Jersey Supreme Court would be persuaded by its interest in compensating its domiciliary to apply its own statute of limitations in this case. (Prudential Surreply, p. 3   (January 20, 2006) [Dkt. No. 11592], *quoting* 1994 Opinion, pps. 15-16).

23.    This court, however, is not handling a suit filed before a New Jersey court; it is a federal bankruptcy court considering bankruptcy claims, through which Prudential has submitted itself to the jurisdiction of this Court, including this Court's choice of law rules.

**B.    The 1994 Order Denying Summary Judgment is Not a "Valid and Final" Judgment.**

     **i.    An order denying summary judgment cannot, as a matter of law, constitute a "final judgment."**

24.    The New Jersey District Court's 1994 order merely denied Grace's motion for summary judgment; it was not dispositive on the underlying issue. As a matter of law, an order denying summary judgment cannot constitute a "final judgment" for purposes of collateral estoppel. *See, e.g., Metrix Warehouse v. Daimler-Benz Aktiengesellschaft*, No. N-79-2066, 1981 WL 2518, at *2 (D. Md. 1981), *citing* 6A Moore's Federal Practice P 56.14[2] (1976 ed.) ("The disposition of a case on a motion for summary judgment is a final adjudication on the merits and can be given collateral estoppel effect, even where no findings are made. In contrast, the denial of a motion for summary judgment is not res judicata...") This Court acknowledged this clear principle during the January 24, 2006 hearing, when the Court determined that the 1994 order "[is] not a final order... Because it wasn't a final order... I'm not bound by it." Tr. 1/24/2006 Hrg. p. 39, lns. 16-23.

25.    Lest there is any question whether the New Jersey District Court's order rejecting summary judgment was "final," the Court need only look at the subsequent procedural history. Grace tried to obtain reconsideration from the New Jersey District Court, but Grace was denied. Grace subsequently tried to appeal the decision to the Third Circuit, but the Third Circuit denied Grace's request. Therefore, Grace has *never had an opportunity* to appeal this so-called "final decision," which was based entirely upon the New Jersey District Court's speculation as to the law that a *New Jersey state court would have* applied to Prudential's state law claims.

### ii.    In 2001, the New Jersey District Court reversed its decision on RICO statute of limitations and dismissed Prudential's state law claims.

26.    Further, *Prudential's* district court case has been dismissed. Specifically, in 2001, the New Jersey District Court reversed its earlier position and dismissed Prudential's RICO claims as time-barred under the statute of limitations. *Prudential Ins. Co. of America*, 146 F.Supp.2d 643. If the 1994 district court order was "final," as Prudential would have this Court believe, then the New Jersey District Court would not have been able to subsequently determine that Prudential's RICO claims were timed-barred. Lacking supplemental jurisdiction over Prudential's remaining state law claims, the New Jersey District Court also dismissed the underlying action. *Id.* at 674-75.

27.    Prudential appealed to the Third Circuit, and the Third Circuit affirmed the New Jersey District Court's decision. *Prudential Ins. Co. of America*, 359 F.3d at 238 ("For the foregoing reasons, we will affirm the District Court's orders granting Gypsum and USMP summary judgment on statute of limitations grounds and dismissing Prudential's remaining state law claims without prejudice."). Therefore, the *Prudential* litigation -- the very litigation that Prudential asks this Court to rely upon -- was dismissed by the New Jersey District Court

14

because "state law claims [] are best left to that court to decide." *Prudential,* 146 F.Supp.2d at 675.

28.     The New Jersey court's reversal of its 1994 Opinion and order demonstrates that the 1994 order denying summary judgment was not a final order for purposes of collateral estoppel. That is because, "[i]t is axiomatic that a judgment cannot be accorded collateral estoppel effect unless the judgment is final. To be final for purposes of collateral estoppel, a prior decision need only be *immune, as a practical matter, to reversal or amendment.*" *Miller Brewing Co. v. Jos. Schlitz Brewing Co.,* 605 F.2d 990, 996 (7th Cir. 1979) (emphasis added); *see also Metrix Warehouse v. Daimler-Benz Aktiengesellschaft,* Civ. A. No. N-79-2066, 1981 WL 2518, at *2 (D.C.Md. 1981), *citing Mazaleski v. Harris,* 481 F.Supp. 696 (D.D.C. 1979) ("[a] judgment is final regarding a specific cause of action for *res judicata* purposes only if that action could not become affected by further proceedings in the court where the judgment was rendered."). The 1994 Opinion this was <u>not</u> "immune ... to reversal or amendment," and was *actually reversed* by the New Jersey District Court, demonstrating that it was <u>not</u> a final order.

**C.     Prudential Initiated New Litigation in This Court. As Such, This Court Applies Its Own Choice of Law Rules.**

29.     By filing proofs of claim with this Bankruptcy Court, Prudential did not "transfer" any litigation (and, in fact, because the New Jersey action has been dismissed, there is no litigation to "transfer"). Instead, Prudential initiated new litigation before this Court and, as such, Prudential is bound by this Court's rules.

30.     The Federal Rules of Bankruptcy Procedure define a "proof of claim" as "a written statement setting forth a creditor's claim." FRBP 3001(a). The Bankruptcy Code, in turn defines a claim as "a right to payment, whether or not such right is reduced to judgment,

15

liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,

equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). Accordingly, the Bankruptcy Code

speaks only in terms of "rights to payment." And, while such a "right to payment" may stem

from pending or completed pre-petition litigation, the Bankruptcy Code does not go further -- a

bankruptcy claim does not somehow transfer existing litigation to the bankruptcy court.

31.    Instead, the Georgia Claims serve only to initiate new litigation on account of the

same allegations as its claims asserted in the New Jersey litigation. *In re Oxford Health

Investors, LLC*, No. 00-8076-81, 2004 WL 2830694, at *7, fn. 2 (Bankr. N.C. 2004). ("Neither

the filing of a proof of claim nor amending a filed proof of claim involves or arises in an

adversary proceeding. However, an objection to a proof of claim gives rise to a contested matter

and under Rule 9014(c) certain of the Part VII rules are made applicable in contested matters

unless the court orders otherwise."); *Id.* at *8 ("The occurrence giving rise to this [bankruptcy]

claim is the filing of a lawsuit."). By creating new litigation in this Court through the Georgia

Claims, Prudential has submitted to the jurisdiction of this Court, including its rules governing

claims adjudication. *See Travellers Intern. AG*, 982 F.2d 96; *Indiana Dept. of Revenue v.

Williams*, 301 B.R. 871 (S.D. Ind. 2003).

32.    This is not the say that Prudential was precluded from filing a motion to have any

existing pre-petition litigation to transferred to this Court. In fact, 28 U.S.C. §1452, which

governs removal of claims related to bankruptcy cases, provides for such a procedure.

33.    Prudential, however, never filed such a motion. In fact, given the New Jersey

District Court's abandonment of its earlier decision, such an option is no longer feasible.

Accordingly, Prudential can only proceed with its Georgia Claims, and it must proceed

according to the rules of this Court. Therefore, as noted above, this Court is required to apply

Georgia law to Prudential's asbestos property damage claims filed on account of Georgia

buildings.

### IV.   Even If The Four Requirements For Collateral Estoppel Were Satisfied, Which They Are Not, Exceptions Preclude Its Application.

34.    Exceptions in the Restatement (Second) of Judgments would bar application of

collateral estoppel in the present situation, even if the four preconditions for estoppel were

otherwise met, which they are not. Specifically, section 28 provides as follows:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
>
> (1) The party against whom preclusion is sought *could not, as a matter of law, have obtained review of the judgment in the initial action*; or
>
> (2) The issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) *a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws*; or
>
> (3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by *factors relating to the allocation of jurisdiction between them*; or
>
> (4) *The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action*; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action

Restatement (Second) of Judgments, §28(1) - (4) (1982) (emphasis added). Each of these

exceptions applies here.

35.    *First*, Grace sought review of the 1994 Opinion but was prevented from

interlocutory appeal or review through mandamus. Thus, as a matter of law, review the earlier

choice of law decision has not been permitted. *Second*, there has been a significant intervening

change in the applicable legal context, since the initial choice of law decision was made in the

context of litigation of a civil suit filed in the district of New Jersey and the current choice of law

decision is posed to a bankruptcy court faced with a bankruptcy proof of claim filed in Delaware.

This is a distinction with a difference:  The District of New Jersey looked to New Jersey choice

of law rules for its decision, while, as a bankruptcy Court sitting in Delaware, this Court is bound

by Delaware's choice of law rules. *Compare* 1994 Opinion at 10-16 *with supra* Section III.C.[4]

Different policy implications may apply as well, now that Grace is in bankruptcy. *Third*,

Prudential has now submitted itself to the jurisdiction of this Delaware bankruptcy court,

whereas it previously invoked the jurisdiction of the District of New Jersey. *Fourth*, in the 1994

decision, Grace was the movant in seeking summary judgment on statute of limitations grounds,

and thus Grace bore the burden of proof in making its claim.  Now, Prudential has filed a

bankruptcy proof of claim for its Georgia buildings and bears the burden of establishing each

element of its claim by preponderance of the evidence. *In re Broadband Wireless Intern. Corp.*,

295 B.R. 140, 145 (10th Cir. BAP 2003); *In re Pugh*, 157 B.R. 898, 901 (9th Cir. BAP 1993).

36.    Thus, even if there was basis to apply collateral estoppel to the rejected 1994 New

Jersey opinion, collateral estoppel should not be applied because the exceptions recognized by

§28 of the Restatement (Second) of Judgments.

---

[4] And, in any event, Grace asserts that the New Jersey District Court applied those rules incorrectly, as evidenced by
Grace's repeated attempt to obtain interlocutory review of the improper choice of law decision at the time. *See*
*supra* Section III.B.i.

**Conclusion**

Wherefore, for the reasons stated above, in the Debtors' 15th Omnibus Objection, in the

Debtors' Reply in Support of Its 15th Omnibus Objections, at argument before this Court on

January 24, 2006, and in the Debtor's Supplemental Brief As to Two Prudential Claims Barred

by Statute of Limitations Under Georgia Law, Prudential claims 6945 and 6948 for two

buildings built in Georgia in the 1970's should be disallowed and expunged as barred under

Georgia's four year statute of limitations, which began to run upon "substantial completion" of

the buildings more than 30 years ago.  (A proposed disallowing order is attached at Exhibit C.)

Under the Delaware borrowing statute, Georgia's statute of limitations applies to these two

buildings.  Further, the 1994 choice of law decision made by the District of New Jersey to a prior

lawsuit brought in New Jersey has no application to the issues now faced by this Court and is

entitled to no collateral estoppel effect.

Dated:  September 15, 2006

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
200 East Randolph Drive
Chicago, Illinois 60601
Telephone:  (312) 861-2000
Facsimile:  (312) 861-2200

and

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Co-Counsel for Debtors and Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| W. R. GRACE & CO., et al. | ) | **Chapter 11** |
| | ) | |
| Debtors. | ) | **Case No. 01-01139 (JKF)** |
| | ) | **(Jointly Administered)** |

Hearing Date: September 25, 2006
Related Docket Nos: 9315, 11727, and
13129

## ORDER DISALLOWING AND EXPUNGING AS TIME-BARRED TWO ASBESTOS PD CLAIMS FILED BY PRUDENTIAL INSURANCE COMPANY ON ACCOUNT OF <u>BUILDINGS LOCATED IN GEORGIA</u>

Upon consideration of the Debtors' Fifteenth Omnibus Objection to 4003 Asbestos

Property Damage Claims [Substantive] (the "Objection") (Dkt. No. 9315); and the Court having

considered Claim Nos. 6945 and 6948 and the Objection as well as all subsequent briefing and

argument; the Court finding that the relief requested therein is in the best interest of the Debtors

and their estates; and due and proper notice have been given with no other notice being required;

and in light of the nature of the relief requested in the Motion; no further notice on the Objection

being required; and after due deliberation and sufficient cause appearing therefore;

IT IS HEREBY ORDERED THAT:

1.      The Objection is sustained; and

2.      Georgia's four-year statute of limitations (OCGA § 9-3-30) applies to Claim Nos.

6945 and 6948; and

3.      Claim Nos. 6945 and 6948 are both proscribed under OCGA § 9-3-30; and

4.      Claim Nos. 6945 and 6948, which were filed by Prudential Insurance Company in

these chapter 11 cases, are both disallowed and expunged, with prejudice; and

21

5.    This Court shall retain sole jurisdiction over any disputes or other matters arising from or related to this Order, which is final.

Wilmington, Delaware

Dated: _____, 2006        _____
                                UNITED STATES BANKRUPTCY JUDGE