# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              .   Case No.   01-01139
                                    .
  W. R. GRACE & CO., et al.,        .
                                    .   5414 USX Tower Building
                        Debtors,    .   Pittsburgh, PA  15222
                                    .   January 24, 2006
. . . . . . . . . . . . . . .   9:05 a.m.

TRANSCRIPT OF HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:                Kirkland & Ellis LLP
                                By:  MICHELLE BROWDY, ESQ.
                                     SALVATORE BIANCA, ESQ.
                                     MICHAEL DIERKES, ESQ.
                                     MICHAEL ROSENBERG, ESQ.
                                     ERIN SKAURON, ESQ.
                                200 E. Randolph Drive
                                Chicago, IL  60601

                                W.R. Grace & Company
                                By:  RICHARD FINKE, ESQ.
                                7500 Grace Drive
                                Columbia, MD  21044

                                Reed, Smith LLP
                                By:  DOUGLAS CAMERON, ESQ.
                                435 Sixth Avenue
                                Pittsburgh, PA  15219

Audio Operator:                 Cathy Younker

Proceedings recorded by electronic sound recording, transcript
produced by transcription service

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjcourt@optonline.net

(609) 586-2311    Fax No. (609) 587-3599

APPEARANCES CONT'D:

For Prudential Insurance:     Riker Danzig Scherer Hyland
        & Perretti LLP
      By:  ROBERT GILSON, ESQ.
      Headquarters Plaza
      One Speedwell Avenue
      Morristown, NJ  07962

For PD Committee:     Bilzin Sumberg Baena Price
        & Axelrod LLP
      By:  SCOTT BAENA, ESQ.
         MATTHEW KRAMER, ESQ.
      200 S. Biscayne Blvd., Suite 2500
      Miami, FL  33131

For FAI:     Scott Law Group
      By:  DARRELL SCOTT, ESQ.

TELEPHONIC APPEARANCES:

For Everest Reinsurance
Co. & McKinley Ins. Co.:     Marks, O'Neill, O'Brien &
        Courtney, P.C.
      By:  BRIAN KASPRZAK, ESQ.
      913 North Market St., Suite 800
      Wilmington, DE  19801

      Crowell & Moring, LLP
      By:  LESLIE EPLEY, ESQ.
      1001 Pennsylvania Avenue NW
      Washington, DC  20004

Pacific Freeholds
Partnership:     The Brandi Law Firm
      By:  TERENCE EDWARDS, ESQ.
      44 Montgomery Street, Suite 1050
      San Francisco, CA  94104

Roman Catholic Church
Archdiocese of New Orleans:     Dies, Henderson & Carona
      By:  MARTIN DIES, ESQ.
      1009 Green Avenue
      Orange, TX  77630

For Fireman's Fund
Insurance Company:     Stevens & Lee, P.C.
      By:  THOMAS WHALEN, ESQ.
      1107 North Market St., 7th Floor
      Wilmington, DE  19801

For Ace Insurance Co.:     White & Williams LLP
      By:  MARC CASARINO, ESQ.
      824 N. Market Street, Suite 902
      Wilmington, DE  19801

3

TELEPHONIC APPEARANCES CONT'D:

For the Official Committee    Stroock & Stroock & Lavan, LLP
of Unsecured Creditors:    By:  RYAN PAPIR, ESQ.
    180 Maiden Lane
    New York, NY   10038

For Off Date Insurance Co.:    Cuyler Burk, LLP
    By:  ANDREW CRAIG, ESQ.
    Parsippany Corporate Center
    Four Century Drive
    Parsippany, NJ   07054

For PD Claimants    Bilzin Sumberg Baena Price &
Committee:    Axelrod LLP
    By:  JAY SAKALO, ESQ.
    200 S. Biscayne Blvd., Suite 2500
    Miami, FL   33131

For the State of Montana:    Monzack and Monaco, P.A.
    By:  FRANCES MONACO, ESQ.
    1201 North Orange St., Suite 400
    P.O. Box 2031
    Wilmington, DE   19899

Official Committee of    Ferry, Joseph & Pearce, P.A.
Asbestos PD Claimants:    By:  THEODORE TACCONELLI, ESQ.
    824 Market Street, Suite 904
    P.O. Box 1351
    Wilmington, DE   19899

For PD Claimants:    Richardson Patrick Westbrook
    & Brickman, LLC
    By:  EDWARD WESTBROOK, ESQ.
    1037 Chuck Dawley Blvd., Bldg. A
    Mount Pleasant, SC   29464

For The Blackstone Group:    The Blackstone Group
    By:  JOHN O'CONNELL

For David Austern:    Phillips, Goldman & Spence, P.A.
    By:  JOHN PHILLIPS, JR. ESQ.
    1200 N. Broom Street
    Wilmington, DE   19806

4

TELEPHONIC APPEARANCES CONT'D:

| | |
|---|---|
| For Prudential Insurance: | Riker Danzig Scherer Hyland<br>  & Perretti LLP<br>By:  CRAIG MORAN, ESQ.<br>Headquarters Plaza<br>One Speedwell Avenue<br>Morristown, NJ  07962 |
| For USG Corporation: | USG Corporation<br>By:  MARY MARTIN, ESQ. |
| For DK Acquisition<br>Partners: | Willkie Farr & Gallagher<br>By:  STEPHEN VOGEL, ESQ.<br>787 Seventh Avenue<br>New York, NY  10019 |
| For the Debtors: | Kirkland & Ellis LLP<br>By:  JANET BAER, ESQ.<br>200 E. Randolph Drive<br>Chicago, IL  60601 |
| For Official Committee<br>of Unsecured Creditors: | Duane Morris, LLP<br>By:  MICHAEL LASTOWSKI, ESQ.<br>1100 North Market St., Suite 1200<br>Wilmington, DE  19801 |
| For Continental Casualty<br>Company: | Ford Marrin Esposito Witmeyer<br>  & Gleser, LLP<br>By:  ALEXANDER HENLIN, ESQ.<br>Wall Street Plaza<br>New York, NY  10005 |
| Unofficial Committee of<br>Select Asbestos Claimants: | Montgomery, McCraken, Walker<br>  & Rhoads, LLP<br>By:  NATALIE D. RAMSEY, ESQ.<br>123 South Broad Street<br>Philadelphia, PA  19109 |
| For Minnesota Stigma<br>Claimants: | Law Office of William Butler<br>By:  WILLIAM BUTLER, ESQ.<br>Minneapolis, MN |
| Also: | RICHARD PARK, ESQ. |

**J&J COURT TRANSCRIBERS, INC.**

5

| 1 | THE CLERK:  All rise.

2       THE COURT:  Good morning.  Please be seated.

3       This is the matter of W.R. Grace, Bankruptcy No. 01-

4 1139.  This is a continuation of a part of the debtors'

5 fifteenth omnibus objection to asbestos property damage claims.

6 The list of participants by phone:  Leslie Epley, Terence

7 Edwards, Martin Dies, Thomas Whalen, Marc Casarino, Ryan Papir,

8 Andrew Craig, Jay Sakalo, Frances Monaco, Theodore Tacconelli,

9 Edward Westbrook, John O'Connell, John Phillips, Craig Moran,

10 Mary Martin, Richard Park, Stephen Vogel, Janet Baer, Michael

11 Lastowski, Alexander Henlin, Natalie Ramsey and Brian Kasprzak.

12       I'll take entries of those of you in court, please.

13       MS. BROWDY:  Good morning, Your Honor, Michelle

14 Browdy for the debtors.

15       MR. BIANCA:  Good morning, Your Honor, Salvatore

16 Bianca for the debtors.

17       THE COURT:  Spell your last name.

18       MR. BIANCA:  B-i-a-n-c-a.

19       THE COURT:  Thank you.

20       MR. BIANCA:  You're welcome.

21       MR. DIERKES:  Michael Dierkes for the debtors, Your

22 Honor.

23       THE COURT:  Spell your last name.

24       MR. DIERKES:  D-i-e-r-k-e-s.

25       THE COURT:  K-e-s?

6

1           MR. DIERKES:  Yes.

2           THE COURT:  Thank you.

3           MR. GILSON:  Good morning, Your Honor, Robert Gilson

4  from Riker Danzig Scherer Hyland & Perretti on behalf of

5  Prudential Insurance Company of America.

6           MR. BAENA:  Good morning, Your Honor, Scott Baena and

7  Matthew Kramer on behalf of the PD Committee.

8           THE COURT:  Ms. Browdy?

9           MS. BROWDY:  Thank you, Your Honor.

10          Your Honor, first of all, we want to thank the Court

11 for taking the time to have this special setting.  We

12 understand and appreciate how busy the Court is and again, we

13 appreciate you taking the time.

14          Today will be somewhat less busy than we initially

15 anticipated since all the Speights claims have been deferred.

16 So the only issues up for argument this morning are the claims

17 of two Prudential buildings, the claim of two pro se plaintiffs

18 and the, quote unquote, stigma claims of 54 Minnesota claimants

19 that all raise the same legal argument.

20          I think we'll start off with the Prudential claims.

21 Before we do that, I'll just raise one brief ministerial

22 matter.  Your Honor, we noted in the Speights surreply brief

23 that we received on Friday that there's a new legal argument

24 that hasn't really been briefed before, which is the question

25 of whether -- for the claims that were signed late after the

7

1 | bar date whether an agent can receive late ratification from a
2 | principal.

3 | And what we thought we'd do, Your Honor, there's
4 | actually supreme court precedent exactly on point that was not
5 | cited in Mr. Speights' brief.  So we thought we would put on
6 | file a very short paper today with motion for leave to file it
7 | just to bring the additional precedent to the Court's and
8 | counsels' attention so we're not springing it on people for the
9 | first time at the argument.  So, this afternoon again we'll put
10 | in a very short paper with leave to file.

11 | THE COURT:  All right, you don't need to file a
12 | motion under these circumstances.  If there is a new legal
13 | argument, I'll accept the -- a short brief on that point.  I'll
14 | grant you the oral authority and you can simply -- unless
15 | you've already filed that motion.  If you haven't, you can just
16 | say that it's -- that your oral request is granted and you're
17 | filing it.

18 | MS. BROWDY:  Thank you very much, Your Honor.  We
19 | appreciate that.

20 | So that brings us to the issue of the two Prudential
21 | buildings.  Those are two claims from Georgia, Your Honor.
22 | Claims 6945, which is for 2200 Century Parkway in Atlanta,
23 | Georgia.  And that claim form indicates that product was
24 | installed in that building in 1970.  The second building is
25 | Claim 6948 for 2600 Century Parkway in Atlanta.  That claim

8

1  form indicates the product was installed in 1972.

2          Your Honor, Georgia has a four year statute of
3  limitations with no discovery rule.  An action must be brought
4  within four years of substantial completion of the building;
5  that's the case <u>Corporation of Mercer University vs National</u>
6  <u>Gypsum</u>, 258 Ga. 365.  It's a Georgia 1988 Supreme Court opinion
7  and again, we cited that in our papers.

8          So it's absolutely plain, Your Honor, that under the
9  Georgia statute of limitation, the claims for these two
10 buildings were barred approximately 30 years ago.

11         Now, Prudential doesn't and really can't contest that
12 under the Georgia statute of limitations these claims are
13 barred.  So what instead they argue is that it shouldn't be
14 Georgia law that applies to these Georgia buildings, but rather
15 New Jersey law.  Because in the mid-'80s, they brought a suit
16 in federal district court in New Jersey in a case that was
17 stayed as to Grace when Grace went into bankruptcy in 2001.

18         And, Your Honor, having had a chance now to read the
19 surreply papers of Prudential, there's some fundamental
20 problems with this application of the New Jersey law.  One
21 thing is that the Prudential brief treats these two property
22 damage claims as if somehow what they've done is transferred
23 venue of that 1987 New Jersey case to this Court.

24         But that's not what they've done, Your Honor.  What
25 they've done is Prudential has filed two proof of claims in the

9

1  bankruptcy court for Georgia buildings.  By filing those proofs
2  of claims, the Prudential Company has submitted itself to the
3  jurisdiction of this Court.  The bankruptcy courts apply the
4  choice of law rules from the venue where it sits.  In this
5  instance, it would be Delaware.  And Delaware has a borrowing
6  statute which would look to the statute of limitations from
7  where the action arose.

8          I believe there's an exception potentially for
9  Delaware residents, but New -- Prudential's in New Jersey.  Its
10  residence is in New Jersey.  So, again, what they've done is
11  not transfer this New Jersey action here.  They filed
12  bankruptcy proof of claims from Georgia buildings, so Georgia
13  law applies and the claims are barred by the statute of
14  limitations.

15          Further, for this New Jersey action, there's no final
16  judgment in it.  Again, it got stayed as to Grace when Grace
17  went into bankruptcy.  And the decision they rely on it's
18  actually pretty interesting.  The case was filed in New Jersey
19  in 1987.  In 1994 -- the district court decision that the Court
20  wants this Court to rely -- 1994, the federal district court
21  denied the -- two of the defendants' motion for statute of
22  limitations summary judgment on RICO grounds.

23          They -- the Court did a choice of law analysis for
24  the state law claims and then denied summary judgment as to the
25  statute of limitations claim.  Again, the defendant said that

**J&J COURT TRANSCRIBERS, INC.**

10

1  it was barred under statute of limitations at this preliminary
2  phase in the proceedings.  The Court said, "I'm not going to
3  grant you a summary judgment at this time."

4          What happens then though is the case proceeds.  I
5  think Prudential's briefs make that clear.  A lot of work was
6  done.  But then in 2001, the district court revisits its
7  opinion and finds that for those claimants that aren't in
8  bankruptcy, because it's stayed as to them, but for the
9  claimants who stuck around in that case, the Court changed its
10  mind on the RICO statute of limitations and actually found
11  those claims were barred by the statute of limitations.

12          It then said, "For the state law claims that I
13  decided on in 1994, I'm going to dismiss those because I no
14  longer have a federal cause of action.  I'm not going to retain
15  these state causes of action" and the case gets thrown out.
16  And that's reflected in the Third Circuit's opinion affirming
17  that the Prudential case, 359 F.3d 226.  So in fact, if the
18  case had not been stayed as to Grace, it would have been thrown
19  out.

20          And what they -- Prudential hasn't asked to do is to
21  transfer the case here.  They haven't asked to lift the stay.
22  Because obviously the claims would go away.  What they want to
23  somehow say is that by filing these Georgia proofs of claims,
24  they can go back to this old decision on choice of law, which
25  again is not a final judgment, and somehow evade the Georgia

**J&J COURT TRANSCRIBERS, INC.**

11

1  statue of limitations.  We don't think we -- that they can and
2  we would ask that these two claims be disallowed and expunged.
3            MR. GILSON:  Good morning, Your Honor.
4            THE COURT:  Good morning.
5            MR. GILSON:  Again it's Robert Gilson on behalf of
6  Prudential.

7            Your Honor, I would welcome questions at any point
8  because I believe that this is a very straightforward
9  application which should be denied.  It is clear, if Your Honor
10 has had a chance to review Judge Ackerman's decision, that
11 Judge Ackerman addressed this very issue; the question of what
12 law governs, on statute of limitations grounds, Prudential's
13 claims.  He addressed it following full briefing, full hearing
14 and after careful consideration, applying the applicable law in
15 New Jersey, found that in fact New Jersey statute of
16 limitations governs of all Prudential's claims.  And he did it
17 under a detailed analysis.

18           Your Honor, we submit that that decision is binding
19 on this Court under principles of collateral estoppel.  Your
20 Honor is familiar with that the supreme court has held that
21 collateral estoppel principles apply in bankruptcy.  The Third
22 Circuit has recognized that concept as well.  And with regard
23 to the application in the Third Circuit, the courts distinguish
24 between res judicata and collateral estoppel; that being issue
25 preclusion versus claim preclusion.

**J&J COURT TRANSCRIBERS, INC.**

12

1           And with regard to issue preclusion, which is what
2    we're addressing here, the courts say you have to have
3    basically four things:

4           The issue must be the same in the prior action and be
5    no dispute there.  This is the exact question that was
6    presented to Judge Ackerman.

7           The issue must have been actually litigated.  No
8    dispute there.  Over 30 briefs were filed on this issue.  Judge
9    Ackerman spent a great deal of time considering the arguments
10   of the party and then issued a lengthy, thorough decision.

11          The issue must be a final judgment in the sense of
12   finality.  And I'll come back to that.

13          And then the issue must have been essential to the
14   particular ruling, which clearly it is here.

15          So the only issue that could even be questioned is
16   the question of finality for collateral estoppel purposes.

17          The Third Circuit in the In re Brown decision, which
18   is found at 951 F.2d 564.  And in particular, I'll draw Your
19   Honor's attention to the discussion on 569.  There the Third
20   Circuit teaches that when you're looking at issue preclusion,
21   you don't need finality in the sense of a fully appealed final
22   judgment.  What you need to look at is did this proceeding
23   reach such a stage that there's no good reason to re-litigate
24   the issue that's already been decided.  And we respectfully
25   submit that clearly it did.

**J&J COURT TRANSCRIBERS, INC.**

13

1       Think about that from two different perspectives.
2   First of all, the issue was presented to Judge Ackerman.. They
3   were on summary judgment motions, fully briefed, fully
4   considered.  Now think about the practical and procedural
5   implications of adopting Grace's position.  In essence, they
6   want to come back to you and re-litigate an issue all over
7   again with no new law and simply arguing that ignore Judge
8   Ackerman, ignore the fact that the parties briefed this, ignore
9   the fact that the exact same argument was presented and
10  rejected and ignore the fact that a federal judge carefully
11  considered and applied the law and issued a decision.

12      THE COURT:  Well, does the fact that you filed a
13  proof of claim and you're now looking to Delaware's choice of
14  law rules -- I don't know how the case got filed in New Jersey
15  as to -- unless that's where the contract was led or something
16  as to buildings in Georgia.  It's kind of counterintuitive that
17  a New Jersey statute of limitations would somehow apply to a
18  building in Georgia.

19      MR. GILSON:  Well, let me address that and I think if
20  Your Honor has a chance to look at Judge Ackerman's opinion,
21  you'll see exactly why that was his ruling.  Prudential, at the
22  time it filed this lawsuit, was one of the largest owners of
23  buildings --

24      THE COURT:  Yes.

25      MR. GILSON:  -- throughout the country.  It brought

14

1  an action in New Jersey in federal court involving buildings in
2  New Jersey as well as other places.
3          THE COURT:  Was it a class action somehow?
4          MR. GILSON:  No, it's one --
5          THE COURT:  Well, then how does New Jersey assert
6  jurisdiction over a Georgia building in the first place?
7          MR. GILSON:  Because it's a -- Prudential is a New
8  Jersey corporation --
9          THE COURT:  Yes.
10          MR. GILSON:  -- headquartered there and the decisions
11  at issue -- and in fact it was always our position and Judge
12  Ackerman effectively accepted this position:  We believe the
13  causes of action arose in New Jersey.  Most of these buildings
14  were purchased after they were constructed.  And when you look
15  at the cause of action, you look at where the injury occurred.
16  It was an investment made by Prudential in buying these
17  buildings.  That investment decision was made from New Jersey
18  at the corporate headquarters.
19          THE COURT:  Well, that's a stretch, but okay.
20          MR. GILSON:  Your Honor, they've cited no law that
21  would allow you to find the opposite.  And, Your Honor, if
22  you're get into that, then you're beyond the scope of their
23  petition.  They need --
24          THE COURT:  Well --
25          MR. GILSON:   -- to come before you on a Black Letter

15

1  Law no fact issue dispute.  If Your Honor's raising the
2  question of how should I consider where the cause of action
3  accrued, I submit to you that you don't have enough in this
4  record to support it other than to follow what Judge Ackerman
5  did, which having looked at it -- and there was extensive
6  briefing with literally thousands of pages of submissions
7  supporting that application on both sides.

8           And what he looked at is, he said, "Here you have a
9  company that's domiciled in New Jersey since the prior century
10 that made investment decisions from its corporate headquarters
11 in purchasing these buildings.  And therefore, under New Jersey
12 law and choice of law, New Jersey recognizes the interest of
13 its citizens and applies its own statute of limitations to that
14 for all buildings no matter where they're located."

15          THE COURT:  But you're not under New Jersey law in
16 filing a proof of claim.  You're subject --

17          MR. GILSON:  We --

18          THE COURT:  -- to Delaware law.

19          MR. GILSON:  We respectfully submit two issues there,
20 Your Honor.  As I understand the law, the Third Circuit has not
21 yet clarified what choice of law in fact a bankruptcy court
22 should apply whether sitting in Delaware or from the case --
23 the court where either federal common law or where the action
24 was originally filed.  This is the way we look at it and
25 respectfully submit the analysis should follow.

**J&J COURT TRANSCRIBERS, INC.**

16

1          We were litigating in New Jersey.  That's where we
2   brought our action.  The court found jurisdiction.  We were
3   pursuing those claims there.  Grace files for bankruptcy.  That
4   action is stayed.  Effectively, what we're pursuing there is
5   the same claim that has been stayed by operation of the
6   bankruptcy code.  That means the claim is the same one that we
7   were pursuing in New Jersey.  It has simply been transferred to
8   the District of Delaware for purposes of administering the
9   estate of the debtor.

10          THE COURT:  Well, I'm not sure that your transfer
11  analysis works.  I -- you filed a claimed here and my
12  understanding is that when you file the claim in a bankruptcy,
13  you're subject to the jurisdiction of the bankruptcy court.
14  It's not a transferred action.  If you wanted the New Jersey
15  action to go forward in New Jersey, then the way you would do
16  it -- I'm not saying it would be granted, but the way you would
17  do it is to file a motion for relief from stay and prosecute
18  that action in New Jersey.  To transfer it here, you physically
19  need to remove the action from New Jersey here and then it's
20  the same action.  This is not the same action.

21          MR. GILSON:  As I understand it, Your Honor, that
22  action is still stayed pending and the claim is simply being
23  pursued here.  And there's two --

24          THE COURT:  Well, the action is still stayed.  I
25  agree with that and I agree that the claim is here, but I'm not

**J&J COURT TRANSCRIBERS, INC.**

1  sure that that means that the same body of law applies on all

2  fours because you're filing the claim here means that at some

3  point, you've got to substantiate whatever the damages are that

4  you're alleging.  And I think the question is as a bankruptcy

5  court applying Delaware law, what choice of law rule do I use.

6  Do I ignore --

7            MR. GILSON:  Well, let me stop you.

8            THE COURT:   -- the Delaware choice of law rule and go

9  back to where the initial action's filed.  And I don't think

10 unless you had physically removed that action from New Jersey

11 here that that's what I do.

12           MR. GILSON:  Well, let me stop on that analysis

13 because I'm not sure we're sort of leaping to a point.

14           The first point is I think Your Honor makes a full

15 stop at the issue has this issue been litigated.  And there,

16 that issue -- for example, Your Honor, had there been a final

17 judgment in the New Jersey action --

18           THE COURT:  Then you wouldn't be here.  You'd be here

19 in a different capacity with a liquidated, as opposed to an

20 unliquidated --

21           MR. GILSON:  Correct.

22           THE COURT:   -- claim.

23           MR. GILSON:  But no one could dispute that that

24 ruling by Judge Ackerman applied in this court.

25           THE COURT:  Well, that's right and unless and --

18

1           MR. GILSON:  And what --

2           THE COURT:  -- until it's reversed on appeal.  But --

3           MR. GILSON:  Right.

4           THE COURT:  But you're not -- I don't know that
5   you're there yet.  Because Ms. Browdy said something that has
6   me a little confused and I don't want to go off on in the wrong
7   tangent.  She said that Judge Ackerman later looked at this
8   opinion in which he refused to grant summary judgment and then
9   reversed himself and did grant summary judgment saying that
10  even under New Jersey law --

11          MR. GILSON:  No.

12          THE COURT:  -- the statute had expired.

13          MR. GILSON:  That's not what happened and I think
14  counsel was careful in her choice of words, but let me explain
15  exactly what did happen.

16          There were various claims in the New Jersey action.
17  One of which was a RICO claim, which has a four year statute of
18  limitations different accrual rules.  Defendants appealed that
19  issue -- well, brought that issue a second time.  That was what
20  the court addressed in 2001.  The state court claims were not
21  at issue and they didn't bring a motion on that.  And Judge
22  Ackerman changed his ruling on RICO because there had been a
23  subsequent change of law at the supreme court level.  The only
24  thing that was dismissed in 2001 were the federal causes of
25  action under the RICO Statute.  So no one ever challenged his

19

1  state law decision on any kind of re-argument --

2          THE COURT:  So the state law are still pending?

3          MR. GILSON:  They -- well, what happened is because
4  he lost federal jurisdiction when the RICO claims went out,
5  what he did was he made a ruling saying I will dismiss those
6  and send them to state court.  But because there's an automatic
7  stay, it's just sitting there pending resolution.  Obviously if
8  the stay was lifted, we would re-file in federal -- state
9  court.  And under state court law, it all relates back to the
10  original filing date.

11          THE COURT:  So now you -- now a state court in New
12  Jersey is going to assert jurisdiction over buildings in
13  Georgia?  Not a federal court, but a state court?

14          MR. GILSON:  There's -- yes, and there's no doubt
15  that they have that right.

16          THE COURT:  Oh.

17          MR. GILSON:  These district -- these -- Your Honor,
18  these defendants are located in and subject to the jurisdiction
19  in New Jersey.  The question is where does the cause of action
20  arise and if Judge Ackerman, never addressing that issue, but
21  saying a New Jersey plaintiff doing the things that led to
22  these causes of action has the right to apply New Jersey
23  statute of limitations law.  That decision, under the In re
24  Brown decision, Your Honor, is binding on Your Honor.  You
25  would be ignoring that decision by a federal district court --

**J&J COURT TRANSCRIBERS, INC.**

20

1           THE COURT:  Well --

2           MR. GILSON:   -- on that issue.

3           THE COURT:  -- except that, as I understand it, that

4   issue hasn't been subject to appeal because it's stayed.

5           MR. GILSON:  And the In re Brown decision of the

6   Third Circuit tells you that what you need to do is look at it

7   and decide was it final enough in the sense that -- and what

8   the courts look to is was it fully briefed?  Was it fully

9   litigated?  Was it fully considered?  And all of those

10  questions are affirmatively answered here.  It was fully

11  briefed after extensive discovery.  It was fully litigated in

12  the sense that Judge Ackerman considered it.  And Your Honor

13  has his opinion attached to our papers where he issued an

14  opinion of over 60 pages.  Seven of which are devoted to this

15  choice of law question.

16          Let me come to another point and look at it

17  differently.  We're all assuming here that Your Honor implies

18  Delaware law.  I'm not -- I don't accept that assumption.  I

19  believe that issue is still open in the Third Circuit; that you

20  would properly look to federal common law as to the choice of

21  law analysis.

22          You really have three choices when it comes to what

23  do I apply in terms of choice of law.  First would be New

24  Jersey.  And I believe under the transfer theory enunciated in

25  the VanDuzen case, Your Honor, by the supreme court, that

1  reasoning should apply and control here that effectively this
2  is effective transfer.  The parties litigating a case, the
3  bankruptcy court stays it under the automatic stay and that
4  claim then gets pursued in bankruptcy.  That's effectively
5  transferring.  And the same analysis that would apply -- that
6  led the supreme court to apply, should apply here.

7          Second choice would be, all right, if that's not the
8  case, what does a bankruptcy court sitting in Delaware look to?
9  Your choices are choice of law under Delaware, which is the
10 Klaxon Rule, or federal common law.  As I understand it, that
11 decision has not yet ever been squarely addressed by the Third
12 Circuit.  Although there is a case, I believe, that in dicta
13 indicates that the Court would lean towards the Klaxon.  But in
14 this situation, I would submit to you this is better applied
15 federal common law.

16         And then you look to the substantial relationship
17 test.  And New Jersey would be the proper law to apply since
18 Prudential, as a New Jersey corporation, brought those claims
19 there and we submit the claims effectively arose in New Jersey
20 when they bought the building --

21         THE COURT:  Look --

22         MR. GILSON:  -- from New Jersey.

23         THE COURT:  See, that's the problem that I think I'm
24 having a disconnect as to when the claim arose.  It seems to me
25 that to the extent that there's property damage and we're

22

1   looking at a building that's contaminated, the building was
2   contaminated when the asbestos was put in regardless of who the
3   owner was.

4               MR. GILSON:  Well, that --

5               THE COURT:  So, the cause of action arose when the
6   building was built.  Who has that cause of action may change
7   because the ownership of the cause of action itself may have
8   changed, but that doesn't mean that the accrual of the cause of
9   action took place just because the ownership of the building
10  changed.

11              MR. GILSON:  I believe --

12              THE COURT:  And so I have a great deal of difficulty
13  seeing how the accrual rule would say that Prudential has the
14  cause of action that its predecessor didn't have.  You can't
15  have a cause of action based on an installation of a product in
16  a building that you purchased that was already built that
17  didn't already exist.  How --

18              MR. GILSON:  Well, if you read --

19              THE COURT:  How would you get it?

20              MR. GILSON:      -- debtors' papers on their other
21  motions, Your Honor, in fact, they argue inconsistent positions
22  on that.  What they contend is that you need the release of
23  asbestos-containing material that somehow contaminates the
24  building and that doesn't happen at installation.  These are --
25              THE COURT:  Well, if there's a release issue, then we

**J&J COURT TRANSCRIBERS, INC.**

23

1   have a different problem.  We may not have a statute of
2   limitations issue at all.  I don't know whether there's been a
3   release.  I mean I don't know.

4           MR. GILSON:  Well, there's evidence for all the
5   Prudential buildings.  We had experts go in and address that
6   issue.  But my point is that simply saying that the cause of
7   action arises on the installation of the material in the
8   building, I do not believe is consistent with the case law nor
9   is it consistent with the position that the debtors will be
10  arguing to you on other points of law.  So they want to have it
11  both ways.  You have a cause of action that, according to them,
12  expired before you ever had damages and that can't happen.
13  Logically, it can't happen.

14          But my point is that your choice is still that you
15  back view federal common law and federal common law would get
16  you then to the same analysis as Judge Ackerman applied and
17  there you should apply again New Jersey law.

18          THE COURT:  Well, I don't see any reason why when
19  there is a Delaware choice of law rule that is historic through
20  the Delaware system that I'd be looking to federal common law.

21          MR. GILSON:  Well, let's look at --

22          THE COURT:  That's usually your bottom line choice;
23  your fall back choice if you can't find anything else.  That's
24  not the first choice that you pick as a general proposition.

25          MR. GILSON:  Generally, that's correct, Your Honor,

1  but I believe in this situation, I still submit that it would

2  be the better analysis.  But let's look at Delaware law.

3  Delaware law says, all right, you apply either Delaware's

4  statute or you apply where the cause of action accrued.  The

5  question of cause of action accrues gets you still back.  And I

6  understand Your Honor's skepticism, but I don't believe you

7  have the record in front of you in order to make a proper

8  ruling on that.

9          THE COURT:  But even if it's release -- no -- I think

10 I don't need a record --

11         MR. GILSON:  I'm not submitting it's release.  Let

12 me --

13         THE COURT:  Okay.

14         MR. GILSON:  Let me articulate exactly what I am

15 saying.

16         THE COURT:  All right.

17         MR. GILSON:  Prudential is a corporation making

18 investments.

19         THE COURT:  I don't -- doesn't matter what the

20 purpose is.

21         MR. GILSON:  Well --

22         THE COURT:  I mean it's not harmed because it made an

23 investment decision.  It's harmed because one of the buildings

24 it has is contaminated.

25         MR. GILSON:  But it bought that building --

25

1           THE COURT:  So it did.

2           MR. GILSON:   -- and incurred the injury.

3           THE COURT:  So it did.  So sue the owner who hid it

4    from you.

5           MR. GILSON:  But --

6           THE COURT:  That's --

7           MR. GILSON:  It did that from New Jersey and that's

8    where the cause of action.

9           THE COURT:  No, I can't see that.

10          MR. GILSON:  And if Your Honor --

11          THE COURT:  I just simply can't see it.  I think --

12          MR. GILSON:  I --

13          THE COURT:  -- it's wrong.

14          MR. GILSON:  I --

15          THE COURT:  You're -- I just think it's wrong.

16          MR. GILSON:  But I don't believe Your Honor's had a

17   chance to be briefed on that.  And if you're going to go that,

18   I think you're raising a fact question that is beyond this

19   motion --

20          THE COURT:  A fact question as to where the cause of

21   action accrues?

22          MR. GILSON:  Isn't that?

23          THE COURT:  Well, I'm willing to accept the

24   proposition that Prudential is a New Jersey corporation that

25   makes its investment decisions from New Jersey.  I accept that

**J&J COURT TRANSCRIBERS, INC.**

26

1 as a stipulated fact.  The issue is where are --

2                MR. GILSON:  And I believe there is law under

3 Delaware that would support the argument, Your Honor, that that

4 is then where the cause of action accrued.

5                THE COURT:  Well, okay.  And that's --

6                MR. GILSON:  Because --

7                THE COURT:  That's --

8                MR. GILSON:  -- Delaware law looks to, as I

9 understand it under its choice of law analysis, looks to the

10 point of injury.

11                THE COURT:  Right, and the point of injury is --

12                MR. GILSON:  And the point of injury is --

13                THE COURT:  -- where the building is.

14                MR. GILSON:  Well, no, the investment.

15                THE COURT:  No, I can't see that, I'm sorry.  That

16 may be a measure of your damages.  May be the fact that your

17 investment is worth less than you thought it would be.  But the

18 harm is due to the fact that you bought a building that's

19 contaminated and the injury that you suffer is based on the

20 contamination in the building.  Your damages all flow from that

21 initial decision.  Had you made a different investment decision

22 and not bought this building, your investment decision would

23 still be there, but you wouldn't have had an injury.

24                So it can't be that where you made the decision is

25 what prompted the injury.  Because if that's the case, every

**J&J COURT TRANSCRIBERS, INC.**

1   decision that you ever make, including somebody who slips and
2   falls on your building in Georgia, would be subject to New
3   Jersey law.  Because eventually your client's net worth will be
4   lowered if you have to pay a judgment based on somebody who
5   slipped and fell in Georgia based on the fact that your
6   investment decision was based on buying that Georgia building,
7   and that's just not the way the law works.

8           MR. GILSON:   I understand Your Honor's position on
9   that and having listened to that, I want to come back to --
10  because I don't think -- and I want to be able to address our
11  first and primary argument.

12          Your Honor seems to have stepped beyond Judge
13  Ackerman's decision.  And if you're doing that on the basis --
14  I think the only basis that you could is that it wasn't a final
15  decision.  I submit to you that under the Brown decision, which
16  is a controlling decision in this court in the Third Circuit,
17  what you do is you look at the finality for purposes of full
18  litigation that the issue was considered and that issue was
19  fully considered and decided in 1994.  It has never been
20  reversed.  It stands as the law of the case and it directly
21  controls this question that's before Your Honor.

22          Why would you revisit that question at this point in
23  time is the question that is posed.  So that the debtors can
24  simply throw out a claim that the district court in New Jersey
25  said was a valid, timely claim or least there were material

28

1  issues of disputed fact?  That's not the appropriate analysis
2  and that's not what should happen in bankruptcy court.  Simply
3  that they -- because they filed, they get to re-litigate an
4  issue that they lost.  That -- almost every principal that we
5  stand for in terms of a system of federalism would be undercut
6  if you accept that argument.

7          THE COURT:  Well, that I agree with.  I guess the
8  question is what happened?  Is there an appeal?  Was there an
9  appeal?  Was the time to appeal stayed?

10         MR. GILSON:  Let me take you right through that, Your
11 Honor.  Then here's the procedural history.  Prudential sues in
12 1987.  There's a -- discovery period goes on.  Summary judgment
13 motions are filed in 1992, including summary judgment dealing
14 with statute of limitations.

15         Now there are various claims.  One of which is a RICO
16 claim.  The other are state law, common law claims.  The
17 district court originally denies all of those with the
18 exception of certain claims under the breach of warranty.
19 Those stand.  Defendants seek to certify those questions to the
20 Third Circuit.  The Third Circuit refuses to accept them.

21         So that's the standing decision.  A final pretrial
22 order is entered and the case is supposed to go to trial in
23 1996.  For a series of unrelated issues, it doesn't go at that
24 point.

25         In 2001, defendants resubmit a motion for summary

29

1 | judgment based only on the RICO statute of limitations.  And

2 | they base it because there's been a change in the law; a new

3 | 2001 decision by the U.S. Supreme Court that further clarifies

4 | what accrual means under the RICO statute of limitations.

5 | Judge Ackerman considers that.  He reverses himself on that

6 | issue; on the RICO.  And expressly states, "I am not addressing

7 | the statute of limitation claims --

8 |             THE COURT:  Okay.

9 |             MR. GILSON:  -- under the state law claims."

10 |             THE COURT:  All right.  Well, then there is no final

11 | decision.

12 |             MR. GILSON:  Well, what happens then -- and here's

13 | why I believe it is final in terms of _Brown's_ analysis.  He,

14 | having lost federal jurisdiction, enters an order saying I'm

15 | going to dismiss the federal cases, but at that point, every

16 | defendant that's involved in that case has filed for

17 | bankruptcy.  So effectively, the case is stayed and just sits

18 | there at that point.

19 |             THE COURT:  He never issued the order?

20 |             MR. GILSON:  He did issue the order.

21 |             THE COURT:  Then the cases are dismissed.

22 |             MR. GILSON:  Well, there's -- but there can be no

23 | action by the parties because they're all under stay orders.

24 |             THE COURT:  Well, the court can dismiss a case.

25 | That's not an action --

**J&J COURT TRANSCRIBERS, INC.**

30

1          MR. GILSON:  Yes, the court --

2          THE COURT:  -- that's stayed against the debtor.

3          MR. GILSON:  The court dismissed those claims --

4          THE COURT:  So they're gone.  There are no federal

5  cases pending in New Jersey.

6          MR. GILSON:  Well, there -- it's -- as to U.S. Gypsum

7  and U.S. Mineral Products Company, because Grace was already in

8  bankruptcy, that was stayed.

9          THE COURT:  But it's dismissed.  You don't stay a

10  dismissal.  That's not an action against the debtor.  That was

11  their motion --

12          MR. GILSON:  When that --

13          THE COURT:  -- for summary judgment.

14          MR. GILSON:  -- decision was issued, Your Honor,

15  they were already in bankruptcy.

16          THE COURT:  But -- wait, I'm confused.  Was it not

17  Grace's motion for summary judgment that Judge Ackerman was

18  acting on and he said, "I was wrong based on the new supreme

19  court analysis; therefore, I'm dismissing the federal case"?

20  That's not an action against the debtor that's --

21          MR. GILSON:  It was actually not -- it didn't --

22  Grace had filed that motion.  They went into bankruptcy before

23  the district court ever considered it, so we addressed it as to

24  the other defendants that were still not in bankruptcy.

25          THE COURT:  All right, so I -- but I can reasonably

31

1  assume that based on the fact that there is now a supreme court
2  -- United States Supreme Court decision that determines the
3  accrual, that Judge Ackerman's initial decision, he says, was
4  in error and he dismissed all the other defendants, that when
5  that same issue comes up as to Grace, he's going to dismiss
6  Grace, too.
7          MR. GILSON:  For collateral estoppel reasons, I agree
8  with Your Honor.  That's my point --
9          THE COURT:  All right.  So Grace is gone --
10         MR. GILSON:  -- that collateral estoppel controls
11 Prudential on that issue.  It also controls Grace --
12         THE COURT:  But here's the problem.
13         MR. GILSON:  -- on the earlier issue.
14         THE COURT:  He's now said he's not addressing the
15 state issues because they weren't before him.
16         MR. GILSON:  But he already had ruled.
17         THE COURT:  But that's not binding on a state court.
18         MR. GILSON:  Oh, absolutely, Your Honor, if it went
19 to --
20         THE COURT:  How?
21         MR. GILSON:  -- the state court because for exactly
22 the same collateral estoppel issues.  A state court --
23         THE COURT:  It was --
24         MR. GILSON:  -- in New Jersey would not revisit Judge
25 Ackerman's decision on that.

J&J COURT TRANSCRIBERS, INC.

32

1        THE COURT:  Well, somebody has the right to appeal.
2   And if the Third Circuit wouldn't take it until a final order
3   was entered and now were going into state court, either it's
4   not a final order in the federal side because now the appeal
5   could be ripe if we -- if it were re-prosecuted because the
6   federal actions are being dismissed or else the ruling can't
7   have collateral estoppel consequences because there's no right
8   to appeal.

9        MR. GILSON:  That's where we disagree, Your Honor.
10  That's where I would ask you to re-look at the Brown decision
11  because the --

12        THE COURT:  Well, Brown --

13        MR. GILSON:  -- Brown decision --

14        THE COURT:  -- involved the final judgment on
15  liability and granted relief from stay to let the state court
16  adjudicate the issues as to the amount of damages that were
17  due.  It was a final judgment as to liability.  There's no
18  final judgment as to liability in any of the state courts
19  systems.

20        MR. GILSON:  Correct, but you can --

21        THE COURT:  It's just in --

22        MR. GILSON:  -- have an issue that is collaterally
23  estopped from further litigation --

24        THE COURT:  But it isn't because it hasn't been
25  subject to appeal and since the Third Circuit denied the

**J&J COURT TRANSCRIBERS, INC.**

33

1 | request to take it on an expedited basis, at some point when

2 | you finally get the litigation finished, that issue is

3 | preserved.  The statute of limitations issue is preserved.  It

4 | has never been subject to an appeal --

5 |         MR. GILSON:  Then --

6 |         THE COURT:  -- yet.

7 |         MR. GILSON:  -- Your Honor, then that's what Your

8 | Honor would have to address rather than dismiss this simply by

9 | saying that Georgia law would apply here.  Because in essence,

10 | you would be throwing Judge Ackerman's decision out.

11 |         THE COURT:  But he threw it out.

12 |         MR. GILSON:  No, he did not --

13 |         THE COURT:  He said he was --

14 |         MR. GILSON:    -- throw out his prior decision.  What

15 | he did was he made a ruling on a totally separate decision.

16 | His 1994 decision stands as a decision of that court.  It's

17 | never been reversed --

18 |         THE COURT:  As to --

19 |         MR. GILSON:  -- and I agree --

20 |         THE COURT:  -- the state law issues.

21 |         MR. GILSON:  Right.  And as to it's never been

22 | subject to final full appeal.  But In re Brown, the Third

23 | Circuit Court says to you what you look for is, is there a

24 | reason to permit re-litigation.  And I respectfully submit to

25 | you there's no point in allowing Grace, simply because they

**J&J COURT TRANSCRIBERS, INC.**

34

1 chose to file for bankruptcy, to re-litigate an issue that they
2 had lost.

3         THE COURT:  Well, okay, I don't like the concept much
4 that somebody's re-litigating an issue that you lost by way of
5 a final judgment.  The problem in Brown was that that was a
6 decision as to liability.  And all that was happening in that
7 issue -- in that instance was where you going to go to figure
8 out what the damages are.  You can't re-litigate the issue of
9 liability because it was fixed.  So, you know, there was
10 liability.  The only question is how much is it going to cost
11 the debtor.

12         That's a whole different ball of wax from whether or
13 not the appropriate choice of law rules have been applied in a
14 way to determine whether there's liability in the first place.
15 We're not even up to a determination if there was liability.
16 We're still trying to figure out what law applies to get to the
17 question of whether there's liability.

18         MR. GILSON:  I think Your Honor's analysis is
19 correct, except what you need to do is apply it to the issue
20 because you're dealing with an issue -- the question is
21 applying Brown's rationale.  What they basically say to you is
22 look at the issue -- here, the choice of law issue -- and
23 determine should it be allowed to be re-litigated.

24         THE COURT:  Well, I think it should for this reason.
25 Delaware's choice of law premise, based on the fact that there

**J&J COURT TRANSCRIBERS, INC.**

35

1  was no bankruptcy, wasn't even considered at the time

2           MR. GILSON:  Well --

3           THE COURT:  -- and the --

4           MR. GILSON:  -- Delaware wasn't the issue, Your

5  Honor.

6           THE COURT:  I'm sorry?

7           MR. GILSON:  Delaware wasn't the issue because no one

8  ever argued nor would they even here argue that Delaware

9  statute of limitations --

10          THE COURT:  Well, certainly --

11          MR. GILSON:  -- should apply.

12          THE COURT:  Oh -- no, Delaware's choice of law rules.

13          MR. GILSON:  Well --

14          THE COURT:  Not Delaware --

15          MR. GILSON:  -- you bring a suit --

16          THE COURT:  -- statute of limitations.

17          MR. GILSON:  Prudential brought its suit in New

18 Jersey.

19          THE COURT:  Yes, it did.

20          MR. GILSON:  That's where it was domiciled.  That's

21 where it believed it's cause of action arose.  The district

22 court addressed those issues and found New Jersey law controls

23 it.  Now Grace wants to come in front of you and say because we

24 filed for bankruptcy, we get to re-litigate that issue and we

25 get to get, effectively, a summary judgment on proceedings

**J&J COURT TRANSCRIBERS, INC.**

36

1 where Your Honor has no facts before you. It simply says apply
2 Delaware's law and Delaware would apply Georgia.

3 I respectfully submit that, A, you shouldn't accept
4 that proposition that you should follow Judge Ackerman; B, this
5 is more akin to a transfer situation and therefore again New
6 Jersey law applies; and C, even if you get to Delaware law, I
7 respectfully submit that there are fact questions as to where
8 this cause of action accrued and that Delaware could well look
9 at under its choice of law and apply New Jersey law here and/or
10 its own statute of limitations.

11 And then we're dealing with two buildings. And
12 here's where Grace wants its cake and eat it too. If you're
13 going to accept their analysis, in essence you have to analyze
14 each building separately --

15 THE COURT: Uh-huh.

16 MR. GILSON: -- is their contention. And forget
17 what Prudential knew up in New Jersey. It's what it knew in
18 Georgia.

19 Well, the facts of record in this case are that
20 Prudential discovered the material in this building, that it
21 had asbestos-containing material in 1986. It brought its claim
22 in 1987. Delaware has a three year statute of limitations.
23 It's within that period of time. And we would submit that
24 Delaware would be more likely to apply its own statute of
25 limitations in that situation rather than go to Georgia.

**J&J COURT TRANSCRIBERS, INC.**

37

1           THE COURT:  I don't know about that.  I've had to
2   look at Delaware's choice of law rules a number of times and
3   frankly, Delaware's choice of law rules seem to look at a most
4   significant contact type of analysis.  And the fact that the
5   bankruptcy's here in Delaware may mean that Delaware has some
6   nexus on that score.  But in terms of the most significant
7   contacts, that may be where the fact is in dispute.

8           MR. GILSON:  If you go to the most significant
9   contacts, Your Honor, and I suggest that that's a good way of
10  looking at it, then read Judge Ackerman's decision because in
11  essence that's exactly what he looked at.  That's what New
12  Jersey law looks at and he said, "Given New Jersey and given
13  the presence of Prudential in New Jersey, I'm going to apply
14  New Jersey's --

15          THE COURT:  Well, I know.

16          MR. GILSON:  -- law.

17          THE COURT:  A New Jersey judge applying New Jersey
18  law to a New Jersey corporation that's a major enterprise in
19  New Jersey really isn't too surprising if New Jersey -- if in
20  his view, New Jersey law is going to support it.  That's not my
21  issue.

22          The issue for this bankruptcy case is where did the
23  harm accrue and I can't for the life of me, accept that the
24  investment decision is what caused the harm.  Because you make
25  investment decisions of all types all the time and yes, an

**J&J COURT TRANSCRIBERS, INC.**

38

1  investment decision, in some instances, could cause harm.

2      You know, you may have, for example, insider trading
3  that's an SEC violation.  That investment decision probably
4  caused that harm, but buying a building that was contaminated
5  from somebody else who owned the building, who had the cause of
6  action and therefore, essentially stepping into the shoes of
7  the prior owner, doesn't seem to me to change the accrual time
8  frame for when the harm began -- aside from the discovery rule,
9  I'm not addressing that right now -- or where the harm occurred
10 and that's what I wanted to focus on.

11     This harm occurred in that building in Georgia.
12 Because but for that building, you wouldn't be standing here.
13 This has nothing to do with the investment decision as an
14 investment decision.  It has to do with the fact that there was
15 a -- that you bought damaged goods.

16     MR. GILSON:  Your Honor, the train of thought you
17 just ran through is very logical, but I'm not sure is based in
18 correct choice of law analysis --

19     THE COURT:  Well, I don't know either.  I have to
20 look.

21     MR. GILSON:  And that's my point that if you get to
22 that point, you should simply deny this motion because you
23 don't have the record in front of you in order to go through
24 that analysis.  No party gave you a briefing on Delaware choice
25 of law and how that applies and because it wasn't submitted by

39

1  Grace.  This is Grace's motion where they want to overcome the
2  presumption that a valid claim has been filed and they want to
3  do it simply by saying just look at Black Letter Law.

4          Well, it isn't Black Letter Law.  Once you get into
5  the analysis that you got into, Your Honor, you're into a
6  factual analysis.  It's impacted by the law, but that has not
7  been laid out to you and not briefed.  And on that ground
8  alone, you should deny this motion.

9          THE COURT:  Well, either that or I should get briefs
10 that explicate the real issue, which is what choice of law rule
11 apply.

12         MR. GILSON:  If you see that as a real issue.  But I
13 respectfully submit, Your Honor, you ought to look again at the
14 Brown decision and think about why would a bankruptcy court
15 revisit what a federal district court has already decided --

16         THE COURT:  Because it's not a final order.

17         MR. GILSON:  Okay.

18         THE COURT:  That's the problem.

19         MR. GILSON:  But why would you come to a different
20 decision?

21         THE COURT:  Because it wasn't a final order.

22         MR. GILSON:  Right.

23         THE COURT:  And so I'm not bound by it.

24         MR. GILSON:  All right, so now you're left with the
25 same question that was in front of the district court.  And

J&J COURT TRANSCRIBERS, INC.

40

 1  what you're saying is it's not a final order.  But why would
 2  you disregard his analysis and thinking --
 3            THE COURT:  Because it's wrong.
 4            MR. GILSON:  No, because it's in -- it's simply the
 5  only difference is that Prudential, who is pursuing claims in
 6  New Jersey, is not allowed to under the Bankruptcy Code because
 7  there's an automatic stay and it has to bring its claim here in
 8  a bankruptcy court in Delaware.  But that has no relationship
 9  to ignoring a district court's decision --
10            THE COURT:  Oh, I certainly --
11            MR. GILSON:  -- on a choice of law.
12            THE COURT:  -- would not ignore the district court's
13  decision under any circumstances.  I don't want to make it
14  sound as that.  But if I --
15            MR. GILSON:  I didn't think Your Honor would.
16            THE COURT:  -- have to reexamine it -- if I have to
17  re-look at this issue and I think a district court sitting in
18  New Jersey that is not binding on me as a Delaware bankruptcy
19  judge is wrong, I'm not going to apply it.  If I think it's
20  correct, obviously I will apply it.  Not because it's
21  precedential, but because I think the analysis is correct.
22            But to the extent that that decision focuses on the
23  investment decision as being the cause of the harm, under the
24  facts of this bankruptcy where I am looking at asbestos
25  contamination in a building, I'm hard pressed to see how that's

41

1  correct for the hypothetical reasons that I just went over
2  earlier.  But I do agree that to the extent that the issue is
3  which choice of law rules apply, I'm not prepared to rule
4  today.  I think everybody needs an opportunity to take a look
5  at this brief.

6          And what I want to know from the debtor is how is
7  that issue fairly encompassed within the debtors' motion?
8  Because do I need to start this process over or can I pick it
9  up where it is?  And if I can pick it up where it is, I need
10 some facts that underlay this argument.

11         I don't think you folks are really disputing the
12 major facts.  It doesn't sound as though you've got a dispute
13 about the fact that the building's in Georgia.  The investment
14 decision was made in New Jersey.  Prudential's a New Jersey
15 company.  You know, you probably aren't even going to disagree
16 about as to when Prudential, I guess, found out that it's
17 Grace's product in the building.  But maybe that's a fact in
18 dispute, I don't know.

19         MS. BROWDY:  Actually, Your Honor, on the issue of
20 the discovery rule, that's irrelevant under Georgia law.
21 That's in fact why the Mercer --

22         THE COURT:  I don't know why I'm applying Georgia law
23 either, necessarily.  I mean I think I'm applying Delaware law.
24 You folks filed a bankruptcy in Delaware --

25         MS. BROWDY:  Correct.

42

1          THE COURT:  -- and my understanding of <u>Klaxon</u>, which
2  I think is good law, is that I look to Delaware's choice of law
3  rules.

4          MS. BROWDY:  Correct.

5          THE COURT:  And now where that's going to get me is
6  the different issue.

7          MS. BROWDY:  Correct.  Actually, Delaware has a
8  borrowing statute.

9          THE COURT:  It does have a borrowing statute.

10          MS. BROWDY:  Right, and it would pull in, again,
11  Georgia law because that's where it arose.  But if the Court
12  wants briefing on this, we're happy to supply it --

13          THE COURT:  Well, I do want the briefing on that, but
14  I also want to know whether there any material facts in dispute
15  with respect to that issue.

16          MS. BROWDY:  I don't believe so.  Again, it's very
17  plain under Georgia law that four years after substantial
18  completion of building, that's it.  That's all you have.  This
19  is a building in Georgia.  We think it's very plain that an
20  asbestos property damage claim arising out of a Georgia
21  building would be under Georgia law.  But again, we're happy to
22  put in a brief on that.

23          THE COURT:  Okay.

24          Did you address how that's fairly encompassed -- this
25  Delaware issue is fairly encompassed in your motion?  I want to

43

1 make sure I don't need some supplemental motion.  And I do want
2 to make sure I don't have any material facts in dispute.  And
3 to the extent that there's a discovery rule that may have to
4 apply -- and I don't know yet that the discovery rule will or
5 won't apply.  I think it's going to depend on the choice of law
6 rule.  But if there is a discovery rule, are the facts in
7 dispute?

8          MR. GILSON:  Your Honor, as to that last point, if
9 there's a discovery rule that applies, it clearly will have
10 factual disputes.  I mean this has been litigated for years.
11 Judge Ackerman found numerous factual disputes on that issue.
12 You have the question of not only what was known and should
13 have known, but also the impact of what defendants were saying
14 about their own material.

15          I do agree with counsel that if you get to Georgia
16 law, as I understand Georgia law, they don't have a discovery
17 rule.  But I think Your Honor's on the right track is it's not
18 clear you get to Georgia law.  And on that issue, that's where
19 I submit you need further briefing.

20          And I believe that, you know, given their motion,
21 this current motion should be denied.  They should be given the
22 permission to file a new motion because in essence it is a new
23 motion and a new briefing schedule.  And I can't answer the
24 question fully of whether there will be fact disputes until I
25 see their papers.

**J&J COURT TRANSCRIBERS, INC.**

44

1          MS. BROWDY:  Your Honor, I went back to our papers
2   and we've asserted in our objection to their claim that it is
3   barred by statute of limitations and in particular, it's barred
4   under Georgia statute of limitations.  So we've not briefed
5   what is apparently now the precedent question, which is legally
6   whose statute of limitation apply the choice of law issue.

7          So, I think at most we should have narrow briefing on
8   the choice of law question.  And again, we think it'll be --
9   again, there's a couple cases that show why a bankruptcy court
10  sitting in Delaware would apply Delaware choice of law and then
11  we tell you why Delaware choice of law would implicate the
12  borrowing statute and lead to Georgia.

13         So, again, I think it's just a legal brief.  I don't
14  believe there's any factual issues.

15         THE COURT:  Well, actually, if I'm -- to the extent
16  that the debtor can show me that Georgia law applies, I'd be
17  granting the motion for summary judgment, not denying it.

18         So -- but what I'm not convinced at the moment is
19  that Georgia law applies.  So if you want a termination of this
20  motion, it would be I guess somewhat in the nature of an
21  advisory opinion which says if Georgia law applies, this claim
22  is barred.  The question then is does Georgia law apply.

23         So do you want that type of an order or do you simply
24  want to address the choice of law rule?  Perhaps have the
25  debtor amend it's motion for summary judgment to include a

**J&J COURT TRANSCRIBERS, INC.**

45

1  choice of law provision, so that you can understand where the
2  debtor's coming from.

3       MR. GILSON:  Based on the way Your Honor's laying it
4  out, I think it probably makes more sense for them to file a
5  brief on the current motion without the need for an order being
6  entered.  And then we'll respond to that brief.  I would just
7  want the opportunity they would file a supplemental brief, we
8  would respond to that and then, you know, we can address it --
9       THE COURT:  All right.

10      MR. GILSON:  -- again before Your Honor.

11      THE COURT:  Okay.  Then, the debtor is to file a
12  supplemental brief as to the two Prudential buildings at issue
13  on the question of the choice of law to be applied and the
14  collateral estoppel, a fact of Judge Ackerman's order.  Because
15  I think that's all implicated in this choice of law question.
16  Judge Ackerman's order -- really regarding the state law
17  claims.  At this point, the RICO claims have been dismissed.

18      You're not re-pursuing the RICO claims are you, Mr.
19  Gilson?

20      MR. GILSON:  No, Your Honor.

21      THE COURT:  All right.  So, order regarding the state
22  law claims.

23      How much time do you need?

24      MS. BROWDY:  We can do it in a week or 10 days.
25  Maybe by Friday the 3rd?

**J&J COURT TRANSCRIBERS, INC.**

46

1          THE COURT:  Sure.

2          And how much time do you want to respond, Mr. Gilson?

3          MR. GILSON:  I'd ask for the Court's indulgent on

4  this because I think I have a series of briefs due on the 17th.

5  If I could have till the following Friday?

6          THE COURT:  The 24th?

7          MR. GILSON:  Yes, that --

8          THE COURT:  Okay.

9          MR. GILSON:  -- would be better for me.

10          THE COURT:  That's fine.

11          And the debtor may reply since it's still your

12  burden, five pages.

13          MS. BROWDY:  Thank you, Your Honor.

14          THE COURT:  How -- when do you want to do that?

15          MS. BROWDY:  I'm actually trying to back this out for

16  how do we it get at the next omnibus hearing.

17          THE COURT:  Which is when?

18          MS. BROWDY:  It looks like if they're first putting

19  in their response on February 24th, the sooner we -- the

20  soonest we could heard it would be the March 27th --

21          THE COURT:  Right.

22          MS. BROWDY:  -- omnibus hearing.  So maybe if we

23  took -- I don't think we need it, but if we took two weeks till

24  March 10th?

25          THE COURT:  How about just till March 3rd?  If

47

1  they're taking that -- I don't really think there's going to be
2  anything new.  You've heard the basis for the argument.
3            MS. BROWDY:  That's fine, Your Honor.
4            THE COURT:  All right.  So then this is continued.  I
5  don't want to re-hear the portion of the argument that I've
6  heard, but I do want you to focus on the choice of law
7  provisions which I've sort of blown past a little bit today and
8  where they point me.
9            MR. GILSON:  Your Honor, just a point of
10  clarification on that.  I did hear you ask Grace to address the
11  collateral estoppel issue.  I understand you don't want to re-
12  hear argument, but in our supplemental brief if we find more
13  law that supports the Brown decision would you --
14            THE COURT:  Oh, absolutely.
15            MR. GILSON:  -- accept that?
16            THE COURT:  I meant that for both of you.
17            MR. GILSON:  Okay.
18            THE COURT:  I want some -- whatever further argument
19  you want to make.  I'm not convinced that Brown is enough on
20  point based on the fact that there was final judgment as to
21  liability and the only question is where were you going to
22  litigate damages.  I really am not convinced that Brown
23  applies.
24            MR. GILSON:  I understand, Your Honor.
25            THE COURT:  Okay.

**J&J COURT TRANSCRIBERS, INC.**

48

1          MS. BROWDY:  And then, Your Honor, just to clarify
2   for our kind of bookkeeping purposes that we can set this for
3   the March 27th omnibus hearing?

4          THE COURT:  Yes.

5          MS. BROWDY:  Thank you, Your Honor.

6          MR. BIANCA:  Good morning, Your Honor, Salvatore
7   Bianca on behalf of the debtors.  The next two objections on
8   the agenda pertain to two claims filed by two different pro se
9   claimants.

10         THE COURT:  All right.  Excuse me just one second,
11  I'm sorry.

12         MR. BIANCA:  No problem.

13     (Pause.)

14         THE COURT:  Okay, thank you.

15         MR. BIANCA:  No problem.  I'll continue.  Claim No.
16  14400 was filed by Phillip Shawn Moore.  The debtors object to
17  Mr. Moore's claim because it excludes information regarding
18  whether he owns the property at issue and the date in which he
19  purchased the property.  These were questions 3(a)(3) and
20  3(a)(4) on the proof of claim form.  This information is
21  necessary to determine whether or not Mr. Moore has any basis
22  to even assert a claim for this property since his ownership is
23  not clear from the forms.

24         The response filed by Mr. Moore on October 20th of
25  2005 doesn't attempt to remedy this issue and -- of these