**EXHIBIT 3 TO CCHP MOTION**

Form 906-c
(Rev. August 1994)

Department of the Treasury — Internal Revenue Service

# Closing Agreement on Final Determination Covering Specific Matters

Under section 7121 of the Internal Revenue Code

MRA Holdings Corporation, (f/k/a Nestor-BNA Holdings Corp. EIN: 65-0546677) ("Taxpayer") and Subsidiaries

(Taxpayer's name, address, and identifying number)

c/o W.R. Grace & Co.,    5400 Broken Sound Blvd. NW, Suite 300    Boca Raton, FL  33487

and the Commissioner of Internal Revenue make the following closing agreement:

WHEREAS, during the period July 1, 1996 through July 28, 1999, MRA Staffing Systems, Inc. was a subsidiary member of the affiliated group of which the Taxpayer is the common parent (the "MRA Affiliated Group") and filed consolidated returns with the Taxpayer for the taxable years ending December 31, 1996, December 31, 1997, December 31, 1998 and the short taxable year ending July 28, 1999;

WHEREAS, MRA Staffing Systems, Inc. is one general partner, and CCHP, Inc. ("CCHP") is the other general partner, of CC Partners, formerly known as Cross Country Staffing, Ltd. ("CC Partners"), a Delaware general partnership formed on July 1, 1996;

WHEREAS, MRA Staffing Systems, Inc. reported its distributive share of CC Partners' partnership items on the MRA Affiliated Group's consolidated income tax returns;

WHEREAS, CCHP and CC Partners are each entering into closing agreements simultaneously herewith, and four (4) current or former holding or parent companies of CCHP (Fresenius Medical Care Holdings, Inc., GN Holdings, Inc., Sealed Air Corporation, and W.R. Grace & Co.) will jointly enter into a closing agreement, all such closing agreements concerning the same subject matter as that addressed herein (each agreement being a "Closing Agreement," and collectively the "Closing Agreements");

WHEREAS, during the period January 1, 1993 through June 30, 1996, CCHP engaged the services of nurses and other healthcare personnel (collectively "Nurses") as employees in its business of providing temporary staffing to medical facilities;

WHEREAS, during the period July 1, 1996 through July 28, 1999, CC Partners engaged the services of Nurses as employees in its business of providing temporary staffing to medical facilities, a continuation of the business previously operated solely by CCHP;

WHEREAS, CCHP and subsequently CC Partners made payments to Nurses pursuant to the "Tax Advantaged Payment Plan" ("Plan") during the periods described above;

Page 1 of 6

Closing Agreement with MRA Holdings Corporation, (f/k/a Nestor-BNA Holdings Corp. EIN: 65-0546677) and Subsidiaries

WHEREAS, the payments under the Plan included amounts for meal and incidental expenses which were treated with respect to most, but not all, Nurses as payments made under an accountable plan as described in sections 62(a)(2)(A) and 62(c) of the Internal Revenue Code of 1986, as amended (the "Code"), and were excluded from the taxable wages of most, but not all, Nurses;

WHEREAS, CCHP and subsequently CC Partners also made payments to Nurses, or to third parties on their behalf, for housing expenses which were treated with respect to most, but not all, Nurses as nontaxable fringe benefits under section 132(a) of the Code and excluded from the taxable wages of most, but not all, Nurses;

WHEREAS, CC Partners began to phase out meal and incidental expense reimbursement payments to Nurses as of December 31, 1998, and discontinued providing any meal and incidental expense reimbursement payments and housing benefit payments to, or on behalf of, Nurses as of July 29, 1999, when the assets of the business were sold and CC Partners ceased the nurse staffing business;

WHEREAS, during their respective periods, CCHP and CC Partners did not withhold or pay any federal income tax withholding or employee and/or employer Federal Insurance Contribution Act ("FICA") taxes (collectively "Employment Taxes") with respect to the payments made to certain of the Nurses;

WHEREAS, after an Employment Tax audit by the Internal Revenue Service (the "Service"), CCHP filed Forms 941c reporting Employment Taxes on payments that CCHP had previously treated as nontaxable for the twelve quarterly periods beginning January 1, 1993 and ending December 31, 1995, inclusive, and the Service assessed CCHP for the amounts reported on such Forms 941c;

WHEREAS, CCHP has filed for bankruptcy protection in the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") (*In re CCHP, Inc.*, Bankr. No. 01-01146 (Delaware));

WHEREAS, CC Partners has filed for bankruptcy protection in the Bankruptcy Court (*In re CC Partners*, Bankr. No. 01-01198 (Delaware));

WHEREAS, the Service has filed proofs of claim with the Bankruptcy Court pertaining to amounts in dispute arising out of the Employment Tax matters described herein (the "Proofs of Claim");

WHEREAS, CCHP has instituted a suit for refund of the taxes paid with the filing of the Forms 941c, and the United States of America (the "United States") has filed a counterclaim (*CCHP, Inc. v. United States*, No. 99-158T (Fed. Cl. 1999));

WHEREAS, a tentative agreement has been reached between CCHP and the United States to settle *CCHP Inc. v. United States*, No. 99-158T (Fed. Cl. 1999);

WHEREAS, the agreement between CCHP and the United States will be reflected in a settlement agreement (the "Settlement Agreement") that will be entered into by CCHP and the United States on a date subsequent to the date hereof;

Page 2 of 6

Closing Agreement with MRA Holdings Corporation, (f/k/a Nestor-BNA Holdings Corp. EIN: 65-0546677) and Subsidiaries

WHEREAS, under the terms of the Settlement Agreement, within 180 days of the date on which both parties have executed the Settlement Agreement, CCHP will pay to the United States the sum of $13 million (the "Payment");

WHEREAS, under the terms of the Settlement Agreement, if the Payment is not made within this 180-day period, such Payment will carry interest at the statutory underpayment rate provided for under the Code and Treasury Regulations, beginning on the 181st day after such date;

WHEREAS, under the terms of the Settlement Agreement, CCHP will agree to the dismissal with prejudice of its claim for refund, and the United States will agree to the dismissal with prejudice of its counterclaim for the balance of the Employment Taxes previously assessed for the twelve quarterly periods beginning January 1, 1993, and ending December 31, 1995, inclusive;

WHEREAS, the Service proposed Employment Taxes due by CCHP on the payments for meal and incidental expense reimbursements and housing benefit payments made to or on behalf of certain Nurses for the two quarterly periods beginning January 1, 1996 and ending June 30, 1996, as additional payments of wages, which matter is in dispute;

WHEREAS, the Closing Agreement between CCHP and the Service states that there is no additional Employment Tax liability for the two quarterly periods beginning January 1, 1996 and ending June 30, 1996;

WHEREAS, the Service proposed Employment Taxes due by CC Partners on the payments for meal and incidental expense reimbursements and housing benefit payments made to or on behalf of certain Nurses for the ten quarterly periods beginning July 1, 1996 and ending December 31, 1998, as additional payments of wages, which matter is in dispute;

WHEREAS, the Closing Agreement between CC Partners and the Service states that there is no additional Employment Tax liability for the periods beginning July 1, 1996 through July 28, 1999;

WHEREAS, under the terms of their joint Closing Agreement, and for their respective periods, each of Fresenius Medical Care Holdings, Inc., GN Holdings, Inc., Sealed Air Corporation, and W.R. Grace & Co. will (x) waive any and all protective claims and rights to refund, credit or offset with respect to the application of section 274(n)(1) of the Code for the meal and incidental expenses paid by it or its affiliates, subsidiaries or other third parties for the periods beginning January 1, 1993 and ending July 28, 1999, inclusive, and (y) concede that the exceptions set forth in section 274(n)(2) of the Code shall not apply with respect to the meal and incidental expenses paid during the same periods;

WHEREAS, Taxpayer, as common parent of the MRA Affiliated Group, filed protective claims for the taxable years ending December 31, 1996, December 31, 1997, December 31, 1998 and the short taxable year ending July 28, 1999 for refund or credit of income tax previously paid or for additional net operating loss carryovers or carrybacks attributable to the adjustments under section 274(n) of the Code and any additional Employment Taxes determined to be owed for these periods by its subsidiary, MRA Staffing Systems, Inc., as general partner of CC Partners; and

Closing Agreement with MRA Holdings Corporation, (f/k/a Nestor-BNA Holdings Corp. EIN: 65-0546677) and Subsidiaries

WHEREAS, in order to avoid further time, expense, and uncertainties of litigation and bankruptcy proceedings, the parties to this Closing Agreement wish to enter into a compromise agreement, subject to Bankruptcy Court approval, to resolve any and all claims which the parties may have against each other arising out of the matters described herein, including the Employment Tax consequences of the Plan payments and housing benefit payments made to, or on behalf of, Nurses for the periods beginning July 1, 1996, and ending July 28, 1999.

NOW IT IS HEREBY DETERMINED AND AGREED FOR FEDERAL INCOME TAX PURPOSES THAT:

1. In consideration of (a) the extinguishment of Employment Tax liabilities, actual, potential, or proposed by the Service against CCHP and CC Partners, and (b) the withdrawal by the Service, in accordance with the terms of the Closing Agreements executed with the respective entities, of Proofs of Claim it has filed in the Bankruptcy Court against CCHP, CC Partners, or any other CCHP-related entity, asserting Employment Taxes the liability for which will be resolved by any of such Closing Agreements, Taxpayer, as the common parent of the MRA Affiliated Group, waives any income tax refunds, credits or adjustments to its net operating losses or net operating loss carryovers or carrybacks for the taxable years ending December 31, 1996, December 31, 1997, December 31, 1998 and July 28, 1999 attributable to the Employment Tax adjustments and settlement entered into between CC Partners and the Service.

2. In consideration of (a) the extinguishment of Employment Tax liabilities, actual, potential, or proposed by the Service against CCHP and CC Partners, and (b) the withdrawal by the Service, in accordance with the terms of the Closing Agreements executed with the respective entities, of Proofs of Claim it has filed in the Bankruptcy Court against CCHP, CC Partners, or any other CCHP-related entity, asserting Employment Taxes the liability for which will be resolved by any of such Closing Agreements, Taxpayer, as the common parent of the MRA Affiliated Group, (x) waives any and all protective claims and rights to refund, credit or offset with respect to the application of section 274(n)(1) of the Code for the meal and incidental expenses paid by it or its affiliates, subsidiaries or other third parties for the period beginning July 1, 1996 and ending July 28, 1999, inclusive, and (y) concedes that the exceptions set forth in section 274(n)(2) of the Code shall not apply with respect to the meal and incidental expenses paid during the period beginning July 1, 1996 and ending July 28, 1999, inclusive.

3. The signing of this Closing Agreement will constitute the Taxpayer's waiver of the requirement under section 6532(a)(1) of the Code that a notice of claim disallowance be sent by certified or registered mail for the claims described above.

4. By signing this Closing Agreement, the Taxpayer agrees that it will not file suit in the United States District Court having jurisdiction or in the United States Court of Federal Claims for recovery of any tax, penalties or other moneys for which this Closing Agreement is made.

5. Each party shall bear its own legal fees and expenses.

6. This Closing Agreement will become effective on the later of (i) the date the Settlement Agreement and all of the Closing Agreements are approved by the Bankruptcy Court or (ii) the date the Settlement Agreement and all of the Closing Agreements are executed by the

Closing Agreement with MRA Holdings Corporation, (f/k/a Nestor-BNA Holdings Corp. EIN: 65-0546677) and Subsidiaries

respective parties. In the event that (A) any one or more of the Closing Agreements and/or the Settlement Agreement is not executed by the respective parties or (B) any one or more of the Closing Agreements and/or the Settlement Agreement is not approved by the Bankruptcy Court, this Closing Agreement will be ineffective and void *ab initio*, and no entity or individual will have any obligation to make any payments, concessions or adjustments pursuant to this Closing Agreement, and none of the parties hereto will have waived any rights existing immediately prior to reaching the agreements documented in this Closing Agreement.

Closing Agreement with MRA Holdings Corporation, (f/k/a Nestor-BNA Holdings Corp. EIN: 65-0546677) and Subsidiaries

This agreement is final and conclusive except:

*(1)* the matter it relates to may be reopened in the event of fraud, malfeasance, or misrepresentation of material fact;

*(2)* it is subject to the Internal Revenue Code sections that expressly provide that effect be given to their provisions (including any stated exception for Code section 7122) notwithstanding any other law or rule of law; and

*(3)* if it relates to a tax period ending after the date of this agreement, it is subject to any law, enacted after the agreement date, that applies to that tax period.

By signing, the above parties certify that they have read and agreed to the terms of this document.

Your signature _____ Date signed _____

Spouse's signature (if a joint return was filed) _____ Date signed _____

Taxpayer's representative _____ Date signed _____

Taxpayer (other than individual) _____

By _Robert M. Tarola_ Date signed _February 10, 2005_

Title _Vice President - Treasurer, MRA Holdings Corp._

Commissioner of Internal Revenue

By _Steven Clark_ Date signed _3/15/2005_

Title _Appeals Team Manager_

## Instructions

This agreement must be signed and filed in triplicate. (All copies must have original signatures.)

The original and copies of the agreement must be identical.

The name of the taxpayer must be stated accurately.

The agreement may relate to one or more years.

If an attorney or agent signs the agreement for the taxpayer, the power of attorney (or a copy) authorizing that person to sign must be attached to the agreement. If the agreement is made for a year when a joint income tax return was filed by a husband and wife, it should be signed by or for both spouses. One spouse may sign as agent for the other if the document (or a copy) specifically authorizing that spouse to sign is attached to the agreement.

If the fiduciary signs the agreement for a decedent or an estate, an attested copy of the letters testamentary or the court order authorizing the fiduciary to sign, and a certificate of recent date that the authority remains in full force and effect must be attached to the agreement. If a trustee signs, a certified copy of the trust instrument or a certified copy of extracts from that instrument must be attached showing:

(1) the date of the instrument;

(2) that it is or is not of record in any court;

(3) the names of the beneficiaries;

(4) the appointment of the trustee, the authority granted, and other information necessary to show that the authority extends to Federal tax matters; and

(5) that the trust has not been terminated, and that the trustee appointed is still acting. If a fiduciary is a party, Form 56, Notice Concerning Fiduciary Relationship, is ordinarily required.

If the taxpayer is a corporation, the agreement must be dated and signed with the name of the corporation, the signature and title of an a... 'ed officer or officers, or the signature of an authorized attorney or agent. It is not necessary that a copy of an enabling corporate resolution b... ,hed. See 26 C.F.R. §601.504(b)(2)(ii) as to dissolved corporations.

Use additional pages if necessary, and identify them as part of this agreement.

Please see Revenue Procedure 68-16, 1968-1 C.B. page 770, for a detailed description of practices and procedures applicable to most closing agreements.

| I have examined the specific matters involved and recommend the acceptance of the proposed agreement. | I have reviewed the specific matters involved and recommend approval of the proposed agreement. |
|---|---|
| _Davey Parker_  2/22/2005 | _James C. Shively_  2/24/05 |
| (Receiving Officer)  (Date) | (Reviewing Officer)  (Date) |
| _Appeals Officer_ | _Appeals Officer_ |
| (Title) | (Title) |