Expert Report by Dr. Alan C. Whitehouse

# Exhibit 11

## WORKERS DEAD FROM ASBESTOS DISEASE

Key to Death Certificates
evaluation by Dr. Whitehouse:

| | | |
|---|---|---|
| A1 | = | Asbestosis for sure |
| A2 | = | Probable Asbestosis |
| A1,C1 | = | Asbestosis and Asbestos Lung Cancer |
| A1,M | = | Asbestosis and Mesothelioma |
| C1 | = | Asbestos Lung Cancer for sure |
| C2 | = | Probable Asbestos Lung Cancer |
| M | = | Mesothelioma |

★ Died of LC within 10 yrs. of 1st exposure - not included in cumulative totals.
† If coded A1,C1 deceased worker will be tallied in Asbestosis Lung Cancer column.

| YEAR | NAME | YRS at WRG | DEATH BY ASBESTOS DISEASE | | | DEATH TOTALS | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | Asbestos Lung Cancer | Meso-theli-oma | Asbes-tosis | Asbestos Lung Cancer | Meso-theli-oma | Asbes-tosis | Total |
| 1960 | Rudolph Engle | 46-60 | C1 | | | 1 | | | 1 |
| 1961 | William Airth<br>Glenn Taylor<br>Charles Wagner | 46-57<br>44-59<br>49-59 | | | A2,A1<br>A1<br>A2 | 1 | | 3 | 4 |
| 1963 | Raymond Orsborn<br>Ottis Mast | 48-50<br>47-56 | C1<br>C1 | | | 3 | | 3 | 6 |
| 1966 | John Ludwig<br>Walter McQueen | 57-66<br>44-62 | C1 | | A1 | 4 | | 4 | 8 |
| 1967 | ★Merle McComas | 58-67 | C1 | | | | | | |
| 1968 | Raymond Bleich<br>William Hedrick | 35-68<br>57-68 | C1 | | A2 | 5 | | 5 | 10 |
| 1969 | William Shows<br>Jimmie Starr | 47-48<br>52-56 | C1<br>C1 | | | 7 | | 5 | 12 |
| 1970 | William Smithers | 50-52 | A1,C1 | | | 8 | | 5 | 13 |
| 1971 | Orville D. Murray | 49-52 | | | A2 | 8 | | 6 | 14 |
| 1973 | Lionel Van Horn<br>Henry Hammer | 50-73<br>48-54 | C1 | | A2 | 9 | | 7 | 16 |

| YEAR | NAME | YRS at WRG | DEATH BY ASBESTOS DISEASE | | | DEATH TOTALS | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | Asbestos Lung Cancer | Meso-theli-oma | Asbes-tosis | Asbestos Lung Cancer | Meso-theli-oma | Asbes-tosis | Total |
| 1974 | Lilas Welch<br>Perley Vatland | 49-67<br>55-74 | | | A1<br>A1 | 9 | | 9 | 18 |
| 1975 | Lawrence Kins | 46-49 | | | A2 | 9 | | 10 | 19 |
| 1976 | Edward Dinwiddie<br>Roy Dawson | 45-55<br>38-43 | C1<br>C1 | | | 11 | | 10 | 21 |
| 1977 | Robert Cohenour<br>Thomas Craver | 48-74<br>59-77 | C1 | | A2 | 12 | | 11 | 23 |
| 1978 | Harold Day<br>Ted Wright<br>Glenn Mitchell<br>*Peter Roberts<br>Lloyd Miller<br>Orville G. Murray | 65-76<br>51-56<br>62-78<br>70-74<br>48-76<br>37-45 | C1<br>C1<br>C1<br>C1<br>A1,C1<br>A1,C1 | | | 17 | | 11 | 28 |
| 1979 | Verle Olson<br>Robert Weitzel | 46-62<br>51-56 | | M | A2 | 17 | 1 | 12 | 30 |
| 1980 | Clarence Peterson<br>Richard Rayome | 46-53<br>46-75 | C1 | M | | 18 | 2 | 12 | 32 |
| 1981 | Morris Ahrenkiel<br>John Parker<br>Robert Dahms | 47-50<br>48-50<br>57-72 | C1<br>C1<br>A1,C1 | | | 21 | 2 | 12 | 35 |
| 1982 | Jack Garrison<br>Morland Baker<br>James Gidley<br>Virgil Priest<br>Allen Boothman | 50-65<br>47-49<br>53-78<br>61-78<br>48-67 | A1,C1<br><br>C1<br>C1 | M | A2 | 24 | 3 | 13 | 40 |
| 1983 | Peter Powell<br>Michael McNair<br>Kenneth Koehler<br>Walter Baker<br>Herbert Waltman | 44-55<br>43-75<br>57-64<br>45-74<br>37-40 | C2<br><br>C1<br><br>C1 | A1,M | A1 | 27 | 4 | 14 | 45 |
| 1984 | Hord Kimble, Jr. | 62-65 | | A1,M | | 27 | 5 | 14 | 46 |

| YEAR | NAME | YRS at WRG | DEATH BY ASBESTOS DISEASE | | | DEATH TOTALS | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | Asbestos Lung Cancer | Meso-theli-oma | Asbes-tosis | Asbestos Lung Cancer | Meso-theli-oma | Asbes-tosis | Total |
| 1985 | Joseph Lyon | 42-43 | | | A1 | | | | |
| | Walter Dutton | 48-55 | | | A1 | | | | |
| | Lyle Warner | 57-66 | | | A2 | 27 | 5 | 17 | 49 |
| 1986 | Robert Vinion | 56-67 | A1,C1 | | | | | | |
| | Calvin Henderson | 49-52 | C1 | | | | | | |
| | Roy McMillan | 43-49 | | | A2 | 29 | 5 | 18 | 52 |
| 1987 | Merle Everett | 62-64 | C1 | | | | | | |
| | Ronald Johnson | 60-76 | | A1,M | | | | | |
| | James Smith | 51-68 | A1,C1 | | | | | | |
| | John Kilpatrick | 70-71 | C1 | | | | | | |
| | Ray Belangie | 47-76 | A1,C1 | | | 33 | 6 | 18 | 57 |
| 1988 | Jack Lewis, Sr. | 46-47 | | | A1 | | | | |
| | Clyde Basham | 48-? | | | A1 | 33 | 6 | 20 | 59 |
| 1989 | Charles Carroll | 58-76 | | | A1 | | | | |
| | Don Dutton | 47-49 | | | A1 | | | | |
| | Lyle Siefke | 63-0 | | | A1 | | | | |
| | Lloyd Maynard Sr | 57-74 | | | A1 | | | | |
| | Clyde Snyder | 68-73 | C1 | | | | | | |
| | Morriss Kair | 54-79 | | | A1 | 34 | 6 | 25 | 65 |
| 1990 | Harvey Noble | 51-83 | | | A1 | 34 | 6 | 26 | 66 |
| 1991 | Ken Fredericks | 66-81 | C1 | | | | | | |
| | Ted Boyd | 63-65 | C1 | | | | | | |
| | Tom DeShazer | 46-79 | | | A1 | | | | |
| | Willis Fields | 46-84 | A1,C1 | | | | | | |
| | Darrell Lockwood | 74-84 | | M | | 37 | 7 | 27 | 71 |
| 1992 | Robert Thomson | 68-0 | A1,C1 | | | | | | |
| | Frank Starry | 44-53 | | | A1 | | | | |
| | Arnold Smith | 50-79 | C1 | | | | | | |
| | Billy Dorrington | 37-80 | A1,C1 | | | | | | |
| | Raymond Carlson | 57-84 | | | A1 | | | | |
| | Henry Schnetter | 74-84 | C1 | | | | | | |
| | Gerald Nelson | 66-0 | C1 | | | | | | |
| | John Calkins | 52-58 | | M | | 42 | 8 | 29 | 79 |

| YEAR | NAME | YRS at WRG | DEATH BY ASBESTOS DISEASE | | | DEATH TOTALS | | | |
|------|------|-----------|-------------------------|--|--|-------------|--|--|--|
| | | | Asbestos Lung Cancer | Meso-theli-oma | Asbes-tosis | Asbestos Lung Cancer | Meso-theli-oma | Asbes-tosis | Total |
| 1993 | Edward Wittlake | 51-64 | | M | | | | | |
| | George Oldham | 55-66 | | | A1 | | | | |
| | Donald Peterson | 50-53 | | | A1 | | | | |
| | John Vinion | 53-71 | | | A1 | 42 | 9 | 32 | 83 |
| 1994 | Donald Howard | 48-50 | C1 | | | | | | |
| | H. Shrewsberry | 52-84 | | | A1 | 43 | 9 | 33 | 85 |
| 1995 | Floyd Cole | 49-0 | | | A1 | 43 | 9 | 34 | 86 |
| 1996 | Rex Smith | 57-86 | A1,C1 | | | | | | |
| | Robin Clark | 66-67 | C1 | | | | | | |
| | William Hostetler | 59-80 | | | A2 | | | | |
| | Rbt. Stufflebeam | 74-86 | | | A1 | 45 | 9 | 36 | 90 |
| 1997 | Donald Riley | 60-87 | | | A1 | | | | |
| | Thomas Albert | 60-62 | C1 | | | | | | |
| | Wesley Siefke | 50-51 | C1 | | | 47 | 9 | 37 | 93 |
| 1998 | Robert Graham | 62-90 | | A1,M | | | | | |
| | Arthur Bundrock | 57-78 | | | A2 | | | | |
| | Donald Johnson | 50-81 | | | A1 | 47 | 10 | 39 | 96 |
| 1999 | Maurice Post | 48-48 | A1,C1 | | | 48 | 10 | 39 | 97 |
| 2000 | Thomas Murray | 48-49 | | | A1 | | | | |
| | Daniel Garrison | 56-57 | | A1,M | | | | | |
| | Jack Kenworthy | 68-84 | C1 | | | 49 | 11 | 40 | 100 |

Expert Report by Dr. Alan C. Whitehouse

# Exhibit 12

Note: Chart of Data with Non-Libby Claimants
Deleted and CD titled "HNA Chart of X-Ray
Data" omitted from electronic filing, but
provided with the service copy

Audit of HNA Denials and Downgrades of Severity
of Disease (December 2005)

Health Network American (HNA) denials of diagnosis were reviewed because
of claims of overreading of CXR's.

Only those charts were reviewed that we had letters from HNA. HNA
refused to provide us with a list. Approximately 90 +/- charts were reviewed
and are summarized below.

70 charts were denials of any abnormalities.

1.    ATSDR readers during 2000 and 2001 screenings confirmed
      CARD readings on 44 of 45 they had read.

2.    Dr. Becker (radiologist at St. John's Hospital, Libby) confirmed 51
      of 68 he had read. Of the 17 Dr. Becker did not confirm, 16
      were confirmed by other outside readers or CT scans.

3.    Dr. Teel (Spokane pulmonary radiologist) confirmed CARD
      readings on 5 of 5 he read.

4.    Dr. Lynch or Dr. Newell in Denver confirmed 4 of 4 they had
      read.

5.    2 of 70 were not confirmed. One is likely normal. One is
      equivocal due to massive obesity.

6.    7 films were not read by HNA at all, but denied. A letter of
      denial was issued with no readings presented.

7.    Dr. Flynn (HNA Medical Director) overruled his own radiologists 5
      times where they had found asbestos disease.

15 were downgraded by HNA from CARD and other radiologists' readings.

●  8 had asbestos interstitial disease (asbestosis) and were read as
   no disease by HNA readers. 6 of the 8 were confirmed
   by outside readers or Dr. Becker.
●  7 had diffuse pleural thickening and were downgraded to
   pleural plaques by HNA readers. The CARD readings on 3
   of the 7 were confirmed by outside readers.

1

8 were accepted as sent from CARD.

Summary------------of 93 charts reviewed:
     68 of 70 were rejected incorrectly (1 correctly; 1 equivocal)
     15 were downgraded incorrectly
      8 were accepted as sent by CARD

5 positives (Shipley, Molina) were overridden to negative (denial) by Dr. Flynn.


Alan C. Whitehouse, MD, FCCP

2

Expert Report by Dr. Alan C. Whitehouse

# Exhibit 13

# W. R. Grace & Co.
# Asbestos PI
# Questionnaire

*The United States Bankruptcy Court for the District of Delaware*
*In re: W.R. Grace & Co., et al., Debtors, Case No. 01-01139 (JKF)*
*(Jointly Administered)*

The Debtors consist of the following entities:

W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## SUBMIT COMPLETED ASBESTOS PI QUESTIONNAIRE TO:
### Rust Consulting, Inc.
### Claims Processing Agent
### Re: W.R. Grace & Co. Bankruptcy
### P.O. Box 1620
### Faribault, MN 55021-1620

The Debtors in this case are also collectively referred to in this document as "Grace".

You must submit this Asbestos PI Questionnaire if you have an Asbestos PI Pre-petition Litigation Claim against any of the Debtors. An "Asbestos PI Pre-petition Litigation Claim" is any Asbestos PI Claim that is based upon either (i) a pre-petition lawsuit for which no judgment or enforceable settlement was reached before April 2, 2001, or (ii) to the extent that a final judgment was rendered or an enforceable settlement was reached, and the settlement or judgment, as applicable, places any obligation(s) upon any of the Debtor(s), such Debtor(s) have not satisfied its obligations pursuant to the judgment or settlement.

YOUR COMPLETED ASBESTOS PI QUESTIONNAIRE MUST BE <u>RECEIVED</u> BY THE DEBTORS' CLAIMS PROCESSING AGENT ON OR BEFORE <u>5:00 P.M. EASTERN TIME ON [DATE]</u> or you may be forever barred from asserting or receiving payment for your claim(s).

## INSTRUCTIONS

**A.     PART I -- Injured Party Information**

Respond to all applicable questions. If the injured party is represented by legal counsel, then in Part I (b), please provide legal counsel's name and the name, telephone number and address of the firm with which such counsel is associated. Also, if the injured party would prefer that the Debtors send subsequent materials to legal counsel, instead of sending such material to the injury party, then check the box indicating such in Part I (b). If the injured party is deceased, then complete Part I (c), which concerns the primary and contributing causes of death.

**B.     PART II -- Asbestos-Related Condition(s)**

With respect to Part II (a), respond to all applicable questions. If a section is left blank, then it will be interpreted to mean that the injured party does not have the specified injuries, conditions, or test results addressed in that section. To complete questions related to injuries, medical diagnoses and/conditions, please use the following definitions:

**Mesothelioma:** A diagnosis of malignant mesothelioma by a board-certified pathologist.

**Asbestos-Related Lung Cancer 1:** Primary lung cancer (1) diagnosed on the basis of findings by a board-certified pathologist, and (2) evidence of asbestosis based on a chest x-ray reading by a certified B-reader of at least 1/1 on the ILO grade scale or asbestosis determined by pathology; and (3) supporting medical documentation establishing asbestos exposure as a substantial contributing factor in causing the lung cancer.

**Asbestos-Related Lung Cancer 2:** Primary lung cancer (1) diagnosed on the basis of findings by a board-certified pathologist; and (2) a diagnosis of asbestos-related nonmalignant disease based on a chest x-ray reading by a certified B-reader of at least 1/0, or blunting of either costophrenic angle and bilateral pleural plaque or bilateral pleural thickening of at least grade B2 or greater, or bilateral pleural disease of grade B2 or greater; and (3) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the lung cancer.

**Asbestos-Related Other Cancer:** Primary colorectal, laryngeal, esophageal, pharyngeal or stomach cancer (1) diagnosed on the basis of findings by a board-certified pathologist; and (2) evidence of asbestosis based on a chest x-ray reading by a board certified B-reader of at least 1/1 on the ILO grade scale or asbestosis determined by pathology; (3) supporting medical documentation establishing asbestos exposure as a substantial contributing factor in causing the cancer.

**Clinically Severe Asbestosis:** (1) Asbestosis diagnosed by a board-certified pulmonologist or internist; and an independently replicated chest x-ray by a certified B-reader of 2/1 on the ILO grade scale and either (i) total lung capacity less than 65% or (ii) forced vital capacity less than 65%; and (3) a FEV1/FVC ratio greater than or equal to 65%, or (B) asbestosis determined by pathology.

**Asbestosis:** Asbestosis diagnosed by a board certified pulmonologist or internist, and (A) an independently replicated chest x-ray reading by a certified B-reader of 1/0 on the ILO grade scale, or (B) blunting of either costophrenic angle and bilateral pleural plaque or bilateral pleural thickening of at least grade B2 or greater, or (C) bilateral pleural disease of grade B2 or greater and (i) total lung capacity less than 80% or (ii) forced vital capacity less than 80% and a FEV1/FVC ratio greater than or equal to 65%.

**Other Asbestos Disease:** Satisfaction of the criteria for (A) Mesothelioma, (B) Asbestos-Related Lung Cancer 1, (C) Asbestos-Related Lung Cancer 2, (D) Asbestos-Related Other Cancer, (E) Clinically Severe Asbestosis, or (F) Asbestosis, or a diagnosis of a bilateral asbestos-related nonmalignant disease or asbestos-related malignancy other than those in (A) through (F).

With respect to Part II (b), please provide the requested information for the diagnosing doctors during your first and, if applicable, second diagnoses.

**C.     PART III -- Alternative Causes of Asbestos-Related Condition(s)**

In Part III(a), mark the box(es) next to the non-asbestos cause(s) of your asbestos-related conditions that the respective doctors identified during your first and/or second diagnosis. In Part III(b) please explain non-asbestos cause(s) that were identified by the respective doctors during each of your diagnosis.

**).     PART IV -- Exposure to Grace Asbestos**

Part IV (a) applies to persons who allege exposure due to asbestos in an occupational setting - i.e., at work. Part IV (b) applies to persons who allege exposure to asbestos as a result of living in Libby, Montana.

Expert Report by Dr. Alan C. Whitehouse

# Exhibit 14



Buyers Up • Congress Watch • Critical Mass • Global Trade Watch • Health Research Group • Litigation Group
Joan Claybrook, President

# Leading Medical Experts Fault Arbitrary, Outdated Medical Criteria in Asbestos Bill

## Flawed Standards Will Deny Compensation to Many Legitimate Victims of Asbestos Disease

Four of the country's leading experts in the diagnosis and treatment of asbestos diseases are opposing the medical standards that claimants must meet to qualify for coverage under the $140 billion trust fund set up by the asbestos bill, S. 852, to compensate individuals injured by exposure to the toxic mineral. These clinicians and researchers are:

*Michael Harbut, MD, MPH, FCCP*, Chief of the Center for Occupational and Environmental Medicine, Co-Director of the National Center for Vermiculite and Asbestos-Related Cancers at the Karmanos Cancer Institute and past chair of the American College of Chest Physicians. According to Dr. Harbut, who currently treats over 2,000 individuals a year, most of whom suffer from asbestos-related diseases, the bill would exclude over 40 percent of his patients despite the fact that their illnesses are clearly attributable to asbestos exposure. Dr. Harbut contends that one former iron worker he has treated for about eight years, and who recently required a double lung transplant, would not have qualified for relief under the bill until perhaps two years ago, when his condition was already so advanced that there was little hope of saving his lungs.

*Philip J. Landrigan, MD, MSc, DIH*, Chair of the Department of Community and Preventive Medicine at Mount Sinai School of Medicine (the department founded by Dr. Irving J. Selikoff, renowned "Father of Asbestos Research in the United States"), which has been the major provider of diagnostic services to over 12,000 workers at the Ground Zero site of the World Trade Center destruction. According to Dr. Landrigan, a board-certified specialist in occupational medicine (among other specialties) and a member of the National Academy of Sciences' Institute of Medicine, tens of thousands of legitimate lung cancer victims would be shut out of the fund by the bill's medical criteria.

*Alan C. Whitehouse, MD,FCCP*, Senior consulting physician at the Center for Asbestos Related Disease in Libby, Montana, and the pulmonary specialist who first identified asbestos-induced disease among W.R. Grace miners and factory workers in Libby. According to Dr. Whitehouse, whose patients are largely community members with no direct occupational exposure but who nevertheless developed asbestos diseases because of the toxic dust deposited by the W.R. Grace mine and factory into the air and soil, the bill's medical criteria would exclude 90 percent of the individuals he treats, knocking them down to the lowest disease

215 Pennsylvania Ave SE • Washington, DC 20003 • 202-588-1000 • www.citizen.org • cwatch@citizen.org

category, "Level 1,"where they are only entitled to x-ray and lung function tests once every three years.

*L. Christine Oliver, MD, MPH, MS, FACPM,* Assistant Clinical Professor of Medicine at Harvard Medical School and Associate Physician of Pulmonary and Critical Medicine at Massachusetts General Hospital. According to Dr. Oliver, who has spent years treating asbestos victims, thousands of exposed individuals who have demonstrated abnormalities on chest x-rays and are therefore at significantly increased risk of developing cancer will be denied vital long-term follow up because of the limitations on medical monitoring in the Level 1 category. These individuals may be prevented from discovering they have cancer until it is too late to stall or reverse the progress of the disease.

And that's not all. The *American Thoracic Society* has published criteria that disagree considerably with the medical criteria in the bill, although they do not take a position for or against the legislation. The *American Public Health Association,* a membership organization consisting of over 50,000 public health professionals, also disagrees with the medical criteria put forth in the bill.

## What is at Stake

The staggering scale of the asbestos epidemic that has already sickened or killed hundreds of thousands of people in the U.S. is underscored by the number of potential victims: some 27.5 million workers exposed to asbestos on the job from 1940-1978, and who in turn contaminated their own families; thousands of residents of Libby, Montana, where asbestos-tainted vermiculite was mined and manufactured into Zonolite insulation for 70 years; hundreds of thousands of people living in the 28 sites nationwide that received 80 percent of the vermiculite mined in Libby from 1964-1980, and those living in the remaining 172 sites where vermiculite was used in factory processing; the residents of over 30 million houses in the U.S. that, according to the EPA, still have vermiculite insulation; the thousands of New Yorkers living and working in proximity to the site of the World Trade Center's destruction.

An analysis conducted in 1982 projected up to 9,700 cancer deaths each year of workers occupationally exposure to asbestos, and an estimated total 500,000 worker mortalities between 1967 and 2030. But this did not include sickness and death from non-malignant asbestos diseases, nor the full range of potential occupational victims (such as demolition and renovation workers), or those exposed to risks after 1979. And, it only covered workers. Some 10,000 people died of asbestos-related diseases in 2003 alone, and because of the 20-50 year latency period between toxic exposure and manifestation of symptoms—and the fact that asbestos was not strictly regulated until 1986—experts now predict that the peak for both malignant and non-malignant forms of asbestos-related diseases will not be reached until 2018.[1] Disease projections vary widely, ranging from 750,000 to 2.6 million future claims of sickness and death associated with asbestos.[2] A 2003 Congressional Budget Office estimated some 1.7 million claims over the next three decades.[3]

---

[1] Nicholson WJ, Perkel G, Selikoff IJ. 1982. *Occupational exposure to asbestos: population at risk and projected mortality -- 1980-2003.* Am J Ind Med 3:259-311.
[2] Testimony of Laura S. Welch, MD, Medical Director, Center to Protect Workers Rights, before the Senate Judiciary Committee, June 2003.
[3] Congressional Budget Office *Cost Estimate: S. 1125 Fairness in Asbestos Injury Resolution Act,* October 2003.

## What the Experts Say

### Summary

The bill's medical standards are designed to exclude hundreds of thousands of otherwise legitimate asbestos-poisoned individuals from compensation. The aforementioned specialists in occupational medicine with particular expertise in the effects of asbestos contamination maintain that S. 852 uses arbitrary, outdated medical criteria to define asbestos-related disease that are not based on or are inconsistent with current medical and scientific knowledge. The legislation:

- Requires x-ray evidence of disease instead of more technologically accurate, sensitive and readily available methods such as CT scan, defines disease based on pre-1995 thinking that has since been conclusively disproved, sets fixed exposure thresholds contrary to epidemiological evidence, arbitrarily reduces benefits to smokers and fails to recognize injuries to consumers and residents living in proximity to asbestos processing plants.

- Rejects most of the criteria for determining the existence and extent of asbestos-related disease established by the American Medical Association *Guides to the Evaluation of Permanent Impairment*—standards widely accepted by the medical community and used by 42 states and some Canadian provinces as the basis for workers compensation claims.

- Ignores the recommendations of the American Thoracic Society (ATS), which were developed over the course of three years by the preeminent experts in the field of lung disease, as set forth in its *Guidelines for the Diagnosis and Initial Management of Nonmalignant Diseases Related to Asbestos*.

- Relies on the term "substantial" as a determinant in a variety of contexts, a word that has no commonly understood meaning in the medical community, nor definition in medical literature or in the bill itself. This means that an administrator will be left to make a decision tantamount to medical diagnosis, which should be made by a physician.

Those excluded will lose their right to seek compensation in court for the harms inflicted by companies that knowingly exposed them to a powerful human carcinogen. As diagnosed sufferers of asbestos-related diseases (although not eligible for financial assistance under the bill) they will be unable to obtain health or life insurance. Some will be unable to continue in their current trade or to work at all. The cost of their continuing medical care—which for someone stricken with asbestosis could be several thousand dollars a month for oxygen alone—will ultimately be borne by taxpayers, if at all.

What follows is a detailed critique of the bill's medical criteria compiled from the testimony, statements and letters to Senate Judiciary Committee members by the aforementioned experts:

3

## Diagnosis based on crude, outdated technology

### 1.    X-rays are a poor substitute for CT scans

The bill almost completely relies on x-rays and a limited set of pulmonary function tests—a more than century-old, forced breathing test—as the basic diagnostic tools and, by extension, determinants of a claimant's compensation level. Studies comparing x-ray with CT scan technology, have conclusively shown that the x-ray is a comparatively crude way of diagnosing asbestosis. CT scans are about 33 percent more sensitive in detecting interstitial disease, and over 50 percent more sensitive in detecting pleural disease.[4]

X-rays fail to diagnose many victims of lung disease caused by inhalation of asbestos fibers. One reason is that asbestosis—a progressive, sometimes fatal disease that leaves its victims dependent on external oxygen supplies for survival—can be present in the lung even though the x-ray is normal using the ILO classification system specified in the bill. The ATS guidelines affirm the use of high resolution CT scanning for diagnosis of asbestosis when the chest x-ray is normal. As described in numerous peer-reviewed publications and in the ATS report, high-resolution computer tomography (HRCT) is now widely accepted as a diagnostic tool for asbestosis and asbestos-related lung scarring. Recent studies show that readers using a scoring index for HRCT were more accurate and reliable in the diagnosis of asbestosis than when using plain chest x-rays. The most notable study concluded that "the examined HRCT scoring method proved to be a simple, reliable, and reproducible method for classifying lung fibrosis and diagnosing asbestosis also in large populations with occupational disease, and it would be possible to use it as a part of an international classification."[5] Expert consensus supports this conclusion.

Nevertheless, there is only limited call in the bill for use of HRCT technology. The cost for HRCT diagnosis compared to x-rays may be a concern, but there is every reason to believe affordable prices for HRCT scans can be achieved, especially as the volume of such scans would grow if the technology were permitted beyond the narrow fashion now contemplated by the bill. Some treating centers have already managed to get the cost down to just a few hundred dollars per CT scan.

### 2.    Mesothelioma diagnosis remains elusive

The bill fails to require the use of sufficiently sophisticated technology to diagnose mesothelioma, cancer of the lining of the abdominal or chest cavity, which is so difficult to detect accurately that a large number of cases go undiagnosed until after death. Mesothelioma cases are the most expensive for industry to compensate. The only documented cause of mesothelioma is asbestos exposure; although it is often referred to as a rare disease, the 2,500-4000 cases of mesothelioma diagnosed annually kill more people in the U.S. than ovarian cancer. PET scans, which can be more sensitive than CT scans, should be incorporated into the diagnostic criteria of the bill. Flexibility to allow for serological diagnosis should also be included in the bill. A blood test field tested in the U.S. and already in use in Australia has

---

[4] *Fraser and Paré's diagnosis of Diseases of the Chest, 4th Ed.*, pp. 2431, 2440.
[5] O. Huuskonen, et al., *High-resolution computed tomography classification of lung fibrosis for patients with asbestos-related disease*, Scandinavian Journal of Work, Environment and Health 27(2):106-12, April 2001.

proven very sensitive in diagnosing the disease. U.S. clinical trials for blood tests for mesothelioma are occurring right now at the Karmanos Cancer Institute in Michigan. Individuals at risk of mesothelioma would be barred from offering the results provided by such emerging technology under the bill.

## Diagnosis based on arbitrary criteria inconsistent with the current state of medical knowledge

### 1.    Barriers to proving asbestos-related lung disease

The bill requires *bilateral* pleural disease—thick scarring on the lining of both lungs—in order to establish that asbestos exposure is the cause of illness. Moreover, the scarring, which resembles an orange rind, must be of a certain width and be associated with specific breathing impairment. The dimension and impairment requirements have no basis in medical literature.  And as acknowledged by the ATS in its guidelines, pleural scarring associated with asbestos *almost always* begins unilaterally—in just one lung—and often progresses unevenly. Thus, the bill would exclude from compensation, at the very least, individuals in the early stages of asbestosis.

### 2.    Flawed lung function testing

The bill requires abnormal spirometry—a test of the ability to blow air in and out—for a diagnosis of asbestosis, despite the fact that individuals with asbestos-related disease do not necessarily evidence spirometric abnormalities. For example, a construction worker who suffers from obstructive lung disease caused by dust and welding fumes may also suffer from restrictive lung disease due to asbestos exposure on the construction site. The worker may not exhibit abnormal spirometry, however, because the obstructive-restrictive combination can produce an overall normal spirometric test result.

## Exposure criteria are unreasonably rigid

### 1.    Minimum exposures exclude valid cases

The bill sets minimum durations of exposure to asbestos in order to establish valid claims of asbestos-related disease. For example, there is a minimum 5-weighted-year duration of asbestos exposure to support a diagnosis of asbestosis.  There is an 8-12 year requirement of exposure to establish asbestos causation in the case of lung cancer.  There is no support for strict exposure thresholds in medical or scientific literature.  On the contrary, evidence points to situations where, under some exposure conditions, a one-month occupational exposure to asbestos can markedly heighten the risk of lung cancer and increase the risk of asbestosis-related death.

### 2.    Unreasonable discounting of exposure after 1976 and 1986

The bill discounts exposure based on the years during which it occurred, counting each year of exposure after 1976 as only half a year, and after 1986 as one-tenth of a year. The rationale for this is presumably the reduced opportunities for toxic exposure after these dates due to the implementation of OSHA and EPA regulations. There is, however, no medical or scientific basis for the discount formula used in the bill, nor any other discount formula. Furthermore, the

5

formula is ludicrous on its face: an individual with colorectal, laryngeal, esophageal, pharyngeal or stomach cancer whose exposure occurred after 1976 would need 105 years to meet the criteria for a valid claim, according to Dr. Philip Landrigan.

## Impairment criteria run counter to AMA guidelines

### 1.    Important medically-accepted tests are left out

How well an individual's lungs are working can be measured accurately and reliably with pulmonary function testing. The diagnosis of asbestosis depends in part on characteristic findings of physical exam, pathology, chest x-ray or CT scan, but impairment must be measured with appropriate pulmonary function testing. The AMA *Guides* states that each worker should undergo spirometry *and* DLCO—a measure of the lungs' efficiency in transferring oxygen into the blood stream—as part of the evaluation of lung impairment, and exercise testing can add additional information if needed. Using a combination of forced vital capacity (FVC), forced expiratory volume in one second (FEV1), DLCO, and oxygen consumption on exercise testing (VO$_2$max) when needed, the patient is placed into one of four levels.

The asbestos bill refers to the AMA *Guides* and includes spirometry, but omits DLCO and oxygen consumption on exercise testing—both of which are important and readily available tests that the AMA has determined are reliable and essential to determine how badly a person's lungs are impaired. As a result, individuals with asbestosis may have to wait until their disease is advanced before they can qualify for treatment.

## Causative criteria unreasonable and unscientific

### 1.    Outdated reliance on "markers" excludes legitimate cancer victims

Versions of the bill in 2003 and 2004 provided three levels of compensation for victims of asbestos-related lung cancer: Level VII, for lung cancer victims with 15 years of substantial occupational exposure, but whose x-rays showed no "markers" of non-malignant asbestos-related disease; Level VIII, for victims with lung cancer whose x-rays showed pleural disease; and Level IX for lung cancer victims with x-rays showing asbestosis. S. 852 has eliminated compensation under the old Level VII criteria for exposure in the absence of radiographic "markers," a determination that, based on Congressional Budget Office projections will potentially remove more than 40,000 asbestos-related lung cancer victims from coverage.[6] Provisions recently added to the 2005 bill would allow some of the lung cancer victims without radiographic "markers" to use CT scans to show that they have asbestosis, but the bill does not specify that victims with pleural disease can also use this more sensitive and specific diagnostic test to show their disease and exposure. CT scans have been proven in scientific studies to identify pleural disease or asbestosis in approximately half of individuals without such findings on x-rays, and that about half of these identified by CT scans will have asbestosis and half will

---

[6] Testimony of Peg Seminario, Director, AFL-CIO, before the Senate Judiciary Committee, April 2005.

have pleural disease. Thus, the net result of the bill as introduced is that 25,000 – 30,000 asbestos lung cancer victims previously covered may not be eligible for compensation.[7]

Numerous studies show that there is a dose-response relationship between exposure to asbestos and the risk of lung cancer, with increasing exposure leading to increasing risk of disease. There is no know safe level of exposure to asbestos. Workers at U.S. government facilities get an environmental pay differential if their job exposes them to airborne asbestos, regardless of the concentrations or length of time of exposure, so long as protective measures have not been implemented to eliminate the potential for injury.[8] With 15 years of substantial occupational exposure to asbestos, lung cancer can be attributed to that exposure—it should not be necessary to document underlying non-malignant asbestos disease as well. More importantly, while workers with asbestosis have a two-to-four-fold higher risk of lung cancer than asbestos exposed workers without asbestosis, asbestosis is merely a surrogate measure of exposure: significant asbestos exposure is required to cause asbestosis. Since 1995, scientific studies have clearly demonstrated that asbestosis itself is not a necessary intermediary for development of asbestos-related lung cancer. Thus, current medical thinking rejects the threshold requirement of a radiographic "marker" to prove that lung cancer has been caused by asbestos. As a secondary matter, even where there is asbestosis, lung disease may not meet the still further hurdle of being bilateral, as already discussed.

## 2.    Smokers are unfairly punished

The bill reduces the ability of lung cancer patients with a history of asbestos exposure and who smoked to receive the same level of compensation as those who did not smoke, despite the well-documented synergistic effect of these two carcinogens. People exposed to asbestos are five times more likely to develop lung cancer than those not exposed. Smokers run a 10-fold risk of developing lung cancer compared to non-smokers. But a smoker who is also exposed to asbestos has 55 times the risk of developing lung cancer. To exclude a lung cancer sufferer with a history of occupational exposure to asbestos solely because the victim smoked is unreasonable because it implies assumption of a significantly heightened risk that, in fact, could not have been known by the victim: even those who would have been aware that smoking posed a danger would not have had knowledge of the synergistic combination, a fact that remains in the province of medical professionals and is not commonly advertised. It is prejudicial because it singles out smokers but ignores the synergistic interaction of other environmental carcinogens, such as drinking arsenic-contaminated well water, with asbestos exposure. It is unfair because it allows a corporation that concealed the dangers of smoking from consumers to blame a given individual's lung cancer on occupational contact with asbestos, and a corporation that concealed the dangers of asbestos from workers to claim that the same individual, who was an employee, got lung cancer from smoking—thus exempting bad actors from legal liability. Finally, to arbitrarily attribute a smoker's lung cancer to smoking rather than asbestos because there is no radiographic "marker" of exposure, i.e., pleural disease, flies in the face of epidemiological evidence as described above.

---

[7] Ibid.

[8] *U.S. Dep't. of Veterans Affairs Medical Center v. American Federation of Government Employees*, 46 FLRA No. 107, January 1993.

### 3.    Consumers and bystanders are left out

The bill only compensates those who were occupationally exposed to asbestos—and then, only if in contact with asbestos for more than 5 years—and the family members of exposed workers. It does not, for example, compensate the high school kids in factory towns across the country who unloaded boxcars filled with vermiculite ore to earn money over their summer vacations and now, maybe 20 years or more later, have developed lung disease. It makes no provision for individuals harmed by non-occupational exposure, other than the residents of Libby, Montana. The EPA currently has 28 nationwide factory site "hot spots" under priority surveillance to determine the health effects of asbestos exposure. These sites received 80% of the Libby, Montana vermiculite ore sent to a total 200 factories in the U.S. where the toxic material was processed for use in consumer goods. The remaining 172 sites are of secondary interest to the EPA, but are also included in its surveillance plan. None of the community members exposed to asbestos dust from factory exhaust and particles transmitted widely by workers on their clothing and skin in any of these 200 towns will be covered under the trust fund.

Also excluded from qualifying for benefits are consumers who purchased and indifferently used and disposed of some 3,000 commercial products containing asbestos, including people who did their own automotive repairs such as replacing brake linings. Nor does the bill include occupants of 30 million houses nationwide containing asbestos-laden insulation in their attics, the health consequences of which have as yet been unexplored—although it has been established that there is no safe level of exposure to asbestos. It leaves out the hundreds of thousands of New Yorkers who have lived and worked in the vicinity of Ground Zero from the World Trade Center's destruction forward. The bottom line is that because the medical criteria rely on occupational exposure thresholds, they exclude millions of individuals who unwittingly incurred the risk of disabling and potentially fatal disease by purchasing products or living in communities with asbestos-related industries.

<u>Contacts</u>

*Michael Harbut, MD, MPH, FCCP*, Chief, Center for Occupational and Environmental Medicine; Co-Director, National Center for Vermiculite and Asbestos-Related Cancers, Karmanos Cancer Institute; Clinical Assistant Professor, Internal Medicine, Wayne State University. (248) 547-9100 (w), (248) 506-8871 (c), (248) 367-8265 (beeper), MIhar@aol.com.

*Philip J. Landrigan, MD, MSc, DIH*, Chair, Dept. of Community and Preventive Medicine, Mount Sinai School of Medicine. (This is New York's largest clinical facility in occupational medicine and one of the nation's largest research and training programs in occupational health, established by Dr. Irving J. Selikoff, known as the "Father of Asbestos Research in the United States." This department was the major provider of diagnostic services to Ground Zero workers in the aftermath of the World Trade Center destruction, examining over 12,000 workers, many of whom were exposed to asbestos.) (212) 241-4804 (w), phil.landrigan@mssm.edu.

*L. Christine Oliver, MD, MPH, MS, FACPM*, Assistant Clinical Professor of Medicine, Harvard Medical School; Associate Physician, Pulmonary and Critical Medicine, Massachusetts General Hospital. (617) 232-1704 (w), (617) 312-7219 (c),coliver@ohiinc.com.

**Alan C. Whitehouse, MD, FCCP,** Senior consulting physician at the Center for Asbestos
Related Disease, Libby, Montana and the pulmonary specialist who first identified asbestos-
induced disease among workers in the W.R. Grace mine and manufacturing plant at Libby.
(509) 999-5500 (c), (509) 276-1342 (h), (406) 293-9274 (Libby CARD clinic),
acw1@sisna.com

### ###

Public Citizen is a national, nonprofit consumer advocacy organization based in Washington,
D.C.

For more information, please visit www.citizen.org

Expert Report by Dr. Alan C. Whitehouse

**Exhibit 15**



## Alan C. Whitehouse MD
Board Certified
Internal Medicine & Pulmonary Diseases

1507 E Eloika Rd.
Deer Park, Wa 90006
(509) 999-5500
Fax (509) 276-1343

2|9|05

## PRELIMINARY REPORT ON 79 CHEST XRAYS REVIEWED
## RELATIVE TO THE ASBESTOS INJURY RESOLUTION ACT OF 2005

At the request of Jon Heberling, Dr Black and I reviewed 79 chest xrays to evaluate qualification for compensation under the Asbestos injury Resolution Act of 2005. This was not a controlled study and it was biased toward the more ill patients. This occurred as all patients xrays looked at were from my Spokane practice which incorporated many severely ill patients and ones who had lost 10-15% of their lung function over a period of several or more years. All films were reviewed carefully and measurements taken of pleural thickness, review of any interstitial disease, review for blunting of either costo-phrenic angle, or charts reviewed for prior thoracic surgery that would create blunting of a costo-phrenic angle. I have read many more films on patients from Libby and estimate that overall only 10 - 20 % of all the patients would qualify.

### RESULTS

15 patients were on oxygen with an $FEV_1$/ FVC ratio > 65%; only 4 qualified

8 patients had died- 5 qualified/ 3 did not qualify. All died of respiratory failure from asbestos pleural disease except one.

22 of 27 that qualified had blunting of one costo-phrenic angle.

5 of 27 qualified met the B2 requirement.

17 patients had FVC, TLC, and DLCO all over 80% of predicted (normal) and only 1 qualified

29 patients had FVC, TLC, or DLCO 60- 80% and considered to be in an intermediate range. 10 qualified. All were very symptomatic.

33 patients had FVC, TLC, or DLCO under 60% (severe); only 16 qualified, including only 2 of 6 who died.

Of the 71 living patients, only 22 qualified ( 31%). 18 of these had FVC's or DLCO's of less than 70% of predicted. Only 3 of 71 qualified with FVC above 80% of predicted. 2 of those though had DLCO's below 70% of predicted. Another significant consideration is that we use normal values (Knudsen, Miller), that range 5- 10% higher than the Crapo norms used in the AMA Guides to evaluation of Permanent Impairment (5th Ed.).

The average FVC in this group of 79 was 65% of predicted and the DLCO 70% (Knudsen/ Miller). Of the 22 alive qualifying, 2 had had thoracic surgery which may have created the qualifying blunting of the costo-phrenic angle and would exclude them from compensation.

Only 4 of 79 patients had interstitial disease of 1/0 or greater, typical of Libby tremolite disease. Libby asbestos disease is predominantly a pleural disease.

It is clear that the proposed law is inadequate to compensate the approximately 1500 asbestos victims in Libby, Montana who have been identified so far. There is also no scientific basis for the B2 requirement or the angle bunting requirement outlined in the law.

Alan C. Whitehouse MD
Spokane, Wa.

LOG OF ASBESTOS PATIENTS CRITERIA STUDY;FVC.xls

| | FVC % | TLC % | DLCO % | INT | R THICKNESS | R % | R BLUNTING | L THICKNESS | L % | L BLUNTING | MEETS CRITERIA? PLEURAL | INT | DIED | QUALIFY? | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BENOIT, Edward | 125 | 92 | 58 | NEG | 2 | 80 | NEG | 2 | 70 | NEG | NO | NO | | | |
| | 120 | 100 | 84 | NEG | 1 | 50 | NEG | 2 | 25 | NEG | NO | NO | | | |
| WILBURN, harold | 116 | 84 | 53 | NEG | 2 | 30 | NEG | 1 | 40 | NEG | NO | NO | | | |
| RISLEY, steve | 113 | 92 | 71 | ^0/1 | 1 | 25 | NEG | 2 | 10 | NEG | NO | NO | | | |
| REDMAN, Robbin L | 112 | 96 | 91 | NEG | 1 | 20 | NEG | 0 | 0 | NEG | NO | NO | | | |
| | 104 | 102 | 82 | NEG | 2 | 15 | NEG | 4 | 80 | NEG | NO | NO | | | |
| MCCOLLUM, bob | 104 | 103 | 86 | NEG | 2 | 10 | NEG | 3 | 10 | NEG | NO | NO | | | |
| SLAUSON, dale | 103 | 103 | 62 | ^1/1 | 3 | 90 | NEG | 2 | 25 | NEG | NO | NO | | | |
| RAGICOT, james | 102 | 98 | 93 | ^0/1 | 2 | 15 | NEG | 2 | 25 | NEG | NO | YES | | X | |
| | 101 | 96 | 117 | NEG | 2 | 60 | NEG | 2 | 25 | NEG | NO | NO | | | |
| CANNON, Stuart | 100 | 98 | 62 | NEG | 5 | 90 | NEG | 2 | 30 | NEG | NO | NO | | | |
| BADGLEY, wm | 98 | 104 | 84 | NEG | 2 | 100 | YES | 5 | 70 | NEG | YES | NO | | X | |
| GREENUP, Donna | 97 | 87 | 69 | NEG | 2 | 10 | NEG | 2 | 100 | NEG | NO | NO | | X | |
| BACHE, frank | 96 | 88 | 108 | NEG | 2 | 30 | NEG | 1 | 15 | NEG | NO | NO | | | |
| ORR, Robert | 96 | 89 | 84 | NEG | 1 | 50 | NEG | 2 | 30 | NEG | NO | NO | | | |
| PENNOCK, alfred | 96 | 82 | 96 | NEG | 0 | 0 | NEG | 2 | 50 | NEG | NO | NO | | | |
| WRIGHT, Gerald J. | 95 | 89 | 115 | NEG | 2 | 15 | NEG | 5 | 5 | NEG | NO | NO | | | |
| ALLEN, Thomas J. | 92 | 91 | 86 | NEG | 3 | 60 | NEG | 5 | 70 | NEG | NO | NO | | | |
| RIDDLE, Clayton | 90 | 80 | 72 | ^0/1 | 2 | 40 | NEG | 2 | 90 | NEG | NO | NO | | | |
| BENEFIELD, donald | 89 | 101 | 88 | NEG | 3 | 20 | NEG | 4 | 50 | NEG | NO | NO | | | |
| COLLINSON, Linda | 89 | 82 | 92 | NEG | 0 | 0 | NEG | 4 | 50 | NEG | NO | NO | | | |
| JOHNSON, raymond | 89 | 88 | 61 | NEG | 4 | 40 | NEG | 6 | 40 | NEG | NO | NO | | | |
| WRIGHT, Andrew J. | 89 | | | ^0/1 (R only) | 5 | 80 | NEG | 2 | 60 | YES | NO | NO | | | |
| BOCK, fred | 87 | 134 | 63 | NEG | 1 | 30 | NEG | 1 | 50 | NEG | NO | NO | X | | |
| SWENNES, bernadine | 87 | 81 | 64 | NEG | 3 | 40 | NEG | 1 | 50 | NEG | NO | NO | | | |
| WARNER, Edgar | 87 | 78 | 54 | NEG | 7 | 100 | NEG | 5 | 30 | NEG | NO | NO | | | |
| LUNDSTROM, judy | 86 | 84 | 95 | NEG | 1 | 25 | NEG | NEG | 100 | NEG | NO | NO | | | |
| | 83 | 99 | 62 | NEG | 5 | 50 | NEG | 3 | 40 | YES | NO | NO | | X | |
| SIEFKE, Raymond | 83 | 80 | 86 | NEG | 5 | 50 | NEG | 0 | 0 | NEG | NO | NO | | | |
| WRAY, brian | 81 | 91 | 78 | NEG | 2 | 30 | NEG | 2 | 40 | NEG | NO | NO | X | | |
| SWITZER, mike | 80 | 93 | 59 | NEG | 3 | 70 | NEG | 3 | 50 | NEG | NO | NO | | | |
| WILKES, Robert | 79 | 70 | 59 | NEG | 1 | 30 | NEG | 3 | 50 | YES | NO | NO | | X | |
| NOBLE, William | 79 | 81 | 76 | NEG | 3 | 100 | YES | 2 | 100 | NEG | NO | NO | | X | |
| | 78 | 79 | 96 | NEG | 1 | 100 | NEG | 1 | 100 | NEG | NO | NO | | X | |
| FULLER, Robert K. | 78 | | | NEG | 7 | 50 | NEG | 4 | 90 | NEG | NO | NO | X | | |
| | 78 | 107 | 56 | NEG | 2 | 100 | NEG | 1 | YES | YES | YES | NO | | X | |
| | 78 | 76 | 79 | NEG | 3 | 100 | NO | 3 | 100 | YES | YES | NO | | X | |
| CRAIG, Carl E. | 75 | 67 | 59 | NEG | 2 | 70 | YES | 3 | 70 | YES | NO | NO | | X | |
| BALL, irving | 75 | 69 | 64 | NEG | 3 | 80 | NEG | 3 | 70 | NEG | NO | NO | | X | |
| BILLADEAU, elmer | 74 | 62 | 80 | NEG | 2 | 15 | NEG | 3 | 50 | NEG | NO | NO | | | |
| DICKERMAN, lois | 74 | 94 | 80 | NEG | 2 | 70 | NEG | 1 | 25 | NEG | NO | NO | | | |
| STACEY, donald sr | 74 | 75 | 59 | NEG | 4 | 25 | NEG | NEG | NEG | NEG | NO | NO | | | |
| SWENNES, Jeff L. | 72 | 88 | 85 | NEG | 3 | 80 | NEG | 5 | 40 | NEG | NO | NO | | | |
| BUSBY, dan | 72 | 70 | 92 | NEG | 5 | 80 | NEG | 6 | 60 | NEG | NO | NO | | | |
| NOBLE, Michael C. | 70 | 78 | 43 | NEG | 1 | 30 | YES | 1 | 5 | NEG | YES | NO | | X | |
| VINION, Patrick | 70 | 86 | 63 | NEG | 5 | 80 | NEG | 3 | 70 | NEG | NO | NO | | X | |
| | 70 | 63 | 85 | NEG | 2 | 20 | NEG | 2 | 25 | NEG | NO | NO | | | |
| FARMER, ARTHUR | 68 | 72 | 64 | ^0/1 | 3 | 50 | YES | 2 | 25 | NEG | NO | NO | | | |
| BAENEN, Louis | 67 | 47 | 72 | ^1/0 | 3 | 40 | NEG | 3 | 25 | YES | NO | YES | | X | |
| CHAPMAN, George | 66 | 52 | 67 | ^1/1 | 4 | 100 | NEG | 4 | 100 | YES | NO | NO | | X | |
| | 64 | 69 | 97 | NEG | 1 | 80 | NEG | 1 | 60 | NEG | NO | YES | | X | |
| SMITH, opal | 64 | 86 | 58 | NEG | 3 | 80 | NEG | 2 | 60 | NEG | NO | NO | | | |
| VINSON, Verla | 64 | 61 | 43 | NEG | 1 | 20 | NEG | 3 | 90 | NEG | NO | NO | | | |
| WASCO, shirley | 64 | 70 | 64 | NEG | 2 | 30 | NEG | 2 | 60 | NEG | NO | NO | | | |
| SHEA, lois | 63 | 66 | 50 | NEG | 2 | 30 | NEG | 1 | 10 | NEG | NO | NO | | | |
| BOLLES, frank | 62 | 78 | 57 | NEG | 10 | 80 | YES | 8 | 50 | YES | YES | NO | | X | |
| HEDAHL, keith | 62 | 80 | 94 | NEG | 5 | 40 | NEG | 6 | 40 | NEG | NO | NO | | | |
| BRALEY, eugene | 61 | 83 | 97 | ^1/0 (L only) | 3 | 50 | NEG | 2 | 60 | NEG | NO | NO | | | |
| PAUL, Claude | 61 | 82 | 43 | NEG | 15 | 20 | NEG | 3 | 60 | NEG | NO | NO | | | |
| FINSTAD, Kenneth | 60 | 73 | 80 | NEG | 3 | 60 | NEG | 2 | 20 | NEG | NO | NO | | | |
| | 58 | 73 | 78 | NEG | 6 | 90 | YES | 6 | 90 | YES | NO | NO | | X | |
| OIKLE, edna | 57 | | | NEG | 1 | 25 | NEG | 1 | 20 | NEG | NO | NO | | | |
| FELLENBERG, Ruben | 56 | 45 | 63 | NEG | 1 | 80 | NEG | 3 | 90 | YES | NO | NO | X | X | |
| DUTTON, merrill r | 55 | 42 | 40 | NEG | 3 | 10 | YES | 6 | 80 | YES | YES | NO | | X | |
| COLE, Myra | 53 | 74 | 49 | NEG | 5 | 25 | NEG | 3 | 25 | NEG | NO | NO | | | |
| VINSON, kay | 52 | 73 | 47 | NEG | 2 | 80 | NEG | 9 | 50 | YES | NO | NO | | X | |
| HILL, dayton | 48 | 41 | 42 | ^2/2 | 3 | 50 | NEG | 2 | 50 | NEG | NO | NO | | | |
| KAEDING, Donald M. | 47 | 58 | 40 | NEG | 5 | 0 | YES | 1 | 80 | NEG | NO | YES | | X | |
| | 47 | 47 | 39 | NEG | 6 | 50 | NEG | 7 | 50 | YES | YES | NO | | X | |
| DAVIDSON, Richard G. | 47 | 67 | | NEG | 2 | 80 | NEG | 3 | 100 | YES | YES | NO | X | X | |
| | 45 | 64 | 102 | NEG | 5 | 80 | YES | 4 | 40 | YES | YES | NO | | X | |
| DICKERMAN, alfred | 44 | 64 | 34 | NEG | 5 | 50 | YES | 5 | 90 | YES | YES | NO | | X | |
| JACOBSEN, larry | 41 | 79 | 26 | ^1/1 (L ONLY) | 2 | 25 | NEG | 2 | 100 | NEG | YES | NO | | X | |
| FLETCHER, geraldine | 40 | 72 | 87 | NEG | 5 | 60 | NEG | 3 | 70 | NEG | NO | NO | | | |
| COLE, francis(bud) | 39 | 58 | 45 | NEG | 4 | 70 | NEG | 2 | 70 | NEG | NO | NO | | | |
| | 38 | | | NEG | 1 | 100 | NEG | 1 | 40 | NEG | NO | NO | X | | |
| GASTON, Edward A. | 31 | 36 | 29 | NEG | 3 | 70 | NEG | 3 | 70 | YES | YES | NO | X | X | |

LOG OF ASBESTOS PATIENTS CRITERIA STUDY,ON O2.xls

| | FVC | TLC | DLCO | INT | R | R | R | L | L | L | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | % | % | % | | THICK | % | BLUNT | THICK | % | BLUNT | |
| | | | | | | | | | | | |
| BACHE, frank | 96 | 86 | 106 | NEG | 3 | 30 | NEG | 2 | 30 | NEG | |
| BALL,irving | 77 | 93 | 87 | NEG | 2 | 15 | NEG | 2 | 15 | NEG | |
| BENEFIELD,donald | 96 | 96 | 84 | NEG | 3 | 20 | NEG | 4 | 50 | NEG | |
| DICKERMAN, lois | 70 | 86 | 57 | NEG | 3 | 25 | NEG | 4 | 25 | NEG | |
| FELLENBERG, Ruben | 56 | 45 | 63 | NEG | 3 | 10 | YES | 6 | 80 | YES | |
| HILL,dayton | 47 | 58 | 40 | NEG | 5 | 20 | YES | 3 | 15 | NEG | |
| JOHNSON,raymond | 98 | 88 | 71 | NEG | 4 | 40 | NEG | 6 | 40 | NEG | |
| MCCOLLUM, bob | 104 | 103 | 88 | NEG | 2 | 10 | NEG | 3 | 10 | NEG | |
| PAUL, Claude | 61 | 82 | 43 | NEG | 15 | 20 | NEG | 2 | 20 | NEG | |
| SHEA, lois | 63 | 66 | 50 | NEG | 10 | 80 | YES | 8 | 50 | YES | |
| VINSON, kay | 50 | 81 | 47 | NEG | 3 | 50 | NEG | 2 | 50 | NEG | |
| WILBURN,harold | 116 | 84 | 53 | NEG | 2 | 30 | NEG | 1 | 40 | NEG | |
| WRAY,brian | 80 | 93 | 59 | NEG | 3 | 70 | NEG | 3 | 50 | NEG | |
| FARMER,ARTHUR | 67 | 47 | 72 | ^1/0 | 3 | 40 | NEG | 3 | 25 | NEG | |
| DUTTON, merritt | 63 | 58 | 39 | NEG | 5 | 25 | NEG | 3 | 25 | NEG | |

Expert Report by Dr. Alan C. Whitehouse

# Exhibit 16



Gary Ewart
*Director,*
*Government Relations*

Fran DuMelle
*Consultant,*
*International Health*

**Washington Office**
1150 18th Street, N.W.
Suite 900
Washington, DC 20036-3816
Phone: (202) 785-3355
FAX: (202) 452-1805
Internet: www.thoracic.org

**National Headquarters**
61 Broadway
New York, NY 10006
Phone: (212) 315-8700
Internet: www.thoracic.org

Thomas R. Martin, MD
*President*

Adam Wanner, MD
*Past-President*

Homer Boushey Jr., MD
*President-Elect*

Sharon I. S. Rounds, MD
*Vice President*

Peter D. Wagner, MD
*Treasurer*

Carl C. Booberg
*Executive Director*

*Official Journals*

American Journal of
Respiratory and Critical
Care Medicine ®

American Journal of
Respiratory Cell and
Molecular Biology®

Internet: www.atsjournals.org

Dennis Archer, JD
President-Elect
American Bar Association
740 15th Street, N.W.
Washington, DC 20005-1019

Dear Mr. Archer:

As president of the American Thoracic Society (ATS) I want to express our extreme concern with the medical criteria used in the <u>American Bar Association policy: Asbestos Litigation Policy</u> adopted in February 2003. The medical criteria used in the document do not reflect the current state of screening and diagnosis for asbestos-related diseases

The ATS is one of the leading organizations in the scientific and medical community regarding the diagnosis and treatment of asbestos related diseases. The American Thoracic Society (ATS) founded in 1905, is an independently incorporated, international professional and scientific society which focuses on respiratory and critical care medicine. Today, the Society has approximately 13,500 members are engaged preventing and treating respiratory disease around the globe, through research, education, patient care and advocacy.

The ATS does not have a position on the need for, merits of or construction of asbestos litigation reform legislation. As physicians who diagnose, treat and research asbestos-related conditions, we are however committed to ensuring that appropriate medical criteria is used and applied in whatever legislative proposals move forward.

The ATS has the following concerns the medical criteria listed in the ABA Asbestos Litigation Report:

**Existence of Asbestosis**
Significant asbestosis can be present with an x-ray profusion less than 1/0 or even with a normal x-ray. Impairment from this asbestosis can be manifest by demonstrated decrease in diffusing capacity (DL) (with or without a decrease in forced vital capacity, FVC) or abnormality in ventilatory and gas exchange parameters on respiratory exercise testing. Diffusing capacity is available at any lung center, is standardized[1] and is known to be abnormal in interstitial lung disease (ILD) even when FVC and x-ray are normal. Perversely, if DL is significantly decreased without a decrease in FVC, the x-ray standard requirement of the ABA standard (2/1) is greater than what is in common medical practice.

---

1) American Thoracic Society. Single breath carbon monoxide diffusing capacity (transfer factor). Recommendations for a Standard Technique. Am. Rev. Resp. Dis. 1987; 136:1299.

Impairment from asbestos can be manifest by the FVC when the x-ray is normal; such impairment is not admissible under the ABA proposal.

Asbestosis can be detected radiographically by CT scan when the x-ray is normal. CT scan is universally available in the U. S. and used by all pulmonolgists in a fuller assessment of ILD.

### Pleural Scarring

The section on impairment from asbestos-related pleural scarring is vastly insufficient. Diffuse pleural scarring can be associated with greatly diminished FVC regardless of the extent or thickness of the scarring or its bilaterality[2]. It is therefore exclusionary to insist on "bilateral" diffuse pleural thickening of at least B/2.

Analysis of large numbers of patients with asbestos-related pleural scarring has shown that extensive circumscribed pleural scarring is associated with a significant decrement in FVC sufficient to bring about impairment in individual patients.

The ATS will soon be publishing a revised version of: The Diagnosis of Nonmalignant Diseases related to Asbestos. The revised document will provided the most recent data and professional recommendations on the definitions, diagnosis and treatment of nonmalignant asbestos-related diseases. The ATS strongly encourages the American Bar Association and other policy makers to consider this forthcoming document when establishing medical criteria in asbestos-related legislation.

Sincerely,

Thomas R. Martin, M.D.
President,
American Thoracic Society

Cc:    Members of the House Judiciary Committee
       Members of the Senate Judiciary Committee

---

2)  Lilis R, Miller A, Godbold J et al. Pulmonary function and pleural fibrosis: quantitative relationships with an integrative index of pleural abnormalities. Am J Industr. Med 1991; 20:145.

Expert Report by Dr. Alan C. Whitehouse

# Exhibit 17

Dr. Alan C. Whitehouse - Trial Testimony and Depositions

| TRIAL TESTIMONY | | | |
|---|---|---|---|
| Schnetter, Daniel v. W.R. Grace | Lincoln County District Court, 19th Judicial Court | Cause No. CDV-94-74 | 5/1/97 Tr. 130:22 - 204:22 |
| Skramstad, Lester v. W.R. Grace | Lincoln County District Court, 19th Judicial Court | Cause No. DV-95-127 | 5/15/97 Tr. 3:18 - 169:23 |
| Benefield, Gayla, P.R. v. W.R. Grace | Lincoln County District Court, 19th Judicial Court | Cause No. DV-96-170 | 11/5/98 906:4 - 984:17 and 11/6/98 990:21 - 1060:15 |
| Finstad, Kenneth R. v. W.R. Grace | Lincoln County District Court, 19th Judicial Court | Cause No. DV-98-139 | 5/7/99 Tr. 1155:10 - 1277:4 5/10/99 Tr. 1288:9 - 1397 |
| Fellenberg Trial | WC Court | WCC No. 2002-0704 | 7/14/03 |
| Paul | WC Court | WCC No. 2003-0926 | 6/10/04 |
| Dubek | WC Court | WCC No. 2004-0979 | 7/14/04 |

**DEPOS**

| Graham, Carol v. W.R. Grace | United States District Court for the District of Montana - Missoula Division | Cause No. CV-89-163-M-CCL | 11/5/90 |
|---|---|---|---|
| Hurlbert, Ervin, Kaeding, Donald, Riley, Darlene, Skramstad, Lester v. W.R. Grace | Lincoln County District Court, 19th Judicial Court | DV-95-109 DV-96-71 DV096-111 DV-95-127 | 2/12/97 |
| Benefield, Gayla, PR for Margaret Vatland Wright, Andrew v. W.R. Grace | Lincoln County District Court, 19th Judicial Court | DV-96-170 DV-96-169 | 10/2/97 at 11:35 a.m. |

| DEPOS | | | |
|---|---|---|---|
| Benefield, Gayla, PR<br>r Margaret Vatland<br>Wright, Andrew<br>v. W.R. Grace | Lincoln County<br>District Court, 19th<br>Judicial Court | DV-96-170<br><br>DV-96-169 | 10/2/97 at 2:25 p.m. |
| Benefield, Gayla, PR<br>for Margaret Vatland<br>Shearer, Wilma<br>Lyle, John<br>v. W.R. Grace | Lincoln County<br>District Court, 19th<br>Judicial Court | DV-96-170<br><br>DV-97-140<br>DV-95-29 | Continued from<br>12/2/97 held on<br>3/4/98 at 1:35 p.m. |
| Benefield, Gayla, PR<br>for Margaret Vatland<br>Shearer, Wilma<br>Lyle, John<br>v. W.R. Grace | Lincoln County<br>District Court, 19th<br>Judicial Court | DV-96-170<br><br>DV-97-140<br>DV-95-29 | 3/4/98 at 2:00 p.m. |
| Benefield, Gayla, PR<br>for Margaret Vatland<br>Shearer, Wilma<br>Lyle, John<br>v. W.R. Grace | Lincoln County<br>District Court, 19th<br>Judicial Court | DV-96-170<br><br>DV-97-140<br>DV-95-29 | 3/4/98 at 5:10 p.m. |
| sbury, Frederick | Lincoln County<br>District Court, 19th<br>Judicial Court | DV-97-102 | 5/27/98 |
| DeShazer, Thomas | | | 5/27/98 |
| Smith, Beryl, PR for<br>Rex E. Smith v. W.R.<br>Grace | Lincoln County<br>District Court, 19th<br>Judicial Court | DV-97-119 | 10/19/98 at 11:00<br>a.m. |
| Benefield, Gayla, PR<br>for Margaret Vatland<br>v. W.R. Grace | Lincoln County<br>District Court, 19th<br>Judicial Court | DV-96-170 | 10/19/98 at 1:30<br>p.m. |
| Shearer, Wilma<br>v. W.R. Grace | Lincoln County<br>District Court, 19th<br>Judicial Court | DV-97-140 | 10/19/98 at 5:30<br>p.m. |

| DEPOS | | | |
|---|---|---|---|
| Troyer, Diana, PR for ?x E. Smith v. W.R. Grace | Lincoln County District Court, 19th Judicial Court | DV-97-119 | 1/18/99 at 2:00 p.m. |
| Graham, Carol, PR of Robert Graham, Deceased v. W.R. Grace | Lincoln County District Court, 19th Judicial Court | Cause No. DV-98-72 | 1/22/99 |
| Schull, Bill Finstad, Kenneth R. Gaston, Edward v. W.R. Grace | Lincoln County District Court, 19th Judicial Court | DV-98-138 DV-98-139 DV-98-142 | 3/19/99 |
| Warner, Edgar Cannon, Stuart Craig, Carl Albert, Mary v. W.R. Grace | Lincoln County District Court, 19th Judicial Court | DV-96-5 DV-96-11 DV-97-153 DV-97-87 | 10/1/99 |
| Warner, Edgar v. W.R. Grace | Lincoln County District Court, 19th Judicial Court | DV-96-5 | 10/8/99 |
| Wilkes, Robert v. W.R. Grace | Lincoln County District Court, 19th Judicial Court | Cause No. DV-96-60 | 12/3/99 8:30 a.m. |
| Nelson, Robert v. W.R. Grace | Lincoln County District Court, 19th Judicial Court | Cause No. DV-98-107 | 12/3/99 10:45 a.m. |
| Ryan, Royce v. W.R. Grace | Lincoln County District Court, 19th Judicial Court | Cause No. DV-98-100 | 12/3/99 12:30 p.m. |
| Wilkes, Robert Ryan, Robert Nelson, Robert v. W.R. Grace | Lincoln County District Court, 19th Judicial Court | DV-96-60 DV-98-100 DV-98-107 | Consolidated depo 12/3/99 8:30 a.m. |
| Nelson, Robert Ryan, Royce v. W.R. Grace | Lincoln County District Court, 19th Judicial Court | DV-98-108 DV-98-100 | 1/10/00 |

| DEPOS | | | |
|---|---|---|---|
| Dedrick, Carrie<br>opkins, James<br>v. W.R. Grace | Lincoln County<br>District Court, 19th<br>Judicial Court | DV-99124<br>DV-99-124 | 9/29/00 |
| U.S. v. Grace | U.S. District Court<br>Missoula | CV-01-72-M-DWM | 9/6/02 |
| Fellenberg v.<br>Transporation Ins. | Workers' Comp. Ct | WCC No. 2002-0704 | 5/12/03 |
| Crill, Harold v.<br>International Paper | Workers' Comp. Ct | WCC No. 2001-0408 | 6/30/03 |
| Flesher, Richard v.<br>International Paper | Workers' Comp. Ct | WCC No. 2002-0661 | 6/30/03 |
| Baker, Bruce v.<br>Transporation Ins. | Workers' Comp. Ct | WCC No. 2003-0839 | 11/7/03 |
| Doubek v.<br>CNA Insurance Co. | Workers' Comp. Ct | WCC-2004-0979 | 4/28/04 |
| Doubek v.<br>CNA Insurance Co. | Workers' Comp. Ct | WCC-2003-0913 | 4/30/04 |
| aul, Claude v.<br>Transporation Ins. | Workers' Comp. Ct | WCC-2003-0926 | 6/8/04 |
| Leo Gerhard | | 02-2-07334-4SEA | 11/29/04 |
| Glen Kidder | | 02-2-00544-6SEA | 11/29/04 |
| Hertie Mercer | | 02-2-10190-9SEA | 11/29/04 |
| Jacob Raat | | 02-2-27819-1SEA | 11/29/04 |
| Kenneth Stapley | | 03-2-23956-9SEA | 11/29/04 |
| Johnson, Raymond v.<br>International Paper | Workers' Comp. Ct | WCC-2004-1092 | 6/14/05 |
| Donald Hewett | | 04-2-09001-6SEA | 8/17/05 |
| George Johnson | | 04-2-09049-1SEA | 8/17/05 |
| James Bockman | | 05-2-24780-1SEA | 12/15/05 |
| Roy Barnes | | 04-2-03232-6SEA | 12/15/05 |
| onard Kimball | | 04-2-00189-7SEA | 12/15/05 |

| | | | |
|---|---|---|---|
| Leonard Kukuoka | | 03-2-20489-7SEA | 12/15/05 |
| Jack Holden | | 03-2-37136-0SEA | 12/15/05 |
| .ack v. Transportation Ins. Co. | Workers' Comp. Ct | WCC-2006-1558 | 6/20/06 |

We cannot be certain that this is a complete listing.