W.R. Grace & Co. et al.

District of Delaware, Bankruptcy Case No. 01-01139

Exhibit A

| Debtor: | Settling Parties: | Description of Settlement |
|---|---|---|
| W. R. Grace & Co. ("Grace") | American International Group ("AIG"), the New York Attorney General, the New York Insurance Department -and- Grace | This matter involves a settlement in the amount of $624,805.25 that the Debtors are eligible to receive from a settlement fund established by AIG pursuant to a settlement agreement between AIG and the New York Attorney General and a stipulation with the New York Insurance Department (collectively, the "Agreement") pertaining to an investigation of improper bidding arrangements and steering practices involving the use of contingent commissions. Policyholders of AIG who purchased or renewed excess casualty insurance policies (excluding excess workers' compensation policies) through Marsh & McLennan Companies, Inc. or Marsh Inc. during the period from January 1, 2000 to September 30, 2004 are eligible to receive compensation from the settlement fund. The Debtors believe that this settlement is fair and reasonable to the Debtors because it results from negotiations between AIG and the New York Attorney General and the New York Insurance Department and because the Debtors believe that the cost to investigate and litigate the Debtors' claims independently would be prohibitive. A condition to receipt of compensation from the settlement fund is execution by Grace of the releases included in Exhibit B. |

W.R. Grace & Co. et al.
District of Delaware, Bankruptcy Case No. 01-01139
Exhibit B

Supporting Materials

AMERICAN INTERNATIONAL GROUP, INC.


August 2006

Dear Policyholder:

        I am writing to inform you of your eligibility to participate in a settlement fund established by American International Group, Inc. ("AIG").

Background

        As you may be aware, the Office of the Attorney General of the State of New York (the "New York Attorney General") and the Superintendent of Insurance of the State of New York have been conducting investigations into certain insurance industry practices. Those investigations involve allegations of both improper bidding arrangements and steering practices involving the use of contingent commissions. AIG cooperated with the investigation of the New York Attorney General and the New York Insurance Department.

The Excess Casualty Fund

        On February 9, 2006, AIG announced that it had entered into a settlement agreement with the New York Attorney General and a stipulation with the New York Insurance Department to resolve a number of outstanding claims and investigations by those offices. A copy of the settlement agreement and stipulation (collectively, the "Agreement") is available at www.aigsettlement.com.

        As part of the Agreement, without admitting or denying the existence of any wrongdoing, AIG established a $375 million settlement fund (the "Excess Casualty Fund") for its policyholders who purchased or renewed excess casualty policies (excluding excess workers compensation policies) through Marsh & McLennan Companies, Inc. or Marsh Inc. (collectively, "Marsh") during the period from January 1, 2000 through September 30, 2004 ("Eligible Policyholders"). *Under the terms of the Agreement, AIG's excess casualty policyholders are eligible to participate in the Excess Casualty Fund without being required to demonstrate that they suffered any actual harm or injury, or in fact that any wrongdoing had occurred.*

Allocation of the Excess Casualty Fund

        Attached is a statement setting forth the amount your company is eligible to receive from the Excess Casualty Fund. The amount your company is eligible to receive from the Excess Casualty Fund is based on your company's pro rata portion of the total AIG excess casualty premium written between January 1, 2000 and September 30, 2004 through Marsh. AIG has calculated the amount of premium written for excess casualty policies attributable to each Eligible Policyholder pursuant to the terms of the Agreement. If you elect to participate in the Excess Casualty Fund and tender a Release as described below, your payment will also include a pro rata portion of any interest or investment income earned on the Excess Casualty Fund.

The Release

        In order to participate in the Excess Casualty Fund and collect your company's allocated amount, an authorized representative from your company must sign the Release contained in this mailing and return the completed Release, postmarked by January 26, 2007, in the envelope provided. You may not alter the Release in any way, as it must be received by AIG in the form attached to the Agreement.

        The decision of whether or not to participate in the Excess Casualty Fund is entirely voluntary. By signing the Release, you will give up your right to pursue any claims against AIG, its subsidiaries, and the other parties included in the definition of "Releasee" in the attached form of Release (collectively, the "Released Parties") for (i) any of the allegations, acts, omissions, transactions, events, types of conduct or matters that are the subject of the complaint entitled The People of the State of New York v. American International Group, Inc., Maurice R. Greenberg and Howard I. Smith, Index No. 401720/2005, described in the Agreement, or were subject to investigation by the New York Attorney General and the New York Insurance Department as referenced in the Agreement; (ii) any allegations, acts, omissions, transactions, events, types of conduct or matters that are the subject of In re Insurance Brokerage Antitrust Litigation, MDL No. 1663, or the actions pending in the United States District Court for the District of New Jersey captioned In re: Insurance Brokerage Antitrust Litigation, Civ. No, 04-5184 (FSH), and In re Employee Benefit Insurance Brokerage Antitrust Litigation, Civ. No. 05-1079 (FSH), or any related actions filed or transferred to the United States District Court for the District of New Jersey that are consolidated into either of the preceding Civil Action dockets; or (iii) any allegations of bid-rigging or of the use of contingent commission agreements or placement service agreements to steer business.

        The Release will not release any claims that are based upon, arise out of or relate to (a) the purchase or sale of AIG securities, and (b) AIG's Life Insurance Operations, as defined in the Agreement. The Release also does not preclude participating policyholders from seeking relief against entities or individuals other than the Released Parties.

        If your company does not elect to participate in the Excess Casualty Fund, your company will retain any rights it may have to pursue an individual or class action against AIG, including by participating in the actions listed above.

Payment Under the Excess Casualty Fund

        If your company elects to participate in the Excess Casualty Fund, and AIG timely receives your company's Release, AIG will mail its payment to your company by February 28, 2007.

        In deciding whether to participate in the Excess Casualty Fund, your company should review the complete terms of the Agreement, including the following provision:

        In the event that any Eligible Policyholder elects not to participate
        or otherwise does not respond to the Excess Notice..., the amount
        that such policyholder was eligible to receive...may be used by
        AIG to satisfy any pending or other claims asserted by

3

policyholders relating to the excess casualty bid rigging or excess casualty steering allegations set forth in this Agreement, provided that in no event shall a distribution be made from the Excess Casualty Fund to any other policyholder until all Participating Policyholders have been paid the full aggregate amount set forth …above…; nor shall the total payments from the Excess Casualty Fund to any Non-Participating Policyholder exceed 80% of the amount that Non-Participating Policyholder was originally eligible to receive …" (Settlement Agreement ¶ 23; Stipulation ¶ 23.)

Pursuant to this provision, any money remaining in the Excess Casualty Fund after checks are mailed to Participating Policyholders may be used to resolve any claims asserted by excess casualty policyholders (including policyholders who do not fall within the definition of "Eligible Policyholder") relating to the excess casualty bid rigging or excess casualty steering allegations contained in the Agreement. Payments from the Excess Casualty Fund to non-participating Eligible Policyholders will be limited to a maximum of 80% of the amount the Eligible Policyholder could have collected if it had participated in the Excess Casualty Fund prior to January 26, 2007.

Amounts Remaining in the Excess Casualty Fund

Under no circumstances will any portion of the Excess Casualty Fund revert to AIG. In particular, if any money remains in the Excess Casualty Fund as of January 31, 2008, any such funds shall be distributed by February 29, 2008 on a pro rata basis to the Participating Policyholders.

\*      \*      \*

If you have any questions about participation in the Excess Casualty Fund, you may contact our Settlement Administrator, The Garden City Group, Inc. at (888) 355-5464 or by e-mail at aiginfo@gardencitygroup.com. AIG is committed to business practices that provide transparency and fairness in the insurance markets. On behalf of AIG, I want to thank you for your continued support.

Sincerely,

Kenneth V. Harkins
Deputy General Counsel

ust be Postmarked
No Later Than
January 26, 2007

AIG Excess Casualty Settlement
c/o The Garden City Group, Inc.
PO Box 9000 #6402
Merrick, NY 11566-9000
(888) 355-5464

AIN



Settlement Identification Number: 01000967



W. R. GRACE & CO.
ATTN: ROBERT TAROLA - SENIOR VP & CFO
7500 GRACE DR.
COLUMBIA, MD 21044-4029

**ADDRESS CORRECTIONS**

Write any address corrections below. Any changes to RELEASOR
name must be submitted in writing with explanation for change.

_____

_____

_____

_____

## GENERAL RELEASE

This RELEASE (the "Release") is executed this _____ day of _____, 200___ by RELEASOR (defined below) in favor of RELEASEE (defined below).

### DEFINITIONS

"RELEASOR" refers to W. R. GRACE & CO. and any of its affiliates, subsidiaries, associates, general or limited partners or partnerships, predecessors, successors, or assigns, including, without limitation, any of their respective present or former officers, directors, trustees, employees, agents, attorneys, representatives and shareholders, affiliates, associates, general or limited partners or partnerships, heirs, executors, administrators, predecessors, successors, assigns or insurers acting on behalf of RELEASOR.

"RELEASEE" refers to American International Group, Inc. and any of its subsidiaries, associates, general or limited partners or partnerships, predecessors, successors, or assigns, including, without limitation, any of their respective present or former officers, directors, trustees, employees, agents, attorneys, representatives and shareholders, affiliates, associates, general or limited partners or partnerships, heirs, executors, administrators, predecessors, successors, assigns or insurers (collectively, "AIG").

"AGREEMENT" refers to a certain agreement between AIG and the Attorney General of the State of New York ("NYAG") dated January 18, 2006 and an accompanying stipulation between AIG and the Superintendent of Insurance of the State of New York ("NYSI") dated January 18, 2006, relating to (i) an action commenced against AIG by the NYAG and NYSI dated May 26, 2005, captioned The People of the State of New York v. American International Group, Inc., Maurice R. Greenberg and Howard I. Smith, Index No. 401720/2005, and an investigation by the NYAG and NYSI relating to same (the "COMPLAINT"); (ii) an investigation by the NYAG and NYSI related to AIG's alleged use of contingent commission agreements or placement service agreements to steer business; and (iii) an investigation by the NYAG and NYSI related to AIG's alleged participation in bid rigging schemes.

### RELEASE

1. In consideration for the total payment of $ 624,805.26 plus any interest or investment income earned thereon in accordance with the terms of the AGREEMENT, RELEASOR does hereby fully release, waive and forever discharge RELEASEE from any and all claims, demands, debts, rights, causes of action or liabilities whatsoever, including known and unknown claims, now existing or hereafter arising, in law, equity or otherwise, whether under state, federal or foreign statutory or common law, and whether possessed of asserted directly, indirectly, derivatively, representatively or in any other capacity (collectively, "claims"), to the extent any such claims are based upon, arise out of or relate to, in whole or in part, (i) any of the allegations, acts, omissions, transactions, events, types of conduct or matters that are the subject of the COMPLAINT, described in the AGREEMENT, or were subject to investigation by NYAG and NYSI as referenced in the AGREEMENT; (ii) any allegations, acts, omissions, transactions, events, types of conduct or matters that are the subject of In re: Insurance Brokerage Antitrust Litigation, MDL No. 1663, or the actions pending in the United States District Court for the District of New Jersey captioned In re: Insurance Brokerage Antitrust Litigation, Civ. No. 04-5184 (FSH), and In re Employee Benefit Insurance Brokerage Antitrust Litigation, Civ. No. 05-1079 (FSH) or any related actions filed or transferred to the United States District Court for the District of New Jersey that are consolidated into either of the preceding Civil Action dockets; or (iii) any allegations of bid-rigging or of the use of contingent commission agreements or placement service agreements to steer business; provided, however, that RELEASOR does not hereby release, waive, or discharge RELEASEE from any claims that are based upon, arise out of or relate to (a) the purchase or sale of AIG securities; and (b) AIG's Life Insurance Operations (as defined by the Agreement to which this Release is an exhibit).

2. In the event that the total payment referred to in paragraph 1 is not made for any reason, then this RELEASE shall be deemed null and void, provided that any payments received by RELEASOR shall be credited to AIG in connection with any claims that RELEASOR may assert against AIG, or that are asserted on behalf of RELEASOR or by a class of which RELEASOR is a member, against AIG.

3. This RELEASE may not be changed orally and shall be governed by and interpreted in accordance with the internal laws of the State of New York, without giving effect to choice of law principles, except to the extent that federal law requires that federal law governs. Any disputes arising out of or related to this RELEASE shall be subject to the exclusive jurisdiction of the Supreme Court of the State of New York or, to the extent federal jurisdiction exists, the United States District Court for the Southern District of New York.

4. Releasor represents and warrants that the claims have not been sold, assigned or hypothecated in whole or in part.

| RELEASOR: | (must match RELEASOR as defined above) | Date: | / / | Is RELEASOR a US Person / Entity? ☐Yes ☐No |
| Signed By: | | Taxpayer ID No: | | |
| Print Name: | | Phone Number: | ( ) - | |
| Title: | (must have authority to sign RELEASE) | Email Address: | | |

## DO NOT ALTER THIS RELEASE

Eligible Policyholder Name:      W. R. GRACE & CO.
Eligible Policyholder Address:    7500 GRACE DR.
                                 COLUMBIA, MD 21044-4029

## AIG Excess Casualty Settlement Fund Policy Statement

| | Eligible Policy | Premium | Settlement Amount (1) |
|---|---|---|---|
| 1 | 4762791 | $1,600,000.00 | $162,155.46 |
| 2 | 6340211 | $1,065,000.00 | $107,934.73 |
| 3 | 6340839 | $325,000.00 | $32,937.83 |
| 4 | 7394780 | $400,000.00 | $40,508.86 |
| 5 | 7410423 | $1,200,000.00 | $121,816.59 |
| 6 | 7411882 | $725,000.00 | $73,476.69 |
| 7 | 8713557 | $850,000.00 | $86,145.09 |
| Totals | | $6,165,000.00 | $624,805.28 |